## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br><br>No. 17 BK 3566-LTS |

## GOVERNMENT PARTIES' RESPONSE TO MOVANTS' OBJECTION TO MAGISTRATE JUDGE'S MAY 6, 2019 AND MAY 15, 2019 ORDERS ON MOTIONS TO COMPEL

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 2

    I.     ERS's FINANCIAL CRISIS ................................................................................. 2

    II.    STAY RELIEF MOTION AND DISCOVERY ..................................................... 5

    III.   PRIVILEGE BRIEFING ....................................................................................... 6

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ............................................................................................................................ 8

    I.     **JUDGE DEIN'S DECISION TO UPHOLD THE GOVERNMENT
PARTIES' DELIBERATIVE PROCESS AND EXECUTIVE
PRIVILEGES WAS CORRECT, NOT CLEARLY ERRONEOUS.** ............. 8

         A.    The Withheld Documents Are Predecisional, Deliberative
Materials. ..................................................................................................... 8

         B.    Judge Dein Correctly Concluded that the Government Parties'
Declarations Invoking the Privilege Were Sufficient. ............................ 12

         C.    The Government Parties Did Not Waive Privilege By Sharing
Deliberative Materials With Each Other................................................... 13

         D.    Judge Dein Did Not Clearly Err in Concluding that Movants'
Professed Need for the Deliberative Process Privileged Documents
Did Not Outweigh Harm from Disclosure.............................................. 18

         E.    Judge Dein's Decision that Factual Information Cannot Be
Segregated From the Privileged Documents Is Not Clearly
Erroneous. ................................................................................................. 22

         F.    Judge Dein's Decision that AAFAF May Be Party to Executive
Privileged Communications Was Not Clearly Erroneous. ...................... 24

    II.    **JUDGE DEIN PROPERLY DENIED MOVANTS' MOTION TO
COMPEL PRODUCTION OF ATTORNEY-CLIENT PRIVILEGED
DOCUMENTS**.................................................................................................. 25

         A.    The Documents Shared With Third Parties Remain Privileged. ............. 26

         B.    Common Interest Exists Between ERS and the Other Government
Parties........................................................................................................ 30

    III.   JUDGE DEIN'S DENIAL OF MOVANTS' demand for attorney work-
product was not clearly erroneous. ..................................................................... 31

CONCLUSION....................................................................................................................... 34

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bhatia Gautier v. Gobernador*,
   199 D.P.R. 59 (2017) ..................................................................... passim

*Cavallaro v. United States*,
   284 F.3d 236 (1st Cir. 2002)........................................................ 27, 28, 29

*Columbia Data Prods., Inc. v. Autonomy Corp.*,
   2012 WL 6212898 (D. Mass. Dec. 12, 2012)................................... 26

*Corporación Insular de Seguros v. García*,
   709 F.Supp. 288 (D.P.R. 1989)......................................................... 24

*Crowley v. L.L. Bean, Inc.*,
   No. CIV. 00-183-PC, 2001 WL 103541 (D. Me. Feb. 1, 2001) ............... 29

*Cumpiano v. Banco Santander P.R.*,
   902 F.2d 148 (1st Cir.1990)............................................................... 8

*ERS v. Altair, et al.*,
   Adv. Proc. No. 17-00213-LTS, 17-03566-LTS, ECF No. 86 (D.P.R. Nov. 2, 2017) ............. 13

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*,
   232 F.R.D. 103 (S.D.N.Y. 2005) ....................................................... 21

*FDIC v. Ogden Corp.*,
   202 F.3d 454 (1st Cir. 2000) ............................................................. 31

*FOMB v. PREPA*,
   17 BK 4780-LTS, ECF No. 471 (D.P.R. Nov. 16, 2017)................... 9, 10, 11

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
   739 F. Supp. 2d 515 (S.D.N.Y. 2010) ................................................ 16

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
   778 F.3d 142 (D.C. Cir. 2015)........................................................... 33

*Hickman v. Taylor*,
   329 U.S. 495 (1947)......................................................................... 33

*Hilsinger Co. v. Eyeego, LLC*,
   No. 13-cv-10594, 2015 WL 11120842 (D. Mass. Aug. 13, 2015)......... 31

*Hinckley v. U.S.*,
   140 F.3d 277 (D.C. Cir. 1998)........................................................... 21

**TABLE OF AUTHORITIES**

**(Cont.)**

Page

*Horwitz-Matthews, Inc. v. City of Chicago*,
   78 F.3d 1248 (7th Cir. 1996) ...................................................................... 17-18

*Hunton & Williams LLP v. U.S. Envtl. Prot. Agency,*,
   248 F. Supp. 3d 220 (D.D.C. 2017) .............................................................. 14

*Hunydee v. United States*,
   355 F.2d 183 (9th Cir. 1965) ......................................................................... 30

*In re 1606 New Hampshire Ave. Assocs.*,
   85 B.R. 298 (Bankr. E.D.Pa. 1988) .............................................................. 19

*In re Bieter Co.*,
   16 F.3d 929 (8th Cir. 1994) ........................................................................... 29

*In re Fisher Island Invs., Inc.*,
   No. 11016947-AJC, 2015 WL 148449 (S.D. Fla. Jan. 9, 2015) .................... 17

*In re Ledis*,
   259 B.R. 472 (Bankr. D. Mass. 2001) ........................................................... 19

*In re Mortg. & Realty Tr.*,
   212 B.R. 649 (Bankr. C.D. Cal. 1997) .......................................................... 30

*In re Richmond Unified School District*,
   133 B.R. 221 (Bankr. N.D. Cal. 1991) ...................................................... 16-17

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ...................................................................... 21

*In re Tribune Co.*,
   No. 08-13141 KJC, 2011 WL 386827 (Bankr. D. Del. Feb. 3, 2011) ........... 30

*In re U.S.*,
   321 F. App'x 953 (Fed. Cir. 2009) ................................................................ 23

*In re Veeco Instruments, Inc. Sec. Litig.*,
   No. 05-MD-01695 CM GAY, 2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) ........ 21

*Jordan v. U.S. Dep't of Justice*,
   591 F.2d 753 (D.C. Cir. 1978) ....................................................................... 11

*Khoday v. Symantec Corp.*,
   No. 11-180,(JRT/TNL), 2013 WL 12140484 (D. Minn. Sept. 24, 2013) ........ 17

*Koninklijke Philips N.V. v. Zoll Lifecor Corp.*,
   No. 2:12-CV-1369, 2014 WL 12601009 (W.D. Pa. June 18, 2014) ............... 32

**TABLE OF AUTHORITIES**
**(Cont.)**

Page

*Marriott Intern. Resorts, L.P. v. U.S.*,
   437 F.3d 1302 (Fed. Cir. 2006) ............................................................................ 13

*Mississippi Pub. Employees' Ret. Sys. V. Boston Sci. Corp.*,
   649 F.3d 5 (1st Cir. 2011) ..................................................................................... 33

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*,
   No. CIV. CCB-03-3408, 2012 WL 4378160 (D. Md. Sept. 24, 2012) .................... 30

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
   861 F.2d 1114 (9th Cir. 1988) .............................................................................. 12

*New Hampshire Right to Life v. U.S. Dept. of Health and Human Services*,
   778 F.3d 43 (1st Cir. 2015) .................................................................................... 8

*Noble v. City of Fresno*,
   No. 1:16-cv-01690 DAD-BAM, 2018 WL 1381945 (E.D. Cal. Mar. 19, 2018) .............. 12-13

*Noel v. City of New York*,
   No. 15-cv-05236 (LTS) (KHP), 2018 WL 6649969 (S.D.N.Y. Dec. 18, 2018) ..................... 11

*People for Am. Way Found. v. U.S. Dep't of Educ.*,
   516 F. Supp. 2d 28 (D.D.C. 2007) ........................................................................ 16

*Phinney v. Wentworth Douglas Hosp.*,
   199 F.3d 1 (1st Cir. 1999) ...................................................................................... 8

*Providence Journal Co. v. Dept. of Army.*,
   981 F. 2d 522 (1st Cir. 1992) .................................................................................. 8

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975) ............................................................................................... 14

*Rodríguez Rodríguez v. Gobernador*,
   91 D.P.R. 101 (P.R. Oct. 23, 1964) ....................................................................... 20

*Rojas v. Méndez & Co., Inc.*,
   115 D.P.R. 50, 15 P.R. Offic. Trans. 66 (P.R. Jan. 9, 1984) .................................. 20

*Rosselló v. FOMB*,
   Adv. Proc. No. 18-080-LTS, 17 BK 3283-LTS, ECF No. 33 (D.P.R. Aug. 7, 2018) .......... 9, 11

*SCM Corp. v. Xerox Corp.*,
   70 F.R.D. 508 (D. Conn. 1976) ............................................................................. 17

*Shea v. Mcgovern*,
   No. 1:08-12148-MLW, 2011 WL 322652, (D. Mass. Jan. 31, 2011) ...................... 12

## TABLE OF AUTHORITIES
### (Cont.)

Page

*Shell Oil Co. v. IRS*,
   772 F. Supp. 202 (D. Del. 1991)..................................................................... 16

*Sprague v. Thorn Americas, Inc.*,
   129 F.3d 1355 (10th Cir. 1997) ..................................................................... 32

*Stalcup v. CIA*,
   768 F.3d 65 (1st Cir. 2014)............................................................................ 23

*Starkey v Birritteri*,
   No. 12-10988-RWZ, 2013 WL 3984599 (D. Mass. Aug. 2, 2013)...................... 12

*State of Maine v. U.S. Dept. of Interior*,
   298 F.3d 60 (1st Cir. 2002)............................................................................ 33

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
   60 F.3d 867 (1st Cir. 1995).................................................................... 12, 14

*TM Park Ave. Assoc. v. Pataki*,
   214 F.3d 344 (2d Cir. 2000) .......................................................................... 17

*U.S. v. Deloitte LLP*,
   610 F.3d 129 (D.C. Cir. 2010) ....................................................................... 33

*U.S. v. Estrella*,
   567 F.2d 1151 (1st Cir. 1977)........................................................................ 19

*United States v. Farley*,
   11 F.3d 1385 (7th Cir. 1993) ......................................................................... 14

*United States v. Textron Inc. & Subsidiaries*,
   577 F.3d 21 (1st Cir. 2009)...................................................................... 31, 33

*Xcel Energy, Inc. v. U.S.*,
   237 F.R.D. 416 (D. Minn. 2006) .................................................................... 21

**Statutes**

3 L.P.R.A § 761 ................................................................................................. 18

3 L.P.R.A. § 775 ................................................................................................ 15

3 L.P.R.A. § 787(f) .............................................................................................. 5

31 L.P.R.A. § 14 ................................................................................................ 20

48 U.S.C. § 2121(c)(1)........................................................................................ 14

**TABLE OF AUTHORITIES**
(Cont.)

**Page**

Act 106, § 2.1(b) ........................................................................................................ 4, 5

Act 106, § 2.4(e) ............................................................................................................ 5

Act 106, § 2.1 ............................................................................................................... 10

Act 106, § 3.1 ............................................................................................................... 10

Act 106, § 4.1 ............................................................................................................... 10

Act 112-2004 § 1-101 ................................................................................................... 18

Act 2-2017 ............................................................................................................... 14, 15

Act 2-2017 § 16 .............................................................................................................. 3

Act 2-2017 § 2 ................................................................................................................. 3

Act 2-2017 § 5(a) ...................................................................................................... 3, 15

Act 2-2017 § 5(b) .......................................................................................................... 25

Act 2-2017 § 8(h) .......................................................................................................... 25

Act 2-2017 § 8(q) ............................................................................................................ 3

Act 2-2017, Preamble ................................................................................................ 3, 15

Act 2-2017, Statement of Motives ........................................................................... 14, 15

J.R. 188, § 4 ............................................................................................................... 4, 5

PROMESA § 101(a) ....................................................................................................... 4

PROMESA § 101(c)(1) ................................................................................................. 14

PROMESA § 405(m)(4) ................................................................................................ 16

**Other Authorities**

Board Resolution Adopted on March 13, 2017, available at:
   https://drive.google.com/file/d/1gUz92TUNH37mZIE2Hv4pt-M9JmPeaxAE/view .............. 10

Congressional Task Force on Economic Growth in Puerto Rico, Report to the House and Senate,
   114th Congress (Dec. 20, 2016), available at:
   https://www.finance.senate.gov/imo/media/doc/Bipartisan%20Congressional%20Task%20For
   ce%20on%20Economic%20Growth%20in%20Puerto%20Rico%20Releases%20Final%20Rep
   ort.pdf........................................................................................................................... 3

**TABLE OF AUTHORITIES**
**(Cont.)**

**Page**

FIN. OVERSIGHT & MGMT. BD. FOR PUERTO RICO,
    https://oversightboard.pr.gov/fombteam/ (last visited June 1, 2019) ....................................... 29

Fiscal Plan, Slide 21, available at
    http://www.aafaf.pr.gov/assets/planfiscal13demarzo2017.pdf.................................................. 9

Oficina del Contralor for Puerto Rico at:
    https://consultaspuestos.ocpr.gov.pr/frmconsultanomina.aspx (last visited June 5, 2019) ...... 29

**Rules**

Fed. Rule. Civ. Proc. Rule 72(a)................................................................................................ 7

## PRELIMINARY STATEMENT[2]

1.      Movants' Objection both overreaches in demanding hundreds of privileged documents and falls short in failing to show that Judge Dein's measured rulings were clearly erroneous or contrary to the law.  Movants seek confidential emails and other documents related to J.R. 188 and Act 106 (the "Pension Reform Legislation") that fall squarely within the deliberative process, executive, attorney client and work product privileges.  Yet Movants have failed to offer any cogent explanation for how these documents are truly relevant to their lift-stay motion, much less why Puerto Rico's important privileges should be cast aside to grant Movants the discovery they seek.

2.      Movants sought the documents at issue for a purpose this Court has now ruled is at most marginally relevant to the lift-stay proceedings—to prove the Government Parties' alleged

---

[2] Capitalized terms have the same meanings as in the Government Parties' April 18 and April 22 Oppositions and their May 22 Response.  Capitalized terms have the same meanings as in the Government Parties' April 18 and April 22 Oppositions and their May 22 Response.  In addition, (i) "**AAFAF Enabling Act**" means Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act 2-2017; (ii) "**April 1 Hrg. Tr**." means transcript of the April 1, 2019 hearing; (iii) "**April 10 Log**" means the Government Parties' categorical privilege log, 17-03566-LTS, ECF No. 438-1; (iv) "**April 12 Log**" means the Government Parties' categorical privilege log, 17-03566-LTS, ECF No. 443-2; (v) "**April 14 Log**" means the Government Parties' individual-entry privilege log, 17-03566-LTS, ECF No. 459-2 (amended April 22, 2019); (vi) "**April 18 Yassin Decl.**" means Declaration of Mohammad Yassin Mahmud in Support of Assertion of Deliberative Process Privilege by AAFAF, 17-03566-LTS, ECF No. 453; (vii) "**April 18 Collazo Decl.**" means Declaration of Luis Collazo Rodriguez in Opposition to Motion to Compel, 17-03566-LTS, ECF No. 452; (viii) "**April 22 Collazo Decl.**" means Declaration of Luis Collazo Rodriguez in Support of Assertion of Deliberative Process Privilege by ERS, 17-03566-LTS, ECF No. 457; (ix); "**April 22 Mesa Decl.**" means Declaration of Philippe Mesa Pabon in Support of Assertion of Deliberative Process Privilege by the Commonwealth of Puerto Rico, 17-03566-LTS, ECF No. 458; (x) "**Attorney-Client Motion to Compel**" means Movants' April 15, 2019 motion to compel, 17-03566-LTS, ECF No. 443; (xi) "**Deliberative Process Motion to Compel**" means Movants' April 16, 2019 motion to compel, 17-03566-LTS, ECF No. 446; (xii) "**Government Parties**" means AAFAF, ERS, and the Commonwealth; (xiii) "**Lift Stay Motion**" means Movants' July 3, 2018 motion, 17-03566-LTS, ECF No. 289; (xiv) "**March 21 Motion to Compel**" means Movants' motion, 17-03566-LTS, ECF No. 402; (xv) "**May 2 Hrg. Tr.**" means transcript of the May 2, 2019 hearing, (xvi) "**May 6 Order**" means Order on Motions to Compel, 17-03566-LTS, ECF No. 493; (xvii) "**May 9 Log**" means the Government Parties' individual-entry privilege log, 17-03566-LTS, ECF No. 501-1; (xviii) "**May 9 Yassin Decl.**" means Supplemental Declaration of Mohammad Yassin Mahmud In Support of Assertion of Deliberative Process Privilege by AAFAF, 17-03566 ECF No. 502; (xix) "**May 15 Order**" means Supplemental Order on Motions to Compel, 17-03566 ECF No. 509; (xx) "**May 30 Order**" means Order Denying Motion to Compel Production of Documents Withheld as Privileged Based on Respondents' May 9, 2019 Submissions, 17-03566 ECF No. 537; (xxi) "**Objection**" means Movants' objection to the May 6, May 15, and May 30 Orders, 17-03566, ECF No. 518; (xxii) "**Renewed Motion**" means Movants' May 16, 2019 motion to compel, 17-03566-LTS, ECF No. 510; (xxiii) "**Respondents**" means the Government Parties and the FOMB; and (xxiv) "**Status Report**" means Joint Informative Motion Regarding Discovery Matters, 17-03566-LTS, ECF No. 507.

intent to circumvent Movants' alleged collateral.  Objection ¶ 27 (stating that documents sought are relevant to the Government Parties' "*intention* to divert Movants' collateral," and "*motivation* . . . to avoid paying Movants the value they were owed" (emphasis added)).  This Court has now held that "evidence of intent to circumvent rights in collateral is, at best, of marginal relevance to the central question to be considered at the Stay Relief Hearing: whether bondholders have any security interest in employer payments under the PayGo system established by the Pension Reform Legislation."  There is thus no reason to order the disclosure of these documents at all, privileged or not.  June 5, 2019 Order ("June 5 Order"), Case No. 17-3566-LTS, ECF No. 544 at 5.

3.      Movants have already received nearly 12,000 pages of documents from the Government Parties, including (1) ERS bank records and financial statements, (2) PayGo reports and Commonwealth cash flow reports, (3) legislative history for J.R. 188 and Act 106, (4) documents concerning the March 2017 Commonwealth Fiscal Plan and PayGo, and (5) documents about PayGo implementation, projections and  collections.  No more is necessary for the July 2 hearing.[3]

4.      This Objection is Movants' fourth privilege motion (and fifth discovery motion) that the Government Parties have had to oppose in what should be a narrow stay-relief proceeding.  Given the irrelevance of the discovery, these motions are nothing more than an abuse of process designed to harass the Government Parties, all at the expense of Puerto Rico's people.  The Objection should be overruled in its entirety.

## BACKGROUND

### I.      ERS'S FINANCIAL CRISIS

5.      In January 2017, when the Rosselló administration took office, ERS faced an

---

[3] The Government Parties reserve the right to object to the admission of documents on relevance and other grounds in accordance with the Court's May 13, 2019 scheduling order, ECF No. 505 in Case No. 17-BK-3566.

imminent liquidity crisis.  As the Congressional Task Force on Economic Growth in Puerto Rico

reported, as of June 30, 2015, ERS was "in a negative funded position" and "at risk of becoming

insolvent."[4]  The Task Force further reported that as of June 30, 2015, ERS had a "net pension

liability of $33.2 billion with a funded ratio of [negative] 1.8 percent."[5]

6.      At the same time, the Puerto Rico Legislature expanded AAFAF's role and

designated it as the only governmental entity authorized to renegotiate, restructure, and reach

agreements with creditors concerning public debt or other debt issued by any governmental entity.[6]

The AAFAF Enabling Act makes clear that AAFAF was created to act on behalf of every entity

within the Puerto Rico Government for purposes of the restructuring and restoring Puerto Rico to

fiscal responsibility and prosperity:

- The Act's preamble declares AAFAF "the only entity authorized to enter into a creditors' agreement and/or renegotiate or restructure the public debt, in whole or in part, or any debt issued by any Government body, including, but not limited to, agencies, boards, commissions, instrumentalities, public corporations or applicable political subdivision[s]."[7]

- Section 2 declares Puerto Rico's public policy that AAFAF "be the leading public corporation and instrumentality responsible for coordinating the sustainable use of resources and presenting a coordinated and global vision of the instrumentalities of the Government of Puerto Rico."[8]

- Section 5(a) empowers AAFAF to "act[] as fiscal agent, financial advisor, and reporting agent of *all entities* of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic crisis that Puerto Rico is currently undergoing."[9]

AAFAF is afforded a seat on the Board of Directors of each PROMESA covered entity,

---

[4] *See* Congressional Task Force on Economic Growth in Puerto Rico, Report to the House and Senate, 114th Congress (Dec. 20, 2016), available at:
https://www.finance.senate.gov/imo/media/doc/Bipartisan%20Congressional%20Task%20Force%20on%20Economic%20Growth%20in%20Puerto%20Rico%20Releases%20Final%20Report.pdf.
[5] *Id*. at 12.
[6] AAFAF Enabling Act § 8(q).
[7] AAFAF Enabling Act at 1 (Preamble).
[8] *Id*. § 2.
[9] *Id.* § 5(a).

including ERS.[10]  Consistent with its statutory mandate, AAFAF has been working closely with ERS and the Commonwealth to support their Title III restructurings and related proceedings, including litigation.[11]  AAFAF advises the entities it represents and coordinates among the different government stakeholders to further the island-wide restructuring efforts necessary to achieve PROMESA's dual goals of achieving fiscal responsibility and ensuring access to the capital markets.[12]

7.     In the summer of 2017, responding to ERS's "imminent insolvency," the Legislature enacted J.R. 188 and Act 106.  The legislation reformed Puerto Rico's retirement systems by having covered employers assume the pension obligations corresponding to their respective pensioners.  Through PayGo fees, employers must reimburse the Commonwealth for the actual payment amounts the Commonwealth advances to current pensioners.  Because ERS is no longer responsible for paying benefits, J.R. 188 and Act 106 eliminated employers' obligations to contribute to ERS, and ERS's right to receive any payments from employers.[13]

8.     The Pension Reform Legislation created a new "PayGo Fee," payable by "the Government, the Municipalities, the Legislative Branch, Court Administration and Public Corporations and other covered entities" to the Puerto Rico Treasury.[14]  PayGo Fees equal the "amount actually paid to Pensioners and Beneficiaries from each covered entity."[15]  Among other things, the legislation requires a new 401(k)-type system to fund current employees' retirements through the investment of individual employee contributions.  By contrast, the employer contributions under the now-defunct system were calculated as a percentage of each employer's

---

[10]  *Id.* § 16.
[11]  Collazo Decl. ¶ 7.
[12]  *See* PROMESA § 101(a).
[13]  *See* Act 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.
[14]  Act 106, § 2.1(b).
[15]  *Id.*

then current payroll, as opposed to the actual amounts paid to pensioners and beneficiaries as current benefits, and payable to the retirement systems.[16]

## II.    STAY RELIEF MOTION AND DISCOVERY

9.    Movants filed their renewed stay-relief motion on February 21, 2019, after the First Circuit Court of Appeals reinstated their adversary complaint in part on January 30, 2019.  The stay-relief motion is now set for hearing on July 2, 2019.

10.    Movants quickly sought expedited discovery.  Less than a week after filing their renewed stay-relief motion, Movants served broad discovery demands on the Government Parties. In response to those requests, the Government Parties have produced more than 1,700 documents, totaling nearly 12,000 pages, including (1) ERS bank records and financial statements, (2) Commonwealth liquidity reports, PayGo reports, and TSA cash flow reports, (3) legislative history, including daily journals, legislative voting records, and correspondence about the approval of Act 106 and J.R. 188, (4) documents concerning the March 2017 Commonwealth Fiscal Plan and PayGo, and (5) documents about PayGo implementation, projections and  collections. Together with the text of the legislation itself, these documents are sufficient to show (i) the amount of employer contributions that ERS received for July 1, 2016, through June 30, 2017; (ii) the amount of PayGo fees the Treasury Department has received from July 1, 2017 through February 15, 2019; (iii) the sources of those employer contributions and PayGo fees; (iv) the amounts of transfers from the account in which employer contributions were deposited before June 30, 2017; and (v) the methodology for calculating employer contributions under the prior law and PayGo fees under the current law.

---

[16] *Compare id. with* 3 L.P.R.A. § 787(f) (requiring each employer to make contributions to ERS calculated based on a percentage of current employee payroll).  Beginning in 2013, employers had been required to make a supplemental contribution to ERS that was not based on a percentage of payroll.  J.R. 188 and Act 106 also eliminated this Additional Uniform Contribution.  *See* J.R. 188, § 4; Act 106, §§ 2.1(b), 2.4(e).

11.     Movants nevertheless continued to press for documents relating to the planning and legislative intent behind J.R. 188 and Act 106.  Despite that discovery's irrelevance, the Government Parties sought to reach a reasonable compromise and have produced scores of documents relating to the legislation and PayGo and logged any documents they have withheld based on assertions of the deliberative-process privilege, executive privilege, attorney-client privilege, and work-product protection.

12.     By agreement with Movants, [17] the Government Parties served a categorical log on April 10, 2019.The Government Parties expressly reserved their right to amend the April 10, 2019 log and subsequently served a revised categorical log on April 12, an individual entry log on April 14 (for all documents withheld on deliberative process and executive privilege grounds), a revised individual entry log on April 22, and an individual entry log on May 9 (for all documents withheld in category 3 of the categorical logs).

## III.    PRIVILEGE BRIEFING

13.     Movants filed two separate motions challenging the Government Parties' privilege logs—one demanding production of *all* documents withheld under the attorney-client privilege, the attorney work-product immunity, and common-interest doctrine, and another seeking production of *all* documents withheld under the deliberative process and executive privileges.[18]

14.     On May 2, 2019, Judge Dein heard argument on these motions.  In a thorough and well-reasoned decision dated May 6, 2019, Judge Dein overruled Movants' objections on the deliberative process and attorney-client privileges on three of the privilege log categories to which Movants objected.[19]  Judge Dein also requested that the Government Parties provide supplemental

---

[17] March 21 Motion to Compel ¶ 35 ("Bondholders do not object to a categorical privilege log…."); April 1 Hrg. Tr. at 45:7-9 (Movants' counsel stated: "we don't have a categorical objection to a categorical approach.").
[18] Attorney-Client Motion to Compel; Deliberative Process Motion to Compel.
[19] May 6 Order.

submissions for (i) one category in the Government Parties' categorical privilege log, (ii) executive

privilege, and (iii) the Government Parties' assertion of deliberative process privilege over factual

material that cannot be segregated from deliberative material.[20]  She also ordered the Movants (i)

to notify the Court if, following the Government Parties' supplemental submissions, Movants'

objections still stood and (ii) submit to the Court a status report concerning the appropriate scope

of ongoing discovery on or before May 13, 2019.[21]

15.     The Government Parties filed their supplemental submissions on May 9.  On May

13, Movants and the Oversight Board submitted a joint status report, as Judge Dein requested in

her May 6 Order, in which they informed the Court that "[t]he Parties appreciate the Court's

attention to these matters, and will apprise the Court if it appears they need further assistance to

resolve any outstanding matters discussed at the May 2 hearing."[22]  Movants gave no indication

in the status report, or elsewhere, that they continued to object to the Government Parties' privilege

assertions.[23]

16.     Two days later, on May 15, Judge Dein issued a final order overruling Movants'

objections.[24]  The next day, Movants filed a renewed Motion to Compel, repeating the objections

that Judge Dein had already overruled.[25]  Following additional briefing, Judge Dein issued her

May 30 Order, which denied the Renewed Motion and affirmed the decisions set forth in her May

15 Order.[26]

## LEGAL STANDARD

17.     To reverse Judge Dein's rulings, Movants must demonstrate that Judge Dein's

---

[20] *Id.* at 9.
[21] May 6 Order at 4, 5, 7, 9, 10.
[22] Status Report, 17-3566-LTS, ECF No. 507 ¶ 5.
[23] May 16 Order at 2.
[24] May 16 Order at 3; May 15 Order.
[25] Renewed Motion.
[26] May 30 Order at 12.

decisions are "clearly erroneous or . . . contrary to law." *See* Fed. Rule. Civ. Proc. Rule 72(a).

The Court must accept Judge Dein's "findings of fact and the conclusions drawn therefrom unless,

after scrutinizing the entire record, [the court] 'form[s] a strong, unyielding belief that a mistake

has been made.'" *Phinney v. Wentworth Douglas Hosp*., 199 F.3d 1, 4 (1st Cir. 1999) (quoting

*Cumpiano v. Banco Santander P.R*., 902 F.2d 148, 152 (1st Cir.1990)).  Movants cannot satisfy

this exacting test.

## ARGUMENT

I.    **JUDGE DEIN'S DECISION TO UPHOLD THE GOVERNMENT PARTIES'
DELIBERATIVE PROCESS AND EXECUTIVE PRIVILEGES WAS CORRECT,
NOT CLEARLY ERRONEOUS.**

### A.    The Withheld Documents Are Predecisional, Deliberative Materials.

18.    As a threshold matter, Movants contend that virtually all documents the

Government Parties withheld on deliberative process privilege grounds are post-decisional,

because the only relevant decision for these purposes is the Commonwealth's March 13, 2017

Fiscal Plan calling for the Government to convert to a "pay-go" pension system.[27]  Judge Dein

correctly rejected this argument.

19.    A document is pre-decisional if the agency can (1) identify the decision to which

the document correlates; (2) establish that the document was prepared for the purpose of assisting

the agency with making the decision; and (3) verify that the document predates the decision.

*Providence Journal Co. v. Dept. of Army*, 981 F.2d 522, 557 (1st Cir. 1992); *see also New

Hampshire Right to Life v. U.S. Dept. of Health and Human Services*, 778 F.3d 43 (1st Cir. 2015).

20.    Judge Dein correctly held that all the documents withheld were pre-decisional and

that the certification of the March 13, 2017 fiscal plan did not make the deliberations regarding

---

[27] Objection ¶¶ 36-37.

J.R. 188 and Act 106 post-decisional: "the fiscal plan was merely a broad framework that governed the Governor's and legislature's separate, more detailed budgeting, spending, and legislative decisions [and] as has previously been ruled, PROMESA did not strip the legislature of the right to pass laws or the government's discretion to deliberate."[28]

21.     This ruling is consistent with this Court's repeated holding that Puerto Rico's Government retains its sovereign powers under PROMESA, including the power to legislate, which the Oversight Board lacks.[29]  It is also consistent with the factual record.  The March 13, 2017, Commonwealth Fiscal Plan is a high-level 37-page presentation that addresses nine governmental entities of the Commonwealth, of which ERS is but one.  The Fiscal Plan contains one slide on pension reform policy that lays out four broad principles: (1) converting to PayGo for current beneficiaries' payments, (2) segregating defined contribution payments for current employees and providing improved investment alternatives, (3) enrolling more employees in Social Security, and (4) reducing retirement benefit costs.[30]  While the Movants tout the Oversight Board's purported amendment to that fiscal plan as some sort of final decision that laid out all the details necessary to achieve these broad aims,[31] it consists of less than half a page of text that merely reiterates these same principles.[32]  Most damning for Movants, the Oversight Board itself acknowledged that "[t]he system overhaul shall be formulated by the Commonwealth and the

---

[28] May 2 Hrg. Tr. 19:7-12.

[29] *See Rosselló v. FOMB*, Adv. Proc. No. 18-080-LTS, 17 BK 3283-LTS, ECF No. 33, at 27 (D.P.R. Aug. 7, 2018) ("the Oversight Board has not been given power to affirmatively legislate"); *FOMB v. PREPA*, 17 BK 4780-LTS, ECF No. 471 (D.P.R. Nov. 16, 2017) at 12 (the Oversight Board's role does not include "detailed operational planning or direct executive authority over the implementation of" fiscal plans and budgets); *id*. at 16 ("PROMESA section 303 reserves the territory's political and governmental powers to the territory or 'any territorial instrumentality thereof.'"); *id*. at 18 ("PROMESA leaves the elected government in place and does not suspend it in favor of direct management by the Oversight Board."); *id*. at 16 ("[N]othing in [PROMESA] Titles I and II permits the [Oversight Board] to displace local government structures and authority.").

[30] Fiscal Plan, Slide 21, available at http://www.aafaf.pr.gov/assets/planfiscal13demarzo2017.pdf.

[31] Objection ¶ 36.

[32] The only difference is the amendment's adoption of a greater cost saving, a progressive reduction in pension outlays of 10% by 2020.

Board on or before June 30, 2017,"[33] thereby establishing that the reforms still had to be developed
and were not final.

22.     Thus, in an exercise of its sovereign powers and in keeping with the Oversight
Board's admonition, the Government engaged in deliberation and decision-making between the
March 13, 2017 Fiscal Plan's certification, J.R. 188's signing into law on June 25, 2017, and Act
106's enactment on August 23, 2017.[34]  The Government's deliberation and decision-making
during this period constituted the legislative process under Puerto Rico law.  *See FOMB v. PREPA*,
17 BK 4780-LTS, ECF No. 471 (D.P.R. Nov. 16, 2017) at 12, 16 (characterizing PROMESA fiscal
plans and budgets as "blueprints" for "overall strategy regarding the Commonwealth's revenues,
expenses, and general direction for responsible financial management").

23.     Judge Dein properly rejected the notion that J.R. 188 and Act 106 were merely the
"implementation" of the March 13, 2017 Fiscal Plan's four principles.  In contrast to the fiscal
plan's broad strokes, J.R. 188 and Act 106 include nearly 50 pages of detailed legislation that
constitute profound legal changes to the pension systems.  The details in the legislation are found
nowhere in the Fiscal Plan, and they could not have been devised without the Government's
separate deliberations and decisions.  To take just a few examples, Act 106 created an Accumulated
Pensions Payment Account that can receive funds from several different sources[35]; created a
Defined Contribution Program that includes an individual account for each pensioner[36]; and
identified members to serve on the Retirement Board of the Government of Puerto Rico.[37]  Thus,
it is incorrect to claim that there was no further decision for the elected Government to make after

---

[33] Board Resolution Adopted on March 13, 2017 at 4, available at:
https://drive.google.com/file/d/1gUz92TUNH37mZIE2Hv4pt-M9JmPeaxAE/view.
[34] *See* April 18 Yassin Decl. ¶ 4; April 22 Collazo Decl. ¶ 4; April 22 Mesa Decl. ¶ 4.
[35] Act 106 Section 2.1.
[36] Act 106 Section 3.1.
[37] Act 106 Section 4.1.

March 13, 2017.  No decision was complete until the passage J.R. 188 and Act 106.[38]

24.     Characterizing the Pension Reform Legislation as "merely implement[ing] the policy decision that had already been made with the adoption of the March 13, 2017 [F]iscal [P]lan"[39] would elevate the Fiscal Plan to a status superior to the acts of the Legislature and render the Oversight Board a supra-governmental authority, something this Court has repeatedly refused to do.  *See generally Rosselló v. FOMB*, Adv. Proc. No. 18-080-LTS, 17 BK 3283-LTS, ECF No. 33 (D.P.R. Aug. 7, 2018); *see also FOMB v. PREPA*, 17 BK 4780-LTS, ECF No. 471 (D.P.R. Nov. 16, 2017).  Indeed, in Movants' world, the entire PayGo system would be in operation now even if Puerto Rico's legislature had never enacted Act 106 or had Governor Rosselló vetoed it.  This is not a tenable position.

25.     Thus, Judge Dein's holding that each of the March 13, 2017 Fiscal Plan, J.R. 188, and Act 106 was a separate decision is far from clear error.  It is well-grounded in both facts and the law.  And Movants do not dispute that all the deliberative communications the Government Parties withheld predate one of these independent decisions.  Nor can Movants dispute that the privilege log and accompanying declarations identify each decision and its date, as well as describing in great detail why each document falls within the deliberative process privilege.[40]  The

---

[38] Movants cite no authority for the alleged requirement that the Government Parties must identify which documents relate to "implementation" decisions rather than "policy" decisions.  Objection ¶ 39.  In any case, to the extent Movants wish to characterize J.R. 188 and Act 106 as implementation decisions, the April 14 Log identifies which documents relate to those decisions.  The Log also identifies entry 105 as specifically regarding "Implementation of Act 106."

Movants also offer no authority for their contention that Judge Dein should have somehow weighed implementation decisions less than policy decisions under the *Bhatia Guatier I* balancing analysis.  Objection ¶ 39.

Movants' reliance on *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753 (D.C. Cir. 1978) and *Noel v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2018 WL 6649969 (S.D.N.Y. Dec. 18, 2018) is misplaced.  Objection ¶ 37.  *Jordan* concerned already determined "instructions or guidelines by the U.S. Attorney. . .directed at his subordinates," while *Noel* simply says the privilege does not extend to post-decision documents; it says nothing about the privilege's application to multi-decisional reforms such as Puerto Rico's conversion to PayGo.  *Jordan*, 591 F.2d at 754; *Noel*, 2018 WL 6649969 at 4-5.

[39] Objection ¶ 36.

[40] April 18 Yassin Decl. ¶¶ 9–10; April 22 Collazo Decl. ¶ 6; April 22 Mesa Decl. ¶ 7.

withheld documents therefore fall within the privilege's heartland.  *See Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)) (privilege protects communications that are "(1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'").

**B.    Judge Dein Correctly Concluded that the Government Parties' Declarations Invoking the Privilege Were Sufficient.**

26.    Movants also maintain that the Government Parties have waived any deliberative process privilege because they did not provide affidavits contemporaneously with the assertion of the privilege and from the head of the relevant agency.[41]  And Movants criticize Judge Dein for overruling these objections supposedly without explanation.[42]  Movants are wrong.

27.    Movants' procedural objections reduce, at most, to quibbles about the timing of the Government Parties' affidavit submissions.  Nothing in the applicable law, rules, or Court orders requires that affidavits invoking the deliberative process privilege be served simultaneously with a privilege log.  To the contrary, the privilege logs that the Government Parties submitted suffice on their own.  *See Starkey v Birritteri*, No. 12-10988-RWZ, 2013 WL 3984599, at *3 (D. Mass. Aug. 2, 2013) (quashing subpoena seeking deliberative process privileged materials even though party asserting privilege provided no affidavit).

28.    In the context of the extremely expedited document discovery schedule, *see* March 15, 2019 Scheduling Order at ECF No. 393 in Case No. 17-BK-3566, any minor delays[43] are *de minimis* and not prejudicial.[44]  Indeed, this is precisely the reasoning the Court invoked in rejecting

---

[41] Objection ¶ 40.
[42] Objection ¶ 41.
[43] As noted above, supporting declarations were filed on April 18 and April 22.
[44] Courts refuse to find automatic privilege waivers where (as here) a party has openly asserted a privilege.  *See Shea v. Mcgovern*, No. 1:08-12148-MLW, 2011 WL 322652, at *4 (D. Mass. Jan. 31, 2011) (no waiver of privilege even where a party "offered only sweeping generalizations of the materials sought to be protected"); *Noble v. City of*

12

Movants' arguments.[45]

29.     And even if there were such a requirement here, this is truly a case of "no harm, no foul."  The Government Parties' declarants were high-level officials who had the authority to speak on behalf of their respective entities.  These high-ranking government officials are fully occupied in their positions working for the people of Puerto Rico and could not, on the short schedule mandated by Movants' demands that their stay-relief motion be heard on an expedited basis, provide the necessary declarations together with the privilege logs.  But the Government Parties told Movants that the declarations were forthcoming when the logs were served, and Movants do not dispute that they had the declarations before briefing on their motion to compel concluded.

30.     Equally meritless is Movants' contention that the declarants were insufficiently senior to invoke the deliberative process privilege on behalf of the Government Parties.  Courts have held that agency heads can delegate their power to others.  *See Marriott Intern. Resorts, L.P. v. U.S.*, 437 F.3d 1302, 1308 (Fed. Cir. 2006) (holding that "the head of an Agency can, when carefully undertaken, delegate authority to invoke the deliberative process privilege on the Agency's behalf.").

## C.     The Government Parties Did Not Waive Privilege By Sharing Deliberative Materials With Each Other.

31.     Movants next contend that the Government Parties waived the deliberative process privilege over any shared documents with each other because the entities "have interests adverse to one another."[46]  Judge Dein correctly rejected those arguments, holding that the deliberative

---

*Fresno*, No. 1:16-cv-01690 DAD-BAM, 2018 WL 1381945, at *6 (E.D. Cal. Mar. 19, 2018) (no waiver of privilege where supporting affidavits were filed with an opposition to a motion to compel); *see also ERS v. Altair, et al.*, Adv. Proc. No. 17-00213-LTS, 17-3566-LTS, ECF No. 86 (D.P.R. Nov. 2, 2017) (ordering affidavit to support deliberative process privilege but finding no waiver).

[45] *See* May 2 Hrg. Tr. 58:10-14 ("There were procedural objections. I'm overruling those. I think they arose in the context of the need to produce a privilege log in a short amount of time, and I think that the objections have been dealt with in the amended privilege log.").

[46] Objection ¶¶ 42, 46.

process can and does protect inter-agency memoranda where, as here, the governmental entities share a common goal. Although Respondents' interests may not always be identical, they share a common interest in pension reform for the benefit of pensioners and are afforded the deliberative process privilege when acting in a concerted effort toward that goal.[47]

32.     Each of the Government Parties, and the Oversight Board, is an entity or instrumentality within Puerto Rico's Government. PROMESA § 101(c)(1), 48 U.S.C. § 2121(c)(1) ("An Oversight Board established under this section (1) shall be created as an entity within the territorial government for which it is established in accordance with this title."). As parts of the same Government, the Government Parties and the Oversight Board can and do share a deliberative process privilege where they are making joint decisions. *See Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 247 (D.D.C. 2017) ("The deliberative process can—as it did here—span between two different agencies.") (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 187-88 (1975)).[48]

33.     Further, the AAFAF Enabling Act makes clear that AAFAF and the entire Government of Puerto Rico enjoy a common interest with the Oversight Board in restructuring and fiscal reform efforts. Puerto Rico's Legislature created AAFAF to work "hand in hand" with the Oversight Board and every government instrumentality to "achieve fiscal responsibility and develop the Island's economy" and "reestablish[] access to capital markets."[49] One of AAFAF's "purposes, authorities, and powers" under the Act is to "be responsible for the collaboration,

---

[47] May 6 Order at 3, citing *Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 247 (D.D.C. 2017).

[48] *See also Texaco P.R., Inc.*, 60 F.3d at 884 ("The deliberative process privilege 'shields from public disclosure confidential inter-agency memoranda on matters of law or policy.'") (emphasis added) (citation omitted); *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) ("Since the document was pre-decisional and deliberative, the fact that the document passed from one agency to another does not terminate its privileged status." (citing *Renegotiation Bd.*, 421 U.S. at 188)).

[49] AAFAF Enabling, Statement of Motives, at 7.

14

communication, and cooperation between the Government of Puerto Rico and the Fiscal Oversight Board, created under PROMESA."[50]

34.　　Movants have conceded that ERS is "an instrumentality of the commonwealth" that was "organized as an agency of the Government of Puerto Rico."[51]　This places ERS squarely within AAFAF's coordinated restructuring responsibility.　*See* the AAFAF Enabling Act, section 2 (AAFAF is to "be the leading public corporation and instrumentality responsible for coordinating the sustainable use of resources and presenting a coordinated and global vision of the capital needs of the instrumentalities of the Government of Puerto Rico.").　Lest there be any doubt, the Act's "Statement of Motives" states that one of the important parts of the restructuring plan is to "[r]estructure the pension systems."[52]

35.　　Movants nonetheless contend that ERS cannot share a common interest with the Commonwealth and AAFAF because ERS is "independent and separate from" other Puerto Rico Government agencies.[53]　But under AAFAF's Enabling Act, this is irrelevant.　AAFAF's authority extends to "any Government body" of Puerto Rico, including "agencies, boards, commissions, instrumentalities, public corporations or applicable political subdivisions."[54]　Due to AAFAF's role as ERS's Fiscal Agent, the two by law share a common interest.[55]

36.　　While ERS, AAFAF, Puerto Rico's elected Government, and the Oversight Board may have differing interests in certain aspects of the fiscal plans, budgets, or other policy matters, those differences do not waive deliberative process privilege over joint decisions.　Such a rule would eviscerate the privilege's very purpose—to protect full and frank deliberations in which

---

[50] AAFAF Enabling Act § 5(a) at 9.
[51] April 15 Motion ¶ 21; April 22 Reply ¶ 14, quoting 3 L.P.R.A. § 775.
[52] AAFAF Enabling Act at 7.
[53] Objection ¶ 43.
[54] AAFAF Enabling Act, Preamble, at 1.
[55] *See also* discussion below regarding Movants' argument that ERS waives the attorney-client privilege.

governmental agencies and instrumentalities may disagree. *See Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 540 n.5 (S.D.N.Y. 2010) (privilege applied between government agencies "even if [one agency's] employees were representing separate interest or taking policy positions different than those of [another agency's] employees" and that "the interest of various agencies often diverge based on their different areas of responsibility and expertise.").

37.     The importance of preserving their full and frank deliberations cannot be understated. The Puerto Rico Government's ability to shape and implement policy for its people necessitates a comprehensive approach requiring the involvement of all the Government Parties and the Oversight Board. *See* PROMESA § 405(m)(4) (economic health of Puerto Rico and its ability to serve its people requires "[a] comprehensive approach to fiscal, management, and structural problems and adjustments that exempts no part of the Government of Puerto Rico" throughout the process).[56]

38.     Movants are equally off the mark in contending that ERS and the Commonwealth cannot share a common interest because, when the Title III proceedings began, the Commonwealth and its instrumentalities owed ERS more than $411 million in past-due employer contributions, thereby creating an adverse debtor-creditor relationship.[57] While a debtor-creditor relationship between private parties may preclude a common interest, that is not the case where governmental entities are involved. This is because governmental entities owe overarching duties to the people they serve, and unlike private entities that can be wound up and dissolved, governmental entities must continue to function and serve the people's interests.

39.     This is clear in *In re Richmond Unified School District*, 133 B.R. 221 (Bankr. N.D.

---

[56] In support of their argument, Movants cite *People for Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28 (D.D.C. 2007) and *Shell Oil Co. v. IRS*, 772 F. Supp. 202, 203–04 (D. Del. 1991). Objection ¶ 42. These cases are inapposite since they involve communications between different governments as well as with private entities.
[57] Objection ¶¶ 43-44, 46. This issue is addressed below in regard to the attorney-client privilege.

Cal. 1991)—a case that the Government Parties cited to Judge Dein repeatedly but Movants never address. There, the court held that because there is no concept of a bankruptcy estate in a government restructuring, there is no conflict between governmental entities just because one is a creditor of the other. Instead, governmental entities must all exercise their sovereign power in service to the same constituents—here, the people of Puerto Rico. *See id*. at 226 (holding that the school district may dismiss its Chapter 9 case because there is no conflict between district and its creditor, the State of California). Pension reform designed to ensure that pensioners receive their benefits while returning Puerto Rico to financial responsibility and fiscal health (as PayGo is intended to do) serves this higher purpose and advances the interests of all Puerto Rico governmental entities and people.

40.     The cases Movants cite for the so-called rule that the common interest doctrine does not apply to a debtor and creditor negotiating a business transaction are thus inapposite. *See In re Fisher Island Invs., Inc*., No. 11016947-AJC, 2015 WL 148449, at *2 (S.D. Fla. Jan. 9, 2015) (denying common interest where Chapter 11 creditor corporation sought a judgement against debtor corporation); *SCM Corp. v. Xerox Corp*., 70 F.R.D. 508, 513 (D. Conn. 1976) (denying common interest in non-bankruptcy business negotiations between parties in joint venture); *Khoday v. Symantec Corp*., No. 11-180, (JRT/TNL), 2013 WL 12140484, at *3 (D. Minn. Sept. 24, 2013) (holding that common interest existed between joint defendants).

41.     Nor does it matter, as Movants contend, that ERS was contractually obligated through its bond resolution to oppose legislation that would reduce employer contributions. Like any other contracting party, public entities such as ERS have the right to breach a contract and pay damages when the public interest requires. *See TM Park Ave. Assoc. v. Pataki*, 214 F.3d 344, 348-49 (2d Cir. 2000) ("The state, like any private party, must be able to breach contracts . . . ."). *See*

17

*also Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1250 (7th Cir. 1996) ("[W]hen a state repudiates a contract to which it is a party it is doing nothing different from what a private party does when the party repudiates a contract; it is committing a breach of contract.").[58]

42.     But as a governmental entity, ERS's obligation to serve the public is inescapable. From ERS's inception, its purpose and duty has been to benefit public employees by ensuring the flow of pension payments to retirees.[59]  Nothing in ERS's Enabling Act requires ERS to (i) maintain the prior pension system instead of converting to a PayGo system under which retirees' former employers pay the pensions (rather than ERS) or (ii) prioritize creditor interests over the public interest when performing its statutory responsibilities.[60]  To the contrary, ERS's Enabling Act makes clear that it exists to benefit retirees: "The funds of the system created herein shall be used and applied, as provided in this act, for the benefit of the participating members of its membership, their dependents and beneficiaries, for payment of retirement and disability annuities, death benefits and annuities, and other benefits . . . ."[61]

**D.     Judge Dein Did Not Clearly Err in Concluding that Movants' Professed Need for the Deliberative Process Privileged Documents Did Not Outweigh Harm from Disclosure.**

43.     Movants also argue that Judge Dein's ruling should be reversed because Movants have a "substantial need" for the Government Parties' deliberative process privileged documents.[62] But as Judge Dein recognized, these documents, which Movants seek to show the Government Parties' "intent," are entirely irrelevant to the stay-relief motion, so Movants' professed "need" for these documents cannot outweigh the Government Parties' interest in protecting them.  Since

---

[58] *See also* discussion above regarding Movants' argument that ERS waives the deliberative process privilege.
[59] *See* 3 L.P.R.A § 761.
[60] April 18 Collazo Decl. ¶ 15.
[61] Act 112-2004 Section 1-101 (emphasis added).
[62] Objection ¶ 26.

Movants filed their Objection on May 20, 2019, this Court fortified Judge Dein's ruling, granting the Government Parties' motion in limine and holding that such intent evidence has little or no relevance to the stay-relief motion.  June 5 Order, ECF No. 544 at 5.

44.     In particular, Judge Dein concluded that the Government Parties have already produced any information relevant or necessary to the stay-relief motion: "Bondholders have not shown a substantial need for the withheld information, specifically in connection with the Stay Relief Motion.  The factual information necessary for Movants to present their position to the Court on that motion has been produced. Thus, the Court declines to override the otherwise properly asserted deliberative process and executive privileges."[63]

45.     Judge Dein's holding is correct and consistent with the law.  As an initial matter, Movants fail to explain how any of the deliberative-process documents could serve as evidence that would support lifting the stay—the only issue now before the Court.  *See, e.g.*, *United States v. Estrella*, 567 F.2d 1151, 1153 (1st Cir. 1977) (speculation as to information's usefulness insufficient to overcome privilege claim).  The only questions for the Court are whether (i) Movants' collateral (if any) equals or exceeds the value of the claim it secures, (ii) the collateral is diminishing in value, and (iii) if so, ERS has otherwise protected Movants' interests.  *See In re Ledis*, 259 B.R. 472, 476–77 (Bankr. D. Mass. 2001) (creditor entitled to relief only insofar as "claim exceeds the value of the collateral and the Debtor has not offered some other form of adequate protection"); *In re 1606 New Hampshire Ave. Assocs.*, 85 B.R. 298, 309 (Bankr. E.D. Pa. 1988) (adequate protection largely a function of changes in collateral's value).  *See also* Apr. 18 Opp. ¶ 39 n. 4 (regarding challenges to validity of the bonds).  In other words, even if the privileged documents could reveal the underlying intent of the drafters of J.R. 188 and Act 106, Movants

---

[63] May 6 Order at 5; *see also* May 2 Hrg. Tr. at 58:1–6.

19

have not shown how that purported intent could possibly concern the subject matter for this stay

relief litigation.  This alone should end the debate, as this Court has now also held.  *See* June 5

Order.

46.     But even if the intent behind the legislation were somehow relevant, the inquiry

should not go beyond the statutory text itself because it is clear and unambiguous.  *Rojas v. Méndez*

*& Co., Inc.*, 115 D.P.R. 50, 54, 15 P.R. Offic. Trans. 66 (P.R. Jan. 9, 1984) ("The clear text of the

law is the expression par excellence of the legislative intent.") (quoting *Rodríguez Rodríguez  v.*

*Gobernador*, 91 D.P.R. 101, 107 (P.R. Oct. 23, 1964); *see also* Article 14 of the Civil Code of

Puerto Rico, 31 L.P.R.A. § 14 ("When a law is clear and free from all ambiguity, the letter of the

same shall not be disregarded, under the pretext of fulfilling the spirit thereof.").  Movants

themselves have asserted that J.R. 188 and Act 106 are clear on their face.  *See, e.g.*, *ERS*

*Bondholders' Amended and Supplemented Adversary Complaint*, Adv. Proc. 17-219-LTS, ECF

No. 34-1, Sixth Claim For Relief, ¶ 157 ("[T]he Post-Petition Legislation, *on its face*, constitutes

an unconstitutional taking of their Pledged Property without just compensation in violation of the

U.S. and P.R. Takings Clauses.") (emphasis added).

47.     Moreover, as Judge Dein correctly concluded, the Government Parties have

produced "what's needed for the lift stay motion," that is, documents regarding "the actual

workings of both the pre- and post-PayGo systems."[64]  Nor is there any secret about where any of

the money at ERS went.  ERS has produced documents showing the various account balances and

transfers that occurred while the stay has been in place.[65]  Movants therefore cannot substantiate

---

[64] May 2 Hrg. Tr. at 58:1-6.
[65] Movants have conceded as much in their counsel's sworn declaration, stating that they have received (among other things): (1) bank records and financial statements of ERS from May 2016 to January 2019; (2) Puerto Rico bank account balance reports, liquidity reports, PayGo reports, and TSA cash flow reports; (3) legislative history, including senate and house of representatives daily journals, legislative voting records, and correspondence about the approval of Act 106 and J.R. 188; (4) documents concerning the March 2017 Commonwealth Fiscal Plan giving rise to the Pay-Go plan; and (5) numerous documents about Pay-Go's implementation, various Pay-Go payment

their need.  *See Xcel Energy, Inc. v. U.S.*, 237 F.R.D. 416, 420 (D. Minn. 2006) (insufficient need to overcome deliberative process privilege where information available from other sources); *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 110 (S.D.N.Y. 2005) (insufficient need to overcome deliberative process privilege where, *inter alia*, information available in multitude of pages already produced); *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05-MD-01695 CM GAY, 2007 WL 724555, at *2, 10 (S.D.N.Y. Mar. 9, 2007) (insufficient need to overcome work product protection where defendants produced documents on same subject matter and in same time frame).

48.   Finally, whatever "need" Movants could assert for these documents cannot outweigh the policy considerations undergirding the deliberative-process privilege.  Turning every deliberative communication regarding the fiscal plan and legislation into litigation fodder would chill discussions critical to fiscal plan development, the legislative process, and Puerto Rico's restructuring efforts.[66]  *See Hinckley v. U.S.*, 140 F.3d 277, 286 (D.C. Cir. 1998) (applying privilege in part because "granting Hinckley access to the Review Board's internal deliberations would seriously endanger the future candor of such discussions").  The interest in confidentiality here far outweighs Movants' assertions of need.  *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("ultimate purpose" of deliberative process privilege "is to prevent injury to the quality of agency decisions by allowing government officials freedom to debate alternative approaches in private"); *Bhatia Gautier v. Gobernador*, 199 D.P.R. 59, 84 (2017) (recognizing government's "need" "to keep[] certain sensitive information confidential" to prevent prejudice).

---

delinquencies, Pay-Go projections, employer contributions that were received and those projected to come in.  Isel Perez Declaration, April 26, 2019 (ECF No. 476-1.)
[66] April 18 Yassin Decl. ¶¶ 9–10; April 22 Collazo Decl. ¶ 6; April 22 Mesa Decl. ¶ 7.

E.     **Judge Dein's Decision that Factual Information Cannot Be Segregated From
the Privileged Documents Is Not Clearly Erroneous.**

49.     Movants next assert that the withheld documents contain segregable factual information that should be produced on its own.  Again, Movants are wrong.  As Judge Dein recognized, and as the supplemental declarations submitted by the Government Parties make clear, the supposed "factual information" Movants seek is intertwined with the privileged discussions at the heart of these documents.[67]  Disclosure of such information would reveal the Government Parties' deliberations.

50.     To support their assertion of deliberative process privilege over this factual material, the Government Parties submitted no fewer than five sworn declarations from three high-ranking government officials (i) identifying in general terms (so as not to reveal the privileged information) the factual material withheld and (ii) explaining how and why disclosing that information would invade the privilege.  Thus, Judge Dein explained, "to the extent that financial information is being used, AAFAF has made clear that those numbers, both pre- and post-measures, are part and parcel of the policy alternatives being discussed," and therefore "[t]he Court does not find that Respondents have provided only vague explanations for their withholding," but rather that "AAFAF has met its burden to show that facts in these spreadsheets were thus tied to the deliberative communications between officials."[68]

51.     Movants try to draw a false distinction between (i) "'post-measures' information [that] could reveal the proposals under consideration," and are therefore protected by the deliberative process privilege and (ii) "'pre-measures' information" that "reflects the projections in the absence of any change," which Movants contend would not be protected.[69]  This fabricated

---

[67] May 30 Order at 11.
[68] *Id*.
[69] Objection ¶ 31; Renewed Motion ¶ 7.

dichotomy is contrary to law and cannot stand in the face of the Government Parties' declarations.

52. The law shields from disclosure any facts that would reveal the Government's deliberations; it draws no distinction between pre- and post-measure information. May 15 Order at 3-4 ("While Bondholders are correct that factual information is not protected by the privilege, '[t]he question is not merely whether the documents contain factual information—or even whether the document is predominantly comprised of findings of fact—but rather the degree to which the facts are indissolubly linked to the broader analysis.'") (quoting *Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014)); *In re U.S.*, 321 F. App'x 953, 960-961 (Fed. Cir. 2009) ("[I]t is well-recognized that factual matter contained in government documents can expose deliberations in certain circumstances, and requiring production of the factual information in or related to draft decisions or letters would reveal the government officials' deliberations concerning what factual matter was or was not appropriate for inclusion in the final agency decision or letter.").

53. As noted in the May 30 Order, the Government Parties "provided sufficient detail concerning the withheld documents to carry their burden and show that factual information is intertwined with the privileged deliberations."[70] As an example, Judge Dein notes that Movants attack an explanation in section 4(f) of the May 9 Yassin Declaration, yet that explanation provides ample detail supporting the deliberative process privilege claim:[71]

> Draft spreadsheet analyses of the March 13, 2017 Commonwealth Fiscal Plan providing alternative projections of general fund revenues and expenses, including both premeasures and post-measures financial gap between revenues and expenses from 2017 to 2026. The projections, which include PayGo, **were used by decision makers** to determine appropriate revenue and expenditure levels for governmental entities under the Fiscal Plan. Disclosing these spreadsheets would reveal pension reform proposals and assumptions that were under consideration, thereby revealing the decision makers' thought process.

54. Under these circumstances, Judge Dein's decision was not clear error or contrary

---

[70] May 30 Order at 10-11.
[71] May 30 Order at 11, quoting May 9 Yassin Decl. ¶ 4(f) (emphasis added).

to law, and it should be affirmed.

**F.     Judge Dein's Decision that AAFAF May Be Party to Executive Privileged Communications Was Not Clearly Erroneous.**

55.     Movants also demand disclosure of numerous documents protected by the executive privilege—including pre-decisional, deliberative drafts of J.R. 188 included in communications with Fortaleza officials, leading to the enactment of the statute—on the grounds that AAFAF is not within the group of people or entities who may be party to executive privileged communications.[72]  This is so, Movants argue, because AAFAF is "an independent government entity," *id.*, rather than one of the Governor's respective "subordinates, counselors or assistants," *Bhatia Gautier*, 199 D.P.R. at 89.

56.     First, the Court need not decide this issue because the documents protected by the executive privilege are also protected by the deliberative process and other privileges.  Second, AAFAF is encompassed by the executive privilege, as reflected in its Enabling Act.  The law empowers AAFAF "to collaborate in conjunction with the Governor of Puerto Rico and his representatives in the creation, execution, supervision, and oversight of any Fiscal Plan and any Budget."[73]  By virtue of the very law creating AAFAF, it is a "counselor" and "assistant" to the Governor and may participate in executive privileged communications. *See Bhatia Gautier*, 199 D.P.R. at 89–90 (executive privilege protects communications between First Executive and advisors, assistants, or other public employees); *Corporación Insular de Seguros v. García*, 709 F.Supp. 288, 295–96 (D.P.R. 1989) (executive privilege protects communications between Government's chief executive and a wide range of government officials, including government

---

[72] Objection ¶¶ 47; *see, e.g.*, April 14 Log, entries 82-84.
[73] AAFAF Enabling Act § 5(b).

agencies independent of the executive branch").[74]  Movants cite no contrary authority.

57.   Consistent with AAFAF's purpose and Puerto Rico's executive privilege authorities, Judge Dein concluded in her May 30 Order held that "[t]he executive privilege protects 'communications between the First Executive and his respective subordinates, counselors or assistants.'"[75]  She explained, "AAFAF is mandated by statute to work with the Governor, and by extension the Governor's office, throughout the Commonwealth's restructuring."[76]  And she concluded, "[t]he Court found at the May 2 Hearing, and affirms again here, that AAFAF, as an advisor to the Governor, is able to claim the executive privilege in connection with the governmental decisions at issue in the ERS Stay Relief Motion regarding pension reform."[77]  This puts the lie to Movants' contention that Judge Dein somehow failed to explain her reasoning.

58.   Movants also contend that their need for the executive privileged documents somehow outweighs the Government's interest in their protection.  For the reasons discussed above concerning deliberative process privilege, Movants have failed to demonstrate any need (much less a compelling one) for these documents.

## II.   JUDGE DEIN PROPERLY DENIED MOVANTS' MOTION TO COMPEL PRODUCTION OF ATTORNEY-CLIENT PRIVILEGED DOCUMENTS.

59.   Movants do not contest that documents the Government Parties withheld on attorney-client privilege grounds are, in fact, privileged.  Instead, they contend that the Government Parties have waived that privilege over those documents—which Movants apparently also seek to support their flawed "intent" theory—because (i) they include (i) various advisors the government retained for the critical purpose of its historical restructuring, or (ii) the Government

---

[74] Movants offer no additional arguments that their need for documents outweighs any harm from disclosure, other than to cite to their previous arguments in regard to the deliberative process privilege.

[75] May 30 Order at 5, citing *Bhatia Gautier*, 199 D.P.R. at 89 (2017) (translation provided at ECF No. 446).

[76] May 30 Order at 5, citing Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act 2-2017 §§ 5(b), 8(h).

[77] May 30 Order at 5.

Parties do not share a common interest.  Movants have apparently abandoned the argument they made below that the "crime-fraud" exception to the attorney-client privilege somehow applies here.  Movants' contentions are meritless.

### A.     The Documents Shared With Third Parties Remain Privileged.

60.     Movants first argue that documents shared with non-lawyer advisors are not protected by the attorney-client privilege because the advisors' participation in those communications waived privilege.  Judge Dein correctly rejected this argument.

61.     Judge Dein held that, in the First Circuit, "for the presence of third parties to not constitute waiver, three elements must be present" and then explained that the Government Parties had demonstrated through sworn declarations that the withheld documents met each of those three elements.[78]  First, the third-party communications at issue were "necessary, or at least highly useful, for the effective consultation between the client and the lawyer"[79]  because "multiple parties are needed for the effective resolution of Puerto Rico's restructuring."[80] Second, the communications "serve[d] to translate information between the client and the attorney"[81] because "Respondents have . . . show[n] that these third parties serve a critical role in translating complex information necessary to effectuate the restructuring."[82]  Third, the communications were "made for the purpose of rendering legal advice, rather than business advice"[83] because the category descriptions for category 1, 2, and 4 in the April 12 Log indicate that the communications served a legal purpose as they "concern ongoing litigation," "relate to the legality of certain reform

---

[78] May 30 Order at 7-9.
[79] May 30 Order at 7, quoting *Columbia Data Prods., Inc. v. Autonomy Corp.*, 2012 WL 6212898 at *15 (D. Mass. Dec. 12, 2012) (internal quotations and citations omitted).
[80] May 30 Order at 7.
[81] May 30 Order at 7, quoting *Columbia Data Prods., Inc. v. Autonomy Corp.*, 2012 WL 6212898 at *15 (D. Mass. Dec. 12, 2012).
[82] May 30 Order at 7.
[83] May 30 Order at 7, quoting *Columbia Data Prods., Inc. v. Autonomy Corp.*, 2012 WL 6212898 at *15 (D. Mass. Dec. 12, 2012) (internal quotations and citations omitted).

proposals," and "concern the legality of proposed legislation," respectively.[84]  The document-by-document May 9 Log, supplementing category 3 of the April 12 Log, confirmed that those communications served a legal purpose because the entries noted that, for example, the communications were with counsel "providing and reflecting legal advice."[85]

62.    These holdings are not only amply supported by the undisputed factual record, but also well-grounded in the law.  The documents in categories 1-4 of the April 12 Log (and the May 9 individual entry log for category 3) all include confidential communications "providing, requesting and/or discussing legal advice" on specified topics and involving both in-house and outside counsel.  In total, the log lists more than 60 lawyers in the aggregate sender/recipient fields for these documents.  Advisors are also identified on the log itself, along with a lengthy appendix with more than 180 entries detailing the client affiliation and title or role for each person.[86]

63.    The privileged communications involving advisors must be viewed in context.  Puerto Rico's restructuring is unique, both in that it is a government (not private) restructuring and the most massive such undertaking in U.S. history.  The unique aspects of this unprecedented project require that Respondents retain advisors to help with this effort.  This is truly a situation where the "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others."[87]  As the First Circuit explained in *Cavallaro*, where counsel cannot effectively handle a client's affairs without the help of others, the presence of the agents necessary to the legal advice cannot waive the privilege.[88]

---

[84] May 30 Order at 8-9.

[85] May 30 Order at 9, citing entry number 5 of the May 9 Log.

[86] The appendix gives the name of each person, the entity with whom that person is associated, and each person's title or role.  For example, the appendix lists over 60 attorneys, both in-house and outside counsel, from various entities, and explains for whom each individual provided legal advice.  The appendix does the same for non-legal advisors.

[87] *Cavallaro v. United States*, 284 F.3d 236, 247 (1st Cir. 2002) (internal quotations and citations omitted).

[88] *Id*.

64.     The Commonwealth's restructuring involves approximately 150 different governmental entities in all—essentially all aspects of the Commonwealth Government, from the retirement systems to electrical generation and transmission to highways and public transportation, a university system, police, firemen, other emergency responders, health care, and public education, to name a few.  No one entity could possibly have all the expertise in-house to: (1) understand the issues in each aspect of the restructuring such that they could develop and communicate the appropriate facts to counsel advising on the restructuring, or (2) understand the implications of counsel's legal advice for the government function in question.  Thus, as Judge Dein correctly recognized, the Government Parties had to hire various advisors to act as translators in understanding and communicating with counsel concerning the functions and factual issues involved in various government operations, as well as the effects of any legal advice on those day-to-day functions. [89]

65.     As Mr. Collazo's declaration explains, for ERS, specialized advisors' involvement was necessary to understand the consequences of pension reform and to assess the actuarial liabilities the retirement system faced.[90]  This informed advice from counsel on various matters related to the restructuring.  For example, and hypothetically: (1) ascertaining and understanding the amount of actuarial liabilities could be relevant to advice on whether to seek Title III restructuring or try to resolve issues in a Title VI restructuring, or how much flexibility to allow in trying to negotiate a consensual, rather than court-administered, restructuring, and (2) understanding the law concerning which liabilities could be adjusted or discharged versus which liabilities cannot be altered under any circumstances could help shape the kind of pension reform adopted.  This is precisely the sort of translator role that *Cavallaro* contemplates.

---

[89] May 15 Order at 8.
[90] April 18 Collazzo Decl. ¶ 14.

28

66.     Moreover, to the extent that the advisors did not act as translators, they still played a role in the restructuring that essentially made them employees of the entities they advised.[91] This, too, is an exception to the rule that sharing attorney-client privileged communications with a third party waives any privilege.[92]  For example, AAFAF and the Oversight Board are relatively small organizations that have to rely on outside advisors as though they were employees. Otherwise, it would be impossible to manage Puerto Rico's sprawling restructuring, especially in light of reforms that seek to decrease the number of government employees.  The Oversight Board has only seven members (plus the governor's representative) working on a voluntary basis to serve the people of Puerto Rico; there is also an executive director and a legal counsel to the Board.[93] But the Board does not have the army of economists, financial advisors, management consultants, and subject matter experts on its staff to develop and prepare the various facts and analyses that lawyers need to advise on Puerto Rico's restructuring.  The same is true for AAFAF.  For much of the relevant period, it had fewer than 30 employees.[94]   And even though the number of employees has increased over time, AAFAF still does not have the capacity to handle all aspects of a complex restructuring on its own and must rely on outside subject matter experts.[95]  Thus, independent of the *Cavallaro* test, the agents' involvement should also be found ***not*** to waive privilege because in these circumstances, they were effectively employees of AAFAF and the Oversight Board.

---

[91] April 18 Yassin Decl., ECF No. 453, ¶¶ 8, 9.

[92] *See In re Bieter Co.*, 16 F.3d 929, 935-938 (8th Cir. 1994); *see also Crowley v. L.L. Bean, Inc.*, No. CIV. 00-183-PC, 2001 WL 103541, at *3 (D. Me. Feb. 1, 2001).

[93] *See* FOMB, https://oversightboard.pr.gov/fombteam/ (last visited June 1, 2019).

[94] *See* the website for Oficina del Contralor for Puerto Rico at:
https://consultaspuestos.ocpr.pr/frmconsultanomina.aspx (last visited June 5, 2019).  For "Entidad" select "Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico," for "Fecha" select relevant month and 2017, and for "Tipo" select "Puestos."  AAFAF's number of employees appears in the column with heading "Ocupados al Final del Mes."  For 2017, AAFAF had 22 employees in March, 19 in April, 22 in May, 29 in June, 34 in July, and 36 in August.  *Id.*

[95] April 18 Yassin Decl., ECF No. 453, ¶¶ 8, 9.

B.      **Common Interest Exists Between ERS and the Other Government Parties.**

67.     Movants also argue that, just as with the deliberative process privilege, the Government Parties cannot share a common interest protecting their communications from waiver. For the reasons discussed above, this is wrong, and Judge Dein correctly held as much.  Movant also contend that the common interest doctrine cannot apply to the attorney-client privilege here because the Government Parties lack an identical (or nearly identical) legal interest as opposed to a merely similar and shared interest.  Judge Dein correctly rejected those arguments, too.

68.     The May 6 Order explained that "[a]lthough ERS and the Commonwealth may be adverse in some respects, with respect to the issues presently before the Court, they share a common interest in pension reform for the benefit of pensioners."[96]  Judge Dein concluded that the common interest doctrine "does not require a complete unity of interests among the participants. The privilege applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects."[97]

69.     Contrary to Movants' contention, courts have long held that parties can have shared common interests even if their interests diverge elsewhere.  *See, e.g.*, *In re Mortg. & Realty Tr.*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997) ("The common interest privilege does not require a complete unity of interests among the participants.") (citing *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965)); *In re Tribune Co.*, No. 08-13141 KJC, 2011 WL 386827, at *4 (Bankr. D. Del. Feb. 3, 2011) ("[T]he community of interest privilege can apply to parties whose interests are not totally in accord."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, No. CIV. CCB-03-3408, 2012 WL 4378160, at *2 (D. Md. Sept. 24, 2012) (applying common interest where parties had a shared interest in reorganization plan approval despite being in competition

---

[96] May 6 Order at 8.
[97] May 6 Order at 8, quoting *In re Mortg. & Realty Tr.*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997).

30

for funds that would be distributed).

70.     No case requires that all the parties' interests in everything under the sun must align. The cases Movants cite merely recite that a common interest "typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest," but that interest need only be in the particular issue implicated by the attorney-client communication. *FDIC v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000) (no requirement that the parties' interests must all be the same to invoke a common interest); *see also, e.g.*, *Hilsinger Co. v. Eyeego, LLC*, No. 13-cv-10594, 2015 WL 11120842, at *2 (D. Mass. Aug. 13, 2015) (same). If the rule required *all* the parties' interests to align, no two parties could ever enjoy a common interest sufficient to shield their attorney-client privileged communications from waiver. But that is not the law.

71.     Here, as described above, the Government Parties all have an identical interest in (i) preserving retirees' benefits while (ii) restoring Puerto Rico to fiscal responsibility and prosperity. This gives rise to common legal interest in designing and effecting enforceable, lawful pension reforms that further these goals. And AAFAF, in its unique role under its Enabling Act, ensures that all governmental entities, including the Government Parties, are cooperating toward achieving that interest.

## III.   JUDGE DEIN'S DENIAL OF MOVANTS' DEMAND FOR ATTORNEY WORK-PRODUCT WAS NOT CLEARLY ERRONEOUS.

72.     Movants argue that the Government Parties' attorney-work-product claims should be overruled because (i) the Government parties have failed to establish that the documents were "prepared for *use* in litigation," (ii) Movants have a substantial need for the materials such that the work product immunity must yield,[98] and (iii) the Government Parties waived work-product

---

[98] Objection ¶¶ 56-58, quoting, with emphasis added, *United States v. Textron Inc.*, 577 F.3d 21, 29 (1st Cir. 2009) (en banc).

protection by sharing protected documents between "adversaries" such as ERS and the Commonwealth.[99]

73.     Movants' contentions are beside the point.  As Judge Dein correctly held, "the Court need not rule on whether the Government Parties appropriately invoked the work product doctrine"[100] because "[w]here the Court has upheld the Respondents' assertions of privilege on other grounds, it need not reach an independent ruling on the work product doctrine."[101]  Movants have no response to Judge Dein's ruling and simply ignore the issue.  That alone should end the matter.  *See Sprague v. Thorn Americas, Inc*., 129 F.3d 1355, 1372 (10th Cir. 1997) ("[W]e are convinced that under federal and Kansas law the critical memorandum and information sought by the motion to compel are protected by the attorney-client privilege. Since this privilege applies, it is unnecessary for us to consider the work product privilege."); *Koninklijke Philips N.V. v. Zoll Lifecor Corp.*, No. 2:12-CV-1369, 2014 WL 12601009, at *9 (W.D. Pa. June 18, 2014) ("[H]aving concluded that the 2004 email is properly subject to attorney-client privilege, it is unnecessary to decide whether that email is entitled to further protection as work-product.").

74.     But Movants are wrong, in any event.  The Government Parties' May 9 Log belies Movants' contention that the Government Parties' work-product assertions are not sufficiently tied to litigation.  The May 9 Log details the dates, parties, and subject matters of the communications and makes clear that the withheld documents are tied to litigation, which has been ongoing with Movants since 2016.

75.     And contrary to Movants' argument,[102] the mere fact that some of Government

---

[99] Objection ¶ 59.
[100] May 15 Order.
[101] May 30 Order, citing *Sprague v. Thorn Arms., Inc.*, 129 F.3d 1355, 1372 (10th Cir. 1997); *see also* May 15 Order at 6.
[102] Objection ¶¶ 56-58.

Parties' documents were prepared both for litigation and restructuring purpose does not rob them of work-product protection.  Work product encompasses documents "which are called into existence for the purpose—but not necessarily the sole purpose—of assisting the deponent or his legal advisers in any actual or anticipated litigation." *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 26 (1st Cir. 2009) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 n.9 (1947)); *see also Mississippi Pub. Employees' Ret. Sys. v. Bost. Sci. Corp.*, 649 F.3d 5, 31 n.24 (1st Cir. 2011) ("[A]n attorney's work product does not lose protection merely because it is also 'intended to inform a business decision influenced by the prospects of the litigation.'") (citing *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 68 (1st Cir. 2002)); *U.S. v. Deloitte LLP,* 610 F.3d 129, 138 (D.C. Cir. 2010) (under the "because of" work-product test "material generated in anticipation of litigation may also be used for ordinary business purposes without losing its protected status").

76.    As for a professed "substantial need" that overcomes work-product protection, Movants have identified no specific need, other than simply asserting that they lack sufficient documents to show "what happened to Movants' collateral."[103]  This is a far cry from shouldering Movants' heavy burden of "demonstrat[ing] that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and 'special circumstances' excuse the movant's failure to obtain the requested materials itself."  *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 155 (D.C. Cir. 2015).  Generalizations that a party "needs" attorney work product are not sufficient to require disclosure.

77.    As discussed, the documents the Government Parties have already produced (together with the public record) more than satisfy Movants' professed "need."  What happened to the employer contributions under the old pension system is clear from the face of the statutes at

---

[103] Objection ¶ 60.

issue—J.R. 188 and Act 106.  There was no secret about these laws.  They were passed as part of a public legislative act.  They stem from a publicly disclosed fiscal plan.  The legislative history behind them is public.  Their effect on Movants' collateral, under the Bond Resolution, can be discerned from the statutory text.  As this Court has now held, "[t]hese issues must be determined based on the legal effects of the Pension Reform Legislation rather than the parties' alleged intentions as to what those effects should be."  June 5 Order at 6.

78.     Finally, Movants' argument that the Government Parties waived work-product protection over certain documents that were shared among "adversaries" such as ERS (Objection ¶ 59) fails for the same reasons as their waiver arguments regarding the deliberative process and attorney-client privileges, discussed above.

## CONCLUSION

For the reasons above, and especially in light of the Court's June 5 Order, Movants' Objection to Judge Dein's May 6 and May 15 Orders should be overruled.

Dated: June 6, 2019
     San Juan, Puerto Rico

_/s/ William J. Sushon_                                _/s/Luis C. Marini-Biaggi_

John J. Rapisardi                                         Luis C. Marini-Biaggi
Suzzanne Uhland                                       USDC No. 222301
Peter Friedman                                        lmarini@mpmlawpr.com
William J. Sushon
(Admitted _Pro Hac Vice_)
**O'MELVENY & MYERS LLP**                   Carolina Velaz-Rivero
Seven Times Square                               USDC No. 300913
New York, New York 10036                 cvelaz@mpmlawpr.com
(212) 326-2000
jrapisardi@omm.com
suhland@omm.com                             **MARINI PIETRANTONI MUÑIZ LLC**
pfriedman@omm.com                          250 Ponce de León Ave., Suite 900
wsushon@omm.com                          San Juan, Puerto Rico 00917
                                             Tel: (787) 705-2171
Elizabeth L. McKeen                        Fax: (787) 936-7494
(Admitted _Pro Hac Vice_)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660                _Attorneys for the Puerto Rico Fiscal_
Tel: (787) 294-9508                         _Agency and Financial Advisory Authority,_
Fax: (787) 294-9519                         _on its own behalf and as representative of_
emckeen@omm.com                         _the Commonwealth of Puerto Rico and the_
                                             _Employees Retirement System for the_
_Attorneys for the Puerto Rico Fiscal_      _Government of the Commonwealth of_
_Agency and Financial Advisory_             _Puerto Rico_
_Authority, on its own behalf and as_
_representative of the Commonwealth of_
_Puerto Rico and the Employees_
_Retirement System for the Government_
_of the Commonwealth of Puerto Rico_