**Objection Deadline:** July 9, 2019
**Hearing Date:** July 24, 2019

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>      Debtors.[1] | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 <u>CONCERNING PRIFA RUM TAXES</u>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

JURISDICTION .................................................................................................................. 6

BACKGROUND ................................................................................................................. 6

I.     The Parties ............................................................................................................. 6

II.    The Commonwealth "Claws Back" the Pledged Rum Taxes. ............................ 7

III.   The Commonwealth Continues to Transfer Rum Taxes to the Rum Companies. ... 8

IV.    The Oversight Board Commences Title III Proceedings on Behalf of the Commonwealth
       and Other Covered Entities, but not on Behalf of PRIFA ............................... 9

RELIEF REQUESTED ...................................................................................................... 10

BASIS FOR RELIEF REQUESTED ................................................................................ 11

I.     Ambac Is Entitled to Rule 2004 Discovery Into the Rum Taxes. ................... 11

II.    The Information Sought Is Essential to Ambac's Ability to Meaningfully Participate in the
       Resolution of These Title III Cases .................................................................. 13

III.   Ambac's Requests Are Relevant and Narrowly Tailored to the Subjects at Issue. ... 15

CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1 ....... 16

NOTICE .............................................................................................................................. 16

NO PRIOR REQUEST FOR RELIEF ............................................................................. 17

CONCLUSION ................................................................................................................... 17

CERTIFICATE OF SERVICE ......................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re China Fishery Grp. Ltd.*,
2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ............................................................13

*In re Coffee Cupboard, Inc.*,
128 B.R. 509 (Bankr. E.D.N.Y. 1991)..................................................................................12, 14

*In re Drexel Burnham Lambert Grp., Inc.*,
123 B.R. 702 (Bankr. S.D.N.Y. 1991)..................................................................................11, 14

*ePlus, Inc. v. Katz* (*In re Metiom, Inc.*),
318 B.R. 263 (S.D.N.Y. 2004)....................................................................................................11

*Freeman v. Seligson*,
405 F.2d 1326 (D.C. Cir. 1968) ..................................................................................................11

*In re Gawker Media LLC.*,
2017 WL 2804870 (Bankr. S.D.N.Y. 2017) ...................................................................11, 12, 1

*In re Hughes*,
281 B.R. 224 (Bankr. S.D.N.Y. 2002) .................................................................................11, 12

*In re Int'l Fibercom, Inc.*,
283 B.R. 290 (Bankr. D. Ariz. 2002) .........................................................................................16

*In re Ionosphere Clubs, Inc.*,
156 B.R. 414 (Bankr. S.D.N.Y. 1993) ........................................................................................11

*In re Johns-Manville Corp.*,
36 B.R. 743 (Bankr. S.D.N.Y. 1984) ..........................................................................................12

*In re Marathe*,
459 B.R. 850 (M.D. Fla. 2011) ...................................................................................................11

*Lorber v. Vista Irrigation Dist.*,
127 F.2d 628 (9th Cir. 1942) ...................................................................................................5, 14

*In re Recoton Corp.*,
307 B.R. 751 (Bankr. S.D.N.Y. 2004) ..................................................................................12, 14

*In re Summit Corp.*,
891 F.2d 1 (1st Cir. 1989)............................................................................................................12

*In re Washington Mut., Inc.*,
    408 B.R. 45 (Bankr. D. Del. 2009) ........................................................................16

**Statutes**

3 L.P.R.A. § 1914 .....................................................................................................6, 16

32 L.P.R.A. § 1781 .......................................................................................................14

11 U.S.C. § 1109(b) ......................................................................................................12

26 U.S.C. § 7652 .......................................................................................................7, 16

28 U.S.C. § 1331 ........................................................................................................2, 6

28 U.S.C. § 1391(b) ...................................................................................................2, 6

48 U.S.C. § 2170 ..........................................................................................................11

**Other Authorities**

Fed. R. Bankr. P. 2004 ..............................................................................................3, 12

Fed. R. Civ. P. 34 ..........................................................................................................8

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), made applicable to this proceeding by Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Ambac Assurance Corporation ("Ambac") hereby moves for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), to take discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) of PROMESA; (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"); (iii) the Commonwealth; (iv) the Puerto Rico Infrastructure Financing Authority ("PRIFA"); and (v) the Puerto Rico Industrial Development Corporation ("PRIDCO," and together with the Oversight Board, AAFAF, the Commonwealth, and PRIFA, "Respondents").  In support of its motion, Ambac states as follows:

## PRELIMINARY STATEMENT

1.      Since 2015, the Commonwealth has been taking a stream of rum taxes belonging to PRIFA and pledged as collateral to PRIFA's bondholders, and holding those funds or using them for the Commonwealth's general purposes.  By this motion, Ambac seeks to understand what the Commonwealth has been doing with those monies, including identifying and quantifying what funds in the Commonwealth's possession are either not property of the debtor or are restricted funds.  Ambac also seeks to understand the Commonwealth's ongoing transfer of rum taxes to certain rum producers based in Puerto Rico on an apparent theory that such transfers are economically stimulative.  Both inquiries are essential to any progress that can made in respect of a confirmable Commonwealth plan of adjustment.

2.     The background of the Commonwealth's "clawback" scheme is by now familiar to the Court.[2] PRIFA has issued approximately $1.6 billion in bonds secured by federal excise taxes on sales of Puerto Rico rum the ("Rum Taxes"). The U.S. government collects the Rum Taxes and remits them to the Commonwealth. In 1988, the Commonwealth transferred its rights in a portion of the Rum Taxes to PRIFA (up to a maximum of $117 million per fiscal year), and PRIFA then granted creditors (including Ambac) a lien on those monies (the "Pledged Rum Taxes"). The Pledged Rum Taxes are "pledged special revenues" afforded special treatment under the Bankruptcy Code. *See* 11 U.S.C. §§ 902(2)(B), 922(d), 928(a). Beginning in late 2015, the Commonwealth began taking the Pledged Rum Taxes. PRIFA and its creditors have not seen a penny of the Pledged Rum Taxes since.

3.     Specifically, the Governor of Puerto Rico issued a series of executive orders mandating the taking of the Pledged Rum Taxes (among other funds securing different revenue bonds). The Puerto Rico Legislative Assembly followed suit, passing various moratorium and other statutes to lend a legislative imprimatur to the Governor's collateral grabs. Following the passage of PROMESA, the Oversight Board consolidated the diversion by certifying various fiscal plans that effectively mandated the permanent taking of PRIFA's and its creditors' property.

4.     Basic questions concerning the amount of money taken, where the money has been held, and the uses to which it has been put remain entirely unanswered.

5.     At the same time as it has been taking the Pledged Rum Taxes, the Commonwealth has continued transferring Rum Taxes to private rum producers based in Puerto Rico, such as Bacardí, Club Caribe, Séralles, and others (the "Rum Companies"). On information and belief,

---

[2] *See, e.g.*, *Ambac Assurance Corporation's Motion and Memorandum of Law in Support of Its Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds*, Case No. 17-3283-LTS (Dkt. No. 7176) (filed May 30, 2019) (the "Automatic Stay Motion").

these transfers are made pursuant to certain agreements between the Commonwealth and/or its instrumentalities (likely PRIDCO), on the one hand, and the Rum Companies, on the other.  The agreements were purportedly designed to incentivize the Rum Companies to remain on island by providing for incentive payments and/or tax breaks or concessions.  The Rum Companies' right to receive any Rum Tax monies, however, is subordinate to PRIFA's and its creditors' interests in the Pledged Rum Taxes.  Here, too, Ambac has no visibility into these transfers of Rum Tax funds to the Rum Companies.

6.     The foregoing topics are directly relevant to the financial condition of the Commonwealth, and especially to the assets available to repay its creditors, insofar as various fiscal plans have treated the Pledged Rum Taxes as resources available to the Commonwealth. These subjects are at the core of Rule 2004 discovery.  *See* Fed. R. Bankr. P. 2004(b) (allowing examination relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate"). Unfortunately, the Commonwealth has resisted creditor inquiries of this sort at every turn, and appears poised to do the same in response to this motion.

7.     In a meet-and-confer conducted by the parties in advance of this motion pursuant to Local Bankruptcy Rule 2004-1, counsel for AAFAF tentatively agreed to consider asking its client to produce certain very limited forms of information, such as bank account balances and flows of funds.  Counsel otherwise indicated an unwillingness even to ask their client about key topics—such as any lobbying efforts by the Rum Companies to ensure the ongoing flow of Rum Taxes to them even while PRIFA is in default.  Other requests—such as the agreements with the Rum Companies themselves—were met with vague assurances that counsel would inquire into the subject with their client, notwithstanding the unquestionable relevance of those agreements, the

minimal burden in locating them, and the fact that such agreements should be publicly available under Puerto Rico law.  Counsel also made clear that AAFAF intends to seek refuge—as it has so many times before—in the deliberative process privilege, without even evaluating whether there is factual information responsive to Ambac's request that does not constitute deliberative pre-decisional material.  And finally, counsel stated, without any basis, that discovery into information that may be relevant to a future objection to a proposed plan of adjustment would somehow exceed the proper scope of Rule 2004.

8.  Ambac has been down this road before in these Title III cases.  With respect to the Puerto Rico Sales Tax Financing Authority ("COFINA"), Ambac sought information concerning the impact of Hurricanes Irma and María on collections of sales-and-use taxes securing COFINA's bonds—information that was plainly relevant to the financial condition of that particular debtor. With regard to the Commonwealth's pension liabilities—estimated by the Commonwealth to total as much as $50 billion—Ambac has sought information concerning the underlying assumptions used to determine the Commonwealth's past and future funding obligations and related back-up data.  In each instance, Ambac has been met with the same stonewalling that, unfortunately, has served the Commonwealth all too well during these proceedings.  Indeed, with respect to the pension issue, after a year-and-a-half of trying a consensual approach, Ambac has no choice but to move formally under Rule 2004, which it expects to do in short order.

9.  Ambac does not have the luxury of enduring months or years of drawn-out negotiations over the essential information sought herein concerning the Rum Taxes, and then wait for an actual meaningful production of relevant information.  The Oversight Board has indicated that it intends to file a proposed plan of adjustment for the Commonwealth this month.  Earlier this week, the Oversight Board's Executive Director stated that she expects a Commonwealth plan to

go effective by January 1, 2020.  *See* "Oversight Board Cites Jan. 1, 2020 as Expected Effective Date for Commonwealth Plan of Adjustment," *Reorg Research*, June 4, 2019.  Setting aside whether such a timetable is feasible—especially with respect to a plan that is expected to be the target of myriad substantial objections—it is clear that the time has come for transparency into the Commonwealth's treatment of the Pledged Rum Taxes, and its activities with respect to other Rum Taxes.

10.    In prior disputes concerning Rule 2004 discovery into the Commonwealth's fiscal plan, Judge Dein has correctly rejected the Oversight Board and AAFAF's arguments that Rule 2004 inquiry is somehow foreclosed because the topics may have relevance to a future plan of adjustment that has yet to be proposed.  *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 295 F. Supp. 3d 66, 73 (D.P.R. 2017) (rejecting Respondents' argument that Rule 2004 discovery is unwarranted where it bears on a future plan of adjustment on the theory that "the materials to be turned over 'will likely be completely irrelevant to the eventual plan of adjustment'" (quoting Respondents' brief)).

11.    Ambac is entitled to explore the financial condition of, and the assets available to, the Commonwealth, with an eye to understanding "the maximum that the [debtor] could reasonably pay" before any confirmation proceedings.  *Lorber v. Vista Irrigation Dist.*, 127 F.2d 628, 639 (9th Cir. 1942).  The Commonwealth's use of the Pledged Rum Taxes—and its ongoing transfer of Rum Taxes to subordinate creditors on a pseudo-stimulus theory—is a key component of that inquiry.  For that reason, Ambac respectfully requests the entry of an order, substantially in the form attached hereto, authorizing Ambac to pursue the requested Rule 2004 discovery and requiring the Respondents to comply with Ambac's requests forthwith.[3]

---

[3] Although most of the requests are entirely distinct from any requests that would be made in respect of the Automatic Stay Motion, Ambac appreciates that a small subset—specifically, Request Nos. 1-4 and 25—

## JURISDICTION

12.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1331 and PROMESA § 306(a).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a).

## BACKGROUND

### I.     The Parties

13.     Ambac is a provider of financial guaranty insurance, whereby it guarantees scheduled payments of principal and interest as and when due on bonds and other obligations. Ambac is a holder and/or insurer of more than $529 million in bonds issued by PRIFA and secured by the Pledged Rum Taxes.  To date, Ambac has paid approximately $167 million in claims on account of PRIFA's bond defaults, and has filed a proof of claim against the Commonwealth in respect of its PRIFA exposures (among others).  Ambac also owns and/or insures bonds issued directly by the Commonwealth, as well as other Commonwealth instrumentalities.

14.     The Oversight Board is an entity created by PROMESA "to provide a method for a covered territory [including the Commonwealth] to achieve fiscal responsibility and access to the capital markets."  48 U.S.C.A. §§ 2121(a), (b)(1).  The Oversight Board is the representative of the Commonwealth in its Title III proceedings.

15.     AAFAF is a public corporation created by Act 21-2016, as amended and superseded by Act 2-2017 (the "AAFAF Enabling Act").  The AAFAF Enabling Act confers upon AAFAF

---

call for information that Ambac has discussed with counsel for AAFAF in connection with the Automatic Stay Motion.  Should AAFAF agree to provide such information in connection with the Automatic Stay Motion on a timely basis, Ambac would promptly withdraw the relevant requests from any Rule 2004 process.  At the same time, however, the Oversight Board and AAFAF are seemingly of the view that any discovery in connection with the Automatic Stay Motion occur many months down the line.  The information sought by Request Nos. 1-4 and 25 is directly relevant to the financial condition of, and assets available to, the debtor—topics that are of critical importance to various developments in the Title III cases more broadly.

responsibility for negotiating with creditors, and communicating and collaborating with the Oversight Board, on Puerto Rico debt restructuring efforts.

16.     PRIFA is a public corporation created by Act 44-1988 (the "PRIFA Enabling Act") for the purpose of providing financial and other types of assistance to political subdivisions, public agencies, and instrumentalities of the Commonwealth.  The PRIFA Enabling Act authorized PRIFA to issue bonds and to secure such bonds by granting a security interest in the Pledged Rum Taxes.  *See* 3 L.P.R.A. §§ 1906(m), 1907(a).  PRIFA has issued debt with an outstanding principal amount of approximately $1.6 billion secured by the Pledged Rum Taxes.

17.     PRIDCO is a public corporation tasked with promoting business investment in Puerto Rico.  On information and belief, PRIDCO was a party to certain agreements providing for the transfer of Rum Taxes to the Rum Companies.  On further information and belief, PRIDCO has been and continues to be a Commonwealth instrumentality through which the transfers of Rum Taxes to the Rum Companies are effected.  *See infra* Point III.

## II.     The Commonwealth "Claws Back" the Pledged Rum Taxes.

18.     On November 30, 2015, the Governor of Puerto Rico issued Administrative Bulletin OE-2015-046 (the "First Clawback Order"), which declared that cash flow projection for the then-current fiscal year was insufficient to pay general obligation debt and ordinary course appropriation payments and ordered the Secretary of the Treasury to stop transferring revenues to PRIFA.  In 2016, under color of the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act (the "Moratorium Act"), the Governor suspended all PRIFA bond payments and stayed all creditor lawsuits against PRIFA.  *See* Moratorium Act § 201(a)-(b); Moratorium Order 14, Administrative Bulletin OE-2016-14 (Apr. 30, 2016); Moratorium Order 30,

Administrative Bulletin EO-2016-30 (June 30, 2016); Moratorium Order 31, Administrative Bulletin EO-2016-31 (June 30, 2016) (collectively, the "Moratorium Orders").

19.     After PROMESA "preempt[ed] and supersede[d] provisions of the [original] Moratorium Act," including those sections that created an explicit moratorium on debt payments, the Governor signed into law the Puerto Rico Financial Emergency and Fiscal Responsibility Act (the "Amended Moratorium Act") on January 29, 2017.  The Amended Moratorium Act repealed certain sections of the Moratorium Act, but replaced them with functionally identical provisions, including a provision that maintained the moratorium on the transfer of the Pledged Rum Taxes (among other funds) to PRIFA (among other revenue bond issuers).  *See* Amended Moratorium Act § 208(e); Moratorium Orders.

20.     On March 13, 2017, the Oversight Board certified a fiscal plan, which required the ongoing use of the Pledged Rum Taxes (among other funds) for general Commonwealth expenses. On April 29, 2017, the Governor signed into law Act 26-2017, entitled the "Fiscal Plan Compliance Act."  Since that time, the Commonwealth has developed, and the Oversight Board has certified, numerous subsequent fiscal plans, each of which likewise has required the taking of the Pledged Rum Taxes.  The monies taken from PRIFA and its bondholders beginning in 2015 have been retained by the Commonwealth and/or used to pay general Commonwealth expenses.

## III.     The Commonwealth Continues to Transfer Rum Taxes to the Rum Companies.

21.     On information and belief, in or around 2008, the Rum Companies expressed to the Commonwealth government their desire to relocate their operations from Puerto Rico to a more competitive jurisdiction.  In response to those discussions, the Commonwealth agreed to offer certain incentive payments and tax breaks to induce the Rum Companies to remain on island. Specifically, the Commonwealth and/or PRIDCO (and potentially other Commonwealth entities)

entered into agreements with the Rum Companies whereby certain amounts of the Rum Taxes would be transferred on an ongoing basis to the Rum Companies as a subsidy for their operations. The agreements are express that the contractual obligation to transfer Rum Taxes to the Rum Companies is subordinate to the Commonwealth's statutory obligation to transfer the Pledged Rum Taxes to PRIFA for payment on its bonds.

22.     On further information and belief, since the agreements with the Rum Companies were executed, the Commonwealth and/or PRIDCO (or potentially other Commonwealth entities) have transferred Rum Taxes to the Rum Companies as provided for by the agreements on an uninterrupted basis, including after the clawback of the Pledged Rum Taxes began in 2015 and after the Commonwealth's Title III proceedings were initiated in 2017.

## IV.    **The Oversight Board Commences Title III Proceedings on Behalf of the Commonwealth and Other Covered Entities, but not on Behalf of PRIFA.**

23.     On May 3, 2017, the Oversight Board filed a Title III petition on behalf of the Commonwealth.  Subsequently, the Oversight Board filed Title III petitions on behalf of certain Commonwealth instrumentalities.  To date, the Oversight Board has not filed Title III petitions on behalf of PRIFA or PRIDCO—the two Commonwealth instrumentalities at issue in this motion.

24.     Since the commencement of Title III proceedings more than two years ago, the Commonwealth's taking of the Pledged Rum Taxes for its own uses has continued unabated.  And as indicated above, Ambac understands that the Commonwealth has continued to transfer Rum Taxes to the Rum Companies without any post-petition interruption, notwithstanding the subordinate nature of the Commonwealth's agreements with the Rum Companies.

25.     The Oversight Board has not yet filed a proposed plan of adjustment for the Commonwealth.  However, it has indicated on multiple occasions that it expects to do so

imminently. Consistent with that expectation, the Oversight Board recently prognosticated that its forthcoming plan of adjustment will be effective as early as January 1, 2020.

## **RELIEF REQUESTED**

26. Pursuant to Bankruptcy Rule 2004, Ambac requests entry of an order:

a. Directing Respondents to produce responsive, non-privileged documents requested on Attachment 1 to Exhibit A for examination by Ambac;

b. Directing that the Commonwealth's Chief Financial Officer submit to an examination under oath on such date and time and at a location in Puerto Rico as designated in writing by Ambac on not less than 14 days' notice;

c. Directing that the Commonwealth's Secretary of the Treasury submit to an examination under oath on such date and time and at a location in Puerto Rico as designated in writing by Ambac on not less than 14 days' notice;

d. Directing Respondents to designate an individual or individuals with knowledge of the matters described in Exhibit A hereto and to produce such individual or individuals to be examined by Ambac under oath on such date and time and at such location in Puerto Rico as may be designated in writing by Ambac on not less than 14 days' notice; and

e. Authorizing Ambac to issue subpoenas directing the production of documents and the examination of other witnesses who may have knowledge of the matters described in Exhibit A without separate application to this Court for each subpoena or witness, and in accordance with the procedures set forth herein and in the Proposed Order.

f.      Authorizing Ambac to issue interrogatories to Respondents on Attachment
2 to Exhibit A without separate application to this Court, and in accordance
with the procedures set forth herein and in the Proposed Order.

## **BASIS FOR RELIEF REQUESTED**

**I.      Ambac Is Entitled to Rule 2004 Discovery Into the Rum Taxes.**

27.     Pursuant to Section 310 of PROMESA, the Federal Rules of Bankruptcy Procedure
apply to Title III proceedings and civil proceedings arising thereunder.   48 U.S.C. § 2170.
Accordingly, Rule 2004 of the Bankruptcy Rules is applicable to these proceedings.

28.     Rule 2004 allows an examination relating to the "acts, conduct, or property or to
the liabilities and financial condition of the debtor, or to any matter which may affect the
administration of the debtor's estate."  Fed. R. Bankr. P. § 2004(b); *see also In re Marathe*, 459
B.R. 850, 860 (M.D. Fla. 2011) (Rule 2004 discovery of third parties is warranted when those third
parties have had dealings with the debtor).

29.     Although PRIFA and PRIDCO are not debtors, "[b]ecause the purpose of the Rule
2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a
relationship with the debtor can be made subject to a Rule 2004 investigation."  *In re Ionosphere
Clubs, Inc.*, 156 B.R. at 432; *see also Freeman v. Seligson*, 405 F.2d 1326, 1333 (D.C. Cir. 1968);
*ePlus, Inc. v. Katz* (*In re Metiom, Inc.*), 318 B.R. 263, 268 (S.D.N.Y. 2004).

30.     The granting of a motion under Rule 2004 is within the discretion of the Court.  *See
In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. 2017) ("Rule 2004 gives
the Court 'significant' discretion.") (citation omitted).   Furthermore, section 105(a) of the
Bankruptcy Code "sets out the power of the bankruptcy court to fashion orders as necessary
pursuant to the purposes of the Bankruptcy Code."  *In re Hughes*, 281 B.R. 224, 226 (Bankr.
S.D.N.Y. 2002) (quoting *In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir. 1986)).

31.     "The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad." *In re Drexel Burnham*, 123 B.R. at 711.  In line with the broad scope of Rule 2004, the target of Rule 2004 discovery is not limited to the debtor itself.

32.     Rule 2004 provides that any party in interest may move for examination.  Fed. R. Bankr. P. 2004(a).  As a significant long-term creditor of the Commonwealth, Ambac is a party in interest entitled to information regarding the Commonwealth's treatment of the Pledged Rum Taxes and transfer of Rum Taxes to the Rum Companies.  *See In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) ("Courts have generally construed the term 'party in interest' as used in 11 U.S.C. § 1109(b) liberally."); *see also In re Johns-Manville Corp.*, 36 B.R. 743, 747-48 (Bankr. S.D.N.Y. 1984) (finding that the term "party in interest" is to be construed broadly).

33.     Financial information about the debtor, its assets and liabilities, including information relating "to the operation of any business and the desirability of its continuance . . . and any other matter relevant to the case or to the formulation of a plan," are appropriate subjects of a Rule 2004 request.  *In re Gawker Media LLC*, 2017 WL 2804870, at *5; *see In re Hughes*, 281 B.R. at 226 ("Rule 2004 of the Federal Rules of Bankruptcy Procedure provides courts with the authority to order examinations with respect to the financial matters of debtors[.]").

34.     Similarly, creditors may obtain discovery into any matter regarding the "nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

35.     As such, information relating to the Commonwealth's taking and use of the Pledged Rum Taxes is precisely the type of information that Rule 2004 is designed to cover.  *See In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent

and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)).   Information concerning the Commonwealth's obligations to and transfer of Rum Taxes to Rum Companies—apparently on the theory that such transfers result in a net benefit to the Commonwealth economy—likewise goes to the financial condition of the Commonwealth, and thus cuts to the core of the purpose of Rule 2004 discovery.  *Id.*

## II.      The Information Sought Is Essential to Ambac's Ability to Meaningfully Participate in the Resolution of These Title III Cases.

36.      In assessing Rule 2004 motions, courts balance the competing interests of the parties, "weighing the relevance of and necessity of the information sought by examination."  *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017).  Further, courts look to whether the party seeking to conduct a Rule 2004 examination has demonstrated good cause.  *In re Gawker Media LLC*, 2017 WL 2804870, at *5.  This can include a showing that the information requested is necessary to the claim of the party seeking examination or that denial of the request would cause the examiner undue hardship or injustice.  *Id.* (citation omitted).

37.      Ambac has demonstrated good cause to conduct a Rule 2004 examination.  As the Title III proceedings move forward, it is critical that creditors have transparency into the financial condition of the debtor and the assets available to it to repay its debts.  An essential component of that inquiry is to explore the Commonwealth's treatment of the Pledged Rum Taxes and transfer of Rum Taxes to the Rum Companies.

38.      Indeed, discovery into the Pledged Rum Taxes is particularly important because those funds have been treated as resources available to the Commonwealth in the fiscal plans—even though the Commonwealth cannot use those funds in any plan of adjustment for the reasons set out in Ambac's Automatic Stay Motion.  All creditors need to understand the true financial

13

condition of the Commonwealth, including how much of the cash that is currently held by the Commonwealth actually belongs to PRIFA—issues that the requested discovery will address.

39.     In addition, Ambac will suffer "undue hardship [and] injustice" if it is not provided the information it seeks.  *See In re Drexel Burnham*, 123 B.R. at 712.  Without the information sought, Ambac will be unable to participate meaningfully in the process of advancing these Title III cases towards successful plans of adjustment.  Discovery of this critical information is the very "purpose of a Rule 2004 examination."  *In re Recoton Corp.*, 307 B.R. at 755; *see also In re Coffee Cupboard, Inc.*, 128 B.R. at 514.  Information that sheds light on the financial condition of the debtor is fundamental to Ambac's ability to evaluate any restructuring proposals.

40.     Creditor access to such information is a fundamental tenet of PROMESA and Puerto Rico law.  Title III of PROMESA provides that creditors are entitled to information that enables them to make informed decisions about potential restructurings.  *See, e.g.*, 48 U.S.C. §§ 2146(a), 2161(a), 2231(f).  In addition, the Commonwealth government has recognized the importance of informational transparency, adopting laws to ensure that citizens have access to information about public entities such as AAFAF, the Oversight Board, and the Commonwealth itself.  *See, e.g.*, 32 L.P.R.A. § 1781 (granting citizens the right to inspect and copy any public documents, subject to certain exceptions).

41.     Ambac is also contractually entitled to this information under agreements related to its financial guaranty insurance policies; indeed, Ambac issued its policies in part in consideration of the agreement to make information available.  As early as April 6, 2015, Ambac requested information regarding the financial condition of PRIFA, among other revenue bond issuers.  When no response was received, Ambac reiterated its requests for information on July 9, 2015.  These requests were similarly ignored.

42. The Commonwealth's taking of Ambac's property—and its simultaneous transfer of Rum Taxes to the Rum Companies (a more favored political constituency)—highlight the need for transparency to ensure that any proposed plan of adjustment does all that is reasonably possible to maximize creditor recoveries. *See Lorber v. Vista Irrigation Dist.*, 127 F.2d 628, 639 (9th Cir. 1942) (a municipal debtor's plan of adjustment may be approved only upon a factual finding that the recovery proposed for creditors is "the maximum that the [debtor] could reasonably pay"); *see also* 6 Collier 943.03(1)(f)(i) ("A plan under chapter 9 is fair and equitable if the amount to be received by the bondholders is all that they 'can reasonably expect in the circumstances.'"). The Commonwealth's diversion of the Pledged Rum Taxes from PRIFA and its bondholders, while continuing to transfer Rum Taxes to the Rum Companies, only amplifies the need for transparency. *Id.*

## III. Ambac's Requests Are Relevant and Narrowly Tailored to the Subjects at Issue.

43. Ambac's information requests are narrowly tailored and targeted at discovering specific information needed to understand the amounts, movements, locations, and uses of the Pledged Rum Taxes that the Commonwealth has clawed back since 2015, as well as the facts and data relied upon by the Commonwealth in determining to transfer Rum Taxes to the Rum Companies, even while clawing back the Pledged Rum Taxes.

44. Although Ambac's Automatic Stay Motion relates to the clawback of the Pledged Special Revenues, the vast majority of the requests herein relate to distinct issues concerning transfers and uses of Rum Taxes to the Rum Producers that are not implicated by the Automatic Stay Motion. Moreover, as noted above (*see supra* at 5 n.3), to the extent there is any overlap between the requests herein and those that may be made in the Automatic Stay Motion, Ambac would withdraw those requests to the extent it is permitted to pursue them in the context of the

Automatic Stay Motion (over the Oversight Board and AAFAF's current objection to the taking of any discovery in connection with that motion).

45.     Ambac's primary purpose in seeking discovery pursuant to Rule 2004 here is to allow it to better understand the Commonwealth's financial condition and any restructuring proposals made by the Commonwealth.  As such, there are no grounds to deny the motion based on the pending proceeding rule.  *See In re Washington Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) (while "discovery of evidence related to the pending proceeding must be accomplished in accord with more restrictive provisions of the Federal Rules of Bankruptcy Procedure, . . . unrelated discovery should not be subject to those rules simply because there is an adversary proceeding pending") (citation omitted); *see also In re Int'l Fibercom, Inc.,* 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("Consequently when the Rule 2004 examination relates not to the pending adversary litigation, but to another matter, the 'pending proceeding' rule does not apply.").

## CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1

46.     Undersigned counsel hereby certifies that, prior to filing this motion, they notified counsel for the Oversight Board and AAFAF of Ambac's intent to conduct an examination of the Commonwealth pursuant to Rule 2004 and offered to meet and confer regarding this motion. Counsel to the parties met-and-conferred by telephone on June 4, 2019.  In light of that conversation and the Oversight Board and AAFAF's prior objections to Rule 2004 discovery sought by Ambac, undersigned counsel does not believe that an additional meet-and-confer would be productive.

## NOTICE

47.     Under the Ninth Amended Case Management Procedures, the deadline to file an objection to this Motion is July 9, 2019.  Ambac therefore provides the following notice pursuant to Rule 2004-1(d) of the Puerto Rico Local Bankruptcy Rules, modified accordingly with respect

to the objection deadline: Any party who objects to the examination shall serve and file an objection or motion for protective order with the United States Bankruptcy Court for the District of Puerto Rico by July 9, 2019.  If no objection or motion for protective order is timely filed, the court may grant the motion for examination without further notice or a hearing.

## NO PRIOR REQUEST FOR RELIEF

48.     No prior request for the relief sought herein has been made by Ambac to this or any other Court.

## CONCLUSION

Ambac respectfully requests authority to direct the production of documents, the examination of witnesses, and direct responses to interrogatories pursuant to Rule 2004 as set forth herein and consistent with the Proposed Order, and that Ambac be granted such other and further relief as is just and proper.

(*Remainder of Page Intentionally Omitted*)

Dated:  June 7, 2019
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*

Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Dennis F. Dunne*

Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5770
Facsimile:  (212) 822-5770
Email: ddunne@milbank.com
aleblanc@milbank.com
amiller@milbank.com
gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this same date a true and exact copy of this notice was filed

with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

<u>/s/ *Roberto Cámara-Fuertes*   </u>
Roberto Cámara-Fuertes (USDC-PR No. 219002)

**<u>Exhibit A</u>**

**Proposed Order**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of[1]<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | PROMESA<br><br>Title III<br><br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### [PROPOSED] ORDER GRANTING AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING PRIFA RUM TAXES

Upon the motion ("the Motion")[2] of Ambac Assurance Corporation ("Ambac"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), for entry of an Order authorizing Ambac to take Rule 2004 discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"); (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"); (iii) the Commonwealth; (iv) the Puerto Rico

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Infrastructure Financing Authority ("PRIFA"); and the Puerto Rico Industrial Development Company ("PRIDCO") (collectively, "Respondents"), as well as the examination of and production of documents from entities determined by Ambac to have information in connection with Ambac's investigation, and responses to interrogatories as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1331 and PROMESA § 306(a); and venue being proper before this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a); and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Motion need be provided; and the Court having held a hearing to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion and granted herein is in the best interests of the Debtor, its respective creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.     The Motion is granted as provided herein.

2.     Respondents shall comply with the document requests attached hereto as Attachment 1 by no later than ten (10) days after entry of this Order.

3.     Respondents shall designate an individual or individuals with knowledge of the matters described in Attachment 1 hereto (the "Designated Individual(s)").  The Designated Individual(s) shall appear for examination by counsel to Ambac under oath and in accordance with Bankruptcy Rule 2004 on such date and time and at such location in Puerto Rico as may be designated in writing by counsel to Ambac.

4.      Ambac is authorized, pursuant to Rule 2004, to issue such subpoenas as may be necessary to compel the production of documents and/or testimony of a third party witness to accomplish the discovery authorized by this Order.

5.      Third-party witnesses shall have fourteen (14) days from the service of a subpoena to either (i) produce to Ambac all responsive non-privileged documents requested in Ambac's subpoena, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

6.      Third-party witnesses are directed to either (i) submit to oral examination upon reasonable notice and, absent other agreement with Ambac, in no event more than fourteen (14) days from the date of the service of a deposition subpoena upon such witness, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

7.      Ambac shall serve each subpoena and a copy of this Order on the target of the subpoena.

8.      Ambac is authorized, pursuant to Rule 2004, to issue interrogatories to Respondents attached hereto as Attachment 2  by no later than ten (10) days after entry of this Order.

9.      Nothing herein shall limit Ambac's right to request additional discovery, including any additional documents or depositions, under Rule 2004 and applicable law, based on any information that may be revealed as a result of the information provided pursuant to this Order or otherwise.

10.      This Court shall retain jurisdiction to resolve any dispute arising or related to this Order and to interpret, implement and enforce the provisions of this Order.

11.      This Order is without prejudice to Ambac's right to file further motions seeking additional documents pursuant to Rule 2004 or any other applicable law.

SO ORDERED.


Dated: _____, 2019

       San Juan, Puerto Rico


                                 _____

                                 HONORABLE LAURA TAYLOR SWAIN

                                 UNITED STATES DISTRICT JUDGE

**Attachment 1**

## DEFINITIONS

1.  "<u>AAFAF</u>" means the Puerto Rico Fiscal Agency and Financial Advisory Authority and each of its present or former officers, directors, agents, representatives, employees, and members.

2.  "<u>Agreement</u>" means any agreement reached by the parties indicated in the Request and includes all side letters, schedules, attachments, exhibits, and documents incorporated by reference or otherwise referred to therein.

3.  "<u>Authorities</u>" means PRIFA and PRIDCO, collectively.

4.  "<u>Bacardí</u>" means Bacardí International Limited, Bacardí Corporation, and any affiliates, agents, assigns, board members, directors, employees, officers, parents, partners, representatives, subsidiaries, or any other person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

5.  "<u>Clawback Orders</u>" means the 2015 executive orders issued by then-Governor Alejandro García Padilla mandating the "clawback" of revenues pledged to secure the bonds of certain Puerto Rico public corporations

6.  "<u>Club Caribe</u>" means Club Caribe LLC and any affiliates, agents, assigns, board members, directors, employees, officers, parents, partners, representatives, subsidiaries, or any other person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

7.  "<u>Commonwealth</u>" means the Commonwealth of Puerto Rico, including its executive and legislative branches of government, and each of their present or former representatives, employees, and agents.

8.   "Document" or "documents" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and the Local Rules for the District of Puerto Rico, including tangible things, correspondence, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), any electronically stored information, recordings (*e.g.*, voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

9.   "Including" means including but not limited to.

10.   "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico and each of its present or former board members, agents, representatives, and employees.

11.   "Pledged Rum Taxes" means that portion of the Rum Tax required to be transferred by the Commonwealth to PRIFA by operation of the PRIFA Enabling Act.  *See* 3 L.P.R.A. § 1914.

12.   "PRIDCO" means the Puerto Rico Industrial Development Company, and each of its present or former board members, agents, representatives, and employees.

13.   "PRIFA" means the Puerto Rico Infrastructure Financing Authority, and each of its present or former board members, agents, representatives, and employees.

14.   "PRIFA Enabling Act" means Act 44-1988.

15.   "Rum Companies" means any company producing rum in Puerto Rico, including but not limited to "Bacardí," "Club Caribe," and "Serallés," and any affiliates, agents, assigns, board members, directors, employees, officers, parents, partners, representatives, subsidiaries, or any other person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

16.     "Rum Tax" means the federal excise tax on rum that is to be transferred to the Commonwealth from the United States Treasury Department pursuant to 26 U.S.C. § 7652.

17.     "Serallés" means Destilería Serrallés, Inc. and any affiliates, agents, assigns, board members, directors, employees, officers, parents, partners, representatives, subsidiaries, or any other person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

18.     "You" or "Your" refers to (1) the Oversight Board; (2) AAFAF; (3) the Commonwealth; (4) PRIFA; and (5) PRIDCO, and their respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former elected officials, officers, trustees, accountants, attorneys, employees, agents, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

## INSTRUCTIONS

1.     Unless otherwise indicated, the communications and documents hereby requested for production and inspection include all documents in Your possession, custody, or control. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a communication or document is in Your possession, custody, or control if You have actual possession or custody or the right to obtain the document or a copy thereof upon demand from one or more of Your employees, representatives, agents, independent contractors, consultants, attorneys, advisors, accountants, auditors, or any other person or public or private entity that has actual physical possession thereof.

    a.   This includes, but is not limited to, documents physically held by Your agents, representatives, employees, attorneys, financial advisors, or other advisors. It also includes any communications and documents contained in any computer, mobile device, server, mainframe, or other storage device (including (i) documents on or

in computer memory; (ii) documents on or in computer or network backup files; and (iii) documents which have been "deleted" or "erased" but are recoverable whether located on-site or at an off-site facility, within Your possession, custody, or control.

b. For the avoidance of doubt, this also includes any communications and documents contained on any personal computer, mobile device, server, mainframe, or other storage device within the possession of Your agents, representatives, employees, attorneys, financial advisors, or other advisors, regardless of whether the device is issued or owned by You.

2. As the term "possession" relates to e-mail, text messages, mobile device chats, and any other electronically stored information, the term includes, but is not limited to, documents and communications contained in Your electronic e-mail, cloud-based, and mobile device directories, including, but not limited to: (a) "deleted" documents and communications that have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" documents and communications, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" documents and communications, including all subdirectories irrespective of the title of such subdirectories.

3. As the Requests relate to e-mail, text messages, mobile device chats, and any other electronically stored information, You are to review the text of each individual document and communication (*i.e.*, not simply review the subject heading or utilize an electronic search device).

4. With respect to the documents produced, You shall produce them as they are kept in the usual course of business as defined in Rule 34 of the Federal Rules of Civil Procedure.

5.      Selection of documents from files and other sources, and the numbering of such documents, shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

6.      File folders with tabs, labels, or directories of files identifying documents must be produced intact with such tabs, labels, or directories and the documents contained therein.

7.      Documents attached to each other shall not be separated.

8.      A document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

9.      Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto. If a document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

10.     In construing the Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any Request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

11.     The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the Request.

12.     The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

13.     Any ambiguity in a Request shall be construed to bring within the scope of the Request all responses that otherwise could be construed to be outside of its scope.

14.     If You withhold any document requested herein on the basis of any assertion of privilege or other immunity from discovery, that document is to be identified by stating: (i) any addressor and addressee; (ii) any indicated or blind copy; (iii) the document's date, subject matter, and attachment or appendages; and (iv) the nature of the privilege or immunity asserted.

15.     If You object to a Request, You must clearly indicate whether any responsive materials are being withheld on the basis of that objection.  If You object to only a portion of a Request, You must clearly indicate to which part of the Request the objection is directed, whether any responsive materials are being withheld on the basis of that objection, and provide all documents to which objection is not made as if such part or portion of the Request were propounded as a separate Request.

16.     If Your response to a particular Request is that You lack the ability to comply with that Request, You must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control, in which case the name and address of any person or entity known or believed by You to have possession, custody, or control of that information, item, or category of information must be identified.

17.     If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

18.     Terms not specifically defined herein shall be given their ordinary meanings as You understand them to be used in the trade or pursuant to ordinary usage.

19.     Unless otherwise specified, the time period covered by these Requests is from September 1, 2010 to the present, and shall encompass all documents and information relating in whole or in part to such period.

20.     The Requests shall be deemed to be continuing so as to require supplemental productions as You obtain additional documents between the time of the initial production hereunder and the time of trial in this action.

## DOCUMENT REQUESTS

### REQUEST NO. 1

Documents sufficient to show each transfer of the Rum Taxes from the U.S. Treasury to the Commonwealth and each subsequent transfer thereof from July 1, 2015 to the present including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts and (f) all account holders or beneficiaries.

### REQUEST NO. 2

Documents sufficient to show the total amount of Rum Taxes presently held by the Commonwealth or its instrumentalities, information sufficient to identify the particular account(s) where such funds are retained, and information sufficient to identify each account holder or beneficiary.

### REQUEST NO. 3

Documents or communications related to restrictions on the use of Rum Taxes, including any Pledged Rum Taxes that have been clawed back by the Commonwealth.

### REQUEST NO. 4

Any and all direction letters to or from any bank and/or the Secretary of the Treasury regarding the flow of funds and/or use of the Rum Taxes.

### REQUEST NO. 5

All documents, communications, or Agreements between the Commonwealth and PRIFA relating to the Rum Tax, including drafts thereof.

**REQUEST NO. 6**

All reports provided by PRIFA to the Legislature and Governor of Puerto Rico pursuant to the Enabling Act.

**REQUEST NO. 7**

All appropriation requests made by PRIFA for reimbursement of clawed-back Pledged Rum Taxes.

**REQUEST NO. 8**

All Agreements between the Commonwealth or any Commonwealth instrumentality, including PRIFA and PRIDCO on the one hand, and the Rum Companies on the other, related to incentive payments or other benefits or tax breaks or concessions provided by the Commonwealth, including drafts thereof.

**REQUEST NO. 9**

All communications regarding the Agreements responsive to Request No. 8, including the negotiation thereof.

**REQUEST NO. 10**

Documents sufficient to show, from January 1, 2008 to the present, all incentive payments made by the Commonwealth or any Commonwealth instrumentality, including PRIDCO, to the Rum Companies pursuant to Agreements responsive to Request No. 8.

**REQUEST NO. 11**

Documents sufficient to show, from October 1, 2017 to the present, any emergency payments made to the Rum Companies in the aftermath of Hurricane Maria.

**REQUEST NO. 12**

All documents and communications, from January 1, 2008 to the present, concerning any lobbying efforts by the Rum Companies in relation to the Rum Tax.

**REQUEST NO. 13**

All documents and communications, from January 1, 2008 to the present, concerning any Commonwealth proposals to the Rum Companies that includes payment of a portion of the Rum Tax to the Rum Companies.

**REQUEST NO. 14**

All communications between the Commonwealth and the Rum Companies regarding the flow of funds of the Rum Tax, and any restrictions on the use thereof.

**REQUEST NO. 15**

Documents sufficient to show the Rum Companies' historical rum production in Puerto Rico.

**REQUEST NO. 16**

Documents sufficient to show the portion of Puerto Rico-produced rum that is shipped to the United States.

**REQUEST NO. 17**

All studies, analyses and/or projections concerning the Rum Tax, including any risk related to the continued receipt of the Rum Tax.

**REQUEST NO. 18**

Any analyses concerning the Commonwealth's and the Oversight Board's decision to continue paying the Rum Companies and any assessment regarding the benefit of such payments and the value received therefrom.

**REQUEST NO. 19**

All studies and/or analyses concerning the United States Virgin Island's rum production and its impact on Puerto Rico's rum production in connection with the production floors and ceilings put in place by Caribbean Basin Economic Recovery Act of 1983, Pub. L. No. 98-67.

**REQUEST NO. 20**

Documents sufficient to show, from January 1, 2008 to the present, the number of Puerto Rico residents employed by the Rum Companies.

**REQUEST NO. 21**

Documents sufficient to show, from January 1, 2008 to the present, the aggregate amount of corporate income taxes paid to the Commonwealth by each Rum Company.

**REQUEST NO. 22**

Documents sufficient to show anticipated future payments by the Commonwealth or any Commonwealth instrumentality, including PRIDCO, included in the May 9, 2019 Fiscal Plan to the Rum Companies pursuant to the Agreements responsive to Request No. 8.

**REQUEST NO. 23**

Documents sufficient to show, from January 1, 2008 to the present, all tax breaks or concessions provided by the Commonwealth or any Commonwealth instrumentality to the Rum Companies pursuant to the Agreements responsive to Request No. 8.

**REQUEST NO. 24**

Documents sufficient to show the total amount of money held by the Puerto Rico Infrastructure Fund and ownership information, including (a) where the fund is held, (b) information sufficient to identify and distinguish each particular account, (c) all account holders, (d) all account signatories, and (e) and any entity or individual with authority over the account.

**REQUEST NO. 25**

All studies or analyses conducted in connection with the decision not to file for Title III protection for PRIFA.

**REQUEST NO. 26**

All documents and communications between AAFAF and the Oversight Board concerning the Rum Taxes.

**Attachment 2**

<u>**DEFINITIONS**</u>

1.       "<u>AAFAF</u>" means the Puerto Rico Fiscal Agency and Financial Advisory Authority and each of its present or former officers, directors, agents, representatives, employees, and members.

2.       "<u>Agreement</u>" means any agreement reached by the parties indicated in the Request and includes all side letters, schedules, attachments, exhibits, and documents incorporated by reference or otherwise referred to therein.

3.       "<u>Clawback Orders</u>" means the 2015 executive orders issued by then-Governor Alejandro García Padilla mandating the "clawback" of revenues pledged to secure the bonds of certain Puerto Rico public corporations

4.       "<u>Commonwealth</u>" means the Commonwealth of Puerto Rico, including its executive and legislative branches of government, and each of their present or former representatives, employees, and agents.

5.       "<u>Document</u>" or "<u>documents</u>" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and the Local Rules for the District of Puerto Rico, including tangible things, correspondence, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), any electronically stored information, recordings (*e.g.*, voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

6.       "<u>Including</u>" means including but not limited to.

15

7.     "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico and each of its present or former board members, agents, representatives, and employees.

8.     "Pledged Rum Taxes" means that portion of the Rum Tax required to be transferred by the Commonwealth to PRIFA by operation of the PRIFA Enabling Act.  *See* 3 L.P.R.A. § 1914.

9.     "PRIDCO" means the Puerto Rico Industrial Development Company, and each of its present or former board members, agents, representatives, and employees.

10.     "PRIFA" means the Puerto Rico Infrastructure Financing Authority, and each of its present or former board members, agents, representatives, and employees.

11.     "Rum Tax" means the federal excise tax on rum that is to be transferred to the Commonwealth from the United States Treasury Department pursuant to 26 U.S.C. § 7652.

12.     "You" or "Your" refers to (1) the Oversight Board; (2) AAFAF; (3) the Commonwealth; (4) PRIFA; and (5) PRIDCO, and their respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former elected officials, officers, trustees, accountants, attorneys, employees, agents, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

## **INSTRUCTIONS**

1.     You shall respond separately to each interrogatory and shall first set forth verbatim the Interrogatory in its response.  The answer to an Interrogatory shall not be supplied by referring to the answer to another Interrogatory unless the answer to the Interrogatory being referred to supplies a complete and accurate answer to the Interrogatory being answered.

2.     Information requested in these Interrogatories shall include that within the knowledge or possession of any of Your agents and employees, attorneys, investigators, advisors,

and any other persons, firms or entities directly or indirectly subject to its control in any way whatsoever.

3.      If You withhold any information in response to any of the Interrogatories set forth below on grounds of privilege or pursuant to the work-product doctrine, You must answer the Interrogatory to the extent it does not claim a privilege.

4.      In the event that You object to any Interrogatory on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that Interrogatory as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which You have narrowed that Interrogatory for purposes of its response.

5.      If and to the extent any Interrogatory is objected to, state with specificity all grounds for the objection.  Any ground not stated within the time allowed for responding to these requests shall be waived.

6.      The terms "all," "any" and "each" shall each be construed as encompassing any and all.

7.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

8.      The use of the singular form of any word includes the plural and vice versa.

9.      The Interrogatories set forth below shall be deemed to be continuing in accordance with Rule 26(e) of the Federal Rules of Civil Procedure so as to require supplementation in the event that You obtain or become aware of any additional information responsive to these Interrogatories.

10.     If, in responding to the requests, You encounter any ambiguities when construing a request or definition, Your response shall set forth the matter deemed ambiguous and the construction used in responding.

11.     Unless otherwise specified herein, the period of time covered by these requests is January 1, 2010 to the present (the "Period").

## INTERROGATORIES

1.      For each transfer of the Rum Taxes from the United States Treasury to the Commonwealth and each subsequent transfer thereof from July 1, 2015 to the present, identify:

     a.   The date of the transfer;

     b.   The amount of the transfer;

     c.   The transferor;

     d.   The transferee;

     e.   The bank name and information sufficient to identify the particular account at the receiving bank; and

     f.   All account holders of the receiving account.

2.      Set forth any conditions the Commonwealth has placed on the use of the Pledged Rum Taxes.

3.      Identify the current amount and location(s), including bank name and information sufficient to identify each particular account, of all the clawed back Rum Taxes.