Hearing Date: June 12, 2019 at 9:30 a.m. AST
Response Deadline: June 10, 2019 at 4:00 p.m. AST
Reply Deadline: June 12, 2019 at 8:00 a.m. AST

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS<br><br>(This court filing relates only to Case No. 17 BK 4780-LTS) |

**URGENT MOTION IN LIMINE TO EXCLUDE TESTIMONY OFFERED BY INSTITUTO DE COMPETITIVIDAD Y SOSTENIBILIDAD ECONOMICA DE PUERTO RICO, CENTRO UNIDO DE DETALLISTAS CAMARA DE MERCADEO, INDUSTRIA Y DISTRIBUCION DE ALIMENTOS, ASOCIACIÓN DE CONTRATISTAS Y CONSULTORES DE ENERGÍA RENOVABLE DE PUERTO RICO, PUERTO RICO MANUFACTURERS ASSOCIATION, COMITÉ DIÁLOGO AMBIENTAL, INC. , EL PUENTE DE WILLIAMSBURG, INC. , ENLACE DE ACCIÓN CLIMÁTICA, COMITÉ YABUCOEÑO PRO-CALIDAD DE VIDA, INC., ALIANZA COMUNITARIA, AMBIENTALISTA DEL SURESTE, INC., SIERRA CLUB PUERTO RICO, INC., MAYAGÜEZANOS POR LA SALUD Y EL AMBIENTE, INC., COALICIÓN DE ORGANIZACIONES ANTI INCINERACIÓN, INC., AMIGOS DEL RÍO GUAYNABO, INC., AND SOMOS INC.[2]**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Collectively, the "Nonprofits."

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 6

RELIEF REQUESTED ............................................................................................ 12

ARGUMENT .......................................................................................................... 12

    I.      The Nonprofits Lack Article III Standing to Oppose the Rule 9019
            Motion. ....................................................................................................... 12

    II.     The Nonprofits Are Not Parties in Interest Under 11 U.S.C. § 1109. ................. 15

    III.   The Testimony That the Nonprofits Intend to Offer Should Be Excluded
            As Irrelevant Under Rule 401 or More Prejudicial or Wasteful Than
            Probative Under Rule 403 ......................................................................... 17

CONCLUSION ....................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Waste Servs. Of Mass., LLC (In re Am. Cartage, Inc.),*
656 F.3d 82 (1st Cir. 2011) .................................................................................................. 19

*Elk Grove Unified School Dist. v. Newdow,*
542 U.S. 1 (2004) ................................................................................................................. 14

*Faulkner v. Nat'l Geographic Soc.,*
576 F. Supp. 2d 609 (S.D.N.Y. 2008) .................................................................................. 17

*Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.,*
240 F.3d 1 (1st Cir. 2001) ..................................................................................................... 18

*In re Addison Community Hosp. Auth.,*
175 B.R. 646 (Bankr. E.D. Mich. 1994) ............................................................................... 17

*In re Alpha Natural Resources, Inc.,*
544 B.R. 848 (Bankr. E.D. Va. 2016) ................................................................................... 13

*In re C.P. del Caribe, Inc.,*
140 B.R. 320 (Bankr. D.P.R. 1992) ...................................................................................... 19

*In re Drexel Burnham Lambert Group, Inc.,*
134 B.R. 493 (Bankr. S.D.N.Y. 1991) .................................................................................. 21

*In re El Comandante Mgmt. Co., LLC,*
359 B.R. 410 (Bankr. D.P.R. 2006) ................................................................................ 15, 16

*In re Indian Motorcycle Co.,*
289 B.R. 269 (1st Cir. B.A.P. 2003) ..................................................................................... 19

*In re Ionosphere Clubs, Inc.,*
101 B.R. 844 (Bankr. S.D.N.Y. 1989) .................................................................................. 16

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez),*
2009 Bankr. LEXIS 2846 (Bankr. D.P.R. Mar. 31, 2009) ................................................... 19

*In re Melo,*
558 B.R. 521 (Bankr. D. Mass. 2016) ............................................................................ 12, 13

*In re Newcare Health Corp.,*
244 B.R. 167 (1st Cir. B.A.P. 2000) ............................................................................ 12, 13, 14

*In re Thompson,*
965 F.2d 1136 (1st Cir. 1992) ............................................................................................... 19

*In re W.T. Grant Co.,*
699 F.2d 599 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983) ................................................. 21

*In re Fin. Oversight & Mgmt. Bd. for P.R,*
Case No. 17-03283, Adv. Proc. No. 17-0257, ECF No. 593 (Feb. 2,
2019) ......................................................................................................................................... 5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re. Fin. Oversight & Mgmt. Bd. for P.R.*,
301 F. Supp. 3d 306 (D.P.R. 2017) ........................................................................... 14

*Jeffrey v. Desmond*,
70 F.3d 183 (1st Cir. 1995) ....................................................................................... 19

*Kenney v. Head*,
670 F.3d 354 (1st Cir. 2012) ..................................................................................... 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .................................................................................................. 13

*Plaza-Torres v. Rey*,
No. CIV. 02-1216 SEC, 2006 WL 6884391 (D.P.R. Apr. 21, 2006) ....................... 17

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .................................................................................................... 13

*Warth v. Seldin*,
422 U.S. 490 (1975) .................................................................................................. 12

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) .................................................................................................. 13

**Statutes**

11 U.S.C. § 1109(b) ......................................................................................................... 15

**Other Authorities**

7 Lawrence P. King, *Collier on Bankruptcy* ¶ 1109.02[1] (15th ed. 2006) ................... 16

*Mem. Order Granting Respondents' Urgent Motion in Limine to Exclude
Evidence and Argument Regarding an Alleged April 27, 2016 Meeting
with Movants' Representatives, In re Fin. Oversight & Mgmt. Bd. for
P.R.*, Case No. 17-03566-LTS, ECF No. 544 (Jun. 5, 2019) ................................... 5

*Motion Hearing before the Honorable U.S. District Judge Laura Taylor
Swain United States District Judge*, Case No. 17-03283, ECF No. 522
(Jan. 21, 2019) ......................................................................................................... 12

**Rules**

Fed. R. Evid. 401 ....................................................................................................... 1, 17

Fed. R. Evid. 403 ............................................................................................... 1, 17, 18, 21

Pursuant to Federal Rules of Evidence 401 and 403, made applicable to these proceedings

by Federal Rule of Bankruptcy Procedure 9017 and Section 310 of the Puerto Rico Oversight,

Management, and Economic Stability Act ("PROMESA") (48 U.S.C. § 2170), and 11 U.S.C. §

1109(b), made applicable to these proceedings by Section 301(a) of PROMESA, the Financial

Oversight and Management Board for Puerto Rico ("FOMB"), in its capacity as representative of

the Puerto Rico Electric Power Authority ("PREPA") pursuant to Section 315(b) of PROMESA,

and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") hereby submit

this urgent motion *in limine.*

## PRELIMINARY STATEMENT

This urgent motion *in limine* concerns the July 24, 2019 hearing on the Rule 9019

Motion,[3] in which the FOMB, PREPA and AAFAF seek an order approving a milestone

settlement:  the Definitive Restructuring Support Agreement dated May 3, 2019 (the "RSA"),

entered into by and among PREPA, AAFAF, the FOMB, the Ad Hoc Group of PREPA

Bondholders ("Ad Hoc Group") and Assured Guaranty Corp. and Assured Guaranty Municipal

Corp. (collectively "Assured").

Normally, the Government Parties would not request court approval of a restructuring

support agreement in a Title III case or chapter 9 case because Bankruptcy Code section 363

does not apply.  Here, the Government Parties are requesting the Court's approval of the RSA

because this RSA contains a settlement of certain creditors' disputed secured claims, which

cannot be allowed without a court order.  The settlement provides, in relevant part, that the

settling creditors will accept a plan of adjustment that proposes a certain treatment of the claims,

---

[3] *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922 and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods*, Case No. 17-04780, ECF No. 1235 (May 10, 2019) ("Rule 9019 Mot.")

which incorporates a large discount. By approving the RSA, the Court will be limiting the amount that has to be paid to the claimholders under a plan of adjustment, but will not be confirming any plan or determining that the proposed treatment of the settled claims is confirmable. Indeed, nothing in the RSA prevents the Court from later ruling at a confirmation hearing that the proposed plan or its treatment of the settled claims is not confirmable. The hearing on approval of the RSA should focus only on whether the disputed secured claims are discounted enough to put the settlement in the range of reasonableness. Outside the scope of the settlement hearing are issues of how the balance of the plan can be negotiate, on potential alternative plans, and on confirmation issues.

Despite the Rule 9019 Motion hearing's limited scope, a series of 16 nonprofit advocacy groups, claiming to represent various interests, seek to present witnesses at the hearing:

- ICSE, a private nonprofit entity that claims to represent an unknown number of unidentified "electricity consumers" in an unspecified capacity, intends to offer testimony from six witnesses on a litany of subjects ranging from ICSE's participation in prior, unrelated energy cases to speculation about the settlement's effect on Puerto Rico's economy in general. Joining ICSE are Centro Unido de Detallistas ("CUD"), Camara de Mercadeo, Industria y Distribucion de Alimentos ("MIDA"), Asociación de Contratistas y Consultores de Energía Renovable de Puerto Rico ("ACONER"), and Puerto Rico Manufacturers Association's ("PRMA") (collectively with ICSE, the "Energy Nonprofits").[4]

---

[4] *Motion by Centro Unido de Detallistas (CUD); Camara de Mercadeo, Industria y Distribucion de Alimentos (MIDA); Asociación de Contratistas y Consultores de Energía Renovable de Puerto Rico (ACONER); and Puerto Rico Manufacturers Association (PRMA) Joining ICSE's [sic] Motion Identifying Preliminary List of Potential Witnesses to Testify at Hearing of the 9019*, Case No. 17-03283-LTS, ECF No. 7189 (May 31, 2019) ("Amended Energy Nonprofit Mot.").

2

- Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc., Enlace de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria, Ambientalista del Sureste, Inc., Sierra Club Puerto Rico, Inc., Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti Incineración, Inc., and Amigos del Río Guaynabo, Inc. (collectively the "Environmental Nonprofits") separately oppose the settlement and intend to offer testimony from two witnesses on a litany of subjects including speculation about settlement's effect on PREPA's efforts to use renewable energy and the health of Puerto Ricans who live near PREPA's power plants. *Motion by Comite Dialogo Ambiental et. al. Identifying Expert Witnesses for 9019 Motion Hearing*, Case No. 17-04780, ECF No. 1279 (June 5, 2019) (the "Environmental Nonprofit Mot."). The Environmental Nonprofits have not identified any claims that they have against PREPA or any other legally protected interest which would give them standing to be heard.

- SOMOS, Inc., a nonprofit corporation that claims to represent the interests of unidentified "workers and consumers" in Puerto Rico that are "not traditionally encompassed by the established worker's unions on the island," also separately opposes the settlement and intends to offer testimony speculating about the settlement's effect on Puerto Rico's economy in general. *Motion Identifying Expert Witness in Compliance with Order Dated May 22, 2019 (Dkt. 1253)*, Case No. 17-04780, ECF No. 1282 ¶ 3 (June 5, 2019) (the "SOMOS, Inc. Mot.")

All of Nonprofits' proffered testimony should be excluded in its entirety because the Nonprofits lack standing to oppose the Rule 9019 Motion, are not "parties in interest" under the Bankruptcy Code, and seek to offer testimony that is wholly irrelevant to the standard the Court must apply in deciding the Rule 9019 Motion.

3

First, the Nonprofits lack standing to oppose the Rule 9019 Motion under the Supreme

Court's longstanding constitutional and prudential standing requirements.  They have not alleged

that they have suffered or are imminently threatened with a concrete and particularized injury in

fact—the fundamental prerequisite of an Article III "case or controversy."  The Nonprofits

instead make conclusory assertions that PREPA's proposed settlement violates law and public

policy and will impact Puerto Rico's economy, renewable-energy policies, and public health,

none of which are remotely concrete or particularized or an injury that the Nonprofits contend

that they themselves will suffer.  Permitting the Nonprofits to intrude in these proceedings would

violate two prudential standing requirements:  (i) the general prohibition on asserting a third

party's legal rights or interests, which the Nonprofits seek to do by seeking to appear on behalf

of unidentified constituencies; and (ii) the bar on adjudicating generalized grievances, which

describe the complaints that the Nonprofits make about the settlement's effect on Puerto Rico's

economy, renewable-energy policies, public health generally, and the "economic consequences"

of higher electricity rates.

Second, the Nonprofits should be barred from offering testimony for the separate and

independent reason that they are not "parties in interest" that have the right to appear in a

bankruptcy proceeding.  They do not allege that they (i) fit any of the categories listed in

11 U.S.C. § 1109(b), such as a creditor; or (ii) have a direct financial or legal stake in the

outcome of the debtor's estate that would confer the required "interest."  Nor do the Energy

Nonprofits, Environmental Nonprofits, or SOMOS, Inc. allege that the constituencies that they

purport to represent have the requisite stake in the outcome to satisfy Section 1109(b).  Allowing

parties like the Nonprofits, who may be concerned about the Rule 9019 Motion but lack a legal

interest in it, to appear and present testimony would be inconsistent with the requirements

4

PROMESA imposes on who can be heard.

Third, the testimony that the Nonprofits seek to offer is irrelevant or, at a minimum, more prejudicial or wasteful than probative of any issue in the Rule 9019 Motion. *See Mem. Order Granting Respondents' Urgent Motion in Limine to Exclude Evidence and Argument Regarding an Alleged April 27, 2016 Meeting with Movants' Representatives, In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-03566-LTS, ECF No. 544 at 5, 6 (Jun. 5, 2019) (the "ERS Limine Order") (excluding evidence and argument under Rules 401 and 403, finding it was "at best, of marginal relevance to the central question to be considered" and that "any probative value attributable to [the] evidence . . . is substantially outweighed by the risk of undue delay and wasted time associated with additional preparation for the Stay Relief Hearing and determinations related to the admissibility and weight of the proffered evidence."). In considering whether to grant that motion, the Court must evaluate whether the settlement meets or exceeds the lowest point in the range of reasonableness in possible outcomes, evaluated in terms of (i) the probability of success of the litigation being settled, (ii) collection difficulties, (iii) the complexity, expense, inconvenience, and delay of the litigation being settled, and (iv) the paramount interest of the creditors and proper deference to their reasonable views. The proffered testimony of Nonprofits concerns none of these subjects. The witnesses of the Nonprofits have nothing relevant to say on these issues, and even if any of their proposed testimony were relevant, its probative value would be far outweighed by the risk of delay and wasted time. This Court has previously emphasized that it must focus on "the reasonableness of the settlement" in evaluating 9019 Motions and not on other concerns such weighing "concerns about the Commonwealth's overall financial prospects." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 17-3283, Adv. Proc. No. 17-0257, ECF No. 593 ¶ 44 (Feb. 2, 2019) (the "COFINA 9019 Order").

5

The Government Parties bring this motion now to help shape the remaining discovery and avoid wasting scarce resources and time on discovery into issues that merit no time at the Rule 9019 Motion hearing.  Allowing the Nonprofits' witnesses to testify would force the Government Parties to take as many as nine additional depositions, with the possibility of additional rebuttal witnesses in response to the Nonprofits' five designated experts.  Because this Court will hear the Rule 9019 Motion, the Government Parties respectfully request that the Court decide this issue at the June 12, 2019 omnibus hearing.  By doing so and granting the requested relief, the Court can ensure that the Rule 9019 Motion hearing (and related discovery) proceed as efficiently as possible.

## BACKGROUND

**The Settlement and Rule 9019 Motion**

On May 10, 2019, PREPA filed a motion under Bankruptcy Rule 9019 (among others) for an order approving the RSA between the FOMB, AAFAF, PREPA, the Ad Hoc Group and Assured.  The RSA represents a significant milestone in PREPA's Title III case and the overall restructuring of PREPA, the energy monopoly in Puerto Rico whose transformation is one of Puerto Rico's most critical initiatives.

As described more fully in the Rule 9019 Motion, PREPA as of its Title III petition date had issued and had outstanding approximately $6 billion of uninsured bonds and $2.25 billion of bonds guaranteed by monoline insurance companies, which bonds are allegedly secured.  Rule 9019 Mot. at 11–12.  Proofs of claim were filed asserting secured claims on behalf of the Ad Hoc Group and Assured.  Assured, together with other monoline insurers, also requested stay relief to enable it to seek the appointment of a receiver for PREPA.[5]  In turn, the Government Parties (i)

---

[5] *Motion of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief from the Automatic Stay to Allow Movants to Enforce their*

have objections to the liens and claims of the uninsured bondholders, including those asserted in their proofs of claim; (ii) oppose the motion for stay relief; and (iii) oppose creditors' claims to entitlement to further adequate protection or other current payment under the Bonds (except pursuant to the settlements set forth in the RSA).  Rule 9019 Mot. at 13–17.

After hard-fought negotiations, PREPA and AAFAF on the one hand, and on the other the Ad Hoc Group and Assured (which own or insure nearly 50% of the $8.25 billion in PREPA bonds), agreed to resolve the Government Parties' claim objections and the rights of those bondholders and Assured to request stay relief, adequate protection, and current payment.  The Ad Hoc Group and Assured (absent future defaults) would settle their alleged secured claims and rights asserted thereunder, including requests for stay relief in exchange for PREPA agreeing to allow their claims in less than their full face amounts.  In addition, the Ad Hoc Group and Assured agreed to support, and PREPA agreed to propose, a plan of adjustment under which the settling bondholders will exchange their bonds for Securitization Bonds that are secured by a fixed and predictable Transition Charge.[6]  Rule 9019 Mot. at 17–18.

**The Rule 9019 Motion Schedule**

On May 22, 2019, the Court entered a schedule for the Rule 9019 Motion discovery and hearing, under which the motion will be heard during an omnibus hearing on July 24, 2019 (and July 25 "if necessary").[7]  The order called for preliminary witness lists from the moving parties, objectors, and supporters by May 30, 2019.  The order also called for disclosure of experts, from moving parties, objectors, and supporters by June 5, 2019.

---

*Statutory Right to Have a Receiver Appointed*, Case No. 17-04780, ECF No. 975 (October 3, 2018) (the "Lift Stay Motion").

[6] Capitalized terms used but not defined herein have the meaning given to them in the Rule 9019 Motion.

[7] *Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]*, Case No. 17-04780-LTS, ECF No. 1253 at 4 (May 22, 2019) (the "Scheduling Order").

**The Energy Nonprofits' Witness List**

On May 30, 2019, a preliminary witness list was filed by ICSE, an entity that has not filed a proof of claim in PREPA's Title III case. ICSE alleges that it is a private, non-profit 501(c)(3) entity that represents "Puerto Rico's electricity consumers, industrial, commercial and residential, and who has actively participated in Energy related cases during the last 5 years." *Motion by Instituto de Competitividad y Sonstenibilidad Economica De Puerto Rico (ICSE) Identifying Preliminary List of Potential Witnesses to Testify at Hearing of 9019 [sic] Motion*, 17-03283, ECF No. 7170 ¶ 2. (May 30, 2019) (the "ICSE Mot."). ICSE previously moved to file an amicus brief in another proceeding in this Court and argued that it had the "special interest" necessary to file an amicus brief, but admitted that it did "not represent any particular private interest or tariff class." *Motion to File Amicus Curiae Brief*, 17 BK 4780-LTS, Adv. Proc. No. 18-00021, ECF No. 64 at 2 (D.P.R. Mar. 26, 2018). The Court denied ICSE's motion because ICSE had "not established that it has a special interest in this case that justifies the filing of an amicus brief." *Id.*

Once again, ICSE does not identify the number or names of the electricity consumers it allegedly represents, or explain the source of its authority to represent them. On May 31, 2019, the remaining Energy Nonprofits filed a joinder to ICSE's disclosure, which makes a materially identical assertion that the remaining Energy Nonprofits are private not-for-profit entities representing Puerto Rico's electricity consumers, and that they have actively participated in energy-related cases during the last 5 years. Amended Energy Nonprofit Mot.

The Energy Nonprofits state that they oppose the RSA as "contrary to applicable laws . . . PREPA's own fiscal situation and . . . legislated applicable Commonwealth of Puerto Rico public policy." ICSE Mot. ¶ 3; Amended Energy Nonprofit Mot. ¶ 3. The Energy Nonprofits have not asserted that they have a legal right to enforce any applicable Puerto Rico laws or

8

public policy initiatives, or that they have a legally protectable interest in "PREPA's own fiscal situation." The Energy Nonprofits further state that they intend to present no fewer than six witnesses: (i) one of three identified ICSE board members to testify about ICSE, ICSE's "participation in debates and cases concerning Energy issues, the impact of the RSA on Puerto Rico's Economy, and on the consumers it represents"; (ii) ICSE's executive director to testify about ICSE and its prior participation in energy cases (like the first ICSE board member) and "why ICSE opposes the RSA as contrary to public policies, law, and the negative impact on the economy of Puerto Rico"; (iii) an economist to testify about "the economic consequences of the increase in electric energy rates caused by the RSA Securitization"; (iv) two PREPA officials to testify about the "content of the RSA," the "economic, public policy and legal issues" that PREPA considered, and "the consequences on PREPA's finances"; and (v) an expert to testify "on the benefits for PREPA and its grid of distributed energy, and renewable energy." ICSE Mot. ¶ 4; Energy Nonprofit Amended Motion ¶ 4.

On June 3, 2019, the Government Parties notified the Energy Nonprofits that they intended to file an urgent motion to exclude this testimony on the grounds (among others) that the Energy Nonprofits lacked standing to appear and are not parties in interest under 11 U.S.C. § 1109(b). The Government Parties asked that the Energy Nonprofits inform them by June 4 whether the Energy Nonprofits would object to that motion so it could be heard at the June 12, 2019 pretrial conference. The Energy Nonprofits responded on June 6. Ex. 1, Agrait June 6 letter. They did not address the legal requirements of standing and 11 U.S.C. § 1109(b), as the Government Parties had requested. Rather, they stated that there is "electrical ratepayer consumer interest" in the Rule 9019 Motion because it involves "debt sustainability of PREPA, future electrical rates, and how they affect general ability of Puerto Rico residents to pay general

9

public debt." *Id.*  The Energy Nonprofits stated that the Government Parties should "go ahead"
with their motion *in limine*.  *Id.*

**The Environmental Nonprofits' Witness List**

On June 5, 2019, an expert disclosure was filed by the Environmental Nonprofits,
comprised of entities that have not filed proofs of claim in PREPA's Title III case.  In their
expert disclosure, the Environmental Nonprofits do not describe their roles nor identify the
parties they represent.  The Environmental Nonprofits state that they oppose several specific
provisions of the RSA, alleging that the "effect of the RSA is to impose unreasonable and
acceptable burden to the use, production, and development of renewable energy," that the "RSA
cannot be exempt from the applicability of Law-17-2019 and other environmental protection
laws in Puerto Rico," and that the RSA "will impose an unfair economic and environmental
burden on poorer communities both as direct effect of the securitization charge for decades to
come and continued and incremented emissions from the use of fossil fuels."  Environmental
Nonprofit Mot. ¶ 2.vi.  The Environmental Nonprofits have not asserted that they have a legal
right to enforce any applicable Puerto Rico laws or public policy initiatives, or that they have a
legally protectable interest in "development of renewable energy" or "unfair economic and
environmental burden."

The Environmental Nonprofits further state that they intend to present two witnesses.
First, they intend to present an electrical engineer to testify about "the harmful impacts of the
Restructuring on Puerto Rico's commitment to energy independence, energy affordability, and
hurricane resilience" and "how the Agreement's fixed Transition Charge will impede PREPA's
efforts to comply [with] its obligations to install Energy Efficiency and Distributed Renewable
Generation to the island's electricity grid."  Environmental Nonprofit Mot. ¶ 4.  Second, they
intend to present a consultant to testify about, "the current violations and health impacts from

10

emissions at Puerto Rico's fossil fuel power plants" and the "health impacts from the

Restructuring Support Agreement on Puerto Ricans who live near these plants."  Environmental

Nonprofit Mot. ¶ 6.

On June 6, 2019, the Government Parties notified Environmental Nonprofits that they

intended to file an urgent motion to exclude this testimony on the grounds (among others) that

the Environmental Nonprofits lacked standing to appear and are not parties in interest under 11

U.S.C. § 1109(b).  The Government Parties asked that the Environmental Nonprofits inform

them whether the Environmental Nonprofits would object to that motion so it could be heard at

the June 12, 2019 pretrial conference.  The Environmental Nonprofits informed the Government

parties that they would oppose the urgent motion and filed an Informative Motion stating that

they would appear to address the at the June 12, 2019 pretrial conference.  *Informative Motion of*

*Comite Dialogo Ambiental et. als. Regarding June 12, 2019 Hearing*, Case No. 17- BK-4780-

LTS, ECF No. 1296 (June 7, 2019).  They did not state whether they oppose hearing the motion

at the June 12, 2019 pretrial conference.

**SOMOS, Inc.'s Witness List**

On June 5, 2019, an expert disclosure was filed by SOMOS, Inc., an entity that has not

filed a proof of claim in PREPA's Title III case.  In its expert disclosure, SOMOS, Inc. states that

it is a "not for profit corporation dedicated to the interests, service and needs of workers and

consumers in Puerto Rico."  SOMOS, Inc. Mot. ¶ 3.  SOMOS, Inc. states that it opposes the

proposed Restructuring Support Agreement because it is "contrary to the Puerto Rico's

Electricity Power Authority's financial feasibility" and because of its "pernicious effects on the

lives and future of the workers and consumers on the island of Puerto Rico."  SOMOS, Inc. Mot.

¶ 4.  SOMOS further states that it intends to present one witness, an economist who will testify

about "the devastating economic effects the proposed Restructuring Support Agreement will

11

have on consumers on the island."  SOMOS, Inc. Mot. ¶ 8.

On June 6, 2019, the Government Parties notified SOMOS, Inc. that they intended to file an urgent motion to exclude this testimony on the grounds (among others) that the SOMOS, Inc. lacked standing to appear and is not a party in interest under 11 U.S.C. § 1109(b).  The Government Parties asked that the SOMOS, Inc. inform them whether SOMOS, Inc. would object to that motion so it could be heard at the June 12, 2019 pretrial conference.

## RELIEF REQUESTED

The Government Parties now ask the Court to exclude the Nonprofits' proffered testimony from the July 24, 2019 hearing because Nonprofits do not have standing to be appear and be heard in bankruptcy court and their proffered testimony is not relevant to the Rule 9019 standard.

## ARGUMENT

## I.     THE NONPROFITS LACK ARTICLE III STANDING TO OPPOSE THE RULE 9019 MOTION.

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit."  *In re Newcare Health Corp.*, 244 B.R. 167, 170 (1st Cir. B.A.P. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *see also In re Melo*, 558 B.R. 521, 550 (Bankr. D. Mass. 2016); *Motion Hearing before the Honorable U.S. District Judge Laura Taylor Swain United States District Judge*, Case No. 17-03283, ECF No. 522 at 132-133 (Jan. 21, 2019) (denying standing to PROSOL-UTIER, a non-creditor of COFINA, to make evidentiary proffers in connection with COFINA's 9019 Motion).  Standing has both (i) constitutional aspects, *i.e.*, "whether the plaintiff has made out a 'case or controversy'" under Article III; and (ii) prudential aspects, *i.e.*, "self-imposed rules of judicial restraint" regarding "who may invoke the courts' decisional powers."  *Newcare*, 244 B.R. at 170 (quoting *Warth*, 422

12

U.S. at 498)).  The Nonprofits bear the burden of alleging facts necessary to establish standing.
*See Newcare*, 244 B.R. at 170; *see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  They
have not even attempted to do so.

The Energy Nonprofits have alleged no facts to satisfy that they have suffered or are
imminently threatened with a "concrete and particularized injury in fact"—the fundamental
prerequisite of constitutional standing.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118, 125 (2014); *see also In re Melo*, 558 B.R. at 550; *In re Alpha Natural Resources,
Inc.*, 544 B.R. 848, 854 (Bankr. E.D. Va. 2016) (holding that environmental protection groups
lacked standing to object at Rule 9019 hearing to settlement between debtor coal mine operators
and West Virginia).  The Not-For-Profit Entities state only that they oppose the RSA because it
is "contrary to applicable laws . . . PREPA's own fiscal situation and . . . legislated applicable
Commonwealth of Puerto Rico public policy."  ICSE Mot. ¶ 3; Amended Energy Nonprofit Mot.
¶ 3; Ex. 1 (asserting that RSA is "simply illegal").  These allegations do not describe a concrete
and particularized injury to the Energy Nonprofits that can confer standing.  *See Alpha Natural
Resources*, 544 B.R. at 856 (objection that settlement violates state and federal law "cannot
confer standing"); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998)
(holding that "vindication of the rule of law" does not confer standing).  The Energy Nonprofits
have no right to enforce laws and have identified no testimony from their proposed witnesses
about any "concrete and particularized injury."  Rather, the Energy Nonprofits state that those
witnesses will testify on such broad, generalized topics as "the impact of the RSA on Puerto
Rico's economy" and consumers and the "economic consequences of the increase in electric
energy rates."  ICSE Mot. ¶ 4; Amended Energy Nonprofit Mot. ¶ 4.  None of these witnesses
intends to testify about any concrete and particularized injury to the Not-For-Profit Entities.

13

The Energy Nonprofits also fall squarely within two longstanding prudential limitations on standing:  (i) "the general prohibition on a litigant's raising another person's legal rights"; and (ii) "the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches."  *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004); *see also In re Newcare*, 244 B.R. at 170.  As to the first, the Energy Nonprofits admit that they do not seek to appear on their own behalf, but on behalf of an unspecified number of unnamed "electricity consumers, industrial, commercial and residential."  ICSE Mot. ICSE Mot. ¶ 2; Amended Energy Nonprofit Mot. ¶ 2.  The Energy Nonprofits do not allege that they have any authority or mandate whatsoever to represent these "electricity consumers," who may or may not approve of the Energy Nonprofits supposedly representing their interests.  *See In re. Fin. Oversight & Mgmt. Bd. for P.R.*, 301 F. Supp. 3d 306, 312 (D.P.R. 2017) (denying intervention because bondholder group "lack[ed] the direct interest necessary to establish prudential standing," which "requires that a party demonstrate that its claim is 'premised on [its] own legal rights (as opposed to those of a third party)'").  In any event, the Energy Nonprofits do not allege that electricity consumers have any legal rights at stake on the Rule 9019 Motion that could confer standing.  On the contrary, their June 6 letter asserts that ratepayers seek to participate in the Rule 9019 Motion out of a remote and speculative concern about "debt sustainability of PREPA, future electrical rates, and how they affect general ability of Puerto Rico residents to pay general public debt."  Ex. 1.  Like the assertions described above that the RSA violates law and public policy and will impact Puerto Rico's economy, these are merely generalized grievances far too remote to confer prudential standing.  ICSE Mot. ¶¶ 3–4; Amended Energy Nonprofit Mot. ¶¶ 3–4.

For the same reasons, the Environmental Nonprofits and SOMOS, Inc. lack the

14

constitutional and prudential standing to proffer witnesses in the Rule 9019 Motion hearing.  The

Environmental Nonprofits allege no concrete and particularized injury to themselves and only

allege negative effects on undefined constituencies.  Environmental Nonprofit Mot. ¶ 2.  The

Environmental Nonprofits have identified no testimony from their proposed witnesses about any

concrete and particularized injury, rather providing witnesses to discuss renewable energy and

environmental impact.  Environmental Nonprofit Mot. ¶¶ 4, 6.  They do not allege that they have

any authority or mandate to represent any party in interest in PREPA's Title III case and assert

only general grievances that the RSA violates law and public policy and will impact Puerto

Rico's economy, renewable energy policy, and public health.  Similarly, SOMOS, Inc. alleges no

concrete and particularized injury to itself and only alleges unspecified negative effects on "the

lives and future of the workers and consumers" of Puerto Rico, without any authority to

represent them.  SOMOS, Inc. Mot. ¶ 4.  SOMOS' proposed witness offers no testimony on any

concrete and particularized injury and only plans to discuss the economic effects of the RSA on

Puerto Rico consumers.  SOMOS, Inc. Mot. ¶ 8.  SOMOS, Inc., much like the Energy

Nonprofits and the Environmental Nonprofits, only alleges general grievances on behalf of the

public generally and therefore does not have standing to be heard or to offer witnesses in the

9019 Motion hearing.

## II.        THE NONPROFITS ARE NOT PARTIES IN INTEREST UNDER 11 U.S.C. § 1109.

Only a "party in interest" may appear and be heard in a bankruptcy proceeding.  11

U.S.C. § 1109(b).  Section 1109(b) lists examples:  "the debtor, the trustee, a creditor's

committee, an equity security holders' committee, a creditor, an equity security holder, or any

indenture trustee."  *Id.*; *see also In re El Comandante Mgmt. Co., LLC*, 359 B.R. 410, 416–17

(Bankr. D.P.R. 2006).  Because Section 1109(b)'s list is non-exhaustive, parties may also qualify

as "parties in interest" if they hold a "financial stake in the outcome of the debtor's estate" or

15

have a "significant legal stake in the debtor's estate." *In re El Comandante*, 359 B.R. at 417

(citing 7 Lawrence P. King, *Collier on Bankruptcy* ¶ 1109.02[1] (15th ed. 2006)).  Courts

evaluate alleged financial or legal stakes against the interest in an efficient reorganization:

"Overly lenient standards may potentially over-burden the reorganization process by allowing

numerous parties to interject themselves into the case on every issue, thereby thwarting the goal

of a speedy and efficient reorganization."  *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 850

(Bankr. S.D.N.Y. 1989) (holding that consumer advocacy group allegedly representing

ticketholders was not "party in interest" in airline bankruptcy).

These principles compel the conclusion that the Nonprofits are not parties in interest.

They do not claim to fit any of Section 1109(b)'s categories, and have not filed proofs of claim

that would confer creditor status.  Nor do they allege that the Nonprofits themselves have any

financial or legal stake in PREPA's Title III case.  *See, e.g.*, *In re Ionosphere*, 101 B.R. at 850

(consumer group not party in interest because it "lacks any right to payment," did not "have an

equitable or contingent claim," and had "no direct financial relationship to" debtor).  Rather, the

Energy Nonprofits state only in conclusory fashion that they represent "Puerto Rico's electricity

consumers," which does not render the Energy Nonprofits parties in interest.  *See, e.g.*, *id.* at 849

("This Court is not persuaded by [Consumers Union]'s assertion that due to its self proclaimed

status as protector of consumers, it has the unique power to step into the shoes of the consumer

ticket holders . . .").  The Energy Nonprofits do not even assert that the electricity consumers

they purport to represent would be parties in interest if they were to seek to appear themselves.

Likewise, the Environmental Nonprofits and SOMOS, Inc. do not assert that the constituencies

they purport to represent would be parties in interest either.

While the Nonprofits' purported constituencies may be interested in the outcome of this

16

Rule 9019 Motion, that does not confer party-in-interest status. *See, e.g., In re Addison Community Hosp. Auth.*, 175 B.R. 646, 650 (Bankr. E.D. Mich. 1994) ("Where a party is merely interested in the outcome of the matter and does not have a direct legal interest in the chapter 9 proceeding, that party is not a 'party in interest.'"). Allowing the Nonprofits (or electricity consumers, communities, or workers) to participate in the Rule 9019 Motion hearing would effectively invite anyone who could claim to be affected by the RSA to insert themselves into the litigation on the Rule 9019 Motion, which would impede and delay the proceeding. *See id.* ("By allowing a large number of non-creditors to be heard in this action, the Court would be granting a blanket invitation to all parties in the area serviced by [the debtor]. This would hamper, and unduly delay, the debt adjustment process.").

## III. THE TESTIMONY THAT THE NONPROFITS INTEND TO OFFER SHOULD BE EXCLUDED AS IRRELEVANT UNDER RULE 401 OR MORE PREJUDICIAL OR WASTEFUL THAN PROBATIVE UNDER RULE 403.

Irrelevant evidence is inadmissible. *See, e.g., Plaza-Torres v. Rey*, No. CIV. 02-1216 SEC, 2006 WL 6884391, at *2 (D.P.R. Apr. 21, 2006) (granting motion *in limine* to exclude irrelevant evidence under Fed. R. Evid. 401); *ERS Limine Order* at 4 (same). Evidence is relevant only if it has "any tendency to make a fact" that is "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see Kenney v. Head*, 670 F.3d 354, 358 (1st Cir. 2012) (affirming exclusion of evidence that did not "go to a fact of consequence"); *Faulkner v. Nat'l Geographic Soc.*, 576 F. Supp. 2d 609, 613 (S.D.N.Y. 2008) (finding evidence at issue not relevant because "it would not make any fact at issue here more or less probable tha[n] it would be in its absence"). Even if evidence has some marginal relevance, Fed. R. Evid. 403 permits the Court to exclude it "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . .wasting time, or needlessly presenting cumulative evidence." As the First Circuit has made clear, courts

17

enjoy "considerable discretion in calibrating the Rule 403 scales." *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co*., 240 F.3d 1, 6 (1st Cir. 2001).

Just this week, this Court granted a motion to exclude testimony and evidence pertaining to an April 27, 2016 meeting between counsel for bondholders of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and representatives of Milstein & Co, which served as a financial advisor to the previous Puerto Rico Governor, Alejandro Garcia Padilla. *ERS Limine Order* at 3. This Court found the evidence "at best, of marginal relevance to the central question to be considered at the Stay Relief Hearing: whether bondholders have any security interest in employer payments under the PayGo system established by the Pension Reform Legislation." *Id.* at 5. This Court then thoroughly explained why the evidence was inadmissible under Fed. R. Evid. 403 on the ground that its probative value was outweighed by the delay that introducing the evidence would inject into the proceeding:

> Here, any probative value attributable to evidence stemming from the April 27 Meeting is substantially outweighed by the risk of undue delay and wasted time associated with additional preparation for the Stay Relief Hearing and determinations related to the admissibility and weight of the proffered evidence. If the Court were to permit the proffer of the evidence in question, additional issues would be inserted into the litigation of the Stay Relief Motion. For instance, Respondents would certainly demand additional fact discovery and likely seek to conduct cross examination regarding the statements allegedly made at the April 27 Meeting. Moreover, factual and legal questions concerning Mr. Millstein's authority to speak on behalf of the Commonwealth would have to be addressed. Inquiries into such matters would add work and expense in preparation for the Stay Relief Hearing and prolong the Stay Relief Hearing itself by requiring unwarranted evaluation of subsidiary issues, and would therefore run contrary to the principles of judicial economy and prudent stewardship of debtor resources. ***At bottom, the probative value of evidence of intent is substantially outweighed by these significant transaction costs.***

*ERS Limine Order* at 6-7 (emphasis added).

18

The testimony the Nonprofits intend to offer is equally ripe for exclusion here.  It does

not bear on any fact at issue on the Rule 9019 Motion.  The sole question for the Court to decide

on a Rule 9019 motion is whether the settlement meets or exceeds the lowest point in the range

of reasonableness in terms of benefits to the debtor.  *See Allied Waste Servs. Of Mass., LLC (In

re Am. Cartage, Inc.),* 656 F.3d 82, 92 (1st Cir. 2011) ("The task of both the bankruptcy court

and any reviewing court is to canvass the issues and see whether the settlement falls below the

lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent

sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to

some deference.") (citing *In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)).  This Court has

previously stated that concerns other than reasonableness, such as ability to "reorganize

finances," "provide for essential services," "economic growth," and "overall financial prospects"

are not at issue in a 9019 Motion.  *COFINA 9019 Order* ¶ 44.  Courts assess the lowest point in

the range of reasonableness by reference to four factors:  (i) the probability of success in the

litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of

collection; (iii) the complexity of the litigation involved, and the expense, inconvenience, and

delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their

reasonable views in the premise.  *See Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); *see

also In re Indian Motorcycle Co.*, 289 B.R. 269, 283 (1st Cir. B.A.P. 2003); *In re Laser Realty,

Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at *9 (Bankr. D.P.R. Mar. 31,

2009); *In re C.P. del Caribe, Inc.*, 140 B.R. 320, 325 (Bankr. D.P.R. 1992).

The testimony that the Energy Nonprofits plan to offer has nothing to do with these

factors.  Rather, their listed witnesses will testify about (i) ICSE, (ii) its "prior participation on

energy issues and cases" with no stated relationship or similarity to this case, (iii) why the RSA

19

violates unidentified laws and public policies (which, even if relevant to the Rule 9019 Motion, would be an impermissible legal conclusion[8]), (iv) the RSA's impact on Puerto Rico's economy, (v) "economic consequences of the increase in electric energy rates," and (vi) PREPA's consideration of "economic, public policy, and legal issues"—some or all of which would be privileged—and the RSA's consequences on PREPA's finances, as well as the "benefits for PREPA and its grid of distributed energy, and renewable energy," about which other witnesses also seek to testify.  ICSE Mot. ¶ 4; Amended Energy Nonprofit Mot. ¶ 4.

The testimony that the Environmental Nonprofits and SOMOS, Inc. plan to offer has nothing to do with the four relevant factors either.  The Environmental Nonprofits' listed witnesses will testify about (i) the impact of the RSA on Puerto Rico's energy independence, energy affordability, and hurricane resilience, (ii) the effect of the Transition Charge on PREPA's efforts to install renewable energy generation into its grid, and (iii) the impact of the RSA on the health of people who live near PREPA's power plants.  Environmental Nonprofit Mot. ¶¶ 4 and 6.  SOMOS Inc.'s listed witness will testify about the effects of the RSA on Puerto Rican workers and consumers.  SOMOS, Inc. Mot. ¶ 8.

Almost none of this testimony will help the Court evaluate the only factors relevant to the reasonableness inquiry:  the probability of success and complexity of the litigation being compromised, collection difficulties in the absence of compromise, and the interests of creditors (which include the RSA signatories consisting of the holders and insurer of nearly 50% of the $8.26 billion in PREPA Bonds).  *See* Rule 9019 Mot. at 38–45; *see also COFINA 9019 Order* ¶ 44 (holding that concerns about Puerto Rico's resources for "economic growth . . . are not

---

[8] *See, e.g.*, *Nieves-Villanueva v. Soto-Rivera,* 133 F.3d 92, 99 (1st Cir. 1997) (describing as "black-letter law" that witnesses cannot testify "as to applicable principles of law").

pertinent to the one question that is before the Court on this motion practice: the reasonableness of this settlement"); *id.* ¶ 44 ("[t]he *Jeffrey* requirement that the Court give proper deference to the reasonable views of creditors does not require the Court to weigh concerns about the Commonwealth's overall financial prospects in the evaluation of the reasonableness of the settlement." Critically, the Court is not required to hold a full evidentiary hearing or even a "mini-trial" in order to approve the RSA. Instead, the Court's obligation is only to "canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983)).

Even if some testimony on the Movants' topics could be theoretically relevant to the deferential Rule 9019 reasonableness standard, it should nevertheless be excluded under Fed. R. Evid. 403 because it will waste the Court's and the parties' scarce time and resources by unnecessarily complicating and prolonging litigation of the Rule 9019 Motion, which is currently scheduled to be heard with other issues at a one or two-day ("if necessary") omnibus hearing on July 24. Scheduling Order at 4. Allowing the Nonprofits' witness lists would inject the testimony of as many as nine witnesses on far-flung issues like Puerto Rico's economy and renewable-energy policy generally. Worse, there would need to be as many as eleven pre-hearing depositions because the Energy Nonprofits identified additional potential alternative witnesses on certain topics. ICSE Mot. ¶ 4.A; Amended Energy Nonprofit Mot. ¶ 4.A. The Court, in turn, would have to expend resources on additional evidentiary disputes, including over hearsay and privilege and other objections, as well as allocate time at the hearing for direct and cross-examination of the Nonprofits' witnesses. All these issues would threaten to turn the

21

narrow Rule 9019 Motion hearing into a mini-trial (if not a full-blown one) on collateral issues including the RSA's speculative impact on everything from energy prices to Puerto Rico's economy, which is not necessary to resolve the Rule 9019 Motion.  All of the parties' and the Court's resources that would be wasted to address the Nonprofits' intended testimony can be spared now by granting this motion *in limine*.

## **CONCLUSION**

The Government Parties respectfully request that this Court exclude all testimony that the Nonprofits intend to offer on the grounds that (i) the Energy Nonprofits, the Environmental Nonprofits, and SOMOS, Inc. lack standing to appear in connection with the Rule 9019 Motion, (ii) the Energy Nonprofits, the Environmental Nonprofits, and SOMOS, Inc. are not parties  in interest under 11 U.S.C. § 1109(b), and (iii) the subjects of the testimony that the Energy Nonprofits, the Environmental Nonprofits, and SOMOS, Inc. intend to offer are irrelevant (or alternatively, more prejudicial than probative) to the Rule 9019 Motion.

**Certification of Compliance with
<u>Ninth Amended Case Management Procedures</u>**

Pursuant to ¶ I.H of the Ninth Amended Case Management AAFAF hereby certifies that it has (a) carefully examined the matter and concluded that there is a true need for an urgent hearing; (b) not created the urgency through any lack of due diligence; (c) made a bona fide effort to resolve the matter without a hearing; (d) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court; and (e) contacted counsel for the Energy Nonprofits, the Environmental Nonprofits, and SOMOS, Inc.  Counsel for the Energy Nonprofits and the Environmental Nonprofits has informed the Government Parties of their intent to oppose the Limine Motions but have not indicated opposition to having the Limine Motions heard at the June 12 Omnibus hearing.   The Government Parties did not receive a response from SOMOS, Inc.

23

Dated:  June 7, 2019
        San Juan, Puerto Rico


Respectfully submitted,

| | |
|---|---|
| **O'MELVENY & MYERS LLP** | */s/ Luis C. Marini-Biaggi* |
| | Luis C. Marini-Biaggi |
| */s/ Elizabeth L. McKeen* | USDC No. 222301 |
| | Carolina Velaz-Rivero |
| John J. Rapisardi | USDC No. 300913 |
| Nancy A. Mitchell | |
| 7 Times Square | **MARINI PIETRANTONI MUÑIZ LLC** |
| New York, NY 10036 | 250 Ponce de León Ave., Suite 900 |
| Telephone: (212) 326-2000 | San Juan, Puerto Rico 00918 |
| Facsimile: (212) 326-2061 | Tel:  (787) 705-2171 |
| Email: jrapisardi@omm.com | Fax:  (787) 936-7494 |
| nmitchell@omm.com | |
| | *Attorneys for the Puerto Rico Fiscal Agency* |
| -and- | *and Financial Advisory Authority* |
| | |
| Peter Friedman | **PROSKAUER ROSE, LLP** |
| 1625 Eye Street, NW | |
| Washington, DC 20006 | */s/ Margaret A. Dale* |
| Telephone: (202) 383-5300 | |
| Facsimile: (202) 383-5414 | Martin J. Bienenstock |
| Email: pfriedman@omm.com | Margaret A. Dale |
| | Gregg M. Mashberg |
| -and- | Eleven Times Square |
| | New York, NY 10036-8299 |
| Elizabeth L. McKeen | Tel:    (212) 969-3000 |
| Ashley M. Pavel | Fax:    (212) 969-2900 |
| 610 Newport Center Drive, 17th Floor | mbienenstock@proskauer.com |
| Newport Beach, CA 92660 | mdale@proskauer.com |
| Telephone: (949) 823-6900 | gmashberg@proskauer.com |
| Facsimile: (949) 823-6994 | |
| Email: emckeen@omm.com | -and- |
|         apavel@omm.com | |
| | Paul V. Possinger |
| | 70 W. Madison St., Suite 3800 |
| *Attorneys for the Puerto Rico Fiscal* | Chicago, IL 60602 |
| *Agency and Financial Advisory* | Tel:    (312) 962-3550 |
| *Authority and Puerto Rico Electric Power* | Fax:    (312) 962-3551 |
| *Authority* | ppossinger@proskauer.com |
| | |
| | -and- |

24

**DEL VALLE EMMANUELLI LAW OFFICES**

Luis F. del Valle Emmanuelli
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932
devlawoffices@gmail.com

*Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*