Hearing Date: June 12, 2019 at 9:30 a.m. AST
Response Deadline: June 10, 2019 at 4:00 p.m. AST
Reply Deadline: June 12, 2019 at 8:00 a.m. AST

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS<br><br>(This court filing relates only to Case No. 17 BK 4780-LTS) |

**URGENT MOTION IN LIMINE TO EXCLUDE TESTIMONY OFFERED BY UNION DE TRABAJADORES DE LA INDUSTRIA ELECTRICA Y RIEGO (UTIER), SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGIA ELECTRICA (SREAEE), AND WINDMAR RENEWABLE ENERGY**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .............................................................................................................................. 4

RELIEF REQUESTED ..................................................................................................................... 6

ARGUMENT ..................................................................................................................................... 6

    I.    The Testimony That the Unions and Windmar Intend to Offer Should Be Excluded As Irrelevant Under Rule 401 or More Prejudicial or Wasteful Than Probative Under Rule 403. ............................................................................ 6

        A.    The Subjects of the Union Witnesses' Testimony Are Irrelevant to the Rule 9019 Standard. ............................................................................. 9

        B.    Windmar's Testimony About the Renewable-Energy Industry Is Irrelevant. ...................................................................................................... 11

        C.    Alternatively, the Unions' and Windmar's Testimony Should Be Excluded Under Rule 403. ................................................................................ 12

CONCLUSION ................................................................................................................................ 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.)*,
  656 F.3d 82 (1st Cir. 2011) ............................................................................................... 8, 11

*Faulkner v. Nat'l Geographic Soc.*,
  576 F. Supp. 2d 609 (S.D.N.Y. 2008) ..................................................................................... 7

*Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*,
  240 F.3d 1 (1st Cir. 2001) ....................................................................................................... 7

*Hill v. Burdick (In re Moorhead Corp.)*,
  2008 B.R. 87 (B.A.P. 1st Cir. 1997) ....................................................................................... 9

*In re C.P. del Caribe, Inc.*,
  140 B.R. 320 (Bankr. D.P.R. 1992) ........................................................................................ 9

*In re Drexel Burnham Lambert Group, Inc.*,
  134 B.R. 493 (Bankr. S.D.N.Y. 1991) .................................................................................. 10

*In re Indian Motorcycle Co.*,
  289 B.R. 269 (1st Cir. B.A.P. 2003) .................................................................................... 8, 9

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*,
  2009 Bankr. LEXIS 2846 (Bankr. D.P.R. Mar. 31, 2009) ...................................................... 8

*In re Receivership Estate of Indian Motorcycle Mfg., Inc.*,
  299 B.R. 8 (D. Mass. 2003) .................................................................................................... 9

*In re Thompson*,
  965 F.2d 1136 (1st Cir. 1992) ................................................................................................. 8

*In re W.T. Grant Co.*,
  699 F.2d 599 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983) .................................................. 10

*Jeffrey v. Desmond*,
  70 F.3d 183 (1st Cir. 1995) ......................................................................................... 8, 10, 11

*Kenney v. Head*,
  670 F.3d 354 (1st Cir. 2012) ............................................................................................. 6, 10

*Plaza-Torres v. Rey*,
  No. CIV. 02-1216 SEC, 2006 WL 6884391 (D.P.R. Apr. 21, 2006) ..................................... 6

**Other Authorities**

Mem. Op. Order Approving Settlement Between Commonwealth of
  Puerto Rico and Puerto Sales Tax Financing Corporation, *In re Fin.
  Oversight & Mgmt. Bd. for P.R.*, No. 17-BK-3283-LTS, Adv. Proc. No.
  17-00257, ECF No. 593 ¶ 44 (Feb. 4, 2019) ............................................................. 11, 12, 13

Case:17-03283-LTS Doc#:7332 Filed:06/07/19 Entered:06/07/19 22:35:06 Desc: Main
Document Page 4 of 20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Mem. Order Granting Respondents' Urgent Motion in Limine to Exclude Evidence and Argument Regarding an Alleged April 27, 2016 Meeting with Movants' Representatives, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-03566-LTS, ECF No. 544 at 5, 6 (Jun. 5, 2019) ........................................ 7, 8, 14

**Rules**

Fed. R. Evid. 401 ................................................................................................................ 6

Pursuant to Federal Rules of Evidence 401 and 403, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 9017 and Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") (48 U.S.C. § 2170), the Financial Oversight and Management Board for Puerto Rico ("FOMB"), in its capacity as representative of the Puerto Rico Electric Power Authority ("PREPA") pursuant to Section 315(b) of PROMESA, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") hereby submit this urgent motion *in limine*.

## PRELIMINARY STATEMENT

This urgent motion *in limine* concerns the July 24, 2019 hearing on the Rule 9019 Motion,[2] in which the FOMB, PREPA, and AAFAF seek an order approving a milestone settlement: the Definitive Restructuring Support Agreement dated May 3, 2019 (the "RSA"), entered into by and among PREPA, AAFAF, the FOMB, the Ad Hoc Group of PREPA Bondholders ("Ad Hoc Group") and Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively "Assured"). The settlement represents a significant step toward PREPA's restructuring. An assortment of 26 groups and entities have served witness lists seeking to offer testimony from a total of 48 witnesses at the hearing, which is currently scheduled to last one day. Three of those entities are the labor unions UTIER and SREAEE and the renewable-energy developer Windmar, which together seek to present six witnesses: three fact witnesses and three purported expert witnesses. Their testimony should be excluded under Fed. R. Evid. 401 because it is irrelevant to the standard for approving settlements under Rule 9019. Alternatively, their testimony should be excluded under Fed. R. Evid. 403 because its introduction would waste

---

[2] *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922 and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods,* Case No. 17-04780, ECF No. 1235 (May 10, 2019) ("Rule 9019 Mot.")

1

the Court's time and the Court's and debtor's estate's resources far more than it would be probative of any relevant fact under the Rule 9019 standard.

Normally, the Government Parties would not request court approval of a restructuring support agreement in a Title III case or chapter 9 case because Bankruptcy Code section 363 does not apply. Here, the Government Parties are requesting the Court's approval of the RSA because this RSA contains a settlement of certain creditors' disputed secured claims, which cannot be allowed without a court order. The settlement provides, in relevant part, that the settling creditors will accept a plan of adjustment that proposes a certain treatment of the claims, which incorporates a large discount. By approving the RSA the Court will be limiting the amount that has to be paid to the claimholders under a plan of adjustment, but will not be confirming any plan or determining that the proposed treatment of the settled claims is confirmable. Indeed, nothing in the RSA prevents the Court from later ruling at a confirmation hearing that the proposed plan or its treatment of the settled claims is not confirmable. The hearing on approval of the RSA should focus only on whether the disputed secured claims are discounted enough to put the settlement in the range of reasonableness. Outside the scope of the settlement hearing are issues of how the balance of the plan can be negotiated, on potential alternative plans, and on confirmation issues.

The sole question under Rule 9019 is whether the settlement is above the lowest point of the range of reasonableness in possible outcomes, evaluated in terms of (i) the probability of success of the litigation being settled, (ii) collection difficulties, (iii) the complexity, expense, inconvenience, and delay of the litigation being settled, and (iv) the paramount interest of the creditors and proper deference to their reasonable views (including the owners and insurer of nearly 50% of the outstanding $8.25 billion in PREPA bonds that agreed to the settlements).

2

None of the Unions' or Windmar's witnesses intends to offer testimony on these subjects. Rather, the Unions' witnesses seek to second-guess PREPA's business judgment through sweeping testimony that the settlement (i) is not in anyone's "best interest," whether it be PREPA, creditors, or "stakeholders" generally; and (ii) "would cause more economic precariousness" and reduce energy demand. Ex. 1, UTIER's Preliminary Lists of Witnesses Who May Testify at the Hearing on the Rule 9019 Motion in Accordance with FRCP 26(a)(A)(i). None of this speculative testimony relates to the actual claims and litigation being settled—the centerpiece of the Rule 9019 Motion.

The intended testimony of Windmar's witness, the President and CEO of a renewable-energy developer, is equally irrelevant. In addition to speculating, like the Union witnesses, about the RSA's effect on the economy generally, he also intends to offer nakedly self-serving testimony about the RSA's "negative impact in the renewable energy development." *Motion by Windmar Renewable Energy Identifying Potencial [sic] Witnesses for 9019 [sic] Motion Hearing*, Case No. 17-03283-LTS, ECF No. 7169 ¶ 5 (May 30, 2019) (the "Windmar Mot."). The only purpose of such testimony could be to protect Windmar's competitive position, not to help the Court decide the relevant issues on the Rule 9019 Motion.

The Government Parties bring this motion now to help shape the remaining discovery and avoid wasting scarce resources and time on discovery into issues that merit no time at the Rule 9019 Motion hearing. Allowing the Unions' and Windmar's witnesses to testify on the wide spectrum of issues they apparently intend to that are untethered from the issues to be decided would force the Government Parties to take at least six additional depositions with the possibility of additional rebuttal witnesses in response to three designated putative experts. The Government Parties respectfully request that the Court decide this issue at the June 12, 2019

3

omnibus hearing. By granting this motion at that time, this Court can ensure that the Rule 9019 Motion hearing (and related discovery) proceed as efficiently as possible.

## BACKGROUND

**The Settlement and Rule 9019 Motion**

On May 10, 2019, PREPA filed a motion under Bankruptcy Rule 9019 (among others) for an order approving the RSA between the FOMB, AAFAF, PREPA, the Ad Hoc Group and Assured. The RSA represents a significant milestone in PREPA's Title III case and the overall restructuring of PREPA, the energy monopoly in Puerto Rico whose transformation is one of Puerto Rico's most critical initiatives. The Government Parties' concurrently filed motion *in limine* to exclude testimony offered by certain Not-For-Profit Entities[3] contains additional background about the settlement, and the litigation and claims it resolves, that is relevant to this motion.

**The Rule 9019 Motion Schedule and the Unions' and Windmar's Witness Lists**

On May 22, 2019, the Court entered a schedule for the Rule 9019 Motion discovery and hearing, under which the motion will be heard during an omnibus hearing on July 24, 2019 (and July 25 "if necessary").[4] The order called for preliminary witness lists from the moving parties, objectors, and supporters by May 30, 2019.

On May 30, 2019, preliminary witness lists were filed by two of PREPA's unions,

---

[3] *Urgent Motion in Limine to Exclude Testimony Offered by Instituto de Competitividad y Sostenibilidad Economica de Puerto Rico, Centro Unido de Detallistas Camara de Mercadeo, Industria y Distribucion de Alimentos; Asociación de Contratistas y Consultores de Energía Renovable de Puerto Rico, Puerto Rico Manufacturers Association, Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc., Enlace de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria, Ambientalista del Sureste, Inc., Sierra Club Puerto Rico, Inc., Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti Incineración, Inc., Amigos del Río Guaynabo, Inc., and SOMOS, Inc.*

[4] *Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]*, Case No. 17-04780-LTS, ECF No. 1253 at 4 (May 22, 2019) (the "Scheduling Order").

4

UTIER and SREAEE, and a renewable energy developer, Windmar. Ex. 1 at 1; Ex. 2, SREAEE's Preliminary Lists of Witnesses Who May Testify at the Hearing on the Rule 9019 Motion in Accordance with FRCP 26(a)(A)(i) at 1; Windmar Mot. ¶ 2. The Unions intend to offer testimony from (i) two putative experts that the "RSA is unreasonable and not in the best interest of PREPA," SREAEE, creditors, or stakeholders; and (ii) two fact witnesses about the "violation of the Trust Agreement of 1974" and the unspecified damages that the RSA will cause PREPA, SREAEE, and unidentified "labor" and "stakeholders." Ex. 1 at 1; Ex. 2 at 1. UTIER intends to offer an additional expert witness to testify that the RSA "is unreasonable since it would cause more economic precariousness" to Puerto Rico, increasing migration and reducing energy demand. Ex. 1 at 1.

On June 3, 2019, the Government Parties asked the Unions to explain how their proffered testimony will be germane to any of the issues that the Court must consider on the Rule 9019 Motion. Ex. 3, June 3 letter to UTIER; Ex. 4, June 3 letter to SREAEE. In response, the Unions (i) speculated that the RSA will increase the cost of living, which "will cause economic precariousness," leading to "a slowdown in the economy," and a decline in "demand for electricity," all repeating in a "vicious circle"; and (ii) confirmed that their alleged "damages" from the RSA's alleged "violation of the Trust Agreement of 1974" consist of speculative "impair[ment]" to "payments to employees and the retirement system" if "payment of operational expenses is subordinated to the payment of bondholders." Ex. 5, UTIER June 5 letter at 2; Ex. 6, SREAEE June 5 Letter at 2. Notably, the Unions do not identify a provision of the RSA that would do so, or explain why this would be an issue of fact, rather than a legal issue about the Unions' rights under applicable law.

For its part, Windmar, the renewable-energy developer, states that it opposes the RSA

5

because it "was not allowed to participate in the negotiations" and because it allegedly hurts the renewable-energy industry's "financial model." Windmar Mot. ¶ 3. Windmar's President and CEO intends to testify about (i) the RSA's "negative impact in the renewable energy development," (ii) the "negative effect in the industry and economy," (iii) unspecified alleged "false premises in which the RSA is based," and (iv) alleged "inconsistency between" unidentified "legally established public policy and the RSA." Windmar Mot. ¶ 5. In response to the Government Parties' June 3 request that Windmar explain the relevance of this proposed testimony, Windmar confirmed that its opposition lies in the supposed harm that the RSA causes to Windmar's competitive position: "the taking and damage the RSA does to the renewable, behind the meter self-production in Puerto Rico." Ex. 7, Agrait June 5 letter. Windmar does not explain how its economic position is a relevant consideration to the Rule 9019 Motion.

## RELIEF REQUESTED

The Government Parties now ask the Court to exclude the Unions' and Windmar's proffered testimony from the July 24, 2019 hearing because the purpose of the Unions' and Windmar's proffered testimony is, by their own admission, to protect their future economic self-interest rather than provide facts relevant to the Rule 9019 standard.

## ARGUMENT

**I.     THE TESTIMONY THAT THE UNIONS AND WINDMAR INTEND TO OFFER SHOULD BE EXCLUDED AS IRRELEVANT UNDER FED. R. EVID. 401 OR MORE PREJUDICIAL OR WASTEFUL THAN PROBATIVE UNDER FED. R. EVID. 403.**

Irrelevant evidence is inadmissible. *See, e.g., Plaza-Torres v. Rey*, No. CIV. 02-1216 SEC, 2006 WL 6884391, at *2 (D.P.R. Apr. 21, 2006) (granting motion *in limine* to exclude irrelevant evidence under Fed. R. Evid. 401); *see Memorandum Order Granting Respondents' Urgent Motion in Limine to Exclude Evidence and Argument Regarding an Alleged April 27,*

6

*2016 Meeting with Movants' Representatives, In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-03566-LTS, ECF No. 544 at 5, 6 (Jun. 5, 2019) (the "ERS Limine Order") (same). Evidence is relevant only if it has "any tendency to make a fact" that is "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see Kenney v. Head*, 670 F.3d 354, 358 (1st Cir. 2012) (affirming exclusion of evidence that did not "go to a fact of consequence"); *Faulkner v. Nat'l Geographic Soc.*, 576 F. Supp. 2d 609, 613 (S.D.N.Y. 2008) (finding evidence at issue not relevant because "it would not make any fact at issue here more or less probable tha[n] it would be in its absence"). Even if evidence has some marginal relevance, Federal R. of Evid. 403 permits the Court to exclude it "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . wasting time, or needlessly presenting cumulative evidence." As the First Circuit has made clear, courts enjoy "considerable discretion in calibrating the Rule 403 scales." *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 6 (1st Cir. 2001).

Just this week, this Court granted a motion to exclude testimony and evidence pertaining to an April 27, 2016 meeting between counsel for bondholders of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and representatives of Milstein & Co, which served as a financial advisor to the previous Puerto Rico Governor, Alejandro Garcia Padilla. *ERS Limine Order* at 3. This Court found the evidence "at best, of marginal relevance to the central question to be considered at the Stay Relief Hearing: whether bondholders have any security interest in employer payments under the PayGo system established by the Pension Reform Legislation." *Id.* at 5. This Court then explained why the evidence was inadmissible under Fed. R. Evid. 403 on the ground that its probative value was outweighed by the delay that the evidence would inject into the proceeding:

7

> Here, any probative value attributable to evidence stemming from the April 27 Meeting is substantially outweighed by the risk of undue delay and wasted time associated with additional preparation for the Stay Relief Hearing and determinations related to the admissibility and weight of the proffered evidence. If the Court were to permit the proffer of the evidence in question, additional issues would be inserted into the litigation of the Stay Relief Motion. For instance, Respondents would certainly demand additional fact discovery and likely seek to conduct cross-examination regarding the statements allegedly made at the April 27 Meeting. Moreover, factual and legal questions concerning Mr. Millstein's authority to speak on behalf of the Commonwealth would have to be addressed. Inquiries into such matters would add work and expense in preparation for the Stay Relief Hearing and prolong the Stay Relief Hearing itself by requiring unwarranted evaluation of subsidiary issues, and would therefore run contrary to the principles of judicial economy and prudent stewardship of debtor resources. ***At bottom, the probative value of evidence of intent is substantially outweighed by these significant transaction costs.***

*ERS Limine Order* at 6–7 (emphasis added).

The testimony the Unions and Windmar intend to offer is equally ripe for exclusion here. The Court's narrow task in deciding a Rule 9019 motion is to weigh the value exchanged by the estate: "Assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). A compromise should be approved as long as it meets or exceeds the *lowest point* in the range of reasonableness in terms of benefits to the debtor. *See Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.") (citing *In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)).

The lowest point in the range of reasonableness is assessed solely by reference to four factors: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved,

and the expense, inconvenience, and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. *See Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); *see also In re Indian Motorcycle Co.*, 289 B.R. 269, 283 (1st Cir. B.A.P. 2003); *In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at *9 (Bankr. D.P.R. Mar. 31, 2009); *In re C.P. del Caribe, Inc.*, 140 B.R. 320, 325 (Bankr. D.P.R. 1992). In analyzing these factors, deference should be afforded to the judgment of the trustee or debtor in possession, absent evidence of fraud, collusion, or similar misconduct that would undo a contract. *See In re Receivership Estate of Indian Motorcycle Mfg.*, Inc., 299 B.R. 8, 21 (D. Mass. 2003) (the court should give "substantial deference to the business judgment of a bankruptcy trustee when deciding whether to approve a settlement"); *Hill v. Burdick (In re Moorhead Corp.)*, 2008 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("The [bankruptcy] judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference."); *In re Indian Motorcycle*, 289 B.R. at 282 ("Stipulations of settlement are favored by the courts, and they will rarely be set aside absent fraud, collusion, mistake or such other factors as would undo a contract."). Against this backdrop, the testimony that the Unions and Windmar intend to offer should be excluded as irrelevant or, alternatively, more prejudicial or wasteful than probative of any relevant Rule 9019 factor.

### A. The Subjects of the Union Witnesses' Testimony Are Irrelevant to the Rule 9019 Standard.

The Unions seek to offer testimony from five witnesses on two subjects. First, three putative expert witnesses seek to testify that the RSA is "unreasonable" because it is not in the unspecified "best interest" of PREPA, the Unions, and unspecified "creditors and stakeholders," and would "cause more economic precariousness." Ex. 1 at 1; Ex. 2 at 1. But compromises are not approved or rejected under Rule 9019 based on their speculative effects on the economy or a

9

contract counter-party's market position. *See Mem. Op. Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Sales Tax Financing Corporation, In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-BK-3283-LTS, Adv. Proc. No. 17-00257, ECF No. 593 ¶ 44 (D.P.R. Feb. 4, 2019) (the "COFINA 9019 Order") (holding that concerns about Puerto Rico's resources for "economic growth . . . are not pertinent to the one question that is before the Court on this motion practice: the reasonableness of this settlement").

As for PREPA's "best interest," the relevant inquiry is to compare "the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Jeffrey*, 70 F.3d at 185. And that value is in turn assessed (as described above) by reference to the probability of success, complexity, expense, inconvenience, and delay in the litigation being compromised; collection difficulties, if any; and the interest of the creditors and a proper deference to their reasonable views (including the owners and insurer of nearly 50% of the $8.25 billion in PREPA bonds that signed the RSA). *See id.* The Unions' proffered witnesses will not testify on any of these subjects, which are the only factors relevant to deciding the Rule 9019 Motion. Untethered to those relevant factors, vague testimony about what the Unions' witnesses believe is in PREPA's generic "best interest" will not help the Court decide the Rule 9019 Motion.

Even if the witnesses were to opine on the relevant factors, their testimony would still be irrelevant because the Government Parties are afforded deference regarding their decision to enter into the RSA. The Court must "canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983)). Absent evidence of fraud, collusion, or similar misconduct—which

the Unions do not allege—the Union witnesses' complaints about the RSA and PREPA's best interest, as they perceive it, will not help the Court decide any "fact of consequence" on the Rule 9019 Motion. *Kenney*, 670 F.3d at 358.

Equally irrelevant is the Union witnesses' testimony about damage to PREPA, which the Unions claim will occur "if the payment of [PREPA's] operational expenses is subordinated to the payment of bondholders." Ex. 6 at 2. PREPA's and the FOMB's business judgment about PREPA's financial condition is entitled to deference, while the Court's function is to determine whether the RSA as a whole meets "*the lowest point* in the range of reasonableness" in terms of outcomes for the debtor. *Allied Waste*, 656 F.3d at 92. As this Court observed earlier this year, "[t]he *Jeffrey* requirement that the Court give proper deference to the reasonable views of creditors does not require the Court to weigh concerns about the Commonwealth's overall financial prospects in the evaluation of the reasonableness of the settlement." *COFINA 9019 Order* ¶ 44. Absent allegations that PREPA's and the FOMB's business judgment should be disregarded due to fraud or collusion or similar misconduct—and the Unions offer none—the Union witnesses' speculation about harm to PREPA is legally irrelevant under Rule 9019. To the extent the Union witnesses intend to testify about payment priorities under the RSA—and they have cited no provisions to support their subordination theory—that is a pure legal issue on which no fact-witness testimony is needed.

B.  **Windmar's Testimony About the Renewable-Energy Industry Is Irrelevant.**

Nor will Windmar's proposed testimony help the Court decide whether the RSA meets "*the lowest point* in the range of reasonableness" from the debtor's perspective. *Allied Waste*, 656 F.3d at 92. Windmar states that its witness, Victor Gonzalez, intends to testify about (i) the alleged "negative impact in the renewable energy development," (ii) the alleged "negative effect in the industry and economy," (iii) unspecified "false premises in which the RSA is based," and

11

(iv) alleged "inconsistency" between unspecified "legally established public policy and the RSA." Windmar Mot. ¶ 5. None of these subjects addresses the four *Jeffrey* factors relevant to this Court's inquiry. *See Jeffrey*, 70 F.3d at 185; *COFINA 9019 Order* ¶ 44. Nor does Windmar indicate how it could competently provide testimony on a legal issue (the alleged "inconsistency" between unspecified "legally established public policy and the RSA") or why, as a private party, its views on public policy override the views of the Government Parties. Based on its motion and June 5, 2019 letter attempting to justify its relevance, Windmar appears less interested in the RSA's costs and benefits to PREPA than in protecting its own economic self-interest as a self-proclaimed "top player in Puerto Rico's renewable energy market." Ex. 7. Its quibbles with RSA terms that it believes hurt its competitive position (and its complaint that it "was not allowed to participate in the negotiations") will not help the Court decide any fact of consequence on the Rule 9019 Motion. Windmar Mot. ¶ 3.

### C. Alternatively, the Unions' and Windmar's Testimony Should Be Excluded Under Fed. R. Evid. 403.

Even if some testimony on the Unions' and Windmar's topics could be theoretically relevant to the deferential Rule 9019 reasonableness standard, it should nevertheless be excluded under Fed. R. Evid. 403 because it will waste the Court's and the parties' time and resources by unnecessarily complicating and prolonging the hearing on Rule 9019 Motion, which is currently scheduled to be heard with other issues at a one or two-day ("if necessary") omnibus hearing on July 24, 2019. Scheduling Order at 4. Allowing the Unions' and Windmar's witness lists would inject the testimony of six witnesses (including three putative experts) on overbroad, far-afield issues like Puerto Rico's economy and renewable-energy industry. That would mean at least six additional pre-hearing depositions in an already compressed schedule. The Court, in turn, would have to expend resources on additional evidentiary disputes, including over hearsay and *Daubert*

12

objections, as well as allocate time at the hearing for direct and cross-examination of the Unions' and Windmar's witnesses. All these issues would threaten to turn the narrow Rule 9019 Motion hearing into a mini-trial (if not a full-blown one) on collateral issues including speculation about the RSA's impact on everything from renewable energy to Puerto Rico's economy, which is not necessary to resolve the Rule 9019 Motion.

All of the parties' and the Court's resources that would be wasted to address the Unions' and Windmar's intended testimony can be spared now by granting this motion *in limine*, as this Court recognized in granting a similar pre-hearing motion in a related proceeding. *See ERS Limine Order* at 6–7 (excluding evidence that would have "inserted" additional issues "into the litigation of the Stay Relief Motion," which "would add work and expense in preparation for the Stay Relief Hearing and prolong the Stay Relief Hearing itself by requiring unwarranted evaluation of subsidiary issues, and would therefore run contrary to the principles of judicial economy and prudent stewardship of debtor resources").

## CONCLUSION

The Government Parties respectfully request that this Court exclude all testimony that the Unions and Windmar intend to offer because the designated subjects of that testimony are irrelevant (or alternatively, more prejudicial and wasteful than probative) to the Rule 9019 Motion.

13

**Certification of Compliance with**
**<u>Ninth Amended Case Management Procedures</u>**

Pursuant to ¶ I.H of the Ninth Amended Case Management AAFAF hereby certifies that it has (a) carefully examined the matter and concluded that there is a true need for an urgent hearing; (b) not created the urgency through any lack of due diligence; (c) made a bona fide effort to resolve the matter without a hearing; (d) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court; and (e) contacted counsel for the Unions and Windmar Renewable Energy. Counsel for the Unions and Windmar has informed the Government Parties of their intent to oppose the Limine Motions but have not indicated opposition to having the Limine Motions heard at the June 12 Omnibus hearing.

Dated: June 7, 2019
San Juan, Puerto Rico

Respectfully submitted,

| | |
|---|---|
| **O'MELVENY & MYERS LLP** | */s/ Luis C. Marini-Biaggi* |
| | Luis C. Marini-Biaggi |
| */s/ Elizabeth L. McKeen* | USDC No. 222301 |
| | Carolina Velaz-Rivero |
| John J. Rapisardi | USDC No. 300913 |
| Nancy A. Mitchell | |
| 7 Times Square | **MARINI PIETRANTONI MUÑIZ LLC** |
| New York, NY 10036 | 250 Ponce de León Ave., Suite 900 |
| Telephone: (212) 326-2000 | San Juan, Puerto Rico 00918 |
| Facsimile: (212) 326-2061 | Tel: (787) 705-2171 |
| Email: jrapisardi@omm.com | Fax: (787) 936-7494 |
| nmitchell@omm.com | |
| | *Attorneys for the Puerto Rico Fiscal Agency* |
| -and- | *and Financial Advisory Authority* |
| Peter Friedman | **PROSKAUER ROSE, LLP** |
| 1625 Eye Street, NW | |
| Washington, DC 20006 | */s/ Margaret A. Dale* |
| Telephone: (202) 383-5300 | |
| Facsimile: (202) 383-5414 | Martin J. Bienenstock |
| Email: pfriedman@omm.com | Margaret A. Dale |
| | Gregg M. Mashberg |
| -and- | Eleven Times Square |
| | New York, NY 10036-8299 |
| Elizabeth L. McKeen | Tel: (212) 969-3000 |
| Ashley M. Pavel | Fax: (212) 969-2900 |
| 610 Newport Center Drive, 17th Floor | mbienenstock@proskauer.com |
| Newport Beach, CA 92660 | mdale@proskauer.com |
| Telephone: (949) 823-6900 | gmashberg@proskauer.com |
| Facsimile: (949) 823-6994 | |
| Email: emckeen@omm.com | -and- |
| *Attorneys for the Puerto Rico Fiscal* | Paul V. Possinger |
| *Agency and Financial Advisory* | 70 W. Madison St., Suite 3800 |
| *Authority and Puerto Rico Electric Power* | Chicago, IL 60602 |
| *Authority* | Tel: (312) 962-3550 |
| | Fax: (312) 962-3551 |
| | ppossinger@proskauer.com |
| | -and- |

15

**DEL VALLE EMMANUELLI LAW OFFICES**

Luis F. del Valle Emmanuelli
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932
devlawoffices@gmail.com

*Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*