**<u>Exhibit 5</u>**



**Attorneys at Law**
472 Tito Castro Ave., Marvesa Building Ste. 106, Ponce, PR 00716
Tel: (787) 848-0666 • Fax: (787) 841-1435
www.bufete-emmanuelli.com

June 5, 2019

By Email

Ms. Margaret A. Dale, Esq
Elizabeth L. McKeen, Esq.

Re: Response to Letter dated June 3, 2019, regarding the "Preliminary lists of witnesses who may testify at the hearing on the Rule 9019 Motion in accordance with FRCP 26(a)(A)(i)"

Dear all:

UTIER has received your letter dated June 3, 2019, regarding the "Preliminary lists of witnesses who may testify at the hearing on the Rule 9019 Motion in accordance with FRCP 26(a)(A)(i)". In the said letter, the FOMB, PREPA, and AAFAF stated that, among other things, the testimony that UTIER intends to offer through the witnesses listed on the Preliminary List of Witnesses is not relevant to the 9019 Motion.

The courts have established that when evaluating a 9019 Motion, the proponent of a settlement in a reorganization proceeding bears the burden of demonstrating that it is in the best interest of the estate. See In re C.R. Stone Concrete Contractors, Inc., 346 B.R. 32, 49 (Bankr. D. Mass. 2006); In re 110 Beaver Street Partnership, 244 B.R. 185, 187 (Bankr. D. Mass. 2000); In re Hydronic Enter., Inc., 58 B.R. 363, 365 (Bankr. D.R.I. 1986) ("even if it is concluded that the settlement is above the lowest level of reasonableness, in our discretion we may still deny approval, if not in the best interest of the estate"). In exercising its independent judgment, the court is free to consider any factors relevant to "a full and fair assessment of the wisdom of the compromise." 110 Beaver Street, 244 B.R. at 187.

In this case, there is no doubt that the RSA is not in the best interest of the estate of PREPA and to establish this, UTIER is entitled to present all evidence related to any factors relevant to "a full and fair assessment of the wisdom of the compromise."

The fact and expert testimonies that UTIER is going to present as evidence will establish that the RSA is not fair and reasonable. The approval of this agreement will automatically cause an increase in the cost of living of the people of Puerto Rico, which, in turn, will cause economic precariousness to the vulnerable people of the island. This

instability will cause a slowdown in the economy, which will further lower the demand for electricity. With less demand for electricity, the prospects of PREPA to comply with the operational requirements, the obligations with the workers and retirees will be severely impaired. Thus, this will destroy PREPA's proficiency to provide its essential services. This situation will become a vicious circle, that will cause higher migration, which undoubtedly, will further lower the demand for electricity, thus worsening the economic and operational endeavors of PREPA.

Moreover, UTIER is unfairly discriminated with the RSA, since it proposed to transform the bondholders into insured creditors who did not have such a preference treatment according to the Trust Agreement of 1974. This bond laundering substantially harms PREPA, its workers as internals creditors and the Retirement System, of which UTIER's members are participants. There is no doubt that the RSA harms creditors who were already protected by a binding and valid Trust Agreement. Moreover, the RSA not only completely distorts the previous understanding in detriment of PREPA's Trust Agreement, but it also harms the obligation's priorities in detriment of the provisioning of the essential services that PREPA offers to the island.

There should be no doubt that UTIER's witnesses are relevant to the 9019 Motion. As stated in UTIER's preliminary lists of witnesses, Mr. Figueroa Jaramillo will provide testimony regarding the violations of the Trust Agreement of 1974. As explained before, the RSA undermines UTIER members' rights established in previous agreements. In addition, Mr. Figueroa Jaramillo will provide testimony regarding the damages that the RSA will inflict in labor, PREPA, and stakeholders since if the payment of operational expenses is subordinated to the payment of bondholders, the adequate maintenance, payments to employees and the retirement system, and other expenses necessary for the continuity of PREPA's services, will be severely impaired. In this sense, his testimony is extremely important as it will provide a detailed perspective focused on the way PREPA operates and how this agreement would disrupt PREPA's internal operation.

Mr. Tom Sanzillo will provide expert testimony supporting the fact that the RSA is not in the best interest of PREPA, its Creditors and stakeholders, but from a financial and economic perspective, as explained previously.

Ms. Margaret A. Dale, Esq…

3

Finally, Dr. Hector R. Cordero-Guzmán will provide expert testimony regarding the economic harm that the RSA will inflict to the people of Puerto Rico, especially those most vulnerable, from a sociological and demographic perspective, as explained in the previous paragraphs.

If you still think that our witnesses are not relevant, we are available to further discuss this issue on Wednesday, June 5 at 2:00 pm EDT.

Sincerely yours,

/S/Rolando Emmanuelli-Jiménez, Esq.

Cc: Jessica E. Méndez-Colberg, Esq.