**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                              Debtors.[1] | PROMESA<br>Title III<br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                              Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, and PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>                              Movants,<br>               v.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *et al.*<br><br>                              Respondents. | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**URGENT JOINT MOTION IN OPPOSITION TO URGENT MOTION IN LIMINE TO EXCLUDE TESTIMONY OFFERED BY UNION DE TRABAJADORES DE LA INDUSTRIA ELECTRICA Y RIEGO (UTIER), SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGIA ELECTRICA (SREAEE), AND WINDMAR RENEWABLE ENERGY**

Unión de Trabajadores de la Industria Eléctrica y Reigo ("UTIER") and Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE") through its undersigned counsels, hereby respectfully file this motion in opposition to the Urgent Motion In Limine to Exclude Testimony Offered by Union de Trabajadores de la Industria Electrica y Riego (UTIER), Sistema de Retiro de los Empleados de la Autoridad de Energia Electrica (SREAEE), and Windmar Renewable Energy.  In support of this remedy, UTIER and SREAEE state as follows:

1. On June 6, 2019, at the Financial Oversight and Management Board for Puerto Rico ("Oversight Board" or "Board"), in its capacity as representative of the Puerto Rico Electric Power Authority ("PREPA") pursuant to Section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (collectively, the "Proponents"), filed an *Urgent Motion In Limine to Exclude Testimony Offered by Union de Trabajadores de la Industria Electrica y Riego (UTIER), Sistema de Retiro de los Empleados de la Autoridad de Energia Electrica (SREAEE), and Windmar Renewable Energy* (Docket No. 1301, Case No. 17-04780).

2. The Proponents request that the three fact witnesses and the three expert witnesses from UTIER, SREAEE and Windmar Renewable Energy should be excluded. They aver their exclusion should be under Fed. R. Evid. 401 because their testimony "is irrelevant to the standard for approving settlements under Rule 9019." (Motion In Limine, p. 1).

Alternatively, the Proponents request that their testimony should be excluded under Fed. R. Evid. 403 "because its introduction would waste the Court's time and the Court's and debtor's estate's resources far more than it would be probative of any relevant fact under the Rule 9019 standard." (*Id.,* p. 1-2).

3. The Proponents try to disregard the fact and expert witnesses by stating that their testimony is speculative, however, it is far from it. Precisely, the expert witnesses will testify with studies in their field of expertise to prove their assertions, which will be backed up with relevant data to that effect.

4. First, the Proponents incorrectly allege that the testimony proffered by UTIER and SREAEE is irrelevant under Rule 401, inadmissible under Rule 402, and is more prejudicial than probative under Rule 403.

5. Rule 401 of the Federal Rules of Evidence states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Rule 402 states that "[r]elevant evidence is admissible" unless the United States Constitution, a federal statute, or a federal rule otherwise provides.

6. On the other hand, Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

7. The Motion in Limine relates to what UTIER and SREAEE's proffered evidence will prove. The Proponents are asking the Court to approve the RSA which provides essentially for guaranteed payments to certain creditors backed by transition charges

(which are really hidden subsidies, taxes or penalties), without presenting any evidence of the clear injurious consequences of this arrangement. With the Motion in Limine, the Proponents intend to prevent evidence from being introduced before this Court in an attempt to achieve the approval of an agreement in the simplest way possible without other interested parties questioning its current validity or reasonableness. The Board attempts to push forward an RSA without having to address the real-life consequences it will have not only on other interested parties or creditors, but on the People of Puerto Rico and the estate of the debtor as well.

8. There is no doubt that the RSA is not in the best interest of the estate of PREPA and to establish this, UTIER and SREAEE are entitled to present all evidence related to any factors relevant to "a full and fair assessment of the wisdom of the compromise."

9. The fact and expert testimonies that UTIER and SREAEE are going to present as evidence will establish that the RSA is not fair and reasonable. The approval of this agreement will automatically cause an increase in the cost of living of the people of Puerto Rico, which, in turn, will cause economic precariousness to the vulnerable people of the island. This instability will cause a slowdown in the economy, which will further lower the demand for electricity. With less demand for electricity, the prospects of PREPA to comply with the operational requirements, the obligations with the workers and retirees will be severely impaired. Thus, this will destroy PREPA's proficiency to provide its essential services. This situation will become a vicious circle that will cause higher migration, which undoubtedly, will further lower the demand for electricity, thus worsening the economic and operational endeavors of PREPA.

10. The witnesses offered by UTIER and SREAEE are necessary to establish that such entities and its members are being unfairly discriminated with the RSA, since it proposed to transform the bondholders into insured creditors who did not have such a preference treatment according to the Trust Agreement of 1974. This bond laundering substantially harms PREPA, its workers as internals creditors and the Retirement System, of which UTIER's members are participants. There is no doubt that the RSA harms creditors who were already protected by a binding and valid Trust Agreement. Moreover, the RSA not only completely distorts the previous understanding in detriment of PREPA's Trust Agreement, but it also harms the obligation's priorities in detriment of the provisioning of the essential services that PREPA offers to the island.

11. As such, UTIER and SREAEE's witnesses are relevant to the 9019 Motion. As stated in the preliminary lists of witnesses, Mr. Ángel Figueroa-Jaramillo will provide testimony regarding the violations of the Trust Agreement of 1974. As explained before, the RSA undermines UTIER members' rights established in previous agreements. In addition, Mr. Figueroa-Jaramillo will provide testimony regarding the damages that the RSA will inflict in labor, PREPA, and stakeholders since if the payment of operational expenses is subordinated to the payment of bondholders, the adequate maintenance, payments to employees and the retirement system, and other expenses necessary for the continuity of PREPA's services, will be severely impaired. In this sense, his testimony is extremely important as it will provide a detailed perspective focused on the way PREPA operates and how this agreement would disrupt PREPA's internal operation.

12. On the other hand, Mr. Tom Sanzillo will testify from a financial and economic standpoint supporting the fact that the RSA is not reasonable and in the best interest of

PREPA, its Creditors and stakeholders. Mr. Sanzillo's testimony will be focused on the energy and financial condition of PREPA including the energy planning and priorities, debt management, among others, to demonstrate that the RSA will destroy any probability for PREPA to recover and be sustainable. Mr. Sanzillo will also provide important information regarding the lack of operational reforms that are necessary for Puerto Rico's electrical system to become operationally and financially sound to be able to comply with the RSA. Furthermore, he will demonstrate that the RSA does not achieve the objective of a bondholder debt reduction that is feasible. Therefore, the RSA is not in the best interest of the PREPA's state.

13. The expert witness Dr. Héctor R. Cordero-Guzmán will testify regarding the economic harm that the RSA will inflict to the People of Puerto Rico, especially those most vulnerable, thus in the revenue production of PREPA. Dr. Cordero-Guzmán will provide a socio-economic and demographic characteristic of the population and will highlight the most disadvantaged sectors, including the population with disabilities, the population under 18 years of age, the populations over 65 years of age, and the impact of this RSA in those sectors. Moreover, he will provide important information about the differential impact of the RSA on several segments of the population and its effects on the quality of life of the most vulnerable populations in the island. Furthermore, Dr. Cordero-Guzmán will provide important data about the impact of population change on the decrease in energy consumption and the effects of increases in the cost of energy in energy consumption.

14. With respect to SREAEE, Mr. José Rivera will testify regarding the violations of the Trust Agreement of 1974. As explained before, the RSA undermines SREAEE members'

rights established in previous agreements. In addition, Mr. Rivera will provide testimony regarding the damages that the RSA will inflict in labor, PREPA, SREAEE and stakeholders since if the payment of operational expenses is subordinated to the payment of bondholders, the adequate maintenance, payments to employees and the retirement system, and other expenses necessary for the continuity of PREPA's services, will be severely impaired. In this sense, his testimony is extremely important as it will provide a detailed perspective focused on the way PREPA operates and how this agreement would disrupt SREAEE.

15. Mr. José Fernández, on the other hand, will provide expert testimony supporting the fact that the RSA is not in the best interest of PREPA, its Creditors and stakeholders, but from an actuarial and financial perspective, as explained previously. Mr. Fernández will provide important information about the current economic conditions of the SREAEE in order to demonstrate that the RSA will seriously harm the SREAEE, and therefore PREPA. This will support the position that the RSA is not feasible, fair and reasonable.

16. Courts have established that when evaluating a 9019 Motion, the proponent of a settlement in a reorganization proceeding bears the burden of demonstrating that it is in the best interest of the estate. *See In re C.R. Stone Concrete Contractors, Inc.,* 346 B.R. 32, 49 (Bankr. D. Mass. 2006); *In re 110 Beaver Street Partnership*, 244 B.R. 185, 187 (Bankr. D. Mass. 2000); *In re Hydronic Enter., In*c., 58 B.R. 363, 365 (Bankr. D.R.I. 1986) ("even if it is concluded that the settlement is above the lowest level of reasonableness, in our discretion we may still deny approval, if not in the best interest of the estate"). In exercising its independent judgment, the court is free to consider any

factors relevant to "a full and fair assessment of the wisdom of the compromise." 110 Beaver Street, 244 B.R. at 187.

17. Furthermore, the Oversight Board raises another issue that is also the nature and substance UTIER and SREAEE's proffered expert testimony, and what weight and credibility it merits. The Board avers that the evidence is more prejudicial than probative, without any significant analysis or proof, aside from suggesting that it might prolong the scheduled Rule 9019 Motion hearing. Such statement is ironic coming from the one part in these proceedings that is spending millions of dollars only on attorney's fees that are paid by the People of Puerto Rico. Nevertheless, how can the Court accurately assess the complete relevance and weight of the evidence, without listening to expert testimony and submitting it to the crucible of cross-examination by the Board's counsels, supported by their witnesses' contrary testimony? The more prudent approach is to listen to the evidence and then assess its probative worth. Proponents suggest that the proffered evidence is premature at this stage of the proceedings, and should be dismissed at this time. They suggest that the proffered evidence would prolong the scheduled Rule 9019 Motion hearing, in which "the sole question for the Court to decide … is whether the settlement meets or exceeds the lowest point in the range of reasonableness in terms of benefits to the debtor." However, we note that the Rule 9019 Motion hearing is itself premature. The RSA for which Proponents seek the Court's approval specifies that for the RSA to be valid, 60% of the insured bonds must subscribe to the RSA two days before the July 24, 2019 hearing and 67% of the bondholders must subscribe to the RSA on or before September 1, 2019. Thus, the Oversight Board is seeking the Court's backdoor approval for an RSA which may not ever be validated. Surely, the Board's

argument that permitting testimony of UTIER and SREAEE experts will prejudice them by delaying the process cannot be taken seriously.

18. The best moment to assess the proffered evidence is now, before more time is wasted on a clearly flawed RSA which may never be executed. This would allow the Board and creditors to negotiate a more suitable RSA sooner rather than later. It is better to spend hours now to evaluate the expert witnesses' testimony, than to later find that the Board's insistence on rushing an unreasonable RSA has wasted months' worth of this Court's time.

## PRAYER

For the preceding reasons, UTIER and SREAEE, respectfully request that this Honorable Court reject the Proponents motion *in limine*.

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties. Paper copies have been mailed pursuant to Section II of the *Third Amended Notice, Case Management and Administrative Procedures*:

(i) Chambers of the Honorable Laura Taylor Swain (two copies shall be delivered to the chambers):
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Suite No. 3212
New York, New York 10007-1312;

(ii) Office of the United States Trustee for Region 21
Edificio Ochoa, 500 Tanca Street, Suite 301
San Juan, PR 00901-1922

**RESPECTFULLY SUBMITTED.**

In Ponce, Puerto Rico, this 11th day of June 2019.



472 Tito Castro Ave.,
Marvesa Building Suite 106,
Ponce, PR 00716
Tel: (787) 848-0666
Fax: (787) 841-1435

/s/Rolando Emmanuelli Jiménez
USDC: 214105

/s/ Jessica E. Mendez Colberg
USDC: 302108

Emails: rolando@bufete-emmanuelli.com
jessica@bufete-emmanuelli.com
notificaciones@bufete-emmanuelli.com