Hearing Date: June 12, 2019 at 9:30 a.m. AST

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS<br><br>(This court filing relates only to Case No. 17 BK 4780-LTS) |

**REPLY IN FURTHER SUPPORT OF URGENT MOTION IN LIMINE TO EXCLUDE TESTIMONY OFFERED BY INSTITUTO DE COMPETITIVIDAD Y SOSTENIBILIDAD ECONOMICA DE PUERTO RICO, CENTRO UNIDO DE DETALLISTAS CAMARA DE MERCADEO, INDUSTRIA Y DISTRIBUCION DE ALIMENTOS, ASOCIACIÓN DE CONTRATISTAS Y CONSULTORES DE ENERGÍA RENOVABLE DE PUERTO RICO, PUERTO RICO MANUFACTURERS ASSOCIATION, COMITÉ DIÁLOGO AMBIENTAL, INC., EL PUENTE DE WILLIAMSBURG, INC., ENLACE DE ACCIÓN CLIMÁTICA, COMITÉ YABUCOEÑO PRO-CALIDAD DE VIDA, INC., ALIANZA COMUNITARIA, AMBIENTALISTA DEL SURESTE, INC., SIERRA CLUB PUERTO RICO, INC., MAYAGÜEZANOS POR LA SALUD Y EL AMBIENTE, INC., COALICIÓN DE ORGANIZACIONES ANTI INCINERACIÓN, INC., and AMIGOS DEL RÍO GUAYNABO, INC. [ECF NO. 1300]**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Financial Oversight and Management Board for Puerto Rico (FOMB), in its capacity as representative of the Puerto Rico Electric Power Authority (PREPA) pursuant to Section 315(b) of PROMESA, and the Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF) (collectively, "the Government Parties") hereby submit this reply in support of their urgent motion *in limine* to exclude testimony offered by the Nonprofits (the "Nonprofits Motion").[2]  Only the Environmental Nonprofits[3] submitted a timely opposition to the Nonprofits Motion.  The Energy Nonprofits and SOMOS, Inc. did not submit an opposition.  Likewise, no party filed a timely opposition to the Government Parties' urgent motion *in limine* to exclude testimony offered by Union de Trabajadores de la Industria Electrica y Riego (UTIER), Sistema de Retiro de los Empleados de la Autoridad de Energia Electrica (SREAEE), and Windmar Renewable Energy (ECF No. 1301).

Under the operative Eighth Amended Notice, Case Management, and Administrative Procedures Order (ECF No. 4866-1), objections "shall not be considered timely unless filed with the Court and received by the movant and the Standard Parties on or before the applicable Objection Deadline."  ECF No. 4866-1 at III(I).  The Government Parties therefore request that their urgent motions *in limine* be granted with respect to each of the parties that failed to file a timely objection thereto.  The Government Parties reply below to the Environmental Nonprofits'

---

[2] The Nonprofits consist of Instituto de Competitividad y Sostenibilidad Economica de Puerto Rico, Centro Unido de Detallistas Camara de Mercadeo, Industria y Distribucion de Alimentos, Asociación de Contratistas y Consultores de Energía Renovable de Puerto Rico, Puerto Rico Manufacturers Association, Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc., Enlace de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria, Ambientalista del Sureste, Inc., Sierra Club Puerto Rico, Inc., Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti Incineración, Inc., Amigos del Río Guaynabo, Inc., and SOMOS, Inc.

[3] Unless otherwise noted, abbreviations and names have the same meaning as in the Nonprofits Motion (ECF No. 1300) and the Unions-Windmar Motion (ECF No. 1301).

1

opposition brief and the Energy Nonprofits' June 10, 2019 Addition to Joint Status Report (ECF No. 1313).

## ARGUMENT

**I. THE ENVIRONMENTAL NONPROFITS ARE NOT PARTIES IN INTEREST UNDER 11 U.S.C. § 1109.**

The Government Parties previously explained why all the Nonprofits are not "parties in interest" with the right under the Bankruptcy Code to appear on the Rule 9019 Motion. The Environmental Nonprofits do not seriously contest this. All they argue is that they have a "direct stake" in the PREPA Title III case because they are "direct consumers of electricity." (Opp. at 13–14.) Section 1109(b) is not that flexible. If it were, nearly every resident and business in Puerto Rico would be a "party in interest" with the right to be heard on the Rule 9019 Motion. For this reason, courts define bankruptcy standing much more narrowly: "Overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization." *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 850 (Bankr. S.D.N.Y. 1989). Rather, the "real party in interest is the party that has the legal right which is sought to be enforced or is the party entitled to bring suit." *Id.* (citing *In re Comcoach Corp.*, 698 F.2d 571, 574 (2d Cir. 1983)).

In effect conceding that they are not parties in interest under Section 1109(b), the Environmental Parties instead seek permissive intervention under Fed. R. Civ. P. 24(b)(1)(B) and Fed. R. Bankr. P. 2018(a). They have not satisfied the requirements of either rule.

Permissive intervention under Rule 24(b)(1)(B) is only available to those with "a claim or defense that shares with the main action a common question of law or fact." On the Rule 9019 Motion, the sole "question of law or fact" is whether the settlement meets "the lowest point in the

range of reasonableness" (*i.e.*, whether "the compromise with respect to this particular asset"—here, PREPA's and its bondholders' respective claims and litigation that are being settled—"is reasonable in the context of the dispute about this asset"). Mem. Op. Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Sales Tax Financing Corporation, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-BK-3283-LTS, Adv. Proc. No. 17-00257, ECF No. 593 ¶ 44 (D.P.R. Feb. 4, 2019) (the "COFINA 9019 Order"). But the Environmental Nonprofits' opposition makes plain that they do not intend to introduce testimony about the underlying claims and litigation being settled and whether that settlement is reasonable in that context. Rather, they intend to present putative expert witnesses to opine about the RSA's effect on Puerto Rico energy consumers generally, the environment, and renewable-energy development. Opp. at 13–14. These are not "claims or defenses" to the Rule 9019 Motion. Thus, they are not grounds for permissive intervention under Rule 24(b)(1)(B). *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 301 F. Supp. 3d 306, 313 (D.P.R. 2017) (denying GO Group intervention to argue issues of Puerto Rican constitutional law that were outside the scope of proceeding concerning the rights of COFINA and its creditors).

The Environmental Nonprofits also do not satisfy the requirements to intervene under Bankruptcy Rule 2018(a), which requires a showing of good cause. Courts are "discriminating in determining whether permissive intervention is appropriate" and "consider the potential adverse impact on the original parties." *In re Ionosphere Clubs*, 101 B.R. 844, 853–54 (Bankr. S.D.N.Y. 1989). Permitting intervention as requested by the Environmental Nonprofits would cause undue delay and prejudice because their proposed intervention would cause confusion by interjecting too many parties into the proceeding and threatening to add significantly to the costs involved. *See, e.g.*, *In re Hyde Park P'ship*, 73 B.R. 194, 197 (Bankr. N.D. Ohio 1986); *Manufacturer's Trust*

3

*Company v. Kelby*, 125 F.2d 650 (2d Cir. 1942), *cert. denied*, 316 U.S. 697 (danger of confusion arising from the presence of too many parties and the possible increases in allowances and costs). If the nine Environmental Nonprofits were permitted to intervene, their two putative expert witnesses would need to be deposed (and additional rebuttal witnesses may need to be identified), the Court would likely need to resolve *Daubert* issues, and other witnesses (not just the two putative experts) may need to testify on the same issues that the Environmental Nonprofits seek to raise. This would unnecessarily broaden the scope of the hearing into a debate about Puerto Rico energy and environmental policy, which may be for the Commonwealth's local courts, commissions, and administrative agencies, but is not before this Court.

Where other courts have allowed intervention in bankruptcy proceedings by parties without standing, they have allowed it only in limited capacities, not with the full rights granted to general intervenors under Rule 2018(a) that the Environmental Nonprofits request. In *In re Public Service Co. of New Hampshire*, the Bankruptcy Court denied a consumer group "full party in interest status" under Section 1109(b) "and/or general intervenor status" under Rule 2018(a). 88 B.R. 546, 557 (Bankr. D.N.H. 1988). The Bankruptcy Court in that case only allowed the consumer group the right to "provide the court with advice and information regarding the effect on the rates of their particular constituencies of proposals otherwise before the court in these proceedings" and not the right to proffer witnesses. The Environmental Nonprofits, however, should not even be given the same limited right as the consumer group in *In re Public Service Co. of New Hampshire*, because that group presented evidence that it had "regularly appeared" before public utilities commissions to present its "special viewpoint." *Id.* at 557-58. The Environmental Nonprofits have presented nothing similar here, just their stated intention to present witness testimony on matters that are not before the Court. *See, e.g.*, Order

4

*Resolving Motion to Intervene*, Case No. 17-04780, Adv. Proc. No. 18-00021, ECF No. 36 at 4 (March 16, 2018) (allowing National Finance Guarantee Corp. to intervene under Rule 1109(b) only to file briefs, not to provide any evidence as attachments or at the hearing).

## II. THE NONPROFITS LACK ARTICLE III STANDING TO OPPOSE THE RULE 9019 MOTION.

### A. The Environmental Nonprofits

As the Government Parties showed in their opening brief, the Environmental Nonprofits cannot satisfy threshold constitutional and prudential standing requirements, which include showings that (i) they have suffered or are imminently threatened with a "concrete and particularized" injury in fact, and (ii) they are asserting their own rights, as opposed to those of absent third parties. In their opposition, the Environmental Parties argue that their "injury" is the future payment of a so-called "sun tax" on their own generation of electricity (such as through self-owned solar panels) when they do not purchase that electricity from PREPA. (Opp. at 15–16.) They argue that their members would have standing to sue in their own right because they would be subject to the same purported tax, thus satisfying prudential-standing requirements. (Opp. at 15.)

The flaw in the Environmental Parties' argument is that they have not identified a *legal injury* caused by their novel theory. This is the critical distinction between the Environmental Parties' complaint and all the authorities on which they rely. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 174–75 (2000) (alleged injury from violation of federal Clean Water Act); *Byrd v. EPA*, 174 F.3d 239, 241 (D.C. Cir. 1999) (alleged injury from violation of Federal Advisory Committee Act); *Lepelletier v. FDIC*, 164 F.3d 37, 41 (D.C. Cir. 1999) (alleged injury from violation of Freedom of Information Act and breach of contract); *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 672–73 (D.C. Cir. 2013) (alleged injury from EPA's

5

alleged violations of Clean Air Act in promulgating its rules). The Environmental Parties have not alleged (and cannot allege) that the RSA's Transition Charge (the so-called "sun tax") violates any laws that would allow them to seek relief. Thus, even if their alleged injury is sufficiently concrete,[4] it is not a *legally cognizable* injury that establishes standing. *See, e.g.*, *Byrd*, 174 F.3d at 244 ("refusal to provide information to which one is entitled" under federal law "constitutes cognizable injury sufficient to establish Article III standing"). Rather, the Environmental Parties simply dispute the policy decision to impose a charge based on electricity consumption, rather than just on electricity purchased from PREPA. This is precisely the type of "generalized grievance[] more appropriately addressed in the representative branches," which the Court should not adjudicate based on long-established rules of prudential standing. *See Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004). Moreover, the Environmental Nonprofits' policy concerns about whether self-generated electricity should be subject to the Transition Charge, the effect of that decision on the renewable-energy industry generally, and whether the Transition Charge may be imposed at all are not questions for this Court to decide. PREPA is not asking for the Court's permission to impose the Transition Charge; that is a decision for PREPA.

## B. The Energy Nonprofits

ICSE and the other Energy Nonprofits did not file an opposition to the Nonprofits Motion, as noted above. To the extent they intended their June 10, 2019 Addition to Joint Status Report (ECF No. 1313) to serve as their opposition, it only confirms that the Energy Nonprofits lack constitutional and prudential standing, and are not parties in interest under the Bankruptcy Code. They cite only speculative and generalized (rather than concrete and particularized) grievances about PREPA's "debt sustainability," "future electrical rates," the "general ability of Puerto Rico

---

[4] The Environmental Parties undercut this argument by admitting themselves that the RSA "may not ever be validated" if it fails to receive the necessary levels of bondholder support by certain dates. (Opp. at 19.)

6

residents to pay general public debt," and the balance of power between PREPA and its regulators, which ICSE does not represent. ECF No. 1313 at 4. The Energy Nonprofits assert no direct injury to themselves, making clear that they represent "electrical consumers," in violation of the prudential-standing rule against asserting the rights of absent third parties. As the Government Parties explained in their opening brief (Nonprofits Mot. at 13), the Energy Nonprofits' conclusory assertion that the RSA is illegal likewise cannot confer standing in the absence of a concrete and particularized injury. (ECF No. 1313 at 4–5.)

The Energy Nonprofits' addition to the Joint Status Report (ECF No. 1313) also added *two additional groups* (Asociacion de Restaurantes de Puerto Rico (ASORE) and Puerto Rico Hospital Association (PRHA)), neither of which has appeared before and neither of which claims to assert any direct rights or interests (as opposed to the rights or interests of third parties). ASORE and PRHA do not differentiate their complaints in any way from those of the other Energy Nonprofits, which confirms that they seek to adjudicate only generalized grievances in violation of prudential-standing requirements. *See In re. Fin. Oversight & Mgmt. Bd. for P.R.*, 301 F. Supp. 3d 306, 312 (D.P.R. 2017) (prudential standing requires "that a party demonstrate that its claim is 'premised on [its] own legal rights (as opposed to those of a third party)'"); *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (prudential standing bars "adjudication of generalized grievances more appropriately addressed in the representative branches").

### III. THE TESTIMONY THAT THE ENVIRONMENTAL NONPROFITS INTEND TO OFFER SHOULD BE EXCLUDED AS IRRELEVANT UNDER RULE 401 OR MORE PREJUDICIAL OR WASTEFUL THAN PROBATIVE UNDER RULE 403.

Although the Environmental Parties argue in conclusory fashion that they intend to present relevant testimony, they fail to make their case. As this Court has written, the sole issue under Rule 9019 is whether "the compromise with respect to this particular asset"—here, PREPA's and its bondholders' respective claims and litigation that are being settled—"is reasonable in the

7

context of the dispute about this asset." COFINA 9019 Order ¶ 44. The compromise need only meet "the lowest point in the range of reasonableness," evaluated by reference to the four *Jeffrey* factors: (i) the probability of success in the litigation being compromised; (ii) any collection difficulties; (iii) the complexity of the litigation involved, and the associated expense, inconvenience, and delay; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views. *See Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); COFINA 9019 Order ¶ 31.

The Environmental Nonprofits address nothing about the underlying claims and litigation that are being settled (either the merits or the associated expense and delay) or the "paramount interest" of creditors. Rather, the Environmental Nonprofits spend their opposition explaining why the RSA is relevant *on broad public policy issues that are part of their mission*, not why the testimony they seek to present is relevant to the matter in dispute. (Opp. at 15–18.) The Environmental Nonprofits may sincerely believe as a matter of public policy that consumers of self-generated electricity should be exempt from the Transition Charge, which their putative expert will testify "will burden and harm Puerto Rico's environment and citizens." (Opp. at 17–18.) But the Government Parties have not asked this Court to approve the imposition of the Transition Charge in the RSA—only where proceeds of Transition Charge go. In the context of this dispute, the Environmental Nonprofits' policy concerns are no different than the concerns about "essential services and economic growth" that were raised during the COFINA Rule 9019 proceeding, which the Court held were simply "not pertinent to the one question that is before the Court on this motion practice: the reasonableness of the settlement." COFINA 9019 Order ¶ 44. As the Court observed, "the *Jeffrey* requirement that the Court give proper deference to the reasonable views of creditors does not require the Court to weigh concerns about the Commonwealth's overall financial

8

prospects in the evaluation of the reasonableness of the settlement." *Id*.

Even if the Environmental Nonprofits' proffered testimony had some marginal relevance to Rule 9019, it should still be excluded under Fed. R. Evid. 403, as the Government Parties explained in their opening brief. The Environmental Nonprofits' response that their proffered testimony is worth prolonging the Rule 9019 Motion hearing (Opp. at 18) fails to appreciate the full extent of the time and resources required if the Court were to allow the testimony. The Environmental Nonprofits' two putative expert witnesses would need to be deposed, and rebuttal experts may need to be designated in response. The Court would likely need to decide *Daubert* issues at or before the hearing, such as whether one of the putative experts, a professor of electrical engineering and computers, is qualified to opine on "Puerto Rico's commitment to energy independence, energy affordability, and hurricane resilience," as the Environmental Nonprofits claim. (ECF No. 1279 ¶¶ 3-4.) If the Environmental Non-Parties were permitted to provide this testimony and debate the policy wisdom and implications of the transition charge, as they do in their opposition, the number of disputed issues to be resolved at the Rule 9019 Motion hearing would rise significantly. Aside from needing to find time for the direct and cross-examination of the Environmental Nonprofits' proffered witnesses, the time required for other fact and expert witnesses' testimony would likely also increase because they might also need to address the same issues as the Environmental Nonprofits' witnesses. As the Court held in granting a similar motion *in limine* last week, the end result of allowing this testimony would be to "add work and expense in preparation for the [Hearing] and prolong the [Hearing] itself by requiring unwarranted evaluation of subsidiary issues, and would therefore run contrary to the principles of judicial economy and prudent stewardship of debtor resources." Mem. Order Granting Respondents' Urgent Motion *in Limine* to Exclude Evidence and Argument Regarding an Alleged April 27, 2016

9

Meeting with Movants' Representatives, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-03566-LTS, ECF No. 544 at 7 (Jun. 5, 2019).

## CONCLUSION

For the foregoing reasons, the Government Parties' Urgent Motions *in Limine* (ECF Nos. 1300 and 1301) should be granted.

10

Dated: June 11, 2019
San Juan, Puerto Rico

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
Nancy A. Mitchell
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
nmitchell@omm.com

-and-

Peter Friedman
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: pfriedman@omm.com

-and-

Elizabeth L. McKeen
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**PROSKAUER ROSE, LLP**

*/s/ Margaret A. Dale*

Martin J. Bienenstock
Margaret A. Dale
Gregg M. Mashberg
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
mbienenstock@proskauer.com
mdale@proskauer.com
gmashberg@proskauer.com

-and-

Paul V. Possinger
70 W. Madison St., Suite 3800
Chicago, IL 60602
Tel: (312) 962-3550
Fax: (312) 962-3551
ppossinger@proskauer.com

-and-

11

**DEL VALLE EMMANUELLI LAW OFFICES**

Luis F. del Valle Emmanuelli
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932
devlawoffices@gmail.com

*Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*