## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 1063, 1150**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA")<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>**This document relates to the COFINA Title III case only and will be filed in the main case and COFINA Title III case.** |

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

### NOTICE OF HEARING FOR OBJECTION OF
### PUERTO RICO SALES TAX FINANCING CORPORATION
### TO PROOFS OF CLAIM OF THE UNITED STATES DEPARTMENT OF THE
### TREASURY/INTERNAL REVENUE SERVICE (CLAIM NOS. 168648 AND 168885)

**PLEASE TAKE NOTICE** that, on June 12, 2019, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on its own behalf and as the sole entity authorized to act on behalf of all of Puerto Rico's governmental entities, including the Puerto Rico Sales Tax Financing Corporation ("COFINA"),[2] by and through by the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, filed the *Objection of Puerto Rico Sales Tax Financing Corporation to Proofs of Claim of the United States Internal Revenue Service (Claim Nos. 168648 and 168885)* (the "Objection") with the United States District Court for the District of Puerto Rico (the "Court"), seeking to disallow in their entirety Proofs of Claim Nos. 168648 and 168885 filed by the United States Department of the Treasury/Internal Revenue Service.

**PLEASE TAKE FURTHER NOTICE** that any response to the Objection must be filed in writing with the Court <u>and</u> must be served upon and received by the undersigned counsel for AAFAF by **4:00 p.m. (Atlantic Time)** on **July 9, 2019**.

**PLEASE TAKE FURTHER NOTICE** that, in the event that one or more responses to the Objection are timely filed, the Objection shall be considered by The Honorable Laura Taylor Swain, at the United States District Court for the District of Puerto Rico, 150 Carlos Chardón Street, Federal Building, San Juan, Puerto Rico 00918-1767, at **9:30 a.m. (Atlantic Time) on July 24, 2019.**

**PLEASE TAKE FURTHER NOTICE THAT, IF NO RESPONSES TO THE OBJECTION ARE TIMELY FILED, SERVED, AND RECEIVED, IN ACCORDANCE**

---

[2] The Financial Oversight and Management Board for Puerto Rico, as COFINA's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, has authorized AAFAF to file this Objection on behalf of COFINA.

**WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**

*Remainder of page intentionally left blank*

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these Title III cases are available (a) free of charge by visiting https://cases.primeclerk.com/puertorico or by calling +1 (844) 822-9231, and (b) on the Court's website at http://www.prd.uscourts.gov, subject to the procedures and fees set forth therein.

Dated: June 12, 2019
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Suzzanne Uhland*
John J. Rapisardi
Suzzanne Uhland
Peter Friedman
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 1063, 1150**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA")<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>**This document relates to the COFINA Title III case only and will be filed in the main case and COFINA Title III case.** |

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OBJECTION OF PUERTO RICO SALES TAX FINANCING CORPORATION TO
PROOFS OF CLAIM OF THE UNITED STATES DEPARTMENT OF THE
TREASURY/INTERNAL REVENUE SERVICE (CLAIM NOS. 168648 AND 168885)**

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on its own

behalf and as the sole entity authorized to act on behalf of all of Puerto Rico's governmental

entities, including the Puerto Rico Sales Tax Financing Corporation ("COFINA"),[2] by the

*Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, files this

objection (the "Objection") to Proofs of Claim Nos. 168648 and 168885 (collectively, the

"Claims") filed by the United States Department of the Treasury/Internal Revenue Service (the

"Claimant" or "IRS"), and in support of the Objection, respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this Objection and the relief requested herein pursuant to PROMESA

section 306(a). Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.  The COFINA Title III Case**

2.      COFINA is a public corporation and instrumentality of the Commonwealth of

Puerto Rico (the "Commonwealth") constituting a corporate and political entity independent and

separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the

Commonwealth.

3.      On May 5, 2017, the Oversight Board, at the request of the Governor of Puerto

Rico, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed

---

[2]    The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as COFINA's
representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*
("PROMESA"), has authorized AAFAF to file this Objection on behalf of COFINA.

a voluntary petition for relief for COFINA, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "COFINA Title III Case").

4.       The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652][3] on January 9, 2019, and a related *Disclosure Statement for the Second Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* [ECF No. 4364] (the "Disclosure Statement") on November 26, 2018. The Court considered confirmation of the Plan and any objections thereto at a hearing on January 16-17, 2019.

5.       On February 4, 2019, the Court confirmed the Plan. *See Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048]. On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055]. The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587] (the "Notice of Effective Date").

6.       The Notice of Effective Date sets forth the deadline (the "Administrative Bar Date") for claimants to file proofs of, or requests for, payment of administrative expense claims ("Administrative Expense Requests"), providing that:

> pursuant to Section 1.6 of the Plan and decretal paragraph 26 of the Confirmation Order, the deadline for filing [Administrative Expense Requests] is **April 13, 2019**; provided, however, that no proof of

---

[3]      Unless otherwise stated herein, all ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of COFINA; and, provided, further, that, in accordance with section 503(b)(1)(D) of the Bankruptcy Code, applicable herein pursuant to Section 301 of PROMESA, no governmental unit, including, without limitation, the IRS, shall be required to file a proof of Administrative Expense Claim by such date in order to be considered; and, <u>provided</u>, <u>further</u>, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interests of COFINA and Reorganized COFINA, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof.

Notice of Effective Date at 2 (emphasis in original).

7.       On April 22, 2019, the Court entered an order extending the Administrative Bar Date to June 30, 2019 for, among other claimants, the IRS. *See Stipulated Order Extending the Administrative Bar Date for Certain Claimants* [Case No. 17 BK 3284-LTS, ECF No. 6432].

## B. Build America Bonds and Recovery Zone Bonds

8.       Under former section 54AA of the U.S. Internal Revenue Code of 1986 (the "<u>Code</u>"), COFINA was permitted to issue build America bonds[4] ("<u>BABs</u>") during 2009 and 2010.[5] I.R.C. §54AA, repealed by Pub. L. 115-97, Title I, §13404(a), Dec. 22, 2017, 131 Stat. 2138. Under sections 54AA(a) and (b) of the Code, with respect to each interest payment date, holders of BABs were entitled to a tax credit equal to 35 percent of the interest payable by the issuer of the BABs with respect to such interest payment date. §54AA(a)-(b). Section 54AA(e) defines the term "interest payment date" as each date on which a holder is entitled to a payment of

---

[4]    Section 54AA(d)(1) defines the term "build America bond" as any obligation (other than a private activity bond) if: (A) the interest on such obligation would (but for section 54AA) be excludable from gross income under section 103 of the Code, (B) such obligation is issued before January 1, 2011, and (c) the issuer makes an irrevocable election to have section 54AA apply. I.R.C. §54AA(d)(1).

[5]    Although sections 54AA, 6431, and 1400U-2 of the Code cited herein have been repealed, their provisions continue to apply to BABs and Recovery Zone Bonds issued before repeal. *See* Pub. L. 115-97, Title I, §13404(d), Dec. 22, 2017, 131 Stat. 2138; Pub. L. 115-141, Div. U, Title IV, §401(d)(6)(A), Mar. 23, 2018, 132 Stat. 1211.

interest under the terms of the BAB. §54AA(e). However, in lieu of bondholders receiving a tax credit, section 54AA(g) and sections 6431(a) and (b) of the Code permitted issuers of BABs to instead elect to receive with respect to each interest payment date a direct subsidy payment equal to 35 percent of the interest payable under that BAB for that date. §54AA(g); I.R.C. §6431(a)-(b), repealed by Pub. L. 115-97, Title I, §13404(b), Dec. 22, 2017, 131 Stat. 2138. BABs for which the election to receive direct payments had been made are referred to herein as "Direct Payment BABs." Under the applicable IRS rules, issuers of Direct Payment BABs were required to submit requests for payment of the amounts owed by the IRS in connection with each interest payment date on an IRS Form 8038-CP. *See* Notice 2010-35, 2010-19 I.R.B. 660 (May 10, 2010).

9.      Similarly, former section 1400U-2 of the Code permitted COFINA to issue recovery zone economic development bonds ("Recovery Zone Bonds") during 2009 and 2010.[6] I.R.C. §1400U-2, repealed by Pub. L. 115-141, Div. U, Title IV, §401(d)(6)(A), Mar. 23, 2018, 132 Stat. 1211. Under section 1400U-2(a), Recovery Zone Bonds were similar to BABs except that the direct subsidy payments were established at 45 percent of the interest payable, rather than 35 percent. §1400U-2(a)(2). Recovery Zone Bonds, like BABs, provided the issuer with the ability to elect to receive direct payments from the IRS. §1400U-2(a)-(b); §6431(a)-(b). Recovery Zone Bonds for which the election to receive direct payments had been made by the issuer are referred to herein as "Direct Payment Recovery Zone Bonds."

10.     Subsequent to 2011, as a result of the application of the U.S. Budget Control Act of 2011, sequestration has applied to Direct Payment BABs and Direct Payment Recovery Zone Bonds. Pub. L. 112–25, S. 365, 125 Stat. 240, August 2, 2011. As a result, the amount of the direct

---

[6]   Recovery Zone Bonds were defined as BABs that met certain additional requirements under section 1400U-2, primarily related to the use of the proceeds of such bonds for "qualified economic development purposes," as defined in section 1400U-2(c). I.R.C. §1400U-2(b)-(c).

subsidy payments on Direct Payment BABs has been reduced from the 35 percent provided for in sections 54AA and 6431 of the Code by an amount specified each year by the Office of Management and Budget and the IRS.[7] Similarly, the amount of the direct subsidy payments on Direct Payment Recovery Zone Bonds has been reduced from the 45 percent provided for in section 1400U-2(a)(2) of the Code. *Id*.

### C. COFINA's Series 2010D and 2010E Bonds

11.    On June 30, 2010, COFINA issued its Sales Tax Revenue Bonds, First Subordinate Series 2010D (Corporation Subsidy Build America Bonds) (the "2010D Bonds") as BABs and elected under section 54AA(g) to treat those bonds as Direct Payment BABs. For each interest payment date on the 2010D BABs through and including February 1, 2019, COFINA submitted the request for payment in the manner specified by the IRS. The IRS made all payments requested with respect to the 2010D Bonds except for the February 1, 2019 interest payment date.

12.    On June 30, 2010, COFINA issued its Sales Tax Revenue Bonds, First Subordinate Series 2010E (Corporation Subsidy Recovery Zone Economic Development Bonds) (the "2010E Bonds" and collectively with the 2010D Bonds, the "2010 Bonds") as Recovery Zone Bonds and elected under section 54AA(g) to treat those bonds as Direct Payment Recovery Zone Bonds. For each interest payment date on the 2010E Bonds, COFINA submitted the request for payment in the manner specified by the IRS. Beginning with the May 1, 2018 interest payment date, the IRS ceased making direct payments to COFINA with respect to the 2010E Bonds.

13.    Prior to the Effective Date of the Plan, each month, on or prior to the 10th day, merchants and retailers were required to pay all sales and use tax revenues collected during the

---

[7]    The sequestration rates applicable to BABs and Recovery Zone Bonds for each year are published on the IRS website and can be found at: https://www.irs.gov/tax-exempt-bonds/effect-of-sequestration-on-state-local-government-filers-of-form-8038-cp.

prior month—including the sales and use taxes pledged by COFINA to secure debt (the "Pledged Sales Taxes")—to Banco Popular de Puerto Rico ("Banco Popular"). *Disclosure Statement* at 38. Banco Popular subsequently transferred the Pledged Sales Taxes to Bank of New York Mellon ("BNYM"), as the trustee for the bonds issued by COFINA, including the 2010 Bonds. *Id.* BNYM used the Pledged Sales Taxes to make principal and interest payments to the COFINA bondholders. *Id.* at 38-39.

**D. Interpleader Order**

14.    Under the Court's May 30, 2017 *Order Granting Interpleader, Staying Pending and Future Litigation Against the Bank of New York Mellon, as Trustee, Pursuant to 28 U.S.C. § 2361, and Granting Related Relief* [Adv. Proc. No. 17-00133-LTS, ECF No. 110] (the "Interpleader Order"), BNYM was ordered to hold the Pledged Sales Taxes and not pay them to the COFINA bondholders, including holders of the 2010 Bonds:

> BNYM shall interplead the June 1 [2017] Payment . . . and any future payments of principal and interest on a monthly basis until entry of a final order of this Court directing the timing and manner of the disbursement of such funds (collectively, and net of the fees and expenses paid pursuant to paragraph 9 below, the "Disputed Funds"), as follows: BNYM shall (a) hold the entirety of the Disputed Funds in the existing accounts into which they have been deposited, on behalf of the party or parties ultimately determined by the Court to be entitled to the Disputed Funds . . . .

Interpleader Order at 3. Notably, the Interpleader Order provides that BNYM shall hold the Disputed Funds "on behalf of the party or parties ultimately determined by the Court to be entitled to the Disputed Funds." *Id.* This language was specifically added by the Court to address any concerns that the interpleader of the Disputed Funds would result in an event of default under the applicable bond documents. *See Memorandum Order*, June 1, 2017 [Adv. Proc. No. 17-00133-LTS, ECF No. 131] ("COFINA, through AAFAF, asserted at the hearing that the Court should not grant interpleader because to do so would result in an Event of Default caused by COFINA's

7

failure to make payments required under the Resolution. To alleviate this concern, the Court's order granting interpleader will state that the Disputed Funds are to be held in trust on behalf of the party or parties to whom the Court ultimately determines the Disputed Funds rightfully belong.").

15.     Subsequent to entry of the Interpleader Order and throughout the pendency of COFINA's Title III Case, all required interest payments, including with respect to the 2010 Bonds, were deposited into the appropriate accounts at BNYM.[8] As required by the Interpleader Order, during the pendency of the COFINA Title III Case, BNYM did not distribute the deposited interest payments to the COFINA bondholders. Pursuant to section 2.1(a) of the Plan, the Disputed Funds were distributed in accordance with the terms and provisions of the Plan.

**E.  The Claims**

16.     On February 14, 2019 and March 18, 2019, COFINA received notices from the IRS indicating that the direct subsidy payments for the August 1, 2017 interest payment dates for the 2010 Bonds were under examination. On May 24, 2019, COFINA received a second information document request from the IRS relating to the August 1, 2017 interest payment date for the 2010E Bonds. On March 25, 2019, BNYM received demand letters from the IRS relating to three direct subsidy payments made on December 4, 2018, relating, we believe, to the 2010D Bonds.

17.     On April 10, 2019, Claimant filed with the Clerk of the District Court a three-page document entitled "Request for Payment of Internal Revenue Taxes," which asserts administrative expense claims against COFINA, the Commonwealth, and PREPA. Prime Clerk LLC, the Debtors' claims agent, received such "claim" on May 21, 2019, and assigned the COFINA portion

---

[8]     *See BNY Mellon Notices to Holders of Puerto Rico Sales Tax Financing Corporation Sales Tax Revenue Bonds Regarding Account Balances available at* https://emma.msrb.org/IssuerHomePage/Issuer?id=87070933303979F57B5A096BAF9DFD12&type=G.

of the claim as claim number 168648.[9] Claim No. 168648 asserts an administrative expense claim against COFINA for the return of direct subsidy payments paid to COFINA after the Petition Date totaling $4,198,355.97 with respect to the 2010 Bonds ($2,520,731.08 in connection with the Series 2010D Bonds, and $1,677,624.89 in connection with the Series 2010E Bonds).

18.     Specifically, Claim No. 168648 seeks the return of direct subsidy payments made to COFINA on account of the quarterly interest payments made by COFINA to BNYM, as trustee of the 2010 Bonds, for August 2017, November 2017, February 2018, May 2018, August 2018, and November 2018. Neither Claim No. 168648 nor Claim No. 168885 provide an explanation behind the IRS's request for return of the postpetition direct subsidy payments made to COFINA with respect to such interest payments. However, based on conversations with the IRS and the IRS's subsequent requests for information, it appears that the IRS is asserting that it is entitled to return of the postpetition direct subsidy payments because due to the entry of the Interpleader Order in May 2017, the quarterly interest payments that were deposited in BNYM were held by BNYM and not actually paid to the holders of the 2010 Bonds.

## OBJECTION TO THE CLAIMS

19.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1). While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting

---

[9]     Subsequently, on May 24, 2019, Claimant electronically filed a proof of claim through the Debtors' case website, which was assigned claim number 168885. Claim No. 168885 asserts the exact same administrative expense claim against COFINA as Claim No. 168648 and includes the same "Request for Payment of Internal Revenue Taxes" form that was the basis for Claim No. 168648. In response to Question 9 on the proof of claim form, Claimant stated that "[t]his is an administrative expense claim. It was provided in person to Ms. Carmen Tacoronte, Case Manager—PROMESA at the USDC OFFICE on 4-10-2019. Prime Clerk advised to file electronically with general claim form as no specific form has been provided." Accordingly, for purposes of this Objection, COFINA is treating Claim No. 168885 as a duplicate of Claim No. 168648, and is seeking to disallow and expunge both claims in their entirety.

party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)). For the reasons stated herein, the Claims do not have legal merit and should be disallowed and expunged in their entirety by the Court.

20.     We believe the IRS asserts that it is owed a refund of certain postpetition direct subsidy payments made to COFINA with respect to the 2010 Bonds because the holders of such bonds were not actually paid interest after entry of the Interpleader Order. As explained below, throughout its Title III Case, COFINA complied with its obligations under the applicable bond documents because the required interest payments were deposited into the appropriate accounts at Banco Popular and BNYM at the appropriate time. That the holders of the 2010 Bonds did not receive such amounts until the occurrence of the Effective Date is irrelevant because (i) the applicable provisions of the Code do not require that bondholders actually receive interest payments in order for COFINA to be owed the direct subsidy payments on account of such interest payments; (ii) interest payments were suspended to bondholders pursuant to the Court's Interpleader Order; and (iii) on the Effective Date, the Plan superseded the Interpleader Order, terminating the suspension of the Disputed Funds in accordance with the terms of the Plan.

21.     Under the Code, IRS direct subsidy payments are owed to the issuer based on interest "payable," not interest "paid." §54AA(b); §6431(a)-(b). Sections 54AA(b) and 6431(a) and (b) each provide that the direct subsidy payments with respect to Direct Payment BABs and Direct Payment Recovery Zone Bonds are allowed with respect to each interest payment under

such bond that is payable. *Id*. In addition, these direct subsidy payments are made with respect to each "interest payment date," which under section 54AA(e) is defined as each date on which a holder is entitled to a payment of interest and under section 6431(d) is defined as each date on which interest is payable. §54AA(e); §6431(d). Thus, under the specific statutory language of sections 54AA and 6431, an issuer is entitled to the direct subsidy payments when the interest is "payable," and whether such interest is actually "paid" is irrelevant. *Id*.

22.     The Supreme Court has repeatedly held that the plain meaning of a statute must be given primary weight in determining Congressional intent. *See, e.g., Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, [the] analysis begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well."); *see also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) and *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 185 (1978). Congress could have easily written sections 54AA and 6431 of the Code to provide that the tax credits and direct subsidy payments are to be made only for interest that is "paid," but that is not what the statute requires. To interpret such sections otherwise would permit the IRS to end-run the clear terms of the statutory framework provided in the Code.

23.     Further, for federal income tax purposes, relevant case law makes clear that "payable" does not have the same meaning as "paid." For example, in *Cathey v. United States*, the court stated the following with respect to the question of paid versus payable when interpreting section 6334(a) of the Code:

> English dictionaries agree on the meaning of payable, defining it to mean inter alia '[t]hat may, can, or should be paid,' 'due,' or 'capable of being paid.' *Black's Law Dictionary* provides the following definition of payable:
>
> Capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable. A sum of money is said to

11

> be payable when a person is under an obligation to pay it. Payable
> may therefore signify an obligation to pay at a future time, but, when
> used without qualification, the term normally means that the debt is
> payable at once, as opposed to 'owing.'

35 F. Supp. 2d 518, 520 (S.D. Tex. 1998), *aff'd sub nom. Cathey v. U.S. I.R.S.*, 200 F.3d 814 (5th

Cir. 1999) (citing *Black's Law Dictionary* 1128 (6th ed. 1990)).

24.     The *Cathey* court went on to state:

> The IRS argues that had Congress intended to exempt worker's
> compensation benefits that have been paid, it would have worded
> the exemption to include such payments. The court agrees. For
> example, section 6334(a)(9) exempts '[a]ny amount payable to or
> received by an individual as wages or salary for personal services'
> that does not exceed particular statutory maxima (emphasis added).
> Congress could have explicitly exempted from levy worker's
> compensation benefits paid to or received by a delinquent taxpayer.
> It did not do so, however.
>
> The plain meaning of 'payable' indicates a future action or a present
> obligation, not a past payment.

35 F. Supp. 2d at 520-21.

25.     The bond resolution and applicable supplemental bond resolutions for the 2010

Bonds provided the mechanisms for determining the amount of interest payable and the payments

to bondholders, along with other relevant terms such as the maturity date for the 2010 Bonds. Prior

to the Effective Date of the Plan, the Pledged Sales Taxes were deposited in accounts at Banco

Popular and were subsequently transferred to various debt service accounts at BNYM, as trustee,

for distributions of principal and interest to the COFINA bondholders, including holders of the

2010 Bonds. *Disclosure Statement* at 38-39. The Interpleader Order affected only the final step in

this flow of funds—BNYM's distributions to the COFINA bondholders. After entry of the Interpleader Order, the Pledged Sales Taxes continued to be deposited at BNYM.[10]

26.     Accordingly, throughout the term of the 2010 Bonds, COFINA's revenues were applied as required under the applicable bond documents, including the transfer of revenues required to pay interest on the 2010 Bonds to BNYM, as bond trustee. It was only because of the Interpleader Order that such funds were required to be held by BNYM and not used to pay interest to the holders of the 2010 Bonds. In other words, COFINA continued to do everything it was required to do, committing its own revenues to pay interest on each interest payment date. The direct payment provisions of section 6431 of the Code are designed to subsidize the bond issuer's obligation to pay interest so as to reduce the bond issuer's interest expenses. Given that the full amount of such interest was deposited when it was payable, COFINA should be entitled to the related direct subsidy payments. If this Court were to deny COFINA the direct subsidy payments on the 2010 Bonds when COFINA fully complied with its obligations under the applicable bond documents, it would render section 6431 of the Code meaningless.

27.     Lastly, the IRS was given broad regulatory authority that it failed to exercise. Section 54AA(h) of the Code provides the Secretary of the Treasury with broad regulatory authority to "prescribe such regulations and other guidance as may be necessary or appropriate to carry out" section 54AA and section 6431. Although the IRS and Treasury Department have issued certain limited procedural guidance, this regulatory authority has not been used to provide that tax credits and direct subsidy payments on BABs or Recovery Zone Bonds are only to be paid with respect to interest that has actually been paid. In the absence of the exercise of this authority, there

---

[10]    *See BNY Mellon Notices to Holders of Puerto Rico Sales Tax Financing Corporation Sales Tax Revenue Bonds Regarding Account Balances available at* https://emma.msrb.org/IssuerHomePage/Issuer?id=87070933303979F57B5A096BAF9DFD12&type=G.

is no basis for the IRS to assert that these tax credits and direct subsidy payments are only required to be made to the extent that interest has actually been paid. The IRS had the authority to interpret the meaning of the statute and has failed to do so. Interpretations that are contrary to the language of the statute made by the IRS through audit activity or bankruptcy claims should not be respected.

28.     Accordingly, the Court should disallow and expunge the Claims in their entirety as the Code only requires that interest payments on the 2010 Bonds be "payable," which they were, throughout the relevant periods that the IRS is seeking a refund of the direct subsidy payments. To deny COFINA such direct subsidy payments would directly contravene the purpose of section 6431 of the Code by preventing COFINA from realizing its election to receive direct subsidy payments for interest payments that it made in accordance with the applicable bond documents for the 2010 Bonds.

## **RESERVATION OF RIGHTS**

29.     This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of COFINA to object to the Claims, or any other claim on any ground whatsoever. COFINA expressly reserves all further substantive or procedural objections. Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against COFINA; (b) a waiver of COFINA's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of COFINA's rights under PROMESA, the Bankruptcy Code or any other applicable law.

## **NOTICE**

30.     COFINA is providing notice of this Objection to (a) the IRS, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Order Further Amending Case Management*

*Procedures* [ECF No. 3804]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico. COFINA submits that, in light of the nature of the relief requested, no other or further notice need be given.

### **NO PRIOR REQUEST**

31.     No prior request for the relief sought in this Objection has been made to this or any other court.

*Remainder of page intentionally left blank*

WHEREFORE, COFINA respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just.


Dated: June 12, 2019
     San Juan, Puerto Rico


Respectfully submitted,

*/s/ Suzzanne Uhland*
John J. Rapisardi
Suzzanne Uhland
Peter Friedman
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel:  (787) 705-2171
Fax:  (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**<u>EXHIBIT A</u>**

**Proposed Order**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 1063, 1150**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA")<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>**This document relates to the COFINA Title III case only and will be filed in the main case and COFINA Title III case.** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**ORDER GRANTING OBJECTION
OF PUERTO RICO SALES TAX FINANCING CORPORATION
TO PROOFS OF CLAIM OF THE UNITED STATES DEPARTMENT OF THE
TREASURY/INTERNAL REVENUE SERVICE (CLAIM NOS. 168648 AND 168885)**

Upon the *Objection of Puerto Rico Sales Tax Financing Corporation to Proof of Claim of the United States Department of the Treasury/Internal Revenue Service (Claim Nos. 168648 and 168885)* ("Objection")[2] filed on June 12, 2019, by the Puerto Rico Fiscal Agency and Financial Advisory Authority, on its own behalf and as the sole entity authorized to act on behalf of all of Puerto Rico's governmental entities, including the Puerto Rico Sales Tax Financing Corporation ("COFINA"), by the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, for entry of an order disallowing in their entirety Proofs of Claim Nos. 168648 and 168885 (the "Claims"), filed against COFINA by the United States Department of Treasury/Internal Revenue Service, as more fully set forth in the Objection; and the Court having jurisdiction to consider the Objection and to grant the relief requested therein pursuant to PROMESA section 306(a); and venue being proper pursuant to PROMESA section 307(a); and due and proper notice of the Objection having been provided to those parties identified therein, and no other or further notice being required; and the Court having determined that the relief sought in the Objection is in the best interest of COFINA, its creditors, and all the parties in interest; and the Court having determined that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Objection is GRANTED as set forth herein; and it is further

ORDERED that the Claims are hereby disallowed in their entirety; and it is further

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Objection.

ORDERED that Prime Clerk, LLC, is authorized and directed to delete the Claims from the official claims register in the COFINA Title III Case; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____


_____
Honorable Judge Laura Taylor Swain
United States District Judge

3