# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| as representative of | ) | Case No. 3:17-bk-03283 (LTS) |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | X | |
| In re: | ) | |
| | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | Title III |
| | ) | |
| as representative of | ) | Case No. 3:17-cv-01685 (LTS) |
| | ) | Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | X | |

## REPLY IN SUPPORT OF OBJECTION OF CERTAIN ERS BONDHOLDERS TO THE MAGISTRATE JUDGE'S MAY 6 AND MAY 15, 2019 ORDERS ON MOTIONS TO COMPEL AND OBJECTION TO MAY 30, 2019 ORDER

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.   The Court Should Overrule Respondents' Deliberative Process Privilege
     Claims ................................................................................................................... 3

     A.   The Bondholders' Need For Responsive Documents Outweighs
          Any Harm From Disclosure .................................................................... 3

     B.   Respondents Have Not Justified Their Withholding Of Factual
          Material .................................................................................................... 6

     C.   Many Of The Withheld Materials Are Post-Decisional ........................ 7

     D.   Respondents Fail To Properly Invoke The Deliberative
          Process Privilege .................................................................................... 8

     E.   Respondents Waived Privilege For Materials Shared With
          Each Other .............................................................................................. 9

II.  The Court Should Overrule Respondents' Reliance On the Executive
     Privilege For AAFAF Documents ...................................................................... 10

III. The Court Should Overrule Respondents' Reliance On Attorney-Client
     Privilege For Documents Shared With Third Parties and Between ERS
     And The Other Respondents .............................................................................. 11

     A.   Respondents Have Not Met Their Burden In Claiming Privilege
          Over Documents Shared With Non-Lawyer Third Parties ................... 11

     B.   There Can Be No Common Interest Between ERS And
          Other Respondents ............................................................................... 14

IV.  The Court Should Overrule Respondents' Reliance On The Work
     Product Doctrine ............................................................................................... 15

CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aurelius Inv., LLC v. Puerto Rico*,
   915 F.3d 838 (1st Cir. 2019).................................................................................10

*Bhatia Gautier v. Gobernador*,
   199 D.P.R. 59 (P.R. 2017)...............................................................................3, 9, 11

*Cal. State Foster Parent Ass'n v. Wagner*,
   No. C 07-05086 WHA, 2008 WL 2872775 (N.D. Cal. July 23, 2008) ....................................6

*Cavallaro v. United States*,
   284 F.3d 236 (1st Cir. 2002).............................................................................12, 13

*Columbia Data Prods., Inc. v. Autonomy, Corp.*,
   No. 11-12077, 2012 WL 6212898 (D. Mass. Dec. 12, 2012)......................................11, 12, 13

*Crowley v. L.L. Bean, Inc.*,
   No. CIV. 00–183–PC, 2001 WL 103541 (D. Me. Feb. 1, 2001)..........................................14

*CSX Transp., Inc. v. ABC&D Recycling, Inc.*,
   No. 11-30268-FDS, 2016 WL 6561551 (D. Mass. Nov. 3, 2016)........................................15

*Davis v. City of New York*,
   No. 10 Civ. 699(SAS)(HBP), 2012 WL 612794 (S.D.N.Y. Feb. 27, 2012)...............................6

*Fairholme Funds, Inc. v. United States*,
   128 Fed. Cl. 410 (2016) ...................................................................................6

*FDIC v. Ogden Corp.*,
   202 F.3d 454 (1st Cir. 2000)..............................................................................14

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
   778 F.3d 142 (D.C. Cir. 2015) ............................................................................15

*In re Bieter Co.*,
   16 F.3d 929 (8th Cir. 1994) ...............................................................................13

*In re MTBE Prods. Liab. Litig.*,
   643 F. Supp. 2d 439 (S.D.N.Y. 2009)........................................................................9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   254 F.R.D. 35 (D. Mass. 2008)...............................................................................5

*In re Richmond Unified Sch. Dist.*,
   133 B.R. 221 (Bankr. N.D. Cal. 1991) ...................................................................9, 10

*In re Subpoena Duces Tecum Served on the Office of Comptroller of Currency*,
   145 F.3d 1422 (D.C. Cir. 1998)..............................................................................5

*Landry v. FDIC*,
   204 F.3d 1125 (D.C. Cir. 2000).............................................................................9

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Marilley v. McCamman*,
  No. C 11-02418, 2012 WL 4120633 (N.D. Cal. Sept. 19, 2012) ............................................6

*Stalcup v. CIA*,
  768 F.3d 65 (1st Cir. 2014)....................................................................................................6, 7

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
  60 F.3d 867 (1st Cir. 1995)........................................................................................................7

*United States v. Textron Inc.*,
  577 F.3d 21 (1st Cir. 2009)......................................................................................................15

*W Holding Co. v. Chartis Ins. Co. of P.R.*,
  300 F.R.D. 48 (D.P.R. 2014) ...................................................................................................15

## STATUTES

28 U.S.C. § 636.................................................................................................................................1

48 U.S.C. § 2121...........................................................................................................................10

19 L.P.R. § 2212..............................................................................................................................5

## OTHER AUTHORITIES

Fed. R. Civ. P. 26..........................................................................................................................15

Fed. R. Civ. P. 72............................................................................................................................1

To the Chambers of the Honorable Judge Laura Taylor Swain:

Pursuant to the Court's scheduling order dated June 3, 2019, Docket No. 541 in Case No. 17-bk-03566, the Bondholders submit this reply in support of the *Obj. of Certain ERS Bondholders to the Magistrate Judge's May 6 and May 15, 2019 Orders on Mots. to Compel*, Docket No. 7035 in Case No. 17-bk-03283 and Docket No. 518 in Case No. 17-bk-03566 (the "Objection").[1] For the avoidance of doubt, with this filing, the Bondholders also hereby object, pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), to the May 30 *Order on Mot. to Compel*, Docket No. 7166 in Case No. 17-bk-03283 and Docket No. 537 in Case No. 17-bk-03566 (the "May 30 Order"), which concerns the same topics and reaches the same result as did the May 15 Order. In support thereof, the Bondholders state as follows:

## **INTRODUCTION**

1. The end result of Magistrate Judge Dein's three rulings is that the Bondholders have been left with effectively no discovery concerning the genesis of and reasons for the transition of the pension system from a system overseen by ERS for more than 60 years to the current PayGo system. The purpose of that change had little, if anything, to do with improving the operations of the pension system, enhancing benefits, or putting the pension system on a sounder financial footing. Instead, the effect was to divert the flow of employer contributions away from ERS to ensure that ERS bondholders would never be paid. In the Stay Relief Motion, a central issue is whether the new PayGo fees are the equivalent of the employer contributions such that the Bondholders liens attach to them. As the Court recently explained, a "central question to be considered at the Stay Relief Hearing" is "whether bondholders have any security interest in [the] employer payments under the PayGo system." *Mem. Order Granting Resp'ts' Urgent Mot. in Lim.*,

---

[1] Defined terms not defined herein have the same meaning as they had in the Objection.

at 5, Docket No. 7222 in Case No. 17-bk-03283 and Docket No. 544 in Case No. 17-bk-03566. It is difficult to conceive of evidence that would be more relevant or material to this question than information about the internal discussions within the Puerto Rico government surrounding the decision to convert ERS to a PayGo system. Indeed, that decision involved a purported transfer of property from one bankrupt entity to another during pending Title III proceedings. Were this to happen in any pair of bankruptcy cases, it is inconceivable that the bankrupt entities would be permitted to keep key evidence about the reasons for the transfer a complete secret. Obviously, the bankruptcy judge overseeing those proceedings would use every effort to uncover those reasons, and discourage any attempt to impede that inquiry.

2.      Meanwhile, Respondents' sweeping privilege claims have not stopped them from making broad, unsupported assertions about why it was imposed, including in their Response to the Bondholders' Objection, where they contend that PayGo was imposed as a response "to ERS's 'imminent insolvency.'" *Government Parties Resp. to Movants' Obj. to Magistrate Judge's May 6, 2019 and May 15, 2019 Orders on Mots. to Compel*, ¶ 7, Docket No. 7293 in Case No. 17-bk-03283 and Docket No. 547 in Case No. 17-bk-03566, (the "Response"). Putting to one side the propriety of allowing Respondents to invoke privilege as a shield when they use these assertions as a sword, it is manifestly unfair to prevent the Bondholders from testing those assertions. The Bondholders are entitled to discovery concerning the reasons for, and events surrounding, the adoption of the PayGo system that Respondents have made central to their defense of the Stay Relief Motion.

3.      In any event, the Bondholders' need for these documents is matched by the weakness of Respondents' privilege claims. Respondents have simply failed to justify the

withholding of the hundreds of documents at issue, and Judge Dein's orders sustaining their

privilege claims are clearly erroneous and contrary to law.

## ARGUMENT

4.      After the Bondholders filed their Objection, but before Respondents filed their

Response, Judge Dein issued the May 30 Order further addressing the subject matter of the

Objection.[2] The May 30 Order does not correct the problems with the May 6 and May 15 Orders,

and so it too should be reversed as clearly erroneous and contrary to law. Because the three orders

concern identical issues, the Bondholders address all three orders together below.

## I.      The Court Should Overrule Respondents' Deliberative Process Privilege Claims.

5.      The Response fails to justify Respondents' withholding of hundreds of documents

under Puerto Rico's exceedingly narrow deliberative process privilege. In Puerto Rico, claims of

privilege by the government "must be scrutinized with particular zealousness." *Bhatia Gautier v.

Gobernador*, 199 D.P.R. 59, 80 (P.R. 2017) ("*Bhatia Gautier I*"). "[T]he *government . . .* has to

prove *in a precise and unequivocal manner* the applicability of the privilege." *Id.* (emphasis

added). Respondents have not met that burden here.

### A.      The Bondholders' Need For Responsive Documents Outweighs Any Harm
From Disclosure.

6.      The deliberative process privilege is a qualified privilege only, and the Court must

"make an analysis of balance of interests," weighing the government's interest in confidentiality

against the many interests favoring disclosure—such as "the interests of the private litigant," "the

need for accurate judicial fact finding," and "the role of the government in the litigation." *Id.* at 88.

---

[2] This was in accordance with the Court's May 22 *Order Scheduling Briefing on Obj. of Certain ERS
Bondholders to the Magistrate Judge's May 6 and May 15, 2019 Orders on Mots. to Compel*, Docket No. 7062 in
Case No. 17-bk-03283 and Docket No. 524 in Case No. 17-bk-03566, which postponed Respondents' deadline to
respond to the Objection until five days after the issuance of the May 30 Order.

As the Bondholders showed in the Objection, a proper application of that balancing test requires that the withheld documents be produced. Objection ¶¶ 22–28.

7.      The Response only confirms the importance of these documents. Respondents assert that Joint Resolution 188 and Act 106 were enacted in "responding to ERS's 'imminent insolvency.'" Response ¶ 7. This, though, makes little sense, since the transition to PayGo did nothing to reduce the amounts owed to ERS pensioners, to save administrative costs, or to otherwise address ERS's alleged insolvency. Instead, it did little more than divert employer contributions pledged to the Bondholders away from the fiscal agent and to the Commonwealth Treasury. If the Respondents are permitted to make broad claims about the purpose and intent of PayGo, the Bondholders must be allowed discovery about those very subjects as well.

8.      Respondents have no answer to this. They argue that the only questions before the Court are the value of the Bondholders' collateral relative to their claims, whether the collateral is diminishing in value, and whether the Bondholders' interests are being adequately protected. Response ¶ 45. But the Court itself has rejected this artificially narrow reading of the law; it recently wrote that a "central question to be considered at the Stay Relief Hearing" is "whether bondholders have any security interest in [the] employer payments under the PayGo system." *Mem. Order Granting Resp'ts' Urgent Mot. in Lim.*, at 5, Docket No. 7222 in Case No. 17-bk-03283 and Docket No. 544 in Case No. 17-bk-03566. That issue is "central" because *Respondents* have made it central, by asserting that the transition to the PayGo system somehow eliminated the Bondholders' security interests in the amounts that employers pay to fund ERS pension benefits. If a central issue at the final hearing on the Stay Relief Motion will be "whether bondholders have any security interest in [the] employer payments under the PayGo system," *id.*, then it follows that

4

the details of the decision to structure the PayGo system in a fashion designed to defeat those very security interests are equally central.

9.      Respondents' attempt to turn the question into a matter of statutory construction misses the point as well. The issue is not legislative intent but factual proof. Under Puerto Rico law, the Court must determine whether the PayGo fees were, *e.g.*, "acquired upon the sale, lease, license, exchange, or other disposition of collateral." 19 L.P.R. § 2212(64)(A). That question does not turn solely on the construction of Joint Resolution 188 and Act 106. Instead, the issue involves whether the sources, uses, amounts, and purpose of the PayGo fees are such that they are successors to the employer contributions. Evidence that the Commonwealth viewed PayGo as a substitute for employer contributions (albeit one that it hoped would be free of the Bondholders' liens), is directly relevant to that question. Similarly, evidence that the purpose behind PayGo was to circumvent the Bondholders' liens, while retaining the principal features of Puerto Rico's government pension system would be probative of the fact that PayGo fees are simply a thinly-disguised substitute for the employer contributions. This goes directly to what the Court called the "central question to be considered at the Stay Relief Hearing," and the Bondholders have no other evidence concerning it.

10.      In similar circumstances, courts have consistently overruled the deliberative process privilege. *See, e.g.*, *In re Subpoena Duces Tecum Served on the Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) (holding that the "deliberative process privilege is not appropriately asserted . . . when a plaintiff's cause of action turns on the government's intent"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 41–42 (D. Mass. 2008) (overruling the deliberative process privilege because the "[g]overnment knowledge could conceivably be relevant to two elements" of the claim at issue and the defendant "ha[d] the right

5

during discovery to see documents reflecting the government's knowledge" so that it could "mount [its] defense"); *Fairholme Funds, Inc. v. United States*, 128 Fed. Cl. 410 (2016), *mandamus granted in part and denied in part*, *In re United States*, 678 F. App'x 981 (Fed. Cir. 2017) (requiring the government to disclose privileged material because of its centrality to the litigation and the government's role as a defendant in the case); *Davis v. City of New York*, No. 10 Civ. 699(SAS)(HBP), 2012 WL 612794, at *8 (S.D.N.Y. Feb. 27, 2012) ("The privilege is routinely found to be inapplicable where the agency deliberations are central to the case."). Indeed, courts have repeatedly ordered disclosure of materials *connected with the legislative process* in such cases. *See, e.g.*, *Marilley v. McCamman*, No. C 11-02418, 2012 WL 4120633, at *1–3 (N.D. Cal. Sept. 19, 2012) (ordering disclosure of "draft enrolled bill reports, draft bill analyses, a final bill analysis, and a draft proposed amendment" prepared by an executive agency); *Cal. State Foster Parent Ass'n v. Wagner*, No. C 07-05086 WHA, 2008 WL 2872775, at *1, 4–6 (N.D. Cal. July 23, 2008) (ordering disclosure of "six legislative analyses" prepared by the Department of Social Services). The Court should do the same here.

### B.    Respondents Have Not Justified Their Withholding Of Factual Material.

11.    The May 30 Order reaffirms the May 15 Order's ruling that Respondents had adequately supported their assertion of deliberative process privilege over factual information. Judge Dein reasoned that Respondents' affidavits showed that the factual information was "part and parcel of the policy alternatives being discussed," and that the facts were therefore "tied to the deliberative communications between officials." May 30 Order at 11. In doing so, Judge Dein applied the wrong standard. The question is not whether the facts were related to the deliberations, but whether revealing the facts would *reveal* the deliberations. *See Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014) ("The question is . . . the degree to which the facts are *indissolubly* linked to the broader analysis.") (emphasis added). In *Stalcup*, for example, the First Circuit reasoned that

exposing the factual information would "expose[] in detail the thought process of the CIA analysts involved" and "the agency's internal deliberations." *Id.* at 71 (quoting *Lahr v. NTSB*, 569 F.3d 964, 983 (9th Cir. 2009)). Here, in contrast, Respondents made no such showing. While the factual material at issue may have been considered in connection with deliberations, there is simply no explanation as to how revealing it, or even part of it, would reveal the deliberations themselves. That is especially so with respect to the pre-measures projections, which by definition reflect the status quo, and thus could not possibly reveal what changes were being considered.

12.     Respondents' retort that the law "draws no distinction between pre- and post-measure information" misses the point. Response ¶ 52. The point is not that pre-measures information is categorically exempt from the deliberative process privilege, but rather that such information, under the circumstances of this dispute, could not possibly reveal protected deliberations. Respondents have no answer to this argument. They rely on the contention that the withheld factual materials "were used by decision makers" in deliberations, *id.* ¶ 53, but that is simply not the standard. The Court should therefore reverse Judge Dein and order Respondents to produce segregable factual information.

### C.    Many Of The Withheld Materials Are Post-Decisional.

13.     The deliberative process privilege does not shield "post-decisional documents that "explain[] or justify[] a decision already made." *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995). Yet Judge Dein wrongly treated Joint Resolution 188 and Act 106 as separate "decisions" for purposes of the privilege even though they did no more than execute a decision that had already been made in the March 13, 2017 fiscal plan, *see, e.g.*, Joint Resolution 188 at 4 (stating that the provisions are "approved pursuant to the actions *required under . . . the Fiscal Plan approved and certified by the Financial Oversight Board*") (emphasis added), and therefore allowed Respondents to withhold many post-decisional documents.

14.     Respondents contend that the fiscal plan was not a complete decision, and that Joint Resolution 188 and Act 106 made changes that were not found in the fiscal plan. Response ¶ 23. But even if there were still some decisions to be made about implementation in connection with Joint Resolution 188 and Act 106, Respondents have not shown that the documents they withheld relate to those decisions rather than to the broader adoption of PayGo that the Board had already imposed. Nor have Respondents shown that there is any substantial government interest in the confidentiality of such implementation decisions, as opposed to in major policy decisions. Thus, the fact that post-March 13, 2017 documents related solely to implementation details should have at least affected the balancing analysis. Judge Dein clearly erred by ignoring that issue.

15.     Respondents also contend that because Puerto Rico retains its own sovereignty independent of the Oversight Board, the Board cannot have made the final decision on the adoption of PayGo. Response ¶ 21. At the outset, this position is wholly inconsistent with Respondents' separate contention that the Board is a part of the Puerto Rico government, entitled to participate in confidential deliberations with Commonwealth agencies. *Id.* ¶ 32. But it is also inconsistent with the structure of PROMESA. *See* Objection ¶¶ 33–39. Once the Oversight Board mandated the adoption of PayGo, the time for deliberation was over—the Commonwealth had no choice but to comply. *Id.* As a result, documents after March 13, 2017 cannot possibly be deliberative documents. Instead, they are merely implementing the decision already made by the Board.

**D.      Respondents Fail To Properly Invoke The Deliberative Process Privilege.**

16.     Respondents effectively concede that they failed to properly invoke deliberative process privilege under Puerto Rico law, because they did not provide a contemporaneous affidavit from someone empowered to invoke the privilege, only after-the-fact affidavits that were clearly drafted by attorneys, not government officials. This is not a "quibble[]" or "*de minimus*" problem, as Respondents would have it. Response ¶¶ 26–29. Deliberative process privilege claims must

stem from "actual personal consideration" by a government official of the need to protect deliberations, not just a government's lawyers' belated attempt to block evidence. *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *see also, e.g.*, *Bhatia Gautier I*, 199 D.P.R. at 87 ("[T]he head of the agency that controls the information must claim [the privilege] formally, after pondering it."); *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y. 2009) ("An attorney is an advocate for the agency and has every incentive to withhold documents from an adversary."). There is still no evidence that happened here, and much evidence that it did not. The Court should reverse Judge Dein's ruling that Respondents adequately invoked the privilege.

### E.    Respondents Waived Privilege For Materials Shared With Each Other.

17.    Respondents' contention that they are entitled to privilege in documents shared with each other cannot overcome the two very significant problems identified by the Bondholders' Objection: that ERS is an independent trust with interests adverse to the rest of the Commonwealth, and that the Oversight Board is a federal instrumentality. Objection ¶¶ 43–46.

18.    *First*, as to the ERS's independence and adversity, Respondents concede that ERS, AAFAF, the Commonwealth Government, and the Board "have differing interests in certain aspects of the fiscal plans, budgets, or other policy matters." Response ¶ 36. But they nevertheless assert that ERS had a common interest with AAFAF in restructuring the pension systems that must overcome all of the other adversity, including the "more than $411 million in past-due employer contributions" that the Commonwealth owed ERS at the start of Title III proceedings. *Id.* ¶ 38.

19.    In doing so, Respondents rely on a single case—*In re Richmond Unified Sch. Dist.*, 133 B.R. 221 (Bankr. N.D. Cal. 1991)—that did not even concern the common interest privilege at all. All that *Richmond Unified School District* holds is that a school district that had since been taken over by the State could dismiss its voluntary Chapter 9 case, for the simple reason that "Chapter 9 does not limit or impair the power of the states to control municipalities, and section

9

109(c)(2) limits the availability of Chapter 9 to debtors authorized by state law to commence Chapter 9 proceedings." *Id.* at 226. The court explained that for that reason, "the State's alleged conflict of interest is not a valid basis for denial of the debtor's motion to dismiss." *Id.* Nothing in *Richmond Unified School District* suggests that there cannot be a conflict of interest even in general terms between two governmental entities. *See id.* And because the case does not involve privilege, it does not say anything at all about common interest privilege specifically. *See id.* Respondents therefore provide no basis for overcoming the clear adversity between ERS, which was owed $411 million, and the Commonwealth, which owed $411 million, on the subject of pension reform—the precise source of that enormous, unpaid debt.

20.     *Second*, as to the Oversight Board, Respondents rely on the statement in PROMESA that the Oversight Board is an "entity within the territorial government" of Puerto Rico. 48 U.S.C. § 2121(c)(1); Response ¶ 32. In doing so, they inexplicably ignore the First Circuit's holding that in fact, whatever PROMESA may say, the Board is a federal entity. *See Aurelius Inv., LLC v. Puerto Rico*, 915 F.3d 838, 856–59 (1st Cir. 2019). Respondents cite no precedent allowing for a deliberative process privilege between agencies of different governments, and therefore provide no support for Judge Dein's ruling that documents Respondents shared with the Board can remain protected by the privilege. The Court should reverse.

## II.    The Court Should Overrule Respondents' Reliance On the Executive Privilege For AAFAF Documents.

21.     The May 30 Order reaffirms the May 15 Order's ruling that AAFAF is entitled to invoke executive privilege. May 30 Order at 4–5. In doing so, Judge Dein explains that "AAFAF is mandated by statute to work with the Governor, and by extension the Governor's office,

throughout the Commonwealth's restructuring."[3] *Id.* at 5. But Judge Dein still does not explain how a privilege that protects "communications between the First Executive and his respective subordinates, counselors or assistants," *Bhatia Gautier I*, 199 D.P.R. at 89, can somehow protect communications *within* an agency, rather than communications *between* the agency and the "First Executive"—that is, the Governor—himself.

22.     Respondents have no adequate answer to this. Although they say that AAFAF may "participate in executive privileged communications," Response ¶ 56, they do not explain how a communication may be an "executive privileged communication[]" under Puerto Rico law if the Governor himself is not a party to it. And Respondents cannot deny that the Governor himself is not a party to the vast majority of documents that Respondents have withheld based on the executive privilege.[4] Judge Dein's upholding of executive privilege over such documents was clear error and contrary to law, and the Court should reverse.

III.   **The Court Should Overrule Respondents' Reliance On Attorney-Client Privilege For Documents Shared With Third Parties and Between ERS And The Other Respondents.**

A.     **Respondents Have Not Met Their Burden In Claiming Privilege Over Documents Shared With Non-Lawyer Third Parties.**

23.     The May 30 Order reaffirmed the May 15 Order's ruling that Respondents adequately invoked the attorney-client privilege for the many documents that Respondents shared with third-party, non-lawyer advisors. May 30 Order at 6–9. Judge Dein held that the three elements from *Columbia Data Prods., Inc. v. Autonomy, Corp.*, No. 11-12077, 2012 WL 6212898,

---

[3] Respondents assert that this reasoning "puts the lie to [the Bondholders'] contention that Judge Dein somehow failed to explain her reasoning," Response ¶ 57, ignoring that the May 30 Order from which they quote was, of course, issued more than a week after the Bondholders filed their Objection.

[4] *See ERS, the Commonwealth, and AAFAF's Privilege Log of Documents Withheld in Category 3*, Docket No. 6886-1 in Case No. 17-bk-03283 and Docket No. 501-1 in Case No. 17-bk-03556, Entry Nos. 12, 74, 77, 78, 82, 83, 84, 100, 104, 106, 109, 110, 116, 117, 118, and 123.

at *15 (D. Mass. Dec. 12, 2012) are met as to these documents because the "third parties [were] necessary to legal discussions regarding Puerto Rico's restructuring," that "these third parties serve a critical role in translating complex information necessary to effectuate the restructuring," and that "the relevant communications served a legal purpose." May 30 Order at 7–8.

24.     As to the first two elements, Judge Dein provided no explanation for her holdings that the elements were met. In fact, Respondents—who bear the burden of proof on this issue, *see Columbia Data Prods.*, 2012 WL 6212898, at *11—offered no evidence explaining how or why the third parties were necessary to the particular purported privileged communications at issue, nor any evidence that their role in those communications was to "translat[e] complex information" between lawyer and client. To the contrary, Respondents' privilege logs, both categorical and document-by-document, said not a word about the role that the third parties played in the communications. *See ERS, the Commonwealth, and AAFAF's Amended Categorical Privilege Log*, Docket No. 6253-2 in Case No. 17-bk-03283 and Docket No. 443-2 in Case No. 17-bk-03566; *ERS, the Commonwealth, and AAFAF's Privilege Log*, Docket No. 6320-2 in Case No. 03283 and Docket No. 446-2 in Case No. 17-bk-03566; *ERS, the Commonwealth, and AAFAF's Privilege Log of Documents Withheld in Category 3*, Docket No. 6886-1 in Case No. 17-bk-03283 and Docket No. 501-1 in Case No. 17-bk-03566. There is therefore no basis for Judge Dein's ruling that the first two elements were met, and Judge Dein clearly erred in ruling otherwise.

25.     As to the third element, Judge Dein applied the wrong legal standard. She asked whether the "relevant communications served a legal purpose." May 30 Order at 8. That is not the test. The question is not whether the *communications* served a legal purpose, but whether the *advisor's participation* in the communications served a legal purpose. *Cavallaro v. United States*, 284 F.3d 236, 247–48 (1st Cir. 2002) (rejecting privilege claim because "the record does not show

that any party hired Ernst & Young to assist Hale and Dorr in providing legal advice"). Judge Dein could not answer that question, because—again—Respondents' privilege logs said nothing about the advisors' roles in the communications. And the fact that the communications served a legal purpose shows only that, in the absence of the third-party's presence, the communications might have been privileged—it does not overcome the fact that the third party's presence would ordinarily waive that privilege, unless the *Kovel* exception applies. *See id.* at 246–47.

26.     The Response only underscores Respondents' failure to show that the advisors' roles in the purported privileged communications qualify for the *Kovel* exception. Rather than address what the third parties in fact were doing in connection with the communications, Respondents offer a *hypothetical*—"hypothetically," they say, a third party *could have* assisted a lawyer in providing legal advice connected to the restructuring. Response ¶ 65. That is no doubt true—*Cavallaro* itself recognizes that in some instances, third party advisors will not destroy privilege. But the question is not whether it is "hypothetically" possible, but whether it happened here—did *these* advisors have the necessary role in the communications at issue to qualify for the *Kovel* exception as discussed in *Cavallaro*, *Columbia Data Products*, and countless other cases? And on that actually relevant question, Respondents remain entirely silent. Never—not in their Response, their briefing and argument before Judge Dein, or their multiple iterations of privilege logs—have they said one word about what role their advisors actually played in the challenged communications. Because Respondents have so clearly failed to meet their burden under *Kovel*, the Court should reverse Judge Dein's ruling and hold that Respondents have not met their burden to show that documents shared with third party, non-lawyer advisors remain privileged.[5]

---

[5] Perhaps aware of this problem, Respondents also offer a new argument—that they need not comply with the *Kovel* doctrine because the third-party advisors are akin to their employees. Response ¶ 66. Respondents did not make this argument before Judge Dein, but it fares no better than their reliance on *Kovel*. One of the two cases they cite for this proposition involved a third party consultant who acted as "the sole representative of [the client] at a number of" meetings with the attorney. *In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994). There is no evidence that

**B.**     **There Can Be No Common Interest Between ERS And Other Respondents.**

27.     In defending Judge Dein's ruling that ERS shared a common interest in pension

reform with the other Respondents, even though the Commonwealth owed it $411 million in

pension-related debt, Respondents follow Judge Dein in resorting to a looser standard than prevails

under governing First Circuit law. *See* Response ¶ 69. It is beside the point whether, as

Respondents contend, in some other circuits common interest privilege can apply between parties

with substantially diverging interests. *Id.* (citing *In re Mortg. & Realty Tr.*, 212 B.R. 649, 653

(Bankr. C.D. Cal. 1997); *In re Tribune Co.*, No. 08-13141 (KJC), 2011 WL 386827, at *4 (Bankr.

D. Del. Feb. 3, 2011) *Nat'l Union Fire Ins. Co. v. Porter Hayden Co.*, No. CIV. CCB-03-3408,

2012 WL 4378160, at *2 (D. Md. Sept. 24, 2012)). In the First Circuit, common interest requires

"an identical (or nearly identical) legal interest as opposed to a merely similar interest." *FDIC v.

Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000). Judge Dein therefore erred in applying out-of-

circuit law, and Respondents make the same mistake by citing those same cases. In the First

Circuit, a higher showing is required. *Id.*

28.     It is no answer to say, as Respondents do, that the only interest that must be "nearly

identical" is the interest implicated by the privileged communication. Response ¶ 70. Here, the

supposedly privileged communications are all about pension reform, including the adoption of

laws that purportedly extinguished the $411 million in past-due employer contributions that the

Commonwealth owed ERS. That is *precisely* the subject on which ERS's and the

Commonwealth's interests diverge. For that reason, the Court should reverse Judge Dein's ruling

---

this was the case with the third party consultants here—as in fact there are no communications on Respondents' log
in which Respondents' employees were *not* involved. The second case they cite denied the withholding party's
privilege claims, finding that the third party's presence had waived the privilege. *See Crowley v. L.L. Bean, Inc.*, No.
CIV. 00–183–PC, 2001 WL 103541, at *3 (D. Me. Feb. 1, 2001).

and hold that there can be no common interest privilege between ERS and the other Respondents on the subject of pension reform.

## IV.   The Court Should Overrule Respondents' Reliance On The Work Product Doctrine.

29.   Finally, the Court should overrule Respondents' invocation of the work product doctrine. Respondents primarily argue that there is no need to reach this issue, but that is true only if the Court and (if necessary) the First Circuit ultimately affirm all of Judge Dein's other privilege rulings. Respondents' reluctance to address the merits no doubt stems from the weakness of their work product claims. Judge Dein recognized that "on attorney work product, I do agree that it appears to be very broadly used in this privilege log. It is really narrow in the First Circuit." Tr. of May 2 Hr'g at 114:2–4. And Respondents have been unable to show, as First Circuit precedent requires, that the materials for which they claim work product protection were "prepared for *use* in litigation, whether the litigation was underway or merely anticipated." *United States v. Textron Inc.*, 577 F.3d 21, 29 (1st Cir. 2009) (en banc); *see also, e.g.*, *CSX Transp., Inc. v. ABC&D Recycling, Inc.*, No. 11-30268-FDS, 2016 WL 6561551, at *3 (D. Mass. Nov. 3, 2016); *W Holding Co. v. Chartis Ins. Co. of P.R.*, 300 F.R.D. 48, 51 (D.P.R. 2014). Respondents simply have not made this showing, so they are not entitled to work-product protection. And for the reasons given above, *supra* Part I.A., the Bondholders' substantial need for these documents would, in any event, overcome the qualified protection that the work product doctrine offers. Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 157–58 (D.C. Cir. 2015) (ordering production of work product where it "provide[d] unique information about" a party's intent in entering a challenged settlement that could not be otherwise obtained).

## CONCLUSION

For the forgoing reasons, the Court should reverse Judge Dein's May 6, May 15, and May 30 Orders, in which she denied the Bondholders' motions to compel.

In San Juan, Puerto Rico, today June 13, 2019.

By:

| | |
|---|---|
| */s/ Alfredo Fernández-Martínez* | */s/ Geoffrey S. Stewart* |

<table>
<tr><td>

Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

</td><td>

Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

</td></tr>
</table>

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ Alicia I. Lavergne-Ramírez

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ Jason N. Zakia

John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com
csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*