# EXHIBIT A

**Dimon, Anna**

---

**Subject:**          FW: In re Fin. Oversight & Mgmt. Bd. as representative of Puerto Rico, 17-3283
**Attachments:**   Pension Related Discovery Requests.pdf


**From:** Weiss, Eric
**Sent:** Tuesday, May 22, 2018 6:13 PM
**To:** Friedman, Peter <pfriedman@omm.com>; McKeen, Elizabeth L. <emckeen@omm.com>;
'gmashberg@proskauer.com' <gmashberg@proskauer.com>; 'tmungovan@proskauer.com'
<tmungovan@proskauer.com>
**Cc:** Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; 'Halstead, Ellen'
<Ellen.Halstead@cwt.com>; Bookman, Adam <Adam.Bookman@weil.com>; 'robert.berezin@weil.com'
<robert.berezin@weil.com>
**Subject:** In re Fin. Oversight & Mgmt. Bd. as representative of Puerto Rico, 17-3283

All,

We write on behalf of Ambac, National, and Assured.  We would like to better understand the Commonwealth's current
and projected pension liabilities.  To that end, I've attached a list of document requests covering the ERS, JRS, and TRS
pension schemes.  We would like to set up a time to meet and confer about these requests in the hope that we can
avoid needless Rule 2004 motion practice.  Are you free to discuss the requests later this week?

---

Eric Weiss | **Milbank**
28 Liberty Street | New York, NY 10005-1413
T: +1 212.530.5420 | F: +1 212.822.5420
EWeiss@milbank.com | www.milbank.com

## DOCUMENT REQUESTS

1.      All documents, communications, studies, and/or analyses concerning the amount and/or valuation of the Pension Systems' unfunded accrued actuarial pension liability.[1]

2.      All documents, communications, studies, and/or analyses concerning the actuarial assumptions used to value the Pension Systems' unfunded accrued actuarial pension liability.

3.      All documents, communications, studies, and/or analyses concerning any changes to the actuarial assumptions used to value the Pension Systems' unfunded accrued actuarial pension liability.

4.      All documents, communications, studies, and/or analyses concerning the methodology applied by the Pension Systems to determine their unfunded accrued actuarial pension liability, and the reasons for selection of that methodology.

5.      All documents, studies, and/or data used to determine or calculate pension benefit obligations for all Pension System members or their beneficiaries.

6.      All documents, studies, and/or data used to determine or calculate projected pension benefit obligations for all Pension System members or their beneficiaries.

7.      All documents and communications concerning any guidelines, policies, procedures, practices, rules, staff instructions, or standards applicable to the Pension Systems or used by the Pension Systems that relate to the determination, analysis, or review of the Pension Systems' pensions liabilities.

8.      All documents, communications, studies, and/or analyses concerning the amount and/or valuation of the Pension Systems' future annual required pay-as-you-go contributions.

---

[1]  "Pension Systems" means the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Judiciary Retirement System of the Commonwealth of Puerto Rico ("JRS"), and the Puerto Rico Teachers Retirement System ("TRS").

9.      All documents, communications, studies, and/or analyses concerning the methodology applied by the Pension Systems to determine their future annual required pay-as-you-go contributions, and the reasons for selection of that methodology.

10.      All documents and communications concerning any guidelines, policies, procedures, practices, rules, staff instructions, or standards applicable to the Pension Systems or used by the Pension Systems that relate to the determination, analysis, or review of the Pension Systems' future annual required pay-as-you-go contributions.

11.      All documents, communications, studies, and/or analyses concerning the amount and/or valuation of the Pension Systems' invested assets.

12.      All documents and communications concerning the Pension Systems' investment strategy for its invested assets.

13.      All documents and communications concerning any guidelines, policies, procedures, practices, rules, staff instructions, or standards applicable to the Pension Systems or used by the Pension Systems with respect to how the investment managers are permitted to invest the Pension Systems' assets.

14.      All documents and communications concerning the Pension Systems' determination, calculation, estimation, or projection of future investment return on assets.

15.      All documents, communications, studies, and/or analyses prepared for or relied upon in connection with any actuarial analysis of pension funding requirements conducted pursuant to section 211 of PROMESA, including the analysis referenced on page 181 of the New Fiscal Plan.[2]

---

[2]  "New Fiscal Plan" means the New Fiscal Plan for Puerto Rico, dated April 5, 2018.

16.    Documents sufficient to show Pension System member census data, including (i) the number of active, retired, disabled, and terminated vested members or beneficiaries and (ii) the number or percentage of beneficiaries that live in and outside of the Commonwealth and the average age, average salary, average creditable service, and average monthly benefits received for members in each such category.

17.    All documents, communications, studies, and/or analyses concerning pension payments or claims determined or alleged to be fraudulent.

18.    Documents sufficient to identify the individuals and entities responsible for (i) determining and/or valuing the Pension Systems' current and projected pension liabilities and (ii) determining and/or implementing the Pension Systems' investment strategy for its invested assets.

19.    All documents, communications, studies, and/or analyses concerning the impact of Hurricanes Irma and Maria on (i) the actuarial assumptions used to value the Pension Systems' unfunded accrued actuarial pension liability and (ii) the amount and/or valuation of the Pension Systems' future annual required pay-as-you-go contributions.

# EXHIBIT B

**Mainland, Grant**

| | |
|---|---|
| **From:** | Friedman, Peter <pfriedman@omm.com> |
| **Sent:** | Tuesday, June 5, 2018 2:03 PM |
| **To:** | Weiss, Eric |
| **Cc:** | McKeen, Elizabeth L.; gmashberg@proskauer.com; tmungovan@proskauer.com; Miller, Atara; Mainland, Grant; Halstead, Ellen; Bookman, Adam; robert.berezin@weil.com |
| **Subject:** | Re: In re Fin. Oversight & Mgmt. Bd. as representative of Puerto Rico, 17-3283 |

Thanks. Confirmed that this captures what we discussed. Let me see if that window makes sense.

On Jun 5, 2018, at 2:01 PM, Weiss, Eric <EWeiss@milbank.com> wrote:

> Peter,
>
> We are still awaiting your confirmation of the summary I sent last week.  We would also like to get a follow up call on the calendar for later this week.  Do you have availability between 12 and 5 p.m. on Thursday?
>
> _____
> Eric Weiss | **Milbank**
> 28 Liberty Street | New York, NY 10005-1413
> T: +1 212.530.5420 | F: +1 212.822.5420
> EWeiss@milbank.com | www.milbank.com
>
> ---
>
> **From:** Weiss, Eric
> **Sent:** Wednesday, May 30, 2018 9:53 PM
> **To:** 'Friedman, Peter' <pfriedman@omm.com>
> **Cc:** McKeen, Elizabeth L. <emckeen@omm.com>; gmashberg@proskauer.com; tmungovan@proskauer.com; Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; Halstead, Ellen <Ellen.Halstead@cwt.com>; Bookman, Adam <Adam.Bookman@weil.com>; robert.berezin@weil.com
> **Subject:** RE: In re Fin. Oversight & Mgmt. Bd. as representative of Puerto Rico, 17-3283
>
> Peter,
>
> As you requested, below is a brief summary of what we agreed to on our meet and confer call this morning.  In addition, we propose a follow up call next Thursday, June 7, to check back in on the status of your production.  We are available between Noon and 5 p.m.
>
> - We confirmed that our primary focus is to obtain data that will allow us to better understand the size of the Commonwealth's pension liability and to test the underlying assumptions used to determine the Commonwealth's past and future funding obligations.  While not an exhaustive list, we discussed your providing us with data backing up the Commonwealth's actuarial assumptions, the impact of the transition to pay go and how much money must be set aside to meet those obligations, and census data.  You confirmed that AAFAF is willing to provide this underlying data, but not to engage in the extensive review of electronic communications.
> - We responded that AAFAF's offer was constructive and that we appreciated AAFAF's willingness to work with us consensually, while noting that we reserve rights and anticipate there will be follow-up requests after an initial production.

- We agreed that, for now, we will not issue formal process to obtain data or documents from Milliman but that it may be necessary to do so in the future.
- With respect to request 16, you agreed to confirm whether or not the Commonwealth has data concerning the number of beneficiaries that reside on and off the island.
- With respect to request 17, we agreed that, for now, we are primarily focused on large scale fraud or other irregularities rather than one off complaints.  As you suggested, that could be in the form of an inspector general's report, but we also agreed that less formal reports that aggregate and discuss multiple instances of fraud or other irregularities would be produced to the extent they exist.
- You identified as a next step determining what has already been shared with the Retirees' Committee, which you suggested was provided in response to requests that were similar in scope, and requesting MIlliman to provide it to us.
- We sought clarification that AAFAF would produce the information we have requested subject to an existing protective order, as opposed to Ambac's NDA with AAFAF or the mediation agreement.  You stated that you anticipated producing it pursuant to an existing protective order.
- We promised to follow up about the period covered by our requests.  Our requests cover the period from July 1, 2012 forward.

**Eric Weiss | Milbank**
28 Liberty Street | New York, NY 10005-1413
T: +1 212.530.5420 | F: +1 212.822.5420
EWeiss@milbank.com | www.milbank.com

---

**From:** Friedman, Peter [mailto:pfriedman@omm.com]
**Sent:** Tuesday, May 29, 2018 8:33 AM
**To:** Weiss, Eric <EWeiss@milbank.com>
**Cc:** McKeen, Elizabeth L. <emckeen@omm.com>; gmashberg@proskauer.com; tmungovan@proskauer.com; Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; Halstead, Ellen <Ellen.Halstead@cwt.com>; Bookman, Adam <Adam.Bookman@weil.com>; robert.berezin@weil.com
**Subject:** Re: In re Fin. Oversight & Mgmt. Bd. as representative of Puerto Rico, 17-3283

10:30 ?

On May 25, 2018, at 11:50 AM, Weiss, Eric <EWeiss@milbank.com> wrote:

Peter,

Just circling back.  Can we nail down a time to speak on Wednesday morning?

**Eric Weiss | Milbank**
28 Liberty Street | New York, NY 10005-1413
T: +1 212.530.5420 | F: +1 212.822.5420
EWeiss@milbank.com | www.milbank.com

---

**From:** Weiss, Eric
**Sent:** Wednesday, May 23, 2018 9:12 PM
**To:** 'Friedman, Peter' <pfriedman@omm.com>

**Cc:** McKeen, Elizabeth L. <emckeen@omm.com>; gmashberg@proskauer.com; tmungovan@proskauer.com; Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; Halstead, Ellen <Ellen.Halstead@cwt.com>; Bookman, Adam <Adam.Bookman@weil.com>; robert.berezin@weil.com
**Subject:** RE: In re Fin. Oversight & Mgmt. Bd. as representative of Puerto Rico, 17-3283

Peter,

Either of the windows you've suggested works for our side.  To ensure you've had time to track down what you may have and where it may be located, let's set a time on Wednesday morning.  Any time after 10 a.m. works.

---

**Eric Weiss | Milbank**
28 Liberty Street | New York, NY 10005-1413
T: +1 212.530.5420 | F: +1 212.822.5420
EWeiss@milbank.com | www.milbank.com

---

**From:** Friedman, Peter [mailto:pfriedman@omm.com]
**Sent:** Wednesday, May 23, 2018 8:21 PM
**To:** Weiss, Eric <EWeiss@milbank.com>
**Cc:** McKeen, Elizabeth L. <emckeen@omm.com>; gmashberg@proskauer.com; tmungovan@proskauer.com; Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; Halstead, Ellen <Ellen.Halstead@cwt.com>; Bookman, Adam <Adam.Bookman@weil.com>; robert.berezin@weil.com
**Subject:** Re: In re Fin. Oversight & Mgmt. Bd. as representative of Puerto Rico, 17-3283

Eric - we think early next week would be more useful as it will let us at least start to ascertain what documents exist and which internal governmental personal and external consultants we need to work with to obtain them.
Pls let us know what might work on Tuesday afternoon or Wednesday morning and I will check with our teams.

Peter

On May 22, 2018, at 6:16 PM, Weiss, Eric <EWeiss@milbank.com> wrote:

> All,
>
> We write on behalf of Ambac, National, and Assured.  We would like to better understand the Commonwealth's current and projected pension liabilities.  To that end, I've attached a list of document requests covering the ERS, JRS, and TRS pension schemes.  We would like to set up a time to meet and confer about these requests in the hope that we can avoid needless Rule 2004 motion practice.  Are you free to discuss the requests later this week?

---

**Eric Weiss | Milbank**
28 Liberty Street | New York, NY 10005-1413
T: +1 212.530.5420 | F: +1 212.822.5420

EWeiss@milbank.com | www.milbank.com

===================================================
=======

This e-mail message may contain legally privileged and/or confidential
information. If you are not the intended recipient(s), or the employee or
agent responsible for delivery of this message to the intended
recipient(s), you are hereby notified that any dissemination, distribution
or copying of this e-mail message is strictly prohibited. If you have
received this message in error, please immediately notify the sender and
delete this e-mail message from your computer.

    \<Pension Related Discovery Requests.pdf\>

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you
are not the intended recipient(s), or the employee or agent responsible for delivery of this
message to the intended recipient(s), you are hereby notified that any dissemination,
distribution or copying of this e-mail message is strictly prohibited. If you have received
this message in error, please immediately notify the sender and delete this e-mail
message from your computer.

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the
intended recipient(s), or the employee or agent responsible for delivery of this message to the intended
recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message
is strictly prohibited. If you have received this message in error, please immediately notify the sender and
delete this e-mail message from your computer.

# EXHIBIT C

# MILBANK, TWEED, HADLEY & M_CLOY LLP

**28 LIBERTY STREET**
**NEW YORK, NY 10005**

——————

212-530-5000

FAX: 212-530-5219

Grant R. Mainland
Partner
DIRECT DIAL NUMBER
212-530-5251
FAX: 212-822-5251

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SEOUL**
822-6137-2600
FAX: 822-6137-2626

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

November 8, 2018

**VIA EMAIL**

Elizabeth L. McKeen
O'Melveny & Myers LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660

Madhu Pocha
O'Melveny & Myers LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

Re:   Pensions Discovery

Dear Liz and Madhu:

We write on behalf of Ambac Assurance Corporation ("Ambac") concerning our ongoing efforts, together with Assured Guaranty Corp and National Public Finance Guarantee Corporation (the "Monolines"), to obtain information relating to Puerto Rico's pension liabilities.  Ambac appreciates AAFAF's cooperation on this matter to date.  We remain concerned, however, that we have yet to receive certain information that the parties agreed would be produced, even after a substantial narrowing of the requests the Monolines initially served on May 22, 2018.

In the parties' initial discussions regarding the pensions requests, we explained that our primary focus was to obtain data that would allow us to better understand the size of the Commonwealth's pension liability and, critically, to test the underlying assumptions used to determine the Commonwealth's past and future funding obligations.  We also discussed that AAFAF would produce the back-up data for the Commonwealth's actuarial assumptions, among other things.

November 8, 2018
Page 2

  We have carefully reviewed the materials provided to date, including information regarding pension recipients, payroll, audited financial statements for the various plans, and consolidated TSA cash flow reports, as well as the actuarial valuation reports from Milliman and correspondence with Milliman produced more recently.  We thank you for these materials.  However, we continue to seek the underlying assumptions used as the basis for the figures provided in the documents described above.  The underlying assumptions are necessary in order to conduct a proper analysis of the data.  Moreover, to the extent that these assumptions have changed in the New Fiscal Plan for Puerto Rico, which was certified by the Oversight Board on October 23, 2018, we ask that that analysis and underlying data be produced as well.

  During a phone call in August, you identified by bates number certain documents concerning future pay-as-you-go contributions.  *See, e.g.,* PR-INSURERS2004-0001377.  Yet while the documents purport to describe Milliman's methodology in calculating the projected benefit payments for the Employees' Retirement System, the letter states that Milliman relied on census data and "other information (both written and oral) provided by the Parties."  *Id*.  Milliman notes that to the extent that these data "are inaccurate or incomplete, the results of [the] valuation may likewise be inaccurate or incomplete."  *Id.*[1]  Without reviewing the data and information considered and relied on by Milliman, we are unable to test the accuracy or assess the reasonableness of the Commonwealth's estimated pension liability.  The same is true for all of the underlying assumptions used as the basis for the figures provided in the pensions-related productions to date.

  In addition, the majority of the swaths of data provided to date were produced without identifying information or any indication of which documents are responsive to which requests.  Accordingly, we request that you produce an index or map of the data that contains a high-level description of each data set, with corresponding bates ranges.

  Again, we appreciate AAFAF's willingness to cooperate with Ambac on pensions-related discovery thus far and are hopeful that we can continue to work cooperatively.  Without the additional information described above, however, we are unable to understand what information we do and not have, much less properly assess the basis for the New Fiscal Plan or the reasonableness of the assumptions underlying it.  We thank you for your prompt attention.

    Sincerely,

    */s/ Grant R. Mainland*

    Grant R. Mainland

cc: Gregg M. Mashberg
  Timothy W. Mungovan
  Atara Miller
  Ellen M. Halstead
  Adam J. Bookman

---

[1] Documents purporting to describe Milliman's methodology in calculating the projected benefit payments to the Judiciary Retirement System ("JRS") and Teacher Retirement System ("TRS") contain similar language.  *See, e.g.*, PR-INSURERS2004-0001410.

# EXHIBIT D

November 21, 2018

**Via E-mail**

Margaret Dale, Esq.                                     Elizabeth L. McKeen, Esq.
Proskauer Rose LLP                                      O'Melveny & Myers LLP
Eleven Times Square                                     610 Newport Center Drive, 17th Floor
New York, NY  10036                                     Newport Beach, CA  92660

Re:      *In re: The Financial Oversight and Management Board for the Commonwealth of Puerto*
         *Rico*, No. 17-03283-LTS

Dear Counsel:

  Pursuant to the Court's December 15, 2017 order authorizing a Rule 2004 examination (Dkt. 2033) and the Court's subsequent February 23, 2018 Order (Dkt. 2590) (the "Rule 2004 Orders"), we write on behalf of Movants[*] to request production of certain documents and information underlying the Commonwealth Fiscal Plan certified by the Oversight Board on October 23, 2018 (the "October 2018 Fiscal Plan").  The documents requested below contain non-privileged, factual information that is responsive to Request No. 16 contained in Schedule A of the *Urgent Renewed Joint Motion By The Ad Hoc Group Of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., The Mutual Fund Group, And National Public Finance Guarantee Corporation For Order Authorizing Rule 2004 Examination* (Dkt. 1870).  Consequently, these documents are required to be produced pursuant to the Rule 2004 Orders.

  The document requests set forth below are based on Movants' initial review of the October 2018 Fiscal Plan and are intended as a targeted, prioritized list of requests for information necessary to understand the currently operative Fiscal Plan for the Commonwealth.  Because our review is ongoing, Movants expressly reserve the right to propound additional requests in connection with the October 2018 Fiscal Plan and prior Fiscal Plans.

  We understand that you are working on responses to our letter of November 12, 2018 and Mr. Natbony's e-mail of November 15, 2018 and we await these responses next week.  However, we continue to have concerns over the lack of production and need prompt production commitments to be made.  The purpose of this letter is to identify further priority items for which there should be no conceivable reason to withhold production.

  We note that these requests overlap with certain discovery requests previously propounded by Movants.  They are intended to supplement, rather than to supersede, Movants' prior requests. To help you in understanding the basis for our requests, we have included explanatory notes that

---

[*] "Movants" are Assured Guaranty Corp. and Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, the Ad Hoc Group of General Obligation Bondholders and Ambac Assurance Corporation.

identify shortcomings in Respondents' responses to prior discovery requests directed to similar subject matters.

> ***Request No. 1****:*  All data, statistical code, and analysis regarding population assumptions and projections in the October 2018 Fiscal Plan, including all data, sources of data, regression coefficients, models, etc. collected, prepared, or used by any agent of the Board or AAFAF, including but not limited to Lyman Stone.

In response to prior requests for information underlying the Fiscal Plan's population assumptions, you have referred us to statistical code underlying DevTech's population analysis produced in the Intralinks Data Room.  7/6/2018 Ltr. to K. Zecca, p. 9.  You further advised that Respondents were continuing to investigate whether additional responsive documents relating to the Fiscal Plan's population projections could be located.  *Id.*  We have not received any update on the status of that investigation since July of this year.  Moreover, the population projections underlying the October 2018 Fiscal Plan are no longer based on DevTech's analysis, but instead are based exclusively on analysis prepared by Lyman Stone.  To date, Respondents have not disclosed any data, source material, models, or statistical code used or prepared by Mr. Stone.  Consequently, Movants have no transparency into the population assumptions and projections underlying the October 2018 Fiscal Plan.  We therefore request that you produce all data, statistical code, models, and analysis regarding those population assumptions and projections—including, but not limited to, all data, sources of data, regression coefficients, models, etc., collected, prepared, or used by Mr. Stone in connection with the October 2018 Fiscal Plan.

> ***Request No. 2****:*  All data, statistical code, and analysis related to any inflation projections in the October 2018 Fiscal Plan.

In response to requests for information regarding the inflation projections in prior versions of the Fiscal Plan, you have referred us to the "statistical code produced at file 2.1.3.1.1 in the Data Room (CW_RJM2004_0011271), lines 119-125."  7/6/2018 Ltr. to K. Zecca, p. 4.  The statistical code at the referenced location does not generate the inflation projections underlying the October 2018 Fiscal Plan.  We therefore request that you produce the data, statistical code, and analysis corresponding to the inflation projections in the October 2018 Fiscal Plan.

> ***Request No. 3****:*  Documents sufficient to show the calculations used to derive the "normal depreciation rate of capital" figures shown in row 169 of the "Macro Forecast" tab of the Excel model corresponding to the October 2018 Fiscal Plan.

You have previously stated that the calculation for the "normal depreciation rate of capital" is a "weighted average of the values for public and private capital for high-income countries from Table 1 on page 4 of the International Monetary Fund ("IMF") publication entitled *FAD Investment and Capital Stock Database 2017: Manual & FAQ - Estimating Public, Private, and PPP Capital Stocks.*"  7/6/2018 Ltr. to K. Zecca, pp. 2-3.  That explanation, however, does not make clear what weights are assigned to the referenced values and thus does not allow us to duplicate the calculation.  We therefore request that you produce documents sufficient to show the calculation.

**Request No. 4**: All models, documents, and actuarial reports supporting the calculation of the pension benefit and administrative cost projections in the October 2018 Fiscal Plan.

In response to requests for information regarding the pension benefit projections in prior versions of the Fiscal Plan, you have referred us certain "reports prepared by Milliman, Inc. that support the pension projections." 7/6/2018 Ltr. to K. Zecca, p. 7. For at least two reasons, however, the referenced Milliman reports do not afford adequate transparency into the pension projections underlying the October 2018 Fiscal Plan. First of all, the figures reported in the Milliman reports for the TRS and JRS pension plans differ significantly from the projections used in the October 2018 Fiscal Plan. Second, and more important, the reports merely set forth the output of Milliman's model and calculations. They do not provide support for the reported numbers or provide the underlying model used to calculate them. Consequently, the Milliman reports do not permit creditors to diligence the Fiscal Plan's pension projections—a shortcoming that is all the more urgent in light of the Oversight Board's November 20, 2018 announcement of its conclusion that the October 2018 Fiscal Plan contains a pension payment forecast error. We therefore request that you produce the assumptions, support, and analysis underlying the October 2018 Fiscal Plan's pension projections in a format that will allow creditors to diligence the underlying model, assumptions, and calculations used to produce those projections.

\*       \*       \*

Please let us know by the close of business on November 30, 2018 whether you intend to produce the documents requested above and when you expect the documents will be produced. To the extent that you maintain that all documents or information responsive to any of the requests has already been produced, please identify for us the relevant documents. Absent agreement, we intend to take up this matter with Judge Dein.

To reemphasize what we stated at the outset, the above document requests overlap with our prior requests. We ultimately expect that Respondents will produce documents in connection with the population, inflation, depreciation, and pension projections underlying *each* iteration of the Commonwealth's Fiscal Plan—as well as documents responsive to the other topics we have identified in prior correspondence. This letter is not intended to supersede or waive any of our prior requests. Rather, the purpose of this letter is to provide targeted and prioritized requests for information underlying the currently operative Commonwealth Fiscal Plan—that is, categories of information for which there can be no conceivable argument that production would be unduly burdensome.

We are available for a meet-and-confer call if you would like to discuss.

Sincerely,

CADWALADER, WICKERSHAM &
TAFT LLP

By: /s/ Ellen M. Halstead
Howard R. Hawkins, Jr.*
Mark C. Ellenberg*
Ellen V. Holloman*
William J. Natbony*
Ellen M. Halstead*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 406-6666
E-mail: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        ellen.holloman@cwt.com
        bill.natbony@cwt.com
        ellen.halstead@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

* Admitted *pro hac vice*

*Attorneys for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

WEIL, GOTSHAL & MANGES LLP

By: /s/ *Jared R. Friedmann*
Marcia Goldstein*
Jonathan Polkes*
Gregory Silbert*
Jared R. Friedmann*
Adam J. Bookman*
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
E-mail: marcia.goldstein@weil.com
        jonathan.polkes@weil.com
        gregory.silbert@weil.com
        jared.friedmann@weil.com
        adam.bookman@weil.com

* Admitted *pro hac vice*

*Attorneys for National Public Finance
Guarantee Corporation*

ROBBINS,      RUSSELL,      ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP

By: /s/ *Kathryn S. Zecca*

Lawrence S. Robbins*
Mark T. Stancil*
Gary A. Orseck*
Kathryn S. Zecca*
Donald Burke*
2000 K Street, NW
4th Floor
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: lrobbins@robbinsrussell.com
        mstancil@robbinsrussell.com
        gorseck@robbinsrussell.com
        kzecca@robbinsrussell.com
        dburke@robbinsrussell.com

* Admitted pro hac vice

*Attorneys for the Ad Hoc Group of General
Obligation Bondholders*

MILBANK, TWEED, HADLEY &
MCCLOY LLP

By: /s/ *Grant R. Mainland*

Dennis F. Dunne*
Andrew M. Leblanc*
Atara Miller*
Grant R. Mainland*
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
        aleblanc@milbank.com
        amiller@milbank.com
        gmainland@milbank.com

* Admitted pro hac vice

*Attorneys for Ambac Assurance Corporation*

# EXHIBIT E

January 14, 2019

*Via E-mail*

Margaret Dale, Esq.                            Elizabeth L. McKeen, Esq.
Proskauer Rose LLP                             O'Melveny & Myers LLP
Eleven Times Square                            610 Newport Center Drive, 17th Floor
New York, NY  10036                            Newport Beach, CA  92660

Re:     *In re: The Financial Oversight and Management Board for the Commonwealth of Puerto
        Rico*, No. 17-03283-LTS

Dear Counsel:

       We write on behalf of Movants[1] in response to your letter of November 30, 2018 and to
address the status of Respondents' production of documents pursuant to the Court's December 15,
2017 order authorizing a Rule 2004 examination (Dkt. No. 2033) and the Court's subsequent
February 23, 2018 Order (Dkt. No. 2590) (the "Rule 2004 Orders").

       Parts I through III below respond to the corresponding portions of your November 30 letter.
Part IV raises additional issues regarding the production of discovery materials from certain related
proceedings.

## I.      Priority Requests In Movants' November 21, 2018 Letter

       We appreciate your responses to the prioritized document requests in our November 21,
2018 letter, as well as Respondents' production of certain responsive documents on December 14,
2018.  Our analysis of Respondents December 14, 2018 production remains ongoing, but we note
the following initial issues in connection with our November 21 requests.

       *Request No. 1:*   All data, statistical code, and analysis regarding population
       assumptions and projections in the October 2018 Fiscal Plan, including all data,
       sources of data, regression coefficients, models, etc. collected, prepared, or used by
       any agent of the Board or AAFAF, including but not limited to Lyman Stone.

       We note that Respondents' December 14, 2018 document production included certain
materials in connection with Lyman Stone's population modeling.  We are in the process of
analyzing those materials, and we may well have follow-up requests as that analysis continues.  In
the meantime, please confirm whether Respondents' December 14 production was intended as a
complete response to Request No. 1 or whether the search for additional documents discussed in
your November 30 letter remains ongoing.

---

[1] "Movants" are Assured Guaranty Corp. and Assured Guaranty Municipal Corp., National
Public Finance Guarantee Corporation, the Ad Hoc Group of General Obligation Bondholders
and Ambac Assurance Corporation.

***Request No. 2:***  All data, statistical code, and analysis related to any inflation projections in the October 2018 Fiscal Plan.

Your November 30 letter maintains (at 2-3) that the data, statistical code, and analysis used to generate the October 2018 Fiscal Plan's inflation projections have been produced.  As we explain below, that is not accurate.

To date, Respondents' discovery correspondence has identified statistical code underlying inflation projections on two separate instances.  In your July 6, 2018 letter to Kathryn Zecca (at 4), Respondents referred "to the statistical code produced at file 2.1.3.1.1 in the Data Room (CW_RJM2004_0011271), lines 119-125."  Your November 30 letter (at 2 n.2) refers to the same document.

The statistical code in CW_RJM2004_0011271 contains both a set of statistical instructions and input data.  When run, that code generates the coefficients underlying the inflation projections in the March 2017 Fiscal Plan, which differ from those underlying the October 2018 Fiscal Plan:

| | Coefficients | |
| Variable | October 2018 Fiscal Plan | March 2017 Fiscal Plan |
|---|---|---|
| Change in Prior Year Inflation | 0.344 | 0.312 |
| Change in Real Oil Prices | 0.024 | 0.028 |
| Change in Real Food Prices | 0.005 | 0.051 |
| Output Gap | 0.225 | 0.327 |
| After 2012 Indicator Variable | -0.008 | -0.424 |
| Constant | 0.012 | 1.284 |

See October 23, 2018 Fiscal Plan Excel Model (CW_RJM2004_0023261), at "Macro Forecast" tab, cells D146-D151; CW_RJM2004_0011272, at _0011286.  That is unsurprising, given that this statistical code was shared in the dataroom in October 2017—long before the post-Maria iterations of the Fiscal Plan were created.  Despite the change in the coefficients used to generate the inflation projections in the March 2017 Fiscal Plan and the October 2018 Fiscal Plan, Respondents have not produced updated code (including the underlying input data) that corresponds to the new set of coefficients.

We therefore reiterate Movants' request for production of updated statistical code (including statistical instructions and the underlying input data) that can be used to replicate the coefficients underlying the October 2018 Fiscal Plan's inflation projections.  Please confirm that Respondents will produce an updated code file and let us know when we can expect such a production.[2]

---

[2] In making this request, Movants simply ask Respondents to do what they have already done with respect to the coefficients underlying the economic growth projections for the post-Maria iterations of the Commonwealth Fiscal Plan.  Respondents produced statistical code that generates the growth coefficients used in the January 24, 2018 through April 5, 2018 iterations of the Fiscal

***Request No. 3****:*  Documents sufficient to show the calculations used to derive the "normal depreciation rate of capital" figures shown in row 169 of the "Macro Forecast" tab of the Excel model corresponding to the October 2018 Fiscal Plan.

We note that Respondents' December 14 production included an Excel file providing back up for the calculation of the "normal depreciation rate of capital" figures used in the October 2018 Fiscal Plan.  At present, it appears that this information suffices to allow us to replicate the calculation.  We reserve the right to make additional follow-up requests in the future should additional questions arise with respect to this calculation.

***Request No. 4****:*  All models, documents, and actuarial reports supporting the calculation of the pension benefit and administrative cost projections in the October 2018 Fiscal Plan.

Your November 30 letter stated (at 3) that Respondents were working to identify additional materials responsive to Movants' request for information underlying the October 2018 Fiscal Plan's pension projections.  It does not appear that Respondents' December 14 production contained any materials responsive to this request.  We therefore ask that you clarify the scope of the materials that Respondents intend to produce and the expected timing for such a production.[3]

In formulating your response, Respondents should take the following observations into account.  As an initial matter, Movants need to be able to confirm the pension projections, which are hardcoded into the October 2018 Fiscal Plan Excel Model.  See October 23, 2018 Fiscal Plan Excel Model (CW_RJM2004_0023261), at "Pensions" tab.  To date, Respondents have referred us to actuarial analysis performed by Milliman.  As we have explained, however, Milliman's projections for the TRS and JRS pension plans differ significantly from the projections used in the October 2018 Fiscal Plan.  See 11/21/2018 Ltr. to M. Dale and E. McKeen, at p. 3.  Moreover, the October 2018 Fiscal Plan Excel model states that the pension projection are "based on actuarial analysis from Board-appointed expert," and refers to "[a]ctuarial analysis . . . performed by or under the direction of William Fornia FSA."  October 23, 2018 Fiscal Plan Excel Model (CW_RJM2004_0023261), at "Pensions" tab, cells C10 & C76.  Any actuarial analysis underlying the pension projections should be produced.  To the extent the Board's actuarial analysis relies on information prepared by Milliman or other third parties, Respondents should produce not only the

---

Plan.  See CW_RJM2004_0011306.  Respondents later produced an updated code file that generates the updated growth coefficients used April 18, 2018 through October 23, 2018 iterations of the Fiscal Plan.  See CW_RJM2004_0018143.  A similar update should be produced for the inflation-related code previously produced at CW_RJM2004_0011271.

[3] We also note that, on November 8, 2018, Ambac sent you a letter concerning outstanding pension-related requests that had been made as part of a separate conversation.  See 11/8/18 Ltr. to E. McKeen and M. Pocha.  That letter sought essentially identical information, most notably the back-up data for the Commonwealth's actuarial assumptions.  Ambac never received a response to that letter.  While Movants appreciate that it may be more efficient to address the pension-related requests as part of a unitary conversation pursuant to the Rule 2004 Orders, it goes without saying that Movants are entitled to a response.

bottom-line conclusions that flow into the Board's analysis but also any underlying model, assumptions, and calculations used to produce those conclusions.  See 11/21/2018 Ltr. to M. Dale and E. McKeen, at p. 3.  Without that information, Movants are unable to diligence the October 2018 Fiscal Plan's pension projections.

Finally, in light of the Board's November 20, 2018 announcement that the October 2018 Fiscal Plan contains a pension payment forecast error, Respondents should produce information sufficient to understand the source of this error, the impact of the error, and the steps necessary to correct the error in the October 2018 Fiscal Plan's pension projection.

## II.     Requests For Financial Reporting In Movants' August 10, 2018 Letter

Your letter's responses (at 3-11) to Movants' requests for various items of financial reporting raise several overarching issues, which we address here.  We ask that you respond to these overarching issues and supplement your initial responses accordingly.   To the extent necessary in light of your responses, we intend to follow up regarding more granular issues under separate cover.

As an initial matter, it may be helpful for you to understand the primary goals underlying Movants' requests for reporting on the Commonwealth's actual financial performance.  Such reporting is necessary for Movants to effectively diligence the Commonwealth's Fiscal Plan for at least two reasons.  First, many of the line items in the Fiscal Plan start with a baseline figure for Fiscal Year 2018.  Certain components of the growth calculations, such as "Net relief spending & insurance (% of GNP)," are also based on Fiscal Year 2018 figures.  Reporting on actual financial performance provides backup for those figures.   Second, financial reporting allows for a comparison between projected economic performance as reflected in the Fiscal Plan and actual performance.  That comparison, in turn, informs the validity and reliability of the Fiscal Plan's projections.

With these goals in view, many of your letter's responses are inadequate.  In some cases, you have referred us to figures reported in the Fiscal Plan itself.  For example, your letter refers (at 4) to the "HTA" tab of the September 7 Fiscal Plan model as a source for certain HTA-related revenue figures.  But those figures (or analogous figures in the Excel model for the October 2018 Fiscal Plan) are simply hardcoded into the Fiscal Plan model.  They provide no backup for the Fiscal Plan model, and hence do not assist in diligencing the Fiscal Plan model.  In other cases, you have referred us to reporting that covers different periods or different universes of covered entities from what is reflected in the Fiscal Plan, or reporting that is presented in a different format from the Fiscal Plan.  For example, your letter refers (at 4) to certain "FOMB Reporting Packages," but the payroll figures reported there do not appear to capture the full Fiscal Plan universe, as they do not tie to the figures included in the Fiscal Plan.  Similarly, line items in the TSA cash flow reporting are not directly comparable to the Fiscal Plan's line items for expenses and revenues.  And to take yet another example, the sources referenced in your letter (at 9) in connection with Title III expenses fail to capture the relevant temporal universe in full, as they do not cover the period between March and August 2018.

Your letter does not make clear whether the materials you reference are the full universe of available financial reporting responsive to our requests or whether Respondents are withholding additional responsive financial reporting that would facilitate comparisons between the Fiscal Plan and the Commonwealth's actual financial performance. Please either confirm that Respondents have received all responsive financial reporting or explain on what basis you are withholding the additional material.

To the extent that Respondents are withholding otherwise responsive documents based on your letter's position (at 3) that "Respondents are not providing interim drafts of financial reporting," and that "[t]he Commonwealth's audited financial statements will be released when they are complete," we urge you to reconsider. Respondents have never identified any cognizable basis for withholding draft financial statements, and there is none. Moreover, Respondents' refusal to provide draft financial reporting is inconsistent with PROMESA itself. PROMESA requires the Oversight Board to certify, as a predicate to any Title III filling, that a would-be debtor entity "made public draft financial statements and other information sufficient for any interested person to make an informed decision with respect to a possible restructuring." 48 U.S.C. § 2146(a)(2)(B). Indeed, the Board delivered such a certification in connection with the Commonwealth's Title III filing. See Dkt. No. 1, at 5. Given PROMESA's express recognition that the Commonwealth should make its draft financial statements public, Respondents' withholding of this information is unsupportable.

### III.   Requests For Source Materials Underlying The Commonwealth's Fiscal Plan

Your letter states (at 11) that Respondents intend to limit their production of source materials underlying the Commonwealth's Fiscal Plan to only those materials underlying the currently operative October 2018 Fiscal Plan, and not prior iterations of the Fiscal Plan. Your letter also proposes that Movants set forth specified, prioritized requests for further rolling productions of responsive materials.

As an initial matter, Movants cannot accept Respondents' position that Respondents will search for and produce only information regarding the October 2018 Fiscal Plan. That limitation is inconsistent with Movants' Rule 2004 discovery requests, which define Respondents' obligations under the Rule 2004 Orders. Request No. 16 of Movants Rule 2004 discovery requests sought all "inputs, calculations, or formulae underlying" not only the then-operative Fiscal Plan (certified on March 13, 2017) but also all "forthcoming fiscal plans for the Commonwealth." Dkt. No. 1870, Ex. A at 14. Moreover, changes in assumptions, projections, and modeling choices from one iteration of the Fiscal Plan to the next go to the reliability and supportability of the Oversight Board's work in preparing and certifying each such iteration. Thus, although prior iterations of the Fiscal Plan may no longer be operative, information underlying those prior iterations remains highly relevant to assessing the "financial condition of the debtor." Fed. R. Bankr. P. 2004(b). There is accordingly no basis for Respondents to withhold such responsive information.

We ask that you promptly confirm that Respondents will search for and produce materials underlying not only the October 2018 Fiscal Plan but also prior iterations of the Commonwealth's

Fiscal Plan.  Absent agreement on this point, we intend to promptly raise the issue with Judge Dein.

With that said, Movants appreciate your willingness to work collaboratively to expedite the production of high priority materials.  We are willing to provide a list of such prioritized requests, without waiving our request for all responsive source material underlying the Commonwealth Fiscal Plan.  The list of requests set forth below reflects our good faith effort to prioritize on at least four dimensions.  First, we have sought to identify particularly relevant subject matters for expedited production.  Second, we have generally focused our requests on "documents sufficient to show" the basis for calculations, assumptions, and modeling choices reflected in the Fiscal Plan.  Third, we have generally restricted these requests to the four iterations of the Commonwealth Fiscal Plan certified by the Oversight Board after Hurricane Maria.  And fourth, we have sought to limit these prioritized requests to documents that are not covered by Respondents' assertions of deliberative process privilege.

As in our November 21, 2018 letter, we note that the following requests are intended to supplement, rather than supersede our prior requests.  These prioritized requests should not be understood as a waiver of our request for complete production of all materials underlying each iteration of the Commonwealth's Fiscal Plan—including pre-Maria iterations of the Fiscal Plan and uncertified iterations of the Fiscal Pan submitted to the Board by the Commonwealth.  Nor should our identification of materials that Respondents do not assert are covered by the deliberative process privilege be understood as a waiver of our objections to Respondents' assertions of that privilege (or any other one).

As before, we have included explanatory notes to help you in understanding the basis for our requests and to identify shortcomings in Respondents' responses to prior discovery requests directed to similar matters.

**Request No. 1:**  The Excel model corresponding to the June 29, 2018 Fiscal Plan, as well as any separate Excel model corresponding to the DSA component of the June 29, 2018 Fiscal Plan.

Respondents have produced analogous documents in connection with other iterations of the Commonwealth Fiscal Plan, both prior to the June 29, 2018 iteration and more recently.  Excel models corresponding to the June 29, 2018 Fiscal Plan should be produced as well.

**Request No. 2:**  Documents sufficient to show the basis for projections of adjusted taxes and fees, including but not limited to gaming taxes, internet sales taxes, medical marijuana taxes, and Airbnb taxes found in—

(a) section 14.2.2 of the October 2018 Fiscal Plan;

(b) section 14.2.2 of the June 29, 2018 Fiscal Plan;

(c) section 15.2.2 of the May 30, 2018 Fiscal Plan; and

(d) section 16.2.2 of the April 19, 2018 Fiscal Plan.

You have previously referred us to the narrative descriptions of the tax reform initiatives in Chapter 16 of the April 19, 2018 Fiscal Plan.  See 7/6/2018 Ltr. to K. Zecca, at p. 6.  You also stated that Respondents were continuing to search for additional responsive documents.  *Id.*  The Fiscal Plan's narrative descriptions of the tax reform initiatives are insufficient to allow Movants to understand and diligence the Fiscal Plan's projections for these line items because they do not identify the basis for the particular figures used to project future tax revenues.  For example, footnote 134 on page 113 of the October Fiscal Plan posits an 18% decline in tobacco use following the imposition of new fees, but simply attributes that figure to unspecified "April 5, 2017 calculations" evidently provided by Hacienda.  It does not appear that the underlying source material has been produced.

Respondents should produce source material or analysis sufficient to allow Movants to understand the basis for the tax revenue projections used in the Commonwealth's Fiscal Plan.  To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

> ***Request No. 3:***  Documents sufficient to show the basis for the 5% target uplift in income tax and SUT revenues reflected in—
>
> > (a) section 14.2.1 of the October 2018 Fiscal Plan;
> >
> > (b) section 14.2.1 of the June 29, 2018 Fiscal Plan;
> >
> > (c) section 15.2.1 of the May 30, 2018 Fiscal Plan; and
> >
> > (d) section 16.2.1 of the April 19, 2018 Fiscal Plan.

As support for the 5% target uplift figure, the Fiscal Plan refers generally to "[a]nalagous case studies," including Panama, Jamaica, and Spain.  *E.g.*, October Fiscal Plan at 110 n.131.  That explanation is insufficient for Movants to understand and diligence the Fiscal Plan's 5% target because it fails to identify the full set of assertedly analogous case studies, the source materials that support the figures attributed to those case studies, the criteria used to select the case studies, and the calculations used to translate the case studies into the specific 5% target figure for Puerto Rico.

Respondents should produce source material or analysis sufficient to allow Movants to understand the basis for the Fiscal Plan's 5% target uplift figure, including information sufficient to allow Movants to duplicate the calculations that produced the 5% figure.  To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

> ***Request No. 4:***  Documents sufficient to show the basis for the "cyclical reversal" calculations reflected in—
>
> > (a) rows 42-84 of the "Macro Forecast" tab in the Excel Model corresponding to the October 2018 Fiscal Plan;

(b) the corresponding calculations included in the Excel model corresponding to the June 29, 2018 Fiscal Plan;

(c) rows 53-95 of the "Macro Forecast" tab in the Excel Model corresponding to the May 30, 2018 Fiscal Plan; and

(d) rows 52-94 of the "Macro Forecast" tab in the Excel Model corresponding to the April 19, 2018 Fiscal Plan.

In prior correspondence, you have explained that the Fiscal Plan's "cyclical reversal" calculations reflect a 10% unwinding each year, and that "[t]he decision to use a 10% unwinding reflects the professional judgment of Respondents' consultants." 7/6/2018 Ltr. to K. Zecca, at p. 4. That explanation is insufficient, however, because it does not explain the choice to use 10% rather than some other figure for the unwinding calculation.

Respondents should produce source material or analysis sufficient to allow Movants to understand the basis for the decision to use 10% as the unwinding figure in the Fiscal Plan's cyclical reversal calculations. To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

**Request No. 5:** Documents sufficient to show the basis for the projected timing and macroeconomic impact of the structural reforms reflected in each of the following:

(a) Exhibit 10 of the October 2018 Fiscal Plan and rows 36-50 of the "Baseline Assumptions" tab in the Excel Model corresponding to the October 2018 Fiscal Plan;

(b) Exhibit 10 of the June 29, 2018 Fiscal Plan and the corresponding calculations included in the Excel model corresponding to the June 29, 2018 Fiscal Plan;

(c) Exhibit 10 of the May 30, 2018 Fiscal Plan and rows 34-45 of the "Baseline Assumptions" tab in the Excel Model corresponding to the May 30, 2018 Fiscal Plan; and

(d) Exhibit 10 of the April 19, 2018 Fiscal Plan and rows 33-44 of the "Baseline Assumptions" tab in the Excel Model corresponding to the April 19, 2018 Fiscal Plan.

In prior correspondence, you have stated that the projected impacts of structural reforms "reflect the professional judgment of DevTech and Andrew Wolfe" and referred us to certain academic literature, the discussion of structural reforms in the April 19, 2018 Fiscal Plan, and the Oversight Board's May 28, 2018 memorandum on labor reform. 7/6/2018 Ltr. to K. Zecca, at p. 8. You also stated that Respondents were continuing to search for additional responsive materials. *Id.*

Your explanation is not sufficient to allow Movants to understand the basis for the projections and to diligence their validity.  In particular, it does not allow Movants to understand the basis for selecting the *particular* figures for the magnitude and timing of individual reforms reflected in the various iterations of the Commonwealth's Fiscal Plan.

Respondents should produce source material or analysis sufficient to allow Movants to understand the basis for the decision to select the particular figures for the magnitude and timing of individual reforms reflected in each of the various iterations of the Commonwealth's Fiscal Plan.  To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

> **Request No. 6:**  Documents sufficient to show the basis for any reserve or emergency fund incorporated into—
>
> (a) the October 2018 Fiscal Plan;
>
> (b) the June 29, 2018 Fiscal Plan;
>
> (c) the May 30, 2018 Fiscal Plan; and
>
> (d) the April 19, 2018 Fiscal Plan.

In prior correspondence, you have stated that Respondents were continuing to search for responsive materials regarding any reserve or emergency funds incorporated into the Commonwealth's Fiscal Plan.  7/6/2018 Ltr. to K. Zecca, at p. 8.  It does not appear that Respondents have produced any materials located through any such search.

Respondents should produce source material or analysis sufficient to allow Movants to understand the basis for any reserve or emergency fund incorporated into the Commonwealth's Fiscal Plan.  To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.  If Respondents contend that no reserve or emergency funds are incorporated into the Commonwealth's Fiscal Plan, please so state.

> **Request No. 7:**  Documents sufficient to show the basis for the "pass through" rates used to calculate the impact of federal disaster relief spending on economy of Puerto Rico of—
>
> (a) 15.5-100% in section 4.1 of the October 2018 Fiscal Plan;
>
> (b) 12.5% in section 4.1 of the June 29, 2018 Fiscal Plan;
>
> (c) 12.5% in section 4.1 of the May 30, 2018 Fiscal Plan; and
>
> (d) 12.5% in section 4.1 of the April 19, 2018 Fiscal Plan.

The Fiscal Plan provides narrative descriptions of the process used to arrive at these assumptions for the appropriate "pass through" rate.  *E.g.*, October 2018 Fiscal Plan at 19 n.8.  Those explanations are insufficient, however, to allow Movants to understand the basis for the

chosen figures and to diligence them because they do not provide sufficient detail regarding the source materials consulted or the calculations used to produce the Fiscal Plan's assumptions.

Respondents should produce source material or analysis sufficient to allow Movants to understand the basis for the decision to select the particular "pass through" rates reflected in the Commonwealth's Fiscal Plan, including information sufficient to duplicate the calculations that produced the chosen rates. To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

> ***Request No. 8:*** Documents sufficient to show the basis for the Medicaid population projections reflected in row 36 and the Platino population projections reflected in row 49 of the "ASES Premiums Exp Build" tab of the Excel model corresponding to the October 2018 Fiscal Plan, including the basis for (a) the assumption articulated in row 37 that Medicaid enrollment as a percentage of population will remain constant at 40.5% through Fiscal Year 2023, (b) the assumption apparently underlying the calculations in row 50 that Platino enrollment as a percentage of population will remain constant at 7.6% through Fiscal Year 2023, and (c) the assumption apparently underlying the calculations in row 29 of the "Macro Assumptions" tab that Medicaid enrollment as a percentage of population will remain constant through Fiscal Year 2058.

The October 2018 Fiscal Plan Excel model does not identify with any precision the source materials used to arrive at the "Actual Medicaid Enrollment" in row 36 of the "ASES Premiums Exp Build" tab or the "Actual Platino Enrollment" figures in row 48. Nor does the Fiscal Plan articulate a basis for the assumption that the percentage of Puerto Rico's population enrolled in Medicaid will remain constant over time. Respondents should produce source material or analysis sufficient to allow Movants to understand and diligence the calculations and assumptions. To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

> ***Request No. 9:*** Documents sufficient to show the basis for the assumed healthcare inflation rates reflected in—
>
> (a) rows 27 and 28 of the "Macro Assumptions" tab of the Excel model corresponding to the October 2018 Fiscal Plan;
>
> (b) row 28 of the "Macro Assumptions" tab and row 53 of the "ASES Premiums Exp Build" tabs in the Excel Models corresponding to the May 30, 2018 Fiscal Plan and the April 19, 2018 Fiscal Plan (as well as the corresponding calculations in the Excel model corresponding to the June 29, 2018 Fiscal Plan); and
>
> (c) row 29 of the "ASES Premiums Exp Build" tab in the Excel model corresponding to the October 2018 Fiscal Plan.

-10-

The Excel model for the October 2018 Fiscal Plan refers to "analysis by independent FOMB actuary" (row 10 of "ASES Premiums Exp Build" tab) and "[a]ge-mix adjusted rate based on analysis by Salud Actuarial Consulting" (row 33 of "Macro Assumptions" tab). Respondents should produce those actuarial analyses, along with any inputs or supporting information that is necessary for Movants to understand and diligence the analyses. We note that the actuarial reports to which you have previously referred us do not tie to the figures in the Excel Model corresponding to the October 2018 Fiscal Plan (*e.g.*, Milliman provided a PMPM rate for 2018 that is $178.47, see CW_RJM2004_0006851; the Fiscal Plan model cites a rate of $181, see cell E19 of the "ASES Premiums Exp Build" tab).

With respect to the healthcare inflation projections in prior iterations of the Fiscal Plan, you have referred us to certain calculations in the Excel model corresponding to the Commonwealth's April 5, 2018 draft Fiscal Plan, as well as to a January 31, 2018 report prepared by Milliman, Inc. See 7/9/2018 Ltr. to K. Zecca, at p. 7. Those sources are insufficient to allow Movants to understand and diligence the inflation projections, however, because they do not appear to tie to the 6.0% rate of "normal" healthcare inflation used in these iterations of the Fiscal Plan. Respondents should produce source material or analysis sufficient to allow Movants to understand and diligence the calculations and assumptions that were used to derive the 6.0% figure. To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

> ***Request No. 10:*** Documents sufficient to show the content of and the basis for projecting the impact of each of the healthcare reform measures reflected in—
>
> > (a) rows 41-51 of the "Measures build" tab in the Excel Model corresponding to the October 2018 Fiscal Plan;
> >
> > (b) the corresponding calculations included in the Excel model corresponding to the June 29, 2018 Fiscal Plan;
> >
> > (c) rows 52-62 of the "Measures build" tab in the Excel Model corresponding to the May 30, 2018 Fiscal Plan; and
> >
> > (d) rows 51-60 of the "Measures build" tab in the Excel Model corresponding to the April 19, 2018 Fiscal Plan.

Movants lack sufficient information to understand and diligence the Fiscal Plan's healthcare reform measures for at least two reasons. First, the Fiscal Plan's descriptions of the proposed reform measures are too general to convey the specific nature of the proposed reforms—particularly for the "New Healthcare Model" reform that is responsible for the bulk of the savings contemplated by the Fiscal Plan. Second, Movants lacks transparency into the projected impact of the proposed reforms because the Fiscal Plan Excel model contain only hardcoded values that do not convey the basis for the Fiscal Plan's projections. In prior correspondence, you have referred us to Milliman's January 31, 2018 report as support of these projections. See 7/6/2018 Ltr. to Z. Zecca, at p. 9. But that report does not appear to contain any support of the Fiscal Plan's

proposed reform measures.  Indeed, the report acknowledges as much on its face, stating that Milliman was in the process of "analyzing trends at a more granular level for the expected cost of the new healthcare model," and that this "detailed review may uncover additional information that could materially change the claim cost trends in this memorandum."  CW_RJM2004_0018153, at p. 7.

Respondents should produce source material or analysis sufficient to allow Movants to understand both the content of the proposed reform measures and the basis for selecting the particular values used to model the projected impacts of these reforms.  To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

> *Request No. 11:*  Data sufficient show, on an annual basis from 2005 to the present—
>
> (a) healthcare expenditures, including breakdowns for MCO Premiums (row 28 of the "ASES Premiums Exp Build" tab of the Excel model corresponding to the October 2018 Fiscal Plan), dual eligible (row 53 of the "ASES" tab), and other Medicaid-related costs (row 54 of the "ASES" tab); and
>
> (b) enrollment figures for the Medicaid and Platino programs, including information for Fiscal Year 2018.

Respondents have previously objected to providing the requested information on the grounds that the requests are unduly burdensome and that historical information of this sort is not relevant to the Commonwealth's current financial condition.  See 7/6/2018 Ltr. to K. Zecca, at pp. 7-8.  Respondents have failed to support the claim of burden, however, because they not explained why high-level financial and enrollment data of the sort requested here could not be readily accessed and produced.  As for relevance, historical data is an important input into reliable projections of future spending and enrollment.  The requested information should therefore be produced.

Separately, in connection with our request for enrollment figures, you have referred us to actuarial memoranda prepared by Milliman.  See 7/6/2018 Ltr. to K. Zecca, at p. 8.  The most recent report that has been produced to date is from November 2017.  Any more recent reports reflecting enrollment figures should also be produced.

> *Request No. 12:*  Documents sufficient to show the basis for (a) the revenue assumptions reflected in rows 17-20 of the "MedicaidFunding" tab in the Excel Model corresponding to the October 2018 Fiscal Plan, and (b) the hardcoded input data contained in the remainder of that tab.

The Excel model corresponding to the October 2018 Fiscal Plan contains a tab that purports to project federal funds that will be received under Section 110, CHIP, the ACA and the 2017 Omnibus spending bill.  It cites as data sources "federal funding assumptions based on current legislation, and projected measures."  (Cell B10 of the "MedicaidFunding" tab.)  The Fiscal Plan

itself (at 25) describes a process by which the Commonwealth will sequence its draw down of available funds.  Neither the Excel model nor the Fiscal Plan, however, disclose the basis for those assumptions or the source from which the baseline data was gathered.

Respondents should produce source material or analysis sufficient to allow Movants to understand the basis for the Fiscal Plan's assumptions for the amount of Federal Medicaid reimbursement.  To the extent that the Fiscal Plan assumes that Puerto Rico will not be able to use all available federal funds, Respondents should provide the basis for such assumption, including any underlying data or calculations.

> ***Request No. 13:***  Documents sufficient to show the basis for the revenue normalization adjustments reflected in rows 32-45 of the "Monthly Actual" tab of the Excel model corresponding to the October 2018 Fiscal Plan.

The Excel model corresponding to the October 2018 Fiscal Plan reflects that a portion of Fiscal Year 2018 revenue performance is attributed to "non-recurring one-time events."  See Monthly Actual" tab of the Excel model corresponding to the October 2018 Fiscal Plan, at cell C10.  The Excel model does not, however, disclose the basis for those adjustments or the methodology by which they were calculated.

Respondents should produce source material or analysis sufficient to allow Movants to understand the basis for the Fiscal Plan's revenue normalization adjustments, including sufficient information to allow Movants to duplicate the calculation that produced such adjustments.  To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

> ***Request No. 14:***  Documents sufficient to show the working-age population data that serves as an input variable in the Real GNP Growth Forecast underlying the March 2017 Fiscal Plan.  See CW_RJM2004_0002218, at _0002218; CW_RJM2004_0011272, at line 6.

Materials produced to date show that working-age population data were used as an input in the growth projections underlying the March 2017 Fiscal Plan.  Respondents have not, however, produced the underlying source material or analysis used to generate the working-age population data.  Respondents should produce such source material and analysis, including information sufficient to allow Movants to duplicate any calculations that were used to generate the relevant working-age population data.

> ***Request No. 15:***  Documents sufficient to show the sources for the food and oil prices variables that serve as input variables in (a) the real GNP growth and the inflation projections underlying the March 2017 Fiscal Plan, and (b) the inflation projections and (in the case of the oil prices variable) the growth projections underlying the post-Maria iterations of the Fiscal Plan.  See, *e.g.*, CW_RJM2004_0002218, at _0002218; CW_RJM2004_0011272, at lines 7-8; rows 159 and 182 of the "Macro Assumptions" tab of the Excel model corresponding to the October 2018 Fiscal Plan.

Materials produced to date referred to certain online IMF source data as support for the food and oil Prices input variables used to produce the March 2017 Fiscal Plan's real GNP and inflation projections. See CW_RJM2004_0002218, at _0002218. However, the data from IMF does not exactly match the data in the historical period and is missing for some years. Additionally, the IMF data source does not include forecasted oil and food prices. Moreover, the oil prices  input variable used to produce the October 2018 Fiscal Plan's real GNP growth projections is different from the oil prices input variable used in the March 2017 Fiscal Plan.

Respondents should produce source material or analysis sufficient to allow Movants to understand the basis for the food and oil price variable used as inputs in the Fiscal Plan. To the extent that you believe the requested information may be found in materials that Respondents have previously produced, please identify the relevant portions of Respondents' prior productions.

## IV.    Requests For Discovery Materials In Related Proceedings

Request No. 13 of Movants' original Rule 2004 discovery requests sought all discovery produced in connection with, among other things "these Title III Proceedings, including any adversary proceedings filed in any of the Title III Proceedings." Dkt. No. 1870, at Ex. A, p. 13. To date, however, Respondents have not produced pursuant to the Rule 2004 Orders any of the discovery materials that have been exchanged in connection with certain PREPA bondholders' motion for relief from the automatic stay. See Dkt. No. 1019 in Case No. 17-04780-LTS (scheduling order setting forth discovery deadlines). Although certain Movants are parties to the PREPA stay-relief matter and have received that discovery directly, other Movants are not. Respondents should therefore re-produce, under the auspices of the Rule 2004 Orders, any discovery material produced in connection with the PREPA stay-relief matter.

For similar reasons, Respondents should re-produce any discovery materials exchanged under the auspices of the *Stipulation and Protective Order* governing the Retiree Committee's request for discovery in connection with the settlement of the Commonwealth-COFINA dispute. See Dkt. No. 4541 in Case No. 17-03283-LTS.

Finally, Movants request that Respondents produce any documents and information produced to the plaintiffs in *Centro de Periodismo Investigativo v. Financial Oversight and Management Board for Puerto Rico*, No. 3:17-cv-01743-JAG-BJM. Although that litigation was not among the specific actions noted in Request No. 13, it is of a piece with those actions (including the companion case of *Centro Periodismo Investigativo v. Rossello-Nevares*, Civil No. SJ2017cv00396, which was noted in Request No. 13). Moreover, it appears that many of document requests in that litigation overlap with the materials Movants have requested under Rule 2004. See Complaint for Declaratory and Injunctive Relief, Dkt. No. 1 in Case No. 17-cv-10743, at pp. 20-21 (June 1, 2017). To the extent any such materials are produced to parties in a separate litigation, they should be produced to Movants as well. We are therefore confident that, if we were to seek Judge Dein's approval to expand Request No. 13 to include the *Centro de Periodismo Investigativo* litigation, approval would be granted. Rather than consuming the Court's resources,

however, we ask that Respondents agree to re-produce any materials that have been or will be produced to the plaintiffs in the *Centro de Periodismo Investigativo* litigation.

*       *       *

We would like to have a meet-and-confer call with you regarding the issues raised in this letter and the status of Respondents' production of materials under Rule 2004 if you believe that would be productive.  Please let us know your availability for such a call during the week of January 21.

Sincerely,

CADWALADER, WICKERSHAM & TAFT LLP

By: */s/ William J. Natbony*
Howard R. Hawkins, Jr.*
Mark C. Ellenberg*
William J. Natbony*
Ellen M. Halstead*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 406-6666
E-mail: howard.hawkins@cwt.com
         mark.ellenberg@cwt.com
         bill.natbony@cwt.com
         ellen.halstead@cwt.com
         thomas.curtin@cwt.com
         casey.servais@cwt.com

* Admitted *pro hac vice*

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

WEIL, GOTSHAL & MANGES LLP

By: /s/ *Jared R. Friedmann*
Marcia Goldstein*
Jonathan Polkes*
Gregory Silbert*
Jared R. Friedmann*
Adam J. Bookman*
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
E-mail: marcia.goldstein@weil.com
         jonathan.polkes@weil.com
         gregory.silbert@weil.com
         jared.friedmann@weil.com
         adam.bookman@weil.com

* Admitted *pro hac vice*

*Attorneys for National Public Finance Guarantee Corporation*

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP

By: /s/ *Kathryn S. Zecca*
Lawrence S. Robbins*
Mark T. Stancil*
Gary A. Orseck*
Kathryn S. Zecca*
Donald Burke*
2000 K Street, NW
4th Floor
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: lrobbins@robbinsrussell.com
        mstancil@robbinsrussell.com
        gorseck@robbinsrussell.com
        kzecca@robbinsrussell.com
        dburke@robbinsrussell.com

* Admitted pro hac vice

*Attorneys for the Ad Hoc Group of General Obligation Bondholders*

MILBANK, TWEED, HADLEY & MCCLOY LLP

By: /s/ *Grant R. Mainland*
Dennis F. Dunne*
Andrew M. Leblanc*
Atara Miller*
Grant R. Mainland*
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
        aleblanc@milbank.com
        amiller@milbank.com
        gmainland@milbank.com

* Admitted pro hac vice

*Attorneys for Ambac Assurance Corporation*