IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　Debtors. | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>　　as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>　　Debtor. | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

**REPLY IN SUPPORT OF RENEWED MOTION OF CERTAIN SECURED CREDITORS
OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT
OF THE COMMONWEALTH OF PUERTO RICO
TO COMPEL PRODUCTION OF DOCUMENTS FROM FINANCIAL
<u>OVERSIGHT AND MANAGEMENT BOARD</u>**

To the Chambers of the Honorable Judith G. Dein:

## INTRODUCTION

1. The Board[1] argues in its response [Dkt. No. 564 (the "Response")] that the Court should deny the Bondholders' Renewed Motion from the outset for two meritless reasons. ***First***, the Board argues that the Bondholders' privilege challenges are merely "academic." This is not true. The Bondholders have challenged the Board's invocation of the deliberative process privilege and attorney work product protection based on need—arguments that they reserve all rights on. Furthermore, the Renewed Motion makes complete challenges to certain documents. ***Second***, the Board suggests that the Bondholders' motion should be denied as wasteful. But as this Court previously acknowledged, it is not a "frivolous" for the Bondholders to assert or preserve their rights.

2. The Board's remaining arguments on the merits fare no better. The Board invokes the narrow deliberative process privilege over purely factual information, without providing the necessary detail to confirm that such information is so intertwined that it cannot be segregated and produced. The Board invokes the attorney-client privilege for communications shared with third-party financial advisors, without explaining what role these advisors purportedly played in rendering legal advice. Finally, the Board claims the narrow attorney work product protection over documents that do not appear to have been prepared for use in possible litigation. The Board's privilege claims should be overruled and the documents should be ordered to be produced.

---

[1] Defined terms shall have the meaning ascribed to them in the *Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents from Financial Oversight and Management Board* [Case No. 17-bk-3566, Dkt. No. 562 (the "Renewed Motion")].

## ARGUMENT

### I. The Issues Raised in the Renewed Motion are Not "Academic."

3. The Board again argues that the Court should overlook its failure to carry its burden because the Bondholders are challenging some, but not all, of the Board's privilege claims. Response ¶¶ 2-3. As before, the Bondholders' challenges to the Board's broad privilege claims are not "academic."

4. As this Court is aware, the Bondholders have challenged every invocation of the deliberative process privilege on the grounds of substantial need (Motion to Compel ¶¶ 15–22) and every invocation of the attorney work product doctrine on the basis of need (Motion to Compel ¶¶ 29–31) in order to reserve the right to seek review of this Court's determinations of those issues. The Bondholders have also challenged every invocation of the attorney-client privilege over documents that were sent by or to non-lawyer third parties (Motion to Compel ¶¶ 26–28). The nine documents listed in the Board's Exhibit 1 for which attorney-client privilege is identified as an additional privilege[2] are no exception, as their descriptions do not explain (i) why third parties were necessary to translate or interpret information between the lawyers and the client, or (ii) that the purpose of including the third parties was to facilitate legal advice by lawyers.[3]

5. Furthermore, as even the Board acknowledges, the Renewed Motion also challenges the Board's decision to withhold certain documents in its entirety. *See* Response ¶ 2 n.3.

---

[2] Docs. 11, 43, 44, 144, 209, 227, 245, 246 and 260.

[3] When those categorical objections are accounted for, the only documents on the Board's Exhibit 1 for which the Bondholders have not challenged all claimed privileges are those asserting mediation privilege. *See* Docs. 43, 44, 228, 229, and 278. But the Board failed to timely assert mediation privilege over four of these documents in its April 29, 2019 log. *See* Docs 43, 44, 228, and 229; *Moloney v. United States*, 204 F.R.D. 16, 21 (D. Mass. 2001) (granting motion to compel where party failed to timely assert claim of privilege).

## II. The Board Must Produce Segregable Factual Information.

6. Recognizing that its June 12 Log does not allow the Bondholders or the Court to confirm that all segregable factual information has been produced, the Board relies on its Supplemental Declaration to argue that it has met its burden with respect to claiming deliberative process privilege. *See* Response ¶ 15. But as the Bondholders explained in their Renewed Motion (¶ 11), this declaration does not explain why the factual information in any particular document is so intertwined that it would disclose the deliberative process if produced.

7. The Supplemental Declaration simply asserts—in the most general terms—that, unless redacted, "the Oversight Board considers the documents identified [in the Supplemental Declaration] to be protected in their entirety by the deliberative process privilege[.]" Supplemental Declaration ¶ 4. With respect to factual information, the Supplemental Declaration states—again, in the most general terms—that "*[t]o the extent these [withheld] documents contain facts*, such as financial data, they are intertwined with the analysis of the fiscal plan and budget scenarios and potential financial outcomes for purposes of making fiscal policy decisions." *Id.* (emphasis added). These bare assertions do not improve the generic statements the Court already rejected as insufficient. *See* Order at 10-11.

8. Contrary to the Board's argument, the categorical descriptions contained in the Supplemental Declaration do not provide the necessary detail. *See* Response ¶¶ 15-16 (citing Supplemental Declaration ¶¶ 3(a)-(l)). These descriptions are nothing more than a summary of categories of documents withheld, followed by conclusory statements that the disclosure of documents in these categories would reveal deliberative process.

9. For example, the Bondholders challenged the withholding of purely factual

- 3 -

information such as projections[4] and Excel spreadsheets[5] precisely because the categorical descriptions relating to these documents do not mention these projections or spreadsheets,[6] explain why such purely factual information could not be segregated and produced, or explain how the production of such information would enable the Bondholders to reverse engineer the underlying proposals. Such a declaration fails to justify the withholding of factual information.

### III. The Board Still Fails To Carry Its Burden As To Attorney-Client Privilege.

#### A. Insufficient Descriptions

10. The Bondholders argued that the Board's descriptions were insufficient because they did not demonstrate that the entire communication was privileged or that each of the documents attached consisted of privileged legal advice. Renewed Motion ¶ 13. The Bondholders then cited sixteen examples from the July 12 Log where this was the case. *Id.* Rather than respond with an argument as to *why* these sixteen descriptions were sufficient, the Board simply restates two of them and then baldly asserts that the "descriptions meets the standards set out by the Court in its discovery rulings[.]" Response ¶¶ 18-19.

11. Simply inserting phrases such as "soliciting legal advice" into a description says nothing about whether the *entire* communication is privileged, much less that any documents attached thereto are privileged. As the Bondholders learned for the first time in the briefing on their Motion to Compel, the Board claims attorney-client privilege over email chains described in a single entry,[7] and there is nothing in the entry descriptions indicating that each communication on the chain involved legal advice. Moreover, every document identified in the Renewed Motion

---

[4] Motion to Compel ¶ 10 (challenging Docs. 23, 50, 69).
[5] *Id.* (challenging Docs. 164, 165, 320).
[6] *See* Supplemental Declaration ¶ 3(c), (g).
[7] *See* Board's opposition to Bondholders' Motion to Compel at ¶ 18.

- 4 -

states that it is a communication sent "with attachments"—yet there is absolutely no information on what these attachments are, much less that they also reflect legal advice. *See* Docs. 53, 56, 57, 94, 95, 141, 156, 175, 204, 216, 217, 249, 252, 256, 257, 270.

12.  Rather than make the necessary showing, the Board simply cites a declaration from its counsel stating that each document has been re-reviewed. Response ¶ 19. But simply re-reviewing documents does not satisfy the Board's burden of substantiating its claims of privilege, which requires providing detailed information on its privilege log.

### B. Financial Advisors

13.  The Board again responds to the Bondholders' arguments regarding the effect of financial advisors on attorney-client communications by fundamentally misrepresenting the Bondholders' articulation of the legal standard. The Bondholders do not argue that *Columbia Data Prods., Inc. v. Autonomy Corp.*, No.11-12077-NMG, 2012 WL 6212898 (D. Mass. Dec. 12, 2012) overrides the standard set forth in *Cavallaro v. United States*, 284 F.3d 236, 246 (1st Cir. 2002). Rather, *Columbia Data Products*, decided a decade after *Cavallaro*, simply underscores the law, and there is a long line of precedent that agrees with *Columbia Data Products*' interpretation of *Cavallaro*. *See* Bondholders' Reply in Support of Motion to Compel, Dkt. No. 535 at 8. More importantly, this Court recognizes the three-element test from *Columbia Data Products* as the unquestionably correct legal standard. *See* Order at 13-14.

14.  The Board claims attorney-client privilege over more than 80 emails with non-lawyer third-parties, but it wholly fails to explain the role that these financial advisors purportedly played in helping to provide legal advice. *See* Renewed Motion ¶¶ 15-16. For example, many of the entries indicate that financial advisors were simply *copied* on communications between the client and counsel. *See, e.g.*, Docs. 128, 129, 171, 182. Many entries omit basic information

regarding the financial advisors altogether. *See* Docs. 187 (no mention of the financial advisors in the document description); 290 (financial advisors involved on the communication not identified). The Board does not explain how such communications could possibly qualify as being "made in confidence" such that the attorney-client privilege applies.

### IV. The Board Still Fails To Meet Its Burden As to Attorney Work Product.

15. Finally, the Board attempts to deflect from its failure to support its work product claims by arguing again that the Bondholders' challenges are "academic." Response ¶ 26. As stated above, this is simply not the case. *See* Section I, *supra*. Moreover, the Board's assurances that it has reviewed its claims of work product in light of the Court's Order, Response ¶ 27, are not adequate. The Court ordered the Board to re-review its documents *and then* either supplement its privilege log to provide the necessary information or produce the documents. For the six of the seven documents identified in the Renewed Motion (¶ 18), the Board made absolutely no changes to its descriptions and continues to withhold these documents in their entirety.[8] And the amended description for the seventh document still fails to indicate that it was prepared for use in possible litigation such that it qualifies for work product protection. *See* Doc. 56 ("Email between Oversight Board members, its legal counsel, and its financial advisors reflecting legal strategy and discussions concerning Commonwealth's non-compliance with proposed Commonwealth budget in violation of PROMESA, with attachments.").

### CONCLUSION

For the reasons set forth above, this Court should granted the Renewed Motion.

---

[8] Docs. 144, 246, 228, 229, 43, 44.

In San Juan, Puerto Rico, today June 19, 2019.

By:

| | |
|---|---|
| */s/ Alfredo Fernández-Martínez* | */s/ Bruce Bennett* |
| Alfredo Fernández-Martínez | Bruce Bennett (*pro hac vice*) |
| DELGADO & FERNÁNDEZ, LLC | JONES DAY |
| PO Box 11750 | 555 South Flower Street |
| Fernández Juncos Station | Fiftieth Floor |
| San Juan, Puerto Rico 00910-1750 | Los Angeles, California 90071 |
| Tel. (787) 274-1414 | Tel. (213) 489-3939 |
| Fax: (787) 764-8241 | Fax: (213) 243-2539 |
| afernandez@delgadofernandez.com | bbennett@jonesday.com |
| USDC-PR 210511 | |
| | Benjamin Rosenblum (*pro hac vice*) |
| | JONES DAY |
| | 250 Vesey Street |
| | New York, New York 10281 |
| | Tel. (212) 326-3939 |
| | Fax: (212) 755-7306 |
| | brosenblum@jonesday.com |
| | |
| | Geoffrey S. Stewart (*pro hac vice*) |
| | Matthew E. Papez (*pro hac vice*) |
| | Sparkle L. Sooknanan (*pro hac vice*) |
| | JONES DAY |
| | 51 Louisiana Ave. N.W. |
| | Washington, DC 20001 |
| | Tel. (202) 879-3939 |
| | Fax: (202) 626-1700 |
| | gstewart@jonesday.com |
| | mpapez@jonesday.com |
| | ssooknanan@jonesday.com |
| | |
| | David R. Fox (*pro hac vice*) |
| | JONES DAY |
| | 100 High Street, Floor 21 |
| | Boston, MA 02110 |
| | Tel. (617) 960-3939 |
| | Fax: (617) 449-6999 |
| | drfox@jonesday.com |

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

| | |
|---|---|
| /s/ Alicia I. Lavergne-Ramírez | /s/ Cheryl T. Sloane |

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (*pro hac vice*)
Jesse Green (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com
jgreen@whitecase.com
csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*