UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF PUERTO RICO

---

| | |
|---|---|
| In re: | : PROMESA |
| | : Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : Case No. 17-BK-3283 (LTS) |
| as representative of | : (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO et al., | : |
| Debtors.[1] | : |

---

| | |
|---|---|
| In re: | : PROMESA |
| | : Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : Case No. 17-BK-3566 (LTS) |
| as representative of | : |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | : |
| Debtors. | : |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **ORDER**

This matter is before the Court on the *Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents from Financial Oversight and Management Board* (Dkt. No. 562 in 17-BK-3566; Dkt. No. 7483 in 17-BK-3283) ("Renewed Motion to Compel"). For the reasons detailed herein, the Renewed Motion to Compel is ALLOWED IN PART AND DENIED IN PART. The Bondholders'[2] objections to the Financial Oversight and Management Board for Puerto Rico's ("Oversight Board's") assertions of the deliberative process privilege over factual material are overruled. The Bondholders' objections to the application of the attorney-client privilege are also overruled. Finally, the Bondholders' objections to the application of the work product doctrine are sustained as to documents 56, 144, 246, and 288, but overruled as to documents 43 and 44. The Court notes that documents 56, 144, 246 and 288 remain protected from disclosure by other valid privilege assertions.

### I. **Introduction**

The Renewed Motion to Compel seeks documents in connection with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic* Stay (Dkt. No. 289) ("Lift Stay Motion").[3] The Renewed Motion to Compel follows previous discovery disputes related to this litigation and the Court assumes familiarity with both the previous motion practice and this Court's previous orders at Dkt. Nos. 493, 509, 537, and 546. Specifically, on June 6, 2019, this

---

[2] As used in the Renewed Motion to Compel.

[3] Unless otherwise noted, docket numbers refer to Case 17-BK-3566.

2

Court allowed in part and denied in part the Bondholders' previous motion to compel seeking documents from the Oversight Board. (Dkt. No. 546) ("June 6 Order"). In the June 6 Order, the Court required the Oversight Board to make supplemental productions and submit updated privilege logs and declarations as necessary to support any remaining assertions of the deliberative process privilege, the attorney-client privilege and the work product doctrine. The Court ordered that the Oversight Board provide such information by June 12, 2019. (Id.). The Court also ordered that the parties submit a joint status report to the Court on June 14, 2019. (Id.).

The parties submitted the requested status report on June 14, 2019. (Dkt. No. 561) ("Status Report"). Therein, the Oversight Board represented that it had re-reviewed its privilege log entries, re-reviewed all 975 withheld documents reflected in its privilege log, and had re-reviewed all of its previous redactions. (Id.). Further, the Oversight Board represented that it had withdrawn certain privilege assertions and "that [the] same day [it] also produced documents to the extent the Oversight Board determined no privileges, protections, or immunities continued to apply." (Id. ¶ 3(iv)). The Oversight Board also withdrew certain redactions "where it determined factual information was segregable from privileged material, and produced documents reflecting those removed redactions on June 12, 2019." (Id. ¶ 3(v)). Finally, the Oversight Board represented that it had "obtained a supplemental declaration from its Executive Director, Natalie Jaresko, in support of the Oversight Board's assertion of the deliberative process privilege that addresses each document to which the Oversight Board maintains its assertion as to the deliberative process privilege . . . ." (Id. ¶ 3 (vi)).

3

The Oversight Board further reported in the Status Report that after the parties met and conferred regarding the Oversight Board's supplemental production, the Oversight Board was going to review its privilege log and production in light of remaining objections. The Oversight Board then produced additional information to the Bondholders. (Renewed Motion to Compel ¶ 8). Nevertheless, the Bondholders continue to object to the Oversight Board's privilege assertions and filed the Renewed Motion to Compel on June 17, 2019. The Oversight Board responded on June 18, 2019 (Dkt. No. 564) ("Objection"), wherein it included a declaration from Attorney Dalsen detailing the Oversight Board's re-review and supplemental productions (Dkt. No. 564-2) ("Dalsen Declaration"). The Bondholders filed a reply on June 19, 2019 (Dkt. No. 565) ("Reply"). The Bondholders served their June 12 and June 17 privilege logs ("June 12 Log" and "June 17 Log" respectively) on the Court. The privilege logs include confidential personal information and thus the Court will not publicly disclose them.

The Court will address the challenged privilege assertions in turn.[4] As a general matter, however, the Court acknowledges that there are limitations to the amount of information that can be provided when substantiating a claim of privilege. The Bondholders' repeated assertions that privilege log entries and declaration summaries are insufficient to establish privilege claims are based, for the most part, on an unreasonably restrictive reading of the

---

[4] The Court acknowledges the Oversight Board's contention that the Bondholders' arguments are academic because some documents are protected under separate privileges. Because the Bondholders have challenged each of the Oversight Board's assertions of privilege over the course of this litigation, and because they seek to reserve their rights for appeal, the Court will address each objection regardless of overlapping protections. For the avoidance of doubt, where this Court sustains an objection as to a particular document, that document need not be produced if another valid privilege applies.

privilege log entries and also ignore the practical need for efficient discovery in this complex litigation.

## II. Deliberative Process

The Bondholders continue to object to the withholding of factual information on the basis of the deliberative process privilege.[5] As this Court has held, factual information is generally not protected by the deliberative process privilege, with the exception that where disclosing factual information would disclose the deliberative information protected by privilege, that factual information is also properly withheld. (June 6 Order at 10). In this Court's June 6 Order, this Court found that "[i]n light of the general descriptions in the privilege log and the supporting affidavit, neither the Bondholders nor the Court can confirm the Oversight Board's representation that the factual information which can be segregated has all been produced." (Id. at 11). Since that Order, the Oversight Board has re-reviewed its documents, produced new privilege logs, and has served a supplemental declaration from Natalie A. Jaresko in support of its assertions of the deliberative process privilege. (See Dkt. No. 562-2 at 3-11) ("Supplemental Jaresko Declaration"). The Bondholders argue that the Supplemental Jaresko Declaration and the supplemental privilege logs do not provide enough information to warrant the assertion of the privilege.

This Court finds that the Oversight Board has met its burden to show that disclosing further factual information from the documents identified by the Bondholders would disclose deliberative material. By way of example, document 17 is described on the June 12 and June 17

---

[5] Specifically, the Bondholders object to the deliberative process being asserted for documents 1-4, 11, 17, 20, 22-23, 35, 50, 59, 66, 69, 84, 103-104, 106-107, 110-111, 120, 164-165, 191, 209-210, 227, 245, 247-248, 260, 265, 320, 331.

5

Logs as "Email from Oversight Board member to Oversight Board interim executive director regarding draft projections and model for Commonwealth Fiscal Plan and outlining specific remaining issues to resolve, with attachments." In her declaration, Ms. Jaresko explains that this document is one of a subset of documents withheld in whole or in part by the Oversight Board, and that those documents:

> . . . comprise draft Fiscal Plans and supporting materials for the draft Fiscal Plans including specific proposals under consideration, analyses of proposals under consideration, revised projections based on competing proposals, assumptions used in projections under consideration, documents identifying the Oversight Board's objectives, issues, and milestones under consideration, and draft financial models reflecting competing proposals for the Commonwealth Fiscal Plan.

(Supplemental Jaresko Declaration ¶ 3(b)). The Oversight Board has sufficiently demonstrated that the factual information included in document 17 is either itself deliberative because it includes projections or proposals not yet adopted, or is so intertwined with such proposals that disclosing the facts would disclose the protected deliberation.

Similarly, the Court has reviewed the June 12 and June 17 Log entries for the documents at issue in connection with the Supplemental Jaresko Declaration and finds that the Oversight Board has sufficiently shown that disclosing factual information from those documents would disclose deliberative material. Thus, the Bondholders' objections are overruled.

### III. Attorney-Client Privilege

The Bondholders next argue that the Oversight Board improperly withheld documents under assertions of the attorney-client privilege.[6] The Bondholders lodge two objections to the

---

[6] The Bondholders challenge the applicability of the attorney-client privilege as to documents 53, 56-57, 94-95, 122-124, 127, 129-130, 132, 134, 136, 141, 150-151, 156, 169-175, 177-182, 184-186, 188, 194-200, 204-205, 207-208, 216-222, 226, 230-233, 235-238, 240-244, 249, 252-257, 259, 262-264, 267-270, 272-273, 278, 280-282, 284-286, 290-292, 294, 299, and 305-310. In their Reply, the

6

attorney-client assertion. First, the Bondholders argue that some of the withheld information does not consist of legal advice. Second, the Bondholders argue that because some of the documents were shared with third parties, no attorney-client privilege exists. For the reasons detailed below, the Court does not find these arguments persuasive.

A. Legal Advice

This Court, in its June 6 Order, found that some of the Oversight Board's privilege log entries did not sufficiently show that the entire communication or attached documents consisted of privileged legal advice. (June 6 Order at 12). This Court explained that "[d]ocuments and segregable parts of documents which do not contain or seek legal advice are not protected by the attorney-client privilege." (Id. at 13); See also Evergreen Trading, LLC v. United States, 80 Fed. Cl. 122, 144 (2007) ("this ruling does not apply to the attachments to these communications, to the extent that those documents themselves are not privileged."). The Bondholders argue that the same deficiencies exist in the Oversight Board's supplemental logs. (Renewed Motion to Compel ¶ 13) ("Several descriptions fail to show that the *entire communication* or that *each of the attached documents* consist of privileged legal advice.") (emphasis in original). This Court does not agree.

To the extent that the descriptions in the privilege log refer to attachments or topics other than direct legal advice, the revised descriptions, when considered as a whole, sufficiently show that those attachments and topics relate to the legal advice being given. By way of

---

Bondholders also claim that third parties prevented application of the privilege to documents 11, 43, 44, 144, 209, 227, 245, 246, and 260. The Court will review the claims of privilege over these documents as well. Finally, the Court notes that although the Bondholders object to attorney-client protection for document 141, the Oversight Board did not assert attorney-client privilege over that document. Thus, the objection as to document 141 is overruled.

example, the Bondholders object to document 94, which is an "[e]mail from Oversight Board financial advisors to Oversight Board members, staff, and legal counsel circulating documents soliciting legal advice on proposed financial controls to prepare for meeting concerning certification of Commonwealth Fiscal Plan, with attachments." The Bondholders argue that this document includes non-privileged material because it is "concerning certification of [the] Commonwealth Fiscal Plan, [and includes] attachments". (Renewed Motion to Compel ¶ 13). The Bondholders ignore the remainder of the privilege log entry (i.e. "circulating documents soliciting legal advice on proposed financial controls to prepare for meeting concerning certification of Commonwealth Fiscal Plan, with attachments"), which sufficiently represents that this document consists of privileged legal advice related to certification of the fiscal plan. This conclusion is buttressed by Attorney Dalsen's representation that the Oversight Board re-reviewed "all 975 documents (i.e., direct hits and family documents) reflected in its privilege log entries to evaluate the privileges asserted as to each" and produced non-privileged information where possible. (Dalsen Declaration ¶¶ 3(b), 3(f)).

The Court has reviewed the supplemental privilege logs and finds similarly for each of the documents where Bondholders challenge application of the attorney-client privilege based on the existence of non-legal content. Thus, the Bondholders' objection on this ground is overruled.

B. <u>Presence of Third Parties</u>

The Bondholders next object to the application of the attorney-client privilege to documents prepared by, or which were sent to, third parties. As this Court has previously held, the presence of third-party advisors does not prevent application of the attorney-client

8

privilege in limited circumstances. (June 6 Order at 13); See also Cavallaro v. U.S., 284 F.3d 236, 247 (1st Cir. 2002). In determining when third parties meet that narrow exception, this Court has followed the Court in Columbia Data Prods., Inc. v. Autonomy Corp., 2012 WL 6212898 (D. Mass. Dec. 12, 2012) in setting forth a three-part test. First, "the third-party communications must be necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." Columbia Data Prods., 2012 WL 6212899 at *15. Second, "the third party's communication must serve to translate information between the client and the attorney." Id. (internal quotations and citations omitted). Finally, "the third party's communication must be made for the purpose of rendering legal advice, rather than business advice." Id. (internal quotations and citations omitted).

In the June 6 Order, this Court found that:

> Third parties are present on many of the documents over which the Oversight Board claims the attorney-client privilege. The Court acknowledges the crucial importance of advisors to the work of the Oversight Board in this complicated and novel restructuring. The Court accepts that those advisors are often needed to translate between the Oversight Board and its attorneys in order for those attorneys to render adequate legal counsel, and the Court also understands that these advisors are often consulted solely for a legal purpose. However, the Oversight Board's privilege log does not show that this is the case every time these third parties are included in communications over which the Oversight Board has claimed the attorney-client privilege.

(June 6 Order at 14). The Court instructed the Oversight Board to re-review those documents where third parties were present and the attorney-client privilege was asserted, and the Court ordered that "[w]here the strict test outlined above is not met, and the document is not otherwise protected, the document must be produced." (Id.).

The Court has reviewed the supplemental privilege log entries and finds that, contrary to the Bondholders' objection, the Oversight Board has sufficiently exhibited that the third

9

parties present on legal communications are necessary in order to translate information for a legal purpose. By way of example, document 127 consists of an "[e]mail between Oversight Board financial advisors and Oversight Board Executive Director concerning upcoming mediation and attaching draft materials to prepare for mediation session, with attachments." The Court recognizes that the Oversight Board's members cannot prepare for litigation and mediation on their own, and furthermore that many of the complex matters in this case require experts to prepare information for counsel's use. Where financial advisors are doing such work for a legal purpose, the attorney-client privilege exists. In the same light, document 130 consists of an "[e]mail between Oversight Board Executive Director and Oversight Board financial advisors discussing and reflecting legal advice and analysis from Oversight Board legal counsel pertaining to AAFAF proposal to purported ERS bondholders regarding employer contributions and potential litigation regarding the same." When the Oversight Board communicates with their financial advisors in order to effectuate their counsel's legal strategy, the attorney-client privilege protects those communications.

The Bondholders object to the privilege being asserted over communications including third parties where "there is no indication the advisors facilitated rendering legal advice or interpreted complicated information." (Renewed Motion to Compel ¶ 15). The Bondholders' objection is misplaced. One of the documents cited by the Bondholders in making this argument is document 272, which consists of "[a]n email between Oversight Board legal counsel, Oversight Board members, Oversight Board financial advisors, and Oversight Board staff discussing legal strategy regarding proposed stipulation between purported ERS bondholders requesting adequate protection and ERS." The Oversight Board's description

10

sufficiently demonstrates that the third-party professionals present on the communication were necessary for the Oversight Board's counsel to understand their legal strategy pertaining to ERS bondholder claims. The Oversight Board provided sufficient detail in their supplemental privilege logs to meet their burden.

### IV. Work Product Doctrine

Lastly, the Bondholders object to the Oversight Board's assertion of the work product doctrine over seven documents. These are documents 56, 43-44, 144, 246, and 228-229. This Court previously held that documents not prepared for use in litigation are not protected by the work product doctrine. (June 6 Order at 16). The Bondholders argue that "[n]otwithstanding the Court's direction, the Board continues to apply the work product doctrine too broadly." (Renewed Motion to Compel ¶ 18). This Court agrees in part.

Document 56 is an "[e]mail between Oversight Board members, its legal counsel, and its financial advisors reflecting legal strategy and discussions concerning Commonwealth's non-compliance with proposed Commonwealth budget in violation of PROMESA, with attachments." While the Court recognizes that such a violation could come to court, there is no indication that this communication was created for use in litigation. The Oversight Board applied the work product doctrine too narrowly and the Bondholders' objection is sustained. The Court notes that this document remains protected by proper assertions of the deliberative process and attorney-client privileges.

Documents 43 and 44 are "[r]edacted attachment[s] to email[s] from Oversight Board financial advisors to Oversight Board member reflecting materials prepared at the direction of

11

counsel in preparation for mediation." The Court agrees that these documents fall within the narrow definition of work product in the First Circuit. The Bondholders' objection is overruled.

Documents 144 and 246 are emails "between legal counsel to Oversight Board, Oversight Board members, and Oversight Board financial advisors reflecting legal advice and analysis concerning effect of anticipated pension reform legislation on Fiscal Year 2018 Territory Budget." These communications do not appear to have been made for use in litigation. The Bondholders' objection is sustained. The Court notes that these documents remain protected by a proper assertion of the attorney-client privilege.

Document 228 is a "[l]oose Excel file containing analysis of Oversight Board financial advisor provided to Oversight Board member (Andrew Biggs) analyzing potential fiscal policies to adopt for Commonwealth fiscal plan[,]" and document 229 is a "[l]oose Excel file containing analysis of Oversight Board financial advisor provided to Oversight Board member (Andrew Biggs) analyzing pension model from present to 2020." Neither of these documents appear to have been prepared for use in litigation. The Bondholders' objection is thus sustained. The Court notes that these documents remain protected by proper assertions of the deliberative process privilege.[7]

---

[7] In their Reply, the Bondholders attack the assertion of the mediation privilege over these documents as untimely. As the parties have not briefed argument on the mediation privilege in the context of this Renewed Motion to Compel, and because these documents are otherwise protected, the Court will not engage in an analysis of the application of the mediation privilege.

## V. **Conclusion**

As set forth herein, the Renewed Motion to Compel is ALLOWED IN PART AND DENIED IN PART. The Bondholders' objections to the Oversight Board's assertions of the deliberative process privilege are overruled. The Bondholders' objections to the application of the attorney-client privilege are also overruled. The Bondholders' objections to the application of the work product doctrine are sustained as to documents 56, 144, 246, and 288, but overruled as to documents 43 and 44. The Court notes that documents 56, 144, 246 and 288 remain protected from disclosure by other valid privilege assertions.

This Order resolves Dkt. No. 562 in 17-BK-3566 and Dkt. No. 7483 in 17-BK-3283.

SO ORDERED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

DATED: June 20, 2019