UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

    Debtors.

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

**[Response to Docket#7137 and #7154]**

**RESPONSE OF INDIVIDUAL GENERAL OBLIGATION BONDHOLDER TO AMENDED MOTION OF FOMB AND UCC, TO (A) EXTEND DEADLINES AND (B) ESTABLISH REVISED PROCEDURES WITH RESPECT TO OMNIBUS OBJECTIONS TO CLAIMS OF HOLDERS OF CERTAIN COMMONWEALTH GENERAL OBLIGATION BONDS ISSUED IN 2011, 2012 AND 2014, AND FOR RELATED RELIEF**

Dated: June 15, 2019

## TABLE OF CONTENTS

Page

I. PROCEDURAL ISSUES PRESENTED BY DOCKET#7154 ................................................ 1

    A. Any "problem" is self-created by FOMB and UCC ........................................................ 1

    B. Certain specific objections to the proposed Revised Initial Procedures Order ........................................................ 2

    C. The need to level the playing field ........................................................ 6

    D. Each beneficial holder of bonds being challenged is entitled to actual advance notice and to be given a practical means of participating in *all* proceedings that may affect their rights or interests, including any mediation, settlement or other process that may be incorporated into a Plan or otherwise effectively bind a bondholder ........................................................ 8

    E. Failure to timely file a Notice of Participation should not result in the loss of voting rights ........................................................ 9

    F. Specific objections set out in Docket#5103 ........................................................ 9

II. THE CONTEXT OF THE FOMB-UCC EFFORTS TO INVALIDATE BONDS PURCHASED BY INDIVIDUALS PRE-PROMESA ........................................................ 12

    A. The Commonwealth's representations when selling bonds ........................................................ 13

    B. FOMB and UCC's debt avoidance gambit flies in the face of U.S. Supreme Court precedent and ignores the wisdom of our Nation's founders ........................................................ 14

CONCLUSION ........................................................ 15

ATTACHMENTS

    Exhibit A    Chart summarizing trading in 2009, 2011 and 2012 GO bonds

    Exhibit B    EMMA trading data for 2009 bonds

    Exhibit C    EMMA trading data for 2011 bonds

    Exhibit D    EMMA trading data for 2012 bonds

    Exhibit E    5/31/2019 Puerto Rico TSA cash flow report (excerpts)

-ii-

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*County of Moultrie* v. *Rockingham Ten-Cent Savings Bank*,
  92 U.S. 631 (1875).................................................................................................. 1

*Town of Coloma* v. *Eaves*,
  92 U.S. 484 (1875).................................................................................................. 1

*United States* v. *Security Industrial Bank*,
  459 U.S. 70 (1982)................................................................................................ 14

*United States Trust Co.* v. *New Jersey*,
  431 U.S. 1 (1977).................................................................................................. 15

**Other Authorities**

Alexander Hamilton, Sec. Treasury, Report Relative to a Provision for the Support of
  Public Credit, January 9, 1790, available on Founders Online
  (https://founders.archives.gov/documents/Hamilton/01-06-02-0076-0002-0001)................... 15

In 2011 and 2012, I – like many individuals – purchased modest quantities of GO bonds issued by the Commonwealth.[1] The procedural issues raised by Docket#7154 must be considered in context. FOMB and UCC's tactics reprise those attempted back in the 1800s, when the U.S. Supreme Court aptly criticized such tactics – stating that "it would be tolerating a fraud" (*County of Moultrie* v. *Rockingham*, 92 U.S. 631, 637 (1875)) to sanction the "dishonesty" (*Town of Coloma* v. *Eaves*, 92 U.S. 484, 485 (1875)) of a government that issues bonds, takes the money and then claims the bonds do not have to be repaid because the government itself (assertedly) lied to bondholders. The tactics here are not only "dishonest[ ]": they also violate the U.S. Constitution and the rule of law.

**I. PROCEDURAL ISSUES PRESENTED BY DOCKET#7154**

A number of the procedural issues I discuss below directly impact me. I also have an interest in ensuring that all individual bondholders receive actual notice and a practical means to participate because of the spectre of the PROMESA "voting" process being used (and misused) to retroactively abrogate my rights and interests.

**A. Any "problem" is self-created by FOMB and UCC**

Like the proverbial child who kills his parents and then seeks mercy on the ground that he is an orphan, FOMB and UCC seek relief from a problem of their own creation. FOMB and UCC protest that "[d]ue to the sheer number of Participants… this 'meet and confer' process will be impossible to carry out." Docket#7154-page-3-of-14. Had FOMB and UCC not engaged in overreaching efforts to invalidate bonds purchased, pre-PROMESA, in good faith, by individuals from around the country at a time that Puerto Rico professed the sanctity of its commitments (as well as full compliance with applicable law, *see* Point II, below), this "problem" would not exist.

FOMC and UCC also opposed (Docket#6164,#6166), measures I had requested (Docket#6128,#6487) to facilitate participation by pro se parties, including (i) permitting pro se

---

[1] My wife and I filed notices of participation (Dockets#5377 and 5378) and submitted proofs of claim (Claims 10696 and 10288). I have previously submitted filings related to the improper efforts to invalidate general obligation bonds. Docket#4913, 5103, 6128, 6487 and 6151.

-1-

parties to file electronically (or at least permit them to file and serve papers by sending to a designated email address), and (ii) appointing a committee for individual bondholders or, in the alternative, at least appointing a committee charged with the representation and defense of all general obligation bondholders. As FOMB and UCC urged, the relief I sought was almost entirely denied (Docket#6534). But, the solution to the "problem," of FOMB and UCC's own making, is **not** to circumscribe the rights and practical ability of individuals who acted in good faith, pre-PROMESA, in buying Puerto Rico bonds to defend their interests.

B. **Certain specific objections to the proposed Revised Initial Procedures Order**

1. FOMB and UCC propose changing the previously-ordered procedures to now have proposals emailed to 13 individual attorneys representing FOMB or UCC (who would then post such proposals on a website), rather than being served on all participants. This would be OK, **provided** the procedure is modified as follows:

- There should be **one** email address to whom all communications to be posted are directed. No one should be required to send emails to 13 FOMB and UCC attorneys.
- Participants should be alerted by email when new postings are made to the website.
- An analogue of the proposed process should **also** be applied to the filing of Court papers by pro se litigants who are denied access to the District of Puerto Rico electronic filing system that well-funded FOMB and UCC attorneys may use. **One** email address (perhaps at Prime Clerk) should be specified, to which pro se participants could email papers. The designated recipient (*e.g.*, Prime Clerk) could then provide the papers to the Court clerk for filing. Because pro se individuals are denied the ability to electronically file, delays of 6-7 days occur between service and actual filing in the Court docket.[2]

---

[2] I requested similar relief in Docket#6128, #6487. The facts that (i) there are in the area of 1770 pro se participants, (ii) FOMB and UCC themselves have now identified practical issues posed by so many individual respondents, and (iii) FOMB and UCC now propose, but only for some limited purposes, an analogous system, underscore both the need for, and the feasibility of, the relief requested in Docket#6128,#6487.

- If such a system to facilitate filing by pro se participants is not used, all scheduled time intervals for Court papers must be increased by at least seven days. Otherwise the proposed deadlines are not feasible for individual pro se participants who are denied the ability to electronically file.

2. Any bondholder who wishes to be treated as a "Meet & Confer Party" should be entitled to so participate. The existing procedures order allows every Participant to take part in the meet and confer process. Docket#5143-2-page-5-of-7 (Section 3, ¶ 3). The proposed order would take away rights the Court previously granted to participants. Docket#7154-2-page-5-of-13 (Section 3, ¶ 3). Perhaps not all participants will want to meet & confer, but their rights should not be taken away just because there are so many. That would reward FOMB and UCC for their overreaching. One solution would be to reconsider and now appoint a bondholder committee, as I had requested (Docket#6128,#6487). FOMB and UCC should not be permitted to proceed "in an omnibus fashion" unless a bondholder committee is appointed.

3. The proposed time periods for written submissions (Docket#7154-1-page-13-to-14-of-29) are not adequate. As noted, 7 days should be added to each time period if pro se participants are not allowed to use the Court's electronic filing system (or the alternative proposed above in I.B.1). Furthermore, adequate time for preparing written submissions of arguments and evidence is particularly important for pro se participants since these individuals will typically not be in a position to travel to appear in person at hearings outside their home metropolitan area, so their written submissions will be their only practical opportunity to be heard. Unlike FOMB and UCC, individuals do not have litigation travel expenses and teams of attorneys funded by debtors, and may need to prepare papers at night or on weekends. Thus, time periods like 7 days are too short (*compare* #7154-1-page-14-of-29). Time periods of at least 14 days (plus 7 (see I.B.1) = 21) are the minimum that would be reasonable.

4. To at least begin to level the playing field for pro se participants, who do not enjoy the essentially unlimited litigation funding that FOMB and UCC are allowed,

-3-

transcripts of all proceedings should be posted on Prime Clerk (or the proposed website for participants) as soon as they are prepared and available to the FOMB. Absent taking this step, FOMB and UCC should not be permitted to proceed "in an omnibus fashion."

Currently, transcripts are withheld from public posting for 90 days. Individual bondholders who are appearing pro se to defend against efforts to invalidate their bonds should not be required to incur the expense of ordering transcripts simply to get them at the same time as the FOMB. FOMB presumably regularly orders transcripts and could post them on the website for participants. In a matter where debtors are on track to expend $2+ billion to try to avoid their debt (funding their litigation out of money that should have first been paid to bondholders, see Part II, below), transcripts should be made available on a timely basis to the pro se individuals FOMB is proceeding against. Compensation of court reporters can be prescribed by the court, and paid by debtor, in a fair manner, but any reporter-compensation issues should not be used as an excuse for denying individual respondents a practical means of following, on a timely basis, proceedings that may impact upon them. Individual bondholders from around the country cannot be expected to travel to San Juan to review a transcript at the courthouse. Plus, transcripts are necessary to enable pro se participants to cite to prior proceedings in their filings.

5. To date, there has been only one mailing (which potentially not every beneficial holder received),[3] supplemented by a limited number of notices in publications (largely geared to residents of Puerto Rico, Spanish speakers and institutions). *See* Docket#5143-page-3-to-4-of-4. No notice was published in the *Wall Street Journal* (despite my request, Docket#5103-page-6-of-11). One cannot conclude the prior procedures were "clearly successful" based simply on the fact there were 1670+ timely, and 100+ untimely, Notices of Participation filed (Docket#7154-page-3,11-of-14). FOMB and UCC provide no information as to the total number of challenged bondholders. Now that FOMB and UCC have sought to

---

[3] Simply to illustrate how sending one notice does not ensure that everyone is notified, on May 30, 2019 a paralegal at Paul Hastings sent a notice of the filing of Docket#7154 to a lengthy email list – but I was (presumably inadvertently) omitted.

challenge 2011 bonds, triggering a new need for notice, and it is still early in the process, there is no justification for treating post-April 16, 2019 Notices of Participation as "late" (*see* Docket#7154-page-3-of-14&n.6; #7154-2-page-4-of-13). Anyone who files a Notice of Participation before the new deadline – whether as to 2011, 2012 or 2014 bonds – should be treated as timely. In addition, the notice should expressly advise those who hold 2012 or 2014 bonds that they may still file a Notice of Participation. Providing a second notice to holders of 2012 or 2014 bonds – who may (for whatever reason) not have received the first notice, or who did not appreciate its significance – can be done without any significant additional effort or cost by simply modifying the text of the new notices that are sent. Also, someone who has already filed a Notice of Participation but who fails to file a second Notice of Participation as to additional challenged bonds should be able to participate as to any challenged bonds they hold.

6. FOMB and UCC have edited the 2012-2014 GO Notice for purposes of the proposed 2011 GO Notice by eliminating the words "Challenged" and "Challenged GO Bonds" and substituting new language dealing with "GO Bond *Claims*." (Docket#7154-1-page-11-of-29; #7154-2-page-3-of-13). However, many bondholders who are eligible to file Notices of Participation (because they are beneficial owners) have **not** filed individual *Claims* but instead relied on the Instructions and FAQ that stated that bondholders were not required to file claims.[4] FOMB and UCC now may be suggesting a limitation, to *Claimants*, on who can file a Notice of Participation. Both the Notice and the Revised Procedures Order need to be clear that individual beneficial holders may file a Notice of Participation and defend their entitlement to principal and interest whether or not they previously filed a Proof of Claim.

7. FOMB and UCC suggest that five business days is sufficient additional time to allow Prime Clerk to receive the list of DTC participants whose customers are beneficial holders of 2011 GO Bonds, and provide in the proposed Order for DTC to post to its legal Notifications System within five (5) days of entry of the Order. Docket#7154-page-11&n.14-of-

---

[4] Docket#2521-page-3-to-6-of-15-¶¶5.a,6.i,6.j; "FAQs for Bar Date Notice," p.2, Item 6 (on internet).

14; #7154-1-page-4&5-of-29-¶7,10 (referencing Docket#5049). Realistically, at least three or four weeks should be assumed as the time between the entry of the Order and individual beneficial holders receiving the Notice.[5] And time must be allowed for individuals – who could be in the hospital, on a lengthy vacation or trip, or the like, when the Notice arrives – to review the Notice, consult with any family members or advisors, complete the Notice of Participation, mail it in, and for the mail to then be delivered. The deadline for filing notices of participation should be set at least 80 days after entry of the Court's order, not 60 days (*compare* Docket#7154-1-page-23-of-29 and #7154-1-page-12-of-29). The fact over 100 Notices came in "late" underscores that the previously allowed time periods were not sufficient for many.

8. If Notices of Participation filed by individuals are incomplete or reflect apparent errors (e.g., individuals erroneously indicating a desire to participate as Joint Objectors (Docket#7154-pages-3-to-4-of-14)), that just underscores how confusing the Notice was to many individuals. Steps should be taken to clarify the individuals' intent.

C. **The need to level the playing field**

Contrary to FOMB and UCC's assertions,[6] the involvement of major GO bondholders does **not** protect the interests of individuals with modest holdings. *First*, the major bondholders owe no duty to individual bondholders. Nor do I, for that matter. Both the previously entered procedures order (Docket#5143-2-page-7-of-7), and the proposed Revised Procedures Order (Docket#7154-1-page-16-of-29), are express on this point. *Second*, we have the real life experience of the COFINA plan – where major holders negotiated in secret to receive special benefits – hundreds of millions of dollars – and bought up bonds at depressed prices to control the votes. Many of them profited immensely: based on the data in Rule 2019 filings, it would

---

[5] The COFINA disclosure statement was approved 11/29/2018 (Docket#4382) but I did not receive it until 12/17/2018, about three weeks later. Docket#4585-page-27-to-28-of-43.

[6] *See* Docket#7154-page-9-of-14 ("with the assistance of their counsel, who are from some of the most elite firms, the M&C Parties can adequately represent the interests of 2011 GO Bondholders"); Docket#7154-page-5-of-14 (where FOMB and UCC state that "the parties holding material amounts of the 2011 GO Bonds are already 'at the table'").

appear that major holders profited by hundreds of millions of dollars. By contrast, individual pre-PROMESA purchasers in the 50 states suffered huge losses and were additionally harmed in multiple ways, including damage by means concealed until after the Plan was approved. *See, e.g.*, Docket#7211 and filings referenced therein (#7211-page-5-of-24).

The "game" FOMB and UCC are playing is to (1) begin these invalidation proceedings to create a (contrived) "litigation" risk excuse that can be used in another secret "negotiation" process (like that used in the COFINA situation), or in Plan confirmation, to bolster their efforts to cut some part of the debt, yet (2) (as in the COFINA situation) avoid a legal adjudication, which would reject their assertions. Indeed, FOMB's counsel stated at the June 12, 2019 hearing that negotiations were going on with some parties now – but neither I nor (to my knowledge) other individual bondholders are included. This course of conduct by FOMB and UCC is illegitimate and I object to it. FOMB appears to be on course to repeat the violation of the Due Process and other constitutional rights of individual bondholders that occurred in the COFINA situation. E.g., Docket#7211 and prior filings cited therein (#7211-page-5-of-24).

If the Court is not prepared to appoint a committee to represent bondholders – in particular, individual bondholders who are not represented – and to defend the validity of the bonds, other steps are required to level the playing field. It is not economically practical for individuals to spend significant monies in defense of these proceedings, as would be required even to take the first step of hiring an attorney with access to the Puerto Rico district court electronic filing system. If that attorney did pretty much anything, the cost to an individual would rapidly escalate and eat up much of what that individual realistically has at stake (or more). Travel to appear at court hearings to present evidence or argue would further increase costs to an individual. And even if counsel were hired, any individual realistically is going to be outgunned by FOMB and UCC – whose funding appears essentially unconstrained. Thus, pro se participation is the only method of defense that makes practical, economic sense.

It is grossly inequitable for FOMB and UCC to be spending the debtor's property – which should be paid to the general obligation bondholders who have an "irrevocable pledge"

-7-

and a "first claim" on available Commonwealth resources (*see* Part II, below) – on this litigation to invalidate the bonds. Unless and until debt service is brought current on the GO bonds, FOMB and UCC should not be allowed to fund their litigation expenses out of debtor's assets while those defending the validity are paying out of pocket (or, as a practical matter for individuals, lack an individual stake that makes it feasible to fund an adequate defense).

> **D. Each beneficial holder of bonds being challenged is entitled to actual advance notice and to be given a practical means of participating in *all* proceedings that may affect their rights or interests, including any mediation, settlement or other process that may be incorporated into a Plan or otherwise effectively bind a bondholder**

Each bondholder is entitled to actual advance notice and to be given a practical means of participating in all proceedings before any steps occur with respect to the challenge to the validity of their bonds, including procedural steps.

What transpired in the COFINA situation should not be repeated in the GO situation: major holders negotiating arrangements in secret, that then become a proposed plan that (1) provides hundreds of millions of dollars in benefits to the major institutions that did the negotiating (a number of which actually profited to the tune of tens or hundreds of millions of dollars, as they acquired substantial stakes post-PROMESA at distressed prices), (2) but was severely damaging to individual investors who bought pre-PROMESA. Docket#7211.

Due process and the right of public access to court proceedings, as well as basic fairness, require (i) actual advance notice to, and (ii) a practical means for all bondholders to participate in any mediation, settlement or other process, and that a contemporaneous record be made of the proceedings in any such process, if there is a potential for the results of such process to be incorporated into a Plan or otherwise effectively bind bondholders as the result of a "vote" or otherwise. (I object to a bondholder being bound by a settlement or mediation process in which he or she does not participate or which he or she does not agree to accept as binding.)

I recognize mediation and settlement often occur in an off-the-record confidential process, but that is where the parties whose rights are being affected are represented and agree to

participate. Even in, *e.g.*, class action litigation, the members of the class (i) are represented by attorneys for the class who owe all members of the class fiduciary duties, and (ii) an objecting class member generally – in addition – has the right to opt out of the settlement. Here, however, the proposed revised initial procedures order is express that "No Respondent shall have a duty to any other Respondent" (Docket#7154-1-page-16-of-29).

### E. Failure to timely file a Notice of Participation should not result in the loss of voting rights

Section 2, ¶ 5 [Docket#7154-1-page-12-of-29 ¶3] currently suggests that if one fails to file a Notice of Participation and the Court grants the Objection in whole or in part, one consequence will be the loss of one's vote on any proposed plan of adjustment (e.g., "…claimants will be forever barred …from voting on any plan"); see also the language in the Notice itself at Docket#7154-1-page-23-to-24-of-29.

However, even if someone does not file a Notice of Participation, they should not – by reason of failing to file a Notice of Participation – be barred from **voting** on a plan, if one is proposed, and the order should make this clear. There is no legitimate reason for precluding any bondholders from **voting** on any future Plan, which preclusion could skew the voting to the detriment of other individual bondholders, like me. (Also, for the record, I reiterate my objection to any use of a voting process to abrogate any of my rights.)

### F. Specific objections set out in Docket#5103

I realize I raised the specific objections that follow in Docket#5103, but – particularly in light of the experience to date with the number of late Notices of Participation filed (over 100) and the untold number of individual bondholders who were confused or were not able to figure out how to timely file a Notice of Participation – I believe my previously urged points take on even greater cogency. Moreover, FOMB and UCC, in marking up the prior initial procedures, failed to factor in practical considerations, such as whether it is even remotely feasible to impose on respondents the obligation ("shall") to "cooperate in good faith" with 1770+ other bondholders to file "joint papers". Docket#7154-1-page-15-of-29.

1. <u>**Notice of Objection [Docket#7154-1-page-23-of-29]**</u>: Add after the current ¶ 4 (after full ¶ 1 on 7154-1-page-24-of-29) the following self-contained instructions:

> "**You may file a Notice of Participation in any of several ways:**
>
> **(1) An individual without an attorney, or an attorney not registered to use the Puerto Rico District Court electronic filing system, should email the Notice of Participation to** [NOTE: specify a single email address set up to receive Notices of Participation] **OR mail OR deliver it to: Clerk, United States District Court for the District of Puerto Rico, Room 150 Federal Building, 150 Carlos Chardon Avenue, San Juan, PR 00918-1767.**
>
> **(2) An attorney registered to file electronically on the Puerto Rico District Court electronic filing system should file according to those procedures.**"

Individual bondholders should be given **one** email address to which they can email their Notice of Participation. FOMB and UCC would require individuals reading the Notice of Objection to then turn to a second document (the Notice of Participation) to find instructions for filing, and that second document in turn refers to a provision in a third document (¶ 8 of the Revised Initiation Procedures). That third document lists 13 different FOMB and UCC attorneys, each of whom must be emailed and, in addition, the Notice of Participation must be mailed or delivered to the Court Clerk (7154-1-page-24-of-29-¶1-last sentence; 7154-1-page-29-of-29 (top of page); 7154-1-page-16-of-29 (¶ 8)). There is no legitimate reason for such a confusing, multistep process, and for requiring individuals to email 13 attorneys.

A special email address is already being set up for fielding questions regarding the notice. *See* Docket 7154-1-page-24-of-29. Another special email address could be set up to receive Notices of Participation and other filings by bondholders.

2. <u>**Notice of Participation [7154-1-pages-27-to-29-of-29]**</u>: Self-contained instructions for filing a Notice of Participation should be repeated in this document. An individual should not be required to cross-reference "paragraph 8" in another document, as is currently required (7154-1-page-29-of-29). The instructions could read:

> "**Instructions for filing Notice of Participation:** [Then repeat the instructions set out in I.F.1. above.]

3. **Proposed Order [Docket#7154-1-page-4-of-29]**: Paragraph 8 should include publication in the *Wall Street Journal*, an English language publication read by many individual investors. Few individual retail investors read the *Bond Buyer*, and publications in Puerto Rico and/or in Spanish are unlikely to be seen by most investors in the 50 states.

4. **Revised Initial Procedures [Docket#7154-1-page-10-of-29]**: In addition to conforming changes to reflect the foregoing comments:

a. **Section 1: "Exclusivity of Procedures" [Docket#7154-1-page-11-of-29]**: It is not appropriate to order "exclusive" procedures prior to actual notice being given to bondholders. In addition, Section 1 is not necessary because the procedures are what are described. There is no need to expressly describe them as "exclusive," which could create an unfair obstacle for individuals who may seek relief from the procedures in the future or seek to modify the procedures. Alternatively, at the very least, Section 1 should expressly acknowledge that yet-to-be notified bondholders have a right to seek a modification of the stated procedures.

b. **Section 4.B [Docket#7154-1-page-15-of-29]**: A requirement such as "shall cooperate in good faith to file joint papers" should not be imposed. Instead this could read: "It is requested that parties challenging the validity of GO bonds and respondents use reasonable efforts, to the extent practical, to cooperate to file joint papers."

It is not clear how bondholders are supposed to coordinate with the 1770+ respondents who have to date filed notices of participation, and yet preserve confidentiality and privileges. FOMB and UCC complain about the burdens on them resulting from 1770+ participants, yet FOMB and UCC ignore the practical problems their "cooperate in good faith" requirement ("shall") place on bondholders – including pro se bondholders – who wish to prepare and file papers. I should not have to consult, and share drafts, with 1770+ participants before I file papers. If this requirement were enforced, my constitutional rights would be violated.

-11-

Furthermore, if parties are to be asked to avoid separate briefing, the time periods to allow for coordination with 1770+ participants will need to be significantly longer than they otherwise would need to be. Any attempt to mandate a limit on separate briefing by separately represented parties, or individuals representing themselves, is just not practical in light of the time deadlines that appear to be contemplated.

      c.    **Section 7 [Docket#7154-1-page-16-of-29]**: One could include a paragraph stating that: "Both parties challenging the validity of the GO bonds and bondholders opposing the challenge, reserve all rights as to their potential claims or defenses." However, the one-sided statement that Objectors are not precluded from raising new grounds for objection is not appropriate. There may be time bars or other reasons why additional grounds for objections should be precluded. Bondholders should not lose rights or defenses by virtue of an order concerning initial procedures, particularly an order that has not yet been sent to all affected.

II.    **THE CONTEXT OF THE FOMB-UCC EFFORTS TO INVALIDATE BONDS PURCHASED BY INDIVIDUALS PRE-PROMESA**

FOMB and UCC are engaged in efforts to invalidate billions of dollars of debt, including debt sold pre-PROMESA to individuals throughout the country based on express representations by the Commonwealth, including those described below.

FOMB appears to be proceeding here, as in the COFINA situation, in ways designed to put downward pressure on bond prices (and produce profitable trading opportunities for major institutions), but foist large losses on individuals who bought pre-PROMESA. The price-manipulative impact of FOMB and UCC's challenges is evident from what has happened to the price of GO bonds after some market participants learned of the planned or actual filing of these meritless challenges. 2009, 2011 and 2012 bonds traded at roughly equivalent relative levels on July 1, 2015, after Puerto Rico's Governor announced a purported inability to pay, and for years thereafter. However, around January 2019 – when the invalidation objections began to be filed – the prices of the 2009, 2011 and 2012 bonds began to diverge. By June 12, 2019 the 2009 bonds

-12-

traded at prices about 32% above 2012, and about 9% above 2011. *See* Exhibits A, B, C, and D hereto.

FOMB and UCC should not be permitted to further abuse individual bondholders by bringing contrived legal challenges – which impact on market prices, and are then sought to be "settled", not litigated to conclusion, and are used as an excuse to reduce recoveries for some bondholders in a Plan "negotiation." The abuses that occurred in the COFINA episode (*see* Docket#7211 & filings cited therein) should not be tolerated again.

### A. The Commonwealth's representations when selling bonds

The Commonwealth sold the bonds based on unequivocal covenants and representations to investors. For example, the cover of the 2012A official statement stated in bold type:

> **The good faith, credit and taxing power of the Commonwealth are *irrevocably pledged* for the prompt payment of the principal of and interest on the Bonds. The Constitution of Puerto Rico provides that public debt of the Commonwealth, *which includes the Bonds*, constitutes a *first claim* on available Commonwealth resources.** (italics added; see also page 1 ¶¶ 2,4.)*

Under the header "Security," the Official Statement stated (at pages 12-13):

> *Provision for Payment of Public Debt*
>
> *In accordance with the Act*, the Commonwealth has *pledged* the good faith, credit and taxing power of the Commonwealth for the prompt payment of the principal of and interest on the Bonds. *Pursuant to the Act*, the Bonds constitute general obligations of the Commonwealth, *payable with any funds available to the Commonwealth, which funds are appropriated as continuous appropriations, without the need to make specific appropriations for such purposes.*
>
> *Section 8 of Article VI of the Constitution* of Puerto Rico provides that public debt of the Commonwealth will constitute a *first claim* on available Commonwealth resources. (Emphasis added; see also page 1, ¶ 2).

Under the header "Payment Record," the Official Statement stated on page 14:

> The Commonwealth has never defaulted on the payment of principal of or interest on any of its debt.

---

* Taken from the 2012A Official Statement, which is available on the EMMA website. Type in CUSIP 74514LB63, then click on "Disclosure Documents."

-13-

In the section headed "Debt Limitation," detailed information was provided concerning compliance with the constitutional debt limitation (*e.g.*, pages 14-16). The "Debt Limitation" section evidenced care by Puerto Rico officials and advisers that Puerto Rico not issue debt in excess of the debt limit. Nothing in the Official Statement told potential bondholders that they (the bondholders) were responsible for calculating the limit on what amount of debt Puerto Rico could issue and were at risk of losing their investment if Puerto Rico's calculations were retrospectively claimed or determined to be wrong.

The opinion of bond counsel (Appendix II) stated that "The Act and such proceedings and certifications show *lawful authority for the issuance and sale of the Bonds*, and the Bonds constitute *valid and binding* general obligations of the Commonwealth for the payment of the principal of and the interest on the Bonds, to which the good faith, credit and taxing power of the Commonwealth are *pledged*." (Emphasis added).

The section on "Litigation" (page 21) stated that "there is no litigation of any nature pending or threatened against the Commonwealth … in any way contesting or affecting the validity of the Bonds or any proceedings of the Commonwealth taken with respect to the issuance or sale of the Bonds."

The 2012A bond issue was rated investment grade by all three major rating agencies and over 10 recognized municipal bond underwriters participated. *See* O.S. cover.

**B. FOMB and UCC's debt avoidance gambit flies in the face of U.S. Supreme Court precedent and ignores the wisdom of our Nation's founders**

PROMESA cannot retroactively change the rules for bonds bought pre-PROMESA. For example, the Supreme Court was clear in *United States* v. *Security Industrial Bank*, 459 U.S. 70, 75 (1982)), that "[t]he bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation."

And, as noted, U.S. Supreme Court cases going back to the 1800s make clear that a municipal issuer cannot sell its bonds to the market representing them to be valid and then seek to avoid payment by claiming that its own representations were false. More recently, in

-14-

*United States Trust* v. *New Jersey*, 431 U.S. 1, 26 (1977), the Supreme Court ruled that the repeal of a statutory covenant that protected bondholders violated the Contracts Clause, and that the state's "self-interest" militated against "complete deference to a legislative assessment of reasonableness and necessity," aptly observing that "[a] government entity can always find a use for extra money, especially when taxes do not have to be raised."

Puerto Rico recently *lowered* taxes by $2 billion. Docket#4585-page-37-of-43; #4606-8-page-167-to-170-of-180; #7211-1-pages-25-to-26-of-146. And despite the overspending on literally thousands of "Advertising, Representation or Artistic Services" Contracts, numerous other consultants, Christmas bonuses, and other government excesses (Docket#4585-page-33-to-39-of-43; #4606-3-page-10-to-12-of-13 (and exhibits cited); #4673-page-12-to-13-of-17), the Commonwealth still has over $6.8 billion in its TSA account (apparently not even earning interest for the benefit of the Commonwealth). Exhibit E hereto; Docket#7211-1-pages-26-to-27-of-146.

Alexander Hamilton – one of the principal authors of the Federalist papers urging ratification of the Constitution and our country's first Secretary of the Treasury – offers cogent counsel on the importance of governments honoring their debt:

> If the maintenance of public credit, then, be truly so important, the next enquiry which suggests itself is, by what means it is to be effected? *The ready answer to which question is, by good faith, by a punctual performance of contracts. States, like individuals, who observe their engagements, are respected and trusted:* ***while the reverse is the fate of those, who pursue an opposite conduct.***[7]

Alexander Hamilton's wise words should be heeded.

## Conclusion

FOMB/UCC's request to proceed "on an omnibus basis" (Docket#7154-page-5-of-14) should be denied if measures proposed herein to protect individual bondholders are not adopted.

---

[7] Alexander Hamilton, Sec. Treasury, Report Relative to a Provision for the Support of Public Credit, Jan. 9, 1790, available on Founders Online (emphasis added).

June 15, 2019

                                            Respectfully Submitted,

                                            Peter C. Hein, Pro Se
                                            101 Central Park West, Apt. 14E
                                            New York, NY 10023
                                            petercheinsr@gmail.com