**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

In re:

The FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, et al.,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**FINANCIAL GUARANTY INSURANCE COMPANY'S JOINDER IN AMBAC'S
MOTION CONCERNING APPLICATION OF THE AUTOMATIC STAY TO THE
REVENUES SECURING PRIFA RUM TAX BONDS**

Financial Insurance Guaranty Company ("***FGIC***") joins Ambac Assurance Corporation's *Motion and Memorandum of Law in Support of its Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds*. (Dkt. No. 7176) (the ***"Ambac Motion"***).

1.    The United States Internal Revenue Code imposes a federal excise tax on Puerto Rican rum imports, and mandates that "[a]ll taxes collected under the internal revenue laws of

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "***Commonwealth***") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("***COFINA***") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("***HTA***") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("***ERS***") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("***PREPA***") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (the Commonwealth, COFINA, HTA, ERS and PREPA, each a Debtor and collectively, the "***Debtors***") (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the United States on articles produced in Puerto Rico and transported to the United States . . . or consumed in the island, shall be covered into the treasury of Puerto Rico."[2]

2. The Legislative Assembly of Puerto Rico enacted the Puerto Rico Infrastructure Financing Authority Act, being Act No. 44, adopted June 21, 1988, as amended (the "***Enabling Act***," codified at 3 L.P.R.A. § 1901, *et seq.*) and, thereby, created PRIFA, as a public corporation and instrumentality of the Commonwealth.

3. Beginning with the fiscal year 1988-89 and continuing until fiscal year 2056-57, the Legislative Assembly assigned, appropriated, and pledged to PRIFA certain first proceeds of the federal excise taxes remitted to the Treasury of Puerto Rico (the "***Rum Taxes***").[3] Beginning with fiscal year 2009-10 and continuing each fiscal year through 2056-57, the assigned, appropriated and pledged amount is $117 million.[4] The Legislative Assembly through the Enabling Act mandated that the Treasury cover these Rum Taxes into a special fund maintained by or on behalf of PRIFA (the "***Infrastructure Fund***").[5] This assignment, appropriation, and pledge of the Rum Taxes is mandatory and continuing, except for the express and limited circumstances expressed in the Constitutional Clawback.[6]

4. The Legislative Assembly through the Enabling Act authorized PRIFA to issue bonds "secured by a pledge of all or part of any of its revenues" including the Rum Taxes.[7] "The revenues so pledged, including those subsequently received by the Authority, shall immediately be subject to said lien without the need of the physical delivery thereof or any other act . . . ."[8]

---

[2] 26 U.S.C. § 7652(a)(3).
[3] 3 L.P.R.A. § 1914.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.* § 1907.
[8] *Id.* § 1907(a).

This authorization is by special statute and includes provisions for the creation, perfection, priority, or enforcement of this security.[9]

5. The Legislative Assembly through the Enabling Act covenanted with and pledged to the holders of any bonds issued under the Enabling Act the following:

> The Commonwealth pledges and agrees with the holders of any bonds issued under this chapter and with those persons or entities that enter into contracts with the Authority, pursuant to the provisions hereof, it shall not limit or alter the rights hereby conferred to the Authority until such bonds and interest thereon are paid in full and such contracts are fully performed and honored on the part of the Authority; Provided, however, That nothing provided herein shall affect or alter such limitation if adequate measures are provided by law for the protection of said holders of the Authority's bonds or of those who have entered into such contracts with the Authority. The Authority, as an agent of the Commonwealth, is hereby authorized to include this pledge on behalf of the Commonwealth on such bonds or contracts.[10]

6. The Legislative Assembly through the Enabling Act authorized PRIFA to enter into a trust agreement further securing bondholders, and such trust agreement "shall contain all such provisions as the Authority may deem reasonable and proper for the protection of the bondholders."[11] "Notwithstanding any provision of law to the contrary, said trust agreement need not be constituted pursuant to a public deed in order to be a valid trust under the laws of the Commonwealth."[12] PRIFA entered into a Trust Agreement dated as of October 1, 1988, as amended (the "***Trust Agreement***").

7. The Trust Agreement, § 7.01, states:

> Enforcement of Remedies. At the request of the Holders of not less than twenty percent (20%) of the aggregate principal amount of Bonds then Outstanding, the Trustee shall proceed, subject to the provisions of Section 802 hereof, to protect and enforce its rights and the rights of the Holders under the laws of the

---

[9] *Id*. §§ 1907 (creation, priority, perfection, and enforcement), 1911 (creation and perfection), 1913 (creation, priority, and enforcement), 1914 (creation, priority, and enforcement).
[10] 3 L.P.R.A. § 1913.
[11] *Id*. § 1911.
[12] *Id*.

Commonwealth or under this Agreement, including all rights with respect to funds and other moneys pledged hereunder, by such suits, actions or special proceedings in equity or at law, or by proceedings in the office of any board or officer having jurisdiction, either for the specific performance of any covenant or agreement contained herein or in aid or execution of any power herein granted or for the enforcement of any proper legal or equitable remedy, as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights.

8. PRIFA entered into a certain Resolution, being No. 2005-17, adopted June 2, 2005 (the "*Resolution*").

9. Reliant on the Enabling Act, the Commonwealth's pledges thereunder, the Trust Agreement, and the Resolution, PRIFA issued Special Tax Revenue Bonds (the "*PRIFA Bonds*") and, thereby, contracted with the holders of the PRIFA Bonds (the "*PRIFA Bondholders*"). The provisions and pledges of the Enabling Act, the Trust Agreement, and the Resolution were incorporated into the PRIFA Bonds. The PRIFA Bonds are non-recourse bonds, payable solely from the Rum Taxes.

10. FGIC is a provider of financial guaranty insurance, which is a type of insurance whereby an insurer guarantees scheduled payments of interest and principal as and when due on a bond or other obligation. FGIC insures scheduled principal and interest payments when due on public finance, structured finance and other obligations. Under relevant provisions of the applicable bond documents, bond insurance policies, insurance agreements, and applicable law, FGIC is afforded certain rights with respect to the obligations it insures and is treated as the holder of the bonds it insures. In addition, payment by FGIC under a policy neither satisfies nor discharges an issuer's obligation to pay and, to the extent FGIC makes such payments, it obtains assignments of rights from the bondholders, becomes owner of the bonds, and/or becomes subrogated to the rights of bondholders and effectively steps into the shoes of such bondholders.

11. FGIC insured the payment of principal of and interest on approximately $357 million in principal amount of the PRIFA Bonds pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 05010416 (the "**PRIFA Insurance Policy**").

12. Under the PRIFA Insurance Policy FGIC is deemed to be the sole owner of the PRIFA Bonds that FGIC insures for purposes of, or otherwise has control rights over, consents and other bondholder actions, including exercising rights and remedies of PRIFA Bondholders. FGIC is also recognized as a third-party beneficiary under the Resolution.

13. For the reasons stated in the Ambac Motion, FGIC asserts that the automatic stay does not apply to either the U.S. Treasury Action or the PRIFA Clawback Action.[13] To the extent, however, that the automatic stay applies to such actions, FGIC seeks relief from the automatic stay to (i) intervene as a plaintiff with Ambac in the U.S. Treasury Action and (ii) join with Ambac in pursuit of the PRIFA Clawback Action.

14. The Ambac Motion has legal merit and the support of a majority in amount of the PRIFA Bonds. By filing this joinder, FGIC does not seek or intend a delay in the scheduling of the Ambac Motion. FGIC will abide by the scheduling orders and briefing schedules that have already been set by the Court. FGIC does not anticipate the need for additional discovery beyond that requested by Ambac and will abide by any agreements made by Ambac related to discovery.

WHEREFORE, FGIC respectfully requests the following relief:

(i) The Ambac Motion and this Joinder be granted;

(ii) The Court modify the automatic stay, to the extent applicable, to permit FGIC, Ambac, and similarly situated PRIFA Bondholders and their representatives to pursue the U.S. Treasury Action and the PRIFA Clawback Action; and

---

[13] Initially capitalized terms not defined herein shall have the meanings ascribed to them in the Ambac Motion.

(iii) The Court grant any additional or alternative relief that furthers equity and justice and is appropriate under the law and circumstances of the case.

Dated: June 21, 2019

    Respectfully submitted,

    REXACH & PICÓ, CSP

    By: */s/ Marie E. Picó*
    María E. Picó
    USDC-PR 123214
    802 Ave. Fernández Juncos
    San Juan PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    E-mail: mpico@rexachpico.com

    BUTLER SNOW LLP

    By: */s/ Martin A. Sosland*
    Martin A. Sosland 5430 LBJ Freeway, Suite 1200
    Dallas, TX 75240
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    E-mail: martin.sosland@butlersnow.com
    *Admitted pro hac vice in Case No. 17-BK-03283-LTS and Case No. 17-BK-03567-LTS*

    Jason W. Callen
    150 3rd Ave., S., Suite 1600
    Nashville, TN 37201
    jason.callen@butlersnow.com
    Telephone: 615-651-6774
    Facsimile: 615-651-6701
    *Admitted pro hac vice in Case No. 17-BK-03283-LTS and Case No. 17-BK-03567-LTS*

    *Attorneys for Financial Guaranty Insurance Company*

48073562.v1