# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>    Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor | Case No. 17 BK 4780-LTS |

**OBJECTION OF ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. TO THE URGENT JOINT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, PURSUANT TO BANKRUPTCY CODE SECTION 926(A), AUTHORIZING COMMITTEE TO PURSUE CERTAIN AVOIDANCE ACTIONS ON BEHALF OF <u>PUERTO RICO ELECTRIC POWER AUTHORITY</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

OBJECTION ..................................................................................................................................4

    I.      The Committee's Motion Is Moot And Improperly Motivated ..............................4

    II.     Section 926(a) Does Not Authorize Appointment Of A Trustee Here ....................5

          A.      FOMB Has Not Refused To Pursue Lien Avoidance Actions ....................6

          B.      The Motion Does Not Adequately Describe Whether the Actions
Are Actually Avoidance Actions ................................................................8

    III.    The Motion Fails to Satisfy Additional Conditions Established by This
Court for the Appointment of a Section 926 Trustee............................................10

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

*In re Adelphia Comm'cns Corp.*,
   330 B.R. 364 (Bankr. S.D.N.Y. 2005), ..................................................................................10

*In re Caesars Entertainment Operating Company*,
   561 B.R. 457 (Bankr. N.D. Ill. 2016) ................................................................................11, 12

*In re Financial Oversight and Mgmt. Bd. for Puerto Rico*,
   914 F.3d 694 (1st Cir. 2019) ....................................................................................................9

*In re New York City Off-Track Betting Corp.*,
   2011 WL 309594 (Bankr. S.D.N.Y. Jan. 25, 2011) ...............................................................10

*In re Sabine Oil and Gas*,
   547 B.R. 503 (Bankr. S.D.N.Y. 2016) ..............................................................................11, 12

*In re Yasin*,
   179 B.R. 43 (Bankr. S.D.N.Y. 1995) .......................................................................................8

*Matter of North and South Shenango Joint Mun. Auth.*,
   14 B.R. 414 (Bankr. W.D. Pa. 1981), rev'd on other grounds 80 B.R. 57 (W.D. Pa.
   1982) ........................................................................................................................................8

**STATUTES:**

11 U.S.C § 926(a) ...........................................................................................................................5, 6

11 U.S.C. § 101(10) ............................................................................................................................5

**OTHER AUTHORITIES:**

David S. Kupetz, *Municipal Debt Adjustment Under the Bankruptcy Code*, 27 Urb. Law.
   531 (1995) ................................................................................................................................8

*Refusal,* Black's Law Dictionary, (10th ed. 2014) .........................................................................7

S. Rep. 95-989, Bankruptcy Reform Act of 1978 .........................................................................7

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. ("Assured") hereby submit this objection to the *Urgent Motion of the Official Committee of Unsecured Creditors For Order, Pursuant to Section 926(a), Authorizing Committee to Pursue Avoidance Actions on Behalf of Puerto Rico Electric Power Authority*, Case No. 17-04780-LTS, Dkt. No. 1354 (the "Motion"). In support hereof, Assured respectfully states as follows:

## PRELIMINARY STATEMENT[2]

The Committee's continued pursuit of the Motion despite the resolution offered by the Government Parties should be seen in its true light – a legally unsupportable attempt to collaterally attack the Rule 9019 motion concerning the PREPA restructuring support agreement (the "RSA") and to usurp the Government Parties' control over PREPA lien challenge causes of action. Last month, the Government Parties and major PREPA creditors announced the RSA, which would ultimately reduce PREPA's indebtedness, put an end to contentious litigation that has plagued this Title III case, and thereby allow PREPA to dedicate its time and resources towards transformation and a pathway out of bankruptcy. Since the filing of the 9019 motion, the RSA has garnered the support of holders and insurers that hold or otherwise control over 70 percent of the outstanding principal amount of PREPA's bonds. The RSA makes clear that the Government Parties are to control the exercise of any lien avoidance actions in PREPA's Title III case. The Government Parties have offered to the Committee a rational and reasonable solution to resolve this Motion. Assured understands that FOMB indicated to the Committee that it would consider a joint prosecution arrangement with AAFAF being named as co-plaintiff and co-trustee

---

[2] References to "Dkt. No." herein shall refer to docket entries within the Commonwealth's main Title III case, unless otherwise indicated herein. References to "FOMB" shall refer to the Financial Oversight and Management Board for Puerto Rico. References to the "Committee" refer to the Official Committee of Unsecured Creditors. Finally, references to "Government Parties" shall refer collectively to AAFAF, FOMB, and PREPA.

concerning any PREPA-related lien avoidance actions that are not covered by any tolling agreement. Assured also understands from the Government Parties that the Committee rejected FOMB's proposed alternative offhand. The Committee should withdraw the Motion. Given FOMB's proposed alternative, which conforms to the provisions of the RSA, the Motion should be denied as an improper back-door attempt to de-rail the 9019 motion and approval and implementation of the PREPA RSA.[3]

Moreover, the Motion itself fails to establish why a trustee should be appointed here. First, section 926(a) requires that FOMB refuse to pursue avoidance actions before any motion to appoint a trustee may be filed. **The Motion admits that the FOMB has indicated that it will pursue these causes of action in the absence of a tolling agreement**. Motion ¶¶ 2, 3, 6. That admission alone requires denial of the Motion. The Committee claims that pursuit of such action by the FOMB on its own is tantamount to refusal in light of the *Aurelius* decision, which would result in the loss of what the Committee claims are valuable causes of action. Not so. FOMB has already made clear it will commence lien avoidance actions in the absence of a tolling agreement, and it proposed to the Committee the appointment of AAFAF as co-trustee and co-plaintiff as an alternative to the Committee serving as trustee. The Committee's apparent lack of satisfaction with AAFAF's appointment as co-trustee signals that this Motion has nothing to do

---

[3] This is now at least the fourth time the Committee has filed a substantive motion on an urgent basis, leaving creditors and parties in interest with minimal amounts of time to respond. At the April 18th hearing, this Court warned the Committee about further last minute filings. *See* Transcript, Apr. 18, 2019 Hrg, Dkt. No. 6490, at 60:12-16 ("I will not expect if the HTA date is like the 21st or something like that….better not come sidling up to me on the 16th or 17th or the 18th or even the 11th. Mr. Despins you are put on notice."). This Court also warned against further urgent motion practice at the last omnibus hearing. Transcript, June 12, 2019 Hrg., Dkt. No. 7443, at 7-8; *see id.* 58: 11-20 ("There's no good reason to have to deal with procedural issues like this on the fly."). The alleged urgency here is of the Committee's own creation. The Committee has long known about the July 1 statute of limitations. Moreover, section 3(i) of the RSA (limiting PREPA lien challenges to be brought only by the Government Parties) was part of the RSA filed on the docket over a month ago. To the extent any issue existed, it did not have to be raised through an urgent motion.

with the *Aurelius* decision, and is nothing more than a ploy by the Committee to usurp the Government Parties' exclusive control over the causes of action that belong to PREPA as required by the RSA.

Additionally, Assured submits that the claims that the Committee wishes to pursue as trustee are not actually avoidance actions. Section 926 of the Bankruptcy Code provides for the appointment of a trustee only to pursue avoidance actions pursuant to sections 544 through 549 of the Bankruptcy Code. Section 926 does not permit the appointment of a trustee for other actions. The Committee's legal objections—as demonstrated by the objection that it filed to the monoline insurers' lift stay motion—deals with the scope of liens, not lien avoidance. *See* Case No. 17-04780-LTS, Dkt. No. 1151; s*ee also* Motion at n. 9. As the complaints that have been filed by FOMB related to HTA and the Commonwealth demonstrate, these claims do not arise under the avoidance powers of chapter 5 of the Bankruptcy Code, but rather go to the extent of the asserted liens, and thus arise under section 502 of the Bankruptcy Code.

Finally, a motion under section 926 must satisfy at least two additional requirements: the committee must (i) present colorable claims for relief "that, on appropriate proof, would support a recovery," and (ii) show that "the Oversight Board unjustifiably failed to bring suit." Transcript, Apr. 24, 2019 Hrg., Dkt. No. 6538, at 161:12-17. The Motion fails to meet both of these conditions. The Motion does not attach any complaints that would demonstrate whether the claims are colorable; moreover, the Motion concedes that the FOMB has not unjustifiably failed to bring suit. The Motion must be denied for its failure to meet the requirements of section 926.

**OBJECTION**

I. **The Committee's Motion Is Moot And Improperly Motivated**

1. The Motion is premised on what the Committee calls the "*Aurelius* problem." *See* Motion ¶¶ 3-7, 22. It claims that the FOMB's decision not to appoint the Committee as "co-trustee" somehow risks a forfeiture of certain causes of action belonging to PREPA. That is simply untrue. As the Committee itself acknowledges in the Motion, the FOMB's decision to exclude the Committee as a co-plaintiff in any PREPA lien avoidance actions was evidenced in the section 3(i) of the RSA and proposed 9019 order, which plainly stated that only the Government Parties would have standing to pursue any lien avoidance actions. Those documents have been on the docket now for over a month. The Committee's sudden (and purportedly "urgent") Motion and its refusal to withdraw the Motion is particularly suspect.

2. The Committee is an anticipated objector to the pending Rule 9019 motion and apparently is motivated to take action that it believes would create obstacles for the RSA. FOMB has exercised its sound judgment—in light of the pending 9019 motion—by offering to the Committee that it would consider appointing AAFAF as co-plaintiff and co-trustee in any potential PREPA lien avoidance actions. This decision was made in accordance with section 3(i) of the RSA, which provides that "no person or entity…other than the Government Parties shall have standing or otherwise be permitted to bring a Lien Challenge." It also conforms to section 3(e) of the RSA, which sets forth the circumstances when the Government Parties may bring a lien avoidance action. This provision reflects the Government Parties' decision to maintain exclusive control over the settlement and the claims subject to that settlement. And it reflects the Government Parties' careful decision to provide PREPA with a pathway out of bankruptcy, with the RSA playing an important role in that process.

-4-

3. Assured understands that FOMB had communicated to the Committee that it would consider appointing AAFAF as a co-plaintiff and co-trustee with respect to PREPA lien challenges. Such an alternative would arguably remove any potential impact of any purported *Aurelius* problem; yet, the Committee refused to accept this resolution and withdraw the Motion. The only solution from the Committee's perspective, is a solution that contradicts the RSA. Such refusal to recognize that the purported basis for its Motion has been alleviated, calls into question the motivation behind the Motion. There is no need to force actions contrary to the provisions of the negotiated RSA. The Motion is moot, should have been withdrawn, and should be denied based on the FOMB's proposed reasonable alternative.

## II. Section 926(a) Does Not Authorize Appointment Of A Trustee Here

4. The Motion also seeks relief that is without statutory basis and therefore cannot be granted. This Court previously held "that absent the express consent of the Oversight Board, PROMESA's statutory framework does not allow the Court to grant derivative standing to a third party to bring actions that are not expressly enumerated under Section 926 of the Bankruptcy Code." *See* Transcript, Apr. 24, 2019 Hrg., Dkt. No. 6538, 160-61. Thus, absent satisfaction of all of section 926's requirements, the Motion must be denied.

5. Section 926(a) of the Bankruptcy Code provides:

> If a debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a) or 550 of this title, then on request of a creditor, the court may appoint a trustee to pursue such cause of action.

11 U.S.C § 926(a). By its plain terms, there are three conditions to section 926 that must be satisfied: (i) the debtor must refuse to pursue certain causes of action, (ii) the request for a trustee must be made by a creditor, and (iii) the trustee may only pursue avoidance causes of action (*i.e.*

those arising under sections 544, 545, 547, 548, 549(a), or 550). Based on the record before this Court, at least two of the statute's plain requirements are not satisfied here.[4]

### A. FOMB Has Not Refused To Pursue Lien Avoidance Actions

6. Section 926(a) allows for appointment of a trustee only "[i]f the debtor <u>refuses to pursue</u> a cause of action under section 544, 545, 547, 548, 549(a) or 550 of" the Bankruptcy Code. 11 U.S.C. § 926(a)(emphasis added). The Motion concedes: the "Committee is informed that the Oversight Board will bring the Lien Challenges against those PREPA bondholders and insurers that have not entered into tolling agreements." Motion ¶ 6; *see also* Motion ¶¶ 2, 3. The Committee is apparently upset because the "Oversight Board is refusing to include the Committee as a co-plaintiff to prosecute these actions." *Id.* ¶ 6. Having conceded that the Oversight Board has not actually refused to commence lien avoidance actions, there is no statutory basis to appoint a trustee and therefore the Motion should be denied. This is especially so given that FOMB had indicated to the Committee that it would instead consider AAFAF as co-trustee and co-plaintiff, which arguably would avoid any *Aurelius* issues.

7. Section 926(a)'s requirement of a "refusal" cannot be disputed. In addition to the plain language of the statute, the Senate Report to the 1978 amendments underscored that section 926(a) of the Bankruptcy Code would only apply where the debtor had actually refused to pursue particular actions:

---

[4] Section 926(a) requires a request by a creditor of PREPA for the appointment of a trustee. A serious question exists over whether the Committee is a creditor. 11 U.S.C. § 101(10). As Assured noted in its motion to compel the Committee's compliance with Bankruptcy Rule 2019, certain members of the Committee have seen their asserted claims against PREPA decrease precipitously during the Title III cases. Moreover, as this Court recently held, the Committee's Rule 2019 statements were non-compliant and the Committee is required to update its Rule 2019 disclosures by June 27th, the day before this Motion is to be heard. That updated disclosure will, if compliant, more completely describe the disclosable economic interests of the Committee's members. *See* Dkt. No. 7256. In light of that June 27 deadline, Assured reserves the right to, upon review of such supplemental verified statement, interpose an additional objection that the members of the Committee are not creditors of PREPA and are thus ineligible to move for the appointment a trustee under section 926.

> This section adopts current section 85(h) which provides for a trustee to be appointed for the purpose of pursuing an action under an avoiding power, **if the debtor refuses to do so.** This section is necessary because a municipality might, by reason of political pressure or desire for future good relations with a particular creditor or class of creditors, make payments to such creditors in the days preceding the petition to the detriment of all other creditors. No change in the elected officials of such city would automatically occur upon filing of the petition, and it might be very awkward for those same officials to turn around and demand the return of payments following the filing of the petition. ***Hence, the need for a trustee for such purpose.***

S. Rep. 95-989, Bankruptcy Reform Act of 1978, at 111 (emphasis added).

8. Section 926(a) uses the word "refuses", which absent a specific statutory definition must be interpreted in accordance with the word's common, ordinary meaning. Black's Law Dictionary defines "refusal" as "the denial or rejection of something offered or demanded." *Refusal,* Black's Law Dictionary, (10th ed. 2014). This definition clearly does not apply to the situation at hand, where the Motion admits that FOMB will commence lien avoidance actions in the absence of a tolling agreement (Motion ¶ 6) and where FOMB communicated to the Committee that it would consider seeking appointment of AAFAF as co-trustee and plaintiff in lien avoidance actions. The Committee may be upset that it was not chosen to be a co-trustee, but that does not qualify as an effective refusal here.

9. The absence of a refusal here stands in contrast with the refusal by FOMB to pursue particular causes of action in connection with the Committee's section 926 motion with respect to the stipulation concerning Commonwealth related adversary proceedings. This was underscored in the original version of the Commonwealth Stipulation, which stated:

> During the meet and confer process with respect to the joint prosecution of claims and causes of action of the Commonwealth and the allocation of litigation responsibilities, the Committee requested that the Oversight Board pursue Commonwealth claims or causes of action (the "Additional Claims"), in addition to those to be asserted by the Oversight Board or the Special Claims Committee, related to or with respect to the offerings of the

> Commonwealth's GO bonds, PBA bonds, and ERS bonds against the Financial Party Targets, including on theories of fraudulent transfer, fraud, breach of fiduciary duty, and/or deepening insolvency. **The Special Claims Committee declined to assert the Additional Claims.**

*See* Dkt. No. 6305-1 ¶ 18 (emphasis added). In accordance with that paragraph of that stipulation, the Committee then filed a motion pursuant to section 926 seeking to pursue such claims. Section 926 applied there because FOMB had plainly refused to pursue certain causes of action, although the Committee lacked standing to bring the motion and the claims subject to that motion were not exclusively avoidance actions. This Court properly denied that motion.

      **B.    The Motion Does Not Adequately Describe Whether the Actions Are Actually Avoidance Actions**

    10.    Section 926 only authorizes the pursuit of the claims colloquially referred to as avoidance actions, as specified in sections 544, 545, 547, 548, 549(a) or 550. *See Matter of North and South Shenango Joint Mun. Auth.*, 14 B.R. 414, 420 (Bankr. W.D. Pa. 1981), *rev'd on other grounds* 80 B.R. 57 (W.D. Pa. 1982) (noting that trustees generally cannot be appointed in municipal bankruptcy cases "except to take appropriate action to avoid fraudulent and preferential transfers if the debtor fails to do so"); *In re Yasin*, 179 B.R. 43, 48 n.6 (Bankr. S.D.N.Y. 1995) ("In chapter 9, the court can appoint a trustee solely for the purpose of bringing certain avoiding actions. The chapter 9 trustee can neither assume nor reject unexpired leases or executory contracts or be compelled to do so; only the debtor can."). Indeed, **"this is the complete extent of the court's authority to appoint a trustee in a chapter 9 case."** David S. Kupetz, *Municipal Debt Adjustment Under the Bankruptcy Code*, 27 Urb. Law. 531, 571 (1995) (emphasis added). Section 926 therefore provides for a closed list of actions for which a trustee may be appointed.

    11.    The "lien challenges" described within the Motion and in the UCC's prior filings do not appear to be actions arising under section 544 through 549, and therefore fall outside of the scope of section 926(a) of the Bankruptcy Code. Notably, the Committee defines the "Lien

-8-

Challenge" it wants authority to bring as Trustee to include "causes of action to challenge the liens and claims related to the PREPA bonds." Motion ¶ 2. It then goes on to describe such actions as largely pertaining to the scope of the bondholders' lien, including specifically its contention that the bonds are secured only by certain net revenues and its contention that section 928 of the Bankruptcy Code only permits attachment of liens to monies in the possession of the bond trustee. Motion, p. 4, footnote 9. Attachment of liens or issues as to the extent of a lien are not the same as avoidance of a lien. Avoidance of liens under section 544(a) is permitted only if a lien is unperfected and only if under state law a hypothetical judicial lien creditor could exist. *See In re Financial Oversight and Mgmt. Bd. for Puerto Rico*, 914 F.3d 694, 719 (1st Cir. 2019) (expressly declining to address FOMB's arguments concerning section 544 because avoidance is only permitted for unperfected security interests).

12. The Committee's intended claims appear largely to pertain to scope of liens and would seek their disallowance in whole or in part under section 502 of the Bankruptcy Code. Such actions are outside the scope of permitted actions under Section 926. Because there is no record demonstrating that the actions that the Committee wishes to pursue are purely avoidance actions, and the Committee's own statements in the Motion indicate otherwise, the Motion must be denied.[5]

---

[5] The Committee has also shown a tendency to, when appointed as section 926 trustee, improperly expand the bounds of its authority to bring actions. For example, following the entry of this Court's so-ordered approval of a stipulation concerning HTA, the Committee filed a complaint under its alleged role as section 926 trustee, which sought declarations regarding the scope of bondholders' security interests and disallowance of such interests under sections 502 and 552(a) of the Bankruptcy Code. *See, e.g.*, Case No. 17-03567-LTS, Dkt. No. 562, Prayer For Relief A, B, I, J, K. These complaints even seek declarations regarding preemption of Commonwealth laws. *See id.* Similarly, the Committee has purported to file, in its capacity as a would-be section 926 trustee, a series of complaints that seek declaratory relief with respect to the liens securing the Commonwealth's general obligation bonds. *See, e.g.*, Adv. Proc. No. 19-291-LTS, Dkt. No. 1, Prayer For Relief A, B, D, F, G, I, J. Section 926(a) does not authorize the appointment of trustees to pursue these types of declaratory judgment actions, which do not arise under sections 544-550.

### III. The Motion Fails to Satisfy Additional Conditions Established by This Court for the Appointment of a Section 926 Trustee

13. In addition to the plain language requirements of section 926(a) of the Bankruptcy Code, the Motion fails to meet important additional criteria for the appointment of a trustee under section 926—particularly without FOMB's consent. As this Court recognized, appointment of a trustee under section 926 should not be permitted as a bargaining chip for parties in interest in negotiations over a plan of adjustment, "and the process should not be taken out of the debtor's hands by the appointment of a trustee to upset the delicate balance among competing interests that must be preserved for successful plan negotiation, formulation and solicitation." Transcript, Apr. 24, 2019 Hrg., Dkt. No. 6538, at 162:7-14. "Courts should be loathe to appoint a trustee given that the court's limited powers in a chapter 9 case are best understood as operating within the context of constitutional and federalism concerns." *In re New York City Off-Track Betting Corp.*, 2011 WL 309594, at *1 (Bankr. S.D.N.Y. Jan. 25, 2011).

14. Recognizing these limiting principles, this Court found that a movant under section 926 must make two additional demonstrations, which generally are derived from the standards for non-consensual derivative standing in chapter 11 cases. The Motion fails to demonstrate that either requirement is satisfied. First, this Court found that a movant under section 926 must present colorable claims for relief that on appropriate proof would support a recovery. *Id.* at 161:12-17. The Motion fails to meet this first requirement. Indeed, the Motion does not even attach a complaint (which would be expected for any motion seeking non-consensual derivative standing) or even contain an adequate description of such claims. *Compare* Motion (attaching no complaint and failing to describe the causes of action to be pursued by the Committee) *with In re Adelphia Comm'cns Corp.*, 330 B.R. 364, 377 (Bankr. S.D.N.Y. 2005) (noting that committee had put forth "an extraordinarily detailed complaint"). At best, the Motion

-10-

contains bald descriptions of possible arguments set forth in prior motion papers without authority or factual support. *See* Motion, ¶¶ 2, 6 n. 9, 8 n. 12.

15. Second, the Motion must establish not only the refusal to bring suit, but that FOMB "<u>unjustifiably</u> failed to bring suit." Transcript, Apr. 24, 2019 Hrg., Dkt. No. 6538, at 161:15-17 (emphasis added). A creditor "must demonstrate that in refusing to pursue the claim, the debtor in possession is shirking its responsibilities to the estate" and the "creditor seeking derivative standing therefore bears the initial burden to allege facts showing that the refusal to file is unjustified." *In re Caesars Entertainment Operating Company*, 561 B.R. 457, 468 (Bankr. N.D. Ill. 2016). Refusal may be justified if the proposed litigation would "delay resolution of the reorganization proceeding by impeding approval of the pending plan of reorganization." *In re Sabine Oil and Gas*, 547 B.R. 503, 516 (Bankr. S.D.N.Y. 2016) (denying motion for derivative standing by official committee where lien avoidance claims would be fact intensive, would foist unnecessary legal expenses onto the estate, and would impair the debtors' reorganization).

16. *Caesars* is instructive on this point. In *Caesars*, an official committee moved for derivative standing to pursue certain lien avoidance actions against first lien lenders. The court held that the committee had failed to establish a record demonstrating that the debtor unjustifiably refused to pursue such actions. Among other things, the court held that refusal to pursue such claims was justified because the debtors favored "resolving the claims through a comprehensive plan of reorganization" and the avoidance actions that committee desired to prosecute would "stymie those efforts." *Caesars*, 561 B.R. at 469. The court found that the "debtors' decision to forego pursuing the claims in favor of settling them through a plan is a reasonable exercise of the debtors' judgment." *Id.*

17. Here, there is no refusal, and thus, the Motion must be denied in its entirety. But even if FOMB's actions could be characterized as a refusal (and they should not), FOMB's

-11-

actions are entirely justified. FOMB has exercised its sound judgment—in light of the pending 9019 motion—to offer to the Committee its considered appointment of AAFAF as co-plaintiff and co-trustee to preserve any potential lien avoidance actions absent any tolling agreements. This decision would conform with sections 3(e) and 3(i) of the RSA, which, among other things, provide that "no person or entity…other than the Government Parties shall have standing or otherwise be permitted to bring a Lien Challenge." This provision reflects the Government Parties' rational and justifiable decision to maintain exclusive control over the settlement and the claims subject to that settlement. Given that FOMB offered naming AAFAF as co-trustee and given that the Committee admits FOMB will bring lien avoidance actions in the absence of a tolling agreement, there is no refusal here—let alone an unjustified refusal.

18. Moreover, as this Court has found, when examining whether a refusal to litigate is justifiable, courts look at the "costs and risks to the estate and the ability to recover proceeds." *Id.* 161:18-22. This requires a demonstration by the Committee of the value of its claims, or how much it would cost to pursue such claims. *See Caesars*, 561 B.R. at 469 (denying motion for derivative standing where official committee failed to provide a rough estimate of the cost of its proposed litigation); *In re Sabine Oil and Gas*, 547 B.R. 503 (Bankr. S.D.N.Y. 2016) (denying motion for derivative standing where benefits yielded from litigation would be outweighed by litigation expenses). The conclusory statements in the Motion fail to make such a demonstration. Much like its prior motion under section 926 of the Bankruptcy Code, the Committee's offered analysis within the Motion fails to demonstrate "that the potential ability to recover proceeds outweighs the costs and risks to the debtor in the context of these complex Title III restructuring proceedings." *Id.* at 162: 15-24. Indeed, the Committee offered no analysis at all as to the cost of its proposed litigation, the impact that it would have on PREPA's proposed transformation, and whether the proposed litigation would in any way offset those costs. Because

-12-

the Motion failed to make such a demonstration, the standards under section 926 have not been satisfied and the Motion should be denied.

## **CONCLUSION**

19. The Motion fails to satisfy the required standards under section 926 and is nothing more than a transparent attempt by the Committee to collaterally attack the RSA. It is improperly motivated and should have been withdrawn as moot upon the Committee learning that the FOMB offered appointing AAFAF as co-trustee. For each of these separate reasons, Motion should be denied.

Dated:  June 21, 2019
New York, New York

| CASELLAS ALCOVER & BURGOS P.S.C. | CADWALADER, WICKERSHAM & TAFT LLP |
|---|---|
| /s/ *Heriberto Burgos Pérez* | /s/ *Howard R. Hawkins, Jr.* |
| Heriberto Burgos Pérez | Howard R. Hawkins, Jr.* |
| USDC-PR No. 204,809 | Mark C. Ellenberg* |
| Ricardo F. Casellas-Sánchez | William Natbony* |
| USDC-PR No. 203,114 | Ellen M. Halstead* |
| Diana Pérez-Seda | Thomas J. Curtin* |
| USDC–PR No. 232,014 | Casey J. Servais* |
| E-mail: hburgos@cabprlaw.com | 200 Liberty Street |
| rcasellas@cabprlaw.com | New York, New York 10281 |
| dperez@cabprlaw.com | Tel.: (212) 504-6000 |
|  | Fax: (212) 406-6666 |
| P.O. Box 364924 | Email:  howard.hawkins@cwt.com |
| San Juan, PR 00936-4924 | mark.ellenberg@cwt.com |
| Tel.: (787) 756-1400 | bill.natbony @cwt.com |
| Fax: (787) 756-1401 | ellen.halstead@cwt.com |
|  | thomas.curtin@cwt.com |
| *Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | casey.servais@cwt.com |
|  | * admitted pro hac vice |
|  | *Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

## CERTIFICATE OF SERVICE

      I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, 21st day of June, 2019

                              By: */s/ Howard R. Hawkins, Jr*
                                  Howard R. Hawkins, Jr.*
                                  * Admitted pro hac vice