# GROUP EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>         Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>         Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS |

## OBJECTION OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO TO THE ERS BONDHOLDERS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these jointly-administered PROMESA Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686).

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

ARGUMENT .........................................................................................................................4

    I.     This Court Is The Appropriate Forum In Which To Determine Competing
          Interests To ERS's Assets And That Process Provides Sufficient Protection To
          The Bondholders That Their Alleged Liens Will Be Adjudicated. ...............................4

    II.    The Bondholders Are Not Entitled To Additional Adequate Protection
          Payments. .......................................................................................................................5

    III.   There Is No Provision Of PROMESA Which Would Require The
          Commonwealth To Make Adequate Protection Payments To The Bondholders
          Who Are Not Creditors Of The Commonwealth And Do Not Have Any
          Interest In Any Commonwealth Assets. .......................................................................9

CONCLUSION ....................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Bennett Funding Group, Inc.*,
  255 B.R. 616 (N.D.N.Y. 2000) ................................................................................9

*In re Cont'l Airlines, Inc.*,
  154 B.R. 176 (Bankr. D. Del. 1993) ....................................................................6, 8

*In re Elliot Leases Cars, Inc.*,
  20 B.R. 893 (Bankr. D.R.I. 1982) ...........................................................................6

*In re Ionosphere Clubs, Inc.*,
  922 F.2d 984 (2d Cir. 1990) ....................................................................................5

*In re Maxon Engineering Services, Inc.*,
  332 B.R. 495 (Bankr. D.P.R. 2005) .........................................................................9

*In re Mullen*,
  172 B.R. 473 (Bankr. D. Mass. 1994) .................................................................6, 8

*In re P.J. Clarke's Restaurant Corp.*,
  265 B.R. 392 (Bankr. S.D.N.Y. 2001) .....................................................................5

*In re Planned Sys., Inc.*,
  78 B.R. 852 (Bankr. S.D. Ohio 1987) ......................................................................6

*In re Reliance Group Holdings, Inc.*,
  273 B.R. 374 (Bankr. E.D. Pa. 2002) ......................................................................5

*In re Smithfield Estates, Inc.*,
  48 B.R. 910 (Bankr. D.R.I. 1985) ....................................................................5, 6, 9

*In re Wheeler*,
  12 B.R. 908 (Bankr. D. Mass. 1981) .......................................................................5

*In re Windsor Hotel, LLC*,
  295 B.R. 307 (Bankr. C.D. Ill. 2003) ......................................................................6

*Matter of Celotex Corp.*,
  152 B.R. 667 (Bankr. M.D. Fla. 1993) ....................................................................5

*Peaje Investments LLC v. Garcia-Padilla*,
  845 F.3d 505 (1st Cir. 2017) ....................................................................................5

Case 1:17-02283-LTS Doc#7554 Filed 07/10/18 Entered 07/10/18 16:05:19 Desc Main Exhibit A Page 5 of 15

*Suntrust Bank v. Den-Mark Constr., Inc.*,
  406 B.R. 683 (E.D.N.C. 2009)..................................................................................................6

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
  484 U.S. 365 (1988)........................................................................................................6, 8

**STATUTES**

11 U.S.C. §361 ......................................................................................................2, 6, 8, 9

48 U.S.C. §2161 ...............................................................................................................2

Act of May 15, 1951, No. 447, as amended……………………………………………..…3, 4

Act of February 16, 1990, No. 1………………………………..…………..…….....3, 4

Act of September 24, 1999, No. 305 …………….……………...............................................3

Act of April 4, 2013, No. 3 …………………..….……………………………………….…3, 4

Case:17-03283-LTS Doc#:3468 Filed:07/10/18 Entered:07/10/18 16:05:19 Desc: Main Exhibit A Page 6 of 15

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") hereby objects (the "**Objection**") to the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [Dkt. No. 3418] (the "**Motion**") filed by certain holders of bonds (the "**Bondholders**") issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**"), and states:

## INTRODUCTION

The Retiree Committee adopts the arguments contained in the *Debtor's Opposition to Motion of Certain Secured Claimholders of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from the Automatic Stay* (Dkt. 3465) (the "**FOMB's Objection**"). In addition to those arguments, the Retiree Committee submits that the Motion should be denied for the following three reasons.

*First*, as a preliminary matter, the Bondholders' Motion is entirely unclear as to the relief the Bondholders actually want. But if the Motion is taken at face value and the relief sought is that stated in the prayer for relief, what the Bondholders are essentially asking this Court to do is move any litigation over competing claims to ERS's assets to another court. This is so because, if the automatic stay were to be lifted, ERS is unlikely to voluntarily surrender the alleged collateral to the Bondholders. Instead, the Bondholders would be forced to file suit in another forum to obtain a court order directing the turnover of their alleged collateral. But that relief would only serve to change the forum for litigation over whether the Bondholders hold valid liens and, if they do, whether the cash and other assets ERS holds are "employ*er* contributions" subject to the Bondholders' alleged liens *or* employ*ee* contributions and loan repayments which are not. Because this Court is best situated to address those issues through the pending litigation and the Plan of

Adjustment process, and that process adequately protects the Bondholders' ability to advance their claims to their alleged collateral, the Court should not grant the Bondholders relief from the stay.

*Second*, if what the Bondholders really want are continued adequate protection payments after the funds in the escrow accounts are exhausted, they are not entitled to that relief. Contrary to the Bondholders' argument, there is no constitutional right to continued payments after the filing of a bankruptcy case. The purpose of adequate protection is to protect a creditor holding a secured claim from a "decrease in the value" of such secured claim that is caused by the automatic stay or the debtor's use of the collateral. 48 U.S.C. §2161 (incorporating 11 U.S.C. §361). On its face, §361 makes it clear that cash payments are not required. It does so by stating that when affirmative adequate protection is necessary, periodic cash payments are only one of several alternative means of providing such adequate protection. Here, except for some minor operating expenses, the only reason why ERS's cash balances have decreased at all is because ERS has been making payments to the Bondholders. The text of §361 simply does not recognize a right to adequate protection arising from a decrease in alleged collateral caused by a debtor's payments to the very creditor that is demanding adequate protection.

*Third*, the Bondholders attach as Exhibit B to their Motion a request they made upon the *Commonwealth* for adequate protection payments. The Bondholders are not now, nor have they ever been, creditors of the Commonwealth. The Bond Resolution makes that point abundantly clear: "The Commonwealth shall not be liable for the Bonds or any Ancillary Bond Facility." (ERS Bond Resolution §201, attached at No. 17-ap-00219, Dkt. 43 as Ex. A).) The Bondholders therefore have no basis to claim that they are entitled to stay relief because an entity that is not obligated to pay their debt has refused to make adequate protection payments to them.

For each of these reasons, the Motion should be denied

## BACKGROUND

The Retiree Committee adopts and incorporates the Factual and Procedural Background set forth in the FOMB's Objection and provides additional background regarding the Bondholders' so-called "Pledged Property" and the employee contributions that certain retirees and employees of the Commonwealth have made to ERS.

The ERS bonds are non-recourse debt. Section 201 of the ERS Bond Resolution states: "The Bonds shall be special obligations of [ERS] payable solely from the Pledged Property without recourse against other assets of [ERS]. *The Commonwealth shall not be liable for the Bonds or any Ancillary Bond Facility.*" (ERS Bond Resolution §201 (emphasis added).) "Pledged Property" is specifically defined in the Bond Resolution and includes employer contributions. (ERS Bond Resolution §501, VI-36-37 (definitions of Pledged Property and Revenues); Motion, ¶9.) Importantly, Pledged Property does *not* include all assets of ERS, and of particular importance to the Retiree Committee, Pledged Property does *not* include any of the employee contributions that ERS holds. (*Id.*)

ERS held employee contributions pursuant to its various pension statutes. *See* Act of May 15, 1951, No. 447, as amended; Act of February 16, 1990, No. 1; Act of September 24, 1999, No. 305; Act of April 4, 2013, No. 3. Act 305 of 1999, known as System 2000, established individual employee "retirement savings accounts" into which employees hired on or after January 1, 2000 ("**System 2000 Employees**") contributed their own dollars to fund their pensions. Act 305, §3-101. When a System 2000 Employee reaches retirement age, the value of her individual retirement savings accounts is used to purchase an annuity contract in that amount. *Id.* at §3-109. Under Act 3 of 2013, all employees hired before January 1, 2000 were transitioned to a defined contribution benefit going forward. Act 3, §5-103. Similar to the System 2000 Employees, Act 3 established individual contribution accounts to hold the employees' contributions to their pensions. *Id.* at §5-

3

101. Upon retirement, the payout of an Act 3 employee's account balance is annuitized. *Id.* at §5-

110. In addition, Act 447 and Act 1 retirees also made contributions towards their retirement. 3

L.P.R.A. § 780 (repealed). Under all of these Acts, the employees themselves contributed to their

retirement, with those funds held at ERS, and their contributions are not part of the Bondholders'

collateral. (ERS Bond Resolution §§201, 501, VI-36-37 (definitions of "Pledged Property" and

"Revenues").) Indeed, the individual contribution accounts holding an employee's contribution

under these various laws were not credited with any employer contributions. Thus any retirees or

employees whose funds have not been paid to them have a claim to the cash that ERS holds.

     The Retiree Committee is informed and believes, based on information it previously

obtained from the Commonwealth, that employee contributions to individual retiree accounts were

inappropriately comingled with employer contributions. In other words, the "Pledged Property" is

commingled with, among other assets, employee contributions and the Bondholders do not have a

right to claim a security interest in the employee contributions. Therefore, if the Bondholders are

held to have a lien on this pool of assets, that determination will trigger a dispute about whether

the funds are employer contributions or employee contributions.

## ARGUMENT

**I.    This Court Is The Appropriate Forum In Which To Determine Competing Interests
In ERS's Assets And That Process Provides Sufficient Protection To The Bondholders
That Their Alleged Liens Will Be Adjudicated.**

     The Court should deny the Bondholders' Motion because the Bondholders could not

foreclose on their purported collateral outside of the Title III cases without protracted litigation in

another forum on the very same issues that are already before this Court. Further, modifying the

stay would require the Court to simultaneously lift the stay to allow the Commonwealth's retirees

and employees to assert their interests in the same assets. If the stay were lifted and the

Bondholders filed suit in another forum to obtain their alleged collateral, that litigation would

necessarily include the perfection issue that is fully briefed and argued before this Court. And to the extent that new forum found in the affirmative (and the Retiree Committee submits that it would not), that new court would then be required to decide an issue that should be uniquely preserved for this Court and determined through the Plan of Adjustment process—the competing rights of creditors to ERS's assets. This is because the Bondholders' purported "Pledged Property" is held together with contributions of the Commonwealth's employees as a result of the various pension Acts (as well as plan participant loan repayments and proceeds of the sales of such loans), funds upon which the Bondholders cannot credibly maintain they hold a lien. This Court is the appropriate forum to consider these competing claims, and the Bondholders' attempt to move these interconnected disputes to an alternate forum should be rejected. *See, e.g., In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 404 (Bankr. E.D. Pa. 2002) ("When the state law regarding the parties' property rights is not unsettled or difficult, the bankruptcy court is usually the most appropriate forum to determine competing claims to property of the bankruptcy estate."); *Matter of Celotex Corp.*, 152 B.R. 667, 677 (Bankr. M.D. Fla. 1993) ("This court is the more appropriate forum to handle competing claims over property of a bankruptcy estate, over which this court has exclusive jurisdiction."); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("[T]he automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.")

## II. The Bondholders Are Not Entitled To Additional Adequate Protection Payments.

The Bondholders are not entitled to additional payments after the exhaustion of the Pre-Petition Segregated Account. Adequate protection is a "flexible concept to be tailored to the facts and circumstances of each case." *Peaje Investments LLC v. Garcia-Padilla*, 845 F.3d 505, 514 n.5 (1st Cir. 2017) (quoting *In re Smithfield Estates, Inc.*, 48 B.R. 910, 914 (Bankr. D.R.I. 1985)). It

"represents the maintenance of the status quo of the creditor while the automatic stay maintains the status quo of the debtor." *In re Wheeler*, 12 B.R. 908, 909 (Bankr. D. Mass. 1981). It "was not designed or intended to place an undersecured or minimally secured creditor in a better position than it was in before the stay," *Smithfield*, 48 B.R. at 915, and it is "not meant to be a guarantee that the creditor will be paid in full." *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001); *accord In re Elliot Leases Cars, Inc.*, 20 B.R. 893, 896 (Bankr. D.R.I. 1982).

To establish a right to adequate protection under §361, a secured creditor must demonstrate that the value of its collateral is declining or eroding as a result of the automatic stay or the debtor's use of the collateral. 11 U.S.C. § 361; *see also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988); *In re Mullen*, 172 B.R. 473, 476 (Bankr. D. Mass. 1994); *In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180 (Bankr. D. Del. 1993). A secured creditor is only entitled to adequate protection of the value of its collateral existing as of the petition date. *See, e.g., Smithfield*, 48 B.R. at 914; *accord Suntrust Bank v. Den-Mark Constr., Inc.*, 406 B.R. 683, 702 (E.D.N.C. 2009); *In re Windsor Hotel, LLC*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003); *In re Planned Sys., Inc.*, 78 B.R. 852, 863 (Bankr. S.D. Ohio 1987). Accordingly, to establish a lack of adequate protection as "cause" to lift the stay, a creditor must show that the value of its collateral is decreasing since the date the stay was imposed and that it has not been compensated for that diminution. *See Mullen*, 172 B.R. at 476; *Cont'l Airlines*, 154 B.R. at 180.

The Bondholders have not shown that the value of their collateral is decreasing. Instead, they simply declare without any support or explanation that "[s]ince ERS's Title III filing, ERS and the Commonwealth have taken actions that have resulted in a decrease in value of the Movant's collateral." (Motion, ¶25.)   What those actions are or how they have decreased the alleged

collateral and in what amounts is never explained.  In fact, a review of ERS's financial statements demonstrates that this is not happening. The Fiscal Agent's most recent bank account balance summary report indicates that, as of May 31, 2018, ERS's cash accounts held funds totaling $394.1 million, consisting of:[2]

| $ in millions | Balance as of[1] | | Notes |
|---|---|---|---|
| Grouping Subcategory | 4/30/2018 | 5/31/2018 | |
| ERS Related Accounts | 413.9 | 394.1 | • $117M for operational purposes. <br> • $19.9M in a Pre-petition Segregated Account created as part of a stipulation entered into prior to the commencement of Title III proceedings. <br> • $107M relating to proceeds from sale of investments. <br> • $93M corresponding to a Post-petition Segregated Account created as part of a stipulation entered into as part of the Title III proceedings. <br> • $18.9M corresponding to certain reserves to cover obligations incurred in loan portfolio sale transactions to private parties. |

Here is the same table from the Fiscal Agent's summary report for the period ending December 31, 2017 (when the Bondholders were last in Court unsuccessfully demanding that the Commonwealth make additional deposits into ERS for their benefit):[3]

| Grouping Subcategory | Balance as of | | Notes |
|---|---|---|---|
| | 11/30 | 12/31 | |
| ERS Related Accounts | $490.4M | $488.3M | • $136M for operational purposes. <br> • $117M in a Pre-petition Segregated Account created as part of a stipulation entered into Pre-Title III. <br> • $107M relating to proceeds from sale of investments. <br> • $74M corresponding to a Post-petition Segregated Account created as part of a stipulation entered into the Title III proceedings. <br> • $30M corresponding to certain reserves to cover obligations incurred in loan portfolio sale transactions to private parties. |

These tables demonstrate that ERS's net cash balances have decreased by $94.2 million from January 1, 2018 through May 31, 2018 in the aggregate. In that same period, the Pre-Petition

---

[2] Summary of Bank Account Balances for the Government of Puerto Rico and its Instrumentalities, Information as of May 31, 2018 (publicly filed June 18, 2018), *available at* http://www.aafaf.pr.gov/assets/aafaf-bank-account-balances-government-pr-instrum-05-31-2018.pdf.

[3] Summary of Bank Account Balances for the Government of Puerto Rico and its Instrumentalities, Information as of December 31, 2017 (publicly filed January 19, 2018), *available at* http://www.aafaf.pr.gov/assets/aafaf-bankaccountbalancesgovernmentofpr.pdf.

Segregated Account decreased by $97.1 million on account of adequate protection payments that
ERS made *to the Bondholders*. Thus, the only decrease in ERS's assets is due to the fact that the
Bondholders received monthly payments. Had those payments not been made, the account
balances actually would have increased by $2.9 million.

Under these circumstances, the Bondholders' interests have been adequately protected. The
plain language of §361 of the Bankruptcy Code states that adequate protection "of an interest of
*an entity* in property" (*i.e.*, a secured creditor) is only required where the automatic stay or use of
the collateral by the debtor "results in the decrease in the value of *such entity's* interest in such
property." 11 U.S.C. §361 (emphasis added). Paying a secured creditor with its own collateral
obviously does not decrease the value of the secured creditor's interest in that collateral. In fact,
one of the cases the Bondholders cite (Motion, ¶ 24), *In re Builders Group & Development Corp.*,
makes clear that paying a secured creditor its own cash collateral does not constitute a decrease in
the value of that collateral entitling the secured creditor to adequate protection. 502 B.R. 95, 122
(Bankr. D.P.R. 2013). There, the court stated that there is only a diminution if the cash collateral
is transferred "to a party other than the secured party." *Id*. Because, ignoring the $97.1 million in
payments to the Bondholders themselves, ERS's cash reserves have actually *increased* by $2.9
million in the last six months, the Bondholders cannot credibly claim that the value of their
"interests" in ERS's cash assets is diminishing. *See* 11 U.S.C. § 361; *Timbers*, 484 U.S. at 370;
*Mullen*, 172 B.R. at 476; *Cont'l Airlines*, 154 B.R. at 180.

The Bondholders also cannot credibly claim that the continuation of the adequate
protection payments are necessary to preserve the "status quo." In their Motion they suggest that
because ERS previously agreed to adequate protection payments, that necessarily means that the
Court must lift the stay if ERS will not agree to find a means to continue the payments. But the

December 28, 2017 Order made clear that any right to monthly payments expired upon the "exhaustion of funds in the Prepetition Segregated Account" and such exhaustion was always foreseeable. (No. 17-bk-03566, Dkt. 248 at ¶6.)

More importantly, the "status quo" that §361 protects is the value of a secured claim as of the petition date, and not the right to continued payments in any particular amount. *See, e.g., Smithfield*, 48 B.R. at 914. Here, the Bondholders have received adequate protection payments that vastly exceed any diminution in their alleged collateral. Simply holding the funds pending the Court's determination of the perfection issue would have adequately protected the Bondholders' against loss and that is all the adequate protection that is required here. *See, e.g., In re Bennett Funding Group, Inc.*, 255 B.R. 616, 643-44 (N.D.N.Y. 2000) (finding secured lenders adequately protected when trustee held cash collateral in segregated account unavailable to other creditors); *see also In re Maxon Engineering Services, Inc.*, 332 B.R. 495, 500 (Bankr. D.P.R. 2005) (requiring debtor to segregate cash collateral to ensure adequate protection). Therefore, the Court should deny the Motion.

### III. There Is No Provision Of PROMESA Which Would Require The Commonwealth To Make Adequate Protection Payments To The Bondholders Who Are Not Creditors Of The Commonwealth And Do Not Have Any Interest In Any Commonwealth Assets.

The Court also should deny the Motion because the Bondholders have no basis to demand adequate protection from the Commonwealth. By its own terms, §361 only provides for adequate protection from the debtor that is obligated on the debt and, even then, only when the automatic stay or the debtor's use of the alleged collateral causes a decline in the collateral's value. No provision of PROMESA requires a title III debtor that is *not* obligated on a debt to make adequate protection payments to another title III debtor's creditors.

Here, the ERS Bond Resolution is clear about which title III debtors are obligated to the Bondholders. Section 201 of the ERS Bond Resolution states: "The Commonwealth shall not be

liable for the Bonds or any Ancillary Bond Facility." Ignoring this plain language, in their June 27, 2018 demand letter, the Bondholders seek to hold the Commonwealth liable, demanding that "the ERS and the *Commonwealth* ensure that the holders of the ERS Bonds are provided with adequate protection" and threatening this motion if "the ERS and the *Commonwealth* are unwilling to satisfy their *respective* obligations to provide adequate protection to the Bondholders." (Motion, Ex. B at 1-2 (emphasis supplied.).) The Bondholders are non-recourse creditors of ERS; outside of their purported interest in the Pledged Property, they have no claim against ERS generally, and certainly no claim against the Commonwealth. The refusal of an entity that is not obligated to satisfy the Bondholders' debt in the first instance to provide gratuitous adequate protection payments is no basis on which to grant relief from the stay.

## CONCLUSION

For all of the foregoing reasons and those set forth in the FOMB's Objection, the Retiree

Committee respectfully requests that the Court enter an Order denying the Motion in its entirety

and granting such other relief as may be just.

July 10, 2018

JENNER & BLOCK LLP

By:
*/s/ Robert Gordon*
Robert Gordon (admitted *pro hac vice*)
Richard Levin (admitted *pro hac vice*)
919 Third Ave
New York, NY 10022-3908
rgordon@jenner.com
rlevin@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

Respectfully submitted,

BENNAZAR, GARCÍA & MILIÁN, C.S.P.

By:
*/s/ A.J. Bennazar-Zequeira*
A.J. Bennazar-Zequeira
Edificio Union Plaza
PH-A piso 18
Avenida Ponce de León #416
Hato Rey, San Juan
Puerto Rico 00918
ajb@bennazar.org
787-754-9191 (telephone)
787-764-3101 (facsimile)

*Counsel for The Official Committee of Retired
Employees of Puerto Rico*

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>          Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS |

**OBJECTION OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE
COMMONWEALTH OF PUERTO RICO TO THE ERS BONDHOLDERS' MOTION
FOR RELIEF FROM THE AUTOMATIC STAY**

---

[1] The Debtors in these jointly-administered PROMESA Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686).

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................3

ARGUMENT .........................................................................................................4

I.    This Court Is The Appropriate Forum In Which To Determine Competing Interests To ERS's Assets And That Process Provides Sufficient Protection To The Bondholders That Their Alleged Liens Will Be Adjudicated. ..............................4

II.    The Bondholders Are Not Entitled To Additional Adequate Protection Payments. .........................................................................................................5

III.    There Is No Provision Of PROMESA Which Would Require The Commonwealth To Make Adequate Protection Payments To The Bondholders Who Are Not Creditors Of The Commonwealth And Do Not Have Any Interest In Any Commonwealth Assets. ....................................................................9

CONCLUSION....................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Bennett Funding Group, Inc.*,
    255 B.R. 616 (N.D.N.Y. 2000) ................................................................................................9

*In re Cont'l Airlines, Inc.*,
    154 B.R. 176 (Bankr. D. Del. 1993) .....................................................................................6, 8

*In re Elliot Leases Cars, Inc.*,
    20 B.R. 893 (Bankr. D.R.I. 1982) ............................................................................................6

*In re Ionosphere Clubs, Inc.*,
    922 F.2d 984 (2d Cir. 1990) .....................................................................................................5

*In re Maxon Engineering Services, Inc.*,
    332 B.R. 495 (Bankr. D.P.R. 2005) .........................................................................................9

*In re Mullen*,
    172 B.R. 473 (Bankr. D. Mass. 1994) ..................................................................................6, 8

*In re P.J. Clarke's Restaurant Corp.*,
    265 B.R. 392 (Bankr. S.D.N.Y. 2001) .....................................................................................5

*In re Planned Sys., Inc.*,
    78 B.R. 852 (Bankr. S.D. Ohio 1987) ......................................................................................6

*In re Reliance Group Holdings, Inc.*,
    273 B.R. 374 (Bankr. E.D. Pa. 2002) ......................................................................................5

*In re Smithfield Estates, Inc.*,
    48 B.R. 910 (Bankr. D.R.I. 1985) ....................................................................................5, 6, 9

*In re Wheeler*,
    12 B.R. 908 (Bankr. D. Mass. 1981) ........................................................................................5

*In re Windsor Hotel, LLC*,
    295 B.R. 307 (Bankr. C.D. Ill. 2003) ......................................................................................6

*Matter of Celotex Corp.*,
    152 B.R. 667 (Bankr. M.D. Fla. 1993) ....................................................................................5

*Peaje Investments LLC v. Garcia-Padilla*,
    845 F.3d 505 (1st Cir. 2017) .....................................................................................................5

*Suntrust Bank v. Den-Mark Constr., Inc.*,
   406 B.R. 683 (E.D.N.C. 2009)................................................................................................6

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
   484 U.S. 365 (1988)...................................................................................................6, 8

STATUTES

11 U.S.C. §361 ...............................................................................................................2, 6, 8, 9

48 U.S.C. §2161 ..................................................................................................................2

Act of May 15, 1951, No. 447, as amended…………………………………………..…..3, 4

Act of February 16, 1990, No. 1…………………………………..……………..……....3, 4

Act of September 24, 1999, No. 305 …..………….…………….................................................3

Act of April 4, 2013, No. 3 …………………..…..………………………………….……..3, 4

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the
"**Retiree Committee**") hereby objects (the "**Objection**") to the *Motion of Certain Secured
Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto
Rico for Relief from the Automatic Stay* [Dkt. No. 3418] (the "**Motion**") filed by certain holders
of bonds (the "**Bondholders**") issued by the Employees Retirement System of the Government of
the Commonwealth of Puerto Rico ("**ERS**"), and states:

## INTRODUCTION

The Retiree Committee adopts the arguments contained in the *Debtor's Opposition to
Motion of Certain Secured Claimholders of Employees Retirement System of Government of
Commonwealth of Puerto Rico for Relief from the Automatic Stay* (Dkt. 3465) (the "**FOMB's
Objection**"). In addition to those arguments, the Retiree Committee submits that the Motion
should be denied for the following three reasons.

*First*, as a preliminary matter, the Bondholders' Motion is entirely unclear as to the relief
the Bondholders actually want. But if the Motion is taken at face value and the relief sought is that
stated in the prayer for relief, what the Bondholders are essentially asking this Court to do is move
any litigation over competing claims to ERS's assets to another court. This is so because, if the
automatic stay were to be lifted, ERS is unlikely to voluntarily surrender the alleged collateral to
the Bondholders. Instead, the Bondholders would be forced to file suit in another forum to obtain
a court order directing the turnover of their alleged collateral. But that relief would only serve to
change the forum for litigation over whether the Bondholders hold valid liens and, if they do,
whether the cash and other assets ERS holds are "employ*er* contributions" subject to the
Bondholders' alleged liens *or* employ*ee* contributions and loan repayments which are not. Because
this Court is best situated to address those issues through the pending litigation and the Plan of

Adjustment process, and that process adequately protects the Bondholders' ability to advance their claims to their alleged collateral, the Court should not grant the Bondholders relief from the stay.

*Second*, if what the Bondholders really want are continued adequate protection payments after the funds in the escrow accounts are exhausted, they are not entitled to that relief. Contrary to the Bondholders' argument, there is no constitutional right to continued payments after the filing of a bankruptcy case. The purpose of adequate protection is to protect a creditor holding a secured claim from a "decrease in the value" of such secured claim that is caused by the automatic stay or the debtor's use of the collateral. 48 U.S.C. §2161 (incorporating 11 U.S.C. §361). On its face, §361 makes it clear that cash payments are not required. It does so by stating that when affirmative adequate protection is necessary, periodic cash payments are only one of several alternative means of providing such adequate protection. Here, except for some minor operating expenses, the only reason why ERS's cash balances have decreased at all is because ERS has been making payments to the Bondholders. The text of §361 simply does not recognize a right to adequate protection arising from a decrease in alleged collateral caused by a debtor's payments to the very creditor that is demanding adequate protection.

*Third*, the Bondholders attach as Exhibit B to their Motion a request they made upon the *Commonwealth* for adequate protection payments. The Bondholders are not now, nor have they ever been, creditors of the Commonwealth. The Bond Resolution makes that point abundantly clear: "The Commonwealth shall not be liable for the Bonds or any Ancillary Bond Facility." (ERS Bond Resolution §201, attached at No. 17-ap-00219, Dkt. 43 as Ex. A).) The Bondholders therefore have no basis to claim that they are entitled to stay relief because an entity that is not obligated to pay their debt has refused to make adequate protection payments to them.

For each of these reasons, the Motion should be denied

**BACKGROUND**

The Retiree Committee adopts and incorporates the Factual and Procedural Background set forth in the FOMB's Objection and provides additional background regarding the Bondholders' so-called "Pledged Property" and the employee contributions that certain retirees and employees of the Commonwealth have made to ERS.

The ERS bonds are non-recourse debt. Section 201 of the ERS Bond Resolution states: "The Bonds shall be special obligations of [ERS] payable solely from the Pledged Property without recourse against other assets of [ERS]. *The Commonwealth shall not be liable for the Bonds or any Ancillary Bond Facility*." (ERS Bond Resolution §201 (emphasis added).) "Pledged Property" is specifically defined in the Bond Resolution and includes employer contributions. (ERS Bond Resolution §501, VI-36-37 (definitions of Pledged Property and Revenues); Motion, ¶9.) Importantly, Pledged Property does *not* include all assets of ERS, and of particular importance to the Retiree Committee, Pledged Property does *not* include any of the employee contributions that ERS holds. (*Id*.)

ERS held employee contributions pursuant to its various pension statutes. *See* Act of May 15, 1951, No. 447, as amended; Act of February 16, 1990, No. 1; Act of September 24, 1999, No. 305; Act of April 4, 2013, No. 3. Act 305 of 1999, known as System 2000, established individual employee "retirement savings accounts" into which employees hired on or after January 1, 2000 ("**System 2000 Employees**") contributed their own dollars to fund their pensions. Act 305, §3-101. When a System 2000 Employee reaches retirement age, the value of her individual retirement savings accounts is used to purchase an annuity contract in that amount. *Id.* at §3-109. Under Act 3 of 2013, all employees hired before January 1, 2000 were transitioned to a defined contribution benefit going forward. Act 3, §5-103. Similar to the System 2000 Employees, Act 3 established individual contribution accounts to hold the employees' contributions to their pensions. *Id*. at §5-

101. Upon retirement, the payout of an Act 3 employee's account balance is annuitized. *Id.* at §5-

110. In addition, Act 447 and Act 1 retirees also made contributions towards their retirement. 3

L.P.R.A. § 780 (repealed). Under all of these Acts, the employees themselves contributed to their

retirement, with those funds held at ERS, and their contributions are not part of the Bondholders'

collateral. (ERS Bond Resolution §§201, 501, VI-36-37 (definitions of "Pledged Property" and

"Revenues").) Indeed, the individual contribution accounts holding an employee's contribution

under these various laws were not credited with any employer contributions. Thus any retirees or

employees whose funds have not been paid to them have a claim to the cash that ERS holds.

The Retiree Committee is informed and believes, based on information it previously

obtained from the Commonwealth, that employee contributions to individual retiree accounts were

inappropriately comingled with employer contributions. In other words, the "Pledged Property" is

commingled with, among other assets, employee contributions and the Bondholders do not have a

right to claim a security interest in the employee contributions. Therefore, if the Bondholders are

held to have a lien on this pool of assets, that determination will trigger a dispute about whether

the funds are employer contributions or employee contributions.

## ARGUMENT

## I.    This Court Is The Appropriate Forum In Which To Determine Competing Interests In ERS's Assets And That Process Provides Sufficient Protection To The Bondholders That Their Alleged Liens Will Be Adjudicated.

The Court should deny the Bondholders' Motion because the Bondholders could not

foreclose on their purported collateral outside of the Title III cases without protracted litigation in

another forum on the very same issues that are already before this Court. Further, modifying the

stay would require the Court to simultaneously lift the stay to allow the Commonwealth's retirees

and employees to assert their interests in the same assets. If the stay were lifted and the

Bondholders filed suit in another forum to obtain their alleged collateral, that litigation would

necessarily include the perfection issue that is fully briefed and argued before this Court. And to
the extent that new forum found in the affirmative (and the Retiree Committee submits that it
would not), that new court would then be required to decide an issue that should be uniquely
preserved for this Court and determined through the Plan of Adjustment process—the competing
rights of creditors to ERS's assets. This is because the Bondholders' purported "Pledged Property"
is held together with contributions of the Commonwealth's employees as a result of the various
pension Acts (as well as plan participant loan repayments and proceeds of the sales of such loans),
funds upon which the Bondholders cannot credibly maintain they hold a lien. This Court is the
appropriate forum to consider these competing claims, and the Bondholders' attempt to move these
interconnected disputes to an alternate forum should be rejected. *See, e.g., In re Reliance Group
Holdings, Inc.*, 273 B.R. 374, 404 (Bankr. E.D. Pa. 2002) ("When the state law regarding the
parties' property rights is not unsettled or difficult, the bankruptcy court is usually the most
appropriate forum to determine competing claims to property of the bankruptcy estate."); *Matter
of Celotex Corp.*, 152 B.R. 667, 677 (Bankr. M.D. Fla. 1993) ("This court is the more appropriate
forum to handle competing claims over property of a bankruptcy estate, over which this court has
exclusive jurisdiction."); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990)
("[T]he automatic stay allows the bankruptcy court to centralize all disputes concerning property
of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently,
unimpeded by uncoordinated proceedings in other arenas.")

## II.     The Bondholders Are Not Entitled To Additional Adequate Protection Payments.

The Bondholders are not entitled to additional payments after the exhaustion of the Pre-
Petition Segregated Account. Adequate protection is a "flexible concept to be tailored to the facts
and circumstances of each case." *Peaje Investments LLC v. Garcia-Padilla*, 845 F.3d 505, 514 n.5
(1st Cir. 2017) (quoting *In re Smithfield Estates, Inc.*, 48 B.R. 910, 914 (Bankr. D.R.I. 1985)). It

"represents the maintenance of the status quo of the creditor while the automatic stay maintains the status quo of the debtor." *In re Wheeler*, 12 B.R. 908, 909 (Bankr. D. Mass. 1981). It "was not designed or intended to place an undersecured or minimally secured creditor in a better position than it was in before the stay," *Smithfield*, 48 B.R. at 915, and it is "not meant to be a guarantee that the creditor will be paid in full." *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001); *accord In re Elliot Leases Cars, Inc.*, 20 B.R. 893, 896 (Bankr. D.R.I. 1982).

To establish a right to adequate protection under §361, a secured creditor must demonstrate that the value of its collateral is declining or eroding as a result of the automatic stay or the debtor's use of the collateral. 11 U.S.C. § 361; *see also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988); *In re Mullen*, 172 B.R. 473, 476 (Bankr. D. Mass. 1994); *In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180 (Bankr. D. Del. 1993). A secured creditor is only entitled to adequate protection of the value of its collateral existing as of the petition date. *See, e.g., Smithfield*, 48 B.R. at 914; *accord Suntrust Bank v. Den-Mark Constr., Inc.*, 406 B.R. 683, 702 (E.D.N.C. 2009); *In re Windsor Hotel, LLC*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003); *In re Planned Sys., Inc.*, 78 B.R. 852, 863 (Bankr. S.D. Ohio 1987). Accordingly, to establish a lack of adequate protection as "cause" to lift the stay, a creditor must show that the value of its collateral is decreasing since the date the stay was imposed and that it has not been compensated for that diminution. *See Mullen*, 172 B.R. at 476; *Cont'l Airlines*, 154 B.R. at 180.

The Bondholders have not shown that the value of their collateral is decreasing. Instead, they simply declare without any support or explanation that "[s]ince ERS's Title III filing, ERS and the Commonwealth have taken actions that have resulted in a decrease in value of the Movant's collateral." (Motion, ¶25.)  What those actions are or how they have decreased the alleged

6

collateral and in what amounts is never explained. In fact, a review of ERS's financial statements demonstrates that this is not happening. The Fiscal Agent's most recent bank account balance summary report indicates that, as of May 31, 2018, ERS's cash accounts held funds totaling $394.1 million, consisting of:[2]

| $ in millions | Balance as of[1] | | |
| Grouping Subcategory | 4/30/2018 | 5/31/2018 | Notes |
| --- | --- | --- | --- |
| ERS Related Accounts | 413.9 | 394.1 | • $117M for operational purposes.<br>• $19.9M in a Pre-petition Segregated Account created as part of a stipulation entered into prior to the commencement of Title III proceedings.<br>• $107M relating to proceeds from sale of investments.<br>• $93M corresponding to a Post-petition Segregated Account created as part of a stipulation entered into as part of the Title III proceedings.<br>• $18.9M corresponding to certain reserves to cover obligations incurred in loan portfolio sale transactions to private parties. |

Here is the same table from the Fiscal Agent's summary report for the period ending December 31, 2017 (when the Bondholders were last in Court unsuccessfully demanding that the Commonwealth make additional deposits into ERS for their benefit):[3]

| | Balance as of | | |
| Grouping Subcategory | 11/30 | 12/31 | Notes |
| --- | --- | --- | --- |
| ERS Related Accounts | $490.4M | $488.3M | • $136M for operational purposes.<br>• $117M in a Pre-petition Segregated Account created as part of a stipulation entered into Pre-Title III.<br>• $107M relating to proceeds from sale of investments.<br>• $74M corresponding to a Post-petition Segregated Account created as part of a stipulation entered into the Title III proceedings.<br>• $30M corresponding to certain reserves to cover obligations incurred in loan portfolio sale transactions to private parties. |

These tables demonstrate that ERS's net cash balances have decreased by $94.2 million from January 1, 2018 through May 31, 2018 in the aggregate. In that same period, the Pre-Petition

---

[2] Summary of Bank Account Balances for the Government of Puerto Rico and its Instrumentalities, Information as of May 31, 2018 (publicly filed June 18, 2018), *available at* http://www.aafaf.pr.gov/assets/aafaf-bank-account-balances-government-pr-instrum-05-31-2018.pdf.

[3] Summary of Bank Account Balances for the Government of Puerto Rico and its Instrumentalities, Information as of December 31, 2017 (publicly filed January 19, 2018), *available at* http://www.aafaf.pr.gov/assets/aafaf-bankaccountbalancesgovernmentofpr.pdf.

Segregated Account decreased by $97.1 million on account of adequate protection payments that ERS made *to the Bondholders*. Thus, the only decrease in ERS's assets is due to the fact that the Bondholders received monthly payments. Had those payments not been made, the account balances actually would have increased by $2.9 million.

Under these circumstances, the Bondholders' interests have been adequately protected. The plain language of §361 of the Bankruptcy Code states that adequate protection "of an interest of *an entity* in property" (*i.e.*, a secured creditor) is only required where the automatic stay or use of the collateral by the debtor "results in the decrease in the value of *such entity's* interest in such property." 11 U.S.C. §361 (emphasis added). Paying a secured creditor with its own collateral obviously does not decrease the value of the secured creditor's interest in that collateral. In fact, one of the cases the Bondholders cite (Motion, ¶ 24), *In re Builders Group & Development Corp.*, makes clear that paying a secured creditor its own cash collateral does not constitute a decrease in the value of that collateral entitling the secured creditor to adequate protection. 502 B.R. 95, 122 (Bankr. D.P.R. 2013). There, the court stated that there is only a diminution if the cash collateral is transferred "to a party other than the secured party." *Id*. Because, ignoring the $97.1 million in payments to the Bondholders themselves, ERS's cash reserves have actually *increased* by $2.9 million in the last six months, the Bondholders cannot credibly claim that the value of their "interests" in ERS's cash assets is diminishing. *See* 11 U.S.C. § 361; *Timbers*, 484 U.S. at 370; *Mullen*, 172 B.R. at 476; *Cont'l Airlines*, 154 B.R. at 180.

The Bondholders also cannot credibly claim that the continuation of the adequate protection payments are necessary to preserve the "status quo." In their Motion they suggest that because ERS previously agreed to adequate protection payments, that necessarily means that the Court must lift the stay if ERS will not agree to find a means to continue the payments. But the

December 28, 2017 Order made clear that any right to monthly payments expired upon the "exhaustion of funds in the Prepetition Segregated Account" and such exhaustion was always foreseeable. (No. 17-bk-03566, Dkt. 248 at ¶6.)

More importantly, the "status quo" that §361 protects is the value of a secured claim as of the petition date, and not the right to continued payments in any particular amount. *See, e.g., Smithfield*, 48 B.R. at 914. Here, the Bondholders have received adequate protection payments that vastly exceed any diminution in their alleged collateral. Simply holding the funds pending the Court's determination of the perfection issue would have adequately protected the Bondholders' against loss and that is all the adequate protection that is required here. *See, e.g.*, *In re Bennett Funding Group, Inc.*, 255 B.R. 616, 643-44 (N.D.N.Y. 2000) (finding secured lenders adequately protected when trustee held cash collateral in segregated account unavailable to other creditors); *see also In re Maxon Engineering Services, Inc.*, 332 B.R. 495, 500 (Bankr. D.P.R. 2005) (requiring debtor to segregate cash collateral to ensure adequate protection). Therefore, the Court should deny the Motion.

### III. There Is No Provision Of PROMESA Which Would Require The Commonwealth To Make Adequate Protection Payments To The Bondholders Who Are Not Creditors Of The Commonwealth And Do Not Have Any Interest In Any Commonwealth Assets.

The Court also should deny the Motion because the Bondholders have no basis to demand adequate protection from the Commonwealth. By its own terms, §361 only provides for adequate protection from the debtor that is obligated on the debt and, even then, only when the automatic stay or the debtor's use of the alleged collateral causes a decline in the collateral's value. No provision of PROMESA requires a title III debtor that is *not* obligated on a debt to make adequate protection payments to another title III debtor's creditors.

Here, the ERS Bond Resolution is clear about which title III debtors are obligated to the Bondholders. Section 201 of the ERS Bond Resolution states: "The Commonwealth shall not be

liable for the Bonds or any Ancillary Bond Facility." Ignoring this plain language, in their June

27, 2018 demand letter, the Bondholders seek to hold the Commonwealth liable, demanding that

"the ERS and the *Commonwealth* ensure that the holders of the ERS Bonds are provided with

adequate protection" and threatening this motion if "the ERS and the *Commonwealth* are unwilling

to satisfy their *respective* obligations to provide adequate protection to the Bondholders." (Motion,

Ex. B at 1-2 (emphasis supplied.).) The Bondholders are non-recourse creditors of ERS; outside

of their purported interest in the Pledged Property, they have no claim against ERS generally, and

certainly no claim against the Commonwealth. The refusal of an entity that is not obligated to

satisfy the Bondholders' debt in the first instance to provide gratuitous adequate protection

payments is no basis on which to grant relief from the stay.

## CONCLUSION

For all of the foregoing reasons and those set forth in the FOMB's Objection, the Retiree

Committee respectfully requests that the Court enter an Order denying the Motion in its entirety

and granting such other relief as may be just.

July 10, 2018                                    Respectfully submitted,

JENNER & BLOCK LLP                               BENNAZAR, GARCÍA & MILIÁN, C.S.P.

By:                                              By:
*/s/ Robert Gordon*                              */s/ A.J. Bennazar-Zequeira*
Robert Gordon (admitted *pro hac vice*)          A.J. Bennazar-Zequeira
Richard Levin (admitted *pro hac vice*)          Edificio Union Plaza
919 Third Ave                                    PH-A piso 18
New York, NY 10022-3908                          Avenida Ponce de León #416
rgordon@jenner.com                               Hato Rey, San Juan
rlevin@jenner.com                                Puerto Rico 00918
212-891-1600 (telephone)                         ajb@bennazar.org
212-891-1699 (facsimile)                         787-754-9191 (telephone)
                                                 787-764-3101 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)           *Counsel for The Official Committee of Retired*
353 N. Clark Street                              *Employees of Puerto Rico*
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)