# EXHIBIT V

**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF JUSTICE**
**COURT OF FIRST INSTANCE**
**SUPERIOR DIVISION OF SAN JUAN**

| | |
|---|---|
| AUTONOMOUS MUNICIPALITY OF SAN JUAN, represented by its Mayor CARMEN YULÍN CRUZ SOTO<br><br>**Plaintiff**<br><br>Vs.<br><br>COMMONWEALTH OF PUERTO RICO, through its Secretary of Justice, Wanda Vázquez Garced; DEPARTAMENT OF THE TREASURY OF PUERTO RICO and RAÚL MALDONADO GAUTIER, in his official capacity as Secretary of the Treasury of Puerto Rico; ADMINISTRATION OF THE RETIREMENT SYSTEM FOR THE EMPLOYEES OF THE GOVERNMENT OF PUERTO RICO and LUIS COLLAZO RODRÍGUEZ, in his official capacity as Administrator and Executive Director of the Retirement System; RETIREMENT BOARD OF THE GOVERNMENT OF PUERTO RICO and CHRISTIAN SOBRINO VEGA, in his official capacity as President of the Retirement Board and Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF [*Spanish acronym*])<br><br>**Defendants** | CIVIL NO.:<br><br>COURTROOM:<br><br>RE: PREIMINARY AND PERMANENT INJUNCTION, MANDAMUS AND DECLARATORY JUDGMENT |

**SWORN COMPLAINT**

**BEFORE THE HONORABLE COURT:**

COMES NOW Plaintiff of caption, AUTONOMOUS MUNICIPALITY OF SAN JUAN, represented by its Mayor CARMEN YULÍN CRUZ SOTO, acting in her official capacity, through the undersigned legal representation, and who very respectfully **STATES, ALLEGES AND PRAYS**:

### Introduction:

1)  The present complaint is the result of a strategy developed by Defendants which seeks to transfer the liabilities assumed by the government of the Commonwealth of Puerto Rico (ELA, [*Spanish acronym*]) for the payment of debts contracted by the ELA with the Retirement System's beneficiaries to the municipalities. Note that the crisis of the retirement systems is the result of



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 3 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 2 of 28

decisions taken exclusively by Defendants, but it is intended that the same be resolved by the municipalities of Puerto Rico, including Plaintiff. In addition, the Complaint of caption seeks to validate a wise public policy, which encourages the comparison and rigorous review of fiscal responsibilities before proceeding with their payment. This vision contrasts with intention of Defendants, who insist that the Municipality of San Juan consent and make payment of the amount claimed without reviewing or auditing it. Plaintiff reaffirms that review and audit prior to payment is not only endorsed by the current legal system, but represents the responsible manner of managing public resources.

2) Thus, this petition is supported by the demand for transparency in the management of public affairs that stands as a moral imperative in exercising power and a fundamental virtue of democracy. It is, therefore, a proceeding that aspires to establish with reliability, clarity and certainty, the real amount of the debt of the Autonomous Municipality of San Juan (hereinafter "Municipality of San Juan") for the concept of the Pay-Go Fee, related to its employees' retirement system, which Defendants have refused.

3) Moved by such principles, and in protection and advancement of its constituents' best interests, the Municipality of San Juan respectfully requests the extraordinary and ordinary remedies of caption.

4) The foregoing is requested so that Defendants, being compelled by competent judicial authority, refrain from collecting arbitrary fees as "Pay-Go" Fees which they expect to impose on the Municipality of San Juan. Such compulsion should remain while they do not faithfully and fully comply with their statutory duties, as established by Act 106-2017.

5) Specifically, the Municipality of San Juan requests: (i) that Defendants grant access to the information that supports the amounts to be collected from the Municipality for the "Pay-Go" Fee; (ii) that Defendants refrain from charging the Municipality the "Pay-Go" Fee, until the previous condition is satisfied and the complaint is granted on its merits; and (iii) that Defendants be preliminarily or permanently prohibited from attaching, encumbering or otherwise affecting, funds belonging to the Municipality

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS   Doc#:7561-22   Filed:06/21/19   Entered:06/21/19 22:54:55   Desc:
Exhibit V   Page 4 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 3 of 28

Page 3

of San Juan, maintained before the Municipal Revenues Collection Center ("CRIM", [*Spanish acronym*]), or any other private or governmental entity, until such time as the above condition is satisfied and the complaint is adjudicated on its merits.

### Regarding the Parties:

6) Plaintiff, the **Autonomous Municipality of San Juan**, is a government entity created under Act No. 81 of August 30, 1991, as amended, known as the *Puerto Rico Autonomous Municipalities Act*. Its physical address is Edificio Trilitos Piso 4 Río Piedras, Puerto Rico and its postal address is P.O. BOX 9024100 San Juan, PR 00902-4100. Its telephone number is 787-480-2500. The Autonomous Municipality of San Juan appears herein through its Mayor, Carmen Yulín Cruz Soto.

7) Defendant, **Department of the Treasury** is an instrumentality of the **Commonwealth of Puerto Rico** which is joined to the litigation of caption through its Secretary, Raúl Maldonado Gautier, who is brought in his official capacity. This entity is responsible for the allegations and remedies requested in this complaint, and by express provision of law it is charged with collecting the Pay-Go Fee, as alleged in the subsequent paragraphs of this Complaint. The Commonwealth of Puerto Rico, on the other hand, is brought to this civil action through its Secretary of Justice, Wanda Vázquez Garced.

8) Defendant, **Administration of the Retirement System for the Employees of the Government of Puerto Rico** is a government entity with capacity to sue and be sued which is joined to the captioned litigation through its Administrator and Executive Director, Luis Collazo Rodríguez, who is brought to this litigation in his official capacity. This entity is responsible for the allegations and remedies requested in this lawsuit.

9) Defendant, the **Retirement Board of the Government of Puerto Rico**, is an entity of the Government of Puerto Rico, independent and separate from others, with capacity to sue and be sued, even on behalf of the Retirement Systems. This party is joined to the captioned litigation through its President, Christian Sobrino Vega, who is brought to the lawsuit in his dual official capacity

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 5 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 4 of 28

Page 4

as President of the Retirement Board and, in the alternative, as Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF).[1] Said entity is responsible for the allegations and remedies requested in this Complaint.

## About the Facts:

### A. *The Retirement System for Public Employees becomes Insolvent:*

10) The Legislative Assembly of Puerto Rico established the Retirement System of Public Employees ("Retirement System"), through Act No. 447 of May 15, 1951, to provide a defined benefit retirement program for the employees of the Government of Puerto Rico. The System was managed by the Retirement Systems Administration and financed by compulsory contributions for employers and participating employees.

11) The municipalities of Puerto Rico, including the Municipality of San Juan, participated in the System through employer contributions corresponding to its employees. The municipalities, however, were never responsible for the payment of payable pensions, or for the administration of the System. In fact, the municipalities did not have information on the amounts payable to their employees and pensioners, much less the information to determine how those amounts were calculated.

12) For decades, the government of the Commonwealth of Puerto Rico ("ELA", its Spanish acronym) has not contributed amounts necessary to cover the cost of pensions payable to retired public employees and those who are about to retire. As a result of this, the Retirement System faced a considerable lack of funds, and was forced to exhaust its assets to make pension payments to retirees.

13) The fiscal crisis of the Government of Puerto Rico led to the Congress of the United States to promulgate the act called "Puerto Rico Oversight, Management, and Economic Stability Act"("PROMESA", its English acronym). Said federal statute delegated broad powers to a Fiscal Oversight Board (hereinafter, "Supervisory Board"). By 2017, the Retirement System was already

---

[1] Article 5.1(a) of Act 106-2017 (3 LPRA § 9571), provides that as long as the Retirement Board is not duly constituted [...] the Executive Director of the AAFAF shall have and exercise all powers of the Retirement Board [...]. In response to this, we made the dual capacity accumulation mentioned before, as a precautionary measure.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 6 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 5 of 28

insolvent, and in May 2017, filed a bankruptcy case under Title III of PROMESA.

## B. *The Government of Puerto Rico Adopts the Pay-Go System:*

14) The Government of Puerto Rico assumed liability for paying pensioners' benefits as of July 1, 2017, through Joint Resolutions of the House of Representatives 186, 187 and 188 of 2017.

15) For its part, the Department of the Treasury issued Circular Letter No. 1300-46-17 of July 27, 2017, notifying public corporations, municipalities, the Executive Branch, the Judicial Branch and the Legislative Branch, which would charge a monthly fee to cover the costs of benefits for pensioners from each government entity.

16) On August 23, 2017, the Government of Puerto Rico promulgated Act No. 106 to reform the retirement system ("Act 106"). Act 106 eliminated the defined benefit retirement program in which employees previously had participated under the Retirement System and replaced it with a new plan of defined contributions financed through, among other things, employees' contributions. Act 106, however, guaranteed that retirees and employees will retain all the benefits that they accumulated under the previous defined benefit retirement program.

17) To pay the benefits accumulated under the previous program, Act 106 requires all public employers to pay the accumulated pensions under the previous defined benefit structure, as said amounts are effectively paid to pensioners and beneficiaries ("Pay-Go Fee"). **In this manner, Act 106 transferred liability for paying pensions from an insolvent system to the employers of ex-employees, like the Municipality of San Juan.**

18) According to Act 106, the Pay-Go Fee is determined and imposed by AAFAF and is billed and collected by the Secretary of the Treasury or by the person or entity he may designate as authorized to collect. The amounts collected as Pay-Go Fees are used to finance the Account for the Payment of Accrued Pensions, a trust maintained by the Secretary of the Treasury,

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 7 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 6 of 28

Page 6

CERTIFIED TRANSLATION

and in that way pay the accumulated pensions.

### C. *Act 106 Requires Verification of the Pay-Go Fee:*

19)  In the pertinent part, Act 106 establishes that the amount of the Pay-Go Fee:

> shall be equal to the amount paid to Retirees and Beneficiaries of each covered
> entity. The Secretary of the Treasury or the entity or person designated by him
> shall be authorized to collect the Pay-Go Fee. In the case of Municipalities, the
> administrative fees of the pay-as-you-go system shall not be included in the
> computation of the Pay-Go fee. Act 106, Art. 2.1(b).

20)  In order to ensure that the amounts of the Pay-Go Fee are correct, Act 106 requires the

Retirement Systems Administration to establish a register of the amounts corresponding to

each participant, beneficiary, and pensioner of the retirement systems ("Register"). For

these purposes, Article 2.2(a) of the aforementioned statute expressly provides as follows:

> A Register of each Participant, Beneficiary, and Retiree of the Retirement
> Systems shall be created and maintained showing in detail the Accumulated
> Pension Benefit amount corresponding to each one of them according to their
> respective Retirement Systems as of the effective date of this Act. It shall state in
> detail, without it being construed as a limitation, the accumulated benefit to which
> the Participant is entitled, his employment history, and the contributions made, in
> accordance with each retirement law, as applicable, under which the Participant,
> Beneficiary, and Retiree enrolled. **The corresponding payment of
> Accumulated Pension Benefits to which each Participant, Beneficiary, and
> Retiree is entitled shall be made pursuant to the information contained in
> the Register**, under the applicable payment terms until the effective date of this
> Act and in accordance with the Retirement System in which each Participant,
> Beneficiary, and Retiree is enrolled. [emphasis added].

21)  Highlighting the importance of the Register for determining the amounts to be charged for

the Pay-Go Fee, Act 106 requires the creation of the Register within a <u>short</u> and <u>defined</u>

term. In the same vein, the aforementioned statute provides that the contents of the Register

shall be notified to each pensioner and establishes a process to correct errors in it. Thus,

Article 2.2(b) provides:

> The Retirement Systems Administrators, including the Judiciary Retirement
> System, in conjunction with FAFAA, shall be required to create the register stated
> in subsection (a) of this Section, as follows:
>
> 1. Within sixty (60) days after the approval of this Act, a list of all Beneficiaries
> and Retirees of the three Retirement Systems shall be produced; and
>
> 2. Within a term not to exceed one hundred eighty (180) days after the approval
> of this Act, a register of all

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 8 of 57
CERTIFIED TRANSLATION
SJ2019CV005411 05/29/2019 08:06:26 am Page 7 of 28

Page 7

Participants shall be produced, including the Accumulated Pensions Benefits of each of the three Retirement Systems on the effective date of this Act and the payment terms thereof. The three Retirement Systems shall take the necessary measures to ensure that the information of each Participant, Beneficiary, and Retiree contained in the register is true and correct.

3. Once the register is produced, each Participant, Beneficiary, and Retiree shall be notified of the contents thereof using an accurate, efficient, and suitable method … who, in turn, shall have forty-five (45) days after the date of the notice to present to the Retirement Systems Administrators indisputable proof showing that the information contained in the register is incorrect or inaccurate.

### D. *The Department of the Treasury and the Retirement Systems Administration Violate Act 106 and Issue Erroneous and Inconsistent Invoices to the Municipality of San Juan:*

22) The Department of the Treasury and the Retirement Systems Administration have not fulfilled important requirements of Act 106. First, on information and belief, Plaintiff alleges that Defendants still have not produced the Register of the amounts corresponding to the Participants, Pensioners and Beneficiaries, according to Article 2.2(a) of Act 106. This is so, despite the fact that Act 106 stipulates that it must have been produced within "a term not to exceed one hundred eighty (180) days after the approval of this Act."

23) Having approved the statute in question on August 23, 2017, Defendants' non-compliance regarding the creation of the Register expressly mandated by law exceeds the period of one year and a half. As result of said breach, the Participants, Pensioners and Beneficiaries have not had the opportunity to review the amounts and verify their correctness, veracity and adequacy.

24) Secondly, even though the Pay-Go fee should only include "the amount in effect paid to Pensioners and Beneficiaries from each covered entity" (See, Act 106, Art. 2.1(b)), **the Department of the Treasury and the Retirement Systems Administration have billed the Municipality of San Juan for amounts that do not correspond to the Pensioners and Beneficiaries from the Municipality of San Juan.**

25) For example, on August 18, 2017, the Municipality of San Juan received

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 9 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 8 of 28

Page 8

invoices corresponding to each of the months between July 2017 until June 2018. According to the invoices provided, the Municipality is responsible for 4,591 pensioners and beneficiaries. The invoices require an identical payment of $4,560,862.59 per month, with the sole exception of the invoice corresponding to the month of May 2018, which requires $4,560,852.59.

26) Upon receiving these invoices, the Retirement Services Unit of San Juan ("Retirement Services Unit") began to review whether beneficiaries and pensioners named in the invoices really corresponded to the Municipality of San Juan.

27) Using the human resources office's Register as a reference, the Retirement Services Unit verified that the invoices issued by the Retirement Systems Administration and the Department of the Treasury were riddled with inconsistencies. With only a minimum of information available, the Retirement Services Unit was able to determine that the Pay-Go fee invoices were intended to illegally collect for the following concepts from the Municipality of San Juan:

i) 340 beneficiaries that cannot be reviewed, because of a failure to include the name and social security data of the deceased pensioner, the affinity or filiation relationship of the beneficiary with the deceased pensioner, the beneficiary's age, from which agency or municipality the pensioner retired from, nor the date of death;

ii) 132 pensioners with a date of death prior to July 1, 2017, for which pension benefits were invoiced. Also, data are unknown as to the beneficiary, if there is any, who might have inherited the pension and/or who is receiving the pension, and whether the amount to be paid by the Municipality of San Juan was adjusted;

iii) 37 duplicate social security numbers, identified as beneficiary and pensioner at the same time;

iv) 104 pensioners who, when comparing the dates of separation from service in the Municipality of San Juan with the date of entry as pensioner, show a period of more than 4 years elapsed between both dates, such that the Municipality of San Juan has no evidence that it was the last employer for whom the billed pensioner rendered services; and

v) 470 pensioners for whom there is no evidence in the Municipality of San Juan's database about their status as former employees of the Municipality.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 10 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 9 of 28

Page 9

28) Given the abovementioned inconsistencies, on February 23, 2018, the Municipality of San Juan sent a letter to the Secretary of the Treasury, with a copy to the Administrator of the Retirement System, Luis M. Collazo Rodríguez. Through the aforementioned letter, both officers were notified about the inconsistencies identified by the Municipality; and additional information was demanded in order to verify the correctness of the remaining invoices. Attached to the letter was a list of pensioners and beneficiaries that the Municipality of San Juan, with the little information it had available, could identify that they did not correspond to its obligations.

29) After not receiving a response, the Municipality of San Juan sent a second letter, dated May 21, 2018, reiterating the inconsistencies previously detailed, and manifesting substantive objections to the procedure used by the Department of the Treasury in attempting to collect the Pay-Go fee.

30) On September 4, 2018, almost seven (7) months after the Municipality of San Juan sent its first letter asking for clarification of the fees, the Department of the Treasury published Circular Letter No. 2019-01. Which, required employers, including municipalities, to pay their Pay-Go fee invoices before September 30.

31) Circular Letter No. 2019-01, in turn, created a procedure to contest invoiced amounts. Employers would have ninety (90) days from the date of the letter to dispute an invoice; the Retirement Systems Administration would take another ninety (90) days to make a decision in that respect; and employers would have forty-five (45) more days to complete their payment.

32) However, in serious prejudice to the substantive and procedural rights of the Plaintiff municipality, the procedure designed by the Department of the Treasury does not grant it the opportunity to access and analyze the evidence used by both the Department of the Treasury and the Retirement Systems Administration, to determine the amount of the Pay-Go fee invoices to be collected.

33) In view of this situation, on November 30, 2018, the Municipality of San Juan

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 11 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 10 of 28

Page 10

sent a third letter to comply with the procedure detailed by the Department of the Treasury. The letter reiterated the inconsistencies identified by Municipality in its preliminary analysis of the invoices and requested that the Retirement Systems Administration perform an audit of the invoices; it also granted the Municipality access to all the necessary information and documentation to validate the correctness of the invoices' amount.

34) Finally, on December 11, 2018, almost ten (10) months after the Municipality of San Juan sent its first letter, it received a response from the Retirement System Administrator. Through said letter, the official effectively admitted that the Pay-Go fee invoices that it had sent to the Municipality of San Juan were incorrect.

35) In its response to the letter sent by the Municipality, the Administrator of the Retirement System recognized that 228 of the 1,068 pensioners and beneficiaries that the preliminary analysis carried out by the Municipality was able to identify as inconsistencies or errors in billing, did not correspond to the obligations of the Municipality of San Juan. So, consequently, neither did its payment proceed as a strict question of law.

36) However, reiterating a pattern that denotes the absence of methodological rigor, the aforementioned letter lacks evidence to support the new number of pensioners and beneficiaries that the Retirement Systems Administration and the Department of the Treasury argue the Municipality of San Juan is responsible for. There is also no evidence of how the amount of benefits due to each of them was determined.

37) As a matter of fact, despite verifying a decrease of almost 5% in the total number of pensioners and beneficiaries that Defendants allot to the Municipality of San Juan, the financial obligations of the Municipality derived from the adjustment made were only decreased by less than 2%. **Thi raises serious and legitimate doubts and questions about the correctness and adequacy of the process followed by the defendant government entities in issuing and collecting on invoices for the concept of the Pay-Go fee to the Municipality of San Juan.**

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 12 of 57
CERTIFIED TRANSLATION
SJ2019CV005411 05/29/2019 08:06:26 am Page 11 of 28

Page 11

38) Reiterating a pattern of contumacious behavior, Defendants did not give the Municipality of San Juan an opportunity to review the evidence and methodology used to formulate their new decision. On the contrary, the Administrator of the Retirement Systems' letter simply limited itself to warning the Plaintiff municipality that, if it did not answer within two days, they would consider the matter as finished and proceed to bill the fees as notified.

39) This being the state of affairs, on December 12, 2018, the Municipality of San Juan answered the Retirement Systems Administrator's letter, stating that: "the Municipality of San Juan is in total disagreement with the conclusion reported in his letter, and does not recognize the findings of the ASR (which we evidently do not know), nor does it accept the alleged balance owed for the "Pay-Go" fee for AF2017-2018." The Municipality of San Juan concluded its communication requesting a meeting with the Retirement Systems Administrator, in order to discuss the matter in depth.

40) However, to this day, the Municipality of San Juan has not received an answer from the Retirement Systems Administrator to the letter sent to him on December 12, 2018. Meanwhile, although the previous correspondences were in reference to the invoices of the Pay-Go fee from July 2017 to June 2018, the Municipality of San Juan received new invoices for the months of July to November of 2018.

41) Third, as is clear from the preceding paragraphs, Defendants have refused to provide the Municipality with the necessary information to corroborate that the calculation of the Pay-Go fee was made correctly. On the contrary, the calculation of the Pay-Go Fee of the Municipality of San Juan seems to have several errors and said process has been arbitrarily and capriciously handled by the Defendant governmental entities. That is, beyond the invoices received including individuals for which the Municipality of San Juan is not responsible, it is also evident that invoices do not accurately and truthfully reflect the amounts payable to pensioners.

42) For example, in accordance with Act 106 and Circular Letter 1300-46-27, Defendants must bill the municipalities through monthly charges to ensure that employers only receive a Pay-Go fee for pensioners

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS  Doc#:7561-22  Filed:06/21/19  Entered:06/21/19 22:54:55  Desc:
Exhibit V  Page 13 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 12 of 28

Page 12

CERTIFIED TRANSLATION

and beneficiaries for which they are responsible, since every month there is a change in that number. However, instead of monthly billing (which would allow for the taking into account of the participants who had begun to receive their pension that month, and other pensioners or beneficiaries who no longer received their pension), the Department of the Treasury billed the Municipality of San Juan only once, for the full fiscal year 2017-2018. While the bills are divided by month, it is clear that they do not reflect the changes that have occurred month by month, since they all request an identical payment of $4,560,862.59 per month, with the only exception of the May 2018 invoice, which, in an apparent error, requires $4,560,852.59.

43) In addition, Defendants have refused to grant the Municipality of San Juan access to the information and documentation that the latter requested to verify that the calculation of the Pay-Go Fee invoice was correct. Note that the interest and right of access that the Municipality has with respect to the information requested is clear, as it is closely related to the legitimate interest to safeguard the management of the Municipality's fiscal affairs and the integrity of its public finances; as well as many other issues relating to proper management and operation of the municipal entity.

44) In this sense, note that on February 7, 2019, the Municipality of San Juan sent an email to Mrs. Luz D. Cintrón Caraballo, accountant of the Retirement Systems Administration, requesting the corresponding Register provided in article 2.2 of Act 106. This request was made in order to be able to verify how many pensioners and beneficiaries the Municipality is responsible for, and the amount owed to each one of them. However, the request for information regarding the management and administration of the plaintiff Municipality was never answered.

45) To the contrary, the day after having requested the information that would help to verify the invoices received from the sued agencies in relation to the Pay-Go fee, the Municipality of San Juan received a notification from the Municipal Revenues Collection Center ("CRIM").

46) The notification refers to Act No. 253-2018, which exempts municipalities from the contribution they had to make to the Puerto Rico Health Insurance Administration ("ASES"), for the period of July 1, 2018 to

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 14 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 13 of 28

Page 13

CERTIFIED TRANSLATION

September 30, 2019. Instead of such payment, 50% of it is applied as a credit to the debt that the municipalities have with the Retirement Systems Administration. And, in case the municipalities do not have debt or, the debt is less than the resources corresponding to them for said contribution to the ASES, the application of the granted credit extends into fiscal year 2019-2020.

47) According to the notification of February 8, 2019, and without prior notice to the Municipality of San Juan, the Retirement Systems Administration intended to certify to the CRIM a debt for the Pay-Go fee of $52,660,761.30 for the fiscal year 2017-2018 chargeable to the Municipality. In addition, said Defendant applied a credit of approximately $18,793,592.79 of municipal income to this alleged debt, under the provisions of Act No. 253-2018. All this, without having responded to various requests for information from the plaintiff Municipality or the communication dated December 12, 2018, requesting a meeting to discuss its objections.

E. *The Fiscal Control Board requires Defendants to charge the Plaintiff municipality the Pay-Go Fee, pursue its assets and request liens on municipal funds before the CRIM*

48) The above being the state of relations between the parties, on April 30, 2019, the Fiscal Control Board operating under federal law PROMESA, sent a letter to Defendants. Through the aforementioned letter, signed by Ms. Natalie A. Jaresko, Defendants were required, among others, to carry out collection efforts aimed at recovering the debt for the Pay-Go fee, within an aggressive and accelerated work schedule.

49) Among the concrete measures required by the Fiscal Control Board from Defendants, some highlights are: (i) the adjustment and retention by the Department of the Treasury of the accounts, obligations and advances over which debtors of the Pay-Go fee have some right, in order to allocate said funds to service the Pay-Go debt; (ii) that Defendants, likewise, require CRIM to deliver municipal remittances for the purpose of servicing the Pay-Go debt; and (iii) that Defendants also

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 15 of 57
CERTIFIED TRANSLATION
SJ2019CV005411 05/29/2019 08:06:26 am Page 14 of 28

Page 14

request from CRIM a preferential, permanent and automatic statutory attachment, of municipal funds in favor of the Retirement System, until the payment of the Pay-Go fee is satisfied.

50) **The measures required of Defendants by the Fiscal Control Board have an implementation and execution deadline of May 31, 2019. As is public knowledge in the jurisdiction, Defendant officers have expressed to the media that they effectively intend to implement the measures and collection mechanisms that were required by the Fiscal Control Board. Very particularly, those listed in the preceding section. The above, in and of itself, accentuates the sense of urgency and extraordinary character exhibited by the Complaint of caption.**

<u>**Procedural Mechanisms Applicable to the Causes of Action and Claims Contained in the Complaint**</u>:

<u>***Regarding the figure of the preliminary and permanent injunction:***</u>

51) The remedy from English courts of Equity known as Injunction can be defined as a written command issued by a court, under its seal, directed to a person to refrain from doing or for allowing to be done by other people under its intervention, a certain thing or action that harms the right of another person. The purpose of the Injunction is "to avoid the occurrence of harm to the assets or other interests which, if not avoided immediately, would later result in irreparable damage." Godreau Robles, Michel, "La posesión y su protección sumaria", 58 Rev. Jur. UPR 299, 313 (1989).

52) This mechanism "is characterized by its immediacy, by its action aimed at avoiding imminent harm or to restore the rule of law violated by oppressive, illegal or violent conduct of the transgressor of the legal order." *Plaza Las Américas v. N & H*, 166 DPR 631 (2005). In that sense, injunctions provide a remedy whose purpose is to vindicate the rule of law before the circumstances make such compliance too expensive or impossible. *Plaza Las Américas v. N & H, supra.*

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 16 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 15 of 28

Page 15

53) There are several types of Injunction, namely: (1) permanent or classic injunction that is issued once evidence is discovered and a hearing is held, it is thereby the final command issued by the court; (2) preliminary injunction; (3) a temporary restraining order, which is only issued in emergency situations, without having to previously notify the adverse party, and is regulated by Rule 57.2 of Civil Procedure; and the (4) statutory injunction that is regulated by special laws.

54) In *VDE Corporation v. F & R Contractors*, 180 DPR 21 (2010), the Supreme Court discussed the scope and origins of this extraordinary remedy:

> In general, the extraordinary *injunction* remedy is designed to prohibit or order the execution of a certain act, in order to avoid causing imminent damage or irreparable damage to some person, in cases where there is no other adequate remedy at law. *ELA v. Asoc. de Auditores*, 147 DPR 669, 679 (1999). But nevertheless, the *injunction* is a remedy directed primarily against future acts that threaten to be committed or that are anticipated to be committed. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 4th ed., Puerto Rico, Lexis Nexis, sec. 57.03, at 463.

55) In order to determine whether the extraordinary *injunction* remedy is necessary, it must be evaluated whether or not the action connotes a harm of patent intensity to the rights of an individual who claims urgent repair. *Gracia Ortiz v. Policía de Puerto Rico*, 140 DPR 247 (1996). Therefore, a harm that cannot be adequately satisfied by using the legal remedies available constitutes an irreparable damage. *Pérez Vda. Muñiz v. Criado*, 151 DPR 355, 373 (2000). That is why the promoting party must show that if the remedy is not granted, it would suffer irreparable damage. *Misión Industrial v. Junta Planificación*, 142 DPR 656, 681 (1997). *VDE Corporation v. F & R Contractors*, supra, at 41.

56) Rule 57 of the Civil Procedure of 2009, 32 LPRA App. V, sets out the requirements for the issuance of an injunction or a preliminary injunction. Specifically, Rule 57.3 provides that in deciding whether to issue a temporary restraining order or a preliminary injunction, the court shall consider, among others, the following:

> (a) the nature of damage to which the petitioner is exposed;
>
> (b) the irreparable harm or lack of an adequate remedy at law;
>
> (c) the likelihood that the petitioner will prevail;

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
CERTIFIED TRANSLATION Exhibit V Page 17 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 16 of 28

Page 16

(d) the likelihood that the cause may be rendered moot;

(e) the impact on the public interest of the remedy sought, and

(f) the petitioner's diligence and good faith.

57) Such requirements had previously been recognized by the Supreme Court of Puerto Rico. *See, Municipio de Ponce v. Rosselló*, 136 DPR 776, 784(1994); *Puerto Rico Telephone Co. v. Superior Court*, 103 DPR 200, 202(1975) and reiterated in *VDE Corporation v. F & R Contractors*, *supra*, at 41-42. The Supreme Court states:

> The fundamental purpose of the preliminary *injunction* arises from the *raison d'être* of the fourth criterion outlined: maintaining the status quo until the trial is held on its merits so that there is no situation where the judgment addressing the request for permanent *injunction* finally issued becomes moot or causes damage of greater consideration to the petitioner while the litigation continues. [*Quotations omitted*] Likewise, we must mention that, although the fourth criterion is the most important, it is concomitant with the second criterion: the irreparability of damages or the existence of an adequate remedy in law. [*Quotations omitted*]
>
> Now, the granting of a preliminary *injunction* order or temporary restraining order rests on the court's sound discretion, therefore the decision that orders it will not be revoked in appeal unless it is shown that said forum abused its discretionary powers [*Quotations omitted*] See, *VDE Corporation v. F & R Contractors*, *supra*, at p.42.

### ***Regarding writ of mandamus:***

58) It has been repeatedly established that the writ of mandamus is a discretionary and high prerogative remedy, which is issued to order any natural person, corporation, or lower-ranking court to fulfill or execute an act that is part of its duties and attributions. Article 369 of the Code of Civil Procedure (1933), 32 LPRA §3421. Also, it has also been decided that, although *mandamus* is a remedy in law, it shares in equitable remedies, so that some guiding principles of equitable remedies, such as those governing injunctions, are applicable to the writ of mandamus. *See*, *Rodríguez v. Corte*, 53 DPR 575, 577 (1938); *Maldonado v. Programa de Emergencia de Guerra*, 68 DPR 976 (1948); *Abella v. Tugwell, Gobernador*, 68 DPR 464 (1948); *Nine v. Ortiz*, 67 DPR 940 (1947) and *Rexach & Piñero v. Sancho Bonet*, 57 DPR 337 (1940).

59) The extraordinary remedy of *mandamus* is only warranted to demand the fulfillment of a duty imposed by law, that is, a "ministerial" duty

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 18 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 17 of 28

Page 17

which, as such, does not allow for the exercise of any discretion, but is mandatory and imperative. That is, "the law must not only authorize, but demand the required action." *See*, *Espina v. Calderón,* 75 DPR 76, 84 (1953); *Pueblo v. La Costa, Jr., Juez*, 59 DPR 179 (1941); *Álvarez de Choudens v. Tribunal Superior*, 103 DPR 235, 242 (1974); *Rodríguez Carlo v. García Ramírez*, 35 DPR 381, 384 (1926); *Pagán v. Tower,* 35 DPR 1, 3 (1926) y *Partido Popular v. Junta de Elecciones*, 62 DPR 745, 749 (1944).

60) The Supreme Court of Puerto Rico has also stated that if the law prescribes and defines the duty to be fulfilled with such precision and certainty that nothing is left to the exercise of discretion or judgment, the act is a ministerial one. It's not about a mere directive or a provision that requires doing something, without more. It should be a specific mandate with which the defendant must comply and that does not allow it to decide whether or not to comply with the act requested. On the other hand, when the execution of the act or the action that is described depends on the discretion or judgment of the official, such duty is considered as non-ministerial. Consequently, as they are not ministerial, discretionary duties remain outside the scope of the *mandamus* remedy. *Álvarez de Choudens v. Tribunal Superior, supra*; *Rodríguez Carlo v. García Ramírez, supra*; *Pagán v. Towner, supra; Partido Popular v. Junta de Elecciones, supra*.

61) To the extent that the writ of *mandamus* is a high prerogative writ, "its issuance is not invoked as a matter of law, but relies on the fair discretion of the judicial forum. Issuance "is not warranted when there is an ordinary remedy within the law, because the purpose of the writ is not to replace legal remedies but to make up for the lack of them"." *AMPR v. Srio. Educación,* 178 DPR 253, 266-267 (2010), quoting with authority *Ortiz v. Muñoz, Alcalde de Guayama*, 19 DPR 850 (1913).

62) Rule 54 of the Civil Procedure of 2009, 32 LPRA App. V, establishes the procedure for the issuance of the extraordinary writ of *mandamus*:

> The remedy heretofore available by a writ of *mandamus*, whether peremptory or alternative, may be obtained by filing a sworn petition therefor. Whenever such remedy is requested and the right to demand the immediate performance of an act is evident and it appears that there is no excuse for not performing it, the court may peremptorily order that the remedy be granted; otherwise, it shall order that an answer be filed and, as soon as practicable, shall hold a hearing

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc: Exhibit V Page 19 of 57
CERTIFIED TRANSLATION
SJ2019CV005411 05/29/2019 08:06:26 am Page 18 of 28

Page 18

to receive evidence, if necessary, and shall promptly make a decision. Compliance with the orders entered by the court shall be in the same manner required for compliance with any other order.

63) *Mandamus* is a discretionary and high prerogative writ whereby a person is ordered to perform an act which appertains to their office or duty. See, Art. 649 21 LPRA 3421is within his or her functions or duties. See Art. 649 of the Code of Civil Procedure, 32 LPRA § 3421; *Báez Galib y otros v. CEE*, 152 DPR 382 (2000). Issuance of this writ requires the defendant to have the authority under law to execute the act ordered by the Court, since the writ does not confer any new authority. However, *mandamus* is conceptualized to obligate any person, corporation, board or inferior court to perform an act that the law particularly orders as a duty resulting from public employment, office or function, when such duty does not involve discretion but is a ministerial duty. This means that the law must prescribe such action with such precision and certainty so as to leave nothing to the exercise of any judgment or discernment. D. Rivé Rivera, Recursos Extraordinarios, 2nd ed., San Juan, Ed. U.I.A., at 107 (1996).

64) Among the determining factors for issuance of the writ are the following: 1) the possible impact that the writ may have on the public interest which may be involved; 2) avoiding undue interference in the powers of the Executive Branch; and 3) that the act cannot be susceptible to confusion or prejudice the rights of third parties. See, *Noriega v. Hernández Colón*, 135 DPR 406 (1994).

65) In order for a writ of *mandamus* to be issued it is insufficient that the petitioner have a clear right to what he is requesting and that the defendant have a corresponding obligation to allow the exercise of that right, because it is a high prerogative writ. See, *Dávila v. Superintendente de Elecciones*, 82 DPR 264 (1960). Thus, the Court, both when it is deciding whether or not the writ should issue, and when it establishes the contents of the order, must measure all the concurring circumstances. That is to say, the remedy is not granted as soon as the right of the petitioner is recognized, rather it issues only when the Court is convinced that the purposes of individual and social utility shall be served. For this it is

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 20 of 57
CERTIFIED TRANSLATION
SJ2019CV005411 05/29/2019 08:06:26 am Page 19 of 28

Page 19

indispensable that consideration be given to the effects of the order on the proper fulfillment of the responsibilities of the person affected by it and to what extent the petitioner shall receive a benefit. Therefore, the Court should establish a fine equilibrium among diverse interests in conflict. *Dávila v. Superintendente de Elecciones, supra.*

66) It is very important to emphasize that prior to filing the petition, caselaw requires, as an essential condition, that the petitioner have made a prior request to the defendant that he or she fulfill the duty being demanded, and both the request and its refusal, or the officer's failure to process the request, must be alleged in the petition. *See, Medina v. Fernós, Comisionado*, 64 DPR 857 (1945); *Undaz v. Padín*, 48 DPR 306 (1935); *Suárez v. Corte*, 65 DPR 850 (1946). This requirement is dispensed with only: 1) when it is apparent that the requirement would have been futile or fruitless, since it would have been denied had it been made, or 2) when the duty which is to be demanded is of a public nature; as opposed to of a particular nature which affects only the rights of the petitioner. See, *Noriega v. Hernández Colón, supra*, at 448-449; *Dávila v. Superintendente de Elecciones, supra*; *Medina v. Fernós, Comisionado, supra*; *Urdaz v. Padín, supra*; *Suárez v. Corte, supra*; *Espina v. Calderón, supra*; *Martínez Nadal v. Saldaña*, 33 DPR 721, 736 (1924).

### *Regarding the Procedural Mechanism of the Declaratory Judgment:*

67) Rule 59 of the 2009 Rules of Civil Procedure regulates the procedure for declaratory judgments. (32 LPRA Ap. V). Rule 59.1 provides as to the propriety of declaratory Judgments:

> The Court of First Instance shall have the authority to declare rights, status and other legal relationships, even though another remedy is or may be instigated. The fact that a declaratory judgment or decree has been requested shall not be deemed sufficient motive to challenge any action or proceeding. The declaration may be either affirmative or negative in form and effect and shall have the force and effect of final judgments or resolutions. The court may order a speedy hearing of an action for a declaratory judgment giving it preference in the calendar.

68) "[D]eclaratory judgments are issued in a proceeding in which the facts alleged show that there is a substantial controversy between parties who have adverse legal interests, without a prior harm having occurred to those interests

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 21 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 20 of 28

Page 20

for the purpose if dissipating legal uncertainty and contributing to social peace." See R. Hernández Colón, <u>Derecho Procesal Civil</u>, Ed. Michie de Puerto Rico, 1997, at 448. See, also, *Suárez Jiménez v. CEE I*, 163 DPR 347 (2004).

69) For its part, Rule 59.4 sets out that trial courts may grant additional remedies based on a declaratory judgment or decree, so long as they are necessary or proper. (32 LPRA Ap. V). These shall be obtained by means of a petition addressed to a court with jurisdiction to grant the remedy. *Id*. If the petition is considered sufficient, the court shall require any adverse party whose rights have been adjudicated by means of a declaratory judgment or decree to appear within a reasonable term to show cause why the additional remedies requested should not be immediately granted.

70) The purpose of declaratory judgments is to provide a remedial procedural mechanism through which courts may determine the merits of any claim that in latent form constitutes a potential danger against it. *See, Charana v. Pueblo*, 109 DPR 641, 653 (1980). The court shall have ample discretion with respect to these petitions for declaratory judgment. Among the powers the court has is the power to issue a definitive judgment or order after the speedy conduct of a hearing. (32 LPRA Ap. V, R.59.5).

71) Also, constant caselaw on the matter points out that a declaratory judgment allows the court to clarify any divergence in opinion in the interpretation of a statute, "when there is a substantial controversy among parties with adverse legal interests […]" *Mun. Fajardo v. Srio. Justicia et al.*, 187 DPR 245, 254-255 (2012).

### **Cause of Action and Requested Remedies:**

### ***First Cause of Action (Mandamus, Preliminary and Permanent Injunction and Declaratory Judgment with Respect to the Obligation to Produce the Register Provided for in Act 106)***.

72) Plaintiff adopts and incorporates by reference all of the allegations and causes raised above and/or made below in the Complaint, for all relevant legal purposes.

73) Having considered the allegations in light of the rules and doctrines described

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 22 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 21 of 28

Page 21

above, it is requested that this Honorable Court, declare the illegality of Defendants' failure to comply with the obligation to produce the Register described in Article 2.2 of Act 106, while they simultaneously expect to collect from the Municipality of San Juan the Pay-Go fee under Art. 2.1(b) of Act 106 which must be calculated based on information derived from said Register.

74) Production of the Register and the subordination of the collection until such time as said condition imposed by law is satisfied is a strict matter of law which does not involve any discretion whatsoever on the part of Defendants. That is to say, it involves an act whose performance on the part of Defendants is clearly required and defined by law. Therefore, Art. 2.2 of Act 106 prescribes the act of creating a Register with such precision and certainty, that nothing is left to the exercise of judgment or discernment on the part of Defendants. This being the case, it is requested that a writ of *mandamus* be issued ordering Defendants to create and disclose the referenced Register ordered by the aforecited statute.

75) It is further requested that Defendants be ordered, by means of a preliminary and permanent injunction, to comply with their statutory obligation to maintain and produce the Register mandated by Act 106.

### *Second Cause of Act (Declaratory Judgment and Preliminary and Permanent Injunction with respect to the Obligation to grant to the Municipality of San Juan, access to the Information which supports and validates the correctness of the Amounts Invoiced as to the Pay-Go Fee*

76) Plaintiff adopts and incorporates by reference all of the allegations and causes raised above and/or made below in the Complaint, for all relevant legal purposes.

77) As is known, the power delegated to Municipalities by the Legislature is broad and extensive. Thus, it is intimated that "municipalities shall have the necessary and suitable powers for exercising all the authorities corresponding to a local government and for achieving its purposes and functions." Article 2.001 of Act No. 81 of August 30, 1991, as amended, known as the Puerto Rico Autonomous Municipalities Act. (21 LPRA §4051).

78) Likewise, said Article 2.001, in subsection (o), authorizes the Municipality to exercise legislative and executive power in all municipal matters which redounds to the well-being of the community and in its

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 23 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 22 of 28
CERTIFIED TRANSLATION

Page 22

economic, social and cultural development, in the protection of the health and safety of the people; in encouraging civic action and the solidarity of the communities, and in the development of works and activities of collective interest, subject to applicable legislation. See, Act No. 81, *ante*.

79) Likewise, the statute cited above, in Article 1.002, declares the public policy of the Commonwealth of Puerto Rico to grant to municipalities the maximum possible autonomy and to provide the financial tools, as well as the powers and authority necessary to assume a central and fundamental function in its urban, social and economic development. See, Act. No. 81, *ante*.

80) As can be gleaned from the above cited article, the scope of the powers and prerogatives delegated to municipal entities is extraordinarily broad and liberal. On this subject, the Supreme Court of Puerto Rico has expressed itself in the following terms:

> As can be observed, the provisions cited above establish broad general powers both for the municipality and for its main executive, in order that they may take the measures necessary to carry out their respective functions and promote the welfare of the municipal community. It is evident that a piece of legislation such as the Autonomous Municipality Act, *supra*, cannot specify all the powers and authorities that the municipality and its Mayor will have. The infinite variety of situations that may arise in the different municipalities throughout the years requires that a law such as this provide for general powers which would allow them to reach all the situations which might arise to require municipal governmental action. Therefore, we have previously held that the powers and faculties conferred to municipalities by the Autonomous Municipalities Act should be interpreted liberally, in order that municipal authorities are able to efficiently address the needs and the welfare of its inhabitants. *Gobierno Municipal de Vega Baja v. Administración de Terrenos*, 154 DPR 628 (2001). *See also Mun. de Peñuelas v. Ecosystems, Inc.*, 197 DPR 5 (2016); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Com. Pro. Perm. Bda. Morales v. Alcalde*, 158 DPR 195 (2002):

81) In the present case, it is clear that the Municipality of San Juan has a perfect right to access the information and documentation which supports and validates the amounts invoiced for the Pay-Go fee notified by Defendants. The information in question is intimately related to the Municipality's legitimate interest in safeguarding the administration of its financial affairs and the integrity of public funds; as well as other matters relevant to the proper management and functioning of the municipal entity

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 24 of 57
CERTIFIED TRANSLATION
SJ2019CV005411 05/29/2019 08:06:26 am Page 23 of 28

Page 23

82) In the same manner, it is clear that the Municipality is invested with the right of access claimed above, in light of the endowment of such powers as are necessary and convenient to the exercise of all the faculties corresponding to a local government and achieving its purposes and functions, which are conferred upon it in accordance with its enabling statute.

83) At the same time, the request for information and documentation directed to the Defendants constitutes a legitimate exercise of the municipal executive power in a matter which is clearly associated with the welfare of the community, economic, social and cultural development, the protection of the health and safety of the people; which promotes civic action and the solidarity of communities, and the development of works and activities of collective interest, subject to applicable legislation. There is therefore no legal reasoning or grounds for denying access to the public documents requested by the Municipality of San Juan, as Defendants have repeatedly done. **After all, this is a matter of observing the most basic and elemental parameters of transparency and accountability in public and governmental administration.**

84) By virtue of the above, it is requested that this Honorable Court issue a sentence declaring illegal the governmental Defendant entities' failure to give the Municipality of San Juan access to the information and documentation that supports and confirms and validates the correctness of the invoices for the Pay-Go fees notified; and that it issue a preliminary and permanent injunction ordering Defendants to grant the Municipality of San Juan effective access to the information relating to invoices for Pay-Go fees.

### *Third Cause of Action (Declaratory Judgment and Preliminary and Permanent Injunction as to the Obligation to Respect the Municipality of San Juan's Right to Due Process)*

85) Plaintiff adopts and incorporates by reference all of the allegations and causes raised above and/or made below in the Complaint, for all relevant legal purposes.

86) As is known, the prevailing legal system has acknowledged that a municipality has a legitimate governmental interest in the revenue of the funds which constitute its income. In this sense, it has also been recognized that a

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Municipality is entitled to the *due process of law* granted by the Uniform Administrative Procedures Act (LPAU). *Mun. Fajardo v. Srio. Justicia et al., supra.*

87) As relevant here, due process necessarily implies that the Municipality of San Juan have the real and timely opportunity to question and challenge the amount of the debt claimed by Defendants for Pay-Go fees; and that it be given access to relevant information and documentation such that the exercise of reviewing the amount claimed is not a pro-forma exercise, but rather that it be efficient.

88) In the present case, the governmental entities sued have violated the *due process* of the plaintiff Municipality, by not giving it access to the information used to calculate the amounts in the Pay-Go fee invoices which are expected to be collected from the municipality. **In this sense, no presumptuous act of legality is required to notice that the procedure established by the Department of the Treasury in Circular Letter No. 2019-01 is self-serving and constitutes an illegal, arbitrary and capricious act on the part of the agency sued. Which translates into a clear and patent prejudice to the municipal treasury and the welfare of the inhabitants of San Juan. It is affirmatively alleged that said circular letter is inofficious and illegal on its face.**

89) For the reasons above, if the Department of the Treasury means to collect from the Municipality of San Juan certain amounts corresponding to supposed payment obligations through the Pay-Go system, it was said Defendant's responsibility to demonstrate the existence of the obligations towards the pensioners and beneficiaries, and that is now its procedural burden in the present proceeding. The contrary would constitute an arbitrary act which would render the Municipality defenseless, since it would be at the mercy of a creditor with the capacity to determine the proper amount unilaterally.

90) As a result, it is requested that this Honorable Court declare the procedure established in Circular Letter No. 2019-01 issued by the Department of the Treasury to be illegal and contrary to law, as well as the entirety of the process followed by

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 26 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 25 of 28

Page 25

Defendants in regards to the challenges made by the Municipality of San Juan to the invoices for the Pay-Go fee, since it deprives the Municipality of the legitimate governmental interest over its funds and finances, as well as the due process of law that is conferred upon the municipality by the LPAU.

91) It is further requested that the Court issue a preliminary and permanent injunction ordering Defendants to comply with the *due process of law* to which Plaintiff Municipality is entitled as to all those things relating to the verification, validation and objection to the amounts invoiced corresponding to the Pay-Go fee.

### *Fourth Cause of Action (Preliminary and Permanent Injunction on Collection Efforts for the Pay-Go Fee)*

92) Plaintiff adopts and incorporates by reference all of the allegations and causes raised above and/or made below in the Complaint, for all relevant legal purposes.

93) It is further requested that the Court issue a preliminary and permanent injunction ordering Defendants to abstain from collecting any payments from the Municipality of San Juan for the Pay-Go fee until the aforementioned deficiencies and legal defects in the claims or causes raised above are fully cured.

94) It is further requested that the Court issue a preliminary and permanent injunction through which Defendants are forbidden from attaching, encumbering or in any other manner affecting, either provisionally or permanently, funds belonging to the Municipality of San Juan maintained in any private or governmental entity, until the aforementioned deficiencies and legal defects in the claims or causes raised above are fully cured.

95) It is likewise requested that the Court issue a preliminary and permanent injunction forbidding Defendants from implementing or executing any collection efforts required of them by the Financial Oversight Board, by means of the missive dispatched by said body on April 30, 2019.

96) It is very particularly requested that Defendants be preliminarily and permanently forbidden from: (i) carrying out adjustments or withholdings at the Department of the Treasury of the accounts, obligations and advances in which the Municipality

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 27 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 26 of 28
CERTIFIED TRANSLATION

Page 26

of San Juan has some rights, in order to allocate said funds to service the debt for Pay-Go fees; (ii) requiring CRIM to deliver the remittances corresponding to the Municipality of San Juan to service the debt for Pay-Go fees; and (iii) requesting a priority, permanent and automatic statutory attachment from CRIM upon the funds of the Municipality of San Juan which are in the treasury or accounts of said entity, in favor of the Retirement System, until such time as the Pay-Go fee is satisfied.

97) In the case at hand, the allegations above show that there is a real concrete and justiciable controversy between the parties, with respect to the correctness of the invoice amount for the Pay-Go fee which are expected to be collected from the Municipality of San Juan. It is also clear that the process followed by Defendants –at a minimum—has been troubled and full of irregularities, in which Plaintiff Municipality has not been provided an opportunity to validate and confirm the correctness of the claimed debt amount, prior to satisfying the same. That is to say, that in this case the entirety of the process and the actions followed by Defendants in relation to the collection from the Municipality of San Juan of the Pay-Go fee is dubious and questionable.

98) This being the state of affairs, in allocating municipal funds to the partial or full payment of an uncertain debt which does not have minimal guarantees of reliability and which has been "calculated" by Defendants in a manner and form which goes against multiple statutory provisions, as well as the most basic concepts of good faith, fair treatment and substantial justice, would constitute an action which is patently prejudicial and detrimental to the public interest.

99) Note, then, that the Municipality's position cannot be reduced to an adventurous decision to not pay its debt; but rather, in a gesture of fiscal caution, to pay only as much as is due under law and according to justice. Not a single cent more, not a single cent less. But for such payment to be implemented, it is clear that the legitimacy and correctness of the debt claimed by Defendants should be specified intelligently and in a well-informed manner between both the parties and not unilaterally by one of the Defendants

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 28 of 57
CERTIFIED TRANSLATION
SJ2019CV005411 05/29/2019 08:06:26 am Page 27 of 28

Page 27

100) Under the circumstances, being vulnerable to the collection of uncertain amounts whose totals are questionable, and whose efforts to withhold, adjustments, or attachments of municipal funds would expose Plaintiff Municipality to suffer irreparable harm. This is true insofar as said detriment to its own funds would have an impact on the rendering of essential services to citizens; as well as the proper administrative and operational functioning of the entering Plaintiff town council. The adverse effect of the above goes beyond the coldness which is part of the mathematical calculation, and translates into a human drama which directly affects the capital citizenry and its concrete reality. The irreparable harm to which Plaintiff is exposed is incontrovertible and the balance of the interests favors concession of the extraordinary remedies requested.

101) Moreover, it notable that, should the extraordinary remedies requested, and the corresponding orders to stay or prohibit implied by these, not be granted, the controversy has a high potential for turning moot. Since municipal funds could be encumbered, attached or withheld or in some other form affected before the amount of the debt legitimately owed by the Municipality of San Juan in relation to the Pay-Go fee could be established with certainty and clarity. And this reality suggests the effective granting of the extraordinary writs requested pursuant to *mandamus* and preliminary injunction.

102) To the above we may add that as a matter of fact and law we maintain that the Plaintiff Municipality has a high probability of prevailing on the merits of its cause. That is to say, the claims made by the Municipality of San Juan are backed by the current legal system and endorsed by the constant caselaw and varied statutory provisions governing the particular subject matter litigated herein. Again, this suggests that the extraordinary remedies are warranted.

**WHEREFORE, IN LIGHT OF THE ABOVE**, it is very respectfully requested that this Honorable Court: proceed to (i) Grant, the present Complaint and, as a result, grant the ordinary and extraordinary relief requested herein; (ii) grant Plaintiff any other relief and/or remedies

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS Doc#:7561-22 Filed:06/21/19 Entered:06/21/19 22:54:55 Desc:
Exhibit V Page 29 of 57
SJ2019CV005411 05/29/2019 08:06:26 am Page 28 of 28

Page 28

warranted under Law and/or Equity; and (iii) impose on Defendants payment of costs, litigation expenses and attorney's fees.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this May 29, 2019.

| **BUFETE FRANK TORRES-VIADA, C.S.P.** | **MARIANI FRANCO LAW, PSC** |
|---|---|
| PO Box 192084 | Po Box 9022864 |
| San Juan PR 00919-2084 | San Juan, PR 00902-2864 |
| Tel. (787) 754-1102 • Fax (787) 754-1109 | Tel. (787) 620-0038 • Fax (787) 620-0039 |

<div style="display:flex; justify-content:space-between;">

*f/Frank Torres-Viada*
**Frank Torres-Viada**
RUA No. 14724
Bar No. 16136
ftv@ftorresviada.com

*f/ Raúl S. Mariani Franco*
**Raúl S. Mariani Franco**
RUA No. 11094
Bar No. 12393
marianifrancolaw@gmail.com

</div>

**CHARLIE HERNÁNDEZ LAW OFFICES**
Calle Tetuán 206, Suite 701
Viejo San Juan, PR 00901-1839
Tel. • Fax (787) 382-8360

*f/Charlie M. Hernández*
**Charlie M. Hernández**
RUA No. 9411
Bar No. 10784
charliehernandezlaw@gmail.com

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| MUNICIPIO AUTÓNOMO DE SAN JUAN, representado por su Alcaldesa CARMEN YULÍN CRUZ SOTO | **CASO NÚM:** |
| **Parte Demandante** | **SALA:** |
| **Vs.** | |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO, por conducto de su Secretaria de Justicia, Wanda Vázquez Garced; DEPARTAMENTO DE HACIENDA DE PUERTO RICO y RAÚL MALDONADO GAUTIER, en su capacidad oficial como Secretario de Hacienda de Puerto Rico; ADMINISTRACIÓN DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DE PUERTO RICO y LUIS COLLAZO RODRÍGUEZ, en su capacidad oficial como Administrador y Director Ejecutivo del Sistema de Retiro; JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO y CHRISTIAN SOBRINO VEGA, en su capacidad oficial dual como Presidente de la Junta de Retiro y Director Ejecutivo de la Autoridad de Asesoría Financiera y Agencia Fiscal del Puerto Rico (AAFAF) | **SOBRE:** INTERDICTO PRELIMINAR Y PERMANENTE, MANDAMUS Y SENTENCIA DECLARATORIA |
| **Parte Demandada** | |

## Demanda Jurada

**ANTE EL HONORABLE TRIBUNAL:**

COMPARECE la parte demandante de epígrafe, MUNICIPIO AUTÓNOMO DE SAN

JUAN, representado por su Alcaldesa, CARMEN YULÍN CRUZ SOTO, actuando en su

capacidad oficial, por conducto de la representación legal que suscribe, y muy

respetuosamente EXPONE, ALEGA y SOLICITA:

### Introducción:

1)  El presente recurso es la consecuencia de una estrategia desarrollada por los

demandados, que busca transferir a los municipios las responsabilidades

asumidas por el gobierno del Estado Libre Asociado de Puerto Rico (ELA) por el

pago de las deudas contraídas por el ELA con los beneficiarios del Sistema de

Retiro. Nótese que la crisis de los sistemas de retiro es el resultado de las

decisiones tomadas exclusivamente por los demandados, pero se pretende que la misma sea resuelta por los municipios de Puerto Rico, incluyendo al demandante. Además, la demanda de epígrafe busca que se valide una sabia política pública, que fomenta el cotejo y revisión rigurosa de las responsabilidades fiscales antes de proceder al pago de las mismas. Esa visión contrasta con la pretensión de los demandados, quienes insisten en que el Municipio de San Juan consienta y efectúe el pago de la cantidad reclamada sin revisar ni auditar la misma. La demandante reafirma el que la revisión y auditoría previo al pago, no solo está avalada por el ordenamiento jurídico vigente, sino que representa la forma responsable de manejar los recursos públicos.

2) Así, esta petición se apuntala en aquel reclamo de transparencia en el manejo de los asuntos públicos que se impone como imperativo moral en el ejercicio del poder y virtud fundamental de la democracia. Se trata, pues, de un recurso que aspira a establecer con aquella confiabilidad, claridad y certeza a la que los demandados se han negado, el monto real de la deuda del Municipio Autónomo de San Juan (en adelante "Municipio de San Juan") por concepto de cargo Pay-Go, relacionado al sistema de retiro de sus empleados.

3) Movido por tales principios, y en protección y adelanto de los mejores intereses de sus constituyentes, el Municipio de San Juan respetuosamente solicita los recursos extraordinarios y ordinarios de epígrafe.

4) Lo anterior, a fines de que los demandados, siendo compelidos por autoridad judicial competente, se abstengan de los cobros arbitrarios por concepto del cargo "Pay-Go", que pretenden imponer al Municipio de San Juan. Ello, en tanto no den fiel y cabal cumplimiento a sus deberes estatutarios, según establecidos por la Ley 106-2017.

5) Puntualmente, el Municipio de San Juan solicita: (i) que los demandados concedan acceso a la información que sustenta los montos que pretenden ser cobrados al ayuntamiento por concepto del cargo "Pay-Go"; (ii) que los demandados se abstengan de cobrar al Municipio el cargo "Pay-Go", hasta en tanto se satisfaga la anterior condición y se adjudique el pleito en sus méritos; y (iii) que se prohíba a los demandados embargar, gravar o afectar de cualquier otro modo, de manera provisional o permanente, fondos pertenecientes al Municipio

de San Juan, mantenidos ante el Centro de Recaudación de Ingresos Municipales ("CRIM"), o cualquier otra entidad privada o gubernamental, hasta en tanto se satisfaga la anterior condición y se adjudique el pleito en sus méritos.

**Sobre las Partes**:

6)  El demandante, **Municipio Autónomo de San Juan**, es una entidad gubernamental creada bajo la Ley Núm. 81 del 30 de agosto de 1991, según enmendada, conocida como *Ley de Municipios Autónomos de Puerto Rico*. Su dirección física es Edificio Trilitos Piso 4 Río Piedras, Puerto Rico y su dirección postal es P.O. BOX 9024100 San Juan, PR 00902-4100 y su número telefónico es 787-480-2500. El Municipio Autónomo de San Juan comparece a la acción de epígrafe por conducto de su Alcaldesa, Carmen Yulín Cruz Soto.

7)  El demandado, **Departamento de Hacienda** es una instrumentalidad del **Estado Libre Asociado de Puerto Rico** y es acumulado al pleito de epígrafe por conducto de su Secretario, Raúl Maldonado Gautier, quien es traído en su capacidad oficial. Dicha entidad responde por las alegaciones y remedios solicitados en la presente demanda, en tanto por disposición expresa de ley es el encargado de cobrar el cargo Pay-Go, según alegado en los acápites subsiguientes de la presente demanda. El Estado Libre Asociado de Puerto Rico, por su parte, es traído a la presente acción civil por conducto de su Secretaria de Justicia, Wanda Vázquez Garced.

8)  La demandada, **Administración del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico** es una entidad gubernamental con capacidad para demandar y ser demandada y es acumulada al pleito de epígrafe por conducto de su Administrador y Director Ejecutivo, Luis Collazo Rodríguez, quien es traído al pleito en su capacidad oficial. Dicha entidad responde por las alegaciones y remedios solicitados en la presente demanda.

9)  La demandada, **Junta de Retiro del Gobierno de Puerto Rico,** es un organismo del Gobierno de Puerto Rico, independiente y separado de otros, con capacidad para demandar y ser demandada, incluso a nombre de los Sistemas de Retiro. Dicha parte es acumulada al pleito de epígrafe por conducto de su Presidente, Christian Sobrino Vega, quien es traído al pleito en su capacidad

oficial dual como Presidente de la Junta de Retiro y, en la alternativa, como Director Ejecutivo de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF).[1]  Dicha entidad responde por las alegaciones y remedios solicitados en la presente demanda.

### **Sobre los Hechos:**

### A. *El Sistema de Retiro de Empleados Públicos Se Torna Insolvente:*

10) La Asamblea Legislativa de Puerto Rico estableció el Sistema de Retiro de Empleados Públicos ("Sistema de Retiro"), mediante Ley Núm. 447 de 15 de mayo de 1951, para proveer un programa de retiro de beneficios definidos a los empleados del Gobierno de Puerto Rico. El Sistema fue dirigido por la Administración de los Sistemas de Retiro y financiado mediante contribuciones obligatorias de los empleadores y empleados participantes.

11) Los municipios de Puerto Rico, incluyendo el Municipio de San Juan, participaban en el Sistema por medio de contribuciones patronales correspondientes a sus empleados.  Sin embargo, los municipios nunca fueron responsables ni por el pago de las pensiones pagaderas, ni por la administración del Sistema. De hecho, los municipios no tenían información de las cantidades pagaderas a sus empleados y pensionados, ni mucho menos la información para determinar cómo se calcularon dichos montos.

12) Por décadas, el gobierno del Estado Libre Asociado de Puerto Rico ("ELA") no aportó las cantidades necesarias para sufragar el costo de las pensiones pagaderas a los empleados públicos jubilados y los que están por jubilarse. Como resultado de ello, el Sistema de Retiro enfrentó una considerable falta de fondos, y se vio obligado a agotar sus activos para realizar los pagos de pensiones a los jubilados.

13) La crisis fiscal del Gobierno de Puerto Rico llevó al Congreso de los Estados Unidos a promulgar la ley denominada "Puerto Rico Oversight, Management, and Economic Stability Act" ("PROMESA", por sus siglas en inglés).  Dicho estatuto federal, delegó amplios poderes en una Junta de Supervisión Fiscal (en adelante, "Junta de Supervisión").  Para el año 2017, el Sistema de Retiro ya estaba

---

[1] El Artículo 5.1 (a) de la Ley 106-2017 (3 LPRA § 9571), dispone que mientras la Junta de Retiro no esté constituida debidamente [...] el Director Ejecutivo de la AAFAF tendrá y ejercerá todos los poderes correspondientes a la Junta de Retiro [...].  En atención a ello, practicamos la acumulación en capacidad dual antes aducida, como medida cautelar.

insolvente, y en mayo de 2017, presentó un caso de bancarrota bajo el Titulo III de PROMESA.

### B. *El Gobierno de Puerto Rico Adopta el Sistema Pay-Go:*

14) El Gobierno de Puerto Rico asumió la responsabilidad de pagar los beneficios de los pensionados a partir del 10 de julio de 2017, mediante las Resoluciones Conjuntas de la Cámara de Representantes 186, 187 y 188 de 2017.

15) Por su parte, el Departamento de Hacienda emitió la Carta Circular Núm. 1300-46-17 de 27 de julio de 2017, notificando a las corporaciones públicas, los municipios, la Rama Ejecutiva, la Rama Judicial y la Rama Legislativa, que facturaría un cargo mensual para cubrir los costos de los beneficios a los pensionados provenientes de cada entidad gubernamental.

16) En el 23 de agosto de 2017, el Gobierno de Puerto Rico promulgó la Ley Núm. 106 para reformar el sistema de retiro ("Ley 106"). La Ley 106 eliminó el programa de retiro de beneficios definidos en el cual habían participado los empleados bajo el Sistema de Retiro previamente y lo reemplazó con un nuevo plan de aportaciones definidas financiado mediante, entre otras cosas, contribuciones de los empleados. Sin embargo, la Ley 106 garantizó que los jubilados y empleados conservaran todos los beneficios que acumularon bajo el anterior programa de retiro de beneficios definidos.

17) Para pagar los beneficios acumulados bajo el anterior programa, la Ley 106 requiere que todos los empleadores públicos paguen las pensiones acumuladas bajo la anterior estructura de beneficios definidos, según dichas cantidades sean efectivamente pagadas a los pensionados y beneficiarios ("Cargo Pay-Go"). **De esta manera, la Ley 106 transfirió la responsabilidad de pagar las pensiones de un Sistema insolvente a los empleadores de los exempleados, como lo es el Municipio de San Juan.**

18) Según la Ley 106, el Cargo Pay-Go es determinado e impuesto por la AAFAF y facturado y cobrado por el Secretario de Hacienda o por la persona o entidad que éste designe como autorizado para realizar el cobro. Las cantidades recaudadas por los cargos Pay-Go se utilizan para financiar la Cuenta para el Pago de las Pensiones Acumuladas, un fideicomiso mantenido por el Secretario de Hacienda,

y de esa manera pagar las pensiones acumuladas.

### C. *La Ley 106 Requiere Verificación del Monto del Cargo Pay-Go:*

19)  En lo aquí pertinente, la Ley 106 establece que la cantidad del cargo Pay-Go:

> será equivalente a la cantidad en efecto pagada a los Pensionados y
> Beneficiarios provenientes de cada entidad cubierta. El Secretario de
> Hacienda o la persona o entidad que éste designe estará autorizado a
> cobrar el Cargo 'Pay-Go'. En el caso de los Municipios, los cargos
> administrativos del esquema 'pay as you go' no serán incluidos en el
> cómputo del Cargo 'Pay-Go'. Ley 106, Art. 2.1(b).

20)  A fin de asegurar que las cantidades del cargo Pay-Go sean correctas, la Ley 106

obliga a que la Administración de los Sistemas de Retiro establezca un registro de

los montos que le corresponden a cada participante, beneficiario, y pensionado

de los sistemas de retiro ("Registro").  A esos efectos, expresamente dispone el

Artículo 2.2(a) del referido estatuto como sigue:

> Se creará y mantendrá un registro de cada Participante, Beneficiario y
> Pensionado de los Sistemas de Retiros que reflejará detalladamente las
> cantidades que le corresponde a cada uno como Pensión Acumulada
> según sus respectivos Sistemas de Retiros hasta la fecha en que entre
> en vigor la presente Ley. Detallará, sin que esto se entienda como una
> limitación, el beneficio acumulado al que tiene derecho el Participante,
> el historial de empleo y las aportaciones realizadas, de acuerdo a cada
> ley de retiro aplicable en la cual cotizó el Participante, Beneficiario o
> Pensionado. **De acuerdo a lo contenido en el registro, se
> emitirán los pagos correspondientes de las Pensiones
> Acumuladas a las que tienen derecho**, conforme a los términos de
> pago aplicables hasta el momento en que entre en vigor la presente Ley
> y de acuerdo a los Sistemas de Retiro a los que pertenezcan cada uno de
> los Participantes, Beneficiarios o Pensionados. [énfasis añadido].

21)  Destacando la importancia del Registro para la determinación de los montos a ser

cobrados por concepto del cargo Pay-Go, la Ley 106 obliga a la producción del

Registro en un plazo corto y definido.  En el mismo tenor, dispone el precitado

estatuto que el contenido del Registro será notificado a cada pensionado y

establece un proceso para corregir errores en el mismo.  Así, el Artículo 2.2(b)

provee:

> Los Administradores de los Sistemas de Retiro, incluyendo el Sistema
> de Retiro para la Judicatura, en coordinación con la AAFAF, estarán
> obligados a producir el registro mencionado en el inciso (a) de este
> Artículo de la siguiente forma:
>
> 1. En un término de sesenta (60) días a partir de la aprobación de esta
> Ley deberán producir un listado de todos los Beneficiarios y
> Pensionados de los tres Sistemas de Retiro; y
>
> 2. En un término no mayor de ciento ochenta (180) días a partir de la
> aprobación de esta Ley deberán producir un registro de todos los

Participantes, que incluya la Pensión Acumulada a cada uno por los tres Sistemas de Retiro al momento en que entre en vigor la presente Ley y los términos de pago de la misma. Los tres Sistemas de Retiro deberán tomar las medidas necesarias para garantizar que el registro contenga información fiel y exacta respecto a cada Participante, Beneficiario y Pensionado.

3. Una vez se produzca el registro, se le notificará a cada Participante, Beneficiario y Pensionado el contenido del mismo usando un método certero, eficaz e idóneo . . . quienes, a su vez, tendrán un término de cuarenta y cinco (45) días, a partir de la fecha de notificación, para presentarle a los Administradores de los Sistemas de Retiro evidencia fehaciente que demuestre que la información contenida en el registro es incorrecta o inexacta.

### D. *El Departamento de Hacienda y la Administración de los Sistemas de Retiro Violan la Ley 106 y Emiten Facturas Erróneas e Inconsistentes al Municipio de San Juan:*

22) El Departamento de Hacienda y la Administración de Sistemas de Retiro han incumplido con requisitos importantes de la Ley 106. En primer lugar, por información y creencia, la parte demandante alega que las demandadas aún no han producido el Registro de las cantidades que les corresponden a los Participantes, Pensionados y Beneficiarios, según el Artículo 2.2(a) de la Ley 106. Lo anterior, a pesar de que la Ley 106 dispone que el mismo se debió producir dentro de "un término de no mayor de ciento ochenta (180) días a partir de la aprobación de esta Ley."

23) Habiendo sido aprobado el estatuto en cuestión el 23 de agosto del 2017, el incumplimiento de las demandadas en cuanto a la producción del Registro expresamente mandatado por ley sobrepasa el período de un año y medio. Como resultado de semejante incumplimiento, los Participantes, Pensionados y Beneficiarios tampoco han tenido la oportunidad de revisar los montos y verificar la corrección, veracidad y adecuacidad de los mismos.

24) En segundo lugar, a pesar de que el cargo Pay-Go solo debe incluir "la cantidad en efecto pagada a los Pensionados y Beneficiarios provenientes de cada entidad cubierta" (Véase, Ley 106, Art. 2.1(b)), el **Departamento de Hacienda y la Administración de los Sistemas de Retiro han facturado al Municipio de San Juan cantidades que no corresponden a los Pensionados y Beneficiarios provenientes del Municipio de San Juan.**

25) A modo de ejemplo, el 18 de agosto de 2017, el Municipio de San Juan recibió las

facturas correspondientes a cada uno de los meses comprendidos entre julio de 2017 hasta junio de 2018. Según las facturas provistas, al ayuntamiento le corresponderían 4,591 pensionados y beneficiarios. Las facturas requieren un pago idéntico de $4,560,862.59 por mes, con la única excepción de la factura correspondiente al mes de mayo 2018, la cual requiere $4,560,852.59.

26) Al recibir estas facturas, la Unidad de Servicios de Retiro de San Juan ("Unidad de Servicios de Retiro") comenzó a revisar si los beneficiarios y pensionados nombrados en las facturas realmente correspondían al Municipio de San Juan.

27) Valiéndose del registro de la oficina de recursos humanos como referencia, la Unidad de Servicios de Retiro constató que las facturas emitidas por la Administración de los Sistemas de Retiro y el Departamento de Hacienda estaban plagadas de inconsistencias. Con tan solo un mínimo de información disponible, la Unidad de Servicios de Retiro pudo determinar que las facturas del cargo Pay-Go pretendían cobrar ilegalmente al Municipio de San Juan por los siguientes conceptos:

i) 340 beneficiarios que no pueden ser cotejados, ya que no se incluyeron los datos de nombre y seguro social del pensionado fallecido, la relación de afinidad o consanguinidad del beneficiario con el pensionado fallecido, la edad del beneficiario, de qué agencia o municipio se retiró el pensionado, ni la fecha de muerte;

ii) 132 pensionados con fecha de defunción anterior del primero de julio de 2017, sobre los cuales se facturaron beneficios de pensión. Asimismo, se desconocen los datos del beneficiario, si hubiere alguno, que pudo haber heredado la pensión y/o que está recibiendo la pensión, y si la cantidad a ser pagada por el Municipio de San Juan fue ajustada;

iii) 37 números de seguro social duplicados, identificados como beneficiario y pensionario a la vez;

iv) 104 pensionados los cuales, al comparar las fechas de separación del servicio en el Municipio de San Juan con la fecha de ingreso como pensionado, existe un periodo de más de 4 años transcurridos entre ambas fechas, por lo que el Municipio de San Juan no tiene evidencia de que éste haya sido el último patrono para el que rindió servicios el pensionado facturado; y

v) 470 pensionados sobre quienes no existe evidencia en la base de datos del Municipio de San Juan sobre su calidad de ex empleados del ayuntamiento.

28) Ante las inconsistencias antes relacionadas, el 23 de febrero de 2018, el Municipio de San Juan cursó una carta al Secretario de Hacienda, con copia a Administrador del Sistema de Retiro, Luis M. Collazo Rodríguez. Mediante la referida misiva, ambos funcionarios fueron notificados sobre las inconsistencias identificadas por el Municipio; siendo a su vez requeridos de información adicional para poder verificar la corrección de las facturas restantes. Adjunto a la carta se incluyó una lista de pensionarios y beneficiarios que el Municipio de San Juan, con la poca información a su disposición, pudo identificar que no correspondían a sus obligaciones.

29) Al no recibir respuesta, el Municipio de San Juan cursó una segunda misiva, fechada al 21 de mayo de 2018, reiterando las inconsistencias previamente detalladas, y manifestando objeciones sustantivas al procedimiento utilizado por el Departamento de Hacienda para intentar cobrar el cargo Pay-Go.

30) El 4 de septiembre de 2018, casi siete (7) meses después de que el Municipio de San Juan enviara su primera carta pidiendo clarificación de los cargos, el Departamento de Hacienda publicó la Carta Circular Núm. 2019-01. La cual, requirió a los empleadores, incluyendo los municipios, que pagaran sus facturas del cargo Pay-Go antes del 30 de septiembre.

31) La Carta Circular Núm. 2019-01, a su vez, creó un procedimiento para disputar las cantidades facturadas. Los empleadores tendrían noventa (90) días desde la fecha de la carta para disputar una factura; la Administración de los Sistemas de Retiro tendría otros noventa (90) días para hacer una determinación al respeto; y los empleadores tendrían cuarenta y cinco (45) días más para completar su pago.

32) Sin embargo, en grave perjuicio de los derechos sustantivos y procesales del Municipio demandante, el procedimiento diseñado por el Departamento de Hacienda no concede a éste la oportunidad de acceder y analizar la evidencia utilizada, tanto por el Departamento de Hacienda, como por la Administración de los Sistemas de Retiro, para determinar el monto de las facturas del cargo Pay-Go puestas al cobro.

33) Ante semejante situación, el 30 de noviembre de 2018, el Municipio de San Juan

SJ2019CV05411 29/05/2019 08:06:26 am Página 10 de 28

cursó una tercera carta para cumplir con el procedimiento detallado por el Departamento de Hacienda. La carta reiteró las inconsistencias identificadas por el Municipio en su análisis preliminar de las facturas, y solicitó que la Administración de los Sistemas de Retiro realizara una auditoría de las facturas; así como el que se le concediera acceso al Municipio a toda aquella información y documentación necesaria para validar la corrección del importe de las facturas.

34) Finalmente, el 11 de diciembre de 2018, casi diez (10) meses después de que el Municipio de San Juan enviara su primera carta, éste recibió respuesta del Administrador del Sistema de Retiro. Mediante dicha misiva, el funcionario efectivamente admitió que las facturas del cargo Pay-Go que había remitido al Municipio de San Juan fueron incorrectas.

35) En su respuesta a la carta cursada por el Municipio, el Administrador del Sistema de Retiro reconoció que 228 de los 1,068 pensionarios y beneficiarios que el análisis preliminar realizado por el Municipio logró identificar como inconsistencias o errores en la facturación, no correspondían a las obligaciones del Municipio de San Juan.  Por lo que, en consecuencia, tampoco procedía su pago como estricta cuestión de derecho.

36) Sin embargo, reiterando un patrón que denota ausencia de rigor metodológico, la carta antes referida carece de evidencia para sostener el nuevo número de pensionarios y beneficiarios que la Administración de los Sistemas de Retiro y el Departamento de Hacienda argumentan corresponden al Municipio de San Juan. Tampoco se presenta evidencia alguna de cómo se determinó la cantidad de beneficios que se debe a cada uno de éstos.

37) Como cuestión de hecho, a pesar de verificarse una disminución de casi un 5% en el número total de pensionarios y beneficiarios que los demandados adjudican al Municipio de San Juan, las obligaciones financieras del ayuntamiento derivadas del ajuste realizado solo se disminuyeron en menos de 2%. **Lo cual, levanta serias y legítimas dudas y cuestionamientos sobre la corrección y la adecuacidad del proceso seguido por las entidades gubernamentales demandadas a fines de emitir y cobrar las facturas por concepto del cargo Pay-Go al Municipio de San Juan.**

38) Reiterando un patrón de conducta contumaz, las partes demandadas no le dieron oportunidad al Municipio de San Juan de revisar la evidencia y metodología que usaron para formular su nueva determinación. Por el contrario, la carta del Administrador de los Sistemas de Retiro simplemente se limitó a advertir al Municipio demandante que, si no contestaba en dos días consideraría el asunto como terminado y procederían a la facturación de los cargos según notificados.

39) Así las cosas, el 12 de diciembre de 2018, el Municipio de San Juan respondió a la carta del Administrador de los Sistemas de Retiro, expresando que: "el Municipio de San Juan está en total desacuerdo con la conclusión informada en su carta, ni reconoce los hallazgos de la ASR (los que evidentemente, desconocemos), ni acepta el alegado balance adeudado por concepto de cargo "Pay-Go" para el AF 2017-2018." El Municipio de San Juan concluyó su comunicación solicitando una reunión con el Administrador de los Sistemas de Retiro, a fines de discutir a profundidad el asunto.

40) Sin embargo, hasta el día de hoy, el Municipio de San Juan no ha recibido respuesta del Administrador de los Sistemas de Retiro a la carta cursada a éste el 12 de diciembre de 2018. Mientras tanto, aunque las correspondencias anteriores fueron en referencia a las facturas del cargo Pay-Go de julio 2017 a junio 2018, el Municipio de San Juan recibió nuevas facturas por los meses de julio a noviembre de 2018.

41) En tercer lugar, como se desprende de los párrafos anteriores, las demandadas han rehusado proveer al Municipio la información necesaria para corroborar que el cómputo del cargo Pay-Go se hizo correctamente. Por el contrario, el cómputo del cargo Pay-Go del Municipio de San Juan parece tener varios errores y dicho proceso ha sido manejado de forma arbitraria y caprichosa por las entidades gubernamentales demandadas. Es decir, más allá de que las facturas recibidas incluyen individuos que no corresponden al Municipio de San Juan, a su vez, resulta evidente que las mismas no reflejan de manera correcta y veraz las cantidades pagaderas a los pensionados.

42) Por ejemplo, de conformidad con la Ley 106 y la Carta Circular 1300-46-27, las demandadas deben facturar a los municipios a través de cargos mensuales para garantizar que los empleadores solo reciban un cargo Pay-Go por los pensionados

SJ2019CV05411 29/05/2019 08:06:26 am Página 12 de 28

y beneficiarios que les corresponden, puesto que cada mes existe un cambio de ese número. Sin embargo, en vez de facturar mensualmente (lo que permitiría tomar en cuenta los participantes que habían empezado a recibir su pensión ese mes, y otros pensionados o beneficiarios que ya no recibían su pensión), el Departamento de Hacienda facturó en solo una ocasión al Municipio de San Juan, por concepto del año fiscal completo 2017-2018. Si bien las facturas están divididas por mes, es claro que las mismas no reflejan los cambios ocurridos de mes a mes, ya que todas piden un pago idéntico de $4,560,862.59 al mes, con la única excepción de la factura de mayo 2018, la cual, en un aparente error, requiere $4,560,852.59.

43) Además, las demandadas han rehusado conceder al Municipio de San Juan acceso a la información y documentación que éste les solicitó para comprobar que el cómputo de la factura por el cargo Pay-Go fuese correcto. Nótese que resulta claro el interés y derecho de acceso que tiene el Municipio en torno a la información requerida, en tanto el mismo está estrechamente relacionado al interés legítimo de salvaguardar el manejo de sus asuntos fiscales e integridad de su hacienda pública; así como a otros tantos asuntos pertinentes al buen manejo y funcionamiento de la entidad municipal.

44) En tal sentido, nótese que el 7 de febrero de 2019, el Municipio de san Juan cursó un correo electrónico a la señora Luz D. Cintrón Caraballo, contadora de la Administración de Sistemas de Retiro, solicitando el correspondiente Registro contemplado en el artículo 2.2 de la Ley 106. Esto, a fines de poder verificar cuántos pensionados y beneficiarios le corresponden, y el monto de lo adeudado a cada uno de ellos. Ello no obstante, la solicitud de información relevante a la gestión y administración del Municipio demandante nunca fue contestada.

45) Por el contrario, al día siguiente de haber solicitado la información que le ayudaría a verificar las facturas recibidas de las agencias demandadas en relación con el cargo Pay-Go, el Municipio de San Juan recibió una notificación del Centro de Recaudación de Ingresos Municipales ("CRIM").

46) La notificación hace referencia a la Ley Núm. 253-2018, la cual exime a los municipios de la aportación que tenían que hacer a la Administración de Seguros de Salud de Puerto Rico ("ASES"), para el periodo del 1 de julio de 2018 al 30 de

septiembre de 2019. En vez de dicho pago, el 50% del mismo se aplica como un crédito a la deuda que los municipios tengan con la Administración de los Sistemas de Retiro. Y, en caso de que los municipios no tengan deuda o, de que la deuda sea menor a los recursos que le corresponden por dicha aportación a la ASES, la aplicación del crédito concedido se extiende al año fiscal 2019-2020.

47) Según la notificación del 8 de febrero de 2019, y sin aviso previo al Municipio de San Juan, la Administración de los Sistemas de Retiro pretendió certificar al CRIM una deuda por concepto del cargo Pay-Go de $52,660,761.30 por el año fiscal 2017-2018 imputable al Municipio. Asimismo, dicha demandada aplicó un crédito de aproximadamente $18,793,592.79 de ingresos municipales a esta alegada deuda, bajo los términos de la Ley Núm. 253-2018. Todo esto, sin haber respondido a las varias solicitudes de información por parte del Municipio demandante, ni a la comunicación fechada al 12 de diciembre de 2018, solicitando una reunión para discutir sus objeciones.

### E. *La Junta de Control Fiscal requiere a los demandados cobrar al municipio demandante el cargo por concepto del Pay-Go, perseguir sus bienes y solicitar gravámenes sobre los fondos municipales ante el CRIM*

48) Siendo el antes descrito el estado de relaciones habido entre las partes, el 30 de abril de 2019, la Junta de Control Fiscal operante bajo el palio de la ley federal PROMESA, cursó una carta a los demandados. Mediante la referida misiva, suscrita por la Sra. Natalie A. Jaresko, entre otras cosas, se exigió a los demandados el que realizaran gestiones de cobro dirigidas a recuperar la deuda por concepto del cargo Pay-Go, dentro de un agresivo y acelerado itinerario de trabajo.

49) Entre las medidas concretas requeridas por la Junta de Control Fiscal a los demandados, se destaca: (i) el ajuste y retención por el Departamento de Hacienda de las cuentas, obligaciones y adelantos sobre los cuales los deudores del cargo Pay-Go tengan algún derecho, a fines de destinar dichos fondos al servicio de la deuda por tal concepto; (ii) el que los demandados requieran, a su vez, al CRIM la entrega de las remesas municipales para fines del servicio a la deuda por concepto de cargo Pay-Go; y (iii) el que los demandados, además,

soliciten al CRIM un embargo estatutario, con carácter preferencial, permanente y automático, de los fondos municipales a favor del Sistema de Retiro, hasta tanto el pago del cargo Pay-Go sea satisfecho.

50) **Las medidas requeridas por la Junta de Control Fiscal a los demandados tienen como fecha límite para su implementación y ejecución el 31 de mayo de 2019. Como es de conocimiento público en la jurisdicción, los funcionarios demandados han expresado a los medios de comunicación que efectivamente se proponen implementar las medidas y mecanismos de cobros que le fueran requeridos por la Junta de Control Fiscal. Muy en particular, aquellos detallados en el acápite que precede. Lo anterior, de suyo, acentúa el sentido de urgencia y carácter extraordinario que exhibe el recurso de epígrafe.**

### Mecanismos Procesales Aplicables a las Causas de Acción y Reclamaciones Contenidas en la Demanda:
#### Sobre la figura del interdicto preliminar y permanente:

51) El remedio proveniente de las Cortes de Equidad inglesas conocido como *Injunction* puede definirse como un mandamiento escrito expedido por un tribunal, bajo su sello, dirigido a una persona para que se abstenga de hacer o de permitir que se haga por otras personas bajo su intervención, una determinada cosa o actuación que perjudica el derecho de otra persona. El propósito del *Injunction* es "evitar la ocurrencia de un mal patrimonial o de otra índole, que de no evitarse de inmediato resultaría luego en un daño irreparable". Godreau Robles, Michel, "La posesión y su protección sumaria", 58 Rev. Jur. UPR 299, 313 (1989).

52) Este recurso "se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del trasgresor del orden jurídico." *Plaza Las Américas v. N & H*, 166 DPR 631 (2005). En ese sentido, el *Injunction* provee un remedio cuyo propósito es vindicar el régimen jurídico antes de que las circunstancias hagan de tal cumplimiento una labor demasiado costosa o imposible. *Plaza Las Américas v. N & H, supra*.

53) Existen varios tipos de *Injunction*, a saber: (1) *injunction* permanente *o clásico* que se emite una vez se descubre prueba y se celebra una vista, por ello es el mandamiento final que expide el tribunal; (2) *injunction* preliminar; (3) entredicho provisional, el cual sólo se emite en situaciones de emergencia, sin que se le tenga que notificar previamente a la parte adversa, y está regulado por la Regla 57.2 de Procedimiento Civil; y el (4) *injunction* estatutario que está regulado por leyes especiales.

54) En *VDE Corporation v. F & R Contractors*, 180 DPR 21 (2010) el Tribunal Supremo discute el alcance y procedencia de este recurso extraordinario:

> En general, el recurso extraordinario del *injunction* está encaminado a prohibir o a ordenar la ejecución de determinado acto, con el fin de evitar causar perjuicios inminentes o daños irreparables a alguna persona, en casos en que no hay otro remedio adecuado en ley. *ELA v. Asoc. de Auditores*, 147 DPR 669, 679 (1999). Sin embargo, el *injunction* es un remedio dirigido principalmente contra actos futuros que amenazan ser cometidos o que se anticipa que serán cometidos. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 4ta ed., Puerto Rico, Lexis Nexis, sec. 57.03, pág. 463.

55) Para determinar si procede el recurso extraordinario de *injunction* hay que detectar si la acción connota o no un agravio de patente intensidad al derecho del individuo que reclame urgente reparación. *Gracia Ortiz v. Policía de Puerto Rico*, 140 DPR 247 (1996). Constituye, por tanto, un daño irreparable aquél que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles. *Pérez Vda. Muñiz v. Criado*, 151 DPR 355, 373 (2000). De ahí, que la parte promovente deberá demostrar que de no concederse el mismo, sufriría un daño irreparable. *Misión Industrial v. Junta Planificación*, 142 DPR 656, 681 (1997). *VDE Corporation v. F & R Contractors, supra,* a la p. 41.

56) La Regla 57 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, expone los requisitos para la expedición de un *injunction* o interdicto provisional. Específicamente dispone la Regla 57.3 que al decidir si expide una orden de entredicho provisional o *injunction* preliminar, el tribunal deberá considerar, entre otros, los siguientes criterios:

> (a) la naturaleza del daño a que está expuesto la parte peticionaria;
> (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;
> (c) la probabilidad de que la parte promovente prevalezca;

(d) la probabilidad de que la causa se torne en académica;

(e) el impacto sobre el interés público del remedio que se solicita, y

(f) la diligencia y la buena fe con que ha obrado la parte peticionaria.

57) Tales requisitos habían sido previamente reconocidos por el Tribunal Supremo de Puerto Rico. *Véase, Municipio de Ponce v. Rosselló*, 136 DPR 776, 784 (1994); *Puerto Rico Telephone Co. v. Tribunal Superior*, 103 DPR 200, 202 (1975) y reiterados en *VDE Corporation v. F & R Contractors, supra, a las págs.41-42*. Expresa el Tribunal Supremo:

> El propósito fundamental del *injunction* preliminar surge de la razón de ser del cuarto criterio esbozado: mantener el *status quo* hasta que se celebre el juicio en sus méritos para que no se produzca una situación que convierta en académica la sentencia que finalmente se dicte al atender la petición de *injunction* permanente, o se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *[Citas omitidas]* Asimismo, debemos mencionar que, aunque el cuarto criterio es el más importante, éste es concomitante con el segundo criterio: la irreparabilidad de los daños o la existencia de un remedio adecuado en ley. [Citas omitidas]

> Ahora bien, la concesión de una orden de *injunction* preliminar o entredicho provisional descansa en la sana discreción del tribunal, por lo que la decisión que lo ordene no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional. *[Citas omitidas]* Véase, *VDE Corporation v. F & R Contractors, supra, a las pág.42*.

### *Sobre el auto de mandamus:*

58) Reiteradamente se ha dispuesto que el auto de *mandamus* es un recurso altamente privilegiado y discrecional, que se expide para ordenar a cualquier persona natural, corporación, o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones. Artículo 369 del Código de Enjuiciamiento Civil (1933), 32 LPRA §3421. También se ha resuelto que, aunque es un remedio en ley, participa de los remedios de equidad, por lo que algunos principios rectores de los recursos de equidad, como los que rigen el *injunction*, son aplicables al auto de *mandamus*. *Véase, Rodríguez v. Corte*, 53 DPR 575, 577 (1938); *Maldonado v. Programa de Emergencia de Guerra*, 68 DPR 976 (1948); *Abella v. Tugwell, Gobernador*, 68 DPR 464 (1948); *Nine v. Ortiz*, 67 DPR 940 (1947) y *Rexach & Piñero v. Sancho Bonet*, 57 DPR 337 (1940).

59) El recurso extraordinario del *mandamus* procede únicamente para exigir el cumplimiento de un deber impuesto por la ley, es decir, de un deber "ministerial"

que, como tal, no permite el ejercicio de discreción alguna, sino que es mandatorio e imperativo. Es decir, "la ley no sólo debe autorizar, sino exigir la acción requerida". *Véase, Espina v. Calderón,* 75 DPR 76, 84 (1953); *Pueblo v. La Costa, Jr., Juez,* 59 DPR 179 (1941); *Álvarez de Choudens v. Tribunal Superior,* 103 DPR 235, 242 (1974); *Rodríguez Carlo v. García Ramírez,* 35 DPR 381, 384 (1926); *Pagán v. Tower,* 35 DPR 1, 3 (1926) y *Partido Popular v. Junta de Elecciones,* 62 DPR 745, 749 (1944).

60) El Tribunal Supremo de Puerto Rico también ha expresado que si la ley prescribe y define el deber a ser cumplido con tal precisión y certeza que nada deja al ejercicio de la discreción o juicio, el acto es uno ministerial. No se trata de una mera directriz o de una disposición que requiere hacer algo, sin más. Debe tratarse de un mandato específico que la parte demandada tiene que cumplir y que no le permite decidir si cumple o no el acto solicitado. *A contrario sensu,* cuando la ejecución del acto o la acción que se describe depende de la discreción o juicio del funcionario, tal deber es considerado como no ministerial. Por consiguiente, al no ser ministeriales, los deberes discrecionales quedan fuera del ámbito del recurso de *mandamus. Álvarez de Choudens v. Tribunal Superior, supra; Rodríguez Carlo v. García Ramírez, supra; Pagan v. Towner, supra; Partido Popular v. Junta de Elecciones, supra.*

61) En la medida en que el auto de *mandamus* es uno privilegiado, "su expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial. Dicha expedición "no procede cuando hay un remedio ordinario dentro del curso de ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos." *AMPR v. Srio. Educación,* 178 DPR 253, 266-267 (2010), citando con autoridad *Ortiz v. Muñoz, Alcalde de Guayama,* 19 DPR 850 (1913).

62) La Regla 54 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, establece el procedimiento para la expedición del recurso extraordinario de *mandamus*:

> El auto de mandamus, tanto perentorio como alternativo, podrá obtenerse presentando una solicitud jurada al efecto. Cuando se solicite dicho remedio y el derecho a exigir la inmediata ejecución de un acto sea evidente y aparezca que no se podrá dar ninguna excusa para no ejecutarlo, el tribunal podrá ordenar perentoriamente la concesión del remedio; de otro modo, ordenará que se presente una contestación y tan pronto sea conveniente, celebrará una vista,

recibiendo prueba, si es necesario, y dictará su decisión prontamente. Se obtendrá el cumplimiento de las órdenes dictadas por el tribunal del mismo modo en que se exige el cumplimiento de cualquier otra orden.

63) El recurso de *mandamus* es un auto discrecional y altamente privilegiado, mediante el cual se le ordena a una persona el cumplimiento de un acto que esté dentro de sus atribuciones o deberes. Véase, Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA § 3421; *Báez Galib y otros v. CEE*, 152 DPR 382 (2000). La expedición de este recurso requiere que el demandado cuente con la facultad en ley para ejecutar el acto que le ordenará el Tribunal, pues el recurso no le confiere una nueva autoridad. Sin embargo, el *mandamus* está concebido para obligar a cualquier persona, corporación, junta o tribunal inferior a cumplir un acto que la ley particularmente le ordena como un deber resultante de un empleo, cargo o función pública, cuando ese deber no admite discreción en su ejercicio, sino que es ministerial. Lo anterior significa que la ley debe prescribir dicho acto con tal precisión y certeza que nada deje al ejercicio del juicio o de criterio alguno. D. Rivé Rivera, <u>Recursos Extraordinarios</u>, 2da ed., San Juan, Ed. U.I.A., pág. 107 (1996).

64) Entre los factores determinantes para la expedición del recurso, se encuentran los siguientes: 1) el posible impacto que el recurso pueda tener sobre los intereses públicos que puedan estar involucrados; 2) evitar intromisiones indebidas con los procedimientos del Poder Ejecutivo; y 3) que el acto no se preste a confusión o perjuicio de los derechos de terceras personas. Véase, *Noriega v. Hernández Colón*, 135 DPR 406 (1994).

65) Para que se expida un auto de *mandamus* no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho, pues se trata de un auto altamente privilegiado. Véase, *Dávila v. Superintendente de Elecciones*, 82 DPR 264 (1960). Así, el Tribunal, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, tiene que medir todas las circunstancias concurrentes. Es decir, el remedio no se concede tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el Tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para ello es

Case:17-03283-LTS   Doc#:7361-22   Filed:06/21/19   Entered:06/21/19 22:54:55   Desc:
Exhibit V   Page 48 of 57

indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades de la persona afectada por ella y hasta qué punto habrá de beneficiar al peticionario. Por lo tanto, el Tribunal debe establecer un fino equilibrio entre los diversos intereses en conflicto. *Dávila v. Superintendente de Elecciones, supra.*

66) Es de suma importancia recalcar que antes de radicarse la petición, la jurisprudencia requiere, como condición esencial, que el peticionario le haya hecho un requerimiento previo al demandado para que éste cumpla con el deber que se le exige, debiendo alegarse en la petición, tanto el requerimiento como la negativa, o la omisión del funcionario en darle curso. *Véase, Medina v. Fernós, Comisionado,* 64 DPR 857 (1945); *Undaz v. Padín,* 48 DPR 306 (1935); *Suárez v. Corte,* 65 DPR 850 (1946). Sólo se exime de este requisito: 1) cuando aparece que el requerimiento hubiese sido inútil e infructuoso, pues hubiese sido denegado su se hubiera hecho, o 2) cuando el deber que pretende exigir es uno de carácter público; a diferencia de uno de naturaleza particular que afecta solamente el derecho del peticionario. Véase, *Noriega v. Hernández Colón, supra,* págs. 448-449; *Dávila v. Superintendente de Elecciones, supra; Medina v. Fernós, Comisionado, supra; Urdaz v. Padín, supra; Suárez v. Corte, supra; Espina v. Calderón, supra; Martínez Nadal v. Saldaña,* 33 DPR 721, 736 (1924).

### ***Sobre el Mecanismo Procesal de la Sentencia Declaratoria:***

67) La Regla 59 de Procedimiento Civil de 2009 regula el mecanismo de las sentencias declaratorias. (32 LPRA Ap. V).  La Regla 59.1 dispone sobre la procedencia de las sentencias declaratorias:

> El Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio. No se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas. Independientemente de lo dispuesto en la Regla 37, el tribunal podrá ordenar una vista rápida de un pleito de sentencia declaratoria, dándole preferencia en el calendario.

68) "[L]a sentencia declaratoria es aquella que se dicta en un proceso en el cual los hechos alegados demuestran que existe una controversia sustancial entre partes que tienen intereses legales adversos, sin que medie lesión previa del os mismos

con el propósito de disipar la incertidumbre jurídica y contribuir a la paz social."
*Véase*, R. Hernández Colón, <u>Derecho Procesal Civil</u>, Ed. Michie de Puerto Rico,
1997, pág. 448. Véase, además, *Suárez Jiménez v. CEE* I, 163 DPR 347 (2004).

69) Por su parte, la Regla 59.4 establece que los tribunales de instancia podrán
conceder remedios adicionales fundados en una sentencia o decreto declaratorio,
siempre que sean necesarios o adecuados. (32 LPRA Ap. V). Se gestionarán los
mismos mediante una solicitud dirigida a un tribunal con jurisdicción para
conceder el remedio. *Íd*. Si la solicitud se considera suficiente, el tribunal
requerirá a cualquier parte contraria cuyos derechos hayan sido adjudicados por
una sentencia o decreto declaratorio, para que comparezca dentro de un plazo
razonable a mostrar causa por la cual no deban concederse inmediatamente los
remedios adicionales solicitados. *Íd.*

70) El objetivo de la sentencia declaratoria es proveer un mecanismo procesal de
carácter remedial mediante el cual dilucide ante los tribunales los méritos de
cualquier reclamación que en forma latente constituye un peligro potencial en su
contra. *Véase*, *Charana v. Pueblo*, 109 DPR 641, 653 (1980). El tribunal tendrá
amplia discreción con relación a estas peticiones de sentencias declaratoria. Entre
la autoridad que posee el tribunal se encuentra el que puede emitir una sentencia
o resolución definitiva después de la rápida celebración de una vista. (32 LPRA
Ap. V, R.59.5).

71) Asimismo, la jurisprudencia constante en la materia señala que la sentencia
declaratoria permite dilucidar cualquier divergencia de criterio en la
interpretación de un estatuto "cuando existe una controversia sustancial entre las
partes con intereses legales adversos […]" *Mun. Fajardo v. Srio. Justicia et al.*,
187 DPR 245, 254-255 (2012).

## Causas de Acción y Remedios Solicitados:

### *Primera Causa de Acción (Mandamus, Interdicto Preliminar y Permanente y Sentencia Declaratoria en Cuanto a la Obligación de Producir el Registro Dispuesto Por la Ley 106)*

72) La parte demandante adopta e incorpora por referencia todas las alegaciones y
causas anterior y/o posteriormente alegadas en la Demanda, para todos aquellos
fines legales que pudieran resultar pertinentes.

73) Consideradas las alegaciones a la luz de la reseña normativa y doctrinal que

precede, se solicita que este Honorable Tribunal declare ilegal la omisión de los demandados en cumplir con su obligación de producir el Registro descrito en el Artículo 2.2 de la Ley 106, mientras de manera simultánea pretenden cobrar al Municipio de San Juan, según artículo 2.1(b) de la Ley 106, el cargo Pay-Go que debería estar calculado en base a la información derivada de dicho Registro.

74) La producción del Registro y la subordinación del cobro hasta tanto se satisfaga dicha condición impuesta por ley, es un asunto de estricto derecho que no admite ámbito de discreción alguno por parte de las demandadas. Es decir, se trata de un acto cuyo cumplimiento por parte de las demandadas está claramente requerido y definido por ley. De modo que, el Artículo 2.2 de la Ley 106 prescribe el acto de la creación del registro con tal precisión y certeza, que nada deja al ejercicio del juicio o de criterio alguno de las demandadas. Ello así, se solicita el que se emita un auto de *mandamus* ordenando a los demandados la creación y divulgación del referido Registro ordenado por el precitado estatuto.

75) Se solicita, además, que se ordene a las demandadas, a razón de un interdicto preliminar y permanente, cumplir con su obligación estatutaria de mantener y producir el Registro mandatado por la Ley 106.

### *Segunda Causa de Acción (Sentencia Declaratoria e Interdicto Preliminar y Permanente en Cuanto a la Obligación de Conceder al Municipio de San Juan Acceso a la Información que Sustenta y Valida la Corrección del Monto de las Facturas del Cargo Pay-Go)*

76) La parte demandante adopta e incorpora por referencia todas las alegaciones y causas anterior y posteriormente alegadas en la Demanda, para todos aquellos fines legales que pudieran resultar pertinentes.

77) Como se sabe, el poder delegado a los Municipios por la Legislatura es uno amplio y abarcador. Así, se intima que "los municipios tendrán los poderes necesarios y convenientes para ejercer todas las facultades correspondientes a un gobierno local y lograr sus fines y funciones". Artículo 2.001 de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como *Ley de Municipios Autónomos de Puerto Rico*. (21 LPRA § 4051).

78) De igual modo, dicho Artículo 2.001, en su inciso (o), faculta al Municipio a: ejercer el poder legislativo y el poder ejecutivo en todo asunto de naturaleza municipal que redunde en el bienestar de la comunidad y en su desarrollo

económico, social y cultural, en la protección de la salud y seguridad de las personas, que fomente el civismo y la solidaridad de las comunidades y en el desarrollo de obras y actividades de interés colectivo con sujeción a las leyes aplicables. Véase, Ley Núm. 81, *ante*.

79) Asimismo, el estatuto antes citado, en su Artículo 1.002, declara política pública del Estado Libre Asociado de Puerto Rico otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financieras, así como los poderes y facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico. Véase, Ley Núm. 81, *ante*.

80) Como podrá advertirse del articulado antes citado, el ámbito de la delegación de facultades y prerrogativas a la entidad municipal es uno extraordinariamente amplio y liberal. Sobre el particular, se ha expresado el Tribunal Supremo de Puerto Rico en los siguientes términos, a saber:

> Como puede observarse, las disposiciones citadas antes establecen amplios poderes generales tanto para el municipio como para su principal ejecutivo, a fin de que puedan tomar las medidas necesarias para realizar sus funciones respectivas y promover el bienestar de la comunidad municipal. Es evidente que, en una pieza legislativa como la Ley de Municipios Autónomos, *supra,* no pueden especificarse todos los poderes y facultades que tendrá el municipio y su Alcalde. La infinita variedad de situaciones que pueden surgir en los distintos municipios a través de los años requiere que en una ley como ésta se dispongan unos poderes generales que permitan abarcar todas las situaciones que puedan surgir que requieran acción gubernamental municipal. Por ello, hemos resuelto antes que los poderes y facultades conferidos a los municipios por la Ley de Municipios Autónomos deben interpretarse liberalmente, a fin de que las autoridades municipales puedan atender eficazmente las necesidades y el bienestar de sus habitantes. *Gobierno Municipal de Vega Baja v. Administración de Terrenos*, 154 DPR 628 (2001). *Véase además*, *Mun. de Peñuelas v. Ecosystems, Inc.*, 197 DPR 5 (2016); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012): *Com. Pro. Perm. Bda. Morales v. Alcalde*, 158 DPR 195 (2002):

81) En el presente caso, queda claro que el Municipio del San Juan tiene perfecto derecho de acceso a la información y documentación que sustenta y valida los montos de las facturas por concepto del cargo Pay-Go notificadas por las partes demandadas. La información en cuestión está íntimamente relacionada al interés legítimo del Municipio en salvaguardar el manejo de sus asuntos fiscales e integridad de su hacienda pública; así como a otros tantos asuntos pertinentes al buen manejo y funcionamiento de la entidad municipal.

82) De igual modo, queda claro que el Municipio queda investido del derecho de acceso antes reclamado, a la luz de la dotación de aquellos poderes necesarios y convenientes para ejercer todas las facultades correspondientes a un gobierno local y lograr sus fines y funciones, con el cual quedara envestido a tenor con su estatuto habilitador.

83) A su vez, la solicitud de información y documentación dirigida a las partes demandadas constituye un ejercicio legítimo del poder ejecutivo municipal en un asunto claramente asociado al bienestar de la comunidad, al desarrollo económico, social y cultural, a la protección de la salud y seguridad de las personas, que fomenta el civismo y la solidaridad de las comunidades, así como el desarrollo de obras y actividades de interés colectivo con sujeción a las leyes aplicables. Por lo que no existe razón o fundamento legal alguno para negar, como las demandadas han reiteradamente hecho, el acceso a documentos públicos peticionado por el Municipio de San Juan. **Después de todo, se trata de observar los más básicos y elementales parámetros de transparencia y rendición de cuentas en el manejo de la cosa pública y gubernamental.**

84) En virtud de lo anterior, se solicita de este Honorable Tribunal una sentencia declarando ilegal la omisión de las entidades gubernamentales demandadas en dar acceso al Municipio de San Juan a la información y documentación que acredita y valida la corrección de las facturas por concepto del cargo Pay-Go notificadas; así como el que emita un interdicto preliminar y permanente ordenando a las demandadas conceder al Municipio de San Juan acceso efectivo a la información relacionada a las facturas del cargo Pay-Go.

### *Tercera Causa de Acción (Sentencia Declaratoria e Interdicto Preliminar y Permanente en Cuanto a la Obligación de Respetar el Derecho al Debido Proceso del Municipio de San Juan)*

85) La parte demandante adopta e incorpora por referencia todas las alegaciones y causas anterior y posteriormente alegadas en la Demanda, para todos aquellos fines legales que pudieran resultar pertinentes.

86) Como se sabe, el ordenamiento jurídico prevaleciente ha reconocido que un Municipio posee un interés gubernamental legítimo en los recaudos de fondos que constituyen sus ingresos. En tal sentido, también se ha reconocido que un

Municipio es acreedor de aquel *debido proceso de ley* concedido por la Ley de Procedimiento Administrativo Uniforme (LPAU). *Mun. Fajardo v. Srio. Justicia et al.*, *supra*.

87) En lo que aquí resulta pertinente, el proceso debido necesariamente implica el que el Municipio de San Juan tenga oportunidad real y oportuna de poder cuestionar e impugnar el monto de la deuda reclamada por las demandadas por concepto de cargo Pay-Go; y que tenga acceso a aquella información y documentación relevante para que el ejercicio de revisión de la cuantía reclamada no sea uno proforma, sino eficaz.

88) En el presente caso, las entidades gubernamentales demandadas han violado el *debido proceso* del Municipio demandante, al no dar a este acceso a la información con la cual se calcularon los montos de las facturas del cargo Pay-Go que se pretenden cobrar a la municipalidad. **En tal sentido, no hace falta un acto de rebuscada juridicidad para darse cuenta de que el procedimiento establecido por el Departamento de Hacienda en la Carta Circular Núm. 2019-01 es uno al servicio del interés propio ("self-serving"), y constituye un acto ilegal, arbitrario y caprichoso de la agencia demandada. El cual, se traduce en un claro y patente perjuicio de las arcas municipales y el mejor bienestar de los habitantes de San Juan. Se alega afirmativamente que dicha carta circular es una inoficiosa e ilegal de su faz.**

89) Por lo anterior, si el Departamento de Hacienda pretende cobrar al Municipio de San Juan ciertos montos correspondientes a supuestas obligaciones de pago a través del sistema Pay-Go, le correspondía a dicha demandada demostrar la existencia de las obligaciones para con los pensionados y beneficiarios, y ésta es ahora su carga procesal en el presente procedimiento. Lo contrario constituiría una actuación arbitraria que dejaría en estado de indefensión al Municipio, pues se vería a merced de una parte acreedora con la capacidad de determinar de manera unilateral el monto adeudado.

90) En consecuencia, se solicita que este Honorable Tribunal declare ilegal y contrario a derecho el procedimiento establecido en la Carta Circular Núm. 2019-01 emitida por el Departamento de Hacienda, así como la totalidad del proceso seguido por

las demandadas en relación al cuestionamiento de las facturas por el cargo Pay-Go realizado por el Municipio de San Juan, en tanto el mismo priva a éste del legítimo interés gubernamental sobre sus fondos y finanzas, así como del debido proceso de ley que le es conferido por la LPAU a la municipalidad.

91) Se solicita, además, un interdicto preliminar y permanente, ordenando a las partes demandadas a cumplir con el *debido proceso de ley* del cual es acreedor el Municipio demandante en todo aquello relacionado al trámite de verificación, validación e impugnación del monto de las facturas correspondientes al cargo Pay-Go.

### *Cuarta Causa de Acción (Interdicto Preliminar y Permanente Sobre Gestiones de Cobro del Cargo Pay-Go)*

92) La parte demandante adopta e incorpora por referencia todas las alegaciones y causas anterior y posteriormente alegadas en la Demanda, para todos aquellos fines legales que pudieran resultar pertinentes.

93) Se solicita un interdicto preliminar y permanente, ordenando a las partes demandadas abstenerse de realizar cobro alguno por concepto del cargo Pay-Go al Municipio de San Juan, hasta tanto las deficiencias y defectos legales antes señalados en las reclamaciones o causas que preceden sean subsanados en su totalidad.

94) Se solicita, además, un interdicto preliminar y permanente mediante el cual se prohíba a los demandados embargar, gravar o afectar de cualquier otro modo, de manera provisional o permanente, fondos pertenecientes al Municipio de San Juan, mantenidos en cualquier entidad privada o gubernamental, hasta tanto las deficiencias y defectos legales antes señalados en las reclamaciones o causas que preceden sean subsanados en su totalidad.

95) Se solicita, asimismo, un interdicto preliminar y permanente que prohíba a los demandados implementar o ejecutar cualquier gestión de cobro requerida a éstos por la Junta de Control Fiscal, mediante la misiva cursada por dicho organismo el 30 de abril de 2019.

96) Muy en particular, se peticiona el que se prohíba a los demandados, preliminar y permanentemente: (i) el realizar ajustes o retenciones en el Departamento de Hacienda de las cuentas, obligaciones y adelantos sobre los cuales el Municipio

de San Juan tengan algún derecho, a fines de destinar dichos fondos al servicio de la deuda por tal concepto del cargo Pay-Go; (ii) el que éstos requieran al CRIM la entrega de las remesas correspondientes al Municipio de San Juan para fines del servicio a la deuda por concepto de cargo Pay-Go; y (iii) el que éstos soliciten al CRIM un embargo estatutario, con carácter preferencial, permanente y automático, de los fondos del Municipio de San Juan habidos en las arcas o cuentas de dicha entidad, a favor del Sistema de Retiro, hasta tanto el pago del cargo Pay-Go sea satisfecho.

97) En el caso que nos ocupa, de las alegaciones que preceden queda claro que existe una controversia real, concreta y justiciable entre las partes, en cuanto a la corrección del monto de las facturas por concepto del cargo Pay-Go que pretenden ser cobradas al Municipio de San Juan. Por igual, queda claro que el proceso seguido por las partes demandadas –como mínimo– ha sido uno accidentado y lleno de irregularidades, en donde no se le ha provisto al Municipio demandante la oportunidad de validar y constatar la corrección del monto de la deuda reclamada, antes de proceder a satisfacer la misma. Es decir, se trata de un caso en donde la totalidad del proceso y acciones seguidas por los demandados en relación al cobro del cargo Pay-Go al Municipio de San Juan queda en duda y entredicho.

98) Así las cosas, el destinar fondos municipales al pago, parcial o total, de una deuda incierta, que no ofrece garantías mínimas de confiabilidad, y que ha sido "calculada" por los demandados en una forma y manera que contraviene múltiples disposiciones estatutarias, así como los más elementales conceptos de la buena fe, el trato justo y la justicia sustancial, constituiría una actuación en patente perjuicio y menoscabo del interés público.

99) Nótese, pues, que la posición del Municipio no se reduce a una intención aventurada de no pagar su deuda; sino por el contrario, en un gesto de prudencia fiscal, pagar justamente lo que en ley y justicia corresponde pagar. Ni un centavo menos, ni un centavo más. Pero para que dicho pago se pueda implementar, claro está, la legitimidad y corrección de la deuda reclamada por los demandados se debe precisar de manera inteligente e informada, entre ambas partes, y no de manera unilateral por los demandados.

100) Ante tales circunstancias, el verse expuesto al cobro de cantidades inciertas, cuyo monto obra cuestionado, así como a gestiones de retenciones, ajustes o embargos sobre fondos municipales, expondría al Municipio demandante a sufrir daños irreparables. Ello, en tanto dicho menoscabo en sus fondos propios tendría un impacto en la prestación de servicios esenciales a la ciudadanía; así como en la buena marcha administrativa y operacional del ayuntamiento demandante. El efecto adverso de lo anterior rebasa la frialdad propia del cálculo matemático, traduciéndose en un drama humano que afecta directamente a la ciudadanía capitalina y su realidad concreta. El daño irreparable al que el demandante está expuesto es incontrovertible y el balance de intereses favorece la concesión de los remedios extraordinarios peticionados.

101) Además, es menester señalar que, de no expedirse los remedios extraordinarios solicitados, y las correspondientes órdenes de paralización o prohibición que éstos implican, la controversia exhibe un alto potencial de tornarse académica. Pues los fondos municipales quedarían gravados, embargados, retenidos o de otra forma adversamente afectados, antes de que se pueda establecer con certeza y claridad el monto de la deuda por la cual legítimamente respondería el Municipio de San Juan en relación al cargo Pay-Go. Y tal realidad, bien sugiere la efectiva concesión de los remedios extraordinarios solicitados a razón de *mandamus* e interdicto preliminar.

102) A lo anterior, a su vez abona, el que como cuestión de hecho y derecho, sostenemos que el Municipio demandante tiene una alta probabilidad de prevalecer en los méritos de su causa. Es decir, los reclamos del Municipio de San Juan están apuntalados en el estado de derecho vigente, siendo respaldados por la jurisprudencia constante y las diversas disposiciones estatutarias que rigen la materia especial aquí litigada. Una vez más, ello sugiere la procedencia de los remedios extraordinarios solicitados.

**EN MÉRITO DE LO ANTES EXPUESTO,** se solicita muy respetuosamente de este Honorable Tribunal que: (i) proceda a declarar Con Lugar la presente Demanda y, en consecuencia, conceda los remedios ordinarios y extraordinarios en ésta solicitados; (ii) conceda a la parte demandante cualesquiera otros derechos y/o remedios que en

Derecho y/o Equidad procedan; e (iii) imponga a la parte demandada el pago de las costas, gastos del litigio y honorarios de abogado.

**RESPETUOSAMENTE SOMETIDA.**

En San Juan, Puerto Rico, hoy 29 de mayo de 2019.

**BUFETE FRANK TORRES-VIADA, C.S.P.**
PO Box 192084
San Juan PR  00919-2084
Tel. (787) 754-1102 • Fax (787) 754-1109

**MARIANI FRANCO LAW, PSC**
Po Box 9022864
San Juan, PR 00902-2864
Tel. (787) 620-0038 • Fax (787) 620-0039

*f/Frank Torres-Viada*
**Frank Torres-Viada**
RUA Núm. 14724
Colegiado Núm. 16136
ftv@ftorresviada.com

*f/ Raúl S. Mariani Franco*
**Raúl S. Mariani Franco**
RUA Núm. 11094
Colegiado Núm. 12393
marianifrancolaw@gmail.com

**CHARLIE HERNÁNDEZ LAW OFFICES**
Calle Tetuán 206, Suite 701
Viejo San Juan, PR  00901-1839
Tel. • Fax (787) 382-8360

*f/Charlie M. Hernández*
**Charlie M. Hernández**
RUA Núm. 9411
Colegiado Núm. 10784
charliehernandezlaw@gmail.com