**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| In re: | ) ) ) ) | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | ) ) ) ) | PROMESA Title III |
| as representative of | ) ) | Case No. 3:17-bk-03283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) ) ) | |
| Debtors. | ) ) ) X | |
| In re: | ) ) ) ) | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | ) ) ) ) | PROMESA Title III |
| as representative of | ) ) ) | Case No. 3:17-cv-01685 (LTS) Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | ) ) ) ) ) | |
| Debtor. | ) ) ) X | |

**OBJECTION OF CERTAIN ERS BONDHOLDERS TO
THE MAGISTRATE JUDGE'S JUNE 20, 2019
<u>ORDER ON THE RENEWED MOTION TO COMPEL</u>**

## **TABLE OF CONTENTS**

    **Page**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

ARGUMENT .................................................................................................................................... 4

    I.    Judge Dein's Denial of the Bondholders' Renewed Motion to Compel Documents Withheld Under the Deliberative Process Privilege Motion is Clear Error and Contrary to Law. .................................................................................................................. 4

    II.    Judge Dein's Denial of the Bondholders' Renewed Motion to Compel Documents Withheld Under the Attorney-Client Privilege is Clear Error and Contrary to Law. ......... 6

    III.    Judge Dein's Denial of the Bondholders' Motion to Compel Documents Withheld Under the Work-Product Doctrine is Clear Error and Contrary To Law. ....................... 10

CONCLUSION ............................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

### **FEDERAL CASES**

*Cavallaro v. United States*,
 284 F.3d 236 (1st. Cir. 2002) ............................................................................................8

*Columbia Data Prods., Inc. v. Autonomy Corp.*,
 No. 11-12077-NMG, 2012 WL 6212898 (D. Mass. Dec. 12, 2012) ...................................8, 9

*Dahl v. Bain Capital Partners*,
 714 F. Supp. 2d 225 (D. Mass. 2010) ................................................................................8

*Lluberes v. Uncommon Prods., LLC*,
 663 F.3d 6 (1st Cir. 2011) ..................................................................................................8

*Texaco P.R., Inc. v. Dep't of Comsumar Affairs*,
 60 F.3d 867 (1st Cir. 1995) ................................................................................................4

*United States v. Kovel*,
 296 F.2d 918 (2d Cir. 1961) ...............................................................................................8

### **FEDERAL STATUTES**

28 U.S.C. § 636(b)(1)(A) ...........................................................................................................1

### **FEDERAL RULES**

Federal Rule of Civil Procedure 72(a) ...................................................................................1, 4

To the Chambers of the Honorable Judge Laura Taylor Swain:

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), the Bondholders[1] hereby object to the *Order on Renewed Motion to Compel*, Docket No. 7523 in Case No. 17-bk-03283 and Docket No. 568 in Case No. 17-bk-03566, issued by Magistrate Judge Dein on June 20, 2019 (the "June 20 Order"), wherein Judge Dein allowed in part and denied in part the *Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents from Financial Oversight and Management Board*, Docket No. 7483 in Case No. 17-bk-03283 and Docket No. 562 in Case No. 17-bk-03566 (the "Renewed Motion to Compel").

## INTRODUCTION

1. The Court is familiar with these discovery proceedings related to the Bondholders' motion for relief from the automatic stay, set for a final hearing on July 2, 2019. *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, Docket No. 3418 in Case No. 17-bk-03283 and Docket No. 289 in Case No. 17-bk-03566 (the "Stay Relief Motion").

2. This is the Bondholders' second objection challenging Judge Dein's decision to sustain the Financial Oversight and Management Board for Puerto Rico's (the "Oversight Board" or the "Board") sweeping claims of privilege. In sustaining those claims, Judge Dein clearly erred

---

[1] The Bondholders are Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund L.P., Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

1

in her application of the exceptionally narrow deliberative process privilege under Puerto Rico law, and she either applied the wrong legal standard or clearly erred in her application of the First Circuit's strict standards for attorney-client privilege and the attorney work-product doctrine. The Court should reverse.

## BACKGROUND

3. The Bondholders' first objection with respect to Judge Dein's June 6, 2019 order (the "June 6 Order"),[2] which allowed in part and denied in part the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents from Financial Oversight and Management Board* (the "Motion to Compel"),[3] was filed June 20, 2019 (the "June 20 Objection").[4] The Bondholders incorporate the factual background described in the June 20 Objection. June 20 Objection ¶¶ 2–14.[5] On June 20, 2019, the Court entered a scheduling order on the June 20 Objection.[6]

4. The same day that the Bondholders filed their first objection, Judge Dein issued the June 20 Order on the Bondholders' Renewed Motion to Compel. The Renewed Motion to Compel challenged the Board's continued invocation of the deliberative process privilege, attorney-client privilege, and the attorney work-product doctrine following the June 6 Order. The Bondholders argued, *inter alia*, that the Board (1) continues to improperly withhold factual information under the deliberative process privilege, (2) improperly withheld documents under the attorney-client privilege that do not involve legal advice, (3) improperly asserted attorney-client privilege over

---

[2] Docket No. 7261 in Case No. 17-bk-03283 and Docket No. 546 in Case No. 17-bk-03566.

[3] Docket No. 6998 in Case No. 17-bk-03283 and Docket No. 512 in Case No. 17-bk-03566.

[4] Docket No. 7518 in Case No. 17-bk-03283 and Docket No. 566 in Case No. 17-bk-03566.

[5] The Bondholders also incorporate the background described in the *Objection of Certain ERS Bondholders to the Magistrate Judge's May 6, 2019 and May 15, 2019 Orders on Motions to Compel*, Docket No. 518 in Case No. 17-3566 (filed May 20, 2019).

[6] Docket No. 7527 in Case No. 17-bk-03283 and Docket No. 570 in Case No. 17-bk-03566.

2

documents sent by or to non-lawyer third parties, and (4) had not adequately supported its work-product claims. Renewed Motion ¶¶ 9–18.

5. In the June 20 Order, Judge Dein allowed in part and denied in part the Renewed Motion to Compel. As to the deliberative process privilege, Judge Dein overruled the Bondholders' objections in their entirety. Judge Dein found that the amended entries in the Board's privilege logs[7] and the information supplied in the Board's supplemental declaration from Natalie A. Jaresko (the "Supplemental Declaration")[8] together showed that disclosing factual information from the documents at issue would disclose deliberative material and, therefore, the Board met its burden with respect to the deliberative process privilege. Order at 5–6.

6. As to the attorney-client privilege, Judge Dein overruled the Bondholders' objections in their entirety. With regard to the Bondholders' argument that the Board had improperly withheld information that does not consist of legal advice, Judge Dein found that the relevant privilege log descriptions sufficiently demonstrated that the entire communication consisted of privileged legal advice. *Id.* at 7–8. As for documents that the Bondholders' argued were sent by and to non-lawyer third parties, Judge Dein found that the relevant privilege log descriptions showed that the third parties were necessary to translate information for a legal purpose, and, therefore, the presence of these third parties did not prevent the application of the attorney-client privilege. *Id.* at 9–11.

7. As to attorney work-product doctrine, Judge Dein sustained the Bondholders' objections to five of the seven challenged documents, but found that those five documents were nonetheless protected from disclosure by other privilege assertions. *Id.* at 11–12 (sustaining

---

[7] The Oversight Board served copies of its various amended privilege logs on the parties, but did not file them on the docket because they contained personal email addresses for senders and recipients. *See* Docket No. 483 in Case No. 17-bk-03566.

[8] Docket No. 562-2 (Exhibit A) in Case No. 17-bk-03566.

3

challenges for Docs. 56, 144, 246, 228, 229). Judge Dein found that two of the seven challenged documents—documents prepared at the direction of counsel in preparation for mediation—fall within the work-product doctrine. *Id.* (overruling challenges for Docs. 43, 44).

## **ARGUMENT**

8.  Under Federal Rule of Civil Procedure 72(a), the Court must "modify or set aside any part of [the Magistrate Judge's] order that is clearly erroneous or is contrary to law." For the reasons that follow, the Court should set aside the portions of the June 20 Order that deny the Renewed Motion to Compel and order the Board to produce additional documents to the Bondholders in connection with the Stay Relief Motion.

**I.    Judge Dein's Denial of the Bondholders' Renewed Motion to Compel Documents Withheld Under the Deliberative Process Privilege Motion is Clear Error and Contrary to Law.**

9.  As the Bondholders stated in their June 20 Objection, the deliberative process privilege in Puerto Rico is an exceedingly narrow one, and the Commonwealth's "evidentiary system demands a restrictive interpretation when determining the existence of a privilege." June 20 Objection ¶ 16 (citing *Bhatia Gautier v. Gobernador*, 199 D.P.R. 59, 89 (P.R. 2017) ("*Bhatia Gautier I*")). Because materials must be *deliberative*, the privilege also does not shield purely factual material. *See, e.g.*, *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884–85 (1st Cir. 1995). This specifically includes factual material that can be reasonably segregated from deliberative material. *Id.*

10.  The Bondholders' Motion to Compel identified no less than 46 entries on the Oversight Board's privilege logs that appeared to contain entirely factual material, such as cash flow statements, forecasts, projection, models, and other documents. Motion to Compel ¶ 23. In response to this problem, Judge Dein ordered the Board to supplement its privilege logs and supporting declaration, or produce the segregable factual information. Order at 12.

4

11. On June 12, the Board produced 9 of the 46 documents identified in the Bondholders' Motion to Compel.[9] For the remaining 37 documents that were not produced, however, the Board still failed to provide sufficient information—in either its amended privilege log or its Supplemental Declaration (both served on June 12, 2019)—such that the Bondholders or the Court could confirm the Board's representation that all factual information that could be segregated has been produced. Indeed, for most of the documents identified, the Board made no changes at all to the related privilege log descriptions.[10] For the remaining document descriptions, the Board made minor changes that did nothing to inform the Bondholders regarding (i) whether the disclosure of the factual information would disclose the deliberative process, or (ii) that the factual information could not be segregated.[11]

12. Accordingly, the Bondholders challenged the Board's continued claim of deliberative process privilege over these documents. Renewed Motion to Compel ¶¶ 10–11. Judge Dein overruled these objections, accepting the amended descriptions in the privilege logs and the Supplemental Declaration as sufficient. June 20 Order at 5–6. This was clear error.

13. The privilege log descriptions for the relevant documents were largely untouched; the Board did not even rely on them to oppose the Bondholders' Renewed Motion to Compel on this issue. Rather, both the Board and Judge Dein focused on the Supplemental Declaration. However, the Supplemental Declaration did not supply the information necessary to support the Board's assertion of the deliberative process privilege.

14. The Supplemental Declaration simply asserts—in the most general terms—that,

---

[9] Docs. 31, 32, 33, 34, 37, 38, 40, 41, 167.

[10] *See* Docs. 22, 23, 35, 50, 59, 66, 69, 84, 103, 104, 106, 107, 110, 111, 120, 164, 191, 210, 247, 248, 320, 331, and 265.

[11] *See* Docs. 1-4, 11, 17, 20, 165, 209, 227, 245, and 260.

5

except where redacted, "the Oversight Board considers the documents identified [in the Supplemental Declaration] to be protected in their entirety by the deliberative process privilege[.]" Supplemental Declaration ¶ 4. With respect to factual information, the Supplemental Declaration states—again, in the most general terms—that "[t]o the extent these [withheld] documents contain facts, such as financial data, they are intertwined with the analysis of the fiscal plan and budget scenarios and potential financial outcomes for purposes of making fiscal policy decisions." *Id*. (emphasis added).

15. The categorical descriptions found elsewhere in the Supplemental Declaration do not provide the necessary detail either. *See* Supplemental Declaration ¶¶ 3(a)–(l). They consist of nothing more than a summary of the kinds of documents withheld, followed by conclusory statements that the disclosure of documents in these categories would reveal deliberative process. Yet many of the documents the Board withheld under the privilege contain factual material that clearly could be segregated and produced. For example, it is not plausible that Excel spreadsheets embedded in a presentation could not be segregated and produced (*see, e.g.*, Docs. 164, 165), and nothing in the Supplemental Declaration suggests otherwise (*see* Supplemental Decl. ¶ 3(g) (describing the category of documents including Docs. 164 and 165). It was clear error, therefore, for Judge Dein to ignore the lack of any explanation in the Supplemental Declaration for why the factual materials could not be segregated.

**II.** **Judge Dein's Denial of the Bondholders' Renewed Motion to Compel Documents Withheld Under the Attorney-Client Privilege is Clear Error and Contrary to Law.**

16. Judge Dein's June 6 Order found that the Board failed to substantiate certain of its claims of attorney-client privilege in two respects. *First*, the Board did not demonstrate in its privilege logs that the entire communication and all attachments consisted of legal advice such that they were fully protected. June 6 Order at 12. *Second*, the Board did not make the necessary

6

showing for applying the attorney-client privilege notwithstanding the presence of third parties on the withheld documents. *Id.* at 14. Accordingly, Judge Dein ordered the Board to re-review its documents and amend its privilege logs, or to produce additional documents by June 12. June 6 Order at 14–15.

17. The Board amended its privilege log on June 12, but still failed to meet its burden with respect to its claim of attorney-client privilege over 222 documents. First, as the Bondholders identified in their Motion to Compel, there are at least 16 documents that have been withheld in their entirety where the descriptions do not demonstrate that the entire email chain contains privileged advice, much less the attachments thereto. Motion to Compel ¶ 13; *see also* Reply in Support of Motion to Compel ¶¶ 10–11.[12] Judge Dein committed clear error by finding that inserting general phrases such as "soliciting legal advice" into the description cloaks the *entire communication* and *all attachments* with the attorney-client privilege. This is particularly true where there are documents that appear to involve only partial legal advice. *E.g.*, Doc. 53 (email between Board members only "concerning Commonwealth budget, with attachments"); Docs. 56, 94 (emails "between" members of the Oversight Board and its legal counsel where author of the document is an external non-lawyer advisor); Docs. 57, 95, 156, 175, 216, 252 (emails "regarding Governor's responses to Oversight Board proposed fiscal plan, with attachments").

18. Second, most of the materials the Board withheld under the attorney-client privilege involve communications with non-lawyer bankers, financial advisors, and consultants such as Ernst & Young LLP, McKinsey & Company, Inc., Pension Trustee Advisors, Citigroup, Hub International, and the Federal Home Loan Bank New York. In fact, McKinsey & Company, Inc., Ernst & Young LLP, and Citigroup. By definition, these communications cannot be attorney-

---

[12] Docket No. 7509 in Case No. 17-bk-03283 and Docket No. 565 in Case No. 17-bk-03566.

7

client communications, since the employees of these non-legal advisors are neither the attorney (they are not lawyers) nor the client (they are not receiving legal advice). As the First Circuit has explained, "[f]or a communication to be covered by the attorney-client privilege, the communication must be made in confidence" and "not be waived. The presence of third parties during an attorney-client communication is often sufficient to undermine the 'made in confidence' requirement, or to waive the privilege." *Cavallaro v. United States*, 284 F.3d 236, 246 (1st. Cir. 2002) (citations omitted). Absent an exception, then, the fact that third parties received the materials means the privilege never arose or has been waived. *Id.*

19. The sole possible exception here—the "*Kovel* doctrine"—applies to "third parties employed to assist a lawyer in rendering legal advice." *Id.* at 247; *see also United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961). The First Circuit, however, has never recognized that doctrine. *Cavallaro*, 284 F.3d at 240 ("Assuming *arguendo* that this circuit would adopt the *Kovel* rule, we conclude that the documents are not privileged."); *see also Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 n.20 (1st Cir. 2011). Even assuming that it is available, district courts in the First Circuit consistently hold that for it to apply, "three separate elements must be met." *Columbia Data Prods., Inc. v. Autonomy Corp.*, No. 11-12077-NMG, 2012 WL 6212898, at *14 (D. Mass. Dec. 12, 2012). First, the third party must be "must be necessary, or at least highly useful, for the effective consultation between the client and the lawyer," meaning "nearly indispensable" rather than just "useful and convenient." *Id.* at *15. Second, the third party must play "an interpretive role," helping "to translate information between the client and the attorney." *Id.* Last, "the third party's communication must be made for the purpose of rendering legal advice, rather than business advice." *Id.*; *see also, e.g.*, *Dahl v. Bain Capital Partners*, 714 F. Supp. 2d 225, 229 (D. Mass. 2010) (applying the same three elements).

8

20. The Board does not explain the roles played by the non-lawyer third parties in any of its several amended privilege logs or in its supporting declarations. Nor is there any indication that these third parties were "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Columbia Data Prods.*, 2012 WL 6212899, at *15. Indeed, many of the entries indicate that financial advisors were simply *copied* on communications between the client and counsel. *See, e.g.*, Docs. 128, 129, 171, 182. Other entries omit basic information regarding the financial advisors altogether. *See* Docs. 187 (no mention of the financial advisors in the document description); 290 (financial advisors on the communication not identified). The Board does not explain how such communications could possibly qualify as being "made in confidence" such that the attorney-client privilege applies.

21. Notwithstanding these glaring deficiencies, Judge Dein overruled the Bondholders' objections. June 20 Order at 11. This was clear error. Even the examples cited by Judge Dein fail to satisfy the three elements necessary to sustain the claim of privilege. The first example, Doc. 127, states: "*Email between Oversight Board financial advisors and Oversight Board Executive Director concerning upcoming mediation and attaching draft materials to prepare for mediation session, with attachments*." Far from supporting a claim of attorney-client privilege, this description counsels overruling the claim. It indicates nothing more than an email exchange where information that might be possibly be attorney-client privileged was disclosed to a third party, without any indication that the disclosure was necessary for rendering legal advice. In other words, this is precisely the type of communication that would *destroy* any applicable attorney-client privilege, and nothing in the description indicates why that should not be the case.

9

22. A second example, Doc. 272 fares no better. The privilege log description states: "*Email between Oversight Board legal counsel, Oversight Board members, Oversight Board financial advisors, and Oversight Board staff discussing legal strategy regarding proposed stipulation between purported ERS bondholders requesting adequate protection and ERS.*" This description simply indicates that third parties were included on possibly privileged communications; it says nothing about why or what role they played in the rendering of legal advice. Ignoring this, the June 20 Order simply *assumes* that the third parties must have been necessary for the Board's counsel to understand their legal strategy by virtue of the fact that the third parties were included on a communication where legal issues were being discussed. *See* June 20 Order at 10. But, if that were the case, then there would never be a need to demonstrate the first two elements under the three-element test—*i.e.*, that third party was *necessary* for the effective consultation between the client and the lawyer, and that the third party played an *interpretative role* in helping to translation information between the client and the lawyer. Judge Dein's failure to make these two necessary findings, therefore, is clear error.

**III.** **Judge Dein's Denial of the Bondholders' Motion to Compel Documents Withheld Under the Work-Product Doctrine is Clear Error and Contrary To Law.**

23. While Judge Dein sustained in part the Bondholders' challenge to the Board's assertions of the work-product doctrine, June 20 Order at 11–12, it was clear error to conclude that the Board did not need to disclose any documents because these documents are otherwise protected by the other asserted privileges. *See id.* at 13. For the reasons stated above and in the Bondholders' June 20 Objection, the documents identified are not protected under any of the asserted privileges and the Court should compel their production.

10

## **CONCLUSION**

For the forgoing reasons, the Court should reverse Judge Dein's June 20 Order and compel the production of documents withheld as privileged.

11

In San Juan, Puerto Rico, today July 23, 2019.

By:

*/s/ Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Geoffrey S. Stewart*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

| | |
|---|---|
| */s/ Alicia I. Lavergne-Ramírez* | */s/ Cheryl T. Sloane* |
| José C. Sánchez-Castro | John K. Cunningham (*pro hac vice*) |
| USDC-PR 213312 | Glenn M. Kurtz (*pro hac vice*) |
| jsanchez@sanpir.com | WHITE & CASE LLP |
| | 1221 Avenue of the Americas |
| Alicia I. Lavergne-Ramírez | New York, NY 10036 |
| USDC-PR 215112 | Tel. (212) 819-8200 |
| alavergne@sanpir.com | Fax (212) 354-8113 |
| | jcunningham@whitecase.com |
| Maraliz Vázquez-Marrero | gkurtz@whitecase.com |
| USDC-PR 225504 | |
| mvazquez@sanpir.com | Jason N. Zakia (*pro hac vice*) |
| | Cheryl T. Sloane (*pro hac vice*) |
| SÁNCHEZ PIRILLO LLC | WHITE & CASE LLP |
| 270 Muñoz Rivera Avenue, Suite 1110 | 200 S. Biscayne Blvd., Suite 4900 |
| San Juan, PR 00918 | Miami, FL 33131 |
| Tel. (787) 522-6776 | Tel. (305) 371-2700 |
| Fax: (787) 522-6777 | Fax (305) 358-5744 |
| | jzakia@whitecase.com |
| | csloane@whitecase.com |

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*