# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | Title III |
| | ) | |
| | ) | Case No. 17-bk-03283 (LTS) |
| | ) | |
| as representative of | ) | |
| | ) | |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ———————————————— | X | |
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | Title III |
| | ) | |
| | ) | |
| | ) | Case No. 17-cv-01685 (LTS) |
| as representative of | ) | Case No. 17-bk-03566 (LTS) |
| | ) | |
| | ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ———————————————— | X | |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................... 2

BACKGROUND .................................................................................. 3

ARGUMENT ....................................................................................... 8

I.    MAGISTRATE JUDGE DEIN CORRECTLY UPHELD THE OVERSIGHT BOARD'S
ASSERTION OF DELIBERATIVE PROCESS PRIVILEGES. ...................................... 8

    A.    Movants Cannot Show the Substantial Need for the Documents Necessary
to Overcome the Deliberative Process Privilege. .................................... 8

    B.    The Oversight Board Sufficiently Demonstrated that Withheld Factual
Information Cannot be Segregated from the Privileged Documents. ................... 12

    C.    Materials Dated After March 13, 2017 Were not Post-Decisional ....................... 14

    D.    The Oversight Board Did Not Waive Privileges with Respect to Materials
Shared with the Commonwealth, and/or AAFAF ................................................. 16

II.    MAGISTRATE JUDGE DEIN CORRECTLY REJECTED MOVANTS'
CHALLENGES TO THE OVERSIGHT BOARD'S CLAIMS OF ATTORNEY-CLIENT
PRIVILEGE .......................................................................................... 18

    A.    The Oversight Board's Privilege Log Descriptions Adequately Support its
Claims of Attorney-Client Privilege ...................................................... 19

    B.    The Oversight Board Did Not Waive Privilege Over Materials Shared with
its Advisors. ..................................................................................... 20

    C.    The Crime-Fraud Exception Does Not Apply Here ............................................ 23

    D.    The Oversight Board Did Not Waive Privileges for Materials Shared with
the Commonwealth and/or AAFAF ....................................................... 24

III.    MAGISTRATE JUDGE DEIN CORRECTLY REJECTED MOVANTS'
CHALLENGES TO THE OVERSIGHT BOARD'S CLAIMS OF WORK PRODUCT
PRIVILEGE .......................................................................................... 25

CONCLUSION ..................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bhatia-Gautier v. Gobernador,*
    199 D.P.R. 59 (P.R. 2017) ............................................................................11

*Cavallaro v. United States,*
    284 F.3d 236 (1st Cir. 2002) ..................................................................20, 22

*Crowley v. L.L. Bean, Inc.,*
    2001 WL 103541 (D. Me. Feb. 1, 2001) ...................................................23

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.,*
    232 F.R.D. 103 (S.D.N.Y. 2005) ...............................................................11

*Fox News Network, LLC v. U.S. Dep't of the Treasury,*
    739 F. Supp. 2d 515 (S.D.N.Y. 2010) .......................................................17

*Hunton & Williams LLP v. U.S. Envtl. Prot. Agency,*
    248 F. Supp. 3d 220 (D.D.C. 2017) ...........................................................17

*In re Grand Jury Proceedings,*
    417 F.3d 18 (1st Cir. 2005) ..................................................................23, 24

*In re Richmond Unified School District,*
    133 B.R. 221 (Bankr. N.D. Cal. 1991) ......................................................18

*In re Veeco Instruments, Inc. Sec. Litig.,*
    2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) ...............................................12

*In re Warner,*
    87 B.R. 199 (Bankr. M.D. Fla. 1988) ........................................................24

*New Hampshire Right to Life v. U.S. Dept. of Health and Human Services,*
    778 F.3d 43 (1st Cir. 2015) .........................................................................14

*P.C.M.E. Commercial, S.E. v. Pace Membership Warehouse, Inc.,*
    952 F. Supp. 84 (D.P.R. 1997) ...................................................................24

*Phinney v. Wentworth Douglas Hosp.,*
    199 F.3d 1 (1st Cir. 1999) .............................................................................8

*Providence Journal Co. v. Dept. of Army,*
    981 F.2d 522 (1st Cir. 1992) .......................................................................14

*U.S. v. Graf*,
    610 F.3d 1148 (9th Cir. 2010) ...................................................................................23

*Xcel Energy, Inc. v. U.S.*,
    237 F.R.D. 416 (D. Minn. 2006) ...............................................................................11

**STATUTES**

48 U.S.C. §§ 2101-2241 ...................................................................................................1

PROMESA § 101(c)(1) ...................................................................................................18

PROMESA § 301(A) .......................................................................................................17

PROMESA § 301(B) .......................................................................................................17

PROMESA § 315(b) ..................................................................................................1, 17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30(b)(6) ..................................................................................................10

Fed. R. Civ. P. 72(a) .........................................................................................................8

House Joint Resolution 188 (2017) ...................................................................................2

**RESPONSE OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,
AS REPRESENTATIVE OF DEBTOR, TO OBJECTIONS OF CERTAIN ERS
BONDHOLDERS TO THE MAGISTRATE JUDGE'S JUNE 6, 2019 AND
JUNE 20, 2019 ORDERS ON MOTIONS TO COMPEL**

To the Honorable United States Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),
for itself and as representative for debtor the Employees Retirement System of the Government of
the Commonwealth of Puerto Rico ("ERS" or "Debtor"), pursuant to Section 315(b) of the *Puerto
Rico Oversight, Management, and Economic Stability Act*, codified at 48 U.S.C. §§ 2101-2241
("PROMESA"), and this Court's Order [ECF No. 588],[1] respectfully submits this omnibus
response to Movants'[2] objections [ECF No. 566 ("First Objection"); ECF No. 584 ("Second
Objection")] (together, the "Objections") to Magistrate Judge Dein's June 6, 2019 Order [ECF No.
546] (the "June 6 Order") and June 20, 2019 Order [ECF No. 568] (the "June 20 Order") granting
in part and denying in part Movants' motions to compel the Oversight Board to produce documents
withheld on the basis of privilege.

---

[1] ECF numbers refer to Case No. 17-bk-03566 unless otherwise specified.

[2] Movants are:  Andalusian Global Designated Activity Company, Glendon Opportunities Fund,
L.P., Mason Capital Master Fund, LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree
Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value
Opportunities Fund, L.P., Ocher Rose, L.L.C., SV Credit, L.P., Puerto Rico AAA Portfolio Bond
Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target
Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II,
Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto
Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund,
Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico
Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico
Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico
Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities
Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free
Puerto Rico Target Maturity Fund, Inc.

## PRELIMINARY STATEMENT

1.      Movants' Objections are the latest salvos in their scorched-earth campaign to compel broad discovery—including discovery of privileged information—in this narrow lift-stay proceeding.  In their First Objection, Movants contend the Oversight Board's "intent" is somehow relevant to decide whether (a) Movants have a security interest in employer payments under the PayGo system established by House Joint Resolution 188 of 2017 ("J.R. 188") and Act No. 106 (J.R. 188 and Act No. 106 together, the "Pension Reform Legislation"), and (b) Movants' alleged collateral has suffered any diminution in value as a result of the automatic stay.  *See* First Objection at 5.

2.      Movants are plainly wrong, and Magistrate Judge Dein correctly rejected their arguments.  Movants cannot show "substantial need" for the deliberative materials they seek because this Court has already held "intent" evidence is at best "marginally relevant" and in any event will be excluded because whatever relevance it has is "substantially outweighed by the risk of undue delay and wasted time associated with additional preparation for the Stay Relief Hearing and determinations related to the admissibility and weight of the proffered evidence" concerning intent.  ECF No. 544 at 6.  Movants also fail in their effort to demonstrate that the Oversight Board made no decisions after March 13, 2017 such that all of its materials created since then are "post-decisional," or that it is adverse to any of the other Respondents[3] in this proceeding such that it "waived" any privilege by communicating with them, or that the crime-fraud exception could possibly apply.  Movants' First Objection is also largely academic, as Movants challenged only some of the privileges asserted as to the Oversight Board's documents but not all of them, resulting

---

[3] AAFAF, ERS, and the Commonwealth are referred to collectively as the "Government Parties." The Government Parties and the Oversight Board are referred to collectively as "Respondents."

in a continuous and wasteful expenditure of the Court's resources with no proportional benefit in this narrow proceeding.

3.     The arguments in Movants' Second Objection fare no better.  Relying on a combination of selective quotation and misapplication of privilege doctrines, this objection—Movants' sixth discovery motion—again falls far short of the proof necessary to modify or set aside Magistrate Judge Dein's rulings for clear error or as contrary to law.  It also raises <u>new</u> arguments not presented to Magistrate Judge Dein concerning the sufficiency of the Oversight Board's declaration supporting its assertion of the deliberative process privilege.  *Compare* ECF No. 562 ¶¶ 14-15 *with* ECF No. 584 ¶ 15.

4.     Both Objections are a waste of the Court's and Respondents' resources, and the Court should overrule them in their entirety.

## BACKGROUND

5.     On July 3, 2018, Movants filed the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [ECF No. 289] (the "<u>Stay Relief Motion</u>").  Following the January 30, 2019, decision of the First Circuit Court of Appeals holding that Movants are secured creditors of ERS, Movants filed a motion to expedite consideration of the Stay Relief Motion [ECF No. 367].

6.     In setting the schedule for discovery and briefing in connection with the Stay Relief Motion, Judge Swain authorized discovery only with respect to "the attribution of any diminution in value resulting from the automatic stay."  ECF No. 313 (the "<u>Stay Relief Scheduling Order</u>"); *see also* ECF No. 475 at ¶ 5 (Movants' concession that this is the "sole question on which Judge Swain ordered discovery").  To that end, Magistrate Judge Dein has allowed discovery into two narrow issues:  (1) "how the PayGo system worked, and how it compared to how the ERS system worked, and the similarities and differences," to address Movants' contention that their alleged

3

security interest in ERS Bonds attached to PayGo fees; and (2) diminution in value resulting from the automatic stay.  May 2, 2019 Hearing Tr. 102.

7.     Following earlier motion practice, the Oversight Board and Movants agreed upon search terms, custodians, and the appropriate timeframe for the Oversight Board to search for responsive documents.  ECF No. 432 ¶ 2.

8.     On April 15–16, 2019, Movants filed motions to compel against the Government Parties [ECF Nos. 443, 446], which the Court denied [ECF Nos. 493, 509].  Among other things, the Court held that "[t]he factual information necessary for [Movants] to present their position to the Court on [the Stay Relief Motion] has been produced."  ECF No. 493 at 5.

9.     On April 29, 2019, the Oversight Board served its 110-page supplemental and amended document-by-document privilege log.  As noted in the Oversight Board's informative motion [ECF No. 483], the Oversight Board sent unredacted copies of that privilege log to Movants and the Court via email.

10.    On May 1, 2019, the Oversight Board completed its document production after reviewing more than 7,400 documents identified through the agreed-upon search terms, and served a further supplemental document-by-document privilege log upon Movants.  The Oversight Board also sent an unredacted copy of the May 1 privilege log to the Court via email, along with a declaration of Oversight Board Executive Director Natalie Jaresko (the Jaresko Declaration").

11.    On May 17, 2019, Movants filed the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents from Financial Oversight and Management Board* [ECF No. 512] (the "Motion to Compel").  On May 23, 2019, the Oversight Board filed its opposition to the Motion to Compel [ECF No. 528], and Movants filed their reply on May 29, 2019 [ECF No. 535].

12.     On June 6, 2019, Magistrate Judge Dein denied in part and granted in part Movants'
Motion to Compel via the June 6 Order [ECF No. 546].  The June 6 Order rejected several of
Movants' objections to the Oversight Board's privilege claims, but directed the Oversight Board
to supplement its production and revise its privilege log to include further information in support
of its privilege assertions.

13.     Between June 6, 2019 and June 12, 2019, the Oversight Board engaged in a detailed
re-review of all of the documents redacted or withheld on the basis of privilege, all of which are
reflected on its privilege logs.  ECF No. 564-2 ¶ 3.  Specifically, the Oversight Board did the
following:

a.      Re-reviewed all 335 of its privilege log entries, including the privileges
asserted and the descriptions provided for each log entry;

b.      Re-reviewed all 975 documents (i.e., direct hits and family documents)
reflected in its privilege log entries to evaluate the privileges asserted as to each;

c.      Re-reviewed all of the redactions previously made and reflected in the
Oversight Board's privilege logs;

d.      Withdrew certain privilege assertions as reflected on its amended and
supplemental privilege log served on June 12, 2019 (the "June 12 Privilege Log");

e.      Withdrew certain redactions where it determined factual information was
segregable from privileged material;

f.      Made a supplemental production of 34 documents to Movants that consisted
of documents that had been (i) previously withheld but over which the Oversight
Board no longer asserted any privileges, protections, or immunities; (ii) previously
withheld but which the Oversight Board determined it could produce with

5

appropriate redactions; or (iii) previously produced in redacted form but were now produced with fewer redactions or in unredacted form following the Oversight Board's re-review; and

g.     Prepared and served the June 12 Privilege Log reflecting the results of the Oversight Board's re-review of its withheld documents in this proceeding.

14.     Additionally, on June 13, 2019, the Oversight Board served a supplemental declaration from Ms. Jaresko in support of the Oversight Board's assertion of the deliberative process privilege that addresses each document to which the Oversight Board maintains its assertion as to the deliberative process privilege. ECF No. 564-2 ¶ 4 (the "Supplemental Jaresko Declaration").

15.     On June 14, 2019, the Parties met and conferred concerning the Oversight Board's supplemental and amended June 12 Privilege Log, supplemental document production, and supplemental declaration from Ms. Jaresko. The Oversight Board requested that Movants identify specific entries they felt were deficient in the June 12 Privilege Log. In response:

(i)     Movants identified 2 specific examples of documents withheld on the basis of attorney-client privilege they believed were deficient (Privilege IDs 9 and 10, both from page 3 of the June 12 Privilege Log).

(ii)     Movants identified 2 specific examples of documents withheld on the basis of the attorney work-product doctrine they felt were deficient (Privilege IDs 44, and 176).

(iii)     As for the Oversight Board's deliberative process privilege claims, Movants identified only their original list (i.e., created before the service of supplemental material described above) of approximately 50 documents withheld

6

or redacted on grounds of deliberative process privilege on pages 9-10 of their opening brief on the Motion to Compel [ECF No. 512], without being any more specific as to which documents remained at issue after the Oversight Board's supplemental privilege log, supplemental production, and supplemental declaration from Ms. Jaresko to support those assertions.

      (iv)    The Oversight Board requested Movants identify any other specific entries they believed were deficient, but Movants supplied none.

ECF No. 564-2 ¶ 5.

16.    Despite Movants' failure to be more specific, following the June 14 meet-and-confer, the Oversight Board again reviewed its privilege log, production, and declarations in support of its assertion of the deliberative process privilege.  ECF No. 564-2 ¶ 6.  Following that review, the Oversight Board agreed to withdraw the assertion of work-product protection as to one additional document (Privilege ID 176).  ECF No. 564-2 ¶ 7.

17.    Despite the Oversight Board's efforts, on June 17, 2019, Movants filed a renewed motion to compel [ECF No. 562] (the "Renewed Motion to Compel"), arguing that the Oversight Board's supplemental production and revised privilege log and declaration failed to address the deficiencies with respect to certain privilege claims that the Court identified in the June 6 Order. The Oversight Board filed an opposition to the Renewed Motion to Compel on June 18, 2019, and Movants filed a reply in support of the Renewed Motion to Compel on June 19, 2019.

18.    On June 20, 2019, Magistrate Judge Dein entered an order denying in part and granting in part the Renewed Motion to Compel [ECF No. 568] (the "June 20 Order").  The June 20 Order rejected Movants' objections to the Oversight Board's claims of attorney-client and deliberate process privilege, but found that two of the Oversight Board's claims of work-product

protection remained deficient.  But, as the Oversight Board has noted throughout discovery proceedings, Movants' challenge was academic:  the two documents remained protected by other privileges Movants did <u>not</u> challenge and, as a result, neither will be produced.  June 20 Order at 12.

19.     Also on June 20, 2019, Movants filed the First Objection, which only pertains to the portions of the June 6 Order that denied the Motion to Compel.

20.     On June 23, 2019, Movants filed the Second Objection to Magistrate Judge Dein's discovery rulings in this narrow proceeding, this time challenging the denial of the Renewed Motion to Compel in the June 20 Order despite the Oversight Board's extensive actions to address the June 6 Order.  ECF No. 584.

## LEGAL STANDARD

21.     To modify or set aside Magistrate Judge Dein's rulings, Movants must show that her decisions are "clearly erroneous or . . . contrary to law." *See* Fed. R. Civ. P. 72(a).  In evaluating whether Magistrate Judge Dein's rulings were clearly erroneous or contrary to law, the Court must accept her "findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [the court] 'form[s] a strong, unyielding belief that a mistake has been made.'" *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (quoting *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir.1990)).  Movants fall far short of this high standard.

## ARGUMENT

**I.     MAGISTRATE JUDGE DEIN CORRECTLY UPHELD THE OVERSIGHT BOARD'S ASSERTION OF DELIBERATIVE PROCESS PRIVILEGES.**

**A.     Movants Cannot Show the Substantial Need for the Documents Necessary to Overcome the Deliberative Process Privilege.**

22.     Movants argue they have a substantial need for the documents withheld by the Oversight Board on the basis of the deliberative process privilege because these documents may

shed light on the intent or state of mind of the parties involved in the reform of Puerto Rico's pension system.  *See* First Objection ¶17 ("Courts routinely hold that the deliberative process privilege must give way when the government's *intent* is relevant and government deliberations are central to the case." (emphasis added)); *id.* ¶ 20 (arguing that the discovery sought is relevant because the Stay Relief motion relies on measures that "had the *purpose* of defeating the Bondholders' liens" (emphasis added)); *id* ¶ 24 (arguing that the deliberations underlying pension reform are important because of the possibility the Oversight Board and other entities may have "*considered* [employer contributions and PayGo fees] equivalent," may have "expressed *intention* to divert the Bondholders' collateral," and may have had a "*motivation* . . . to avoid paying the Bondholders" (emphasis added)).  Movants are wrong.

23.     Movants' substantial need argument fails from the outset because, as this Court already held, the question of intent "is, at best, of marginal relevance" to the Stay Relief Motion.  ECF No. 544 at 5.  Movants have already raised this argument before both Magistrate Judge Dein and this Court.  Motion to Compel ¶¶ 18–20; ECF No. 530 ¶¶ 16–19.  Both have rightly, and in no uncertain terms, rejected it.  ECF No. 544 at 5 ("Based on the current record, the Court's view is that evidence of intent to circumvent rights in collateral is, at best, of marginal relevance to the central question to be considered at the Stay Relief Hearing.");  Hearing Tr. May 2, 2019 at 58:1–6 (Magistrate Judge Dein) ("[T]o the extent that there has been a production with respect to the actual workings of both the pre- and post-PayGo systems, that that's what's needed for the lift stay motion, and I don't see where the intent comes in.");  *see also* Stay Relief Scheduling Order at 2 (limiting the scope of discovery to "material disputed issues of fact regarding the attribution of any diminution in value resulting from the automatic stay").

24.     Movants here offer no new support for their contention that intent is relevant to the Stay Relief Motion—let alone any reason to conclude Magistrate Judge Dein committed clear error or acted contrary to law—but simply repeat the arguments the Court has already rejected. *Compare* First Objection [ECF No. 566] ¶¶ 18–24 *with* Motion to Compel [ECF No. 512] ¶¶ 18–20, *and* ECF No. 530 ¶¶ 16–19.  Indeed, Movants do not even acknowledge this Court's June 5 Order finding "intent" evidence to be "minimally relevant" and "substantially outweighed by the risk of undue delay and wasted time associated with additional preparation for the Stay Relief Hearing and determinations related to the admissibility and weight of the proffered evidence" concerning intent.  ECF No. 544 at 6; *see also id.* (stating that the Stay Relief Motion depends on issues that "must be determined based on the legal effects of the Pension Reform Legislation rather than the parties' alleged intentions as to what those effects should be").  Movants cannot demonstrate "substantial need" for such evidence, and the Court should reject Movants' argument on this basis alone.

25.     Even if intent were somehow relevant to the Stay Relief Motion, the Court should reject Movants' "substantial need" argument on the grounds that it is little more than a thin disguise for a fishing expedition.  Movants claim that they "now know that the Board has not disclosed sufficient evidence" to answer important questions regarding its "plan . . . directing the Commonwealth to restructure its pension system in a way that defeated the Bondholders' liens." First Objection ¶¶ 20–22.  But Movants cannot point to a single entry in the Oversight Board's document-by-document privilege log—or indeed any evidence whatsoever despite the completion of document discovery and a Rule 30(b)(6) deposition of the Oversight Board—to suggest that the withheld or redacted documents are probative of intent.

26.     Nor does Movants' claim that the Oversight Board's productions consisted largely of "filler material to inflate the size of the Board's document production," First Objection ¶ 6, have any merit or relevance to the June 6 Order.  The Oversight Board engaged in an extensive document collection and review effort on an expedited timeframe to address Movants' broad discovery demands in this narrow proceeding, reviewing over 7,400 documents identified through a search *according to agreed-upon parameters and custodians*.  *See* ECF No. 432.  Movants may not like that the Oversight Board found and produced non-identical copies of the few responsive documents in its possession, but that is no reason to find Magistrate Judge Dein committed clear error or acted contrary to law.

27.     Finally, Movants repeat their misstatement and misapplication of *Bhatia-Gautier* that plagued their Motion to Compel, despite the Oversight Board having already pointed out these inaccuracies.  *See* ECF No. 528 at ¶ 22.  Movants list <u>some</u> of the factors that court identified as relevant to the question of substantial need (First Objection ¶ 17), but omit the factors most damaging to them:  "the relevance of the evidence sought" and "the availability of other evidence." *Bhatia-Gautier v. Gobernador*, 199 D.P.R. 59 (P.R. 2017), at 18 [translation at ECF No. 518-1]. Here, the Court has found Movants already have the factual information they need to assert their position, ECF No. 493 at 5, and the evidence Movants seek is irrelevant to whether the Court will ultimately find diminution in value of Movants' supposed collateral caused by the automatic stay – particularly given the availability and actual production of other evidence sufficient for Movants to assert their position.  *See Xcel Energy, Inc. v. U.S.*, 237 F.R.D. 416, 420 (D. Minn. 2006) (insufficient need to overcome deliberative process privilege where information available from other sources); *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 110 (S.D.N.Y. 2005) (insufficient need to overcome deliberative process privilege where, *inter*

*alia*, information available in multitude of pages already produced); *In re Veeco Instruments, Inc.*

*Sec. Litig.*, 2007 WL 724555, at *2, 10 (S.D.N.Y. Mar. 9, 2007) (insufficient need to overcome

work product protection where defendants produced documents on same subject matter and in

same time frame).  Magistrate Judge Dein did not commit clear error or act contrary to law by

reading and applying all of the *Bhatia-Gautier* factors.

> **B.    The Oversight Board Sufficiently Demonstrated that Withheld Factual Information Cannot be Segregated from the Privileged Documents.**

28.    Movants also challenge the Oversight Board's assertion of the deliberative process

privilege on the grounds it has not shown why factual information in the withheld documents

cannot be segregated from deliberative material.  Specifically, Movants claim the specific and

detailed descriptions in the Supplemental Jaresko Declaration, ECF No. 562-2 ¶ 3(a)-(l), are not

specific and detailed enough, but only provide "general" and "conclusory" statements that the

information in the documents is intertwined with the deliberations.  Second Objection ¶ 15.

Movants are wrong, and do not demonstrate any clear error or decision contrary to law.

29.    *First*, contrary to Movants' late argument (Second Objection ¶ 15),[4] the specific

privilege descriptions in the Supplemental Jaresko Declaration are not just "summaries" of

withheld documents followed by "conclusory" statements that producing them would reveal

deliberative material.  The descriptions show how any withheld factual information is intertwined

with the Oversight Board's deliberations, and how disclosing the factual information would reveal

the Oversight Board's deliberation.  *See, e.g.* Supplemental Jaresko Declaration ¶ 3(a) (claiming

---

[4] Movants' argument is late because they did not challenge the specific descriptions provided in Paragraphs 3(a)-(l) of the Supplemental Jaresko Declaration in their renewed motion to compel, but chose to ignore those specific descriptions to make a generic and sweeping argument that Paragraph 3 was "conclusory."  *See* ECF No. 562 ¶ 11.  Movants only addressed the specific descriptions in reply.  ECF No. 565 ¶¶ 8-9.

privilege over "the Governor's proposals, which the Oversight Board used to formulate counterproposals leading to the March 13, 2017 Commonwealth Fiscal Plan. Disclosing these proposals and responses would reveal the proposals and counterproposals under consideration by decision-makers at the Commonwealth and the Oversight Board concerning the Commonwealth Fiscal Plan, revealing their privileged deliberative process"); *id.* at ¶ 3(e) ("Proposed financial model for the Commonwealth Fiscal Plan and the Oversight Board's certified Fiscal Plan, including comparisons of those models and proposed treatment of the substantive differences between those models, revised proposed projections, and discussion of proposed revisions, which the Oversight Board used to reconcile the financial modeling with the certified Fiscal Plan. Disclosing these documents outlining the Oversight Board's analysis would reveal the proposals to reconcile the financial models for the Commonwealth Fiscal Plan under consideration by decision-makers at the Oversight Board, revealing their privileged deliberative process.").

30.     *Second*, Movants' late and limited challenge to the Oversight Board's specific and detailed privilege descriptions does not identify any clear error or decision contrary to law. Movants' point only to two spreadsheets (Privilege Entries 165 and 166) they say can be segregated and produced because they are "embedded in a presentation" (Second Objection ¶ 15)—but Movants ignore the fact both spreadsheets are part of a "*preliminary draft* presentation . . . regarding the *proposed* fiscal year 2018 Commonwealth territory budget," and that revealing the proposals the Oversight Board was considering would reveal its deliberative process. Supplemental Jaresko Declaration ¶ 3(g) (emphasis added); *see also* June 12 Privilege Log at 47, Doc. Nos. 165 and 166. Whether the spreadsheets are "embedded" makes no difference.

31.     Movants' selective quotation from the Oversight Board's privilege logs and total avoidance of the specific descriptions provided with declarations supporting the Oversight Board's

13

assertion of the deliberative process privilege do not provide any grounds to conclude Magistrate Judge Dein committed clear error or acted contrary to law.  Movants' Objections should be overruled in their entirety.

### C.     Materials Dated After March 13, 2017 Were not Post-Decisional

32.     A document is considered pre-decisional for purposes of the deliberative process privilege where the agency claiming the privilege (a) specifies the agency decision to which the document relates; (b) establishes the document was prepared to assist with making the decision; and (c) verifies that the document predates the decision.  *Providence Journal Co. v. Dept. of Arm*y, 981 F.2d 522, 557 (1st Cir. 1992); *see also New Hampshire Right to Life v. U.S. Dept. of Health and Human Services*, 778 F.3d 43 (1st Cir. 2015).

33.     Movants, however, argue the Oversight Board has made no decisions since March 13, 2017 when it certified a Commonwealth Fiscal Plan, and instead has since only "implemented" decisions it made on that date.  According to Movants, the subsequent decisions in connection with which the Oversight Board asserts the deliberative process privilege—namely, the revisions and corrections to the March 13, 2017 Fiscal Plan, the April 18, 2018 Fiscal Plan, and the Fiscal Year 2018 and 2019 Territory Budgets—merely implemented that decision.  First Objection at ¶¶ 26–33.  Movants' arguments are baseless.

34.     A glance at the March 13, 2017 Fiscal Plan shows why Movants' theory is untenable.  It contains only one slide on the subject of pension reform, which contains a description of the move to a pay-go system consisting of a single sentence: "Switch to pay-as-you-go model, segregate prospective employee contributions, facilitate Social Security enrollment and improve

investment alternatives."[5]  The Oversight Board resolution accompanying the March 13, 2017
Fiscal Plan, from which Movants also quote, is scarcely more detailed, similarly containing a
single sentence describing the move to a pay-as-you-go type of system: "Fund existing pension
obligations on a "paygo" basis, liquidating assets to help fund benefits and using general fund
revenues to pay benefits owed under previous plans."[6]  The March 13, 2017 Fiscal Plan, then, did
not represent the end of deliberations regarding pension reform but merely a start, with details to
be worked out in subsequent fiscal plan, budgets, and legislation – as was made clear in the
Oversight Board resolution that accompanied the certification of the March 13, 2017 Fiscal Plan.[7]

35.      In the face of these facts, Movants offer little more than their *ipse dixit* that after
the certification of the March 13, 2017 Fiscal Plan "there was nothing left for [the Oversight Board]
to deliberate about," and therefore that many of the withheld documents "almost certainly do not
reflect the give-and-take of governmental deliberations at all."  First Objection ¶¶ 30–31.  They
offer no explanation and no authority for why the deliberations regarding numerous decisions
working out the details of a broad policy would not qualify for the deliberative process privilege.
Nor could they, since Movants' interpretation would eviscerate the privilege, making it
inapplicable to any further deliberations once an agency had decided on a policy at even the most
general level.

---

[5]     Fiscal    Plan,    Slide    21,    available    at    https://drive.google.com/file/d/
10PXYyW7dF7wayWpBvdIvZjKtHOLQU0cp/view?usp=drivesdk.

[6] Board Resolution Adopted on March 13, 2017 at 4, available at: https://drive.google.com/file/d/
1gUz92TUNH37mZIE2Hv4pt-M9JmPeaxAE/view.

[7] *See id.* ("The system overhaul shall be formulated by the Commonwealth and the Board on or
before June 30, 2017.").

36.     Magistrate Judge Dein was correct to reject Movants' arguments, finding that documents regarding the revisions and corrections to the March 13, 2017 Fiscal Plan, the April 18, 2018 Fiscal Plan, and the Fiscal Year 2018 and 2019 Territory Budgets qualified as pre-decisional, notwithstanding the certification of the March 13, 2017 Fiscal Plan.  Hearing Tr. May 2, 2019 at 19:4–19; June 6 Order at 6 n. 6 ("the 2018 and 2019 Territory Budgets were not addressed in the Commonwealth Motions. However, the Bondholders do not contend that the evaluation of these Budgets by the Oversight Board should be treated any differently than any other post-March 2017 Fiscal Plan decision, and this Court sees no reason to do so.").  In any event, Movants supply no basis or authority to conclude Magistrate Judge Dein's decision was clearly erroneous or contrary to law.

> **D.     The Oversight Board Did Not Waive Privileges with Respect to Materials Shared with the Commonwealth, and/or AAFAF**

37.     Movants argue that the Oversight Board has waived any applicable privileges with respect to, and therefore must disclose, any materials it shared with the Commonwealth and/or AAFAF.[8]  First Objection ¶¶ 34–38.  Movants' position is based on the contention that the Oversight Board is a distinct legal entity with interests "adverse" to other Respondents.  *Id.*

38.     As an initial matter, the Court should reject the theory of waiver on the basis of adverse interests because Movants' articulation of the parties' interests vis-à-vis each other is confused at best.[9]  Movants begin by stating that the Oversight Board is a legal entity distinct from

---

[8] Movants apparently claim the Oversight Board waived privilege over documents shared with its advisors, First Objection ¶ 34, but provide no support for that argument.  Movants also supply no argument as to how the Oversight Board's advisors could be "adverse" to the Oversight Board. *See id.* ¶¶ 34-38.  The Court should reject Movants' arguments.

[9] Movants' initial motion to compel does not provide any clarity on the issue – it states that "[t]he Board has previously admitted that its interests often diverge from the Commonwealth and its instrumentalities," but offers no further explanation.  Motion to Compel ¶ 36.

the Commonwealth and its instrumentalities. First Objection ¶ 35. Movants then allege the Commonwealth and ERS are adverse to each other, and therefore that privilege is waived as to any communications shared among these parties. First Objection ¶¶ 36–38. However, they nowhere articulate how the *Oversight Board* is adverse to both (or either) of ERS or the Commonwealth (let alone identify the adversity in this proceeding or as it relates to any withheld document). Nor could they: the Oversight Board is the representative of the Debtor (PROMESA § 315(b)), including both the "territory" (the Commonwealth) and any "covered territorial instrumentality of a territory" (here, ERS). PROMESA § 301(1)(A)–(B). The Court cannot find "waiver" on the basis of adverse interests when Movants do not state to whom the Oversight Board is adverse.

39.     Regardless, Movants neither articulate how the Oversight Board is adverse to any Government Party, nor why Magistrate Judge Dein's rulings were clearly erroneous or contrary to law. Even if the interests of different government entities *can* diverge *sometimes*, the Commonwealth, ERS, and AAFAF, together with the Oversight Board, are part of the same government and share the deliberative process privilege when making joint decisions. *See Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 247 (D.D.C. 2017) ("The deliberative process can—as it did here—span between two different agencies.") (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 187-88 (1975)); *cf. Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 540 n.5 (S.D.N.Y. 2010) (privilege applied between government agencies "even if [one agency's] employees were representing separate interest or taking policy positions different than those of [another agency's]

17

employees" and that "the interest of various agencies often diverge based on their different areas
of responsibility and expertise.").[10]

40.     Movants attempt to invoke the principle that debtors and creditors negotiating
business transactions are necessarily adverse to each other, and therefore that the Commonwealth
and ERS are adverse due to the $411 million in overdue employer contributions the
Commonwealth and its instrumentalities owe to ERS.  First Objection ¶ 36.  However, this
principle is inapplicable where the parties in question are government entities, who are all bound
to exercise their sovereign powers in service to the same constituents.  In *In re Richmond Unified
School District*, 133 B.R. 221 (Bankr. N.D. Cal. 1991), the court held that a public entity's alleged
conflict of interest resulting from its debtor-creditor relationship with the state was irrelevant in
the context of a municipal bankruptcy because Chapter 9 was "drafted to assure that application
of the federal bankruptcy power would not infringe upon the sovereignty powers and rights of the
states, including, presumably, states alleged to have a conflict of interest.  In recognizing this
concept, Congress has included in Section 903 a reaffirmation that Chapter 9 does not limit or
impair the power of the states to control municipalities[.]").  *Id.* at 226.  Here, Respondents share
the same ultimate purpose: to restore Puerto Rico to financial health.  Movants' analogy to
commercial debtors and creditors is wrong, and Magistrate Judge Dein was correct to reject it.

## II.  MAGISTRATE JUDGE DEIN CORRECTLY REJECTED MOVANTS' CHALLENGES TO THE OVERSIGHT BOARD'S CLAIMS OF ATTORNEY-CLIENT PRIVILEGE

41.     Movants offer three bases for their assertion that Magistrate Judge Dein committed
"clear error" in upholding the Oversight Board's claims of attorney-client privilege.  *First*,

---

[10] Movants apparently believe it is a "fact" the Oversight Board "is not part of the Puerto Rico
government at all," Objection ¶ 38, even though the law is clear the Oversight Board is "an entity
within the territorial government" of the Commonwealth of Puerto Rico.  PROMESA § 101(c)(1).

Movants claim that the Oversight Board's privilege log entries fail to support invocation of the attorney-client privilege. *Second*, Movants argue that the Oversight Board waived any privilege over documents shared with its advisors. *Third*, Movants argue that the so-called "crime-fraud" exception to the privilege defeats the Oversight Board's assertions of attorney-client privilege. None has any merit.

### A. The Oversight Board's Privilege Log Descriptions Adequately Support its Claims of Attorney-Client Privilege

42.     Movants challenge the Oversight Board's claims of attorney-client privilege on the basis that the Oversight Board's descriptions do not demonstrate that the entire communication contains privileged advice. Second Objection ¶ 17. But the descriptions make abundantly clear that the communications and attachments relate primarily to the legal advice being solicited and given – a fact Movants attempt to get around by selectively quoting the Oversight Board's privilege-log entries. For example, Movants (Second Objection ¶ 17) characterize Privilege Entry 53 as "concerning Commonwealth budget, with attachments," but the actual entry from the June 12 Privilege Log (Doc. No. 53) states it is an "[e]mail between Oversight Board members and Executive Director reflecting *and attaching legal analysis and draft litigation documents and internal discussions* concerning Commonwealth budget, with attachments" (emphasis added). As another example, Movants (Second Objection ¶ 17) characterize Privilege Entry 57 as "emails regarding Governor's responses to Oversight Board proposed fiscal plan, with attachments," but the actual entry from the June 12 Privilege Log (Doc. 57) states it is an "[e]mail from Oversight Board member to Oversight Board members and *legal counsel seeking legal advice regarding Governor's responses to Oversight Board proposed fiscal plan*, with attachments" (emphasis

added).[11]   Movants cannot show that Magistrate Judge Dein committed clear error or acted

contrary to law by rejecting arguments premised on selective quotations from the record.

**B.     The Oversight Board Did Not Waive Privilege Over Materials Shared with its Advisors.**

43.     Movants would have the Court overrule all of the Oversight Board's claims of

attorney-client privilege with respect to documents shared with the Oversight Board's advisors for

the purpose of seeking legal advice in this unprecedented restructuring.   Magistrate Judge Dein

correctly rejected Movants' arguments.

44.     Under the so-called *Kovel* doctrine, the attorney-client privilege is not waived as to

communications with certain third parties employed to assist the lawyer in rendering legal advice.

*See Cavallaro v. United States,* 284 F.3d 236, 240 (1st Cir. 2002) (citing *United States v. Kovel*,

296 F.2d 918 (2d Cir. 1961)).   Magistrate Judge Dein outlined three elements that must be met

under the *Kovel* doctrine in order for the attorney-client privilege not to be waived as to documents

shared with third parties:   (1) the third-party communications must be necessary, or at least highly

useful, for the effective consultation between the client and the lawyer which the privilege is

designed to permit; (2) the third party's communication must serve to translate information

between the client and attorney; and (3) the third party's communication must be made for the

purpose of rendering legal advice, rather than business advice.   June 20 Order at 9 (citing *Columbia

Data Prods., Inc. v. Autonomy Corp.*, 2012 WL 6212898 (D. Mass Dec. 12, 2012)).   Assuming,

---

[11]   Magistrate Judge Dein noted Movants' selective quotations from the Oversight Board's
privilege log as part of the basis for denying Movants' renewed motion to compel.   *See* June 20
Order at 8 (noting that "Bondholders ignore the remainder of the privilege log entry . . . which
sufficiently represents that this documents consists of privileged legal advice.").   The Oversight
Board has also catalogued numerous instances of Movants' selective and misleading quotations in
these discovery motions.   *See* ECF No. 562 ¶ 18 (cataloging examples of Movants' use of selective
and misleading quotations in their Renewed Motion to Compel); ECF No. 528 at 11–12 (cataloging
Movants' use of selective and misleading quotations in their original motion to compel).

*arguendo*, that the *Columbia Data Products* test provides the relevant analytical framework in this Court, the Oversight Board's privilege assertions easily meet all three prongs.

45.      In this case in particular, advisors are of vital importance to attorneys and their clients.  The Puerto Rico restructuring is not only the largest in U.S. history but unprecedented. The Oversight Board has limited staff and necessarily relies on its advisors as indispensable to render legal advice, and sharing information with them cannot waive attorney-client privilege. *See also* Jaresko Declaration ¶ 6 ("To conduct that analysis and debate [regarding the fiscal plan and budget development process], the Oversight Board necessarily relied on its advisors to provide information and analysis regarding the Commonwealth's and its covered territorial instrumentalities' financial positions.").

46.      The examples Movants themselves point to underscore the point.  Movants argue that that Privilege Entry 129 does not contain any indication that the third parties copied on it were highly useful to the effective provision of legal advice.  Second Objection ¶ 20.  But the entry in question describes a communication "pertaining to AAFAF proposal to purported ERS bondholders regarding employer contribution and potential litigation regarding the same."  June 12 Privilege Log, Doc. No. 129.  The Oversight Board could not properly consider the ramifications of litigation concerning employer contributions without analysis from its advisors, nor could counsel provide advice on the subject without also consulting with advisors concerning those same ramifications.  The same is true of Privilege Entry 272:  Movants claim the description "simply indicates that third parties were included on possibly privileged communications" rather than identifying the "role they played in the rendering of legal advice" (Second Objection ¶ 22); once again, Movants not only ignore what the privilege log actually says (viz. a communication "*discussing legal strategy* regarding proposed stipulation between purported ERS bondholders

21

requesting adequate protection and ERS") (emphasis added), but Movants identify no basis to conclude Magistrate Judge Dein committed clear error or acted contrary to law by finding the assertion of attorney-client privilege proper where the Oversight Board required input from advisors regarding the effect of such a stipulation. *See Cavallaro v. United States,* 284 F.3d 236, 247 (1st Cir. 2002) ("[T]he complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others").

47.     For the same reasons, third parties were necessary to translate or facilitate communication between the Oversight Board and its attorneys.  The sheer complexity and magnitude of Puerto Rico's restructuring requires the Oversight Board to rely on specialists with expertise to work with counsel to obtain legal advice.  Magistrate Judge Dein did not commit clear error or act contrary to law by finding "the Oversight Board has sufficiently exhibited that the third parties present on legal communications are necessary in order to translate information for a legal purpose."  June 20 Order at 10.

48.     As to the final prong of the *Columbia Data Products* test, Movants do not even attempt to argue the withheld communications with the Oversight Board's advisors were not made for the purpose of rendering legal advice.  Nor could they, as the above examples clearly demonstrate the purpose of those communications was to render legal advice.

49.     Even if Movants were correct that the Oversight Board's attorney-client privilege claims over advisor communications fail the *Columbia Data Products* test (which they are not), the privilege would still apply.  Contrary to Movants' contention that the *Kovel* doctrine is the "sole possible exception" to waiver of privilege over documents shared with third parties, an additional exception exists for advisors who are the functional equivalent of employees of the

entities they advise.[12]  As noted above, the Oversight Board is a small organization that could not possibly perform the task it has been assigned without the help of outside advisors.  Therefore, even though those advisors may not serve as translators, their agency relationship allows them to fit under an attorney-client privilege exception, and the privilege extends to communications involving such individuals.

### C.    The Crime-Fraud Exception Does Not Apply Here

50.    The crime-fraud exception to the attorney-client privilege prevents application of the privilege when a party "present[s] evidence: (1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; *and* (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005) (citation and internal alterations omitted) (emphasis in original).  Movants argue that the crime-fraud exception applies here because the privilege log shows Oversight Board "communicated with others (including AAFAF, a representative of ERS) about the plan to create the PayGo system, the resultant transfer of employer contributions away from ERS to the Commonwealth, and the diversion of the Bondholders' collateral."  First Objection at ¶ 40.

51.    Movants' invocation of the crime-fraud exception fails on its face because it relies entirely on their unsupported assertion the Oversight Board engaged in fraud.  Contrary to the requirement that a party invoking the crime-fraud exception "present evidence" *both* of the client's engagement in fraudulent activity *and* that the communications were intended to facilitate that activity, Movants provide evidence of neither.  Even assuming that the implementation of PayGo

---

[12] *See, e.g.*, *U.S. v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010) (citing *In re Bieter Co.*, 16 F.3d 929, 935–38 (8th Cir. 1994)); *see also Crowley v. L.L. Bean, Inc.,* 2001 WL 103541, at *3 (D. Me. Feb. 1, 2001).

effected a transfer of Movants' collateral (which it did not), Movants do not even attempt to show how such a transfer would qualify as fraudulent. *See P.C.M.E. Commercial, S.E. v. Pace Membership Warehouse, Inc.*, 952 F. Supp. 84, 92 (D.P.R. 1997) (explaining that fraud under Puerto Rico law requires a showing of "deceit"). Moreover, despite Movants' assertion that "the Board's privilege logs demonstrate" it communicated with others regarding the allegedly fraudulent activities (First Objection ¶ 40), they fail to point to a single privilege log entry in support of this statement.

52.     Movants have fallen woefully short of meeting the evidentiary burden necessary to invoke the crime-fraud exception to claims of attorney-client privilege, and it is simply irresponsible of them to have raised it in the first place. *See In re Grand Jury Proceedings*, 417 F.3d at 23 (stating that the necessary showing of fraud is "reasonably demanding: neither speculation nor evidence that shows only a distant likelihood of corruption is enough."); *see also In re Warner*, 87 B.R. 199, 202 (Bankr. M.D. Fla. 1988) (explaining that "mere allegations or suspicions of fraud are not enough" to meet the moving party's burden of demonstrating a prima facie case of fraud). Magistrate Judge Dein correctly rejected Movants' baseless argument.

### D.     The Oversight Board Did Not Waive Privileges for Materials Shared with the Commonwealth and/or AAFAF

53.     Movants additionally challenge the Oversight Board's claims of attorney-client privilege on the basis that the Oversight Board has waived any privilege in documents shared the Commonwealth and/or AAFAF. For the reasons discussed above, *see supra* ¶¶ 37–40, this argument has no merit and Magistrate Judge Dein was correct to reject it.

24

### III.  MAGISTRATE JUDGE DEIN CORRECTLY REJECTED MOVANTS' CHALLENGES TO THE OVERSIGHT BOARD'S CLAIMS OF WORK PRODUCT PRIVILEGE

54.      Movants challenge certain of the Oversight Board's claims of work product privilege on the grounds that (1) Movants' substantial need overcomes the Oversight Board's privilege claims, and (2) the Oversight Board waived any applicable privilege in documents shared with its advisors, the Commonwealth, and/or AAFAF.  These arguments merely repeat Movants' challenges to the Oversight Board's assertions of deliberative process privilege, and should be rejected for the reasons discussed above.  *See supra* ¶¶ 37–40.  Movants also challenge Magistrate Judge Dein's ruling that the documents for which the motion to compel was granted are protected by other privileges.  Movants fail to assert which privileges do not apply to those documents, and therefore this argument should be rejected as well.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should overrule the Objections.

Dated: June 25, 2019                        Respectfully submitted,
New York, NY

                                            */s/ Margaret A. Dale*

                                            Martin J. Bienenstock (*pro hac vice*)
                                            Brian S. Rosen (*pro hac vice*)
                                            Jeffrey W. Levitan (*pro hac vice*)
                                            Margaret A. Dale (*pro hac vice*)
                                            **PROSKAUER ROSE LLP**
                                            Eleven Times Square
                                            New York, NY 10036
                                            Tel:  (212) 969-3000
                                            Fax:  (212) 969-2900
                                            Email: mbienenstock@proskauer.com
                                            Email: brosen@proskauer.com
                                            Email: jlevitan@proskauer.com
                                            Email: mdale@proskauer.com


                                            Luis F. del Valle-Emmanuelli
                                            USDC-PR No. 209514
                                            P.O. Box 79897
                                            Carolina, Puerto Rico 00984-9897
                                            Tel. 787.977.1932
                                            Fax. 787.722.1932
                                            dvelawoffices@gmail.com

                                            OF COUNSEL FOR
                                            A&S LEGAL STUDIO, PSC
                                            434 Avenida Hostos
                                            San Juan, PR 00918
                                            Tel: (787) 751-6764/ 763-0565
                                            Fax: (787) 763-8260


                                            *Attorneys for the Financial Oversight and*
                                            *Management Board for Puerto Rico, as*
                                            *representative of the Employees Retirement*
                                            *System of the Government of the*
                                            *Commonwealth of Puerto Rico*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 25, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli