**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

```
------------------------------------------------------------ x
                                                              :
In re:                                                        :
                                                              :
THE FINANCIAL OVERSIGHT AND                                 : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                           : Title III
                                                              :
        as representative of                                : Case No. 17-BK-3283 (LTS)
                                                              :
THE COMMONWEALTH OF PUERTO RICO et al.,                     : (Jointly Administered)
                                                              :
        Debtors.¹                                             :
------------------------------------------------------------ x
                                                              :
In re:                                                        :
                                                              :
THE FINANCIAL OVERSIGHT AND                                 : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                           : Title III
                                                              :
        as representative of                                : Case No. 17-BK-4780 (LTS)
                                                              :
PUERTO RICO ELECTRIC POWER AUTHORITY                        : **This filing relates only to**
                                                            : **Case No. 17-BK-4780 (LTS)**
                                                              :
        Debtor.                                               :
------------------------------------------------------------ x
```

**OMNIBUS REPLY OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS² IN SUPPORT OF MOTION FOR ORDER, PURSUANT
TO BANKRUPTCY CODE SECTION 926(a), AUTHORIZING COMMITTEE
TO PURSUE CERTAIN AVOIDANCE ACTIONS ON BEHALF OF PUERTO
RICO ELECTRIC POWER AUTHORITY**

---

1   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

2   Tradewinds Energy Barceloneta, LLC, a member of the Committee and a creditor of PREPA, is a co-movant with the Committee on the Motion (as defined below) and joins in this Reply.

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of All Title III Debtors (other than COFINA) (the "Committee") and Committee member Tradewinds Energy Barceloneta, LLC ("Tradewinds" and, together with the Committee, the "Movants") hereby submit this omnibus reply (the "Reply") in response to the Objections[1] and in support of the *Urgent Motion of Official Committee of Unsecured Creditors for Order, Pursuant to Bankruptcy Code Section 926(a), Authorizing Committee to Pursue Certain Avoidance Actions on Behalf of Puerto Rico Electric Power Authority* [Docket No. 7484 in Case No. 17-3283 (LTS)] (the "Motion").[2] In support of this Reply, the Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1. Contrary to the hyperbole and speculation in the Objections, the relief sought in the Motion is not some type of Trojan Horse to challenge the Definitive RSA. Rather, the Movants seek to ensure that valuable causes of action are not unintentionally forfeited as a result of any challenge to the Oversight Board's authority to commence adversary proceedings post-*Aurelius/UTIER*.[3] Nor are the Movants attempting to seize control of the Lien Challenge. The Committee is prepared to enter into a stipulation with the Oversight Board for the joint

---

[1] The "Objections" are the objections, joinders, and/or reservation of rights filed by (a) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") [Case No. 17-3283, Docket No. 7536], (b) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") [Case No. 17-3283, Docket No. 7538], (c) National Public Finance Guarantee Corporation ("National") [Case No. 17-3283, Docket No. 7543], (d) Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured") [Case No. 17-3283, Docket No. 7547], (e) the Ad Hoc Group of PREPA Bondholders (the "PREPA Bondholder Group") [Case No. 17-3283, Docket No. 7551], and (f) Syncora Guarantee, Inc. ("Syncora" and, together with the Oversight Board, AAFAF, National, Assured, and the PREPA Bondholder Group, the "Objectors") [Case No. 17-3283, Docket No. 7552]. In addition to the Objections, PREPA's fuel line lenders (the "Fuel Line Lenders") filed a statement [Case No. 17-3283, Docket No. 7537] joining in the Motion to the extent the Committee requests that it be appointed to serve as trustee under section 926(a) of the Bankruptcy Code to pursue estate causes of action against the Bond Trustee and the bondholders.

[2] Capitalized terms not defined herein shall have the meanings ascribed thereto in the Motion.

[3] *Aurelius Inv., LLC v. Puerto Rico*, 915 F.3d 838 (1st Cir. 2019), *reh'g denied*, Order of Court, No. 18-1671 (1st Cir. Mar. 7, 2019).

prosecution of the Lien Challenge—just as it has done with respect to Commonwealth, HTA, ERS, and some PREPA causes of action (other than the Lien Challenge). These stipulations contain a number of mechanisms to prevent the Committee from taking various actions without Court approval, and the PREPA stipulation would be no different. The Committee is also prepared to stay the Lien Challenge litigation until the Court has decided the 9019 Motion, to avoid any unintentional interference with that motion. Moreover, the proposed section 926(a) order would expressly provide that the Court retains the ability to modify such order, including in the event the Court approves the 9019 Motion; thus, it would be impossible for the Committee (nor is it its intent) to use its appointment as a section 926(a) trustee to cause the Definitive RSA to fail (although, for the avoidance of doubt, the Committee confirms that it is opposed to the Definitive RSA).

2. Nor does the Oversight Board dispute that the Lien Challenges are valuable causes of action that should be (and will be) pursued (subject to the terms of any tolling agreements). In fact, the Oversight Board previously asserted that the security interest of the PREPA bondholders and the related monoline insurers has "no value."[4] The Oversight Board also previously recognized, in pleadings filed with this Court, that the *Aurelius/UTIER* risk presents a very real risk that needs to be mitigated and that this risk effectively constitutes, for purposes of section 926(a), a form of "refusal" to pursue avoidance actions. Indeed, the *Aurelius/UTIER* risk forms the basis of the three prior stipulations with the Committee as well as the Oversight Board's stipulation with AAFAF to jointly pursue the Lien Challenge.

---

[4] *Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Ad Hoc Group of PREPA Bondholders, National Public Finance Guaranty Municipal Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief From Automatic Stay,* at 18 [Case No. 17-4780, Docket No. 149].

2

3. The Oversight Board's gambit to enter into a stipulation with AAFAF to jointly pursue the Lien Challenge is no solution to the *Aurelius/UTIER* risk, and, instead, only compounds the problem. For one, no PREPA creditor has filed a motion under section 926(a) seeking the appointment of AAFAF as a trustee. In this regard, we also note that (a) PREPA's largest single creditor[5] **supports** the appointment of the Committee as the section 926(a) trustee and (b) the only PREPA creditors that support AAFAF's appointment are targets of the Lien Challenge. In any event, as detailed below, AAFAF's enabling act does not grant it the requisite authority to act as a section 926(a) trustee in these Title III cases or assert claims on behalf of PREPA. But even if the Court were to reach a different conclusion, the Movants respectfully submit that there is no reason to take any chances here. Why should PREPA and its creditors assume any risk that AAFAF could later be found to lack the requisite statutory authority to act as co-trustee/co-plaintiff, given that the Committee is ready and willing to be so appointed and subject itself to whatever limitations the Court may ultimately direct in connection with any order granting the 9019 Motion?

4. Moreover, the Oversight Board's proposal to have AAFAF assert causes of action on behalf of a Title III Debtor turns PROMESA on its head. Congress made the conscious decision that, in contrast to a debtor in a chapter 9 case, the Commonwealth government should be excluded from the conduct of the Title III case.[6] In fact, Title III of PROMESA contains no reference to the Commonwealth government having any role in the conduct of such Title III case. That was not an accident. And prior and recent events in Puerto Rico only illustrate the

---

[5] *See* Statement of Fuel Line Lenders.

[6] *See, e.g.*, PROMESA § 315(a) ("For the purposes of this title, the Oversight Board may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including—(1) filing a petition under section 304 of this Act; (2) submitting or modifying a plan of adjustment under sections 312 and 313; or (3) otherwise generally submitting filings in relation to the case with the court.") and (b) ("The Oversight Board in a case under this title is the representative of the debtor.").

3

potential risks associated with allowing politicians, rather than independent fiduciaries, to have a role in the conduct of these Title III cases. In the end, the stipulation with AAFAF appears to be a cynical attempt by the Oversight Board to defeat the Committee's Motion at all costs, even if that means subverting the express statutory framework of Title III.

5. Furthermore, and contrary to the suggestion of the Objectors, the Definitive RSA imposes no impediment to appointing the Committee to pursue the Lien Challenge. Section 3(i) of the Definitive RSA merely provides that "**[t]he 9019 Order shall provide** that no person or entity (including a person or entity acting on behalf of a Government Party) other than the Government Parties shall have standing or otherwise be permitted to bring a Lien Challenge."[7] At this time, no 9019 Order has been entered, and, therefore, appointing the Committee to pursue the Lien Challenge would not give rise to a breach of the Definitive RSA. Moreover, as noted, the Court remains free to modify the section 926(a) order, if that becomes necessary, in connection with approval of the 9019 Motion.

6. Finally, certain PREPA bondholders and monoline insurers, namely the PREPA Bondholder Group, Assured, National, and Syncora, have also objected to the Committee's efforts to protect valuable PREPA causes of action against the *Aurelius/UTIER* risk. This should come as no surprise, given that they are among the targets of a Lien Challenge. However, it is telling that none of them are waiving the *Aurelius/UTIER* argument they could assert in the context of a subsequent challenge the Oversight Board's or AAFAF's authority to bring the Lien Challenge. Accordingly, any "advice" that they may have to offer as to how best to protect against the *Aurelius/UTIER* risk is, in the end, self-serving and should be viewed with great skepticism by the Court.

---

[7] 9019 Mot., Ex. A, Sched. 1, Definitive RSA § 3(i) (emphasis added).

**REPLY**

A.      **Stipulation with AAFAF Is No Solution to *Aurelius/UTIER* Problem**

7.      The Oversight Board's solution to the *Aurelius/UTIER* risk, *i.e.*, a stipulation to appoint AAFAF to jointly pursue the Lien Challenge, offers no protection against the *Aurelius/UTIER* risk. For one, no PREPA creditor has filed a motion under section 926(a) seeking the appointment of AAFAF as a trustee. Moreover, AAFAF does not have the requisite statutory authority to act as a section 926(a) trustee or assert causes of action on behalf of PREPA in its Title III case. It is a well-recognized principle of Puerto Rico law that

> neither need, nor use, nor convenience can substitute the statute as the source of power of an administrative agency. This is why any doubts as to the existence of [an agency's] power should be decided against its use. When the Legislative Assembly delegates a specific power to an agency, the agency, in the exercise of said power, may not exceed the limits expressly or implicitly established in the statute or clearly implied thereby. The Court also may not expand the scope of action that the legislature wished to establish. On the contrary, if the actions of the administrative agency exceed the powers delegated by the Legislature, courts must declare it *ultra vires*, and, therefore, null.

*Yiyi Motors Inc. v. E.L.A.*, 177 D.P.R. 230, 247-248 (2009) (citations and quotation marks omitted) (Puerto Rico Department of Treasury exceeded limits of authority conferred upon it when imposing tax on car dealer).[8] Here, AAFAF's enabling act (the "Enabling Act")[9] does not give AAFAF **any** specific powers in respect of these Title III cases, and, in fact, there is not even a mention of Title III in the Enabling Act. Instead, the Enabling Act is principally concerned with authorizing AAFAF to oversee compliance with the certified budget and fiscal plan approved pursuant to PROMESA and ensuring that AAFAF is the principal government interface with the Oversight Board. And the few instances where the Enabling Act refers to the

---

[8] An English translation of this case will be provided separately.

[9] 2017 P.R. Laws Act.2, available at www.aafaf.pr.gov/assets/a-002-2017

5

restructuring of Puerto Rico debt, AAFAF's grant of authority either (a) refers to overseeing the process generally[10] or (b) is very specific and limited in nature, such as entry into consensual agreements with creditors.[11] Nowhere does the Enabling Act authorize AAFAF to act as trustee for a Puerto Rico instrumentality or sue on behalf of any instrumentality or assert avoidance actions in the Title III cases. In fact, the only instance in the Enabling Act involving the "power to sue" is AAFAF power "[t]o sue and be sued **under its own name**, to file complaints and defend itself in all courts of law and administrative bodies . . ."[12]

8. It also does not matter whether AAFAF were granted derivative standing with the consent of the Oversight Board (as opposed to standing under section 926(a)).[13] For one, there is nothing in the Enabling Act that would authorize AAFAF to accept such a role either. But in any event, derivative standing remains subject to the *Aurelius/UTIER* risk, as the Oversight Board's consent to derivative standing could also be subject to challenge (just as the commencement of the adversary proceeding itself).

9. Even if the Court were to disagree with the Movants that AAFAF does not have the statutory authority to assume the role as co-trustee/co-plaintiff, the Movants respectfully submit that, given the need to insure against the *Aurelius/UTIER* risk, there is no reason to take any chances here. PREPA and its creditors need to minimize the *Aurelius/UTIER* risk, not to compound it with another structure that could be subject to challenge.

---

[10] *See* Enabling Act § 5(c) ("The Authority shall oversee all matters related to the restructuring, renegotiation or adjustment of any existing or future obligation, and the liability management transactions for any existing or future obligation of the Government of Puerto Rico.")

[11] *See* Enabling Act § 8(q) (authorizing AAFAF to "negotiate, restructure, and/or enter into Creditors' Agreements in connection with any debt of the Government, the public debt, debt instruments, any other present or future debt and/or agreement with the creditors of any of the components thereof.")

[12] Enabling Act § 5(d)v (emphasis added).

[13] The Oversight Board's objection is not clear as to whether, in seeking the appointment of AAFAF as co-plaintiff/co-trustee, it is relying solely on section 926(a) or also on derivative standing.

10. For that reason, the Oversight Board's extensive discussion as to why AAFAF's interests are more closely aligned with its own when it comes to the Lien Challenge is misplaced. Indeed, whether the interests of a section 926(a) trustee are aligned with the interests of the debtor representative is simply irrelevant, if not entirely antithetical, to section 926(a). Worse, appointing AAFAF to assert causes of action on behalf of a Title III Debtor turns PROMESA on its head. Congress made the conscious decision that, in contrast to a debtor in a chapter 9 case, the Commonwealth government should be excluded from the conduct of the Title III case.[14]

11. In the end, because the stipulation with AAFAF does not mitigate the *Aurelius/UTIER* risk, it remains true (as detailed in the Motion) that the Oversight Board's pursuit of the Lien Challenge is tantamount to the Oversight Board refusing to bring such claims, thereby warranting the appointment of the Committee as trustee under section 926(a) of the Bankruptcy Code.

**B.     Appointing Committee as Section 926(a) Trustee to Pursue Lien Challenge Does Not Give Rise to Breach of Definitive RSA**

12. The Objectors also suggest that appointing the Committee to pursue the Lien Challenge gives rise to a breach of the Definitive RSA.[15] However, that is simply not the case. In fact, pursuant to Section 3(i) of the Definitive RSA, the limitation that only Government Parties have standing to bring a Lien Challenge would have to be contained **in the order approving the 9019 Motion**—it is not a requirement of the Definitive RSA itself.[16] At this time, no such order has been entered, and, accordingly, it cannot be a breach of the RSA to

---

[14] *See, e.g.*, PROMESA § 315(a) ("For the purposes of this title, the Oversight Board may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including—(1) filing a petition under section 304 of this Act; (2) submitting or modifying a plan of adjustment under sections 312 and 313; or (3) otherwise generally submitting filings in relation to the case with the court.") and (b) ("The Oversight Board in a case under this title is the representative of the debtor.").

[15] In this regard, the Objectors, in misleading fashion, only provide a truncated quotes of Section 3(i) of the Definitive RSA. *See* Oversight Board Obj. ¶ 12; Assured Obj. ¶¶ 2, 17.

[16] *See* Definitive RSA § 3(i).

appoint the Committee to pursue the Lien Challenge (whether as co-plaintiff together with the Oversight Board, if the Oversight Board so desires, or as sole plaintiff if the Oversight Board declines to execute the now standard form stipulation). Moreover, the Definitive RSA expressly permits, subject to certain conditions, the filing of the Lien Challenge.[17]

13. The Oversight Board also raises the concern that appointing the Committee as a section 926(a) trustee would effectively preclude entry of an order approving the 9019 Motion. Again, this is not the case. The Committee proposes that the section 926(a) order specifically provide that the Court remains free to later modify the Proposed Order, including in the event that the Court were to grant the 9019 Motion. Moreover, as noted, the Committee is prepared to enter into a stipulation with the Oversight Board for the joint prosecution of the Lien Challenge. And if the Committee were appointed as sole plaintiff to pursue the Lien Challenge, the Court would remain free to substitute the Committee with a different section 926(a) trustee or the Oversight Board because by the time of a hearing on the 9019 Motion (*i.e.*, September 11, 2019) there will be clarity as to the Oversight Board re-appointment process. Today, it is certain that the re-appointment process will not have been completed by July 1, 2019, which is the date that certain statutes of limitation in the PREPA case expire. To the extent the Oversight Board is concerned that the expiration of the statutes of limitations would potentially preclude such substitution, the solution is, again, quite simple: the Oversight Board should agree to be co-plaintiff together with the Committee.

## C. "Refusal" Under Section 926(a) of Bankruptcy Code Does Not Require Consent of Oversight Board

14. Finally, the Oversight Board asserts that the *Aurelius/UTIER* risk does not constitute the requisite refusal for purposes of section 926(a), but that the Oversight Board's

---

[17] *See* Definitive RSA § 3(e) (permitting commencement of a Lien Challenge if, for example, "any applicable statute of limitations is expiring within the next seven (7) days").

8

consent is required to give rise to such a refusal.[18] The Court should reject this argument. For one, the Oversight Board has repeatedly taken the opposite position, when it sought approval of the Commonwealth Stipulation and the HTA/ERS Stipulation, namely that the *Aurelius/UTIER* risk constitutes the requisite refusal.[19] In fact, the Oversight Board took this position in response to creditors who objected to these stipulations on the basis that there was no "refusal" because of the Oversight Board's consented to sharing of litigation responsibilities with the Committee.[20] The Committee understands that the Court adopted the Oversight Board's argument in approving the Commonwealth Stipulation and the HTA/ERS Stipulation (but obviously the Court is better positioned than the Committee to make that determination). For that reason, the Oversight Board should be judicially estopped from taking the contrary position now.[21]

---

[18] *See* Oversight Board Obj. at 6, n.5 ("[T]he Oversight Board's consent to appoint the UCC as co-trustee (and therefore its effective refusal to bring the avoidance actions alone) created the requisite refusal to support the consensual appointment of the UCC as trustee under section 926(a).").

[19] *See, e.g.*, *Urgent Joint Motion for Entry of Order Approving Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Certain Causes of Action of Puerto Rico Highways and Transportation Authority and Employees Retirement System of the Government of the Commonwealth of Puerto Rico*, ¶ 9 [Case No. 17-3283, Docket No. 6867] ("the Oversight Board **'effectively refused'** to pursue the causes of action **in light of the statutes of limitation and the potential effect of the *Aurelius* decision**") (emphases added); *see also Omnibus Reply of Official Committee of Unsecured Creditors in Support of Motion for Approval of Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution*, ¶ 17 [Case No. 17-3283, Docket No. 6381] ("**Aurelius' challenge to the Oversight Board's authority** serves as the basis for making the findings, for purposes of section 926 and granting derivative standing, that **the Oversight Board "refused" to assert a claim**") (emphases added), joined by Financial Oversight and Management Board for Puerto Rico, Acting Through its Special Claims Committee [Case No. 17-3283, Docket No. 6382].

[20] *See, e.g.*, *Objection and Reservation of Rights of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, National Public Finance Guarantee Corporation, and Ambac Assurance Corporation to the Urgent Motion for Entry of Order Approving Stipulation and Agreed Order*, ¶¶ 12-16 [Case No. 17-3283, Docket No. 6913].

[21] In the First Circuit, "[t]he equitable doctrine of judicial estoppel is ordinarily applied to 'prevent[ ] a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding.'" *Guay v. Burack*, 677 F.3d 10, 16 (1st Cir. 2012) (quoting *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004)). "There are two generally agreed-upon conditions for the application of judicial estoppel. 'First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive.' 'Second, the responsible party must have succeeded in persuading a court to accept its prior position.'" *Id.* (quoting *Alternative Sys. Concepts, Inc.* 374 F.3d 23 at 33, and *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

15. Moreover, section 926(a) does not require the Oversight Board's consent—in fact, it requires that the debtor **refuse** to pursue avoidance actions. Nor did the Court hold, in approving the prior stipulations, that the Oversight Board's consent was required. Of course, in the context of the Commonwealth Stipulation and the HTA/ERS Stipulation, the Oversight Board did, in fact, consent to the appointment of the Committee as co-plaintiff/co-trustee to pursue Debtor causes of action. However, the requisite refusal was (as argued by the Oversight Board) based on the *Aurelius/UTIER* risk.

16. Given the "unique circumstances" presented by the First Circuit's *Aurelius/UTIER* decision, the Court concluded that the Oversight Board's decision "to share its responsibility to prosecute certain claims" meant that it had "effectively refused to pursue the causes of action."[22] The Court did not suggest that the Oversight Board's consent is required in order for there to be a refusal for purposes of section 926(a). The Committee understands that the Court only sought to explain that, in light of the *Aurelius/UTIER* risk, the requisite refusal was present even though the Oversight Board consented to share its litigation responsibility (which is why the Court described the refusal as one "in effect"). Here, the Oversight Board is refusing to appoint the Committee as co-plaintiff/co-trustee to insure against the *Aurelius/UTIER* risk (in favor of pursuing risky structure with AAFAF), thus making a much stronger case for finding the requisite refusal for purposes of section 926(a).[23]

---

[22] Apr. 24, 2019 Hr'g Tr. at 236:21-237:2.

[23] Finally, the Committee disagrees with Assured's suggestion that the Motion should have been filed on regular notice. The Committee acted diligently (*i.e.*, before the date by which a motion on regular notice had to be filed) in seeking the consent of the Oversight Board to enter into a stipulation for the joint prosecution of avoidance actions, consistent with the Commonwealth Stipulation and the HTA/ERS Stipulation. Indeed, counsel to the Committee provided counsel to the Oversight Board with a draft of such a stipulation on May 30, 2019. It was not until June 6, 2019, that the Oversight Board provided its mark-up of the stipulation, after which the Committee first attempted to consensually resolve the issues. When it became clear that no consensual resolution could be reached, the Movants filed the Motion on June 17, 2019. At that time, it was impossible to hear the Motion on regular notice prior to the expiration of the statutes of limitations in the PREPA case on July 1, 2019.

10

WHEREFORE, the Movants respectfully request that the Court to enter the order attached to the Motion as Exhibit A, and grant the Movants such other relief as is just and proper.

Dated: June 25, 2019

By: */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: */s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Alberto J. E. Añeses Negrón, Esq. (USDC - PR 302710)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
aaneses@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

11

/s/ John Arrastia
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian (*Pro Hac Vice*)
GENOVESE JOBLOVE & BATTISTA, P.A.
100 SE 2nd Street, Suite 4400
Miami, FL 33131
Telephone: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Counsel to Tradewinds Energy Barceloneta, LLC*


/s/ José J. Sánchez-Vélez
José J. Sánchez-Vélez (USDC PR - 214606)
BERMÚDEZ DÍAZ & SÁNCHEZ LLP
Edificio Ochoa Suite 200
500 Calle de la Tanca
San Juan, PR 00901
Tel. 787-523-2670
Fax. 787-523-2664
jsanchez@bdslawpr.com

*Local Counsel to Tradewinds Energy Barceloneta, LLC*