**Objection Deadline: To be determined**
**Hearing Date: To be determined**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |

## NOTICE OF HEARING ON MOTION TO STAY CONTESTED MATTERS PENDING CONFIRMATION OF COMMONWEALTH PLAN OF ADJUSTMENT

**PLEASE TAKE NOTICE** that a hearing on the *Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* (the "Motion"), filed by The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth") and its related Title III debtors (the "Debtors"), pursuant to section 315(b) of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, acting through its Special Claims Committee, **will be held on a date and time to be determined**, at the Court's convenience (the "Hearing"), but please note that the Movants have requested that the Hearing be held on July 24, 2019 at the United States District Court for the District of Puerto Rico, Clemente Nazario Courthouse, 150 Carlos Chardón Street, San Juan, PR 00918-1767.

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court in accordance with Rule 5 of the Local Rules for the District of Puerto Rico, to the extent applicable, and shall be served in accordance with the Ninth Amended Case Management Procedures [Docket No. 7115-1], so as to be so filed and received **no later than a date and time to be determined** (the "Objection Deadline"), and served on (i) counsel for the Oversight Board, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036-8299 (Attn: Martin J. Bienenstock, Esq. Paul V. Possinger, Esq. Ehud Barak, Esq. and Maja Zerjal, Esq.) and O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813 (Attn: Hermann D. Bauer, Esq.); (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority, Roberto Sánchez Vilella (Minillas) Government Center, De Diego Ave. Stop 22, San Juan, Puerto Rico 00907 (Attn: Gerardo J. Portela Franco and Mohammad Yassin, Esq.); (iii) counsel for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036 (Attn: John J. Rapisardi, Esq., Suzzanne Uhland, Esq., Peter Friedman, Esq., Nancy A. Mitchell, Esq. and Maria J. DoConza, Esq.) and Marini Pietrantoni Muñiz LLC, MCS Plaza, Suite 500, 255 Ponce de León Ave., San Juan, PR 00917 (Attn: Luis C. Marini-Biaggi, Esq., Carolina Velaz-Rivero, Esq. and María T. Alvarez-Santos, Esq.); (iv) counsel for the Creditors' Committee, Paul Hastings LLP, 200 Park Avenue, New York NY 10166 (Attn: Luc A. Despins, Esq., James Bliss, Esq., James Worthington, Esq. and G. Alexander Bongartz, Esq.) and Casillas Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Ste. 1601, San Juan PR 00901-2419 (Attn: Juan J. Casillas Ayala, Esq., Diana M. Batlle-Barasorda, Esq., Alberto J. E. Atheñeses Negrón, Esq. and Ericka C. Montull Novoa,

Esq.); (v) counsel for the Retiree Committee, Jenner & Block LLP, 919 Third Avenue, New York, NY 10022 (Attn: Robert Gordon, Esq., Richard Levin, Esq. and Catherine Steege, Esq.) and Bennazar, García & Milián, C.S.P., Edificion Union Plaza PH-A piso 18, Avenida Ponce de León Ave., San Juan, PR 00918 (Attn: A.J. Benazar-Zequeira, Esq.); (vi) Office of the United States Trustee for Region 21, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901-1922; and (vii) Counsel to the Oversight Board, acting by and through the Special Claims Committee, Brown Rudnick LLP, One Financial Center, Boston, MA 02111 (Attn: Sunni P. Beville, Esq. and Jeffrey L. Jonas, Esq.) and Estrella LLC, P. O. Box 9023596 San Juan, Puerto Rico 00902–3596 (Attn: Alberto Estrella, Esq. and Kenneth C. Suria, Esq.).

**PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the District Court may enter an order granting the relief sought without a hearing pursuant to the Ninth Amended Case Management Procedures.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

Dated: June 25, 2019
San Juan, Puerto Rico

*/s/ Edward S. Weisfelner, Esq.*
BROWN RUDNICK LLP
Edward S. Weisfelner, Esq.
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com

Sunni P. Beville, Esq. (*pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

and

*/s/ Alberto Estrella, Esq.*
*/s/ Kenneth C. Suria, Esq.*

ESTRELLA, LLC
Alberto Estrella, Esq. (USDC-PR 209804)
Kenneth C. Suria, Esq. (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

63439309 v1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |

**MOTION TO STAY CONTESTED MATTERS
PENDING CONFIRMATION OF COMMONWEALTH PLAN OF ADJUSTMENT**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth") and its related Title III debtors (the "Debtors"), pursuant to section 315(b) of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, acting through its Special Claims Committee, hereby files this motion (the "Motion") for an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Stay Order"), staying the GO Objections (defined below) in light of the proposed compromise and settlement of the issues embodied in the Plan Support Agreement and Proposed Plan to be filed forthwith.

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

**PRELIMINARY STATEMENT**

1. After extensive negotiations, the Oversight Board, as representative of the Commonwealth, reached an agreement with certain holders of general obligation bonds issued by the Commonwealth ("GO Bonds") and bonds issued by the Puerto Rico Public Buildings Authority ("PBA Bonds") on a framework for a plan of adjustment to resolve $35 billion worth of debt and guarantee claims against the Commonwealth. A critical component of this framework is the compromise and settlement of the disputes involving, among other things, objections to claims asserted on the basis of purported GO Bond obligations (the "Proposed Settlement"). Accordingly, on May 31, 2019, the Oversight Board, as representative of the Commonwealth, entered into a definitive Plan Support Agreement (the "PSA")[2] with certain holders of GO Bonds, who hold a material percentage of the outstanding principal amount of GO Bonds. The term sheet attached to the PSA provides that the compromise and settlement of the disputes will include, among other things, providing holders of GO Bonds the option of litigating the GO Objections (defined below) to, if successful, pari recovery with holders of pre-2012 GO Bonds, or otherwise settling for a reduced but nevertheless substantial recovery. Holders of PBA Bonds may receive similarly structured treatment due to the interlocking nature of the concerns as to the validity of the PBA and GO Bonds.

2. To build on the momentum of this significant development, the Oversight Board intends to file a joint plan of adjustment for the Commonwealth and PBA[3] that incorporates the restructuring framework contained in the PSA to expeditiously move the Commonwealth towards exiting its Title III case. Following the filing of a plan of adjustment, the Oversight

---

[2] A copy of the PSA will be submitted as Exhibit 1 to the Declaration of Brian S. Rosen in support of this Motion, which will be filed separately.

[3] The PSA contemplates that, as an alternative, a modification of the PBA Bonds under Title VI of PROMESA may be commenced in lieu of a case pursuant to Title III of PROMESA.

2

Board will continue discussions with creditor parties in an attempt to gather additional support. Those discussions would be frustrated if one of the fundamental pieces of groundwork for the proposed plan – the option to settle out of the GO Objections – were disrupted by a shifting litigation landscape. Thus, a stay of the GO Objections pending confirmation of a plan of adjustment is essential. The PSA moves the Commonwealth forward with key stakeholders on a consensual path towards achieving the ultimate goals of transformation, resilience, and stability for the Commonwealth.

3. A stay pending confirmation of a plan of adjustment will be invaluable for multiple reasons. **First**, it allows key stakeholders to continue discussions and provides an opportunity to gather further support for the restructuring framework in the PSA, thereby serving the laudable goal of encouraging settlement. Conversely, if these contested matters were allowed to proceed, various parties may need to take positions directly at odds with fundamental aspects of the Proposed Settlement, and they could once again become adversaries. **Second**, a stay unquestionably conserves the resources of the parties and the Court. Several motions are currently pending before the Court, with more briefing forthcoming and potential disagreements as to the applicable litigation procedures. All such motion practice, and all the judicial labor associated with such matters, would be entirely unnecessary and wasteful if the Court confirms the plan and approves the Proposed Settlement. Moreover, as additional bondholders elect to opt into the Proposed Settlement, the number of remaining parties desirous of participating in the GO Objections and related litigation may be dramatically reduced. **Third**, a stay will give due and proper consideration to the interests of non-parties because it will reduce the litigation costs incurred by the Oversight Board, and thereby preserve the Commonwealth's limited resources. **Fourth**, a stay will not cause any prejudice. The Oversight Board intends to proceed

3

expeditiously in seeking the Court's confirmation of the plan. Should the resolution embodied in the plan fail to come to fruition, the non-moving parties will be in the same position as when the stay was entered.

4. Accordingly, the Oversight Board respectfully requests the Court stay these contested matters pending confirmation of a joint plan of adjustment for the Commonwealth. For all the reasons set forth herein, good cause exists for the relief requested by the Oversight Board in this Motion.

## BACKGROUND

### I. The GO Objections

5. On January 14, 2019, the Oversight Board, acting through its Special Claims Committee, joined the Official Committee of Unsecured Creditors of All Title III Debtors other than COFINA (the "UCC;" together with the Special Claims Committee, the "Objectors") in filing the *Omnibus Objection of (I) Financial Oversight and Management Board, Acting through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* [Docket No. 4784] (the "2012-2014 GO Bond Objection"). In the 2012-2014 GO Bond Objection, the Oversight Board and the UCC contend, among other things, that GO Bonds issued in 2012 and 2014 (the "2012-2014 GO Bonds" as identified therein) violated Puerto Rico's constitutional debt limit, and that claims by purported holders of the GO Bonds for principal and interest should be disallowed.

6. On February 15, 2019, the Court entered an order (the "GO Procedures Order") establishing procedures with respect to the litigation of the 2012-2014 GO Bond Objection.[4] Pursuant to the procedures annexed as Exhibit 2 to the GO Procedures Order (the "Objection Procedures"),[5] persons and entities, including *ad hoc* groups of holders of Challenged GO Bond Claims, intending to participate in the litigation of the Objection were required to file and serve Notices of Participation by the Participation Deadline, which was April 16, 2019.

7. More than 1,670 Participants submitted Notices of Participation, the vast majority of Participants acting *pro se*.[6] The Objection Procedures require the Objectors and respondents to meet and confer to develop Initial Proposals for litigation procedures by May 7, 2019 and a Recommendation to file with the Court by May 28, 2019. These deadlines were extended while the Objectors conferred with certain parties concerning the proposed revised Objection Procedures.[7] Due to the sheer number of Participants, however, this "meet and confer" process has been impossible to carry out. As a practical matter, there is no way for either side to meaningfully meet and confer in a timely manner with more than 1,600 persons. Further, certain of the Notices of Participation contain inadequate or incomplete information or appear incorrect

---

[4] *See Order, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, Establishing Initial Procedures With Respect to Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Granting Related Relief* entered on February 15, 2019 at [Docket No. 5143].

[5] See *Initial Procedures for Resolving Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds*, annexed as Exhibit 2 to the GO Procedures Order. Capitalized terms not defined herein shall have the meanings ascribed thereto in the Initial Procedures.

[6] *See Informative Motion of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Order Establishing Initial Procedures With Respect to Omnibus Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds, Regarding List of Parties Filing Notices of Participation* filed on April 22, 2019 at [Docket No. 6464].

[7] *See Orders* extending deadlines. [Docket Nos. 6828, 6988]

5

(*e.g.*, holders of Challenged GO Bonds indicating that they wish to participate as Joint Objectors). Accordingly, the Objectors suggested to the Court that modification of the Objection Procedures and extension of the deadlines is appropriate.[8]

8. Moreover, on May 21, 2019, the Committee filed its *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds*, [Docket No. 7057] (the "2011 GO Objection" and together with the 2012-2014 GO Bond Objection, the "GO Objections"). The 2011 GO Objection incorporated by reference the 2012-2014 GO Bond Objection on the grounds that both GO Objections are premised upon substantially similar facts and law with respect to the Commonwealth's issuances of the GO Bonds subject to the GO Objections.

9. Similarly, the Objectors requested that the GO Objections be litigated together and that there be the same Objection Procedures for all GO Objections, and requested approval of revised objection procedures to that effect. *See* Amended Procedures Motion.

## II. The Plan Support Agreement

10. On the record at a hearing before the Court on June 12, the Oversight Board announced that it would file a plan of adjustment within 30 days. On June 16, 2019, the Oversight Board further announced that it had reached agreement with certain creditors of the Commonwealth on the framework for a plan of adjustment as set forth in the PSA.

---

[8] *See Amended Motion of (i) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (ii) Official Committee of Unsecured Creditors, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, to (A) Extend Deadlines and (B) Establish Revised Procedures with Respect to Omnibus Objections to Claims of Holders of Certain Commonwealth General Obligation Bonds Issued in 2011, 2012 and 2014, and for Related Relief* filed on May 29, 2019 at Docket No. 7154 (the "Amended Procedures Motion").

11. The PSA requires the Oversight Board to seek a stay of the litigation seeking to recharacterize PBA lease payments as true debt, the GO Objections, the actions to claw back principal and interest payments made on "Challenged Bonds," and lien avoidance litigation, all as described in more particularity in the PSA (the "Bond Litigation"). *See PSA*, § 4.1(e).[9]

12. The PSA indicates that holders of GO Bonds subject to the GO Objections will have the option of (a) settling at a given percentage of the bonds' par value, or (b) litigating the Bond Litigation, and if successful in defending against the GO Objections and other Bond Litigation (*i.e.*, obtaining a ruling that the bonds are indeed valid), receiving a maximum recovery equivalent to that provided to holders of bonds not subject to the GO Objections, and if unsuccessful (*i.e.*, the bonds are declared invalid), receiving no recovery.

13. The PSA does not provide details as to how the Bond Litigation would proceed with respect to non-settling parties. To ensure that holders of claims may make informed decisions when determining whether to vote to accept or reject any Proposed Plan, and whether to vote to accept or reject any Proposed Settlement in the Proposed Plan, the Oversight Board is actively strategizing and drafting a disclosure statement, and will meet and confer with the Committee and certain large groups of bondholders to develop proposed litigation procedures for the GO Objections and related Bond Litigation on a post-effective date basis. The Oversight Board anticipates that these procedures will be included in the disclosure statement that solicits votes from creditors on a proposed plan.

---

[9] The Oversight Board is filing a separate motion to stay the PBA lease recharacterization litigation and lien avoidance litigation. The Court has already entered an Order staying the action to claw back principal and interest payments on "Challenged Bonds" until September 1, 2019. *See Order Regarding Omnibus Motion by Official Committee of Unsecured Creditors, Financial Oversight and Management Board, and Its Special Claims Committee to Extend Time for Service of Summonses and Complaints and to Stay Certain Adversary Proceedings Relating to Certain Challenged Bonds* entered on June 13, 2019 at Docket No. 7426.

7

**LEGAL STANDARD**

14. A court's "inherent authority" to "control the disposition of its cases" includes the power to stay proceedings before it. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Bankruptcy Code also recognizes a court's authority to stay adversary proceedings. Bankruptcy Code section 105(a), in relevant part, states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy courts have noted that section 105 recognizes their "inherent authority" to stay actions. *In re S. Side House, LLC*, 470 B.R. 659, 684 (Bankr. E.D.N.Y. 2012). PROMESA expressly incorporates Bankruptcy Code section 105(a). *See* PROMESA § 301(a).

15. Courts in this circuit must "balance the equities" and consider the "potential prejudice that [a stay] may entail to each party." *Walsh Constr. Co. P.R. v. United Sur. & Indem. Co.*, 2015 WL 13548470, at *4 (D.P.R. Sept. 28, 2015); *see also Landis*, 299 U.S. at 255 (court considering motion to stay shall "weigh competing interests and maintain an even balance"). Among the factors a court should consider are the duration of the stay requested, the conservation of judicial resources, the prejudice faced by the parties if a stay is, or is not, entered, *see, e.g., Ramos-Martir v. Astra Merck, Inc.*, CIV. 05-2038(PG), 2005 WL 3088372, at *1 (D.P.R. Nov. 17, 2005); *In re ConAgra Foods, Inc.*, 2014 WL 12580052, at *4-9 (C.D. Cal. Dec. 29, 2014), *Total Petroleum Puerto Rico Corp. v. T.C. Oil, Corp.*, CV 09-1105 (JP), 2010 WL 11545626, at *1 (D.P.R. May 7, 2010), as well as the public interest, *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977). A court "deciding whether to grant a stay . . . is given considerable discretion in weighing the competing interests." *Rivera v. Puerto Rico Tel. Co.*, CIV. 09-1723 (JP), 2009 WL 3160839, at *1 (D.P.R. Sept. 29, 2009) (citing *Taunton Gardens*, 557 F.2d 877). Here, all relevant considerations weigh in favor of a stay.

16. First, staying the GO Objections will maintain the status quo while the Oversight Board continues discussions with additional parties to gather further support for the framework of a plan of adjustment. *See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning)*, 212 F.3d 632, 635 (1st Cir. 2000) (citing, inter alia, Collier on Bankruptcy, ¶ 9019-2 (15th ed.1995)) (noting preference for settlements in bankruptcy cases). Additionally, without a stay, parties could be forced to take positions as to the GO Objections, or even take positions simply on the procedures to govern the GO Objections litigation, that are fundamentally at odds with aspects of the overall compromise and settlement embodied in the PSA. Such an unwelcome environment could unravel the hard-fought benefits of the Proposed Settlement. Indeed, the Court has previously acknowledged the benefits of a stay to facilitate settlement in the context of the dispute between the Commonwealth and the Puerto Rico Sales Tax Financing Corporation ("COFINA") over ownership of certain sales and use tax revenues. *See generally In re Commonwealth of Puerto Rico*, Case No. 17-BK-3283, Adv. Proc. No. 17-00257 [Docket No. 492] (D.P.R. June 11, 2018) (granting stay of issuance of decision in light of imminent settlement), [Docket No. 544] (terminating, without prejudice, cross-motions for summary judgment) (D.P.R. Sept. 27, 2018). Preservation of a settlement that may resolve core issues among the parties is the epitome of a compelling reason to stay this proceeding.

17. Second, a stay of the GO Objections pending confirmation of a joint plan of adjustment will avoid unnecessary consumption of the Court's and parties' limited time and resources. A court may exercise its discretionary power to "control . . . [its own] docket with economy of time and effort" by staying proceedings before it. *Hewlett-Packard Co., Inc. v. Berg*, 61 F.3d 101, 105 (1st Cir. 1995); *Ramos-Martir*, 2005 WL 3088372, at *1 ("A properly granted stay operates as an invaluable tool to conserve party and judicial resources."). Here, the GO

9

Objections raise issues and involve filings by potentially over 1,600 parties that might never come before the Court were it to stay the matters and allow parties to resolve their claims through the Proposed Plan. Given that the GO Objections are still in their relatively early stages (*e.g.*, as demonstrated by pleadings filed contemporaneously herewith, the parties at interest are still debating the timing of exchanges of information prior to recommending the procedures by which substantive issues might be argued), a stay is particularly useful in conserving both judicial economy and party resources. *Ramos-Martir*, 2005 WL 3088372, at *1 (recognizing that the court's interest in preserving judicial and party resources is even more prominent in the early stages of the case when less resources have been expended).

18. Third, the interests of non-parties will be promoted if the GO Objections are stayed. A stay will reduce the litigation costs incurred by the Oversight Board, which are paid out of the Commonwealth's limited budget. *See* PROMESA § 107(b); *Musselman v. Home Ins. Co. of Ind.* (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 1990 WL 123840, at *3 (S.D.N.Y. Aug. 7, 1990) (affirming stay when "going forward with the adversary proceeding will be harmful to the Debtor's estate"). Given the current phase of this case, with the Oversight Board required to commence meetings and conferences to reach agreement on litigation procedures with numerous parties, likely followed by an extensive briefing period, this factor is even more relevant. Moreover, the public interest in returning the Commonwealth to financial sustainability is undermined by inefficient use of the Commonwealth's limited resources. Because the settlement of the GO Objections is a critical component of the framework for a Commonwealth plan of adjustment, a stay of this adversary proceeding is of paramount importance to non-parties and the public at large. *Landis*, 299 U.S.

at 256 (affirming stay "[e]specially in cases of extraordinary public moment" when "the public welfare or convenience will thereby be promoted.").

19. Fourth, the non-moving parties will not be prejudiced by a stay, and in fact would benefit: a stay would reduce the risk of the parties unnecessarily expending resources for litigation that could be obviated by confirmation of a plan. Alternatively, should the resolution embodied in the plan fail to come to fruition, the non-moving parties will be in the exact same position as when the stay was entered and no worse off. Thus, no prejudice results from the imposition of a stay.[10]

20. The framework for a Commonwealth plan of adjustment is the result of months of negotiations with key stakeholders. Those efforts have resulted in the potential to resolve the GO Objections. To ensure that progress towards confirmation of a Commonwealth plan of adjustment is not undermined and parties are not compelled to spend time and resources in litigation that may be unnecessary, the Oversight Board asks the Court to stay the GO Objections.

**NOTICE**

21. Notice of this Motion has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Puerto Rico; (iii) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (iv) the

---

[10] Parties not yet supporting the Proposed Plan embodied in the PSA might argue a stay of the GO Objections should not be imposed since – in their view – the Proposed Plan may not be confirmable. However, the confirmation of a plan of adjustment is not before this Court. Moreover, there is effectively no deadline or statute of limitations for the GO Objections, and so the GO Objections theoretically could have been brought post-confirmation, or could be withdrawn now and re-filed later. In other words, and notwithstanding concerns as to confirmation or the general desire to resolve these Title III cases as quickly as possible, there is no persuasive argument that any party has a legal right to have the GO Objections heard within any particular timeframe. For purposes of this Motion, no party can show that any prejudice resulting from the delay in adjudication of rights outweighs the substantial benefits that preserving the settlement option in the Proposed Plan will provide for all stakeholders.

11

Official Committee of Retirees; (v) the insurers of the bonds issued or guaranteed by the Debtors; (vi) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors; (vii) holders of Commonwealth bonds who are parties to any group that has filed a statement under Bankruptcy Rule 2019; (viii) the holders and insurers of Commonwealth bonds identified on Appendix I to the Objection; (ix) DTC; (x) all parties that filed a Notice of Participation relating to the Objection Procedures; (xi) the Committee; and (xii) all parties that have filed a notice of appearance in the above-captioned Title III cases.

## CONCLUSION

22. For the reasons discussed above, the Oversight Board respectfully requests the Court grant this Motion and enter the Proposed Stay Order staying the GO Objections pending confirmation of a plan of adjustment.[11]

---

[11] In the alternative, the Oversight Board requests the Court stay all deadlines and continue all hearings related to the GO Objections for not less than 120 days, without prejudice to requests for further extensions of the stay.

Dated: June 25, 2019
San Juan, Puerto Rico

/s/ Edward S. Weisfelner, Esq.
BROWN RUDNICK LLP
Edward S. Weisfelner, Esq.
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com

Sunni P. Beville, Esq. (*pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

and

/s/ Alberto Estrella, Esq.
/s/ Kenneth C. Suria, Esq.

ESTRELLA, LLC
Alberto Estrella, Esq. (USDC-PR 209804)
Kenneth C. Suria, Esq. (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

**Exhibit A**

**Proposed Order**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ------------------------------------------------------------------ X : | |
| In re: : | |
| : | |
| THE FINANCIAL OVERSIGHT AND : | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, : | Title III |
| : | |
| as representative of : | Case No. 17-BK-3283 (LTS) |
| : | |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, : | (Jointly Administered) |
| : | |
| Debtors.[1] : | |
| ------------------------------------------------------------------ X | |

## [PROPOSED] ORDER ON MOTION TO STAY CONTESTED MATTERS PENDING CONFIRMATION OF COMMONWEALTH PLAN OF ADJUSTMENT

Upon consideration of the Motion to Stay Contested Matters *Pending Confirmation of Commonwealth Plan of Adjustment* (the "Motion"),[2] and the Court having found and determined that: (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to section 502 of the Bankruptcy Code as incorporated by section 301 of PROMESA and Bankruptcy Rule 3007, as incorporated by section 310 of PROMESA; (ii) venue is proper before this court pursuant to PROMESA section 307(a); (iii) due and proper notice of this Motion has been provided under the particular circumstances and no other or further notice need be provided; (iv) based on the statements and arguments made in the Motion, the relief requested

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

in the Motion is in the best interest of the Commonwealth and its creditors; (v) any objections to the relief requested in the Motion having been withdrawn or overruled; and (vi) the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Accordingly, it is hereby ordered that:

1. The relief requested in the Motion is GRANTED to the extent set forth herein.

2. The GO Objections are STAYED indefinitely, and all hearings and deadlines related thereto are continued indefinitely, including but not limited to all hearings and deadlines established by or in relation to Docket Nos. 4784, 4788, 5143, 6988, 7057, and 7154 (comprising the GO Objections and related procedural motions and orders).

3. The terms of and conditions of this Order shall be immediately effective and enforceable upon its entry.

4. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2019

_____
HON. LAURA TAYLOR SWAIN
UNITED STATES DISTRICT COURT JUDGE

63436036 v6

2