(4)

## CERTIFICATE AS TO
## REMARKETING AGREEMENT

I, Grace Santana Balado, Secretary of Puerto Rico Highways and Transportation Authority (the "Authority") DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Remarketing Agreement, dated May 27, 2008, by and between the Authority and Morgan Stanley & Co. Incorporated relating to $200,000,000 Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds (Series A), the form of which was presented to me on May 23, 2008, and the execution and delivery of which were authorized by me by Resolution No. 08-**26**, duly adopted by the Authority on that date.

IN WITNESS WHEREOF, I have hereunto set my hand this 27th day of May, 2008.

_____
Secretary of Puerto Rico
Highways and Transportation Authority

NY1 6641641v.3

# REMARKETING AGREEMENT

Dated as of May 1, 2008

Between

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

And

**MORGAN STANLEY & CO. INCORPORATED,**
as Remarketing Agent

$200,000,000
1998 Variable Rate Bonds

NY1 6645844v.2

# REMARKETING AGREEMENT

**THIS REMARKETING AGREEMENT** dated as of May 1, 2008 ("**Agreement**"), between **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "**Issuer**"), and **MORGAN STANLEY & CO. INCORPORATED**, as Remarketing Agent (the "**Remarketing Agent**").

## Recitals

A. The Issuer has heretofore issued its Variable Rate Transportation Revenue Bonds, Series A in the aggregate principal amount of $200,000,000 maturing July 1, 2028 (the "**Bonds**"), pursuant to and in full compliance with Resolutions No. 98-06 and 98-07, adopted by the Issuer on February 26, 1998, as amended (collectively, the "**Resolution**"). The Bank of New York serves as successor fiscal agent (the "**Fiscal Agent**") with respect to the Bonds under the Resolution. All terms not otherwise defined in this Remarketing Agreement have the meanings ascribed to such terms in the Resolution and in the Remarketing Offering to be distributed in connection with the remarketing of the Bonds by the Remarketing Agent, dated May 27, 2008 (the "**Remarketing Circular**").

B. Pursuant to the Resolution, the Bonds bear interest at a variable interest rate, adjusted weekly, and, under the circumstances, at the times and in the manner provided in the Resolution, may be, and at certain times are required to be, tendered by the holders thereof for purchase.

C. The Issuer desires to appoint Morgan Stanley & Co. Incorporated as its agent to perform the services of Remarketing Agent provided for herein and in the Resolution, and Morgan Stanley & Co. Incorporated is willing to do so on the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual representations, covenants and agreements set forth in this Agreement, the parties to this Agreement hereby covenant and agree as follows:

1. **Representations and Warranties of the Issuer.** The Issuer represents and warrants to the Remarketing Agent that as of the date hereof:

    (a) The representations and warranties made by the Issuer in the Resolution are true and correct.

    (b) This Agreement has been duly authorized by the Issuer and constitutes the legal, valid and binding obligation of the Issuer, enforceable in accordance with its terms, except as such enforceability may be limited by bankruptcy or other laws affecting the enforcement of creditors' rights generally or by general equitable principles and except as rights of indemnity or contribution hereunder may be limited by public policy.

2. **Acceptance of Appointment and Obligations of Remarketing Agent.**

    (a) Morgan Stanley & Co. Incorporated hereby accepts its appointment as the Remarketing Agent for the Bonds and hereby accepts and agrees to perform the duties and obligations imposed upon it as Remarketing Agent under the Resolution.

    (b) The Remarketing Agent will determine the Weekly Rate, in accordance with the Resolution, and will give notice of such rates in the manner and to the persons specified therein. In

1

NY1 6645844v.2

addition, the Remarketing Agent will provide all notices in the manner and at the times set forth in the Resolution.

(c) The Remarketing Agent will keep books and records with respect to its duties as Remarketing Agent as is consistent with prudent industry practice and will make those books and records available for inspection by the Issuer at all reasonable times during its normal business hours.

(d) The Remarketing Agent will be acting solely as an agent in the resale of the Bonds and will use its best efforts to remarket Bonds up to and including the Maximum Rate under the Resolution in accordance with the Resolution and perform all other duties assigned to it under the Resolution.

3. **Fees and Expenses.** While the Bonds bear interest at a Weekly Rate, unless otherwise agreed upon from time to time by the Issuer and the Remarketing Agent, the Issuer will pay the Remarketing Agent directly as compensation for its services for Bonds bearing interest at a Weekly Rate, a fee equal to eight hundredths of one percent (.08%) per annum of the weighted average principal amount of the Bonds outstanding bearing interest at a Weekly Rate during each three-month period (or from the date of the first remarketing of the Bonds by the Remarketing Agent pursuant to this Agreement through June 30, 2008), payable quarterly in arrears on each January 1, April 1, July 1 and October 1, commencing July 1, 2008. The Remarketing Agent will not be entitled to compensation after this Remarketing Agreement is terminated except for a pro rata portion of its fee earned in respect of the quarter in which and through the day on which such termination occurs. Additionally, the Issuer will reimburse the Remarketing Agent for its reasonable out-of-pocket expenses in performing its obligations hereunder, including, without limitation, expenses incurred in the preparation and distribution of the disclosure documents referred to in **Section 4** and in connection with the proposed conversion of the Bonds from the Weekly Rate to the Fixed Rate.

4. **Disclosure Document.** If required under any applicable law or as a material change in the information in a disclosure document theretofore used by the Remarketing Agent in connection with the remarketing of the Bonds, which may include the Remarketing Circular, the Issuer promptly will provide the Remarketing Agent such Remarketing Circular reasonably satisfactory to the Remarketing Agent and its counsel in respect of the Bonds. The Issuer will supply the Remarketing Agent with such number of copies of the Remarketing Circular as the Remarketing Agent reasonably requests from time to time, within such reasonable time period as will permit the Remarketing Agent to comply with provisions of Rule 15c2-12 of the Securities Exchange Act of 1934, as amended (the "**Rule**"). The Issuer will supplement and amend the Remarketing Circular or any other disclosure document so that, at all times when used in connection with the remarketing of the Bonds, the Remarketing Circular will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements in the Remarketing Circular, in the light of the circumstances under which they were made, not misleading; provided, however, that no such amendment or supplement will be made prior to allowing the Remarketing Agent a reasonable opportunity to review it. The Issuer will not, however, be required to make representations or warranties as to statements or omissions based upon information furnished to the Issuer in writing by or on behalf of the Remarketing Agent relating to the Remarketing Agent expressly for use therein.

The Issuer agrees to notify the Remarketing Agent promptly in writing of the occurrence of any of the following events:

(a) any default under the Resolution of which it has knowledge or any event which, with notice or lapse of time or both, would constitute an event of default;

2

(b) any event with respect to the Bonds which requires the delivery of an opinion of Bond Counsel pursuant to the Resolution;

(c) any optional redemption or extraordinary optional redemption pursuant to the Resolution;

(d) any mandatory redemption (other than pursuant to sinking fund provisions) pursuant to the Resolution;

(e) each material amendment, modification or supplement to the Resolution;

(f) any adverse change, or threatened adverse change, in the federal income tax treatment of interest on the Bonds thereof;

(g) any fact or occurrence as a result of which the Remarketing Circular for the Bonds would be or become false or misleading in any material respect or any representation or warranty made herein would become false;

(h) any material adverse change in the financial condition or general affairs of the Issuer; or

(i) any reduction, qualification or withdrawal or any written suggestion by any rating agency that it is considering a possible reduction, qualification or withdrawal in its rating of the Bonds.

The Issuer hereby acknowledges the requirements imposed on the Remarketing Agent by the Rule. The Issuer covenants and agrees that it will comply with the continuing disclosure requirements pursuant to Section (b)(5)(i) of the Rule to the extent applicable to the Bonds, and take such other actions as is reasonably necessary to enable the Remarketing Agent to comply with the Rule, if applicable.

Upon the request of the Remarketing Agent, which may be made from time to time, the Issuer shall cooperate with the Remarketing Agent to cause the Bonds to qualify for offer and sale under the blue sky laws as the Remarketing Agent may designate, and the Issuer shall pay, or reimburse if paid by the Remarketing Agent, all reasonable fees and disbursement of counsel for the Remarketing Agent and all other expenses and filing fees in connection therewith; provided, however, that the Issuer shall not be required to file any general consent to service of process or to qualify as a foreign corporation or as a dealer in securities in any jurisdiction in which it is not so qualified or to subject itself to taxation in any jurisdiction in which it is not otherwise subject to taxation.

The Issuer shall deliver to the Remarketing Agent such additional information concerning the business and financial condition of the Issuer as the Remarketing Agent may reasonably request.

5. **Indemnification**

a) Indemnification and Contribution.

i) To the extent, if any, that a court of competent jurisdiction would enforce such agreement as not contrary to law or public policy, the Issuer agrees to indemnify and hold harmless the Remarketing Agent and each Person, if any, who controls (as such term is defined in Section 15 of the Securities Act of 1933, as amended) the Remarketing Agent against any and all losses, claims, damages, expenses, and liabilities whatsoever arising out of any untrue statement or alleged untrue statement in the Remarketing Circular of a material fact or any omission or

alleged omission of any material fact necessary to make the statements therein, at the time and in the light of the circumstances under which they were made, not misleading, including, without limiting the generality of the foregoing, the aggregate amount paid in settlement of any litigation commenced or threatened or of any claim whatsoever based upon any such untrue statement or omission or alleged untrue statement or omission, if such settlement is effected with the written consent of the Issuer, and any amount reasonably incurred in investigating, preparing, or defending against any litigation commenced or threatened or any claim based upon any such untrue statement or omission or alleged untrue statement or omission. In case any claim should be made or action brought against the Remarketing Agent or any controlling Person (as aforesaid) based upon the Remarketing Circular, in respect of which indemnity may be sought against the Issuer, the Remarketing Agent or such controlling Person shall promptly notify the Issuer in writing setting forth the particulars of such claim or action and the Issuer shall assume the defense thereof, including the retaining of counsel and the payment of all expenses; provided, however that failure to provide such notification shall not affect an indemnified party's right to indemnification otherwise than on account of this indemnity agreement. The Remarketing Agent or any such controlling Person shall have the right to retain separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the Remarketing Agent's expense or the expense of such controlling Person unless the retaining of such counsel has been specifically authorized in writing by the Issuer or counsel has advised the Remarketing Agent that the representation of the two parties would be inappropriate due to actual or potential differing of interests between them.

    ii)  The Remarketing Agent will indemnify and hold harmless the Issuer, each of its officers and employees and each Person who controls the Issuer within the meaning of Section 15 of the Securities Act of 1933, as amended (the "1933 Act"), to the same extent as the foregoing indemnity from the Issuer to the Remarketing Agent, but only with reference to written information relating to the Remarketing Agent furnished by the Remarketing Agent specifically for use in preparation of the Remarketing Circular.

    iii)  If the indemnification provided for above is unavailable or insufficient to hold harmless an indemnified party in respect of any losses, claims, damages or liabilities referred to above, then each indemnifying party, in lieu of indemnifying such indemnifying party, shall contribute to the amount paid or payable by such indemnified party as a result of such losses, claims, damages or liabilities (i) in such proportion as is appropriate to reflect the relative benefits received by the Issuer and the Remarketing Agent from the remarketing of the Bonds or (ii) in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Issuer and of the Remarketing Agent in connection with the statements or omissions that resulted in such losses, claims, damages or liabilities, as well as any other relevant equitable considerations. The relative benefits received by the Issuer and the Remarketing Agent shall be deemed to be in the same respective proportions as the net proceeds from the remarketing (before deducting expenses) received by the Issuer and the total compensation received by the Remarketing Agent in the preceding twelve months, pursuant to **Section 3** hereunder. The relative fault of the Issuer and the Remarketing Agent shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the Issuer or by the Remarketing Agent and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission.

The Issuer and the Remarketing Agent agree that it would not be just and equitable if contribution pursuant to this Section were determined by pro rata allocation or by any other method of allocation that does not take account of the equitable considerations referred to in the immediately

4

preceding paragraph. The amount paid or payable by an indemnified party as a result of the losses, claims, damages and liabilities referred to in the immediately preceding paragraph shall be deemed to include, subject to the limitations set forth above, any legal or other expenses reasonably incurred by such indemnified party in connection with investigating or defending any such action or claim. Notwithstanding the provisions of this Section 5, the Remarketing Agent shall not be required to contribute [more than?] the total compensation received by the Remarketing Agent in the preceding twelve months, pursuant to **Section 3** hereunder. No person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.

6. **Remarketing Agent's Liabilities.** The Remarketing Agent will incur no liability to the Issuer or any other party for its actions as Remarketing Agent pursuant to the terms hereof and of the Resolution except for (i) the liabilities for which the Remarketing Agent has agreed to indemnify the Issuer and others pursuant to **Section 5** above, and (ii) its gross negligence or willful misconduct. In setting the interest rates on the Bonds, the Remarketing Agent will not be liable for any error made in good faith. The undertaking of the Remarketing Agent to remarket any Bonds pursuant to the Resolution is on a "best efforts" basis.

The duties and obligations of the Remarketing Agent will be determined solely by the express provisions of this Agreement and the Resolution, and the Remarketing Agent will not be responsible for the performance of any duties and obligations other than as are specifically set forth in this Agreement and the Resolution, and no implied covenants or obligations will be read into this Agreement and the Resolution against the Remarketing Agent. The Remarketing Agent may conclusively rely upon any notice or document given or furnished to it and conforming to the requirements of this Agreement and the Resolution, and the Remarketing Agent may rely and will be protected in acting upon such notice or any document reasonably believed by it to be genuine and to have been given, signed or presented by the proper party or parties.

7. **Resignation or Removal of Remarketing Agent.** The Remarketing Agent may be removed at any time, with or without cause, by the Issuer (with the consent of the Bank), upon 20 days written notice by the Issuer to the Remarketing Agent and the Fiscal Agent. Subject to the provisions of the following paragraph, the Remarketing Agent may at any time resign and be discharged of the duties and obligations created by this Remarketing Agreement by giving at least 30 days written notice to the Issuer, the Fiscal Agent and the Bank so long as a replacement remarketing agent has been appointed and upon 90 days' written notice to the Fiscal Agent and the Bank if no replacement remarketing agent has been appointed. If no successor remarketing agent is appointed within 30 day's after the resignation of the Remarketing Agent, the Bank shall have the right to request a court of competent jurisdiction, or to direct the Fiscal Agent to request a court of competent jurisdiction, to compel the Issuer to appoint a successor remarketing agent.

The Remarketing Agent may immediately cease to offer and sell the Bonds if it determines, in its reasonable judgment, that

(i) for any reason, a pending or proposed change in applicable tax laws or securities laws would require registration under the Securities Act in connection with the remarketing of the Bonds;

(ii) a material adverse change has occurred in the condition of the Issuer;

5

(iii)     a general banking moratorium has been declared by federal or New York authorities having jurisdiction or a material disruption in commercial banking or securities settlement of clearances services shall have occurred;

(iv)     there has occurred any outbreak or escalation of hostilities or any change in financial markets or any calamity or crisis that, in the Remarketing Agent's judgment, is material and adverse;

(v)     a downgrade or withdrawal of the rating on the Bonds has occurred;

(vi)     an imposition of material restrictions on the Bonds or similar obligations has occurred;

(vii)     there is a general suspension of trading or the fixing of minimum or maximum prices for trading on the New York Stock Exchange;

(viii)     in the opinion of the Remarketing Agent, the market price of the Bonds, or the market prices generally of obligations of the general character of the Bonds, might be materially adversely affected because: (A) additional material restrictions not in force as of the date of this Agreement are imposed upon trading in securities generally by any governmental or regulatory authority or by any national securities exchange, (B) the New York Stock Exchange or other national securities exchange, or any governmental or regulatory authority, imposes, as to the Bonds, or such similar obligations, any material restrictions which are neither now in force nor have been announced to become effective prior to the date of this Agreement, or increase materially those now in force and so announced, with respect to the extension of credit by, or the charge to the net capital requirements of, underwriters, or (C) the President of the United States of America, a member of his cabinet or the United States Securities and Exchange Commission, including a lesser official acting on the behalf of any of them, or a member of the Congress, announces the intended introduction of legislation to achieve the same effect as that described in subclause (A) or (B) of this clause (viii);

(ix)     a material misstatement or omission in the Remarketing Circular has occurred, so that it is not advisable, in the judgment of the Remarketing Agent, to attempt to remarket the Bonds;

(x)     the Remarketing Agent determines, in its sole discretion upon consultation with counsel, that either (A) a disclosure document is required by applicable law to be distributed to prospective purchasers and such document is not available or, if available, is not reasonably satisfactory to the Remarketing Agent in form or substance or (B) a continuing disclosure undertaking is required by applicable law and such undertaking is has not been complied with or is not reasonably satisfactory to the Remarketing Agent in form or substance;

(xi)     the Remarketing Agent receives and Opinion of Counsel (a copy of which will be furnished to the Issuer) that substantial grounds exist upon which the exclusion from gross income of interest on the Bonds for federal income tax purposes or the exemption from registration under the Securities Act of 1933, as amended, can be challenged; or

(xii)     an event, including, without limitation, the bankruptcy or default of any other issuer of or obligor on obligations of the general character of the Bonds shall have occurred.

NY1 6645844v.2

8. **Dealing in Securities by Remarketing Agent.** The Remarketing Agent, in its individual capacity, either as principal or agent, may buy, sell, own, hold and deal in any of the Bonds, and may join in any action which any owner of Bonds may be entitled to take with like effect as it did not act in any capacity hereunder; however, the Remarketing Agent will have no obligation hereunder to buy or take any position in the Bonds for its own account. The Remarketing Agent, in its individual capacity, either as principal or agent, may also engage in or be interested in any financial or other transaction with the Issuer and may act as depository, trustee, or agent for any committee or body of owners of Bonds or other obligations of the Issuer freely as if it did not act in any capacity hereunder.

9. **Intention of Parties.** It is the express intention of the parties hereto that no purchase, sale or transfer of any Bonds, as herein provided, will constitute or be construed to be the extinguishment of any Bond or the indebtedness represented thereby or the reissuance of any Bond or the refunding of any indebtedness represented thereby.

10. **Amendment.**

(a) The Issuer agrees not to consent to any amendment of the provisions of the Resolution with respect to this Agreement or the rights and duties of the Remarketing Agent hereunder or thereunder without the prior written consent of the Remarketing Agent, which consent will not be unreasonably withheld.

(b) This Agreement may not be amended except by a writing signed by each of the parties hereto; may not be assigned without the mutual consent of the parties hereto; and will not confer any rights upon any other person or any registered or beneficial owners of the Bonds in their capacities as such.

11. **Notices.**

Unless otherwise provided, all notices, requests, demands and formal actions hereunder must be in writing and mailed, telegraphed or delivered, as follows:

If to the Issuer:

Puerto Rico Highways and Transportation Authority
P.O. Box 42007
San Juan, Puerto Rico 00940
Attention: Executive Director
Tel. 787-721-8787
Fax. 787-727-5456

If to the Remarketing Agent:

Morgan Stanley & Co. Incorporated
1221 Avenue of the Americas
New York, New York 10020
Attention: Short Term Products
Tel: 212-762-8263
Fax: 212-507-1937
E-Mail: muni-short-term@morganstanley.com

7

If to the Fiscal Agent:

The Bank of New York
101 Barclay Street, Suite 21W
New York, New York 10286
Tel. 212-815-6955
Fax. 212-815-5595
Attention: Corporate Trust Administration

Each of the above parties may, by written notice given hereunder to the others, designate any further or different addresses to which subsequent notices, certificates, requests, or other communications is sent. In addition, the parties hereto may agree to any other means by which subsequent notices, certificates, requests or other communications may be sent.

12. **Governing Law and Waiver of Trial by Jury.** This Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico. Each of the parties hereto also irrevocably waives all right to trial by jury in any action, proceeding or counterclaim arising out of this Remarketing Agreement or the transactions contemplated hereby.

13. **Execution of Counterparts.** This Agreement may be executed in several counterparts, each of which will be regarded as an original and all of which will constitute one and the same document.

14. **Electronic Transaction.** The parties agree that the transaction described herein may be conducted and related documents may be stored by electronic means. Copies, telecopies, facsimiles, electronic files and other reproductions of original executed documents will be deemed to be authentic and valid counterparts of the original documents for all purposes, including the filing of any claim, action or suit in the appropriate court of law.

15. **Severability.** If any clause, provision or Section hereof is ruled invalid or unenforceable by any court of competent jurisdiction, the invalidity or unenforceability of such clause, provision or Section will not affect any of the remaining clauses, provisions or sections hereof.

16. **No Assignment without Consent of Parties; Exceptions; Binding Agreement.** The obligations of the respective parties hereto may not be assigned or delegated to any other person without the consent of the other parties hereto; provided, however, that the Remarketing Agent may assign its rights and obligations hereunder to an affiliate of the Remarketing Agent or to an entity succeeding to the business of the Remarketing Agent without the consent of the other parties hereto. This Agreement will inure to the benefit of and be binding upon the Issuer and the Remarketing Agent and their respective successors and assigns, and will not confer any rights upon any other person, partnership, association or corporation other than persons, if any, controlling the Remarketing Agent within the meaning of the Securities Act.

17. **Representations, etc. in Agreement Remain Operative Disirregardless.** All of the representations, warranties and agreements contained in this Agreement of the Issuer and the Remarketing Agent shall remain operative and in full force and effect, regardless of (i) any investigation made by or on behalf of the Remarketing Agent or the Issuer, (ii) delivery of and any payment for any Bonds hereunder or (iii) termination or cancellation of this Agreement.

18. **Section Headings Not Part of Agreement.** Section headings have been inserted in this Agreement as a matter of convenience of reference only, and it is agreed that such section headings are not a part this Agreement and will not be used in the interpretation of any provision of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Remarketing Agreement to be duly executed by their duly authorized officers as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY
The Issuer

By: _____
Name: _____Luis M. Trini DAD_____
Title: _____Eject Dir._____


MORGAN STANLEY & CO. INCORPORATED, as
Remarketing Agent

By: _____
Name: _____
Title: _____

9

19. **Failure to Exercise Right/Remedy Not a Subsequent Waiver.** Failure of any party to this Agreement to exercise any right or remedy hereunder in the event of a breach of this Agreement by any other party shall not constitute a waiver of any such right or remedy with respect to any subsequent breach.

**IN WITNESS WHEREOF**, the parties hereto have caused this Remarketing Agreement to be duly executed by their duly authorized officers as of the day and year first above written.

**PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY**
The Issuer

By: _____
Name: _____
Title: _____

**MORGAN STANLEY & CO. INCORPORATED,** as
Remarketing Agent

By: _____
Name: Thomas Falcone
Title: Vice President

9

NY1 6645844v.2