(11)

### CERTIFICATE OF SECRETARY OF THE AUTHORITY
### AS TO CONTRACT OF PURCHASE

I, William G. Rios Maldonado, Secretary of Puerto Rico Highways and Transportation Authority (the "Authority"), DO HEREBY CERTIFY, that attached hereto is a true and correct copy of the Contract of Purchase, dated February 26, 1998, submitted by Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated on behalf of itself and the several underwriters referred to therein, which was presented to the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico on February 26, 1998 and accepted by him in Section 7 of Resolution No. 98-07 duly adopted on said date.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the Authority, this 19th day of March, 1998.

(SEAL)

Secretary
Puerto Rico Highways
and Transportation Authority

$1,129,643,740
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
Transportation Revenue Bonds (Series A)


**CONTRACT OF PURCHASE**


February 26, 1998


Puerto Rico Highways and Transportation
 Authority
Minillas Government Center
San Juan, Puerto Rico  00940

Ladies and Gentlemen:

The undersigned, acting on behalf of itself (the "Representative")
and each of the other several underwriters named in Schedule I hereto
(collectively, the "Underwriters"), offers to enter into this Contract
of Purchase (this "Purchase Contract") with you (the "Authority")
which, upon your acceptance of this offer, will be binding upon the
Authority and the Underwriters.  This offer is made subject to
acceptance by the Authority at or prior to 5:00 P.M., New York time,
on the date hereof and, if not so accepted, will be subject to
withdrawal by the Representative upon written notice delivered to
the Authority at any time prior to your acceptance.  Capitalized terms
not otherwise defined herein shall have the meanings assigned thereto
in the Official Statement (as hereinafter defined).

    1.    **Purchase and Sale of the Bonds**.  On the basis of the
representations, warranties, covenants and agreements herein contained,
but subject to the terms and conditions herein set forth, the
Underwriters hereby agree, jointly and severally, to purchase from
the Authority, and the Authority hereby agrees to sell to the
Underwriters, all (but not less than all) of $1,129,643,740 principal
amount of its Puerto Rico Highway and Transportation Authority
Transportation Revenue Bonds (Series A) (the "Bonds"), at an aggregate
purchase price of $1,099,051,735.70 plus $4,111,828.49 of accrued
interest on the Bonds (other than the Variable Rate Bonds, as defined
below), from February 15, 1998 to the Closing Date (as hereinafter
defined).  The Bonds shall be issued under Resolution No. 98-06,
adopted by the Authority on February 26, 1998, as supplemented by
Resolution No. 98-07, adopted by the Authority on the same date
(collectively, the "Resolution").  The Bonds shall be dated, shall
bear interest, shall mature, shall be redeemable and shall otherwise
be as described in the Resolution and in the final Official Statement,
dated February 26, 1998, relating to the Bonds (hereinafter, with
any and all appendices, supplements, exhibits and reports or summaries
included therein, attached thereto or incorporated therein by
reference, called the "Official Statement").  The Authority has

2

previously delivered to the Underwriters a Preliminary Official Statement of the Authority, dated February 12, 1998, relating to the Bonds (hereinafter, with any and all appendices, supplements, exhibits and reports or summaries included therein, attached thereto or incorporated therein by reference, called the "Preliminary Official Statement"), and the Authority ratifies the use of the Preliminary Official Statement by the Underwriters.

The principal of and interest on the Bonds maturing on July 1 of the years 2004 through and including 2018 (the "Insured Bonds") will be insured by a municipal bond insurance policy issued by AMBAC Indemnity Corporation (the "Bond Insurer"). Bonds in the principal amount of $200 million maturing on July 1, 2028 will be variable rate bonds, with interest rates determined as described in the Resolution (the "Variable Rate Bonds"). The Authority will enter into an Interest Rate Swap Agreement dated as of the Closing Date with AMBAC Financial Services, Limited Partnership ("AFS") (the "Swap Agreement") in connection with the Variable Rate Bonds. AFS' obligations under the Swap Agreement will be guaranteed by a Financial Guaranty Insurance Policy for Swap Agreement issued by AMBAC Assurance Corporation. The Variable Rate Bonds will be subject to a Standby Bond Purchase Agreement to be entered into between the Authority and Bank of Nova Scotia (the "Standby Agreement") and a Remarketing Agreement to be entered into between the Authority and PaineWebber Incorporated (the "Remarketing Agreement"). The Authority and AFS will enter into a Liquidity Assurance Agreement relating to the Variable Rate Bonds (the "Liquidity Agreement").

The Authority is issuing the Bonds to finance or refinance certain highway system improvements and the construction of a new urban rail mass transit system for the San Juan Metropolitan Region, known as Tren Urbano, to make a deposit to the 1998 Senior Reserve Account, the moneys in which are to be applied as described in the Official Statement, and to refund a portion of the Authority's outstanding Puerto Rico Highway Authority Highway Revenue Bonds (Series G), (Series Q) and (Series Y), as described in the Resolution (the "Refunded Bonds"). Concurrently with the issuance of the Bonds, there will be deposited into the fund (the "Escrow Deposit Trust Fund") created pursuant to an Escrow Deposit Letter (the "Escrow Deposit Letter"), dated the Closing Date (hereinafter mentioned) by and between the Authority and The Chase Manhattan Bank (the "Fiscal Agent"), to be held by the Fiscal Agent, an amount sufficient, with investment earnings, to pay the principal of and premium on the Refunded Bonds on the respective redemption dates of the Refunded Bonds and the interest to accrue thereon to such dates, all as provided in the Resolution and the Escrow Deposit Letter.

   2.   **Authority of the Representative**. The Representative represents that it has been duly authorized to act hereunder on behalf of the other Underwriters and to take such other actions in connection with this Purchase Contract as it may deem advisable. Any action under this Purchase Contract taken by the Representative will be binding upon all the Underwriters.

3

**3.   Security Deposit:  Delivery of the Bonds**.  There is delivered herewith a corporate check to the order of Government Development Bank for Puerto Rico (the "Bank"), as agent for the Authority, equal to at least 1% of the principal amount of the Bonds, as a security deposit for the performance by the Underwriters of their obligation to accept delivery of and pay for the Bonds at the Closing (hereinafter mentioned) in accordance with the terms and provisions of this Purchase Contract.  In the event the Authority does not accept this offer, such check shall be immediately returned to the Representative uncashed. If this offer is accepted, such check will be held uncashed as a security deposit.  In the event of failure by the Authority to deliver the Bonds at the Closing, or if the Authority shall not satisfy the conditions of the Underwriters contained in this Purchase Contract, or if the obligations of the Underwriters shall be terminated for any reason permitted by this Purchase Contract, such check shall be immediately returned to the Representative uncashed. In the event that the Underwriters fail (other than for a reason permitted under this Purchase Contract) to accept delivery of and pay for the Bonds at the Closing, such check may then be cashed and the proceeds thereof retained by the Authority as and for full liquidated damages for such failure and for any and all defaults on the part of the Underwriters, and such retention shall constitute satisfaction of, and shall result in full release and discharge of, all claims and damages for such failure and for any and all such defaults.

The Authority shall deliver the Bonds to The Depository Trust Company ("DTC") in New York, New York in such form as shall be acceptable to DTC, registered in the name of such nominee of DTC as DTC shall require, duly executed and authenticated, and shall deliver the other documents hereinafter mentioned to the Representative; and, subject to the terms and conditions hereof, the Underwriters shall pay the purchase price of the Bonds as set forth in Section 1 hereof in Federal or other immediately available funds drawn to the order of the Fiscal Agent at the offices of Brown & Wood, LLP, New York, New York, at 10:00 A.M., New York time, on March 19, 1998, or at such other time and place as the Representative and the Authority may determine, such time and date being herein referred to as the "Closing Date" and such payment and delivery being herein referred to as the "Closing", and the security deposit check delivered to the Authority pursuant to this Section shall thereupon be returned to the Representative uncashed.  Time shall be of the essence, and delivery at the time and place specified pursuant to this Purchase Contract is a further condition of the obligations of the Underwriters hereunder.  The Authority shall cause CUSIP identification numbers to be inserted on the Bonds, but neither the failure to include such numbers on any Bond nor any error with respect thereto shall constitute cause for a failure or refusal by the Underwriters to accept delivery of and make payment for the Bonds in accordance with the terms of this Purchase Contract.  The Bonds will be made available for checking at the above office a reasonable time prior to the Closing Date.

4

After your acceptance of this offer, the Underwriters intend to make a public offering of all of the Bonds at prices not in excess of the public offering price or prices (or not less than the yield or yields) set forth or derived from information set forth on the inside cover of the Official Statement and may subsequently change such offering price or prices (or yield or yields). The Underwriters may sell the Bonds to dealers (including dealers depositing the Bonds into investment trusts) and others at prices lower than the public offering price or prices (or in excess of such yield or yields) set forth on the inside cover of the Official Statement. The Authority authorizes the Underwriters to use copies of the Official Statement and any amendments or supplements thereto and the information contained or incorporated by reference therein and copies of the Resolution in connection with the public offering and sale of the Bonds and agrees not to supplement or amend, or cause to be supplemented or amended, the Official Statement or the Resolution at any time prior to the Closing without the prior written consent of the Representative. The Authority ratifies and confirms the use by the Underwriters, prior to the date hereof, of the Preliminary Official Statement.

**4.** **Representations, Warranties and Covenants of the Authority**. The Authority hereby represents, warrants and covenants as follows:

(a) Promptly after acceptance hereof by the Authority, the Authority shall deliver or cause to be delivered to the Representative (i) five (5) copies of the Official Statement with only such changes therein as shall have been accepted by the Representative manually signed on behalf of the Authority by the Executive Director of the Authority; (ii) five (5) executed copies of the letter of the auditors referred to in paragraph (12) of subsection (c) of Section 5 hereof, dated the date hereof; and (iii) five (5) signed copies of all reports of auditors, consultants and others included as Appendices to the Official Statement or referred to therein. The Underwriters are authorized to deliver copies of the Official Statement in connection with the public offering and sale of the Bonds. The Authority shall provide to the Underwriters such additional copies of the Official Statement as the Representative may reasonably request. As soon as practicable after the date hereof, but, in any event, within seven (7) business days from the date hereof, the Authority shall deliver to the Underwriters a sufficient number of printed copies of the Official Statement as the Representative may reasonably request so as to enable the Underwriters to comply with the provisions of paragraph (b)(4) of Rule 15c2-12 of the Securities Exchange Act of 1934, as amended (the "Rule"). The Authority shall be under no obligation to determine whether the number of copies of said Official Statement requested by the Representative pursuant to the preceding sentence shall be sufficient to enable the Underwriters to comply with the requirements of the Rule.

5

(b)   The Authority shall pay, or cause to be paid, all expenses incident to the performance of its obligations under this Purchase Contract and the fulfillment of the conditions imposed hereunder, including but not limited to the cost of preparing and delivering the Bonds and the cost of printing and mailing the Preliminary Official Statement and the Official Statement, and any amendments or supplements thereto, and the cost, if any, of printing the Resolution and any amendments or supplements thereto, all in reasonable quantities as may be requested by the Representative, the fees and expenses of Bond Counsel, the fees and expenses of any auditors, consultants, verification agents and others retained by the Authority in connection with the transactions contemplated herein, the fees and expenses of the Fiscal Agent and DTC, the premium for the municipal bond insurance provided by the Bond Insurer, any costs related to the execution of the Standby Agreement and the Remarketing Agreement and any fees charged by the rating agencies for the rating of the Bonds; provided that the Authority will not be obligated to pay, and the Underwriters will pay, the cost of preparing (i) any other documents used by the Underwriters in connection with the offering and sale of the Bonds including, but not limited to, the Letter of Instructions, the Agreement Among Underwriters and the Selling Group Agreement, and (ii) this Purchase Contract and the fees and expenses of counsel to the Underwriters and the cost incurred for filings under state securities laws.

(c)   The Authority is a duly constituted and validly existing body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth") created pursuant to Act No. 74 of the Legislature of Puerto Rico, approved June 23, 1965, as amended (the "Act"), and the Authority has, and at the Closing Date will have, full right, power and authority to (i) adopt the Resolution and enter into this Purchase Contract, the Continuing Disclosure Agreement, dated the Closing Date (the "CD Agreement"), by the Authority and the Commonwealth, acting through the Secretary of the Treasury of Puerto Rico, the Escrow Deposit Letter, the Standby Agreement, the Remarketing Agreement, the Liquidity Agreement and the Swap Agreement (this Purchase Contract, the Escrow Deposit Letter, the Standby Agreement, the Remarketing Agreement, the Swap Agreement, the Liquidity Agreement and the CD Agreement are herein called the "Documents"), (ii) issue and sell the Bonds pursuant to the Resolution and deliver or cause to be delivered the Bonds to the Underwriters as provided herein and (iii) perform all of the transactions contemplated by the Resolution, the Bonds, the Official Statement and the Documents, and the Authority has complied with the provisions of the Act in all matters relating to such transactions.

(d)   The Authority has duly adopted the Resolution and authorized the execution and delivery of the Bonds, the Official Statement and the Documents and is duly authorized to perform the obligations to be performed by the Authority hereunder and thereunder.

6

(e)   The Authority is not, and on the Closing Date will not be, in breach of or in default under any applicable law (including, without limitation, any administrative rule-making law) or administrative regulation of the Commonwealth or the United States or any applicable judgment or decree or any loan agreement, note, resolution, agreement or other instrument to which the Authority is, and will after the Closing Date be, a party or otherwise subject, which breach or default would materially adversely affect its adoption of the Resolution, its execution and delivery of the Bonds or its entry into any of the Documents or the performance of its obligations under any of the foregoing, and no event has occurred and is continuing which with the passage of time or giving of notice, or both, would constitute such a breach or default; and the adoption, issuance and execution and delivery, respectively, by the Authority of the Resolution, the Bonds and the Documents and compliance with the provisions thereof do not and will not conflict with or constitute on the part of the Authority a breach of or default under any applicable law (including, without limitation, any administrative rule-making law) or administrative regulation of the Commonwealth or the United States or any applicable judgment or decree or any loan agreement, note, resolution, agreement or other instrument to which the Authority is, and will after the Closing Date be, a party or otherwise subject; nor will any such adoption, issuance, execution, delivery or compliance result in the creation or imposition of any lien, charge, encumbrance or security interest of any nature whatsoever upon any of the revenues, properties or assets of the Authority, except as expressly provided or permitted by the Resolution and described in the Official Statement.

(f)   Other than any approvals that might be required under the securities laws of any state, and other than the approval of the Bank, which approval will be evidenced by an officially authenticated resolution delivered to the Representative at or prior to the Closing, all authorizations, approvals, licenses, consents and orders of any governmental authority or agency having jurisdiction of the matter which would constitute a condition precedent to, or the absence of which would materially adversely affect, the performance by the Authority of its obligations under the Documents have been or will by the Closing Date be obtained.

(g)   At the Closing Date, the Resolution, the Bonds and the Documents will constitute legal, valid and binding obligations of the Authority enforceable in accordance with their respective terms.

(h)   The audited financial statements of the Authority for the fiscal year ended June 30, 1997 contained in the Official Statement, as reported upon by Ernst & Young LLP, independent certified public accountants, and the unaudited financial statements of the Authority attached hereto as Exhibit A, fairly present the Authority's financial condition as of the dates and the results of operations for the periods therein set forth, such unaudited financial statements

7

have been prepared on a substantially consistent basis throughout the periods covered and on a basis substantially consistent with that of the audited financial statements included in the Official Statement and such audited financial statements have been prepared in conformity with generally accepted accounting principles applied on a consistent basis; except as may otherwise be set forth in the Official Statement, since the respective dates as of which information is given in the Official Statement, the Authority has not incurred any material liabilities or obligations except in the ordinary course of its operations; and there has not been any material adverse change or any development involving a prospective material adverse change in or affecting its general affairs, management, financial position or results of operations from those set forth in the audited financial statements contained in the Official Statement or the unaudited financial statements attached hereto.

(i)   As of the date hereof and on the Closing Date, the information contained in the Official Statement with respect to projections, including specifically the projections contained under the heading "Transportation System Revenues and Expenditures – Projected 1968 Resolution Revenues and 1998 Resolution Revenues", (i) have been reviewed and discussed with Roy Jorgensen Associates, Inc., Traffic Engineers to the Authority; and (ii) accurately reflect the Authority's projections, and such projections are reasonable in light of the Authority's past experience and present expectations as to the course of future events as the same are anticipated to affect the business and prospects of the Authority.

(j)   There is no action, suit, proceeding, inquiry or investigation, at law or in equity, before or by any court or public board or body, pending or, to the knowledge of the Authority, threatened against the Authority (1) in any way contesting or affecting the corporate existence or powers of the Authority or titles of its officers to their respective offices, (2) seeking to prohibit, restrain or enjoin the issuance, offering, sale or delivery of any of the Bonds or the refunding of the Refunded Bonds, the adoption or performance of the Resolution or the execution, delivery or performance of any of the Documents, or the application of the proceeds of the Bonds, (3) in any way contesting or affecting any authority for the issuance, offering, sale or delivery of any of the Bonds or the adoption or performance of the Resolution, (4) in any way contesting or affecting the validity or enforceability of the Resolution, the Bonds or any of the Documents or the execution, delivery or performance of the Documents, the application of the proceeds of the Bonds or the payment, collection or application of revenues or the pledge thereof pursuant to the Resolution or (5) in any way contesting the completeness or accuracy of the Official Statement nor, to the knowledge of the Authority, is there any basis therefor, wherein an unfavorable decision, ruling or finding would materially adversely affect the issuance, offering, sale or delivery of the Bonds or the refunding of the Refunded Bonds, the validity or enforceability of the

8

Resolution, the Bonds or any of the Documents, the application of the proceeds of the Bonds, or the payment, collection or application of revenues or the pledge thereof pursuant to the Resolution; and the Authority agrees to advise the Representative forthwith of the institution of any litigation and any proceedings by any governmental agency or other person affecting the use of the Official Statement in connection with the initial sale and distribution of the Bonds of which it has notice.

(k)   The Authority has not issued, assumed or guaranteed any indebtedness, incurred any material liabilities, direct or contingent, or entered into any contract or arrangement of any kind payable from or secured by a pledge of the 1998 Resolution Revenues or the 1968 Resolution Revenues except as set forth in the Official Statement.

(l)   The Authority will, if necessary, furnish such information, execute such instruments and take such other reasonable action in cooperation with the Underwriters as the Representative may deem necessary in order to qualify the Bonds for offer and sale under the blue sky or other securities laws and regulations of such jurisdictions as the Representative may designate and determine the eligibility of the Bonds for investment under the laws of such states and other jurisdictions; provided, however, that the Authority shall not be required to execute a general consent to service of process or qualify to do business in connection with any such qualification or determination in any such jurisdiction; and the Authority will use its best efforts to continue such qualifications in effect so long as required for the distribution of the Bonds.

(m)   The Bonds, the Resolution, the CD Agreement, the Swap Agreement, the Standby Agreement, the Remarketing Agreement and the Escrow Deposit Letter conform to the descriptions thereof contained in the Official Statement, and the Bonds, when sold to the Underwriters as provided herein and issued and delivered in accordance with the Resolution, will be validly issued and outstanding obligations of the Authority entitled to the benefits of the Resolution; and any references to and summaries of the Bonds, the CD Agreement, the Escrow Deposit Letter and the Resolution contained in the Official Statement fairly reflect the provisions thereof.

(n)   The Preliminary Official Statement, as of its date, did not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and at the time of the Authority's acceptance hereof and, subject to the provisions of subsection (u) of this Section 4, at all subsequent times to and including the Closing Date, the Official Statement does not and will not contain any untrue statement of a material fact or omit to state a material fact required to be included therein for the purpose for which the Official Statement is to be

9

used or which is necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading.  The representations and warranties contained in this paragraph shall not apply to any statements or omissions made in reliance upon and in conformity with information furnished in writing by or on behalf of the Underwriters expressly for use in the Official Statement.

(o)   As of its date, the Preliminary Official Statement was deemed "final" by the Authority for purposes of paragraph (b)(1) of the Rule, and omitted therefrom only such information permitted to be omitted therefrom by the Rule.

(p)   If the Official Statement is supplemented or amended pursuant to subsection (t) of this Section 4, at the time of each supplement or amendment thereto and (unless subsequently supplemented or amended pursuant to such subsection) at all subsequent times to and including the Closing Date, the Official Statement, as so supplemented or amended, will not contain any untrue statement of a material fact or omit to state a material fact required to be included therein for the purpose for which the Official Statement, as supplemented or amended, is to be used or which is necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(q)   The Authority will apply the proceeds from the sale of the Bonds as provided in and subject to all of the terms and conditions of the Resolution and will not take or omit to take any action which action or omission will adversely affect the exclusion from gross income for federal income tax purposes of the interest on the Bonds.

(r)   The Authority will not offer or issue any bonds, notes or other obligations for borrowed money and will not incur any material liabilities, direct or contingent, between the date of this Purchase Contract and the Closing Date without the prior written consent of the Representative; and the Authority further agrees that there will not be any adverse change of a material nature in the financial position, results of operations or condition, financial or otherwise, of the Authority, in either case, other than in the ordinary course of business.

(s)   The Authority will advise the Underwriters immediately of its receipt of any notification with respect to the suspension of the qualification of the Bonds for sale in any jurisdiction or the initiation or threat of any proceeding for that purpose.

(t)   If between the date of this Purchase Contract and the date which is twenty-five (25) days from the end of the underwriting period (as such term is defined in paragraph (f)(2) of the Rule) any event shall occur or shall exist which would or might cause the

10

Official Statement, as then supplemented or amended, to contain any untrue statement of a material fact or to omit to state a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, the Authority shall notify the Representative thereof, and if in the reasonable opinion of the Representative such event requires the preparation and publication of a supplement or amendment to the Official Statement, the Authority will at its expense supplement or amend, or cause to be supplemented or amended, the Official Statement in a form and in a manner approved by the Representative, and provide the Underwriters with sufficient copies of such supplement or amendment as the Representative may reasonably request so as to enable the Underwriters to comply with the provisions of paragraph (b)(4) of the Rule. The Authority shall be under no obligation to determine whether the number of copies requested by the Representative of any amendment of or supplement to the Official Statement pursuant to the preceding sentence shall be sufficient to enable the Underwriters to comply with the requirements of the Rule. The Representative shall promptly notify the Authority in writing of the end of the underwriting period.

(u)   The transfer of monies, if any, from the 1968 Reserve Account to the Fiscal Agent for deposit in the Escrow Deposit Trust Fund is permitted by the 1968 Resolution and, upon the deposit of such monies, Bond proceeds and any other monies legally available therefor in the Escrow Deposit Trust Fund in accordance with the terms of the Resolution, the Refunded Bonds will no longer be deemed to be outstanding under the provisions of the Resolution.

**5.   Conditions to the Obligations of the Underwriters.**   The obligations of the Underwriters are subject to the accuracy of the representations and warranties of the Authority herein, to the accuracy of the statements of officers of the Authority made pursuant to the provisions hereof, to the performance by the Authority of its obligations hereunder to be performed at or prior to the Closing Date and to the following additional conditions precedent:

(a)   At the Closing, the Resolution and the Documents shall each be in full force and effect and shall not have been amended, modified or supplemented except as may have been agreed to in writing by the Representative, and there shall have been taken in connection therewith and in connection with the issuance of the Bonds all such action as, in the opinion of Brown & Wood LLP, Bond Counsel, or Pietrantoni Méndez & Alvarez, Counsel to the Underwriters, shall be necessary in connection with the transactions contemplated hereby (and the Authority shall have furnished to such counsel all documents and information that they may reasonably request to enable them to pass upon such matters), (ii) the Official Statement shall not have been amended, modified or supplemented, except as may have been agreed to in writing by the Representative, (iii) no Underwriter shall have discovered and disclosed to the Authority on or prior to the Closing

11

Date that the Official Statement or any amendment or supplement thereto contains an untrue statement of a fact that in the opinion of Pietrantoni Méndez & Alvarez, Counsel to the Underwriters, is material or omits to state a fact that in the opinion of such Counsel is material and is necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, (iv) the Authority shall perform or have performed all of its obligations under or specified in the Resolution or the Escrow Deposit Letter to be performed at or prior to the Closing, and (v) the Bonds shall have been duly authorized, executed, authenticated and delivered.

(b)   On or prior to the Closing Date,

(1)   The market price of the Bonds or the market price of obligations issued by the Commonwealth or agencies, instrumentalities or political subdivisions thereof, or the market price of obligations of the character of the Bonds, shall not have been materially and adversely affected (in the reasonable opinion of the Representative) by reason of the fact that (A) legislation shall have been introduced or enacted by the legislature of the Commonwealth or by the Congress of the United States or legislation pending in the Congress of the United States shall have been amended, or legislation shall have been recommended to the Congress or otherwise endorsed for passage (by press release, other form of notice or otherwise) by the President of the United States, the Treasury Department of the United States, the Internal Revenue Service or the Chairman or ranking minority member of the Committee on Finance of the United States Senate or the Committee on Ways and Means of the United States House of Representatives, or legislation shall have been proposed for consideration by either such Committee by any member thereof or presented as an option for consideration by either such Committee by the staff of such Committee or by the staff of the Joint Committee on Taxation of the Congress of the United States, or legislation shall have been favorably reported for passage to either House of the Congress of the United States by any Committee of such House to which such legislation has been referred for consideration (other than as described in the Official Statement), or (B) a decision shall have been rendered by a court of the United States, or the United States Tax Court, or (C) an order, ruling or official statement shall have been made or regulation shall have been proposed or made by the Treasury Department of the United States or the Internal Revenue Service, or other governmental agency, in each such case with the purpose or effect, directly or indirectly, of including in gross income for Federal income tax purposes, or of permitting the imposition of state, Commonwealth or local taxation upon, such interest as would be received by any holders of the Bonds or upon such income as will after the Closing Date be received by the Authority;

12

(2)   None of the following shall have occurred: (A) any outbreak of hostilities or other national or international calamity or crisis, or (B) a general suspension of trading on the New York Stock Exchange or other national securities exchange, or minimum or maximum prices for trading shall have been fixed and in force, or maximum ranges for prices for securities shall have been required and in force, on the New York Stock Exchange or other national securities exchange, whether by virtue of a determination by that exchange or by order of the Securities and Exchange Commission or any other governmental authority having jurisdiction, or the New York Stock Exchange or other national securities exchange, or any governmental authority, shall impose any material restrictions not now in force or being enforced with respect to the Bonds or obligations of the general character of the Bonds or securities generally, or shall materially increase any restrictions now in force, including those relating to the extension of credit by, or charges to the net capital requirements of underwriters, or (C) a general banking moratorium shall have been declared by Federal, New York or Commonwealth authorities having jurisdiction, or (D) any event which in the reasonable opinion of the Representative either makes untrue or incorrect in any material respect any statement or information contained in the Official Statement delivered pursuant to this Purchase Contract or any supplement or amendment thereto or is not reflected therein or in any such supplement or amendment thereto but should be reflected therein in order to make the statements and information contained therein not misleading in any material respect, in each such case the effect of which, in the reasonable judgment of the Representative, would make it impracticable or inadvisable to proceed with the public offering or delivery of the Bonds on the terms and in the manner contemplated in the Official Statement or the Official Statement as so supplemented or amended and this Purchase Contract (it being understood that the Underwriters' rights under clause (D) of this paragraph (2) shall not be limited by Section 4(t) hereof), or (E) any extraordinary event affecting current national or international economic, financial or other conditions or affecting the Authority, which, in the reasonable opinion of the Representative, materially adversely affects the market for the Bonds or the sale, at the contemplated offering prices, by the Underwriters of the Bonds, or (F) legislation shall be enacted, proposed or actively considered for enactment, or a decision by a court of the United States shall be rendered, or a ruling, regulation, proposed regulation by or on behalf of the Securities and Exchange Commission or other governmental agency having jurisdiction over the subject matter shall be made, to the effect that the Bonds or any securities of the Authority are not exempt from the registration, qualification and other requirements of the Securities Act of 1993, as amended, or of the Trust Indenture Act of 1939, as amended, or would be in violation of any provision of the federal securities laws, or (G) a financial crisis or

13

a default shall have occurred with respect to the debt obligations of the Authority or the Commonwealth or any political subdivision thereof, or (H) any rating of the Bonds shall have been downgraded or withdrawn by Moody's or S&P, and such action, in the reasonable opinion of the Representative, materially adversely affects the market for the Bonds or the sale, at the contemplated offering prices, by the Underwriters of the Bonds; and

(3)   No order, decree or injunction of any court of competent jurisdiction, or any judicial proceeding, or any order, ruling, regulation or administrative proceeding by any governmental body or board shall have been issued or commenced, nor shall any legislation have been enacted, with the purpose or effect of prohibiting the issuance, offering or sale of the Bonds as contemplated hereby or by the Official Statement or the performance by the Authority of its obligations under the Bonds, the Resolution or the Documents, in each case in accordance with their respective terms, and all authorizations, approvals, consents and orders of governmental bodies or boards required in connection therewith shall have been obtained.

(c)   On or prior to the Closing Date, the Underwriters shall have received the following:

(1)   (A) The unqualified approving opinion, dated the Closing Date, of Brown & Wood LLP ("Bond Counsel") relating to the Bonds, in substantially the form included as Appendix IV to the Official Statement; (B) an opinion, dated the Closing Date, of Bond Counsel, addressed to the Underwriters, and in form and substance satisfactory to the Representative, as to the treatment of original issue discount or premium, if any, on the Bonds for federal income tax purposes; and (C) a supplemental opinion, dated the Closing Date, of Bond Counsel, addressed to the Underwriters and in form and substance satisfactory to the Representative, to the effect that (i) each of the Documents has been duly authorized, executed and delivered by the Authority and is a legal, valid and binding obligation, enforceable in accordance with its terms (provided that such opinion may contain the customary exceptions regarding bankruptcy and equitable principles), (ii) the Bonds, the Resolution, the CD Agreement, the Standby Agreement, the Remarketing Agreement, the Swap Agreement and the Escrow Deposit Letter conform with the terms and provisions thereof summarized in the Official Statement, (iii) the information in the Official Statement with respect to legal matters relating to the creation of the Authority and its powers, the Bonds and the security therefor, the Resolution, the CD Agreement, the Swap Agreement, the Standby Agreement, the Remarketing Agreement, the Escrow Deposit Letter, the constitutional provisions and statutes referred to in the Official Statement, including, without limitation, the constitutional provisions and statutes regarding the public debt of the

14

Commonwealth, and the information included in the section "Tax Exemption" in the Official Statement, are correct and, to their knowledge, the Official Statement does not omit any statement concerning such information which should be included or referred to therein, said opinion, however, not being required to cover the financial or statistical information contained or incorporated by reference in the Official Statement, (iv) it is not necessary in connection with the public offering and sale of the Bonds to register any security under the Securities Act of 1933, as amended, or to qualify any indenture under the Trust Indenture Act of 1939, as amended; and stating that the Underwriters may rely on the opinion of Bond Counsel mentioned in (A) above as if the same were addressed to them, and (v) upon the issuance of the Bonds and the application of the proceeds thereof in accordance with the Resolution and the Escrow Deposit Letter, the Refunded Bonds will no longer be deemed to be outstanding under the provisions of the 1968 Resolution and will cease to be entitled to any lien, benefit or security under the 1968 Resolution.

(2) An opinion, dated the Closing Date, of the General Counsel to the Authority, addressed to the Underwriters and in form and substance satisfactory to the Representative, to the effect that (A) the Authority is a duly constituted and validly existing body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth; (B) the Resolution has been duly adopted and constitutes a legal, valid and binding obligation of the Authority enforceable in accordance with its terms, and the Documents have been duly authorized, executed and delivered by the Authority and constitute legal, valid and binding obligations of the Authority enforceable in accordance with their respective terms (provided that such opinion may contain the customary exceptions regarding bankruptcy and equitable principles); (C) the Bonds have been duly authorized and issued and constitute legal, valid and binding obligations of the Authority enforceable in accordance with their terms and all conditions precedent to the delivery of the Bonds have been fulfilled; (D) provision having been made for the payment of the principal of and redemption premium, if any, on the Refunded Bonds and the interest thereon in accordance with the terms of the 1968 Resolution, the Refunded Bonds and no longer outstanding under the 1968 Resolution; (E) the Authority has approved the Official Statement and authorized the execution and distribution thereof; (F) such counsel knows of no action, suit, proceeding, inquiry or investigation, at law or in equity, before or by any court or public board or body pending or threatened against the Authority (i) in any way contesting or affecting the corporate existence or powers of the Authority or titles of its officers to their respective offices, (ii) seeking to prohibit, restrain or enjoin the issuance, offering, sale or delivery of any of the Bonds, the adoption or performance of the Resolution or the

15

execution, delivery or performance of any of the Documents, (iii)
in any way contesting or affecting any authority for, or the
validity or enforceability of, the issuance, offering, sale or
delivery of any of the Bonds, the adoption or performance of
the Resolution or the execution, delivery or performance of the
Documents, the application of the proceeds of the Bonds or the
payment, collection or application of revenues or the pledge
thereof pursuant to the Resolution, (iv) in any way contesting
the completeness or accuracy of the Official Statement, or
(v) which if adversely determined could materially adversely
affect (1) the financial position of the Authority, (2) the
security for the Bonds, or (3) the transactions contemplated
by the Bonds, the Resolution and the Documents; (G) the adoption,
issuance or execution and delivery, respectively, by the Authority
of the Resolution, the Bonds and the Documents and compliance
with the provisions thereof in the circumstances contemplated
hereby, do not and will not conflict with or constitute on the
part of the Authority a breach of or default under any applicable
law (including, without limitation, any administrative rule-making
law) or administrative regulation of the Commonwealth or the
United States or any applicable judgment or decree or any loan
agreement, note, resolution, agreement or other instrument to
which the Authority is a party or otherwise subject; (H) such
counsel has rendered legal advice and assistance to the Authority
in the course of, and has participated in, the preparation of
the Official Statement and, based upon such participation, such
counsel is of the opinion that the information contained in the
Official Statement under the headings "The Authority -- Employee
Relations" and "Litigation" as of its date and at all subsequent
times to and including the Closing Date did not and does not
contain any untrue statement of a material fact or omit any
material fact required to be included therein for the purpose
for which the Official Statement is to be used or which is
necessary to make the statements made therein, in the light of
the circumstances under which they were made, not misleading,
and the Authority is not unreasonable in its opinion that any
litigation (whether or not described in the Official Statement)
which is pending or threatened against the Authority, and of
which such counsel is aware (after due inquiry), is litigation
unlikely to have a material adverse effect on its operations
and financial condition; (I) the ultimate disposition of the
various lawsuits in which the Authority is involved will not
have a material adverse effect on the financial position or
operations of the Authority; and (J) in addition, such counsel
has no reason to believe that the Official Statement or any
amendment or supplement thereto, as of its date and at all
subsequent times to and including the Closing Date, contained
or contains any untrue statement of a material fact or omitted
or omits to state any material fact required to be included
therein for the purpose for which the Official Statement is to
be used or which is necessary in order to make the statements

16

contained therein, in the light of the circumstances under which they were made, not misleading, it being understood that such counsel need express no opinion as to information contained in Appendices to the Official Statement or incorporated therein by reference or in any amendment or supplement thereto (other than information regarding the Authority and the Bonds), as to financial or statistical information contained or incorporated by reference in the Official Statement or in any amendment or supplement thereto, as to information relating to the Bond Insurer and its municipal bond insurance policy issued in connection with the Insured Bonds and as to information furnished by the Representative in writing expressly for use in the Official Statement or in any amendment or supplement thereto.

(3)   An opinion, dated the Closing Date, of Pietrantoni Méndez & Alvarez, counsel to the Underwriters, addressed to the Underwriters, in form satisfactory to the Representative, to the effect that it is not necessary in connection with the public offering and sale of the Bonds to register any security under the Securities Act of 1933, as amended, or to qualify any indenture under the Trust Indenture Act of 1939, as amended. In addition, such counsel shall state in their letter containing the foregoing opinion that, without having undertaken to determine independently the accuracy or completeness of the statements contained in the Official Statement, nothing has come to their attention which leads them to believe that the Official Statement (except for Appendices II and III thereto, the information relating to the Bond Insurer and the municipal bond insurance policy issued in connection with the Insured Bonds and any financial and statistical data contained or incorporated by reference in the Official Statement, as to which no view need be expressed), as of the date thereof and at the Closing Date, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact required to be included therein for the purpose for which the Official Statement is to be used or which is necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(4)   A certificate, dated the Closing Date, signed by the Executive Director of the Authority and the Secretary of the Department of Transportation and Public Works of the Commonwealth (the "Secretary") to the effect that no action, suit, proceeding or investigation at law or in equity before or by any court or public board or body is pending or, to their knowledge, threatened (A) in any way contesting or affecting the corporate existence or powers of the Authority or titles of its officers to their respective offices, (B) seeking to prohibit, restrain or enjoin the issuance, offering, sale or delivery of any of the Bonds, the adoption or performance of the Resolution or the execution, delivery or performance of any of the Documents, the application

of the proceeds of the Bonds or the payment, collection or application of revenues or the pledge thereof pursuant to the Resolution, (C) in any way contesting or affecting any authority for the issuance, offering, sale or delivery of any of the Bonds, the adoption or performance of the Resolution or the execution, delivery or performance of the Documents, the application of the proceeds of the Bonds or the payment, collection or application of revenues or the pledge thereof pursuant to the Resolution, (D) in any way contesting or affecting the validity or enforceability of the Resolution, the Bonds or any of the Documents or (E) in any way contesting the completeness or accuracy of the Official Statement, wherein an unfavorable decision, ruling or finding would materially adversely affect the issuance, offering, sale or delivery of the Bonds, the validity or enforceability of the Resolution, the Bonds or any of the Documents, the application of the proceeds of the Bonds, or the payment, collection or application of revenues or the pledge thereof pursuant to the Resolution. The Representative in its discretion may accept such certificate with an exception therein respecting any litigation disclosed in such certificate accompanied by an opinion of Bond Counsel or other counsel acceptable to the Representative, which opinion shall be acceptable to the Representative as to form and substance, to the effect that the issues in such litigation are without substance and that the contentions of the plaintiffs therein are without merit.

(5)   A certificate, dated the Closing Date, of the Secretary and a principal financial or accounting officer of the Authority in which the Secretary and such officer shall state that, to their knowledge after reasonable investigation, (A) the representations and warranties of the Authority in this Purchase Contract are true, accurate and correct, (B) the Authority has complied with and performed all agreements, covenants and arrangements and satisfied all conditions on its part to be complied with, performed or satisfied hereunder at or prior to the Closing Date, (C) subsequent to the date of the most recent financial statements of the Authority in the Official Statement, there has been no material adverse change in the financial position or results of operations of the Authority except as set forth in or contemplated by the Official Statement or the letters required to be delivered under Section 5(c)(12) of this Purchase Contract or except as described in such certificate and (D) in connection with the information contained in the Official Statement as to the Authority nothing has come to their attention that would lead them to believe that the Official Statement or any amendment or supplement thereto as of its date and all subsequent times to and including the Closing Date, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact required to be included therein for the purpose for which the Official Statement

18

to be used or which is necessary in order to make the Statements contained therein, in the light of the circumstances under which they were made, not misleading.

(6)   A certificate, dated the Closing Date, of the Secretary of the Treasury of the Commonwealth (the "Secretary of the Treasury") to the effect that (A) she has examined the Official Statement and, to her knowledge after reasonable investigation, as of its date and at all subsequent times to and including the Closing Date, the information set forth under the captions "The Bonds--Security for the Bonds--*Prior Payment of Full Faith and Credit Obligations of the Commonwealth*" and in Appendix I and in the general purpose financial statements of the Commonwealth for the fiscal year ended June 30, 1997, which are incorporated by reference in the Official Statement, did not and does not contain any untrue statement of a material fact or omit to state any material fact required to be included therein for the purpose for which the Official Statement is to be used or which is necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading, (B) as of the Closing Date, except as contemplated by the Official Statement, there has been no material adverse change in the condition of the Commonwealth, financial or otherwise, since June 30, 1997, and (C) as of the Closing Date, the Commonwealth is not in default under the provisions of any agreement or of any instrument evidencing or relating to any outstanding indebtedness or other obligation for borrowed money of the Commonwealth or any Commonwealth guaranty as to indebtedness or other obligation for borrowed money of others. In giving such certificate, the Secretary of the Treasury may rely, after reasonable investigation, as to information relating to and provided by governmental agencies or departments other than the Department of the Treasury, upon information furnished by such agencies or departments, provided that the Secretary of the Treasury shall state that she has made such reasonable investigation and he believes that she is justified in so relying.

(7)   A Certificate, dated the Closing Date, of the President, any Executive Vice President or any Senior Vice President of the Bank confirming clause (A) of the certificate of the Secretary of the Treasury referred to in the preceding subparagraph (6) as to all statements contained in Appendix I to the Official Statement under the heading "PUBLIC CORPORATIONS". In giving such certificate, the signer of such certificate may rely, after reasonable investigation, as to information relating to and provided by public corporations other than the Bank and its subsidiaries, upon information furnished by such public corporations, provided that such officer shall state that he has made such reasonable investigation and he believes that he is justified in so relying.

19

(8)   A letter, dated the Closing Date, of Roy Jorgensen Associates, Inc., stating that it consents to the references to it in the Official Statement and to the inclusion in the Official Statement of its letter relating to the five-year priorities construction program of the Authority.

(9)   A manually signed copy of the letter of Roy Jorgensen Associates, Inc. in the form of Appendix IV to the Official Statement.

(10) Letters, dated the date hereof and the Closing Date, of Ernst & Young LLP confirming that they are public accountants and are independent with respect to the Authority within the meaning of Rule 101 of the Code of Professional Ethics of the American Institute of Certified Public Accountants and stating in effect that they consent to the references to them under the heading "Miscellaneous" in the Official Statement.

(11) Evidence of ratings in full force and effect on the Closing Date, of "Baa1" by Moody's Investors Service and "A" by Standard & Poor's Ratings Services on the Bonds without giving effect to the insurance provided by the Bond Insurer and evidence of ratings in full force and effect on the Closing Date, of "Aaa" by Moody's Investors Service and "AAA" by Standard & Poor's Ratings Services on the Insured Bonds.

(12) Letters dated the date hereof and the Closing Date, of Ernst & Young, LLP in substantially the form attached hereto as Exhibit A.

(13) An executed copy of the Escrow Deposit Letter.

(14) An executed copy of the CD Agreement.

(15) A letter, addressed and in form and substance satisfactory to the Underwriters dated the Closing Date, from Deloitte & Touche LLP, verifying the accuracy of the computations as to the sufficiency of the monies held to the credit of the Escrow Deposit Trust Fund (together with investment earnings thereon) to pay the Refunded Bonds when due.

(16) The insurance policy issued by the Bond Insurer for the Insured Bonds and such certificates of, and opinions of counsel to the Bond Insurer as the Representative may request.

(17) An executed copy of the Swap Agreement.

(18) An executed copy of the Standby Agreement.

(19) An executed copy of the Remarketing Agreement.

20

(20) Such additional certificates, instruments and other documents as the Representative may reasonably request to evidence the truth and accuracy as of the Closing Date of the representations and warranties of the Authority contained herein and the due performance or satisfaction by the Authority at or prior to the Closing Date of all agreements to have been or then to be performed and all conditions to have been or then to be satisfied by the Authority.

If the Authority shall be unable to satisfy the conditions to the obligations of the Underwriters contained in this Purchase Contract, or if the obligations of the Underwriters to purchase, accept delivery of and pay for the Bonds shall be terminated for any reason permitted by this Purchase Contract, this Purchase Contract shall terminate and neither the Underwriters nor the Authority shall have any further obligations or liabilities hereunder except for the return of the security deposit and except as otherwise provided in Section 7.

**6.    Indemnification**. (a) The Authority shall, to the extent permitted by law, indemnify and hold harmless the Underwriters and each person, if any, who controls any Underwriter within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended (the "Acts"), against any and all losses, claims, damages or liabilities, joint or several, to which such Underwriters or such controlling persons may become subject, under either of the Acts or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement or alleged untrue statement of any material fact contained in the Official Statement, or any amendment or supplement thereto, or arise out of or are based upon the omission or alleged omission to state therein a material fact required to be included therein for the purpose for which the Official Statement is to be used or which is necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading; and shall reimburse each Underwriter and each such controlling person for any legal or other expenses reasonably incurred by such Underwriter or such controlling person in connection with investigating or defending any such loss, claim, damage, liability or action; provided, however, that the Authority will not be liable in any such case to the extent that any such loss, claim, damage or liability arises out of or is based upon an untrue statement or omission or alleged untrue statement or omission made in any of such documents in reliance upon and in conformity with written information furnished to the Authority by any Underwriters through the Representative specifically for use therein. Notwithstanding the foregoing, the Underwriters shall not make any claim under this Section 6(a) in an aggregate amount of less than $100,000. This indemnity agreement will be in addition to any liability which the Authority may otherwise have.

21

(b) Each Underwriter shall, to the extent permitted by law, indemnify and hold harmless the Authority against any and all losses, claims, damages or liabilities to which the Authority may become subject, under either of the Acts or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement of any material fact contained in the Official Statement or any amendment or supplement thereto, or arise out of or are based upon the omission or the alleged omission to state therein a material fact required to be included therein for the purpose for which the Official Statement is to be used or which is necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading, in each case to the extent, but only to the extent, that such untrue statement or alleged untrue statement or omission or alleged omission was made in reliance upon and in conformity with written information furnished to the Authority by such Underwriters through the Representative specifically for use therein; and shall reimburse any legal or other expenses reasonably incurred by the Authority in connection with investigating or defending any such loss, claim, damage, liability or action. This indemnity agreement will be in addition to any liability which such Underwriters may otherwise have. The Authority accepts that the only information provided by the Underwriters to the Authority for use in the Official Statement is the information appearing under "Underwriting".

(c) Promptly after receipt by an indemnified party under this Section of notice of the commencement of any action, such indemnified party shall, if a claim in respect thereof may be made against the indemnifying party under this Section, notify the indemnifying party of the commencement thereof; but the omission so to notify the indemnifying party shall not relieve it from any liability which it may have to any indemnified party otherwise than under this Section. In case any such action is brought against any indemnified party, and it notifies the indemnifying party of the commencement thereof, the indemnifying party shall be entitled to participate therein and, to the extent that it may wish, jointly with any other indemnifying party similarly notified, to assume the defense thereof, with counsel satisfactory to such indemnified party, unless such indemnified parties reasonably object to such assumption on the ground that there may be legal defenses available to them which are different from or in addition to those available to such indemnifying party. If any indemnifying party assumes the defense of such action, the indemnifying parties shall not be liable for any fees and expenses of counsel for the indemnified parties incurred thereafter in connection with such action. In no event shall the indemnifying parties be liable for the fees and expenses of more than one counsel for all indemnified parties in connection with any one action or separate but similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances.

22

**7. Survival of Certain Representations and Agreements**. The respective representations, agreements, warranties, covenants and other statements of the Authority, its officers, the Underwriters and others set forth in or made pursuant to this Purchase Contract will remain in full force and effect, regardless of any investigation or statement as to the results thereof, made by or on behalf of any Underwriters or the Authority and will survive delivery of and payment for the Bonds. If this Purchase Contract is terminated pursuant to Section 5 or if for any reason the purchase of the Bonds by the Underwriters is not consummated, the Authority and the Underwriters shall remain responsible, respectively, for the expenses to be paid or reimbursed by them pursuant to Section 4(b) and the respective obligations of the Authority and the Underwriters pursuant to Section 6 shall remain in effect.

**8. Continuing Disclosure**. (i) The Commonwealth and the Authority have each covenanted to file within 305 days after the end of each fiscal year, beginning with its fiscal year ending on June 30, 1998, core financial information for the prior fiscal year, including its audited financial statements together with material historical quantitative data on its revenues, expenditures, financial operations and indebtedness generally found in the Official Statement (the "Annual Information") and (ii) the Authority has covenanted to provide in a timely manner, notices of the occurrence of certain enumerated events described in the CD Agreement. These covenants have been made in order to assist the Underwriters in complying with paragraph (b)(5) of the Rule. The Annual Information will be filed with each nationally recognized municipal securities information repository and with any Commonwealth state information depository. The notices of material events will be filed with each nationally recognized municipal securities information repository or with the Municipal Securities Rulemaking Board and with any Commonwealth state information depository.

**9. Notices**. Any notice or other communication to be given to the Authority under this Purchase Contract may be given by delivering the same in care of Government Development Bank for Puerto Rico, Minillas Government Center, Stop 22, De Diego Avenue, Santurce, Puerto Rico 00940, Attention: President, and any such notice or other communication to be given to the Underwriters may be given by delivering the same in care of Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, World Financial Center, North Tower, 250 Vesey Street, 9th Floor, New York, New York 10281, Attention: Eugenio Mendoza.

**10. Successors**. This Purchase Contract will inure to the benefit of and be binding upon the parties hereto, their respective successors and the controlling persons referred to in Section 6, and no other person will have any right or obligation hereunder.

23

**11.  Counterparts**.  This Purchase Contract may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

**12.  Severability**.  The parties hereto agree that if any of the provisions contained in this Purchase Contract shall be determined invalid, unlawful or unenforceable to any extent, such provisions shall be deemed modified to the extent necessary to render such provisions enforceable. The parties hereto further agree that this Purchase Contract shall be deemed severable, and the invalidity, unlawfulness or unenforceability of any term or provision thereof shall not affect the validity, legality or enforceability of this Purchase Contract or of any term provision hereof.

**13.  Governing Law**.  This Purchase Contract shall be governed by and construed and enforced in accordance with the laws of the state of New York.

Very truly yours,

**MERRILL LYNCH CO.**
**MERRILL LYNCH, PIERCE, FENNER**
**& SMITH INCORPORATED**

By: _____
Title: _____ Managing Director


Accepted:  February 26, 1998


**PUERTO RICO HIGHWAYS AND**
**TRANSPORTATION AUTHORITY**


By: _____
Title: Executive Director


FJM023.IRN

**SCHEDULE I**

Merrill Lynch, Pierce, Fenner
    & Smith Incorporated
Bear, Stearns & Co. Inc.
Goldman, Sachs & Co.
Morgan Stanley & Co. Incorporated
PaineWebber Incorporated
Raymond James & Associates, Inc.
JP Morgan Securities Inc.
Prudential Securities Incorporated
Samuel A. Ramírez & Co., Inc.
Smith Barney Inc.

FJM023.IRN