**<u>EXHIBIT A</u>**

CERTIFIED TRANSLATION

1                                    Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

OPINION OF THE COURT

**NOTE:** THIS DOCUMENT CONSTITUTES AN OFFICIAL DOCUMENT OF THE SUPREME COURT THAT IS SUBJECT TO THE CHANGES AND CORRECTIONS OF THE PROCESS OF COMPILATION AND OFFICIAL PUBLICATION OF THE DECISIONS OF THE COURT. ITS ELECTRONIC DISTRIBUTION IS DONE AS A PUBLIC SERVICE TO THE COMMUNITY.

**IN THE SUPREME COURT OF PUERTO RICO**

Yiyi Motors, Inc., *petitioner* v. Commonwealth of Puerto Rico, Secretary of the Treasury, and Secretary of Transportation and Public Works, *respondent*

*Number*: CC-2004-675                              *Decided on*: October 14, 2009

Court of Appeals (San Juan Judicial Region) *Reporting Judge, Hon. Dora T. Peñagarícano Soler*.

Hiram Martínez López, Fernando Agrait Betancourt, Orlando H. Martínez Echevarría, *attorneys for the petitioner*; Carmen A. Riera Cintrón, *Office of the Attorney General*.

Opinion of the Court issued by Associate Judge Kolthoff Caraballo

San Juan, Puerto Rico, October 14, 2009.

"We know that when applying public law —of which tax law is a part of— one must keep in mind the general interest, but **part of that general interest consists of obtaining justice for citizens. Otherwise, what is the purpose of having courts of law and a government in general? The function of the government clearly goes beyond cleaning the streets and operating a police department. To a discernible degree, it includes doing justice**."[1]

_____

[1] <u>Talcott Inter-Amer. Corp. v. Registrador</u>, 104 D.P.R. 254, 262-263 (1975) (emphasis added).

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

OPINION OF THE COURT

Upon recognizing the authority of the Secretary of the Treasury to impose and collect local excise taxes in relation to motor vehicles imported to Puerto Rico, we must determine whether said official has the authority to collect local excise taxes on the difference between the "suggested retail price" —declared by the importer at the time of shipment— and the price at which the dealer finally sells a vehicle. If we conclude that it constitutes an imposition of local excise taxes not authorized by law, we must examine whether the extraordinary remedy of an injunction is available to challenge the action by the Secretary of the Treasury of refusing to issue a valid certification of payment of local excise taxes —which is necessary to register the vehicle in the Department of Transportation and Public Works— until payment of the illegally imposed tax is made.

**I**

On May 27, 2003, Yiyi Motors, Inc. (Yiyi Motors) filed a complaint for injunction in the Court of First Instance against the Commonwealth of Puerto Rico, the Secretary of the Treasury, and the Secretary of Transportation and Public Works. It stated that it is a dealer which acquires Nissan motor vehicles from Motorambar, Inc. (Motorambar), and that the latter is the importer or consignee of said vehicles in Puerto Rico. Based on the foregoing, it stated that when Motorambar sells it the vehicle inventory, it has already declared and paid the local excise taxes on the vehicles based on the "suggested retail price," as established by the Internal Revenue Code.[2] Furthermore, since it is a dealer that does not import vehicles, it argued that it only has the responsibility to file, with the Department of Transportation and Public Works (DTOP, acronym in Spanish), the consumer sale documents and the certification of payment of local excise taxes issued by the Department of the Treasury as evidence of payment of the local excise taxes by Motorambar, both documents, required by the DTOP for registration in the vehicle registry.

_____

[2] Sec. 2011 of the Internal Revenue Code, Law No. 120 enacted on October 31, 1994, as amended, 13 L.P.R.A. sec. 9014.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

3                                              Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

OPINION OF THE COURT

Yiyi Motors argued that, in November of 2002, the Department of the Treasury adopted a taxation procedure for motor vehicles which illegally alters the procedure established statutorily. The procedure referred to by the petitioner is the procedure for collection of taxes and subsequent issuance of the certification of payment of local excise taxes.

In relation to collection of the tax, Yiyi Motors alleged that the illegality of the procedure lies in the fact that the Department of the Treasury requires that dealers report the price at which the vehicle was sold to the consumer and, if it is higher than the suggested retail price declared by the importer at the time of shipment of the vehicle, it requires that the dealer pay local excise taxes for the resulting difference. Therefore, with respect to issuance of the certification of payment of local excise taxes, it revealed that even if the importer pays the local excise taxes based on the suggested retail price —as established by law— and shipment of the vehicle is carried out, the Secretary of the Treasury issues the above-referenced certification including a statement which clearly limits its validity, by including the following at the bottom of the document: "THIS CERTIFICATION IS NOT VALID TO REGISTER THE VEHICLE IN THE DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS."

As a result of the foregoing, the petitioner states that the only option that it has to eliminate this restriction is to pay taxes for the difference resulting between the suggested retail price and the final sale price —when the latter is higher—, which constitutes the establishment of a tax base different from the one provided in the Internal Revenue Code and, consequently, the illegal imposition of a tax. Furthermore, it stated that to the extent that the Secretary of the Treasury orders it as the dealer to pay for the resulting "tax deficiency"—without which it does not issue a valid certification of payment—, said act constitutes an illegal and ultra vires act by said official, since the Internal Revenue Code specifically provides that, in the case of imported goods that are encumbered with the payment of local excise taxes, "the person responsible for the payment

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

4                                    Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

OPINION OF THE COURT

of taxes or taxpayer shall be... [t]he consignee, if the item is directly consigned to a consignee."[3]

Based on the foregoing, Yiyi Motors requested, among other things, that the Secretary of the Treasury be ordered to desist from illegally substituting the tax base established in the Internal Revenue Code —the "suggested retail price"— to calculate the local excise taxes that the importer must pay at the time of shipment of motor vehicles. It also requested that said official be ordered to stop charging said taxes to the same as the dealer, instead of to the importer or consignee as provided by the Internal Revenue Code.

It argued that an injunction was the suitable method to compel the Secretary of the Treasury to enforce the statutory provisions in relation to taxation of motor vehicles, and thereby guarantee the exercise and continuity of its commercial operations. In relation to the aforementioned matter, the petitioner stated that the illegal actions of said official have caused it irreparable harm since, among other things, it cannot register the vehicles that it has already sold in the DTOP registry and deliver the corresponding title to its clients.[4] In short, it maintained that, in order to prevent said harm and defend its rights from the illegal modification of the tax structure by the Secretary of the Treasury, there is no legal remedy that would adequately protect it.

Following the allegations and arguments of the petitioner, the Commonwealth filed a Motion requesting dismissal and/or summary judgment. It affirmed that the actions of the Secretary of the Treasury were valid since they were in accordance with the law, and that the requirements for issuance of the extraordinary injunction remedy were not complied with since the alleged harm was limited to a financial matter

_____

[3] Sec. 2051(a)(1) of the Internal Revenue Code, supra, 13 L.P.R.A. sec. 9068(a)(1).

[4] As of May 27, 2003, the date of filing of the complaint for injunction and a Brief in support of request for injunction, Yiyi Motors alleged that it had 300 vehicles that it had already sold and were awaiting registration and accounts receivable from financial institutions in the amount of $2,000,000.00.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

### OPINION OF THE COURT

that could be compensated; therefore, the irreparable harm required for issuance of an injunction does not exist.

As to the actions of the Secretary of the Treasury, the State indicated that they were valid because, to establish the "suggested retail price" of each vehicle, the Internal Revenue Code provides that the profit margin for sales must be included. As a result, the respondent argued that, in order to consider the profit margin for sales, it is necessary to know the price at which the vehicle is sold. It maintained that it is precisely because of this that the statement of purpose of Law No. 80 enacted on October 17, 1992 —by which the suggested retail price tax base was introduced—, announced that the suggested retail price is directly established by the importer, but "by mutual agreement with the dealer."

Furthermore, the Commonwealth maintained that by virtue of the authority delegated to the Secretary of the Treasury to establish by way of regulations the rules that are necessary to apply Law No. 80, supra, the Department of the Treasury adopted the Regulations for the Implementation of Law No. 80 enacted on October 17, 1992, Regulations 5020. It indicated that it provided that, if a vehicle was sold for a price that is higher than the suggested retail price, it must be notified to the agency to determine whether the increase is subject to payment of additional local excise taxes as a result of an increase in the profit margin. It stated that, since it constitutes a regulatory provision which supplements Law No. 80, supra, the declaration of sale and payment of difference in local excise taxes is a previous requirement for issuance of a valid certification of payment of local excise taxes for registration in the DTOP.

However, it clarified that what it is stating is that when a vehicle is sold at a price that is higher than the suggested sale price as reported by the importer at the time of shipment, the latter is the one who must request the change from the agency for purposes of payment of local excise taxes. It stated that in order for the importer to be able to

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

6                                          Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

OPINION OF THE COURT

comply with said obligation, it is necessary for the dealer to notify it that the retail sale of the vehicle shall be made at a price higher than the one reported as the "suggested retail price". It revealed that it is only when the dealer fails to comply with its obligation to notify the importer of the change in the suggested retail price that it is obligated to declare the difference and make the payment.

In short, the State alleged that this requirement by the Secretary of the Treasury does not constitute an imposition of a new tax nor a modification of the tax base on which they are calculated; rather, what it has done is establish a mechanism to enforce compliance with the current legal provisions.

On the other hand, Yiyi Motors filed an opposition to the Motion requesting dismissal and/or summary judgment filed by the Commonwealth. In short, it reiterated its arguments to the effect that the action of the Secretary of the Treasury is an illegal imposition of local excise taxes and imposes payment of the taxes on the dealer, instead of on the consignee, as established by the Internal Revenue Code. It stated that there are discrepancies between Law No. 80, supra, and Regulation 5020 resulting in acts for which the Secretary of the Treasury does not have authority. To show the foregoing, it made reference to the statement of purpose of Law No. 80, supra, which reveals that the Legislative Assembly made sure that there was no intervention by the State at the time of determining the suggested retail price of a vehicle. In this regard, it stated that the law does give the Secretary of the Treasury the authority to change the suggested retail price and charge that difference to the importer only, but it has to do so before the shipment of the vehicle and in specific cases, not in a generalized manner; in addition, it must base it on a source of information duly recognized in the automobile industry of the United States of America.

After the parties submitted their allegations, the Court of First Instance issued a judgment and denied the complaint for injunction filed by Yiyi Motors. It decided that the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

### OPINION OF THE COURT

Secretary of the Treasury did not modify the tax base for calculation of local excise taxes; therefore, it had not usurped the authority or prerogatives of the Legislative Assembly by demanding payment of the tax difference which arises when a dealer sells a vehicle at a price that is higher than the suggested retail price. It stated that that could not be interpreted as an additional tax, but as a tax deficiency. However, it concluded that Yiyi Motors was right as to the fact that the Secretary of the Treasury does not have the authority to order that it pay for said deficiency, since the Internal Revenue Code provides that the payment must be made by the consignee.

As to the refusal of the Secretary of the Treasury to issue a valid certification of payment of local excise taxes, the court of first instance determined that said official has the legal authority to require the submission of a declaration of sale or any other document certifying it, and an amended declaration of local excise taxes, if the price at which the vehicle is sold is different from the suggested retail price originally reported by the importer. The court decided that the Secretary of the Treasury may refuse to issue a valid certification of payment of local excise taxes until it determines that there is no tax deficiency following the sale of the vehicle.

Following the court decision, both Yiyi Motors and the State filed motions to reconsider. The court of first instance denied both motions; however, it stated the following in its denial of the request by the Commonwealth:

The court believes that the Secretary of the Treasury has the legal authority to require that dealers of vehicles report any change in the suggested retail price. What said official cannot do is impose payment of the tax on the dealer because this is in conflict with sec. 2068 (a)(L) of the Internal Revenue Code of 1994, 13 L.P.R.A. sec. 9068 (a)(1).

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

### OPINION OF THE COURT

Since the State did not appeal this decision, the fact that Motorambar is the taxpayer in the case at bar, not Yiyi Motors, is a matter that we are not considering.

Yiyi Motors did file an appeal in the Court of Appeals alleging that the court of first instance erred when it decided that the Secretary of the Treasury is authorized to prevent the registration of vehicles —by issuing a limited certification of payment of local excise taxes— when the price at which a vehicle is sold is higher than the one declared by the importer as the suggested sale price. Furthermore, it argued that the above-referenced court erred when it concluded that the difference between the suggested retail price and the price at which the vehicle is finally sold can give rise to a tax deficiency. Lastly, it requested that the decision of the Court of First Instance to deny issuance of the extraordinary injunction remedy be revoked.

After the Attorney General stated his position in relation to the merits of the appeal filed by Yiyi Motors, the Court of Appeals issued a judgment by which it affirmed the decision of the court of first instance. It stated that the Secretary of the Treasury is authorized to require documents certifying the sale of the vehicle for the purpose of collecting the applicable local excise taxes following the sale; therefore, it may refuse to issue a valid certification of payment when it believes that taxes have not been paid in full. It concluded that the action of said official does not constitute an illegal imposition of a tax; rather, it "seeks to ensure the corresponding payment of local excise taxes on vehicles for the benefit of the treasury."

On the other hand, the appellate court found it appropriate to clarify that the term which more accurately defines the discrepancy between the prices and the paid local excise taxes would be "insufficiency of local excise taxes," since a "tax deficiency" requires a different procedure dealing with circumstances that are particularly unlike the ones present in the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

OPINION OF THE COURT

case at bar. In this regard, it decided that the Court of First Instance was right when it determined that taxes must be paid for the difference which arises when a vehicle is sold at a price that is higher than the suggested sale price, because this would mean that the total amount of corresponding local excise taxes would not be paid, which constitutes an insufficiency in the collection of taxes. Lastly, it affirmed the appealed decision as to the appropriateness of denying the injunction in view of the fact that the alleged harm would be a financial harm that can be indemnified and is not irreparable.

Unsatisfied with the judgment issued by the Court of Appeals, Yiyi Motors filed a certiorari petition in this court. It stated that the appellate court erred when it did not revoke the Court of First Instance since its judgment allows the Secretary of the Treasury to: substitute the tax base established in the Internal Revenue Code for collection of local excise taxes on imported vehicles; summarily require payment of additional taxes based on a different tax base; and prevent registration of vehicles in the DTOP until the additional tax, arising when they are sold at a price that is higher than the suggested price, is paid.

On November 5, 2004, we denied the certiorari petition. However, on December 10 of the same year we reconsidered our decision and issued the requested writ. Both parties appeared before the Court and below is our decision.[5]

II
A

According to our legal system, the law is the legal means or source that establishes the limits of the powers and

_____
[5] In this appeals stage, Motorambar petitions to intervene as amicus curiae, nevertheless we hereby deny said request as it does not allege anything that Yiyi Motors did not argue before in its appearance.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

OPINION OF THE COURT

authority of administrative agencies.[6] In view of this, we have clarified that "neither need, nor use, nor convenience can be substituted for the statute as the source of power of an administrative agency. This is why any doubts as to the existence of said power should be decided against its use."[7]

When the Legislative Assembly affirmatively delegates a specific power to an agency, the agency, in the exercise of said power, may not exceed the limits expressly or implicitly established in the statute or clearly implied thereby.[8] The Court also may not expand the scope of action that the legislature wished to establish. On the contrary, if the actions of the administrative agency exceed the powers delegated by the Legislature, courts must declare it ultra vires, and therefore, null.[9] Thus any judicial interpretation that validates exceeding the scope of power delegated to an agency entails a judicial usurpation of the prerogatives of the Legislature, which would create the effect of ignoring the most basic principles of hermeneutics.[10]

Occasionally, agencies transgress the power delegated through the enactment of regulations that, instead of implementing the public policy of a law, they go against it.

---

[6] Amieiro González v. Pinnacle Real Estate, 173 D.P.R. ___ (2008), 2008 T.S.P.R. 52, 2008 J.T.S. 73, 983; Caribe Comms., Inc. v. P.R.T.Co., 157 D.P.R. 203, 211 (2002).

[7] Raimundi v. Productora, 162 D.P.R. 215, 225 (2004) (emphasis in the original).

[8] See, Caribe Comms., Inc. v. P.R.T.Co., supra, p. 213.

[9] Amieiro González v. Pinnacle Real Estate, supra, p. 983; Caribe Comms., Inc. v. P.R.T.Co., *supra*, pp. 213-214. Acevedo v. Mun. de Aguadilla, 153 D.P.R. 788, 810 (2001); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 130 (1998).

[10] Alejandro Rivera v. E.L.A., 140 D.P.R. 538, 545 (1994); Raimundi v. Productora, supra, p. 228.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

11                                  Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

OPINION OF THE COURT

Therefore, in our role as reviewer of administrative regulations, we must enforce the basic principle that when the legislature delegates to an agency the power to enact regulations, in order for these to be valid they must not conflict with the rules established by law.[11] As such, regulations enacted to implement the enforcement of a law may supplement it, but may not conflict with it, as this would entail substituting the will of the legislature with that of the agency authorized to regulate.[12] "Stated otherwise, regulations or administrative actions that are clearly in conflict with or in contravention of the law are null and void."[13] This type of regulatory provision must give way before a legislative mandate since the text of a law must never be deemed to be modified or supplemented by the regulatory text. As such, if there is a conflict between the text of the law and its regulations, the law must prevail.[14]

B

As is well established, ―[w]hen the law is clear [and] free of ambiguity, the letter of the law must not be disregarded under the pretext of enforcing the spirit of the law." [15] Based on this mandate, when interpreting a statute we must begin by referring to the text, since "[w]hen the legislature has expressed itself with clear and unequivocal language, the text of the law is the ultimate statement of legislative will."[16] Thus, if the terms of a statute are clear and susceptible to an unquestionable interpretation according to the common meaning of its words and its grammatical construction, courts must not interpose

---

[11] P.A.C. v. P.I.P., 169 D.P.R. ____(2006), 2006 T.S.P.R. 193, 2007 J.T.S. 5, 643; Ex parte Irizarry, 66 D.P.R. 672, 676 (1946).

[12] Id.

[13] P.A.C. v. P.I.P., supra, p. 643.
[14] Id.

[15] 31 L.P.R.A. sec. 14.

[16] Silva v. Adm. Sistemas de Retiro, 128 D.P.R. 256, 269 (1991); Atiles, Admor. v. Comisión Industrial, 77 D.P.R. 16, 20 (1954).



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

12                                    Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

OPINION OF THE COURT

words or fill in omissions when interpreting it.[17] In this sense, we have established that, "[i]f the language of the statute is unequivocal, humility and judicial self-discipline requires applying the legislative will."[18]

Nevertheless, all of the laws, even those the text of which we consider "extremely clear" require interpretation.[19] Therefore, as we already stated, as to legal interpretation "[t]here is only one rule that is absolutely invariable and that is that the true will of the legislature must be discovered and enforced."[20] Thus, when performing our duty to interpret a specific provision of a statute, we should always consider what were the principles sought by the Legislative Assembly when it enacted it, such that its interpretation ensures the result that was originally intended.[21]

As to this, Bernier and Cuevas Segarra tell us that:

Under a system of separation of powers such as that which exists in Puerto Rico, the Legislative assembly has the power to enact the laws. The Judicial Power performed by courts consists of the exercise of powers to decide litigation through interpretation of a law. […] Interpreting a law in a manner that is contrary to the legislative intent would entail a judicial usurpation

---

[17] Irizarry v. Johnson & Johnson, 150 D.P.R. 155, 165 (2000).
[18] Silva v. Adm. Sistemas de Retiro, supra, p. 269; Clínica Juliá v. Sec. de Hacienda, 76 D.P.R. 509, 520 (1954).

[19] Otero de Ramos v. Srio. de Hacienda, 156 D.P.R. 876, 883-884 (2002); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 538 (1999); Vélez v. Srio. de Justicia, 115 D.P.R. 533, 544 (1984).

[20] Dorante v. Wrangler of PR, 145 D.P.R. 408, 417 (1998).

[21] J.P. v. Frente Unido I, 165 D.P.R. 445, 472 (2005); Vázquez v. A.R.Pe.,128 D.P.R. 513, 523 (1991).

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

COURT'S OPINION

## C

In relation to the interpretation of statutes imposing taxes or assessments, it is a cardinal hermeneutic principle that these are not to be interpreted extensively, but rather they should be interpreted fairly, and according to their own express terms.[22]   "The opposite would be to sanction the opprobrious and oppressive situation known historically as '*taxation without representation*.'"[23]   In other words, to move away from this canon of restrictive interpretation in those instances in which the State proposes to impose upon a citizen the collection of a tax, assessment or excise taxes at the margins of the concerned tax law's own express terms, would be to violate the basic principles of firm roots in the caselaw and the civil order.[24]

Now, "[i]t should not be forgotten that these rules of strict interpretation should be harmonized with another rule which points out that the laws which impose taxes should be reasonably interpreted, tending to carry into effect the purpose and intention of the legislator.[25] On the other hand, when the purpose to impose a tax is unclear, that is, it does not arise clearly from the law, any doubt should be resolved in favor of not imposing the tax.[26]

---

[22] Talcott Inter-Amer. Corp. v. Registrador, *supra*, at page 262.

[23] Id.

[24] See B.B.C. Realty v. Secretario Hacienda, 166 D.P.R. 498, 511 (2005).

[25] Bernier y Cuevas Segarra, *op. cit.*, at page 466.

[26] B.B.C. Realty v. Secretario Hacienda, *supra*, at page 511; Central Coloso v. Descartes, Tes., 74 D.P.R. 481, 486 (1953); Plácido Longo & Cia. v. Sancho, 50 D.P.R. 160, 163 (1936).



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

COURT'S OPINION

In this regard, citing the Supreme Court of the United States of America we have expressed:

In the interpretation of statutes imposing a tax, it is the established practice not to extend its provisions, by implication, further than the clear reach of the language used, or to broaden its scope so as to cover matters that have not been specifically included.  If any doubt exists, they are interpreted strictly against the Government and in favor of the citizen.[27]

### III

Act No. 80 of October 17, 1992, which amended the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, Act No. 5 of October 8, 1987, was approved for the purposes of modifying the tax basis on which the excise tax on vehicles brought into Puerto Rico were calculated.  Act No. 80, *supra*., established, among others, that the excise tax upon new imported vehicles would be calculated based on the "suggested consumer sales price," which substituted the prior tax system based on the weight and horsepower of said vehicles.

Later, in the year 1994, and for the purpose of integrating into a single document all tax legislation, the Legislative Assembly approved the Internal Revenue Code of 1994, Act No .120 of October 31, 1994, which repealed all prior legal rules which were contrary to its provisions. Nevertheless, this legislation incorporated the provisions of Act 80, *supra*, so that the definition of what constituted the "suggested consumer sales price" remained practically unaltered.  Thus, the new tax basis introduced by Act No. 80, *supra*, as incorporated by the Internal Revenue Code was defined as follows:

In the case of new automobiles and multiple use vehicles introduced into the Puerto Rico by distributors and authorized dealers, the suggested consumer sales price shall include the basic cost of the automobile model,

---

[27] <u>B.B.C. Realty v. Secretario Hacienda</u>, *supra*, at page 507 (citing <u>Gould v. Gould</u>, 245 U.S. 151, 153 (1917)).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

of the new vehicle and of the new multiple use vehicle including the optional factory installed equipment, plus the insurance and import freight, the sales profit margin, and the costs associated with the preparation and delivery of the vehicle.[28]

The definition remained unaltered until the Taxpayer's Justice Act of 2006, Act No. 117 of July 4, 2006, which, as relevant, introduced an insignificant change in the definition of the "suggested consumer sales price" when it included the word "Estimated" in relation to the profit margin criteria, to read:

In the case of new automobiles and multiple use vehicles introduced into Puerto Rico by distributors and authorized dealers, the suggested consumer sales price shall include the basic cost of the automobile model, of the new vehicle and of the new multiple use vehicle including the optional factory installed equipment, plus the insurance and import freight, the **estimated** sales profit margin, and the costs associated with the preparation and delivery of the vehicle.[29]

In spite of the fact that the concept of "suggested consumer sales price" as a tax basis, suffered these changes, it is Act 80, *supra*, which continues to be a statute generating a tax structure which is much simpler than the

---

[28] Sec. 2001(a)(11)(A) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9001(a)(11)(A) (amended version *infra* at 30). The only change that this definition suffered as a result of approval of the Internal Revenue Code was the exclusion of the phrase, "the equipment locally installed," as another element in determining the suggested consumer sales price.

[29] Sec. 2001 (a)(11)(A) of the Internal Revenue Code, *supra*, as amended by Art. 16 of the Taxpayer's Justice Act of 2006, Act No. 117 of July 4, 2006, 13 L.P.R.A. sec. 9001 (a)(11)(A) (Emphasis added.)

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

16

## COURT'S OPINION

previous one.[30]  It was precisely the incorporation of a uniform criteria based on which the excise taxes of the different types of new automobiles which inspired the Legislative Assembly to approve Act. 80, *supra*.  The crystal clarity of the new tax method is shown in the following fragment of the statement of motives of Act. 80, *supra*:

> The price is established directly by the importer-distributor and by mutual accord with the dealer-seller, **without any intervention on the part of extra market agents, including the State**.  A sole method for signage is established which will not lead to erroneous or arbitrary interpretations to the prejudice of consumers or [S]tate income.  In addition, **by determining the amount of the excise tax to be paid after establishing the suggested consumer sales price, the proposed system may benefit consumers since the amount of the excise tax shall not be part of the cost to the seller upon which the profit margin is imposed**.  This practice should result in relatively lower sales prices for consumers.
>
> ........
>
> **The suggested sales price on the sign shall be the basic reference point** to facilitate the consumer's determination on the motor vehicle he or she will purchase and the business he or she will sponsor.[31]

Now, in order to implement application of the new tax basis, the legislator provided the elements to consider in determining the suggested sales price, as well as what mechanism the Secretary of the Treasury has available in considering that "the suggested consumer sales price" does

---

[30] The weight and horsepower system, which was used prior to Act No. 80, supra, lent itself to ambiguous interpretation which redounded to the prejudice of the State and to consumers.

[31] 1992 (Part 1) <u>Laws of Puerto Rico</u> 389-390 (Emphasis added).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS   Doc#:7681-1   Filed:06/26/19   Entered:06/26/19 15:58:28   Desc:
Exhibit A   Page 18 of 52
Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

17

## COURT'S OPINION

not reasonably reflect the real price of the vehicle.  To that effect, Act No. 80, *supra*, as incorporated into the Internal Revenue Code, sets forth:

(1) *Determination of the suggested sales price*.— The suggested consumer sales price of the new and used automobiles **shall be determined by the importer or distributor pursuant to the provisions of this Subtitle prior to the introduction of the vehicle into Puerto Rico**. Provided, that the suggested consumer sales price for each vehicle does not necessarily have to be the same for all dealers, but **the excise tax to be paid shall be determined and paid pursuant to the suggested consumer sales price shown on the price tag affixed to the vehicle and determined by the distributor**.

(2) *Determination of the Secretary if the taxable price does not reasonably reflect the vehicle price*.—In the case that the suggested consumer sales price reported by a specific importer does not reasonably reflect the suggested consumer sales price of similar models **at the time of the vehicle's introduction to Puerto Rico, the Secretary shall determine and collect from that importer the tax fixed by this Act, using as reference any other source of information that is duly recognized by the United States automobile industry.** However, **in no case shall it be understood that this power authorizes the Secretary to substitute, as a general applicable rule, the suggested consumer sales price basis for any other alternative fiscal base, except to correct the taxable price unreasonably determined by the importer in that particular case.**

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

18

COURT'S OPINION

The determination of the Secretary shall be presumed to be correct without impairment to the provisions established in Subtitle F.[32]

One can infer from the legal provisions transcribed above that the tax basis established by the Legislative Assembly by passing Act No. 80, *supra*, — incorporated later to the Internal Revenue Code— is the "**suggested** consumer sales price," which shall be determined by the importer **prior** to bringing the vehicle to Puerto Rico.[33]   Nevertheless, it is also clear, at that stage, and in order to prevent tax fraud and to obligate the importer to impose a tax based on a suggested sales price which objectively reflects the value of the vehicle on the market, **the Secretary of the Treasury is empowered to inquire into the reasonability of the suggested price reported by the importer.**

It is precisely by virtue of that authority, that the Secretary of the Treasury may determine and charge the importer for any tax not satisfied as part of a reasonable suggested sales price, subject to the terms in which the Internal Revenue Code adopted such concept from Act No. 80, *supra*.   Clearly, in order to do so, the Secretary would have to give grounds for said tax insufficiency based on a duly recognized source in the United States automotive industry, since altering the suggested consumer sales price based on any alternate fiscal basis is prohibited.

---

[32] Sec. 2011 (c)(1) and (2) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014 (c)(1) y (2). Subsection(1) was amended by the Taxpayer's Justice Act of 2006 for the sole purpose of excluding from this provision new or used multiple use vehicles. Art. 16, Taxpayer's Justice Act of 2006, supra. Moreover, when the last sentence of this section reads, "without impairment to the provisions established in Subtitle F" it is referring to Sec. 6001 *et seq*. Of the Internal Revenue Code , supra, 31 L.P.R.A. sec. 8021 *et seq*.

[33] The term to suggest means "**to propose or counsel something**." Real Academia Española, <u>Diccionario de la Lengua Española</u>, 2001, at page 2106.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS   Doc#:7681-1   Filed:06/26/19   Entered:06/26/19 15:58:28   Desc:
Exhibit A   Page 20 of 52
Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

19

COURT'S OPINION

Now, in spite of the fact that the terms used in the drafting of Act No. 80, *supra*, are sufficiently clear to be understood in only one sense, it is indispensable and more than revealing to set forth *verbatim* different fragments of the debate which took place in the House of Representatives with respect to the passage of Act No. 80, *supra*. In this manner, we fulfill our inescapable function of discovering and enforcing the true intention and wishes of the legislative branch in adopting the "suggested sales price" as a tax basis.

To this end, then House Speaker Jarabo Álvarez, stated:

[A]fter an open dialogue with the industry, all sectors of the industry, we drafted Bill 1707. A Bill which established the consumer sales price as a basis for calculating the excise tax, instead of the "black book." It was in a way a "sales tax", a tax on the sale. In another way it was not, because as legislators know, **a sales tax like the one that exists in the States of the Federated Union uses the sale to the consumer as the taxable event; the obligation to pay a tax, the "sales tax", arises when the article is sold to the consumer, and that base could not be used in Puerto Rico because the flow of funds to the Department of the Treasury would be affected**.

Excise taxes on automobiles represent four percent of total revenue, so any system designed on this matter, must necessarily guarantee the sustained flow of funds collected as excise taxes to the Department of the Treasury. The Bill approved with tripartite support in the House had the peculiarity of using consumer sales price as a base, but maintained the tax event as the introduction of the car, or automobile, to the Puerto Rico market as in the current law. So, a

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

20

COURT'S OPINION

**system for estimating became necessary. Estimating what? Estimating
what the consumer sales price was going to be at the time the car was sold.
And that made very complicated accounting necessary in the Department of
the Treasury for each vehicle.  An estimate of what the sale price would be, a
payment or bond, and later credits for the amounts paid in excess [sic] or
reduction and collection for the amounts paid below.  The Department of the
Treasury said, "We cannot administer a system in this way,** we need a system
—they said— with the certainty, the ease, the simplicity, the plainness of using
the "black book"; the "black book" is unacceptable?  Very well, unacceptable, but
**we want something that might substitute the objective criteria which would
allow us to go beyond the current situation which requires appraisal of each
vehicle"**; and that, as we all know, without discussing the details, lends itself to a
great deal of irregularity, to many strange things, many inequities, each time a
vehicle is appraised in order to determine which excise tax will apply.

--------

So, we have prepared this Substitute for Bill 1707, which uses the suggested sales
price. **Notice that it is the closest thing to the consumer sales price, the
consumer sales price suggested by the manufacturer or the importer at the
time of the car is brought to Puerto Rico.** That is, when the tax event occurs,
when the obligation to pay an excise tax arises -as it does now-, instead of using
the figure that is elastic, mysterious, unreliable, the FOB [read, the "*free on
board*",] **it will use the calculation of what will be the consumer sales price,
which includes all costs, including the importer's and the dealer's profits**, if
there is a dealer other than the importer. And that price will be labeled and put in
the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

21

COURT'S OPINION

vehicle window, so that the consumer can see on the basis of what price he is paying.

This allows for a certainty that avoids the gaps and lacunae in the current law that make it vulnerable to fraud. At the same time, it creates a market force dynamic that forces that manufacturer to tell the truth, because if it tries to undervalue [sic] that suggested price its relationship with the dealer will be affected. And if it is exaggerated, which would be absurd, he would pay more taxes than he has to pay, and his relationship with the dealer would also be affected. So the guarantee that you are going to tell the truth there, is not only in the tax penalties for committing fraud —because that is fraud—, but also in the **natural forces of economic competition that promote a true identification of the suggested price as the actual price at which that vehicle is expected to be sold**.

---------

I think... I have adequately covered .... the legislative intent of this measure and its most fundamental aspects.[34]

The transcribed fragments show clearly that with Act No. 80's approval the legislator sought that the sale of the vehicle to the consumer not be used as a taxable event, since this would be the equivalent of a sales tax which, as a tax basis, could not be used in Puerto Rico because it would affect the flow of funds to the Department of the Treasury itself.  As we can see, the bill which finally became Act No. 80, *supra*, substituted another bill which in essence proposed to implement a tax system instituted by the Secretary of the Treasury, this is, to use the introduction of the vehicle to the Puerto Rico market as the taxable event, but

---

[34] Diario de Sesiones de la Cámara de Representantes, October 2, 1992, at pages 54-55 and 59 (Emphasis added).



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

22

COURT'S OPINION

to do so by using the final sales price to the consumer as the tax basis.

As conceived by the legislator, that system of imposing excise taxes, which lacked a temporal correlation, implied very complicated accounting at the Department of the Treasury.  It would require payment of the tax at the time that the vehicle is introduced based on an estimate of what the consumer sales price would be, and then later, after the sale by the dealer was carried out, an evaluation and calculation of the difference arising between the estimate and the final sale.  After calculating the difference, the Secretary of the Treasury would be responsible for computing the resulting excise taxes in order to impose payment of these upon the importer.

Nevertheless, the parliamentary debate shows that it was the agency itself which urged the legislator not to pass such a tax structure, but argued, rather, for a structure containing an objective criterion such as the "*black book*," **and thereby set aside the uncertain criterion of the final sale of each vehicle.  This was so because aside from being an awkward tax system, it would end up being prejudicial for each Puerto Rican consumer who was preparing to acquire a new automobile from a dealer who does not import vehicles, since the vehicle would not be capable of being registered with DTOP until the importer, with whom the consumer had not maintained a business relationship, undertook to pay said excise taxes imposed**.

### IV

Act No. 80, *supra*, empowered the Secretary of the Treasury to regulate all the norms necessary for its application.  So, on January 18, 1994, the agency approved Regulation 5020, which  provided that, in the event that a vehicle is sold to the consumer for an amount in excess of the suggested retail price, that would have to be proven with evidence  to the agency in order to determine whether the increase was subject to the payment of additional excise taxes.  In this manner, as argued by the State, since the approval of Regulation 5020, the Secretary of the Treasury

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

COURT'S OPINION

instituted the rule that the declaration of the sale and the payment for the difference in excise taxes was a pre-requisite for the issuance of a valid certification of excise tax payment for registration in DTOP.

Now, Regulation 5020 was repealed by Regulation 7215 of September 1, 2006, which was likewise repealed by Regulation 7437 of December 14, 2007. Nevertheless, both Regulation 7215 and 7437 maintained essentially the same regulatory provisions in terms of the matter at hand. Therefore, with the approval of Regulation 7437, the tax system implemented as of Regulation 5020 was maintained, that is, at present, the requirement of having to show evidence to the agency as to whether a vehicle is sold in excess of the suggested consumer sales price remains. Also, in order for a valid certification of excise tax payment to issue, the agency currently demands that a declaration of the sale be filed and that payment be made for the difference in excise taxes.

In this sense, as provided in the retroactivity clause included in Regulation 7437, this regulation did not alter the regulatory rules in effect as of approval of Regulation 5020. In this manner, and in view of the fact that the petition presented for our consideration requests that the power claimed by the Secretary of the Treasury in the referenced regulation be declared invalid, since the instant case is still pending, we shall evaluate the provisions of Regulation 7437 which is the regulation currently in effect.

With respect to the "suggested consumer sales price," Regulation 7437 provides:

(i) "New Automobiles for Sale": In the case of new automobiles, introduced into Puerto Rico by distributors and authorized dealer, the "suggested consumer sales price" shall mean the price for which the vehicle or similar vehicles shall

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

be sold to the consuming public on a retail basis on the free market, excluding the excise tax.

That "suggested consumer sales price" may never be less than the basic cost of the model. The "suggested consumer sales price" shall include the basic cost of the model and the following: the optional equipment installed in the factory, the importation insurance and freight, the profit margin for the sale, the costs associated with the preparation and delivery of the vehicle, and any other cost related to the delivery of the vehicle. It is nonetheless provided that the "suggested consumer sales price" does not necessarily have to be the same for all dealers. [...] **Any sales declaration in excess of the suggested sales price to the consumer shall be examined to determine whether the increase is subject to the payment of additional excise taxes.**[35]

Moreover, Art. 2011(a)-4 of Regulation 7437 specifies the process to take place for the declaration of excise taxes in the case of automobiles:

(a) Distributors.- (1) Every distributor which proposes to introduce automobiles into Puerto Rico shall submit to the Secretary a declaration of excise taxes 15 days prior to the date authorized for the removal of the shipment from the dock, including a detailed list of the automobiles to be received, with the suggested consumer sales price for each one and the information set forth below. The distributor shall include any other document as determined by the Secretary.

.....

(4) In the case of distributors which import new automobiles to Puerto Rico and which maintain a

---

[35]   Art. 2001-1, (25)(i), Regulation 7437 (Emphasis added) (provision similar to the repealed Art. 3 (14)(a), Regulation 5020).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

25

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

COURT'S OPINION

commercial relation with one or more retail vehicle sellers ("dealers"), so that such retail motor vehicle sellers may carry out the retail sales if said automobiles, the suggested consumer sales price provided for in subparagraph (1) of this paragraph **shall be used by the retail motor vehicle seller for the retail sale of such vehicles**.

This presupposes that the distributor shall determine the suggested consumer sales price for the corresponding shipment, including all the price elements necessary which make the presentation of the automobiles to consumers possible and which constitute the offered retail price of these automobiles.

......

(d) Amended declaration of excise taxes based on a change in the suggested sales price.- (1) **In the event that the distributor or authorized dealer, as the case may be, includes in the declaration of excise taxes and in the corresponding adhesive sticker, a suggested consumer sales price which is less than the retail offer price that the retail vehicle seller ("dealer") or merchant shall exhibit on the particular vehicle, it shall be the responsibility of the distributor** or authorized dealer, as the case may be, to render to the Director an amended excise tax declaration which reflects the correct suggested consumer sales price and to **satisfy the payment of corresponding excise taxes for the difference in the tax basis**.  In this case, the Bureau shall deliver, issue or allow the distributor or authorized dealer, as the case may be, to print a new adhesive sticker that shall reflect the new suggested consumer sales price and shall substitute the sticker originally delivered to it or that said

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

## COURT'S OPINION

distributor or authorized dealer was authorized to print for the particular vehicle.

(2) Notwithstanding the provisions above, when the retail motor vehicle seller (dealer) is the one who endeavors to increase the "suggested consumer sales price," the retail motor vehicle seller shall immediately notify the distributor or authorized dealer, as the case may be, of its desire to request an increase and the issuance of a new adhesive sticker, accompanying with the request the total excise tax amount corresponding to the difference in the tax basis.  Once the distributor or authorized dealer, as the case may be, receives the retail motor vehicle seller's request, the distributor or authorized dealer shall file the same with the Director and a new sticker shall be issued or its printing authorized.

In the event that the retail motor vehicle seller notifies the distributor or authorized dealer of a "suggested consumer sales price" which is higher than the one declared by the distributor or authorized dealer, and the automobile has not yet been introduced into Puerto Rico, the distributor or authorized dealer shall be obliged to declare said unit with the "suggested consumer sales price" that the retail motor vehicle seller reports.

**In cases in which the dealer fails to report to the distributor or authorized dealer its intention to increase the "suggested consumer sales price" and fails to include the payment of excise taxes for the difference, it shall be the responsibility of said dealer to pay excise taxes for the difference, plus corresponding interest, penalties, fines and surcharges.**  Notwithstanding, in those cases in which the dealer notifies the distributor or authorized dealer in writing

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

of the "suggested consumer sales price" for a particular vehicle, the distributor or authorized dealer shall declare said vehicle with the "suggested consumer sales price" notified by said dealer.

(3) **The payment of corresponding excise taxes for the difference in the tax basis shall be made within the 15 days following the date of the sale** or within the 15 days following the date on which the authorized dealer or retail motor vehicle seller has allowed the use of the vehicle on the public ways, whichever occurs first.

(4) In cases in which a retail motor vehicle seller sells a vehicle introduced by an authorized dealer and the latter has not reported the increase in the suggested consumer sales price, the authorized dealer (introducer) shall be responsible for paying the difference in excise taxes, plus corresponding interest, surcharges, penalties and fines, on the difference between the final consumer sale price and the suggested consumer sales price specified in the original declaration.[36]

From a reading of the regulatory provisions transcribed, it can be inferred that the tax system implemented by the Secretary of the Treasury is null, since it is in conflict with the legal rules established in the Internal Revenue Code itself.  Let us see.

---

[36]  37 Art. 2011(a)-4, (a)(1), (a)(4), (d), Regulation 7437 (Emphasis added) (provisions similar to repealed Art. 4 (A)(1), (A)(4), (A)(5), Regulation 5020). It is important to point out that the term "distributor" is defined as "an importer having an exclusive distributor relationship with the vehicle manufacturer and who represents said manufacturer in Puerto Rico." Art. 2011(b)-1, (a)(5)(provision similar to repealed Art. 3 (9), Regulation 5020).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

28

COURT'S OPINION

The regulatory procedure for the declaration of excise taxes obligates the importer or distributor, after the tax event, to notify the Department of the Treasury of the price which every dealer finally negotiated each of the new vehicles that it distributed to them. In addition, this notification must be accompanied by the payment of the excise tax that arises from the difference between the suggested sales price declared by the importer at time of shipment and the price at which the dealer actually sold the vehicle.

In this manner, both the notification requirement and the payment of additional taxes constitute an authority assumed by the Secretary of the Treasury that is not only absent from the Internal Revenue Code, but also contravenes the clear letter of the fundamental statute. The aforementioned Code establishes, in a clear manner, that the Secretary of the Treasury **can intervene or demand the additional payment of excise taxes only if the suggested sales price does not reasonably reflect the price of the vehicle, which has to be determined before allowing the vehicle's shipment**.[37]  Also, the Secretary's power to decree that the suggested retail price reported by the distributor is unreasonable for that car model **will have to be based on any source of information duly recognized in the United States of America's automotive industry**.[38]

Undoubtedly, a source of information recognized in the automotive industry cannot be any definition that the Secretary of the Treasury, through the aforementioned regulation, may confer upon the tax basis of the "suggested consumer sales price." This is even more true when the terms in which this regulatory definition is drafted expand the statutory tax basis so as to equate it to

---

[37] Sec. 2011(c)(2) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014(c)(2).

[38] Id.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS   Doc#:7681-1   Filed:06/26/19   Entered:06/26/19 15:58:28   Desc:
Exhibit A   Page 30 of 52
Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

29

COURT'S OPINION

the final sale price. This is true since, through said definition, the Secretary has the power to examine "[e]very sales declaration in excess of the suggested consumer retail price ... to determine whether the increase is subject to the payment of additional excise taxes."[39]

Also, examining a sales declaration for a vehicle necessarily leads us to a stage subsequent to that in which the suggested sale price was declared by the importer and approved by the Secretary of the Treasury.  In other words, the fact that a non-importer dealer sells a vehicle necessarily implies that the vehicle's shipment has already taken place with the Secretary's consent by virtue of the informed suggested price.  Therefore, at that stage of the procedure, the Secretary's power to determine whether the suggested sale price reasonably reflects or not the vehicle's price for the purpose of issuing a certificate of excise tax payment has been extinguished. This is due to the fact that the Internal Revenue Code provides that **the Secretary's power to collect the tax from the distributor based on a reasonable suggested sales price will be made "at the moment of the introduction of the vehicle to the Puerto Rico**."[40]

On the other hand, it must be pointed out that the Code expressly provides that the power delegated to the Secretary of the Treasury to determine the reasonableness of the suggested sales price prior to shipment, **in no case is to be understood as authorizing him to substitute, as a rule of general application, the basis of the suggested sales price for any other alternative tax basis**.[41]   In view of the foregoing, and since the tax system implemented by means of said regulation contravenes this legal precept —precisely because it constitutes an illegal alteration and of general application of the tax basis— we are forced to declare it null.

---

[39] Art. 2001-1, (25)(i), Regulation 7437.
[40] Sec. 2011(c)(2) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014(c)(2).

[41] Id.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

30

COURT'S OPINION

Likewise, we must emphasize that as part of this tax system that we hereby annul, there is a regulatory provision that places the dealer in the position of the taxpayer.  In this regard, Regulation 7437 provides that when the dealer does not inform the importer or distributor of its intention to sell the vehicle at a higher price than previously suggested for sale and, consequently, does not accompany the payment of excise taxes for the difference, said dealer will be responsible for the payment of these excise taxes plus the corresponding interest, penalties, fines and surcharges.[42]  As can be seen, this regulatory provision is clearly in conflict with the Internal Revenue Code insofar as it expressly states that in the case of imported articles that are taxed with the payment of excise taxes, "the person responsible for the payment of taxes or taxpayer will be ... [t]he consignee, if the article is consigned directly to a consignee."[43]

The inescapable consequence of keeping the tax system described above in force would be to allow the Secretary of the Treasury to substitute the legislator's criterion with his own, since this officer demands that the final sales price be paid after the vehicle's shipment, and not by the suggested sale price as determined and accepted by him prior to shipment in those cases in which the final sale price is greater than the one suggested.[44]  In addition, it replaces the

---

[42] Art. 2011(a)-4, (d)(2), Regulation 7437.

[43] Sec. 2051(a)(1) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9068(a)(1).

[44] It should be noted that the substitution of the legislator's criterion by the Secretary of the Treasury is particularly convenient for the agency, because the procedure introduced does not reassess the suggested sales price in those cases in which the final sale price to the consumer is lower than the suggested sale price declared by the importer, so that no money is refunded to the taxpayer even though the tax was charged for an amount greater than the final sale price.  Remember that by regulatory definition of the suggested sales price, the Secretary was given the power to examine "[e]very sales statement in excess of the suggested retail price to the consumer ... to determine whether the increase is subject to the payment of additional excise taxes ". Art. 2001-1, (25)(i), Regulation 7437 (emphasis added).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

31

COURT'S OPINION

legislative judgment by positioning the dealer —not the vehicle importer— in the place of the consignee, who appears as the taxpayer before the law.  As such, this officer has implemented a tax system contrary to the provisions of the Internal Revenue Code, which constitutes an *ultra vires* act.  Therefore, the provisions of Regulation 7437 that implement the aforementioned tax system, must yield to the legislative mandate because, as we know, the text of a law should never be understood as modified or supplanted by regulation.[45]

## V

The Secretary of the Treasury's ability to notify a tax deficiency after the vehicle's shipment, through the formal procedure provided in Sec. 6002 of the Internal Revenue Code, 13 L.P.R.A. sec. 8022, is not what is at issue in the present case.  What is in dispute here is the Secretary's ability to, after the vehicle's shipment, refuse to issue a valid certificate of excise tax payment even though he understood at the time that the suggested retail price reported by the importer was reasonable, since that is precisely why the vehicle was introduced to the country.

In this way, if the Secretary of the Treasury intends to vary the fixed excise tax after having granted his consent for the vehicle's shipment —since it is understood at that moment that the suggested sale price reported by the importer was reasonable —, he will have to abide by the formal procedure established in Subtitle F, Sec. 6002 of the Internal Revenue Code. This is because Sec. 2011(c)(2) of the Code provides that "[t]he determination of the Secretary shall be presumed without prejudice to the provisions established in Subtitle F."[46]

---

[45] P.A.C. v. P.I.P., *supra*, at page 643; *Ex parte* Irizarry, *supra*, at page 676.
[46] Sec. 2011(c)(2) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014(c)(2).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS   Doc#:7681-1   Filed:06/26/19   Entered:06/26/19 15:58:28   Desc:
Exhibit A   Page 33 of 52
Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

32

COURT'S OPINION

In summary, the procedure established in the aforementioned Sec. 6002 imposes upon the Secretary of the Treasury the obligation to notify the taxpayer of its tax deficiency determination and provide him with the opportunity to challenge it, to then exhaust the administrative remedies or to challenge the deficiency notified by means of a de novo trial in the Court of First Instance.[47]   Of course, the availability of this procedure arises after the declaration of excise taxes and the shipment of the vehicle, that is, after the payment of the taxes as declared by the importer and accepted or altered by the Secretary.  This is because by virtue of the fact that **Sec. 2011(c)(9) of the Code makes the non-registration of the vehicle in the DTOP subject to non-payment of the excise tax as established by the procedure provided in Sec. 2011(c)(1), which establishes that the tax is fixed by the Secretary's consent or alteration of the suggested sales price declaration issued by the importer prior to the authorization of the shipment.**[48]

As we see, under Sec. 2011 collection of the excise tax is not subject to a formal adjudication procedure as established in Sec. 6002, but collection of the excise tax is guaranteed by the Secretary's power to prevent shipment and registration in the DTOP —since it can refuse to issue a valid excise tax payment certificate. In this way, the Secretary's power under Sec. 2011 to prevent the registration of the vehicle, ends with its consent for the shipment and the payment of the excise taxes as reported by the importer, or as altered by the officer within the 15-day period referenced in that section.[49]   Therefore, we conclude that the procedure established in Sec. 2011 to determine the suggested sale price for the excise tax, and the Secretary's power under said section to prevent registration in the DTOP, is a very different procedure from the formal procedure

---

[47] Sec. 6002 of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 8022.

[48] Sec. 2011(c)(2) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014(c)(2).

[49] Sec. 2011(c)(4) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014(c)(4).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

33

## COURT'S OPINION

established in Sec. 6002 for determining a tax deficiency.

However, it is necessary to take into account that both procedures are of exclusive application to the importer (distributor or consignee) to the extent that the importer is the taxpayer according to the Internal Revenue Code. Consequently, dealers that do not import vehicles are not subject to either procedure.

### VI

Although the Internal Revenue Code provides different procedures to verify the amount to be paid for each vehicle, depending on the stage in which the tax is in controversy, the improper practice of the Secretary of the Treasury is to fail to issue a valid certificate of excise tax payment until satisfaction of the amount of the excise taxes resulting from the illegally imposed tax basis, that is, the final sale price of the vehicle. In this manner, when the final sale price of the vehicle is higher than the suggested retail price reported by the importer, consumers acquire the vehicles from a dealer but cannot enjoy it because, without a valid certificate of excise tax payment, they cannot register them in the DTOP.  This, because Regulation 7437, regarding the issuance of the certificate of excise tax payment, also *ultra vires,* provides:

**After the retail sale of the automobile, the retail motor vehicle seller (or dealer), importer or distributor, shall submit to the Department the Sale Verification Ticket of Motor Vehicle, Part B of the label, duly completed, or any other document required by the Secretary and that is demonstrative of the sale. This will be a prerequisite to the Secretary's delivery** to said retail motor vehicle seller (or dealer), importer or distributor **the Excise Tax Payment Certificate that will allow**

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

34

COURT'S OPINION

**the car to be registered in the Department of Transportation and Public Works**.[50]

Thus, under the cover of an insufficiency in the payment of excise taxes that is not really taxable since it is invalid at law, the Department of the Treasury taxes automobiles introduced into Puerto Rico and prevents them from being registered as they should in the DTOP. It is precisely the non-issuance of a valid payment certificate which prevents the registration of the vehicle in the DTOP, since the Internal Revenue Code provides that the Secretary of Transportation and Public Works will not issue to any person a license or license plate for a vehicle unless the person shows reliable evidence of the excise tax payment, unless the Secretary of the Treasury issues the corresponding excise tax payment certificate without any facial limitation.[51]

## VII

According to our constitutional system, "the power to impose taxes is primarily the responsibility of the Legislative Branch."[52]  Thus, the legislator was clear in establishing in the Internal Revenue Code that the tax basis is the "suggested retail price for the consumer", which is determined by the importer before introducing the vehicle to Puerto Rico. Certainly, the statutory definition of this concept includes a profit margin component —currently, estimated profit margin— but this is also determined at the time of shipment, so it is not comparable to the price at which the dealer subsequently manages to sell it.  This is so much so, that the legislative history itself shows that the legislator conceived the suggested sale price

---

[50] Art. 2011(c)(3)-5(a), Regulation 7437 (emphasis added) (similar provision to the repealed Art. 9(6), Regulation 5020).

[51] Sec. 2011(c)(9) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014(c)(9).

[52] Café Rico, Inc. v. Mun. Mayagüez, 155 D.P.R. 548, 552 (2001); see, Art. VI, Sec. 2, Const. E.L.A., L.P.R.A., Volume 1.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

## COURT'S OPINION

as "the price that comes closest to the consumer sales price",[53] so we must conclude that the suggested sales price is not the same as the final sales price, even if the first contains the profit margin for the sale as a component to be taken into account. To equate one with the other is the same as establishing a sales tax as a tax basis, which, as we saw, the legislator sought to avoid without exception.

Moreover, from the legislative debate transcribed above one can extrapolate that the Legislative Assembly considered the possibility of establishing the moment of the final sale to the consumer as the tax event, as proposed by the original bill, but rejected it. For this reason, a substitute bill was submitted which finally incorporated the suggested consumer sales price as a tax basis. In short, if the legislative intention had been to use the final sale price as a basis for the computation of excise taxes, this would have been expressly stated in the law whenever that possibility was contemplated by the legislature.

In this sense, the Secretary of the Treasury, through the regulation discussed above, exceeds his powers and acts illegally by using the final sale price to the consumer to reevaluate the suggested sale price provided by law as a basis for calculating the excise tax, as he replaces the objective criterion set out by the Legislative Assembly for his own, which was specifically rejected by the legislator.  In addition, by imposing its criterion through the regulatory process, as we have outlined, the Secretary of the Treasury violates the legislative mandate by: (a) seeking to collect the excise tax from the dealer; (b) failing to issue a valid payment certificate so that consumers can register their vehicles in the DTOP after the tax event; and (c) establishing an alternate tax basis for the determination of excise taxes on vehicles.

---

[53] Diario de Sesiones de la Cámara de Representantes, October 2, 1992, at page 55.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS   Doc#:7681-1   Filed:06/26/19   Entered:06/26/19 15:58:28   Desc:
Exhibit A   Page 37 of 52

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

36

COURT'S OPINION

Therefore, in our role of reviewing administrative regulations, we determine that the regulation that implements the tax system imposed by the Secretary of the Treasury to determine the payment of excise taxes in the case of automobiles is null, since the legislator only recognized the suggested sales price as the tax basis for imported motor vehicles, which is determined at the time of their introduction to the country. In this way we assert the basic principle that when the legislature delegates to an agency the power to enact regulations, these, to be valid, cannot be in conflict with the rules established in the law itself, as this entails the substitution of the criterion of the legislator by the agency authorized to regulate.[54]

In this sense, the pertinent regulatory provisions must yield to the legislative mandate since the text of the Internal Revenue Code cannot be understood to be modified or supplanted by regulations. Keep in mind that when faced with a statute that imposes taxes or assessments, it is our duty to interpret it restrictively, fairly, and according to its own express terms. For this reason, we are obliged to declare as invalid: subsection (25)(i) of Art. 2001-1, subsections (a)(4) and (d) of Art. 2011(a) -4, and Art. 2011(c)(3)-5 of Regulation 7437.[55]

As appropriate, when carrying out the restrictive analysis of the statute before our consideration, it is clear that the Legislative Assembly did not leave

---

[54] P.A.C. v. P.I.P., *supra*, at page 643; Ex parte Irizarry, *supra*, at page 676.

[55] It is necessary to point out that the fact that we declare these regulatory provisions null does not imply that Regulation 7437 is null in its entirety, since it included a separability clause that provides:

> If any article, paragraph, section, clause, sub-clause or part of this Regulation is declared unconstitutional or void by a court with jurisdiction, the judgment issued for that purpose shall not invalidate the rest of this Regulation, leaving its effects limited to the article, paragraph, section, clause, sub-clause or part of this Regulation that was declared unconstitutional or null.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS   Doc#:7681-1   Filed:06/26/19   Entered:06/26/19 15:58:28   Desc:
Exhibit A   Page 38 of 52
Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____
37

## COURT'S OPINION

the Department of the Treasury without any procedure to allow it to oversee the application of the new tax basis. If the Secretary of the Treasury is not satisfied with the suggested sales price declared by the importer, prior to the shipment of the vehicle, the Internal Revenue Code provides a mechanism through which he can modify it and collect the corresponding excise taxes based on a reasonable suggested sales price. Specifically, he can only modify the suggested sales price determined by the importer when it is not reasonable compared to those of similar models at the time the vehicle is introduced into Puerto Rico, provided that such irrationality is based on a source of information duly recognized by the automotive industry.[56] The replacement of the suggested sales price by the Secretary of the Treasury, however, cannot be done in a generalized manner or as a pretext to substitute the basis of the suggested sales price for any other alternate fiscal basis.[57]

If the Secretary of the Treasury agrees to the suggested sales price declared by the importer and does not notify the importer of its replacement by a more reasonable one according to the aforementioned procedure, the excise tax is fixed. Once fixed, the importer pays the excise tax as accepted or as substituted by the Secretary, and introduces the vehicle to Puerto Rico free of liens, that is, with the right to obtain a valid certificate of excise tax payment.

By virtue of the foregoing, bearing in mind that in the present case the Secretary of the Treasury made no determination as to whether the suggested retail price to the consumer reported by Motorambar was unreasonable, the excise tax was fixed and the vehicles

---

[56] Sec. 2011(c)(1) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014(c)(1).

[57] Sec. 2011(c)(2) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014(c)(2).


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

38

COURT'S OPINION

subsequently acquired by Yiyi Motors were shipped. Thus, the Secretary could not prevent registration of these because, since the excise tax was fixed, Sec. 2011(c)(9) of the Internal Revenue Code does not allow it.[58]

Rather, the criterion used by the Secretary to prevent registration was the difference between the suggested retail price reported by Motorambar -accepted by the Secretary himself- and the price at which Yiyi Motors finally sold the vehicles to consumers. However, as has been established, this criterion was rejected by the Legislative Assembly and, in accordance with that decision, this Court, today, rejects such criterion.

Therefore, to the extent that the Secretary attributes to himself the power to prevent the registration of vehicles by not issuing an excise tax payment certificate after the excise taxes have been fixed and the shipment made, this officer acts illegally. And in doing so, the Secretary causes harm to Yiyi Motors since Yiyi Motors, as is to be expected from a highly-known motor vehicle dealership in Puerto Rico, has sold hundreds of vehicles, which it has not been able to register due to lack of a valid excise tax payment certificate.

## VIII

Since the lack of authority of the Secretary of the Treasury to impose the aforementioned tax system has been established, let us consider the origin of the *injunction* requested by Yiyi Motors.

First of all, we must bear in mind that in the present case there is no controversy about the fact that the taxpayer is Motorambar as consignee, not Yiyi Motors, which is a dealer that does not import motor vehicles.  As we have already stated, the State did not appeal the opinion issued to that effect by the Court of First Instance.

The Internal Revenue Code clearly states that in cases of imported items that are subject to payment

---

[58] Sec. 2011(c)(9) of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9014(c)(9).


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

of excise taxes, the person responsible for paying taxes or the taxpayer will be ... [t]he consignee, if the article is consigned directly to a consignee.[59]   From this perspective, it is necessary to reason that the fact that the Secretary of the Treasury has tried to collect taxes from someone who is clearly not a taxpayer before the law, constitutes an extraordinary and clearly illegal action that a court of justice cannot endorse.

In this regard, in Durlach Bros., Inc. v. Domenech, Tes., 47 D.P.R. 654 (1934), it was established that when an attempt is made to collect taxes from a certain person that, if due, are owed by another, it is considered that this is an exceptional case in which the courts can exercise their extraordinary jurisdiction through the concession of an *injunction*.[60]   **Thus we decided exactly three quarters of a century ago, that even though the *Injunction* Law prohibited, and still prohibits, the issuance of this type of remedy to prevent the imposition or collection of any tax established by law**.[61]   Now, it should be taken into account that said statutory prohibition is effective only when the person requesting the *injunction* to prevent the tax collection is the taxpayer before the law, that is, Motorambar in the present case. This is so, since the duty to "pay taxes under protest ... is applicable only to persons who are subject to the payment of taxes under the laws of Puerto Rico. [...] Naturally, in an ordinary case, taxes must be paid under protest".[62]

Moreover, we have pointed out that when an *injunction* is filed to prevent the collection of taxes and Plaintiff adduces a clear case that they are not payable in any way by him, it is not necessary to prove irreparable harm

---

[59] Sec. 2068 of the Internal Revenue Code, *supra*, 13 L.P.R.A. sec. 9068.

[60] Durlach Bros., Inc. v. Domenech, Tes., 47 D.P.R. 654, 656 (1934).

[61] Id.; 32 L.P.R.A. sec. 3524(7).

[62] Id., at pages 658-659.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

40

COURT'S OPINION

beyond those generally claimed in the complaint.[63] In this regard, in <u>Durlach Bros., Inc. v. Domenech, Tes.</u>, *supra*, the exposition of the case was completed in the same way that we could do it today:

We make a brief summary of the merits: Plaintiff presented a clear case that the taxes whose return wanted to be obtained were not in any way payable by plaintiff Durlach Brothers.

When the facts are as clear as in the present case, it is not necessary for Plaintiff to prove irreparable harm in addition to those alleged in the complaint.  Irreparable harm would be the need on the part of Plaintiff to pay taxes that would, at most, be owed by another person.[64]

In this manner, because Yiyi Motors clearly never figured as the taxpayer before the law, from the moment the Secretary of the Treasury was given the power to impose the payment of excise taxes for the difference that arises when selling a vehicle at a cost greater than the suggested sale price declared by the importer, the *injunction* constituted the adequate legal remedy to prevent the imposition of taxes that it did not have to pay.  We must remember that the action that led to the dispute that comes before our consideration is precisely a complaint for *injunction* by which Petitioner requested, among other things, that the Secretary of the Treasury be ordered to cease and desist from imposing the payment of excise taxes not authorized in law on vehicles imported by Motorambar, taxes that, in any case, should be imposed on it as a consignee as established by the Internal Revenue Code.

Faced with such an allegation, made expressly in the complaint, and since the fact that there clearly was no legal authority to impose contributions to Yiyi

---

[63] <u>Id</u>., at page 659.

[64] <u>Id</u>.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

COURT'S OPINION

Motors, the application of the *injunction* was justified as an extraordinary remedy because, according to Petitioner's allegations, the clear letter of the law prevented Yiyi from being considered as taxpayer.  The wording of the articles of the Internal Revenue Code does not create any doubt as to who is considered taxpayer, since it explicitly provides that it is the consignee of the imported motor vehicles.

In this sense, we must specify that for cases in which it is so clear that the plaintiff is not the taxpayer, it is enough that the *injunction* request contains well-founded allegations regarding the irrationality of being considered the taxpayer before the law.  Should any doubt arise in the court, however, either because such claims have actually been contested or because the statute in question does not turn out to be sufficiently clear, then the *injunction* is not warranted as an extraordinary remedy, but rather the matter must be evaluated by the ordinary procedure available for these purposes.

At this point, we must distinguish what was decided in <u>Cafeteros de P.R. v. Tesorero</u>, 74 D.P.R. 752 (1953), of the provisions of <u>Durlach Bros., Inc. v. Domenech, Tes.</u>, *supra*.  Unlike the situation presented in this case —similar to <u>Durlach Bros., Inc. v. Domenech, Tes.</u>, *supra*—, in <u>Cafeteros de P.R. v. Tesorero</u>, *supra*, there were serious doubts about whether the injunction's petitioner there could be considered as the taxpayer.  The words of this Court to that effect were: [I]t is not entirely clear that Appellant is not a taxpayer. Its status is not outlined with full clarity.

---------

Anyway, suffice it is to say that the question regarding Appellant's status is debatable, which further emphasizes the applicability to this case of the doctrine regarding the inadmissibility of injunctive remedies and

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

CERTIFIED TRANSLATION

42

### COURT'S OPINION

declaratory judgment when the plaintiff has an adequate remedy in the ordinary course of the law.[65]

Under this factual framework, and in view of the claim of the then Plaintiff that it could not be considered as the taxpayer under the law, this Court stated as follows:

[E]ven if Appellant can have a reasonable basis for its contention that it is not a taxpayer subject to the scope of the law, the public policy considerations that we have explained determine that Appellant's claim must be clarified in the ordinary tax payment procedure, and not in the procedure chosen by Appellant. [...] From the point of view of equity, it could be argued that it would be unfair and oppressive to force a person who is clearly not a taxpayer to pay a tax that it does not owe, and which is absolutely null, and then force it to initiate a refund procedure. But we cannot forget that many legal doctrines are the result of a process of weighing and considering different individual and public interests and needs. The interest in avoiding an immediate individual inconvenience must be subordinated, in these situations, to the social interest, of greater significance, to avoid a stoppage of governmental activities. We have spoken of an immediate, and not permanent, individual inconvenience, since the doctrine under discussion assumes the existence of an adequate remedy in law, in which the claimant's allegations must finally be clarified.[66]

Said statement, however, was made in a case in which this Forum was prone to determine that the *injunction* applicant was the taxpayer. So much so, that in the decision

---

[65] <u>Cafeteros de P.R. v. Tesorero</u>, 74 D.P.R. 752, 766-767 (1953).

[66] <u>Id</u>., at pages 765-766.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

43

### COURT'S OPINION

of <u>Cafeteros de P.R. v. Tesorero</u>, *supra*, it was stated that the regulatory definition of the term "buyer" of coffee —who had the status of taxpayer under the law— was applicable to Petitioner.[67]  Similarly, in the aforementioned case, according to the conclusion of this Court, the impropriety of the *injunction* was also due to the fact that extraordinary circumstances had not been proven to justify its issuance.[68]  For this reason, the expression outlined to the effect of forcing a person who clearly is not a taxpayer to pay a tax that she does not owe, was made outside the reality presented by <u>Cafeteros de P.R. v. Tesorero</u>, *supra*, because in said case there were serious doubts as to the status as taxpayer of the petitioner, which in turn limited the possibility of extraordinary circumstances.

<u>Durlach Bros., Inc. v. Domenech, Tes.</u>, *supra*, presented a very different situation and is presented today in the appeal before our consideration. In both, there was not and there is not even the slightest doubt that the *injunction* applicants were not the taxpayers.  Precisely, this in itself configures an extraordinary circumstance.  In this way, given the particularity of this case, we are not obliged by such expression made within a context in which the taxpayer status of Petitioner was debatable, but what follows is, due to its similarity, to apply the judicial precedent of <u>Durlach Bros., Inc. v. Domenech, Tes.</u>, *supra*. For this reason, we clarify that for exceptional cases such as the present one, in which Plaintiff clearly is not a taxpayer before the law and, despite this, the State insists on charging him a tax that is not applicable to him, the doctrine established in <u>Durlach Bros., Inc. v. Domenech</u>, *supra*.

In this way, if a citizen can clearly show that he cannot be considered as a taxpayer regarding the tax that has been imposed, it is unreasonable to force him to pay taxes and then make him exhaust

---

[67] <u>Id</u>., at pages 766-767.

[68] <u>Id</u>., at page 767.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

COURT'S OPINION

administrative and judicial mechanisms available.  The opposite would imply wasting state resources to get to the same conclusion that could have been known from the beginning with the use of the extraordinary *injunction* remedy: its non-taxpayer condition. This prevents citizens from being subject to cumbersome procedures in an unnecessary manner.  Precisely, to prevent the State from erroneously speculating with the tranquility and money of our people, this Court has already established the origin of *injunction* in these special and exceptional circumstances.

Different is the situation in which the plaintiff is the taxpayer or there are doubts about his condition as such. It cannot be considered as an especially extraordinary circumstance.  In these types of cases an *injunction* is not applicable to avoid paying taxes that may be owed, since the government's interest to obtain those fiscal resources necessary for its operation is superior. In this situation, the plaintiff has at his disposal the possibility of submitting a request for reimbursement to the Department of the Treasury. Remember that, as expressed in <u>Cafeteros de P.R. v. Treasurer</u>, *supra*, "[t]he prohibitory doctrine of injunctions when there is an adequate remedy in law is based on the desire to avoid stopping government activities, in harmony with the protection of the legitimate interests of the **taxpayer** by granting him a reasonable opportunity to assert his rights in the ordinary remedy at law that is within his reach."[69]

As we have seen, it is established in our caselaw that the courts have jurisdiction to hear an *injunction* action to prevent tax collections if the plaintiff adduces a clear case as to that these are not payable in any way by him. Thus, today we do not attribute to ourselves any legislative faculty, but rather we enliven the pronouncements made by this Court many years ago.

---

[69] <u>Id</u>., at page 764 (emphasis added).



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS   Doc#:7681-1   Filed:06/26/19   Entered:06/26/19 15:58:28   Desc:
Exhibit A   Page 46 of 52
Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

45

COURT'S OPINION

In view of the fact that the case before us is one of an extraordinary nature, which makes the statutory prohibition inapplicable to the issuance of *injunctions* to prevent tax collections, let us analyze whether to apply the other prohibition established in the *Injunction* Act the effect that it prevents the granting of such an extraordinary remedy to avoid the application of a law or the performance of an action authorized by law, unless it is determined by final and firm judgment that said statute or act is unconstitutional or invalid.[70]

In response to the clearly illegal action of the Secretary of the Treasury, we must specify that we have previously stated that the *injunction* remedy is the appropriate and available remedy for a citizen to prevent an official, when enforcing a law, to act contrary to its provisions  or in excess of the power granted by said statute.[71] However, the criterion to determine whether the performance of an official falls within the authority conferred by law, is not to assess whether the action is valid or constitutional as authorized by the legislator.[72]

The importance of the above is that, according to the Code of Civil Procedure, the courts are prevented from issuing an *injunction* with the aim of examining the constitutionality or validity of an official's performance, unless it has been decreed by a final, firm, unappealable and unreviewable judgment that said action authorized by the Legislative Assembly is unconstitutional or invalid.[73] In contrast, if what is intended is to determine whether the action falls under the authority conferred by the statute on the official, then, in the absence of an adequate remedy in the

---

[70] 32 L.P.R.A. sec. 3524(3).

[71] Ortega Cabrera v. Tribunal Superior, 101 D.P.R. 612, 619 (1973).

[72] Las Monjas Racing Corp. v. Com. Hípica, 67 D.P.R. 45, 55 (1947); Nieves v. López, Comisionado, 61 D.P.R. 269, 273 (1943).

[73] Id.; 32 L.P.R.A. sec. 3524(3).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

46

COURT'S OPINION

ordinary course of the law, it is appropriate to grant the request for *injunction*.[74]

Precisely, because there must be some way to protect the public against the illegal application of statutes by officials, in the absence of another remedy available in law, the courts are not prevented from assuming jurisdiction when a complaint of *injunction* that aims to investigate the legality of official acts is filed.[75]  "The acts of all [officials] must be justified by some law, and in the event that an official violates the statute to the detriment of any person, the courts generally have jurisdiction to grant redress."[76]

In view of the above, the *injunction* requested by Yiyi Motors is the appropriate remedy to prevent the Secretary of the Treasury from acting, contrary to the provisions of the Internal Revenue Code, or in excess of the power conferred by said statute. In other words, since the Secretary of the Treasury acts without legal authority to do so or exceeds it, the *injunction* is the mechanism available to Yiyi Motors to protect its property against the illegal application of the Internal Revenue Code by this official.[77]

"It must be kept in mind that the writ of *injunction* is the energetic arm of justice for the protection of citizens against the excesses of public officials who acting under color of law cause them irreparable harm."[78]  Now, the criterion of irreparable harm - has to be framed within another

---

[74] Las Monjas Racing Corp. v. Com. Hípica, *supra*, at pages 55-56.

[75] Ortega Cabrera v. Tribunal Superior, *supra*, at page 618; Las Monjas Racing Corp. v. Com. Hípica, *supra*, at pages 55-56; Nieves v. López, Comisionado, *supra*, at page 273.

[76] White Star Bus Line Inc. v. Sánchez, 59 D.P.R. 748, 752 (1942)(citing American School of Magnetic Healing v. McAnnulty, 187 U.S. 94 (1902)).

[77] See, White Star Bus Line Inc. v. Sánchez, *supra*, at page 753.

[78] Ortega Cabrera v. Tribunal Superior, *supra*, at page 618.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

broader and more flexible concept which advocates the origin of the *injunction* provided that the existing remedy in the ordinary course of the law does not adequately protect the substantive rights of the petitioner as soon, quickly and efficiently, as would be protected by "equitable rights'".[79]

By virtue of the foregoing, if not for the extraordinary *injunction* remedy, Yiyi Motors would be deprived of an effective remedy to challenge the illegal action of the Secretary of the Treasury and request its cease and desist. There is no adequate remedy existing in the ordinary course of law that Yiyi Motors can exercise to avoid that, by the illegal actions of this official, its commercial operations are substantially and incessantly interrupted, and in turn prevent that the rights of hundreds of consumers who bought vehicles from it and who have not been able to enjoy them be affected because of the Secretary of the Treasury' refusal to issue a valid payment certificate.[80]

Note that the Secretary maintains the authority to control tax payment and determine whether there is a tax deficiency through the formal procedure established in Sec. 6002 of the Internal Revenue Code.  However, this cannot be done at the mercy of affecting the rights of dealers and its consumers. In this sense, it must be clear that this opinion is not preventing the Secretary of the Treasury from collecting taxes that

---

[79] D. Rivé Rivera, Recursos Extraordinarios, 2da Ed., Prog. de Educ. Juríd. Cont. de la Facultad de Derecho de la Univ. Interamericana de P.R., 1996, at page 31. Similarly, in Cruz v. Ortiz, 74 D.P.R. 321, 328 (1953), we established: ─The concept of avoidance of irreparable harm... constitutes one aspect of the basic rule that an *injunction* is applicable when the remedy existing in the ordinary course of the law is inadequate."

[80] It is untenable that the people who buy vehicles after the tax event, and who clearly have no tax responsibility for their importation, remain devoid of remedy until both the Secretary of the Treasury and the importer clarify whether they owe taxes in accordance with a tax system other than the one established in the Internal Revenue Code, which in turn leaves them subject to the importer involved - Motorambar in this case- accepting it and eventually issuing the required payment.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS   Doc#:7681-1   Filed:06/26/19   Entered:06/26/19 15:58:28   Desc:
Exhibit A   Page 49 of 52
Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

48

COURT'S OPINION

a taxpayer may owe, but what is required of this officer is that he act within the framework of the law.

Finally, as has been demonstrated, the guiding criteria for the Opinion that we are issuing today is based on interpreting the law as it was conceived, drafted and approved by the Legislative Assembly. We cannot ignore, however, the beneficial effects that this entails for the automotive industry and, consequently, for the recovery of our battered economy.

As we know, the sale of motor vehicles has decreased considerably as a result of the economic recession. So much so, that corporations of great renown have been forced to lay off countless employees and even some of them have merged to cope with the capital losses they have suffered due to low demand from consumers. Precisely, to counteract the automotive industry's crisis, until recently the US government had implemented a monetary incentive plan whose objective was stopping the extreme loss many of these corporations that make up the motor vehicle industry suffered and are still suffering.

Within this context of economic unrest, the decision we reach today at least alleviates the crisis in which the dealers of the country are submerged, since we eliminate a tax burden that was illegally imposed on them. And at the same time, by eliminating it, we contribute, at least, to reducing the crisis in the automotive industry in Puerto Rico since, from now on, consumers will not have to pay, as part of the sale price, the excise tax that we nullify herein.

IX

For the reasons set forth in the foregoing Opinion, the Judgment issued by the Court of Appeals is reversed and the injunction requested by Petitioner is granted for the purpose of ordering the Secretary of the Treasury to cease and desist from using the final sale price to the consumer as tax basis for calculating the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

49

COURT'S OPINION

excise taxes to be paid for new vehicles imported into the country. In this manner, when determining the tax to be paid, this officer is instructed to adhere to the tax basis established in the Internal Revenue Code, that is, at the suggested retail price. Consequently, once the excise tax is established in accordance with the procedure established in Sec. 2011(c) of the aforementioned Code, the Secretary of the Treasury is obliged to issue a valid certificate of payment of excise taxes for the registration of the automobile in the Department of Transportation and Public Works.

Since the substitution of the tax basis by the Secretary of the Treasury has been implemented through its Regulation 7437, and since the text of the Internal Revenue Code cannot be understood to be modified or supplanted by the regulation, we declare invalid: subsection (25)(i) of Art. 2001-1, subsections (a)(4) and (d) of Art. 2011 (a)-4, and Art. 2011 (c)(3)-5 of said Regulation. In addition, this officer is ordered to harmonize the remaining provisions of Regulation 7437 according to what is stated here.

Judgment will be issued accordingly.

Erick V. Kolthoff Caraballo
Associate Judge

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS   Doc#:7681-1   Filed:06/26/19   Entered:06/26/19 15:58:28   Desc:
Exhibit A   Page 51 of 52
Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

50

COURT'S OPINION

JUDGMENT

San Juan, Puerto Rico, on October 14, 2009.

For the reasons set forth in the foregoing Opinion, which is adopted and integrated as part of this Judgment, the judgment issued by the Court of Appeals is reversed and the injunction requested by Petitioner is granted for the purpose of ordering the Secretary of the Treasury to cease and desist from using the final sale price to the consumer as tax basis for calculating the excise taxes to be paid for new vehicles imported into the country. In this manner, when determining the tax to be paid, this officer is instructed to adhere to the tax basis established in the Internal Revenue Code, that is, at the suggested sales price. Consequently, once the excise tax is established in accordance with the procedure established in Sec. 2011(c) of the aforementioned Code, the Secretary of the Treasury is obliged to issue a valid certificate of payment of excise taxes for the registration of the automobile in the Department of Transportation and Public Works.

Since the substitution of the tax basis by the Secretary of the Treasury has been implemented through its Regulation 7437, and since the text of the Internal Revenue Code cannot be understood to be modified or supplanted by the regulation, we declare invalid: subsection (25)(i) of Art. 2001-1, subsections (a)(4) and (d) of Art. 2011 (a)-4, and Art. 2011 (c)(3)-5 of said Regulation. In addition, this official is ordered to harmonize the remaining provisions of Regulation 7437 according to what is stated here.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Yiyi Motors v. ELA 2009 TSPR 159, 177 DPR_____

51

COURT'S OPINION

So states the Court states and orders and So the Acting Clerk of the Supreme Court certifies.  Associate Judge Mr. Martínez Torres issued a Conforming Opinion which Associate Judge Ms. Pabón Charneco joined. Chief Judge Mr. Hernández Denton issued Dissenting Opinion which Associate Judge Ms. Rodríguez Rodríguez joined. Associate Judge Ms. Fiol Matta issued a Dissenting Opinion.

Juliana Mosquera Soler
Interim Clerk of the Supreme Court

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.