UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO,<br>et al., | (Jointly Administered) |
| Debtors.[1] | |

-----------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3566-LTS |
| THE EMPLOYEES RETIREMENT SYSTEM<br>OF THE GOVERNMENT OF THE<br>COMMONWEALTH OF PUERTO RICO, | |
| Debtor. | |

-----------------------------------------------------------x

MEMORANDUM ORDER REGARDING MAGISTRATE
JUDGE'S MAY 6, MAY 15, AND MAY 30, 2019, ORDERS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

Before the Court are (i) the *Objection of Certain ERS Bondholders to the Magistrate Judge's May 6 and May 15, 2019 Orders on Motions to Compel* (Docket Entry No. 7035 in Case No. 17-3283,[2] the "Objection") and (ii) the *Reply in Support of Objection of Certain ERS Bondholders to the Magistrate Judge's May 6 and May 15, 2019 Orders on Motions to Compel and Objection to May 30, 2019 Order* (Docket Entry No. 7435, the "Reply") (the Objection and the Reply together, the "Objections").[3]  Through the Objections, the Bondholders seek to set aside the *Order on Motions to Compel* issued by Magistrate Judge Judith Gail Dein on May 6, 2019 (Docket Entry No. 6836, the "May 6 Order"), the *Supplemental Order on Motions to Compel* issued by Judge Dein on May 15, 2019 (Docket Entry No. 6971, the "May 15 Order"), and the *Order on Motion to Compel* issued by Judge Dein on May 30, 2019 (Docket Entry No. 7166, the "May 30 Order") (collectively, the "Discovery Orders"), which collectively denied various motions filed by the Bondholders seeking to compel the production of documents in connection with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* (Docket Entry No. 3418, the "Stay Relief Motion").  The Court has reviewed carefully the Discovery Orders and all pertinent submissions of the parties.  For the reasons stated below, the Objections are overruled as set forth herein.

B<small>ACKGROUND</small>

On February 25, 2019, by *Order Granting Urgent Motion to Expedite Consideration of Motion of Certain Secured Creditors of the Employees Retirement System of*

---

[2]    All docket entry references are to entries in Case No. 17-3283, unless otherwise noted.
[3]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay (Docket

Entry No. 371 in Case No. 17-3566, the "Scheduling Order"), this Court set an expedited

schedule for consideration of the Stay Relief Motion and referred any related discovery disputes

to Judge Dein.  In accordance with the Scheduling Order and subsequent orders entered by this

Court,[4] the Bondholders renewed their previously-served discovery demands, and also served

new discovery requests, upon ERS, the Commonwealth, the Puerto Rico Fiscal Agency and

Financial Advisory Authority ("AAFAF") (ERS, the Commonwealth, and AAFAF, collectively,

the "Government Parties"), and the Financial Oversight Management Board for Puerto Rico (the

"Oversight Board").  As relevant here, the Bondholders sought discovery from the Government

Parties regarding the planning and legislative intent behind House Joint Resolution 188 of 2017

("J.R. 188") and Act No. 106, which together in 2017 implemented a "pay as you go" ("PayGo")

system for Commonwealth employee pension contributions.  Although the Government Parties

produced some materials responsive to the Bondholders' discovery demands, they also withheld

certain documents under the deliberative process privilege, executive privilege, attorney-client

privilege, work product doctrine, and common interest doctrine.

On March 21, 2019, the Bondholders filed the *Motion of Certain Secured Creditors*

*of the Employees Retirement System of the Government of the Commonwealth of*

*Puerto Rico to Compel Discovery* (Docket Entry No. 5972, the "March 21 Motion") seeking,

inter alia, an order compelling the Government Parties "to produce a privilege log that provides

the information necessary for the Bondholders and the Court to assess their claims of privilege."

---

[4]     Pursuant to the *Order Granting Urgent Joint Motion Regarding the Scheduling of*
        *Discovery and Briefing in Connection with the Motion of Certain Secured Creditors of*
        *the Employees Retirement System of the Government of the Commonwealth of Puerto*
        *Rico for Relief from the Automatic Stay* (Docket Entry No. 6915), a final hearing on the
        Stay Relief Motion is currently set for July 2, 2019.

By *Order* dated April 2, 2019 (Docket Entry No. 6111), which resolved the March 21 Motion,

Judge Dein permitted the Government Parties to serve categorical privilege logs, provided that

the logs included certain enumerated information.  The Government Parties served a categorical

privilege log on April 10, 2019, a revised categorical privilege log on April 12 (the "April 12

Log"), and an individual entry log on April 14.[5]  (See *Government Parties' Response to*

*Movants' Objection to Magistrate Judge's May 6, 2019 and May 15, 2019 Orders on Motions to*

*Compel* (Docket Entry No. 7293, the "Response"), ¶ 12.)  The April 12 Log identified the

following seven categories of withheld documents:

1.　　Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with anticipated and ongoing litigation with ERS bondholders.

2.　　Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with pension reform proposals, including conversion to PayGo, the PayGo fee structure, legal theories regarding potential litigation, and treatment of benefits.

3.　　Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with PayGo implementation, including treatment, calculation, invoicing, and collection of PayGo fees.

4.　　Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice concerning draft pension reform legislation including circulating and commenting on interim drafts and analyses of Joint Resolution 188 and Act 106.

5.　　Confidential, pre-decisional, deliberative communications regarding pension reform legislation, including circulating and commenting on interim drafts, analyses of, and presentations on conversion to PayGo, PayGo fee structure, and treatment of benefits in connection with Joint Resolution 188 (enacted June 25, 2017) and Act 106 (enacted August 23, 2017).

---

[5]　　The Government Parties also served a revised individual entry log on April 22, 2019 (the "April 22 Log").  (Response ¶ 12; see Docket Entry No. 459-2 in Case No. 17-3566.)

6.    Confidential, pre-decisional, deliberative communications and/or documents regarding the drafting of fiscal plans and budgetary reporting documents concerning the effect of PayGo on Commonwealth budget and collection of PayGo fees, including communications circulating and commenting on interim drafts and analyses.

7.    Confidential, pre-decisional, deliberative AAFAF communications with Hacienda concerning PayGo implementation, including treatment, calculation, invoicing, and collection of PayGo fees.

(Docket Entry No. 6253-2.)

On April 15 and April 16, 2019, respectively, the Bondholders filed the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents in Privilege Log Categories 1 to 4 [Attorney-Client Privilege, Attorney Work Product, Common Interest]* (Docket Entry No. 6253, the "Attorney-Client Privilege Motion") and the *Motion of Certain Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents in Privilege Log Categories 1, 5 to 7 [Deliberative Process Privilege and Executive Privilege]* (Docket Entry No. 6320, the "Deliberative Process Privilege Motion" and, together with the Attorney-Client Privilege Motion, the "Motions to Compel"). Through the Motions to Compel, the Bondholders demanded production of all documents identified as privileged in the Government Parties' logs.  After hearing oral argument on the Motions to Compel, Judge Dein, in the May 6 Order, largely upheld the Government Parties' privilege assertions.  As to the Deliberative Process Privilege Motion, Judge Dein rejected the Bondholders' contentions that certain withheld documents were not subject to the deliberative process privilege because they were post-decisional and that any such privilege was waived as to communications between the Government Parties.  (May 6 Order at 2-4.)  Moreover, Judge Dein found that the Bondholders failed to demonstrate a substantial need for the withheld information. (Id. at 5.)  Judge Dein also overruled what she characterized as the Bondholders' "procedural

objections" to the Government Parties' invocations of the deliberative process and executive

privilege.  (Id. at 6.)  With respect to the parties' disputes concerning factual content in

allegedly privileged documents and the breadth of executive privilege, Judge Dein determined

that factual information may be protected from disclosure under the deliberative process

privilege when it is intertwined with deliberative analysis, and that AAFAF could assert

executive privilege in connection with its role as advisor to the Governor.  (Id. at 4-5.)  Judge

Dein nevertheless concluded that additional submissions were needed to determine whether the

Government Parties properly withheld factual information and whether the executive privilege

applied to AAFAF's advisors.  (Id.)

   As to the Attorney-Client Motion to Compel, Judge Dein determined that the

common interest doctrine applied to communications between ERS, the Commonwealth, and

AAFAF, thereby overruling the Bondholders' objection based on adversity of interests between

ERS and the Commonwealth, to the Government Parties' assertion of privilege over such

materials.  (Id. at 8.)  With respect to particular communications—and in consideration of the

Bondholders' arguments that the Government Parties waived attorney-client privilege as to

communications which included third parties, and that their application of the work product

doctrine was too broad—Judge Dein directed the Government Parties to create document-by-

document privilege logs for all documents in Category 3 of the April 12 Log and for all instances

where the work product doctrine was asserted exclusive of any other privilege.  (Id. at 9-10.)

Judge Dein reserved judgment on those issues, set a deadline of May 9, 2019, for the

Government Parties to provide their supplemental submissions, and ordered the Bondholders to

thereafter notify the Court as to whether their objections still stood.  (Id. at 4, 5, 9, 10.)

The Government Parties timely submitted the supplemental materials contemplated by the May 6 Order, including an individual entry log (the "May 9 Log") that listed all documents in Category 3 of the April 12 Log.  (Response ¶ 15.)  On May 15, 2019, having received no objections from the Bondholders pertaining to the adequacy of those submissions, Judge Dein upheld the remainder of the Government Parties' privilege claims.  (See May 15 Order.)  Relying on the declarations proffered by the Government Parties, Judge Dein ruled that the Government Parties correctly applied executive privilege to AAFAF's advisors and properly withheld factual information that could not be segregated from deliberative material in documents withheld pursuant to the deliberative process privilege.  (Id. at 2-5.)  Additionally, Judge Dein held that the attorney-client privilege applied to documents that the Government Parties shared with third parties.  (Id. at 6-7.)  Because no materials were withheld exclusively under the work product doctrine, Judge Dein declined to address the merits of the Bondholders' challenge to the Government Parties' work product claims.  (Id. at 6.)

On May 16, 2019, the Bondholders filed the *Motion to Compel Production of Documents Withheld as Privileged Based on Respondents' May 9, 2019, Submissions* (Docket Entry No. 6984, the "Renewed Motion to Compel").  In the Renewed Motion to Compel, the Bondholders stated that the Government Parties' supplemental submissions had not overcome their objections and that Judge Dein had issued the May 15 Order before they had the opportunity to so notify the Court.[6]  (Id. ¶ 4.)  While the Renewed Motion to Compel was pending, the Bondholders filed the Objection, on May 20, 2019.  Subsequently, by way of the

---

[6]     In the Objection, the Bondholders similarly note that they were "about to file th[e] very objections" to the Government Parties' supplemental submissions alluded to in the May 6 Order, but that such objections "were mooted by the May 15 Order."  (Objection at 10 n.2.)

May 30 Order, Judge Dein denied the Renewed Motion to Compel, thereby declining to alter her

rulings in the May 6 Order and the May 15 Order.

Pursuant to a briefing schedule set by this Court, the Government Parties filed

their Response to the Objection on June 6, 2019, and the Bondholders filed their Reply on June

13, 2019.  In the Reply, the Bondholders formally objected to the May 30 Order.

D<span style="font-variant:small-caps">ISCUSSION</span>

<u>Standard of Review</u>

Upon review of a timely objection to a non-dispositive order issued by a

magistrate judge, the district judge to whom the case is assigned must consider the objection and

modify or set aside any part of the order that "is clearly erroneous or contrary to law."  28

U.S.C.A. § 636(b)(1)(A) (West 2018); <u>see also</u> Fed. R. Civ. P. 72(a).  Under the "clearly

erroneous" standard, the reviewing court "must accept both the trier's findings of fact and the

conclusions drawn therefrom unless, after scrutinizing the entire record, [it] form[s] a strong,

unyielding belief that a mistake has been made."  <u>Phinney v. Wentworth Douglas Hosp.</u>, 199

F.3d 1, 4 (1st Cir. 1999) (citation and internal quotation omitted).  A magistrate judge's rulings

will be reviewed under the "contrary to law" standard when the motion "turns on a pure question

of law."  <u>PowerShare, Inc. v. Syntel, Inc.</u>, 597 F.3d 10, 15 (1st Cir. 2010).  "This means that, for

questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to

law' standard and review under Rule 72(b)'s de novo standard."  <u>Id.</u>  Mixed questions of law and

fact trigger a sliding scale of review pursuant to which:

> [t]he more fact intensive the question, the more deferential the level
> of review (though never more deferential than the 'clear error'
> standard); the more law intensive the question, the less deferential
> the level of review.

<u>Goat Island S. Condo. Ass'n, Inc. v. IDC Clambakes, Inc. (In re IDC Clambakes, Inc.)</u>, 727 F.3d

58, 64 (1st Cir. 2013) (citation omitted).

   The Bondholders argue in the Objections that the Discovery Orders are clearly

erroneous and contrary to law because (i) the Government Parties did not satisfy the

requirements of the deliberative process privilege (Objection ¶¶ 29-41), (ii) the Government

Parties have waived any deliberative process privilege for materials shared with each other (<u>id.</u>

¶¶ 42-46), (iii) the Bondholders' need for the materials in question outweighs any harm from

disclosure (<u>id.</u> ¶¶ 22-28), and (iv) AAFAF is not entitled to invoke the executive privilege (<u>id.</u> ¶

47).  The Bondholders further contend that Judge Dein erred because (v) the Government Parties

have not established that the attorney-client privilege applies to documents shared with third-

party non-lawyers (Reply ¶¶ 23-26), (vi) the common interest doctrine does not apply vis-à-vis

ERS and the other Government Parties (<u>id.</u> ¶¶ 27-28), and (vii) Judge Dein should have

conducted a substantive analysis of the Government Parties' work product claims given the

possibility that either this Court or the United States Court of Appeals for the First Circuit could

overrule the Government Parties' other privilege assertions, and the Government Parties failed to

demonstrate that the materials withheld on work product grounds were prepared for use in

litigation (<u>id.</u> ¶ 29).  For the reasons that follow, each of the Bondholders' objections is

overruled, and the Discovery Orders are affirmed.  The Court addresses the Bondholders'

specific arguments in turn below.


<u>Deliberative Process Privilege</u>

   "The deliberative process privilege 'shields from public disclosure confidential

inter-agency memoranda on matters of law or policy.'"  <u>Texaco Puerto Rico, Inc. v. Dep't of</u>

Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995) (quoting National Wildlife Fed'n v. United

States Forest Serv., 861 F.2d 1114, 1116 (9th Cir. 1988)).  "[T]o qualify for the privilege, a

document must be (1) predecisional, that is, 'antecedent to the adoption of agency policy,' and

(2) deliberative, that is, actually 'related to the process by which policies are formulated.'"  Id.

(quoting National Wildlife, 861 F.2d at 1117).  The privilege is a qualified one, meaning that

"[e]ven if a document satisfies the criteria for protection under the deliberative process privilege,

nondisclosure is not automatic."  Id. at 885.  Rather, in determining whether materials are

protected under the deliberative process privilege, courts must balance the evidentiary need for

such materials against the harm that could result from their disclosure.  Id.; see Bhatia Gautier v.

Gobernador, 199 D.P.R. 59, 87-89 (explaining that, under Puerto Rico law, it is the

government's burden to "present evidence and show the existence of [a] compelling interest of

greater hierarchy than the values protected by [the] right of freedom of information of citizens").


       A.     Factual Information Included in Deliberative Materials

As discussed above, in the May 6 Order, Judge Dein reserved decision on the

applicability of the deliberative process privilege to materials containing factual information and

directed the Government Parties to submit additional documentation in support of their privilege

assertions.  (May 6 Order at 5.)  In compliance with the May 6 Order, the Government Parties

submitted the *Supplemental Declaration of Mohammad Yassin Mahmud in Support of Assertion*

*of Deliberative Process Privilege by AAFAF* (Docket Entry No. 6887, the "Mahmud

Declaration") and the *Supplemental Declaration of Philippe Mesa Pabón in Support of Assertion*

*of Deliberative Process Privilege by the Commonwealth of Puerto Rico* (Docket Entry No. 6888,

the Pabón Declaration).  After evaluating the Mahmud Declaration and the Pabón Declaration,

together with those declarations originally submitted in support of the Deliberative Process

Motion (Docket Entry Nos. 457, 458, 459, in Case No. 17-3566), Judge Dein concluded that the Government Parties "sufficiently demonstrated that any factual information imbedded in the withheld documents is either itself deliberative or is so intertwined with deliberative information that disclosure is not appropriate." (May 15 Order at 4.) Judge Dein later reaffirmed that determination, opining that the Government Parties had "provide[d] sufficient detail concerning the withheld documents to carry their burden and show that factual information is intertwined with the privileged deliberations." (May 30 Order at 10-11.)

The Bondholders contend that it was clear error for Judge Dein to accept the Mahmud Declaration and the Pabón Declaration as sufficient to sustain the Government Parties' claims of deliberative process privilege. (Objection ¶ 31.) They further aver that Judge Dein applied the wrong legal standard in the May 30 Order by considering whether the factual material was related to the deliberations, rather than considering whether revealing the facts would reveal the deliberations. (Reply ¶ 11.) The Bondholders' arguments are unpersuasive.

As both sides acknowledge, the relevant inquiry "is not merely whether the documents contain factual information—or even whether the document is predominantly comprised of findings of fact—but rather the degree to which the facts are indissolubly linked to the broader analysis." Stalcup v. C.I.A., 768 F.3d 65, 70 (1st Cir. 2014). This question "hinges on whether the documents were 'prepared to facilitate and inform a final decision or deliberative function entrusted to the agency.'" Id. (quoting Providence Journal Co. v. U.S. Dep't of Army, 981 F.2d 552, 560 (1st Cir. 1992)). Here, it was not clear error for Judge Dein to conclude that the materials over which the Government Parties asserted the deliberative process privilege contained facts that were intertwined with deliberative analysis such that they could not be segregated and produced. In so holding, Judge Dein evaluated the declarations of several

government officials in conjunction with the April 22 Log and the May 9 Log and determined, as a factual matter, that the Government Parties properly invoked the deliberative process privilege. Indeed, Judge Dein thoroughly addressed, and rejected, the Bondholders' theory that the "pre-measures" financial information withheld could not conceivably reveal proposals under consideration by the Government Parties.  (See May 30 Order at 11 ("To the extent that financial information is being used, AAFAF has made clear that those numbers, both pre- and post-measures, are part and parcel of the policy alternatives being discussed.").)  Having independently reviewed the relevant submissions, this Court finds no clear error in Judge Dein's conclusion that the disclosure of any of the imbedded factual information would also reveal privileged deliberative material.

The Bondholders' argument that Judge Dein applied the incorrect legal standard similarly lacks merit.   By stating that the factual information withheld by the Government Parties was "part and parcel of the policy alternatives being discussed" and "tied to the deliberative communications between the officials" (May 30 Order at 11), Judge Dein did not, as the Bondholders suggest, consider merely "whether the facts were related to the deliberations" (Reply at ¶ 11).  Rather, citing Stalcup, Judge Dein ruled that the Government Parties "provid[ed] sufficient detail concerning the withheld documents to carry their burden and show that factual information is intertwined with the privileged deliberations."  (May 30 Order at 10-11.)  The May 30 Order therefore reflects and applies the proper legal standard—whether revealing the facts would reveal the deliberations.  Accordingly, the Bondholders' objection to Judge Dein's ruling concerning factual materials withheld by the Government Parties is overruled.

B.      Documents Created After Certification of the 2017 Fiscal Plan

The Bondholders further challenge Judge Dein's holding in the May 6 Order that the deliberative process privilege applies to documents created after March 13, 2017—the date on which the Oversight Board certified the Commonwealth Fiscal Plan (the "Fiscal Plan")—because the enactment of J.R. 188 and Act 106 involved deliberative decisions.   (Objection ¶¶ 32-39.)  According to the Bondholders, "Judge Dein wrongly treated [J.R.] 188 and Act 106 as separate 'decisions' for purposes of the privilege even though those laws did no more than execute decisions that had already been made in the March 13, 2017 [F]iscal [P]lan."  (Id. ¶ 32.) The Bondholders' argument rests upon the notion that the Oversight Board's broad authority under PROMESA to establish Commonwealth fiscal policy obviated the need for post-certification deliberations with respect to J.R. 188 and Act 106.  Hence, in the Bondholders view, "[o]nce the Oversight Board certified the new [F]iscal [P]lan on March 13, 2017, the Commonwealth and ERS were required by PROMESA to comply, and there was nothing left for them to deliberate about."  (Id. ¶ 36 (citing 48 U.S.C. § 2141(e)(2).)  The Bondholders further assert that the degree to which any documents related solely to the implementation of J.R. 188 and Act 106—in contrast to those documents concerning the underlying policy decision to adopt PayGo—"should have at least affected the [deliberative process] balancing analysis[,]" and that Judge Dein committed clear error by failing to take this into account.  (Id. ¶ 39.)  The Bondholders' arguments are misplaced.

"A document will be considered 'predecisional' if the agency can (i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates."  In re Pharm. Indus. Average Wholesale Price Litig., 254 F.R.D. 35, 39 (D. Mass.

2008) (quoting <u>Providence Journal</u>, 981 F.2d at 557).  Here, it was not clear error for Judge Dein

to consider the legislature's enactments of J.R. 188 and Act 106—rather than the Oversight

Board's March 13, 2017, certification of the Fiscal Plan—to be "specific agency decision[s]" to

which the withheld documents relate for purposes of this privilege analysis.

        This Court has previously recognized that PROMESA neither abrogated the

Commonwealth government's power to legislate nor vested the Oversight Board with such

legislative authority.  <u>See</u> <u>In re Fin. Oversight & Mgmt. Bd. for Puerto Rico</u>, 583 B.R. 626, 636

(D.P.R. 2017) ("PROMESA leaves the elected government in place and does not suspend it in

favor of direct management by the [Oversight Board]."); <u>id.</u> at 633 ("Although the [Oversight

Board]'s fiscal plan and budgeting powers give it a strong and substantially determinative voice

in overall strategy regarding the Commonwealth's revenues, expenses, and general direction for

responsible financial management, they do not imply that the [Oversight Board]'s role includes

detailed operational planning or direct executive authority over the implementation of those

plans and budgets.").  Consequently, as a legal matter, the Oversight Board's certification of the

Fiscal Plan could not have been the sole governmental decision that led to the Commonwealth's

implementation of the PayGo pension system.  Instead, as Judge Dein accurately stated during

the May 2, 2019, hearing, "the [F]iscal [P]lan was merely a broad framework that governed the

Governor's and legislature's separate, more detailed budgeting, spending, and legislative

decisions . . . ."  (Transcript of May 2, 2019 Hearing (Docket Entry No. 498 in Case No. 17-

3566.) at 19:7-9.)  Consistent with that characterization, following the Oversight Board's

certification of the Fiscal Plan, the Government Parties did in fact engage in substantial

deliberation and decision making in connection with the enactment and implementation of J.R.

188 and Act 106.  (<u>Compare</u>, <u>e.g.</u>, Response ¶ 21 (summarizing the "broad principles" set forth

in the Fiscal Plan), with id. ¶ 23 (enumerating the specific components of Act 106 not addressed

in the Fiscal Plan).)  Judge Dein thus correctly considered J.R. 188 and Act 106 "agency

decisions" for the purpose of her deliberative process privilege analysis.  Accordingly, this Court

affirms Judge Dein's conclusions that deliberative decisions were made after March 13, 2017,

and that the Government Parties properly withheld all materials reflecting those decisions.


C.    Waiver of the Deliberative Process Privilege

The Bondholders also argue that it was clear error for Judge Dein to apply the

deliberative process privilege to inter-agency memoranda on the basis that the Government

Parties share a common goal.  (Objection ¶ 46.)  Any deliberative privilege that may have

attached, the Bondholders assert, was waived due to the Government Parties' inherently adverse

relationships with one another.  (Id.)  In support of their position, the Bondholders point out that,

at the outset of these Title III cases, the Commonwealth and its instrumentalities owed ERS more

than $411 million in past due employer contributions.  (Id. ¶ 43.)  Moreover, citing Aurelius Inv.,

LLC v. Puerto Rico, 915 F.3d 838 (1st Cir. 2019), cert. granted, --- S. Ct. ---, 2019 WL 2270062

(U.S. June 20, 2019) (No. 18-1475), the Bondholders posit that the privilege cannot apply to

materials shared with the Oversight Board because it "is a distinct legal entity that is not even

part of the Puerto Rico government."  (Id. ¶ 45.)

It is well settled in the First Circuit that the deliberative process privilege applies

to inter-agency memoranda.  See Texaco Puerto Rico, 60 F.3d at 884; see also Hunton &

Williams LLP v. U.S. Envtl. Prot. Agency, 248 F. Supp. 3d 220, 247 (D.D.C. 2017) ("The

deliberative process can . . . span between two different agencies.") (citation omitted).  Here, as

indicated in the Response, each of the Government Parties, as well as the Oversight Board, is an

entity or instrumentality within the Commonwealth government.  (See Response ¶¶ 32-34.)  As

such, where the Government Parties share a common interest, they are entitled to invoke the

deliberative process privilege with respect to materials shared with one another that pertain to

that interest.  In the May 6 Order, Judge Dein held that "[a]lthough [the Government Parties']

interests may not always be aligned, in connection with the discovery sought for the Stay Relief

Motion, they do share a common interest in effective pension reform for the benefit of

pensioners and are afforded the deliberative process privilege when acting in a concerted effort

toward that goal."  (May 6 Order at 3-4.)  That determination was neither clearly erroneous nor

contrary to law.

   The Bondholders' arguments predicated on the Commonwealth's and ERS's

debtor-creditor relationship and the Oversight Board's status as a federal entity are unfounded

and, hence, do not warrant a departure from Judge Dein's rulings.  As to the former argument,

although the Bondholders are correct that ERS is an independent trust separate from other

Commonwealth agencies to which the Commonwealth was, at the start of these Title III cases,

indebted in the amount of $411 million (Objection ¶ 43 (citing 3 L.P.R.A. § 775)), the

Bondholders present no authority or other compelling argument in support of their position that,

in light of these circumstances, there can be no common interest between the Commonwealth

and ERS.  Therefore, finding no clear error in Judge Dein's determination that the

Commonwealth and ERS had a mutual interest in benefiting employees by assuring the flow of

pension payments to retirees, nor any improper application of law in the conclusion that the

interest permits them to invoke the deliberative process privilege over materials shared with one

another, this Court overrules Respondents' objections.

   Turning to the latter argument, the Government Parties are correct that

PROMESA describes the Oversight Board as "an entity within the territorial government for

which it is established . . . [,]" here, the Commonwealth government.  48 U.S.C. § 2121(c)(1).

The Bondholders nevertheless maintain that the First Circuit's holding in <u>Aurelius</u>—that the

Oversight Board is a "federal entity"—renders the plain language of PROMESA inapplicable.

(<u>See</u> Reply ¶ 20.)  The Court finds the Bondholders' reading of <u>Aurelius</u> overbroad and

misplaced.  Nowhere in the First Circuit's decision is the term "federal entity" used to refer to

the Oversight Board.  Instead, the court held that the Oversight Board's members are "federal

officers" and, more specifically, "principal officers of the United States,"—a term of art used

almost exclusively in the context of Appointments Clause jurisprudence.  <u>See</u> <u>Aurelius</u>, 915 F.3d

at 850 & 859-60; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Perez v. Mortg. Bankers Ass'n</u>, 135 S. Ct. 1199, 1216, 191 L. Ed.

2d 186 (2015) (explaining that the Framers "gave the President the power to appoint principal

officers of the United States" in Article II, Section 2, Clause 2 of the Constitution).  As a result,

it is far from established that <u>Aurelius</u>'s reach extends beyond the Appointments Clause context

and, in any event, it was certainly not clearly erroneous or contrary to law for Judge Dein to read

the decision more narrowly.  Accordingly, the Court rejects the Bondholders' contention that the

Oversight Board's status as a "federal entity" negates its common interest with the Government

Parties in the context of the deliberative process privilege.


     D.    <u>Substantial Need</u>

       The Bondholders assert that, even if the deliberative process privilege were to

apply, their substantial need for the materials at issue outweighs any harm that would result from

disclosure.   (Objection ¶ 25.)  Judge Dein erred, they maintain, in finding that "[t]he factual

information necessary for the Bondholders to present their position to the Court on [the Stay

Relief Motion] has been produced," and for that reason declining to order disclosure of

deliberative materials. (Objection ¶ 26 (quoting May 6 Order at 5) (alterations in original).)  The

Bondholders insist that "[t]he deliberations underlying the decision to abandon the longstanding

ERS system for the ostensibly new PayGo system are critically important" for the following

three reasons:

> First, there can be no stronger evidence of the equivalence of employer contributions and
> PayGo fees than evidence that the creators of the PayGo system considered them
> equivalent or took steps to make their equivalence.  Second, the fact that the authors of
> the PayGo system expressed the intention to divert the Bondholders' collateral is
> compelling evidence that the PayGo fees are simply diverted employer contributions.
> Finally, evidence that a motivation behind PayGo was to avoid paying the Bondholders
> the value they were owed, while continuing to make employers contribute to the pension
> plan, is strong evidence that the PayGo plan is pretextual and that the employer
> contributions were never truly eliminated in the first place.

(Id. ¶ 27.)    They further submit that, "[c]ontrary to Judge Dein's mistaken reasoning, these

proofs are not simply about 'intent': evidence of how the PayGo system was designed is strongly

probative of whether or not the Bondholders' collateral continues to exist."  (Id.)  The

Bondholders' arguments are unavailing.

This Court recently held, in connection with the parties' dispute concerning the

admissibility at the upcoming hearing on the Stay Relief Motion of testimony concerning a

statement allegedly linking threatened elimination of ERS bondholders' collateral with the

PayGo concept, that "evidence of intent to circumvent rights in collateral is, at best, of marginal

relevance to the central question to be considered at the Stay Relief Hearing: whether

bondholders have any security interest in employer payments under the PayGo system

established by the Pension Reform Legislation."  (*Memorandum Order Granting Respondents'*

*Urgent Motion In Limine* (Docket Entry No. 7222, the "June 5 Order") at 5.)   As explained in

the June 5 Order, the question of an ongoing security interest will turn principally on the

interpretation and application of the terms of the applicable Bond Resolution and

Commonwealth statutes.  (Id. at 5-6.)  The centrality of these issues similarly blunts the

Bondholders' ability to demonstrate that they have a substantial need for information covered by the deliberative process privilege.  The potentiality that evidence of an intent on the part of Government Parties to eliminate Bondholders' secured interests could bolster their arguments concerning the legal effects of the relevant documents and legislation is insufficient to demonstrate the requisite substantial need for the deliberative information.

To be sure, the Bondholders identify numerous instances where courts have ordered production of deliberative materials regarding intent or other conditions of mind.  (See Reply ¶ 10.)  In the cases cited, however, state of mind was at least arguably relevant to the asserted causes of action or defenses.  See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 145 F.3d 1422, 1423 (D.C. Cir. 1998) (trustee's fraudulent transfer claim under 11 U.S.C. § 548(a) could be established through, inter alia, a showing of intent); In re Pharm. Litig., 254 F.R.D. at 42 (government knowledge was "conceivably . . . relevant" to the defense of a False Claims Act claim); Fairholme Funds, Inc. v. United States, 128 Fed. Cl. 410, 425 (2016) (Fifth Amendment Takings Clause claim involved inquiry into "the character of the governmental action—why the government entered into" the agreement giving rise to the alleged taking), mandamus granted, order vacated in part sub nom. In re United States, 678 F. App'x 981 (Fed. Cir. 2017).[7]  Here, by contrast, the outcome of the Stay Relief Motion will "be determined based on the legal effects of [J.R. 188 and Act 106] rather than the parties' alleged intentions as to what those effects should be."  (June 5 Order at 6.)  Accordingly, Judge Dein made no clear

---

[7]    Notably, the court in Davis v. City of New York did not, as the Bondholders imply, overrule the City of New York's deliberative process privilege assertion on the basis that the plaintiffs had established a substantial need for the documents in question.  See No. 10 CIV. 699 SAS HBP, 2012 WL 612794, at *8 (S.D.N.Y. Feb. 27, 2012) ("I find that the plaintiffs have not demonstrated a sufficiently strong need for the materials to overcome the privilege." (citations and internal quotations omitted)).  The Bondholders' reliance on that case is therefore also misplaced.

error in holding that the Bondholders failed to show a substantial need for the withheld

information in connection with the Stay Relief Motion.

        E.     <u>Preclusion of Evidence</u>

The Bondholders contend that, as an alternative to compelling production of the

withheld deliberative materials, the Court should preclude the Government Parties from offering,

in connection with the Stay Relief Motion, evidence "about the[ir] intent, purpose, and

justifications . . . in adopting and implementing a PayGo pension system and preparing, enacting,

and implementing [J.R.] 188 and Act 106." (Objection ¶ 28 n.3.) This Court is sensitive to the

Bondholders' legitimate concerns in this regard. However, rather than categorically preclude the

Government Parties from offering any evidence on this topic at this juncture, the Court denies

the Bondholders' request for broad preclusion without prejudice to objections to proffers of

particular items of evidence. The Court deems this approach prudent given the fact-sensitive

nature of this evidentiary issue.

<u>Attorney-Client Privilege</u>

As discussed previously, the Bondholders also challenge Judge Dein's

conclusions that (i) the attorney-client privilege applies to documents shared with third-party

non-lawyers (Reply ¶¶ 23-26), (ii) the common interest doctrine protects communications

involving ERS and the other Government Parties (<u>id.</u> ¶¶ 27-28). "The attorney-client privilege . .

. safeguard[s] communications between attorney and client, but protects only those

communications that are confidential and are made for the purpose of seeking or receiving legal

advice." <u>Blattman v. Scaramellino</u>, 891 F.3d 1, 4 (1st Cir. 2018) (alteration in original) (citation

and internal quotation marks omitted). Hence, "disclosing attorney-client communications to a

third party [typically] undermines the privilege."  Cavallaro v. United States, 284 F.3d 236, 246-47 (1st Cir. 2002).

        A.      Documents Shared with Non-Lawyer Third Parties

The Bondholders argue that Judge Dein erred in ruling that the Government Parties adequately invoked the attorney-client privilege for the documents that they shared with third-party, non-lawyer advisors.  (Reply ¶ 23.)  In particular, the Bondholders criticize Judge Dein's description and application of the three-part test set forth in Columbia Data Prod., Inc. v. Autonomy Corp., No. CIV.A. 11-12077-NMG, 2012 WL 6212898, at *15 (D. Mass. Dec. 12, 2012), also known as the Kovel exception to waiver, for determining whether attorney-client privileged material disclosed to a non-lawyer third party will remain protected by the privilege: (i) whether the third-party communication was necessary or highly useful for the effective consultation between the lawyer and the client; (ii) whether the third-party was serving to translate information between the lawyer and the client; and (iii) whether the third party communication was made for the purpose of rendering legal advice, rather than business advice.  (Reply ¶¶ 23-26.)  The Bondholders claim that Judge Dein provided no explanation for her holdings that the first two elements were met, and that she applied the wrong legal standard as to the third element.  (Id. ¶¶ 24, 25.)  The Court disagrees.

As an initial matter, Judge Dein did indeed explain why she deemed each element of the Kovel exception satisfied.  The third-party communications were "needed for the effective resolution of Puerto Rico's restructuring," she opined.  (May 30 Order at 7.)  She also determined that the third parties "served a critical role in translating complex information necessary to effectuate the restructuring."  (Id.)  Additionally, after Judge Dein directed the Government Parties to submit a supplemental, document-by-document privilege log to enable her to evaluate whether

the communications in Category 3 served a legal or business purpose, she concluded that all the communications involving third parties over which attorney-client privilege was asserted either related to an ongoing litigation, related to the legality of policy or legislative proposals, or provided or reflected legal advice.  (Id. at 8-9.)  As the Government Parties correctly point out, the complex and unprecedented nature of Puerto Rico's restructuring "require[s] that [they] retain advisors to help with this effort."  (Response ¶ 63.)  Where, as here, "'the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others,' the attorney-client 'privilege must include all the persons who act as the attorney's agents.'" Cavallaro, 284 F.3d at 247 (quoting United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961)).  In short, it is readily apparent that Judge Dein scrutinized the applicable entries of the Government Parties' privilege logs—as this Court, too, has done—and reasonably determined that the third parties at issue served a necessary role acting as translators with respect to both legal advice and various government related issues.  Her decision regarding that necessity was not clearly erroneous.

B.  Common Interest

The Bondholders also contend that Judge Dein applied the wrong legal standard in concluding that the common interest doctrine protects communications between ERS and the other Government Parties.  (Objection ¶ 52.)  According to the Bondholders, Judge Dein erred by relying on a California bankruptcy case—In re Mortg. & Realty Tr., 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997)—which held that the common interest privilege "applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects." (Objection ¶ 52 (quoting May 6 Order at 8).)  The Bondholders explain that, in the First Circuit, "[t]he term 'common interest' typically entails an identical (or nearly identical) legal interest as

opposed to a merely similar interest." <u>Id.</u> (quoting <u>FDIC v. Ogden Corp.</u>, 202 F.3d 454, 461 (1st

Cir. 2000)).  They also claim that ERS and the other Government Parties cannot meet the First

Circuit's more stringent standard.  (<u>Id.</u> ¶ 53.)  The Bondholders again miss the mark.

Although the Bondholders are correct that the standard in the First Circuit for

evaluating whether there is a common interest is stricter than the standard cited by Judge Dein, it

does not follow that, in applying Judge Dein's reasoning to the more stringent standard, the result

would differ—it would not.  Judge Dein recognized that "ERS and the Commonwealth may be

adverse in some respects," but "with respect to the issues presently before the Court, they share a

common interest in pension reform for the benefit of pensioners."  (May 6 Order at 8.)  Nothing

in the May 6 Order or the other Discovery Orders suggests that the "common interest in pension

reform for the benefit of pensioners" does not constitute a "nearly identical legal interest" sufficient

to trigger the doctrine articulated in <u>FDIC</u>.  Similarly, neither <u>FDIC</u> nor any other authority in the

First Circuit mandates that parties have nearly identical interests *in all respects* for the common

interest doctrine to attach.  Here, the Government Parties all have identical interests in both

maintaining retirees' benefits and "restoring Puerto Rico to fiscal responsibility and prosperity."

(Response ¶ 71.)  Therefore, it was neither clear error nor contrary to law for Judge Dein to

recognize the common interest doctrine as applicable to the subject communications between ERS

and the other Government Parties.

<u>Work Product Doctrine and Executive Privilege</u>

Finally, because this Court upholds Judge Dein's rulings with respect to the

attorney-client privilege, it concurs in her determination that there is no need to address the

validity of the Government Parties' work product claims.   See <u>Lazare Kaplan Int'l, Inc. v. KBC</u>

Bank N.V., No. 1:11-CV-09490 (ALC), 2016 WL 4154274, at *4 (S.D.N.Y. July 22, 2016)

("Because the documents are privileged under attorney-client privilege, the Court need not

consider the applicability of the work-product privilege.").  Under similar logic, this Court does

not examine the validity of the Government Parties' assertions of executive privilege given its

rulings concerning the deliberative process privilege.  See United States v. One Tract of Real

Prop. Together With all Bldgs., Improvements, Appurtenances & Fixtures, 95 F.3d 422, 428 (6th

Cir. 1996) ("We need not consider the . . . argument that the information requested is protected

by executive privilege because we find that other grounds support the denial of the discovery

request.").

CONCLUSION

       The Court has considered the Bondholders' remaining arguments and finds them

to be without merit.  Accordingly, the Objections are overruled, and Judge Dein's May 6, May

15 and May 30, 2019, Orders stand.  The Bondholders' request for preclusion of all evidentiary

proffers by the Government Parties regarding intent is denied, without prejudice to objections to

specific items of evidence.

       This Memorandum Order resolves Docket Entry No. 7035 in Case No. 17-3283

and Docket Entry No. 518 in Case No. 17-3566.

SO ORDERED

Dated: June 27, 2019

                 /s/ Laura Taylor Swain
                LAURA TAYLOR SWAIN
                United States District Judge