**EXECUTION COPY**

## PLAN SUPPORT AGREEMENT

PLAN SUPPORT AGREEMENT, dated as of May 31, 2019, by and among (a) Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), as representative of the Commonwealth of Puerto Rico (the "**Commonwealth**"), (b) holders of GO Bond Claims and/or CW Guarantee Bond Claims, each as defined below, which may include the advisors or managers who are advising or managing a holder of GO Bond Claims on behalf of such holder as set forth on Exhibit "A" hereto, (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**GO Holders**"), and (c) holders of PBA Bond Claims, as defined below, which may include the advisors or managers who are advising or managing a holder of PBA Bond Claims on behalf of such holder as set forth on Exhibit "B" hereto (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**PBA Holders**"). The signatories hereto are referred to hereafter collectively as the "**Parties**" or individually as a "**Party**". Capitalized terms used but not otherwise defined herein shall have the meanings set forth in Article I below or in the Term Sheet (as defined below), as applicable[1].

## RECITALS

A.      Pursuant to the authority of Act 33 of the Legislative Assembly of Puerto Rico, approved on December 7, 1942, as amended, the Commonwealth issued the series of general obligation bonds (the "**GO Bonds**") set forth on Exhibit "C" hereto, including, without limitation, those GO Bonds as to which the Monolines (as defined below) have insured the payment of principal and interest with respect thereto.

B.      Pursuant to the authority of Act 56 of the Legislative Assembly of Puerto Rico, approved July 19, 1958, as amended, the Puerto Rico Public Buildings Authority ("**PBA**") issued the series of bonds (collectively, the "**PBA Bonds**") set forth on Exhibit "D" hereto, guaranteed by the Commonwealth, including, without limitation, those PBA Bonds as to which the Monolines have insured the payment of principal and interest with respect thereto.

C.      On June 30, 2016, the Puerto Rico Oversight, Management, and Economic Stability Act was signed into law by the President of the United States (P.L. 114-187) ("**PROMESA**").

D.      PROMESA created the Oversight Board and provided the Oversight Board with certain powers over the finances and restructuring process with respect to, among others, the Commonwealth and its instrumentalities, all as provided for in PROMESA.

E.      Pursuant to Act 2-2017, Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**") was appointed as the agent, of and advisor to, the Government of Puerto Rico, and granted authority with respect to the restructuring of any indebtedness issued by the Commonwealth and any governmental entity of the Commonwealth.

---

[1] In the event of any conflict between the terms defined in the Term Sheet and herein, the meanings set forth herein shall govern.

**RC C**

F.    On May 3, 2017 (the "**Commonwealth Petition Date**"), the Oversight Board filed a Title III petition on behalf of the Commonwealth (the "**Commonwealth PROMESA Proceeding**") in the United States District Court for the District of Puerto Rico (the "**Title III Court**").

G.    The Oversight Board is the representative of the Commonwealth in the Commonwealth PROMESA Proceeding pursuant to Section 315(b) of PROMESA.

H.    The Parties have engaged in good faith, arm's-length negotiations regarding the principal economic terms of a proposed restructuring of the GO Bonds, the PBA Bonds and claims against the Commonwealth based upon the Commonwealth's guarantee of payment of the PBA Bonds to be implemented in a manner to be mutually agreed upon as set forth in the term sheet annexed hereto as Exhibit "E" (the "**Term Sheet**").

I.    The Oversight Board consents to the Commonwealth's execution and delivery of this Agreement and to the Commonwealth's performing and exercising its rights under this Agreement, including, without limitation, the Commonwealth's right to terminate this Agreement and right to consent to any waiver or amendment, in each case, in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1    Recitals. The recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement.

Section 1.2    Definitions. The following definitions shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

*"Agreement"* shall mean, collectively, this Plan Support Agreement, and each exhibit annexed hereto or thereto, including, without limitation, the Term Sheet, as each may be amended, supplemented, or otherwise modified in accordance with the terms hereof or thereof.

*"Appointments Related Litigation"* shall mean, collectively, the litigation styled (a) In Re: The Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico, No. 18-1108, currently subject to a petition for a writ of certiorari before the United States Supreme Court, (b) In re: The Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico, No. 18-1746, currently pending in the United States Court of Appeals for the First Circuit, (c) Union de Trabajadores de la Industria Electrica y Riego (UTIER) v. Puerto Rico Electric Power Authority, et al., Adv. Pro. No. 17-AP-228-LTS, currently pending in the Title III Court, (d) Rene Pinto Lugo, et al. v. The Government of the United States of America, et al., Adv. Pro. No. 18-041-LTS, currently pending in the Title III Court, (e) Hermanidad De Empleados Del Fondo

Del Seguro Del Estado, Inc., et al. v. Government of the United States of America, et al., Adv. Pro. No. 18-066-LTS, currently pending in the Title III Court, (f) Hon. Rafael Hernandez-Montanez, et al. v. The Financial Oversight and Management Board of Puerto  Rico, Adv. Pro. No. 18-090-LTS, currently pending in the Title III Court, and (g) such other litigation as may be currently pending or as may be commenced during the period from and after the date hereof up to and including the Effective Date wherein claims or causes of action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigations have been asserted.

    *"Bankruptcy Code"* shall mean Title 11 of the United States Code, as amended, §§101, et seq.

        *"Bankruptcy Rules"* shall mean the Federal Rules of Bankruptcy Procedure.

        *"Business Day"* shall mean a day other than a Saturday, a Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

    *"Confirmation Order"* shall mean the order of the Title III Court confirming the Plan in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code made applicable in the PROMESA Proceedings in accordance with Section 301 of PROMESA, and, to the extent applicable, the order of the Title III Court approving a qualifying modification under Section 601 of PROMESA, which orders shall be in form and substance reasonably satisfactory to each Party.

    *"Covered Borrowers"* shall mean, collectively, the Commonwealth and, as of the PBA Filing date, PBA.

    *"CW Guarantee Bond Claims"* shall have the meaning set forth in the Term Sheet with, for purposes of the Plan, the amount of CW Guarantee Bond Claims calculated as the outstanding principal amount of the PBA Bonds minus the amount of unearned original issue discount and plus accrued, but unpaid, interest during the period up to, but not including, the PBA Filing Date.

    *"Debt Limit Objections"* shall mean, collectively, that certain (i) Omnibus Objection of (I) Financial Oversight and Management Board, Acting through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds, dated January 14, 2019 [Dkt. No. 4784], (ii) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds, dated May 21, 2019 [Dkt. No. 7057], and (iii) any other objections that may be filed pertaining to the same form and basis of requested relief.

    *"Definitive Documents"* shall mean, collectively, the documents, including, without limitation, any related agreements, instruments, schedules or exhibits, that are necessary or desirable to implement, or otherwise relate to, the terms and provisions set forth herein, in the Term Sheet, the Plan (including any amendments, modifications and supplements thereto), the

3

Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, and bond resolutions, as amended or as repealed and replaced, each having terms and conditions consistent with this Agreement and PROMESA, in all respects and otherwise be in form and substance reasonably satisfactory to each Party; provided, however, that the rights of each Party with respect to the documentation relating to the treatment of Insured Claims shall be governed exclusively by the terms and provisions of the Term Sheet.

*"Disclosure Statement"* shall mean the disclosure statement filed with respect to the Plan with the Title III Court by the Oversight Board in the PROMESA Proceedings in accordance with section 1125 of the Bankruptcy Code, made applicable in the PROMESA Proceedings in accordance with Section 301 of PROMESA, which disclosure statement shall be in form and substance reasonably satisfactory to each Party.

*"Disclosure Statement Order"* shall mean the order of the Title III Court (a) approving the form of Disclosure Statement and the adequacy of the information contained therein in accordance with section 1125 of the Bankruptcy Code, made applicable in the PROMESA Proceedings in accordance with Section 301 of PROMESA, and (b) authorizing, among other things, the form and manner of solicitation of (i) acceptance and rejections to the Plan, and (ii) elections, if applicable, of distributions thereunder, which order shall be in form and substance reasonably satisfactory to each Party.

*"Effective Date"* shall mean the date on which the transactions contemplated by the Plan and authorized by the Title III Court pursuant to the Confirmation Order have been substantially consummated, but, under all circumstances, shall be the date no later than the tenth (10th) calendar day following the date on which all conditions to the effectiveness of the Plan have been satisfied or waived in accordance with its terms.

*"ERS"* shall mean the Employee Retirement System of the Government of the Commonwealth of Puerto Rico.

*"ERS Title III Case"* shall mean the Title III case commenced by the Oversight Board on behalf of ERS in the Title III Court.

*"Excess Cash"* shall have the meaning set forth in the Term Sheet.

*"Face Amount"* shall mean, solely for purposes of the signature pages affixed hereto, (a) with respect to current interest GO Bonds, the outstanding principal amount of such GO Bonds as of the date of this Agreement, (b) with respect to current interest PBA Bonds, the outstanding principal amount of such PBA Bonds as of the date of this Agreement, and (c) with respect to capital appreciation GO Bonds, the accreted value of such GO Bonds during the period up to, but not including, the Commonwealth Petition Date.

*"Final Order"* shall mean an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial reargument, or rehearing thereof has been sought, (i) such

4

order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the applicable local Bankruptcy Rules.

*"GO Bond Claims"* shall mean, collectively, (i) the claims against the Commonwealth arising from or relating to the GO Bonds, which shall be calculated, for purposes of the Plan, as the outstanding principal amount of the GO Bonds (which amount shall include accretion, if any, as of the Commonwealth Petition Date), minus the amount of unearned original issuance discount and plus accrued but unpaid interest up to, but not including, the Commonwealth Petition Date and (ii) the CW Guarantee Bond Claims.

*"Government Parties"* shall mean, collectively, the Oversight Board, AAFAF, the Commonwealth, and the PBA.

*"Government Released Claims"* shall mean, collectively, any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which any Party, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Government Releasee arising from, related to, or in connection with PBA, the PBA Bonds, the PBA Bond Claims, the GO Bonds, the GO Bond Claims, CW Guarantee Bond Claims, or the PBA Litigation, and arising prior to the Effective Date; provided, however, that "Government Released Claims" shall not include any and all rights, privileges, claims, demands, liabilities, or causes of action of any and every kind, character or nature whatsoever (a) against (i) the Commonwealth or the PBA arising from or relating to the Plan or the securities to be issued pursuant to the Plan, or (ii) a Government Party unrelated to the GO Bonds, the GO Bond Claims, CW Guarantee Bonds Claims, the PBA Bonds, the PBA Bond Claims, or PBA, or (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct.

*"Government Releasees"* shall mean the Government Parties, together with their respective current or former board members, directors, principals, agents, officers, employees, advisors and professionals, in each case, in their capacities as such, including, without limitation, any and all advisors and professionals retained by the Government Parties in connection with the PROMESA Proceedings, in their respective capacities as such.

*"HTA"* shall mean Puerto Rico Highways and Transportation Authority.

*"HTA Title III Case"* shall mean the Title III case commenced by the Oversight Board on behalf of HTA.

*"Insured Claims"* shall mean, collectively, Insured GO Bond Claims and Insured PBA Bond Claims.

*"Insured GO Bond Claims"* shall mean, collectively, those GO Bond Claims, the principal and interest payments of which have been insured by a Monoline.

*"Insured PBA Bond Claims"* shall mean, collectively, those PBA Bond Claims, the principal and interest payments of which have been insured by a Monoline.

*"Invalidity Actions"* shall mean, collectively, those litigations set forth on Schedule 1 to the Term Sheet.

*"Late Vintage Litigation"* shall have the meaning set forth in the Term Sheet.

*"LCDC"* shall mean the Lawful Constitutional Debt Coalition, consisting of the LCDC Holders.

*"LCDC Holders"* shall mean, collectively, Aristeia Capital, LLC, Farmstead Capital Management, FCO Advisors LLC, GoldenTree Asset Management LP, Monarch Alternative Capital LP, Taconic Capital Advisors L.P., and Whitebox Advisors L.L.C., each on behalf of itself or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms hereof.

*"Lien Challenge Actions"* shall mean, collectively, those litigations set forth on Schedule 2 to the Term Sheet.

*"Monolines"* shall mean Ambac Assurance Corp., Assured Guaranty, Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation, as insurers of GO Bonds and PBA Bonds, as applicable.

*"New Bonds"* shall have the meaning set forth in the Term Sheet.

*"PBA Bond Claims"* shall mean, collectively, the claims against the PBA arising from or relating to the PBA Bonds, which shall be calculated, for the purposes of the Plan, as the outstanding principal amount of the PBA Bonds (which amount shall include accretion, if any, as of the PBA Filing Date), minus the amount of unearned original issue discount and plus accrued, but unpaid, interest up to, but not including, the PBA Filing Date.

*"PBA Filing Date"* shall mean, the date upon which the Oversight Board files (a) a Title III petition on behalf of PBA in the Title III Court or (b) an application in the Title III Court to approve a qualifying modification on behalf of PBA.

*"PBA Litigation"* shall mean the litigation styled The Financial Oversight and Management Board for Puerto Rico v. Puerto Rico Public Building Authority, Adv. Pro. No. 18-AP-149-LTS, currently pending in the Title III Court.

*"PBA PROMESA Proceeding"* shall mean the Title III case commenced by the Oversight Board on behalf of PBA in the Title III Court or, in the event that the LCDC and the

6

QTCB Group propose to the Oversight Board a modification of the PBA Bonds under Title VI of
PROMESA, the application to approve a qualifying modification filed by the Oversight Board on
behalf of PBA.

*"Plan"* shall mean the joint plan of adjustment for the Commonwealth, the PBA, and in
accordance with Section 312 of PROMESA or, if applicable, a qualifying modification approved
under Section 601 of PROMESA and incorporating the terms and provisions herein and in the
Term Sheet, the form and substance of which shall be reasonably satisfactory to each Party
(including, without limitation, with respect to any matter relating to the Monolines); provided,
however, that, in the event that the inclusion of other entities will not negatively economically
impact the treatment afforded in the Term Sheet, with the consent of the LCDC and the QTCB
Group, which consent shall not be unreasonably withheld, the Oversight Board may include in a
plan of adjustment such additional entities as it determines appropriate.

*"Plan Supplement"* shall mean, the volume(s) of documents, agreements and
instruments, including, without limitation, the Definitive Documents, which shall be filed with
the Title III Court in connection with the Plan and consummation of the transactions
contemplated therein, and each of which shall be in form and substance reasonably satisfactory
to each of the Parties; provided, however, that the rights of each Party with respect to the
documentation relating to the treatment of Insured Claims shall be governed exclusively by the
terms and provisions of the Term Sheet.

*"PROMESA Proceedings"* shall mean, collectively, the Commonwealth PROMESA
Proceeding and the PBA PROMESA Proceeding.

*"PSA Creditors"* shall mean, collectively, the GO Holders and the PBA Holders.

*"Qualified Marketmaker"* shall mean an entity that (x) holds itself out to the market as
standing ready in the ordinary course of its business to purchase from customers and sell to
customers debt securities such as the GO Bonds or the PBA Bonds or enter with customers into
long and short positions in debt securities such as the GO Bonds or the PBA Bonds, in its
capacity as a dealer or market marker in such GO Bonds or PBA Bonds; (y) is in fact regularly in
the business of making a market in debt securities; and (z) if transacting with respect to GO
Bonds or PBA Bonds, is registered with Securities and Exchange Commission and financial
institutions regulatory authority.

*"QTCB Group"* shall mean the QTCB Noteholder Group, consisting of the QTCB
Noteholders.

*"QTCB Noteholders"* shall mean, collectively, Canyon Capital Advisors LLC, OZ
Management LP, and Davidson Kempner Capital Management LP, each on behalf of itself or on
behalf of its participating clients or certain of its respective managed funds and, in each case,
their respective successors and assigns with respect to transfers made in accordance with the
terms hereof.

Section 1.3    Other Terms. Other terms may be defined elsewhere in this Agreement
and, unless otherwise indicated, shall have such meaning throughout this Agreement. As used in
this Agreement, any reference to any federal, state, local, or foreign law, including any

7

applicable law, will be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise. The words "include", "includes", and "including" will be deemed to be followed by "without limitation." Pronouns in masculine, feminine or neutral genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement", "herein", "hereof", "hereby", "hereunder", and words of similar impact refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited,

Section 1.4    Interpretations.  The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties hereto and no presumption or burden of proof will arise favoring or disfavoring any party hereto because of the authorship of any provision of this Agreement.

Section 1.5    Exhibits.  Each of the exhibits, annexes, signature pages and schedules annexed hereto are expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes and schedules.

## ARTICLE II
## GENERAL PROVISIONS

Section 2.1    Financial Information.  Each of the Government Parties acknowledges and agrees that (a) the financial information set forth on signature pages affixed to this Agreement and the CUSIP numbers for the GO Bonds and PBA Bonds provided by the Parties pursuant to Section 2.2 hereof are proprietary, privileged, and confidential, and (b) unless otherwise ordered by the Title III Court, shall use their reasonable best efforts to protect the confidential nature of such financial information and CUSIP numbers, including, without limitation, in filings to be made in the Title III Court or any other public release.

Section 2.2    CUSIP Information.  Unless the then current information has previously been provided to the Oversight Board, within five (5) Business Days after the date hereof, each of the GO Holders and PBA Holders shall provide the Oversight Board, in writing, the CUSIP numbers for each of the GO Bonds and PBA Bonds, if any, such Party owns or has due investment management responsibility and authority for funds or accounts which own such GO Bonds or PBA Bonds, as the case may be. In addition, within five (5) Business Days after the date that the Court enters the Disclosure Statement Order, each of the GO Holders and PBA Holders shall provide the Oversight Board, in writing, the CUSIP numbers for each of the GO Bonds and PBA Bonds, if any, such Party then owns or has due investment management responsibility and authority for funds or accounts which own such GO Bonds or PBA Bonds, as the case may be.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

Section 3.1    Representations and Warranties of the Oversight Board.  The Oversight Board hereby represents and warrants that: (a) it is duly created in accordance with the terms and

8

provisions of PROMESA with all requisite consent, approval, power and authority to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite, consent, approval, power and authority to execute and deliver and to perform its obligations under this Agreement and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it or any law, rules or regulations applicable to it; and (c) except with respect to the Appointments Related Litigation, no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.2   Representations and Warranties of AAFAF.  AAFAF hereby represents and warrants that: (a) it is duly created under the laws of the jurisdiction of its organization with all requisite consent, approval, power and authority to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite, consent, approval, power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.3   Representations and Warranties of the Commonwealth.  The Commonwealth hereby represents and warrants that, subject to entry of an order of the Title III Court: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite, consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby: (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.4   Representations and Warranties of PBA.  PBA hereby represents and warrants that, subject to entry of an order of the Title III Court: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite, consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to

9

perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.5    Representations and Warranties of the GO Holders. Each of the GO Holders, severally and not jointly, hereby represents and warrants on behalf of itself that, as of the date hereof: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (d) it owns or has due investment management responsibility and authority for funds or accounts which own the GO Bonds of no less than the Face Amounts set forth on the signature pages affixed to this Agreement as of the date hereof, which it would be entitled to vote in connection with the solicitation of acceptances and rejections to the Plan, other than potentially with respect to the Insured GO Bond Claims, and that, as of the date hereof, subject to any liens or encumbrances permitted by section 4.5(a), it has not sold, transferred, pledged, hypothecated or assigned such GO Bonds or any voting, consent or direction rights related to such GO Bonds to any person or entity, that would prevent or adversely affect in any way such GO Holders' performance of its obligations contained in this Agreement at the time such obligations are required to be performed; provided, however, that each of the Parties acknowledges that each Insured GO Bonds Claim shall be voted in accordance with Section 301(c)(3) of PROMESA, so long as this Agreement remains in effect.

Section 3.6    Representations and Warranties of the PBA Holders. Each of the PBA Holders, severally and not jointly, hereby represents and warrants on behalf of itself that, as of the date hereof: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; (c) no proceeding,

10

litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (d) it owns or has due investment management responsibility and authority for funds or accounts which own the PBA Bonds of no less than the Face Amounts set forth on the signature pages affixed to this Agreement as of the date hereof, which it would be entitled to vote in connection with the solicitation of acceptances and rejections to the Plan, other than potentially with respect to the Insured PBA Bond Claims, and that, as of the date hereof, subject to any liens or encumbrances permitted by Section 4.6(a), it has not sold, transferred, pledged, hypothecated or assigned such PBA Bonds or any voting, consent or direction rights related to such PBA Bonds to any person or entity, that would prevent or adversely affect in any way such PBA Holders' performance of its obligations contained in this Agreement at the time such obligations are required to be performed; provided, however, that each of the Parties acknowledges that each Insured PBA Bond Claim shall be voted in accordance with Section 301(c)(3) of PROMESA, so long as this Agreement remains in effect.

Section 3.7    Representations of the Parties to this Agreement. Each Party, severally and not jointly, represents and acknowledges that: (a) in executing this Agreement, it does not rely, and has not relied, upon any representation or statement made by any other Party or any of such Party's representatives, agents or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as may be stated specifically in this Agreement; (b) in executing this Agreement, it has relied entirely upon its own judgment, beliefs and interest and the advice of its counsel and that it has had a reasonable period of time to consider the terms of this Agreement before entering into it; and (c) it has reviewed this Agreement and that it fully understands and voluntarily accepts all of the provisions contained herein. Nothing contained herein shall limit or otherwise modify any commutation or other separate agreement or instrument entered into by one or more GO Holders or PBA Holders, on the one hand, and a Monoline, on the other hand.

## ARTICLE IV
## COVENANTS

Section 4.1    Covenants of the Oversight Board. The Oversight Board shall take, and cause the Commonwealth and, following the commencement of the PBA PROMESA Proceeding, PBA to take, all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof. Such actions shall include, but not be limited to, (a) commencing the PBA PROMESA Proceeding by a date no earlier than the date that the Oversight Board files the Plan and Disclosure Statement, (b) filing the Plan and Disclosure Statement, in form and substance consistent with this Agreement and reasonably acceptable to the Parties, with the Title III Court by October 15, 2019, (c) prosecuting, in a timely and

11

appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (d) taking such action as is necessary to reconcile Excess Cash by the earlier of (i) twenty (20) days prior to the Effective Date and (ii) February 29, 2020, (e) as soon as reasonably practicable following the date hereof, filing a motion or motions to stay the PBA Litigation and the Late Vintage Litigation, (f) as soon as commercially practicable, seeking (or causing to be sought) ratings on the New Bonds by the applicable ratings agencies as contemplated in accordance with the terms and provisions of the Term Sheet, (g) using its reasonable best efforts to cause the New Bonds, including, without limitation, in connection with the use of custodial trusts by any of the Monolines, to be tax-exempt to the extent permitted by law, including, without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities, and only if the Oversight Board and the Commonwealth determine in their joint and absolute discretion, upon consultation with one representative/advisor for each of the LCDC and the QTCB Group (which representatives/advisors shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board), to seek a private letter ruling from the Internal Revenue Service determining that interest on the New Bonds will be exempt from federal income taxes, and (h) refraining from commencing any action or proceeding or asserting any claim or objection against any GO Holder or PBA Holder relating to the GO Bonds or the PBA Bonds, as the case may be, and taking all reasonable efforts to prevent any other person or entity (private or governmental) from commencing any such action or proceeding or asserting any such claim or objection.

Section 4.2    Covenants of AAFAF. AAFAF shall take, and cause the Commonwealth and the PBA to take, all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof. Such actions shall include, but not be limited to, (a) prosecuting, in a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (b) taking such action as is necessary to reconcile Excess Cash by the earlier of (i) twenty (20) days prior to the Effective Date and (ii) February 29, 2020, (c) as soon as reasonably practicable following the date hereof, filing or supporting a motion or motions to stay the PBA Litigation and the Late Vintage Litigation promptly following the date hereof, (d) as soon as commercially practicable, seeking (or causing to be sought) ratings on the New Bonds by the applicable ratings agencies as contemplated in accordance with the terms and provisions of the Term Sheet, (e) using its reasonable best efforts to cause the New Bonds, including, without limitation, in connection with the use of custodial trusts by any of the Monolines, to be tax-exempt to the extent permitted by law, including, without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities, and only if the Oversight Board and the Commonwealth determine in their joint and absolute discretion, upon consultation with one

representative/advisor for each of the LCDC and the QTCB Group (which
representatives/advisors shall have executed a confidentiality agreement in form and substance
satisfactory to the Oversight Board), to seek a private letter ruling from the Internal Revenue
Service determining that interest on the New Bonds will be exempt from federal income taxes,
(f) using its reasonable best efforts to cause the Legislature to enact the legislation required for
the issuance of the New Bonds and to facilitate confirmation and consummation of the Plan, (g)
providing the Oversight Board with such financial information as shall be reasonably requested
to be necessary to prosecute the PROMESA Proceedings, and (h) refraining from commencing
any action or proceeding or asserting any claim or objection against any GO Holder or PBA
Holder relating to the GO Bonds or the PBA Bonds, as the case may be, and taking all
reasonable efforts to prevent any other person or entity (private or governmental) from
commencing any such action or proceeding or asserting any such claim or objection.

Section 4.3    Covenants of the Commonwealth. The Commonwealth shall take all
actions necessary to obtain, and shall not, nor encourage any other person to, take any action
which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and
the Disclosure Statement, the approval of the Disclosure Statement and the entry of the
Confirmation Order and the consummation, implementation and administration of the Plan,
including the execution and delivery of the Definitive Documents, provided that the Disclosure
Statement, the Plan (and its consummation, implementation and administration) and the other
Definitive Documents are consistent with the terms herein and the Term Sheet, including,
without limitation, that the Parties have acted in good faith in connection with the negotiation of
the terms hereof and thereof. Such actions shall include, but not be limited to, (a) prosecuting, in
a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of
the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings,
(b) taking such action as is necessary to reconcile Excess Cash by the earlier of (i) twenty (20)
days prior to the Effective Date and (ii) February 29, 2020, (c) as soon as reasonably practicable
following the date hereof, filing or supporting a motion or motions to stay the PBA Litigation
and the Late Vintage Litigation, (d) as soon as commercially practicable, seeking (or causing to
be sought) ratings on the New Bonds by the applicable ratings agencies as contemplated in
accordance with the terms and provisions of the Term Sheet, (e) using its reasonable best efforts
to cause the New Bonds, including, without limitation, in connection with the use of custodial
trusts by any of the Monolines, to be tax-exempt to the extent permitted by law, including,
without limitation, providing, or causing to be provided, any and all information required or
requested by federal and applicable local tax laws and federal and applicable local taxing
authorities, and only if the Oversight Board and the Commonwealth determine in their joint and
absolute discretion, upon consultation with one representative/advisor for each of the LCDC and
the QTCB Group (which representatives/advisors shall have executed a confidentiality
agreement in form and substance satisfactory to the Oversight Board), to seek a private letter
ruling from the Internal Revenue Service determining that interest on the New Bonds will be
exempt from federal income taxes, (f) using its reasonable best efforts to cause the Legislature to
enact the legislation required for the issuance of the New Bonds and to facilitate confirmation
and consummation of the Plan, and (g) providing the Oversight Board with such financial
information as shall be reasonably requested to be necessary to prosecute the Commonwealth
PROMESA Proceeding, and (h) refraining from commencing any action or proceeding or
asserting any claim or objection against any GO Holder or PBA Holder relating to the GO Bonds
or the PBA Bonds, as the case may be, and taking all reasonable efforts to prevent any other

13

person or entity (private or governmental) from commencing any such action or proceeding or asserting any such claim or objection.

Section 4.4    Covenants of PBA. PBA shall take all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof. Such actions shall include, but not be limited to, (a) prosecuting, in a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (b) informing the Oversight Board by a date no earlier than the date upon which the Oversight Board files the Disclosure Statement and Plan that the PBA desires to effect a plan to adjust its debts, (c) as soon as reasonably practicable following the date hereof, filing or supporting a motion or motions to stay the PBA Litigation, (d) providing the Oversight Board with such financial information as shall be reasonably requested to be necessary to prosecute the PBA PROMESA Proceeding, and (e) refraining from commencing any action or proceeding or asserting any claim or objection against any GO Holder or PBA Holder relating to the GO Bonds or the PBA Bonds, as the case may be, and taking all reasonable efforts to prevent any other person or entity (private or governmental) from commencing any such action or proceeding or asserting any such claim or objection.

Section 4.5    Covenants of the GO Holders. Subject to the terms and conditions hereof, each of the GO Holders, severally and not jointly, hereby covenants and agrees as follows:

(a)    None of the GO Holders shall sell, transfer, pledge, hypothecate or assign (a "**Transfer**") any of the GO Bond Claims, or any voting, consent, or direction rights or participations or other interests therein (collectively, the "**GO Interests**") during the period from the date hereof up to and including the earlier to occur of (i) the Effective Date and (ii) the termination of this Agreement in accordance with the provisions of Section 6.1 hereof; provided, however, that, notwithstanding the foregoing, each of the GO Holders may transfer any GO Interests to (1) another PSA Creditor or (2) in the event that the transferee is not a PSA Creditor at the time of Transfer, such transferee executes and delivers, within five (5) calendar days after execution thereof, to counsel for the Oversight Board and AAFAF, the Joinder Agreement attached hereto as Exhibit "F" (a "**Qualified Transferee**"), pursuant to which (y) such Qualified Transferee shall (i) assume all the rights and obligations of the transferor in accordance with the terms and conditions of this Agreement and (ii) such Qualified Transferee shall then be deemed a PSA Creditor for all purposes herein, including, without limitation, with respect to any additional GO Bonds held by such Qualified Transferee at the time it joins this Agreement, and shall assume all of the rights and obligations hereunder (other than the right to the PSA Restriction Fee and the Consummation Costs, as defined and set forth in the Term Sheet) and (z) on or after the effective date of the Transfer, such GO Holder shall be deemed to have relinquished its rights (other than the right to the PSA Restriction Fee and the Consummation Costs, as defined and set

forth in the Term Sheet), and be released from its obligations (other than as set forth in Section 4.5(c) hereof) on or after the effective date of the Transfer under this Agreement solely to the extent of such transferred rights; and, provided, further, that, to the extent that a Transfer violates the provisions of this Section 4.5(a), it shall be void *ab initio* and the applicable GO Bond Claims or the CW Guarantee Bond Claims and the GO Holder attempting such Transfer shall continue to remain subject to the terms of this Agreement; and, provided, further, that nothing contained herein is intended, nor shall it be construed, to preclude any of the GO Holders from acquiring additional GO Bond Claims, PBA Bond Claims or CW Guarantee Bond Claims; provided, however, that any such GO Bond Claims, PBA Bond Claims, CW Guarantee Bond Claims acquired from and after the date hereof shall automatically and immediately upon acquisition by a GO Holder be deemed subject to all of the terms and provisions of this Agreement; and, provided, further, that the provisions of this Section 4.5(a) shall not apply to the grant of any liens or encumbrances in favor of a bank or broker-dealer holding custody of securities in the ordinary course of business and which lien or encumbrance is released upon the Transfer of such securities. Notwithstanding the foregoing, nothing contained herein shall restrict or prohibit any party from taking any action required by the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, any rule or regulations promulgated thereunder, or by any other applicable law or regulation.

(b)     None of the GO Holders shall, except as expressly provided herein, (i) file any additional claims or proofs of claim, whatsoever, with the Title III Court against the Commonwealth (including secured, unsecured, administrative or substantial contribution claims), on account of any GO Bonds, GO Bond Claims or CW Guarantee Bond Claims, provided that the failure to file any additional proofs of claim as a result of its obligations under this clause (i) shall not prejudice, nor shall it be deemed to be a limitation of, such GO Holders' aggregate holdings of GO Bond Claims or CW Guarantee Bond Claims, (ii) except as permitted by Section 4.5(d) below solely with respect to the Monolines, file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action or matter on account of its GO Bonds, GO Bond Claims or CW Guarantee Bond Claims (and each such GO Holder agrees to stay all such pending litigations, proceedings, actions or matters) or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims, or (iii) aid any person in taking any action with respect to the Government Released Claims that is prohibited by this Section 4.5(b).

(c)     Each of the GO Holders, solely in its capacity as holder of GO Bonds, GO Bond Claims or CW Guarantee Bond Claims, severally and not jointly, shall (i) support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein or in the Term Sheet, or impede or preclude, the filing of the Plan, the administration of the PROMESA Proceedings, the approval of the Disclosure Statement, and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that such Disclosure Statement, Confirmation Order and Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, and (ii) in accordance with the provisions of Section 5.1 hereof, (A) not consent to or vote for any modification of the Plan unless such modification is proposed or supported by the Oversight Board, AAFAF, the

Commonwealth, and the PBA and has been made in accordance with the provisions of Section 7.2 hereof, and (B) not vote for or support any PBA or Commonwealth plan of adjustment not proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and PBA, so long as none of the Government Parties is in material breach of their obligations sets forth in this Agreement; provided, however, that each of the Parties acknowledges that each Insured GO Bond Claim shall be voted in accordance with Section 301(c)(3) of PROMESA so long as this Agreement remains in effect.

(d)     Subject to the terms set forth herein, none of the GO Holders shall be limited or prohibited from (i) taking any action that any such GO Holder shall deem necessary or appropriate to preserve, protect or defend any of its rights under this Agreement, the Plan, or the other Definitive Documents, (ii) taking any action to defend itself against the claims and causes of action asserted in the Late Vintage Litigation to the extent such litigation is not otherwise stayed, or the claims and causes of action asserted in any other litigation that is not stayed, (iii) asserting any claims or causes of action against any Party that breaches this Agreement, or (iv) in the case of any Insured GO Holder, taking any action such Insured GO Holder shall deem necessary or appropriate as against a Monoline to preserve, protect or defend any of its rights under any policy of insurance issued by a Monoline with respect to any Insured GO Bond Claims. Without in any way limiting the foregoing, to the extent the Plan and the Definitive Documentation are consistent with the Term Sheet and the terms herein, none of the GO Holders shall take any action to oppose confirmation of the Plan with respect to the Covered Borrowers other than to vote to reject the Plan with respect to any other claims held against either of the Covered Borrowers; provided, however, that nothing in this Agreement shall limit or prohibit a GO Holder from taking any action, or asserting any claims or causes of action, in connection with any matter relating to the Monolines (including, without limitation, voting of claims, subrogation or acceleration, or commutation). Notwithstanding anything in this Agreement to the contrary, the GO Holders may (1) act in their capacity as holders of bonds, claims, or related interests in the ERS Title III Case and the HTA Title III Case and take any action in such Title III cases in such capacity to file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action, or matter on account of such bonds, claims, or related interests, and (2) to the extent that the Oversight Board and/or the Commonwealth seeks to disallow or expunge a claim in the Commonwealth Title III Case relating to a guarantee of non-GO Bond indebtedness as to which the principal obligor is current on the payment of principal and interest of the underlying obligation as of the date hereof, take action to object to the disallowance or expungement thereof; provided, however, that, other than the above enumerated actions, no other action may be taken in the PROMESA Proceedings which may negatively impact or otherwise affect confirmation or consummation of the Plan; and, provided, further, that the restrictions on taking actions in the PROMESA Proceedings relating to claims arising under or related to HTA Bonds will (i) entitle such PSA creditors holdings such claims to receive no worse treatment or economic consideration as any other holder or insurer of HTA bonds and (ii) not extend to the allowance or liquidation (but not the treatment under the Plan) of HTA bond related claims in the PROMESA Proceedings.

Section 4.6     Covenants of PBA Holders. Subject to the terms and conditions hereof, each of the PBA Holders, severally and not jointly, hereby covenants and agrees as follows:

16

108479178v1

**EXECUTION COPY**

(a)     None of the PBA Holders shall Transfer any of the PBA Bond Claims, or any
voting, consent or direction rights or participations or other interests therein (collectively, the
"**PBA Interests**") during the period from the date hereof up to and including the earlier to occur
of (i) the Effective Date and (ii) the termination of this Agreement in accordance with the
provisions of Section 6.1 hereof; provided, however, that, notwithstanding the foregoing, each of
the PBA Holders may transfer any PBA Interests to (1) another PSA Creditor or (2) a Qualified
Transferee pursuant to which (y) such Qualified Transferee shall (i) assume all the rights and
obligations of the transferor in accordance with the terms and conditions of this Agreement and
(ii) such Qualified Transferee shall then be deemed a PSA Creditor for all purposes herein,
including, without limitation, with respect to any additional PBA Bonds held by such Qualified
Transferee at the time it joins this Agreement, and shall assume all of the rights and obligations
hereunder (other than the right to the PSA Restriction Fee and the Consummation Costs, as
defined and set forth in the Term Sheet) and (z) on or after the effective date of the Transfer,
such PBA Holder shall be deemed to have relinquished its rights (other than the right to the PSA
Restriction Fee and the Consummation Costs, as defined and set forth in the Term Sheet), and be
released from its obligations (other than as set forth in Sections 4.6(c) hereof) on or after the
effective date of the Transfer under this Agreement solely to the extent of such transferred rights;
and, provided, further, that, to the extent that a Transfer violates the provisions of this Section
4.6(a), it shall be void *ab initio* and the applicable PBA Bond Claims and the PBA Holder
attempting such Transfer shall continue to remain subject to the terms of this Agreement; and,
provided, further, that nothing contained herein is intended, nor shall it be construed, to preclude
any of the PBA Holders from acquiring additional PBA Bond Claims, GO Bond Claims, or CW
Guarantee Bond Claims; provided, however, that any such PBA Bond Claims, GO Bond Claims,
or CW Guarantee Bond Claims acquired from and after the date hereof shall automatically and
immediately upon acquisition by a PBA Holder be deemed subject to all of the terms and
provisions of this Agreement; and, provided, further, that the provisions of this Section 4.6(a)
shall not apply to the grant of any liens or encumbrances in favor of a bank or broker-dealer
holding custody of securities in the ordinary course of business and which lien or encumbrance is
released upon the Transfer of such securities. Notwithstanding the foregoing, nothing contained
herein shall restrict or prohibit any party from taking any action required by the Securities Act of
1933, as amended, the Securities Exchange Act of 1934, as amended, any rule or regulations
promulgated thereunder, or by any other applicable law or regulation.

(b)     None of the PBA Holders shall, except as expressly provided for herein, (i) file
any additional claims or proofs of claim, whatsoever, with the Title III Court against the
Commonwealth (including secured, unsecured, administrative or substantial contribution
claims), on account of any PBA Bonds or PBA Bond Claims, provided that the failure to file any
additional proofs of claim as a result of its obligations under this clause (i) shall not prejudice,
nor shall it be deemed to be a limitation of, such PBA Holders' aggregate holdings of PBA Bond
Claims, (ii) except in accordance with any claims bar date order entered in the PBA PROMESA
Proceeding, or as permitted by Section 4.6(d) below solely with respect to the Monolines, file
any additional claims, commence or prosecute any pending or additional litigation, proceeding,
action or matter on account of its PBA Bonds or PBA Bond Claims (and each such PBA Holder
agrees to stay all such pending litigations, proceedings actions or matters) or seek to recover
damages or to seek any other type of relief against any of the Government Releasees based upon,
arising from or relating to the Government Released Claims, or (iii) aid any person in taking any
action with respect to the Government Released Claims that is prohibited by this Section 4.6(b).

17

(c)    Each of the PBA Holders, solely in its capacity as holder of PBA Bonds and PBA Bond Claims, severally and not jointly, shall (i) support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein or in the Term Sheet, or impede or preclude, the filing of the Plan, the administration of the PROMESA Proceedings, the approval of the Disclosure Statement, and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that such Disclosure Statement, Confirmation Order and Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, and (ii) in accordance with the provisions of Section 5.1 hereof, (A) not consent to or vote for any modification of the Plan unless such modification is proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and the PBA and was made in accordance with the provisions of Section 7.2 hereof, and (B) not vote for or support any PBA or Commonwealth plan of adjustment not proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and PBA so long as none of the Government Parties is in material breach of their obligations set forth in this Agreement; provided, however, that each of the Parties acknowledges that each Insured PBA Bond Claim shall be voted in accordance with Section 301(c)(3) of PROMESA so long as this Agreement remains in effect.

(d)    Subject to the terms set forth herein, none of the PBA Holders shall be limited or prohibited from (i) taking any action that any such PBA Holder shall deem necessary or appropriate to preserve, protect or defend any of its rights under this Agreement, the Plan, or the other Definitive Documents, (ii) taking any action to defend itself against claims or causes of action asserted in any litigation that is not stayed, (iii) asserting any claims or causes of action against any Party that breaches this Agreement, or (iv) in the case of any Insured PBA Holder, taking any action such Insured PBA Holder shall deem necessary or appropriate as against a Monoline to preserve, protect or defend any of its rights under any policy of insurance issued by a Monoline with respect to any Insured PBA Bond Claims. Without in any way limiting the foregoing, to the extent the Plan is consistent with the Term Sheet and herein, none of the PBA Holders shall take any action to oppose confirmation of the Plan with respect to the Covered Borrowers other than to vote to reject the Plan with respect to any other claims held against either of the Covered Borrowers; provided however, that nothing in this Agreement shall limit or prohibit a PBA Holder from taking any action, or asserting any claims or causes of action, in connection with any matter relating to the Monolines (including, without limitation, voting of claims, subrogation or acceleration, or commutation). Notwithstanding anything in this Agreement to the contrary, the PBA Holders may (1) act in their capacity as holders of bonds, claims, or related interests in the ERS Title III Case and the HTA Title III Case and take any action in such Title III cases in such capacity to file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action, or matter on account of such bonds, claims, or related interests, and (2) to the extent that the Oversight Board and/or the Commonwealth seeks to disallow or expunge a claim in the Commonwealth Title III Case relating to a guarantee of non-GO Bond indebtedness as to which the principal obligor is current on the payment of principal and interest of the underlying obligation as of the date hereof, take action to object to the disallowance or expungement thereof; provided, however, that, other than the above enumerated actions, no other action may be taken in the PROMESA Proceedings which may negatively impact or otherwise affect confirmation or consummation of the Plan; and, provided, further, that the restrictions on taking actions in the PROMESA Proceedings relating to

18

claims arising under or related to HTA Bonds will (i) entitle such PSA creditors holdings such claims to receive no worse treatment or economic consideration as any other holder or insurer of HTA bonds and (ii) not extend to the allowance or liquidation (but not the treatment under the Plan) of HTA bond related claims in the PROMESA Proceedings or other Title III cases.

Section 4.7    Covenants of the Parties.  The Parties shall coordinate and use their reasonable efforts to obtain the consent and joinder of AAFAF and/or another authorized representative of PBA prior to consummation of the transactions contemplated herein.  Any representations, warranties, covenants, or other obligations of AAFAF or PBA contemplated herein shall not be effective as against either such entity until an authorized signatory for such entity has been affixed hereto.

Section 4.8    Qualified Marketmaker Exemption.  Notwithstanding anything contained in this Article IV to the contrary, (a) a PSA Creditor may Transfer any GO Interests or PBA Interests to a Qualified Marketmaker, acting in its capacity as a Qualified Marketmaker, without the requirement that such Qualified Marketmaker be or become a PSA Creditor; provided that such Qualified Marketmaker subsequently Transfers all such GO Interests or PBA Interests to a PSA Creditor or a Qualified Transferee within the date that is twenty (20) Business Days after such Qualified Marketmaker's acquisition of such GO Interests or PBA Interests, as the case may be; and (b) to the extent that a PSA Creditor is acting in its capacity as a Qualified Marketmaker, it may Transfer any GO Interests or PBA Interests that the Qualified Marketmaker acquires from a holder of the GO Interests or PBA Interests that is not a PSA Creditor without the requirement that the transferee be or become a PSA Creditor.

## ARTICLE V
## PLAN AND PLAN SUPPORT

Section 5.1    Plan Support Commitment.  From and after the date hereof, provided that (a) this Agreement has not been terminated and (b) none of the Disclosure Statement, the Plan or any of the proposed Definitive Documents have been filed, amended or modified in a manner inconsistent with the provisions of Section 7.2 hereof, each of the PSA Creditors (to the extent remaining a Party), shall (i) support (A) approval of the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, (B) confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, (C) unless otherwise ordered by the Title III Court, upon a motion filed by Government Parties, not object to a stay of all proceedings and determinations in connection with the PBA Litigation and the Late Vintage Litigation through a date no earlier than the Effective Date; provided, however, that nothing herein shall limit or prohibit any PSA Creditor from taking any action, or asserting any claims or causes of action, in connection with any matter relating solely to the Monolines (including, without limitation, voting of claims, subrogation, acceleration, or commutation) (ii) subject to receipt of the Disclosure Statement and/or other solicitation materials in respect of the Plan, to the fullest extent permitted by law, timely vote, or cause to be voted, to accept the Plan in its capacity as a GO Holder and/or PBA Holder, as applicable, with rights of acceptance in accordance with the Disclosure Statement Order, each as the case may be, (iii) not change or withdraw (or cause to be changed or withdrawn) any such vote, (iv) not consent to or vote for any modification of the Plan unless such modification is (Y) not adverse to the GO Holders and PBA Holders and (Z) not inconsistent with the terms provided herein and the Term Sheet, and (v) not vote for or support

19

any PBA or Commonwealth plan of adjustment not proposed to or supported by the Government Parties, so long as none of the Government Parties is in material breach of this Agreement; provided, however, that each of the Parties acknowledges that each Insured GO Bond Claim and Insured PBA Bond Claim shall be voted in accordance with the terms of Section 301(c)(3) of PROMESA so long as this Agreement remains in effect.

Section 5.2    Solicitation Required in Connection with Plan. Notwithstanding anything contained in this Article V or elsewhere in this Agreement to the contrary, this Agreement is not, and shall not be deemed to be, a solicitation of acceptances of the Plan. Each of the Parties, severally and not jointly, acknowledges and agrees that (a) the votes on the Plan will not be solicited until the Title III Court has approved the Disclosure Statement and related solicitation materials, and such Disclosure Statement and solicitation materials have been transmitted to parties entitled to receive same and (b) this Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful. NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY PROMESA, THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY ANY ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

## ARTICLE VI
## TERMINATION

Section 6.1    Termination of Agreement.

(a)    This Agreement may be terminated by any PSA Creditor, solely as to itself, at its sole option and discretion and upon written notice to the other Parties, in the event that (i) any of the Government Parties fails to comply with any of its respective covenants in Article IV hereof or any of its undertakings in this Agreement if such failure to comply has or would have a material negative economic impact on such PSA Creditor, including a negative change in the treatment afforded to such PSA Creditor under the Plan (including any applicable settlement under the Plan), or change in the cash flows for the New Bonds referenced in Exhibit "A" to the Term Sheet or to the definition or calculation of Excess Cash, Bond Recovery Cap, or PSA Restriction Fee that would have a materially negative economic impact on such PSA Creditor, or (ii) the Oversight Board files any motion or pleading with the Title III Court, in each case, that is inconsistent with this Agreement, including the Term Sheet, in any materially negative economic respect (including treatment under the Plan, any applicable settlement under the Plan, or change in cash flows for the New Bonds referenced in Exhibit "A" to the Term Sheet or to the definition or calculation of Excess Cash, Bond Recovery Cap, or PSA Restriction Fee) and such motion or pleading has not been withdrawn before the earlier to occur of (y) five (5) Business Days after the Oversight Board receives written notice from another Party (in accordance with the notice provisions set forth in Section 7.11 hereof) that such motion or pleading is inconsistent with this Agreement in such materially negative economic respect and (z) entry of an order of the Title III Court approving such motion or pleading.

20

(b)     This Agreement may be terminated as to all Parties hereto by the Oversight
Board, or by joint action of the LCDC and the QTCB Group, in the event that (i) any other Party
has failed to comply with any of its respective covenants set forth in Article IV hereof or any of
its other undertakings in this Agreement, (ii) the Confirmation Order is not entered by the Title
III Court on or prior to February 15, 2020, and the Effective Date does not occur on or prior to
February 29, 2020, (iii) the Title III Court or such other court of competent jurisdiction enters a
Final Order denying confirmation of the Plan, or (iv) a court of competent jurisdiction issues a
ruling, judgment, or order making illegal or otherwise preventing or prohibiting the
consummation of the Plan, which ruling, judgment, or order has not been reversed or vacated
within sixty (60) calendar days after such issuance and is not subject to a stay; provided,
however, that, upon the joint instruction and notice provided by the Government Parties, the
dates set forth in subsection (ii) above shall be extended up to and including May 15, 2020 and
May 31, 2020, respectively.

(c)     Without limiting the rights of the LCDC or the QTCB Group and their respective
members under any other provision in this Agreement, each of the LCDC and the QTCB Group
may, in its sole discretion, terminate this Agreement as to all Parties if (i) the Oversight Board
(y) modifies any of the provisions in the Term Sheet, relating to (1) the 2012 CW Bond
Settlement, the 2012 CW Guarantee Bond Settlement and the 2014 CW Bond Settlement or (2)
the Classes set forth in the Term Sheet as of the date hereof, and any such modification
materially negatively economically impacts the treatment afforded any GO Holder or PBA
Holder, as applicable, in the Term Sheet, or (z) files a Plan that is economically inconsistent with
the treatment set forth in the Term Sheet, in each case, without the consent of the LCDC and the
QTCB Group, or (ii) the New Bonds to be issued under the Plan have any terms that have not
been consented to by the LCDC or the QTCB Group, as applicable.

(d)     This Agreement may be terminated as to all Parties hereto by the Oversight
Board, or by the joint action of the LCDC and the QTCB Group, in the event that, by the one
hundred twentieth (120th) day following the date hereof, (i) holders of Vintage CW Guarantee
Bond Claims that hold, in the aggregate, at least fifty percent (50%) in amount of aggregate
outstanding Face Amount of Vintage CW Guarantee Bond Claims and (ii) holders of Vintage
PBA Bond Claims that hold, in the aggregate, at least fifty percent (50%) in amount of aggregate
outstanding Face Amount of Vintage PBA Bond Claims have not executed and delivered a
counterpart signature page to this Agreement or a joinder to this Agreement in the form of
Exhibit "F".

(e)     This Agreement may be terminated by Davidson Kempner Capital Management
LP, on behalf of itself and its funds under management, solely as to itself and such funds under
management, at its sole option and discretion and upon written notice to the other Parties, at any
time during the period (1) commencing upon the earlier to occur of (i) the filing of a plan of
adjustment for or including HTA and (ii) thirty (30) days prior to the deadline for filing
objections to confirmation of the Plan and (2) ending five (5) days prior to the deadline for filing
objections to confirmation of the Plan.

(f)     The automatic stay under Sections 362 and 922 of the Bankruptcy Code, made
applicable to the PROMESA Proceedings pursuant to Section 301 of PROMESA, shall not

prohibit a Party from taking any action necessary to effectuate the termination of this Agreement pursuant to and in accordance with the terms hereof.

(g)     This Agreement shall automatically terminate as to all Parties upon the occurrence of the Effective Date except with respect to any actions of the Parties that are expressly set forth herein to occur after the Effective Date.

Section 6.2     Effect of Termination. Except as otherwise provided herein, in the event of the termination of this Agreement as to any Party, (a) this Agreement shall become null and void and be deemed of no force and effect, with no liability on the part of such Party or any of its affiliates (or of any of their respective directors, officers, employees, consultants, contractors, advisory clients, agents, legal and financial advisors or other representatives of such Party or its affiliates), (b) such Party shall not have any obligations to any other Party arising out of, and shall have no further rights, benefits or privileges under, this Agreement (including, without limitation, any rights to Consummation Costs or the PSA Restriction Fee, except as provided in accordance with the provisions of the Term Sheet), except for the obligations and/or provisions set forth in Sections 2.1, 6.3, 7.1, 7.3, 7.6, and 7.15 hereof and this clause (b) of Section 6.2, which provisions are intended to survive the expiration or termination of this Agreement and shall continue in full force and effect in accordance with the terms hereof; provided, however, that any liability of a Party for failure to comply with the terms of this Agreement prior to the date of such expiration or termination shall survive such expiration or termination, and (c) such Party shall have all the rights and remedies that it would have had, and be entitled to take all actions that it would have been entitled to take, had it not entered into this Agreement and no such rights shall be deemed waived pursuant to a claim of laches or estoppel, and the Parties agree to waive, and not raise as a defense, the applicable statute of limitations for any claim, litigation, proceeding, action or matter against another Party barred by this Agreement as though such statute of limitations had been tolled during such time that this Agreement was binding on the Party then asserting such claim, litigation, proceeding, action, or matter; provided, however, that in no event shall any such termination relieve such Party from liability for its breach or non-performance of its obligations hereunder prior to the date of such expiration or termination; and, provided, further, that, unless otherwise ordered by the Title III Court, upon notice to such terminating Party, any and all consents, ballots and votes tendered by such Party prior to such expiration or termination shall be deemed to be, for all purposes, automatically null and void *ab initio,* and shall not be considered or otherwise used in any manner by the Parties in connection with the Plan, this Agreement or otherwise. Except in connection with a dispute concerning a breach of this Agreement or the interpretation of the terms hereof upon termination, (y) neither this Agreement nor any terms or provisions set forth herein shall be admissible in any dispute, litigation, proceeding or controversy among the Parties and nothing contained herein shall constitute or be deemed to be an admission by any Party as to any matter, it being understood that the statements and resolutions reached herein were the result of negotiations and compromises of the respective positions of the Parties and (z) no Party shall seek to take discovery concerning this Agreement or admit this Agreement or any part of it into evidence against any other Party hereto.

Section 6.3     Post-Effective Date Obligations. In addition to the surviving obligations and provisions listed in Section 6.2(b) hereof, the obligations and/or provisions set forth in

22

**EXECUTION COPY**

Sections 4.1(f), 4.1(g), 4.2(d), 4.2(e), 4.3(d), and 4.3(e) shall survive the automatic termination of this Agreement pursuant to Section 6.1(f) hereof.

## ARTICLE VII
## MISCELLANEOUS

Section 7.1    Consummation Costs and PSA Restriction Fee.    Subject to the terms and conditions of the Term Sheet, (a) the Consummation Costs and PSA Restriction Fee shall be paid in accordance with the terms and conditions set forth in Section II(M) of the Term Sheet and (b) the obligation to pay Consummation Costs and the PSA Restriction fee shall be an allowed administrative expense of the Commonwealth upon execution of this Agreement by the Oversight Board.

Section 7.2    Amendments.    This Agreement, including, without limitation, the Term Sheet, may not be modified, amended, or supplemented except by a written agreement executed by the Government Parties that are Parties hereto, the LCDC, and the QTCB Group; provided, however, that any modification, amendment, or supplement that has a material negative economic impact on a PSA Creditor, including by changing the treatment afforded to such PSA Creditor under the Plan (including any applicable settlement under the Plan) or changing the cash flows for the New Bonds referenced in Exhibit "A" to the Term Sheet or definition or calculation of Excess Cash, Bond Recovery Cap, Consummation Costs, or PSA Restriction Fee in a way that would have a negative economic impact on such PSA Creditor, must be agreed to in writing by each such affected PSA Creditor.

Section 7.3    No Admission of Liability.

(a)    The execution of this Agreement is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Party to any other Party or any other Person with respect to any of the matters addressed in this Agreement.

(b)    None of this Agreement (including, without limitation, the Recitals and Exhibits hereto), the settlement or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in the PBA Litigation or the Late Vintage Litigation, or of any wrongdoing or liability of any Party; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Party in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to be or used as an admission or evidence against the Commonwealth or PBA with respect to the validity of any of the GO Bond Claims, CW Guarantee Bond Claims, or PBA Bond Claims. None of this Agreement, the settlement, or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement herein shall be admissible in any proceeding for any purposes, except to enforce the terms of the Agreement.

23

Section 7.4     Good Faith Negotiations. The Parties recognize and acknowledge that each of the Parties hereto is represented by counsel, and such Party received independent legal advice with respect to the advisability of entering into this Agreement; the negotiations related to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each Party's own free will; each Party knows all of the relevant facts and his, her or its rights in connection therewith, and that he, she or it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any party or employee, agent, attorney or representative of any party to this Agreement. The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the further expense and inconvenience of litigation and other disputes, and to compromise permanently and settle the claims between the Parties settled by the execution of this Agreement. The Parties further acknowledge and agree that, in connection with the PROMESA Proceedings and the negotiation and consummation of this Agreement, including, without limitation, the Term Sheet, the Parties, at all times, acted (a) in good faith and (b) solely for themselves and not on behalf of or in representation of any other creditors, bondholders or other parties in interest.

Section 7.5     Third Party Beneficiary. Other than funds and/or accounts which are holders of the GO Bonds or PBA Bonds and whose advisors or managers are Parties hereto, nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any Person (including, without limitation, any Monoline) other than the Parties hereto, and their respective successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation thereof; and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto and their respective successors and assigns.

Section 7.6     Governing Law; Retention of Jurisdiction; Service of Process. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York and applicable federal law, without giving effect to the principles of conflicts of laws that would require the application of the law of any other jurisdiction. By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding between any or all of the foregoing with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought in the Title III Court for that purpose only, and, by execution and delivery of this Agreement, each hereby irrevocably accepts and submits itself to the jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding, subject to a Party's rights pursuant to applicable law. In the event any such action, suit or proceeding is commenced, each of the Parties hereby (a) agrees and consents that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 7.11 hereof, unless another address has been designated by such Party in a notice given to the other Parties in accordance with Section 7.11 hereof and (b) waives to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising from or relating to this Agreement and the representations, covenants and other obligations set forth herein.

24

Section 7.7    Headings. The headings of the sections, paragraphs and subsections of this Agreement are inserted for convenience only and are not part of this Agreement and do not in any way modify the terms or provisions of this Agreement and shall not affect the interpretation hereof.

Section 7.8    Binding Agreement; Successors and Assigns. This Agreement is intended to, and shall be effective and binding only upon the execution and delivery of this Agreement by the Parties listed on the signature pages hereto. This Agreement is intended to, and shall be deemed to, bind and inure to the benefit of the Parties and their respective successors, assigns, administrators, constituents and representatives. The agreements, representations, covenants and obligations of the Parties under this Agreement are several only and not joint in any respect and none shall be responsible for the performance or breach of this Agreement by another. If any provision of this Agreement, or the application of any such provision to any person or entity or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full force and effect so long as the economic and legal substance of the transactions contemplated herein or in the Term Sheet are not affected in any manner materially adverse to any Party. Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner so that the transactions contemplated herein are consummated as originally contemplated to the greatest extent possible.

Section 7.9    Entire Agreement. This Agreement, including, without limitation, the Term Sheet, constitutes the full and entire agreement among the Parties with regard to the subject hereof and the Term Sheet, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party with respect to the subject matter hereof. No Party has entered into this Agreement in reliance on any other Party's prior representation, promise or warranty (oral or otherwise) except for those that may be expressly set forth in this Agreement.

Section 7.10    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which, when taken together, shall constitute one and the same Agreement. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

Section 7.11    Notices. All demands, notices, requests, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given (i) when personally delivered by courier service or messenger, (ii) upon actual receipt (as established by confirmation of receipt or otherwise) during normal business hours, otherwise on the first business day thereafter if transmitted electronically (by e-mail transmission), by facsimile or telecopier, with confirmation of receipt, or (iii) three (3) Business Days after being duly deposited in the mail, by certified or registered mail, postage prepaid- return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following Parties:

25

**EXECUTION COPY**

(a)     If to the Oversight Board or the Commonwealth, to:

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Attn: Martin J. Bienenstock, Esq.
Email: mbienenstock@proskauer.com
Brian S. Rosen, Esq.
Email: brosen@proskauer.com
Facsimile: 212-969-2900

(b)     If to AAFAF, to:

O'MELVENY & MEYERS LLP
Seven Times Square
New York, NY 10036
Attn: John Rapisardi, Esq.
Email: jrapisardi@omm.com
Suzzanne Uhland, Esq.
Email: suhland@omm.com
Facsimile: 212-326-2061

(c)     If to PBA, to:

NORTON ROSE FULBRIGHT US LLP
2200  Ross Avenue, Suite 3600
Dallas, TX 75201
Attn: Toby L. Gerber
Email: toby.gerber@nortonrosefulbright.com
Bob B. Bruner
Email: bob.bruner@nortonrosefulbright.com

(d)     If to the LCDC, to:

QUINN EMANUEL URQUHART & SULLIVAN,
LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Attn: Susheel Kirpalani, Esq.
Email: susheelkirpalani@quinnemanuel.com
Eric Kay, Esq.
Email: erickay@quinnemanuel.com
Facsimile: 212-849-7100

108479178v1

(e)     If to the QTCB Group, to:

BRACEWELL LLP
CityPlace I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Attn: Kurt A. Mayr, Esq.
Email: kurt.mayr@bracewell.com
David L. Lawton, Esq.
Email: david.lawton@bracewell.com

Section 7.12  Non-Waiver of Remedies. Except as expressly provided in this
Agreement, nothing contained herein is intended, nor shall it be construed in any manner, to
waive, limit, impair or restrict any right or ability of the Parties to protect and preserve each of
their rights, remedies and interests, contractual or otherwise, under the Bond Resolutions, Title
III or any other provision of PROMESA or any other law or regulation.

Section 7.13  Several, Not, Joint Obligations. The agreements, representations,
covenants and other obligations of the Parties set forth in this Agreement are, in all respects,
several and not joint.

Section 7.14  Remedies Cumulative. All rights, powers and remedies provided in
accordance with the terms and provisions of this Agreement or otherwise available in respect
hereof of law or in equity shall be cumulative and not alternative, and the exercise of any right,
power or remedy thereof by any Party shall not preclude the contemporaneous or later exercise
of any other such right, power or remedy by any such Party.

Section 7.15  Specific Performance. Each of the Parties agrees and understands that
money damages are an insufficient remedy for any breach of this Agreement by any Party and
each non-breaching Party shall be entitled to seek specific performance and injunctive or other
equitable relief as a remedy of any such breach of this Agreement, including, without limitation,
an order of the Title III Court or such other court of competent jurisdiction requiring any Party to
comply promptly with any of its obligations hereunder. Notwithstanding anything contained in
this Agreement to the contrary, specific performance and injunctive or other similar relief and
the right to terminate this Agreement in accordance with the terms and provisions hereof shall be
the sole and exclusive remedies for any breach of this Agreement by any Party (or any other
person) and no Party (or any other person) shall be entitled to monetary damages for any breach
of any provision of this Agreement.

Section 7.16  Further Assurances. Each of the Parties hereto agrees to execute and
deliver, or to cause to be executed and delivered, such instruments, and to take such action as the
other Parties may reasonably request in order to effectuate the intent and purposes of, and to
carry out the terms of, this Agreement.

27

108479178v1

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

### FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO

By: /s/ Natalie A. Jaresko
Name: Natalie A. Jaresko
Title: Executive Director

### THE COMMONWEALTH OF PUERTO RICO

By: Financial Oversight and Management
Board for Puerto Rico, as representative
of the Commonwealth of Puerto Rico

By: /s/ Natalie A. Jaresko
Name: Natalie A. Jaresko
Title: Executive Director

28

**EXECUTION COPY**

**ARISTEIA CAPITAL, LLC**, on behalf of itself and certain funds under management

By: __/s/ William R. Techar__
Name: __William R. Techar__
Title: __Manager__

By: __/s/ Andrew B. David__
Name: __Andrew B. David__
Title: __Chief Operating Officer__

Holder of Face Amount of GO Bonds:

Holder of Face Amount of PBA Bonds:

29

**EXECUTION COPY**

**FARMSTEAD CAPITAL MANAGEMENT**, on behalf of itself and certain funds under management

By: __/s/ Michael Scott_____
Name: Michael Scott_____
Title: Managing Member_____

Holder of Face Amount of GO Bonds: ▮▮▮▮▮▮▮▮

Holder of Face Amount of PBA Bonds: ▮▮▮▮▮▮▮▮

**EXECUTION COPY**

**FCO ADVISORS LLC**, on behalf of itself and certain funds under management

By: __/s/ Hector Negroni_____
Name: _Hector Negroni_____
Title: _Chief Executive Officer_____

Holder of Face Amount of GO Bonds: 

Holder of Face Amount of PBA Bonds: 

31

**EXECUTION COPY**

**GOLDENTREE ASSET MANAGEMENT, LP**, on behalf of itself and certain funds under management

By: /s/ Sasha Linney
Name: Sasha Linney
Title: Associate General Counsel

Holder of Face Amount of GO Bonds:

Holder of Face Amount of PBA Bonds:

32

**EXECUTION COPY**

**MONARCH ALTERNATIVE CAPITAL LP**, on behalf of itself and certain funds under management

By: /s/ Adam R. Sklar
Name: Adam R. Sklar
Title: Managing Princpal

Holder of Face Amount of GO Bonds:

Holder of Face Amount of PBA Bonds:

**EXECUTION COPY**

**TACONIC CAPITAL ADVISORS L.P.**, on behalf of itself and certain funds under management

By: ___/s/ Marc Schwartz_____ _____
Name: Marc Schwartz_____ _____
Title: Principal_____ _____

Holder of Face Amount of GO Bonds: ▮▮▮▮▮▮

Holder of Face Amount of PBA Bonds: ▮▮▮▮▮▮

34

**EXECUTION COPY**

**WHITEBOX ADVISORS LLC**, on behalf of itself and certain funds under management

By: ___/s/ Luke Harris_____ ____
Name: Luke Harris_____ _____
Title: Deputy General Counsel_____

Holder of Face Amount of GO Bonds:

Holder of Face Amount of PBA Bonds:

**EXECUTION COPY**

**CANYON CAPITAL ADVISORS LLC**, on behalf of itself and certain funds under management

By: __/s/ Jonathan M. Kaplan_____
Name: __Jonathan M. Kaplan_____
Title: __Authorized Signatory_____

Holder of Face Amount of GO Bonds: 

Holder of Face Amount of PBA Bonds:

**EXECUTION COPY**

**OZ MANAGEMENT LP**, on behalf of itself and certain funds under management

By: Och-Ziff Holding Corporation, its General Partner

By: __/s/ Wayne Cohen_____
Name: Wayne Cohen_____
Title: President and Chief Operating Officer

Holder of Face Amount of GO Bonds: ▮▮▮▮▮▮▮

Holder of Face Amount of PBA Bonds: ▮▮▮▮▮▮▮

108479178v1

**EXECUTION COPY**

**DAVIDSON KEMPNER CAPITAL MANAGEMENT LP**, on behalf of itself and certain funds under management

By: /s/ Gabriel Schwartz
Name: Gabriel Schwartz
Title: Managing Member

Holder of Face Amount of GO Bonds:

Holder of Face Amount of PBA Bonds:

108479178v1

**AGREED AND ACCEPTED:**

**PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY**

By: _____
Name: _____
Title: _____

**PUERTO RICO PUBLIC BUILDINGS AUTHORITY**

By: _____
Name: _____
Title: _____

**EXECUTION COPY**

## **EXHIBIT A**

### LIST OF GO HOLDERS PARTY HERETO

Aristeia Capital Advisors, LLC, on behalf of itself and certain funds under management

Canyon Capital Advisors, LLC, on behalf of itself and certain funds under management

Davidson Kempner Capital Management LP, on behalf of itself and certain funds under management

Farmstead Capital Management, on behalf of itself and certain funds under management

FCO Advisors LLC, on behalf of itself and certain funds under management

GoldenTree Asset Management, LP, on behalf of itself and certain funds under management

Monarch Alternative Capital LP, on behalf of itself and certain funds under management

OZ Management LP, on behalf of itself and certain funds under management

Taconic Capital Advisors L.P., on behalf of itself and certain funds under management

Whitebox Advisors LLC, on behalf of itself and certain funds under management

**EXECUTION COPY**

## **EXHIBIT B**

### LIST OF PBA HOLDERS PARTY HERETO

Aristeia Capital Advisors, LLC, on behalf of itself and certain funds under management

Canyon Capital Advisors, LLC, on behalf of itself and certain funds under management

Davidson Kempner Capital Management LP, on behalf of itself and certain funds under management

Farmstead Capital Management, on behalf of itself and certain funds under management

FCO Advisors LLC, on behalf of itself and certain funds under management

GoldenTree Asset Management, LP, on behalf of itself and certain funds under management

Monarch Alternative Capital LP, on behalf of itself and certain funds under management

OZ Management LP, on behalf of itself and certain funds under management

Taconic Capital Advisors L.P., on behalf of itself and certain funds under management

Whitebox Advisors LLC, on behalf of itself and certain funds under management

41

# **EXHIBIT C**

GO BONDS

**EXECUTION COPY**

| GO Bonds | | | |
|---|---|---|---|
| **CUSIP** | **Series** | **Maturity** | **Issuance** |
| 745145AU | Public Improvement Ref. Bonds, Series 1998 | 7/1/2016 | 1/29/1998 |
| 745145AV | Public Improvement Ref. Bonds, Series 1998 | 7/1/2017 | 1/29/1998 |
| 745145AW | Public Improvement Ref. Bonds, Series 1998 | 7/1/2018 | 1/29/1998 |
| 745145AX | Public Improvement Ref. Bonds, Series 1998 | 7/1/2023 | 1/15/1998 |
| 745145EK | Public Improvement Bonds of 1998 | 7/1/2016 | 3/15/1998 |
| 745145HN | Public Improvement Bonds of 1999 | 7/1/2016 | 12/1/1998 |
| 745145HP | Public Improvement Bonds of 1999 | 7/1/2017 | 12/1/1998 |
| 745145HQ | Public Improvement Bonds of 1999 | 7/1/2018 | 12/1/1998 |
| 74514LQK | Public Improvement Bonds of 1999 | 7/1/2028 | 12/1/1998 |
| 745145QE | Public Improvement Ref. Bonds, Series 2000 | 7/1/2019 | 4/5/2000 |
| 745145UZ | Public Improvement Bonds of 2001, Series A & B | 7/1/2016 | 6/7/2001 |
| 745145VB | Public Improvement Bonds of 2001, Series A & B | 7/1/2017 | 6/7/2001 |
| 745145VD | Public Improvement Bonds of 2001, Series A & B | 7/1/2018 | 6/7/2001 |
| 745145VF | Public Improvement Bonds of 2001, Series A & B | 7/1/2019 | 6/7/2001 |
| 745145VH | Public Improvement Bonds of 2001, Series A & B | 7/1/2020 | 6/7/2001 |
| 74514LBJ | Public Improvement Ref. Bonds, Series 2001 | 7/1/2030 | 6/7/2001 |
| 745145XZ | Public Improvement Bonds of 2002, Series A | 7/1/2029 | 10/25/2001 |
| 74514LBM | Public Improvement Bonds of 2002, Series A | 7/1/2031 | 10/25/2001 |
| 745145YN | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YP | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YQ | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YR | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YS | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YT | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YU | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YV | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2018 | 10/25/2001 |
| 745145YW | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2018 | 10/25/2001 |
| 745145YX | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145YY | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145YZ | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145ZA | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145ZB | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2020 | 10/25/2001 |
| 745145ZC | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2021 | 10/25/2001 |
| 745145Q7 | Public Improvement Bonds of 2003, Series A | 7/1/2016 | 8/8/2002 |
| 745145Q8 | Public Improvement Bonds of 2003, Series A | 7/1/2017 | 8/8/2002 |
| 745145Q9 | Public Improvement Bonds of 2003, Series A | 7/1/2018 | 8/8/2002 |
| 745145R2 | Public Improvement Bonds of 2003, Series A | 7/1/2019 | 8/8/2002 |
| 745145R3 | Public Improvement Bonds of 2003, Series A | 7/1/2020 | 8/8/2002 |
| 745145R4 | Public Improvement Bonds of 2003, Series A | 7/1/2021 | 8/8/2002 |
| 745145R5 | Public Improvement Bonds of 2003, Series A | 7/1/2022 | 8/8/2002 |
| 745145T7 | Public Improvement Ref. Bonds, Series 2003 A | 7/1/2016 | 8/8/2002 |
| 745145T8 | Public Improvement Ref. Bonds, Series 2003 A | 7/1/2017 | 8/8/2002 |
| 74514LUR | Public Improvement Ref. Bonds, Series 2003 C | 7/1/2027 | 5/6/2003 |
| 74514LUS | Public Improvement Ref. Bonds, Series 2003 C | 7/1/2028 | 5/6/2003 |
| 7451455A | Public Improvement Bonds of 2004, Series A | 7/1/2024 | 10/16/2003 |
| 7451455B | Public Improvement Bonds of 2004, Series A | 7/1/2027 | 10/16/2003 |
| 74514LPT | Public Improvement Bonds of 2004, Series A | 7/1/2033 | 10/16/2003 |
| 74514LCU | Public Improvement Bonds of 2005, Series A | 7/1/2016 | 10/7/2004 |
| 74514LCX | Public Improvement Bonds of 2005, Series A | 7/1/2019 | 10/7/2004 |
| 74514LCY | Public Improvement Bonds of 2005, Series A | 7/1/2020 | 10/7/2004 |
| 74514LCZ | Public Improvement Bonds of 2005, Series A | 7/1/2021 | 10/7/2004 |
| 74514LDA | Public Improvement Bonds of 2005, Series A | 7/1/2022 | 10/7/2004 |
| 74514LDB | Public Improvement Bonds of 2005, Series A | 7/1/2023 | 10/7/2004 |
| 74514LDC | Public Improvement Bonds of 2005, Series A | 7/1/2024 | 10/7/2004 |
| 74514LDD | Public Improvement Bonds of 2005, Series A | 7/1/2025 | 10/7/2004 |
| 74514LDE | Public Improvement Bonds of 2005, Series A | 7/1/2029 | 10/7/2004 |
| 74514LPX | Public Improvement Bonds of 2005, Series A | 7/1/2034 | 10/7/2004 |

43

| GO Bonds | | | |
|---|---|---|---|
| **CUSIP** | **Series** | **Maturity** | **Issuance** |
| 74514LHB | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2016 | 6/23/2006 |
| 74514LHC | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2017 | 6/23/2006 |
| 74514LHD | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2018 | 6/23/2006 |
| 74514LHE | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2019 | 6/23/2006 |
| 74514LHF | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2020 | 6/23/2006 |
| 74514LHG | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2021 | 6/23/2006 |
| 74514LHH | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2022 | 6/23/2006 |
| 74514LHJ | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2023 | 6/23/2006 |
| 74514LHK | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2024 | 6/23/2006 |
| 74514LHL | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2025 | 6/23/2006 |
| 74514LHM | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2026 | 6/23/2006 |
| 74514LHN | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2031 | 6/23/2006 |
| 74514LHP | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2035 | 6/23/2006 |
| 74514LJQ | Public Improvement Bonds of 2006, Series A | 7/1/2017 | 8/10/2006 |
| 74514LJV | Public Improvement Bonds of 2006, Series A | 7/1/2021 | 8/10/2006 |
| 74514LJW | Public Improvement Bonds of 2006, Series A | 7/1/2022 | 8/10/2006 |
| 74514LJX | Public Improvement Bonds of 2006, Series A | 7/1/2023 | 8/10/2006 |
| 74514LJY | Public Improvement Bonds of 2006, Series A | 7/1/2024 | 8/10/2006 |
| 74514LJZ | Public Improvement Bonds of 2006, Series A | 7/1/2025 | 8/10/2006 |
| 74514LKA | Public Improvement Bonds of 2006, Series A | 7/1/2026 | 8/10/2006 |
| 74514LJR | Public Improvement Bonds of 2006, Series A | 7/1/2018 | 8/10/2006 |
| 74514LJS | Public Improvement Bonds of 2006, Series A | 7/1/2019 | 8/10/2006 |
| 74514LJT | Public Improvement Bonds of 2006, Series A | 7/1/2020 | 8/10/2006 |
| 74514LJU | Public Improvement Bonds of 2006, Series A | 7/1/2021 | 8/10/2006 |
| 74514LQA | Public Improvement Bonds of 2006, Series A | 7/1/2027 | 8/10/2006 |
| 74514LQB | Public Improvement Bonds of 2006, Series A | 7/1/2030 | 8/10/2006 |
| 74514LQE | Public Improvement Ref. Bonds, Series 2006 B | 7/1/2032 | 8/10/2006 |
| 74514LQF | Public Improvement Ref. Bonds, Series 2006 B | 7/1/2035 | 8/10/2006 |
| 74514LKH | Public Improvement Bonds of 2006, Series B | 7/1/2016 | 8/30/2006 |
| 74514LKJ | Public Improvement Bonds of 2006, Series B | 7/1/2017 | 8/30/2006 |
| 74514LLV | Public Improvement Bonds of 2007, Series A | 7/1/2018 | 10/4/2007 |
| 74514LLW | Public Improvement Bonds of 2007, Series A | 7/1/2019 | 10/4/2007 |
| 74514LLX | Public Improvement Bonds of 2007, Series A | 7/1/2020 | 10/4/2007 |
| 74514LLY | Public Improvement Bonds of 2007, Series A | 7/1/2021 | 10/4/2007 |
| 74514LLZ | Public Improvement Bonds of 2007, Series A | 7/1/2022 | 10/4/2007 |
| 74514LMA | Public Improvement Bonds of 2007, Series A | 7/1/2023 | 10/4/2007 |
| 74514LMB | Public Improvement Bonds of 2007, Series A | 7/1/2024 | 10/4/2007 |
| 74514LMC | Public Improvement Bonds of 2007, Series A | 7/1/2025 | 10/4/2007 |
| 74514LMD | Public Improvement Bonds of 2007, Series A | 7/1/2026 | 10/4/2007 |
| 74514LME | Public Improvement Bonds of 2007, Series A | 7/1/2027 | 10/4/2007 |
| 74514LMF | Public Improvement Bonds of 2007, Series A | 7/1/2028 | 10/4/2007 |
| 74514LMG | Public Improvement Bonds of 2007, Series A | 7/1/2029 | 10/4/2007 |
| 74514LMH | Public Improvement Bonds of 2007, Series A | 7/1/2030 | 10/4/2007 |
| 74514LMJ | Public Improvement Bonds of 2007, Series A | 7/1/2031 | 10/4/2007 |
| 74514LMK | Public Improvement Bonds of 2007, Series A | 7/1/2032 | 10/4/2007 |
| 74514LML | Public Improvement Bonds of 2007, Series A | 7/1/2033 | 10/4/2007 |
| 74514LMM | Public Improvement Bonds of 2007, Series A | 7/1/2034 | 10/4/2007 |
| 74514LMN | Public Improvement Bonds of 2007, Series A | 7/1/2037 | 10/4/2007 |
| 74514LMZ | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2016 | 10/16/2007 |
| 74514LNA | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2017 | 10/16/2007 |
| 74514LNB | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2017 | 10/16/2007 |
| 74514LNC | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2018 | 10/16/2007 |
| 74514LND | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2019 | 10/16/2007 |
| 74514LNE | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2020 | 10/16/2007 |
| 74514LNF | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2021 | 10/16/2007 |
| 74514LNG | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2022 | 10/16/2007 |
| 74514LVT | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2030 | 10/16/2007 |

| | GO Bonds | | |
|---|---|---|---|
| **CUSIP** | **Series** | **Maturity** | **Issuance** |
| 74514LVU | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2031 | 10/16/2007 |
| 74514LTJ | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2016 | 5/7/2008 |
| 74514LTK | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2016 | 5/7/2008 |
| 74514LTL | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2016 | 5/7/2008 |
| 74514LTM | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2018 | 5/7/2008 |
| 74514LTN | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2019 | 5/7/2008 |
| 74514LTP | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2020 | 5/7/2008 |
| 74514LTQ | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2021 | 5/7/2008 |
| 74514LTR | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2022 | 5/7/2008 |
| 74514LTS | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2023 | 5/7/2008 |
| 74514LTT | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2024 | 5/7/2008 |
| 74514LTU | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2025 | 5/7/2008 |
| 74514LTV | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2026 | 5/7/2008 |
| 74514LTW | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2032 | 5/7/2008 |
| 74514LSQ | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2016 | 5/7/2008 |
| 74514LSR | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2017 | 5/7/2008 |
| 74514LSS | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2018 | 5/7/2008 |
| 74514LST | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2023 | 5/7/2008 |
| 74514LSV | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2023 | 5/7/2008 |
| 74514LSU | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2028 | 5/7/2008 |
| 74514LVG | Public Improvement Bonds of 2008, Series A | 7/1/2016 | 9/18/2008 |
| 74514LVH | Public Improvement Bonds of 2008, Series A | 7/1/2017 | 9/18/2008 |
| 74514LVJ | Public Improvement Bonds of 2008, Series A | 7/1/2018 | 9/18/2008 |
| 74514LVK | Public Improvement Bonds of 2008, Series A | 7/1/2023 | 9/18/2008 |
| 74514LVL | Public Improvement Bonds of 2008, Series A | 7/1/2028 | 9/18/2008 |
| 74514LVM | Public Improvement Bonds of 2008, Series A | 7/1/2033 | 9/18/2008 |
| 74514LVN | Public Improvement Bonds of 2008, Series A | 7/1/2038 | 9/18/2008 |
| 74514LVV | Public Improvement Ref. Bonds, Series 2009 A | 7/1/2031 | 9/17/2009 |
| 74514LVX | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2036 | 11/17/2009 |
| 74514LVY | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2037 | 11/17/2009 |
| 74514LVZ | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2038 | 11/17/2009 |
| 74514LVW | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2039 | 11/17/2009 |
| 74514LWA | Public Improvement Ref. Bonds, Series 2009 C | 7/1/2039 | 12/16/2009 |
| 74514LWN | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2024 | 2/17/2011 |
| 74514LWJ | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2025 | 2/17/2011 |
| 74514LWP | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2027 | 2/17/2011 |
| 74514LWK | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2028 | 2/17/2011 |
| 74514LWL | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2033 | 2/17/2011 |
| 74514LWM | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2033 | 2/17/2011 |
| 74514LWQ | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2034 | 2/17/2011 |
| 74514LWT | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2034 | 2/17/2011 |
| 74514LWR | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2040 | 2/17/2011 |
| 74514LWS | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2040 | 2/17/2011 |
| 74514LWY | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2026 | 3/17/2011 |
| 74514LXD | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2027 | 3/17/2011 |
| 74514LXE | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2028 | 3/17/2011 |
| 74514LXA | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LXB | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LXF | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LWZ | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2035 | 3/17/2011 |
| 74514LXC | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2036 | 3/17/2011 |
| 74514LXH | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2036 | 3/17/2011 |
| 74514LXG | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2037 | 3/17/2011 |
| 74514LWX | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2040 | 3/17/2011 |
| 74514LYW | Public Improvement Bonds of 2011, Series A | 7/1/2041 | 7/12/2011 |
| 74514LZA | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2016 | 7/12/2011 |
| 74514LZB | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2017 | 7/12/2011 |

45

## GO Bonds

| CUSIP | Series | Maturity | Issuance |
|---|---|---|---|
| 74514LZC | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2018 | 7/12/2011 |
| 74514LZD | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2019 | 7/12/2011 |
| 74514LZF | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2019 | 7/12/2011 |
| 74514LZH | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2019 | 7/12/2011 |
| 74514LZG | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2020 | 7/12/2011 |
| 74514LZE | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2020 | 7/12/2011 |
| 74514LZJ | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2020 | 7/12/2011 |
| 74514LZK | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2029 | 7/12/2011 |
| 74514LZL | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2030 | 7/12/2011 |
| 74514LZM | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2031 | 7/12/2011 |
| 74514LZN | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2032 | 7/12/2011 |
| 74514LZP | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2033 | 7/12/2011 |
| 74514LZQ | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2034 | 7/12/2011 |
| 74514LZV | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2016 | 3/29/2012 |
| 74514LZW | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2017 | 3/29/2012 |
| 74514LZX | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2018 | 3/29/2012 |
| 74514LZY | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2019 | 3/29/2012 |
| 74514LZZ | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2020 | 3/29/2012 |
| 74514LA2 | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2033 | 3/29/2012 |
| 74514LA3 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2020 | 4/3/2012 |
| 74514LC4 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2020 | 4/3/2012 |
| 74514LA4 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2021 | 4/3/2012 |
| 74514LC5 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2021 | 4/3/2012 |
| 74514LA5 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LC6 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LD4 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LA6 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LC7 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LD5 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LA7 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LC8 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LD6 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LA8 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2025 | 4/3/2012 |
| 74514LD7 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2025 | 4/3/2012 |
| 74514LA9 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LC9 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LD3 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LB2 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2027 | 4/3/2012 |
| 74514LD8 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2027 | 4/3/2012 |
| 74514LB3 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2028 | 4/3/2012 |
| 74514LB4 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2029 | 4/3/2012 |
| 74514LB9 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2030 | 4/3/2012 |
| 74514LB5 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2031 | 4/3/2012 |
| 74514LC2 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2032 | 4/3/2012 |
| 74514LC3 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2033 | 4/3/2012 |
| 74514LD2 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2035 | 4/3/2012 |
| 74514LB6 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2037 | 4/3/2012 |
| 74514LB7 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2039 | 4/3/2012 |
| 74514LB8 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2041 | 4/3/2012 |
| 74514LE8 | General Obligation Bonds of 2014, Series A | 7/1/2035 | 3/17/2014 |

# **EXHIBIT D**

PBA BONDS

**EXECUTION COPY**

**PBA Bonds**

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 745235GJ | Government Facilities Revenue Ref. Bonds, Series L | 7/1/2021 | 6/1/1993 |
| 745235G6 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2016 | 1/30/2002 |
| 745235G7 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2017 | 1/30/2002 |
| 745235G8 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2018 | 1/30/2002 |
| 745235G9 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2019 | 1/30/2002 |
| 745235H2 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2020 | 1/30/2002 |
| 745235H3 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2021 | 1/30/2002 |
| 745235H4 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2022 | 1/30/2002 |
| 745235D2 | Government Facilities Revenue Bonds, Series D | 7/1/2024 | 1/30/2002 |
| 745235VX | Government Facilities Revenue Bonds, Series D | 7/1/2027 | 1/30/2002 |
| 745235D3 | Government Facilities Revenue Bonds, Series D | 7/1/2030 | 1/30/2002 |
| 745235D4 | Government Facilities Revenue Bonds, Series D | 7/1/2031 | 1/30/2002 |
| 745235VY | Government Facilities Revenue Bonds, Series D | 7/1/2033 | 1/30/2002 |
| 745235VZ | Government Facilities Revenue Bonds, Series D | 7/1/2036 | 1/30/2002 |
| 745235RV | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2017 | 10/24/2002 |
| 745235RW | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2018 | 10/24/2002 |
| 745235RX | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2019 | 10/24/2002 |
| 745235RY | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2020 | 10/24/2002 |
| 745235RZ | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2021 | 10/24/2002 |
| 745235SA | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2023 | 10/24/2002 |
| 745235SB | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2024 | 10/24/2002 |
| 745235SC | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2025 | 10/24/2002 |
| 745235SW | Government Facilities Revenue Bonds, Series G | 7/1/2026 | 10/24/2002 |
| 745235SX | Government Facilities Revenue Bonds, Series G | 7/1/2032 | 10/24/2002 |
| 745235TG | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2016 | 4/3/2003 |
| 745235TH | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2016 | 4/3/2003 |
| 745235TJ | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2017 | 4/3/2003 |
| 745235TK | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2018 | 4/3/2003 |
| 745235TL | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2019 | 4/3/2003 |
| 745235D5 | Government Facilities Revenue Bonds, Series I | 7/1/2029 | 6/10/2004 |
| 745235D6 | Government Facilities Revenue Bonds, Series I | 7/1/2033 | 6/10/2004 |
| 745235VR | Government Facilities Revenue Bonds, Series I | 7/1/2036 | 6/10/2004 |
| 745235ZK | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2016 | 12/20/2007 |
| 745235ZL | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2017 | 12/20/2007 |
| 745235ZM | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2018 | 12/20/2007 |
| 745235ZN | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2019 | 12/20/2007 |
| 745235ZP | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2020 | 12/20/2007 |
| 745235ZQ | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2021 | 12/20/2007 |
| 745235ZR | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2022 | 12/20/2007 |
| 745235ZS | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2023 | 12/20/2007 |
| 745235ZT | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2031 | 12/20/2007 |
| 745235S9 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2034 | 12/20/2007 |
| 745235B7 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2035 | 12/20/2007 |
| 745235J9 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2023 | 12/20/2007 |
| 745235K2 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2024 | 12/20/2007 |
| 745235K3 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2025 | 12/20/2007 |
| 745235K4 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2026 | 12/20/2007 |
| 745235K5 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2027 | 12/20/2007 |
| 745235K6 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2028 | 12/20/2007 |
| 745235ZX | Government Facilities Revenue Bonds, Series N | 7/1/2016 | 12/20/2007 |
| 745235ZY | Government Facilities Revenue Bonds, Series N | 7/1/2017 | 12/20/2007 |
| 745235ZZ | Government Facilities Revenue Bonds, Series N | 7/1/2018 | 12/20/2007 |
| 745235A2 | Government Facilities Revenue Bonds, Series N | 7/1/2019 | 12/20/2007 |
| 745235A3 | Government Facilities Revenue Bonds, Series N | 7/1/2020 | 12/20/2007 |
| 745235A4 | Government Facilities Revenue Bonds, Series N | 7/1/2021 | 12/20/2007 |
| 745235A5 | Government Facilities Revenue Bonds, Series N | 7/1/2022 | 12/20/2007 |
| 745235A6 | Government Facilities Revenue Bonds, Series N | 7/1/2023 | 12/20/2007 |

**EXECUTION COPY**

| PBA Bonds | | | |
|---|---|---|---|
| **CUSIP** | **Series** | **Maturity** | **Issuance** |
| 745235A7 | Government Facilities Revenue Bonds, Series N | 7/1/2024 | 12/20/2007 |
| 745235A8 | Government Facilities Revenue Bonds, Series N | 7/1/2025 | 12/20/2007 |
| 745235A9 | Government Facilities Revenue Bonds, Series N | 7/1/2026 | 12/20/2007 |
| 745235B2 | Government Facilities Revenue Bonds, Series N | 7/1/2027 | 12/20/2007 |
| 745235B3 | Government Facilities Revenue Bonds, Series N | 7/1/2032 | 12/20/2007 |
| 745235B4 | Government Facilities Revenue Bonds, Series N | 7/1/2037 | 12/20/2007 |
| 745235K7 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2018 | 7/1/2009 |
| 745235K8 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2019 | 7/1/2009 |
| 745235K9 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2020 | 7/1/2009 |
| 745235L2 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2021 | 7/1/2009 |
| 745235L3 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2023 | 7/1/2009 |
| 745235L4 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2025 | 7/1/2009 |
| 745235L5 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2026 | 7/1/2009 |
| 745235L6 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2030 | 7/1/2009 |
| 745235L7 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2036 | 7/1/2009 |
| 745235L8 | Government Facilities Revenue Ref. Bonds, Series K (Remarketing) | 7/1/2027 | 5/27/2004 |
| 745235L9 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2022 | 10/28/2009 |
| 745235M2 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2037 | 10/28/2009 |
| 745235M3 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2038 | 10/28/2009 |
| 745235M4 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2039 | 10/28/2009 |
| 745235M5 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M6 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M7 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M8 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M9 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2022 | 8/24/2011 |
| 745235N2 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2023 | 8/24/2011 |
| 745235N3 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2024 | 8/24/2011 |
| 745235N4 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2025 | 8/24/2011 |
| 745235N5 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2026 | 8/24/2011 |
| 745235N6 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2027 | 8/24/2011 |
| 745235N7 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2028 | 8/24/2011 |
| 745235N8 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2029 | 8/24/2011 |
| 745235N9 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2030 | 8/24/2011 |
| 745235P2 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2031 | 8/24/2011 |
| 745235P3 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2032 | 8/24/2011 |
| 745235P4 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2033 | 8/24/2011 |
| 745235P5 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2034 | 8/24/2011 |
| 745235P8 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2036 | 8/24/2011 |
| 745235P6 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2039 | 8/24/2011 |
| 745235P7 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2041 | 8/24/2011 |
| 745235Q2 | Government Facilities Revenue Bonds, Series T | 7/1/2030 | 12/22/2011 |
| 745235R5 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2016 | 6/21/2012 |
| 745235R6 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2017 | 6/21/2012 |
| 745235R7 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2018 | 6/21/2012 |
| 745235R8 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2019 | 6/21/2012 |
| 745235S6 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2019 | 6/21/2012 |
| 745235R9 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2020 | 6/21/2012 |
| 745235S2 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2021 | 6/21/2012 |
| 745235S3 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2022 | 6/21/2012 |
| 745235S4 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2023 | 6/21/2012 |
| 745235R3 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2042 | 6/21/2012 |

49

## **EXHIBIT E**

TERM SHEET

## TERM SHEET FOR TREATMENT OF COMMONWEALTH GENERAL
## OBLIGATION BONDS AND PUBLIC BUILDINGS AUTHORITY BONDS
## PURSUANT TO A JOINT TITLE III PLAN OF ADJUSTMENT

This term sheet, dated as of May 31, 2019 (the "**Term Sheet**"), is a summary of indicative terms and conditions for a proposed restructuring (the "**Restructuring**"), through the Plan,[1] to be consummated in connection with proceedings under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, codified at 48 U.S.C.§§ 2101, *et seq.*, ("**PROMESA**"; such proceedings being referred to as the "**PROMESA Proceedings**") of the Commonwealth of Puerto Rico (the "**Commonwealth**") and the Puerto Rico Public Buildings Authority ("**PBA**," and, collectively with the Commonwealth, the "**Covered Borrowers**"), each pending or to be commenced before the United States District Court for the District of Puerto Rico (the "**Title III Court**").

This Term Sheet is for illustrative purposes only and is not an offer or a commitment by any party to support or enter into the transactions contemplated hereby. The proposals summarized herein remain subject to negotiations as well as analysis of fiscal, tax and accounting implications, and nothing herein shall be an admission of fact or law or be deemed binding on any party. Without limiting the generality of the foregoing, nothing in this Term Sheet shall constitute, nor is it intended to represent, a commitment on the part of the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), the Government of Puerto Rico or any of its instrumentalities (together with the Commonwealth and the Oversight Board, the "**Governmental Parties**") or any of the creditors, to enter into the Restructuring or any other definitive agreement with any person. The foregoing shall apply to this Term Sheet, as well as to any prior and subsequent communications between the Oversight Board, the Government of Puerto Rico or any other party in interest with respect to the transactions contemplated herein and the documents which may be negotiated and executed in connection herewith.

This Term Sheet does not constitute, nor shall it be construed to be, an offer with respect to any securities or a solicitation of acceptances or rejections with respect to any plan of adjustment, it being understood that any such solicitation shall be made only in compliance with the applicable terms and provisions of PROMESA, title 11 of the United States Code (the "**Bankruptcy Code**") and such other applicable laws and rules. This Term Sheet does not address all material terms that would be required in connection with any proposed Restructuring and any agreement is subject to the execution of definitive documentation in form and substance consistent with this Term Sheet.

This Term Sheet and related discussions are subject to (i) a Confidentiality Agreement, dated as of March 14, 2019, by and among the Governmental Parties, and the members of the Lawful Constitutional Debt Coalition (the "**LCDC**"), (ii) a Confidentiality Agreement, dated as of April 22, 2019, by and among the Governmental Parties and the members of ad hoc committee of

---

[1] Capitalized terms not defined in the preliminary section and Sections I-II(B) of the Term Sheet shall have the meanings ascribed to them in Section II(C) of the Term Sheet. Any additional undefined capitalized terms shall have the meanings ascribed thereto in the Plan Support Agreement (the "**PSA**"); provided, however, that, in the event of any conflict between the terms defined in the PSA and herein, the meanings set forth in the PSA shall govern.

holders of bonds issued by various Covered Borrowers appearing in the PROMESA Proceedings before the Title III Court as the QTCB Noteholder Group (the "**QTCB Group**") and (iii) Rule 408 of the Federal Rules of Evidence and any other applicable statutes or doctrines protecting the use or disclosure of confidential information or settlement discussions.

## I.    COMPROMISE AND SETTLEMENT OF DEBT LIMIT OBJECTIONS, INVALIDITY ACTIONS, AND PBA RELATED DISPUTES

**A.**    The Term Sheet sets forth the terms and conditions for a compromise and settlement of outstanding disputes (a) set forth in that certain (i) Omnibus Objection of (I) Financial Oversight and Management Board, Acting through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligations Bonds, dated January 14, 2019, [Dkt. No. 4784], (ii) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds, dated May 21, 2019 [Dkt. No. 7057], and (iii) any other objections that may be filed pertaining to the same form and basis of requested relief (collectively, the "**Debt Limit Objections**"), challenging, among other things, the validity and related rights of the 2011 GO Bonds, the 2012 GO Bonds and the 2014 GO Bonds, (b) set forth in the adversary proceedings challenging the validity of certain GO Bonds and PBA Bonds listed in Schedule 1 hereto (the "**Invalidity Actions**"), (c) set forth in the adversary proceedings challenging the secured status of holders of GO Bonds listed in Schedule 2 hereto (the "**Lien Challenge Actions**") and (d) between the Commonwealth and PBA, including, without limitation, the resolution of (i) the claims and causes of action currently being litigated in the adversary proceeding styled The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Puerto Rico Public Buildings Authority, Adv. Proc. No. 18-00149 (the "**PBA Litigation**"), currently pending in the Title III Court, (ii) the amount, if any, of administrative rent that the Commonwealth may owe PBA for the use and occupancy of PBA facilities (the "**PBA Facilities**") during the period from the commencement of the Commonwealth's PROMESA Proceeding up to and including the date on which the Plan becomes effective (the "**Rent Claim**"), and (iii) the ownership of the PBA Facilities and other property for which title currently resides in PBA, as between the Commonwealth and PBA and the claims that PBA may assert against the Commonwealth under leases, agreements and applicable law (the "**PBA Property**"). The proposed settlement and compromise of the Debt Limit Objections, the Invalidity Actions, and Lien Challenge Actions shall be encompassed in the Plan, shall only be binding upon those holders of claims that accept the terms and conditions offered therein and other holders as may be ordered by the Title III Court in connection with confirmation of the Plan; provided, however, that a holder of a claim subject to the Debt Limit Objections, Invalidity Actions, or Lien Challenge Actions that fails to elect on the Ballot, to continue such litigation or fails to timely submit a Ballot electing to continue such litigation, shall be deemed to have accepted the compromise and settlement set forth in the Plan. All remaining holders of claims shall be entitled to participate in litigation regarding the Debt Limit

2

Objections, Invalidity Actions, and Lien Challenge Actions, as applicable, to such holders' claims to the extent provided herein and in the Plan.

## B. PBA Global Settlement

The Oversight Board, on behalf of the Commonwealth, and PBA, shall file a motion in the Commonwealth and PBA (which PROMESA Proceeding shall be commenced prior to or contemporaneously with the filing of such motion) PROMESA Proceedings[2] with the Title III Court in accordance with Bankruptcy Rule 9019 for an order approving a global compromise and settlement of all disputes between the Commonwealth and PBA, including with respect to the PBA Litigation, the Rent Claim and ownership and disposition of the PBA Property in accordance with the terms and conditions set forth herein, including, without limitation, (a) the allowance of a claim in favor of PBA, for the benefit of holders of Allowed PBA Claims, in the aggregate amount of One Billion Seventy-Three Million Dollars ($1,073,000,000) as an administrative expense claim in the Commonwealth's PROMESA Proceeding (the "**Allowed PBA Administrative Expense Claim**"), (b) allocation of the PBA Excess Cash, if any, payable to PBA on the Effective Date, for distribution to holders of Allowed PBA Claims in accordance with the Plan, and (c) the transfer of PBA Property to the Commonwealth or such other entity or entities designated by the Commonwealth, at the discretion of the Commonwealth. The Allowed PBA Administrative Expense Claim shall be treated as PBA Cash under the Plan, and shall be due and payable on the Effective Date.

## C. Allowance and Resolution of Disputed Claims[3]

Solely for purposes of confirmation and consummation of the Plan, unless otherwise allowed pursuant to an order of the Title III Court, on the Effective Date, (a) the PBA Bond Claims, shall be deemed allowed in the aggregate amount equal to the principal amount outstanding on the PBA Bonds and accrued and unpaid interest thereon during the period up to, but not including, the date on which the PBA PROMESA Proceeding is commenced, (b) the Vintage CW Bond Claims, shall be deemed allowed in the aggregate amount of $6,918,372,204.12[4], (c) the 2012

---

[2] As noted in Section II(B) below, the Oversight Board may determine to commence a PROMESA Proceeding under Title VI, rather than a PROMESA Proceeding under Title III, which, in any case, shall provide for similar relief.

[3] The Vintage CW Bond Claim, 2012 CW Bond Claim, and 2014 CW Bond Claim amounts herein consist of aggregate principal and accrued interest, net of original issue discount up to, but excluding, the Commonwealth Petition Date. These amounts may be updated for the inclusion of Other Commonwealth Guarantee Claims, and all rights are reserved with respect to the classification and treatment of such claims.

[4] Based upon certain proceedings commenced in the Title III Court, the allowance of certain Vintage CW Bond Claims and Vintage CW Guarantee Bond Claims may be contested prior to the solicitation of acceptances and rejections to the Plan and, in such circumstances, the treatment of such claims provided for herein may be modified, subject to the requirements for such modifications contained in the PSA, including the required consent of the LCDC and the QTCB Group.

CW Bond Claims, shall be deemed disputed in the aggregate amount of $2,673,506,654.50, and (d) the 2014 CW Bond Claims shall be deemed disputed in the amount of $3,606,983,888.89.[5]

## II.    COMMONWEALTH/ PBA PLAN OF ADJUSTMENT

### A.    Overview

This Term Sheet sets forth the principal terms and conditions for the classification and treatment of certain claims pursuant to the Plan. As set forth below, the Governmental Parties, PBA, the LCDC and the QTCB Group shall use their respective reasonable best efforts to negotiate the terms and conditions of the Plan and other ancillary documents consistent with the transactions contemplated herein; provided, however, that, notwithstanding the foregoing, with the consent of the LCDC and the QTCB Group, the Oversight Board may include such other Title III debtors in the Plan as it deems appropriate provided that such inclusion does not negatively economically impact the treatment to be provided herein. Additionally, as set forth in Section II(D) hereof, the Oversight Board may include such other classes of claims in the Plan as it deems necessary or appropriate, provided that such additional classes of claims and the treatment afforded thereto does not materially negatively impact the economic treatment to be provided hereunder as of the date hereof.

The Plan shall provide for the distribution of (a) Two Billion Dollars ($2,000,000,000.00) in cash, (b) the New Bonds issued by the Commonwealth providing for the cash flows referenced in Exhibit "A," which for Plan purposes shall be valued at Eleven Billion Seven Hundred Seventy-Seven Million Three Hundred Sixty-Five Thousand Dollars ($11,777,365,000.00), subject to the right of the Oversight Board, in its sole and absolute discretion, upon consultation with the Government of Puerto Rico, to reduce such amount by up to Four Hundred Million Dollars ($400,000,000.00), and to cause the Commonwealth to deliver cash in lieu thereof on a dollar-for-dollar basis, (c) Excess Cash, if any, and (d) Litigation Trust Interests. The Governmental Parties shall use their reasonable best efforts to cause all of the New Bonds to be issued as tax-exempt under Section 103 of the Internal Revenue Code and applicable Puerto Rico law as set forth in Section II(J)(5) hereof; provided, however, that, in the event applicable U.S. law does not permit all such New Bonds to be issued on a tax-exempt basis then (a) to the extent that existing securities (GO Bonds or PBA Bonds) are not tax-exempt bonds, any taxable New Bonds will be distributed first to holders of existing taxable GO Bonds or taxable PBA Bonds that, in each case, are not qualified bonds under §54A of the Internal Revenue Code and second to holders of existing taxable GO Bonds or taxable PBA Bonds that, in each case, are qualified bonds under §54A of the Internal Revenue Code, and (b) to the extent that the holders of existing tax-exempt GO Bonds or tax-exempt PBA Bonds must be issued any taxable New Bonds, then such taxable New Bonds shall be distributed ratably to all holders of existing tax-exempt GO Bonds and existing tax-exempt PBA Bonds; and, provided, further, that, to the extent the

---

[5] Claim amounts set forth herein are preliminary, net of original issue discount up to, but excluding, the Commonwealth Petition Date, and subject to final calculations; provided, however, that any modification to the above amounts shall not provide for, nor shall they require, a modification of the aggregate consideration being provided to holders of CW Bond Claims, CW Guarantee Bond Claims and PBA Bond Claims pursuant to the Plan.

Commonwealth can refund the existing taxable federal subsidized bonds ("Qualified Bonds") with replacement taxable subsidized bonds and such taxable bonds result in a lower net cost of funds, the Commonwealth may issue such taxable bonds to the holders of existing Qualified Bonds irrespective of the above obligation; and, provided, further, that the parties to the PSA may consider other mechanisms for the distribution of taxable New Bonds.

In consideration of the foregoing, the members of the LCDC, the QTCB Group and any other holder of GO Bonds or PBA Bonds, who is or becomes a signatory to the PSA shall commit to exchange all of their GO Bonds and PBA Bonds (and related CW Guarantee Bond Claims) for New Bonds (plus the additional consideration described herein) on the terms and in the manner set forth below and shall agree, in accordance with the terms and conditions set forth in the PSA, to support the Plan in respect of their GO Bonds (including Other CW Guaranteed Claims to the extent pari passu in recovery with GO Bonds of the same vintage) and PBA Bonds. The Plan and the Confirmation Order shall provide for, among other things, (1)(a) the allowance and treatment of the claims of beneficial owners and the Monolines, or (b) a process for resolving disputed claims, (2) the establishment of the Litigation Trust, (3) the issuance by the Commonwealth of the New Bonds, for which the Commonwealth shall pledge its full faith and credit under the Puerto Rico Constitution, with debt service payments to be made pursuant to the debt service schedule annexed hereto as Exhibit "A", and having the other terms and conditions set forth herein and such other terms that are consistent with this Term Sheet and have been agreed to by the Oversight Board, the LCDC and the QTCB Group, and (4) the settlements, releases, injunctions, and exculpations described herein.

## B. PBA Filing

On or prior to the date on which the Plan and an accompanying disclosure statement for the Plan are filed, PBA shall commence a case under Title III or, upon consultation with the Oversight Board, the LCDC and the QTCB Group may propose a modification under Title VI of PROMESA. On the Effective Date, and in consideration of the settlement of the PBA Litigation and Allowed PBA Administrative Expense Claim (i) PBA shall, at the discretion of the Commonwealth, transfer title to all PBA Property to the Commonwealth or such other entity as may be designated by the Commonwealth and set forth in the Confirmation Order, and (ii) the Commonwealth shall transfer the PBA Cash and PBA Excess Cash to the PBA for distribution to holders of PBA Bond Claims under and in accordance with the Plan.

## C. Additional Definitions

For purposes of this Term Sheet, the following capitalized terms shall have the meanings ascribed below:

**2012 CW Bond Claim:** A claim against the Commonwealth on account of 2012 GO Bonds.

**2012 CW Bond Settlement:** The settlement elected, deemed or otherwise, to be received by holders of Allowed 2012 CW Bond Claims, which settlement proceeds shall include a Pro Rata Share of New Bonds and CW Cash, but expressly exclude CW Excess Cash, Settlement Savings, and Litigation Trust Interests.

5

**2012 CW Guarantee Bond Claim:** A claim on account of the Commonwealth's guarantee of 2012 PBA Bonds; provided, however, that, solely for purposes of distribution pursuant to the Plan, the amount of a holder's 2012 CW Guarantee Bond Claim in respect of the Commonwealth's guarantee of 2012 PBA Bonds shall be measured as the amount of such holder's 2012 PBA Bond Claim minus the amount of such holder's PBA Bond Distribution on account of 2012 PBA Bonds; provided, further, 2012 CW Guarantee Bond Claims may include Other CW Guarantee Claims, if applicable.

**2012 CW Guarantee Bond Settlement:** The settlement elected, deemed or otherwise, to be received by holders of Allowed 2012 CW Guarantee Bond Claims, which settlement proceeds shall include a Pro Rata Share of New Bonds and CW Cash, but expressly exclude CW Excess Cash, Settlement Savings, and Litigation Trust Interests.

**2012 GO Bonds:** GO Bonds issued by the Commonwealth in 2012 and listed on Exhibit "B" hereto.

**2012 Non-Settling PBA Bondholder:** A holder of a 2012 PBA Bond who does not elect to participate in the 2012 CW Guarantee Bond Settlement.

**2012 PBA Bond Claim:** A claim against PBA on account of 2012 PBA Bonds.

**2012 PBA Bonds:** PBA Bonds issued by PBA in 2012 and listed on Exhibit "C" hereto.

**2012 Settlement Savings:** The amount of distributable currency equal to (i) the CW Pari Passu Recovery Percentage of the aggregate amount of 2012 Settling CW Bond Claims and 2012 Settling CW Guarantee Bond Claims minus (ii) 45% of the aggregate amount of 2012 Settling CW Bond Claims and 2012 Settling CW Guarantee Bond Claims.

**2012 Settling CW Bond Claim:** A claim against the Commonwealth by holders of 2012 CW Bond Claims that elect, deemed or otherwise, to participate in the 2012 CW Bond Settlement.

**2012 Settling CW Bond Distribution:** A distribution to holders of 2012 CW Bond Claims that elect, deemed or otherwise, the 2012 CW Bond Settlement in an amount equal to forty-five percent (45%) of such holders' aggregate 2012 CW Bond Claims.

**2012 Settling CW Guarantee Bond Claim**: A claim against the Commonwealth by holders of 2012 CW Guarantee Bond Claims that elect, deemed or otherwise, to participate in the 2012 CW Guarantee Bond Settlement.

**2012 Settling CW Guarantee Bond Distribution:** A distribution to holders of 2012 CW Guarantee Bond Claims that elect, deemed or otherwise, the 2012 CW Guarantee Bond Settlement in an amount equal to forty-five percent (45%) of such holders' aggregate 2012 CW Guarantee Bond Claims.

**2014 CW Bond Claim:** A claim against the Commonwealth on account of (i) the 2014 GO Bonds or (ii) the Commonwealth's guarantee of such other indebtedness arising subsequent to 2012, which may include Other CW Guarantee Claims, if applicable.

6

**2014 CW Bond Settlement:** The settlement elected, deemed or otherwise, to be received by holders of Allowed 2014 Settling CW Bond Claims, which settlement proceeds shall include a Pro Rata Share of New Bonds and CW Cash, but expressly exclude CW Excess Cash, Settlement Savings and Litigation Trust Interests.

**2014 GO Bonds:** GO Bonds issued by the Commonwealth in 2014 and listed on Exhibit "D" hereto.

**2014 Settlement Savings:** The amount of distributable currency equal to (i) the CW Pari Passu Recovery Percentage of the aggregate amount of 2014 Settling CW Bond Claims minus (ii) 35% of the aggregate amount of 2014 Settling CW Bond Claims.

**2014 Settling CW Bond Claim:** A claim against the Commonwealth by holders of 2014 CW Bond Claims that elect, deemed or otherwise, to participate in the 2014 CW Bond Settlement.

**2014 Settling CW Bond Distribution:** A distribution to holders of 2014 CW Bond Claims that elect, deemed or otherwise, the 2014 CW Bond Settlement in an amount equal to thirty-five percent (35%) of such holders' aggregate 2014 CW Bond Claims.

**Allowed . . . Claim:** A Claim against the Commonwealth or PBA, as applicable, or the assets of the Commonwealth or PBA, as applicable (a) proof of which was filed on or before the applicable Bar Date or (b) if no proof of Claim has been timely filed, which has been or hereafter is listed by the Commonwealth or PBA, as applicable, in the List of Creditors and is not listed thereon as "disputed", "contingent", or "unliquidated" or (c) allowed pursuant to (i) section 502(h) of the Bankruptcy Code, applicable to the PROMESA Proceedings pursuant to Section 301 of PROMESA, (ii) the terms of the Plan, or (iii) a Final Order.

**Ballot:** The ballot, the form of which is approved by the Title III Court, distributed in connection with the solicitation of acceptances and rejections to the Plan and elections of distributions in connection therewith.

**Bond Recovery Cap:** Eighty-nine and four tenths percent (89.4%), the aggregate recovery by a holder of an Allowed CW Bond Claim, Allowed CW Guarantee Claim or Allowed PBA Bond Claim on account of such claim; provided, however, that, in the event that Excess Cash is distributed to a holder of an Allowed CW Bond Claim, Allowed CW Guarantee Claim, or Allowed PBA Claims pursuant to the Plan, the "Bond Recovery Cap" shall be reduced by a percentage equal to (a) the product of (i) the amount of Excess Cash times (ii) one hundred fifteen percent (115%) divided by (b) the sum of (i) the amount of Allowed Vintage CW Bond Claims, (ii) the amount of Allowed Vintage PBA Bond Claims, (iii) the amount, if any, of Allowed Other CW Guarantee Claims (but solely to the extent that the bonds or notes underlying such claims are entitled to receive their CW Pari Passu Recovery percentage on account of such Allowed Claims and without duplication), (iv) claims of Non-Settling CW Bondholders, and (iv) claims of 2012 Non-Settling PBA Bondholders (without duplication on account of CW Guarantee Bond Claims).[6]

---

[6] From and after the Effective Date, for purposes of the Bond Recovery Cap, distributions to holders of Allowed CW Bond Claims, Allowed CW Guarantee Claims, and Allowed PBA Bond Claims will be

7

**Commonwealth Petition Date:** May 3, 2017.

**Confirmation Order:** The order of the Title III Court confirming the Plan in accordance with the provisions of PROMESA and the Bankruptcy Code.

**Creditors' Committee:** The statutory committee of unsecured creditors appointed in the Commonwealth's PROMESA Proceeding.

**CW Bond Claim:** 2012 CW Bond Claim, 2014 CW Bond Claim, and Vintage CW Bond Claim.

**CW Cash:** The amount of cash made available by the Commonwealth, upon consultation with and the consent of the Oversight Board, for distribution to holders of Allowed Vintage CW Bond Claims, Allowed Vintage CW Guarantee Bond Claims, Allowed 2012 CW Bond Claims, Allowed 2012 CW Guarantee Claims, and Allowed 2014 CW Bond Claims, equal to (a) Two Billion Dollars ($2,000,000,000.00) plus (b) such amount of cash, up to Four Hundred Million Dollars ($400,000,000.00) determined by the Oversight Board, in its sole and absolute discretion, upon consultation with the Government of Puerto Rico, to be included in lieu of the issuance of New Bonds on a dollar-for-dollar basis, minus (c) the cash distributed on account of the PSA Restriction Fee and Consummation Costs, minus (d) the amount of the PBA Cash.

**CW Excess Cash:** The Commonwealth's portion of Excess Cash, if any, in an amount equal to Excess Cash minus PBA Excess Cash.

**CW Guarantee Bond Claim:** 2012 CW Guarantee Bond Claim, Vintage CW Guarantee Bond Claim, and Other CW Guarantee Claim.

**CW Pari Passu Recovery Percentage:** The percentage equal to (i) Eleven Billion Four Hundred Twenty Million Three Hundred Sixty-Five Thousand Dollars ($11,420,365,000.00) minus the PSA Restriction Fee and Consummation Costs divided by (ii) the sum of the aggregate amounts of (y) CW Bond Claims, and (z) CW Guarantee Bond Claims.

**Effective Date:** The date on which the transactions contemplated in the Plan are consummated.

**Excess Cash:** The amount of cash, calculated as of the earlier of (i) twenty (20) days prior to the Effective Date, and (ii) February 29, 2020, determined by the Oversight Board, in good faith and in its reasonable discretion, based on verifiable information provided by professionals retained by the Oversight Board and upon consultation with the Government of Puerto Rico. The calculation will be based on an analysis of unrestricted and unencumbered cash in the Treasury Single Account and other government accounts[7] less cash being paid as part of the

---

valued as follows: cash shall be valued in the amount distributed, the New Bonds shall be calculated as of their Plan value, and Litigation Trust Interests will be valued on the same basis if and when recoveries from the Litigation Trust are made to holders of Litigation Trust Interests.

[7] The amount of cash held, as of March 31, 2019, in the following accounts listed on page 7 of the Summary of Bank Account Balances for the Government of Puerto Rico and Its Instrumentalities, issued by the Puerto Rico Fiscal Agency and Financial Advisory Authority and dated April 30, 2019, shall be considered restricted and/or encumbered for the purposes of determining the amount of "Excess Cash,"

Commonwealth's PROMESA Proceeding and the amount of operating cash required to fund government operations in an amount equal to Two Billion Dollars ($2,000,000,000), taking into consideration, among other factors, (a) any amounts of cash in excess of certified fiscal plan projections that are deemed temporary or otherwise due to timing differences and (b) any amounts of cash determined to be unrestricted and unencumbered according to applicable law, including the Puerto Rico Constitution, PROMESA, the Bankruptcy Code, and GASB accounting standards at such time, and expressly excluding (v) any amounts of cash necessary to fund the obligations hereunder, investments and obligations in order to meet the projections contained and funded during FY2020 in the fiscal plan certified on May 9, 2019, and non-funded indebtedness Plan-related distributions, (w) any amounts of cash received from the federal government, (x) any amounts of cash that become available subsequently due to the receipt of federal funds in excess of amounts forecasted in the applicable certified fiscal plan, (y) any funds received from disaster assistance programs and (z) any portion of the Four Hundred Million Dollars ($400,000,000.00) amount elected by the Oversight Board to be paid by the Commonwealth in lieu of the issuance of New Bonds on a dollar-for-dollar basis in accordance with the provisions set forth herein; provided, however, that the methodology of calculation, together with the amount of such calculation as of such date, shall be included in the solicitation materials distributed in connection with the Plan; and, provided, further, that the aggregate amount of "Excess Cash" shall not exceed Nine Hundred Million Dollars ($900,000,000.00). For the avoidance of doubt, any cash accumulated to make the initial debt service payment on the New Bonds, on or after the Effective Date, shall not count against the calculation of Excess Cash or be considered restricted cash.

**GO Bonds:** Collectively, general obligation bonds issued by the Commonwealth.

**Late Vintage Litigation:** The claims, causes of action and objections to claims asserted in the Debt Limit Objections, the Invalidity Actions, and the Lien Challenge Actions, each as may be amended or superseded by claims, causes of actions, and objections set forth and reserved to the Litigation Trust and as may be permitted pursuant to the Plan.

**Late Vintage Reserve:** The disputed claims reserve established on the Effective Date in accordance with the terms and provisions of the Plan to hold in escrow those distributions allocable to holders of (i) 2012 CW Bond Claims, (ii) 2012 CW Guarantee Bond Claims, and (iii) 2014 CW Bond Claims which elect to continue litigation of the Late Vintage Litigation or whose claims are otherwise subject to a claim objection as of the Effective Date.

**Litigation Trust:** The trust to be created on or prior to the Effective Date into which on the Effective Date shall be transferred the authority to litigate or compromise and settle the Late Vintage Litigation.

**Litigation Trust Agreement:** The agreement to be executed and delivered on or prior to the Effective Date providing for, among other things, the ongoing litigation of the Late Vintage Litigation.

---

including such cash generated pursuant to their operations or resulting from existing assets after April 30, 2019: (i) Pension Related; (ii) COFINA; (iii) ERS; (iv) PREPA; (v) PRASA; (vi) HTA and (vii) UPR.

**Litigation Trust Interests:** The beneficial interests in the Litigation Trust allocated in accordance with the terms and provisions of the Plan, which interests shall be transferable to the extent permitted by the governing documents of the Litigation Trust and applicable law.

**Monolines:** Collectively, the insurers of the GO Bonds and the PBA Bonds, including, without limitation, Ambac, Assured, FGIC, National and Syncora.

**New Bonds:** Collectively, the new secured full faith and credit general obligation bonds to be issued on the Effective Date by the Commonwealth.

**Non-Settling CW Bondholders:** Collectively, holders of 2012 CW Bond Claims, 2012 CW Guarantee Bond Claims, and 2014 CW Bond Claims who do not elect, deemed or otherwise, to participate in the 2012 CW Bond Settlement, the 2012 CW Guarantee Bond Settlement, and the 2014 CW Bond Settlement, respectively, and holders of Other CW Guarantee Claims (without duplication), if applicable, who do not elect to participate in the settlement, if any, applicable to their claims.

**Non-Settling CW Bondholders' Settlement Savings Portion:** Non-Settling CW Bondholders' pro rata portion of Settlement Savings.

**Other CW Guarantee Claims:** Other Commonwealth guaranteed claims, including, without limitation, the following claims in the following amounts: Port of Americas Bonds ($308,336,263.00); PRIFA Bonds ($78,145,000.00); and Hacienda Loan ($198,203.767.00).[8]

**PBA Bond Claim:** A claim against PBA on account of PBA Bonds.

**PBA Bond Distribution:** The distribution of cash to holders of Allowed PBA Bond Claims in an amount equal to (i) the amount of the Allowed PBA Administrative Expense Claim plus (ii) any incremental value distributable as a result of PBA Excess Cash.

**PBA Bonds:** Collectively, bonds issued by PBA, the repayment of which is guaranteed by the Commonwealth.

**PBA Cash:** The amount of cash held by PBA on the Effective Date, excluding any PBA Excess Cash, which, at a minimum, shall be the amount paid by the Commonwealth in connection with the compromise and settlement of the Allowed PBA Administrative Expense Claim.

---

[8] Upon further review, and as agreed upon by the Oversight Board, the LCDC and the QTCB Group, other Commonwealth guaranteed claims may be included within the defined term Other CW Guarantee Claims; provided, however, that Other CW Guarantee Claims shall exclude any Commonwealth Guarantee Claims for which the principal obligor is current on the payment of principal and interest of the underlying obligation as of the date the PSA is executed. Solely for purposes of this Term Sheet, the Other CW Guarantee Claims are not presently included in any particular class of claims herein. The parties expressly reserve all rights with respect to the classification and treatment of such claims.

**PBA Excess Cash:** PBA's portion of the Excess Cash, which will equal (i) (x) the amount of PBA Cash divided by (y) $12,493,365,000.00 minus the PSA Restriction Fee and Consummation Costs times (ii) the amount of Excess Cash.

**Plan:** The joint Plan of Adjustment for the Covered Borrowers proposed by the Oversight Board that incorporates the terms and conditions set forth herein and in the PSA, and such other terms and conditions with respect to the Covered Borrowers as may be agreed to by the Oversight Board, the LCDC and the QTCB Group, or such other plan of adjustment as may be filed by the Oversight Board and supported by the LCDC and the QTCB Group.

**Pro Rata Share:** With respect to claims (a) within the same Class, the proportion that a claim bears to the sum of all claims within such Class and (b) among more than one Class, the proportion that all claims within such Class of claims receives in consideration to the sum of consideration received by all claims within all applicable classes; provided, however, that notwithstanding the foregoing, for purposes of New Bonds and CW Cash, Pro Rata Share with respect to the 2012 Settling CW Bond Claim, 2012 Settling CW Guarantee Bond Claims, and 2014 Settling CW Bond Claim shall take into account the discount set forth in the applicable distribution definition for such class.

**Remaining Reserve Amount:** The amount of New Bonds and cash remaining in the Late Vintage Reserve following resolution or determination of the Late Vintage Litigation by final, non-appealable orders or settlement.

**Settlement Savings:** The amount of distributable currency equal to the sum of the 2012 Settlement Savings, and the 2014 Settlement Savings.

**Support Date:** The date upon which holders of Vintage PBA Bond Claims and Vintage CW Guarantee Claims that hold, in the aggregate, at least fifty percent (50%) in amount of outstanding Vintage PBA Bond Claims, execute the PSA or a joinder thereto.

**Vintage CW Bond Claims:** A claim against the Commonwealth on account of Vintage CW Bonds.

**Vintage CW Bond Distribution:** A distribution to holders of Vintage CW Bonds Claims in an amount equal to the CW Pari Passu Recovery Percentage of such holders' aggregate Vintage CW Bond Claims plus any incremental value distributable as a result of CW Excess Cash, Settlement Savings, and Litigation Trust Interests.

**Vintage CW Bonds:** Collectively, the GO Bonds issued prior to 2012 and listed on Exhibit "E" hereto.

**Vintage CW Guarantee Bond Claim:** A claim on account of the Commonwealth's guarantee of Vintage PBA Bonds; provided, however, that, solely for purposes of distribution pursuant to the Plan, the amount of a holder's Vintage CW Guarantee Bond Claim in respect of the Commonwealth's guarantee of Vintage PBA Bonds shall be measured as the amount of such holder's Vintage PBA Bond Claim minus the amount of such holder's PBA Bond Distribution on account of Vintage PBA Bonds, provided, further, Vintage CW Guarantee Bond Claims may include Other CW Guarantee Claims, if applicable.

11

**Vintage CW Guarantee Bond Distribution:** A distribution to holders of Vintage CW Guarantee Bond Claims in an amount equal to the CW Pari Passu Recovery Percentage of such holders' aggregate Vintage CW Guarantee Bond Claims plus any incremental value distributable as a result of CW Excess Cash, Settlement Savings, and Litigation Trust Interests.

**Vintage PBA Bond Claim:** A claim against PBA on account of Vintage PBA Bonds.

**Vintage PBA Bonds:** Collectively, bonds issued by PBA prior to 2012 and listed on Exhibit "F" hereto, the repayment of which is guaranteed by the Commonwealth, including, without limitation, those PBA Bonds as to which the Monolines have insured the payment of principal and interest with respect thereto.

## D.    Class of Claims

Without limiting the ability of the Oversight Board to have subclasses or separately delineated classes for each issuance of GO Bonds or PBA Bonds, the Plan shall have the following classes of Claims:

1.    **Class 1: PBA Bond Claims**

2.    **Class 2: Vintage CW Bond Claims**

3.    **Class 3: Vintage CW Guarantee Bond Claims**

4.    **Class 4: 2012 CW Bond Claims**

5.    **Class 5: Settling 2012 CW Bond Claims**

6.    **Class 6: 2012 CW Guarantee Bond Claims**

7.    **Class 7: Settling 2012 CW Guarantee Bond Claims**

8.    **Class 8: 2014 CW Bond Claims**

9.    **Class 9: Settling 2014 CW Bond Claims**

Notwithstanding the foregoing classification of claims, the Oversight Board reserves the right to amend or modify such classification, including, without limitation, supplementing such classification with additional classes, including, classes for additional claims and claims insured by the Monolines, provided that such amendment does not negatively economically impact the treatment afforded any holders contemplated to be included in the Classes above as of the date hereof; provided, however, that the classification and treatment of any insured bonds held by the LCDC and the QTCB Group shall be subject to the consent of the LCDC or the QTCB Group, which consent shall not be unreasonably withheld.[9]

---

[9] So long as the PSA remains in effect, each Insured Claim shall be voted in accordance with the provisions of Section 301(c)(3) of PROMESA.

108225291v10

**E.      Treatment of Claims:** Subject to the conditions to effectiveness of the Plan, including, without limitation, those listed under "Conditions to Effective Date of Plan" below, on the Effective Date, claims shall be treated as follows.

**Class 1 – PBA Bond Claims:** On the Effective Date, and in full satisfaction, release, and exchange of its Allowed PBA Bond Claim, each holder of a PBA Bond Claim shall be entitled to receive its Pro Rata Share of the PBA Bond Distribution, which is composed of (i) PBA Cash and (ii) subject to the Bond Recovery Cap, PBA Excess Cash. In the event that the Bond Recovery Cap is attained, all property that would have been distributed to holders of the Allowed PBA Bond Claims, but for the Bond Recovery Cap, shall be distributed to holders of Allowed CW Bond Claims in accordance with the terms of the Plan.

**Class 2 – Vintage CW Bond Claims:** On the Effective Date, and in full satisfaction, release, and exchange of its Allowed Vintage CW Bond Claim, each holder of a Vintage CW Bond Claim shall receive its Pro Rata Share of the Vintage CW Bond Distribution, which is composed of (i) New Bonds, (ii) CW Cash, and (iii) subject to the Bond Recovery Cap, (a) CW Excess Cash, (b) Litigation Trust Interests, and (c) Settlement Savings.

**Class 3 – Vintage CW Guarantee Bond Claims:** On the Effective Date, and in full satisfaction, release, and exchange of its Allowed Vintage CW Guarantee Bond Claim, each holder of a Vintage CW Guarantee Bond Claim shall receive its Pro Rata Share of the Vintage CW Guarantee Bond Distribution, which is composed of (i) New Bonds, (ii) CW Cash, and (iii) subject to the Bond Recovery Cap, (a) CW Excess Cash, (b) Litigation Trust Interests, and (c) Settlement Savings; provided, however, that a holder of an Allowed Vintage CW Guarantee Bond Claim may not recover more in the aggregate than the Bond Recovery Cap on account of such holder's Allowed Vintage PBA Bond Claim and Allowed Vintage CW Guarantee Bond Claim.

**Class 4 – 2012 CW Bond Claims:** 2012 CW Bond Claims are subject to the Late Vintage Litigation and, unless otherwise ordered by the Title III Court or determined by the Oversight Board to be appropriate, shall not be entitled to vote to accept or reject the Plan; provided, however, that, notwithstanding the foregoing, each holder of a 2012 CW Bond Claim shall receive a ballot in connection with such solicitation and shall be entitled to elect to receive the 2012 CW Bond Settlement and receive its Pro Rata Share of the 2012 Settling CW Bond Distribution. In the event that a holder of a 2012 CW Bond Claim elects, deemed or otherwise, to receive the 2012 CW Bond Settlement, such claim shall be deemed to be a 2012 Settling CW Bond Claim and, in full satisfaction, release and exchange of its Allowed 2012 Settling Bond Claim, the holder thereof shall (a) have relinquished its rights to receive distributions in accordance with Class 4 of the Plan and (b) be deemed to have accepted the Plan as a holder in Class 5 of the Plan; provided, however, that, in the event that a holder of a 2012 CW Bond Claim elects not to accept the 2012 CW Bond Settlement, such holder shall be a participant in the Late Vintage Litigation and, on the Effective Date, a distribution equal to the amount of such holder's Pro Rata Share of the Vintage CW Bond Distribution, including, without limitation, such holder's Pro Rata Share of Excess Cash, Settlement Savings and Litigation Trust Interests, shall be placed in the Late Vintage Reserve as if such claim had been an Allowed Vintage CW Bond Claim as of the Effective Date, pending entry of a final, non-appealable order resolving or

13

settling the Late Vintage Litigation. For the avoidance of doubt, a holder of an Allowed 2012 CW Bond Claim may not recover more than the Bond Recovery Cap.

**Class 5 – 2012 Settling CW Bond Claims:** On the Effective Date, each holder of an Allowed 2012 Settling CW Bond Claim shall be entitled to receive its Pro Rata Share of the 2012 Settling CW Bond Distribution, which is composed of (i) CW Cash and (ii) New Bonds.

**Class 6 – 2012 CW Guarantee Bond Claims:** 2012 CW Guarantee Bond Claims are subject to the Late Vintage Litigation and, unless otherwise ordered by the Title III Court or determined by the Oversight Board to be appropriate, shall not be entitled to vote to accept or reject the Plan; provided, however, that, notwithstanding the foregoing, each holder of a 2012 CW Guarantee Bond Claim shall receive a ballot in connection with such solicitation and shall be entitled to elect to accept the 2012 CW Guarantee Bond Settlement and receive its Pro Rata Share of the 2012 Settling CW Guarantee Bond Distribution. In the event that a holder of a 2012 CW Guarantee Bond Claim elects, deemed or otherwise, to receive the 2012 CW Guarantee Settlement, such claim shall be deemed to be a 2012 Settling CW Guarantee Bond Claim and, in full satisfaction, release and exchange of its Allowed Settling 2012 CW Guarantee Bond Claim, the holder thereof shall (a) have relinquished its rights to receive distributions in accordance with Class 6 of the Plan and (b) be deemed to have accepted the Plan as a holder in Class 7 of the Plan; provided, however, that, in the event that a holder of a 2012 CW Guarantee Bond Claim elects not to accept the 2012 CW Guarantee Bond Settlement, such holder shall be a participant in the Late Vintage Litigation and, on the Effective Date, a distribution equal to the amount of such holder's Pro Rata Share of the Vintage CW Guarantee Bond Distribution, including, without limitation, such holder's Pro Rata Share of Excess Cash, Settlement Savings and Litigation Trust Interests, shall be placed in the Late Vintage Reserve as if such claim had been an Allowed Vintage CW Guarantee Bond Claim as of the Effective Date, pending entry of a final, non-appealable order resolving or settling the Late Vintage Litigation. For the avoidance of doubt, a holder of an Allowed 2012 CW Guarantee Bond Claim may not recover more in the aggregate than the Bond Recovery Cap on account of such holder's Allowed PBA Bond Claim and Allowed 2012 CW Guarantee Bond Claim.

**Class 7 – Settling 2012 CW Guarantee Bond Claims:** On the Effective Date, each holder of an Allowed 2012 Settling CW Guarantee Bond Claim shall be entitled to receive its Pro Rata Share of the 2012 Settling CW Guarantee Bond Distribution, which is composed of (i) CW Cash and (ii) New Bonds.

**Class 8 – 2014 Commonwealth Bond Claims:** 2014 CW Bond Claims are subject to the Late Vintage Litigation and, unless otherwise ordered by the Title III Court or determined by the Oversight Board to be appropriate, shall not be entitled to vote to accept or reject the Plan; provided, however, that, notwithstanding the foregoing, each holder of a 2014 CW Bond Claim shall receive a ballot in connection with such solicitation and shall be entitled to elect to accept the 2014 CW Bond Settlement and receive its Pro Rata Share of the 2014 Settling CW Bond Distribution. In the event that a holder of a 2014 CW Bond Claim elects, deemed or otherwise, to accept the 2014 CW Bond Settlement, such claim shall be deemed to be a 2014 Settling CW Bond Claim and, in full satisfaction, release and exchange of its Allowed 2014 Settling CW Bond Claim, the holder thereof shall (a) have relinquished its rights to receive distributions in accordance with Class 8 of the Plan and (b) be deemed to have accepted the Plan as a holder in

14

108225291v10

Class 9 of the Plan; provided, however, that, in the event that a holder of a 2014 CW Bond Claim elects not to accept the 2014 CW Bond Settlement, such holder shall be a participant in the Late Vintage Litigation and, on the Effective Date, a distribution equal to the amount of such holder's Pro Rata Share of the Vintage CW Bond Distribution, including, without limitation, such holder's Pro Rata Share of Excess Cash, Settlement Savings and Litigation Trust Interests, shall be placed in the Late Vintage Reserve as if such claim had been an Allowed Vintage CW Bond Claim as of the Effective Date, pending entry of a final, non-appealable order resolving or settling the Late Vintage Litigation. For the avoidance of doubt, a holder of Allowed 2014 CW Bond Claim may not recover more than the Bond Recovery Cap on account of such Allowed 2014 CW Bond Claim.

**Class 9 – 2014 Settling CW Bond Claims:** On the Effective Date, each holder of an Allowed 2014 Settling CW Bond Claim shall be entitled to receive its Pro Rata Share of the 2014 Settling CW Bond Distribution, which is composed of (i) CW Cash and (ii) New Bonds.

## F. Settlement Savings

The Commonwealth shall receive thirty-three percent (33%) of Settlement Savings. The remaining sixty-seven percent (67%) of Settlement Savings shall be distributed pro rata to holders of Allowed Vintage CW Bond Claims and Allowed Vintage CW Guarantee Bond Claims, and to Non-Settling CW Bondholders whose claims are allowed pursuant to an Order of the Title III Court, subject to the Bond Recovery Cap.

## G. Distribution of Late Vintage Reserve

In the event of a Remaining Reserve Amount, and subject to the Bond Recovery Cap, the Litigation Trust shall receive such Remaining Reserve Amount up to an amount equal to the Non-Settling CW Bondholders' Settlement Savings Portion (the "**Settlement Savings True-Up**"). In the event there is any additional Remaining Reserve Amount after the Settlement Savings True-Up, (a) the Commonwealth shall receive thirty-three percent (33%) of such Remaining Reserve Amount, and (b) the Litigation Trust shall receive sixty-seven percent (67%) of the Remaining Reserve Amount. Subject to the Bond Recovery Cap, the Litigation Trust shall distribute its allocated portion of the Remaining Reserve Amount to holders of Litigation Trust Interests in accordance with the terms and provisions of the Litigation Trust Agreement.

## H. Litigation Trust

On or prior to the Effective Date, the Commonwealth shall form the Litigation Trust, governed in accordance with the terms and conditions of the Litigation Trust Agreement. The Litigation Trust Interests shall be (1) distributed to holders of Allowed Vintage CW Bond Claims and Allowed Vintage CW Guarantee Bond Claims in accordance with the treatment section of the Plan and (2) reserved for Non-Settling CW Bondholders; provided, however, that, to the extent any of the claims of such Non-Settling CW Bondholders are allowed pursuant to a Final Order, as defined in the PSA, such holders shall receive their pro rata distributions from the Litigation Trust on account of such allowed claim. The Litigation Trust Interests shall be distributed as an instrument separate from the New Bonds and shall be transferable to the extent permitted by the governing documents of the Litigation Trust and applicable law. The Litigation Trust shall be

governed by a seven (7) member board of directors, with (a) two (2) directors selected by the LCDC, (b) two (2) directors selected by the QTCB Group, (c) two (2) directors selected by the Oversight Board, upon consultation with the Government of Puerto Rico, and (d) one (1) member selected by the Creditors' Committee, and managed by officers and employees retained by the Litigation Trust. The Litigation Trust shall retain counsel and other advisors selected by the board of directors. On the Effective Date, and solely from Settlement Savings generated, the Litigation Trust shall be funded on a one-time basis in an amount up to Ten Million Dollars ($10,000,000.00), one-third (1/3) of which shall be funded from the portion of the Settlement Savings otherwise distributable to the Commonwealth and two-thirds (2/3) of which shall be funded from the portion of the Settlement Savings otherwise distributable to holders of Allowed CW Bond Claims and Allowed CW Guarantee Bond Claims. From and after the Effective Date, the Litigation Trust shall have full authority to compromise and settle the Late Vintage Litigation.

## I.     Late Vintage Litigation

On or as soon as practicable after the Effective Date, the Litigation Trust will commence or continue the Late Vintage Litigation transferred to it by the Commonwealth against holders of claims who have elected, deemed or otherwise, not to settle their 2012 CW Bond Claims, 2012 CW Guarantee Bond Claims, and/or 2014 CW Bond Claims, as applicable.

To the extent any of the 2012 CW Bonds, 2012 PBA Bonds, and/or the 2014 CW Bonds underlying a non-settling holder's 2012 CW Bond Claims, 2012 CW Guarantee Bond Claims, and/or 2014 CW Bond Claims is determined to be valid and allowed, such non-settling holder shall receive its Pro Rata Share of the Late Vintage Reserve on account thereof, subject to the Bond Recovery Cap, as applicable.

## J.     Terms of New Bonds

### 1.     Terms

The New Bonds shall be issued by the Commonwealth on the Effective Date and be supported by a pledge of the Commonwealth's full faith, credit and taxing power under and in accordance with Article VI, Section 2 of the Puerto Rico Constitution. The New Bonds shall be structured based on the cash flows referenced in Exhibit "A" to create marketable securities with the scheduled debt service payments of the New Bonds to be in accordance with the schedule attached hereto as Exhibit "A". The New Bonds shall be payable in cash on a current basis on established dates prior to maturity. Payments made on account of the New Bonds shall be made through an appointed fiscal agent in accordance with terms of the New Bond Resolution.

The Oversight Board will work in good faith (and to the extent such parties are subject to a confidentiality agreement in form and substance satisfactory to the Oversight Board) with the LCDC, the QTCB Group and the other creditors who have executed the PSA to optimize the value and liquidity of the New Bonds through efficient and effective structuring of the New Bonds, including, without limitation, such that tax exempt and, to the extent issued, taxable New Bonds (for the avoidance of doubt, including Qualified Bonds) are expected to trade at

16

substantially similar prices as of the Effective Date. The specifics of the terms of the New Bonds shall be subject to the agreement of the Oversight Board, the LCDC and the QTCB Group.

### 2. New Bond Resolution

The New Bonds will be issued pursuant to a new bond resolution (the "**New Bond Resolution**"), in form and substance agreed upon by the Oversight Board, the LCDC and the QTCB Group.

### 3. Deemed Issuance Date

Notwithstanding the timing of the Effective Date, interest on the New Bonds shall commence to accrue as of the earlier of (a) the Effective Date and (b) February 29, 2020; whichever date occurs first shall be designated as the "dated" date of the New Bonds.

### 4. Rights of Acceleration

The New Bonds shall not have rights of acceleration.

### 5. Tax-Exemption

The Commonwealth shall use it reasonable best efforts to cause, and perform all acts and things permitted by law and reasonably necessary or desirable to assure that interest paid to the holders of the New Bonds shall be issued and, subject to the provisions of Section II (A) hereof, remain excludable from gross income for federal income tax purposes, including, without limitation, and only if the Oversight Board and the Commonwealth determine in their joint and absolute discretion, upon consultation with one representative/advisor for each of the LCDC and the QTCB Group (which representative(s)/advisor(s) shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board), to seek a private letter ruling from the Internal Revenue Service determining that interest on the New Bonds will be exempt from federal income taxes. The payment of interest with respect to the New Bonds shall also be issued as exempt from taxation under applicable Puerto Rico law.

### 6. Ratings

To the extent practicable and determined to be in the best interest of the Commonwealth, as determined by the Oversight Board and the Commonwealth in its joint and absolute discretion, upon consultation with one representative/advisor for the LCDC and the QTCB Group (which representative/advisor shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board), shall use its reasonable efforts and work in good faith to obtain a rating on the outstanding New Bonds, including, but not limited to, responding to requests for documents.

## K. Releases, Injunctions & Exculpation

The Plan shall contain standard release, discharge, injunction, and exculpation provisions (which provisions shall include the release of, without limitation, all takings claims, contract clause claims, and any other constitutional law claims against certain government parties in respect of the CW Bond Claims, CW Guarantee Bond Claims and PBA Bond Claims addressed and settled

17

108225291v10

as set forth herein) on terms to be agreed to between the Oversight Board, the LCDC and the
QTCB Group. The release, discharge, injunction, and exculpation provisions to be incorporated
into the Plan are an integral and necessary Plan component, will be presented as a resolution of
disputed claims inextricably bound with the Plan pursuant to Federal Rule of Bankruptcy
Procedure 9019 and, once approved by the Title III Court, will bind all parties in interest
(including any party purporting to assert any released claims derivatively on the
Commonwealth's or PBA's behalf, including, without limitation, any affiliates or
instrumentalities of the Commonwealth or PBA, as applicable, and the Creditors' Committee).
Without limitation, the release will include a release of all claims and causes of action that the
Parties have asserted or could have asserted against one another in respect of the CW Bond
Claims, CW Guarantee Bond Claims and the PBA Bond Claims addressed and settled as set
forth herein; provided, however, that the release will not include a release of any claims or
causes of action that the Parties have asserted or may assert against one another in respect of any
claims or interests that are not addressed and settled as set forth herein other than on terms
agreed to by the Oversight Board, the LCDC and the QTCB Group.

## L.    Conditions to Confirmation and Effective Date

The Plan will contain standard conditions to confirmation and to the Effective Date and other
conditions consistent with this Term Sheet, including, without limitation, a condition that the
Title III Court has determined that the Plan is consistent with the then-most recently certified
fiscal plan of the Commonwealth, including, but not limited to, the discharge pursuant to the
Plan and Confirmation Order of all takings claims, contract clause claims and any other
constitutional law claims against the Covered Borrowers and other government parties. The
Confirmation Order will include terms and conditions consistent with this Term Sheet in all
respects and otherwise in form and substance reasonably acceptable to the LCDC, the QTCB
Group, and the Oversight Board.

## M.    Consummation Costs & PSA Restriction Fee

Notwithstanding anything contained in this Term Sheet or the Plan to the contrary, in order to
compensate certain parties for the cost of negotiation, confirmation and consummation of this
Term Sheet and the Plan, each holder of a PBA Bond Claim, and each holder of a CW Bond
Claim, which executes the PSA consistent with the terms set forth herein by no later than 11:59
p.m. (EDT) on May 31, 2019, shall be entitled to receive on the Effective Date, based upon their
respective positions (insured or otherwise) as of 5:00 p.m. (EDT) on May 31, 2019, a pro rata
share of cash in an amount equal to 1.25%, truncated to two decimal points, of the aggregate
amount of PBA Bond Claims and CW Bond Claims, without duplication on account of claims
against the Commonwealth for CW Guarantee Bond Claims (the "**Consummation Costs**").

In exchange for executing the PSA, and agreeing to all of its terms and conditions, including the
agreement to "lock-up" their bonds in accordance with the terms of the PSA, each member of the
LCDC and the QTCB Group and each other party that executes the PSA during the sixty (60)
day period commencing upon execution of the PSA shall, upon the occurrence of the Support
Date, be entitled to receive  compensation for each 120 day period that their bonds remain
restricted under the PSA in the form of an allowed administrative expense claim, payable in
cash, at the time of consummation of the Plan equal to 1.50% of the aggregate amount of PBA

18

108225291v10

Bond Claims and CW Bond Claims, without duplication on account of claims against the Commonwealth for CW Guarantee Bond Claims, held by such holder as of the date that the Title III Court approves a disclosure statement for the Plan (the "**PSA Restriction Fee**"), which PSA Restriction Fee for each PSA Creditor shall begin accruing on the date upon which such creditor executes the PSA or joinder thereto and will be fully earned on the first day of each 120 day incremental period; provided, however, that the sum of the aggregate PSA Restriction Fee plus the Consummation Costs shall not exceed Three Hundred Million Dollars ($300,000,000.00); and, provided, further, that, in the event the PSA is terminated pursuant to the terms of Section 6.1(c)(i) thereof or the Oversight Board terminates the PSA for any reason other than (i) a breach of PSA by a non-Governmental Party, (ii) the denial of confirmation of the Plan by the Title III Court, or (iii) a failure of the Oversight Board, the LCDC and the QTCB Group to reach agreement on the terms of the New Bonds, the aggregate PSA Restriction Fee up to One Hundred Million Dollars ($100,000,000.00) shall be paid, in cash, as an administrative expense claim under a plan of adjustment for the Commonwealth (in the event that there is no disclosure statement approved, such fee shall be paid to holders that are parties to the PSA as of the date of termination); and, provided, further, that, in all other circumstances, upon termination of the PSA, no Consummation Costs or PSA Restriction Fee shall be due and payable to the party to the PSA terminating the PSA or against the party to the PSA as to which the PSA is terminated.[10] For the avoidance of doubt, neither the Consummation Costs nor the PSA Restriction Fee will be included for purposes of calculating the Bond Recovery Cap.

## N.    Most Favored Nations

Notwithstanding anything contained herein to the contrary, in the event that the Oversight Board enters into any agreements which provide for the settlement or Plan treatment that is more economically favorable (i) to any CW Bond Claim, CW Guarantee Bond Claim, or Other CW Guarantee Claim, the treatment set forth in this Term Sheet for any other CW Bond Claims, CW Guarantee Bond Claims, and Other CW Guarantee Claims of the same vintage (i.e., Vintage, 2012, or 2014, as applicable) shall be modified to equal that provided to such CW Bond Claim, CW Guarantee Bond Claim, or Other CW Guarantee Claim, as applicable, or (ii) to any PBA Bond Claim, the treatment set forth in this Term Sheet for any other PBA Bond Claim, regardless of vintage, shall be modified to equal that provided to such PBA Bond Claim; provided, however, that treatment of bonds that are guaranteed by the Commonwealth but which guarantee has not been triggered, shall be exempt from this provision. Provision of cash in lieu of bonds shall be considered more favorable treatment for the purposes of this provision.

## O.    Retention of Jurisdiction

The Title III Court shall retain jurisdiction over all matters arising out of, or relating to the PROMESA Proceedings, the Plan, and the PSA, including to enforce the full faith and credit pledge provided by the Commonwealth for the benefit of the holders of the New Bonds in connection with confirmation and implementation of the Plan.

---

[10] Any unused portion of the PSA Restriction Fee shall be added to the value distributed to bondholders under the Plan.

2

## SCHEDULE 1

### Invalidity Actions

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Jefferies LLC, Adv. Proc. No. 19-00281

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. BNY Mellon/POP Sec, Adv. Proc. No. 19-00282

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. First Southwest Co., Adv. Proc. No. 19-00283

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1E-59E , Adv. Proc. No. 19-00284

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1A-100A, Adv. Proc. No. 19-00285

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1B-100B, Adv. Proc. No. 19-00286

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1C-53C, Adv. Proc. No. 19-00287

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1D-73D, Adv. Proc. No. 19-00288

## SCHEDULE 2

### Lien Challenge Actions

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Autonomy Master Fund Ltd., Adv. Proc. No. 19-00291

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Cooperativa de Ahorro t Credito de Rincon, Adv. Proc. No. 19-00292

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Ortiz de la Renta, Adv. Proc. No. 19-00293

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Martinez Sanchez, Adv. Proc. No. 19-00294

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Valdivieso, Adv. Proc. No. 19-00295

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Friedman, Adv. Proc. No. 19-00296

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Blackrock Fin. Mgmt., Adv. Proc. No. 19-00297

## **EXHIBIT A**

Scheduled Cash Flows of the New Bonds

| July 1,[1] | Total Cash Flows ($000's)[2] |
|---|---|
| 2020 | $1,034,646 |
| 2021 | 1,017,174 |
| 2022 | 998,987 |
| 2023 | 980,088 |
| 2024 | 960,424 |
| 2025 | 939,976 |
| 2026 | 918,708 |
| 2027 | 896,593 |
| 2028 | 873,587 |
| 2029 | 849,664 |
| 2030 | 824,792 |
| 2031 | 798,909 |
| 2032 | 772,004 |
| 2033 | 744,022 |
| 2034 | 714,913 |
| 2035 | 684,645 |
| 2036 | 653,162 |
| 2037 | 620,421 |
| 2038 | 586,380 |
| 2039 | 550,966 |
| 2040 | 514,136 |
| 2041 | 479,122 |
| 2042 | 479,112 |
| 2043 | 479,120 |
| 2044 | 479,120 |
| 2045 | 479,118 |
| 2046 | 479,122 |
| 2047 | 479,116 |
| 2048 | 479,115 |
| 2049 | 479,120 |
| **Total** | **$21,246,263** |

(1) Assumed Deemed Issuance Date of February 29, 2020 with maturities or mandatory amortization payments due on July 1 of each fiscal year.
(2) For Plan purposes, the above cash flows support $11,777.4 million of New Bonds. Actual rate and structure of New Bonds to be set forth in the Plan. To the extent the Oversight Board elects to deliver cash in lieu of bonds for up to $400.0 million, the amount of bonds and the cash flows would be reduced commensurately.

## **EXHIBIT B**

GO Bonds issued by the Commonwealth in 2012

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 74514LZV | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2016 | 3/29/2012 |
| 74514LZW | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2017 | 3/29/2012 |
| 74514LZX | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2018 | 3/29/2012 |
| 74514LZY | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2019 | 3/29/2012 |
| 74514LZZ | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2020 | 3/29/2012 |
| 74514LA2 | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2033 | 3/29/2012 |
| 74514LA3 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2020 | 4/3/2012 |
| 74514LC4 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2020 | 4/3/2012 |
| 74514LA4 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2021 | 4/3/2012 |
| 74514LC5 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2021 | 4/3/2012 |
| 74514LA5 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LC6 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LD4 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LA6 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LC7 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LD5 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LA7 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LC8 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LD6 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LA8 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2025 | 4/3/2012 |
| 74514LD7 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2025 | 4/3/2012 |
| 74514LA9 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LC9 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LD3 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LB2 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2027 | 4/3/2012 |
| 74514LD8 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2027 | 4/3/2012 |
| 74514LB3 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2028 | 4/3/2012 |
| 74514LB4 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2029 | 4/3/2012 |
| 74514LB9 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2030 | 4/3/2012 |
| 74514LB5 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2031 | 4/3/2012 |
| 74514LC2 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2032 | 4/3/2012 |
| 74514LC3 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2033 | 4/3/2012 |
| 74514LD2 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2035 | 4/3/2012 |
| 74514LB6 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2037 | 4/3/2012 |
| 74514LB7 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2039 | 4/3/2012 |
| 74514LB8 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2041 | 4/3/2012 |

# **EXHIBIT C**

**PBA Bonds issued in 2012**

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 745235R5 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2016 | 6/21/2012 |
| 745235R6 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2017 | 6/21/2012 |
| 745235R7 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2018 | 6/21/2012 |
| 745235R8 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2019 | 6/21/2012 |
| 745235S6 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2019 | 6/21/2012 |
| 745235R9 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2020 | 6/21/2012 |
| 745235S2 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2021 | 6/21/2012 |
| 745235S3 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2022 | 6/21/2012 |
| 745235S4 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2023 | 6/21/2012 |
| 745235R3 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2042 | 6/21/2012 |

# **EXHIBIT D**

GO Bonds issued by the Commonwealth in 2014

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 74514LE8 | General Obligation Bonds of 2014, Series A | 7/1/2035 | 3/17/2014 |

# EXHIBIT E

## GO Bonds issued by the Commonwealth prior to 2012

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 745145AU | Public Improvement Ref. Bonds, Series 1998 | 7/1/2016 | 1/29/1998 |
| 745145AV | Public Improvement Ref. Bonds, Series 1998 | 7/1/2017 | 1/29/1998 |
| 745145AW | Public Improvement Ref. Bonds, Series 1998 | 7/1/2018 | 1/29/1998 |
| 745145AX | Public Improvement Ref. Bonds, Series 1998 | 7/1/2023 | 1/15/1998 |
| 745145EK | Public Improvement Bonds of 1998 | 7/1/2016 | 3/15/1998 |
| 745145HN | Public Improvement Bonds of 1999 | 7/1/2016 | 12/1/1998 |
| 745145HP | Public Improvement Bonds of 1999 | 7/1/2017 | 12/1/1998 |
| 745145HQ | Public Improvement Bonds of 1999 | 7/1/2018 | 12/1/1998 |
| 74514LQK | Public Improvement Bonds of 1999 | 7/1/2028 | 12/1/1998 |
| 745145QE | Public Improvement Ref. Bonds, Series 2000 | 7/1/2019 | 4/5/2000 |
| 745145UZ | Public Improvement Bonds of 2001, Series A & B | 7/1/2016 | 6/7/2001 |
| 745145VB | Public Improvement Bonds of 2001, Series A & B | 7/1/2017 | 6/7/2001 |
| 745145VD | Public Improvement Bonds of 2001, Series A & B | 7/1/2018 | 6/7/2001 |
| 745145VF | Public Improvement Bonds of 2001, Series A & B | 7/1/2019 | 6/7/2001 |
| 745145VH | Public Improvement Bonds of 2001, Series A & B | 7/1/2020 | 6/7/2001 |
| 74514LBJ | Public Improvement Ref. Bonds, Series 2001 | 7/1/2030 | 6/7/2001 |
| 745145XZ | Public Improvement Bonds of 2002, Series A | 7/1/2029 | 10/25/2001 |
| 74514LBM | Public Improvement Bonds of 2002, Series A | 7/1/2031 | 10/25/2001 |
| 745145YN | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YP | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YQ | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YR | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YS | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YT | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YU | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YV | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2018 | 10/25/2001 |
| 745145YW | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2018 | 10/25/2001 |
| 745145YX | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145YY | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145YZ | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145ZA | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145ZB | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2020 | 10/25/2001 |
| 745145ZC | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2021 | 10/25/2001 |
| 745145Q7 | Public Improvement Bonds of 2003, Series A | 7/1/2016 | 8/8/2002 |
| 745145Q8 | Public Improvement Bonds of 2003, Series A | 7/1/2017 | 8/8/2002 |
| 745145Q9 | Public Improvement Bonds of 2003, Series A | 7/1/2018 | 8/8/2002 |
| 745145R2 | Public Improvement Bonds of 2003, Series A | 7/1/2019 | 8/8/2002 |
| 745145R3 | Public Improvement Bonds of 2003, Series A | 7/1/2020 | 8/8/2002 |
| 745145R4 | Public Improvement Bonds of 2003, Series A | 7/1/2021 | 8/8/2002 |
| 745145R5 | Public Improvement Bonds of 2003, Series A | 7/1/2022 | 8/8/2002 |
| 745145T7 | Public Improvement Ref. Bonds, Series 2003 A | 7/1/2016 | 8/8/2002 |
| 745145T8 | Public Improvement Ref. Bonds, Series 2003 A | 7/1/2017 | 8/8/2002 |
| 74514LUR | Public Improvement Ref. Bonds, Series 2003 C | 7/1/2027 | 5/6/2003 |
| 74514LUS | Public Improvement Ref. Bonds, Series 2003 C | 7/1/2028 | 5/6/2003 |
| 7451455A | Public Improvement Bonds of 2004, Series A | 7/1/2024 | 10/16/2003 |
| 7451455B | Public Improvement Bonds of 2004, Series A | 7/1/2027 | 10/16/2003 |
| 74514LPT | Public Improvement Bonds of 2004, Series A | 7/1/2033 | 10/16/2003 |
| 74514LCU | Public Improvement Bonds of 2005, Series A | 7/1/2016 | 10/7/2004 |
| 74514LCX | Public Improvement Bonds of 2005, Series A | 7/1/2019 | 10/7/2004 |
| 74514LCY | Public Improvement Bonds of 2005, Series A | 7/1/2020 | 10/7/2004 |
| 74514LCZ | Public Improvement Bonds of 2005, Series A | 7/1/2021 | 10/7/2004 |
| 74514LDA | Public Improvement Bonds of 2005, Series A | 7/1/2022 | 10/7/2004 |
| 74514LDB | Public Improvement Bonds of 2005, Series A | 7/1/2023 | 10/7/2004 |
| 74514LDC | Public Improvement Bonds of 2005, Series A | 7/1/2024 | 10/7/2004 |
| 74514LDD | Public Improvement Bonds of 2005, Series A | 7/1/2025 | 10/7/2004 |
| 74514LDE | Public Improvement Bonds of 2005, Series A | 7/1/2029 | 10/7/2004 |
| 74514LPX | Public Improvement Bonds of 2005, Series A | 7/1/2034 | 10/7/2004 |

GO Bonds issued by the Commonwealth prior to 2012

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 74514LHB | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2016 | 6/23/2006 |
| 74514LHC | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2017 | 6/23/2006 |
| 74514LHD | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2018 | 6/23/2006 |
| 74514LHE | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2019 | 6/23/2006 |
| 74514LHF | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2020 | 6/23/2006 |
| 74514LHG | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2021 | 6/23/2006 |
| 74514LHH | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2022 | 6/23/2006 |
| 74514LHJ | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2023 | 6/23/2006 |
| 74514LHK | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2024 | 6/23/2006 |
| 74514LHL | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2025 | 6/23/2006 |
| 74514LHM | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2026 | 6/23/2006 |
| 74514LHN | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2031 | 6/23/2006 |
| 74514LHP | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2035 | 6/23/2006 |
| 74514LJQ | Public Improvement Bonds of 2006, Series A | 7/1/2017 | 8/10/2006 |
| 74514LJV | Public Improvement Bonds of 2006, Series A | 7/1/2021 | 8/10/2006 |
| 74514LJW | Public Improvement Bonds of 2006, Series A | 7/1/2022 | 8/10/2006 |
| 74514LJX | Public Improvement Bonds of 2006, Series A | 7/1/2023 | 8/10/2006 |
| 74514LJY | Public Improvement Bonds of 2006, Series A | 7/1/2024 | 8/10/2006 |
| 74514LJZ | Public Improvement Bonds of 2006, Series A | 7/1/2025 | 8/10/2006 |
| 74514LKA | Public Improvement Bonds of 2006, Series A | 7/1/2026 | 8/10/2006 |
| 74514LJR | Public Improvement Bonds of 2006, Series A | 7/1/2018 | 8/10/2006 |
| 74514LJS | Public Improvement Bonds of 2006, Series A | 7/1/2019 | 8/10/2006 |
| 74514LJT | Public Improvement Bonds of 2006, Series A | 7/1/2020 | 8/10/2006 |
| 74514LJU | Public Improvement Bonds of 2006, Series A | 7/1/2021 | 8/10/2006 |
| 74514LQA | Public Improvement Bonds of 2006, Series A | 7/1/2027 | 8/10/2006 |
| 74514LQB | Public Improvement Bonds of 2006, Series A | 7/1/2030 | 8/10/2006 |
| 74514LQE | Public Improvement Ref. Bonds, Series 2006 B | 7/1/2032 | 8/10/2006 |
| 74514LQF | Public Improvement Ref. Bonds, Series 2006 B | 7/1/2035 | 8/10/2006 |
| 74514LKH | Public Improvement Bonds of 2006, Series B | 7/1/2016 | 8/30/2006 |
| 74514LKJ | Public Improvement Bonds of 2006, Series B | 7/1/2017 | 8/30/2006 |
| 74514LLV | Public Improvement Bonds of 2007, Series A | 7/1/2018 | 10/4/2007 |
| 74514LLW | Public Improvement Bonds of 2007, Series A | 7/1/2019 | 10/4/2007 |
| 74514LLX | Public Improvement Bonds of 2007, Series A | 7/1/2020 | 10/4/2007 |
| 74514LLY | Public Improvement Bonds of 2007, Series A | 7/1/2021 | 10/4/2007 |
| 74514LLZ | Public Improvement Bonds of 2007, Series A | 7/1/2022 | 10/4/2007 |
| 74514LMA | Public Improvement Bonds of 2007, Series A | 7/1/2023 | 10/4/2007 |
| 74514LMB | Public Improvement Bonds of 2007, Series A | 7/1/2024 | 10/4/2007 |
| 74514LMC | Public Improvement Bonds of 2007, Series A | 7/1/2025 | 10/4/2007 |
| 74514LMD | Public Improvement Bonds of 2007, Series A | 7/1/2026 | 10/4/2007 |
| 74514LME | Public Improvement Bonds of 2007, Series A | 7/1/2027 | 10/4/2007 |
| 74514LMF | Public Improvement Bonds of 2007, Series A | 7/1/2028 | 10/4/2007 |
| 74514LMG | Public Improvement Bonds of 2007, Series A | 7/1/2029 | 10/4/2007 |
| 74514LMH | Public Improvement Bonds of 2007, Series A | 7/1/2030 | 10/4/2007 |
| 74514LMJ | Public Improvement Bonds of 2007, Series A | 7/1/2031 | 10/4/2007 |
| 74514LMK | Public Improvement Bonds of 2007, Series A | 7/1/2032 | 10/4/2007 |
| 74514LML | Public Improvement Bonds of 2007, Series A | 7/1/2033 | 10/4/2007 |
| 74514LMM | Public Improvement Bonds of 2007, Series A | 7/1/2034 | 10/4/2007 |
| 74514LMN | Public Improvement Bonds of 2007, Series A | 7/1/2037 | 10/4/2007 |
| 74514LMZ | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2016 | 10/16/2007 |
| 74514LNA | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2017 | 10/16/2007 |
| 74514LNB | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2017 | 10/16/2007 |
| 74514LNC | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2018 | 10/16/2007 |
| 74514LND | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2019 | 10/16/2007 |
| 74514LNE | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2020 | 10/16/2007 |
| 74514LNF | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2021 | 10/16/2007 |
| 74514LNG | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2022 | 10/16/2007 |
| 74514LVT | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2030 | 10/16/2007 |

GO Bonds issued by the Commonwealth prior to 2012

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 74514LVU | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2031 | 10/16/2007 |
| 74514LTJ | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2016 | 5/7/2008 |
| 74514LTK | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2016 | 5/7/2008 |
| 74514LTL | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2016 | 5/7/2008 |
| 74514LTM | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2018 | 5/7/2008 |
| 74514LTN | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2019 | 5/7/2008 |
| 74514LTP | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2020 | 5/7/2008 |
| 74514LTQ | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2021 | 5/7/2008 |
| 74514LTR | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2022 | 5/7/2008 |
| 74514LTS | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2023 | 5/7/2008 |
| 74514LTT | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2024 | 5/7/2008 |
| 74514LTU | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2025 | 5/7/2008 |
| 74514LTV | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2026 | 5/7/2008 |
| 74514LTW | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2032 | 5/7/2008 |
| 74514LSQ | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2016 | 5/7/2008 |
| 74514LSR | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2017 | 5/7/2008 |
| 74514LSS | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2018 | 5/7/2008 |
| 74514LST | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2023 | 5/7/2008 |
| 74514LSV | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2023 | 5/7/2008 |
| 74514LSU | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2028 | 5/7/2008 |
| 74514LVG | Public Improvement Bonds of 2008, Series A | 7/1/2016 | 9/18/2008 |
| 74514LVH | Public Improvement Bonds of 2008, Series A | 7/1/2017 | 9/18/2008 |
| 74514LVJ | Public Improvement Bonds of 2008, Series A | 7/1/2018 | 9/18/2008 |
| 74514LVK | Public Improvement Bonds of 2008, Series A | 7/1/2023 | 9/18/2008 |
| 74514LVL | Public Improvement Bonds of 2008, Series A | 7/1/2028 | 9/18/2008 |
| 74514LVM | Public Improvement Bonds of 2008, Series A | 7/1/2033 | 9/18/2008 |
| 74514LVN | Public Improvement Bonds of 2008, Series A | 7/1/2038 | 9/18/2008 |
| 74514LVV | Public Improvement Ref. Bonds, Series 2009 A | 7/1/2031 | 9/17/2009 |
| 74514LVX | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2036 | 11/17/2009 |
| 74514LVY | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2037 | 11/17/2009 |
| 74514LVZ | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2038 | 11/17/2009 |
| 74514LVW | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2039 | 11/17/2009 |
| 74514LWA | Public Improvement Ref. Bonds, Series 2009 C | 7/1/2039 | 12/16/2009 |
| 74514LWN | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2024 | 2/17/2011 |
| 74514LWJ | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2025 | 2/17/2011 |
| 74514LWP | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2027 | 2/17/2011 |
| 74514LWK | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2028 | 2/17/2011 |
| 74514LWL | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2033 | 2/17/2011 |
| 74514LWM | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2033 | 2/17/2011 |
| 74514LWQ | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2034 | 2/17/2011 |
| 74514LWT | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2034 | 2/17/2011 |
| 74514LWR | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2040 | 2/17/2011 |
| 74514LWS | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2040 | 2/17/2011 |
| 74514LWY | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2026 | 3/17/2011 |
| 74514LXD | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2027 | 3/17/2011 |
| 74514LXE | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2028 | 3/17/2011 |
| 74514LXA | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LXB | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LXF | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LWZ | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2035 | 3/17/2011 |
| 74514LXC | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2036 | 3/17/2011 |
| 74514LXH | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2036 | 3/17/2011 |
| 74514LXG | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2037 | 3/17/2011 |
| 74514LWX | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2040 | 3/17/2011 |
| 74514LYW | Public Improvement Bonds of 2011, Series A | 7/1/2041 | 7/12/2011 |
| 74514LZA | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2016 | 7/12/2011 |
| 74514LZB | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2017 | 7/12/2011 |

GO Bonds issued by the Commonwealth prior to 2012

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 74514LZC | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2018 | 7/12/2011 |
| 74514LZD | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2019 | 7/12/2011 |
| 74514LZF | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2019 | 7/12/2011 |
| 74514LZH | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2019 | 7/12/2011 |
| 74514LZG | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2020 | 7/12/2011 |
| 74514LZE | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2020 | 7/12/2011 |
| 74514LZJ | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2020 | 7/12/2011 |
| 74514LZK | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2029 | 7/12/2011 |
| 74514LZL | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2030 | 7/12/2011 |
| 74514LZM | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2031 | 7/12/2011 |
| 74514LZN | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2032 | 7/12/2011 |
| 74514LZP | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2033 | 7/12/2011 |
| 74514LZQ | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2034 | 7/12/2011 |

# EXHIBIT F

## PBA Bonds issued prior to 2012

| CUSIP | Series | Maturity | Issuance |
|---|---|---|---|
| 745235GJ | Government Facilities Revenue Ref. Bonds, Series L | 7/1/2021 | 6/1/1993 |
| 745235G6 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2016 | 1/30/2002 |
| 745235G7 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2017 | 1/30/2002 |
| 745235G8 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2018 | 1/30/2002 |
| 745235G9 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2019 | 1/30/2002 |
| 745235I2 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2020 | 1/30/2002 |
| 745235H3 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2021 | 1/30/2002 |
| 745235H4 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2022 | 1/30/2002 |
| 745235D2 | Government Facilities Revenue Bonds, Series D | 7/1/2024 | 1/30/2002 |
| 745235VX | Government Facilities Revenue Bonds, Series D | 7/1/2027 | 1/30/2002 |
| 745235D3 | Government Facilities Revenue Bonds, Series D | 7/1/2030 | 1/30/2002 |
| 745235D4 | Government Facilities Revenue Bonds, Series D | 7/1/2031 | 1/30/2002 |
| 745235VY | Government Facilities Revenue Bonds, Series D | 7/1/2033 | 1/30/2002 |
| 745235VZ | Government Facilities Revenue Bonds, Series D | 7/1/2036 | 1/30/2002 |
| 745235RV | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2017 | 10/24/2002 |
| 745235RW | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2018 | 10/24/2002 |
| 745235RX | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2019 | 10/24/2002 |
| 745235RY | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2020 | 10/24/2002 |
| 745235RZ | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2021 | 10/24/2002 |
| 745235SA | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2023 | 10/24/2002 |
| 745235SB | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2024 | 10/24/2002 |
| 745235SC | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2025 | 10/24/2002 |
| 745235SW | Government Facilities Revenue Bonds, Series G | 7/1/2026 | 10/24/2002 |
| 745235SX | Government Facilities Revenue Bonds, Series G | 7/1/2032 | 10/24/2002 |
| 745235TG | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2016 | 4/3/2003 |
| 745235TH | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2016 | 4/3/2003 |
| 745235TJ | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2017 | 4/3/2003 |
| 745235TK | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2018 | 4/3/2003 |
| 745235TL | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2019 | 4/3/2003 |
| 745235D5 | Government Facilities Revenue Bonds, Series I | 7/1/2029 | 6/10/2004 |
| 745235D6 | Government Facilities Revenue Bonds, Series I | 7/1/2033 | 6/10/2004 |
| 745235VR | Government Facilities Revenue Bonds, Series I | 7/1/2036 | 6/10/2004 |
| 745235ZK | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2016 | 12/20/2007 |
| 745235ZL | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2017 | 12/20/2007 |
| 745235ZM | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2018 | 12/20/2007 |
| 745235ZN | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2019 | 12/20/2007 |
| 745235ZP | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2020 | 12/20/2007 |
| 745235ZQ | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2021 | 12/20/2007 |
| 745235ZR | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2022 | 12/20/2007 |
| 745235ZS | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2023 | 12/20/2007 |
| 745235ZT | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2031 | 12/20/2007 |
| 745235S9 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2034 | 12/20/2007 |
| 745235B7 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2035 | 12/20/2007 |
| 745235J9 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2023 | 12/20/2007 |
| 745235K2 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2024 | 12/20/2007 |
| 745235K3 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2025 | 12/20/2007 |
| 745235K4 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2026 | 12/20/2007 |
| 745235K5 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2027 | 12/20/2007 |
| 745235K6 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2028 | 12/20/2007 |
| 745235ZX | Government Facilities Revenue Bonds, Series N | 7/1/2016 | 12/20/2007 |
| 745235ZY | Government Facilities Revenue Bonds, Series N | 7/1/2017 | 12/20/2007 |
| 745235ZZ | Government Facilities Revenue Bonds, Series N | 7/1/2018 | 12/20/2007 |
| 745235A2 | Government Facilities Revenue Bonds, Series N | 7/1/2019 | 12/20/2007 |
| 745235A3 | Government Facilities Revenue Bonds, Series N | 7/1/2020 | 12/20/2007 |
| 745235A4 | Government Facilities Revenue Bonds, Series N | 7/1/2021 | 12/20/2007 |
| 745235A5 | Government Facilities Revenue Bonds, Series N | 7/1/2022 | 12/20/2007 |
| 745235A6 | Government Facilities Revenue Bonds, Series N | 7/1/2023 | 12/20/2007 |

PBA Bonds issued prior to 2012

| CUSIP | Series | Maturity | Issuance |
|---|---|---|---|
| 745235A7 | Government Facilities Revenue Bonds, Series N | 7/1/2024 | 12/20/2007 |
| 745235A8 | Government Facilities Revenue Bonds, Series N | 7/1/2025 | 12/20/2007 |
| 745235A9 | Government Facilities Revenue Bonds, Series N | 7/1/2026 | 12/20/2007 |
| 745235B2 | Government Facilities Revenue Bonds, Series N | 7/1/2027 | 12/20/2007 |
| 745235B3 | Government Facilities Revenue Bonds, Series N | 7/1/2032 | 12/20/2007 |
| 745235B4 | Government Facilities Revenue Bonds, Series N | 7/1/2037 | 12/20/2007 |
| 745235K7 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2018 | 7/1/2009 |
| 745235K8 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2019 | 7/1/2009 |
| 745235K9 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2020 | 7/1/2009 |
| 745235L2 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2021 | 7/1/2009 |
| 745235L3 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2023 | 7/1/2009 |
| 745235L4 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2025 | 7/1/2009 |
| 745235L5 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2026 | 7/1/2009 |
| 745235L6 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2030 | 7/1/2009 |
| 745235L7 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2036 | 7/1/2009 |
| 745235L8 | Government Facilities Revenue Ref. Bonds, Series K (Remarketing) | 7/1/2027 | 5/27/2004 |
| 745235L9 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2022 | 10/28/2009 |
| 745235M2 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2037 | 10/28/2009 |
| 745235M3 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2038 | 10/28/2009 |
| 745235M4 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2039 | 10/28/2009 |
| 745235M5 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M6 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M7 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M8 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M9 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2022 | 8/24/2011 |
| 745235N2 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2023 | 8/24/2011 |
| 745235N3 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2024 | 8/24/2011 |
| 745235N4 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2025 | 8/24/2011 |
| 745235N5 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2026 | 8/24/2011 |
| 745235N6 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2027 | 8/24/2011 |
| 745235N7 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2028 | 8/24/2011 |
| 745235N8 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2029 | 8/24/2011 |
| 745235N9 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2030 | 8/24/2011 |
| 745235P2 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2031 | 8/24/2011 |
| 745235P3 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2032 | 8/24/2011 |
| 745235P4 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2033 | 8/24/2011 |
| 745235P5 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2034 | 8/24/2011 |
| 745235P8 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2036 | 8/24/2011 |
| 745235P6 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2039 | 8/24/2011 |
| 745235P7 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2041 | 8/24/2011 |
| 745235Q2 | Government Facilities Revenue Bonds, Series T | 7/1/2030 | 12/22/2011 |

# EXHIBIT F

FORM OF JOINDER

## FORM OF JOINDER AGREEMENT

JOINDER AGREEMENT TO THE PLAN SUPPORT AGREEMENT (modified from time to time, the "**PSA**" as amended, supplemented or otherwise), dated as of May __, 2019, by and among (a) Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), (b) the Commonwealth of Puerto Rico (the "**Commonwealth**"), (c) the Puerto Rico Public Buildings Authority ("**PBA**"), (d) Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**"), (e) holders of GO Bond Claims or CW Guarantee Bond Claims, each as defined in the PSA, which may include the advisors or managers who are advising or managing a holder of GO Bond Claims and/or CW Guarantee Bond Claims on behalf of such holders as set forth on Exhibit "A" hereto, (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**GO Holders**"), (f) holders of PBA Bond Claims, as defined in the PSA, which may include the advisors or managers who are advising or managing a holder of PBA Bond Claims on behalf of such holders as set forth on Exhibit "B" hereto (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**PBA Holders**"), and (g) the other PSA Creditors from time to time party thereto, is executed and delivered by (the "**Joining PSA Creditor**") as of _____ 2019. Capitalized terms used herein, but not defined herein, shall have the meanings ascribed thereto in the PSA.

1.      Agreement to be Bound. The Joining PSA Creditor hereby agrees to be bound by all of the terms and provisions of the PSA. The Joining PSA Creditor shall hereafter be deemed to be a "PSA Creditor," a "Party," a "GO Holder" (if it holds GO Bond Claims and/or CW Guarantee Bond Claims) and a "PBA Holder" (if it holds PBA Bond Claims) for all purposes under the PSA, including, without limitation, and for the avoidance of doubt, with respect to any GO Bond Claims and PBA Bond Claims held by the Joining PSA Creditor as of the date of this Joinder Agreement (other than any GO Bond Claims, CW Guarantee Bond Claims and PBA Bond Claims held in a Qualified Marketmaker capacity).

2.      Representations and Warranties and Covenants. With respect to the aggregate principal amount of any GO Bond Claims, CW Guarantee Bonds Claims and PBA Bond Claims (without duplication) held by the Joining PSA Creditor, including, without limitation, upon consummation of any pending Transfer of any GO Bond Claims, CW Guarantee Bond Claims and PBA Bond Claims to the Joining PSA Creditor, the Joining PSA Creditor hereby (a) makes, as of the date hereof, the representations and warranties of the "GO Holder" (if it holds GO Bond Claims or the CW Guarantee Bond Claims) set forth in Section 3.5 of the PSA and a "PBA Holder" (if it holds PBA Bond Claims) set forth in Section 3.6 of the PSA (b) covenants and agrees to perform all of the "Covenants" of the "GO Holder" (if it holds GO Bond Claims or CW Guarantee Bond Claims) set forth in Section 4.5 of the PSA, and a "PBA Holder" (if it holds PBA Bond Claims) set forth in Section 4.6 of the PSA, to each of the other Parties to the PSA.

3.      Governing Law. Section 7.6 of the PSA is incorporated by reference as if set forth fully herein, except that any references to "Agreement" or "PSA" shall be replaced with references to Joinder Agreement.

**EXECUTION COPY**

4.      Notice of Joinder. The Joining PSA Creditor agrees to provide a copy of the Joinder Agreement to counsel to the Oversight Board and AAFAF in accordance with Section 4.5 of the PSA (if it holds GO Bond Claims or CW Guarantee Bond Claims), Section 4.6 of the PSA (if it holds PBA Bond Claims), and the notice provisions set forth in Section 7.11 of the PSA.

IN WITNESS WHEREOF, the Joining PSA Creditor has caused this Joinder Agreement to be executed as of the date set forth above.

[NAME OF INSTITUTION]

By:_____

    Name:
    Title:

Holder of Face Amount of GO Bonds:

Holder of Face Amount of PBA Bonds: