# EXHIBIT 23



## Municipal Secondary Market Disclosure Information Cover Sheet
## Municipal Securities Rulemaking Board (MSRB)
## Electronic Municipal Market Access System (EMMA)

**THIS FILING RELATES TO A SINGLE BOND ISSUE:**

Name of bond issue exactly as it appears on the cover of the Official Statement:

Nine-digit CUSIP* numbers if available, to which the information relates:

**THIS FILING RELATES TO ALL OR SEVERAL SECURITIES ISSUED BY THE ISSUER, OR ALL OR SEVERAL SECURITIES OF A SPECIFIC CREDITOR:**

Issuer's Name:   **Employees Retirement System of the Government of the Commonwealth of Puerto Rico**

Other Obligated Person's Name (if any):

Six-digit CUSIP* number(s):   **29216M**

**TYPE OF INFORMATION PROVIDED:**

A.   ☒ Annual Financial Information and Operating Data pursuant to Rule 15c2-12

   Fiscal Period Covered:   **2017-18**

B.   ☐ Audited Financial Statements or CAFR pursuant to Rule 15c2-12

   Fiscal Period Covered:

C.   ☐ Notice of Failure to Provide Annual Financial Information as Required

I represent that I am authorized by the issuer, obligor or its agent to distribute this information publicly.

/s/ *Sebastián M. Torres Rodríguez*
Sebastián M. Torres Rodríguez
Puerto Rico Fiscal Agency and Financial Advisory Authority,
   as Fiscal Agent for the Commonwealth

Dated: May 1, 2019



PO Box 42001 • San Juan, PR 00940-2001 • Telephone (787) 722-2525

# EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT
# OF THE COMMONWEALTH OF PUERTO RICO

## ANNUAL FINANCIAL INFORMATION
## Fiscal Year 2018

Introduction

In connection with the issuance by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") of its Senior Pension Funding Bonds (Base CUSIP No. 29216M) and in compliance with Rule 15c2-12, as amended, of the Securities and Exchange Commission, the System has covenanted to file within 305 days after the end of each fiscal year with the Municipal Securities Rulemaking Board ("MSRB") through the Electronic Municipal Market Access System ("EMMA"):

- Core financial information and operating data for the prior fiscal year, including audited financial statements, prepared in accordance with generally accepted accounting principles.

- Material historical quantitative data, including financial information and operating data on the System and information as to revenues, expenditures, financial operations, and indebtedness generally found in the Official Statements prepared in connection with the bond issuances.

Appendix I

Included in Appendix I is the System's Annual Financial Information and Operating Data Report for fiscal year ended June 30, 2018, as prepared by the System, consisting of material historical quantitative data, including financial information and operating data on the Corporation. The financial and operating data in Appendix I sets forth only the results of actual operations and does not reflect demographic information or forecasts regarding operations, except when necessary to place operating results and other information in context.

Note:

The System's audited financial statements for the fiscal year ended June 30, 2018 will be submitted as soon as available.

APPENDIX I[1]


EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO


ANNUAL FINANCIAL INFORMATION AND OPERATING DATA REPORT

---

[1] The Employees Retirement System of the Government of Puerto Rico (the "System") is currently subject to a case under section 304(a) of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA"). 48 U.S.C. § 2164. As such, the System is a debtor pursuant to Title III of PROMESA. The System hereby discloses that the information contained in this Report is from sources believed to be reliable and accurate. While the information presented is believed to be reliable and accurate, it is unaudited unless otherwise identified as audited. Therefore, unaudited financial data and information used in connection to this Report is subject to change. The information contained herein is dated as of June 30, 2018. As previously informed on the System Annual Financial Information and Operating Data Report for fiscal year 2017, certain subsequent events after June 30, 2017 have impacted the System, its procedures, and funds, including the elimination of employer contributions historically received by the System. Among such events, effective July 1, 2017, the Commonwealth of Puerto Rico (the "Commonwealth") enacted a "pay-as-you-go" ("PayGo") mechanism for all of the Commonwealth's Retirement Systems (as defined herein). Starting on July 1, 2017, employers' contributions, contributions ordered by special laws and the additional uniform contribution required under Act No. 32 of 2013 (the "Additional Uniform Contribution") were eliminated.  Retirement benefits are now financed through a PayGo charge to be paid by each agency, public corporation and municipality to cover the cost of payments to current retirees and beneficiaries.  In conjunction with the creation of PayGo, on August 23, 2017, the Commonwealth enacted the Act to Guarantee Pension Payments and Establish a New Defined Contributions Plan for Public Employees ("Act No. 106") which provides, among other things, for the creation of a new defined contribution plan (the "New Defined Contribution Plan"), similar to a 401(k) plan, segregating the individual employee contributions of certain active participants of the Commonwealth's Retirement Systems.

**THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO**

**General**

The System is a statutory trust created by the Legislative Assembly of the Commonwealth of Puerto Rico (the "Legislature") pursuant to Act No. 447 enacted on May 15, 1951 (as amended, "Act No. 447") to provide pension and other benefits to retired employees of the Commonwealth. Up to and including June 30, 2018, persons eligible to become members of the System ("Members") included: (i) all persons holding regular employment positions in any executive department, agency, administration, board, commission, committee, office or instrumentality of the Executive Branch of the Government of the Commonwealth; (ii) all members and regular employees of the Legislative Branch of the Government of the Commonwealth; (iii) all officers and regular employees of the municipalities of the Commonwealth; and (iv) all officers and regular employees of certain public corporations of the Commonwealth.  As of June 30, 2018, the System had ,233,048 members,  119,048 of which were retirees, disabled and beneficiaries currently receiving benefits and  114,000  of which were current active participating employees.

Pursuant to Act No. 447, the System and the Retirement System for the Judiciary of the Commonwealth of Puerto Rico ("JRS") were administered by the Puerto Rico Government Employees and Judiciary Retirement Systems Administration (the "Retirement Systems Administration"), which, prior to August 23, 2017, administered two separate retirement plans for the System: (i) a defined benefit pension plan; and (ii) a defined contribution pension plan. Under the defined benefit plan, eligible Members were entitled to retirement benefits that were defined and determinable in advance by law.  Members who entered the System on or before December 31, 1999 participated in the defined benefit plan.  Under the defined contribution plan, each eligible Member was provided an individual account and benefits were based solely upon the amounts contributed from such participant account.  Members who were hired and entered the System on or after January 1, 2000 and on or before June 30, 2013 (the "System 2000 Members") participated in the defined contribution plan. However, the System did not segregate the funds of the System 2000 Members from other Members' funds.

On April 4, 2013, the Legislature enacted Act No. 3 of 2013 ("Act No. 3"), which comprehensively reformed the System and addressed the growing funding shortfalls that threatened the long-term viability of the System.  Act No. 3 went into effect in July 1, 2013.

On June 30, 2016, the President of the United States signed PROMESA into law (PROMESA is codified under 48 U.S.C. §§ 2101-2241). In general terms, PROMESA seeks to provide the Commonwealth and its covered instrumentalities, including the System, with fiscal and economic discipline through, among other things: (i) the establishment of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), whose responsibilities include the certification of fiscal plans and budgets for the Commonwealth and its related entities; (ii) a temporary stay of all creditor lawsuits under Title IV of PROMESA, which expired on May 1, 2017 (the "Title IV Stay"); and (iii) two alternative methods to adjust sustainable debt: (a) a voluntary debt modification process under Title VI of PROMESA, which establishes a largely out-of-court debt restructuring process through which modifications to financial debt can be accepted by a supermajority of creditors; and (b) a quasi-bankruptcy proceeding under Title III of PROMESA,

2

which establishes an in-court debt restructuring process substantially based upon incorporated provisions of the U.S. Bankruptcy Code (11 U.S.C. §§ 101, et seq.).

On May 1, 2017, the Title IV Stay expired, permitting the substantial litigation brought by bondholders and other creditors against the Commonwealth and its instrumentalities (including the System) to resume. On May 3, 2017, the Oversight Board, at the request of the Governor of Puerto Rico (the "Governor"), commenced a Title III case for the Commonwealth by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico (the "Title III Court"). Faced with the eventual insolvency of the System and the inability to reach a consensual restructuring agreement with the System's creditors, on May 21, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for the System by filing a petition for relief under Title III of PROMESA in the Title III Court. As such, the System is a debtor in a proceeding pursuant to Title III of PROMESA.

The System's Title III case was commenced in part due to the May 1, 2017 expiration of the Title IV Stay. Title III of PROMESA incorporates the automatic stay provisions of Bankruptcy Code section 362 and 922, which are made applicable to the System's Title III case pursuant to PROMESA section 301(a) (the "Title III Stay"). Accordingly, upon the filing of the System's Title III case, the Title III Stay immediately went into effect to stay creditor litigation. All claims against the System that arose prior to the filing of its Title III case (whether or not discussed herein) may be subject to the laws governing Title III.

The System's Title III case has been consolidated for procedural purposes only and is being jointly administered with the Commonwealth's Title III case under Case No. 17-3283-LTS in the Title III Court, along with the Title III cases of certain other Commonwealth public corporations. On June 15, 2017, the United States Trustee appointed an Official Committee of Retired Employees (the "Retiree Committee") in the Commonwealth's Title III cases and appointed an Official Committee of Unsecured Creditors for all Title III debtors other than COFINA (the "Creditors' Committee").

**Governance**

Pursuant to Act No. 447, the System was governed by an 11-member board of trustees (the "Board of Trustees") responsible for implementing policies and overseeing the operations of the System in accordance with applicable laws. The Board of Trustees was composed of (i) the following four ex-officio members (or their designees): Secretary of Treasury of the Commonwealth, the President of the Government Development Bank for Puerto Rico ("GDB"), the Commissioner of Municipal Affairs, and the Director of the Office of Human Resources of the Commonwealth; (ii) three members appointed to three year terms by the Governor of the Commonwealth (the "Governor"), two of whom must be members of the System and one member of JRS, each with at least ten years of credited service; (iii) two members who are pensioners of the System and JRS; (iv) the President of the Federation of Mayors; and (v) the President of the Association of Mayors. As of June 30, 2017, the System was governed by the Board of Trustees. The Board of Trustees was also responsible for appointing the administrator of the Retirement Systems Administration (the "Administrator").

However, on August 23, 2017, the Governor signed into law Act No. 106, which reformed the Employment Retirement System ( the "System") , JRS, and the Puerto Rico System of Annuities and Pensions for Teachers ("TRS," and collectively with the System and JRS, the

3

"Retirement Systems") by, among other things, replacing the governing boards of the Commonwealth's Retirement Systems, including the System's Board of Trustees, with a single Retirement Board of the Government of Puerto Rico (the "Retirement Board") and established a separate "Account for the Payment of Accrued Pensions" to implement the PayGo method for the payment of pensions. Act No. 106 created the legal framework of the PayGo system.

Pursuant to Act No. 106, on and after August 23, 2017, the System is governed by the Retirement Board, which is comprised of thirteen (13) members, composed of (i) the following six ex-officio members (or their designees): the Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority ("FAFAA"), the Secretary of Treasury of the Commonwealth, the Director of the Office of Management and Budget, the Director of the Office for the Administration and Transformation of Human Resources of the Government of Puerto Rico, the President of the Federation of Mayors, and the President of the Association of Mayors; (ii) three Governor-appointed representatives of the teachers of the Department of Education, the public corporations, and the Judiciary Branch; and (iii) four additional Governor-appointed members as representatives of the public interest. The Retirement Board also states policy and oversees the operations and future externalization of the System operations in accordance with applicable law, including appointment of the Administrator.

As of May 1, 2019, the Retirement Board is currently comprised of the following members:

| Name | Position on the Board |
|---|---|
| **Christian Sobrino Vega**<br>*Executive Director of the Fiscal Agency and Financial Advisory Authority* | Chairman |
| **Hon. Raúl Maldonado Gautier**<br>*Secretary of the Department of Treasury* | Member |
| **Hon. Raúl Maldonado Gautier**<br>*Director of The Office of Management and Budget of Puerto Rico* | Member |
| **Ms. Sandra Torres, Esq.**<br>*Executive Director for the Office of Administration and Transformation of Human Resources of the Government of Puerto Rico*<br><br>*Alexander Rivera Matías, Representative* | Member |
| **Hon. Rolando Ortiz Velázquez**<br>*President of the Puerto Rico Mayors Association and Mayor of the Municipality of Cayey*<br><br>*Hon. Gregory González, Representative* | Secretary |
| **Hon. Carlos Molina Rodríguez**<br>*President of the Puerto Rico Mayors Federation and Mayor of the Municipality of Arecibo*<br><br>*Sra. Carmen Paniagua, Representative* | Member |

4

| Name | Position on the Board |
|---|---|
| **Dr. Reinaldo del Valle Cruz** *Representative of the Teachers of the Department of Education* | Vice chairman |
| **Jesus M. Rodríguez Rosa, MIS** *Representative of the public corporations* | Member |
| **Luis A. Rosario Villanueva, Esq.** *Representative of the Judiciary's Retirement Branch* | Member |
| **Dr. Edward Moreno** *Representative of Public Interest who will be a Pensioner Teacher from the Teachers' Retirement System* | Member |
| *Vacant* *Representative of Public Interest who will be a Pensioner Retired from Government of Puerto Rico Employees' Retirement System* | |
| *Vacant* *Representative of public interest who will be a member of the Puerto Rico Police Department* | |
| *Vacant* *Representative freely chosen by the Governor* | |

**Management**

  A. **Administrator**

Luis Manuel Collazo Rodríguez, Esq. is the Administrator of the Retirement Systems Administration. He was appointed on April 28, 2017. Prior to his appointment, Mr. Collazo Rodríguez served for three (3) years as in-house counsel for the Legal Department of the Puerto Rico Government Employees and Judiciary Retirement Systems Administration. Mr. Collazo Rodríguez received a Bachelor's degree in Political Science from the Interamerican University of Puerto Rico, Metropolitan Campus and a Juris Doctor from the School of Law at the Interamerican University of Puerto Rico.

  B. **Deputy Administrator**

Mr. Fernando Marte was appointed Deputy Administrator of the Retirement Systems Administration on March 7, 2018. Prior to his appointment, Mr. Marte was the System Auxiliary Administrator and assistant manager for the secondary market of the Loans Department. Marte received a B.A. in Business Administration and Accounting from the Colegio Universitario del Este, Carolina Campus.

  C. **Finance Auxiliary Director**

Mrs. Cecile Tirado Soto is the Finance Auxiliary Director of the Retirement Systems Administration. From 2009, Mrs. Tirado served as System Comptroller. Mrs. Tirado received a BBA Mayor in Accounting from the University of Puerto Rico, Rio Piedras Campus. She has been an

5

employee of the System since 1992 and has been a member of the Finance Department since 1994.

### D. General Counsel

In June 2017, Mrs. Bibiana Sarriera Requena was appointed General Counsel of the Retirement Systems Administration. Prior to her appointment, Mrs. Sarriera-Requena served as counsel for a publicly traded bank. Mrs. Sarriera-Requena received a B.A. and a *Juris Doctor* from the University of Puerto Rico, Río Piedras Campus.

**Government Accounting Standards Board Statements**

Commencing with fiscal year 2014, which began on July 1, 2013, the Commonwealth was required, pursuant to Government Accounting Standards Board ("GASB") Statement Number 67, to calculate and record for financial accounting purposes the cost of non-pension post-retirement benefits provided to former government employees using actuarial principles, in substantially the same way that it calculates and records pension benefits provided to such employees. These benefits currently include, per retiree and beneficiary, an annual one-hundred dollar ($100) bonus to cover pharmaceutical costs, a monthly one-hundred dollar ($100) reimbursement to cover medical insurance premiums, and an annual Christmas bonus of two-hundred dollars ($200). Currently, the Commonwealth records these costs on a cash basis. Although this required calculation will not have a cash impact on the Commonwealth beyond what it currently pays, it will be reflected in the Commonwealth's financial statements and may highlight the long-term costs of providing these benefits.

Also commencing with fiscal year 2015, which began on July 1, 2014, the Commonwealth was also required, pursuant to GASB Statement Number 68, to provide information about the effects of pension-related transactions and other events on the elements of the basic financial statements of state and local governmental employers. This information shall assist users in assessing the relationship between a government's inflows of resources and its total cost (including pension expense) of providing government services each period. In addition, the government is to provide users with information about the government's pension obligations and the resources available to satisfy those obligations.

### GOVERNMENT EMPLOYERS CONTRIBUTING TO THE SYSTEM

As of June 30, 2017, the System had 205 government employers that were required by law to contribute to the System. The System classified these employers into three (3) categories based upon whether their employer contributions (the "Employer Contributions") were paid by the Puerto Rico Treasury Department (the "Treasury Department") or by the government employer itself, including: (i) agencies and departments of the central government—excluding the Puerto Rico Police Department (the "Police Department")—which paid their Employer Contributions through the Treasury Department, (ii) public corporations and the Police Department (an agency of the central government), which paid their Employer Contributions directly to the System, and (iii) municipalities, which also paid their Employer Contributions directly. These categories represented 40%, 35% and 25%, respectively, of total Employer Contributions paid during the fiscal year ended June 30, 2017.

6

The following table shows Employer Contributions, net of contributions made in connection with early retirement programs, for the five-year period ended June 30, 2017.

| Entities | 2012-13 | 2013-14 | 2014-15 | 2015-16 | 2016-17 |
|---|---|---|---|---|---|
| Central Government* | 201,888,194 | 283,397,834 | 277,306,932 | 276,938,488 | 288,200,697 |
| Public Corporations* | 147,334,809 | 110,151,037 | 109,851,170 | 204,983,949 | 251,625,734 |
| Municipalities | 75,480,907 | 91,565,245 | 92,752,660 | 97,758,927 | 182,106,038 |
| Total | $424,703,910 | $485,114,117 | 479,910,762.36 | $579,681,364 | $721,929,468 |

Source: Employees Retirement System.

(*) Even though the Police Department is an agency of the central government and not a public corporation, the System has historically accounted for the Employer Contributions made by the Police Department as Employer Contributions made by public corporations. This table reflects that custom and includes the Police Department with public corporations. This table was revised since the numbers provided earlier ere Preliminary. For Fiscal Year 2013 and 2014, there were an adjustment for an allowance for Corporations. Fiscal Years 2015-2016 is audited and 2016-2017 are unaudited.

As of June 30, 2017, participating government employers were funded from several sources: (i) Commonwealth income and other taxes deposited in the Commonwealth's General Fund, (ii) funds provided by the Federal government, (iii) internally generated funds (in the case of public corporations), and (iv) other sources. As further discussed below, effective as of July 1, 2017, the System eliminated Employer Contributions.

**Changes Resulting from PayGo Pension Reform**

On June 23, 2017, the Legislature approved Joint Resolution 188, which among other things, ordered each of the Commonwealth's Retirement Systems, including the System, to liquidate their assets and pass the net proceeds to the Treasury Department. On July 20, 2017, the System sold investments in the total aggregate amount of approximately $297 million.

On June 27, 2017, the Treasury Department issued Circular Letter No. 1300-46-17 to convey to central government agencies, public corporations and municipalities the implementation procedures to adopt, effective July 1, 2017, the new PayGo mechanism for all of the Commonwealth's Retirement Systems, including the System. With the start of fiscal year 2018, employers' contributions, contributions ordered by special laws and the Additional Uniform Contribution were all eliminated. The Commonwealth's Retirement Systems will determine and administer the payment amount per retiree that will be charged to each agency, public corporation and municipality.

In conjunction with the creation of the PayGo mechanism, on August 23, 2017, the Governor signed into law Act No. 106, which created the legal framework so that the Commonwealth could make payment to pensioners through the PayGo scheme. Act No. 106 established a separate "Accumulated Pension Benefit Payment Account" to implement the PayGo

7

Exhibit 23   Page 11 of 16

system and reformed the Commonwealth's Retirement Systems so that their active participants would deposit their individual contributions in a new defined contribution plan (the "New Defined Contribution Plan") that will be managed by a private entity. Under the PayGo system, the Commonwealth makes pension payments from the General Fund and will charge a monthly PayGo charge to the Commonwealth's public corporations and municipalities. Pursuant to Act No. 106, any payment of a monthly PayGo charge made by an employer under any of the Retirement Systems to the Accumulated Pension Benefit Payment Account shall be deducted from any outstanding contributions or other debts such employer owed to the applicable Retirement System as of August 23, 2017. Approximately $2 billion was allocated for the payment of PayGo benefits in each of the annual Commonwealth budgets for fiscal year 2018 and fiscal year 2019.

Act No. 106 amended Act No. 447-1951 with respect to the System's governance, funding, and benefits for both active members and newly hired members. Under Act No. 106, the System's Board of Trustees was substituted with the new Retirement Board, which is currently responsible for governing all of the Commonwealth's Retirement Systems. As discussed above, the Retirement Board has 13 members: five *ex officio* members, four representatives of active participants, and four representatives of the public interest.

In addition, Act No. 106 terminated the previously existing pension programs for the System's participants as of June 30, 2017. The Members of the prior programs and new Members hired on and after July 1, 2017 are now enrolled in the New Defined Contribution Plan, which is similar to a 401(k) plan, and ensures the contributions of public servants because future benefits will not be paid by the Commonwealth's Retirement Systems but rather from the Commonwealth's General Fund. The accumulated balance on the accounts of the previously existing benefits programs will be transferred to each member's account at the New Defined Contribution Plan, except for (i) teachers and other members making contributions to TRS under Act No. 91 of 2004, and (ii) judges making contributions to JRS who elected not to participate in the New Defined Contribution Plan.

Act No. 106 also ordered a suspension of the System's loan programs and ordered a merger of the administrative structures of the Commonwealth's Retirement Systems. At the Retirement Board's discretion, the servicing of the System's existing loan portfolio may be externalized. Pursuant to Act No. 106, the employees of the System that are not retained under the new administrative structure will be transferred to other public agencies in conformity with Act No. 8 of February 8, 2017.

**THE SYSTEM'S PENSION OBLIGATION BONDS**

**Outstanding Bonds**

As of June 30, 2018, the total aggregate $3,200,273,621.89 amount of the System's outstanding pension obligation bonds were as follows:

| Capital Structure as of 6/30/2018 | Pre-Bankruptcy Contractual Indebtedness | | | | Bankruptcy Adjustments[1] | | |
|---|---|---|---|---|---|---|---|
| | Principal Outstanding[2] | CAB Accretion | Accrued Unpaid Interest[3] | Total Contractual Indebtedness | CAB Accretion[4] | Post-Petition Interest[4] | Post Bankruptcy Total Indebtedness |
| **Senior Pension Funding Bonds:** | | | | | | | |
| SERIES 2008A | 1,588,810,799 | 40,039,358 | 63,404,204 | 1,692,254,361 | (5,580,623) | (63,404,204) | 1,623,269,534 |
| SERIES 2008B | 1,058,634,613 | 216,012,421 | 34,806,533 | 1,309,453,566 | (31,095,870) | (34,806,533) | 1,243,551,163 |
| SERIES 2008C | 300,202,930 | 1,973,468 | 12,339,371 | 314,515,769 | (286,528) | (12,339,371) | 301,889,870 |
| **Total** | 2,947,648,342 | 258,025,247 | 110,550,107 | 3,316,223,696 | (36,963,022) | (110,550,107) | 3,168,710,567 |

**Memo:**
(1) ERS filed Title III on 5/21/2017
(2) Includes Capital Appreciation Bond (CAB) issued principal
(3) According to AAFAF, ERS first missed interest payment was on 12/1/17
(4) Post-Petition date bond claims (interest and CAB accretion) are disallowed under Title III

**Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Puerto Rico Fiscal Responsibility and Financial Emergency Act and Related Executive Orders**

On April 6, 2016, the Government of Puerto Rico enacted Act No. 21-2016, known as the Puerto Rico Emergency Moratorium and Rehabilitation Act (as amended, the "Moratorium Act"). Pursuant to the Moratorium Act, the Governor issued a series of executive orders declaring an emergency period, a moratorium and various other measures with respect to certain obligations of the Commonwealth and several of its instrumentalities. Pursuant to these executive orders, certain Commonwealth entities have either: (i) not made debt service payments, (ii) made debt service payments with funds on deposit with the trustees of their bonds, and/or (iii) not received or transferred certain revenues. Such executive orders also placed significant restrictions on the disbursement of funds deposited at GDB and suspended the disbursement of loans by GDB. These executive orders restricted the System's ability to withdraw any funds held on deposit at GDB and to receive any disbursements on loans granted by GDB. These executive orders also suspended the obligation of the Commonwealth to transfer certain revenues previously allocated to the System.

On January 29, 2017 Act No. 5 of 2017 was signed into law, known as the Puerto Rico Fiscal Emergency and Fiscal Responsibility Act (as amended, "Act No. 5"), which repealed certain provisions of the Moratorium Act and authorized additional emergency measures. Pursuant to Act No. 5, however, the executive orders issued under the Moratorium Act would continue in effect until amended, rescinded or superseded. The emergency period under Act No. 5 will expire June 30, 2019, unless extended by the Governor. Some additional powers provided to the Governor through Act No. 5 include: authority to (i) exercise receivership powers to rectify the financial emergency, (ii) exercise general supervisory control over the functions and activities of all government entities within the Executive Branch, and (iii) issue executive orders to implement and enforce compliance with Act No. 5. On April 30, 2017, the Governor issued executive order OE-2017-031, which extended the Act No. 5 emergency period through August 1, 2017. On July 19, 2017, the Legislature enacted Act No. 46 of 2017 ("Act No. 46"), which further extended the

9

Act No. 5 emergency period through December 31, 2017. Act No. 46 allowed the Governor to sign executive orders to extend the emergency period for successive periods of six months as long as the Oversight Board remains established for Puerto Rico under PROMESA. On December 27, 2019, the Governor issued executive order OE-2018-053, which extended the Act No. 5 emergency period through June 30, 2019.

**Bond Credit Rating Downgrades**

On June 24, 2016, Fitch Ratings Inc. downgraded the System's bonds from "CC" to "C" and placed them on "negative" outlook. Fitch cited "the breakdown of negotiations between the Commonwealth and major bondholders, the recent ruling by the U.S. Supreme Court on the Commonwealth's bankruptcy legislation, and the slow process of federal legislation in support of the Commonwealth" as indicators that a debt restructuring, deferral, or default had become inevitable. On April 5, 2017, Moody's Investors Service downgraded the System's bonds from "C" to "Ca" and placed them on "negative" outlook, citing "persistent pressures on Puerto Rico's economic base that indicate a diminishing perceived capacity to repay." Standard and Poor's Ratings Service currently rates the System's bonds at "CC."

### TITLE III PROCEEDINGS AND BONDHOLDER LITIGATION

**The Commencement of the System's Title III Case**

On May 1, 2017, the Title IV Stay expired, permitting the substantial litigation brought by bondholders and other creditors against the Commonwealth and its instrumentalities (including the System) to resume. On May 3, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for the Commonwealth by filing a petition for relief under Title III of PROMESA in the Title III Court.

Faced with the eventual insolvency of the System and the inability to reach a consensual restructuring agreement with the System's creditors, on May 21, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for the System by filing a petition for relief under Title III of PROMESA in the Title III Court. As such, the System is a debtor in a proceeding pursuant to Title III of PROMESA. Upon the filing of the System's Title III case, the Title III Stay immediately went into effect to stay creditor litigation. All claims against the System that arose prior to the filing of its Title III case (whether or not discussed herein) may be subject to the laws governing Title III. On June 15, 2017, the United States Trustee appointed the Retiree Committee and the Creditors' Committee.

**Bondholder Litigation**

During the course of the System's Title III case, several bondholder groups and other parties in interest have asserted various claims and causes of action against the Commonwealth and the System, including the key bondholder litigation discussed below. The Commonwealth and the System intend to defend these cases vigorously.

1. *Appointments Clause Litigation*

On August 7, 2017, a group of the Commonwealth's general obligation bondholders led by Aurelius Investment, LLC, Aurelius Opportunities Fund, LLC, and Lex Claims, LLC (collectively, "Aurelius") filed a motion to dismiss the Title III petitions. In the motion, Aurelius argued that the appointment of the Oversight Board members violated the "Appointments Clause" of the United

10

States Constitution, which requires that "principal officers" of the United States be appointed by the President and confirmed by the Senate. The Title III Court denied Aurelius' motion to dismiss, and Aurelius appealed to the United States Court of Appeals for the First Circuit.

On February 15, 2019, the First Circuit reversed the Title III Court, holding that the Oversight Board members' appointment process violated the Appointments Clause. The First Circuit stayed its ruling for 90 days to allow the President and Senate to appoint the Oversight Board in accordance with the Constitution. It also expressly validated all of the Oversight Board's past actions, including any actions taken by the Oversight Board during the 90-day stay period. The Oversight Board has announced its intent to appeal the First Circuit's decision to the United States Supreme Court. The last day to file a petition for a writ of certiorari is May 16, 2019.

Although the First Circuit stayed its ruling for 90 days, the continued prosecution of the Title III cases, including the System's Title III case, may be uncertain if the Oversight Board is not properly re-appointed during the 90-day stay period, unless such stay is extended.

2. *Employees Ret. Sys. of the Gov't of the Commonwealth of Puerto Rico, et al. v. Altair Global Credit Opportunities Fund (A), LLC, et al.*, Adv. Pro. No. 17-00213 (D.P.R. July 21, 2017)

On July 21, 2017, the Oversight Board, as representative of the System in its Title III case, commenced an adversary proceeding on behalf of the System pursuant to a stipulation between certain of the System's bondholders, on the one hand, and the Oversight Board, the System, and FAFAA on the other. *See In re Employees Retirement Sys. of the Gov't of the Commonwealth of Puerto Rico*, Case No. 17-03566 (D.P.R. July 14, 2017) [ECF No. 170] (the "Stipulation"). Pursuant to the Stipulation, the Oversight Board, on behalf of the System, was permitted to challenge the System bondholders' security interests in various system assets through a declaratory relief action (the "System Declaratory Relief Action"). Pursuant to the System Declaratory Relief Action, the Oversight Board, as representative of the System in the Title III case, sought declaratory relief challenging the validity, priority, extent, and enforceability of the prepetition and postpetition liens and security interests asserted by defendants with respect to bonds issued by the System. The complaint contends that the System bondholders' alleged liens and security interests are not perfected because the required UCC financing statements and subsequent amendments were defective, and therefore the liens could be avoided in the Title III case. The System Declaratory Relief Action also challenged, among other things, the System bondholders' alleged security interest in postpetition employer contributions.

In the Stipulation, the parties also agreed that the System would make interest payments due on October 1, 2017 from the System's Prepetition Segregated Account (which was created pursuant to a stipulation and order dated January 17, 2017) and that these payments would constitute adequate protection for the creditors until October 31, 2017 with respect to the automatic stay. On November 28, 2017, certain System bondholders (the "Puerto Rico Funds") filed a motion to require the System to continue making payments from the Prepetition Segregated Account until the Title III Court ruled on the parties' motion for summary judgment. *See In re The Fin. Oversight and Mgmt. Bd. for Puerto Rico*, Case No. 17-03566 (D.P.R. Nov. 28, 2017) [ECF No. 222]. On December 28, 2017, the Title III Court granted the motion in part in favor of the Puerto Rico Funds. *See id*. (D.P.R. Dec. 28, 2017) [ECF No. 248]. The Title III Court ordered the System to transfer the December 2017 and January 2018 interest payments pursuant to the Stipulation, and thereafter transfer the interest payment by the 20th of each month until the

11

earlier of (i) the Title III Court's order on the motion for summary judgment, or (ii) the exhaustion of the funds in the Prepetition Segregated Account. *Id.*

A hearing on the parties' summary judgment motions took place on December 13, 2017. On August 17, 2018, the Title III Court granted partial summary judgment in favor of the System. The Title III Court held, among other things, that the System bondholders' liens are not perfected and their security interests are avoidable under Bankruptcy Code section 544. On September 5, 2018, the Title III Court entered an order dismissing the remaining counts and counterclaims. This decision was appealed to the United States Court of Appeals for the First Circuit.

On January 30, 2017, the First Circuit (i) affirmed the Title III Court's holding that the 2018 financing statements related to the System's bonds did not perfect the System bondholders' security interest in pledged property, and (ii) affirmed the dismissal of the System bondholders' claim regarding a January 2017 stipulation, but (iii) reversed the Title III Court by finding that the System bondholders met the requirement for perfection beginning on December 17, 2015. On April 2, 2019, the Oversight Board filed a motion to amend its complaint in this action, which is currently pending.

3. *Andalusian Global Designated Activity Co., et al. v. Commonwealth of Puerto Rico, et al.,* Adv. Pro. Nos. 17-00219-LTS, 17-00220-LTS (D.P.R. July 27, 2017)

On July 27, 2017, a group of System bondholders commenced adversary proceedings against the Commonwealth and the System in the cases initially captioned as *Altair Global Credit Opp. Fund (A), LLC, et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Pro. Nos. 17-00219-LTS, 17-00220-LTS (D.P.R. July 27, 2017) (collectively, the "PayGo Litigation"), seeking a declaration that Joint Resolution 188 and Act No. 106 (collectively, the "PayGo Statute")—which requires the System to liquidate its assets for distribution to the General Fund—is void ab initio as a violation of the Title III automatic stay and violates the Contracts Clause and Takings Clause of the United States Constitution.

On November 17, 2017, the Oversight Board, as representative of the System in its Title III case and joined by FAFAA and the Retiree Committee, filed a motion to dismiss the PayGo Litigation. On February 2, 2018, the Title III Court issued an order informing the parties that the motion to dismiss would be taken under submission. On September 9, 2018, the Title III Court stayed the case until the United States Court of Appeals for the First Circuit renders a decision regarding the summary judgment appeal in the System Declaratory Relief Action, which decision was rendered on January 30, 2019 (as discussed above). No parties have moved to lift the stay.

On March 1, 2019, the Title III Court dismissed this case without prejudice as to Altair Global Credit Opportunities Fund (A), LLC and Nokota Capital Master Fund, L.P. As a result, the case was re-captioned A*ndalusian Global Designated Activity Co. et al v. Commonwealth of Puerto Rico, et al*., Adv. Pro. Nos. 17-00219-LTS, 17-00220-LTS (D.P.R.).

4. *Motion of Certain Secured Creditors of the System for Relief from the Automatic Stay*, Case No. 17-3566-LTS (D.P.R. July 3, 2018)

On July 3, 2018, a group of System bondholders (including Altair Global, Andalusian Global, Glendon Opportunities Fund, Mason Capital, Nokota Capital, Oaktree, Ocher Rose, SV Credit and a number of Puerto Rico-based mutual funds) filed a motion in the System's Title III case arguing that the Prepetition Segregated Account would run out of funds in August 2018, depriving bondholders of adequate protection in the form of monthly interest payments and

12

therefore leaving movants' constitutionally-protected property interests unprotected. Movants asserted that relief from the Title III stay was necessary in order to maintain the status quo pending the Title III Court's resolution of the cross-motions for summary judgment in the System Declaratory Relief Action (discussed above). In the alternative, movants requested adequate protection of their liens on property of the System. On August 21, 2018, the Title III Court denied the motion, and on August 29, 2018, the System bondholders filed an appeal to the United States Court of Appeals for the First Circuit.

On February 21, 2019, movants renewed their stay motion following the First Circuit's January 30, 2019 reversal, in part, of the Title III Court's August 17 order in the System Declaratory Relief Action. A final hearing on the stay motion is scheduled for May 21, 2019.

5. *Creditors' Committee Omnibus Objection to System Bondholder Claims*, Case No. 17-3566-LTS (D.P.R. March 12, 2019)

On March 12, 2019, the Official Committee of Unsecured Creditors appointed in the Title III cases other than COFINA's Title III case (the "Creditors' Committee") filed an omnibus objection to all claims asserted against the System based on the approximately $3.1 billion of outstanding bonds issued by the System in 2008 (the "System Bond Claims Objection"). The System Bond Claims Objection argues that the System was only authorized to issue a "direct placement of debts," which the Creditors' Committee claims is commonly understood to mean a "private placement, not a public offering." Because the System bonds were issued in a public offering, the Creditors' Committee asserts that the System bonds were illegally issued as ultra vires and are thus "null and void." As a result, the Creditors' Committee seeks an order disallowing all System bond claims in their entirety. Also on March 12, 2019, the Creditors' Committee filed a procedures motion related to the adjudication of the System Bond Claims Objection. Any objections to the procedures motion are due on April 9, 2019 and a hearing is scheduled for April 24, 2019. As of the date of these financial statements, no objection deadlines or hearing date on the System Bond Claims Objection have been established.

13