# EXHIBIT 34

**AUDIT REPORT M-19-30**

March 4, 2019

Municipality of Ponce

(Unit 4058 - Audit 14163)

Audited period: July 1, 2014 to June 30, 2017

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

[BLANK PAGE]

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

M-19-30                                                                                                  1

# CONTENTS

                                                                                                      **Page**

**AUDIT OBJECTIVES** ................................................................................................................  2

**CONTENTS OF REPORT** ........................................................................................................  3

**SCOPE AND METHODOLOGY** .............................................................................................  3

**AUDITED UNIT INFORMATION** ...........................................................................................  4

**COMMUNICATION WITH MANAGEMENT** ..........................................................................  5

**INTERNAL CONTROL** ...........................................................................................................  6

**OPINION AND FINDINGS** .....................................................................................................  6

    1 - Delay in payment of debts; and payment of fines, interests, penalties and surcharges
    for remitting withholdings and contributions belatedly ...........................................................  7

    2 - Deficiencies related to credit transfers between budget items ........................................... 12

    3 - Deficiencies related to bank reconciliations ..................................................................... 15

**SPECIAL COMMENTS** ......................................................................................................... **17**

    1 - Budget deficits in the Operational Fund ........................................................................... 17

    2 - Loans in the form of bond issuances to cover cash deficiencies ........................................ 20

    3 - Collection recommendations contained in previous audit reports that were unheeded ................................ 22

**RECOMMENDATIONS** ......................................................................................................... **22**

**APPROVAL** ........................................................................................................................... **24**

**APPENDIX 1 -    LOANS TAKEN OUT WITH THE GOVERNMENT DEVELOPMENT
               BANK FOR PUERTO RICO FOR FISCAL YEAR 2013-2014
               [Special Comment 2]** ........................................................................... **25**

**APPENDIX 2 -    MAIN MUNICIPALITY OFFICIALS DURING THE AUDITED PERIOD** ...................................... **26**

**APPENDIX 3 -    MAIN MUNICIPAL LEGISLATURE OFFICIALS DURING THE AUDITED PERIOD** ................... **28**

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

2                                                                                                      M-19-30

Commonwealth of Puerto Rico
**OFFICE OF THE COMPTROLLER**
San Juan, Puerto Rico

March 4, 2019

To the Governor, and to the presidents of the Puerto Rico
        Senate and House of Representatives

Below are the results of the compliance audit performed by us of the Municipality of Ponce. We performed it based on the authority assigned to us under Article III, Section 22 of the Constitution of the Commonwealth of Puerto Rico, and under *Law No. 9 enacted on July 24, 1952*, as amended; and in compliance with our *Annual Audit Plan*.

---

**AUDIT OBJECTIVES**

**General objective**

Determine whether the fiscal operations of the Municipality were carried out in accordance with the applicable laws and regulations.

**Specific objectives**

1.  Examine income collected and determine whether it was deposited in the corresponding bank accounts. Also, determine whether effective steps were taken to collect loans in arrears given out by the Municipal Bank of Ponce.

2.  Verify whether fund transfers, between budget expenditure items, were carried out in accordance with the established provisions.

3.  Examine bank reconciliations in Payroll and Checking accounts to verify that they are correct, and determine whether there were irregular fees or overdrafts. Also, verify the existence of accounts with inactive balances.

4.  Determine the debts with state agencies.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

| | |
|---|---|
| **CONTENTS OF REPORT** | This is the first report and it contains three findings and three special comments from the result of the examination carried out by us of the areas indicated in the previous section. It is available on our Web page: www.ocpr.gov.pr. |

| | |
|---|---|
| **SCOPE AND METHODOLOGY** | The audit covered the period from July 1, 2014 to June 30, 2017. As to some aspects, we examined transactions from previous and subsequent dates. We carried out the examination in accordance with the generally accepted government auditing standards contained in the Government Auditing Standards, issued by the United States Government Accountability Office (GAO), related to performance audits. Said standards require that we plan and perform the audit to obtain sufficient and adequate evidence that would provide a reasonable basis for our opinion and findings related to the audit objectives. Consequently, we performed the tests that we considered necessary, based on samples and in accordance with the circumstances, according to our audit objectives. We performed tests, such as: interviews with officials and employees; physical inspections; examination and analysis of reports and of documents generated by the audited unit or by external sources; account confirmation; tests and analysis of financial information and of internal control procedures. |
| | We believe that the evidence obtained provides a reasonable basis for our opinion and findings. |
| | Furthermore, we evaluated the reliability of the data of the Ingresys module of the Advanced Municipality Integrated Systems (Accounting System), which contains, among others, the transactions related to the Municipality income collected. As part of said evaluation, we interviewed the officials with knowledge of the system and of the data: we performed electronic tests to detect evident precision and integrity |

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

4                                                                                      M-19-30

errors; and reviewed the existing documentation and information regarding the data and the system that generated it. We determined that the data was sufficiently reliable for the purposes of this *Report*.

**AUDITED UNIT INFORMATION**

The Municipality is an entity of the Government of the Commonwealth of Puerto Rico with legal personality. Its operations are governed by *Law 81-1991, Autonomous Municipalities Act of the Commonwealth of Puerto Rico of 1991*, as amended, and by the *Regulations for Municipal Administration of 2016*. They were approved on December 19, 2016 by the commissioner of Municipal Affairs, and came into effect on January 17, 2017[1].

The Municipality enjoys full executive and legislative powers as to its jurisdiction. It is a permanent legal entity. Furthermore, it exists and has legal personality independent from the State Government.

The government system of the Municipality is composed of 2 powers: the Executive Power and the Legislative Power. The mayor, as an executive official, performs administrative duties and is elected every 4 years in Puerto Rico's general elections. The Municipal Legislature performs legislative duties and is composed of 16 members, who are also elected in said elections. **Appendices 2 and 3** contain a list of the main officials of the Municipality and of the Municipal Legislature in office during the audited period.

The Municipality has the following divisions to offer its services: Permits; Municipal Office for Emergency Management and Disaster Administration (OMMEAD, acronym in Spanish); Municipal Public Works; Head Start; Industrial and Economic Tourist Development; Local Labor Development Area; Sports and Recreation; Transportation; Municipal Education; Environmental Control; Cultural Development;

---

[1] They revoked the *Regulations for Municipal Administration* of July 18, 2008. In addition, under *Law 81-2017*, the duties of the Office of the Commissioner of Municipal Affairs (OCAM, acronym in Spanish) were transferred to the Office of Budget and Management.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS   Doc#:7702-35   Filed:06/27/19   Entered:06/27/19 14:25:13   Desc:
Exhibit 34   Page 8 of 64

Integrated Transportation System (SITRAS, acronym in Spanish); Local Businesses; Health and Welfare; Housing and Socioeconomic Development; Municipal Police; and Public Safety and Beautification.

The Municipality budget, from fiscal years 2014-15 to 2016-17, amounted to $94,551,766, $92,805,009, and $88,879,594, respectively. The Municipality had prepared financial statements, audited by certified public accountants, corresponding to fiscal years from 2014-15 to 2016-17. They reflected accrued deficits in the general fund amounting to $38,865,537, $37,722,896 and $44,757,255; respectively. [**See Special Comment 1**]

The Municipality has a Web page that may be accessed at the following address: www.visitponce.com. Said page provides information about the Municipality and the services that it provides.

---

**COMMUNICATION WITH MANAGEMENT** On December 13, 2018, we sent the draft of this Report, which included 5 findings and 3 special comments, to Hon. María E. Meléndez Altieri, mayor; and the draft with 2 findings and 2 special comments to Hon. Rafael A. Mateu Cintrón, president of the Municipal Legislature, for comments.

The mayor and the president of the Municipal Legislature sent their comments by way of letters dated January 30 and February 8, 2019.

After evaluating them and the evidence provided by the mayor and the president of the Municipal Legislature, we decided to eliminate two of the findings and one of the mentioned situations. The others were kept, and the comments of said officials were taken into consideration in the final version of this *Report*, and were included in the **OPINION AND FINDINGS** section.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

6                                                                                                      M-19-30

**INTERNAL CONTROL**
The management of the Municipality of Ponce is responsible for establishing and maintaining an effective internal control structure to provide reasonable security in order to ensure:

- the efficiency and effectiveness of the operations

- the reliability of the financial information

- compliance with the applicable laws and regulations.

Our work included comprehending and evaluating the significant controls for the objectives of this *Report*. We used said evaluation as the basis for establishing the audit procedures that were appropriate according to the circumstances, but not for the purpose of expressing an opinion regarding the effectiveness of the internal control structure of the Municipality.

**Findings 1 to 3** mention the significant internal control deficiencies, within the context of the objectives of our audit, that were identified as a result of the work done.

Furthermore, in a letter dated July 19, 2017, we notified the mayor of other internal control deficiencies that are not significant for the objectives of the audit.

The mentioned deficiencies do not necessarily contain all of the internal control aspects that could be situations that could result in findings. This is so because said deficiencies were identified as a result of the evaluation of the operations, procedures, activities and systems related to the objectives of the audit.

**OPINION AND FINDINGS**
**Qualified opinion**
The tests performed and the evidence in our possession revealed that the operations of the Municipality, that is the subject of this Report, were carried out, as to all significant aspects, in accordance with the applicable laws and regulations; except for **findings 1 to 3**, which are mentioned below.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Finding 1 - Delay in payment of debts; and payment of fines, interests, penalties and surcharges for remitting withholdings and contributions belatedly**

**Situation**

a.  The mayor is responsible for annually preparing a budget resolution bill. It must include, among other things, the assignments with sufficient credit for payment of statutory obligations and other expenses that are legally binding on the Municipality under executed contracts, and other operational expenses. In addition, the Municipality has the responsibility of carrying out withholdings as required by law or regulations.

The Finance Director is responsible for making timely payment of federal and state tax withholdings on municipal employees. Municipalities are prohibited from using the contributions or quotas withheld from municipal employees for purposes different from the ones authorized by said employees or the law. Additionally, the withholding and the use of the contributions or quotas of municipal employees cannot exceed the period established by the laws which authorize said withholdings, with which the Municipality must comply, without delay, in order for the process of sending said funds to the different entities to be carried with the strictest diligence. Some of the entities to which the Municipality must make remittances are the Administration of the Retirement Systems of the Employees of the Government of Puerto Rico and the Judiciary (ASR), the Association of Employees of the Commonwealth of Puerto Rico (AEELA), and the Department of the Treasury. Said withholdings and contributions must be remitted on a monthly basis.

The current regulations of the Federal Internal Revenue Service (IRS) establish that payments for Federal Social Security must be made on a monthly basis, by way of deposits in commercial banks attached to the Federal Reserve System.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

8                                                                          M-19-30

Our examination in this regard revealed that the Municipality, as of
December 31, 2016, owed $32,640,077 to several government and private
entities, as detailed below:

| Government Entities | Item | Amount |
|---|---|---|
| ASR | Contributions | $15,362,053 |
| Puerto Rico Aqueduct and Sewer Authority | Water and sewer service | 9,501,807 |
| Puerto Rico Electric Power Authority | Electricity and streetlight service | 1,423,372 |
| Department of Labor and Human Resources | Unemployment insurance | 1,415,115 |
| Department of the Treasury | Withheld income taxes | 589,149 |
| AEELA | Deductions on savings, insurance and loans | 284,200 |
| IRS | Withholdings and contributions | 258,542 |
| General Services Administration | Administration, gasoline, warehouse and printing | 5,894 |
| **Subtotal** | | $28,840,132 |
| Private entity | Insurance companies, medical plans and quotas | 3,799,945 |
| **Total** | | $32,640,077 |

The debt includes fees in respect of interests, surcharges and penalties
amounting to $1,094,569 from the ASR ($925,395), the Department of Labor and
Human Resources ($117,998), the Department of the Treasury ($50,667), and
AEELA ($509).

A similar situation was mentioned in *Audit Report M-16-49* of June 24, 2016.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

### Criteria

The mentioned situation is in contravention of articles 7.003(b), (e), (f) and (g) and 8.004(e) of *Law 81-1991*; of *Law 1-2011, Internal Revenue Code for a New Puerto Rico*, as amended; of the *General Regulations of the Retirement System of the Employees of the Government of Puerto Rico and its Instrumentalities for Assignment of Pensions, Benefits and Rights to the Employees of the Government of Puerto Rico and its Instrumentalities*, approved on April 22, 1993 by the Board of Trustees of ASR; of the *Regulations of the Federal Internal Revenue Service*; and of sections 9 and 11 of *Publication 179, Circular PR Federal Tax Guide for Puerto Rican Employers*, issued by the IRS, as revised in January 2001; of *Regulations No. 1* of December 14, 1956, as amended, issued by the secretary of Labor and Human Resources under *Law No. 74 enacted on June 21, 1956, Puerto Rico Employment Security Act*, as amended; and of Article VI of the *Regulations for Voluntary Enrollment in the Association of ELA Employees*, R-007, approved in January 1977, as amended.

### Effects

The mentioned situation resulted in the Municipality unnecessarily increasing its debt by $1,094,569, in respect of interests, surcharges and penalties to government agencies, which worsened its fiscal situation. It also affected the resources that the above-referenced government agencies must receive in order to comply with their responsibilities. It also could have caused the services that are offered to the residents of the Municipality to be affected, and for municipal employees to have had access to the benefits to which they have a right as a result of the withheld contributions.

### Causes

We attribute the mentioned situation to the fact that the mayor and the Finance directors in office did not efficiently administrate the finances of the Municipality, by not paying the obligations entered into and by not remitting employee contributions and withholdings on time.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Comments from the Management**
The mayor indicated the following:

At the beginning of our administrative task in January of 2009, we found ourselves in a precarious financial situation in relation to the finances of the municipality and in the worse fiscal and economic crisis in the modern history of Puerto Rico which limited and continues to limit the capacity of the Central Government, its subdivisions, and of municipalities, to adequately take care of the basic needs of its residents. The ordinary fund bank account of the municipality had an overdraft of $6.1 million, there were debts with suppliers and government agencies amounting to $30.1 million, and they had used the totality of the money collected in respect of permits in suspense collected in April of 2008 that was supposed to be saved for fiscal year 2008-2009. The borrowing margin of the Municipality of Ponce was at zero. Fiscal year 2008-2009, whose budget was approved by the Honorable Municipal Legislature on June 13, 2008 under the previous administration, closed with an accrued deficit of $24,459,876. [*sic*]

Given said difficult fiscal situation, we have taken measures to control expenses and increase income and identify additional resources, and executed payment agreements with government agencies and suppliers, in order to pay the debts, avoid a current budget deficit, reduce the accrued deficit, and guarantee the continuation of the services that we are obligated to provide to our citizens. [*sic*]

The measures taken included; (1) implementing projects to collect debts in default and immovable property inventory; (2) increasing the movable and immovable property tax rate by way of Ordinance No. 99, Series 2008-2009, approved by the Honorable Municipal Legislature on February 2, 2009, and Ordinance No. 32, Series 2016-2017, approved on May 18, 2017; (3) implementing during several fiscal years work hour reductions affecting regular career service or probationary employees and irregular and temporary employees, including a 10% reduction in the salary of the Mayor, the directors of municipal offices and political appointees of the executive branch, and a 10% reduction in the salary of Municipal Legislature employees, under Internal Resolution no. 1, 2017-18 series, approved on July 10, 2017; (4) reducing all of the professional service provider contracts by 5% during several fiscal years; (5) contracting from fiscal year 2013-2014 the different insurance policies directly with the insurance agencies, in accordance with the authorization given to municipalities by Law

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

No. 63- 2010, which resulted in policy savings amounting to $505,145.53 during that fiscal year, which was used to increase the item for the Deficit in Previous Years;, (6) renegotiating in July of 2014 the terms of the contract for collection, transportation and disposal of solid waste and executing an agreement for payment of the debt accrued with the PROVIDER, which has allowed us to make payment for the old debt and the current service payment, avoid accruing additional debt for the solid waste collection service, lower the service cost by $3,697,458 from July of 2014 to December of 2018, and guarantee a continuation of the services to the people of Ponce; (7) approving on March 3, 2017 Ordinance Number 23, Series 2016-2017, to declare a **Fiscal Emergency Status**, develop and implement measures for controlling expenses and using resources, which allowed us to maximize the limited available resources, ensure the necessary funds for the operations of the Municipality and avoid affecting the essential services that we must offer to citizens. The austerity measures adopted under the above-referenced ordinance include; immediately freezing items assigned for donations in the budget for fiscal year 2016-2017; not giving or disbursing donations to any natural or legal person during the remaining period of the present fiscal year; and limiting the use of the budget for fiscal year 2016-2017 only for items assigned for operational expenses such as payment of payroll, suppliers, utilities and other related services, including **payment of payroll contributions and deductions**; (8)  approving on March 28, 2017, under Ordinance No. 28, 2016-2017 Series, a budget reduction of $411,543 for fiscal year 2016-2017 as a result of cancelling donations, scholarships and student travel, as contemplated in aforementioned Ordinance Number 23, Series 2016-2017. Even though said ordinance only applied to fiscal year 2016-2017, the budgets for fiscal years 2017-2018 and 2018-2019 did not include items for the above-referenced expenses; and (9) reducing the budgets for fiscal years 2013-2014, 2014-2015, 2015-2016, 2016-2017, 2017-2018 and 2018-2019 by $5,337,308, $12,180,730, $1,746,757, $3,925,415 and $6,145,634 and $297,355, respectively. [*sic*]

In spite of the above-described measures taken by our municipal administration, several factors outside of our control, such as the inherited precarious situation related to municipal finances, the historic economic and fiscal crisis which Puerto Rico has been suffering since before 2009, the burden imposed by the Central Government on municipalities through the approval of and/or amendments to laws or regulations, such as; payment of electricity for certain municipal facilities, increases in water fees, continued scaled increases in employer contribution rates of the Retirement Systems of the Government and the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

special additional contributions imposed on municipalities to settle actuarial deficits of the Retirement Fund, have negatively affected the finances of the municipalities, including ours, which has prevented us from achieving the expected results. [*sic*]

Other factors which have also negatively affected the municipal finances are; the impact on the economy of our island of Hurricanes Irma and María in September of 2017, which resulted in business income losses, mainly due to lack of electric power and the instability of telecommunication systems; the elimination of transfer income from the Central Government (subsidies) to municipalities from fiscal year 2017-2018 at the request of the Financial Oversight and Management Board, which resulted in a reduction in Municipality income in respect of property taxes of $6,547,555 for said fiscal year and a similar reduction during the current fiscal year (2018-2019); and the imposition on municipalities of PAYGO from July 1, 2017 which, in the case of Ponce, amounts to more than $7.3 million annually. [*sic*]

The president of the Municipal Legislature indicated the following:

The Municipal Administration has made the adjustments to work on the situation, at the Municipal Legislature we have collaborated by approving the necessary Ordinances for a sound administration; including: Ordinance 23, Series 2016-2017- Fiscal Emergency declaration Ordinance 28, Series 2016-2017- Municipal Budget with a reduction of $411,543 Ordinance 38, Series 2017-2018- Increase in Immovable Property tax rate. [*sic*]

**See recommendations 1, 2 and 9.**

**Finding 2 - Deficiencies related to credit transfers between budget items**

**Situations**

a.  Once the annual budget is approved, the mayor can approve credit transfers between accounts. To do this, she authorizes the Finance director to carry out the transfers by way of executive resolutions. However, the authorized transfers cannot affect, among other things, the payment of interests, amortization and

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

removal of the public debt, statutory obligations; or the payment to cover the previous year deficit and the expenses to which the Municipality is legally bound under executed contracts. Transfers for payment of personal services must be approved by the Municipal Legislature.

All fund transfers between accounts must be supported by the following documents: the executive order or resolution authorizing the transfer, the surplus certification issued by the Finance director, and the acknowledgment of receipt of the copy of the executive order sent to the Municipal Legislature for its information. The latter must be sent to said Body within five days following the date on which it is signed.

From July of 2014 to June of 2016, 728 executive resolutions were approved to make 2,454 credit transfers amounting to $28,134,391 from budget items.

An examination of said transfers revealed the following:

1)  The mayor did not send the Municipal Legislature the 728 resolutions within 5 days following their approval. The secretary of the Municipal Legislature certified that they did not receive the copies of the resolutions approved by the mayor.

2)  From August of 2014 to June of 2016, the mayor, by way of 214 resolutions, authorized 284 credit transfers amounting to $18,368,998, which reduced the budget assignments of 14 budget items to cover the payment of statutory obligations. Said transfers were carried out without the Finance directors in office having prepared the surplus certifications required to be able to affect said items. The transferred funds were used to increase the resources of several operational expense items.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS   Doc#:7702-35   Filed:06/27/19   Entered:06/27/19 14:25:13   Desc:
Exhibit 34   Page 17 of 64

### Criteria

The mentioned situations are in contravention of articles 3.009(k), 3.010(k), 5.005(g) and 7.008(a) and (b) of Law 81-1991; and of Chapter II, Section 7(1) to (3) of the *Regulations for Municipal Administration*.

### Effects

The situation mentioned in **section a.1)** prevented the Municipal Legislature from keeping updated information regarding the fiscal transactions of the Municipality to evaluate and determine their correctness.

The situation mentioned in **section a.2)** does not allow maintaining an adequate control of the balances in items, and in budget funds, which can result in failure to comply with the commitments for which credits are included in the affected items. It has also resulted in overdrafts in budget items, which has caused the accrued deficits. [**See Special Comment 1**].

### Causes

The mentioned situations are attributed to the fact that the mayor and the then Finance directors did not observe the above-cited provisions and did not administer the finances of the Municipality adequately and carried out statutory obligation transfers without the required surplus certifications.

### Comments from the Management

The mayor indicated the following:

> The Autonomous Municipality of Ponce has taken the necessary measures to guarantee that subsequently the required certifications be prepared to be able to transfer surplus funds from statutory items and that all budget item credit transfer resolutions be sent to the Municipal Legislature for evaluation and approval, for the Legislative Body to be informed regarding the budgetary transactions of the Municipality and reevaluate them. Also, and as a corrective measure, the credit transfers mentioned in this finding will be sent to the Municipal Legislature for the corresponding action. [*sic*]



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

However, we emphasize that, by way of the transfers carried out during the period indicated in the audit report, the Finance Department kept an adequate control of the budget balances to back up the obligations for which the credits were included in the accounts affected by the transfers. As revealed by Model Report "4A" for June 30, 2016, the fact that there were no overdrafts in General Fund accounts was corroborated. [*sic*]

The president of the Municipal Legislature indicated the following:

The Autonomous Municipality of Ponce has taken the necessary measures to guarantee that subsequently the required certifications be prepared for surplus fund transfers from statutory items and that they be sent to us. We have spoken with the acting Finance director regarding this matter for all budget item credit transfer resolutions to be sent to us for the corresponding procedure. [*sic*]

**See recommendations 1, 3, 4 and 9.**

**Finding 3 – Deficiencies related to bank reconciliations**
**Situations**

a.      The finance director is required to prepare bank reconciliations of all active accounts. She shall delegate said task to an employee under her jurisdiction and ensure that the reconciliations are done correctly and that reliable accounting is kept. Checks that are pending payment for over six months from date of issuance shall be paid and the amount shall be credited to the appropriate account. A certification issued on March 1, 2018 by the Finance Director, as of June 30, 2017, shows that the Municipality had 102 accounts in 4 banking institutions and 34 in the Puerto Rico Governmental Development Bank (BGF, acronym in Spanish), for different items.

An analysis of the 20 bank reconciliations for 14 accounts, corresponding to June 2016, showed that in the bank reconciliation of the Checking account and of a special account, there were 8 checks for $31,593 pending collection, for periods that ranged between 7 and 12 months.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

b.    The Finance Director shall maintain and keep all books, records, and documents related to accounting and financial activity. They shall be filed in order to be audited by the Puerto Rico Comptroller's Office.

249 bank conciliations of the 14 accounts mentioned in the prior paragraph for the period of July 14 through December 2016 were not submitted to us.

**Criteria**

The situation mentioned in **paragraph a.** is contrary to Chapter IV, sections 13(1) and 19 of the *Municipal Administration Regulations*.

The situation mentioned in **paragraph b.** is contrary to articles 6.003(f), 6.005(d) and 11.011(a)(7) of *Law 81-1991*.

**Effects**

The situation mentioned in **paragraph a.** may lead to errors and irregularities with Municipality funds by keeping checks in circulation for such a long period of time.

The situation mentioned in **paragraph b**. prevented us from verifying, in all of their details, the charges made by banks in the Municipality's accounts. Also it leads to irregularities in disbursements and if these are committed, prevents them from being detected in a timely manner to assign responsibility.

**Causes**

We believe that the cause of the situations mentioned is the fact that the employees in charge of carrying out bank reconciliations and the directors of Finance at the time did not follow the cited provisions, by failing to review bank reconciliations and adequately supervise the tasks of employees in charge of preparing and keeping these.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Management Comments**

The mayor stated the following:

As to what is stated in **Paragraph a.** related to checks pending collection for periods between 7 and 12 months, the Finance Director instructed the personnel responsible to prepare pending bank reconciliations of checks issued that are not in circulation for longer than the period established. A copy of the letter sent by the Finance director is attached. [sic]

As to the bank reconciliations not provided to the auditors as indicated in **Paragraph (b), they** shall be delivered to the Internal Audit Office for the appropriate analysis, as recommended. [sic]

**See recommendations 1 and 5.**

---

**SPECIAL COMMENTS**

This section discusses situations that do not necessarily involve violations of laws and regulations but which are significant for the audited entity's operations. We also include situations that are not directly related to the entity's operations, which may constitute violations of laws or of regulations, which affect the treasury.

**Special Comment 1 – Budget deficits in the Operational Fund**

**Situation**

a.     The mayor and the president of the Municipal Legislature are responsible for supervising the operation of the annually approved budget, as appropriate. They are also responsible for ensuring that no amount that exceeds the allotments and funds authorized by ordinance or resolution for said year is spent or committed in a fiscal year, and that contracts are not entered into or obligations incurred that exceed the amounts allotted in the budget, unless it is expressly authorized by law or regulations. The Finance Director, who is appointed and supervised by the mayor, is responsible, among other things, for managing the Municipality's general budget.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

18                                                                                          M-19-30

If there is a deficit in municipal operations when settling any fiscal year, the Municipality shall be required to include in the budget for the following year the resources necessary and sufficient to cover the corresponding credit of the prior fiscal year. Said deficit shall be identified as a current deficit account.

Our analysis as to this revealed that the Municipality had deficits accrued in the Operational Fund for fiscal years 2014-15 through 2016-17, as reflected in the financial statements audited by certified public accountants:

| Fiscal Year | Budget | Deficit | Percent of the budget |
|---|---|---|---|
| 2014-15 | $94,551,766 | $38,865,537 | 41% |
| 2015-16 | $92,805,009 | $37,772,896 | 41% |
| 2016-17 | $88,879,594 | $44,757,255 | 50% |

Similar situations were mentioned in audit reports *M-13-07* from August 24, 2013 and *M-16-02* from June 13, 2015.

### Effects

Operating with a deficit in a given fiscal year reduces the resources available for the following fiscal year, since this amount has to be allotted in the next budget preferentially. Therefore, services that shall be provided to the public may be adversely affected.

### Management Comments

The mayor indicated the following:

As we have indicated in the response to Finding 1 this municipal administration has taken the measures indicated therein, which were focused on paying debts, avoiding current budget deficits, reducing the accrued deficit and guaranteeing continuity of services that we are required to provide the public. [sic]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

M-19-30                                                                                                    19

However, despite the measures taken to reduce the accrued deficit, we have not always achieved the expected results, due to the influence of external factors outside of our control such as enactment and/or amendment of laws to the detriment of municipal finances, such as: imposition by the Central Government of payment of electrical power of certain municipal facilities, increases in cost of water, progressive scaled increases in employer contribution amounts of the Government Retirement Systems, imposition of additional special taxes for municipalities intended to solve budget deficits of the Retirement Fund and the prevalence of an economy in recession. [sic]

This difficult economic setting deteriorated starting fiscal year 2017-2018 after Hurricane Irma and Maria passed through our island in September 2017, which caused loss of income for businesses, due mainly to the lack of electrical power and the instability of telecommunications systems. This caused, among other things, movable and immovable property tax collections to decrease and the Municipal Income Collection Center to reduce funds sent for fiscal year 2017-2018. Furthermore, elimination of the transfer income from the Central Government (Subsidies) to municipalities meant for Ponce a reduction in property tax income of $6,547,555 for fiscal year 2017-2018 and a similar reduction for the current fiscal year. [sic]

Imposition on municipalities of PAYGO has been another difficult blow to municipal governments and the impact for Ponce has been over $7.3 million per year. [sic]

Although the deficits accrued in the General Fund for fiscal years 2014-2015 through 2016-2017 fluctuated between $37.7 and 44.7 million, combined accrued benefits of all funds for the years of 2014-2015, 2015-2016, and 2016-2017 amounted to $15,115,600, $12,920,154 and $15,087,409, respectively. [sic]

The president of the Legislature stated as follows:

The Municipal Administrator has taken several imposed austerity measures which have cushioned and mitigated part of the deficit. [sic]

**See recommendations 1, 6 and 9.**



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION   Case:17-03283-LTS   Doc#:7702-35   Filed:06/27/19   Entered:06/27/19 14:25:13   Desc:
Exhibit 34   Page 23 of 64

20                                                                                                    M-19-30

### Special Comment 2 – Loans in the form of bond issuances to cover cash deficiencies

### Situation

From September 2013 through April 2014, the Municipality took out three loans from the BGF in the amount of $21,330,000. [**See APPENDIX 1**] Of these, we analyzed one in the amount of $10,040,000 taken out on October 7, 2013 for payment of debts with governmental entities and Municipal providers. This was authorized by the Municipal Legislature.

Below is the breakdown:

| Governmental Entities | Amount |
|---|---|
| ASR (Contribution) | $ 3,225,057 |
| AAA | 2,000,000 |
| ASR (Pensioner) | 712,526 |
| ASG | 1,500 |
| Subtotal | $ 5,939,083 |
| **Private Entities and Other Expenses** | |
| Providers for collection, management, and disposal of solid waste and rubble, professional services and other providers | $ 4,060,917 |
| Financing Costs | 40,000 |
| Subtotal | $ 4,100,917 |
| **Total** | $ 10,040,000 |

We believe that taking out loans to pay current budget obligations and debts is not a good administrative practice, since short-term debt payment is covered using long-term debt. As of June 30, 2016, the Municipality's debt to the BGF was $314,322,576, according to financial statements audited by certified public accountants.

For fiscal years 2012-13 through 2014-15, the Municipality did not take effective measures to cover deficiencies in operational funds or to increase income capacity according to the terms and conditions provided in Resolution *CEFM-2009-63* of the BGF


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

M-19-30                                                                                                    21

Municipal Finance Evaluation Committee. This was due to the fact that in said period it entered into loans to cover expenses and debts that are a product of the Municipality's operations and which shall be budgeted based on the collection estimates for said years and establishment of expense control measures, [**See Finding 1**]

A similar situation was mentioned in *Audit Report M-15-22*.

**Effects**

The situation mentioned aggravates the fiscal situation and lending margin of the Municipality, which reduces available resources for the following fiscal years. This is due to the fact that the amount of the debts related to operational expenses for the years indicated has to be allotted in the next budget preferentially. Therefore, services that shall be provided to the public are also adversely affected.

**Management Comments**

The mayor indicated the following:

> In the answer to Finding 1 we described in detail the fiscal historical background of the Municipality of Ponce from 2009 to the present. We must emphasize that when we assumed the municipal administration in 2009, we inherited a precarious economic situation in municipal finances that forced us to seek alternatives that allowed us to obtain the necessary resources to operate and resort to legally permissible mechanisms to comply with payment of overdue debts to suppliers and governmental agencies, while continuing to offer services that we are required to offer to our constituents. [sic]

> At the same time, the Island was being severely affected by the worst fiscal and economic crisis in its modern history, which limited and continues to limit the ability of the Central Government, its sub-divisions and of the municipalities to adequately meet the basic needs of their residents. [sic]

> The circumstances described above forced us to turn to the Governmental Development Bank in October 2013 to take out a loan, among other measures, to pay debts to governmental entities and several suppliers, in accordance with


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

22                                                                                          M-19-30

Law No. 64-1996 "Municipal Finance Act." Said loan was taken out and approved in accordance with current laws and regulations by credit committees for the Puerto Rico Government Development Bank (BGF, acronym in Spanish). [sic]

The president of the Legislature stated the following:

The Administration indicated that a loan was taken from the Governmental Development Bank in October 2013 to pay debts to governmental entities and various suppliers, in accordance with Law 64 – 1996 and that said loan was carried out and approved in accordance with current laws and regulations. [sic]

**See recommendations 1, 7 and 9.**

**Special Comment 3 - Collection recommendations contained in previous audit reports that were unheeded**

**Situation**

As of June 30, 2017, $310,209 corresponding to the *M-16-49 Audit Report* had not been collected.

The mayor indicated the following:

The Municipality of Ponce has engaged in collection measures for the aforementioned debts. Most of the debts have been overdue for at least five (5) years, therefore we shall evaluate whether they meet all of the requirements established in Article 6.005 (j) of Law No. 81-1991 "Puerto Rico Autonomous Municipality Act," to request the approval of the Honorable Municipal Legislature to declare them irrecoverable.

**See recommendations 1, 8 and 9.**

---

**RECOMMENDATIONS**                    **To the Director of the Management and Budget Office**

1.       See that the Municipal Management Office ensures that the Municipality complies with the *Corrective Action Plan* established by this Office.

         **[Findings from 1 to 3 and special comments from 1 to 3]**


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**To the mayor**

2.   Take administrative measures necessary for, hereinafter, payments to governmental agencies being made in the established period, thus avoiding payment of fines, interests and late fees, and other adverse situations for the Municipality and its employees. [**Finding 1**]

3.   Send to the Municipal Legislature copies of the executive resolutions issued to authorize transfers of credit between budget items, and see that a similar situation does not repeat itself. [**Finding 2-a.1**]

4.   Ensure that the credit transfers between items are authorized, after the Finance director issues the required remainder certifications, which show the budget allotment, the obligations and disbursements, and the credit available in each affected item. [**Finding 2-a.2**]

5.   Exercise effective supervision of the duties of the Finance director so that she ensures the following:

     a.   That checks that have been in circulation for over six months are cancelled. [**Finding 3-a.**]

     b.   That bank reconciliations that were not provided for review be located, and referred to the Internal Audit Office for its review. [**Finding 3-b.**]

6.   Continue with the administrative measures that are necessary to develop an austerity plan to eliminate the budget deficit in the Operational Fund and the overdrafts in the municipal funds. [**Special Comment 1**]

7.   Take the administrative measures required to, hereinafter, not request loans to cover cash deficiencies and to increase operational income. [**Special Comment 2**]


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

24                                                                                                          M-19-30

8.      Recover, if this hasn't already been done, the $310,209 indicated in **Special Comment 3**, from the appropriate officers, contractors, providers, and others, or, if applicable, from the bonds of responsible officers.

**To the president of the Municipal Legislature**

9.      Inform the Municipal Legislature as to the situations mentioned in **findings 1 and 2 and special comments from 1 to 3**, so that the appropriate corrective measures are adopted and a follow-up plan is established for situations mentioned to be dealt with and not repeated.

---

**APPROVAL**

To the officers and employees of the Municipality of Ponce, we exhort you to enforce compliance with applicable regulations and law and promote the effective, economical, efficient and ethical use of Government resources for the benefit of our People. We thank you for the cooperation provided during our audit.

Office of the Comptroller of Puerto Rico

Approved by:      [signature]


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

M-19-30                                                                                                   25

<strong>APPENDIX 1</strong>

MUNICIPALITY OF PONCE
**LOANS TAKEN OUT WITH THE GOVERNMENT DEVELOPMENT BANK
FOR PUERTO RICO FOR FISCAL YEAR 2013-2014 [Special Comment 2]**

| Date | Purpose | Amount |
|------|---------|--------|
| September 2013 | Acquire and install telephone and data platform equipment (485,000), pay finance expenses and other purposes ($5,000) | $    490,000 |
| October 2013 | Pay debts to government agencies and providers ($10,000,000) and finance expenses ($40,000). | 10,040,000 |
| April 2014 | Cancel line of credit for remodeling old Juan Bigas Marketplace to turn it into an integrated service center ($10,000,000) and finance expenses and other purposes ($800,000). | 10,800,000 |
| **TOTAL** | | $21,330,000 |

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

26

M-19-30

**APPENDIX 2**

MUNICIPALITY OF PONCE

**MAIN MUNICIPALITY OFFICIALS DURING THE AUDITED PERIOD[2]**

| NAME | POST OR POSITION | PERIOD FROM | THROUGH |
|------|------------------|------|---------|
| Hon. María E. Meléndez Altieri | Mayor | 1 jul. 14 | 30 jun. 17 |
| Mr. Félix D. Camacho Nogués | City Administrator | 2 nov. 16 | 30 jun. 17 |
| Mr. Eliezer Velázquez Quiles | " | 1 jul. 14 | 1 nov. 16 |
| Ms. Yolanda Cruz Medina | Finance and Budget Director | 1 feb. 17 | 30 jun. 17 |
| Ms. Jessica Torruellas Rivera | " | 16 sep. 15 | 31 jan. 17 |
| Mr. José Rivera Aponte | Finance and Budget Director[3] | 18 feb. 15 | 22 ago. 15 |
| Ms. Ramona Pacheco Machado | Finance and Budget Director | 1 jul. 14 | 16 nov. 14 |
| Ms. Jessica Nieves Soto | Municipal Secretary | 2 feb. 17 | 30 jun. 17 |
| Mr. Cruz Maldonado Pérez | Municipal Secretary | 1 jul. 14 | 1 feb. 17 |
| Ms. Magdiel Lugo Figueroa | Director of Internal Audit | 1 jul. 14 | 30 jun. 17 |
| Ms. Marie R. Battistini Ramírez | Director of Human Resources | 1 jun. 17 | 30 jun. 17 |
| Mr. Héctor Maldonado Vargas | Director of Human Resources | 16 feb. 17 | 22 may. 17 |
| Ms. Raquel Nuñez Alicea | Director of Human Resources[4] | 23 jun. 16 | 15 feb. 17 |
| Ms. Janice M. González Galarza | " | 1 jul. 14 | 1 jan. 16 |
| Ms. Marieli Paradizo Pérez | Director of Legal Services | 15 dec. 16 | 30 jun. 17 |

[2] Internships of less than 30 days are not included.

[3] From November 17, 2014 through February 17, 2015, the position was vacant.

[4] From January 2 through July 22, 2016, the position was vacant and the Department was lead by Ms. Carmen Torres Rodríguez, Director of Legal Services.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

M-19-30                                                                                                  27

Continuation of  **APPENDIX 2**

| NAME | POST OR POSITION | PERIOD | |
|---|---|---|---|
| | | FROM | THROUGH |
| Ms. Carmen E. Torres Rodríguez | Director of Legal Services | 11 jul. 14 | 15 nov. 16 |
| Mr. Máximo Sánchez Soldevila | Director of Public Works | 1 dec. 15 | 30 jun. 17 |
| Ms. María Torres Vargas | Director of Public Works | 2 sep.15 | 30 nov. 15 |
| Ms. Lilibeth Torres Astacio | ” | 1 apr. 15 | 1 sep. 15 |
| Mr. Javier Medina Mojica | Director of Public Works | 1 jul. 14 | 1 mar. 15 |

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

28                                                                                      M-19-30

APPENDIX 3

MUNICIPALITY OF PONCE

**MAIN MUNICIPAL LEGISLATURE OFFICIALS DURING THE AUDITED
PERIOD [5]**

| NAME | POST OR POSITION | PERIOD | |
|------|------------------|--------|---|
| | | FROM | THROUGH |
| Hon. Rafael A. Mateu Cintrón | President | 1 jan. 17 | 30 jun. 17 |
| Mr. José G. Figueroa Torres | " | 1 jul. 14 | 31 dec. 16 |
| Ms. Marieli Santiago Gautier | Secretary | 1 jan. 17 | 30 jun. 17 |
| Ms. Yasmín Adaime Maldonado | " | 1 jul. 14 | 31 dec. 16 |

---

[5] Internships of less than 30 days are not included.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

| | |
|---|---|
| **MISSION** | Supervise transactions involving public funds and property in a manner that is independent and objective, to determine whether they have been carried out in accordance with the law and handle other assigned matters.<br><br>Promote effective, economical, efficient and ethical use of Government resources to benefit the People. |
| **PRINCIPLES TO ACHIEVE EXCELLENCE IN PUBLIC ADMINISTRATION** | The Comptroller's Office, through the years, has identified principles which help improve public administration. Said principles are included in *Circular Letter OC-18-19* from April 27, 2018, available on our webpage. |
| **COMPLAINTS** | Complaints as to misuse of property and public funds may be made confidentially, in person or by telephone at (787) 754-3030, extension 2801 or 2805, or to 1-877-771-3133 (toll-free). They may also be made via e-mail to querellas@ocpr.gov.pr or through the Office webpage. |
| **INFORMATION AS TO AUDIT REPORTS** | The audit reports include important findings from the audits. Our webpage includes information as to the contents of said findings and the type of opinion of the report.<br><br>The fastest and simplest way to obtain free copies of the reports is through the Office webpage.<br><br>Copies of these may also be issued, upon payment of legally required internal revenue stamps. Interested persons may contact the document administrator at (787) 754-3030, extension 3400. |

| | | |
|---|---|---|
| **CONTACT INFORMATION** | *Physical Address:*<br>105 Avenida Ponce de León<br>Hato Rey, Puerto Rico<br>Telephone: (787) 754-3030<br>Fax: (787) 751-6768<br><br>*Mailing Address:*<br>PO Box 366069<br>San Juan, Puerto Rico 00936-6069 | *Internet:*<br>www.ocpr.gov.pr<br><br>*E-mail:*<br>ocpr@ocpr.gov.pr |

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**INFORME DE AUDITORÍA M-19-30**

4 de marzo de 2019

**Municipio de Ponce**

(Unidad 4058 – Auditoría 14163)

Período auditado: 1 de julio de 2014 al 30 de junio de 2017

# CONTENIDO

**Página**

**OBJETIVOS DE AUDITORÍA** ......................................................................................... **2**

**CONTENIDO DEL INFORME** ......................................................................................... **3**

**ALCANCE Y METODOLOGÍA** ...................................................................................... **3**

**INFORMACIÓN SOBRE LA UNIDAD AUDITADA** ................................................. **4**

**COMUNICACIÓN CON LA GERENCIA** ..................................................................... **5**

**CONTROL INTERNO** ....................................................................................................... **6**

**OPINIÓN Y HALLAZGOS** ............................................................................................... **6**

    1 - Atraso en el pago de deudas; y pagos de multas, intereses, penalidades y recargos
    por remesar retenciones y aportaciones tardíamente..................................................... 7

    2 - Deficiencias relacionadas con las transferencias de crédito entre partidas presupuestarias ........ 12

    3 - Deficiencias relacionadas con las conciliaciones bancarias....................................... 15

**COMENTARIOS ESPECIALES** ..................................................................................... **17**

    1 - Déficits presupuestarios en el Fondo Operacional......................................................... 17

    2 - Préstamos realizados a través de emisiones de bonos para cubrir deficiencias
    de efectivo ..................................................................................................................... 20

    3 - Recomendaciones de recobro no atendidas de los informes de auditorías anteriores.................. 22

**RECOMENDACIONES** ..................................................................................................... **22**

**APROBACIÓN** ..................................................................................................................... **24**

**ANEJO 1 - PRÉSTAMOS FORMALIZADOS CON EL BANCO GUBERNAMENTAL
    DE FOMENTO PARA PUERTO RICO PARA EL AÑO FISCAL 2013-2014
    [Comentario Especial 2]** ............................................................................................. **25**

**ANEJO 2 - FUNCIONARIOS PRINCIPALES DEL MUNICIPIO DURANTE EL
    PERÍODO AUDITADO** ................................................................................................. **26**

**ANEJO 3 - FUNCIONARIOS PRINCIPALES DE LA LEGISLATURA MUNICIPAL
    DURANTE EL PERÍODO AUDITADO** ..................................................................... **28**

2

M-19-30

Estado Libre Asociado de Puerto Rico
**OFICINA DEL CONTRALOR**
San Juan, Puerto Rico

4 de marzo de 2019

Al Gobernador, y a los presidentes del Senado de
    Puerto Rico y de la Cámara de Representantes

Incluimos los resultados de la auditoría de cumplimiento que realizamos del Municipio de Ponce. Hicimos la misma a base de la facultad que se nos confiere en el Artículo III, Sección 22 de la Constitución del Estado Libre Asociado de Puerto Rico, y en la *Ley Núm. 9 del 24 de julio de 1952*, según enmendada; y en cumplimiento de nuestro *Plan Anual de Auditorías*.

---

**OBJETIVOS DE AUDITORÍA**

**Objetivo general**

Determinar si las operaciones fiscales del Municipio se efectuaron de acuerdo con la ley y la reglamentación aplicables.

**Objetivos específicos**

1.  Examinar las recaudaciones y determinar si se depositaron en las cuentas bancarias correspondientes. Además, determinar si se realizaron gestiones de cobro efectivas de los préstamos con atrasos, otorgados por el Banco Municipal de Ponce.

2.  Verificar si las transferencias de fondos, entre partidas de gastos del presupuesto, se realizaron conforme a las disposiciones establecidas.

3.  Examinar las conciliaciones bancarias de las cuentas Corriente y Nómina para verificar la corrección de las mismas, y determinar si hubo cargos irregulares o sobregiros. También verificar la existencia de cuentas con saldos inactivos.

4.  Determinar las deudas con agencias estatales.

**CONTENIDO DEL INFORME**

Este es el primer informe, y contiene tres hallazgos y tres comentarios especiales del resultado del examen que realizamos de las áreas indicadas en la sección anterior. El mismo está disponible en nuestra página en Internet: www.ocpr.gov.pr.

**ALCANCE Y METODOLOGÍA**

La auditoría cubrió del 1 de julio de 2014 al 30 de junio de 2017. En algunos aspectos examinamos transacciones de fechas anteriores y posteriores. El examen lo efectuamos de acuerdo con las normas de auditoría gubernamental generalmente aceptadas contenidas en el *Government Auditing Standards*, emitido por la Oficina de Rendición de Cuentas del Gobierno de Estados Unidos (GAO, por sus siglas en inglés), en lo concerniente a auditorías de desempeño. Estas normas requieren que planifiquemos y realicemos la auditoría para obtener evidencia suficiente y apropiada que proporcione una base razonable para nuestra opinión y hallazgos relacionados con los objetivos de la auditoría. En consecuencia, realizamos las pruebas que consideramos necesarias, a base de muestras y de acuerdo con las circunstancias, según nuestros objetivos de auditoría. Realizamos pruebas, tales como: entrevistas a funcionarios y empleados; inspecciones físicas; exámenes y análisis de informes y de documentos generados por la unidad auditada o por fuentes externas; confirmación de cuentas; pruebas y análisis de información financiera y de procedimientos de control interno.

Consideramos que la evidencia obtenida proporciona una base razonable para nuestra opinión y hallazgos.

Además, evaluamos la confiabilidad de los datos del módulo Ingresys del Sistema Integrado de Municipios Avanzados (Sistema de Contabilidad), que contiene, entre otras, las transacciones relacionadas con los recaudos del Municipio. Como parte de dicha evaluación, entrevistamos a los funcionarios con conocimiento del sistema y de los datos: realizamos pruebas electrónicas para detectar errores evidentes de precisión e

integridad; y revisamos la documentación e información existente sobre los datos y el sistema que los produjo. Determinamos que los datos eran suficientemente confiables para propósitos de este *Informe*.

| | |
|---|---|
| **INFORMACIÓN SOBRE LA UNIDAD AUDITADA** | El Municipio es una entidad del Gobierno del Estado Libre Asociado de Puerto Rico con personalidad jurídica. Sus operaciones se rigen por la *Ley 81-1991, Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991*, según enmendada, y por el *Reglamento para la Administración Municipal de 2016*. Este fue aprobado el 19 de diciembre de 2016 por el comisionado de Asuntos Municipales, y comenzó a regir el 17 de enero de 2017[1]. |

El Municipio tiene plenas facultades ejecutivas y legislativas en cuanto a su jurisdicción. Es una entidad jurídica con carácter permanente. Además, tiene existencia y personalidad legal independientes de las del Gobierno Estatal.

El sistema gubernamental del Municipio está compuesto por 2 poderes: el Ejecutivo y el Legislativo. La alcaldesa, como funcionaria ejecutiva, ejerce las funciones administrativas y es electa cada 4 años en las elecciones generales de Puerto Rico. La Legislatura Municipal ejerce las funciones legislativas y está compuesta por 16 miembros, quienes también son electos en dichas elecciones. Los **anejos 2 y 3** contienen una relación de los funcionarios principales del Municipio y de la Legislatura Municipal que actuaron durante el período auditado.

El Municipio, para ofrecer sus servicios, cuenta con las siguientes dependencias: Permisos; Oficina Municipal para el Manejo de Emergencias y Administración de Desastres (OMMEAD); Obras Públicas Municipal; Head Start; Fomento Turístico Industrial y Económico; Área Local de Desarrollo Laboral; Recreación y Deportes; Transporte; Educación Municipal; Control Ambiental; Desarrollo Cultural;

---

[1] Este derogó el *Reglamento para la Administración Municipal* del 18 de julio de 2008. Además, mediante la *Ley 81-2017*, se transfirieron las funciones de la Oficina del Comisionado de Asuntos Municipales (OCAM) a la Oficina de Gerencia y Presupuesto.

Sistema Integrado de Transportación (SITRAS); Empresas Municipales; Salud y Bienestar; Vivienda y Desarrollo Socioeconómico; Policía Municipal; y Seguridad Pública y Ornato.

El presupuesto del Municipio, en los años fiscales del 2014-15 al 2016-17, ascendió a $94,551,766, $92,805,009, y $88,879,594, respectivamente. El Municipio tenía preparados sus estados financieros, auditados por contadores públicos autorizados, correspondientes a los años fiscales del 2014-15 al 2016-17. Los mismos reflejaron déficits acumulados en el fondo general de $38,865,537, $37,722,896 y $44,757,255; respectivamente. **[Véase el Comentario Especial 1]**

El Municipio cuenta con una página en Internet, a la cual se puede acceder mediante la siguiente dirección: www.visitponce.com. Esta página provee información acerca del Municipio y de los servicios que presta dicha entidad.

**COMUNICACIÓN CON LA GERENCIA**

El 13 de diciembre de 2018 remitimos el borrador de este *Informe*, que incluía 5 hallazgos y 3 comentarios especiales, a la Hon. María E. Meléndez Altieri, alcaldesa; y el borrador de 2 hallazgos y 2 comentarios especiales al Hon. Rafael A. Mateu Cintrón, presidente de la Legislatura Municipal, para comentarios.

Por cartas del 30 de enero y 8 de febrero de 2019, la alcaldesa y el presidente de la Legislatura Municipal remitieron sus comentarios.

Luego de evaluar los mismos y la evidencia suministrada por la alcaldesa y el presidente de la Legislatura Municipal, determinamos eliminar dos hallazgos y una situación comentada. Las restantes prevalecieron, y los comentarios de dichos funcionarios fueron considerados en la redacción final de este *Informe*, y se incluyeron en la sección **OPINIÓN Y HALLAZGOS**.

6

M-19-30

**CONTROL INTERNO**

La gerencia del Municipio de Ponce es responsable de establecer y mantener una estructura del control interno efectiva para proveer una seguridad razonable en el logro de:

- la eficiencia y eficacia de las operaciones

- la confiabilidad de la información financiera

- el cumplimiento de las leyes y la reglamentación aplicables.

Nuestro trabajo incluyó la comprensión y evaluación de los controles significativos para los objetivos de este *Informe*. Utilizamos dicha evaluación como base para establecer los procedimientos de auditoría apropiados a las circunstancias, pero no con el propósito de expresar una opinión sobre la efectividad de la estructura del control interno del Municipio.

En los **hallazgos del 1 al 3** se comentan las deficiencias de controles internos significativas, dentro del contexto de los objetivos de nuestra auditoría, identificadas a base del trabajo realizado.

Además, mediante carta del 19 de julio de 2017, le notificamos a la alcaldesa otras deficiencias de controles internos que no son significativas para los objetivos de la auditoría.

Las deficiencias comentadas no contienen necesariamente todos los aspectos de control interno que pudieran ser situaciones objeto de hallazgo. Esto, debido a que dichas deficiencias fueron identificadas como resultado de la evaluación de las operaciones, los procesos, las actividades y los sistemas relacionados con los objetivos de la auditoría.

**OPINIÓN Y HALLAZGOS**

**Opinión cualificada**

Las pruebas efectuadas y la evidencia en nuestro poder revelaron que las operaciones del Municipio, objeto de este *Informe*, se realizaron en todos los aspectos significativos, de acuerdo con la ley y la reglamentación aplicables; excepto por los **hallazgos del 1 al 3**, que se comentan a continuación.

**Hallazgo 1 - Atraso en el pago de deudas; y pagos de multas, intereses, penalidades y recargos por remesar retenciones y aportaciones tardíamente**

**Situación**

a. La alcaldesa es responsable de preparar anualmente un proyecto de resolución de presupuesto. Es obligatorio incluir, entre otras cosas, las asignaciones con crédito suficiente para el pago de las obligaciones estatutarias y otros gastos a los que esté legalmente obligado el Municipio por contratos otorgados, y otros gastos de funcionamiento. Además, el Municipio tiene la responsabilidad de realizar aquellas retenciones que, por ley o reglamento, le son requeridas.

El director de Finanzas es responsable de realizar a tiempo los pagos de las retenciones de impuestos federales y estatales que se realizan a los empleados municipales. Se prohíbe a los municipios el uso de las aportaciones o de las cuotas retenidas a los empleados municipales para fines distintos a los autorizados por dichos empleados o por ley. Además, la retención y el uso de las aportaciones o de las cuotas de los empleados municipales no pueden exceder el término establecido por las leyes que autorizan tales retenciones, con el cual el municipio debe cumplir, sin retrasos, de manera que el proceso de envío de dichos fondos a las diferentes entidades se conduzca con la más estricta diligencia. Entre las entidades a las que el Municipio tiene que remesar, se encuentran la Administración de los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico y la Judicatura (ASR), la Asociación de Empleados del Estado Libre Asociado de Puerto Rico (AEELA) y el Departamento de Hacienda. Dichas retenciones y aportaciones deben ser remitidas mensualmente.

En la reglamentación vigente del Servicio de Rentas Internas Federal (IRS, por sus siglas en inglés) se establece que los pagos al Seguro Social Federal deben efectuarse mensualmente, mediante depósitos en bancos comerciales adscritos al Sistema de la Reserva Federal.

Nuestro examen sobre el particular reveló que el Municipio, al 31 de diciembre de 2016, adeudaba $32,640,077 a varias entidades gubernamentales y privadas, según se detalla a continuación:

| Entidades Gubernamentales | Concepto | Importe |
|---|---|---|
| ASR | Aportaciones | $15,362,053 |
| Autoridad de Acueductos y Alcantarillados de Puerto Rico | Servicio de agua y alcantarillados | 9,501,807 |
| Autoridad de Energía Eléctrica de Puerto Rico | Servicio de luz y alumbrado | 1,423,372 |
| Departamento del Trabajo y Recursos Humanos | Seguro por desempleo | 1,415,115 |
| Departamento de Hacienda | Contribución sobre ingresos retenida | 589,149 |
| AEELA | Descuentos de ahorros, seguros y préstamos | 284,200 |
| IRS | Retenciones y aportaciones | 258,542 |
| Administración de Servicios Generales | Administración, gasolina, almacén e imprenta | 5,894 |
| **Subtotal** | | $28,840,132 |
| Entidad privada | Aseguradoras, planes médicos y cuotas | 3,799,945 |
| **Total** | | $32,640,077 |

La deuda incluye cargos por intereses, recargos y penalidades por $1,094,569 correspondientes a la ASR ($925,395), al Departamento del Trabajo y Recursos Humanos ($117,998), al Departamento de Hacienda ($50,667) y a AEELA ($509).

Una situación similar se comentó en el *Informe de Auditoría M-16-49* del 24 de junio de 2016.

**Criterios**

La situación comentada es contraria a los artículos 7.003(b), (e), (f) y (g) y 8.004(e) de la *Ley 81-1991*; a la *Ley 1-2011*, *Código de Rentas Internas para un Nuevo Puerto Rico*, según enmendada; al *Reglamento General del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades para la Concesión de Pensiones, Beneficios y Derechos a los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades*, aprobado el 22 de abril de 1993 por la Junta de Síndicos de la ASR; al *Reglamento del Servicio de Rentas Internas Federal*; y a los apartados 9 y 11 de la *Publicación 179, Circular PR Guía Contributiva Federal para Patronos Puertorriqueños*, emitida por el IRS, según revisada en enero de 2001; al *Reglamento Núm. 1* del 14 de diciembre de 1956, según enmendado, emitido por el secretario del Trabajo y Recursos Humanos en virtud de la *Ley Núm. 74 del 21 de junio de 1956, Ley de Seguridad de Empleo de Puerto Rico*, según enmendada; y al Artículo VI del *Reglamento para Ingreso Voluntario a la Asociación de Empleados del ELA*, R-007, aprobado en enero de 1977, según enmendado.

**Efectos**

La situación comentada ocasionó que el Municipio incrementara innecesariamente su deuda por $1,094,569, por intereses, recargos y penalidades a las agencias gubernamentales, lo que agravó su situación fiscal. Además, ocasionó que se afectaran los recursos que deben recibir las referidas entidades gubernamentales para cumplir con sus responsabilidades. También pudo ocasionar que se afectaran los servicios que se ofrecen a los habitantes del Municipio, y que los empleados municipales tuvieran acceso a los beneficios a los que tienen derecho como resultado de las aportaciones retenidas.

**Causas**

Atribuimos la situación comentada a que la alcaldesa y los directores de Finanzas en funciones no administraron eficientemente las finanzas del Municipio, al no realizar los pagos de las obligaciones contraídas y al no remitir a tiempo las aportaciones y retenciones realizadas a los empleados.

**Comentarios de la Gerencia**

La alcaldesa indicó lo siguiente:

Al iniciar nuestra gestión administrativa en enero del 2009 nos encontramos con una situación económica precaria en las finanzas municipales y la peor crisis fiscal y económica en la historia moderna de Puerto Rico que limitaba y continúa limitando la capacidad del Gobierno Central, sus sub-divisiones y de los municipios, para atender de manera adecuada las necesidades básicas de sus residentes. La cuenta bancaria de los fondos ordinarios del municipio tenía un sobregiro de $6.1 millones, existían deudas con suplidores y agencias gubernamentales ascendentes a $30.1 millones y se había utilizado la totalidad del dinero recaudado por concepto de patentes en suspenso cobrada en abril de 2008 que se suponía que se reservaba para el año fiscal 2008-2009. El margen prestatario del Municipio de Ponce estaba en cero. El año fiscal 2008-2009, cuyo presupuesto fue aprobado por la Honorable Legislatura Municipal el 13 de junio del 2008 bajo la anterior administración, cerró con un déficit acumulado de $24,459,876. [*sic*]

Ante ese difícil cuadro fiscal económico hemos tomado medidas de control de gastos y de aumento de ingresos e identificación de recursos adicionales, y formalizado acuerdos de pagos con agencias gubernamentales y suplidores, con el fin de cumplir con el pago de las deudas, evitar déficit presupuestarios corrientes, disminuir el déficit acumulado y garantizar la continuidad de los servicios que venimos obligados a brindarle a nuestros ciudadanos. [*sic*]

Entre las medidas tomadas se encuentran; (1) la implementación de proyectos de cobro de deuda morosa y de inventario de propiedad inmueble; (2) aumentos en la tasa contributiva de la propiedad mueble e inmueble mediante la Ordenanza Núm. 99, Serie 2008-2009 aprobada por la Honorable Legislatura Municipal el 2 de febrero de 2009 y la Ordenanza Núm. 32, Serie 2016-2017 aprobada el 18 de mayo de 2017; (3) la implementación en varios años fiscales de reducciones de la jornada laboral de los empleados del servicio de carrera regular o probatorio y de los empleados irregulares y transitorios, incluyendo la reducción de un 10% en el salario la Alcaldesa, los directores de las dependencias municipales y de los empleados bajo el servicio de confianza de la rama ejecutiva y una reducción de 10% en el salario de los empleados de la Legislatura Municipal, mediante la Resolución Interna núm. 1, serie de 2017-18 aprobada 10 de julio 2017; (4) la reducción de 5% a los contratos de todos los proveedores de servicios profesionales en varios años fiscales; (5) la contratación a partir del año fiscal 2013-2014 de las distintas pólizas de seguros directamente con las agencias de seguros, a tenor con la autorización dada a los municipios por la Ley

Núm. 63- 2010, lo cual resultó en un ahorró en pólizas de
$505,145.53 en ese año fiscal que se utilizó para aumentar la
partida de Déficit de Años Anteriores;, (6) la renegociación en
julio de 2014 de los términos del contrato de recogido, transporte
y disposición de desperdicios sólidos y la formalización de un
acuerdo de pago de la deuda acumulada con el PROVEEDOR,
que nos ha permitido cumplir con el pago de la deuda vieja y con
el pago corriente del servicio, evitar la acumulación deuda
adicional por el servicio de recogido de desperdicios sólidos, bajar
el costo del servicio en $3,697,458 desde julio de 2014 hasta
diciembre de 2018 y garantizarle a los ponceños la continuidad del
servicio; (7) la aprobación el 3 de marzo de 2017 de la Ordenanza
Número 23, Serie 2016-2017 para declarar un **Estado de
Emergencia Fiscal**, desarrollar e implementar medidas para
control de gastos y usos de recursos, lo que sirvió para maximizar
los limitados recursos disponibles, procurar que se mantuvieran
los fondos necesarios para la operación del Municipio y que no se
vieran afectados los servicios esenciales que estamos obligados a
ofrecer a nuestra ciudadanía. Entre las medidas de austeridad
adoptadas mediante la referida ordenanza se encuentran; congelar
inmediatamente las partidas asignadas para donativos en el
presupuesto del año fiscal 2016-2017; no otorgar ni desembolsar
donativos a ninguna persona natural o jurídica durante el término
restante del presente año fiscal; y limitar el uso del presupuesto del
año fiscal 2016-2017 solo para las partidas destinadas a gastos
operacionales como el pago de nómina, suplidores, utilidades y
otros servicios relacionados, incluyendo **el pago de las
deducciones y aportaciones de nómina**; (8) la aprobación el
28 de marzo de 2017 de la Ordenanza Núm. 28 Serie del
2016-2017 de una reducción de $411,543 en el presupuesto del
año fiscal 2016-2017 como resultado de la cancelación de
donativos, becas y viajes estudiantiles, según contemplado en la
Ordenanza Número 23, Serie 2016-2017 antes mencionada.
Aunque dicha ordenanza aplicaba exclusivamente al año fiscal
2016-2017, en los presupuestos de los años fiscales 2017-2018 y
2018-2019 no se incluyeron partidas para los gastos antes
descritos; y (9) la reducción en los presupuestos de los años
fiscales 2013-2014, 2014-2015, 2015-2016, 2016-2017 2017-2018
y 2018-2019 en $5,337,308, $12,180,730, $1,746,757, $3,925,415
y $6,145,634 y $297,355, respectivamente. [*sic*]

A pesar de las medidas antes descritas tomadas por nuestra
administración municipal, varios factores fuera de nuestro control,
como la situación precaria heredada de las finanzas municipales,
la crisis fiscal y económica histórica por la que ha estado
atravesando Puerto Rico desde antes del 2009, la carga impuesta a
por el Gobierno Central a los municipios mediante la aprobación
y/o enmiendas de leyes o reglamentos, tales como; el pago de
energía eléctrica de ciertas facilidades municipales, aumentos en
las tarifas del agua, aumentos escalonados progresivos en las tasas
de aportación patronal del Sistemas de Retiro del Gobierno y las

aportaciones especiales adicionales impuestas a los municipios dirigidas a solventar los déficit actuariales del Fondo de Retiro, han afectado negativamente las finanzas de los municipios, incluyendo el nuestro, lo que nos ha impedido alcanzar los resultados esperados. [*sic*]

Otros factores que también han afectado negativamente las finanzas municipales son; el impacto en la economía ocasionado por el paso de los Huracanes Irma y María por nuestra isla en septiembre de 2017, lo que provocó la pérdida de ingresos a los negocios, debido principalmente, a la falta de energía eléctrica y a la inestabilidad de los sistemas de telecomunicaciones; la eliminación de los ingresos de transferencias del Gobierno Central (subsidios) a los municipios a partir del año fiscal 2017-2018 a requerimiento de la Junta de Supervisión Fiscal, lo que representó una disminución en los ingresos del Municipio por concepto de contribuciones sobre la propiedad de $6,547,555 para dicho año fiscal y una disminución similar para el año fiscal corriente (2018-2019); y la imposición a los municipios del llamado PAYGO a partir del 1 de julio de 2017 que en el caso de Ponce representa más de $7.3 millones anuales. [*sic*]

El presidente de la Legislatura Municipal indicó lo siguiente:

La Administración Municipal ha hecho los ajustes para trabajar con la situación, nosotros desde la Legislatura Municipal hemos colaborado aprobando Ordenanzas necesarias para una sana administración; entre ellas: Ordenanza 23, Serie 2016-2017- declaración de Emergencia Fiscal Ordenanza 28, Serie 2016-2017- Presupuesto Municipal con una reducción de $411,543 Ordenanza 38, Serie 2017-2018- Aumento a la tasa contributiva de la Propiedad Inmueble. [*sic*]

**Véanse las recomendaciones 1, 2 y 9.**

**Hallazgo 2 - Deficiencias relacionadas con las transferencias de crédito entre partidas presupuestarias**

**Situaciones**

a.  Aprobado el presupuesto anual, la alcaldesa puede aprobar transferencias de crédito entre cuentas. Para esto, autoriza al director de Finanzas a efectuar las transferencias mediante resoluciones ejecutivas. Sin embargo, las transferencias autorizadas no pueden afectar, entre otras cosas, el pago de intereses, la amortización y

el retiro de la deuda pública, las obligaciones estatutarias; ni el pago para cubrir el déficit del año anterior y los gastos a que estuviese legalmente obligado el Municipio por contratos otorgados. Las transferencias para el pago de servicios personales deben ser aprobadas por la Legislatura Municipal.

Toda transferencia de fondos entre cuentas debe estar sustentada por los siguientes documentos: la orden ejecutiva o resolución para autorizar la transferencia, la certificación de sobrante emitida por el director de Finanzas, y el acuse de recibo de la copia de la orden ejecutiva enviada a la Legislatura Municipal para su información. Esta última debe ser remitida a dicho Cuerpo dentro de los cinco días siguientes a la fecha de su firma.

De julio de 2014 a junio de 2016, se aprobaron 728 resoluciones ejecutivas para efectuar 2,454 transferencias de crédito por $28,134,391 de las partidas presupuestarias.

El examen realizado sobre dichas transferencias reveló lo siguiente:

1) La alcaldesa no remitió a la Legislatura Municipal las 728 resoluciones dentro de los 5 días después de su aprobación. La secretaria de la Legislatura Municipal nos certificó no haber recibido las copias de las resoluciones aprobadas por la alcaldesa.

2) De agosto de 2014 a junio de 2016, la alcaldesa, mediante 214 resoluciones, autorizó 284 transferencias de crédito por $18,368,998 que rebajaron las asignaciones presupuestarias de 14 partidas del presupuesto destinadas a cubrir el pago de obligaciones estatutarias. Dichas transferencias se realizaron sin que los directores de Finanzas en funciones prepararan las certificaciones de sobrantes requeridas para poder afectar estas partidas. Los fondos transferidos se utilizaron para aumentar los recursos de varias partidas de gastos operacionales.

**Criterios**

Las situaciones comentadas son contrarias a los artículos 3.009(k), 3.010(k), 5.005(g) y 7.008(a) y (b) de la *Ley 81-1991*; y al Capítulo II, Sección 7(1) al (3) del *Reglamento para la Administración Municipal*.

**Efectos**

La situación comentada en el **apartado a.1)** impidió a la Legislatura Municipal mantener información actualizada sobre las transacciones fiscales del Municipio para evaluar y determinar la corrección de las mismas.

Lo comentado en el **apartado a.2)** no permite que se mantenga un control adecuado de los balances en las partidas, y en los fondos presupuestarios, lo que puede ocasionar que no se cumpla con los compromisos para los cuales se separan los créditos en las partidas afectadas. Además, ha ocasionado sobregiros en las partidas del presupuesto, lo que ha causado los déficits acumulados. **[Véase el Comentario Especial 1]**.

**Causas**

Las situaciones comentadas se atribuyen a que la alcaldesa y los entonces directores de Finanzas se apartaron de las disposiciones citadas y no administraron adecuadamente las finanzas del Municipio y al realizar transferencias de obligaciones estatutarias sin las certificaciones de los sobrantes requeridas.

**Comentarios de la Gerencia**

La alcaldesa indicó lo siguiente:

> El Municipio Autónomo de Ponce ha tomado las medidas necesarias para garantizar que en lo sucesivo se preparen las certificaciones requeridas para poder transferir fondos sobrantes de partidas estatutarias y que se remitan a la Legislatura Municipal todas las resoluciones de transferencias de crédito de partidas presupuestarias para su evaluación y aprobación, para que el Cuerpo Legislativo esté informado sobre las transacciones presupuestarias del Municipio y revalúe las mismas. Además, y como medida correctiva, se estarán remitiendo a la Legislatura Municipal las transferencias de créditos mencionadas en este hallazgo para la acción que corresponda. [*sic*]

No obstante, recalcamos que, mediante las transferencias realizadas durante el periodo indicado en el informe de auditoría, el Departamento de Finanzas mantuvo un control adecuado de los balances presupuestarios para sustentar las obligaciones para las cuales se separaron los créditos en las cuentas afectadas por las transferencias. Según se desprende del Reporte Modelo "4A" correspondiente al 30 de junio de 2016, se pudo corroborar que no se reflejaban sobregiros en cuentas del Fondo General. [*sic*]

El presidente de la Legislatura Municipal indicó lo siguiente:

El Municipio Autónomo de Ponce ha tomado las medidas necesarias para garantizar que en lo sucesivo se preparen las certificaciones requeridas para las transferencias fondos sobrantes de partidas estatutarias y que se nos remitan. Hemos dialogado con el director interino de Finanzas sobre el asunto para que se nos remitan todas las resoluciones de transferencias de crédito de partidas presupuestarias para darle en trámite correspondiente. [*sic*]

**Véanse las recomendaciones 1, 3, 4 y 9.**

**Hallazgo 3 - Deficiencias relacionadas con las conciliaciones bancarias**

**Situaciones**

a. La directora de Finanzas tiene la obligación de preparar las conciliaciones bancarias de todas las cuentas activas. Esta delega dicha tarea en un empleado que está bajo su jurisdicción y debe asegurarse de que las conciliaciones se realicen correctamente y que se mantenga una contabilidad confiable. Los cheques pendientes de pago por más de seis meses de su emisión deben ser cancelados y su importe debe acreditarse a la cuenta correspondiente. Mediante certificación emitida el 1 de marzo de 2018 por la directora de Finanzas, al 30 de junio de 2017, el Municipio mantuvo 102 cuentas en 4 instituciones bancarias y 34 en el Banco Gubernamental de Fomento para Puerto Rico (BGF), para distintos conceptos.

El examen de 20 conciliaciones bancarias de 14 cuentas, correspondientes a junio de 2016, reveló que en la conciliación bancaria de la cuenta Corriente y de una especial permanecían pendientes de cobro 8 cheques por $31,593, por períodos que fluctuaban de 7 a 12 meses.

b.  La directora de Finanzas debe mantener y custodiar todos los libros, registros y documentos relacionados con la actividad financiera y de contabilidad. Estos tienen que ser archivados para ser auditados por la Oficina del Contralor de Puerto Rico.

No nos suministraron para examen 249 conciliaciones bancarias de las 14 cuentas mencionadas en el apartado anterior, para el período de julio de 2014 a diciembre de 2016.

**Criterios**

La situación comentada en el **apartado a.** es contraria al Capítulo IV, secciones 13(1) y 19 del *Reglamento para la Administración Municipal*.

Lo comentado en el **apartado b.** es contrario a los artículos 6.003(f), 6.005(d) y 11.011(a) (7) de la *Ley 81-1991*.

**Efectos**

La situación comentada en el **apartado a.** puede propiciar errores e irregularidades con los fondos del Municipio al mantener los cheques en circulación por tanto tiempo.

La situación comentada en el **apartado b.** nos impidió verificar, en todos sus detalles, los cargos efectuados por los bancos en las cuentas del Municipio. Además, propicia la comisión de irregularidades en los desembolsos y evita que, de estas cometerse, se puedan detectar a tiempo para fijar responsabilidades.

**Causas**

Atribuimos las situaciones comentadas a que los empleados a cargo de realizar las conciliaciones bancarias y los entonces directores de Finanzas se apartaron de las disposiciones citadas, al no revisar las conciliaciones bancarias ni supervisar adecuadamente las tareas de los empleados encargados de preparar y custodiar las mismas.

**Comentarios de la Gerencia**

La alcaldesa indicó lo siguiente:

> En lo que respecta a lo señalado en el **Inciso a.** relacionado con cheques pendientes de cobro por periodos entre 7 a 12 meses, el Director de Finanzas instruyó al personal encargado de preparar las reconciliaciones bancarias a que estén pendientes de que los cheques expedidos no estén en circulación por más del tiempo establecido. Se incluye copia de la carta enviada por el Director de Finanzas. [*sic*]

> En lo que respecta a las reconciliaciones bancarias no provistas a los auditores según señalado en el **Inciso (b), las mismas** se entregarán a la Oficina de Auditoría Interna para la evaluación correspondiente, según recomendado. [*sic*]

**Véanse las recomendaciones 1 y 5.**

---

**COMENTARIOS ESPECIALES**

En esta sección se comentan situaciones que no necesariamente implican violaciones de leyes y de reglamentos, pero que son significativas para las operaciones de la entidad auditada. También se incluyen situaciones que no están directamente relacionadas con las operaciones de la entidad, las cuales pueden constituir violaciones de leyes o de reglamentos, que afectan al erario.

**Comentario Especial 1 - Déficits presupuestarios en el Fondo Operacional**

**Situación**

a.  La alcaldesa y el presidente de la Legislatura Municipal son responsables de supervisar la ejecución del presupuesto aprobado anualmente, según corresponda. También son responsables de asegurarse de que no se gaste u obligue, en un año fiscal, cantidad alguna que exceda de las asignaciones y de los fondos autorizados por ordenanza o resolución para dicho año, ni otorgar contratos e incurrir en obligaciones en exceso de las partidas consignadas en el presupuesto, a menos que esté expresamente autorizado por ley o por reglamento. El director de Finanzas, quien es nombrado y supervisado por el alcalde, es responsable, entre otras cosas, de administrar el presupuesto general del Municipio.

De haber un déficit en las operaciones municipales, al liquidar cualquier año fiscal, el Municipio está obligado a incluir en el presupuesto del año siguiente los recursos necesarios y suficientes para responder por el crédito correspondiente al año fiscal anterior. Dicho déficit debe aparecer identificado como una cuenta de déficit corriente.

Nuestro examen sobre el particular reveló que el Municipio tenía déficits acumulados en el Fondo Operacional, correspondientes a los años fiscales del 2014-15 al 2016-17, según se refleja en los estados financieros auditados por contadores públicos autorizados:

| Año fiscal | Presupuesto | Déficit | Representación porcentual del presupuesto |
|---|---|---|---|
| 2014-15 | $94,551,766 | $38,865,537 | 41% |
| 2015-16 | $92,805,009 | $37,772,896 | 41% |
| 2016-17 | $88,879,594 | $44,757,255 | 50% |

Situaciones similares se comentaron en los informes de auditoría *M-13-07* del 24 de agosto de 2013 y *M-16-02* del 13 de junio de 2015.

**Efectos**

Operar con déficit en un año fiscal determinado reduce los recursos disponibles para el año fiscal siguiente, debido a que el importe de este tiene que consignarse en el próximo presupuesto con carácter preferente. Por consiguiente, también se pueden afectar adversamente los servicios que se deben prestar a la ciudadanía.

**Comentarios de la Gerencia**

La alcaldesa indicó lo siguiente:

Como hemos indicado en la contestación al Hallazgo 1 esta administración municipal ha tomado las medidas allí descritas, dirigidas a cumplir con el pago de deudas, evitar déficits presupuestarios corrientes, disminuir el déficit acumulado y garantizar la continuidad de los servicios que venimos obligados a brindarles a nuestros ciudadanos. [*sic*]

Sin embargo, a pesar de las medidas tomadas para disminuir el déficit acumulado, no siempre hemos logrado los resultados esperados debido a la influencia de factores externos fuera de nuestro control como la aprobación y/o enmiendas de leyes en detrimento de las finanzas municipales, como lo son; las imposiciones del Gobierno Central del pago de energía eléctrica de ciertas facilidades municipales, aumentos en las tarifas del agua, aumentos escalonados progresivos en las tasas de aportación patronal del Sistemas de Retiro del Gobierno, la imposición de aportaciones especiales adicionales a los municipios dirigidas a solventar los déficit actuariales del Fondo de Retiro y la prevalencia de una economía en recesión. [*sic*]

Dicho panorama económico difícil empeoró a partir del año fiscal 2017-2018 tras el paso de los Huracanes Irma y María por nuestra isla en septiembre de 2017, lo que provocó la pérdida de ingresos a negocios, debido principalmente, a la falta de energía eléctrica y a la inestabilidad de los sistemas de telecomunicaciones. Esto ocasionó, entre otras cosas, que los recaudos por concepto de las contribuciones de la propiedad mueble e inmueble disminuyeran y que el Centro de Recaudaciones de Ingresos Municipales tuviera que reducirnos las remesas del año fiscal 2017-2018. De otra parte, la eliminación de los ingresos de transferencias del Gobierno Central (Subsidios) a los municipios representó para Ponce una disminución en los ingresos por concepto de las contribuciones sobre la propiedad de $6,547,555 en el año fiscal 2017-2018 y una disminución similar para el año fiscal corriente. [*sic*]

La imposición a los municipios del llamado PAYGO ha representado otro duro golpe a los ayuntamientos y en el caso de Ponce el impacto es de sobre $7.3 millones anuales. [*sic*]

Aunque los déficits acumulados en el Fondo General para los años fiscales 2014-2015 al 2016-2017 fluctuaron entre $37.7 y 44.7 millones, los déficits acumulados combinados de todos los fondos para los años 2014-2015, 2015-2016 y 2016-2017 los ascendieron a $15,115,600, $12,920,154 y $15,087,409, respectivamente. [*sic*]

El presidente de la Legislatura indicó lo siguiente:

La Administración Municipal ha tomado varias medidas de austeridad impuestas que han amortiguado y mitigado parte del déficit. [*sic*]

**Véanse las recomendaciones 1, 6 y 9.**

**Comentario Especial 2 - Préstamos realizados a través de emisiones de bonos para cubrir deficiencias de efectivo**

**Situación**

De septiembre de 2013 a abril de 2014, el Municipio obtuvo del BGF tres préstamos por $21,330,000. **[Véase el ANEJO 1]** De estos, examinamos uno por $10,040,000 realizado el 7 de octubre de 2013, para el pago de deudas contraídas con entidades gubernamentales y proveedores del Municipio. Este fue autorizado por la Legislatura Municipal.

A continuación, presentamos el detalle:

| Entidades Gubernamentales | Importe |
|---|---|
| ASR (Aportación) | $ 3,225,057 |
| AAA | 2,000,000 |
| ASR (Pensionados) | 712,526 |
| ASG | 1,500 |
| Subtotal | $ 5,939,083 |
| **Entidades Privadas y Otros Gastos** | |
| Proveedores para el recogido, el manejo y la disposición de desperdicios sólidos y escombros, servicios profesionales y otros proveedores | $ 4,060,917 |
| Gastos de financiamiento | 40,000 |
| Subtotal | $ 4,100,917 |
| **Total** | $10,040,000 |

Consideramos que solicitar préstamos para el pago de deudas y obligaciones presupuestarias corrientes no es una buena práctica administrativa, ya que se cubre el pago de unas deudas de corto plazo con unas a largo plazo. Al 30 de junio de 2016, la deuda del Municipio con el BGF era $314,322,576, según los estados financieros auditados por contadores públicos autorizados.

Para los años fiscales del 2012-13 al 2014-15, el Municipio no tomó medidas efectivas para cubrir las deficiencias en los fondos operacionales ni para aumentar la capacidad de ingresos según los términos y las condiciones que se disponen en la *Resolución CEFM-2009-63* del Comité

de Evaluación de Financiamientos Municipales del BGF. Esto, debido a que en dicho período formalizó préstamos para cubrir gastos y deudas que son producto de las operaciones del Municipio y que deben ser presupuestadas a base de los estimados de recaudos para dichos años y del establecimiento de medidas de control de gastos. **[Véase el Hallazgo 1]**

Una situación similar se comentó en el *Informe de Auditoría M-15-22*.

### Efectos

La situación comentada agrava la situación fiscal y el margen prestatario del Municipio, por lo que se reducen los recursos disponibles para los años fiscales siguientes. Esto, debido a que el importe de las deudas relacionadas con los gastos operacionales de los años indicados tienen que consignarse en los próximos presupuestos con carácter preferente. Por consiguiente, también se afectan adversamente los servicios que se deben prestar a la ciudadanía.

### Comentarios de la Gerencia

La alcaldesa indicó lo siguiente:

> En la contestación al Hallazgo 1 describimos ampliamente el trasfondo histórico fiscal del Municipio de Ponce desde el 2009 hasta el presente. Debemos recalcar que al asumir la administración municipal en el año 2009, heredamos una situación económica precaria en las finanzas municipales que nos obligó a buscar alternativas que nos permitieran conseguir los recursos necesarios para operar y recurrir a los mecanismos permitidos en ley para cumplir con los pagos de las deudas atrasadas con suplidores y agencias gubernamentales, a la vez que pudiéramos darle continuidad a los servicios que venimos obligados a ofrecerle a nuestros constituyentes. [*sic*]

> Simultáneamente, el País ya estaba viéndose severamente afectado por la peor crisis fiscal y económica en la historia moderna que limitaba y continúa limitando la capacidad del Gobierno Central, sus sub-divisiones y de los municipios para atender de manera adecuada las necesidades básicas de sus residentes. [*sic*]

> Las circunstancias antes descritas nos obligaron a recurrir al Banco Gubernamental de Fomento en octubre de 2013 para tomar un préstamo, entre otras medidas, para pagar deudas con entidades gubernamentales y varios suplidores, de conformidad con

la Ley Núm. 64-1996 "Ley de Financiamiento Municipal". Dicho préstamo se realizó y se aprobó de acuerdo a las leyes y reglamentos vigentes por los comités de crédito del Banco Gubernamental de Fomento de Puerto Rico (BGF). [*sic*]

El presidente de la Legislatura indicó lo siguiente:

La Administración informó que se realizó un préstamo al Banco Gubernamental de Fomento en octubre de 2013 para pagar deudas con entidades gubernamentales y varios suplidores, de conformidad con la Ley 64 – 1996 y que dicho préstamo se realizó y se aprobó conforme las leyes y reglamentos vigentes. [*sic*]

**Véanse las recomendaciones 1, 7 y 9.**

**Comentario Especial 3 - Recomendaciones de recobro no atendidas de los informes de auditorías anteriores**

**Situación**

Al 30 de junio de 2017, no se habían recobrado $310,209 correspondientes al *Informe de Auditoría M-16-49*.

La alcaldesa indicó lo siguiente:

El Municipio de Ponce ha realizado gestiones de cobros para las deudas señaladas. La mayoría de las deudas tienen al menos cinco (5) años de vencidas, por lo que evaluaremos si se cumplen con todos los requisitos establecidos en el Artículo 6.005 (j) de la Ley Núm. 81-1991 "Ley de Municipios Autónomos de Puerto Rico", para solicitarle a la Honorable Legislatura Municipal su aprobación para declararlas incobrables.

**Véanse las recomendaciones 1, 8 y 9.**

---

**RECOMENDACIONES**

**Al director de la Oficina de Gerencia y Presupuesto**

1.   Ver que la Oficina de Gerencia Municipal se asegure de que el Municipio cumpla con el *Plan de Acción Correctiva* establecido por esta Oficina. **[Hallazgos del 1 al 3 y comentarios especiales del 1 al 3]**

**A la alcaldesa**

2.  Tomar las medidas administrativas necesarias para que, en lo sucesivo, los pagos a las agencias gubernamentales se remesen dentro del tiempo establecido, y así evitar el pago de multas, intereses y recargos, y otras situaciones adversas para el Municipio y sus empleados. **[Hallazgo 1]**

3.  Remitir a la Legislatura Municipal las copias de las resoluciones ejecutivas emitidas para autorizar transferencias de crédito entre partidas presupuestarias, y ver que no se repita una situación similar. **[Hallazgo 2-a.1)]**

4.  Asegurarse de que las transferencias de crédito entre partidas se autoricen, luego de que la directora de Finanzas emita las certificaciones de los sobrantes requeridas, en las que se detalle la asignación presupuestaria, las obligaciones y los desembolsos, y el crédito disponible en cada partida afectada. **[Hallazgo 2-a.2)]**

5.  Ejercer una supervisión eficaz sobre las funciones de la directora de Finanzas, para que esta se asegure de que:

    a.  Se cancelen los cheques en circulación por más de seis meses. **[Hallazgo 3-a.]**

    b.  Se localicen las conciliaciones bancarias que no fueron suministradas para examen, y las refiera a la Oficina de Auditoría Interna para su evaluación. **[Hallazgo 3-b.]**

6.  Continuar con las medidas administrativas necesarias para desarrollar un plan de austeridad que elimine el déficit presupuestario en el Fondo Operacional y los sobregiros en los fondos municipales. **[Comentario Especial 1]**

7.  Tomar las medidas administrativas necesarias para que, en lo sucesivo, no se soliciten préstamos para cubrir deficiencias en efectivo y para aumentar los ingresos operacionales. **[Comentario Especial 2]**

24

M-19-30

8. Recobrar, si aún no se ha hecho, los $310,209 que se indican en el **Comentario Especial 3**, de los funcionarios concernientes, los contratistas, los proveedores y otros o, si aplica, de las fianzas de los funcionarios responsables.

**Al presidente de la Legislatura Municipal**

9. Informar a la Legislatura Municipal sobre las situaciones que se comentan en los **hallazgos 1 y 2, y comentarios especiales del 1 al 3**, de modo que se adopten las medidas correctivas que procedan, y se establezca un plan de seguimiento para que las situaciones mencionadas se atiendan y no se repitan.

**APROBACIÓN**

A los funcionarios y a los empleados del Municipio de Ponce, les exhortamos a velar por el cumplimiento de la ley y la reglamentación aplicables, y a promover el uso efectivo, económico, eficiente y ético de los recursos del Gobierno en beneficio de nuestro Pueblo. Les agradecemos la cooperación que nos prestaron durante nuestra auditoría.

Oficina del Contralor de Puerto Rico

Aprobado por:

**ANEJO 1**

MUNICIPIO DE PONCE

**PRÉSTAMOS FORMALIZADOS CON EL BANCO GUBERNAMENTAL
DE FOMENTO PARA PUERTO RICO PARA EL AÑO FISCAL 2013-2014 [Comentario Especial 2]**

| Fecha | Propósito | Importe |
|-------|-----------|---------|
| septiembre de 2013 | Adquirir e instalar equipos de plataforma de data y telefonía (485,000), pagar los gastos de financiamiento, y otros propósitos ($5,000) | $   490,000 |
| octubre de 2013 | Pagar deudas con agencias gubernamentales y proveedores ($10,000,000) y gastos de financiamiento ($40,000). | 10,040,000 |
| abril de 2014 | Cancelar línea de crédito de remodelación de la Antigua Plaza del Mercado Juan Bigas para convertirla en un centro de servicios integrados ($10,000,000) y los gastos de financiamiento, y otros propósitos ($800,000). | 10,800,000 |
| | **TOTAL** | $21,330,000 |

26                                                                                              M-19-30

ANEJO 2

MUNICIPIO DE PONCE

**FUNCIONARIOS PRINCIPALES DEL MUNICIPIO
DURANTE EL PERÍODO AUDITADO**[2]

| NOMBRE | CARGO O PUESTO | PERÍODO | |
|---|---|---|---|
| | | DESDE | HASTA |
| Hon. María E. Meléndez Altieri | Alcaldesa | 1 jul. 14 | 30 jun. 17 |
| Sr. Félix D. Camacho Nogués | Administrador de la Ciudad | 2 nov. 16 | 30 jun. 17 |
| Sr. Eliezer Velázquez Quiles | " | 1 jul. 14 | 1 nov. 16 |
| Sra. Yolanda Cruz Medina | Directora de Finanzas y Presupuesto | 1 feb. 17 | 30 jun. 17 |
| Sra. Jessica Torruellas Rivera | " | 16 sep. 15 | 31 ene. 17 |
| Sr. José Rivera Aponte | Director de Finanzas y Presupuesto[3] | 18 feb. 15 | 22 ago. 15 |
| Sra. Ramona Pacheco Machado | Directora de Finanzas y Presupuesto | 1 jul. 14 | 16 nov. 14 |
| Sra. Jessica Nieves Soto | Secretaria Municipal | 2 feb. 17 | 30 jun. 17 |
| Sr. Cruz Maldonado Pérez | Secretario Municipal | 1 jul. 14 | 1 feb. 17 |
| Sra. Magdiel Lugo Figueroa | Directora de Auditoría Interna | 1 jul. 14 | 30 jun. 17 |
| Sra. Marie R. Battistini Ramírez | Directora de Recursos Humanos | 1 jun. 17 | 30 jun. 17 |
| Sr. Héctor Maldonado Vargas | Director de Recursos Humanos | 16 feb. 17 | 22 may. 17 |
| Sra. Raquel Nuñez Alicea | Directora de Recursos Humanos[4] | 23 jun. 16 | 15 feb. 17 |
| Sra. Janice M. González Galarza | " | 1 jul. 14 | 1 ene. 16 |
| Lcda. Marieli Paradizo Pérez | Directora de Servicios Legales | 15 dic. 16 | 30 jun. 17 |

---

[2] No se incluyen interinatos menores de 30 días.

[3] Del 17 de noviembre de 2014 al 17 de febrero de 2015, el puesto estuvo vacante.

[4] Del 2 de enero al 22 de junio de 2016, el puesto estuvo vacante y el Departamento estuvo a cargo de la Lcda. Carmen Torres Rodríguez, directora de Servicios Legales.

M-19-30                                                                                                    27

Continuación **ANEJO 2**

| NOMBRE | CARGO O PUESTO | PERÍODO | |
|---|---|---|---|
| | | DESDE | HASTA |
| Lcda. Carmen E. Torres Rodríguez | Directora de Servicios Legales | 11 jul. 14 | 15 nov. 16 |
| Sr. Máximo Sánchez Soldevila | Director de Obras Públicas | 1 dic. 15 | 30 jun. 17 |
| Sra. María Torres Vargas | Directora de Obras Públicas | 2 sep.15 | 30 nov. 15 |
| Sra. Lilibeth Torres Astacio | " | 1 abr. 15 | 1 sep. 15 |
| Sr. Javier Medina Mojica | Director de Obras Públicas | 1 jul. 14 | 1 mar. 15 |

28                                                                           M-19-30

**ANEJO 3**

MUNICIPIO DE PONCE

**FUNCIONARIOS PRINCIPALES DE LA LEGISLATURA MUNICIPAL
DURANTE EL PERÍODO AUDITADO[5]**

|                              |                  | **PERÍODO**  |            |
| ---------------------------- | ---------------- | ------------ | ---------- |
| **NOMBRE**                   | **CARGO O PUESTO** | **DESDE**  | **HASTA**  |
| Hon. Rafael A. Mateu Cintrón | Presidente       | 1 ene. 17    | 30 jun. 17 |
| Sr. José G. Figueroa Torres  | "                | 1 jul. 14    | 31 dic. 16 |
| Sra. Marieli Santiago Gautier | Secretaria      | 1 ene. 17    | 30 jun. 17 |
| Sra. Yasmín Adaime Maldonado | "                | 1 jul. 14    | 31 dic. 16 |

---

[5] No se incluyen interinatos menores de 30 días.

**MISIÓN**

Fiscalizar las transacciones de la propiedad y de los fondos públicos, con independencia y objetividad, para determinar si se han realizado de acuerdo con la ley, y atender otros asuntos encomendados.

Promover el uso efectivo, económico, eficiente y ético de los recursos del Gobierno en beneficio de nuestro Pueblo.

**PRINCIPIOS PARA LOGRAR UNA ADMINISTRACIÓN PÚBLICA DE EXCELENCIA**

La Oficina del Contralor, a través de los años, ha identificado principios que ayudan a mejorar la administración pública. Dichos principios se incluyen en la *Carta Circular OC-18-19* del 27 de abril de 2018, disponible en nuestra página en Internet.

**QUERELLAS**

Las querellas sobre el mal uso de la propiedad y de los fondos públicos pueden presentarse, de manera confidencial, personalmente o por teléfono al (787) 754-3030, extensiones 2801 o 2805, o al 1-877-771-3133 (sin cargo). También se pueden presentar mediante el correo electrónico querellas@ocpr.gov.pr o mediante la página en Internet de la Oficina.

**INFORMACIÓN SOBRE LOS INFORMES DE AUDITORÍA**

En los informes de auditoría se incluyen los hallazgos significativos determinados en las auditorías. En nuestra página en Internet se incluye información sobre el contenido de dichos hallazgos y el tipo de opinión del informe.

La manera más rápida y sencilla de obtener copias libres de costo de los informes es mediante la página en Internet de la Oficina.

También se pueden emitir copias de los mismos, previo el pago de sellos de rentas internas, requeridos por ley. Las personas interesadas pueden comunicarse con el administrador de documentos al (787) 754-3030, extensión 3400.

**INFORMACIÓN DE CONTACTO**

*Dirección física:*
105 Avenida Ponce de León
Hato Rey, Puerto Rico
Teléfono: (787) 754-3030
Fax: (787) 751-6768

*Dirección postal:*
PO Box 366069
San Juan, Puerto Rico 00936-6069

*Internet:*
www.ocpr.gov.pr

*Correo electrónico:*
ocpr@ocpr.gov.pr