# EXHIBIT 41

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 2 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 1 of 28

**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF JUSTICE**
**COURT OF FIRST INSTANCE**
**SAN JUAN SUPERIOR PART**

| | |
|---|---|
| AUTONOMOUS MUNICIPALITY OF SAN JUAN represented by its Mayor CARMEN YULIN CRUZ-SOTO<br><br>Plaintiff<br><br>Vs.<br><br>COMMONWEALTH OF PUERTO RICO through its Secretary of Justice, WANDA VAZQUEZ-GARCED; TREASURY DEPARTMENT OF PUERTO RICO and RAUL MALDONADO-GAUTIER, in his official capacity as Secretary of the Treasury Department of Puerto Rico; RETIREMENT SYSTEM OF THE EMPLOYEES OF THE GOVERNMENT OF PUERTO RICO ADMINISTRATION and LUIS COLLAZO-RODRIGUEZ in his official capacity as Administrator and Executive Director of the Retirement System; RETIREMENT BOARD OF THE GOVERNMENT OF PUERTO RICO and CHRISTIAN SOBRINO-VEGA, in his dual official capacity as President of the Retirement Board and Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF)<br>Defendants | CIVIL NO. SJ2019CV05411 (904)<br><br><br><br><br><br>RE: PRELIMINARY AND PERMANENT INJUNCTION, MANDAMUS AND DECLARATORY JUDGMENT |

**MOTION TO DISMISS AND, IN THE ALTERNATIVE, IN OPPOSITION TO PRELIMINARY AND PERMANENT INJUNCTION AND MANDAMUS PETITION**

**TO THE HONORABLE COURT:**

COME NOW, the Retirement System of the Employees of the Government of Puerto Rico Administration (hereinafter, "**Retirement**"), Luis M. Collazo-Rodriguez, Administrator and

1

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 3 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 2 of 28

Executive Director of the Retirement System, the Retirement Board of the Government of Puerto Rico and Christian Sobrino-Vega, President of the Retirement Board and Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority (jointly, "**Appearing Codefendants**), through the undersigned legal counsel, and very respectfully, state, allege and pray:

## I.      <u>INTRODUCTION</u>

The controversy herein concerns the reluctance of the Municipality of San Juan (hereinafter "**San Juan**" or "the **Municipality**")-a governmental entity recognized by the Supreme Court of Puerto Rico- as a creature of the State-to comply with its legal payment obligations with the retirees and beneficiaries of the retirement system of the Government, among which are the policemen, teachers and judges, all dedicated public servants.

Through the Pay-As-You-Go ("**Pay-Go**") System established through Act No. 106 of August 23, 2017, known as the Act to Guarantee Payment to Public Servants and codified in 3 LPRA §§ 9351-9590 ("**Act 106-2017**") the General Fund of the Government of Puerto Rico assumed the payments that the Retirement System of the Employees of the Government of Puerto Rico, the Teachers Retirement System and the Judicature Retirement System could not pay to the retirees anymore due to their insolvency. Act 106-2017 imposed the Government, the Municipalities, the Public Corporations and other entities that are considered employers under any of the Retirement Systems the obligation to pay the Pay-Go Fee to feed the Account for the payment of the Accrued Pensions, which is a segregated account kept by the Treasury Department only to ensure the payment to all the retirees of the government.

**The Municipality expects to avoid its payment obligation to the Puerto Rican retirees and beneficiaries through the preliminary and permanent injunction petition** although it is

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 4 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 3 of 28

well known that it is an extraordinary writ that is only appropriate at times when a party may suffer irreparable damage, and in any case, is not favored in claims where the alleged damage to be endured is monetary in nature. Also, the Municipality expects this Honorable Court to issue a *mandamus* to order the production of the Accrued Pensions Registry with the purpose of using it to object the invoices that evidence its payment obligations with the retirees, when it is a Registry created by law for the benefit of the retirees and beneficiaries. **In other words, San Juan wants access to a Registry which sole purpose is to benefit the retirees, to use it for the detriment of the retirees**. In any case, the Registry would not shed any light on the Municipality's claims. It guarantees that the retirees are paid what they are owed and does not disclose any information about which governmental entity is responsible for the payment of their pension, which is what the Municipality wants to put in controversy.

Lastly, the Sworn Complaint reveals that the Municipality has only found and informed alleged irregularities with 23.5% of the retirees to which the great majority Retirement adjudicates the payment responsibility. However, **up to today, and in contravention to the law, the Municipality has refused to pay even one cent of any of the pensions it has the responsibility to pay, including those of which there is no controversy**. Now, the Municipality expects this Honorable Court to validate its illegal action and to provide legal shelter through a preliminary and permanent injunction. It is not correct.

## II.  FACTUAL BACKGROUND

### A.  The crisis in the retirement systems and Act. No. 106-2017

For the year 2017, the three main retirement systems of the public employees of Puerto Rico confronted a great fiscal emergency. This, because its liquid assets were quickly depleting


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 5 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 4 of 28

and consequently the retirement systems would not have the necessary resources to meet their payment obligations for the government's retirees.

Such crisis in the retirement systems was caused, among other factors, by inadequate employer contributions, passing of special laws, early retirement programs, changes in the life expectancy of participants, poor administration and reforms throughout the years that were insufficient to cut the financial deficiencies they had.

The fiscal crisis of the government of Puerto Rico in general led the Congress of the United States to pass the Public Act 114-187, known as the *Puerto Rico Oversight, Management and Economic Stability Act*, 48 USC §§ 2101-2241 ("**the PROMESA Act**, for its English acronym). The PROMESA Act delegated certain powers of fiscal supervision over such entities to the Financial Oversight and Management Board for Puerto Rico ("**Oversight Board**"). Afterwards, on October 30, 2016, the Oversight Board appointed, in relevant part, the Government of Puerto Rico and the three retirement systems as "covered entities", subject to its fiscal oversight.

Due to the insolvency of the retirement systems, and in accordance to the Fiscal Plan of the Government of Puerto Rico certified by the Oversight Board, through Act 106-2017, the General Fund of the Government of Puerto Rico assumed the responsibility of paying the amounts that the retirement systems could not assume to make the corresponding payments to the retirees. That was accomplished through the establishment of the Pay-Go System, through which the disbursements for all the current pensions of the retirement systems are continued to be made, using the funds of the General Fund for it.

Specifically, the funds to make such disbursements come from the Account for the Payment of the Accrued Pensions created under the custody of the Treasury Department as a trust fund separate from the general assets and accounts of the Government. 3 LRPA § 9541. It, in turn feeds

4

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

from other sources, from the Pay-Go Fee imposed to the Government, the Municipalities, the Legislative Branch, the Administration of the Courts, the Public Corporations and other covered entities, which is equivalent to the amount that is effectively paid to the Retirees and Beneficiaries that come from each covered entity. Id.

In regards to the collection procedure, Act 106-2017 simply provides that "[t]he Treasury Department Secretary, or the person or entity that he appoints, shall be authorized to collect the "Pay-Go" Fee." Id. The law does not provide that a procedure will be created for such collection, and does not force the Treasury Department Secretary nor any other officer to create such procedure.

Lastly, the law provides that regardless of the payment of the Pay-Go Fee on the part of the employer, the disbursement of the benefits of all the retirees and beneficiaries are guaranteed by the General Fund "with the responsibility of the entities of issuing the payment of such Fee remaining, in compliance with their obligations under this Act". Id.

It is necessary to state that Act 106-2017 also provides for the creation of a Registry of Accrued Pensions that is a Registry of each participant, beneficiary and retiree that reflects the amounts that correspond to each one as Accrued Pension, per their respective Retirement Systems. 3 LPRA § 9542. The content of this Registry, after being created, must be notified to each participant, beneficiary and retiree so that they validate the certainty of what is stipulated therein. Id. There is nothing stated in the law about producing that registry to the employers.

Finally, Act 106-2017 also automatically and permanently constitutes a preferential legal lien on the uncompromised remainder of the property taxes and other income supervised by the Municipal Revenue Collection Center ("CRIM') in favor of the Retirement Board and/or the Administrating Entity for the collection of the Indebted Contributions. 3 LPRA § 9555.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**B. The circular letters No. 1300-46-17 and CC-OCFO-2019-01**

To comply with Act 106-2017, both the Treasury Department and the Office of the Main Officer of Public Finances of the Government of Puerto Rico have issued circular letters that provide guidance to the secretaries of Government, the Legislative Branch, the Judicial Branch, agency heads, executive directors, presidents of public corporations and mayors. These letters establish, in practical terms, how the Pay-Go Fee imposed on the central government, its agencies and instrumentalities, the municipalities and public corporations ("the employers") will work.

In relevant part, Circular Letter No. 1300-46-17 of the Treasury Department establishes that the employers will be invoiced a monthly fee to cover the benefits to its retirees. The Circular Letter highlights that **"[t]his is with the purpose of not affecting the payment to our retirees**". Circular Letter No. 1300-46-17, in page 1 (emphasis provided). It continues, **"[i]t is necessary** for the Treasury Department to have the cash resources necessary to make such payments". Id. (Emphasis provided). It also establishes that in case that a municipality does not provide to its corresponding System the funds of the Pay-Go Fee, within the thirty (30) days following the withholding, the CRIM will be asked to remit to the Treasury Department the indebted amounts.

On its part, Circular Letter CC-OCFO-2019-01 circulated on September 4, 2018, advises the employers that have received invoices sent by Retirement and not made the corresponding payment that they must pay them on or before September 30, 2018. Circular Letter CC-OCFO-2019-01, at page 2.

On the other hand, **the circular letter provides an informal process not required by Act 106-2017**, to follow in case a governmental entity considers that it has been erroneously invoiced for some retiree or beneficiary who is not its responsibility. The circular letter establishes that the governmental entity "must exclude them from the total amount of the payment until (Retirement)

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

issues a decision regarding the claim filed". <u>Id</u>. Also, the letter established a term of ninety (90) days for the employers to file claims about Pay-Go Fee invoices corresponding to the fiscal year 2017-18 and another term of ninety (90) days for Retirement to issue a decision about it. Once the claims are decided, the employers will have a term of forty-five (45) days to issue the payment corresponding to Retirement's decision regarding the claim.

In regards to the invoices after the month of September 2018, the circular letter provides that the employers will have until the last calendar day of each month to issue the payment corresponding to the invoice of the month and to file any claim regarding the invoice. The circular letter clearly establishes that **"[i]f no claim is received within the term provided it will be understood that the invoice is correct and that the payment is due and payable in its totality"**. <u>Id</u>. (emphasis provided). Also, the letter stresses that the employers "**must pay the invoices for those retirees and beneficiaries of which there is no claim"**. <u>Id</u>. (emphasis provided).

**C. The facts that are not in controversy**

The following facts are admitted by the Municipality of San Juan in its Sworn Complaint and are not in controversy:

1. Act 106-17 transferred the responsibility of paying the pensions of the retirees and beneficiaries to the employers of the ex-employees, like the Municipality of San Juan. Sworn Complaint¶17.

2. The Municipality requests the production of the Registry of Accrued Pensions to corroborate that the calculation of the invoice for the Pay-Go Fee is correct. Sworn Complaint¶¶20, 43, 73. The legal provision, cited by the Municipality establishes that the Registry "will be notified to each Participant, Beneficiary and Retiree". The Municipality itself recognizes that the "content of the Registry will be notified to each

7

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

retiree" and establishes a process so that **the retiree**, not the employer, requests to correct errors in it. Sworn Complaint ¶21. The cited legal provision does not establish a duty of notification to the municipalities or any legal procedure for a municipality to request correcting errors in it.

3. As of August 18, 2018, the Municipality received the invoices corresponding to each of the months from July 2017 until June 2018. Afterwards, it has continued receiving invoices for the Pay-Go Fee. Sworn Complaint ¶¶25, 40.

4. According to the invoices provided, the Municipality was responsible for 4,591 retirees and beneficiaries. However, the Municipality claimed that 1,083 of 4,591 retirees and beneficiaries (23.58% of the total) were not its responsibility. Sworn Complaint¶¶25, 27-28.

5. On November 30, 2018, after the Circular Letter CC-OCFO-2019-01 that established a procedure to claim erroneous invoicing for the invoices of the fiscal year 2017-18 for the Pay-Go Fee, the Municipality of San Juan sent a letter to Retirement with the referenced claims. This was answered on December 11, 2018 by Retirement that issued a decision in regards to it, accepting some objections of the Municipality and denying others. Sworn Complaint ¶¶ 30, 33, 34.[1]

6. Due to nonpayment by the Municipality of the total amount of all the invoices provided, Retirement certified a debt to the CRIM of $52,660,761.30 attributable to the Municipality for the Pay-Go Fee for the fiscal year 2017-18. Sworn Complaint¶47.

**B. The causes of Action of the Municipality of San Juan**

---

[1] Specifically, from the 4,591 retirees and beneficiaries, the Municipality of San Juan filed claims regarding 1,083 individuals. However, Retirement certified to the Municipality that of 1,083 only 236 were not its responsibility, which corresponds to 5% of the responsibility of the Pay-Go Fee.

8



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS   Doc#:7702-42   Filed:06/27/19   Entered:06/27/19 14:25:13   Desc:
CERTIFIED TRANSLATION   Exhibit 41   Page 10 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 9 of 28

In its Sworn Complaint, the Municipality of San Juan requests that this Honorable Court issues:

(1) A writ of mandamus and a preliminary and permanent injunction to compel the appearing codefendants to produce and keep the Accrued Pensions Registry;

(2) A declaratory judgment and preliminary and permanent injunction to compel appearing codefendants to grant the Municipality of San Juan access to the information related to the amount of the invoices for the Pay-Go Fee;

(3) A declaratory and preliminary and permanent injunction to invalidate the procedure created by Circular Letter CC-OCFo-2019-01, and

(4) A preliminary and permanent injunction over any collection action of the Pay-Go Fee.

For the following reasons, this Honorable Court must dismiss each and every one of the causes of action of the Municipality of San Juan.

### III.   ARGUMENT

A.   **The Municipality of San Juan does not meet the requirements for the issuance of the extraordinary writ of mandamus.**

**1.   Criteria for the issuance of the writ of mandamus.**

The writ of mandamus is highly privileged which is addressed to some person or corporation in order to require the compliance with an action stated in that writ and that is within their tasks or duties. Article 649 of the Code of Civil Procedure of Puerto Rico, 32 LPRA §3421. "Such writ does not confer new authority and the party it compels must have the authority to be able to comply with it." Id. The writ of mandamus also only proceeds when the law compels the person or corporation to a duty resulting from an employment, position or public duty. Article 650 of the Code of Civil Procedure, 32 LPRA §3422. This duty is the one we refer to **as ministerial duty.**

9

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

For a duty to qualify as ministerial, however, it must not allow any discretion of its exercise on the part of the employee and therefore has to be mandatory and imperative. Asociacion de Maestros de Puerto Rico v. Secretario de Educacion, 178 DPR 253 (2010); Noriega v. Hernandez Colon, 135 DPR 406, 447-448 (1994). The Supreme Court of Puerto Rico has described such ministerial duty as an "act which in its execution there is no exercise of any discretion on the part of the person that is obligated to comply with it". Alvarez de Choudens v. Tribunal Superior, 103 DPR 235, 242 (1975).

Also, an act is ministerial when the law states and defines the duty that must be complied with, with such precision and certainty that there is no room for exercise of discretion or judgment. On the contrary, when the action that has to be carried out involves the exercise of discretion or judgment it is not considered merely ministerial, and therefore is out of the scope of the writ. Partido Popular v. Junta de Elecciones, 62 DPR 745, 749 (1944).

Pursuant to the definition of ministerial duty, for a writ of mandamus to be issued the obligation to act must be clearly defined by the law and the law should, not only authorize the action required from the officer, but demand it: the duty must be clear and indisputable. Id. Additionally, this duty must be defined with precision and certainty so as not to leave room for the exercise of discretion or judgment of the officer. Asociacion de Maestros, 178 DPR at page 264; Espina v. Calderon, 75 DPR 76, 84 (1953); Gonzalo Rivera v. Hernandez Ramirez, 70 DPR 549, 554 (1949). This right must be clear and apparent in the law that is invoked to justify the issuance of the mandamus. Hernandez Agosto v. Romero Barcelo, 112 DPR 407, 418 (1982); Davila v. Superintendente de Elecciones, 82 DPR 264 (1960). Also it comes from Rule 54 of the Rules of Civil Procedure, 32 LPRA Ap. V, that provides that the writ of mandamus only proceeds if the

10

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 12 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 11 of 28

right to demand the immediate execution of an action is evident and when no excuse can be given to not carry it out.

In Asociacion de Maestros de Puerto Rico v. Secretario de Educacion, supra, the Supreme Court of Puerto Rico established that the petitioner has the evidentiary burden to establish the existence of a ministerial duty to justify the issuance of a mandamus. Asociacion de Maestros, 178 DPR at page 269. Such evidentiary burden is satisfied providing the evidence of a clear, specific and imperative right-that does not allow the exercise of discretion on the part of the officer called to comply-in favor of the petitioner.

The mandamus is only appropriate if there is an urgent interest of the petitioner and a prompt and definitive solution is required. Davila, 82 DPR at pages 283-284. Therefore, for a writ of mandamus to be issued, it is not enough that the petitioner has a clear right to what is requested and that the defendant has the corresponding obligation to allow the exercise of that right. Id. It is a highly privileged writ and the courts necessarily have to measure all concurrent circumstances, both when determining if the writ should be issued or not and when setting the content of the order, once the initial matter is decided affirmatively. Id.

Therefore, the Supreme Court, in Asociacion de Maestros, stated that:

> the issuance of a mandamus must not be the product of a mechanic or *ex debito justitiae* exercise. The courts must make a balance between the interests in conflict without omitting the social and individual utility of the decision. **It is necessary to determine the effects the issuance of the writ will have in the adequate compliance of the responsibilities of the affected officer and how it will benefit the requesting party.** The finest possible balance between the different interests of conflict must be made.

Asociacion de Maestros, 178 DPR at page 268 (citations omitted) (Emphasis provided).

11

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 13 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 12 of 28

Therefore the Supreme Court established that the most important factor in the decision of whether or not to grant the writ of mandamus is the possible impact that the mandamus will have on the public interest. Id.; Noriega, 135 DPR at page 448. To that effect, the Supreme Court has also stated that "the discretion of the writ and its relationship with the remedy in equity, implies then that the court is not tied to a fixed remedy but that it can design a remedy compatible with the public interests involved. Asociacion de Maestros, 178 DPR at pages 268-269 (citations omitted). And, pursuant to the foregoing, even if the ministerial duty existed, the mandamus can be denied if the negative impact to the public interest would be greater than the positive impact, if any that the issuance of the mandamus would have for the movant. Id. At page 269.

**2. The writ of mandamus should not be issued because the appearing codefendants do not have a ministerial duty towards the Municipality.**

The Municipality of San Juan, as a First Cause of Action, requests that this Honorable Court "declares that the omission of the defendants to produce the Registry described in Article 2.2 of Act 106 is illegal". Sworn Complaint ¶73. It further alleges that "[t]he production of the Registry and the subordination of the collection until such condition imposed by law is satisfied is exclusively a matter of law that does not allow any discretion on the part of defendants". Sworn Complaint ¶74. Consequently, it requests that the writ of mandamus be issued ordering the defendants to create and disclose the referenced Registry of Accrued Pensions.

In accordance with the discussion of the preceding section, the fundamental element for granting a writ of mandamus is the existence of a ministerial duty. The evidentiary burden to establish the existence of a ministerial duty is satisfied presenting evidence of a clear, specific and imperative right **in favor of the petitioner**. That is, it is the petitioner, **in this case the Municipality of San Juan**, who has to show that in law-in this case Article 2.2 of Act 106-2017-there is a ministerial duty to it.

12

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 14 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 13 of 28

The Municipality cannot point to any part of the provision that creates the Registry of Accrued Pensions that creates a ministerial duty towards the Municipality, because there is no part that has that duty. The referenced provision provides that the Registry is for the benefit of the Participants, Beneficiaries and Retirees, who will see there "in detail the amounts that each is entitled to as Accrued Pension according to their respective Retirement Systems". 3 LPRA §9542. When the Registry is established "[t]he payments corresponding to the accrued pensions they are entitled to will be provided in accordance to the contents of the registry". Id. Once the Registry is produced, it "will be notified to each participant, beneficiary and retiree". Id. After the creation of the Registry and its notification, the retirees-**not a Municipality or any other employer**-will have a term to present evidence to Retirement that the information in the Registry is incorrect or inexact. Id. **As a matter of act, the Registry imposes a ministerial duty to the Municipality, it does not create a ministerial duty towards the Municipality**. It establishes that "[t]he Government, **the municipalities**, the Judicial Branch, the Legislative Branch, the public corporations and the Retirement Systems shall, **as part of their ministerial duty**, diligently produce the documents requested by a participant. Id.

Lastly, and as a matter of fact, **there is no provision** in Act 106-2017 where the payment of the Pay-Go Fee is subordinated to the production of the Registry of Accrued Pensions. Therefore, the allegation of the Municipality of San Juan that the foregoing is a matter strictly of law that does not allow any discretion is totally without merit. In fact, Article 2.2 of Act 106-2017, that creates the Registry, never mentions one word about the Pay-Go Fee. That because neither Article 2.2 nor the Registry of Accrued Pensions revolve around the legal responsibility of the employers, like the Municipality, of paying the Pay-Go Fee.

13

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS   Doc#:7702-42   Filed:06/27/19   Entered:06/27/19 14:25:13   Desc:
CERTIFIED TRANSLATION   Exhibit 41   Page 15 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 14 of 28

Consequently, it is easily verifiable that there is no ministerial duty towards the Municipality of San Juan regarding the production of the Registry of Accrued Pensions. The Registry is created for the benefit of the retiree not for his/her detriment. However, the Municipality of San Juan expects to use the Registry of Accrued Pensions to object invoices and avoid its obligation to pay the retirees, among these, municipal employees, teachers and policemen, namely, any public employee whose last employer was the Municipality of San Juan. For all the foregoing, the mandamus petition must be dismissed.

**3.  There is no compelling interest or irreparable damage that justifies granting the mandamus requested by Plaintiff.**

The Municipality of San Juan also does not state any compelling interest that justifies the issuance of the writ of mandamus. The Municipality exposes the appearing codefendants to writs of extraordinary nature and origin such as the injunctions and mandamus without even explaining in its Sworn Complaint why its matter is compelling or would constitute irreparable damage. See Davila, 62 DPR at pages 283-284 (holding that the writ of mandamus should only be issued if the petitioner has a compelling interest).

The truth is that there can be no talk of a compelling interest or irreparable damage to justify granting an extraordinary remedy, for three main reasons. First, certainly there is nothing compelling about the alleged damage that the Municipality of San Juan can suffer, because it has been communicating with Retirement for months, and the last relevant fact in its Sworn Complaint occurred on February 8, 2019, four months ago, when Retirement certified a debt of the Municipality to the CRIM, in accordance to Act 106-2017 and the circular letters, because the Municipality had not paid the totality of all the invoices it had received for the Pay-Go Fee. Sworn Complaint ¶47. That is, nothing has occurred in this controversy that evidences the compelling interest that requires the writ of mandamus.

14

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 16 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 15 of 28

Second, for all the current invoices the Municipality had, and still has an immediate remedy for its objection to comply with its payment obligation for our retirees: it can follow the procedure stipulated in Circular Letter CC-OCFO-2019-01, pay those amounts of the invoices over which there is no controversy and potentially file claims with Retirement for those amounts and beneficiaries over which there is controversy.

Third, the only plausible damage that the Municipality can allege is monetary and this is the reparable damage by excellence. While the mere fact that a claim is monetary does not definitively exclude the irreparable damages it may cause, Mun de Ponce v. Gobernador, 136 DPR 776, 787 (1994), it is not less true that if the Municipality prevails in its argument, it could collect any money it had paid for the Pay-Go Fee. In fact, the recent recovery of debt for Pay-Go Fee did not affect at all the current municipal operations, because it was directed against the uncompromised funds of the Municipality in the CRIM.

For all of the foregoing, the mandamus petition of the Municipality is not appropriate.

## 4. The impact that the writ of mandamus would have on the public interest would be disastrous.

As stated above, the most important factor in the decision of whether to grant or not the writ of mandamus is the possible impact that it would have on public interest. Noriega, 135 DPR at page 448. The Sworn Complaint itself reveals that San Juan wants to subordinate the collection of the Pay-Go Fee to the production of the Registry of Accrued Pensions. As we have discussed, San Juan does not have any right in law to be provided with the Registry, in addition to allow its argument (namely, keep excusing its total nonpayment) would threaten the liquidity of the Account for the payment of Accrued Pensions, which feed from the funds that come in from all employers and consequently would threaten the pensions of all public pensioners. That, because granting a mandamus would begin a race to Court of similarly situated employers, all seeking for the

15

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 17 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 16 of 28

collection of the Pay-Go Fee to be subordinated-or in the case of the Municipality, suspended and its nonpayment excused-to the production of a Registry that the law itself states is not directed towards them and which in no way is related to the responsibility of paying the Pay-Go Fee. Consequently, granting the writ of mandamus would make the application of Act 106-2017 impossible while ruining the fiscal stability of the whole retirement system, which was the precise problem that Act 106-2017 sought to address.

   B. **The Municipality of San Juan does not meet the requirements for the granting of the extraordinary writ of injunction.**

   Having shown that the mandamus petition is not appropriate it is convenient to show that the preliminary and permanent injunction should also not be granted. It is known that the injunction is an *extraordinary remedy* that is appropriate only in exceptional circumstances that require the immediate intervention of a Court to avoid an irreparable damage. Here, the Municipality of San Juan has not even *alleged* facts to show that the necessary criteria for the granting of an *extraordinary* remedy of this type are met. Also, and consistent with a tacit acknowledgement that it does not have the right to such *extraordinary* remedy, the Municipality of San Juan also has not followed the correct procedure to channel a preliminary injunction petition.

   1. **Whether the injunction is appropriate**

   The procedural mechanism of injunction, constitutes a remedy in equity that is addressed to prohibiting or ordering the execution of any determined act, with the particular purpose of avoiding causing imminent prejudice or irreparable damages. See, E.L.A. v. Asoc. De Auditores, 147 DPR 669, 679 (1999). In the case of the preliminary injunction, an order of this kind *pending litigation* is sought **to preserve the *status quo* while the litigation is seen on the merits** so that the defendant's conduct does not cause greater damages to the petitioner during the pendency of the litigation. See Cobos Liccia v. De Jean Packing Co., Inc., 124 DPR 896, 902 (1989)/

16

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 18 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 17 of 28

The Supreme Court has repeated on multiple occasions that the injunction **is a writ that is only appropriate in extraordinary circumstances**. Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409 (2008); E.L.A. v. Asociacion de Auditores, 147 DPR 669 (1999); Garcia v. World Wide Entertainment Co., 132 DPR 378 (1992); APPR v. Tribunal Superior, 103 DPR 903 (1975). Also, the injunction consists of a preliminary or permanent remedy that seeks "to make the substantive right being exercised in the complaint effective". Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 426 (2008).

Therefore, due to its nature, the *injunction* remedy is subsidiary to-and dependent on-the merits of the main claim alleged in the complaint. See David Rive Rivera, Recursos Extraordinarios, 45 (2d ed. 1996). Therefore, it is known that there is no such thing as a case of injunction the same way there is no case of seizure or syndicate". **The injunction is nothing more than a provisional or permanent remedy to make the substantive right exercised by the parties effective".** David Rive Rivera, Recursos Extraordinarios 45 (2d ed. 1996) (emphasis provided).

**In the case of preliminary injunction, it is also clear that it cannot be used to obtain the grant of the final remedy in the merits**. See Purpose and Scope of Preliminary Injunctions, *Wright & Miller*, 11 A Fed. Prac. & Proc. Civ. §2947 (3d ed.) (stating that "when the grant of a preliminary injunction **would effectively rob the court of its decision making power, the request for relief may be treated as one for a permanent injunction**") (Emphasis provided); Benson Hotel Corp. v. Woods, 168 F. 2d 694 (8th Cir. 1948) (holding that "[t]he application for such an injunction does not involve a final determination on the merits; in fact, **the purpose of an injunction pendent lite is not to determine any controverted right, but to prevent a threatened wrong or any further perpetration of injury [...] until the issues can be**

17

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 19 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 18 of 28

**determined after a full hearing**".) In fact, and as stated above, the preliminary injunction is directed towards *preserving the status quo*, not providing the final remedy.

This statement of law clearly shows that the Municipality of San Juan does not have the right to an injunction of any kind-preliminary or permanent. The injunction is a remedy that depends on the merits of the subjacent claim. As discussed, the claim that the Municipality of San Juan pursues is not appropriate in law. Therefore there is no room to talk of any extraordinary remedy for the Municipality.

2. **Discussion of the criteria to consider when issuing a preliminary injunction**

Although the preceding section shows why the injunction remedy is inapplicable here, it is convenient to analyze the allegations in the Sworn Complaint in view of the criteria used for the issuance of an injunction. The movant of an injunction petition must satisfy and show it considered, according to Rule 57.3 of Civil Procedure and its interpretative case law, the following criteria: (1) the nature of the damages that may be caused to the parties, if the injunction is granted or denied; (2) its irreparability or existence of a remedy adequate in law; (3) the probability that the movant will eventually prevail on the merits of the case; (4) the probability that the cause turns moot if the injunction is not granted; and (5) the possible impact on public interest of the remedy requested. Asoc. Vec. Villa Caparra v. Asoc. Fom. Educativo, 173 DPR 304 (2008); Mun. De Ponce v. Gobernador, 136 DPR 776 (1994); P.R. Telephone Company v. Tribunal Superior, 103 DPR 200 (1975). It is the movant who has the burden of the evidence to show the appropriateness in equity of the remedy requested. See P.R. Telephone Co. Tribunal Superior, 103 DPR 200 (1975). The plaintiff has not shown it has complied with those requirements; it as not even alleged facts conducive to their compliance.

18

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS  Doc#:7702-42  Filed:06/27/19  Entered:06/27/19 14:25:13  Desc:
CERTIFIED TRANSLATION  Exhibit 41  Page 20 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 19 of 28

a. **The nature of the damages alleged by the Municipality of San Juan and their irreparability**

The Supreme Court of Puerto Rico has been emphatic in that, before issuing an injunction, we must consider if there is another efficient, complete and adequate remedy in law. If so, there is no irreparable damage, and therefore the issuance of the injunction is not appropriate. Perez Vda. Muniz v. Criado, 155 DPR 355 (2000). The irreparable damage that justifies the grant of an injunction is that which cannot be satisfied by using the legal remedies available and that, for that reason, cannot be duly remunerated by any compensation that can be collected in a case. See Com. Pro Perm. Bda. Morales v. Alcalde, 158 DPR 195, 205 (2002); Loiza Sugar Company v. Hernaiz y Albandoz, 32 DPR 903, 906 (1924).

Irreparable in the context of an injunction means that which, by its nature cannot be repaired, reestablished or rewarded adequately with money or when the compensation with money cannot be estimated with certainty. Loiza Sugar Co. v. Hernaiz y Albandoz, 32 DPR 903 (1924). Therefore the monetary damage is the reparable damage by definition. See Mision Industrial v. Junta, 142 DPR 656 (1997); Municipio de Ponce v. Gobernador, 136 DPR 776 (1994).

In the controversy in this case, as we discussed regarding the inappropriateneess of the writ of mandamus, here there is no irreparable damage, because the only damage that the Municipality could suffer is the collection of the amounts indebted for the Pay-Go Fee pursuant Act 106-2017 commands. That is easily reparable, because the Municipality could recover any money that it paid for the Pay-Go Fee.

b. **Probability of the Municipality prevailing on the merits**

The probability of prevailing on the merits is a fundamental criteria for the issuance of the extraordinary remedy of preliminary injunction. See Ind. P.R. v. J.P. y A.A.A., 142 DPR 656, 682-

19


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 21 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 20 of 28

683 (1997). The Municipality of San Juan does not have any probability of prevailing on the merits of its claim. As we have previously discussed, (1) there is no ministerial duty towards the Municipality of producing and maintaining the Registry of Accrued Pensions; (2) the Municipality was given access to all the information necessary to evaluate the certainty of the invoices; (3) there is no due process of law in an informal procedure not required by law created through a non-legislative rule as a circular letter, and (4) the Municipality of San Juan itself recognizes the obligation imposed by Act 106-2017 to pay the Pay-Go Fee. Therefore the arguments of the Municipality are completely without merit.

We have already discussed in detail the fact that the Municipality is requesting the production of and access to a Registry of Accrued Pensions over which the Municipality does not have any right and as an explicit responsibility in Act 106-2016 to remit the Pay-Go Fee payment which it has never done. A discussion of the merits of the Second and Third Causes of Action is necessary, namely (1) the right that the Municipality alleges of access to information to support and validate the correction of the amount of the invoices of the Pay-Go Fee and (2) the right to a due process of law that the Municipality alleges has been violated through the procedure created by Circular Letter CC-OCFO-2019-01.

Regarding the "right to access the information and documentation to support and validate the amounts of the invoices of Pay-Go Fee" (Sworn Complaint ¶81), it is necessary to state that the Municipality does not cite any provision to support its claim of this alleged right. The Municipality supports its Second Cause of Action with vague allusions to the municipal autonomy and the powers of the municipalities without establishing how these generalities support its claim.

Regardless of this, on December 6, 2018, Retirement gave the Municipality of San Juan the amended invoice in response to its claim based on the investigations performed by that office,

20


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc: CERTIFIED TRANSLATION Exhibit 41 Page 22 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 21 of 28

which revealed, based on a complete analysis of forms OP-15 of retirees and beneficiaries, that, of 1,068 retirees claimed or objected by the Municipality, the Municipality has to pay the Pay-Go of over 840 retirees and beneficiaries. See Letter of September 6, 2019 of Counsel Luis M. Collazo-Rodriguez, Administrator of the Retirement Systems, the Hon. Carmen Yulin Cruz-Soto, Mayor of San Juan, attached and identified with this document as Exhibit 1. This represents only 5% of the previous invoicing of 4,591 retires and beneficiaries. The forms OP-15 are the final reports of change of employers which reveal which governmental entity was the last employer of the retiree, and consequently, which entity must be invoiced the Pay-Go Fee for certain retiree. As a matter of fact, these forms given to the Municipality are the determining documents in which Retirement depends on to determine which entity to invoice the Pay-Go Fee for certain retiree. Therefore, the Municipality of San Juan has been given the determining evidence used by Retirement to determine which retiree comes from which covered entity. Therefore, it would be absurd to request more to the appearing codefendants when the Municipality has all the documents necessary to make its own conciliation. For all of the foregoing, the Second Cause of Action of the Municipality is without merit and has no probability of prevailing in the merits in this litigation.

In regards to the "due process of law granted by the Law of Uniform Administrative Procedure (LPAU) (Sworn Complaint ¶ 86) of which the Municipality alleges it is a creditor, it is sufficient to state that no provision in Act 106-2017 compels the appearing codefendants to establish an administrative procedure to evaluate the certainty of the Pay-Go Fee. It simply establishes that "[t]he Treasury Secretary or the person or entity that he appoints shall be authorized to collect the Pay-Go Fee". 3 LPRA § 9541. This is so because of two reasons: (1) **the collection of the Pay-Go Fee is not a procedure that affects the rights of private parties, but a procedure of central accounting of the government and (2) the Pay-Go Fee is "equivalent**

21

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc: CERTIFIED TRANSLATION Exhibit 41 Page 23 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 22 of 28

**to the amount effectively paid to the Retirees and Beneficiaries coming from each covered entity".** Id. In view of this last part, the only thing necessary to evaluate the Pay-Go Fee is to know the amount that was effectively paid or will be paid to the retiree or beneficiary.

While the Circular Letter CC-OCFO-2019-01 establishes a procedure so that responsible employers can object the invoices of the Pay-Go Fee, this is an informal procedure and is not required by Act 106-2017. This informal procedure prevents the Treasury Department from having to carry out judicial actions in collection of monies against the responsible employers that have certain objections to their invoices. It is a more efficient procedure, because otherwise the Treasury Department could carry out judicial actions in collection of monies at any time against responsible employers that object their invoices and decide not to pay for that reason. In the informal procedure established by Circular Letter CC-OCFO-2019-01 the responsible employer can continue paying those parts of the invoice that it has no objection with and withhold the payment of those parts objected in the invoice until Retirement carries out an investigation and certifies the correct invoice.

The provisions of LPAU do not apply to this informal procedure not required by law. This, because it was promulgated by way of circular letter. As the Supreme Court of Puerto Rico has stated, "[i]t is known that a circular letter is a non-legislative rule that does not have the force of law attributable to regulations." Gonzalez Segarra v. CEE, 188 DPR 252, 298 (2013); Hiram Melendez-Juarbe, Derecho Administrativo, 73 REV. JUR. UPR 509, 511 (2004) (explaining that the circular letters do not have the force of law attributable to regulations "properly approved through the quasi-legislative procedure of the LPAU"). Because the provisions and protections of the due process of law of LPAU do not apply to the circular letters, the Third Cause of Action of the Municipality is meritless and has no probability of prevailing on the merits in this litigation.

22

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc: CERTIFIED TRANSLATION Exhibit 41 Page 24 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 23 of 28

### c. Public interest

Another criteria to consider when deciding whether to grant an injunction petition is the impact it would have on public interest. See Ind. P.R. v. J.P. y A.A.A., 142 DPR 656, 683 (1997). In this type of writ the nature of the individual rights affected have to be considered *vis a vis* the social impact granting the writ would have. See Ortega Cabrera v. Tribunal Superior, 101 DPR 612, 618 (1973). For the same reasons that granting the writ of mandamus would have a disastrous impact on public interest that would risk the liquidity of the Account for the Payment of the Accrued Pensions, and consequently the payments that all retirees of the government are legally entitled to, granting the injunction goes against public interest.

### d. Balance of equity

Lastly, when deciding if an injunction petition must be granted, it is precise to consider the needs and the interests of all the parties involved in the controversy. See, Ind. P.R. v J.P. y A.A.A., 142 DPR 656, 680 (1997). In other words, the courts must make a balance of equities that implies analyzing what are the respective interests of each party. Id. After pondering the interests of each party, if in view of the Court the balance is inclined against the issuance of an injunction, it will not be obligated to issue it. Id. This balance of equities is inevitably tied to the analysis of the effect on public interest discussed it would have to grant the writ of mandamus requested by the Municipality of San Juan. The conclusion is the same and the result, after carrying out a balance of equities is obvious: the negative impact that subordinating the payment of the Pay-Go Fee to the production of the Registry of Accrued Pensions or of access to similar information of the Account for the Payment of the Accrued Pensions and the retirees of the government.

### 3. The Anti-Injunction Law prevents the granting of an injunction in this case.

23

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS  Doc#:7702-42  Filed:06/27/19  Entered:06/27/19 14:25:13  Desc:
CERTIFIED TRANSLATION  Exhibit 41  Page 25 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 24 of 28

In addition of the already obvious lack of merit of the injunction in the case of caption and that the Municipality of San Juan fails when alleging the facts and establishing in law the most basic criteria of such writ, there is also another important obstacle for its request. The actions of the Appearing Codefendant that the Municipality questions are protected by the specific provisions of Act 106-2017 that establishes that "[t]he Treasury Department Secretary or the person or entity appointed by him shall be authorized to collect the Pay-Go Fee." 3 LPRA §9541. Therefore, what the Municipality of San Juan really wants is to prevent the application of legal provisions via injunction, matter that per the Code of Civil Procedure is not proper to address this way.

The Code of Civil Procedure prohibits the granting of an injunction to prevent the application of a law or the compliance of a law on the part of a public corporation "unless that a final, firm, not appealable and irreversible judgment has determined that such law or action authorized by law is unconstitutional or invalid." 32 LPRA§ 3524. As an exception, the extraordinary writ can be issued when the privation of a Constitutional right is alleged. Id.

It is known that all the laws are and are presumed constitutional until a court decides otherwise. Cerame-Vivas v. Srio. De Salud, 99 DPR 45, 51 (1970). As of today, Act 106-2017, or its corresponding circular letters have not been declared unconstitutional. While that does not happen, any request to prevent compliance with these provisions is prohibited by the Code of Civil Procedure.

Also, the aforementioned exception of the Code of Civil Procedure is not applicable to the municipalities as they are creatures of the State that do not have constitutional rights. See Mun. Fajardo v. Sec. Justicia, 187 DPR 245, 262 (2012); also see PPD v. Rossello, 136 DPR 916 (1994). To that effect, the SCPR has stated: "The constitutional rights in the Bill of Rights assist the individuals before the State, not vice versa. These rights cannot be extended to the Government.

24


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS   Doc#:7702-42   Filed:06/27/19   Entered:06/27/19 14:25:13   Desc:
CERTIFIED TRANSLATION   Exhibit 41   Page 26 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 25 of 28

The municipalities are part of the Government. So much so, that we have reiterated that they are "creatures of the State". <u>Mun. Fajardo v. Sec. Justicia</u>, 187 DPR at page 262. Very simply, as the municipalities do not have any capacity to allege constitutional violations in front of the State, the injunction petitions of the Municipality of San Juan to stay the implementation of a law are meritless. In view of the foregoing, therefore, it is appropriate to deny the preliminary and permanent injunctions of the Municipality of San Juan.

**4.      The preliminary and permanent injunction petitions do not meet the requirements for an injunction petition in our jurisdiction.**

The injunction petition of the Municipality of San Juan also does not meet the basic form requirements applicable to this type of petition. It is clear that the injunction petitions must be done by motion that meets the requirements of Rule 8.4 of the Rules of Civil Procedure. <u>See</u>, David Rive-Rivera, <u>Recursos Extraordinarios</u>, Interamerican University of Puerto Rico School of Law, 35 (ed. Ed 1996). This motion must state with specificity all the demonstrative facts: (1) that the petitioner will suffer irreparable damages if the preliminary injunction is not granted; (2) that probably the petitioner will prevail on the merits; (3) establish a balance between the damages that the plaintiff will suffer if the injunction is not issued and those suffered by the defendant; and (4) that the public interest will not be affected. <u>Id</u>. In view of the foregoing, it is forceful to conclude that the petition filed by the Municipality of San Juan does not meet the requirements of an *injunction* petition pursuant to the current law.

**C.      Lastly, and for the same reasons stated, it also is not appropriate to enter the declaratory judgment requested by the Municipality of San Juan.**

As it has been discussed, the Municipality of San Juan does not have standing to request the production of and access to the Registry of Accrued Pensions, it has already received from Retirement more than enough information about its disputed invoices, much more of the

25

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 27 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 26 of 28

information to which it is entitled to under Act 106-2017-which is none-it does not have any right to the due process of law under LPAU, in an informal proceeding created through a non-legislative rule and has a non-complied, pending and payable obligation to pay its indebted contribution for Pay-Go Fee. Consequently none of its requests for this Honorable Court to enter declaratory judgment have any merit.

### D. Lack of indispensable Part

Pursuant to Rule 10.2(6) of Civil Procedure, "[i]f it is recognized that an indispensable party is missing the action must be dismissed." Romero v. Reyes Rivera, 164 D.P.R. 721, 734 (2005). To that effect, Rule 16.1 of Civil Procedure, 32 L.P.R.A. Ap. V. provides the following:

> [t]he persons that have a common interest without whose presence the controversy cannot be adjudicated will be made parties and be accrued as plaintiffs or defendants, as appropriate. When a person that should be joined as a plaintiff refuses to do so it can be joined as defendant.

The concept "indispensable party" has been defined by the Supreme Court of Puerto Rico as "that person whose rights and interests could be destroyed or inevitably affected by a judgment entered while that person is not in the case". See Ramos Gonzalez v. Moure, 150 D.P.R. 685, 694 (2000); Reyes v. ELA, 150 DPR 599, 605 (2000); Cepeda Torres v. Garcia Ortiz, 132 D.P.R. 698, 704 (1993). Therefore, an "indispensable party" is that which without its presence a controversy cannot be adjudicated. See Aponte Caratini v. Roman Torres, 145 D.P.R. 477, 483 (1998); Hernandez Agosto v. Lopez Nieves, 114 D.P.R. 601, 604 (1983).

Rule 16.1 of Civil Procedure has the purpose of protecting absent persons from the possible prejudicial effects of the decision of the case and avoid multiplicity of cases. See Id. When an absent person has not been provided the opportunity to safeguard some rights, the adjudication of the central controversy cannot be finalized. It is not sufficient that the person absent has been



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7702-42 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
CERTIFIED TRANSLATION Exhibit 41 Page 28 of 60

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 27 of 28

informed of the opportunity to intervene in the case; that person needs to be included as a party. The contrary would entail the dismissal of the case. <u>See</u>, <u>Reyes v. E.L.A.</u> 150 D.P.R.at 609. The lack of indispensable party is of such importance that it can be raised for the first time at the appellate level or by the court *sua sponte*. <u>Id</u>.

The presence of an indispensable party is of particular importance in the context of a mandamus or injunction as in this type of procedure the court is called to evaluate the impact that its decision could have on third parties. <u>See</u> V. Dr. Jose A. Cuevas-Segarra, <u>Tratado de Derecho Procesal Civil</u>, 1561 (2d ed. 2011). More than a century ago the Supreme Court of Puerto Rico decided that the party obliged to execute the act in question is the true and only party that needs to be sued in the mandamus procedure. <u>See</u> <u>Delgado v. El Consejo Ejecutivo de Puerto Rico</u>, 7 D.P.R. 410 (1904).

Regardless of the lack of merit that the request of the Municipality has regarding the production of the Registry, there is no doubt that it is prepared by the Administrators of the Retirement System in organization with the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"). <u>See</u> 3 LPRA §9542(b). Such entity, created by Act 2-2017, has its own legal personality separate from the one of its executive director, was not included as a party in this Complaint, therefore the Municipality has not added an indispensable party in this case. Therefore, the Complaint and Petition herein is also meritless.

**WHEREFORE,** we very respectfully request that this Honorable Court adopts the arguments presented herein and dismisses with prejudice the Sworn Complaint filed by the Municipality of San Juan.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico on June 10, 2019.

27

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

SJ2019CV05411 10/06/2019 06:50:40 p.m. Page 28 of 28

**I CERTIFY**: that this document has been electronically filed through the Unified System of Management and Administration of Cases (SUMAC) which automatically notifies all the attorneys of record to their respective e-mails and that this complies with the notification requirement in this case.

**PIETRANTONI MENDEZ & ALVAREZ LLC**
Popular Center, Floor 19
208 Ponce de Leon Avenue
San Juan, PR 00918
Tel: (787) 274-1212
Fax: (787) 274-1420

S/Oreste R. Ramos
ORESTE R. RAMOS
SCPR No. 12703
Oramos@pmalaw.com

S/Jean Rene Santiago Cruz
JEAN RENE SANTIAGO CRUZ
SCPR No. 21112
jsantiago@pmalaw.com

28

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| MUNICIPIO AUTÓNOMO DE SAN JUAN, representado por su Alcaldesa CARMEN YULÍN CRUZ SOTO,<br><br>Demandante,<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, por conducto de su Secretaria de Justicia, WANDA VÁZQUEZ GARCED; DEPARTAMENTO DE HACIENDA DE PUERTO RICO y RAÚL MALDONADO GAUTIER, en su capacidad oficial como Secretario de Hacienda de Puerto Rico; ADMINISTRACIÓN DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DE PUERTO RICO y LUIS COLLAZO RODRÍGUEZ, en su capacidad oficial como Administrador y Director Ejecutivo del Sistema de Retiro; JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO y CHRISTIAN SOBRINO VEGA, en su capacidad oficial dual como Presidente de la Junta de Retiro y Director Ejecutivo de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF),<br><br>Demandados | CIVIL NÚM. SJ2019CV05411(904)<br><br><br><br>SOBRE:<br><br>INTERDICTO PRELIMINAR Y PERMANENTE, MANDAMUS Y SENTENCIA DECLARATORIA |

---

**MOCIÓN DE DESESTIMACIÓN Y, EN LA ALTERNATIVA, EN OPOSICIÓN A SOLICITUD DE INTERDICTO PRELIMINAR Y PERMANENTE, Y *MANDAMUS***

**AL HONORABLE TRIBUNAL:**

**COMPARECEN** la Administración del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico (en adelante, **"Retiro"**), Luis M. Collazo Rodríguez, Administrador y Director Ejecutivo del Sistema de Retiro, la Junta de Retiro del Gobierno de Puerto Rico y Christian Sobrino Vega, Presidente de la Junta de Retiro y Director Ejecutivo de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (en conjunto, **"los Co-Demandados Comparecientes"**), por conducto de la representación legal que suscribe, muy respetuosamente, exponen, alegan y solicitan:

## I.     INTRODUCCIÓN

La controversia de autos concierne la renuencia del Municipio de San Juan (en adelante, **"San Juan"** o **"el Municipio"**) —un ente gubernamental reconocido como criatura del Estado por el Tribunal Supremo de Puerto Rico— a cumplir con sus obligaciones legales de pago para con los pensionados y beneficiarios del sistema de retiro del Gobierno, entre los cuales se encuentran policías, maestros y jueces, afanosos servidores públicos todos.

Mediante el Sistema de Pay-As-You-Go (**"Pay-Go"**) establecido por la Ley Núm. 106 de 23 de agosto de 2017, conocida como la Ley para Garantizar el Pago para los Servidores Públicos y codificada en 3 LPRA §§ 9531-9590 (**"Ley 106-2017"**), el Fondo General del Gobierno de Puerto Rico asumió los pagos que el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, el Sistema de Retiro para Maestros y el Sistema de Retiro para la Judicatura ya no podían realizar a sus pensionados debido a su insolvencia. La Ley 106-2017 le impuso al Gobierno, los Municipios, las Corporaciones Públicas y otras entidades consideradas patronos bajo cualquiera de los Sistemas de Retiro la obligación de pagar el Cargo Pay-Go para nutrir la Cuenta para el pago de las Pensiones Acumuladas, que es una cuenta segregada mantenida por el Departamento de Hacienda únicamente para el propósito de asegurarle el pago a todos los pensionados del gobierno.

**El Municipio pretende esquivar su obligación de pago a los pensionados y beneficiarios puertorriqueños mediante el recurso de interdicto** preliminar y permanente, aunque es harto conocido que es un recurso extraordinario que solamente procede en ocasiones cuando una parte pueda sufrir un daño irreparable y, en todo caso, no es favorecido en reclamaciones donde el alegado daño a sufrirse es de naturaleza monetaria. Asimismo, el Municipio procura que este Honorable Tribunal expida un *mandamus* para ordenar que se le

2

entregue el Registro de Pensiones Acumuladas con el objetivo de utilizarlo para objetar las facturas que evidencian sus obligaciones de pago para con los pensionados, cuando éste es un Registro creado por ley para el beneficio de los pensionados y beneficiarios. **Es decir, San Juan quiere acceso a un Registro cuyo propósito es beneficiar al pensionado, para utilizarlo en detrimento del pensionado.** En todo caso, el Registro no arrojaría luz alguna sobre las reclamaciones del Municipio. Éste le asegura a los pensionados que son pagados lo debido y no divulgaría información alguna sobre qué ente gubernamental es responsable del pago de su pensión, que es lo que el Municipio quiere poner en controversia.

Por último, se desprende de la Demanda Jurada que el Municipio solamente ha encontrado y comunicado alegadas irregularidades con 23.5% de los pensionados a los cuales la inmensa mayoría Retiro le adjudica la responsabilidad de pago. Sin embargo, **hasta el día de hoy, y en contravención a la ley, el Municipio se ha rehusado a pagar un solo centavo de ninguna de las pensiones cuya responsabilidad de pago le compete, incluyendo de aquellas sobre las cuales no existe controversia.** Ahora el Municipio pretende que este Honorable Tribunal valide su actuación ilegal y le otorgue refugio jurídico mediante un interdicto preliminar y permanente. No le asiste la razón.

## II. <u>RELACIÓN DE HECHOS</u>

**A. La crisis en los sistemas de retiro y la Ley Núm. 106-2017**

Para el año 2017, los tres principales sistemas de retiro de los servidores públicos de Puerto Rico confrontaban una grave emergencia fiscal. Ello, toda vez que sus activos líquidos estaban prestos a agotarse y consecuentemente, los sistemas de retiro se quedarían sin los recursos necesarios para cumplir con sus obligaciones de pago para con los pensionados del gobierno.

3

Dicha crisis en los sistemas de retiro se debió, entre otros factores, a aportaciones patronales inadecuadas, aprobación de leyes especiales, programas de retiro temprano, cambios en la expectativa de vida de los participantes, mala administración y reformas a lo largo de los años que fueron insuficientes para atajar las deficiencias financieras que los asediaban.

La crisis fiscal del gobierno de Puerto Rico en general llevó al Congreso de Estados Unidos a promulgar la Ley Pública 114-187, conocida como el *Puerto Rico Oversight, Management, and Economic Stability Act*, 48 USC §§ 2101-2241 (**"la ley PROMESA"**, por sus siglas en inglés). La ley PROMESA le delegó ciertos poderes de supervisión fiscal sobre dichas entidades a la Junta de Supervisión y Administración Financiera para Puerto Rico (**"Junta de Supervisión"**). Subsiguientemente, el 30 de octubre de 2016, la Junta de Supervisión designó, en lo relevante, al Gobierno de Puerto Rico y a los tres sistemas de retiro como "entidades cubiertas", sujetas a su supervisión fiscal.

Debido a la insolvencia de los sistemas de retiro, y acorde el Plan Fiscal del Gobierno de Puerto Rico certificado por la Junta de Supervisión, mediante la Ley 106-2017, el Fondo General del Gobierno de Puerto Rico asumió la responsabilidad de pagar las cantidades que los sistemas de retiro no podían asumir para hacer los pagos correspondientes a los pensionados. Ello se logró mediante el establecimiento de un Sistema de Pay-Go, mediante el cual se continúan realizando los desembolsos para todas las pensiones actuales de los sistemas de retiro, utilizando para ello los fondos del Fondo General.

Específicamente, los fondos para realizar dichos desembolsos provienen de la Cuenta para el Pago de las Pensiones Acumuladas creada bajo la custodia del Departamento de Hacienda como un fondo de fideicomiso separado de los activos generales y cuentas del Gobierno. 3 LPRA § 9541. Ésta, a su vez, se nutre, entre otras

fuentes, del Cargo Pay-Go que se le impone al Gobierno, los Municipios, la Rama Legislativa, la Administración de los Tribunales, las Corporaciones Públicas y otras entidades cubiertas, el cual es equivalente a la cantidad que en efecto se paga a los Pensionados y Beneficiarios provenientes de cada entidad cubierta. Id.

Sobre el procedimiento de cobro, la Ley 106-2017 simplemente dispone que "[e]l Secretario de Hacienda, o la persona o entidad que éste designe, estará autorizado a cobrar el Cargo 'Pay-Go'." Id. La ley no dispone que se creará un procedimiento para dicho cobro, y no obliga al Secretario de Hacienda, ni a cualquier otro funcionario, a crear dicho procedimiento.

Por último, la ley dispone que independientemente del pago del Cargo Pay-Go por parte del patrono, el desembolso de los beneficios de todos los pensionados y beneficiarios están garantizados por el Fondo General, "subsistiendo la responsabilidad de las entidades de remitir el pago de dicho Cargo en cumplimiento con sus obligaciones bajo esta Ley". Id.

Es menester señalar que la Ley 106-2017 también dispone la creación de un Registro de las Pensiones Acumuladas, entiéndase un registro de cada participante, beneficiario y pensionado que reflejará las cantidades que le corresponde a cada uno como Pensión Acumulada según sus respectivos Sistemas de Retiro. 3 LPRA § 9542. El contenido de este Registro, luego de ser creado, deberá ser notificado a cada participante, beneficiario y pensionado para que ellos constaten la certitud de lo ahí estipulado. Id. La ley nada dice sobre producirle dicho registro a los patronos.

Finalmente, la Ley 106-2017 también constituye, automática y permanentemente, un gravamen legal preferencial sobre el remanente no comprometido de las contribuciones sobre el valor de la propiedad y demás ingresos custodiado por el Centro de Recaudación de Ingresos Municipales ("**CRIM**"), a favor de la Junta de Retiro

y/o la Entidad Administradora para el cobro de las Aportaciones Adeudadas. 3 LPRA § 9555.

**B.  Las cartas circulares Núm. 1300-46-17 y CC-OCFO-2019-01**

En consecución de la Ley 106-2017, tanto el Departamento de Hacienda como la Oficina del Principal Oficial de Finanzas Públicas del Gobierno de Puerto Rico han emitido cartas circulares que proveen orientación a los secretarios de Gobierno, la Rama Legislativa, la Rama Judicial, jefes de agencia, directores ejecutivos, presidentes de corporaciones públicas y alcaldes. Estas cartas establecen, en términos prácticos, cómo funcionará el Cargo de Pay-Go impuesto al gobierno central, sus agencias e instrumentalidades, los municipios y las corporaciones públicas ("**los patronos**").

En lo relevante, la Carta Circular Núm. 1300-46-17 del Departamento de Hacienda establece que se le facturará a los patronos un cargo mensual para cubrir los beneficios a sus pensionados. La Carta Circular recalca que "**[e]sto es con el propósito de que no se afecte el pago a nuestros pensionados**". Carta Circular Núm. 1300-46-17, en la pág. 1 (énfasis suplido). La misma continúa, "**[e]s imprescindible** que el Departamento de Hacienda cuente con los recursos de efectivo necesarios para realizar dichos pagos". Id. (énfasis suplido). Ésta también establece que, en caso de que un municipio dejare de entregar a su Sistema correspondiente dentro de los próximos treinta (30) días de la retención, los fondos del Cargo Pay-Go, se procederá a requerir al CRIM que remese al Departamento de Hacienda las cantidades adeudadas.

Por su parte, la Carta Circular CC-OCFO-2019-01, circulada el 4 de septiembre de 2018, le advierte a los patronos que hayan recibido facturas enviadas por Retiro y no hayan realizado el pago

correspondiente, que deberán pagar las mismas en o antes del 30 de septiembre de 2018. Carta Circular CC-OCFO-2019-01, en la pág. 2.

Por otro lado, **la carta circular dispone un proceso informal, no requerido por la Ley 106-2017**, a seguir en caso que alguna entidad gubernamental considere que se le ha facturado erróneamente algún pensionado o beneficiario que no le corresponde. La carta circular establece que la entidad gubernamental "deberá excluir los mismos del monto total de pago hasta tanto [Retiro] emita una determinación respecto a la reclamación presentada". Id. Asimismo, la carta estableció un término de noventa (90) días para que los patronos presenten reclamaciones sobre facturas del Cargo Pay-Go correspondientes al año fiscal 2017-18 y otro término de noventa (90) días para que Retiro emita una determinación al respecto. Ya resueltas las reclamaciones, los patronos tendrán un término de cuarenta y cinco (45) días para emitir el pago correspondiente a la determinación de Retiro en torno a la reclamación. Id.

Sobre las facturas después del mes de septiembre de 2018, la carta circular dispone que los patronos tendrán hasta el último día calendario de cada mes para emitir el pago correspondiente a la factura del mes y para presentar cualquier reclamación concerniente a la factura. La carta circular establece de manera diáfana que "**[d]e no recibir ninguna reclamación dentro del término provisto se entenderá que la factura está correcta y que el pago es exigible en su totalidad**". Id (énfasis suplido). Asimismo, la carta hace hincapié en que los patronos "**deberán emitir el pago de las facturas por aquellos pensionados y beneficiarios de los cuales no existe ninguna reclamación**". Id (énfasis suplido).

C. **Los hechos que no están en controversia**

Los siguientes hechos los admite el Municipio de San Juan en su Demanda Jurada y no están en controversia:

7

1. La Ley 106-17 transfirió la responsabilidad de pagar las pensiones de los pensionados y beneficiarios a los empleadores de los exempleados, como lo es el Municipio de San Juan. Demanda Jurada ¶ 17.

2. El Municipio solicita la producción del Registro de las Pensiones Acumuladas para comprobar que el cómputo de la factura por el Cargo Pay-Go es correcto. Demanda Jurada ¶¶ 20, 43, 73. La disposición legal, citada por el Municipio, establece que el Registro "se le notificará a cada Participante, Beneficiario y Pensionado". El Municipio mismo reconoce que "el contenido del Registro será notificado a cada pensionado" y establece un proceso para que **el pensionado**, no el patrono, solicite corregir errores en el mismo. Demanda Jurada ¶ 21. La disposición legal citada no establece deber de notificación a los municipios, ni proceso alguno para que un municipio solicite corregir errores en el mismo.

3. Al 18 de agosto de 2018, el Municipio recibió las facturas correspondientes a cada uno de los meses comprendidos entre julio de 2017 hasta junio de 2018. Posteriormente ha continuado recibiendo facturas por concepto del Cargo Pay-Go. Demanda Jurada ¶¶ 25, 40.

4. Según las facturas provistas, al Municipio le correspondían 4,591 pensionados y beneficiarios. No obstante, el Municipio reclamó que 1,083 de los 4,591 pensionados y beneficiarios (23.58% del total) no le corresponden. Demanda Jurada ¶¶ 25, 27-28.

5. El 30 de noviembre de 2018, posterior a la Carta Circular CC-OCFO-2019-01 que estableció un procedimiento para reclamar facturación errónea para las facturas del año fiscal 2017-18 por concepto del Cargo de Pay-Go, el Municipio de San Juan le cursó una carta a Retiro con las

8

referidas reclamaciones. Ésta fue contestada el 11 de diciembre de 2018 por Retiro, que emitió una determinación al respecto, aceptando algunas objeciones del Municipio y denegando otras. Demanda Jurada ¶¶ 30, 33, 34.[1]

6. Debido al impago por parte del Municipio del monto total de todas las facturas provistas, Retiro certificó una deuda al CRIM de $52,660,761.30 imputable al Municipio por concepto del Cargo Pay-Go para el año fiscal 2017-18. Demanda Jurada ¶ 47.

D. **Las causas de acción del Municipio de San Juan**

En su Demanda Jurada, el Municipio de San Juan solicita que este Honorable Tribunal expida:

(1) un auto de *mandamus* y un interdicto preliminar y permanente para compeler a los Co-Demandados Comparecientes a producir y mantener el Registro de las Pensiones Acumuladas;

(2) una sentencia declaratoria e interdicto preliminar y permanente para compeler a los Co-Demandados Comparecientes a otorgarle acceso al Municipio de San Juan a la información relacionada al monto de las facturas por concepto del Cargo Pay-Go;

(3) una sentencia declaratoria e interdicto preliminar y permanente para invalidar el procedimiento creado por la Carta Circular CC-OCFO-2019-01, y

(4) un interdicto preliminar y permanente sobre cualquier gestión de cobro del Cargo Pay-Go.

Por las razones que siguen, este Honorable Tribunal debe desestimar todas y cada una de las causas de acción del Municipio de San Juan.

## III.   ARGUMENTACIÓN

---

[1] En concreto de los 4,591 pensionados y beneficiarios, el Municipio de San Juan presentó reclamaciones sobre 1,083 individuos. Sin embargo, Retiro le certificó al Municipio que de los 1,083, sólo 236 no le correspondían, lo que corresponde a 5% de la responsabilidad del pago Pay-Go.

**A. El Municipio de San Juan no cumple con los requisitos para la expedición del recurso *extraordinario* de *mandamus*.**

    **1. Criterios para la expedición del auto de *mandamus*.**

El auto de *mandamus* es uno altamente privilegiado que se dirige a alguna persona o corporación, con el fin de requerir el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes. Artículo 649 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA § 3421. "Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo." Id. El auto de *mandamus* además sólo procede cuando la ley obliga a la persona o corporación a un deber resultante de un empleo, cargo o función pública. Artículo 650 del Código de Enjuiciamiento Civil, 32 LPRA § 3422. Este deber es al que nos referimos como **el deber ministerial**.

Para que un deber sea calificado como ministerial, sin embargo, éste no puede permitir discreción alguna en su ejercicio por parte del funcionario y, por lo tanto, tiene que ser mandatorio e imperativo. Asociación de Maestros de Puerto Rico v. Secretario de Educación, 178 DPR 253 (2010); Noriega v. Hernández Colón, 135 DPR 406, 447-448 (1994). El Tribunal Supremo de Puerto Rico ha descrito dicho deber ministerial como "un acto en cuya ejecución no cabe ejercicio de discreción alguna por parte de la persona que viene obligada a cumplirlo." Álvarez de Choudens v. Tribunal Superior, 103 DPR 235, 242 (1975).

Asimismo, un acto es ministerial cuando la ley prescribe y define el deber que debe ser cumplido con tal precisión y certeza que nada deja al ejercicio de la discreción o juicio. Por el contrario, cuando el acto que debe ser cumplido envuelve el ejercicio de discreción o juicio no es considerado meramente ministerial, y por ende, está fuera del ámbito del recurso. Partido Popular v. Junta de Elecciones, 62 DPR 745, 749 (1944).

Conforme a la definición de deber ministerial, se entiende que para que proceda la expedición de un auto de *mandamus*, la obligación de actuar debe estar claramente definida por la ley y la ley debe, no sólo autorizar la acción que se requiera del funcionario, sino exigirla; el deber tiene que ser claro e indiscutible. Id. Adicionalmente, este deber tiene que estar definido con precisión y certeza de forma que no se deje nada al ejercicio de la discreción o juicio del funcionario. Asociación de Maestros, 178 DPR a la pág. 264; Espina v. Calderón, 75 DPR 76, 84 (1953); Gonzalo Rivera v. Hernández Ramírez, 70 DPR 549, 554 (1949). Este derecho debe surgir de forma clara y patente de la ley que se invoca para justificar la expedición del *mandamus*. Hernández Agosto v. Romero Barceló, 112 DPR 407, 418 (1982); Dávila v. Superintendente de Elecciones, 82 DPR 264 (1960). Asimismo, surge de la Regla 54 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, que dispone que el auto de *mandamus* sólo procede si el derecho a exigir la inmediata ejecución de un acto es evidente y cuando no se pueda dar ninguna excusa para no ejecutarlo.

En Asociación de Maestros de Puerto Rico v. Secretario de Educación, supra, el Tribunal Supremo de Puerto Rico estableció que la carga probatoria para establecer la existencia de un deber ministerial que justifique la expedición de un *mandamus* recae sobre el peticionario. Asociación de Maestros, 178 DPR a la pág. 269. Dicha carga probatoria se satisface presentando evidencia de un derecho claro, específico e imperativo— que no permita el ejercicio de discreción por parte del funcionario llamado a cumplir— a favor del peticionario.

El *mandamus* procede sólo si existe un interés apremiante del solicitante y se requiere una solución pronta y definitiva. Dávila, 82 DPR a las págs. 283-284. Por lo tanto, para que deba expedirse un auto de *mandamus*, no es suficiente que el

11

peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Id. Se trata de un auto altamente privilegiado y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, una vez resuelta en la afirmativa la cuestión inicial. Id.

Así, el Tribunal Supremo en Asociación de Maestros expresó que:

> la expedición de un mandamus no debe ser producto de un ejercicio mecánico o *ex debito justitiae*. Los tribunales deben realizar un balance entre los intereses en conflicto, sin obviar la utilidad social e individual de la decisión. **Es indispensable estimar qué efectos tendrá la expedición del auto en el adecuado cumplimiento de las responsabilidades del funcionario afectado y hasta qué punto habrá de beneficiar al requirente.** Procede establecer el más fino equilibrio posible entre los diversos intereses de conflicto.

Asociación de Maestros, 178 DPR a la pág. 268 (citas omitidas) (énfasis suplido).

De ahí que el Tribunal Supremo haya establecido que el factor de mayor importancia y peso en la decisión de si conceder o no el auto de *mandamus* es el posible impacto que tendrá el *mandamus* sobre el interés público. Id.; Noriega, 135 DPR a la pág. 448. A estos efectos, el Tribunal Supremo también ha expresado que "la discreción del auto y su relación con el remedio en equidad implica, entonces, que el tribunal no está atado a un remedio fijo sino que se puede diseñar un remedio compatible con los intereses púbicos envueltos." Asociación de Maestros, 178 DPR a las págs. 268-269 (citas omitidas). Y, conforme a lo anterior, aún si existiera un deber ministerial, el *mandamus* se puede denegar si el impacto negativo al interés público sería mayor al impacto positivo, si alguno, que tendría la expedición del *mandamus* para el promovente. Id. a la pág. 269.

**2. No debe expedirse el auto de *mandamus* porque los Codemandados Comparecientes no cuentan con un deber ministerial hacia el Municipio.**

El Municipio de San Juan, como Primera Causa de Acción, solicita que este Honorable Tribunal "declare ilegal la omisión de los demandados en cumplir con su obligación de producir el Registro descrito en el Artículo 2.2 de la Ley 106". Demanda Jurada ¶ 73. Éste continúa, aduciendo que "[l]a producción del Registro y la subordinación del cobro hasta tanto se satisfaga dicha condición impuesta por ley, es un asunto de estricto derecho que no admite de discreción alguno (sic) por parte de las demandadas". Demanda Jurada ¶ 74. Consecuentemente, solicita que se emita un auto de *mandamus* ordenando a los demandados la creación y divulgación del referido Registro de las Pensiones Acumuladas.

Acorde la discusión de la sección anterior, el elemento fundamental para la concesión de un auto de *mandamus* es la existencia de un deber ministerial. La carga probatoria para establecer la existencia de un deber ministerial se satisface presentando evidencia de un derecho claro, específico e imperativo **a favor del peticionario**. Es decir, es el peticionario —**en este caso el Municipio de San Juan**— quien tiene que demostrar que en la ley —en este caso en el Artículo 2.2 de la Ley 106-2017— existe un deber ministerial hacia él.

El Municipio no puede apuntar a ninguna parte de la disposición que crea el Registro de las Pensionas Acumuladas que crea un deber ministerial hacia el Municipio, porque no existe parte alguna en la cual haya tal deber. De la referida disposición se desprende que el Registro es para el beneficio de los Participantes, Beneficiarios y Pensionados, quienes ahí verán reflejadas "detalladamente las cantidades que le corresponde a cada uno como Pensión Acumulada según sus respectivos Sistemas de Retiro". 3 LPRA § 9542. Al ser establecido el Registro, "[d]e

13

acuerdo a lo contenido en el registro, se emitirán los pagos correspondientes de las pensiones acumuladas a las que tienen derecho". Id. Una vez se produzca el Registro, éste "se le notificará a cada participante, beneficiario y pensionado". Id. Luego de la creación del Registro y su notificación, los pensionados —**no un Municipio ni cualquier otro patrono**— tendrán un término para presentarle a Retiro evidencia de que la información en el Registro es incorrecta o inexacta. Id. **Como cuestión de hecho, el Registro le impone un deber ministerial al Municipio, no crea un deber ministerial hacia el Municipio**. Éste establece que "[e]l Gobierno, **los municipios**, la Rama Judicial, la Rama Legislativa, las corporaciones públicas y los Sistemas de Retiro deberán, **como parte de su deber ministerial**, producir diligentemente los documentos solicitados por parte de un participante". Id.

Por último, y como cuestión de hecho, **no hay disposición alguna** en la Ley 106-2017 donde se subordine el pago del Cargo Pay-Go a la producción del Registro de las Pensiones Acumuladas. Así pues, la alegación del Municipio de San Juan a los efectos que lo anterior es un asunto de estricto derecho que no admite discreción alguna es totalmente inmeritorio. De hecho, en el Artículo 2.2 de la Ley 106-2017, que crea el Registro, nunca se menciona ni una palabra sobre el Cargo Pay-Go. Ello, porque ni el Artículo 2.2 ni el Registro de Pensiones Acumuladas giran en torno a la responsabilidad legal de los patronos, como lo es el Municipio, de pagar el Cargo Pay-Go.

Consecuentemente, resulta fácilmente constatable que no hay deber ministerial alguno hacia el Municipio de San Juan con relación a la producción del Registro de las Pensiones Acumuladas. El Registro se crea en beneficio del pensionado, no en su detrimento. No obstante, el Municipio de San Juan pretende utilizar el Registro de Pensiones Acumuladas para objetar facturas

y esquivar su obligación de pagar a los retirados, entre estos empleados municipales, maestros y policías, a saber, cualquier empleado público cuyo último patrono fue el Municipio de San Juan. Por todo lo anterior, debe desestimarse la solicitud de *mandamus*.

3. **No existe un interés apremiante o daño irreparable que justifique la concesión del *mandamus* que solicita la Parte Demandante.**

El Municipio de San Juan tampoco expone interés apremiante alguno que justifique la expedición del auto de *mandamus*. El Municipio expone a los Co-Demandados Comparecientes a recursos de naturaleza y procedencia extraordinaria, como lo son los interdictos y *mandamus*, sin tan siquiera explicar en su Demanda Jurada por qué el asunto que le apremia es de urgencia o constituiría un daño irreparable. Véase Dávila, 82 DPR a las págs. 283-284 (sosteniendo que sólo debe expedirse el auto de *mandamus* si existe un interés apremiante del solicitante).

La verdad es que no cabe hablar de la existencia de interés apremiante o daño irreparable que justifique la concesión de un remedio extraordinario, por tres razones principales. *Primero*, ciertamente no hay nada apremiante sobre el alegado daño que pueda sufrir el Municipio de San Juan, pues lleva comunicándose con Retiro por meses, y el último hecho relevante en su Demanda Jurada ocurrió el 8 de febrero de 2019, hace cuatro meses, cuando Retiro certificó una deuda del Municipio al CRIM, acorde la Ley 106-2017 y las cartas circulares, porque el Municipio había impagado la totalidad de todas las facturas que había recibido por concepto del Cargo Pay-Go. Demanda Jurada ¶ 47. Es decir, nada ha pasado en la controversia de autos que evidencie el apremiante interés que requiere el auto de *mandamus*.

*Segundo*, el Municipio tenía, y todavía tiene para las facturas corrientes, un remedio inmediato a su objeción de cumplir con su obligación de pago para con nuestros pensionados: puede seguir el procedimiento estipulado en la Carta Circular CC-OCFO-

2019-01, pagar aquellos montos de las facturas sobre los cuales no hay controversia y potencialmente entablar reclamaciones ante Retiro para aquellos montos y beneficiados sobre los cuales sí hay controversia.

*Tercero*, el único daño plausible que puede alegar el Municipio es uno monetario y éste es el daño reparable por excelencia. Si bien el mero hecho de que una reclamación sea monetaria no excluye definitivamente los daños irreparables que ésta pueda causar, <u>Mun. de Ponce v. Gobernador</u>, 136 DPR 776, 787 (1994), no es menos cierto que, de prevalecer el Municipio en su argumento, éste podría recobrar cualquier dinero que haya pagado por concepto del Cargo Pay-Go. De hecho, el reciente recobro de la deuda por concepto del Cargo Pay-Go no afectó en nada las operaciones municipales corrientes, porque se dirigió contra los fondos no comprometidos del Municipio en el CRIM.

Por todo lo anterior, la solicitud de *mandamus* del Municipio es improcedente.

**4. El impacto que tendría el auto de *mandamus* sobre el interés público sería nefasto.**

Tal y como se menciona arriba, el factor de mayor importancia y peso en la decisión de si conceder o no el auto de *mandamus* es el posible impacto que tendría el mismo sobre el interés público. <u>Noriega</u>, 135 DPR a la pág. 448. Surge claramente de la propia Demanda Jurada que San Juan persigue subordinar el cobro del Cargo Pay-Go a la producción del Registro de las Pensiones Acumuladas. Como hemos discutido, San Juan no tiene derecho alguno en la ley a que se le produzca el Registro, mas permitir su planteamiento (es decir, seguir excusando su impago total) amenazaría contra la liquidez de la Cuenta Para el Pago de las Pensiones Acumuladas, la cual se nutre de los fondos provenientes de todos los patronos, y consecuentemente amenazarían las pensiones de todos los pensionados públicos. Ello, pues, conceder un *mandamus* iniciaría

una carrera de patronos similarmente situados al Tribunal, todos buscando que el cobro del Cargo Pay-Go se subordine – o en el caso del Municipio, se suspenda y excuse su impago - a la producción de un Registro que la misma ley indica no se dirige hacia ellos y el cual en nada está relacionado a la responsabilidad de cumplir con el Cargo Pay-Go. Consecuentemente, conceder el auto de *mandamus* imposibilitaría la aplicación de la Ley 106-2017, en tanto y en cuanto socavaría la estabilidad fiscal de todo el sistema de retiro, que era el preciso problema que la Ley 106-2017 buscaba atender.

**B.** **El Municipio de San Juan no cumple con los requisitos para que se conceda el recurso *extraordinario* de interdicto.**

Habiendo demostrado ya que no procede la solicitud de *mandamus*, conviene demostrar que tampoco debe concederse la solicitud de interdicto preliminar y permanente. Sabido es que el interdicto es un remedio *extraordinario* que procede sólo en circunstancias únicas que requieren la intervención inmediata de un Tribunal para evitar un daño irreparable. Aquí, el Municipio de San Juan no ha *alegado* siquiera hechos para demostrar que se cumplen los criterios necesarios para la concesión de un remedio *extraordinario* de este tipo. Además, y consistente con un reconocimiento tácito de que no tiene derecho a tal remedio *extraordinario*, el Municipio de San Juan tampoco ha seguido el trámite correcto para poder encausar una solicitud de interdicto preliminar.

**1.** **Procedencia del interdicto**

El mecanismo procesal del interdicto, o *injunction*, constituye un remedio en equidad que va dirigido a prohibir u ordenar la ejecución de algún acto determinado, con el fin particular de evitar causar perjuicio inminente o daños irreparables. Véase E.L.A. v. Asoc. de Auditores, 147 DPR 669, 679 (1999). En el caso del interdicto preliminar, se trata de

17

una orden de esa índole *pendiente el litigio*, **para preservar el status quo en lo que se ventila el litigio en los méritos,** en aras de que la conducta del demandado no le ocasione mayores daños al peticionario durante la pendencia del litigio. Véase Cobos Liccia v. DeJean Packing Co., Inc., 124 DPR 896, 902 (1989).

El Tribunal Supremo ha repetido en múltiples ocasiones que el interdicto **es un recurso que procede únicamente en circunstancias extraordinarias.** Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409 (2008); E.L.A. v. Asociación de Auditores, 147 DPR 669 (1999); García v. World Wide Entertainment Co., 132 DPR 378 (1992); APPR v. Tribunal Superior, 103 DPR 903 (1975). Asimismo, el interdicto constituye un remedio preliminar o permanente que busca "hacer efectivo el derecho sustantivo que se está ejercitando en la demanda". Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 426 (2008).

Es decir que, por su naturaleza, el remedio de *injunction* es subsidiario a –y dependiente de– los méritos de la reclamación principal incoada en la demanda. Véase David Rivé Rivera, Recursos Extraordinarios, 45 (2da ed. 1996). Así, pues, sabido es que "no hay tal cosa como un 'caso de injunction' de la misma forma que no hay un 'caso de embargo' o de 'sindicatura'. **El *injunction* no es nada más que un remedio provisional o permanente para hacer efectivo el derecho sustantivo"** que ejercitan las partes. David Rivé Rivera, Recursos Extraordinarios 45 (2da ed. 1996)(énfasis suplido).

**En el caso del *injunction* preliminar, además, está claro que éste no puede ser utilizado para obtener la concesión del remedio final en los méritos.** Véase Purpose and Scope of Preliminary Injunctions, *Wright & Miller*, 11A Fed. Prac. & Proc. Civ. § 2947 (3d ed.)(indicando que "when the grant of a preliminary injunction **would effectively rob the court of its**

**decision making power, the request for relief may be treated as one for a permanent injunction**")(Énfasis suplido); <u>Benson Hotel Corp. v. Woods</u>, 168 F.2d 694 (8th Cir. 1948)(sosteniendo que "[t]he application for such an injunction does not involve a final determination on the merits; **in fact, the purpose of an injunction pendente lite is not to determine any controverted right, but to prevent a threatened wrong or any further perpetration of injury […] until the issues can be determined after a full hearing**".) De hecho, y según anotado antes, el *injunction* preliminar va dirigido a *preservar el status quo*, no a proveer el remedio final.

De esta exposición del derecho se desprende claramente que el Municipio de San Juan no tiene derecho a un interdicto de clase alguna – ni preliminar, ni permanente. El interdicto es un remedio que depende de los méritos de la reclamación subyacente. Según discutido, la reclamación que avanza el Municipio de San Juan es improcedente en derecho. Por lo tanto, no cabe hablar de remedio extraordinario alguno para el Municipio.

**2. Discusión de los criterios a considerar al emitir un interdicto preliminar**

Aunque la sección precedente demuestra por qué el remedio de interdicto es inaplicable aquí, conviene analizar las alegaciones de la Demanda Jurada a la luz de los criterios que se utilizan para la expedición de un interdicto. La parte promovente de una solicitud de *injunction* debe satisfacer y demostrar que consideró, según la Regla 57.3 de Procedimiento Civil y su jurisprudencia interpretativa, los siguientes criterios: (1) la naturaleza de los daños que puedan ocasionársele a las partes, de concederse o denegarse el injunction; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente eventualmente prevalezca en los méritos del pleito en su fondo;

19

(4) la probabilidad de que la causa se torne académica de no concederse el injunction; y (5) el posible impacto sobre el interés público del remedio que se solicita. Asoc. Vec. Villa Caparra v. Asoc. Fom. Educativo, 173 DPR 304 (2008); Mun. de Ponce v. Gobernador, 136 DPR 776 (1994); P.R. Telephone Company v. Tribunal Superior, 103 DPR 200 (1975). Es la parte promovente la que carga con el peso de la prueba de demostrar la procedencia en equidad del remedio que solicita. Véase P.R. Telephone Co. v. Tribunal Superior, 103 DPR 200 (1975). La parte demandante no ha demostrado cumplir con dichos requisitos; ni siquiera ha alegado hechos conducentes a cumplir con ellos.

### a. La naturaleza de los daños alegados por el Municipio de San Juan y su irreparabilidad

El Tribunal Supremo de Puerto Rico ha sido enfático en que, antes de expedir un *injunction*, debe considerarse si existe algún otro remedio eficaz, completo y adecuado en ley. De ser así, no existe un daño irreparable y, por lo tanto, no procede la expedición de un *injunction*. Pérez Vda. Muñiz v. Criado, 155 DPR 355 (2000). El daño irreparable que justifica la concesión de un *injunction* es aquél que no puede ser satisfecho mediante la utilización de los remedios legales disponibles y que, por tal razón, tampoco puede ser debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito. Véase Com. Pro Perm. Bda. Morales v. Alcalde, 158 DPR 195, 205 (2002); Loíza Sugar Company v. Hernáiz y Albandoz, 32 DPR 903, 906 (1924).

*Irreparable* en el contexto de un injunction significa aquello que, por su naturaleza, no puede repararse, restablecerse o recompensarse de modo adecuado con dinero, o cuando la compensación con dinero no puede estimarse con seguridad. Loíza Sugar Co. v. Hernáiz y Albandoz, 32 DPR 903 (1924). Es así que el daño monetario es el daño **reparable** por

antonomasia. _Véase_ _Misión Industrial v. Junta_, 142 DPR 656
(1997); _Municipio de Ponce v. Gobernador_, 136 DPR 776 (1994).

En la controversia de autos, como discutimos con relación
a la improcedencia del auto de _mandamus_, aquí no hay daño
irreparable alguno, puesto que el único daño que podría sufrir
el Municipio es el cobro de las cantidades adeudadas por
concepto del Cargo Pay-Go acorde mandata la Ley 106-2017. Ello
es fácilmente reparable, pues el Municipio podría recobrar
cualquier dinero que haya pagado por concepto del Cargo Pay-Go.

**b.    La probabilidad de que el Municipio prevalezca en
los méritos**

La probabilidad de prevalecer en los méritos es un criterio
fundamental para la expedición del remedio extraordinario de
injunction preliminar. _Véase_ _Ind. P.R. v. J.P. y A.A.A._, 142 DPR
656, 682-683 (1997). El Municipio de San Juan no tiene
probabilidad alguna de prevalecer en los méritos de su
reclamación. Como se ha discutido previamente, (1) no hay deber
ministerial alguno hacia el Municipio de producir y mantener el
Registro de las Pensiones Acumuladas; (2) ya se le dio acceso al
Municipio de toda la información necesaria para auscultar la
certitud de las facturas; (3) no hay debido proceso de ley en un
procedimiento informal y no requerido por ley creado mediante
una regla no-legislativa como una carta circular, y (4) el mismo
Municipio de San Juan reconoce la obligación que le impuso la
Ley 106-2017 de pagar el Cargo Pay-Go. Por lo tanto, los
planteamientos del Municipio son totalmente inmeritorios.

Ya hemos discutido con lujo de detalle el hecho que el
Municipio está solicitando la producción de, y acceso a, un
Registro de las Pensiones Acumuladas sobre el cual el Municipio
no ostenta derecho alguno y tiene una responsabilidad explícita
en la Ley 106-2016 de remitir el pago del Cargo Pay-Go, lo cual
nunca ha hecho. Urge una discusión sobre los méritos de la

Segunda y Tercera Causas de Acción, a saber, (1) el derecho que alega el Municipio de acceso a información que sustente y valide la corrección del monto de las facturas del Cargo Pay-Go y (2) el derecho a un debido proceso de ley que alega el Municipio ha sido violentado mediante el procedimiento creado por la Carta Circular CC-OCFO-2019-01.

Sobre el "derecho de acceso a la información y documentación que sustenta y valida los montos de las facturas por concepto del cargo Pay-Go" (Demanda Jurada ¶ 81), es necesario apuntalar que el Municipio <u>no cita una sola disposición que apoye su reclamo de este alegado derecho</u>. El Municipio sustenta su Segunda Causa de Acción con vagas alusiones a la autonomía municipal y los poderes de los municipios, sin establecer de qué manera estas generalidades apoyan su reclamo.

Independientemente de ello, el 6 de diciembre de 2018, Retiro le entregó al Municipio de San Juan la facturación enmendada en respuesta a su reclamación a base de la investigación realizada por dicha oficina, la cual reveló a base de un análisis completo de los formularios OP-15 de los pensionados y beneficiarios, que, de los 1,068 pensionados reclamados u objetados por el Municipio, le corresponde el pago del Pay Go al Municipio de sobre 840 pensionados y beneficiarios. <u>Véase</u> Carta de 6 de septiembre de 2018 del Lcdo. Luis M. Collazo Rodríguez, Administrador de los Sistemas de Retiro, a la Hon. Carmen Yulín Cruz Soto, Alcaldesa de San Juan, anejada e identificada a este escrito como Exhibit 1. Ello representa tan sólo 5% de la facturación previa de 4,591 pensionados y beneficiarios. Los formularios OP-15 son los informes finales de cambio de patrono, de donde se desprende qué entidad gubernamental fue el último patrono del pensionado, y consecuentemente, a qué entidad se le debe facturar el Cargo

22

Pay-Go por determinado pensionado. Como cuestión de hecho, estos formularios entregados al Municipio son los documentos determinantes en los cuales depende Retiro para determinar a qué entidad facturarle el Cargo Pay-Go por determinado pensionado. Así pues, al Municipio de San Juan se le ha entregado la evidencia determinante que usa Retiro para adjudicar qué pensionado proviene de qué entidad cubierta. Por lo tanto, sería absurdo solicitarles más a los Co-Demandados Comparecientes, cuando ya el Municipio tiene todos los documentos necesarios para realizar su propia conciliación. Por todo lo anterior, es improcedente la Segunda Causa de Acción del Municipio y no tiene probabilidad de prevalecer en los méritos en este litigio.

Sobre el "debido proceso de ley concedido por la Ley de Procedimiento Administrativo Uniforme (LPAU)" (Demanda Jurada ¶ 86) del cual el Municipio alega es acreedor, basta indicar que la Ley 106-2017 en ninguna disposición obliga a los Co-Demandados Comparecientes a establecer un procedimiento administrativo para dirimir la certitud del Cargo Pay-Go. Simplemente establece que "[e]l Secretario de Hacienda o la persona o entidad que éste designe estará autorizado a cobrar el Cargo 'Pay-Go'". 3 LPRA § 9541. Ello es así por dos razones: (1) **el cobro del Cargo Pay-Go no es un procedimiento que afecte derechos de partes privadas, sino un procedimiento de contabilidad central del gobierno** y (2) **el Cargo Pay-Go es "equivalente a la cantidad en efecto pagada a los Pensionados y Beneficiarios provenientes de cada entidad cubierta"**. Id. En atención a esto último, lo único necesario para auscultar el Cargo Pay-Go es conocer la cantidad que en efecto se pagó o se pagará al pensionado o beneficiario.

Si bien la Carta Circular CC-OCFO-2019-01 establece un procedimiento para que los patronos responsables puedan objetar las facturas por concepto del Cargo Pay-Go, éste es un

procedimiento informal y no es requerido por la Ley 106-2017.
Este procedimiento informal evita que el Departamento de
Hacienda tenga que llevar a cabo acciones judiciales en cobro de
dinero en contra de los patronos responsables que tienen ciertas
objeciones a sus facturas. Es un procedimiento más eficiente,
pues de otra manera, el Departamento de Hacienda podría llevar a
cabo acciones judiciales en cobro de dinero en cualquier momento
a patronos responsables que tengan objeciones a sus facturas y
decidan no pagar por esa razón. En el procedimiento informal
establecido por la Carta Circular CC-OCFO-2019-01, el patrono
responsable puede continuar pagando aquellas partes de la
factura con las cuales no hay objeción y retener el pago de
aquellas partes objetadas de la factura hasta tanto Retiro lleve
a cabo una investigación y le certifique la factura correcta.

A este procedimiento informal, no requerido por ley, no le
aplican las disposiciones de la LPAU. Ello, porque fue
promulgado mediante una carta circular. Como ha pronunciado el
Tribunal Supremo de Puerto Rico, "[s]abido es que una carta
circular es una regla no legislativa ya que no tiene la fuerza
de ley que se le atribuye a los reglamentos". González Segarra
v. CEE, 188 DPR 252, 298 (2013); Hiram Meléndez Juarbe, Derecho
Administrativo, 73 Rev. Jur. UPR 509, 511 (2004) (explicando que
las cartas circulares no tienen la fuerza de ley que se le
atribuye a los reglamentos "propiamente aprobados mediante el
procedimiento cuasi-legislativo de la LPAU"). Debido a que a las
cartas circulares no le aplican las disposiciones y protecciones
de debido proceso de ley de la LPAU, es improcedente la Tercera
Causa de Acción del Municipio y no tiene probabilidad de
prevalecer en los méritos en este litigio.

### c. El interés público

Otro criterio a considerar al determinar si conceder una
solicitud de *injunction* es el impacto que tendría sobre el

interés público. Véase Ind. P.R. v. J.P. y A.A.A., 142 DPR 656, 683 (1997). En este tipo de recurso se deben sopesar la naturaleza de los derechos individuales afectados frente al impacto social que tendría conceder el recurso. Véase Ortega Cabrera v. Tribunal Superior, 101 DPR 612, 618 (1973). Por las mismas razones que conceder el auto de *mandamus* tendría un impacto nefasto sobre el interés público, que pondría en riesgo la liquidez de la Cuenta Para el Pago de las Pensiones Acumuladas, y consecuentemente los pagos que legalmente les corresponden a todos los pensionados del gobierno, conceder el *injunction* va en contra del interés público.

### d. Balance de equidades

Por último, al determinar si debe concederse una solicitud de *injunction*, es preciso ponderar las necesidades y los intereses de todas las partes involucradas en la controversia. Véase Ind. P.R. v. J.P. y A.A.A., 142 DPR 656, 680 (1997). Es decir, los tribunales deben realizar un balance de equidades, que implica analizar cuáles son los respectivos intereses de cada parte. Id. Tras ponderar los intereses de cada parte, si a juicio del Tribunal la balanza se inclina en contra de la expedición de un *injunction*, el mismo no vendrá obligado a emitirlo. Id. Este balance de equidades está inevitablemente atado al análisis del efecto que tendría conceder el auto de *mandamus* solicita el Municipio de San Juan, según discutido, sobre el interés público. La conclusión es la misma y el resultado tras realizar un balance de equidades es obvio: el impacto negativo que tendría subordinar el pago del Cargo Pay-Go a la producción del Registro de las Pensiones Acumuladas o de acceso a información similar sobre la Cuenta Para el Pago de las Pensiones Acumuladas y los pensionados del gobierno.

### 3. La Ley Anti-Injunction impide que se conceda un injunction en el caso de autos.

Además de la ya obvia improcedencia del recurso de *injunction* en el pleito de epígrafe, y de que el Municipio de San Juan fracasa al alegar los hechos y establecer en derecho los criterios más básicos de dicho recurso, existe también otro obstáculo de envergadura para su solicitud. Las actuaciones de los Co-Demandados Comparecientes que cuestiona el Municipio de San Juan están cobijadas por disposiciones específicas de la Ley 106-2017, que establece que "[e]l Secretario de Hacienda o la persona o entidad que éste designe estará autorizado a cobrar el Cargo 'Pay-Go'". 3 LPRA § 9541. Así, lo que en realidad busca el Municipio de San Juan es impedir por vía del interdicto la aplicación de disposiciones legales, asunto, según se desprende del Código de Enjuiciamiento Civil, no es propio tratarse por dicha vía.

El Código de Enjuiciamiento Civil de Puerto Rico prohíbe la otorgación de un *injunction* para impedir la aplicación de una ley o el cumplimiento de una ley por parte de una corporación pública, "a menos que se hubiera determinado por sentencia final, firme, inapelable e irrevisable que dicha ley o actuación autorizada por ley es inconstitucional o inválida". 32 LPRA § 3524. A modo de excepción, puede expedirse el recurso extraordinario cuando se alega en la Demanda la privación de un derecho constitucional. Id.

Sabido es que todas las leyes son y se presumen constitucionales hasta tanto un tribunal resuelva lo contrario. Cerame-Vivas v. Srio. de Salud, 99 DPR 45, 51 (1970). Al presente la Ley 106-2017, ni sus correspondientes cartas circulares, han sido declaradas inconstitucionales. Hasta tanto ello no ocurra, cualquier solicitud para impedir el cumplimiento de estas disposiciones está vedada por el Código de Enjuiciamiento Civil.

Además, la excepción del Código de Enjuiciamiento Civil antes mencionada no es aplicable a los municipios, en tanto éstos son criaturas del Estado que no gozan de derechos constitucionales. Véase Mun. Fajardo v. Sec. Justicia, 187 DPR 245, 262 (2012); véase además PPD v. Rosselló, 136 DPR 916 (1994). A esos efectos, el TSPR ha señalado: "Los derechos constitucionales que recoge la Carta de Derechos le asisten a los individuos frente al Estado, no viceversa. Estos derechos no pueden extenderse al Gobierno. Los municipios son parte del Gobierno. Tanto es así, que hemos reiterado que son 'criaturas del Estado'". Mun. Fajardo v. Sec. Justicia, 187 DPR en la pág. 262. Muy sencillamente, como los municipios no tienen capacidad alguna de alegar violaciones constitucionales frente al Estado, las solicitudes de interdictos del Municipio de San Juan para paralizar la implementación de una ley son improcedentes. En vista de todo lo anterior, por lo tanto, procede denegar las solicitudes de interdictos preliminares y permanentes del Municipio de San Juan.

**4. Las solicitudes de interdictos preliminares y permanentes no cumplen con los requisitos para una solicitud de injunction en nuestra jurisdicción.**

Tampoco cumple la solicitud de *injunction* del Municipio de San Juan con los requisitos de forma básicos aplicables a este tipo de solicitud. Está claro que las solicitudes de *injunction* deben efectuarse mediante moción que cumpla con los requisitos de la Regla 8.4 de las Reglas de Procedimiento Civil. Véase David Rivé Rivera, Recursos Extraordinarios, Facultad de Derecho Universidad Interamericana de Puerto Rico, 35 (2da ed. 1996). Esta moción debe exponer con particularidad todos los hechos demostrativos de: (1) que el peticionario sufrirá daños irreparables si no se concede el *injunction* preliminar; (2) que con probabilidad habrá de prevalecer en los méritos; (3) establecer un balance entre los daños que sufrirá el demandante

27

si no se expide el *injunction* y los que sufrirá el demandado; y
(4) que el interés público no se verá afectado. Id. En
consideración a lo anterior, resulta forzoso concluir que la
solicitudpresentada por el Municipio de San Juanno cumple con
los requisitos para una solicitud de *injunction* conforme al
estado de derecho vigente.

**C.** **Por último, y por las mismas razones esbozadas, tampoco
procede que se dicte la sentencia declaratoria que solicita
el Municipio de San Juan.**

Como se ha discutido, el Municipio de San Juan no tiene
legitimación para solicitar la producción del, y acceso al,
Registro de las Pensiones Acumuladas, ya ha recibido más que
suficiente información sobre sus facturas disputadas de parte de
Retiro, mucho más de la información a la cual tiene derecho bajo
la Ley 106-2017 —que es ninguna—, no tiene derecho alguno al
debido proceso de ley bajo la LPAU en un proceso informal creado
mediante una regla no-legislativa y tiene una obligación
incumplida, pendiente y exigible de pagar sus aportaciones
adeudadas por concepto del Cargo Pay-Go. En consecuencia, no le
cobija la razón en ninguna de sus solicitudes para una sentencia
declaratoria de parte de este Honorable Tribunal.

**D.** **Falta de Parte Indispensable**

A tenor con la Regla 10.2(6) de Procedimiento Civil, "[d]e
reconocerse que está ausente una parte indispensable, debe
desestimarse la acción." Romero v. Reyes Rivera, 164 D.P.R. 721,
734 (2005). A esos efectos, la Regla 16.1 de Procedimiento
Civil, 32 L.P.R.A. Ap. V, dispone lo siguiente:

> [l]as personas que tengan un interés común sin cuya
> presencia no pueda adjudicarse la controversia, se
> harán partes y se acumularán como demandantes o
> demandadas, según corresponda. Cuando una persona que
> deba unirse como demandante rehúse hacerlo, podrá
> unirse como demandada.

El concepto de "parte indispensable" ha sido definido por
el Tribunal Supremo de Puerto Rico como "aquella persona cuyos

derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio". Véase Ramos González v. Moure, 150 D.P.R. 685, 694 (2000); Reyes v. E.L.A., 150 D.P.R. 599, 605 (2000); Cepeda Torres v. García Ortiz, 132 D.P.R. 698, 703 (1993). Así, pues, una "parte indispensable" es aquélla sin cuya presencia no puede adjudicarse una controversia. Véanse Aponte Caratini v. Román Torres, 145 D.P.R. 477, 483 (1998); Hernández Agosto v. López Nieves, 114 D.P.R. 601, 604 (1983).

La Regla 16.1 de Procedimiento Civil tiene el propósito de proteger a las personas ausentes de los posibles efectos perjudiciales de la resolución del caso y evitar la multiplicidad de pleitos. Véase id. Cuando a una persona ausente no se le ha brindado oportunidad para salvaguardar unos derechos, no se le puede imprimir finalidad a la adjudicación de la controversia medular. No basta con que el ausente haya sido informado de su oportunidad de intervenir en el pleito; ha de ser acumulado como parte. Lo contrario conllevaría la desestimación del pleito. Véase Reyes v. E.L.A., 150 D.P.R. a la pág. 609. La falta de parte indispensable es de tal importancia que puede plantearse, por primera vez, a nivel apelativo o por el tribunal *sua sponte*. Id.

Cobra particular importancia en el contexto de un *mandamus* o un injunction la presencia de una parte indispensable ya que en este tipo de procedimiento el tribunal viene llamado a evaluar el impacto que su pronunciamiento pudiese tener sobre terceros. Véase V Dr. José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 1561 (2da ed. 2011). Hace más de un siglo que el Tribunal Supremo de Puerto Rico resolvió que la parte que estuviere en la obligación de ejecutar el acto de que se trate es la verdadera y única parte que necesariamente tiene que ser

demandada en el procedimiento de *mandamus*. Véase Delgado v. El Consejo Ejecutivo de Puerto Rico, 7 D.P.R. 410 (1904).

Independientemente de la falta de mérito que tiene la solicitud del Municipio con relación a la producción del Registro, no cabe duda de que el mismo se prepara por los Administradores de los Sistemas de Retiro, *en coordinación con la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico ("AAFAF")*. Véase 3 LPRA § 9542(b). Dicha entidad, creada por la Ley 2-2017, tiene personalidad jurídica propia y separada de la de su director ejecutivo, no fue incluida como parte en este Demanda, por lo que el Municipio ha dejado de añadir una parte indispensable al presente pleito. Por ello, también resulta improcedente la Demanda y Petición aquí trabada.

**POR TODO LO CUAL**, muy respetuosamente, se solicita de este Honorable Tribunal que acoja los argumentos aquí presentados y desestime con perjuicio la Demanda Jurada presentada por el Municipio de San Juan.

**RESPETUOSAMENTE SOMETIDA.**

En San Juan, Puerto Rico, a 10 de junio de 2019.

**CERTIFICO:** que este escrito ha sido presentado de manera electrónica a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC) el cual automáticamente da aviso a todos los abogados de récord a sus respectivas direcciones electrónicas y que esto cumple con el requisito de notificación en este caso.

**PIETRANTONI MÉNDEZ & ALVAREZ LLC**
Popular Center, Piso 19
208 Avenida Ponce de León
San Juan, PR 00918
Tel: (787) 274-1212
Fax: (787) 274-1420

f/ *Oreste R. Ramos*
ORESTE R. RAMOS
TSPR Núm. 12703
oramos@pmalaw.com

f/ *Jean René Santiago Cruz*
JEAN RENÉ SANTIAGO CRUZ
TSPR Núm. 21112
jsantiago@pmalaw.com