# EXHIBIT 43

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT


PEAJE INVESTMENTS, LLC,

      Movant, Appellant,

-vs-      Case No. 16-2377

ALEJANDRO GARCIA-PADILLA, ET AL,

      Respondents, Appellees.

------------------------------------

PEAJE INVESTMENTS, LLC

      Movant, Appellee,

-vs-      Case No. 16-2430

ALEJANDRO GARCIA-PADILLA, ET AL,

      Respondents, Appellees,

      -----------------

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

      Movant, Appellant.

------------------------------------

DIGITAL TRANSCRIPTION

ORAL ARGUMENT HELD BEFORE

JEFFREY R. HOWARD, CHIEF JUDGE

O. ROGERIEE THOMPSON, CIRCUIT JUDGE

WILLIAM J. KAYATTA, JR., CIRCUIT JUDGE

WEDNESDAY, JANUARY 4, 2017

Job No. 4622

1        UNITED STATES COURT OF APPEALS

2          FOR THE FIRST CIRCUIT

3

4   PEAJE INVESTMENTS, LLC,

5          Movant, Appellant,

6   -vs-        Case No. 16-2377

7   ALEJANDRO GARCIA-PADILLA, ET AL,

8          Respondents, Appellees.

9   ----------------------------------

10  PEAJE INVESTMENTS, LLC

11         Movant, Appellee,

12  -vs-        Case No. 16-2430

13  ALEJANDRO GARCIA-PADILLA, ET AL,

14         Respondents, Appellees,

15         -----------------

16  FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

17         Movant, Appellant.

18  ----------------------------------

19          DIGITAL TRANSCRIPTION

20         ORAL ARGUMENT HELD BEFORE

21      JEFFREY R. HOWARD, CHIEF JUDGE

22     O. ROGERIEE THOMPSON, CIRCUIT JUDGE

23   WILLIAM J. KAYATTA, JR., CIRCUIT JUDGE

24        WEDNESDAY, JANUARY 4, 2017

25  Job No. 4622

1   ASSURED GUARANTY CORPORATION; ASSURED GUARANTY

2   MUNICIPAL CORPORATION,

3           Plaintiffs, Appellees,

4   -vs-        Case No. 16-2431

5   COMMONWEALTH OF PUERTO RICO, ET AL,

6           Defendants, Appellees

7           -----------------

8   FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

9           Movant, Appellant

10  ----------------------------------

11  ALTAIR GLOBAL CREDIT OPPORTUNITIES FUN (A), LLC,

12  ET AL,

13          Movants, Appellants,

14  CLAREN ROAD CREDIT MASTER FUND, LTD., ET AL,

15          Movants,

16  -vs-        Case No. 16-2433

17  ALEJANDRO GARCIA-PADILLA, in his official

18  capacity as the Governor of Puerto Rico, et al,

19          Respondents, Appellees

20          -----------------

21  FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

22          Movant, Appellant

23  ----------------------------------

24

25

1  BRIGADE LEVERAGED CAPITAL STRUCTURES FUND, LTD.,

2  ET AL

3         Plaintiffs, Appellees,

4  -vs-      Case No. 16-2437

5  ALEJANDRO GARCIA-PADILLA, in his official

6  capacity as the Governor of Puerto Rico, et al,

7         Defendants, Appellees

8  GOVERNMENT DEVELOPMENT BANK OF PUERTO RICO,

9         Defendant,

10             -----------------

11  FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

12         Movant, Appellant.

13  -----------------------------------

14  NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION,

15         Plaintiff, Appellee,

16  -vs-      Case No. 16-2438

17  ALEJANDRO J. GARCIA-PADILLA, et al,

18         Defendants, Appellees,

19             -----------------

20  FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

21         Movant, Appellant.

22  -----------------------------------

23

24

25

1  US BANK TRUST NATIONAL ASSOCIATION,

2        Plaintiff, Appellee,

3  -vs-      Case No. 16-2439

4  ALEJANDRO GARCIA-PADILLA, in his official

5  capacity as the Governor of Puerto Rico, et al,

6        Defendants, Appellees

7        -----------------

8  FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

9        Movant, Appellant.

10  ----------------------------------

11  DIONISIO TRIGO-GONZALEZ, ET AL,

12        Plaintiffs, Appellees,

13  CARMEN FELICIANO VARGAS, ET AL,

14        Plaintiffs,

15  -vs-      Case No. 16-2440

16  ALEJANDRO GARCIA-PADILLA, in his official

17  capacity as the Governor of Puerto Rico, et al,

18        Defendants, Appellees

19        -----------------

20  FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

21        Movant, Appellant.

22  ----------------------------------

23

24

25

1  APPEARANCES:

2  G. ERIC BRUNSTAD, JR.

3  Dechert, LLP

4  90 State House Square

5  Hartford, CT 06103-3702

6  860.524.3999

7     Appearing on behalf of Peaje Investments,

8     LLC.

9

10  ERIN E. MURPHY

11  Kirkland & Ellis, LLP

12  655 Fifteenth Street NW

13  Washington, D.C. 20005-5793

14  202.879.5036

15     Appearing on behalf of Alejandro

16     Garcia-Padilla, et al.

17

18

19

20

21

22

23

24

25

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 6

1   APPEARANCES, CONTINUED:

2   MICHAEL LUSKIN

3   Luskin, Stern & Eisler, LLP

4   Eleven Times Square

5   8th Ave. & 41st St.

6   New York, New York 10036

7   212.597.8200

8       Appearing on behalf of Financial

9       Oversight and Management Board.

10

11   RICHARD A. CHESLEY

12   DLA Piper LLP

13   444 West Lake Street

14   Suite 900

15   Chicago, Illinois 60606-0089

16   312.368.4000

17       Appearing on behalf of Employees

18       Retirement System of the Commonwealth of

19       Puerto Rico.

20

21

22

23

24

25

1   APPEARANCES, CONTINUED:

2   SPARKLE L. SOOKNANAN

3   Jones Day

4   51 Louisiana Avenue, N.W.

5   Washington, D.C.  20001-2113

6   202.879.3939

7       Appearing on behalf of Altair Global Credit

8       Opportunities Fund (A), et al.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings on 01/04/2017

Job 4622
Page 8

1          INDEX PAGE

2  WITNESS:                    PAGE

3  (None.)

4

5          EXHIBITS

6  EXHIBIT     DESCRIPTION        MARKED

7  (None.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                     Job 4622
Court Proceedings   on 01/04/2017                                          Page 9

1                    Wednesday, January 4, 2017

2              THE CLERK:  The first case today is

3    16-2377, Peaje Investments LLC versus Alejandro

4    Garcia-Padilla et al and consolidated cases.  And

5    Number 16-2437, Brigade Leveraged Capital Structures

6    Fund V Alejandro J. Garcia-Padilla et al and

7    consolidated cases.

8              MR. BRUNSTAD:  Good morning, your

9    Honor, Eric Brunstad on behalf of Peaje Investments.

10   If I may have about three minutes for rebuttal time,

11   your Honor?

12             THE COURT:  Yes.

13             MR. BRUNSTAD:  Thank you.  First of

14   all, we appreciate being here on expedited review.

15   And in the time that I have this morning I'd like to

16   touch upon three things.  The first is the harm that

17   Peaje is suffering as a result of the taking of its

18   collateral.

19             The second is why adequate protection

20   is the correct standard of cause here.

21             And the third is why the District

22   Court erred in failing to hold a hearing.

23             Focusing on harm, Peaje holds

24   $63 million in limited recourse bonds.  By limited

25   recourse, I mean that ordinarily Peaje can look only

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                          Job 4622
Court Proceedings  on 01/04/2017                                       Page 10

1   to its collateral, the Toll Revenues to be paid.

2   When we started back in May of 2016, Peaje's

3   collateral consisted of two buckets.  The first

4   bucket consisted of cash equal to about 10 percent

5   of the principal and interest outstanding on the

6   bonds, on deposit with the fiscal agent.  The second

7   bucket is the future Toll Revenues.

8           Now here we are in January, the second

9   payment; I understand first payment in July, second

10  payment now has been made from the cash.  The cash

11  is gone or almost gone.  That money is gone.  So all

12  we have to look forward to now is the future

13  payments, the future Toll Revenues, which we don't

14  know that much about.  We don't know how much they

15  are, what they're actually going to be.  We think

16  they're going to be insufficient to both cover the

17  future payment obligations and to make up for what

18  has been taken.  But the harm is --

19           THE COURT:  Staying right with that,

20  why is that the standard?  I read your briefs below

21  and on here you consistently say that the future

22  revenue stream won't be enough to cover all of the

23  obligations, not just the debt obligation but also

24  refunding, in effect, collateral.  And as I

25  understand the adequate protection rule which you'd

1  like us to apply, we don't look at that.  We

2  actually look -- if a creditor is over-secured we

3  will get whether the collateral will be impaired

4  down to the point to eliminate what the Court's call

5  an equity cushion.  And I don't see you ever having

6  argued that either below or even in any brief to us

7  on appeal.

8          MR. BRUNSTAD:  Yes, your Honor.  But

9  the critical point there is that it's a question of

10  fact.  It depends on the value of the future

11  revenues.  They --

12          THE COURT:  Can you point to anything

13  in your filings with the District Court where you

14  proposed, where you even alleged that the diminution

15  in the value of the collateral would be enough to

16  take you down below -- in other words, not just

17  impaired the collateral, but reduce it so much that

18  it would impair the debt?

19          MR. BRUNSTAD:  Well, we argued over

20  and over again that that was what was going to

21  happen.

22          THE COURT:  I didn't see it.  Can you

23  point me towards where you --

24          MR. BRUNSTAD:  On the (inaudible),

25  your Honor, I will give you the page cites to our

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 12

1   brief.  I don't have it right in front of me, but I

2   will do that.

3           But the point is that it is a question

4   of fact, and we never had a hearing.  And I also

5   want to point out, it is the debtor here, the

6   Commonwealth's burden to show that there is no harm

7   to us.  It's not our burden to show that when they

8   take our collateral and spend it, that we will be

9   harmed.  It is their burden to show that it won't

10  be.  When they take your cash, when they take your

11  property, and they dissipate it or they spend it, it

12  is their burden to show that we're being adequately

13  protected nonetheless.  And the adequate protection

14  standard is very simple.  It comes from Morales and

15  it's that they must basically show there's a

16  reasonable assurance of a suitable replacement.

17          They have to show that the cash today

18  is being replaced by something, and they have to

19  show first when they're going to stop taking our

20  collateral, because if they keep taking our

21  collateral infinitely into the future we'll never be

22  paid, we're obviously harmed, and --

23          THE COURT:  Back to the burden

24  question that you just touched on and explain to me

25  the basis for your assertion that the burden would

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 13

1   be on them given that the statute -- I know we start

2   out with language that says "For cause shown".

3           MR. BRUNSTAD:  Correct, your Honor.

4           THE COURT:  That "shown", I think

5   suggests that the party seeking relief will show

6   cause, which kind of sounds like you have some

7   burden here.

8           MR. BRUNSTAD:  We do.  We have a

9   burden of showing we have a secured interest.  We

10  have a burden of showing that they are taking our

11  property and spending it.  Those are undisputed

12  facts.  We've established our burden.  The burden

13  that exists for them to show, that their taking of

14  our property and dissipating it is not causing us

15  harm.

16          This standard of cause is borrowed

17  from Section 362 of the Bankruptcy Code.  Section

18  362 says that relief from the automatic stay in

19  bankruptcy may be granted, including for lack of

20  adequate protection.

21          Then the concept of the cause is

22  borrowed there into PROMESA here.  We take the

23  subtle meaning of that concept here.  The subtle

24  meaning includes that they have the burden of

25  showing that they're taking our property and

1  spending it is not causing us harm.  That's what

2  adequate protection means.  The burden of proof is

3  baked into that very concept.

4          Now there's an important reason why

5  that must be the standard here.  PROMESA itself bars

6  us from asserting a remedy to stop them from taking

7  our property.  The statute itself prevents us from

8  asserting a remedy.  That in and of itself generates

9  a conflict with the Constitution, with the Fifth

10  Amendment, where somebody is continually taking the

11  property and you can do nothing about it.

12  Ordinarily we have all kinds of remedies that are

13  being prescribed by the statute.  To avoid a

14  conflict with the Constitution we must have a

15  mechanism that allows us to show that they -- we're

16  entitled to relief from the stay unless they can

17  show --

18          THE COURT:  But see, we have not

19  confirmed, you just said we must have a mechanism

20  that allows us to show.

21          MR. BRUNSTAD:  Correct.

22          THE COURT:  All right.  So go back to

23  the question.  How much do you have to show and

24  when?

25          MR. BRUNSTAD:  Yes.

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings  on 01/04/2017

Job 4622
Page 15

1          THE COURT:  And so what do you say to

2   the point that when you take the word "Shown" and

3   you add in the policy considerations that we're

4   talking about, a temporary stay, we're talking about

5   a desire to reduce suits, why wouldn't it

6   potentially lead to an argument that before a suit

7   is going to be allowed a creditor needs to come in

8   and at least make a prima facie claim that its

9   actual debt obligation is being impaired by the

10  reduction of collateral --

11          MR. BRUNSTAD:  Yes.

12          THE COURT:  -- below -- you have to at

13  least claim that in your motion.

14          MR. BRUNSTAD:  Oh, we did.  And in the

15  end it's the same burden we would have under Section

16  362.  Under Section 362 we must show cause, same

17  idea, all we have to do is come in and say "We have

18  a lien, a security interest in this property that's

19  undisputed."  Our collateral is being taken and

20  spent.  That is undisputed.  The burden then shifts

21  to them to demonstrate.

22          THE COURT:  But there aren't -- there

23  are bankruptcy cases, are there not, that say that

24  even in that situation, the creditor still has the

25  burden of showing that there is no equity cushion?

1   It's not -- it's not cut and dry; am I right?

2          MR. BRUNSTAD:  But actually in this

3   context it is.  First of all, they refuse to tell us

4   what the future revenues are going to be.  We don't

5   have that information.  And if we don't have -- if

6   we -- if we -- the cash was supposed to accumulate.

7   The cash, as we understand it, is now gone.  There

8   will be no money there to make the July payment

9   coming up in 2017, unless they turn those revenues

10  back on.  It takes time for those revenues to

11  accumulate.

12         On pages 34 and 35 of our brief, we

13  trace the history of the adequate protection concept

14  to the Morales holding case that Congress adopted

15  when it crafted the adequate protection concept.

16  And there the Court was very clear the adequate

17  protection concept clearly encapsulates this idea

18  that if you take someone's property, a promise of

19  future payment, which is all that they're offering

20  here, a promise of future payment from the future

21  revenues is never adequate protection unless they

22  can show, and it's their burden, that the future

23  revenues are so great that it doesn't make a

24  difference.

25         Picture the apple farm, where the

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings   on 01/04/2017

Job 4622
Page 17

1   farmer has apples, grows apples and they're there

2   and the bank has a lien on the apples to secure a

3   debt.  The farmer sells the apples and now has cash.

4   If the farmer spends the cash what does the creditor

5   have to look to?  Nothing.  The prospect of future

6   apples that may or may not be grown?  Or it might be

7   okay if the farmer can show in bankruptcy "I'm going

8   to grow all these future apples and they're going to

9   have such a great value that it doesn't matter that

10  I just spent all of your cash from this crop, it's

11  okay to make you wait."

12          But when the farmer spends the cash,

13  sells the apples and spends the cash, which is what

14  they have done here, they then have to come forward

15  and show you that there is a reasonable prospect of

16  a suitable substitute, a suitable replacement that

17  will be provided.

18          THE COURT:  Let me ask you a question

19  about that.  If Congress thought that -- that

20  the -- sort of the bankruptcy code way of dealing

21  with this in terms of adequate security was so

22  utterly critical when we're dealing with a sovereign

23  or somebody with the ability to tax or otherwise

24  raise revenue through fees, tolls, et cetera, why do

25  you suppose they didn't put that language in?

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings  on 01/04/2017                                  Page 18

1          MR. BRUNSTAD:  Two reasons.  One is --

2          THE COURT:  What I'm really asking is

3    how much flexibility do we have?

4          MR. BRUNSTAD:  Yes.  I would suggest

5    even though they said cause and didn't specify it,

6    the flexibility I think has to be cabined within the

7    adequate protection concept.  And here's why:

8          The adequate protection concept is

9    itself based on the Fifth Amendment.  The adequate

10   protection concept recognizes that when a debtor

11   files for bankruptcy the automatic stay kicks in and

12   prevents the secured creditor from exercising its

13   rights when its collateral is being dissipated.  And

14   Congress rightfully chose that -- this came from a

15   case law before Congress did this in 1978, that

16   where the collateral is being taken or dissipated or

17   is depreciating in value in bankruptcy, the secured

18   creditor has a constitutional right to protection,

19   otherwise the automatic stay itself affects the

20   taking.

21         THE COURT:  But if -- but if your --

22   if the Fifth Amendment argument hinges on the way

23   the reserve account is set up, the way the

24   expenditures are made, isn't that essentially a

25   contract claim as opposed to a property claim?

1          MR. BRUNSTAD:  No.  Security

2   Industrial Bank, the Supreme Court decision, it's

3   cited on page 1 of our reply brief citing the

4   Radford (ph) case, another other Supreme Court case,

5   illustrate that a lien in collateral is a property

6   right, not a contract right, it's a property right.

7   A lien is a purchase.  Under Article 9 of the

8   Uniform Commercial Code, a security interest is a

9   purchase interest in the collateral, it's an

10  ownership interest --

11          THE COURT:  But the payment that

12  you're talking about is a -- is a twice a year

13  payment --

14          MR. BRUNSTAD:  Correct.

15          THE COURT:  -- that is a result of

16  contract.

17          MR. BRUNSTAD:  That's just how the

18  collateral is to be distributed.

19          THE COURT:  Yeah, so I'm talking about

20  the revenue stream.

21          MR. BRUNSTAD:  In bankruptcy, it is

22  true, if we were in a bankruptcy proceeding, and

23  we're probably going to get -- go there, there will

24  be another stay, one more delay, if -- in the

25  bankruptcy proceeding it is true that debtors have

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                      Page 20

1   some leeway to alter the terms of payment, but

2   that's not what we're talking about here.  We're

3   talking about the security of payment, the

4   collateral itself, the property.  And when it is

5   dissipated, when it is spent, they have to show in

6   order to be able to spend it, that it's not causing

7   us any harm.  Why?  Because we are prohibited from

8   the platform of the PROMESA of stay from exercising

9   our rights.

10          So to preserve the Fifth Amendment

11  concern, and applying the Canon of Constitutional

12  Avoidance, the Court should interpret the cause

13  standard under PROMESA to be the same as the cause

14  standard under Section 362 of the Bankruptcy Code to

15  avoid that conflict with the Constitution where they

16  could just continue to take the collateral for as

17  long as they want and we can do nothing about it.

18  The standard should be the same.  It should also be

19  the same under the Borrowed Statute Canon, because

20  the -- the cause standard under the bankruptcy code

21  was imported here and so, the subtle meaning goes

22  with it, including the requirement of adequate

23  protection.

24          Adequate protection requires that they

25  show that a suitable substitute will be provided for

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings  on 01/04/2017                                 Page 21

1  what is being taken.  They never showed that below,

2  we never had a hearing.  As the Martin case from the

3  Eighth Circuit establishes, adequate protection is a

4  question of fact.  You cannot have a court decide

5  adequate protection without a hearing, an

6  evidentiary hearing.

7          THE COURT:  Thank you.

8          MR. BRUNSTAD:  Thank you.

9          MS. SOOKNANAN:  Good morning, your

10  Honors.  Sparkle Sooknanan for the Altair

11  appellants, holders of bonds issued by the Employees

12  Retirement System.  May I reserve two minutes for

13  rebuttal?

14          THE COURT:  Yes.

15          MS. SOOKNANAN:  Thank you.  Your

16  Honors, it is undisputed that since July of 2016,

17  the ERS has received over $100 million of employer

18  contributions that it has diverted from Appellants's

19  collateral accounts.  It is also undisputed that

20  appellants have a lien on that property and all

21  employer contributions received by the ERS.  And in

22  the absence of adequate protection to protect that

23  property interest, Appellants are entitled to relief

24  from the PROMESA state.

25          Appellants are both statutorily and

1   constitutionally entitled to adequate protection.

2   What the adequate protection requirement does is it

3   essentially reconciles the competing interests of

4   debtors and creditors.  Debtors get some breathing

5   room, secured creditors are barred from seizing

6   their property during the stay, and in exchange the

7   adequate protection requirement is meant to protect

8   secured creditors from the loss of value of their

9   collateral.  And what the Commonwealth is advocating

10   is essentially a one-sided automatic stay where

11   debtors's interests are protected and secured

12   creditors's rights are essentially disregarded, and

13   that is not the statute that Congress enacted.

14          THE COURT:  I understand that it's

15   (indecipherable) that the collateral potentially has

16   been reduced here, but let me ask you the same

17   question I was previously asking.

18          Is there a claim here in this case

19   that the reduction in collateral is enough to push

20   you to the point where there's no equity cushion, or

21   even worse, such that the payment of the debt itself

22   is now in jeopardy?  Because as I understand it,

23   you've I think stipulated that there'll payments

24   through the current extension of the Moratorium Act

25   and then inflows thereafter will be roughly 19

1    million a year where the debt obligations are

2    roughly 14 million a year -- or a month, rather.  So

3    it sounds like in 20 months, you build up 100

4    million back up.

5            So I'm having trouble seeing where

6    you've alleged the type of impairment of collateral

7    that would rise to the level of inadequate

8    protection.

9            MS. SOOKNANAN:  So two responses to

10   that, your Honor.  First, if it is in fact true that

11   all future employer contributions are going to be

12   paid, the bonds may well be over-secured.  The

13   problem is here that Appellees themselves have said

14   very clearly that future employer contributions are

15   uncertain.  And in fact, the only facts in the

16   record below, on which the District Court made its

17   decision about the certainty of future employer

18   contributions, is that they're uncertain.

19           The ERS has said that in plain terms,

20   the Commonwealth just a couple months ago, in

21   October when it submitted its fiscal plan to the

22   Oversight Board said that, that we can't trust in

23   those future employer contributions.  So they cannot

24   then say we are protected by those very

25   contributions.

1          And the District Court -- remember, a

2    district court found that the reason we are

3    adequately protected is because there is this future

4    revenue stream.  And the only facts in the record

5    about that revenue stream were facts we put forward,

6    statements by Appellees themselves that those

7    payments are not uncertain -- are uncertain.  I

8    apologize.  And if those payments are uncertain the

9    bonds are not over-secured.

10          And the second response to that is, is

11   the burden of Appellees to show that in fact

12   they're -- the bonds are over-secured?  They have

13   not, to this point, and perhaps they will clarify if

14   it is their position that the bonds are over-secured

15   and if they would like to prove as an evidentiary

16   matter that that is the case, but they did not meet

17   that showing below and there's no record on which

18   this Court to make that showing.  And the District

19   Court didn't find that to be the case.

20          THE COURT:  Could you clear up a

21   little confusion regarding -- as I understand it,

22   there's 75 million in funds that are in bank X, that

23   you would be all fine, everything would be okay if

24   it were moved over to a trust account?

25          MS. SOOKNANAN:  Yes, your Honor.  So

1   it is our -- so they have diverted -- as of Nov --

2   as of the time of the hearing, as of November it was

3   around 75 million.  The ERS has said it's receiving

4   approximately 18.8 million a month and so there's

5   somewhere more than 100 million now.

6            What they are saying is that they're

7   diverting our money, but they don't actually need

8   it.  They're not using it.  The ERS has represented

9   to this Court that it's simply sitting in an account

10   being held and not used.

11           THE COURT:  And does your lien not

12   trade -- follow those funds into that account?

13           MS. SOOKNANAN:  Correct, it does not.

14   And what we've said to them is, "If you're not using

15   the money, instead of holding the money in an

16   operation account where you're free to spend it

17   tomorrow, simply place it in a separate account,

18   attach a lien, or hold the money for our benefit

19   until a court decides who has the right to that

20   money."  That's all we have asked for and that would

21   have ended this litigation.  That's what we asked

22   for in the District Court.

23           THE COURT:  And do you agree with --

24   ERS asserts that its prohibited from making that

25   transfer by the Moratorium Act, or executive order

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                              Job 4622
Court Proceedings   on 01/04/2017                                          Page 26

1   issue pursuant to the Act, and what they cite in

2   their brief simply suspends an obligation to make

3   the transfer, but at least English translation does

4   not indicate that it prohibits them from making a

5   transfer.

6            MS. SOOKNANAN:  So, even if the -- the

7   Moratorium Act prohibits them from making that

8   transfer, that is why we are saying "Even if you're

9   not transferring it to our collateral accounts, if

10   you're not using it put it in a separate account,

11   don't keep it in an operating account where you're

12   free to spend it.  Put it in a separate account and

13   agree not to touch the money for this stay and when

14   a court decides whether we have actual access to the

15   money or not, that's when the money can be moved."

16            So we understand that the -- their

17   hands might be tied by the Moratorium Act in some

18   respect, but if they're not using the money and they

19   have no need for the money they should separate the

20   money, and that's all we have asked and they have

21   refused to do so to this point.

22            THE COURT:  And so, do you agree that

23   the Moratorium Act not only suspends an obligation,

24   but prohibits them from performing that obligation?

25            MS. SOOKNANAN:  Your Honor, I would

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 27

1    say the Moratorium Act suspends the obligation even

2    if it -- even if it prohibits them that does not

3    prevent them from simply separating the money.

4    Right now the money is sitting in an operating

5    account and they are representing to this Court

6    they're not using it, but they're free tomorrow to

7    spend that money.

8              Our lien does not attach to that

9    operating account and they have stipulated that they

10   pay expenses out of that operating account.

11             At the end of the day, Appellants are

12   entitled to adequate protection, and in this case,

13   they have not proven that we are adequately

14   protected by that future lien on employer

15   contributions.  And this is not a case where

16   Appellants are saying despite -- there's a lot of

17   rhetoric in the Commonwealth's brief about the

18   financial woes facing the Commonwealth, and that may

19   well be true, but this is not a case where the

20   Commonwealth is saying to this Court that it needs

21   Appellants's property to keep the lights on.  They

22   are saying to this Court that they are diverting our

23   property, money that is ours, and it is undisputed

24   that it is ours, they are diverting that money, just

25   keeping it in an account for no reason whatsoever

1   and holding that money.  We cannot start telling

2   secured creditors that they will have no access to

3   their collateral.  That it will be diverted by a

4   debtor with no adequate protection whatsoever, and

5   in this case, for no reason whatsoever.

6           Secured creditors are constitutionally

7   entitled to adequate protection.

8           THE COURT:  In your case, do you think

9   it makes any difference -- suppose we agree with you

10  about the standard --

11          MS. SOOKNANAN:  Yes.

12          THE COURT:  -- that adequate

13  protection -- is the Bankruptcy Code adequate

14  protection and we look to see whether there's an

15  equity cushion of at least 20 percent or more or

16  something like that.  Does it make any difference in

17  your case to whom the burden of production and the

18  burden of persuasion is allocated?

19          MS. SOOKNANAN:  Your Honor, in this

20  case it does, because the appellees below had the

21  burden of proving that we are adequately protected.

22  They have not contested that and the District Court

23  held that to be so.  They did not meet that burden

24  below.  They did not even attempt to show that there

25  was an equity cushion because no hearing was

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                           Page 29

1   conducted.  And for that reason, at a minimum, if it

2   is their claim today that we are adequately

3   protected because there is an equity cushion, and

4   this Court could reman the case so they have the

5   opportunity to prove that.  But on the record that's

6   before this Court, there is nothing that this Court

7   can use to decide that there is an equity cushion,

8   all that's in the record about that future revenue

9   stream are statements from Appellees themselves that

10   those payments are uncertain.

11          And on that record, the Court cannot

12   find and the District Court incorrectly found that

13   Appellants are adequately protected.  Thank you,

14   your Honors.

15          MS. MURPHY:  Good morning, your

16   Honors, and may it please the Court, Erin Murphy on

17   behalf of the individual Commonwealth Defendants.

18          Congress enacted Section 405 of

19   PROMESA for the expressly enumerated purpose of

20   providing the Commonwealth with immediate but

21   temporary reprieve from costly creditor lawsuits.

22   Now withstanding Congress's findings that this

23   temporary stay is essential to stabilize the region,

24   Appellants insist that they should be able to

25   litigate their claims immediately even though they

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 30

1  concededly are being paid in full right now, and

2  concededly will continue to be paid in full

3  throughout the duration of PROMESA's stay.

4          The District Court's conclusion that

5  they should have to wait out the remainder of the

6  brief stay that's left is a classic interlocutory

7  order over which we believe this Court lacks

8  jurisdiction, but in the event the Court concludes

9  otherwise, should affirm the decision below because

10  the District Court was manifestly correct in

11  concluding that Appellants failed to demonstrate

12  anything that differentiates them from all the other

13  creditors to whom this stay is plainly intended to

14  apply.

15          THE COURT:  Let's assume that that

16  shows that the debt payments were remaining current

17  for now, but the Commonwealth took all of the

18  collateral that would secure future debt payments, a

19  hundred percent of it, is it your contention that as

20  the Commonwealth is in the process of doing that,

21  Congress prohibited the creditor from going to court

22  to protect itself?

23          MS. MURPHY:  Well, the creditor can go

24  to court and try to demonstrate cause to lift the

25  stay, and that's going to depend on the particular

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings  on 01/04/2017                                  Page 31

1    facts that --

2            THE COURT:  Are you saying that

3    (inaudible) cause, what I just described?

4            MS. MURPHY:  I think it depends on

5    what the collateral is.

6            THE COURT:  Assume it's a hundred

7    percent of the collateral.

8            MS. MURPHY:  But if the collateral is

9    purely cash, at the end of the stay they get to

10   litigate their claims and seek money damages for the

11   full amount of what they lost during the stay.

12           THE COURT:  Well, if the money is

13   being given and dispersed to a million people, so

14   there's no claim, and they have given unsecured

15   claim for money damages against the Commonwealth,

16   the whole idea of security seems to me that

17   (indecipherable) standards of secured credit rather

18   than unsecured.

19           MS. MURPHY:  Sure.  And these

20   creditors will be secured creditors.  They are right

21   now and they'll be secured creditors when the stay

22   lifts.

23           THE COURT:  Not in the hypothetical

24   I've asked you to address, which as I've proposed in

25   the hypothetical that all of the collateral is

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                          Job 4622
Court Proceedings   on 01/04/2017                                      Page 32

1   taken.

2           MS. MURPHY:  Right.  And in that

3   circumstance, you'd be a secured credit -- secured

4   creditor whose security is gone, but you'd have a

5   claim to litigate against the Commonwealth saying

6   "You dissipated my security and therefore you owe me

7   money damages for the full value of my claim."

8   That's what differentiates what's going on here from

9   a bankruptcy case.

10          THE COURT:  So I think what you're

11  saying is tomorrow the Commonwealth could go out and

12  take all of the collateral, essentially, of all of

13  the creditors in Puerto Rico and there's nothing

14  that the creditors can do about it until after the

15  fact bring damage claims that themselves would be

16  unsecured.  That's what I'm hearing you saying.

17          MS. MURPHY:  What I'm saying is that a

18  creditor would need to come in and make a showing

19  about not just that their collateral is being taken

20  right now, but that they won't be able to recover

21  their collateral once the stay lifts.  And that's

22  what these creditors can't show.

23          THE COURT:  True.  In the hypothetical

24  it's being dispersed to the general population.

25          MS. MURPHY:  And if they could

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 33

1  demonstrate that not only is all of their collateral

2  being dissipated, but there will be nothing left at

3  the end of the day, there will be no ability for

4  them to get money damages to get back the money they

5  have lost, that might be an instance where you could

6  demonstrate cause to lift the stay.

7          But that's not what we have here.

8  What we have here is a creditor who's being paid

9  right now, and who hasn't demonstrated that they

10  won't be paid once this stay lifts or that even if

11  they weren't paid at some point, they wouldn't have

12  all the remedies that both PROMESA and Act 21, the

13  Moratorium Act, contemplate.  Because both of those

14  statutes fully preserve their secured interests and

15  their ability to litigate those secured interests

16  once the stay lifts.

17          THE COURT:  Are you aware of any

18  bankruptcy case that holds that the elimination of

19  collateral is not something that is cause for relief

20  merely because you would have an unsecured damage

21  claim in which you might or might not recover your

22  money?

23          MS. MURPHY:  In bankruptcy context,

24  we're operating under a rule that we don't think is

25  the right rule here.  In the bankruptcy context,

1   there is an adequate protection standard written

2   into 362.  There's also a burden shifting

3   (indecipherable) written into 362 that says it's the

4   debtor's burden to demonstrate adequate protection.

5   Both of those provisions were conspicuously excluded

6   from Section 405 for PROMESA.

7          It does not include an adequate

8   protection standard and it does not -- you know,

9   they have repeatedly said that it's our burden.

10  Under 362 it's the debtor's burden, but that's

11  because the statute expressly says that it's the

12  debtor's burden to demonstrate adequate protection.

13         That is another provision that

14  Congress did not import into Section 405.  And we

15  would submit the reason Congress didn't import a

16  burden shifting regime for proving adequate

17  protection is because Congress also did not import

18  an adequate protection standard into Section 405 of

19  PROMESA.  It didn't intend that standard to apply

20  and that's because you don't need an adequate

21  protection standard in this context because PROMESA

22  is quite different from the bankruptcy stay.

23         A bankruptcy stay operates for the

24  duration of the entire bankruptcy.  So in effect

25  what it says is you're never going to get to

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 35

1   effectively foreclose on your collateral, that's

2   what's usually going on in an inadequate protection

3   case, they want to foreclose on the collateral.  And

4   the automatic stay in bankruptcy says you don't get

5   to do that period, we're letting the debtor keep

6   your collateral for the duration of the stay.  That,

7   as courts have recognized, raises some distinct

8   Fifth Amendment concerns that have led to an

9   adequate protection standard that Congress put into

10   that provision.

11          Here, that's not what's going on.

12   PROMESA doesn't say that the debt that -- for one

13   thing, there is no debtor right now.  There is no

14   Title III bankruptcy proceeding here.  The

15   Commonwealth is not a debtor.  All that's going on

16   is there's essentially a stay put in place for

17   everyone to figure out whether we're going to

18   proceed to a Title III bankruptcy proceeding,

19   whether we're going to have voluntary restructuring,

20   whether some of these obligations may continue to

21   remain in force in the same shape that they are

22   right now.

23          So this is very different from

24   anything you have in the bankruptcy context and it's

25   also temporary, it ends February 15th or at the very

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 36

1   latest May 1st.  And at that point, either the

2   Appellants here will be able to litigate their

3   claims in full and seek money damages for whatever

4   injuries they believe they have suffered, or we will

5   be in a Title III proceeding at which point the 362

6   stay will kick in.  Because in Title III, unlike in

7   Section 405 of PROMESA, Congress actually imported

8   362 in its entirety.

9           So if we get into a Title III

10  bankruptcy proceeding, they'll have a different set

11  of arguments that they can make, they'll be able to

12  say that they're entitled to adequate protection and

13  that we need to make a showing about what is --

14          THE COURT:  That's closing -- that's

15  closing the barn door, right?  A little too late

16  here if in seven months all of the collateral has

17  been taken.  I keep going back to it and (inaudible)

18  the burden, because I don't think the burden is

19  constitutionally imposed, so we have a statutory

20  instruction.

21          But I'm just having great difficulty

22  with your argument that there's this seven-month

23  window where the government can entirely, entirely

24  destroy the value of collateral a hundred percent

25  and yet that wouldn't in and of itself be good

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                          Job 4622
Court Proceedings   on 01/04/2017                                      Page 37

1    cause.

2            Now, I'm not saying they're entirely

3    destroying it here.  There may be in the future

4    income streams as the court found enough, but you're

5    asking us to take pretty broad proposition that

6    seems to run into a real takings problem.

7            MS. MURPHY:  Well, your Honor does not

8    have to resolve the hypothetical that you suggested

9    in order to resolve this case, because as you've

10   recognized, that's not the claim here.

11           THE COURT:  Right, if you reject that

12   hypothetical then it turns the argument back to

13   whether there is adequate protection here or perhaps

14   whether the burden of raising a question of adequate

15   protection was or was not met in the allegations

16   made, which is a different conversation than you've

17   been urging us to have so far.

18           MS. MURPHY:  Sure.  And we do think

19   that the right way for the Court to look at this is

20   not -- and I don't think it would be consistent with

21   what Connis (ph) was trying to do in PROMESA to say

22   that the Commonwealth has to go through elaborate

23   hearings where it demonstrates exactly, you know,

24   for every dollar that we're spending to try to

25   ensure that residents are receiving essential

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                           Job 4622
Court Proceedings  on 01/04/2017                                       Page 38

1   services, which Congress put express findings into

2   this statute that part of the point of the stay was

3   to give the Commonwealth the resources it needed to

4   ensure that its residents will receive essential

5   services.  So the idea that, you know, for every

6   dollar diverted the Commonwealth has to demonstrate

7   that it's also setting aside the exact equivalent

8   dollar to ensure --

9            THE COURT:  That's not the adequate

10  protection test.  You just have to show -- someone

11  has to address the issue of whether there's an

12  equity cushion or not.  And if they're over-secured,

13  then they're over-secured and go at it.

14            MS. MURPHY:  Absolutely, your Honor,

15  which is why we don't believe that they could

16  satisfy adequate protection even if that were the

17  correct standard here.  But, we do believe that the

18  right standard for the Court to apply is a more

19  traditional equitable balancing of the equities in

20  the case, looking at not just whether they're

21  suffering some sort of harm as a result of the

22  Commonwealth's actions, but whether they are

23  suffering irreparable harm that cannot be remedied

24  at the end of the stay.

25            And I think that has to be the right

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings   on 01/04/2017

Job 4622
Page 39

1    standard, because we're talking about a statute that

2    was enacted on the express premise that the

3    Commonwealth was using pledged revenues to pay for

4    essential services.  And the executive orders they

5    want to challenge, the first one, Executive Order

6    18, allowing the diversion of Toll Revenues, that

7    was promulgated more than a month before PROMESA was

8    enacted.

9           And there were -- it's also implicit

10   and explicit in PROMESA that there would be

11   creditors who wouldn't be paid during the duration

12   of this stay.

13          So Congress enacted this statute,

14   understanding that there were creditors as to who

15   the Commonwealth and its instrumentalities wouldn't

16   live up to a hundred percent of the bargain that

17   they had made during this stay.

18          THE COURT:  Wait.  How do you suggest

19   we deal with Section 405(k)?

20          MS. MURPHY:  I think section 405(k) as

21   a form of -- an additional form of protection for

22   Appellants's interests.

23          THE COURT:  But doesn't it suggest

24   that we should not interpret PROMESA in a way as to

25   destroy security interests since Congress said

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings on 01/04/2017

Job 4622
Page 40

1   PROMESA wasn't to destroy security interests?

2             MS. MURPHY: No, I think that what

3   405(k) is saying is notwithstanding the fact that

4   the Commonwealth didn't have to live up to its

5   obligations during the stay, that doesn't mean that

6   you don't have all your rights the moment the stay

7   lifts. So it's a form of protection saying, you

8   know, unlike in a bankruptcy proceeding, we're not

9   actually allowing the Commonwealth to discharge or

10  alter your means, your secured interests, your

11  contractual rights. All of those are fully intact

12  and the moment the stay expires you can go to court

13  and allege and try to prove that, you know, that

14  these actions that were taken were inconsistent,

15  that they caused you harm, that you're entitled to

16  damages. So I actually think that 405(k) is further

17  proof that Congress intended to allow the

18  Commonwealth to do the things that it knew the

19  Commonwealth was doing when it enacted this statute,

20  and instead of creating a broad outlet to basically

21  let every creditor out from under the stay, Congress

22  said what we're going to do is ensure that your

23  rights are fully protected once the stay lifts. And

24  the "For clause" standard is really intended to be a

25  safety valve to deal with the extraordinary

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                     Job 4622
Court Proceedings   on 01/04/2017                                          Page 41

1  creditor, not the creditor who's just making

2  basically the same argument that any creditor, at

3  least any secured creditor could make, which is, you

4  know, "I don't think the Commonwealth is living up

5  to a hundred percent of --"

6           THE COURT:  Tell me what -- what an

7  extraordinary creditor would be, in your mind.

8           MS. MURPHY:  I think an extraordinary

9  creditor, you know, one, you might have a creditor

10  who has a form of collateral that actually cannot be

11  remedied if it's lost during the -- it's something

12  other than money.  Money can always be remedied with

13  money.  If they had a particular form of collateral,

14  that was being, you know, diminished and could not

15  be made up for after the stay was lifted.

16           You might also perhaps have a creditor

17  who has unique circumstances of their own that make

18  it irreparable damage if they aren't getting paid

19  now.  Now of course, I do think that you at least

20  have to be a creditor who's not getting paid, which

21  these creditors aren't.  These creditors are being

22  paid in full and conceivably will be paid in full.

23           So, in -- in our mind, you know, that

24  makes them basically the very last creditors that

25  Congress would have wanted to be able to lift the

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 42

1   stay and engage in litigation about whether they

2   should be entitled to effectively two lines of

3   security for their interest instead of just one.

4           THE COURT:  When you say that the

5   statute should -- or contemplates sort of a

6   traditional balancing of the equities, so shouldn't

7   there be a hearing?

8           MS. MURPHY:  I think that the -- the

9   way that this case ended up getting to the Court

10  -- I mean, there were stipulated facts that

11  basically stipulated to all of the facts that were

12  relevant to the analysis here, because they

13  stipulated that they've been paid, they will be paid

14  throughout the stay and there was stipulations about

15  what the revenue streams -- I mean, in the Altair

16  case there's specifically the stipulations Judge

17  Kayatta referenced about exactly what the levels of

18  the revenue streams are.  So everything was there

19  that the Court needed.

20          And in the Peaje case, there had just

21  been a hearing from which hundreds of pages of

22  testimony were designated on the specific question

23  of whether the HTA revenues were going to be

24  sufficient in the future.  And one of the claimants

25  there was an insurer saying "We think we're going to

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 43

1  have to cover claims in the future because we think

2  these revenues will run out."

3          So, you know, it's not as if the

4  District Court made a decision here without facts.

5  And in that particular context, I think really it

6  was incumbent on these parties if they thought

7  given -- you know, given the record that they put

8  before the Court of stipulated facts, of testimony,

9  of the information that the Court recently could

10  have viewed as sufficient for it to make its ruling,

11  I do think it was incumbent on them to say "Hey,

12  hold on, you know, you need to reconsider this

13  ruling because we think we had something additional

14  beyond what we already put before you that you

15  didn't realize would have been relevant."  And

16  neither of the appellants here did that.

17          THE COURT:  What is the result of this

18  ongoing litigation had on the whole notion of

19  breathing room?

20          MS. MURPHY:  Well, there is a lot of

21  testimony that the Commonwealth put on about that in

22  the Brigade hearing, and some of that was designated

23  in the Peaje proceedings, regarding about how, you

24  know, it has caused the Commonwealth to have to

25  divert resources.  And having a hearing not only

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings on 01/04/2017

Job 4622
Page 44

1  requires someone to come testify, it requires

2  pulling people away from what they should be doing

3  under PROMESA, which is, you know, getting the

4  Commonwealth back in fiscal order to prepare for the

5  hearing, to help prepare and review all papers that

6  are being filed in all of this litigation.

7         So it really has been a tremendous

8  distraction to the Commonwealth, which is exactly

9  the opposite of what Congress intended when it said

10  "We're going to give you this stay precisely because

11  we don't want you to be spending your time in costly

12  creditor litigation when it would be better to put

13  that time to the use of -- and seeing to the needs

14  of the people of Puerto Rico and getting Puerto Rico

15  back into fiscal order."

16         THE COURT:  And just one more

17  question.

18         Regardless of who has the burden, if

19  we're honing in on the notion of equitable cushion,

20  what specifically in the evidence demonstrates that

21  there's an equitable cushion, the record stipulated

22  record evidence?

23         MS. MURPHY:  Sure.  I think it's --

24  it's -- I mean, the stipulated evidence in Altair

25  demonstrates that even without the contributions

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 45

1  from the Commonwealth employees, which are only

2  suspended temporarily pursuant to these executive

3  orders, even the non-Commonwealth contributions are

4  higher than the stipulated amounts necessary to

5  service the debt.

6            And as to the HTA Peaje party, you

7  know, I don't understand them to ever have even

8  suggested that they think the HTA revenues are going

9  to be so low that they can't be paid, particularly

10  given that Peaje is actually -- they're kind of the

11  first priority set of creditors under the HTA,

12  because they're the earliest set of bonds.  So

13  basically you'd have to have like no HTA revenues

14  coming in for them to have any real risk of not

15  getting paid.  And that's why, as I understand it,

16  really their complaint has only been they don't

17  think there will be sufficient revenue to not only

18  pay them, but reinstate the reserve accounts and we

19  don't think that's the right standard even -- you

20  know, we don't think they're entitled to an equity

21  cushion that would not only ensure that they're

22  being paid, but also kind of ensure that they have a

23  secondary line of, you know, kind of security for

24  getting paid in the future.  If there are no further

25  questions, thank you.

1      MR. CHESLEY:  May it please the Court,

2  Richard Chesley on behalf of ERS, the Employee

3  Retirement System of the Commonwealth of Puerto

4  Rico.

5      I appreciate the Court's time here

6  this morning and I will be brief as Counsel for the

7  Commonwealth has covered many of the topics we

8  wanted to raise.  But with respect to the issues

9  before this Court and regardless of how the Court

10  resolves certain of the legal challenges, the

11  Appellants's appeal with respect to ERS founders on

12  one crucial set of facts to which they stipulated

13  below, and which the District Court relied upon in

14  its holding.  That there are sufficient monies in

15  the debt service and reserve accounts to service the

16  bold holder debt until April 1st of 2017, after the

17  PROMESA stay expires.  And not a single principal

18  and interest payment will be missed while the

19  PROMESA stay remains in place and therefore, the

20  Appellants face no financial harm as a result of the

21  stay.

22      Moreover, based upon the liens that

23  are held in the pledged property, and we'll talk

24  about that in a moment, the bondholders are secured

25  not only until the conclusion of the PROMESA stay,

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                          Job 4622
Court Proceedings   on 01/04/2017                                      Page 47

1   but for many, many years to come based upon the

2   stipulated record that was before the District

3   Court.

4          And again, while Counsel for the

5   Commonwealth has adequately covered many of the

6   issues we want to touch, I do want to raise a couple

7   of points that I think are extremely relevant for

8   this panel's consideration.

9          First of all, the Appellants take the

10  position that the standards for relief from the

11  automatic stay under Article IV of PROMESA, I'm only

12  talking about Article IV of PROMESA, should simply

13  mirror those under Section 362 of the bankruptcy

14  code.  Namely the cause for relief from the

15  automatic stay should include, but not be limited

16  to, which the bankruptcy code provides, adequate

17  protection.  They advanced the position despite the

18  fact these two statutory schemes have different

19  language and were intended for very different

20  purposes.

21          So then what did Congress intend?  And

22  I think the Congressional history underlying Article

23  IV of PROMESA is very critical to see what did

24  Congress intend.  Well, the house report on Section

25  405, which is cited in our brief, states under the

Case:17-03283-LTS Doc#:7702-44 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc:
Exhibit 43 Page 50 of 94
PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings on 01/04/2017
Job 4622
Page 48

1  Section 405 automatic stay appoint enactment, "If a

2  party is determined to be subject to irreparable

3  damage because of the imposition of the stay the

4  district court is authorized to grant relief from

5  the stay to such party."

6          Of course, if Congress wanted to

7  impute the adequate protection standards under

8  Section 362 and Section 361 into Article IV it

9  certainly could have and it absolutely did that with

10  respect to Article III of PROMESA.  But we're not in

11  the realm of Article III, we're simply during this

12  limited phase of the infirm relief.

13          THE COURT:  And then how do you

14  address the argument that as a constitutional

15  matter, taking so much of the collateral as to

16  impair the ability to pay the debt is itself

17  irreparable harm because it's a taking?

18          MR. CHESLEY:  And this goes to the

19  factual issues that were before the District Court

20  on the ERS appeal.

21          THE COURT:  Well, no, putting aside

22  the facts, you are suggesting the use of the

23  irreparable harm standard rather than an inadequate

24  protection standard.

25          MR. CHESLEY:  Yes, your Honor.

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                     Job 4622
Court Proceedings  on 01/04/2017                                  Page 49

1          THE COURT:  And I'm having trouble

2    seeing what the difficulty is if we had a true

3    scenario assuming the facts did show blatant lack of

4    adequate protection, wouldn't that be irreparable

5    harm?

6          MR. CHESLEY:  Well, fortunately in our

7    case that's not the factual record, but to the

8    extent -- you Honor, I do agree to the extent we had

9    a situation where there was a blatant taking of all

10   of the property, then I think there would be a

11   compelling argument that that is irreparable harm.

12         THE COURT:  And then could you also

13   address the issue I had asked Counsel about earlier,

14   why -- what is it that actually prohibits ERS from

15   making the payments?  I understand there's

16   legislation that has suspended your obligation to do

17   so.

18         MR. CHESLEY:  The Moratorium Act

19   prohibits the transfer of that --

20         THE COURT:  And what is it in -- can

21   you refer to us any language in that --

22         MR. CHESLEY:  With respect to the

23   Moratorium Act, your Honor, I can reference that to

24   the Court, but it limits the ability -- limits the

25   inflow of contributions from the Commonwealth to

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA          Job 4622
Court Proceedings on 01/04/2017                        Page 50

1  ERS, not the non-Commonwealth employees, and it

2  limits our -- precludes our ability to then transfer

3  amounts that we are holding to the bondholder.

4          THE COURT: Okay. The cites in the

5  briefs didn't seem to help on finding language that

6  did that.

7          MR. CHESLEY: We apologize for that,

8  your Honor. We can file a supplement to the extent

9  that is necessary.

10         But I do want to touch in my last

11 minutes on the facts. Yes, your Honor?

12         THE COURT: Please file that.

13         MR. CHESLEY: We will, your Honor.

14 And if I can, I do want to touch on the facts of our

15 case. Specifically since July of 2016, at the

16 beginning of the PROMESA stay, the ERS -- ERS has

17 been holding over 75 -- currently holding over 75

18 million in the operating account based upon

19 contributions from the non-Commonwealth employers.

20         Counsel for the Appellants made

21 mention of the fact that there's all these

22 representations or statements as to the uncertainty

23 with respect to future contributions. There is no

24 uncertainty with respect to the non-Commonwealth

25 contributions which amount to approximately

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                                    Job 4622
Court Proceedings   on 01/04/2017                                                Page 51

1    $20 million per month.  In fact, during 2015, again,

2    this is in the record, ERS received about

3    $224 million.  It solely in non- -- non-Commonwealth

4    employer contributions.  This is in the face of a

5    debt service obligation of $166 million.

6              This undisputed evidence was presented

7    before the District Court, that in fact the equity

8    cushion exists.  And with respect to that

9    $20 million, it continues to flow in and the

10   Appellants do have the lien.  If you look at the

11   pledged property definition that's included in the

12   stipulated facts, they have a lien in that

13   collateral, they have a lien in the reserve account

14   collateral which will pay them, and they have a lien

15   in the future revenue.

16             And the last thing that I think is

17   critical is what the judge did with respect to -- if

18   I may finish, your Honor.

19             THE COURT:  Yes.

20             MR. CHESLEY:  What the judge did, the

21   District Court with respect to the balancing of the

22   equities, and he made particular mention of the fact

23   that once the stay is alleviated the future revenue

24   stream, which is an additional $250 million,

25   approximately, per year in Commonwealth employer

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                          Job 4622
Court Proceedings   on 01/04/2017                                      Page 52

1   contributions, will then be made available back to

2   ERS.  This, in combination with more than adequate

3   amounts to pay the debt service based upon the

4   non-Commonwealth gave the District Court more than

5   adequate factual support to grant the relief that he

6   did.  Thank you, your Honor.

7          MR. LUSKIN:  May it please the Court,

8   Michael Luskin for the Financial Oversight and

9   Management Board of Puerto Rico, the Appellant in

10  seven appeals involving the intervention motions and

11  the amicus in the two lift-stay appeals that we've

12  been hearing about this morning.

13         THE COURT:  Mr. Luskin, are there any

14  pending cases in the District Court in which you're

15  waiting to hear about your intervention status?

16         MR. LUSKIN:  Yes.

17         THE COURT:  Okay.

18         MR. LUSKIN:  One called Lex (ph)

19  claims, which is mentioned in our opening brief or

20  amicus -- or opening appeal brief.

21         I know time is limited, but I am going

22  to spend a moment on the seven appeals that are

23  consolidated here.  We believe that the District

24  Court improperly applied a narrow and mechanical

25  test of Rule 24, governing intervention, the result

1  of course was to deny us participation in the seven

2  cases and the order should be reversed.  The

3  District Court found what it referred to as a

4  procedural deficiency, but there was none, the Court

5  apparently believed that what the board was required

6  to do was to file one of the pleadings of the kind

7  listed in Rule 7, answer and answer with

8  counterclaims and so on, but that's wrong.

9          What the rule requires is a pleading

10  that sets out the claim or defense for which

11  intervention is sought and that is precisely what we

12  did.

13          We believe the District Court should

14  have taken note of the -- and taken into account the

15  specific procedural postures of the cases.  In the

16  three consolidated Peaje cases there were no

17  complaints on file.  Two of the three parties had

18  included proposed complaints with their motion

19  papers and one of them, Altair, did not include a

20  proposed or draft complaint.  So, there was nothing

21  to respond to in the traditional Rule 7 sense.

22          THE COURT:  In some of the cases where

23  there was a complaint filed --

24          MR. LUSKIN:  Yes, the Brigade cases.

25          THE COURT:  -- why didn't the Board

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                          Job 4622
Court Proceedings   on 01/04/2017                                      Page 54

1   just file, I mean it could have been a one-page

2   answer, right, because an answer -- you only need to

3   respond to allegations against you.  There were

4   none.

5          MR. LUSKIN:  Well, I think that -- you

6   know, we did struggle with that, your Honor, to tell

7   you the truth.  We did feel that, frankly,

8   responsibly to reply to those, to answer those

9   allegations we would have had to take a position on

10   the merits on the preemption, the taking and the

11   other constitutional claims.

12          THE COURT:  Why is that?  Under Rule

13   (indecipherable) you don't have to respond to

14   allegations that aren't against you, right?

15          MR. LUSKIN:  Well, I can -- you're

16   correct and I will --

17          THE COURT:  But that was your

18   thinking, you thought you might be taking a risk of

19   having to respond?

20          MR. LUSKIN:  Well, we were -- yes, we

21   did not want to take a position, frankly, on any

22   aspect of these constitutional claims, and that

23   relates to the stay issue as well.  Having the

24   Oversight Board take a position on the merits, or

25   refusing to take a position on the merits, has an

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                Job 4622
Court Proceedings   on 01/04/2017                           Page 55

1   impact on our ability to negotiate.  Our goal as we

2   see, our statutory rule is to operate in a level

3   playing field, frankly, a quiet playing field.

4   That's what the stay is about, and that's what we

5   said in our intervention papers, and that's what we

6   explained to Judge Besosa as to why in our -- in our

7   motion for reconsideration, why we didn't take

8   positions on the merits.  We still have not taken

9   positions on the merits and we believe that during

10  this quiet period before Title VI or Title III

11  proceedings are filed we should not.

12          Our goal is to deal with those claims

13  in the conference room, not the courtroom, and see

14  if we can negotiate restructuring agreements or

15  consensual fiscal plans.

16          What we did do, in all seven cases,

17  Judge Kayatta, is -- is to address the sole live

18  issue that was then before the Court, which were the

19  pending motions to lift the stay.  And there can be

20  no doubt about what our position was, and that is

21  after all the goal of Rule 24.

22          We think the District Court should

23  have addressed our motions on the merits, not

24  relying on the procedural efficiency, to use his

25  words.  And had he done so he would have referred to

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 56

1   Section 212(a) of PROMESA which allows us to

2   intervene in any action against the Commonwealth.

3   He could have done so under Rule 24a-2, which allows

4   us to intervene as of right based on our interest,

5   our unique position, the adequacy of representation

6   sensation and so on.  And we would then have

7   participated in the case below.

8          We think that the -- this Court's

9   prior decisions support the Oversight Board's view

10  on these motions.  The one case cited in the Court

11  below was a case where there was no -- no proposed

12  pleading at all submitted and we would agree,

13  if -- if the punitive intervenor doesn't bother to

14  put in a proposed pleading of any kind then I could

15  see denying the motion.  But even there in the

16  Court's decision in Liggett (ph), there was no

17  intervention motion, but intervention was allowed,

18  particular facts but the right decision clearly.  So

19  those seven orders should be reversed.

20          Unless the Court has questions on

21  intervention I'd like to turn to the merits.  The

22  amicus position on the lift-stay motions.  And we

23  have suggested, the Oversight Board has suggested a

24  standard that is somewhat different than the other

25  parties, we do not believe that the sole touchstone

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                            Page 57

1   should be adequate protection, though I will say,

2   Judge Kayatta, that your hypothetical would, I

3   believe, present a situation where adequate

4   protection might trump everything else.  But this is

5   nowhere close to a case where a hundred percent of

6   anyone's collateral is being taken and destroyed.

7           We also don't believe that irreparable

8   injury alone is the sole touchstone.  And others

9   have pointed out that Bankruptcy Code 362 includes

10   adequate protection as reason, as cause for lifting

11   the stay.  Certainly Congress knew what it was doing

12   when it drafted 405E, it did not copy that language

13   notwithstanding the fact that it -- it copied or

14   incorporated verbatim 98 other provisions of the

15   bankruptcy code in Section 301 of PROMESA.  When it

16   wanted to copy it knew how to copy.  And it did not

17   do so here and I think that for purposes of

18   statutory construction that ought to be enough.

19           So why should the PROMESA standard be

20   a different standard?  And my answer is that PROMESA

21   establishes a very different regime than the

22   bankruptcy code.  PROMESA establishes what I refer

23   to as a quiet time, the breathing room, which is

24   actually part of the findings in the statute itself,

25   and purposes in the statute itself.  It establishes

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA          Job 4622
Court Proceedings   on 01/04/2017                       Page 58

1   breathing room, a quiet time for the Oversight Board

2   to do the very tasks that its mandated to do by the

3   statute, which is to organize, to collect

4   information, to designate covered instrumentalities

5   to develop projections to review budgets.  To

6   develop fiscal plans and to negotiate out-of-court

7   restructuring agreements, and to assess the

8   advisability of going the out-of-court route or the

9   consensual route of Title 6 of PROMESA or the

10  nonconsensual or only partially consensual route of

11  Title III bankruptcy.  And it's supposed to do -- we

12  are charged with doing all of that during the quiet

13  period.

14          Only after we decide which way to go

15  do we commence a bankruptcy proceeding if that's the

16  decision, to go into chapter -- a Title III and in

17  Title III-362 of the bankruptcy code along with 97

18  other provisions, expressly govern verbatim.  But

19  that's not where we are, we're in Title IV in the

20  quiet period.  And it is very important.

21          Forcing decisions on constitutional

22  issues to go to the intervention point would impede

23  negotiations, if not render them outright

24  impossible.

25          THE COURT:  In Congress --

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings  on 01/04/2017                                 Page 59

1          MR. LUSKIN:  Yes?

2          THE COURT:  And I realize it was quite

3   a concession because you used the word "Might", but

4   you're attempting that a complete elimination of the

5   collateral might be enough to overweigh everything

6   else.  Stay with that for a second --

7          MR. LUSKIN:  Yes.

8          THE COURT:  -- and not treat it as a

9   concession, but treat it as a talking point.  Why

10  wouldn't Congress have wanted to say "Well, that's

11  enough, but if you just take half the collateral,

12  well below the equity position, that's not enough"?

13  It's -- it's a -- it's a taking just as much.

14          MR. LUSKIN:  Well, but for adequate

15  protection and constitutional purposes, the only

16  taking that matters is a taking that threatens the

17  secured creditors's interest in the debtor's

18  interest in the collateral.

19          THE COURT:  Yeah, so assume that's the

20  rule.

21          MR. LUSKIN:  So if that's --

22          THE COURT:  In any equity position

23  debtor is out of luck -- creditor is out of luck,

24  okay.

25          MR. LUSKIN:  Right.

1          THE COURT:  But I'm talking about a

2   scenario where you go well below the equity --

3          MR. LUSKIN:  Right.  And I -- and I

4   believe that in a situation where the facts show

5   that a secured creditor at the outset of a case is

6   clearly and unequivocally moving from over-secured

7   to under-secured, in a way that damages and

8   threatens its ability to be repaid, is a

9   consideration.

10          However -- and the Supreme Court in

11   Timbers points this out, that -- that duration of

12   the stay is important.  The Morales case, the

13   Timbers case really don't help the Appellants here.

14   That case involved a ten-year note after a plan of

15   reorganization that stripped away the basket of

16   rights that the secured creditor had --

17          THE COURT:  The duration is important

18   only if there's not enough time to do the taking.

19   But if there's enough time to take it all then it's

20   gone.

21          MR. LUSKIN:  I -- following through

22   that hypothetical, but I must echo what my brethren

23   have stated up here, which is that we are so far

24   away from that kind of situation.  The record

25   establishes over-security here.  There is cash and

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 61

1   cash flow that is more than sufficient to pay the

2   debt service, and certainly during the duration of

3   the stay, from day one of the stay through the end

4   of the day next month, or whenever it ultimately

5   ends.

6          THE COURT:  So I think I hear you

7   saying, which makes sense, that it's not just the

8   duration, but it's the duration in relationship to

9   the berm rate here, and if the berm rate

10  (indecipherable) the duration does not create enough

11  to impair the collateral so that it threatens the

12  payment of the debt then --

13         MR. LUSKIN:  Correct.

14         THE COURT:  -- (inaudible) would have

15  an issue.

16         MR. LUSKIN:  Your Honor, yes, that is

17  correct and that is what distinguishes this case.

18  Where we have a perpetual income stream from

19  virtually all, if not all of the cash collateral

20  cases or adequate protection cases that the

21  Appellants cite, many of those cases were real

22  estate cases or equipment cases where the cash

23  collateral, the future rent that was being offered

24  as adequate protection was rent under a lease with a

25  term of years.  It was -- in one of the cases there

1   was 13 months rent left and in another of the cases

2   the key tenant was not renewing so the money was

3   going away.

4           So in those cases, if you took away

5   months 1 and 2 of rent, you weren't able to replace

6   them with new loans 13, 14 and 15 as you are in

7   these cases where total revenues are perpetual.  And

8   that's -- and the employer contributions are

9   perpetual.  And the excise tax and motor vehicle

10   fees that the HTS, the highway bondholders have

11   security interests in.  And those numbers and those

12   facts are in the record in the stipulations that

13   were put in to the District Court.

14           I'm not sure -- I've lost track of the

15   time here.  I think I'm probably way over.  I have

16   one more point that I ask your indulgence.

17           THE COURT:  Please make your point.

18           MR. LUSKIN:  Okay.  I apologize.  I'm

19   going to -- I do think the perpetual revenue stream

20   distinguishes these cases from the typical cash

21   collateral situation and the hypothetical that Judge

22   Kayatta has put forward.

23           And I -- I'll end by making the point

24   that the standard that the Oversight Board is

25   advocating is a balancing of a variety of factors

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                        Job 4622
Court Proceedings   on 01/04/2017                                   Page 63

1    without giving any one factor complete priority is

2    not a new or unfamiliar standard.  I mean, courts

3    constantly weigh factors to assess cause in many

4    situations where the statute doesn't list them or

5    give examples.  PROMESA uses cause in only two

6    instances, one of them is the one we've been talking

7    about, the other one does not list reasons.

8            The bankruptcy code and the bankruptcy

9    rules authorize courts to pact for cause or for

10   cause shown in 71 separate spots, by my count, of

11   which reasons or examples are given in only 10.  The

12   Federal Rules of Appellate Procedure authorize this

13   Court to act for good cause in seven instances and

14   in none of them is an example given.

15           Courts do not need examples to figure

16   out what the material relevant factors are, and

17   if -- in your hypothetical, if the facts presented

18   are like your hypothetical and constitutional issues

19   are implicated then, yes, that factor may come to

20   the fore.

21           But here, that is not what we have.

22   There is no damage.  There is no need for adequate

23   protection.  If there were need for adequate

24   protection it's there in the equity cushion and the

25   equity cushion in this case is different because of

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                          Job 4622
Court Proceedings   on 01/04/2017                                      Page 64

1   the perpetual revenue.  There's -- I think that

2   absent any further questions from the Court I should

3   stop.  I've gone way over my allotment.

4           THE COURT:  I have one.

5           MR. LUSKIN:  I'm sorry, yes.

6           THE COURT:  In terms of the approach

7   that you are advocating to take, I'm sure you read

8   Judge Besosa's Brigade case?

9           MR. LUSKIN:  Yes.

10          THE COURT:  Are you advocating

11  something more along those lines?

12          MR. LUSKIN:  I think Judge Besosa was

13  not as express as I have been in -- in our brief of

14  listing the particular factors.  I think in fact,

15  what Judge Besosa did is decide that he has to

16  balance all of the factors and that among the

17  factors that he was required to include or to assess

18  was adequate protection and I think he did that.  I

19  would, speaking for the Oversight Board, like to see

20  a decision from this Court is that is more express

21  and that could be -- and more expansive on the

22  balancing that makes it clear that the PROMESA

23  regime pre-petition is different from the bankruptcy

24  regime post-filing of the Title III case for

25  instance, so that in other cases we have guidance

1   and Judge Besosa has more guidance, so yes.

2          THE COURT:  Thank you.

3          MR. LUSKIN:  Thank you very much.

4   And, again, I apologize for going over.

5          THE COURT:  Not at all.

6          MR. BRUNSTAD:  Thank you, your Honor.

7   Judge Thompson, there is no evidence in the record

8   whatsoever of an equity cushion for Peaje and its

9   bonds.  Zero.  Counsel paints a rosy picture that

10  there will be enough money, et cetera, there is zero

11  evidence in the record to substantiate those claims.

12          We didn't have an evidentiary hearing.

13  We had an expert witness who was going to testify

14  about the projections and things, that was not

15  allowed.  These bonds are going to go out for

16  19 years.  Taking the cash today and spending it is

17  real harm.

18          Judge Kayatta, the burn right now is a

19  hundred percent, they are burning a hundred percent

20  of the cash.  Section 405(k) of PROMESA says they're

21  not supposed to be impairing our collateral during

22  the so-called quiet period.  They are not

23  maintaining the status quo, they are impairing our

24  collateral yet they're violating the very statute

25  they seek shelter under and saying there's no cause

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                               Page 66

1  for lifting the stay.  Even though they are not

2  complying with the statutory regime they are

3  supposed to be honoring they are impairing our

4  collateral and they are doing it in a way that is

5  causing us harm.

6          Why should they have the burden?  They

7  have all of the information.  We do not.  They know

8  what the protected revenues are.  We do not.

9  They -- only they know when they will stop taking

10  our collateral.  We don't know, we can't gaze into

11  the crystal ball.  They have refused to take a

12  position on when they will stop taking our

13  collateral.  They have tipped their hand in this

14  proceeding before the Court.  They basically have

15  said "We will continue taking the collateral.  We

16  make no commitment to when we'll stop taking the

17  collateral."

18          And they're adequately protected

19  because they have a lawsuit, an unsecured claim.

20  They can sue us later for taking their collateral.

21  But the third circuit said --

22          THE COURT:  Counsel, so if there had

23  been a hearing and you had put your expert on --

24          MR. BRUNSTAD:  Correct.

25          THE COURT:  -- would your expert have

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                      Page 67

1   simply said "We don't know"?

2            MR. BRUNSTAD:  Our expert would have

3   said looking at the -- what information we were able

4   to get from them, the projected revenues may well

5   not be enough to cover all of the future obligations

6   and make up for what they're taking now.

7            Remember, the way this works is cash

8   is being collected, total revenues are being

9   collected and as they come in were supposed to be

10   put into the accounts to make sure there's enough

11   there to make the next payment.  They stopped doing

12   that last May.  There was enough in there at that

13   time to cover us through this month.  But because

14   they're not putting any more of those total revenues

15   in, when we get to July there will be nothing there

16   to pay us.  We will be in default.  And their

17   argument is, "Well, we'll just continue to take the

18   property and you can sue us later.  You can have an

19   unsecured claim a lawsuit against us for taking your

20   property."

21            But as the Third Circuit said in the

22   Rocco case we cite on pages 22 and 23 of our reply

23   brief, "A lawsuit is too speculative in nature to

24   offer adequate protection."  And the reason for that

25   is because substituting a lawsuit, a future right to

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                 Page 68

1   sue is never the same as cash in the bank today.

2   They are going around saying "We don't have enough

3   money to pay anybody, but trust us, we can spend all

4   of your collateral today and we'll pay you in the

5   future."  Judge --

6           THE COURT:  Yeah, go ahead.

7           MR. BRUNSTAD:  You asked us for cites

8   to where we argue that this is going to harm us and

9   it's not going to be enough below.

10          THE COURT:  I asked for a cite where

11  you told the judge below that your debt -- the debt

12  itself was not going to get repaid absent release

13  from the stay.

14          MR. BRUNSTAD:  Now recall, Judge

15  Kayatta, we were not able to have our evidentiary

16  hearing to come and make our arguments before the

17  Court and --

18          THE COURT:  I'm just looking at a very

19  long motion in which you specified the harm, and as

20  I read that harm, you were simply saying that the

21  collateral itself is being reduced.  I did not see

22  any claim, and maybe I missed something, which is

23  why I --

24          MR. BRUNSTAD:  Let me do the best I

25  can.

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                                    Job 4622
Court Proceedings   on 01/04/2017                                                Page 69

1          THE COURT:  Okay.

2          MR. BRUNSTAD:  I'll give you three

3    cites.  The joint appendix page 32, paragraph 43.

4    The joint appendix page 35, paragraph 50.  And the

5    joint appendix page 171 at paragraph -- at paragraph

6    4.

7          THE COURT:  And then to follow up on

8    Judge Thompson's question, were -- did the judge

9    deny you any discovery that you sought to do?

10          MR. BRUNSTAD:  We sought -- we sought

11    to get the financial projections of the revenues,

12    what they were likely to be, so our expert witness

13    could try to prepare and come up and see whether

14    those projections were going to be adequate.

15    Judge -- Judge Besosa, over their objection, did

16    require them to give us those projections about the

17    future revenues.  And based upon that evidence, our

18    expert was going to testify that the future revenues

19    are likely to be insufficient to allow us not only

20    to be paid in full going forward, but to make up for

21    what they're spending currently.

22          THE COURT:  I think let me ask my

23    question again.  Did Judge Besosa deny you any

24    discovery that you tried to do?

25          MR. BRUNSTAD:  He did not.

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings on 01/04/2017                                  Page 70

1          THE COURT:  Okay.

2          MR. BRUNSTAD:  But remember your Honor

3    the key point that I'd like to reiterate, it was our

4    burden to show -- we have a security interest,

5    that's undisputed.  It was our burden to show that

6    basically they're taking our collateral, they're

7    dissipating it.  That's undisputed.  Those are

8    undisputed facts.

9          With that prima facie case made, it is

10   their burden to show that it's not causing us any

11   harm.  And all you have heard from them today is,

12   "Well, if there's any harm from this you can sue us

13   in the future with a speculative lawsuit", you know,

14   against us, even though they claim they don't have

15   any money.  Again, that's not adequate protection.

16          And the reason why it must be their

17   burden to show adequate protection, again is because

18   they have the information -- in addition, one key

19   fact that's necessary to do the calculations is when

20   will they stop taking the collateral?  Because,

21   Judge Kayatta, this case is your hypothetical if

22   they just keep taking the collateral into the

23   future.  The burden is a hundred percent if

24   they -- if they keep going and going and going and

25   going as they plan --

1          THE COURT:  But the regime changes in

2  May at the latest, right?

3          MR. BRUNSTAD:  Well, but Judge

4  Kayatta, what happens at that point is we then

5  substitute nearly one stay for another.  When they

6  file for bankruptcy they then get the automatic stay

7  and then we have more hearings and more delay so we

8  get one year, two years, perhaps, after the fact

9  where they continue to take our collateral.  Each

10  day they continue to take our collateral the hole

11  gets bigger and bigger and bigger and bigger and the

12  problem becomes a problem akin to what happens with

13  poor debtors who get behind on their mortgage

14  payments.  They may be able to make the payment in

15  the future, but they never catch up on the arrears,

16  and in the end the collateral isn't going to be

17  sufficient to cover the hole.  And again, it's not

18  sufficient, the remedy they suggest is not

19  sufficient, that we can just sue them in the future

20  and get an unsecured claim against them for money

21  damages they basically say they don't have the funds

22  to pay.

23          So taking collateral today without

24  adequate protection is real harm.  That's -- under

25  the borrowed canon -- the Borrowed Statute Canon we

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                           Job 4622
Court Proceedings  on 01/04/2017                                        Page 72

1  take the subtle meaning of the adequate protection

2  concept, which was designed to protect secured

3  parties just like Peaje in this case.

4          The balancing test that opposing

5  Counsel advocates is a test under which relief would

6  never be granted, because in their view really the

7  only thing that matters is to have this quiet

8  period.  Well, that would be all right --

9          THE COURT:  This is beginning to

10  become a run-on sentence.

11          MR. BRUNSTAD:  Yes, your Honor.  Thank

12  you very much.

13          MS. SOOKNANAN:  Your Honor, I just

14  have three brief points in rebuttal.  First with

15  respect to the burdens.  Whoever bears the burden it

16  is clear that in this case below we met our burden.

17  We showed cause, we showed that we were secured

18  creditors with a lien on property, that they are

19  diverting our property and that we are not

20  adequately protected.

21          THE COURT:  Where's the evidence that

22  we should have looked at that would cast serious

23  doubt on the $19 million per month income stream

24  that is being paid by the non-stay --

25  non-Commonwealth?

1        MS. SOOKNANAN:  Your Honor, the

2   evidence is in the stipulated facts itself, it's all

3   the statements by these very entities saying that

4   those contributions are uncertain.  They cannot on

5   one hand point to that future revenue stream and

6   point to these hypothetical payments and then say

7   "By the way, those are uncertain, we don't know that

8   they will be paid."  And remember, an evidentiary

9   hearing was scheduled in this case.

10            The Commonwealth suggests, goes as far

11   as to say it was incumbent upon us to notify the

12   Court that we had other evidence to submit.  That --

13   it's somewhat disingenuous to say that.

14            To understand the timing, a hearing

15   was scheduled for November 3rd.  The day before the

16   parties submitted joint stipulations which we had

17   gotten together and agreed to in order to streamline

18   the hearing.  Everyone was fully aware that there

19   were other points that parties intended to meet, we

20   notified the Court that morning that there would be

21   expert testimony.

22            So the suggestion that we should have

23   somehow told the Court that we had other evidence,

24   or that it was clear to the Court that these

25   stipulations were the entire record that the parties

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 74

1   had agreed to is frankly absurd, these were filed on

2   November 2nd and the hearing was cancelled on

3   November 2nd.

4            THE COURT:  But as to the 19 million a

5   month, Mr. Chesley told us that what wasn't

6   uncertain were the non-government contributions.

7            MS. SOOKNANAN:  That is -- that is not

8   what we have a said, your Honor.  The Commonwealth

9   in October in its fiscal plan said that those

10  contributions of municipalities themselves was

11  uncertain.  That's what they wrote in their fiscal

12  plan and they are saying here today that they are

13  certain.  I mean, they are saying essentially that

14  all secured debt of Puerto Rico will be paid in

15  full.

16           That's what they suggested today and

17  yet they repeatedly say otherwise in pages and pages

18  of their brief talking about how they do not have

19  money to pay their creditors.  They do not -- they

20  cannot meet their debts.  And neither the

21  Commonwealth nor the ERS addressed today their prior

22  statements that these contributions are uncertain.

23           And with respect to the monthly

24  contributions, your Honor, it's currently

25  $13.9 million in payments.  Those are interest

1 payments only that go through 2020. In 2020,

2 principal payments kick in and that gets bumped up a

3 significant amount.

4        I mean, at the end of the day, there

5 was a hearing scheduled that we were entitled to,

6 statutorily entitled to under PROMESA where we would

7 have an expert testify, where the Commonwealth would

8 put forth evidence on the adequate protection

9 question. And at a minimum we are entitled to that

10 hearing and the District Court (indecipherable). We

11 cancelled the night before it was to be held and on

12 the same day that these stipulated facts were

13 submitted.

14        One more brief point, the

15 Commonwealth -- I apologize if I'm over -- but the

16 Commonwealth has -- you know, in discussing what an

17 extraordinary case would be has said that this Court

18 may not be concerned because what we're dealing with

19 here is money and cash collateral and that can be

20 repaid. And in bankruptcy cash collateral is

21 actually entitled to the most protection because

22 once it's been dissipated and spent there's nothing

23 left. And all that will be left here at the end of

24 it, once they have dissipated and spent her money,

25 as they have admitted, is an unsecured claim. That

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                    Job 4622
Court Proceedings   on 01/04/2017                                Page 76

1   is not enough.  The Constitution requires more.

2   Thank you.

3            THE COURT:  After the clerk adjourns

4   us I'd like Counsel to remain at the table, one or

5   more of us is going to come to the well to say

6   hello.  There's nothing else, I take it?  Well

7   argued.  Thank you.  We'll do the best we can.

8            (Proceedings concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  STATE OF MICHIGAN  )

2                    ) SS

3  COUNTY OF GENESEE )

4       I, Quentina R. Snowden, do hereby state

5  that the foregoing document was reduced to

6  typewritten form by me from digital media, and

7  that it represents a complete, true and correct

8  rendition, to the best of my abilities, of the

9  proceedings held in this cause.

10       I assume no responsibility for any

11  inaudible portions, if any, by any speakers that

12  are not discernible during the proceedings.

13       I further certify that I am not

14  connected by blood, or marriage with any of the

15  parties; their attorneys or agents; and that I am

16  not interested, directly, indirectly, or

17  financially, in the matter of controversy.

18

19  Dated:  May 27, 2017

20

21  _____

22  Quentina R. Snowden, CSR-5519

23  Notary Public, Genesee County, Michigan

24  My commission expires: 1/4/2018

25

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings on 01/04/2017

Job 4622
Index: $100..adequate

## $

**$100** 21:17
**$13.9** 74:25
**$166** 51:5
**$19** 72:23
**$20** 51:1,9
**$224** 51:3
**$250** 51:24
**$63** 9:24

## 1

**1** 19:3 62:5
**10** 10:4 63:11
**100** 23:3 25:5
**13** 62:1,6
**14** 23:2 62:6
**15** 62:6
**15th** 35:25
**16-2377** 9:3
**16-2437** 9:5
**171** 69:5
**18** 39:6
**18.8** 25:4
**19** 22:25 65:16 74:4
**1978** 18:15
**1st** 36:1 46:16

## 2

**2** 62:5
**20** 23:3 28:15
**2015** 51:1
**2016** 10:2 21:16 50:15
**2017** 9:1 16:9 46:16
**2020** 75:1
**21** 33:12

**212(a)** 56:1
**22** 67:22
**23** 67:22
**24** 52:25 55:21
**24a-2** 56:3
**2nd** 74:2,3

## 3

**301** 57:15
**32** 69:3
**34** 16:12
**35** 16:12 69:4
**361** 48:8
**362** 13:17,18 15:16 20:14 34:2,3,
    10 36:5,8 47:13 48:8 57:9
**3rd** 73:15

## 4

**4** 9:1 69:6
**405** 29:18 34:6,14,18 36:7 47:25
    48:1
**405(k)** 39:19,20 40:3,16 65:20
**405E** 57:12
**43** 69:3

## 5

**50** 69:4

## 6

**6** 58:9

## 7

**7** 53:7,21
**71** 63:10
**75** 24:22 25:3 50:17

## 9

**9** 19:7
**97** 58:17
**98** 57:14

## A

**ability** 17:23 33:3,15 48:16
    49:24 50:2 55:1 60:8
**absence** 21:22
**absent** 64:2 68:12
**absolutely** 38:14 48:9
**absurd** 74:1
**access** 26:14 28:2
**account** 18:23 24:24 25:9,12,16,
    17 26:10,11,12 27:5,9,10,25
    50:18 51:13 53:14
**accounts** 21:19 26:9 45:18
    46:15 67:10
**accumulate** 16:6,11
**act** 22:24 25:25 26:1,7,17,23
    27:1 33:12,13 49:18,23 63:13
**action** 56:2
**actions** 38:22 40:14
**actual** 15:9 26:14
**add** 15:3
**addition** 70:18
**additional** 39:21 43:13 51:24
**address** 31:24 38:11 48:14
    49:13 55:17
**addressed** 55:23 74:21
**adequacy** 56:5
**adequate** 9:19 10:25 12:13
    13:20 14:2 16:13,15,16,21 17:21
    18:7,8,9 20:22,24 21:3,5,22 22:1,
    2,7 27:12 28:4,7,12,13 34:1,4,7,
    12,16,18,20 35:9 36:12 37:13,14
    38:9,16 47:16 48:7 49:4 52:2,5
    57:1,3,10 59:14 61:20,24 63:22,
    23 64:18 67:24 69:14 70:15,17
    71:24 72:1 75:8

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings   on 01/04/2017

Job 4622
Index: adequately..beginning

**adequately** 12:12 24:3 27:13 28:21 29:2,13 47:5 66:18 72:20

**adjourns** 76:3

**admitted** 75:25

**adopted** 16:14

**advanced** 47:17

**advisability** 58:8

**advocates** 72:5

**advocating** 22:9 62:25 64:7,10

**affects** 18:19

**affirm** 30:9

**agent** 10:6

**agree** 25:23 26:13,22 28:9 49:8 56:12

**agreed** 73:17 74:1

**agreements** 55:14 58:7

**ahead** 68:6

**akin** 71:12

**Alejandro** 9:3,6

**allegations** 37:15 54:3,9,14

**allege** 40:13

**alleged** 11:14 23:6

**alleviated** 51:23

**allocated** 28:18

**allotment** 64:3

**allowed** 15:7 56:17 65:15

**allowing** 39:6 40:9

**Altair** 21:10 42:15 44:24 53:19

**alter** 20:1 40:10

**Amendment** 14:10 18:9,22 20:10 35:8

**amicus** 52:11,20 56:22

**amount** 31:11 50:25 75:3

**amounts** 45:4 50:3 52:3

**analysis** 42:12

**anyone's** 57:6

**apologize** 24:8 50:7 62:18 65:4 75:15

**apparently** 53:5

**appeal** 11:7 46:11 48:20 52:20

**appeals** 52:10,11,22

**Appellant** 52:9

**appellants** 21:11,20,23,25 27:11,16 29:13,24 30:11 36:2 43:16 46:20 47:9 50:20 51:10 60:13 61:21

**Appellants's** 21:18 27:21 39:22 46:11

**Appellate** 63:12

**appellees** 23:13 24:6,11 28:20 29:9

**appendix** 69:3,4,5

**apple** 16:25

**apples** 17:1,2,3,6,8,13

**applied** 52:24

**apply** 11:1 30:14 34:19 38:18

**applying** 20:11

**appoint** 48:1

**approach** 64:6

**approximately** 25:4 50:25 51:25

**April** 46:16

**argue** 68:8

**argued** 11:6,19 76:7

**argument** 15:6 18:22 36:22 37:12 41:2 48:14 49:11 67:17

**arguments** 36:11 68:16

**arrears** 71:15

**Article** 19:7 47:11,12,22 48:8,10, 11

**aspect** 54:22

**asserting** 14:6,8

**assertion** 12:25

**asserts** 25:24

**assess** 58:7 63:3 64:17

**assume** 30:15 31:6 59:19

**assuming** 49:3

**assurance** 12:16

**attach** 25:18 27:8

**attempt** 28:24

**attempting** 59:4

**authorize** 63:9,12

**authorized** 48:4

**automatic** 13:18 18:11,19 22:10 35:4 47:11,15 48:1 71:6

**avoid** 14:13 20:15

**Avoidance** 20:12

**aware** 33:17 73:18

---

**B**

**back** 10:2 12:23 14:22 16:10 23:4 33:4 36:17 37:12 44:4,15 52:1

**baked** 14:3

**balance** 64:16

**balancing** 38:19 42:6 51:21 62:25 64:22 72:4

**ball** 66:11

**bank** 17:2 19:2 24:22 68:1

**bankruptcy** 13:17,19 15:23 17:7,20 18:11,17 19:21,22,25 20:14,20 28:13 32:9 33:18,23,25 34:22,23,24 35:4,14,18,24 36:10 40:8 47:13,16 57:9,15,22 58:11, 15,17 63:8 64:23 71:6 75:20

**bargain** 39:16

**barn** 36:15

**barred** 22:5

**bars** 14:5

**based** 18:9 46:22 47:1 50:18 52:3 56:4 69:17

**basically** 12:15 40:20 41:2,24 42:11 45:13 66:14 70:6 71:21

**basis** 12:25

**basket** 60:15

**bears** 72:15

**beginning** 50:16 72:9

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                                    Job 4622
Court Proceedings   on 01/04/2017                               Index: behalf..Commonwealth

**behalf** 9:9 29:17 46:2

**believed** 53:5

**benefit** 25:18

**berm** 61:9

**Besosa** 55:6 64:12,15 65:1
69:15,23

**Besosa's** 64:8

**bigger** 71:11

**blatant** 49:3,9

**board** 23:22 52:9 53:5,25 54:24
56:23 58:1 62:24 64:19

**Board's** 56:9

**bold** 46:16

**bondholder** 50:3

**bondholders** 46:24 62:10

**bonds** 9:24 10:6 21:11 23:12
24:9,12,14 45:12 65:9,15

**borrowed** 13:16,22 20:19 71:25

**bother** 56:13

**breathing** 22:4 43:19 57:23 58:1

**brethren** 60:22

**briefs** 10:20 50:5

**Brigade** 9:5 43:22 53:24 64:8

**bring** 32:15

**broad** 37:5 40:20

**Brunstad** 9:8,9,13 11:8,19,24
13:3,8 14:21,25 15:11,14 16:2
18:1,4 19:1,14,17,21 21:8 65:6
66:24 67:2 68:7,14,24 69:2,10,25
70:2 71:3 72:11

**bucket** 10:4,7

**buckets** 10:3

**budgets** 58:5

**build** 23:3

**bumped** 75:2

**burden** 12:6,7,9,12,23,25 13:7,
9,10,12,24 14:2 15:15,20,25
16:22 24:11 28:17,18,21,23 34:2,
4,9,10,12,16 36:18 37:14 44:18
66:6 70:4,5,10,17,23 72:15,16

**burdens** 72:15

**burn** 65:18

**burning** 65:19

---

**C**

---

**cabined** 18:6

**calculations** 70:19

**call** 11:4

**called** 52:18

**cancelled** 74:2 75:11

**canon** 20:11,19 71:25

**Capital** 9:5

**case** 9:2 16:14 18:15 19:4 21:2
22:18 24:16,19 27:12,15,19 28:5,
8,17,20 29:4 32:9 33:18 35:3
37:9 38:20 42:9,16,20 49:7 50:15
56:7,10,11 57:5 60:5,12,13,14
61:17 63:25 64:8,24 67:22 70:9,
21 72:3,16 73:9 75:17

**cases** 9:4,7 15:23 52:14 53:2,15,
16,22,24 55:16 61:20,21,22,25
62:1,4,7,20 64:25

**cash** 10:4,10 12:10,17 16:6,7
17:3,4,10,12,13 31:9 60:25 61:1,
19,22 62:20 65:16,20 67:7 68:1
75:19,20

**cast** 72:22

**catch** 71:15

**caused** 40:15 43:24

**causing** 13:14 14:1 20:6 66:5
70:10

**certainty** 23:17

**cetera** 17:24 65:10

**challenge** 39:5

**challenges** 46:10

**chapter** 58:16

**charged** 58:12

**Chesley** 46:1,2 48:18,25 49:6,
18,22 50:7,13 51:20 74:5

**chose** 18:14

**circuit** 21:3 66:21 67:21

**circumstance** 32:3

**circumstances** 41:17

**cite** 26:1 61:21 67:22 68:10

**cited** 19:3 47:25 56:10

**cites** 11:25 50:4 68:7 69:3

**citing** 19:3

**claim** 15:8,13 18:25 22:18 29:2
31:14,15 32:5,7 33:21 37:10
53:10 66:19 67:19 68:22 70:14
71:20 75:25

**claimants** 42:24

**claims** 29:25 31:10 32:15 36:3
43:1 52:19 54:11,22 55:12 65:11

**clarify** 24:13

**classic** 30:6

**clause** 40:24

**clear** 16:16 24:20 64:22 72:16
73:24

**clerk** 9:2 76:3

**close** 57:5

**closing** 36:14,15

**code** 13:17 17:20 19:8 20:14,20
28:13 47:14,16 57:9,15,22 58:17
63:8

**collateral** 9:18 10:1,3,24 11:3,
15,17 12:8,20,21 15:10,19 18:13,
16 19:5,9,18 20:4,16 21:19 22:9,
15,19 23:6 26:9 28:3 30:18 31:5,
7,8,25 32:12,19,21 33:1,19 35:1,
3,6 36:16,24 41:10,13 48:15
51:13,14 57:6 59:5,11,18 61:11,
19,23 62:21 65:21,24 66:4,10,13,
15,17,20 68:4,21 70:6,20,22
71:9,10,16,23 75:19,20

**collect** 58:3

**collected** 67:8,9

**combination** 52:2

**commence** 58:15

**Commercial** 19:8

**commitment** 66:16

**Commonwealth** 22:9 23:20
27:18,20 29:17,20 30:17,20
31:15 32:5,11 35:15 37:22 38:3,6

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings  on 01/04/2017

Job 4622
Index: Commonwealth's..cushion

39:3,15 40:4,9,18,19 41:4 43:21,
24 44:4,8 45:1 46:3,7 47:5 49:25
51:25 56:2 73:10 74:8,21 75:7,
15,16

**Commonwealth's** 12:6 27:17
38:22

**compelling** 49:11

**competing** 22:3

**complaint** 45:16 53:20,23

**complaints** 53:17,18

**complete** 59:4 63:1

**complying** 66:2

**concededly** 30:1,2

**conceivably** 41:22

**concept** 13:21,23 14:3 16:13,15,
17 18:7,8,10 72:2

**concern** 20:11

**concerned** 75:18

**concerns** 35:8

**concession** 59:3,9

**concluded** 76:8

**concludes** 30:8

**concluding** 30:11

**conclusion** 30:4 46:25

**conducted** 29:1

**conference** 55:13

**confirmed** 14:19

**conflict** 14:9,14 20:15

**confusion** 24:21

**Congress** 16:14 17:19 18:14,15
22:13 29:18 30:21 34:14,15,17
35:9 36:7 38:1 39:13,25 40:17,21
41:25 44:9 47:21,24 48:6 57:11
58:25 59:10

**Congress's** 29:22

**Congressional** 47:22

**Connis** 37:21

**consensual** 55:15 58:9,10

**consideration** 47:8 60:9

**considerations** 15:3

**consisted** 10:3,4

**consistent** 37:20

**consistently** 10:21

**consolidated** 9:4,7 52:23 53:16

**conspicuously** 34:5

**constantly** 63:3

**Constitution** 14:9,14 20:15
76:1

**constitutional** 18:18 20:11
48:14 54:11,22 58:21 59:15
63:18

**constitutionally** 22:1 28:6
36:19

**construction** 57:18

**contemplate** 33:13

**contemplates** 42:5

**contention** 30:19

**contested** 28:22

**context** 16:3 33:23,25 34:21
35:24 43:5

**continually** 14:10

**continue** 20:16 30:2 35:20
66:15 67:17 71:9,10

**continues** 51:9

**contract** 18:25 19:6,16

**contractual** 40:11

**contributions** 21:18,21 23:11,
14,18,23,25 27:15 44:25 45:3
49:25 50:19,23,25 51:4 52:1 62:8
73:4 74:6,10,22,24

**conversation** 37:16

**copied** 57:13

**copy** 57:12,16

**correct** 9:20 13:3 14:21 19:14
25:13 30:10 38:17 54:16 61:13,
17 66:24

**costly** 29:21 44:11

**Counsel** 46:6 47:4 49:13 50:20
65:9 66:22 72:5 76:4

**count** 63:10

**counterclaims** 53:8

**couple** 23:20 47:6

**court** 9:12,22 10:19 11:12,13,22
12:23 13:4 14:18,22 15:1,12,22
16:16 17:18 18:2,21 19:2,4,11,
15,19 20:12 21:4,7,14 22:14
23:16 24:1,2,18,19,20 25:9,11,
19,22,23 26:14,22 27:5,20,22
28:8,12,22 29:4,6,11,12,16 30:7,
8,10,15,21,24 31:2,6,12,23
32:10,23 33:17 36:14 37:4,11,19
38:9,18 39:18,23 40:12 41:6
42:4,9,19 43:4,8,9,17 44:16 46:1,
9,13 47:3 48:4,13,19,21 49:1,12,
20,24 50:4,12 51:7,19,21 52:4,7,
13,14,17,24 53:3,4,13,22,25
54:12,17 55:18,22 56:10,20
58:25 59:2,8,19,22 60:1,10,17
61:6,14 62:13,17 63:13 64:2,4,6,
10,20 65:2,5 66:14,22,25 68:6,
10,17,18 69:1,7,22 70:1 71:1
72:9,21 73:12,20,23,24 74:4
75:10,17 76:3

**Court's** 11:4 30:4 46:5 56:8,16

**courtroom** 55:13

**courts** 35:7 63:2,9,15

**cover** 10:16,22 43:1 67:5,13
71:17

**covered** 46:7 47:5 58:4

**crafted** 16:15

**create** 61:10

**creating** 40:20

**credit** 31:17 32:3

**creditor** 11:2 15:7,24 17:4
18:12,18 29:21 30:21,23 32:4,18
33:8 40:21 41:1,2,3,7,9,16,20
44:12 59:23 60:5,16

**creditors** 22:4,5,8 28:2,6 30:13
31:20,21 32:13,14,22 39:11,14
41:21,24 45:11 72:18 74:19

**creditors's** 22:12 59:17

**critical** 11:9 17:22 47:23 51:17

**crop** 17:10

**crucial** 46:12

**crystal** 66:11

**current** 22:24 30:16

**cushion** 11:5 15:25 22:20 28:15,

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings on 01/04/2017

Job 4622
Index: cut..English

25 29:3,7 38:12 44:19,21 45:21
51:8 63:24,25 65:8

**cut** 16:1

---

**D**

**damage** 32:15 33:20 41:18 48:3
63:22

**damages** 31:10,15 32:7 33:4
36:3 40:16 60:7 71:21

**day** 27:11 33:3 61:3,4 71:10
73:15 75:4,12

**deal** 39:19 40:25 55:12

**dealing** 17:20,22 75:18

**debt** 10:23 11:18 15:9 17:3 22:21
23:1 30:16,18 35:12 45:5 46:15,
16 48:16 51:5 52:3 61:2,12 68:11
74:14

**debtor** 12:5 18:10 28:4 35:5,13,
15 59:23

**debtor's** 34:4,10,12 59:17

**debtors** 19:25 22:4 71:13

**debtors's** 22:11

**debts** 74:20

**decide** 21:4 29:7 58:14 64:15

**decides** 25:19 26:14

**decision** 19:2 23:17 30:9 43:4
56:16,18 58:16 64:20

**decisions** 56:9 58:21

**default** 67:16

**Defendants** 29:17

**defense** 53:10

**deficiency** 53:4

**definition** 51:11

**delay** 19:24 71:7

**demonstrate** 15:21 30:11,24
33:1,6 34:4,12 38:6

**demonstrated** 33:9

**demonstrates** 37:23 44:20,25

**deny** 53:1 69:9,23

**denying** 56:15

**depend** 30:25

**depends** 11:10 31:4

**deposit** 10:6

**depreciating** 18:17

**designate** 58:4

**designated** 42:22 43:22

**designed** 72:2

**desire** 15:5

**destroy** 36:24 39:25 40:1

**destroyed** 57:6

**destroying** 37:3

**determined** 48:2

**develop** 58:5,6

**difference** 16:24 28:9,16

**differentiates** 30:12 32:8

**difficulty** 36:21 49:2

**diminished** 41:14

**diminution** 11:14

**discharge** 40:9

**discovery** 69:9,24

**discussing** 75:16

**disingenuous** 73:13

**dispersed** 31:13 32:24

**disregarded** 22:12

**dissipate** 12:11

**dissipated** 18:13,16 20:5 32:6
33:2 75:22,24

**dissipating** 13:14 70:7

**distinct** 35:7

**distinguishes** 61:17 62:20

**distraction** 44:8

**distributed** 19:18

**district** 9:21 11:13 23:16 24:1,2,
18 25:22 28:22 29:12 30:4,10
43:4 46:13 47:2 48:4,19 51:7,21
52:4,14,23 53:3,13 55:22 62:13
75:10

**diversion** 39:6

**divert** 43:25

**diverted** 21:18 25:1 28:3 38:6

**diverting** 25:7 27:22,24 72:19

**dollar** 37:24 38:6,8

**door** 36:15

**doubt** 55:20 72:23

**draft** 53:20

**drafted** 57:12

**dry** 16:1

**duration** 30:3 34:24 35:6 39:11
60:11,17 61:2,8,10

---

**E**

**earlier** 49:13

**earliest** 45:12

**echo** 60:22

**effect** 10:24 34:24

**effectively** 35:1 42:2

**efficiency** 55:24

**Eighth** 21:3

**elaborate** 37:22

**eliminate** 11:4

**elimination** 33:18 59:4

**Employee** 46:2

**employees** 21:11 45:1 50:1

**employer** 21:17,21 23:11,14,17,
23 27:14 51:4,25 62:8

**employers** 50:19

**enacted** 22:13 29:18 39:2,8,13
40:19

**enactment** 48:1

**encapsulates** 16:17

**end** 15:15 27:11 31:9 33:3 38:24
61:3 62:23 71:16 75:4,23

**ended** 25:21 42:9

**ends** 35:25 61:5

**engage** 42:1

**English** 26:3

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings   on 01/04/2017

Job 4622
Index: ensure..front

**ensure** 37:25 38:4,8 40:22 45:21,22

**entire** 34:24 73:25

**entirety** 36:8

**entities** 73:3

**entitled** 14:16 21:23 22:1 27:12 28:7 36:12 40:15 42:2 45:20 75:5,6,9,21

**enumerated** 29:19

**equal** 10:4

**equipment** 61:22

**equitable** 38:19 44:19,21

**equities** 38:19 42:6 51:22

**equity** 11:5 15:25 22:20 28:15, 25 29:3,7 38:12 45:20 51:7 59:12,22 60:2 63:24,25 65:8

**equivalent** 38:7

**Eric** 9:9

**Erin** 29:16

**erred** 9:22

**ERS** 21:17,21 23:19 25:3,8,24 46:2,11 48:20 49:14 50:1,16 51:2 52:2 74:21

**essential** 29:23 37:25 38:4 39:4

**essentially** 18:24 22:3,10,12 32:12 35:16 74:13

**established** 13:12

**establishes** 21:3 57:21,22,25 60:25

**estate** 61:22

**et al** 9:4,6

**event** 30:8

**evidence** 44:20,22,24 51:6 65:7, 11 69:17 72:21 73:2,12,23 75:8

**evidentiary** 21:6 24:15 65:12 68:15 73:8

**exact** 38:7

**examples** 63:5,11,15

**exchange** 22:6

**excise** 62:9

**excluded** 34:5

**executive** 25:25 39:4,5 45:2

**exercising** 18:12 20:8

**exists** 13:13 51:8

**expansive** 64:21

**expedited** 9:14

**expenditures** 18:24

**expenses** 27:10

**expert** 65:13 66:23,25 67:2 69:12,18 73:21 75:7

**expires** 40:12 46:17

**explain** 12:24

**explained** 55:6

**explicit** 39:10

**express** 38:1 39:2 64:13,20

**expressly** 29:19 34:11 58:18

**extension** 22:24

**extent** 49:8 50:8

**extraordinary** 40:25 41:7,8 75:17

**extremely** 47:7

**F**

**face** 46:20 51:4

**facie** 15:8 70:9

**facing** 27:18

**fact** 11:10 12:4 21:4 23:10,15 24:11 32:15 40:3 47:18 50:21 51:1,7,22 57:13 64:14 70:19 71:8

**factor** 63:1,19

**factors** 62:25 63:3,16 64:14,16, 17

**facts** 13:12 23:15 24:4,5 31:1 42:10,11 43:4,8 46:12 48:22 49:3 50:11,14 51:12 56:18 60:4 62:12 63:17 70:8 73:2 75:12

**factual** 48:19 49:7 52:5

**failed** 30:11

**failing** 9:22

**farm** 16:25

**farmer** 17:1,3,4,7,12

**February** 35:25

**Federal** 63:12

**feel** 54:7

**fees** 17:24 62:10

**field** 55:3

**figure** 35:17 63:15

**file** 50:8,12 53:6,17 54:1 71:6

**filed** 44:6 53:23 55:11 74:1

**files** 18:11

**filings** 11:13

**financial** 27:18 46:20 52:8 69:11

**find** 24:19 29:12

**finding** 50:5

**findings** 29:22 38:1 57:24

**fine** 24:23

**finish** 51:18

**fiscal** 10:6 23:21 44:4,15 55:15 58:6 74:9,11

**flexibility** 18:3,6

**flow** 51:9 61:1

**Focusing** 9:23

**follow** 25:12 69:7

**force** 35:21

**Forcing** 58:21

**fore** 63:20

**foreclose** 35:1,3

**form** 39:21 40:7 41:10,13

**fortunately** 49:6

**forward** 10:12 17:14 24:5 62:22 69:20

**found** 24:2 29:12 37:4 53:3

**founders** 46:11

**frankly** 54:7,21 55:3 74:1

**free** 25:16 26:12 27:6

**front** 12:1

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings   on 01/04/2017

Job 4622
Index: full..incumbent

**full** 30:1,2 31:11 32:7 36:3 41:22 69:20 74:15

**fully** 33:14 40:11,23 73:18

**Fund** 9:6

**funds** 24:22 25:12 71:21

**future** 10:7,12,13,17,21 11:10 12:21 16:4,19,20,22 17:5,8 23:11,14,17,23 24:3 27:14 29:8 30:18 37:3 42:24 43:1 45:24 50:23 51:15,23 61:23 67:5,25 68:5 69:17,18 70:13,23 71:15,19 73:5

**G**

**Garcia-padilla** 9:4,6

**gave** 52:4

**gaze** 66:10

**general** 32:24

**generates** 14:8

**give** 11:25 38:3 44:10 63:5 69:2,16

**giving** 63:1

**goal** 55:1,12,21

**good** 9:8 21:9 29:15 36:25 63:13

**govern** 58:18

**governing** 52:25

**government** 36:23

**grant** 48:4 52:5

**granted** 13:19 72:6

**great** 16:23 17:9 36:21

**grow** 17:8

**grown** 17:6

**grows** 17:1

**guidance** 64:25 65:1

**H**

**half** 59:11

**hand** 66:13 73:5

**hands** 26:17

**happen** 11:21

**harm** 9:16,23 10:18 12:6 13:15 14:1 20:7 38:21,23 40:15 46:20 48:17,23 49:5,11 65:17 66:5 68:8,19,20 70:11,12 71:24

**harmed** 12:9,22

**hear** 52:15 61:6

**heard** 70:11

**hearing** 9:22 12:4 21:2,5,6 25:2 28:25 32:16 42:7,21 43:22,25 44:5 52:12 65:12 66:23 68:16 73:9,14,18 74:2 75:5,10

**hearings** 37:23 71:7

**held** 25:10 28:23 46:23 75:11

**Hey** 43:11

**higher** 45:4

**highway** 62:10

**hinges** 18:22

**history** 16:13 47:22

**hold** 9:22 25:18 43:12

**holder** 46:16

**holders** 21:11

**holding** 16:14 25:15 28:1 46:14 50:3,17

**holds** 9:23 33:18

**hole** 71:10,17

**honing** 44:19

**Honor** 9:9,11 11:8,25 13:3 23:10 24:25 26:25 28:19 37:7 38:14 48:25 49:8,23 50:8,11,13 51:18 52:6 54:6 61:16 65:6 70:2 72:11, 13 73:1 74:8,24

**honoring** 66:3

**Honors** 21:10,16 29:14,16

**house** 47:24

**HTA** 42:23 45:6,8,11,13

**HTS** 62:10

**hundred** 30:19 31:6 36:24 39:16 41:5 57:5 65:19 70:23

**hundreds** 42:21

**hypothetical** 31:23,25 32:23

37:8,12 57:2 60:22 62:21 63:17, 18 70:21 73:6

**I**

**idea** 15:17 16:17 31:16 38:5

**lll** 35:14,18 36:5,6,9 48:10,11 55:10 58:11,16 64:24

**lll-362** 58:17

**illustrate** 19:5

**immediately** 29:25

**impact** 55:1

**impair** 11:18 48:16 61:11

**impaired** 11:3,17 15:9

**impairing** 65:21,23 66:3

**impairment** 23:6

**impede** 58:22

**implicated** 63:19

**implicit** 39:9

**import** 34:14,15,17

**important** 14:4 58:20 60:12,17

**imported** 20:21 36:7

**imposed** 36:19

**imposition** 48:3

**impossible** 58:24

**improperly** 52:24

**impute** 48:7

**inadequate** 23:7 35:2 48:23

**inaudible** 11:24 31:3 36:17 61:14

**include** 34:7 47:15 53:19 64:17

**included** 51:11 53:18

**includes** 13:24 57:9

**including** 13:19 20:22

**income** 37:4 61:18 72:23

**inconsistent** 40:14

**incorporated** 57:14

**incorrectly** 29:12

**incumbent** 43:6,11 73:11

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                                           Job 4622
Court Proceedings   on 01/04/2017                                          Index: indecipherable..loans

**indecipherable** 22:15 31:17 34:3 54:13 61:10 75:10

**individual** 29:17

**indulgence** 62:16

**Industrial** 19:2

**infinitely** 12:21

**infirm** 48:12

**inflow** 49:25

**inflows** 22:25

**information** 16:5 43:9 58:4 66:7 67:3 70:18

**injuries** 36:4

**injury** 57:8

**insist** 29:24

**instance** 33:5 64:25

**instances** 63:6,13

**instruction** 36:20

**instrumentalities** 39:15 58:4

**insufficient** 10:16 69:19

**insurer** 42:25

**intact** 40:11

**intend** 34:19 47:21,24

**intended** 30:13 40:17,24 44:9 47:19 73:19

**interest** 10:5 13:9 15:18 19:8,9, 10 21:23 42:3 46:18 56:4 59:17, 18 70:4 74:25

**interests** 22:3,11 33:14,15 39:22,25 40:1,10 62:11

**interlocutory** 30:6

**interpret** 20:12 39:24

**intervene** 56:2,4

**intervenor** 56:13

**intervention** 52:10,15,25 53:11 55:5 56:17,21 58:22

**Investments** 9:3,9

**involved** 60:14

**involving** 52:10

**irreparable** 38:23 41:18 48:2, 17,23 49:4,11 57:7

**issue** 26:1 38:11 49:13 54:23 55:18 61:15

**issued** 21:11

**issues** 46:8 47:6 48:19 58:22 63:18

**IV** 47:11,12,23 48:8 58:19

**J**

**January** 9:1 10:8

**jeopardy** 22:22

**joint** 69:3,4,5 73:16

**judge** 42:16 51:17,20 55:6,17 57:2 62:21 64:8,12,15 65:1,7,18 68:5,11,14 69:8,15,23 70:21 71:3

**July** 10:9 16:8 21:16 50:15 67:15

**jurisdiction** 30:8

**K**

**Kayatta** 42:17 55:17 57:2 62:22 65:18 68:15 70:21 71:4

**keeping** 27:25

**key** 62:2 70:3,18

**kick** 36:6 75:2

**kicks** 18:11

**kind** 13:6 45:10,22,23 53:6 56:14 60:24

**kinds** 14:12

**knew** 40:18 57:11,16

**L**

**lack** 13:19 49:3

**lacks** 30:7

**language** 13:2 17:25 47:19 49:21 50:5 57:12

**late** 36:15

**latest** 36:1 71:2

**law** 18:15

**lawsuit** 66:19 67:19,23,25 70:13

**lawsuits** 29:21

**lead** 15:6

**lease** 61:24

**led** 35:8

**leeway** 20:1

**left** 30:6 33:2 62:1 75:23

**legal** 46:10

**legislation** 49:16

**letting** 35:5

**level** 23:7 55:2

**levels** 42:17

**Leveraged** 9:5

**Lex** 52:18

**lien** 15:18 17:2 19:5,7 21:20 25:11,18 27:8,14 51:10,12,13,14 72:18

**liens** 46:22

**lift** 30:24 33:6 41:25 55:19

**lift-stay** 52:11 56:22

**lifted** 41:15

**lifting** 57:10 66:1

**lifts** 31:22 32:21 33:10,16 40:7, 23

**Liggett** 56:16

**lights** 27:21

**limited** 9:24 47:15 48:12 52:21

**limits** 49:24 50:2

**lines** 42:2 64:11

**list** 63:4,7

**listed** 53:7

**listing** 64:14

**litigate** 29:25 31:10 32:5 33:15 36:2

**litigation** 25:21 42:1 43:18 44:6, 12

**live** 39:16 40:4 55:17

**living** 41:4

**LLC** 9:3

**loans** 62:6

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings  on 01/04/2017

Job 4622
Index: long..operates

**long** 20:17 68:19

**looked** 72:22

**loss** 22:8

**lost** 31:11 33:5 41:11 62:14

**lot** 27:16 43:20

**low** 45:9

**luck** 59:23

**Luskin** 52:7,8,13,16,18 53:24 54:5,15,20 59:1,7,14,21,25 60:3, 21 61:13,16 62:18 64:5,9,12 65:3

---

**M**

**made** 10:10 18:24 23:16 37:16 39:17 41:15 43:4 50:20 51:22 52:1 70:9

**maintaining** 65:23

**make** 10:17 15:8 16:8,23 17:11 24:18 26:2 28:16 32:18 36:11,13 41:3,17 43:10 62:17 66:16 67:6, 10,11 68:16 69:20 71:14

**makes** 28:9 41:24 61:7 64:22

**making** 25:24 26:4,7 41:1 49:15 62:23

**Management** 52:9

**mandated** 58:2

**manifestly** 30:10

**Martin** 21:2

**material** 63:16

**matter** 17:9 24:16 48:15

**matters** 59:16 72:7

**meaning** 13:23,24 20:21 72:1

**means** 14:2 40:10

**meant** 22:7

**mechanical** 52:24

**mechanism** 14:15,19

**meet** 24:16 28:23 73:19 74:20

**mention** 50:21 51:22

**mentioned** 52:19

**merits** 54:10,24,25 55:8,9,23 56:21

**met** 37:15 72:16

**Michael** 52:8

**million** 9:24 21:17 23:1,2,4 24:22 25:3,4,5 31:13 50:18 51:1, 3,5,9,24 72:23 74:4,25

**mind** 41:7,23

**minimum** 29:1 75:9

**minutes** 9:10 21:12 50:11

**mirror** 47:13

**missed** 46:18 68:22

**moment** 40:6,12 46:24 52:22

**money** 10:11 16:8 25:7,15,18,20 26:13,15,18,19,20 27:3,4,7,23,24 28:1 31:10,12,15 32:7 33:4,22 36:3 41:12,13 62:2 65:10 68:3 70:15 71:20 74:19 75:19,24

**monies** 46:14

**month** 23:2 25:4 39:7 51:1 61:4 67:13 72:23 74:5

**monthly** 74:23

**months** 23:3,20 36:16 62:1,5

**Morales** 12:14 16:14 60:12

**Moratorium** 22:24 25:25 26:7, 17,23 27:1 33:13 49:18,23

**morning** 9:8,15 21:9 29:15 46:6 52:12 73:20

**mortgage** 71:13

**motion** 15:13 53:18 55:7 56:15, 17 68:19

**motions** 52:10 55:19,23 56:10, 22

**motor** 62:9

**moved** 24:24 26:15

**moving** 60:6

**municipalities** 74:10

**Murphy** 29:15,16 30:23 31:4,8, 19 32:2,17,25 33:23 37:7,18 38:14 39:20 40:2 41:8 42:8 43:20 44:23

---

**N**

**narrow** 52:24

**nature** 67:23

**needed** 38:3 42:19

**negotiate** 55:1,14 58:6

**negotiations** 58:23

**night** 75:11

**non-** 51:3

**non-commonwealth** 45:3 50:1,19,24 51:3 52:4 72:25

**non-government** 74:6

**non-stay** 72:24

**nonconsensual** 58:10

**nonetheless** 12:13

**note** 53:14 60:14

**notified** 73:20

**notify** 73:11

**notion** 43:18 44:19

**notwithstanding** 40:3 57:13

**Nov** 25:1

**November** 25:2 73:15 74:2,3

**Number** 9:5

**numbers** 62:11

---

**O**

**objection** 69:15

**obligation** 10:23 15:9 26:2,23, 24 27:1 49:16 51:5

**obligations** 10:17,23 23:1 35:20 40:5 67:5

**October** 23:21 74:9

**offer** 67:24

**offered** 61:23

**offering** 16:19

**one-page** 54:1

**one-sided** 22:10

**ongoing** 43:18

**opening** 52:19,20

**operate** 55:2

**operates** 34:23

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA                              Job 4622
Court Proceedings  on 01/04/2017                          Index: operating..proceed

**operating** 26:11 27:4,9,10 33:24
50:18

**operation** 25:16

**opportunity** 29:5

**opposed** 18:25

**opposing** 72:4

**opposite** 44:9

**order** 20:6 25:25 30:7 37:9 39:5
44:4,15 53:2 73:17

**orders** 39:4 45:3 56:19

**ordinarily** 9:25 14:12

**organize** 58:3

**out-of-court** 58:6,8

**outlet** 40:20

**outright** 58:23

**outset** 60:5

**outstanding** 10:5

**over-secured** 11:2 23:12 24:9,
12,14 38:12,13 60:6

**over-security** 60:25

**Oversight** 23:22 52:8 54:24
56:9,23 58:1 62:24 64:19

**overweigh** 59:5

**owe** 32:6

**ownership** 19:10

―――――――――

**P**

**pact** 63:9

**pages** 16:12 42:21 67:22 74:17

**paid** 10:1 12:22 23:12 30:1,2
33:8,10,11 39:11 41:18,20,22
42:13 45:9,15,22,24 69:20 72:24
73:8 74:14

**paints** 65:9

**panel's** 47:8

**papers** 44:5 53:19 55:5

**paragraph** 69:3,4,5

**part** 38:2 57:24

**partially** 58:10

**participated** 56:7

**participation** 53:1

**parties** 43:6 53:17 56:25 72:3
73:16,19,25

**party** 13:5 45:6 48:2,5

**pay** 27:10 39:3 45:18 48:16
51:14 52:3 61:1 67:16 68:3,4
71:22 74:19

**payment** 10:9,10,17 16:8,19,20
19:11,13 20:1,3 22:21 46:18
61:12 67:11 71:14

**payments** 10:13 22:23 24:7,8
29:10 30:16,18 49:15 71:14 73:6
74:25 75:1,2

**Peaje** 9:3,9,17,23,25 42:20 43:23
45:6,10 53:16 65:8 72:3

**Peaje's** 10:2

**pending** 52:14 55:19

**people** 31:13 44:2,14

**percent** 10:4 28:15 30:19 31:7
36:24 39:16 41:5 57:5 65:19
70:23

**performing** 26:24

**period** 35:5 55:10 58:13,20
65:22 72:8

**perpetual** 61:18 62:7,9,19 64:1

**persuasion** 28:18

**ph** 19:4 37:21 52:18 56:16

**phase** 48:12

**picture** 16:25 65:9

**place** 25:17 35:16 46:19

**plain** 23:19

**plainly** 30:13

**plan** 23:21 60:14 70:25 74:9,12

**plans** 55:15 58:6

**platform** 20:8

**playing** 55:3

**pleading** 53:9 56:12,14

**pleadings** 53:6

**pledged** 39:3 46:23 51:11

**point** 11:4,9,12,23 12:3,5 15:2
22:20 24:13 26:21 33:11 36:1,5
38:2 58:22 59:9 62:16,17,23 70:3
71:4 73:5,6 75:14

**pointed** 57:9

**points** 47:7 60:11 72:14 73:19

**policy** 15:3

**poor** 71:13

**population** 32:24

**position** 24:14 47:10,17 54:9,
21,24,25 55:20 56:5,22 59:12,22
66:12

**positions** 55:8,9

**post-filing** 64:24

**postures** 53:15

**potentially** 15:6 22:15

**pre-petition** 64:23

**precisely** 44:10 53:11

**precludes** 50:2

**preemption** 54:10

**premise** 39:2

**prepare** 44:4,5 69:13

**prescribed** 14:13

**present** 57:3

**presented** 51:6 63:17

**preserve** 20:10 33:14

**pretty** 37:5

**prevent** 27:3

**prevents** 14:7 18:12

**previously** 22:17

**prima** 15:8 70:9

**principal** 10:5 46:17 75:2

**prior** 56:9 74:21

**priority** 45:11 63:1

**problem** 23:13 37:6 71:12

**procedural** 53:4,15 55:24

**Procedure** 63:12

**proceed** 35:18

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings   on 01/04/2017

Job 4622
Index: proceeding..reiterate

**proceeding** 19:22,25 35:14,18 36:5,10 40:8 58:15 66:14

**proceedings** 43:23 55:11 76:8

**process** 30:20

**production** 28:17

**prohibited** 20:7 25:24 30:21

**prohibits** 26:4,7,24 27:2 49:14, 19

**projected** 67:4

**projections** 58:5 65:14 69:11, 14,16

**PROMESA** 13:22 14:5 20:8,13 21:24 29:19 33:12 34:6,19,21 35:12 36:7 37:21 39:7,10,24 40:1 44:3 46:17,19,25 47:11,12,23 48:10 50:16 56:1 57:15,19,20,22 58:9 63:5 64:22 65:20 75:6

**PROMESA's** 30:3

**promise** 16:18,20

**promulgated** 39:7

**proof** 14:2 40:17

**property** 12:11 13:11,14,25 14:7,11 15:18 16:18 18:25 19:5,6 20:4 21:20,23 22:6 27:21,23 46:23 49:10 51:11 67:18,20 72:18,19

**proposed** 11:14 31:24 53:18,20 56:11,14

**proposition** 37:5

**prospect** 17:5,15

**protect** 21:22 22:7 30:22 72:2

**protected** 12:13 22:11 23:24 24:3 27:14 28:21 29:3,13 40:23 66:8,18 72:20

**protection** 9:19 10:25 12:13 13:20 14:2 16:13,15,17,21 18:7, 8,10,18 20:23,24 21:3,5,22 22:1, 2,7 23:8 27:12 28:4,7,13,14 34:1, 4,8,12,17,18,21 35:2,9 36:12 37:13,15 38:10,16 39:21 40:7 47:17 48:7,24 49:4 57:1,4,10 59:15 61:20,24 63:23,24 64:18 67:24 70:15,17 71:24 72:1 75:8, 21

**prove** 24:15 29:5 40:13

**proven** 27:13

**provided** 17:17 20:25

**providing** 29:20

**proving** 28:21 34:16

**provision** 34:13 35:10

**provisions** 34:5 57:14 58:18

**Puerto** 32:13 44:14 46:3 52:9 74:14

**pulling** 44:2

**punitive** 56:13

**purchase** 19:7,9

**purely** 31:9

**purpose** 29:19

**purposes** 47:20 57:17,25 59:15

**pursuant** 26:1 45:2

**push** 22:19

**put** 17:25 24:5 26:10,12 35:9,16 38:1 43:7,14,21 44:12 56:14 62:13,22 66:23 67:10 75:8

**putting** 48:21 67:14

---

## Q

**question** 11:9 12:3,24 14:23 17:18 21:4 22:17 37:14 42:22 44:17 69:8,23 75:9

**questions** 45:25 56:20 64:2

**quiet** 55:3,10 57:23 58:1,12,20 65:22 72:7

**quo** 65:23

---

## R

**Radford** 19:4

**raise** 17:24 46:8 47:6

**raises** 35:7

**raising** 37:14

**rate** 61:9

**read** 10:20 64:7 68:20

**real** 37:6 45:14 61:21 65:17 71:24

**realize** 43:15 59:2

**realm** 48:11

**reason** 14:4 24:2 27:25 28:5 29:1 34:15 57:10 67:24 70:16

**reasonable** 12:16 17:15

**reasons** 18:1 63:7,11

**rebuttal** 9:10 21:13 72:14

**recall** 68:14

**receive** 38:4

**received** 21:17,21 51:2

**receiving** 25:3 37:25

**recently** 43:9

**recognized** 35:7 37:10

**recognizes** 18:10

**reconciles** 22:3

**reconsider** 43:12

**reconsideration** 55:7

**record** 23:16 24:4,17 29:5,8,11 43:7 44:21,22 47:2 49:7 51:2 60:24 62:12 65:7,11 73:25

**recourse** 9:24,25

**recover** 32:20 33:21

**reduce** 11:17 15:5

**reduced** 22:16 68:21

**reduction** 15:10 22:19

**refer** 49:21 57:22

**reference** 49:23

**referenced** 42:17

**referred** 53:3 55:25

**refunding** 10:24

**refuse** 16:3

**refused** 26:21 66:11

**refusing** 54:25

**regime** 34:16 57:21 64:23,24 66:2 71:1

**region** 29:23

**reinstate** 45:18

**reiterate** 70:3

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings on 01/04/2017

Job 4622
Index: reject..set

**reject** 37:11

**relates** 54:23

**relationship** 61:8

**release** 68:12

**relevant** 42:12 43:15 47:7 63:16

**relied** 46:13

**relief** 13:5,18 14:16 21:23 33:19 47:10,14 48:4,12 52:5 72:5

**relying** 55:24

**remain** 35:21 76:4

**remainder** 30:5

**remaining** 30:16

**remains** 46:19

**reman** 29:4

**remedied** 38:23 41:11,12

**remedies** 14:12 33:12

**remedy** 14:6,8 71:18

**remember** 24:1 67:7 70:2 73:8

**render** 58:23

**renewing** 62:2

**rent** 61:23,24 62:1,5

**reorganization** 60:15

**repaid** 60:8 68:12 75:20

**repeatedly** 34:9 74:17

**replace** 62:5

**replaced** 12:18

**replacement** 12:16 17:16

**reply** 19:3 54:8 67:22

**report** 47:24

**representation** 56:5

**representations** 50:22

**represented** 25:8

**representing** 27:5

**reprieve** 29:21

**require** 69:16

**required** 53:5 64:17

**requirement** 20:22 22:2,7

**requires** 20:24 44:1 53:9 76:1

**reserve** 18:23 21:12 45:18 46:15 51:13

**residents** 37:25 38:4

**resolve** 37:8,9

**resolves** 46:10

**resources** 38:3 43:25

**respect** 26:18 46:8,11 48:10 49:22 50:23,24 51:8,17,21 72:15 74:23

**respond** 53:21 54:3,13,19

**response** 24:10

**responses** 23:9

**responsibly** 54:8

**restructuring** 35:19 55:14 58:7

**result** 9:17 19:15 38:21 43:17 46:20 52:25

**Retirement** 21:12 46:3

**revenue** 10:22 17:24 19:20 24:4,5 29:8 42:15,18 45:17 51:15,23 62:19 64:1 73:5

**revenues** 10:1,7,13 11:11 16:4,9,10,21,23 39:3,6 42:23 43:2 45:8,13 62:7 66:8 67:4,8,14 69:11,17,18

**reversed** 53:2 56:19

**review** 9:14 44:5 58:5

**rhetoric** 27:17

**Richard** 46:2

**Rico** 32:13 44:14 46:4 52:9 74:14

**rightfully** 18:14

**rights** 18:13 20:9 22:12 40:6,11,23 60:16

**rise** 23:7

**risk** 45:14 54:18

**Rocco** 67:22

**room** 22:5 43:19 55:13 57:23 58:1

**rosy** 65:9

**roughly** 22:25 23:2

**route** 58:8,9,10

**rule** 10:25 33:24,25 52:25 53:7,9, 21 54:12 55:2,21 56:3 59:20

**rules** 63:9,12

**ruling** 43:10,13

**run** 37:6 43:2

**run-on** 72:10

---

**S**

**safety** 40:25

**satisfy** 38:16

**scenario** 49:3 60:2

**scheduled** 73:9,15 75:5

**schemes** 47:18

**secondary** 45:23

**section** 13:17 15:15,16 20:14 29:18 34:6,14,18 36:7 39:19,20 47:13,24 48:1,8 56:1 57:15 65:20

**secure** 17:2 30:18

**secured** 13:9 18:12,17 22:5,8,11 28:2,6 31:17,20,21 32:3 33:14,15 40:10 41:3 46:24 59:17 60:5,16 72:2,17 74:14

**security** 15:18 17:21 19:1,8 20:3 31:16 32:4,6 39:25 40:1 42:3 45:23 62:11 70:4

**seek** 31:10 36:3 65:25

**seeking** 13:5

**seizing** 22:5

**sells** 17:3,13

**sensation** 56:6

**sense** 53:21 61:7

**sentence** 72:10

**separate** 25:17 26:10,12,19 63:10

**separating** 27:3

**service** 45:5 46:15 51:5 52:3 61:2

**services** 38:1,5 39:4

**set** 18:23 36:10 45:11,12 46:12

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings   on 01/04/2017

Job 4622
Index: sets..supposed

**sets** 53:10

**setting** 38:7

**seven-month** 36:22

**shape** 35:21

**shelter** 65:25

**shifting** 34:2,16

**shifts** 15:20

**show** 12:6,7,9,12,15,17,19 13:5,
13 14:15,17,20,23 15:16 16:22
17:7,15 20:5,25 24:11 28:24
32:22 38:10 49:3 60:4 70:4,5,10,
17

**showed** 21:1 72:17

**showing** 13:9,10,25 15:25
24:17,18 32:18 36:13

**shown** 13:2,4 15:2 63:10

**shows** 30:16

**significant** 75:3

**simple** 12:14

**simply** 25:9,17 26:2 27:3 47:12
48:11 67:1 68:20

**single** 46:17

**sitting** 25:9 27:4

**situation** 15:24 49:9 57:3 60:4,
24 62:21

**situations** 63:4

**so-called** 65:22

**sole** 55:17 56:25 57:8

**solely** 51:3

**someone's** 16:18

**Sooknanan** 21:9,10,15 23:9
24:25 25:13 26:6,25 28:11,19
72:13 73:1 74:7

**sort** 17:20 38:21 42:5

**sought** 53:11 69:9,10

**sounds** 13:6 23:3

**sovereign** 17:22

**Sparkle** 21:10

**speaking** 64:19

**specific** 42:22 53:15

**specifically** 42:16 44:20 50:15

**speculative** 67:23 70:13

**spend** 12:8,11 20:6 25:16 26:12
27:7 52:22 68:3

**spending** 13:11 14:1 37:24
44:11 65:16 69:21

**spends** 17:4,12,13

**spent** 15:20 17:10 20:5 75:22,24

**spots** 63:10

**stabilize** 29:23

**standard** 9:20 10:20 12:14
13:16 14:5 20:13,14,18,20 28:10
34:1,8,18,19,21 35:9 38:17,18
39:1 40:24 45:19 48:23,24 56:24
57:19,20 62:24 63:2

**standards** 31:17 47:10 48:7

**start** 13:1 28:1

**started** 10:2

**state** 21:24

**stated** 60:23

**statements** 24:6 29:9 50:22
73:3 74:22

**states** 47:25

**status** 52:15 65:23

**statute** 13:1 14:7,13 20:19 22:13
34:11 38:2 39:1,13 40:19 42:5
57:24,25 58:3 63:4 65:24 71:25

**statutes** 33:14

**statutorily** 21:25 75:6

**statutory** 36:19 47:18 55:2
57:18 66:2

**stay** 13:18 14:16 15:4 18:11,19
19:24 20:8 22:6,10 26:13 29:23
30:3,6,13,25 31:9,11,21 32:21
33:6,10,16 34:22,23 35:4,6,16
36:6 38:2,24 39:12,17 40:5,6,12,
21,23 41:15 42:1,14 44:10 46:17,
19,21,25 47:11,15 48:1,3,5 50:16
51:23 54:23 55:4,19 57:11 59:6
60:12 61:3 66:1 68:13 71:5,6

**Staying** 10:19

**stipulated** 22:23 27:9 42:10,11,
13 43:8 44:21,24 45:4 46:12 47:2
51:12 73:2 75:12

**stipulations** 42:14,16 62:12
73:16,25

**stop** 12:19 14:6 64:3 66:9,12,16
70:20

**stopped** 67:11

**stream** 10:22 19:20 24:4,5 29:9
51:24 61:18 62:19 72:23 73:5

**streamline** 73:17

**streams** 37:4 42:15,18

**stripped** 60:15

**Structures** 9:5

**struggle** 54:6

**subject** 48:2

**submit** 34:15 73:12

**submitted** 23:21 56:12 73:16
75:13

**substantiate** 65:11

**substitute** 17:16 20:25 71:5

**substituting** 67:25

**subtle** 13:23 20:21 72:1

**sue** 66:20 67:18 68:1 70:12
71:19

**suffered** 36:4

**suffering** 9:17 38:21,23

**sufficient** 42:24 43:10 45:17
46:14 61:1 71:17,18,19

**suggest** 18:4 39:18,23 71:18

**suggested** 37:8 45:8 56:23
74:16

**suggesting** 48:22

**suggestion** 73:22

**suggests** 13:5 73:10

**suit** 15:6

**suitable** 12:16 17:16 20:25

**suits** 15:5

**supplement** 50:8

**support** 52:5 56:9

**suppose** 17:25 28:9

**supposed** 16:6 58:11 65:21
66:3 67:9

PEAJE INVESTMENTS vs ALEJANDRO GARCIA-PADILLA
Court Proceedings   on 01/04/2017

Job 4622
Index: Supreme..voluntary

**Supreme** 19:2,4 60:10

**suspended** 45:2 49:16

**suspends** 26:2,23 27:1

**System** 21:12 46:3

---

**T**

**table** 76:4

**takes** 16:10

**taking** 9:17 12:19,20 13:10,13, 25 14:6,10 18:20 48:15,17 49:9 54:10,18 59:13,16 60:18 65:16 66:9,12,15,16,20 67:6,19 70:6, 20,22 71:23

**takings** 37:6

**talk** 46:23

**talking** 15:4 19:12,19 20:2,3 39:1 47:12 59:9 60:1 63:6 74:18

**tasks** 58:2

**tax** 17:23 62:9

**telling** 28:1

**temporarily** 45:2

**temporary** 15:4 29:21,23 35:25

**ten-year** 60:14

**tenant** 62:2

**term** 61:25

**terms** 17:21 20:1 23:19 64:6

**test** 38:10 52:25 72:4,5

**testify** 44:1 65:13 69:18 75:7

**testimony** 42:22 43:8,21 73:21

**there'll** 22:23

**thing** 35:13 51:16 72:7

**things** 9:16 40:18 65:14

**thinking** 54:18

**Thompson** 65:7

**Thompson's** 69:8

**thought** 17:19 43:6 54:18

**threatens** 59:16 60:8 61:11

**tied** 26:17

**Timbers** 60:11,13

**time** 9:10,15 16:10 25:2 44:11,13 46:5 52:21 57:23 58:1 60:18,19 62:15 67:13

**timing** 73:14

**tipped** 66:13

**Title** 35:14,18 36:5,6,9 55:10 58:9,11,16,17,19 64:24

**today** 9:2 12:17 29:2 65:16 68:1, 4 70:11 71:23 74:12,16,21

**told** 68:11 73:23 74:5

**Toll** 10:1,7,13 39:6

**tolls** 17:24

**tomorrow** 25:17 27:6 32:11

**topics** 46:7

**total** 62:7 67:8,14

**touch** 9:16 26:13 47:6 50:10,14

**touched** 12:24

**touchstone** 56:25 57:8

**trace** 16:13

**track** 62:14

**trade** 25:12

**traditional** 38:19 42:6 53:21

**transfer** 25:25 26:3,5,8 49:19 50:2

**transferring** 26:9

**translation** 26:3

**treat** 59:8,9

**tremendous** 44:7

**trouble** 23:5 49:1

**true** 19:22,25 23:10 27:19 32:23 49:2

**trump** 57:4

**trust** 23:22 24:24 68:3

**truth** 54:7

**turn** 16:9 56:21

**turns** 37:12

**type** 23:6

**typical** 62:20

---

**U**

**ultimately** 61:4

**uncertain** 23:15,18 24:7,8 29:10 73:4,7 74:6,11,22

**uncertainty** 50:22,24

**under-secured** 60:7

**underlying** 47:22

**understand** 10:9,25 16:7 22:14, 22 24:21 26:16 45:7,15 49:15 73:14

**understanding** 39:14

**undisputed** 13:11 15:19,20 21:16,19 27:23 51:6 70:5,7,8

**unequivocally** 60:6

**unfamiliar** 63:2

**Uniform** 19:8

**unique** 41:17 56:5

**unlike** 36:6 40:8

**unsecured** 31:14,18 32:16 33:20 66:19 67:19 71:20 75:25

**urging** 37:17

**utterly** 17:22

---

**V**

**valve** 40:25

**variety** 62:25

**vehicle** 62:9

**verbatim** 57:14 58:18

**versus** 9:3

**VI** 55:10

**view** 56:9 72:6

**viewed** 43:10

**violating** 65:24

**virtually** 61:19

**voluntary** 35:19

## W

**wait**  17:11 30:5 39:18

**waiting**  52:15

**wanted**  41:25 46:8 48:6 57:16
  59:10

**Wednesday**  9:1

**weigh**  63:3

**whatsoever**  27:25 28:4,5 65:8

**window**  36:23

**withstanding**  29:22

**woes**  27:18

**word**  15:2 59:3

**words**  11:16 55:25

**works**  67:7

**worse**  22:21

**written**  34:1,3

**wrong**  53:8

**wrote**  74:11

## Y

**year**  19:12 23:1,2 51:25 71:8

**years**  47:1 61:25 65:16 71:8