# EXHIBIT 49

No. 16-2433

IN THE

# United States Court of Appeals

## FOR THE FIRST CIRCUIT

◆◆

ALTAIR GLOBAL CREDIT OPPORTUNITIES FUND (A), LLC; PUERTO RICO AAA PORTFOLIO BOND FUND, INC.; PUERTO RICO AAA PORTFOLIO TARGET MATURITY FUND, INC.; GLENDON OPPORTUNITIES FUND, LP; NOKOTA CAPITAL MASTER FUND, L.P.; OAKTREE-FORREST MULTI-STRATEGY, L.L.C. (SERIES B); OAKTREE OPPORTUNITIES FUND IX, L.P.; OAKTREE OPPORTUNITIES FUND IX (PARALLEL 2), L.P.; OAKTREE VALUE OPPORTUNITIES FUND, L.P.; PUERTO RICO AAA PORTFOLIO BOND FUND II, INC.; PUERTO RICO FIXED INCOME FUND, INC.; PUERTO RICO FIXED INCOME FUND II, INC.; PUERTO RICO FIXED INCOME FUND III, INC.; PUERTO RICO FIXED INCOME FUND IV, INC.; PUERTO RICO FIXED INCOME FUND V, INC.; PUERTO RICO GNMA AND U.S. GOVERNMENT TARGET MATURITY FUND, INC.; PUERTO RICO MORTGAGE-BACKED & U.S. GOVERNMENT SECURITIES FUND, INC.; SV CREDIT, L.P.; TAX-FREE PUERTO RICO FUND, INC.; TAX-FREE PUERTO RICO FUND II, INC.; TAX-FREE PUERTO RICO TARGET MATURITY FUND, INC.; UBS IRA SELECT GROWTH & INCOME PUERTO RICO FUND,

*Movants-Appellants,*

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

## BRIEF FOR RESPONDENT-APPELLEE
## THE EMPLOYEES RETIREMENT SYSTEM
## OF THE COMMONWEALTH OF PUERTO RICO

JOHN M. HILLEBRECHT
NEAL F. KRONLEY, *of counsel*
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

RICHARD A. CHESLEY
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
(312) 368-4000

*Counsel for Respondent-Appellee*
*The Employees Retirement System of the Commonwealth of Puerto Rico*

CLAREN ROAD CREDIT MASTER FUND, LTD.; CLAREN ROAD CREDIT
OPPORTUNITIES MASTER FUND, LTD.; OCHER ROSE, L.L.C.; PUERTO RICO
INVESTORS BOND FUND I, INC.; PUERTO RICO INVESTORS TAX-FREE FUND,
INC.; PUERTO RICO INVESTORS TAX-FREE FUND II, INC.; PUERTO RICO
INVESTORS TAX-FREE FUND III, INC.; PUERTO RICO INVESTORS TAX-FREE
FUND IV, INC.; PUERTO RICO INVESTORS TAX-FREE FUND V, INC.; PUERTO RICO
INVESTORS TAX-FREE FUND VI, INC.,

*Movants,*

—v.—

ALEJANDRO GARCÍA-PADILLA, in his official capacity as the Governor of Puerto
Rico; JUAN C. ZARAGOZA-GOMEZ, in his official capacity as the Secretary of
Treasury of Puerto Rico; LUIS F. CRUZ-BATISTA, in his official capacity as the
Director of the Commonwealth's Office of Management and Budget; THE
EMPLOYEES RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO,

*Respondents-Appellees.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") states as follows:

ERS is a trust created by Act No. 447 of May 15, 1951, as amended, of the Legislature of the Commonwealth of Puerto Rico (the "Enabling Act"). No corporation is a parent of ERS and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

COUNTER-STATEMENT OF THE ISSUES ON APPEAL ................................4

COUNTER-STATEMENT OF THE CASE ........................................................5

    A.    The ERS Bonds ....................................................................5

    B.    The Puerto Rico Financial Crisis And The Adoption Of
PROMESA ...........................................................................7

    C.    The Commonwealth Suspends Transfers To ERS's Fiscal
Agent ..................................................................................9

    D.    The District Court Proceedings ..........................................10

    E.    The District Court's Opinion.............................................13

    F.    The Present Appeal ............................................................15

SUMMARY OF THE ARGUMENT ................................................................15

STANDARD OF REVIEW ..........................................................................16

ARGUMENT ...........................................................................................17

I.    THE LACK OF ADEQUATE PROTECTION IS NOT A BASIS TO
LIFT THE PROMESA STAY...............................................................17

    A.    The Plain Language Of PROMESA Does Not Treat Lack Of
Adequate Protection As A Basis For Lifting The Stay.....................17

    B.    The District Court's Equitable Approach Aligns With
PROMESA's Congressional Purpose .................................22

II.    THE APPELLANTS' ARGUMENT THAT THEY LACK
ADEQUATE PROTECTION IS ILLUSORY .........................................25

    A.    Appellants Have Adequate Protection ...............................25

        1.    The Fiscal Agent Has Sufficient Funds For The Duration
Of The PROMESA Stay .........................................26

        2.    The Appellants Maintain A Security Interest In The ERS
Bonds...................................................................28

    B.    The Appellants' Contrary Position Is Not Tenable............................31

III.    THE DISTRICT COURT PROVIDED ADEQUATE DUE PROCESS
TO BONDHOLDERS ..................................................................34

i

# TABLE OF CONTENTS
## (continued)

<div align="right">**Page**</div>

A.   PROMESA Requires Timely Due Process ........................................ 34

B.   The District Court Provided Appellants Due Process ...................... 37

C.   The Appellants' Speculation As To Their Expert Does Not Suggest That The District Court's Decision Offends Due Process ............................................................................................. 38

CONCLUSION ...................................................................................... 41

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adams v. Watson,*
    10 F.3d 915 (1st Cir. 1993)..................................................................................27

*Anderson v. Beatrice Foods Co.,*
    900 F.2d 388 (1st Cir. 1990)..............................................................................17

*Blum v. Stenson,*
    465 U.S. 886 (1984)..........................................................................................18

*Burlington N. & Santa Fe. Ry. Co. v. White,*
    548 U.S. 53 (2006)............................................................................................20

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984)..........................................................................................18

*Cruz v. Bristol Myers Squibb Co. PR, Inc.,*
    777 F. Supp. 2d 321 (D.P.R. 2011) ..................................................................39

*Estate of Cowart v. Nicklos Drilling Co.,*
    505 U.S. 469 (1992) ........................................................................................18

*Fed. Mar. Comm'n v. Seatrain Lines, Inc.,*
    411 U.S. 726 (1973)..........................................................................................22

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994)..........................................................................................22

*Gomez v. Rivera Rodriguez,*
    344 F.3d 103 (1st Cir. 2003)..............................................................................40

*Grella v. Salem Five Cent Sav. Bank,*
    42 F.3d 26 (1st Cir. 1994)................................................................................20

*Griffin v. Oceanic Contractors, Inc.,*
    458 U.S. 564 (1982) ........................................................................................22

*Helmer v. Goodyear Tire & Rubber Co.,*
    828 F.3d 1195 (10th Cir. 2016) .......................................................................19

*Howard v. Lexington Invs., Inc.*,
   284 F.3d 320 (1st Cir. 2002) .................................................................... 17

*Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*,
   864 F.2d 927 (1st Cir. 1988) .................................................................... 17

*In re Buttermilk Towne Center, LLC*,
   442 B.R. 558 (B.A.P. 6th Cir. 2010) ....................................................... 32

*In Re Capitol Food Corp. of Fields Corner*,
   490 F.3d 21 (1st Cir. 2007) ..................................................................... 17

*In re Dynaco Corp.*,
   162 B.R. 389 (Bankr. D.N.H. 1993) ........................................................ 31

*In re Forseen, Inc.*,
   81 B.R. 903 (N.D. Ill. 1987) .................................................................... 36

*In re Hotel Coamo Springs*,
   No. 12 Civ. 01696 (JAF), 2013 WL 2147687 (D.P.R. May 16, 2013) ............. 35

*In re Jug End in the Berkshires, Inc.*,
   46 B.R. 892 (Bankr. D. Mass. 1985) ....................................................... 30

*In re Lane*,
   108 B.R. 6 (Bankr. D. Mass. 1989) .......................................................... 31

*In re London, Inc.*,
   70 B.R. 63 (Bankr. E.D. Wis. 1987) ........................................................ 35

*In re Looney*,
   823 F.2d 788 (4th Cir. 1987) .................................................................... 36

*In re Putnal*,
   483 B.R. 799 (Bankr. M.D. Ga. 2012) .................................................... 31

*In re Savage Indus., Inc.*,
   43 F.3d 714 (1st Cir. 1994) ..................................................................... 36

*In re Stearns Building*,
   165 F.3d 28 (6th Cir. 1998) ..................................................................... 32

*In re Sullivan Ford Sales*,
   2 B.R. 350 (Bankr. D. Me. 1980) .......................................................35

*In re SW Boston Hotel Venture LLC*,
   449 B.R. 156 (Bankr. D. Mass. 2011) .........................................30, 31

*In re Watman*,
   458 F.3d 26 (1st Cir. 2006)................................................................16

*In re Wedgewood Realty Grp., Ltd.*,
   878 F.2d 693 (3d Cir. 1989) ..............................................................36

*Kerin v. Titeflex Corp.*,
   770 F.3d 978 (1st Cir. 2014)..............................................................27

*Lakeland Enters. of Rhinelander, Inc. v. Chao*,
   402 F.3d 739 (7th Cir. 2005) .............................................................40

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................27

*Merrell Dow Pharm. Inc. v. Thompson*,
   478 U.S. 804 (1986)............................................................................22

*Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*,
   20 F.3d 15 (1st Cir. 1994)..................................................................40

*Northland Cranberries, Inc. v. Ocean Spray Cranberries, Inc.*,
   382 F. Supp. 2d 221 (D. Mass. 2004)................................................19

*Pena-Crespo v. Puerto Rico*,
   408 F.3d 10 (1st Cir. 2005)................................................................38

*Riva v. Commw. of Mass.*,
   61 F.3d 1003 (1st Cir. 1995)..............................................................18

*Texas v. United States*,
   523 U.S. 296 (1998)............................................................................27

*Thibeault v. Square D Co.*,
   960 F.2d 239 (1st Cir. 1992)..............................................................39

*United States v. Azeem*,
    946 F.2d 13 (2d Cir. 1991) ...................................................20

*United States v. Procter & Gamble Co.*,
    356 U.S. 677, 682 (1958) ...................................................39

*United States v. Ron Pair Enters., Inc.*,
    489 U.S. 235 (1989)...........................................................22

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)...........................................................27

**STATUTES**

11 U.S.C. § 102 ...................................................................35

11 U.S.C. § 362 ........................................................ 19, 21, 33

48 U.S.C. § 2194(e)(2) ........................................................19

Fed. R. Civ. P. 26(a)(2)(B) ..............................................38, 39

P.R. Act 21-2016 ("Moratorium Act") ...................................7

Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C.
    § 2101, *et. seq.* ("PROMESA") ..................................passim

**OTHER AUTHORITIES**

2 Collier on Bankruptcy § 362.08 (15th ed. 1989) ...................35

H.R. Rep. No. 114-602 (2016)...............................................20

Mary Williams, Liz Moyer, *How Puerto Rico Is Grappling With A Debt
    Crisis*, N.Y. Times (July 1, 2016) (last accessed Dec. 22, 2016)........................1

## **INTRODUCTION**

On June 30, 2016, Congress enacted, and President Obama signed into law, the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101, *et. seq.* ("PROMESA") for the specific purpose of addressing the well-known fiscal crisis in Puerto Rico.  The crisis may impact, *inter alia*, Puerto Rico residents' services such as schools, hospitals, and Zika virus containment efforts.[1]

To accomplish its goals, Congress provided for a limited stay of litigation against the Commonwealth until February 15, 2017, so that Puerto Rico can "focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly lawsuits."  PROMESA § 405(n)(2).  The Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), provided for by PROMESA and established on August 31, 2016, is right now working to stabilize Puerto Rico, given the statutory "breathing room" provided by PROMESA.

Appellants – consisting of holders of bonds issued by the Commonwealth's Employees Retirement System – seek to choke off  PROMESA's "breathing room" by lifting PROMESA's automatic stay.  Appellants argue that PROMESA's less-than-eight-month-stay (of which less than *two months* remain) deprives them of "adequate protection" and is, therefore, appropriate "cause" for lifting the stay.

---

[1] *See* Mary Williams, Liz Moyer, *How Puerto Rico Is Grappling With A Debt Crisis*, N.Y. Times (July 1, 2016) (last accessed Dec. 22, 2016).

While Appellants delayed filing their request until well after other similarly situated financial creditors had moved for comparable relief, they nonetheless sought expedited consideration of their relief before the District Court (The Honorable Francisco A. Besosa).  The District Court obliged the Appellants, going so far as consolidating their case with ones filed months earlier.  Thereafter, the parties fully briefed all relevant legal issues, and stipulated to all material facts, in advance of the scheduled hearing date.

The District Court ultimately disagreed with Appellants' argument that they lacked adequate protection precisely because the balance of equities weighed towards the "larger, overarching purposes for which PROMESA was enacted," and, therefore, the PROMESA stay was sustained.  The District Court reached this conclusion because the Appellants could not meet their burden to show "cause" sufficient to lift the stay.  Specifically, the District Court found that Appellants were adequately protected because "while the *Altair* plaintiffs will not receive the benefit of the pledged property during the pendency of the stay, they will only be delayed in recovering the funds needed to repay their ERS bonds." (*see* Add. 17-18).[2]  Also integral to the District Court's decision was the finding that "there are sufficient monies in the debt service and reserve accounts to service the bondholder debt until April 1, 2017, [and] not a single principal or interest payment will be

---

[2] All references to "Add. __" refer to the Addendum filed by Appellants in conjunction with their brief.  All references to "JA __" refer to the Joint Appendix.

missed while the PROMESA stay remains in place." (Add. 18 n.1). These conclusions were, of course, made on the basis of the facts agreed upon by the parties and jointly submitted to the District Court.

On appeal, the Appellants continue to press to lift the stay. Other than the reduced duration of the stay due to the lapse of time – with the stay now set to expire on February 15, 2017, 42 days after oral argument– nothing has changed in the parties' positions since the District Court.

- PROMESA remains in place, and the Oversight Board is working to stabilize Puerto Rico as intended.

- ERS continues to collect contributions from both Commonwealth and non-Commonwealth employees for pension funds.

- ERS's Fiscal Agent still maintains sufficient funds to pay debt service on the Appellants' bonds throughout the stay, and for even longer if the stay is extended.

In other words, Appellants cannot identify any cognizable fact that calls into question the adequate protection the District Court determined to already exist.

Without any basis to challenge that finding, Appellants instead focus their argument on what *might* happen *if* certain contingencies arise and the PROMESA stay is extended. As was made clear in the District Court, there are adequate funds to pay debt service and to serve as collateral for the Appellants' bonds at least

through April 2017, and therefore not a single payment will be missed during the pendency of the stay. As the Court specifically held, Appellants "face no financial harm as a result of the stay." (Add. 18 n.1). In any event, Appellants' *conjecture* is not a sufficient basis to lift the PROMESA stay.

Appellants' new-found concern with the alacrity with which the District Court addressed their motion and cancelled the hearing scheduled for November 3, 2016, moreover, is entirely disingenuous and irrelevant. Appellants had a full opportunity to be heard in the District Court, consistent with the meaning and purpose of the PROMESA statute. Appellants also *stipulated* to the facts used to determine the issues in dispute, rendering the hearing unnecessary. Here again, the purported injury to Appellants, *i.e.*, preclusion of their hired expert from testifying at the hearing, is, first, misleading because an expert would not offer new facts, and second, speculative that the expert would testify at all.

In sum, Appellees respectfully request that this Court affirm the judgment of the District Court.

## COUNTER-STATEMENT OF THE ISSUES ON APPEAL

1.     Whether the stay imposed by PROMESA, 48 U.S.C. § 2101, *et. seq.*, may be lifted for lack of adequate protection despite the absence of any language in the statute or Congressional purpose stating this as a basis for relief from the stay.

2.      Whether the Fifth Amendment protects a party's speculation that it may suffer from lack of adequate protection at some unknown point in the future.

3.      Whether due process considerations require a judicial hearing on a legal issue where the parties have stipulated to the facts and there are, therefore, no factual disputes.

## COUNTER-STATEMENT OF THE CASE

### A.      The ERS Bonds

The Appellants' motion to lift the PROMESA stay is premised exclusively on three series of bonds issued by ERS  (the "ERS Bonds") pursuant to the Pension Funding Bond Resolution (the "Bond Resolution") adopted by the Commonwealth on January 24, 2008.  The Bonds were issued for the purposes of increasing the funds available to pay pension benefits to certain of its beneficiaries and to reduce its unfunded accrued actuarial pension liability.  (*See* JA 239 ¶ 6; JA 127 § 2.2).

Under the terms of the Bond Resolution, the Commonwealth granted in favor of a fiscal agent (the "Fiscal Agent," currently the Bank of New York Mellon) (JA 240 ¶ 8) a security interest and related lien in and over "Pledged Property" – consisting of, among other assets, all revenues of the ERS – pending the discharge and satisfaction of all outstanding principal and interest.  (*See* JA 241 ¶ 12; JA 92 § 501; JA 120).  The ERS Bonds are "special obligations of the [ERS] payable solely from the Pledged Property without recourse against other assets" of

the ERS, and do not "constitute a debt of the Commonwealth." (JA 241 ¶ 13; JA

85 § 201). Aside from the liens securing ERS Bonds, the Pledged Property is "free

and clear of any pledge, lien, charge, or encumbrance" (JA 241 ¶ 14; JA 99 § 705),

and is "valid and binding as against all parties having claims of any kind in tort,

contract or otherwise against the [ERS], irrespective of whether such parties have

notice thereof." (JA 241 ¶ 14; JA 92 § 501). In other words, the security interest

and lien in favor of ERS Bondholders is only limited by the satisfaction of ERS's

outstanding debt obligations.

Pursuant to the Enabling Act, governmental employers in Puerto Rico are

required to transfer employer contributions to the ERS on a monthly basis. On the

last business day of each month, the ERS must transfer those employer

contributions to the Fiscal Agent. (JA 93 § 504). The Fiscal Agent must

immediately, and not later than the next business day, deposit employer

contributions into the "Revenue Account," except in limited circumstances. (*Id.*).

Moneys on deposit in the Revenue Account are to be deposited, in order of

priority, (a) to an account to make debt service on senior bonds (the "Senior Bonds

Debt Service Account"), (b) to a reserve account for senior bonds (the "Senior

Bonds Debt Service Reserve Account"), (c) to an account to make debt service on

subordinated bonds (the "Subordinated Bonds Debt Service Account"), (d) to a

reserve account for subordinated bonds (the "Subordinated Bonds Debt Service

Reserve Account"), (e) to pay operating expenses, and (f) to a general reserve account (the "General Reserve Account"). (*Id*.). The Fiscal Agent is responsible for making interest and principal payments to holders of ERS Bonds when due. (JA 94 § 505(4), (5)). In addition to contributions from the Commonwealth, the ERS also receives contributions from non-Commonwealth employers. (*See* JA 246 ¶ 28).

### B. The Puerto Rico Financial Crisis And The Adoption Of PROMESA

In response to the historic fiscal crisis impacting Puerto Rico, the Commonwealth enacted the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act (P.R. Act 21-2016, hereinafter "Moratorium Act") on April 6, 2016. (JA 245 ¶ 22). The Moratorium Act afforded the Governor of Puerto Rico broad-ranging powers, including directing the prioritization of essential service payments. (*See* Moratorium Act §§ 201, 202). With massive debt service obligations due on July 1, 2016, the Governor issued Executive Order 2016-31 the day before declaring a state of emergency for, *inter alia*, ERS. (*See* JA 245 ¶ 24; JA 161). The state of emergency continues until January 31, 2017, with a potential two month extension by order of the Governor. (*See* Moratorium Act § 103(m)).

Within days, President Obama signed into law PROMESA. As with all financial restructuring regimes, a foundation of PROMESA is a broad-ranging stay of actions against the putative debtors. Congress built the automatic stay provision

into PROMESA to provide the Commonwealth with "a limited period of time
[until February 15, 2017] during which it can focus its resources on negotiating a
voluntary resolution with its creditors instead of defending numerous, costly
creditor lawsuits." (PROMESA § 405(n)(2)).  The PROMESA stay began on June
30, 2016, and, as noted, will last until February 15, 2017.

PROMESA contains a number of other key provisions, including the
appointment of a Financial Oversight and Management Board for Puerto Rico
("Oversight Board") charged with overseeing "[a] comprehensive approach to
[restructuring] fiscal, management, and structural problems and adjustments that
exempts no part of the Government of Puerto Rico."  PROMESA §§ 405(m)(4),
(n)(3)-(4).  Thereafter, the Oversight Board was established on August 31, 2016.
(Add. 4).

As noted, the PROMESA stay will expire on February 15, 2017.  The statute
provides for an extension of the stay under two contingencies.  First, the Oversight
Board may extend the stay during a period of negotiations with creditors by an
additional 75 days if it determines that additional time is needed.  Second, the
district court may extend the stay an additional 60 days if it makes a similar
determination.  (JA 247 ¶ 30).  Neither of these contingencies has arisen.

## C.     The Commonwealth Suspends Transfers To ERS's Fiscal Agent

On June 30, 2016, and pursuant to the Moratorium Act, the Governor suspended transfers of ERS revenues to the Fiscal Agent.  (JA 245-46 ¶ 24).  These steps, however, have not hampered ERS from fulfilling its payment obligations under the ERS Bonds – and its ability to do so until well after the expiration of the stay.

As noted above, ERS continues to collect employer contributions from non-Commonwealth employers, and the amount of these contributions since July 2016, when the Moratorium Act was implemented, is $75,545,510.98.  (JA 246 ¶ 26).  Although ERS is unable to transfer these funds to the Fiscal Agent without violating the Moratorium Act, these amounts are currently held in an ERS operating account at Banco Popular de Puerto Rico.  (*Id*.).  Specifically, ERS collectively received employer contributions from non-Commonwealth employers in the amount of $75,545,510.98 for the months of July, August, September and October 2016, respectively.  (JA 246 ¶ 28).  These amounts have continued to accumulate in the operating account.

Furthermore, as of October 1, 2016, the Fiscal Agent held amounts on deposit in the aggregate amount of $99,999,844.46, consisting of (a) $18,480.18 in the Senior Bonds Debt Service Account, (b) $83,259,495.30 in the Senior Bonds Debt Service Reserve Account, and (c) $16,722,868.92 in the General Reserve

Account. (JA 242 ¶ 17). On October 1, 2016, the Fiscal Agent provided notice that $13,858,102.30 was withdrawn from the General Reserve Account and applied to pay a portion of the debt service due that same day. (*Id*.). These funds are subject to the lien held by ERS Bondholders. (*Id*.). There is no dispute that there is sufficient cash to cover all debt service payments through and including April 1, 2017 – after the expiration of both PROMESA's automatic stay and the moratorium and stay imposed by the Moratorium Act. (JA 243 ¶ 18). Further, the ERS received approximately $418 million in employer contributions in the year ending June 30, 2015, an amount scheduled to increase by 1.25% per year beginning on July 1, 2016. (JA 244 ¶ 20).

### D. The District Court Proceedings

Jumping on the bandwagon of earlier-filed PROMESA stay relief requests, Appellants initiated this action on September 21, 2016, in the U.S. District Court for the District Court of Puerto Rico, seeking to lift the stay imposed by PROMESA. (JA 26 at ECF No. 1). Appellees were served with the motion on September 23, 2016, and the Commonwealth then sought an extension of time to respond to Appellants' motion to lift the stay until October 28, 2016, which the Appellants opposed. (JA 29 at ECF No. 23). The District Court granted the extension only until October 26, 2016.

The proceeding progressed quickly towards a hearing in the District Court, with Appellants seeking, on October 13, 2016, to consolidate the Appellants' motion with two other actions pending that had been in the District Court for several months– *Peaje Investments LLC v. Alejandro Garcia-Padilla, et al.*, No. 16 Civ. 02365, and *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico*, No. 16 Civ. 02384. The District Court granted the consolidation motion the following day. (JA 31 at ECF No. 27). As a result of the consolidation, the Appellants' motion was to be considered as part of a pre-existing hearing scheduled for November 3, 2016.

Appellees filed oppositions to Appellants' motion to lift the PROMESA stay on October 26, 2016, and Appellants sought leave to file a further reply, which was granted on November 1, 2016. (JA 34-36 at ECF Nos. 53, 59, 60). Appellants filed their reply that same day. (JA 36 at ECF No. 61).

On October 28, 2016, the Oversight Board sought to intervene in the District Court proceeding. In seeking to intervene, the Oversight Board made it clear that it objected to the efforts of parties such as the Appellants to ignore the policy underlying PROMESA's imposition of the automatic stay. (JA 36 at ECF No. 56). The District Court denied the motion to intervene on November 1, 2016, and denied as moot the Oversight Board's motion for reconsideration. (JA 37 at ECF No. 62; JA 39 at ECF No. 63).

11

Prior to the hearing scheduled for November 3, 2016, Appellants disclosed on October 25, 2016, that they intended to rely on the expert testimony of Dr. Bradford Cornell. On October 28, 2016, Appellants provided a copy of Dr. Cornell's *curriculum vitae*, a list of his prior testimony over the last four years, and identified his "principal conclusions." At no time did Appellants even attempt to follow the remaining mandates of Rule 26 of the Federal Rules of Civil Procedure governing required expert disclosure. Instead, Appellants simply produced proposed demonstrative exhibits for Dr. Cornell on October 31, 2016, with further revised demonstrative exhibits arriving hours before the hearing was scheduled to commence.

The parties stipulated to the "truth and admissibility" of facts "for the purpose of adjudicating Movants' motion" at the November 3 hearing. (JA 239) (the "Stipulated Facts"). The Stipulated Facts consist of fifteen pages of facts across forty-nine paragraphs, and address all facts that the parties collectively believed relevant to the motion to lift the PROMESA stay. Specifically, the Stipulated Facts discuss ERS, the ERS Bonds, amounts in reserve for the ERS accounts, the method by which the ERS bonds are paid, the Moratorium Act, PROMESA, and ERS's financial condition. The purpose in entering into the Stipulated Facts was to obviate the need for fact witnesses at trial and confine the

issues solely to legal arguments and, possibly, properly-disclosed expert testimony (if any).

After issuing its opinion denying Appellants' motion to lift the PROMESA stay on November 2, 2016, the District Court cancelled the hearing.

### E.    The District Court's Opinion

On November 2, 2016, the District Court issued a nineteen-page ruling denying all of the Appellants' requests to lift the PROMESA stay.  (Add. 1-19).  In its opinion, the District Court first noted that the PROMESA stay is "not absolute in nature" and was intended to "'provide the Government of Puerto Rico with the resources and the tools it needs to address an immediate existing and imminent crisis.'"  (Add. 5 (quoting PROMESA § 405(n)(1)).  The District Court then recognized that relief from the stay provides a "safety valve" for litigants "provided that they could effectively demonstrate 'cause' or 'irreparable harm.'" (Add. 5).  Because PROMESA was "patterned" on section 362 of the Bankruptcy Code, 11 U.S.C. § 362, the District Court analyzed this provision, and determined that its task in determining whether "cause" exists to lift the PROMESA stay requires "a careful balancing of the equities involved."  (Add. 6, 9).

The District Court then recognized that "lack of adequate protection" may be a basis to lift the PROMESA stay based on its "constitutional roots" (Add. 10), but cautioned that there is not a "'one-to-one' relationship" between PROMESA and

section 362 of the Bankruptcy Code. (Add. 11). As a consequence, "the concept of 'cause' embraced by the [District] Court for the purposes of the PROMESA stay need not precisely mirror that adopted in the bankruptcy context" due to the "specific Congressional findings and the enumerated purposes of PROMESA's automatic stay . . . " (Add. 11). The District Court also specifically noted that any decision to vacate the stay "should advance the larger, overarching purposes for which PROMESA was enacted." (Add. 12).

In applying its analytical framework to the Appellants, the District Court found that Appellants are adequately protected. In so holding, the District Court specifically cited "provisions of both the Moratorium Act and PROMESA that effectively preserve [a party's] contractual security interest . . ." (Add. 16). In particular, the Appellants hold a "security interest and lien in certain pledged property, *including all future employer contributions*" that "continues indefinitely until ERS's outstanding debt obligations have been satisfied in full. (Add. 17 (emphasis added)). The District Court concluded that Appellants' lien against ERS will not be diminished or destroyed by PROMESA or the Moratorium Act, and following the lifting of the stay the "enduring stream of ERS pledged property will once again flow to the fiscal agent to be held for the benefit of ERS bondholders." (Add. 17). Accordingly, the Appellants' interest remains adequately protected.

The District Court also noted that "there are sufficient monies in the debt service and reserve accounts to service the bondholder debt until April 1, 2017," that "not a single principal or interest payment will be missed while the PROMESA stay remains in place" and, therefore, the Appellants "face no financial harm as a result of the stay." (Add. 18, n 1).

### F.     The Present Appeal

Appellants filed their notice of appeal on November 28, 2016 (JA 39), and on December 2, 2016, the First Circuit Court of Appeals consolidated the appeal with pending appeals in the *Peaje* and *Assured Guaranty Corp.* litigations.

### <u>SUMMARY OF THE ARGUMENT</u>

Congress enacted PROMESA for a specific purpose – to provide the Commonwealth of Puerto Rico "breathing room" to reorganize its assets for stability and position itself for prosperity. The automatic stay is an integral and critical component of PROMESA, as it allows PROMESA the short time mandated by Congress to fulfill its purpose without creditor litigation and interference.

As the District Court recognized, while the stay under PROMESA is "patterned" after the Bankruptcy Code, there is not a "one-to-one" relationship between the automatic stays under PROMESA and the Bankruptcy Code as the language and intent differ in significant ways. (Add. 6, 11).

15

Owing to these substantial differences between the PROMESA automatic stay and that contained in the Bankruptcy Code, Appellants' appeal should be denied for at least four separate reason. *First*, the statute does not provide any special lack of adequate protection exception as grounds to lift the stay.

*Second*, even assuming that lack of adequate protection was a basis to lift the PROMESA stay, the Appellants *are* adequately protected – as the District Court determined based upon the undisputed factual record.

*Third*, the Appellants' Constitutional arguments must fail because they are based on speculation over what may happen if the stay is extended, and not the facts that were presented and adjudicated by the District Court.

*Fourth*, Appellants – who were the ones that rushed this proceeding to judgment – were certainly afforded adequate and timely due process in the District Court, therefore, their alternative argument that the District Court erred by cancelling a hearing after fully considering the uncontested factual record jointly submitted by the parties and applicable laws is baseless.

## STANDARD OF REVIEW

On appeal, this Court reviews a district court's "conclusions of law *de novo* and its factual findings for clear error." *In re Watman*, 458 F.3d 26, 31 (1st Cir. 2006). When a case involves, as here, a request to "grant relief from [an] automatic stay," this Court reviews a district court's decision under an abuse of

16

discretion standard. *In Re Capitol Food Corp. of Fields Corner*, 490 F.3d 21, 23 (1st Cir. 2007).

An abuse of discretion is found only when a district court or bankruptcy court "ignores 'a material factor deserving of significant weight,' relies upon 'an improper factor' or makes 'a serious mistake in weighing proper factors.'" *Howard v. Lexington Invs., Inc.*, 284 F.3d 320, 323 (1st Cir. 2002) (citing *Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir. 1988)). When a district court "weigh[s] all proper and no improper factors in dealing with [an issue before it]," no abuse of discretion can be found, even in situations where the court "impos[es] somewhat unconventional remedial measures." *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 394 (1st Cir. 1990).

## ARGUMENT

### I. THE LACK OF ADEQUATE PROTECTION IS NOT A BASIS TO LIFT THE PROMESA STAY

#### A. The Plain Language Of PROMESA Does Not Treat Lack Of Adequate Protection As A Basis For Lifting The Stay

There is no question that the PROMESA stay applies to the Appellants in this action. The relevant question, therefore, is whether the PROMESA stay may be lifted on the basis of a purported lack of adequate protection. "In a statutory construction case, the beginning point must be the language of the statute, and

when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Riva v. Commw. of Mass.*, 61 F.3d 1003, 1007 (1st Cir. 1995) (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 474-76 (1992)); *Blum v. Stenson*, 465 U.S. 886, 896 (1984) (when the "resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear"); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("[i]f the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress").

Here, section 405(e)(2) of PROMESA is conspicuously silent on the concept of "adequate protection;" a governing principle of the Bankruptcy Code's automatic stay provision. A comparison of the two statutes is instructive.

| PROMESA, Section 405(e)(2) | Section 362(d)(1) of the Bankr. Code |
|---|---|
| "On motion of or action filed by a party in interest and after notice and a hearing, the United States District Court for the District of Puerto Rico, for cause shown, shall grant relief from the stay." 48 U.S.C. § 2194(e)(2). | "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay … for cause, *including lack of adequate protection of an interest in property*." 11 U.S.C. § 362(d)(1) (emphasis added). |

While PROMESA's automatic stay provision is, as noted by the District Court, "patterned" after the Bankruptcy Code (*see* Add. 6), Congress chose obviously different words in drafting PROMESA to express a different intent. Had Congress sought to make "lack of adequate protection" a basis for lifting the PROMESA stay, it would have said so, just as it did in Section 362 of the Bankruptcy Code. *See, e.g.*, *Helmer v. Goodyear Tire & Rubber Co.*, 828 F.3d 1195, 1202 (10th Cir. 2016) (If "a legislature models an act on another statute but does not include a specific provision in the original, a strong presumption exists that the legislature **intended** to omit that provision.") (emphasis added); *Northland Cranberries, Inc. v. Ocean Spray Cranberries, Inc.*, 382 F. Supp. 2d 221, 227 (D. Mass. 2004) ("When one statute contains limiting language and a related statute does not, the court should presume that the difference was intentional."). Indeed, it

is well settled that "where words differ as they differ here, Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (internal citation omitted); *see also United States v. Azeem*, 946 F.2d 13, 17 (2d Cir. 1991) ("[C]ongressional consideration of an issue in one context, but not another, in the same or similar statutes implies that Congress intends to include that issue only where it has so indicated.").

The clear import of the language Congress chose to adopt is underscored by the legislative history. In fact, the legislative history of PROMESA shows Congress intended to adopt the very different "irreparable harm" standard for lifting the automatic stay; that legislative history makes no reference to "adequate protection." *See* H.R. Rep. No. 114-602, at *51 (2016) ("If a party is determined to be subject to irreparable damage because of the imposition of the stay, the District Court is authorized to grant relief from the stay to such a party."). By contrast, the automatic stay in the Bankruptcy Code is available for any of the enumerated reasons expressed in the Bankruptcy Code, not just irreparable harm. *See, e.g.*, *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 31 (1st Cir. 1994) (noting Congress limited "the issues decided by a bankruptcy court on a creditor's motion to lift the stay" to listed matters in Bankruptcy Code). In other words,

Congress intended the PROMESA stay to operate differently from the automatic
stay in the Bankruptcy Code.

Furthermore, when Congress sought to mimic the language of the
Bankruptcy Code it was not shy about copying statutory provisions from the
Bankruptcy Code.  *Compare* PROMESA § 405(g) (relief from PROMESA §
405(b) stay is appropriate without hearing if necessary to "prevent irreparable
damage to the interest of an entity in property, if such interest will suffer such
damage before there is an opportunity for notice and a hearing under subsection (e)
or (f)") *with* 11 U.S.C. § 362(f) (same language under Bankruptcy Code's
automatic stay).  The automatic stay provision in PROMESA, however, was not
one of those occasions where Congress sought to copy language and import
meaning from the Bankruptcy Code.  The cases cited above teach that in these
circumstances there is a "strong presumption" that the differences are intentional.
Indeed, the District Court recognized as much in finding that "the concept of
'cause' embraced by the Court for the purposes of the PROMESA stay need not
precisely mirror that adopted in the bankruptcy context."  (Add. 11).

Accordingly, while the District Court noted that adequate protection may be
one factor to be considered in assessing the "cause" standard under PROMESA,
the plain language of PROMESA does not dictate that a lack of adequate
protection – even if one was demonstrated – is a basis to lift a stay.

21

**B.     The District Court's Equitable Approach Aligns With PROMESA's Congressional Purpose**

The District Court found that in order to determine whether to lift the PROMESA stay it needed to perform a "careful balancing of the equities involved." (Add. 9).  The District Court's analytical approach considered the Congressional intent behind PROMESA in weighing the equities.  Where statutory interpretation "produce[s] a result demonstrably at odds with the intentions of its drafters . . . the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994) (despite similar language between two statutes, the interpretation was different given "the goals and objectives of the two Acts are likewise not completely similar").  Furthermore, because "all laws are imprecise to some degree, disputes inevitably arise over what specifically Congress intended to require or permit.  It is the duty of courts to interpret these laws and apply them in such a way that the congressional purpose is realized." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 828 (1986) (Brennan, J. dissenting).  The "courts are the final authorities on issues of  statutory construction and 'are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy

Case:17-03283-LTS Doc#:7702-50 Filed:06/27/19 Entered:06/27/19 14:25:13 Desc
Case:16-24322 Document:33 Page:33 Filed:12/23/2016 Entry ID: 6057624
Exhibit 49   Page 33 of 56

underlying a statute.'" *Fed. Mar. Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 745-46 (1973) (internal citation omitted).

Here, PROMESA includes specific Congressional findings that emphasize the importance of the PROMESA stay in the context of the dire financial crisis facing Puerto Rico and its nearly four million citizens.  Specifically, Congress enacted PROMESA in response to "a fiscal emergency in Puerto Rico." PROMESA § 405(m)(1).   In that legislation, Congress sought to provide "independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." *Id.* § 405(m)(4).  To that end, Congress found that "an immediate—but temporary—stay is ***essential*** to stabilize the region for the purposes of resolving this territorial crisis."  *Id.* § 405(m)(5) (emphasis added).  It therefore automatically stayed, "with respect to a Liability, . . . the commencement . . . of a judicial . . . proceeding against the Government of Puerto Rico that . . . could have been commenced before the enactment of this Act." *Id.* § 405(b)(1).

As Congress explained, "[t]he stay advances the best interests common to all stakeholders, including but not limited to a functioning independent Oversight Board created pursuant to this Act to determine whether to appear or intervene on behalf of the Government of Puerto Rico in any litigation that may have been

commenced prior to the effectiveness or upon expiration of the stay." *Id.* §
405(m)(5)(A).

Furthermore, "[t]he stay is limited in nature and narrowly tailored to achieve
the purposes of this Act, including to ensure all creditors have a fair opportunity to
consensually renegotiate terms of repayment based on accurate financial
information that is reviewed by an independent authority or, at a minimum, receive
a recovery from the Government of Puerto Rico equal to their best possible
outcome absent the provisions of this Act." *Id.* § 405(m)(5)(B). The stay provides
the Commonwealth with breathing room to "focus its resources on negotiating a
voluntary resolution with its creditors instead of defending numerous, costly
creditor lawsuits." *Id.* § 405(n)(2).

In interpreting PROMESA, therefore, a court must not ignore the purposes
supported by the statute. This is precisely the equitable analysis undertaken by the
District Court. Specifically, the District Court viewed Appellants' claims within
the Congressional goals sought to be achieved by PROMESA, addressed the
automatic stay, and focused on its limited duration. (Add. 3-4). Next, the District
Court discussed PROMESA's statutory requirement that the automatic stay may be
lifted "for cause" (*id.* at 5) and then defined cause through (a) interpretations
provided for under the Bankruptcy Code upon which PROMESA was "patterned"
and, critically, (b) the "specific Congressional findings and the enumerated

24

purposes of PROMESA's automatic stay." (*Id.* at 6, 11). It was within this framework that the District Court correctly found that the Appellants had not demonstrated "cause" to lift the PROMESA stay.

Appellants, however, cast off the equitable analysis that gives weight to the special circumstances of PROMESA by, first, ignoring entirely that PROMESA lacks reference to "adequate protection" as a basis for lifting the stay, and then overlooking the unique context of PROMESA, including the specific Congressional findings discussed above. Instead, Appellants disingenuously contend that the result in the District Court is "not what Congress intended," conspicuously ignoring the clear and unequivocal intent of Congress. (*See* Brief for Movants-Appellants ("App. Br.") at 3).

## II. THE APPELLANTS' ARGUMENT THAT THEY LACK ADEQUATE PROTECTION IS ILLUSORY

### A. The Appellants Have Adequate Protection

Assuming *arguendo* that the concept of adequate protection has applicability to a PROMESA stay analysis, the Appellants' principal arguments either lack factual support from the undisputed record or are grounded in pure speculation – neither of which warrants disturbing the District Court's ruling. *First*, as the Appellants acknowledged before the District Court, the Reserve Accounts, by the Appellants' own admission, have more than adequate funds to make payments on the ERS Bonds until well after the expiration of the two stays that are in place.

25

(*See* JA 49 ("Employer contributions from non-Commonwealth entities are sufficient to cover debt service on ERS Bonds.")).  *Second*, under the clear terms of the Bond Resolution, the Appellants have valid and enforceable liens over hundreds of millions of dollars of ERS revenue, which will continue to grow.  (*See* JA 92 § 501).  Thus, the entire factual underpinning of the Appellants' claims is faulty.

### 1.  The Fiscal Agent Has Sufficient Funds For The Duration Of The PROMESA Stay

On appeal the Appellants concede, as they must (and as they did below), that there are sufficient funds on reserve with the Fiscal Agent to allow for payment on the ERS Bonds through the PROMESA stay.  (*See* App. Br. at 10).  In other words, the Appellants are adequately protected by the Reserve Accounts held for their benefit by the Fiscal Agent *during the entirety of the PROMESA stay*.  Nowhere do the Appellants claim, nor could they, that there has been a default under the ERS Bonds or that ERS has failed to fulfill its financial and other obligations to the ERS Bondholders.

As set forth in the parties' Stipulated Facts, moreover, the Reserve Accounts contained more than $99 million when the District Court denied lifting the stay, and the total monthly debt service payment due to the ERS Bondholders is $13.9 million.  (JA 242 ¶ 17).  Therefore, there is sufficient cash in the Reserve Accounts

for the Fiscal Agent to cover *all* debt service payments through and including April
1, 2017 – and Appellants do not contest this fact.

Instead, the Appellants contend that *if* certain contingencies materialize then
there is a *chance* that there will not be sufficient funds. (*See* App. Br. at 41). As a
threshold matter, this Court may only address present injuries and not Appellants'
belief as to future events. *See, e.g. Whitmore v. Arkansas*, 495 U.S. 149, 158
(1990) ("allegations of possible future injury do not satisfy the requirements of Art.
III. A threatened injury must be 'certainly impending' to constitute injury in
fact."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992) (finding an
indefinite future injury unlikely to constitute an "injury in fact"); *Texas v. United
States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests
upon contingent future events that may not occur as anticipated, or indeed may not
occur at all" (internal citation omitted)); *Adams v. Watson*, 10 F.3d 915, 920-21
(1st Cir. 1993) ("although at the pleading stage 'injury-in-fact' need not entail
currently *realized* economic loss, Article III standing in the commercial context
must be premised, at a minimum, on particularized future economic injury which,
though latent, nonetheless qualifies as 'imminent'" (emphasis in original)); *Kerin
v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014) (Injury in fact requirements are
to "ensure that the alleged injury is not too speculative").

Nonetheless, Appellants' contention that if the stay is extended 75 days (which can only occur through Oversight Board action (App. Br. at 41)), than debt service will not be available for May 2017. (*Id.*). To accept this argument one must assume that (i) the Oversight Board seeks an extension of time; (ii) for the maximum 75 days available under PROMESA; while (iii) the Oversight Board fully understands that such an extension may impinge on ERS's ability to make debt payments and, therefore, (iv) would create instability in direct contravention of the expressed purpose of PROMESA. Not one of these contingencies has arisen.

Moreover, Appellants ignore that the Oversight Board is well aware of Appellants' position, has sought to intervene in this litigation, and has found that Appellants' contentions are "overstated." As discussed below, the Oversight Board has asserted that "the perpetual revenue streams that secure [Appellants'] claims would still be available for future payments under yet-to-be negotiated fiscal plans or in future proceedings under PROMESA." (*See* JA 36 at ECF No. 56).

Finally, the District Court's order does not preclude Appellants from commencing a subsequent action if any of the speculative harm they envision occurring comes to fruition. The District Court's order merely concludes that they failed to show cause at this stage of the proceedings sufficient to flout the intent of

Congress. (*See* Add. 18). Moreover, the District Court makes it clear that its order essentially grants only "breathing room" to fulfill PROMESA's objective of engaging in "meaningful, voluntary negotiations," and nothing more. (*See* Add. 19).

### 2. The Appellants Maintain A Security Interest In The ERS Bonds

Equally ignored by the Appellants, is that in addition to there being more than adequate funding to satisfy payments to ERS Bondholders throughout the stay, the security interests held by the ERS Bondholders provide them with future protection more than sufficient to address any concern, real or imagined. The Commonwealth granted the ERS Bondholders a first lien in and over "Pledged Property" – consisting of, among other assets, ***all*** revenues of the ERS – pending the discharge and satisfaction of all outstanding principal and interest. (*See* JA 92 § 501; JA 120). As noted, the ERS received approximately $418 million in employer contributions in the year ending June 30, 2015, with these amounts scheduled to increase by 1.25% per year beginning on July 1, 2016. (JA 244 ¶ 20). In addition, ERS is currently receiving employer contributions from non-Commonwealth employers of, on average, $18.8 million per month during the PROMESA stay and the Commonwealth's moratorium – a fact that Appellants concede on appeal. (S*ee* App. Br. at 14 ("ERS continues to receive employer contributions from non-Commonwealth Employers."); *see also* JA 246 ¶ 20). The

ERS Bondholders have a security interest in those revenues also, subject only to the satisfaction of the ERS's outstanding debt obligations.[3]

The PROMESA stay will expire on February 15, 2017, with the ERS emergency period under the Moratorium Act expiring at the latest, six weeks after, on March 31, 2017.  At that time, the ERS Bondholders will have access to the full revenue stream of the ERS.

In other words, given its size and indefinite duration, the security interest provides Appellants with the adequate protection they purport is required to ensure payment on their ERS Bonds.  *See, e.g.*, *In re SW Boston Hotel Venture LLC*, 449 B.R. 156, 176 (Bankr. D. Mass. 2011) ("If collateral securing a claim has value greater than the interest of the secured claim holder, the excess value, referred to as an equity cushion, constitutes adequate protection for the secured party's interest."); *see also In re Jug End in the Berkshires, Inc.*, 46 B.R. 892, 899 (Bankr. D. Mass. 1985) ("It has been held that an equity cushion, standing alone, can

---

[3] Appellants contend that ERS's statements warning of its financial condition somehow contradicts the Stipulated Facts concerning the financial wherewithal of ERS and future employer contributions.  (App. Br. at 19 (citing JA 232-33)). Appellants' argument, however, is based on a 2014 disclosure describing the financial condition of ERS in light of the overall fiscal conditions in Puerto Rico. In other words, the conditions described in the 2014 disclosure were some of the very reasons that led to the PROMESA stay to allow for a reorganization process in Puerto Rico.  It is entirely disingenuous for Appellants to cite this disclosure about conditions in 2014 as a basis for arguing that obligations will not be met when Congress has taken steps to address the very problems identified in the 2014 disclosure through PROMESA.

provide adequate protection"). Indeed, courts have made clear that "[a]n oversecured creditor is not entitled to be compensated for an erosion in an equity cushion." *In re SW Boston Hotel Venture LLC*, 449 B.R. at 176; *see also, e.g. In re Dynaco Corp.*, 162 B.R. 389, 398 (Bankr. D.N.H. 1993) ("if on an overall basis the secured creditor is oversecured and protected by a clear equity cushion," no additional protection is required); *In re Lane*, 108 B.R. 6, 8 (Bankr. D. Mass. 1989) (concluding there is no lack of adequate protection when the equity cushion above the amount of the secured creditor's interest "is eroding through either a decline in collateral value or an increase in the claim due to the accrual of interest or expenses").

## B.    The Appellants' Contrary Position Is Not Tenable

Appellants argue that their property interests are not adequately protected by future employer contributions because "those revenues do not provide adequate protection for the use of property today." (App. Br. at 37). They then cite to a myriad of bankruptcy cases to support the proposition that a debtor may not use a lender's cash collateral when the proposed adequate protection takes the form of future, uncertain revenue. ERS takes no issue with these well-established propositions. They are, however, wholly inapposite with the issues before the District Court and here on appeal.

Indeed, Appellants highlight the stark contrast between the cases relied upon and the present facts at issue.  First, Appellants cite *In re Putnal*, 483 B.R. 799, 801 (Bankr. M.D. Ga. 2012), highlighting that there "[t]he debtor sought to use the rents from the property to pay expenses."  (App. Br. at 34-35).  Next, they cite to *In re Stearns Building*, 165 F.3d 28 (6th Cir. 1998), involving "a debtor's request to use rents to pay administrative expenses," noting that the case is "illustrative" of Appellants' key arguments.  (App. Br. at 35).  Further, Appellants rely on *In re Buttermilk Towne Center, LLC*, 442 B.R. 558 (B.A.P. 6th Cir. 2010), a case in which "the debtor sought to use a secured creditor's cash collateral to pay professional fees."  (App. Br. at 36).  Finally, in a string of citations, Appellants seek to draw parallels between the present case and cases involving various debtors' requests to use lenders' cash collateral.  (*Id*. at 36-37).

Here, however, Appellees have not sought to use *any* of Appellants' cash collateral, and contrary to Appellants' repeated assertions, there is simply no evidence of "dissipation of the employer contributions" or "diverting" employer contributions from the Appellants.  (*Id.* at  2, 4, 14, 22, 38 and 41).

Unlike the cases relied upon by Appellants, in which debtors sought Court permission to utilize prepetition lenders' cash collateral for other purposes, here, the employer contributions are not being used for the payment of any outstanding debts.  On the contrary, and as acknowledged by Appellants themselves, Appellees

have expressly represented that these funds are being *held*, not expended, until the expiration of PROMESA's automatic stay. (*Id.* at 20). Because Appellants' collateral has not diminished and Appellees have never sought relief to use such collateral, adequate protection is unnecessary under these circumstances, and, if necessary, sufficiently provided.

What is more, the automatic stay under PROMESA is not comparable to that imposed under typical Chapter 11 circumstances. A stay under section 362 of the Bankruptcy Code typically "continues until such property [subject to the stay] is no longer property of the estate," or until a case is closed or dismissed. 11 U.S.C. § 362(c). On the other hand, under PROMSESA, the stay imposes a limited, temporary restraint with a finite deadline, statutorily set to expire on February 15, 2017.

As the District Court noted, Appellants have not sustained and will not sustain any harm prior to the stay's expiration, given that certain debt service and reserve accounts are sufficiently capitalized to service the debt until April 1, 2017. (Add. 18 n.1). Thus, the facts and circumstances of this case are such that any parallels to cases involving ordinary cash collateral disputes are improperly drawn; those cases and this are apples and bananas. This is not a case of a debtor seeking to use, and thereby diminish, the value of a lender's collateral during the potentially lengthy chapter 11 process. Here, Appellants' allegations

33

notwithstanding, there is simply no "diversion" of funds, but instead a suspension of transfers until PROMESA's automatic stay statutorily expires in less than two months' time. Appellants are not entitled to, nor do they require, adequate protection, as no attack is being made against their collateral. To the extent adequate protection is required, Appellants are more than protected by Appellees' holding of employer contributions, coupled with Appellants' indefinite, enduring stream of Appellees' pledged property once the stay is soon lifted.

## III. THE DISTRICT COURT PROVIDED ADEQUATE DUE PROCESS TO BONDHOLDERS

### A. PROMESA Requires Timely Due Process

PROMESA Section 405(e)(2) states that "[o]n motion of or action filed by a party in interest and after notice and a hearing, the United States District Court for the District of Puerto Rico, for cause shown, shall grant relief from the stay provided under subsection (b) of this section." The phrase "after notice and hearing" is not defined in PROMESA, and there is no binding authority for the interpretation of this provision under PROMESA owing to the statute's recent enactment. Under the Bankruptcy Code, however, after which PROMESA was "patterned" (Add. 6), the same "after notice and a hearing" language appears and is defined. Under this definition, an evidentiary hearing is not required at all times. Specifically, "after notice and a hearing" is defined in section 102(1) of the Bankruptcy Code as "after such notice as is appropriate in the particular

circumstances, and such opportunity for a hearing *as is appropriate in the particular circumstances*." 11 U.S.C. § 102(1)(a)(A). The definition also identifies instances where a "hearing" is not appropriate when notice is proper. *Id.* at (1)(B).[4]

Accordingly, courts in the First Circuit and elsewhere recognize that hearings are not always required in comparable proceedings under the Bankruptcy Code that call for action "after notice and a hearing." *See In re Sullivan Ford Sales*, 2 B.R. 350, 354 (Bankr. D. Me. 1980) ("There was complete awareness on the part of the principal congressional architect of the [Bankruptcy] Code that 'after notice and a hearing' did not contemplate a hearing in every instance. Indeed, that result was fully intended."); *In re Hotel Coamo Springs*, No. 12 Civ. 01696 (JAF), 2013 WL 2147687, at *4 (D.P.R. May 16, 2013) ("flexible rule of construction" in 11 U.S.C. § 102 permits decision without hearing in certain instances); *see also In re London, Inc.*, 70 B.R. 63, 65 (Bankr. E.D. Wis. 1987) ("Although this section of the Bankruptcy Code recognizes that there are some instances when it may be necessary to dispense with an evidentiary hearing, the necessity of doing so is dependent upon the facts and circumstances in a particular case.").

---

[4] The Bankruptcy Code provides that a hearing is not necessary where notice is provided and either "(i) such a hearing is not requested timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act." 11 U.S.C. § 102(1)(B).

The inclusion of the "after notice and a hearing" language in section 362(e) of the Bankruptcy Code, therefore, appears to protect creditors by setting a time limit "within which the bankruptcy court must rule on the adequacy of protection provided for the secured creditor's interest." *In re Looney*, 823 F.2d 788, 792 (4th Cir. 1987). Such protections were put in place because Bankruptcy Code § 102 "is founded in fundamental notions of procedural due process" and it is essential that each party be given notice and an opportunity to be heard on the issues. *In re Savage Indus., Inc.*, 43 F.3d 714, 721 (1st Cir. 1994). In other words, the purpose of the hearing requirement under the Bankruptcy Code is to "preclude bankruptcy courts from neglecting or unreasonably delaying review of requests for relief from the automatic stay to the detriment of the secured creditor." *In re Wedgewood Realty Grp., Ltd.*, 878 F.2d 693, 700 (3d Cir. 1989); *see also* 2 Collier on Bankruptcy § 362.08 (15th ed. 1989) (the purpose of § 362(e) is to avert delaying the final ruling on a party's motion to lift the automatic stay).

Therefore, a court may continue a stay without holding a hearing so long as the evidence has been reviewed by the court in a timely fashion. *See In re Forseen, Inc.*, 81 B.R. 903, 905 (N.D. Ill. 1987) (noting "a bankruptcy court should at least review the evidence (either at a live hearing *or by reviewing the documents on file*) before it continues the stay." (emphasis added)). Needless to say, the District Court carefully reviewed all of the legal precepts and the well-developed

factual record that had been fully agreed to by the parties before rendering its decision.  The applicable law requires no more.

### B.    The District Court Provided Appellants Due Process

There can be no question that the Appellants were afforded sufficient due process and that their motion was timely heard.  For one, the District Court agreed to the Appellants' demand to consolidate its motion with two other pending litigations on October 14, 2016, shortly after Appellees were served, and a day after the Appellants applied to consolidate their action a mere three weeks before the hearing, which, placed ERS at a significant disadvantage.

Most critically, in issuing its opinion the District Court had before it the parties' stipulations as to the facts in the case.  (*See* JA 237).  The Stipulated Facts include agreed-upon facts as to ERS, the ERS bonds, the Moratorium Act, PROMESA, the manner in which the ERS bonds are paid, and other topics.  Given that the facts were stipulated to it is not clear what purpose the hearing would have served, as the purpose of the hearing was to ascertain facts.  The District Court also provided the Appellants additional opportunities to present their case in permitting the Appellants to file an additional reply brief in further support of their argument, even though that is not required by PROMESA.

Appellants' suggestion that there was some error because "adequate protection is a question of fact" is entirely irrelevant.  (*See* App. Br. at 43-44).  The

37

District Court had facts before it when it made its ruling; the very facts that the Appellants so stipulated. Nowhere in their brief, moreover, do the Appellants contend that they were precluded from submitting any facts for the District Court's consideration, or that the facts they themselves stipulated to were inadequate. (*Id.*). Rather, Appellants focus on what *arguments* they would have and could have made at the hearing in response to other arguments made in the parties' submissions. (*Id.* at 44).

In other words, the Appellants had a full opportunity to be heard, and their motion was timely adjudicated. Therefore, the purposes of the "after notice and a hearing" direction that appears in PROMESA were fully realized.

### C. The Appellants' Speculation As To Their Expert Does Not Suggest That The District Court's Decision Offends Due Process

Stripped of all bluster, the Appellants' contention is that they were not afforded an opportunity to present the testimony of their expert, Dr. Bradford Cornell. (App. Br. at 21-22, 44). In other words, Appellants argue that had Dr. Cornell testified the District Court would have ruled in their favor. This wild speculation is inappropriate in several respects. For one, Dr. Cornell's testimony was far from certain. Rule 26 of the Federal Rules of Civil Procedure provides that the disclosure of an expert witness "must be accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B); *see Pena-Crespo v. Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005) ("Rule 26 requires the disclosure of a witness 'who is retained or

specially employed to provide expert testimony in the case . . . be accompanied by a written report and signed by the witness'" (quoting Fed. R. Civ. P. 26(a)(2)(B))); *Cruz v. Bristol Myers Squibb Co. PR, Inc.*, 777 F. Supp. 2d 321, 327 (D.P.R. 2011) (Besosa, J.) Rule 26 disclosures are "consonant with the federal courts' desire to 'make a trial less a game of blindman's buff [sic] and more a fair contest with the basic issues and facts disclosed to the fullest practical extent.'" *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)).

Here, Appellants did not provide a written report but a one-page list of Dr. Cornell's "principal opinions," which was then copied and pasted into their brief to this Court without any citation to the record (*see* App. Br. at 21-22). Appellants never provided an expert report from Dr. Cornell that might include, for example, disclosure of the facts that he allegedly relied upon in forming his opinions, the methodology employed in his analysis (if any), or any of the necessary materials for a court to determine an expert competent to testify under Rule 702 of the Federal Rules of Evidence. Nor did Appellants provide a complete set of his demonstrative exhibits until just hours before the hearing. Appellees also were never afforded an opportunity to depose Dr. Cornell to challenge his assertions, learn how he arrived at his "principal opinions," or whether he would be offering additional opinions at the hearing. Given the inadequate disclosures made to the

parties in the District Court, it is entirely baseless for the Appellants to now
speculate that Dr. Cornell would have provided testimony that would have turned
the hearing in their favor when it is just as likely, if not more so, that Dr. Cornell's
testimony would have been excluded entirely.

Furthermore, the preclusion of Dr. Cornell's testimony at the hearing is a
strawman argument for the additional and straightforward reason that he is not a
fact witness and would, therefore, not provide any additional facts concerning the
dispute. *See, e.g., Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 20-21
(1st Cir. 1994) (citation omitted) (expert witness testimony is an opinion based "on
facts or data perceived or made known to the expert before or at trial" including
facts that are tentative or speculative); *Lakeland Enters. of Rhinelander, Inc. v.
Chao*, 402 F.3d 739, 746 (7th Cir. 2005) (no error was found when expert
witness's testimony was excluded because his answers would have been
cumulative to the facts presented by other witnesses); *cf. Gomez v. Rivera
Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003) (concluding that a witness was a fact
witness and not an expert witness because, unlike an expert, he had additional
discoverable facts to present based on "personal knowledge acquired before any
litigation had begun"). For these reasons, there was no error in cancelling the
hearing.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the judgment of the District Court and grant such further relief as may be just.

Dated: December 23, 2016.

Respectfully Submitted,

/s/ Richard Chesley
Richard Chesley
DLA Piper LLP (US)
203 N. LaSalle St., Suite 1900
Chicago, IL 60601
P: 312.368.4000
F: 312.236.7516

John M. Hillebrecht
Neal F. Kronley, *of counsel*
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
P: 212.335.4500;
F: 212.335.4501

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 9,369 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Dated:  December 23, 2016.

<div style="margin-left:40%">

/s/ Richard Chesley
Richard Chesley
DLA Piper LLP (US)
203 N. LaSalle St., Suite 1900
Chicago, IL 60601
P:  312.368.4000
F:  312.236.7516

</div>

**CERTIFICATE OF SERVICE & CM/ECF FILING**

**16-2433**

I hereby certify that I caused the foregoing Brief for Respondent-Appellees The Employees Retirement System of the Commonwealth of Puerto Rico via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with a Notice of Docket Activity pursuant to Local Appellate Rule 25.1.

Attorneys for the Respondents-Appellees (16-2377, 16-2430, 16-2433),
Defendant-Appellee (16-2431):

Alejandro J. Garcia-Padilla;
Commonwealth of Puerto Rico;
Juan C. Zaragoza-Gomez;
Luis G. Cruz-Batista

Peter A. Farrell
Susan Marie Davies
Michael Francis Williams
Kirkland & Ellis LLP
655 15th Street NW, Suite 1200
Washington, DC 20005
Tel: (202) 879-5000

Salvador Antonetti-Zequeira
Jose Luis Ramirez-Coll
Antonetti Montalvo & Ramirez-Coll
P.O. Box 13128
San Juan, Puerto Rico 00908
Tel: (787) 977-0320

Margarita L. Mercado-Echegaray, Esq.
Puerto Rico Department of Justice
Federal Litigation Division
P.O. Box 9020192
San Juan, Puerto Rico 00902
Tel: (787)-724-2165

Attorneys for Respondents-Appellees (16-2377, 16-2430, 16-2435),
Defendant-Appellee (16-2431):

Carmen Villar-Prados;
Puerto Rico Highway and Transportation
Authority

Julio Cesar Alejandro-Serrano
90 Ave. Rio Hondo PMB 130
Bayamon, Puerto Rico 00961
Tel: (787) 647-6632

Yassmin Gonzalez Velez
PPMB 131, La Cumbre
273 Sierra Morena
San Juan, Puerto Rico 00926

<u>Attorneys for Movant-Appellant (16-2377, 16-2430)</u>:

Peaje Investments LLC

G. Eric Brunstad, Jr.
John D. Biancamano
Allan S. Brillian
Andrew C. Harmeyer
Robert J. Jossen
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
Tel: (212) 398-3500

Dora L. Monserrate
Monserrate Simonet & Gierbolini LLC
101 San Patricio Avenue, Suite 1120
Guaynabo, Puerto Rico 00968
Tel: (787) 764-8960

<u>Attorneys for Plaintiffs-Appellees (16-2431)</u>:

Assured Guaranty Corporation;
Assured Guaranty Municipal Corporation

Ellen M. Halstead
Mark C. Ellenberg
Howard Robert Hawkins, Jr.
Cadwalader Wickersham & Taft LLP
200 Liberty Street
New York, New York 10281
Tel: (212) 504-6000

Heriberto J. Burgos-Perez
Ricardo F. Casellas-Sanchez
Diana Perez-Seda
Casellas Alcover & Burgos PSC
PO Box 364924
San Juan, Puerto Rico 00936
Tel: (787) 756-1400

<u>Attorney for Defendant-Appellee (16-2431)</u>:

Government Development Bank of Puerto
Rico;
Melba Acosta-Febo

Giselle Lopez Soler
Law Office of Giselle Lopez Soler
PMB 257
Road 19 1353
Guaynabo, Puerto Rico 00966

Attorneys for Movants-Appellants (16-2433), Movants-Appellees (16-3435):

Puerto Rico Fixed Income Fund V, Inc.;
Puerto Rico AAA Portfolio Bond Fund, Inc.;
Puerto Rico AAA Portfolio Target Maturity
Fund, Inc.;
Puerto Rico AAA Portfolio Bond Fund II, Inc.;
Puerto Rico Fixed Income Fund, Inc.;
Puerto Rico Fixed Income Fund II, Inc.;
Puerto Rico Fixed Income Fund III, Inc.;
Puerto Rico Fixed Income Fund IV, Inc.;
Puerto Rico GNMA and U.S. Government
Target Maturity Fund, Inc.;
Puerto Rico Investors Bond Fund I, Inc.;
Puerto Rico Investors Tax-Free Fund, Inc.;
Puerto Rico Investors Tax-Free Fund II, Inc.;
Puerto Rico Investors Tax-Free Fund III, Inc.;
Puerto Rico Investors Tax-Free Fund IV, Inc.;
Puerto Rico Investors Tax-Free Fund V, Inc.;
Puerto Rico Investors Tax-Free Fund VI, Inc.;
Puerto Rico Mortgage-Backed & U.S.
Government Securities Fund, Inc.;
Tax-Free Puerto Rico Fund, Inc.;
Tax-Free Puerto Rico Fund II, Inc.;
Tax-Free Puerto Rico Target Maturity Fund,
Inc.;
UBS IRA Select Growth & Income Puerto Rico
Fund

John K. Cunningham
Glenn Kurtz
Jason Zakia
White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Tel: (212) 819-8200

Arturo Diaz-Anguiera
Jose Carlos Sanchez-Castro
Alicia Irene Lavergne-Ramirez
Maraliz Vazquez-Marrero
Lopez Sanchez & Pirillo LLP
270 Munoz Rivera Avenue, Suite 504
San Juan, Puerto Rico 00918
Tel: (787) 522-6776

MICHAEL LUSKIN
STEPHAN E. HORNUNG
LUSKIN, STERN & EISLER LLP
11 Times Square
New York, New York 10036
(212) 597-8200

*Attorneys for Movant-Appellant
Financial Oversight and
Management Board*

Attorneys for Movants-Appellants (16-2433), Movants-Appellees (16-3435):

Altair Global Credit Opportunities Fund (A),
LLC;
Claren Road Credit Master Fund, Ltd.;
Claren Road Credit Opportunities Master Fund,
Ltd.;
Glendon Opportunities Fund, LP;
Nokota Capital Master Fund, L.P.;
Oaktree-Forrest Multi-Strategy, L.L.C. (Series
B);
Oaktree Opportunities Fund IX, L.P.;
Oaktree Opportunities Fund IX (Parallel 2),
L.P.;
Oaktree Value Opportunities Fund, L.P.;
Ocher Rose, L.L.C.; SV Credit, L.P.

Bruce Bennett
Benjamin Rosenblum
Beth Heifetz
Geoffrey S. Stewart
Sparkle Sooknanan
Jones Day
555 S. Flower Street, 50th Floor
Los Angeles, California 90071
Tel: (213) 243-2382

Alfredo Fernandez-Martinez
Delgado & Fernandez LLP
Fernandez Juncos Station
PO Box 11750
San Juan, Puerto Rico 00910
Tel: (787) 274-1414

        I certify that an electronic copy was uploaded to the Court's electronic
filing system.   Upon court approval, nine copies of the foregoing Brief for
Respondent-Appellees The Employees Retirement System of the Commonwealth
of Puerto Rico were sent to the Clerk's Office by Federal Express Next Business
Day Delivery to:

Clerk of Court
United States Court of Appeals, First Circuit
1 Courthouse Way, Suite 2500
Boston, Massachusetts 02210
(617) 748-9057

on this 23rd day of December 2016.

/s/ Richard Chesley
Richard Chesley
DLA Piper LLP (US)
203 N. LaSalle St., Suite 1900
Chicago, IL 60601
P: 312.368.4000