# EXHIBIT 51

# United States Court of Appeals

*for the*

# First Circuit

Case No. 16-2377

PEAJE INVESTMENTS LLC,

*Movant-Appellant,*

– against –

ALEJANDRO GARCIA-PADILLA; JUAN C. ZARAGOZA-GOMEZ; LUIS G. CRUZ-BATISTA; CARMEN VILLAR-PRADOS; PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,

*Respondents-Appellees.*

*(For Continuation of Caption See Inside Cover)*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

## BRIEF OF AMICUS CURIAE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO IN SUPPORT OF RESPONDENTS-APPELLEES URGING AFFIRMANCE OF THE DISTRICT COURT ORDER

MICHAEL LUSKIN
STEPHAN E. HORNUNG
LUSKIN, STERN & EISLER LLP
11 Times Square
New York, New York 10036
(212) 597-8200

*Attorneys for Amicus Curiae
Financial Oversight and
Management Board*

Case No. 16-2430

PEAJE INVESTMENTS LLC,

*Movant-Appellee,*

– against –

ALEJANDRO GARCIA-PADILLA; JUAN C. ZARAGOZA-GOMEZ; LUIS G. CRUZ-BATISTA; CARMEN VILLAR-PRADOS; PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY,

*Respondents-Appellees,*

—————————————

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

*Movant-Appellant.*

Case No. 16-2431

ASSURED GUARANTY CORPORATION; ASSURED GUARANTY MUNICIPAL CORPORATION,

*Plaintiffs-Appellees,*

– against –

COMMONWEALTH OF PUERTO RICO; PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; GOVERNMENT DEVELOPMENT BANK OF PUERTO RICO; HON. ALEJANDRO GARCIA PADILLA; CARMEN VILLAR-PRADOS; MELBA ACOSTA-FEBO; JUAN C. ZARAGOZA-GOMEZ; 1-4 DOES,

*Defendants-Appellees,*

—————————————

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

*Movant-Appellant.*

---
Case No. 16-2433
---

ALTAIR GLOBAL CREDIT OPPORTUNITIES FUND (A), LLC, *et al.*,

*Movants-Appellants,*

CLAREN ROAD CREDIT MASTER FUND, LTD., *et al.*,

*Movants,*

– against –

ALEJANDRO GARCÍA-PADILLA, in his official capacity as the Governor of Puerto Rico; JUAN C. ZARAGOZA-GÓMEZ, in his official capacity as the Secretary of Treasury of Puerto Rico; LUIS F. CRUZ-BATISTA, in his official capacity as the Director of the Commonwealth's Office of Management and Budget; THE EMPLOYEES RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO,

*Respondents-Appellees.*

---
Case No. 16-2435
---

ALTAIR GLOBAL CREDIT OPPORTUNITIES FUND (A), LLC, *et al.*,

*Movants-Appellees,*

– against –

ALEJANDRO GARCÍA-PADILLA, in his official capacity as the Governor of Puerto Rico; JUAN C. ZARAGOZA-GÓMEZ, in his official capacity as the Secretary of Treasury of Puerto Rico; LUIS F. CRUZ-BATISTA, in his official capacity as the Director of the Commonwealth's Office of Management and Budget; THE EMPLOYEES RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO,

*Respondents-Appellees,*

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

*Movant-Appellant.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, the Financial
Oversight and Management Board for Puerto Rico (the "Oversight Board") states
that it is an instrumentality of the Government of Puerto Rico created under
Section 101 of the Puerto Rico Oversight, Management, and Economic Stability
Act, Pub. L. No. 114-187 ("PROMESA"), 48 U.S.C. § 2121.  On August 31, 2016,
the President of the United States appointed seven members to serve on the
Oversight Board:  José B. Carrión III, Andrew G. Biggs, José R. González, Ana J.
Matosantos, Carlos M. García, Arthur J. González, and David A. Skeel, Jr.
Governor-elect Ricardo Rosselló Nevares recently named Elías Sánchez to serve
on the Oversight Board *ex officio* (replacing Richard Ravitch) pursuant to Section
101(e)(3) of PROMESA, 48 U.S.C. § 2121(e)(3).

# **TABLE OF CONTENTS**

**Page**

INTEREST AND IDENTITY OF *AMICUS CURIAE* ...............................................2

ARGUMENT ..................................................................................................6

I.    THE STAY IS ESSENTIAL TO THE OVERSIGHT BOARD'S WORK
      AND TO THE PROMESA PROCESS ...........................................................8

II.   THE APPELLANTS' MOTIONS TO LIFT THE PROMESA STAY
      "FOR CAUSE" WERE PROPERLY DENIED ..........................................13

      A.    The Court Should Apply a Balancing Test to Assess "Cause"...........13

      B.    Even if Adequate Protection Is Required, the Court Properly
            Found That the Appellants Are Adequately Protected .......................21

CONCLUSION...........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baybank-Middlesex v. Ralar Distribs., Inc.*,
  69 F.3d 1200 (1st Cir. 1995)...............................................................................24

*Helmer v. Goodyear Tire & Rubber Co.*,
  828 F.3d 1195 (10th Cir. 2016) ..........................................................................15

*In re SW Boston Hotel Venture LLC*,
  449 B.R. 156 (Bankr. D. Mass. 2011) ........................................................... 23, 24

*Lend Lease v. Briggs Transp. Co. (In re Briggs Transp. Co.)*,
  780 F.2d 1339 (8th Cir. 1985) ...................................................................... 21, 22

*Russello v. United States*,
  464 U.S. 16 (1983)..............................................................................................15

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
  907 F.2d 1280 (2d. Cir. 1990) ...................................................................... 13, 14

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
  535 U.S. 302 (2002) ...........................................................................................19

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
  484 U.S. 365 (1988)............................................................................................22

Statutes

11 U.S.C. § 362........................................................................................ 14, 15, 17

11 U.S.C. § 362(a) ..........................................................................................2, 14

11 U.S.C. § 362(d) ..............................................................................................15

11 U.S.C. § 362(f) ......................................................................................... 15, 16

48 U.S.C. § 2121(a) ............................................................................................10

48 U.S.C. § 2121(e)(3).........................................................................................3

48 U.S.C. § 2141..................................................................................................2

48 U.S.C. § 2142..................................................................................................2

48 U.S.C. § 2143 ..................................................................................................2

48 U.S.C. § 2144 ..................................................................................................2

48 U.S.C. § 2147 ..................................................................................................2

48 U.S.C. § 2151 ..................................................................................................2

48 U.S.C. § 2152 ..................................................................................................3

48 U.S.C. § 2161 ..................................................................................................2

48 U.S.C. § 2161(a) .......................................................................................15, 17

48 U.S.C. § 2177 ..................................................................................................2

48 U.S.C. § 2194 ..............................................................................................2, 14

48 U.S.C. § 2194(b) .............................................................................................1

48 U.S.C. § 2194(d)(1)(B) ...............................................................................9, 16

48 U.S.C. § 2194(d)(1)(C) ...................................................................................9

48 U.S.C. § 2194(g) .............................................................................................15

48 U.S.C. § 2194(k) .............................................................................................23

48 U.S.C. § 2194(m)(4) .......................................................................................12

48 U.S.C. § 2194(m)(5) .......................................................................................8

48 U.S.C. § 2194(n)(2) .........................................................................................8

48 U.S.C. § 2195 ..................................................................................................20

48 U.S.C. § 2195(a) .............................................................................................24

48 U.S.C. § 2195(b) .............................................................................................24

48 U.S.C. § 2231 ..................................................................................................2

48 U.S.C. § 2231(m)(1)(D) ...................................................................................9

48 U.S.C. § 2232 ..................................................................................................2

Puerto Rico Emergency Moratorium and Financial Rehabilitation Act,
   Act No. 21-2016, § 103(l) ...............................................................................23

Puerto Rico Emergency Moratorium and Financial Rehabilitation Act,
   Act No. 21-2016, § 103(m) ..............................................................................23

Puerto Rico Emergency Moratorium and Financial Rehabilitation Act,
    Act No. 21-2016, § 201(a) ...................................................................................23

Puerto Rico Emergency Moratorium and Financial Rehabilitation Act,
    Act No. 21-2016, § 204(a) ...................................................................................23

**Other Authorities**

H.R. REP. NO. 114-602 (2016) ...................................................................................8

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") submits this *amicus curiae* brief in opposition to the Brief of Movant-Appellant Peaje Investments LLC ("Peaje") in the *Peaje* appeal and the Brief of Movants-Appellants Altair Global Credit Opportunities Fund (A), LLC, *et al.* (the "Altair Movants" and together with Peaje, the "Appellants") in the *Altair* appeal.[1]  The Oversight Board's brief is in support of the Respondents-Appellees in both appeals.[2]  The Oversight Board urges the Court to affirm the November 2, 2016, Memorandum and Order of the United States District Court for the District of Puerto Rico (Besosa, J.) denying Movants-Appellants' motions for relief from the stay imposed by Section 405(b) of the Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, ("PROMESA"), 48 U.S.C. § 2194(b).

---

[1] All parties have consented to the filing of this brief.  No party's counsel has authored this brief in whole or in part.  No party or party's counsel has contributed money that was intended to fund the preparation or submission of this brief.  No person – other than *amicus curiae*, its members, or its counsel – has contributed money that was intended to fund the preparation or submission of this brief.

[2] The Respondents-Appellees in *Peaje* are Alejandro García Padilla, Juan Zargoza-Gómez, Luis G. Cruz Batista, and Carmen Villar-Prados acting in their official capacities, and the Puerto Rico Highways and Transportation Authority.  The Respondents-Appellees in *Altair* are Alejandro García Padilla, Juan Zargoza-Gómez, and Luis Cruz Batista acting in their official capacities, and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico.  Respondents-Appellees in both appeals are collectively referred to as the "Commonwealth."

## INTEREST AND IDENTITY OF *AMICUS CURIAE*

The Oversight Board files this *amicus curiae* brief to present its unique perspective on the importance of the stay imposed by Section 405 of PROMESA to the work the Oversight Board is tasked with by PROMESA: helping the Commonwealth and its instrumentalities extricate themselves from their crippling financial distress and regain access to the capital markets.

PROMESA is not the Bankruptcy Code.  The stay under Section 405 of PROMESA is not the same as the automatic stay imposed by Section 362(a) of the Bankruptcy Code, and the "cause" standard for lifting the PROMESA stay is different than that for lifting the bankruptcy stay.  PROMESA creates a statutory, "pre-petition" framework for the Oversight Board to develop fiscal plans and negotiate restructuring agreements before filing consensual proceedings (under Title VI of PROMESA) or non-consensual proceedings (under Title III of PROMESA).  Thus, PROMESA empowers the Oversight Board, among other things, to approve and enforce fiscal plans and budgets, 48 U.S.C. §§ 2141–44; approve the issuance, guarantee or modification of debts, 48 U.S.C. § 2147; analyze pensions, 48 U.S.C. § 2151; file petitions to adjust debts through consensual (Title VI) plans and non-consensual (Title III) plans through procedures similar to Chapter 9 of the United States Bankruptcy Code (governing municipal bankruptcies), 48 U.S.C. §§ 2161–77, 2231–32; and intervene in any

-2-

action against the Commonwealth or its covered instrumentalities.

48 U.S.C. § 2152.

Achieving all of this would be a monumental task under the best of circumstances, but the Oversight Board faces special challenges.  It was not appointed until August 31, 2016;[3] the Commonwealth and its instrumentalities and officers have been sued by dozens of creditors (principally large bondholders), three monoline insurers, and one collateral trustee in at least 15 separate actions challenging the validity of Public Act No. 21-2016, the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act (as amended by Public Act 40-2016, the "Moratorium Act"), and the various Executive Orders implementing it and under which the Commonwealth is funding essential services, and in some cases, including these on appeal, seeking to lift the PROMESA stay.  In addition, the incumbent Administrations in both Puerto Rico and the United States will leave office in January 2017, to be replaced by entirely new Administrations.  Finally,

---

[3] Its members are:  Chairman, José B. Carrión III (an insurance executive), Andrew G. Biggs (a Social Security expert from the American Enterprise Institute), José R. González (a Puerto Rican banker), Ana J. Matosantos (a former director of the California Department of Finance), Carlos M. García (a private equity manager and former bank president), Arthur J. González (a former bankruptcy judge), and David A. Skeel, Jr. (a professor of corporate law at the University of Pennsylvania).  *See* https://juntasupervision.pr.gov/index.php/en/ home.  Governor-elect Ricardo Rosselló Nevares recently named Elías Sánchez to serve on the Oversight Board *ex officio* (replacing Richard Ravitch) pursuant to Section 101(e)(3) of PROMESA, 48 U.S.C. § 2121(e)(3).

the Moratorium Act is set to expire on January 31, 2017, unless the new Governor extends it through March 31, 2017, and the PROMESA stay will expire on February 15, 2017 (subject to a 60- or 75-day extension under specified circumstances), leaving a six-to-eight-month window for the Oversight Board to work with the Commonwealth and its creditors.

The Oversight Board simply could not do all this work without the PROMESA stay.  The Commonwealth and the Oversight Board have been inundated with litigation related to PROMESA, and without the stay, the cost and distraction of intervening and participating in these actions would impair the Oversight Board's ability to perform its statutory functions.  Just participating in these two lift stay appeals and the Oversight Board's seven intervention appeals has imposed a substantial burden on the Oversight Board and has impeded substantive negotiations with the parties in interest.[4]

But more importantly, and wholly apart from the distraction and cost in time, money, and personnel to the Commonwealth and the Oversight Board, is

---

[4] As the Court is aware, the Oversight Board sought to intervene in eight actions before the District Court.  The orders denying the Oversight Board's intervention motions in seven of those cases are before the Court on appeal.  *See* Case No. 16-2377, Doc. No. 00117091542; Case No. 16-2437, Doc. No. 00117094749.  Had the District Court not improperly denied the Oversight Board's intervention motions, the Oversight Board would be entitled to participate in these consolidated appeals as a party.

-4-

the impact of the creditor litigations on the PROMESA process itself.  Pushing for
an immediate resolution of the various constitutional and statutory issues raised in
these and the other creditor actions, and forcing the Oversight Board to take a
public position on these issues would impede negotiations rather than advance
them, for instance by giving one party or the other overwhelming negotiating
leverage.  This would only guaranty more time-consuming appeals that would
derail the PROMESA process, especially given the tight deadlines the Oversight
Board is working under.

   If the Oversight Board is successful, the Appellants' constitutional
challenges, their lift stay motions, and their requests for injunctive relief and
monetary damages may <u>never</u> have to be litigated, or if they must be litigated, it
will not be for some months, after all efforts at consensual resolutions have failed.
The Appellants' claims will either have been subsumed in negotiated, consensual
restructuring agreements approved under Title VI, or they will be litigated in the
context of Title III proceedings under PROMESA.  In either case, what is key for
the Oversight Board is that the PROMESA process be protected and given every
chance to succeed.  Lifting the stay to litigate the Appellants' claims now will not
do this.

## **ARGUMENT**

The Court should affirm the District Court's decision denying the
Appellants' lift stay motions.

First, the PROMESA stay is essential to this Oversight Board's and to
any future oversight board's efforts to bring about fiscal stability for impacted
territories and their instrumentalities.  The PROMESA stay is the fundamental
building block that supports the Oversight Board's work, and without it, the
Oversight Board would be severely limited in its ability to do its job.  The "cause"
standard established by the Court on this appeal could have far-reaching impact
beyond Puerto Rico, and should reflect the unique circumstances before the Court
and take into account the importance of the PROMESA stay to the PROMESA
process and the Oversight Board's work.

Second, the Oversight Board believes that district courts considering
whether "cause" exists to lift the PROMESA stay at the request of a creditor
should apply a balancing test, as the District Court did below.  However, the
balance of the equities should involve more than determining whether or not the
creditor has been afforded "adequate protection" as defined under the Bankruptcy
Code.  In other words, under the appropriate circumstances, the absence of
"adequate protection" alone should not constitute "cause" to lift the stay.  The
Court should also consider, and balance, among other things, whether there will be

any irreparable harm; the value of the creditor's collateral, including whether it is

increasing or decreasing; the creditor's collateral coverage; the existence of a

payment default when the lift stay motion is made and the likelihood of a payment

default during the pendency of the PROMESA stay; the duration of the stay; the

impact of the stay on the creditor; the impact of lifting the stay on the

Commonwealth; and the impact of lifting the stay on the Oversight Board's work

and the PROMESA process.  Applying this balancing test, it is clear that the harm

to the PROMESA process and to the Commonwealth caused by lifting the stay far

outweighs any potential harm that the Appellants could conceivably suffer over the

next several months.

        Third, even if the Court were to find that a lack of adequate protection

alone constitutes "cause" to lift the stay, the Court should affirm the District

Court's decision that the Appellants are adequately protected in this case.  As the

District Court properly found, the Appellants are adequately protected here by the

reserve accounts from which payments will be made during the pendency of the

PROMESA stay, the perpetual, replenishing revenue streams that secure the

Appellants' bonds, and the other statutory protections that are included in

PROMESA and the Moratorium Act.

## I.   THE STAY IS ESSENTIAL TO THE OVERSIGHT BOARD'S WORK AND TO THE PROMESA PROCESS

Congress recognized that a short, narrowly-tailored and immediate stay was essential to "stabilize" Puerto Rico and "advance[] the best interests common to all stakeholders."  48 U.S.C. § 2194(m)(5).  The PROMESA stay was intended to prevent "a rush to the courts by aggrieved creditors," to provide the Commonwealth "a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits," and to allow the Oversight Board sufficient time "to establish its foundational structure," determine whether to intervene in any litigation filed against the Commonwealth, and ultimately embark on "its monumental task of ensuring Puerto Rico regains access to capital markets." 48 U.S.C. § 2194(m)(5), (n)(2); H.R. REP. NO. 114-602, at 52 (2016).

To say that the Oversight Board's congressional mandate is "monumental" is an understatement.  Although the Oversight Board was established on the day PROMESA was signed into law on June 30, 2016, the members of the Oversight Board were not appointed by the President until August 31, 2016, meaning that the PROMESA automatic stay will expire on

February 15, 2017 – subject to two possible extensions.[5]  Ultimately, the seven-person Oversight Board has a six-to-eight-month window to establish itself, get up to speed on the issues facing the Commonwealth and its 60-plus instrumentalities, review and certify numerous fiscal plans, and negotiate with the Commonwealth's numerous bondholders and other creditors (many of which have competing interests) to see if consensual restructuring agreements can be reached or, if they cannot, commence proceedings under Title III of PROMESA.

To complicate matters further, the Oversight Board and the Commonwealth have been dealing with at least fifteen separate PROMESA-related lawsuits challenging the validity of the Moratorium Act and the various Executive Orders implementing it and under which the Commonwealth is funding essential services (there are lift-stay motions in ten actions), and the incumbent Administrations of the United States and Puerto Rico will leave office shortly, to be replaced by entirely new Administrations in January 2017.

---

[5] Those extensions are not available unless the Oversight Board certifies to the Governor that additional time is needed to complete a voluntary process under Title VI or the District Court finds that additional time is needed to act on an application to approve a voluntary modification under Section 601(m)(1)(D) of PROMESA.  48 U.S.C. § 2194(d)(1)(B), (d)(1)(C), 48 U.S.C. § 2231(m)(1)(D). Of course, there would then be no need for lifting the stay or to adjudicate the constitutional challenges.

Since August 31, 2016, the Oversight Board has been working systematically towards advancing its twin goals of helping the Commonwealth "achieve fiscal responsibility" and regain "access to the capital markets." 48 U.S.C. § 2121(a).  Below is a list of some of the things the Oversight Board has accomplished during its short existence:

- Elected a chair and established by-laws;

- Retained outside legal counsel and strategic consultants;

- Developed information sharing protocols with the Commonwealth and its instrumentalities;

- Designated 63 "covered" territorial instrumentalities;

- Moved to intervene in eight actions in the District Court;

- Held three public meetings on September 30, 2016, October 14, 2016, and November 18, 2016;

- Held countless meetings (both in person and telephonically) with the Commonwealth and its advisors;

- Established procedures and timelines for the submission and certification of fiscal plans for the Commonwealth and its instrumentalities and for the approval of transactions involving covered instrumentalities;

- Received, evaluated, and considered the Commonwealth's initial fiscal plan; and

- Received, evaluated, and considered comments from 114 third-parties (including creditors, Puerto Rican residents, Puerto Rican government employees, and trade associations) to the Commonwealth's initial fiscal plan.

On December 20, 2016, the Oversight Board sent a letter to Governor García Padilla and Governor-elect Rosselló Nevares providing the Oversight Board's analysis of the Commonwealth's fiscal plan and outlining work that needs to be done if the Oversight Board is going to be able to certify a fiscal plan by the end of January 2017.[6]  The Oversight Board has now begun to schedule meetings with various creditor constituencies and expects in-person meetings to begin shortly.  The Oversight Board remains committed to certifying a fiscal plan for the Commonwealth by January 31, 2017.

As is evident from the multiple cases filed in the District Court seeking to invalidate all or part of the Moratorium Act and the related Executive Orders and the nine appeals (arising out of seven actions) that are already before

---

[6] Copies of the Governor's Fiscal Plan, the Letters from the Oversight Board to the Governor and the Governor-elect regarding the Fiscal Plan, other key documents, and recordings of the Oversight Board's public meetings are available at the Oversight Board's website:  www.oversightboard.pr.gov.

this Court, the Commonwealth and the Oversight Board have been inundated with PROMESA-related litigation.  The Court's decision on this consolidated appeal will likely resolve other pending lift stay motions and influence other creditors' decisions to pursue PROMESA-related litigation both now, and in the future, should PROMESA's procedures ever be utilized by another U.S. territory.

The Oversight Board is not now interested in litigating the underlying disputes between the parties over the constitutionality of the Moratorium Act and related Executive Orders challenged by the Appellants, but in ensuring that unnecessary, expensive and time-consuming litigation does not interfere with its paramount interests:  certifying fiscal plans and negotiating consensual restructuring agreements or, failing consensus, filing restructuring proceedings under Title III of PROMESA.  Ongoing litigation is a major distraction to the Commonwealth and has already interfered with the Oversight Board's congressional mandate to oversee a "fair and orderly" resolution of the Commonwealth's financial distress.  48 U.S.C. § 2194(m)(4).  The Oversight Board believes that the Commonwealth's limited resources are better spent working with the Oversight Board during what is left of the PROMESA stay period to develop a certifiable fiscal plan and to negotiate consensual restructurings with creditors.

There is considerable value in waiting to decide the Appellants'

constitutional claims, as forcing an early resolution of these hotly-contested issues

is only likely to impede the negotiations by giving the winner overwhelming

negotiating leverage and forcing the loser to commence costly and time-consuming

appeals that would derail the PROMESA process, especially given the tight

deadlines the Oversight Board is working under.  The PROMESA process should

be given time to unfold the way Congress envisioned.

## II.   THE APPELLANTS' MOTIONS TO LIFT THE PROMESA STAY "FOR CAUSE" WERE PROPERLY DENIED

### A.   The Court Should Apply a Balancing Test to Assess "Cause"

The Appellants claim that a "lack of adequate protection" by itself

constitutes sufficient cause for relief from the PROMESA stay.  Peaje Br. at 31;

Altair Br. at 29–31.  By contrast, the Commonwealth claims that only a showing of

"irreparable injury" suffices to establish the requisite cause to lift the PROMESA

stay.  Commonwealth Br. at 38.  The Oversight Board suggests that while both

factors are relevant to the analysis, neither should be dispositive.  Instead, the

better approach, and the approach the District Court seems to have adopted, is for a

court "to perform a careful balancing of the equities involved" and "assess the

hardships realistically borne by plaintiffs" if relief from the stay is denied and

weigh those against "the harm likely to be visited upon the Commonwealth" if

relief from the PROMESA stay is granted.  Peaje Add. 9; *cf. Sonnax Indus., Inc. v.*

*Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286

(2d. Cir. 1990) (listing 12 different factors for a court to consider in determining

whether cause exists to vacate a bankruptcy stay, including the "impact of the stay

on the parties and the balance of harms.").[7]

PROMESA is not the Bankruptcy Code, and the stay under Section

405 of PROMESA, though similar, is not the same as the automatic stay imposed

by Section 362(a) of the Bankruptcy Code.  The District Court concluded that this

lack of a "one-to-one" relationship means that the definition of "cause" under

PROMESA "need not precisely mirror that adopted in the bankruptcy context."

Peaje Add. 11.  Instead, the District Court acknowledged that it must be "mindful

of the specific Congressional findings and the enumerated purposes of

PROMESA's automatic stay," and that "any decision . . . to vacate the stay . . .

should be consistent with these provisions and  . . . the larger, overarching

purposes for which PROMESA was enacted."  *Id.* at 11–12.

The District Court was incorrect, however, when it concluded that a

lack of adequate protection by itself could be sufficient "cause" to grant relief from

the PROMESA stay.  *Id.* at 9–10.  As discussed more fully in the Commonwealth's

brief, Section 405(b) of PROMESA, unlike Section 362 of the Bankruptcy Code,

---

[7] All citations to "Peaje Add. __" are to the Addendum attached to the brief filed
by Peaje in Case No. 16-2377.

does not include "lack of adequate protection" as an example of cause for relief

from the PROMESA stay.  Commonwealth Br. at 37–43.  Congress's decision not

to include a lack of adequate protection was intentional and should not be ignored.

*Russello v. United States*, 464 U.S. 16, 23 (1983) ("[Where] Congress includes

particular language in one section of a statute but omits it in another section of the

same Act, it is generally presumed that Congress acts intentionally and purposely

in the disparate inclusion or exclusion." (alteration in original) (citation omitted));

*Helmer v. Goodyear Tire & Rubber Co.*, 828 F.3d 1195, 1202 (10th Cir. 2016) (If

"a legislature models an act on another statute but does not include a specific

provision in the original, a strong presumption exists that the legislature intended

to omit that provision." (citation omitted)).

　　　　　If Congress had intended to adopt the entirety of Section 362(d) of the

Bankruptcy Code, it would have done so, as it did when it incorporated

Section 362 *in toto* with respect to a proceeding under Title III of PROMESA,

*see* 48 U.S.C. § 2161(a) (listing bankruptcy code provisions applicable to a

Title III proceeding), or when it incorporated Sections 362(f) of the Bankruptcy

Code verbatim into PROMESA.  *Compare* 48 U.S.C. § 2194(g) (stating that relief

from the PROMESA stay is appropriate with or without a hearing "as is necessary

to prevent irreparable damage to the interest of an entity in property, if such

interest will suffer damage before there is an opportunity for notice and a hearing under subsection (e) or (f)") *with* 11 U.S.C § 362(f).

Here, there were multiple reasons why Congress would not have included adequate protection – and indeed specifically carved out – a lack of adequate protection as a sufficient standalone basis for relief from the PROMESA stay. <u>First</u>, the PROMESA stay is inherently different from the stay at the beginning of a bankruptcy case. Congress believed that an immediate stay was essential to stabilize Puerto Rico and was necessary to provide the Oversight Board time to get up and running without the specter of multiple litigations hanging over its head, so that it could determine whether to intervene in any creditor litigations against the Commonwealth and its instrumentalities and so that it could work with the Commonwealth to address its unprecedented fiscal crisis, and to do so before commencing formal proceedings under Title III or Title VI of PROMESA. No similar concerns are present in an ordinary bankruptcy case.

<u>Second</u>, the PROMESA stay is temporary and will expire on February 15, 2017. The deadline may be extended until May 1, 2017, but only if the Oversight Board certifies that additional time is needed to complete a voluntary process under Title VI of PROMESA with respect to the Commonwealth or its covered instrumentalities (in which case there should be no need for lifting the stay or addressing the constitutional challenges). 48 U.S.C. § 2194(d)(1)(B). Whether

-16-

the stay expires on February 15 or May 1, 2017, once it does expire, creditors may be able to bring or resume their litigations against the Commonwealth.  Should the Oversight Board commence proceedings pursuant to Title III of PROMESA, Section 362 of the Bankruptcy Code will take effect, *see* 48 U.S.C. § 2161(a), and creditors may then seek relief from the automatic bankruptcy stay under the bankruptcy precedents they now rely on.  The limited duration of the PROMESA stay, and the applicability of the bankruptcy stay under Title III after the PROMESA stay expires, leads to the conclusion that Congress intended a different standard to govern any request to lift the PROMESA stay.

A lack of adequate protection, though relevant to the District Court's analysis, should not alone be sufficient to establish cause for relief from the PROMESA stay.  Instead, a court should consider, and balance, a lack of adequate protection along with the other relevant factors:  for example, whether there will be irreparable harm to the creditor; the value of the collateral, including whether it is increasing or decreasing; the creditor's collateral coverage (*e.g.*, is there a very large equity cushion that virtually guarantees repayment, even if the collateral value declines); the existence of a payment default when the lift stay motion is made and the likelihood of a payment default during the pendency of the PROMESA stay; the duration of the stay; the impact of the stay on the creditor (will the creditor be paid out of other sources, *e.g.*, cash reserves or insurance

policies); the impact of lifting the stay on the Commonwealth and its citizens; and the impact of lifting the stay on the Oversight Board's work and the PROMESA process.

These factors weigh heavily in favor of leaving the stay in place in these cases:

- <u>Irreparable harm to creditors</u>.  There is none.  The Appellants will receive all payments due to them while the PROMESA stay is in place.

- <u>Value of the collateral</u>.  There is no meaningful diminution in the value of the Appellants' collateral because the perpetual revenue streams that secure their claims (toll revenues and employer pension contributions) are continually replenished.

- <u>Collateral coverage</u>.  The Appellants have a substantial equity cushion as a result of the reserve accounts and the perpetual revenue streams.

- <u>Payment defaults</u>.  There are none.

- <u>Duration of the stay</u>.  At this point, the stay could expire as early as February 15, 2017, but will expire no later than May 1, 2017.

- <u>Impact of the stay on the Appellants</u>.  The Appellants will receive all payments that become due during the stay.  The stay does not prevent them from litigating their claims; it merely requires them to wait a few months to pursue them.  Payments are delayed, not eliminated, and this delay does not amount to a constitutional "taking."  *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302 (2002) (holding that a building moratorium that delayed property development and had only a temporary impact was not a taking).   Moreover, the Appellants may never need to litigate their claims if they are able to negotiate satisfactory restructuring agreements.

- <u>Impact on the Commonwealth.</u>  Litigating these lift stay motions has already interfered with the Commonwealth's ability to function, and deciding the merits of the parties' claims now could have a devastating impact on the Commonwealth's ability to supply essential services.  Commonwealth Br. at 17–18; *Brigade Leveraged Capital Structures Fund Ltd. v. García Padilla*, Civil No. 16-1610 (FAB) (D.P.R.), Dkt. No. 120, Sept. 23, 2016, Hrg. Tr. 86–87, 90, 101–02.

- **Impact on the Oversight Board and the PROMESA Process**. The stay is an indispensable component of the Oversight Board's work. Allowing these litigations to proceed will disrupt the PROMESA process by distracting the Oversight Board and the Commonwealth from their important work, and by undermining negotiations between the Commonwealth and its creditors.

- **Other factors**. Section 407 of PROMESA provides a mechanism to redress any damages suffered by a creditor while the stay is in effect. *See* 48 U.S.C § 2195 (authorizing any aggrieved creditor to file an action at the expiration of the PROMESA stay if the creditor had "a valid pledge of, security interest in, or lien on" property that was "transferred in violation of applicable law").

The PROMESA stay is an indispensable part of the PROMESA statutory scheme that is essential to the Oversight Board's work. The lift-stay motions have already proven to be a huge distraction to the Oversight Board and to the Commonwealth. And as the United States has cautioned, lifting the stay will only exacerbate that distraction by leading to an influx of creditor lawsuits. *See Brigade*, Dkt. No. 116 at 6 (urging the District Court to "consider the potential

cascading effect that granting relief to one creditor may have on the overall scheme designed by PROMESA").  The full attention of the Oversight Board and the Commonwealth should be focused on working towards a comprehensive resolution of Puerto Rico's fiscal issues, not on piece-meal litigation with various creditor constituencies.

## B.  Even if Adequate Protection Is Required, the Court Properly Found That the Appellants Are Adequately Protected

Ultimately, here, the District Court got the decision right.  The Appellants have not shown that they will suffer any material harm during the existence of the PROMESA stay.  "[A]dequate protection is a flexible concept which requires a court to make decisions on a case-by-case basis," taking into account "the particular characteristics of each proceeding."  *Lend Lease v. Briggs Transp. Co. (In re Briggs Transp. Co.)*, 780 F.2d 1339, 1348 (8th Cir. 1985).  Even assuming that a lack of adequate protection could constitute cause for relief from the PROMESA stay, the undisputed record shows that the Appellants are adequately protected.

In the joint stipulations the parties filed on the eve of the November 2, 2016, hearing in the *Peaje* action, Peaje conceded that it had received all principal and interest payments "on time and in full" and that the fiscal agent "holds sufficient funds to pay principal and interest" on Peaje's bonds through the

duration of the PROMESA stay.  Peaje JA183 ¶ 11, 184 ¶ 14.[8]  Likewise, in the

joint stipulations filed in the *Altair* action, the Altair Movants acknowledged that

the fiscal agent has sufficient funds on reserve "to allow for payments through

April 2017" – *i.e.*, through the end of the PROMESA stay.  Altair JA243 ¶ 18.[9]

There can be no dispute that the amounts due will be paid during the pendency of

the PROMESA stay, and the Appellants will, therefore, suffer no material harm

during the pendency of the stay.

       The Appellants complain that the reserve accounts will be depleted as

a result of payments being made during the duration of the stay (Peaje Br. at 43;

Altair Br. at 40–42), but neither Peaje nor the Altair Movants is entitled to current

cash payments to make up for the use of the cash in the reserve accounts.  A lack

of "adequate protection" is tied to a decrease in the value of a security interest

"attributable to the stay," *In re Briggs Transp. Co.*, 780 F.2d at 1344, "without

taking account of [a creditor's] right to immediate possession of the collateral on

default."  *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484

U.S. 365, 372 (1988).  It can only be established by showing an actual decrease in

the value of the security interest during the stay.  *Id.*  Here, there will be none.

---

[8] All references to "Peaje JA__" are to the Joint Appendix filed by Peaje in Case
No. 16-2377.

[9] All references to "Altair JA__" are to the Joint Appendix filed by the Altair
Movants in Case No. 16-2433.

As the District Court properly found, although transfers to the respective fiscal agents will be suspended for the limited duration of the Moratorium Act and the PROMESA stay, the Appellants are protected by Section 204(a) of the Moratorium Act (which provides that nothing in the Moratorium Act "shall be construed to limit the rights of a holder to any collateral, security interest, or lien that secures such obligation, and nothing in this Act authorizes any government entity to compromise any obligation over the objection of a creditor"), Section 405(k) of PROMESA (which provides that the stay "does not discharge an obligation of the Government of Puerto Rico or release, invalidate, or impair any security interest or lien securing such obligation"), and most importantly by the perpetual, continually-replenished revenue streams that will ensure that the Appellants are eventually repaid.  Peaje Add. 15–17.[10]  Peaje and the Altair Movants will continue to receive their principal and interest payments when due, and they are not entitled to be compensated for any perceived erosion of their "equity cushion" in the reserve accounts if there is any.  *See In re*

_____

[10] The Appellants also complain that they do not know when the moratorium on the transfer of toll revenue and employer contributions will end, but the diversion of revenues authorized by the Moratorium Act and the Executive Orders will end no later than March 31, 2016.  Moratorium Act §§ 103(l), (m), 201(a).  But even if that were not the case, there will be ample time for the Appellants to pursue their claims after the stay expires.  That some event might happen in the future is not a sufficient reason to disturb the stay that Congress believed was essential to the Oversight Board's efforts.

*SW Boston Hotel Venture LLC*, 449 B.R. 156, 176 (Bankr. D. Mass. 2011) ("[An oversecured creditor is not entitled to be compensated for an erosion in an equity cushion."); *see also Baybank-Middlesex v. Ralar Distribs., Inc.*, 69 F.3d 1200, 1203 (1st Cir. 1995) ("A sufficient equity cushion is itself a recognized form of adequate protection.").

Moreover, while the record is clear that the Appellants will suffer no measurable harm during the PROMESA stay period, in the event they do, PROMESA provides a remedy for creditors that can make up the difference. Section 407 of PROMESA authorizes the aggrieved creditor to file an action at the expiration of the PROMESA stay if the creditor had "a valid pledge of, security interest in, or lien on" property that was "transferred in violation of applicable law." 48 U.S.C. § 2195(a), (b). Though standing alone this may not provide "adequate protection" within the meaning of the Bankruptcy Code, when combined with the other protections discussed above, there can be no doubt that the Appellants will be adequately protected during the limited duration of the PROMESA stay.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the Orders of the

District Court.

Dated:          December 23, 2016              Respectfully submitted,

                                                        LUSKIN, STERN & EISLER LLP

                                                         /s/ Michael Luskin
                                                         Michael Luskin (Bar # 1177315)
                                                         Stephan E. Hornung (Bar # 1177316)
                                                         Eleven Times Square
                                                         New York, New York 10036
                                                         Phone:  (212) 597-8200
                                                         Fax:  (212) 974-3205
                                                         luskin@lsellp.com
                                                         hornung@lsellp.com

*Attorneys for Amicus Curiae*
*Financial Oversight and Management Board for Puerto Rico*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation provided in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  The brief contains 5,348 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief also complies with the typeface requirements of Rule 32(a)(5) and the type styles requirement of Rule 32(a)(6).  The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type.

Executed:   New York, New York
            December 23, 2016


                        /s/ Michael Luskin
                        Michael Luskin


                *Attorney for Amicus Curiae*
        *Financial Oversight and Management Board for Puerto Rico*

**AFFIDAVIT OF SERVICE**

------------------------------------------------------------------------------X

Peaje Investments LLC, et al.

v.

Alejandro Garcia Padilla, et al.

------------------------------------------------------------------------------X

      I, Robyn Cocho, swear under the pain and penalty of perjury,  that according to law and being over the age of 18, upon my oath depose and say that:

      on December 23, 2016

      I served the **Brief of Amicus Curiae Financial Oversight and Management Board for Puerto Rico in Support of Respondents-Appellees Urging Affirmance of The District Court Order** within in the above captioned matter upon:


*SEE ATTACHED LIST*


via **Express Mail** by depositing **2** copies of same, enclosed in a post-paid, properly addressed wrapper, in an official depository maintained by United States Postal Service.

Unless otherwise noted, copies have been sent to the court on the same date as above for filing via Express Mail.

In addition, this Brief has been filed through the courts CM/ECF system.


**Sworn to before me on December 23, 2016**


/s/ Robyn Cocho
Robyn Cocho

Job # 269743

## Consolidated Service List Oversight Board Amicus Brief - 12/23/16

Peter A. Farrell
Michael F. Williams
Kirkland & Ellis LLP
655 15th Street NW, Suite 1200
Washington, DC 20005
Tel: (202) 879-5000

Salvador Antonetti-Zequeira
Jose L. Ramirez-Coll
Antonetti Montalvo & Ramirez-Coll
P.O. Box 13128
San Juan, Puerto Rico 00908
Tel: (787) 977-0320

Richard A. Chesley
Kevin D. Finger
DLA Piper LLP
203 North LaSalle Street, Suite 1900
Chicago, IL 60601-1293

John M. Hillebrecht
Neal F. Kronley
DLA Piper LLP
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 335-4500

Jose Alberto Sosa-Llorens
DLA Piper LLC
500 De La Tanca Street
Ochoa Building, Suite 401
San Juan, Puerto Rico 00901
Tel: (787) 945-9101

John K. Cunningham
Glenn M. Kurtz
White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Tel: (212) 819-8200

Jason N. Zakia
White & Case LLP
200 S. Biscayne Boulevard, Suite 4900
Miami, FL 33131
Tel: (305) 371-2700

Beth Heifetz
Geoffrey S. Stewart
Sparkle L. Sooknanan
Jones Day
555 S. Flower Street, 50th Floor
Los Angeles, California 90071
Tel: (213) 243-2382

Bruce Bennett
Jones Day
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Tel: (213) 489-3939

Benjamin Rosenblum
Jones Day
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939

Margarita L. Mercado-Echegaray, Esq.
Puerto Rico Department of Justice
Federal Litigation Division
P.O. Box 9020192
San Juan, Puerto Rico 00902
Tel: (787)-724-2165

Alfredo Fernández-Martínez
Delgado & Fernández LLP
Fernández Juncos Station
PO Box 11750
San Juan, Puerto Rico 00910
Tel: (787) 274-1414

Julio C. Alejandro-Serrano
90 Ave. Rio Hondo PMB 130
Bayamon, Puerto Rico 00961
Tel: (787) 647-6632

G. Eric Brunstad, Jr.
Allan S. Brilliant
Andrew C. Harmeyer
Robert J. Jossen
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
Tel: (212) 398-3500

Yassmin Gonzalez Velez
PPMB 131, La Cumbre
273 Sierra Morena
San Juan, Puerto Rico 00926
Tel: (787) 790-8830

Dora L. Monserrate Peñagarícano
Monserrate Simonet & Gierbolini LLC
101 San Patricio Avenue, Suite 1120
Guaynabo, Puerto Rico 00968
Tel: (787) 764-8960

Arturo Díaz-Angueira
José C. Sánchez-Castro
Alicia I. Lavergne-Ramírez
Maraliz Vázquez-Marrero
Lopez Sanchez & Pirillo LLP
270 Muñoz Rivera Avenue, Suite 504
San Juan, Puerto Rico 00918
Tel: (787) 522-6776