**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

---

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | Case No. 17-BK-3283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | (Jointly Administered) |
| Debtors.[1] | |

---

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | Case No. 17-BK-4780 (LTS) |
| PUERTO RICO ELECTRIC POWER AUTHORITY | **This filing relates only to Case No. 17-BK-4780 (LTS)** |
| Debtor. | |

---

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO AND PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY TO APPROVE STIPULATION APPOINTING THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY AS <u>CO-TRUSTEE IN CONNECTION WITH LIEN CHALLENGE</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of All Title III Debtors (other than COFINA) (the "Committee") hereby submits this objection (the "Objection") to the *Urgent Motion of Financial Oversight and Management Board for Puerto Rico and Puerto Rico Fiscal Agency and Financial Authority to Approve Stipulation Appointing the Puerto Rico Fiscal Agency and Financial Advisory Authority as Co-Trustee in Connection with Lien Challenge* [Docket No. 1395 in Case No. 17-4780 (LTS)] (the "Motion" and the proposed stipulation attached thereto as Exhibit A, the "AAFAF Stipulation").[1] In support of the Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Despite the numerous safeguards that the Committee is willing to put in place[2] in order to ensure that its appointment as a section 926(a) trustee cannot be used to interfere with the Oversight Board's motion to approve the Definitive RSA, the Oversight Board and AAFAF (together, "Movants") maintain their opposition to the Committee's efforts to protect PREPA and its creditors from the unintentional forfeiture of defenses against billions of dollars in PREPA bond claims. If the Motion makes one thing clear, however, it is that AAFAF is not a viable alternative to the Committee to mitigate the *Aurelius/UTIER* risk, including because there are serious questions about whether AAFAF has the statutory authority to serve as a section 926(a) trustee. In fact, none of the provisions of AAFAF's Enabling Act cited by Movants support their assertion that AAFAF has the statutory authority under the circumstances here.

---

[1] In accordance with this Court's order, dated June 25, 2019 [Case No. 17-3283, Docket No. 7654], the Committee incorporates herein the *Omnibus Reply of Official Committee of Unsecured Creditors in Support of Motion for Order, Pursuant to Bankruptcy Code Section 926(a), Authorizing Committee to Pursue Certain Avoidance Actions on Behalf of Puerto Rico Electric Power Authority* [Case No. 17-3283, Docket No. 7636] (the "Omnibus Reply"). Capitalized terms used but not defined in this Objection have the meanings set forth in the Omnibus Reply.

[2] These safeguards include allowing the Court to later modify the section 926(a) order and proposing to stay the Lien Challenge until entry of an order granting the 9019 Motion (subject to the clarification noted in Part IV of this Objection).

1

2. Movants have also tied themselves into countless knots in an effort to explain their position that (a) with respect to the AAFAF Stipulation, the Oversight Board's consent to the appointment of AAFAF as co-trustee/co-plaintiff constitutes the requisite refusal for purposes of section 926(a) of the Bankruptcy Code while (b) with respect to the Committee's 926(a) motion, the lack of the Oversight Board's consent means that the requisite refusal is not present. However, the simple answer remains that, faced with the *Aurelius/UTIER* risk, the Oversight Board's efforts to pursue the Lien Challenge without adequate "insurance" (which, in this instance, only the Committee can provide) mean that the Oversight Board is effectively refusing to pursue the Lien Challenge.

3. The Court should also reject Movants' argument that AAFAF is the requisite creditor under section 926(a) because it represents Puerto Rico instrumentalities that are creditors of PREPA. Assuming that AAFAF were the representative of instrumentalities such that it were the holder of a claim against PREPA and had the statutory authority to assert that claim (which the Committee disputes), then by the same logic AAFAF would also be the representative of PREPA. But this would present a clear conflict of interest, as AAFAF would be representing both the creditor moving under section 926(a) and the debtor against whom relief is sought— and, on top of that, it is seeking to be appointed as trustee for such debtor. Allowing AAFAF to serve as the requisite creditor under section 926(a) would go against the very purpose of that section, which was intended to protect debtor causes of action from political influences. Accordingly, there is only one motion in which a creditor has requested the appointment of a section 926(a) trustee to pursue the Lien Challenge, and that is the joint motion of the Committee and one of its members [Case No. 17-3283, Docket No. 7484] (the "Section 926(a) Motion").

4. Finally, Movants have conceded that appointing the Committee as section 926(a) trustee would not result in a breach of the Definitive RSA. Instead, they now insist that that such

2

appointment would be wasteful because, upon entry of the order approving the 9019 Motion, the Committee would need to be substituted with a different plaintiff. Movants' concerns are premature, as they assume that the Court will grant their 9019 Motion. In any event, Movants' concerns about efficiency are not only greatly exaggerated (given that the Committee is prepared to stay the Lien Challenge litigation until the Court has decided the 9019 Motion), but also simply do not compare to the substantial benefits that would accrue to PREPA and its creditors by putting in place adequate insurance against the *Aurelius/UTIER* risk. And, as noted in the Omnibus Reply, there is a simple solution: the Oversight Board could just agree to pursue the Lien Challenge jointly with the Committee, as it has done under the Commonwealth Stipulation and the HTA/ERS Stipulation. In the end, the determination of this issue is fairly straightforward: how much risk should PREPA and its creditors take solely to avoid creating tension with the PREPA bondholders based on a restructuring support agreement which has not been approved by the Court? Given the amounts at stake, the Committee submits that the Court should not tolerate PREPA and its creditors being subjected to any risk.

## ARGUMENT

I. **In Light of Unmitigated *Aurelius/UTIER* Risk to Oversight Board's Authority, Oversight Board Is Effectively Refusing to Bring Lien Challenge**

5. As detailed in the Omnibus Reply, the Oversight Board's pursuit of the Lien Challenge in the face of a potential challenge to its authority under the First Circuit's *Aurelius/UTIER* decision is tantamount to the Oversight Board refusing to bring such claims. The fact that the Oversight Board has decided to enter into a stipulation with AAFAF for the joint prosecution of the Lien Challenge does not change that conclusion.

6. First, the AAFAF Stipulation does not mitigate the *Aurelius/UTIER* risk. Even if the AAFAF Stipulation were in place, the Lien Challenge would remain exposed to the very real risk that the authority of the two co-plaintiffs (the Oversight Board and AAFAF) to commence

3

such action will later be challenged. Such a challenge, if successful, could result in the forfeiture of these causes of action, given that the relevant statutes of limitations expire on July 1, 2019. Therefore, because the AAFAF Stipulation offers little to no insurance against the *Aurelius/UTIER* risk, the Oversight Board continues to "effectively refuse" to pursue the Lien Challenge.

7. Second, the fact that the Oversight Board has not consented to the appointment of the Committee as co-trustee/co-plaintiff also does not alter the conclusion that the Oversight Board is effectively refusing to pursue the Lien Challenge. Section 926(a) does not require the Oversight Board's consent, but, instead, requires a debtor to **refuse** to bring an avoidance action. Still, Movants argue that

> [i]n connection with this joint Motion, the requisite refusal is found in the Oversight Board's consent to appoint a co-trustee, and its desire to proceed jointly with AAFAF, not alone. In connection with the UCC Trustee Motion, there has been no such consent to have the UCC appointed co-trustee, and therefore there is no basis for their claims.

Mot. at 6, n.8. Apart from the fact that this is not what the Oversight Board previously argued to the Court in connection with the Commonwealth Stipulation and the HTA/ERS Stipulation,[3] the Committee respectfully submits that this argument misunderstands the Court's prior rulings in approving the Commonwealth Stipulation and the HTA/ERS Stipulation.

8. It is true that the Court found that the Oversight Board's agreement to share litigation responsibility in the face of the *Aurelius/UTIER* risk meant that the Oversight Board effectively refused to bring the causes of action at issue.[4] However, the Court's ruling was predicated on the "unique circumstances" presented by the *Aurelius/UTIER* risk to the Oversight

---

[3] *See* Omnibus Reply ¶ 14.

[4] *See* Apr. 24, 2019 Hr'g Tr. at 236:21-237:2 ("Second, these unique circumstances present a situation where the Oversight Board has decided to share its responsibility to prosecute certain claims, and it has, therefore, effectively refused to pursue the causes of action to the extent that it has sought, by means of the motion, to have the Committee share responsibility for prosecution of the causes of action.").

4

Board's authority.[5] The fact that the Oversight Board consented to a stipulation for the joint prosecution with the Committee was not a condition; rather, the Court found that, in the face of the *Aurelius/UTIER* risk, the Oversight Board's consent to share litigation responsibility did not take away from the conclusion that the Oversight Board had refused to pursue the causes of action. The Oversight Board turns the Court's ruling, and section 926(a), on their head by making the Oversight Board's **consent**—not the potential challenge to its authority—the predicate for the requisite refusal under section 926(a).

## II. AAFAF Does Not Have Statutory Authority to Sue on Behalf of Title III Debtors or Act as Section 926(a) Trustee

9. As detailed in the Omnibus Reply, AAFAF does not have the requisite Puerto Rico statutory authority to assert causes of action on behalf of PREPA in its Title III case or act as a section 926(a) trustee. None of the provisions of the Enabling Act cited by the Movants leads to a different conclusion. For one, section 5(a) of the Enabling Act merely provides that AAFAF "is created for the purpose of acting as fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic crisis that Puerto Rico is currently undergoing."[6] There is no indication that acting as a "fiscal agent, financial advisor, or reporting agent" or providing "assistance" to entities in fiscal crisis includes the power to sue on behalf of the Title III Debtors or act as their trustee. Nor does the fact that AAFAF is "responsible for the collaboration, communication, and cooperation between the Government of Puerto Rico and the Fiscal

---

[5] *See* Apr. 24, 2019 Hr'g Tr. at 235:19-236:2 ("The Commonwealth is currently faced with Statutes of Limitation that expire on May 2nd, 2019, pursuant to Sections 108(a) and 506 -- 546(a) of the Code. Additionally, in light of the decision of the First Circuit in Aurelius v. Commonwealth of Puerto Rico, 915 F.3d 838, First Circuit, 2019, the method of appointment of the current Oversight Board has been determined to be unconstitutional, and the 90-day stay period provided in that decision will expire on May 16 of 2019.").

[6] Enabling Act § 5(a), available at www.aafaf.pr.gov/assets/a-002-2017.pdf.

5

Oversight Board" suggest otherwise.[7] That provision merely seeks to ensure that AAFAF is the principal government interface with the Oversight Board.

10. Moreover, nothing in section 5(d) of the Enabling Act suggests that AAFAF was granted the statutory authority that Movants claim. While Movants tout the fact that section 5(d) authorizes AAFAF to "take any action or measure necessary or convenient to exercise the powers conferred by [the Enabling Act] or by any other law of the Legislative Assembly of Puerto Rico or of the United States Congress," the authority granted under this provision must derive from powers granted elsewhere in the law.[8] Movants fail to identify any such other law that would authorize AAFAF to sue on behalf of any of the Title III Debtors or act as a section 926(a) trustee in these Title III cases. Nor do any of the enumerated powers in subsections 5(d)(i)-(xiv) include such authority. In fact, as the Committee noted in the Omnibus Reply, section 5(d)(v) only provides that AAFAF has the power "[t]o sue and be sued **under its own name**."[9] In light of this very precise, but limited, provision, the Movants simply can't rely on general provisions as support for AAFAF's authority to sue in a derivative capacity.

11. Further, Movants assert that section 8(f) of the AAFAF Enabling Act "also gives AAFAF the authority to 'appoint a trustee to any entity of the Government of Puerto Rico.'"[10] But that section concerns AAFAF's authority to "appoint a trustee," not whether AAFAF itself can be appointed as a trustee in a Title III case. In any event, the remainder of section 8(f) (which was not quoted by Movants) makes clear that the authority granted thereunder is limited to appointing a trustee "who shall be in charge of overseeing that any entity found to be noncompliant with (i) the certified Budget; (ii) the approved Fiscal Plan; and/or (iii) any

---

[7] *Id.*

[8] *Id.* § 5(d)xiv.

[9] *Id.* § 5(d)v (emphasis added).

[10] Mot. ¶ 20.

6

provision of this Act, complies with the orders or corrective measures established by the Authority."[11] Again, nothing in this provision suggests that AAFAF is granted the authority to sue on behalf of the Title III Debtors or act as a section 926(a) trustee.[12]

12. It is also no answer that AAFAF has filed "innumerable pleadings requesting hosts of different relief" in these Title III cases.[13] Whether AAFAF has standing to be heard as a party in interest is an entirely different question from whether it has the statutory capacity to sue on behalf of a Title III Debtor or serve as a section 926(a) trustee. As a creature of the Puerto Rico legislature, AAFAF only has the powers conferred upon it by such legislature and, as already discussed, the Puerto Rico legislature did not grant AAFAF the authority to sue on behalf of a Title III Debtor in these Title III cases.[14] The Bankruptcy Code does not reduce or enlarge the capacity of an entity created by state law to sue on behalf of others, and simply being a party in interest under the Bankruptcy Code cannot endow AAFAF with the right to sue on behalf of another party where that right does not exist under Puerto Rico law.[15]

13. In an effort to create an equivalence between AAFAF's and the Committee's authority, Movants also try to cast aspersions on whether the Committee can serve as a trustee under section 926(a).[16] In doing so, Movants ignore not only that the Committee (unlike

---

[11] Enabling Act § 8(f).

[12] Movants also assert, relying on section 3(d) of the Enabling Act, that the AAFAF Enabling Act gives AAFAF the "power to represent and oversee all entities comprising the Government of Puerto Rico, including 'public corporations.'" Mot. at 2 n.3 (quoting Enabling Act § 3(d)). However, that section merely sets forth the definition of "Government of Puerto Rico" and says nothing about the scope of AAFAF's powers.

[13] Mot. ¶ 18.

[14] In a footnote the Oversight Board also asserts that it can somehow waive Title III's preemption of AAFAF's powers. *See* Mot. at 10 n.13. The Oversight Board offers no legal authority for such an unusual power. The extent to which Title III preempts AAFAF's powers is determined by Title III, and is not subject to the whims of the Oversight Board.

[15] The Committee also notes that the Court's statements at the October 25, 2017 hearing regarding AAFAF's standing, *see* Mot at 9, n.12, were made in response to oral argument by counsel for the Senior COFINA Bondholder Coalition, not counsel for the Creditors' Committee. In any event, the Court's statement addressed the right of AAFAF to be heard on a particular issue, not whether AAFAF has the legal capacity and authority under Puerto Rico law to sue on behalf of a Title III Debtor.

[16] Mot. ¶ 20.

7

AAFAF) is a creation of Title III itself, but also the decades worth of case law establishing that Committees may be granted standing to pursue estate/debtor causes of action,[17] including rulings by this Court (some of which are even cited by the Movants).[18]

14. One final note in this regard. Movants raise the specter that the Committee itself may not survive a successful constitutional challenge to the Oversight Board's appointment, presumably because such challenge could lead to the dismissal of these Title III cases from inception. However, the Committee (and the Oversight Board in prior stipulations) have focused on the problem that is "fixable", namely a potential challenge to the Oversight Board's post-February 15, 2019 actions in light of the First Circuit's *Aurelius/UTIER* decision and the argument made by Aurelius and UTIER that the Oversight Board, having been informed by the First Circuit that its appointment was illegal, can no longer benefit from the *de facto* officer protection. In that context, there is no question that the Committee's appointment under section 926(a) as trustee fully resolves the *Aurelius/UTIER* issue because the Committee's appointment pre-dates the First Circuit's decision. This is also why it really does not help Movants' arguments to posit a world in which the Committee would cease to exist because theses Title III cases were dismissed from inception. Indeed, in that world, the related adversary proceedings would also be dismissed, rendering the AAFAF Stipulation also irrelevant.

### III. AAFAF Cannot Be Movant under Section 926(a) Because It Is Conflicted

15. The Court should also reject Movants' argument that AAFAF is the requisite creditor under section 926(a) because it represents certain Puerto Rico instrumentalities that are creditors of PREPA. As a threshold matter, the Enabling Act did not grant AAFAF the authority

---

[17] *See, e.g.*, *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003); *Commodore Int'l, Ltd. v. Gould et al. (In re Commodore Int'l, Ltd.)*, 262 F.3d 96 (2d Cir. 2001); *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901 (2d Cir. 1985).

[18] Mot. ¶ 14. *See also Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* ¶ 2 [Docket No. 996].

8

to assert claims of Puerto Rico instrumentalities against Debtors in these Title III cases—and Movants cite to no such authority either. Neither is the Committee aware of any proofs of claim filed by AAFAF against PREPA. In fact, the proofs of claims filed by PRASA [Claim No. 104348] and GDB [Claim No. 29617], among other government entities, against PREPA were filed by the respective instrumentalities, not AAFAF, which proofs of claim appear to seriously undermine Movants' argument that AAFAF is the "creditor" asserting such claims.

16.     But even if the Puerto Rico legislature had conferred such authority upon AAFAF (which it did not), AAFAF cannot move under section 926(a) because, by its own logic, it represents both the holder of the claim and the debtor against which the claim is asserted. It defies common sense to believe that Congress would have allowed an entity that purports to represent both the creditor and the debtor to serve as the requisite creditor under section 926(a). In fact, if one thing is clear in the legislative history of section 926(a), it is that Congress intended section 926(a) to ensure that valuable debtor causes of action would be protected from political pressures—not to give politicians an opportunity to insert themselves into the Title III process.[19] It would be a complete perversion of section 926(a) if a purported representative of a debtor could serve as the requisite creditor to have itself appointed as trustee on the basis that the debtor refused to assert avoidance actions. Against this backdrop, Movants' continued insistence that AAFAF's alignment of interest with the Oversight Board is somehow relevant to the analysis runs counter to the purpose of section 926(a).[20]

---

[19] *See* S. Rep. No. 95-989, at 111, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5897 ("This section is necessary because a municipality might, by reason of political pressure or desire for future good relations with a particular creditor or class of creditors, make payments to such creditors in the days preceding the petition to the detriment of all other creditors. No change in the elected officials of such city would automatically occur upon filing of the petition, and it might be very awkward for those same officials to turn around and demand the return of payments following the filing of the petition. Hence, the need for a trustee for such purpose.").

[20] To be clear, and contrary to Movants' suggestion footnote 11, the Committee is not asserting that the interests of a trustee can never align with those of the debtor. The point is simply that the "alignment of interests" is not a relevant consideration, especially if, as here, an independent fiduciary, i.e., the Committee, stands ready, willing, and able, to take on the role of section 926(a) trustee.

9

### IV. Appointing Committee as Section 926(a) Trustee Would Not Be Wasteful

17. The Court should reject Movants assertion that the appointment of the Committee as a section 926(a) trustee would be result in unnecessary and wasteful duplication of work because, upon entry of the order approving the 9019 Motion, the Committee would need to be substituted with a different plaintiff. However, this concern is greatly exaggerated and simply does not compare to the substantial benefits offered by insuring against the *Aurelius/UTIER* risk. As the Committee has now stated on multiple occasions, it is prepared to stay the Lien Challenge litigation until the Court has decided the 9019 Motion, which would minimize any waste or duplication of efforts. And even if the Committee had to be removed in a few months, the appointment of the Committee as a section 926(a) trustee would offer substantial benefits to PREPA and its creditors (insurance against the *Aurelius/UTIER* risk) at a minimal cost. After all, at stake here is the forfeiture of challenges to more than $8 billion of claims.

### V. AAFAF Stipulation Should Be Clarified

18. Finally, to the extent the Court were inclined to approve the AAFAF Stipulation, the Committee submits that the stipulation needs to be clarified to reflect the fact that it is merely embodies the agreement between the Oversight Board and AAFAF with respect to the pursuit of the Lien Challenge and is not otherwise binding on entities not parties to the stipulation (other than, of course, that AAFAF would be appointed as co-plaintiff to jointly pursue the Lien Challenge with the Oversight Board).[21] For the same reason, the Committee will clarify in the proposed order to the Section 926(a) Motion that the stay of the Lien Challenge in paragraph 3 of the order would only apply to the Committee's own Lien Challenge but would not bind other parties, such as the Oversight Board, with respect to any challenge such parties may wish to bring.

---

[21] For example, one of the recitals to the AAFAF Stipulation states that "Section 3(i) of the RSA provides that no person or entity (including a person or entity acting on behalf of a Government Party) other than the Government Parties shall have standing or otherwise be permitted to bring a Lien Challenge." As explained in the Omnibus Reply that statement is not correct.

WHEREFORE, the Committee respectfully requests that the Court deny the Motion, grant the Section 926(a) Motion, and grant such other and further relief as the Court deems appropriate.

Dated: June 27, 2019
By: */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: */s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Alberto J. E. Añeses Negrón, Esq. (USDC - PR 302710)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
aaneses@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

11