Resolution.

SECTION 1309.   Headings.  The section headings contained herein are for reference purposes only and will not affect in any way the meaning or interpretation of this Resolution.

SECTION 1310.   Conflict.  All resolutions or parts of resolutions or other proceedings of the System in conflict herewith be and the same are repealed insofar as such conflict exists.

SECTION 1311.   Governing Law.  This Resolution shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth; provided, however, that the formalities leading to the creation of the trusts contained in this Resolution shall be governed by the laws of the State of New York and, provided further, to the maximum extent permitted by applicable law, the rights, duties, privileges and immunities of the Fiscal Agent, any paying agent and Bond Registrar, shall be governed by the law of the jurisdiction in which its Corporate Trust Office is located.

SECTION 1312.   Notices.  Any notice, demand, direction, request or other instrument authorized or required by this Resolution to be given to or filed with the System or the Fiscal Agent shall be deemed to have been sufficiently given or filed for all purposes of this Resolution if and when delivered:

To the System: Employees Retirement System of the Government of the Commonwealth of Puerto Rico
P.O. Box 42003
San Juan, Puerto Rico 00940

437 Ponce de León Avenue
Stop 32½
Hato Rey, Puerto Rico 00918

Telephone:(787) 754-4545
Fax:      (787) 250-7251
Attn.:    Administrator

To the Fiscal Agent:   The Bank of New York
101 Barclay Street
Floor 7W
New York, New York 10286

Telephone:(212) 815-6955
Fax:      (212) 815-5595 or 5596
Attn.:    Northern Municipals Department

The System or the Fiscal Agent by notice to the other may designate additional or different addresses for subsequent notices or communications.  Notwithstanding the foregoing, any notice, demand, request or other instrument to be given or filed with the Fiscal Agent shall be effective only upon receipt by the Fiscal Agent.

The Fiscal Agent shall have the right, but shall not be required, to rely upon and comply with instructions and directions sent by e-mail, facsimile and other similar unsecured electronic methods by persons believed by the Fiscal Agent to be authorized to give instructions and directions on behalf of the System.  The Fiscal Agent shall have no duty or obligation to verify or confirm that the person who sent such instructions or directions is, in fact, a person authorized to give instructions or directions on behalf of the System; and the Fiscal Agent shall have no liability for any losses, liabilities, costs or expenses incurred or sustained by the System as a result of such reliance upon or compliance with such instructions or directions.  The System agrees to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Fiscal Agent, including without limitation the risk of the Fiscal Agent acting on unauthorized instructions, and the

risk of interception and misuse by third parties.

SECTION 1313.   Jury Trial Waiver.   EACH PARTY HERETO, AND EACH BONDOWNER AND BENEFICIARY BY ITS ACCEPTANCE OF THE BENEFITS OF THIS RESOLUTION, HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS RESOLUTION.

SECTION 1314.   Effective Date.  This Resolution shall take effect immediately upon its adoption.

BH-ERS-EX-008856

EXHIBIT A

## SECURITY AGREEMENT

This SECURITY AGREEMENT, dated as of _____, 2008, is by and between the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "Debtor") and Owners (this and other capitalized terms used herein and not otherwise defined herein shall have the meanings given to them in the Resolution referenced below) from time to time of the Pension Funding Bonds of the Debtor (the "Pension Funding Bonds") issued from time to time pursuant to the provisions of the Debtor's Resolution No. __, adopted on _____, 2008, as amended and supplemented from time to time (the "Resolution"), and other Beneficiaries, which Owners and Beneficiaries are represented for purposes of this Security Agreement by The Bank of New York, as fiscal agent under the Resolution (the "Secured Party"). Capitalized words not defined herein shall have the meaning ascribed to them in the Resolution.

In order to provide security for the Debtor's payment of principal of, premium (if any) and interest on its Pension Funding Bonds and payment to Beneficiaries and the Fiscal Agent in accordance with their respective terms and the terms of the Resolution, Debtor hereby grants to the Secured Party a security interest in all Revenues; all right, title and interest of the System in and to Revenues, and all rights to receive the same; the Funds, Accounts, and Subaccounts held by the Fiscal Agent, and moneys and securities and, in the case of the Debt Service Reserve Account, Reserve Account Cash Equivalents, from time to time held by the Fiscal Agent under the terms of this Resolution, subject to the application thereof as provided in the Resolution; any and all other rights and real or personal property of every kind and nature from time to time hereafter pledged and assigned by the System to the Fiscal Agent as and for additional security for the Bonds and Parity Obligations; and, any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property mentioned described herein, including, without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Remedies for failure of the Debtor to make timely payment of principal of, premium (if any) and interest on the Pension Funding Bonds or failure of the Debtor to fulfill its other covenants contained in the Resolution for the benefit of the Owners of the Pension Funding Bonds are as set forth in the Resolution.

The Debtor shall cause UCC financing statements and continuation statements to be filed, as appropriate, and the Secured Party shall not be responsible for any UCC filings.

**EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By : _____
　　　　　　　Name and Title:

THE BANK OF NEW YORK, as Fiscal Agent under the Resolution

By : _____
　　　　　　　Name and Title:

V-32

*EXHIBIT B*

**DEFINITIONS**

*The following terms shall, for all purposes of this Resolution, have the following meanings, unless the context shall clearly indicate some other meaning:*

**Administrator** shall mean the Administrator of the System pursuant to the Act.

**Account or Accounts** shall mean any account or accounts, including, without limitation, bank, deposit or securities accounts, as the case may be, established and created pursuant to this Resolution, but does not include any escrow or other fund or account established or created pursuant to Section 1301.

**Accreted Amount** shall mean, on any date and with respect to any particular Capital Appreciation Bond or Convertible Capital Appreciation Bond, the initial principal amount at issuance of such Bond plus accretion of principal, based on compounding on each Accretion Date to the date of maturity thereof (with respect to a Capital Appreciation Bond) or to the Current Interest Commencement Date (with respect to a Convertible Capital Appreciation Bond) at the same interest rate as shall produce a compounded amount on such date of maturity or Current Interest Commencement Date, as applicable, equal to the principal amount thereof on such date; *provided*, that Accreted Amount on any day which is not a Accretion Date shall be determined on the assumption that the Accreted Amount accrues in equal daily amounts between Accretion Dates.

**Accretion Date** shall mean the date on which interest on a Capital Appreciation Bond or Convertible Capital Appreciation Bond is compounded and added to principal in the form of Accreted Amount, as set forth in the related Supplemental Resolution.

**Accrued Payment Obligation** shall mean, with respect to any Class of Bonds and the related Parity Obligations or Subordinate Obligations, and for any Bond Year, as of any date, the aggregate of the Principal Installments of and interest on such Bonds, and the principal and interest components of such related Parity Obligations or Subordinate Obligations, due and unpaid during such Bond Year (or, in the case of Debt Service Account deposits, for Bonds with scheduled payments due more frequently that semi-annually, the current Bond Year and the first three months of the following Bond Year); *provided* that in the case of Adjustable Rate Bonds or Bonds other than fixed rate Bonds denominated in U.S. dollars, the interest shall be based on the Assumed Interest Rate.   For purposes of this definition, principal, interest or other obligations for the payment for which the Fiscal Agent shall hold in escrow sufficient funds in a segregated account (including the Capitalized Interest Account and any escrow for the payment of Bonds that are defeased as provided in this Resolution) shall not be taken into consideration.

**Act** shall mean Act No. 447 of the Legislative Assembly of Puerto Rico, approved May 15, 1951, as amended and supplemented.

**Adjustable Rate** shall mean a variable, adjustable, convertible or similar interest rate or rates to be borne by a Series of Bonds or any one or more maturities within a Series of Bonds, for which the method of computing such variable interest rate is specified in the Supplemental Resolution authorizing such Bonds; *provided*, that the related Supplemental Resolution shall specify (i) whether a Qualified Hedge is to be applicable to such Adjustable Rate Bonds and, if not, or to the extent not so applicable, a Maximum Interest Rate, and (ii) the method or methods for determining the Adjustable Rate and the frequency of change thereof; and *provided further*, that the method or methods for determining the Adjustable Rate may include the selection of such rate by an indexing agent or remarketing agent as provided in an agreement between the System and such agent, the utilization of an index or indices as described in the related Supplemental Resolution, the utilization of an auction as described in the related Supplemental Resolution, or such other standard or standards set forth by the System in the related Supplemental Resolution or any combination of the foregoing; and *provided further*, that the Adjustable Rate may never exceed any Maximum Interest Rate related thereto or, if none, the Legal Maximum Interest Rate.

**Adjustable Rate Bond** shall mean any Bond which bears an Adjustable Rate, *provided* that a Bond the interest rate on which shall have been fixed for the remainder of the term thereof shall no longer be deemed to bear interest at an Adjustable Rate.

**Amortized Value**, when used with respect to Investment Obligations purchased at a premium above or a discount below par, shall mean the value at any given date, as calculated by the Fiscal Agent, obtained by dividing the total premium or discount at which such Investment Obligations were purchased by the number of interest payment dates remaining to maturity on such Investment Obligations after such purchase and by multiplying the amount so calculated by the number of interest payment dates having passed since the date of such purchase; and (i) in the case of Investment Obligations purchased at a premium, by deducting the product thus obtained from the purchase price, and (ii) in the case of Investment Obligations purchased at a discount, by adding the product thus obtained to the purchase price.

**Ancillary Bond Facility** shall mean each Credit Facility, each Liquidity Facility, each Qualified Hedge, and each Standby Purchase Agreement.

**Ancillary Facility Providers** shall mean, collectively, each Credit Facility Provider, each Liquidity Facility Provider, each Qualified Hedge Provider, and each Standby Purchase Facility Provider.

**Assumed Interest Rate** shall mean, for Adjustable Rate Bonds, (i) a fixed rate payable by the System under a related Qualified Hedge plus the fixed component of interest on the related Bonds, if any, not included in the payments to be made under the Qualified Hedge by the Qualified Hedge Provider, (ii) for any Qualified Hedge that shall provide for payments from the System that result in a capped rate on the Adjustable Rate Bonds, such capped rate, or (iii) for any Adjustable Rate Bonds that shall not be the subject of a Qualified Hedge, the lesser of the Maximum Interest Rate established therefor and the Legal Maximum Interest Rate. The Supplemental Resolution relating to Bonds other than fixed rate Bonds denominated in U.S. dollars may include other provisions for determining the Assumed Interest Rate.

**Authorized Officer** shall mean (i) in the case of the System, the Administrator, and when used with reference to any act or document, any other person authorized by resolution of the System to perform such act or sign such document (the Fiscal Agent may request that the System deliver an officers' certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Resolution), and (ii) in the case of the Fiscal Agent, any officer assigned to the Northern Municipals Department (or any successor division or unit) of the Fiscal Agent located at the Corporate Trust Office, or such other address as the Fiscal Agent may designate from time to time by notice to the

BH-ERS-EX-008858

System, who shall have direct responsibility for the administration of this Resolution, and for the purposes of the thirteenth sentence of Section 802 of this Resolution shall also include any other officer of the Fiscal Agent to whom any matter is referred because of such officer's knowledge of and familiarity with the particular subject.

**Beneficiaries** shall mean (i) the Owners of Bonds Outstanding, (ii) Credit Facility Providers and Liquidity Facility Providers as to which there are Parity Obligations or Subordinate Obligations outstanding, and (iii) Qualified Hedge Providers as to which there are Qualified Hedges outstanding.

**Bond** or **Bonds** shall mean the initial Series of Bonds and any additional Bonds authorized to be issued on a parity therewith pursuant to Section 202 or 708.

**Bondowner** shall mean any person who shall be the registered owner of any Outstanding Bond or Bonds.

**Bond Payment Date** shall mean each date on which Principal Installments of and/or interest on Bonds are due and payable by the System.

**Bond Year** shall mean a twelve-month period commencing on the second day of July in any calendar year and ending on the first day of July in the immediately succeeding calendar year.

**Business Day** shall mean any day other than (i) a Saturday or Sunday, or (ii) a day on which banking institutions in San Juan, Puerto Rico, New York, New York, or any city in which the principal office of the Fiscal Agent, Ancillary Facility Providers (if any), the Remarketing Agent (if any), the Tender Agent (if any), or the Auction Agent (if any) is located are authorized or required by law or executive order to remain closed.

**Capital Appreciation Bonds** shall mean the Bonds of any Series so designated in a Supplemental Resolution; *provided, however,* that the term "Capital Appreciation Bonds" shall only be used with respect to Bonds the interest on which is payable only at maturity or earlier redemption or acceleration of maturity, in amounts determined by reference to the Accreted Amount of each Bond.

**Capitalized Interest Account** shall mean the Capitalized Interest Account established pursuant to Section 502.

**Class** shall mean the designation of Bonds by whether they are Senior Bonds or Subordinated Bonds.

**Class Priority** shall mean, at any time that there shall be Subordinated Bonds Outstanding, and with respect to funding of Debt Service Accounts and Debt Service Reserve Accounts pursuant to Section 504, and payment of Bonds upon an Event of Default under Article XI, funding or payment of the total amount then owing, as applicable, in the order of Senior Bonds and Parity Obligations first until full funding or payment thereof, followed by Subordinated Bonds and Subordinate Obligations of the highest payment priority next until full funding or payment thereof.

**Code** shall mean the United States Internal Revenue Code of 1986, as amended.

**Commonwealth** shall mean the Commonwealth of Puerto Rico.

**Convertible Capital Appreciation Bonds** shall mean Bonds which, on or prior to the Current Interest Commencement Date, have the characteristics of Capital Appreciation Bonds and, after the Current Interest Commencement Date, have the characteristics of Current Interest Bonds, in each case with such further terms and conditions as may be designated therefor in the Supplemental Resolution authorizing such Bonds.

**Corporate Trust Office** shall mean the office of the Fiscal Agent at which at any particular time its corporate trust business shall be principally administered, which office at the date of the adoption of this Resolution is located at 101 Barclay Street, 7W, New York, New York 10286, Attention: Northern Municipals Department, or such other address as the Fiscal Agent may designate from time to time by notice to the System, or the principal corporate trust office of any successor Fiscal Agent (or such other address as such successor Fiscal Agent may designate from time to time by notice to the System).

**Covered Payroll** shall mean the payroll of all employees of an Employer, other than its irregular and transitory employees, and other than the employees who are covered by one of the Commonwealth's other retirement systems (it being understood that the payroll of employees covered by the System's defined contribution plan constitutes Covered Payroll).

**Credit Facility** shall mean each irrevocable letter of credit, bond insurance policy, surety bond, loan agreement, or other agreement, facility or insurance or guaranty arrangement issued or extended by a bank, a trust company, a national banking association, an organization subject to registration with the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956 or any successor provisions of law, a federal branch pursuant to the International Banking Act of 1978 or any successor provisions of law, a savings bank, a savings and loan association, a Federal Home Loan Bank, a corporation, an insurance company or association chartered or organized under the laws of any state of the United States of America, the Government National Mortgage Association or any successor thereto, Fannie Mae, the Federal Home Loan Mortgage Corporation or any successor thereto, or any other federal or state agency or instrumentality approved by the System, which secures the payment of any Bond, or pursuant to which the System is entitled to obtain moneys to pay, in the Currency in which the Bonds of such Series are payable, the principal or Redemption Price of Bonds (or any related Qualified Hedges) due in accordance with their respective terms plus accrued interest thereon to the date of payment thereof in accordance herewith and with the Supplemental Resolution authorizing such Bonds, whether or not the System is in default under this Resolution; *provided,* that use of a Credit Facility shall not result, at the time of delivery of the Credit Facility, in a reduction in the Rating of any Bonds Outstanding; and *provided further,* that a substitute Credit Facility may be obtained from time to time (i) which shall contain the same material terms as set forth in the Credit Facility for which substitution is made, and (ii) will not, in and of itself, result in a Rating of the related Bonds lower than those which then prevailed.

**Credit Facility Provider** shall mean the Person who has executed a Credit Facility with the System, or otherwise has provided a Credit Facility at the request of the System, for the benefit of any of the Bonds.

**Currency** shall mean Dollars or Foreign Currency or Currency Unit.

**Currency Unit** shall mean a composite currency or currency unit the value of which is determined by reference to the value of the currencies of any group of countries.

**Current Interest Bonds** shall mean Bonds that bear interest which is not compounded but is payable on a current basis on established dates prior to maturity.

BH-ERS-EX-008859

**Current Interest Commencement Date** shall mean the date established prior to the issuance of each Series of Convertible Capital Appreciation Bonds, at which time the periodic compounding of interest ceases and on and after which date interest is payable currently on the Accreted Amounts on the next ensuing interest payment dates.

**Debt Service Account** shall mean the Account by that name established by Section 502.

**Debt Service Reserve Account** shall mean the Account by that name established by Section 502.

**Debt Service Reserve Requirement** shall mean, as of any date of calculation, fifty percent (50%) of the average of the Accrued Payment Obligation as of the first Business Day of each Bond Year for each of the following five (5) Bond Years.

**Defeasance Obligations** shall mean any of the following which are not callable or redeemable at the option of the issuer thereof, if and to the extent the same are at the time legal for the investment of the System's funds:

    (i)     Government Obligations;

    (ii)    Defeased Municipal Obligations;

    (iii)   certificates, depositary receipts or other instruments which evidence a direct ownership interest in obligations described in clauses (i) or (ii) above or in any specific interest or principal payments due in respect thereof; *provided, however,* that the custodian of such obligations or specific interest or principal payments shall be a bank or trust company organized under the laws of the United States of America, of the Commonwealth, or of any state or territory of the United States of America or of the District of Columbia, with a combined capital stock, surplus and undivided profits of at least $50,000,000 or the custodian is appointed by or on behalf of the United States of America; and *provided further, however,* that except as may be otherwise required by law, such custodian shall be obligated to pay to the holders of such certificates, depositary receipts or other instruments the full amount received by such custodian in respect of such obligations or specific payments and *shall not be permitted to make any deduction therefrom;* or

    (iv)   a share or interest in a mutual fund, partnership or other fund wholly comprised of obligations described in clauses (i) through (v) above.

**Defeased Municipal Obligations** shall mean any bonds or other obligations of any state or territory of the United States of America, of the Commonwealth, or of any agency, instrumentality or local governmental unit of any such state or territory or Commonwealth which are not callable at the option of the obligor prior to maturity or as to which irrevocable instructions have been given by the obligor to call on the date specified in the notice; and

    (i)     which are rated, based on an irrevocable escrow account or fund (the "escrow"), in the highest Rating category of any Rating Agency; or

    (ii)    (a) which are fully secured as to principal, interest and redemption premium, if any, by an escrow consisting only of cash or Government Obligations, which escrow may be applied only to the payment of such principal and interest and redemption premium, if any, on such bonds or other obligations on the maturity date or dates thereof or the specified redemption date or dates pursuant to such irrevocable instructions, as appropriate, and (b) which escrow is sufficient, without reinvestment, as verified by a nationally recognized independent certified public accountant, or other nationally recognized verification agent acceptable to the Fiscal Agent, to pay principal of and interest and redemption premium, if any, on the bonds or other obligations described in this paragraph on the maturity date or dates specified in the irrevocable instructions referred to above, as appropriate.

**Dollar** or **$** shall mean a dollar or other equivalent unit in such coin or currency of the United States as at the time of payment is legal tender for the payment of public and private debts.

**Employers** shall mean, pursuant to the Act, the government of Puerto Rico, or any Public Enterprise, or municipality, but shall exclude, however, those subsidiary enterprises of government instrumentalities whose employees, in the judgment of the Board of Trustees of the System, may not have a clear relationship of employee and employer with regard to the Commonwealth.

**Employers' Contributions** shall mean the contributions paid from and after the date hereof that are made by the Employers and any assets in lieu thereof or derived thereunder which are payable to the System pursuant to Sections 2-116, 3-105 and 4-113 of the Act.

**Employers' Contribution Rate** shall mean the rate of contribution of each Employer to the System, initially 9.275% of the Covered Payroll.

**Event of Default** shall mean an event described in paragraph 1 of Section 1101.

**Financing Costs** shall mean, with respect to any Bonds, all costs of issuance and any other fees, discounts, expenses and costs related to issuing, securing and marketing the Bonds.

**First Supplemental Resolution** shall mean the First Supplemental Pension Funding Bond Resolution, adopted by the System on January 24, 2008, in connection with the issuance of the Series A Bonds.

**Fiscal Agent** shall mean the bank, trust company or national banking association appointed pursuant to Section 801, and its successor or successors and any other bank, trust company or national banking association which may at any time be substituted in its place pursuant to the provisions of this Resolution.

**Fiscal Year** shall mean the fiscal year of the Commonwealth Government beginning July 1 of each calendar year.

**Fitch** shall mean Fitch Ratings, and its successors and assigns.

**Fixed Tender Bond** shall mean any Bond, not constituting an Adjustable Rate Bond, which by its terms must be tendered by the Owner thereof for purchase by or for the account of the System prior to the stated maturity thereof.

BH-ERS-EX-008860

**Foreign Currency** shall mean a currency issued by the government of any country other than the United States or a composite currency or currency unit the value of which is determined by reference to the values of the currencies of any group of countries.

**Fund** or **Funds** shall mean any fund or funds established and created pursuant to this Resolution, but does not include any escrow or other fund or account established or created pursuant to Section 1301.

**GDB** shall mean Government Development Bank for Puerto Rico and its successors and permitted assigns.

**General Reserve Account** shall mean the Account by that name established by Section 509.

**Government Obligations** shall mean direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States of America and entitled to the full faith and credit thereof.

**Interest Subaccount** shall mean the Interest Subaccount established in the Debt Service Account by Section 502.

**Investment Obligations** shall mean and include any of the following securities, if and to the extent the same are at the time legal for investment of the System's funds created by this Resolution for the benefit of the Bondowners:

(i)      Defeasance Obligations;

(ii)     Defeased Municipal Obligations;

(iii)    public housing bonds issued by public agencies or municipalities and fully secured as to the payment of both principal and interest by a pledge of annual contributions under an annual contributions contract or contracts with the United States of America; temporary notes, preliminary loan notes or project notes issued by public agencies or municipalities, in each case fully secured as to the payment of both principal and interest by a requisition or payment agreement with the United States of America; or obligations issued by any state or territory or any public agencies or municipalities which are obligations rated in the highest Rating category by a Rating Agency;

(iv)     direct and general obligations of any state or territory of the United States to the payment of the principal of and interest on which the full faith and credit of such jurisdiction is pledged which obligations are rated in either of the two highest Rating categories by a Rating Agency;

(v)      direct obligations of, or obligations guaranteed as to timely payment of principal and interest by, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, or the Federal Farm Credit System;

(vi)     prime commercial paper of a corporation incorporated under the laws of any state or territory of the United States of America, rated "P-1", "A-1" or "F1" by Moody's, Standard & Poor's or Fitch, respectively;

(vii)    money market shares of a diversified open-end management investment company

as defined in the Investment Company Act of 1940, which company has been rated "A" or better by Moody's, Standard & Poor's or Fitch or money market accounts of the Fiscal Agent or any bank or trust company organized under the laws of the United States or any state thereof, which has a combined capital and surplus of not less than $50,000,000;

(viii)   deposits evidenced by certificates of deposit issued by banks (which may include the Fiscal Agent) that are members of the Federal Deposit Insurance Corporation, provided that such time deposits are fully secured by obligations described in clause (i) or (ii) above, which such obligations at all times have a market value (exclusive of accrued interest) at least equal to the amount of such bank deposits so secured, including interest;

(ix)     repurchase agreements relating to securities of the type specified in clauses (i) and (ii) above, *provided* that such securities in an amount at least equal to the face value of such agreements shall be delivered as security for such agreements to (or for) the account of the Fiscal Agent to be held therein during the term of the agreements;

(x)      investment agreements, secured or unsecured, with any Person whose debt securities are rated at least "AA" (or equivalent rating of short-term obligations if the investment is for a period not exceeding one year) by Standard & Poor's or equivalent Rating by Moody's, Fitch or other Rating Agency; and

(xi)     any other obligations conforming to System guidelines for investment as provided by the System to the Fiscal Agent from time to time, so long as such obligations are rated at least in the two highest Rating Categories of each of the Rating Agencies and are approved by the applicable Credit Facility Provider.

**Legal Maximum Interest Rate** shall mean the highest rate of interest or highest true interest cost that by law may be borne by any Bonds; at present, 12% per annum.

**Liquidity Facility** shall mean an irrevocable letter of credit, surety bond, loan agreement, Standby Purchase Agreement, line of credit or other agreement or arrangement issued or extended by a bank, a trust company, a national banking association, an organization subject to registration with the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956 or any successor provisions of law, a federal branch pursuant to the International Banking Act of 1978 or any successor provisions of law, a savings bank, a savings and loan association, a Federal Home Loan Bank, an insurance company or association chartered or organized under the laws of the Commonwealth or any state of the United States of America, the Government National Mortgage Association or any successor thereto, Federal National Mortgage Association or any successor thereto, the Federal Home Loan Mortgage Corporation or any successor thereto, or any other government sponsored enterprise or federal, state or Commonwealth agency or instrumentality approved by the System, pursuant to which the System is entitled to obtain moneys upon the terms and conditions contained therein for the purchase or redemption of Bonds tendered for purchase or redemption in accordance with the terms hereof and of the Supplemental Resolution authorizing such Bonds; *provided*, that the use of the Liquidity Facility shall not result, at the time it is delivered, in a reduction in the Rating of any Bonds Outstanding; and *provided further* that a substitute Liquidity Facility may be obtained from time to time (i) which shall contain the same material terms as set forth in the Liquidity Facility for which

BH-ERS-EX-008861

substitution is being made, and (ii) will not, in and of itself, result in a Rating of any Bonds Outstanding lower than those which then prevailed.

**Liquidity Facility Provider** shall mean the Person who has executed a Liquidity Facility with the System, or otherwise has provided a Liquidity Facility at the request of the System, for the benefit of any of the Bonds.

**Maturity Amount** shall mean the Accreted Amount of any Capital Appreciation Bond or Convertible Capital Appreciation Bond due as of the stated maturity thereof.

**Maximum Interest Rate** shall mean, with respect to any particular Adjustable Rate Bond, a numerical rate of interest, which shall be set forth in the Supplemental Resolution authorizing such Bond, that as a matter of contract shall be the maximum rate at which such Bond may bear interest at any time; provided, that the Maximum Interest Rate may not exceed the Legal Maximum Interest Rate.

**Moody's** shall mean Moody's Investors Service, and its successors and assigns.

**Operating Expenses** shall mean the reasonable out-of-pocket expenses of the System related to the issuance of the Bonds (including, without limitation, the out-of-pocket costs of preparation of accounting and other reports, costs of maintenance of the ratings on Bonds, and insurance premiums, deductibles and retention payments,), legal fees, fees and expenses incurred for professional consultants and fiduciaries, and regularly scheduled fees payable under each Credit Facility and Liquidity Facility. Whenever a requisition for "Operating Expenses" from the Revenue Account shall be made pursuant to Section 505, a certificate of an Authorized Officer of the System, stating that such amount constitutes "Operating Expense" as defined in this Resolution, shall be delivered to the Fiscal Agent. Operating Expenses shall not include those expenses owed to the Fiscal Agent under Section 804.

**Opinion of Counsel** shall mean an opinion signed by an attorney or firm of attorneys of recognized standing (who may be counsel to the System) of recognized standing in the field of law relating to municipal bonds selected by the System and satisfactory to the Fiscal Agent.

**Option Bond** shall mean any Bond which by its terms may be tendered by and at the option of the Owner thereof for redemption or purchase by (or for the account of) the System prior to the stated maturity thereof, or the maturity of which may be extended by and at the option of the Owner thereof.

**Original Principal Amount** shall mean the original principal amount of any Capital Appreciation Bond or Convertible Capital Appreciation Bond at the date of original issuance, as stated in the Supplemental Resolution relating to such bonds.

**Outstanding**, when used with reference to the Bonds as a whole or the Bonds of a Series, shall mean, as of any date, the Bonds or Bonds of such Series, as the case may be, theretofore or thereupon being delivered and issued under the provisions of this Resolution, except:

(i) any Bonds canceled by or surrendered for cancellation to the Fiscal Agent at or prior to such date;

(ii) Bonds deemed to have been paid as provided in Section 1301;

(iii) Bonds in lieu of or in substitution for which other Bonds shall have been authenticated and delivered pursuant to Article III or Section 1007;

(iv) Option Bonds tendered or deemed tendered in accordance with the provisions of the Supplemental Resolution authorizing such Bonds on the applicable tender date, if the purchase price thereof and interest thereon through such date shall have been paid or amounts are available and set aside for such payment as provided in such Supplemental Resolution, except to the extent such tendered Option Bonds are held by the System or a Credit Facility Provider or a Liquidity Facility Provider and/or thereafter may be resold pursuant to the terms thereof and of such Supplemental Resolution; and

(v) as may be provided with respect to such Bonds by the Supplemental Resolution authorizing such Bonds;

*provided, however,* that in determining whether the Owners of the requisite principal amount of Outstanding Bonds have given any request, demand, authorization, direction, notice, consent or waiver hereunder, (i) Bonds owned by the System shall be disregarded and deemed not to be Outstanding, except that, in determining whether the Fiscal Agent shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Bonds which an Authorized Officer of the Fiscal Agent knows to be so owned shall be so disregarded. Bonds so owned which have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Fiscal Agent the pledgee's right so to act with respect to such Bonds and that the pledgee is not the System, and (ii) the principal amount of a Convertible Capital Appreciation Bond or a Capital Appreciation Bond that shall be deemed Outstanding for such purposes shall be the Accreted Amount thereof except as otherwise provided in this Resolution.

**Owner or Owner of Bonds** shall mean each Bondowner.

**Parity Hedge Obligations** shall mean, as allocated to a Series of Bonds pursuant to the terms of the related Supplemental Resolution, fixed and scheduled payments by the System under Qualified Hedges. Parity Hedge Obligations shall not include, among other things, any costs, indemnities, termination payments or similar non-recurring amounts, or any amortization of such non-recurring amounts.

**Parity Obligations** shall mean, collectively, all Parity Reimbursement Obligations and Parity Hedge Obligations.

**Parity Reimbursement Obligations** shall mean, as allocated to a Series of Bonds pursuant to the related Supplemental Resolution, fixed and scheduled payments due from the System to any Credit Facility Provider or Liquidity Facility Provider, as provided by Section 206, whether such reimbursements or payments are made to the Credit Facility Provider or Liquidity Facility Provider as a Bondowner, as a subrogee or otherwise. Parity Reimbursement Obligations shall include, among other things, reimbursements of direct-pay letters of credit to be drawn on each principal and/or interest payment date.

BH-ERS-EX-008862

**Person** or **Persons** shall mean an individual, partnership, limited liability partnership, corporation, limited liability corporation, trust or unincorporated organization and a government or agency or political subdivision or branch thereof.

**Pledged Property** shall mean the following, collectively (but without duplication), except as otherwise may be provided with respect to a Series of Bonds by the Supplemental Resolution authorizing such Bonds:

    1.    All Revenues.

    2.    All right, title and interest of the System in and to Revenues, and all rights to receive the same.

    3.    The Funds, Accounts, and Subaccounts held by the Fiscal Agent, and moneys and securities and, in the case of the Debt Service Reserve Account, Reserve Account Cash Equivalents, from time to time held by the Fiscal Agent under the terms of this Resolution, subject to the application thereof as provided in this Resolution and to the provisions of Sections 1301 and 1303.

    4.    Any and all other rights and personal property of every kind and nature from time to time hereafter pledged and assigned by the System to the Fiscal Agent as and for additional security for the Bonds and Parity Obligations.

    5.    Any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property mentioned described in paragraphs (1) through (4) above, including, without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

**Principal Installment** shall mean, as of any date with respect to any Series, so long as any Bonds thereof are Outstanding, the sum of (i) the principal amount and Accreted Amount (to the extent applicable) of Bonds of such Series (including the principal amount of Option Bonds tendered for payment and not purchased) due (or so tendered for payment and not purchased) on such date for which no Sinking Fund Installments have been established, and (ii) the unsatisfied balance (determined as provided in Section 507) of any Sinking Fund Installments due on such date for Bonds of such Series, together with the premiums, if any, payable upon the redemption of such Bonds by application of such Sinking Fund Installments.

**Principal Subaccount** shall mean the Principal Subaccount established in the Debt Service Account by Section 502.

**Public Enterprise** shall mean any government instrumentality or public corporation of the Commonwealth.

**Qualified Hedge** shall mean, with respect to particular Bonds, (i) any financial arrangement (a) which is entered into by the System with an entity that is a Qualified Hedge Provider at the time the arrangement is entered into, (b) which is a cap, floor or collar, forward rate, future rate, swap (such swap may be based on an amount equal either to the principal amount of such Bonds as may be designated or a notional principal amount relating to all or a portion of the principal amount of such Bonds), asset, index, Currency, price or market-linked transaction or agreement, other exchange or rate protection transaction agreement, other similar transaction (however designated), or any combination thereof, or any option with respect to any of the foregoing, executed by the System, and (c) which has been designated as a Qualified Hedge with respect to such Bonds in a written determination signed by an Authorized Officer and delivered to the Fiscal Agent, and (ii) any Credit Facility securing the obligations of the System under any financial arrangement described in clause (i) above. Each Qualified Hedge shall provide that the System and the Qualified Hedge Provider shall provide not less than ten-days' prior written notice of any amendment to the Fiscal Agent.

**Qualified Hedge Provider** shall mean a Person whose long-term obligations, other unsecured, long-term obligations, financial program rating, counterparty rating, or claims paying ability, or whose payment obligations under an agreement that would be a Qualified Hedge are guaranteed by an entity whose long term debt obligations, other unsecured long term obligations, financial program rating, counterparty rating, or claims paying ability, are rated, or whose payment obligations under an interest rate exchange agreement are collateralized in such manner as to cause such agreement to be rated, at the time of the execution of such Qualified Hedge, either (i) at least as high as the third highest Rating Category of each Rating Agency, but in no event lower than any Rating Category designated by any such Rating Agency for the Bonds subject to such Qualified Hedge (without reference to bond insurance, if any), or (ii) any such lower Rating Categories which each such Rating Agency indicates in writing to the System and the Fiscal Agent will not, by itself, result in a reduction or withdrawal of its Rating (without reference to bond insurance, if any) on the Outstanding Bonds, and (iii) a Person whose payment obligations under an interest rate exchange agreement are subject to collateralization requirements that, as evidenced in writing to the System and the Fiscal Agent by each Rating Agency, will not, by itself, result in a reduction or withdrawal of its Rating (without reference to bond insurance, if any) on the Outstanding Bonds.

**Rating** shall mean a rating published by a Rating Agency with respect to any or all Bonds. Any provision of this Resolution that specifies that an action may not be taken if it shall result in a reduction, suspension or withdrawal of the Rating of the Bonds, with respect to any Bonds that are the subject of a Credit Facility, shall mean the Rating of such Bonds without taking into account the credit enhancement provided by such Credit Facility.

**Rating Agency** shall mean each nationally recognized statistical rating organization then maintaining a rating on the Bonds at the request of the System.

**Rating Category** shall mean one of the generic rating categories of any Rating Agency without regard to any refinement or gradation of such rating within any such category by a numerical modifier or otherwise.

**Record Date** shall mean, with respect to each payment of interest on a Bond, each date specified as the "record date" therefor in the Supplemental Resolution authorizing such Bond, or if no such date is specified, the 15th day of the month preceding the date of such payment.

**Redemption Account** shall mean the Account by that name established by Section 502.

**Redemption Price** shall mean, when used with respect to a Bond (other than a Convertible Capital Appreciation Bond or a Capital Appreciation Bond) or a portion thereof to be redeemed, the principal amount of such Bond or such portion thereof plus the applicable premium, if any, and, when used with respect to a Convertible Capital Appreciation Bond or a Capital Appreciation Bond, shall mean the Accreted Amount on

BH-ERS-EX-008863

the date of redemption of such Bond (or portion thereof) plus the applicable premium, if any, payable in either case upon redemption thereof, pursuant to this Resolution and the applicable Supplemental Resolution.

**Refunding Bonds** shall mean all Bonds authenticated and delivered on original issuance pursuant to Section 204 or thereafter authenticated and delivered in lieu of or in substitution for any such Bond pursuant to this Resolution and the applicable Supplemental Resolution.

**Reserve Account Cash Equivalent** shall mean a letter of credit, insurance policy, surety, guaranty or other security arrangement provided to the Fiscal Agent as a substitute for the deposit of cash and/or Investment Securities, or another Reserve Account Cash Equivalent, in the Debt Service Reserve Account pursuant to Section 506. Each such arrangement shall be provided by a Person whose claims paying ability has been assigned a rating from each Rating Agency at least equal to the then existing rating on the Bonds or whose unsecured, long-term debt securities are rated by each Rating Agency at least equal to the then existing Rating on the Bonds (or the highest short-term rating if the Reserve Account Cash Equivalent has a remaining term measured from the date it is provided not exceeding one year).

**Resolution** shall mean this Bond Resolution, as from time to time amended or supplemented by Supplemental Resolutions.

**Revenue Account** shall mean the Account by that name established by Section 502.

**Revenues** shall mean the following, collectively (but without duplication), except as otherwise may be provided with respect to a Series of Bonds by the Supplemental Resolution authorizing such Bonds:

1. All Employers' Contributions received by the System or the Fiscal Agent.

2. With respect to any particular Bonds, the proceeds of any draw on or payment under any Credit Facility which is intended for the payment of such Bonds, but only for purposes of such payment and *not for other purposes of this Resolution*.

3. Net amounts received by the System pursuant to a Qualified Hedge.

4. Income and interest earned and gains realized in excess of losses suffered by any Fund, Account, or Subaccount held by the Fiscal Agent under the terms of this Resolution, subject to the provisions of Sections 1301 and 1303.

5. Any other revenues, fees, charges, surcharges, rents, proceeds or other income and receipts received by or on behalf of the System or by the Fiscal Agent, lawfully available for the purposes of this Resolution and deposited by or on behalf of the System or by the Fiscal Agent in any Fund, Account, or Subaccount held by the Fiscal Agent under the terms of this Resolution, subject to the provisions of Sections 1301 and 1303.

**Security Agreement** means the Security Agreement dated as of January 31, 2008 between the System and the Fiscal Agent, in the form appended hereto as Appendix A.

**Senior Bonds** shall mean the Series A Bonds and any Bonds of a Class the priority of payment of which under this Resolution is equal with that of the Series A Bonds.

**Serial Bonds** shall mean Bonds which have no Sinking Fund Installment.

**Series** shall mean all of the Bonds authenticated and delivered on original issuance identified pursuant to a Supplemental Resolution as a separate series of Bonds, and any Bonds thereafter authenticated and delivered in lieu of or, in substitution therefor pursuant to Article III or Section 1007, regardless of variations in maturities, principal amounts, interest rates or other provisions.

**Series A Bonds** shall mean the System's Senior Pension Funding Bonds, Series A, the initial Series of Bonds to be issued under this Resolution.

**Sinking Fund Installment** shall mean, when used with respect to any Series of Bonds, the amount of principal or Accreted Amount, as the case may be, due prior to maturity on Bonds of a given maturity on any particular due date as specified in the Supplemental Resolution pursuant to which *such Series was issued*.

**Standard & Poor's** shall mean Standard & Poor's Ratings Service, a division of The McGraw-Hill Companies, Inc., and its successors and assigns.

**Standby Purchase Agreement** shall mean an agreement by and between the System and another Person pursuant to which such Person is obligated to purchase Option Bonds or Fixed Tender Bonds tendered for purchase.

**Standby Purchase Provider** shall mean the Person who has executed a Standby Purchase Agreement with the System.

**Subaccount** or **Subaccounts** shall mean any subaccount or subaccounts, as the case may be, in each case which may be in the form of a separate account, established or created pursuant to this Resolution, but does not include any escrow or other fund or account established or created pursuant to Section 1301.

**Subordinated Bonds** shall mean Bonds of a Series, the priority of payment of which under this Resolution is subordinate to payment of the Senior Bonds.

**Subordinate Obligations** shall mean, as allocated to each Series of Bonds by Class pursuant to the terms of the related Supplemental Resolution, payment obligations to Persons of the type that otherwise would be classified under this Resolution as Parity Obligations but are subject instead, pursuant to the provisions of the applicable Supplemental Resolutions, to subordination to Parity Obligations under this Resolution on the terms and conditions set forth in such Supplemental Resolutions.

**Supplemental Resolution** shall mean any resolution supplemental to or amendatory of this Resolution or any Supplemental Resolution, adopted by the System in accordance with Articles IX and X.

**Term Bonds** shall mean Bonds having a single stated maturity date, some of which may have Sinking Fund Installments to be specified in a Supplemental Resolution.

The terms "hereby," "hereof," "hereto,"

BH-ERS-EX-008864

"herein," "hereunder," and any similar terms as used in this
Resolution, refer to this Resolution. All references to Articles and
Sections in this Resolution refer to the Articles and Sections hereof
unless otherwise expressly stated.

BH-ERS-EX-008865

Appendix VI

# EMPLOYEES RETIREMENT SYSTEM OF THE
# GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO

## THIRD SUPPLEMENTAL PENSION FUNDING BOND RESOLUTION

### authorizing

## SENIOR PENSION FUNDING BONDS
## SERIES C

Adopted on June __, 2008

BH-ERS-EX-008866

## TABLE OF CONTENTS

Page

ARTICLE I     DEFINITIONS AND STATUTORY AUTHORITY ..........................................1

SECTION 1.1.     Supplemental Resolution ....................................................1
SECTION 1.2.     Definitions.......................................................................1
SECTION 1.3.     Interpretation...................................................................2
SECTION 1.4.     Authority for this Supplemental Resolution .........................2

ARTICLE II    AUTHORIZATION OF SERIES C BONDS ........................................3

SECTION 2.1.     Principal Amount, Designation and Series ...........................3
SECTION 2.2.     Purposes ..........................................................................3
SECTION 2.3.     Details of Series C Bonds ..................................................3
SECTION 2.4.     Redemption ......................................................................4
SECTION 2.5.     Book-Entry Provisions.......................................................5
SECTION 2.6.     Form of Series C Bonds .....................................................6

ARTICLE III  DISPOSITION OF PROCEEDS OF SERIES C BONDS AND OTHER
FUNDS ..........................................................................................7

SECTION 3.1.     Deposits to Accounts or Transfers......................................7

ARTICLE IV  MISCELLANEOUS ..............................................................................8

SECTION 4.1.     Headings ..........................................................................8
SECTION 4.2.     Governing Law ................................................................8
SECTION 4.3.     Effective Date ..................................................................8
SECTION 4.4.     No Representations of Fiscal Agent ....................................8
SECTION 4.5.     Notices ............................................................................8
SECTION 4.6.     Invalid Provisions ..........................................................10

EXHIBIT A.         BOND FORMS ...........................................................................A-1

BH-ERS-EX-008867

# THIRD SUPPLEMENTAL PENSION FUNDING BOND RESOLUTION

## authorizing

## SENIOR PENSION FUNDING BONDS
## SERIES C

BE IT RESOLVED by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), as follows:

## ARTICLE 1

## DEFINITIONS AND STATUTORY AUTHORITY

SECTION 1.1. Supplemental Resolution. This Third Supplemental Pension Funding Bond Resolution (this "**Supplemental Resolution**") is supplemental to, and is adopted in accordance with, Article II and Article IX of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico Pension Funding Bond Resolution, as amended, adopted by the System on January 24, 2008 (the "General Resolution"). The General Resolution and this Supplemental Resolution are hereinafter collectively referred to as the "**Resolution**".

SECTION 1.2. Definitions. (a) All terms which are defined in *Exhibit B* of the General Resolution or Section 1.1 hereof, unless otherwise defined in subsection (b) of this Section, shall, for all purposes of this Supplemental Resolution, have the same meanings as such terms are given in *Exhibit B* of the General Resolution or Section 1.1 hereof, respectively, unless the context shall clearly indicate some other meaning.

(b)  The following terms shall, for all purposes of this Supplemental Resolution, have the following meanings, unless the context shall clearly indicate some other meaning:

"**Beneficial Owner**" means, whenever used with respect to a Series C Bond, the Person in whose name such Series C Bond is recorded as the beneficial owner of such Series C Bond by a Participant on the records of such Participant or such Person's subrogee.

"**Capital Appreciation Bonds**" mean the Series C Bonds in the aggregate principal amount of $_____ maturing July 1, _____ and July 1, _____, as to which interest is not paid on a current basis but is accrued and compounded as its Accreted Amount, and as more fully described in Section 2.3(a) below.

"**Cede & Co.**" means Cede & Co., the nominee of DTC, and any successor of DTC with respect to the Series C Bonds.

"**Current Interest Bonds**" means the Series C Bonds maturing July 1, \_\_\_\_\_ in the principal amount of $_____, bearing in interest at a rate of \_\_\_\_%, July 1, \_\_\_\_\_ in the principal amount of $_____, bearing interest at a rate of \_\_\_\_%, and July 1, \_\_\_\_ in the principal amount of $_____, bearing interest at a rate of \_\_\_\_%.

BH-ERS-EX-008868

**"Interest Payment Date"** means the first day of each month, commencing August 1, 2008; *provided*, that if any Interest Payment Date is a day that is not a Business Day, interest accrued to that day shall be paid on the next succeeding Business Day, without any additional interest on the amount so paid.

**"Participants"** means those broker-dealers, banks and other financial institutions for which DTC holds Series C Bonds as securities depositary.

**"Record Date"** means the fifteenth calendar day (whether or not a Business Day) of the month next preceding such Interest Payment Date.

**"Series C Bonds"** means the System's Senior Pension Funding Bonds, Series C, authorized by Article II of this Supplemental Resolution.

SECTION 1.3.  Interpretation.  Unless the context clearly otherwise requires, this Supplemental Resolution shall be interpreted in accordance with applicable provisions of the General Resolution.

SECTION 1.4.  Authority for this Supplemental Resolution.  This Supplemental Resolution is adopted pursuant to the provisions of the Act and the General Resolution.

BH-ERS-EX-008869

## ARTICLE II
## AUTHORIZATION OF SERIES C BONDS

SECTION 2.1. Principal Amount, Designation and Series. Pursuant to the provisions of the General Resolution, a Series of Bonds to be designated as "Senior Pension Funding Bonds," which Series shall be entitled to the benefit, protection and security of such provisions, is hereby authorized, further designated "Series C" in the aggregate initial principal amount at issuance of $_____. All of such Bonds shall constitute "Senior Bonds" under the Resolution.

SECTION 2.2. Purposes. The Series C Bonds are being issued for the purpose of providing the System with funds (i) to increase the total assets currently available to pay benefits under the System's defined benefit plan that has been closed to new participants since December 31, 1999, (ii) to reduce the unfunded accrued actuarial pension liability of this defined benefit plan, (iii) to fund the Debt Service Reserve Account, up to the Debt Service Reserve Requirement, and (iv) to pay Financing Costs, including but not limited to Costs of Issuance.

SECTION 2.3. Details of Series C Bonds. (a) The Series C Bonds shall be dated as of, and shall bear interest (or their interest shall compound) initially from, the initial date of delivery thereof and payment therefor, and shall mature in the years and in the principal amounts, and (except for Capital Appreciation Bonds) bear interest payable on each Interest Payment Date at the interest rates per annum, as set forth below:

$_____ **Capital Appreciation Bonds**

$_____ Capital Appreciation Bonds due July 1, _____ (maturity value $_____)
$_____ Capital Appreciation Bonds due July 1, _____ (maturity value $_____)

$_____ **Current Interest Term Bonds**

$_____ ____% Current Interest Term Bonds due July 1, _____
$_____ ____% Current Interest Term Bonds due July 1, _____
$_____ ____% Current Interest Term Bonds due July 1, _____

(b)    The Series C Bonds shall consist of the Current Interest Term Bonds and the Capital Appreciation Bonds.

(c)    Interest on the Current Interest Term Bonds, and Accreted Amount on the Capital Appreciation Bonds, shall be computed on the basis of a 360-day year of twelve 30-day months. Interest on the Current Interest Term Bonds shall be payable on each Interest Payment Date. Accreted Amounts on the Capital Appreciation Bonds shall be computed each July 1 and January 1, commencing January 1, _____.

(d)    The Series C Bonds shall be issuable in denominations of $5,000 principal amount ($5,000 maturity amount for Capital Appreciation Bonds) or integral multiples thereof. Each Series C Bond shall be lettered "CR" and shall be numbered consecutively from (1)

VI-3

BH-ERS-EX-008870

upwards in order of authentication by the Fiscal Agent or otherwise in such manner as the Fiscal Agent in its discretion shall determine.

(e)     The Series C Bonds shall be issued with the intention that interest thereon is included in gross income for federal income tax purposes.

(f)     *Except* as otherwise provided in Section 2.5, the principal of and premium, if any, on any Series C Bond shall be payable upon presentation and surrender of such Bond at the Corporate Trust Office of the Fiscal Agent. *Except* as otherwise provided in Section 2.5, interest on the Series C Bonds shall be paid by check or draft of the Fiscal Agent mailed to the Owners thereof as of the applicable Record Date at their respective addresses as shown on the registration books of the System maintained by the Fiscal Agent, or, at the option of the Owner of $1,000,000 or more in principal amount at maturity of the Series C Bonds, by written notice to the Fiscal Agent from such Owner at least fifteen (15) calendar days prior to the related payment date, by wire transfer.

SECTION 2.4. <u>Redemption</u>. (a)     The Series C Bonds due on July 1, _____, July 1, _____, and July 1, _____ shall be redeemed in part through application of Sinking Fund Installments as provided in Sections 403 and 507 of the General Resolution, in each case at a Redemption Price equal to the principal amount of such Bond or portion thereof to be redeemed together with interest accrued to the date fixed for redemption. Subject to the provisions of Section 507 of the General Resolution permitting amounts to be credited toward part or all of any Sinking Fund Installment, with respect to such Bond, there shall be due and the System shall in any and all events be required to pay on each Sinking Fund Installment date set forth in the following table the amount set opposite such date, and said amount is hereby established and shall constitute a Sinking Fund Installment for the retirement of such Bond; *provided, however*, that the principal amount set opposite the maturity date in said table shall be payable on such date and shall not constitute a Sinking Fund Installment:

| Sinking Fund Installment Date | Term Bonds due July 1, | Term Bonds due July 1, | Term Bonds due July 1, |
|---|---|---|---|
| | | | |

(b)     The Current Interest Term Bonds shall be subject to redemption at the option of the System from any source, including without limitation the proceeds of Refunding Bonds or other financing provided by the System, in whole or in part in any order of maturity determined by the System, at any time on and after July 1, _____, at a Redemption Price equal to the principal amount thereof plus interest, if any, accrued to the redemption date, without premium.

(c)     The Capital Appreciation Bonds shall be subject to redemption at the option of the System from any source, including without limitation the proceeds of Refunding Bonds or other financing provided by the System, in whole or in part in any order of maturity determined by the System, at any time on and after July 1, _____, at a Redemption Price equal to the Accreted Amount thereof, without premium.

BH-ERS-EX-008871

Section 2.5. Book-Entry Provisions. (a) *Except* as provided in subsection (d) of this Section, the Owner of all of the Series C Bonds shall be Cede & Co., as nominee for DTC, and the Series C Bonds shall be registered in the name of Cede & Co., as nominee for DTC. Payment of interest on any Series C Bond registered in the name of Cede & Co. shall be made by wire transfer of Federal or equivalent same day funds to the account of Cede & Co. on the Interest Payment Date for the Series C Bonds at the address indicated for Cede & Co. in the registration books of the System maintained by the Fiscal Agent.

(b) The Series C Bonds initially shall be issued in the form of separate single authenticated fully registered Bonds in the amount of each separate stated maturity and for each separate "CUSIP" number within a maturity of the Series C Bonds. The Fiscal Agent and the System may treat DTC (or its nominee) as the sole and exclusive Owner of the Series C Bonds registered in its name for the purposes of payment of the principal or Redemption Price of or interest on the Series C Bonds, selecting the Series C Bonds or portions thereof to be redeemed, giving any notice permitted or required to be given to Owners of the Series C Bonds under the General Resolution or this Supplemental Resolution, registering the transfer of the Series C Bonds, obtaining any consent or other action to be taken by Owners of the Series C Bonds and for all other purposes whatsoever, and neither the Fiscal Agent nor the System shall be affected by any notice to the contrary. The Fiscal Agent and the System shall not have any responsibility or obligation to any Participant, any Person claiming a beneficial ownership interest in the Series C Bonds under or through DTC or any Participant, or any other Person who is not shown on the registration books as being an Owner of the Series C Bonds, with respect to the accuracy of any records maintained by DTC or any Participant; the payment of DTC or any Participant of any amount in respect of the principal or Redemption Price of or interest on the Series C Bonds; any notice which is permitted or required to be given to Owners of the Series C Bonds under the General Resolution or this Supplemental Resolution; the selection by DTC or any Participant of any Person to receive payment in the event of a partial redemption of the Series C Bonds; or any consent given or other action taken by DTC as Owner of the Series C Bonds.

(c) The Fiscal Agent shall pay all principal of, and premium, if any, and interest on the Series C Bonds only to or "upon the order of" Cede & Co., as nominee for DTC, and all such payments shall be valid and effective to fully satisfy and discharge the System's obligations with respect to the principal of, and premium, if any, and interest on the Series C Bonds to the extent of the sum or sums so paid. No person other than DTC shall receive an authenticated Series C Bond for each separate stated maturity or separate "CUSIP" number within a maturity evidencing the obligation of the System to make payments of principal of and premium, if any, and interest on the Series C Bonds pursuant to the General Resolution and this Supplemental Resolution. Upon delivery by DTC to the Fiscal Agent of written notice to the effect that DTC has determined to substitute a new nominee in place of Cede & Co., and subject to the provisions herein with respect to transfers, the word "Cede & Co." in this Supplemental Resolution shall refer to such new nominee of DTC.

(d) In the event the System determines that it is in the best interest of the Beneficial Owners that they be able to obtain Series C Bond certificates, the System may notify DTC and the Fiscal Agent, whereupon DTC will notify the Participants, of the availability through DTC of the Series C Bond certificates, subject to DTC procedures. In such event, the System shall issue, and the Fiscal Agent shall transfer and exchange, Series C Bond certificates

VI-5

as requested by DTC and any other Series C Bond owners in appropriate amounts. DTC may determine to discontinue providing its services with respect to the Series C Bonds at any time by giving notice to the System and the Fiscal Agent and discharging its responsibilities with respect thereto under applicable law. Under such circumstances (if there is no successor securities depositary), the System and the Fiscal Agent shall be obligated to deliver Series C Bond certificates as described in the General Resolution. In the event Series C Bond certificates are issued, the provisions of the General Resolution shall apply to, among other things, the transfer and exchange of such certificates and the method of payment of principal of, Redemption Price, and interest on such certificates. Whenever DTC requests the System and the Fiscal Agent to do so, the Fiscal Agent and the System will cooperate with DTC in taking appropriate action after reasonable notice (i) to make available one or more separate certificates evidencing the Series C Bonds to any DTC Participant having Series C Bonds credited to its DTC account or (ii) to arrange for another securities depositary to maintain custody of certificates evidencing the Series C Bonds.

(e)     Notwithstanding any other provision of the General Resolution or this Supplemental Resolution to the contrary, so long as any Series C Bond is registered in the name of Cede & Co., as nominee of DTC, all payments with respect to the principal of, and premium, if any, and interest on such Series C Bond and all notices with respect to and surrender or delivery of such Series C Bond shall be made and given, respectively, to or by DTC as provided by DTC's operating procedures. Bondholders shall have no lien or security interest in any rebate or refund paid by DTC to the Fiscal Agent which arises from the payment by the Fiscal Agent of principal of or interest on the Series C Bonds in accordance with existing arrangements with DTC.

(f)     In connection with any notice or other communication to be provided to Owners of Series C Bonds pursuant to the General Resolution or this Supplemental Resolution by the System or the Fiscal Agent with respect to any consent or other action to be taken by Owners of Series C Bonds, the System or the Fiscal Agent, as the case may be, shall establish a record date for such consent or other action and give DTC notice of such record date. Notice under this subsection (f) shall be given only when DTC is the sole Owner of the Series C Bonds.

SECTION 2.6. Form of Series C Bonds. Subject to the provisions of the General Resolution, the Series C Bonds shall be in substantially the form of Exhibit A, with necessary and appropriate variations, omissions and insertions as permitted by the General Resolution and this Supplemental Resolution.

BH-ERS-EX-008873

**ARTICLE III**
**DISPOSITION OF PROCEEDS OF SERIES C BONDS AND OTHER FUNDS**

SECTION 3.1. <u>Deposits to Accounts or Transfers</u>.  Upon receipt from the Underwriters of the proceeds of sale of the Series C Bonds in the amount of $_____, there shall be deposited by the System in or transferred by the System:

1.  by wire, directly, to the account of the System, the amount of $_____; and

2.  by wire, directly, to the account of Government Development Bank, the amount of $_____ for costs of issuance; provided, that portions of this amount shall be wired to recipients thereof as directed to the Fiscal Agent in writing by Government Development Bank; and

3.  by wire, directly to the Fiscal Agent, the amount of $_____ for credit to the Senior Bonds Debt Service Reserve Account.

VI-7

BH-ERS-EX-008874

## ARTICLE IV
## MISCELLANEOUS

SECTION 4.1. Headings.  The section headings contained herein are for reference purposes only and will not affect in any way the meaning or interpretation of this Supplemental Resolution.

SECTION 4.2.  Governing Law.  This Supplemental Resolution shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth; provided, however, that to the maximum extent permitted by applicable law, the rights, privileges and duties of the Fiscal Agent shall be governed by the law of the jurisdiction in which its Corporate Trust Office is located.

SECTION 4.3. Effective Date.  This Supplemental Resolution shall take effect immediately upon adoption by the System; *provided, however,* that this Supplemental Resolution shall only be binding upon the Fiscal Agent upon filing of a copy hereof with the Fiscal Agent.

SECTION 4.4.   No Representations of Fiscal Agent.   The recitals of fact contained herein and in the Series C Bonds shall be taken as the statements of the System and the Fiscal Agent assumes no responsibility for the correctness of the same.  The Fiscal Agent makes no representations as to the validity or sufficiency of the General Resolution or this Supplemental Resolution or of any Bonds issued thereunder or as to the security afforded by the General Resolution or this Supplemental Resolution, and the Fiscal Agent shall incur no liability in respect thereof.   The Fiscal Agent shall, however, be responsible for its representation contained in its certificate of authentication on the Series C Bonds.

SECTION 4.5. Notices.   Any notice, demand, direction, request or other instrument authorized or required by this Supplemental Resolution to be given to or filed with the System or the Fiscal Agent shall be deemed to have been sufficiently given or filed for all purposes of this Supplemental Resolution if and when delivered:

To the System:

Employees Retirement System of the Government
of the Commonwealth of Puerto Rico
P.O. Box 42003
San Juan, Puerto Rico 00940
437 Ponce de León Avenue
Stop 32½
Hato Rey, Puerto Rico 00918

Telephone:     (787) 754-4545
Fax:           (787) 250-7251
Attn.:         Administrator

VI-8

BH-ERS-EX-008875

To the Fiscal Agent:

The Bank of New York
101 Barclay Street
Floor 7W
New York, New York 10286

Telephone:    (212) 815-6955
Fax:          (212) 815-5595 or 5596
Attn.:        Northern Municipals Department

with a copy to:

Government Development Bank for Puerto Rico
P.O. Box 42001
San Juan, Puerto Rico  00940

Roberto Sánchez Vilella Government Center
De Diego Avenue, Stop 22
Santurce, Puerto Rico 00940

Attention:    Executive Vice President and Financing Director

Phone: (787) 722-2525
Fax:   (787) 728-0975


      The System or the Fiscal Agent by notice to the other may designate additional or different addresses for subsequent notices or communications.  Notwithstanding the foregoing, any notice, demand, request or other instrument to be given or filed with the Fiscal Agent shall be effective only upon receipt by the Fiscal Agent.

      The Fiscal Agent shall have the right, but shall not be required, to rely upon and comply with instructions and directions sent by e-mail, facsimile and other similar unsecured electronic methods by persons believed by the Fiscal Agent to be authorized to give instructions and directions on behalf of the System.  The Fiscal Agent shall have no duty or obligation to verify or confirm that the person who sent such instructions or directions is, in fact, a person authorized to give instructions or directions on behalf of the System; and the Fiscal Agent shall have no liability for any losses, liabilities, costs or expenses incurred or sustained by the System as a result of such reliance upon or compliance with such instructions or directions.  The System agrees to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Fiscal Agent, including without limitation the risk of the Fiscal Agent acting on unauthorized instructions, and the risk of interception and misuse by third parties.

BH-ERS-EX-008876

SECTION 4.6 <u>Invalid Provisions.</u>   In case any provision in this Supplemental Resolution or the Series C Bonds shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

BH-ERS-EX-008877

**EXHIBIT A**

## FORM OF CURRENT INTEREST TERM BONDS

No. CR-__                                                                                                    $_____

## EMPLOYEES RETIREMENT SYSTEM OF THE
## GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
## SENIOR PENSION FUNDING BOND
## SERIES C

| DATED DATE | MATURITY DATE | INTEREST RATE | CUSIP NO. |
|---|---|---|---|
| June  , 2008 | _____ 1, ____ | ____% | _____ |

**REGISTERED OWNER:**    Cede & Co.

**PRINCIPAL AMOUNT:**    _____DOLLARS

       **EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO** (herein sometimes called the "System"), a trust created pursuant to Act 447 of May 15, 1951, as amended (the "Act"), to provide pension and other benefits to retired employees of the central government, municipalities and public corporations of the Commonwealth of Puerto Rico (the "Commonwealth"), acknowledges itself indebted, and for value received, hereby promises to pay to the REGISTERED OWNER named above or registered assigns or legal representative, upon presentation and surrender of this Series C Bond at the Corporate Trust Office (as defined in the General Resolution hereinafter mentioned) of the Fiscal Agent hereinafter mentioned on the MATURITY DATE specified above (unless redeemed prior thereto as hereinafter provided), the PRINCIPAL AMOUNT specified above, and to pay interest thereon from the most recent interest payment date to which interest has been paid, or, if no interest has been paid, from the DATED DATE specified above, until the earlier of the maturity or redemption of this Series C Bond, at the per annum INTEREST RATE specified above, payable on each Interest Payment Date (as defined in the Supplemental Resolution hereinafter mentioned), commencing August 1, 2008. Both the principal of and the interest on this Series C Bond are payable in any coin or currency of the United States of America which, on the respective dates of payment thereof, shall be legal tender for the payment of public and private debts. Payment of the interest on this Series C Bond on any interest payment date will be made to the person appearing on the registration books of the System maintained by the Fiscal Agent as the registered owner hereof as of the fifteenth calendar day (whether or not a business day) of the month next preceding such interest payment date, such interest to be paid by check mailed to the registered owner at such registered owner's address or, at the option of a registered owner of at least $1,000,000 in aggregate principal amount of the Series C Bonds (hereinafter defined) who so requests the Fiscal Agent in writing at least 15 calendar days prior to such interest payment date, by wire transfer.

       This Series C Bond is payable by the System solely from the Pledged Property held under the Resolution and does not constitute a debt, obligation or pledge of the full faith, credit and taxing power of the Commonwealth or any of its municipalities or political subdivisions or instrumentalities (other than the System), and neither the Commonwealth nor any of its municipalities or political subdivisions or instrumentalities (other than the System) shall be liable for the payment thereof.

BH-ERS-EX-008878

This Series C Bond is one of the bonds of a duly authorized series of bonds in the aggregate principal amount at issuance of $_____ designated "Senior Pension Funding Bonds, Series C" (herein called the "Series C Bonds") authorized to be issued pursuant to an Employees Retirement System of the Government of Puerto Rico Pension Funding Bond Resolution, adopted by the System on January 24, 2008 (herein called the "General Resolution"), as supplemented by a Third Supplemental Pension Funding Bond Resolution, adopted by the System on June __, 2008 (the "Third Supplemental Resolution," and together with the General Resolution, the "Resolution"). The General Resolution was previously supplemented by a First Supplemental Pension Funding Bond Resolution, adopted by the System on January 24, 2008 and amended and restated by the System on January 29, 2008, pursuant to which the System's Senior Pension Funding Bonds, Series A (the "Series A Bonds") were issued, and by a Second Supplemental Pension Funding Bond Resolution, adopted by the System on May 27, 2008, pursuant to which the System's Senior Pension Funding Bonds, Series B (the "Series B Bonds") were issued.. The Series C Bonds, the outstanding Series A Bonds and Series B Bonds, and any additional bonds issued under the Resolution are herein referred to collectively as the "Bonds."

The Bonds are special obligations of the System. There is pledged to the payment of the principal or redemption price of, if any, and interest on the Bonds in accordance with the provisions of the Resolution, the Pledged Property as defined and provided in the Resolution, subject only to the provisions of the Resolution permitting the use and application thereof for the purposes and on the conditions set forth in the Resolution. Such pledge and other obligations of the System may be discharged, wholly or in part, at or prior to the maturity of the Bonds upon the making of provision for the payment of the principal or redemption price of, if any, and interest on the Bonds pursuant to the terms and conditions set forth in the General Resolution.

At the option of the System, and upon 40 days' prior notice, the Series C Bonds are subject to redemption from any moneys available for that purpose (other than from moneys set aside with respect to Sinking Fund Installments) prior to maturity, in whole or in part, and if in part, in such order of maturity as determined by the System, at any time on and after July 1, 2018, at a redemption price equal to the principal amount of the Series C Bonds, plus accrued interest (in the case of the Capital Appreciation Bonds, the Accreted Amount) to the redemption date, and without premium.

If notice of redemption is given and if sufficient funds are on deposit with the Fiscal Agent to provide for the payment of the principal of and premium, if any, and interest (or Accreted Amount, in the case of the Capital Appreciation Bonds) on the Series C Bonds (or portions thereof) to be redeemed, then the Series C Bonds (or portions thereof) so called for redemption will, on the redemption date, cease to bear interest (in the case of the Capital Appreciation Bonds, the Accreted Amount thereof shall cease to increase), and shall no longer be deemed outstanding under or be entitled to any benefit or security under the Resolution.

*Copies of the Resolution are on file at the office of the System, and at the Corporate Trust Office of The Bank of New York, as Fiscal Agent under the Resolution (including its successors, herein called the "Fiscal Agent"), and reference to the Resolution and any and all supplements thereto and amendments thereof and to the Act is made for a description of the pledges and covenants securing the Bonds, the nature, extent and manner of enforcement of such pledges and covenants, the terms and conditions upon which Bonds have been issued and additional Bonds may be issued, the rights and remedies of the registered owners of the Bonds with respect thereto, and to other terms and provisions of the Bonds. To the extent and in the manner permitted by the terms of the General Resolution, the provisions of the Resolution or any resolution amendatory thereof or supplemental thereto may be modified or amended.*

BH-ERS-EX-008879

The registered owner of this Series C Bond shall have no right to enforce the provisions of the Resolution, to institute action to enforce the provisions of the Resolution or to institute, appear in or defend any suit or other proceeding with respect thereto, *except* as provided in the Resolution.

This Series C Bond is transferable, as provided in the Resolution, only upon the books of the System maintained for that purpose at the Corporate Trust Office of the Fiscal Agent by the registered owner hereof in person or by his attorney duly authorized in writing, upon surrender of this Series C Bond together with a written instrument of transfer duly executed by the Bondowner or such Bondowner's attorney duly authorized in writing, and thereupon a new fully registered Series C Bond or Bonds in the same aggregate principal amount, and of the same series, maturity and interest rate, shall be issued to the transferee in exchange therefor as provided in the General Resolution and upon the payment of the charges, if any, therein prescribed. The System and the Fiscal Agent may treat and consider the person in whose name this Series C Bond is registered as the absolute owner hereof for the purpose of receiving payment of, or on account of, the principal or redemption price, if any, hereof and interest due hereon and for all other purposes whatsoever.

This Series C Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Resolution until the Certificate of Authentication hereon shall have been signed by the Fiscal Agent.

**IT IS HEREBY CERTIFIED, RECITED AND DECLARED** that all acts, conditions and things required by the Constitution and statutes of the Commonwealth and the Resolution to exist, to have happened and to have been performed precedent to and in the issuance of this Series C Bond, exist, have happened and have been performed in due time, form and manner as required by law and that the issue of the Bonds, together with all other indebtedness of the System, is within every debt and other limit prescribed by law.

BH-ERS-EX-008880

**IN WITNESS WHEREOF**, the EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO has caused this Series C Bond to be executed in its name by the manual or facsimile signature of an authorized representative, as of the DATED DATE specified above.

**EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By: _____
                            Administrator

[SEAL]

Attest:

_____
Secretary or Assistant Secretary

BH-ERS-EX-008881

## CERTIFICATE OF AUTHENTICATION

This Bond is one of the Series C Bonds described in the within-mentioned Resolution.

**THE BANK OF NEW YORK**, as Fiscal
Agent

By: _____
                    Authorized Signatory

Date of Authentication:

VI-15

BH-ERS-EX-008882

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sells, assigns, and transfers unto

_____

(please print or typewrite name and address of transferee)

_____

(please insert social security or other identifying number of assignee)
(For computer record only)

the within Bond and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ Attorney to transfer the within Bond
on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed

_____          _____

_____          _____

By:

_____

Signatures must be guaranteed by an "eligible
guarantor institution" meeting the requirements of the
Fiscal Agent, which requirements include membership
or participation in the Security Transfer Agent
Medallion Program ("STAMP") or such other
"signature guarantee program" as may be determined
by the Fiscal Agent in addition to, or in substitution
for, STAMP, all in accordance with the Securities
Exchange Act of 1934, as amended.

BH-ERS-EX-008883

## FORM OF CAPITAL APPRECIATION BONDS

No. CR-__                                                                    $_____

### EMPLOYEES RETIREMENT SYSTEM OF THE
### GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
### SENIOR PENSION FUNDING BOND
### SERIES C

| **DATED DATE** | **MATURITY DATE** | **CUSIP NO.** |
|---|---|---|
| June     , 2008 | _____ 1, ____ | _____ |

**REGISTERED OWNER:**     Cede & Co.

**INITIAL PRINCIPAL
AMOUNT:**                    _____ DOLLARS

**PRINCIPAL AMOUNT
AT MATURITY:**              _____ DOLLARS

        **EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO** (herein sometimes called the "System"), a trust created pursuant to Act 447 of May 15, 1951, as amended (the "Act"), to provide pension and other benefits to retired employees of the central government, municipalities and public corporations of the Commonwealth of Puerto Rico (the "Commonwealth"), acknowledges itself indebted, and for value received, hereby promises to pay to the REGISTERED OWNER named above or registered assigns or legal representative, upon presentation and surrender of this Series C Bond at the Corporate Trust Office (as defined in the General Resolution hereinafter mentioned) of the Fiscal Agent hereinafter mentioned, on the MATURITY DATE specified above (unless redeemed prior thereto as hereinafter provided), the PRINCIPAL AMOUNT AT MATURITY specified above. The principal (consisting of Accreted Amount) of this Series C Bond is payable in any coin or currency of the United States of America which, on the date of payment thereof, shall be legal tender for the payment of public and private debts. Interest on this Series C Bond shall not be payable on a current basis but shall be compounded, and added to principal, on each July 1 and January 1, commencing January 1, 2009 such that the INITIAL PRINCIPAL AMOUNT specified above shall accrete to equal the PRINCIPAL AMOUNT AT MATURITY specified above on the MATURITY DATE specified above. The Table of Accreted Amounts is attached hereto as Exhibit A.

        This Series C Bond is payable by the System solely from the Pledged Property held under the Resolution and does not constitute a debt, obligation or pledge of the full faith, credit and taxing power of the Commonwealth or any of its municipalities or political subdivisions or instrumentalities (other than the System), and neither the Commonwealth nor any of its municipalities or political subdivisions nor instrumentalities (other than the System) shall be liable for the payment thereof.

VI-17

BH-ERS-EX-008884

This Series C Bond is one of the bonds of a duly authorized series of bonds in the aggregate principal amount at issuance of $_____ designated "Senior Pension Funding Bonds, Series C" (herein called the "Series C Bonds") authorized to be issued pursuant to an Employees Retirement System of the Government of Puerto Rico Pension Funding Bond Resolution, adopted by the System on January 24, 2008 (herein called the "General Resolution"), as supplemented by a Third Supplemental Pension Funding Bond Resolution, adopted by the System on June __, 2008 (the "Third Supplemental Resolution," and together with the General Resolution, the "Resolution"). The General Resolution was previously supplemented by a First Supplemental Pension Funding Bond Resolution, adopted by the System on January 24, 2008 and amended and restated by the System on January 29, 2008, pursuant to which the System's Senior Pension Funding Bonds, Series A (the "Series A Bonds") were issued, and by a Second Supplemental Pension Funding Bond Resolution, adopted by the System on May 27, 2008, pursuant to which the System's Senior Pension Funding Bonds, Series B (the "Series B Bonds") were issued.. The Series C Bonds, the outstanding Series A Bonds and Series B Bonds, and any additional bonds issued under the Resolution are herein referred to collectively as the "Bonds."

The Bonds are special obligations of the System. There is pledged to the payment of the principal or redemption price of, if any, and interest on the Bonds in accordance with the provisions of the Resolution, the Pledged Property as defined and provided in the Resolution, subject only to the provisions of the Resolution permitting the use and application thereof for the purposes and on the conditions set forth in the Resolution. Such pledge and other obligations of the System may be discharged, wholly or in part, at or prior to the maturity of the Bonds upon the making of provision for the payment of the principal or redemption price of, if any, and interest on the Bonds pursuant to the terms and conditions set forth in the General Resolution.

At the option of the System, and upon 40 days' prior notice, the Series C Bonds are subject to redemption from any moneys available for that purpose (other than from moneys set aside with respect to Sinking Fund Installments) prior to maturity, in whole or in part, and if in part, in such order of maturity as determined by the System, at any time on and after July 1, 2018, at a redemption price equal to the principal amount of the Series C Bonds, plus accrued interest (in the case of the Capital Appreciation Bonds, the Accreted Amount) to the redemption date, and without premium.

If notice of redemption is given and if sufficient funds are on deposit with the Fiscal Agent to provide for the payment of the principal of and premium, if any, and interest (or Accreted Amount, in the case of the Capital Appreciation Bonds) on the Series C Bonds (or portions thereof) to be redeemed, then the Series C Bonds (or portions thereof) so called for redemption will, on the redemption date, cease to bear interest (in the case of the Capital Appreciation Bonds, the Accreted Amount thereof shall cease to increase), and shall no longer be deemed outstanding under or be entitled to any benefit or security under the Resolution.

Copies of the Resolution are on file at the office of the System, and at the Corporate Trust Office of The Bank of New York, as Fiscal Agent under the Resolution (including its successors, herein called the "Fiscal Agent"), and reference to the Resolution and any and all supplements thereto and amendments thereof and to the Act is made for a description of the pledges and covenants securing the Bonds, the nature, extent and manner of enforcement of such pledges and covenants, the terms and conditions upon which Bonds have been issued and additional Bonds may be issued, the rights and remedies of the registered owners of the Bonds with respect thereto, and to other terms and provisions of the Bonds. To the extent and in the manner permitted by the terms of the General Resolution, the provisions of the Resolution or any resolution amendatory thereof or supplemental thereto may be modified or amended.

BH-ERS-EX-008885

The registered owner of this Series C Bond shall have no right to enforce the provisions of the Resolution, to institute action to enforce the provisions of the Resolution or to institute, appear in or defend any suit or other proceeding with respect thereto, *except* as provided in the Resolution.

This Series C Bond is transferable, as provided in the Resolution, only upon the books of the System maintained for that purpose at the Corporate Trust Office of the Fiscal Agent by the registered owner hereof in person or by his attorney duly authorized in writing, upon surrender of this Series C Bond together with a written instrument of transfer duly executed by the Bondowner or such Bondowner's attorney duly authorized in writing, and thereupon a new fully registered Series C Bond or Bonds in the same aggregate principal amount, and of the same series, maturity and interest rate, shall be issued to the transferee in exchange therefor as provided in the General Resolution and upon the payment of the charges, if any, therein prescribed. The System and the Fiscal Agent may treat and consider the person in whose name this Series C Bond is registered as the absolute owner hereof for the purpose of receiving payment of, or on account of, the principal or redemption price, if any, hereof and interest due hereon and for all other purposes whatsoever.

This Series C Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Resolution until the Certificate of Authentication hereon shall have been signed by the Fiscal Agent.

**IT IS HEREBY CERTIFIED, RECITED AND DECLARED** that all acts, conditions and things required by the Constitution and statutes of the Commonwealth and the Resolution to exist, to have happened and to have been performed precedent to and in the issuance of this Series C Bond, exist, have happened and have been performed in due time, form and manner as required by law and that the issue of the Series C Bonds, together with all other indebtedness of the System, is within every debt and other limit prescribed by law.

BH-ERS-EX-008886

**IN WITNESS WHEREOF**, the EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO has caused this Series C Bond to be executed in its name by the manual or facsimile signature of an authorized representative, as of the DATED DATE specified above

**EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By: _____
                    Administrator

[SEAL]

Attest:

_____
Secretary or Assistant Secretary

VI-20

BH-ERS-EX-008887

## CERTIFICATE OF AUTHENTICATION

This Bond is one of the Series C Bonds described in the within-mentioned Resolution.

**THE BANK OF NEW YORK**, as Fiscal Agent

By: _____
Authorized Signatory

Date of Authentication:

VI-21

BH-ERS-EX-008888

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sells, assigns, and transfers unto

_____

(please print or typewrite name and address of transferee)

_____

(please insert social security or other identifying number of assignee)
(For computer record only)

the within Bond and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ _____ Attorney to transfer the within Bond on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed

_____         _____


_____         _____

By:

_____

Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Fiscal Agent, which requirements include membership or participation in the Security Transfer Agent Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Fiscal Agent in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

BH-ERS-EX-008889

**Appendix VII**

Form of Opinion of Bond Counsel

**FIDDLER GONZALEZ & RODRIGUEZ, P.S.C.**

ATTORNEYS AND COUNSELLORS AT LAW

PO BOX 363507

SAN JUAN, PR 00936-3507

TELEPHONE (787) 753-3113

FAX (787) 759-3123

254 MUÑOZ RIVERA AVENUE

CORNER CHARDÓN STREET

6TH FLOOR

SAN JUAN, PUERTO RICO 00918

June ___, 2008

Employees Retirement System of the Government
of the Commonwealth of Puerto Rico
437 Ponce de León Avenue
San Juan, Puerto Rico

Re:   **Employees Retirement System of the Government of the
Commonwealth of Puerto Rico
Pension Funding Bonds, Series C Bonds**

Ladies and Gentlemen:

We have examined the Constitution and the laws of the Commonwealth of Puerto Rico (the "Commonwealth"), including Act No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended and supplemented (the "Act"), creating the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") as a trust, to provide pension and other benefits to retired employees of the central government, municipalities and public Systems of the Commonwealth.

We have also examined a certified copy of a Pension Funding Bond Resolution (the "General Resolution), adopted by the Board of Trustees of the System on January 24, 2008, and a Second Supplemental Pension Funding Bond Resolution, adopted by the Board of Trustees of the System on June __, 2008 (the "Supplemental Resolution," and together with the General Resolution, the "Resolution"), and other proofs submitted relative to the issuance of the System's Senior Pension Funding Bonds, Series C in the aggregate principal amount of $_____ (the "Bonds"). Capitalized words not defined herein shall have the meanings ascribed to them in the Resolution.

The Bonds are issuable as fully registered bonds, without coupons, in denominations of $5,000 (maturity amount) each or integral multiples thereof.

The Bonds are issued under and pursuant to the Resolution for the purpose of (i) increasing the total assets currently available to pay benefits under the System's largest defined benefit plan, (ii) reducing the unfunded accrued actuarial pension liability of the benefit plan, and (iii) making deposits in various funds and accounts established under the Resolution.

VII-1

The Bonds are limited, non-recourse obligations of the System, payable solely from and secured by a pledge and assignment of Employer Contributions and all other Revenues (as defined in the Resolution) derived therefrom, certain funds held under the Resolution, together with income earned thereon (collectively referred to herein as the "Pledged Property"), pledged therefor under the Resolution.

The Bonds bear interest and are subject to redemption prior to maturity as set forth in the Resolution.

The principal of the Bonds is payable at the principal corporate trust office of the Fiscal Agent in New York, New York.  The interest on the Bonds is payable by check mailed to the registered owner at the address appearing on the registration books of the System on the relevant record date or, in certain circumstances set forth in the Resolution, by wire transfer to a designated account.

From such examination, and having regard to legal questions we deem relevant, we are of the opinion that:

(1)     The Act is valid in all respects material to this opinion, and the System is a duly constituted governmental instrumentality of the Commonwealth, deemed as a trust.

(2)     The Resolution has been duly adopted by, and is legal, valid and binding upon, the System, enforceable in accordance with its terms.

(3)     The Bonds have been duly authorized by the System and constitute legal, valid and binding limited obligations of the System payable solely from, and secured by a valid and binding pledge of, the Pledged Property, subject only to the provisions of the Resolution permitting use of such Pledged Property and its application for the purposes and on the terms and conditions provided in the Resolution.

(4)     The Bonds do not constitute a debt, obligation or pledge of the full faith, credit or taxing power of the Commonwealth or any of its municipalities or political subdivisions or instrumentalities (other than the System), and neither the Commonwealth nor any of its municipalities or political subdivisions or instrumentalities (other than the System), shall be liable for the payment thereof.

(5)     Interest on the Bonds is excluded from gross income and exempt from Puerto Rico income and withholding taxes, including the alternative minimum tax imposed by Section 1017 of the Puerto Rico Internal Revenue Code of 1994, as amended (the "P.R. Code").

(6)     The Bonds are exempt from property taxes imposed by the Municipal Property Tax Act of 1991, as amended, and interest thereon is exempt from the municipal license tax imposed by the Municipal License Tax Act of 1974, as amended.

(7)     The transfer of the Bonds by (i) gift will not be subject to gift tax under the P.R. Code in the case of donors who are residents of the Commonwealth at the time the gift is made, and (ii) death will not be subject to estate tax under the P.R. Code in the case of a decedent who at the time of death was (x) a resident of Puerto Rico, and (y) a United States citizen who acquired such citizenship solely by reason of birth or residence in Puerto Rico.

(8)     Gain recognized from the sale or exchange of a Bond will be subject to income tax under the P.R. Code to taxpayers subject to Puerto Rico income tax on such gains, including individuals residing in Puerto Rico and corporations and partnerships organized under the laws of the Commonwealth.

VII-2

BH-ERS-EX-008891

(9)     The Bonds will be considered an obligation of an instrumentality of Puerto Rico for purposes of (i) the non-recognition of gain rules of Section 1112(f)(2)(A) of the P.R. Code applicable to certain involuntary conversions, and (ii) the exemption from the surtax imposed by Section 1102 of the P.R. Code available to corporations and partnerships that have a certain percentage of their net income invested in obligations of instrumentalities of Puerto Rico and certain other investments.

(10)     Interest on the Bonds constitutes "industrial development income" under Section 2(j) of the Puerto Rico Industrial Incentives Act of 1963, the Puerto Rico Industrial Incentives Act of 1978, the Puerto Rico Tax Incentives Act of 1987, and the Puerto Rico Tax Incentives Act of 1998, as amended (collectively, the "Acts"), when received by a holder of a grant of tax exemption issued under any of the Acts that acquired the Bonds with "eligible funds," as such term is defined in the Acts.

Based on the provisions of the United States Internal Revenue of 1986, as amended (the "U.S. Code"), and the regulations thereunder, now in force:

(1)     Interest on the Bonds received by, or "original issue discount" (within the meaning of the U.S. Code) accrued to, an individual who is a *bona fide* resident of Puerto Rico within the meaning of Section 937 of the U.S. Code during the entire taxable year in which such interest is received or "original issue discount" is accrued will constitute gross income from sources within Puerto Rico and, therefore, is excludable from gross income for purposes of the U.S. Code pursuant to section 933(1) thereof.

(2)     Interest received or accrued, or original issue discount, on the Bonds is not subject to United States federal income tax if the holder of the Bonds is a corporation organized under the laws of Puerto Rico ("Puerto Rico Corporation") and such interest is not effectively connected with the conduct of a trade or business in the United States by such Puerto Rico Corporation, such Puerto Rico Corporation is not a foreign personal holding company, a controlled foreign corporation or a passive foreign investment company under the U.S. Code, and such Puerto Rico Corporation is not treated as a domestic corporation for the purposes of the U.S. Code.

(3)     Interest on the Bonds is not excludable from the gross income of the recipient thereof for federal income tax purposes under Section 103(a) of the U.S. Code.

(4)     Pursuant to the provisions of Section 1.937-2 of the Regulations issued under the U.S. Code, the source of the income from the sale of personal property by a bona fide resident of Puerto Rico within the meaning of Section 937 of the Code shall be determined under the rules of Section 865 of the U.S. Code. Accordingly, the gain on the sale or exchange of the Bonds recognized by an individual who is a *bona fide* resident of Puerto Rico, within the meaning of Section 937 of the U.S. Code, during the entire taxable year in which the source of the gain must be determined, will constitute Puerto Rico source income and, therefore, qualify for the income exclusion under in Section 933(1) of the U.S. Code, provided (i) that such Bonds do not constitute inventory in the hands of such individual and (ii) if the Bonds were owned before the individual became a bona fide resident of Puerto Rico, that for any of the 10 years preceding the taxable year for which the source of the gain must be determined, the individual was not a resident of the United States (other than a bona fide resident of Puerto Rico).

A Puerto Rico Corporation that invests in the Bonds will be subject to U.S. federal income tax on a gain from a disposition of Bonds only if the gain is effectively connected to a U.S. trade or business carried on by the Puerto Rico Corporation.

VII-3

BH-ERS-EX-008892

(5)     The transfer of the Bonds by death or gift will not be subject to estate or gift tax under the U.S. Code in the case of decedents or donors who, at the time of death or gift, are (a) residents of Puerto Rico and (b) (i) United States citizens that acquired such citizenship solely by reason of birth or residence in Puerto Rico or (ii) not United States citizens.

In addition to the opinions above we would like to bring to your attention that: (a) the P.R. Code does not provide rules with respect to the treatment of the excess, if any, of the amount due at maturity of a Bond over its initial offering price (the "Accretion Amount") and that under the current administrative practice followed by the Puerto Rico Department of the Treasury, the Accretion Amount is treated as interest; (b) prospective owners of the Bonds, including but not limited to financial institutions, should be aware that ownership of the Bonds may result in having a portion of their interest and other expenses attributable to interest on the Bonds disallowed as deductions for purposes of computing the regular tax and the alternative minimum tax for Puerto Rico income tax purposes; and (c) the U.S. Code provides special rules for the taxation of shareholders of foreign corporations that qualify as "controlled foreign corporations," "personal holding companies," "foreign personal holding companies" or "passive foreign investment companies," as such terms are defined by the U.S. Code.

In connection with the foregoing statements about certain United States federal tax consequences arising from the ownership of, receipt or accrual of interest on, or the disposition of the Bonds, be advised that pursuant to the U. S. Internal Revenue Service Circular No. 230:

(a)     These tax statements are not intended or written to be used, and cannot be used by any taxpayer, for purposes of avoiding penalties that may be imposed on the taxpayer by the Internal Revenue Service.

(b)     These statements were written in connection with the promotion or marketing of the Bonds.

(c)     Each prospective purchaser of the Bonds should seek tax advice from an independent tax advisor based on its particular circumstances.

We express no opinion regarding any other federal, Commonwealth or state tax consequences with respect to the Bonds. We are rendering our opinion under existing statutes and court decisions, and regulations as of the issue date, and assume no obligation to update our opinion after the issue date to reflect any future action, fact or circumstance, or change in law or interpretation, or otherwise.

In rendering this opinion, we are advising you that the enforceability of the Bonds and the Resolution may be limited by bankruptcy, moratorium, insolvency, or other laws affecting creditors' rights or remedies and is subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

We have also examined an executed Bond and in our opinion the form of said Bond and its execution are regular and proper.

Very truly yours,

VII-4

BH-ERS-EX-008893

**Appendix VIII**

BOOK-ENTRY SYSTEM

**The Depository Trust Company**

DTC will act as securities depository for the Series C Bonds. The Series C Bonds will be issued as fully-registered securities registered in the name of Cede & Co. (DTC's partnership nominee). One fully-registered Bond certificate will be issued for each stated maturity of the Series C Bonds, each in the aggregate principal amount (initial principal amount in the case of the Capital Appreciation Bonds) of such maturity, and will be deposited with DTC. SO LONG AS CEDE & CO. IS THE REGISTERED OWNER OF THE SERIES C BONDS, AS NOMINEE FOR DTC, REFERENCES HEREIN TO BONDHOLDERS OR OWNERS OF THE SERIES C BONDS (OTHER THAN UNDER THE CAPTION "TAX MATTERS") SHALL MEAN CEDE & CO. AND SHALL NOT MEAN THE BENEFICIAL OWNERS OF THE SERIES C BONDS.

DTC, the world's largest depository, is a limited-purpose trust company organized under the New York Banking Law, a "banking organization" within the meaning of the New York Banking Law, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code, and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). DTC holds and provides asset servicing for over 2.2 million issues of U.S. and non-U.S. equity, corporate and municipal debt issues, and money market instruments from over 100 countries that DTC's Participants ("Direct Participants") deposit with DTC. DTC also facilitates the post-trade settlement among Direct Participants of sales and other securities transactions in deposited securities, through electronic computerized book-entry transfers and pledges between Direct Participants' accounts. This eliminates the need for physical movement of securities certificates. Direct Participants include both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, clearing corporations, and certain other organizations. DTC is a wholly-owned subsidiary of The Depository Trust & Clearing Corporation ("DTCC"). DTCC, in turn, is owned by a number of Direct Participants of DTC and Members of the National Securities Clearing Corporation, Fixed Income Clearing Corporation, and Emerging Markets Clearing Corporation, (NSCC, FICC, and EMCC, also subsidiaries of DTCC), as well as by the New York Stock Exchange, Inc., the American Stock Exchange LLC, and the National Association of Securities Dealers, Inc. Access to the DTC system is also available to others such as both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, and clearing corporations that clear through or maintain a custodial relationship with a Direct Participant, either directly or indirectly ("Indirect Participants"). DTC has S&P's highest rating; AAA. The DTC Rules applicable to its Participants are on file with the Securities and Exchange Commission ("SEC"). More information about DTC can be found at www.dtcc.com and www.dtc.org.

Purchases of the Series C Bonds under the DTC system must be made by or through Direct Participants, which will receive a credit for the Series C Bonds on DTC's records. The ownership interest of each actual purchaser of the Series C Bonds ("Beneficial Owner") is in turn to be recorded on the Direct and Indirect Participants' records. Beneficial Owners will not receive written confirmation from DTC of their purchase. Beneficial Owners are, however, expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the Direct or Indirect Participant through which the Beneficial Owner entered into the transaction.

Transfers of ownership interests in the Series C Bonds are to be accomplished by entries made on the books of Direct and Indirect Participants acting on behalf of Beneficial Owners. Beneficial Owners

VIII-1

BH-ERS-EX-008894

will not receive certificates representing their ownership interests in the Series C Bonds, except in the event that use of the book-entry system for the Series C Bonds is discontinued.

To facilitate subsequent transfers, the Series C Bonds deposited by Direct Participants with DTC are registered in the name of DTC's partnership nominee, Cede & Co., or such other name as may be requested by an authorized representative of DTC. The deposit of the Series C Bonds with DTC and their registration in the name of Cede & Co. or such other nominee do not effect any change in beneficial ownership. DTC has no knowledge of the actual Beneficial Owners of the Series C Bonds; DTC's records reflect only the identity of the Direct Participants to whose accounts such Series C Bonds are credited, which may or may not be the Beneficial Owners. The Direct and Indirect Participants will remain responsible for keeping account of their holdings on behalf of their customers.

Conveyance of notices and other communications by DTC to Direct Participants, by Direct Participants to Indirect Participants, and by Direct Participants and Indirect Participants to Beneficial Owners will be governed by arrangements among them, subject to any statutory or regulatory requirements as may be in effect from time to time.

Redemption notices shall be sent to DTC. If less than all of the Series C Bonds are being redeemed, DTC's practice is to determine by lot the amount of the interest of each Direct Participant in such issue to be redeemed.

Neither DTC nor Cede & Co. (nor such other DTC nominee) will consent or vote with respect to Series C Bonds unless authorized by a Direct Participant in accordance with DTC's Procedures. Under its usual procedures, DTC mails an Omnibus Proxy to the System as soon as possible after the record date. The Omnibus Proxy assigns Cede & Co.'s consenting or voting rights to those Direct Participants to whose accounts the Series C Bonds are credited on the record date (identified in a listing attached to the Omnibus Proxy).

Redemption proceeds, distributions, and dividend payments on the Series C Bonds will be made to Cede & Co., or such other nominee as may be requested by an authorized representative of DTC. DTC's practice is to credit Direct Participants' accounts upon DTC's receipt of funds and corresponding detail information from the System or the Fiscal Agent on payable dates in accordance with their respective holdings shown on DTC's records. Payments by Participants to Beneficial Owners will be governed by standing instructions and customary practices, as is the case with securities held for the accounts of customers in bearer form or registered in "street name," and will be the responsibility of such Participant and not of DTC, the Fiscal Agent, or the System, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of redemption proceeds, distributions, and dividend payments to Cede & Co. (or such other nominee as may be requested by an authorized representative of DTC) is the responsibility of the System or the Fiscal Agent, disbursement of such payments to Direct Participants will be the responsibility of DTC, and disbursement of such payments to the Beneficial Owners will be the responsibility of Direct and Indirect Participants.

DTC may discontinue providing its services as securities depository with respect to the Series C Bonds at any time by giving reasonable notice to the System or the Fiscal Agent. Under such circumstances, in the event that a successor depository is not obtained, Series C Bond certificates are required to be printed and delivered.

The System may decide to discontinue use of the system of book-entry only transfers through DTC (or a successor securities depository). In that event, Series C Bond certificates will be printed and delivered to DTC.

VIII-2

BH-ERS-EX-008895

NONE OF THE SYSTEM, THE FISCAL AGENT OR THE UNDERWRITERS WILL HAVE ANY RESPONSIBILITY OR OBLIGATION TO DIRECT PARTICIPANTS, INDIRECT PARTICIPANTS OR ANY BENEFICIAL OWNER WITH RESPECT TO (I) THE ACCURACY OF ANY RECORDS MAINTAINED BY DTC, ANY PARTICIPANT OR INDIRECT PARTICIPANT; (II) THE PAYMENT BY DTC OR ANY DIRECT PARTICIPANT OR INDIRECT PARTICIPANT OF ANY AMOUNT WITH RESPECT TO THE PRINCIPAL OF, OR PREMIUM, IF ANY, OR INTEREST ON, THE SERIES C BONDS; (III) ANY NOTICE WHICH IS PERMITTED OR REQUIRED TO BE GIVEN TO BONDHOLDERS; (IV) ANY CONSENT GIVEN BY DTC OR OTHER ACTION TAKEN BY DTC AS A BONDHOLDER; OR (V) THE SELECTION BY DTC OR ANY DIRECT PARTICIPANT OR INDIRECT PARTICIPANT OF ANY BENEFICIAL OWNERS TO RECEIVE PAYMENT IN THE EVENT OF ANY PARTIAL REDEMPTION OF THE SERIES C BONDS.

BH-ERS-EX-008896

(This page intentionally left blank)

BH-ERS-EX-008897

Appendix IX

## Table of Accreted Amounts

IX-1

BH-ERS-EX-008898

(This page intentionally left blank)

BH-ERS-EX-008899

(4)

## CERTIFICATE OF SECRETARY OF THE SYSTEM
## AS TO THE OFFICIAL STATEMENT

I, Rosa Castro Rivera, Secretary of the Board of Trustees of Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), **DO HEREBY CERTIFY** that attached hereto is a true and correct copy of the Official Statement, dated June 26, 2008, which is the same as the Official Statement the distribution of which was authorized by resolution duly adopted by the Board of Trustees of the System on June 26, 2008.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the seal of said System this 30th day of June, 2008.

_____
Secretary of the Board of Trustees
Employees Retirement System of the Government
of the Commonwealth of Puerto Rico



(SEAL)

BH-ERS-EX-008900