deadline. The Commonwealth expects to provide its audited financial statements by filing its Comprehensive Annual Financial Report as a separate document by such deadline.

(e) The System covenants to file in a timely manner, with each National Repository or with the MSRB, and with the Fiscal Agent and any State Depository, notice of the occurrence of any of the following events with respect to the Bonds, if material:

1. principal and interest payment delinquencies;

2. non-payment related defaults;

3. unscheduled draws on debt service reserves reflecting financial difficulties;

4. unscheduled draws on credit enhancements reflecting financial difficulties;

5. substitution of credit or liquidity providers, or their failure to perform;

6. adverse opinions or events affecting the tax-exempt status of the Bonds;

7. modifications to rights of the holders (including beneficial owners) of the Bonds;

8. bond calls;

9. defeasances;

10. release, substitution, or sale of property securing repayment of the Bonds;

11. rating changes; and

12. any failure of the System or the Commonwealth to comply with paragraph (a) above.

(f) The System does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the System applies for or participates in obtaining the enhancement.

(g) The System does not undertake to provide notice of the Listed Event in item (8) above with respect to any scheduled redemption, not otherwise contingent upon the occurrence of an event, if (i) the terms, dates and amounts of such redemption are set forth in the Official Statement relating to the Bonds, (ii) the only open issue is which Bonds will be redeemed in



3

the case of a partial redemption, (iii) notice of redemption is given to the Bondholders as required under the terms of the Bonds and the Resolution; and (iv) public notice of redemption is given pursuant to Securities Exchange Act of 1934 Release No. 34-2385 of the Securities and Exchange Commission even if the originally scheduled amounts are reduced by prior optional redemptions or purchases of Bonds.

(h)     The System may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the System, such other events are material with respect to the Bonds, but the System does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

SECTION 4.  Content of Annual Reports.  Each Annual Report required to be filed hereunder shall include, at a minimum, the information included in the System's Official Statement prepared in connection with the sale of the Series A Bonds as it relates to the System and the Commonwealth, updated to reflect events occurring and information available through the end of the fiscal year covered by the Annual Report. Any or all of such information may be incorporated by reference from other documents, including official statements containing information with respect to the System and the Commonwealth, which have been filed with each Repository or the SEC. No final official statement may be incorporated by reference in the Annual Report unless it is available from the Municipal Securities Rulemaking Board. The System shall clearly identify each such other document so incorporated by reference.

SECTION 5.  Termination of Reporting Obligation.  The obligations of the System and the Commonwealth under this Disclosure Agreement shall terminate upon the earlier to occur of the legal defeasance and the final retirement of the Bonds.

SECTION 6.  Dissemination Agent.  Each of the System and the Commonwealth may, from time to time, appoint or engage a Dissemination Agent to assist it in carrying out its obligations under this Disclosure Agreement and may discharge any such Agent, with or without appointing a successor Dissemination Agent.  If at any time there is not any other designated Dissemination Agent, the System and the Commonwealth shall be their own Dissemination Agents.

SECTION 7.  Amendment.  Notwithstanding any other provision of this Disclosure Agreement, the System and the Commonwealth may amend this Disclosure Agreement, if (1) the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the System or the Commonwealth, respectively, or type of business conducted; this Agreement, as amended, would have complied with the requirements of the Rule at the date of the execution and delivery hereof, after taking into account any amendments or change in circumstances; and the amendment does not materially impair the interest of Holders, as determined by parties unaffiliated with the System or the Commonwealth; or (2) all or any part of the Rule ceases to be in effect for any reason, and the System or the Commonwealth, respectively, elects that this Agreement shall be deemed amended accordingly.

4

BH-ERS-EX-009153

The System and the Commonwealth further agree that, in connection with any such amendment, the Annual Report will explain, in narrative form, the reasons for the amendment and the impact of the change on the information being provided.

SECTION 8. Additional Information. Nothing in this Disclosure Agreement shall be deemed to prevent the System or the Commonwealth from disseminating any other information, using the means of dissemination set forth in this Disclosure Agreement or any other means of communication, or including any other information in any Annual Report, in addition to that which is required by this Disclosure Agreement. If the System or the Commonwealth chooses to include any information in any Annual Report not specifically required by this Disclosure Agreement, the System or the Commonwealth, as the case may be, shall not have any obligation under this Disclosure Agreement to update such information, and the System or the Commonwealth, as the case may be, shall have no obligation to include it in any future Annual Report.

SECTION 9. Default. (a) Any person referred to in Section 10 of this Disclosure Agreement (other than the System or the Commonwealth) may take such action as may be permitted by law or in equity against the appropriate public official to secure compliance with the obligations of the System and the Commonwealth to file its Annual Report. In addition, holders of not less than a majority in aggregate principal amount of Bonds outstanding may take such actions as may be permitted by law, to challenge the adequacy of any information provided pursuant to this Disclosure Agreement, or to enforce any other obligation of the System or the Commonwealth hereunder. A default under this Disclosure Agreement shall not be deemed an event of default under any applicable resolution, trust agreement, indenture or other debt authorization of the System or the Commonwealth. Nothing in this Section shall be deemed to restrict the rights or remedies of any Holder pursuant to the Securities Exchange Act of 1934, the rules and regulations promulgated thereunder, or other applicable laws.

(b) No Holder may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of this Disclosure Agreement or for any remedy for breach thereof, unless such Holder shall have filed with the System or the Commonwealth, as the case may be, written notice of any request to cure such breach, and the System or the Commonwealth shall have refused to comply within a reasonable time. All Proceedings shall be instituted only in a court of the Commonwealth of Puerto Rico located in the Municipality of San Juan, Puerto Rico, for the equal benefit of all Holders from time to time of the Bonds benefited by this Disclosure Agreement, and no remedy shall be sought or granted other than the specific performance of this Disclosure Agreement.

SECTION 10. Beneficiaries. This Disclosure Agreement shall inure solely to the benefit of the parties, the Participating Underwriters, and Holders from time to time of the Bonds, and shall create no rights in any other person or entity.

5

BH-ERS-EX-009154

In witness whereof, the parties have executed this agreement as of the date first written above.

EMPOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO

By: _____
Name:
Title:

COMMONWEALTH OF PUERTO RICO

By: _____
Name:
Title:

Acknowledged as of the date set forth below

BANK OF NEW YORK

By: _____
Name:        JOANNE ADAMIS
Title:        VICE PRESIDENT

Date: January 31, 2008

6

BH-ERS-EX-009155

## EXHIBIT A

### NOTICE OF FAILURE TO FILE ANNUAL REPORT
### [AUDITED ANNUAL FINANCIAL STATEMENTS]

### EMPOYEES RETIREMENT SYSTEM
### OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
in connection with its
Senior Pension Funding Bonds, Series A

CUSIP NO. _____

Dated: _____

NOTICE IS HEREBY GIVEN that [the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System")] [the Commonweal of Puerto Rico] has not provided an Annual Report [Audited Annual Financial Statements] as required by Section 3 of the certain Continuing Disclosure Agreement, which was delivered in connection with the above-named bonds issued by the System on January 31, 2008. The [System] [Commonwealth] anticipates that the Annual Report [Audited Annual Financial Statements] will be filed by _____.

Dated: _____

[EMPOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO] [COMMONWEALTH OF PUERTO RICO]

By: _____
Name:
Title:

A-1

(7)

## CERTIFICATE OF SECRETARY OF THE SYSTEM
## AS TO SECURITY AGREEMENT

I, Rosa Castro Rivera, Secretary of the Board of Trustees of Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), **DO HEREBY CERTIFY** that attached hereto is a true and correct copy of the Security Agreement, dated as of June 2, 2008, which form of Security Agreement was approved by resolution duly adopted by the Board of Trustees of the System on May 27, 2008.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the seal of said System this 30th day of June, 2008.

Secretary of the Board of Trustees
Employees Retirement System of the Government
of the Commonwealth of Puerto Rico



(SEAL)

BH-ERS-EX-009157

## SECURITY AGREEMENT

This SECURITY AGREEMENT, dated as of June 2, 2008, is by and between the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "Debtor") and Owners from time to time of the Pension Funding Bonds of the Debtor (the "Pension Funding Bonds") issued from time to time pursuant to the Debtor's Pension Funding Bond Resolution adopted by the Debtor's Board of Trustees on January 24, 2008, as amended and supplemented from time to time (the "Resolution"), and other Beneficiaries under the Resolution, which Owners and Beneficiaries are represented for purposes of this Security Agreement by The Bank of New York, as fiscal agent under the Resolution (the "Secured Party"). All capitalized words not defined herein shall have the meanings ascribed to them in the Resolution.

In order to provide security for the Debtor's payment of principal of, premium (if any) and interest on its Pension Funding Bonds and its payment of amounts due to the Owners of the Pension Funding Bonds and other Beneficiaries in accordance with the terms of the Pension Funding Bonds and the terms of the Resolution, Debtor hereby grants to the Secured Party a security interest in (i) the Pledged Property, and (ii) all proceeds thereof and all after-acquired property, subject to application as permitted by the Resolution. Remedies for failure of the Debtor to make timely payment of principal of, premium (if any) and interest on the Pension Funding Bonds or failure of the Debtor to fulfill its other covenants contained in the Resolution for the benefit of the Owners of the Pension Funding Bonds and the other Beneficiaries are as set forth in the Resolution.

The Debtor shall cause UCC financing statements and continuation statements to be filed, as appropriate, and the Secured Party shall not be responsible for any UCC filings.

**EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By _____

Name:

Title:

**THE BANK OF NEW YORK**, as Fiscal Agent under the Resolution

By _____

Name:

Title:

## SECURITY AGREEMENT

This SECURITY AGREEMENT, dated as of June 2, 2008, is by and between the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "Debtor") and Owners from time to time of the Pension Funding Bonds of the Debtor (the "Pension Funding Bonds") issued from time to time pursuant to the Debtor's Pension Funding Bond Resolution adopted by the Debtor's Board of Trustees on January 24, 2008, as amended and supplemented from time to time (the "Resolution"), and other Beneficiaries under the Resolution, which Owners and Beneficiaries are represented for purposes of this Security Agreement by The Bank of New York, as fiscal agent under the Resolution (the "Secured Party"). All capitalized words not defined herein shall have the meanings ascribed to them in the Resolution.

In order to provide security for the Debtor's payment of principal of, premium (if any) and interest on its Pension Funding Bonds and its payment of amounts due to the Owners of the Pension Funding Bonds and other Beneficiaries in accordance with the terms of the Pension Funding Bonds and the terms of the Resolution, Debtor hereby grants to the Secured Party a security interest in (i) the Pledged Property, and (ii) all proceeds thereof and all after-acquired property, subject to application as permitted by the Resolution. Remedies for failure of the Debtor to make timely payment of principal of, premium (if any) and interest on the Pension Funding Bonds or failure of the Debtor to fulfill its other covenants contained in the Resolution for the benefit of the Owners of the Pension Funding Bonds and the other Beneficiaries are as set forth in the Resolution.

The Debtor shall cause UCC financing statements and continuation statements to be filed, as appropriate, and the Secured Party shall not be responsible for any UCC filings.

**EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By _____
Name:
Title:

**THE BANK OF NEW YORK** as Fiscal Agent under the Resolution

By _____
Name: Steven Vaccarello
Title:   Vice President

BH-ERS-EX-009159

*Estado Libre Asociado de Puerto Rico*
*Departamento de Estado*
*San Juan, Puerto Rico*

## CERTIFICACION

**YO, Carmen Elba Torres,** *Directora de la División de Certificaciones, Reglamentos, Registro de Notarios y Venta de Leyes del Departamento de Estado del Estado Libre Asociado de Puerto Rico:*

*Certifico, que el documento adjunto es copia fiel y exacta de la* **Ley Núm. 447,** *aprobado y firmado por el Gobernador de Puerto Rico el* **15 de mayo de 1951.**

*EN TESTIMONIO DE LO CUAL, firmo la presente y estampo en ella el Gran Sello del Estado Libre Asociado de Puerto Rico, en la Ciudad de San Juan, hoy día* **30 de junio de 2008.**

_____
*Carmen Elba Torres*

*Certifico Correcto:*

_____
**Funcionario Autorizado**

**USO OFICIAL SOLAMENTE**

[NÚM. 447]

*[Aprobada en 15 de mayo de 1951]*

## LEY

PARA ESTABLECER UN SISTEMA DE RETIRO Y OTROS BENEFICIOS PARA LOS
EMPLEADOS DEL GOBIERNO INSULAR DE PUERTO RICO Y SUS INSTRU-
MENTALIDADES, INCLUYENDO A LOS MIEMBROS DEL CUERPO DE LA
POLICÍA INSULAR, A LOS FUNCIONARIOS Y EMPLEADOS DEL GOBIERNO
INSULAR, A LOS JUECES DE LAS CORTES DE PUERTO RICO, LOS MIEM-
BROS Y EMPLEADOS DE LA ASAMBLEA LEGISLATIVA, Y A LOS FUNCIO-
NARIOS Y EMPLEADOS DE TODA EMPRESA PUBLICA; PARA DISPONER LO
NECESARIO PARA EL FINANCIAMIENTO DE DICHO SISTEMA; PARA DIS-
PONER QUE EL REFERIDO SISTEMA SOBRESEERA LOS FONDOS O PLANES
DE PENSIONES CREADOS POR LAS SIGUIENTES LEYES, TAL COMO HAN
SIDO ENMENDADAS: LEY NUMERO 70, APROBADA EL 3 DE MAYO DE
1931; LEY NUMERO 23, APROBADA EL 16 DE JULIO DE 1935; LEY NU-
MERO 155, APROBADA EL 9 DE MAYO DE 1938; PARA PROVEER PARA LA
REDUCCION DE BENEFICIOS DE LOS PARTICIPANTES CON DERECHO A
RECIBIR COMPENSACION AL AMPARO DE LA LEY DE COMPENSACIONES
POR ACCIDENTES DEL TRABAJO; PARA ASIGNAR FONDOS; Y PARA OTROS
FINES.

*Decrétase por la Asamblea Legislativa de Puerto Rico:*

Artículo 1.—*Creación del Sistema*

Por la presente se crea, un sistema de retiro y beneficios que
se denominará "Sistema de Retiro de los Empleados del Go-
bierno Insular de Puerto Rico y sus instrumentalidades" para
los miembros del Cuerpo de la Policía de Puerto Rico, los fun-
cionarios y empleados del Gobierno Insular, los Jueces de las
Cortes de Puerto Rico, los miembros y empleados de la Asam-
blea Legislativa, los funcionarios y empleados de empresas pú-
blicas. Los fondos del Sistema que por la presente se crea, se
utilizarán y aplicarán, según lo dispuesto en esta Ley, en pro-
vecho de los referidos funcionarios y empleados, sus dependien-
tes y beneficiarios, para el pago de anualidades por retiro y por
incapacidad, anualidades y beneficios por defunción, y otros be-
neficios, a la terminación de determinados períodos de servicio
y una vez satisfechos los requisitos que más adelante se esta-
blecen, para en esta forma conseguir economía y eficiencia en
el funcionamiento del Gobierno Insular de Puerto Rico.

El Sistema se establecerá en la fecha de vigencia de esta
Ley; y comenzará a aplicarse el 1 de enero de 1952, fecha en
que comenzarán a regir las aportaciones y beneficios, según se
dispone en esta Ley. El 1 de enero de 1952 será denominado
"fecha de aplicación del Sistema", excepto en el caso de empre-
sas públicas, según se definen en la presente; para las cuales
la fecha de aplicación será la fecha del comienzo de su partici-

BH-ERS-EX-009161

LEYES DE PUERTO RICO                    1301

pación en el Sistema, de conformidad con lo dispuesto en esta
Ley. El período comprendido entre la fecha de vigencia de esta
Ley y enero 1 de 1952 será el período de organización del Sis-
tema.

Artículo 2.—*Fondos de Pensiones Sobreseídos*

A partir del 1 de enero de 1952 el Sistema que por la pre-
sente se crea sustituirá y reemplazará a los fondos o planes de
pensiones que están actualmente constituídos y funcionando en
cumplimiento de y bajo las siguientes leyes:

Ley Núm. 70 titulada "Ley para establecer el retiro de los
miembros del Cuerpo de la Policía Insular y para derogar la
ley titulada 'Ley para establecer el retiro de los miembros del
cuerpo de la Policía Insular de Puerto Rico, y fijar reglas a
dicho efecto', aprobada en julio 16 de 1921, y leyes enmenda-
torias de la misma, y para otros fines", aprobada el 3 de mayo
de 1931, según fué subsiguientemente enmendada.

Ley Núm. 23 titulada "Ley para establecer el retiro de los
funcionarios y empleados permanentes del Gobierno de Puerto
Rico y para derogar la Ley Núm. 104, titulada "Ley para esta-
blecer el retiro de los funcionarios y empleados permanentes
del Gobierno Insular de Puerto Rico y para derogar la Ley Núm.
22 titulada 'Ley para establecer el retiro de los funcionarios y
empleados permanentes de El Pueblo de Puerto Rico y para con-
ceder a los empleados acogidos a la Ley Núm. 52 de 1921, el
derecho de renunciar sus beneficios', aprobada el 22 de septiem-
bre de 1923, y para conceder a los empleados acogidos a la Ley
Núm. 52 de 1921 el derecho de renunciar sus beneficios, y para
otros fines', aprobada en 2 de septiembre de 1925, según fué
enmendada por la Ley Núm. 33 de 21 de abril de 1928, la Ley
Núm. 73 de 6 de mayo de 1930, y la Ley Núm. 37 de 4 de mayo
de 1933; para dejar sin efecto las pensiones concedidas bajo las
Leyes Núm. 22 de 22 de septiembre de 1923 y 104 de 2 de sep-
tiembre de 1925; para asignar un crédito, y para otros fines",
aprobada el 16 de julio de 1935 según fué subsiguientemente
enmendada.

Ley Núm. 155 titulada "Ley para conceder pensiones, mien-
tras se conserven en estado de viudez, y por un período no ma-
yor de diez (10) años, a las viudas de los números, clases y
jefes del cuerpo de la Policía Insular de Puerto Rico que, en el
ejercicio de sus funciones en el cumplimiento de los deberes

BH-ERS-EX-009162

LEYES DE PUERTO RICO                                    1303

de su cargo; perdieren la vida trágicamente y dejaren hijos que no cuenten con recursos de ninguna clase para su sostenimiento, y para otros fines", aprobada el 9 de mayo de 1938.

Los fondos de pensiones antes mencionados en esta Ley quedan por la presente consolidados y formarán parte de los fondos del Sistema que por la presente se crea; y el referido Sistema se considerará como una continuación de dichos fondos de pensiones, a los cuales sustituirá y reemplazará. Todos los dineros, valores, y otros haberes de los fondos de pensiones sobreseídos, y todos sus libros, cuentas, propiedades y archivos serán transferidos al Sistema por la Junta de Síndicos de cada uno de los fondos de pensiones sobreseídos en la fecha de aplicación del mismo, o tan pronto como sea posible después de esa fecha; y el Administrador del Sistema queda por la presente autorizado y facultado para recibirlos; y pasarán a ser propiedad del Sistema; después de lo cual cada uno de los fondos de pensiones sobreseídos dejará de existir.

Todas las anualidades, pensiones u otros beneficios que hubieren sido aprobados antes de la fecha de aplicación del Sistema, serán pagados a partir de la referida fecha, por el Sistema que por la presente se crea, de acuerdo con lo dispuesto por las antes mencionadas Leyes.

Todas las cantidades deducidas y retenidas de los salarios o retribución de los participantes en los sobreseídos fondos de pensiones serán acreditadas a los referidos participantes, quienes entrarán a formar parte del Sistema.

Todas las reclamaciones por anualidades, pensiones, reembolsos, u otros beneficios que contra los fondos de pensiones sobreseídos hubieren sido hechas y estuvieren pendientes en la fecha de aplicación del Sistema, serán otorgadas o denegadas por el Administrador, de acuerdo con las disposiciones de las correspondientes Leyes sobreseídas. Dichas reclamaciones de ser aprobadas por el Administrador, se pagarán con cargo a los fondos del Sistema.

Artículo 3.—*Definiciones*

Los siguientes términos y frases, según se usan en esta Ley, tendrán los significados que a continuación se expresan, salvo cuando el contexto indique claramente otro significado:

"Junta" significará la Junta de Síndicos del Sistema de Retiro de los Empleados del Gobierno Insular y sus Instrumentalidades.

BH-ERS-EX-009163

"Administrador" significará el Administrador del Sistema de Retiro creado por esta Ley. El Director de la Oficina de Personal será el Administrador del Sistema.

"Gobierno Insular" o "Gobierno" significará el Gobierno Insular de Puerto Rico, sus departamentos, divisiones, negociados, oficinas, agencias y dependencias.

"Empresa Pública" significará toda instrumentalidad gubernamental de El Pueblo de Puerto Rico, que haya sido creada o en el futuro se creare; pero excluyendo las empresas subsidiarias de tales empresas públicas.

"Patrono" significará El Gobierno Insular de Puerto Rico, o cualquier empresa pública, según se define en la presente.

"Empleado" significará todo funcionario o empleado del Gobierno Insular o de sus instrumentalidades, siempre que dicho empleado prestare servicios contínuos en un cargo o empleo. El referido término incluirá: (1) a los miembros del Cuerpo de la Policía Insular; (2) a los Jueces de las Cortes de Puerto Rico; (3) a los miembros y empleados de la Asamblea Legislativa y (4) a los funcionarios y empleados de las empresas públicas. Los empleados municipales quedan por la presente exentos de formar parte de la matrícula del Sistema.

"Miembro" o "participante" significará todo empleado acogido al Sistema o que pertenezca a su matrícula.

"Servicios anteriores" significará todo servicio que, como empleado y con anterioridad a la fecha de aplicación del Sistema, hubiere prestado un participante; y por el cual servicio recibirá un crédito correspondiente, según lo dispuesto en el Artículo 5 de esta Ley.

"Servicios posteriores" significará todo servicio que, como empleado y a partir de la referida fecha de aplicación del sistema, prestare un participante, según lo dispuesto en el Artículo 5 de esta Ley.

Los "servicios acreditables" constarán de los servicios anteriores y posteriores a la fecha de aplicación del Sistema.

"Retribución" significará la recompensa bruta y en efectivo que devenga un empleado, juntamente con el valor monetario, según lo determine el Director de Personal, del sostenimiento o cualquier otra consideración por servicios prestados, percibido en lugar o además de dinero en efectivo.

Al computar la retribución se excluirá toda bonificación concedida en adición al salario, así como todo pago por concepto de horas extraordinarias de trabajo.

BH-ERS-EX-009164

"Retribución promedio" significará la retribución promedio anual, incluyendo sostenimiento, de un participante del Sistema durante los cinco (5) años de servicios acreditables que inmediatamente antecedan a la fecha del retiro del participante.

"Beneficiario" significará toda persona que reciba cualquier pensión o beneficio, según lo dispuesto en esta Ley.

"Aportaciones acumuladas" significará el total de todas las aportaciones hechas por un miembro o participante del Sistema, más los intereses devengados al tipo corriente.

"Tipo corriente de interés" significará el tipo de interés que la Junta prescriba. Los intereses serán capitalizados anualmente.

"Guías actuariales" significará aquellos índices de mortalidad y tipos de interés, que, de acuerdo con las recomendaciones del Actuario, adoptare el Administrador.

"Equivalente actuarial" significará toda anualidad o beneficio de valor equivalente a las aportaciones acumuladas, cuando se compute esa anualidad o beneficio, según sea el caso, de acuerdo con los métodos de amortización prescritos por esta Ley, y de acuerdo con los guías actuariales y vigentes para el Sistema.

"Año económico" significará el período que comienza el primero de julio de cualquier año y termina el 30 de junio del año siguiente.

"Fondos de pensiones sobreseídos" significará todo fondo de pensión o plan constituído o en funcionamiento según lo dispuesto en las diversas leyes enumeradas en el Artículo 2 de esta Ley.

El género masculino del pronombre, dondequiera que se use, abarcará los dos géneros.

Artículo 4.—*Matrícula.*

Toda persona que en el día que inmediatamente preceda a la fecha de aplicación del Sistema, sea empleado del Gobierno de Puerto Rico, entrará, en la referida fecha de aplicación, a formar parte de dicho Sistema en calidad de miembro o participante; siempre que hubiere dicho empleado terminado sin interrupción por ausencia de más de tres (3) meses consecutivos un período de doce (12) meses de servicio; y, a partir de la fecha de aplicación del Sistema, quedará sujeto dicho empleado a las disposiciones de esta Ley; *Disponiéndose,* que todo empleado que, en el día que inmediatamente preceda a la fecha de aplicación de esta Ley, fuere miembro de cualquier plan o

BH-ERS-EX-009165

fondo de pensiones sobreseído por el Sistema que por la presente se crea, no estará sujeto al mencionado período de servicios requerido para ingresar en el Sistema.

Toda persona que fuere empleada por primera vez a partir de la fecha de aplicación del Sistema, como requisito de empleo, entrará a formar parte del Sistema en calidad de participante o miembro, a la terminación de un período de doce (12) meses de servicio sin interrupción por ausencia mayor de tres (3) meses consecutivos; siempre que dicha persona no haya cumplido los cincuenta y cinco (55) años de edad en la fecha de la terminación del referido período de doce meses de servicio. Las aportaciones del susodicho empleado comenzarán con el primer período de nóminas después de la terminación de dichos doce meses de servicio, y será entonces cuando comenzarán a acumularse los servicios acreditables del mencionado empleado. Todo empleado que de este modo entre a formar parte del Sistema podrá hacer las correspondientes aportaciones por el susodicho período de doce meses de servicio prestados antes de hacerse miembro del Sistema, o por parte de dicho período, de acuerdo con las reglas establecidas por la Junta; y si dichas aportaciones fueren completadas dentro de un período de tres (3) años a partir de la fecha en que dicho empleado pasare a ser miembro del Sistema se considerará el período retroactivo de aportaciones como servicios posteriores a la fecha de aplicación del Sistema. Los servicios prestados en calidad de empleado probatorio contarán como parte del referido período de doce meses de servicio. Los servicios prestados en calidad de empleado temporero no se contarán ni serán acreditados al susodicho período de doce meses de servicio.

Artículo 5.—*Servicios acreditables*

(a) A partir de la fecha de aplicación del Sistema, todo servicio prestado por un participante desde la última fecha de su ingreso en la matrícula del Sistema, y respecto del cual servicio hubieren sido hechas las correspondientes aportaciones, contará como servicio posterior.

(b) Comenzando en la fecha de su primer nombramiento, los servicios prestados, con anterioridad a la fecha de aplicación del Sistema, por cualquier participante, en un departamento, división, agencia o instrumentalidad del Gobierno Insular de Puerto Rico contarán como servicios anteriores si el participante ha pagado o paga al Sistema, en la forma que lo disponga el

Administrador, las aportaciones que correspondan a los años
de servicios prestados a partir de enero 1 de 1924, de acuerdo
con los tipos en vigor dispuestos en las leyes para establece.
el retiro de los funcionarios y empleados permanentes del Go-
bierno Insular de Puerto Rico, aprobados el 22 de septiembre
de 1923, el 2 de septiembre de 1925 y el 16 de julio de 1935, o
de acuerdo con los tipos en vigor en los sistemas sobreseídos
para la fecha en que se prestaren los servicios; *Disponiéndose,*
que no se concederá crédito por servicios prestados en la rama
municipal del gobierno, salvo lo que en contrario disponga esta
Ley; *Disponiéndose, además,* que a todo empleado que hubiere
recibido reembolsos de sus aportaciones a los fondos de pen-
siones sobreseídos por este Sistema, no se le acreditará el pe-
ríodo de servicio correspondiente a dichos reembolsos; a menos
que dichos empleados paguen al Sistema sumas equivalentes a los
referidos reembolsos.

(*c*) Para el cómputo de la duración de los servicios ante-
riores y posteriores a la fecha de aplicación del Sistema, según
lo dispuesto en esta Ley, regirá la escala siguiente: nueve (9)
o más meses de servicio durante un año fiscal serán considerados
como un (1) año de servicio; seis (6) a nueve (9) meses de
servicio serán considerados como tres cuartas (¾) partes de un
año de servicio; tres (3) a seis (6) meses de servicio serán con-
siderados como medio (½) año de servicio; menos de tres meses
de servicio no serán considerados para los efectos de este cóm-
puto.   En ningún caso se concederá crédito por período alguno
de ausencia sin retribución; ni por servicio alguno prestado sin
retribución; ni menos de quince (15) días de servicio durante el
mes serán considerados como un (1) mes de servicio; ni se acre-
ditará más de un (1) año de servicio por todos los servicios
prestados por un participante durante un (1) año fiscal.   La
Junta prescribirá en sus reglas el número de horas o días que
habrá de constituir un mes de servicio, y la equivalencia de los
servicios prestados por funcionarios públicos o por empleados
bajo contrato a base de retribución que no fuere por sueldo
mensual.

Para los miembros de la Asamblea Legislativa y para los
miembros del Sistema que hayan sido legisladores, se tomará
como base un sueldo anual de mil (1,000) dólares por los años
en que solamente percibieron dietas por sus servicios como legis-
ladores, y dichos años les serán acreditados como años de servicio.

BH-ERS-EX-009167

LEYES DE PUERTO RICO 1313

(d) A todo miembro del Sistema se le abonará como servicio acreditable para cualquiera y todos los fines de esta Ley todo servicio militar o naval prestado a los Estados Unidos de América durante la primera o la segunda guerra mundial o durante cualquier conflicto armado si el participante era empleado en la fecha de su ingreso en el servicio militar o naval; fuere reempleado dentro de un período de noventa (90) días a partir de su licenciamiento; y hubiere obtenido su licenciamiento incondicionalmente de dicho servicio militar o naval, y no por motivo deshonroso alguno, siempre que pague al Sistema las aportaciones que corresponda a base del sueldo que percibía al tiempo de ingresar en las Fuerzas Armadas.

Artículo 6.—*Anualidad por Retiro*

Al separarse del servicio al cumplir, o después de cumplir, las edades y haber completado el período de servicio que más adelante se indican, todos los participantes que no hubieren recibido el reembolso de sus aportaciones acumuladas tendrán derecho a percibir una anualidad por retiro. Dicha anualidad comenzará en la fecha que el participante especifique en la solicitud de retiro, pero en ningún caso antes de su separación del servicio.

El retiro será opcional para todo miembro del Sistema en servicio activo, a partir de la fecha en que cumpla cincuenta y cinco (55) años de edad y hubiere completado por lo menos veinticinco (25) años de servicios acreditables; y para todo miembro del Sistema que habiendo cumplido la edad de cincuenta y ocho (58) años hubiera completado, por lo menos, diez (10) años de servicios acreditables.

*Disponiéndose* que hasta el año 1955, el retiro será opcional para todo miembro del sistema en servicio activo, que hubiere completado treinta (30) años de servicios acreditables sin tener en cuenta el requisito de edad.

Todo participante cuya separación del servicio ocurriere antes de cumplir la edad de cincuenta y ocho (58) años; y que hubiere terminado, por lo menos, diez (10), y menos de veinticinco (25) años de servicios acreditables; y que no hubiere solicitado ni recibido el reembolso de sus aportaciones acumuladas; tendrá derecho a recibir una anualidad por retiro diferida. El mencionado participante recibirá una anualidad por retiro diferida, que comenzará al cumplir éste la edad de cincuenta y ocho (58) años; o, a opción suya, en cualquier fecha posterior, si hubiere completado diez (10) o más años y menos

BH-ERS-EX-009168

de veinticinco (25) años de servicio; o a partir de la fecha en que cumpla la edad de cincuenta y cinco (55) años, si hubiere completado por lo menos veinticinco (25) años de servicio.

El importe de la anualidad será el uno y medio por ciento (1½%) de la retribución promedio, multiplicado por el número de años de servicios acreditables. En caso de que la anualidad así calculada fuere menor de mil quinientos dólares (1,500) se sumará a dicha anualidad la cantidad de ciento ochenta dólares ($180) o la parte de dicha cantidad necesaria para completar los mil quinientos dólares ($1,500). No se pagará la cantidad de ciento ochenta dólares ($180) ni parte de ella si el importe de la anualidad calculado en la forma indicada, fuese de mil quinientos dólares ($1,500) o más. Dicha anualidad será pagadera en su totalidad a todo participante que se retire a la edad de cincuenta y ocho (58) o más años, y a todo miembro del cuerpo de la Policía o del cuerpo de bomberos que se retire a la edad de cincuenticinco (55) o más años. Todo miembro o participante que adquiera el derecho a una anualidad por retiro diferida, recibirá el porcentaje de pensión según ha sido dispuesto en este párrafo. Recibirá, además, la parte proporcional que de la cantidad de ciento ochenta dólares ($180) corresponda a la relación que la duración total de sus servicios tenga con veinticinco (25) años, siempre que al sumarse dicha cantidad a la anualidad, el importe total no exceda de mil quinientos dólares ($1,500). Si al sumarse la cantidad indicada a la anualidad, el importe de ésta fuese mayor de mil quinientos dólares ($1,500), se sumará a dicha anualidad la parte de la indicada cantidad que fuere necesaria hasta completar mil quinientos dólares ($1,500).

Con excepción de los miembros del cuerpo de la policía y del cuerpo de bomberos, los participantes que, sin haber cumplido todavía la edad de cincuenta y ocho (58) años, solicitaren y les fuere concedida una anualidad; la anualidad por retiro será computada según se indica arriba; salvo que se reducirá a una suma que, para la edad del referido participante en la fecha de su retiro, represente el equivalente actuarial de una pensión pagadera al cumplir el participante los cincuenta y ocho (58) años de edad.

La anualidad mínima de retiro por edad, pagadera en todo caso según lo dispuesto por esta Ley, será el treinta por ciento

BH-ERS-EX-009169

(30%) de la retribución promedio; y la anualidad máxima de retiro por edad será el sesenta por ciento (60%) de la retribución promedio.

No obstante ser vitalicia la anualidad de retiro por edad, si el pensionado fuere empleado en el servicio de cualquier rama del Gobierno Insular incluyendo sus instrumentalidades, o del Gobierno Municipal, los pagos de la anualidad de retiro por edad serán suspendidos durante el tiempo que el referido pensionado fuera empleado, según se define en la presente; pero dichos pagos serán reanudados en la fecha de la terminación del empleo, y al mismo tipo de anualidad que antes de ser empleado el pensionado.   El servicio adicional en esta forma prestado no aumentará la anualidad previamente concedida al pensionado.

Artículo 7.—*Retiro Obligatorio.*

El retiro será obligatorio a la edad de sesenta y dos (62) años para los miembros del cuerpo de la policía y del cuerpo de bomberos; salvo que podrá retenerse en servicio a los oficiales que hayan pasado de esta edad, previa solicitud de dichos oficiales y con la aprobación de los correspondientes Jefes de dichos cuerpos.   En ningún caso se permitirá a ningún oficial continuar en servicio después de haber cumplido la edad de sesenta y cinco (65) años.

Comenzando el 1 de enero de 1952, el retiro será obligatorio para los demás participantes, al cumplir los sesenta y ocho (68) años; y esta edad se reducirá por un (1) año el primero de enero de cada año subsiguiente, hasta alcanzar la edad de sesenta y cinco (65) años, el 1 de enero de 1955.   De esta fecha en adelante la edad de sesenta y cinco (65) años será la edad de retiro obligatorio para todos los participantes excepto los miembros de la Asamblea Legislativa, del cuerpo de la Policía y del cuerpo de bomberos, salvo en aquellos casos en que el Jefe de la agencia desee retener los servicios del participante por un período fijo adicional, con la aprobación de éste y del Director de la Oficina de Personal.

Artículo 8.—*Anualidades por Traspaso* (*Reversionary Annuity*)

—Opcional del Beneficiario en la fecha de su Retiro.

Todo participante podrá elegir, al retirarse, el percibo de una anualidad por retiro menor de la que tiene derecho por

LEYES DE PUERTO RICO                    1319

concepto de su anualidad por retiro, y proveer con la diferencia, según se determinare actuarialmente, una o más anualidades a favor de sus dependientes, cuyos nombres aparecerán en una orden escrita radicada con el Administrador. Este privilegio se concederá siempre que el participante se someta a examen médico y llene los requisitos de salud que establecerá la Junta en sus reglamentos; y siempre que quede probado, a satisfacción del Administrador, que las personas designadas para recibir la anualidad por traspaso son dependientes del participante, y siempre que, además, ninguna anualidad por traspaso que resultare del ejercicio de este privilegio fuere menor de ciento veinte dólares ($120) al año; y que el montante de dicha anualidad o anualidades no exceda del montante de la anualidad reducida, a que, de acuerdo con sus opción, tenga derecho el participante.

El Administrador determinará el montante de las anualidades por traspaso de acuerdo con la orden escrita del participante. Toda anualidad por traspaso comenzará a percibirse a partir del día siguiente a la muerte del participante. Si una o más de las personas designadas como beneficiarios no sobreviviere al participante, no será pagadera la correspondiente anualidad o anualidades por traspaso, de acuerdo con lo dispuesto por esta Ley. Una vez que la anualidad por retiro haya sido concedida, esté vigente, y sea pagadera, el Administrador no permitirá cambio alguno en la orden escrita radicada en el Sistema; salvo que, si el participante muriere dentro de los treinta (30) días siguientes a la fecha de su retiro, se considerará que el participante ha muerto en servicio activo.

Artículo 9.—*Anualidad por Incapidad Ocupacional*

Todo participante que, antes de cumplir los sesenta y dos (62) años, si fuere miembro del cuerpo de la policía o del cuerpo de bomberos; o antes de cumplir los sesenta y cinco (65) años, en el caso de cualquier otro participante; y que como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una Anualidad por Incapacidad Ocupacional; siempre que: (*a*) de uno o más médicos como se dispone en el Artículo 11 de esta Ley se recibiere evidencia adecuada en cuanto a la incapacidad mental o física del participante; (*b*) el participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha inca-

BH-ERS-EX-009171

LEYES DE PUERTO RICO                    1321

pacidad, y (c) la incapacidad fuere indemnizable de acuerdo
con las disposiciones de la Ley de Compensaciones por Acciden-
tes del Trabajo.

El importe de la anualidad será igual al cincuenta por ciento
(50%) del tipo de retribución percibida en la fecha de decla-
rarse la mencionada inhabilidad. La anualidad estará sujeta a
una reducción equivalente a cualesquiera sumas procedentes del
Fondo del Seguro del Estado, a las cuales, al amparo de las dis-
posiciones de la Ley de Compensaciones por Accidentes del Tra-
bajo, fuere elegible y recibiere el participante. Cualesquiera
sumas que, según las disposiciones de la Ley de Compensacio-
nes por Accidentes del Trabajo, adeudare al participante dicho
Fondo del Seguro del Estado, serán pagadas por el Fondo al
Sistema creado por la presente Ley. El pago de dichas sumas
por el Fondo del Seguro del Estado eximirá a dicho Fondo del
Seguro de las obligaciones que por concepto de indemnización
y bajo las disposiciones de la Ley de Compensaciones por Acci-
dentes del Trabajo haya contraído con respecto al participante;
y tendrán dichos pagos la misma validez legal que si se hu-
bieren hecho directamente al participante. El Administrador
queda por la presente autorizado para hacer arreglos con el
Fondo del Seguro del Estado, para recibir los referidos pagos;
y si a la terminación de los pagos al participante por el Sistema,
existiere un sobrante con relación a las sumas pagadas por el
Fondo del Seguro del Estado como compensación; dicho so-
brante se pagará al participante.

Los pagos por concepto de la susodicha anualidad termina-
rán, en todo caso, al cesar la incapacidad del participante; o
cuando éste cumpla la edad de sesenta y dos (62) años, si perte-
neciere al cuerpo de la policía o al cuerpo de bomberos; o, en lo
que respecta a cualquier otro miembro, al cumplir éste la edad
de sesenta y cinco (65) años. Si el pago de la anualidad cesare
por razones de edad, estando todavía incapacitado para el ser-
vicio el participante, éste adquirirá derecho a anualidad por
retiro, según las disposiciones del Artículo 6 de esta Ley; y
el período mínimo de servicios acreditables que para el percibo
de una anualidad por retiro prescribe dicho Artículo no regirá
en lo que respecta al mencionado participante; *Disponiéndose,
sin embargo,* que el importe mínimo de la anualidad por retiro
en cualquier caso de esta índole será el treinta por ciento (30%)
de la retribución promedio.

BH-ERS-EX-009172

Artículo 10.—*Anualidad por Incapacidad No Ocupacional*

Todo participante que, teniendo por lo menos diez (10) años de servicios acreditables, se inhabilitare total y permanentemente para el servicio, debido a un estado mental o físico no provocado por hábitos viciosos, intemperancia, o mala conducta; y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado; o para trabajar en cualquier clase de empleo retribuído por lo menos con una retribución igual a la que perciba tendrá derecho a una anualidad por incapacidad no ocupacional. El retiro del participante tendrá lugar a petición o solicitud suya; o a petición del jefe de su departamento u oficina, mientras esté en servicio el mencionado participante; y de acuerdo con las reglas sobre anualidades por incapacidad provistas en el Artículo 11 de esta Ley.

Al retirarse por incapacidad, todo participante recibirá una anualidad igual al uno y medio por ciento (1½%) de la retribución promedio, multiplicado por el número de años completos de servicios acreditables; *Disponiéndose, sin embargo,* que la anualidad no excederá en ningún caso del cincuenta por ciento (50%) de la retribución promedio; ni será menor del treinta por ciento (30%) de dicha retribución.

En cualquier caso en que se descubriere que la incapacidad del pensionado persiste por razones de intemperancia, mala conducta o hábitos viciosos, el Administrador tendrá autoridad para suspender el pago de la anualidad por incapacidad. En tal caso se reembolsará al pensionado el exceso, si lo hubiere, representado por la diferencia entre las aportaciones acumuladas hasta la fecha del retiro, y la suma total pagada por concepto de la anualidad por incapacidad.

Artículo 11.—*Reglas que Regirán a las Anualidades por Incapacidad*

Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando, mediante un examen practicado por uno o más médicos al servicio del gobierno, o, por no menos de dos médicos en el ejercicio legal de su profesión, que designare el Administrador, se revele que el participante está incapacitado o imposibilitado para cumplir convenientemente los deberes de cual-

LEYES DE PUERTO RICO                    1325

quier cargo que en el servicio del patrono se le hubiere asignado;
o para trabajar en cualquier empleo retribuído con retribución
igual, por lo menos, a la que percibe.

El Administrador exigirá que todo pensionado que esté dis-
frutando de una anualidad por incapacidad se someta periódica-
mente a un examen que practicarán uno o más médicos nom-
brados por el Administrador para determinar el estado de salud
del participante y su grado de incapacidad. Si como resultado
de este examen se encontrase que el pensionado se ha recobrado
de su incapacidad lo suficiente para servir en cualquier empleo
retribuído que le permita percibir una retribución por lo menos
igual a la que percibía al tiempo de su retiro, cesará el pago de
dicha anualidad; y el participante tendrá derecho a ser repuesto
en cualquier puesto que en el servicio del patrono tenga una re-
tribución igual, por lo menos, a la que él recibía al cesar por
razón de incapacidad. Si dicho pensionado ocupase un puesto
con retribución menor a la que percibía al tiempo de su retiro,
tendrá derecho a recibir la diferencia como anualidad de retiro,
siempre que dicha diferencia no exceda del montante de la anua-
lidad por incapacidad de que disfrutaba.

Cuando el Administrador resuelva que ha cesado la incapa-
cidad de un participante, solicitará del Director de Personal del
Gobierno Insular, que reasigne o reemplee al participante en un
puesto cuyo salario sea igual o mayor que el salario que el par-
ticipante percibía al cesar por razón de incapacidad.

Si rehusare un participante someterse a examen médico; o
si rehusare volver al servicio del patrono en un cargo asigná-
dole, los deberes del cual pudiere el participante cumplir razona-
blemente; el Administrador suspenderá entonces los pagos de
la anualidad.

Por la presente se ordena y autoriza al Administrador a ha-
cer arreglos con el Fondo del Seguro del Estado, siempre que
dichos arreglos sean viables, para que se efectúen por los mé-
dicos del Fondo del Seguro del Estado y en las clínicas contra-
tadas o administradas por dicho Fondo del Seguro, los exámenes
médicos antes mencionados.

Artículo 12.—*Anualidad en Caso de Muerte por Causas
Ocupacionales.*

Si la muerte del participante sobreviniere como resultado
y en el curso del empleo, por causas de carácter indemnizable

al amparo de la Ley de Compensaciones por Accidentes del Trabajo; su viuda tendrá derecho a recibir una anualidad igual al cincuenta por ciento (50%) del tipo de retribución que estuviere percibiendo el participante en la fecha de su fallecimiento; y será pagadera a la susodicha viuda durante el tiempo que dure su viudez. Si, además, sobrevivieren al participante hijos menores de dieciocho (18) años, o hijos cursando estudios, su viuda tendrá derecho a recibir una cantidad adicional de diez dólares ($10) mensuales por cada hijo, sujetos los pagos combinados a la viuda e hijos del participante a una limitación del sesenta por ciento (60%) de dicho tipo de retribución. Sí la esposa no sobreviviere al participante, o si la muerte de la viuda sobreviniese mientras esté disfrutando de la anualidad, y sobrevivieren hijos menores de dieciocho (18) años, o hijos cursando estudios, cada hijo tendrá derecho a recibir una anualidad igual a veinte dólares ($20) mensuales hasta cumplir la edad de dieciocho (18) años, o hasta terminar los estudios, sujetos los pagos a los referidos hijos al máximo del sesenta por ciento (60%) del tipo de retribución que estuviere percibiendo el participante en la fecha de su fallecimiento.

Las anualidades pagaderas al amparo de esta Ley estarán sujetas a reducciones equivalentes a la compensación recibida, según las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo, por la viuda y los hijos del participante. Cualesquiera sumas que, de acuerdo con las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo, adeudare el Fondo del Seguro del Estado a dichos viuda e hijos, serán pagadas por éste al Sistema que por la presente se crea. El pago de dichas sumas por el Fondo del Seguro del Estado eximirá a dicho Fondo del Seguro de las obligaciones que bajo las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo haya contraído con respecto a la viuda y los hijos del participante; y tendrán dichos pagos la misma validez legal que si se hubiere hecho directamente a la viuda y los hijos del participante. El Administrador hará arreglos con el Fondo del Seguro del Estado para recibir estos pagos según se dispone en la presente Ley.

Si no sobrevivieren al participante esposa o hijos menores de dieciocho (18) años, o hijos cursando estudios, los pagos se efectuarán según se dispone en el primer párrafo del Artículo 13 de esta Ley. Si el montante de los pagos hechos a

una viuda o hijos, fuere menor que el total de los pagos dis-
puestos en el primer párrafo del Artículo 13 de esta Ley, el
remanente será pagadero a los herederos del participante fene-
cido.

Artículo 13.—*Pagos por Defunción—Participantes Activos.
—Participantes Retirados.*

Al morir un participante mientras esté prestando servicio;
o mientras, esté disfrutando de licencia regular con sueldo, o
licencia autorizada por enfermedad o incapacidad o para estu-
dio; a la persona o personas que hubiere nombrado por orden
escrita debidamente reconocida y radicada con el Administra-
dor; o a sus herederos, si no hubiere hecho tal nombramiento;
se pagará lo siguiente: (*a*) las aportaciones acumuladas a favor
del participante hasta la fecha de su muerte; (*b*) un beneficio
por defunción provisto con aportaciones hechas por el patrono,
si dentro de un período de doce (12) meses antes de la fecha
de su muerte hubiere estado el participante recibiendo una
retribución o una anualidad por incapacidad no ocupacional; a
menos que éste no dejare dependientes con derecho a recibir
una anualidad por muerte del participante debida a causas ocu-
pacionales según se dispone en el Artículo 12 de la presente.
Este beneficio por defunción será igual al tipo anual de retri-
bución vigente en la fecha del fallecimiento, si el empleado
estuviere en servicio activo; o en la fecha en que últimamente
hubiere prestado servicios.

A la muerte de un participante que estuviere recibiendo
una anualidad por retiro o por incapacidad, a menos que de
acuerdo con las disposiciones de esta Ley no fuere pagadera
una anualidad por traspaso; se pagará a la persona o per-
sonas que éste hubiere nombrado en orden escrita debidamente
reconocida y radicada con el Administrador o a sus herederos si
no se hubiere hecho tal nombramiento, un beneficio por defunción
en una sola cantidad en efectivo; beneficio que consistirá del
exceso, si lo hubiere, de las aportaciones acumuladas a favor
del participante hasta la fecha de su retiro, sobre la suma
total de todos los pagos de anualidad por retiro recibidas por
él antes de su muerte; *Disponiéndose que*, en todo caso, será
pagadera una cantidad mínima de doscientos dólares ($200).

Si la muerte de cualquier participante retirado sobreviniere
dentro de los treinta (30) días siguientes a la fecha del retiro,

LEYES DE PUERTO RICO                    1331

se interpretará, en cuanto a cualquiera y todas las disposiciones de esta Ley, como ocurrida durante el servicio, no obstante cualquier otra disposición de esta Ley en contrario.

### Artículo 14.—*Reembolsos*

A su separación del servicio, siempre que esta separación fuere permanente, se pagará a todo participante sin derecho a anualidad por retiro, y a solicitud suya, salvo lo que en contrario se disponga en la presente, un reembolso equivalente al importe de sus aportaciones al Sistema, incluyendo los intereses al tipo corriente. Cualquier participante tendrá también derecho al reembolso de las aportaciones hechas a un fondo de pensiones sobreseído, si lo hubiere, de acuerdo con las disposiciones de las leyes que rigen a estos fondos.

Todo participante que reciba un reembolso perderá, y se entenderá que renuncia a, todo derecho adquirido en el Sistema. Si dicha persona volviere a ser empleado y miembro del Sistema e hiciere aportaciones al referido Sistema por lo menos durante tres (3) años; podrá devolver las sumas anteriormente recibidas en calidad de reembolso, junto con los intereses que al tipo corriente hubieren devengado dichas sumas durante el período en que estuvo separado del servicio. Hechas tales restituciones volverá a recibir crédito el participante por el período de servicios acreditables que le hubiere sido anulado al separarse del servicio.

Los reembolsos a empleados separados del servicio del Gobierno antes de la fecha de aplicación del Sistema y que no se hicieren miembros del mismo en esa fecha, se regirán por las Leyes vigentes en la fecha de su separación del servicio; y los pagos de cualesquiera reembolsos adeudados a dichos empleados, estarán sujetos a las condiciones estipuladas en dichas Leyes.

A la muerte de un participante que no esté ya prestando servicios, y que tuviere derecho a percibir, de acuerdo con lo dispuesto en el Artículo 6 de esta Ley, una anualidad por retiro diferida, pero no hubiere comenzado a percibirla; las aportaciones que hubiere acumulado hasta la fecha de su muerte serán reembolsadas a la persona o personas que el participante hubiere designado, o a los herederos de este último, si tal designación no hubiere sido hecha.

Todo participante a quien se concediere, mediante legislación especial, una pensión o anualidad por retiro, no obstante

cualquier otra disposición de esta Ley en contrario, perderá todos sus derechos a retiro y otros beneficios concedidos al amparo de esta Ley; y perderá, además, todo derecho al reembolso de sus aportaciones al Sistema.

Artículo 15.—*Administración*

El Sistema creado por esta Ley se considerará un fideicomiso.

Por la presente se crea y establece una Junta de Síndicos que será responsable de ver que se pongan en vigor las disposiciones de esta Ley. Dicha Junta constará de cinco miembros, tres de los cuales serán miembros natos a saber: el Tesorero de Puerto Rico, el Comisionado del Trabajo y el Director del Presupuesto; y dos que serán nombrados por el Gobernador de Puerto Rico por términos de tres años, y quienes deberán ser empleados pertenecientes al Sistema que tengan por lo menos diez años de servicios acreditables. Los primeros nombramientos serán hechos por término de uno y dos años, respectivamente. Los miembros natos podrán designar delegados que los representen en las reuniones de la Junta.

El Sistema creado por la presente, se organizará como una división de la Oficina de Personal, y sus operaciones se integrarán, en cuanto sea posible y viable, con las funciones de dicha agencia. El Director de Personal del Gobierno Insular será el Administrador del Sistema.

La Junta tomará posesión en la fecha de vigencia de esta Ley y elegirá a uno de sus miembros para actuar como Presidente y a otro para actuar como Secretario. El término de los cargos, comenzará a partir de esa fecha. Los miembros de la Junta desempeñarán sus cargos sin remuneración, salvo que el Sistema les reembolsará todo gasto necesario en que incurrieren por sus servicios en la Junta.

Artículo 16.—*Facultades y Deberes de la Junta.*

Para efectuar las disposiciones de esta Ley, la Junta adoptará reglas para su organización y funcionamiento interno, y aprobará y hará que se promulguen los reglamentos que de tiempo en tiempo prepare el Administrador para la administración del Sistema, de conformidad con la Ley.

Además de los deberes que surjan de esta Ley, la Junta tendrá las siguientes facultades y obligaciones:

(a) Por lo menos trimestralmente cada año, celebrar sesiones ordinarias; y aquellas sesiones extraordinarias que se estimen

LEYES DE PUERTO RICO 1335

necesarias. Todas las sesiones serán públicas. La Junta llevará actas completas de todos sus procedimientos.

(*b*) Considerar y tomar acuerdos sobre asuntos que le refiera el Administrador relacionados con normas, cambios o revisiones del Sistema.

(*c*) Aprobar las inversiones de fondos del Sistema propuestas por el Administrador.

(*d*) Investigar y resolver en apelación, a solicitud de parte, controversias surgidas entre miembros del Sistema y el Administrador.

(*e*) Tan pronto como sea posible después de finalizar cada año económico, pero a más tardar el primero de noviembre de cada año revisar, aprobar y ordenar que se transmita al Gobernador y a la Asamblea Legislativa un informe anual que contenga, entre otras cosas, un balance de situación económica; un estado de ingresos y desembolsos para el año; un balance de valoración actuarial; estados detallados acerca de las inversiones hechas o liquidadas durante el año; un informe sobre los títulos de inversión propiedad del Sistema; y otros datos estadísticos y financieros que se consideren necesarios para una adecuada interpretación de la situación del Sistema y del resultado de sus operaciones. La Junta hará publicar, para conocimiento de los miembros del Sistema, un resumen del referido informe anual.

(*f*) Hacer contratos, y contratos de servicios profesionales, demandar incluyendo ser demandada con el nombre y título del Sistema de Retiro de los Empleados del Gobierno Insular de Puerto Rico y sus Instrumentalidades.

(*g*) Con sujeción a las limitaciones y condiciones que en esta Ley se prescriben, contratar con el Banco Gubernamental de Fomento de Puerto Rico, para la inversión de cualesquiera dineros pertenecientes al Sistema.

Artículo 17.—*Facultades y Deberes del Administrador*

El Administrador dirigirá y supervisará toda actividad técnica y administrativa del Sistema; designará a una persona que, bajo su dirección inmediata estará a cargo y será responsable del debido funcionamiento del Sistema; seleccionará el personal del Sistema con sujeción a la Ley de Personal y a los reglamentos de la Junta de Personal; podrá contratar los servicios de técnicos y especialistas; y velará porque se pongan en vigor las disposiciones de esta Ley. *Disponiéndose, sin embargo,* que todo el per-

BH-ERS-EX-009179

sonal permanente de la Oficina de la Junta de Retiro creada por
la Ley Núm. 23 del 16 de julio de 1935, pasará a la Oficina de
Personal a ocupar puestos análogos en la nueva organización
para la administración del sistema de retiro creado por esta Ley
y estos empleados desempeñarán las funciones que les designare
el Administrador del Sistema y dichos empleados ingresarán
automáticamente en el Servicio por Oposición sin necesidad de
tomar exámenes.

El Administrador tendrá, además, las siguientes facultades y
obligaciones:

(1) Establecer una oficina para el Sistema, y bajo la super-
visión del Auditor de Puerto Rico, disponer lo necesario para la
instalación de un sistema completo y adecuado de contabilidad y
registros.

(2) Con el consejo de un actuario, adoptar todas las guías
actuariales necesarias para el funcionamiento del Sistema; y
compilar los datos estadísticos que fueren necesarios para hacer,
periódicamente, valoraciones y estudios actuariales de las ope-
raciones del Sistema.

(3) Asistir a todas las reuniones de la Junta y ejecutar todos
los acuerdos que le sean encomendados por ella.

(4) Certificar al Auditor y al Tesorero de Puerto Rico los
pagos necesarios que han de hacerse según las disposiciones de
esta Ley.

(5) Remesar o depositar a nombre del Tesorero de Puerto
Rico, y rendir cuentas, de acuerdo con la ley y los reglamentos
en vigor, de todos los dineros recibidos pertenecientes al Sistema.

(6) Preparar reglamentos para la aprobación de la Junta.

(7) Hacer recomendaciones a la Junta para la inversión de
los fondos del Sistema y sobre cambios y revisiones del Sistema.

(8) Preparar el informe anual y someterlo a la Junta para
su revisión y aprobación.

(9) Expedir un estado de cuenta a cualquier participante
que lo solicite, mostrando el montante de sus aportaciones acu-
muladas en el Sistema.

(10) Rendir a la Junta cualquier informe que ésta solicite.

Artículo 18.—*Tesorero—Abogado—Auditor*

El Tesorero de Puerto Rico será el tesorero del Sistema; y
deberá (*a*) actuar como custodio oficial del efectivo y los valo-
res propiedad del Sistema, proveer facilidades adecuadas para

BH-ERS-EX-009180

la conservación de dichos valores en depósito seguro, y mantener dichos efectivos y valores sujetos a la orden de la Junta; (b) recibir todas las partidas de efectivo propiedad del Sistema; cobrar el capital y los intereses de todos los valores propiedad del Sistema, según vayan venciendo y sean pagaderos dichos intereses y capital, y depositar todas las susodichas cantidades en un fondo especial de fideicomiso mantenido a nombre del Sistema; (c) de acuerdo con las órdenes y autorización del Administrador, hacer los pagos para los fines especificados en esta Ley; y (d) someter aquellos informes periódicos que la Junta requiriere.

El Procurador General de Puerto Rico deberá representar al Sistema, en todo procedimiento judicial.

El Auditor de Puerto Rico tendrá jurisdicción sobre la contabilidad del Sistema, así como también sobre todos los comprobantes de pago y propiedad pertenecientes al mismo. La instalación de los libros, cuentas y registros del Sistema se hará bajo su dirección. Cada año el Auditor hará una intervención y examen completo de los libros, cuentas y archivos del Sistema, para comprobar los ingresos y desembolsos de éste; todo el activo y pasivo del Sistema. Dicha intervención se extenderá a los métodos y normas de funcionamiento, para determinar si se ajustan a los requisitos de las disposiciones de esta Ley y a los reglamentos aprobados por la Junta.

Artículo 19.—*Inversiones*

Las reservas del Sistema en exceso del efectivo que pudiere necesitarse para las operaciones corrientes podrán invertirse y reinvertirse en las siguientes clases de valores y bajo las condiciones y limitaciones que se imponen en la presente:

(a) Bonos o valores que sean obligaciones directas de los Estados Unidos, o que estén garantizados, en cuanto a su capital e intereses, por los Estados Unidos;

(b) Bonos o títulos de deuda que representen obligaciones directas, o están garantizadas por la buena fe y el crédito, de El Pueblo de Puerto Rico, sus instrumentalidades, empresas o corporaciones públicas, y municipalidades;

(c) Bonos o títulos de deuda que representen obligaciones directas, o estén garantizados por la buena fe y el crédito, de cualquier estado de los Estados Unidos en donde exista el poder de imponer contribuciones para el pronto pago del capital e

BH-ERS-EX-009181

LEYES DE PUERTO RICO                1341

intereses de dichos bonos o títulos de deuda; siempre que en la fecha de dicha inversión no esté en descubierto en cuanto al pago del capital o intereses de dichos valores;

(d) Bonos o títulos de deuda que representen obligaciones directas generales de cualquier condado o ciudad de los Estados Unidos que tenga una población de no menos de veinticinco mil (25,000) habitantes, según lo demuestre el último censo federal; y que en la fecha de dicha inversión, no esté en descubierto en cuanto al pago del capital o de los intereses, de cualquier emisión de bonos que representen obligaciones de carácter general y cuando se paguen dichos bonos o títulos de deuda del producto de contribuciones *ad valorem* impuestas sobre la propiedad tributable comprendida dentro de su jurisdicción; y siempre que a dicha ciudad no se le permita por ley incurrir en deudas en exceso del diez por ciento (10%) del valor de tasación de la propiedad comprendida dentro de su jurisdicción;

(e) Primeras hipotecas indivisas sobre bienes raíces mejorados, libres de gravámenes, y valorados por lo menos en un cincuenta por ciento (50%) más de la suma prestada por razón de las mencionadas hipotecas; debiendo verificarse dichos valores mediante tasación realizada por un tasador de bienes raíces reconocido y de experiencia, tasador que será pagado a base de honorarios. Antes de hacerse inversión alguna, el Tesorero de Puerto Rico deberá expedir un certificado del valor de tasación de la referida propiedad. La inversión en cada hipoteca individual no excederá de diez mil dólares ($10,000); y el importe total de las inversiones en estas hipotecas en ningún momento excederá del cincuenta por ciento (50%) del total del activo invertido del Sistema. Por bienes raíces mejorados se entenderá solares de zonas urbanizadas en los cuales estén ubicados edificios permanentes propios para fines comerciales o residenciales.

También podrán invertirse los fondos en préstamos a empleados permanentes, miembros del Sistema, para la construcción o adquisición de hogares, o para la cancelación de primeras hipotecas sobre hogares bajo las siguientes condiciones y limitaciones:

(a) La inversión en cada préstamo individual no excederá de diez mil dólares ($10,000) ni podrá ser mayor de tres veces

BH-ERS-EX-009182

el sueldo anual del empleado luego de descontarle las cantidades anuales que por concepto de préstamos en vigor le sean deducidas de su sueldo.

(b) El préstamo no podrá exceder del noventa por ciento (90%) del valor del inmueble adquirido o a construirse con el importe del préstamo, ni podrá extenderse por más de veinte (20) años ni por un número de años mayor que la diferencia entre la edad del empleado y la edad fijada en esta ley para el retiro opcional del empleado prestatario.

(c) El préstamo estará garantizado por primera hipoteca sobre los bienes inmuebles para cuya adquisición se hizo el préstamo, por las aportaciones acumuladas y que se acumulen a favor del prestatario en el Sistema y por la cantidad que en caso de muerte del prestatario pueda corresponder a sus herederos o a la persona que hubiere él nombrado beneficiario, según dispuesto en el Artículo 14 de esta Ley.

(d) Cuando el préstamo se conceda para la construcción de un hogar, el prestatario ofrecerá al Sistema en garantía, mientras se ejecuta la construcción y hasta que se otorgue la correspondiente escritura de hipoteca, dos firmas de reconocida solvencia moral y económica, además de la garantía colateral de su haber mensual, del cual se descontará mensualmente la suma que se ha obligado a pagar el prestatario, y de las garantías estipuladas en el apartado (c) que se precede.

(e) El pago de primas por concepto de pólizas de seguro y el pago de contribuciones en relación con los bienes inmuebles hipotecados para garantizar el préstamo, se incluirán como parte de la deuda y se descontará proporcionalmente cada mes, juntamente con el descuento para cubrir el pago de principal e intereses.

(f) La Junta podrá dedicar a esta clase de inversiones hasta un veinticinco por ciento (25%) del total del activo invertido del Sistema.

Todas las obligaciones del Gobierno de los Estados Unidos, o de sus estados y sus municipios u otras inversiones que se originen dentro de los límites de los Estados Unidos continentales, que el Sistema posea, deberán ser puestos bajo la custodia de un depositario especial que ofrezca la debida seguridad y que esté dentro de los límites de los Estados Unidos continen-

BH-ERS-EX-009183

tales. Dicho depositario especial será el mismo que utilice el Tesorero de Puerto Rico para salvaguardar los valores de El Pueblo de Puerto Rico.

Los bonos, hipotecas, y demás títulos de deuda que el Sistema posea y que hubieren sido emitidos y originados en Puerto Rico, los retendrá bajo su custodia el Tesorero de Puerto Rico; entendiéndose que todos o cualquiera de los referidos valores podrán ser traspasados al agente custodio del Tesorero de Puerto Rico en Estados Unidos continentales, en caso que dicho traspaso fuere deseable o necesario.

Según lo dispuesto en el Artículo 16 de esta Ley, la Junta podrá autorizar al Administrador para contratar con el Banco Gubernamental de Fomento para Puerto Rico con el fin de invertir los dineros del Sistema con sujeción a las siguientes condiciones y limitaciones:

(a) Podrá autorizarse al Banco Gubernamental de Fomento para Puerto Rico a comprar, vender, o cambiar, por cuenta del Sistema, cualquiera de los valores antes descritos, o a los cuales se haga referencia más adelante en esta Ley; y bajo las condiciones que más adelante se prescriben; y el mencionado banco podrá ser pagado mediante contrato por servicios prestados, o por medio de primas sobre valores;

(b) Podrá contratar para comprar del Banco Gubernamental de Fomento certificados de depósito especiales expedidos por dicho Banco; *Disponiéndose*, que se separarán en cuentas especiales como garantía colateral, títulos de deuda de las siguientes clases, por un montante no menor del valor del principal no pagado de dichos certificados de depósito especiales:

1. Hipotecas de la Autoridad Federal Sobre Hogares, otorgadas y garantizadas de acuerdo con el reglamento de la Autoridad Federal sobre Hogares creada por el Presidente de los Estados Unidos de acuerdo con la autoridad que le confiere el Título I de la Ley de la Autoridad Nacional sobre Hogares, aprobada el 27 de junio de 1934. Las referidas hipotecas han de otorgarse y garantizarse de conformidad con las disposiciones del Título II—Seguro de Hipotecas, de la Ley de la Autoridad Nacional sobre Hogares, según fué aprobada el 27 de junio de 1934 y según ha sido enmendada hasta la fecha; o de conformidad con lo dispuesto en el Título VI—Seguro de Guerra sobre Hogares, aprobado el 28 de marzo de 1941 como enmienda a la Ley

BH-ERS-EX-009184