# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>X | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>x | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

## MOVANTS' RESPONSES AND OBJECTIONS TO THE
## OVERSIGHT BOARD'S FIRST SET OF CONTENTION INTERROGATORIES

E

Pursuant to Rule 7033 of the Federal Rules of Bankruptcy Procedure, and Federal Rule of Civil Procedure 33 incorporated therein, and Magistrate Judge Dein's May 6, 2019 Order, Movants[1] hereby respond to the Oversight Board's First Set of Contention Interrogatories to Movants, dated May 8, 2019 ("Interrogatories").  Movants further reserve the right to supplement, amend or modify these objections and responses as necessary.

## GENERAL OBJECTIONS

1.      These General Objections are applicable to and incorporated into each and every individual response that Movants make to the Interrogatories whether or not restated in response to any particular request. Movants' responses are made without waiving, or intending to waive, these General Objections, and Movants specifically reserve all of their other objections.

2.      Movants' responses to the Interrogatories are not intended to be, and shall not be construed as, agreement with the Debtor's characterization of any facts, circumstances, or legal obligations. To the extent any defined term or phrase is clear, Movants do not accept or endorse the characterization, but do not object to the defined term or phrase since its meaning is clear and any characterization is irrelevant.

---

[1]   Movants include Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

3.      Movants' responses to the Interrogatories contained herein are made on the basis of information now known to Movants and are made without waiving any further objections to or admitting the relevancy or materiality of any of the information requested.

4.      Movants object to the Interrogatories, including the Instructions and Definitions, to the extent they seek to impose obligations on Movants that are inconsistent with or exceed obligations under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States District Court for the District of Puerto Rico, the Local Rules of the United States Bankruptcy Court for the District of Puerto Rico, any other applicable rule or law, or any order of this Court.

5.      Movants object to the Interrogatories to the extent they seek information that is subject to the attorney-client privilege, the attorney-work product doctrine, the joint defense privilege, or any other applicable privilege. Movants construe the Interrogatories to seek nonprivileged information, and, as such, to the extent Movants provide information, they will provide information that they believe is non-privileged and otherwise properly discoverable. Movants do not intend to provide any privileged information. Any production of privileged material is therefore inadvertent and shall not constitute waiver of any privilege.

6.      Movants object to each and every Interrogatory to the extent they seek information that is not within Movants' possession, custody or control.

7.      Movants object to the Interrogatories to the extent that they purport to require Movants to search for and provide information that is not reasonably accessible as that term is generally understood.

8.      Movants object to the Interrogatories to the extent that any requests are compound, vague, overly broad, ambiguous, or written in a form that is confusing or potentially misleading.

9.      Movants object to the "Definitions" in the Interrogatories to the extent they define terms inconsistently with or more broadly than their usage under the Federal Rules, Bankruptcy Rules, Local Rules, or Local Bankruptcy Rules.

10.     Movants object to the Interrogatories to the extent that any Definition or any Interrogatory seeks to define terms and/or characterize evidence or disputed issues in the case. To the extent Movants adopt any terms used by the Debtor in the Interrogatories, such adoption is limited solely to these responses.

11.     Movants object to the definition of "Movants," "You," and "Yours" as overly broad insofar as it extends beyond the movants named in the *Urgent Motion to Expedite Consideration of Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico For Relief From the Automatic Stay* [Case No. 17-3283 Docket No. 5196; Case No. 17-3566 Docket No. 367] and includes individuals and entities who have no connection with the current litigation and have identities separate and apart from Movants, including Movants' "affiliates, predecessors, successors, partners, parent company, principals, officers, directors, attorneys, agents, employees, representatives, and other persons acting on their behalf." Movants will construe the Interrogatories that refer to "Movants," "You," and "Yours" as referring exclusively to the named Movants with respect to the ERS Bonds, and disclaim any obligation to seek information from any other sources.

12.     Movants object to the definition of "ERS Bonds" as confusing or potentially misleading. The ERS Bond Resolution authorized the issuance of both senior and subordinate bonds, but only senior bonds were ultimately issued by the ERS. Movants will construe the Interrogatories that define "ERS Bonds" as referring to Bonds as that term is defined in the ERS Bond Resolution.

4

13.     Movants object to the definition of "Pledged Property" as confusing or potentially misleading. Movants will construe the Interrogatories that refer to "Pledged Property" as referring to Pledged Property as that term is defined in the ERS Bond Resolution.

14.     Movants object to Instruction No. 12, which provides that "[u]nless otherwise states, these Interrogatories are without time limit," on the grounds that it is overly broad insofar as it purports to seek information at any time and contains no limitation on date ranges. In the absence of any agreement among the parties as to the applicable date ranges, Movants will respond to each Interrogatory within a date range that is reasonable for each request.

15.     Movants object to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent that the information sought is publicly available, unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.

16.     Movants object to each Interrogatory to the extent it seeks information that will be the subject of, and produced in the course of, expert discovery, or otherwise concerns facts outside of their knowledge.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify what assets of ERS You contend constitute Your collateral or Your Pledged Property, and state the basis for Your contention.

**Response to Interrogatory No. 1**: Subject to and without waiving the foregoing General Objections, Movants respond as follows:

The assets of ERS that constitute Movants' collateral is the Pledged Property (as defined in the ERS Bond Resolution), and all proceeds thereof.   The documents supporting this contention include the ERS Bond Resolution, the Security Agreements for the ERS Bonds (*see, e.g.,* ERS_BH_000815, ERS_BH_001440, and ERS_BH_002321), and the associated UCC filings (*see, e.g.,* BH-ERS-C-003445, BH-ERS-C-003451, BH-ERS-C-003457, BH-ERS-C-003466, BH-ERS-C-003475, and BH-ERS-C-003479).

Further responding, Movants state that the Pledged Property includes:

1.     "All Revenues";

2.     "All right, title, and interest of [ERS] in and to Revenues, and all rights to receive the same;

3.     the funds, accounts, and subaccounts held for the benefit of ERS bondholders;

4.     "Any and all other rights and personal property of every kind and nature … pledged and assigned by [ERS] to the Fiscal Agent as and for additional security for the [ERS Bonds]…."; and

5.     "Any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property … including, without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing."

ERS Bond Resolution § 501 & Exh. B, VI-33, VI-36, VI-37.

The ERS Bond Resolution defines "Revenues" to include, among other things:

1.  "All Employers' Contributions received by the System or the Fiscal Agent"

2.  "Any other revenues, fees, charges, surcharges, rents, proceeds or other income and receipts received by or on behalf of the System or by the Fiscal Agent, lawfully available for the purposes of [the Bond Resolution] and deposited by or on behalf of [ERS] or by the Fiscal Agent in any Fund, Account, or Subaccount held by the Fiscal Agent under the terms of [the Bond Resolution]...."

ERS Bond Resolution Exh. B, VI-37

"Employers' Contributions" are the "contributions paid from and after the date [of the ERS Bond Resolution] that are made by the Employers [(as that term is defined in the ERS Bond Resolution),] and any assets in lieu thereof or derived thereunder which are payable to [ERS] pursuant to Sections 2-116, 3-105, and 4-113 of [Act 447-1951, as amended and supplemented]." ERS Bond Resolution Exh. B, VI-36.

**INTERROGATORY NO. 2:** Identify what assets of the Commonwealth You contend constitute Your collateral or Your Pledged Property, and state the basis for Your contention.

**Response to Interrogatory No. 2**: Subject to and without waiving the foregoing General Objections, Movants respond as follows:

The assets of the Commonwealth that constitute Movants' collateral are any and all of the Pledged Property in which the Commonwealth asserts any right, title, or other interest. For the avoidance of doubt, such assets include Pay-Go Fees (as that term is defined in Act 106-2017), and the right to receive Pay-Go Fees from: (i) the Commonwealth, its agencies and instrumentalities; (ii) municipalities; and (iii) public corporations.

The ERS Bond Resolution defines "Pledged Property" to include, *inter alia*, "Revenues," which is defined to included "Employer Contributions"; "[a]ll right, title, and interest of [ERS] in and to Revenues, and all rights to receive the same"; and "[a]ny and all cash and non-cash proceeds, products, rents and profits from any of the Pledged Property … including, without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing."  ERS Bond Resolution Exh. B, VI-36, VI-37.  In addition, the Security Agreements that ERS executed in connection with the ERS Bonds grant the Bondholders a security interest in (i) the Pledged Property, and (ii) all proceeds thereof, subject to application as permitted by the Bond Resolution (*see, e.g.,* ERS_BH_000815, ERS_BH_001440, and ERS_BH_002321). Further, § 9-315 of the Uniform Commercial Code ("UCC"), as adopted by Puerto Rico, provides that "(1) a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and (2) a security interest attaches to any identifiable proceeds of collateral." 19 L.P.R.A. § 2265(a). "Proceeds" include, *inter alia*, "[w]hatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral," "whatever is collected on, or distributed on account of, collateral," or "rights arising out of collateral." 19 L.P.R.A. § 2212(64).  These UCC provisions were not altered, amended, or preempted by PROMESA, Joint Resolution 188, or Act 106.

Joint Resolution 188 and Act 106 purported simultaneously to: (i) eliminate Employers' Contributions and Employers' obligation to pay them to ERS, *see* Joint Resolution 188 § 4; and (ii) establish Pay-Go Fees and Employers' obligation to pay them to the Commonwealth, *see id.*; *see also* Act 106 § 2.1(b).  For purposes of determining the assets that constitute Movants' collateral, Pay-Go Fees are the same thing as the Employers' Contributions.   In addition, to the

extent Joint Resolution 188 and Act 106 established a right of the Commonwealth to receive future Pay-Go Fees from Employers, that right was a transfer, sale, disposition, or other exchange of ERS's right to receive future Employer Contributions.   Accordingly, pursuant to the Bond Resolution, the Security Agreements, and UCC § 9-315, the Pay-Go Fees and the Commonwealth's right to receive them also constitute Pledged Property.

Many factual bases support this contention, including without limitation the following:

For many years before 2017, ERS was not actuarially sound. (*See, e.g.,* Act 106 Statement of Motives.)  Rather, the level of contributions paid by employers was insufficient to cover the current benefits that were being paid to pension beneficiaries, much less fund ERS's accrued liabilities.  (*See* ERS, Basic Financial Statements and Required Supplementary Information, as of June 30, 2014, at 9, 15–17 (June 1, 2016), http://www.gdb.pr.gov/investors_resources/documents/ERS-BFS-6-30-14.pdf;  ERS,  Basic  Financial  Statements  and  Required  Supplementary Information, as of June 30, 2016 (October 5, 2018), https://emma.msrb.org/ER1313364.pdf.)  To cover the shortfall in cash flow, ERS used, among other funds, its cash reserves and investments to pay current benefits.  (*See* ERS, Basic Financial Statements and Required Supplementary Information, as of June 30, 2016, at 8 (October 5, 2018), https://emma.msrb.org/ER1313364.pdf.) By the beginning of the 2017 calendar year, ERS's investments were nearly depleted, and it was projected that its investments would be totally depleted in the near future. (*See, e.g.,* Act 106 Statement of Motives.)  Under the governing statutes, employers were always statutorily required to make contributions sufficient to meet ERS's actuarially determined needs.  (*See* §§ 2–116, 4-113 Act 447-1951; Act 32-2013.)  Once ERS had depleted its investments, there would have been no alternative but to increase employer contributions to levels sufficient to fund ERS's obligations

to pay current benefits to participants in its retirement plans. The result would have been a "pay-as-you-go" system.

Accordingly, when Joint Resolution 188 and Act 106 were enacted, the "new" Pay-Go system was, in all material respects, the same as the pre-2017 ERS pension system. The benefits paid under the "new" system are the same benefits that were accrued under ERS. (*See, e.g.,* Act 106 Statement of Motives; Explanatory Memorandum on Pension Reform, at 5 (August 4, 2017), https://drive.google.com/file/d/1Ji5XdVC7O0xKetjF4xj89GhlZ1pRXpNY/view.)   The Pay-Go Fees that fund those benefits come from the same employers who previously paid employer contributions to ERS, and they are paid in amounts that reflect amounts required to fund the pension benefits accrued under ERS, for which the employers were already statutorily liable. (*See, e.g.,* ERS_LS0005508; ERS_LS0001817;  ERS_LS0005626.)  To the extent there were changes in how the Pay-Go Fees on Employers are calculated under the Pay-Go system, those changes are ones that could have been made to required employer contributions within ERS.  In fact, at least initially, under the "new" regime, ERS was charged with determining and administering the amount of the Pay-Go Fee that each public corporation or municipality was required to pay. (*See, e.g.,* ERS_LS-0005508; ERS_LS0001817).  When the Commonwealth's Deputy Secretary of Central Accounting distributed a circular regarding the implementation of the "new" Pay-Go system in July 2017, he explained that "the only thing that changes is that the withholdings from employees and the employer contribution will be deposited in the bank accounts that are established in the circular letter."  (ERS-CW_0000304.)

Thus, at bottom, and as the Commonwealth's Treasury Secretary and ERS's Administrator both acknowledged, when the employer contributions under the ERS system were eliminated on July 1, 2017, "such items [were] substituted by the 'PayGo Charge.'"   (ERS_LS0001817)  As

such, the Pay-Go Fees, and the Commonwealth's right to receive them, constitute Pledged

Property.

**INTERROGATORY NO. 3:** State the basis for Your contention that there has been diminution of Value of Pledged Property or diminution of any collateral You contend secures the ERS Bonds since the Petition Date, and the amount of any such diminution.

      **Response to Interrogatory No. 3**: Subject to and without waiving the foregoing General

Objections, Movants respond as follows: The value of the Pledged Property has been diminished

by, among other things: the diversion of Movants' Pledged Property from ERS to the

Commonwealth as a result of Joint Resolution 188 and Act 106; the Commonwealth's

commingling and dissipation of Movants' Pledged Property to pay other creditors while the

automatic stay is in effect; and the Commonwealth's, ERS's, AAFAF's, and the FOMB's positions

taken during the Title III proceedings that Movants have no collateral because there is no more

Pledged Property.   This diminution has occurred through various means, including: (i) the

purported elimination of Employers' Contributions (as defined in the ERS Bond Resolution) to

ERS as of July 1, 2017 (*see* Joint Resolution 188); (ii) the requirement that employers make

pension system contributions to the Commonwealth through Pay-Go Fees instead of to ERS

through Employers' Contributions (*see* Act 106); (iii) the development and implementation of a

system for the collection of Pay-Go Fees from employers and disbursement of pension payments

to beneficiaries through mechanisms that purport to bypass the collateral structure and accounts

that were established through the ERS Bond Resolution and that purport to eliminate the ERS

Bondholders' Security Interests (*see e.g.*, ERS_LS0001817, Circular Letter No. 1300-46-17

regarding the implementation of PayGo Retirement System); (iv) the liquidation of ERS's assets

and transfer of such proceeds to the Commonwealth (*see e.g.*, ERS_AAFAF_LS0001280, July 19,

2017 Letter from Executive Director of AAFAF to ERS Administrator directing the liquidation of ERS's investments and transfer of funds to the Secretary of the Treasury); (v) the Commonwealth's ongoing dissipation of Pay-Go Fees received (*see e.g.*, ERS_LS0000690 through ERS_LS0000895; *see also* PayGo and Individual Contribution Debt by Entity Reports, published by AAFAF, http://www.aafaf.pr.gov/reports.html); (vi) the deprivation of Movants' access to the Pledged Property; (vii) the uncertainty of future Pay-Go Fees (*see* Law for Reduction of Administrative Responsibilities of the Municipalities, Senate Bill 1258 (May 17, 2019)); (viii) the uncertainty surrounding the future solvency of the Commonwealth, municipalities, and public corporations charged with paying the Pay-Go fees (*see* Governor Rosselló Warns Fiscal Challenges Will Make Some Municipalities Inoperable Within 5 Years Absent Structural Reform, Acknowledges Opposition to County Plan's (March 14, 2019), https://app.reorg.com/v3#/items/intel/1869?item_id=70493; *see also* Oversight Board Letter on Municipalities (May 9, 2019), https://drive.google.com/file/d/1f6PuHmXjgaRtg7fvnVAFPVgR-RL7IQD3/view); and (ix) the uncertainty surrounding the future solvency of the pension system (*see* Oversight Board Letter on Pension Payments (April 30, 2019), https://drive.google.com/file/d/1jGz3cotsGds4-1G5-X0MN0C-A01drDse/view).

Publicly available information further indicates that the value of the Pledged Property has diminished since implementation of the automatic stay imposed upon commencement of ERS's Title III case.  On May 20, 2019, the Financial Oversight and Management Board and the Official Committee of Unsecured Creditors filed two complaints on behalf of ERS in Adversary Proceeding No. 17-03566-LTS, Doc. Nos. 516, 517, in which they allege that ERS had assets with a face value of over $2 billion as of the ERS Petition Date.  Movants are currently without sufficient information to either admit or deny the allegation that ERS had assets with a face value

of over $2 billion as of the ERS Petition Date (which presumably does not account for liabilities), but publicly available documents indicate that the assets held by ERS have diminished substantially since the ERS Petition Date, including through the transfer and dissipation of the Pledged Property following passage of Joint Resolution 188 and Act 106. *See* ERS_BH_002547 through ERS_BH_003275. As a result of Joint Resolution 188 and Act 106—which were enacted after ERS's Title III case was commenced— Employers' Contributions (as defined in the ERS Bond Resolution) to ERS were purportedly eliminated as of July 1, 2017, and since then employers have instead been making pension system contributions, in the form of Pay-Go Fees, directly to the Commonwealth. Moreover, in connection with this Lift-Stay Motion, Respondents have taken the position that Movants do not hold a security interest in the Pay-Go Fees, and that because Employers' Contributions (as defined in the ERS Bond Resolution) were eliminated, Movants effectively have no more collateral. Movants dispute and deny that proposition, but Respondents' argument nevertheless amounts to a contention by the Respondents that, after the commencement of ERS's Title III case and the resulting imposition of the automatic stay, the Pledged Property has been diminished to such an extreme amount that it effectively no longer exists.

Further responding, Movants state that publicly available information indicates that funds in ERS-related accounts decreased from $513 million as of November 30, 2017 to $375.9 million as of December 31, 2018. In addition, as shown by documents in the Respondents' production, ERS was ordered to "transfer to the account of the Secretary of the Treasury at least $190,480,000.00 from the net proceeds [of the liquidation of ERS assets] or from the available funds in the Employees System" (*see* ERS_AAFAF_LS0001280, July 19, 2017 Letter from Executive Director of AAFAF to ERS Administrator directing the liquidation of ERS's investments and transfer funds to the Secretary of the Treasury). Further, the majority of ERS's

liquid assets were depleted by the start of FY2018.  Although Movants are currently without sufficient information to determine whether all of the ERS assets and/or funds that were liquidated or transferred constituted Pledged Property, to the extent the assets and/or funds were Pledged Property, their liquidation and transfer to the Commonwealth, without adequate protection against the Commonwealth's use of those assets or proceeds without first priority to the Movants, diminished the value of the Pledged Property.

In addition, as stated in response to Interrogatory Number 2, Movants contend that the Pledged Property also includes, *inter alia*, Pay-Go Fees and the Commonwealth's right to receive them.  Information available to Movants indicate that the value of that portion of the Pledged Property has also diminished.  Publicly available information indicates that the Pay-Go Fees totaled more than $1.8 billion between July 2017 and November 2018.  *See* ERS_BH_002547 through ERS_BH_003275.  As Movants understand the Pay-Go system, however, shortly after the Commonwealth receives Pay-Go Fees each month, it dissipates those funds to pay other creditors—including, specifically, pension beneficiaries (*see e.g.,* ERS_LS0000690 through ERS_LS0000895; *see also* PayGo and Individual Contribution Debt by Entity Reports, http://www.aafaf.pr.gov/reports.html).  Moreover, because the Pay-Go Fees fund the payment of pension benefits that are now closed and are no longer being accrued, the Pay-Go Fees are a time-limited series of payments that will decrease as the population of retirees diminishes, and ultimately cease.  Accordingly, each month that the Commonwealth uses Pay-Go Fees to pay pensions without first priority to the ERS Bondholders, the value of the Pledged Property diminishes.  In addition, although the Oversight Board's May 9, 2019 Fiscal Plan for Puerto Rico provides that Pay-Go Fees are forecasted to be between $2.1 billion to $2.4 billion for Fiscal Years 2019 to 2024, the Commonwealth has since passed legislation purporting to excuse certain of those

Pay-Go Fees (*see* Law for Reduction of Administrative Responsibilities of the Municipalities, Senate Bill 1258 (May 17, 2019), thus rendering the Oversight Board's projections of Pay-Go Fees uncertain at best.  Finally, and in all events, Respondents and the FOMB have taken no action (and have given no indication that they intend to take actions) that would adequately protect the Bondholders' interests in any current or future Pay-Go Fees.  To the contrary, Respondents have repeatedly disputed the Bondholders' security interests in the Pay-Go Fees.

Further responding, Movants state that they have requested discovery from ERS, the Commonwealth, AAFAF, and the Oversight Board, and various third parties that would bear on the amount by which the value of the Pledged Property has been diminished.  This discovery has included, for example, Movants' requests to Respondents and its actuarial advisor, Milliman, Inc., for actuarial information and projections related to Pay-Go Fees and pension obligations.  In addition, the Oversight Board recently identified Mr. Gaurav Malhotra from Ernst & Young as an expert witness who may present testimony about the present value of Pay-Go Fees to the Commonwealth, and the value of pension payments being made by the Commonwealth.  Movants, accordingly, have also requested the information Mr. Malhotra considered in his forming his opinion, which information may further bear on the amount by which the Pledged Property has been diminished.  Movants have not yet received the information they have requested, however.

Movants further state that the testimony of their designated experts will address whether there has been a diminution in value of the Pledged Property.

**INTERROGATORY NO. 4:** State the basis for when (i.e., at what time) You contend the automatic stay has caused diminution of the value of Pledged Property or diminution of the value of any collateral You contend secures the ERS Bonds.

**Response to Interrogatory No. 4**: Movants object to the term "automatic stay" as vague and undefined.  PROMESA provided for a temporary stay of debt-related litigation against the

Commonwealth and its instrumentalities even before the filing of the Title III cases. 48 U.S.C. § 2194; *see also Peaje Invest. LLC v. Garcia-Padilla*, 845 F.3d 505 (1st Cir. 2017). That initial temporary stay under 48 U.S.C. § 2194, however, is no longer in effect. Rather, once ERS and the Commonwealth filed their Title III cases, the automatic stay imposed pursuant to 48 U.S.C. § 2161(a) (incorporating by reference 11 U.S.C. § 362) went into effect. Accordingly, Movants will interpret the term "automatic stay" in this Interrogatory to refer to the stay imposed pursuant to 48 U.S.C. § 2161(a) (incorporating by reference 11 U.S.C. § 362), upon the commencement of Respondents' Title III cases. Movants further object that this interrogatory misstates the applicable legal standard, which is not whether the automatic stay has caused a diminution in value, but instead whether there has been a diminution in value during the pendency of the automatic stay. Subject to and without waiving the foregoing objection and their General Objections, Movants respond as follows:

The value of Movants' collateral or Pledged Property has been diminishing since the automatic stay went into effect upon commencement of ERS's Title III case. The automatic stay "results in a decrease in the value" of collateral, § 361(1), when it prevents the creditor from taking action that could prevent the decrease in value. As summarized in Response to Interrogatory No. 3, Movants' Pledged Property has diminished in value since the commencement of ERS's Title III case. ERS and the Commonwealth, however, have opposed Movants' requests to lift the Title III stays, thus preventing Movants from taking actions to prevent the misappropriation of the Pledged Property and protect their constitutionally protected property interests. The actions that Movants cannot take due to the imposition of the Title III stay include, but are not limited to, enforcing their liens, seeking relief under § 407 of PROMESA for unlawful inter-debtor transfers of property, and

pursuing litigation against municipalities and public corporations not currently in Title III proceedings.

In addition, Respondents are no longer providing Movants with adequate protection for their Pledged Property. Shortly after the filing of ERS's Title III petition, Movants filed a motion for adequate protection of their constitutionally-protected and bargained-for property interests. *See* No. 17-bk-03566, Dkt. 26 (May 31, 2017). On July 14, 2017, Movants, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and the Oversight Board (in its capacity as representative of ERS) mooted that motion by entering into a Joint Stipulation that provided Movants with certain protections, including the payment of current interest due on the ERS Bonds from a Prepetition Segregated Account (as defined by the Joint Stipulation) and monthly deposits of $18.5 million from June through October 2017 into a newly-created Post-Petition Segregated Account (as defined by the Joint Stipulation) (collectively, the "Interim ERS Bondholder Protections"). *See* No. 17-bk-03566, Dkt. 170 (July 14, 2017). The parties agreed that the Interim ERS Bondholder Protections would constitute adequate protection until October 31, 2017, solely with respect to the imposition of the automatic stay. *Id.* The Court approved the Joint Stipulation on July 17, 2017. *See* No. 17-bk-03566, Dkt. 171 (July 17, 2017).

On December 28, 2017, the Court entered an order interpreting the Joint Stipulation and enjoining AAFAF from prematurely ending those Interim ERS Bondholder Protections. No. 17-bk-03566, Dkt. 248 (Dec. 28, 2017). In particular, the Court required ERS to transfer approximately $27.7 million from the Prepetition Segregated Account to the Fiscal Agent in order to pay the interest due on the ERS Bonds in December 2017 and January 2018, and to thereafter continue to transfer $13,876,582.48 from the Prepetition Segregated Accounts on a monthly basis in order to make payments equal to the contractual monthly interest due and payable on the ERS

Bonds until either (a) the Court ruled on the parties' cross-motions for summary judgment in the Adversary Proceeding or (b) "the exhaustion of funds in the Prepetition Segregated Account." *Id*. The funds in the Prepetition Segregated Account have since been materially exhausted; Respondents' production indicates that there was $2.588.15 in the Prepetition Segregated Account as of January 31, 2019.  Except as provided herein, ERS and the Commonwealth have failed to provide Movants with adequate protection of the Pledged Property.

**INTERROGATORY NO. 5:** Identify what You contend was the value of Your collateral and/or Pledged Property as of the following dates, and state the basis for Your contention in each instance:

> (i) The date on which You purchased ERS Bonds;

> (ii) The Petition Date;

> (iii) The first day of each month since the Petition Date; and

> (iv) Today.

**Response to Interrogatory No. 5**: Subject to and without waiving the foregoing General Objections, Movants respond as follows:

Movants' contention regarding what constitutes their Pledged Property is set forth in Responses to Interrogatories 1 and 2, which are incorporated herein by reference.

Movants state that, because the Pledged Property consists of assets within the possession, custody, or control of Respondents, Movants must rely on publicly available information and on information and documents produced by Respondents in order to attempt to determine the value of the Pledged Property on any given date.  Accordingly, Movants have requested discovery from ERS, the Commonwealth, AAFAF, and the Oversight Board, and various third parties concerning the value of the Pledged Property at various times, including on May 21, 2017, the first day of each month since the Petition Date, and today.  In addition, Movants have served discovery on Respondents and on ERS's actuarial advisor, Milliman, Inc., seeking actuarial information and

projections related to Pay-Go Fees and pension obligations.  In addition, the Oversight Board recently identified Mr. Gaurav Malhotra from Ernst & Young as an expert witness who may present testimony about the present value of PayGo payments to the Commonwealth, and the value of pension payments being made by the Commonwealth.  Movants, accordingly, have also requested the information Mr. Malhotra considered in his forming his opinions, which information may further bear on the value of the Pledged Property.  Movants have not yet received the information they have requested, however.  Further, Respondents objected to producing documents and information that predated January 1, 2017, and further broadly asserted privilege objections over wide categories of documents.  The documents Respondents are withholding due to their asserted privilege claims include, for example, documents regarding retirement system assets and cash flows, and documents regarding the implementation of the Pay-Go system and collection of Pay-Go Fees (*see* Apr. 22, 2019 Decl. of Luis Collazo Rodriguez in Support of Assertion of the Deliberative Process Privilege, Case No. 17-3566, Doc. No. 457, at ¶ 4; Apr. 22, 2019 Decl. of Phillipe Mesa Pabon in Support of  Assertion of Deliberative Process Privileged, Case No. 17-3566, Doc. No. 458, ¶ 5.)  In restricting discovery in this manner, Respondents and the Oversight Board have withheld information that would bear directly on the value of the Pledged Property on any given date.

Notwithstanding Respondents' decision to withhold information concerning the value of the Pledged Property, Movants aver that documents within Respondents' production may be relevant to value on the Petition Date, including documents in Respondents' productions pertaining to Employer Contributions received by ERS (ERS_LS0001868, ERS_LS0001957); receivables from employers (ERS_LS0001963); and ERS's account statements (ERS_LS0002039-2247; ERS_LS0009213; ERS_LS0002841-2890; BNYM0000041 – 121).

With respect to the value of the Pledged Property on the first day of each month since the Petition Date, Movants further aver that documents within Respondents' production may be relevant to such value, and refer to documents in Respondents' productions pertaining to Employer Contributions received by ERS (ERS_LS0001868, ERS_LS0001957; ERS_LS0008177; ERS_LS0009213); receivables from Employers (ERS_LS0001962; ERS_LS0001961); Pay-Go contributions and fees (ERS_LS0001958; ERS-CW_LS0000002, ERS-CW_LS0000324, ERS-CW_LS0000325, ERS-CW_LS0000326, ERS-CW_LS0000327; ERS_LS0006243; ERS_LS0003041-3211; ERS_LS0000690 – 870; ERS_LS0000001 – 274); Pay-Go revenues (ERS-AAFAF_LS0001522, ERS-AAFAF_LS0001531, ERS-AAFAF_LS0001533, ERS-AAFAF_LS0001701, ERS-AAFAF_LS0001702, ERS-AAFAF_LS0001703, ERS-AAFAF_LS0001704); and ERS account statements (ERS_LS0002039-2247; ERS_LS0003531-3560; BNYM0000041 – 121).

In addition, because a significant aspect of the Pledged Property consists of future revenue streams (in the form of Employer Contributions and Pay-Go Fees), a determination of value of the Pledged Property on any given date is subject to change, risk, and differences of opinion regarding factors that may affect the revenue streams in the future.  Evidence about the value of future revenue streams is, accordingly, often the subject of expert testimony, as the Oversight Board apparently recognized when it designated an expert witness to provide testimony about the present value of Pay-Go Fees to the Commonwealth, and the value of pension payments being made by the Commonwealth.

Further responding, Movants aver that they are not aware of valuations by Movants of the Pledged Property.  Movants are aware, however, that in late 2016 Respondents and the Oversight Board took the position that the ERS Bonds are oversecured.  *See* Respondent Employees

Retirement System of the Government of the Commonwealth of Puerto Rico's Brief in Opposition to Motion for Relief From the PROMESA Automatic Stay, No. 16-cv-2696, Docket. 52, at 10 (Oct. 26, 2016); Respondents' Brief in Opposition to Motion for Relief From the PROMESA Automatic Stay, No. 16-cv-2696, Dkt. No. 53, at 5 (Oct. 26, 2016); Brief of Amicus Curiae Financial Oversight and Management Board for Puerto Rico in Support of Respondents-Appellees Urging Affirmance of the District Court Order at 7, No. 16-2433 (1st Cir. Dec. 23, 2016).

In addition, and due to the restrictive discovery positions Respondents and the Oversight Board have taken, Movants are without the information they would need now in order to determine the value of the Pledged Property as of the earlier dates on which the Movants purchased the ERS Bonds. Because a significant portion of the Pledged Property consists of future revenue streams (in the form of Employer Contributions and Pay-Go Fees), information that would bear on the value of the Pledged Property as of those dates would include information about future anticipated changes or risks to ERS and Puerto Rico's pension system. That type of information would reside in documents that contain or reflect ERS's internal communications and deliberations regarding changes to ERS and Puerto Rico's pension systems, which is exactly the type of information that Respondents have withheld as privileged. (See Apr. 22, 2019 Decl. of Luis Collazo Rodriguez, at ¶¶ 4, 5; Apr. 22, 2019 Decl. of Phillipe Mesa Pabon, at ¶¶ 5-6.)

In addition, Movants are without all of the information they would need to determine the value of the Pledged Property as of May 21, 2017 and the later dates in this Interrogatory 5—again due to the restrictive discovery positons Respondents and the FOMB have taken with respect to information that would inform issues such as potential changes to ERS and Puerto Rico's pension systems, which would (in turn) inform risks to the future revenue streams and, thus, the value of

those future revenue streams.  Nevertheless, information that is available to Movants demonstrates

that the value of the Pledged Property has diminished since the filing of ERS's Title III petition.

On May 20, 2019, the Financial Oversight and Management Board and the Official

Committee of Unsecured Creditors filed two complaints on behalf of ERS in Adversary

Proceeding No. 17-03566-LTS, Doc. Nos. 516, 517, in which they allege that ERS had assets with

a face value of over $2 billion as of the ERS Petition Date.  Movants are currently without

sufficient information to either admit or deny the allegation that ERS had assets with a face value

of over $2 billion as of the ERS Petition Date (which presumably does not account for liabilities),

but publicly available documents indicate that the assets held by ERS have diminished

substantially since the ERS Petition Date, including through the transfer and dissipation of the

Pledged Property following passage of Joint Resolution 188 and Act 106.  (*See* ERS_BH_002547

through ERS_BH_003275.)   As a result of Joint Resolution 188 and Act 106, Employers'

Contributions (as defined in the ERS Bond Resolution) to ERS were purportedly eliminated as of

July 1, 2017, and since then employers have instead been making pension system contributions, in

the form of Pay-Go Fees, directly to the Commonwealth.  Moreover, in connection with this Lift-

Stay Motion, Respondents have taken the position that Movants do not hold a security interest in

the Pay-Go Fees, and that because Employers' Contributions (as defined in the ERS Bond

Resolution) were eliminated, Movants effectively have no more collateral.  Movants dispute and

deny that proposition, but Respondents' argument nevertheless amounts to a contention by the

Respondents that, in the period between May 21, 2017 and today, the Pledged Property has been

diminished to such an extreme amount that it effectively has no more value at all.

Further responding, Movants state that publicly available information indicates that funds

in ERS-related accounts decreased from $513 million as of November 30, 2017 to $375.9 million

as of December 31, 2018. In addition, as shown by documents in the Respondents' production, ERS was ordered to "transfer to the account of the Secretary of the Treasury at least $190,480,000.00 from the net proceeds [of the liquidation of ERS assets] or from the available funds in the Employees System" (*see* ERS_AAFAF_LS0001280, July 19, 2017 Letter from Executive Director of AAFAF to ERS Administrator directing the liquidation of ERS's investments and transfer funds to the Secretary of the Treasury). Further, the majority of ERS's liquid assets were depleted by the start of FY2018. Although Movants are currently without sufficient information to determine whether all of the ERS assets and/or funds that were liquidated or transferred constituted Pledged Property, to the extent the assets and/or funds were Pledged Property, their liquidation and transfer to the Commonwealth, without adequate protection against the Commonwealth's use of those assets or proceeds without first priority to the Movants, diminished the value of the Pledged Property.

In addition, as stated in response to Interrogatory Number 2, Movants contend that the Pledged Property also includes, *inter alia*, Pay-Go Fees and the Commonwealth's right to receive them. Information available to Movants indicates that the value of that portion of the Pledged Property has also diminished. Publicly available information indicates that the Pay-Go Fees totaled more than $1.8 billion between July 2017 and November 2018. *See* ERS_BH_002547 through ERS_BH_003275. As Movants understand the Pay-Go system, however, shortly after the Commonwealth receives Pay-Go Fees each month, it dissipates those funds to pay other creditors—including, specifically, pension beneficiaries. (*see e.g.,* ERS_LS0000690 through ERS_LS0000895; *see also* PayGo and Individual Contribution Debt by Entity Reports, http://www.aafaf.pr.gov/reports.html) Moreover, because the Pay-Go Fees fund the payment of pension benefits that are now closed and no longer being accrued, the Pay-Go Fees are a time-

limited series of payments that will decrease as the population of retirees diminishes, and ultimately cease.  Accordingly, each month that the Commonwealth uses Pay-Go Fees to pay pensions without giving first priority to the ERS Bondholders, the value of the Pledged Property diminishes.  In addition, although the Oversight Board's May 9, 2019 Fiscal Plan for Puerto Rico provides that Pay-Go Fees are forecasted to be between $2.1 billion to $2.4 billion for Fiscal Years 2019 to 2024, the Commonwealth has since passed legislation purporting to excuse certain of those Pay-Go Fees (*See* Law for Reduction of Administrative Responsibilities of the Municipalities, Senate Bill 1258 (May 17, 2019)), thus rendering the Oversight Board's projections of Pay-Go Fees uncertain at best.  Finally, and in all events, Respondents and the FOMB have taken no action (and have given no indication that they intend to take any actions) that would adequately protect the Bondholders' interests in any current or future Pay-Go Fees.  To the contrary, Respondents have repeatedly disputed the Bondholders' security interests in the Pay-Go Fees.

Movants further state that the testimony of their designated experts will address whether there has been a diminution in value of the Pledged Property between May 21, 2017 and today.

**INTERROGATORY NO. 6:** State the basis for Your contention that Pledged Property or any collateral You contend secures the ERS Bonds has been diverted and dissipated.

**Response to Interrogatory No. 6**: Subject to and without waiving the foregoing General Objections, Movants respond as follows:

Movants' Pledged Property has been diverted from ERS to the Commonwealth as a result of Joint Resolution 188 and Act 106, and the Commonwealth is actively dissipating Movants' Pledged Property to pay other creditors while the automatic stay is in effect. This diversion and dissipation has been done through: (i) the purported elimination of Employers' Contributions (as defined in the ERS Bond Resolution) to ERS as of July 1, 2017 (*see* Joint Resolution 188); (ii) the

24

Case:17-03283-LTS   Doc#:7715-26   Filed:06/27/19   Entered:06/27/19 17:22:18   Desc:
Exhibit E   Page 25 of 39

requirement that employers make pension system contributions to the Commonwealth through Pay-Go Fees instead of to ERS through Employers' Contributions (*see* Act 106); (iii) the development and implementation of a system for the collection of Pay-Go Fees from employers and disbursement of pension payments to beneficiaries through mechanisms that purport to bypass the collateral structure and accounts that were established through the ERS Bond Resolution and that purport to eliminate the ERS Bondholders' Security Interests (*see e.g.*, ERS_LS0001817); (iv) the liquidation of ERS's assets and transfer of such proceeds to the Commonwealth (*see e.g.*, ERS_AAFAF_LS0001280); (v) the Commonwealth's ongoing dissipation of Pay-Go Fees received to pay pension beneficiaries and other creditors (*see e.g.*, ERS_LS0000690 through ERS_LS0000895; *see also* PayGo and Individual Contribution Debt by Entity Reports, http://www.aafaf.pr.gov/reports.html); (vi) ERS's, the Commonwealth's, AAFAF's, and the FOMB's positions taken during the course of the Title III proceedings that the Pledged Property effectively no longer exists as a result of Joint Resolution 188 and Act 106; and (vii) the deprivation of Movants' access to the Pledged Property during the pendency of the automatic stay.

Movants further state that the testimony of their designated experts will also address the diversion and dissipation of the Pledged Property.

**INTERROGATORY NO. 7:** State the basis for Your contention that You are entitled to relief from the automatic stay in both the ERS Title III Case and the Commonwealth Title III Case.

**Response to Interrogatory No. 7**: Subject to and without waiving the foregoing General Objections, Movants respond as follows:

Adequate protection is a constitutional imperative that protects the property rights of secured creditors. Moreover, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay … (1) for cause, including the lack of adequate

25

protection of an interest in property of such party in interest." 28 U.S.C. 362(d)(1) (made applicable to these Title III cases by 48 U.S.C. 2161(a)).

The First Circuit recently held that the Movants hold perfected security interests in the Pledged Property because they "satisfied the filing requirements for perfection as of December 17, 2015." A*ltair Global Credit Opportunities Fund (A), LLC, et al. v. Emps. Ret. Sys., et al.*, 914 F.3d 694, 703 (1st Cir. 2019). As discussed previously in Response to Interrogatories 1 and 2, the Pledged Property includes certain assets of ERS and certain assets of the Commonwealth. Moreover, as discussed previously in Response to Interrogatories 3 through 6, ERS and the Commonwealth have failed to provide Movants with adequate protection for the Pledged Property, including by: diverting or otherwise transferring the Pledged Property from ERS to the Commonwealth as a result of Joint Resolution 188 and Act 106; dissipating Movants' Pledged Property to pay other creditors such as retirement beneficiaries, including while the automatic stay is in effect; and opposing Movants' requests to lift the Title III stays, thus preventing Movants from taking actions to prevent the misappropriation of the Pledged Property and protect their constitutionally protected property interests, including but not limited to, enforcing their liens, seeking relief under § 407 of PROMESA for unlawful inter-debtor transfers of property, and pursuing litigation against municipalities and public corporations not currently in Title III proceedings. Accordingly, Movants are entitled to relief from the automatic stays in both the ERS Title III Case and the Commonwealth Title III Case.

**INTERROGATORY NO. 8:** State the basis for Your contention that Your collateral differs from Pledged Property.

**Response to Interrogatory No. 8**: Subject to and without waiving the foregoing General

Objections, Movants respond as follows: Movants do not contend that their collateral differs from Pledged Property, wherever it has been diverted, and any and all proceeds. Movants further incorporate by reference their responses to Interrogatories No. 1 and No. 2.

*[signatures appear on following page]*

**AS TO OBJECTIONS:**

Dated:  May 24, 2019

*/s/ Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Bruce Bennett*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ Alicia I. Lavergne-Ramírez

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ Jason Zakia

John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com
csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 24, 2019, a true and correct copy of the foregoing was

served via electronic mail to the persons listed below:

Martin J. Bienenstock
mbienenstock@proskauer.com
Brian Rosen
brosen@proskauer.com
Jeffrey W. Levitan
jlevitan@proskauer.com
Margaret A. Dale
mdale@proskauer.com
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for The Financial Oversight*
*and Management Board for Puerto Rico,*
*as representative of the Employees Retirement*
*System of the Government of*
*the Commonwealth of Puerto Rico*


_s/ Isel M. Perez_
Isel M. Perez

## VERIFICATION

STATE OF NEW JERSEY          )
                             ) ss.
COUNTY OF ESSEX              )

I, James E. Bolin, being duly sworn, state that I am an agent of Andalusian Global Designated Activity Company, that I have read the foregoing Movants' Responses and Objections to the Oversight Board's First Set of Contention Interrogatories, and that the factual answers set forth in Movants' responses are true and correct to the best of my knowledge, information, and belief.

By: _____
                   Affiant

Subscribed and sworn to before me on this 24th day of May, 2019.

_____
Notary Public

My commission expires: 

TERESA GUERINO
Notary Public of New Jersey
I.D. # 2395268
My Commission Expires 4/16/2020

## <u>VERIFICATION</u>

STATE OF CALIFORNIA        )
                                                 ) ss.
COUNTY OF LOS ANGELES        )


I, Haig Maghakian, being duly sworn, state that I am an agent of Glendon Opportunities Fund, L.P., that I have read the foregoing Movants' Responses and Objections to the Oversight Board's First Set of Contention Interrogatories, and that the factual answers set forth in Movants' responses are true and correct to the best of my knowledge, information, and belief.

                                        By:_____
                                                              Affiant

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 23 day of May , 20 19 , by
HAIG MARK MAGHAKIAN ,
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

ALYSSA SUSAN ELLARD
Notary Public - California
Los Angeles County
Commission # 2231858
My Comm. Expires Feb 23, 2022

(Seal)                    Signature  Alyssa S. Ellard

## VERIFICATION

STATE OF NEW YORK  )
          )ss.
COUNTY OF NEW YORK  )

I, James McGovern, being duly sworn, state that I am an agent of Mason Capital Master Fund, LP, that I have read the foregoing Movants' Responses and Objections to the Oversight Board's First Set of Contention Interrogatories, and that the factual answers set forth in Movants' responses are true and correct to the best of my knowledge, information, and belief.

By: _____
       Affiant

Subscribed and sworn to before me on this 24th day of May, 2019.

_____
Notary Public

My commission expires: 2/11/2023

MOHAMED N MUNTAZ
Notary Public - State of New York
NO. 01MU6387355
Qualified in Queens County
My Commission Expires Feb 11, 2023

## <u>VERIFICATION</u>

State of California            )
County of Los Angeles      )

I, David Brown, being duly sworn, state that I am an officer of Oaktree Capital Management, L.P., as director Oaktree Opportunities Fund IX GP Ltd., as general partner of Oaktree Opportunities Fund IX GP, L.P., as general partner of each of Oaktree Opportunities Fund IX, L.P. and Oaktree Opportunities Fund IX (Parallel 2), L.P., that I have read the foregoing Movants' Responses and Objections to the Oversight Board's First Set of Contention Interrogatories, and that the factual answers set forth in Movants' responses are true and correct to the best of my knowledge, information, and belief.

By: _David S Brown_____
Affiant

## **CERTIFICATE FOR JURAT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of Los Angeles      )

Subscribed and sworn to (or affirmed) before me on this 24th day of May, 2019, by David Brown, proved to me on the basis of satisfactory evidence to be the person who appeared before me.



Rebecca Susan Kessel
Notary Public

REBECCA SUSAN KESSEL
Notary Public – California
Los Angeles County
Commission # 2189550
My Comm. Expires Apr 2, 2021

(Seal of Notary)

## **VERIFICATION**

STATE OF NEW YORK       )
                             ) ss.
COUNTY OF NEW YORK    )

I, Randolph A. Stuzin, being duly sworn, state that I am an agent of Ocher Rose, L.L.C., that I have read the foregoing Movants' Responses and Objections to the Oversight Board's First Set of Contention Interrogatories, and that the factual answers set forth in Movants' responses are true and correct to the best of my knowledge, information, and belief.

By: _____
                     Affiant

Subscribed and sworn to before me on this 23rd day of May, 2019.

_____
Notary Public

My commission expires: __August 29, 2020__

ELLE TRISHA DAMORE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DA6347069
Qualified in New York County
My Commission Expires 08-29-2020

## VERIFICATION

STATE OF  New York          )
                            ) ss.
COUNTY OF  New York         )


I, Susanne V. Clark, being duly sworn, state that I am an agent of SV Credit, L.P., that I
have read the foregoing Movants' Responses and Objections to the Oversight Board's First Set of
Contention Interrogatories, and that the factual answers set forth in Movants' responses are true
and correct to the best of my knowledge, information, and belief.


By: _Susanne V. C_
                                        Affiant


Subscribed and sworn to before me on this 22nd day of May, 2019.

_____
Notary Public

My commission expires: July 1, 2022

JASON A. NICOLL
Notary Public, State of New York
Registration No. 02NI6076786
Qualified in Orange County
Commission Expires July 1, 2022

**AS TO RESPONSES:**

*Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc.,* and *Puerto Rico Investors Tax-Free Fund VI, Inc.*



By: _____
Name:  Javier Rubio
Title:  Senior Vice President

Affidavit Number: *14,235*

Sworn and subscribed to before me by Javier Rubio, of legal age, married, a banker and a resident of San Juan, Puerto Rico, in his capacity as authorized representative of the before-mentioned funds, and who is personally known to me, in San Juan, Puerto Rico, on this 24th day of May 2019.

_____
NOTARY PUBLIC



AMERICAS 99828461

**AS TO RESPONSES:**

*Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*

By:_____

Name:  Leslie Highley

Title:  Senior Vice President

_____

Affidavit Number:  361

Sworn and subscribed to before me by Leslie Highley of legal age, married, a banker and a resident of San Juan, Puerto Rico, in his capacity as authorized representative of the before-mentioned funds, and who is personally known to me, in San Juan, Puerto Rico, on this 23rd day of May 2019.



NOTARY PUBLIC

AMERICAS 99013978