The registered owner of this Series C Bond shall have no right to enforce the provisions of the Resolution, to institute action to enforce the provisions of the Resolution or to institute, appear in or defend any suit or other proceeding with respect thereto, *except* as provided in the Resolution.

This Series C Bond is transferable, as provided in the Resolution, only upon the books of the System maintained for that purpose at the Corporate Trust Office of the Fiscal Agent by the registered owner hereof in person or by his attorney duly authorized in writing, upon surrender of this Series C Bond together with a written instrument of transfer duly executed by the Bondowner or such Bondowner's attorney duly authorized in writing, and thereupon a new fully registered Series C Bond or Bonds in the same aggregate principal amount, and of the same series, maturity and interest rate, shall be issued to the transferee in exchange therefor as provided in the General Resolution and upon the payment of the charges, if any, therein prescribed. The System and the Fiscal Agent may treat and consider the person in whose name this Series C Bond is registered as the absolute owner hereof for the purpose of receiving payment of, or on account of, the principal or redemption price, if any, hereof and interest due hereon and for all other purposes whatsoever.

This Series C Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Resolution until the Certificate of Authentication hereon shall have been signed by the Fiscal Agent.

**IT IS HEREBY CERTIFIED, RECITED AND DECLARED** that all acts, conditions and things required by the Constitution and statutes of the Commonwealth and the Resolution to exist, to have happened and to have been performed precedent to and in the issuance of this Series C Bond, exist, have happened and have been performed in due time, form and manner as required by law and that the issue of the Series C Bonds, together with all other indebtedness of the System, is within every debt and other limit prescribed by law.

BH-ERS-B-000202

IN WITNESS WHEREOF, the EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO has caused this Series C Bond to be executed in its name by the manual or facsimile signature of an authorized representative, as of the DATED DATE specified above

**EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By: _____
       Administrator

[SEAL]

Attest:

_____
Secretary or Assistant Secretary

BH-ERS-B-000203

## CERTIFICATE OF AUTHENTICATION

This Bond is one of the Series C Bonds described in the within-mentioned Resolution.

**THE BANK OF NEW YORK**, as Fiscal Agent

By: _____
  Authorized Signatory

Date of Authentication:

BH-ERS-B-000204

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sells, assigns, and transfers unto

_____
(please print or typewrite name and address of transferee)

_____
(please insert social security or other identifying number of assignee)
(For computer record only)

the within Bond and all rights thereunder, and hereby irrevocably constitutes and appoints _____ Attorney to transfer the within Bond on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed

_____        _____


_____        _____
By:


_____

Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Fiscal Agent, which requirements include membership or participation in the Security Transfer Agent Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Fiscal Agent in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

**Appendix VII**

**Form of Opinion of Bond Counsel**

**FIDDLER GONZALEZ & RODRIGUEZ, P.S.C.**
ATTORNEYS AND COUNSELLORS AT LAW
PO BOX 363507
SAN JUAN, PR 00936-3507

TELEPHONE (787) 753-3113                                              254 MUÑOZ RIVERA AVENUE
FAX (787) 759-3123                                                           CORNER CHARDÓN STREET
                                                                                           6TH FLOOR
                                                                           SAN JUAN, PUERTO RICO 00918

June 30, 2008

Employees Retirement System of the Government
   of the Commonwealth of Puerto Rico
437 Ponce de León Avenue
San Juan, Puerto Rico

    Re:    **Employees Retirement System of the Government of the
Commonwealth of Puerto Rico
Pension Funding Bonds, Series C Bonds**

Ladies and Gentlemen:

    We have examined the Constitution and the laws of the Commonwealth of Puerto Rico (the "Commonwealth"), including Act No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended and supplemented (the "Act"), creating the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") as a trust, to provide pension and other benefits to retired employees of the central government, municipalities and public Systems of the Commonwealth.

    We have also examined a certified copy of a Pension Funding Bond Resolution (the "General Resolution), adopted by the Board of Trustees of the System on January 24, 2008, and a Third Supplemental Pension Funding Bond Resolution, adopted by the Board of Trustees of the System on June 26, 2008 (the "Supplemental Resolution," and together with the General Resolution, the "Resolution"), and other proofs submitted relative to the issuance of the System's Senior Pension Funding Bonds, Series C in the aggregate principal amount of $300,202,930.00 (the "Bonds"). Capitalized words not defined herein shall have the meanings ascribed to them in the Resolution.

    The Bonds are issuable as fully registered bonds, without coupons, in denominations of $5,000 (maturity amount) each or integral multiples thereof.

    The Bonds are issued under and pursuant to the Resolution for the purpose of (i) increasing the total assets currently available to pay benefits under the System's largest defined benefit plan, (ii) reducing the unfunded accrued actuarial pension liability of the benefit plan, and (iii) making deposits in various funds and accounts established under the Resolution.

VII-1

BH-ERS-B-000206

The Bonds are limited, non-recourse obligations of the System, payable solely from and secured by a pledge and assignment of Employer Contributions and all other Revenues (as defined in the Resolution) derived therefrom, certain funds held under the Resolution, together with income earned thereon (collectively referred to herein as the "Pledged Property"), pledged therefor under the Resolution.

The Bonds bear interest and are subject to redemption prior to maturity as set forth in the Resolution.

The principal of the Bonds is payable at the principal corporate trust office of the Fiscal Agent in New York, New York. The interest on the Bonds is payable by check mailed to the registered owner at the address appearing on the registration books of the System on the relevant record date or, in certain circumstances set forth in the Resolution, by wire transfer to a designated account.

From such examination, and having regard to legal questions we deem relevant, we are of the opinion that:

(1)     The Act is valid in all respects material to this opinion, and the System is a duly constituted governmental instrumentality of the Commonwealth, deemed as a trust.

(2)     The Resolution has been duly adopted by, and is legal, valid and binding upon, the System, enforceable in accordance with its terms.

(3)     The Bonds have been duly authorized by the System and constitute legal, valid and binding limited obligations of the System payable solely from, and secured by a valid and binding pledge of, the Pledged Property, subject only to the provisions of the Resolution permitting use of such Pledged Property and its application for the purposes and on the terms and conditions provided in the Resolution.

(4)     The Bonds do not constitute a debt, obligation or pledge of the full faith, credit or taxing power of the Commonwealth or any of its municipalities or political subdivisions or instrumentalities (other than the System), and neither the Commonwealth nor any of its municipalities or political subdivisions or instrumentalities (other than the System), shall be liable for the payment thereof.

(5)     Interest on the Bonds is excluded from gross income and exempt from Puerto Rico income and withholding taxes, including the alternative minimum tax imposed by Section 1017 of the Puerto Rico Internal Revenue Code of 1994, as amended (the "P.R. Code").

(6)     The Bonds are exempt from property taxes imposed by the Municipal Property Tax Act of 1991, as amended, and interest thereon is exempt from the municipal license tax imposed by the Municipal License Tax Act of 1974, as amended.

(7)     The transfer of the Bonds by (i) gift will not be subject to gift tax under the P.R. Code in the case of donors who are residents of the Commonwealth at the time the gift is made, and (ii) death will not be subject to estate tax under the P.R. Code in the case of a decedent who at the time of death was (x) a resident of Puerto Rico, and (y) a United States citizen who acquired such citizenship solely by reason of birth or residence in Puerto Rico.

(8)     Gain recognized from the sale or exchange of a Bond will be subject to income tax under the P.R. Code to taxpayers subject to Puerto Rico income tax on such gains, including individuals residing in Puerto Rico and corporations and partnerships organized under the laws of the Commonwealth.

BH-ERS-B-000207

(9) The Bonds will be considered an obligation of an instrumentality of Puerto Rico for purposes of (i) the non-recognition of gain rules of Section 1112(f)(2)(A) of the P.R. Code applicable to certain involuntary conversions, and (ii) the exemption from the surtax imposed by Section 1102 of the P.R. Code available to corporations and partnerships that have a certain percentage of their net income invested in obligations of instrumentalities of Puerto Rico and certain other investments.

(10) Interest on the Bonds constitutes "industrial development income" under Section 2(j) of the Puerto Rico Industrial Incentives Act of 1963, the Puerto Rico Industrial Incentives Act of 1978, the Puerto Rico Tax Incentives Act of 1987, and the Puerto Rico Tax Incentives Act of 1998, as amended (collectively, the "Acts"), when received by a holder of a grant of tax exemption issued under any of the Acts that acquired the Bonds with "eligible funds," as such term is defined in the Acts.

Based on the provisions of the United States Internal Revenue of 1986, as amended (the "U.S. Code"), and the regulations thereunder, now in force:

(1) Interest on the Bonds received by, or "original issue discount" (within the meaning of the U.S. Code) accrued to, an individual who is a *bona fide* resident of Puerto Rico within the meaning of Section 937 of the U.S. Code during the entire taxable year in which such interest is received or "original issue discount" is accrued will constitute gross income from sources within Puerto Rico and, therefore, is excludable from gross income for purposes of the U.S. Code pursuant to section 933(1) thereof.

(2) Interest received or accrued, or original issue discount, on the Bonds is not subject to United States federal income tax if the holder of the Bonds is a corporation organized under the laws of Puerto Rico ("Puerto Rico Corporation") and such interest is not effectively connected with the conduct of a trade or business in the United States by such Puerto Rico Corporation, such Puerto Rico Corporation is not a foreign personal holding company, a controlled foreign corporation or a passive foreign investment company under the U.S. Code, and such Puerto Rico Corporation is not treated as a domestic corporation for the purposes of the U.S. Code.

(3) Interest on the Bonds is not excludable from the gross income of the recipient thereof for federal income tax purposes under Section 103(a) of the U.S. Code.

(4) Pursuant to the provisions of Section 1.937-2 of the Regulations issued under the U.S. Code, the source of the income from the sale of personal property by a bona fide resident of Puerto Rico within the meaning of Section 937 of the Code shall be determined under the rules of Section 865 of the U.S. Code. Accordingly, the gain on the sale or exchange of the Bonds recognized by an individual who is a *bona fide* resident of Puerto Rico, within the meaning of Section 937 of the U.S. Code, during the entire taxable year in which the source of the gain must be determined, will constitute Puerto Rico source income and, therefore, qualify for the income exclusion under in Section 933(1) of the U.S. Code, provided (i) that such Bonds do not constitute inventory in the hands of such individual and (ii) if the Bonds were owned before the individual became a bona fide resident of Puerto Rico, that for any of the 10 years preceding the taxable year for which the source of the gain must be determined, the individual was not a resident of the United States (other than a bona fide resident of Puerto Rico).

A Puerto Rico Corporation that invests in the Bonds will be subject to U.S. federal income tax on a gain from a disposition of Bonds only if the gain is effectively connected to a U.S. trade or business carried on by the Puerto Rico Corporation.

BH-ERS-B-000208

(5) The transfer of the Bonds by death or gift will not be subject to estate or gift tax under the U.S. Code in the case of decedents or donors who, at the time of death or gift, are (a) residents of Puerto Rico and (b) (i) United States citizens that acquired such citizenship solely by reason of birth or residence in Puerto Rico or (ii) not United States citizens.

In addition to the opinions above we would like to bring to your attention that: (a) the P.R. Code does not provide rules with respect to the treatment of the excess, if any, of the amount due at maturity of a Bond over its initial offering price (the "Accretion Amount") and that under the current administrative practice followed by the Puerto Rico Department of the Treasury, the Accretion Amount is treated as interest; (b) prospective owners of the Bonds, including but not limited to financial institutions, should be aware that ownership of the Bonds may result in having a portion of their interest and other expenses attributable to interest on the Bonds disallowed as deductions for purposes of computing the regular tax and the alternative minimum tax for Puerto Rico income tax purposes; and (c) the U.S. Code provides special rules for the taxation of shareholders of foreign corporations that qualify as "controlled foreign corporations," "personal holding companies," "foreign personal holding companies" or "passive foreign investment companies," as such terms are defined by the U.S. Code.

In connection with the foregoing statements about certain United States federal tax consequences arising from the ownership of, receipt or accrual of interest on, or the disposition of the Bonds, be advised that pursuant to the U. S. Internal Revenue Service Circular No. 230:

(a) These tax statements are not intended or written to be used, and cannot be used by any taxpayer, for purposes of avoiding penalties that may be imposed on the taxpayer by the Internal Revenue Service.

(b) These statements were written in connection with the promotion or marketing of the Bonds.

(c) Each prospective purchaser of the Bonds should seek tax advice from an independent tax advisor based on its particular circumstances.

We express no opinion regarding any other federal, Commonwealth or state tax consequences with respect to the Bonds. We are rendering our opinion under existing statutes and court decisions, and regulations as of the issue date, and assume no obligation to update our opinion after the issue date to reflect any future action, fact or circumstance, or change in law or interpretation, or otherwise.

In rendering this opinion, we are advising you that the enforceability of the Bonds and the Resolution may be limited by bankruptcy, moratorium, insolvency, or other laws affecting creditors' rights or remedies and is subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

We have also examined an executed Bond and in our opinion the form of said Bond and its execution are regular and proper.

Very truly yours,

BH-ERS-B-000209

**Appendix VIII**

## BOOK-ENTRY SYSTEM

**The Depository Trust Company**

DTC will act as securities depository for the Series C Bonds. The Series C Bonds will be issued as fully-registered securities registered in the name of Cede & Co. (DTC's partnership nominee). One fully-registered Bond certificate will be issued for each stated maturity of the Series C Bonds, each in the aggregate principal amount (initial principal amount in the case of the Capital Appreciation Bonds) of such maturity, and will be deposited with DTC. SO LONG AS CEDE & CO. IS THE REGISTERED OWNER OF THE SERIES C BONDS, AS NOMINEE FOR DTC, REFERENCES HEREIN TO BONDHOLDERS OR OWNERS OF THE SERIES C BONDS (OTHER THAN UNDER THE CAPTION "TAX MATTERS") SHALL MEAN CEDE & CO. AND SHALL NOT MEAN THE BENEFICIAL OWNERS OF THE SERIES C BONDS.

DTC, the world's largest depository, is a limited-purpose trust company organized under the New York Banking Law, a "banking organization" within the meaning of the New York Banking Law, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code, and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). DTC holds and provides asset servicing for over 2.2 million issues of U.S. and non-U.S. equity, corporate and municipal debt issues, and money market instruments from over 100 countries that DTC's Participants ("Direct Participants") deposit with DTC. DTC also facilitates the post-trade settlement among Direct Participants of sales and other securities transactions in deposited securities, through electronic computerized book-entry transfers and pledges between Direct Participants' accounts. This eliminates the need for physical movement of securities certificates. Direct Participants include both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, clearing corporations, and certain other organizations. DTC is a wholly-owned subsidiary of The Depository Trust & Clearing Corporation ("DTCC"). DTCC, in turn, is owned by a number of Direct Participants of DTC and Members of the National Securities Clearing Corporation, Fixed Income Clearing Corporation, and Emerging Markets Clearing Corporation, (NSCC, FICC, and EMCC, also subsidiaries of DTCC), as well as by the New York Stock Exchange, Inc., the American Stock Exchange LLC, and the National Association of Securities Dealers, Inc. Access to the DTC system is also available to others such as both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, and clearing corporations that clear through or maintain a custodial relationship with a Direct Participant, either directly or indirectly ("Indirect Participants"). DTC has S&P's highest rating; AAA. The DTC Rules applicable to its Participants are on file with the Securities and Exchange Commission ("SEC"). More information about DTC can be found at www.dtcc.com and www.dtc.org.

Purchases of the Series C Bonds under the DTC system must be made by or through Direct Participants, which will receive a credit for the Series C Bonds on DTC's records. The ownership interest of each actual purchaser of the Series C Bonds ("Beneficial Owner") is in turn to be recorded on the Direct and Indirect Participants' records. Beneficial Owners will not receive written confirmation from DTC of their purchase. Beneficial Owners are, however, expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the Direct or Indirect Participant through which the Beneficial Owner entered into the transaction.

Transfers of ownership interests in the Series C Bonds are to be accomplished by entries made on the books of Direct and Indirect Participants acting on behalf of Beneficial Owners. Beneficial Owners

BH-ERS-B-000210

will not receive certificates representing their ownership interests in the Series C Bonds, except in the event that use of the book-entry system for the Series C Bonds is discontinued.

To facilitate subsequent transfers, the Series C Bonds deposited by Direct Participants with DTC are registered in the name of DTC's partnership nominee, Cede & Co., or such other name as may be requested by an authorized representative of DTC. The deposit of the Series C Bonds with DTC and their registration in the name of Cede & Co. or such other nominee do not effect any change in beneficial ownership. DTC has no knowledge of the actual Beneficial Owners of the Series C Bonds; DTC's records reflect only the identity of the Direct Participants to whose accounts such Series C Bonds are credited, which may or may not be the Beneficial Owners. The Direct and Indirect Participants will remain responsible for keeping account of their holdings on behalf of their customers.

Conveyance of notices and other communications by DTC to Direct Participants, by Direct Participants to Indirect Participants, and by Direct Participants and Indirect Participants to Beneficial Owners will be governed by arrangements among them, subject to any statutory or regulatory requirements as may be in effect from time to time.

Redemption notices shall be sent to DTC. If less than all of the Series C Bonds are being redeemed, DTC's practice is to determine by lot the amount of the interest of each Direct Participant in such issue to be redeemed.

Neither DTC nor Cede & Co. (nor such other DTC nominee) will consent or vote with respect to Series C Bonds unless authorized by a Direct Participant in accordance with DTC's Procedures. Under its usual procedures, DTC mails an Omnibus Proxy to the System as soon as possible after the record date. The Omnibus Proxy assigns Cede & Co.'s consenting or voting rights to those Direct Participants to whose accounts the Series C Bonds are credited on the record date (identified in a listing attached to the Omnibus Proxy).

Redemption proceeds, distributions, and dividend payments on the Series C Bonds will be made to Cede & Co., or such other nominee as may be requested by an authorized representative of DTC. DTC's practice is to credit Direct Participants' accounts upon DTC's receipt of funds and corresponding detail information from the System or the Fiscal Agent on payable dates in accordance with their respective holdings shown on DTC's records. Payments by Participants to Beneficial Owners will be governed by standing instructions and customary practices, as is the case with securities held for the accounts of customers in bearer form or registered in "street name," and will be the responsibility of such Participant and not of DTC, the Fiscal Agent, or the System, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of redemption proceeds, distributions, and dividend payments to Cede & Co. (or such other nominee as may be requested by an authorized representative of DTC) is the responsibility of the System or the Fiscal Agent, disbursement of such payments to Direct Participants will be the responsibility of DTC, and disbursement of such payments to the Beneficial Owners will be the responsibility of Direct and Indirect Participants.

DTC may discontinue providing its services as securities depository with respect to the Series C Bonds at any time by giving reasonable notice to the System or the Fiscal Agent. Under such circumstances, in the event that a successor depository is not obtained, Series C Bond certificates are required to be printed and delivered.

The System may decide to discontinue use of the system of book-entry only transfers through DTC (or a successor securities depository). In that event, Series C Bond certificates will be printed and delivered to DTC.

BH-ERS-B-000211

NONE OF THE SYSTEM, THE FISCAL AGENT OR THE UNDERWRITERS WILL HAVE ANY RESPONSIBILITY OR OBLIGATION TO DIRECT PARTICIPANTS, INDIRECT PARTICIPANTS OR ANY BENEFICIAL OWNER WITH RESPECT TO (I) THE ACCURACY OF ANY RECORDS MAINTAINED BY DTC, ANY PARTICIPANT OR INDIRECT PARTICIPANT; (II) THE PAYMENT BY DTC OR ANY DIRECT PARTICIPANT OR INDIRECT PARTICIPANT OF ANY AMOUNT WITH RESPECT TO THE PRINCIPAL OF, OR PREMIUM, IF ANY, OR INTEREST ON, THE SERIES C BONDS; (III) ANY NOTICE WHICH IS PERMITTED OR REQUIRED TO BE GIVEN TO BONDHOLDERS; (IV) ANY CONSENT GIVEN BY DTC OR OTHER ACTION TAKEN BY DTC AS A BONDHOLDER; OR (V) THE SELECTION BY DTC OR ANY DIRECT PARTICIPANT OR INDIRECT PARTICIPANT OF ANY BENEFICIAL OWNERS TO RECEIVE PAYMENT IN THE EVENT OF ANY PARTIAL REDEMPTION OF THE SERIES C BONDS.

BH-ERS-B-000212

(This page intentionally left blank)

BH-ERS-B-000213

**Appendix IX**

## Table of Accreted Amounts per $5000 maturity amount

| Date | 2030 CAB |
|---|---|
| 06/30/08 | 1,223.85 |
| 1/1/2009 | 1,263.85 |
| 7/1/2009 | 1,304.90 |
| 1/1/2010 | 1,347.30 |
| 7/1/2010 | 1,391.10 |
| 1/1/2011 | 1,436.30 |
| 7/1/2011 | 1,483.00 |
| 1/1/2012 | 1,531.20 |
| 7/1/2012 | 1,580.95 |
| 1/1/2013 | 1,632.35 |
| 7/1/2013 | 1,685.40 |
| 1/1/2014 | 1,740.15 |
| 7/1/2014 | 1,796.75 |
| 1/1/2015 | 1,855.10 |
| 7/1/2015 | 1,915.40 |
| 1/1/2016 | 1,977.65 |
| 7/1/2016 | 2,041.95 |
| 1/1/2017 | 2,108.30 |
| 7/1/2017 | 2,176.80 |
| 1/1/2018 | 2,247.55 |
| 7/1/2018 | 2,320.60 |
| 1/1/2019 | 2,396.05 |
| 7/1/2019 | 2,473.90 |
| 1/1/2020 | 2,554.30 |
| 7/1/2020 | 2,637.35 |
| 1/1/2021 | 2,723.05 |
| 7/1/2021 | 2,811.55 |
| 1/1/2022 | 2,902.90 |
| 7/1/2022 | 2,997.25 |
| 1/1/2023 | 3,094.70 |
| 7/1/2023 | 3,195.25 |
| 1/1/2024 | 3,299.10 |
| 7/1/2024 | 3,406.35 |
| 1/1/2025 | 3,517.05 |
| 7/1/2025 | 3,631.35 |
| 1/1/2026 | 3,749.35 |
| 7/1/2026 | 3,871.20 |
| 1/1/2027 | 3,997.05 |
| 7/1/2027 | 4,126.95 |
| 1/1/2028 | 4,261.05 |
| 7/1/2028 | 4,399.55 |
| 1/1/2029 | 4,542.55 |
| 7/1/2029 | 4,690.15 |
| 1/1/2030 | 4,842.60 |
| 7/1/2030 | 5,000.00 |

BH-ERS-B-000214

(This page intentionally left blank)

BH-ERS-B-000215

BH-ERS-B-000216

<—>
<—>

<—>
BH-ERS-B-000217