UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- x
                :
In re:                :
                :
THE FINANCIAL OVERSIGHT AND            :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,     :  Title III
                :
  as representative of              :  Case No. 17-BK-3283 (LTS)
                :
THE COMMONWEALTH OF PUERTO RICO *et al.,*  :  (Jointly Administered)
                :
  Debtors.[1]              :
---------------------------------------------------------------------- x

**LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING
ALTERNATIVE DISPUTE RESOLUTION PROCEDURES, (B) APPROVING
ADDITIONAL FORMS OF NOTICE, (C) APPROVING PROPOSED MAILING, AND
(D) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") respectfully files this limited objection (the "Objection") to the Debtors' *Motion for Entry of an Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief* [Docket No. 7224] (the "Motion")[2] and the *Supplement to Motion for Entry of an Order Authorizing Alternative Dispute Resolution Procedures* [Docket No. 7553] (the "Supplement"). In support of this Objection, the Committee states as follows:

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**PRELIMINARY STATEMENT**

1. The Committee files this limited objection because, while it fully supports the implementation of an ADR process in these Title III cases, it believes that the ADR Procedures proposed in the Motion can and should be modified in several ways for the benefit of general unsecured creditors. In that regard, the issue is not only whether the process proposed by the Oversight Board is fair but also whether such process will be perceived as fair by affected creditors so as to obtain the maximum amount of their "buy in" to the ADR process.

2. The Committee believes that the ADR Procedures should be modified so that they are completely voluntary. Creditors should not be "deemed" to consent to the ADR process because they failed to return a form to the Debtors, or be forced to elect to waive procedural rights in litigation simply to receive a settlement offer, as the ADR Procedures currently contemplate. In addition, all creditors with claims of a type not expressly excluded from the ADR process and of an amount below a reasonable threshold (the Committee has previously suggested $50 million) should be allowed to participate in the ADR process if they so choose.[3] Moreover, the Committee believes that an arbitration process based in Puerto Rico (as opposed to the proposed use of magistrate judges) would be more effective for creditors and the Debtors as local arbitrators would be familiar with Puerto Rico law issues (which will be the applicable law for the vast majority of general unsecured claims), proficient in Spanish (avoiding interpretation costs and the need for translators), and avoid the need for protracted litigation and/or appeals as a voluntary, consensual arbitration process would create finality for claims allowance.

---

[3] Separately, the Committee notes that although it does not oppose the recent proposed exclusion of certain types of claims from the ADR process, *see* Suppl., ¶ 3, it is also aware that certain tax refund claims have been outstanding for years. Therefore, the Committee would propose that a creditor asserting a tax refund claim that has been pending for over one year should be allowed to seek allowance before this Court if it so chooses (as opposed to whatever "local" process the Debtors may ultimately propose).

2

3. As the Court is well aware, the Committee has long been a vocal proponent of implementing an ADR process that will allow for the fair, efficient, timely, and cost-effective resolution of thousands of claims against the Debtors. The ADR process first proposed by the Committee to the Oversight Board in January 2018 was (i) largely modeled after the ADR process developed in the Detroit chapter 9 case, and (ii) a completely voluntary "opt-in" process based on the binding arbitration of disputes by local arbitrators with knowledge of Puerto Rico law and a working knowledge of Spanish.

4. Unfortunately, the Committee's ADR process proposal was rejected by the Oversight Board, which has now proposed an "opt-out" process where the Debtors will exert nearly complete control over which creditors receive an offer to participate in the ADR process (as opposed to making that option available to all (or substantially all) unsecured creditors that are not otherwise expressly excluded (*e.g.*, funded indebtedness)). The Debtors also propose the use of magistrate judges to litigate as opposed to arbitrate the outcomes for disputed claims. This is, quite simply, the opposite of what the Committee envisioned as a voluntary, binding process that would allow creditors a simple, less expensive, means to resolve the allowed amount of an asserted claim. The Committee believes that the ADR Procedures can and should be modified as proposed herein.

**OBJECTION**

5. The goal of the ADR Procedures should be the implementation of an efficient process that is as convenient as possible for, and respects the rights of, the thousands of unsecured creditors that have asserted claims against the Debtors. These Title III cases are unique. Many creditors are *pro se* Puerto Rico residents who speak Spanish and have little or no experience with respect to bankruptcy matters or in-court litigation, and a process that lessens

3

barriers to resolution of their claims as opposed to increasing them should be the goal. The ADR Procedures should be modified in the following ways:

- Participation in the ADR process should be completely voluntary (*i.e.*, an opt-in process);
- Creditors should have the opportunity to participate in the exchange of offers without waiving procedural rights;
- The ADR process should be available to practically all general unsecured creditors that are not explicitly excluded, in contrast to merely "claims that the Debtors have identified to be eligible to participate in the ADR Procedure"[4];
- The ADR process should utilize local arbitrators with a background in Puerto Rico law and working knowledge of Spanish; and
- The ADR process should use arbitration to avoid (or limit) the need for (i) in-court litigation, (ii) retention of legal counsel, (iii) court filings by creditors and their counsel, and (iv) interpretation and translation.

### I.   ADR Process Should be Completely Voluntary

6.     The ADR process should be completely voluntary for creditors holding the types of claims that are amenable to the alternative dispute resolution. This means that (a) no one should be "deemed" to have accepted the ADR process simply by failing to respond to a form—an affirmative "opt-in" should be required; (b) creditors should have the opportunity to participate in an exchange of offers with the Debtors without waiving procedural rights, and (c) the Debtors should not be allowed to exercise 100% control over participation in the ADR process—instead, general unsecured creditors should be allowed to participate should they so choose, unless their claims are of the type that are explicitly excluded, such as claims based on bond ownership.

#### A.   ADR Process Should Be Opt-In, Not Opt-Out

7.     Under the proposed ADR Procedures, "[i]n the event that a claimant fails to return the ADR Form by the Return Deadline, such claimant shall be deemed to **have elected to**

---

[4]   Mot., Ex. A, Sched. 1, ADR Procs. ¶ 1(a).

4

**participate** in the ADR Procedure."[5]  This "opt-out" process puts the burden on the claimant to affirmatively opt out of the ADR process and is an unfair imposition on creditors.  A creditor may never even receive the ADR Form, perhaps because he or she has moved to a different address in the aftermath of Hurricane María, and yet the creditor would still be subject to the ADR process.  Alternatively, a creditor may return the ADR Form late, after the Return Deadline, and indicate therein a refusal to participate, but would still arguably be placed into the ADR process.  The Court should not permit a process that allows for these types of outcomes.

8. Deemed consent by creditors to the ADR Procedure should also not push them into a truncated litigation process before a magistrate judge who will then issue a report and recommendation and not a final judgment.[6]  Claimants "deemed" to consent to the ADR process will be forced to forgo the rights they would have enjoyed in normal claims litigation before the Title III court.  These claimants may be burdened or prejudiced by the various limitations on normal litigation rights (*e.g.*, the requirement that parties file short Document Submission Notices, or the prohibition on creditors submitting documents with the Document Submission Notices not previously submitted in connection with the offer exchange) that are designed to streamline the ADR Procedures.  Although these aspects of the ADR Procedures may not be

---

[5] ADR Procs. ¶ 3.

[6] *See* ADR Procs. ¶ 11.f.  The Committee would also suggest that, to the degree the Court allows the proposed use of magistrate judges, the ADR Procedures be modified so as to ensure that magistrate judges issue reports and recommendations consistent with the limitations on magistrate jurisdiction in 28 U.S.C. section 636.  One way this could be done would be to provide that, absent creditors' actual consent, material disputes of fact will be resolved by the Title III Court.  *See Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 431–32 (3d Cir. 2005) ("In conducting this proceeding, the Magistrate Judge resolved factual disputes going to one of the ultimate issues in the case . . . and, in doing so, essentially tried part of the case. Magistrate judges may not, however, try cases without the parties' consent."); *Members v. Paige*, 140 F.3d 699, 701 (7th Cir. 1998) ("The parties have not consented to decision by a magistrate judge under 28 U.S.C. § 636(c), so the court lacked authority to refer the case for a bench trial."); *Roberts v. Manson*, 876 F.2d 670, 674 (8th Cir. 1989)  ("We cannot infer that Congress intended to include nonconsensual evidentiary hearings as "additional duties," under section 636(b)(3). Therefore, we find the magistrate was without jurisdiction to hold an evidentiary hearing and adjudicate the merits of petitioner's case.").  The Committee understands that the Court may view the unique context of these Title III cases as a basis for allowing factual determinations by magistrates.  However, certainty with respect to the legal bases for the ADR Procedures will help avoid future challenges to the determinations of the Claims Adjudication Judges.

5

objectionable in and of themselves, such provisions should not be forced upon nonconsenting creditors.[7]

### B. Creditors Should Have Opportunity to Participate in Offer Exchange Without Waiving Rights

9. As proposed, the structure of the ADR Procedures and the contemplated use of magistrates creates the prospect that creditors who desire to participate in the initial offer exchange set forth in the ADR Procedures (which obviously should be encouraged), but who do not wish to waive their rights to Title III Court resolution of their claims, will feel compelled to "elect" the ADR Process (and consent to magistrate adjudication therein) simply in order to obtain an offer from the Debtors. The ADR Procedures should be amended to avoid imposing this predicament on creditors, who deserve the chance to participate in a simple exchange of offers without waiving a suite of other procedural rights. This problem should not be difficult to resolve. For example, the Debtors could include an offer in the ADR Form initially distributed to creditors with a separate election to participate in truncated ADR process litigation before a magistrate judge. Such a mechanism would give creditors the opportunity to accept an offer or submit a counteroffer while declining to participate in ADR process litigation.[8]

---

[7] An affirmative opt-in requirement is consistent with precedent from the Detroit case, which required claimants to expressly consent to binding arbitration. *See Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims*, Annex 1, ADR Procs. § II.C. *In re City of Detroit*, Case No. 13-53846 (Bankr. E.D. Mich, Dec. 24, 2013) (the "Detroit ADR Order") [Docket No. 2302] (requiring express consent to binding arbitration).

[8] With respect to the offer exchange proposed in the ADR Procedures, there appears to be a potential timing error, which is that creditors must return their election form thirty (30) days following service, ADR Procs. at 2, but offers are to be sent out within "**thirty (30) days of the ADR Form being served upon the creditors**, or within thirty (30) days after the time for serving the ADR Form has expired." ADR Procs. ¶ 7. Sending out offers prior to the return of ADR Forms as contemplated here does not seem consistent with the proposed ADR process, in which creditors may return the ADR Form and elect not to participate, after which "the determination regarding, among other things, the validity and amount thereof, shall be made by the Court." ADR Proc. ¶ 4.

## C. Debtors Should Not Be Allowed to Pick and Choose ADR Participants

10. The ADR Procedures as proposed will very likely lead to the exclusion of creditors that would otherwise wish to participate in the ADR process. The ADR Procedures give the Debtors nearly complete control over who can participate in the ADR process—creditors have no control, and must essentially wait to be invited to participate.[9] This arrangement is unfair to creditors who may have claims that are appropriate for resolution in an ADR process and who desire to participate, but are not invited to do so by the Debtors. The ADR Procedures should be amended so that, unless a creditor's claim is above a certain threshold (*e.g.,* $50 million) or explicitly excluded (such as bond, union grievance, or pension claims), a creditor is allowed to choose to participate in the ADR process and not be dependent on an invitation from the Debtors. As a matter of principle, the ADR process should operate on a completely voluntary basis—no one should be dragged in by default, and as a general rule unsecured creditors should have an opportunity to participate in the ADR process.[10]

## D. ADR Procedures Should Provide "Safety" Valve for Certain Tax Refund Claims

11. With respect to excluded claims, the Committee understands that the Debtors, as stated in the Supplement, do not "presently intend to transfer into the ADR Procedures claims arising out of union grievances, tax refunds or employee benefits, including pension claims to the

---

[9] Unfortunately, the Committee's consultation rights with respect to the designation of claims eligible for the ADR process will do little to help unsecured creditors. The Committee has a right to be consulted, but no power over the Debtors' decision regarding which claims to designate for the ADR process.

[10] Further, an important benefit of a voluntary process is that it would facilitate binding arbitration, which, for reasons discussed more fully below, the Committee believes is the optimal form of adjudication for an ADR process in these cases. Obtaining the required consents and waivers from claimants entering binding arbitration could be accomplished quite easily if the Oversight Board were to establish the type of truly voluntary "opt-in" ADR process that the Committee has proposed. If the ADR Procedures were modified to clearly require affirmative consent by creditors (instead of the current "silence as deemed consent" structure), then obtaining the required consents and waivers would simply be a matter of serving claimants with the proper forms and obtaining their consent to engage in binding arbitration. In fact, this is exactly the process that was carried out in the Detroit Chapter 9 case. *See* Detroit ADR Order, Annex 1, ADR Notice, at 4 (form allowing claimant to consent to binding arbitration).

7

extent they are administrative in nature and related to the entitlement of quantification of benefits pursuant to existing benefit programs."[11] The Committee does not object as a general matter to the exclusion of these categories of claims from the ADR Process, however, the Committee is aware that there are tax refund claims against the Commonwealth that have been outstanding for many years, and tax refund claimants should not be kept waiting any longer based on exclusion from the ADR Process. Therefore, the ADR Procedures should be amended to provide that tax refund claims outstanding for more than one (1) year may be submitted directly to the Title III court for claims reconciliation and allowance.

## II. ADR Process Should Resolve Disputes Through Local Binding Arbitration

12. The ADR process originally proposed by the Committee to the Oversight Board contemplated the use of binding arbitration to resolve disputed claims, as in the Detroit Chapter 9 case. The proposed ADR Procedures, however, use federal magistrates as Claims Adjudication Judges, essentially placing claimants into streamlined federal court litigation under the Federal Rules of Bankruptcy Procedure. The Committee does have any issue with the substantive legal ability of federal magistrate judges. Rather, the Committee simply believes that barriers to entry into the ADR process should be as low as possible and that using arbitration in Puerto Rico serves the needs of creditors better given the (a) significant amount of Puerto Rico law issues that will arise and the need for adjudicators fluent in Spanish, (b) reduced need for creditors to retain counsel in an arbitration proceeding, and (c) greater finality of binding arbitration as compared to the proposed magistrate litigation.

### A. Claims Adjudicators Should Be From Puerto Rico

13. First, the Committee believes that the use of local Puerto Rico arbitrators will promote an effective and accessible ADR process. The reasons why are clear—claimants (and

---

[11] Suppl. ¶ 3.

witnesses) will speak Spanish and present Spanish-language documents, and their claims will be largely (or wholly) based on Puerto Rico law. Local arbitrators will speak Spanish and be familiar with local law (including local government administrative policies and practices), while mainland adjudicators are less likely to have these skills and familiarity. Employing local arbitrators will also vastly improve the ADR process experience for claimants who might otherwise be required to use translation, interpretation, and video-conferencing services in order to obtain a decision from an English-speaking magistrate judge thousands of miles away.[12]

### B. In Arbitration Creditors Will Have Less Need to Retain Legal Counsel

14. Part of the point of an ADR process is to provide a relatively informal claims resolution forum in which claimants can obtain adjudication of claims without needing to retain legal counsel. This is a critical issue in these Title III cases given the large number of claimants with relatively small claims for whom it likely is not feasible to hire counsel.

15. One of the Committee's concerns regarding the proposed ADR Procedures is that they provide, essentially, for federal court litigation in truncated form. For example, should a Claims Adjudication Judge determine oral argument is appropriate, creditors will need to attend a full hearing in a federal court that would presumably be little different from a hearing in a contested matter before the Title III Court.[13] Moreover, appeals of decisions by Claims Adjudication Judges to the First Circuit Court of Appeals will presumably be subject to all the ordinary procedures of such court. The Committee believes that these formal and inherently

---

[12] An additional difficulty imposed by the ADR Procedures is that the Debtors are to provide interpretation and translation services only "[u]pon entry of an order of the Title III Court." ADR Procs. ¶ 11.d. And the ADR Procedures do not explain what the process will be for creditors to request such orders—presumably, it will be necessary for creditors to file a motion. The Committee believes that interpretation and translation services should be provided by the Debtors on an as-needed basis without the requirement of a court order, and further, that the ADR Procedures should clarify that translations should **not** be required where the Claims Adjudication Judge is already fluent in Spanish.

[13] *See* ADR Procs. 11.h. ("All proceedings before Claims Adjudication Judges shall be governed by the Federal Rules of Bankruptcy Procedure, made applicable to this Title III case pursuant to PROMESA § 310.").

"judicial" aspects of the proposed ADR Procedures will cause more claimants to feel the need to obtain legal counsel than would be the case in a more informal but binding arbitration process, thus increasing the costs to creditors. Furthermore, a creditor that cannot afford legal counsel in connection with an appeal to the First Circuit Court of Appeals is left in an untenable position.

### C. Arbitration Offers Greater Certainty and Finality

16. Finally, the Title III cases require an ADR process that encourages the quick resolution of disputed claims. Time is of the essence because many Puerto Rico creditors have not been paid in years and have faced financial hardship themselves as a result. Claims have little value to creditors unless they are allowed and paid pursuant to a plan of adjustment. One of the reasons the Committee proposed an ADR process was to ensure that creditors could elect to utilize a process that would be completed and binding over a relatively short period of time without the need to litigate or otherwise engage in a contested hearing before the Court. Unlike the proposed ADR Procedures, an arbitration process such as that proposed by the Committee would involve very limited appellate rights,[14] thus giving much-needed finality to the claims allowance process.

### CONCLUSION

17. For the reasons stated above, the Committee requests that the relief granted by the Court be modified to reflect the issues raised herein.

[*Remainder of page intentionally left blank.*]

---

[14] *See* Detroit ADR Order, Annex 1, ADR Procs. § II.C.2.(j) (limiting rights to request vacatur of arbitration award to instances where award violates Bankruptcy Code or ADR Procedures or pursuant to Federal Arbitration Act ).

WHEREFORE, the Committee respectfully requests that the relief granted by the Court be modified to reflect the issues raised herein.

Dated: June 28, 2019

*/s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. (Pro Hac Vice)
James R. Bliss, Esq. (Pro Hac Vice)
Michael E. Comerford, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
michaelcomerford@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Alberto J. E. Añeses Negrón, Esq. (USDC - PR 302710)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
aaneses@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*