**Exhibit A**

# PAUL
# HASTINGS

1(212) 318-6626
jamesbliss@paulhastings.com

June 4, 2019

Julia Frayer
Managing Director
London Economics International LLC
717 Atlantic Avenue, Suite 1A
Boston, MA 02111

Dear Ms. Frayer:

Paul Hastings LLP ("PH"), on behalf of the Official Committee of Unsecured Creditors of the Puerto Rico Electric Power Authority (the "Committee"), is pleased to retain London Economics International LLC ("LEI") to provide expert services in connection with the motion of the Financial Management and Oversight Board of Puerto Rico, as representative of the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority for approval of a settlement with PREPA's bondholders in PREPA's PROMESA Title III case. LEI's expert services may include performing economic analyses, preparing an opening expert report due on June 17, 2019, preparing a rebuttal expert report (if necessary), sitting for a deposition, and testifying at the hearing on the motion, which is scheduled for July 24, 2019.

This engagement will be governed by the terms and conditions attached as Exhibit A. LEI's hourly rates for this engagement will be as follows:

| Hourly Rates (US$) | |
| --- | --- |
| President | $825 |
| Managing Director | $820 |
| Director | $650 |
| Managing Consultant | $575 |
| Senior Consultant | $495 |
| Consultant | $395 |
| Research Associate | $295 |
| Admin | $125 |

# PAUL
# HASTINGS

Julia Frayer
June 4, 2019
Page 2

We look forward to working with you.

PAUL HASTINGS LLP

James R. Bliss
Partner

Agreed and Accepted:

LONDON ECONOMICS INTERNATIONAL LLC

Julia Frayer  AJ Goulding
Managing Director  President

**Attachment A:
London Economics International LLC
Terms and conditions**

### 1. OUR RESPONSIBILITIES

1.1 We, London Economics International LLC ("LEI"), will use all reasonable endeavors and commit the necessary resources to complete the services ("Services"), within the estimated time schedule set out in the attached Engagement Letter ("Engagement Letter"). We will not be liable to you (in contract, tort or otherwise) if we fail to meet this schedule.

1.2 The attached Engagement Letter and these Terms and Conditions are the entire agreement between you and us. If there is any inconsistency between these terms and conditions and the Engagement Letter, the Engagement Letter shall prevail. No addition, amendment or variation will bind us unless it is in writing and signed by a Principal and none of our employees or representatives (save for an executive officer, as identified in Section 8.1) is authorized to make any representations or warranties in respect of the Services or the Project.

1.3 We will inform you if the expenses and disbursement or time schedules estimated in the Engagement Letter are likely to be materially varied, but factors beyond our control may result in actual time schedules or costs differing from our estimates, which we do not warrant. The fee referred to in the Engagement Letter shall not change without prior agreement of parties.

1.4 If the Project or the amount of services required from us are altered at your request or because of any change in laws or regulations or because you fail to fulfill your obligations under our agreement or because of any other circumstances beyond our control then we may charge additional amounts beyond those provided for in the Engagement Letter.

1.5 All report deliverables will be delivered in PDF format, unless otherwise required.

### 2. YOUR RESPONSIBILITIES

2.1 You must supply or arrange to be supplied to us (retaining your own back-up copies), without charge and in such a reasonable time and manner as not to disrupt our performance of the Services, all relevant data and information in your possession or control, subject to applicable confidentiality or other non-disclosure agreements and the requirements of applicable law. It is your responsibility to ensure the accuracy of all and any such data you supply to us. You and your employees, agents and sub-contractors must also give us such assistance, as we shall reasonably require in performing the Services.

### 3. FEES, EXPENSES, AND DISBURSEMENTS

3.1 Our professional fees are based on the hourly rates set forth in the Engagement Letter.

3.2 Unless otherwise agreed you must reimburse us for all reasonable expenses and disbursements incurred in performing the Services including the cost of all documents, travel expenses, specialist professional services (e.g., legal advice, market research, field work, excluding translation services), air freight and other courier services. An administrative charge of 5% will be added to all expenses. This list is not exhaustive.

3.3 The fee paid to us for the formulation and reporting of our findings and conclusions are not contingent upon the findings and conclusions presented.

### 4. TERMS OF PAYMENT

4.1 Fees, expenses and disbursements (plus local taxes as applicable) will be invoiced monthly. Invoices shall include detailed descriptions of the work completed, indicate the hours worked by individual in tenths of an hour and broken down by task, with his or her hourly rate applied per the agreement, unless there is an agreed to fixed price for the work. Receipts shall be provided for

all significant expenses and disbursements. Invoices shall be processed and paid in accordance with the *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1715] entered by the Court in the PROMESA Title III cases of the Commonwealth of Puerto Rico and the other Title III debtors, including PREPA. No fees, expenses, or disbursements will be paid until approved and allowed in accordance with the aforementioned procedures. Neither PH nor the Committee (nor any of its members) shall be obligated to pay, or shall otherwise be liable for, any fees, expenses, or disbursements of LEI.

## 5. CONFIDENTIALITY AND PROPRIETARY RIGHTS

5.1  Each party must always use all reasonable endeavors to ensure that all confidential or proprietary information received by it or its staff from the other party remains confidential and is not, without the prior consent of the other party, used or disclosed to any third party except as otherwise provided herein. Any materials, including presentations or sections of prepared written reports (referred to collectively as the "Materials"), prepared by LEI may not be shared with third parties without the express written consent of LEI, which shall not be unreasonably withheld, other than to the Committee's legal and financial advisors.

5.2  We will be the exclusive owner of all intellectual property in the Engagement Letter and any reports and other materials prepared by or for us in connection with the Project. We do not permit you to sell our work products or deliverables to third parties. We do not permit you to supply our work products or deliverables to third parties other than to your affiliates and yours and their employees, directors, consultants, advisors, potential lenders and investors ("Representatives") who need to review it. This restriction shall not interfere with the ability of any party to release the deliverables, or any part thereof, as may be required for any regulatory requirement or legal proceeding which the party or any of its affiliates may be involved in or subject to or as requested or required by any judicial, regulatory, legislative or other governmental entity (including without limitation, the Federal Energy Regulatory Commission, Securities and Exchange Commission, and any local, public service commission) with jurisdiction over you or your Representatives to disclose it (whether by interrogatories, subpoenas, civil investigative demands or otherwise), provided that you, to the extent legally permissible and on the advice of counsel, notify London Economics International LLC in a timely fashion that the deliverables have been so released.

5.3  For the avoidance of doubt, Sections 5.1 and 5.2 of these Terms and Conditions shall not apply to the exent dislcosure is required in accordance with applicable rules of procedure or court orders. The parties acknowledge and agree that upon any breach by you or us, of your or our obligations under Section 5.1 and 5.2 of these Terms and Conditions, we or you may have no adequate remedy at law, and accordingly will be entitled to seek specific performance and other appropriate injunctive and equitable relief in addition to all other rights and remedies, at law or in equity, that may be available to us or you. Notwithstanding any other provision herein, neither party shall be entitled to recover consequential, punitive and/or exemplary damages arising under, or as a result of a breach of, this Agreement.

## 6. LIMITATIONS ON LIABILITY

6.1  Neither party will be liable for any failure to perform its obligations under agreement resulting from any cause beyond its reasonable control.

6.2  You can foresee and evaluate better than us any potential damage or loss you may suffer in connection with the Services. We cannot adequately insure against liability which we might have to you and our fees have been calculated on the basis that we will exclude and limit our liability as set out below.

6.3  NEITHER PARTY SHALL IN ANY CIRCUMSTANCES HAVE ANY LIABILITY FOR CONSEQUENTIAL OR ECONOMIC LOSS (INCLUDING WITHOUT LIMITATION LOSS OF PROFIT, REVENUE OR GOODWILL) OR FOR LIABILITY TO ANY OTHER PERSON FOR ANY

|     | CONSEQUENTIAL LOSS, ECONOMIC LOSS, CLAIM FOR DAMAGES OR AWARDS HOWSOEVER ARISING. |
|-----|---|
| 6.4 | We shall not be responsible for any loss or damage however arising or suffered by you or any other person which results directly or indirectly from any act of default of you, your employees or your agents. |
| 6.5 | All conditions, warranties, terms, representations and statements whatsoever not expressly included in these Terms and Conditions (whether express or implied by law, regulation, custom, usage or otherwise) are excluded to the fullest extent permitted by applicable law. |
| 6.5 | The content of LEI's analysis does not constitute investment advice. LEI, its officers, employees, and affiliates make no representations or recommendations with respect to any investment. Furthermore, LEI expressly disclaims any liability for any loss or damage arising or suffered by any third party as a result of that party's, or any other party's, direct or indirect reliance upon LEI's analysis. PH will use reasonable efforts to obtain an indemnity from PREPA for any such claim asserted by any third party against LEI. |

## 7. TERMINATION

| 7.1 | Our agreement may be terminated by either party giving ten (10) days written notice to the other party. |
|-----|---|
| 7.2 | Either party may also terminate our agreement with immediate effect by written notice if either party: |
| 7.2.1 | commits any material, persistent or repeated breach of our agreement; or |
| 7.2.2 | ceases or threatens to cease to carry on business or to pay any amount owing to under any agreement. |
| 7.3 | Termination shall not affect any rights or obligations (including confidentiality) to which either of us has become entitled or subject before termination. |
| 7.4 | If the Project is terminated by us or you before the Services are concluded then our fees will be charged on a pro-rata basis, except in the case of termination pursuant to Section 7.2. |

## 8. GENERAL

8.1 All notices given must be delivered personally or by mail or overnight courier or facsimile transmission to the address of the recipient set out in the Engagement Letter or such other address as the recipient may designate and shall be deemed to have been served if by hand, or by overnight courier when delivered, if by mail five (5) days after posting and if by facsimile transmission when dispatched, addressed as follows:

(a) If to **London Economics International LLC**:

London Economics International LLC
717 Atlantic Avenue, Suite 1A
Boston, MA 02111
Tel: (617) 933-7200
Fax: (617) 933-7201
E-mail: julie@londoneconomics.com
Attention: Julie Sharkey

(b) If to **Paul Hastings LLP**:

Paul Hastings LLP, attention: Alexander G. Bongartz
200 Park Avenue, New York, NY
Tel: 212-318-6000

E-mail: alexbongartz@paulhastings.com
Attention: Alexander G. Bongartz

Either party may change its address for the purpose of this section by giving written notice of such change to the other in the manner provided in this section.

8.2 Neither party may assign this agreement or any rights or obligations hereunder without prior approval from the other party, which will not unreasonably withhold.

8.3 Neither party hereto shall without the prior written approval of the other party at any time during this agreement or for twelve (12) months after its termination employ or try to entice away any person that it was introduced to or made aware of as a result of this engagement. The foregoing provision shall not apply to employees who respond to general solicitations for employment, not targeted to them.

8.4 If any provision, or part thereof, of these conditions is held by any competent authority to be invalid or unenforceable in whole or in part, the validity of the other provisions of these conditions and the remainder of the provision in question shall not be affected.

8.5 Any failure by either party to exercise or any delay by it in exercising, any of its rights under this agreement shall not operate as a waiver of such rights and shall not prevent it from subsequently enforcing any right. No waiver by either party of any right shall be valid unless in writing signed by the authorized representative of either party.

8.6 This agreement is governed by the laws of the Commonwealth of Massachusetts (excluding its conflict of laws rules) and each of the parties submits to the exclusive jurisdiction, and agrees to venue in, the courts of the Commonwealth of Massachusetts and the United States Federal Courts located in the Commonwealth of Massachusetts.