UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA),<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

MEMORANDUM ORDER DENYING RENEWED MOTION OF
PV PROPERTIES, INC. REGARDING AUTOMATIC STAY (DOCKET ENTRY NO. 7179)

Before the Court is the *Renewed Motion for Relief from Stay Under 11 USCS § 362(b)(4) & § 362(d)(1)* (Docket Entry No. 7179 in Case No. 17-3283, the "Motion"), filed by PV Properties, Inc. ("PV Properties" or "Movant"). Movant seeks a determination that the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

automatic stay imposed by 11 U.S.C. § 362(a)[2] is not applicable to its proceeding before the Puerto Rico Energy Bureau ("PREB"), captioned <u>PV Properties, Inc. v. Autoridad de Energía Eléctrica de Puerto Rico</u>, Case No. CEPR-QR-2017-0001 (the "Administrative Proceeding") or, alternatively, an order providing relief from the automatic stay. The relief sought in the Motion overlaps significantly with the relief sought by Movant in a prior motion (Docket Entry No. 332 in Case No. 17-4780, the "2017 Motion").

The Court has carefully considered all of the submissions in connection with the Motion.[3] For the following reasons, the Motion is denied in its entirety.

## BACKGROUND

On March 3, 2017, Movant commenced the Administrative Proceeding before the Energy Commission of the Commonwealth of Puerto Rico ("PREC"), the predecessor to what is now the Puerto Rico Energy Bureau ("PREB"). In the Administrative Proceeding, Movant sought a determination that PREPA violated the Public Policy on Energy Diversification by Means of Sustainable and Alternative Renewable Energy in Puerto Rico Act (the "Renewable Energy Act") by failing to purchase Renewable Energy Certificates ("RECs") offered by Movant. (Appendix 1 & 2 to the 2017 Motion at 1.) Movant also sought an order requiring PREPA to purchase all offered RECs at the price specified by Movant. (2017 Motion ¶¶ 2, 15-

---

[2]  The provisions of title 11 of the United States Code referenced herein are all applicable to the above-captioned cases pursuant to Section 301(a) of PROMESA, 48 U.S.C. § 2161(a).

[3]  The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed a memorandum of law in opposition to the Motion (Docket Entry No. 7454 in Case No 17-3283, the "Opposition") and Movant filed a reply in further support of its Motion (Docket Entry No. 1364 in Case No. 17-4780, the "Reply").

17; see also Appendix 1 to 2017 Motion at 1.) The Renewable Energy Act requires electricity suppliers to comply with a Renewable Portfolio Standard ("RPS") which mandates that a specified percentage of the suppliers' energy come from renewable sources. (2017 Motion ¶ 12.) Movant is not the only enterprise that offers RECs for sale. (Id. ¶ 15.)

On March 23, 2017, PREPA moved to dismiss the Administrative Proceeding, arguing that PREC lacked jurisdiction to consider Movant's violation claims, and that PREC could not proceed properly on Movant's administrative complaint because PREC had not yet issued regulations concerning RECs. PREC denied PREPA's motion to dismiss, holding that it has primary and exclusive jurisdiction of proceedings asserting violations of Puerto Rico's public energy policy and mandates. (See Appendix 1 to 2017 Motion at 7-9.) PREC determined that the question of whether it could address Movant's complaint without first issuing regulations is substantive rather than jurisdictional. (Id. at 7-9.) PREC ordered the parties to brief a number of specific issues relevant to its ability to act in the absence of regulations, as well as issues going to the merits of Movant's claims. (Id. at 8-9.)

On July 12, 2017, following the commencement of PREPA's Title III case, PREPA filed a notice with PREC asserting that the Administrative Proceeding was subject to the automatic stay. (See 2017 Motion ¶ 2.) On September 13, 2017, PREC rejected PREPA's notice, issuing a Resolution in which it declared that the Administrative Proceeding furthers the Commonwealth's public policy concerning the RPS, and concluding that the Administrative Proceeding fell within the "police and regulatory power" exception to the automatic stay, 11 U.S.C. § 362(b)(4).[4] (See Appendix 2 to 2017 Motion at 5.) Although PREC acknowledged that

---

[4] Section 362(b)(4) provides that the "filing of a [bankruptcy] petition does not operate as a stay . . . of the commencement or continuation of an action or proceeding by a

Movant seeks "a determination that PREPA should purchase certain Renewable Energy Certificates at a set price," PREC characterized the Proceeding's "main controversy" as the issue of whether actions to enforce the RPS can go forward in the absence of regulations. (Id. at 4.) In support of its position, PREC cited "an underlying and compelling public interest in clarifying and determining the scope and applicability" of the relevant provisions of the Renewable Energy Act. (Id. at 4-5.) Thus, according to PREC, the "primary purpose" of the Administrative Proceeding was to determine whether the Act "is currently and readily enforceable." (Id.)

Movant filed the 2017 Motion on October 4, 2017. It thereby requested that the Court adopt PREC's conclusion concerning Section 362(b)(4) or, in the alternative, grant relief from the automatic stay for cause.[5] In an order dated November 3, 2017, the Court denied the relief sought in the 2017 Motion (the "2017 Order"). See In re Fin. Oversight & Mgmt. Bd. for P.R., No. 17 BK 3283-LTS, 2017 WL 7135382, at *3 (D.P.R. Nov. 3, 2017). The Court determined that the Administrative Proceeding did not meet the standard applicable to the police and regulatory power exception to the automatic stay because the ultimate aim of the Administrative Proceeding was to "impose financial obligations on PREPA, the debtor, in favor of the Movant, which is a private party" and because the public policy issues addressed by the Administrative Proceeding do not implicate "ongoing debtor conduct which would seriously

---

governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power. . . ."  11 U.S.C.A. § 362(b)(4) (West 2015).

5   In relevant part, Section 362(d)(1) of the Bankruptcy Code provides as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C.A. § 362(d)(1) (West 2015).

threaten the public safety and welfare." Id. at *2. Applying the relevant factors from In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990), the Court also concluded that cause did not exist to provide relief from the automatic stay. Id. at *3.

On May 31, 2019, PV Properties filed the Motion and thereby renewed its request for the relief sought in the 2017 Motion.

## DISCUSSION

The relief sought in the instant Motion[6] is materially the same as the relief sought in the 2017 Motion. Like the 2017 Motion, the Motion seeks either recognition that Section 362(b)(4) exempts the Administrative Proceeding from the scope of the automatic stay or a determination that "cause" exists pursuant to Section 362(d)(1) to merit relief from the automatic stay with respect to the Administrative Proceeding. Movant makes three arguments in an attempt to differentiate the merits of the Motion from the merits of the 2017 Motion. The Court will address each argument in turn.

### The Scope of the Relief Sought by Movant

Movant first contends that the Court may "re-visit" the issue of the applicability of the police and regulatory power exception to the automatic stay because, in the instant Motion, Movant asks for stay relief only to pursue "a public policy determination and interpretation of Law 82 of 2010 concerning applicability to consumer—not industrial—

---

[6] The Motion does not include a proposed order specifying the relief requested by Movant, notwithstanding the Court's requirement that every motion be accompanied by a proposed order. (See Docket Entry No. 7115-1 in Case No. 17-3283-LTS, *Ninth Amended Notice, Case Management and Administrative Procedures* § I.I ("All Pleadings, whether Urgent Motions or not, that are requesting relief, shall be accompanied by a proposed order.").) Accordingly, the Court has relied upon the Motion itself in determining what relief Movant seeks.

renewable energy production." (Mot. ¶ 7.) Movant asserts that the relief sought in the Motion does not contemplate pursuit of a monetary claim against PREPA in the Administrative Proceeding (Mot. ¶ 5; Reply at 2) and that any such monetary claim will instead be litigated in PREPA's Title III Case (Mot. ¶ 5).

However, the Court has already considered, addressed, and rejected this argument in the context of the 2017 Motion. In the 2017 Motion, Movant argued that the relief requested therein "basically aims at clarifying that RECs generated via distributed renewable energy, as opposed to pre-contracted power purchase agreement . . . are, under Puerto Rico law, equivalent for Renewable Portfolio Standard (RPS) compliance purposes." (2017 Mot. ¶ 15.) Similarly, Movant also argued that the stay relief requested in the 2017 Motion would not extend to "any monetary judgment against PREPA." (Docket Entry No. 354 in Case No. 17-4780, at ¶¶ 12, 13 ("[T]o PV Properties it is absolutely clear that the only aspect which can move forward in the ECPR proceeding is an ECPR's regulatory/public policy finding on the nature of distributed RECs.").)

In denying the applicability of Section 362(b)(4) in the 2017 Order, the Court rejected that overly narrow view of the role of the Administrative Proceeding:

> Notwithstanding PREC's characterization of the Proceeding as one focused on the clarification of the scope of PREC's own regulatory powers, Movant's claims in the PREC Proceeding clearly and exclusively focus on its interest in a determination that PREPA is obligated to purchase Movant's commodities. Movant has not requested an abstract determination of the circumstances under which PREC can exercise its regulatory powers; to the contrary, the issue of whether PREC can act on Movant's complaint was raised by PREPA by way of a jurisdictional defense. Thus, while PREC's interest in the issues raised by the Proceeding goes to public energy policy and the scope of its own regulatory powers, the PREC Proceeding is primarily designed to impose financial obligations on PREPA, the debtor, in favor of the Movant, which is a private party. Furthermore, the public policy issue identified in PREC's

> Resolution and Order—clarification of the scope of its general authority to promote compliance with Puerto Rico's RPS—is not an issue implicating "ongoing debtor conduct which would seriously threaten the public safety and welfare."

In re Fin. Oversight & Mgmt. Bd. for P.R., 2017 WL 7135382, at *2. Thus, as explained in the 2017 Order, the outcome of the public policy determination in the Administrative Proceeding may have direct pecuniary effects on PREPA for the benefit of PV Properties, a private party. Furthermore, the public policy issues underlying the Administrative Proceeding do not concern conduct which threatens public safety and welfare. Accordingly, Movant's first variation on its argument is insufficient to demonstrate that the Section 362(b)(4) exception to the automatic stay applies.

The Impact of the Public Energy Policy Law of Puerto Rico, Act 17-2019

To differentiate the Motion from the 2017 Motion, Movant further argues that the Public Energy Policy Law of Puerto Rico, Act 17-2019, signed into law by Governor Rosselló in April 11, 2019, resolves "the substantive issue of the applicability of the [RECs] to distributed net metered individual consumers" in PV Properties' favor and thereby "makes PREPA's position invalid." (Mot. ¶ 12 ("It is clear by law that [RECs] apply to distributed net metered consumers."); Reply at 2 ("Law 17 . . . establish[es] that distributed generation qualifies for [RECs].").) However, whether the Commonwealth's adoption of Act 17-2019 would resolve the merits of the Administrative Proceeding in PV Properties' favor is not pertinent to either the applicability of Section 362(b)(4) or to whether cause exists to provide relief from automatic stay under Section 362(d)(1).

As discussed in the 2017 Order, the applicability of Section 362(b)(4) depends on application of the "public policy" and "pecuniary purpose" tests.[7] In re Fin. Oversight & Mgmt. Bd. for P.R., 2017 WL 7135382, at *2 (citing In re McMullen, 386 F.3d at 324-25). Neither test considers the substantive merits of the claims against a debtor, and thus the enactment of Act 17-2019 does not change the Court's prior analysis of the applicability of Section 362(b)(4).

Similarly, a court's evaluation of whether cause exists to grant relief from the automatic stay under Section 362(d)(1) is governed by the Sonnax factors.[8] See In re Sonnax, 907 F.2d at 1286. Adjudication of a motion for relief from the automatic stay "is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims." In re Bos. Language Inst., Inc., 593 B.R. 381, 395 (Bankr. D. Mass. 2018)

---

[7] The "public policy" and "pecuniary purpose" tests "contemplate that the bankruptcy court, after assessing the totality of the circumstances, determine whether the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare, *or* represents a governmental attempt to recover from property of the debtor estate, whether on its own claim, or on the nongovernmental debts of private parties." In re McMullen, 386 F.3d 320, 325 (1st Cir. 2004).

[8] The Sonnax factors include the following twelve considerations:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

In re Sonnax, 907 F.2d at 1286.

(quoting Grella v. Salem Five Cent Savs. Bank, 42 F.3d 26, 33-34 (1st Cir. 1994)). Rather, the purpose is to determine whether cause exists to permit a "creditor to litigate its substantive claims elsewhere . . . ." Id. Creditors often have meritorious claims against debtors; if the mere existence of such claims constituted "cause" for relief from the automatic stay, the automatic stay would cease to provide the "breathing spell" that is critical to debtors' rehabilitation. Cf. In re Soares, 107 F.3d 969, 975 (1st Cir. 1997) (noting that the automatic stay "enables debtors to resolve their debts in a more orderly fashion" and prevents a "free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets").

The Potential Loss of Value of Movant's RECs

With respect to its request for relief from the automatic stay, Movant argues that the value of its property interest in RECs will be eliminated in its entirety as a result of a statutory requirement that retained RECs be used within two years. (Mot. ¶ 8.) Citing the First Circuit's decision in Peaje Investments LLC v. García-Padilla, 845 F.3d 505, 511-514 (1st Cir. 2017), Movant argues that this risk constitutes a lack of "adequate protection" of its property interest in its RECs. (Mot. ¶¶ 9-11.)

Movant's argument rests upon an unduly broad reading of Section 362(d)(1)'s language concerning "the lack of adequate protection of an interest in property of such party in interest." Courts have rejected such overly expansive interpretations of the phrase "interest in property." See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988) (noting that, although the phrase "interest in property" could have a broad meaning "viewed in the isolated context of § 362(d)(1)," its meaning is "clarified by the remainder of the statutory scheme."). With respect to secured creditors, the "'interest' for which the bankruptcy stay statute requires protection is 'the right of a secured creditor to have the

security applied in payment of the debt.'" Peaje, 845 F.3d at 512 (quoting Timbers, 484 U.S. at 370). More generally, "[r]elief from the stay is available to *a party with an interest in property of the estate* when the party's interest is not adequately protected." 3 Collier on Bankruptcy ¶ 362.07 (16th ed. 2019) (emphasis added). Movant has not alleged that it is a secured creditor or that it otherwise has an interest in property in which Debtors also have an interest. Accordingly, it is not entitled to relief from the automatic stay on the basis of an alleged lack of adequate protection.

More generally, Movant has not demonstrated that cause exists for relief from the automatic stay based upon application of the Sonnax factors. Application of the relevant Sonnax factors compels the same result reached by the Court in the 2017 Order. The Administrative Proceeding has been stayed since the 2017 Order, and the proceeding is therefore no more likely to result in resolution of issues and the parties are no closer to being ready for trial. Although the Debtors have made progress in their recovery from the aftermath of Hurricane Maria, the Debtors are still deeply embroiled in complex and multifaceted restructuring cases. Lifting the automatic stay would compel the Debtors to divert their limited resources to litigate the Administrative Proceeding, would prejudice the interests of other creditors, and would potentially disrupt the claims resolution process. The diversion of the Debtors' resources that would be required to attend to separate litigation of the Administrative Proceeding may impede PREPA's progress toward a plan of adjustment and recovery. While Movant has argued that it will face prejudice because of potential harm to the value of its property, the delayed determination and payment of claims is a burden shared by many other creditors in these Title III cases, and there is a broad public interest in efficient and expeditious progress of the Title III

cases. Accordingly, the Court concludes that Movant has not demonstrated that cause exists for relief from the automatic stay.

### CONCLUSION

For the foregoing reasons, the Motion is denied in its entirety. This Memorandum Order resolves Docket Entry No. 7179 in Case No. 17-3283.

SO ORDERED.

Dated: June 28, 2019

                                                     /s/ Laura Taylor Swain
                                                   LAURA TAYLOR SWAIN
                                                   United States District Judge