**Hearing Date**: October 30, 2019 at 9:30 a.m. AST
**Objection Deadline**: July 22, 2019 at 4:00 p.m. AST

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

**SUMMARY COVER SHEET FOR SECOND INTERIM APPLICATION OF
BROWN RUDNICK LLP, CLAIMS COUNSEL TO THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE,
FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
OF EXPENSES FOR THE SIXTH INTERIM FEE PERIOD
FROM FEBRUARY 1, 2019 THROUGH MAY 31, 2019**

**ALL FEES AND SERVICES IN THIS INTERIM APPLICATION
WERE INCURRED OUTSIDE OF PUERTO RICO**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

### Summary Sheet

| | |
|---|---|
| Name of Applicant: | Brown Rudnick LLP ("Brown Rudnick") |
| Authorized to Provide Professional Services as: | Claims Counsel for The Financial Oversight and Management Board, acting through its Special Claims Committee |
| Name of Client: | The Financial Oversight and Management Board, acting through its Special Claims Committee |
| Petition Date: | May 3, 2017[2] |
| Retention Date: | November 28, 2018 |
| Compensation Period: | February 1, 2019 to May 31, 2019 (the "Compensation Period") |
| Total Compensation Sought: | $4,537,714.50[3] |
| Expense Reimbursement Sought: | $212,390.70[4] |
| Total Compensation and Expense Reimbursement Sought: | $4,804,910.70 |
| Prior Applications Filed: | None |

This is an: ___ monthly      _X_ interim      ___ final application

This is Brown Rudnick LLP's second interim application in these cases (this "Application").

---

[2]   The petition date for the Commonwealth under Title III was May 3, 2017. The petition date for COFINA under Title III was May 5, 2017. The petition date for ERS and HTA under Title III was May 21, 2017. The petition date for PREPA under Title III was July 2, 2017.

[3]   The total compensation sought has been reduced as more fully described herein in order to comply with the Fee Examiner's guidelines.

[4]   The total expense reimbursement sought has been reduced as more fully described herein in order to comply with the Fee Examiner's guidelines.

Additional Information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013:

| | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $0.00 |
| Total Expense Reimbursement Approved by Interim Order to Date: | $0.00 |
| Total Allowed Compensation Paid to Date: | $0.00 |
| Total Allowed Expense Reimbursement Paid to Date: | $0.00 |
| Total Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but not yet Allowed: | $2,427,685.48 |
| Total Expense Reimbursement Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but not yet Allowed: | $215,480.20 |
| Blended Hourly Rate in this Application for all Attorneys: | $790.00 |
| Blended Hourly Rate in this Application for all Timekeepers: | $622.62 |
| Number of Professionals in this Application: | 52 |
| Number of Professionals Billing Fewer than 15 hours in this Application: | 5 |
| Difference Between Fees Budgeted and Compensation Requested for this Period: | 26% over budget[5] |
| Rate Increases Since Date of Retention: | None |
| Disclosure of Compensation Sought in this Application Using Rates Disclosed at Retention: | N/A |

---

[5] The amount of time in April exceeded budget for the following principal reasons: (i) the unanticipated dispute with the UCC regarding its 926 trustee motion as to causes of action the Oversight Board did not consent to bringing; (ii) the numerous objections to the 926 trustee motion as to causes of action the Oversight Board did consent to bring; and (iii) the larger than anticipated number of causes of action that were prepared and filed in advance of the statute of limitations.

**Summary of Prior Monthly Fee Statements for the Compensation Period
from November 28, 2018 through May 31, 2019**

| Date | Period Covered | Total Fees | Fees Requested (90%) | Holdback (10%) | Expenses Requested[6] | Fees Paid[7] | Expenses Paid (100%) |
|---|---|---|---|---|---|---|---|
| 1/4/2019 | November 28, 2018 through December 31, 2018 | $751,897.00 | $676,707.30 | $75,189.70 | $17,895.54 | $666,556.69 | $17,895.54 |
| 2/7/2019 | January 1, 2019 through January 31, 2019 | $815,478.50 | $733,930.65 | $81,547.85 | $47,940.48 | $510,081.80 | $47,940.48 |
| 3/13/2019 | February 1, 2019 through February 28, 2019 | $515,008.50 | $463,507.65 | $51,500.85 | $27,993.46 | $322,282.82 | $27,993.46 |
| 4/8/2019 | March 1, 2019 through March 31, 2019 | $1,128,551.50 | $1,015,696.35 | $112,855.15 | $21,793.53 | $705,908.96 | $21,793.53 |
| 5/30/2019 | April 1, 2019 through April 30, 2019 | $2,237,400.00 | $2,013,660.00 | $223,740.00 | $84,215.96 | $1,399,493.70 | $84,215.96 |

---

[6]  The expenses requested in Brown Rudnick's Third Monthly Fee Statement reflect a voluntary reduction in the aggregate amount of $9.90.  The expenses requested in Brown Rudnick's Fourth Monthly Fee Statement reflect a voluntary reduction in the aggregate amount of $612.20.  The expenses requested in Brown Rudnick's Fifth Monthly Fee Statement reflect a voluntary reduction in the aggregate amount of $2,280.90.  The expenses requested in Brown Rudnick's Sixth Monthly Fee Statement reflect a voluntary reduction in the aggregate amount of $186.50.  The reductions relate to accuroute scans, binding and PACER charges in order to comply with the Fee Examiner's guidelines.  Such reductions are reflected in the net amounts sought in this Application.

[7]  On March 29, 2019, in connection with Brown Rudnick's Third Monthly Fee Statement, the Debtors paid Brown Rudnick $322,282.82 on account of fees requested and $27,993.46 on account of expense reimbursement requested.  The Debtors withheld: (i) $134,417.22, or twenty-nine percent (29%) of the fees requested, on account of purported tax withholding, (ii) $51,645.85, which was $145.00 in excess of the amount of the 10% holdback, plus (iii) $6,952.61, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.

On May 9, 2019, in connection with Brown Rudnick's Fourth Monthly Fee Statement, the Debtors paid Brown Rudnick $705,908.96 on account of fees requested and $21,793.53 on account of expense reimbursement requested.  The Debtors withheld: (i) $294,551.94, or twenty-nine percent (29%) of the fees requested, on account of purported tax withholding, (ii) $112,855.15, the amount of the 10% holdback, plus (iii) $15,235.45, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.

On June 28, 2019, in connection with Brown Rudnick's Fifth Monthly Fee Statement, the Debtors paid Brown Rudnick $1,399,493.70 on account of fees requested and $84,215.96 on account of expense reimbursement requested.  The Debtors withheld: (i) $583,961.40, or twenty-nine percent (29%) of the fees requested, on account of purported tax withholding, (ii) $223,740.00, the amount of the 10% holdback, plus (iii) $30,204.90, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/21/2019 | May 1, 2019 through May 31, 2019 | $711,560.00 | $640,404.00 | $71,156.00 | $81,477.25 | $0.00 | $81,477.25 |
| **TOTAL** | | **$6,159,895.50** | **$5,543,905.95** | **$615,989.55** | **$281,316.22** | **$3,604,323.97** | **$281,316.22** |

---

### Summary of Amounts Requested to be Paid

| | |
|---|---|
| Total Unpaid Fees: | $2,110,029.02 |
| Total Unpaid Expenses | $81,477.25 |
| Total 10% Holdback on Fees: | $388,241.00 |
| Reimbursement for 29% Tax Withholding: | $1,012,930.56 |
| Reimbursement for 1.5% Government Contribution: | $52,392.96 |
| Less expenses voluntarily reduced herein: | ($3,089.50) |
| **Total Amount Requested to be Paid:** | **$2,188,416.77** |

**Hearing Date**: October 30, 2019 at 9:30 a.m. AST
**Objection Deadline**: July 22, 2019 at 4:00 p.m. AST

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

## SECOND INTERIM APPLICATION OF
## BROWN RUDNICK LLP, CLAIMS COUNSEL TO THE
## FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
## ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE,
## FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
## OF EXPENSES FOR THE SIXTH INTERIM FEE PERIOD
## FROM FEBRUARY 1, 2019 THROUGH MAY 31, 2019

TO THE HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT COURT JUDGE:

Brown Rudnick LLP ("Brown Rudnick"), special counsel to the Financial Oversight and

Management Board, acting through its Special Claims Committee (the "Oversight Board") as

representative of the Commonwealth of Puerto Rico, the Puerto Rico Sales Tax Financing

Corporation, the Puerto Rico Highways and Transportation Authority, the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Electric

Power Authority (collectively, the "Debtors") in the above-captioned title III cases (the "Title III

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Cases") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this second interim fee application (the "Second Interim Application" or "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Bankruptcy Rules"), Appendix B of the United States Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases* effective as of November 1, 2013 (the "U.S. Trustee Guidelines," and together with the aforementioned statutes, rules and guidelines, the "Guidelines"), and in accordance with the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* entered by this Court on June 6, 2018 [Docket No. 3269] (the "Interim Compensation Order"), seeking entry of an order granting (a) the allowance of interim compensation in the aggregate amount of $4,537,714.50 in fees for reasonable and necessary professional services rendered and (b) reimbursement of actual and necessary expenses in the aggregate amount of $212,390.70 incurred during the period commencing February 1, 2019 through and including May 31, 2019 (the "Compensation Period"). In support of this Application, Brown Rudnick respectfully states the following:

### Jurisdiction and Venue

1.      The Court has subject matter jurisdiction to consider and determine this Second Interim Application pursuant to PROMESA section 306(a).  Venue is proper before this Court pursuant to PROMESA section 307(a).  The statutory predicates for the relief requested herein are PROMESA sections 316 and 317, Bankruptcy Rule 2016 and Local Rule 2016-1.

---

[2]      PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]   The Application solely pertains to fees and expenses incurred with respect to the Debtors' Title III Cases and does not address fees or expenses incurred with respect to other services performed for the Oversight Board outside the Title III process.

[4]   The Bankruptcy Rules are made applicable to the Debtors' Title III Cases pursuant to PROMESA section 310.

2.      This Application has been prepared in accordance with the Guidelines and the Interim Compensation Order.  Attached hereto as **Exhibit A** is a certification regarding compliance with the Local Guidelines.

### Background and Case Status

A.      **The Debtors' Title III Cases**

3.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).

4.      On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

6.      On September 30, 2016, the Oversight Board designated the Debtors as "covered entit[ies]" under PROMESA section 101(d).

7.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

8.      On May 5, 2017, the Oversight Board filed a voluntary petition for relief for the Puerto Rico Sales Tax Financing Corporation ("COFINA") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

9.      On May 21, 2017, the Oversight Board filed a voluntary petition for relief for each of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico

("ERS") and the Puerto Rico Highways and Transportation Authority ("HTA") pursuant to section 304(a) of PROMESA, commencing cases under title III thereof.

10. On July 2, 2017, the Oversight Board filed a voluntary petition for the Puerto Rico Electric Power Authority ("PREPA") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

11. Through orders issued on June 1, June 29 and October 6, 2017, the Court ordered the joint administration of the Title III Cases for the Debtors, for procedural purposes only [Docket Nos. 242, 537 and 1417].

12. Background information regarding the Commonwealth and its instrumentalities, and the commencement of the instant Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [Docket No. 1] attached to the Commonwealth's Title III petition.

### B. Retention of Brown Rudnick

13. Brown Rudnick is an international law firm with its offices located in New York and Boston, among other locations. Brown Rudnick has significant experience representing parties in bankruptcy actions and litigations in many large, complex cases. Brown Rudnick has represented principal parties in interest, including official and *ad hoc* committees and debtors, in both in and out-of-court proceedings in some of the largest and most complex restructurings of all time.

14. As set forth in the Independent Contract Services Agreement dated November 28, 2018 (the "Services Agreement"),[5] Brown Rudnick was retained by and authorized to represent the Oversight Board, acting through its Special Claims Committee, to assist the Special Claims Committee regarding investigation and pursuit of potential claims.

---

[5] A copy of the Services Agreement is available on the Oversight Board's website at http://oversightboard.pr.gov/documents/.

C.     Interim Compensation and Fee Examiner Orders

15.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 1150].

16.     On October 6, 2017, the Court appointed a Fee Examiner in these Title III Cases (the "Fee Examiner") pursuant to the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related Relief* [Docket No. 1416] (the "Fee Examiner Order").

17.     On October 31, 2017, the Fee Examiner filed the Urgent Motion of the Fee Examiner to Amend the Interim Compensation Order, Including the Due Date and Hearing Date for Interim Compensation [Docket No. 1594].

18.     On November 8, 2017, the Court entered the First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 1715].

19.     On November 10, 2017, the Fee Examiner issued a memorandum, and on January 3, 2018, the Fee Examiner issued a supplemental memorandum (together, the "Fee Examiner Guidelines") to all retained professionals in these Title III Cases providing additional guidelines in connection with the Interim Compensation Order.

20.     On May 8, 2018, the Fee Examiner filed the *Motion of the Fee Examiner to Amend the Fee Examiner Order with Respect to the Scope of the Fee Examiner's Authority in the Interest of Administrative Efficiency* [Docket No. 3032] (the "Motion to Amend the Fee Examiner Order").

21.     On May 23, 2018, the Oversight Board and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") filed a *Joint Motion for Entry of an Order Further Amending the Interim Compensation Order* [Docket No. 3133].

22.     On June 6, 2018, the Court entered the Interim Compensation Order, and in accordance therewith, Brown Rudnick and other professionals retained in these Title III Cases were

authorized to serve upon the parties identified therein (the "Notice Parties") monthly fee statements (the "Monthly Fee Statements").

23.     Pursuant to the Interim Compensation Order, the Notice Parties have ten days from the date of service of the Monthly Fee Statement to object to the amounts requested. If no objection is filed prior to expiration of the objection period, the Commonwealth is authorized to pay the respective professionals 90% of the fees and 100% of the expenses sought in each Monthly Fee Statement.

24.     On June 20, 2018, the Court entered the *First Amended Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief* [Docket No. 3324] (the "Amended Fee Examiner Order").

### D.     Applications for Interim Compensation

25.     In addition to the Monthly Fee Statements, the Interim Compensation Order directed professionals to seek interim allowance and payment of compensation (including the 10% held back from Monthly Fee Statements) and expense reimbursement at 120-day intervals (each an "Interim Fee Period") by filing with the Court and serving on the Notice Parties an application for approval and allowance of all compensation and reimbursement of expenses relating to services rendered and expenses incurred during the preceding Interim Fee Period (*see* Interim Compensation Order at ¶2(f)).

26.     This is Brown Rudnick's second interim fee application and covers the period from February 1, 2019 through and including May 31, 2019.

### Relief Requested

27.     By this Application, Brown Rudnick seeks an order authorizing (a) allowance of interim compensation for the professional services rendered during the Compensation Period in the aggregate amount of $4,537,714.50, (b) allowance of reimbursement of actual and necessary expenses incurred by Brown Rudnick in the aggregate amount of $212,390.70, and (c) payment of

12

the outstanding fees and expense reimbursement in the aggregate amount of $4,750,105.20, inclusive of any amounts previously held back, including certain purported tax withholding and government contribution amounts.

28.     During the Compensation Period, Brown Rudnick attorneys and paraprofessionals expended a total of 7,376.10 hours for which compensation is requested.  All services rendered and expenses incurred for which compensation or reimbursement is requested were performed or incurred for or on behalf of the Oversight Board.

29.     During the Compensation Period, Brown Rudnick submitted four Monthly Fee Statements (the third, fourth, fifth and sixth such statements submitted by Brown Rudnick).

30.     On March 13, 2019, Brown Rudnick served its third monthly fee statement covering the period from February 1, 2019 through February 28, 2019 (the "Third Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit G-1**.[6]  Brown Rudnick received no objection to the Third Monthly Fee Statement.  On March 27, 2019, Brown Rudnick submitted a statement of no objection to AAFAF with respect to the Third Monthly Fee Statement.  On March 29, 2019, the Debtors paid Brown Rudnick $322,282.82 on account of fees requested and $27,993.46 on account of expense reimbursement requested.  The Debtors withheld (i) $134,417.22, or twenty-nine percent (29%) of the fees requested, on account of purported tax withholding, (ii) $51,645.85, which was $145.00 in excess of the amount of the 10% holdback, plus (iii) $6,952.61, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.[7]

31.     On April 9, 2019, Brown Rudnick served its fourth monthly fee statement covering the period from March 1, 2019 through March 31, 2019 (the "Fourth Monthly Fee Statement"), a

---

[6]     The expenses requested in Brown Rudnick's Third Monthly Fee Statement have been voluntarily reduced in the amount of $9.90, as reflected in the net amounts sought in this Application.

[7]     Brown Rudnick performed all services outside of Puerto Rico.  Nonetheless, Brown Rudnick intends to seek a refund of all amounts withheld on account of amounts withheld.

copy of which is attached hereto as **Exhibit G-2**.[8]  Brown Rudnick received no objection to the Fourth Monthly Fee Statement.  On April 22, 2019, Brown Rudnick submitted a statement of no objection to AAFAF with respect to the Fourth Monthly Fee Statement.  On May 9, 2019, the Debtors paid Brown Rudnick $705,908.96 on account of fees requested and $21,793.53 on account of expense reimbursement requested.  The Debtors withheld (i) $294,551.94, or twenty-nine percent (29%) of the fees requested, on account of purported tax withholding, (ii) $112,855.15, the amount of the 10% holdback, plus (iii) $15,235.45, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.[9]

32.     On May 31, 2019, Brown Rudnick served its fifth monthly fee statement covering the period from April 1, 2019 through April 30, 2019 (the "Fifth Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit G-3**.[10]  Brown Rudnick received no objection to the Fourth Monthly Fee Statement.  On June 12, 2019, Brown Rudnick submitted a statement of no objection to AAFAF with respect to the Fifth Monthly Fee Statement.  On June 28, 2019, the Debtors paid Brown Rudnick $1,399,493.70 on account of fees requested and $84,215.96 on account of expense reimbursement requested.  The Debtors withheld (i) $583,961.40, or twenty-nine percent (29%) of the fees requested, on account of purported tax withholding, (ii) $223,740.00, the amount of the 10% holdback, plus (iii) $30,204.90, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.[11]

33.     On June 21, 2019, Brown Rudnick served its sixth monthly fee statement covering the period from May 1, 2019 through May 31, 2019 (the "Sixth Monthly Fee Statement"), a copy

---

8   The expenses requested in Brown Rudnick's Fourth Monthly Fee Statement have been voluntarily reduced in the amount of $612.20, as reflected in the net amounts sought in this Application.

9   Brown Rudnick performed all services outside of Puerto Rico.  Nonetheless, Brown Rudnick intends to seek a refund of all amounts withheld on account of amounts withheld.

10  The expenses requested in Brown Rudnick's Fifth Monthly Fee Statement have been voluntarily reduced in the amount of $2,280.90, as reflected in the net amounts sought in this Application.

11  Brown Rudnick performed all services outside of Puerto Rico.  Nonetheless, Brown Rudnick intends to seek a refund of all amounts withheld on account of amounts withheld.

of which is attached hereto as **Exhibit G-4**.[12]  The objection deadline for Brown Rudnick's Sixth

Monthly Fee Statement is July 1, 2019.

34.     Other than with respect to those Monthly Fee Statements, no payments have been

made to Brown Rudnick, and Brown Rudnick has received no promises of payment from any

source for services rendered or to be rendered in any capacity whatsoever in connection with the

matters covered during the Compensation Period and addressed by this Second Interim

Application.  There is no agreement or understanding between Brown Rudnick and any other

person, other than the members of Brown Rudnick, for the sharing of compensation to be received

for services rendered in these cases.

35.     In accordance with the Services Agreement, Brown Rudnick's hourly rate for all

attorneys is $790, $270 for all paralegals and other non-lawyer staff, and $90 for litigation analysts.

36.     Brown Rudnick maintains computerized records of all time spent by Brown

Rudnick attorneys and paraprofessionals in connection with its representation of the Oversight

Board.  Brown Rudnick has provided itemized time records for professionals and paraprofessionals

performing services during the Compensation Period to this Court, the Debtors, the Fee Examiner,

all notice parties pursuant to the Interim Compensation Order and the U.S. Trustee.  All entries

itemized in Brown Rudnick's time records comply with the requirements set forth in the

Guidelines, including the use of separate matter numbers for different project types, as described in

this Application.  Brown Rudnick's itemized time records also detail expenses incurred during the

Compensation Period.  All entries itemized in Brown Rudnick's expense records comply with the

requirements set forth in the Guidelines.[13]

37.     Pursuant to, and consistent with, the relevant requirements of the Guidelines, as

applicable, the following exhibits are attached hereto and incorporated herein by reference:

---

12   The expenses requested in Brown Rudnick's Sixth Monthly Fee Statement have been voluntarily reduced in the
     amount of $186.50, as reflected in the net amounts sought in this Application.

13   As noted herein, certain reductions have been made to the expense amounts for which Brown Rudnick is seeking
     reimbursement.

i.   **Exhibit A** contains a certification by Sunni P. Beville regarding Brown Rudnick's compliance with the Local Guidelines.

ii.   **Exhibit B** contains a summary of hours and fees billed by each Brown Rudnick attorney and paraprofessional in services rendered to the Oversight Board during the Compensation Period, including respective titles, hourly rates, year of bar admission for attorneys and any applicable rate increases.

iii.   **Exhibit C** contains a summary of compensation requested by matter during the Compensation Period.

iv.   **Exhibit D** contains a summary and comparison of the aggregate blended hourly rates.

v.   **Exhibit E** contains a summary of reimbursable expenses incurred during the Compensation Period.

vi.   **Exhibit F** contains a budget plan with a comparative analysis of budgeted and actual fees during the Compensation Period.

vii.   **Exhibits G-1, G-2, G-3 and G-4** contain copies of Brown Rudnick's Monthly Fee Statements during the Compensation Period, which include detailed time records and out-of-pocket expense details.

### Summary of Services Performed by Brown Rudnick During the Compensation Period

38.   Set forth below is a description of significant professional services, broken down by project category, rendered by Brown Rudnick during the Compensation Period. The following services described are not intended to be a comprehensive summary of the work performed by Brown Rudnick. Detailed descriptions of all services rendered by Brown Rudnick can be found in the detailed time records reflecting the services performed by Brown Rudnick's professionals, the time expended by each professional, and the hourly rate of each professional, annexed to the Monthly Fee Statements attached hereto as **Exhibits G-1, G-2, G-3 and G-4** and such descriptions are incorporated herein by reference.

**A.   Case Administration**

**Fees: $30,611.00; Hours: 47.30**

39.   During the Compensation Period, Brown Rudnick reviewed the case docket to identify pleadings relevant to its investigation, including as to relevant hearing dates and objection deadlines for pleadings filed in connection with the objection to certain General Obligation bonds

16

and pleadings and orders concerning the authority of the Oversight Board.  Brown Rudnick reviewed its staffing needs, drafted a *pro hac vice* applications for attorneys, and retained contract attorneys for purpose of performing document review.

40.    Due to the complexity of the case and the requirement to file, serve, and track communications regarding a large number of adversary proceedings, Brown Rudnick established a tracking system and drafted and tracked tolling agreements and other correspondence with potential defendants and other counterparties relevant to its litigation efforts.

41.    Also during the Compensation Period, Brown Rudnick interviewed candidate firms that had responded to its Request for Proposal for a financial advisor, selected and retained a financial advisor.  In addition, Brown Rudnick reviewed the retention application of special litigation counsel retained by the Official Committee of Unsecured Creditors for the Title III Cases (other than COFINA) (the "UCC")  that would collaborate with Brown Rudnick and its client regarding certain litigation matters.

### B.    Meetings and Communications with Client

### Fees: $122,213.00; Hours: 154.70

42.    During the Compensation Period, Brown Rudnick established agendas for weekly calls with the Oversight Board to provide status reports and recommendations for specific actions, including as to the filing, tolling, and/or settlement of avoidance actions against (a) contract counterparties ("vendors"), (b) recipients of purported principal and interest payments in respect of allegedly unlawful and invalid bonds, and (c) third-party professionals that, among other things, facilitated the issuance of allegedly unlawful and invalid bonds.  In addition, Brown Rudnick engaged in periodic follow-up discussions with various members of the Oversight Board regarding specific case issues.  Brown Rudnick also worked with the client's communications team to develop public communications materials relating to litigation commenced by the Special Claims Committee.

### C.    Fee Applications

### Fees: $23,777.00; Hours: 50.70

43.    During the Compensation Period, Brown Rudnick reviewed and coordinated with the Oversight Board's professionals regarding the preparation and filing of monthly and interim fee applications, and likewise coordinated with the United States Trustee and Fee Examiner regarding the applications and revisions thereto.

### D.    General Investigation

### Fees: $759,433.00; Hours: 1,003.50

44.    In furtherance of the general investigation into various issues raised in the Kobre & Kim Report, Brown Rudnick drafted and negotiated non-disclosure agreements with numerous parties.  Brown Rudnick then coordinated with Kobre & Kim, AAFAF and others to facilitate access to and production of documents relevant to the investigation of claims identified in the Kobre & Kim Report, which in numerous cases necessitated resolving objections.  Brown Rudnick additionally located and collected copies of publicly available documents regarding Puerto Rico's financial status, debts, and related activities.

45.    Brown Rudnick continued to develop a comprehensive understanding of the various adversary proceedings, contested matters, appeals, and confirmation hearings within the Title III cases to maximize the efficiency and effectiveness of its own efforts and prevent duplication of efforts.  Brown Rudnick analyzed potential claims in light of such ongoing litigation and strategized concerning allocation of document review, drafting, filing, and other tasks among the law firms coordinating in the investigation.

46.    During the Compensation Period, Brown Rudnick initiated its review of the hundreds of thousands of documents obtained in relation to the Kobre & Kim Report.  Brown Rudnick engaged its electronic discovery and research teams to craft appropriate search databases, methods and tags to maximize review efficiency and accuracy.  It then trained numerous attorneys

18

to review the documents for responsiveness and relevance.  Brown Rudnick then researched the legal theories surrounding claims implicated by the Kobre & Kim Report, strategized regarding documents relevant to such theories, and conducted a second level of review of documents identified as responsive and relevant.  Brown Rudnick supervised its temporary document review attorneys as they conducted the bulk of the document review following establishment of review parameters.

47.    Stemming from the document review, Brown Rudnick compiled lists of potential litigation actions and coordinated with the UCC regarding a joint stipulation to prosecute litigation as co-plaintiffs.  Brown Rudnick prepared and filed several briefs relating to the joint stipulation and the related motion of the Committee under section 926 of the Bankruptcy Code for court appointment of a trustee to prosecute certain litigation.  Brown Rudnick resolved the bulk of the UCC's concerns by consent to a form of stipulation as to co-prosecution of numerous litigation actions, and prepared and filed a response to the motion as to outstanding disputed issues.  Brown Rudnick then adapted its work product to ensure approval of related stipulations in other Title III cases.

### E.    Hearings

**Fees: $50,436.00; Hours: 67.20**

48.    During the Compensation Period, Brown Rudnick attorneys prepared for and attended (a) an omnibus hearing on March 13, 2019 regarding, among other things, progress in the Oversight Board's efforts to notify purported holders of General Obligation bonds of the pending objection to claims; (b) an omnibus hearing on April 24, 2019 regarding, among other things, the Oversight Board's joint stipulation with the UCC and the UCC's related motion under section 926 of the Bankruptcy Code, the UCC's request to pursue certain avoidance actions without Oversight Board consent, the Oversight Board's motion for equitable tolling of the statute of limitations on certain avoidance actions, and several matters relating to the Oversight Board's objections to

19

claims filed by purported bondholders and efforts to claw back principal and interest payments

purportedly made in respect of the allegedly unlawful and invalid bonds; and (c) a hearing on May

16, 2019 regarding, among other things, the Oversight Board's second joint stipulation with the

UCC.

### F. Non-Working Travel

**Fees: $30,889.00; Hours: 78.20**

49.     On February 6, 2019, Sunni Beville traveled to New York to participate in

mediation with bondholders regarding the Oversight Board's objections to claims.  On February

21, 2019, and again on March 25, 2019, Sunni Beville traveled to New York to meet with

Proskauer and the Oversight Board regarding several case management and investigation strategy

issues.  On April 3 and 4, 2019, Steven Best and Angela Papalaskaris traveled to Boston to discuss

and prepare for upcoming litigation filings and hearings.  On April 8, 2019, Sunni Beville traveled

to New York to meet with Paul Hastings and Proskauer regarding litigation strategy and

preparation.  On April 23 and 24, 2019, Sunni Beville, Edward Weisfelner, and Tristan Axelrod

traveled to San Juan for the April 24 omnibus hearing on several motions filed or opposed by the

Oversight Board.  On May 14, 2019, Sunni Beville traveled to New York to meet with the Lawful

Constitutional Debt Coalition regarding the objection to General Obligation bond claims.  On May

27 and 28, 2019, Elliot Weingarten, Rebecca Lecaroz and Sunni Beville traveled to New York to

meet with Genovese, Joblove and Battista regarding coordination of efforts to investigate and

prosecute avoidance litigation.  Brown Rudnick has discounted by 50% all time attributable to

travel during which no work was performed.

### G. ERS

**Fees: $33,812.00; Hours: 42.80**

50.     During the Compensation Period, Brown Rudnick conducted research regarding the

statutory authority of ERS to issue negotiable bonds.  Brown Rudnick drafted a memorandum and

recommendation for the Oversight Board regarding whether to initiate or participate in an objection to claims filed in the Title III cases by purported ERS bondholders, and analyzed the First Circuit opinion relating to perfection of the liens asserted by ERS bondholders.  Brown Rudnick reviewed the objections filed by the UCC and other parties regarding the ERS bonds and further reviewed the ERS bond issuance for potential claims against third parties relating to the issuances.

**H.   PREPA**

**Fees: $68,493.00; Hours: 86.70**

51.   During the Compensation Period, Brown Rudnick researched and analyzed various claims relating to PREPA arising from the Kobre & Kim Report and coordinated with the Oversight Board's professionals regarding the claims and related tasks to further assess potential claims.

**I.   GO Bonds / Debt Limit**

**Fees: $416,167.00; Hours: 528.90**

52.   During the Compensation Period, Brown Rudnick prepared for and attended mediation with holders of General Obligation bonds subject to the Oversight Board's objection and generally concerning the allegations that Puerto Rico breached its constitutional debt limit and thus lacked authority to issue certain general obligation and PBA bonds.  Brown Rudnick assembled and reviewed documents pertaining to the bond issuances, and prepared memoranda and other materials in support of the objection and mediation, including research and memoranda concerning claims against third parties arising from the alleged unlawful issuance of debt securities.  Brown Rudnick additionally researched the possibility of clawing back principal and interest payments made on the bonds during the statutory lookback period under the Bankruptcy Code and Puerto Rico law.  Brown Rudnick researched additional potential claims stemming from the bond issuances, including claims pertaining to the invalidity of Commonwealth issuances of guarantees, breach of the balanced budget clause of the Puerto Rico constitution, and the validity of certain

PBA bond issuances.  Brown Rudnick circulated its memoranda to the Special Claims Committee with recommendations concerning various litigation potentially to be pursued.

53.    Also during the Compensation Period, Brown Rudnick fielded numerous communications from bondholders and their counsel regarding the notices of participation sent pursuant to the procedural order on the objection.  Brown Rudnick coordinated with the UCC and other counsel regarding potential amendments to the procedures and objections to additional bond claims, and related claims arising from the facts and conduct underlying such objections.

54.     After being directed to pursue certain litigation with respect to which the statute of limitations would shortly expire, Brown Rudnick researched applicable law and prepared and reviewed numerous pleadings regarding discovery obligations and potential equitable tolling of the statute of limitations as relating to the general obligation bond claims.

### J.    Swaps

### Fees: $121,314.00; Hours: 166.20

55.    During the Compensation Period, Brown Rudnick analyzed potential claims outlined in the Kobre & Kim Report regarding Puerto Rico's credit default swap transactions, reviewed related documents and legal authorities, and drafted memoranda and recommendations concerning the swap-related claims.

### K.    Credit Rating Agencies

### Fees: $81,229.00; Hours: 107.10

56.    During the Compensation Period, Brown Rudnick analyzed potential claims outlined in the Kobre & Kim Report against credit ratings agencies, reviewed related documents and legal authorities, and drafted a memorandum regarding potential claims.

### L.    COFINA

### Fees: $88,613.00; Hours: 112.30

57.     During the Compensation Period, Brown Rudnick analyzed potential claims outlined in the Kobre & Kim Report relating to COFINA and reviewed recently filed plan confirmation and settlement proceedings in the COFINA Title III case.  Brown Rudnick identified whether potential claims had survived the COFINA settlement and considered whether to pursue any potential surviving claims.

### M.    Avoidance Actions

**Fees: $1,124,221.00; Hours: 1,669.90**

58.     During the Compensation Period, Brown Rudnick developed a case strategy to identify potential avoidance claims and began compiling a memorandum for the Oversight Board detailing its strategy and recommendations.  Brown Rudnick researched threshold issues including applicability of certain claims under PROMESA.  Brown Rudnick drafted additional memoranda concerning potential avoidance actions, including actions against vendors and relating to bond and guarantee issuances.

59.     Brown Rudnick investigated the procedures necessary to bring "Challenged Bonds Avoidance Actions" against former purported holders of bonds alleged to be invalid, to claw back purported principal and interest payments.   Brown Rudnick drafted a memorandum and recommendation concerning such litigation and commenced discovery efforts (initially in coordination with the Oversight Board's bankruptcy counsel) to obtain information concerning such purported bondholders.  Brown Rudnick obtained security position reports identifying record holders of the bonds, then prepared a motion and obtained an order requiring the record holders to disclose beneficial holder information subject to a negotiated confidentiality order.   Brown Rudnick sought equitable tolling of the statute of limitations as to such actions, and when unsuccessful, obtained and reviewed the confidential information concerning many thousands of principal and interest payments and prepared and filed complaints against the beneficial holders. Following the submission of certain exculpatory information by the record holders (a.k.a.

23

"Participant Holders" or "Street Name" holders), Brown Rudnick dismissed certain parties from litigation and destroyed confidential information in accordance with the court order.

60.    Brown Rudnick worked with professionals for the Oversight Board and the UCC to review voluminous information concerning payments to vendors during 2013-2017 and identify and assess indicia of liability under theories of preference and fraudulent transfer.  Following determination of various search parameters, Brown Rudnick identified several hundred vendors that received billions of dollars in aggregate payments from Puerto Rico without sufficient evidence of compliance with Puerto Rico law regarding government contracting, thus indicating potential avoidance liability.  After reaching agreement with the UCC and obtaining client consent, Brown Rudnick sent tolling letters to numerous vendors to facilitate information exchange and forestall the necessity of filing litigation.  Brown Rudnick established a website and communications lines to track communications with the many vendors, and fielded numerous communications related to its investigation and claims.  Brown Rudnick, in part together with the UCC, filed hundreds of avoidance actions against vendors, seeking billions of dollars in damages.

61.    Brown Rudnick researched potential avoidance claims relating to extension of guarantees by the Commonwealth during the statutory lookback period.  Brown Rudnick drafted memoranda regarding such claims and prepared to file litigation in coordination with co-counsel and UCC counsel.  Brown Rudnick negotiated tolling agreements as to certain guarantee avoidance claims.

62.    Using materials, research and memoranda described above herein, Brown Rudnick prepared and filed a complaint against numerous third party professionals regarding their conduct in facilitating allegedly unlawful debt issuances.  Prior to the filing, Brown Rudnick negotiated tolling agreements with certain potential defendants and commenced settlement negotiations.

63.    As to all of the foregoing avoidance litigation, Brown Rudnick coordinated with the Special Claims Committee to prepare and circulate information summarizing its investigation and

litigation filings.  Following commencement of litigation, Brown Rudnick discussed and issued recommendations regarding compliance with tolling agreements and settlement procedures, tracked service of dispositive motions related communications with defendant counsels, and developed strategies for litigation coordination and timing as well as an omnibus procedure for informal resolution and extension of deadlines in litigation against vendors.  Brown Rudnick additionally researched and developed recommendations in response to allegations by certain bondholders of inconsistency in various litigation positions of the Oversight Board, including objections to certain issuances of bonds alleged as unlawful and invalid.  Brown Rudnick additionally continued to develop its facts and legal research in support of avoidance claims, including by reviewing purported contracts with vendor defendants, developing materials concerning the solvency of the debtors at relevant times.

### N.       Referrals

**Fees: 33,654.00; Hours: 42.60**

64.     During the Compensation Period, Brown Rudnick analyzed and drafted a memorandum concerning referral of claims to government authorities including the SEC and DOJ.

### O.       Third Party Claims

**Fees: $1,483,569.00; Hours: 1,885.90**

65.     During the Compensation Period, Brown Rudnick researched and analyzed potential claims against third-party professionals consistent with its investigation of claims arising from the Kobre & Kim Report.  Brown Rudnick researched applicable law surrounding tolling agreements as to such claims and negotiated tolling agreements with potential defendants.  Brown Rudnick drafted an omnibus claims chart, which it shared with the UCC pursuant to its execution of a joint stipulation and resolution of the UCC's section 926 motion.

66.     Brown Rudnick drafted an omnibus memorandum as to such claims (aggregating and synthesizing research described elsewhere herein).  Brown Rudnick coordinated with the UCC

regarding applicable theories and potential litigation targets.  Brown Rudnick then drafted an omnibus complaint consistent with its memorandum and stipulation with the UCC.  After the filing of the complaint, Brown Rudnick continued to review pertinent documents and research dispositive issues, and commenced negotiations of a potential settlement of certain claims.  Brown Rudnick routinely engaged in discussions and meetings with UCC counsel to continue to develop a litigation and discovery plan.

### P.     Adversary Proceedings

### Fees: $1,124,221.00; Hours: 1,669.90

67.     During the Compensation Period, Brown Rudnick drafted, sent, and tracked responses to tolling agreements, drafted and populated form complaints and other documents with defendant information and filed and served the documents, assisted with receipt and processing of discovery, and maintained a record of responses to the documents.

### Q.     Plan and Disclosure Statement

### Fees: $4,740.00; Hours: 6.00

68.     During the Compensation Period, Brown Rudnick drafted portions of a disclosure statement to accompany the Commonwealth's plan of adjustment, regarding the activities of the Special Claims Committee and related investigations and litigation commenced in the Title III cases.

### Presumptive Standards

69.     In accordance with the presumptions set forth in the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Docket No. 3932]  (the "Presumptive Standards Order"), Brown Rudnick provides the following summary regarding the attendance of Brown Rudnick professionals at Court hearings and meetings:

- February 21 meeting: Sunni Beville and Angela Papalaskaris attended an in-person meeting in New York with Proskauer and certain members of the

Special Claims Committee to discuss case management and investigation strategy issues. Sunni Beville attended as primary attorney leading the bankruptcy related efforts, while Angela Papalaskaris was leading certain of the investigation matters.

- March 13th hearing: Rosa Sierra telephonically attended the March omnibus hearing to remain informed as to the status of various bondholder litigation and of plan negotiations. Ms. Sierra then prepared a summary of the hearing for the benefit of other Brown Rudnick attorneys.

- March 25 meeting: Sunni Beville and Edward Weisfelner attended an in-person meeting with the Financial Oversight and Management Board and follow-up strategic meetings with members of the Special Claims Committee and Proskauer to discuss ongoing litigation and overall case strategy issues.

- April 4 meeting: The Brown Rudnick litigation team conducted an in-person meeting to analyze potential litigation claims and assess next steps for continued diligence and preparation of complaints in light of upcoming statute of limitations for claims to be brought on behalf of the Commonwealth. The meeting was intended to efficiently educate the entire team to avoid duplication of efforts and to ensure coverage of all pertinent case issues in light of the extensive activity required to comply with the statute of limitations.

- April 8 meeting: Sunni Beville and Edward Weisfelner attended an in-person meet and confer with UCC counsel and Proskauer to discuss claims and causes of action to be brought prior to the statute of limitation and to coordinate as to next steps to avoid duplication of efforts and to ensure all potential claims were reviewed, analyzed and, to the extent viable, preserved.

- April 18th hearing: Edward Weisfelner attended the April 18th hearing in-person to be heard in connection with the UCC's motion for appointment of a section 926 trustee. Tristan Axelrod attended the hearing telephonically to support Mr. Weisfelner and facilitate next steps to address the Court's and party comments to the proposed Joint Stipulation resolving a portion of the UCC's motion and to prepare for the Special Claims Committee's continued objection to certain aspects of the requested relief to be heard at the April 24th hearing.

- April 24th hearing: Edward Weisfelner, Sunni Beville and Tristan Axelrod attended the April 24th omnibus hearing in-person to be heard in connection with several contested matters relating to the litigation to be brought by the Special Claims Committee as discussed in more detail above. Mr. Weisfelner was lead attorney at the hearing. Ms. Beville was the primary lead attorney for many of the matters, while Mr. Axelrod was primary attorney relating to several of the 'claw back' matters scheduled for the hearing.

- May 15 meeting: As co-lead attorneys, Sunni Beville and Edward Weisfelner participated in an in-person meeting with Proskauer and advisors to the UCC

and the Lawful Constitutional Debt Coalition regarding the objection to certain GO bond claims.

- <u>May 16th hearing</u>:  Edward Weisfelner attended the hearing in person to be heard in connection with the motion to modify certain of the procedures in connection with the objection to the validity of certain General Obligation bonds issued by the Commonwealth of Puerto Rico.  Sunni Beville attended the hearing telephonically to facilitate next steps and to address the Court's comments with respect to the proposed procedures.

- <u>May 28 meeting</u>:  The Brown Rudnick litigation team conducted an in-person meeting with UCC special litigation counsel to discuss further investigation and pursuit of estate claims relating to issuance of GO bonds and to coordinate and develop a cohesive strategy to avoid duplication of efforts.

- <u>Weekly Client Calls</u>:  Brown Rudnick conducted weekly calls with the Special Claims Committee members to provide periodic status reports and to make recommendations as to certain courses of action.  These calls were primarily conducted by a combination of Edward Weisfelner and, Sunni Beville, the primary leaders of the Brown Rudnick team.  Other attorneys attended only the portions of a call that required their input on specific topics.

## Actual and Necessary Disbursements

70.     As set forth in the Summary Cover Sheet filed contemporaneously with this Application, Brown Rudnick disbursed $212,390.70 as expenses incurred in providing professional services during the Compensation Period.  Brown Rudnick passes through all out-of-pocket expenses at actual cost.  Other reimbursable expenses (whether the service is performed by Brown Rudnick in-house or through a third-party vendor) include, but are not limited to, deliveries, court costs, transcript fees, travel, teleconferencing, and clerk fees, and are passed through at cost. Brown Rudnick does not bill for secretarial overtime or other administrative costs.

71.     Brown Rudnick submits that the actual expenses incurred for which reimbursement is sought in this Application were necessary, reasonable, and justified under the circumstances to serve the needs of the Oversight Board at the time such expenses were incurred.

## The Application Should be Granted

72.     Section 317 of PROMESA provides for interim compensation of professionals and incorporates the substantive standards of Section 316 of PROMESA to govern the Court's award of

such compensation.  48 U.S.C. § 2177.  Section 316 provides that a court may award a professional employed under section 1103 of title 11 of the United States Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id.* § 2176(a)(1) and (2).  Section 316(c) sets forth criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1)    the time spent on such services;
>
> (2)    the rates charged for such services;
>
> (3)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and
>
> (6)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

*Id.* § 2176(c).

73.    Brown Rudnick respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Second Interim Application were necessary and beneficial to the Oversight Board.  In light of the nature, extent and value of such services, Brown Rudnick submits that the compensation requested herein is reasonable.

74.     The compensation for Brown Rudnick's services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The professional services were performed with expedition and in an efficient manner.

75.     In sum, the services rendered by Brown Rudnick were necessary and beneficial to the Oversight Board, were reasonable in light of the value of such services to the Oversight Board and were performed with skill and expertise.  Accordingly, Brown Rudnick submits that approval of the compensation for professional services and reimbursement of expenses requested in this Second Interim Fee Application is warranted.

## Location of Services Provided

76.     All fees and services during this Compensation Period were rendered and incurred outside of Puerto Rico.

## Statements Pursuant to Appendix B of the U.S. Trustee Guidelines

77.     The following statements address information pursuant to Section C.5 of the U.S. Trustee Guidelines:

a.      **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

**Answer**:  Yes, in accordance with the Services Agreement, Brown Rudnick's standard hourly rates in these cases have been reduced so that the hourly rate for all attorneys is $790, and $270 for all paralegals and non-lawyer staff.  In addition, after discussion with the client, we charged our standard hourly rate of $90 for litigation analysts.

b.      **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Answer**: No. The client was aware and involved in the myriad of case issues and directed Brown Rudnick as to the services provided. In addition, the client reviewed and approved each of our monthly fee invoices, which reflected the volume of work reflected herein.

c.  **Question**: Have any of the professionals included in this fee application varied their hourly rate based on geographic location of the bankruptcy case?

**Answer**: No.

d.  **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

**Answer**: No.

e.  **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

**Answer**: No.

f.  **Question**: If the fee application includes any rate increases in retention: (i) did your client review and approve those rate increases in advance? and (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Answer**: The Application does not include any additional rate increases.

## Notice

78.     Notice of this Application has been provided to: (a) the United States Trustee for the District of Puerto Rico, (b) the Oversight Board and its counsel, (c) counsel to AAFAF, (d) counsel to the Fee Examiner, (e) counsel to the Official Committee of Unsecured Creditors, (f) counsel to the Official Committee of Retirees, and (g) the Puerto Rico Department of Treasury. Brown Rudnick respectfully submits that no further notice of this Application should be required.

## No Prior Request

79.     No prior interim fee application for the relief requested herein has been made to this or any other Court.

## Conclusion

WHEREFORE, Brown Rudnick respectfully requests that the Court enter an order; (a) approving the interim allowance of $4,537,714.50 for compensation for professional services rendered during the Compensation Period, (b) approving the reimbursement of Brown Rudnick's out-of- pocket expenses incurred in connection with the rendering of such services during the Compensation Period in the amount of $212,390.70, (c) authorizing payment of the outstanding fees and expense reimbursement in the aggregate amount of $2,110,029.02, and (d) granting such other and further relief as the Court deems just and proper.

New York, New York
Dated: June 30, 2019

*/s/ Sunni P. Beville*
BROWN RUDNICK LLP
Edward S. Weisfelner, Esq. (admitted *pro hac vice*)
Angela M. Papalaskaris, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com
apapalaskaris@brownrudnick.com

Stephen A. Best, Esq. (admitted *pro hac vice*)
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
sbest@brownrudnick.com

Sunni P. Beville, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board,
acting through the Special Claims Committee*

and

*/s/ Alberto Estrella*
*/s/ Kenneth C. Suria*
ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090
agestrella@estrellallc.com
kcsuria@estrellallc.com

*Local Counsel to the Financial Oversight and Management
Board, acting through the Special Claims Committee*

# EXHIBIT A

## **EXHIBIT A**

**CERTIFICATION OF SUNNI P. BEVILLE
IN SUPPORT OF THE APPLICATION**

**Hearing Date**: October 30, 2019 at 9:30 a.m. AST
**Objection Deadline**: July 22, 2019 at 4:00 p.m. AST

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

**CERTIFICATION OF SUNNI P. BEVILLE IN SUPPORT OF
SECOND INTERIM APPLICATION OF
BROWN RUDNICK LLP, CLAIMS COUNSEL TO THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE,
FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
OF EXPENSES FOR THE FIFTH INTERIM FEE PERIOD
FROM FEBRUARY 1, 2019 THROUGH MAY 31, 2019**

I, Sunni P. Beville, hereby certify that:

1.        I am an attorney admitted to practice in the Commonwealth of Massachusetts and am admitted *pro hac vice* before this Court.  I am a member of the law firm of Brown Rudnick LLP ("Brown Rudnick"), with offices located at Seven Times Square, New York, New York 10036 and One Financial Center, Boston, Massachusetts 02111.  Brown Rudnick is claims counsel to the Financial Oversight and Management Board, acting through its Special Claims Committee (the "Oversight Board") as representative of the Debtors in the above-captioned title III cases pursuant

---

[1]        The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*
("<u>PROMESA</u>").[2]  I have personal knowledge of all of the facts set forth in this certification except
as expressly stated herein.

2. In accordance with (a) Local Bankruptcy Rule 2016-1 (the "<u>Local Guidelines</u>"), (b)
Appendix B of the United States Trustee *Guidelines for Reviewing Applications for Compensation
and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, effective as of November 1, 2013
(the "<u>U.S. Trustee Guidelines</u>"), and (c) the *Second Amended Order Setting Procedures for Interim
Compensation and Reimbursement of Expenses of Professionals* entered June 6, 2018 (the "<u>Interim
Compensation Order</u>"), this certification is made with respect to the Second Interim Application of
Brown Rudnick LLP, as claims counsel to the Oversight Board, dated June 30, 2019 (the
"<u>Application</u>"),[3] for interim compensation and reimbursement of expenses for the period of
February 1, 2019 through and including May 31, 2019 (the "<u>Compensation Period</u>").

3. With respect to section (a)(4) of the Local Guidelines, I certify that:

  a. I have read the Application;

  b. to the best of my knowledge, information, and belief, formed after
reasonable inquiry, the compensation and reimbursement of expenses sought
conforms with the Bankruptcy Code, the Federal Rules of Bankruptcy
Procedure, the U.S. Trustee Guidelines and these Local Guidelines;

  c. except to the extent that fees or disbursements are prohibited by the Local
Guidelines, the compensation and reimbursement of expenses requested are
billed in accordance with the Services Agreement.  Brown Rudnick's hourly
rate for all attorneys in these cases is $790, and $270 for all paralegals and
other non-lawyer staff; and

  d. in providing a reimbursable service, Brown Rudnick does not make a profit
on that service, whether the service is performed by Brown Rudnick in-
house or through a third party.

---

2 PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

3 Capitalized terms used but not defined herein have the meanings given to them in the Application.

Dated: June 30, 2019
       Boston, Massachusetts

Respectfully submitted,

*/s/ Sunni P. Beville*
Sunni P. Beville (admitted *pro hac vice*)

**BROWN RUDNICK LLP**
One Financial Center
Boston, Massachusetts  02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
sbeville@brownrudnick.com

# EXHIBIT B

## EXHIBIT B

**SUMMARY OF HOURS BILLED BY PROFESSIONALS AND PARAPROFESSIONALS
FOR THE PERIOD FROM FEBRUARY 1, 2019 THROUGH MAY 31, 2019**

## EXHIBIT B

Summary of Hours Billed by Professionals and Paraprofessionals
for the Period from February 1, 2019 through May 31, 2019

| Partners and Of Counsel | Position; Year(s) Admitted to Bar; Specialty | Rate | Hours | Amount |
|---|---|---|---|---|
| Edward S. Weisfelner | Partner; Admitted to New York Bar in 1983; Restructuring | $790.00 | 199.20 | $155,985.50 |
| Stephen A. Best* | Partner; Admitted to Virginia Bar in 1989 and to the District of Columbia Bar in 1991; White Collar Defense & Government Investigations | $790.00 | 160.40 | $125,136.00 |
| Jeffrey L. Jonas | Partner; Admitted to Massachusetts Bar in 1988; Restructuring | $790.00 | 145.10 | $114,629.00 |
| Justin S. Weddle* | Partner; Admitted to Massachusetts Bar in 1996 and to the New York Bar in 1996; White Collar Defense & Government Investigations | $790.00 | 20.10 | $15,879.00 |
| Sunni P. Beville* | Partner; Admitted to Massachusetts Bar in 2002; Restructuring | $790.00 | 590.00 | $450,102.50 |
| Benjamin G. Chew | Partner; Admitted to Virginia Bar in 1988 and to the District of Columbia Bar in 1989; Litigation | $790.00 | 47.70 | $37,683.00 |
| Angela M. Papalaskaris* | Partner; Admitted to New York Bar in 2004; White Collar Defense & Government Investigations | $790.00 | 377.90 | $296,329.00 |

| Partners and Of Counsel | Position; Year(s) Admitted to Bar; Specialty | Rate | Hours | Amount |
|---|---|---|---|---|
| Steven D. Pohl** | Partner; Admitted to Massachusetts Bar in 1989; Restructuring | $790.00 | 5.60 | $4,424.00 |
| Rebecca MacDowell Lecaroz | Partner; Admitted to Massachusetts Bar in 2006; Litigation | $790.00 | 196.50 | $152,351.50 |
| Sigmund S. Wissner-Gross | Partner; Admitted to New York Bar in 1983; Commercial Litigation | $790.00 | 53.10 | $41,949.00 |
| May Orenstein | Partner; Admitted to New York Bar in 1984; Litigation | $790.00 | 118.70 | $93,773.00 |
| Shlomo D. Katz | Partner; Admitted to Maryland Bar in 1990 and District of Columbia Bar in 1993; Litigation | $790.00 | 76.90 | $60,751.00 |
| Bennett Silverberg** | Partner; Admitted to New York Bar in 2001; Restructuring | $790.00 | 3.30 | $2,607.00 |
| Cathrine M. Castaldi | Partner; Admitted to California Bar in 1991; Restructuring | $790.00 | 251.20 | $198,448.00 |
| Rachel O. Wolkinson | Partner; Admitted to Maryland Bar in 2006 and to the District of Columbia Bar in 2007; White Collar Defense & Government Investigations | $790.00 | 90.80 | $71,732.00 |
| **TOTAL** | | | **2,336.50** | **$1,821,779.50** |

** Transitory timekeeper – amount excluded

*  Non-working travel is discounted at 50%

| Associates | Position; Year(s) Admitted to Bar; Specialty | Rate | Hours | Amount |
|---|---|---|---|---|
| Julia I. Catania* | Associate; Admitted to New York Bar in 2015; White Collar Defense & Government Investigations | $790.00 | 285.00 | $225,150.00 |
| Camille M. Vasquez | Associate; Admitted to California Bar in 2010; Litigation | $790.00 | 1.20 | $948.00 |
| Tristan G. Axelrod* | Associate; Admitted to Massachusetts Bar in 2014; Restructuring | $790.00 | 441.30 | $344,361.00 |
| Marisa I. Calleja* | Associate; Admitted to New York Bar in 2017; White Collar Defense & Government Investigations | $790.00 | 300.30 | $237,237.00 |
| Rosa Sierra* | Associate; Admitted to Florida Bar in 2015 and Massachusetts Bar in 2017; Restructuring | $790.00 | 717.40 | $566,746.00 |
| Olivia Gonzalez | Associate; Admitted to New York Bar in 2018; White Collar Defense & Government Investigations | $790.00 | 283.70 | $224,123.00 |
| Stephanie Calnan** | Associate; Admitted to Massachusetts Bar in 2017 and to the New York Bar in 2018; Litigation | $790.00 | 9.90 | $7,821.00 |
| Christina L. Silva | Associate; Admitted to Florida Bar in 2018; White Collar Defense & Government Investigations | $790.00 | 192.70 | $152,233.00 |

| Associates | Position; Year(s) Admitted to Bar; Specialty | Rate | Hours | Amount |
|---|---|---|---|---|
| Elliot J. Weingarten | Associate; Admitted to New York Bar and the District of Columbia Bar in 2014; White Collar Defense & Government Investigations | $790.00 | 246.60 | $192,246.50 |
| Andrew C. Crawford | Associate; Admitted to Virginia Bar in 2015 and District of Columbia Bar in 2016; White Collar Defense and Government Investigations | $790.00 | 38.70 | $30,573.00 |
| Brian P. Oldham | Associate; Admitted to Colorado Bar and the District of Columbia Bar in 2008; White Collar Defense & Government Investigations | $790.00 | 152.10 | $120,159.00 |
| Melanie D. Burke** | Associate; Admitted to Massachusetts Bar in 2013; Litigation | $790.00 | 11.60 | $9,164.00 |
| Arjun Sivakumar | Associate; Admitted to New York and California Bars in 2014; Litigation | $790.00 | 113.90 | $89,981.00 |
| Shari I. Dwoskin** | Associate; Admitted to Massachusetts Bar in 2014; Restructuring | $790.00 | 6.80 | $5,372.00 |
| Aynel Alvarez Guerra | Associate; Admitted in Cuba; Corporate | $790.00 | 33.20 | $26,228.00 |
| Selbie L. Jason** | Associate; Admitted to New York Bar in 2017; White Collar Defense & Government Investigations | $790.00 | 2.30 | $1,817.00 |
| Harrison Freeman** | Associate; Admitted to New York Bar in 2018; Corporate | $790.00 | 8.40 | $6,636.00 |

| Associates | Position; Year(s) Admitted to Bar; Specialty | Rate | Hours | Amount |
|---|---|---|---|---|
| Honieh Udenka | Associate; Admitted to California Bar in 2017; Litigation | $790.00 | 82.90 | $65,491.00 |
| Arnold G. Blair, III | Associate; Admitted to New York and New Jersey Bars in 2003; Litigation | $790.00 | 244.60 | $193,234.00 |
| Daniel F. Kerns** | Associate; Admitted to New York Bar in 2019; Commercial Litigation | $790.00 | 11.90 | $9,401.00 |
| **TOTAL** | | | **3,184.50** | **$2,508,921.50** |

** Transitory timekeeper – amount excluded
 *  Non-working travel is discounted at 50%

| Paralegals and Research Assistants | Year(s) Admitted to Bar; Position; Specialty | Rate | Hours | Amount |
|---|---|---|---|---|
| Elizabeth G. Hosang | N/A; Paralegal with over 20 years' experience; Litigation | $270.00 | 34.70 | $9,369.00 |
| Carol S. Ennis | N/A; Paralegal with over 35 years' experience; Restructuring | $270.00 | 378.50 | $102,195.00 |
| Sarah E. Chojecki | N/A; Paralegal with over 2 years' experience and Swiss qualified lawyer; White Collar Defense & Government Investigations | $270.00 | 50.30 | $13,581.00 |
| Christian M. Seitz | N/A; Paralegal with over 18 years' experience; Litigation | $790.00 | 30.50 | $8,235.00 |
| Carlene M. Mercier** | N/A; Paralegal with over 20 years' experience; Litigation | $270.00 | 6.50 | $1,755.00 |
| Harriet E. Cohen | N/A; Paralegal with over 30 years' experience; Restructuring | $270.00 | 12.50 | $3,375.00 |
| Danesh Imran** | Senior Litigation Technology Specialist | $270.00 | 5.50 | $1,485.00 |
| Helen Vlachos | N/A; Research Specialist | $270.00 | 8.50 | $2,295.00 |
| Crystal Alberigi | N/A Litigation Analyst | $90.00 | 345.30 | $31,077.00 |
| Teresa Landingham | N/A Litigation Analyst | $90.00 | 69.70 | $6,273.00 |
| Sharyn MacEachern | N/A Litigation Analyst | $90.00 | 81.50 | $7,335.00 |
| Betty Sullivan | N/A Litigation Analyst | $90.00 | 164.00 | $14,760.00 |
| Linda Charron | N/A Litigation Analyst | $90.00 | 99.90 | $8,991.00 |
| Jennifer Knott | N/A Litigation Analyst | $90.00 | 55.00 | $4,950.00 |
| Jodi Hunt | N/A Litigation Analyst | $90.00 | 206.20 | $18,558.00 |
| Catherine M. Hepburn | N/A Litigation Analyst | $90.00 | 142.30 | $12,807.00 |
| Florence M. Larson | N/A Litigation Analyst | $90.00 | 164.20 | $14,778.00 |
| **TOTAL** | | | **1,855.10** | **$261,819.00** |
| **Voluntary Reduction for Transitory Professionals** | | | | **($54,805.50)** |
| **GRAND TOTAL** | | | **7,376.10** | **$4,537,714.50** |

** Transitory timekeeper – amount excluded.

# EXHIBIT C

**EXHIBIT C**

**SUMMARY OF COMPENSATION BY MATTER FOR THE PERIOD
FROM FEBRUARY 1, 2019 THROUGH MAY 31, 2019**

### EXHIBIT C

Summary of Compensation by Matter for the Period
from February 1, 2019 through May 31, 2019

| Task Code | Hours | Fees | Costs | Total Amount |
|---|---|---|---|---|
| General /Costs Only | 0.00 | $0.00 | $215,480.20 | $215,480.20 |
| Case Administration | 47.30 | $30,611.00 | $0.00 | $30,611.00 |
| Meetings and Communications with Client | 154.70 | $122,213.00 | $0.00 | $122,213.00 |
| Fee Applications | 50.70 | $23,777.00 | $0.00 | $23,777.00 |
| General Investigation | 1,003.50 | $759,433.00 | $0.00 | $759,433.00 |
| Hearings | 67.20 | $50,436.00 | $0.00 | $50,436.00 |
| Non-Working Travel* | 78.20 | $30,889.00 | $0.00 | $30,889.00 |
| ERS | 42.80 | $33,812.00 | $0.00 | $33,812.00 |
| PREPA | 86.70 | $68,493.00 | $0.00 | $68,493.00 |
| GO Bonds / Debt Limit | 528.90 | $416,167.00 | $0.00 | $416,167.00 |
| Swaps | 166.20 | $121,314.00 | $0.00 | $121,314.00 |
| Credit Rating Agencies | 107.10 | $81,229.00 | $0.00 | $81,229.00 |
| COFINA | 112.30 | $88,613.00 | $0.00 | $88,613.00 |
| Avoidance Actions | 1,669.90 | $1,124,221.00 | $0.00 | $1,124,221.00 |
| Referrals | 42.60 | $33,654.00 | $0.00 | $33,654.00 |
| Third Party Claims | 1,885.90 | $1,483,569.00 | $0.00 | $1,483,569.00 |
| Adversary Proceedings | 1,326.10 | $119,349.00 | $0.00 | $119,349.00 |
| Plan and Disclosure Statement | 6.00 | $4,740.00 | $0.00 | $4,740.00 |
| Voluntary Reduction for Transitory Professionals | | ($54,805.50) | ($3,089.50) | ($57,895.00) |
| **TOTAL** | **7,376.10** | **$4,537,714.50** | **$212,390.70** | **$4,750,105.20** |

\*  Non-Working Travel is discounted at 50%

# EXHIBIT D

## **EXHIBIT D**

**SUMMARY OF BLENDED HOURLY RATES
AND COMPARABLE HOURLY RATES**

## EXHIBIT D

Summary of Blended Hourly Rates and Comparable Hourly Rates

| Category of Timekeeper | Blended Hourly Rate | |
|---|---|---|
| | Billed in this Fee Application | Billed for 2018 (excluding bankruptcy) |
| Partners | $779 | $751 |
| Associates | $788 | $489 |
| Paralegals | $270 | $425 |
| **All Timekeepers** | **$622.62** | **$575** |

# EXHIBIT E

## <u>EXHIBIT E</u>

**SUMMARY OF REIMBURSABLE EXPENSES INCURRED
FOR THE PERIOD FEBRUARY 1, 2019 THROUGH MAY 31, 2019**

## EXHIBIT E

Summary of Reimbursable Expenses Incurred
for the Period February 1, 2019 through May 31, 2019

| Service | Cost |
|---|---|
| 1.  Photocopy (In-house) (24,410 pages × 10¢) | $9,483.80 |
| 2.  Outside Copies | $298.57 |
| 3.  Accuroute Scans | $10.40 |
| 4.  Facsimile | $6.00 |
| 5.  Postage | $1,606.40 |
| 6.  Research (On-line Actual Costs) – Westlaw | $86,194.24 |
| 7.  Searches | $173.16 |
| 8.  Filing Fees | $20,070.00 |
| 9.  PACER | $1,615.10 |
| 10.  Teleconferencing | $2,665.10 |
| 11.  Transcripts | $256.48 |
| 12.  Binding | $1,464.00 |
| 13.  Overnight Delivery | $13,719.58 |
| 14.  Meals | $991.68 |
| 15.  Travel - Hotel | $2,712.17 |
| 16.  Travel - Train | $1,368.00 |
| 17.  Travel - Taxi | $1,500.27 |
| 18.  Travel – Travel Agent Fees | $180.00 |
| 19.  Travel - Parking | $45.00 |
| 20.  Travel - Airfare | $2,681.60 |
| 21.  Attorney Services | $68,438.65 |
| **SUBTOTAL** | **$215,480.20** |
| Reductions Made to Comply with Fee Examiner Guidelines | |
| Accuroute Scans | ($10.40) |
| PACER | ($1,615.10) |
| Binding | ($1,464.00) |
| | **(3,089.50)** |
| **GRAND TOTAL** | **$212,390.70** |

# EXHIBIT F

**<u>EXHIBIT F</u>**

**BUDGET PLAN AND COMPARATIVE ANALYSIS**



| Project Categories | Budgeted | | Actual | | Budgeted | | Actual | | Budgeted | | Actual | | Budgeted | | Actual | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Hours Estimate (Feb 2019) | Time Value Estimate (Feb 2019) | Hours (Feb 2019) | Time Value (Feb 2019) | Hours Estimate (March 2019) | Time Value Estimate (March 2019) | Hours (March 2019) | Time Value (March 2019) | Hours Estimate (April 2019) | Time Value Estimate (April 2019) | Hours (April 2019) | Time Value (April 2019) | Hours Estimate (May 2019) | Time Value Estimate (May 2019) | Hours (May 2019) | Time Value (May 2019) |
| Case Administration | 20 | 13,000.00 | 30.8 | 22,512.00 | 20 | 13,000.00 | 3.6 | 1,960.00 | 20 | 13,000.00 | 4.6 | 2,178.00 | 10 | 6,500.00 | 8.3 | 3,961.00 |
| Meetings and Communications with Client | 20 | 15,000.00 | 16.5 | 13,035.00 | 25 | 18,750.00 | 17.8 | 14,062.00 | 30 | 22,500.00 | 69.1 | 54,589.00 | 20 | 16,000.00 | 51.3 | 40,527.00 |
| Fee Applications | 5 | 3,000.00 | 6.2 | 3,182.00 | 10 | 6,000.00 | 30.4 | 14,760.00 | 10 | 6,000.00 | 6.8 | 2,928.00 | 10 | 6,500.00 | 7.3 | 2,907.00 |
| General Investigation | 250 | 197,500.00 | 128.6 | 95,978.00 | 400 | 310,000.00 | 686.6 | 516,622.00 | 450 | 350,000.00 | 165.3 | 128,715.00 | 100 | 79,000.00 | 23.0 | 18,118.00 |
| Hearings | 1 | 790.00 | 0.0 | 0.00 | 0 | 0.00 | 3.2 | 2,372.00 | 10 | 7,900.00 | 58.8 | 44,476.00 | 10 | 7,000.00 | 5.2 | 3,588.00 |
| Non-Working Travel | 30 | 23,700.00 | 12.7 | 5,016.50 | 10 | 7,900.00 | 4.1 | 1,619.50 | 15 | 12,000.00 | 37.8 | 14,931.00 | 15 | 12,000.00 | 23.6 | 9,322.00 |
| ERS | 0 | 0.00 | 14.0 | 11,060.00 | 10 | 7,900.00 | 28.8 | 22,752.00 | 50 | 40,000.00 | 0.0 | 0.00 | 80 | 65,000.00 | 0.0 | 0.00 |
| PREPA | 0 | 0.00 | 82.9 | 65,491.00 | 30 | 23,000.00 | 3.8 | 3,002.00 | 30 | 24,000.00 | 0.0 | 0.00 | 100 | 79,000.00 | 0.0 | 0.00 |
| GO Bonds / Debt Limit | 600 | 465,000.00 | 263.3 | 207,539.00 | 350 | 275,000.00 | 176.9 | 139,231.00 | 400 | 300,000.00 | 33.5 | 25,789.00 | 100 | 79,000.00 | 55.2 | 43,608.00 |
| Swaps | 5 | 4,000.00 | 2.9 | 2,291.00 | 50 | 39,500.00 | 77.5 | 61,225.00 | 100 | 80,000.00 | 85.8 | 57,798.00 | 10 | 7,900.00 | 0.0 | 0.00 |
| Credit Rating Agencies | 0 | 0.00 | 0.0 | 0.00 | 25 | 20,000.00 | 69.9 | 51,841.00 | 100 | 80,000.00 | 37.2 | 29,388.00 | 10 | 7,900.00 | 0.0 | 0.00 |
| COFINA | 30 | 25,000.00 | 0.0 | 0.00 | 4 | 4,000.00 | 98.3 | 77,553.00 | 10 | 7,900.00 | 14.0 | 11,060.00 | 10 | 7,900.00 | 0.0 | 0.00 |
| Avoidance Actions | 10 | 3,500.00 | 112.8 | 88,904.00 | 150 | 118,500.00 | 246.6 | 187,898.00 | 400 | 300,000.00 | 921.2 | 591,300.00 | 200 | 160,000.00 | 389.3 | 256,119.00 |
| Referrals | 5 | 3,000.00 | 0.0 | 0.00 | 15 | 4,000.00 | 42.6 | 33,654.00 | 0 | 0.00 | 0.0 | 0.00 | 0 | 0.00 | 0.0 | 0.00 |
| Third Party Claims | 0 | 0.00 | 0.0 | 0.00 | 0 | 0.00 | 0.0 | 0.00 | 0 | 0.00 | 1483.3 | 1,165,879.00 | 0 | 0.00 | 402.6 | 317,690.00 |
| Adversary Proceedings | 0 | 0.00 | 0.0 | 0.00 | 0 | 0.00 | 0.0 | 0.00 | 0 | 0.00 | 1204.1 | 108,369.00 | 0 | 0.00 | 122.0 | 10,980.00 |
| Plan and Disclosure Statement | 0 | 0.00 | 0.0 | 0.00 | 0 | 0.00 | 0.0 | 0.00 | 0 | 0.00 | 0.0 | 0.00 | 0 | 0.00 | 6.0 | 4,740.00 |
| | 976.00 | $753,490 | 670.7 | 515,008.50 | 1099.0 | $847,550 | 1490.1 | 1,128,551.50 | 1625.0 | $1,243,300 | 4121.5 | 2,237,400.00 | 675.0 | $533,700 | 1093.8 | 711,560.00 |