No. 18-____

IN THE

# Supreme Court of the United States

———————

IN RE HIRAM I. PEREZ SOTO PRO SE,

*Petitioner,*

v.

SUPREME COURT OF PUERTO RICO
REPRESENTED BY THE OFFICE OF THE
SOLICITOR GENERAL OF PUERTO RICO,

*Respondent.*

———————

**On Petition for a Writ of Certiorari
to the Supreme Court of Puerto Rico**

———————

**PETITION FOR A WRIT OF CERTIORARI**

———————

LCDO. HIRAM PEREZ SOTO-CPA
*Pro Se*
Colegiado Núm. 5698, RUA 3483
Urb. Villas de Paraná Calle 11
Bloque S-1#5
San Juan, Puerto Rico 00926
(787) 731-6573
hperez1057@gmail.com

*Counsel for Petitioner*

November 2, 2018

WILSON-EPES PRINTING CO., INC.  –  (202) 789-0096  –  WASHINGTON, D. C. 20002

## QUESTION PRESENTED

Can the Supreme Court of the State disbar a lawyer in a conclusory way because he filed six ethical charges against Judges, two ethical charges against the adversary lawyers, four recusal motions against Judges? The Supreme Court didn't discuss in a specific way why the ethical charges and recusal motions were a breach of ethics. This petitioner can discuss with specific facts each of the ethical charges and recusal motions. All of them had reasonable basis and were made with respect, see cases Holt v. Virginia 381US25; InRe Little 404US533; Capperton v. ATMassey June2009; InRe Cardona Alvarez 116DPR895. The petitioner only used his free speech right and the right to have an impartial forum protected under the Unites States Constitution by the first, 5th and 14th Amendments of the Unites States Constitution. The Supreme Court of Puerto Rico refused to discuss in a specific way the ethical charges and recusal motions and this was done because if the Supreme Court of Puerto Rico tried to discuss the ethical charges and recusal motions in a specific way each would be shown that they were constitutionally protected. After refusing to discuss in a specific way the ethical charges and recusal motions the Supreme Court stated again in a conclusory way that the petitioner was disrespectful to the adversary lawyers, cited wrong cases, made frivolous arguments. The file of the case will show clearly that this is wrong. It was the adversary lawyers who engaged in this type of conduct and lied repeatedly to the Court.

(i)

## TABLE OF CONTENTS

|                                                          | Page    |
|----------------------------------------------------------|---------|
| Question Presented                                       | i       |
| Introduction                                             | 1       |
| Opinion Below                                            | 6       |
| Jurisdiction                                             | 7       |
| Constitutional Provision Involved                        | 7       |
| Statement of the Case                                    | 7       |
| Conclusion                                               | 26      |
| Appendix A: Judgment of the Supreme Court of Puerto Rico | 1a-31a  |

iv

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                    Page(s)

Holt v. Virginia 381US25 ............................... i,1

InRe Little 404US533 ................................... i,1,8

Capperton v. ATMassey June2009 .............. i,1

InRe Ruffalo 390US544................................ 1,9

Selling v. Radford 243US46 (1917).............. 1

Theard v. United States 354US278............. 1

Near v. Minessota 283US697 ...................... 2,9

InRe Mutchinson 349US630 ........................ 3

Ward v. Moneroeville 409US570 ................ 3

Landmark Communication v.
    Virginia US Supreme Court 1978 ........... 8

InRe Oliver 330US53 ................................... 9

Redburn v. Shield 338SW2d23 .................... 15,18

InRe Center Wholesales 259F2d144 .......... 15

Selling v. Radford 243US46 (1917).............. 24

Konigsberg v. State Bar 353US272............. 24

Shughnessy v. US 345US206 (1953) ........... 24

Ex Parte Wall 107US265 (1882)................. 24

InRe Ruffalo 395US544................................ 24

InRe Noel 93Fe2d8th (1937) ....................... 24

Thead v. US 354US278 (1957)..................... 25

InRe Cook 551F3d542 ................................ 25

InRe Denut 340SO2d34 ............................... 25

v

TABLE OF AUTHORITIES—Continued

Page(s)

InRe Hammermaster 985P2d924 (1999)..... 25

InRe Benoit 487A2d1158 (1985) ................. 25

InRe King 568NE2d588 ............................... 25

InRe Liendi 789S2d271 ............................... 25

Venezia v. Polinger 16F3d209 7th circuit
(1994)......................................................... 25

Liljeberi v. Health 486US847 ...................... 25

FEDERAL STATUTES

28USCASec.1258.......................................... 7

STATE CASES

InRe Cardona Alvarez 116DPR895 ............. i

Flecha v. Lebrón 2005JTS176 ..................... 3,11

Villanova v. Villanova 2012JTS53.............. 3,11

Kmart v. Walgreens 121DPR633................. 5,10

Otaño Cuevas v. Vélez 96JTS142................ 5,10

InRe Fernández Torres 125DPR895............. 8

Rondón v. Fernández 105DPR368 ............... 10

InRe Campoamor Redín 96JTS6 ................. 10

Anselmo García 2011JTS723 ....................... 13

Maldonado v. Secretario 113DPR94............ 14

Romero v. Reyes 164DPR721 ....................... 15

ELA v. Aguayo 80DPR551 (1951)................ 15,19

Olivella Zalduondo v. Seguro 2013JTS2 ..... 15

vi

TABLE OF AUTHORITIES—Continued

Page(s)

InRe Honorable Díaz García 158DPR895 ...   18

Valcourt v. Tribunal 89DPR827 (1964) .......   18

Meléndez v. Fei 135DPR610 .......................   19

González Suarez v. Rodríguez 121DPR749 ...   19

Dorado v. Wrangler 98JTS49.......................   20

Olmedo v. Sueiro 123DPR294......................   20

Mercado v. Mercado 66DPR368...................   21,23

Borinquen Plumbing v.
   Tribunal 78DPR858.................................   23

Dávila v. Meléndez 2013JTS15 ...................   25

STATE STATUTES

32LPRASec.337 et seq..................................   3

Article 400 of the Civil Code of Puerto Rico...   4

Article 332 of the Civil Code of Puerto Rico...   4

Code of Judicial Procedure of Puerto Rico
   32LPRASec.337.......................................   11

Rule 14 of the Puerto Rican Civil
   Procedure Rules ......................................   10

LAW REVIEW ARTICLES

Fletcher   Cyclopedia   of   Corporation
   Section 1172 ...............................   15,19

O'neill   and   Thompson   Oppression   of
   Minority Stockholder Section 3.1.............   15

vii

TABLE OF AUTHORITIES—Continued

Page(s)

Wright and Miller Sec. 2222 .................... 15,18,20

González Tejera Inheritance Law of Puerto
    Rico Vol. I page 462. 24 Hofstra Law
    Review Vol. 32 Issue 4 by Cynthia Gray
    "The line between legal error and
    Judicial misconduct: Balancing Judicial
    Independence and Accountability"...........     25

# INTRODUCTION

This petition concerns the right of free speech of lawyers in litigation. The right to a fair forum. All those rights are protected as fundamental rights under the United States Constitution Amendments 1st, 5th and 14th, see InRe Little, supra; Holt v. Virginia, supra; Capperton v. ATMassey, supra. Every litigant has the right to file recusal motions and ethical charges against Judges and lawyers with reasonable basis and with respect. The Supreme Court of Puerto Rico refused to discuss in detail the ethical charges and recusal motions that I filed against Judges. Also refused to discuss in detail the recusal motions and ethical charges I filed against the adversary lawyers. I have reasonable basis to believe that the Supreme Court of Puerto Rico refused to discuss in detail those ethical charges and recusal motions because if it did so it will show and demonstrate clearly that they were constitutionally protected. I was subjected to clearly illegal judgments, orders and sanctions. Also the adversary lawyers in a conclusory way used the ethical charges repeatedly to incite the hostility of Judges against me. The Commissioner named by the Supreme Court to decide in a hearing the ethical charges against me was bias. She prevented me, I was Pro Se, to read the ethical charges filed against me by the Solicitor General Office of Puerto Rico to discuss them in detail. If I had had this opportunity it will show clearly that I was subjected to abusive judgment and sanctions and clearly illegal orders and judgments. The proceeding before the Commissioner was a clear violation of due process of Law. I couldn't defend myself. I was subjected to an abusive gag order, see InRe Ruffalo 390US544; Selling v. Radford 243US46 (1917); Theard v. United States 354US278. It could be shown clearly that the Supreme Court of Puerto Rico

2

knew that the Commissioner was bias and prevented me to defend myself. Also the ethical complaint filed against me by the Solicitor General was conclusory. Didn't discussed in detail the specific facts of each of the ethical complaint and recusal motions. Also the ethical charge was filed against me by an adversary lawyer and was completely conclusory, didn't discussed the specifics. The opinion of the Supreme Court was also conclusory, showed bias. As I have stated repeatedly the Supreme Court refused to discuss in detail the ethical charges and recusal motions. The Supreme Court in addition from refusing to discuss in detail the specifics of each recusal motion and ethical charge accused me in a conclusory way that I was disrespectful to the adversary lawyers, that I cited wrong cases, that I was disrespectful to Judges, that I made frivolous arguments. The record of the case shows clearly that the Supreme Court was completely wrong in this respect. The file of the case will show clearly that my behavior always was respectful, I never cited wrong cases, I never made frivolous arguments and I never lied to the Court. Moreover I can prove easily that the adversary lawyers cited wrong cases, made frivolous arguments, lied repeatedly to the Court, used the ethical charges that I filed in a conclusory way to incite the hostility of Judges against me. In Puerto Rico there is a type of prior restraint, see Near v. Minnessota 283US697 in which if a lawyer files an ethical charge against a Judge with reasonable basis and with respect he would be subjected to punishment by other Judges and to disbarment by the Supreme Court in a procedure without due process of Law in which the lawyer cannot defend himself. The most egregious abuse that I was subjected was that a codefendant in the inheritance case that was accused of fraud was named Judicial

3

Administrator of the estate. This was made in a clear violation of the Code of Civil Procedure of Puerto Rico, see 32LPRASec.337 et seq. to name a person Judicial Administrator of an estate, a procedure of strict compliance must be followed in which there must be a hearing, a petition by a heir or an "Albacea", (administrator named by the descendant in the will), no person can be named Judicial Administrator when that person has a conflict with a heir or with the estate, see Flecha v. Lebrón 2005JTS176; Villanova v. Villanova 2012JTS53. Also under the US Constitution no person can be a Judge and a party, see InRe Mutchinson 349US630; Ward v. Moneroeville 409US570. That person accused of fraud for four years filed reports as an Administrator that can be labeled as fraudulent. The so called Administrator has accepted that he took more than $6 million from the estate in a motion filed in Court. I filed motions in December 2012, December 2013, and October 2014 telling the Court of First Instance of Humacao that the position of the so called Judicial Administrator was void. Three Judges of the Court of First Instance of Humacao refused to decide the motions. Also the Intermediate Appeals Court of Puerto Rico refused to decide the motion KLCE2015-00534, KLCE2014-01279. The Supreme Court of Puerto Rico in three instances refused to decide the controversy by not granting the discretionary writ of Certiorari violating the Rule of Law. I filed a complaint in August 2007 in the Court of First Instance of Humacao HSCI2007-01040 to divide the estate of my father. The defendant were my sister Mrs. Enid Pérez Soto and her two daughters Arleene and Marisel Valeiras Pérez. Named as a defendant was Mr. Cordero Soto a cousin of mine by the maternal side which was the administrator of a family business owned by my father, the descendant

4

Mr. Hiram Pérez Beltrán. The business was a family corporation Cantera Pérez engaged in extracting rock in a quarry in the town of Humacao. In the pleadings I alleged that some of the dividends declare on the stock belong to the descendant according to Puerto Rican Law, Article 400 of the Civil Code of Puerto Rico. I also alleged that my 25% interest was fraudulently redeemed from me as a minority stockholder. I allege that Mr. Cordero Soto was involved in this fraudulent scheme. In another case in the Court of First Instance of San Juan, KJV2006-2638 a letter of Administration "Carta de Albaceazgo" was emitted in which codefendant Enid Pérez Soto and later as an alternate Mr. Cordero Soto was named "Albacea" (administrator named in the will by the descendant). That Court decided with the approval of the Court of First Instance of Humacao that the "Albaceazgo" (administrator named in the will) expired in January 2010. The Judge in the case KJV2006-2638 clearly stated that the decision was res judicata if the adverse parties didn't appealed, they didn't. Under Puerto Rican Law when the "Albaceazgo" expires the estate must be delivered to the heirs only by the naming of a Judicial Administrator can the heir be prevented to administer the estate voting according to the interest, see Article 332 of the Civil Code of Puerto Rico. The Supreme Court, the Judges of the Court of First Instance of Humacao and the Intermediate Appeals Court refused in a bias way to give res judicata effect to the decision KJV2006-2638 of October 2009 which declared that the "Albaceazgo" expired in January 2010. This was an egregious error violating the Rule of Law that showed bias against me. It all started when in the Court of First Instance of Humacao a deposition was taken, I was Pro Se. One of the adversary lawyers started yelling in the deposition, interrupting my

5

answers, he filed two motions of summary judgment
when the deposition wasn't finished citing me out of
context. Also in numerous motions he used foul lan-
guage and insulted me as being a paranoid person. He
and other adversary lawyers accused me that I took
a deposition with a lawyer not admitted to the case,
the lawyer was only a public notary that sworn the
deposed person and excused himself as is the practice
in Puerto Rico. Based on lies I was disqualified at the
request of the adversary lawyers without a hearing in
violation of Puerto Rican Law, see <u>Kmart v. Walgreens</u>
<u>121DPR633; Otaño Cuevas v. Vélez 96JTS142</u>. I
had information that the Judge of the Court of First
Instance of Humacao, Judge Adalgisa Dávila Vélez,
was a friend of the adversary lawyers who constantly
used foul language and abused me in motions. I filed
an ethical charge against Judge Dávila because she
didn't exercised the authority in order for the judicial
proceedings to be conducted with respect and civility.
In a hearing held before the same Judge in February
2008 all the adversary lawyers wanted me to be
disqualified making conclusory arguments. I filed an
ethical charge against the Judge and against the adver-
sary lawyers because the deposition was abusive. The
Judicial Administration of Puerto Rico, I have reason-
able basis to believe, that took Judge Dávila out of the
case. The decision denying my ethical charge was
made by the Chief Judge Federico Hernández Denton.
Also the Supreme Court denied the ethical charge
against the adversary lawyers in which I was sub-
jected to an abusive treatment. No ethical charge was
filed against me by the Chief Judge or the Judicial
Administration when the ethical charge against Judge
Dávila and the adversary lawyers was denied. I had
reasonable basis and did it with respect. All these facts
were never discussed by the Supreme Court when I

6

was disbarred without a hearing. After I file these ethical charges I have reasonable basis to believe that other Judges and even the Supreme Court and the Appeals Court started making decisions that were clearly wrong against me. Also I was subjected to arbitrary and abusive sanctions. This is going to be discussed in detail in this writ of Certiorari. Finally when I appealed my disqualification based on lies KLCE2008-00585 the Appeals Court in an abusive way without any evidence stated that I was a paranoid person. That was in June 2008. One of the Judges who participated in that decision of the Appeals Court, Judge Brau Ramírez, was proposed as a Commissioner by the adversary lawyers when he was out of the judiciary. I will later explain that this Judge of the Appeals Court in at least five orders insulted me and accused me in a conclusory way that I was emotionally involved in the case and filed frivolous ethical charges against Judges. The Supreme Court refused to decide the illegality of the way I was disqualified without a hearing. The Chief Judge, Hernández Denton, the same Judge who refused to decide my ethical charges, decided the second motion of reconsideration denying my writ of Certiorari trying to revoke my illegal disqualification without a hearing based on lies.

## OPINION BELOW

The judgment of the Supreme Court of Puerto Rico was notified on April 27, 2018. According to the regulation of the Supreme Court of Puerto Rico the second motion of reconsideration was denied and notified on June 4, 2018. According to Rule 13 of the US Supreme Court we have 90 days to file the writ of Certiorari. According to Rule 30 of the US Supreme Court the first day is not included, the last day is included unless it is Saturday, Sunday or a Federal

7

legal holiday. According to Rule 13 of the US Supreme Court for good cause a Justice can may extend the time to file a petition for a writ of Certiorari for a period not exceeding 60 days. The 60 days time for extension expires on November 2, 2018. The first 90 day period expired on September 3, 2018.

## JURISDICTION

The Supreme Court has jurisdiction to review a final decision of the Supreme Court of Puerto Rico under 28USCASec.1258.

## CONSTITUTIONAL PROVISION INVOLVED

U.S. Constitution, art. III, § 2 states: The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; to all Cases affecting Ambassadors, other public Ministers and Consuls; to all Cases of admiralty and maritime Jurisdiction; to Controversies to which the United States shall be a Party; to Controversies between two or more States; between a State and Citizens of another State, between Citizens of different States, between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects

## STATEMENT OF THE CASE

In this case as previously explained the Supreme Court of Puerto Rico disbarred the appearing party because he filed two ethical charges against the adversary lawyers, six ethical charges against different Judges, five recusal motions against Judges, filed a Mandamus and filed a disqualification motion against the adversary lawyers. We have already discussed in

8

detail the ethical charge against the first Judge in the Court of First Instance of Humacao, Judge Adalgisa Dávila Vélez. We have already discussed the first ethical charge against the adversary lawyers. Those two ethical charges are constitutionally protected by my right of free speech, they were made with reasonable basis and with respect, see <u>InRe Little, supra</u>. The Chief Judge of the Supreme and the Judicial Administration of Puerto Rico denied those ethical charges but no disciplinary action was taken against me. I was just exercising my constitutional right. I have reasonable basis to believe that it was the ethical charge against Judge Dávila triggered a persecution against me by other Judges a contributing factor for this was that the adversary lawyers repeatedly used the ethical charges in a conclusory way to incite the hostility of Judges against me. This is something which has been vanished by the Supreme Court of Puerto Rico see <u>InRe Fernández Torres 125DPR895</u>. It should be pointed out that in the case of <u>Landmark Communication v. Virginia US Supreme Court 1978</u> the Supreme Court of the United States stated that all the 50 states have a prohibition to use the ethical charges against Judges or to make those charges public to protect the complaining party. In 48 of the states a breach of this obligation is subject to contempt, in two states it is typify as a crime. Puerto Rico doesn't have that prohibition in its statutory Laws, but in the case <u>InRe Fernández, supra</u> it was decided that ethical charges shouldn't be used to gain an unfair advantage in the case. There are numerous motions in the file of the case in which the adversary lawyers ask for sanctions against me because I filed the ethical charges and recusal motions and did it in a conclusory way. Also the Supreme Court never discussed in detail the ethical charges and recusal motions that I filed.

9

This shows bias. This statement is covered by my free speech right because I have reasonable basis to do so and it is done with respect. The reason the Supreme Court never discussed the ethical charges and recusal motions in detail was because if they tried to do so it would show clearly that my actions were constitutionally protected and the judgments and the orders of the Judges were an abuse of discretion, sanctions which had no merit, decisions that were clearly illegal. We will discuss that the Supreme Court didn't respected the Rule of Law. Seven times I filed Certiorari to the Supreme Court of Puerto Rico and that Court refused to grant the discretionary writ of Certiorari and left intact decisions that were clearly illegal, egregiously wrong. The ethical charge against me was made by an adversary lawyer and it was made in a conclusory way. The decision of the Commissioner named by the Supreme Court never discussed in detail the ethical charges and recusal motions. The Supreme Court as previously stated refused to decide in detail the recusal motions and ethical charges. It can be stated that in Puerto Rico there is a prior restraint, see Near v. Minnesota, supra in which if a lawyer exercises his right to file an ethical charge against a Judge it will automatically bring reprisals from other Judges and a disbarment in a procedure in which there is no due process of Law. The Commissioner named by the Supreme Court didn't gave the opportunity to read the ethical charge against me, I was Pro Se, and to explain why I had reasonable basis and did it with respect. This is a violation of my right of free speech and to have a fair forum. No person should be deprived of his profession to earn decently a living in this way, see InRe Ruffalo, supra; InRe Oliver 330US53. Also the Supreme Court stated in its judgment facts that were untrue, that were false. In the file of the case I can

10

prove very easily that I wasn't disrespectful to the adversary lawyers nor to Judges. I never lied in motions or statements to the Court. I never filed frivolous arguments or cited false cases. Moreover I can prove very easily based on the file of the case that the adversary lawyers engaged in this type of conduct. The Supreme Court never discuss in detail with specific facts my alleged conduct that I made frivolous arguments, made false statements, cited wrong cases or was disrespectful in any way. The only specific fact mentioned by the Supreme Court was that I filed a motion in March 2013 Pro Se when I was already disqualified. The Supreme Court never stated that I was disqualified illegally based on lies and without a hearing at the request of the adversary lawyers in violation of the local Law see <u>Kmart v. Walgreens, supra; Otaño Cuevas v. Vélez, supra</u>. That motion was a contingent motion under Rule 14 of the Puerto Rican Civil Procedure Rules, see <u>Rondón v. Fernández 105DPR368</u>. I asked the Court to void my disqualification and after voiding my disqualification transfer the case. Under Puerto Rican Law when a Judge after an ethical charge is recused or taken out of the case the case should be transferred to another Court to maintain the appearance of impartiality, see <u>InRe Campoamor Redín 96JTS6</u>. Judges in small Courts, like the Court of First Instance of Humacao, usually are friends. At that time Judge Dávila had recused herself after ethical charge on August 2009 and Judge Hernández after ethical charge was taken out of the case by the Judicial Administration. It should be pointed out that the Supreme Court had three times the opportunity to decide why the case KJV2006-2638 of the Court of First Instance of San Juan October 2009 which decided that the Administrator named in the will "Albacea" had expired in January 2009. Also

11

that Judge Hernández in November 2010 couldn't name a defendant accused of Fraud in the pleadings of the complaint based on the will of the descendant Judicial Administrator without a hearing, bond, petition of a heir, see <u>Code of Judicial Procedure of Puerto Rico 32LPRASec.337; Flecha v. Lebrón, supra; Villanova v. Villanova, supra</u>. Under the US Constitution a party cannot be named Judge or to a position in which he administers the estate of a descendant if he has a conflict with the estate and is accused of Fraud. I have reasonable basis to complain about this egregious mistake of Law. I have reasonable basis to believe that it was made with bias by three Judges of the Court of First Instance of Humacao, by Judges in the Court of First Instance of San Juan, by Court of Appeals Judges and by the Supreme Court. The adversary lawyers in an unethical way refused to decide the legal significance of a judgment that was res judicata. The so called Administrator has accepted in documents filed in the case that he took $6 million out of the estate for his own benefit and the benefit of the other defendants in the inheritance case. The Supreme Court doesn't mention that the present Judge in the Court of First Instance of Humacao, Judge Castro Rodríguez, after three Judges were either recused or taken out of the case by the Judicial Administration, Judge Dávila, Judge Hernández and Judge Negrón, wanted to set the case of inheritance for trial on the merits without meaningful discovery. The adversary lawyers during hearings held in June 26, September 26, and December 12, 2014 lied to the Court telling the Court that the discovery process that was beginning was finished. That one deposition that was began to be taken on the defendant named illegally Judicial Administrator was finished. This was a complete lie. The same deposition stated that it was postponed. I

12

had to file a Mandamus KLRX2015-00008. The Appeals
Court decided that the discovery process must continue.
It was based on an order signed by Judge Negrón at
the request of Judge Castro Rodríguez that the discov-
ery process must be continued. The depositions were
held in April and May 2015 in which the adversary
lawyers objected continuously to relevant questions
that weren't privileged in violation of the Civil
Procedure Rules of Puerto Rico, Rule 27.5. Two of the
defendants didn't appear at depositions in which they
were duly cited. Also four additional witnesses didn't
appear at depositions that were duly cited. My lawyer
filed a motion asking for sanctions. The present Judge
presiding the case refused to decide the motion asking
for sanctions. The same Judge refused to continue the
discovery process. I filed an ethical charge against the
adversary lawyers AB2016-16. The Supreme Court in
a bias way sanctioned me with $5,000 without giving
me the opportunity to defend myself. The Supreme
Court also stated that if I didn't pay the sanction in
ten days I will be summarily disbarred without a
hearing. This all can be proven by the file of the case.
The Supreme Court also refused to discuss that I
received a letter on October 2014 from the Judicial
Administration in which they told me that I had
reasonable basis to file ethical charges against Judge
Negrón Villardefranco which was taken out of the case
after this letter. Also that I had reasonable basis to file
ethical charge against Judge Brau Ramírez of the
Appeals Court which continuously insulted me stating
in a conclusory way that I filed ethical charges without
merits against Judges. This same Judge when he was
out of the Judiciary was proposed as a Commissioner
by the adverse party in December 2009. At first blush
it could appear that I filed too many ethical charges
and recusal motions, but when they are examined and

13

discussed in detail they show that I was subject to a conspiracy by Judges to punish me after I filed the first ethical charge against Judge Dávila.

We will discuss now each of the ethical charges and recusal motions. It will be shown clearly that they were constitutionally protected made with reasonable bias and with respect. The decisions, orders and judgments were clearly egregiously wrong under the Law. We have already discussed the first ethical charge against Judge Dávila and against the adversary lawyers. It was the first ethical charge which initiated the conspiracy against me. I didn't filed any disqualification motion against the adversary lawyers. That motion was filed by my lawyer. At that time the second Judge of the Court of First Instance of Humacao Judge Garriga was presiding the case after Judge Dávila recused herself. It should be pointed out that Judge Garriga should had at least admonished the lawyer for Cantera Pérez which was the one who insulted me repeatedly and branded me as paranoid. He filed two motions of summary judgment citing me out of context with part of the deposition of October 2007 which wasn't finished. My turn never came. Judge Garriga should also have admonished the adversary lawyer by the illegal way I was disqualified. She should also had admonished the adversary lawyers. One of them declared in the hearing February 2010 that he had offered to distribute the earnings of the estate in the Court of First Instance of San Juan KJV2006-2638. This was completely false. Under Puerto Rican Law the earnings of an undivided estate can be distributed before the division of the estate. See <u>Anselmo García 2011JTS723</u>. This was a complete lie. Judge Garriga stated that the adversary lawyers didn't declared that, she was wrong. Finally she should have at least admonished the adversary lawyers two of them with

14

derailed the distribution of the income of the estate ordered by her in December 2009 for the reason that these lawyers were not notified of the orders. They were notified. They stated that the brokers told them of the order. The brokers told me that this was not so. No return envelope was on the file of the case. The income of the estate was prevented to be distributed from February 2008 in which I asked for them until July 2011.

The ethical charge against Judge Hernández. We have already discussed the illegal way in which Judge Hernández named Judicial Administrator Mr. Cordero Soto a person who is accused of Fraud in the complaint without a hearing, bond, in violation of the Law. When there was a prior judgment KJV2006-2638 Court of First Instance of San Juan of October 2009 that the "Albacea" (administrator appointed by the descendant in the will) had expired. The same Judge asked my lawyer to file a motion to desist without prejudice of a contingent derivative claim that I had pleaded in the complaint. My lawyer and I decided to cooperate. The lawyer of Cantera Pérez the one who repeatedly in motions accused me of being paranoid in a motion told the Judge that the motion to desist without prejudice should be changed to a dismissal with prejudice because I had filed an ethical charge against Judge Dávila. This motion is completely abusive and unethical. Judge Hernández granted the motion and dismissed with prejudice the derivative contingent claim that could cause me more than $500,000 in damages. Also imposed on me a $10,000 sanction. There was no prior warning by Judge Hernández to do this outrageous and unethical judicial act, see <u>Maldonado v. Secretario 113DPR94.</u> I wanted to amend the complaint in March 2010. The direct action asking for the voidance of the redemption of my stock in the family corporation

15

Cantera Pérez that I alleged was fraudulent. I directed that action against the corporation. The correct action was to direct that cause of action against the majority stockholders and administrators, see Fletcher Cyclopedia of Corporation Section 1172; O'neill and Thompson Oppression of Minority Stockholder Section 3.1; Redburn v. Shield 338SW2d23. One of the adversary lawyers knowing the bias of Judge Hernández told the Court not to permit the amendment because it was going to delay the case. The discovery process was beginning and there was no trial or pretrial date on the calendar. The lawyer has the right to amend the complaint if it's timely, see Romero v. Reyes 164DPR721; Wright and Miller Sec. 2222. The Judge refused the amendment to the complaint. Then the Judge did something completely illegal, in a judgment prepared by the same adversary lawyer the Judge dismissed the cause of action that was in the amendment that he didn't permitted. This is completely illegal. Only causes of action properly included in the pleadings are subject to being dismissed in a summary judgment motion, see ELA v. Aguayo 80DPR551 (1951); InRe Center Wholesales 259F2d144. The Judge also stated that Puerto Rico Blue Sky Law 10LPRASec.890 applied to a private corporation as Cantera Pérez. The redemption of my stock was made in June 1998, I became aware of the fraud of my redemption in February 2007 and filed the complaint in August 2007. In this type of action the statute of limitation begins to run when the plaintiff becomes aware with due diligence of the fraud, see Redburn v. Shield, supra. The Blue Sky Law of Puerto Rico has a statute of limitation without tolling of two years. It is a universal established Rule of Law that the Blue Sky Law doesn't apply to private corporations, see Fletcher Sec. 6779. The Supreme Court has already decided, see Olivella

16

Zalduondo v. Seguro 2013JTS2. The adversary lawyers cited a wrong case that supposedly allows the Blue Sky Law of Texas to be applicable to a private corporation. I filed an ethical charge against Judge Hernández, it was constitutionally protected. His decisions were clearly wrong. I repeat, the Supreme Court refused to discuss this ethical charge.

The ethical charge against panel KLAN2011-00720 of the Appeals Court of Puerto Rico. When Judge Hernández dismissed with prejudice the contingent derivative action I appealed the judgment of dismissal, KLAN2011-00720. The adversary lawyers asked the Appeals Court to dismiss my appeal because I used a private mail station to notify the appeals document to them. The Appeals Court dismissed the appeal because I used the private mail station authorized by the US Postal System to notify the Appeals document to the adversary lawyers. The Rules of the Appeals Court 13 and 14 clearly provide for the use of private mail stations to notify documents. I appealed the dismissal to the Supreme Court of Puerto Rico CC2011-0737. In judgment signed by the Chief Judge at that time which didn't participated in my disbarment, she retired before the disbarment judgment, Chief Judge Liana Fiol Matta revoked the panel KLAN2011-00720 and reprimanded the panel. In the Supreme Court the adversary lawyers lied when they told the Court that I had forged the receipts of the notification of the Appeals documents in the private mail station. The Supreme Court CC2011-00737 stated clearly that this was incorrect. The receipts were clearly made on time and were not forged. The Supreme Court of Puerto Rico never mentioned this lies against me. I filed a motion telling the Court that it wasn't fair this lie against my integrity. When the Mandate of the Supreme Court arrived at the Appeals Court KLAN2011-00720

17

my lawyer resigned, I wanted to be Pro Se. The adversary lawyers filed motions telling the Court that I couldn't be Pro Se because of the ethical charges I had filed against them and the Judges. I filed a motion explaining all that had occurred in the Court of First Instance of Humacao. The Appeals Court allowed my Pro Se, stated that I didn't filed frivolous ethical charges against Judges and the adversary lawyers. The Appeals Court revoked the dismissal with prejudice of the contingent derivative claim. The Appeals Court didn't revoked the $10,000 fine imposed on me by Judge Hernández when he dismissed the contingent derivative claim stating that I had delayed the case by filing the motion to amend the complaint, this is completely bias and untrue. I filed a motion of reconsideration and recused the panel KLAN2011-00720 because I had already filed an ethical complaint against them for the dismissal of the appeal. That recusal motion is constitutionally protected, it was made with reasonable basis and with respect. The $10,000 judgment was left in place. The Supreme Court refused to revise that abusive sanction of $10,000. I filed a Mandamus against the panel KLCE2011-00057. The use of a Mandamus that isn't frivolous isn't an unethical conduct. That panel for more than one year refused to revoke the decision of Judge Hernández of November 2010 of naming Mr. Cordero Soto Judicial Administrator. The decision is clearly illegal under Puerto Rican Law. The Supreme Court never decided why the filing of this Mandamus was unethical conduct.

The ethical charge against panel KLCE2011-00057 of the Appeals Court. This panel was the one who affirmed the decision of Judge Hernández of naming Mr. Cordero Soto as Judicial Administrator illegally. The Appeals Court didn't even bother to mention the

18

decision which was res judicata KJV2006-2638 Court of First Instance of San Juan 2009. This decision was egregiously wrong, see InRe Honorable Díaz García 158DPR895. The Supreme Court of Puerto Rico refused to grant the Certiorari violating the Rule of Law. That ethical charge was constitutionally protected.

The ethical charge against panel KLAN2011-00180. I appealed the decision of Judge Hernández in December 2010 in which he decided that the Blue Sky Law of Puerto Rico applied to a private corporation, Cantera Pérez. That Law 10LPRASec.890 has a statute of limitation of two years without tolling. The redemption was in June 1998, I became aware of the voidness in February 2007 and filed a complaint on August 2007. The Appeals Court decided that the Blue Sky Law didn't apply because I was the seller and not the buyer. But then it stated that I knew of the fraud, applied a four year period of Article 1250 of the Civil Code of Puerto Rico to void fraudulent transactions. There were five uncontradicted sword statements filed by me in which I gave detailed facts that I was told three real estate were sold which was false and that the rock that could be mine expired in three years, I had a geological study made which proved that the rock to be extracted expired in 32 years. The movant party of the motion of summary judgment didn't filed any sworn statement, only the contract of redemption. All of these under its theory that the statute of limitation expired without tolling. When there is a conflict in basic facts a motion of summary judgment cannot be granted, see Valcourt v. Tribunal 89DPR827 (1964); Wright and Miller Sec. 2700. I was prevented to have my day in Court to offer evidence of the fraud in the redemption of my stock. The same Appeals Court took judicial notice of the incidents which occurred in the Court of First Instance of Humacao

19

which caused the ethical charge against Judge Dávila and her recusal. This decision was egregiously wrong and bias. The Supreme Court refused once again to grant the Certiorari violating the Rule of Law. This ethical charge was constitutionally protected.

I filed a complaint August 2012 in the Court of First Instance of San Juan KAC2012-0840. In that complaint I wanted to void the two judgments made by Judge Hernández González. I did not become aware that the two judgments were void until February 2012. That was the reason I didn't alleged the voidness of the two rulings specifically the ruling about the dismissal of the redemption of my stock in the Appeal KLAN2011-00180. Judge Hernández in December 2010 denied my petition to amend the complaint and then dismissed the cause of action that was in the amended complaint that he denied. This bizarre conduct was the product of bias. The judgment was prepared by one of the adversary attorneys. No Judge can decide causes of action that are not properly in the pleadings of a complaint, see ELA v. Aguayo, supra. Then in August 2011 Judge Hernández amended the complaint motu proprio and dismissed a cause of action that was in the amended complaint. This is completely illegal. That cause of action was a violation of a clause in the Certificate of Incorporation restricting the transfer of stock see Fletcher Sec. 5457. The same adversary attorney cited the case Meléndez v. Fei 135DPR610 which supposedly gave the Judge authority to do that. This is a wrong cited case, a violation of ethics. Case González Suarez v. Rodríguez 121DPR749 states the correct Rule. Also I pleading that the two judgments should be void for the additional reason that in ethical investigation Judge Hernández was taken out of the case by the Judicial Administration. The same attorney who prepared the

20

two judgments filed a motion of dismissal telling the
Court that my complaint not should only be dismissed
but rejected. Another adverse attorney filed a motion
stating my complaint should be dismissed because of
the ethical charges I filed against Judges. He did it in
a conclusory way. Judge Marrero Guerrero dismissed
my complaint and sanctioned me for $3,000 without a
hearing. Motion of dismissals cannot be granted if
there is any conceivable fact or Rule of Law that could
make the complaint valid, see Dorado v. Wrangler
98JTS49. Also under the case of Olmedo v. Sueiro
123DPR294; Wright and Miller Sec. 2862 when
judgments are void the argument of voidness doesn't
have to be made in a prior appeal. This judgment was
egregiously wrong product of bias. I had the right to
recuse the Judge after a filing a motion of reconsid-
eration. The recusal was denied.

I filed a recusal motion against Judge Negrón
Villardefranco in the Court of First Instance of
Humacao on December 2013. It was a contingent
motion under Rule 14 of the Civil Procedure Rules of
Puerto Rico. Since May 2013 as previously explained
panel KLAN2011-00720 of the Appeals Court had
reinstalled my Pro Se based on the abusive and illegal
way I was disqualified in the Court of First Instance
of Humacao. If my Pro Se was accepted then I asked
the Court for the recusal of Judge Negrón. Judge Negrón
refused to void the naming of Mr. Cordero Soto as
Judicial Administrator. He approved the payment of
disputed invoices signing two orders with the headings
of the Appeals Court stating that there was an
agreement to pay those invoices. He did that on
October 2013 and December 2013. In a hearing in
December 2013 he put off the recording device and
accepted that he had ex parte conversations with the
adversary attorneys who prepared the illegal orders.

21

There was no agreement and the heading of the Appeals Court was used to confuse the Treasury Division of the Court of First Instance of Humacao. Also there was a prior order by Judge Trigo of the Court of First Instance of Humacao that said that the disputed invoices couldn't be paid. There was no agreement in prior hearing in June 13, 2011. Judge Negrón when the Mandate of the Appeals Court came back to the Court of First Instance of Humacao I had appealed the decision not to recuse Judge Negrón. Judge Negrón accepted that there was no agreement. Then set a hearing for September 26, 2014, he approved the payment of the disputed invoices even though who had the burden of proof which was the Administrator didn't offered any evidence. There was no hearing. The approval was void. See <u>Mercado v. Mercado 66DPR368; González Tejera Inheritance Law of Puerto Rico Vol. I page 462</u>. More than a $100,000 were taken out of the estate by an order of a bias Judge. When I made the appeal of the non-recusal of Judge Negrón KLCE2014-0414 in that panel was Judge Brau Ramírez. This Judge as previously explained was proposed as a Commissioner in the case when he was out of the Judiciary. Also in June 2008 in a prior appeal he accused me of being paranoid. I have reasonable basis to believe that Judge Brau Ramírez was friends with the adversary lawyers. The lawyer in the Appeals Court doesn't have to be the same lawyer in the Trial Court. I was disqualified in an illegal way as previously explained in the Court of First Instance of Humacao in April 2008. The decision of the Appeals Court of May 2013 KLAN2011-00720 decided that I was disqualified illegally. Judge Brau Ramírez refused to decide in a nonconclusory way why the case KLAN2011-00720 should not be given effect of reinstalling my Pro Se. He ordered that all my legal

22

writings should be rejected, he accused me in an angry
and in a conclusory way that I had filed frivolous
ethical charges against Judges. The Supreme Court
doesn't mention that in October 2014 I received a letter
from the Judicial Administration that I had reason-
able basis to file ethical charges against Judge Negrón
and Judge Brau. The recusal motion against Judge
Negrón was constitutionally protected. Also Judge
Brau Ramírez acted in an abusive way against me.

In the case KJV2006-2638 the Court decided through
a Judge, Judge Sagebien, that the invoices of the cost
incurred by the "Albacea" (administrator named by
the descendant) will not be approved if it was proven
in the Court of First Instance of Humacao in the case
of inheritance HSCI2007-01040 that there was fraud
committed by the defendants. The resolution of Judge
Sagebien was made in August 2010. It should be
remembered that the same Judge decided that the
"Albaceazgo" expired in January 2010. I had filed a
motion in March 2012 asking in the Court of First
Instance of Humacao for the removal of Mr. Cordero
Soto as Judicial Administrator. Later in December
2012 I filed a motion asking for the voidance of his
position. There is no need to remove a person who
holds a position in a clear and void way. One of the
adversary attorneys in a frivolous motion filed a
motion in the Court of First Instance of San Juan
telling that the two motions that I had filed had the
effect that I accepted that no fraud was committed in
the inheritance case. This is completely wrong. In fact
the fraud was accepted by Mr. Cordero Soto when he
accepted he took $6 million from the estate. Judge
Pérez Acosta in the Court of First Instance of San Juan
KJV2006-2638 ignored the two prior decisions made
by Judge Sagebien in the same case held a hearing in
which Mr. Cordero Soto didn't offered any evidence of

23

the legality of the invoices, see case <u>Mercado v.
Mercado, supra</u>. Then when I tried to prove that
Mr. Cordero Soto wanted to perpetuate himself as an
Administrator in an illegal way he threatened me with
contempt. Then he decided that the Supreme Court
decided that the naming of Mr. Cordero Soto as
Judicial Administrator was valid and that this had the
effect to prove that no fraud was committed in the
case. This is simply wrong and outrageous. The refusal
to grant a Certiorari by the Supreme Court of Puerto
Rico is not a decision on the merits, see <u>Borinquen
Plumbing v. Tribunal 78DPR858</u>. I filed a motion of
reconsideration and recused Judge Pérez Acosta. The
recusal motion was denied. It was constitutionally
protected. When I filed an appeal KLCE2014-01279 in
that case was Judge Administrator Fraticelli Torres.
That Judge had already sanctioned me with $3,000
because in a prior appeal KLCE2015-00534 I wanted
to revise the approval of the disputed invoices in the
Court of First Instance of Humacao, the decision not
to transfer the case from the Court of First Instance of
Humacao after three Judges were taken out of the case
by the Judicial Administration, I also wanted to
declare void of the Judicial Administrator. The $3,000
sanction was abusive and unfair. This same Judge
Fraticelli Torres decided that the position of the
Judicial Administrator was valid, refused to decide
the recusal of Judge Pérez Acosta and decided that I
didn't made a prompt objection to the invoices. Those
invoices were discussed in a hearing in August 2010
before Judge Sagebien. Also Judge Fraticelli refused
to decide the recusal motions of Judge Negrón in the
case KLCE2014-0414. I filed a recusal motion of Judge
Fraticelli, that recusal motion wasn't decided. The
recusal motion was valid made with respect and I had
reasonable basis.

24

Finally I filed a second ethical charge against the adversary lawyers AB2014 043. It was because the adversary lawyers lied to the Court about the approval of the invoices, lied when they accused me of forging documents, lied to the Court when they told the discovery process was finished, used abusive language against me when one of them told the Court that I was an obsessive compulsive person repeating ad nauseam my arguments and that the motion to desist without prejudice should be changed to a dismissal with prejudice because of the ethical charge filed against Judge Dávila. I had valid reasons. That charge was dismissed by the Solicitor General Office in a bias way in which the lawyer stated that she agreed with the adversary lawyers that I was and obsessive compulsive person. The report dismissing my ethical charges was bias.

The Supreme Court never discussed the ethical charges and recusal motions that I filed. I wanted to know if Judge Brau Ramírez participated in any way in the preparation of the ethical charges against me. His resolution insulting me were used intensively by the Solicitor General Office in the report AB2013-0510. The Supreme Court of the United States can overrule a disbarment made by the Supreme Court of Puerto Rico. This is so if it is found a violation of Constitutional Rights, see Selling v. Radford 243US46 (1917); Konigsberg v. State Bar 353US272; Shughnessy v. US 345US206 (1953); Ex Parte Wall 107US265 (1882). In this case was a violation of free speech and the right of a fair trial. The Federal District Court can refuse to disbar an attorney that was disbarred by the Supreme Court of the State if it's found that there was a violation of constitutional rights, but it cannot revoke the disbarment by the State Supreme Court, see InRe Ruffalo 395US544; InRe Noel 93Fe2d8th

25

(1937); Thead v. US 354US278 (1957); InRe Cook 551F3d542. Also errors committed by Judges that are egregious, intentional or clear can subject a Judge to an ethical charge, see InRe Denut 340SO2d34; InRe Hammermaster 985P2d924 (1999); InRe Benoit 487A2d1158 (1985); InRe King 568NE2d588; InRe Liendi 789S2d271; Venezia v. Polinger 16F3d209 7th circuit (1994); Dávila v. Meléndez 2013JTS15; Hofstra Law Review Vol. 32 Issue 4 by Cynthia Gray "The line between legal error and Judicial misconduct: Balancing Judicial Independence and Accountability". Even if a case is affirmed in appeal the Judge can be subject to an ethical charge. It is important that the right to file ethical charges against Judges should be preserved, a record can be established. The Judge can be given the opportunity to commit errors but if there is a pattern of wrong decisions he should be disciplined. Finally ethical charges doesn't hamper Judicial Proceedings in any way. If the ethical charge is dismissed, the case proceeds in a normal way, if the charge is granted the decision can be voided but not necessarily, it depends on the facts of the case, see Liljeberi v. Health 486US847.

26

## CONCLUSION

I was not given the opportunity to defend myself. I couldn't explain the ethical charges and recusal motions. The Supreme Court never discussed the ethical charges and recusal motions. I was accused in a wrong way and a conclusory way of lying, making frivolous arguments, citing wrong cases and insulting Judges and the adversary lawyers. This is completely wrong. A prior restraint has been established in the Judiciary of Puerto Rico. Lawyers are afraid of Judges. The clients are being punished by this conduct. The disbarment should be revoked.

Respectfully submitted,

LCDO. HIRAM PEREZ SOTO-CPA
  *Pro Se*
Colegiado Núm. 5698, RUA 3483
Urb. Villas de Paraná Calle 11
Bloque S-1#5
San Juan, Puerto Rico 00926
(787) 731-6573
hperez1057@gmail.com

*Counsel for Petitioner*

November 2, 2018

**APPENDIX**

1a

## APPENDIX A

ESTADO LIBRE ASOCIADO DE
PUERTO RICO TRIBUNAL GENERAL
DE JUSTICIA TRIBUNAL SUPREMO

————

NUMERO CASO: CP-2015-0020
ORIGINAL: AB-2013-0510
APELACIONES

————

IN RE:
PEREZ SOTO, HIRAM I.

vs.

————

CONDUCTA PROFESIONAL
ACCION CIVIL O DELITO

————

PEREZ SOTO, HIRAM I.
VILLAS DEL PARANA
S1-5 CALLE 11
SAN JUAN, PUERTO RICO 00926

————

NOTIFICACION

CERTIFICO QUE EN RELACION CON EL/LA
SEGUNDA MOCION DE RECONSIDERACION EL
TRIBUNAL DICTO EL/LA RESOLUCION QUE SE
ACOMPANA.

LIC. RODRIGUEZ LOPEZ, MINNIE H
mirodriguez@justicia.pr.gov

LIC. PROCURADOR(A) GENERAL
NOTIFICACIONES.OPG@GMAIL.COM

2a

RIVERA DE MARTINEZ, YGRI
COMISIONADA ESPECIAL 00

EN SAN JUAN, PUERTO RICO A 04 DE JUNIO DE
2018.

LCDA. SONNYA ISABEL RAMOS ZENO
SECRETARIO(A) DEL TRIBUNAL
SUPREMO ,INTERINO[A]

Por:f/ YADIRA ORTIZ MERCED
SECRETARIO[A] AUXILIAR

3a

## EN EL TRIBUNAL SUPREMO DE PUERTO RICO

————

CP-2015-20
(TS-4383)

————

In re:
Hiram I. Perez Soto

————

### PER CURIAM

En San Juan, Puerto Rico, a 24 de abril de 2018.

El 12 de diciembre de 2013, el Lcdo. Enrique Alcaraz Michell presentó una queja etica contra el Lcdo. Hiram I. Perez Soto. En elle le imputó conducta antiética en el transcurso de un pleito relacionado con la particion de la herencia .del padre del licenciado Perez Soto. AIego que el licenciado Perez Soto establecio un patron de presenter quejas contra todo abogado o juez que discrepa de el, y que utilize lenguaje ofensivo contra los abogados de las otras partes. Evaluada la queja, y con el beneficio de los informes de la Oficina del Procurador General y de la Comisionada Especial, concluimos que el licenciado Perez Soto violo los Canones 9, 12, 15, 17, 29, 35v 38 del Codigo de etica Profesional, infra.

I

Por medio de testamento, el Sr. Hiram Perez Beltran, padre del licenciado Perez Soto, desiqno come albacea, administradora judicial y contadora partidora a su hija, la Sra. Enid Perez Soto, El 6 de noviembre de 2006, luego de la muerte del Senor Perez Beltran, is senora Perez Soto solicito la expedicion a su favor de las cartas testamentarias. Al ano siquiente, la senora

4a

Perez Soto y el Sr. Jose Reinaldo Cordero Solo, designado en el testamento como sustituto de la senora Perez Soto, presentaron una mocion conjunta en la que la senora Perez Soto renuncio a los cargos y solicito la expedicion de nuevas cartes a favor del senor Cordero Soto. El Licenciado Perez Soto presento una mocion pars intervenir y oponerse al nombramiento. El Tribunal de Primers Instancia resolvio que el nombramiento procedia. Inconforme, el licenciado Perez Soto recurrio de ese dictamen, pore el Tribunal de Apelaciones denego revisar.

Posteriormente, el licenciado Perez Soto presento por derecho propio una demanda sobre particion de herencia y anulacion de ciertas transacciones relacionadas con el caudal hereditario de su padre. El Tribunal de Primers Instancia declaro no ha lugar la solicitud de representacion por derecho propio. El Tribunal de Apelaciones denedo revisar y destaco on so resolución que la Conducta de protagonism despIegeda por el licenciado en el litigio "obstaculizo la litigacion ordenada" y mostro "un obvio envolvimiento emocional con sus reclamciones y en contra de sus parientes, quienes considera lo persiguen famlliarmente". El licenciado Perez Soto presento ante nos una peticion de certiorari para revisar la determinacion del Tribunal de Apelaciones. Proveimos no ha lugar, acto que pare el licenciado "conllev[o] una violacion a le norma de Stare Decisis", segun expreso en una carte dirigida al entonces Juez Presidente, Hon. Federico Hernandez Denton.

A peser de que la determinación advino final y firm, el licenciado Perez Soto continuo compareciendo por derecho propio en el pleito. Ademas, inicio un patron de presenter quejas eticas y recusaciones contra los abogados y jueces quo intervinieron de forma adverse

5a

a sus intereses en el pleito. Como consecuencia, el
licenciado Alcaraz Michell, quien representada a otra
parte on el pleito, presento contra el licenciado Perez
Soto una queja etica qua remitimos a la Oficina del
Procurador General pare investigacion e informe.

Procedemos a senalar, segun surgen del informe de
la Oficina del Procurador General y sue anejos, las
quejas que el licencado Perez Soto presento:

1. Queja contra la Hon. Maria Adaljisa Davila
   Velez, por supuesto prejuicio y parcialidad al
   denegar su solicicud de representacion por
   derecho propio. Se ordeno el archivo de is
   queja. La Hon. Sonia I. Velez Colon, entonces
   Directora Administrativa de los Tribunales,
   concluyo que la juez no incurrio en violacion
   alguna y enfatizo que su Oficina no podia
   intervenir con decisiones judiciales en eusen-
   cia de violaciones eticas. El Hon. Hernandez
   Denton, enconces Juez Presidente, confirmo
   la determinacion de archivar la queja. Expreso
   en su resolucion quo las imputaciones del
   licenciado Perez Soto "carecen de base fun-
   dada" y que "no se desprende del expediente
   del. case fundamento alguno pare el inicio de
   un proceso disciplinario" contra la juez.

2. Queja contra el Hon. Israel Hernandez
   Gonzalez, a quien le fue asignada Ia demanda
   de herencia luego de que la juez Dávila Velez
   se inhibiera como consecuencia de la queja
   presentada en su contra. El licenciado Perez
   Soto expreso inconformidad con ciertes deter-
   minaciones judiciales tomadas por el juez
   Hernandez Gonzalez y arguyo que este actuo
   de forma negligente y parcializada. La Direc-
   tora Administrativa de los Tribunales ordeno

6a

el archive de la queja. Aclaro que las determi-
naciones judiciales, aun cuando fuesen erro-
neas, no constituyen base suficiente pare una
queja a menos quo se demuestre gue hubo
abuso intencional de la discrecion judicial. El
Juez Presidente confirmo y ordeno el archivo
definitivo de is queja. Aunque advirtio quo la
solicitud de reconsideracion fue presentada
tardiamente, se expreso sabre los meritos de la
queja. Senalo que la queja se limita a cues-
tionar las determinaciones judiciales del juez -
y de otros jueces- y no a senalar conducts que
constituya una violacion etica. "[L]as determi-
naciones judiciales en controversia no son
errores de tal magnitud que reflejen conducta
impropia o favoritismo hacia un litigante [...]".

3. Queja contra el panel del Tribunal de
Apeleciones compuesto por la Hon. Emmalind
Garcia Garcia, la Hon. Aleida Verona Mendez
y la Hon. Maria del C. Gomez Cordova. El
licenciado Perot Soto adujo que los jueces
del panel incurrieron en negligencia crasa y
le ocasionaron danos al proceso judicial al
desestimar su apelacion sumariamente bajo el
fundamento de que no la notified a las pertes
dentro del termino reglamentario porque la
deposito en on cornea privado. La Directors
Adminlstrative de los Tribunales ordeno el
archive de la queja, porque se limitaba a
impugnar one determinacion judicial. El licen-
ciado volvio a presentar la soliditud de recon-
sideracion tardiamence y el Juez Presidente
volvio a expresarse. Dijo que "el licenciado
Perez Soto se limita nuevamente a impugnar
lea determinaciones judiciales del referido
panel del Tribunal de Apelaciones y de otros

7a

jueces que tambien han sido objeto de otras quejas presentadas por este, y no a senalar conducts que constituya one violacion he los Canones de ttica," Tanto la Directora Administrativa como el Juez Presidente senalaron que el remedio que tenia el licenciado Perez Soto a au disposicion era recurrir al foro apelativo cerrespondiente, come en efecto hizo, pero que la presentacien he quejas era improcedente.

4. Recusacion del panel del Tribunal de Apelaciones compuesto por la Hon. Emmalind Garcia Garcia, la Hon Aleida Verona Mendez y la Hon. Maria del C. Gomez Cordova. El licenciado Perez Soto indico: "Tenemos base razonable pare creer quo of Apelativo al desestimar no lo realizo de buena fe o negligencia crasa [...]. Lo realizo por prejuicio. Nos quejamos del Panel. El Juez Presidente es de opinion que por decisiones judiciales no se puede discipliner a un Juez o Panel. Creemos que este esta equivocado [...]. El Panel debio inhibirse de ver la Apelacion luego de mi Queja y de que el Supreme lo revocase con una sutil critica a la arbitrariedad de su decision." Un panel especial declaro no ha lugar la mocion del recusacion. El panel especial entendio quo no existia fundamento valido para la peticion de inhibicion, sine solo su clara insatisfaccion con pronunciamientos del foro de instancia y del foro apelativo.

5. Queja contra el panel del Tribunal de Apelaciones, compuesto per la Hon. Aida Nieves Figueroa, la Hon. Carmen H. Carlos Cabrera y el Hon. Troadio Gonzalez Vargas, opt supuesta demora en atender un recurso. La

8a

Directora Administrativa ordeno el archivo de
la gueja y apercibio al licenciado de que la
mera dilacion no amerita que se acuda a la via
disciplinaria y de que del expediente no surgia
conducto impropia por parte de estos jueces. El
licenciado Perez Soto presento una mocion de
reconsideracion que fue denegada por tardia.
Ademas de la queja, el licenciado tambien
presento una solicitud de mandamus ante
este Tribunal para que ordenaramos al panel
resolver el caso en cuarenta cinco dias. De
las veintidos paginas de la solicitud, tan solo
unos pocos parrefos son dedicados a la figura
del mandamus y a explicar por que debia
expedirse. El resto del documento va dirigido a
relitigar asuntos ya resueltos y a tratar de
convencer al tribunal del suspuesto prejuicio
de los jueces y de las mentires y falcas de
respeto de los demas abogados. Denegamos la
peticion de mandamus.

6. Queja contra el panel del Tribunal de
Apelaciones compuesto por la Hon. Gretchen
Coll Marti, la Hon. Nelida Jimenez Velazquez
y la Hon. Ivelisse Dominguez Irizarry. El
licenciado Perez Soco alego tener base sufi-
ciente para creer que el panel actuo con pre-
juicio y parcialidad al confirmar una sentencia
del foro primario. La Directora Administrativa
de los Tribunales concluyo que la queja
versaba sobre una determinacion judicial que
se encuentra fuera de su jurisdiccion discipli-
naria y ordeno su archivo. El licenciado solicito
reconsideracion tardiamente al Juez Presi-
dente, quien advirtio que perdio jurisdiccion
para revisar la queja. Sin embargo, expreso

9a

que la queja vuelve a impugnar los fundamen-
tos juridicos del panel asi coma las determi-
naciones de otros jueces gue tambien han sido
objeto de quejas del licenciado. Anadio que el
licenciado Perez Soto tampoco podia plantear
que los errores del panel fueran de gran mag-
nitud cuando el mismo alego que la controver-
sia era novel. Finalmente, reitero que el pro-
ceso disciplinario no as on mecanismo apela-
tivo y ordeno el archivo definitive.

7. Recusacion del Hon. Ricardo G. Marrero
Guerrero, quien desestimo una demanba del
licenciado Perez Soto para que se decretara la
nulidad de dos sentencias parciales adversas.
En esa sentencia, el juez Marrero Guerrero
tambien impuso al licenciado Perez Soto el
pago de costas de litigio y de tree mil dolares
en honorarios por su temeridad. El Hon.
Miguel P. Cancio Bigas declaro no ha lugar la
solicitud de recusacion. Explico que nada en el
expediente sustenta la alegacion de prejuicio,
pues el juez Marrero Guerrero resolvio a la luz
del derecho que entendio aplicable. Ante Pore
panorama, el licenciado Perez Soto tenia los
mecanismos de revision v apelacion dispon-
ibles, pero no el. de recusacion.

8. Recusacion del Hon. Antonio R. Negron
Villardefrancos, luego de que este juez le
reguiriera al licenciado Perez Soto no actuar
como su propio abogado. El Hon. Rafael
Rodriguez Olmo declaro no ha lugar la solici-
tud de recusacion, por entender que el licen-
ciado Perez Soto no probe su alegacion de
prejuicio o parcialidad. El licenciado Perez
Soto recurrio de esta determinacion al

10a

Tribunal de Apelaciones. Como acostumbra hacer, aprovecho sub comparecencia ante el faro apelativo pare relitigar asuntos ya adjudicados en el pleito de herencia y volver quejarse sobre los supuestos insultos y conductas antieticas de parte de los abogados do la otra parce y del prejucio que entiende hen desplegado los juedes que intervinieron en el case. En lugar de dar razones concretas por las cuales el juez Negron Villardefrancos debia sec recusado del caso, el licenciado Perez Soto insistio en que un sinnumero de sentencias dictadas en su contra son ilegales y estan prejuiciadas. Todo era impertinente para atender el asunto de la recusacion del juez Negron Villardefrancos. El Tribunal de Apelaciones denego el auto solicitado. Mencionio que el licenciado Perez Soto desacato la directriz de no participar por derecho propio y senalo que, el envolvimiento personal del licenciado con el pleito le hizo dificil desempenarse de forma desapasionada y profesional.

9. Recusacion del Hon. Enrique Perez Acosta, en la que el licenciado Perez Soto expuso que el juez resolvio en su contra por estar influenciado por las quejas contra otros jueces. Segun el licenciado Perez Soto, el juez actuo con "companerismo judicial equivocado y cenido con la etica judicial". La Hon. Arlene De L. Seller Guerrini declaro no ha lugar la mocion y resolvio, luego de escuchar la regrabacion de la vista, que el juez Perez Acosta no actuo con prejuicio contra el licenciado Perez Soto y que el abogado tuvo la oportunidad de contrainterrogar a los testigos. Tambien senalo que el juez tuvo que llamarle la atencion al abogado en

11a

tres ocasiones por el lenguaje utilizado al decir que el albacea pretendia "perpetuarse en el poder". Se le apercibio de que si no estaba conforme con lo resuelto por el juez Perez Acosta, el mecanismo apropiado para la revision era la reconsideracion, lo que el abogado tambien hizo.

10. Queja contra los licenciados Luis E. Laguna Mimosa, Enrique Alcaraz Micheli, Patricia Cordero Alcaraz, Edna E. Perez Roman, Eli Galarza Rivera y Fernando 3. Gierbolini, quienes son abogados de las otras partes en el litigio de herencia. Segun el licenciado Perez Soto, escos abogados no lo trataron con respeto y cortesia, lo mandaron a callar, lo insultaron e insistieron en que el no estaba emocional e intelectualmence capacitado para el pleito. El informo de la Oficina del Procurador General recomendo la desestimacion de la queja. Destaco clue ha sido precisamente el licenciado Perez. Soto quien ha obstaculizado los procedimientos. Tambien senalo que es inaceptable que, mediante el procedimiento disciplinario, el licenciado Perez Soto intente dilucidar la legitimidad de sus reclamos ante el foro primario en el pleito de herencia. Habiendo examinedo el informe y la contestacion del licenciado Perez Soto, ordenamos el archivo de la queja.

11. Solicitud de descalificación de los licenciados Luis E. Laguna Mimoso, Enrique Alcaraz Micheli y Patricia Cordero Alcaraz. La Hon. Maria del Carmen Garriga Morales la declaro no ha lugar. Aunque reconocio que el lenguaje utilizado por el licenciado Laguna Mimoso

12a

durante una toma de deposicion fuel fogoso, concluyo que no fue tan impropio como para justificar descalificarlo de un pleito tan desarrollado. Ademas, indico que parece haber sido el propio licenciado Perez Soto quien propicio esa dinamica durante la deposicion.

El informe de la Oficina del Procurador General tambien reseno varias expresiones impropias que el licenciado Perez Soto de realizado en sus escritos. Proveemos algunos ejemplos: "No veo [c]omo el Panel podia decidir de esa manera y respetarse a si mismo". Pag. 14 de Peticion de certiorari presentada el 31 de marzo de 2014 en KLCE 2014-041. "El Juez dio una opinion consultiva nula. El Tribunal dice que no fue consultiva. Si no fue consultiva, [a] que fue?" Pag. 7 de la Mocion de reconsideracion y de inhibicion presentada el 12 de noviembre de 2013 en KAC2012-0840. "El tercer Juez del TPI siguio actuando pare causarme dano". id., pag. 20, "Los abogados contrarios conociendo el problema en que yo me meti can los jueces por las quejas consistentemente realizan planteamientos frivolos, mintiendo, sabiendo no van a ser sancionados." id., pag. 25. "El caso de la mentira y tergiversacion es la practica de los abogado[s] de Cordero Soto [...]. Estoy decidido [a] acabar con esta practica [...]. Yo nunca he mentido, que lo prueben. Yo puedo probar que los abogados de Cordero Soto han mentido repetidamente, no ac respetan a si mismos ni a los Tribunales de Justicia". Pag. 3 do la Mocion en contestacion a replica de mocion de reconsideracion presentada el 20 de noviembre de 2013 en KAC201-0840. "[El Juez] digo otras cosas falsas en su decision [...]. No se leyo los documentos del apendice [...] se dedico a parafrasear los escritos de los apelados conteniendo informacion incorrecta [...]". Pag. 7 de la

13a

Carta del Lcdo. Hiram Perez Soto al Hon. Federico Hernandez Denton, 12 de junio de 2009.

Estas expresiones son representatives del tono que el licenciado generalmente mantiene en sus escritos. Con frecuencia, tildo a los abogados de is parte contraria de viles, mentirosos y calumniadores; dijo que el tribunal decidio de forma negligente y sin estudios juridicos competentes, y que existe "companerismo judicial" entre los jueces.

La Oficina del Procurador General concluyo en su informe existe evidencia clara, robusta y convincente de que el licenciado Perez Soto pudo haber violado los Canones 9, 12, 15, 17, 25, 35 y 38 del Codigo de Etica Profesional, 4 LPRA Ap. IX. Conforme al informe rendido, le ordenamos a la Procuradora General presenter la querella correspondiente. Posteriormente, nombramos a la Hon. Ygri Rivera de Martinez para que, en presencia de las partes y en calidad de Comisionada. Especial, recibiera prueba, celebrate vistas y nos sometiera un informe con las determinaciones de hecho y las recomendaciones que estimara pertinentes. Concluyo que todos los cargos formulados por la Procuradora General se proberon. Por las razones que presentamos continuacion, estamos de acuerdo.

II

A. Canones 9 y 12

Los cargos I y II imputaron una violacion de los Canones 9 y 12 del Codigo de Etica Profesional, supra, por los ataques injustificados contra los jueces que intervinieron en los asuntos relacionados con la herencia del padre del abogado promovido, lo que causo dilaciones innecesarias en la solucion rapida del asunto.

14a

El Canon 9 exige de los abogados "observar para con los tribunales una conducta que se caracterice por el mayor respeto" y desalentar y evitar ataques injustificados o atentados ilicitos atentados ilicitos contra los jueces o contra el buen orden en la administration de la justicia en los tribunales. Este debar "incluye tambien la obligacion de tomar las medidas qua procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempenan impropiamente sus funciones y que no observan una actitud cortes y respetuosa". Id. Hemos expresado que la critica judicial oportuna es efectiva para que los abogados contribuyan a que los tribunales cumplan sus funciones, pero debe hacerse con respeto y deferencia. In re Crespo Enriquez, 147 DOE 656, 662-663 (1999). Un abogado no debe hacer imputaciones sobre el obrar de un juez que no estan avaladas con evidencia contundente e indubitada. id., pag. 663. Un abogado no debe traspasar los linderos de la verdad en el curso de su critica, porque una critics falsa, injustificada y viciosa obstaculiza la imparcial y recta administracion de la justicia. In re Andreu Ribas, 61 (OR 90, 120 (1959). Asi, es censurable la conducta del abogado que constantemente recurre al apuntamineto de que el tribunal actuo con prejuicio, pasion y parcialidad, sin sustanciarlo o sin motivos fundados para asi creelo. In re Cardona Alvarez, 116 DPP 895, 907 (1966). Es importante recorder que actuar con pasion y prejuicio supera el mero error del juzgador; se trata del incumplimiento esciente del deber de honradez de conciencia. Cordero v. Rivera, 74 DPR 586, 609 (19-53).

Por ello, no justificamos el lenguaje oral o escrito que pone en entredicho la honestidad y ecuanimidad del juez, aunque su actuacion judicial sea incorrecta y posteriormente revocada. In re Pagan, 116 DPR 107,

15a

111-112 (1385). "Las discrepancies con los dictamenes judiciales no [son] licencia para el lenguaje impropio e hiriente". Id., pag. 111.

Como regla general, los jueces no pueden ser sometidos a un procedimiento disciplinario meramente por aplicar o interpretar erroneamente los hechos o el derecho en un caso particular. Véanse In re Velazquez Hernandez, 162 DPR 316 (2004); In re Cruz Aponte, 159 DPR 170 (2003), "[U]n error de juicio no equivale a negligencia ni menosprecio absoluto de la ley. Al cometerse tales errores, la parte adversamente afectada tiene a su haber el procedimiento ordinario de revision judicial." In re Hon. Diaz Garda, T.P.I., 158 DPR 549, 557-558 (2003). "El comportamiento judicial que de alouna manera afecte los derechos de un [...] litigante puede llevarse el record para la accion correctiva que proceda por un tribunal superior, a tenor con to que deba ser un juicio imparcial y justo". Pueblo v. Susoni, 81 DPR 124, 154 (1959).

No es suficiente fundamentar que se aplico erroneamente el derecho para demostrar que la determinacion judicial iba dirigida a favorecer indebidamente a una de las partes, ni tampoco para reflejar conducta impropia o favoritismo hacia un litigante particular. Segun la Regla 3 de Discipline Judicial, 4 LPRA Ap. XV-B, el alcance del referido proceso se circunscribe a supuestos en los cuales se le impute al juez haber violado la ley, los Canones de Etica Judicial, el Codigo de Etica Profesional, las ordenes y normas administrativas aplicables, o haber incurrido en negligencia crasa, inhabilidad o incompetencia profesional manifiesta en sus deberes judiciales. Solo se configura una violacion etica si se presenta evidencia de que el error cometido constituyo un abuso intencional de la discrecion judicial, un error que por so magnitud refleje

16a

conducta impropia o favoritismo hacia un litigante o abogado particular. In re Hon. Dial Garcia, T.P.I., supra; Feliciano Rosado v. Matos, Jr., 110 DPR 550 (1981).

Sin duda alguna, el licenciado Perez Soto violo el Canon 9. Sus imputaciones contra jueces, ademas de utilizer un lenguaje irrespetuoso, demostraron ser todas injustificadas. El licenciado no sostuvo con evidencia contundente sus alegaciones de prejuicio, sino que recurrio a ese planteamiento casi coma automata cada vez que un juez resolvio en su contra.

Por otra parte, el Canon 12 establece que

[e]s deber del abogado hacia el tribunal, sus companeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el tramite y presentacion de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitacion y solucion.

Como corolario del deber plasmado en este canon, la conducta de un abogado no debe obstaculizar la resolucion de un caso. Sin embargo, ni el informe de le Procuradora General ni el informe de le Comisionada Especial detallan maneras en que el patron del licenciado Perez Soto de presentar quejas atraso el pleito de herencia. El tramite procesal de las quejas eticas presentada por el licenciado Perez Soto ocurrio al margen del pleito de herencia. Por otro lado, en relacion con las solicitudes de recusecion e inhibicion contra jueces, que requieren el nombramiento de paneles especiales para su atencion; resolvemos que el licenciado Perez Soto viola el Canon 12, puesto que

17a

detuvo el tramite del pleito de herencia en multiples ocasiones al presenter recusaciones inmeritorias.

### B. Canon 15

El cargo III imputo violacion del Canon 15 del Codigo de Etica Profesional, supra, por incumplimiento con la obligacion de observer un trato respetuoso y considerado hacia la parte adversa y no utilizar los procedimientos legales de manera irrazonable o con el fin de hostigar a la parte contraria.

El Canon 15 impone a los abogados el deber de respeto hacia las partes contraries. Tambien dispone que sera impropio utilizer los procedimientos legales en forma irrazonable o con el fin de hostigar a la parte contraria. Resolvemos que el licenciado Perez Soto violo el Canon 15 al presentar continuamente mociones innecesariamente extensasi repetitivas e infundadas, sabre asuntos ya dirimidos con caracter de final y firme. Su proceder no fue razonable ni respetuoso, y raya en el hostigamiento a las partes contrarias. Tambien reprobamos la metodologia opresiva de interrogacion que uso el licenciado durante las vistas de este proceso disciplinario, al requerir a los testigos leer en voz alto la totalidad de documentos extensos para luego pacer preguntas sobre detalles especificos que estos no podian recorder.

### C. Canon 17

El cargo IV imputo violacion del Canon 17 del Codigo de Etica Profesional, supra, que prohibe la presentacion de pleitos injustificados, debido al patron reiterado de presenter quejas inmeritorias contra jueces y abogados.

En esencia, el Canon 17 busca evitar la litigation injustificada. Establece que is comparecencia de un

18a

abogado ante un tribunal equivale a una afirmacion de
que el caso de su cliente es uno digno de la sancion
judicial. Cuando un abogado firma una alegacion,
certifica que la informacion en ella esta bien fundada,
segun su mejor conocimiento.

La prueba demostro que el licenciado presento una
gran cantidad de quejas y recusaciones que carecian
de merito. A peser de que sus argumentos fueron
refutados repetidas veces, el licenciado Perez Soto
insistio en ellos. La presentacion de quejas y mociones
frivolas promueve el litigio injustificado y utiliza
innecesariamente los recursos de los tribunales y de la
Offina del Procurador General.

### D.  Canon 29

El cargo V imputo violacion del Canon 29 del Codigo
de Etica Profesional, _supra_, al conducirse de forma
personalista y con animosidad contra la parte con-
traria en la tramitacion del caso, obstaculizando con
ello la solucion de este. Dicha conducta quedo eviden-
ciada en las quejas eticas que el licenciado presento
contra los abogados de la perte adversa.

El Canon 29 dispone quo "[d]ebe evitarse escrupu-
losamente toda cuestion personal entre los abogados".
Tambien prohibe que se hagan imputaciones falsas
que afecten el buen nombre y reputacion de otro
companero de la profesion. La violacion de este canon
es evidente, pues fueron multiples las imputaciones
falsas hechas por el licenciado, que podian afectar la
reputacion de todos los abogados de la parte contraria,
de los jueces interventores y de las abogadas de la
Oficina del Procurador General que investigaron la
queja. Al realizar estas imputaciones, el licenciado
Perez Soto insistio en que los otros abogados y jueces
actuaron con prejuicio y mintieron vilmente. El

19a

licenciado hizo caso omiso al hecho de que todos sus reclamos fueron archivados. Su obstinacion al respecto es indicio de cuestiones personales contra estos abogados y de menosprecio a la reputacion y buen nombre de ellos.

E.  Canones 35 y 38

Los cargos VI y VII imputaron violacion de los Canones 35 y 3t3 del Codigo de Etica Profesional, supra, al incumplir con los deberes de exaltar el honor y la dignidad de la profesion, y de no incurrir en conducta impropia o apariencia de la misma. El cargo condena que, con su patron de presenter quejas constantemente, el licenciado Perez Soto demostro una desviacion de su deber, de exalter el honor de la profesion, ya que no fue veraz ni sincero al hacer imputaciones carentes de prueba que las sostengan.

El Canon 35 dispone que la conducta de cualquier miembro de la profesion legal debe ser sincere y honrada frente a clientes, companeros abogados y tribunales. In re Molina Oliveras, 188 DPR 547, 554 (2013). Utilizar medios que sean inconsistentes con la verdad o inducir al juzgador a error por medio de una false relacion de los hechos o del derecho, no es sincero ni honrado. Tambien es impropio distorsionar las citas juridicas para transmitir una idea distinta a la que el verdadero contexo establece.

La conducta del licenciado Perez Soto no es sincera ni honrada. Los hechos que relato en las quejas que presento no merecieron credibilidad por parte de nunguno de los juzgadores que los evaluaron. Tildo de "base razonable" hechos que no daban lugar a mas que una mera sospecha. El licenciado Perez Soto tambien argumento que el Juez Presidente tomo medidas disciplinarias directa o indirectamente contra los jueces

20a

de quienes el se quejo. Asi pretendio justificar las multiples quejas que presento contra estos. Sin embargo, ignoro que todas las resoluciones en que el Juez Presidente ordeno el archivo definitivo de las quejas, estuvieron acompanadas presiones desacreditando el proceder del licenciado. Esto no es sincero ni honrado.

Sin embargo, es con su relacion del derecho que sin lugar a dudas ha pretendido inducir a error a los juzgadoes. Con demasiada frecuencia, el licenciado Perez Soto Descanso en jurisprudencia inexistente, o distorsiono la existente, para argumentar puntos de derecho inmeritorios.

El Canon 38 dispone que un "abogado debera esforzarse, al maximo de su capacidad, en la exaltacion del honor y dignidad de su profesion, aunque el asi hacerlo conlleve sacrificios personales [...]". Una conducta viola este canon viola este canon cuando es contraria a los valores principales de la profesion - la dignidad y el honor- y afecta las condiciones morales del abogado, de manera que lo hace indigno de pertenecer al foro. In re Rodriguez Lopez, 196 DPR 199, 208 (2016); In re Reyes Coreano, 190 DPR 739, 758 (2014). El patron de conducta del licenciado Perez Soto viola este canon. El abogado se ha esforzado en promover su postura en el pleito hereditario, incluso en detrimento de la dignidad y las buenas practicas de la profesion. Lejos de ester dispuesto a incurrir en sacrificios personales cuando sea necesario para exalter el honor de la profesion, la obstinacion del licenciado Perez Soto demuestra que no pretende ceder nada.

Vale tambien senalar que el Canon 38 formenta que los abogados, en beneficio de la profecion, denuncien

21a

valientemente cualquer conducta corrupta y deshon-
rosa de otro colega o funcionario judicial. La conducta
del licenciado Perez Soto queda fuera de esta
exhortacion. Los distintos juzgadores de las quejas
presentadas por el licenciado Perez Soto determinaron
que estas quejas no iban dirigidas a corregir conductor
corrupta o deshonrosa. Tampoco las denuncias
promovian un beneficio a la profesion. El licenciado
Perez Soto repetia los argumentos que perdio en el
litigio, como una nueva oportunidad para adelantar
sus intereses en el caso.

### III

Los argumentos del licenciado Perez Soto en
respuesta a las imputaciones en su contra merecen
atencion especial. Alega que el pleito hereditario se
torno hostil contra el a partir de lainhibicion de la
juez Davila Velez como resultado de la queja que el
presento en contra de la magistrado. Segun el, los
abogados de las otras partes fomentaron la hostilidad
de los jueces contra el, con sus referencias constantes
a las quejas que el presento contra los jueces. Asi,
aduce que el companerismo entre los jueces prejuzgo
el pleito hereditario en su contra. De acuerdo al
licenciado Perez Soto, los abogados de las otras
parte aprovecharon el prejuicio en su contra para presentar
mociones frivolas e incorrectas en Derecho. Como
resultado, sostiene que se dictaron muchas sentencias
ilegales.

El licenciado Perez Soto asevera que se vio obligado
a presentar quejas y recusaciones porque los recursos
apelativos no rendian frutos o los jueces que los
atendian tambien estaban prejuiciados. El licenciado
Perez Soto sostiene que, segun la norma de <u>Lizarribar
v. Martinez Gelphi</u>, 121 DPR 770 (1988), la juez Davila
Velez no tenia discrecion para descalificarlo si el se

22a

comportaba con decoro y respeto. Aunque el sentido
comun -y no la norma de Lizarribar, id.,- dicta que una
persona que se comporte de manera irrespetuosa no
podra representarse por derechp propio, acutar con
respeto y decoro no garantiza que se conceda del juez
evaluador. Se requiere establacer un balance entre
los intereses de las partes de la eficiencia en la
adminstracion de la justicia segun las circunstancias
particulares de caso. Entre otros factores, se evalua el
efecto que tendria la interrupcion de los procedimien-
tos. En este caso, el Tribumal de Apelaciones expreso
que el licenciado Perez Soto obstaculizo la litigacion
ordenada y mostro una carga emotional con sus
reclamaciones y en contra de sus parientes. Dadas
las circunstancias, fue razonable que denegaran la
solicitud de representation por derecho propio.

El licenciado Perez Soto alego que tiene el derecho y
el deber de presenter quejas mientras sea con base
razonable y respeto; que eso as parte de sue derechos
civiles y su libertad de expresion. Asevero que todas
sus quejas cumplieron con la norma de In re Cardona
Alvarez, supra, que estaban protegidas constitucional-
mente y que lo contrario seria censure previa. Sin
embargo, en In re Cardona Alvarez, supra, repro-
bamos la conducta de un abogado que "acostumbra[ba]
hacer imputaciones de prejuicio y  parcialidad a los
Jueces cada vez que carec[ia]] de fundamentos en
derecho para sostener sus alegaciones". Id., pag. 900.
Para evaluar is legitimidad de las imputaciones que
un abogado pace contra un juez, consideramos si el
abogado (a) aunque equivocado, creia en la validez de
las imputaciones; (b) tenia motivos fundados o cause
probable para creer en su veracidad, aunque los
hechos no fueran ciertos, y (c) no hizo is imputacion
maliciosamente con el proposito de denigrar al
tribunal, Id., pag. 906. Tambien, expresamos que un

23a

abogado debe evitar "el empleo de imputaciones y de
hechos extranos o inutiles al asunto y, sobre todo, las
alegaciones contraries a la verdad o desprovistas de
una razonable presuncion de exactitud". Id., pag. 897.
Por eso, repudiamos toda imputacion que no este res-
paldada por evidencia competente y motivos fundados
y que sea tendente a degrader la dignidad, honorabi-
lidad eintergridad de los tribunales o sus funcionarios.
Id., pags. 906-907. "Nada mas destructive del justo
balance de la conciencia judicial, que la critica
injustificada y viciosa". Id., peg. 905.

A la luz de nuestros pronunciamientos en In re
Cardona Alvarez, id., las quejas que el licenciado Perez
Soto presento no son meritorias. Solo redundaron en
molestias innecesarias y el la utilizacion injustificada
de los recursos de investigacion del Estado. Aunque es
apropiado, e incluso un debar, que todo abogado senale
situaciones que pueden compremeter la imparcialidad
que debe caracterizar a los procesos judiciales, quien
entienda que un juez ha actuado con pasion, prejuicio
o parcialidad, debe acurir a un foro superior y

> sustentar sus alegaciones con evidencia
> suficiente, pues estas no deben convertirse en
> un instrumento para ejercer presion contra el
> Tribunal de Primera Instancia. El nivel de
> pasion, prejuicio o parcialidad que hace falta
> demostrar para impugner existosamente las
> determinaciones del foro primario sobre los
> hechos varia de caso a caso pero no es
> necesario probar una violation al Canon XX
> de Etica Judicial. Mas bien, el extandar se
> asemeja el de la Regia 63 de Procedimiento
> Civil pues, mas que una sancion disciplinaria
> contra el juez o la jueza, lo qua se pretende

24a

lograr es que la controversia ante la consid-
eracion del Poder Judicial sea adjudicada con
impercialidad. <u>Davila Nieves v. Melendez
Marin</u>, 197 CPR 750, 775-776 (2013).

En <u>Davila Nieves v. Melendez Marin</u>, <u>id.</u>, conclui-
mos que el juez de instancie obro con prejuicio, pero no
disciplinamos al juez, sino que ordenamos un nuevo
juicio ante otro magistrado.

El licenciado Perez Soto tambien sostiene qua el
Juez Presidente nunca to sancion por presenter las
quejas. Este argumento to repite en cast todos sus
escritos. Sugerir que hizo lo correcto por el hecho de
que el Juez Presidente no to disciplino es, como
minimo, frivolo. Todas las resoluciones que el Juez
Presidente emitio ordenando el archivo definitivo de
las quejas presentadas par el licenciado Perez Soto,
fueron acompanadas de expresiones sabre como el
proceder del licenciado era inapropiado. Se le apercibio
en innumerables ocasiones de que debta abstenerse de
utilizer la via disciplinaria pare relitigar sus casos. De
hecho, aunque el Juez Presidente nunca solicita una
investigacion etica contra el licenciado Perez Soto, este
Tribunal si to llego a sancionar. Aproximadamente
un mes y medio despues de que la Oficina de is
Procuradora General presentara La querella en contra
del licenciado Perez Soto, este presento una queja en
contra de varios abogados de la parte contraria en el
pleito hereditario y de abogadas de la Oficina del
Procurador General. Desestimanos la queja e impusi-
mos una sancion de cinco mil dolares al licenciado
Perez Soto, por frivolidad. Ademas, le advertimos, que
este Tribunal no tolera ese tipo de conducta y que
el incumplimiento con los canones de etica podria
acarrear la suspension del ejercicio de la profesion.

25a

Finalmente, el abogado argumento que la Comision-ada Especial le restringio el derecho a citar testigos e interrogarlos; restringio is duracion de las vistas; limito sus preguntas, y tardo varios meses an rendir su informe, Nada de lo alegado amerita revision en este caso. Como conccluyo la Comisionada, de permit-irsele al licenciado Perez Soto realizar todas las cita-ciones e interrogatorios que el queria, el procedimiento disciplinario se hubiese tornado en is relitigacion de controversias, ya resueltas por los foros con competen-cia y jurisdiccion para ello. Ademas, la forma de interrogar del licenciado Perez Soto fue improcedente y en ocasiones optesiva, y la informcion pertinente podia como parte de is prueba presentada y de los expedientes.

El licenciado Perez Soto tambien exigio que se le permitiera sentarse a declarer. La Comisionada no se lo permitio porque el licenciado Perez Soto no tenia un abogado que pudiera interrogerlo. En cambio, accedio a que este presenters un memorial de Derecho. El licenciado presento una mocion informative- de 292 paginas, en iugar del memorial que se le pidio. En la mocion, "reafirma una y otra vez el contenido de las quejas que fueron archivadas, sin respeto alguno por las decisions emitidas, ya que las considera ilegales e injustas", concluyo la Comisionada.

El licenciado Perez Soto tambien sostuvo que la Comisionada dabs ser disciplinada por conducir un proceso prejuiciado contra el. Aseguro que el informe no discute la manera en que los jueces de los cuales el se quejo lo trataron a el y quo no discute las decisiones judiciales contra el que son erroneas. Asevero que se vio "oblig[ado] a ir en apelacion al Supremo 10 veces donde se dejaron vigentes y se realizaron decisiones por los Tribunales Apelativos que son claramente

26a

ilegales, aunque son finales y firmes". No era necesario que se discutieran los meritos de esas decisiones en las vistas. Incluso, de la propia afirmacion del licenciado se desprende que en diez ocasiones entendimos que eras decisiones de las que el recurrio no eran "claramente ilegales" coma el senate.

En fin, el licenciado Perez Soto incurrio otra vez on el error de querer user el proceso disciplinario para litigar el case de herencia. La Comisionada hizo to correcto al no permitirselo.

## IV

Para determiner la sanction disciplinarian correspondiente, consideramos la buena reputacion del abogado en la comunidad; su historial previo; si esta constituye su primera falta y si alguna parte ha resultedo perjudicada; su aceptacion de la falta y su sincero arrepentimiento; si se trata de una conducta aislada; el animo de lucro que medio en su actuation, y el resarcimiento al cliente, ademas de cualesquiera otras consideraciones.

La Comisionada Especial nos sugiere que consideramos como agravantes la indiferencia y la poca sensilidad que el licenciado Perez Soto ha demostrado hacia los jueces y abogados objeto de sus quejes, ya que continua insistiendo en las mismas imputaciones que fueron archivadas por carecer de meritos. Estamos de acuerdo. La conducta del licenciado Perez Soto demuestra su gran desconfianza en el sistema de justicia y sus jueces, sin base, y nos convence de que este no se encuentra apto pares la practica en los tribunales. Aunque el licenciado Perez Soto no tiene historial previo de conducta antietica, la naturaleza de los eventos par los cuales lo disciplinamos hoy, la cantidad de personas involucradas y el lapso extenso

27a

de tiempo durante el coal su conducta se ha mante-
nido, restan importancia al hecho de que esta sea su
primera sancion etica.

Anteriormente, hemos censuredo a abogados sin
historial previo de conducta antietica por hacer comen-
tarios irrespetuosos. Véanse In re Markus, 158 DPR
881 (2003) (por comentarios hechos contra los jueces
del Tribunal de Apelaciones); In re Barret Rios, 157
DPR 352 (2002) (por comentarios hechos contra el
personal de secretaria del Tribunal); In re Crespo
Enriquez, supra (por user lenguaje irrespetuoso al
referirse a un juez en un escrito al tribunal). Tambien
hemos censurado a abogados energicamente por ate-
ques irrespetuosos de imparcialidad contra on juez.
In re Rivera Garcia, 147 DPR 746 (1999).

En In re Pagan Hernandez, 105 DPR 796 (1977),
suspendimos por seis meses a un abogado por faltas de
respeto similares dirigidas a los jueces de instancia
y e este Tribunal. A ese mismo abogado lo volvimos
a suspender por seis meses al volver a incurrir en
esa conducta. In re Pagan, 116 DPP 107 (1985). En
In re Martinez, Jr., 108 DPR 158 (1978), suspendimos
por tres mesas a un abogado sin previo historial de
conducta antietica que uso lenguaje irrespetuoso Con-
tra el Tribunal, en una solicitud de reconsideracion. A
un abogado que hizo imputaciones infundadas sobre
un romance entre el fiscal y ls victims, aludiendo
que ello prejuicio al fiscal en contra del acusado, lo
suspendimos por dos mesas. In re Velez Cardona, 148
DPR 505 (1999).

En In re Cardona Alvarez, supra, el abogado
disciplinedo tenia una preocupacion legitima y una
creencia de buena fe de que un oficial juridico intervino
en la sentencia a pesar de ser hermano de uno de los
abogados. No Iobstante, el abogado no lo senalo en el

28a

Tribunal de Primera Instancia para qua se aclarara su dude, sino que lo planteo ante nos como parte de la reconsideracion. Aunque esto no fue adecuado, la sancion se limito a una amonestacion. En <u>In re Maros Gonzalez</u>, 149 DPR 817 (1999), tambien amonestamos a on abogado por hacer su cuestionamiento a la honradez de la parte contraria en una mocion ante el tribunal.

El caso del licenciado Perez Soto as distinto a los otros casos que hemos tenido ante nuestra considera-cion. A to largo de su proceso disciplinario, nego todo plenteamiento en su contra y no modifico su postura. Continuo relitigando asuntos del pleito hereditario y de las quejas que presento. Sus imputaciones irrespet-uosas contra jueces y companeros abogados no fueron actos aislados en un momenta de juicio nublado. El licenciado Perez Soto lleva alrededor de una decade litigando la herencia de su padre de una manera que ha sido condenada por practicamente todo juzgador que ha intervenido en el pleito, incluyendo este Tribunal.

Es evidente que una amonestacion, censure o sus-pension temporera no tendrian efecto en el licenciado Perez Soto. Por el contrario, a pesar de haber sido apercibido y sancionado previamente, reproduce en este proceso disciplinario el mismo patron de senal-amientos frivolos, en esta ocasion contra la Comision-ada Especial. Es decir, lejos de mostrar reflexion y arrepentimiento, su conducta refleja temeridad y obstinacion.

Nada del expediente nos sugiere que este tuviese motives fundados pare creer que los jueces conspira-ron prejuiciadamente contra el. El licenciado Perez Soto exponia constantemente los mismos argumentos infundados e insistia en la ilegalidad de decisiones

29a

finales y firmes. A lo largo de todo el litigio y de las
investigaciones eticas gee se hen realizedo en su con-
tra, el abogado no demostro arrepentimiento. Las veces
que presento quejas y recusaciones contra jueces, v se
archivaron, tanto el entonces Juez Presidente como la
Directora Administrative de los Tribunales le aperci-
bieron de que no procedia instar quejas eticas en
contra de jueces par discrepancias con sus determi-
naciones. El licenciado hizo case) omiso de estas
advertencias y se mostro desafiante al repetir los
mismos argumentos inmericorios. Los cánones de etica
profesional no son "armas procesales adicionales a ser
utilizadas para adelentar los intereses particulares de
una de las partes en un caso". In re Fernandez Torres,
122 DPR 859, 861 (1988). El licenciado Perez Soto
utilizo impropiamente estos canones para promover su
postura en un pleito hereditario.

Por consiguiente, decretamos is suspension inmedi-
ata e indefinida del licenciado Perez Soto del ejercicio
de la abogacia. El senor Perez: Soto debera comparecer
ante los tribunales mediante representacion legal para
defender sus intereses en los pleitos relacionados a la
herencia de su padre, notificar a todos sus clientes su
inhabilidad de seguir representandolos e informar
inmediatamente de su suspension a los foros judiciales
y administrativos de Puerto Rico en los que tenga
asuntos pendientes.

Notifiquese personalmente esta Opinion Per Curiam
y Sentencia.

Se dictara Sentencia en conformidad.

30a

EN EL TRIBUNAL SUPREMO OE PUERTO RICO

————

CP-2015-20

————

In re:
Hiram I. Perez Soto

————

SENTENCIA

En San Juan, Puerto Rico, a 24 de abril de 2018.

Por los fundamentos expuestos en Ia Opinion Per Curiam que antecede, la cual se hace formar parte de esta Sentencia, decretamos la suspension inmediata e indefinida del Iicenciado Perez Soto del ejercicio de la abogacia. El senor Perez Soto debera comparecer ante los tribunales mediante representacion legal pares defender sus intereses en los pleitos relacionados a la herencia de su padre notificar a todos sus clientes su inhabilidad de seguir representandolos e informar inmediatamente de su suspension a los fords judiciales y administrativos de Puerto Rico en los quo tenga asuntos pendientes.

Notifiquese personalmente esta Opinion Per Curiam y Sentencia.

Lo acordo el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodriguez no intervino.

/s/ Juan Ernesto Davila Rivera
Juan Ernesto Davila Rivera
Secretario del Tribunal Supremo

31a

La suspencion sera efectiva el <u>26</u> de <u>abril</u> de <u>2018</u> fecha em que se notifico al abogado de su supension inmedi- ata. San Juan, P.R., <u>27</u> de <u>abril</u> del <u>2018</u>.

Por: <u>/s/ [Illegible]</u>
      Secretarioa Auxiliar
      Tribunal Supremo de P.R.

COMMONWEALTH OF PUERTO RICO
GENERAL COURT OF JUSTICE
SUPREME COURT

IN RE:
PÉREZ SOTO, HIRAM I.

CASE NUMBER.... CP-2015-0020
ORIGINAL........... AB-2013-0510
APPEALS.............

PROFESSIONAL CONDUCT
CIVIL ACTION OR CRIME

PÉREZ SOTO, HIRAM I.
VILLA DEL PARANA
51-5 11TH STREET
SAN JUAN, PUERTO RICO 00936

N O T I F I C A T I O N

I CERTIFY THAT IN RELATION TO THE SECOND MOTION FOR RECONSIDERATION THE
COURT ISSUED THE RESOLUTION ENCLOSED HEREIN.

ATTY. RODRIGUEZ LOPEZ, MINNIE H
mirodriguez@justicia.pr.gov

ATTY. GENERAL PROSECUTOR
NOTIFICATIONS.OPG@GMAIL.COM

RIVERA DE MARTÍNEZ, YURI
SPECIAL COMMISSIONER 00

IN SAN JUAN, PUERTO RICO, JUNE 04, 2018.

ATTY. SONNY ISABEL RAMOS ZENO
CLERK OF THE SUPREME COURT, ACTING

By:   s/ YADIRA ORTIZ MERCED
DEPUTY CLERK

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

IN THE SUPREME COURT OF PUERTO RICO

In re:

Hiram I. Pérez Soto     . CP-2015-20 .
(TS-4383)

.............................................     .............................................

PER CURIAM

In San Juan, Puerto Rico, on the 24th of April of 2018.

On December 12, 203, Atty. Enrique Alcaraz Michell

filed a complaint against Atty. Hiram I. Pérez Soto.  In the

same he attributed anti-ethical conduct in the course of a

lawsuit related to the partition of the inheritance of the

father of Attorney Pérez Soto, He alleged that Attorney

Pérez Soto established a pattern of filing complaints against

any attorney or judge that disagreed with him,, and that he

used offensive language against the attorneys of the other

parties.   Having evaluated the complaint, and with the

benefit of the report of the Office of the General Prosecutor

and of the Special Commissioner, we conclude that Attorney

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

2

Pérez Soto violated Cannons 9, 12, 14, 17, 20, 35 and 18 of the Code of Professional Ethics, <u>infra.</u>

I.

Through testament, Mr. Hiram Pérez Beltrán, father of Attorney Pérez Soto, designated as executor, judicial administrator and accountant partirioner his daughter, Mrs. Enid Pérez Soto.  On November 6, 2006, after the death of Mister Pérez Beltrán, Mrs. Pérez Soto requested the issuance in her favor of the letters testamentary.  One year later, Mrs. Pérez Soto and Mr. José Reinaldo Cordero Soto, designated in the testament as a substitute of Mrs. Pérez Soto, filed a joint motion in which Mrs. Pérez Soto resigned to the position and requested the issuance of new letters in favor of Mister Cordero Soto.  Attorney Pérez Soto filed a motion to intervene and oppose the appointment.  The Court of First Instance resolved that the appointment was pertinent.   Not in agreement, Attorney Pérez Soto appealed this ruling, but the Court of Appeals refused to revise.

Subsequently, Attorney Pérez Soto filed on his own a complaint regarding the partition of the inheritance and the annulment of certain transactions with

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

3

the Estate of his father.  The Court of First Instance denied the request for representation on his own. The Court of Appeals refused to review and emphasized in its resolution that the protagonistic conduct displayed by the Attorney in the litigation "hindered the orderly litigation" and demonstrated "an obvious emotional involvement with his claims and against his relatives, who consider that they pursue him in a familiar manner."  Attorney Pérez Soto filed before us a petition for certiorari to review the determination of the Court of Appeals.  We provided a Denied, an act which for the attorney "entailed a violation of the standard of Stare Decisis", as stated in aletter sent to the then Presiding Judge, Hon. Federico Hernández Denton.

Despite the fact that the determination became final and binding, Attorney Pérez Soto continued to appear on his own at the action.  Furthermore, he initiated a pattern of presenting ethical complaints and accusations against the attorneys and judges that intervened in an advecerse manner to his interests in the action.  As a result of this Attorney Alcaraz Micheli, who represented the other party in the action, filed an ethical complaint against Attorney Pérez Soto which we remitted to the Office of the General Prosecutor for investigation and report.

**Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488**

4

We proceed to state, as appears from the Report of the Office of the General Prosecutor and its appendixes, the ethical complaints and recusals that Attorney Pérez Soto filed:

1.  Complaint against Hon. María Adaljisa Dávila Vélez, for alleged prejudice and partiality by denying his request for representation on his own.  The filing of the complaint was ordered.  Hon. Sonia I. Vélez Colón, then Administrative Director of the Courts, concluded that the judge did not incur in any violation whatsoever and emphasized that her Office could not intervene with judicial decisions in the absence of ethical violations.  Hon. Hernández Denton, then Presiding Judge, confirmed the determination of filing the complaint.  He stated in his resolution that the allegations of Attorney Pérez Soto "lacked any justified basis" and that "it does not appear from the file of the case any basis whatsoever for the initiation of a disciplinary process" against the Judge.

2.  Complaint against Hon. Israel Hernández González, who was assigned the complaint regarding the inheritance after Judge Dávila Vélez inhibited himself as a result of the complaint filed

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

5

against him.  Attorney Pérez Soto stated that he was not in agreement with certain judicial determinations made by Judge Hernández González and argued that he acted in a negligent and biased manner.  The Administrative Director of the Courts ordered the filing of the complaint.  He clarified that the judicial determinations, even if they are erroneous, do not constitute sufficient basis for a complaint unless it is demonstrated that there was an intentional abuse of the judicial discretion.  The Presiding Judge confirmed and ordered the definitive filing of the complaint. Even though he advised that the request for reconsideration was tardily presented, he expressed himself about the merits of the complaint.  He stated that the complaint is limited to questioning the judicial determinations of the judge - and of other judges and not to stating a conduct that constitutes an ethical violation. "[T]he judicial determinations in controversy are not errors of such a magnitude that reflect a conduct that is improper or of favoritism towards a litigant [...]".

**Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488**

6

3.     Complaint against the panel of the Court of Appeals comprised by Hon. Emmalind García García, Hon. Aleida Varona Méndez and Hon. María del C. Gómez Córdova.  Attorney Pérez Soto alleged that the judges of the panel incurred in a gross negligence and caused damages to the judicial process by dismissing his appeal summarily based on the fact that he did not notify the parties within the regulatory term because he deposited it in a private mail.  The Administrative Director of the Courts ordered the filing of the complaint, because it was limited to impugning a judicial determination.  The Attorney again filed the request for reconsideration in a tardy manner and the Presiding Judge again issued a statement.  He stated that "Attorney Pérez Soto again limits himself to impugning the judicial determinations of the aforementioned panel of the Court of Appeals and of other judges which have also been object to other complaints filed by him, and not to stating conduct that constitutes a violation of the canons of Ethics."  The Administrative Director as well as the Presiding Judge

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

7

stated that the remedy that Attorney Pérez Soto had at his disposal was to resort to the corresponding appellate forum, as he in effect did, but the presentation of complaints was inadmissible.

4.   Recusal of the panel of the Court of Appeals comprised by Hon. Emmalind García García, Hon. Aleida Varona Méndez and Hon. María del C. Gómez Córdova.   Attorney Pérez Soto indicated: "We have a reasonable basis to believe that the Appellate Court in  its dismissal did not do this in good faith or with gross negligence [...].   It realized this with prejudice.   We complaint before the Panel.   The Presiding Judge is of the opinion that due to judicial decisions one cannot discipline a Judge or a panel.   We believe that he is mistaken [...].   The Panel should have inhibited itself from seeing the Appeal after my Complaint and that the Supreme revoke it with a subtle criticism to the arbitrariness of its decision."   A special panel Denied the motion for recusal.   The special panel understood that there was no valid basis for the petition for inhibition, just its clear dissatisfaction with the pronunciations of the instant form and the appellate forum.

**Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488**

8

5.     Complaint against the panel of the Court of Appeals comprised by Hon. Aida Nieves Figueroa, Hon. Carmen H. Carlos Cabrera and Hon. Troadio González Vargas, for alleged delay in attending an appeal. The Administrative Director ordered the filing of the complaint and advised the Counselor that the mere delay did not warrant resorting to a disciplinary hearing and that from the file there did not appear any improper conduct by these Judges. Attorney Pérez Soto filed a motion for reconsideration that was denied for being tardy. In addition to the complaint, the Attorney also filed a request for mandamus before this court so that it would order the panel to resolve the case in forty five days. From the twenty two pages of the request, only a few paragraphs are dedicated to the figure of the mandamus and to explaining why it should be issued. The rest of the document is addressed to relitigating matters already resolved and to trying to convince the court of the alleged prejudice of the judges and of the lies and lack of respect of the other attorneys. We deny the petition for mandamus.

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

9

6. Complaint against the panel of the Court of Appeals comprised by Hon. Gretchen Coll Martí, Hon. Nélida Jiménez Velázquez and Hon. Ivelisse Domínguez Irizarry. Attorney Pérez Soto alleged to have sufficient basis to believe that the panel acted with prejudice and partiality by confirming a judgment of the primary forum. The Administrative Director of the Courts concluded that the complaint dealt with a judicial determination that was out of its disciplinary jurisdiction and ordered that it be filed. The Attorney tardily requested its reconsideration to the Presiding Judge, who advised that he had lost jurisdiction to review the complaint. Nevertheless, he stated that the complaint again impugns the juridical basis of the panel as well as the determinations of other judgments that have also been object of complaints by the Attorney. He added that Attorney Pérez Soto could also not allege that the errors of the panel were of such a great magnitude when he himself alleged that the controversy was novel. Finally, he reiterated that the disciplinary process was not an appellate mechanism and he ordered the definitive filing.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

7.  Recusal of Hon. Ricardo G. Marrero Guerrero, who dismissed a complaint of Attorney Pérez Soto so that he decree the nullification of two adverse partial judgments.  In that judgment, Judge Marrero Guerrero also imposed on Attorney Pérez Soto the payment of the costs of the litigation and of Three Thousand Dollars in fees for his temerity.  Hon. Miguel P. Cancio Bigas denied the request for recusal.  He explained that nothing in the file sustained the allegation of prejudice, since Judge Marrero Guerrero resolved in light of the right that he understood was applicable.  In view of this panorama, Attorney Pérez Soto had the mechanisms for review and appeal available, but not that of a recusal.

8.  Recusal of Hon. Antonio R. Negrón Villardefrancos, after this judge required that Attorney Pérez Soto not act as his own attorney.  Hon. Rafael Rodríguez Olmo denied the request for recusal since he understood that Attorney Pérez Soto did not prove his allegation of prejudice or partiality.  Attorney Pérez Soto resorted of this determination to the Court of Appeals.  As he usually does, he took

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.723.4644/ 787.225.8218
Fax: 787.723.9488

11

advantage of his appearance before the appellate forum to relitigate matters already adjudicated in the inheritance action and again complained about the alleged insults and anti-ethical conducts by the attorneys of the other party and of the prejudice that he understood that the judges that have intervened in the case have displayed.  Instead of providing concrete reasons for which Judge Negrón Villardefrancos could be recused from the case, Attorney Pérez Soto insisted that a number of sentences issued against him were illegal and were prejudiced.  All of this was impertinent to attend the matter of the recusal of Judge Negrón Villardefrancos.  The Court of Appeals denied the writ requested. It mentioned that Attorney Pérez Soto did not obey the directive of not participating on his own and stated that the personal involvement of the attorney in the action made it difficult for him to act in a dispassionate and professional manner.

9.      Recusal of Hon. Enrique Pérez Acosta, where Attorney Pérez Soto stated that the judge resolved against him because he was

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

12

influenced by the complaints against other judges.  According to

Attorney Pérez Soto, the judge acted with "a judicial comradeship

that was erroneous and adhered to judicial ethics".  Hon. Arlene De

L. Selles Guerin denied the Motion and resolved, after hearing the

recording of the hearing, that Judge Pérez Acosta did not act with

prejudice against Attorney Pérez Soto and that the attorney had

the opportunity to cross-examine the witnesses.  She also stated

that the Judge had the to call the attention of the attorney on

three occasions due to the language used when he said that the

executor pretended to "perpetuate himself in the power".  He was

advised that if he was not in agreement with what was resolved by

Judge Pérez Acosta, the appropriate mechanism for the review was

the reconsideration, which the attorney also did.

10.     Complaint against Attorneys Luis E. Laguna Mimoso, Enrique

Alcaraz Micheli, Patricia Cordero Alcaraz, Edna E. Pérez Román, Eli

Galarza Rivera and Fernando J. Gierbolini, who are the attorneys

of other parties in the inheritance litigation.  According to Attorney

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

13

Pérez Soto, these attorneys did not treat him with respect and courtesy, they sent him to shut up, they insulted him and they insisted that he was not emotionally and intellectually qualified for the litigation.  The report of the Office of the General Prosecutor recommended the dismissal of the complaint.  It was emphasized that it had been precisely Attorney Pérez Soto who has hindered the proceedings.  He also stated that it is unacceptable that, through the disciplinary procedure, Attorney Pérez Soto attempt to decide the legitimacy of his claims before the primary forum in the inheritance action.  Having examined the report and the answer of Attorney Pérez Soto, we order the filing of the complaint.

11.   Request for the disqualification of Attorneys Luis E. Laguna Mimoso, Enrique Alcaraz Micheli and Patricia Cordero Alcaraz. Hon. María del Carmen Garriga Morales denied the same.  Even though she recognized that the language used by Attorney Laguna Mimoso during the taking of a deposition was spirited, she concluded it was not so improper as to justify disqualifying him from an action so developed.  Furthermore, she indicated that it seems to have been

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

14

Attorney Pérez Soto himself who propitiated this dynamic during the deposition.

The report of the Office of the General Prosecutor also stated several improper statements that Attorney Pérez Soto had made in his writs. We provide some samples: "I do not see h[o]w the Panel could decide in this manner and respect itself." Page 14 of the Petition for Certiorari filed on March 31, 2014 in KLCE 2014-041 "[The Judge] issued a null consultive opinion. The Court says that it was not consultive. If it was not consultive, what was it?" Page 7 of the Motion for reconsideration and of inhibition filed on November 12, 2013 in KAC2012-0840. "The third Judge of the CFI continued to act to cause me damages". Id,. page 20. "The opposing attorneys knowing the problem that I got into with the judges due to the complaints consistently make frivolous allegations, lying, knowing that they are not going to be sanctioned." Id., page 25. "The case of the lie and distortion is the practice of the attorney(s) of Cordero Soto [...]. I am made the decision [end] this practice [....]. I have never lied, that they prove it. I can prove that the attorneys of Cordero Soto have lied repeatedly they do not respect themselves nor the Courts of Justice". Page 3 of the Motion in answer to the reply to the motion for reconsideration

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

15

filed on November 20, 2013 in KAC2012-0840. "[The Judge] said other false things in his decision [...]. He did not read the documents of the appendix [...], he dedicated himself to paraphrasing the writs of the appellees that contained incorrect information [...]", Page 7 of the Letter of Atty. Hiram Pérez Soto to Hon. Federico Hernández Denton, June 12, 2009.

These statements are representatives of the tone that the attorney generally maintains in his documents. With frequency, he called the attorneys of the other party vile, liars and slanderers; he said that the court decided in a negligent manner and without competent juridical studies, and that there was "judicial friendship" between the judges.

The Office of the General Prosecutor concluded in his report that there was clear, robust and convincing evidence that Attorney Pérez Soto could have violated Canons 9, 12, 15, 17, 29, 35 and 38 of the Code of Professional Ethics, 4 LPRA App. IX. Pursuant to the report rendered, we ordered the General Prosecutor to present the corresponding complaint. Subsequently, we named Hon. Ygrí Rivera de Martínez so that, in the presence of the parties and in the capacity of Special Commissioner, she receive evidence, hold hearings and submit a report to us with the findings of fact and the recommendations that she

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

16

deemed pertinent.  Se concluded that all of the charges formulated by the

General Prosecutor were proven.  For the reasons that we present hereinafter,

we are in agreement:

II.

A.    Canons 9 and 12

Charges I and II attributed a violation of Canons 9 and 12 of the Code of

Professional Ethics, <u>supra</u>, for the unjustified attacks against the judges that

intervened in the matters related to the inheritance of the father of the

promoting attorney, which caused unnecessary delays in the rapid solution of

the matter.

Canon 9 requires that the attorneys "observe with the courts a conduct

that is characterized by the greatest respect" and to "discourage and prevent

unjustified attacks or illegal attempts against the judges or against the proper

order in the administration of justice in the courts".  This duty "includes also the

obligation to take the measures that may be pertinent pursuant to the law

against judicial officials who abuse their prerogatives or improperly perform their

functions and that do not observe a courteous and respectful attitude." <u>Id.</u>  We

have stated that the timely judicial criticism is effective so that the attorneys will

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

17

contribute to the courts complying with their functions, but this must be done with respect and deference.   In re Crespo Enríquez, 147 DPR 656, 662-663 (1999).  An attorney should not make accusations about the work of a judge that are not validated with conclusive and indubitable evidence. Id., page 663. An attorney should not infringe the boundaries of the truth in the course of his criticism, because a false, unjustified and vicious criticism hinders the impartial and upright administration  of justice. In re Andréu Ribas, 81 DPR 90, 120 (1959).  Therefore, the conduct of the attorney that constantly resorts to the indication that the court acted with prejudice, passion and partiality, without substantiating it or without sufficient grounds to believe this is censurable.  In re Cardona Álvarez, 116 DPR 895, 907 (1986).  It is important to remember that acting with passion and prejudice exceeds the mere error of the judger, it involves the knowledgeable lack of compliance of the duty of honesty of the conscience.  Cordero v. Rivera, 74 DPR 566, 609 (1953).

Therefore, we do not justify the oral or written language that questions the honesty and equanimity of the judge, even if his judicial action is incorrect and subsequently revoked.  In Re Pagán, 116 DPR 107, 111-112 (1985).  "The

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

18

discrepancies with the judicial rulings are [not] a license for improper and injurious language." Id., page 111.

As a general rules, judges cannot be submitted to a disciplinary procedure merely  for applying or erroneously interpreting the facts or the law in a particular case. See, In re Velázquez Hernández, 162 DPR 316 (2004); In re Cruz Ponte, 159 DPR 170 (2003).  "[An error of judgment is not equal to negligence nor absolute disregard of the law. When committing said errors, the party adversely affected is entitled to the ordinary procedure of judicial review". In re Hon. Diaz García, C.F.I., 158 DPR 549, 557-558, (2003).  "The judicial behavior that in any manner affects the rights of a [...] litigant can be taken to the record for the corrective active that is pertinent, by a superior court, pursuant to what should be an impartial and fair trial".  Pueblo v. Cession, 81 DPR 124, 154 (1959).

It is not sufficient to lay the foundations that the law was erroneously applied to demonstrate that the judicial determination was addressed to unduly favoring one of the parties, nor either to reflect improper conduct or favoritism towards a particular litigant.  Pursuant to Rule 3 of Judicial Discipline, 4 LPRA

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

19

App. XV-B, the scope of the aforementioned process is circumscribed to assumptions where the judge is attributed with having violated the law, the Canons of Judicial Ethics, the Code of Professional Ethics, the orders and the administrative standards applicable, or having incurred in gross negligence, inability or professional incompetence manifested in his judicial duties.  An ethical violation is only configured if evidence is presented that the error committed constituted an intentional abuse of the judicial discretion, or an error which by its magnitude reflects improper conduct or favoritism towards a particular litigant or attorney.  In re Hon. Diaz García, C.F.I., supra; Feliciano Rosado v. Matos, Jr., 110 DPR 550 (1981).

Without any doubt, Attorney Pérez Soto violated Canon 9.  His accusations against the judges, in addition to using a disrespectful language, demonstrated to all be unjustified.  The attorney did not sustain with conclusive evidence his allegations of prejudice, since he merely resorted to this allegation almost like an automaton every time that a judge resolved against him.

On the other hand, Canon 12 establishes that:

[i]t is the duty of the attorney towards the courts, his companions, the parties and witnesses to be punctual in his attendance and

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

20

concise and exact in the processing and presentation of the causes.  This implies displaying all of the necessary diligences to be sure that he is not caused improper delays in their processing and solution.

As a corollary to the duty stated in this canon, the conduct of an attorney should not hinder the resolution of the case.  Nevertheless, neither the report of the General Prosecutor nor the Report of the Special Commissioner detail the manners in which the pattern of Attorney Pérez Soto of presenting complaints delayed the inheritance action.  The procedural process of the ethical complaints presented by Attorney Pérez Soto occurred at the margin of the inheritance action.  On the other hand, in relation to the requests for recusal and inhibition against judges, that require the appointment of special panels for their attention, we resolve that Attorney Pérez Soto violated Canon 12, since he detained the process of the action for inheritance on multiple occasions by presenting immeritorious recusals.

B.  Canon 15

Charge III attributed a violation to Canon 15 of the Code of Professional Ethics, supra, for not complying with the obligation to observe a respectful and considerate treatment towards the adverse party and not using the legal

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

21

proceedings in an unreasonable manner or in order to harass the opposing party.

Canon 15 imposes on the attorneys the duty of respect towards the opposing parties. It also provides that it will be improper to use the legal proceedings in an unreasonable manner or for the purpose of harassing the opposing party. We resolve that Attorney Pérez Soto violated Code 15 by continuously filing unnecessarily long, repetitive and unfounded motions, regarding matters already settled in a final and binding manner. His actions were not reasonable nor respectful, and bordered on harassment to the opposing parties. We also condemn the oppressive methodology of interrogation that the Attorney used during the hearing of this disciplinary process, by requesting that the witnesses read out loud all of the extensive documents to then ask questions about specific details that they could not remember.

C. Canon 17

Charge IV attributed a violation of Canon 17 of the Code of Professional Ethics, <u>supra</u>, that prohibits the presentation of unjustified lawsuits, due to the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

22

repetitive pattern of presenting immeritorious complaints against judges and attorneys..

In essence, Canon 17 seeks to avoid unjustified litigation. It establishes that the appearance of an attorney before a court is equal to an affirmation that the case of his client is one worthy of judicial sanction.  When an attorney signs an allegation, he certifies that the information in the same is well founded, according to the best of his knowledge.

The evidence demonstrated that the attorney presented a large amount of complaints and recusals that lacked merit. Despite the fact that his arguments were repetitively refuted, Attorney Pérez Soto insisted on the same.  The filing of frivolous complaints and motions promotes the unjustified litigation and unnecessarily uses the resources of the courts and of the Office of the  General Prosecutor.

D.  Canon 29

Charge V attributed a violation of Canon 29 of the Code of Professional Ethics, supra, when acting in a personal manner and with animosity against the opposing party in the processing of the case, hindering with this the solution of

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

23

the same.  Said conduct was evidenced in the ethical complaints that the attorney filed against the attorneys of the opposing party.

Canon 29 states that "[t]here should be scrupulously avoided any personal issue among the attorneys".  It also prohibits that false allegations be made that affect the good name and reputation of another colleague of the profession.  The violation of this canon is evident, since there were multiple false allegations made by the attorney, that could affect the reputation of all of the attorneys of the opposing party, of the intervening judges and of the attorneys of the Office of the General Prosecutor that investigated the complaint.  When these allegations were made, Attorney Pérez Soto insisted that the other attorneys and judges acted with prejudice and viciously lied. The attorney ignored the fact that all of his claims were filed.  His obstinacy with regard to this is an indication of personal issues against these attorneys, and of disregard to their reputation and good name.

E.    Canons 35 and 38

Charges VI and VII alleged a violation of Canons 35 and 38 of the Code of Professional Ethics, supra, by not complying wit the duties of exalting the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

24

honor and the dignity of the profession, and by not incurring in improper conduct or the appearance of the same.  The charge condemns that, with his pattern of constantly presenting complaints, Attorney Pérez Soto demonstrated a deviation of his duty to exalt the honor of the profession, since he was not truthful nor sincere when making accusations that lacked the evidence to sustain the same.

Canon 35 provides that the conduct of any member of the legal profession must be sincere and hones in front of clients, colleague attorneys and the courts.  In re Molina Oliveras, 188 DPR 547, 554 (2013).  Using methods that are inconsistent with the truth or induce the judger to error through a false statement of the facts or of the law, is not sincere nor honest.  It is also improper to distort the juridical citations to transmit an idea that is different to the one that the true context establishes.

The conduct of Attorney Pérez Soto is not sincere nor honest. The facts that he narrated in the complaints that he presented did not warrant credibility by any of the judgers that evaluated the same.   He branded as reasonable basis" facts that did not give rise to anything more than a mere suspicion.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

25

Attorney Pérez Soto also argued that the Presiding Judge took disciplinary measures directly and indirectly against the judges against whom he complained.  That is how he pretended to justify the multiple complaints that he presented against them.   Nevertheless, he ignored that all of the resolutions in which the Presiding Judge ordered the definitive filing of the complaints, were accompanied by statements that discredited the actions of the Attorney.  This is not sincere nor honest.

Nevertheless, it is with regard to his relationship with the law which without doubt he has pretended to induce the judgers to error.   Too often, Attorney Pérez Soto relied on non-existent jurisprudence. or distorted the one that existed, to argue points of law that had no merit.

Canon 38 provides that "an attorney must make an effort, to the maximum of his capacity, in the exaltation of the honor and the dignity of his profession, even if doing so entails a personal sacrifice [...]".  A conduct violates this canon when it is contrary to the principal values of the profession -the dignity and the honor- and affects the moral conditions of the attorney, in such a manner that it makes him unworthy of belonging to the forum.   In re Rodríguez López, 196 DPR 199, 208 (2016); In re Reyes Laureano, 190 DPR

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

26

739, 758 (2014).  The pattern of conduct of Attorney Pérez Soto violates this

canon.   The attorney has made an effort to promote his position in the

inheritance action, including in detriment to the dignity and the good practices

of the profession.  Far from being willing to incur in personal sacrifices when it

is necessary to exalt  the honor of the profession, the obstinacy of Attorney

Pérez Soto demonstrated that he does not pretend to yield anything.

It is pertinent to also state that Canon 38 promotes that the attorneys, in

benefit of the profession, valiantly denounce any corrupt or dishonest conduct

of another colleague or judicial official.  The conduct of Attorney Pérez Soto is

beyond this exhortation.   The different judgers of the complaints filed by

Attorney Pérez Soto determined that these complaints were not geared to

correcting corrupt or dishonest conduct.   Nor did the complaints promote a

benefit to the profession.  Attorney Pérez Soto repeated the arguments that he

lost in the litigation, as a new opportunity to advance his interests in the case.

III

The arguments of Attorney Pérez Soto in response to the allegations

against him warrant special attention.   He alleges that the hereditary action

**Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488**

27

became hostile against him  as of the inhibition of Judge Dávila Vélez as a result of the complaint that he presented against the Magistrate.  According to him, the attorneys of the other parties promoted the hostility of the judges against him, with their constant references to the complaints that he filed against the judges.  Thus, he alleges that the friendship among the judges prejudged the inheritance action against him.  According to Attorney Pérez Soto, the attorneys of the other parties  too advantage of the prejudice against him to present frivolous and incorrect motions pursuant to law.  As a result of this, he sustains that many illegal judgments were issued.

Attorney Pérez Soto avers that he was forced to file complaints and recusals because the appellate resources did not bear fruit or the judges that attended them were also prejudiced.  Attorney Pérez Soto sustains that, according to the standard of Lizarribar v. Martínez Gelpí, 121 DPR 770 (1988), Judge Dávila Vélez did not have discretion to disqualify him if he behaved with decorum and respect.   Even though common sense - and not the standard of Lizarribar, id., - dictates that a person that behaves in a disrespectful manner may not represent himself on his own, to act with respect and decorum does not

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

28

guarantee that this type of representation will be granted nor does it limit the discretion of the evaluating judge.  It requires establishing a balance between the interests of the  parties and the efficiency in the administration of justice, according to the particular circumstances of the case.  Among other factors, the effect that the interruption of the proceedings would have is evaluated.  In this case, the Court of Appeals stated that Attorney Pérez Soto  hindered the orderly litigation and demonstrated an emotional burden with his claims and against his relatives.   Given the circumstances, it was reasonable that the request for representation on his own right be denied.

Attorney Pérez Soto alleged that he is entitled and has the duty to present complaints provided they are with a reasonable basis and respect; that this is part of his civil rights and his freedom of expression. He stated that all of his complaints complied with the standard of In re Cardona Álvarez, supra, which were constitutionally protected and that the contrary would be a prior censorship.  Nevertheless, in In Re Cardona Álvarez, supra, we condemned the conduct of an attorney who "was accustom[ed] to making allegations of prejudice and partiality to the Judges every time that he lack[ed] a legal basis

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

29

to sustain his allegations". Id., page 900. To evaluate the legitimacy of the accusations that an attorney makes against a judge, we consider if the attorney: (a) even if mistaken, believed in the validity of the accusations; (b) had sufficient motive or probable cause to believe in its veracity, even if the facts were not true, and (c) did not make the accusation maliciously for the purpose of belittling the court. Id., page 906. We also stated that an attorney should avoid "the employment of accusations and of fats that are foreign or useless to the matter and, above all, the allegations that are contrary to the truth and do not have a **reasonable presumption of precision."** Id., page 897. For this, we repudiate any accusation that is not supported by **competent evidence and justified reasons** and that tend to degrade the dignity, honorability and integrity of the courts or their officials. Id., page 906-907. "Nothing more destructive of the fair balance of the judicial conscience, than the **unjustified and vicious** criticism." Id., page 905.

In light of our pronouncements in In re Cardona Álvarez, id., the complaints that Attorney Pérez Soto presented are not meritorious. They only resulted in unnecessary inconvenience and in the unjustified utilization of the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

30

investigative resources of the State.  Even though it is appropriate, and even a

duty, that every attorney state situations that can compromise the impartiality

that should characterize the judicial processes, whoever understands that a

judge has acted with passion, prejudice or partiality, should resort to a superior

forum and

> sustain their allegations with sufficient evidence, since these should not become an instrument to exercise pressure against the Court of First Instance.  The level of passion, prejudice or partiality that needs to be demonstrated to successfully impugn the determinations of the primary forum over the facts varies from case to case, but it is not necessary to prove a violation to Canon XX of Judicial Ethics.   Moreover, the standard is similar to that of Rule 63 of Civil Procedure since, more than a disciplinary sanction against the male or female judge, what it pretends to achieve is that the controversy before the consideration of the Judicial Power be adjudicated with impartiality. Dávila Nieves v. Meléndez Marin, 187 DPR 750, 775-776 (2013).

In Dávila Nieves v. Meléndez Marin, id., we concluded that the judge of

first instance acted with prejudice, but we did not discipline the judge, we

merely ordered a new trial before another magistrate.

Attorney Pérez Soto also sustains that the Presiding Judge never

sanctioned him for filing the complaints.  He repeats this argument in almost all

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

31

of his documents.  To suggest that he did the correct thing because of the fact

that the Presiding Judge did not discipline him is, at a minimum, frivolous.  All

of the resolutions that the Presiding Judge issued ordering the **definitive**

**dismissal** of the complaints filed by Attorney Pérez Soto, were accompanied by

statements about how the procedure of the attorney was inappropriate.  He was

advised on numerous occasions that he should abstain from using the

disciplinary method to relitigate his cases.  In fact, even though the Presiding

Judge never requested an ethical investigation against Attorney Pérez Soto, the

Court did sanction him.  Approximately one month and a half after the Office of

the General Prosecutor filed the complaint against Attorney Pérez Soto, he filed

a complaint against several attorneys of the opposing party in the inheritance

action and of attorneys of the Office of the General Prosecutor.  We dismissed

the complaint and imposed a sanction of Five Thousand Dollars to Attorney

Pérez Soto, for frivolity.  Additionally, we advised him that this Court does not

tolerate this type of conduct and that the default of the canons of ethics could

entail he suspension of the exercise of the profession.

Finally, the attorney argued that the Special Commissioner restricted his

right to summon witnesses and cross examine them; restricted the duration of

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

32

the hearings; limited his questions and took several months in rendering her report.  Nothing of what is alleged warrants a review in this forum.  As the Commissioner concluded, if Attorney Pérez Soto were allowed to make all of the summons and interrogatories that he wanted, the disciplinary procedure would have become a relitigation of controversies already resolved by the forums with competence and jurisdiction for this.  Furthermore, the form of interrogation of Attorney Pérez Soto was improper and on occasions oppressive, and the pertinent information could be obtained as part of the evidence presented and from the files.

Attorney Pérez Soto also demanded that he be allowed to sit to testify. The Female Commissioner did not allow him because Attorney Pérez Soto did not have an attorney that could cross examine him.  In exchange, she agreed that he present a Memorandum of Law.  The attorney presented an informative motion of 292 pages, instead of the Memorandum that he was requested. In the motion "he reaffirms once and again the contents of the complaints that were filed, without any respect for the decisions issued, since he considers them illegal and unfair", concluded the Female Commissioner.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

33

Attorney Pérez Soto also sustained that the Female Commissioner should be disciplined for conducting a process that was prejudiced against him. He assured that the report does not discuss the manner in which the judges which he complained of treated him and that he does not discuss the judicial decisions against him that are erroneous. He averred that he was "oblig[ated] to go on appeal to the Supreme Court 10 times where there were left in effect and there were made decisions by the Appeal Courts that are clearly illegal, even though they are final and binding." It was not necessary to discuss the merits of these decisions at the hearing. In fact, from the affirmation itself of the Attorney it appears that on ten occasions we understood that these decisions that he appealed were not "clearly illegal" as he states.

In short, Attorney Pérez Soto incurred again in the error of wanting to use the disciplinary process to litigate the inheritance case. The Female Commissioner did what was correct by not allowing it.

IV.

To determine the corresponding disciplinary sanction, we consider the good reputation of the attorney in the community; his prior history; if this

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

34

constitutes his first offense and if any party has been prejudiced; his acceptance

of the fault and his sincere repentance; if it involves an isolated conduct; the

profit that mediated in his action, and the compensation to the client, in addition

to any other considerations.

The Special Commissioner suggests that we consider as aggravations the

indifference and the scant sensibility that Attorney Pérez Soto has demonstrated

towards the judgments and the attorneys object of his complaints, since he

continues to insist on the same allegations that were filed because they lacked

merit.  We are in agreement.  The conduct of Attorney Pérez Soto demonstrates

his great lack of confidence in the system of justice and its judges, without

basis, and convinces us that the is not suitable to practice in the courts.  Even

though Attorney Pérez Soto does not have a prior history of anti-ethical conduct,

the nature of the events for which we discipline him today, the amount of

persons involved and the extensive lapse of time during which his conduct has

been maintained, detract importance from the fact that this is his first ethical

sanction.

We had previously censured attorneys without a prior history of anti-

ethical conduct for making disrespectful comments.  See In re Markus, 158 DPR

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

35

881 (2003) (for comments made against the judges of the Court of Appeals); In re Barreto Ríos, 157 DPR 352 (2002) (for comments made against the personnel of the clerk of the Court); In re Crespo Enríquez, supra, (for using disrespectful language when referring to a judge in a document to the court).  We have also energetically censured attorneys for disrespectful attacks of impartiality against a judge. In re Rivera García, 147 DPR 746 (1999).

In In re Pagán Hernández, 105 DPR 796 (1977), we suspended an attorney for six months for similar acts of lack of respect addressed to the judges of the instance court and to this Court.  We again suspended this same attorney for six months when he again incurred in this conduct.  In re Pagán, 116 DPR 107 (1985).  In In re Martínez, Jr., 108 DPR 158 (1978), we suspended for three months an attorney without a prior history of anti-ethical conduct since he used disrespectful language against the Court in a request for reconsideration.  An attorney who made unfounded allegations regarding a romance between the district attorney and the victim, alluding that this prejudiced the district attorney against the accused, we suspended him for two months.  In re Vélez Cardona, 148 DPR 505 (1999).

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

36

In <u>In re Cardona Alvarez</u>, <u>supra</u>, the disciplined attorney had a legitimate concern and a good faith belief that a juridical official intervened in the judgment despite his being a brother of one of the attorneys.  Nevertheless, the attorney did not state this in the Court of First Instance so that his doubt would be clarified, but he alleged this before us as part of the reconsideration.  Even though this was not adequate, the sanction was limited to a warning.  In <u>In re Matos González,</u> 149 DPR 817 (1999), we also admonished an attorney for questioning the honesty of the opposing party in a motion before the court.

The case of Attorney Pérez Soto is different to the other cases that we have had before our consideration. Throughout his disciplinary process he denied every allegation against him and did not modify his position.  He continued to reiterate matters of the inheritance action and of the complaints that he filed.  His disrespectful allegations against judgments and fellow attorneys were not isolated acts in a moment of nebulous judgment.  Attorney Pérez Soto has been litigating for around a decade the inheritance of his father in a manner that has been condemned by practically every judge that has intervened in the action, including this Court.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

37

It is evident that a threat, censure or a temporary suspension would have no effect on Attorney Pérez Soto.  On the contrary, despite having been previously admonished and sanctioned, he reproduced in this disciplinary process the same pattern of frivolous allegations, on this occasion against the Special Female Commissioner.  That is, far from demonstrating reflection and remorse, his conduct reflects temerity and obstinacy.

Nothing from the file suggests to us that he had sufficient motive to believe that the judges conspired with prejudice against him.  Attorney Pérez Soto constantly stated the same unfounded arguments and insisted on the illegality of the final and binding decisions.  Throughout the entire litigation and the ethical investigations that have been made against him, the attorney did not demonstrate repentance.  The times that he presented complaints and recusals against judges, and they were filed, the then Presiding Judge as well as by the Administrative Director of the Courts advised him that it was not pertinent to file ethical complaints against judges because of discrepancies with their determinations.  The Attorney ignored these admonishments and was defiant in repeating the same immeritorious arguments.  The professional codes of ethics

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488

38

are not "additional procedural weapons to be used to advance the particular interests of one of the parties in a case." <u>In re Fernández Torres</u>, 122 DPR 859, 861 (1988).  Attorney Pérez Soto improperly used these canons to promote his position in an inheritance litigation.

Subsequently, we decree the immediate and indefinite suspension of Attorney Pérez Soto from the exercise of law.  Mister Pérez Soto must appear before the courts through legal representation to defend his interests in the actions related to the inheritance of his father, notify all of his clients of his inability to continue to represent them and immediately inform his suspension to the judicial and administrative forums of Puerto Rico in which he has mattes pending.

Personally notify this Per Curiam Opinion and Judgment.

Judgment will be issued accordingly.

**Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488**

IN THE SUPREME COURT OF PUERTO RICO

In re:                                        .                    .
                                              .                    .
Hiram I. Pérez Soto                    . CP-2015-20 .
                                              .                    .
                                              .                    .
                                              .                    .
.............................................                    ...........................................

JUDGMENT

In San Juan, Puerto Rico, April 14, 2018.

In view of the ground stated in the preceding Per Curiam Opinion, which is made to form part of this Judgment, we decree the immediate and indefinite suspension of Attorney Pérez Soto fro the exercise of law. Mister Pérez Soto must appear before the courts through legal representation to defend his interests in the actions related to the inheritance of his father, notify all of his clients of his inability to continue to represent them and immediately inform his suspension to the judicial and administrative forums of Puerto Rico in which he has matters pending.

Personally notify this Per Curiam Opinion and Judgment.

This was agreed by the Court and certified by the Clerk of the Supreme Court. Presiding Justice Oronoz Rodríguez did not intervene.

s/illegible
Juan Ernesto Dávila Rivera
Secretary of the Supreme Court

The suspension will be effective on April 26, 2018, the date in which the attorney was notified of his immediate suspension. San Juan, P.R., April 27, 2018.,

By:        s/illegible
Deputy Clerk
Superior Court of P.R

**Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488**

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488