# EXHIBIT LL

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
 2     _____
                                  )
 3    In re:                      )
      THE FINANCIAL OVERSIGHT AND  )
 4    MANAGEMENT BOARD FOR PUERTO  )
      RICO,                       )      PROMESA Title III
 5                                )    Case No. 17 BK 3283(LTS)
          as representative of     )
 6    THE COMMONWEALTH OF PUERTO  )
      RICO, et al.,               )
 7                                )
          Debtors.                )
 8     _____)
                                  )
 9    In re:                      )
      THE FINANCIAL OVERSIGHT AND  )
10    MANAGEMENT BOARD FOR PUERTO  )
      RICO,                       )
11                                )      PROMESA Title III
          as representative of     )    Case No. 17-CV-01685(LTS)
12    THE EMPLOYEES RETIREMENT     )    Case No. 17-BK-03566(LTS)
      SYSTEM OF THE GOVERNMENT    )
13    OF THE COMMONWEALTH OF      )
      PUERTO RICO,                )
14          Debtor.               )
       _____)
15

16

17             C O N F I D E N T I A L

18

19          VIDEOTAPED DEPOSITION OF

20             ANDREW SAMWICK, Ph.D.

21             Monday, June 17, 2019

22

23

24    Reported By:

25    Michael D. O'Connor, RMR, CRR, CRC
```

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 09:39:32 | 1 | White & Case on behalf of the Puerto |
| 09:39:35 | 2 | Rico Funds.  Apologies. |
| 09:39:40 | 3 | MR. GUMBS:  This is Sean Gumbs |
| 09:39:40 | 4 | with FTI Consulting on behalf of the |
| 09:39:42 | 5 | Official Committee of Retirees. |
| 09:39:44 | 6 | MR. DALSEN:  Thank you.  And if I |
| 09:39:45 | 7 | could just ask also the people on the |
| 09:39:46 | 8 | phone to please moot their end unless |
| 09:39:49 | 9 | they're going to speak just to keep |
| 09:39:51 | 10 | background noise down.  Thank you. |
| 09:39:57 | 11 | VIDEOGRAPHER:  You may swear in |
| 09:39:59 | 12 | the witness. |
| | 13 | *        *        * |
| | 14 | |
| | 15 | ANDREW SAMWICK, Ph.D., |
| | 16 | having been satisfactorily identified by a |
| | 17 | Massachusetts drivers license and duly sworn |
| | 18 | by the Notary Public, was examined and |
| | 19 | testified as follows: |
| | 20 | EXAMINATION |
| 09:40:02 | 21 | BY MR. DALSEN: |
| 09:40:02 | 22 | Q.    Please state and spell your name |
| 09:40:04 | 23 | for the record, please. |
| 09:40:05 | 24 | A.    My name is Andrew Samwick, |
| 09:40:05 | 25 | A-n-d-r-e-w, S-a-m-w-i-c-k. |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 12:42:32 | 1 | No. 3, "Compare the economic functioning of the |
| 12:42:36 | 2 | pre-June 2017 ERS with the PayGo system, |
| 12:42:41 | 3 | including the relationship between ERS employer |
| 12:42:45 | 4 | contributions and PayGo fees." |
| 12:42:47 | 5 | Do you see that? |
| 12:42:48 | 6 | A.    Yes. |
| 12:42:48 | 7 | Q.    And what is the relationship |
| 12:42:54 | 8 | between employer contributions and PayGo fees? |
| 12:42:56 | 9 | A.    Over time ERS has built up an |
| 12:43:04 | 10 | actuarial liability.  ERS employer |
| 12:43:09 | 11 | contributions in prior years were a way to |
| 12:43:12 | 12 | provide funding to meet that liability.  Going |
| 12:43:16 | 13 | forward, PayGo fees are going to be a source of |
| 12:43:18 | 14 | funding to meet that liability. |
| 12:43:19 | 15 | Q.    Is that the full extent of the |
| 12:43:28 | 16 | relationship between employer contributions and |
| 12:43:30 | 17 | PayGo fees, in your opinion? |
| 12:43:34 | 18 | A.    Well, sure, there's sort of a |
| 12:43:35 | 19 | mechanical relationship between them in that |
| 12:43:42 | 20 | because ERS historically allowed for employer |
| 12:43:47 | 21 | contributions that were less than the |
| 12:43:51 | 22 | actuarially required contributions, the |
| 12:43:54 | 23 | remaining unfunded actuarially liability is |
| 12:43:59 | 24 | bigger. |
| 12:43:59 | 25 | So the PayGo fees that are going |

| | | |
|---|---|---|
| 12:44:01 | 1 | to be required, because the system has no |
| 12:44:03 | 2 | assets stored up, PayGo fees will be bigger. |
| 12:44:10 | 3 | So had ERS contributions been larger, PayGo |
| 12:44:14 | 4 | fees wouldn't have to be as large. |
| 12:44:16 | 5 | Q.     But in your view, speaking as an |
| 12:44:25 | 6 | economist expert in this case, the relationship |
| 12:44:27 | 7 | between employer contributions and PayGo fees |
| 12:44:31 | 8 | is that they are both ways to meet a liability; |
| 12:44:35 | 9 | is that fair? |
| 12:44:36 | 10 | A.     Yes. |
| 12:44:36 | 11 | Q.     I think you've testified that you |
| 12:44:45 | 12 | reviewed Act 106 to prepare your report? |
| 12:44:48 | 13 | A.     Yes. |
| 12:44:48 | 14 | Q.     Under Act 106, are PayGo fees the |
| 12:44:51 | 15 | only source of revenue to pay pensions? |
| 12:44:58 | 16 | A.     Well, the system has no net assets |
| 12:45:00 | 17 | left.  So if there's another source of revenue, |
| 12:45:04 | 18 | I'm not aware of it. |
| 12:45:06 | 19 | Q.     And when you say "the system," |
| 12:45:08 | 20 | what do you mean? |
| 12:45:09 | 21 | A.     So I think I'm speaking about ERS |
| 12:45:15 | 22 | and the benefit entitlements that were accrued |
| 12:45:19 | 23 | by participants in ERS during their working |
| 12:45:23 | 24 | lives. |
| 12:45:24 | 25 | Q.     And in Paragraph 9 of your report |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 12:51:58 | 1 | the beneficiaries of the system, does that |
| 12:52:00 | 2 | guarantee affect any other aspect of your |
| 12:52:02 | 3 | opinions expressed in your report? |
| 12:52:04 | 4 | A.    I don't believe so. |
| 12:52:06 | 5 | Q.    And so the comparison that you're |
| 12:52:16 | 6 | drawing in your report, and now I am going back |
| 12:52:19 | 7 | to Paragraph 7, No. 3, the comparison that |
| 12:52:22 | 8 | you're actually drawing in your report only |
| 12:52:24 | 9 | concerns a comparison of employer obligations; |
| 12:52:27 | 10 | is that right? |
| 12:52:27 | 11 | A.    Yeah, that's fair. |
| 12:52:31 | 12 | Q.    And beyond comparing the economic |
| 12:52:44 | 13 | functioning as it relates to -- I'm sorry, one |
| 12:52:48 | 14 | moment. |
| 12:52:49 | 15 | A.    Sure. |
| 12:52:49 | 16 | MR. DALSEN:  If you're on the |
| 12:52:50 | 17 | phone, could you please make sure that |
| 12:52:52 | 18 | you're muted.  Thank you. |
| 12:52:56 | 19 | Q.    And so, Dr. Samwick, beyond |
| 12:52:59 | 20 | comparing the economic functioning as it |
| 12:53:06 | 21 | relates to employer contributions, you're not |
| 12:53:10 | 22 | performing any other comparison for purposes of |
| 12:53:13 | 23 | your report; is that right? |
| 12:53:15 | 24 | A.    Could I just ask you to repeat |
| 12:53:17 | 25 | that? |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 12:53:17 | 1 | (Reporter read back pending |
| 12:53:33 | 2 | question) |
| 12:53:33 | 3 | A.     Well, I -- okay.  So trivially, |
| 12:53:37 | 4 | I'm also comparing the benefit entitlements. |
| 12:53:40 | 5 | So I would describe this as there's a question |
| 12:53:43 | 6 | about whether Act 106 change benefit |
| 12:53:48 | 7 | entitlements, and I describe that as trivially, |
| 12:53:53 | 8 | because it did not. |
| 12:53:55 | 9 | And then the second piece of the |
| 12:53:57 | 10 | comparison is whether there's an equivalence |
| 12:54:04 | 11 | between the employer contributions under ERS |
| 12:54:08 | 12 | and the PayGo fees.  So I would answer your |
| 12:54:11 | 13 | question that way. |
| 12:54:12 | 14 | Q.     But beyond comparing the employer |
| 12:54:29 | 15 | contributions under ERS and the PayGo fees, and |
| 12:54:34 | 16 | as you described it, the trivial comparison of |
| 12:54:37 | 17 | whether Act 106 changed benefit entitlements, |
| 12:54:40 | 18 | you're not performing any other comparison for |
| 12:54:43 | 19 | purposes of your report? |
| 12:54:45 | 20 | A.     I think that's fair. |
| 12:54:46 | 21 | Q.     When I asked you about the |
| 12:55:15 | 22 | Commonwealth guarantee in Act 106 a few minutes |
| 12:55:20 | 23 | ago, you said that, if I'm not mistaken, that |
| 12:55:23 | 24 | the guarantee would provide greater certainty |
| 12:55:26 | 25 | to the ultimate beneficiaries, right? |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|--|--|--|
| 01:16:01 | 1 | A.      Hmm-hmm. |
| 01:16:01 | 2 | Q.      Now, the beginning of Paragraph |
| 01:16:06 | 3 | 8(b) says, "For many years before 2017, ERS was |
| 01:16:11 | 4 | not actuarially sound." |
| 01:16:12 | 5 | What's the basis for that |
| 01:16:14 | 6 | statement? |
| 01:16:14 | 7 | A.      It had an unfunded actuarial |
| 01:16:23 | 8 | liability, and contributions continued to be |
| 01:16:25 | 9 | inadequate to properly amortize that unfunded |
| 01:16:29 | 10 | actuarial liability and its funding ratio |
| 01:16:35 | 11 | generally continued to decline. |
| 01:16:37 | 12 | Q.      You testified earlier that you're |
| 01:16:43 | 13 | not an actuary.  So my question is, how are you |
| 01:16:48 | 14 | qualified to render that opinion? |
| 01:16:49 | 15 | A.      I can do the calculations, and I |
| 01:16:56 | 16 | can observe the data that's presented in the |
| 01:16:59 | 17 | actuarial valuation report, and the actuarial |
| 01:17:05 | 18 | valuation reports, at various times, call |
| 01:17:07 | 19 | attention to it as well. |
| 01:17:08 | 20 | Q.      So beyond performing calculations |
| 01:17:11 | 21 | and relying what's on -- excuse me, what's in |
| 01:17:15 | 22 | the actuarial valuation reports, was there |
| 01:17:17 | 23 | anything else you did to arrive at your |
| 01:17:20 | 24 | statement that ERS was not actuarially sound |
| 01:17:23 | 25 | for many years before 2017? |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 127

| | | |
|---|---|---|
| 01:28:27 | 1 | system as an act enacted under 106 as a single |
| 01:28:32 | 2 | system for purposes of your analysis? |
| 01:28:33 | 3 | A.    Yes, that's fair. |
| 01:28:34 | 4 | Q.    Did counsel to Movants ask you to |
| 01:28:38 | 5 | assume they constitute a single system? |
| 01:28:41 | 6 | A.    No. |
| 01:28:41 | 7 | Q.    And you don't have an opinion |
| 01:28:44 | 8 | either way as to whether they are one system as |
| 01:28:47 | 9 | a legal matter; is that right? |
| 01:28:50 | 10 | A.    That's correct. |
| 01:28:51 | 11 | Q.    Is it fair to say that your |
| 01:28:58 | 12 | opinion only addresses a single system from an |
| 01:29:03 | 13 | economic perspective, in your view? |
| 01:29:07 | 14 | A.    Yeah, and if I could explain, I |
| 01:29:15 | 15 | think the determination of benefits that |
| 01:29:17 | 16 | beneficiaries receive under the Act 106 system |
| 01:29:22 | 17 | is explicitly tied to the benefits that they |
| 01:29:27 | 18 | earned an entitlement to under ERS.  That |
| 01:29:33 | 19 | hasn't been changed.  That's what unifies them, |
| 01:29:36 | 20 | in my mind, as one system, because that's the |
| 01:29:38 | 21 | economic purpose of this public sector pension |
| 01:29:41 | 22 | system. |
| 01:29:48 | 23 | Q.    And so if the Court in this case |
| 01:29:59 | 24 | found that ERS and the PayGo system were |
| 01:30:03 | 25 | separate systems, in your opinion would not |

Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 01:30:06 | 1 | apply at all in this proceeding after the Court |
| 01:30:08 | 2 | made that finding? |
| 01:30:09 | 3 | MR. PAPEZ:  Objection.  Calls for |
| 01:30:13 | 4 | speculation.  It's an incomplete |
| 01:30:15 | 5 | hypothetical, and probably also calls |
| 01:30:17 | 6 | for a legal conclusion. |
| 01:30:19 | 7 | Q.    Do you understand the question? |
| 01:30:20 | 8 | A.    I do.  I wouldn't mind you |
| 01:30:22 | 9 | repeating it, though, if you want me to answer |
| 01:30:24 | 10 | it. |
| 01:30:24 | 11 | (Reporter read back pending |
| 01:30:41 | 12 | question) |
| 01:30:41 | 13 | A.    I do think that is asking me to |
| 01:30:43 | 14 | draw a legal opinion about what's relevant in |
| 01:30:45 | 15 | light of a judge's decision. |
| 01:30:49 | 16 | Q.    If you were asked to assume that |
| 01:30:56 | 17 | the ERS system and the PayGo system were |
| 01:30:58 | 18 | separate systems, how would that affect your |
| 01:31:02 | 19 | opinion? |
| 01:31:02 | 20 | MR. PAPEZ:  Objection.  Incomplete |
| 01:31:04 | 21 | hypothetical. |
| 01:31:04 | 22 | A.    Well, I don't -- I don't know who |
| 01:31:07 | 23 | I'm allowed to ask for clarifying questions in |
| 01:31:09 | 24 | this hypothetical.  I would still note that the |
| 01:31:16 | 25 | benefits that beneficiaries will be paid under |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 129

| | | |
|---|---|---|
| 01:31:21 | 1 | the Act 106 system are determined by the |
| 01:31:24 | 2 | entitlements that they earned while they were |
| 01:31:26 | 3 | working under ERS. |
| 01:31:30 | 4 | So that wouldn't change unless a |
| 01:31:32 | 5 | law changes it.  It hasn't. |
| 01:31:34 | 6 | Q.    And so your opinions, as expressed |
| 01:31:49 | 7 | in Exhibit 1, don't say either way, they don't |
| 01:31:56 | 8 | account for either way, what would happen if |
| 01:31:59 | 9 | the Court found that ERS and PayGo are separate |
| 01:32:02 | 10 | systems? |
| 01:32:02 | 11 | MR. PAPEZ:  Objection.  Asked and |
| 01:32:04 | 12 | answered and another incomplete |
| 01:32:06 | 13 | hypothetical. |
| 01:32:06 | 14 | A.    I apologize, I don't really know |
| 01:32:08 | 15 | what you mean by "what would happen." |
| 01:32:11 | 16 | Q.    Your opinions would not change |
| 01:32:12 | 17 | either way if the Court said that ERS and the |
| 01:32:16 | 18 | PayGo system were separate systems? |
| 01:32:19 | 19 | MR. PAPEZ:  Same objections. |
| 01:32:20 | 20 | A.    Yeah, they -- the economic |
| 01:32:25 | 21 | analysis would not change.  The benefits being |
| 01:32:30 | 22 | paid to beneficiaries after Act 106 are still |
| 01:32:35 | 23 | determined by the benefits to which they earned |
| 01:32:38 | 24 | an entitlement under ERS. |
| 01:32:47 | 25 | Q.    In Paragraph 8(d) of your report |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 135

| | | |
|---|---|---|
| 01:40:34 | 1 | A.     I do understand your question. |
| 01:40:36 | 2 | And again, I don't have a specific answer. |
| 01:40:38 | 3 | Q.     And as far as value of the |
| 01:40:43 | 4 | payments that you discussed earlier, what |
| 01:40:45 | 5 | magnitude of change would there needed to have |
| 01:40:48 | 6 | been for you to conclude in this case that |
| 01:40:50 | 7 | there was a consequential change? |
| 01:40:51 | 8 | MR. PAPEZ:  Object to form. |
| 01:40:52 | 9 | Incomplete hypothetical. |
| 01:40:53 | 10 | Q.     I'll just ask, do you understand |
| 01:40:55 | 11 | my question? |
| 01:40:55 | 12 | A.     I do understand your question. |
| 01:40:58 | 13 | Given that the benefits are not |
| 01:41:00 | 14 | going to change, and they're all going to get |
| 01:41:03 | 15 | paid, what room is there to say that there has |
| 01:41:05 | 16 | been a consequential change in the amount of |
| 01:41:09 | 17 | employer contributions. |
| 01:41:12 | 18 | There was a change in the timing |
| 01:41:13 | 19 | of when those contributions are going to be |
| 01:41:15 | 20 | made. |
| 01:41:19 | 21 | Q.     But what magnitude of change would |
| 01:41:23 | 22 | you have needed to see to conclude that there |
| 01:41:26 | 23 | was a consequential change as to the value of |
| 01:41:33 | 24 | payments that you discussed earlier? |
| 01:41:35 | 25 | MR. PAPEZ:  Objection.  Asked and |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 136

01:41:37    1          answered.

01:41:40    2          Q.     If you can answer.

01:41:41    3          A.     It would have to be something

01:41:42    4    other than the timing of those contributions to

01:41:44    5    pay benefits that haven't changed.

01:41:47    6          Q.     And did you consider anything

01:41:50    7    other than the timing of those contributions to

01:41:52    8    pay benefits in order to determine whether

01:41:54    9    there was a consequential change, in your

01:41:57    10   opinion?

01:41:58    11         A.     No.   Only that the benefits didn't

01:42:02    12   change, and thus, the unfunded actuarial

01:42:06    13   liability is not going to change, and thus, the

01:42:09    14   net present value of contributions is not going

01:42:11    15   to change.   All of that absence of change

01:42:18    16   seemed to be well described by inconsequential.

01:42:20    17         Q.     For the purpose of rendering your

01:42:41    18   opinions in this report, did you apply any

01:42:44    19   framework accepted in the field of economics to

01:42:47    20   determine whether the effects that we have been

01:42:49    21   talking about were consequential or

01:42:51    22   inconsequential?

01:42:52    23         A.     Everything we're doing here is

01:42:57    24   subsumed, incorporated in, net present value

01:43:02    25   analysis.

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

02:00:04   1    about Paragraph 8(e) of your report on Page 6

02:00:08   2    of Exhibit 1.  The last sentence of Paragraph

02:00:12   3    8(e) is where I want to direct your attention.

02:00:15   4            Specifically it says, "The changes

02:00:17   5    in how the PayGo fees on employers are

02:00:21   6    calculated are ones that could have been made

02:00:24   7    to required employer contributions within ERS,"

02:00:29   8    and then it says, "and they do not represent a

02:00:32   9    substantial change in the nature of the

02:00:34   10   payments."

02:00:34   11           Do you see that?

02:00:35   12       A.    I do.

02:00:36   13       Q.    Now, when you say the changes

02:00:43   14   could have been made, what do you mean?

02:00:44   15       A.    So as I understand ERS, as written

02:00:47   16   in Act 447, contributions that are made that

02:00:51   17   are less than the actuarially required

02:00:54   18   contributions were for most of the life of that

02:01:00   19   system an obligation of the employer.  So ERS

02:01:02   20   could have gone and gotten those contributions

02:01:05   21   that the employers were obliged to pay.

02:01:09   22           So what is the PayGo fee?  The

02:01:11   23   PayGo fee is a contribution from the employer

02:01:15   24   for beneficiaries that has to be made because

02:01:21   25   of prior underfunding in ERS.

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 02:03:45 | 1 | A.    No.   All I'm trying to do is make |
| 02:03:47 | 2 | an assertion that the change to require |
| 02:03:54 | 3 | employers to now pay additional contributions, |
| 02:03:57 | 4 | or a PayGo contribution, is something that |
| 02:04:01 | 5 | could have been done at earlier times during |
| 02:04:06 | 6 | the ERS. |
| 02:04:07 | 7 | I'm not trying to draw any |
| 02:04:09 | 8 | conclusion other than that one, so that's why I |
| 02:04:12 | 9 | focus in on that possible change. |
| 02:04:14 | 10 | Q.    And then the last part of that |
| 02:04:16 | 11 | last sentence in Paragraph 8(e) says, "And they |
| 02:04:20 | 12 | do not represent a substantial change in the |
| 02:04:23 | 13 | nature of the payments." |
| 02:04:24 | 14 | Do you see that? |
| 02:04:25 | 15 | A.    Yes. |
| 02:04:25 | 16 | Q.    What do you mean by "substantial |
| 02:04:27 | 17 | change"? |
| 02:04:28 | 18 | A.    Well, they're both anchored in the |
| 02:04:31 | 19 | same entity.  They are anchored in the pension |
| 02:04:40 | 20 | benefits that employees under ERS accrued prior |
| 02:04:47 | 21 | to 2017. |
| 02:04:48 | 22 | Q.    When you say they are anchored in |
| 02:04:51 | 23 | the same entity, what do you mean? |
| 02:04:56 | 24 | A.    The benefits were promised.  They |
| 02:04:58 | 25 | could have been funded in advance.  They |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 142

| | | |
|---|---|---|
| 02:05:00 | 1 | weren't.  To the extent that they were not |
| 02:05:02 | 2 | funded in advance, they now have to be funded |
| 02:05:06 | 3 | as they come due.  Thus, you have a PayGo |
| 02:05:11 | 4 | system. |
| 02:05:11 | 5 | Q.    And you don't consider that |
| 02:05:17 | 6 | process you just described to constitute a |
| 02:05:20 | 7 | substantial change? |
| 02:05:21 | 8 | A.    Referring back to what begins the |
| 02:05:24 | 9 | paragraph, in economic terms, they are still |
| 02:05:30 | 10 | required to make employer payments, now called |
| 02:05:32 | 11 | a PayGo fee, previously an employer |
| 02:05:35 | 12 | contribution, to meet the pension obligations |
| 02:05:38 | 13 | that were accrued by their current and former |
| 02:05:44 | 14 | employees while those employees were |
| 02:05:47 | 15 | participants in ERS. |
| 02:05:48 | 16 | Q.    And when you talk about the |
| 02:05:53 | 17 | "nature of the payments" in that last sentence |
| 02:05:56 | 18 | in Paragraph 8(e), what do you mean? |
| 02:05:58 | 19 | A.    Well, the nature of the payments |
| 02:06:01 | 20 | is derived again from the benefits that were |
| 02:06:05 | 21 | accrued by employees working for various |
| 02:06:13 | 22 | employers under ERS. |
| 02:06:14 | 23 | Q.    Do you know how PayGo fees are |
| 02:06:36 | 24 | calculated? |
| 02:06:37 | 25 | A.    I have some understanding of it, |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 143

02:06:41   1    sure.

02:06:41   2            Q.      What's your understanding?

02:06:43   3            A.      That employers are assessed a

02:06:45   4    PayGo fee based on the entitlements that their

02:06:51   5    system members accrued while working in their

02:06:53   6    employ.

02:06:53   7            Q.      And do you know how required

02:06:59   8    contributions under the pre-June 2017 ERS were

02:07:03   9    calculated?

02:07:03   10           A.      Again, I have some understanding.

02:07:05   11           Q.      And what's that understanding?

02:07:06   12           A.      That the amount of the actuarially

02:07:11   13   required contribution is the normal cost, plus

02:07:14   14   some amortization of the unfunded accrued

02:07:18   15   liability.

02:07:18   16           Q.      And it's your opinion that those

02:07:33   17   two ways of calculating, in the one case, a

02:07:38   18   PayGo fee, and the other case, the required

02:07:41   19   contribution, do not constitute a substantial

02:07:43   20   change in the nature of payments?

02:07:45   21           A.      Yes.  I mean, that's made even

02:07:46   22   more clear by ERS now being closed with no

02:07:51   23   further benefit accruals.  So this is just a

02:07:53   24   question of when that unfunded actuarial

02:07:59   25   liability is going to be drawn down to zero.

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 02:08:01 | 1 | In the Pay-As-You-Go process, |
| 02:08:04 | 2 | that's done basically as slowly as possible, |
| 02:08:08 | 3 | with no advance funding of any kind.  Any other |
| 02:08:12 | 4 | system would bring in almost by definition some |
| 02:08:16 | 5 | more advanced funding. |
| 02:08:18 | 6 | The intent, if not the practice, |
| 02:08:22 | 7 | when ERS was operating prior to 2017 was that |
| 02:08:25 | 8 | there should be some advance funding. |
| 02:08:34 | 9 | Q.     And your opinion is that the |
| 02:08:39 | 10 | change from a system with advance funding to a |
| 02:08:43 | 11 | system without any advance funding is not a |
| 02:08:46 | 12 | consequential change? |
| 02:08:47 | 13 | A.     Keeping -- provided that the |
| 02:08:55 | 14 | present value of those payments is the same. |
| 02:09:00 | 15 | I'm acknowledging that the timing changes, but |
| 02:09:04 | 16 | the present value is anchored in the benefit |
| 02:09:07 | 17 | entitlements that employees accrued under the |
| 02:09:10 | 18 | ERS system. |
| 02:09:12 | 19 | So given that the benefits don't |
| 02:09:14 | 20 | change, and that employers under ERS are being |
| 02:09:24 | 21 | assessed a PayGo fee, based on those |
| 02:09:27 | 22 | obligations, yes, I call the change to be one |
| 02:09:32 | 23 | of timing only to be both inconsequential and |
| 02:09:38 | 24 | not substantial in this paragraph. |
| 02:09:39 | 25 | Q.     So, economically speaking, if an |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 02:10:11 | 1 | employer reimburses the Commonwealth for |
| 02:10:13 | 2 | specific dollar amounts actually paid to |
| 02:10:17 | 3 | pensioners, is that the same or different from |
| 02:10:20 | 4 | an employer making a required contribution in |
| 02:10:22 | 5 | the pre-2017 ERS system? |
| 02:10:25 | 6 | MR. PAPEZ:  I'm going to object to |
| 02:10:32 | 7 | form on that.  Incomplete hypothetical. |
| 02:10:37 | 8 | A.    I'm sorry, can you read it back to |
| 02:10:39 | 9 | me. |
| 02:10:39 | 10 | (Reporter read back pending |
| 02:11:00 | 11 | question) |
| 02:11:00 | 12 | A.    It's the same employee or former |
| 02:11:04 | 13 | employee? |
| 02:11:04 | 14 | Q.    Yes. |
| 02:11:11 | 15 | A.    And the question is, does paying |
| 02:11:13 | 16 | it in 2019, when it comes due, versus 2015 or |
| 02:11:15 | 17 | 2010 when it's accrued, is that -- can you fill |
| 02:11:20 | 18 | in the -- can you give it to me again, the |
| 02:11:22 | 19 | exact language? |
| 02:11:23 | 20 | MR. DALSEN:  You can reread the |
| 02:11:24 | 21 | question again. |
| 02:11:45 | 22 | (Reporter read back pending |
| 02:11:46 | 23 | question) |
| 02:11:47 | 24 | A.    Well, it's not identical, but it's |
| 02:11:49 | 25 | a payment made later, because a payment earlier |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 02:11:52 | 1 | wasn't made. |
| 02:11:52 | 2 | Q.    Do you know whether, economically |
| 02:12:05 | 3 | speaking, under the PayGo system if all the |
| 02:12:08 | 4 | retirees of a given employer pass away, would |
| 02:12:12 | 5 | that employer have to pay future PayGo fees to |
| 02:12:15 | 6 | the Commonwealth? |
| 02:12:16 | 7 | MR. PAPEZ:  Objection.  Incomplete |
| 02:12:18 | 8 | hypothetical.  Assumes facts not in |
| 02:12:19 | 9 | evidence as well. |
| 02:12:20 | 10 | Q.    Do you know? |
| 02:12:20 | 11 | A.    I don't know the answer to that. |
| 02:12:22 | 12 | Q.    Economically speaking, under the |
| 02:12:30 | 13 | pre-June 2017 ERS system, if an employer had no |
| 02:12:36 | 14 | current retired employees, but did have active |
| 02:12:40 | 15 | employees on its payroll, would the employer |
| 02:12:43 | 16 | still have to contribute a percentage of |
| 02:12:45 | 17 | payroll in additional uniform contributions? |
| 02:12:52 | 18 | MR. PAPEZ:  Object to form. |
| 02:12:57 | 19 | Incomplete hypothetical.  Also assumes |
| 02:12:58 | 20 | facts not in evidence. |
| 02:13:00 | 21 | A.    I apologize, can you read it to me |
| 02:13:02 | 22 | again? |
| 02:13:02 | 23 | (Reporter read back pending |
| 02:13:24 | 24 | question) |
| 02:13:24 | 25 | A.    If he had active employees, that |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 153

| | | |
|---|---|---|
| 02:23:30 | 1 | verbatim, to a paragraph we've already |
| 02:23:33 | 2 | discussed? |
| 02:23:33 | 3 | A.    Yes. |
| 02:23:33 | 4 | Q.    And when you use the phrase here |
| 02:23:36 | 5 | "could have been made," do you also mean a |
| 02:23:38 | 6 | non-zero possibility? |
| 02:23:39 | 7 | A.    Yes. |
| 02:23:54 | 8 | MR. DALSEN:  Okay.  Let's just |
| 02:23:56 | 9 | take five minutes? |
| 02:23:56 | 10 | MR. PAPEZ:  Sure. |
| 02:23:58 | 11 | VIDEOGRAPHER:  The time is 2:24 |
| 02:23:59 | 12 | p.m.  We're now off the record. |
| 02:24:01 | 13 | (Recess taken at 2:24 p.m. and |
| 02:24:05 | 14 | reconvening at 2:32 p.m.) |
| 02:31:26 | 15 | VIDEOGRAPHER:  The time is 2:32 |
| 02:31:30 | 16 | p.m.  We are now on the record. |
| 02:31:32 | 17 | BY MR. DALSEN: |
| 02:31:32 | 18 | Q.    Dr. Samwick, you said earlier |
| 02:31:34 | 19 | today that you reviewed the rebuttal report |
| 02:31:37 | 20 | from Mr. Sher? |
| 02:31:40 | 21 | A.    Yes. |
| 02:31:40 | 22 | Q.    Did you reach any conclusions |
| 02:31:42 | 23 | after reviewing that rebuttal report? |
| 02:31:45 | 24 | A.    I wasn't asked to draw any |
| 02:31:49 | 25 | conclusions. |

Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 02:31:50 | 1 | Q.     Did you reach any conclusions, |
| 02:31:51 | 2 | regardless of whether you were asked to draw |
| 02:31:53 | 3 | them? |
| 02:31:53 | 4 | A.     I didn't see how it had |
| 02:31:58 | 5 | invalidated or rebutted the conclusions I drew |
| 02:32:01 | 6 | in my own report. |
| 02:32:02 | 7 | Q.     And why specifically did you feel |
| 02:32:07 | 8 | that way after reading Mr. Sher's report? |
| 02:32:09 | 9 | A.     He objected to basically, I think |
| 02:32:15 | 10 | it's Paragraph 8(d), and I thought didn't |
| 02:32:20 | 11 | provide a very compelling counterargument. |
| 02:32:25 | 12 | Q.     Any specific reason why he did not |
| 02:32:27 | 13 | provide a particularly compelling |
| 02:32:28 | 14 | counterargument, in your view? |
| 02:32:30 | 15 | A.     I think you'd have to ask him. |
| 02:32:35 | 16 | Q.     Okay.  Did you disagree with any |
| 02:32:39 | 17 | of the methods that Mr. Sher used in his |
| 02:32:42 | 18 | rebuttal report? |
| 02:32:43 | 19 | A.     You know, I would benefit from a |
| 02:32:46 | 20 | copy of it if we're going to have a long |
| 02:32:50 | 21 | discussion about it. |
| 02:32:51 | 22 |        Do you have a copy I can see? |
| 02:32:52 | 23 | Q.     Just answer my question.  Do you |
| 02:32:56 | 24 | recall sitting here, without looking at the |
| 02:32:58 | 25 | report, whether you disagreed with any of the |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 02:33:01 | 1 | methods that Mr. Sher used in his rebuttal |
| 02:33:05 | 2 | report? |
| 02:33:05 | 3 | A.    I'm having trouble coming up with |
| 02:33:07 | 4 | a particular method that he used. |
| 02:33:08 | 5 | Q.    Okay. |
| 02:33:08 | 6 | (Document marked as Samwick |
| 02:33:59 | 7 | Exhibit 5 for identification) |
| 02:33:59 | 8 | Q.    Dr. Samwick, you have been handed |
| 02:34:05 | 9 | what the court reporter has marked as Exhibit |
| 02:34:06 | 10 | 5, which is the expert rebuttal report of |
| 02:34:09 | 11 | Lawrence J. Sher, dated June 12, 2019. |
| 02:34:16 | 12 | Now that you have the report, I'll |
| 02:34:19 | 13 | ask you do you recall, upon reviewing the |
| 02:34:27 | 14 | report, whether you disagree with any of the |
| 02:34:29 | 15 | methods Mr. Sher used in his report? |
| 02:34:33 | 16 | A.    If I'm not going to have the time |
| 02:34:34 | 17 | to peruse it here, perhaps you could tell me a |
| 02:34:37 | 18 | specific method, and then I can answer you |
| 02:34:41 | 19 | about that specific method. |
| 02:34:43 | 20 | Q.    You can take a moment to peruse |
| 02:34:47 | 21 | it. |
| 02:35:14 | 22 | A.    Thank you. |
| 02:35:14 | 23 | So again, I don't see anything I |
| 02:35:16 | 24 | would describe as a method.  So if you could |
| 02:35:17 | 25 | give me an example of a method, I could answer |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 02:35:19 | 1 | your questions about it. |
| 02:35:20 | 2 | Q.    It appears, though, that you |
| 02:35:31 | 3 | disagree with the conclusions that Mr. Sher |
| 02:35:33 | 4 | reached, at least in some respects? |
| 02:35:35 | 5 | A.    Well, his conclusions appear to be |
| 02:35:39 | 6 | I disagree with.  So I don't think he has cause |
| 02:35:42 | 7 | to disagree, but that's his conclusion. |
| 02:35:44 | 8 | Q.    And when you say you don't believe |
| 02:35:50 | 9 | he has cause to disagree, is there any |
| 02:35:52 | 10 | particular fault that you find with the |
| 02:35:55 | 11 | arguments and information that he provided in |
| 02:35:58 | 12 | his rebuttal report? |
| 02:35:59 | 13 | A.    Well, the two places of |
| 02:36:02 | 14 | disagreement appear to be his Paragraph 23 and |
| 02:36:08 | 15 | his Paragraph 24. |
| 02:36:16 | 16 | So if I -- can I sort of walk |
| 02:36:19 | 17 | through 23 and 24? |
| 02:36:20 | 18 | Q.    Yes, of course. |
| 02:36:23 | 19 | A.    So the first claim made in |
| 02:36:25 | 20 | Paragraph 23 is that Mr. Sher disagrees with |
| 02:36:29 | 21 | the first sentence of what I think is Paragraph |
| 02:36:34 | 22 | 8(d), "because under a Pay-As-You-Go approach |
| 02:36:37 | 23 | there are no contributions and no funding." |
| 02:36:40 | 24 | The specific statement with which |
| 02:36:43 | 25 | he's disagreeing is, "Conceptually, a change |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

| | | |
|---|---|---|
| 02:36:47 | 1 | from a funded defined benefit system to a |
| 02:36:50 | 2 | Pay-As-You-Go defined benefit system is a |
| 02:36:53 | 3 | change only in the timing of the contributions |
| 02:36:55 | 4 | made by the sponsor of that system to support |
| 02:36:58 | 5 | benefit payments." |
| 02:37:00 | 6 | Okay. So I don't know how you can |
| 02:37:03 | 7 | say under a Pay-As-You-Go approach there are no |
| 02:37:05 | 8 | contributions. What is a PayGo fee if not a |
| 02:37:08 | 9 | contribution? |
| 02:37:11 | 10 | In economic framework, I would |
| 02:37:14 | 11 | regard a PayGo fee as a contribution. So we're |
| 02:37:19 | 12 | disagreeing about terminology there. |
| 02:37:27 | 13 | The statement, "There are no |
| 02:37:28 | 14 | contributions to fund a trust to pay for |
| 02:37:31 | 15 | participants' pension benefits" is true. But I |
| 02:37:43 | 16 | don't think it's a reason to disagree. |
| 02:37:46 | 17 | "Rather, pension benefits are made directly to |
| 02:37:48 | 18 | retired participants from general (i.e., |
| 02:37:51 | 19 | non-segregated) assets as each payment comes |
| 02:37:53 | 20 | due." |
| 02:37:53 | 21 | I don't understand why it would be |
| 02:37:57 | 22 | proper to refer to PayGo fees as general |
| 02:38:03 | 23 | assets. That strikes me as odd. A PayGo fee |
| 02:38:10 | 24 | does not appear to be a general asset anymore |
| 02:38:15 | 25 | than an employer contribution under ERS was a |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 158

| | | |
|---|---|---|
| 02:38:16 | 1 | general asset. |
| 02:38:19 | 2 | "Thus, the amount of money |
| 02:38:21 | 3 | required to pay the" benefits "must be |
| 02:38:22 | 4 | determined by calculating the amount of the |
| 02:38:24 | 5 | current pension payments." |
| 02:38:28 | 6 | Again, that's true, but that's not |
| 02:38:30 | 7 | a disagreement with the statement that I made. |
| 02:38:33 | 8 | Right?  It's a change only in the timing of |
| 02:38:35 | 9 | contributions made by the sponsor.  I sort of |
| 02:38:41 | 10 | acknowledged that the net present value of |
| 02:38:43 | 11 | those contributions, my word, are going to be |
| 02:38:45 | 12 | the same.  They're going to equal the unfunded |
| 02:38:49 | 13 | actuarial liability because the system is |
| 02:38:51 | 14 | closed and no further benefits are being |
| 02:38:53 | 15 | accrued. |
| 02:38:54 | 16 | So I don't see how this is a |
| 02:38:57 | 17 | disagreement rather than just a refusal to |
| 02:39:00 | 18 | acknowledge that there are such thing as PayGo |
| 02:39:05 | 19 | fees, the way they are calculated, and the way |
| 02:39:07 | 20 | they will be paid off. |
| 02:39:09 | 21 | So I couldn't make much out of |
| 02:39:11 | 22 | this.  I didn't feel like it was a critique. |
| 02:39:16 | 23 | So that's my response to his first |
| 02:39:19 | 24 | disagreement. |
| 02:39:20 | 25 | Shall I go on to my response to |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 159

| | | |
|---|---|---|
| 02:39:25 | 1 | his second disagreement? |
| 02:39:26 | 2 | Q.     Yes, please. |
| 02:39:27 | 3 | A.     I disagree with the third |
| 02:39:29 | 4 | sentence, he says "because the cost of paying |
| 02:39:32 | 5 | benefits under a funded defined benefit system |
| 02:39:33 | 6 | can be materially lower in the long-term (when |
| 02:39:36 | 7 | compared to a pay-as-you-go approach) on |
| 02:39:39 | 8 | account of the earnings of the plan's assets." |
| 02:39:42 | 9 | That's just the simple math of net |
| 02:39:45 | 10 | present value.  So again, that doesn't |
| 02:39:48 | 11 | contradict what I said.  What I said is it's a |
| 02:39:52 | 12 | change only in the timing, earlier |
| 02:39:54 | 13 | contributions have a higher net present value |
| 02:39:57 | 14 | than later contributions. |
| 02:39:59 | 15 | So again, I didn't really see how |
| 02:40:02 | 16 | that, to the extent it's a true statement, but |
| 02:40:06 | 17 | it's part of what I was saying, not a |
| 02:40:08 | 18 | disagreement with what I was saying. |
| 02:40:13 | 19 | Okay.  That's my -- I think that |
| 02:40:15 | 20 | answers your question. |
| 02:40:16 | 21 | Q.     Yes.  Thank you. |
| 02:40:18 | 22 | When you said for Paragraph 23 |
| 02:40:20 | 23 | that you believe there were contributions, you |
| 02:40:23 | 24 | were talking about contributions in economic |
| 02:40:24 | 25 | terms.  What is a contribution in economic |

CONFIDENTIAL
Andrew Samwick, Ph.D. - June 17, 2019

Page 160

| | | |
|---|---|---|
| 02:40:27 | 1 | terms? |
| 02:40:28 | 2 | A.     I use the word "contribution" to |
| 02:40:30 | 3 | describe any payment made by the employer. |
| 02:40:34 | 4 | Q.     Okay.  Dr. Samwick, do you |
| 02:40:50 | 5 | understand you may be called for |
| 02:40:51 | 6 | cross-examination in this proceeding in New |
| 02:40:53 | 7 | York on July 2nd? |
| 02:40:54 | 8 | A.     Yes. |
| 02:40:54 | 9 | Q.     Where do you plan to be on July |
| 02:40:57 | 10 | 2nd? |
| 02:40:57 | 11 | A.     In New York available for |
| 02:40:58 | 12 | cross-examination. |
| 02:40:59 | 13 | Q.     Okay. |
| 02:41:07 | 14 | MR. DALSEN:  Okay.  I think with |
| 02:41:08 | 15 | that, I just want to make a short |
| 02:41:11 | 16 | statement, then I'll pass the witness. |
| 02:41:14 | 17 | The short statement being that I have to |
| 02:41:16 | 18 | reserve the right to redepose |
| 02:41:18 | 19 | Mr. Samwick if there's, in fact, some |
| 02:41:20 | 20 | new declarations served on June 21st. |
| 02:41:25 | 21 | Matt, you mentioned something |
| 02:41:26 | 22 | about that earlier.  I think we should |
| 02:41:28 | 23 | chat about that. |
| 02:41:30 | 24 | But to the extent that there is |
| 02:41:32 | 25 | some new declaration, you know, we have |