UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---

AUTONOMOUS MUNICIPALITY OF SAN JUAN,

Plaintiff,

-against-

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

Defendant.

No. 19 Civ. _____

**COMPLAINT FOR
DECLARATORY
JUDGMENT AND
<u>INJUNCTIVE RELIEF</u>**

---

Plaintiff Autonomous Municipality of San Juan ("San Juan" or the "City"), by
and through its undersigned attorneys, alleges as follows for its complaint.

## I.  <u>NATURE OF THE ACTION</u>

1.        On June 30, 2016, the United States Congress ("Congress") enacted
the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),
48 U.S.C. § 2101, *et seq.*  PROMESA established a Financial Oversight and
Management Board for Puerto Rico ("Oversight Board" or "the Board") tasked with
developing a method for the Commonwealth of Puerto Rico to achieve fiscal
responsibility and access to the capital markets.  Since that time, the Mayor of San
Juan and other elected officials in Puerto Rico have repeatedly objected that the
Oversight Board has deprived Puerto Rican citizens of their basic democratic rights to
representative government.  The Oversight Board has imposed its policy preferences
on the Commonwealth over the objections of Puerto Rico's Governor and legislature,
and has prevented the democratically elected government from providing its citizens

with essential public services (completely ignoring PROMESA's express directive to "ensure funding of essential public services").

2.    The Oversight Board's threat to Puerto Rico's democratic self-governance has now become systemic.  On May 9, 2019, the Oversight Board designated all 78 of Puerto Rico's municipalities, including San Juan, as covered territorial entities under Section 101 of PROMESA.  The Oversight Board's designation of Puerto Rico's municipalities dramatically expands the Oversight Board's asserted powers and guts the autonomous self-governing nature of San Juan and other municipalities.  In one fell swoop, the Oversight Board seized control of municipal budgetary and fiscal policy from 78 elected municipal legislatures and their mayors.

3.    The Oversight Board's power grab is lawless.  While PROMESA grants the Oversight Board authority to designate covered territorial instrumentalities, it does so only for the express purpose of achieving fiscal responsibility and access to the capital markets for the Commonwealth of Puerto Rico ("Commonwealth" or "Puerto Rico").  To that end, the Oversight Board has already designated and aggressively asserted control over the budgetary and fiscal policies of the Commonwealth and 62 other Puerto Rican entities for more than two and a half years.

4.    In contrast, the Oversight Board's indiscriminate designation of all 78 of Puerto Rico's municipalities lacks any rational basis consistent with PROMESA.  As set forth below, there is no reason why the Oversight Board needs to control *municipal* finances in order to advance its purpose of achieving the *Commonwealth's*

financial stability and access to capital markets. Tellingly, the Oversight Board has failed even to attempt to justify any need for its seizure of control over municipal finances.

5.     Accordingly, San Juan now brings this action seeking (1) a declaratory judgment that the Oversight Board's designation of San Juan as a covered entity violates PROMESA because it was done without a rational basis consistent with PROMESA's purpose; (2) in the alternative, to the extent that the designation of San Juan as a covered entity is not deemed a violation of PROMESA, a declaratory judgment that PROMESA is unconstitutional to the extent that it grants the Oversight Board discretion to designate San Juan as a covered entity without a rational basis consistent with PROMESA's purpose; (3) a declaratory judgment that the Oversight Board's designation of San Juan as a covered territorial entity is invalid because the members of the Oversight Board were not appointed in accordance with the Appointments Clause of the U.S. Constitution; and (4) an injunction enjoining the Oversight Board from designating San Juan as a covered entity.

## II. **THE PARTIES**

6.     Plaintiff San Juan is an autonomous municipality organized and existing under and by virtue of the laws of the Commonwealth of Puerto Rico. San Juan is the capital and most populous municipality of Puerto Rico. As of July 1, 2018, the City had an estimated population of 320,976 inhabitants and a daily number of visitors that bring its population to approximately 1 million per day. The City and

its metropolitan area are not only the island's educational, medical, legal, cultural and tourism center, but also the location of most of Puerto Rico's economic activity. The City is home to over 10,000 businesses and provides employment for over 195,000 individuals who reside in Puerto Rico.

7.     Defendant Oversight Board was created by Congress under Section 101 of PROMESA, 48 U.S.C. § 2121. Its statutory purpose is "to provide a method [for the Commonwealth of Puerto Rico] to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 2121(a).

### III. JURISDICTION AND VENUE

8.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under PROMESA.

9.     In addition, this Court has jurisdiction under Section 106(a) of PROMESA, which grants this Court jurisdiction over "any action against the Oversight Board, and any action . . . arising out of [PROMESA], in whole or in part." 48 U.S.C. § 2126(a). Because this action challenges the Oversight Board's unlawful application of Section 101 of PROMESA, Section 106(e) is inapplicable. *See* 48 U.S.C. § 2231(n)(2).

10.     The Court is authorized to provide declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

11.     Venue is proper in the District of Puerto Rico under 28 U.S.C. § 1391(b)(2), (e), and under 48 U.S.C. § 2126(a).

## IV. <u>FACTUAL ALLEGATIONS</u>

### A. <u>PROMESA Grants the Oversight Board Certain Oversight Authority</u>[1]

12.      On June 30, 2016, Congress enacted PROMESA. In addition to providing a mechanism for the restructuring of Puerto Rico's debt, PROMESA created the Oversight Board and defined as its purpose to develop "a method [for the Commonwealth of Puerto Rico] to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 2121(a), (c)(1).

13.      To achieve that purpose, PROMESA provides that the "Oversight Board, in its sole discretion at such time as the Oversight Board determines to be appropriate, may designate any territorial instrumentality as a covered territorial instrumentality that is subject to the requirements of this chapter." *Id.* § 2121(d)(1)(A).

14.      Once the Oversight Board designates an entity as a "covered territorial instrumentality," the Oversight Board can require the Governor to develop a budget for such instrumentality that must be approved and certified by the Oversight Board. *Id.* §§ 2121(d)(1)(C), 2142(c).

15.      The Oversight Board also "may designate, in its sole discretion, the covered territorial instrumentality to be the subject of an Instrumentality Fiscal Plan" that must be approved and certified by the Oversight Board. *Id.* § 2121(d)(1)(E).

---

[1] Plaintiff assumes the validity of PROMESA for purposes of portions of this complaint only, and reserves all rights to challenge its constitutional and statutory validity.

Such a fiscal plan must comply with a long list of requirements set forth elsewhere in PROMESA. *See id.* § 2141(b).

**B. The Oversight Board Imposes Its Policy Preferences on Puerto Rico**

16. On September 30, 2016, the Oversight Board designated the Commonwealth and 62 other entities as covered entities subject to its oversight under PROMESA. The covered entities that have been required to submit to the Oversight Board's authority and obtain approval for their budgets and fiscal plans include:

 i. Commonwealth of Puerto Rico

 ii. Puerto Rico Sales Tax Financing Corporation ("COFINA")

 iii. Government Development Bank for Puerto Rico ("GDB")

 iv. Puerto Rico Electric Power Authority ("PREPA")

 v. Puerto Rico Aqueduct and Sewer Authority ("PRASA")

 vi. Puerto Rico Highways and Transportation Authority ("HTA")

 vii. University of Puerto Rico ("UPR")

 viii. Corporation for the Supervision and Insurance of Cooperatives of Puerto Rico ("COSSEC")

17. The Oversight Board has wielded its power under PROMESA to compel the Commonwealth and other covered entities to comply with the Oversight Board's budgetary and fiscal directives as well as impose its policy preferences. For example, the Oversight Board rejected no fewer than four fiscal plans proposed by the Commonwealth for the fiscal year 2019. Ultimately, the Oversight Board certified and imposed its own fiscal plan on the Commonwealth, which included certain policy initiatives that had previously been rejected by the Commonwealth, and which

accounted for less than an additional two percent of savings compared with the

Commonwealth's fiscal plan.

18.     The Oversight Board's imposition of its policy preferences on the

Fiscal Plan for the Commonwealth has been the subject of intense public criticism.  In

a letter dated December 6, 2018, for example, 34 United States Representatives and

three United States Senators wrote to the Oversight Board expressing concern that its

policy "appears to directly contradict the mission with which the Board was entrusted

by Congress.  [PROMESA] clearly establishes that the Fiscal Plan must 'ensure

funding of essential public services,' restructure the debt and 'provide for a debt

burden that is sustainable,' and allow for 'investments necessary to produce growth.'

. . . [I]t appears that the Board's Fiscal Plan adheres to none of the provisions

mentioned above."  Letter from members of Congress to José Carrión, Chairman of

the Oversight Board (Dec. 6, 2018).

19.     The Oversight Board's aggressive assertion of its power has exceeded

the bounds of even what is permitted under PROMESA.  In overseeing PREPA, for

example, the Oversight Board attempted to appoint a Chief Transformation Officer

for PREPA that would essentially have the powers of a CEO and displace the PREPA

Executive Director and Governing Board.  This Court rejected the proposed

appointment, reminding the Oversight Board that "Congress did not grant the [Board]

the power to supplant, bypass, or replace the Commonwealth's elected leaders and

their appointees in the exercise of their managerial duties whenever the Oversight

Board might deem such a change expedient." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 583 B.R. 626, 634 (D.P.R. 2017) (citation omitted).

### C. The Oversight Board Arbitrarily and Capriciously Designates all of Puerto Rico's Municipalities as Covered Entities Under PROMESA

20.     On May 9, 2019, the Oversight Board announced that it would massively expand its powers by designating all 78 of Puerto Rico's municipalities as covered entities subject to its control under PROMESA. Upon information and belief, this is the first time since September 2016 in which the Oversight Board has designated any entity a covered entity.

21.     The Oversight Board's indiscriminate designation of all of Puerto Rico's municipalities as covered entities violates PROMESA because this action goes beyond the limitation that Congress placed on the Oversight Board, which is to "provide a method for [the Commonwealth of Puerto Rico] to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 2121(a). The Oversight Board already exercises control over the Commonwealth's budgetary and fiscal policies. There is no apparent reason why the Oversight Board also would need to exercise control over all *municipal* finances to achieve fiscal responsibility for the *Commonwealth's* finances.

22.     Significantly, the Oversight Board has offered no rational explanation why designating all of Puerto Rico's municipalities as covered entities would further its statutory purpose of achieving fiscal responsibility for the Commonwealth. Nor has the Oversight Board explained why taking control of Puerto Rico's municipalities

has supposedly become necessary now, more than two and a half years after it
designated the Commonwealth a covered entity.  In light of the Oversight Board's
failure to provide a rational basis, its decision to impose its policy preferences on
municipal spending, regardless of whether doing so has anything to do with achieving
fiscal responsibility for the Commonwealth, is arbitrary and capricious.

23.     A number of facts indicate that the Oversight Board's designation of
the municipalities as covered entities has nothing to do with stabilizing the
Commonwealth's finances.

24.     *First*, the Oversight Board does not need to control municipal budgets
to ensure that they do not adversely affect the Commonwealth's fiscal status.  This
can be seen most clearly in the Commonwealth fiscal plans certified by the Oversight
Board, which reduce allocations to municipalities by 80% over four years.  The
Oversight Board's control of the Commonwealth's finances is more than sufficient to
permit it to take the steps it deems necessary to preserve the Commonwealth's fiscal
responsibility.

25.     *Second*, even if the Oversight Board could offer a reason why any
particular municipality could potentially affect the Commonwealth's finances, that
would not justify treating all 78 of Puerto Rico's municipalities as a monolith,
regardless of their financial status or their effect on the overall Puerto Rican
economy.  The resolution certainly does not limit the designation to those
municipalities needing to "achieve fiscal responsibility" or to municipalities (if any)
most closely-linked to Puerto Rico's finances.

26.     ***Third***, the Oversight Board's own plans, or rather lack of plans, for the vast majority of the municipalities it has designated belies any implication that their designation is necessary to achieve the Commonwealth's fiscal responsibility.  In its press conference announcing the designation, the Oversight Board revealed that it had no plans for 68 of the 78 municipalities designated.  Rather, the Oversight Board has singled out a group of 10 municipalities for a "pilot" program.  For each of these 10 municipalities, the Governor of Puerto Rico, in conjunction with the municipalities, is required to provide the Oversight Board with a "Municipal Fiscal Plan" and a "Municipal Budget."  Letter from José Carrión, Chairman of the Oversight Board, to Ricardo Rosselló Nevares, Governor of Puerto Rico (May 9, 2019).  The pilot program is aimed at "enhancing municipal and budgetary practices, and [at] developing economic development strategies to address municipal fiscal challenges."  *Id*.

27.     Some of the factors considered in the selection of these 10 municipalities were said to include their "fiscal challenges" and the "impact of the reduction of transfers from the Central Government."  *Id*.  During a press conference announcing the designation, the Executive Director of the Oversight Board, Natalie Jaresko, elaborated on the Board's criteria.  She explained that the 10 municipalities were selected by looking, among other factors, at the "fiscal vulnerability" of "all the different municipalities," "who was more reliant on the subsidies that the Commonwealth is eliminating," and the municipalities' "other revenue streams."  *See* Financial Oversight & Management Board for Puerto Rico, May 9, 2019 Press

Conference, *available* at https://oversightboard.pr.gov/live-oversight-board (last visited May 16, 2019).

28.     The selection of these 10 municipalities for special attention highlights the unreasoned approach and lack of urgency in designating the remaining 68 municipalities.  Instead of conducting an individualized assessment of each of the remaining municipalities and their links to Puerto Rico's overall fiscal health, the Oversight Board simply lumped them together in one broad and unreasoned designation.

29.     The Oversight Board's designation is thus a solution in search of a problem.  Members of the Board seemingly acknowledged as much during the press conference announcing their decision.  For instance, the Executive Director of the Board explained that each municipality is different and that there was no "general theme" to the broader designation.  *Id.*  Likewise, both the chairman of the Board, José Carrión, and the Executive Director explained that there was no specific plan for the municipalities that are not part of the pilot program.  *Id.*  In response to a question, the Executive Director stated that the Oversight Board's decision did not evince a distrust of Puerto Rico's financial projections.  All of this belies the notion that there may be a need for an all-encompassing designation.

30.     Notwithstanding the lack of a "plan," the mere designation of San Juan has injured San Juan because the Oversight Board may now, at a whim, elect to impose onerous budgetary and fiscal approval processes.  With the threat of the Oversight Board's intervention in any aspect of San Juan's budget or revenue hanging

over them, the Mayor and the municipal legislature are forced to take time to consider

how the Oversight Board may react to their decisions or seek to impose their policy

preferences, thereby depriving the people of San Juan of their right to have their

elected Mayor and legislature devote their full attention to administering the City in

the manner they consider best.

31.     With respect to San Juan in particular, the Oversight Board's

resolution said nothing at all: it gave no basis, rational or otherwise.  And the

designation happened despite the fact that San Juan has taken steps to balance its

budget with aggressive efforts to increase revenue and decrease costs.  For example,

San Juan's municipal agencies have decreased operating and personnel expenses to

reduce costs while identifying tax evaders and increasing debt collection to augment

revenues.  San Juan has also identified and sold municipal property with the dual goal

of increasing revenues and stimulating economic activity.

**D.  Designation of the Autonomous Municipality of San Juan as a Covered
    Entity Infringes the Rights of its Residents to Representative Government**

32.     The Oversight Board's subjection of municipalities to its control

undermines the self-governing structure of those municipalities provided for in the

Autonomous Municipalities Act, 21 L.P.R. § 4001, *et seq*.  As explained by the

Puerto Rican Supreme Court, "[t]he Autonomous Municipalities Act expressly

reject[ed] the centralization scheme [that] formerly prevailed in Puerto Rico. It was

declared a public policy of the Commonwealth 'to grant the municipalities the highest

possible degree of autonomy, and provide them with the financial tools and the

powers and authorities necessary in order to assume a central and key role in their urban social and economic development.'" *Mun. San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873, 886 (P.R. 1996).[2]

33.     Pursuant to the Autonomous Municipalities Act, "[e]ach municipality has legal capacity, ***independent and separate*** from the Government of the Commonwealth of Puerto Rico, with perpetual succession and legislative, administrative and fiscal capacity in all matters of a municipal nature." 21 L.P.R. § 4003 (emphasis added).

34.     In addition to being separate juridical entities, Puerto Rico's municipalities are democratically accountable at all levels, being governed by a mayor "elected in each general election by the direct vote of the electors of the corresponding municipality," *id.*, and a municipal legislature that is similarly subject to direct elections. *Id.* § 4153.

35.     The Oversight Board's unfettered and purely discretionary control over the fiscal policies of Puerto Rico's municipalities would effectively remove that accountability and transfer it to a wholly unelected body that is not directly accountable to Congress or to the President—who can only remove the members of the Oversight Board for "cause." 48 U.S.C. § 2121(e)(5)(B).

---

[2] Translation available at *Autonomous Municipality of San Juan v. The Financial Oversight and Management Board for Puerto Rico*, No. 3:17-cv-2009-LTS-JDG (D. P.R. Mar. 2, 2018), ECF No. 109-2.

36.     The Oversight Board's infringement on municipal self-government is
not authorized under PROMESA because it is not necessary to achieve the purpose of
the statute.  As explained above, control of municipal finances does not bear either on
a) the Commonwealth's fiscal responsibility, as control over the Commonwealth is
sufficient to achieve that end; or b) the Commonwealth's ability to access the capital
markets.

## V.  CAUSES OF ACTION

### Count One
### Common law review of agency action
### (PROMESA § 101, 48 U.S.C. § 2121; 28 U.S.C. § 1331)

37.     Plaintiff repeats and realleges the allegations contained in each of the
paragraphs above, as if fully set forth herein.

38.     San Juan is entitled to declaratory and injunctive relief because the
Oversight Board's designation of San Juan as a covered territorial instrumentality is
without a rational basis.

39.     The Oversight Board is a federal entity: the federal government
created it and controls it.  *Altair Glob. Credit Opportunities Fund (A), LLC v. United
States*, 138 Fed. Cl. 742, 760–63 (2018) (citing *Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995)).  Except for an *ex officio*, non-voting member, its members are
officers of the United States, who exercise their authority pursuant to the laws of the
United States.  *Aurelius Inv., LLC v. Puerto Rico*, 915 F.3d 838, 856–59 (1st Cir.
2019).

40. The Oversight Board uses federal property and services in the course of executing its mission. PROMESA expressly authorizes the Board to use federal government facilities or equipment. 48 U.S.C. § 2122. The federal Administrator of General Services is obligated to provide administrative support services to the Oversight Board. *Id.* § 2124(n). Federal employees may be hired by or detailed to the Oversight Board in accordance with the Intergovernmental Personnel Act of 1970. *Id.* § 2123. In each case, the property, services or employees used by the Board from other federal government departments or agencies may be provided on either a reimbursable or non-reimbursable basis. *Id.* §§ 2122–24.

41. The Oversight Board must provide a budget each fiscal year to, among others, the President, the House Committee on Natural Resources, and the Senate Committee on Energy and Natural Resources, and must issue certifications in connection therewith. *Id.* §§ 2127(a), 2143(c). The Board must also make annual reports to the President and Congress. *Id.* § 2148.

42. Congress created the Oversight Board to further federal government objectives pursuant to its power under Article IV, Section 3 of the United States Constitution "to dispose of and make all needful rules and regulations for territories." *Id.* § 2121(b).

43. "The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." *Id.* § 2121(a). PROMESA thus permits the Oversight Board to designate a

"territorial instrumentality as a covered territorial instrumentality" to achieve this

goal. *Id.* § 2121(d)(1)(A).

44.     The Oversight Board's May 9, 2019 resolution, which purports to

designate San Juan as a covered territorial instrumentality pursuant to 48 U.S.C.

§ 2121(d)(1)(A), does not provide **any** reason why San Juan qualifies for such

designation under 48 U.S.C. § 2121.

45.     Rather than provide reasons that justify the purported designation of

San Juan as a covered territorial instrumentality, the Oversight Board's May 9, 2019

resolution lumps San Juan with every other municipality in the Commonwealth of

Puerto Rico—78 in total—for designation.  Yet the Oversight Board provides no

individualized explanation as to why any of the municipalities warrant designation as

a covered territorial instrumentality under 48 U.S.C. § 2121.

46.     The Oversight Board's purported designation is therefore not

supported by the kind of reasoned decision making required by federal common law.

## Count Two
### Violation of the non-delegation doctrine
### (U.S. Const. Art. IV, § 3, Cl. 2)

47.     Plaintiff repeats and realleges the allegations contained in each of the

paragraphs above, as if fully set forth herein.

48.     The Oversight Board's designation of San Juan as a covered entity

violates PROMESA for the reasons set forth in Count 1 above.  In the alternative, to

the extent that the Oversight Board's designation is not deemed a violation of

PROMESA, San Juan is entitled to declaratory and injunctive relief because any

purported grant of authority to the Oversight Board to designate San Juan "as a covered territorial instrumentality that is subject to the requirements of" PROMESA under 48 U.S.C. § 2121(d)(1)(A), without regard to PROMESA's purpose, violates the non-delegation doctrine.

49.     The non-delegation doctrine is based upon separation of powers and is an important structural safeguard of the constitutional scheme.

50.     In connection with territories, Congress has historically been permitted to delegate to territorial governments the power to enact rules and regulations governing territorial affairs. When Congress confers decision-making authority upon agencies, however, it must lay down by legislative act an intelligible principle to which the person or body authorized to act is directed to conform.

51.     To the extent that Congress's delegation of authority to the Oversight Board is unaccompanied by any intelligible principles that would provide bounds to the Oversight Board's exercise of its discretion, it is unconstitutional.

**Count Three**
**Violation of the Appointments Clause**
**(U.S. Const. Art. II, § 2, Cl. 2)**

52.     Plaintiff repeats and realleges the allegations contained in each of the paragraphs above, as if fully set forth herein.

53.     As explained by the First Circuit, the appointment of the Oversight Board's members violated the Appointments Clause of the U.S. Constitution. *Aurelius Investment v. Commonwealth of Puerto Rico*, 915 F.3d 838 (1st Cir. 2019). As a result, the Oversight Board's actions, especially those taken after the First

Circuit's decision on February 15, 2019, including the May 9, 2019 designation of San Juan as a covered territorial entity, are invalid and unconstitutional. *See, e.g.*, Informative Motion and Reservation of Rights by Aurelius Capital Management, LP, *In re the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico, et al.*, No. 17-03283-LTS, ECF No. 5977 (D.P.R. March 21, 2019).

## VI. <u>PRAYER FOR RELIEF</u>

**WHEREFORE** San Juan requests that the Court enter judgment against the Defendant as follows:

i.   Declare that the Oversight Board's designation of San Juan as a covered entity violates PROMESA because it was done without a rational basis consistent with PROMESA's purpose;

ii.   In the alternative, to the extent that the Oversight Board's designation is not deemed to be a violation of PROMESA, declare that PROMESA is unconstitutional to the extent that it grants the Oversight Board discretion to designate San Juan as a covered entity without a rational basis consistent with PROMESA's purpose;

iii.   Declare that the Oversight Board's designation of San Juan as a covered territorial entity is invalid because the members of the Oversight Board were not appointed in accordance with the Appointments Clause of the U.S. Constitution;

iv.      Enjoin the Oversight Board from designating San Juan as a covered entity.

Dated:   San Juan, Puerto Rico
          May 19, 2019

CHARLIE HERNÁNDEZ LAW OFFICES
/s/ Charlie M. Hernández
USDC-PR Bar No. 207403
206 Tetuán St., Suite 701
Old San Juan, P.R. 00901-1839
Tel: 787.382.8360
Fax: 787.382.8360
charliehernandezlaw@gmail.com

MARIANI FRANCO LAW, P.S.C.
/s/ Raúl S. Mariani Franco
USDC-PR Bar No. 210309
P.O. Box 9022864
San Juan, P.R. 00902-2864
Tel: 787.620.0038
Fax: 787.620.0039
marianifrancolaw@gmail.com

*Of counsel:*

WINSTON & STRAWN LLP
Julissa Reynoso
(*Pro Hac Vice pending)*
Aldo A. Badini
(*Pro Hac Vice pending)*
Marcelo M. Blackburn
(*Pro Hac Vice pending)*
Michael A. Fernández
(*Pro Hac Vice pending)*
200 Park Avenue
New York, NY 10166-4193
Tel: 212.294.6700
Fax: 212.294.4700
jreynoso@winston.com
abadini@winston.com
mblackburn@winston.com
mafernandez@winston.com

WINSTON & STRAWN LLP
Leo Delgado
(*Pro Hac Vice Pending*)
101 California Street
35th Floor
San Francisco, CA 94111-5840
Tel: 415-591-1000
Fax: 415-591-1400
ldelgado@winston.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF PUERTO RICO

## CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

Attorney Name (Last, First, MI):

USDC-PR Bar Number:

Email Address:

1.  Title (caption) of the Case (provide only the names of the <u>first</u> party on <u>each</u> side):

    Plaintiff:

    Defendant:

2.  Indicate the category to which this case belongs:

    ☐ Ordinary Civil Case
    ☐ Social Security
    ☐ Banking
    ☐ Injunction

3.  Indicate the title and number of related cases (if any).

4.  Has a prior action between the same parties and based on the same claim ever been filed before this Court?

    ☐ Yes
    ☐ No

5.  Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

    ☐ Yes
    ☐ No

6.  Does this case question the constitutionality of a state statute? (See, Fed.R.Civ. P. 24)

    ☐ Yes
    ☐ No

Date Submitted:

rev. Dec. 2009

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS AUTONOMOUS MUNICIPALITY OF SAN JUAN | DEFENDANTS Financial Management and Oversight Board for Puerto Rico |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff Puerto Rico<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant Puerto Rico<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* Raul S. Mariani Franco; Mariani Franco LawPO Box 9022864 San Juan, PR 00902-2864; 787-620-0038; marianifrancolaw@gmail.com | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☒ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: Puerto Rico Oversight Management and Economic Stability Act (PROMESA), 48 USC 2101, et seq.

Brief description of cause: Legal challenge to Board's designation of Municipalities as covered entities

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):* JUDGE Laura Taylor Swain | DOCKET NUMBER 17 BK 3283-(LTS)

| DATE 5/19/19 | SIGNATURE OF ATTORNEY OF RECORD /s/ Raúl Mariani Franco |
|---|---|

**FOR OFFICE USE ONLY**

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.