# EXHIBIT A

**PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY**

**TO**

**CITIBANK, N.A.,**

**TRUSTEE**

————————————

**TRUST AGREEMENT**

————————————

**Dated as of October 1, 1988**

## TABLE OF CONTENTS

(This Table of Contents is not a part of the
Trust Agreement but is for convenience of reference only)

PAGE

ARTICLE I
DEFINITIONS

SECTION 101.   Definitions............................   11
SECTION 102.   Miscellaneous.........................   22

ARTICLE II
FORM, EXECUTION, AUTHENTICATION, DELIVERY
AND REGISTRATION OF BONDS

SECTION 201.   Limitation on Issuance of Bonds..........   23
SECTION 202.   Form of Bonds.........................   23
SECTION 203.   Details of Bonds......................   23
SECTION 204.   Authentication of Bonds...............   25
SECTION 205.   Exchange and Registration of Transfer....   25
SECTION 206.   Ownership of Bonds....................   26
SECTION 207.   The Series 1988 Bonds.................   27
SECTION 208.   Additional Bonds......................   29
SECTION 209.   Refunding Bonds.......................   32
SECTION 210.   Temporary Bonds.......................   36
SECTION 211.   Mutilated, Destroyed, Stolen or
               Lost Bonds............................   36
SECTION 212.   Qualification for Depository
               Trust Company.........................   37
SECTION 213.   Capital Appreciation Bonds; Capital
               Appreciation and Income Bonds..........   37
SECTION 214.   Debt Service Components...............   37

ARTICLE III
REDEMPTION OF BONDS

SECTION 301.   Redemption of Bonds...................   39
SECTION 302.   Redemption Notice.....................   39
SECTION 303.   Effect of Calling for Redemption........   40
SECTION 304.   Cancellation of Bonds.................   40
SECTION 305.   Bonds To Be Paid Not Outstanding........   41
SECTION 306.   Partial Redemption....................   41

(i)

ARTICLE IV
FUNDS AND ACCOUNTS

SECTION 401.     Sinking Fund and Accounts................     43
SECTION 402.     Withdrawals from Bond Service Account....     45
SECTION 403.     Withdrawals from Redemption Account......     45
SECTION 404.     Withdrawals from Reserve Account.........     47
SECTION 405.     Moneys Set Aside Held in Trust...........     47
SECTION 406.     Establishment of Subaccounts in the
                 Redemption Account......................     48

ARTICLE V
DEPOSITARIES OF MONEYS, SECURITY FOR
DEPOSITS AND INVESTMENTS OF FUNDS

SECTION 501.     Security for Deposits....................     49
SECTION 502.     Investment of Moneys.....................     49
SECTION 503.     Valuation of Investments.................     50
SECTION 504.     Tax Covenants............................     51

ARTICLE VI
PARTICULAR COVENANTS

SECTION 601.     Payment of Principal, Interest and
                 Premium; Pledge of Pledged Revenues....     52
SECTION 602.     No Impairment............................     52
SECTION 603.     Inclusion of Shortfall in Budget.........     52

ARTICLE VII
REMEDIES

SECTION 701.     Enforcement of Remedies..................     53
SECTION 702.     Pro Rata Application of Funds............     53
SECTION 703.     Effect of Discontinuance of Proceedings..     55
SECTION 704.     Bondholders May Control Proceedings......     55
SECTION 705.     Restrictions Upon Actions by Individual
                 Bondholders.............................     55
SECTION 706.     No Remedy Exclusive......................     56
SECTION 707.     No Delay or Omission Construed
                 to be a Waiver..........................     56
SECTION 708.     Actions of Trustee.......................     56

## ARTICLE VIII
## CONCERNING THE TRUSTEE

SECTION 801.    Acceptance of Trusts...................... 57
SECTION 802.    Trustee Entitled to Indemnity............ 57
SECTION 803.    Limitation on Trustee's Liabilities...... 57
SECTION 804.    Compensation and Indemnification
                of Trustee............................... 58
SECTION 805.    Trustee May Rely on Certificates......... 58
SECTION 806.    Notice of Default........................ 59
SECTION 807.    Trustee May Be Bondholder................ 59
SECTION 808.    Trustee Not Responsible for Recitals..... 59
SECTION 809.    Trustee Protected in Relying
                on Papers................................ 60
SECTION 810.    Resignation of Trustee................... 60
SECTION 811.    Removal of Trustee....................... 60
SECTION 812.    Appointment of Successor Trustee......... 61
SECTION 813.    Vesting of Trust with
                Successor Trustee........................ 61
SECTION 814     Reporting Requirements................... 62

## ARTICLE IX
## EXECUTION OF INSTRUMENTS BY BONDHOLDERS
## AND PROOF OF OWNERSHIP OF BONDS

SECTION 901.    Proof of Execution of Documents
                and Ownership............................ 63

## ARTICLE X
## SUPPLEMENTAL AGREEMENTS

SECTION 1001.   Supplemental Agreements Without
                Bondholders' Consent..................... 65
SECTION 1002.   Modification with Consent of Holders
                of Majority of Bonds..................... 66
SECTION 1003.   Trustee Joining in Supplemental
                Agreements............................... 68
SECTION 1004.   Responsibilities of Trustee under
                this Article............................. 68
SECTION 1005.   Bond Resolution May Be Supplemented
                or Modified.............................. 68

(iii)

ARTICLE XI
DEFEASANCE

SECTION 1101.    Defeasance...............................    70


ARTICLE XII
MISCELLANEOUS PROVISIONS

SECTION 1201.    Mergers.................................    72
SECTION 1202.    Any Notices.............................    72
SECTION 1203.    Substitute Publication and Mailing.......    72
SECTION 1204.    No Third Party Rights...................    73
SECTION 1205.    Effect of Partial Invalidity............    73
SECTION 1206.    Effect of Covenants.....................    73
SECTION 1207.    Governing Law...........................    74
SECTION 1208.    Payments Due on Saturdays, Sundays
                 and Holidays...........................    74
SECTION 1209.    Multiple Counterparts...................    74
SECTION 1210.    Headings, etc. Not Part of
                 Agreement..............................    74

THIS AGREEMENT, dated for convenience of reference as of the first day of October, 1988, by and between

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY,

a public corporation and instrumentality of the Commonwealth of Puerto Rico constituting an independent body corporate and politic (hereinafter sometimes called the "Authority"), exercising public and essential governmental functions and created by the Puerto Rico Infrastructure Financing Authority Act hereinafter mentioned, and

CITIBANK, N.A.,

a national banking association duly incorporated and existing under the laws of the United States of America and having its principal corporate trust office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers (said banking association and any banking association, bank or trust company becoming successor trustee under this Agreement being hereinafter sometimes called the "Trustee");

## W I T N E S S E T H:

WHEREAS, in order to provide financial, administrative and other assistance to public corporations and instrumentalities of the Commonwealth of Puerto Rico (the "Commonwealth") to enable them to fulfill their public purpose of providing, preserving, operating, maintaining, repairing, replacing and improving portions of the infrastructure, the Legislature of Puerto Rico duly adopted Act No. 44, approved June 21, 1988 (said Act, as amended and supplemented from time to time, the "Act") and by the Act created a public corporation and instrumentality of the Commonwealth to be known as the "Puerto Rico Infrastructure Financing Authority"; and

WHEREAS, by the Act, the Authority has the power to, among other things:

(a)   to provide assistance to any public corporation or governmental instrumentality authorized by law to provide infrastructure facilities related to water supply, treatment and distribution systems, waste water treatment and disposal systems and improvements;

(b)   to enter into an assistance contract with such a benefited entity;

- 1 -

(c) to borrow money and to issue its bonds for any of its corporate purposes, including, but not limited to, the payment of all or any portion of any indebtedness of such benefited entity;

(d) to segregate a portion of the federal excise taxes deposited into the Puerto Rico Infrastructure Fund established pursuant to Section 15 of the Act into one or more accounts and to pledge moneys in said accounts, among other purposes, to the payment of principal of and interest on bonds and other obligations of the Authority; and

WHEREAS, the Authority has heretofore entered into an agreement with Puerto Rico Aqueduct and Sewer Authority ("PRASA") dated as of July 12, 1988, pursuant to which the Authority has agreed, under certain conditions, to provide funds for the defeasance of PRASA's Puerto Rico Aqueduct and Sewer Authority Revenue and Refunding Bonds, Series 1985A (the "Outstanding PRASA Bonds"), thereby affording PRASA, among other things, additional capacity to finance its capital improvement program through the issuance of its revenue bonds; and

WHEREAS, the Authority has determined to provide for such defeasance of the Outstanding PRASA Bonds and for the payment of $15,500,000 PRASA General Obligation Notes due January 20, 1989 issued and outstanding under the terms of that certain Purchase Agreement dated January 19, 1983 by and between PRASA and Pfizer Pharmaceuticals, Inc. (the "Pfizer Debt") through the issuance of bonds payable from certain federal excise taxes deposited in a separate, segregated account of the Puerto Rico Infrastructure Fund exclusively for the purpose of paying principal of and interest on such bonds; and

WHEREAS, the proceeds of the first series of bonds to be issued hereunder will provide moneys, with other funds made available by PRASA, to defease the Outstanding PRASA Bonds, pay the Pfizer Debt, make a deposit to the Reserve Account and pay certain costs of issuance; and

WHEREAS, the Authority has determined that the bonds to be issued under this Agreement and the certificate of authentication by the Trustee to be endorsed on all such bonds shall be, respectively, in substantially the following forms, with such variations, omissions and insertions as are required or permitted by this Agreement:

- 2 -

FORM OF BOND

[Front Side of Bond]

No. ____                                                          $_____

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY
SPECIAL TAX REVENUE BOND, SERIES _____

| Maturity Date | Interest Rate | Original Issue Date | Cusip |
|---|---|---|---|
| | | | |

REGISTERED HOLDER:

PRINCIPAL AMOUNT:

    Puerto Rico Infrastructure Financing Authority (herein called the "Authority"), a public corporation and instrumentality of the Commonwealth of Puerto Rico constituting an independent body corporate and politic, is justly indebted and for value received hereby promises to pay to the Registered Holder shown above or registered assigns or legal representative on the Maturity Date specified above (or earlier as hereinafter described), from the special fund described herein, upon the presentation and surrender hereof, at the principal corporate trust office of Citibank, N.A. in the Borough of Manhattan, City and State of New York, the Principal Amount shown above, and to pay to the registered owner hereof, from the special fund described herein, by check mailed to the Registered Holder at his address as it appears on the bond registration books of the Authority, [or by wire transfer to the Registered Holder], interest on such principal amount from the date hereof or from the _____ or _____ next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a _____ or a _____ to which interest shall have been paid, in which case from such date, such interest to the maturity hereof being payable on _____ and _____ in each year, commencing _____, 19__, at the Interest Rate per annum specified above, until payment of such Principal Amount.   The interest so payable and punctually paid, or duly provided for, on any interest payment date will be paid to the person in whose name this bond is registered at the close of business on the fifteenth (15th) day (whether or not a business day) of the calendar month next preceding such interest payment date.   Any such interest not so punctually paid or duly provided for shall forthwith cease to be payable to the Regis-

- 3 -

tered Holder on such date, and may be paid to the person in whose name this bond is registered at the close of business on a special record date for the payment of such defaulted interest to be fixed by the Trustee, on a date established by the Trustee, notice thereof being given to the Holders not less than ten (10) days prior to such special record date, or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the bonds of this series may be listed and upon such notice as may be required by such exchange. Such payment of interest shall be by check mailed to the Registered Holder at his address as it appears on the bond registration books of the Authority maintained by the Trustee [or by wire transfer to said holder]. All such payments shall be made in such coin or currency of _____.

This bond shall not be deemed to constitute an indebtedness of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable therefor, and this bond shall be payable solely out of those funds pledged for the payment thereof.

ADDITIONAL PROVISIONS OF THIS BOND ARE SET FORTH ON THE REVERSE HEREIN AND SHALL FOR ALL PURPOSES HAVE THE SAME EFFECT AS IF SET FORTH HERE.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement unless and until this bond shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Puerto Rico Infrastructure Financing Authority has caused this bond to bear the facsimile signature of its Executive Director and a facsimile of the corporate seal to be imprinted hereon and attested to by its Secretary by facsimile signature, all as of the _____ day of _____, 19__.


[Facsimile of                    PUERTO RICO INFRASTRUCTURE
 Corporate Seal]                 FINANCING AUTHORITY


                                 By: _____[Facsimile Signature]_____
                                          Executive Director

Attest:


  __[Facsimile Signature]__
          Secretary

## CERTIFICATE OF AUTHENTICATION

This is one of the bonds of the series designated therein and issued under and secured by the provisions of the within mentioned Agreement.

                              CITIBANK, N.A.,
                              as Trustee

                              By: _____
                                      Authorized Signatory

Date of authentication: _____


[Reverse Side of Bond]

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY
SPECIAL TAX REVENUE BOND, SERIES _____


This bond is one of a duly authorized series of Bonds designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series _____" issued by the Authority in the aggregate principal amount of _____ Dollars ($_____) for the purpose of providing funds, with any other available funds, for the purpose of _____. This bond is issued under and secured by a trust agreement dated as of October 1, 1988 (said agreement, together with all supplemental agreements therein permitted, being herein called the "Agreement"), by and between the Authority and Citibank, N.A., trustee (said trustee and any successor trustee under the Agreement being herein called the "Trustee"). An executed counterpart of the Agreement is on file at the principal corporate trust office of the Trustee in the Borough of Manhattan, City and State of New York. By the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Agreement.

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly the Puerto Rico Infrastructure Financing Authority

- 5 -

Act (Act No. 44 of the Legislature of Puerto Rico, approved June
21, 1988, said Act being herein called the "Authority Act") and
under and pursuant to resolutions duly adopted by the Executive
Committee of the Board of Directors of the Authority.   The
Agreement provides for the issuance of additional series of bonds
and for the incurrence of other indebtedness under the condi-
tions, limitations and restrictions therein set forth.   The
Agreement also provides for the creation of a special fund
designated "Puerto Rico Infrastructure Financing Authority
Special Tax Revenue Bonds Sinking Fund" and for the deposit to
the credit of said special fund of a sufficient amount of the
Pledged Revenues (as defined in the Agreement) to pay the
principal of and interest on all bonds issued under the Agreement
as the same become due and payable and to provide a reserve
therefor, which special fund is pledged to and charged with the
payment of such principal and interest.

The bonds of this series consist of bonds maturing on ____
of the years ____ to ____, inclusive (the "Serial Bonds") and of
bonds maturing on _____ 1, _____ (the "_____ Term Bonds"),
on _____ 1, _____ (the "_____ Term Bonds") and on
1, ____ (the "_____ Term Bonds").

[Applicable Terms of Redemption]

If less than all of the bonds of any one maturity shall be
called for redemption, the particular bonds or portions of bonds
to be redeemed shall be selected by the Trustee by such method as
it shall deem fair and appropriate.

At least _____ (___) days before the redemption date of any
bonds to be redeemed in whole or in part, the Trustee shall cause
a notice of such redemption to be mailed, by first class mail,
postage prepaid, to all registered owners of bonds to be redeemed
at their addresses appearing upon the bond registration books of
the Authority.  The failure to mail such notice to any registered
owner of bonds or any defect in any notice so mailed shall not
affect the validity of the proceedings for the redemption of
bonds of other registered owners.  On the date fixed for redemp-
tion, notice having been given as aforesaid, the bonds or por-
tions thereof so called for redemption shall be due and payable
at the redemption price provided for the redemption of such Bonds
or portions thereof on such date, and, if sufficient moneys or
certain securities which may consist of (i) direct or guaranteed
obligations of the United States of America (and evidences of
ownership of proportionate interests in future interest or prin-
cipal payments on such obligations), (ii) certain municipal
obligations irrevocably secured by direct or guaranteed obliga-
tions of the United States of America (and evidences of ownership
of proportionate interests in future interest or principal pay-
ments on such obligations), or (iii) obligations issued by
Federal National Mortgage Association, Federal Home Loan Mortgage

- 6 -

Corporation, Farm Credit System, Federal Home Loan Banks or Student Loan Marketing Association, the principal of and interest on which obligations when due will provide sufficient moneys for payment of the redemption price and the accrued interest on the bonds to be redeemed are held by the Trustee, as provided in the Agreement, interest on the bonds or the portions thereof so called for redemption shall cease to accrue, such bonds or portions thereof shall cease to be entitled to any benefit or security under the Agreement, and the Registered Holders thereof shall have no rights in respect of such bonds or portions thereof except to receive payment of the redemption price thereof and the accrued interest thereon. If a portion of this bond shall be called for redemption, a new bond or bonds of authorized denominations in an aggregate principal amount equal to the unredeemed portion hereof will be issued to the Registered Holder hereof, or his legal representative upon the surrender hereof.

The Registered Holder of this bond shall have no right to enforce the provisions of the Agreement, or to institute action to enforce the covenants therein, or to take any action with respect to any default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereof, except as provided in the Agreement.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made only to the extent and in the circumstances permitted by the Agreement.

The bonds of this series are issuable as fully registered bonds in the denomination of $_____ and any integral multiple thereof. At the principal corporate trust office of the Trustee, in the manner and subject to the conditions provided in the Agreement and without cost to the Registered Holders thereof except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The Trustee is required to keep at its principal corporate trust office the books of the Authority for the registration of and for the registration of transfers of bonds. The transfer of this bond may be registered only upon such books and as otherwise provided in the Agreement upon the surrender hereof to the Trustee together with an assignment duly executed by the registered owner hereof or his attorney or legal representative in the form set forth on this bond or in such other form as shall be satisfactory to the Trustee. Upon any registration of transfer, the Trustee shall deliver in exchange for this bond, a new bond or bonds registered in the name of the transferee, of authorized denominations, in an aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

- 7 -

The Trustee shall not be required to exchange or register any transfer of this bond during the fifteen (15) days immediately preceding the date of mailing of notice of any redemption of bonds of this series, or after this bond or any portion thereof has been selected for redemption.

This bond, notwithstanding the provisions for the registration of transfer contained in the Agreement, shall have all the qualities and incidents, including negotiability, of negotiable instruments under the laws of Puerto Rico.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of Puerto Rico, including the Authority Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution and delivery of the Agreement have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

- 8 -

[Form of Assignment]

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto _____
the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints _____ attorney to register the transfer of the within bond on the books kept for registration thereof with full power of substitution in the premises.

Dated: _____

|  | NOTICE:   The signature of this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever. |

Social Security Number or
Employer Identification Number
of Transferee: _____

Signature Guaranteed:

|  | NOTICE:   Signatures must be guaranteed by a member firm of the New York Stock Exchange or a commercial bank or a trust company. |

- 9 -

WHEREAS, by virtue of the Act, the Authority is authorized to issue its bonds as hereinafter provided, to enter into this Agreement and to do or cause to be done all of the acts and things herein provided or required to be done as hereinafter covenanted; and

WHEREAS, the execution and delivery of this Agreement have been duly authorized by resolution of the Authority; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of Puerto Rico, including the Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Agreement have happened, exist and have been performed as so required, in order to make this Agreement a valid, binding and legal trust agreement for the security of the Bonds in accordance with its terms; and

WHEREAS, the Trustee has accepted the trusts created by this Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the premises, of the acceptance by the Trustee of the trusts hereby created, and of the purchase and acceptance of the Bonds by the Holders thereof, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Agreement, the receipt of which is hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which the Bonds are to be issued, executed, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become Holders thereof, and in order to secure the payment of the Bonds at any time issued and outstanding hereunder and the interest and premium, if any, thereon according to their tenor, purport and effect, and in order to secure the performance and observance of all the covenants, agreements and conditions therein and herein contained, the Authority has executed and delivered this Agreement and has pledged and does hereby pledge to the Trustee the Pledged Revenues (as defined herein) and as security for the payment of the Bonds and the interest and premium, if any, thereon and as security for the satisfaction of any other obligation assumed by it in connection with such Bonds, and it is mutually agreed and covenanted by and among the parties hereto, for the equal and proportionate benefit and security of all and singular the present and future Holders of the Bonds, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one Bond over any other Bond by reason of priority in the issue, sale or negotiation thereof or otherwise, as follows:

- 10 -

# ARTICLE I

## DEFINITIONS

SECTION 101. <u>Definitions</u>. As used in this Agreement, except as otherwise defined below, words and terms shall have the meanings ascribed to them in the recitals to this Agreement. In addition, the following words and terms shall have the following meanings, unless some other meaning is plainly intended:

"Accreted Value" shall mean, with respect to any Capital Appreciation Bond, an amount equal to the principal amount of such Capital Appreciation Bond (the principal amount on the date of original issuance) plus the interest accrued on such Capital Appreciation Bond from the date of original issuance to the date of calculation, compounded on the dates and in the manner provided for in the resolution authorizing the issuance of such Capital Appreciation Bond.

"Amortization Requirement" for the Term Bonds of any Series for any Fiscal Year shall mean the amount fixed or computed for the retirement by purchase or redemption of Term Bonds in such Fiscal Year or on the first day of the next succeeding Fiscal Year as provided herein.

If at the close of any Fiscal Year the total amount of Term Bonds of any Series retired by purchase or redemption, or prior to the close of such Fiscal Year called for redemption under the provisions of Section 403 of this Agreement, shall be in excess of the amount of the Amortization Requirement for the Term Bonds of such Series for such Fiscal Year, then the amount of the Amortization Requirements for the Term Bonds of such Series shall be reduced for such subsequent Fiscal Years in such amounts aggregating the amount of such excess as shall be determined by the Executive Director in an order filed with the Trustee on or before the 10th day of the month following the close of such Fiscal Year.

If at the close of any Fiscal Year the total principal amount of Term Bonds of any Series retired by purchase or redemption, or called for redemption under the provisions of Section 403 of this Agreement, prior to the close of such Fiscal Year shall be less than the amount of the Amortization Requirement for the Term Bonds of such Series for such Fiscal Year, then the amount of the Amortization Requirement for the term bonds of such Series for the next succeeding Fiscal Year shall be increased by the amount of such deficiency.

It shall be the duty of the Trustee, on or before the 15th day of each Fiscal Year, to compute the Amortization Requirement

- 11 -

for the then current Fiscal Year for the Term Bonds of each
Series then Outstanding.   The Amortization Requirement for the
then current Fiscal Year shall continue to be applicable during
the balance of such current Fiscal Year and no adjustment shall
be made therein by reason of Term Bonds purchased or redeemed or
called for redemption during such current Fiscal Year.

"Appreciated Value" shall mean, (i) with respect to any
Capital Appreciation and Income Bond up to the Interest Commence-
ment Date set forth in the resolution of the Board providing for
the issuance of such Bond, an amount equal to the Accreted Value
of such Bonds, and (ii) as of any date of computation on and
after the Interest Commencement Date, an amount equal to the
Accreted Value on the Interest Commencement Date.

"Arbitrage Rebate Fund" shall mean a fund or funds estab-
lished by the Authority with a Qualified Depositary for the
deposit of moneys necessary for payments required to be made to
the United States of America in connection with any Series of
Bonds subject to arbitrage rebate requirements under the Code.
The moneys in such fund or funds shall be applied only for the
purposes for which such fund of funds are established and shall
not be subject to a lien or charge in favor of the Holders of any
Bonds and shall not be pledged as security for the payment of any
Bonds.

"Authority" shall mean Puerto Rico Infrastructure Financing
Authority, a public corporation and instrumentality of the
Commonwealth of Puerto Rico constituting an independent body
corporate and politic, created by the Act, and the successor or
successors of the Authority.

"Balloon Bonds" shall mean any Bonds, interest on which is
payable periodically and twenty five percent (25%) or more of the
original principal amount of which matures during any one Fiscal
Year and for which maturing principal amount Amortization
Requirements have not been designated.

"Board" shall mean the Board of Directors of the Authority
as constituted from time to time and defined by the Act, or, if
said Board shall be abolished, the board or body succeeding to
the principal functions thereof or to whom the powers of the
Authority shall be given by law.

"Bond Service Account" shall mean the account of that name
established in the Sinking Fund under Section 401 hereof.

"Bondholder", "Holder", "Holder of Bonds", or "Owner" or any
similar term, shall mean any person who shall be the registered
owner of any Outstanding Bond or Bonds.

- 12 -

"Bonds" shall mean the Bonds of the Authority issued under Sections 207, 208 and 209 hereof.

"Capital Appreciation Bonds" shall mean any Bonds as to which interest is compounded periodically on each of the dates designated for compounding in the resolution authorizing said Bonds and payable in an amount equal to the then current Accreted Value only at the maturity, earlier redemption or other payment date therefor, all as so provided by such resolution, and which may be either Serial Bonds or Term Bonds.

"Capital Appreciation and Income Bonds" shall mean any Bonds as to which accruing interest is not paid prior to the Interest Commencement Date specified in the resolution authorizing such Bonds and the Appreciated Value for such Bonds is compounded periodically on the dates designated in such resolution prior to the Interest Commencement Date for such Capital Appreciation and Income Bonds, and which may be either Serial Bonds or Term Bonds.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and the regulations promulgated thereunder and applicable regulations promulgated under the Internal Revenue Code of 1954, as amended.

"Credit Facility" shall mean an irrevocable letter of credit, policy of municipal bond insurance, guaranty, purchase agreement, credit agreement or similar facility in which the person providing such facility irrevocably agrees to provide funds to make payment of the principal of, premium, if any, and interest on Bonds to which such Credit Facility relates.

"Debt Service Component" shall mean indebtedness incurred in accordance with the requirements of Section 214 hereof.

"Executive Director" shall mean the Executive Director or Deputy Executive Director of the Authority from time to time or if there is no Executive Director or Deputy Executive Director, then any person designated by the Board or by the bylaws of the Authority to perform the functions of the Executive Director.

"Extendible Maturity Bonds" shall mean Bonds the maturities of which, by their terms, may be extended by and at the option of the Holders of the Bonds or the Authority.

"Fiscal Year" shall mean the period commencing on the first day of July of any year and ending on the last day of June of the following year or any other twelve month period designated by the Board.

- 13 -

"Government Obligations" shall mean (i) direct obligations of, or obligations the payment of the principal of and interest on which are unconditionally guaranteed by, the United States of America; (ii) evidences of ownership of proportionate interests in future interest or principal payments on obligations specified in clause (i) above held by a bank (including the Trustee) or trust company as custodian, under which the owner of said interests is the real party in interest and has the right to proceed directly and individually against the obligor on the underlying obligations described in said clause (i), and which underlying obligations are not available to satisfy any claim of the custodian or any person claiming through the custodian or to whom the custodian may be obligated; (iii) municipal obligations, the payment of the principal of, interest and redemption premium, if any, on which are irrevocably secured by obligations described in clause (i) or (ii) above and which obligations are not subject to redemption prior to the date on which the proceeds attributable to the principal of such obligations are to be used and have been deposited in an escrow account that is irrevocably pledged to the payment of the principal of and interest and redemption premium, if any, on such municipal obligations; and (iv) evidences of ownership of proportionate interests in future interest or principal payments on obligations specified in clause (iii) above held by a bank (including the Trustee) or trust company as custodian, under which the owner of said interests is the real party in interest and has the right to proceed directly and individually against the underlying obligations described in said clause (iii), and which underlying obligations are not available to satisfy any claim of the custodian or any person claiming through the custodian or to whom the custodian may be obligated.

"Interest Commencement Date" shall mean, with respect to any Capital Appreciation and Income Bond, the date specified in the resolution providing for the issuance of such Bond after which interest accruing on such Bond shall be payable semiannually or otherwise on a periodic basis, with the first such payment date being the applicable Interest Payment Date immediately succeeding such Interest Commencement Date.

"Interest Payment Dates" shall mean the dates on which interest on a Series of Bonds or portion thereof is scheduled to be due and payable, as is provided by a resolution of the Board adopted prior to the issuance of such Series of Bonds.

"Interim Bonds" shall mean any Bonds issued on an interim basis that are expected to be repaid from the proceeds of Bonds or other indebtedness.

"Investment Obligations" shall mean any of the following, to the extent that the same is legal for the investment of public

- 14 -

funds under the laws of the Commonwealth and which legality for
investment shall be certified by the Authority upon the request
of the Trustee:

    (i)    Government Obligations;

    (ii)    obligations issued or guaranteed by an agency of
the United States of America or person controlled by or
supervised by and acting as an instrumentality of the United
States of America pursuant to authority granted by Congress,
whether now existing or hereafter organized, including but
not limited to those of the Federal Home Loan Mortgage
Corporation, Federal Home Loan Banks, Farm Credit System,
Student Loan Marketing Association and Federal National
Mortgage Association and evidences of ownership of
proportionate interests in future interest or principal
payments in obligations specified above held by a bank
(including the Trustee) or trust company as custodian, under
which the owner of said interests is the real party in
interest and has the right to proceed directly and indiv-
idually against the obligor on the underlying obligations
described above, and which underlying obligations are not
available to satisfy any claim of the custodian or any per-
son claiming through the custodian or to whom the custodian
may be obligated;

    (iii)    bankers acceptances, certificates of deposit or
time deposits of any bank (including the Trustee), trust
company or savings and loan association (including any
investment in pools of such bankers acceptances, certifi-
cates of deposit or time deposits), which to the extent that
such obligations are not insured by the Federal Deposit
Insurance Corporation or the Federal Savings and Loan Insur-
ance Corporation, are either (A) issued by a bank, trust
company or savings and loan association having, on the date
of investment, a combined capital and surplus aggregating at
least $50,000,000 or (B) collateralized at all times by such
securities, as are described in clauses (i) or (ii) above,
having a market value at least equal to the principal amount
of such bankers acceptances, certificates of deposit or time
deposits (or portion thereof not so insured) provided that
the Trustee has a perfected first lien security interest in
the collateral and that such collateral is held free and
clear of claims by third parties;

    (iv)    obligations issued by any state or territory of
the United States of America, which are rated, on the date
of investment therein, in one of the three highest rating
categories (without regard to any gradation within such
category) by both Moody's Investors Service, Inc. or any

- 15 -

successors thereto and Standard & Poor's Corporation or any
successors thereto;

(v)   municipal obligations, which are rated, on the
date of investment therein, in one of the three highest
rating categories (without regard to any gradation within
such category) by both Moody's Investors Service, Inc. or
any successors thereto and Standard & Poor's Corporation or
any successors thereto;

(vi)   any repurchase, reverse repurchase or investment
agreement with any bank (including the Trustee), trust
company, insurance company, or government bond dealer
reporting to, trading with, and recognized as a primary
dealer by the Federal Reserve Bank of New York and a member
of the Security Investors Protection Corporation, which
agreement is secured by any one or more of the securities
described in (i) or (ii) above, provided that the Trustee
has a perfected first lien security interest in the col-
lateral and that such collateral is held free and clear of
claims by third parties;

(vii)   commercial paper rated, or backed by a letter of
credit or line of credit rated, on the date of investment
therein, in one of the three highest rating categories
(without regard to any gradation within such category) by
both Moody's Investors Service, Inc. or any successors
thereto and Standard & Poor's Corporation or any successors
thereto; and

(viii)   any other investment obligations, which are
rated, on the date of investment therein, in one of the
three highest rating categories (without regard to any grad-
ation within such category) by both Moody's Investors Ser-
vice, Inc. or any successors thereto and Standard & Poor's
Corporation or any successors thereto.

"Liquidity Facility" shall mean a letter of credit, policy
of municipal bond insurance, guaranty, purchase agreement or
similar facility in which the person providing such facility
agrees to provide funds to pay the purchase price of Put Bonds
upon their tender by the Holders of Put Bonds.

"Offshore Excise Taxes" shall mean the federal excise taxes
on rum and other articles produced in Puerto Rico and sold in the
United States that are collected by the United States government
and remitted to the Puerto Rico Treasury Department pursuant to
the Code and other provisions of law.

"Outstanding" when used with reference to the Bonds shall mean, as of any date of determination, all Bonds theretofore authenticated and delivered except:

(i)   Bonds theretofore cancelled by the Trustee or delivered to the Trustee for cancellation;

(ii)   Bonds that are deemed paid and no longer Outstanding as provided herein;

(iii)   Bonds in lieu of which other Bonds have been issued pursuant to the provisions hereof relating to Bonds destroyed, mutilated, stolen or lost, unless evidence satisfactory to the Trustee has been received that any such Bond is held by a bona fide purchaser;

(iv)   Bonds tendered or deemed tendered pursuant to any tender provisions, as further provided in the resolution adopted by the Board for any Series of Bonds; and

(v)   for purposes of any consent or other action to be taken hereunder by the Holders of a specified percentage of principal amount of Bonds, Bonds known by the Trustee to be held by or for the account of the Authority.

"Pledged Revenues" shall mean the Special Tax Revenues and any other moneys that have been deposited to the credit of the Sinking Fund.

"PRASA" shall mean Puerto Rico Aqueduct and Sewer Authority, a public corporation and an autonomous governmental instrumentality of the Commonwealth and the successor or successors thereof.

"Principal Corporate Trust Office" or "principal corporate trust office" of the Trustee shall mean the principal corporate trust office of the Trustee, at which, at any particular time, its corporate trust business shall be administered, except that with respect to presentation of Bonds for payment or for registration of transfer or exchange and the location of the bond registration books, such term shall mean the office or agency of the Trustee, if different, at which, at any particular time, its corporate agency business shall be conducted.

"Principal and Interest Requirements" for any Fiscal Year, as applied to the Bonds of any Series, shall mean the sum of:

(i)   the amount required to pay the interest on all Bonds of such Series then Outstanding that is payable on each Interest Payment Date in such Fiscal Year;

- 17 -

(ii)  the amount required to pay the principal of all Serial Bonds of such Series then Outstanding that is payable upon the maturity of such Serial Bonds in such Fiscal Year; and

(iii)  the Amortization Requirement for the Outstanding Term Bonds of such Series for such Fiscal Year.

If an Interest Payment Date or a principal payment date for any Series of Bonds is the first day of a Fiscal Year, such payment date shall be included for purposes of this defini-tion as if occurring on the last day of the preceding Fiscal Year.

The following rules shall apply in determining the amount of the Principal and Interest Requirements:

(a)  The interest on Variable Rate Bonds shall be the interest to accrue on such Variable Rate Bonds for such Fiscal Year; provided, however, that (1) for purposes of determining the maximum Principal and Interest Requirements on Outstanding Bonds for any Fiscal Year under Section 208(c)(ii) and (d)(ii), Section 209(f) and Section 401(c) of this Agreement, the interest on Variable Rate Bonds shall be assumed to be the greater of (A) one hundred ten percent (110%) of the average interest rate on such Variable Rate Bonds during the twelve months ending with the month preced-ing the date of calculation or such shorter period that such Variable Rate Bonds shall have been Outstanding, and (B) the actual rate of interest on such Variable Rate Bonds on the date of calculation; provided that if a Series of Variable Rate Bonds had not been Outstanding prior to the date of calculation, the test set forth in clause (A) above shall be calculated as though said Variable Rate Bonds had been Out-standing for the twelve month period by using the average interest rate for comparable securities for such period as certified by an underwriting or investment banking firm experienced in marketing such securities;

(b)  In the case of Put Bonds, the "put" date or dates shall be ignored if said "put" is payable from a Credit Facility or a Liquidity Facility, and the stated Fiscal Years for Amortization Requirements and dates for principal payments shall be used, and in the case of Bonds secured by a Credit Facility or a Liquidity Facility, the repayment terms of each Credit Facility or Liquidity Facil-ity (whether or not evidenced by provisions included in the Bonds, such as interest rate adjustments to apply if an unreimbursed drawing on the Credit Facility or Liquidity

- 18 -

Facility shall occur) shall be ignored unless the issuer of the Credit Facility or a Liquidity Facility has advanced funds thereunder and such amount has not been repaid, in which case Principal and Interest Requirements shall include the repayment obligation thereof in lieu of the stated terms of the Bonds, in accordance with the principal repayment schedule and interest rate or rates specified in the documents relating to such Credit Facility or Liquidity Facility, if the repayment obligation is secured on a parity with Bonds;

(c)   In the case of Extendible Maturity Bonds, the Bonds shall be deemed to mature on the later of the stated maturity date and the date to which such stated maturity date has been extended;

(d)   In the case of Capital Appreciation Bonds, the principal and interest portions of the Accreted Value of Capital Appreciation Bonds becoming due at maturity or by virtue of an Amortization Requirement shall be included in the year in which said principal and interest portions are due;

(e)   In the case of Capital Appreciation and Income Bonds, the principal and interest portions of the Appreci-ated Value of Capital Appreciation and Income Bonds shall be included in the year in which said principal and interest portions are due;

(f)   In the case of Balloon Bonds or Interim Bonds, the debt service requirements of the Balloon Bonds or Interim Bonds may be excluded and in lieu thereof the Bal-loon Bonds or Interim Bonds shall be viewed as debt securi-ties having a comparable federal tax status as such Balloon Bonds or Interim Bonds, hypothetically maturing in substan-tially equal annual payments of principal and interest over a period of not more than 30 years (as determined in the certificate described below) from the date of issuance thereof, bearing interest at a fixed rate per annum equal to the average interest rate per annum for such debt securities on the date of issuance of the Balloon Bonds or Interim Bonds and issued by issuers having a credit rating, issued by Moody's Investors Services, Inc. or any successors thereto or Standard & Poor's Corporation or any successors thereto comparable to that of the Authority, as shown by a certificate of an underwriting or investment banking firm experienced in marketing such securities; and

(g)   If all or a portion of the principal of or interest on a Series of Bonds is payable from funds irrevo-

- 19 -

cably set aside or deposited for such purpose, together with projected earnings thereon to the extent such earnings are projected to be from Investment Obligations, such principal or interest shall not be included in determining Principal and Interest Requirements; provided that the Trustee shall have received on or prior to the date of calculation a verification from an independent certified public accountant demonstrating the sufficiency of such funds and projected earnings for such purpose.

The Principal and Interest Requirements for any Fiscal Year, as applied to Debt Service Components, shall mean the payments due and payable for such Fiscal Year and, to the extent applicable, shall be determined in accordance with the foregoing rules.

"Puerto Rico Infrastructure Fund" shall mean the Fund of that name designated by the Act.

"Put Bonds" shall mean Bonds that by their terms may be tendered by and at the option of the Holder thereof for payment prior to the stated maturity thereof.

"Qualified Depositary or Depositaries" shall mean one or more banks or trust companies designated or permitted to be designated by the Secretary of the Treasury of the Commonwealth as a depositary for funds of agencies and instrumentalities of the Commonwealth of Puerto Rico, which have been designated as depositaries of the Authority by resolution of the Board remaining in full force and effect.

"Redemption Account" shall mean the account of that name established in the Sinking Fund under Section 401 hereof.

"Reserve Account" shall mean the account of that name established in the Sinking Fund under Section 401 hereof.

"Reserve Account Insurance Policy" shall mean the insurance policy, surety bond or other evidence of insurance deposited for the credit of the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, which policy, bond or other evidence of insurance constitutes an unconditional senior obligation of the issuer thereof. The issuer thereof shall be a municipal bond insurer whose senior debt obligations, ranking pari passu with its obligations under such policy, bond or other evidence of insurance, are rated, at the time of deposit for the credit of the Reserve Account, in any of the three highest rating categories of either Moody's Investors Service, Inc. or any successors thereto or Standard & Poor's Corporation or any successors thereto.

"Reserve Account Letter of Credit" shall mean the irrevocable, transferable letter of credit deposited in the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, which letter of credit constitutes an unconditional senior obligation of the issuer thereof.  The issuer of such letter of credit shall be a banking association, bank or trust company or branch thereof whose senior debt obligations, ranking pari passu with its obligations under such letters of credit are rated at the time of deposit to the credit of the Reserve Account, in any of the three highest rating categories of either Moody's Investors Service, Inc. or any successors thereto or Standard & Poor's Corporation or any successors thereto.

"Secretary" shall mean the Secretary or Assistant Secretary of the Authority from time to time, or if there is no secretary or assistant secretary, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Secretary.

"Serial Bonds" shall mean the Bonds designated serial bonds in the resolutions authorizing such Bonds.

"Series" shall mean all of the Bonds authenticated and delivered at one time on original issuance and pursuant to any resolution authorizing such Bonds as a separate Series of Bonds, or any Bonds thereafter authenticated and delivered in lieu of or in substitution for such Bonds pursuant to Article II hereof, regardless of variations in maturity, interest rate or other provisions.

"Series 1988 Bonds" shall mean the Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 1988A.

"Sinking Fund" shall mean the "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds Sinking Fund", a special fund created and designated by Section 401 hereof.

"Special Tax Revenues" shall mean the Offshore Excise Taxes deposited to the credit of the Puerto Rico Infrastructure Fund pursuant to the Act.

"Term Bonds" shall mean the Bonds designated term bonds in the resolutions authorizing such Bonds.

"Trustee" shall mean the person named as the "Trustee" in the first paragraph of this Agreement until a successor Trustee shall have become such, and thereafter "Trustee" shall mean or include each person who is then a Trustee hereunder.

- 21 -

"Variable Rate Bonds" shall mean Bonds issued with a variable, adjustable, convertible or similar interest rate that is not fixed in percentage at the date of issue for the term thereof.

SECTION 102.  <u>Miscellaneous</u>.  Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.  Words defined in Section 101 hereof that appear in this Agreement in lower case shall have the meanings ascribed to them in the definitions in Section 101 unless the context shall otherwise indicate.  The words "Bond", "Owner", "Holder" and "person" shall include the plural as well as the singular number unless the context shall otherwise indicate.  The word "person" shall include corporations, firms and associations, including public bodies, as well as natural persons, unless the context shall otherwise indicate.  The word "Bond" or "Bonds" and the words "revenue bond" or "revenue bonds" shall mean any Bond or Bonds or all of the Bonds, as the case may be, issued under the provisions of this Agreement.  The word "Agreement" shall include this Agreement and each agreement supplemental hereto.

- 22 -

## ARTICLE II

### FORM, EXECUTION, AUTHENTICATION, DELIVERY AND REGISTRATION OF BONDS

SECTION 201.  Limitation on Issuance of Bonds.  No Bonds may be issued under the provisions of this Agreement except in accordance with the provisions of this Article.

SECTION 202.  Form of Bonds.  The Bonds issued under the provisions of this Agreement shall be in substantially the form hereinabove set forth, with such appropriate variations, omissions and insertions as are permitted or required by this Agreement and with such additional changes as may be necessary or appropriate to conform to the provisions of the resolution or resolutions providing for the issuance of such Bonds, including changes required for the issuance of different types of Bonds which may reflect, without limitation, provisions for Capital Appreciation Bonds, Capital Appreciation and Income Bonds, Balloon Bonds, Interim Bonds, Variable Rate Bonds, Extendible Maturity Bonds and Put Bonds.  All such Bonds may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or any usage or requirement of law with respect thereto.

SECTION 203.  Details of Bonds.  The Bonds shall be issued in fully registered form and, if the Trustee issues notice of the availability of exchanging registered Bonds for coupon Bonds, in coupon form.  If the Trustee receives a written request of the Authority for the delivery of coupon Bonds and an opinion of counsel of recognized standing in the field of law relating to municipal bonds to the effect that the issuance of any of the Bonds in coupon form will not adversely affect the exclusion from gross income of the interest on any of the Bonds for Federal income tax purposes, if such exclusion is otherwise applicable, the Trustee shall mail notice to the Holders of the Bonds of the availability of exchanging registered Bonds and coupon Bonds. Registered Bonds may then be exchanged for an equal aggregate principal amount of coupon Bonds of the same Series and maturity of any authorized denomination and bearing interest at the same rate as the exchanged Bonds and coupon Bonds may be exchanged for an equal aggregate principal amount of fully registered Bonds in the manner provided in this Agreement, as the Agreement may be supplemented to provide for coupon Bonds.

The Bonds of a Series shall be payable, with respect to interest, principal and premium, if any, in any coin or currency of the United States of America which at the time of payment is legal tender for public and private debts (or other coin or

- 23 -

currency provided for in the resolution authorizing the issuance
of the particular Series).   The principal of Bonds shall be
payable only to the Holder or his legal representative at the
principal corporate trust office of the Trustee and at such other
office or agency of any paying agent as the Board may designate
from time to time upon the presentation and surrender of the
Bonds (except as otherwise provided in Section 211 hereof).   The
Bonds of each Series shall be dated as provided in a resolution
of the Board;   shall bear interest, which may be fixed or
variable, from the Interest Payment Date next preceding the date
on which they are authenticated unless authenticated on an
Interest Payment Date, in which event they shall bear interest
from such Interest Payment Date, or are authenticated before the
first Interest Payment Date in which event they shall bear
interest from their date, provided, however, that if at the time
of authentication of any Bond interest is in default, such Bond
shall bear interest from the date to which interest has been
paid.   Capital Appreciation Bonds shall bear interest as
described under the defined term Accreted Value, payable on the
amount due at maturity only upon redemption, acceleration or
maturity thereof, and Capital Appreciation and Income Bonds shall
bear interest as described under the defined term Appreciated
Value, payable on the amount due at maturity but only from and
after the Interest Commencement Date.   The interest rate shall
not exceed the applicable maximum legal rate per annum.   Interest
on the Bonds shall be payable by check mailed to the registered
Holder thereof by the Trustee or any other paying agents
appointed by the Authority at the address shown on the regis-
tration books of the Authority held by the Trustee at the close
of business on the fifteenth (15th) day (whether or not a busi-
ness day) of the calendar month preceding an Interest Payment
Date or such other date as may be established by resolution for
any Bonds; provided that to the extent provided in the resolution
authorizing the issuance of Bonds interest shall be payable by
wire transfer.   The Bonds shall be lettered and numbered in such
manner and shall be in the denominations provided in the
resolutions of the Board authorizing their issuance.   In the
event that interest is not punctually paid or duly provided for,
such interest shall forthwith cease to be payable to the Holder
shown on the registration books held by the Trustee at the close
of business on the fifteenth (15th) day of the calendar month
preceding such Interest Payment Date and may be paid to the
person in whose name Bonds are registered at the close of
business on a special record date to be fixed by the Trustee, on
a special payment date designated by the Trustee, notice having
been given by the Trustee to the Holders not less than ten (10)
days prior to such special record date or may be paid at any time
in any other lawful manner not inconsistent with the requirements
of any securities exchange on which Bonds may be listed and upon
such notice as may be required by such exchange, or as more fully

- 24 -

provided for in the resolution of the Board authorizing the issu-
ance of the Bonds.  The above procedure for the payment of
defaulted interest overdue may be varied in resolutions of the
Board authorizing the issuance of particular Series of Bonds,
which resolutions may also provide for the payment of such inter-
est at defaulted interest rates.

The Bonds shall be signed in the name of the Authority by
the Executive Director or with his facsimile signature and the
corporate seal of the Authority shall be impressed or a facsimile
of such seal shall be imprinted on the Bonds and attested by the
Secretary or his facsimile signature.  In case any officer whose
signature or a facsimile of whose signature shall appear on any
Bonds shall cease to be such officer before the delivery of such
Bonds, such signature or such facsimile shall nevertheless be
valid and sufficient for all purposes as if he had remained in
office until such delivery, and also any Bonds may bear the fac-
simile signature of or may be signed by such persons as at the
actual time of the execution of such Bonds shall be the proper
officers to sign such Bonds although on the date of such Bonds
such persons may not have been such officers.

SECTION 204.  Authentication of Bonds.  Only such of the
Bonds as shall have endorsed thereon a certificate of authentica-
tion substantially in the form hereinabove set forth, duly exe-
cuted by the Trustee, shall be entitled to any benefit or secu-
rity under this Agreement.  No Bond shall be valid or become
obligatory for any purpose or be entitled to any benefit or secu-
rity under this Agreement unless and until such certificate of
authentication shall have been duly executed by the Trustee, and
such certificate of the Trustee upon any such Bond shall be con-
clusive evidence that such Bond has been duly authenticated and
delivered under this Agreement.  The Trustee's certificate of
authentication on any Bond shall be deemed to have been duly
executed if signed by an authorized officer of the Trustee, but
it shall not be necessary that the same officer sign the certifi-
cate of authentication on all of the Bonds that may be issued
hereunder at any one time.

SECTION 205.  Exchange and Registration of Transfer.  Bonds
upon surrender thereof at the principal corporate trust office of
the Trustee, together with an assignment duly executed by the
Holder or his attorney or legal representative in the form set
forth on the Bonds or such other form as may be satisfactory to
the Trustee, may, at the option of the Holder thereof, be
exchanged for an equal aggregate principal amount of Bonds of the
same Series and maturity, of any denomination or denominations
authorized by this Agreement, and bearing interest at the same
rate, in the same form as the Bonds surrendered for exchange.

- 25 -

The Trustee shall keep books for the registration of and for the registration of transfers of the Bonds as provided in this Agreement.  The transfer of any Bond may be registered only upon the books kept for the registration of and registration of transfers of Bonds upon surrender thereof to the Trustee together with an assignment duly executed by the Holder or his attorney or legal representative in the form of the assignment set forth on the Bonds or such other form as may be satisfactory to the Trustee.  Upon any such registration of transfer, the Authority shall execute and the Trustee shall authenticate and deliver in exchange for such Bond a new Bond or Bonds registered in the name of the transferee, of any denomination or denominations authorized by this Agreement, in an aggregate principal amount equal to the principal amount of such Bond of the same Series and maturity and bearing interest at the same rate.  In all cases in which Bonds shall be exchanged or transferred hereunder, the Authority shall execute and the Trustee shall authenticate and deliver at the earliest practicable time Bonds in accordance with the provisions of this Agreement.  The Authority or the Trustee may make a charge for every such exchange or registration of transfer of Bonds sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer, but no other charge shall be made to any Holder for exchanging or registering the transfer hereinabove granted.  Any Bond surrendered in any such exchange or transfer shall be cancelled by the Trustee as provided in Section 304 hereof.  Neither the Authority nor the Trustee shall be required to make any such exchange or registration of transfer of any Bond during the fifteen (15) days immediately preceding the date of mailing of notice of any redemption of such Bond, or after a Bond or any portion thereof has been selected for redemption.

SECTION 206.  Ownership of Bonds.  As to any Bond the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of and premium, if any and interest on any such Bond shall be made only to the Holder thereof or his legal representative.  All such payments shall be valid and effectual to satisfy and discharge the liability upon such Bond, including the premium, if any, and interest thereon, to the extent of the sum or sums so paid.

Any Holder of any Bond is hereby granted power to transfer absolute title thereto by assignment thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his assignor or any person in the chain of title and before the maturity of such Bond.  Every prior Holder of any Bond shall be deemed to have waived and renounced all of his equities or rights therein in favor of every such bona fide purchaser, and every

- 26 -

such bona fide purchaser shall acquire absolute title thereto and
to all rights represented thereby.

SECTION 207.   The Series 1988 Bonds   The Series 1988 Bonds
shall be issued under this Agreement in the aggregate principal
amount of Three Hundred Twenty Seven Million Seven Hundred Forty
Thousand Dollars ($327,740,000) for the purpose of providing
funds to defease the Outstanding PRASA Bonds and to pay the
Pfizer Debt.   Such Bonds shall be designated Puerto Rico
Infrastructure Financing Authority Special Tax Revenue Bonds,
Series 1988A.   The terms of such Bonds including, but not limited
to, interest rates, Amortization Requirements, redemption provi-
sions and maturity dates and the disposition of the proceeds of
the Series 1988 Bonds and the disposition of moneys to be made
available by PRASA, shall be provided for in a resolution of the
Board.   The disposition of proceeds may be supplemented or
changed by a certificate of the Executive Director executed on
the date of issuance of the Series 1988 Bonds if provided for in
said resolution.

Each of the Series 1988 Bonds shall be executed sub-
stantially in the form and manner hereinabove set forth and de-
posited with the Trustee for authentication, but before the
Series 1988 Bonds shall be authenticated and delivered by the
Trustee, there shall be filed with the Trustee the following:

(i)   a copy, certified by the Secretary, of the reso-
lution mentioned above;

(ii)   a copy, certified by the Secretary, of the
resolution directing the authentication and delivery of the
Series 1988 Bonds to or upon the order of the purchasers
therein named upon payment of the purchase price for each
Series therein set forth;

(iii)   a certificate of the Executive Director
directing the disposition of the proceeds of the Series 1988
Bonds;

(iv)   the report of a firm of nationally recognized
independent certified public accountants, of favorable repu-
tation for skill and experience in verifying the mathemat-
ical computations of sufficiency of investments for defeas-
ance and yield calculations in refunding transactions, stat-
ing their conclusions with respect to (A) the mathematical
computations of the sufficiency of the maturing principal of
and interest on the investments made with the proceeds of
the Series 1988 Bonds to be applied to the refunding of the
Outstanding PRASA Bonds and other moneys available for such
purpose for the payment of the principal of, premium, if

- 27 -

any, and interest on the Outstanding PRASA Bonds to be refunded and (B) the mathematical computations of the actuarial yield on the Series 1988 Bonds issued to refund the Outstanding PRASA Bonds and on investments made with the proceeds of such Bonds and other available moneys;

      (v) an opinion of counsel of recognized standing in the field of law relating to municipal bonds to the effect that upon the deposit of the United States government obligations and uninvested moneys in the Escrow Deposit Trust Fund established for the refunding of the Outstanding PRASA Bonds and in reliance as to the sufficiency of such deposit upon the verification report addressing such sufficiency that has been delivered simultaneously herewith by Ernst & Whinney, Memphis, Tennessee, and the giving of notice of refunding required under the trust agreement under which the Outstanding PRASA Bonds were issued, the Outstanding PRASA Bonds shall no longer be deemed to be outstanding and shall cease to be entitled to any lien, benefit or security under said trust agreement; and

      (vi) an opinion of counsel for the Authority to the effect that (a) the issuance of such Bonds and the execution of this Agreement have been duly authorized and that all conditions precedent to the authentication and delivery of such Bonds have been fulfilled; (b) the form and terms of such Bonds have been established by or pursuant to one or more Board resolutions, in conformity with the provisions of this Agreement; (c) such Bonds, when authenticated and delivered by the Trustee and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefit of this Agreement; (d) the Authority has the corporate power to issue such Bonds, and has duly taken all necessary corporate action with respect to such issuance; (e) the issuance of such Bonds will not contravene the Act; and (f) that all requirements of this Agreement applicable to the Authority in respect of the execution and delivery by the Authority of such Bonds have been complied with and that, assuming due authentication and delivery of such Bonds by the Trustee, no authorization, approval or consent by any regulatory or statutory or other public authority which has not been obtained is required for the creation, issuance, authentication and delivery of such Bonds pursuant to this Agreement.

When the documents mentioned above in this Section shall have been filed with the Trustee and when said Series 1988 Bonds shall have been executed and authenticated as required by this

- 28 -

Agreement, the Trustee shall deliver said Series 1988 Bonds to or
upon the order of the purchasers named in the resolution
mentioned in clause (ii) of this Section, but only upon payment
to the Trustee of the purchase price of said Series 1988 Bonds.

SECTION 208.  Additional Bonds.  Bonds may be issued under
and secured by this Agreement, subject to the conditions herein-
after provided in this Section, for any lawful purpose of the
Authority, including making a deposit to the Reserve Account and
paying any costs of issuance of such Bonds.

Before any Bonds shall be issued under the provisions of
this Section, the Board shall adopt a resolution authorizing the
issuance of such Bonds, fixing the amount and the details there-
of, specifying the amount of interest, if any, on such Bonds to
be paid from the net proceeds of the Bonds, and describing in
brief and general terms the purpose for which such Bonds are to
be issued.  The Bonds authorized by any such resolution shall be
designated and dated, shall be in such denominations, shall be
numbered,  shall be issued in such form, shall bear interest
until their payment at any rate or rates not exceeding the max-
imum rate permitted by applicable law, shall be stated to mature
at such time or times, shall have such Amortization Requirements,
and shall be made subject to redemption, either in whole or in
part, at such times and prices (subject to the provisions of
Article III of this Agreement), as may be determined by
resolution of the Board adopted prior to the issuance of such
Bonds.  By said resolution, the Board may appoint one or more
paying agents for such Bonds in addition to the Trustee.  Prior
to the issuance of Variable Rate Bonds, the Board shall adopt a
resolution specifying, without limitation, the interest rate
calculation methods and any conversion features and any Credit
Facility or any Liquidity Facility which may be drawn upon to
make principal and interest payments on the Variable Rate
Bonds.  The Variable Rate Bonds may provide that the owner of any
such Bond may demand payment of principal and interest within a
stated period after delivering notice to a designated agent for
the Authority and providing a copy of the notice with the tender
for the Variable Rate Bond to such agent.  The designated agent
for the Authority, in accordance with the terms of a remarketing
agreement, may provide for the resale or redelivery of the Vari-
able Rate Bonds on behalf of the Authority at a price provided
for in the agreement.  If the Variable Rate Bonds shall not be
resold or redelivered within a stated period, the agent for the
Authority may be authorized to draw upon a Credit Facility or
Liquidity Facility for payment of interest on and principal of
the Bonds.  The particular form or forms of such demand provi-
sions, the period or periods for payment of principal and inter-
est after delivery of notice, the appointment of the agent for
the Authority, the terms and provisions for the remarketing
agreement, and the terms and provisions of the Credit Facility or

the Liquidity Facility, shall be designated by a resolution of
the Board.  Prior to the issuance of Extendible Maturity Bonds,
the Board shall specify by resolution the terms and conditions of
the exercise by the Holders or the Authority of any option to
extend the maturity of said Bonds.  Prior to the issuance of
Capital Appreciation Bonds and Capital Appreciation and Income
Bonds, the Board shall specify by resolution the manner in which
and the period during which principal and interest shall be
deemed to accrue on such Bonds for purposes of the definition of
"Principal and Interest Requirements".  Additional Bonds shall be
executed substantially in the form and manner hereinabove set
forth and deposited with the Trustee for authentication, but
before any of such Bonds shall be authenticated and delivered by
the Trustee, there shall be filed with the Trustee the following:

    (a)   a copy, certified by the Secretary, of the reso-
lution mentioned above;

    (b)   a copy, certified by the Secretary, of the
resolution directing the authentication of such Bonds,
specifying the interest rate of each such Bond, and direct-
ing the delivery of such Bonds to or upon the order of the
purchasers therein named upon payment of the purchase price
therein set forth;

    (c)   a certificate dated the date of original issu-
ance of the such Bonds, signed by the Secretary of the Trea-
sury of the Commonwealth, setting forth

        (i)   the amount of the average annual Offshore
Excise Taxes for the two (2) full Fiscal Years pre-
ceding the date of issuance of such Bonds, adjusted to
give effect to legislation enacted on or prior to the
date of original issuance of such Bonds that would
have changed the foregoing amount if such legislation
had been in effect throughout such two (2) full Fiscal
Years;

        (ii)   the amount of the maximum aggregate Prin-
cipal and Interest Requirements for any Fiscal Year
thereafter on account of the Bonds then Outstanding,
the Debt Service Components then Outstanding and the
Bonds to be issued; and

        (iii)   the percentage derived by dividing the
amount in item (i) above by the amount in item (ii)
above, which percentage shall not be less than 200%;

    (d)   a certificate dated the date of original issu-
ance of the Bonds to be issued, signed by the Executive
Director, setting forth

- 30 -

(i)    the amount of the average annual Special Tax Revenues and other moneys deposited to the credit of Puerto Rico Infrastructure Fund for the two (2) full Fiscal Years preceding the date of issuance of such Bonds, adjusted to give effect to legislation enacted on or prior to the date of original issuance of such Bonds that would have increased the foregoing amount if such legislation had been in effect throughout such two (2) full Fiscal Years and that required such increased amount, if received from the federal government, to be deposited to the credit of the Puerto Rico Infrastructure Fund until the Bonds theretofore issued and the Bonds to be issued are no longer Outstanding;

(ii)    the amount of the maximum aggregate Principal and Interest Requirements for any Fiscal Year on account of Bonds then Outstanding, Debt Service Components then Outstanding, and the Bonds to be issued; and

(iii)    the percentage derived by dividing the amount in item (i) above by the amount in item (ii) above, which percentage shall not be less than 100%; and

(e)    an opinion of counsel for the Authority dated the date of original issuance of such Bonds to the effect that

(i)    the issuance of such Bonds has been duly authorized and that all conditions precedent to the authentication and delivery of such Bonds have been duly fulfilled;

(ii)    the form and terms of such Bonds have been established by or pursuant to one or more Board resolutions, in conformity with the provisions of this Agreement;

(iii)    such Bonds, when authenticated and delivered by the Trustee and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Agreement;

- 31 -

(iv)    the Authority has the corporate power to issue such Bonds, and has duly taken all necessary corporate action with respect to such issuance;

(v)    the issuance of the Bonds will not contravene the Act; and

(vi)    all requirements of this Agreement applicable to the Authority in respect of the execution and delivery by the Authority of such Bonds have been complied with and that, assuming due authentication and delivery of such Bonds by the Trustee, no authorization, approval or consent by any regulatory or statutory or other public authority which has not been obtained is required for the creation, issuance, authentication and delivery of such Bonds pursuant to this Agreement; and

When the documents mentioned above shall have been filed with the Trustee and when the Bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such Bonds to or upon the order of the purchasers named in the resolution mentioned in said clause (b) upon payment to the Trustee of the purchase price of such Bonds.

Bonds may be issued under this Section as part of a Series of Bonds which contains Bonds issued under Section 209 hereof, in which event the conditions to authentication and delivery listed above shall pertain only to the portion of the Series of Bonds issued under this Section.

The proceeds of the Bonds issued under the provisions of this Section shall be applied by the Trustee as provided in a resolution of the Board adopted prior to the issuance of the Bonds, which may be supplemented or changed by a certificate of the Executive Director executed on the date of issuance of the Bonds, if provided for in said resolution.

SECTION 209.  Refunding Bonds.  Bonds may be issued, subject to the conditions hereinafter provided in this Section, at any time or times for the purpose of providing funds for refunding all or any part of the Outstanding Bonds of any one or more Series or all or any portion of Debt Service Components by payment at maturity or redemption at a selected redemption date or dates or combination of such payment at maturity and redemption, including the payment of any redemption premium thereon, making a deposit to the Reserve Account and paying any costs of issuance of such Bonds.  Before any Bonds shall be issued under the provisions of this Section, the Board shall

adopt a resolution authorizing the issuance of such Bonds, fixing
the amount and the details of the Bonds, and describing the Bonds
to be refunded.  Such Bonds shall be designated and dated, shall
be in such denominations, shall be numbered, shall be issued in
such form, shall bear interest until their payment at any rate or
rates not exceeding the maximum rate permitted by applicable law,
shall be stated to mature at such time or times, shall have such
Amortization Requirements and shall be made subject to redemp-
tion, in whole or in part, at such times and prices (subject to
the provisions of Article III of this Agreement), as may be
determined prior to the issuance of such Bonds.   By said
resolution, the Board may appoint one or more paying agents for
such Bonds in addition to the Trustee.  Prior to the issuance of
Variable Rate Bonds, the Board shall adopt a resolution
specifying, without limitation, the interest rate calculation
methods and any conversion features, and any Credit Facility or
any Liquidity Facility which may be drawn upon to make principal
and interest payments on the Variable Rate Bonds.  The Variable
Rate Bonds may provide that the Holder of any such Bond may
demand payment of principal and interest within a stated period
after delivering notice to a designated agent for the Authority
and providing a copy of the notice with the tender of the
Variable Rate Bond to such agent.  The designated agent for the
Authority, in accordance with the terms of a remarketing
agreement, may provide for the resale or redelivery of the Vari-
able Rate Bonds on behalf of the Authority at a price provided
for in such agreement.  If the Variable Rate Bonds shall not be
resold or redelivered within a stated period, the agent for the
Authority may be authorized to draw upon a previously executed
Credit Facility or Liquidity Facility for payment of interest and
principal for a particular series of Variable Rate Bonds to which
such Credit Facility or Liquidity Facility shall pertain.   The
particular form or forms of such demand provisions, the period or
periods for payment of principal and interest after delivery of
notice, the appointment of the agent for the Authority, the terms
and provisions for the remarketing agreement, and the terms and
provisions of the Credit Facility or Liquidity Facility shall be
as designated by a resolution of the Board pertaining to the
Variable Rate Bonds to which such terms and provisions are
applicable prior to the issuance thereof.  Prior to the issuance
of Put Bonds, the Board shall adopt a resolution which may pro-
vide for some of the above terms and provisions.   Prior to the
issuance of Extendible Maturity Bonds, the Board shall adopt a
resolution which shall set forth the terms and conditions of the
exercise by the Holder or the Authority of any option to extend
the maturity of said Bonds.   Prior to the issuance of Capital
Appreciation Bonds and Capital Appreciation and Income Bonds, the
Board shall specify by resolution, the manner in which and the
period during which principal and interest shall be deemed to
accrue on such Bonds for purposes of the definition of "Principal
and Interest Requirements".

All Bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth and deposited with the Trustee for authentication, but before such Bonds shall be authenticated and delivered by the Trustee, there shall be filed with the Trustee the following:

(a)   a copy, certified by the Secretary, of the resolution mentioned above;

(b)   a copy, certified by the Secretary, of the resolution directing the authentication of such Bonds, specifying the interest rate of each such Bond and directing the delivery of such Bonds to or upon the order of the purchasers therein named upon payment of the purchase price therein set forth;

(c)   an opinion of counsel for the Authority dated the date of original issuance of such Bonds to the effect that

(i)   the issuance of such Bonds has been duly authorized and that all conditions precedent to the authentication and delivery of such Bonds have been fulfilled;

(ii)   the form and terms of such Bonds have been established by or pursuant to one or more Board resolutions, in conformity with the provisions of this Agreement;

(iii)   such Bonds, when authenticated and delivered by the Trustee and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Agreement;

(iv)   the Authority has the corporate power to issue such Bonds, and has duly taken all necessary corporate action with respect to such issuance;

(v)   the issuance of such Bonds will not contravene the Act; and

(vi)   all requirements of this Agreement applicable to the Authority in respect of the execution and delivery by the Authority of such Bonds, have been complied with and that, assuming due authentication and delivery of such Bonds by the Trustee, no author-

- 34 -

ization, approval or consent by any regulatory or statutory or other public authority which has not been obtained is required for the creation, issuance, authentication and delivery of such Bonds pursuant to this Agreement;

(d)    such documents as shall be required by counsel of recognized standing in the field of law relating to municipal bonds to show that provision has been made in accordance with the provisions of this Agreement for the payment or redemption or combination of such payment and redemption of all the Bonds or Debt Service Components to be refunded;

(e)    a certificate dated the date of original issuance of such Bonds, signed by the Executive Director, that the sum of the net proceeds (excluding accrued interest but including any premium) of such Bonds, together with investment earnings on said proceeds, other moneys to be deposited and investment earnings on said moneys, shall not be less than an amount sufficient to pay the principal of, the redemption premium, if any, and interest accrued to the payment dates on the Bonds or Debt Service Components to be refunded, and the expenses incident to such financing; and

(f)    the certificates required in Section 208(c) and (d); provided that said certificates shall not be required if the Executive Director delivers a certificate to the effect that (i) the aggregate Principal and Interest Requirements for each Fiscal Year thereafter on account of the Bonds Outstanding and Debt Service Components outstanding after the issuance of such refunding Bonds are equal to or less than the Principal and Interest Requirements for each such Fiscal Year on account of the Bonds Outstanding and Debt Service Components outstanding prior to such issuance of refunding Bonds or (ii) the maximum aggregate Principal and Interest Requirements for any Fiscal Year thereafter on account of the Bonds Outstanding and Debt Service Components outstanding after the issuance of such refunding Bonds are equal to or less than the maximum aggregate Principal and Interest Requirements for any Fiscal Year thereafter on account of the Bonds Outstanding and Debt Service Components outstanding prior to the issuance of such refunding Bonds.

Bonds may be issued under this Section as a part of a Series of Bonds which contains Bonds issued under Section 208 hereof, in which event the conditions to execution and authentication listed above shall pertain only to Bonds issued under this Section.

The proceeds of the Bonds issued under the provisions of this Section shall be applied by the Trustee as provided in a resolution of the Board adopted prior to the issuance of the Bonds, which may be supplemented or changed by a certificate of the Executive Director executed on the date of issuance of the Bonds and delivered to the Trustee, if provided for in said resolution.   Simultaneously with the delivery of the Bonds, the Trustee nay withdraw from the Sinking Fund amounts which are allocable to the Bonds to be refunded and shall transfer said amounts in accordance with the resolution of the Board authorizing the issuance of such Bonds.

The issuance of the Bonds to accomplish a cross-over refunding, economic defeasance or other similar refunding shall be within the purview of this Section 209.

SECTION 210.   Temporary Bonds.   Until definitive Bonds are ready for delivery, there may be executed, and upon request of the Executive Director the Trustee shall authenticate and deliver, in lieu of definitive Bonds and subject to the same limitations and conditions except as to identifying numbers, temporary printed, engraved, lithographed or typewritten Bonds in authorized denominations substantially of the tenor hereinabove recited, and with appropriate omissions, insertions and variations as may be required.   The Authority shall cause the definitive Bonds to be prepared and to be executed and delivered to the Trustee, and the Trustee, upon presentation to it of any temporary Bond, shall cancel the same in the manner set forth in Series 304 hereof and authenticate and deliver in exchange therefor, at the place designated by the Holder, without expense to the Holder, a definitive Bond or Bonds of the same aggregate principal amount and having the same Series, maturity and interest rate as the temporary Bond surrendered.   Until so exchanged, the temporary Bonds shall in all respects be entitled to the same benefit and security of this Agreement as the definitive Bonds to be issued and authenticated hereunder.

SECTION 211.   Mutilated, Destroyed, Stolen or Lost Bonds. In case any Bond secured hereby shall become mutilated or be destroyed, stolen or lost, the Authority may execute, and the Trustee may authenticate and deliver, a new Bond of like date, maturity and tenor in exchange and substitution for such Bond destroyed, stolen, mutilated or lost, upon the Holder's paying the reasonable expenses and charges of the Authority and the Trustee in connection therewith.   In the case of any mutilated Bond, such mutilated Bond shall first be surrendered to the Trustee and, in the case of a Bond destroyed, stolen or lost, there shall first be furnished to the Trustee evidence satisfactory to the Trustee and to the Authority that such Bond was destroyed, stolen or lost, and there shall be furnished to the Authority and the Trustee indemnity satisfactory to them.

- 36 -

In the event any such Bond shall be about to mature or have matured or have been called for redemption, instead of issuing a duplicate Bond, the Authority may direct the Trustee to pay the same without surrender thereof. Any Bond surrendered for replacement shall be cancelled in the same manner as provided in Section 304 hereof.

Any such new Bonds issued pursuant to this Section shall constitute additional contractual obligations on the part of the Authority, whether or not the mutilated, lost, stolen or destroyed Bonds be at any time enforceable by anyone, and shall be entitled to equal and proportionate benefits and rights as to lien on and source and security for payment from the Pledged Revenues with all other Bonds.

Section 212. Qualification for Depository Trust Company. The Trustee is hereby authorized to enter into agreements with the Depository Trust Company of New York and other depository trust companies, including but not limited to, agreements necessary for wire transfers of interest and principal payments with respect to the Bonds, utilization of electronic book entry data received from the Depository Trust Company of New York and other depository trust companies in place of actual delivery of Bonds and provision of notices with respect to Bonds registered by the Depository Trust Company of New York and other depository trust companies (or any of their designees identified to the Trustee) by overnight delivery, courier service, telegram, telecopy or other similar means of communication.

Section 213. Capital Appreciation Bonds; Capital Appreciation and Income Bonds. For purposes of determining the principal amount of a Capital Appreciation Bond or a Capital Appreciation and Income Bond, for redemption or computation of the amount of Bonds held by the Holder thereof in giving to the Authority any notice, covenant, request or demand pursuant to this Agreement for any purpose whatsoever, the principal amount of a Capital Appreciation Bond shall be deemed to be its Accreted Value and the principal amount of a Capital Appreciation and Income Bond shall be deemed to be its Appreciated Value. For purposes of determining the amount required to be deposited to the credit of the Reserve Account, reference herein to the original principal amount shall mean in the case of Capital Appreciation Bonds, Capital Appreciation and Income Bonds and other Bonds which are sold to the public at a discount, the value of such Bonds at maturity.

Section 214. Debt Service Components. The Authority may incur indebtedness payable from moneys withdrawn from the Puerto Rico Infrastructure Fund on a pro rata basis with the deposits required to be made to the credit of the Bond Service Account, the Redemption Account and the Reserve Account under Section 401 hereof, which indebtedness is referred to herein as Debt Service

Components; provided that prior to the incurrence of such indebtedness, the Authority shall file with the Trustee the certificates required by Section 208(c) and (d) or Section 209(f), as applicable, in respect of such Debt Service Components.

## ARTICLE III

## REDEMPTION OF BONDS

SECTION 301.  <u>Redemption of Bonds</u>.  The Bonds of each Series issued under the provisions of this Agreement may be made subject to redemption, both in whole and in part and at such times and prices, as may be provided in the resolution authorizing the issuance of such Bonds.  Term Bonds shall be made subject to redemption to the extent of any Amortization Requirements therefor.

If less than all of the Bonds of any one maturity of a Series shall be called for redemption, the particular Bonds or portions of Bonds to be redeemed shall be selected by the Trustee in such manner as it shall deem fair and appropriate; provided, however, that the portion of any Bond of any Series to be redeemed shall be in the principal amount equal to the lowest denomination authorized for such Series or some multiple thereof, and that, in selecting Bonds for redemption, the Trustee shall treat each Bond as representing that number of Bonds which is obtained by dividing the principal amount of such Bond by the amount of such lowest authorized denomination.

SECTION 302.  <u>Redemption Notice</u>.  At least thirty (30) days before the redemption date of any Bonds or as otherwise provided in the resolution authorizing the issuance of the particular Bonds, the Trustee shall cause a notice of any such redemption, either in whole or in part, on behalf of the Authority to be mailed, by first class mail, postage prepaid, to any other paying agents for the Bonds to be redeemed and to all Holders of Bonds to be redeemed at their addresses as they appear upon the books of registration hereinabove provided for; but failure so to mail any such notice to any Holder or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of other Bonds.  Each such notice shall set forth (1) the date fixed for redemption, (2) the redemption price to be paid, (3) that on the date fixed for redemption the redemption price will become due and payable upon each Bond called for redemption, (4) if moneys for the payment of the redemption price shall be on deposit on such date, that interest thereon shall cease to accrue on and after said redemption date, (5) the place where such Bonds are to be surrendered for payment of such redemption price, (6) if less than all of the Bonds of a Series then Outstanding shall be called for redemption, the numbers of such Bonds and (7) the complete designation of the Series, including the CUSIP numbers.  Each notice of redemption shall also contain (a) the date of issue of the Bond as originally issued; (b) the rate of interest borne by each Bond being redeemed; (c) the maturity date of each Bond being redeemed; and (d) the name, address and telephone number of a contact person, if any,

- 39 -

representing the Trustee.  In case any Bond is to be redeemed in part only, the notice of redemption which relates to such Bond shall state also the amount of such Bond to be redeemed and that on or after the redemption date, upon surrender of such Bond, a new Bond or Bonds of the same Series and maturity, bearing interest at the same rate and in principal amount equal to the unredeemed portion of such Bond will be issued.

In addition to the foregoing notice, further notice shall be given by the Trustee as set out below, but no defect in said further notice nor any failure to give all or any portion of such further notice shall be the basis for any liability of the Trustee or in any manner defeat the effectiveness of a call for redemption if notice thereof is given as above prescribed.

(a)    Each further notice of redemption shall be sent by first class mail, postage prepaid, at least thirty (30) days before the redemption date to registered securities depositories and national information services whose names and addresses are included in the most recent list thereof furnished to the Trustee by the Authority; and

(b)    The Trustee shall cause a second notice of redemption to be mailed in the manner and in the form required above for the initial notice of redemption to Holders of Bonds or portions thereof to be redeemed who have not surrendered their Bonds within sixty (60) days after the redemption date.

SECTION 303.   Effect of Calling for Redemption.  On the date so designated for redemption, notice having been given in the manner and under the conditions hereinabove provided, the Bonds or portions of Bonds so called for redemption shall become and be due and payable at the redemption price provided for redemption of such Bonds or portions of Bonds on such date, and, if sufficient moneys for payment of the redemption price and accrued interest or Sufficient Government Obligations as defined in Section 305 hereof are held by the Trustee in trust for the Holders of Bonds to be redeemed, as provided in this Agreement, interest on the Bonds or portions of Bonds so called for redemption shall cease to accrue, such Bonds or portions of Bonds shall cease to be entitled to any benefit or security hereunder and shall no longer be Outstanding hereunder and the Holders of such Bonds or portions of Bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof and accrued interest, and, to the extent provided in Section 306 hereof, to receive Bonds for any unredeemed portions of Bonds.

SECTION 304.   Cancellation of Bonds.  All Bonds paid, redeemed or purchased by the Authority, either at or before

- 40 -

maturity, shall be delivered to the Trustee when such payment, redemption or purchase is made and such Bonds shall thereupon be cancelled. The Trustee shall provide to the Authority the details of all Bonds so cancelled. All Bonds cancelled under any of the provisions of this Agreement either shall be delivered to the Authority or destroyed by the Trustee, as the Authority directs. Upon destruction of any Bonds, the Trustee shall execute a certificate in duplicate, describing the Bonds so destroyed, and one executed certificate shall be filed with the Authority and the other executed certificate shall be retained by the Trustee.

SECTION 305. <u>Bonds To Be Paid Not Outstanding</u>. If (a) Bonds shall have been duly called for redemption under the provisions of this Article or irrevocable instructions have been given by the Authority to the Trustee to (i) call Bonds for redemption under the provisions of this Article or (ii) pay Bonds at their maturity or maturities (the Bonds described in clause (a) are herein collectively called the "Bonds to be Paid"), and (b) sufficient moneys to provide for the payment of such Bonds or Sufficient Government Obligations (as defined below) are held in separate accounts by the Trustee or other appropriate fiduciary institution acting as escrow agent solely for the Holders of the Bonds to be Paid, then, notwithstanding any other provisions herein to the contrary, the Bonds to be Paid shall not be deemed to be Outstanding under the provisions of this Agreement and shall cease to be entitled to any benefit or security under this Agreement.

For purposes of this Agreement "Sufficient Government Obligations" shall mean Government Obligations or obligations issued by the Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, the Farm Credit System, Federal Home Loan Banks or the Student Loan Marketing Association which are in such principal amounts, bear interest at such rate or rates and mature (without option of prior redemption) on such date or dates so that the proceeds to be received upon payment of such Government Obligations or obligations issued by Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Farm Credit System, Federal Home Loan Banks or Student Loan Marketing Association at their maturity and the interest to be received thereon, without any reinvestment thereof, will provide sufficient moneys on the dates required to pay the principal of and redemption premium, if any, and the interest on the Bonds to be Paid to the dates of their redemption or maturity.

SECTION 306. <u>Partial Redemption</u>. In case part but not all of an Outstanding Bond shall be selected for redemption, the Holder thereof or his attorney or legal representative shall present and surrender such Bond to the Trustee for payment of the

principal amount thereof so called for redemption, and the Authority shall execute and the Trustee shall authenticate and deliver to or upon the order of such Holder or his attorney or legal representative, without charge to the Holder therefor, for the unredeemed portion of the principal amount of the Bond so surrendered, a new Bond or Bonds of the same Series and maturity, bearing interest at the same rate and of any denomination or denominations authorized by this Agreement.

## ARTICLE IV

## FUNDS AND ACCOUNTS

SECTION 401.  Sinking Fund and Accounts.  A special fund is hereby created and designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds Sinking Fund" (herein sometimes called the "Sinking Fund") to be held by the Trustee.  There are hereby created three separate accounts in the Sinking Fund designated "Bond Service Account", "Redemption Account" and "Reserve Account".  Subject to the terms and conditions set forth in this Agreement, moneys held to the credit of the Sinking Fund shall be held in trust and disbursed by the Trustee for the purposes set forth below.

The Authority shall maintain with a Qualified Depositary the Puerto Rico Infrastructure Fund.  The Authority shall not pledge or create any liens upon any moneys in the Puerto Rico Infra-structure Fund.  As promptly as practicable upon the receipt of Special Tax Revenues or other moneys deposited to the credit of the Puerto Rico Infrastructure Fund, the Authority shall withdraw an amount of such Special Tax Revenues and other moneys to make the following deposits in the following order:

(a)   to the credit of the Bond Service Account, such amount as may be required to make the total amount then to the credit of the Bond Service Account equal to the sum of (i) the amount of interest then or to become within the current Fiscal Year due and payable on the Bonds of each Series then Outstanding and (ii) the amount of principal of the Bonds of each Series then or to become within the current Fiscal Year due and payable;

(b)   to the credit of the Redemption Account, such amount as may be required to make the total amount then in the then current Fiscal Year to the credit of the Redemption Account equal to the Amortization Requirement for such Fiscal Year for the Term Bonds of each Series then Out-standing; and

(c)   to the credit of the Reserve Account, such amount as may be required to make the amount then to the credit of the Reserve Account equal to the lesser of (i) the maximum aggregate Principal and Interest Requirements for any Fiscal Year thereafter on the Bonds Outstanding and (ii) ten percent (10%) of the original principal amount of each Series of Bonds Outstanding.

In lieu of any required deposit or in substitu-tion of moneys on deposit to the credit of the Reserve

- 43 -

Account, the Authority may cause to be deposited to the credit of the Reserve Account a Reserve Account Insurance Policy or a Reserve Account Letter of Credit in an amount equal to such required deposit, which Reserve Account Insurance Policy or Reserve Account Letter of Credit shall be payable or available to be drawn upon, as the case may be (upon the giving of notice as required thereunder), on any payment date for the Bonds on which a withdrawal from the Reserve Account would be required under Section 404 hereof and which shall give the Trustee the right to draw on any Reserve Account Insurance Policy or Reserve Account Letter of Credit prior to the expiration thereof unless the Authority has furnished a replacement Reserve Account Insurance Policy or Reserve Account Letter of Credit or sufficient moneys to make amounts on deposit to the credit of the Reserve Account equal to the amount required therefor. If a disbursement is made under a Reserve Account Insurance Policy or a Reserve Account Letter of Credit, the Authority shall either reinstate the limits of such Reserve Account Insurance Policy or Reserve Account Letter of Credit or deposit to the credit of the Reserve Account moneys in the amount of the disbursement made under such Reserve Account Insurance Policy or Reserve Account Letter of Credit, or a combination of such alternatives.

If the Authority issues Variable Rate Bonds pursuant to the provisions of Section 208 or 209 of this Agreement, the assumptions for calculating interest for the current Fiscal Year and any adjustments necessary to ensure a sufficient deposit for the payment of said interest shall be provided for in the resolution authorizing the issuance of such Bonds. For purposes of clause (c) above, interest on Variable Rate Bonds shall be calculated on the first day of the Fiscal Year for such Fiscal Year and on the date of issuance of any additional Series of Variable Rate Bonds.

If any interest payment date or a principal payment date for any Series of Bonds is the first day of a Fiscal Year, such payment date shall be included for purposes of the above deposits as if occurring on the last day of the preceding Fiscal Year.

If the Authority has incurred Debt Service Components, the Authority may withdraw moneys from the Puerto Rico Infrastructure Fund on a pro rata basis to make the deposits required in clauses (a) through (c) above and the deposits required to be made to the credit of comparable accounts established for the Debt Service Components. Notwithstanding the foregoing order of priorities, the Authority shall withdraw moneys from the Puerto Rico Infrastructure Fund to make (i) any payment necessary to satisfy the then current arbitrage rebate requirements under the Code for

- 44 -

Bonds and Debt Service Components and (ii) any required deposit into an Arbitrage Rebate Fund or comparable fund for a Debt Service Component. After making the foregoing required applications, the Authority may apply any balance remaining to the credit of the Puerto Rico Infrastructure Fund to any lawful purpose.

SECTION 402. Withdrawals from Bond Service Account. The Trustee shall on each Interest Payment Date or as otherwise provided in the resolution of the Board authorizing the issuance of Bonds, withdraw from the Bond Service Account and (1) remit by mail (or by wire transfer if so provided by resolution of the Board) to each Holder of Bonds the amounts required for paying interest upon such Bonds as such interest becomes due and (2) set aside sufficient moneys for paying the principal of Bonds as such principal becomes due. If paying agents other than the Trustee have been designated by the Authority, the Trustee shall deposit in trust with such paying agents the amounts required to pay such principal and interest. Notwithstanding any provision herein to the contrary, if principal of and premium, if any, and interest on the Bonds that would have been paid from the Sinking Fund is paid instead by a Credit Facility or a Liquidity Facility, amounts held to the credit of the Bond Service Account and the Redemption Account, as applicable, for such purposes shall be paid, to the extent required under any agreement with the issuer of such Credit Facility or Liquidity Facility, to such issuer. The Trustee shall establish one or more subaccounts within the Bond Service Account and the Redemption Account, to the extent required by a resolution of the Board, to segregate amounts to be paid to the issuer of a Credit Facility or a Liquidity Facility or amounts received from a Credit Facility or a Liquidity Facility.

SECTION 403. Withdrawals from Redemption Account. Moneys held for the credit of the Redemption Account shall be applied to the retirement of Bonds as follows:

(a) Subject to the provisions of paragraph (c) of this Section, the Trustee shall endeavor to purchase Bonds or portions of Bonds, whether or not such Bonds or portions shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, such price not to exceed the principal of such Bonds plus the amount of the premium, if any, that would be payable on the next redemption date to the holders of such Bonds under the provisions of Article III of this Agreement if such Bonds or portions of Bonds should be called for redemption on such date from the moneys in the Redemption Account. The Trustee shall pay the interest accrued on such Bonds or portions of Bonds to the date of settlement therefor from the Bond

- 45 -

Service Account and the purchase price from the Redemption Account, but no such purchase shall be made by the Trustee within the period of forty-five (45) days immediately preceding the date on which such Bonds are subject to call for redemption in part under the provisions of this Agreement except from moneys other than the moneys set aside or deposited for the redemption of Bonds.

(b)   Subject to the provisions of paragraph (c) of this Section, the Trustee shall call for redemption on each date on which Bonds are subject to redemption from moneys in the Redemption Account such amount of Bonds or portions of Bonds then subject to redemption as, with the redemption premium, if any, will exhaust the moneys then held for the credit of the Redemption Account as nearly as may be; provided, however, that not less than One Hundred Thousand Dollars ($100,000) principal amount of Bonds shall be called for redemption at any one time.   Such redemption shall be made pursuant to the provisions of Article III of this Agreement.   Prior to calling Bonds or portions of Bonds for redemption the Trustee shall withdraw from the Bond Service Account and from the Redemption Account (including from moneys transferred from the Reserve Account to the credit of the Redemption Account) and set aside in separate accounts or deposit with the Paying Agents the respective amounts required for paying the interest on, and the principal and redemption premium of, the Bonds or portions of Bonds so called for redemption.

(c)   Moneys in the Redemption Account shall be applied by the Trustee in each Fiscal Year to the retirement of Bonds of each Series then Outstanding in the following order:

first, the Term Bonds of each such Series to the extent of the Amortization Requirement, if any, for such Fiscal Year for the Term Bonds of each such Series then Outstanding and, if the amount available in such Fiscal Year shall not be equal thereto, then in proportion to the Amortization Requirement, if any, for such Fiscal Year for the Term Bonds of each such Series then Outstanding, if any;

second, any balance then remaining shall be applied to the purchase of any Term Bonds secured hereby and then Outstanding whether or not such Bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section;

- 46 -

third, any balance then remaining shall be applied to the redemption of the Term Bonds of each such Series in proportion to the Amortization Requirement, if any, for such Fiscal Year for the Term Bonds of each such Series then Outstanding, plus the applicable premium, if any; and

fourth, after the retirement of all Term Bonds, any balance still remaining shall be applied to the retirement of the Serial Bonds of each Series in proportion to the aggregate principal amount of the Serial Bonds of each such Series originally issued under the provisions of this Agreement.

SECTION 404. <u>Withdrawals from Reserve Account</u>. Moneys held for the credit of the Reserve Account shall be used for the purpose of paying interest on the Bonds and maturing principal of Bonds when moneys held to the credit of the Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the Redemption Account pursuant to the requirements of clause (b) of Section 401 of this Agreement when moneys in the Puerto Rico Infrastructure Fund are insufficient therefor; provided that if moneys then held to the credit of the Bond Service Account are sufficient to pay principal of and interest on the Bonds in the current Fiscal Year, moneys held to the credit of the Reserve Account shall be withdrawn forty-five (45) days prior to the redemption date of any Bonds from moneys in the Redemption Account to the extent necessary to make the deposits required by said clause (b) of Section 401 of this Agreement.

Any moneys held for the credit of the Reserve Account in excess of the lesser of the maximum aggregate Principal and Interest Requirements on the Bonds Outstanding for any Fiscal Year thereafter and ten percent (10%) of the original principal amount of each Series of Bonds Outstanding shall, upon the written request of the Authority, be transferred to the credit of the Bond Service Account or the Redemption Account provided that if the deposits required by clauses (a) and (b) of Section 401 hereof to the credit of the Bond Service Account and the Redemption Account shall have been made for the current Fiscal Year, such excess may be transferred, upon the written request of the Authority, to the Puerto Rico Infrastructure Fund.

SECTION 405. <u>Moneys Set Aside Held in Trust</u>. All moneys which the Trustee shall have withdrawn from the accounts of the Sinking Fund, or shall have received from any other source and set aside or deposited with any paying agent for the purpose of paying any of the Bonds hereby secured, either at the maturity thereof or upon call for redemption, shall be held in trust for

- 47 -

the respective Holders of such Bonds. Any moneys which shall be
so set aside or deposited by the Trustee or any paying agent and
which shall remain unclaimed by the Holders of such Bonds for the
period of two (2) years after the date on which such Bonds shall
have become payable shall, upon request in writing, be paid to
the Authority or to such officer, board or body as may then be
entitled by law to receive the same, and thereafter the Holders
of such Bonds, shall look only to the Authority or to such offi-
cer, board or body, as the case may be, for payment and then only
to the extent of the amounts so received without any interest
thereon, and the Trustee and any other paying agents shall have
no responsibility for such moneys.

SECTION 406. <u>Establishment of Subaccounts in the Redemption
Account</u>. The Trustee shall establish one or more subaccounts in
the Redemption Account for deposits for extraordinary mandatory
redemptions of one or more Series of Bonds and shall deposit and
withdraw moneys from such subaccounts, if and as required by
resolutions of the Board adopted prior to the issuance of such
Series of Bonds.

## ARTICLE V

### DEPOSITARIES OF MONEYS, SECURITY FOR DEPOSITS AND INVESTMENTS OF FUNDS

SECTION 501. <u>Security for Deposits</u>. All moneys deposited under the provisions of this Agreement with the Trustee, other than moneys deposited to the credit of the Arbitrage Rebate Fund, shall be held in trust under the terms hereof, and shall not be subject to lien or attachment by any creditor of the Authority.

All moneys deposited with the Trustee hereunder in excess of the amount insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation or other Federal agency shall be continuously secured for the benefit of the Trustee, the Holders of the Bonds and the issuer of any Credit Facility, either (a) by depositing with a bank or trust company approved by the Authority and by the Trustee, as custodian, or, if then permitted by law, by setting aside under control of the trust department of the bank holding such deposit, as collateral security, securities described in clause (i) of the definition of Government Obligations, or, with the approval of the Trustee, other marketable securities eligible as security for the deposit of trust funds under applicable regulations of the Comptroller of the Currency of the United States of America and applicable Commonwealth of Puerto Rico laws or regulations, having a market value (exclusive of accrued interest) not less than the amount of such deposit, or, (b) if the furnishing of security as provided in clause (a) of this Section is not permitted by applicable law, in such other manner as may then be required or permitted by applicable Commonwealth of Puerto Rico and Federal laws or regulations regarding the security for, or granting a preference in the case of, the deposit of trust funds; provided, however, that it shall not be necessary for the Trustee to give security for the deposits of any moneys for the payment of the principal of or the redemption premium or the interest on any Bonds issued hereunder, or for the Trustee or other Qualified Depositary or Qualified Depositaries to give security for any moneys which shall be represented by obligations purchased under the provisions of this Article as an investment of such moneys.

All moneys deposited with the Trustee shall be credited to the particular fund or account to which such moneys belong.

SECTION 502. <u>Investment of Moneys</u>. Moneys held for the credit of the Bond Service Account and the Redemption Account (except for any subaccounts established by one or more resolutions of the Board to segregate amounts received from a Credit Facility or a Liquidity Facility, which resolution or resolutions may provide for the investment of moneys deposited to

the credit of any such subaccount) shall, as nearly as may be practicable, be continuously invested and reinvested, at the written direction of the Authority, in Government Obligations that shall mature, or that shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said accounts will be required for the purposes intended. Moneys held for the credit of the Reserve Account shall as nearly as may be practicable, be continuously invested and reinvested at the written direction of the Authority in Investment Obligations that shall mature no later than the final maturity of the Bonds.

Obligations so purchased as an investment of moneys in any such fund or account shall be deemed at all times to be a part of such fund or account, and any investment earnings and profit or loss realized on the sale or maturity thereof, shall be credited or debited to such fund or account; provided, however, that if the deposits to any account required by Section 401 hereof have been made for the current Fiscal Year, the investment earnings on moneys held to the credit of such account shall be deposited in the order set forth in said Section 401 to the credit of any account for which such required deposit has not been made, and if all such required deposits have been made, such earnings shall be paid to the Puerto Rico Infrastructure Fund. The Trustee, at the written direction of the Authority, shall sell any obligations so purchased as an investment whenever it shall be necessary to do so in order to provide moneys to meet any payments or transfers from such fund or account. Neither the Trustee nor the Authority shall be liable or responsible for any loss resulting from any such investment.

In the case of investments in the obligations described in clauses (iii)(B) and (vi) of the definition of Investment Obligations, the Authority shall deliver to the Trustee, if the Trustee so requests, an opinion of counsel acceptable to the Trustee as to the perfection and priority of the security interests in the collateral described therein.

SECTION 503. Valuation of Investments. In computing the amount in any fund or account created pursuant to the provisions of this Agreement, obligations purchased as an investment of moneys therein shall be valued at par if purchased at par or at amortized value if purchased at other than par, plus, in each case, accrued interest. Amortized value, when used with respect to an obligation purchased at a premium above or a discount below par, means the value as of any given time obtained by dividing the total premium or discount at which such obligation was purchased by the number of days remaining to maturity on such obligation at the date of such purchase and by multiplying the amount thus calculated by the number of days having passed since such

- 50 -

purchase; and (1) in the case of an obligation purchased at a premium by deducting the product thus obtained from the purchase price, and (2) in the case of an obligation purchased at a discount by adding the product thus obtained to the purchase price. Valuation on any particular date shall include the amount of interest then earned or accrued to such date on any moneys or investments in such fund or account. The computation of the amount on deposit in or credited to any fund and account created under this Agreement and the valuation of the investments of such amount shall be performed by the Trustee for such fund and account held by the Trustee on the last day of each Fiscal Year, and such computation and valuation shall not be required to be performed at other times, except upon the written request of the Authority.

SECTION 504. <u>Tax Covenants</u>. The Authority covenants and agrees that so long as any Bonds remain Outstanding, to the extent permitted by the Constitution and laws of the Commonwealth of Puerto Rico, it shall comply with the requirements of the Code, including any arbitrage rebate covenants contained in any agreement entered into by and between the Authority and the Trustee in connection with the issuance of any Series of Bonds, except to the extent failure so to comply would not, in the opinion of counsel of recognized standing in the field of law relating to municipal bonds, result in the interest payable on such Bonds being included in gross income for federal income tax purposes to the Holders thereof under the Code. Notwithstanding anything to the contrary contained herein or otherwise, the Authority shall not be required to comply with the covenants herein contained with respect to a specific Series of Bonds, to the extent that interest on such Series of Bonds shall be intended by the Authority, on the date of issuance of such Bonds, to be included in gross income for federal income tax purposes to the Holders thereof under the Code.

- 51 -

## ARTICLE VI

### PARTICULAR COVENANTS

SECTION 601.  Payment of Principal, Interest and Premium; Pledge of Pledged Revenues.  The Authority covenants that it will promptly pay the principal of and the interest on every Bond issued hereunder and secured hereby at the places, on the dates and in the manner specified herein and in said Bonds and any premium required for the retirement of said Bonds by purchase or redemption, according to the true intent and meaning thereof. Except as in this Agreement otherwise provided, such principal, interest and premium, if any, are payable solely from the Pledged Revenues, which Pledged Revenues are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified.  Nothing in the Bonds or in this Agreement shall be deemed to constitute the Bonds a debt or obligation of the Commonwealth of Puerto Rico or any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal of or the interest on the Bonds.

SECTION 602.  No Impairment.  The Authority covenants and agrees that, so long as any of the Bonds shall be Outstanding, none of the Pledged Revenues will be used for any purpose other than as provided in this Agreement, and that no contract or contracts will be entered into or any action taken by which the rights of the Trustee or of the Holders to such Pledged Revenues might be impaired or diminished.  Any resolution adopted by the Board authorizing the issuance of a Series of Bonds shall, for all purposes, be deemed part of this Agreement and shall constitute a contract for the benefit of the Holders of said Series.  The Agreement and any such resolution may be supplemented and amended only in accordance with Article X hereof, except for supplements and amendments adopted or entered into prior to the issuance of the applicable Series of Bonds, which may be adopted or entered into without restriction.

SECTION 603.  Inclusion of Shortfall in Budget.  If the amount of projected Special Tax Revenues in any fiscal year of the Commonwealth is less than the maximum amount required to be so deposited under the Act, the Authority shall request the Director of the Office of Budget and Management of the Commonwealth to include in the budget the necessary appropriations to cover such deficiency.  For purposes of the foregoing sentence, the Authority shall project Special Tax Revenues in the next Fiscal Year of the Commonwealth at such time as shall enable the Authority to file a timely request with the Director of the Office of Budget and Management of the Commonwealth to ensure inclusion in the budget for the next Fiscal Year.

## ARTICLE VII

### REMEDIES

SECTION 701. _Enforcement of Remedies_. At the request of the Holders of not less than twenty percent (20%) of the aggregate principal amount of Bonds then Outstanding, the Trustee shall proceed, subject to the provisions of Section 802 hereof, to protect and enforce its rights and the rights of the Holders under the laws of the Commonwealth or under this Agreement, including all rights with respect to funds and other moneys pledged hereunder, by such suits, actions or special proceedings in equity or at law, or by proceedings in the office of any board or officer having jurisdiction, either for the specific performance of any covenant or agreement contained herein or in aid or execution of any power herein granted or for the enforcement of any proper legal or equitable remedy, as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights.

In the enforcement of any remedy under this Agreement the Trustee shall be entitled to sue for, enforce payment of and recover judgment for, in its own name and as trustee of an express trust, any and all amounts then or after any default becoming, and at any time remaining, due from the Authority for principal, premium, if any, interest or otherwise under any of the provisions of this Agreement or of the Bonds and unpaid, with interest on overdue payments of principal, premium, if any, and interest at the rate or rates of interest specified in the Bonds, together with any and all costs and expenses of collection and of all proceedings hereunder and under the Bonds and maintain a suit, action or special proceeding in equity or at law against the Authority for any deficiency, all without prejudice to any other right or remedy of the Trustee or of the Holders, and to recover and enforce any judgment or decree against the Authority, but solely as provided herein and in the Bonds, for any portion of such amounts remaining unpaid and interest, costs and expenses as above provided, and to collect, in any manner provided by law, the moneys adjudged or decreed to be payable.

SECTION 702. _Pro rata Application of Funds_. Anything in this Agreement to the contrary notwithstanding, if at any time the moneys in the Sinking Fund shall not be sufficient to pay the interest on or the principal of the Bonds as the same shall become due and payable, such moneys (except for any moneys deposited in a separate subaccount from a drawing on a Credit Facility or Liquidity Facility which shall secure only specified Bonds), together with any moneys then available or thereafter becoming available for such purpose, whether through the exercise of the remedies provided for in this Article or otherwise, shall be applied as follows:

- 53 -

first: to the payment to the persons entitled thereto of all installments of interest then due and payable in the order in which such installments became due and payable and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment, ratably, according to the amounts due on such installment, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in such Bonds;

second: to the payment to the persons entitled thereto of the unpaid principal of any of the Bonds which shall have become due (other than Bonds called for redemption for the payment of which moneys are held pursuant to the provisions of this Agreement) in the order of their due dates, with interest on such Bonds at the respective rates specified therein from the respective dates upon which such Bonds became due, and, if the amount available shall not be sufficient to pay in full the principal of such Bonds due on any particular date, together with such interest, then to the payment first of such interest, ratably, according to the amount of such interest due on such date, and then to the payment of such principal, ratably, according to the amount of such principal due on such date, to the persons entitled thereto without any discrimination or preference except as to any difference in the respective rates of interest specified in the Bonds;

third: to the payment of the interest on and the principal of the Bonds, to the purchase and retirement of Bonds and to the redemption of Bonds, all in accordance with the provisions of Article IV of this Agreement; and

fourth: to the payment of any amounts then due and owing to a provider of a Credit Facility or a Liquidity Facility.

Whenever moneys are to be applied pursuant to the provisions of this Section, such moneys shall be applied by the Trustee at such times, and from time to time, as the Trustee in its sole discretion shall determine, having due regard to the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future; the setting aside of such moneys in trust for the proper purpose shall constitute proper application by the Trustee; and the Trustee shall incur no liability whatsoever to the Authority, to any Holder or to any other person for any delay in applying any such moneys, so long as the Trustee acts with reasonable diligence, having due regard to the circumstances, and ultimately applies the same in accordance with such provisions of this

- 54 -

Agreement as may be applicable at the time of application by the
Trustee. Whenever the Trustee shall exercise such discretion in
applying such moneys, he shall fix the date (which shall be an
Interest Payment Date unless the Trustee shall deem another date
more suitable) upon which such application is to be made and upon
such date interest on the amounts of principal to be paid on such
date shall cease to accrue. The Trustee shall give notice as he
may deem appropriate of the fixing of any such date, and shall
not be required to make payment to the holder of any Bond until
such Bond shall be surrendered to him for appropriate endorse-
ment, or for cancellation if fully paid.

SECTION 703. Effect of Discontinuance of Proceedings. In
case any proceeding taken by the Trustee shall have been discon-
tinued or abandoned for any reason, then and in every such case
the Authority, the Trustee and the Holders shall be restored to
their former positions and rights hereunder, respectively, and
all rights, remedies, powers and duties of the Trustee shall
continue as though no such proceeding had been taken.

SECTION 704. Bondholders May Control Proceedings. Anything
in this Agreement to the contrary notwithstanding, Holders of a
majority in principal amount of the Bonds Outstanding shall have
the right, subject to the provisions of Section 802 hereof, by an
instrument in writing executed and delivered to the Trustee, to
direct the time, method and place of conducting all remedial
proceedings to be taken by the Trustee hereunder, provided that
such direction shall not be otherwise than in accordance with law
and the provisions of this Agreement. In the event that particu-
lar Bonds are secured by a Credit Facility or Liquidity Facility
and the provider of the Credit Facility or Liquidity Facility has
not defaulted on its obligations under such Credit Facility or
Liquidity Facility, the provider of such Credit Facility or
Liquidity Facility shall have the right, in lieu of the Holders
of the Bonds secured thereby, to direct the method and place of
conducting such remedial proceedings and to give any consents or
waivers to such remedial proceedings under this Article VII.

SECTION 705. Restrictions Upon Actions by Individual Bond-
holders. No Holder of any of the Bonds shall have any right to
institute, appear in or defend any suit, action or proceeding in
equity or at law on any Bond or for the execution of any trust
hereunder or for any other remedy hereunder. It is understood
and intended that no one or more Holders of the Bonds hereby
secured shall have any right in any manner whatever by his or
their action to affect, disturb, or prejudice the security of
this Agreement, or to enforce any right hereunder, that all
suits, actions and proceedings at law or in equity shall be
instituted, had and maintained in the manner herein provided and
for the benefit of all holders of such outstanding Bonds, and

- 55 -

that any individual right of action or other right given to one or more of such holders by law is restricted by this Agreement to the rights and remedies herein provided.

SECTION 706. <u>No Remedy Exclusive</u>. No remedy herein conferred upon or reserved to the Holders of the Bonds, is intended to be exclusive of any other remedy or remedies herein provided, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder.

SECTION 707. <u>No Delay or Omission Construed to be a Waiver</u>. No delay or omission of the Trustee, or any Holder of the Bonds to exercise any right or power accruing upon any default shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given by this Agreement to the Trustee and to the Holders may be exercised from time to time and as often as may be deemed expedient.

SECTION 708. <u>Actions of Trustee</u>. All rights of action under this Agreement or under any of the Bonds enforceable by the Trustee, may be enforced by it without the possession of any of the Bonds or the production thereof in the trial or other proceeding relative thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in its name for the benefit of all the Holders of such Bonds, subject to the provisions of this Agreement.

# ARTICLE VIII

## CONCERNING THE TRUSTEE

SECTION 801.  <u>Acceptance of Trusts</u>.  The Trustee accepts and agrees to execute the trusts imposed upon it by this Agreement, but only upon the terms and conditions set forth in this Article and subject to the provisions of this Agreement, to all of which the parties hereto and the respective Holders of the Bonds agree.

The Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

SECTION 802.   <u>Trustee Entitled to Indemnity</u>.   Any other provisions of this Agreement to the contrary notwithstanding, the Trustee shall be under no obligation to institute any suit, or to take any remedial proceeding under this Agreement, or to enter any appearance or in any way defend in any suit in which it may be made defendant, or to take any steps in the execution of the trusts hereby created or in the enforcement of any rights and powers hereunder, until it shall be indemnified to its satisfaction against any and all costs and expenses, outlays and counsel fees and other reasonable disbursements, and against all liability; the Trustee may, nevertheless, begin suit, or appear in and defend suit, or do anything else in its judgment proper to be done by it as such Trustee, without prior indemnity and in such case it shall be indemnified and reimbursed by the Authority for all liabilities, costs and expenses, outlays and counsel fees and other reasonable disbursements properly incurred in connection therewith.

SECTION 803.   <u>Limitation on Trustee's Liabilities</u>.   The Trustee shall have no responsibility in respect of the validity, sufficiency, due execution or acknowledgment of this Agreement or the validity or sufficiency of the security provided hereunder, or except as to the authentication thereof, in respect of the validity of the Bonds or the due execution or issuance thereof. The Trustee shall not be liable or responsible because of the loss of any deposit of moneys arising through the insolvency or the act or default or omission of any other bank or trust company in which such deposit shall have been made by the Trustee under the provisions of this Agreement or by the Authority.  The Trustee shall not be responsible for the application of any of the proceeds of the Bonds, or the application of any other moneys deposited with it and paid out, withdrawn or transferred hereunder, if the application by the Trustee of such proceeds and such other moneys and such payment, withdrawal or transfer shall be made in accordance with the provisions of this Agreement.  The

- 57 -

Trustee shall not be liable in connection with the performance of its duties hereunder or for any error of judgment made in good faith by it, except for its own negligence or default. The Trustee may confer with competent legal counsel and shall not be liable for any action taken or suffered by it in good faith in accordance with an opinion of counsel. The immunities and exemptions from liability of the Trustee hereunder shall extend to its directors, officers, employees and agents.

The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

SECTION 804.   Compensation and Indemnification of Trustee. Subject to the provisions of any contract between the Authority and the Trustee and to Section 401 hereof, the Authority shall pay to the Trustee reasonable compensation for all services rendered by it hereunder and also all of its reasonable expenses, charges and other disbursements and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created, and the performance of its powers and duties hereunder, agrees to indemnify and save the Trustee harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

SECTION 805.   Trustee May Rely on Certificates.   In case at any time it shall be necessary or desirable for the Trustee to make any investigation respecting any fact preparatory to taking or not taking any action or doing or not doing anything as such Trustee, and in any case in which this Agreement provides for permitting or taking any action, and whenever in the administration of this Agreement the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee may, in the absence of bad faith, rely conclusively upon any certificate, requisition, opinion or other instrument required or permitted to be filed with it under the provisions of this Agreement, and any such instrument shall be conclusive evidence of such fact to protect the Trustee in any action that it may or may not take or in respect of anything it may or may not do, in good faith, by reason of the supposed existence of such fact.   Except as otherwise provided in this Agreement, any request, notice, certificate or other instrument from the Authority to the Trustee shall be deemed to have been signed by the proper party or parties if signed by the Executive Director or by any officer or employee of

- 58 -

the Authority who shall be designated by the Authority by
resolution for the purpose, and the Trustee may accept and rely
upon a certificate signed by the Executive Director or any other
officer or employee of the Authority as to any action taken by
the Authority.

SECTION 806.  Notice of Default.  The Trustee shall mail to
the Holders of the Bonds then Outstanding, at their addresses as
they appear on the registration books, within thirty (30) days
after the Trustee shall have knowledge of such default, and to
any provider of a Credit Facility or a Liquidity Facility, at its
address as it is known by the Trustee, within fifteen (15) days
after the Trustee shall have knowledge of such default, written
notice of any default in the payment of principal of and interest
and premium on any Bond, and any other default known to the
Trustee unless such default shall have been cured or waived.
Except for such payment defaults, the Trustee shall not be deemed
to have knowledge of any default hereunder unless specifically
notified in writing by the Holders of not less than ten percent
(10%) in principal amount of the Bonds Outstanding.

Notwithstanding the foregoing, except for any default in the
payment of principal of and interest and premium on any Bond, the
Trustee may withhold and shall be protected in withholding any
notice to the Holders if and so long as the Trustee in good faith
determines that the withholding of such notice is in the inter-
ests of the Holders.

SECTION 807.  Trustee May Be Bondholder.  The bank or trust
company acting as Trustee under this Agreement, and its direc-
tors, officers, agents or employees in their respective individ-
ual or other capacities, may buy, sell, own, hold and deal in any
of the Bonds issued under and secured by this Agreement, and may
join in any action which any Holder of Bonds may be entitled to
take with like effect and may otherwise deal with the Authority
as if such bank or trust company were not the Trustee under this
Agreement, may engage or be interested in any financial or other
transaction with the Authority, and may maintain any and all of
the general banking and business relations with the Authority
with like effect and in the same manner as if the Trustee were
not a party to this Agreement; and no implied covenant shall be
read into this Agreement against the Trustee in respect of such
matters.

SECTION 808.  Trustee Not Responsible for Recitals.  The
recitals, statements and representations contained herein and in
the Bonds (excluding the Trustee's certificate of authentication
on the Bonds) shall be taken and construed as made by and on the
part of the Authority and not by the Trustee, and the Trustee
assumes and shall be under no responsibility for the correctness

- 59 -

of the same.  The Trustee makes no representation as to the validity or sufficiency of this Agreement or the Bonds.

SECTION 809.  <u>Trustee Protected in Relying on Papers</u>.  The Trustee shall be protected in acting or proceeding, or in not acting or not proceeding, in good faith, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other paper or document which it shall in good faith believe to be genuine and to have been passed or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Agreement, or upon the written opinion or other written advice of any attorney believed by the Trustee to be qualified in relation to the subject matter, and the Trustee shall be under no duty to make any investigation or inquiry as to any statements contained or matters referred to in any such instrument.

SECTION 810.  <u>Resignation of Trustee</u>.  The Trustee may resign and thereby become discharged from the trusts hereby created, by notice in writing to be given to the Authority and published in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico and in a daily newspaper or financial journal published in the Borough of Manhattan, City and State of New York, not less than sixty (60) days before such resignation is to take effect, but such resignation shall take effect immediately upon the appointment of a new Trustee hereunder, if such new Trustee shall be appointed before the time limited by such notice and shall then accept the trusts hereof.

No resignation by the Trustee under this Section, no removal of the Trustee under Section 811 hereof and no appointment of a successor Trustee under Section 812 hereof shall become effective until the acceptance of appointment by the successor Trustee under Section 813 hereof.

SECTION 811.  <u>Removal of Trustee</u>.  The Trustee may be removed at any time by an instrument or concurrent instruments in writing, signed by the Holders of not less than a majority in principal amount of the Bonds hereby secured and then outstanding and filed with the Authority.  A photostatic copy of each such instrument shall be delivered promptly by the Authority to the Trustee.  The Trustee may also be removed at any time for any breach of trust or for acting or proceeding in violation of, or for failing to act or proceed in accordance with, any provision of this Agreement with respect to the duties and obligations of the Trustee by any court of competent jurisdiction upon the application of the Authority pursuant to resolution of the Holders of not less than ten percent (10%) in aggregate principal amount of the Bonds then Outstanding under this Agreement.

- 60 -

SECTION 812.   Appointment of Successor Trustee.   If at any
time hereafter the Trustee shall resign, be removed, be dissolved
or otherwise become incapable of acting, or the bank or trust
company acting as Trustee shall be taken over by any governmental
official, agency, department or board, the position of Trustee
shall thereupon become vacant.   If the position of Trustee shall
become vacant for any reason, the Authority shall appoint a Trus-
tee to fill such vacancy.   Within thirty (30) days after any such
appointment, the Secretary of the Authority shall cause notice of
such appointment to be published in a daily newspaper of general
circulation published in the Municipality of San Juan, Puerto
Rico, and in a daily newspaper or financial journal of general
circulation in the Borough of Manhattan, City and State of New
York.

At any time within one year after any such vacancy shall
have occurred, the Holders of a majority in principal amount of
the Bonds hereby secured and then Outstanding, by an instrument
or concurrent instruments in writing, signed by such Bondholders
or their attorneys in fact thereunto duly authorized and filed
with the Authority, may appoint a successor Trustee, which shall
supersede any Trustee theretofore appointed by the Board.   Photo-
static copies of each such instrument shall be delivered promptly
by the Authority to the predecessor Trustee and to the Trustee so
appointed by the Bondholders.

If no appointment of a successor Trustee shall be made pur-
suant to the foregoing provisions of this Section within ten (10)
days after the vacancy shall have occurred, the Holder of any
Bond Outstanding hereunder or any retiring Trustee may apply to
any court of competent jurisdiction to appoint a successor Trus-
tee.   Such court may thereupon, after such notice, if any, as
such court may deem proper and prescribe, appoint a successor
Trustee.

Any Trustee hereafter appointed shall be a corporation duly
authorized to exercise corporate trust powers and subject to
examination by Federal, state or Commonwealth authority and in
good standing and having at the time of its appointment a com-
bined capital and surplus aggregating at least One Hundred Mil-
lion Dollars ($100,000,000).

SECTION 813.   Vesting of Trust with Successor Trustee.
Every successor Trustee appointed hereunder shall execute,
acknowledge and deliver to its predecessor, and also to the Auth-
ority, an instrument in writing accepting such appointment here-
under, and thereupon such successor Trustee, without any further
act, shall become fully vested with all the rights, immunities,
powers and trusts, and subject to all the duties and obligations,
of its predecessor; but such predecessor shall, nevertheless, on

- 61 -

the written request of its successor or of the Authority, execute
and deliver an instrument transferring to such successor Trustee
all the rights, immunities, powers and trusts of such predecessor
hereunder; and every predecessor Trustee shall deliver all prop-
erty and moneys held by it hereunder to its successor.  Should
any instrument in writing from the Authority be required by any
successor Trustee for more fully and certainly vesting in such
Trustee the rights, immunities, power and trusts hereby vested or
intended to be vested in the predecessor Trustee, any such
instrument in writing shall and will, on request, be executed,
acknowledged and delivered by the Authority.

SECTION 814.  Reporting Requirements.  The Trustee shall on
a monthly basis, file with the Authority a statement setting
forth in respect of the preceding calendar month:

(a)  the amount withdrawn or transferred by it and
the amount deposited with it on account of each Fund and
Account held by it under the provisions of this Agreement;

(b)  the amount on deposit with it at the end of such
month to the credit of each such Fund and Account;

(c)  a brief description of all obligations held by
it as an investment of moneys in each such Fund and Account
and of any Reserve Account Letter of Credit or Reserve
Account Insurance Policy in the Reserve Account;

(d)  the amount applied to the purchase or redemption
of Bonds under Section 403 of this Agreement and a descrip-
tion of Bonds or portions of Bonds so purchased or redeemed;
and

(e)  any other information which the Authority may
reasonably request.

All records and files pertaining to the trusts hereunder in
the custody of the Trustee shall be open at all reasonable times
to the Authority and its agents and representatives.

## ARTICLE IX

### EXECUTION OF INSTRUMENTS BY BONDHOLDERS
### AND PROOF OF OWNERSHIP OF BONDS

SECTION 901.   Proof of Execution of Documents and Ownership.

(a)   Any request, direction, consent or other instrument in writing required by this Agreement to be signed or executed by Bondholders may be in any number of concurrent instruments of similar tenor and may be signed or executed by such Bondholders in person or by their attorneys or legal representatives appointed by an instrument in writing.  Proof of the execution of any such instrument and of the ownership of Bonds shall be sufficient for any purpose of this Agreement and shall be conclusive in favor of the Trustee with regard to any action taken by it under such instrument if made in the following manner:

(1)   The fact and date of the execution by any person of any such instrument may be proved by the verification of any officer in any jurisdiction who, by the laws thereof, has power to take affidavits within such jurisdiction, to the effect that such instrument was subscribed and sworn to before him, or by an affidavit of a witness to such execution.  Where such execution is in behalf of a person other than an individual, such verification shall also constitute sufficient approval of the authority of the signor thereof.

(2)   The ownership of Bonds shall be proved by the registration books required to be maintained pursuant to the provisions of Article II of this Agreement.

Nothing contained in this Article shall be construed as limiting the Trustee to such proof, it being intended that the Trustee may accept any other evidence of the matters herein stated which it may deem sufficient.

(b)   If the Authority shall solicit from the Holders any request, direction, consent or other instrument in writing required or permitted by this Agreement to be signed or executed by the Holders, the Authority may, at its option, fix in advance a record date for determination of Holders entitled to give each request, direction, consent or other instrument, but the Authority shall have no obligation to do so.  If such a record date is fixed, such request, direction, consent or other instrument may be given before or after such record date, but only the Holders of record at the close of business on such record date shall be deemed to be Holders for the purposes of determining whether Holders of the requisite proportion of Bonds have authorized or agreed or consented to such request, direction, consent or other

- 63 -

instrument, and for that purpose the Bonds shall be computed as of such record date.

(c)   Any request or consent of the Holder of any Bond shall bind every future Holder of the same Bond in respect of anything done by the Trustee pursuant to such request or consent.

## ARTICLE X

### SUPPLEMENTAL AGREEMENTS

SECTION 1001.   Supplemental Agreements Without Bondholders' Consent.   The Authority and the Trustee may, from time to time and at any time, enter into such agreements supplemental hereto as shall not be inconsistent with the terms and provisions hereof (which supplemental agreements shall thereafter form a part hereof):

(a)   to cure any ambiguity or formal defect or omission in this Agreement or in any supplemental agreement or to correct or supplement any provision contained herein that may be defective or inconsistent with any other provisions contained herein; or

(b)   to grant to or confer upon the Trustee for the benefit of the Bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the Bondholders or the Trustee; or

(c)   to add to the conditions, limitations and restrictions on the issuance of Bonds under the provisions of this Agreement, other conditions, limitations and restrictions thereafter to be observed; or

(d)   to add to the covenants and agreements of the Authority in this Agreement other covenants and agreements thereafter to be observed by the Authority or to surrender any right or power herein reserved to or conferred upon the Authority; or

(e)   to permit the issuance of Bonds, the interest on which is intended to be excludible from gross income for federal income tax purposes under the Code to the Holders thereof, in coupon form, if the conditions precedent stated herein have been met; or

(f)   to permit the Authority to issue Bonds the interest on which is not excludible from gross income for federal income tax purposes under the Code to the Holders thereof; or

(g)   to qualify the Bonds or any of the Bonds for registration under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended; or

(h)   to qualify this Agreement as an "indenture" under the Trust Indenture Act of 1939, as amended; or

- 65 -

(i)   to make such changes as may be necessary to adjust the terms hereof so as to facilitate the issuance of Variable Rate Bonds, Capital Appreciation Bonds, Capital Appreciation and Income Bonds, Put Bonds, Extendible Maturity Bonds, Balloon Bonds, Interim Bonds and such other Bonds as may be marketable from time to time; or

(j)   to make such changes as may be necessary to comply with the provisions of the Code relating to the exclusion of interest on the Bonds from gross income thereunder; or

(k)   to make such changes as may evidence the right and interest of an issuer of a Credit Facility or a Liquidity Facility that secures any Series of Bonds.

SECTION 1002.   <u>Modification with Consent of Holders of Majority of Bonds</u>.   Subject to the terms and provisions contained in this Section, and not otherwise, the Holders of not less than a majority in aggregate principal amount of the Bonds at the time Outstanding (or in case less than all of several Series of Bonds then Outstanding are affected by the supplement hereto, the Holders of not less than a majority in principal amount of the Bonds of each Series so affected and Outstanding at the time the consent is given) shall have the right, from time to time, anything contained in this Agreement to the contrary notwithstanding, to consent to and approve the execution by the Authority and the Trustee of such agreement or agreements supplemental hereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in this Agreement or in any supplemental agreement; provided, however, that nothing herein contained shall permit, or be construed as permitting, without the consent of the Holders of one hundred percent (100%) of the Bonds Outstanding (a) an extension of the maturity of any Bond issued hereunder (other than as provided by the terms of an Extendible Maturity Bond), or (b) a reduction in the principal amount of any Bond or the redemption premium or the rate of interest thereon, or (c) a preference or priority of any Bond or Bonds over any other Bond or Bonds, or (d) a reduction in the aggregate principal amount of the Bonds required for consent to such supplemental Agreement.   Nothing herein contained, however, shall be construed as making necessary the approval by Bondholders of the execution of any supplemental agreement authorized by Section 1001 of this Article.   The provider of any Credit Facility or Liquidity Facility shall have the right, in lieu of the Holders of Bonds secured thereby, to give consent to any supplemental agreement for which consent of the Holders of such Bonds is required under this Article and all

- 66 -

references to Bondholders for purposes of such consent shall mean
instead the provider of said Credit Facility or Liquidity Facil-
ity; provided, however, that said provider of a Credit Facility
or Liquidity Facility shall not be in default on its obligations
in connection with said Credit Facility or Liquidity Facility.

If at any time the Authority shall request the Trustee to
enter into any supplemental agreement for any of the purposes of
this Section, the Trustee shall cause a notice to be mailed,
postage prepaid, to all Holders of Bonds then Outstanding at
their addresses as they appear on the registration books and to
any provider of a Credit Facility or Liquidity Facility.  Such
notice shall briefly set forth the nature of the proposed supple-
mental agreement and shall state that a copy thereof is on file
at the principal corporate trust office of the Trustee for
inspection by all Bondholders.  The Trustee shall not, however,
be subject to any liability to any Bondholder by reason of its
failure to mail the notice required by this Section, and any such
failure shall not affect the validity of such supplemental agree-
ment when consented to or approved as provided in this Section.

Whenever, at any time within a year after the date of the
mailing of such notice, the Authority shall deliver to the
Trustee an instrument or instruments purporting to be executed by
the Holders of at least a majority in aggregate principal amount
of the Bonds then Outstanding, which instrument or instruments
shall refer to the proposed supplemental agreement described in
such notice and shall specifically consent to and approve the
execution thereof the Trustee may execute such supplemental
agreement without liability or responsibility to any Holder of
any Bond, whether or not such Holder shall have consented
thereto.  It shall not be necessary for the consent of the
Holders to approve the particular form of any proposed supplemen-
tal agreement, but it shall be sufficient if such consent shall
approve the substance thereof.

If the Holders of not less than a majority in aggregate
principal amount of the Bonds of each Series affected and Out-
standing at the time of the execution of such supplemental agree-
ment shall have consented to and approved the execution thereof
as herein provided, no Holder shall have any right to object to
the execution of such supplemental agreement, or to object to any
of the terms and provisions therein contained, or the operation
thereof, or in any manner to question the propriety of the execu-
tion thereof, or to enjoin or restrain the Trustee or the Auth-
ority from executing the same or from taking any action pursuant
to the provisions thereof.

The consent of the Holders of any additional Series of Bonds
to be issued hereunder shall be deemed given if the underwriters

or initial purchasers for resale consent in writing to such supplemental agreement and the nature of the amendment effected by such supplemental agreement is disclosed in the official statement or other offering document pursuant to which such additional Series of Bonds is offered and sold to the public.

Upon the execution of any supplemental agreement pursuant to the provisions of this Section, this Agreement shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Agreement of the Authority, the Trustee, and all Holders of Outstanding Bonds shall thereafter be determined, exercised and enforced hereunder, subject in all respects, to such modifications and amendments.

SECTION 1003.  <u>Trustee Joining in Supplemental Agreements</u>. The Trustee is authorized to join with the Authority in the execution of any such supplemental agreement and to make the further agreements and stipulations which may be contained therein, but the Trustee may, but shall not be obligated (except to the extent required in the case of a supplemental agreement entered into pursuant to Section 1001(h) hereof) to, enter into any such supplemental agreement which affects its rights, duties, or immunities under this Agreement.  Any supplemental agreement executed in accordance with the provisions of this Article shall thereafter form a part of this Agreement; and all the terms and conditions contained in any such supplemental agreement as to any provision authorized to be contained therein shall be and be deemed to be part of the terms and conditions of this Agreement for any and all purposes.  In case of the execution and delivery of any supplemental agreement, express reference may be made thereto in the text of any Bonds issued thereafter, if deemed necessary or desirable by the Trustee.

SECTION 1004.  <u>Responsibilities of Trustee under this Article</u>.  The Trustee shall not be under any responsibility or liability to the Authority or to any Bondholder or to anyone whomsoever for its refusal in good faith to enter into any such supplemental agreement if such agreement is deemed by the Trustee to be contrary to the provisions of this Article.  The Trustee shall be entitled to receive, and shall be fully protected in relying upon, the opinion of any counsel who may be counsel for the Authority, as conclusive evidence that any such supplemental agreement complies with the provisions of this Agreement, and that it is proper for the Trustee, under the provisions of this Article, to join in the execution of such supplemental agreement.

SECTION 1005.  <u>Bond Resolution May Be Supplemented or Modified</u>.  Resolutions of the Board authorizing the issuance of any Series of Bonds may be supplemented or modified by subsequent

- 68 -

resolution of the Board; provided that the provisions of this
Article shall apply, except as otherwise provided in Section 602
hereof.

ARTICLE XI

DEFEASANCE

SECTION 1101.  <u>Defeasance</u>.  If all the Outstanding Bonds shall have been paid as provided below, and the Trustee shall have received written notice for the provider of any Credit Facility or Liquidity Facility that all amounts then due and owing to any provider of a Credit Facility or Liquidity Facility have been paid, then and in that case the right, title and interest of the Trustee hereunder (except under Section 804 of this Agreement) shall cease, terminate and become void, and such Bonds shall cease to be entitled to any benefit or security under this Agreement except for Sections 205, 206 and 211 of this Agreement.  In such event, the Trustee shall transfer and assign to the Authority all property then held by the Trustee, shall execute such documents as may be reasonably required by the Authority to evidence such transfer and assignment and shall turn over to the Authority any surplus in any account in the Sinking Fund.

Any Outstanding Bond shall be deemed to have been paid within the meaning and with the effect expressed in this Section 1101 when the whole amount of the principal of and interest on such Bond shall have been paid or when (a) there shall have been deposited with the Trustee or another fiduciary institution acting as escrow agent for the Holder of such Bond either moneys in an amount that shall be sufficient, or Sufficient Government Obligations, as defined in Section 305 hereof, to pay when due the principal of and premium, if any, and interest due and to become due on such Bond on or prior to the redemption date or maturity date thereof, as the case may be, and (b) in the event such Bond does not mature and is not to be redeemed within the next succeeding sixty (60) days, the Authority shall have given the Trustee irrevocable instructions to give, as soon as practicable, a notice to the Holder of such Bond by first-class mail, postage prepaid, stating that the deposit of moneys or Sufficient Government Obligations mentioned in clause (a) of this paragraph has been made with the Trustee or another fiduciary institution acting as escrow agent for the Holder of such Bond, and that such Bond is deemed to have been paid in accordance with this Section and stating such maturity or redemption date upon which moneys are to be available for the payment of the principal of and premium, if any, and interest on such Bond.  Neither the moneys nor Sufficient Government Obligations deposited with the Trustee or other fiduciary institution acting as escrow agent nor principal or interest payments on any such obligations shall be withdrawn or used for any purpose other than, and shall be held in trust for, the payment of the principal of and premium, if any, and interest on such Bonds.

- 70 -

As to Variable Rate Bonds, the amount required for the interest thereon shall be calculated at the maximum rate permitted by the resolution of the Board authorizing the issuance of the Variable Rate Bonds; provided, however, that if on any date the total amount of moneys and Sufficient Government Obligations on deposit for the payment of interest on such Variable Rate Bonds is in excess of the total amount which would have been required to be deposited on such date in respect of such Variable Rate Bonds in order fully to discharge and satisfy such Bonds pursuant to the provisions of this Section, the Authority may use the amount of such excess, subject to Section 504 hereof, free and clear of any trust, lien, security interest, pledge or assignment securing said Variable Rate Bonds or otherwise existing under this Agreement.

Notwithstanding any of the provisions of this Agreement to the contrary, Put Bonds and Extendible Maturity Bonds may only be fully discharged and satisfied either by paying the principal of and interest on said Bonds as they become due and payable or by depositing moneys which shall be sufficient at the time of such deposit to pay when due the maximum amount of principal of and redemption premium, if any, and interest on such Put Bonds and Extendible Maturity Bonds which could become payable to the Holders of such Bonds upon the exercise of any options provided to the Holders of such Bonds and the Authority; provided, however, that if, at the time a deposit is made pursuant to this paragraph, the options originally exercisable are no longer exercisable, such Bonds shall not be considered Put Bonds or Extendible Maturity Bonds for these purposes.

If any portion of the moneys deposited for the payment of the principal of and redemption premium, if any, and interest on any Bond is not required for such purpose, the Authority may use the amount of such excess, subject to Section 504 hereof, free and clear of any trust, lien, security interest, pledge or assignment securing such Bond.

# ARTICLE XII

## MISCELLANEOUS PROVISIONS

SECTION 1201. <u>Mergers</u>. All the covenants, stipulations, obligations and agreements contained in this Agreement by or on behalf of or for the benefit of the Authority shall bind or inure to the benefit of the successor or successors of the Authority from time to time and any officer, board, body or commission to whom or to which any power or duty affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law. Any bank or trust company having power to execute the trusts of this Agreement and otherwise qualified to act as Trustee hereunder with or into which the Trustee may be merged, converted or consolidated, or to which the assets and business of the Trustee may be sold, shall be deemed to be the successor of the Trustee. Any bank or trust company with or into which any of the paying agents may be merged, converted or consolidated, or to which the assets and business of such paying agents may be sold, shall be deemed the successor of such paying agents for the purposes of this Agreement.

SECTION 1202. <u>Any Notices</u>. Any notice, demand, direction, request or other instrument authorized or required by this Agreement to be given to or filed with the Authority or the Trustee shall be deemed to have been sufficiently given or filed for all purposes of this Agreement if and when sent by first class mail, postage prepaid:

> to the Authority, if addressed to Executive Director, Puerto Rico Infrastructure Finance Authority, c/o Government Development Bank for Puerto Rico, Minillas Government Center Stop 22, Santurce, Puerto Rico 00907;

> to the Trustee, if addressed to 5 Hanover Square, New York, New York 10043, Attention: Corporate Trust Office or at such other address as it may designate in writing, or to any successor Trustee, if addressed to its principal corporate trust office.

All documents received by the Trustee under the provisions of this Agreement shall be retained in its possession, subject at all reasonable times to the inspection of the Authority, any Bondholders, and the agents and representatives thereof.

SECTION 1203. <u>Substitute Publication and Mailing</u>. If, because of the temporary or permanent suspension of publication of any newspaper or financial journal or for any other reason, the Trustee or the Authority shall be unable to publish in a newspaper or financial journal any notice required to be pub-

lished by the provisions of this Agreement, the Trustee or the Authority, as the case may be, shall give such notice in such other manner as in its judgment shall most effectively approximate such publication thereof, and the giving of such notice in such manner shall for all purposes of this Agreement be deemed to be compliance with the requirement for the publication thereof.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Bondholders when such notice is required to be given pursuant to any provision of this Agreement, any manner of giving notice as shall be satisfactory to the Trustee and the Authority shall be deemed to be a sufficient giving of such notice.

SECTION 1204.   No Third Party Rights.   Except as herein otherwise expressly provided, nothing in this Agreement expressed or implied is intended or shall be construed to confer upon any person other than the parties hereto, the Holders of the Bonds issued under and secured by this Agreement and the provider of any Credit Facility or Liquidity Facility securing the Bonds, any right, remedy or claim, legal or equitable, under or by reason of this Agreement or any provision hereof, this Agreement and all its provisions intended to be and being for the sole and exclusive benefit of the parties hereto, the Holders from time to time of the Bonds issued hereunder and the provider of any Credit Facility or Liquidity Facility securing the Bonds.

SECTION 1205.   Effect of Partial Invalidity.   In case any one or more of the provisions of this Agreement or of the Bonds issued hereunder shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Agreement or of the Bonds, but this Agreement and said Bonds shall be construed and enforced as if such illegal or invalid provision had not been contained therein.   In case any covenant, stipulation, obligation or agreement contained in the Bonds or in this Agreement shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement shall be deemed to be the covenant, stipulation, obligation or agreement of the Authority to the full extent permitted by law.

SECTION 1206.   Effect of Covenants.   All covenants, stipulations, obligations and agreements of the Authority contained in this Agreement shall be deemed to be covenants, stipulations, obligations and agreements of the Authority and of the Board to the full extent authorized by the Act.

Except as otherwise provided in this Agreement, all rights, powers and privileges conferred and duties and obligations

- 73 -

imposed upon the Authority or upon the Board by the provisions of this Agreement shall be exercised or performed by the Authority, the Board or by such other officers, board, body or commission as may be required by law to exercise such rights, powers and privileges or to perform such duties and obligations.

No covenant, stipulation, obligation or agreement herein contained shall be deemed to be a covenant, stipulation, obligation or agreement of any member, agent or employee of the Authority in his individual capacity, and neither the members of the Authority nor any officer thereof executing the Bonds shall be liable personally on the Bonds or be subject to any personal liability or accountability by reason of the issuance thereof.

SECTION 1207.  Governing Law.  The construction of this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico; provided that the provisions governing the Trustee's exercise of its obligations hereunder shall be governed by the laws of the State of New York.

SECTION 1208.  Payments Due on Saturdays, Sundays and Holidays.  In any case where the date of payment of interest on or principal of the Bonds or the date fixed for redemption of any Bonds shall be a Saturday, Sunday or other day on which banking institutions in The City of New York, New York, or the Commonwealth of Puerto Rico, are authorized or required by law to close, then payment of interest or principal, and premium, if any, need not be made on such date but may be made on the next succeeding business day with the same force and effect as if made on said date of payment or the date fixed for redemption, and no interest on such payment shall accrue for the period after such date.

SECTION 1209.  Multiple Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instruments.

SECTION 1210.  Headings, etc. Not Part of Agreement.  Any headings preceding the texts of the several articles hereof and any table of contents appended to copies hereof shall be solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

IN WITNESS WHEREOF, Puerto Rico Infrastructure Financing Authority has caused this Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary and Citibank, N.A. has caused this Agreement to be executed in its behalf by one of its Vice Presidents, and its corporate seal to be impressed hereon and attested by a Trust Officer; all thereunto duly authorized, all as of the day and year first above written.

PUERTO RICO INFRASTRUCTURE
FINANCING AUTHORITY

By: _____
         Executive Director

_____
         Secretary

CITIBANK, N.A.,
Trustee

By: _____
         Vice President

_____
         Trust Officer

- 75 -

THE STATE OF *New York*        )
                               )   SS:
COUNTY OF *New York*           )

On the _3rd_ day of _November_, in the year 1988, before me
personally came _____ _Jose R. Gonzalez_, to me known, who, being
by me duly sworn, did depose and say that he resides in the Muni-
cipality of San Juan, Puerto Rico; that he is the Executive
Director of Puerto Rico Infrastructure Financing Authority, the
body corporate described in and which executed the above instru-
ment; that he knows the seal thereof; that the seal affixed to
said instrument is the corporate seal of Puerto Rico Infrastruc-
ture Financing Authority; that it was so affixed by order of the
Board of Directors of Puerto Rico Infrastructure Financing
Authority; and that he signed his name thereto by like order.


                                    _Christa M. Bowen_
                              Notary Public, State of _____

My Commission Expires:

                    CHRISTA M. BOWEN
                Notary Public, State of New York
                         No. 41-4723478
                    Qualified in Queens County          (NOTARIAL SEAL)
_____  Certificate filed in New York County
                  Commission Expires August 31, 1990

THE STATE OF _New York_ )
                                   ) SS:
COUNTY OF _New York_ )

On the _2nd_ day of _November_, in the year 1988, before me personally came ___JA Olive___, to me known, who, being by me duly sworn, did depose and say that he resides in ___New York___; that he is a Vice President of ___Citibank, NA___, the national banking association described in and which executed the above instrument; that he knows the seal of said banking association; that the seal affixed to said instrument is the corporate seal of said banking association; that it was so affixed by authority of the Board of Directors of said corporation; and that he signed his name thereto by like authority.

Notary Public, State of

My Commission Expires:

CHRISTA M. BOWEN
Notary Public, State of New York
No. 41-4723478
Qualified in Queens County
Certificate filed in New York County
Commission Expires August 31, 1990

(NOTARIAL SEAL)

- ,77 -