**Reply Deadline:** July 16, 2019 at 4:00 p.m. (AST)
**Hearing:** July 24, 2019 at 9:30 a.m. (AST) (San Juan)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br><br>**Re: ECF No. 7176** |

# AAFAF'S OPPOSITION
# TO AMBAC ASSURANCE CORPORATION'S MOTION
# <u>CONCERNING APPLICATION OF THE AUTOMATIC STAY [ECF NO. 7176]</u>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("<u>Commonwealth</u>") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ................................................................................................................... 1

    I.    The Motion Should Be Denied Because Movants Lack Standing ......................... 1

        A.    Ambac and FGIC Lack Standing to Assert PRIFA's Rights
Against the Commonwealth ................................................................. 1

        B.    Ambac and FGIC Lack Standing to Take Any Legal Action on the
Bonds Under the No-Action Clause in the Trust Agreement ................... 2

RESERVATION OF RIGHTS ......................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*,
    677 F.3d 1286 (11th Cir. 2012) ............................................................... 3, 4

*Feldbaum v. McCrory Corp.*,
    1992 WL 119095 (Del. Ch. June 2, 1992) ........................................................ 3, 4, 6

*In re Enron Corp.*,
    302 B.R. 463 (Bankr. S.D.N.Y. 2003), *aff'd* 2005 WL 356985 (S.D.N.Y. 2005) ......... 4, 5, 6, 7

*Lange v. Citibank, N.A.*,
    2002 WL 2005728 (Del. Ch. Aug. 13, 2002) ...................................................... 6

*Peak Partners, LP v. Republic Bank*,
    191 Fed. App'x 118 (3d Cir. 2006) .......................................................... 3

**Statutes**

Bankruptcy Code § 922 .......................................................................... 5

**Other Authorities**

*Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017 ...................... 1

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as fiscal agent for the Puerto Rico Infrastructure Financing Authority ("PRIFA") under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017 ("Act 2-2017"), opposes *Ambac Assurance Corporation's Motion and Memorandum of Law in Support of Its Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 7176] (the "Motion").[2]

## **ARGUMENT**

### I. THE MOTION SHOULD BE DENIED BECAUSE MOVANTS LACK STANDING

#### A. *Ambac and FGIC Lack Standing to Assert PRIFA's Rights Against the Commonwealth*

1.     As an initial matter, Ambac Assurance Corporation ("Ambac") and Financial Guaranty Insurance Company ("FGIC") lack standing because they cannot assert PRIFA's rights against the Commonwealth. As set forth in the Financial Oversight and Management Board for Puerto Rico's (the "Oversight Board") Opposition to the Motion [ECF No. 7827], Ambac and FGIC cannot assert PRIFA's rights against the Commonwealth regarding retained rum-tax revenues. The Oversight Board has persuasively explained why PRIFA's creditors cannot seek to enforce PRIFA's rights. Any such rights belong to PRIFA and can be asserted only by AAFAF on PRIFA's behalf. *See* Act 2-2017, § 5(a). AAFAF adopts the Oversight Board's argument on this facet of standing as if set forth herein.

---

[2] Unless otherwise noted, all emphasis is added and all internal citations and quotations are omitted.

**B.**     ***Ambac and FGIC Lack Standing to Take Any Legal Action on the Bonds Under the No-Action Clause in the Trust Agreement***

2.      AAFAF also opposes the Motion because it violates PRIFA's right under the October 1, 1988 Trust Agreement (the "Trust Agreement," attached hereto as Exhibit A) to prevent individual bondholders such as Ambac or FGIC from bringing any legal proceedings on the bonds in violation of the Trust Agreement.

3.      The bonds at issue in Ambac's Motion were issued by PRIFA under the Trust Agreement. (Ex. A.) The Trust Agreement contains a standard no-action clause that prohibits individual bondholders from taking any legal action on the bonds or for any remedy on the bonds: "No Holder of any of the Bonds shall have *any* right to institute, appear in or defend *any* suit, action or proceeding in equity or at law on *any* Bond . . . or for *any other remedy* hereunder." (Ex. A § 705.)  Even more broadly, the no-action clause precludes any individual-bondholder action to affect the bonds' security or enforce any rights on the bonds: "It is understood and intended that no one or more Holders of the Bonds hereby secured shall have *any right in any manner whatever* by his or their action to affect, disturb, or prejudice the security of this Agreement, or to enforce *any* right hereunder . . . ." (Ex. A § 705.)

4.      In lieu of individual action, the Trust Agreement centralizes enforcement powers in the trustee, whom bondholders can request to take action that the trustee deems "effectual" to enforce their rights under the bonds, including with respect to security:

> At the request of the Holders of not less than twenty percent (20%) of the aggregate principal amount of Bonds then outstanding, the Trustee shall proceed . . . to protect and enforce its rights and the rights of the Holders under the laws of the Commonwealth or under this Agreement, including all rights with respect to funds and other moneys pledged hereunder, by such suits, actions or special proceedings in equity or at law . . . as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights.

(Ex. A § 701.)  When the requesting bondholders hold "a majority in principal amount of the Bonds Outstanding," they can, "in writing executed and delivered to the Trustee," "direct the time, method and place of conducting all remedial proceedings to be taken by the Trustee hereunder. . . ." (Ex. A § 704.)  Even in those circumstances, the Trust Agreement makes clear that action can only be "taken by the Trustee," not by the requesting bondholders.

5.      No-action clauses like these are "bargained-for contractual provisions" that are enforced like any other contract provision.  *See Feldbaum v. McCrory Corp.*, 1992 WL 119095, at *5 (Del. Ch. June 2, 1992) (no-action clauses "are bargained-for contractual provisions which inure, not only to the benefit of issuers, but also to the benefit of the investors in the bonds").  They represent waivers by bondholders of their individual rights to take legal action, in favor of vesting those rights in the trustee to act on behalf of all bondholders.  *See Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1293 (11th Cir. 2012) (no-action clauses "constitute waivers by plaintiffs of their rights to bring claims . . . and instead vest those rights in the trustee"); *Peak Partners, LP v. Republic Bank*, 191 Fed. App'x 118, 126 (3d Cir. 2006) (consistent with "central feature" of indenture "to centralize enforcement powers," no-action clause "delegat[es] the right to bring a suit enforcing the rights of bondholders to the trustee"); *Feldbaum*, 1992 WL 119095, at *7 ("[C]ourts systematically conclude that, in consenting to no-action clauses by purchasing bonds, plaintiffs waive their rights to bring claims that are common to all bondholders, and thus can be prosecuted by the trustee.").  This Court has already enforced a trust agreement's no-action clause to hold that PREPA bondholders lacked standing to bring an action to lift the automatic stay [ECF No. 974] that violated the no-action clause. (Transcript of November 7, 2018 Omnibus Hearing at 49:13-19, attached hereto as Exhibit B).

3

6.     No-action clauses protect both issuers and bondholders from the distraction and
expense that individual bondholders can wreak by taking legal action that is not in all bondholders'
best interest:

> The primary purpose of a no-action clause is thus to protect issuers from the
> expense involved in defending lawsuits that are either frivolous or otherwise
> not in the economic interest of the [issuer] and its creditors.  In protecting
> the issuer such clauses protect bondholders.  They protect against the
> exercise of poor judgment by a single bondholder or a small group of
> bondholders, who might otherwise bring a suit against the issuer that most
> bondholders would consider not to be in their collective economic interest.

*Feldbaum*, 1992 WL 119095, at *6; *see also Akanthos*, 677 F.3d at 1296 ("Although one purpose
of the no-action clause is to deter suits brought by the minority, other purposes of the clause are to
prevent rash, precipitate, or harassing suits by bondholders who disrupt corporate affairs . . . and
to protect the issuer from a multiplicity of lawsuits."); *In re Enron Corp.*, 302 B.R. 463, 472–73
(Bankr. S.D.N.Y. 2003), *aff'd* 2005 WL 356985 (S.D.N.Y. 2005) ("When dealing with such
lending arrangements, the purpose of contracting in advance to restrict enforcement to a single
agent is to prevent the chaos that would ensue if multiple lawsuits were initiated by each lending
bank with, possibly, divergent interests.").

7.     Ambac's Motion falls squarely within the Trust Agreement's no-action clause.
Ambac seeks an order that would determine the scope of all bondholders' security interest under
the Trust Agreement—namely, an order (i) that "the Commonwealth has no property interest in"
the rum-tax revenues transmitted by the U.S. government to the Commonwealth that allegedly
secure payment, or (ii) declaring those revenues "pledged special revenues" under Bankruptcy
Code § 922.  (Motion ¶ 11.)  The result of those holdings, Ambac argues, would be to place the
pledged rum-tax revenues outside the automatic stay for all bondholders.  If the Court concluded
that the automatic stay applies, Ambac seeks an order requiring "the Commonwealth to provide

4

adequate protection for the Pledged Rum Taxes" to preserve the value of bondholders' alleged security interest.  (Motion ¶ 84.)

8.     Thus, Ambac has unquestionably "institute[d]" (or at a minimum "appear[ed] in") a "proceeding in equity or at law" on the bonds and sought a "remedy" concerning its security interest under the Trust Agreement, in violation of Section 705.  (Ex. A § 705.)  Ambac's Motion violates Section 705 also by seeking "to affect . . . the security of" the Trust Agreement and "to enforce" that security interest (*id.*) through an order declaring (among other things) that the Commonwealth has no interest in the rum-tax revenues that are pledged under the Trust Agreement.  The no-action clause prevents Ambac from seeking this relief, and vests that power exclusively with the trustee.  (*Id.* §§ 701, 705.)  Judge Gonzalez's opinion in *Enron* is directly on point here.  There, every member of a bank group holding all of the outstanding obligations under a credit agreement sought to pursue remedies against a debtor.  *Enron*, 302 B.R. at 477.  The credit agreement contained a provision limiting the exercise of remedies to the collateral agent.  *Id.* at 472.  The court held that this provision had to be enforced according to its terms and granted defendants' motion to dismiss the bank group members' suit.  *Id.* at 477.  It further concluded that because plaintiffs in that action lacked contractual standing to bring a lawsuit, their lack of standing to pursue a motion to lift the automatic stay was "even more apparent," and denied movants the right to obtain that relief.  *Id.* at 477–78.

9.     Other precedent supports the conclusion in *Enron*. When a no-action clause covers any legal action seeking a remedy on the bonds, as in the Trust Agreement, then "no matter what legal theory a plaintiff advances, if the trustee is capable of satisfying its obligations, then any claim that can be enforced by the trustee on behalf of all bonds . . . is subject to" the no-action clause. *Feldbaum*, 1992 WL 119095, at *6; *see also Lange v. Citibank, N.A.*, 2002 WL 2005728,

5

at \*7 (Del. Ch. Aug. 13, 2002) (barring bondholder claims "that seek[] redress for harm suffered by all" bondholders, which can be "pursued by the Indenture Trustee on their behalf"). The relief that Ambac seeks—such as a ruling that the "Pledged Rum Taxes" are outside the automatic stay— would apply to all bondholders, not just Ambac, because it would determine the scope and priority of bondholders' security interest in those funds. There is no reason why the trustee would be incapable of seeking this relief on behalf of all bondholders, as the Trust Agreement requires.

10.     Finally, FGIC's Joinder [ECF No. 7546] in Ambac's Motion is immaterial because the Trust Agreement states that "no one *or more* Holders of the Bonds hereby secured shall have any right in any manner whatever by his *or their* action to affect, disturb, or prejudice the security of this Agreement, or to enforce any right hereunder." (Ex. A § 705.) Even if Ambac and FGIC together held "a majority in principal amount of the Bonds Outstanding," they could still act only through the trustee. (*Id*. § 704.) As Judge Gonzalez held in *Enron*—where every holder under the credit agreement had sued the debtor, including the bank that was the collateral agent (but had brought suit in its individual capacity and not as collateral agent):

> As previously noted, ordinarily, the rights, duties and obligations of parties to a contract are dictated by the terms of their agreement. While the joinder of most, or even all of the members, of the Bank Group could result in the elimination of inter-creditor conflict, the happenstance of that event does not impact on the terms of the Agreement as negotiated by the parties. Indeed, if the parties desired such a result, they could have negotiated to allow the individual members of the Bank Group to sue individually if all members joined in the lawsuit or even if a majority joined in any such suit. Instead, pursuant to the terms of the Flagstaff Agreement, the desire of a majority of the members of the Bank Group—which majority was defined as the Required Lenders—to enforce compliance with the agreements could only be implemented by Chase, as Collateral Agent, after written demand was made upon Chase, as Collateral Agent, by the Required Lenders.

*Enron*, 302 B.R. at 477. This logic applies fully here, and the Trust Agreement's no-action clause therefore requires the denial of Ambac's Motion.

6

## **RESERVATION OF RIGHTS**

11.     The Oversight Board asserts that the Motion should also be denied because the Oversight Board's powers under Title II of PROMESA permit it to wipe away PRIFA's substantive ability to receive funds or be appropriated funds under Puerto Rico law.  AAFAF does not agree with this sweeping assertion and reserves all rights with respect to the limits of the Oversight Board's budgeting powers.  Moreover, given how many reasons exist to deny the relief sought in the Motion, AAFAF requests the Court not address that argument in this context.

*[Remainder of page intentionally left blank.]*

Dated:  July 3, 2019
      San Juan, Puerto Rico

Respectfully submitted,

/s/ Peter Friedman _____      /s/ Luis C. Marini-Biaggi___

John J. Rapisardi                        Luis C. Marini-Biaggi
Suzzanne S. Uhland                USDC No. 222301
(Admitted Pro Hac Vice)          Email: lmarini@mpmlawpr.com
**O'MELVENY & MYERS LLP**
7 Times Square
New York, New York 10036      Carolina Velaz-Rivero
Tel:   (212) 326-2000              USDC No. 300913
Fax:  (212) 326-2061              E:mail: cvelaz@mpmlawpr.com

-and-

Peter Friedman                        **MARINI PIETRANTONI MUÑIZ LLC**
(Admitted Pro Hac Vice)          250 Ponce de León Ave.
1625 Eye Street, NW              Suite 900
Washington, D.C. 20006         San Juan, Puerto Rico 00918
Tel:  (202) 383-5300              Tel: (787) 705-2171
Fax: (202) 383-5414              Fax: (787) 936-7494

Attorneys for the Puerto Rico Fiscal    Co-attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory Authority  Agency and Financial Advisory Authority