Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 1 of 89

1

1                        UNITED STATES BANKRUPTCY COURT

2                          DISTRICT OF PUERTO RICO

3
     In Re:                         )        Docket No. 3:17-BK-3283(LTS)
4                                   )
                                    )        Title III
5    The Financial Oversight and   )
     Management Board for           )
6    Puerto Rico,                   )        (Jointly Administered)
                                    )
7    *as representative of*         )
                                    )
8    The Commonwealth of            )
     Puerto Rico, *et al.*,         )        November 7, 2018
9                                   )
                   Debtors.         )
10
     _____
11
     In Re:                         )        Docket No. 3:17-BK-4780(LTS)
12                                  )
                                    )        (Jointly Administered)
13   The Financial Oversight and   )
     Management Board for           )
14   Puerto Rico,                   )
                                    )
15   *as representative of*         )
                                    )
16   Puerto Rico Electric           )
     Power Authority,               )
17                                  )
                   Debtor.          )
18
     _____
19

20

21

22

23

24

25

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 2 of 89

2

```
_____

In Re:                        )     Docket No. 3:17-BK-3567(LTS)
                              )
                              )     (Jointly Administered)
The Financial Oversight and  )
Management Board for          )
Puerto Rico,                  )
                              )
as representative of          )
                              )
Puerto Rico Highways          )
and Transportation            )
Authority,                    )
                              )
                Debtor.       )

_____

                        OMNIBUS HEARING

   BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

                 UNITED STATES DISTRICT COURT JUDGE

_____


APPEARANCES:

For The Commonwealth
of Puerto Rico, et al.:  Mr. Martin Bienenstock, PHV
                         Mr. Brian Rosen, PHV
                             Appearing in New York
                         Mr. Hermann Bauer, Esq.

For the U.S. Trustee
Region 21:               Ms. Monsita Lecaroz Arribas, AUST

For Official Committee
of Unsecured Creditors:  Mr. Luc Despins, PHV
                         Mr. Juan Casillas Ayala, Esq.

APPEARANCES, Continued:

For U.S. Bank National
Association:             Mr. Clark T. Whitmore, PHV
                         Mr. John T. Duffey, PHV
```

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 3 of 89

3

```
 1  For Puerto Rico Fiscal
    Agency and Financial
 2  Advisory Authority:        Ms. Suzzanne Uhland, PHV
                               Mr. Luis Marini Biaggi, Esq.
 3                             Ms. Carolina Velaz Rivero, Esq.
    For Puerto Rico
 4  Electric Power
    Authority:                 Mr. Kevin Finger, PHV
 5                             Mr. Nathan Haynes, PHV
                               Ms. Katiuska Bolaños Lugo, Esq.
 6
    For Pan American
 7  Grain Company, Inc.:       Ms. Maria Figueroa y Morgade, Esq.

 8  For Cooperative de
    Ahorro y Credito
 9  Vegabajeña:                Mr. Carlos Quilichini Paz, Esq.

10  Fee Examiner:              Mr. Brady Williamson, PHV
                               Ms. Katherine Stadler, PHV
11

12

13

14

15

16

17

18

19

20

21
    Proceedings recorded by stenography.  Transcript produced by
22  CAT.

23

24

25
```

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 4 of 89

4

```
 1                           I N D E X

 2    WITNESSES:                                      PAGE

 3          None offered.

 4

 5    EXHIBITS:

 6          None offered.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 5 of 89

5

```
 1                                    San Juan, Puerto Rico

 2                                    November 7, 2018

 3                                    At or about 9:45 AM

 4                        *     *     *

 5          THE COURT:  Good morning and welcome to counsel,

 6  parties in interest, members of the public and the press here

 7  in San Juan, those observing here and in New York and the

 8  telephonic participants.  As always, it is good to be here in

 9  San Juan.

10          A brief reminder.  The rules regarding devices in the

11  courtroom, not to be used for communication or recording,

12  apply to these and all proceedings, both here and in New York.

13  And I'm grateful for your continued compliance with those

14  principles.

15          I would now call upon counsel for the Oversight Board

16  to begin the status report.  Mr. Bienenstock.

17          MR. BIENENSTOCK:   Thank you.  Good morning, Judge

18  Swain.  Martin Bienenstock of Proskauer Rose for the Oversight

19  Board.

20          Your Honor's request for a status report identified a

21  few issues, the first of which was a report about the

22  evaluation of recent disclosures of McKinsey Security

23  Holdings.  Your Honor, my firm, Proskauer, represents McKinsey

24  in various matters, so the Oversight Board asked another of

25  its legal advisors, the Luskin & Stern firm, to look into
```

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 6 of 89

6

1   this.  And Michael Luskin, who is in New York, I can see him

2   now on the video, is prepared to respond to that portion of

3   the status report, if that's okay.

4                THE COURT:  Thank you.  That's much appreciated.

5                And so, Mr. Luskin, good morning.

6                I'm not able to hear Mr. Luskin, so we'll need to

7   have the sound checked.  Let's hold on for a minute.

8                MR. LUSKIN:  Can you hear me?  I'm at the lectern

9   mic.

10                THE COURT:  We're hearing you now.  Thank you.  Good

11   morning.

12                MR. LUSKIN:  Okay.  Good morning, Your Honor, and

13   thank you for allowing me to appear by video.  This is my

14   first in person appearance in these proceedings and I'm happy

15   to be here.

16                I am here, as Mr. Bienenstock referred, to confirm my

17   retention by the Board, my very recent retention by the Board

18   on this particular matter, which is to investigate the

19   consequences, the facts and implications of recent disclosures

20   concerning McKinsey and its work for the Board and its

21   holdings with Puerto Rico public debt.

22                As I said, this is at the very beginning of my

23   investigation.  It will culminate in a public report, not only

24   on the factual findings, but also the Board's own procedures

25   and policies concerning (inaudible) --

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 7 of 89

7

1            THE COURT:  You'll need to speak directly into the

2    microphone.  You're starting to fade.

3            Did you say that your work will culminate in a public

4    report?

5            MR. LUSKIN:  Yes, I did, Your Honor.

6            The Board has made very clear that this is to be a

7    transparent proceeding, that the report will be public.  I

8    expect it will take a couple of months at least, but it will

9    culminate in a public report.

10           So I have no substance to report now.  I really just

11   wanted to introduce myself and to assure the Court and parties

12   in interest that this matter is being taken, of course, very

13   seriously by the Board, and we're doing what I think the Court

14   and parties would expect us to be doing.

15           THE COURT:  Thank you.

16           MR. LUSKIN:  Unless the Court has any questions, I'm

17   happy to yield the microphone back to Mr. Bienenstock to

18   continue the status report.

19           THE COURT:  I just -- you may have mentioned this,

20   but do you have a particular time frame and prospect for the

21   work?

22           MR. LUSKIN:  I'm currently anticipating it will take

23   a couple of months, a few months.  I'd really like to get this

24   done by year end, if at all possible.

25           THE COURT:  Thank you, Mr. Luskin.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 8 of 89

8

1        MR. LUSKIN:  Thank you, Your Honor.

2        MR. BIENENSTOCK:   Thank you, Your Honor.

3        In terms of the status report about the anticipated

4    timetables for the proposal of adjustment, plans of adjustment

5    of Title VI, Title VI Qualifying Modifications, I can report

6    as follows:  As the Court knows better than anyone else,

7    yesterday the order was entered approving the Qualifying

8    Modification for GDB, which was a major step forward, handles

9    about four to five billion dollars of the 74 billion

10   approximate amount of bond debt that we're trying to

11   restructure.

12       The COFINA deal that resulted from the process Your

13   Honor kicked off with the approval of a stipulation way back

14   towards the beginning of the case led to a proposed plan of

15   adjustment that has already been filed.  And the proposed

16   disclosure statement is to be heard, I believe, in less than

17   the next two weeks.  I think it's --

18       THE COURT:  November 20th.

19       MR. BIENENSTOCK:  Oh, November 20.

20       THE COURT:  Yes.

21       MR. BIENENSTOCK:   And if that is approved, and

22   nothing goes wrong, including tinkering with the deal through

23   legislation, et cetera, we hope to -- we hope that that will

24   be confirmed in January of 2019.

25       The next major matter -- they're all major matters,

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 9 of 89

9

1   but the next major debt restructuring that I can report on is

2   PREPA.  PREPA, as Your Honor knows, has approximately eight to

3   nine billion dollars of bond debt and several billion more of

4   other types of financial debt and other debt.

5            The first two segments of my report on PREPA are

6   based on information that we've received from PREPA's

7   representatives.  In terms of its cash position, as of

8   November 2, operating cash balances were approximately 327

9   million dollars.  Because the Commonwealth debtor in

10  possession loan facility requires the cash on hand above 300

11  million dollars be paid to the Commonwealth on account of the

12  loan, a payment of 27 million dollars was made on November 2,

13  2018, leaving a debtor in possession loan balance of

14  approximately 147 million dollars as of that date.

15           PREPA's operational cash receipts are currently

16  sufficient to serve as expenditures for operations.  During

17  the month of October, average weekly cash collections from

18  customers were approximately 65 million dollars.  PREPA,

19  therefore, should not require additional financing for

20  operations in the near term.  I want to emphasize that's

21  operations.

22           As the Court knows, because of the hurricane, there

23  was lots of repair and replacement to do, and some of it -- of

24  course we get significant amounts from the Federal Government,

25  but that doesn't cover everything.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 10 of 89

10

1          THE COURT:  Have the Federal Government dollars

2    actually been coming in?  I understand that there are some

3    respects in which federal money has been approved but not

4    actually disbursed.

5          MR. BIENENSTOCK:  I'm not aware of that money coming

6    in, but the Federal Government has obviously expended major

7    funds for repair and replacement, which are funds that PREPA

8    would otherwise have to expend.  So in that sense, we've been

9    the beneficiary of very substantial federal funds for the last

10   year.

11         In terms of PREPA operations, PREPA is moving forward

12   with reviewing responses to several requests for proposals for

13   generation -- for generation for different parts of the

14   island.

15         As Your Honor knows, the -- when we speak about the

16   restructuring of PREPA, unlike the restructuring of some of

17   the other entities, we're really talking about two

18   restructurings proceeding simultaneously.  One is for the

19   debt.  The other is to transform the method of generation from

20   fossil fuels to other fuels that are both less expensive and

21   cleaner.  And it's somewhat tricky to coordinate the two, but

22   that's what's happening.

23         As a practical matter, we believe investors will want

24   to know what amount of debt they need to prepare to carry

25   going forward, or that will be carried somehow going forward.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 11 of 89

11

1   And we are anxious to deal with the debt in any event, so both

2   processes are proceeding simultaneously.

3        PREPA continues to run the generation fleet as

4   economically as possible, while keeping in mind the

5   overarching goal of maintaining grid resiliency.  PREPA is

6   actively pursuing different alternatives for generation

7   resources or a conversion to cleaner burning fuels, such as

8   liquid natural gas.

9        Power has been restored to over 99 percent of the

10  customers on the island.  Current average weekly generation

11  delivered to the power grid is approximately 93 percent of

12  2016 levels.  Approximately 96 percent of the island's 342

13  substations, and 96 percent of the 56 transmission centers are

14  energized.  Approximately 88 percent of 103 large transmission

15  lines are fully in service.

16        In respect of the debt restructuring aspect of PREPA,

17  Your Honor, PREPA, the Oversight Board and AAFAF entered into

18  a preliminary Restructuring Support Agreement, RSA, with an Ad

19  Hoc Group of uninsured bondholders in July 2018, which has

20  been extended several times and remains in place to allow the

21  parties to complete negotiations on a more comprehensive RSA,

22  for which we expect to seek Court approval when it's done.

23        The consenting holders hold a significant amount of

24  the outstanding approximate 8.8 billion of PREPA bond debt.

25  We will be meeting this week, and in fact, I believe it's in a

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 12 of 89

12

1   few hours in New York, with the Ad Hoc Group and

2   significantly, one of the monoline insurers that filed the

3   receiver motion to continue working through certain provisions

4   of a definitive agreement.

5        So we're trying to expand the group from the

6   uninsured bondholders that we did the initial RSA with to

7   include the monolines that obviously they are the insurers of

8   the insured group of bonds, and they have significant

9   exposures and therefore, are significant to any debt

10   restructuring.

11        We have also reviewed our current proposal with other

12   monoline insurers that are party to the receiver motion.  So

13   there's communication and progress with both the insured and

14   uninsured bonds.

15        It's hard to predict timing, but we certainly hope,

16   and we know the bondholders hope, that we're talking about

17   something that will culminate in at least a request for this

18   Court's approval of the RSA in a matter of months when we

19   might have a final plan of adjustment.  We want it as soon as

20   possible, but it's really hard to -- with any reliability, to

21   give Your Honor a sense of when that might be possible.

22        As far as the transformation process, the process to

23   transform the electric sector is proceeding on schedule in

24   accordance with the Fiscal Plan.

25        The following is a summary of the recent and updated

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 13 of 89

13

1    milestones from the Fiscal Plan.  The Public-Private

2    Partnership, P3 Authority completed a market sounding process

3    in mid June, which confirmed significant industry interest in

4    a concession transaction for the private operation of the

5    transmission and distribution system.

6         The P3 Authority posted a Request for Qualifications,

7    an RFQ, on October 31 asking interested parties to submit

8    their qualifications for operating and improving the

9    transmission and distribution system, with responses due on

10   December 5, 2018.  The RFQ has been filed under an informative

11   motion with this Court.

12        The P3 Authority will then issue a request for

13   proposal seeking bids from the qualified candidates.  And

14   supporting legislation and the integrated resource plan are

15   also in process and are expected to be completed in January.

16        So, Your Honor, we're -- as the Court can tell,

17   simultaneous progress is being made, both on the physical

18   transformation and on the debt restructuring.  And it is so

19   critical to reenergize growth on the island -- the cost of

20   power is a fundamental factor in future growth -- that it's in

21   everyone's interest, the government's, the people's and the

22   creditors' to get this done as quickly as possible, and that's

23   what we're trying to do.

24        THE COURT:  And the qualifications and proposals that

25   are being reviewed in this current P3 related process, that's

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 14 of 89

14

1    for an entity that will move and make more concrete the

2    visioning for the transformation?  Is that the phase or --

3            MR. BIENENSTOCK:  Well, they will propose exactly how

4    they would like to generate power, what type of fuel they will

5    use, and the economic terms on which they're willing to do

6    that and how much they're willing to pay for the right to do

7    that.

8            THE COURT:  Thank you.

9            MR. BIENENSTOCK:  Your Honor, the other major debt

10   restructurings, some of which can be handled independently and

11   some which have interrelationships, are basically the

12   Commonwealth, HTA, PRASA, PBA, UPR and others.  And some of

13   these, most likely UPR, but not definitely, are more prone to

14   a Title VI than a Title III.

15           What I can tell you about these is not nearly as

16   specific as what I could advise the Court about PREPA, but I

17   can say that in every single one of these situations, there

18   have been and are ongoing negotiations with either all or a

19   subset of the creditors of each entity.

20           As Your Honor knows, to provide an example of the

21   interconnectedness, there's a dispute between creditors of the

22   Commonwealth on the one hand and creditors of HTA on the other

23   as to whether the so-called clawback revenues can and should

24   be clawed back from HTA to the Commonwealth and on what

25   conditions.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 15 of 89

15

1          That might create the need to propose or confirm both

2     plans at once for HTA and the Commonwealth or not.  It's not

3     necessarily critical.  But negotiations are ongoing with

4     keeping those things in mind.

5          In some cases, things like toll hikes or other

6     increased rates have to be part of the discussion, and the

7     government is involved in that.  And I can, from personal

8     knowledge, say that every day is spent working on these

9     things.  But again, to give the Court a timetable would be

10    really more guesswork than probabilistic.

11         I will say that if at all possible, we want to pull

12    together restructurings that could be heard in some form or

13    final form by the Court by this summer.  That may or may not

14    be possible with all of them, but certainly with some of them.

15              THE COURT:  That is good news.

16              MR. BIENENSTOCK:  Thank you, Your Honor.

17              THE COURT:  Thank you, Mr. Bienenstock.

18              MR. BIENENSTOCK:  The next item on the agenda are the

19    Fee Examiner report and applications, so I'll turn things over

20    to Mr. Williamson.

21              THE COURT:  Thank you, Mr. Bienenstock.

22              MR. BIENENSTOCK:  Mr. Williamson's colleague, Your

23    Honor.

24              THE COURT:  Good morning, Ms. Stadler.

25              MS. STADLER:  Good morning, Judge.  Katherine Stadler

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 16 of 89

16

1    of Godfrey & Kahn on behalf of Brady Williamson, the Fee

2    Examiner, who is also here in person.

3           Judge, we filed our report on the third interim fee

4    period applications last week recommending 28 applications for

5    the Court's approval.  Since the filing of that report, one

6    additional application, that of Bennazar, Garcia & Milian, has

7    been resolved.  That application is on your agenda at item 11

8    on the deferred list.

9           So we will be moving the Bennazar application to the

10   list of resolved applications that was attached to our report

11   and submitting a Proposed Order, with Your Honor's permission,

12   that will include all of the originally recommended

13   applications, plus that one additional.  And we will do that

14   as soon as we have a ruling and instructions from the Court on

15   our recommendations.

16          As you know, our report in this period addressed the

17   McKinsey Consulting applications, all three of the interim

18   pending fee period applications.  So we successfully worked

19   through a significant backlog there.

20          THE COURT:  Yes.

21          MS. STADLER:  We tried to carry out Your Honor's

22   instructions in previous hearings and discussions to come up

23   with a methodology for evaluating the reasonableness of the

24   McKinsey fees, not withstanding the nature of their

25   timekeeping or nontimekeeping, as the case may be.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 17 of 89

17

1          As you know, they are retained on a flat fee that is

2    based on a GSA contract price that the government has

3    negotiated.  While the Oversight Board is not technically an

4    entitled user of that GSA price schedule, that pricing has

5    been used as the foundation of the pricing that McKinsey uses.

6    And we've gone through that for you in our report and I'm

7    happy to answer any questions you have about that.

8          The other suggestion that Your Honor made that we

9    took to heart was to try, as we might, to come up with some

10   estimation of time being spent and number of timekeepers.  And

11   so the efforts described in the report resulted in the Exhibit

12   B to the report, which is very crude, and I almost feel the

13   need to apologize to McKinsey because I'm quite sure it

14   understates the amount of work and person hours that are put

15   into these projects on a weekly basis.

16         But not withstanding that, even using this very

17   conservative estimate of hours expended, we've calculated an

18   average blended hourly rate, which is generally consistent

19   with other consultants working on these cases and in the

20   market in general.

21         So with those observations, the Fee Examiner is

22   comfortable now recommending to the Court approval of the

23   McKinsey applications as they are filed based on the reasoning

24   laid out in our report.  And I'm happy to answer any questions

25   you may have on that.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 18 of 89

18

1    THE COURT:  I would just comment that I commend and

2  very much appreciate the fact that you took my request and

3  guidance to heart, and the way in which you have laid out in

4  the report the nature of the investigations and the benchmarks

5  that you have used to make the evaluation that led you to

6  support approval of the fees, and the insight that you have

7  given us into the extent and nature of the work that is being

8  performed for those fees.  So thank you.

9    MS. STADLER:  You're welcome, Your Honor.

10    If Your Honor has no other questions, I think a

11  couple of the informative motions indicated that some speakers

12  want to address fee matters.  So the Fee Examiner has asked

13  that those people speak first, and then he has a few wrap-up

14  comments he would like to make.

15    THE COURT:  I do have a couple of questions --

16    MS. STADLER:  Okay.

17    THE COURT:  -- before that.

18    MS. STADLER:  Yes.

19    THE COURT:  The report indicated some discomfort in

20  ongoing discussions with fee increases --

21    MS. STADLER:  Yes.

22    THE COURT:  -- by service providers.

23    MS. STADLER:  Yes.

24    THE COURT:  Are those across the board, firm hikes in

25  rates?  Are those seniority, promotion related?  Can you give

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 19 of 89

19

1   me a little bit more color as to what those are?

2          MS. STADLER:  Yes, they are both and they are not

3   uniform.  As you know, all of the professionals have different

4   engagement agreements with their respective clients, and some

5   of those address issues.

6          For example, the Oversight Board counsel has a flat

7   hourly rate which does not provide for rate increases at all.

8   Others have contracts that explicitly allow them, and most

9   have contracts that don't address whether they are appropriate

10  or not, other than to say we will charge, you know, our

11  pricing based on the following discount model.  But the issue

12  of rate increases and adjustments isn't explicitly addressed

13  in most of the engagement agreements of the professionals that

14  we are reviewing.

15         The increases that we have seen encompasses both of

16  those categories that Your Honor just described.  Seniority

17  increases, which apply almost exclusively to associates in

18  their first ten years of practice, those tend to be although

19  aren't uniformly imposed in the fall on the employment

20  anniversaries of many associates.  And then there are also

21  market adjustments that many firms implement, tending to be in

22  connection with their fiscal year ends, many of which, but not

23  all of which are also at the end of the calendar year.

24         So with this fee period falling fully in 2018 for the

25  first time, we've really seen the impact of the rate increases

Case:17-03283-LTS  Doc#:7829-2  Filed:07/03/19  Entered:07/03/19 15:43:41  Desc:
Exhibit B - Transcript of November 7  2018 Omnibus Hearing  Page 20 of 89

20

1    that might have happened last fall and in January for many

2    firms.  And I think as the report previews for you, the Fee

3    Examiner is concerned not so much about the impact so far,

4    although that is calculated for you and is not insignificant,

5    but the potential for exponential --

6             THE COURT:  Yes.

7             MS. STADLER:  -- growth and the impact of those rate

8    increases over time, given what we know about the expected

9    timeline of the debt restructuring processes that

10   Mr. Bienenstock just addressed.

11            And so Mr. Williamson, and he'll address this

12   directly I'm sure, but he feels strongly that much as we did

13   with the presumptive standards that we talked about last time,

14   that he would like to propose and put into place presumptive

15   caps on rate increases so that everyone's expectations are

16   clear and so that hopefully we can minimize contested issues

17   over rate increases.

18            At the moment, many of the applications that are on

19   the deferred list are on the deferred list because they have

20   that issue.  And we're working very hard with the

21   professionals, and the professionals are working very hard

22   with us to work through those issues and try to bring those to

23   a consensual resolution for the fees that have already been

24   charged.

25            But going forward, Mr. Williamson feels very strongly

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 21 of 89

21

1    that in a case like this, there are some limits on rate

2    increases that need to be imposed, and that without explicitly

3    stating them, it creates, you know, a disincentive for people

4    to exercise discipline in the imposition of those rate

5    increases.

6            So much as we have in other areas, he intends to

7    articulate either through a motion or objection, should that

8    be necessary, hopefully through another advisory motion or

9    motion for presumptive standards, we would bring back in

10   December a proposal for a prospective treatment of rate

11   increases that would cover both categories, both the market

12   annual adjustments and the seniority adjustments, which

13   probably will require slightly different treatment to each of

14   them.

15           THE COURT:  Well, I am glad to hear that

16   Mr. Williamson is engaging these issues directly, and I will

17   look forward to the results of the current negotiated work and

18   also to his insight and advice as to appropriate structural

19   measures to put in place, because we all know why we're here.

20           We all know how big the job is and how important it

21   is for resources to be maximized for efficient, economical and

22   productive work in creating a platform on which Puerto Rico

23   can go forward with resources that can be used for the

24   island's growth.

25           So thank you, and thanks to all of the professionals

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 22 of 89

22

1    who are cooperating in this process.

2          MS. STADLER:  Thank you, Judge.

3          THE COURT:  Thank you.

4          And so who would like to be heard next on fee issues?

5    I have the names of a couple of people who are in New York.

6    Is there anyone in this courtroom?  All right.

7          We'll turn to -- I understand that -- was there

8    someone in New York who wished to be heard on the fee-related

9    issues?  No.  All right.

10          Then, Mr. Williamson.  Thank you.  Good morning.

11          MR. WILLIAMSON:  Thank you.  Good morning, Your

12    Honor.  Brady Williamson, Godfrey & Kahn.

13          Let me start with a generic but quite important

14    observation, which is this is the third report we've given the

15    Court.  And I think at each juncture, we have commented on the

16    cooperative, collegial approach for which much of the credit

17    goes to the professionals themselves.

18          Now, I know the Court expects that.  The Court

19    expects that out of the professionals.  The Court expects that

20    of us.  But it's noteworthy because as we're now finishing the

21    review of the third period, the issues, quite frankly, are

22    getting more difficult, which means the negotiations take a

23    little longer and the negotiations themselves get more

24    difficult.

25          But with respect to the communication, the collegial

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 23 of 89

23

1    nature of the discussions, I think the Court can be satisfied

2    that if there are objections, if there are problems, it will

3    not be for want of trying to avoid them.

4           In about two weeks, Your Honor, the professionals

5    will file their fourth set of fee applications, which then

6    gets us into the second year of the review process.  And it's

7    important, I think, to note that we view our challenges as

8    both retrospective, that is, to look at the fee applications,

9    which are always two or three months behind, or the process by

10   definition is.  But as the Court could tell from Ms. Stadler's

11   remarks and the report, we're also trying, with the

12   cooperation of the professionals, to be prospective, so that

13   we're not constantly saying, oh, you should have done this,

14   you should have done that.

15          And I think as Ms. Stadler said, the December

16   hearing, I think, will feature at least two points that we'll

17   either bring as a motion or, if necessary, in the form of an

18   objection.  But again, our goal is not just hindsight, but

19   hopefully foresight.

20          And as the Court said, while massive resources are

21   needed here in the Commonwealth, they also need to be massive

22   resources applied efficiently.  Thank you.

23          THE COURT:  Thank you.

24          Mr. Bienenstock.

25          MR. BIENENSTOCK:  Your Honor, thank you.  I just

Case:17-03283-LTS  Doc#:7829-2  Filed:07/03/19  Entered:07/03/19 15:43:41  Desc:
Exhibit B - Transcript of November 7  2018 Omnibus Hearing  Page 24 of 89

24

1    wanted to add one new item that pertains to the discussion

2    that just occurred.  It has nothing to do with what

3    Mr. Williamson wants to do or to contradict anything that's

4    been said, but it's simply new information that's going to

5    likely lead to changes that the Court might as well know about

6    now rather than be surprised later.

7           There is legislation that we understand has a

8    likelihood to be enacted in Puerto Rico that will for the

9    first time single out advisors in these cases and tax them,

10   creating -- starting with a withholding tax of 29 percent for

11   time spent working on the case outside of Puerto Rico.  If

12   that happens, I know from my own firm and I suspect for other

13   similar firms both in and outside the legal industry, no firm

14   can afford to provide the services for 29 percent less than

15   it's currently providing.

16          So there will probably be adjustments to

17   professionals' fee arrangements that will obviously be in the

18   applications that the Fee Examiner will be looking at, but

19   they will be unavoidable if this legislation is enacted.

20          THE COURT:  Are there hearings being conducted at

21   which publicly and formally professionals who will be affected

22   will be able to make this point to the legislators?

23          MR. BIENENSTOCK:  To my knowledge, no.  We're just

24   being told that this is what's happening.  And the sad part

25   about it is it likely will not result in any net benefit to

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 25 of 89

25

1   the revenues of the government, because the tax will be offset

2   by increased rates to cover the tax.

3           Just to give Your Honor a sense of the perspective,

4   at the outset of this, I think we were all aware that there

5   was something like a 1.5 percent tax on time spent in Puerto

6   Rico.  And we all knew that when we made our fee proposals.

7   But there was never anything like a 29 percent tax on time

8   spent outside Puerto Rico, which is the bulk of the time for

9   most of the professionals.

10          THE COURT:  Yes.  And when you say withholding --

11  although you say withholding, I think I'm hearing you that

12  this isn't just a timing of money issue.  This is a

13  withholding that is understood to be commensurate with

14  intended actual tax collection that under current federal and

15  out-of-state tax principles would not offset other taxes, but

16  would be a net increase, or a net decrease in the revenues?

17          MR. BIENENSTOCK:  Well, Your Honor, that's exactly

18  what we're studying before we, and I think the other advisors

19  and professionals, request any type of amendments.  If it's a

20  dollar-for-dollar credit against other taxes, it may just be a

21  timing issue and have very little impact.  But if it's not

22  just a credit, and I don't think it is, then it's basically a

23  reduction, a very material reduction of what everyone's -- but

24  we will know exactly what it is before we -- at least in my

25  firm's case, but I'm sure in everyone's case, before we

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 26 of 89

26

1    propose or suggest any amendments to any fee arrangements.

2              THE COURT:  And are you able to -- are you working

3    with AAFAF's counsel to be able to communicate to government

4    interests the complexities of the concerns here?

5              MR. BIENENSTOCK:  Your Honor, yesterday I was

6    surprised when I raised it that I was giving them information.

7              THE COURT:  Better late than never.

8              MR. BIENENSTOCK:  Which is rare.  Usually they know

9    before I know.  And so yes, the answer to Your Honor is yes,

10   we're discussing it with AAFAF.

11             THE COURT:  Thank you.

12             MR. BIENENSTOCK:  Yes.

13             THE COURT:  That is a matter of great concern if at

14   the end of the day, there are transaction costs and very real

15   out-of-pocket costs in terms of firms seeking to be grossed up

16   for the effect of the tax.

17             So I know that professionals have a deep and personal

18   interest in this, and I hope that there will be effective

19   discussion so that at the end of the day, whatever happens is

20   truly for the benefit of the Commonwealth and doesn't impede

21   these proceedings.

22             Now, I had been given notes that a couple of people

23   might have wanted to speak in relation to the COFINA status

24   from New York, and so I didn't call for that in connection

25   with the status reports, and I apologize for any oversight in

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 27 of 89

27

1   that regard.

2           So is there anyone in New York who -- here's someone

3   coming to the podium now.  Thank you.

4           MR. ROSEN:  Thank you, Your Honor.  This is Brian

5   Rosen of Proskauer Rose.  I just wanted to supplement what

6   Mr. Bienenstock said.

7           Your Honor, things are moving very well with respect

8   to the COFINA Plan of Adjustment.  And he is correct and you

9   are correct when you were referring to the dates for the

10  upcoming hearings.

11          The other item, though, I wanted to bring to the

12  Court's attention was that on October 18, the Unsecured

13  Creditors' Committee slash Commonwealth agent had filed a

14  motion for a Scheduling Order, and it was in connection with

15  what was referred to as a motion to enforce that they were

16  planning to file by a date certain.  After that was filed,

17  Your Honor, there was a period of negotiation between the

18  Oversight Board, the Unsecured Committee slash agent, and also

19  the COFINA agent.

20          And we are happy to report that on Monday, under the

21  cover of an informative motion filed by the Unsecured

22  Creditors' Committee, was attached a stipulation which

23  compromised and settled the motion to enforce, which actually

24  was not even filed.

25          It provides for that matter to be essentially held in

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 28 of 89

28

1  abeyance pending events that might or might not occur between

2  now and the hearing on January 16 in connection with the

3  approval of a 9019 motion and the confirmation of the COFINA

4  Plan of Adjustment.

5        Specifically, Your Honor, there is a provision in

6  there with respect to a supplemental certified fiscal plan

7  being filed for the Commonwealth.  And if, in fact, that

8  doesn't occur, then the motion to enforce will not be filed.

9  And also, the Unsecured Committee slash Commonwealth agent

10  will not otherwise object to the confirmation of the plan or

11  the 9019 motion for approval in the Commonwealth case, Your

12  Honor.

13        I don't know if the Court had the opportunity to

14  review that informative motion or the stipulation at this

15  point, but I wanted to bring it to the Court's attention.

16        THE COURT:  I am in the process of reviewing it.

17  It's something like a 27-page stipulation with many details.

18  So we are in the process of reviewing it.

19        And I take it the request, although it was filed

20  under an informative motion as opposed to a notice of

21  presentment or anything, the request and expectation is that

22  the Court enter it sooner rather than later since one of the

23  provisions is that if it's not entered soon, a November 16

24  deadline comes back?

25        MR. ROSEN:  That is correct, Your Honor.  The

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 29 of 89

29

1    stipulation provided for a so Ordered line for the Court.  But

2    yes, it would otherwise require the Creditors' Committee slash

3    agent to file some pleadings by next week.

4              THE COURT:  All right.  So as I say, we are in the

5    process of reviewing it to ensure that I understand what I am

6    being asked to sign.  And if anybody has any major,

7    substantive issues with it, they'd better let -- file an

8    informative motion and let us all know sooner rather than

9    later, because it is my goal to get that in place, as long as

10   I don't have problems with it, sooner rather than later.

11             MR. ROSEN:  Thank you very much, Your Honor.

12             THE COURT:  Thank you.

13        There was someone from Willkie Farr in New York?  Did

14   anyone else want to be heard from New York?

15             MR. ROSEN:  Your Honor, it's Brian Rosen again.

16   Mr. Forman is here, but he said in as much as there's nothing

17   to address, he has nothing further to say.

18             THE COURT:  Thank you very much.

19        And I neglected before Ms. Stadler and Mr. Williamson

20   needed to leave to conclude the Fee Examiner portion by saying

21   that the Court approves the Fee Examiner's recommended actions

22   on the fee applications that are listed in the operative

23   schedule to the Fee Examiner's report, with the addition of

24   the formerly deferred item that Ms. Stadler referred to that

25   had been number 11 in the list of deferred items.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 30 of 89

30

1          And the Court expects that the Fee Examiner will

2    promptly be submitting a Proposed Order, and the Court does

3    intend to enter that Order.

4          And so the next item on the Agenda is the Debtors'

5    Motion to Establish the Omnibus Claims Objection Procedures,

6    which is ECF entry number 4052 in case 3283.

7          MR. ROSEN:  Your Honor, it's Brian Rosen again from

8    Proskauer Rose.

9          Your Honor, we filed this motion, excuse me, and it

10   entailed or it provided a connection within the notice period

11   of October 23.  We did not receive any objections to the

12   relief that was being requested in the motion.

13         Specifically, Your Honor, what we had asked to do in

14   there, in the proposed objection procedures, was really to

15   comply with Rule -- Bankruptcy Rule 3007, and essentially to

16   allow us to file Omnibus objections in amounts greater than

17   100.

18         Specifically, as the Court recalls, when I reported

19   previously, there are approximately 165,000 to 170,000 claims

20   that were filed in this case.  And as an example of this, in

21   connection with COFINA, there were between 3,500 and 4,000

22   claims filed.

23         Most of those, Your Honor, are multiples of the same

24   bond type of claims and really didn't need to be filed.  When

25   we distilled down what the number of claims actually might be

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 31 of 89

31

1    in COFINA, they number approximately ten.

2            So, Your Honor, it's obviously important for us to

3    try and remove as many of these claims as expeditiously as

4    possible, specifically in connection with solicitation for the

5    Plan of Adjustment that hopefully will begin by the end of

6    November.

7            So we are envisioning filing multiple Omnibus

8    objections, and we were looking to increase the number of

9    claims which might be included in an Omnibus objection from

10   the 100 to approximately 500.

11           As I said, Your Honor, these are multiples of bond

12   claims, and if we have the claim that's already been allowed,

13   or we will allow with respect to the Trustee, the Bank of New

14   York Mellon, there is no reason for the multiple claims to be

15   on the register.

16           Likewise, Your Honor, there are other claims in

17   COFINA that have nothing to do with COFINA.  And to the extent

18   that they are one-off claims and cannot be handled in a common

19   type of form of objection, we will file individual objections

20   to those claims.  And we envision there will be approximately

21   50 of those, Your Honor, all of which, though, are for no

22   liability save that they really relate to a different entity

23   or not any of the Title III debtors at all.

24           But specifically, Your Honor, in connection with this

25   Omnibus Procedures Motion, we did, upon consultation with the

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 32 of 89

32

1    Creditors' Committee, file an Amended Notice of Revised

2    Procedures.  Your Honor, we did that on October 31st.  And we

3    included with that a blackline copy of the Proposed Order, as

4    well as slight modifications to the objection procedures

5    themselves.

6         Specifically, Your Honor, we removed the possibility

7    that we could oppose any of these claims on a substantive

8    basis.  Rather, they were all nonsubstantive in nature.

9         We wanted to make sure that the notices were both in

10   Spanish and in English.  And we provided for the notice of

11   filing of reports with the Court when we do settle some of

12   these claims.  This would have been quite possibly the only

13   objection, had it been interposed, but as I indicated, Your

14   Honor, we were able to resolve this with the Creditors'

15   Committee, and that's why we filed the Amended Notice and the

16   Proposed Order.

17        Hopefully, Your Honor, that might allay any concerns

18   the Court might have with respect to this, and we ask the

19   Court to enter the revised Order that we filed under the

20   Amended Notice.

21        THE COURT:  The clarifications in the revised Order

22   are quite helpful.  I just have one question and one request,

23   I'll call it.

24        So the question is just to confirm that you

25   anticipate noticing up these large Omnibus objections in

Case:17-03283-LTS  Doc#:7829-2  Filed:07/03/19  Entered:07/03/19 15:43:41  Desc:
Exhibit B - Transcript of November 7  2018 Omnibus Hearing  Page 33 of 89

33

1    connection with scheduled Omnibus hearing dates; is that

2    correct?

3              MR. ROSEN:  Yes, Your Honor.

4              THE COURT:  All right.  And then the request is that

5    we move the reply deadline from two business days before the

6    Omnibus hearing date, which is a travel date for many of us,

7    to seven calendar days before the Omnibus hearing date.  Can

8    you live with that?

9              MR. ROSEN:  Absolutely, Your Honor.

10             THE COURT:  Thank you.

11             MR. ROSEN:  We'll make the modifications and if you

12   don't mind, we'll then submit a proposed final Order for the

13   Court's entry.

14             THE COURT:  I appreciate that very much.  Thank you,

15   Mr. Rosen.

16             And Mr. Despins is coming to the podium here.

17             MR. DESPINS:  Good morning, Your Honor.  Luc Despins

18   with Paul Hastings on behalf of the Committee.

19             We're happy that we're able to resolve the issues

20   regarding this procedure.  I just want to mention because it's

21   important that these are, I would say, the easy claims to deal

22   with.  The main event is really dealing with all the other

23   claims.

24             And we are working with the Oversight Board on coming

25   to court with an ADR procedure that would be expedited, that

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 34 of 89

34

1   would be streamlined, because as the creditors on my committee

2   will often say, even a plan of adjustment, it would be adopted

3   tomorrow, confirmed tomorrow that would say we get X cents on

4   the dollar, unless these cents are actually given because the

5   claims have been resolved is meaningless, and meaningless also

6   for the economy of Puerto Rico.

7        They need to get those dollars, to spend those

8   dollars.  And so, therefore, that process is complex and it's

9   very important.  We're working with the Oversight Board on

10  that, hopefully coming back to the Court soon on that.

11       Thank you, Your Honor.

12       THE COURT:  Thank you.  Do you have a sense of a time

13  frame?  Yes, I did notice when this was filed that it was

14  the --

15       MR. DESPINS:  Easy claims.

16       THE COURT:  The easy ones, yes.  And so I've been

17  waiting to hear what structure will be proposed for the ones

18  that are more complicated.

19       MR. DESPINS:  Well --

20       MR. ROSEN:  Your Honor, if I could perhaps address

21  that?

22       THE COURT:  Yes.

23       MR. ROSEN:  Yes.  We have been working with the

24  Unsecured Committee with respect to global procedures, and

25  we've been working with Ms. Uhland, who has been sitting there

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 35 of 89

35

1   on behalf of AAFAF, to come up with a concept that works for

2   everyone.

3           Obviously we had hoped to do this in the context of a

4   plan of adjustment, but as Mr. Bienenstock indicated, that is

5   not going to be as timely as we hoped it might be.  So we are

6   hoping to finalize these procedures.  If we can get it done

7   and filed before year end, that is our goal, Your Honor.  We

8   are actively engaged in that dialogue.

9           It will set up a process that will extremely

10  streamline not only the time frame in connection with hearing

11  these matters and bringing them on among the parties, but also

12  the amount of information that might otherwise be required for

13  the person who will be hearing and determining the allowance

14  of these claims so that it would be relatively small paperwork

15  and something easy for the Court or such other person to

16  ascertain.

17          THE COURT:  Thank you.  And so we might expect to

18  have something in connection with the January Omni or the Omni

19  after that?

20          MR. ROSEN:  I would hope it would be considered in

21  connection with January, Your Honor.

22          THE COURT:  Thank you very much.

23          MR. ROSEN:  Thank you, Your Honor.

24          THE COURT:  All right.  Is there anything else we

25  need to address before we move to the contested matters?  All

Case:17-03283-LTS  Doc#:7829-2  Filed:07/03/19  Entered:07/03/19 15:43:41  Desc:
Exhibit B - Transcript of November 7  2018 Omnibus Hearing  Page 36 of 89

36

1    right, then.

2          The next agenda item is Pan American Grain Company's

3    Motion for Relief from Stay, which is ECF number 4004 in case

4    3283.

5          Good morning, Ms. Figueroa y Morgade.

6          MS. FIGUEROA Y MORGADE:  Yes, Your Honor.  Good

7    morning.  My name is Maria Mercedes Figueroa y Morgade on

8    behalf of Pan American Grain Company, Inc.

9          Pan American is the movant in the Motion for Relief

10   from Stay to request an Order to execute set-off, as the Court

11   mentioned, at ECF number 4004.  In order to efficiently use

12   this time before the Court, Pan American would like to focus

13   today's hearing on the pivotal issue in this matter.

14         Pan American filed the request for set-off in order

15   to use the value of its prepetition bonds due prior to the

16   filing of the Title III case and set-off against a prepetition

17   power service liability owed by Pan American to PREPA.

18         And the pivotal issue here stems from the oppositions

19   filed by the PREPA Trustee, U.S. Bank National Association and

20   PREPA itself.  Both of these objectors were -- both of these

21   objectors stem their arguments on the no-action clause

22   included in the Trust Agreement.

23         The objections are well-taken and well-founded, but

24   the Court can use, and Pan American moves the Court to use its

25   equitable powers and just eliminate Pan American from that

Case:17-03283-LTS  Doc#:7829-2  Filed:07/03/19  Entered:07/03/19 15:43:41  Desc:
Exhibit B - Transcript of November 7  2018 Omnibus Hearing  Page 37 of 89

37

1  no-action clause.

2          THE COURT:  How is it that the Court could, by use of

3  an equitable power, essentially rewrite a contract and grant a

4  right to a party that does not exist under a contract that

5  binds not only that party but many other similarly situated

6  bondholders, binds the Trustee, and obviously to which the

7  bond issuer is also a party?

8          MS. FIGUEROA Y MORGADE:  Well, Your Honor, Pan

9  American is not requesting that under the Court's equitable

10 powers, it rewrite the contract or rewrite the no-action

11 clause.  What Pan American is requesting is that under the

12 factual scenario where there are eight billion dollars in debt

13 by PREPA to bondholders, this one million dollar set-off

14 transaction that is allowed under the Bankruptcy Code and is

15 allowed under PROMESA, because it is incorporated in PROMESA's

16 general provisions, that would allow the Court to provide Pan

17 American the opportunity to execute the set-off.

18         If the Court finds -- that is why it's the pivotal

19 issue, is the no-action clause.  If the Court finds that the

20 no-action clause is a broad application and will be applied

21 also to Pan American's right to set-off under Section 553 of

22 the Bankruptcy Code, then the matter is over.

23         If the Court finds that there are factual grounds

24 regarding the amounts and the harmless execution of the

25 set-off, which will really not effect other bondholders, will

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 38 of 89

38

 1   not effect PREPA -- PREPA will receive cash upon the execution

 2   of the set-off, and it will not effect the work of the

 3   indentured Trustee.

 4           THE COURT:  Thank you.  So I am -- before you sit

 5   down, I'm assuming that the facts on which you would want me

 6   to focus in such an analysis basically boil down to the

 7   question of whether this particular proposed settlement would

 8   be de minimis financially in the broad scheme of things.

 9           I would ask whether there's any kind of difficulty

10   with that approach when you think -- when I have to consider

11   the possibility that there are other PREPA bondholders who may

12   also be customers.  There might also be other bondholders who

13   have some equally compelling rationale out of other commercial

14   transactions so that there would be -- even if this were

15   possible legally, this could be a situation that's not a

16   one-off situation, that would have individualized

17   complications, transaction costs, and ultimately, financially

18   might even add up to something that's not de minimis.

19           Is there a way that you have in mind for me to manage

20   my thinking about this issue that would give me some comfort

21   in that regard?

22           MS. FIGUEROA Y MORGADE:  Your Honor, it's really a

23   factual review upon the particular circumstances of what comes

24   before the Court and is requested by other bondholders.  There

25   is really no bright light to resolve this case.  It has to be

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 39 of 89

39

1   on a factual review and fact intensive.

2          And we do understand that the Court would be

3   concerned with how events unfold and if this would open the

4   door to other bondholders coming forward, but each one would

5   have to meet the standard of having factual grounds to come

6   forward and convince the Court of their legal request.

7          Here, Pan American has a right to set-off, and most

8   importantly, Pan American, as a bondholder, did not

9   voluntarily agree to waive its rights to set-off.  It did not

10  expressly consent to the application of the no-action clause.

11  And the Trustee Agreement, the indenture contract is really a

12  standard contract that was imposed on Pan American.

13         So what we have here is an entity requesting to

14  set-off to a prepetition debt with PREPA, and that is a

15  statutory right under the Bankruptcy Code applicable in

16  PROMESA.

17         And we have the indenture agreement, but it appears

18  that from the arguments of both the Trustee and PREPA, what

19  they want to do is elevate the indenture agreement to a

20  statutory provision of the Bankruptcy Code.

21         So the balances of equities here and the Court's

22  equitable relief would allow, in fairness to Pan American,

23  which is a request that is of limited amount, of a limited

24  amount, and that will yield cash for PREPA to simply have the

25  Court allow Pan American to execute the set-off.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 40 of 89

40

```
 1              THE COURT:  Thank you.

 2              MS. FIGUEROA Y MORGADE:  That's our position.  Thank

 3  you.

 4              MR. FINGER:  Good morning, Your Honor.

 5              THE COURT:  Good morning.

 6              MR. FINGER:  Kevin Finger of Greenberg Traurig on

 7  behalf of PREPA.

 8              As counsel noted, PREPA did file an objection, as did

 9  the PREPA Bond Trustee, U.S. Bank.  Counsel for U.S. Bank and

10  I have agreed to divide our time so that I'll take nine

11  minutes and he'll have six minutes for his argument.

12              THE COURT:  Thank you.

13              MR. FINGER:  And Your Honor, let me take what was

14  going to be the end of my argument and put it at the beginning

15  because of the way counsel has presented it.  But essentially

16  in Pan American's reply, they ask the Court to adopt the

17  concept of equitable set-off.

18              There is no provision under the law for a concept of

19  equitable set-off.  In fact, the First Circuit in the Public

20  Service Company of New Hampshire has explicitly rejected the

21  concept of equitable setoff.  So there is no basis here for

22  the Court to apply that principle and permit Pan American to

23  move forward with set-off.

24              This brings us back to the law.  There is no right to

25  set-off.  They have claimed a right to set-off, but it doesn't
```

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 41 of 89

41

1    actually exist under the law.  And that's because of the

2    requirements of Section 553 of the Bankruptcy Code, which

3    requires both a mutuality of debt, as well as a substantive

4    provision either under federal or applicable state law that

5    creates the right to set-off.  A movant cannot satisfy either

6    requirement.

7           The First Circuit has defined mutuality as debts with

8    the same right, between the same parties, in the same

9    capacity.  And the rights here are defined by the Trust

10   Agreement.  It's not an elevation of the Trust Agreement to

11   that of a statute, but it's the document by which bondholders

12   agree to be bound in the provisions therein, and that's what

13   defines the rights of the parties.

14          So to be sure, Pan American owes a set debt to PREPA

15   in the form of two million dollars owed for electrical service

16   prepetition, but PREPA does not owe that obligation to Pan

17   American.  PREPA owes the obligation to repay the bonds to the

18   PREPA Bond Trustee who acts on behalf of the bondholders who

19   share in any receipts to the Trustee in a prorata basis.

20          So they are not the same parties, and that is made

21   clear by, as counsel referenced, the no-action clause, which

22   is Section 808 of the Trust Agreement, which does not permit a

23   single bondholder or even a collection of bondholders to bring

24   an action unless they have at least ten percent of the

25   outstanding bonds.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 42 of 89

42

1           That particular exception to the no-action clause

2    does not apply in this case.  So in the words of movant's

3    counsel, that essentially ends the analysis.  The no-action

4    clause does not permit the bondholder to bring this action

5    and, therefore, there is no mutuality of the parties or of the

6    debts.

7           The debtors are also not in the same capacity.  For

8    many reasons, because they're not mutual parties, the

9    obligations don't run the same way, but also because the

10   obligation on the part of PREPA to repay the bonds is secured

11   and the debt that's owed by Pan American to PREPA is

12   unsecured, so there are different capacities for this.

13          Also, the request for set-off essentially amounts to

14   a recourse against PREPA for the payment of the bonds.  Under

15   both the Bankruptcy Code, Section 927, and the Trust

16   Agreement, the PREPA bonds are nonrecoursed to PREPA.  But to

17   allow setoff in this case essentially recategorizes that and

18   makes it a recourse to PREPA.

19          So Section 553 mutuality is not achieved.  There's

20   also not a substantive permission of Puerto Rico law that

21   permits set-off in this case.  The two statutes at issue -- 31

22   LPRA 3221 essentially imposes a mutuality requirement for

23   there to be set-off, and as discussed, that is not met.

24          The next section, 3222, has a five-part test for

25   which the movant fails to satisfy at least three of those

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 43 of 89

43

1    requirements.  The first is essentially, again, a mutuality

2    requirement that because the no-action clause is not met here,

3    also again because of the no-action clause, the debt is not

4    demandable.  In this case, Pan American is not permitted to

5    bring a claim to enforce the terms of the Trust Agreement.

6              And the fifth requirement under this statute is that

7    there not be a third party who has retention rights.  And it's

8    explained in our papers.  Section 905 of the Trust Agreement

9    does provide retention rights to the PREPA Bond Trustee.

10             And, Your Honor, even if the Court can find that

11   there's a setoff right here, that relief is still permissive,

12   not mandatory by the Court.  And the harms here that would be

13   invoked on a variety of levels are significant.  They're not

14   de minimis.

15             First of all, Pan American owes over two million

16   dollars to PREPA for prepetition electrical service.  PREPA's

17   need for dollars has been well-documented in this case and it

18   continues to this day.  That failure to provide two million

19   dollars affects not only PREPA, but other constituents who

20   rely on increased revenues to PREPA to continue to operate.

21             Mr. Whitmore can address this a little more

22   particularly, but it also would -- this recovery, a hundred

23   cents on the dollar for the bond holdings would also deprive

24   that amount to the other bondholders who, under the Trust

25   Agreement, share in any recovery on account of the bonds on a

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 44 of 89

44

1   prorata basis.

2          So there are significant harms here that would be

3   worked to permit a set-off, so the Court should, even if it

4   were to find a right to set-off, not permit it to move

5   forward.

6          Finally, with respect to the stay, Your Honor, there

7   is nothing on the factors that demonstrates cause to lift the

8   stay.  There is no judicial economy or any other factor that

9   can be saved here.

10          As counsel has asked, the proposed way of handling

11   all the different types of claims here would be on a factual

12   review, which would require apparently an examination of the

13   facts underlying each request for set-off, and that simply

14   requires Court time, PREPA's time and other parties' time that

15   can better be spent to do the type of activities that

16   Mr. Bienenstock described already.

17          So there is no basis.  There is no right to set-off

18   and there is no basis to lift the stay or permit the set-off,

19   even if the Court does find one.

20          THE COURT:  Thank you, Mr. Finger.

21          MR. FINGER:  You're welcome.

22          THE COURT:  Mr. Whitmore.

23          MR. WHITMORE:  Your Honor, Clark Whitmore from the

24   Maslon LLP law firm on behalf of U.S. Bank, National

25   Association, as the PREPA Bond Trustee.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 45 of 89

45

1      I believe that movant's counsel conceded the fact

2  that the no-action clause was applicable to bar their ability

3  to bring this, and that also destroys mutuality for purposes

4  of set-off, so it's a fairly simple equation for the Court to

5  deny the motion.

6      I would simply like, Your Honor, in light of the

7  request, that the Court take into account equities, which

8  obviously exist.  Every small business wants to get all the

9  money that they can, and I certainly appreciate the

10  perspective of equities from Pan American's perspective.  I

11  would like to make sure that the Court appreciates the

12  equities from the perspective of the other bondholders who we

13  have duties to under the Trust Agreement.

14      There are really two fundamental principles under the

15  Trust Agreement that they're seeking to have the Court

16  disregard.  The first is that of collective action.  They want

17  to just take a shortcut and ignore the requirement under the

18  Trust Agreement that either the Trustee or groups of

19  bondholders who have various rights to direct the Trustee or

20  act independently proceed in that way.

21      These are -- this is an important principle.  And

22  just allowing somebody to say, hey, I'm only owed a million

23  dollars, let me just violate the rules, really does put that

24  principle at risk in ways that could create unanticipated

25  problems later on.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 46 of 89

46

1          And perhaps more fundamentally, the second major

2     fairness principle under the Trust Agreement is that pledged

3     revenues were pledged to all of the bondholders, and the

4     recoveries from those pledged revenues are supposed to go to

5     all the bondholders after they share the cost of expenses.

6          So what you have here under the rubric of equities is

7     you have somebody saying, I would like to take some of PREPA's

8     revenues that should have gone to PREPA and were pledged to

9     all the bondholders and just grab it for myself.

10         So obviously we think that's not an equity that cuts

11    in favor of the movant, but rather one that cuts in favor of

12    the other, albeit more diluted bondholders who we'd like to

13    give voice to here today.

14         So I can go on, but I don't think it's really

15    necessary in light of the concessions that have been made by

16    movant's counsel.  I would just like to note that U.S. Bank's

17    position with respect to its claim and the nature of its claim

18    is we don't necessarily agree with all of the statements that

19    PREPA has made in its papers with respect to the nature of the

20    debt.  It's not necessary for the resolution of this motion.

21    But our position with respect to the claim is set forth in our

22    Proof of Claim, and if need be, we'll address that at some

23    later time.

24         And then finally, I would like to point out that U.S.

25    Bank favors the active involvement of bondholders in the Title

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 47 of 89

47

1   III process and doesn't intend for the decision it made to

2   step up in this particular case and file an objection to

3   standing to discourage bondholders from participating in these

4   Title III cases, because this case really presented a very

5   unusual attack on the fundamental principles of the Trust

6   Agreement and rose to a level of contradiction to the rights

7   of other bondholders where we felt it was appropriate to lodge

8   an objection.

9           THE COURT:  Thank you, Mr. Whitmore.

10          Ms. Figueroa y Morgade, would you like to make reply

11   remarks?

12          MS. FIGUEROA Y MORGADE:  No, Your Honor.  The matter

13   is submitted for the Court's consideration.

14          THE COURT:  Thank you.  And so the motion and

15   arguments are fully submitted.

16          I did read very carefully all of the submissions

17   before coming to court today and have listened carefully to

18   what has been said here.  I will now make my oral ruling on

19   the record.

20          Before the Court is Pan American Grain Company,

21   Inc.'s Motion for Relief from Stay to Execute Set-off, which

22   is docket entry number 4004 in case 17-3283, and I'll refer to

23   it as the motion.

24          The motion seeks relief from the automatic stay to

25   effectuate a set-off under Section 553 of the Bankruptcy Code,

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 48 of 89

48

1   which applies in these Title III proceedings pursuant to

2   Section 301 of PROMESA, to set off movant's PREPA bond

3   investments against its prepetition electricity bill owed to

4   PREPA.

5          The Court has considered carefully all of the

6   parties' submissions and arguments, and for the reasons that I

7   will now explain, the motion is denied.

8          I will first take up the question of standing or the

9   power or ability of the movant to make this application in the

10  first place.  Due to the collective structure of bondholder

11  rights and remedies under the Operative Trust Agreement, and

12  specifically because of the no-action clause of that

13  agreement, which counsel have discussed, movant does not have

14  standing to unilaterally bring proceedings to enforce

15  collection upon its PREPA bonds.

16         Section 808 of the Trust Agreement, which we are

17  referring to as a no-action provision, prohibits individual

18  PREPA bondholders who hold less than ten percent of the

19  principal amount of outstanding PREPA bonds from pursuing

20  remedies in their own name without complying with certain

21  requirements.

22         Counsel, may I remind you that court is in session

23  and I would ask that if you need to have conversations, you do

24  that outside of the courtroom.  Thank you.

25         Moreover, the no-action clause of the Trust Agreement

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 49 of 89

49

1    requires that all proceedings in law or equity brought by

2    individual PREPA bondholders be maintained for the benefit of

3    all PREPA bondholders.  Nothing in the trust instrument or in

4    bankruptcy law changes the powers of an individual bondholder

5    under the Trust Agreement upon the issuer's entry into a

6    bankruptcy proceeding.

7         Movant's attempt to distinguish the case *In Re:*

8    *American Roads, LLC,* 496 B.R. 727, from the Bankruptcy Court

9    of the Southern District of New York in 2013, a case that

10   construed an intercreditor agreement that defined bondholders'

11   rights inter se and vis-a-vis the Trustee is similarly

12   unpersuasive.

13        Here, as in that case, the operative agreement

14   defines and limits bondholders' rights and centralizes powers

15   to take actions with respect to the bonds.  The Court,

16   therefore, finds that not withstanding the broad provisions of

17   Bankruptcy Code Section 1109, movant lacks standing to bring

18   the present motion in violation of the Trust Agreement's

19   no-action clause.

20        And turning specifically to the no-action clause and

21   whether an equitable exclusion from that clause would be

22   feasible or appropriate, movant offers no statutory or

23   precedential authority in support of its argument that the

24   Court should use its equitable powers to exclude the movant

25   from the limitations imposed by the Trust Agreement's

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 50 of 89

50

1    no-action clause in order to allow the movant to pursue the

2    effectuation of its sought after set-off.

3          In effect, movant is asking this Court to create an

4    additional noncontractual right to direct payment for certain

5    PREPA bondholders.  There is no legal basis for such a

6    revision of a complex contractual arrangement to benefit a

7    single bondholder that has no right to individual relief as

8    against the issuer under the governing documents.  Such relief

9    would also be inequitable.

10         Under movant's proposed construct, individual

11   bondholders would be enabled by happenstance of their

12   independent electrical service customer relationships with the

13   issuer, with PREPA, to obtain the practical equivalent of 100

14   percent payment on their bonds from an issuer that represents

15   that it is not in a financial condition to make such full

16   payment to all other holders of the same bonds.

17         Such relief would, therefore, effect an inequitable

18   distribution of the debtor's property and would deprive the

19   bondholders and other creditors of PREPA of assets that could

20   otherwise be distributed equitably.

21         The Court denies the motion to the extent that the

22   movant seeks exclusion from the controlling no-action clause

23   of the operative Trust Agreement.

24         And finally, I would address the issue of mutuality,

25   which is a requirement of Section 553 of the Code.  The movant

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 51 of 89

51

1 | argues that mutuality exists here, and that argument is

2 | unfounded and again, fundamentally inequitable.

3 |        The existence of a mutuality requirement necessarily

4 | means that there must be something more than mere identity of

5 | obligor and obligee between the two debts to be set off.

6 | Furthermore, in light of the no-action provision of the Trust

7 | Agreement and bond terms providing that PREPA must pay

8 | principal and interest due on the bonds to the Trustee, rather

9 | than directly to individual bondholders, even the identity of

10 | obligor and obligee is lacking under the circumstances

11 | presented here.

12 |        Thus, because the movant lacks standing to seek the

13 | individual remedy of a set-off, because it is not demonstrated

14 | that it has any legal right to set-off, and because there is

15 | no proper basis for its request for recognition of an

16 | equitable entitlement to such a remedy, the Motion for Relief

17 | from Stay is denied and the Court need not go on to address

18 | the *Sonnax* factors.

19 |        So the Court will enter an Order indicating that the

20 | motion is denied for the reasons stated on the record.  This

21 | oral decision resolves docket entry 4004 in case number

22 | 17-3283.

23 |        Counsel, I thank you for your arguments and

24 | presentations today.

25 |        The final contested matter on the agenda is the

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 52 of 89

52

1   Motion for Relief from Stay of Cooperativa de Ahorro y Credito

2   Vegabajeña, I'm sorry if I butchered that, and that is ECF

3   number 4011 in case 17-3283.

4           And so Mr. Quilichini Paz.

5           MR. QUILICHINI PAZ:  Yes, Your Honor.  Good

6   morning.

7           THE COURT:  Good morning.

8           MR. QUILICHINI PAZ:  Carlos Quilichini for the

9   Cooperativa de Ahorro y Credito Vegabajeña.

10          Your Honor, basically, in this case, the claim to the

11  funds arises from a statutory basis, basically Law Number 196

12  of the year 2011, which was drawn basically to entice further

13  credit unions and other financial institutions to grant

14  credit, extend credit facilities to the participants in the

15  ESR, the Employees' Retirement System participants.

16          And due to that specific law, as a matter of fact,

17  the motives within the law specifically stating, among others,

18  that the purpose of the specific motive of the law was to

19  ensure the operational solvency of a credit union, it is

20  necessary to increase the contribution percentage that a

21  participant may voluntarily authorize to be encumbered to

22  secure the personal loans.

23          So what the law did was to increase the limits by

24  which a participant in the system could actually assign his

25  funds within the system, which are actually payroll deductions

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 53 of 89

53

1   or voluntary contributions to this system, and it allowed it

2   to be assigned as a collateral for the loan the credit union

3   would do.

4        THE COURT:  Was it the bank's understanding that the

5   participant contributions went into a separate, separately

6   kept savings type of account for the participant or what --

7   what is the benefit that was being assigned?

8        MR. QUILICHINI PAZ:  We believe it's not, because as

9   the contract documents show, and I specifically refer to

10  Exhibits A and B that were added, specifically the assignment

11  agreement for the pensioners or assignment agreement for

12  participants, the certificate of estoppel that was actually

13  executed by the ERS -- which the clear language on the

14  contract specifically states three things:  One, on the

15  estoppel, on the estoppel issue, that the ERS guarantees,

16  certifies that the debtor, referring to the participant, is a

17  bona fide participant of a Puerto Rico retirement system.

18       Number two, that it has been notified that the

19  interests of the debtor to the participant in the amounts of

20  contributions made by way of deductions have been assigned,

21  including interest as a guaranty to the creditor, in this case

22  would be Cooperativa de Ahorro y Credito Vegabajeña, a

23  designee under the terms of the agreement.

24       And number three, most importantly, Your Honor, it

25  says specifically that as of the date of this notification,

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 54 of 89

54

1    the debtor has contributed the amount of X dollars.

2    Specifically, in our case, most amounts were 25,000 dollars.

3    As shown in Exhibit D, the cooperativa granted 37 loans

4    totaling, amounting to $525,422.93.

5         So the contract agreement around the ERS specifically

6    stated that they had knowledge and that they guaranteed that a

7    specific amount had been put into assignment and as collateral

8    for the loans.  That's on the contract issue.

9         But besides that, the specific terms of the law, and

10   again, that would be Act 196, specifically states, Section

11   2-119, as follows:   Contributions that may be designated by

12   the participant as collateral for any loan originating or

13   required by these agencies, savings and credit unions and the

14   Cooperativa Bank of Puerto Rico, underlined, may only be used

15   as collateral for the principal and interest of such loan.

16        Then the same statute goes on to Section 4-110 and

17   specifically states that the statutory lien was created, and

18   specifically states the following:  The statutory lien created

19   in this section, Section 4-110, shall remain in full force and

20   effect in the event that the mortgage or personal loans are

21   transferred by the administrator to third parties pursuant to

22   Section 4-116.

23        That is, we have a statutory lien.  We have a

24   specific assignment of determined funds certified by the ERS

25   as collateral for Cooperativa's loans in each and every one of

Case:17-03283-LTS  Doc#:7829-2  Filed:07/03/19  Entered:07/03/19 15:43:41  Desc:
Exhibit B - Transcript of November 7  2018 Omnibus Hearing  Page 55 of 89

55

1    the 37 Proof of Claims filed by Cooperativa in this case.

2          These were all -- these were all, as I said, direct

3    contributions from the participants' payrolls into these

4    accounts.  So that's why we hardly find to believe -- or I

5    mean we express surprise that in the objection at paragraph

6    ten, the ERS states that there were no individual accounts.

7          That is contrary to the specific estoppel

8    certificate.  It's contrary to specific statutory language,

9    which is comprised in Section 2-119 and in Section 4-110.  So

10   basically we find it -- and of course it even says, Section

11   4-116, that the statutory lien created in this section shall

12   remain in full force and effect, even in the event of transfer

13   of the loan.

14         So the application of the other law cited in the

15   objections, specifically the Act 106 enacted in 2017, which

16   is, of course, after the filing of the petition in the Title

17   III cases, and besides, let me clear the point, all these

18   loans were prepetition.  All these loans are prepetition.

19         THE COURT:  And the 2017 law is the one that is being

20   referred to as the PAYGO Statute?

21         MR. QUILICHINI PAZ:  Yes.  Yes, Your Honor, that is

22   the PAYGO Statute, which specifically states in Article 7.6,

23   that it does away -- one of the things that Article 7.6 does

24   is it does away with all the loans and any -- all the

25   financing that the ERS was able to provide to their own

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 56 of 89

56

1    participants, but specifically states that all loans

2    previously granted or in place of course shall be -- shall be

3    carried out under the statute under which they were issued.

4    In this case, that would be Law 196 of the year 2011.

5           Additionally, contrary to what the ERS also says in

6    its objection at paragraph ten, the new law actually, in the

7    translation, says that participants of the new defined

8    contribution plan shall have, ergo, the property rights over

9    the balances in their defined contribution accounts.

10          So at any rate, if you want to see it, I actually

11   propose to the Court that under Law 196, this is a specific

12   amount of money that was actually certified by the ERS as

13   available for collateral.  So it was earmarked and set aside.

14   And it -- under the same statute, 196, it could only be used

15   for payment of that loan.  That's the specific statutory

16   language that we address.

17          So that basically is our contention.  The rest we

18   have argued basically on the merits and in our writings.

19          THE COURT:  Thank you, sir.

20          MR. QUILICHINI PAZ:  Thank you.

21          MR. MARINI:  Good morning, Your Honor.

22          THE COURT:  Good morning.

23          MR. MARINI:  Luis Marini of Marini, Pietrantoni &

24   Muniz for AAFAF.  I'm here with my colleague, Suzanne Uhland,

25   as well for AAFAF.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 57 of 89

57

1          Your Honor, AAFAF filed an objection to Cooperativa's

2     motion, and in our objection, we essentially assert two bases

3     for the denial of the motion.  One is that we submitted the

4     motion should be denied as the movant has failed to establish

5     cause.

6          In our motion, we go through the various *Sonnax*

7     factors and why we understand that the *Sonnax* factors weigh in

8     favor of denial of the motion.  And we also assert that the

9     motion is not the correct procedural vehicle to assert

10    remedies that Cooperativa is presenting in the motion.

11         THE COURT:  That's the declaratory judgment aspect of

12    the motion.

13         MR. MARINI:  Correct.  Correct.

14         THE COURT:  I would like to -- I need to understand

15    what the plan design here is and what the nature of these

16    accounts or interests was prior to PAYGO, in which Law 196

17    authorized the granting of the security interest and pursuant

18    to which the security interest was granted.  So if you could

19    help me with that, that will help me understand in context

20    better your *Sonnax* argument.

21         MR. MARINI:  Sure.  Well, Your Honor, let me first

22    describe what we understand is the type of interest that

23    Cooperativa has.  They're trying to enforce reported claims

24    against consumer borrowers that are apparently secured by

25    individual retirement and pension benefits.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 58 of 89

58

1          We understand what they have is at most an assignment

2     of the rights of the consumer borrowers to ERS.  And as part

3     of such assignment, they are stepping into the shoes of the

4     consumer borrowers to enforce their pension and retirement

5     claim benefits against ERS.

6          We understand that as an assignee, they have no

7     superior rights to claim pension and retirement benefits as a

8     consumer borrower would have against ERS.

9          THE COURT:  So I want to know what the consumer

10    borrower has.

11         MR. MARINI:  Sure.

12         THE COURT:  Were there individual accounts made for

13    the consumer borrowers to hold their employee contributions,

14    as the bank appears to have believed or is arguing now, or is

15    it an annuity?  What is the benefit plan design that the

16    consumer borrower would expect to get as a pensioner?

17         MR. MARINI:  Right.  Your Honor, as we detailed in

18    our papers, no individual retirement accounts were established

19    at ERS.

20         THE COURT:  Is that because the plan didn't call for

21    it or is that because the plan called for it but nobody did

22    it?

23         MR. MARINI:  Your Honor, if I may check with my

24    co-counsel for a second?

25         THE COURT:  Yes.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 59 of 89

59

1           MR. MARINI:  Your Honor, we need to confirm.  It's

2    possible that the statute required it, but it certainly --

3    there were no retirement accounts set up.

4           As we also assert in our papers, at this stage and

5    once borrowers -- they make no ongoing contributions to ERS,

6    and ERS assets are to be transferred to the Commonwealth as

7    part of the PAYGO legislation.  And any remaining assets that

8    ERS has right now are in its general fund.

9           So, Your Honor, the rights that --

10          THE COURT:  So what's being -- what's the difference

11   between what is being or has been transferred to the

12   Commonwealth and ERS' general funds?  Were there some

13   segregated funds that have been transferred to the

14   Commonwealth or what?

15          MR. MARINI:  No, Your Honor.  I believe that the

16   intent of the PAYGO legislation was that the assets are

17   transferred to the Commonwealth, which is ongoing.  They are

18   not segregated into individual accounts.  The assets that ERS

19   has are held in its general fund and they are not

20   segregated.

21          THE COURT:  And so was it part of whatever ERS had as

22   its general fund that went to the Commonwealth but ERS has

23   kept some back, or were there separate bodies of assets that

24   were transferred to the Commonwealth?

25          MR. MARINI:  I understand that part of ERS assets

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 60 of 89

60

1   were transferred without segregation and that the assets that

2   ERS still has are just held in the general fund without

3   segregation into individual borrower accounts.

4          So, Your Honor, our main contention here is that the

5   rights or claims that pension claimants would have, they are

6   not limited to Cooperativa's rights as an assignee.  It is a

7   legal issue that should be decided as part of the Title III

8   proceedings, as part of a Plan of Adjustment or the claims

9   resolution proceedings.  Lifting the stay would shift that

10  decision to a state court.

11         We understand that the Cooperativa is not the only

12  potential claimant asserting a right or claim against pension

13  benefits, and that that decision and that the claims that may

14  be asserted or the rights that may be asserted by pension

15  claimants should be made as part of the Plan of Adjustment or

16  claim resolution process in this Court.  And that the stay

17  should not be lifted for those reasons and those that we put

18  in our objection.

19         THE COURT:  Is there anything of an evidentiary

20  nature in the record on this motion to establish as the basis

21  of a Court finding that there's only an unsecured claim here,

22  that there are no individual accounts, that there are no

23  segregated assigned funds?

24         There is a footnote in the brief that says, by the

25  way, there are no individual accounts, but there's no

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 61 of 89

61

1   affidavit.  There's no information about that.  Are you

2   prepared to proffer something?

3           MR. MARINI:  May I have a second, Your Honor?

4           THE COURT:  Yes.

5           MR. MARINI:  Your Honor, we made the allegation in

6   our objection.  What we submit is that the Court -- we would

7   ask the Court allows us to supplement the record with an

8   affidavit.

9           THE COURT:  Yes, I will require a supplemental

10  affidavit, because arguments of counsel are not evidence.  And

11  you are asking me to make a factual finding that because of

12  this factual situation, there is only an unsecured claim to be

13  pursued, and on that basis, to apply the *Sonnax* factors.

14          And so that supplemental affidavit must be filed by a

15  week from tomorrow.  Sorry.  Today is Wednesday.  I lose track

16  of the days, so --

17          COURTROOM DEPUTY:  The 15th.

18          THE COURT:  The 15th.

19          MR. MARINI:  Thank you, Your Honor.

20          THE COURT:  And let me ask you, is there -- to the

21  extent that the plan required segregation and it didn't

22  happen, is there an investigation ongoing?  Will there be

23  identification of how this happened and who was responsible

24  and steps taken to pursue that?

25          I don't think that was something covered by the Kobre

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 62 of 89

62

1   & Kim matter, which focused on bonds.

2          MR. MARINI:  Your Honor, I don't have the answer to

3   that.  I'll certainly check with my client and inform the

4   Court.

5          THE COURT:  Yes, please.  File an informative motion.

6          MR. MARINI:  (Nodding head up and down.)

7          THE COURT:  Thank you.

8          MR. MARINI:  Thank you, Your Honor.

9          THE COURT:  Mr. Quilichini, any reply remarks?

10          MR. QUILICHINI:  Just, Your Honor, that again,

11   restating, the law is clear.  The documents are clear.  And we

12   have to overstate the importance of the Exhibits B and C

13   attached to our motions.  These were drafted by the ERS.

14   They're not of our doing.  They were drafted pursuant to Law

15   196.  So they cannot undo themselves of what they went into

16   and what they represented to these credit unions.

17          These were segregated funds.  If they were

18   transferred illegally or unauthorizedly, that's another

19   matter.

20          So I would ask you if we can respond to the

21   informative motion that has been allowed to the -- to the

22   other party on due time.

23          THE COURT:  Yes.  So within a week after the filing

24   of the informative motion, you may make a further response.

25          MR. QUILICHINI:  Thank you.

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 63 of 89

63

1          THE COURT:  And I will hold this matter under

2    advisement and in abeyance until these submissions are

3    received, and then I will make a decision after all of the

4    supplemental submissions have been received.

5          MR. QUILICHINI:  Thank you, Your Honor.

6          THE COURT:  Thank you.

7          Mr. Despins.

8          MR. DESPINS:  Luc Despins for the Committee.

9          As you know, the Committee has stayed out of all

10   these automatic stay motions for cost reasons.  The only thing

11   that concerns me is that I want to make sure Your Honor knows,

12   and we're not taking a position on the merits of this, that

13   this issue of a law saying that certain funds shall be

14   deposited in a certain way or kept in a certain way, that's an

15   issue that permeates the entire case.

16         So when I hear this argument over a relatively small

17   matter, it gives me a lot of trepidation because I want to

18   make sure Your Honor knows that that issue is in the case

19   generally.  So I -- that's all I wanted to make sure Your

20   Honor was aware of.

21         THE COURT:  It doesn't surprise me that it is a

22   pervasive issue, but when I am asked to make a determination

23   based on what is, in effect, an offhand remark in a brief that

24   what was called for doesn't exist so we should just move on

25   from there, that's a problem.  I can't condone it and I can't

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 64 of 89

64

1    make a decision on that basis.

2            MR. DESPINS:  Understood.  I was not arguing that you

3    should.  I just wanted to make sure that you knew that various

4    other statutes --

5            THE COURT:  Yes.

6            MR. DESPINS:  -- speak in those terms.

7            THE COURT:  And I will expect that the parties, and

8    in particular the governmental side parties will address

9    appropriately and with an appropriate level of insight and

10   detail the facts that relate to those sorts of issues as and

11   when they come up in litigation.

12           Now, I didn't give a deadline for the informative

13   motion.  I only gave a specific deadline for the supplemental

14   affidavit.  So both the supplemental affidavit and the

15   informative motion are due on the 15th of November.

16           I think we have concluded the scheduled agenda.  We

17   have adjourned matters as listed in document 4180 that are

18   adjourned to the December Omni.

19           Are there any further remarks that anyone needs or

20   wishes to make before I conclude the proceedings?

21           Seeing none, I will say today's agenda is concluded.

22   The next scheduled hearing date is the November 20th, 2018,

23   hearing on the proposed COFINA disclosure statement.  That

24   will take place in New York with a video connection to San

25   Juan.

Case:17-03283-LTS  Doc#:7829-2  Filed:07/03/19  Entered:07/03/19 15:43:41  Desc:
Exhibit B - Transcript of November 7  2018 Omnibus Hearing  Page 65 of 89

65

1         The next Omnibus hearing date is on December 19,

2    2018, here in Puerto Rico, with the usual video connection to

3    New York.

4         I would like to thank all counsel for their work here

5    today, and in particular to thank the staff of the courts in

6    Puerto Rico and New York, and the ongoing work of the staff in

7    Boston in preparing for and conducting these hearings.

8         I wish safe travels to all who are departing.  And I

9    commend again the administration of these cases on the court

10   side and the way in which everyone is working together to move

11   forward for the benefit of Puerto Rico.  Keep well.  We are

12   adjourned.

13        (At 11:24 AM, proceedings concluded.)

14                        *     *     *

15

16

17

18

19

20

21

22

23

24

25

Case:17-03283-LTS   Doc#:7829-2   Filed:07/03/19   Entered:07/03/19 15:43:41   Desc:
Exhibit B - Transcript of November 7   2018 Omnibus Hearing   Page 66 of 89

66

```
 1 ║ U.S. DISTRICT COURT     )

 2 ║ DISTRICT OF PUERTO RICO)

 3 ║

 4 ║     I certify that this transcript consisting of 66 pages is

 5 ║ a true and accurate transcription to the best of my ability of

 6 ║ the proceedings in this case before the Honorable United

 7 ║ States District Court Judge Laura Taylor Swain on November 7,

 8 ║ 2018.

 9 ║

10 ║

11 ║ S/ Amy Walker

12 ║ Amy Walker, CSR 3799

13 ║ Official Court Reporter

14 ║

15 ║

16 ║

17 ║

18 ║

19 ║

20 ║

21 ║

22 ║

23 ║

24 ║

25 ║
```

< Dates >
December 19, 2018
    65:1
December 5, 2018
    13:10
January 16 28:2
July 2018 11:19
November 16 28:23
November 2 9:8
November 2, 2018
    9:12
November 20 8:19
November 7, 2018
    1:16, 5:2, 66:7
October 18 27:12
October 23 30:11
October 31 13:7
October 31st 32:2
$525,422.93. 54:4


< 0 >
000 54:2


< 1 >
1.5 25:5
100 31:10, 50:13
100. 30:17
103 11:14
106 55:15
11 16:7, 29:25
1109 49:17
11:24 65:13
147 9:14
15th 61:17, 61:18,
    64:15
165,000 30:19
17-3283 47:22
17-3283. 51:22, 52:3
17-BK-3283(LTS 1:6
17-BK-3567(LTS 2:4
17-BK-4780(LTS 1:22
170,000 30:19
196 52:11, 54:10,
    56:4, 56:11,
    56:14, 57:16
196. 62:15

< 2 >
2-119 54:11, 55:9
2011 52:12
2011. 56:4
2013 49:9
2016 11:12
2017 55:15, 55:19
2018 19:24, 64:22
2019. 8:24
20th 8:18, 64:22
21: 2:35
25 54:2
27 9:12
27-page 28:17
28 16:4
29 24:10, 24:14,
    25:7


< 3 >
3,500 30:21
300 9:10
3007 30:15
301 48:2
31 42:21
3221 42:22
3222 42:24
327 9:8
3283. 30:6, 36:4
342 11:12
37 54:3, 55:1
3799 66:12
3: 1:6, 1:22, 2:4


< 4 >
4,000 30:21
4-110 54:16, 54:19
4-110. 55:9
4-116 55:11
4-116. 54:22
4004 36:3, 47:22,
    51:21
4004. 36:11
4011 52:3
4052 30:6
4180 64:17
496 49:8

< 5 >
50 31:21
500. 31:10
553 37:21, 41:2,
    42:19, 47:25,
    50:25
56 11:13


< 6 >
65 9:18
66 66:4


< 7 >
7.6 55:22, 55:23
727 49:8
74 8:9


< 8 >
8.8 11:24
808 41:22, 48:16
88 11:14


< 9 >
9019 28:3, 28:11
905 43:8
927 42:15
93 11:11
96 11:12, 11:13
99 11:9
9:45 5:3


< A >
a. 52:9
AAFAF 11:17, 26:3,
    26:10, 35:1,
    56:24, 56:25, 57:1
abeyance 28:1, 63:2
ability 45:2, 48:9,
    66:5
able 6:6, 24:22,
    26:2, 26:3, 32:14,
    33:19, 55:25
above 9:10
Absolutely 33:9
accordance 12:24

account 9:11, 43:25,
   45:7, 53:6
accounts 55:4, 55:6,
   56:9, 57:16,
   58:12, 58:18,
   59:3, 59:18, 60:3,
   60:22, 60:25
accurate 66:5
achieved 42:19
across 18:24
Act 45:20, 54:10,
   55:15
action 41:24, 42:4,
   45:16
actions 29:21, 49:15
active 46:25
actively 11:6, 35:8
activities 44:15
acts 41:18
actual 25:14
actually 10:2, 10:4,
   27:23, 30:25,
   34:4, 41:1, 52:24,
   52:25, 53:12,
   56:6, 56:10, 56:12
Ad 11:18, 12:1
add 24:1, 38:18
added 53:10
addition 29:23
additional 9:19,
   16:6, 16:13, 50:4
Additionally 56:5
address 18:12, 19:5,
   19:9, 20:11,
   29:17, 34:20,
   35:25, 43:21,
   46:22, 50:24,
   51:17, 56:16, 64:8
addressed 16:16,
   19:12, 20:10
adjourned 64:17,
   64:18, 65:12
Adjustment 8:4,
   8:15, 12:19, 27:8,
   28:4, 31:5, 34:2,
   35:4, 60:8, 60:15
adjustments 19:12,
   19:21, 21:12,
   24:16
Administered 1:11,

1:24, 2:6
administration 65:9
administrator 54:21
adopt 40:16
adopted 34:2
ADR 33:25
advice 21:18
advise 14:16
advisement 63:2
Advisory 3:3, 21:8
affected 24:21
affects 43:19
affidavit 61:1,
   61:8, 61:10,
   61:14, 64:14
afford 24:14
agencies 54:13
Agency 3:2
Agenda 15:18, 16:7,
   30:4, 36:2, 51:25,
   64:16, 64:21
agent 27:13, 27:18,
   27:19, 28:9, 29:3
agree 39:9, 41:12,
   46:18
agreed 40:10
agreements 19:4,
   19:13
Ahorro 3:16, 52:1,
   52:9, 53:22
al 1:16, 2:29
albeit 46:12
allay 32:17
allegation 61:5
allow 11:20, 19:8,
   30:16, 31:13,
   37:16, 39:22,
   39:25, 42:17, 50:1
allowance 35:13
allowed 31:12,
   37:14, 37:15,
   53:1, 62:21
allowing 6:13, 45:22
allows 61:7
almost 17:12, 19:17
already 8:15, 20:23,
   31:12, 44:16
alternatives 11:6

although 19:18,
   20:4, 25:11, 28:19
Amended 32:1, 32:15,
   32:20
amendments 25:19,
   26:1
American 3:12, 36:2,
   36:8, 36:9, 36:12,
   36:14, 36:17,
   36:24, 36:25,
   37:9, 37:11,
   37:17, 37:21,
   39:7, 39:8, 39:12,
   39:22, 39:25,
   40:16, 40:22,
   41:14, 41:17,
   42:11, 43:4,
   43:15, 45:10,
   47:20, 49:8
among 35:11, 52:17
amount 8:10, 10:24,
   11:23, 17:14,
   35:12, 39:23,
   39:24, 43:24,
   48:19, 54:1, 54:7,
   56:12
amounting 54:4
amounts 9:24, 30:16,
   37:24, 42:13,
   53:19, 54:2
Amy 66:11, 66:12
analysis 38:6, 42:3
anniversaries 19:20
annual 21:12
annuity 58:15
answer 17:7, 17:24,
   26:9, 62:2
anticipate 32:25
anticipated 8:3
anticipating 7:22
anxious 11:1
anybody 29:6
apologize 17:13,
   26:25
apparently 44:12,
   57:24
appear 6:13
appearance 6:14
APPEARANCES 2:26,
   2:41

Appearing 2:31
appears 39:17, 58:14
applicable 39:15,
  41:4, 45:2
application 16:6,
  16:7, 16:9, 37:20,
  39:10, 48:9, 55:14
applications 15:19,
  16:4, 16:10,
  16:13, 16:17,
  16:18, 17:23,
  20:18, 23:5, 23:8,
  24:18, 29:22
applied 23:22, 37:20
applies 48:1
apply 5:12, 19:17,
  40:22, 42:2, 61:13
appreciate 18:2,
  33:14, 45:9
appreciated 6:4
appreciates 45:11
approach 22:16,
  38:10
appropriate 19:9,
  21:18, 47:7,
  49:22, 64:9
appropriately 64:9
approval 8:13,
  11:22, 12:18,
  16:5, 17:22, 18:6,
  28:3, 28:11
approved 8:21, 10:3
approves 29:21
approving 8:7
approximate 8:10,
  11:24
Approximately 9:2,
  9:8, 9:14, 9:18,
  11:11, 11:12,
  11:14, 30:19,
  31:1, 31:10, 31:20
areas 21:6
argued 56:18
argues 51:1
arguing 58:14, 64:2
argument 40:11,
  40:14, 49:23,
  51:1, 57:20, 63:16
arguments 36:21,
  39:18, 47:15,

48:6, 51:23, 61:10
arises 52:11
around 54:5
arrangement 50:6
arrangements 24:17,
  26:1
Arribas 2:35
Article 55:22, 55:23
articulate 21:7
ascertain 35:16
aside 56:13
aspect 11:16, 57:11
assert 57:2, 57:8,
  57:9, 59:4
asserted 60:14
asserting 60:12
assets 50:19, 59:6,
  59:7, 59:16,
  59:18, 59:23,
  59:25, 60:1
assign 52:24
assigned 53:2, 53:7,
  53:20, 60:23
assignee 58:6, 60:6
assignment 53:10,
  53:11, 54:7,
  54:24, 58:1, 58:3
associates 19:17,
  19:20
Association 2:44,
  36:19, 44:25
assuming 38:5
assure 7:11
attached 16:10,
  27:22, 62:13
attack 47:5
attempt 49:7
attention 27:12,
  28:15
AUST 2:35
Authority 1:32,
  2:15, 3:3, 3:8,
  13:2, 13:6, 13:12,
  49:23
authorize 52:21
authorized 57:17
automatic 47:24,
  63:10
available 56:13
average 9:17, 11:10,

17:18
avoid 23:3
aware 10:5, 25:4,
  63:20
away 55:23, 55:24
Ayala 2:39

< B >
back 7:17, 8:13,
  14:24, 21:9,
  28:24, 34:10,
  40:24, 59:23
backlog 16:19
balance 9:13
balances 9:8, 39:21,
  56:9
Bank 2:43, 31:13,
  36:19, 40:9,
  44:24, 46:16,
  46:25, 53:4,
  54:14, 58:14
Bankruptcy 1:1,
  30:15, 37:14,
  37:22, 39:15,
  39:20, 41:2,
  42:15, 47:25,
  49:4, 49:6, 49:8,
  49:17
bar 45:2
based 9:6, 17:2,
  17:23, 19:11,
  63:23
bases 57:2
basically 14:11,
  25:22, 38:6,
  52:10, 52:11,
  52:12, 55:10,
  56:17, 56:18
basis 17:15, 32:8,
  40:21, 41:19,
  44:1, 44:17,
  44:18, 50:5,
  51:15, 52:11,
  60:20, 61:13, 64:1
Bauer 2:32
begin 5:16, 31:5
beginning 6:22,
  8:14, 40:14
behalf 16:1, 33:18,

35:1, 36:8, 40:7,
  41:18, 44:24
behind 23:9
believe 8:16, 10:23,
  11:25, 45:1, 53:8,
  55:4, 59:15
believed 58:14
benchmarks 18:4
beneficiary 10:9
benefit 24:25,
  26:20, 49:2, 50:6,
  53:7, 58:15, 65:11
benefits 57:25,
  58:5, 58:7, 60:13
Bennazar 16:6, 16:9
besides 54:9, 55:17
best 66:5
Better 8:6, 26:7,
  29:7, 44:15, 57:20
Biaggi 3:4
bids 13:13
Bienenstock 2:29,
  5:16, 5:17, 5:18,
  6:16, 7:17, 8:2,
  8:19, 8:21, 10:5,
  14:3, 14:9, 15:16,
  15:17, 15:18,
  15:21, 15:22,
  20:10, 23:24,
  23:25, 24:23,
  25:17, 26:5, 26:8,
  26:12, 27:6, 35:4,
  44:16
big 21:20
bill 48:3
billion 8:9, 9:3,
  11:24, 37:12
binds 37:5, 37:6
bit 19:1
blackline 32:3
blended 17:18
Board 1:10, 1:26,
  2:8, 5:15, 5:19,
  5:24, 6:17, 6:20,
  6:24, 7:6, 7:13,
  11:17, 17:3,
  18:24, 19:6,
  27:18, 33:24, 34:9
bodies 59:23
boil 38:6

Bola 3:10
bona 53:17
Bond 8:10, 9:3,
  11:24, 30:24,
  31:11, 37:7, 40:9,
  41:18, 43:9,
  43:23, 44:25,
  48:2, 51:7
bondholder 39:8,
  41:23, 42:4,
  48:10, 49:4, 50:7
bonds 12:8, 12:14,
  36:15, 41:17,
  41:25, 42:10,
  42:14, 42:16,
  43:25, 48:15,
  48:19, 49:15,
  50:14, 50:16,
  51:8, 62:1
borrower 58:8,
  58:10, 58:16, 60:3
borrowers 57:24,
  58:2, 58:4, 58:13,
  59:5
Boston 65:7
bound 41:12
Brady 3:19, 16:1,
  22:12
Brian 2:30, 27:4,
  29:15, 30:7
brief 5:10, 60:24,
  63:23
bright 38:25
bring 20:22, 21:9,
  23:17, 27:11,
  28:15, 41:23,
  42:4, 43:5, 45:3,
  48:14, 49:17
bringing 35:11
brings 40:24
broad 37:20, 38:8,
  49:16
brought 49:1
bulk 25:8
burning 11:7
business 33:5, 45:8
butchered 52:2


< C >

calculated 17:17,
  20:4
calendar 19:23, 33:7
call 5:15, 26:24,
  32:23, 58:20
called 58:21, 63:24
candidates 13:13
capacities 42:12
capacity 41:9, 42:7
caps 20:15
carefully 47:16,
  47:17, 48:5
Carlos 3:17, 52:8
Carolina 3:5
carried 10:25, 56:3
carry 10:24, 16:21
cases 15:5, 17:19,
  24:9, 47:4, 55:17,
  65:9
cash 9:7, 9:8, 9:10,
  9:15, 9:17, 38:1,
  39:24
Casillas 2:39
CAT 3:43
categories 19:16,
  21:11
cause 44:7, 57:5
centers 11:13
centralizes 49:14
cents 34:3, 34:4,
  43:23
certain 12:3, 27:16,
  48:20, 50:4,
  63:13, 63:14
certainly 12:15,
  15:14, 45:9, 59:2,
  62:3
certificate 53:12,
  55:8
certified 28:6,
  54:24, 56:12
certifies 53:16
certify 66:4
cetera 8:23
challenges 23:7
changes 24:5, 49:4
charge 19:10
charged 20:24
check 58:23, 62:3
checked 6:7

Circuit 40:19, 41:7
circumstances 38:23,
   51:10
cited 55:14
Claim 31:12, 43:5,
   46:17, 46:21,
   46:22, 52:10,
   58:5, 58:7, 60:12,
   60:16, 60:21,
   61:12
claimant 60:12
claimants 60:5,
   60:15
claimed 40:25
Claims 30:5, 30:19,
   30:22, 30:24,
   30:25, 31:3, 31:9,
   31:12, 31:14,
   31:16, 31:18,
   31:20, 32:7,
   32:12, 33:21,
   33:23, 34:5,
   34:15, 35:14,
   44:11, 55:1,
   57:23, 60:5, 60:8,
   60:13
clarifications 32:21
Clark 2:44, 44:23
clause 36:21, 37:1,
   37:11, 37:19,
   37:20, 39:10,
   41:21, 42:1, 42:4,
   43:2, 43:3, 45:2,
   48:12, 48:25,
   49:19, 49:20,
   49:21, 50:1, 50:22
clawback 14:23
clawed 14:24
cleaner 10:21, 11:7
clear 7:6, 20:16,
   41:21, 53:13,
   55:17, 62:11
client 62:3
clients 19:4
co-counsel 58:24
Code 37:14, 37:22,
   39:15, 39:20,
   41:2, 42:15,
   47:25, 49:17,
   50:25

COFINA 8:12, 26:23,
   27:8, 27:19, 28:3,
   30:21, 31:1,
   31:17, 64:23
collateral 53:2,
   54:7, 54:12,
   54:15, 54:25,
   56:13
colleague 15:22,
   56:24
collection 25:14,
   41:23, 48:15
collections 9:17
collective 45:16,
   48:10
collegial 22:16,
   22:25
color 19:1
comes 28:24, 38:23
comfort 38:20
comfortable 17:22
coming 10:2, 10:5,
   27:3, 33:16,
   33:24, 34:10,
   39:4, 47:17
commend 18:1, 65:9
commensurate 25:13
comment 18:1
commented 22:15
comments 18:14
commercial 38:13
Committee 2:37,
   27:13, 27:18,
   27:22, 28:9, 29:2,
   32:1, 32:15,
   33:18, 34:1,
   34:24, 63:8, 63:9
common 31:18
Commonwealth 1:15,
   2:28, 9:9, 9:11,
   14:12, 14:22,
   14:24, 15:2,
   23:21, 26:20,
   27:13, 28:7, 28:9,
   28:11, 59:6,
   59:12, 59:14,
   59:17, 59:22,
   59:24
communicate 26:3
communication 5:11,

12:13, 22:25
Company 3:13, 36:2,
   36:8, 40:20, 47:20
compelling 38:13
complete 11:21
completed 13:2,
   13:15
complex 34:8, 50:6
complexities 26:4
compliance 5:13
complicated 34:18
complications 38:17
comply 30:15
complying 48:20
comprehensive 11:21
comprised 55:9
compromised 27:23
conceded 45:1
concept 35:1, 40:17,
   40:18, 40:21
concern 26:13
concerned 20:3, 39:3
concerning 6:20,
   6:25
concerns 26:4,
   32:17, 63:11
concession 13:4
concessions 46:15
conclude 29:20,
   64:20
concluded 64:16,
   64:21
concluded. 65:13
concrete 14:1
condition 50:15
conditions 14:25
condone 63:25
conducted 24:20
conducting 65:7
confirm 6:16, 15:1,
   32:24, 59:1
confirmation 28:3,
   28:10
confirmed 8:24,
   13:3, 34:3
connection 19:22,
   26:24, 27:14,
   28:2, 30:10,
   30:21, 31:4,
   31:24, 33:1,

35:10, 35:18,
  35:21, 64:24, 65:2
consensual 20:23
consent 39:10
consenting 11:23
consequences 6:19
conservative 17:17
consider 38:10
consideration 47:13
considered 35:20,
  48:5
consistent 17:18
consisting 66:4
constantly 23:13
constituents 43:19
construct 50:10
construed 49:10
consultants 17:19
consultation 31:25
Consulting 16:17
consumer 57:24,
  58:2, 58:4, 58:8,
  58:9, 58:13, 58:16
contention 56:17,
  60:4
contested 20:16,
  35:25, 51:25
context 35:3, 57:19
continue 7:18, 12:3,
  43:20
Continued 2:41, 5:13
continues 11:3,
  43:18
contract 17:2, 37:3,
  37:4, 37:10,
  39:11, 39:12,
  53:9, 53:14, 54:5,
  54:8
contracts 19:8, 19:9
contractual 50:6
contradict 24:3
contradiction 47:6
contrary 55:7, 55:8,
  56:5
contributed 54:1
contribution 52:20,
  56:8, 56:9
Contributions 53:1,
  53:5, 53:20,
  54:11, 55:3,

58:13, 59:5
controlling 50:22
conversations 48:23
conversion 11:7
convince 39:6
cooperating 22:1
cooperation 23:12
Cooperativa 52:1,
  52:9, 53:22, 54:3,
  54:14, 54:25,
  55:1, 57:1, 57:10,
  57:23, 60:6, 60:11
Cooperative 3:15,
  22:16
coordinate 10:21
copy 32:3
Correct 27:8, 27:9,
  28:25, 33:2, 57:9,
  57:13
cost 13:19, 46:5,
  63:10
costs 26:14, 26:15,
  38:17
Counsel 5:5, 5:15,
  19:6, 26:3, 40:8,
  40:9, 40:15,
  41:21, 42:3,
  44:10, 45:1,
  46:16, 48:13,
  48:22, 51:23,
  61:10, 65:4
couple 7:8, 7:23,
  18:11, 18:15,
  22:5, 26:22
course 7:12, 9:24,
  55:10, 55:16, 56:2
COURTROOM 5:11,
  22:6, 48:24, 61:17
courts 65:5
cover 9:25, 21:11,
  25:2, 27:21
covered 61:25
create 15:1, 45:24,
  50:3
created 54:17,
  54:18, 55:11
creates 21:3, 41:5
creating 21:22,
  24:10
credit 22:16, 25:20,

25:22, 52:13,
  52:14, 52:19,
  53:2, 54:13, 62:16
Credito 3:16, 52:1,
  52:9, 53:22
creditor 53:21
Creditors 2:38,
  13:22, 14:19,
  14:21, 14:22,
  27:13, 27:22,
  29:2, 32:1, 32:14,
  34:1, 50:19
critical 13:19, 15:3
crude 17:12
CSR 66:12
culminate 6:23, 7:3,
  7:9, 12:17
Current 11:10,
  12:11, 13:25,
  21:17, 25:14
currently 7:22,
  9:15, 24:15
customer 50:12
customers 9:18,
  11:10, 38:12
cuts 46:10, 46:11


< D >
date 9:14, 27:16,
  33:6, 33:7, 53:25,
  64:22, 65:1
dates 27:9, 33:1
day 15:8, 26:14,
  26:19, 43:18
days 33:5, 33:7,
  61:16
de 3:15, 38:8,
  38:18, 43:14,
  52:1, 52:9, 53:22
deadline 28:24,
  33:5, 64:12, 64:13
deal 8:12, 8:22,
  11:1, 33:21
dealing 33:22
debt 6:21, 8:10,
  9:1, 9:3, 9:4,
  10:19, 10:24,
  11:1, 11:16,
  11:24, 12:9,

13:18, 14:9, 20:9,
   37:12, 39:14,
   41:3, 41:14,
   42:11, 43:3, 46:20
Debtor 1:34, 2:17,
   9:9, 9:13, 50:18,
   53:16, 53:19, 54:1
Debtors 1:18, 30:4,
   31:23, 42:7
debts 41:7, 42:6,
   51:5
December 21:10,
   23:15, 64:18
decided 60:7
decision 47:1,
   51:21, 60:10,
   60:13, 63:3, 64:1
declaratory 57:11
decrease 25:16
deductions 52:25,
   53:20
deep 26:17
deferred 16:8,
   20:19, 29:24,
   29:25
defined 41:7, 41:9,
   49:10, 56:7, 56:9
defines 41:13, 49:14
definitely 14:13
definition 23:10
definitive 12:4
delivered 11:11
demandable 43:4
demonstrated 51:13
demonstrates 44:7
denial 57:3, 57:8
denied 48:7, 51:17,
   51:20, 57:4
denies 50:21
deny 45:5
departing 65:8
deposited 63:14
deprive 43:23, 50:18
DEPUTY 61:17
describe 57:22
described 17:11,
   19:16, 44:16
design 57:15, 58:15
designated 54:11
designee 53:23

DESPINS 2:38, 33:16,
   33:17, 34:15,
   34:19, 63:7, 63:8,
   64:2, 64:6
destroys 45:3
detail 64:10
detailed 58:17
details 28:17
determination 63:22
determined 54:24
determining 35:13
devices 5:10
dialogue 35:8
difference 59:10
different 10:13,
   11:6, 19:3, 21:13,
   31:22, 42:12,
   44:11
difficult 22:22,
   22:24
difficulty 38:9
diluted 46:12
direct 45:19, 50:4,
   55:2
directly 7:1, 20:12,
   21:16, 51:9
disbursed 10:4
discipline 21:4
disclosure 8:16,
   64:23
disclosures 5:22,
   6:19
discomfort 18:19
discount 19:11
discourage 47:3
discussed 42:23,
   48:13
discussing 26:10
discussion 15:6,
   24:1, 26:19
discussions 16:22,
   18:20, 23:1
disincentive 21:3
dispute 14:21
disregard 45:16
distilled 30:25
distinguish 49:7
distributed 50:20
distribution 13:5,
   13:9, 50:18

District 1:3, 2:22,
   2:23, 49:9, 66:1,
   66:2, 66:7
divide 40:10
Docket 1:6, 1:22,
   2:4, 47:22, 51:21
document 41:11,
   64:17
documents 50:8,
   53:9, 62:11
doing 7:13, 7:14,
   62:14
dollar 34:4, 37:13,
   43:23
dollar-for-dollar
   25:20
dollars 8:9, 9:3,
   9:9, 9:11, 9:12,
   9:14, 9:18, 10:1,
   34:7, 37:12,
   41:15, 43:16,
   43:17, 43:19,
   45:23, 54:2
dollars. 34:8, 54:1
done 7:24, 11:22,
   13:22, 23:13,
   23:14, 35:6
door 39:4
down 30:25, 38:5,
   38:6
down. 62:6
drafted 62:13, 62:14
drawn 52:12
Due 13:9, 36:15,
   48:10, 51:8,
   52:16, 62:22,
   64:15
Duffey 2:45
During 9:16
duties 45:13

< E >
earmarked 56:13
Easy 33:21, 34:15,
   34:16, 35:15
ECF 30:6, 36:3,
   36:11, 52:2
economic 14:5
economical 21:21

economically 11:4
economy 34:6, 44:8
effect 26:16, 37:25,
  38:1, 38:2, 50:3,
  50:17, 54:20,
  55:12, 63:23
effective 26:18
effectuate 47:25
effectuation 50:2
efficient 21:21
efficiently 23:22,
  36:11
efforts 17:11
eight 9:2, 37:12
either 14:18, 21:7,
  23:17, 41:4, 41:5,
  45:18
Electric 1:31, 3:7,
  12:23
electrical 41:15,
  43:16, 50:12
electricity 48:3
elevate 39:19
elevation 41:10
eliminate 36:25
emphasize 9:20
employee 58:13
Employees 52:15
employment 19:19
enabled 50:11
enacted 24:8, 24:19,
  55:15
encompasses 19:15
encumbered 52:21
end 7:24, 19:23,
  26:14, 26:19,
  31:5, 35:7, 40:14
ends 19:22, 42:3
energized 11:14
enforce 27:15,
  27:23, 28:8, 43:5,
  48:14, 57:23, 58:4
engaged 35:8
engagement 19:4,
  19:13
engaging 21:16
English 32:10
ensure 29:5, 52:19
entailed 30:10
enter 28:22, 30:3,

32:19, 51:19
entered 8:7, 11:17,
  28:23
entice 52:12
entire 63:15
entities 10:17
entitled 17:4
entitlement 51:16
entity 14:1, 14:19,
  31:22, 39:13
entry 30:6, 33:13,
  47:22, 49:5, 51:21
envision 31:20
envisioning 31:7
equally 38:13
equation 45:4
equitable 36:25,
  37:3, 37:9, 39:22,
  40:17, 40:19,
  40:21, 49:21,
  49:24, 51:16
equitably 50:20
equities 39:21,
  45:7, 45:10,
  45:12, 46:6
equity 46:10, 49:1
equivalent 50:13
ergo 56:8
ERS 53:13, 53:15,
  54:5, 54:24, 55:6,
  55:25, 56:5,
  56:12, 58:2, 58:5,
  58:8, 58:19, 59:5,
  59:6, 59:8, 59:12,
  59:18, 59:21,
  59:22, 59:25,
  60:2, 62:13
Esq 2:32, 2:39, 3:4,
  3:5, 3:10, 3:13,
  3:17
ESR 52:15
essentially 27:25,
  30:15, 37:3,
  40:15, 42:3,
  42:13, 42:17,
  42:22, 43:1, 57:2
Establish 30:5,
  57:4, 60:20
established 58:18
estimate 17:17

estimation 17:10
estoppel 53:12,
  53:15, 55:7
et 1:16, 2:29, 8:23
evaluating 16:23
evaluation 5:22,
  18:5
event 11:1, 33:22,
  54:20, 55:12
events 28:1, 39:3
everyone 13:21,
  20:15, 25:23,
  25:25, 35:2, 65:10
everything 9:25
evidence 61:10
evidentiary 60:19
exactly 14:3, 25:17,
  25:24
examination 44:12
Examiner 3:19,
  15:19, 16:2,
  17:21, 18:12,
  20:3, 24:18,
  29:20, 29:21,
  29:23, 30:1
example 14:20, 19:6,
  30:20
exception 42:1
exclude 49:24
exclusion 49:21,
  50:22
exclusively 19:17
excuse 30:9
Execute 36:10,
  37:17, 39:25,
  47:21
executed 53:13
execution 37:24,
  38:1
exercise 21:4
Exhibit 17:11, 54:3
Exhibits 4:9, 53:10,
  62:12
exist 37:4, 41:1,
  45:8, 63:24
existence 51:3
exists 51:1
expand 12:5
expect 7:8, 7:14,
  11:22, 35:17,

58:16, 64:7
expectation 28:21
expectations 20:15
expected 13:15, 20:8
expects 22:18,
  22:19, 30:1
expedited 33:25
expeditiously 31:3
expend 10:8
expended 10:6, 17:17
expenditures 9:16
expenses 46:5
expensive 10:20
explain 48:7
explained 43:8
explicitly 19:8,
  19:12, 21:2, 40:20
exponential 20:5
exposures 12:9
express 55:5
expressly 39:10
extend 52:14
extended 11:20
extent 18:7, 31:17,
  50:21, 61:21
extremely 35:9


< F >
facilities 52:14
facility 9:10
fact 11:25, 18:2,
  28:7, 39:1, 40:19,
  45:1, 52:16
factor 13:20, 44:8
factors 44:7, 51:18,
  57:7, 61:13
facts 6:19, 38:5,
  44:13, 64:10
factual 6:24, 37:12,
  37:23, 38:23,
  39:1, 39:5, 44:11,
  61:11, 61:12
fade 7:2
failed 57:4
fails 42:25
failure 43:18
fairly 45:4
fairness 39:22, 46:2
fall 19:19, 20:1

falling 19:24
far 12:22, 20:3
Farr 29:13
favor 46:11, 57:8
favors 46:25
feasible 49:22
feature 23:16
Federal 9:24, 10:1,
  10:3, 10:6, 10:9,
  25:14, 41:4
Fee 3:19, 15:19,
  16:1, 16:3, 16:18,
  17:1, 17:21,
  18:12, 18:20,
  19:24, 20:2, 22:4,
  23:5, 23:8, 24:17,
  24:18, 25:6, 26:1,
  29:20, 29:21,
  29:22, 29:23, 30:1
fee-related 22:8
feel 17:12
feels 20:12, 20:25
fees 16:24, 18:6,
  18:8, 20:23
felt 47:7
few 5:21, 7:23,
  12:1, 18:13
fide 53:17
fifth 43:6
FIGUEROA 3:13, 36:5,
  36:6, 36:7, 37:8,
  38:22, 40:2,
  47:10, 47:12
File 23:5, 27:16,
  29:3, 29:7, 30:16,
  31:19, 32:1, 40:8,
  47:2, 62:5
filed 8:15, 12:2,
  13:10, 16:3,
  17:23, 27:13,
  27:16, 27:21,
  27:24, 28:7, 28:8,
  28:19, 30:9,
  30:20, 30:22,
  30:24, 32:15,
  32:19, 34:13,
  35:7, 36:14,
  36:19, 55:1, 57:1,
  61:14
filing 16:5, 31:7,

32:11, 36:16,
  55:16, 62:23
final 12:19, 15:13,
  33:12, 51:25
finalize 35:6
Finally 44:6, 46:24,
  50:24
Financial 1:9, 1:25,
  2:7, 3:2, 9:4,
  50:15, 52:13
financially 38:8,
  38:17
financing 9:19,
  55:25
find 43:10, 44:4,
  44:19, 55:4, 55:10
finding 60:21, 61:11
findings 6:24
finds 37:18, 37:19,
  37:23, 49:16
FINGER 3:8, 40:4,
  40:6, 40:13,
  44:20, 44:21
finishing 22:20
firm 5:23, 5:25,
  18:24, 24:12,
  24:13, 25:25,
  44:24
firms 19:21, 20:2,
  24:13, 26:15
First 5:21, 6:14,
  9:5, 18:13, 19:18,
  19:25, 24:9,
  40:19, 41:7, 43:1,
  43:15, 45:16,
  48:8, 48:10, 57:21
Fiscal 3:1, 12:24,
  13:1, 19:22, 28:6
five 8:9
five-part 42:24
flat 17:1, 19:6
fleet 11:3
focus 36:12, 38:6
focused 62:1
following 12:25,
  19:11, 54:18
follows 8:6, 54:11
footnote 60:24
force 54:19, 55:12
foresight 23:19

form 15:12, 15:13,
   23:17, 31:19,
   41:15
formally 24:21
Forman 29:16
formerly 29:24
forth 46:21
forward 8:8, 10:11,
   10:25, 20:25,
   21:17, 21:23,
   39:4, 39:6, 40:23,
   44:5, 65:11
fossil 10:20
foundation 17:5
four 8:9
fourth 23:5
frame 7:20, 34:13,
   35:10
frankly 22:21
fuel 14:4
fuels 10:20, 11:7
full 50:15, 54:19,
   55:12
fully 11:15, 19:24,
   47:15
fund 59:8, 59:19,
   59:22, 60:2
fundamental 13:20,
   45:14, 47:5
fundamentally 46:1,
   51:2
funds 10:7, 10:9,
   52:11, 52:25,
   54:24, 59:12,
   59:13, 60:23,
   62:17, 63:13
future 13:20


< G >
Garcia 16:6
gas 11:8
gave 64:13
GDB 8:8
general 17:20,
   37:16, 59:8,
   59:12, 59:19,
   59:22, 60:2
generally 17:18,
   63:19

generate 14:4
generation 10:13,
   10:19, 11:3, 11:6,
   11:10
generic 22:13
gets 23:6
getting 22:22
give 12:21, 15:9,
   18:25, 25:3,
   38:20, 46:13,
   64:12
given 18:7, 20:8,
   22:14, 26:22, 34:4
gives 63:17
giving 26:6
glad 21:15
global 34:24
goal 11:5, 23:18,
   29:9, 35:7
Godfrey 16:1, 22:12
governing 50:8
Government 9:24,
   10:1, 10:6, 13:21,
   15:7, 17:2, 25:1,
   26:3
governmental 64:8
grab 46:9
Grain 3:13, 36:2,
   36:8, 47:20
grant 37:3, 52:13
granted 54:3, 56:2,
   57:18
granting 57:17
grateful 5:13
great 26:13
greater 30:16
Greenberg 40:6
grid 11:5, 11:11
grossed 26:15
grounds 37:23, 39:5
Group 11:19, 12:1,
   12:5, 12:8
groups 45:18
growth 13:19, 13:20,
   20:7, 21:24
GSA 17:2, 17:4
guaranteed 54:6
guarantees 53:15
guaranty 53:21
guesswork 15:10

guidance 18:3


< H >
Hampshire 40:20
hand 9:10, 14:22
handled 14:10, 31:18
handles 8:8
handling 44:10
happen 61:22
happened 20:1, 61:23
happening 10:22,
   24:24
happens 24:12, 26:19
happenstance 50:11
happy 6:14, 7:17,
   17:7, 17:24,
   27:20, 33:19
hard 12:15, 12:20,
   20:20, 20:21
hardly 55:4
harmless 37:24
harms 43:12, 44:2
Hastings 33:18
Haynes 3:9
he'll 20:11, 40:11
head 62:6
hear 6:6, 6:8,
   21:15, 34:17,
   63:16
heard 8:16, 15:12,
   22:4, 22:8, 29:14
HEARING 2:21, 6:10,
   23:16, 25:11,
   28:2, 33:1, 33:6,
   33:7, 35:10,
   35:13, 36:13,
   64:22, 64:23, 65:1
hearings 16:22,
   24:20, 27:10, 65:7
heart 17:9, 18:3
held 27:25, 59:19,
   60:2
help 57:19
helpful 32:22
Hermann 2:32
Highways 2:13
hikes 15:5, 18:24
hindsight 23:18
Hoc 11:19, 12:1

hold 6:7, 11:23,
    48:18, 58:13, 63:1
holders 11:23, 50:16
Holdings 5:23, 6:21,
    43:23
Honorable 2:22, 66:6
hope 8:23, 12:15,
    12:16, 26:18,
    35:20
hoped 35:3, 35:5
Hopefully 20:16,
    21:8, 23:19, 31:5,
    32:17, 34:10
hoping 35:6
hourly 17:18, 19:7
hours 12:1, 17:14,
    17:17
HTA 14:12, 14:22,
    14:24, 15:2
hundred 43:22
hurricane 9:22


< I >
identification 61:23
identified 5:20
identity 51:4, 51:9
ignore 45:17
III 1:8, 14:14,
    31:23, 36:16,
    47:1, 47:4, 48:1,
    55:17, 60:7
illegally 62:18
impact 19:25, 20:3,
    20:7, 25:21
impede 26:20
implement 19:21
implications 6:19
importance 62:12
important 21:20,
    22:13, 23:7, 31:2,
    33:21, 34:9, 45:21
importantly 39:8,
    53:24
imposed 19:19, 21:2,
    39:12, 49:25
imposes 42:22
imposition 21:4
improving 13:8
inaudible 6:25

Inc. 3:13, 36:8,
    47:21
include 12:7, 16:12
included 31:9, 32:3,
    36:22
including 8:22,
    53:21
incorporated 37:15
increase 25:16,
    31:8, 52:20, 52:23
increased 15:6,
    25:2, 43:20
increases 18:20,
    19:7, 19:12,
    19:15, 19:17,
    19:25, 20:8,
    20:15, 20:17,
    21:2, 21:5, 21:11
indenture 39:11,
    39:17, 39:19
indentured 38:3
independent 50:12
independently 14:10,
    45:20
indicated 18:11,
    18:19, 32:13, 35:4
indicating 51:19
individual 31:19,
    48:17, 49:2, 49:4,
    50:7, 50:10, 51:9,
    51:13, 55:6,
    57:25, 58:12,
    58:18, 59:18,
    60:3, 60:22, 60:25
individualized 38:16
industry 13:3, 24:13
inequitable 50:9,
    50:17, 51:2
inform 62:3
information 9:6,
    24:4, 26:6, 35:12,
    61:1
informative 13:10,
    18:11, 27:21,
    28:14, 28:20,
    29:8, 62:5, 62:21,
    62:24, 64:12,
    64:15
initial 12:6
insight 18:6, 21:18,

64:9
insignificant 20:4
institutions 52:13
instructions 16:14,
    16:22
instrument 49:3
insured 12:8, 12:13
insurers 12:2, 12:7,
    12:12
integrated 13:14
intend 30:3, 47:1
intended 25:14
intends 21:6
intensive 39:1
intent 59:16
inter 49:11
interconnectedness
    14:21
intercreditor 49:10
interest 5:6, 7:12,
    13:3, 13:21,
    26:18, 51:8,
    53:21, 54:15,
    57:17, 57:18,
    57:22
interested 13:7
interests 26:4,
    53:19, 57:16
interim 16:3, 16:17
interposed 32:13
interrelationships
    14:11
introduce 7:11
investigate 6:18
investigation 6:23,
    61:22
investigations 18:4
investments 48:3
investors 10:23
invoked 43:13
involved 15:7
involvement 46:25
island 10:14, 11:10,
    11:12, 13:19,
    21:24
issue 13:12, 19:11,
    20:20, 25:12,
    25:21, 36:13,
    36:18, 37:19,
    38:20, 42:21,

50:24, 53:15,
   54:8, 60:7, 63:13,
   63:15, 63:18,
   63:22
issued 56:3
issuer 37:7, 49:5,
   50:8, 50:13, 50:14
issues 5:21, 19:5,
   20:16, 20:22,
   21:16, 22:4, 22:9,
   22:21, 29:7,
   33:19, 64:10
item 15:18, 16:7,
   24:1, 27:11,
   29:24, 30:4, 36:2
items 29:25
itself 36:20


< J >
January 8:24, 13:15,
   20:1, 35:18, 35:21
job 21:20
John 2:45
Jointly 1:11, 1:24,
   2:6
Juan 2:39, 5:1, 5:7,
   5:9, 64:25
Judge 2:22, 2:23,
   5:17, 15:25, 16:3,
   22:2, 66:7
judgment 57:11
judicial 44:8
juncture 22:15
June 13:3


< K >
Kahn 16:1, 22:12
Katherine 3:20,
   15:25
Katiuska 3:10
Keep 65:11
keeping 11:4, 15:4
kept 53:6, 59:23,
   63:14
Kevin 3:8, 40:6
kicked 8:13
Kim 62:1
kind 38:9

knowledge 15:8,
   24:23, 54:6
knows 8:6, 9:2,
   9:22, 10:15,
   14:20, 63:11,
   63:18
Kobre 61:25


< L >
lacking 51:10
lacks 49:17, 51:12
laid 17:24, 18:3
language 53:13,
   55:8, 56:16
large 11:14, 32:25
last 10:9, 16:4,
   20:1, 20:13
late 26:7
later 24:6, 28:22,
   29:9, 29:10,
   45:25, 46:23
Laura 2:22, 66:7
Law 40:18, 40:24,
   41:1, 41:4, 42:20,
   44:24, 49:1, 49:4,
   52:11, 52:16,
   52:17, 52:18,
   52:23, 54:9,
   55:14, 55:19,
   56:4, 56:6, 56:11,
   57:16, 62:11,
   62:14, 63:13
lead 24:5
least 7:8, 12:17,
   23:16, 25:24,
   41:24, 42:25
leave 29:20
leaving 9:13
Lecaroz 2:35
lectern 6:8
led 8:14, 18:5
legal 5:25, 24:13,
   39:6, 50:5, 51:14,
   60:7
legally 38:15
legislation 8:23,
   13:14, 24:7,
   24:19, 59:7, 59:16
legislators 24:22

less 8:16, 10:20,
   24:14, 48:18
level 47:6, 64:9
levels 11:12, 43:13
liability 31:22,
   36:17
lien 54:17, 54:18,
   54:23, 55:11
lift 44:7, 44:18
lifted 60:17
Lifting 60:9
light 38:25, 45:6,
   46:15, 51:6
likelihood 24:8
likely 14:13, 24:5,
   24:25
Likewise 31:16
limitations 49:25
limited 39:23, 60:6
limits 21:1, 49:14,
   52:23
line 29:1
lines 11:15
liquid 11:8
list 16:8, 16:10,
   20:19, 29:25
listed 29:22, 64:17
listened 47:17
litigation 64:11
little 19:1, 22:23,
   25:21, 43:21
live 33:8
LLC 49:8
LLP 44:24
loan 9:10, 9:12,
   9:13, 53:2, 54:12,
   54:15, 55:13,
   56:15
loans 52:22, 54:3,
   54:8, 54:20,
   54:25, 55:18,
   55:24, 56:1
lodge 47:7
long 29:9
longer 22:23
look 5:25, 21:17,
   23:8
looking 24:18, 31:8
lose 61:15
lot 63:17

lots 9:23
LPRA 42:22
Luc 2:38, 33:17,
   63:8
Lugo 3:10
Luis 3:4, 56:23
LUSKIN 5:25, 6:1,
   6:5, 6:6, 6:8,
   6:12, 7:5, 7:16,
   7:22, 7:25, 8:1


< M >
main 33:22, 60:4
maintained 49:2
maintaining 11:5
major 8:8, 8:25,
   9:1, 10:6, 14:9,
   29:6, 46:1
manage 38:19
Management 1:10,
   1:26, 2:8
mandatory 43:12
Maria 3:13, 36:7
MARINI 3:4, 56:21,
   56:23, 57:13,
   57:21, 58:11,
   58:17, 58:23,
   59:1, 59:15,
   59:25, 61:3, 61:5,
   61:19, 62:2, 62:6,
   62:8
market 13:2, 17:20,
   19:21, 21:11
Martin 2:29, 5:18
Maslon 44:24
massive 23:20, 23:21
material 25:23
matter 6:18, 7:12,
   8:25, 10:23,
   12:18, 26:13,
   27:25, 36:13,
   37:22, 47:12,
   51:25, 52:16,
   62:1, 62:19, 63:1,
   63:17
matters 5:24, 8:25,
   18:12, 35:11,
   35:25, 64:17
maximized 21:21

Mckinsey 5:22, 5:23,
   6:20, 16:17,
   16:24, 17:5,
   17:13, 17:23
mean 55:5
meaningless 34:5
means 22:22, 51:4
measures 21:19
meet 39:5
meeting 11:25
Mellon 31:14
members 5:6
mention 33:20
mentioned 7:19,
   36:11
Mercedes 36:7
mere 51:4
merits 56:18, 63:12
met 42:23, 43:2
method 10:19
methodology 16:23
mic 6:9
Michael 6:1
microphone 7:2, 7:17
mid 13:3
milestones 13:1
Milian 16:6
million 9:9, 9:11,
   9:12, 9:14, 9:18,
   37:13, 41:15,
   43:15, 43:18,
   45:22
mind 11:4, 15:4,
   33:12, 38:19
minimis 38:8, 38:18,
   43:14
minimize 20:16
minute 6:7
minutes 40:11
model 19:11
Modification 8:8
Modifications 8:5,
   32:4, 33:11
moment 20:18
Monday 27:20
money 10:3, 10:5,
   25:12, 45:9, 56:12
monoline 12:2, 12:12
monolines 12:7
Monsita 2:35

month 9:17
months 7:8, 7:23,
   12:18, 23:9
MORGADE 3:13, 36:5,
   36:6, 36:7, 37:8,
   38:22, 40:2,
   47:10, 47:12
morning 5:5, 5:17,
   6:5, 6:11, 6:12,
   15:24, 15:25,
   22:10, 22:11,
   33:17, 36:5, 36:7,
   40:4, 40:5, 52:6,
   52:7, 56:21, 56:22
mortgage 54:20
motions 18:11,
   62:13, 63:10
motive 52:18
motives 52:17
Movant 36:9, 41:5,
   42:2, 42:25, 45:1,
   46:11, 46:16,
   48:2, 48:9, 48:13,
   49:7, 49:17,
   49:22, 49:24,
   50:1, 50:3, 50:10,
   50:22, 50:25,
   51:12, 57:4
move 14:1, 33:5,
   35:25, 40:23,
   44:4, 63:24, 65:10
moves 36:24
moving 10:11, 16:9,
   27:7
MS 2:35, 3:3, 3:5,
   3:10, 3:13, 3:20,
   15:24, 15:25,
   16:21, 18:9,
   18:16, 18:18,
   18:21, 18:23,
   19:2, 20:7, 22:2,
   23:10, 23:15,
   29:19, 29:24,
   34:25, 36:5, 36:6,
   37:8, 38:22, 40:2,
   47:10, 47:12
multiple 31:7, 31:14
multiples 30:23,
   31:11
Muniz 56:24

mutual 42:8
mutuality 41:3,
   41:7, 42:5, 42:19,
   42:22, 43:1, 45:3,
   50:24, 51:1, 51:3
myself 7:11, 46:9

< N >
name 36:7, 48:20
names 22:5
Nathan 3:9
National 2:43,
   36:19, 44:24
natural 11:8
nature 16:24, 18:4,
   18:7, 23:1, 32:8,
   46:17, 46:19,
   57:15, 60:20
near 9:20
nearly 14:15
necessarily 15:3,
   46:18, 51:3
necessary 21:8,
   23:17, 46:15,
   46:20, 52:20
need 6:6, 7:1,
   10:24, 15:1,
   17:13, 21:2,
   23:21, 30:24,
   34:7, 35:25,
   43:17, 46:22,
   48:23, 51:17,
   57:14, 59:1
needed 23:21, 29:20
needs 64:19
neglected 29:19
negotiated 17:3,
   21:17
negotiation 27:17
negotiations 11:21,
   14:18, 15:3,
   22:22, 22:23
net 24:25, 25:16
New 2:31, 5:7, 5:12,
   6:1, 12:1, 22:5,
   22:8, 24:1, 24:4,
   26:24, 27:2,
   29:13, 29:14,
   31:13, 40:20,

49:9, 56:6, 56:7,
   64:24, 65:3, 65:6
news 15:15
next 8:17, 8:25,
   9:1, 15:18, 22:4,
   29:3, 30:4, 36:2,
   42:24, 64:22, 65:1
nine 9:3, 40:10
no-action 36:21,
   37:1, 37:10,
   37:19, 37:20,
   39:10, 41:21,
   42:1, 42:3, 43:2,
   43:3, 45:2, 48:12,
   48:17, 48:25,
   49:19, 49:20,
   50:1, 50:22, 51:6
No. 1:6, 1:22, 2:4,
   22:9, 24:23
nobody 58:21
Nodding 62:6
noncontractual 50:4
None 4:5, 4:11,
   64:21
nonrecoursed 42:16
nonsubstantive 32:8
nontimekeeping 16:25
note 23:7, 46:16
noted 40:8
notes 26:22
noteworthy 22:20
Nothing 8:22, 24:2,
   29:16, 29:17,
   31:17, 44:7, 49:3
Notice 28:20, 30:10,
   32:1, 32:10,
   32:15, 32:20,
   34:13
notices 32:9
noticing 32:25
notification 53:25
notified 53:18
November 8:18, 31:6,
   64:15, 64:22
Number 17:10, 29:25,
   30:6, 30:25, 31:1,
   31:8, 36:3, 36:11,
   47:22, 51:21,
   52:3, 52:11,
   53:18, 53:24

< O >
object 28:10
Objection 21:7,
   23:18, 30:5,
   30:14, 31:9,
   31:19, 32:4,
   32:13, 40:8, 47:2,
   47:8, 55:5, 56:6,
   57:1, 57:2, 60:18,
   61:6
objections 23:2,
   30:11, 30:16,
   31:8, 31:19,
   32:25, 36:23,
   55:15
objectors 36:20,
   36:21
obligation 41:16,
   41:17, 42:10
obligations 42:9
obligee 51:5, 51:10
obligor 51:5, 51:10
observation 22:14
observations 17:21
observing 5:7
obtain 50:13
Obviously 10:6,
   12:7, 24:17, 31:2,
   35:3, 37:6, 45:8,
   46:10
occur 28:1, 28:8
occurred 24:2
October 9:17
offered 4:5, 4:11
offers 49:22
offhand 63:23
Official 2:37, 66:13
offset 25:1, 25:15
often 34:2
Okay 6:3, 6:12,
   18:16
Omni 35:18, 64:18
Omnibus 2:21, 30:5,
   30:16, 31:7, 31:9,
   31:25, 32:25,
   33:1, 33:6, 33:7,
   65:1
once 15:2, 59:5

One 10:18, 12:2,
  14:17, 14:22,
  16:5, 16:13, 24:1,
  28:22, 32:22,
  37:13, 39:4,
  44:19, 46:11,
  53:14, 54:25,
  55:19, 55:23, 57:3
one-off 31:18, 38:16
ones 34:16, 34:17
ongoing 14:18, 15:3,
  18:20, 59:5,
  59:17, 61:22, 65:6
open 39:3
operate 43:20
operating 9:8, 13:8
operation 13:4
operational 9:15,
  52:19
operations 9:16,
  9:20, 9:21, 10:11
Operative 29:22,
  48:11, 49:13,
  50:23
opportunity 28:13,
  37:17
oppose 32:7
opposed 28:20
oppositions 36:18
oral 47:18, 51:21
Order 8:7, 16:11,
  27:14, 30:2, 30:3,
  32:3, 32:16,
  32:19, 32:21,
  33:12, 36:10,
  36:11, 36:14,
  50:1, 51:19
Ordered 29:1
originally 16:12
originating 54:12
os 3:10
Others 14:12, 19:8,
  52:17
otherwise 10:8,
  28:10, 29:2,
  35:12, 50:20
out-of-pocket 26:15
out-of-state 25:15
outset 25:4
outside 24:11,

24:13, 25:8, 48:24
outstanding 11:24,
  41:25, 48:19
overarching 11:5
Oversight 1:9, 1:25,
  2:7, 5:15, 5:18,
  5:24, 11:17, 17:3,
  19:6, 26:25,
  27:18, 33:24, 34:9
overstate 62:12
owe 41:16
owed 36:17, 41:15,
  42:11, 45:22, 48:3
owes 41:14, 41:17,
  43:15
own 6:24, 24:12,
  48:20, 55:25


< P >
P3 13:2, 13:6,
  13:12, 13:25
PAGE 4:3
pages 66:4
paid 9:11
Pan 3:12, 36:2,
  36:8, 36:9, 36:12,
  36:14, 36:17,
  36:24, 36:25,
  37:8, 37:11,
  37:16, 37:21,
  39:7, 39:8, 39:12,
  39:22, 39:25,
  40:16, 40:22,
  41:14, 41:16,
  42:11, 43:4,
  43:15, 45:10,
  47:20
papers 43:8, 46:19,
  58:18, 59:4
paperwork 35:14
paragraph 55:5, 56:6
part 15:6, 24:24,
  42:10, 58:2, 59:7,
  59:21, 59:25,
  60:7, 60:8, 60:15
participant 52:21,
  52:24, 53:5, 53:6,
  53:16, 53:17,
  53:19, 54:12

participants 5:8,
  52:14, 52:15,
  53:12, 55:3, 56:1,
  56:7
participating 47:3
particular 6:18,
  7:20, 38:7, 38:23,
  42:1, 47:2, 64:8,
  65:5
particularly 43:22
parties 5:6, 7:11,
  7:14, 11:21, 13:7,
  35:11, 41:8,
  41:13, 41:20,
  42:5, 42:8, 44:14,
  48:6, 54:21, 64:7,
  64:8
Partnership 13:2
parts 10:13
party 12:12, 37:4,
  37:5, 37:7, 43:7,
  62:22
Paul 33:18
pay 14:6, 51:7
PAYGO 55:20, 55:22,
  57:16, 59:7, 59:16
payment 9:12, 42:14,
  50:4, 50:14,
  50:16, 56:15
payroll 52:25
payrolls 55:3
PAZ 3:17, 52:4,
  52:5, 52:8, 53:8,
  55:21, 56:20
PBA 14:12
pending 16:18, 28:1
pension 57:25, 58:4,
  58:7, 60:5, 60:12,
  60:14
pensioner 58:16
pensioners 53:11
people 13:21, 18:13,
  21:3, 22:5, 26:22
percent 11:9, 11:11,
  11:12, 11:13,
  11:14, 24:10,
  24:14, 25:5, 25:7,
  41:24, 48:18,
  50:14
percentage 52:20

performed 18:8
perhaps 34:20, 46:1
period 16:4, 16:16,
   16:18, 19:24,
   22:21, 27:17,
   30:10
permeates 63:15
permission 16:11,
   42:20
permissive 43:11
permit 40:22, 41:22,
   42:4, 44:3, 44:4,
   44:18
permits 42:21
permitted 43:4
person 6:14, 16:2,
   17:14, 35:13,
   35:15
personal 15:7,
   26:17, 52:22,
   54:20
perspective 25:3,
   45:10, 45:12
pertains 24:1
pervasive 63:22
petition 55:16
phase 14:2
PHV 2:29, 2:30,
   2:38, 2:44, 2:45,
   3:3, 3:8, 3:9,
   3:19, 3:20
physical 13:17
Pietrantoni 56:23
pivotal 36:13,
   36:18, 37:18
place 11:20, 20:14,
   21:19, 29:9,
   48:10, 56:2, 64:24
Plan 8:14, 12:19,
   12:24, 13:1,
   13:14, 27:8, 28:4,
   28:6, 28:10, 31:5,
   34:2, 35:4, 56:8,
   57:15, 58:15,
   58:20, 58:21,
   60:8, 60:15, 61:21
planning 27:16
plans 8:4, 15:2
platform 21:22
pleadings 29:3

please 62:5
pledged 46:2, 46:3,
   46:4, 46:8
plus 16:13
podium 27:3, 33:16
point 24:22, 28:15,
   46:24, 55:17
points 23:16
policies 6:25
portion 6:2, 29:20
position 9:7, 40:2,
   46:17, 46:21,
   63:12
possession 9:10,
   9:13
possibility 32:6,
   38:11
possible 7:24, 11:4,
   12:20, 12:21,
   13:22, 15:11,
   15:14, 31:4,
   38:15, 59:2
possibly 32:12
posted 13:6
potential 20:5,
   60:12
Power 1:32, 3:7,
   11:9, 11:11,
   13:20, 14:4,
   36:17, 37:3, 48:9
powers 36:25, 37:10,
   49:4, 49:14, 49:24
practical 10:23,
   50:13
practice 19:18
PRASA 14:12
precedential 49:23
predict 12:15
preliminary 11:18
prepare 10:24
prepared 6:2, 61:2
preparing 65:7
prepetition 36:15,
   36:16, 39:14,
   41:16, 43:16,
   48:3, 55:18
present 49:18
presentations 51:24
presented 40:15,
   47:4, 51:11

presenting 57:10
presentment 28:21
press 5:6
presumptive 20:13,
   20:14, 21:9
previews 20:2
previous 16:22
previously 30:19,
   56:2
price 17:2, 17:4
pricing 17:4, 17:5,
   19:11
principal 48:19,
   51:8, 54:15
principle 40:22,
   45:21, 45:24, 46:2
principles 5:14,
   25:15, 45:14, 47:5
prior 36:15, 57:16
private 13:4
probabilistic 15:10
probably 21:13,
   24:16
problem 63:25
problems 23:2,
   29:10, 45:25
procedural 57:9
procedure 33:20,
   33:25
Procedures 6:24,
   30:5, 30:14,
   31:25, 32:2, 32:4,
   34:24, 35:6
proceed 45:20
proceeding 7:7,
   10:18, 11:2,
   12:23, 49:6
Proceedings 3:42,
   5:12, 6:14, 26:21,
   48:1, 48:14, 49:1,
   60:8, 60:9, 64:20,
   65:13, 66:6
process 8:12, 12:22,
   13:2, 13:15,
   13:25, 22:1, 23:6,
   23:9, 28:16,
   28:18, 29:5, 34:8,
   35:9, 47:1, 60:16
processes 11:2, 20:9
produced 3:42

productive 21:22
professionals 19:3,
  19:13, 20:21,
  21:25, 22:17,
  22:19, 23:4,
  23:12, 24:17,
  24:21, 25:9,
  25:19, 26:17
proffer 61:2
progress 12:13,
  13:17
prohibits 48:17
projects 17:15
PROMESA 37:15,
  39:16, 48:2
promotion 18:25
promptly 30:2
prone 14:13
Proof 46:22, 55:1
proper 51:15
property 50:18, 56:8
proposal 8:4, 12:11,
  13:13, 21:10
proposals 10:12,
  13:24, 25:6
propose 14:3, 15:1,
  20:14, 26:1, 56:11
Proposed 8:14, 8:15,
  16:11, 30:2,
  30:14, 32:3,
  32:16, 33:12,
  34:17, 38:7,
  44:10, 50:10,
  64:23
prorata 41:19, 44:1
Proskauer 5:18,
  5:23, 27:5, 30:8
prospect 7:20
prospective 21:10,
  23:12
provide 14:20, 19:7,
  24:14, 37:16,
  43:9, 43:18, 55:25
provided 29:1,
  30:10, 32:10
providers 18:22
provides 27:25
providing 24:15,
  51:7
provision 28:5,

39:20, 40:18,
  41:4, 48:17, 51:6
provisions 12:3,
  28:23, 37:16,
  41:12, 49:16
Public 5:6, 6:21,
  6:23, 7:3, 7:7,
  7:9, 40:19
Public-private 13:1
publicly 24:21
PUERTO 1:3, 1:11,
  1:16, 1:27, 1:31,
  2:9, 2:13, 2:29,
  3:1, 3:6, 5:1,
  6:21, 21:22, 24:8,
  24:11, 25:5, 25:8,
  34:6, 42:20,
  53:17, 54:14,
  65:2, 65:6, 65:11,
  66:2
pull 15:11
purpose 52:18
purposes 45:3
pursuant 48:1,
  54:21, 57:17,
  62:14
pursue 50:1, 61:24
pursued 61:13
pursuing 11:6, 48:19
put 17:14, 20:14,
  21:19, 40:14,
  45:23, 54:7, 60:17


< Q >
Qualifications 13:6,
  13:8, 13:24
qualified 13:13
Qualifying 8:5, 8:7
question 32:22,
  32:24, 38:7, 48:8
questions 7:16,
  17:7, 17:24,
  18:10, 18:15
quickly 13:22
QUILICHINI 3:17,
  52:4, 52:5, 52:8,
  53:8, 55:21,
  56:20, 62:9,
  62:10, 62:25, 63:5

quite 17:13, 22:13,
  22:21, 32:12,
  32:22


< R >
raised 26:6
rare 26:8
rate 17:18, 19:7,
  19:12, 19:25,
  20:7, 20:15,
  20:17, 21:1, 21:4,
  21:10, 56:10
rates 15:6, 18:25,
  25:2
Rather 24:6, 28:22,
  29:8, 29:10, 32:8,
  46:11, 51:8
rationale 38:13
Re 1:6, 1:22, 2:4,
  49:7
read 47:16
real 26:14
really 7:10, 7:23,
  10:17, 12:20,
  15:10, 19:25,
  30:14, 30:24,
  31:22, 33:22,
  37:25, 38:22,
  38:25, 39:11,
  45:14, 45:23,
  46:14, 47:4
reason 31:14
reasonableness 16:23
reasoning 17:23
reasons 42:8, 48:6,
  51:20, 60:17,
  63:10
recalls 30:18
recategorizes 42:17
receipts 9:15, 41:19
receive 30:11, 38:1
received 9:6, 63:3,
  63:4
receiver 12:3, 12:12
recent 5:22, 6:17,
  6:19, 12:25
recognition 51:15
recommendations
  16:15

recommended 16:12,
    29:21
recommending 16:4,
    17:22
record 47:19, 51:20,
    60:20, 61:7
recorded 3:42
recording 5:11
recourse 42:14,
    42:18
recoveries 46:4
recovery 43:22,
    43:25
reduction 25:23
reenergize 13:19
refer 47:22, 53:9
referenced 41:21
referred 6:16,
    27:15, 29:24,
    55:20
referring 27:9,
    48:17, 53:16
regard 27:1, 38:21
regarding 5:10,
    33:20, 37:24
Region 2:35
register 31:15
rejected 40:20
relate 31:22, 64:10
related 13:25, 18:25
relation 26:23
relationships 50:12
relatively 35:14,
    63:16
reliability 12:20
Relief 30:12, 36:3,
    36:9, 39:22,
    43:11, 47:21,
    47:24, 50:7, 50:8,
    50:17, 51:16, 52:1
rely 43:20
remain 54:19, 55:12
remaining 59:7
remains 11:20
remark 63:23
remarks 23:11,
    47:11, 62:9, 64:19
remedies 48:11,
    48:20, 57:10
remedy 51:13, 51:16

remind 48:22
reminder 5:10
remove 31:3
removed 32:6
repair 9:23, 10:7
repay 41:17, 42:10
replacement 9:23,
    10:7
reply 33:5, 40:16,
    47:10, 62:9
report 5:16, 5:20,
    5:21, 6:3, 6:23,
    7:4, 7:7, 7:9,
    7:10, 7:18, 8:3,
    8:5, 9:1, 9:5,
    15:19, 16:3, 16:5,
    16:10, 16:16,
    17:6, 17:11,
    17:12, 17:24,
    18:4, 18:19, 20:2,
    22:14, 23:11,
    27:20, 29:23
reported 30:18,
    57:23
Reporter 66:13
reports 26:25, 32:11
representative 1:13,
    1:29, 2:11
representatives 9:7
represented 62:16
represents 5:23,
    50:14
Request 5:20, 12:17,
    13:6, 13:12, 18:2,
    25:19, 28:19,
    28:21, 32:22,
    33:4, 36:10,
    36:14, 39:6,
    39:23, 42:13,
    44:13, 45:7, 51:15
requested 30:12,
    38:24
requesting 37:9,
    37:11, 39:13
requests 10:12
require 9:19, 21:13,
    29:2, 44:12, 61:9
required 35:12,
    54:13, 59:2, 61:21
requirement 41:6,

42:22, 43:2, 43:6,
    45:17, 50:25, 51:3
requirements 41:2,
    43:1, 48:21
requires 9:10, 41:3,
    44:14, 49:1
resiliency 11:5
resolution 20:23,
    46:20, 60:9, 60:16
resolve 32:14,
    33:19, 38:25
resolved 16:7,
    16:10, 34:5
resolves 51:21
resource 13:14
resources 11:7,
    21:21, 21:23,
    23:20, 23:22
respect 11:16,
    22:25, 27:7, 28:6,
    31:13, 32:18,
    34:24, 44:6,
    46:17, 46:19,
    46:21, 49:15
respective 19:4
respects 10:3
respond 6:2, 62:20
response 62:24
responses 10:12,
    13:9
responsible 61:23
rest 56:17
restating 62:11
restored 11:9
restructure 8:11
Restructuring 9:1,
    10:16, 11:16,
    11:18, 12:10,
    13:18, 20:9
restructurings
    10:18, 14:10,
    15:12
result 24:25
resulted 8:12, 17:11
results 21:17
retained 17:1
retention 6:17,
    43:7, 43:9
Retirement 52:15,
    53:17, 57:25,

58:4, 58:7, 58:18,
  59:3
retrospective 23:8
revenues 14:23,
  25:1, 25:16,
  43:20, 46:3, 46:4,
  46:8
review 22:21, 23:6,
  28:14, 38:23,
  39:1, 44:12
reviewed 12:11,
  13:25
reviewing 10:12,
  19:14, 28:16,
  28:18, 29:5
Revised 32:1, 32:19,
  32:21
revision 50:6
rewrite 37:3, 37:10
RFQ 13:7, 13:10
RICO 1:3, 1:11,
  1:16, 1:27, 1:31,
  2:9, 2:13, 2:29,
  3:1, 3:6, 5:1,
  6:21, 21:22, 24:8,
  24:11, 25:6, 25:8,
  34:6, 42:20,
  53:17, 54:14,
  65:2, 65:6, 65:11,
  66:2
rights 39:9, 41:9,
  41:13, 43:7, 43:9,
  45:19, 47:6,
  48:11, 49:11,
  49:14, 56:8, 58:2,
  58:7, 59:9, 60:5,
  60:6, 60:14
risk 45:24
Rivero 3:5
Roads 49:8
Rose 5:18, 27:5,
  30:8, 47:6
ROSEN 2:30, 27:4,
  27:5, 28:25,
  29:11, 29:15,
  30:7, 33:3, 33:9,
  33:11, 33:15,
  34:20, 34:23,
  35:20, 35:23
RSA 11:18, 11:21,

12:6, 12:18
rubric 46:6
Rule 30:15
rules 5:10, 45:23
ruling 16:14, 47:18
run 11:3, 42:9


< S >
S/ 66:11
sad 24:24
safe 65:8
San 5:1, 5:7, 5:9,
  64:24
satisfied 23:1
satisfy 41:5, 42:25
save 31:22
saved 44:9
savings 53:6, 54:13
saying 23:13, 29:20,
  46:7, 63:13
says 53:25, 55:10,
  56:5, 56:7, 60:24
scenario 37:12
schedule 12:23,
  17:4, 29:23
scheduled 33:1,
  64:16, 64:22
Scheduling 27:14
scheme 38:8
se 49:11
second 23:6, 46:1,
  58:24, 61:3
Section 37:21, 41:2,
  41:22, 42:15,
  42:19, 42:24,
  43:8, 47:25, 48:2,
  48:16, 49:17,
  50:25, 54:10,
  54:16, 54:19,
  54:22, 55:9,
  55:10, 55:11
sector 12:23
secure 52:22
secured 42:10, 57:24
Security 5:22,
  57:17, 57:18
Seeing 64:21
seek 11:22, 51:12
seeking 13:13,

26:15, 45:15
seeks 47:24, 50:22
seen 19:15, 19:25
segments 9:5
segregated 59:13,
  59:18, 59:20,
  60:23, 62:17
segregation 60:1,
  60:3, 61:21
Seniority 18:25,
  19:16, 21:12
sense 10:8, 12:21,
  25:3, 34:12
separate 53:5, 59:23
separately 53:5
seriously 7:13
serve 9:16
Service 11:15,
  18:22, 36:17,
  40:20, 41:15,
  43:16, 50:12
services 24:14
session 48:22
set 23:5, 35:9,
  41:14, 46:21,
  48:2, 51:5, 56:13,
  59:3
setoff 40:21, 42:17,
  43:11
settle 32:11
settled 27:23
settlement 38:7
seven 33:7
several 9:3, 10:12,
  11:20
shall 54:19, 55:11,
  56:2, 56:8, 63:13
share 41:19, 43:25,
  46:5
shift 60:9
shoes 58:3
shortcut 45:17
show 53:9
shown 54:3
side 64:8, 65:10
sign 29:6
significant 9:24,
  11:23, 12:8, 12:9,
  13:3, 16:19,
  43:13, 44:2

significantly 12:2
similar 24:13
similarly 37:5,
   49:11
simple 45:4
simply 24:4, 39:24,
   44:13, 45:6
simultaneous 13:17
simultaneously
   10:18, 11:2
single 14:17, 24:9,
   41:23, 50:7
sir 56:19
sit 38:4
sitting 34:25
situated 37:5
situation 38:15,
   38:16, 61:12
situations 14:17
six 40:11
slash 27:13, 27:18,
   28:9, 29:2
slight 32:4
slightly 21:13
small 35:14, 45:8,
   63:16
so-called 14:23
solicitation 31:4
solvency 52:19
somebody 45:22, 46:7
somehow 10:25
someone 22:8, 27:2,
   29:13
somewhat 10:21
Sonnax 51:18, 57:6,
   57:7, 57:20, 61:13
soon 12:19, 16:14,
   28:23, 34:10
sooner 28:22, 29:8,
   29:10
Sorry 52:2, 61:15
sorts 64:10
sought 50:2
sound 6:7
sounding 13:2
Southern 49:9
Spanish 32:10
speakers 18:11
specific 14:16,
   52:16, 52:18,

54:7, 54:9, 54:24,
   55:7, 55:8, 56:11,
   56:15, 64:13
Specifically 28:5,
   30:13, 30:18,
   31:4, 31:24, 32:6,
   48:12, 49:20,
   52:17, 53:9,
   53:10, 53:14,
   53:25, 54:2, 54:5,
   54:10, 54:17,
   54:18, 55:15,
   55:22, 56:1
spend 34:7
spent 15:8, 17:10,
   24:11, 25:5, 25:8,
   44:15
Stadler 3:20, 15:24,
   15:25, 16:21,
   18:9, 18:16,
   18:18, 18:21,
   18:23, 19:2, 20:7,
   22:2, 23:10,
   23:15, 29:19,
   29:24
staff 65:5, 65:6
stage 59:4
standard 39:5, 39:12
standards 20:13,
   21:9
standing 47:3, 48:8,
   48:14, 49:17,
   51:12
start 22:13
starting 7:2, 24:10
state 41:4, 60:10
stated 51:20, 54:6
statement 8:16,
   64:23
statements 46:18
States 1:1, 2:23,
   53:14, 54:10,
   54:17, 54:18,
   55:6, 55:22, 56:1,
   66:7
stating 21:3, 52:17
status 5:16, 5:20,
   6:3, 7:18, 8:3,
   26:23, 26:25
Statute 41:11, 43:6,

54:16, 55:20,
   55:22, 56:3,
   56:14, 59:2
statutes 42:21, 64:4
statutory 39:15,
   39:20, 49:22,
   52:11, 54:17,
   54:18, 54:23,
   55:8, 55:11, 56:15
Stay 36:3, 36:10,
   44:6, 44:8, 44:18,
   47:21, 47:24,
   51:17, 52:1, 60:9,
   60:16, 63:10
stayed 63:9
stem 36:21
stems 36:18
stenography 3:42
step 8:8, 47:2
stepping 58:3
steps 61:24
Stern 5:25
stipulation 8:13,
   27:22, 28:14,
   28:17, 29:1
streamline 35:10
streamlined 34:1
strongly 20:12,
   20:25
structural 21:18
structure 34:17,
   48:10
studying 25:18
submissions 47:16,
   48:6, 63:2, 63:4
submit 13:7, 33:12,
   61:6
submitted 47:13,
   47:15, 57:3
submitting 16:11,
   30:2
subset 14:19
substance 7:10
substantial 10:9
substantive 29:7,
   32:7, 41:3, 42:20
substations 11:13
successfully 16:18
sufficient 9:16
suggest 26:1

suggestion 17:8
summary 12:25
summer 15:13
superior 58:7
supplement 27:5,
   61:7
supplemental 28:6,
   61:9, 61:14, 63:4,
   64:13, 64:14
Support 11:18, 18:6,
   49:23
supporting 13:14
supposed 46:4
surprise 55:5, 63:21
surprised 24:6, 26:6
suspect 24:12
Suzzanne 3:3, 56:24
Swain 2:22, 5:18,
   66:7
System 13:5, 13:9,
   52:15, 52:24,
   52:25, 53:1, 53:17


< T >
T. 2:44, 2:45
talked 20:13
tax 24:9, 24:10,
   25:1, 25:2, 25:5,
   25:7, 25:14,
   25:15, 26:16
taxes 25:15, 25:20
Taylor 2:22, 66:7
technically 17:3
telephonic 5:8
ten 19:18, 41:24,
   48:18, 55:6, 56:6
ten. 31:1
tend 19:18
tending 19:21
term 9:20
terms 8:3, 9:7,
   10:11, 14:5,
   26:15, 43:5, 51:7,
   53:23, 54:9, 64:6
test 42:24
thanks 21:25
themselves 22:17,
   22:23, 32:5, 62:15
therein 41:12

thinking 38:20
third 16:3, 22:14,
   22:21, 43:7, 54:21
though 27:11, 31:21
three 16:17, 23:9,
   42:25, 53:14,
   53:24
timekeepers 17:10
timekeeping 16:25
timeline 20:9
timely 35:5
timetable 15:9
timetables 8:4
timing 12:15, 25:12,
   25:21
tinkering 8:22
Title 1:8, 8:5,
   14:14, 31:23,
   36:16, 46:25,
   47:4, 48:1, 55:16,
   60:7
Today 36:13, 46:13,
   47:17, 51:24,
   61:15, 64:21, 65:5
together 15:12,
   65:10
toll 15:5
tomorrow 34:3, 61:15
took 17:9, 18:2
totaling 54:4
towards 8:14
track 61:15
transaction 13:4,
   26:14, 37:14,
   38:17
transactions 38:14
Transcript 3:42,
   66:4
transcription 66:5
transfer 55:12
transferred 54:21,
   59:6, 59:11,
   59:13, 59:17,
   59:24, 60:1, 62:18
transform 10:19,
   12:23
transformation
   12:22, 13:18, 14:2
translation 56:7
transmission 11:13,

11:14, 13:5, 13:9
transparent 7:7
Transportation 2:14
Traurig 40:6
travel 33:6
travels 65:8
treatment 21:10,
   21:13
trepidation 63:17
tricky 10:21
tried 16:21
true 66:5
truly 26:20
Trust 36:22, 41:9,
   41:10, 41:22,
   42:15, 43:5, 43:8,
   43:24, 45:13,
   45:15, 45:18,
   46:2, 47:5, 48:11,
   48:16, 48:25,
   49:3, 49:5, 49:18,
   49:25, 50:23, 51:6
Trustee 2:34, 31:13,
   36:19, 37:6, 38:3,
   39:11, 39:18,
   40:9, 41:18,
   41:19, 43:9,
   44:25, 45:18,
   45:19, 49:11, 51:8
try 17:9, 20:22,
   31:3
trying 8:10, 12:5,
   13:23, 23:3,
   23:11, 57:23
turn 15:19, 22:7
turning 49:20
two 8:17, 9:5,
   10:17, 10:21,
   23:4, 23:9, 23:16,
   33:5, 41:15,
   42:21, 43:15,
   43:18, 45:14,
   51:5, 53:18, 57:2
type 14:4, 25:19,
   30:24, 31:19,
   44:15, 53:6, 57:22
types 9:4, 44:11


< U >

Uhland 3:3, 34:25,
    56:24
ultimately 38:17
unanticipated 45:24
unauthorizedly 62:18
unavoidable 24:19
underlined 54:14
underlying 44:13
understand 10:2,
    22:7, 24:7, 29:5,
    39:2, 57:7, 57:14,
    57:19, 57:22,
    58:1, 58:6, 59:25,
    60:11
understanding 53:4
understates 17:14
Understood 25:13,
    64:2
undo 62:15
unfold 39:3
unfounded 51:2
uniform 19:3
uniformly 19:19
unilaterally 48:14
uninsured 11:19,
    12:6, 12:14
union 52:19, 53:2
unions 52:13, 54:13,
    62:16
United 1:1, 2:23,
    66:6
Unless 7:16, 34:4,
    41:24
unlike 10:16
unpersuasive 49:12
Unsecured 2:38,
    27:12, 27:18,
    27:21, 28:9,
    34:24, 42:12,
    60:21, 61:12
until 63:2
unusual 47:5
upcoming 27:10
updated 12:25
UPR 14:12, 14:13
user 17:4
uses 17:5
using 17:16
usual 65:2

< V >
value 36:15
variety 43:13
various 5:24, 45:19,
    57:6, 64:3
Vegabaje 3:17, 52:2,
    52:9, 53:22
vehicle 57:9
Velaz 3:5
VI 8:5, 14:14
video 6:2, 6:13,
    64:24, 65:2
view 23:7
violate 45:23
violation 49:18
vis-a-vis 49:11
visioning 14:2
voice 46:13
voluntarily 39:9,
    52:21
voluntary 53:1


< W >
waiting 34:17
waive 39:9
Walker 66:11, 66:12
wanted 7:11, 24:1,
    26:23, 27:5,
    27:11, 28:15,
    32:9, 63:19, 64:3
wants 24:3, 45:8
ways 45:24
Wednesday 61:15
week 11:25, 16:4,
    29:3, 61:15, 62:23
weekly 9:17, 11:10,
    17:15
weeks 8:17, 23:4
weigh 57:7
welcome 5:5, 18:9,
    44:21
well-documented
    43:17
well-founded 36:23
well-taken 36:23
whatever 26:19,
    59:21
whether 14:23, 19:9,

38:7, 38:9, 49:21
Whitmore 2:44,
    43:21, 44:22,
    44:23, 47:9
Williamson 3:19,
    15:20, 15:22,
    16:1, 20:11,
    20:25, 21:16,
    22:10, 22:11,
    22:12, 24:3, 29:19
willing 14:5, 14:6
Willkie 29:13
wish 65:8
wished 22:8
wishes 64:20
withholding 24:10,
    25:10, 25:11,
    25:13
within 30:10, 52:17,
    52:25, 62:23
without 21:2, 48:20,
    60:1, 60:2
withstanding 16:24,
    17:16, 49:16
WITNESSES 4:3
words 42:2
work 6:20, 7:3,
    7:21, 17:14, 18:7,
    20:22, 21:17,
    21:22, 38:2, 65:4,
    65:6
worked 16:18, 44:3
working 12:3, 15:8,
    17:19, 20:20,
    20:21, 24:11,
    26:2, 33:24, 34:9,
    34:23, 34:25,
    65:10
works 35:1
wrap-up 18:13
writings 56:18


< Y >
year 7:24, 10:10,
    19:22, 19:23,
    23:6, 35:7, 52:12,
    56:4
years 19:18
yesterday 8:7, 26:5

```
yield 7:17, 39:24
York 2:31, 5:7,
  5:12, 6:1, 12:1,
  22:5, 22:8, 26:24,
  27:2, 29:13,
  29:14, 31:14,
  49:9, 64:24, 65:3,
  65:6
```