# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. RICARDO ANTONIO ROSSELLÓ NEVARES; and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>Defendants. | Adv. Proc. No. _____ in 17 BK 3283-LTS |

## THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AGAINST THE GOVERNOR OF PUERTO RICO AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY

---

[1] The Debtors in the underlying Title III case, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**To the Honorable United States District Judge Laura Taylor Swain**:

Plaintiff the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>" or "<u>Board</u>"), for itself and as representative of the Commonwealth of Puerto Rico (the "<u>Commonwealth</u>"), hereby brings this complaint against defendants Ricardo Antonio Rosselló Nevares (the "<u>Governor</u>"), in his official capacity, and The Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>") (together, the "<u>Defendants</u>").

## NATURE OF THE ACTION

1.      This action seeking declaratory and injunctive relief is brought pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101-2241 ("<u>PROMESA</u>").

2.      Congress inserted findings into PROMESA § 405(m).  Congress found a combination of severe economic decline, operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing created a fiscal emergency in the Commonwealth rendering the government unable to provide effective services for its residents. To address these findings, Congress created the Oversight Board, and assigned to it the statutory mission of providing a "method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets," PROMESA § 101(a), primarily by controlling the review and certification of fiscal plans and annual budgets, monitoring activities of the government to ensure compliance with the fiscal plan, and controlling debt restructurings.  *See* PROMESA §§ 101(d)(1), 104(j), 108(a)(2), 201(c)(3), 201(e), 202(c)-(f), 204, 206, and 207, and Titles III and VI.

3.      Congress provided the Oversight Board would be appointed by the President of the United States and its members would be uncompensated.  PROMESA §§ 101(e), 101(g).  As such, PROMESA positioned the Oversight Board as an apolitical body to make hard and sometimes

unpopular fiscal plan and budgetary decisions which Commonwealth governments had not made, while sparing the Governor from making those decisions whenever political considerations could lead the Governor to choose otherwise.

4.    The Oversight Board brings this complaint because Defendants recently enacted a statute in a manner that violates PROMESA and that substantively undermines PROMESA's goals.    Moreover, Defendants are repeatedly failing to comply with PROMESA, thereby obstructing the Oversight Board from fulfilling its mandate, which impairs and defeats the purposes of PROMESA.

5.    Congress granted the Oversight Board powers to enforce fiscal plans, budgets, and PROMESA, and required the Governor and the Legislature of the Commonwealth (the "Legislature") to cooperate with the Oversight Board in discharging its duties under PROMESA. *See, e.g.,* PROMESA §§ 104(k), 108, 201(e)(2), 202(e)(3), 203, 204, and 207.

6.    The Legislature enacted, the Governor signed into law, and the Governor and AAFAF are in the process of implementing and enforcing, a statute designated Law 29-2019, entitled the "Law to Reduce the Administrative Burden of Municipalities" ("Law 29").    (Attached as **Exhibit 1**; Certified Translation attached as **Exhibit 2**).    Law 29 will alter, and substantially eliminate, the obligation of Puerto Rico's municipalities to reimburse the Commonwealth for hundreds of millions of dollars in pension costs for their own retirees, and will transfer those costs permanently to the Commonwealth.    Law 29 will further encumber the Commonwealth's finances by exempting municipalities from paying their contribution to the Commonwealth's health insurance program managed by the Puerto Rico Health Insurance Administration ("ASES" by its Spanish acronym).    The changes in the law regarding the municipalities' liability for funding health care and pensions are significantly inconsistent with, and severely undermine key components of,

2

the fiscal plan for the Commonwealth, which the Oversight Board certified weeks earlier on May 9, 2019 (the "2019 Fiscal Plan" or the "Fiscal Plan").  (Attached as **Exhibit 3**).

7.        The Oversight Board advised the Governor and Legislature against the passage of the bill that was ultimately enacted as Law 29.  Specifically, by letter dated May 17, 2019, the Oversight Board advised the Governor, the President of the Senate of Puerto Rico (the "Senate President"), and the Speaker of the House of Representatives of Puerto Rico (the "House Speaker"), that the potential fiscal impact of the legislation would be approximately $311 million for fiscal year 2020, and $1.7 billion through fiscal year 2024.  (Attached as **Exhibit 4**).  Based on these estimates, the Oversight Board concluded the Bill is "not compliant with the Certified Fiscal Plan, which includes municipalities' full payment of their obligations to ASES and PayGo[1]."  *Id*. Even so, that very day the Governor signed Law 29 into law.

8.        In taking the foregoing and other actions, Defendants have violated and/or failed to comply with, among other sections, §§ 204, 207, and 108(a)(2) of PROMESA.  In violation of § 204, Defendants actively and intentionally undermined and interfered with the Oversight Board's ability to exercise its authority and responsibility to review government activities (including legislative acts) to ensure compliance with the Fiscal Plan.  The Governor failed to provide the required formal cost estimate for Law 29 required by §§ 204(a)(2), and he caused AAFAF and/or the Puerto Rico Office of Management and Budget ("OGP") and/or the Treasury Department ("Hacienda") to issue a demonstrably inaccurate and defective certification stating Law 29 is "not significantly inconsistent" with the Fiscal Plan.  On June 12, 2019, the Board notified the Governor and Legislature of these deficiencies pursuant to PROMESA § 204(a)(3) and directed that they be

---

[1] PayGo is shorthand for Act 106-2017 which established that retirement benefits will be paid by the Commonwealth on a "Pay as you Go" basis in light of Puerto Rico's retirement systems' insolvency.

corrected and the required additional information pursuant to PROMESA § 204(a)(4) be provided. (Attached as **Exhibit 5**).  The Governor, however, never responded to the Board's notification and direction, in violation of PROMESA § 204(a).  As a consequence, the Oversight Board is authorized to "take such actions as it considers necessary, consistent with [PROMESA], to ensure that the enactment or enforcement of the law will not adversely affect the territorial government's compliance with the Fiscal Plan, including preventing the enforcement or application of the law." PROMESA § 204(a)(5).

9.      Law 29 also violates § 207 of PROMESA.  *See* **Exhibit 2**.  Law 29 converts the Commonwealth's guaranty of the municipalities' liability for pensions into a sole, primary obligation by releasing the municipalities from their debt obligations to reimburse the Commonwealth.  *Id*.  In doing so, without prior Oversight Board approval, the Governor modified municipality debt and Commonwealth debt liabilities in violation of PROMESA § 207.

10.      Law 29 is not the first instance of the Governor misinterpreting the scope of his authority under PROMESA.  On July 5, 2018, for example, the Governor sued the Oversight Board, claiming he could ignore any provision in the Oversight Board's certified fiscal plan he considered a "policy recommendation," which would essentially allow him to, among other things, override the Oversight Board's certified budget with a device called reprogramming.  *Rosselló Nevares v. The Fin. Oversight and Mgmt. Bd. for P.R.* (*In re the Fin. Oversight Mgmt. Bd. for P.R.*), Adv. Proc. No. 18-080-LTS, ECF No. 1.  The Governor's complaint requested, among other things, a judgment declaring his authority to reprogram appropriations from prior budgets for use in the current budget for items not certified by the Oversight Board.  *Id*.  By Amended Opinion and Order dated August 27, 2018, the District Court dismissed a number of the Governor's claims, including his challenge to the Oversight Board's fiscal plan and budget restrictions on

4

reprogramming funds between fiscal years. *Id.* at ECF No. 40. The Court ruled PROMESA's restrictions on reprogramming apply to efforts to redistribute funds both within and between fiscal years. *Id.* The Court also ruled, contrary to the Governor's position, that the Oversight Board could adopt recommendations in its certified fiscal plan, even if the Governor opposed or rejected them. *Id.* The Governor is appealing these rulings, but the rulings are not stayed.

11. In recent months, Defendants have engaged in concerted and intentional efforts to impair and/or defeat the purposes of PROMESA. For example, Defendants' non-compliance with PROMESA § 204(a)'s mandate that a "formal estimate … of the impact... on expenditures and revenues" be included with any law submitted to the Oversight Board for approval is not limited to Law 29. Indeed, over the past year, Defendants have repeatedly failed to comply with PROMESA § 204(a), despite the fact the Oversight Board has provided the Governor with notifications of non-compliance pursuant to § 204(a)(3) and opportunities to respond to these notifications pursuant to § 204(a)(4) repeatedly over the past eight months. (Attached as **Exhibits 6** (*December 3, 2019 Board Letter*), **7** (*March 21, 2019 Board Letter*), and **8** (*June 19, 2019 Board Letter*)). Despite the Oversight Board's efforts to obtain compliance, the Governor has continued his policy of non-compliance with § 204(a). In fact, as of this filing, the Governor has *still* not submitted § 204(a) certificates for 58 new laws (the "New Laws"[2]) and 56 joint resolutions (the "Non-Certified Joint Resolutions"[3]). And for those certificates that the Governor has submitted,

---

[2] The New Laws are: Act 128-2018; Act 129-2018; Act 144-2018; Act 149-2018; Act 154-2018; Act 155-2018; Act 167-2018; Act 170-2018; Act 173-2018; Act 174-2018; Act 179-2018; Act 184-2018; Act 185-2018; Act 192-2018; Act 194-2018; Act 204-2018; Act 219-2018; Act 225-2018; Act 227-2018; Act 256-2018; Act 260-2018; Act 265-2018; Act 266-2018; Act 267-2018; Act 270-2018; Act 277-2018; Act 287-2018; Act 288-2018; Act 292-2018; Act 13-2019; Act 18-2019; Act 19-2019; Act 20-2019; Act 25-2019; Act 26-2019; Act 27-2019; Act 33-2019; Act 37-2019; Act 39-2019; Act 40-2019; Act 41-2019; Act 42-2019; Act 43-2019; Act 44-2019; Act 45-2019; Act 46-2019; Act 47-2019; Act 48-2019; Act 49-2019; Act 50-2019; Act 51-2019; Act 52-2019; Act 53-2019; Act 54-2019; Act 55-2019; Act 56-2019; Act 57-2019; and Act 58-2019.

[3] The Non-Certified Joint Resolutions are: Joint Resolution 21-2018; Joint Resolution 24-2018; Joint Resolution 30-2018; Joint Resolution 47-2018; Joint Resolution 50-2018; Joint Resolution 51-2018; Joint Resolution 52-2018; Joint

most arrive months after the law was enacted rather than the seven business days required by §
204(a)(1).

12.    The Governor has also signed nearly two dozen resolutions[4] (collectively, the
"Joint Resolutions") appropriating funds for expenditures not included in either the Oversight
Board-certified budgets for Fiscal Year 2019 (the "2019 Budget," attached as **Exhibit 9**) or Fiscal
Year 2020 (the "2020 Budget," attached as **Exhibit 10**) (collectively, the "Budgets"). The
Governor has done so without seeking an analysis and certification from the Oversight Board that
such reprogramming will not be significantly inconsistent with the Fiscal Plan and Budgets as
required by PROMESA § 204(c), despite the Board's notification of this violation and instruction
to address this deficiency. These resolutions, which seek to spend ***tens of millions of dollars*** in
unbudgeted funds, are not enforceable because they fail to comply with PROMESA § 204(c). This
pattern and practice of repeated non-compliance with PROMESA, in addition to the recent
enactment of Law 29 which is simply the latest and most egregious violation of PROMESA,
impairs and/or defeats the purposes of PROMESA as determined by the Oversight Board in

---

Resolution 53-2018; Joint Resolution 66-2018; Joint Resolution 69-2018; Joint Resolution 70-2018; Joint Resolution
72-2018; Joint Resolution 73-2018; Joint Resolution 75-2018; Joint Resolution 78-2018; Joint Resolution 80-2018;
Joint Resolution 81-2018; Joint Resolution 82-2018; Joint Resolution 83-2018; Joint Resolution 84-2018; Joint
Resolution 85-2018; Joint Resolution 93-2018; Joint Resolution 94-2018; Joint Resolution 95-2018; Joint Resolution
96-2018; Joint Resolution 98-2018; Joint Resolution 99-2018; Joint Resolution 101-2018; Joint Resolution 112-2018;
Joint Resolution 118-2018; Joint Resolution 119-2018; Joint Resolution 120-2018; Joint Resolution 6-2019; Joint
Resolution 7-2019; Joint Resolution 8-2019; Joint Resolution 9-2019; Joint Resolution 10-2019; Joint Resolution 11-
2019; Joint Resolution 12-2019; Joint Resolution 14-2019; Joint Resolution 16-2019; Joint Resolution 18-2019; Joint
Resolution 19-2019; Joint Resolution 23-2019; Joint Resolution 24-2019; Joint Resolution 25-2019; Joint Resolution
26-2019; Joint Resolution 27-2019; Joint Resolution 28-2019; Joint Resolution 29-2019; Joint Resolution 30-2019;
Joint Resolution 31-2019; Joint Resolution 32-2019; Joint Resolution 33-2019; Joint Resolution 34-2019; and Joint
Resolution 35-2019.

[4] Joint Resolution 2-2018; Joint Resolution 10-2018; Joint Resolution 11-2018; Joint Resolution 12-2018;
Joint Resolution 13-2018; Joint Resolution 15-2018; Joint Resolution 18-2018; Joint Resolution 19-2018;
Joint Resolution 26-2018; Joint Resolution 27-2018; Joint Resolution 31-2018; Joint Resolution 32-2018;
Joint Resolution 37-2018; Joint Resolution 38-2018; Joint Resolution 42-2018; Joint Resolution 43-2018;
Joint Resolution 48-2018; Joint Resolution 54-2018; Joint Resolution 55-2018; Joint Resolution 56-2018;
Joint Resolution 57-2018; Joint Resolution 61-2018; and Joint Resolution 67-2018.

violation of §108(a)(2).   *Id*.   Unfortunately, recent public statements from the Governor corroborate that the government is willfully not complying with PROMESA and not cooperating with the Oversight Board.[5]

13.     The Oversight Board, pursuant to its authority under PROMESA §§ 104(k), 108, 204, and 207, brings this action to nullify and enjoin implementation of Law 29 on the grounds Defendants have failed to comply with PROMESA §§ 204 and 207, and the enactment of the law, especially in conjunction with the Governor's repeated failure to comply with PROMESA §§ 204 and 207, "would impair or defeat the purposes of" PROMESA, as determined by the Oversight Board, thereby barring the Governor from enacting or implementing Law 29 pursuant to PROMESA § 108(a)(2).

14.     The Oversight Board, pursuant to its authority under PROMESA §§ 104(k), 108 and 204, also brings this action to compel the Governor to submit § 204(a) certifications for the New Laws and Non-Certified Joint Resolutions, and to find that the Governor's policy of not providing certifications as required under PROMESA § 204(a) "impair[s] or defeat[s] the purposes of" PROMESA as determined by the Oversight Board.

---

[5] For example, in May 2019, the Governor publicly declared the Oversight Board's pension cuts "constitute[] an attack on everyone in Puerto Rico," and then called on "all sectors of our society, including political parties, to join [him] in defense of pensioners in Puerto Rico."  Miranda, María, *"Puerto Rico fiscal board says only it can propose 'what recovery pensioners will receive.'"* CARIBBEAN BUS. (May 17, 2019) https://caribbeanbusiness.com/watch-puerto-rico-governors-address-at-545-p-m/.  More recently, on June 20, 2019, the Governor stated he would not respond to requests for information made by the Oversight Board or any matter relating to pensions, stating:  "we are not in a position to collaborate at this time in the renegotiation because each time they include the component of pensions, it is something we are not going to participate in." *"Rossello insists on limiting cooperation with the Board on new request,"* METRO (Jun. 20, 2019), https://www.metro.pr/pr/noticias/2019/06/20/rossello-insiste-en-limitar-cooperacion-con-la-junta-ante-nuevo-pedido.html.  In addition, after proclaiming that he would not comply with portions of the Fiscal Plan, the Governor dared the Oversight Board to seek judicial intervention saying, "If [the Board] want[s] to go to the courts to run over the people of Puerto Rico, to usurp them the powers…then do what [they] want."  C.D., Javier, "Rosselló reitera que no cumplirá con partes de los planes fiscales." EL NUEVO DIA (Apr 20, 2019),https://www.elnuevodia.com/negocios/economia/nota/rosselloreiteraquenocumpliraconpartesdelosplanesfiscales-2416400/.

15.     Finally, the Oversight Board, pursuant to its authority under PROMESA §§ 104(k), 108, and 204 (c), brings this action to nullify or enjoin the implementation of the Joint Resolutions on the grounds the Defendants have failed to comply with PROMESA § 204(c), and because the Joint Resolutions, in conjunction with the Governor's repeated failure to comply with PROMESA, "impair and/or defeat the purposes of" PROMESA, as determined by the Oversight Board.

## PARTIES

16.     Plaintiff, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), is an entity within the Commonwealth government established pursuant to PROMESA § 101.

17.     Defendant Ricardo Antonio Rosselló Nevares (the "Governor") is the Governor of Puerto Rico, vested with the executive power and the obligation to execute the laws.  P.R. Const. art. IV §§ 1, 4.

18.     Defendant the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") is a Puerto Rico public corporation.  It is under Commonwealth law the "fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico," with responsibility "for the collaboration, communication, and cooperation between the Government of Puerto Rico and the [Oversight Board]."  Law 2-2017 § 5(a).

## JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the action arises under PROMESA, a federal statute, and pursuant to PROMESA §§ 106(a) and 306(a)(2).

20.     The Court has personal jurisdiction over the Governor and AAFAF pursuant to PROMESA § 306(c) and because they are, respectively, an officer and an agency of the

government of Puerto Rico, are located in the United States, and have performed acts giving rise to the claims in this action in Puerto Rico.

21.      Venue is appropriate in this District under PROMESA §§ 106(a) and 307, and 28 U.S.C. § 1391.

## FACTS

22.      Puerto Rico is in a fiscal emergency.  As Congress found, a "combination of severe economic decline, and, at times, accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing has created a fiscal emergency in Puerto Rico."  PROMESA § 405(m)(1).  That was before Hurricane Maria.

23.      Unwise policy choices by the Commonwealth's government have contributed significantly to the fiscal crisis.  The government has acknowledged this in legislation.  For example, the preamble to AAFAF's enabling act blames the previous Commonwealth administration for not "taking the necessary actions to improve greater operational efficiency in the government or cutting back on excessive government spending."  Law 2-2017, Statement of Motives.

24.      Congress responded to the Commonwealth's fiscal crisis and its causes by enacting PROMESA and creating the Oversight Board.  The "purpose of the [Oversight Board] is to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets."  PROMESA § 101(a).

25.      In PROMESA § 201, Congress charged the Oversight Board with the responsibility to develop, approve, and certify fiscal plans for the Commonwealth and its instrumentalities.

26.      Congress also charged the Oversight Board with the responsibility to determine whether the budgets, laws, rules, regulations, policies, debt transactions, and other actions of the

Commonwealth and its instrumentalities comply with the applicable fiscal plans and to take corrective measures if they are not compliant.  PROMESA §§ 202, 203, 204, 207.

27.     In PROMESA § 204, Congress set forth procedures for the Oversight Board to review new legislative acts.

28.     The first step under § 204 is the submission of the legislative act to the Board. Specifically, PROMESA requires that within seven business days of the enactment of "any law during any fiscal year," the Governor "shall" submit the law for review by the Oversight Board. PROMESA § 204(a)(1).

29.     As part of the submission to the Oversight Board, PROMESA requires the Governor to provide a "formal estimate," prepared by a governmental entity with "expertise in budgets and financial management of the impact" the new act will have on expenditures and revenues.  PROMESA § 204(a)(2)(A).  In addition, the Governor must submit a "certification" to the Oversight Board that the law either is, or is not, "significantly inconsistent with the Fiscal Plan for the fiscal year." PROMESA § 204(a)(2)(B)-(C).

30.     If the Governor fails to provide the Oversight Board with the estimate and/or the certification required under § 204(a)(2), then the Oversight Board shall send a notification to the Governor and Legislature and the Oversight Board may "direct the Governor to provide the missing estimate or certification . . . in accordance with such procedures as the Oversight Board may establish."  PROMESA § 204(a)(4)(A).

31.     If the territorial government fails to comply with the Board's direction to provide the required estimate and/or certification, PROMESA authorizes the Oversight Board to "take such actions as it considers necessary, consistent with [PROMESA], to ensure that the enactment or

enforcement of the law will not adversely affect the [Commonwealth's] compliance with the Fiscal

Plan, including preventing the enforcement or application of the law."  PROMESA § 204(a)(5).

32.     Section 204 of PROMESA also imposes restrictions on reprogramming funds

currently budgeted through budgetary adjustments by the government.  Under this section, the

Governor must submit a request to reprogram amounts provided in a certified budget to the

Oversight Board.  No reprogramming may occur until the Oversight Board conducts an analysis

of the reprogramming and certifies that "such reprogramming will not be inconsistent with the

Fiscal Plan and Budget."  PROMESA § 204(c)(2).  There is no provision of PROMESA allowing

the reprogramming of funds from prior budgets and the Court has ruled such reprogramming

illegal.

33.     PROMESA § 207 provides "no territorial government may, without the prior

approval of the Oversight Board, issue debt or guarantee, exchange, modify, repurchase, redeem,

or enter into similar transactions with respect to its debt."  PROMESA § 207.

34.     To enable the Oversight Board to perform its duties, Congress empowered it to

"seek judicial enforcement of its authority to carry out its responsibilities" under PROMESA.

PROMESA § 104(k).  Congress also provided "[n]either the Governor nor the Legislature may …

enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the

purposes of [PROMESA], as determined by the Oversight Board."  PROMESA § 108(a)(2).

**PayGo**

35.     In placing Puerto Rico on a path to fiscal stability, the Oversight Board sought to,

among other things, curtail liabilities for pensions and other retirement benefits which, as of 2016,

totaled more than $50 billion based on the Commonwealth's own actuarial estimates.  The

Oversight Board included in its March 13, 2017 certified Fiscal Plan (the "2017 Fiscal Plan")

several pension reforms, including the adoption of a "Pay as you Go" (or "PayGo") funding model

under which the Commonwealth and other subject employers (including municipalities that had

participated in the ERS system) pay pension and other retirement benefits as they come due to

retirees, rather than pre-funding through an investment trust.

36.     On August 23, 2017, the Commonwealth Legislature passed Act 106-2017, or the

"Act to Guarantee the Payment of Pension Benefits to our Retirees and to Establish a New Defined

Contribution Plan for Public Employees" ("Act 106-2017").  (Attached as **Exhibit 11**.)  Act 106-

2017 recognized Puerto Rico's "unprecedented fiscal and social crisis . . . caused, in part, by a lack

of expenditure controls, sustainable development measures, as well as management information

systems that promote clarity and transparency in government affairs."  *Id*.  Act 106-2017 further

recognized Puerto Rico's three primary public retirement systems (ERS, TRS, and JRS) are

"facing a serious fiscal emergency because their liquid assets are soon to be depleted and shall not

have the necessary resources to meet [their] obligations to retirees."  *Id*.  As a result, the Legislature

directed the Commonwealth to pay all pension costs.  *Id*.

37.     To prevent the Commonwealth from bearing these massive pension costs alone,

Act 106-2017 created the PayGo system to fund these liabilities.  PayGo required municipalities,

public corporations, and other entities deemed to be "employers," to fund pension obligations for

their own retired employees through monthly payments (the "PayGo Fee") to the Commonwealth

in the amount of benefits paid to each of their respective retirees.  *Id*.  Act 106-2017 recognized

that the failure of the employers, including municipalities, to pay their share of pension costs would

require the Commonwealth to assume the obligation to do so.  In that event, the Commonwealth

would have additional financial liabilities, while reeling from a decades-long financial decline and

fiscal crisis during which the Puerto Rico economy contracted by almost fifteen percent and pushed the island out of the capital markets.

**Fiscal Plan**

38.    PROMESA grants numerous tools to the Oversight Board to address Puerto Rico's fiscal, management, and structural problems.  One of these key powers is the development and certification of fiscal plans for the Commonwealth and its instrumentalities.  PROMESA §§ 201(c)(3), 201(e).

39.    On May 9, 2019, the Oversight Board certified the most recent Fiscal Plan for the Commonwealth.  *See* **Exhibit 3**.  The 2019 Fiscal Plan highlights the more than $50 billion in pension liabilities owed by Puerto Rico and its instrumentalities, including municipalities, and specifically noted comprehensive pension reform as a necessary fiscal measure.  *Id*.  The 2019 Fiscal Plan noted in particular that Puerto Rico's pension plans are "essentially zero percent funded," which prompted the adoption of the PayGo plan in 2017.  *Id*.  Among the 2019 Fiscal Plan's key assumptions on pensions is that the PayGo plan of Act 106 – and its allocation of financial responsibilities – will remain in effect.  *See id.* ("[t]he Commonwealth shall be reimbursed for these [PayGo payments] and will take action if these contributions are not received.").

**Law 29**

40.    On May 13, 2019, following the Board's certification of its Fiscal Plan, the Legislature passed Act 29, titled "Act of Reductions of the Administrative Burdens of the Municipalities."  In response, on May 17, 2019, the Oversight Board advised the Governor, the Senate President, and House Speaker that based on its preliminary review of the Act, it estimated the potential fiscal impact of the Act to be approximately $311 million for fiscal year 2020, and

$1.7 billion through fiscal year 2024.  *See* **Exhibit 4**.  Based on these estimates, the Oversight Board concluded the legislation is "not compliant with the Certified Fiscal Plan, which includes municipalities' full payment of their obligations to ASES and PayGo." *Id.*

41.    That same day, May 17, 2019, the Governor signed Senate Bill 1258, creating Law 29.  *See* **Exhibit 2**.  The stated purpose of Law 29 is to "reduc[e] the administrative burden of municipalities in respect of charges paid by the [municipalities] to the government health plan and the 'Pay as you Go' systems." *Id.*  The Defendants failed to identify any source of funding for Law 29, making clear their intent to impose the costs on the Commonwealth.

42.    In particular, Law 29 is designed – explicitly – to undermine and reverse the Fiscal Plan's requirement that the municipalities reimburse the Commonwealth for its payment of retirement benefits to the municipalities' own retirees.  The cost of these retirement benefits for municipal retirees is approximately $360 million per year for the first five years of the Fiscal Plan's projections.  In response, the Legislature decided to relieve the municipalities of this financial obligation.  Specifically, the Legislature "eliminate[d] the obligation of the municipalities" to contribute to the health plan and make PayGo contributions – which together cost the municipalities approximately $400 million each year. *Id.*  The Municipal Revenues Collection Center ("CRIM") will continue to collect PayGo funds, but instead of using them to reimburse the Commonwealth for payment on account of municipal health plans and retirees, Law 29 directs CRIM to return these funds to the municipalities, and leave the Commonwealth to bear the full financial burden of the PayGo obligations. *Id.*  Law 29 directly contradicts the 2019 Fiscal Plan, and impairs and/or defeats the purpose of PROMESA to require the Commonwealth to act consistently with the Fiscal Plan.

14

43.     On June 3, 2019, the Governor, together with AAFAF and OGP, submitted to the Oversight Board a copy of Law 29 and a two-page document titled "Compliance Certificate of New Joint Resolution Pursuant to 48 U.S.C. § 2144(2)(B)" (the "Certificate"). (Attached as **Exhibit 12**).

44.     The Governor's June 3, 2019 submission to the Oversight Board did not comply with PROMESA § 204(a). First, the Governor failed to include the required "formal estimate" of Law 29's impact on the Commonwealth's expenditures and revenues. PROMESA § 204(a)(2)(A).

45.     Second, the Certificate is inaccurate and misleading. The Certificate purports to certify that Law 29 "is not significantly inconsistent with the New Fiscal Plan for Puerto Rico." *See* **Exhibit 12**. At the same time, the Certificate states that implementation of Law 29 will add over $285 million in additional liabilities to the Commonwealth's budget in Fiscal Year 2020 alone, none of which is provided for in the Fiscal Plan. The Certificate further states Law 29 will increase the Commonwealth's health insurance liabilities by more than $767 million through Fiscal Year 2024, none of which, again, is provided for in the Fiscal Plan. The Governor, AAFAF and OGP acknowledge in the Certificate that they have not completed a study of the full impact of Law 29, and that an actuarial study "has been requested" to determine the impact of Law 29 "on expenditures for" fiscal years beyond 2024. *Id*. But the Defendants could have easily determined the full impact of Law 29 without an "actuarial study" by simply calculating the municipalities' obligation for each payee. In addition, despite the hundreds of millions of dollars of retiree liabilities re-allocated to the Commonwealth on an annual basis, and the fact that the full extent of the law's impact is not yet known, the Certificate states that Law 29's impact "will not be incremental" because of "budgeted resources" and "other measures in response to possible additional federal funding," neither of which are identified, quantified, or explained. *Id*. "Possible

15

additional federal funding" is speculative on its face.  Moreover, if additional federal funding is forthcoming which frees up Commonwealth resources, such funding will be taken into account in updating the certified Fiscal Plan and as part of the interactive, collaborative budget process.  *See* PROMESA §§ 201, 202.  The Governor cannot unilaterally spend funds not accounted for in a certified Fiscal Plan and budget.

46.      The economic and practical consequences of Law 29 are significant.  Law 29 adds hundreds of millions of dollars in annual pension and health care liabilities to the Commonwealth that were neither anticipated by the Oversight Board, nor accounted for in the Fiscal Plan.  For example, the Fiscal Plan is steadfastly committed to lowering the Commonwealth's pension liabilities by, among other things, ensuring public employers pay the pension costs of their own retirees.  Adding these liabilities to the Commonwealth would significantly reduce early year surpluses and accelerate deficits, materially impairing the Commonwealth's ability to restructure its debt and pay its operating costs long term.  In fact, Law 29 will undermine the Commonwealth's ability to pay retirement benefits to all retirees, as it will be forced into deficit spending far earlier than projected and its ability to save for deficit years from short term surpluses will be materially impaired.

47.      As such, and despite the Governor's assertions to the contrary, Law 29 is significantly inconsistent with the Fiscal Plan and is precisely the type of unfunded mandate that caused the fiscal crisis in Puerto Rico in the first place.  In addition, if implemented, Law 29 sets a harmful precedent for other public employers who will have a rational basis to argue against paying their share of pension and health care costs, and instead rely on the Commonwealth to subsidize these obligations.  This of course will simply exacerbate the fiscal crisis confronting the Commonwealth and put future pension benefits at risk.

16

48.     The prevention of such ill-advised legislative efforts is one of the primary reasons Congress enacted PROMESA, created the Oversight Board, and required its review of new laws to ensure that the Commonwealth does not adopt the kind of irresponsible polices that resulted in Puerto Rico's unprecedented fiscal crisis, which includes among other things, a pension system that is "essentially zero percent funded." *See* **Exhibit 3**.

49.     On June 12, 2019, the Oversight Board sent a notification pursuant to PROMESA § 204(a)(3)(A) to the Governor, the Senate President and House Speaker (the "Notification"). *See* **Exhibit 5**. The Oversight Board's Notification stated the Certificate did not contain a "formal estimate . . . of the impact, if any, that the law will have on expenditures and revenues." *Id*; *see* PROMESA § 204(a)(2)(A). The Notification also informed the Governor and the Legislature that the Certificate was defective because its conclusion that Law 29 "is not significantly inconsistent" with the governing Fiscal Plan was unsupported and erroneous. **Exhibit 5**.

50.     The Notification also directed the Governor and AAFAF to provide the missing "formal estimate" within seven business days and "an amended" Certificate "reflecting such estimates." *See* PROMESA § 204(a)(4)(A). The Oversight Board directed that the complete formal estimate must:

>    (i)     identify specifically the "budgeted resources" and "other measures" that will purportedly cover the additional hundreds of millions of dollars associated with [Law] 29 for the duration of the Fiscal Plan,

>    (ii)    explain why the use of such "budgeted resources" and "other measures" is consistent with the Fiscal Plan, identify specifically the "possible additional federal funding in Fiscal Year 2020," and

>    (iii)   explain the relevance of the "possible federal funding" to the Certificate's conclusion in light of the fact that it is only "possible" and limited to just Fiscal Year 2020.

**Exhibit 5**.

17

51.     Defendants did not provide this information by June 21, 2019.  In fact, Defendants did not even respond to the Notification and thereby failed to comply with the Oversight Board's direction, as required under PROMESA § 204(a)(4).

**The Joint Resolutions**

52.     The passage of Law 29 is just one example of the Governor's efforts to authorize spending in a manner significantly inconsistent with the Oversight Board's Fiscal Plan and annual Budgets, and undermines the Oversight Board's efforts (pursuant to PROMESA) to ensure that Puerto Rico achieves fiscal responsibility and access to capital markets.  The Governor has also signed into law a series of Joint Resolutions in contradiction to PROMESA, each of which is unenforceable, and of no effect.  (Attached as **Exhibits 13** (*February 26, 2019 Board Letter*) and **14** (*May 5, 2019 Board Letter*)).  For each of the Joint Resolutions, neither the Defendants nor the Legislature requested the Oversight Board certify the Joint Resolution's reprogramming under PROMESA § 204(c), and no such certification has been issued:

a.      *Joint Resolution 2-2018*: On January 4, 2018, the Legislature passed Joint Resolution 2-2018.  (Attached as **Exhibit 15**).  This measure apportions $186,657 to be used by the Public Housing Administration for a soccer field in the Juan C. Cordero public housing project in San Juan.  This resolution reprograms funding appropriated in 2014, in contravention of the Fiscal Plan and Budgets.

b.      *Joint Resolution 10-2018*: On January 21, 2018, the Legislature passed Joint Resolution 10-2018.  (Attached as **Exhibit 16**).  This measure apportions $90,000 for ADEA[6] to pay for home repairs needed after Hurricanes Irma and Maria.  This resolution reprograms funds previously allocated in 2017 to the Municipal Improvement Fund, in contravention of the Fiscal Plan and Budgets.

c.      *Joint Resolution 11-2018*: On January 21, 2018, the Legislature passed Joint Resolution 11-2018.  (Attached as **Exhibit 17**).  This measure apportions $2,000 to the Municipality of Bayamón to be used to repair the home of Mr. Pedro Barbosa Rivera.  This resolution reprograms funding appropriated in 2012, in contravention of the Fiscal Plan and Budgets.

[6] ADEA is the Spanish acronym for the Agricultural Enterprises Development Administration.

18

    d.    ***Joint Resolution 12-2018***: On January 21, 2018, the Legislature passed Joint Resolution 12-2018. (Attached as **Exhibit 18**). This measure apportions $90,000 for the Office of Socioeconomic and Community Development ("*Oficina para el Desarrollo Socioeconómico y Comunitario*") for permanent home improvements in House District No. 16. This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

    e.    ***Joint Resolution 13-2018***: On January 21, 2018, the Legislature passed Joint Resolution 13-2018. (Attached as **Exhibit 19**). This measure apportions $200,000 for ADEA from a special dividend paid by the Joint Underwriting Association of the Compulsory Liability Insurance ("*Asociación de Suscripción Conjunta*") to the General Fund. This appropriation was not part of the certified budget, and therefore reprogrammed funds from a prior year, in contravention of the Fiscal Plan and Budgets.

    f.    ***Joint Resolution 15-2018***: On January 24, 2018, the Legislature passed Joint Resolution 15-2018. (Attached as **Exhibit 20**). This measure authorizes that up to 30 percent of funds previously appropriated through Joint Resolution 4-2017 may be apportioned to municipalities for recovery work related to Hurricane Maria. *See* Joint Resolution 4-2017. Joint Resolution 4-2017 appropriated $11.8 million from the Municipal Improvement Fund for permanent work in various Senate and House districts and municipalities. *Id*. This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

    g.    ***Joint Resolution 18-2018***: On January 27, 2018, the Legislature passed Joint Resolution 18-2018. (Attached as **Exhibit 21**). This measure apportions $1,000 to the Municipality of Lares for permanent improvements. *See* Joint Resolution 1388-2003. This resolution reprograms funding appropriated in 2003, in contravention of the Fiscal Plan and Budgets.

    h.    ***Joint Resolution 19-2018***: On January 27, 2018, the Legislature passed Joint Resolution 19-2018. (Attached as **Exhibit 22**). This measure apportions $2.8 million for permanent improvements in various House and Senate districts, operational expenses of various municipalities, and other uses. This resolution reprograms funding appropriated in 2016, in contravention of the Fiscal Plan and Budgets.

    i.    ***Joint Resolution 26-2018***: On February 4, 2018, the Legislature passed Joint Resolution 26-2018. (Attached as **Exhibit 23**). This measure apportions $334,009 to be used for operational expenses of the State Election Commission. This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets. *Id*.

    j.    ***Joint Resolution 27-2018***: On February 4, 2018, the Legislature passed Joint Resolution 27-2018. (Attached as **Exhibit 24**). This measure apportions $266,867 for use by the Municipality of Aibonito. This resolution reprograms funding appropriated

in multiple past years, including from a resolution passed in 1997, in contravention of the Fiscal Plan and Budgets.

k.      *Joint Resolution 31-2018*: On April 13, 2018, the Legislature passed Joint Resolution 31-2018.  (Attached as **Exhibit 25**).  This measure appropriates $30,000 for the Municipality of Arecibo to be used to purchase housing materials.  This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

l.      *Joint Resolution 32-2018*: On April 13, 2018, the Legislature passed Joint Resolution 32-2018.  (Attached as **Exhibit 26**).  This measure apportions $70,000 to be used for permanent improvements in House District No. 14.  This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

m.      *Joint Resolution 37-2018*: On May 15, 2018, the Legislature passed Joint Resolution 37-2018.  (Attached as **Exhibit 27**).  This measure apportions $25,000 for the Sports and Recreation Department to be used for the San Blás Half-Marathon.  This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

n.      *Joint Resolution 38-2018*: On May 15, 2018, the Legislature passed Joint Resolution 38-2018.  (Attached as **Exhibit 28**).  This measure apportions $14,500 for the Sports and Recreation Department to be used for the Antonio Ferrer Atilano Literary Festival and the Poblado Coqui festivities.  This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

o.      *Joint Resolution 42-2018*: On June 13, 2018, the Legislature passed Joint Resolution 42-2018.  (Attached as **Exhibit 29**).  This measure authorizes a 6-month extension to the previously authorized Legislative funds allocated via Joint Resolution 5-2017, due to the damage caused by Hurricanes Irma and Maria.  This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

p.      *Joint Resolution 43-2018*: On June 13, 2018, the Legislature passed Joint Resolution 43-2018.  (Attached as **Exhibit 30**).  This measure authorizes a 6-month extension to the previously authorized Legislative funds allocated via Joint Resolution 18-2017, due to the damage caused by Hurricanes Irma and Maria.  This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

q.      *Joint Resolution 48-2018*: On June 29, the Legislature passed Joint Resolution 48-2018.  (Attached as **Exhibit 31**).  This measure apportions $70,000 to PRIFA for permanent improvements in the San Juan Senatorial District.  This resolution reprograms funding appropriated to the Municipal Improvement Fund in 2017, in contravention of the Fiscal Plan and Budgets.

r.      *Joint Resolution 54-2018*: On July 10, 2018, the Legislature passed Joint Resolution 54-2018.  (Attached as **Exhibit 32**).  This measure apportions $24,000 for the Sports and Recreation Department to be used for athletic activities and sports teams in the

Guayama Senate District.  This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

s.     ***Joint Resolution 55-2018***: On July 10, 2018, the Legislature passed Joint Resolution 55-2018.  (Attached as **Exhibit 33**).  This measure apportions $59,047 for permanent improvements in the Municipality of Canovanas.  This resolution reprograms funding appropriated by multiple resolutions in different years, some going as far back as 1987.  As these funds were appropriated in prior years, this reprogramming is in contravention of the Fiscal Plan and Budgets.

t.     ***Joint Resolution 56-2018***: On July 10, 2018, the Legislature passed Joint Resolution 56-2018.  (Attached as **Exhibit 34**).  This measure apportions $11,935 for permanent improvements in the Municipality of Lares.  This resolution reprograms funding appropriated by multiple resolutions in different years, some going as far back as 1999.  As these funds were appropriated in prior years, this reprogramming is in contravention of the Fiscal Plan and Budgets.

u.     ***Joint Resolution 57-2018***: On July 10, 2018, the Legislature passed Joint Resolution 57-2018.  (Attached as **Exhibit 35**).  This measure apportions $363,563 for permanent improvements in the Municipality of Barranquitas.  This resolution reprograms funding appropriated by multiple resolutions in different years, some going as far back as 1991.  As these funds were appropriated in prior years, this reprogramming is in contravention of the Fiscal Plan and Budgets.

v.     ***Joint Resolution 61-2018***: On July 10, 2018, the Legislature passed Joint Resolution 61-2018.  (Attached as **Exhibit 36**).  This measure apportions $40,000 to ADEA for permanent improvements in Carolina Senate District.  This resolution reprograms funding appropriated in 2017, in contravention of the Fiscal Plan and Budgets.

w.     ***Joint Resolution 67-2018***: On July 27, 2018, the Legislature passed Joint Resolution 67-2018.  (Attached as **Exhibit 37**).  This measure authorizes a 6-month extension to the previously authorized Legislative funds allocated via Joint Resolution 4-2017.  This resolution reprograms funding appropriated to the Municipal Improvement Fund in 2017, in contravention of the Fiscal Plan and Budgets.

53.     The Oversight Board informed the Governor of his failure to comply with § 204(c) with respect to the Joint Resolutions in letters dated February 26, 2019, May 5, 2019, and June 19, 2019.  *See* **Exhibits 8, 13,** and **14**.

54.     In its December 3, 2018, January 14, 2019, and June 19, 2019 letters, the Oversight Board also brought the Governor's violations of § 203 to his attention.  *See* **Exhibits 6, 8,** and **38** (*January 14, 2019 Board Letter*).  Section 203(a) provides in relevant part that "[n]ot later than 15

days after the last day of each quarter of a fiscal year. . . the Governor shall submit to the Oversight Board a report, in such form as the Oversight Board may require" comparing budget to actual expenditures for such preceding quarter, and "any other information requested by the Oversight Board."  The purpose of this reporting requirement is to hold the government accountable to the certified Budget and to alert the Oversight Board to deviations from the certified Budget, both with respect to revenues and expenditures, so that the Oversight Board can determine whether to exercise its remedies under PROMESA § 203.

55.     In addition to the Governor's failure to comply with § 204, he has repeatedly failed to comply with § 203(a) by submitting § 203(a) reports late, incomplete, or not submitting reports at all.  The Oversight Board has exhibited patience, repeatedly reminding the Governor of his obligations and violations of § 203(a), but even so, the Governor continues to neglect his obligations.  *See* **Exhibits 6, 8,** and **38**.  As noted in the Oversight Board's June 19, 2019 letter, the Governor has failed to submit complete third quarter § 203(a) budget to actual reports for the University of Puerto Rico ("UPR") and the Puerto Rico Highways and Transportation Authority ("HTA") by the April 15, 2019 deadline; in fact, the Governor has never submitted a complete § 203(a) report for either of those entities.  Also still outstanding are § 203(a) budget to actual reports for the Puerto Rico Electric Power Authority ("PREPA"), the HTA and UPR for fiscal year 2018 – which ended in June 2018.  The Oversight Board asked that these outstanding reports be submitted no later than June 30, 2019.  As of this filing, such reports have not been submitted.

## COUNT I

## LAW 29, INCLUDING ITS ENACTMENT AND ENFORCEMENT, VIOLATES PROMESA § 204(a)

56.   The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 55 above as if set forth in full herein.

57.   When legislation is enacted, PROMESA § 204(a)(2)(A) requires the Governor to submit to the Oversight Board the new law, along with a "formal estimate" of the law's financial impact on the Commonwealth's expenditures and revenues, and a "certification" as to whether the new legislation is "significantly inconsistent" with the Fiscal Plan.  In respect of Law 29, the Governor did not comply with § 204(a) of PROMESA and the Governor did not comply with the Oversight Board's "direct[ion]" to provide the missing estimate and revised certification. PROMESA § 204(a)(2)(A).

58.   Law 29 adversely affects the government's compliance with the Fiscal Plan.  In particular, according to the Certificate submitted by Defendants, OGP, and Hacienda, this new law adds more than $285 million in pension and health care costs to the Commonwealth's budget in Fiscal Year 2020 alone, costs which are neither called for, nor anticipated by the Fiscal Plan or the certified 2020 Budget.  *See* **Exhibits 3, 10,** and **12**.  Moreover, the costs associated with Law 29 are recurring annually.  The Oversight Board estimates that the additional burden on the Commonwealth amounts to $1.7 billion through fiscal year 2024.

59.   On June 12, 2019, the Oversight Board sent a notification letter pursuant to PROMESA § 204(a)(3) raising numerous deficiencies in the Commonwealth's Certificate and the Oversight Board directed the Governor to provide the missing estimate and provide information concerning the deficiencies by June 21, 2019 pursuant to PROMESA § 204(a)(4).  *See* **Exhibit 5**.

23

60.     The Governor has failed to respond to the Oversight Board's notification and direction pursuant to PROMESA § 204(a) and indicated that he will not respond, and therefore has not complied with PROMESA § 204(a)(4).

61.     The Oversight Board is entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the Governor has failed to comply with PROMESA § 204(a)(1); that the Board has the authority under PROMESA § 204(a)(5) to prevent enforcement of a law to ensure the law will not adversely affect compliance with the Fiscal Plan; and that, due to Defendants' failures to properly certify Law 29, Defendants are enjoined from implementing and enforcing Law 29 and the law shall be deemed a nullity.

## COUNT II

### LAW 29, INCLUDING ITS ENACTMENT AND ENFORCEMENT, VIOLATES PROMESA § 207

62.     The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 61 above as if set forth in full herein.

63.     PROMESA § 207 bars the Commonwealth and all its instrumentalities from issuing, guaranteeing, exchanging, modifying, repurchasing, and redeeming debt (or entering into any similar transaction) without prior Oversight Board approval.

64.     Without prior Oversight Board approval, the enactment and enforcement of Law 29 converts the Commonwealth's guaranty of the municipalities' liability for pensions into a sole, primary obligation of the Commonwealth by releasing the municipalities from their reimbursement liability to the Commonwealth.  In doing so, without prior Oversight Board approval, the Governor modified municipality debt by releasing it and modified Commonwealth debt by rendering it a primary obligation not having reimbursement rights from the municipalities.

24

65.     Pursuant to §§ 104(k) and 207 of PROMESA, the Oversight Board is entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that Law 29 is unenforceable and of no effect, and that due to Defendants' violation of PROMESA § 207, Defendants are enjoined from implementing and enforcing Law 29 and the law shall be deemed a nullity.

**COUNT III**

**INJUNCTION PROHIBITING DEFENDANTS FROM IMPLEMENTING LAW 29**

66.     The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 65 above as if set forth in full herein.

67.     The Oversight Board seeks equitable relief in the form of a permanent injunction prohibiting Defendants from implementing and enforcing Law 29.

68.     Defendants actions are causing immediate irreparable harm to the Commonwealth, by impairing and/or defeating the fundamental purpose of PROMESA which is to provide a "method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets," PROMESA § 101(a), primarily by controlling the review and certification of fiscal plans and annual budgets, monitoring activities of the government to ensure compliance with the fiscal plan, and controlling debt restructurings.  *See* PROMESA §§ 101(d)(1), 104(j), 108(a)(2), 201(c)(3), 201(e), 202(c)-(f), 204, 206, and 207, and Titles III and VI.

69.     There is no adequate remedy at law to compensate the Commonwealth for the injury caused by the Defendants' actions, which impair and/or defeat the purposes of PROMESA as determined by the Oversight Board.  If permitted to continue with their course of conduct, the Defendants will undermine the Fiscal Plan and harm the Commonwealth's ability to achieve

25

financial stability.  In addition, an award of monetary damages will not serve to compensate the Commonwealth for the injuries caused by the Defendants' actions because the Commonwealth's *own* funds would be required to pay any monetary award, defeating the purpose of any such award and only further exacerbating the injury.

70.     The balance of hardship favors the Oversight Board because the Defendants' actions, which impair and/or defeat the purposes of PROMESA as determined by the Oversight Board, threaten the Fiscal Plan, and undermine the Commonwealth's ability to achieve fiscal responsibility and access to capital markets.  Defendants will not be harmed by not assuming the liabilities of the Commonwealth's municipalities.

71.     The public interest, as defined in PROMESA, would be well-served by the entry of an injunction.  In particular, an injunction, barring the implementation and enforcement of Law 29, would permit the Oversight Board to continue its work to ensure the Commonwealth achieves financial stability, and provides its residents, including retirees who rely on pension checks, with a reasonable, secure, and sustainable future.

72.     PROMESA § 204(a)(5) provides for the prevention of the application and enforcement of a law when the government fails to comply with the Oversight Board's directions in respect of a missing estimate or certification provided by the government, which directions can invoke procedures the Oversight Board establishes.

73.     The Governor has failed to provide a certification as to Law 29 that does not rely on unspecified reprogramming requests and unspecified future federal funding, and has failed to provide an actuarial analysis as to cost.  The Oversight Board has not issued a § 204(c) certification permitting the reprogramming required to effectuate Law 29.

26

74.     The Governor has failed to comply with PROMESA § 204(a)(4) by not responding and declining to respond to the Oversight Board's notification and direction provided under PROMESA §§ 204(a)(3)-(4).

75.     PROMESA provides for equitable relief in respect of laws for which the Governor has not provided the necessary certificate.

76.     The Oversight Board is entitled to a mandatory permanent injunction prohibiting Defendants from implementing and enforcing Law 29.

**COUNT IV**

**LAW 29 AND THE JOINT RESOLUTIONS, INCLUDING THEIR ENACTMENT AND ENFORCEMENT, VIOLATE PROMESA § 204(c)**

77.     The Oversight Board repeats and alleges every allegation set forth in paragraphs 1 to 76 as if set forth in full herein.

78.     Law 29 and the Joint Resolutions appropriate expenditures not included in the certified Budgets.  *See* **Exhibits 9** and **10**.  As such, Law 29 and the Joint Resolutions unlawfully reprogram funds.

79.     PROMESA § 204(c)(2) bars the Legislature from adopting, and any officer or employee of Puerto Rico from carrying out any reprogramming of amounts provided in a budget certified by the Oversight Board prior to receiving from the Oversight Board an analysis certifying the reprogramming will not be inconsistent with the certified fiscal plan or budget.

80.     The Oversight Board has not provided the Legislature with the certification required by PROMESA § 204(c)(2) for Law 29 or the Joint Resolutions.

81.     Accordingly, the Oversight Board is entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that Law 29 and the Joint Resolutions are unenforceable and of no effect.

## COUNT V

### INJUNCTION COMPELLING THE GOVERNOR TO SUBMIT § 204(a) CERTIFICATIONS FOR THE NEW LAWS AND NON-CERTIFIED JOINT RESOLUTIONS

82.     The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 81 above as if set forth in full herein.

83.     The Oversight Board seeks equitable relief in the form of a mandatory permanent injunction compelling the Governor to submit compliant § 204(a) certifications for the New Laws and Non-Certified Joint Resolutions.

84.     The Governor's actions (or inaction) are causing immediate irreparable harm to the Commonwealth, by impairing and/or defeating the fundamental purpose of PROMESA which is to provide a "method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets," PROMESA § 101(a), primarily by controlling the review and certification of fiscal plans and annual budgets, monitoring activities of the government to ensure compliance with the fiscal plan, and controlling debt restructurings.  *See* PROMESA §§ 101(d)(1), 104(j), 108(a)(2), 201(c)(3), 201(e), 202(c)-(f), 204, 206, and 207, and Titles III and VI.

85.     There is no adequate remedy at law to compensate the Commonwealth for the injury caused by the Governor's actions (or inaction), which impair and/or defeat the purposes of PROMESA as determined by the Oversight Board.  If permitted to continue with his course of conduct, the Governor will undermine the Fiscal Plan and harm the Commonwealth's ability to

achieve financial stability.  In addition, an award of monetary damages will not serve to compensate the Commonwealth for the injuries caused by the Governor's actions (or inaction) because the Commonwealth's *own* funds would be required to pay any monetary award, defeating the purpose of any such award and only further exacerbating the injury.

86.     The balance of hardship favors the Oversight Board because the Governor's actions (or inaction), which impair and/or defeat the purposes of PROMESA as determined by the Oversight Board, threaten the Fiscal Plan, and undermine the Commonwealth's ability to achieve fiscal responsibility and access to capital markets.  The Governor will not be harmed by submitting compliant § 204(a) certifications.

87.     The public interest, as defined in PROMESA, would be well-served by the entry of an injunction.  In particular, an injunction, compelling the Governor to submit compliant § 204(a) certifications for the New Laws and the Non-Certified Joint Resolutions, would permit the Oversight Board to continue its work to ensure the Commonwealth achieves financial stability, and provides its residents with a reasonable, secure and sustainable future.

88.     PROMESA § 204(a)(5) empowers the Oversight Board to "take such actions as it considers necessary, consistent with [PROMESA], to ensure that the enactment or enforcement of [new] law will not adversely affect the territorial government's compliance with the Fiscal Plan…."

89.     The Governor has failed to provide § 204(a) certifications for the New Laws and the Non-Certified Joint Resolutions.

90.     PROMESA provides for equitable relief in respect of laws for which the Governor has not provided the necessary certificate.

91.    The Oversight Board is entitled to a mandatory permanent injunction compelling the Governor to submit compliant § 204(a) certifications for the New Laws and Non-Certified Joint Resolutions.

## COUNT VI

## LAW 29 VIOLATES PROMESA § 108(a) AND IS NOT ENFORCEABLE AND IS OF NO EFFECT BECAUSE IT IMPAIRS AND/OR DEFEATS THE PURPOSES OF PROMESA, AS DETERMINED BY THE OVERSIGHT BOARD

92.    The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 91 above as if set forth in full herein.

93.    PROMESA § 108(a)(2) provides Defendants shall not "enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board."  PROMESA § 108(a)(2).

94.    The Governor has failed to submit a compliant Section 204(a) submission for Law 29, nor has he obtained a certification from the Oversight Board permitting Law 29's reprogramming as required by PROMESA § 204(c).  In addition, Law 29 violates PROMESA § 207 because it purports to modify debt without prior Oversight Board approval.

95.    PROMESA's purpose is to "provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets," PROMESA § 101(a), which necessarily involves, among other things: (i) ensuring the balance between the Commonwealth's assets and liabilities are healthy, and its cash flow robust, *see, e.g*., PROMESA §§ 201(b)(1)(D), 201(b)(1)(F), 405(m)(1); (ii) ensuring the municipalities remain financially independent and able to cover their own obligations, including pension and healthcare costs, *see, e.g*., PROMESA § 201(b)(1)(B); and (iii) ensuring, pursuant to PROMESA § 314(b)(6), the Commonwealth can satisfy its obligations

30

under an eventual plan of adjustment by obligating the municipalities to pay a reasonable share. This is achieved primarily through Oversight Board-certified fiscal plans.  *See* PROMESA § 201(b)(1) ("[A] Fiscal Plan…with respect to the territorial government…[shall] provide a method to achieve fiscal responsibility and access to the capital markets.").

96.     The Oversight Board has determined that Law 29, if implemented and enforced by the Governor and/or AAFAF, "would impair or defeat the purposes of" PROMESA.  PROMESA § 108(a)(2).  Law 29 is significantly inconsistent with the Fiscal Plan.  Law 29 deprives the Commonwealth of hundreds of millions of dollars and thereby diminishes market access.  Law 29, by not causing the municipalities to pay for their own retired employees, also defeats fiscal responsibility.  Law 29 also diminishes the Commonwealth's ability to so invest in projects creating economic growth.

97.     In enacting Law 29, the Defendants have directly contravened a key component of the 2019 Fiscal Plan, as the new law "eliminate[d] the obligation of the municipalities to contribute to the government health plan and 'Pay as you Go' system."  *See* **Exhibit 12**.  In doing so, Defendants transferred hundreds of millions of dollars in obligations to the Commonwealth on an annual basis.  This enormous transfer of liability from the municipalities to the Commonwealth was neither anticipated by the Oversight Board, nor provided for in the Fiscal Plan.  Indeed, the Fiscal Plan's projection of surpluses and deficits assumes, among other things, the municipalities will pay the retirement benefits of their own retirees.  As such, Law 29 is significantly inconsistent with the Fiscal Plan, and will deprive the Commonwealth of funds it needs for investment, social services, and restructuring as provided in PROMESA § 201(b)(1).

98.     Law 29 is yet another step in a coordinated effort by the Governor, with the aid of the Legislature, to exercise control over, redirect, and repurpose various funds, in a manner

31

significantly inconsistent with the 2019 Fiscal Plan, for the purpose of undermining the Fiscal Plan, flouting the authority of the Oversight Board, and ultimately impairing and/or defeating the purposes of PROMESA.  The Oversight Board informed the Governor and the Legislature by letter dated June 12, 2019 that their actions related to the enactment of Law 29 are significantly inconsistent with the Fiscal Plan.  *See* **Exhibit 5**.  The Governor never even responded to the Board's letter.

99.     Pursuant to each of §§ 204 and 108(a)(2) of PROMESA, the Oversight Board is entitled to an order ruling Law 29 is not enforceable and is of no effect.

## COUNT VII

## THE JOINT RESOLUTIONS VIOLATE PROMESA § 108(a) BECAUSE THEY IMPAIR AND/OR DEFEAT THE PURPOSES OF PROMESA AS DETERMINED BY THE OVERSIGHT BOARD (PROMESA § 108(a))

100.     The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 99 above as if set forth in full herein.

101.     As noted, PROMESA § 108(a)(2) bars the Defendants from "enact[ing], implement[ing], or enforce[ing] any . . . resolution . . .  that would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board."  PROMESA § 108(a)(2).  PROMESA's purposes include "provid[ing] a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets," PROMESA § 101(a), which is achieved primarily through Board-certified fiscal plans.  *See* PROMESA § 201(b)(1).

102.     The Joint Resolutions, if implemented and enforced by the Defendants "would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board."  PROMESA § 108(a)(2).

32

103.    In implementing the Joint Resolutions, the Defendants directly contravened key components of the 2019 Fiscal Plan, as these resolutions together transfer tens of millions of dollars to the municipalities and other entities.  Such transfers were neither anticipated by the Oversight Board, nor provided for in the Fiscal Plan.  As such, the Joint Resolutions are significantly inconsistent with the Fiscal Plan, and will deprive the Commonwealth of funds it needs for investment, social services, and restructuring as provided in PROMESA § 201(b)(1).

104.    The Joint Resolutions are part of a coordinated effort by the Defendants to exercise control over, redirect, and repurpose various funds, in a manner significantly inconsistent with the 2019 Fiscal Plan, for the purpose of undermining the Fiscal Plan, flouting the authority of the Oversight Board, and ultimately impairing and/or defeating the purposes of PROMESA, as determined by the Oversight Board.

105.    Pursuant to PROMESA §§ 104(k), 204, and 108(a)(2), the Oversight Board is entitled to an order ruling the Joint Resolutions are not enforceable and are of no effect.

### COUNT VIII

**THE GOVERNOR'S POLICY OF NOT PROVIDING CERTIFICATIONS AS REQUIRED UNDER PROMESA § 204 VIOLATES PROMESA § 108(a) BECAUSE IT IMPAIRS AND/OR DEFEATS THE PURPOSES OF PROMESA, AS DETERMINED BY THE OVERSIGHT BOARD**

106.    The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 105 above as if set forth in full herein.

107.    PROMESA § 204(a) requires that the Governor submit within seven business days of the enactment of "any law during any fiscal year" the law, a cost estimate, and a compliance certificate to the Oversight Board.

33

108.    The Governor has repeatedly failed to comply with § 204(a)'s requirements – either by submitting § 204(a) certificates late, submitting incomplete certificates, or not submitting the certificates at all.

109.    Without timely, accurate certifications the Oversight Board is deprived of knowing about new legislation as it is enacted, the government's estimate of the fiscal impact of such legislation, and the government's assessment of whether such legislation is consistent with the Fiscal Plan.  These certificates serve PROMESA's purposes because they alert the Oversight Board to the impact new legislation has on the government's compliance with the Fiscal Plan, so the Oversight Board can determine whether to exercise its remedies under PROMESA § 204 – including preventing the enforcement or application of a new law.

110.    The Governor's actions, and inaction, with respect to providing the Oversight Board with compliance certificates, including his repeated and systematic failure to submit these certificates to the Oversight Board either on a timely basis or in many instances at all as required in PROMESA § 204(a), amounts to a policy that "impair[s] or defeat[s] the purposes of" PROMESA, as determined by the Oversight Board.

111.    Pursuant to PROMESA §§ 104(k), 204, and 108(a)(2), the Oversight Board is entitled to an order ruling the Governor's policy of not providing compliance certificates is unlawful and prohibited.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays that judgment be entered for it and against Defendants as follows:

A.      Declaring Defendants have failed to comply with PROMESA §§ 204(a)(2) and 204(a)(4);

B.      Declaring that Law 29 is not enforceable and is of no effect because it violates PROMESA §§ 204 and 207;

C.      Enjoining or otherwise preventing Defendants from implementing and/or enforcing Law 29;

D.      Ordering the Governor to submit compliant § 204(a) certifications for the New Laws, Non-Certified Joint Resolutions, and Law 29;

E.      Declaring the Joint Resolutions and Law 29 fail to comply with PROMESA § 204(c) and therefore are unenforceable;

F.      Enjoining or otherwise preventing Defendants from implementing and/or enforcing the Joint Resolutions;

G.      Ruling Law 29 is not enforceable and is of no effect because it impairs and/or defeats the purposes of PROMESA as determined by the Oversight Board (PROMESA § 108(a)(2));

H.      Ruling the Joint Resolutions are not enforceable and are of no effect because they impair and/or defeat the purposes of PROMESA as determined by the Oversight Board (PROMESA § 108(a)(2));

I.      Ruling the Governor's policy of not providing compliance certificates as required by PROMESA § 204(a) violates PROMESA and is prohibited because it impairs and/or defeats the purposes of PROMESA, as determined by the Oversight Board (PROMESA § 108 (a)(2)); and

J.      Granting Plaintiff such other and further relief as the Court finds just and proper.

35

Dated: July 3, 2019
San Juan, Puerto Rico

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner  (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Hadassa R. Waxman (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
        sratner@proskauer.com
        tmungovan@proskauer.com
        hwaxman@proskauer.com

*/s/ Guy Brenner*
Guy Brenner (*pro hac vice*)
**PROSKAUER ROSE LLP**
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Tel:     (202) 416-6800
Fax:     (202) 416-6899
Email:  gbrenner@proskauer.com

*Attorneys for the Financial Oversight and
Management Board in its own right and as
representative of the Commonwealth of
Puerto Rico*

36

**VERIFICATION**

I am the Executive Director of the Financial Oversight and Management Board for Puerto
Rico.  I have read the foregoing Complaint and know the contents thereof, and the same are true
to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 3, 2019

_____
Natalie A. Jaresko
Executive Director
Financial Oversight and Management Board for
Puerto Rico