# FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
# FOR PUERTO RICO



José B. Carrión III
Chair

Members
Andrew G. Biggs
Carlos M. García
Arthur J. González
José R. González
Ana J. Matosantos
David A. Skeel, Jr.

Natalie A. Jaresko
Executive Director

**BY ELECTRONIC MAIL**

May 5, 2019

Mr. Christian Sobrino Vega
Executive Director
Fiscal Agency and Financial Advisory Authority
Government of Puerto Rico

Dear Mr. Sobrino Vega:

On February 26, 2019, we pointed out that 24 Joint Resolutions, purporting to authorize over $30 million in expenditures, contained appropriations not approved by the Oversight Board and not contemplated by the certified Budget. We also requested certain information "to understand what actions the Government may have already taken in connection with these Joint Resolutions." You responded in letters dated February 28, 2019 and March 19, 2019 that these resolutions are valid because they "do not flow through the General Fund at any time and are not subject to its budget process" and "not subject to any further review" by the Oversight Board, "did not reprogram any funds included" in the certified Fiscal Plan or Budget and could only be reviewed pursuant to Section 204(a), and reprogrammed funds previously disbursed to municipalities over which the Oversight Board "lacks jurisdiction," among other reasons. You also failed to provide the requested information.

Before addressing the more technical assertions in your letters, allow me to provide some context as to what is at stake here. Basic, best budgeting practices match a fiscal year's revenues with expenditures in the same year and provide that all expenditures in a given year are contained within a budget. Puerto Rico's historic failure to follow these basic tenets of budget management is one reason for the passage of PROMESA and the creation of the Oversight Board.

Accordingly, PROMESA grants the Oversight Board exclusive control over budgets for all covered entities and that control would be rendered meaningless if the Governor and/or Legislature can authorize expenditures the Oversight Board does not certify. Only by including all appropriations in the budget process, as required by Section 202, can the Oversight Board exercise its exclusive authority to review, approve and certify a compliant budget and enforce the certified Fiscal Plan. No one disputes that PROMESA grants the Oversight Board exclusive control over budgets for all covered entities. That control, however, is rendered meaningless if the Governor and Legislature can authorize expenditures the Oversight Board does not certify, by assigning to uncertified expenditures the labels of resolutions, laws, reprograms, or anything else. Moreover,

Mr. Sobrino Vega
May 5, 2019
Page 2 of 5

neither the Governor nor the Legislature has ever identified for the Oversight Board and the public the sources and amounts of funds from prior years they claim they can spend under those labels outside the certified budget. Thus, the practices your letters champion each undermine the transparency, fiscal responsibility, and market access Congress drafted PROMESA to achieve.

Turning to your specific arguments, you assert that the Joint Resolutions "did not reprogram any funds included" in the certified fiscal plan or budget and could only be reviewed pursuant to Section 204(a). Moreover, you argue that nine of these Joint Resolutions, which reprogram monies of the Municipal Improvement Fund, "do not flow through the General Fund at any time and are not subject to its budget process" and "not subject to any further review" by the Oversight Board.

In order to be able to reprogram funds, the expenditures must have been included in the certified Budget in the first place. Appropriations that were never certified by the Oversight Board cannot be reprogrammed because they are unauthorized expenditures. Because the expenditures authorized by the Joint Resolutions are not included in the certified Budget, they are in violation of Sections 4 and 202 and are preempted. According to your reasoning, the Government is free to authorize any expenditure not contemplated in the certified Budget. Such interpretation would render PROMESA's budget approval process meaningless.

The fact that Joint Resolutions are legislative acts in no way exempts their authorization of appropriations from the iterative certification process required by Section 202. The purported appropriations covered by the Joint Resolutions are spending authorizations. The Commonwealth has always authorized its budget through the enactment of Joint Resolutions. Section 202(d)(1) contemplates that the Legislature will adopt the Commonwealth's budget through the enactment of legislation. Congress mandated that actions by the Commonwealth authorizing a budget would need to be certified by the Oversight Board in order to be "deemed approved" and "in full force and effect."

Recent decisions from the Title III Court and the U.S. Court of Appeals for the First Circuit reinforce these points. Far from concluding that the Oversight Board has "limited budgetary power" as your letter alleges, the U.S. Court of Appeals for the First Circuit has held that "PROMESA § 202 grants the Board exclusive authority to review, approve, and certify Territory Budgets. The Legislative Assembly's only responsibility under § 202 is to 'submit to the Oversight Board the Territory Budget adopted by the Legislature.'"[1] This is consistent with the decision from the Title III Court that:

> It beggars reason, and would run contrary to the reliability and transparency mandates of PROMESA, to suppose that a budget for a fiscal year could be designed to do anything less than comprehend all the projected revenues and financial resources, and all expenditures for the fiscal year. Since a certified budget is in full effect as of the first day of the covered period, means and sources of

---

[1] Mendez-Nunez v. Fin. Oversight & Mgmt. Bd. For P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 916 F.3d 98, 108 (1st Cir. 2019).

Mr. Sobrino Vega
May 5, 2019
Page 3 of 5

>  government spending are necessarily rendered unavailable if they are not provided for within the budget.[2]

While the Governor and AAFAF have appealed this opinion to the U.S. Court of Appeals for the First Circuit, they did not seek or obtain a stay of its ruling. Accordingly, utilizing appropriations authorized by the Commonwealth pre-PROMESA disregards the Title III court's ruling that "[a] prior year authorization for spending that is not covered by the budget is inconsistent with PROMESA's declaration that the Oversight Board-certified budget for the fiscal year is in full force and effect, and is therefore preempted by that statutory provision by force of Section 4 of PROMESA."[3] Continuing the practice of using prior year appropriations clashes with the Title III court's holding and constitutes poor budgetary practice.

As for the specific resolutions at issue, the argument regarding the Municipal Improvement Fund is centered upon creating an exemption from the budget certification processes for any expenditure that runs outside the General Fund, so that billions of dollars in Commonwealth funds that flow outside the General Fund would not be subject to PROMESA's budget approval process. There is no such exemption, and it would be illogical and contrary to PROMESA. Section 202 sets forth the process for approving all Commonwealth expenditures.[4] Nothing in PROMESA limits the Oversight Board's budget certification powers to the General Fund. In fact, the current certified Budget covers approximately $11.9 billion in Non-General Fund expenditures. Moreover, the Oversight Board would be hard-pressed to achieve fiscal responsibility for the Government if nearly $12 billion of the Commonwealth's expenditures were outside its budget approval authority.

Although COFIM was excluded from the Commonwealth Fiscal Plan, revenues that flow through the Municipal Administration Fund ("FAM" by its Spanish acronym) are part of the Commonwealth Fiscal Plan. The inclusion of expenditures from FAM and the Municipal Improvement Fund in the Fiscal Plan's financial model does not exempt these expenditures from the budget approval process required for all appropriations by Section 202. Note also that COFIM, as a component unit of the Commonwealth, is a covered instrumentality subject to the requirements of PROMESA. Moreover, the Municipal Improvement Fund is neither self-executing nor self-appropriating. If that were the case, the Legislature would not need to enact the Joint Resolutions appropriating the funds.[5] Commonwealth revenues that flow through FAM – as all other Commonwealth revenues – must be budgeted in accordance with Section 202 in order to be expended.

The six Joint Resolutions defined in your letter as "Municipalities Joint Resolution" also concern the reprogramming of appropriations from prior fiscal years. Some of the original appropriations

---

[2] Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. For P.R.), 330 F.Supp.3d 685, 704 (D.P.R. 2018).

[3] Rosselló Nevares, 330 F.Supp.3d at 704.

[4] We note that Joint Resolution 16-2019 (Senate Bill 359), House Bill 457 and House Bill 450, which would appropriate or reprogram funds from the Municipal Improvement Fund, are also subject to Oversight Board certification in accordance with Section 202(a).

[5] The enabling statute of the Municipal Improvement Fund requires that the Legislature appropriate the funds therein. See 13 LPRA § 32129.

Mr. Sobrino Vega
May 5, 2019
Page 4 of 5

related to such Joint Resolutions were originally enacted as far back as the 1980s and 1990s. And there are no sources of revenue tied to such expenditures, except for Joint Resolution 97-2018 that appropriates proceeds from a bond issuance in 2006, which were obviously not included in the revenue forecast issued under Section 202(b). For the reasons explained above, the use of prior year appropriations is a violation of PROMESA and is unsound budgetary practice. The fact that the Oversight Board so far has chosen not to cover municipalities does not affect in any way that Commonwealth appropriations in favor of municipalities – like any other type of appropriation – are subject to the Section 202 budget approval process or render those appropriations outside the jurisdiction of the Oversight Board. These Joint Resolutions also obscure the Commonwealth's true level of support to municipalities and clouds visibility into their fiscal condition.

The seven Joint Resolutions related to the Joint Underwriters Association ("ASC," by its Spanish acronym) reprogram funds originally appropriated by Joint Resolutions 17 and 18-2017, i.e., appropriations from prior fiscal years. Furthermore, these Joint Resolutions appropriate a special tax on ASC levied by Act 26-2017 and paid to the Commonwealth's General Fund. General Fund revenues can only be expended through the Budget certified by the Oversight Board. There is no statutory basis to the argument that the Commonwealth can appropriate funds that are not included in the certified Budget. As the Title III court has stated, if funds are not provided in the certified Budget, such revenues are not available.

All reprogramming of appropriations needs to follow the process required by PROMESA. Even if the Oversight Board approved Joint Resolution 1-2017, that does not except Joint Resolution 26-2018 from following the certification process. Moreover, the Commonwealth cannot reprogram appropriations authorized by the Commonwealth before Congress enacted PROMESA or the appointment of the Oversight Board. There is nothing "natural" about the assumption that appropriations solely authorized by the Commonwealth are consistent with the Budget certified by the Oversight Board. Congress created the Oversight Board to provide fiscal responsibility and established a budget approval process as one of the pillars of PROMESA's objectives.

\* \* \*

Section 202 requires all Commonwealth expenditures to be included in the certified Budget. Appropriations, whether from the General Fund or FAM or any other Commonwealth source, must be included in the certified Budget for the Commonwealth. The Oversight Board is not asserting that joint resolutions are never appropriate. Rather, if a particular expenditure is required mid-fiscal year it can be introduced by joint resolution, but that joint resolution must go through the reapportionment approval process. Moreover, if an appropriation contemplated in a joint resolution is expected to be a recurring expense, such appropriation should be incorporated into the general budget process for the next fiscal year. The use of mid-fiscal year appropriations for recurring expenditures is a poor budgetary practice.

Transparent fiscal management is all the more necessary given the lack of current audited financial statements and the poor visibility on accrued expenditures. Moreover, if there is no shared commitment to following best budgeting practices, we will not reach the statutory requirement

Mr. Sobrino Vega
May 5, 2019
Page 5 of 5

under PROMESA § 209 of developing budgets in accordance with modified accrual accounting, which is a necessary step for the termination of the Oversight Board.

Finally, the Government did not provide by March 8, as requested by the Oversight Board, a certification whether any encumbrances or disbursements have been made pursuant to the Joint Resolutions, the amount of any encumbrances or disbursements, and the corresponding line item. As previously indicated, none of the appropriations or reprogrammings contained in the Joint Resolutions are contemplated by the certified Budget nor were they approved by the Oversight Board. The Oversight Board requests this information no later than May 15, 2019.

Amounts expended from General Fund revenues will require reapportionments or budget reductions to be made in order to stay within the fiscal limits of the current certified Budget. Special revenue related expenditures that were excluded from the certified Budget require documentation to be added to the certified Budget for fiscal year 2019. All of the appropriations included in Joint Resolutions that are expected to be recurring spending should be incorporated into the appropriate portion of the fiscal year 2020 budget. While the Joint Resolutions currently do not comply with PROMESA's budget approval process and are preempted, we stand ready to work with you and analyze possible expenditures you believe would be consistent with the certified Fiscal Plan and should be budgeted in accordance with Section 202.

If you do not provide the requested information by May 15, 2019, the Oversight Board will proceed with exercising its authority under PROMESA sections 203 and 204, among others.

Sincerely,

*[signature]*

Natalie A. Jaresko

CC:    Honorable Ricardo A. Rosselló Nevares
         Honorable Raúl Maldonado Gautier
         Honorable Thomas Rivera Schatz
         Honorable Carlos J. Méndez Núñez