# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br>Debtors. | PROMESA Title III<br>No. 17 BK 3283-LTS |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br>Debtor. | PROMESA Title III<br>No. 17 BK 4780-LTS<br><br>(This court filing relates only to Case No. 17 BK 4780-LTS) |

### MOTION BY ENVIRONMENTAL INTERVENORS IDENTIFYING EXPERT WITNESSES AND NOTIFYING REQUEST FOR PRODUCTION OF DOCUMENTS TO THE GOVERNMENT PARTIES FOR 9019 MOTION HEARING

**TO THE HONORABLE COURT:**

**COME NOW** the Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc., Enlace Latino de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club Puerto Rico, Inc., Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti Incineración, Inc., and Amigos del Río Guaynabo, Inc., (hereinafter, the "Environmental Intervenors" or "we") through their undersigned representative, and respectfully states and prays as follows:

1. On June 20, 2019, the Honorable Court entered a *Revised Order Extending and Establishing Certain Deadlines... [ECF No. 1235]*. (Docket #1366). The court stated July 5th, 2019, as the deadline to serve amended preliminary witness lists, expert witness disclosures, deposition notices, and supplemental document requests.

1

2. The undersigned oppose the Restructuring Support Agreement (RSA),[1] including, but not limited to the following reasons:

i) The effect of the RSA is to impose an unreasonable and unacceptable burden to the use, production, and development of renewable energy.

ii) The RSA cannot be exempt from the applicability of Law-17-2019 and other environmental protection laws in Puerto Rico.

iii) The RSA will impose an unfair economic and environmental burden on poorer communities both as direct effect of the securization charge for decades to come and the continued and incremented emissions from the use of fossil fuels.

iv) It is the Court's responsibility under PROMESA to create a restructured PREPA that can both pay its restructured legal debts and carry out its obligation to provide safe, affordable and reliable electricity to the homes and businesses on the island.[2] PREPA has submitted two

---

[1] Including but not limited to the following RSA provisions:
-"Implementation Date: The cutoff date for eligibility for treatment as a Grandfathered BTMG Customer (see below) shall be September 30, 2020 (the "Implementation Date")." Proposed Order attached to Joint Motion of Puerto Rico Electric Power Authority and AAFAF, at p. 122 of 150, Doc# 1235-1 (May 10, 2019).
-"Grandfathered BTMG Customers: Customers with behind the meter generation ("BTMG Customers") that was approved, in place, and operational prior to the Implementation Date (each, a "Grandfathered BTMG Customer") will be subject to a monthly Transition Charge in the form of a fixed charge calculated for each month by multiplying the Transition Charge Rate applicable to such month by a monthly average of the Grandfathered BTMG Customer's Net Consumption over the prior twenty-four (24) month period, after taking into account a three (3) month lag time (such period, the "Twenty-Four Month Period"). The fixed charge shall be revised as set forth in (1) and (3) of "Fixed Charge Updates." Any Grandfathered BTMG Customer whose behind the meter generation capacity increases by more than 20% above the capacity in place on the Implementation Date shall cease in the next billing period and in all subsequent billing periods to be considered a Grandfathered BTMG Customer to the extent of the behind the meter generation capacity increase. Notwithstanding anything to the contrary provided in this Term Sheet, all Grandfathered BTMG Customers shall cease to be Grandfathered BTMG Customers on the twentieth (20th) anniversary of the Effective Date and each such Customer shall thereafter be a Non-Grandfathered BTMG Customer." *Id*.
-"NonGrandfathered BTMG Customers: All BTMG Customers other than Grandfathered BTMG Customers, including former BTMG Customers that cease to be Grandfathered BTMG Customers (each, a "Non-Grandfathered BTMG Customer"), shall be obligated to pay the Servicer for the cost of installing at, a minimum, a revenue grade meter to measure the amount of electricity that is generated behind the meter (each such meter, a "BTMG Meter"). The BTMG Meter shall be in place and functioning by the time the Customer's behind the meter generation system first comes online. The BTMG Meter shall be installed immediately after the behind the meter generation system and before such generated electricity reaches any load..." *Id*. At pp. 122-23 of 150.
[2] Sec. 7: "Except as otherwise provided in this chapter, nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with

plans to carry out these two tasks: the RSA before this Court, and the Integrated Resource Plan (IRP) before the Puerto Rico Energy Bureau. PREPA's two plans are in sharp conflict: it is impossible for PREPA to carry out both. The levels of debt that PREPA seeks in the RSA, make it impossible for PREPA to carry out its own IRP. This court cannot approve the RSA until PREPA makes sense of its two different plans.

v) The debts that this RSA would impose would make it impossible for PREPA to provide safe, affordable and reliable electricity. PREPA's Integrated Resource Plan explains that for PREPA to remain financially viable, it must: (a) minimize the cost of supply; (b) drastically reduce the dependence on imported fuels and the associated volatility; and (c) support affordable rates that promote financial viability at both sides of the meter.[3]

vi) Puerto Ricans will be forced to continue relying on an ageing fleet of plants powered by imported fuels that would increase the dire health impacts of those plants on Puerto Rican communities.

vii) PREPA will be forced to impose unaffordable rates and fees on Puerto Ricans, like the "Sun Tax". This does not provide financial viability on either side of the meter, because PREPA will continue to borrow to pay for billions of dollars of imported fuel annually, inevitably leading to another round of debt restructuring.

3. The undersigned announce as expert witness Dr. Agustín Irizarry-Rivera, professor at the Department of Electrical Engineering and Computers at the Mayagüez Campus of the University of Puerto Rico. Dr. Irizarry obtained his Bachelor degree from the University of Puerto Rico Mayagüez in 1988, his master degree from the University of Michigan, Ann Arbor

---

Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory."
48 U.S.C.A. § 2106 (West).
[3] Integrated Resource Plan 1-2.

3

in 1990 and his Ph.D. from Iowa State University in 1996, all degrees in electrical engineering. Dr. Irizarry was elected as Citizen Representative to the PREPA Governing Board from June 2012 to June 2014. He has vast experience in electric power systems dynamics, renewable energy resources and sustainable integration of renewables into existing power grids. Dr. Irizarry's Curriculum Vitae is attached as Exhibit [1].

4. Dr. Irizarry will provide testimony explaining the harmful impacts of the RSA on Puerto Rico's commitment to energy independence, energy affordability, and hurricane resilience. Dr. Irizarry will further explain how the Agreement's fixed Transition Charge will impede PREPA's efforts to comply its obligations to install Energy Efficiency and Distributed Renewable Generation to the island's electricity grid. Dr. Irizarry will further explain how under the RSA, PREPA cannot minimize the cost of supply or end its addiction to imported fuels. Instead, Puerto Ricans will be forced to continue relying on "an ageing generation fleet that burns costly [imported] liquid fuels… that does not meet environmental regulations… has poor reliability, and is inflexible…"[4]

5. Also, the undersigned announce as expert witness Mr. Daniel Gutman. In more than a dozen matters, Mr. Gutman has provided expert analysis of the harmful impacts of emissions from utility projects on human health. Mr. Gutman has testified before administrative agencies as an expert, on behalf of the Environmental Protection Agency and local environmental organizations. Mr. Gutman holds a Bachelor of Science degree from the Massachusetts Institute of Technology and a Master of Science degree from the University of Illinois. Mr. Gutman's resume is attached as Exhibit [2].

---

[4] Integrated Resource Plan 1-2.

6. Mr. Gutman will present testimony on the current violations and health impacts from emissions at Puerto Rico's fossil fuel power plants. Mr. Gutman will further explain the harmful health impacts from that fleet's emissions and from the RSA on Puerto Ricans communities.

7. The undersigned notify that they have requested from the Financial Oversight and Management Board for Puerto Rico (FOMB), in its capacity as representative of the Puerto Rico Electric Power Authority (PREPA) pursuant to Section 315(b) of PROMESA, and the Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF), collectively, the Government Parties, the production documents via email and registered mail.

8. The undersigned notify that they have requested to depose Edison Avilés-Deliz, PE, Esq., Chairman of the Puerto Rico Energy Bureau, with Unión de Trabajadores de la Industria Eléctrica y Riego (UTIER) on July 19, 2019 at 2:00 pm at 252 Ponce de Leon Ave Suite 700, Citi Tower, Hato Rey Puerto Rico, (subject to a change of venue depending on the numbers of lawyers that are present).

**WHEREFORE,** it is respectfully requested from this Honorable Court to take notice of the above for all relevant purposes.

**I HEREBY CERTIFY** that, on this same date, I filed this document electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record and CM/ECF participants in this case.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 5th day of July 2019.

S/WILLIAM SANTIAGO-SASTRE
USDC PR NO. 201106
P.O. BOX 1801
SABANA SECA, P.R. 00952-1801
(786) 622-3939
wssbankruptcy@gmail.com

5