J6S3PRO1

```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF PUERTO RICO
------------------------------x
In re:
                                        PROMESA
                                        Title III

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
as representative of
                                  No. 17 BK 3283-LTS
                                  No. 17 BK 3566-LTS
                                  No. 17 BK 3667-LTS
                                  No. 17 BK 4780-LTS
                                  (Jointly Administered)


THE COMMONWEALTH OF PUERTO
RICO, et al.,

             Debtors.

------------------------------x

                                  New York, N.Y.
                                  June 28, 2019
                                  10:00 a.m.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J6S3PRO1

1    Before:

2                        HON. LAURA TAYLOR SWAIN

3                                    District Judge

4                        HON. JUDITH GAIL DEIN

5                                    Magistrate Judge

6
                            APPEARANCES
7
PROSKAUER ROSE LLP
8         Attorneys for Financial Oversight and Management Board for
     Puerto Rico
9    BY:  EHUD BARAK
          BRIAN S. ROSEN
10
     PAUL HASTINGS LLP
11        Attorney for The Official Committee of Unsecured Creditors
     BY:  LUC DESPINS
12
     O'MELVENY & MYERS LLP
13        Attorneys for The Puerto Rico Fiscal Agency and Financial
     Advisory Authority
14   BY:  DANIEL SHAMAH
          MARIA J. DICONZA
15
     CADWALADER, WICKERSHAM & TAFT, LLP
16        Attorneys for Assured
     BY:  WILLIAM J. NATBONY
17          CASEY SERVAIS

18   WACHTELL, LIPTON, ROSEN & KATZ
          Attorneys for Cortland Capital Market Services LLP
19   BY:  EMIL A. KLEINHAUS

20   KRAMER LEVIN NAFTALIS & FRANKEL, LLP
          Attorneys for Ad Hoc Group
21   BY:  THOMAS M. MAYER

22   LAW OFFICES OF JOHN E. MUDD
          Attorneys for Alpha Guards Management and Cabrera & Ramos,
23   Inc.
     BY:  JOHN E. MUDD

24

25

J6S3PRO1

```
1    WEIL, GOTSHAL & MANGES, LLP
          Attorneys for National
2    BY:  ROBERT BEREZIN
              DEBORA HOEHNE
3
     BROWN RUDNICK, LLP
4         Attorneys for The Special Claims Committee
     BY:  ROSA SIERRA
5           SUNNI BEVILLE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J6S3PRO1

1       (In open court)

2       JUDGE SWAIN:  Buenos dias.  Please be seated.

3       (Case called)

4       JUDGE SWAIN:  Again, good morning, parties, counsel,

5  and interested members of the public and the press here in New

6  York and in San Juan, and to the telephonic participants.

7       We're here today for oral argument on four motions.

8  First, the urgent joint motion for approval of a stipulation

9  between the special claims committee and the official committee

10  of unsecured creditors relating to joint prosecution of certain

11  causes of action of PREPA, which is docket entry 7519, and then

12  we'll hear two motions together, the urgent motion of the

13  unsecured creditors committee for an order pursuant to Section

14  926, which is docket entry 7484, and the urgent motion of the

15  oversight board to approve a stipulation authorizing joint

16  litigation of certain matters with AAFAF, which is docket entry

17  7686.  And then finally, the fourth motion on the agenda is the

18  omnibus motion of the special claims committee regarding

19  certain litigation case management procedures and procedures

20  for the approval of settlements, docket entry 7325, and Judge

21  Dein will preside over that aspect of today's proceedings.

22       So, before we begin, my usual reminder.  Consistent

23  with court and judicial conference policies and the orders that

24  have been issued there is to be no use of any electronic

25  devices in the courtroom to communicate --

J6S3PRO1

1          THE DEPUTY CLERK:  Judge, one second.

2          Okay, Judge.

3          JUDGE SWAIN:  Were we on at all before?

4          THE DEPUTY CLERK:  No.

5          JUDGE SWAIN:  We're live with Court Solutions.

6    Belated greetings to those who are joining us telephonically

7    from Court Solutions.  I went over the four matters that we'll

8    hear today.  This is Judge Swain.  The first three of them I

9    will hear, and then Judge Dein will hear the motion relating to

10   the litigation and settlement approval procedures, and you're

11   just in time for my usual warning about electronic devices

12   which I will recommence now.

13          I remind you that consistent with court and judicial

14   conference policies and the orders that have been issued, there

15   is to be no use of any electronic devices in the courtroom to

16   communicate with any person, source or outside repository of

17   information, nor to record any part of the proceedings.

18          Thus, all electronic devices must be turned off unless

19   you are using a particular device to take notes or to refer to

20   notes or documents that are already loaded on to the device.

21   All audible signals, including vibration features, must be

22   turned off.  No recording or retransmission of the hearing is

23   permitted by any person, including, but not limited to, the

24   parties or the press.

25          Anyone who is observed or otherwise found to have been

J6S3PRO1

1   texting, e-mailing or otherwise communicating with a device

2   from a courtroom during the court proceeding will be subject to

3   sanctions, including, but not limited to, confiscation of the

4   device, and denial of future requests to bring devices into the

5   courtroom.

6          Counsel, I remind you that due to technological

7   limitations in this courtroom, the only live microphone for you

8   to use will be the microphone located at the podium.  And

9   please remember to speak clearly and directly into that

10  microphone, when you come up, so that the people in both

11  courtrooms as well as those listening in via Court Solutions

12  will be able to hear clearly.  And I thank you all for

13  continuing to cooperate with these procedures.

14         So with that we'll turn to our first agenda item,

15  Mr. Despin.

16         MR. DESPIN:  Good morning, your Honor.  Luc Despin

17  with Paul Hastings on behalf of the committee.

18         This really not should not be controversial.  No

19  objections were filed.  And just to set the record, on this,

20  this is the joint motion of the special claims committee and

21  the committee to prosecute jointly certain what would be

22  referred to before as garden-variety avoidance actions.  So

23  these are vendors that receive payments that should be

24  recoverable.  And in the past, I've described generally what

25  these were and I'll do that again.

J6S3PRO1

1          So these are folks that either have received a

2    preference or fraudulent transfer, and in total, I would say

3    that we're talking about around 10 entities.  Some of those may

4    enter into tolling agreements and therefore they will not be

5    sued, so if people see only seven complaints, it doesn't mean

6    that we don't have tolling agreements with others.  It will be

7    around 10.  This is still fluctuating because there is still

8    some last-minute review that's being done, but around 10

9    entities will be the targets and they're all of the

10   garden-variety type of claims that your Honor has seen before

11   for the Commonwealth and for HTA.

12          JUDGE SWAIN:  Do you have the same sort of minimum

13   floor?

14          MR. DESPIN:  Yes, your Honor.  And so that those, that

15   those floors were used and, in fact, more than that, some

16   vendors were excluded because in the opinion of the oversight

17   board, they were critical vendors, so therefore, so we're

18   trying to minimize the impact which was felt in the past

19   regarding the Commonwealth and HTA.  But yes, we're using

20   generally the same floors, not to sue people for small amounts

21   etc., etc.  Yes.

22          The only thing, your Honor, is that you may have

23   noticed that on June 26 we filed a revised stipulation to

24   address the concerns of the PREPA lenders, bondholders I should

25   say, because they were concerned that perhaps this stipulation

J6S3PRO1

1    could be read as authorizing us to bring claims against them

2    and we have clarified that no, this stipulation does not

3    authorize that, that doesn't contemplate that at all.  I

4    believe they've seen that revision.  It's in docket no. 7673,

5    we modified two provisions of the stipulation.  And also I

6    believe, your Honor, that we sent to your Honor a Word version

7    of the order that reflects those changes.

8            So that's really all I have to say about the

9    stipulation, your Honor, at this time.  Unless you have

10   questions.

11           JUDGE SWAIN:  No, I don't.  And so I'll just state my

12   ruling.

13           Before the Court is the movant's unopposed urgent

14   joint motion for entry of an order approving stipulation and

15   agreed order between the Special Claims Committee of Financial

16   Oversight & Management Board and Official Committee of

17   Unsecured Creditors related to joint prosecution of certain

18   causes of action of Puerto Rico Electric Power Authority.

19   Docket entry number 7519 in case 17-3283.  I'll refer to that

20   as the motion.  A revised proposed stipulation has been filed

21   at docket entry number 7673.

22           The Court has considered carefully the motion and the

23   terms of the revised proposed stipulation.  For the reasons

24   stated in the unopposed motion, and for substantially the

25   reasons stated on the record of the April 24, 2019, and

J6S3PRO1

1   June 12, 2019 omnibus hearings, in connection with similar

2   stipulations regarding the Commonwealth, HTA and ERS related

3   litigations, the motion is granted.

4         The Court will enter an appropriate order approving

5   the revised stipulation, and I am assuming from what you what

6   you've said, we already have that in Word form.

7         MR. DESPIN:  Yes, your Honor.  But we're happy to

8   resubmit it.

9         JUDGE SWAIN:  We'll let you know if we need that.

10        MR. DESPIN:  Thank you, your Honor.

11        JUDGE SWAIN:  Thank you very much.

12        So now we go to what I am calling agenda items two and

13  three.  The two motions concerning co-trustee appointments

14  under Section 926, which were initiated at docket entry 7484

15  and 7686.  I will hear them together, and we have allotted 45

16  minutes in total.  And Mr. Despin, you're starting out with 14

17  minutes I believe.

18        MR. DESPIN:  That's correct.  And I'm leaving seven

19  and a half for the reply at the end.

20        JUDGE SWAIN:  Yes.

21        MR. DESPIN:  Okay, your Honor.  Thank you.

22        First I think I'd like to start -- and by the way, I'm

23  not going to repeat everything that's in our papers.  I know

24  we've been at this two years, I know you've read everything, so

25  I won't go through all of that.  But I wanted to give your

J6S3PRO1

1   Honor an update.  President Trump submitted the current board

2   members for reappointment until the end of their current term

3   which will be some time in August.

4          JUDGE SWAIN:  I read the newspapers too.

5          MR. DESPIN:  Okay.  So that was submitted.  But I want

6   to say there's no doubt that that will not be acted on between

7   now and Monday.  Monday being the statute of limitation

8   deadline.

9          So let me jump right into it, your Honor.  The

10  statutory basis is refusal.  So that's the first threshold

11  issue.  And our belief is that, given the current state of

12  play, which is that the First Circuit has determined that the

13  appointment was legal, there are petitions that were granted by

14  the Supreme Court on both sides of the issue, one saying -- so

15  you know all this.

16         JUDGE SWAIN:  I read that in the paper too.

17         MR. DESPIN:  Okay.  Given all that, that there is a

18  risk, and I would say a real risk that the board could be found

19  to be currently acting without authority.  And so I would start

20  with the following principle, which is if the board told us

21  today that they intended to file the complaint on Tuesday, or

22  let's say on Wednesday to make it very clear, and that they

23  have all sorts of reason why that's still timely, etc., etc., I

24  don't think that anyone would say that's not refusal.

25         So, we will say that's not what they're doing.

J6S3PRO1

1    They're telling us they will file.  Our point is given the

2    current real uncertainty about their power to act, we believe

3    that we fit within the refusal provision of the statute.

4            Obviously, if you don't believe that, I think that's

5    the end of the inquiry.  And so, if that is a refusal -- and I

6    think they don't discard that risk.  So they are saying but

7    we've addressed that risk by adding AAFAF as a party.

8            So, the first point there is that the party they're

9    adding is a party as the oversight board.  But that signed an

10   agreement to allow those claims.  So the stipulation they have,

11   the RSA agreement that's not before the Court today, but that's

12   not going to be before the Court until September 11, really

13   supports massive payments being made to those holders, which

14   entail that those claims are valid and not subject to

15   challenge.  So from a positional point of view the board and

16   AAFAF have, are supporting this.

17           JUDGE SWAIN:  So they're proposing to settle the

18   issues regarding -- I think they would tell me they were

19   proposing to settle the claims in the manner laid out in the

20   RSA.

21           MR. DESPIN:  Correct.  But to be clear, that's

22   inconsistent with the position that these claims are worth

23   zero.  So we're not getting to that now.  But the point is --

24           JUDGE SWAIN:  Even you are proposing to hold off lien

25   challenge litigation until a determination is made as to

J6S3PRO1

1   whether the 9019 is the approved or not.

2           MR. DESPIN:  That's correct.  But my point is to have

3   both parties as co-plaintiffs supporting or not advocating the

4   avoidance of those claims is really counterintuitive for a 926

5   motion.  Because the purpose of 926 is to get the government

6   out of the picture so that the claims can be pursued.  And

7   we're not proposing to be pursued.  Our point is if Supreme

8   Court rules that they're without authority today, then under

9   their stipulation, the party that would remain standing there

10  would be AAFAF.

11          And the point is that that shouldn't be because that

12  is the debtor or at least they purport to be the debtor in that

13  case, as well as now they are saying they are the creditor.  So

14  it makes no sense from a 926 point of view to have the entity

15  that supports these claims be the party challenging the claims.

16  That's the first part.

17          JUDGE SWAIN:  Well, but we're not talking about

18  intercreditor litigation.  We're talking about litigation that

19  if it's brought that will be for the benefit of the estate of

20  PREPA.  And as has been pointed out many times, all of PROMESA

21  has the board as the point person for all the Commonwealth

22  entities.  Normal governmental structures have the Commonwealth

23  at the top of all of its tree of entities.  It's not a bizarre

24  situation.  And PREPA wouldn't be suing PRASA or vice versa in

25  these particular litigation scenarios.

J6S3PRO1

1          So, I see your structural point, but I don't see it as

2     a house-on-fire structural point.

3          MR. DESPIN:  No.  But the point is that to have the

4     entity that is suing or potentially asserting those claims to

5     be the debtor when PROMESA said that the oversight board is

6     acting for the debtor in the context of these cases, Title III

7     cases, there's no doubt about that.  And now to effectively

8     delegate to the entity that Congress has said should not be

9     involved in the conduct of a Title III case turns PROMESA and

10    926 on its head.  That's our position, your Honor.

11         On top of that, we don't believe that they are -- that

12    they have the statutory capacity to do that, under the statute

13    that appoints them.  And there's very specific language about

14    what they can do in terms of litigation and that's not it.  And

15    that's where there is a big difference between the right to be

16    heard.  Of course they have the right to be heard.  But the

17    right to be heard under the code does not cure any statutory or

18    local law capacity issues that they may have.  And under the

19    statute that we cited, we believe that they don't have the

20    capacity.  And they don't have the capacity to be the creditor

21    moving under 926.  And you can see from the proof of claim that

22    that's not them that filed it, it is the entity itself.  PRASA.

23         JUDGE SWAIN:  But your committee and specifically

24    PREPA creditor, a member of your committee, has made a motion

25    and so it's cued up the issue of 926.  Why isn't it sufficient

J6S3PRO1

1    that you've put the issue on the table for the Court to take

2    action?

3              MR. DESPIN:  Because we filed a motion to appoint the

4    committee as the trustee and no one else.

5              JUDGE SWAIN:  But the Court isn't bound by your

6    preference.  The Court has discretion to choose an appropriate

7    trustee, which may or may not be you, correct?

8              It's only a problematic refusal if it is a refusal

9    that results in you being appointed, and otherwise that's not a

10   problematic refusal?  That would be sort of an odd position.

11             MR. DESPIN:  We filed a motion to appoint the

12   committee as a trustee.  If you believe that gives you the

13   power to appoint somebody else, that may be.  But I think I

14   would, at the end of the day, your Honor, it all depends on our

15   tolerance or your tolerance for risk.  Meaning, that we're

16   dealing with $8 billion of claims.  There's no doubt that the

17   objections are valid and valuable, let's put it that way,

18   because the board has taken the position that these people have

19   zero collateral.  Remember those quotes from the paper.  Zero

20   collateral.  You only get there if you file these objections.

21   And the point is if we turn out to be wrong, meaning that this

22   fix, the AAFAF fix, doesn't fix the issue, then we're in a

23   world of hurt.  And that's the committee's position.

24             So, I'm not saying more clearly than that.  It's,

25   given what we're dealing with here, we are not dealing with a

1    discovery dispute or something like that.  We're dealing with

2    all or nothing.  Either a court will determine one day that

3    these claims were timely brought or not, based on this issue,

4    and in that context, why should the -- you use the term

5    estate -- the debtors take any risk?

6           JUDGE SWAIN:  Well, isn't there a risk if we get into

7    a worst-case scenario from the perspective of the non-Aurelius

8    count?  Meaning, if Aurelius wins, the appointment is

9    unconstitutional, the Title III is unconstitutional, and the

10   UCC was appointed in the context of the Title III.  And if the

11   Title III is invalidated, don't you go poof also?  Maybe the

12   adversary goes poof, maybe not, since it was filed to preserve

13   certain statutes of limitations periods and preserve certain

14   claims, I don't know.  I haven't thought that far down the

15   road.

16          But isn't there a possibility in the worst case you go

17   poof because you were created within the Title III, but AAFAF

18   was created by the government of Puerto Rico, and unless the

19   Supreme Court says that's illegitimate too, it may be AAFAF is

20   an entity that survives all that.

21          MR. DESPIN:  Your Honor, I think that's the easiest

22   point which is we made in our objection yesterday.  If the

23   Title III cases are void ab initio, everything we're doing,

24   including what we're doing right now, is irrelevant.  Meaning

25   that we're only trying to deal with what is fixable.  If the

J6S3PRO1

1    Court, Supreme Court rules that it is void ab initio, that

2    there is nothing we can do now that fixes that issue.  And the

3    546 statute of limitations will not have run because there is

4    no case.  There is no case pending.

5         But, what we can fix is the argument that, since its

6    appointment, the board has been acting illegally.  That's in

7    the Supreme Court cert petition which is here.  That's a

8    petitioner in this case.  They say that black and white.  That

9    is fixable, and it is a guarantee that it's fixable through the

10   appointment of the committee in the sense that, yes, if all the

11   cases go poof, then we can't fix that.  But, if what is fixable

12   is what I just described, and there's no doubt that the

13   committee appointment does that.

14        And therefore, I go back to this same point which is,

15   given the amounts at stake, shouldn't there be a zero risk

16   approach?  And it's no answer to say that the whole case could

17   all go away.  That's true, but there's nothing we can do to fix

18   that today.  What we can do today is preclude a windfall, a

19   potential windfall to the purported secured creditors at PREPA.

20        JUDGE SWAIN:  May I ask you a question.  In your

21   opposition to the cross motion, you called out a particular

22   provision of the proposed Oversight Board AAFAF stip and said

23   it should be clarified to reflect that it is not otherwise

24   binding on entities that are not parties to it.  And I would

25   just like you to explain to me why you're seeking that

J6S3PRO1

1    modification if I were to go that way.

2              MR. DESPIN:  I think it's been fixed.  This is an

3    issue that was raised by the fuel line lenders, and my

4    understanding, Mr. Kleinhaus will be up here in a minute.

5    He'll explain that he has an agreement with the board with some

6    language in the event that your Honor were to sign the AAFAF

7    stipulation.  So it's been resolved.

8              JUDGE SWAIN:  Thank you.

9              MR. DESPIN:  That issue has been resolved.  Thank you.

10             JUDGE SWAIN:  Thank you.

11             Good morning Mr. Barak

12             MR. BARAK:  Good morning, your Honor.  Ehud Barak,

13   Proskauer Rose for the oversight board as representative of

14   PREPA.

15             JUDGE SWAIN:  And you have eight minutes.

16             MR. BARAK:  That's right.  I think I'll go just

17   procedurally, I'll start with our motion and answer reply to

18   Mr. Despin's motion as I go along, make it more efficient.

19             I think where we are in the case is the oversight

20   board motion is reasonable, it mitigates the risk, it preserves

21   the causes of action, it allows oversight board to retain

22   control of the case and move forward with the PREPA RSA.

23   That's the best of both worlds, your Honor.

24             This is, in addition to that, it is the most efficient

25   outcome because should the Court really approve the RSA, then

J6S3PRO1

1   we don't have to replace a trustee or be in violation of the

2   Court's order the moment it is entered.

3          The fact that the committee's continuing their motion

4   after we already agreed to enter into the stipulation with all

5   other causes of action of PREPA, and the fact that we basically

6   proposed the solution before the Court, gets me to only one

7   conclusion.  That the committee wants to retain this cause of

8   action for leverage.  No other reason, your Honor.

9          The committee argues that it is an insurance, and

10  tried to basically come up with an argument that AAFAF, the

11  Commonwealth entity with the Enabling Act is for some reason it

12  doesn't have the capacity to be a trustee.  I think my

13  colleague from O'Melveny will address more specifically why

14  this Enabling Act for AAFAF is compliant to have the capacity

15  to do, to act as a 926(a) trustee.

16         I think the committee is playing a dangerous game in

17  their attempt basically to say that AAFAF doesn't have capacity

18  because the statute doesn't provide for it.  They're forgetting

19  that Section 1103 of the bankruptcy code which enumerates the

20  power of the committee doesn't say that the committee can be a

21  trustee.  It only says the committee can ask to appoint a

22  trustee.  Raising this type of argument is counterproductive

23  and might come back at us, both the committee and the oversight

24  board if somebody later in the future adopts this kind of

25  argument and tries basically to attack the stipulation.  And

J6S3PRO1

1    all this is done only to retain leverage here and to retain

2    control over without thinking of the repercussions of those

3    arguments.

4            For the avoidance of doubt, the oversight board

5    believes both the committee and AAFAF has the capacity to be a

6    926(a) trustee.

7            Going through the prongs of 926(a) and basically our

8    motion, I think your Honor was correct, we fully agree that

9    once a creditor files a motion for 926(a), we meet the

10   requirements on a preliminary request of the creditor.  It

11   doesn't matter who the creditor is.

12           I think, in addition to the creditor that moved with

13   the UCC, we have AAFAF is representative of PRASA, which is

14   also an unsecured claim holder of PREPA.  So we think

15   independently we meet this criteria.

16           Since the oversight board has consented to AAFAF being

17   a co-plaintiff and will not bring the lien challenge alone,

18   there is constructive refusal vis-a-vis the oversight board

19   agency's motion so we meet the second prong.

20           Independently of 926(a), we think that there is an

21   additional route to find that AAFAF could be a co-trustee with

22   the oversight board and that's a derivative potential standing.

23   Committee counsel attacked that route, but he forgets he

24   himself raised that as one of the reasons that the committee

25   could be appointed as a trustee.

J6S3PRO1

1            Your Honor in the April 24 decision on page 237, line

2    16 to 19, mentioned this as an independent reason why she is

3    approving the stipulation appointing the committee as being a

4    co-plaintiff and mentioning SDN.  So, for him now to argue that

5    this is for some reason subject to the Aurelius risk is at

6    least disingenuous.

7            To answer to the question itself in its papers, I

8    don't thinking it is subject to the Aurelius risk because

9    eventually the power that appoints AAFAF as a co-trustee is not

10   necessarily the derivative standing of the board, but rather

11   the Court's order.  And the Court's order, the power of the

12   Court emanates from the Constitution and Article III and this

13   Aurelius decision does not affect that.

14           But I really think what's before us today is not

15   necessarily should there be a trustee, but I think more who is

16   an appropriate trustee.  And the Court mentioned, and we think

17   the Court is right that the Court has a very wide discretion in

18   choosing who the trustee should be.  And the oversight board

19   submit it should be AAFAF, and there is a few reasons for that.

20           Appointing AAFAF will disrupt the RSA, and stability

21   is extremely important not just for the RSA.  There is a

22   transformation process that is going on, and stability in

23   continuing with the path toward the Title III emergents is

24   extremely important.  The reason we are doing the RSA with the

25   bondholders, part of it is to get to that transformation.  And

1   having the committee insert themself in any way in taking any

2   actions that are not coordinated with the board is putting that

3   at risk.

4          If you look at the committee proposed stipulation,

5   Section 8, if it was a joint stipulation, like it was entered

6   in the RSA or HTA, they reserve the right if they don't agree

7   with how the timing or it's being -- the cause of action are

8   not prosecuted timely, they can move to the Court to be sole

9   trustee.  I'm not saying they are going to do it, but it's a

10  backdoor.  And we are really concerned about moving the process

11  in an efficient manner, and this is why it's important for the

12  oversight board to retain control over the case.

13         JUDGE SWAIN:  Mr. Despin has said that he would hold

14  off anything until after the resolution of the 9019, and I

15  think he's represented in his reply papers that he would not

16  seek to take inconsistent independent action at least while the

17  9019 is in play.

18         Should I not take his representation as an officer of

19  the court?

20         MR. BARAK:  Absolutely, yes, and Mr. Despin, his word

21  is good.  But nothing prevents him from putting a motion before

22  the Court to urge the Court to the change this.  This is what

23  Section 8 that I was referring to.  And basically this only

24  party a motion can interject noise into the system that is not

25  necessary when trying to run such a delicate process here.

J6S3PRO1

```
1              I think it's not so much as why the committee
2    shouldn't be but more why AAFAF should be a co-trustee.  I
3    think it is important to think that the alignment of interest
4    between AAFAF and oversight board, which in many cases are rare
5    and here in PREPA there is actually alignment of interest that
6    is very constructive, is extremely important because it
7    basically allows a process to move forward with RSA.  And if
8    there is no RSA, if we can't make it consensual, if the Court
9    doesn't approve this deal, we will be there to prosecute these
10   causes of action.  It is just a matter of giving peace a
11   chance.  That's all we are doing here.
12              Just one response to Mr. Despin who said 926 is
13   exactly those situation where there isn't alignment of
14   interests, when there is adversary with the debtor.  Let's not
15   forget we are under constructive refusal here.  It is not a
16   real refusal.  We are going to bring the lien challenge.
17              So to say that there must be some sort of adversarial
18   issue between the committee or between the trustee that's going
19   to be bring this and the debtor.  It might be true in 926 but
20   not here.  But even Colliers, with respect to real refusal on
21   the 926, states that even when the Court appoints a trustee --
22   I am quoting now -- the Court should be reluctant to appoint a
23   trustee to take over for the debtor in exercising these powers.
24   These powers are avoidance powers.
25              So basically, even in 926, the issue of giving the
```

J6S3PRO1

1    debtor control to move the cases is very important and is not

2    being done lightly. I think it shouldn't be done here.

3    Especially when we have a fix that works.

4         I want to make sure I cover all my bases here. The

5    last point basically is that appointing the committee as

6    trustee now that might be the Court enters a 9019 order is

7    inefficient, it's wasteful, especially when we have a valid

8    alternative that's ready to go right now and we can file the

9    lien challenge on Monday.

10         I'll now cede the podium to Mr. Shamah if that's okay,

11    your Honor.

12         JUDGE SWAIN: Thank you.

13         MR. SHAMAH: Daniel Shamah, O'Melveny & Myers on

14    behalf of AAFAF. Eight minutes for me as well.

15         Just to pick up on your question at the end, I will

16    address the question of why AAFAF is perfectly empowered to be

17    a co-movant and a co-trustee in the circumstance under the

18    plain language of the Enabling Act.

19         But to pick up on one point that your Honor asked

20    about Mr. Despin's representation about not pursuing the lien

21    challenge until after the 9019 is approved. That's the first

22    step, and he conspicuously has not made the representation if

23    the 9019 is pursued, that he wouldn't seek to pursue the lien

24    challenge before confirmation of a plan of adjustment, should

25    your Honor approve the RSA under in the 9019 motion. And that

J6S3PRO1

1   will inject a significant degree of instability and uncertainty

2   into this process.  So I don't want that to be lost.

3        Your Honor, I am going to address the specific

4   question of why under the Enabling Act AAFAF is authorized to

5   both be the co-movant and the co-trustee in connection with the

6   lien challenge.

7        I think, your Honor, it's worth taking a look at the

8   actual language of the statute because both sides cite various

9   provisions of it.  It is worth looking at it.  I have copies of

10  it if you'd like to have it with you so we can walk through a

11  couple specific provisions.

12       JUDGE SWAIN:  Thank you.  That will save me opening my

13  iPad.

14       MR. SHAMAH:  I have copies for others.  Your Honor, I

15  don't think there's much of a dispute that if AAFAF has the --

16  if the scope of the relief being sought falls within the

17  purpose and authority of AAFAF under the Enabling Act, then

18  AAFAF has the right to take any convenient or necessary lawful

19  action to pursue those purposes.  That's found in Section 5(d).

20  The preamble, which is on page 11 of the statute, which

21  specifically says that AAFAF has all rights and powers as is

22  necessary.  It specifically says including but not limited to

23  those authorities.  Then as we reference in our papers, xiv is

24  a residual catchall authority that basically gives them the

25  right to take whatever actions they need that they determine

J6S3PRO1

1    are appropriate and necessary to pursue its purposes and to

2    exercise the powers that are conferred upon it.

3           So the question then, your Honor, is what is the

4    purpose of AAFAF, and what are AAFAF's powers under the

5    Enabling Act.  I want to draw your attention to three specific

6    provisions of the Enabling Act.

7           The first is Section 2, your Honor, on page seven.

8    That section is titled "public policy." I am quoting here.

9           "It is hereby declared the public policy of the

10   government of Puerto Rico that AAFAF is the leading public

11   corporation and instrumentality responsible for coordinating"

12   and then it goes on and it specifically says at III that one of

13   their responsibilities is negotiating the debts repayment

14   terms.  So their responsibilities include things like

15   addressing the debt obligations of Puerto Rico.

16          The second is Section 5(a), your Honor, on page nine.

17   This is a provision that both sides cite.  It relates to their

18   created for the purpose of acting as a fiscal agent.

19          I think both the committee kind of glosses over the

20   breadth of the term "fiscal agent."  It is not defined in the

21   statute, but if you are looking at a dictionary definition,

22   Investopedia, which is a reputable financial dictionary, it is

23   an organization that acts on behalf of another party performing

24   various financial duties.

25          Again, it is an incredibly broad mandate when you're

1    acting as a fiscal agent.  We are specifically talking about

2    the creditor piece of this analysis.  Certainly AAFAF acting on

3    behalf of PRASA in connection with its debts and obligations

4    and the claims it has against PREPA, that is precisely what a

5    fiscal agent would do.  It is a financial function that it's

6    performing on behalf of its principal, in that instance PRASA.

7         Lastly, your Honor, if you turn to page 10, Section

8    5(c), this is a section that deals -- the first sentence deals

9    with GDB, but the second sentence doesn't.  It specifically

10   says that AAFAF shall "oversee all matters related to

11   restructuring, renegotiation, or adjustment of any existing or

12   future obligation of the government of Puerto Rico."

13        It's incredibly broad, your Honor.  The lien challenge

14   that we're proposing that AAFAF be a co-trustee on fits

15   squarely within the mandate of the authority that AAFAF has as

16   the representative of all -- as the representative of all these

17   various entities, under the local Puerto Rico law, to address

18   the fiscal and economic crisis that Puerto Rico faces and the

19   debt obligations of PREPA.

20        The committee's argument, essentially, as I understand

21   it, is there is nothing in the statute that specifically says

22   AAFAF is authorized to be a trustee.  But, that's by design.

23   The statute, as I sort of started off with, specifically grants

24   flexible authority to AAFAF.  5(d) where we started

25   specifically says that it's not delineating specific powers to

J6S3PRO1

1    the exclusion of other things that AAFAF may have to do.  It is

2    AAFAF has the power to pursue whatever it needs to do to

3    fulfill its purposes and to exercise the powers that the Puerto

4    Rico government conferred upon it.

5         And the same can be true, and Mr. Barak alluded to

6    this, the same can be true of the committee.  Nothing in 1103

7    says the committee can be a trustee.  The committee draws that

8    power from its residual power under 1103(c)(5) to pursue the

9    interests of the general unsecured creditors.  And the reason

10   why courts have found under SDN and others that committees can

11   be trustee under the right circumstances to pursue estate

12   causes of action is because they recognize that those two

13   things work hand in hand.

14        Their argument that somehow they're different because

15   they are a creature of Title III and AAFAF is a creature of the

16   Enabling Act is irrelevant.  We're both creatures of statute.

17   You have to look at the language of the statute to determine

18   what the scope of the powers are that the particular entity can

19   pursue.  In that respect, the committee's authority and AAFAF's

20   authority are perfectly parallel.  So the risks they are

21   talking about is not any greater or less if AAFAF is a

22   co-trustee or the committee is a co-trustee.

23        Your Honor -- and I think that's going to hold true

24   with respect to AAFAF acting as a creditor as I alluded to

25   earlier.  As we mentioned in our papers, PRASA is a creditor of

J6S3PRO1

1   PREPA and has claims that PREPA has acknowledged that are

2   general unsecured claims.

3          Your Honor referenced this, and I think you were

4   exactly right, they allude to a conflict of interest between

5   PREPA and PRASA in their papers as somehow that's disabling in

6   respect of this motion.  But if anything, it is exactly

7   backwards, your Honor.  PRASA's a general unsecured creditor to

8   PREPA.  To the extent the RSA is not approved, the plan is not

9   confirmed, PRASA will be aligned with PREPA in the lien

10  challenge.  They will be the beneficiary because they are a

11  general unsecured creditor.

12         Your Honor, unless you have questions, that's all I

13  have.

14         JUDGE SWAIN:  Thank you very much.

15         Now we have representative of Assured.

16         MR. NATBONY:  Good morning, your Honor.  I think I

17  have a minute and a half.

18         JUDGE SWAIN:  Yes.

19         MR. NATBONY:  Assured believes that the government

20  parties' offered resolution is a reasonable one and supports

21  the government parties' motion to appoint AAFAF.  We believe

22  that it ameliorates possible Aurelius issues, also consistent

23  with the RSA obviously to which we are a party.  When we look

24  at the issue, we don't see a refusal.  You heard the government

25  parties tell your Honor that they will be filing the lien

J6S3PRO1

1    challenge on Monday.

2          So why is the UCC seeking this?  Well, I think they

3    want a hand in the mixing bowl when it comes to the RSA.

4    Whether it's through a backdoor approach, whether it's

5    something that happens after the 9019 is dealt with.  There is

6    some ability to control when you have some connection with

7    respect to the ability to bring lien challenges.  We don't

8    think there is an appropriate justification.  I remind the

9    Court that the UCC is an anticipated and is an objector to the

10   RSA, which hasn't been mentioned yet.

11         Other than that, your Honor, unless you have

12   questions, those are my points.

13         JUDGE SWAIN:  Thank you very much.

14         MR. NATBONY:  Thank you very much, your Honor.

15         JUDGE SWAIN:  And now representative of National.

16         MR. BEREZIN:  Your Honor, we cede our time.

17         JUDGE SWAIN:  And I have the Ad Hoc Group next.  Good

18   morning Mr. Mayer.

19         MR. MAYER:  Good morning, your Honor.  I think I only

20   have two minutes.

21         JUDGE SWAIN:  You are down for one and a half, but

22   there's been some ceding.

23         MR. MAYER:  I'll try to keep to 90 seconds.

24         We support the appointment of AAFAF as a co-trustee

25   for the reasons that have been set forth.  I wanted to add a

J6S3PRO1

1    few technical observations.  First, your Honor does have

2    authority to appoint anyone as a trustee.  Because of the

3    elimination of Section 3.1 from Title III, 321 only allows a

4    "person" to serve as a trustee.  Because 321 is not entitled to

5    Chapter 9 your Honor can appoint a governmental unit.

6              I would argue that Section 1103(c), however, needs to

7    be read in conjunction with Section 321.  That is, Congress

8    never intended that a committee should serve as a trustee.

9    Even though 321 is not included in Title III, I think 1103(c)

10   should be read in conjunction with 321.

11             Should we find ourselves on the receiving end of a

12   lawsuit brought by the committee, we will of course make these

13   arguments.  Appointing the committee as the trustee buys no

14   certainty here.  It just buys challenges into the future.

15             A final observation.  The committee has not

16   outlined -- I'm sure it says this in its papers -- any

17   challenges that fall under the avoidance powers of Section 926.

18   Quite apart from the fact that means that they don't really

19   have a power to act as trustee, it means there is no statute of

20   limitations issue here.  Because 926 only deals with avoidance

21   action powers, avoidance actions are the only ones that are

22   subject to the statute, and the committee doesn't seem to be

23   seeking them in the first place.  Thank you.

24             JUDGE SWAIN:  Thank you, Mr. Mayer.

25             Mr. Kleinhaus.

J6S3PRO1

1           MR. KLEINHAUS:  Good morning.  Emil Kleinhaus from

2    Wachtell, Lipton, Rosen & Katz for Cortland, which is an agent

3    for fuel line lenders.  Fuel line lenders, as your Honor has

4    heard, are owed approximately $700 million.  They are the

5    primary financial creditors of PREPA and are intended objectors

6    to the RSA.

7           Two very brief points.  One is we did file a statement

8    at docket no. 1372 in support of the committee's motion and we

9    stand by that statement and believe the committee is the better

10   and appropriate trustee here.

11          The second point is actually something your Honor

12   said.  There is a difference between intercreditor litigation

13   and claims by a debtor under the avoidance powers.  And

14   Mr. Mayer actually just said the same thing in a different way.

15   Our view as the fuel line lenders is there are substantial

16   objections under Section 502 of the Bankruptcy Code and Section

17   506 of the Bankruptcy Code that are available to the bonds

18   liens and their claims, separate and apart from any claims

19   under the avoidance powers.

20          Now, 926 only deals with the avoidance powers.  It

21   doesn't in any way affect 502 or 506 rights.  So we were ready

22   to object to the stipulation on the basis that the definition

23   of lien challenge was so broad that it could be read to affect

24   creditor 502 objections or 506 objections.

25          Thankfully, we were able to work cooperatively with

J6S3PRO1

1    the oversight board yesterday on language to avoid that

2    objection.  So if the Court does not sustain the committee --

3    does not grant the committee's motion and instead enters the

4    AAFAF stipulation, there is new language in footnote 3 of the

5    stipulation and paragraph 7 making absolutely clear that this

6    stipulation will not affect creditor challenges under 502 or

7    506.  Of course, the oversight board reserves all of its rights

8    to respond to any such challenges.  Likewise, Mr. Despin has

9    represented to me to the extent the creditors committee motion

10   is granted, the order will likewise have the committee's

11   request be clarified to make clear that this only relates to

12   avoidance actions, not to creditor rights under 502 or 506 or

13   any other provision.  Thank you very much, your Honor.

14          JUDGE SWAIN:  Thank you Mr. Kleinhaus.

15          Mr. Despin.

16          MR. DESPIN:  Very briefly, your Honor.  First there's

17   no RSA issue here.  One, because the RSA has not been approved.

18   And two, we've said that if your Honor approves the RSA, you

19   can modify this order, the order we're proposing, so we're

20   giving you a blank check to do that.  So therefore, this

21   argument that this is really to stop the RSA and all that,

22   that's not the case.

23          Going back to the fundamental issue, which is what is

24   the risks here.  What really struck me is the fact that the

25   holders are not -- and I thought they would come up here and

J6S3PRO1

1   say we are waiving any arguments that we're challenging -- that

2   we could challenge AAFAF as a co-trustee.  I didn't hear that.

3   But more importantly, there's one person we haven't heard from

4   at all, which is the indentured trustee.  Counsel is in the

5   courtroom.  That party's probably the holder of the secured

6   claim.  That party has not said we are -- if you appoint AAFAF

7   we're not going to challenge that, promise, no issues.  They're

8   not saying that.

9           JUDGE SWAIN:  Have they said that about other

10  appointment of the UCC?

11          MR. DESPIN:  But the point is they cannot be a

12  challenge to the appointment of UCC.  Other than the whole case

13  is gone, which is not an argument because then none of this

14  matters.

15          That argument was bizarre, which is under 321, neither

16  AAFAF nor the committee could be a trustee.  321 doesn't apply

17  but we reserve our right to argue that -- it's just -- yes,

18  anybody can make all sorts of argument as to whether the

19  committee is not a proper party.  But there is -- I would say

20  100 years, but there is at least 75 years of case law that says

21  that trustees can be appointed to prosecute in the name of the

22  debtor claims.

23          And so, to compare that to the complete absence of

24  case law cited by AAFAF, as to their statutory capacity, we

25  cited a case, of course it didn't involve the AAFAF statute.

J6S3PRO1

1    But basically these powers should not be applied when we're

2    dealing with a Puerto Rico governmental entity, the power

3    should not be applied.  That's all the argument that was made

4    by O'Melveny, well, we can deal with negotiations.  Therefore,

5    we can sue in the name of somebody else.  That is really beyond

6    the pale.

7            They talk about that statute talks about negotiating,

8    acting in a coordinating fashion with the oversight board,

9    etc., etc.  And the only part that talks about suing or talks

10   about suing in its own name.  We didn't say they can't be a

11   trustee.  We are saying under state law, territory law, they

12   don't have the capacity to do that.

13           (Continued on next page)

14

15

16

17

18

19

20

21

22

23

24

25

J6S37PRO2

1          Mr. DESPINS:  So, your Honor, the point I would make

2     is if you rule in our favor, what's going to happen?  What's

3     going to happen is the board will enter into the same

4     stipulation we just actually entered into 45 minutes ago on the

5     other matter, and it will be the same as with the Commonwealth

6     and HTA, and things will be no more disrupted than they were

7     when that happened.

8          I don't think you've heard any complaints from the

9     Oversight Board about the committee being a co-plaintiff on

10    either of these situations.  So, at the end of the day this is

11    all about they want to protect the RSA, and that's fine, but

12    the RSA is not being challenged or is not being affected by

13    this appointment.

14         And this argument that this is important to the

15    transformation of Puerto Rico, there is no evidence of that, so

16    your Honor cannot rely on that.  There is absolutely no

17    evidence in the record that somehow the people who are bidding

18    on privatization are following this or somehow are going to be

19    motivated one way or the other by this.

20         So, at the end of the day, your Honor, it's a question

21    of risk.  And if it turns out that a court determines that the

22    Board's proposed fix to the earliest issue does not work

23    because AAFAF is not the right party for that, I think we're

24    going to be in a world of hurt, and I don't think there is any

25    credible argument that's been made that the committee cannot be

J6S37PRO2

1   appointed, well, first because we've already crossed that

2   bridge, and the only argument I heard is 321, but that doesn't

3   apply, so I just don't see it.

4          So, I want to be clear about this, we are opposed to

5   the RSAs.  There is no doubt about that; we said that in our

6   papers.  This is not an attempt through the back door to

7   sidetrack that, and I think we've tried very hard to make sure

8   that's clear, your Honor, by agreeing that we're not going to

9   do anything if you grant us the standing, other than file the

10  complaint with the Board, and so this is not an attempt to do

11  that.  It's purely an effort to avoid unintended consequences.

12  Thank you, your Honor.

13         JUDGE SWAIN:  Thank you.  I will now make my ruling.

14         Pending before the Court are, first, the Urgent Motion

15  of Official Committee of Unsecured Creditors for Order Pursuant

16  to Bankruptcy Code Section 926(a), Authorizing Committee to

17  Pursue Certain Avoidance Actions on Behalf of Puerto Rico

18  Electric Power Authority, which is docket entry 7484 in case

19  17-3283, and I will refer to it as the "Committee's Motion".

20         And, second pending before the Court is the Urgent

21  Motion of Financial Oversight and Management Board for Puerto

22  Rico and Puerto Rico Fiscal Agency and Financial Advisory

23  Authority to Approve Stipulation Appointing the Puerto Rico

24  Fiscal Agency and Financial Advisory Authority as Co-Trustee in

25  Connection with Lien Challenge.  That is docket entry number

J6S37PRO2

1    7686 in case 17-3282, and I will refer to that as the cross

2    motion.

3              Pursuant to the Section 926 motion, the Committee

4    motion, the Official Committee of Unsecured Creditors seeks an

5    order pursuant to section 926(a) of Title 11 of United States

6    Code -- the bankruptcy code -- made applicable to these Title

7    III cases by section 301(a) of PROMESA, appointing the

8    Committee as trustee for PREPA to pursue the Lien Challenge as

9    defined in the motion against any potential defendants that

10   have not entered into tolling agreements that include the

11   Committee as a party.

12             The cross motion seeks the appointment of the Puerto

13   Rico Fiscal Agency and Financial Advisory Authority -- which I

14   refer to as AAFAF -- as co-trustee in connection with the Lien

15   Challenge.  And note that in subsequent submissions the

16   definition of Lien Challenge has been narrowed.

17             The Court has considered carefully all of the

18   submissions of the parties as well as the arguments made in

19   court today.  For the reasons that I will now explain, the

20   Committee's motion is granted in part and denied in part, and

21   the cross motion to approve the stipulation appointing AAFAF as

22   co-trustee is granted.

23             Section 926(a) of the Bankruptcy Code provides that if

24   the debtor refuses to pursue a cause of action under section

25   544, 545, 547, 548, 549(a) or 550 of the Bankruptcy Code, then

J6S37PRO2

1    on request of a creditor the court may appoint a trustee to

2    pursue such cause of action.  In connection with the

3    Committee's motion, the Committee has failed to meet its burden

4    under Section 926(a) of showing that the Oversight Board has

5    actually refused to bring the lien challenge.  Rather, the

6    submissions indicate that the Oversight Board is prepared to

7    either bring the lien challenge or enter into appropriate

8    tolling agreements to pursue the lien challenge in accordance

9    with the terms of the RSA.  The Oversight Board also proposes

10   to partner with AAFAF in bringing the lien challenge.  Clearly,

11   there is no refusal in any literal sense, and the Committee

12   hasn't argued that there is a refusal in a literal sense.

13           The Committee instead takes a conceptual approach,

14   arguing that the existence of the risk that the First Circuit's

15   holding as to the constitutionality of the Oversight Board is

16   currently constituted will be given effect, and we refer to

17   this as the Aurelius risk, that that risk renders any

18   undertaking by the Oversight Board to pursue the litigation an

19   effective refusal to ensure that the litigation can be carried

20   through if the First Circuit decision takes effect.  In this

21   connection in its written submission the Committee

22   mischaracterizes the Court's prior oral ruling concerning a

23   joint litigation stipulation for the prosecution of certain

24   causes of action of the debtors.  At the April Omnibus Hearing

25   the Court stated that the unique circumstances presented a

J6S37PRO2

1     situation in which the Oversight Board had "decided to share

2     its responsibility prosecute certain claims, and it had,

3     therefore, effectively refused to pursue the causes of action

4     to the extent that it has sought by means of the motion to have

5     the Committee share responsibility for prosecution of the

6     causes of action."  The Court did not have to address, and did

7     not address, then the proposition that a refusal to sue in a

8     joint capacity and instead pursue litigation on its own or with

9     someone else would somehow constitute an Oversight Board

10    refusal for Section 926(a) purposes.  In any event, the

11    Oversight Board now proposes to pursue litigation jointly with

12    AAFAF, a structure that is consistent with the one approved in

13    the earlier rulings.  In this case, the Oversight Board has

14    refused to sue jointly with the Committee.  It has not refused

15    to pursue avoidance litigation.  Instead, the Oversight Board

16    represents that it is prepared to bring the Lien Challenge

17    either on its own or with AAFAF, or enter into appropriate

18    tolling agreements to preserve the Lien Challenges.

19    Accordingly, neither express nor conceptual refusal exists to

20    support the Committee's motion.

21           With respect to the Cross Motion, the Oversight

22    Board's decision to share its responsibility with AAFAF rather

23    than litigate alone supplies the requisite refusal under

24    section 926(a), as this Court has stated in connection with the

25    approval of the prior joint litigation stipulations.  The

J6S37PRO2

1  "request of a creditor" requirement imposed by Section 926(a)

2  of the Bankruptcy Code has been satisfied here as well.

3  Tradewinds Energy Barceloneta, LLC, and the Committee have both

4  requested the appointment of a trustee pursuant to Section

5  926(a).  Thus, a request for a trustee has been made in this

6  Title III case by at least one creditor.  The Court exercising

7  its unfettered discretion may appoint AAFAF instead of the

8  committee as co-trustee.

9       The Court finds the Committee's arguments with respect

10  to AAFAF's authority to sue unpersuasive.  The Enabling Act

11  authorizes AAFAF to act on other behalf of other commonwealth

12  entities, to coordinate with the Oversight Board, and to act in

13  aid of restructuring, and Section 5(d) of the Enabling Act

14  includes broad authority for AAFAF to take any action or

15  measure necessary or convenient to exercise the powers

16  conferred by the Enabling Act or by any other law of the

17  Legislative Assembly of Puerto Rico or of the United States

18  Congress.  That is Section 5(d)(xiv) of the AAFAF Enabling Act.

19       In summary, the Committee's motion constitutes a

20  request by a creditor as required by Section 926.  However, it

21  fails to establish that the Oversight Board has refused

22  entirely to bring on the avoidance action.  The pleadings

23  established that the Oversight Board is willing to proceed but

24  not with the Committee as co-plaintiff or co-trustee.  The

25  cross motion establishes that the Oversight Board is refusing

J6S37PRO2

1    to proceed alone in light of the Aurelius risk and is willing

2    to partner with AAFAF in bringing any necessary lien challenge

3    litigation.  Accordingly, the Committee's motion is granted

4    only insofar as it seeks the appointment of a trustee, and the

5    cross motion is granted insofar as it seeks the appointment of

6    AAFAF as a co-trustee.  The Court approves the form of

7    stipulation filed last night at docket entry 7720, and the

8    government movants are directed to e-mail a proposed order in

9    Word format to chambers promptly.  Thank you.

10           I will now turn the bench over to Judge Dein.

11           Mr. Barak?

12           MR. BARAK:  Just one housekeeping matter, your Honor.

13   There is a July 11th hearing set under the disclosure and

14   discovery schedule, and there is no time assigned to it, so we

15   would just alert the Court to that.

16           JUDGE SWAIN:  That will commence at 10 a.m. on July 11

17   here.

18           MR. BARAK:  In New York, your Honor?

19           JUDGE SWAIN:  Yes, in New York.

20           MR. BARAK:  Thank you.

21           JUDGE SWAIN:  Thank you.

22           DEPUTY COURT CLERK:  All rise.

23           JUDGE DEIN:  You may be seated.

24           So, we are here on the motion to approve the avoidance

25   action procedures.  I think it makes the most sense to do an

J6S37PRO2

1    overview here, if there is any opposition, address that, and

2    then we can deal with specifics.

3         MS. SIERRA:  Yes, your Honor.

4         Good morning.  Rosa Sierra for the movant, the Special

5    Claims Committee of the Oversight Board, acting by and through

6    its members.

7         Today, your Honor, we are here to request approval of

8    the omnibus motion by the Special Claims Committee and the

9    Official Committee of Unsecured Creditors for the approval of

10   the litigation case management procedures and approval of

11   settlement authority and standards, at docket 7325 in the

12   Commonwealth's Title III case, and also the reply at docket

13   7530, which contains the revised avoidance actions procedures

14   which substantially resolve many of the objections that we

15   received to the motion.

16        JUDGE DEIN:  I am assuming that that's the one that we

17   are working off of.

18        MS. SIERRA:  Yes, we are working off that one as the

19   operative procedures, yes.

20        By way of background, your Honor, between April and

21   May 2019 the Special Claims Committee and the UCC have filed

22   approximately 250 avoidance actions.  They're all premised on

23   pre-petition transfers and the recovery of those transfers made

24   to hundreds of suppliers and vendors of the government of

25   Puerto Rico.  These actions are listed as Appendix 1 to the

J6S37PRO2

1  revised avoidance action procedures, and we also note that we

2  have entered into approximately 85 tolling agreements with

3  several of these vendors as well.

4          Generally, the avoidance actions are premised on

5  Sections 544, 547 and 548 of the Bankruptcy Code, and Title II,

6  Chapter 5, section 97 of the Puerto Rico Code.

7          The avoidance actions are the result of an extensive

8  review of the Title III debtor's pre-petition payment history.

9  And since the filing of these avoidance actions, your Honor,

10  the movants have launched an informal resolution process for

11  all of these avoidance actions, and they're meant to facilitate

12  the out-of-court resolution of these actions before any

13  litigation is contemplated in the avoidance actions.

14          The movants have heard the concerns of the Puerto

15  Rican business community that this litigation could be very

16  costly and disruptive to their businesses.  Therefore, we have

17  instituted the informal resolution process which proceeds in

18  four phases we call it.

19          Phase 1, what we are calling the information exchange,

20  is mostly spearheaded by the local Puerto Rican council on the

21  ground, and the financial advisors to the Special Claims

22  Committee.  The information exchange contemplates that in the

23  first instance we will request certain information from the

24  defendants to substantiate the prepetition payments that they

25  received, and we in turn will provide the defendants with the

J6S37PRO2

```
1    information we have that forms the basis for our claims, and

2    with the hope that in this information exchange we can resolve

3    the avoidance actions once we determine whether a vendor has

4    substantially verified the payments that they've made and that

5    such payments that they've received were given with value.

6          Phase 2 then contemplates the first instance where we

7    will offer vendors who otherwise haven't sufficiently satisfied

8    their payments an opportunity to settle.  And that settlement

9    would be largely guided by whatever settlement authority and

10   procedures are approved by this Court as requested in our

11   procedures.

12         Phase 3 then would be the mediation process, again

13   voluntary, and subject to the framework and guidelines we have

14   requested and approved by this Court.

15         And then phase 4 and the last instance contemplates

16   litigation, and that would just be if the prior three phases do

17   not resolve the action, then at that point then the parties can

18   proceed to litigate.

19         But just to be clear, this process is completely

20   voluntary and loosely structured, and it's really just meant to

21   provide parameters and guidelines to resolve the hundreds of

22   avoidance actions that have been filed.  We recognize that

23   these avoidance actions are not only burdensome to this court

24   but burdensome and costly potentially to the defendants, and

25   the procedures are really just meant to facilitate the
```

J6S37PRO2

1  organization of these actions and deal with them in an

2  organized fashion.

3       JUDGE DEIN:  Have you undertaken any of the

4  information exchange already?

5       MS. SIERRA:  Yes, your Honor.  That actually brings me

6  to my next point.

7       So, we have begun the information exchange already.

8  We have sent out letters requesting certain information.  We

9  have already been in contact with over 100 vendors, whether

10  that be tolling agreement parties or defendants to the

11  avoidance actions.  We are in constant communication.  The

12  parties have begun submitting information.  We have had our

13  financial advisors have meetings in Puerto Rico and meet with

14  many of the counsel to various defendants; so the process is

15  going, and we expect that it will soon lead to the resolution

16  of many of these actions.

17       And that's really where the motion comes in.  Although

18  we haven't requested approval in the motion and the procedures

19  of the information exchange, we think that certain features of

20  the avoidance action procedures will greatly facilitate this

21  point, so if your Honor would like, I'd like to walk through

22  these features of the avoidance actions.

23       JUDGE DEIN:  I think I would actually like to hear any

24  opposition to the structure in general first.

25       MS. SIERRA:  OK.

J6S37PRO2

1        JUDGE DEIN:  And then we will go back.

2        Mr. Mudd?

3        MR. MUDD:  Good morning, your Honor.  John Mudd, in

4    representation of Alpha Guards and Cabrera and Ramos, and I

5    would add that they are two defendants in this case.  In

6    general, I agree with the proposed order, but there are certain

7    things that must be put into perspective.  First of all,

8    exchange of information is kind of incorrect.  We are told,

9    give me this, I have to negotiate, telling the other side, hey,

10   guys, I need your information too.  The procedure does not

11   provide for exchange of information.  In our motion we suggest.

12   And it's very important that the Board started their argument

13   saying and talking about this informal process at the same time

14   their motion says, no, we're not dealing with an informal

15   process; we're dealing with this motion as to procedures.

16   They're intertwined.  They are definitely intertwined.  And I

17   think the process should start when the service process is

18   done.  They should exchange information, provide the

19   information they already have.

20       Why is that important?  Not only is the lawyer --

21   namely us -- expensive, but, for example, in Alpha Guards we

22   are talking in the period 7200 bills.  Each bill would have

23   the -- because these are security guards -- the signature of

24   security guard and the hours they worked.  We are talking about

25   huge amounts of information.  OK?

J6S37PRO2

| | |
|---|---|
| 1 | JUDGE DEIN:  But isn't this something that you on an |
| 2 | individual case-by-case basis can discuss with the other side |
| 3 | and talk about what's the most appropriate exchange? |
| 4 | MR. MUDD:  True, except for one small detail. |
| 5 | JUDGE SWAIN:  OK. |
| 6 | MR. MUDD:  Right after the complaints were filed and |
| 7 | during one of the Board's meetings -- which I was present -- |
| 8 | Judge Gonzales started talking about the process.  And the |
| 9 | Board has continuously mentioned the process is to make this |
| 10 | cheaper, which is a great idea, but you do need two things. |
| 11 | You do need, you know, a client who knows his business, and you |
| 12 | need a lawyer. |
| 13 | Now, the way this process is going, the informal |
| 14 | process, it may simply be that the defendant will want to stay |
| 15 | away from the lawyer -- which is an extremely big expense -- |
| 16 | and do it himself.  And that's another point I want to point |
| 17 | out.  Even if you look at all of the causes of action in the |
| 18 | avoidance actions -- and I read them all -- they are all |
| 19 | bankruptcy avoidance issues, except for what I'm going to call |
| 20 | the Accion Pauliana, which is in Spanish, which is the Puerto |
| 21 | Rican law claim.  It has nothing to do with whether payments |
| 22 | were valid or not.  It has to do with two things, according to |
| 23 | the Board, which is, one, was the government of Puerto Rico |
| 24 | insolvent?  Number one.  Did the defendant know it? |
| 25 | Now, in our motion to dismiss -- which is not an issue |

J6S37PRO2

1   here -- we mentioned that there are several other requirements

2   under civil law.  But even if you solve and everything was done

3   according to the bankruptcy law, you still have that cause of

4   action there, which has nothing to do with payments being done

5   correctly.  So, theoretically, even if everything is kosher,

6   you could still have the litigation.  And that's where I go

7   into another issue, which is the actual motion, the last point,

8   7530.  On page 4, where an avoidance action will be dismissed

9   pursuant to the settlement between the parties, the Oversight

10  Board and committee should leave open the ability to request

11  that said dismissal be with prejudice.

12          I think it should be the other way around, there is no

13  "should be with prejudice" unless they show why not, because of

14  exactly this situation I mentioned.

15          JUDGE DEIN:  I'm trying to figure out what you're

16  asking.  Do you think that the informal exchange process should

17  go forward?

18          MR. MUDD:  Oh, yes.  Oh, yes, I have no problem with

19  that, because it's cheaper if everything goes according to

20  schedule.

21          JUDGE SWAIN:  All right.  So that you want to keep in.

22          MR. MUDD:  True.

23          JUDGE DEIN:  And your concern is that what?

24          MR. MUDD:  My concern is that, number one, the

25  Board -- and the procedure states that the defendants give the

J6S37PRO2

1   information.  I believe that also the Board should implement

2   when they serve the process, provide the information they have.

3   It will help the defendant look for all the information they

4   need but also give some information.

5        JUDGE DEIN:  OK.  And we can talk about that when we

6   get to the specific language, because I do think that the order

7   should address the information exchange.

8        MR. MUDD:  Yes.

9        JUDGE DEIN:  But your understanding though -- and my

10  understanding -- is that there is room for discussion about how

11  to exchange information most efficiently.

12       MR. MUDD:  I have no problem with that.  And actually

13  in our motion and discussions that I had with the Board --

14  which have been fruitful -- this that I'm meaning here was

15  brought up, but that was not fruitful.

16       JUDGE DEIN:  OK.  So, now when you're talking about at

17  page 4, what's your concern here?

18       MR. MUDD:  My concern is that given the nature of

19  these procedures and the cost it is to clients, that the

20  dismissals, when there are, should be -- the default should be

21  with prejudice instead of the default being maybe we'll do it

22  with prejudice.

23       JUDGE DEIN:  So, this has to do though with how the

24  parties negotiate a settlement, right?  So presumably you can

25  negotiate and say -- or mediate, or however you're working to

J6S37PRO2

1    resolve this -- and say, listen, we're not going to settle this

2    unless it's with prejudice.

3         MR. MUDD:  True.

4         JUDGE DEIN:  And this agreement provides that the

5    Board has settlement authority to enter into settlements with

6    prejudice.

7         MR. MUDD:  I think it's understood.

8         JUDGE DEIN:  So I think that that concern -- I think

9    they heard you, but I think that the revised draft does allow

10   for that.

11        MR. MUDD:  Probably.  But that's my point, it should

12   be that way.  And there should be a possibility that, you know,

13   for whatever reasons the Board says, well, this should not be

14   with prejudice because.  That's no problem, because

15   theoretically there can be situations in which it shouldn't be

16   with prejudice, but in general it should be, like the default

17   process.

18        JUDGE DEIN:  OK.

19        MR. MUDD:  Now, let me go through another one.

20        Oh, there is a very important thing, page 5, footnote

21   6.  Now, I have no doubt that this was done, namely that these

22   procedural papers were sent to all defendants.  However, my two

23   clients in their cases -- and that's the only thing I can talk

24   about -- the addresses were incorrect.  And I will give you one

25   example.  Cabrera & Ramos had a private PO box that was

1   destroyed by the hurricane, so they went to the agency and

2   said, hey, guys, when you send my payments put this address.

3   Now, for whatever reasons there are, that address was not put

4   in the complaint or anything, in the service of process,

5   etcetera, and that's a mistake.

6          I have no problem with the Board having sent that, but

7   the question is how many of them were sent back because the

8   address was incorrect.  I feel that most of them will not.  So,

9   I think we should be concerned about that and make a provision

10  for it.  And that I believe is all I have.

11         JUDGE DEIN:  OK.  So, what I'm hearing then is that

12  there is general approval or agreement to the overall structure

13  with maybe some fine tuning.

14         MR. MUDD:  Yes.

15         JUDGE DEIN:  But the structure -- and I think it's a

16  good structure too, so that's all you need to know actually, so

17  it's approved -- but I do have some problems with specifics.

18         So, what I want to do is ask Ms. Sierra to come back

19  up to the podium, go over some specifics, and then, Mr. Mudd,

20  if you feel that -- I don't think there are any other

21  objections, correct?  OK.

22         So, if you feel that some of the specifics that I'm

23  going over need further clarification, just raise your hand,

24  and I will hear what you have to say.  What I'm contemplating

25  is I think it needs to be revised, so I'm contemplating a

```
1   revision that will be another draft, and certainly we can allow

2   some time once the other draft is submitted to have further

3   objections.

4                MS. SIERRA:  OK.

5                MR. MUDD:  Possibly meet and confer?

6                JUDGE DEIN:  Yes, I think that makes sense.

7           So, first of all, I am going to ask that the final

8   version sort of follow exactly what you said, which is the

9   order of what is actually happening.

10               MS. SIERRA:  OK.

11               JUDGE DEIN:  So, I think it needs -- and I do think we

12  need to add the information exchange, which I recognize you're

13  not asking for approval of, but I think -- as I understand it,

14  these procedures are being sent to everybody, right?  So, we

15  want people to be able to understand the process that's

16  contemplated and what all of their alternatives are.

17          So, I think the first section has to have an

18  information exchange.  I think you then go to the settlement,

19  which starts on page 24.  I'm using the pages of document 7530.

20  Then I think you need to explain mediation, which is on page

21  22, and then the litigation on page 19.

22               MS. SIERRA:  OK.

23               JUDGE DEIN:  So, that's the final.  What I contemplate

24  is that somebody gets this and has some idea what they're

25  supposed to do and what is happening next.
```

J6S37PRO2

```
 1        MS. SIERRA:  Of course.

 2        JUDGE DEIN:  OK.  So I'm going to keep talking, and

 3   then you're actually allowed to interrupt me and say what are

 4   you talking about.

 5        MS. SIERRA:  OK, sounds good, your Honor.

 6        JUDGE DEIN:  All right.  So, we will start with the

 7   notice of applicability.  I think in there you do need to

 8   explain the information exchange.  And what I think you do --

 9   something to the effect that the parties to these -- it's out

10   of your motion really -- but the parties subject to these

11   procedures shall have the opportunity to share information and

12   potentially resolve cases as provided for by the procedures

13   established by the Oversight Board and the UCC available at and

14   give the site.  I think you also need to make it clear that

15   people are free to opt out.

16        MS. SIERRA:  Yes.

17        JUDGE DEIN:  And they're free to file a responsive

18   pleading at any time.  And I think in the beginning you also

19   need to state that if there are new people added, that they

20   have the opportunity to object to these procedures.

21        MS. SIERRA:  OK.

22        JUDGE DEIN:  Let me say I'm going to go over this item

23   by item.  If anybody feels the need to leave, you can.  That's

24   what we will be doing.  All right?  And I think the only thing

25   remaining will be the discussion of the schedule, correct?
```

1    That's coming up next?

2               JUDGE SWAIN:  Yes.

3               JUDGE DEIN:  All right.  So that having been said, I'm

4    going to keep talking.  So I'm on the first page where it says

5    the litigation procedures and deadlines, part B, has a service

6    copy to me.  That can come out; we will just take it off the

7    ECF, it's easier.

8               When you have the pro se section, part C, I think you

9    need to make it clear that that's in addition to the

10   requirements for the pro se parties' filing in Puerto Rico.

11   And I believe that includes delivering a hard copy of the

12   pleadings to the clerk's office, so that section should

13   actually cite to where a pro se litigant can find the filing

14   requirements that they need to comply with.

15              MS. SIERRA:  OK.

16              JUDGE DEIN:  Part D where you talk about effectuating

17   effectuation affecting service, I'm going to ask you to work

18   with the clerk's office on that and make sure that the most

19   appropriate procedure works.

20              MS. SIERRA:  Yes, your Honor.

21              JUDGE DEIN:  And I guess, Mr. Mudd, I think that's

22   where we can resolve the issue of is everybody getting served.

23   You will figure it out soon enough if you don't have an address

24   or a valid address.

25              Then I don't have any comments until we get down to

J6S37PRO2

```
1    (ii).  We are talking about service of the response to the
2    complaint.  I think at this juncture I don't think this needs
3    to be modified, but for your information if there is a
4    responsive pleading at that juncture the Court will issue the
5    order of notifying parties of their opportunity or option to
6    consent to a magistrate judge.  It's a standard order, and it's
7    all blind, and if both parties consent to file something it's
8    just the standard order, but I think that's the juncture where
9    the court would do that.
10            MS. SIERRA:  To be clear, you don't want us to add
11   that.
12            JUDGE DEIN:  You don't need to add that.  I just want
13   you to know that that's where we see the trigger.
14            MS. SIERRA:  OK.
15            JUDGE DEIN:  When we get to page 3, or page 21 of 39,
16   dealing with discovery, first, with respect to the schedule, I
17   think we need to put in there -- or you need to put in there --
18   any disputes in the scheduling will be decided by the Court
19   either on submission or hearing if ordered by the Court.
20            I'm going to assume that you're going to order a
21   transcript, so I think these will all come out.  This way I'm
22   going to give you words, but I'm going to assume you will just
23   copy them from the transcript.
24            MS. SIERRA:  OK.
25            JUDGE DEIN:  It will also need to say in there that
```

J6S37PRO2

1   the proposed schedule will constitute the parties' report

2   pursuant to Federal Rule of Civil Procedure 26(f), and the

3   Court's order shall constitute the order required by Federal

4   Rule of Civil Procedure 16(b).  We need that to comply with the

5   rules of dealing with these adversary proceedings.

6           The next page when we're dealing with hearings, I

7   think we need an "unless otherwise ordered by the Court".  With

8   respect to the scheduling of the hearings, the Court should be

9   able to vote on whether or not this is done at the omnis or

10  not.  And the parties requesting a hearing does not have to be

11  for good cause shown.  Take that out.

12          MS. SIERRA:  OK.

13          JUDGE DEIN:  And, similarly, when you get to the

14  trial, if everybody is following me, a trial concerning the

15  avoidance action shall occur on a date that is acceptable to

16  the Court.  And the parties may propose dates in a filing made

17  no longer than 90 days after the close of discovery.  So, the

18  Court is going to schedule a trial, not you.

19          For the mediation, I actually have some -- I need to

20  understand the structure of this better.

21          MS. SIERRA:  Of course.

22          JUDGE DEIN:  I'm concerned that we make sure that the

23  mediators don't have any conflicts.

24          MS. SIERRA:  OK.

25          JUDGE DEIN:  So, I'm not sured whether retired state

J6S37PRO2

1    court judges are appropriate, given the claims in this action.

2              I also don't think it's appropriate for the Oversight

3    Board as a default to select the mediator.  If you can't

4    agree -- at this stage, mediation is problematic, let's start

5    with that thought -- but I will propose -- though I'm not bound

6    to -- maybe a list of acceptable mediators and a process where

7    the Oversight Board will randomly select a mediator from an

8    approved list, or something like that, but I don't think that

9    you can have the control of the absolute selection.

10             MS. SIERRA:  Yes, your Honor, we will make that

11   change.

12             JUDGE DEIN:  So, I think you need to just think about

13   it, and I don't have the answer.  I don't know who is an

14   appropriate pool, but I question -- you can try to convince me

15   this is the right pool, but I'm not sure.

16             MS. SIERRA:  Right.  Your Honor, we have worked

17   closely with local Puerto Rico counsel to come up with the

18   mediation framework and the guidelines, and this was a

19   suggestion that they made in terms of potential for having

20   noncontroversial mediators and also people who are in Puerto

21   Rico and close to these types of matters.  But, your Honor, we

22   are open to reconsidering that and working with something that

23   seems more appropriate.

24             JUDGE DEIN:  I think you need to just think through

25   the conflicts question.

J6S37PRO2

1       MS. SIERRA:  OK.

2       JUDGE DEIN:  I also want to know or make sure that you

3   thought about appropriate venues for mediation.  I am assuming

4   you're not expecting the Court to provide those venues.  I am

5   also assuming that you're not expecting the Court to provide

6   resources.

7       MS. SIERRA:  That's correct, your Honor.  We designed

8   these keeping in mind not overburdening the Court with

9   mediation, and largely trying to design it so it's a structure

10  that is still somewhat loose that the parties can by agreement

11  sort of dictate on their own.

12      JUDGE DEIN:  OK.  And I am assuming that you are going

13  to negotiate payment structure, and that you will let the Court

14  know when you file a notice of mediation.

15      MS. SIERRA:  Exactly.

16      JUDGE DEIN:  So think about that.  I think it needs

17  some refinement.

18      When you do get to the mediation section, you dictated

19  sort of when the parties need to provide reports, and how long

20  they are I think it's all about it being unless otherwise

21  ordered by the mediator.

22      MS. SIERRA:  OK.

23      JUDGE DEIN:  I think the mediator can control that.

24      MS. SIERRA:  OK.

25      JUDGE DEIN:  When we get to settlement authority, just

1    explain to me how you got the 10 million.  Why is that the

2    cut-off?

3           MS. SIERRA:  Yes, your Honor.  We arrived at that

4    threshold because approximately two thirds of the defendants

5    fall at the $10 million or less threshold, and for that reason

6    we're trying to in the best way we can facilitate the most

7    amount of settlements, you know, settlement agreements that

8    could be effected without further order of the Court to

9    encourage parties to settle and know that that wouldn't

10   provide, you know, cost on them to have to file a motion every

11   time a reasonable settlement agreement is reached.  So, that's

12   where we got the $10 million threshold, just this is our best

13   attempt at finding a threshold and a balance between at what

14   point we don't need further Court approval and then at what

15   point we do and we have to meet our burden under Rule 9019 and

16   whatever the case may be.

17          JUDGE DEIN:  You're only going to have to meet that

18   burden if it's objected to even over the 10 million?  Is that

19   what this proposes?

20          MS. SIERRA:  Yes, that is what this would contemplate.

21          JUDGE DEIN:  And so if you ask for court approval in

22   the face of an objection, it would be a 9019?

23          MS. SIERRA:  Yes.  Yes.

24          JUDGE DEIN:  OK.  So I think we are OK with the 10

25   million, that's fine.

J6S37PRO2

1      The case has to be closed -- I guess it's subpart A --

2   but if you've settled, you need to file whatever is appropriate

3   under Federal Rule of Civil Procedure 41, whether it's a

4   dismissal, or a motion or whatever it is.

5           MS. SIERRA:  OK.

6           JUDGE DEIN:  But you need to put that in.

7           MS. SIERRA:  OK.

8           JUDGE DEIN:  So, the objections.  I understand your

9   desire to keep this as confidential as possible, but I don't

10  know what filing anything that just says this is the number

11  without identifying anything is a way to have people validly

12  object to it.  So, I guess I will hear you on that.  My sense

13  is that you do have to identify the adversary proceedings, the

14  parties, the deadline for objecting, and then if there is any

15  reason you can't do that, you should file a motion.

16          MS. SIERRA:  Your Honor, we can definitely reword the

17  settlement procedures in the way you've requested suggested.

18          JUDGE DEIN:  All right.  Because I expect that if

19  we're asking for objections, people ought to know what we're

20  talking about.

21          MS. SIERRA:  OK.

22          JUDGE DEIN:  So you will need to clarify that.

23          And if no objection is filed, it's OK that it gets

24  approved, but again you will have to file the appropriate

25  dismissal order.

J6S37PRO2

1          MS. SIERRA:  Right.

2          JUDGE DEIN:  And then if objections are filed, the

3     Court shall in its discretion decide if a hearing or further

4     submissions are necessary.

5          And then I think if it's reorganized, then it makes

6     sense so that people reading it can figure out exactly what

7     happens next.

8          MS. SIERRA:  Yes, your Honor.

9          JUDGE DEIN:  All right.  Mr. Mudd, do you want to add

10    anything?

11         MR. MUDD:  If I may.  John Mudd again.

12         In general, your Honor, I agree with what you're

13    suggesting.  I have a little observation to make.  You made

14    quite correctly a mention of the former judges of Puerto Rico.

15    There is an adversary proceeding of the retired judges in

16    Puerto Rico against the Board because of the pensions, so any

17    former judge would have to be a judge that doesn't have a

18    pension.  OK?  That's one.  Two, there is an ADR procedure in

19    federal court in San Juan, and it has ADR persons there, so we

20    could theoretically deal with that and maybe that will help.

21         JUDGE DEIN:  So I decided that it was probably

22    inopportune for me to stack the other magistrate judges'

23    dockets in Puerto Rico with 200 new cases.  That probably

24    wasn't a good plan.

25         MR. MUDD:  They won't like you if you do that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J6S37PRO2

1          JUDGE DEIN:  So I don't know though if there is a

2      specific large case that maybe might make sense to request a

3      mediation.  I don't think this is precluded in this, but I

4      think they're quite busy, so I'm not about to add --

5          MR. MUDD:  I can assure you of that.

6          JUDGE DEIN:  Right, so I'm not sure that adding that

7      is an appropriate option.

8          MR. MUDD:  OK.  And also I suggest that the mediator

9      be by agreement, and the Board can suggest the persons, and in

10     that suggestion the cost, etcetera, be made clear, because

11     theoretically still you may have a party that doesn't have a

12     lawyer dealing with this, and it would be better that way.

13          And last but not least, given the amount of cost here,

14     I think that the default should be Puerto Rico for a mediation.

15     Of course there are cases in which it's not necessarily true,

16     but that would be again the preferred place.

17          JUDGE DEIN:  I think that it says that, but I could be

18     wrong.  I don't remember if it says or if I read that

19     somewhere, but I think that's true that the parties -- I think

20     the process was expected to take place in Puerto Rico to the

21     extent possible.

22          MR. MUDD:  I would agree with that.  That would be

23     all, your Honor.

24          JUDGE DEIN:  And I think the preference is a joint

25     selection of the mediator.  It's a better way to start off.

1          MR. MUDD:  Yes, thank you.  That will be all.

2          JUDGE DEIN:  Ms. Sierra, could you just stand up so

3     you can be heard.  I want to figure out the schedule.  How long

4     do you think it would take to revise these?

5          MS. SIERRA:  I think it shouldn't take that long.  I

6     think the only thing that we have to go back a little bit to

7     the drawing board is on the mediation, and we may need to

8     confer with local counsel and firm that up a little bit more

9     and the details of that a bit more.  A week?

10         JUDGE DEIN:  I'm not going to set an order actually.

11    File it as soon as possible.

12         MS. SIERRA:  OK.

13         JUDGE DEIN:  With a four day objection period.  And

14    then if I don't have any objections -- or I'll take any

15    objections on the papers, but I'm going to approve the general

16    process.

17         MS. SIERRA:  OK.

18         JUDGE DEIN:  So, if anybody has an objection to

19    specific wording or anything, file it within four days after

20    the filing of the revised procedures.  OK?

21         MS. SIERRA:  Great.  Thank you, your Honor.

22         JUDGE DEIN:  Thank you.

23         MR. DESPINS:  Your Honor, just a procedural thing that

24    I need to raise with you.  Good morning, Judge Dein.  Luc

25    Despins for the Committee.

J6S37PRO2

1          You will recall that we filed motions to stay various

2     adversary proceedings, and you entered orders.  And in the ERS

3     case there were six adversary proceedings.  Unfortunately, in

4     our motion we missed one, so technically there is no order in

5     that adversary proceeding staying.  Would it be OK if we

6     submitted an informative motion explaining that and attaching a

7     proposed order in the same format we have done before?

8          JUDGE DEIN:  Yes.

9          MR. DESPINS:  Thank you, your Honor.

10          JUDGE DEIN:  Anybody else?  OK, thank you.

11          DEPUTY COURT CLERK:  All rise.

12          JUDGE SWAIN:  Please be seated.  And so I am back just

13     to essentially remark that we're done unless anyone has

14     anything else for me.

15          This concludes the scheduled proceedings for today.

16     As of this moment, the next scheduled hearing date is the July

17     2, 2019 hearing on the ERS adequate protection/lift stay

18     motion, which is scheduled to begin at 10 a.m., but there is

19     also a filing required in 15 minutes, which may change that, so

20     we should all watch our mail.

21          And then after that the next scheduled proceeding is

22     on July 11, 2019 at 10 a.m., the pretrial conference concerning

23     the PREPA 9019 litigation, and that both of those conferences

24     will be in New York with video connection to San Juan.

25          And as always I want to thank the court staff here in

J6S37PRO2

1    Puerto Rico and in Boston for their work in preparing for and

2    conducting today's hearing and their superb ongoing work in

3    administering these cases.  So, I wish you all safe travels and

4    a good weekend, and we will be in touch, I'm sure.  Take care.

5              (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

J6S37PRO2

1  UNITED STATES DISTRICT COURT)
                              ) ss.
2  OF PUERTO RICO             )

3

4                     REPORTER'S CERTIFICATE

5

6          I, Rebecca Forman, do hereby certify that the above

7  and foregoing pages, consisting of the preceding 80 pages

8  constitutes a true and accurate transcript of our stenographic

9  notes and is a full, true, and complete transcript of the

10  proceedings to the best of our ability.

11          Dated this 28th of June, 2019.

12          S/Rebecca Forman _____

13          Rebecca Forman

14          Official Court Reporters
           500 Pearl Street
15          New York, NY 10007
           212-805-0320

16

17

18

19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J6S37PRO2

1  UNITED STATES DISTRICT COURT)
                                ) ss.
2  OF PUERTO RICO               )

3

4                          REPORTER'S CERTIFICATE

5

6          I, Steven J. Griffing, do hereby certify that the

7  above and foregoing pages, consisting of the preceding 80 pages

8  constitutes a true and accurate transcript of our stenographic

9  notes and is a full, true, and complete transcript of the

10  proceedings to the best of our ability.

11          Dated this 28th day of June, 2019.

12          S/Steven J. Griffing _____

13          Steven J. Griffing

14          Official Court Reporters
           500 Pearl Street
15          New York, NY 10007
           212-805-0320

16

17

18

19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300