UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| Debtors.[1] | |

------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3566-LTS |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | |
| Debtor. | |

------------------------------------------------------------x

MEMORANDUM ORDER REGARDING OBJECTIONS TO
MAGISTRATE JUDGE'S JUNE 6 AND JUNE 20, 2019, ORDERS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

Before the Court are (i) the *Objection of Certain ERS Bondholders to the Magistrate Judge's June 6, 2019 Order on Motion to Compel* (Docket Entry No. 7518 in Case No. 17-3283,[2] the "First Objection"), and (ii) the *Objection of Certain ERS Bondholders to the Magistrate Judge's June 20, 2019 Order on the Renewed Motion to Compel* (Docket Entry No. 7577, the "Second Objection" and, together with the First Objection, the "Objections").[3] Through the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents from Financial Oversight and Management Board* (Docket Entry No. 6998, the "Motion to Compel") and the *Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents from Financial Oversight and Management Board* (Docket Entry No. 7483, the "Renewed Motion to Compel" and, together with the Motion to Compel, the "Motions to Compel"), the Bondholders sought documents from the Financial Oversight Management Board for Puerto Rico (the "Oversight Board") in connection with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* (Docket Entry No. 3418, the "Stay Relief Motion").[4] By *Order on*

---

[2] All docket entry references are to entries in Case No. 17-3283, unless otherwise noted.
[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objections.
[4] When the Bondholders filed the Objections, a final hearing on the Stay Relief Motion had been set for July 2, 2019. Subsequently, in light of this Court's *Opinion and Order Granting Plaintiff's Motion for Summary Judgment as to Count III and Counterclaims II and III, and Denying Defendants' Motion for Summary Judgment* (Docket Entry No. 251 in Adv. Pro. No. 17-213), and on consent of the parties, the Court adjourned the July 2 hearing sine die. (See *Order Adjourning the July 2, 2019 Hearing* (Docket Entry No. 7742).) Although the discovery decisions challenged in the Objections relate solely to the Stay Relief Motion, which is not going forward, the Court issues this Memorandum Order to complete the record.

*Motion to Compel* dated June 6, 2019 (Docket Entry No. 7261, the "June 6 Order") and *Order* dated June 20, 2019 (Docket Entry No. 7523, the "June 20 Order" and, together with the June 6 Order, the "June Discovery Orders"), Judge Dein granted in part and denied in part the Motions to Compel. The Objections challenge the conclusions reached by Judge Dein in the June Discovery Orders concerning the Oversight Board's invocation of the deliberative process privilege, attorney-client privilege, and work-product doctrine with respect to certain withheld documents.

The Court has reviewed carefully the June Discovery Orders and all pertinent submissions of the parties. For the reasons stated below, as well as those articulated in this Court's *Memorandum Order Regarding Magistrate Judge's May 6, May 15, and May, 2019, Orders* (Docket No. 7695, the "June 27 Order"), the Objections are overruled as set forth herein.

## BACKGROUND

A. <u>The June 27 Order</u>

These Objections follow the *Objection of Certain ERS Bondholders to the Magistrate Judge's May 6 and May 15, 2019 Orders on Motions to Compel* (Docket Entry No. 7035) and the *Reply in Support of Objection of Certain ERS Bondholders to the Magistrate Judge's May 6 and May 15, 2019 Orders on Motions to Compel and Objection to May 30, 2019 Order* (Docket Entry No. 7435) (together, the "Prior Objections"). In the Prior Objections, the Bondholders challenged Judge Dein's denials of three motions to compel ERS, the Commonwealth, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (ERS, the Commonwealth, and AAFAF, collectively, the "Government Parties") to produce documents withheld on the basis of the deliberative process privilege, executive privilege,

attorney-client privilege, work product doctrine, and common interest doctrine. In the June 27 Order, this Court overruled the Prior Objections and upheld, as relevant here, Judge Dein's rulings that the Government Parties properly invoked the deliberative process privilege, attorney-client privilege, work product doctrine, and common interest doctrine. The Court assumes the parties' familiarity with the relevant facts and procedural history described in the June 27 Order.

B. The Objections

In accordance with the discovery schedule established by the *Order Granting Urgent Motion to Expedite Consideration of Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* (Docket Entry No. 371 in Case No. 17-3566), the Bondholders served a document subpoena on the Oversight Board on March 4, 2019 (the "Subpoena"), seeking documents relating to the Stay Relief Motion. (First Objection ¶ 2.) Following multiple meet-and-confer sessions between the parties and conferences before Judge Dein relating to various objections to the Subpoena raised by the Oversight Board, the Oversight Board served privilege logs upon the Bondholders and the Court on April 29 (the "April 29 Log") and May 1, 2019 (the "May 1 Log").[5] (First Objection ¶ 9.) The April 29 Log and the May 1 Log enumerated a total

---

[5] Because the April 29 Log and the May 1 Log contain personal email addresses for senders and recipients, the Oversight Board initially did not file them on the public docket. (See First Objection ¶ 9 n.3; Docket Entry No. 483 in Case No. 17-3566.) On July 3, 2019, however, Judge Dein granted the *Urgent Motion of the Oversight Board to File Unredacted Privilege Logs Under Seal* (Docket Entry No. 7802, the "Motion to Seal"), thereby permitting the Oversight Board to file partially redacted versions of its privilege logs on the public docket and unredacted versions of the logs under seal. (See *Order Granting Oversight Board's Urgent Motion to File Unredacted Privilege Logs Under Seal* (Docket Entry No. 7834).) The redacted versions of the logs were annexed as exhibits to the Motion to Seal. Although the Oversight Board has not yet filed

of 335 documents that the Oversight Board withheld under the attorney-client privilege, work product doctrine, deliberative process privilege, and mediation privilege. (Id.)

On May 17, 2019, the Bondholders filed the Motion to Compel, which challenged the Oversight Board's invocations of the attorney-client privilege, work product doctrine, and deliberative process privilege. On June 6, 2019, Judge Dein granted in part and denied in part the Motion to Compel. (See generally June 6 Order.) With respect to the deliberative process privilege, Judge Dein concluded that (i) the fiscal year 2018 and 2019 Territory Budgets, the April 18, 2018 Fiscal Plan, and potential revisions and corrections to the March 13, 2017, Fiscal Plan were all separate "decisions" such that all preceding deliberations are privileged (June 6 Order at 5-6), (ii) the Bondholders had failed to demonstrate a substantial need for the deliberative materials (id. at 6-9), and (iii) the Oversight Board had not met its burden of showing that certain withheld factual information was intertwined with privileged deliberative materials (id. at 9-12). Judge Dein further held, with regard to entries in the April 29 Log and the May 1 Log citing the attorney-client privilege, that the Oversight Board, in some instances, had not adequately demonstrated that entire withheld documents contained privileged legal advice and, in other instances, did not show that third parties were necessary in order for attorneys to render adequate legal advice. (Id. at 12-15.) As to the work product doctrine, Judge Dein found, based on the privilege log descriptions, that the Oversight Board had applied work product protection too liberally with respect to certain documents. (Id. at 15-17.) In view of these deficiencies, Judge Dein directed the Oversight Board to re-review the withheld documents

---

unredacted versions of the logs under seal, this Court has reviewed those that were previously submitted via email to the Court.

and privilege logs and, as appropriate, either produce any improperly withheld materials or supplement its privilege logs and supporting documentation by June 12, 2019. (Id. at 12-15, 17.)

On June 12 and June 13, 2019, the Oversight Board produced a number of previously-withheld documents, as well as a supplemental and amended privilege log (the "June 12 Log") and supporting declaration. (First Objection ¶ 14.) The Oversight Board also produced an additional supplemental and amended privilege log (the "June 17 Log") on June 17, 2019. (Id.) That same day, the Bondholders filed the Renewed Motion to Compel asserting that the Oversight Board's document production and privilege logs remained deficient notwithstanding its supplemental submissions. While the Renewed Motion to Compel was still pending, on June 20, the Bondholders filed the First Objection. Shortly thereafter, Judge Dein issued the June 20 Order. Therein, Judge Dein held that the Oversight Board's supplemental submissions established that any disclosure of factual information would also disclose privileged deliberative material. (June 20 Order at 5-6.) With respect to attorney-client privilege, Judge Dein ruled that the revised descriptions demonstrated both that all withheld documents relate to the provision of legal advice and that any third parties included on the legal communications were necessary in order to translate information for a legal purpose. (Id. at 6-11.) Finally, Judge Dein agreed in part with the Bondholders' contention that the Oversight Board had applied the work product doctrine too broadly as to some documents, but nevertheless noted that such materials remained protected from disclosure under the attorney-client privilege and/or the deliberative process privilege. (Id. at 11-12.) Three days after Judge Dein issued the June 20 Order, the Bondholders filed the Second Objection.

DISCUSSION

Standard of Review

Upon review of a timely objection to a non-dispositive order issued by a magistrate judge, the district judge to whom the case is assigned must consider the objection and modify or set aside any part of the order that "is clearly erroneous or contrary to law." 28 U.S.C.A. § 636(b)(1)(A) (West 2018); see also Fed. R. Civ. P. 72(a). Under the "clearly erroneous" standard, the reviewing court "must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [it forms] a strong, unyielding belief that a mistake has been made." Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999) (internal quotation and citation omitted). A magistrate judge's rulings will be reviewed under the "contrary to law" standard when the issue "turns on a pure question of law." PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010). "This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard." Id. Mixed questions of law and fact trigger a sliding scale of review pursuant to which:

> [t]he more fact intensive the question, the more deferential the level of review (though never more deferential than the 'clear error' standard); the more law intensive the question, the less deferential the level of review.

Goat Island S. Condo. Ass'n, Inc. v. IDC Clambakes, Inc. (In re IDC Clambakes, Inc.), 727 F.3d 58, 64 (1st Cir. 2013) (internal citation omitted).

The arguments raised in the Objections closely track those asserted in the Prior Objections. In the Objections, the Bondholders contend that Judge Dein's rulings in the June Discovery Orders are clearly erroneous and contrary to law because (i) the Oversight Board did not satisfy the requirements of the deliberative process privilege (First Objection ¶¶ 26-33), (ii)

the Oversight Board has waived any deliberative process privilege for materials shared with the Government Parties (id. ¶¶ 34-38), and (iii) the Bondholders' need for the materials in question outweighs any harm from disclosure (id. ¶¶ 17-25).  Additionally, the Bondholders argue that Judge Dein erred in finding that (iv) all of the communications ultimately withheld on attorney-client privilege grounds involved the provision of legal advice (Second Objection ¶ 17); (v) certain documents shared with third party non-lawyers are privileged (id. ¶¶ 18-22), (vi) the crime-fraud exception to the attorney-client privilege does not apply (First Objection ¶ 40), (vii) the common interest doctrine protects from disclosure withheld materials that had been shared with the Government Parties (id. ¶ 41), and (viii) certain documents qualified for protection as attorney work product (id. ¶¶ 42-44).

As explained in further detail below, the Court incorporates herein by reference the legal findings and conclusions in the June 27 Order that are applicable to the instant Objections.  For the reasons that follow and those set forth in the June 27 Order, each of the Bondholders' objections is overruled, and the June Discovery Orders are affirmed.

Deliberative Process Privilege

"The deliberative process privilege 'shields from public disclosure confidential inter-agency memoranda on matters of law or policy.'"  Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995) (quoting National Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1116 (9th Cir.1988)).  "[T]o qualify for the privilege, a document must be (1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'"  Id. (quoting National Wildlife, 861 F.2d at 1117).  The privilege is a qualified one, meaning that

"[e]ven if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic." Id. at 885. Rather, in determining whether materials are protected under the deliberative process privilege, courts must balance the evidentiary need for such materials against the harm that could result from their disclosure. Id.; see Bhatia Gautier v. Gobernador, 199 D.P.R. 59, 87-89 (explaining that, under Puerto Rico law, it is the government's burden to "present evidence and show the existence of [a] compelling interest of greater hierarchy than the values protected by [the] right of freedom of information of citizens").

### A. Factual Information Included in Deliberative Materials

Asserting an argument similar to that raised in the Prior Objections, the Bondholders challenge Judge Dein's conclusion that the Oversight Board's supplemental submissions following the June 6 Order justified application of the deliberative process privilege to withheld factual material. (Second Objection ¶¶ 9-13.) The Oversight Board's submissions, the Bondholders contend, fail to support its claims that disclosure of the factual information would disclose the deliberative process and that the factual information could not be segregated. (Id. ¶ 11.) The Bondholders' arguments are unavailing.

As this Court observed in the June 27 Order, the relevant inquiry "is not merely whether the documents contain factual information—or even whether the document is predominantly comprised of findings of fact—but rather the degree to which the facts are indissolubly linked to the broader analysis." Stalcup v. C.I.A., 768 F.3d 65, 70 (1st Cir. 2014). This question "hinges on whether the documents were 'prepared to facilitate and inform a final decision or deliberative function entrusted to the agency.'" Id. (quoting Providence Journal Co. v. U.S. Dep't of Army, 981 F.2d 552, 560 (1st Cir. 1992)).

Here, it was not clear error for Judge Dein to conclude that, if the Oversight Board were to produce factual information derived from the documents at issue, deliberative material would also be disclosed. Indeed, Judge Dein evaluated the statements in the *Supplemental Declaration of Natalie A. Jaresko in Support of the Financial Oversight and Management Board for Puerto Rico's Assertions of Privilege* (Docket Entry No. 7483-2, the "Supplemental Jaresko Declaration"), in conjunction with the June 12 Log and the June 17 Log, and made a factual determination that such statements were sufficient to show that the documents sought by the Bondholders either were themselves deliberative materials or were so intertwined with such materials that disclosing the facts would disclose the protected deliberation. (See June 20 Order at 6 (accepting explanation in the Supplemental Jaresko Declaration that disclosure of email attachments would disclose "projections or proposals not yet adopted").).[6] Having likewise reviewed the Oversight Board's supplemental submissions, this Court finds Judge Dein's conclusions and supporting explanations to be well reasoned and by no means clearly erroneous.

Accordingly, the Bondholders' objection to Judge Dein's ruling concerning any factual materials withheld by the Oversight Board is overruled.

### B. Documents Created After Certification of the 2017 Fiscal Plan

The Bondholders also contest Judge Dein's holding that the deliberative process privilege applies to documents created after the Oversight Board certified the Commonwealth

---

[6] In arguing that "it is not plausible that Excel spreadsheets embedded in a presentation could not be segregated and produced" (Second Objection ¶ 15), the Bondholders appear to miss the point. The Oversight Board asserted—and Judge Dein agreed—that disclosure of the embedded documents themselves would reveal privileged information. (See June 20 Order at 6.) This finding was not clearly erroneous.

Fiscal Plan on March 13, 2017. (First Objection ¶¶ 26-33.). The gravamen of the Bondholders' assertion here—that materials dated after March 13, 2017, were post-decisional and therefore not eligible for protection under the deliberative process privilege—is the same as that of their argument asserted in Prior Objections. The Court remains unconvinced.

"A document will be considered 'predecisional' if the agency can (i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." In re Pharm. Indus. Average Wholesale Price Litig., 254 F.R.D. 35, 39 (D. Mass. 2008) (quoting Providence Journal, 981 F.2d at 557). Here, for substantially the same reasons stated in the June 27 Order, it was not clear error for Judge Dein to consider the Fiscal Year 2018 and 2019 Territory Budgets, the April 18, 2019 Fiscal Plan, and potential revisions and corrections to the March 13, 2017 Fiscal Plan to be "separate decisions" to which the withheld documents relate for purposes of this privilege analysis. Accordingly, the Court affirms Judge Dein's conclusions that deliberative decisions were made after March 13, 2017, and that the Oversight Board properly withheld all materials reflecting those decisions.[7]

### C. Waiver of the Deliberative Process Privilege

The Bondholders also argue that the Oversight Board waived any deliberative process privilege for materials shared with the Commonwealth, the Commonwealth's advisors, or AAFAF, and that Judge Dein clearly erred in holding otherwise. (First Objection ¶¶ 34-38.)

---

[7] This Court agrees with Judge Dein that, although the 2018 and 2019 Territory Budgets were not addressed in the motions to compel filed by the Bondholders against the Government Parties, there is no reason to treat those decisions differently than any other post-March 2017 Fiscal Plan "decision." (See June 6 Order at 6 n.6.)

As they did in the Prior Objections, the Bondholders continue to insist that there can be no common interest among the Oversight Board and any of the Government Parties due to their inherently adverse relationships. (Id.) In the June 27 Order, this Court squarely rejected that same argument raised by the Bondholders in the context of the Prior Objections. In doing so, this Court adopted Judge Dein's conclusion that that the Oversight Board and the Government Parties all shared a "common interest in effective pension reform for the benefit of pensioners and are afforded the deliberative process privilege when acting in a concerted effort toward that goal." (June 27 Order at 16 (quoting May 6 Order 3-4).) That reasoning applies equally here. Accordingly, for substantially the same the reasons set forth in the June 27 Order, the Bondholders' argument that the Oversight Board waived the deliberative process privilege is rejected.

D. Substantial Need

In the Prior Objections, the Bondholders asserted that, even if the deliberative process privilege were to apply, their substantial need for the deliberative materials in the Government Parties' possession outweighed any harm that would result from disclosure. They raise a similar argument here; however, they now also contend that their need for deliberative materials in the Oversight Board's possession is even greater because the Oversight Board was directly responsible for devising a plan to circumvent the Bondholders' property rights. (First Objection ¶ 25.) The Bondholders' assertions lack merit.

As an initial matter, the Bondholders' general arguments concerning their substantial need for the materials in question are rejected for the reasons articulated in the June 27 Order. (See June 27 Order at 17-20.) Further, the Court finds no basis to distinguish between documents in the possession of the Government Entities, on one hand, and documents in the

possession of the Oversight Board, on the other hand.  Rather, the Court agrees with Judge Dein that the Oversight Board's role in connection with the PayGo system "does not alter the significance of the sought information to the issues raised by" the Stay Relief Motion.  (June 6 Order at 9.)  Whether obtained from the Oversight Board, the Government Parties, or elsewhere, "evidence of intent to circumvent rights in collateral is, at best, of marginal relevance to the central question" that would have been considered in connection with the Stay Relief Motion.  (June 27 Order at 18.)  Accordingly, Judge Dein made no clear error in holding that the Bondholders failed to show a substantial need for the information withheld by the Oversight Board.

Attorney-Client Privilege

The Court next addresses the Oversight Board's claims of attorney-client privilege.  The First Circuit has adopted the following test for determining whether the attorney-client privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (citation omitted).  Under this framework, "[t]he attorney-client privilege . . . safeguard[s] communications between attorney and client, but protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice."  Blattman v. Scaramellino, 891 F.3d 1, 4 (1st Cir. 2019) (citation and internal quotation marks omitted) (alteration in original).  Hence, "disclosing attorney-client communications to a third party [typically] undermines the privilege."  Cavallaro, 284 F.3d at 246-47.

In support of the Objections, the Bondholders contend that Judge Dein erred in (i) holding that the Oversight Board properly invoked the attorney-client privilege (Second Objection ¶ 17), (ii) concluding that the attorney-client privilege was not waived as to documents the Oversight Board shared with its advisors (id. ¶¶ 18-22), (iii) declining to apply the crime-fraud exception to attorney-client privilege (First Objection ¶ 40), and (iv) finding no waiver as to documents the Oversight Board shared with the Government Parties (id. ¶ 41). The Court considers each argument in turn below.

A. The Oversight Board's Invocation of the Attorney-Client Privilege

The Bondholders assert that, in its response to Judge Dein's directives in the June 6 Order, the Oversight Board failed to substantiate its claim of attorney-client privilege as to 222 documents. (Second Objection ¶ 17). In respect of these documents, the Bondholders contend that Judge Dein committed clear error "by finding that inserting general phrases such as 'soliciting legal advice' into the description cloaks the entire communication and all attachments with the attorney-client privilege." (Id.) These arguments are misplaced.

Judge Dein recognized in the June 20 Order that "[d]ocuments and segregable parts of documents which do not contain or seek legal advice are not protected by the attorney-client privilege." (June 20 Order at 7 (quoting June 6 Order at 13); cf. FM Generator, Inc. v. MTU Onsite Energy Corp., No. CV 14-14354-DJC, 2016 WL 8902603, at *8 (D. Mass. Aug. 25, 2016) ("An underlying fact or document is not immunized from discovery simply because it has been disclosed to an attorney, especially where . . . the attachments themselves do not contain legal advice or any communications between an attorney and a client.").) Applying this principle, Judge Dein found that the Oversight Board's supplemental submissions sufficiently demonstrated that the attachments or other topics at issue related to legal advice being given.

(June 20 Order at 7.) This was not clear error. Indeed, as both Judge Dein and the Oversight Board have pointed out, many of the Bondholders' objections in this regard are predicated on partial quotations of the Oversight Board's privilege log entries. (See, e.g., June 20 Order at 8; Second Objection ¶ 17.) Having independently reviewed the Bondholders' privilege logs and declarations, this Court finds no basis to reverse Judge Dein's conclusions on this issue. Accordingly, Judge Dein's ruling concerning the propriety of the Oversight Board's invocation of the attorney-client privilege is upheld.

### B. Documents Shared with Non-Lawyer Third Parties

The Bondholders also contend that Judge Dein committed clear error in ruling that the Oversight Board properly invoked the attorney-client privilege over documents that it shared with third party, non-lawyer advisors. (Second Objection ¶ 21.) More specifically, in the Bondholders' view, Judge Dein incorrectly held that the Oversight Board had satisfied the test set forth in Columbia Data Prod., Inc. v. Autonomy Corp., No. CIV.A. 11-12077-NMG, 2012 WL 6212898, at *15 (D. Mass. Dec. 12, 2012), also known as the Kovel exception to waiver, for determining whether attorney-client privileged material disclosed to a non-lawyer third party will remain protected by the privilege: (i) whether the third party communication was necessary or highly useful for the effective consultation between the lawyer and the client, (ii) whether the third party was serving to translate information between the lawyer and the client, and (iii) whether the third party communication was made for the purpose of rendering legal advice, rather than business advice. (Second Objection ¶¶ 18-22.) For the following reasons, along with those explained in the June 27 Order, this Court overrules the Bondholders' objections.

Here, it was not clearly erroneous for Judge Dein to conclude, based upon her review of the applicable privilege logs and declarations, that the third parties present on various

legal communications were necessary to translate information for a legal purpose. Nor did Judge Dein err in acknowledging that "the Oversight Board's members cannot prepare for litigation and mediation on their own, and furthermore that many of the complex matters in this case require experts to prepare information for counsel's use." (June 20 Order at 10.) Rather, Judge Dein reasonably viewed the Oversight Board's submissions against that backdrop. As this Court observed in the June 27 Order, where, as here, "'the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others,' the attorney-client 'privilege must include all the persons who act as the attorney's agents.'" Cavallaro, 284 F.3d at 247 (quoting United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961)). Therefore, this Court upholds Judge Dein's determinations as to any withheld documents including third party non-lawyers.

        C.        Crime-Fraud Exception

The Bondholders argue that Judge Dein erred in rejecting their arguments regarding the crime-fraud exception to the attorney-client privilege. (First Objection ¶ 40.) The crime-fraud exception applies here, the Bondholders insist, because the Oversight Board "communicated with others (including AAFAF, a representative of ERS) about the plan to create the PayGo system, the resultant transfer of employer contributions away from ERS to the Commonwealth, and the diversion of the Bondholders' collateral." (Id.) The Bondholders further postulate that the Oversight Board's privilege log "concedes that the legal advice sought with respect to [the documents in question] was an unalloyed effort to 'hinder[] the enforcement

of a security interest' and carry out a fraudulent transfer' in bankruptcy." (Id. (quoting In re Blier Cedar Co., 10 B.R. 993, 999-1000 & n.14 (Bankr. D. Me. 1981).)

"The crime-fraud exception . . . withdraws protection [under the attorney-client privilege] where the client sought or employed legal representation in order to commit or facilitate a crime or fraud." In re Grand Jury Proceedings, 417 F.3d 18, 22 (1st Cir. 2005). To trigger application of this exception, the party seeking to defeat the privilege must "present evidence . . . (1) that the client was engag[ed] in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." Id. (citation, internal quotations, and emphasis omitted). In her May 6, 2019, *Order on Motions to Compel* (Docket Entry No. 6836, the "May 6 Order"), Judge Dein rejected the Bondholders' invocation of the crime-fraud exception, finding that the evidence was indicative of the retention of attorneys for the purpose of "help[ing] with the Commonwealth and/or ERS' reorganization[,]" and that there is no evidence that any of the attorneys listed on the privilege log "were employed for an improper purpose."[8] (May 6 Order at 8.) This conclusion was neither clearly erroneous nor contrary to law. The Bondholders' contention that the creation of the PayGo structure was a fraudulent transfer in bankruptcy meant to hinder the Bondholders' enforcement of their security interest does not present the requisite prima face showing of criminal or deceptive activity where, as here, the fiscal plan and legislation disclosed the basic structure, cash flow, and economic effects of the reorganization. See In Caesars Entm't Operating Co., Inc., No. 15 B 1145, 2016 WL 7477566, at *3 (Bankr. N.D. Ill. Sept. 21, 2016) (denying motion to compel

---

[8] In the June 6 Order, Judge Dein reaffirmed her rulings in the May 6 Order pertaining to, inter alia, the crime-fraud exception. (See June 6 Order at 6 n.5.)

privileged documents under the crime-fraud exception despite prima facie validity of actual and constructive fraudulent transfer claims, because such claims involved only "an intent to 'hinder and delay' creditors, not an intent to defraud them"). Similarly, the Oversight Board's consultation with counsel regarding the legal dispute over the legitimacy and ultimate impact of the new structure on the Bondholders' collateral security interest is insufficient to show that advice given in connection with the restructuring was sought and given in furtherance of a crime or fraud. Cf. In re Grand Jury Proceedings, 417 F.3d at 23-25 (upholding compelled disclosure in context of investigation of perjury); United States v. Weed, 99 F. Supp. 3d 201, 206 (D. Mass. 2015) (applying crime-fraud exception where counsel's advice was used in furtherance of stock manipulation scheme); In re Blier Cedar Co., 10 B.R. at 999-1002, nn. 14&15 (denying protective order where sham real estate foreclosure to expunge junior mortgage interest was alleged to violate criminal law and constitute fraudulent transfer, and was found "tainted to the extent that what might otherwise have constituted a confidential communication may be unprivileged"; waiver and other defects also found with respect to privilege claim).

Accordingly, Judge Dein's ruling that the Bondholders had failed to proffer a sufficient basis for application of the crime-fraud exception stands.

### D. Waiver of the Attorney-Client Privilege

The Bondholders also assert that the Oversight Board waived the attorney-client privilege with respect to documents shared with the Commonwealth, its advisors, or AAFAF. (First Objection ¶ 41.) For the reasons articulated above in connection with this Court's discussion of the deliberative process privilege, as well as those stated in the June 27 Order, the Bondholders' argument is rejected.

Work Product Doctrine

Although Judge Dein concluded that the Oversight Board did not adequately support its work product claims with respect to certain documents, she ultimately found that all such documents are immune from disclosure under the attorney-client privilege and/or deliberative process privilege. (June 20 Order at 11-12.) Therefore, because this Court upholds Judge Dein's rulings with respect to those two privileges, it need not address the Oversight Board's work product claims. See Lazare Kaplan Int'l, Inc. v. KBC Bank N.V., No. 1:11-CV-09490 (ALC), 2016 WL 4154274, at *4 (S.D.N.Y. July 22, 2016) ("Because the documents are privileged under attorney-client privilege, the Court need not consider the applicability of the work-product privilege."); Envtl. Integrity Project v. Small Bus. Admin., 151 F. Supp. 3d 49, 57 (D.D.C. 2015) ("Since the Court concludes that these documents were properly withheld pursuant to the deliberative process privilege, it need not decide whether the agency properly invoked the attorney work-product privilege.").

[*Remainder of Page Intentionally Left Blank*]

CONCLUSION

The Court has considered the Bondholders' remaining arguments and finds them to be without merit.  Accordingly, for all of the foregoing reasons, as well as those articulated in the June 27 Order, the Bondholders' Objections are overruled, and the June Discovery Orders stand.

This Memorandum Order resolves Docket Entry Nos. 7518 and 7577 in Case No. 17-3283 and Docket Entry Nos. 566 and 584 in Case No. 17-3566.

SO ORDERED

Dated:  July 8, 2019

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge