# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>Debtors. | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**OBJECTION OF THE QTCB NOTEHOLDER GROUP TO THE RENEWED MOTION OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 502 AND BANKRUPTCY RULE 3007, ESTABLISHING PROCEDURES WITH RESPECT TO THE OMNIBUS CONDITIONAL OBJECTION TO CLAIMS FILED OR ASSERTED BY THE PUBLIC BUILDINGS AUTHORITY, HOLDERS OF THE PUBLIC BUILDINGS AUTHORITY BONDS, AND HOLDERS OF <u>CERTAIN COMMONWEALTH GENERAL OBLIGATION BONDS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

The QTCB Noteholder Group[2] respectfully submits this objection (the "Objection") to the *Renewed Motion of the Ad Hoc Group of General Obligation Bondholders, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Conditional Objection to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds*, Dkt. No. 7814 (the "Renewed Procedures Motion"). In support of this Objection, the QTCB Noteholder Group respectfully states as follows:

## PRELIMINARY STATEMENT

1. On May 10, 2019, the Court issued its *Memorandum Opinion and Order Denying Motion of the Ad Hoc Group of General Obligation Bondholders for Entry of an Order Establishing Conditional Omnibus Claims Objection Procedure*, Dkt. No. 6891 (the "Procedures Order")[3]. The Procedures Order plainly states that "[a]lthough the Conditional Claim Objection is styled as an objection to claims pursuant to Section 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure, the Conditional Claim Objection presents its arguments as hypothetical propositions and expressly disclaims any implication that the GO Group endorses the relief described therein." Procedures Order at 5. In rejecting the GO Group's requested relief, the Court reasoned: "In its current form and with its current movant, the Conditional Claim Objection appears to seek an advisory opinion that would not be justiciable in the present posture of the matter. Under these circumstances it would be improper to implement related procedures, including the dissemination of broad and potentially confusing

---

[2] The QTCB Noteholder Group shall have the same meaning as set forth in *Notice of Appearance and Request for Notice* [Dkt. No. 134] and the *Third Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* [Dkt. No. 7659].

[3] Capitalized terms not otherwise defined herein shall have the meaning given in the Procedures Order.

notice of a request that is not currently being pressed by any party in interest and may never be pressed at all." *Id.* at 7.

2. Despite the Court's clear directive that the Conditional Claim Objection is not justiciable, the GO Group now alleges that the "landscape" has changed "dramatically in the weeks since the Procedures Order was issued, and now it is imperative that the Conditional [Claim] Objection proceed." Renewed Procedures Motion ¶ 5.

3. In fact, nothing at all has changed, and the GO Group's Renewed Procedures Motion remains just as improper for the reasons previously stated not only in the QTCB Noteholder Group's April 15, 2019, *Objection of the QTCB Noteholder Group to the Motion Establishing Procedures With Respect to the Omnibus Conditional Objection of Ad Hoc Group of General Obligation Bondholders and Preliminary Response to the Omnibus Conditional Objection* (Dkt. No. 6254) (the "Initial Objection"), but also in the Court's May 10, 2019, Procedures Order. Simply put:

- the Conditional Claim Objection is still hypothetical;
- the GO Group continues to neither endorse nor adopt any of the arguments therein;
- the Conditional Claim Objection still seeks an advisory opinion; and
- implementation of notice procedures on the basis of a hypothetical, contingent objection would still introduce unnecessary confusion into the claim objection process.

4. Nevertheless, the GO Group is correct that the "landscape" of the Commonwealth's Title III case is evolving in a positive direction. On June 16, 2019, the Oversight Board announced that it had entered into a plan support agreement (the "PSA") outlining the terms of a soon-to-be filed plan of adjustment (the "Plan") that will propose a global settlement of all claims asserted by holders of GO Bonds and PBA Bonds against the

Commonwealth and all potential defenses and challenges thereto (whether or not yet asserted), including the GO Bond Objections (as that term is defined in the PSA) (the "<u>Proposed Settlement</u>"). *See* PSA.[4] The Plan will offer holders of challenged GO Bonds the option of (1) accepting a settlement payment under the Plan or (2) retaining their rights to litigate the validity of their GO Bonds and, if successful, receiving the same Plan treatment as the unchallenged GO Bonds. The Plan will establish a litigation process for those bondholders, if any, who elect the litigation option under the Plan.

5. The PSA represents a significant milestone in this contentious and litigious case. Among other things, the PSA provides a path for the Commonwealth to exit bankruptcy expeditiously, while also providing a mechanism for the efficient resolution of the complex, costly and time-consuming litigation that has bogged down this restructuring process. Critically, the Plan will provide a method for the Commonwealth to achieve fiscal responsibility and access to the capital markets, the twin goals of PROMESA.

6. On June 25, 2019, the Special Claims Committee for the Oversight Board filed its *Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment*, Dkt. No. 7640 (the "<u>Stay Motion</u>"). As set forth in the Stay Motion, the Oversight Board will "file a joint plan of adjustment for the Commonwealth and PBA that incorporates the restructuring framework contained in the PSA to expeditiously move the Commonwealth towards exiting its Title III case." *Id.* ¶ 2.

7. Litigation of the Conditional Claim Objection and the implementation of procedures in furtherance thereof would undermine the Oversight Board's efforts to continue discussions with creditor parties, conserve resources of the parties and the Court, and move the

---

[4] The PSA has been uploaded to the Oversight Board's website, along with a summary thereof, *see* https://oversightboard.pr.gov/documents/.

Commonwealth forward with key stakeholders on a consensual path towards achieving the ultimate goals of transformation, resilience, and stability for the Commonwealth.

8. These PROMESA cases do not need more litigation. A stay of litigation to permit the Plan process to commence will permit creditors to evaluate the Proposed Settlement and narrow the issues and the parties, if any, that may ultimately litigate bond validity issues. And the Plan confirmation process will provide the GO Group the forum to present the confirmation objections that it outlines in the Renewed Procedures Motion. For these reasons, the QTCB Noteholder Group respectfully requests the Court deny the Renewed Procedures Motion.

## OBJECTION

**I. The Conditional Claim Objection Remains Unripe, Still Seeks an Impermissible Advisory Opinion and therefore the Renewed Procedures Motion Should be Denied.**

9. For the same reasons set forth in the Initial Objection, which is hereby incorporated by reference, the Conditional Claim Objection remains unripe for judicial consideration.

10. Additionally, it is plain on the face of the Renewed Procedures Motion that the GO Group's goal is not to litigate the Conditional Claim Objection. Indeed, nothing in the Renewed Procedures Motion indicates that the GO Group actually endorses the relief sought in the Conditional Claim Objection. Rather, the GO Group is using the Renewed Procedures Motion as a vehicle to manufacture a set of circumstances it believes would recharacterize certain Commonwealth and Public Buildings Authority (the "PBA") Bond *claims* as "disputed" as part of its strategy to oppose the PSA and the Plan. *See* Procedures Motion ¶¶ 39-42.

11. Because the Oversight Board does not dispute the validity of the *claims* of pre-2012 Commonwealth and PBA bondholders, the GO Group believes it needs to revive the Conditional Claim Objection in order to create a set of circumstances in which certain bonds

impacted by the PSA are "disputed."[5] *See* Procedures Motion ¶10 ("It is therefore vital that the GO Group be permitted to pursue its Conditional [Claim] Objection, if only to eliminate any conceivable doubt that all of the Conditionally Challenged Claims are currently disputed.").[6] To the extent the GO Group asserts that any Plan derived from the PSA may not be confirmable, that issue is not currently before the Court and cannot serve as a basis to proceed on the otherwise non-justiciable Conditional Claim Objection. Nor is it a basis to facilitate the creation of disputed claims simply so the GO Group can craft the Plan confirmability argument it wishes to have.

12. Despite the GO Group's desire to better position itself in the context of future Plan confirmation litigation, there is simply no prejudice in, once again, denying the request for procedures until such a time – if that time ever materializes – that the Conditional Claim Objection is actually ripe.

13. For these reasons, the QTCB Noteholder Group respectfully requests that the Court deny the Renewed Procedures Motion.

---

[5] The GO Group's assertion that the so-called Conditionally Challenged Claims are already "disputed," Procedures Motion ¶¶ 26, 43, is incorrect. On May 2, 2019, the Oversight Board, through its Special Claims Committee, filed the so-called Clawback Actions that purport to object to the validity of certain issuances of pre-2012 Commonwealth and PBA bonds. Critically, however, the Clawback Actions are not objections to the claims filed by holders of those bonds, and the Oversight Board made clear that ***it has not objected to the validity of such claims***. *See e.g.*, *Oversight Board v. Defendant 1A-100A*, Case. No. 19-281-LTS, Dkt. No. 1 at n.6 (May 2, 2019) (clarifying that the Oversight Board reserves the right to "object to the validity of [the Challenged GO Bonds issued in 2011]").

[6] The GO Group offers no support for the proposition that "conditionally challenged" bond claims render such claims disputed for plan voting. The GO Group's logic, if taken to the extreme, would permit any party in interest to conditionally object to any claim of any kind, thus preventing holders of such conditionally objected claims from voting on any plan. If the Court opens the floodgates to this kind of strategy to manipulate voting rights in these cases, then the Court will be burdened with numerous motions to provisionally allow claims for voting purposes and significantly impair the Oversight Board's ability to solicit votes for a plan of adjustment.

**II.	Even if the Conditional Claim Objection Were Ripe (Which it is Not), Consideration of the Renewed Procedures Motion Should be Deferred Pending Resolution of the Oversight Board's Stay Motion.**

14.	As the GO Group itself has previously recognized, the sequencing and timing of any litigation relating to the validity of Commonwealth and PBA Bonds "should be addressed by the Court in the context of the [Stay Motion]", and "no action by the Court in connection with the [ ] Conditional Claim Objection is necessary at this time." Joint Stipulation, Dkt. No. 7550 (June 21, 2019). On June 21, 2019, the GO Group agreed that sequencing the Stay Motion ahead of any consideration of procedures regarding the bond litigation was appropriate. Nothing in the Renewed Procedures Motion explains why the Court should not do the same with respect to the Renewed Procedures Motion.

## CONCLUSION

For the reasons set forth herein the QTCB Noteholder Group respectfully requests that the Court deny the Renewed Procedures Motion, or defer consideration thereof until such time as the Stay Motion has been decided and the issues raised in Conditional Claim Objection are actually ripe for consideration, and grant such other relief as the Court deems just and proper.

[*Remainder of page intentionally left blank.*]

Respectfully submitted, in San Juan, Puerto Rico, this 9th day of July, 2019.

/s/ Kurt A. Mayr
Kurt A. Mayr (*pro hac vice*)
David L. Lawton (*pro hac vice*)
Shannon B. Wolf (*pro hac vice*)

**BRACEWELL LLP**
City Place I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 256-8534
Email: kurt.mayr@bracewell.com
Email: david.lawton@bracewell.com
Email: shannon.wolf@bracewell.com

*Counsel for the QTCB Noteholder Group*

-and-

/s/ Roberto Abesada-Agüet
Roberto Abesada-Agüet
USDC-PR No. 216706
E-Mail: ra@calopsc.com

/s/ Sergio E. Criado
Sergio E. Criado
USDC-PR No. 226307
E-Mail: scriado@calopsc.com

**CORREA ACEVEDO & ABESADA LAW OFFICES, P.S.C.**
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R. 00968
Tel. (787) 273-8300; Fax (787) 273-8379

*Co-Counsel for the QTCB Noteholder Group*

**I HEREBY CERTIFY** that on July 9, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send automatic notifications of such filing to all attorneys of record.

>*/s/ Kurt A. Mayr*
>Kurt A. Mayr
>Bracewell LLP
>City Place I, 34th Floor
>185 Asylum Street
>Hartford, CT 06103
>Tel: (860) 254-8534
>Email: kurt.mayr@bracewell.com
>
>*/s/ Roberto Abesada-Agüet*
>Roberto Abesada-Agüet
>
>*/s/ Sergio E. Criado*
>Sergio E. Criado
>
>Centro Internacional de Mercadeo II
>#90 Carr. 165 Suite 407
>Guaynabo, Puerto Rico 00968-8064
>ra@calopsc.com
>(787) 273- 8300