**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------------- X
                              :

In re:                             :
                              :

THE FINANCIAL OVERSIGHT AND      :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,  :  Title III
                              :

        as representative of       :  Case No. 17-BK-3283 (LTS)
                              :

THE COMMONWEALTH OF PUERTO RICO *et al.,*  :  (Jointly Administered)
                              :

        Debtors.[1]              :
---------------------------------------------------------------------- X    **Re: ECF No. 7814**

**OBJECTION TO RENEWED MOTION OF AD HOC GROUP
OF GENERAL OBLIGATION BONDHOLDERS FOR ENTRY OF
AN ORDER ESTABLISHING PROCEDURES WITH RESPECT TO
OMNIBUS CONDITIONAL OBJECTION TO CLAIMS**

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") acting by and through its Special Claims Committee (the "SCC"), respectfully submits this objection (the "Objection") to the *Renewed Motion of the Ad Hoc Group of General Obligation Bondholders, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Conditional Objection to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds* [ECF No. 7814] (the "Motion"),

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

filed by the Ad Hoc Group of General Obligation Bondholders (the "Go Group") seeking entry

of an order establishing procedures for the resolution of its *Omnibus Conditional Objection of*

*the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public*

*Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain*

*Commonwealth General Obligation Bonds* (ECF No. 6099, the "Conditional Objection").  In

support of this Objection, the SCC respectfully states as follows:[2]

## OBJECTION

1.      The Oversight Board has disclosed terms of, and will soon file, a proposed plan of

adjustment for the Commonwealth (as may be amended and supplemented, the "Proposed

Plan").[3]  The Proposed Plan, if confirmed, would provide for allowance on a final basis of claims

held against the Commonwealth by holders of PBA bonds and GO bonds issued prior to 2012,

and a choice for certain other bondholders of either allowance on a final basis or litigation

following confirmation (the "Proposed Settlement").  The Oversight Board will seek approval of

a disclosure statement describing the global settlement and proposed litigation procedures

contemplated by the Proposed Plan.

2.      The GO Group objects to the Proposed Settlement and proposed treatment of the

bondholder claims as described in the PSA.  These objections are appropriately addressed as part

of the plan disclosure and confirmation process.  Instead, the Motion presents a duplicative path,

one that requires spending untold resources and dragging potentially thousands of parties into

---

[2]   Capitalized terms shall have the meanings provided in the Motion unless otherwise defined herein.

[3]   Specifically, the Oversight Board has published its Plan Support Agreement (the "PSA"), a copy of which is
      attached to the Motion.  The Oversight Board reserves all rights to amend the PSA and the terms of the
      Proposed Plan prior to confirmation.

litigation that could well be resolved by further negotiation and/or confirmation of the Proposed

Plan.  Accordingly, the Oversight Board respectfully requests that the Motion be denied.

I.    **The Ad Hoc Group Attempts to Circumvent the Oversight Board's Exclusive Authority to File a Plan and Settle the Debts of the Commonwealth.**

3.    As noted above, the GO Group is contesting the treatment of certain claims under

the Proposed Plan and how the Proposed Plan should treat certain classes of claims vis-à-vis

other classes of claims.

4.    The question of how claims should be treated under a plan is not a "case or

controversy" requiring litigation outside of the plan confirmation process.  It is a core

determination to be made by the Oversight Board in formulating its plan of adjustment, and the

appropriate subject of plan disclosure and/or confirmation.  To permit any other avenue for

objections to plan treatment is to undermine the plan disclosure and confirmation process, and

the Oversight Board's exclusive right to develop and file a plan of adjustment for the

Commonwealth.

A.    **The Oversight Board Is a Trustee With Authority to Resolve Claims by Plan Confirmation.**

5.    The Oversight Board is a "trustee" as defined in the Bankruptcy Code and

incorporated into PROMESA.  PROMESA § 301(c)(7).  Rule 9019 of the Federal Rules of

Bankruptcy Procedure (as incorporated into PROMESA at § 310, the "Bankruptcy Rules")

"vests authority to settle or compromise solely in" the trustee, consistent with "the numerous

provisions in the Bankruptcy Code establishing the [trustee's] authority to manage…legal

claims." *In re Smart World Tech., LLC*, 423 F.3d 166 (2nd Cir. 2005).[4]  Indeed, the trustee and

---

4    The portions of the quoted opinion omitted by ellipsis and otherwise refer to authority vested in, as applicable in that case, a debtor-in-possession serving in place of a trustee as provided by 11 U.S.C. § 1107(a) and managing

the trustee alone is *required* to manage legal claims (including by settlement, as appropriate) in its unique role as a fiduciary. *See id.* (citing *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 246 (5th Cir. 1988) and *In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989)).

6.     Likewise, under PROMESA, "[o]nly the Oversight Board…may file a plan of adjustment of the debts of the debtor." PROMESA § 312.  The plan must provide for treatment of claims.  PROMESA § 301 (incorporating 11 U.S.C. § 1123(a)(5)).  The plan "may…provide for…the settlement or adjustment of any claim" in accordance with, among other things, applicable rules governing settlement. *See id.* (incorporating 11 U.S.C. § 1123(b)).  The plan must be voted upon by holders of claims, to whom the Oversight Board must provide a disclosure statement that provides "adequate information" concerning the plan.  *Id.* (incorporating 11 U.S.C. § 1125).

7.     So long as the court approves, the trustee has authority to settle claims and provide for distribution on claims, even if other parties in interest have filed objections to those claims. *See RWNIH-DL 122nd Street 1 LLC v. Futterman (In re Futterman)*, Case No. 17-12899, Adv. Pro. No. 17-01223, 2019 WL 2553614, *4 (Bankr. S.D.N.Y. June 20, 2019); *In re DVR, LLC*, 582 B.R. 507, 522-23 (Bankr. D. Colo. 2018); *In re Heritage Org., LLC*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007); *Law Debenture Tr. Comp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 96 (D. Del. 2006); *Prin Corp. v. Altman (In re Altman)*, 265 B.R. 652, 659 (Bankr. D. Conn. 2001).

8.     Thus, the Oversight Board has authority to resolve, through plan confirmation, any claims objections filed by any party, necessarily including the Conditional Objection.

---

the estate created under 11 U.S.C. § 541, neither of which provisions are incorporated into PROMESA or relevant to this contested matter.

**B.    The Proposed Plan Reflects the Oversight Board's Exercise of Judgment as to the Merits of Claims Objections.**

9.      In drafting its Proposed Plan, the Oversight Board reviewed the arguments contained in the Conditional Objection, among other public and non-public documents, and crafted treatment of claims that in its exercise of judgment best serves the Commonwealth and its taxpayers and legitimate creditors, taking into account the strength of various arguments and claim objections.

10.     As a result of its diligence, the Oversight Board has outlined the terms of a Proposed Plan, which if confirmed, would settle the claims relating to pre-2012 "Vintage Bonds" subject to the GO Group's Conditional Objection, and potentially reduce the number and face amount of bondholder claims subject to objection.[5]

11.     The Proposed Settlement would require a significant haircut from holders of the Vintage Bonds, far from the "sweetheart deal" described by the GO Group.  *See* Motion, ¶ 6.

**C.    The Oversight Board's Duties and Powers Are Given Meaning Through the Confirmation Process.**

12.     The Bankruptcy Code provides ample opportunity to object to a plan—at the disclosure and solicitation, voting, and confirmation stages.  The GO Group can debate the wisdom of the Proposed Plan at any of those stages (or, as seems likely, all of them).

---

[5]     For the avoidance of doubt: the premise of the Conditional Objection, as stated in the Motion is that "if bonds issued prior to the Selectively Challenged Bonds were invalid, then those prior bonds could not then count against the debt limit when calculating whether the Selectively Challenged Bonds were valid."  Motion, ¶ 20. While the Conditional Objection does outline a possible affirmative defense that might be articulated by holders of Selectively Challenged Bonds, the Proposed Settlement embodied in the Proposed Plan would resolve the claims of holders of the aforementioned prior bonds (the Vintage Bonds) on a final basis.  Thus, while the affirmative defenses of the holders of Selectively Challenged Bonds might be preserved, there would be no need to involve holders of the prior bonds in such additional litigation.

13.     The imposition of a parallel claims objection process relating solely to the Conditional Objection would unnecessarily disrupt the plan confirmation process, confuse and distract claimants, and require parties to incur redundant litigation expenses.

14.     Moreover, the Official Committee of Unsecured Creditors ("UCC") has filed an objection to certain Vintage Bonds issued in 2011 and has sought to incorporate those bonds into the litigation procedures. *See* ECF Nos. 7057, 7154 (objection and procedures motions). The Conditional Objection encompasses these same 2011 Vintage Bonds as well as bonds issued in 2009 and 2010, without providing an independent legal and factual basis for objecting to the earlier bonds. Accordingly, litigation of the Conditional Objection would be premature, redundant, and a colossal waste of resources, and of course more so given the prospect of resolving the Conditional Objection through confirmation.

15.     For all of those reasons and more, the SCC has already moved to stay litigation of pending objections to GO bond claims. *See Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 7640] (the "Stay Motion").[6] The GO Group's Motion ignores the Stay Motion, and asks to proceed with litigation in parallel with plan confirmation, on the unspoken assumption that the plan will not be confirmed.

16.     As the Court has noted, Congress has entrusted the Oversight Board with the duty and power to make "critical judgments" for Puerto Rico to achieve fiscal responsibility and access to capital markets, and, as well as the "responsibility…to earn the trust and confidence" of its constituents. Transcript of Hrg. on ECF No. 6325, April 24, 2019, 163:10-164:18. Perhaps the Oversight Board's most important tool to earn the public trust and pull the Commonwealth

---

[6]     The Oversight Board incorporates herein by reference the arguments set forth in the Stay Motion as if fully stated herein.

out of bankruptcy is confirmation of a plan of adjustment. The Oversight Board is prepared to

propose a plan that would resolve the Conditional Objection and other litigation on a final basis.

17.     Puerto Rico's creditors, among others, will have the opportunity to submit

informed votes on a Proposed Plan and articulate reasoned opposition to confirmation.

Permitting disaffected constituencies to force the Oversight Board, other creditors, and the Court

into a costly parallel litigation path that *assumes* the failure of the plan process would be

inconsistent with Congress's intent under PROMESA and impose an unnecessary drain on the

Commonwealth's, and this Court's, resources.

## II.     There Is No Case or Controversy, for Exactly the Reasons the Court Previously Held.

18.     As the GO Group admits, when it previously requested identical relief, the Court

denied it on grounds that there was no actual case or controversy. The GO Group argues that the

Court's conclusion is "no longer tenable" because, although the legal and factual basis for the

Conditional Objection has not changed, the "imminent filing of a plan of adjustment" makes it

"critical to know which claims against the Commonwealth are undisputed and which ones are

subject to dispute." Motion, ¶ 39.

19.     This argument is simply wrong. There is no claims objection bar date. Thus, all

claims not allowed by a final order of the court are potentially subject to dispute, and all claims

resolutions encompassed by the Proposed Plan embody the Oversight Board's exercise of

judgment as to the merits of actual or potential disputes regarding such claims, including

objections of the nature articulated in the Conditional Objection. To the extent there is a "case or

controversy" regarding the perceived fairness of a proposed claims resolution process under the

Proposed Plan, it is the appropriate subject of the plan confirmation process.

7

20.     In addition, the Motion appears to ignore certain other aspects of the Procedures Order.

21.     First, in its Procedures Order, the Court explained that "[t]he GO Group seeks to present legal disputes for adjudication by the Court that are expressly conditioned on future events that may or may not occur, specifically, the Court's determination that certain PBA lease agreements are disguised financing transactions and that the Challenged GO Bonds are invalid under certain provisions of the Puerto Rico Constitution." Procedures Order, 6.

22.     The GO Group does not now attempt to explain how, as a result of the Proposed Plan, the "future events that may or may not occur" are now ripe to occur. The Proposed Plan would, in fact, make such events significantly *less likely* to occur, because certain claims objections would be resolved upon plan confirmation.

23.     Next, the Court noted that "[t]he Motion and the related Conditional Claim Objection make clear that the GO Group itself does not, at this point in time, actually even support the relief described in the Conditional Claim Objection. Nor is there any certainty that the GO Group would support the relief described therein at any point in the future. Instead, the Conditional Claim Objection appears to present a hypothetical request for relief instead of an actual case or controversy." Procedures Order, 7.

24.     Notably, the GO Group flatly admits in its Motion that it "maintains that the Selective Claim Objection is meritless" but acknowledges that the relief sought in the Conditional Objection "assumes that certain premises of the Selective Claim Objection could be established." Motion, ¶ 3.

25.     Thus, the GO Group does not, in fact, object to the validity of Vintage Bonds. Rather, it seeks to preserve its ability to raise an affirmative defense through the Conditional

8

Objection. However, no party has objected to their right to raise any affirmative defense—at the appropriate time and at the appropriate stage of litigation. Thus, the Court's basis for its earlier ruling, that "[t]he issues identified in the Conditional Claim Objection may ripen into concrete disputes between adverse parties in the course of the Pending Litigation; parties in interest eventually may raise defenses or plead counterclaims or crossclaims…But that has not yet happened," has not changed. *See* Procedures Order, 8. There have been no concrete disputes raised between adverse parties in the course of the Pending Litigation as described in the Procedures Order.[7]

26. As the GO Group concedes, what has occurred is that the Oversight Board has publicized the terms of its forthcoming Proposed Plan which would treat the GO Group's members' claims in a manner in which the GO Group finds objectionable. But again, a dispute as to the fairness of plan treatment is to be resolved in the plan confirmation process, not as the premature litigation of an affirmative defense.

27. For the reasons noted above, the Motion should be denied with prejudice.

[This space intentionally left blank.]

---

[7] The UCC has objected to the 2011 bond claims and requested approval of procedures to litigate the claims objection in tandem with the "Selective Claims Objection." *See* ECF No. 7154. Thus, to the extent any portion of the Conditional Objection ripened upon the addition of the 2011 bonds to the universe of claims objections actually supported by any party, such portion would be redundant in light of the UCC's motion to amend the bond litigation procedures, which motion is the subject of the Oversight Board's Stay Motion.

Dated: July 9, 2019

/s/ Edward S. Weisfelner, Esq.
**BROWN RUDNICK LLP**
Edward S. Weisfelner, Esq. (*Pro Hac Vice*)
**Seven Times Square**
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com
apapalaskaris@brownrudnick.com


Sunni P. Beville, Esq. (*Pro Hac Vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and*
*Management Board, acting through the Special*
*Claims Committee*

and

/s/ Kenneth C. Suria, Esq.
**ESTRELLA, LLC**
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and*
*Management Board, acting through the Special*
*Claims Committee*

63446377 v5