UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>  Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |

**URGENT MOTION FOR STAY OF ADVERSARY PROCEEDING
SUPPLEMENTAL TO PENDING MOTION TO STAY GO BOND PROCEEDINGS
PENDING CONFIRMATION OF COMMONWEALTH PLAN OF ADJUSTMENT**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth") and its related Title III debtors (the "Debtors"), pursuant to section 315(b) of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, acting through its Special Claims Committee, hereby files this urgent motion (the "Urgent Supplemental Stay Motion") seeking to supplement the stay (the "Plan Support Agreement Stay") sought pursuant to the Oversight Board's currently pending motion (the "Plan Support Agreement Stay Motion") (Case: 17-03283-LTS) (Doc. No. 7640) through the issuance of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Supplemental Stay

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

Order"). This Urgent Supplemental Stay Motion seeks the supplemental relief of extending the Plan Support Agreement Stay to the adversary proceeding captioned *Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico, et al. v. Barclays Capital et al.* (Adv. Pro. No. 19-00280) (the "Adversary Proceeding") commenced by the Special Claims Committee, acting by and through its members, and the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "Creditors' Committee") as co-trustees (the Special Claims Committee and the Creditors' Committee, collectively, the "Plaintiffs").

## PRELIMINARY STATEMENT

1. As the Court is aware, the Plan Support Agreement Stay Motion is currently pending before it. Pursuant thereto, the Oversight Board has already demonstrated good cause to stay the Bond Litigation pending confirmation of a joint plan of adjustment for the Commonwealth.[2]

2. On May 2, 2019, Plaintiffs commenced the Adversary Proceeding stating causes of action against banks, underwriters, law firms and other professionals that participated in the issuance of bonds or other financial transactions that caused or contributed to the insolvency of the Commonwealth (the "Defendants"). Claims asserted in the Adversary Proceeding seek the recovery of fraudulent transfers and damages from the Defendants arising from their having aided and abetted fiduciaries of the Debtors in the issuance of bonds that are the subject of the Bond Litigation (the "Challenged Bonds"), as well as from the conduct of certain Defendants related to other transactions.

---

[2] Capitalized terms used herein and not otherwise defined have the meanings ascribed thereto in the Plan Support Agreement Stay Motion. For the sake of clarity, the term "Bond Litigation" refers to the litigation seeking to recharacterize PBA lease payments as true debt, the objections to the validity of GO bonds, the actions to claw back principal and interest payments made on "Challenged Bonds," and lien avoidance litigation, all as described in more particularity in the Plan Support Agreement.

2

3. On June 28, 2019, certain of the Defendants (the "Joint Participation Movants") filed a joint motion (the "Participation Motion") for an order authorizing their participation in the same contested matters sought to be stayed pursuant to the Plan Support Agreement Stay Motion.

4. The Joint Participation Movants are underwriters that participated in the issuance of multiple offerings of Challenged Bonds and profited from, *inter alia*, underwriting fees in connection therewith.

5. The Joint Participation Movants do not assert that they currently own any Challenged Bonds, or that they owned Challenged Bonds at any time relevant to the Bond Litigation. Nor do the Joint Participation Movants identify themselves as parties from whom principal or interest on the Challenged Bonds could be clawed back pursuant to the Bond Litigation. In sum, the Joint Participation Movants do not assert a direct, pecuniary interest in the outcome of the Bond Litigation.

6. Rather than claiming a direct, pecuniary interest in the Bond Litigation, the Joint Participation Movants claim party-in-interest status based solely on the existence of common legal and factual issues shared by the Adversary Proceeding and the Bond Litigation. Despite reliance on such common issues, the Joint Participation Movants carefully avoid asserting that determinations made in the Bond Litigation will, as matter of issue preclusion or *res judicata*, result in their being precluded from re-litigating the same issues in the Adversary Proceeding. Rather, the Joint Participation Movants argue that they should be authorized to participate in the Bond Litigation because, as "a practical matter," the judicial determinations made in the Bond Litigation as to the validity of Challenged Bonds will "likely" be invoked by any prevailing party in other, subsequent proceedings involving the same factual and legal issues. The Joint

3

Participation Movants accordingly must be understood as seeking to participate fully and to be heard in the Bond Litigation while, at the same time, reserving the right to re-litigate the same issues in the Adversary Proceeding.

7. On May 28, 2019, counsel for the Plaintiffs were contacted by counsel for the Joint Participation Movants concerning their proposed participation in the Bond Litigation. Counsel for the Joint Participation Movants explained their view that that litigation concerning the validity of the Challenged Bonds should occur only once and that the Defendants should be permitted to participate in that litigation. In response, counsel for the Plaintiffs raised the issue of whether the Adversary Proceeding should be stayed pending the determination of the validity of the Challenged Bonds. On June 6, 2019, the parties resumed discussions regarding the manner in which the "one bite at the apple" objective could be achieved, with counsel for Plaintiffs advocating for a stay. Since the Defendants, or some of the Defendants, were unwilling to agree to a stay of the Adversary Proceeding, an apparent impasse was reached on that topic. Defendants were, however, invited by counsel for the Plaintiffs to make a specific proposal as to the level of their proposed participation in the Bond Litigation and were assured that any such proposal would be considered. No such proposal was offered by the Defendants and instead, over three weeks after the last discussions among counsel, the Joint Participation Movants filed the Joint Participation Motion on June 28, 2019, seeking omnibus participation in all phases of all of the Bond Litigation, including discovery.

8. As is evident from the Joint Participation Motion, existing precedent does not support the central contention of the Joint Participation Motion, *i.e.*, that mere overlap in legal issues between an adversary proceeding and a contested matter is sufficient, without more, to treat defendants in an adversary proceeding as parties in interest to a contested matter. If the law

4

were otherwise and common issues were sufficient to confer party-in-interest status, then it would be the rare adversary proceeding defendant who would be unable to find a basis for participation in the litigation of contested matters and other adversary proceedings in which it had no pecuniary interest. Yet the existence of common legal issues is the only argument advanced by the Joint Participation Movants in support of the relief they seek.[3]

9. Nonetheless, the Oversight Board, cognizant of the inclusive approach embodied by the GO Procedures Order, does not oppose *appropriate* participation by the Joint Participation Movants. It asks, however, that the Court, in its discretion, concurrently stay the Adversary Proceeding by extending the Plan Support Stay sought by the Oversight Board to any further litigation of the Adversary Proceeding.

10. The extension of the Plan Support Stay is not only justified on the ground of efficiency, conservation of resources and avoidance of duplicate litigation of the same issues, but it will avoid the problem of premature litigation of bond validity in the context of the Adversary Proceeding. If, as the Joint Participation Movants argue, it would be wrong for them to be sidelined from litigating the validity of the Challenged Bonds in the context of the Bond Litigation, it is equally wrong for that issue to be first litigated in the Adversary Proceeding without participation by holders of the Challenged Bonds. Furthermore, such premature litigation of bond validity would potentially interfere with the progress underway towards a joint

---

[3] In support of their status as "parties in interest," the Joint Participation Movants cite to three decisions, all of which identify direct pecuniary interests as the basis for permitting intervention. In *In re Savage Indus., Inc.*, 43 F.3d 714 (1st Cir. 1994), the Court found that holders of potential contingent product liability claims were, by virtue of their claims, parties in interest to the chapter 11 bankruptcy proceedings. Similarly, *In re Johns-Manville Corp.*, 36 B.R. 743 (Bankr. S.D.N.Y.), also cited by the Joint Participation Movants, involved recognition as parties in interest of holders of future contingent claims against bankruptcy debtors. In the third case cited by the Joint Participation Movants, *In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 546 (Bankr. D. N. H. 1988), a bankruptcy court allowed a regulatory agency to intervene in the bankruptcy proceedings of a utility where the debtor's assets, including consumer deposits, were arguably subject both to the jurisdiction of the agency and of the court.

5

plan of adjustment for the Commonwealth, for many of the same reasons as are stated in the Plan Support Stay Motion. In sum, multiple considerations weigh in favor of coordinating the litigation of the Adversary Proceeding with the Bond Litigation.

11. The Oversight Board also asks that the Court defer the issue of the appropriate scope of the Joint Participation Movants' participation in the Bond Litigation until after plan confirmation. It is respectfully suggested that in setting the scope of participation, the Court should take into account, among other factors, that the Joint Participation Movants have not identified a direct pecuniary interest in the Bond Litigation and that their presumably pro-validity legal positions will already be amply represented by actual bondholders whose rights to participate in the Bond Litigation as creditors are unassailable under the Bankruptcy Code. *See Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard Coll.*, 807 F.3d 472, 475-76 (1st Cir. 2015) (intervenor's "congruence in goals" with defendant give rise to presumption of adequate representation); *In re City of Bridgeport*, 128 B.R. 686, 687-88 (Bankr. D. Conn. 1991) (permissive intervention "should not be allowed where the potential intervenor's interests are already adequately represented").

12. For all the reasons set forth herein, good cause exists for the grant of the Supplemental Stay requested by the Oversight Board in this Urgent Supplemental Stay Motion.

## **LEGAL STANDARD**

13. The Bankruptcy Code confers discretion on a court to stay adversary proceedings as "necessary or appropriate to carry out the provisions of this title." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Indeed, the power to stay an adversary proceeding is inherent in section 105 of the Bankruptcy Code, *see In re S. Side House, LLC*, 470 B.R. 659, 684 (Bankr. E.D.N.Y. 2012), which provision is incorporated into PROMESA. *See* PROMESA § 301(a).

14. In exercising discretion to stay, courts "balance the equities" and consider the "potential prejudice that [a stay] may entail to each party." *Walsh Constr. Co. P.R. v. United Sur. & Indem. Co.*, 2015 WL 13548470, at *4 (D.P.R. Sept. 28, 2015); *see also Landis*, 299 U.S. at 255 (court considering motion to stay shall "weigh competing interests and maintain an even balance"). Among the factors a court should consider are the duration of the stay requested, the conservation of judicial resources, the prejudice faced by the parties if a stay is, or is not, entered, *see, e.g., Ramos-Martir v. Astra Merck, Inc.*, CIV. 05-2038(PG), 2005 WL 3088372, at *1 (D.P.R. Nov. 17, 2005); *In re ConAgra Foods, Inc.*, 2014 WL 12580052, at *4-9 (C.D. Cal. Dec. 29, 2014), *Total Petroleum Puerto Rico Corp. v. T.C. Oil, Corp.*, CV 09-1105 (JP), 2010 WL 11545626, at *1 (D.P.R. May 7, 2010), as well as the public interest, *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977).

15. As demonstrated in the Plan Support Agreement Stay Motion, a stay of the GO Objections pending confirmation of a joint plan of adjustment will avoid unnecessary consumption of the Court's and parties' limited time and resources. In addition, the requested extension of the Plan Support Stay will avoid the risk of premature litigation of matters properly reserved for determination in the Bond Litigation and will prevent the disruption of the sensitive progress towards a consensual plan of adjustment. *See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning)*, 212 F.3d 632, 635 (1st Cir. 2000) (citing, *inter alia*, Collier on Bankruptcy, ¶ 9019-2 (15th ed.1995)) (noting preference for settlements in bankruptcy cases). Without an extension of the stay, the Adversary Proceeding would potentially undermine the Plan Support Agreement Stay and could be used to force the Oversight Board to take positions at odds with aspects of the overall compromise and settlement embodied in the PSA.

16. The Joint Participation Movants will not be prejudiced by a stay, and in fact would benefit: a stay coterminous with the Plan Support Agreement Stay will avoid their need to expend resources on defense of the claims asserted against them. Should the resolution embodied in the plan fail to come to fruition, the non-moving parties will be in the exact same position as when the stay was entered and no worse off. Thus, no prejudice results from the imposition of a stay.

17. As explained in the Plan Support Agreement Stay Motion, the framework for a Commonwealth plan of adjustment is the result of months of negotiations with key stakeholders. Those efforts have resulted in the potential to resolve the GO Objections. To ensure that progress towards confirmation of a Commonwealth plan of adjustment is not undermined and parties are not compelled to spend time and resources in litigating the Adversary Proceeding, the Oversight Board asks the Court to extend the Plan Support Agreement Stay to the Adversary Proceeding.

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULES AND CASE MANAGEMENT ORDER**

18. Pursuant to Paragraph I.H of the Case Management Procedures, the Oversight Board hereby certifies that it has carefully examined the matter and concluded that there is a true need for an urgent motion; is has not created the urgency through any lack of due diligence; it has made a bona fide effort to resolve the matter without a hearing; and it has made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court. No party has indicated that it will object to the relief requested herein.

## **NOTICE**

19. Notice of this Urgent Supplemental Stay Motion has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United

8

States Attorney for the District of Puerto Rico; (iii) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (iv) the Official Committee of Retirees; (v) the insurers of the bonds issued or guaranteed by the Debtors; (vi) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors; (vii) holders of Commonwealth bonds who are parties to any group that has filed a statement under Bankruptcy Rule 2019; (viii) the holders and insurers of Commonwealth bonds identified on Appendix I to the Objection; (ix) DTC; (x) all parties that filed a Notice of Participation relating to the Objection Procedures; (xi) the Creditors' Committee; and (xii) all parties that have filed a notice of appearance in the above-captioned Title III cases.

## CONCLUSION

20.    For the reasons discussed above, the Oversight Board respectfully requests the Court grant this Urgent Supplemental Stay Motion and enter the Proposed Supplemental Stay Order staying the Adversary Proceeding pending confirmation of a plan of adjustment.[4]

---

[4]    In the alternative, the Oversight Board requests that the Court stay all deadlines and continue all hearings related to the Adversary Proceeding for not less than 120 days, without prejudice to requests for further extensions of the stay.

Dated: July 9, 2019
San Juan, Puerto Rico

<u>/s/ Edward S. Weisfelner, Esq.</u>
BROWN RUDNICK LLP
Edward S. Weisfelner, Esq.
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com

Sunni P. Beville, Esq. (*pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

and

<u>/s/ Alberto Estrella, Esq.</u>
<u>/s/ Kenneth C. Suria, Esq.</u>

ESTRELLA, LLC
Alberto Estrella, Esq. (USDC-PR 209804)
Kenneth C. Suria, Esq. (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ------------------------------------------------------------------- X<br>In re: :<br>:<br>THE FINANCIAL OVERSIGHT AND :<br>MANAGEMENT BOARD FOR PUERTO RICO, :<br>:<br>    as representative of :<br>:<br>THE COMMONWEALTH OF PUERTO RICO *et al.,* :<br>:<br>    Debtors.¹ :<br>------------------------------------------------------------------- X | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |

## **[PROPOSED] ORDER ON URGENT MOTION TO STAY ADVERSARY PROCEEDING**

Upon consideration of the *Urgent Motion for Supplemental Stay of Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment* (the "Urgent Motion"),² and the Court having found and determined that: (i) the Court has jurisdiction to consider the Urgent Motion and the relief requested therein pursuant to section 502 of the Bankruptcy Code as incorporated by section 301 of PROMESA and Bankruptcy Rule 3007, as incorporated by section 310 of PROMESA; (ii) venue is proper before this court pursuant to PROMESA section 307(a); (iii) due and proper notice of this Urgent Motion has been provided under the particular circumstances and no other or further notice need be provided; (iv) based on the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Urgent Motion.

2

statements and arguments made in the Urgent Motion, the relief requested in the Urgent Motion is in the best interest of the Commonwealth and its creditors; (v) any objections to the relief requested in the Urgent Motion having been withdrawn or overruled; and (vi) the Court having determined that the legal and factual bases set forth in the Urgent Motion establish just cause for the relief granted herein. Accordingly, it is hereby ordered that:

      1.      The relief requested in the Urgent Motion is GRANTED to the extent set forth herein.

      2.      The Adversary Proceeding is STAYED coterminously with the Plan Support Agreement Stay, and all hearings and deadlines related thereto are accordingly continued indefinitely.

      3.      The terms of and conditions of this Order shall be immediately effective and enforceable upon its entry.

      4.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2019

                                                                 _____
                                                                 HON. LAURA TAYLOR SWAIN
                                                                 UNITED STATES DISTRICT COURT JUDGE

00390187.1

2