IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO,<br><br>  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>                                Debtors. | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. TO THE RENEWED MOTION OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 502 AND BANKRUPTCY RULE 3007, ESTABLISHING PROCEDURES WITH RESPECT TO OMNIBUS CONDITIONAL OBJECTION TO CLAIMS FILED OR ASSERTED BY THE PUBLIC BUILDINGS AUTHORITY, HOLDERS OF PUBLIC BUILDINGS AUTHORITY BONDS, AND HOLDERS OF CERTAIN COMMONWEALTH GENERAL <u>OBLIGATION BONDS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................................................ ii

LIMITED OBJECTION AND RESERVATION OF RIGHTS ...................................................... 1

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund,
   748 F.2d 42 (1st Cir. 1984)..................................................................................................2

In re Hanish, LLC,
   570 B.R. 4 (Bankr. D. N.H. 2017 ......................................................................................3

## STATUTES AND OTHER AUTHORITIES

11 U.S.C. §:
   502(a) ....................................................................................................................................4
   1126......................................................................................................................................4
   1126(a) .................................................................................................................................4


P.R. CONST. art. VI § 2 .........................................................................................................7

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") respectfully submit this limited objection and reservation of rights (the "Limited Objection") to the *Renewed Motion of the Ad Hoc Group of General Obligation Bondholders, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Conditional Objection to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds*, ECF No. 7814 (the "Renewed Procedures Motion").[2] In support of this Limited Objection, Assured respectfully states as follows:

**LIMITED OBJECTION AND RESERVATION OF RIGHTS**

1. In the Renewed Procedures Motion, the Ad Hoc Group of General Obligation Bondholders (the "GO Group") renews a request to establish procedures for the litigation and adjudication of its Conditional Objection (ECF No. 6099) previously made in a similar motion (ECF No. 6104, the "Initial Procedures Motion") filed on April 2, 2019. In its response to the Initial Procedures Motion (ECF No. 6255, the "Initial Response"), Assured argued that the relief sought by the Conditional Objection was "hypothetical in nature and unripe for adjudication" at the time the Initial Procedures Motion was filed, because the Conditional Objection was contingent upon the success of the spurious legal theories underlying the Selective Claim Objection (ECF No. 4784) filed by the Financial Oversight and Management Board for Puerto Rico ("FOMB") and the Official Committee of Unsecured Creditors (the "UCC"), and those legal theories were unlikely ever to succeed.

---

[2] Capitalized terms used but not defined in this Limited Objection shall have the meanings ascribed to them in the Renewed Procedures Motion. Unless otherwise indicated, references to ECF numbers in this Limited Objection refer to the docket in Case No. 17-3283-LTS.

1

2. The Court ultimately denied the Initial Procedures Motion as unripe. In an order entered on May 10, 2019 (ECF No. 6891, the "Procedures Order"), the Court held that the Conditional Objection "appear[ed] to present a hypothetical request for relief instead of an actual claim or controversy" and "appear[ed] to seek an advisory opinion that would not be justiciable in the present posture of the matter." See also Renewed Procedures Motion ¶ 4.

3. Subsequent to the Court's denial of the Initial Procedures Motion and entry of the Procedures Order, two new developments have occurred that prompted the GO Group to file the Renewed Procedures Motion. First, on or around June 16, 2019, FOMB announced that it had entered into a so-called Plan Support Agreement, or "PSA", with a minority of PBA and GO Bondholders holding around 40% of the outstanding principal amount of PBA Bonds and only 10% of the outstanding principal amount of GO Bonds. See Adv. Proc. No. 18-00149-LTS, ECF No. 99 ¶ 1; see also Renewed Procedures Motion ¶ 6.

4. Because the PSA lacks sufficient creditor support to be accepted by an impaired accepting class in a fair vote conducted in accordance with PROMESA, the Bankruptcy Code, and First Circuit case law, the PSA contemplates a "gerrymandered" classification scheme in which substantively identical bond claims enjoying the same rank/priority and an entitlement to the same Commonwealth property are fragmented into discrete classes. This type of separate classification of claims with the same rank and the same entitlement to property is not permitted under First Circuit case law, which follows a "strict" approach to claims classification pursuant to which "the general rule regarding classification is that 'all creditors of equal rank with claims against the same property should be placed in the same class.'" Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund, 748 F.2d 42, 46 (1st Cir. 1984) (citation omitted). Indeed, a classification scheme rigged to allow for an artificially small impaired

accepting class is not tolerated in any jurisdiction, because there is "'one clear rule' to which all courts adhere—'*thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan.*'" In re Hanish, LLC, 570 B.R. 4, 15 (Bankr. D. N.H. 2017) (emphasis in original) (citation omitted).

5. To further disenfranchise creditors, the PSA proposes to use the Selective Claim Objection as a means of characterizing the claims arising from the Selectively Challenged Bonds held by Assured and other creditors as "disputed" and therefore not entitled to vote. For example, Assured insures GO Bonds issued in 2012. The term sheet attached to the PSA purports to classify bonds issued in 2012 separately from other GO Bonds as Class 4, "2012 CW Bond Claims." The PSA term sheet also provides that "2012 CW Bond Claims are subject to the [Selective Claim Objection] and . . . **shall not be entitled to vote to accept or reject the plan**." See ECF No. 7814-2 at p. 64 of 86 (emphasis added).

6. The second development to which the GO Group appears to be responding through the Renewed Procedures Motion is FOMB's filing of stay motions with respect to both the Selective Claim Objection (ECF No. 7640, the "GO Stay Motion") and the PBA Adversary Proceeding (Adv. Proc. No. 18-149-LTS, ECF No. 99, the "PBA Stay Motion", and together with the GO Stay Motion, the "Stay Motions"). While the Stay Motions offer various generic, pre-textual reasons for seeking a stay, the Stay Motions must properly be understood as an integral component of FOMB's strategy of disenfranchisement. Specifically, FOMB's attempt to disenfranchise creditors by means of the Selective Claim Objection would be foiled if the Selective Claim Objection were to proceed to adjudication in accordance with the "exclusive" procedures FOMB and the UCC themselves proposed months ago for exactly this purpose. See ECF No. 4788 (joint urgent motion by FOMB and the UCC seeking Court approval of

3

"exclusive" procedures governing the Selective Claim Objection). This is so because a ruling by this Court that the Selective Claim Objection lacks merit would render the claims of Assured and other holders of Selectively Challenged Bonds undisputed and therefore deemed allowed (see 11 U.S.C. § 502(a))[3] and entitled to vote (see 11 U.S.C. § 1126).[4] The Stay Motions should therefore be understood first and foremost as a means of freezing the claims of Assured and other holders of Selectively Challenged Bonds in their "disputed" status so that FOMB can exclude the holders of such "disputed" claims—including many of Puerto Rico's largest creditors—from the voting on a plan.

7. The GO Group, in the Renewed Procedures Motion, accurately identifies many of these same defects in—and otherwise makes many cogent critiques of—the PSA and the Stay Motions. For example, the Renewed Procedures Motion observes that "the PSA reflects a sweetheart deal with preferred creditors and a blatant attempt to disenfranchise and coerce other bondholders who seek to defend their constitutionally protected rights." See Renewed Procedures Motion ¶ 6. The Renewed Procedures Motion likewise accurately identifies the GO Stay Motion as a "transparent attempt to frustrate the efforts of holders of the bonds subject to [the Selective Claim Objection] to dispel the cloud of uncertainty that has been cast over their claims by the Oversight Board and UCC's irresponsible decision to challenge the Commonwealth's own constitutionally protected debt." Id. at ¶ 35. Assured wholeheartedly agrees with these aspects of the GO Group's analysis and joins the GO Group in the substance of these arguments.

---

[3] "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

[4] "The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a).

8. Nonetheless, consistent with Assured's Initial Response, Assured disagrees with the GO Group as to the proper sequencing of litigation, and continues to believe that the Conditional Objection remains unripe unless and until the Selective Claim Objection is first adjudicated, because the Conditional Objection is contingent upon the same unsustainable legal theories espoused in the Selective Claim Objection. As the GO Group itself states in the Renewed Procedures Motion, "The Conditional Objection . . . assumes that certain premises of the Selective Claim Objection **could be established**." Renewed Procedures Motion ¶ 3 (emphasis added). In the same paragraph, however, the GO Group also acknowledges that it does not believe that the relevant "premises" of the Selective Claim Objection can be "established," stating "we [i.e. the GO Group] are confident that the Court will reject [the Selected Claim Objection]." Id. Therefore, assuming that the Court simply denies the Stay Motions (as Assured has separately requested in its objections to the Stay Motions) and proceeds to a prompt adjudication of the Selective Claim Objection in accordance with the existing *exclusive* procedures already established by this Court's Selective Claim Objection Procedures Order (ECF No. 5143),[5] the Conditional Objection would become ripe only in the unlikely event that the Selective Claim Objection survives such an adjudication.

9. Assured therefore objects to the Renewed Procedures Motion on the limited grounds that the Conditional Objection is still unripe in light of the absence, to date, of a ruling on the Selective Claim Objection. In view of this ongoing lack of ripeness, Assured submits that the Court should deny both the Renewed Procedures Motion *and the Stay Motions* at this time.

---

[5] Paragraph 1 of the "Initial Procedures" (ECF No. 5143-2) established by the Selective Claim Objection Procedures Order is entitled "**Exclusivity of Procedures**" and provides "These procedures shall be **the exclusive means** to participate in the litigation before the District Court of issues relating to the

5

Rather than entertaining these motions at this time, and in accordance with its existing Selective Claim Objection Procedures Order establishing *exclusive* procedures for the adjudication of the Selective Claim Objection, the Court should order the parties to the Selective Claim Objection to expeditiously finalize procedures for the litigation of that objection, and the Court should then promptly proceed to an actual adjudication of the Selective Claim Objection. Following the adjudication of the Selective Claim Objection, the Court and any relevant parties can then assess whether anything remains of the Conditional Objection and if any such remnants of the Conditional Objection have become ripe as of that time. More likely, adjudication of the Selective Claim Objection will also fully resolve the Conditional Objection, leaving no open issues from either objection for the Court and the parties to address.

10. There is no reason to rush to a solicitation of votes on a possible plan that is defective, based on a minimally supported PSA. FOMB will likely argue that there is insufficient time to adjudicate the Selective Claim Objection. However, FOMB waived that argument when it first proposed,[6] and then received Court approval for,[7] the "exclusive" procedures established in the Selective Claim Objection Procedures Order. Indeed, FOMB proclaimed within the four corners of the Selective Claim Objection itself that "**The issues raised in this [Claim] Objection are *gating issue*s for the Commonwealth's plan of adjustment process . . . [W]hether more than $6 billion of GO bondholder claims should be disallowed is unquestionably a *critical gating issue*.**" See Selective Claim Objection ¶ 10

---

disallowance of Challenged GO Bond Claims on the grounds set forth in the [Selective Claim] Objection" (emphasis added).

[6] See ECF No. 4788 (joint motion by FOMB and the UCC seeking Court approval of exclusive procedures governing the litigation of the Selective Claim Objection); see also ECF No. 4788-1 (FOMB's proposed procedures, which provide in Paragraph 1 for the "Exclusivity" of those "Procedures").

[7] See Selective Claim Objection Procedures Order (ECF No. 5143).

(emphasis added). Having acknowledged the status of the Selective Claim Objection as a "critical gating issue" for any plan process, FOMB cannot now purport to commence such a plan process without first resolving this "critical gating issue"—an issue which, when resolved, necessarily will clarify what voting rights parties will have in such a plan process.

11. In any event, the Selective Claim Objection should not be difficult to adjudicate, because the Selective Claim Objection raises numerous threshold legal issues, any one of which should be sufficient to dispose of the Selective Claim Objection as a matter of law.

12. To take the most obvious example, the Court will likely be able to resolve the Selective Claim Objection as a matter of law simply by analyzing the plain language of the debt limit provision in the Puerto Rico constitution (P.R. CONST. art. VI § 2), because the central point of disagreement between the parties to the Selective Claim Objection relates to the meaning and scope of that provision. Specifically, by its plain terms, the Puerto Rico constitution generally includes in the calculation of the debt limit only (i) *direct* obligations of the Commonwealth (ii) for money *borrowed directly* by the Commonwealth, and (iii) for the payment of which the full faith and credit and taxing power of the Commonwealth has been pledged.[8] The PBA Bonds do not satisfy any of these three criteria, because the PBA Bonds (i) are not direct obligations of the Commonwealth, and instead are direct obligations of PBA; (ii) are not obligations for money borrowed directly by the Commonwealth, but rather are obligations for money borrowed by PBA; and (iii) are not obligations for the payment of which the full faith and credit and taxing power of the Commonwealth has been pledged, because the

---

[8] The Puerto Rico constitution does, separately, provide for inclusion of the Commonwealth's guarantee obligations in the calculation of the debt limit under some circumstances and using a different formula, but the faulty premise of the Selective Claim Objection is that the PBA Bonds constitute *direct* Commonwealth obligations—which they are not.

7

Commonwealth has not pledged its full faith and credit to the payment of the PBA Bonds. Therefore, the Court should be able to resolve the Selective Claim Objection by simply reading the debt limit provision of the Puerto Rico constitution.

13. Alternatively, the Court could resolve the Selective Claim Objection by simply proceeding to the already expeditiously scheduled adjudication of the PBA Adversary Proceeding, because a finding in that adversary proceeding that the PBA's leases constitute "true leases" would disprove the Selective Claim Objection's central contention that PBA is a "sham" entity and thereby dispose of the Selective Claim Objection.[9] As Assured has noted in its objection to the PBA Stay Motion, a motion for judgment on the pleadings (the "Rule 12(c) Motion") filed by Assured and other defendant-intervenors in the PBA Adversary Proceeding is nearly fully briefed, with only the reply brief—which movants have already substantially drafted—still outstanding. The Rule 12(c) Motion could therefore provide a convenient and expeditious vehicle for the imminent resolution of the PBA Adversary Proceeding and, by extension, the Selective Claim Objection.

14. In light of these available routes to an immediate resolution of the Selective Claim Objection, there is no rational reason that at least these threshold legal issues could not be addressed before embarking on a rushed and unfair plan process premised on the disenfranchisement of major creditor constituencies. In the unlikely event that the Court were to conclude, after considering these and similar threshold legal issues, that consideration of more complex evidentiary matters was also necessary to the adjudication of the Selective Claim

8

Objection and/or Conditional Objection, then the Court and the parties could reassess scheduling and sequencing at that time.

15. Therefore, while Assured reserves all of its rights with respect to the positions it might take with respect to the substantive relief requested in the Conditional Objection in the event the Conditional Objection were ever to become ripe for adjudication, Assured's objection to the Renewed Procedures Motion is limited to issues of ripeness, timing, and sequencing. The correct sequence in Assured's view, and the one consistent with this Court's prior orders, is: (i) first, adjudication of the Selective Claim Objection (including the PBA Adversary Proceeding) in accordance with the "exclusive" procedures already established for that purpose, (ii) second, adjudication, if necessary, of the Conditional Objection, and only then, to the extent desirable and feasible, (iii) a solicitation and plan process with respect to a plan consistent with the Court's rulings in (i) and (ii) above.[10]

16. Assured otherwise reserves all of its rights, including with respect to the Selective Claim Objection, the Conditional Objection, and any related procedures.

---

[9] This Court has already recognized the close relationship between the Selective Claim Objection and the PBA Adversary Proceeding, noting that "The GO Bond Claim Objection [i.e. the Selective Claim Objection] builds on the allegations of the PBA Adversary Proceeding." See Case No. 17-03283-LTS, ECF No. 6891 at 3. Because the Selective Claim Objection "builds on the allegations" of the PBA Adversary Proceeding, the PBA Adversary Proceeding is foundational to the Selective Claim Objection.

[10] Notably, this proposed sequencing only addresses the *relative* sequencing of the matters immediately at issue in the Renewed Procedures Motion, specifically (i) the Selective Claim Objection, (ii) the Conditional Objection, and (iii) a hypothetical solicitation and/or confirmation process with respect to an as-yet unfiled plan. Assured reserves all of its rights to argue, as it has in the past, that other proceedings and issues not immediately at issue in the Renewed Procedures Motion likewise constitute antecedent or "gating" issues that must be resolved prior to any plan or solicitation process.

Dated: July 9, 2019

| | |
|---|---|
| CASELLAS ALCOVER & BURGOS P.S.C. | CADWALADER, WICKERSHAM & TAFT LLP |
| By: */s/ Heriberto Burgos Pérez* | By: */s/ Mark C. Ellenberg* |
| Heriberto Burgos Pérez<br>USDC-PR 204809<br>Ricardo F. Casellas-Sánchez<br>USDC-PR 203114<br>Diana Pérez-Seda<br>USDC-PR 232014<br>P.O. Box 364924<br>San Juan, PR 00936-4924<br>Telephone: (787) 756-1400<br>Facsimile: (787) 756-1401<br>Email: hburgos@cabprlaw.com<br>rcasellas@cabprlaw.com<br>dperez@cabprlaw.com | Howard R. Hawkins, Jr.*<br>Mark C. Ellenberg*<br>William J. Natbony*<br>Ellen M. Halstead*<br>Thomas J. Curtin*<br>Casey J. Servais*<br>200 Liberty Street<br>New York, NY 10281<br>Telephone: (212) 504-6000<br>Facsimile: (212) 406-6666<br>Email: howard.hawkins@cwt.com<br>mark.ellenberg@cwt.com<br>bill.natbony@cwt.com<br>ellen.halstead@cwt.com<br>thomas.curtin@cwt.com<br>casey.servais@cwt.com |
| *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | * Admitted *pro hac vice*<br><br>*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

## CERTIFICATE OF SERVICE

      I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, 9th day of July, 2019.

                                    By: /s/ *Howard R. Hawkins, Jr.*
                                            Howard R. Hawkins, Jr.*
                                           * admitted pro hac vice