Hearing Date: July 24, 2019 at 9:30 a.m. AST

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>    Debtors.[1] | PROMESA Title III<br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF No. 7328** |
| AMBAC ASSURANCE CORPORATION<br><br>Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO (as representative of THE COMMONWEALTH OF PUERTO RICO), THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, THE PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY, THE PUERTO RICO INDUSTRIAL DEVELOPMENT CORPORATION<br><br>   Respondents. | Case No. 17-BK-3283-LTS<br><br><br>**Re: ECF No. 7328** |

## OPPOSITION TO AMBAC'S MOTION FOR
## ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER
## BANKRUPTCY RULE 2004 CONCERNING PRIFA RUM TAXES [ECF NO. 7328]

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Financial Oversight and Management Board for Puerto Rico ("FOMB"), as sole representative of Debtor the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor") in the Title III Case pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), hereby submits this opposition to *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxe*s [ECF No. 7328] (the "Rule 2004 Motion").

## PRELIMINARY STATEMENT

Ambac has served 26 document requests on the FOMB, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the Puerto Rico Industrial Development Company ("PRIDCO" and collectively, the "Government Parties") under the guise of Rule 2004 of the Federal Rules of Bankruptcy Procedure.  Ambac asserts its requests all relate to its proofs of claim and alleged right against the Commonwealth in its capacity as a holder and insurer of PRIFA-issued bonds, allegedly secured by the United States government's transmission to the Commonwealth of $117 million annually of federal excise taxes on the sale of Puerto Rico-produced rum in the United States.[2]  Three of Ambac's requests seek information on the flow of rum-tax remittances from the United States Treasury to the Commonwealth (the "Rum Tax Remittances") and, if applicable, to PRIFA.  The remainder fall into two categories.  The first seeks information about the rum tax generally, such as restrictions on the use of Rum Tax Remittances and all studies and analyses of the rum tax by the Commonwealth or other governmental entities.  The second seeks information about Puerto

---

[2]   Although Ambac makes a single reference that it "also owns and/or insures bonds issued directly by the Commonwealth" (Motion at ¶ 13) it is clear from the Motion and the discovery request that this request is focused on Ambac's position as a PRIFA bondholder/bond insurer. Ambac's concern is not that the Rum Tax Remittance will remain with the Commonwealth, but rather that such funds are not appropriated to PRIFA. *See* Motion at ¶ 43 ("Ambac's information requests are narrowly tailored and targeted at discovering specific information needed to understand the amounts, movements, locations, and uses of the Pledged Rum Taxes . . .")

Rico's domestic rum producers, such as incentive payments or tax breaks they receive from the Commonwealth, their lobbying efforts, and the number of Puerto Rico residents they employ. Rule 2004 does not entitle Ambac to any of this information, especially given Ambac's other pending litigation in which it wants discovery. It is hornbook law that Rule 2004 should not be used to circumvent discovery parameters in other pending litigation (including contested matters before this Court).

The Court will soon decide in another motion [ECF No. 7176] two issues that could defeat Ambac's standing to bring this motion. In connection with Ambac's parallel motion for an order that the automatic stay does not apply to certain lawsuits, or alternatively Ambac should get relief from the automatic stay, because (among other things) the Commonwealth has no property interest in Rum Tax Remittances it receives from the U.S. government, Judge Swain ordered that the parties first brief two threshold issues: (i) whether Ambac has standing to take any legal action on the PRIFA rum bonds under the Trust Agreement's no-action clause, and (ii) whether Ambac has any property or security interest in the Rum Tax Remittances retained by the Commonwealth (or whether it has a claim only against PRIFA, which is not a Title III debtor).[3] Accordingly, because resolving those issues could result in denial of this motion, the Court should hold it in abeyance or deny it without prejudice to potential refiling after Judge Swain decides whether Ambac has standing under the Trust Agreement and any direct interest in the retained Rum Tax Remittances, which is the true basis for Ambac's Rule 2004 discovery requests.

Even if Ambac were found to have standing, its Rule 2004 Motion should still be denied because Rule 2004 cannot be used as a tool to advance related litigation in other forums against

---

[3]   *See Order Regarding Argument and Discovery in Connection with Ambac Assurance Corporation's Motion Concerning Application of the Automatic Stay* [ECF No. 7420] (the "Stay Motion Discovery Order"). The same order provides that "[a]ny automatic stay motion-related discovery will be addressed in connection with the Court's decision on the legal issues argued on that stay motion. *Id.* at 2.

the same discovery targets.  Ambac has filed three lawsuits against the Commonwealth and others challenging the Commonwealth's decision, in response to Puerto Rico's fiscal emergencies, to retain the federal Rum Tax Remittances from the U.S. government.[4]  All three lawsuits contend that the Commonwealth may only use those retained Rum Tax Remittances to pay its public debt, but has instead held them or used them for other purposes, rendering the retention illegal.  All three lawsuits are stayed, precluding discovery.  So, Ambac has resorted to Rule 2004 to take the discovery it cannot take in its other actions.  Its document requests align squarely with core issues in those lawsuits.  And Ambac's timing removes all doubt that Ambac is seeking to advance a litigation objective: it served the document requests on the same day it moved to lift the automatic stay to resume its litigation against the U.S. Department of Treasury and file a new action against the Commonwealth.  If Ambac is to receive this discovery, it must be through its litigation under the Federal Rules of Civil Procedure, not through the "back door"[5] of Rule 2004.  The distinction is important.  Rule 2004 does not even require notice to entities other than the entity from whom discovery is sought.  Additionally, the scope of discovery in Rule 2004 is wholly different than the permissible scope under the Fed. R. Civ. P. 26-30.

Nearly all the discovery Ambac seeks reaches beyond "the financial condition of the debtor" and what is necessary for Ambac's claim against the Commonwealth.  In a meet-and-confer with Ambac, the Government Parties offered to produce the requested documents sufficient to show the flow of Rum Tax Remittances to and from the Commonwealth.  The other two categories of Ambac's requests, however, stray far from the Commonwealth's financial condition

---

[4]   *Assured Guaranty Corp. v. Garcia Padilla*, No. 16-cv-1037 (D.P.R. Jan. 7, 2016); *Ambac Assurance Corp. v. U.S. Dep't of Treasury*, No. 17-cv-809 (D.D.C. May 2, 2017); *Ambac Assurance Corp. v. Commonwealth of P.R.*, No. 17-cv-1568 (D.P.R. May 2, 2017).

[5]   *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 30 (Bankr. N.D.N.Y. 1996) (denying Rule 2004 motion).

and Ambac's claim.  Rule 2004 has limits, and does not require production of all the documents Ambac seeks about Puerto Rico's domestic rum industry, such as (i) documents about historical rum production and shipments to the United States, (ii) all documents and emails since 2008 concerning producers' rum-tax lobbying efforts in Puerto Rico, (iii) all documents and emails since 2008 about any proposals or agreements concerning any Commonwealth tax-incentive payments, and (iv) documents showing rum companies' corporate-tax payments and number of Puerto Rico employees.  Similarly attenuated are Ambac's requests for documents about the rum tax generally, such as all documents and emails since 2010 among the Government Parties "relating to the Rum Tax" in any way.  All of Ambac's requests beyond those seeking documents showing the flow of federal Rum Tax Remittances to the Commonwealth should be denied.[6]  Moreover, Ambac's discovery requests are inherently overbroad and burdensome, as they seek "all" documents from Respondents, and in some cases third parties, on numerous matters that cover an excessively long period of time or have no temporal limit whatsoever.

Alternatively, Ambac's motion should be held in abeyance and addressed in connection with the resolution of Ambac's claim against the Commonwealth, if the Court determines Ambac has such a direct claim relating to the PRIFA rum bonds.  Ambac can seek discovery of any factual issues regarding its claim at that time, which may supplement, sharpen, or eliminate Ambac's Rule 2004 requests.  This sequence would allow the parties and the Court to address a single set of Ambac requests more efficiently than deciding the current Rule 2004 discovery requests now, followed by another set of discovery requests concerning Ambac's claim later.

---

[6]  The FOMB reserves all rights to object to Ambac's discovery requests to the extent such requests implicate privileged materials, including but not limited to all documents protected by the deliberative process privilege, the attorney-client privilege, and the work product doctrine.

## BACKGROUND

**The PRIFA Bonds and Federal Rum Tax Remittances**

PRIFA, a public corporation and Commonwealth instrumentality established by statute in June 1988, issued bonds under an October 1, 1988 Trust Agreement (the "Trust Agreement").[7] Under that Agreement, PRIFA was to pay principal and interest on the bonds "upon the receipt of Special Tax Revenues or other moneys deposited to the credit of the Puerto Rico Infrastructure Fund."  Trust Agreement § 401. Those "Special Tax Revenues" are the "federal excise taxes on rum and other articles produced in Puerto Rico and sold in the United States that are collected by the United States government and remitted to the Puerto Rico Treasury Department."  *Id.* § 101.

PRIFA could receive up to $117 million of Rum Tax Remittances from the Puerto Rico Treasury Department each fiscal year, to be deposited into the Puerto Rico Infrastructure Fund.  3 L.P.R.A. § 1914.  The Commonwealth, acting through its then-Treasury Secretary and other officials, entered a Lockbox Agreement with Citibank on May 5, 2015 (attached hereto as **Exhibit A**"), which established an account (the "Lockbox") into which the U.S. government would deposit the Rum Tax Remittances.  (Ex. A § 3(a).)  The Lockbox Agreement provides the order of priority in which Citibank would disburse the Rum Tax Remittances in the account. Of the approximately $430 million in Rum Taxes remitted to the Lockbox each fiscal year, the first $117 million of Rum Taxes in the Lockbox are transferred to the Commonwealth Treasury and deposited into the Treasury Single Account ("TSA"), the Commonwealth's main operational account and commingled with other Governmental public funds. (Ex. A § 5(a).)  After the first $117 million was disbursed, Citibank would disburse additional designated amounts of Rum Tax Remittances to (i) the Treasury Secretary "for deposit to the credit of" the Puerto Rico Science & Technology

---

[7] A copy of the Trust Agreement is attached as Ex. A to ECF No. 7827.

Trust, and (ii) the Puerto Rico Conservation Trust Fund.  (Ex. A § 5(b) & (e)).  Approximately 46% of the remaining Rum Tax Remittances in the Lockbox that were not transferred to the TSA are disbursed by Citibank directly to a trustee (Banco Popular) on behalf of Puerto Rico rum producers that had entered agreements with the Commonwealth to "maintain[], promot[e] and grow[] the production of rum in Puerto Rico," and are never routed through the TSA.  (Ex. A at 1, § 5(f).).

**The Commonwealth's Retention of Rum Tax Remittances**

Before this Title III case was commenced, then-Governor García Padilla issued an executive order in November 2015 directing the Treasury Secretary to retain Rum Tax Remittances that would otherwise have been disbursed to PRIFA.  That executive order prompted Ambac, which claims to hold or insure approximately $529 million of PRIFA bonds (Rule 2004 Mot. ¶ 13), to file the first of three lawsuits challenging the Commonwealth's retention of Rum Tax Remittances as unconstitutional.  *See Assured Guaranty Corp. v. Garcia Padilla*, No. 16-cv-1037 (D.P.R. Jan. 7, 2016), Compl. ¶¶ 95–100.  Since the Commonwealth's May 3, 2017 Title III petition, the automatic stay has precluded any party from seeking to force the Commonwealth to transfer or stop retaining Rum Tax Remittances.

Fiscal plans for the Commonwealth and Commonwealth budgets from April 2017 through 2019 were certified by the FOMB, pursuant to its federal statutory powers under PROMESA. They all require continued retention of the Rum Tax Remittances.  For instance, the latest fiscal plan, certified on May 9, 2019 ("May 2019 Fiscal Plan"), requires the Commonwealth to retain the Rum Tax Remittances to meet cash flow projections and fund required expenditures.  May 2019 Fiscal Plan at 27 and 148.  Moreover, on June 30, 2018, the Oversight Board certified a budget for the Commonwealth for the current Fiscal Year 2018-2019 (the "Certified FY19 Budget"), predicated on the use of Rum Tax Remittances.

6

**Ambac's Additional Lawsuits Challenging the Retention of Rum Tax Remittances**

Ambac has filed two other lawsuits challenging the Commonwealth's power to retain the Rum Tax Remittances as unconstitutional and illegal under federal and Puerto Rico law. The first lawsuit, filed in the U.S. District Court for the District of Columbia against the U.S. Department of the Treasury and Treasury Secretary Steven Mnuchin, alleges that the Commonwealth "failed to return" retained Rum Tax Remittances to PRIFA and did not use those Remittances to pay general-obligation debt, as allegedly required. *See Ambac Assurance Corp. v. U.S. Dep't of Treasury*, No. 17-cv-809 (D.D.C. May 2, 2017), Compl. ¶¶ 48–50 (the "U.S. Treasury Litigation"). Ambac also sued the Commonwealth, Governor Rosselló Nevares, numerous Commonwealth officials, and the FOMB and its members, similarly alleging that the Commonwealth's retention of Rum Tax Remittances is unconstitutional and illegal because the Commonwealth has not used them to pay general-obligation debt and has not exhausted its other available resources. *See Ambac Assurance Corp. v. Commonwealth of P.R.*, No. 17-cv-1568 (D.P.R. May 2, 2017), Compl. ¶¶ 67, 73 67–69, 72–73, 86, 110, 120–21.

The FOMB notified the courts presiding over Ambac's three lawsuits of the Commonwealth's May 3, 2017 Title III filing and the existence of the automatic stay. Ambac did not file any responsive notices. All three courts issued orders providing Ambac's litigations in May 2017 were automatically stayed under the Bankruptcy Code's automatic-stay provisions, which PROMESA incorporates. *See Ambac Assurance Corp. v. U.S. Dep't of Treasury*, No. 17-cv-809 (D.D.C. May 24 & 25, 2017) [ECF Nos. 8 & 9]; *Ambac Assurance Corp. v. Commonwealth of P.R.*, No. 17-cv-1568 (D.P.R. May 15 & 17, 2017) [ECF Nos. 6 & 7]; *Assured Guaranty Corp. v. Garcia Padilla*, No. 16-cv-1037 (D.P.R. May 16 & 17, 2017) [ECF Nos. 81 & 82] (collectively, the "Stayed Litigations"). Ambac did not seek reconsideration of or appeal those orders, and the respective time periods to do so have expired.

**Ambac's Lift-Stay Motion to Pursue the Stayed Litigations**

Two years later, on May 30, 2019, Ambac moved for an order declaring that the automatic stay does not apply to the Stayed Litigations and/or modifying the automatic stay to allow Ambac to proceed with the U.S. Treasury Litigation and to file another action against the Commonwealth challenging the retention of Rum Tax Remittances (the "Lift-Stay Motion").  [ECF No. 7176 ¶¶ 10–11.]  On the same day, Ambac emailed 26 document requests to the Government Parties' counsel (attached hereto as **Exhibit B**).  While Ambac claimed to serve the requests under Rule 2004, the requests targeted subjects and issues implicated in Ambac's three Stayed Litigations.[8] The requests fall into three categories: (i) documents related to the flow of Rum Tax Remittances between the U.S. Government, the Commonwealth, and PRIFA (Request Nos. 1, 2, and 24; collectively, the "Flow of Funds Requests"); (ii) documents and emails from the Commonwealth, PRIFA, or the Government Parties about the rum tax (or aspects thereof) that are unrelated to the flow of funds (Request Nos. 3, 5–7, 17, and 25–26; collectively, the "General Rum-Tax Requests"); and (iii) documents relating to Puerto Rico's domestic rum producers, including corporate taxes they paid and incentive payments they received from the Commonwealth (Request Nos. 8–16 and 18–23; collectively, the "Rum-Company Requests").

In meeting and conferring with Ambac on June 4, 2019, the Government Parties offered to conduct a reasonable search for documents responsive to the Flow of Funds Requests, but questioned the relevance under Rule 2004 of documents and emails about the rum tax generally, and documents about Puerto Rico's domestic rum producers that do not show the debtor's financial

---

[8]   Notably, Ambac admits that there are at least some categories of documents requested in the Motion that overlap with the claims it wants to pursue if granted stay relief.  *See* Motion at  fn. 2 and fn. 3.  The FOMB submits that all documents Ambac requests are related to the Lift-Stay Motion and Ambac's position as a PRIFA bondholder/bond insurer.

condition and are not necessary to establish Ambac's bankruptcy claim. Ambac did not respond to the Government Parties' offer, instead filing this motion on June 7, 2019.

## ARGUMENT

I.  **AMBAC'S MOTION SHOULD BE DENIED WITHOUT PREJUDICE OR HELD IN ABEYANCE PENDING THE DECISION ON THRESHOLD STANDING ISSUES RAISED IN THE LIFT-STAY MOTION.**

Only a "party in interest" has standing to seek discovery under Rule 2004. *See* Fed. R. Bankr. P. 2004(a). In connection with Ambac's Lift-Stay Motion, Judge Swain has requested briefing on Ambac's standing. A ruling thereon could determine whether Ambac is a "party in interest" that can seek Rule 2004 discovery from the Commonwealth with respect to the PRIFA rum bonds. (ECF No. 7176; ECF No. 7420 (scheduling order).) *See In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (party-in-interest standing determined "on a case by case basis to see if this party has a sufficient stake in the proceeding which would require representation").

*First*, Ambac has no property or security interest in the Commonwealth's Rum Tax Remittances. (ECF No. 7829 at 1; ECF No. 7827 at 31-37). Any claim to those funds from the Commonwealth belongs to PRIFA. Pursuant to the Trust Agreement, the bondholders only have a security interest in funds after they are received by PRIFA and transferred to a sinking fund held by the bond trustee. Trust Agreement § 601. When PRIFA does not receive funds and cannot make deposits into the sinking fund, Ambac's claim is against PRIFA, not the Commonwealth. Ambac has no direct relationship with the Commonwealth and is only a creditor of a Commonwealth creditor. Ambac, as merely a creditor of the Commonwealth's creditor (PRIFA), therefore lacks standing to bring a Rule 2004 motion against the Commonwealth. *See In re. Fin. Oversight & Mgmt. Bd. for P.R.*, 301 F. Supp. 3d 306, 312–13 (D.P.R. 2017) (holding creditors of a creditor lack prudential standing, which also precludes party-in-interest standing).

9

*Second*, pursuant to the Trust Agreement, only the trustee, not Ambac, can take any legal action regarding the PRIFA bonds under the Trust Agreement's no-action clause.  (ECF No. 7827 at 21; ECF No. 7829 at 2.)  In other words, if anyone has standing to bring this Rule 2004 Motion, it would be the trustee, not Ambac.

*Third*, Ambac is collaterally estopped from arguing the automatic stay does not apply to the Stayed Actions, having failed to move to reconsider or appeal the District Courts' respective decisions finding the stay applied.   ECF No. 7827 at 27.

This Court need not decide Ambac's standing now.  Rather, consistent with its June 13, 2019 order, it should exercise its discretion to hold Ambac's Rule 2004 motion in abeyance or deny it without prejudice to potential refiling after Judge Swain's decision on the Lift-Stay Motion, which could defeat Ambac's Rule 2004 standing.[9]  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d 66, 73 (D.P.R. 2018) (Rule 2004 discovery is "at the discretion of the Court").

## II.    AMBAC HAS NOT SHOWN GOOD CAUSE FOR RULE 2004 DISCOVERY.

Rule 2004 allows discovery into "the liabilities and financial condition of the debtor."  Fed. R. Bankr. P. 2004(b).  Although the rule's scope is broad, the movant must first establish good cause for the discovery it seeks.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d 66, 73 (D.P.R. 2018).   That showing requires the movant to demonstrate "that the requested documents are *necessary* to establish the movant's claim or that denial of production would cause undue hardship or injustice."  *Id.* (emphasis added).  *First*, Ambac cannot make that showing because Ambac has no claim against the Commonwealth for the reasons described above.  *Second*, the Rule 2004 Motion fails because Ambac seeks discovery not to establish its claim, but to

---

[9]   In fact, the Rule 2004 Motion conflicts with the Stay Motion Discovery Order, where the Court held that any discovery would be addressed after it considers the threshold questions of standing and secured status.  Thus, holding the Rule 2004 Motion in abeyance is consistent with the Court previous holdings.

advance its three other pending cases challenging the Commonwealth's Rum Tax Remittances in which Ambac cannot take discovery because the cases have been stayed, and to advance Ambac's pending Lift-Stay Motion.  Nor are Ambac's overbroad requests for documents about the rum tax and Puerto Rico rum industry—on far-afield topics such as rum companies' historical corporate-tax payments and rum-tax lobbying efforts—relevant under Rule 2004 to show the Commonwealth's financial condition or to establish Ambac's proof of claim against the Commonwealth.  *See In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) ("A party seeking to conduct a Rule 2004 examination typically shows good cause by establishing that the proposed examination 'is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice.').[10]

### A.   Ambac's Rule 2004 Motion Seeks Discovery That Relates to Ambac's Stayed Litigations Challenging the Retention of Rum Tax Remittances.

A movant cannot use Rule 2004 to get discovery that would benefit the movant's other pending litigation outside bankruptcy against the Rule 2004 discovery targets.  *See, e.g.*, *In re Orion Healthcorp, Inc.*, 596 B.R. 228, 236 (Bankr. E.D.N.Y. 2019) (denying Rule 2004 discovery because "party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee"); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016) ("Rule 2004 was not intended to provide private litigants . . . with 'a strategic advantage in fishing for potential private litigation.'") (citing *In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass. 1981)); *In re Snyder*, 52 F.3d 1067, *2 (5th Cir. 1995) ("[U]se of Rule 2004 discovery to circumvent discovery limitations . . . is an abuse of Rule 2004.").  After filing litigation, creditors must rely on the rules

---

[10]   Ambac's additional requests for three depositions and the authority to issue subpoenas and interrogatories concerning the subjects of its document requests (Rule 2004 Mot. ¶ 26(b)–(f)) should be denied for the same reasons described *infra*.

governing that litigation "for discovery as to both entities affected by the proceeding and issues addressed in the proceeding." *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996) ("Discovery of evidence *related* to the pending [adversary] proceeding must be accomplished in accord with more restrictive provisions of Fed. R. Bankr. P."). This rule applies whether the related litigation is pending in the bankruptcy court or elsewhere. *See, e.g.*, *In re Enron Corp.*, 281 B.R. 836, 837 (Bankr. S.D.N.Y. 2002) (related litigation in Texas federal court); *In re Snyder*, 52 F.3d 1067 at *1 (related litigation in state court).

Ambac's Rule 2004 discovery requests relate directly to its three Stayed Litigations challenging the Commonwealth's retention of Rum Tax Remittances over which Ambac now claims a lien. In the Stayed Litigations, Ambac contends that the Commonwealth can use Rum Tax Remittances only to pay public debt, but has instead held them or used them for other purposes, rendering the retention illegal. *See Ambac Assurance Corp. v. U.S. Dep't of Treasury*, No. 17-cv-809 (D.D.C. May 2, 2017), Compl. ¶ 48 ("The Commonwealth failed to use the clawed back funds to pay [general obligation] debt, in violation [of] PRIFA's statutory clawback protections."); *Ambac Assurance Corp. v. Commonwealth of P.R.*, No. 17-cv-1568 (D.P.R. May 2, 2017), Compl. ¶¶ 67, 73 (alleging that "laws under which the Revenue Bonds were issued" permit retention "to provide an additional source of payment *solely* for [general obligation] debt"); *id.* ¶ 85 (alleging that the Commonwealth "did not use, but nevertheless retained—and continues to retain" Rum Tax Remittances); *Assured Guaranty Corp. v. Garcia Padilla*, No. 16-cv-1037 (D.P.R. Jan. 7, 2016), Compl. ¶ 64(d) (quoting statute permitting retained Rum Tax Remittances' use "for the payment of interest and for the amortization of the public debt of the Commonwealth").

Ambac now summarizes its Rule 2004 discovery requests as seeking the amount and location of the retained Rum Tax Remittances and "the uses to which it has been put," including alleged payments to "private rum producers based in Puerto Rico." (Rule 2004 Mot. ¶¶ 4–5.) Those topics relate directly to Ambac's litigation claims that the retention is improper because the retained Rum Tax Remittances have not been used to pay public debt, but for other purposes. Ambac admits the direct link: in its Lift-Stay Motion, Ambac seeks permission to proceed with the Treasury Litigation because the Commonwealth has allegedly used the Rum Tax Remittances "to fund general Commonwealth expenses, including making payments to rum producers"— precisely the subject of the Rule 2004 discovery that Ambac seeks here. (Lift-Stay Mot. [ECF No. 7176] ¶ 25.) This connection distinguishes this motion from Ambac and others' Rule 2004 motion in late 2017. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-03823 (D.P.R. Dec. 15, 2017) [ECF No. 2033], Order at 3 (finding Rule 2004 discovery requests "distinguishable from the subjects of the current adversary proceedings"). Ambac is therefore using Rule 2004 to seek discovery for the Stayed Litigations that it would be barred from seeking directly in the Stayed Litigations. *See In re Snyder*, 52 F.3d at *2 ("[U]se of Rule 2004 discovery to circumvent discovery limitations . . . is an abuse of Rule 2004.").

Ambac's argument that these are proper Rule 2004 topics because they relate to the Commonwealth's financial condition is beside the point. (Rule 2004 Mot. ¶ 6.) As described above, Ambac is pursuing these requests as a creditor of PRIFA with respect to the PRIFA rum bonds, which gives Ambac no right to seek Rule 2004 discovery into the Commonwealth's financial condition or, even farther afield, the Commonwealth's relationships with Puerto Rico's domestic rum producers. In any event, Ambac's Rule 2004 requests cannot be separated from the Stayed Litigations. Ambac's Rule 2004 Motion should therefore be denied to avoid creating a

"back door" through which Ambac could avoid discovery limitations in its related pending litigation. *See In re Enron Corp.*, 281 B.R. at 841–42 (denying Rule 2004 discovery and observing that when "parties and subject matter of the Rule 2004 exam would be inseparable from the" pending litigation, Rule 2004 creates "an unavoidable and unintentional back door through which" movants can avoid discovery limitations "by using Rule 2004"); *In re Bennett Funding*, 203 B.R. at 29–30 (denying Rule 2004 discovery because "it is difficult at this point, if not impossible, to determine whether and to what extent information gleaned from a Fed. R. Bankr. P. 2004 examination . . . will not be related to the parties and subject matter covered by the Amended Complaint. In fact, it appears highly unlikely that even a carefully crafted examination . . . could not avoid delving into issues regarding the other defendants and subject matter covered in the Amended Complaint").

And the timing of Ambac's Rule 2004 discovery requests removes any doubt that Ambac is seeking to advance the Stayed Litigations and its claims against PRIFA rather than a legitimate bankruptcy agenda. It served its document requests on the Government Parties on May 30, 2019— *the same day* it filed its Lift-Stay Motion seeking permission to proceed with the Treasury Litigation and file a new action against the Commonwealth. *See In re Enron*, 281 B.R. at 842 (observing that although movants claimed to seek discovery related to their "bankruptcy agenda," the "timing of the [movants'] explanation . . . undermines the [movants'] contentions thereby casting doubt on their motivations").

### B.  Ambac's Requests for Documents That Are Unrelated to the Flow of Rum Tax Remittances Are Not Necessary To Establish Ambac's PRIFA Bond Claim.

As noted above, Rule 2004's good-cause requirement obligates Ambac to demonstrate "that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." *See In re Fin. Oversight & Mgmt. Bd. for*

*P.R.*, 295 F. Supp. 3d at 73.  Ambac's document requests fall into three categories, with each subsequent category growing in over-breadth and declining in relevance: (i) the Flow of Funds Requests for documents related to the flow of Rum Tax Remittances between the U.S. Government, the Commonwealth, and PRIFA (Request Nos. 1, 2, and 24); (ii) the General Rum-Tax Requests for documents and emails from the Commonwealth, PRIFA, or the Government Parties about the rum tax that do not show any flow of funds (Request Nos. 3, 5–7, 17, and 25–26); and (iii) the Rum-Company Requests for documents relating to Puerto Rico's domestic rum producers (Request Nos. 8–16 and 18–23).  The Government Parties offered to conduct a reasonable search for documents responsive to the Flow of Funds Requests.  But documents responsive to the General Rum-Tax Requests and Rum-Company Requests would not reveal any additional information about the Commonwealth's financial condition and are unnecessary to establish Ambac's claim (and for that reason, denying the requests would not cause any hardship).

> 1.     *The Rum-Company Requests (Request Nos. 8–16 and 18–23)*

In contrast to their direct link to Ambac's litigation claims, the Rum-Company Requests are irrelevant to establish Ambac's proofs of claim against the Commonwealth.  The nature of Ambac's  claims against the Commonwealth, which is the yardstick for measuring the relevance of the discovery that Ambac seeks, is straightforward: Ambac states that it has filed a proof of claim relating to more than $529 million of PRIFA rum bonds that it holds or insures.  (Rule 2004 Mot. ¶ 13.)  Ambac's claim to principal and interest payments on those bonds (or reimbursement of such payments Ambac has made as the bonds' insurer) is allegedly secured by collections of Rum Tax Remittances transmitted by the U.S. Treasury to the Commonwealth, which upon deposit to PRIFA and then to a sinking fund, funded payments on the bonds.  (Lift-Stay Mot. [ECF No. 7176] ¶ 7.)  However, Ambac has no direct claim to the Commonwealth's retained Rum Tax

Remittances.  Any such claim would belong to PRIFA; Ambac's bond claim lies only against

PRIFA, and therefore these requests are improper.  Moreover, under section 601 of the Trust

Agreement, PRIFA bondholders such as Ambac waive their right to assert a claim against the

Commonwealth on account of the bonds.[11]

Although Ambac has no direct claim against the Commonwealth regarding the PRIFA rum

bonds, the Government Parties still offered to perform a reasonable search for documents

responsive to the Flow of Funds Requests that show the flow of Rum Tax Remittances among the

U.S. Government, the Commonwealth, and PRIFA.  To be clear, however, Ambac does not have

a right under Rule 2004 to any of this.  Ambac owns bonds payable by PRIFA that expressly

disavow Commonwealth liability.  Ambac's pending litigation to establish Commonwealth

liability where none exists is the only litigation in which Ambac can take discovery.

Ambac's current requests (which the Government Parties nevertheless proposed to

accommodate) call for documents sufficient to show (i) transfers of rum-tax revenue from the U.S.

Treasury to the Commonwealth since July 1, 2015 (Request No. 1); (ii) the total amount and

account location of rum-tax revenue currently held by the Commonwealth or its instrumentalities

(Request No. 2); and (iii) the total amount of money held by the Puerto Rico Infrastructure Fund

(Request No. 24), where Rum Tax Remittances are deposited under the Trust Agreement (Ex. B

at 1).[12]  These are the only requests for information about potential sources for PRIFA bond

---

[11] Trust Agreement § 601 ("Nothing in the Bonds or in this Agreement shall be deemed to constitute the Bonds a debt
or obligation of the Commonwealth of Puerto Rico or any of its political subdivisions, and neither the
Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal
of or the interest on the Bonds.")

[12]  The Flow of Funds Requests (Nos. 1, 2, and 24) either encompass or supersede Ambac's requests for "direction
letters to or from any bank and/or the Secretary of the Treasury regarding the flow of" Rum Tax Remittances
(Request No. 4) and "appropriation requests made by PRIFA for reimbursement" of retained Rum Tax Remittances
(Request No. 7).  The Flow of Funds Requests call for documents sufficient to show the actual flow of Rum Tax
Remittances, as opposed to the descriptions or requests concerning the flow of funds contained in the "direction
letters" and "appropriation requests" demanded in Request Nos. 4 and 7.  In other words, any Rum Tax

payments.[13]

By contrast, Ambac's Rum-Company Requests demand granular and irrelevant information about Puerto Rico's domestic rum producers that has no bearing on Ambac's proof of claim. Ambac demands, for example, (i) documents sufficient to show Rum Companies' historical rum production in Puerto Rico and the portion shipped to the United States (Request Nos. 15–16); (ii) *all* documents and emails since 2008 concerning Rum Companies' lobbying efforts relating to the rum tax (Request No. 12); (iii) *all* documents and emails since 2008 about any proposals or agreements concerning any tax-incentive payments or other benefits to the Rum Companies (Request Nos. 8–10, 13–14, 23); (iv) documents sufficient to show the Rum Companies' corporate taxes paid and the number of Puerto Rico residents they have employed since 2008 (Request Nos. 20–21); and (v) all analysis of the U.S. Virgin Islands' rum production and its impact on Puerto Rico's rum production (Request No. 19). None of these requests relate to the "financial condition of the debtor" or could help Ambac establish its (non-existent) claim against the Commonwealth; all of them are intended either to advance the Stayed Litigations or simply to abuse and harass a party against which Ambac has no claim and of which Ambac is not a creditor.[14]  *See, e.g.*, *In re*

---

Remittances that were actually transferred pursuant to the requested "direction letters" or "appropriation requests" will be reflected in the documents responsive to the Flow of Funds Requests, for which the Government Parties have offered to conduct a reasonable search.

[13]   These documents would also provide the flow-of-funds information that Ambac seeks through the interrogatories it has asked for authority to issue. (Rule 2004 Mot. Ex. A, Attachment 2.) Leave to issue interrogatories calling for the same information should therefore be denied. *See* Fed. R. Bankr. P. 7033(d)(2) (interrogatories may be answered by allowing the propounding party to review documents containing requested information).

[14]   Indeed, Ambac acknowledges in its Lift-Stay Motion (at ¶ 68) that the Rum-Company Requests would not supply it with information relevant to assessing the "financial condition of the Commonwealth" because these factors "cannot be controlled or predicted by even the Commonwealth" *Id.* ("[T]he amount of Rum Taxes that the Commonwealth (and PRIFA) ultimately will receive depends on a variety of factors that cannot be controlled or predicted even by the Commonwealth, such as (i) determinations made by the U.S. government as to the level of customs duties to impose on rum imports and the formula for allocating such duties to the Commonwealth, (ii) the amount of rum produced in Puerto Rico in the future, and (iii) the amount of Puerto Rico-origin rum that is exported to the mainland United States for consumption there.") *See* Lift-Stay Motion ¶ 68.

*Orion Healthcorp, Inc.*, 596 B.R. at 235 (holding that Rule 2004 requests "may not be used for the purposes of abuse or harassment, and cannot stray into matters not relevant to the basic inquiry").[15]

Ambac's argument that the documents are relevant because the Rum Companies are being paid from Rum Tax Remittances over which Ambac asserts it has a lien is factually incorrect. (Rule 2004 Mot. ¶¶ 38, 42.)  The payment of the Commonwealth's tax-incentive payments to Rum Companies to maintain and promote rum production in Puerto Rico is governed by the May 5, 2015 Lockbox Agreement between the Commonwealth, Citibank, and Banco Popular as trustee for the Rum Companies.  (Ex. A at 1.)  The Commonwealth maintains an account at Citibank for the U.S. Government's deposit of Rum Tax Remittances.  (Ex. A §§ 2(a) & 3(a).)  Citibank disbursed the first $117 million of annual rum-tax-revenue deposits—the "maximum" amount over which Ambac contends it has a lien (Rule 2004 Mot. ¶ 2)—to the Commonwealth "for deposit to the credit of PRIFA."  (Ex. A § 5(a).)  Only after two additional disbursements (for the Science & Technology Trust and the Conservation Trust) did Citibank issue disbursements representing the agreed tax-incentive payments to the Rum Companies.  (Ex. A § 5(b)–(f).)  In other words, the Commonwealth set aside 100% of Ambac's so-called Pledged Rum Taxes (Rule 2004 Mot. ¶ 2) before making any tax-incentive payments to Puerto Rico's domestic Rum Companies.  This order of payment, setting aside the full amount over which Ambac claims a lien coupled with the fact that amounts paid to the Rum Companies never passes through the TSA, renders the overbroad and unduly burdensome Rum-Company Requests also completely superfluous.  The requested

---

[15]  Moreover, the information requested by Ambac encompasses extraneous factors (such as the on-island production of rum, rum producers' lobbying efforts, the number of Puerto Rico residents employed by rum companies, and the production of rum in the U.S. Virgin Islands) that are unrelated to creditors' treatment under a plan of adjustment that will be formulated by the Oversight Board.

discovery is irrelevant to Ambac's claim.[16]

    2.    *The General Rum-Tax Requests (Request Nos. 3, 5–6, 17, 25–26)*

Equally irrelevant are the documents and emails that Ambac has demanded about the rum

tax generally, beyond the Flow of Funds Requests.  The overbreadth of this category is exemplified

by (i) Request No. 5, which demands all documents and emails since September 1, 2010 "between

the Commonwealth and PRIFA relating to the Rum Tax," regardless of their relationship to the

PRIFA bonds or Ambac's claim; and (ii) Request No. 26, which demands all documents and emails

between the Government Parties "concerning the Rum Taxes," again without any attempt to tailor

the request to information related to the PRIFA bonds or Ambac's claim.  Ambac's remaining

requests are equally overbroad, such as Ambac's demands for (i) all studies or analysis of the Rum

Tax (Request No. 17); (ii) all reports provided by PRIFA to the Legislature or Governor under the

Enabling Act, including those unrelated to rum taxes (Request No. 6); and (iii) all studies or

analysis relating to "the decision not to file for Title III protection for PRIFA," which calls for

information that is not only unrelated to "the financial condition of the debtor" under Rule 2004,

but also protected from disclosure under, at a minimum, the attorney-client and deliberative-

process privileges.  These requests "stray into matters not relevant to the basic inquiry" concerning

---

[16] Moreover, to the extent Ambac seeks to use such documents to establish "cause" to lift the stay due to diminution in the value of their purported collateral, such documents are not relevant to the applicable legal inquiry.  A secured claimholder (which Ambac is not) may only seek adequate protection for the decrease in its collateral value attributable to the imposition of the automatic stay or the debtor's use, sale, or lease of the collateral, but the information Ambac seeks relates to "factors that cannot be controlled or predicted by the Commonwealth." *Matter of Cont'l Airlines, Inc.*, 154 B.R. 176, 180 (Bankr. D. Del. 1993) (citing *United Savings v. Timbers of Inwood Forest,* 484 U.S. 365 (1988) ("Read together, sections 361(1) and 362(d)(1) provide that a party in interest shall be granted adequate protection *when the continuation of the automatic stay causes* that party to suffer a decrease in the value of its property interest. In other words, a party can be granted relief from the stay if his interest is not adequately protected; if that request for relief from the stay is not granted, and the value of the collateral is declining, adequate protection may be required.") (emphasis in original);  *In re S. Vill., Inc.*, 25 B.R. 987, 989 (Bankr. D. Utah 1982) ("Adequate protection, illustrated in 11 U.S.C. Section 361, is protection of an 'interest in property' from any decrease in 'value' *attributable to the stay*.") (emphasis added); *In re Holly's, Inc.*, 140 B.R. 643, 696 (Bankr. W.D. Mich. 1992) ("[Mortgagee] is entitled to be protected or compensated with regard to any diminution of its property interest *occasioned by the automatic stay*.") (emphasis added).

the Commonwealth's financial condition and Ambac's claim, and should therefore be denied. *See,*

*e.g.*, *In re Orion Healthcorp, Inc.*, 596 B.R. at 235.

## III.    AMBAC'S MOTION SHOULD BE DECIDED IN CONNECTION WITH THE RESOLUTION OF AMBAC'S CLAIM (IF ANY).

Alternatively, to promote efficiency and conserve the parties' and the Court's resources,

Ambac's motion should be held in abeyance and decided in connection with the resolution of

Ambac's claim against the Commonwealth, if the Court determines Ambac has a direct claim

against the Commonwealth relating to the PRIFA rum bonds.   As Ambac concedes, the

Commonwealth intends to file a plan of adjustment shortly  (Rule 2004 Mot. ¶ 9.)  At that point,

Ambac, if determined to have a claim against the Commonwealth, may have another opportunity

to seek fact discovery from the Government Parties.  That discovery may well overlap with the

discovery Ambac seeks here.  Conversely, the plan of adjustment could render moot or irrelevant

much of the discovery Ambac seeks here.  Either way, deferring a ruling on this motion will allow

time to focus the issues and subjects on which Ambac seeks discovery, allowing the parties and

the Court to deal with a single set of Ambac requests, as opposed to the serial litigation of Ambac's

Rule 2004 discovery now followed by another set of discovery requests  later.

This modest delay for the sake of efficiency would cause Ambac no undue prejudice and

would be consistent with this Court's February 23, 2018 ruling on Ambac and others' Rule 2004

motion.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d at 72–73.  There, the

Court set a flexible procedure for producing the requested Fiscal Plan Development Materials to

"alleviate[]" the risk of "a lot of unnecessary work since the Movants may not be seeking to use

much of the material." *Id.* at 73.  Here, deciding this motion at the same time as discovery relating

to Ambac's claim (if any) would alleviate the same risk that the Government Parties would have

to collect and produce material that Ambac may never use.

## CONCLUSION

Ambac's motion for Rule 2004 discovery should be denied without prejudice or held in abeyance pending the Court's decisions on threshold standing and security issues raised in the Lift-Stay Motion that could defeat Ambac's Rule 2004 standing.  Even if Ambac were found to have standing, its motion should still be denied because the subjects of Ambac's document requests are inseparable from the subjects of the three Stayed Litigations challenging the Commonwealth's retention of Rum Tax Remittances.  Alternatively, the Rule 2004 Motion should be (i) denied as to Request Nos. 3–23 and 25–26, and denied as moot as to Request Nos. 1, 2, and 24, in view of the Government Parties' offer to perform a reasonable search for documents responsive to those requests; or (ii) decided in connection with the resolution of Ambac's claim, if any, against the Commonwealth based upon Ambac's alleged status as a PRIFA insurer and bondholder.

Dated: July 9, 2019                                          Respectfully submitted,
San Juan, Puerto Rico

                                          /s/ Hermann D. Bauer
                                          Hermann D. Bauer
                                          USDC No. 215205
                                          **O'NEILL & BORGES LLC**
                                          250 Muñoz Rivera Ave., Suite 800
                                          San Juan, PR 00918-1813
                                          Tel: (787) 764-8181
                                          Fax: (787) 753-8944
                                          Email: hermann.bauer@oneillborges.com

                                          Martin J. Bienenstock*
                                          Brian S. Rosen*
                                          Ehud Barak*
                                          Daniel S. Desatnik*
                                          *pro hac vice*
                                          **PROSKAUER ROSE LLP**
                                          Eleven Times Square
                                          New York, NY 10036
                                          Tel: (212) 969-3000
                                          Fax: (212) 969-2900
                                          Email: mbienenstock@proskauer.com
                                          Email: brosen@proskauer.com

21

Email: ddesatnik@proskauer.com

Lary Alan Rappaport*
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:   (310) 557-2900
Fax:   (310) 557-2193
lrappaport@proskauer.com

*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative of the Commonwealth of
Puerto Rico*