UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| AMBAC ASSURANCE CORPORATION,<br><br>　Movant,<br><br>　v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO (as representative of THE COMMONWEALTH OF PUERTO RICO), THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY<br><br>　　　　Respondents. | |

**RESPONDENTS' OMNIBUS OPPOSITION TO AMBAC ASSURANCE CORPORATION'S MOTION TO COMPEL [ECF NO. 7505] AND AMBAC ASSURANCE CORPORATION'S PENSION MOTION [ECF NO. 7507]**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) the Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) the Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) the Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

                                                          **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 4

    I. THE MOTIONS SHOULD BE DENIED BECAUSE AMBAC HAS NOT FULFILLED ITS OBLIGATION TO MEET AND CONFER WITH RESPONDENTS. ................................................................................................ 4

    II. THE MOTION TO COMPEL SHOULD BE DENIED BECAUSE RESPONDENTS HAVE PROVIDED OR AGREED TO PROVIDE AMBAC WITH THE MATERIALS IT SEEKS. ................................................. 6

    III. THE PENSION MOTION SHOULD BE DENIED BECAUSE AMBAC HAS NOT SHOWN GOOD CAUSE FOR RULE 2004 DISCOVERY. ............... 8

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Delfin Grp. USA, LLC v. Baghdasarian*,
  No. 1:16-CV-1594-MHC, 2016 WL 10906484 (N.D. Ga. Nov. 14, 2016) ............................... 6

*Goktepe v. Lawrence*,
  No. CIV. 3:03CV89(MRK), 2004 WL 2516184 (D. Conn. Oct. 14, 2004) ............................. 6

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
  295 F. Supp. 3d 66 (D.P.R. 2018) ........................................................................................... 8

*In re SunEdison*,
  562 B.R 243 (Bankr. S.D.N.Y. 2017) ................................................................................... 10

*Natal Albelo v. Estado Libre Asociado de P.R.*,
  No. 19-00003-LTS (Apr. 18, 2019) ..................................................................................... 5, 6

**Other Authorities**

*Publications & Reports*, AAFAF, http://aafaf.pr.gov/reports.html (last visited July 9,
  2019) .................................................................................................................................. 2, 10

**Rules**

Fed. R. Bankr. P. 2004(b) ............................................................................................................. 8

L.Cv.R. 26(b) ................................................................................................................................ 4

LBR 2004-1(b) .............................................................................................................................. 4

Respondents the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "Board"), and the Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Oversight Board as the Commonwealth's representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[2] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (together, "Respondents"), hereby respond to *Ambac Assurance Corporation's Motion to Compel Compliance with the Court's December 15, 2017 and February 26, 2018 Orders Regarding the Urgent Renewed Joint Motion of the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance Guarantee Corporation for Order Authorizing Rule 2004 Examination* [ECF No. 7505] (the "Motion to Compel") and *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Pension Liabilities* [ECF No. 7507] (the "Pension Motion") (together, the "Motions").

## PRELIMINARY STATEMENT

The Commonwealth's pension liabilities impact all creditors, not just Ambac Assurance Corporation ("Ambac"). The Official Creditors' Committee (the "UCC") is statutorily empowered by Bankruptcy Code section 1103(c)(2) (made applicable by PROMESA § 301(a)) to investigate the Commonwealth's liabilities. Additionally, the Oversight Board has investigated the Commonwealth's pension liabilities by retaining expert actuaries and has provided Ambac their report, model, and assumptions, together with drafts of other materials Ambac requested. Ambac's Motions are not about investigating pension claims. They are about investigating the investigation. Neither the UCC nor the Oversight Board has any incentive to do anything other than procure an

---

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

1

accurate determination of the Commonwealth's pension liabilities. Conversely, Ambac has every incentive to minimize pension liabilities. For the reasons set forth below, Ambac's Motions should be denied.

Over the last two years, Respondents have provided the Commonwealth's creditors, including Ambac, with volumes of information regarding the Commonwealth's overall financial condition, including the bases for each of the seven drafts of the Commonwealth Fiscal Plan the Government submitted to the Oversight Board, as well as the six Commonwealth Fiscal Plans the Oversight Board has certified since March 13, 2017. In response to the seventeen Rule 2004 requests this Court allowed when it granted the Renewed Joint Motion[3] on December 15, 2017 (ECF No. 2033) and the roughly 60 informal requests (with multiple subparts) that followed in connection with that order, Respondents have collected and produced over 97,000 pages of material, in addition to the thousands of documents that Respondents have produced in adversary proceedings and made available to Ambac.

AAFAF also routinely publishes detailed reporting regarding the Commonwealth's financial condition, including pension liabilities. These reports include:

- Weekly cash flow updates for the Commonwealth's main bank account,
- Monthly summaries of account balances for the Commonwealth and its instrumentalities,
- Liquidity reports for the Commonwealth's component units,
- Monthly payroll and attendance reports,
- Monthly reporting from Puerto Rico's Financial Accounting System on recorded general fund expenditures, and
- Monthly reporting on PayGo and Individual Contribution Debt by Entity.[4]

With respect to pensions in particular, Respondents have produced to Ambac, among other

---

[3] Urgent Renewed Joint Motion by the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., the Mutual Fund Group, and National Public Finance Guarantee Corporation for Order Authorizing Rule 2004 Examination (ECF No. 1870).
[4] *Publications & Reports*, AAFAF, http://aafaf.pr.gov/reports.html (last visited July 9, 2019).

things:

- The financial models underlying the Commonwealth Fiscal Plans, which detail the Fiscal Plan's various projections, including pension projections,[5]
- The pension modeling underlying the pension projections in the financial models underlying the Commonwealth Fiscal Plan,[6]
- The actuarial analyses prepared by Milliman, Inc. ("Milliman") upon which the pension modeling was based,[7]
- The census data underlying Milliman's analyses,[8]
- Guidelines, policies, and procedures related to determination of the Pension Systems' pension liabilities,[9]
- Valuation reports reflecting the Pension Systems' updated assets,[10] and
- Data regarding payroll and retirement system contributions.[11]

Now, without even giving Respondents the courtesy of advance notice, let alone satisfying the Court's rules regarding meeting and conferring, Ambac has moved to compel the production of documents it already has, and seeks leave to serve another 32 pension-related requests (the "Pension Requests"). Ambac has also steadfastly refused to engage in even basic meet-and-confer discussions about those requests after filing the Motions, declining to even prioritize the Pension Requests so Respondents may direct their resources toward those materials of highest importance to Ambac.

Accordingly, for the reasons explained more fully below, Respondents request the Court to deny the Motion to Compel and to deny the Pension Motion.

---

[5] CW_RJM2004_0006405, CW_RJM2004_0006419, CW_RJM2004_0012583, CW_RJM2004_0013485, CW_RJM2004_0014835, CW_RJM2004_0015111, CW_RJM2004_0016274, CW_RJM2004_0017208, CW_RJM2004_0020706, CW_RJM2004_0021761, CW_RJM2004_0023261, CW_RJM2004_0085558, CW_RJM2004_0089335, CW_RJM2004_0089369, CW_RJM2004_0096746.
[6] CW_RJM2004_0006617, CW_RJM2004_0033469, CW_RJM2004_0087152.
[7] CW_RJM2004_0018248 to CW_RJM2004_0018487, CW_RJM2004_0032789.
[8] PR-INSURERS2004-0000001 to PR-INSURERS2004-0000005.
[9] *See, e.g.*, PR-INSURERS2004-0000201 (regulation of pensions and granting of benefits of the retirement system for teachers); PR-INSURERS2004-0000702 (general regulations for the granting of pensions, benefits and rights); PR-INSURERS2004-960 (ERS organization, accounting policies, risks and uncertainties, plan description).
[10] PR-INSURERS2004-0000330 (Addendum to June 30, 2015 PRJRS valuation report to reflect updated assets); PR-INSURERS2004-0001002 (Addendum to June 30, 2015 PRGERS valuation report to reflect updated assets).
[11] PR-INSURERS2004-0000285 (payroll report); PR-INSURERS2004-0001243 (detailing yearly contributions and investment return).

**ARGUMENT**

I. **THE MOTIONS SHOULD BE DENIED BECAUSE AMBAC HAS NOT FULFILLED ITS OBLIGATION TO MEET AND CONFER WITH RESPONDENTS.**

The Motion to Compel and Pension Motion should be denied because Ambac has not met and conferred with Respondents before resorting to motion practice. Ambac did not notify Respondents of its intent to file the Motions, much less discuss scheduling or confer to the "greatest extent feasible" in the lead up to filing its Motions.[12]

Ambac does not dispute this. Instead, Ambac claims it satisfied the meet and confer requirement because "Ambac and Respondents have engaged in numerous written and telephonic exchanges over the past two years" and Ambac has not been satisfied with Respondents' responses.[13] This is plainly insufficient. Ambac's most recent letter prior to the filing of the Motions was dated January 14, 2019 (the "January 2019 Letter").[14] Following the January 2019 Letter, Respondents produced (and have continued to produce) responsive documents, including the pension models underlying the Fiscal Plan.[15] In the months following the January 2019 Letter, Respondents received no communications from Ambac, much less any notification that Ambac would be filing the Motions or a discussion of scheduling. A written communication months

---

[12] *See* First Amended Standing Order ("Standing Order") ¶ 2(a), No. 17-mc-00506-JGD (D.P.R. Jan. 31, 2018) (requiring a party, in advance of filing any motion, to meet and confer with the opposing party to the "greatest extent feasible," which must include "an exchange of letters outlining their respective positions . . . and at least one telephonic or in-person discussion of the matters, and must include a discussion on scheduling"); LBR 2004-1(b) ("Consultation Required") (providing that for a Rule 2004 motion, counsel for the moving party must either confer with counsel for the proposed examinee regarding the date, place, and time for the examination, or provide a statement explaining why such conference could not be held); L.Cv.R. 26(b) (requiring that a judge "not consider any discovery motion" that does not certify "that the moving party has made a reasonable and good-faith effort to reach an agreement with opposing counsel on the matters set forth in the motion"); *see also* LBR 1001-1(b) (incorporating the Local Civil Rules for procedural matters not covered by the Local Bankruptcy Rules).
[13] Exhibit A, Letter from Ambac to Respondents at 2 (July 3, 2019) ("July 3 Letter"); *see also* Motion to Compel at 7 ("[P]rior to filing this motion, a series of letters were filed with regard to discovery on pension obligations. . . . [that] have not resulted in satisfactory responses."); Pension Motion ¶ 28 (similar).
[14] ECF No. 7507-1, Exh. E.
[15] *See* Exhibit B, Letter from Respondents to Ambac at 1-2 (June 21, 2019) (the "Motion to Compel Letter") (identifying by Bates number material produced in January 2019, May 2019, and June 2019, subsequent to the January 2019 letter).

4

before filing the Motions is plainly insufficient to satisfy the requirements in this Court's Standing Order. *See* Order on Oversight Board's Motion to Strike at 6, *Natal Albelo v. Estado Libre Asociado de P.R.*, No. 19-00003-LTS (Apr. 18, 2019) ("Plaintiffs argue that . . . 'meet and confer . . . does not have to be in person . . . the conference can also take place through communication in writing, just as in this case.' Plaintiffs' counsel is wrong." (internal quotation marks omitted)).

As this Court has expressly explained, the standing order "requires telephonic or in person meet and confers because they are effective in narrowing the issues before the Court." *Id.* at 6. Indeed, had Ambac met and conferred in advance of filing the Motion to Compel, there is a real chance the issues raised therein could have been resolved. When Respondents received the Motion to Compel, Respondents did not even understand what additional materials Ambac is seeking, given what Respondents had already provided.[16] On June 21, 2019, three days after Ambac filed the Motions, Respondents sent Ambac a meet and confer letter explaining their confusion with respect to the Motion to Compel, and identifying, by Bates number, the responsive materials that had been provided.[17] On June 24, 2019, Ambac requested AAFAF by email for Respondents to re-produce such materials, suggesting that Ambac is not familiar with and has not been consistently reviewing Respondents' productions.[18] A Motion to Compel is not a substitute for Ambac's failure to communicate or to review documents Respondents have already produced.

Similarly, with respect to the Pension Motion, Ambac has been unwilling to engage in discussions, even after filing the motion, through which compromises could be reached. On June 24, 2019, Respondents sent Ambac a letter asking to meet and confer regarding the Pension Requests, and asking Ambac to prioritize its requests so that Respondents could best allocate their

---

[16] *See* Exhibit B, Motion to Compel Letter at 1.
[17] *Id.* at 1-2.
[18] *See* Exhibit C, Email from Ambac to counsel for AAFAF (June 24, 2019).

5

limited resources.[19] On June 26, 2019, counsel for Ambac called counsel for AAFAF requesting that Respondents prioritize production of documents related to the investigation or audit of benefit payments.[20] Respondents began working diligently to locate the requested information. Then, at 4:30 p.m. on July 3, 2019, just five business days later and on the eve of a holiday weekend, Ambac sent a letter refusing to prioritize the Pension Requests at all and refusing to engage in any further meet and confer, an about-face from Ambac's request to prioritize materials concerning audits of benefits in the June 26, 2019 phone call.[21] This about-face has caused confusion.[22]

Given that Ambac has not complied with the Court's Standing Order and the Local Bankruptcy Rules regarding the need to meet and confer, the Court should deny the Motions without prejudice and order the parties to engage in a meaningful meet and confer process. *See* Order on Oversight Board's Motion to Strike at 6, *Natal Albelo v. Estado Libre Asociado de P.R.*, No. 19-00003-LTS (Apr. 18, 2019) (striking urgent motion, in part for failure to meet and confer); *Delfin Grp. USA, LLC v. Baghdasarian*, No. 1:16-CV-1594-MHC, 2016 WL 10906484, at *1 (N.D. Ga. Nov. 14, 2016) (denying motion to compel without prejudice for failing to meet and confer with the opposing party in contravention of the court's standing order); *see also Goktepe v. Lawrence*, No. CIV. 3:03CV89(MRK), 2004 WL 2516184, at *1 (D. Conn. Oct. 14, 2004) ("Failure to comply with the Court's Standing Order is grounds for denial for a discovery motion.").

## II. THE MOTION TO COMPEL SHOULD BE DENIED BECAUSE RESPONDENTS HAVE PROVIDED OR AGREED TO PROVIDE AMBAC WITH THE MATERIALS IT SEEKS.

The Motion to Compel should also be denied, not only because Ambac has failed to meet

---

[19] Exhibit D, Letter from Respondents to Ambac at 2 (June 24, 2019).
[20] Exhibit E, July 8 Letter at 1.
[21] Exhibit A, July 3 Letter at 3-4.
[22] Exhibit E, July 8 Letter at 1-2.

6

and confer as the Standing Order and the Local Bankruptcy Rules require, but also because Respondents have provided (or have agreed to provide) the materials sought. The Motion to Compel concerns an informal request that Ambac, along with other Commonwealth creditors, made to Respondents in a letter dated November 21, 2018 ("Letter Request No. 4"). Letter Request No. 4 seeks "[a]ll models, documents, and actuarial reports supporting the calculation of the pension benefit and administrative cost projections in the October 2018 [Commonwealth] Fiscal Plan." (ECF No. 7505-1, Exh. A, at 3.) Respondents have already provided or agreed to provide this information.

As the Motion to Compel concedes, Respondents have produced the reports by Milliman that were used to prepare the pension projections in the recent iterations of the Fiscal Plan. Motion to Compel ¶ 5.[23] In addition, Respondents have produced the models used to prepare the pension projections in the Fiscal Plan, and the Fiscal Plan models themselves (which include pension projections).[24] The Motion to Compel ignores the production of the pension models and Fiscal Plan models. Respondents' production of the pension models, the Milliman analyses, and the Fiscal Plan models satisfies Ambac's request for the "'models, documents, and actuarial reports supporting the calculation of the pension benefit and administrative cost projections in the October 2018 Fiscal Plan.'" Motion to Compel ¶ 7 (quoting Letter Request No. 4).

The remaining information sought by the Motion to Compel is Ambac's demand for "the data and information considered and relied upon" in the Milliman reports that were provided in response to Letter Request No. 4. Motion to Compel ¶ 6. Respondents understood this demand to refer to the ERS census data that underlie the Milliman reports.[25] On June 21, 2019,

---

[23] *See also* Exhibit B, Motion to Compel Letter at 1.
[24] *Id.* at 1-2.
[25] Exhibit B, Motion to Compel Letter at 2.

Respondents notified Ambac that Ambac had already received the applicable 2015 census data, and identified it by Bates number.[26] Respondents have also agreed to produce the 2016 and 2017 census data.[27]

Ambac's July 3 Letter also references Milliman's assumptions and working papers.[28] Respondents have nothing further to produce with respect to this request. The assumptions underlying Milliman's work are disclosed in Milliman's reports, which have been produced to Ambac.[29] Regarding Milliman's internal working papers, Milliman does not provide those documents to Respondents, and those papers are not within Respondents' possession, custody, or control. Nor are such working papers necessary to evaluate Milliman's work. An outside actuary can evaluate Milliman's work by applying the assumptions and other information disclosed in Milliman's reports to the underlying census data.[30] If Ambac believes more is required, Respondents remain willing to meet and confer with respect to materials within their possession, custody, or control. In short, the parties are not at an impasse and Respondents have provided or agreed to provide the materials sought—Ambac's Motion to Compel should be denied.

### III. THE PENSION MOTION SHOULD BE DENIED BECAUSE AMBAC HAS NOT SHOWN GOOD CAUSE FOR RULE 2004 DISCOVERY.

Rule 2004 allows discovery into "the liabilities and financial condition of the debtor." Fed. R. Bankr. P. 2004(b). "[I]f the debtor challenges the right of the examiner to conduct a Rule 2004 examination, then the examiner has the burden of establishing that good cause exists for taking the examination." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d 66, 73 (D.P.R. 2018) (internal quotation marks omitted).

---

[26] *See id.* at 2.
[27] *See* Exhibit E, July 8 Letter, at 2.
[28] Exhibit A, July 3 Letter at 2.
[29] Exhibit E, July 8 Letter at 2.
[30] *Id.*

8

Ambac claims the expansive Rule 2004 discovery it now seeks is necessary to "understand the financial condition of the Commonwealth." Pension Motion ¶ 4. Over the last two years, Ambac has received a plethora of information, both through Rule 2004 discovery and through periodic publication on official Government websites that allow it to assess the Commonwealth's financial condition. Indeed, Respondents have produced hundreds of documents in response to the Renewed Joint Rule 2004 Motion, and scores of documents in response to Ambac's pension-related requests.[31]

Among other document categories, Respondents' productions have included fiscal plan models, pension models, PayGo models (i.e., models of the new unfunded pension system), budget documents, liquidity plan reports, financial reporting, and Milliman's reports, including the underlying assumptions and data upon which the reports are based.[32] *See, e.g.*, Pension Request Nos. 8 and 9. These materials also support the pension projections in the Commonwealth Fiscal Plan. *See, e.g.*, Pension Request Nos. 10 and 11. Respondents have also produced plan descriptions and guidelines, policies, and procedures related to determination of the Pension Systems' pension liabilities, *see, e.g.*, Pension Request Nos. 1 and 13,[33] valuation reports reflecting the Pension Systems' updated assets, and data regarding payroll and retirement system contributions, *see, e.g.*, Pension Request No. 12.[34]

---

[31] These productions consist of over 700 documents comprising over 97,000 pages; *see also* Preliminary Statement, *supra*.

[32] *See, e.g.*, CW_RJM2004_0002189 (FY 2017 General Fund Budget - ERS and TRS); CW_RJM2004_0006617 (Pensions Paygo Model); CW_RJM2004_0010989 to CW_RJM2004_0011268 (Unpublished TSA and Liquidity Reports); CW_RJM2004_0018248 to CW_RJM2004_0018487, CW_RJM2004_0032789 (Milliman reports); CW_RJM2004_0006617, CW_RJM2004_0033469, CW_RJM2004_0087152 (pension models); CW_RJM2004_0083180 (monthly TSA Cash Flow Report); CW_RJM2004_0083741 (monthly PayGo report); CW_RJM2004_0089335 (Oct. 23, 2018 fiscal plan model with pension updates); PR-INSURERS2004-0000001 to PR-INSURERS2004-0000005 (2015 census data).

[33] *See, e.g.*, PR-INSURERS2004-0000201 (regulation of pensions and granting of benefits of the retirement system for teachers); PR-INSURERS2004-0000702 (general regulations for the granting of pensions, benefits and rights); PR-INSURERS2004-960 (ERS organization, accounting policies, risks and uncertainties, plan description).

[34] PR-INSURERS2004-0000285 (payroll report); PR-INSURERS2004-0001243 (detailing yearly contributions and investment return); PR-INSURERS2004-0000330 (Addendum to June 30, 2015 PRJRS valuation report to reflect

Further, AAFAF publishes a wealth of data on its website, including the weekly Treasury Single Account ("TSA") Report, which lists Commonwealth pension disbursements and year-to-date pension PayGo and outflows; the monthly summary of bank accounts balances, which lists the balances in pension-related accounts; and the monthly PayGo and individual contribution debt report.[35]

Given the wealth of information available to Ambac, there is no good cause to force Respondents to expend limited resources collecting and producing materials in response to the Pension Requests, particularly given that Ambac is categorically unwilling to meet and confer to reach any compromises on these requests. *See In re SunEdison*, 562 B.R 243, 250 (Bankr. S.D.N.Y. 2017) (reviewing the needs of the movant and the materials already provided by the proposed examinee, and concluding that no good cause existed for a majority of the proposed requests). Accordingly, Ambac's Pension Motion should be denied.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court deny the Motion to Compel and the Pension Motion.

---

updated assets); PR-INSURERS2004-0001002 (Addendum to June 30, 2015 PRGERS valuation report to reflect updated assets).
[35] *Publications & Reports*, AAFAF, http://aafaf.pr.gov/reports.html (last visited July 9, 2019).

| | |
|---|---|
| Dated: July 9, 2019<br>San Juan, Puerto Rico | /s/ Elizabeth L. McKeen<br>John J. Rapisardi<br>(Admitted *Pro Hac Vice*)<br>**O'MELVENY & MYERS LLP** |
| Respectfully submitted, | 7 Times Square<br>New York, NY 10036<br>Tel: (212) 326-2000 |
| /s/ Margaret Dale<br>Martin J. Bienenstock<br>Stephen L. Ratner | Fax: (212) 326-2061 |
| Timothy W. Mungovan<br>Paul V. Possinger<br>Margaret A. Dale<br>(Admitted *Pro Hac Vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>*Attorneys for the Financial Oversight and Management Board as representative for the Debtors* | Peter Friedman<br>(Admitted *Pro Hac Vice*)<br>1625 Eye Street, NW<br>Washington, DC 20006<br>Tel: (202) 383-5300<br>Fax: (202) 383-5414<br><br>Elizabeth L. McKeen<br>Ashley M. Pavel<br>(Admitted *Pro Hac Vice*)<br>610 Newport Center Drive<br>17th Floor<br>Newport Beach, California 92660<br>Tel: (949) 823-6900<br>Fax: (949) 823-6994 |
| /s/ Hermann D. Bauer<br>Hermann D. Bauer (USDC No. 215205)<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br>*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors* | *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*<br><br>/s/ Luis C. Marini-Biaggi<br>Luis C. Marini-Biaggi<br>USDC No. 222301<br>Email: lmarini@mpmlawpr.com<br>/s/ Carolina Velaz-Rivero<br>Carolina Velaz-Rivero<br>USDC No. 300913<br>E:mail: cvelaz@mpmlawpr.com<br><br>MARINI PIETRANTONI MUÑIZ LLC<br>MCS Plaza, Suite 500<br>255 Ponce de León Ave.<br>San Juan, Puerto Rico 00917<br>Tel: (787) 705-2171<br>Fax: (787) 936-7494<br><br>*Co-Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |

11