**Exhibit A**



**GRANT R. MAINLAND**

*Partner*
55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5251
gmainland@milbank.com  |  milbank.com

July 3, 2019

<u>VIA E-MAIL</u>

Elizabeth L. McKeen                                Margaret Dale
O'Melveny & Myers LLP                         Proskauer Rose LLP
610 Newport Center Drive, 17th Floor    Eleven Times Square
Newport Beach, CA 92660                      New York, NY 10036

      Re:  <u>Ambac Assurance Corporation's Response to the June 21 and June 24 Letters Regarding Pensions Discovery</u>

Counsel:

    We are in receipt of your letters, dated June 21 and June 24, 2019, regarding Ambac Assurance Corporation's ("Ambac") discovery motions concerning the Commonwealth's pension obligations. We respond below to each letter in turn.

**I.  <u>Letter, dated June 21, 2019, Concerning Ambac's Motion to Compel (the "Motion to Compel Letter")</u>**

    In the Motion to Compel Letter, you argue that Ambac's motion to compel is improper because (1) Ambac's motion ignores already-produced documents; (2) Ambac's demand for data underlying the Milliman reports was improperly raised for the first time in the motion; and (3) Ambac did not adhere to Judge Dein's standing order to meet and confer prior to making its motion. Not so. For the following reasons, Ambac's motion properly seeks an order compelling Respondents' to comply with the Court's orders of December 15, 2017 and February 26, 2018 as they pertain to requests for information regarding the Commonwealth's pension liabilities.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

July 3, 2019                                                                                                          Page 2

*First*, you state that Respondents' production of the pension models, the Milliman analyses, and the fiscal plan models for the October 23, 2018 Commonwealth Fiscal Plan satisfies Request No. 4 contained in the letter sent to you by Ambac and other monoline insurers on November 21, 2018.[1] We disagree that the production of these documents sufficiently responds to Ambac's prior request. While Respondents have produced certain Milliman reports, Respondents have failed to produce the underlying assumptions used as the basis for these figures. Ambac has repeatedly requested this information, and in doing so, has explained that Ambac needs it in order to conduct a proper analysis of the data. The Milliman reports, standing alone, are also insufficient because Milliman apparently relied on unaudited data in conducting its analysis. As the reports clearly state, to the extent that the data Milliman relies on "are inaccurate or incomplete, the results of [the] valuation may likewise be inaccurate or incomplete." *See, e.g.*, PR-INSURERS2004-0001377. Milliman itself appears to acknowledge the inherent limitations of its projections of the Commonwealth's pension obligations, stating in its report that "[w]e recommend that any [third-party recipient] of this report engage its own qualified professional advisors for its own purposes rather than relying on the enclosed results." *See, e.g.*, CW_RJM2004_0032789 at 90. This is precisely what Ambac is endeavoring to do here. And this clearly shows why Respondents' production of the Milliman reports, without the underlying data, is inadequate. In order to be able to diligence the Commonwealth's pension obligations, Ambac needs any data that feeds into the information provided to Milliman by the Commonwealth or other parties.

*Second*, Ambac has consistently requested the information considered and relied upon in the Milliman reports. For example, in our letter dated November 8, 2018, we provided a detailed overview of the inadequacy of Respondents solely producing the actuarial valuation reports from Milliman. What we said there remains true now: "Without reviewing the data and information considered and relied on by Milliman, we are unable to test the accuracy or assess the reasonableness of the Commonwealth's estimated pension liability." *See* Letter from G. Mainland to E. McKeen and M. Pocha, dated Nov. 8, 2018. And Ambac's request clearly extended beyond just the 2015 census data (of which it is not clear that Ambac has received the full universe of census data). Rather, Ambac has requested all of the data and information considered and relied upon in the Milliman reports, which includes but is not limited to pensioner information, actuarial tables, and Milliman work papers.

*Third*, Ambac has fully satisfied its meet-and-confer requirements under Judge Dein's standing order. Respondents have ignored Ambac's requests for months at a time. When they have responded, they have provided piecemeal answers to central and critical questions. Ambac and Respondents have engaged in numerous written and telephonic exchanges over the past two years regarding Ambac's request for pension-related information. Ambac still has not received the requested information. As such, Ambac believes that it has satisfied the meet-and-confer obligation, and further believes, in light of the history of this dispute, that further attempts to meet and confer would be futile. That said, Ambac always remains prepared to have further discussions if there is additional information that Respondents are prepared to provide.

---

[1] Request No. 4 calls for "[a]ll models, documents, and actuarial reports supporting the calculation of the pension benefit and administrative cost projections in the October 2018 Fiscal Plan."

July 3, 2019 Page 3

## II. Letter, Dated June 24, 2019, Concerning Ambac's Rule 2004 Motion (the "Rule 2004 Letter")

The Rule 2004 Letter similarly maintains that Ambac's Rule 2004 motion is improper because (1) the requests encompass documents already produced to Ambac, and (2) Ambac has not satisfied its meet and confer requirement. Further, Respondents request that Ambac "prioritize" the information it seeks—a familiar refrain. As noted above, Ambac believes it has satisfied its meet-and-confer obligations, and further believes that further attempts to meet and confer will not be productive.

We again disagree that the materials received from Respondents thus far satisfy your obligations. While some pensions-related materials have been produced, the materials have come in fits and starts. Ambac has been seeking pensions-related information for nearly two years now, and has failed to receive the types of documents that would allow for a thorough and comprehensive analysis. Therefore, Respondents' assertion that "the Requests encompass documents that Respondents have already produced to Ambac" is of no moment; as discussed above, while some documents have been provided, such as pension models, Milliman analyses, and fiscal plan models, they present just a snippet of the information sought, not the whole picture.

In addition, certain of the data provided to date were produced without identifying information or any indication of which documents are responsive to which requests. *See*, *e.g.*, PR-INSURERS2004-0000004, PR-INSURERS2004-000005, PR-INSURERS2004-0000006, PR-INSURERS2004-0000007, PR-INSURERS2004-0000008, PR-INSURERS2004-0000278, PR-INSURERS2004-0000279, PR-INSURERS2004-0000280, PR-INSURERS2004-0000281, PR-INSURERS2004-0000282, PR-INSURERS2004-0000283, PR-INSURERS2004-0000284, PR-INSURERS2004-0000956, PR-INSURERS2004-0000957, PR-INSURERS2004-0000958, PR-INSURERS2004-0000959, PR-INSURERS2004-0001419, PR-INSURERS2004-0001420, PR-INSURERS2004-0001421. Ambac has previously requested an index or map of the data that would allow Ambac to analyze and understand the information produced, but that request similarly went ignored.

In any event, Respondents' focus on what has already been produced to Ambac misses the point: setting aside whether the information produced to date has satisfied Respondents obligations in respect of fiscal-plan related discovery, the Rule 2004 motion concerning pensions is a new set of much broader requests that Ambac is entitled to have answered. For example, while Request No. 4 focuses on the October 2018 fiscal plan, the Rule 2004 motion seeks (among other legitimate areas of pension-related inquiry) information used to determine or calculate pension benefit obligations for all pension systems' members or their beneficiaries (inclusive of ERS, JRS, and TRS), information concerning the amount and/or valuation of the pension systems' future annual required pay-as-you-go contributions, and information about recent pension-related deals that relate to the forthcoming plan of adjustment. While these examples are clearly non-exhaustive, they illustrate the breadth of information Ambac seeks and is entitled to, rendering whatever partial compliance has occurred to date in response to much narrower requests irrelevant.

July 3, 2019                                                                                                          Page 4

      Finally, Respondents' request that Ambac "prioritize" its requests is unreasonable.  Ambac worked with Respondents to prioritize its requests beginning over a year ago, with limited success.  The understanding between the parties has always been that at some point, Respondents would produce all of the information that Ambac is entitled to.  To date, however, Respondents have failed to produce information that would provide Ambac with any meaningful insight into the Commonwealth's pension obligations.  In light of this track record, and especially in light of the Oversight Board's announcement that it will propose a plan of adjustment for the Commonwealth imminently, the time for prioritization has passed.

                                                                                           Sincerely,

                                                                                          Grant R. Mainland

cc:      Atara Miller
            Grant J. Esposito
            William J. Natbony
            Gary A. Orseck
            Martin A. Sosland