Hearing Date:    July 24, 2019 @ 9:30 a.m. (AST)
Objection Deadline:  July 9,2019 @ 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of,<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br><br>Title III<br><br><br>NO. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## BACARDI INTERNATIONAL LIMITED'S AND BACARDI CORPORATION'S OBJECTION TO AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING PRIFA RUM TAXES

Bacardi International Limited ("**BIL**") and Bacardi Corporation (together with BIL, "**Bacardi**"), by and through their undersigned counsel, hereby file this objection ("**Objection**") to *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* [ECF No. 7328] ("**Rule 2004 Motion**").

In support of the Objection, Bacardi respectfully represents and states as follows:

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## PRELIMINARY STATEMENT

1.     The Rule 2004 Motion should be denied.  As an initial matter, the factual predicates

for the request by Ambac Assurance Corporation ("**Ambac**") to take overly broad and burdensome

discovery of the Commonwealth and third parties regarding the production of rum in Puerto Rico,

the sales of Puerto Rico sourced rum in the United States and the payment of rum excise taxes as

incentives to rum producers are simply wrong.[2]   First, neither Ambac nor any other PRIFA

bondholders have a lien on rum excise taxes generally.  Second, Ambac's contention that Bacardi

and other rum producers are being paid the first $117 million in rum excise taxes paid by the

United States Treasury to the Commonwealth each year (to which Ambac claims a right) is

erroneous.

2.     The Rule 2004 Motion also should be denied because the intended discovery

requests are impermissibly overbroad and unfairly burdensome.   Ambac does not just seek

discovery of the amount of rum excise taxes received by the Commonwealth and paid as incentives

to the rum producers.  Rather, and just by way of example, Ambac seeks production of (i) all

agreements between the Commonwealth and rum producers, including all drafts of such

agreements; (ii) all communications regarding the agreements, including negotiations between

Commonwealth entities and rum producers; (iii) all documents and communications regarding

lobbying efforts by the rum producers; (iv) all communications regarding the flow of funds related

to rum excise taxes; (v) documents regarding the rum producers' historical rum production in

Puerto Rico; and (vi) documents regarding the shipments of Puerto Rico sourced rum to the United

States.  The list of burdensome and irrelevant requests goes on and on.  Moreover, the requests

---

[2]     Indeed, consideration of the merits of the Rule 2004 motion should be deferred until the scope and
extent of the lien granted by PRIFA (defined below) to PRIFA bondholders is determined by this Court.

either have no temporal limit or the time frame is excessively overbroad. Several of the requests would require the Commonwealth and rum producers to search for documents and information generated as far back as the 1960s. The breadth of the discovery sought by Ambac crosses into the realm of the ridiculous.

3. Finally, to the extent that this Court determines that Ambac should be permitted to seek some discovery, paragraphs 5 and 6 of Ambac's proposed order (**"Proposed Order"**) should be stricken because they improperly shift the burden of seeking court relief under Rule 45 of the Rules of Civil Procedure (**"Federal Rules"**) from subpoenas served by Ambac to the third-party targets of Ambac's discovery.

## JURISDICTION AND VENUE

4. The United States District Court for the District of Puerto Rico (**"Court"**) has jurisdiction over the Rule 2004 Motion and this Objection pursuant to 28 U.S.C. §§ 1331 and PROMESA § 306(a).[3] Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a).

## BACKGROUND

A.    Rum Excise Taxes

5. Sales of rum in the United States are subject to excise taxes paid by the distiller or importer to the National Revenue Center of the U.S. Treasury's Alcohol and Tobacco Tax and Trade Bureau (**"TTB"**). Pursuant to federal statute, excise taxes (**"Rum Excise Taxes"**) collected on rum produced in the Commonwealth of Puerto Rico (**"Puerto Rico"** or **"the Commonwealth"**) are "covered-over," or transferred back, by the U.S. Treasury to Puerto Rico. *See* 26 U.S.C. § 7652 (2018).

---

[3]    48 U.S.C. § 2101, *et seq.*

6.      Following the transfer by Diageo—the world's largest spirits company—of its rum sourcing operations from Puerto Rico to a plant in the United States Virgin Islands ("**USVI**") to take advantage of significant tax and other incentives offered by the USVI for the production and marketing of rum, the Commonwealth passed Law No. 178 of 2010 ("**Law No. 178**"). Pursuant to Law No. 178 and an implementing Executive Order (Administrative Bulletin No. OE-2012-30), the Puerto Rico legislature specifically directed the Commonwealth to set aside a portion of the Rum Excise Taxes remitted by the TTB to "incent[ivize] the production and promotion of Puerto Rico rum" in order to "promote the leveling of opportunities and fair competition for" a rum producing industry that "directly and indirectly employs thousands of Puerto Ricans and generates millions of dollars in local taxes." *See* 13 L.P.R.A. § 33231(l)(2); Law No. 178, "Statement of Motives" (accessible at http://www.oslpr.org/download/en/2010/A-0178-2010.pdf). Pursuant to Law No. 178, the Commonwealth authorized the payment of certain Rum Excise Taxes transferred to the Commonwealth by the TTB to rum producers in Puerto Rico for the sole purpose of marketing, advertising and promoting Puerto Rico rum. *Id.* Law No. 178 further required the Commonwealth to retain a majority of the Rum Excise Taxes for its general use. *Id.*

B.      Allocation of Rum Excise Taxes

7.      Ambac's claim that the Commonwealth has been transferring "Pledged Rum Taxes" belonging to Ambac and other holders of bonds issued by the Puerto Rico Infrastructure Financing Authority ("**PRIFA**") to Puerto Rico's rum producers[4] is simply incorrect.

8.      First, as a threshold matter, the holders of PRIFA bonds do not have a lien on Rum Excise Taxes generally. Ambac vaguely defines the term "Pledged Rum Taxes" as up to a maximum of $117 million in federal excise taxes on sales of Puerto Rico rum in the United States

---

[4]     *See* Rule 2004 Motion, ¶¶ 5, 11, 24.

transferred by the Commonwealth to PRIFA" and on which PRIFA has allegedly granted PRIFA

bondholders a lien. *See* Rule 2004 Motion, ¶ 2. The collateral granted to PRIFA bondholders,

however, is much more limited. To the extent PRIFA granted PRIFA bondholders a valid lien

pursuant to that certain Trust Agreement dated October 1, 1998, between PRIFA and U.S. Bank

National Association, as successor trustee, such lien is only on Rum Excise Taxes and other funds

actually received from the Commonwealth and deposited by PRIFA in a sinking fund ("**Sinking**

**Fund**") established by PRIFA. *See* Trust Agreement, § 601, a copy of which is attached as Exhibit

A to the *Urgent Motion of the Financial Oversight and Management Board for Order Pursuant to*

*Fed. R. Civ. p. 12(b)(1) and 12(b)(6) Dismissing Ambac Assurance Corporation's Motion*

*Concerning Application of the Automatic Stay to Revenue Securing PRIFA Rum Tax Bonds* [ECF

No. 7262].[5]

9.      Second, as noted above, a portion of the Rum Excise Taxes is required by Law No.

178 to be set aside for the production and promotion of Puerto Rico rum. Once set aside, that

portion of the Rum Excise Taxes is not legally available to be pledged to secure bonds (other than

bonds issued by the Government Development Bank of Puerto Rico ("**GDB**") to finance the

production and promotion of Puerto Rico rum) or for any other purpose of the Commonwealth that

is not related to the production and promotion of Puerto Rico rum. Any lien the Commonwealth

grants to a holder of bonds not issued by the GDB must, as a matter of law, be limited to the funds

retained by the Commonwealth under Law No. 178.

---

[5]      The limited scope of the lien, if any, granted by PRIFA to PRIFA bondholders has been thoroughly
addressed by the Financial Oversight and Management Board for Puerto Rico and thus will not be repeated
herein. *See Opposition of the Commonwealth of Puerto Rico to Ambac Assurance Corporation's Motion
Concerning Application of the Automatic Stay* [ECF No. 7827] ("**Oversight Board Opposition**") at ¶¶
64-86.

10.     Third, as confirmed in the Oversight Board Opposition, the first $117 million in Rum Excise Taxes paid to the Commonwealth each year is deposited in the Puerto Rico Treasury Single Account. *See Oversight Board Opposition*, □□ 13-16.  It is only after the Commonwealth receives these funds (and certain additional Rum Excise Tax-related payments), and after a payment is made to the Puerto Rico Conservation Trust, that Bacardi and other Puerto Rico rum producers begin to receive, for the sole purpose of marketing and promoting Puerto Rico rum, a portion of Rum Excise Taxes subsequently paid by the TTB to the Commonwealth.  No portion of the $117 million of Rum Excise Taxes to which Ambac claims a prior right is paid to the rum producers.  All amounts paid to rum producers for the marketing and promotion of Puerto Rico rum are derived from Rum Excise Taxes generated by the ongoing sale in the United States of rum produced in Puerto Rico.

## ARGUMENT

A.     The Discovery Sought By Ambac is Overly Broad and Unduly Burdensome.

11.     Ambac seeks authorization to take broad discovery not only of the Commonwealth but also of third parties (presumably including the rum producers). *See* Rule 2004 Motion, ¶ 26e (seeking entry of an order "[a]uthorizing Ambac to issue subpoenas directing the production of documents and the examination of other witnesses who may have knowledge of the matters described in Exhibit A without separate application to this Court for each subpoena or witness, and in accordance with the procedures set forth herein and in the Proposed Order").  Ambac's assertion that its discovery requests are narrowly tailored is belied by a review of the long list of document requests set forth in Exhibit A to the Rule 2004 Motion that seek "all documents and communications" or other similarly broad categories on numerous subject matters and that cover an excessively long period of time or have no temporal limit whatsoever.

12.     In considering whether to grant a request to propound discovery requests under Rule 2004, courts "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *See In re AOG Entm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016) (citation omitted).  Courts often deny or restrict requests that are overly broad, even when those requests concern a debtor's financial condition.  *See, e.g., SunEdison, Inc.*, 562 B.R. 243, 252 (Bankr. S.D.N.Y. 2017) (denying "unnecessary or overly broad" requests for all documents "relating to" debtor's financial condition and plan funding as "premature" because "there [was] no plan," and because it was "the type of information that would be disclosed in a disclosure statement"); *see also In re Kearney*, 590 B.R. 913, 922-26 (Bankr. D.N.M. 2018) (limiting unduly burdensome discovery requested against third party); *Sec. Investor Prot. Corp. v. Cont'l Capital Inv. Servs., Inc. (In re Cont'l Capital Inv. Servs., Inc.)*, No. 03–3370, 2009 WL 1604703, at *4-5 (Bankr. N.D. Ohio Mar. 6, 2009) (limiting overly broad discovery that was more burdensome to producing party than beneficial to the trustee seeking discovery); *In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (limiting scope of discovery that was duplicative and was "obviously too broad").  Indeed, courts have denied Rule 2004 examinations where, as here, the requests failed to reasonably limit the sources (here, any other witnesses) or types or extent of information that a party must search for and produce and instead, "generally ask for 'all documents and communications'" that relate to the subject matter of a specific request. *See SunEdison*, 255 B.R. at 252.

13.     The document requests in the Rule 2004 Motion are overly broad and unduly burdensome by any metric.  By way of example, Ambac seeks, among other requests, the following:

    a.  Request No. 8.  **All** Agreements between the Commonwealth or any Commonwealth instrumentality, including PRIFA and PRIDCO on the

one hand, and the Rum Companies on the other, **related to incentive
payments or other benefits or tax breaks or concessions** provided by
the Commonwealth, **including drafts thereof**.

b. <u>Request No. 9</u>.   **All** communications regarding the Agreements
responsive to Request No. 8, **including the negotiation thereof**.

c. <u>Request No. 10</u>:  Documents sufficient to show, from January 1, 2008
to the present, **all incentive payments** made by the Commonwealth or
any Commonwealth instrumentality, including PRIDCO, to the Rum
Companies pursuant to Agreements responsive to Request No. 8.

d. <u>Request No. 13</u>:  **All documents and communications**, from January
1, 2008 to the present, concerning **any Commonwealth proposals** to
the Rum Companies that includes payment of a portion of the Rum Tax
to the Rum Companies.

e. <u>Request No. 14</u>:  **All communications** between the Commonwealth and
the Rum Companies regarding the flow of funds of the Rum Tax, and
any restrictions on the use thereof.

f. <u>Request No. 15</u>:  Documents sufficient to show the Rum Companies'
historical rum production in Puerto Rico.

g. <u>Request No. 16</u>:  Documents sufficient to show the portion of Puerto
Rico-produced rum that is shipped to the United States.

h. <u>Request No. 17</u>:  **All** studies, analyses and/or projections concerning the
Rum Tax, including any risk related to the continued receipt of the Rum
Tax.

14.     The requests set forth above are just a sample of the numerous document requests

contemplated by Ambac that on their face are overly broad in subject matter and scope.  Certain

of the requests seek discovery of incentives and benefits that may have nothing to do with Rum

Excise Taxes.  Many of these requests have no temporal limitation whatsoever or cover time

periods that are excessively long.  Indeed Document Requests No. 15 and 16 cover a time period

that commences decades ago when, in the 1960s, Bacardi began to source its rum from production

facilities in Puerto Rico.  Other requests, in addition to being plainly overbroad, bear no clear

relation to Ambac's stated desire to understand the Commonwealth's current financial condition,

such as Request No. 12 to produce "[a]ll documents and communications, from January 1, 2008 to the present, concerning any lobbying efforts by the Rum Companies in relation to the Rum Tax."

15.     Ambac's Rule 2004 requests are of nearly boundless scope and in many cases bear no apparent relation to Ambac's stated purpose in seeking the discovery. Balancing the burden of responding to such requests against the relevance and necessity of the information sought by Ambac tips the scale in favor of denial of the Rule 2004 motion.

B.     Ambac's Proposed Order Improperly Shifts the Burden to the Target of Discovery to Seek Protection Under Federal Rule 45.[6]

16.     Federal Rule 45(d)(2)(B) provides that a "person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection" to such production "before the earlier of the time specified for compliance or 14 days after the subpoena is served." No further action must be taken by the target of discovery once an objection is served upon the proponent of third-party discovery. *Id.* Rather the proponent of third-party discovery must seek relief from the district court in the district in which compliance is required for an order compelling production or inspection. *See* Federal Rule 45(d)(2)(B)(i).

17.     In contravention of Federal Rule 45, however, Ambac's Proposed Order shifts the burden of seeking court relief to the third party targets of its discovery. Paragraphs 5 and 6 of the Proposed Order provide that third-party witnesses must seek relief from subpoenas seeking production of documents or a deposition within 14 days from service, thereby shifting the burden to third parties to seek protection from overly broad, unduly burdensome or harassing discovery.

---

[6]     Federal Rule 45 is incorporated into the Federal Rules of Bankruptcy Procedure by Bankruptcy Rule 9016, which in turn has been incorporated into PROMESA. *See* PROMESA, § 310.

*See* Proposed Order, ¶¶ 5 and 6.   Accordingly, to the extent that this Court permits Ambac to propound document requests or seek deposition testimony from third parties, paragraphs 5 and 6 of the Proposed Order should be stricken.

## RESERVATION OF RIGHTS

Bacardi reserves all rights to object to any discovery requests propounded by Ambac under Federal Rule 45.

## CONCLUSION

**WHEREFORE**, for the reasons stated above, Bacardi respectfully requests that the Court deny the Rule 2004 Motion.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have filed appearances in this case.

Date:  July 9, 2019
       San Juan, Puerto Rico

**C. CONDE & ASSOC**

By: */s/ Carmen D. Conde-Torres*
Carmen D. Conde-Torres, Esq.
USDC No.: 207312
*/s/Luisa S. Valle Castro*
Luisa S. Valle Castro, Esq.
USDC No.: 215311

254 San José Street
5th Floor
San Juan, PR 00901
Telephone: (787) 729-2900
Email: condecarmen@condelaw.com

*Co-Counsel for Bacardi International Limited and Bacardi Corporation*

**COVINGTON & BURLING LLP**

Dianne Coffino
(pro hac vice admission pending)
R. Alexander Clark (
pro hac vice admission pending)

620 Eighth Avenue
New York, NY 10018
Telephone No.: 212-841-1023
Email: dcoffino@cov.com,
       aclark@cov.com

*Co-Counsel for Bacardi International Limited and Bacardi Corporation*