UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.,*<br><br>    Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |

**RESPONSE OF THE LAWFUL CONSTITUTIONAL DEBT COALITION
IN SUPPORT OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO'S MOTION TO STAY CONTESTED MATTERS PENDING
CONFIRMATION OF COMMONWEALTH PLAN OF ADJUSTMENT**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Lawful Constitutional Debt Coalition (the "LCDC")[2] hereby submits this Response **in support** of the *Financial Oversight and Management Board for Puerto Rico's Motion to Stay*

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

[2] The members of the LCDC and their respective holdings are set forth in the Second Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019 [Dkt. 7465].

1

*Contested Matters Pending Confirmation of Commonwealth Plan Of Adjustment* [Dkt. 7640] (the "GO Claims Objection Stay Motion").[3]

1. After more than two years of seemingly endless litigation involving issues of first impression that will either need to be finally adjudicated or settled to formulate a plan of adjustment for the Commonwealth, Puerto Rico has its first opportunity to emerge from the cloud of bankruptcy in a matter of months, not more years.[4] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), working together with certain holders of general obligation claims against the Commonwealth ("GO Claims") and bonds issued by the Public Buildings Authority (the "PBA Bonds") have entered into a Plan Support Agreement (the "PSA")[5] providing the framework for a plan of adjustment for the Commonwealth. The PSA contemplates a global settlement of the Commonwealth's adversary proceeding against the PBA, including the ownership of PBA's assets, and any claims holders of PBA Bonds have against the Commonwealth (the "PBA Global Settlement").

2. The PSA further provides the first-ever support from *billions of dollars* of financial creditors for a proposed settlement of the relative entitlements of GO Claims as against the competing expenses of the Commonwealth identified in PROMESA, including the provision of essential public services, the adequate funding for pensioners, the elimination of structural deficits,

---

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the GO Claims Objection Stay Motion.

[4] Indeed, the filings in this case, which have come at an average pace of 10 filings per day for the past two years, have been likened to "Niagara Falls." *See* Jenna Greene, *The Docket That Ate The Am Law 100*, The Am Law Litigation Daily (July 9, 2019), https://www.law.com/litigationdaily ("Litigators sometimes describe their most intense cases as 'drinking from a fire hose.' But the $120 billion Puerto Rico debt restructuring—that's no fire hose. It's Niagara Falls. Consider that as of yesterday, the docket for the lead case in Puerto Rico federal court has had 7,860 entries in the last 26 months. That's an average of 10 filings a day, 365 days a year.").

[5] The PSA is attached as Exhibit B to the Ad Hoc GO Group's Renewed Procedures Motion [Dkt. 7814].

2

and the investment in capital expenditures to promote economic growth, in each case to the extent deemed necessary and appropriate by the Oversight Board (the "GO Global Settlement"). This milestone achievement cannot be overstated because—for the first time since the passage of PROMESA—holders of *billions of dollars* in GO Claims have agreed to support the Oversight Board's efforts to chart a viable path forward for Puerto Rico.

3. Furthermore, the PSA provides for a plan of adjustment that would offer to settle the Oversight Board's own omnibus objections to the thousands of GO Claims (the "GO Claims Objection") arising from purported obligations incurred after Puerto Rico had reached its constitutional debt limit (the "Proposed Late Vintage GO Settlement"). As contemplated by the PSA, holders of GO Claims issued prior to March 2012 (including the members of the LCDC) would cap their overall recoveries, effectively own the risk of loss on the GO Claims Objection, and still share one-third of any positive outcomes with the Commonwealth for the benefit of its other stakeholders.[6]

4. Critically, as it respects GO Claims Objection Stay Motion, the PSA does not prejudice holders of disputed late vintage GO Claims and contemplates a complete right to **opt out** of the Proposed Late Vintage GO Settlement and have their day in court if they wish following the Plan's effective date, upon which the job of objecting to late vintage GO Claims will be

---

[6] The PSA contemplates a plan of adjustment that obligates the creditor parties to support a *pari passu* recovery on GO Claims equal to approximately 64% (assuming all GO Claims were allowed in the same relative priority) in full and final settlement of any and all potential objections to their validity or their priority, and any and all potential arguments of the holders of GO Claims that they should be paid in full, ahead of all other expenses of Puerto Rico as required by the Puerto Rico Constitution. In the event the GO Claims arising after March 2012 are ultimately disallowed or allowed only as general unsecured claims not entitled to GO-level priority, one-third of the savings from paying out such claims for less than 64% would be retained by the Commonwealth to distribute to other creditors or to retain for its own purposes as determined by the Oversight Board pursuant to the forthcoming plan of adjustment that would incorporate the PBA Global Settlement, the GO Global Settlement, and the Proposed Late Vintage GO Settlement (the "Plan").

3

transferred to a litigation trust. The Oversight Board determined it was in the Island's best interests to move forward with a group of creditors who share its vision for long-term growth and investment, and has stated that it intends to continue garnering support, file the Plan, and move the Commonwealth out of bankruptcy in the very near future.

5. Given these significant developments, the Oversight Board has now requested that the Court stay litigation concerning the GO Claims Objection pending confirmation of the Plan. As the GO Claims Objection Stay Motion sets forth in greater detail, such relief is well with the Court's discretion, and fully warranted under the circumstances.

6. A court's "inherent authority" to "control the disposition of its cases" includes the power to stay proceedings before it. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The "inherent authority" to stay proceedings is also recognized by section 105(a) of the Bankruptcy Code, which is expressly incorporated into PROMESA. *See* PROMESA § 301(a) (48 U.S.C. § 2161(a)); *In re S. Side House, LLC*, 470 B.R. 659, 684 (Bankr. E.D.N.Y. 2012). In deciding whether to grant a stay, a court "is given considerable discretion in weighing the competing interests," which include the duration of the stay requested, the conservation of judicial resources, the prejudice faced by the parties if a stay is, or is not, entered, and the public interest. *See, e.g., Ramos-Martir v. Astra Merck, Inc.*, CIV. 05-2038(PG), 2005 WL 3088372, at *1 (D.P.R. Nov. 17, 2005);, *Total Petroleum Puerto Rico Corp. v. T.C. Oil, Corp.*, CV 09-1105 (JP), 2010 WL 11545626, at *1 (D.P.R. May 7, 2010), *Rivera v. Puerto Rico Tel. Co.*, CIV. 09-1723 (JP), 2009 WL 3160839, at *1 (D.P.R. Sept. 29, 2009) (citing *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977)).

7. All of these factors weigh heavily in favor of granting a stay here. A stay will allow the parties to focus on resolving the numerous disputes arising out of the Commonwealth's Title III Case, and to potentially avoid the enormous time and cost that litigating such disputes would

entail; provide the Oversight Board an opportunity to garner additional support for the PSA; conserve the time and resources of the Court; and assist the Oversight Board in achieving PROMESA's dual goals of attaining fiscal responsibility for the Commonwealth and restoring its access to the capital markets. Conversely, no party will suffer hardship or prejudice if a stay is granted, because all parties' substantive rights will be preserved, and the stay will terminate if the Plan is not confirmed. The prejudice that would be suffered if a stay is not granted would be substantial, however, as the parties and Court would be forced to operate on dual tracks of conducting confirmation litigation over the Plan, while simultaneously expending significant time and resources litigating the numerous disputes that the Plan seeks to settle—all on a shifting landscape where the ongoing litigation may cause parties' positions to change, or force parties to take actions prohibited by the terms of the PSA. *See Finn v. Barney*, CIV. 08-2975 (LTS), 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008) (staying putative class action to avoid, among other things, "premature and potentially duplicative discovery burdens," "duplicative proceedings, each having a different schedule and potentially doubling the amount of time and energy the Court must expend on these issues," and the "disruptive consequence" of "more individual litigation in the courts"); *see also LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427-28 (S.D.N.Y. 2005) (staying class action pending approval or rejection of settlement).

8. Moreover, as noted in the *LaSala* case, this is a situation where the party seeking a stay of litigation is the *same party that commenced the litigation to begin with*.[7] Indeed, while there will no doubt be other constituencies who are unhappy with the PSA for one reason or another,

---

[7] To the extent that the Official Committee of Unsecured Creditors (the "Creditors' Committee") opposes the GO Claims Objection Stay Motion on the basis that it participated in the underlying GO Claims Objection, the LCDC submits that such participation was never with prior court approval where the Creditors' Committee was granted standing or any specialized power to trump the exclusive power of the Oversight Board to propose a plan that proposes to compromise the issues.

their opposition to the GO Claims Objection Stay Motion needs to be taken with a grain of salt—the Oversight Board commenced litigation against holders of certain GO Claims. The Oversight Board now wishes to stay its own litigation and use its exclusive power to file the Plan, including the statutory power under section 1123(b)(3) of the Bankruptcy Code, to settle that litigation in lieu of proceeding. And if continued litigation is still necessary, the Oversight Board intends to provide for that, too, and no party can credibly demonstrate prejudice as a legal matter.

9. For the foregoing the reasons and those set forth in the GO Claims Objection Stay Motion, the LCDC respectfully requests that the relief requested in the GO Claims Objection Stay Motion be granted.

DATED: July 9, 2019

Respectfully submitted,

| REICHARD & ESCALERA | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| By : */s/ Rafael Escalera*<br>**Rafael Escalera**<br>USDC No. 122609<br>escalera@reichardescalera.com<br><br>**Sylvia M. Arizmendi**<br>USDC-PR 210714<br>arizmendis@reichardescalera.com<br><br>**Carlos R. Rivera-Ortiz**<br>USDC-PR 303409<br>riverac@reichardescalera.com<br><br>**Gustavo A. Pabón-Rico**<br>USDC-PR 231207<br>pabong@reichardescalera.com<br><br>255 Ponce de León Avenue<br>MCS Plaza, 10th Floor<br>San Juan, Puerto Rico 00917-1913 | **Susheel Kirpalani** (*pro hac vice*)<br>susheelkirpalani@quinnemanuel.com<br><br>**K. John Shaffer** (*pro hac vice*)<br>johnshaffer@quinnemanuel.com<br><br>**Deborah Newman** (*pro hac vice*)<br>deborahnewman@quinnemanuel.com<br><br>**Daniel Salinas**<br>USDC-PR 224006<br>danielsalinas@quinnemanuel.com<br><br>**Matthew Scheck** (*pro hac vice*)<br>matthewscheck@quinnemanuel.com<br><br>**Eric Kay** (*pro hac vice*)<br>erickay@quinnemanuel.com<br><br>**Zachary Russell** (*pro hac vice*)<br>zacharyrussell@quinnemanuel.com<br><br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010-1603 |

*Co-Counsel for the Lawful Constitutional Debt Coalition*