# Exhibit B

**PSA Summary Presentation**



# Commonwealth of Puerto Rico Title III Case: Plan Support Agreement

June 16, 2019

# Executive Summary: Plan of Adjustment Highlights

- **The Financial Oversight and Management Board of Puerto Rico has entered into a Plan Support Agreement with certain bondholders of the Commonwealth that provides a framework for a plan of adjustment to address $35 billion of claims against the Commonwealth**

- **Principal Terms of Plan of Adjustment**

    - **Reduction in Total Liabilities:**  $23 billion reduction of $35 billion in liabilities
    - **Total Debt Service (incl. COFINA):**  $44 billion down from $82 billion over 30 years (incl. COFINA)
    - **New Commonwealth Debt:**  Maximum of $11.8 billion
    - **Maximum Annual Debt Service (incl. COFINA):**  $1.5 billion down from $4.2 billion
    - **Max. Debt Service % of FY19 Own-Source Rev.:**  8.8% down from 28.1%
    - **Contingent Value Rights:**  None
    - **Aggregate Creditor Recoveries:**  35% - 42%
    - **Maximum Litigation Benefit for Commonwealth:**  $1.8 billion

- **Claims Held by Initial PSA Parties:**  ~$3 billion

- **Other Support for Plan of Adjustment:**  Official Committee of Retirees and certain unions representing over $50 billion in claims

- **Target Plan Filing Date:**  Within 30 days

## Plan Support Agreement: Overview and Background

- **The Commonwealth of Puerto Rico (the "Commonwealth") filed for a Title III proceeding on May 3, 2017**
    - $35 billion of funded bond debt and unsecured claims and $55 billion in pension obligations are expected to be adjusted through the Commonwealth Plan of Adjustment

- **Puerto Rico has suffered an economic and demographic decline for over a decade, as detailed extensively in the Commonwealth's 2019 Fiscal Plan**
    - Relative to 2005, the economy is $16 billion smaller (real terms) and the population has fallen by more than half a million

- **In September 2017, Hurricane Maria hit the island, causing unprecedented and catastrophic damage to Puerto Rico**
    - Hurricane Maria is estimated to have caused over $100 billion in damage, more than Puerto Rico's annual GNP

- **While federal recovery funds have provided a temporary boost in economic activity after Hurricane Maria, the fundamentals of the economy remain fragile; the 2019 Fiscal Plan proposes a series of structural reforms to improve the trajectory of the economy and drive growth**
    - Adjusting the Commonwealth's debt to a sustainable level and emerging from Title III are key elements for the eventual revitalization of the Commonwealth's economy

- **The Title III proceedings have been subject to significant litigation, including the FOMB Special Claims Committee's ("SCC") objection to post-2012 Commonwealth claims and Unsecured Creditors' Committee ("UCC") objection to post-2011 Commonwealth claims**
    - This Plan mitigates ongoing litigation expense, puts the Commonwealth on a path to emerge from Title III with a sustainable capital structure, and begins the process of restoring future access to the capital markets

## Plan Support Agreement: Key Highlights

| | |
|---|---|
| **Financial Sustainability and Market Access** | - Sets a sustainable capital structure for the Commonwealth in the future by limiting overall tax-supported debt service to below the average of the top-10 most indebted U.S. states<br><br>- Restructured Commonwealth debt service is limited to 30 years and declines significantly over time<br><br>- Plan will provide clarity for the Commonwealth and market participants on resolution of the Commonwealth's Title III proceedings and begins the process of restoring future access to the capital markets |
| **Deleveraging** | - The plan reduces tax-supported debt service from an average of $2.7 billion over the next thirty years to $1.5 billion, a 46% reduction in debt service obligations including COFINA<br><br>- Maximum annual tax-supported debt service including COFINA reduced from $4.2 billion to $1.5 billion<br><br>- The plan provides bondholders and creditors with blended overall recoveries on $35 billion of Commonwealth claims of between 35% and 42% (excluding recoveries from non-tax supported entities) |

# Plan Support Agreement: Debt Service Summary

The Commonwealth Plan of Adjustment, together with the COFINA Plan of Adjustment, successfully achieves a sustainable capital structure by reducing total tax-supported debt service by 46% from $82 billion to $44 billion over the next 30 years.



# Plan Support Agreement: Sustainability and Feasibility

The Commonwealth will emerge with a pro forma capital structure that is less levered than the average of the top-10 most indebted U.S. states, which will provide a foundation for fiscal sustainability in the future.

**TOP TEN INDEBTED STATES**
(Debt Service as a % of Own-Source Revenues)



Average of Top-10 Most Indebted States in 2017: 9.16%

| State | % |
|---|---|
| Mississippi | 6.9% |
| Maryland | 7.0% |
| Kentucky | 7.3% |
| Washington | 7.7% |
| New York | 8.1% |
| Puerto Rico (2019)[1] | 8.8% |
| Illinois | 9.2% |
| New Jersey | 9.4% |
| Hawaii | 10.5% |
| Massachusetts | 11.7% |
| Connecticut | 13.8% |
| Puerto Rico (2015) | 28.1% |

Source: Moody's, Medians – State Debt Continues Slow Growth Trend (4.24.18); Moody's, Medians – Total State Debt Remains Essentially Flat in 2017 (5.3.17).
(1) Represents pro forma debt service, including COFINA, as a percent of FY19 own-source revenues.

5

## Plan Support Agreement: Bondholder Recoveries

- **The Plan Support Agreement provides a framework for a Plan of Adjustment with $11.8 billion of adjusted debt and $2 billion of cash as consideration for $35 billion in Commonwealth debt and unsecured claims**

- **The validity of the 2012 and 2014 General Obligation bonds is subject to ongoing litigation**
  - Plan provides a mechanism to settle outstanding litigation
  - 2012/2014 holders have the option to litigate for pari recovery with pre-2012 bonds ("Vintage") or settle at the levels detailed below
  - Commonwealth shares in the benefit (up to $1.8 billion) from the invalidation of 2012/14 GO/PBA claims

|  | Claim ($ bn)[1] | Recovery[1] |
|---|---|---|
| **All Creditors** | ~$35 | 35% to 42% blended recovery |
| **Vintage GO**[2] | $6.9 | 64% before litigation recovery and settlement savings |
| **2012 GO**[2] | $2.7 | Settle at 45%, or litigate for pari Vintage recovery |
| **2014 GO**[2] | $3.6 | Settle at 35%, or litigate for pari Vintage recovery |
| **Vintage PBA** | $3.9 | 73%, before litigation recovery and settlement savings |
| **2012 PBA** | $0.7 | 23%, with net GO claim treated as 2012 GO |
| **Non-GO/PBA Creditors** | ~$16 | 9% blended |

(1) Claim amounts are preliminary and subject to material revision. Recoveries exclude potential recoveries from non-Commonwealth entities.
(2) Treatment of Other CW Guarantee Claims to be determined pursuant to the plan and excluded from these categories.



# TERM SHEET SUMMARY AND NEXT STEPS

## Term Sheet Summary

| | |
|---|---|
| **Total Consideration** | - $13,777mm<br>  - $11,377mm new Commonwealth bonds<br>  - $2,000mm cash<br>  - $400mm in either cash or bonds at the Board's election |
| **PBA Recovery** | - $1,073mm cash ("PBA Cash")<br>- PBA Excess Cash, if any |
| **Maximum Consideration to PBA / GO**[1] | - $12,493mm |
| **Excess Cash** | - Total CW unrestricted and unencumbered cash less amounts related to:<br>  - Federal receipts<br>  - $2.0bn working capital<br>  - Necessary investments funded in FY2020 to meet projections the May 9, 2019 Certified Fiscal Plan<br>  - $400mm cash option<br>- Max: $900mm<br>- Recovery cap buy down: 1.15x for each dollar of Excess Cash |
| **CW Pari Passu Recovery Percentage** | - Consideration available to all Commonwealth claims divided by sum of aggregate Commonwealth bond-related claims<br>- 64.3%[2] |
| **2012 Commonwealth Settlement Recovery** | - 45% |
| **2014 Commonwealth Settlement Recovery** | - 35% |
| **Recoveries: Early and Late Vintage Pari** | - Vintage GO: 64.3%[2] |
| **Vintage Recovery Cap** | - Vintage GOs / PBAs: 89.4%[3]<br>- Cap assuming full exercise of Excess Cash option: 80% - 84%[3] |

(1) Assumes no excess cash and pari recoveries (i.e., no sharing).
(2) Assumes no excess cash.
(3) In a scenario where bondholders reach the recovery cap, the Commonwealth would have recovered at least $1.2bn, lowering the aggregate consideration paid to creditors.



8

## Term Sheet Summary (Cont'd)

| | |
|---|---|
| **Settlement Savings** | ▪ Difference between the CW Pari Passu Recovery Percentage and the 2012 and 2014 Commonwealth Settlement Recovery |
| **Late Vintage Reserve** | ▪ Reserve established to hold in escrow the Pari Passu distributions allocated to non-settling 2012 and 2014 Commonwealth claims |
| **Settlement Savings & Litigation Trust Sharing** | ▪ Upside Sharing: 67% / 33%; Vintage bonds / Commonwealth, respectively |
| **PSA Restriction Fee** | ▪ **PSA Fee:** 1.5% for every 120 days to consenting creditors who execute PSA within 60 days of PSA execution<br>▪ **PSA Fee Cap:** $300mm (payable out of cash consideration and inclusive of Consummation Costs)<br>▪ **Earned:** PSA signatures of 50% of a vintage class for all debtors<br>▪ **Paid:** At Effective Date |
| **Consummation Costs** | ▪ One-time 1.25% fee<br>▪ **Earned:** PSA signatories by 5/31/2019<br>▪ **Paid:** Effective Date |
| **Structure of Bonds** | ▪ Terms of debt (coupons, covenants, collateral, call protections, etc.) to be mutually agreed upon by PSA parties |
| **Obligations of PSA Parties** | ▪ Full support with respect to GO / PBA and opt in 2012 / 2014s held by PSA parties<br>▪ No action clauses for other claims held<br>    ▪ Rights to receive settlement economics for such claims |
| **Litigation Trust Funding** | ▪ $10mm from Settlement Savings generated<br>▪ Funding allocated 67% and 33% between creditors and the Commonwealth, respectively |

9

## Plan Support Agreement: Recoveries for Creditors

| ($ in millions) | Base Case: Pre-Litigation | | 2012 / 14 Valid | 2012/14 Invalid |
|---|---|---|---|---|
| Credit | Claim[1] | Base Scenario[2] | 2012: 50%[3] 2014: 50%[3] | 2012: 50%[3] 2014: 50%[3] |
| Vintage GO + GO Guar.[4] | $6,918 | 64.3% | 68.2% | 83.4% |
| Vintage PBA | 3,938 | 72.6% | 75.6% | 87.3% |
| **Opt Ins** | | | | |
| 2012 GO[4] | 1,337 | 45.0% | 45.0% | 45.0% |
| 2014 GO[4] | 1,803 | 35.0% | 35.0% | 35.0% |
| 2012 PBA | 329 | 57.8% | 57.8% | 57.8% |
| **Non Opt Ins** | | | | |
| 2012 GO[4] | 1,337 | – | 68.2% | – |
| 2014 GO[4] | 1,803 | – | 68.2% | – |
| 2012 PBA | 329 | 23.4% | 75.6% | 23.4% |
| **Consideration Retained by the CW** | | | $272 | $991 |
| **Blended Total Recoveries:** | | | | |
| Total GO / PBA Recovery | | | 64.8% | 60.9% |
| Aggregate Creditor Recoveries | | | 38.2% | 36.1% |

Note: Recoveries shown do not include PSA Restriction Fee or Consummation Costs. No excess cash assumed.
(1) Claim numbers shown assuming 50% of 2012 and 2014 Commonwealth claims opt in. Claim numbers are preliminary and subject to material revision.
(2) Excludes any settlement savings.
(3) Percentage of 2012 and 2014 Commonwealth claims assumed to opt in.
(4) Treatment of Other CW Guarantee Claims to be determined pursuant to the plan and excluded from these categories.

## Next Steps and Timeline

- **The Plan Support Agreement has the support of creditors who hold ~$3 billion in total GO and PBA claims**

- **Certain fees are available to creditors who execute a joinder to the PSA as compensation for restricting trading**

    – Consenting parties earn 1.5% of their claim in cash for every 120 days following joinder to PSA, subject to an aggregate cap inclusive of Consummation Costs

    – Fee is only earned when 50% of a vintage class has signed

- **FOMB has already reached agreement with the Retiree Committee, representing over $50 billion in claims, as well as various unions representing active employees to support the Plan of Adjustment**

- **The FOMB welcomes engagement from the creditor community and expects to continue to engage productively in negotiations regarding the various Title III cases**

    – Most immediately, the FOMB and the Supporting Creditors expect to work together over the coming weeks to design the securities issued through the Plan of Adjustment

- **The FOMB currently expects to file a Plan of Adjustment within the next 30 days and emerge from Title III at the beginning of 2020**

11