**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER**
**(A) AUTHORIZING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES,**
**(B) APPROVING ADDITIONAL FORMS OF NOTICE,**
**(C) APPROVING PROPOSED MAILING, AND (D) GRANTING RELATED RELIEF**

---

[1]      The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:  8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 2

I.    The Proposed "Opt Out" ADR Procedures Should Be Approved. .................................... 3

II.   Neither Binding Arbitration Nor Mediation Are Appropriate Substitutes for the
      Proposed ADR Procedure. ................................................................................................. 5

III.  The Additional Modifications Proposed by the UCC Should Be Rejected. ...................... 7

IV.   Certain Modifications Proposed by the SIM Opposition Should Also Be Rejected. ......... 8

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Clerk v. ACE Cash Express, Inc.*,
  2010 WL 364450 (E.D. Pa. Jan. 29, 2010) ...............................................................................3

*Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.)*,
  278 B.R. 325 (Bankr. E.D.N.Y. 2002) ......................................................................................4

*Fluke v. Cashcall, Inc.*,
  2009 WL 1437593 (E.D. Pa. May 21, 2009) .............................................................................4

*Guadagno v. E\*Trade Bank*,
  592 F. Supp. 2d 1263 (C.D. Cal. 2008) .....................................................................................4

*In re Outlet Dep't Stores, Inc.*,
  49 B.R. 536 (Bankr. S.D.N.Y. 1985) ........................................................................................4

*In re Village Craftsman, Inc.*,
  160 B.R. 740 (Bankr. D.N.J. 1993) ...........................................................................................4

*Ms. Interpret v. Rawe Druck-und-Veredlungs-GmbH (In re Ms. Interpret)*,
  222 B.R. 409 (Bankr. S.D.N.Y. 1998) ......................................................................................4

*Takeout, Inc. v. Favour Century Ltd. (In re Takeout, Inc.)*,
  2009 Bankr. LEXIS 735 (Bankr. S.D.N.Y. Mar. 17, 2009) ......................................................4

STATUTES

28 U.S.C. § 636 ..............................................................................................................................5

28 U.S.C. § 636(c) ..........................................................................................................................5

48 U.S.C. §§ 2101-2241 .................................................................................................................1

PROMESA § 315(b) ........................................................................................................................1

OTHER AUTHORITIES

Fed. R. Bankr. P. 3007(e) ...............................................................................................................1

Fed. R. Bankr. P. 7004(b)(3) ..........................................................................................................4

**To the Honorable United States District Judge Laura Taylor Swain**:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Puerto Rico Electric Power Authority ("PREPA," and together with the Commonwealth, ERS, and HTA, the "Debtors," and each individually, a "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors'[2] representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] respectfully submit this reply (the "Reply")[4] in response to the *Limited Objection of Official Committee of Unsecured Creditors to Debtors' Motion for Entry of an Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief* (the "UCC Objection") [ECF No. 7737], filed by the Unofficial Committee of Unsecured Creditors ("UCC"), and the *Limited Opposition to Entry of Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief Filed by the Financial Oversight and Management Board for Puerto Rico* (the "SIM

---

[2] For purposes of this Motion only, and because COFINA has already reconciled substantially all of its proofs of claim, COFINA is not included among the Debtors seeking relief herein.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[4] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion for Entry of an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief (the "Motion").

Objection", and, collectively with the UCC Objection, the "Objections") [ECF No. 7612], filed by

Salud Integral de la Montaña, Inc. ("SIM"), and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      At the outset, it must be noted the proposed ADR Procedures were developed with

the full participation of the UCC.  Indeed, the UCC was engaged at the beginning of the process

over one year ago and helped negotiate provisions that ultimately were included in the procedures

being presented to the Court.  Also, it must be stated that the UCC has been informed throughout

the process that the development of the ADR Procedures was furthered based upon input from the

Administrative Office of the United States Courts, which conveyed concepts designed to promote

judicial economy and to be consistent with applicable law.  The fact that the UCC now seeks to

rewrite the ADR Procedures and retreat to principles that are either unworkable or inconsistent

with best practices should not be countermanded.

2.      Furthermore, it must be noted that, while both the UCC and SIM attempt to season

the ADR Procedures with their own flavor of spice, both the SIM Objection and UCC Objection

recognize that an ADR Procedure is a necessary and effective means towards reconciling the large

number of claims pending against the Debtors.[5]  Not to be dismissive of such tastes, in response

to certain concerns raised by the Objections, and in response to certain informal comments

received, the Debtors have made minor modifications to the proposed ADR Procedures.

3.      Principally, the UCC suggests that, in lieu of the proposed abbreviated litigation

procedures before magistrate judges, creditors should instead be required to participate in binding

arbitration.  But, because the ADR Procedures Motion was developed in consultation with the

UCC, as well as AAFAF, and most importantly, the Administrative Office of the United States

---

[5] The Debtors note that neither Objection opposes the Debtors' Proposed Mailing.

2

Courts, the UCC is well aware that its proposal to submit claimants to binding arbitration is unworkable for the simple reason that the Court lacks the authority to order claimants into such a procedure.

4.      Otherwise, both the UCC and the SIM Objections contend that the ADR Procedures should be modified such that creditors who fail to respond to notifications about the ADR Procedures should be deemed to have opted out of the ADR Procedures.  But because the ADR Procedures have been designed with procedural safeguards in mind, the proposed "opt out" ADR Procedures offer an appropriate balance between creditors' due process rights and the need for efficient resolution of the high volume of claims outstanding against the Debtors.

5.      For the reasons set forth below, the Debtors request that the Court approve the ADR Procedures, as modified herein and set forth in the proposed order annexed hereto as Exhibit A.

I.      **The Proposed "Opt Out" ADR Procedures Should Be Approved.**

6.      Both the UCC Opposition and the SIM Opposition object to the requirement that creditors who fail to return their ADR Form be deemed to have opted into the ADR Procedure ("Deemed Accepting Creditors").  UCC Opp. at 4-5; SIM Opp. at 2.  The UCC Opposition further contends that, by requiring Deemed Accepting Creditors to participate in the ADR Procedures, the Motion violates creditors' rights because Deemed Accepting Creditors are required to participate in the truncated litigation procedure.  But, the ADR Procedures, as drafted, provide appropriate procedural protections for Deemed Accepting Creditors—including notice and an opportunity to decline participation in the ADR Procedures—provide appropriate protections for creditors' due process rights.

7.      Provided that affected individuals have notice and an opportunity to decline to participate in ADR, "opt-out" ADR procedures are routinely approved.  *See, e.g.*, *Clerk v. ACE Cash Express, Inc.*, 2010 WL 364450, at *9 (E.D. Pa. Jan. 29, 2010) (rejecting argument that

3

arbitration agreement was "procedurally unconscionable" because plaintiff "was given the option to say no . . . but failed to do so"); *Fluke v. Cashcall, Inc.*, 2009 WL 1437593, at *8 (E.D. Pa. May 21, 2009) (rejecting argument that arbitration agreement was unconscionable because "Fluke was given the option to say 'no' to the arbitration provision and he was given a full 60 days to do so."); *Guadagno v. E\*Trade Bank*, 592 F. Supp. 2d 1263, 1270 (C.D. Cal. 2008) (arbitration agreement held enforceable because "Guadagno had a meaningful opportunity to opt out of the Arbitration clause . . . by notifying E\*Trade in writing within 60 days of receiving the Agreement."). The proposed ADR Procedures provide these procedural protections. Creditors receive notice of the ADR Procedures via the ADR Form, which provides them with detailed information about rights they will waive by participating in the ADR Procedures, such as the right to a full evidentiary hearing before the Title III Court. Creditors have an opportunity to decline to participate by returning their ADR Form and indicating they are opting out of the ADR Procedures.[6]

8.     The proposed ADR Procedures also provide enhanced procedural protections to Deemed Accepting Creditors. Specifically, in accordance with the proposed ADR Procedures,

---

[6] The UCC further objects that creditors may not receive the ADR Form because they may have "moved to a different address." However, serving creditors at the addresses listed in their proofs of claim is appropriate because the creditors have acknowledged that those addresses are "where . . . notices to the creditor should be sent." *See, e.g.*, *Takeout, Inc. v. Favour Century Ltd. (In re Takeout, Inc.)*, 2009 Bankr. LEXIS 735, *5-6 (Bankr. S.D.N.Y. Mar. 17, 2009) ("When service of process is effectuated at an address listed in a proof of claim, due process is achieved."); *Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 332 (Bankr. E.D.N.Y. 2002) ("There is ample authority for the proposition that service of process to the address designated in a proof of claim constitutes proper service under Bankruptcy Rule 7004(b)(3)."); *In re Village Craftsman, Inc.*, 160 B.R. 740, 745 (Bankr. D.N.J. 1993); *In re Outlet Dep't Stores, Inc.*, 49 B.R. 536, 540 (Bankr. S.D.N.Y. 1985); *Ms. Interpret v. Rawe Druck- und-Veredlungs-GmbH (In re Ms. Interpret)*, 222 B.R. 409, 415 (Bankr. S.D.N.Y. 1998) ("When a party effectuates service at an address listed in a proof of claim, due process is achieved.") (citing *Teitelbaum v. Equitable Handbag Co. (In re Outlet Dep't Stores, Inc.)*, 49 B.R. 536, 540 (Bankr. S.D.N.Y. 1985)). Indeed, this Court has already acknowledged that the addresses contained in a creditor's proof of claim are appropriate for service of legal documents, including service of process in an adversary proceeding. ECF No. 7694.

creditors who elect to participate in ADR by returning their ADR Form also consent, pursuant to

28 U.S.C. § 636(c), to conduct "any and all proceedings" with respect to their claims before a

Claims Adjudication Judge, and to permit the Claims Adjudication Judges to enter final judgment

with respect to their claims.  ADR Proc. at ¶ 11(f).  Those final judgments may then be directly

appealed to the First Circuit Court of Appeals.  *Id.*  Deemed Accepting Creditors, however, retain

the right to have final determinations with respect to their claims made by the Title III Court.  For

these creditors, the Claims Adjudication Judges will render a report and recommendation, which

will be subject to review by the Title III Court and appeal to the First Circuit Court of Appeals.

*Id.*  Because creditors receive both notice of the ADR Procedures and an opportunity to opt out,

and because important procedural protections for Deemed Accepting Creditors are preserved, the

ADR Procedures are consistent with due process and should be approved.

II.     **Neither Binding Arbitration Nor Mediation Are Appropriate Substitutes for the
        Proposed ADR Procedure.**

9.      Both the UCC Opposition and the SIM Opposition offer proposed additions or

alternatives to the ADR Procedures: the UCC Opposition proposes that creditors should be

subjected to binding arbitration in lieu of the proposed ADR Procedures, UCC Opp. at 8-10, while

the SIM Opposition proposes that creditors should be afforded the opportunity to participate in

mediation in addition to the proposed ADR Procedures, SIM Opp. at 3.  Neither proposal, however,

better balances the efficient resolution of claims against the need to protect creditors' due process

rights.

10.     As the UCC is aware, the binding arbitration procedures it proposes cannot be

approved by this Court, which does not have the authority to order that creditors' claims be

resolved through binding arbitration.  Pursuant to 28 U.S.C. § 636, however, the Court may refer

matters to magistrate judges for a report and recommendation, and, where both parties consent,

that magistrate judge may conduct all proceedings in a civil matter and order entry of judgment in

the case.  Even if the Court were to have authority to order binding arbitration, the UCC's proposal

does not offer the benefits the UCC claims.  For example, the UCC expresses concerns that local

arbitrators will have greater familiarity with Puerto Rico law and will be able to conduct

proceedings in Spanish.  However, there are currently several magistrate judges assigned to the

District of Puerto Rico, each of whom presumably have familiarity with local Puerto Rico law.

And, although the Debtors are mindful of the UCC's concern that many creditors are pro se

claimants whose first language is Spanish, this Court's local rules require that all federal court

proceedings by conducted in English.  L.Cv.R. 43.  The UCC also contends that binding arbitration

will reduce the need for creditors to retain legal counsel and will offer greater "certainty and

finality" than the proposed ADR Procedures.  But, there is no reason to suppose that creditors will

not require legal counsel in the event that they are subjected to binding arbitration instead of the

ADR Procedures.  Indeed, given that the UCC appears to propose that its arbitration procedures

be binding upon the creditors, final, and unreviewable, creditors will need legal counsel more, not

less, in the event that the court orders binding arbitration instead of the proposed ADR Procedures.

While binding, unreviewable arbitration offers "greater certainty and finality" than the proposed

ADR Procedures, that speedy determination comes at the cost of the procedural protections built

into the ADR Procedures, which permit claimants to seek review of adverse determinations before

the First Circuit Court of Appeals and, in certain circumstances, before the Title III Court as well.

11.       The SIM Opposition proposes that, if the Debtors and a claimant are unable to reach

agreement, "a mediation can be arranged with Judges in the Puerto Rico legal system" prior to

proceeding to litigation before the Claims Adjudication Judges.  SIM Opp. at 3-4.  While the

Debtors appreciate the benefits of mediation, the introduction of a mediation step between the

submission of offers and counteroffers and the beginning of truncated litigation proceedings runs

the risk of adding significant additional delays into an already lengthy process. An additional

requirement that parties mediate prior to proceeding to truncated litigation would only result in

additional burdens on the Debtors and the parties and further delay resolution of creditors' claims.

III.     **The Additional Modifications Proposed by the UCC Should Be Rejected.**

12.     The UCC further proposes the following additional modifications to the proposed

ADR Procedures: (1) creditors should be offered the opportunity to participate in an offer exchange

process without being required to participate in an abbreviated litigation procedure; (2) certain

creditors should be permitted to elect to participate in ADR; and (3) the Court should include a

provision in the ADR Procedures permitting tax refund claims that have been outstanding for more

than one year to be "submitted directly to the Title III court for claims reconciliation and

allowance." UCC Opp. at 8. These proposed modifications are inappropriate and should be

rejected.

13.     The UCC's first request—that creditors be offered the opportunity to participate in

the offer exchange process without being required to participate in litigation before the magistrate

judges—undermines the goal and intent of the ADR Procedures, which is to permit a single,

efficient, expedited process for resolving unsecured claims. By permitting creditors to participate

in the offer exchange process without also participating in the litigation procedures, the UCC's

proposal would require the Debtors to undertake the time and expense required to generate offers,

evaluate counteroffers, and exchange documentary evidence with a creditor without the

opportunity to seek expedited resolution of the claim should the parties be unable to reach

agreement. It is not an efficient use of the Debtors' limited resources to engage in an offer

exchange process for claims that will ultimately be resolved either through claim objections or

through substantive litigation before the Title III Court.

14. For similar reasons, the UCC's request that any unsecured creditor should be able to elect to participate in the ADR Procedures should likewise be rejected. This proposal would force the Debtors to make offers to creditors even if, in the Debtors' view, the creditors' claims are more appropriately resolved via an objection. Requiring the Debtors to generate offers even where the Debtors believe that a claim lacks any basis or is improperly asserted against the Title III Debtors would waste the Debtors' limited resources.

15. The UCC's request for a provision that "tax refund claims outstanding for more than one (1) year may be submitted directly to the Title III court for claims reconciliation and allowance" should likewise be denied. UCC Opp. at 8. The Debtors intend to submit for this Court's review and approval a procedure for resolving certain types of claims, including routine tax refund claims, using the Commonwealth's existing procedures for resolving certain type of administrative matters.[7] That procedure will include specific timeframes and deadlines for resolution of administrative claims, including timeframes for reconciliation and allowance of routine tax refund claims. In light of the Debtors' anticipated request for approval of administrative reconciliation of, *inter alia*, the very tax refund claims the UCC addresses, the UCC's proposed "safety valve" is unnecessary.

## IV. Certain Modifications Proposed by the SIM Opposition Should Also Be Rejected.

16. SIM raises the following additional considerations regarding the ADR Procedures: (1) whether the ADR Procedures will resolve only the validity and amount of a creditors' claims; (2) whether the ADR Procedures will require stays or transfers of other actions to the Title III court; and (3) whether "punitive damages, interest, attorneys' fees, other fees and costs, penalties,

---

[7] The Debtors recognize that a member of the UCC maintains a claim that has been the subject of an ongoing dispute. That claim will be dealt with separately from the procedure described above.

any amounts already disallowed by the Court, specific performance or any other equitable remedy"

should be resolved by the Claims Adjudication Judges or by the Title III court.

17.     With respect to SIM's first consideration, the ADR Procedures are clear that the

offer exchange process should be limited to determining the validity and amount of creditors'

claims.  Although SIM proposes that issues such as priority or classification, distributions, and

subordination should be determined simultaneously, those determinations are inappropriate for the

ADR Procedures.  Priority or classification, distributions, and subordination should only be

determined in connection with a plan of adjustment.  Attempting to resolve those issues through

the ADR Procedures would only result in confusion and additional delay.

18.     SIM likewise objects to paragraph 5 of the ADR Procedures, which require that

litigation related to a claim that has been transferred to the ADR Procedures be stayed and

transferred to the Title III court.  SIM Opp. at 2.  These procedures are necessary, however, to

avoid the possibility of conflicting rulings and to ensure coordinated resolution of a creditor's

claim. Without a stay of related litigation, the Debtors are at risk of being subjected to inconsistent

rulings.  SIM appears to object to the transfer of other litigations to the Title III Court on the basis

that it could result in the need to translate the case docket into Spanish, which may be costly for

the creditor.  The Debtors are mindful of this concern, but respectfully submit that the need for

translation of an underlying case's court docket, as well as who shall bear the burden of paying for

that translation, should be determined on a case-by-case basis.

19.     Finally, SIM objects to the fact that the ADR Procedures exclude "punitive

damages, interest, attorneys' fees, other fees and costs, penalties, any amounts already disallowed

by the Court, specific performance or any other equitable remedy" from the issues to be determined

by the Claims Adjudication Judges.  While specific performance and other equitable remedies are

inappropriate for the summary litigation contemplated by the ADR Procedures, the Debtors agree

that punitive damages, interest, attorneys' fees, other fees and costs, and penalties may

appropriately be resolved through ADR. The revised ADR Procedures submitted herewith adopt

this suggestion. As discussed above, however, because issues relating to the priority or

classification of a claim, distributions with respect thereto, or the subordination thereof are

appropriately resolved in conjunction with a plan of adjustment, those issues shall remain for

determination before the Title III Court.

## **CONCLUSION**

20.     For the foregoing reasons, the Debtors respectfully request that the Motion be

granted.

Dated: July 12, 2019
    San Juan, Puerto Rico

Respectfully submitted,

*/s/   Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Debtors*

*/s/   Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Debtors*