# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al,*<br><br>             Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

---

### SUPPLEMENT OF PUERTO RICO SALES TAX FINANCING CORPORATION TO THIRTEENTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO DUPLICATE CLAIMS AND REPLY TO HEIN SUBMISSIONS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, COFINA, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL HISTORY .................................................................................................... 3

ARGUMENT .......................................................................................................................... 7

A.   The Court Lacks Jurisdiction to Consider the Arguments Raised by the  Response........... 7

B.   The Response Is an Improper Attempt to Challenge the Disclosure  Statement and
COFINA Plan Post-Confirmation. ....................................................................................... 8

  i.   Hein's Claim Regarding the Disclosure of the Tax Exemption Implementation
  Agreement Is Meritless........................................................................................................ 9

  ii.   Hein's Claim Regarding the Disclosure of the Bonistas Is Likewise Meritless. .......... 10

  iii.   Hein Has Not Demonstrated That He Did Not Receive His Anticipated Recovery Under
  the COFINA Plan. .............................................................................................................. 11

  iv.   Hein's Contention that COFINA Plan Negotiators Received Improper "Special
  Benefits" Has Already Been Rejected................................................................................. 12

C.   Hein's Constitutional and Statutory Arguments Are Likewise Without Merit. ............... 13

  i.   Hein's Takings Clause Claim Has Been Rejected. ........................................................ 13

  ii.   Hein's Contracts Clause Claim Has Been Rejected....................................................... 14

  iii.   The COFINA Plan Was Confirmed Notwithstanding Hein's Claims Pursuant to the
  Privileges and Immunities Clause, the Equal Protection Clause, the Due Process Clause, and
  48 U.S.C. § 737. ................................................................................................................ 15

  iv.   Hein's Claim Pursuant to the First Amendment Has Been Rejected............................ 18

  v.   Hein's Appointment Clause Claim Is Precluded by First Circuit Precedent. ............... 19

  vi.   Hein's Conclusory Claim that PROMESA § 2141(b)(1)(N) and § 2174(b)(1), (2), (3),
  and (6) Have Not Been Complied with Has Already Been Rejected................................... 19

  vii.   Any Liabilities Owed to Hein as a result of the Constitutional and Statutory Claims
  Have Been Discharged. ...................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Aurelius Investment v. Commonwealth of Puerto Rico*,
915 F.3d 838 (1st Cir. 2019) ................................................. 19

*Barraford v. T & N Ltd.*,
778 F.3d 258 (1st Cir. 2015) ................................................. 20

*Bouret-Echevarria v. Caribbean Aviation Maintenance Corp.*,
784 F.3d 37 (1st Cir. 2015) ................................................. 9

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) ................................................. 8

*Hodel v. Va. Surface Mineral & Reclamation Ass'n*,
452 U.S. 264 (1981) ................................................. 17

*In re City of Detroit*,
524 B.R. 147 (Bankr. E.D. Mich. 2014) ................................................. 13

*In re City of Detroit*,
Mich., 504 B.R. 191 (Bankr. E.D. Mich. 2013) ................................................. 14

*In re City of Stockton, Cal.*,
478 B.R. 8 (Bankr. E.D. Cal. 2012) ................................................. 14

*In re Financial Oversight and Management Board for Puerto Rico*,
327 F. Supp. 3d 364 (D.P.R. 2018) ................................................. 20

*In re Lower Bucks Hosp.*,
571 F. App'x. 139 (3d Cir. 2014) ................................................. 9

*In re Pac. Lumber Co.*,
584 F.3d 229 (5th Cir. 2009) ................................................. 17

*In re VDG Chicken, LLC*,
2011 WL 3299089 (9th Cir. Bankr. 2011) ................................................. 12

*Neblett v. Carpenter*,
305 U.S. 297 (1938) ................................................. 17

*Serv. Employees Int'l Union, Local 82 v. D.C. Gov't*,
608 F. Supp. 1434 (D.D.C. 1985) ................................................. 16

ii

*Toomer v. Witsell*,
    334 U.S. 385 (1948) ................................................................................................16

*U.S. Fire Ins. Co. v. Corporación Insular de Seguros*,
    853 F. Supp. 47 (D.P.R. 1994) ..............................................................................17

*U.S. v. Brooks*,
    145 F.3d 446 (1st Cir. 1998) ...................................................................................8

*United States v. Kras*,
    409 U.S. 434 (1973) ................................................................................................16

*United Student Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010) ................................................................................................17

*Wood v. United States (In re Wood)*,
    866 F.2d 1367 (11th Cir. 1989) ............................................................................16

**STATUTES**

11 U.S.C. § 944 ..........................................................................................................20

48 U.S.C. § 2161-2177 ..............................................................................................18

PROMESA §§ 301-317 ..............................................................................................18

**OTHER AUTHORITIES**

U.S. Const. Amendment V ..........................................................................................17

U.S. Const. Amendment XIV § 1 ..............................................................................16

U.S. Const. Article IV, § 2, Cl. 1 ..............................................................................15

The Puerto Rico Sales Tax Financing Corporation ("COFINA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as COFINA's representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this supplement to the Thirteenth Omnibus Objection and reply (the "Reply") to the various pleadings[3] filed by Peter C. Hein ("Hein"), and, in support of the Reply, respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      At the April 24, 2019 omnibus hearing, and in the context of the Oversight Board's then-pending objection to Hein's duplicate claim with respect to his Junior COFINA Bonds and the Court's concern that there might be more to Hein's claim than just the amount asserted to be

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] The pleadings include the *Objection, of Individual COFINA Subordinate Bondholder Residing in the 50 States Who Purchased at the Original Offering Prices, to Confirmation of Puerto Rico Sales Tax Financing Corporation ("COFINA") Plan, and Response and Opposition to COFINA's Thirteenth Omnibus Objection to Individual Claim No. 10701* [ECF No. 4585] (the "Objection"), the *Supplement to Objection, of Individual COFINA Subordinate Bondholder Residing in the 50 States Who Purchased at the Original Offering Prices, to Confirmation of Puerto Rico Sales Tax Financing Corporation ("COFINA") Plan Scheduled for Hearing January 16, 2019, and Response and Opposition to COFINA's Thirteenth Omnibus Objection to Individual Claim No. 10701* [ECF No. 4595] (the "Supplement"), the *Second Supplement to Objection, of Individual COFINA Subordinate Bondholder Residing in the 50 States Who Purchased at the Original Offering Prices, to Confirmation of Puerto Rico Sales Tax Financing Corporation ("COFINA") Plan Scheduled for Hearing January 16, 2019, and Response and Opposition to COFINA's Thirteenth Omnibus Objection to Individual Claim No. 10701* [ECF No. 4673] (the "Second Supplement"), the *Further Response and Opposition, of Individual COFINA Subordinate Bondholder Residing in the 50 States Who Purchased at the Original Offering Prices, to COFINA's Thirteenth Omnibus Objection to Individual Claim No. 10701, and in Further Opposition to Confirmation of Puerto Rico Sales Tax Financing Corporation ("COFINA") Plan* [ECF No. 5041] (the "Third Supplement"), the *Supplement to Response and Opposition, of Individual COFINA Subordinate Bondholder Residing in the 50 States Who Purchased at the Original Offering Prices, to COFINA's Thirteenth Omnibus Objection to Individual Claim No. 10701* [ECF No. 6283] (the "April Supplement"), and the *Response to Request by FOMB for Additional Information Concerning Nature of Constitutional and Other Claims Asserted in Claim No. 10701* [ECF No. 7211] (the "Response").

unpaid, the Oversight Board requested, and Hein agreed, to provide a filing that would provide "more meat to the bones" regarding the claims Hein seeks to assert under the United States Constitution and the Puerto Rico Constitution.  In compliance with the Court's directive, Hein filed a response, which contains two categories of grievances with the COFINA Plan. *First*, Hein purports to find fault with the process by which the COFINA Plan was proposed, confirmed and implemented, identifying alleged flaws in the Disclosure Statement and the process by which bondholders received distributions pursuant to the related COFINA Plan. *Second*, Hein asserts a litany of purported constitutional and statutory violations that Hein believes might arise from the release or discharge of his bond claim.  Each one of those alleged violations, however, were before the Court when it confirmed the COFINA Plan.

2.      The flaws Hein purports to identify with the Disclosure Statement and the process by which distributions were made to COFINA bondholders could have been, but were not, raised in connection with the Court's decisions to approve the Disclosure Statement or confirm the COFINA Plan.  However, even if the concerns Hein raises had any merit, which they do not, they simply provide additional reasons why, in Hein's view, the Disclosure Statement should not have been approved and the COFINA Plan should not have been confirmed.  Nowhere do they articulate how the perceived flaws in the process of plan confirmation and distribution might result in additional damages or other liabilities owed to Hein on account of his pre-petition claim.

3.      Hein's constitutional and statutory claims, for their part, simply rehash the constitutional and statutory objections that were already raised in the numerous pleadings Hein filed in connection with this Court's consideration of the COFINA Plan and, thereupon, rejected. These claims fare no better the second time round.  And, because each of these claims assert liabilities purportedly owed to Hein as a result of his status as a COFINA bondholder, they

represent pre-petition liabilities that have been discharged pursuant to the COFINA Plan.

4.      It is important to recognize that these very same issues are the subject of Hein's pending appeal from the Confirmation Order to the First Circuit. As such, the Court's focus, if it deems warranted, must be limited to discrete issues actually raised in the Hein claim, and not extraneous musings which are now solely the province of the First Circuit. In doing so, the court would readily determine that Hein's numerous filings do not demonstrate that he is owed any additional recovery under the COFINA Plan, and the Claim, as defined below, should be disallowed in its entirety.

## **PROCEDURAL HISTORY**

5.      Hein filed his proof of claim against COFINA on May 4, 2018, and it was logged by Prime Clerk as Proof of Claim No. 10701 (the "Claim").  Therein, Hein included an attachment in which he purported to assert and reserve "all rights and claims under applicable law," as well as "all rights and claims asserted in these proceedings by other holders of the type of bonds purchased and held by [Hein]."

6.      On October 19, 2018, the Oversight Board filed the *Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* [ECF No. 4072] and the corresponding *Disclosure Statement for the Title III Plan of Adjustment of the Debts of the Puerto Rico Sales Tax Financing Corporation* [ECF No. 4073].

7.      On November 16, 2018, the Oversight Board filed the *Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* [ECF No. 4296] and *Disclosure Statement for the Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 4299].  While several objections to the Disclosure Statement were filed, Hein did not interpose an objection.

3

8.      A hearing was held on November 20, 2018 to consider the adequacy of the Disclosure Statement.  [ECF No. 4353.]  Thereafter, on November 26, 2018, the Oversight Board filed a *Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 4363] and a related *Disclosure Statement for the Second Amended Title III Plan of Adjustment of the Debts of Puerto Rico Sales Tax Financing Corporation* [ECF No. 4366] (the "Disclosure Statement").  The Disclosure Statement was approved by the Court in a November 29, 2018 Order. [ECF No. 4382] (the "Disclosure Statement Order").

9.      On December 4, 2018, the Oversight Board filed the *Puerto Rico Sales Tax Financing Corporation's Thirteenth Omnibus Objection (Non-Substantive) to Duplicate Bond Claims* [ECF No. 4417] (the "Thirteenth Omnibus Objection"), seeking to disallow in their entirety five hundred (500) duplicate proofs of claim (the "Duplicate Claims"), including the Claim on the grounds that  they were duplicative of a master proof of claim filed in COFINA's Title III Case by The Bank of New York Mellon, as trustee of the prepetition bonds issued by COFINA.  *See* Thirteenth Omnibus Objection, Exhibit A, Line 413.

10.      On December 28, 2018, Hein filed the Objection, which, in reality, objected to confirmation of the COFINA Plan and, incidentally, responded to the Thirteenth Omnibus Objection.  Specifically, thirty-five pages of the Objection addressed Hein's objections to confirmation of the COFINA Plan.  But, in the final two paragraphs of the Objection, Hein summarily asserts that the Claim is not duplicative because the BNYM has not "submitted and asserted all of the claims made by me in claim No. 10701, which included all rights and claims under applicable law, including but not limited to the United States Constitution and the Puerto Rico Constitution,. . . . Furthermore, . . . the Trustee has not [] asserted all of the claims, responses, and objections to confirmation . . . that are described in Sections I through IV above." Objection

4

at 35-36.

11.     On December 31, 2019, Hein filed the Supplement.  Although the Supplement was styled as a "Response and Opposition" to the Thirteenth Omnibus Objection, again, it did not substantively address the Thirteenth Omnibus Objection.  Rather, it provided additional argument regarding Hein's statutory and constitutional objections to confirmation of the COFINA Plan.

12.     On January 8, 2019, Hein filed the Second Supplement.  Although the Second Supplement is also styled as a "Response and Opposition" to the Thirteenth Omnibus Objection, once again, it did not substantively address the Thirteenth Omnibus Objection.  This time, the Second Supplement commented upon other filings related to confirmation of the COFINA Plan.

13.     On January 9, 2019, the Oversight Board filed the Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation (as amended, the "COFINA Plan") [ECF No. 4658].

14.     On January 31, 2019, Hein filed the Third Supplement.  The Third Supplement repeats, verbatim, the assertions made in the Objection that the Claim is not duplicative because the BNYM has not "submitted and asserted all of the claims made by me in claim No. 10701, which included all rights and claims under applicable law, including but not limited to the United States Constitution and the Puerto Rico Constitution. . . ."  Third Supplement at 1-2.  The Third Supplement also raises additional objections to confirmation of the COFINA Plan.   Third Supplement at 2-4.

15.     As the Court is aware, on January 16 and 17, 2019, the Court conducted a hearing to consider, among other things, confirmation of the COFINA Plan.  At that time, Hein presented evidence and legal argument regarding the numerous allegations raised in the Objection, the Supplement, the Second Supplement, and even the Third Supplement.  Upon consideration of all

of the evidence submitted and arguments proferred, including by Hein.  The COFINA Plan was confirmed by the Court on February 4, 2019.[4]  On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5047] (the "Amended Confirmation Order") and an *Amended Memorandum of Findings of Fact and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5053] (the "Amended Confirmation Memorandum").  The Amended Confirmation Memorandum specifically addressed, and overruled, the arguments regarding confirmation of the COFINA Plan made by Hein in the Objection, the Supplement, the Second Supplement, and the Third Supplement.  Amended Confirmation Memorandum at 43-44 n.13, 51-53.

16.     The COFINA Plan became effective on February 12, 2019, when the transactions contemplated therein were consummated.  [ECF No. 5104.]

17.     Hein has filed a Notice of Appeal of the Court's entry of the Amended Confirmation Order, which was docketed as Case No. 19-1182 [ECF No. 5166] (the "Notice of Appeal").  COFINA, by and through the Oversight Board, moved to dismiss this appeal.  *Pinto-Lugo v. Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 19-1182, *Appellees' Motion to Dismiss the Appeal As Equitably Moot* [Doc. No. 00117426005] (1st Cir. Apr. 12, 2019).  The matter remains pending before the First Circuit.

18.     Refusing to let the COFINA Plan process be handled by the appellate court, on April 15, 2019, Hein filed the April Supplement.  The April Supplement asserts that (1) the

---

[4] *See Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Tax Financing Corporation* [ECF No. 5048].

Disclosure Statement was "incomplete and misleading" because it failed to disclose a Tax Exemption Implementation Agreement entered into by AAFAF, COFINA, the Oversight Board, and certain holders of COFINA bonds, *id.* at 1-2; (2) the purportedly "chaotic exchange process" of original COFINA bonds has resulted in "modest-sized holders in the 50 states receiv[ing] materially less in value" than anticipated in the Disclosure Statement, *id.* at 9-10; and (3) the fact that BNYM did not object to COFINA Plan confirmation "underscores" that BNYM "has not submitted and asserted all of the claims, and all of the responses and objections to confirmation, that were described in" the Claim, *id.* at 5.

19.    At the April 24, 2019 omnibus hearing, the Court ruled that certain elements of the Claim were duplicative, but that Hein would be permitted to submit further briefing as to his constitutional claims. *See* April 24 Hearing Transcript at 178-179. Hein filed the Response on June 3, 2019 and, instead of adding "meat to the bones," provided the same hash.

## ARGUMENT

**A.    The Court Lacks Jurisdiction to Consider the Arguments Raised by the Response.**

20.    The Response asserts a number of challenges to the Disclosure Statement and the COFINA Plan. First, the Response identifies four purported flaws in the Disclosure Statement and the COFINA Plan's distribution process clarifying: (1) the Disclosure Statement failed to disclose the Tax Exemption Implementation Agreement executed by AAFAF, COFINA, the FOMB, and certain COFINA bondholders, claiming; (2), the Disclosure Statement lacked adequate detail regarding the bonds owned by the Bonistas del Patio, who were proponents of the COFINA Plan; (3) the Disclosure Statement did not provide adequate information regarding bondholder recoveries; and (4) the negotiators of the COFINA Plan improperly received additional recoveries through the Plan. In addition, the Response contends that the COFINA Plan is unconstitutional

because it violates the Takings Clause, the Contracts Clause, the Privileges and Immunities Clause, the Equal Protection Clause, the Due Process Clause, 48 U.S.C. § 737, the First Amendment, the Appointments Clause, as well as 48 U.S.C. §§ 2141(b)(1)(N), 2174(b)(1), (2), (3), and (6). Hein's Notice of Appeal, which seeks review of, *inter alia*, the Amended Confirmation Memorandum, the Amended Confirmation Order, and the Disclosure Statement Order, has placed these precise issues before the First Circuit—thereby depriving this Court of jurisdiction to entertain his arguments.

21.    It is black-letter law that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). This divestiture of jurisdiction extends to "any matter touching upon, or involved in, the appeal." *U.S. v. Brooks*, 145 F.3d 446, 455-456 (1st Cir. 1998). The issues the Response seeks to litigate—whether the COFINA Plan comports with PROMESA and the U.S. and Puerto Rico Constitutions, whether the Disclosure Statement contained adequate information to permit creditors to make an informed decision regarding the COFINA Plan, and whether the COFINA Plan's negotiators could receive additional recoveries under the COFINA Plan—are all directly addressed by the very orders Hein has put at issue in his Notice of Appeal.  This Court, accordingly, lacks jurisdiction to consider the arguments raised by the Response.

**B.      The Response Is an Improper Attempt to Challenge the Disclosure
         <u>Statement and COFINA Plan Post-Confirmation</u>.**

22.    Even if this Court should determine that it retains jurisdiction to consider the Response, for the reasons set forth below, each of Hein's complaints regarding the adequacy of the Disclosure Statement and the distributions under the COFINA Plan are without merit.

    i.   Hein's Claim Regarding the Disclosure of the Tax Exemption Implementation
        Agreement Is Meritless.

23.     The Response asserts that the Disclosure Statement failed to disclose the fact that

AAFAF, COFINA, the FOMB, and certain COFINA bondholders would enter into the Tax

Exemption Implementation Agreement, which, according to Hein, improperly provides

"discriminatory additional consideration" to Puerto Rico residents alone and "force[s] bondholders

to give up 25 basis points of the interest rate on the bonds" in order to obtain tax-exempt bonds.

Resp. at 2-5.  The Disclosure Statement was always clear, however, that the exact proportion,

availability, and tax treatment of Tax-Exempt COFINA Bonds was uncertain at the time.  ECF

No. 4299 at 196-198.  Despite the fact that precise information regarding the availability and tax

treatment of Tax-Exempt COFINA bonds was not available at the time of the Disclosure

Statement, this Court nevertheless held that the Disclosure Statement provided adequate

information, as required by 11 U.S.C. § 1125(b), to enable a creditor to make an informed

judgment about the COFINA Plan.  *See* Disclosure Statement Order.  Moreover, Hein's allegations

notwithstanding, the Tax Exemption Implementation Agreement[5] does not "force" bondholders to

do anything because it is entirely optional: no bondholder is obligated to exchange taxable bonds

for tax-exempt bonds pursuant to its terms.[6]  And, as noted above, due to the divestment of

jurisdiction could not be considered in any event.

---

[5] Notably, the Tax Exemption Implementation Agreement was negotiated post confirmation to resolve certain creditor concerns regarding tax treatment.

[6] To the extent Hein contends that the Tax Exemption Implementation Agreement constitutes new information that was not available at the time of the Disclosure Statement, that argument could only be raised through a motion for reconsideration of this Court's ruling on the adequacy of the Disclosure Statement.  *Bouret-Echevarria v. Caribbean Aviation Maintenance Corp.*, 784 F.3d 37, 41 (1st Cir. 2015) ("Rule 60(b) grants federal courts the power to vacate judgments . . ."); *see also In re Lower Bucks Hosp.*, 571 F. App'x. 139, 143 (3d Cir. 2014).  Hein has not filed such a motion.

ii.   Hein's Claim Regarding the Disclosure of the Bonistas Is Likewise Meritless.

24.     Hein also contends that the Disclosure Statement was insufficient because it did not

explain that the Bonistas (1) "did not own any COFINA bonds," but did own other Puerto Rico

bonds; (2) had retained counsel who also serve as counsel to a major GO bondholder group; (3)

included individuals who had "transacted" with the Commonwealth, Resp. at 7-8; (4) intended to

seek a multi-million dollar payment for its expenses in supporting the COFINA Plan; and (5) did

not advocate on behalf of subordinate bondholders.  However, the Disclosure Statement did not

need to include any information regarding the bonds owned by the Bonistas, the counsel they had

retained, or the possibility that individuals associated with the Bonistas had transacted business

with the Commonwealth, and in fact, the Court approved it without requiring any such disclosures.

*See* Disclosure Statement Order.

25.     It was also not necessary for the Disclosure Statement to include information

regarding the Bonistas' decision to seek payment for expenses incurred in supporting the COFINA

Plan.  The Bonistas were participants in the mediation process that led to the development of the

COFINA Plan, and believed they were entitled to reimbursement for the assistance they provided.

Section 15.2 of the COFINA Plan provides that expenses incurred in connection with its

development, negotiation, confirmation, and consummation shall be paid from the

*Commonwealth's* resources, not from COFINA's.  In other words, any payment to the Bonistas

would not be to the detriment of COFINA bondholders such as Hein.  Moreover, parties in interest

had an opportunity to object to the Bonistas' receipt of the payment they sought: indeed, whether

the Bonistas will ultimately receive any payment at all remains the subject of active litigation

before this Court.  *See, e.g.*, *Official Committee of Unsecured Creditors' Urgent Response to*

*AAFAF's Informative Motion Disclosing Proposed Payment of $7 Million to Bonistas del Patio,*

*Inc.*, ECF No. 5100.

  iii. Hein Has Not Demonstrated That He Did Not Receive His Anticipated Recovery
    Under the COFINA Plan.

  26. Hein also contends that the Disclosure Statement inaccurately stated that he would receive a projected recovery of 56.414%, but that in fact, his losses on his bonds were "much higher" as a result of a "chaotic exchange process" that resulted in, among other things, "forced sales of fractional bonds" and "splintered fragments of 14 new bonds [that] lacked liquidity." Resp. at 9.  The Oversight Board has already addressed these concerns through prior submissions and at the March 13, 2019 omnibus hearing.  Mar. 13, 2019 Omnibus Hr'g. Tr. at 20:17-24.

  27. To effectuate distributions pursuant to the COFINA Plan, fractional bonds—a "common feature in bond markets"—were issued, *id.* at 22; fractional bonds were required due to limitations on the ability to issue bonds in increments below $1,000.  After the issuance of the fractional shares, DTC and brokers attempted to "maximize[] the recoveries to each of their beneficial holders . . . through a process called market action."  *Id.* at 22:4-6.  Through the market action process, "bondholders' fractional shares are pooled by the nominee . . . [and] sold into the market.  And then the cash that is generated from the sales of those fractional shares is then divided among the bondholders according to the respective fractional bonds that they otherwise would have received."  *Id.* at 22:7-12.  The Oversight Board presented a flowchart at the March Hearing that summarizes this process; it subsequently filed that demonstrative on the Court's public docket. ECF No. 5701.  As the flow chart makes clear, COFINA provided the consideration it owed to creditors when it provided new COFINA bonds to The Bank of New York Mellon for distribution to bondholders.  To the extent that "individual beneficial holders did not receive the, quote, exact amounts that were projected by the plan, that was a function of the fact that the COFINA bond prices traded down subsequent to the issuance, resulting in potentially less cash available when

fractional shares of the bonds . . . were liquidated . . . to provide cash consideration to bondholders." *Id.* at 20:18-24.  In addition, however, rounding cash was "divided up and added to the [bondholders'] distributions."  *Id.* at 22:19-21.

28.     Completing the market action process and distributing the rounding cash took time by individual brokers, but, as the Oversight Board has explained, at the conclusion of these processes, bondholders received "what they were entitled to receive pursuant to the plan or within pennies of it based upon the trading that took place with the sale of the fractional shares," *Id.* at 22:25-24:2.  Accordingly, like all other bondholders, Hein should ultimately have received "within pennies" of what he was owed pursuant to the COFINA Plan.[7]

iv.     Hein's Contention that COFINA Plan Negotiators Received Improper "Special Benefits" Has Already Been Rejected.

29.     The Response further complains that certain entities who participated in the COFINA Plan negotiation process received improper "special benefits" under the COFINA Plan. Hein takes issue both with the payment of "consummation costs" to certain institutions that negotiated the COFINA Plan, to the provision of certain benefits to Puerto Rico institutions and individuals, and to consideration given to Assured and certain large institutional bondholders. Resp. at 13.  But, each of these issues has already been raised in connection with confirmation of the COFINA Plan, and has already been rejected by this Court.

30.     This Court approved the Consummation Costs received by Assured and other large holders who participated in the negotiations that resulted in the COFINA Plan.  According to the Court's order confirming the COFINA Plan, Consummation Costs were justified because those

---

[7] To the extent Hein contends that the Disclosure Statement did not provide him with adequate information to understand how his expected recovery should be calculated, this, again, is an issue that should have been raised in connection with the Disclosure Statement, *In re VDG Chicken, LLC*, 2011 WL 3299089, at *4 (9th Cir. Bankr. 2011).

parties had "agreed to various conditions and covenants set forth in" the plan support agreement, and were "not being paid . . . on account of . . . Claims against COFINA." Amended Confirmation Memorandum at 32-33. This Court has also approved the COFINA Plan's treatment of Puerto Rico institutions and investors, who were permitted to elect to receive taxable bonds, along with a supplemental 2% cash recovery in lieu of a mix of taxable and tax-exempt bonds. *Id.* at 64. As this Court has already recognized, this provision does not represent an improper boon to Puerto Rico institutions and individuals; on the contrary, it "enhance[s]" recoveries for mainland investors "by maximizing the amount of tax-exempt securities available for such investors." *Id.* at 64.

**C.     Hein's Constitutional and Statutory Arguments Are Likewise Without Merit.**

31.     As noted above, each of the constitutional and statutory objections the Response raises to the COFINA Plan are currently pending on appeal before the First Circuit, and this Court therefore lacks jurisdiction to consider them. But, even if the Court were to determine it has jurisdiction, the Response nevertheless does not assert a valid claim against COFINA, because each of the arguments Hein raises has already been considered—and rejected—by the Court.

   i.     Hein's Takings Clause Claim Has Been Rejected.

32.     The Response contends that the COFINA Plan violates the Takings Clause because it results in the taking of the COFINA bondholders' liens on certain revenues without just compensation. Resp. at 14-17. Moreover, according to the Response, any Takings Clause claim arising from the COFINA Plan cannot be discharged, because *In re City of Detroit*, 524 B.R. 147, 267-70 (Bankr. E.D. Mich. 2014) holds that Takings Clause claims are not dischargeable in bankruptcy.

33.     As this Court has already held, however, the COFINA Plan "contains no provisions that would violate the Takings Clause of the Constitution of the United States." Amended

13

Confirmation Memorandum at 53.  In connection with confirmation of the COFINA Plan, certain bondholders already "argued that the COFINA Plan and Settlement Agreement take bondholder property—specifically, the lien on revenues dedicated to COFINA that secures repayment of the bonds issued by COFINA—without just compensation." *Id.*  This Court rejected those arguments, noting that the COFINA Plan does not "result in the total destruction of the value of the liens securing the existing bonds" "resol[ves ] substantial legal challenges to the structure underlying" the bonds.  *Id.* at 53-54.  Moreover, this Court further held that, pursuant to the terms of the COFINA Plan, the bondholders received valuable consideration that "constitutes just compensation" for any "taking" of bondholder property.  *Id.* at 54.  Because the Amended Confirmation Memorandum has already rejected the Takings Clause arguments raised by the Response, Hein's Takings Clause claim is meritless and should be disallowed.

ii.   Hein's Contracts Clause Claim Has Been Rejected.

34.     The Response further contends that the "New Bond Legislation adopted by the Puerto Rico legislature . . . violates the Contracts Clause."  Resp. at 17.  The Response offers no new factual or legal support for this assertion, and simply cites back to Objection and Second Supplement, both of which were before the Court prior to confirmation of the COFINA Plan. Accordingly, this Court has already considered—and rejected—Hein's Contracts Clause claims as well.  As this Court has already noted, the Contracts Clause "does not make unlawful every state law that conflicts with any contract."  Amended Confirmation Memorandum at 52 (citing *United Auto., Aero., Agric. Impl. Workers of Am. In'l Union v. Fortuño*, 633 F.3d 37, 41 (1st Cir. 2011)).[8]

---

[8] *See also In re City of Stockton, Cal*., 478 B.R. 8, 15 (Bankr. E.D. Cal. 2012) ("It follows, then, that contracts may be impaired in this chapter 9 case without offending the Constitution."); *In re City of Detroit*, Mich., 504 B.R. 191, 195 (Bankr. E.D. Mich. 2013) ("This Court also rejected the objectors' challenges to chapter 9 under the bankruptcy and contract clauses of the United States Constitution").

14

This Court applied the well-recognized two-prong test for evaluating Contracts Clause challenges and assessed, first, "whether the state law has . . . operated as a substantial impairment of a contractual relationship," and if such a substantial impairment has occurred, "whether the impairment was reasonable and necessary to serve an important government purpose." *Id.* Even assuming that the first part of the test was met, the Court held that the New Bond Legislation nevertheless passed muster under the Contracts Clause because it represented a reasonable and necessary "response to the Commonwealth's unprecedented fiscal and economic crisis and the need to resolve litigation concerning the legality of the COFINA structure." *Id.* The Response offers no reason for this Court to depart from the holdings in its Amended Confirmation Memorandum.

iii.    The COFINA Plan Was Confirmed Notwithstanding Hein's Claims Pursuant to the Privileges and Immunities Clause, the Equal Protection Clause, the Due Process Clause, and 48 U.S.C. § 737.

35.    The Response contends that, by offering certain benefits and consideration to residents of Puerto Rico but not to residents of the 50 states, the COFINA Plan violates the Privileges and Immunities Clause, the Equal Protection Clause, the Due Process Clause, and 48 U.S.C. § 737. Each of these arguments was raised in Hein's Objection to confirmation of the COFINA Plan, and the COFINA Plan was confirmed notwithstanding. The Response offers no new factual or legal support not otherwise presented in Hein's prior pleadings.

36.    As the Oversight Board has previously explained, the COFINA Plan does not violate either the Privileges and Immunities Clause, the Equal Protection Clause, the Due Process Clause, or 48 U.S.C. 737. The Privileges and Immunities Clause states that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States," U.S. Const. Art. IV, Sec. 2, Cl. 1, and 48 U.S.C. § 737 extends its protections to residents of Puerto

15

Rico. This clause, however, "does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it." *Toomer v. Witsell,* 334 U.S. 385 (1948). As the Oversight Board has already explained, the additional incentives provided by the COFINA Plan for Puerto Rico residents actually aided mainland residents by enhancing their ability to receive the limited quantity of tax-exempt bonds issued pursuant to the COFINA Plan. *Omnibus Reply of Puerto Rico Sales Tax Financing Corporation to Objections to Second Amended Title III Plan of Adjustment* [ECF No. 4663] at 30. The incentives compensated Puerto Rico residents for the fact that they normally do not pay federal taxes, and without the incentive, may not elect to receive taxable bonds. *Id.* By giving Puerto Rico residents an incentive to elect taxable bonds, the COFINA Plan attempted to make the limited number of tax-exempt bonds more readily available to non-Puerto Rico creditors, including residents of the 50 states, who are otherwise obligated to pay federal taxes and would be obligated to pay such taxes on taxable bonds. *Id.* Since the COFINA Plan's provision of benefits to Puerto Rico institutions and residents merely acknowledged the different tax status that already exists for Puerto Rico residents under federal law—and, in fact, benefited non-residents by enhancing potential recoveries for non-residents—it did not run afoul of the Privileges and Immunities Clause.

37. The COFINA Plan likewise does not violate the Equal Protection Clause. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. Bankruptcy matters are "in the area of economics and social welfare" and, as such, are upheld if supported by a merely "rational justification." *United States v. Kras*, 409 U.S. 434, 446 (1973).[9] "Whether an economic or social

---

[9] *See also Wood v. United States (In re Wood)*, 866 F.2d 1367, 1370–71 (11th Cir. 1989) (classification in bankruptcy withstands equal protection challenge if "any set of facts reasonably may be conceived to justify it"); *Serv. Employees Int'l Union, Local 82 v. D.C. Gov't*, 608 F. Supp.

16

regulation violates the Equal Protection Clause is decided by determining whether the government classification is rationally related to a legitimate government interest." *U.S. Fire Ins. Co. v. Corporación Insular de Seguros*, 853 F. Supp. 47, 49 (D.P.R. 1994) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)). "Courts review the kind of regulation involved, the criteria used in creating the classification and the nature of the government interest." *Id.* The COFINA Plan's classifications—which provided different treatment for Puerto Rico institutions and investors over mainland institutions and investors—have a plainly rational basis: as this Court had already held, these provisions balance the interests of on-island and off-island bondholders, because they "enhance" recoveries for mainland investors "by maximizing the amount of tax-exempt securities available for such investors." Amended Confirmation Memorandum at 64.

38.      The COFINA Plan likewise does not violate the Due Process Clause. The Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. Procedural due process—the only theory of due process violation raised in Hein's various filings—requires only "an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Hodel v. Va. Surface Mineral & Reclamation Ass'n*, 452 U.S. 264, 299 (1981) (citation omitted); *see also In re Pac. Lumber Co.*, 584 F.3d 229, 243 (5th Cir. 2009) (noting that secured credit only has a "minimum level of protection" in the due process clause). Creditors "have no constitutional right to a particular form of remedy" in bankruptcy. *Neblett v. Carpenter*, 305 U.S. 297, 305 (1938). In the plan-confirmation context, due process is met by affording interested parties notice and an opportunity

---

1434, 1439 (D.D.C. 1985) (city only needed to show a "rational relation" between the disparate treatment and purported goal).

to present their objections. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). Title III of PROMESA provides such an opportunity by incorporating into proceedings for the adjustment of debts the relevant procedural framework of the Bankruptcy Code and Rules. *See* PROMESA §§ 301–317, 48 U.S.C. §§ 2161–2177. Hein and other similarly situated creditors have had ample opportunity to be heard throughout the process of confirmation of the COFINA Plan; all told, Hein has tendered six written submissions objecting to his treatment under the COFINA Plan. The COFINA Plan itself was confirmed only after two days of evidence being submitted and argument offered from plan proponents and objectors alike, including Hein. Hein offers no factual or legal argument to contest the fact that these numerous opportunities to participate in the proceedings surrounding the COFINA Plan more than satisfied creditors' procedural due process rights.

iv.    Hein's Claim Pursuant to the First Amendment Has Been Rejected.

39.    The Response contends that the "use of a confidential settlement process" deprived Hein of his "First Amendment right of public access to court proceedings." Resp. at 18. The Response offers no new factual or legal support for this assertion, and instead cites back to the Objection and the Second Supplement, both of which were before the Court prior to COFINA Plan confirmation, as well as the Third Supplement, and the April Supplement. Accordingly, the Court has already considered and rejected Hein's First Amendment claim in its Amended Confirmation Memorandum. As this Court has already held, the mediation process that resulted in the COFINA Plan did not violate the First Amendment because it is "open to all interested participants on terms announced by the Mediation Team, the members of the Mediation Team do not render binding decisions, and all stakeholders with standing have the opportunity to challenge in open adversarial proceedings before the Court any proposals developed in mediation for which judicial approval is

18

sought." Amended Confirmation Memorandum at 43 n.13. Neither the Response nor any of the Supplements it cites offer any reason for the Court to depart from this precedent.

     v.    <u>Hein's Appointment Clause Claim Is Precluded by First Circuit Precedent</u>.

    40.    The Response further contends that, because the Oversight Board was appointed in violation of the Appointments Clause, all of the Oversight Board's actions, including the filing of the Title III proceeding, are void. But, the First Circuit has already rejected the Response's attempt to retroactively nullify the Oversight Board's actions. Although the First Circuit held that the Oversight Board's members' appointments did not conform to the requirements of the Appointments Clause, it declined to declare all the Oversight Board's actions null and void. *Aurelius Investment v. Commonwealth of Puerto Rico*, 915 F.3d 838, 862-63 (1st Cir. 2019).[10] Rather, it recognized that the *de facto* officer doctrine, which "confers validity upon acts performed by a person acting under the color of official title" even if their appointment is deficient, was "especially appropriate in this case." *Id.* Here, the Oversight Board's members were "acting within the color of authority" when they filed Title III petitions, and "there is no indication but that the Board Members acted in good faith in moving to initiate such proceedings." *Id.* In light of these considerations, the First Circuit held that "any otherwise valid actions of the Board"— including the filing of COFINA's Title III petition—remained valid. Any claim Hein seeks to raise pursuant to the Appointments Clause is precluded by this binding precedent.

    vi.    <u>Hein's Conclusory Claim that PROMESA § 2141(b)(1)(N) and § 2174(b)(1), (2), (3), and (6) Have Not Been Complied with Has Already Been Rejected</u>.

    41.    The Response asserts, in conclusory fashion, that PROMESA § 2141(b)(1)(N),

---

[10] Litigation regarding the validity of the members' appointments and the validity of their past acts remains ongoing. *See Aurelius Invs., LLC v. Commonwealth of P.R.,* 915 F.3d 838 (1st Cir. 2019), *cert. granted,* No. 18-1334, 2019 WL 1790539 (U.S. June 20, 2019).

which describes the components of a fiscal plan, and PROMESA § 2174(b)(1), (2), (3), and (6), which describe the components of a confirmable plan of adjustment, "have not been complied with." Resp. at 19.  As support for that assertion, the Response cites numerous pages from Hein's previous Objection and Supplements, none of which attempt to articulate factual or legal support substantiating why the COFINA Plan does comply with PROMESA § 2174, let alone explain how any fiscal plan fails to comply with PROMESA § 2141.  Moreover, Hein's contention that PROMESA § 2141 "ha[s] not been complied with" is expressly barred by PROMESA § 106(e), which deprives the Court of jurisdiction "to review challenges to the Oversight Board's certification determinations." *In re Financial Oversight and Management Board for Puerto Rico*, 327 F. Supp. 3d 364, 371 (D.P.R. 2018).

vii.   Any Liabilities Owed to Hein as a result of the Constitutional and Statutory Claims <u>Have Been Discharged</u>.

42.   Even if Hein were owed any damages as a consequence of his constitutional and statutory claims, those claims would have been discharged upon confirmation and consummation of the COFINA Plan.  Under Bankruptcy Code § 944 (incorporated into PROMESA by PROMESA § 301(a)), a debtor is discharged from all debts as of confirmation, regardless whether a creditor has accepted the plan. 11 U.S.C. § 944; *see also Barraford v. T & N Ltd*., 778 F.3d 258, 261 (1st Cir. 2015) (holding that, in Chapter 11, the debtor "receives a discharge of liability for the claims" upon plan confirmation); 6 COLLIER ON BANKRUPTCY ¶ 944.03 (same in Chapter 9).  The Plan has been confirmed, and Hein has already received the recovery provided for pursuant to the Plan.  He cannot continue to assert a post-confirmation claim for liabilities allegedly incurred prior to discharge.

WHEREFORE COFINA respectfully requests that the Court disallow the remainder of Hein's claim in its entirety.

20

Dated:  July 12, 2019                          Respectfully submitted,
San Juan, Puerto Rico


                                               /s/ Hermann D. Bauer
                                               Hermann D. Bauer
                                               USDC No. 215205
                                               **O'NEILL & BORGES LLC**
                                               250 Muñoz Rivera Ave., Suite 800
                                               San Juan, PR 00918-1813
                                               Tel:  (787) 764-8181
                                               Fax:  (787) 753-8944
                                               Email:  hermann.bauer@oneillborges.com

                                               *Attorneys for the Financial Oversight and*
                                               *Management Board as representative for*
                                               *COFINA*


                                               /s/Martin J. Bienenstock
                                               Martin J. Bienenstock *(pro hac vice)*
                                               Brian S. Rosen *(pro hac vice)*
                                               Jeffrey W. Levitan *(pro hac vice)*

                                               **PROSKAUER ROSE LLP**
                                               Eleven Times Square
                                               New York, NY 10036
                                               Tel:  (212) 969-3000
                                               Fax:  (212) 969-2900

                                               *Co-Attorneys for the Financial Oversight and*
                                               *Management Board as representative for*
                                               *COFINA*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2019, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification to all counsel of record, and all

CM/ECF participants in the case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer