**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.,*<br><br>           Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |

**STATEMENT OF THE QTCB NOTEHOLDER GROUP IN SUPPORT OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S MOTION TO STAY CONTESTED MATTERS PENDING CONFIRMATION OF COMMONWEALTH PLAN OF ADJUSTMENT**

The QTCB Noteholder Group [2] hereby submits this statement (the "Statement") in support

of the *Financial Oversight and Management Board for Puerto Rico's Motion to Stay Contested*

*Matters Pending Confirmation of Commonwealth Plan Of Adjustment* [Dkt. 7640] (the "Stay

Motion").[3]

---

[1]  The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

[2]  The QTCB Noteholder Group shall have the same meaning as set forth in *Notice of Appearance and Request for Notice* [Case No. 17-bk-3283-LTS, Dkt. No. 134] and the *Third Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* [Case No. 17-bk-3283-LTS, Dkt. No. 7659].

[3]  Capitalized terms not defined herein shall have the meaning ascribed to them in the Stay Motion.

1.      On June 16, 2019, the Oversight Board announced that it had entered into a plan support agreement (the "PSA") outlining the terms of a soon-to-be filed plan of adjustment (the "Plan").   The PSA is a major accomplishment and provides a viable path forward for the Commonwealth to exit the PROMESA labyrinth by proposing a settlement of all claims asserted by holders of GO Bonds and PBA Bonds against the Commonwealth and all potential defenses and challenges thereto (whether or not yet asserted), including the GO Bond Objections (as that term is defined in the PSA) (the "Proposed Settlement"). *See* PSA.[4]

2.      Moreover, the Plan will offer holders of disputed GO and PBA Bonds the option of (1) accepting a settlement payment under the Plan or (2) retaining their rights to litigate the validity of their disputed bonds according to procedures established under the Plan and, if successful, receive the same treatment as undisputed GO and PBA Bonds.

3.      Given this significant development, the Oversight Board has requested that the Court stay litigation concerning the GO Bond Objections to permit the confirmation process to proceed in the most efficient manner.  As the Stay Motion set forth in greater detail, such relief is well within the Court's discretion, and fully warranted under the circumstances. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The "inherent authority" to stay proceedings is also recognized by section 105(a) of the Bankruptcy Code, which is expressly incorporated into PROMESA.  *See* PROMESA § 301(a) (48 U.S.C. § 2161(a)); *In re S. Side House, LLC*, 470 B.R. 659, 684 (Bankr. E.D.N.Y. 2012). In deciding whether to grant a stay, a court has "considerable discretion in weighing the competing interests," which include the duration of the stay requested, the conservation of judicial resources, the prejudice faced by the parties if a stay is, or is not, entered, and the public interest. *See, e.g., Ramos-Martir v. Astra Merck, Inc.*, CIV. 05-2038(PG), 2005 WL

---

[4] The PSA has been uploaded to the Oversight Board's website, along with a summary thereof, *see https://oversightboard.pr.gov/documents/.*

Case:17-03283-LTS   Doc#:7966   Filed:07/15/19   Entered:07/15/19 15:58:11   Desc: Main
Document   Page 3 of 8

3088372, at *1 (D.P.R. Nov. 17, 2005); *Total Petroleum P.R. Corp. v. T.C. Oil, Corp.*, CV 09-1105 (JP), 2010 WL 11545626, at *1 (D.P.R. May 7, 2010), *Rivera v. P.R. Tel. Co.*, CIV. 09-1723 (JP), 2009 WL 3160839, at *1 (D.P.R. Sept. 29, 2009) (citing *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977)).   For the reasons stated therein, the arguments of the parties objecting to the Stay Motion should be overruled and the Stay Motion should be granted.[5]

4.	Here, a stay will not prejudice any party.  If a stay is granted, all parties' substantive rights will be preserved, and the stay will terminate after the confirmation process.  The Plan and Disclosure Statement will provide a prompt post-confirmation process for non-settling GO creditors to litigate the validity of their bonds and, if successful, receive the same treatment as undisputed GO bonds.  In the unlikely event that the Plan is not confirmed, the stay would be lifted and the litigation could recommence.

5.	In contrast, continued litigation of the GO Bond Objections will prejudice the Oversight Board, the Commonwealth and every party in interest seeking a way out of bankruptcy for Puerto Rico because it would complicate and undermine the substantial progress toward realizing the twin goals of PROMESA: achieving fiscal responsibility and access to the capital markets.  A litigation hiatus will allow the Plan process to unfold and garner support for confirmation in a stable environment.  It will permit creditors to evaluate the Plan without the

---

[5] *Objection and Reservation of Rights of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. with Respect to Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* [Dkt. No. 7892]; *Official Committee of Unsecured Creditors' Omnibus Objection to (A) Motion to Stay Contested Matters [Docket No. 7640 in Case No. 17-3283 (LTS)] and (B) Motion to Stay PBA Adversary Proceeding [Docket No. 99 in Adv. Proc. No. 18-149 (LTS)] Pending Confirmation of Commonwealth Plan of Adjustment* [Dkt. No. 7899] (the "Committee Objection"); *AMBAC Assurance Corporation's Objection to the Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* [Dkt. No. 7902]; *Objection to Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* filed by the Ad Hoc Group of Constitutional Debtholders [Dkt. No. 7937]; *The Ad Hoc Group of General Obligation Bondholders' Objection to Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* [Dkt. No. 7938].

threat that ongoing litigation will continue to distract and confuse the issues and delay the

confirmation process while substantial litigation costs continue to mount that could be avoided, in

whole or in part, through compromise.  Moreover, the Plan process will provide an opportunity for

creditors to accept the Plan's offers of settlement of the GO Bond Objections, which will narrow

the universe of post-confirmation litigants. Fewer litigants and less litigation should be the goal,

not an increase in both as the objectors unrelentingly demand.

6.        The objections to the *stay* are really ***confirmation objections*** being aired in a

procedurally improper manner. The Stay Motion does not seek approval of the PSA/Plan.  Plan

confirmation objections will be heard in due course, and the requirements for confirmation under

PROMESA and oversight of the Court will assure all parties that no such harm, no matter how

illusory, will befall them.  For example, some objectors cite the fact that current PSA signatories

do not constitute a sufficient majority to confirm a plan as the basis for their imagined harm.

However, the Oversight Board has yet to file—or solicit votes in support of—the Plan, and the

objectors do not claim to hold a blocking position. Creditor support for the Plan will be determined

by the PROMESA solicitation process enacted by Congress.

7.        Objectors similarly claim that the Plan cannot be confirmed because it will

improperly classify—or provide disparate treatment for—similarly situated claims. They falsely

assert that GO and PBA bonds issued before 2012 are subject to the same constitutional challenge

as 2012 and later-issued GO and PBA Bonds. *See, e.g.,* Committee Objection, ¶ 3 [Dkt. No. 7899].

While plan confirmation objections are inapposite here in any event, such statements are patently

untrue and misleading. Third party claims objections are of little consequence here. The Oversight

Board has exclusive authority to settle claims objections through a plan of adjustment[6]—and it has

*not* objected to claims on account of GO or PBA bonds issued before 2012.

8.      It is clear that the objectors dislike details of the Plan that they have seen and they want more from the Commonwealth. They should use the time that the stay will provide to engage in more discussions with the Oversight Board, not more litigation. If they cannot reach compromise, they will have the ability to contest confirmation and ultimately, if the Plan is confirmed, to continue their litigation strategy post-confirmation with all rights reserved if they do not accept the Plan's offer of settlement.

9.      Objectors and all creditors will have an opportunity to analyze the Plan and its Proposed Settlement of the wide ranging and complicated litigations that have been commenced in these PROMESA Proceedings.  They might not ever support a settlement, but it is beyond question that the Oversight Board has perpetual exclusivity to propose a Plan with global settlements and that the confirmation process, including the exercise of creditors' voting rights and judicial oversight by the Court can implement the Proposed Settlement over objectors' dissent.

10.      Whether or not the objecting parties ultimately support the Plan, in drafting the Plan, the Oversight Board already affirmed that it has thoroughly reviewed various arguments, including arguments raised by various objectors in pleadings and in other public and non-public documents, and the Oversight Board has "crafted treatment of claims that *in its exercise of judgment best serves the Commonwealth and its taxpayers and legitimate creditors, taking into account the strength of various arguments and claim objections*." *Objection to Renewed Motion of Ad Hoc Group of General Obligation Bondholders for Entry of an Order Establishing Procedures with*

---

[6] *See Objection to Renewed Motion of Ad Hoc Group of General Obligation Bondholders for Entry of an Order Establishing Procedures with Respect to Omnibus Conditional Objection to Claims*, ¶¶ 5-8 [Dkt. No. 7879].

*Respect to Omnibus Conditional Objection to Claims*, ¶ 9 (emphasis added) [Dkt. No. 7879]. "As a result of its diligence, the Oversight Board has outlined the terms of [the Plan], which if confirmed, would settle the claims relating to pre-2012 "Vintage Bonds" subject to [objections], and potentially reduce the number and face amount of bondholder claims subject to objection." *Id.* ¶ 10. "The Proposed Settlement would require a significant haircut from holders of the Vintage Bonds, far from the 'sweetheart deal' described by the GO Group." *Id.* ¶ 11.

11.     Objectors' efforts to continue litigation and thereby subvert the Proposed Settlement is, in reality, an attempt to undermine the Oversight Board's exclusive right to propose a Plan because any plan of adjustment that succeeds in this case will need to implement settlements of current litigated matters. Absent such plan settlements, it is virtually impossible to see how Puerto Rico could timely realize the goals established by Congress in PROMESA.

12.     Entry of a stay is appropriate to avoid blessing the strategy of the GO Group and the Committee to "weaponize" claim objections as a means to attack any plan of adjustment that they do not support. Whether filing novel "conditional objections" or threatening to "challenge" additional series of bonds in order to undermine the Plan itself (and incorporating such arguments into their stay objections), such tactics, if countenanced, would pervert the voting process and create yet another new wave of litigation to obtain Court authorization to vote notwithstanding the pending claim objection arsenal.

13.     Without any prejudice to the objecting parties, the balance leans heavily in favor of entering a stay. A stay will permit the parties and the Court to focus on resolving the numerous disputes arising out of the Commonwealth's Title III Case and to potentially cut short the enormous time and cost of continuing to litigate such disputes; provide the Oversight Board an opportunity to garner additional support for the PSA; conserve the time and resources of the Court; and assist

the Oversight Board in achieving PROMESA's dual goals of attaining fiscal responsibility for the

Commonwealth and restoring its access to the capital markets.

14.     For the foregoing the reasons and those set forth in the Stay Motion, the QTCB

Noteholder Group supports the Stay Motion and respectfully requests that the relief requested

therein be granted.

Respectfully submitted, in San Juan, Puerto Rico, this 15th day of July, 2019.


*/s/ Kurt A. Mayr*
Kurt A. Mayr (*pro hac vice*)
David L. Lawton (*pro hac vice*)
Shannon B. Wolf (*pro hac vice*)

**BRACEWELL LLP**
City Place I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 256-8534
Email: kurt.mayr@bracewell.com
Email: david.lawton@bracewell.com
Email: shannon.wolf@bracewell.com

*Counsel for the QTCB Noteholder Group*

-and-

*/s/ Roberto Abesada-Agüet*
Roberto Abesada-Agüet
USDC-PR No. 216706
E-Mail: ra@calopsc.com

*/s/ Sergio E. Criado*
Sergio E. Criado
USDC-PR No. 226307
E-Mail: scriado@calopsc.com

**CORREA ACEVEDO & ABESADA LAW OFFICES, P.S.C.**
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R.  00968
Tel. (787) 273-8300; Fax (787) 273-8379

*Co-Counsel for the QTCB Noteholder Group*

**I HEREBY CERTIFY** that on July 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send automatic notifications of such filing to all attorneys of record.

*/s/ Kurt A. Mayr*
Kurt A. Mayr
Bracewell LLP
City Place I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Tel: (860) 254-8534
Email: kurt.mayr@bracewell.com

*/s/ Roberto Abesada-Agüet*
Roberto Abesada-Agüet

*/s/ Sergio E. Criado*
Sergio E. Criado

Centro Internacional de Mercadeo II
#90 Carr. 165 Suite 407
Guaynabo, Puerto Rico 00968-8064
ra@calopsc.com
(787) 273- 8300
