# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------------- X

|  |  |  |
|---|---|---|
| In re: | : |  |
|  | : |  |
| THE FINANCIAL OVERSIGHT AND | : | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | Title III |
|  | : |  |
| as representative of | : | Case No. 17-BK-3283 (LTS) |
|  | : |  |
| THE COMMONWEALTH OF PUERTO RICO *et al.,* | : | (Jointly Administered) |
|  | : |  |
| Debtors. [1] | : |  |

-------------------------------------------------------------------- X

## OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CLAIM OF GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO AGAINST COMMONWEALTH OF PUERTO RICO [CLAIM NUMBER 29,485]

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

JURISDICTION, VENUE, AND STATUTORY BASES ................................................ 2

BACKGROUND ...................................................................................................... 3

GDB PROOF OF CLAIM .......................................................................................... 5

RELIEF REQUESTED .............................................................................................. 7

OBJECTION TO CLAIM ........................................................................................... 7

I.     GDB PROOF OF CLAIM SHOULD BE DISALLOWED UNDER SECTION
       502(D) OF BANKRUPTCY CODE ................................................................ 7

       A.     GDB Received Constructive Fraudulent Transfers .............................. 9

       B.     GDB Received Actual Fraudulent Transfers ...................................... 10

       C.     GDB Received Preferential Transfers ................................................ 12

       D.     Section 702 of GDB Restructuring Act Does Not Preclude Defensive
              Claim Objection Predicated on Section 502(d) .................................. 13

II.    GDB PROOF OF CLAIM SHOULD BE DISALLOWED UNDER SECTION
       502(B)(1) .................................................................................................. 14

       A.     GDB Has Failed to Substantiate Its Claims ...................................... 14

       B.     GDB Proof of Claim Is Subject to Setoff .......................................... 15

III.   LIENS SECURING GDB CLAIMS ARE VOID UNDER SECTION 506(D) .............. 16

RESERVATION OF RIGHTS .................................................................................. 16

CERTIFICATION PURSUANT TO LOCAL BANKRUPTCY RULE 3007-1 ........................ 16

NOTICE ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ASARCO LLC v. Americas Mining Corp.*,
  396 B.R. 278 (S.D. Tex. 2008) ...................................................................................11

*Carmel v. River Bank Am. (In re FBN Food Serv., Inc.)*,
  175 B.R. 671 (Bankr. N.D. Ill. 1994) ........................................................................11

*Commerce Bank of Kansas City, N.A. v. Achtenberg*,
  No. 90–0950–CV–W–6, 1993 WL 476510 (W.D. Mo. 1993) ................................10

*Dean v. Davis*,
  242 U.S. 438 (1917) ...................................................................................................11

*European Am. Bank v. Sackman Mortg. Corp. (In re Sackman Mortg. Corp.)*,
  158 B.R. 926 (Bankr. S.D.N.Y. 1993) .......................................................................12

*Gen. Elec. Credit Corp. v. Murphy (In re Rodriguez)*,
  895 F.2d 725 (11th Cir. 1990) ...................................................................................10

*Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc. (In re Palmdale
  Hills Prop., LLC)*,
  654 F.3d 868 (9th Cir. 2011) .....................................................................................14

*Parker N. Am. Corp. v. Resolution Trust Corp. (In re Parker N. Am. Corp.)*,
  24 F.3d 1145 (9th Cir. 1994) .....................................................................................14

*Rhythms NetConnections v. Cisco Systems Inc. (In re Rhythms NetConnections
  Inc.)*,
  300 B.R. 404 (Bankr. S.D.N.Y. 2003) .......................................................................14

*Tourtellot v. Huntington Nat'l Bank (In re Renegade Holdings, Inc.)*,
  457 B.R. 441 (Bankr. M.D.N.C. 2011) ......................................................................10

*Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*,
  503 B.R. 239 (Bankr. S.D.N.Y. 2013) .......................................................................10

*VFB LLC v. Campbell Soup Co.*,
  482 F.3d 624 (3d Cir. 2007) ......................................................................................10

*In re Werth*,
  37 B.R. 979 (Bankr. D. Colo. 1984), *aff'd*, 54 B.R. 619 (D. Colo. 1985) ...............14

**Statutes**

7 L.P.R.A. § 563 ...................................................................................................12

31 L.P.R.A. §§ 3491-3500 ....................................................................................9

11 U.S.C. § 502(b)(1) .......................................................................................2, 14

11 U.S.C. § 502(d) ...............................................................................2, 8, 13, 14

11 U.S.C. § 506(d) ...............................................................................................16

26 U.S.C. § 3404(b) .............................................................................................11

26 U.S.C. § 6502(a) ...............................................................................................9

28 U.S.C. § 3001, *et seq.* ....................................................................................9

28 U.S.C. § 3304(b) .............................................................................................11

48 U.S.C. §§ 2101-2241 ........................................................................................1

GDB Enabling Act, 1948 P.R. Laws 17, § 15 ....................................................12

*Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No.
    109-2017 ...........................................................................................................4

1957 P.R. Laws 3 .................................................................................................12

The Official Committee of Unsecured Creditors of all Title III Debtors (other than
COFINA) (the "Committee") hereby files this objection (the "Claim Objection") pursuant to
section 502 of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to
these Title III cases by section 301(a) of the Puerto Rico Oversight, Management, and Economic
Stability Act ("PROMESA"),[2] and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules"), made applicable to these Title III cases by section 310 of PROMESA,
requesting entry of an order, substantially in the form attached hereto as **Exhibit A**, disallowing
the proof of claim, filed on May 25, 2018, by the Government Development Bank for Puerto
Rico ("GDB"), Claim Number 29,485 (the "GDB Proof of Claim").[3]  In support of this Claim
Objection, the Committee states as follows:

## PRELIMINARY STATEMENT

1.       In the GDB Proof of Claim, GDB asserted direct and indirect claims against the
Commonwealth totaling in excess of $4.5 billion.  Subsequently, GDB agreed, as part the
settlement that resolved the Committee's objections to GDB's Title VI Qualifying Modification
and certain related transactions, that the indebtedness owed by the Commonwealth to GDB that
was transferred to the Public Entity Trust as part of the GDB restructuring may not be allowed in
excess of $578 million.[4]

2.       The Committee now seeks, under section 502(d) of the Bankruptcy Code,[5] the
complete disallowance of the GDB Proof of Claim (as well as any claims that GDB may file

---

[2]     PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

[3]     Capitalized terms not defined herein have the meanings ascribed to them in the GDB Proof of Claim.

[4]     *See Stipulation Resolving the Objection of the Official Committee of Unsecured Creditors of All Title III
Debtors (Other than COFINA) to the Approval Application* ¶ 13, *In re Gov't Dev. Bank for P.R.*, Case No. 18-
1561-LTS (D.P.R. Oct. 9, 2018) [Docket No. 187] (the "GDB Stipulation").

[5]     11 U.S.C. § 502(d) ("[T]he court shall disallow any claim of any entity from which property is recoverable
under section 542, 543, 550 or 553 of this title . . . unless such entity or transferee has paid the amount, or

against the Commonwealth in the future) in its entirety, because GDB received (a) avoidable fraudulent transfers in the amount of approximately $1.6 billion and (b) preferential transfers in excess of $110 million, none of which (as of the date hereof) GDB have been disgorged to the Commonwealth.[6]

3.        The Committee also objects to the GDB Proof of Claim under section 502(b)(1) of the Bankruptcy Code[7] because the claim is unenforceable against the Commonwealth.  First, GDB has failed to provide sufficient documentation to substantiate its claims against the Commonwealth, despite requests by the Committee that GDB disclose data showing the dates and amounts of actual borrowings or repayments made on the loans that form the basis of the claims asserted in the GDB Proof of Claim.[8]  Second, even if GDB could show that it holds valid claims against the Commonwealth, such claims are subject to the Commonwealth's setoff rights, thus requiring the reduction of the GDB Proof of Claim to the extent of such setoff.

## JURISDICTION, VENUE, AND STATUTORY BASES

4.        The Court has jurisdiction over this Claim Objection pursuant to section 306(a) of PROMESA.

5.        Venue is proper in this district pursuant to section 307(a) of PROMESA.

---

turned over any such property, for which such entity . . . is liable under section 522(i), 542, 543, 550 or 553 of this title.").

[6]     The Committee is filing this Claim Objection at this time because the tolling agreement between the Committee, GDB, the Public Entity Trust, and the GDB Debt Recovery Authority expires on July 15, 2019. While the Committee did not, and does not, concede that section 546(a) of the Bankruptcy Code applies to a defense under section 502(d) of the Bankruptcy Code, the Committee entered into the tolling agreement out of an abundance of caution.

[7]     11 U.S.C. § 502(b)(1) (court shall allow claim except to the extent that "such claim is unenforceable against the debtor and property of the debtor").

[8]     The GDB Proof of Claim's only attachment is an addendum, which contains a list of allegedly outstanding loans and a schedule of loan documents.  The loan documents themselves are not attached to the GDB Proof of Claim.

6.     The statutory bases for the relief sought herein is section 502 of the Bankruptcy Code, made applicable to these Title III cases by section 301(a) of PROMESA, and Bankruptcy Rule 3007, as made applicable to these Title III cases by section 310 of PROMESA.

## BACKGROUND

7.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth by filing a voluntary petition for relief pursuant to section 304(a) of PROMESA. Thereafter, the Oversight Board commenced a Title III case for each of COFINA, ERS, HTA, and PREPA.

8.     On February 15, 2018, the Court entered the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereto* [Docket No. 2521] (the "Bar Date Order"), which set May 29, 2018 as the general deadline for filing proofs of claim against the Debtors.  Subsequently, on May 25, 2018, the Court entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [Docket No. 3160], which extended the general deadline for filing proofs of claim against the Debtors to June 29, 2018.

9.     On May 25, 2018, GDB filed the GDB Proof of Claim.

10.     On August 10, 2018, GDB and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") filed the *Application, Pursuant to Section 601(M)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act, for Approval of the Qualifying Modification for GDB*, thereby commencing a case under Title VI of PROMESA with respect to GDB.  Through the Qualifying Modification and certain transactions related thereto (collectively, the "GDB Restructuring"),[9] GDB sought to effectuate a restructuring of its bonds

---

[9]     *See Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017 (as amended by Act No. 147-2018, the "GDB Restructuring Act").

and other debts.  The Committee objected to the proposed GDB Restructuring through various pleadings filed with this Court.

11.     On October 4, 2018, the Committee, GDB, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and the Oversight Board[10] entered into the GDB Stipulation, which resolved (subject to the approval and consummation of the Qualifying Modification) the Committee's objections to the GDB Restructuring.  The GDB Stipulation was so-ordered by the Court on October 9, 2018.

12.     The GDB Stipulation provides, among other things, that the indebtedness owed by the Commonwealth to GDB that is to be transferred to the Public Entity Trust pursuant to the GDB Restructuring Act "**shall remain subject to allowance** in the Commonwealth's Title III Case, *provided* that such claim may not be allowed in an amount greater than $578 million."[11] The GDB Stipulation further provides that "any rights that the [Committee] may have to object to GDB's claim against the Commonwealth . . . are preserved."[12]  In addition, GDB's solicitation statement with respect to the restructuring of GDB bonds states that "GDB's asserted claim against the Commonwealth . . . is subject to review by parties in interest and, if objected to, subsequent allowance by order of the District Court whether pursuant to an order confirming a plan of adjustment or otherwise."[13]  Moreover, as detailed in the *Informative Motion Regarding Releases Under Article 702 of the GDB Restructuring Act, In re Gov't Dev. Bank for P.R.*, Case

---

[10]   The Oversight Board executed the GDB Stipulation in its capacity as the Administrative Supervisor in the Title VI Case regarding the Government Development Bank for Puerto Rico and in its capacity as representative for the Title III Debtors.

[11]   GDB Stipulation ¶ 13 (emphasis added).

[12]   *Id.* ¶ 18.

[13]   *Declaration of Suzzane S. Uhland, Esq. in Support of the Application of the Governmental Development Bank for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority, Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act, for Approval of the Qualifying Modification for GDB*, Ex.O (Solicitation Statement, dated August 9, 2018) at E-124.

No. 18-1561-LTS (D.P.R. Sept. 17, 2018) [Docket No. 151] (the "Informative Motion"), the Deed of Trust for the Public Entity Trust clarifies the releases to be granted in connection with the GDB restructuring[14] and specifically provides that "**any defense** a Government Entity may have against any claim asserted against it by the Public Entity Trust or GDB" is preserved.[15]

13.     On November 7, 2018, the Court entered the order approving the Qualifying Modification, which order confirmed that the GDB Stipulation was "valid, binding, and enforceable."[16] The Qualifying Modification was consummated on November 29, 2018.[17]  As a result, the GDB Stipulation became effective on that day as well.

### GDB PROOF OF CLAIM

14.     The GDB Proof of Claim asserts (a) purported direct claims (the "Direct Claims") against the Commonwealth related to certain loans made in favor of the Commonwealth and Commonwealth Entities in the amount of not less than $2,231,033,108 and (b) purported indirect claims (the "Indirect Claims") against the Commonwealth related to certain loans made in favor of agencies, municipalities, and public corporations of the Commonwealth in the amount of $2,313,527,449, allegedly payable from legislative appropriations to be made by the Commonwealth's Legislative Assembly.

15.     As part of the GDB Proof of Claim, GDB also included an addendum listing the various amounts allegedly owed by the Commonwealth and other entities on account of the

---

[14]   Informative Mot. ¶¶ 6-9.

[15]   *Id.* ¶ 10 (emphasis added).  As the Informative Motion further notes, "the Government Entities are not releasing . . . their right to defend themselves against any claims asserted by . . . GDB." *Id.* ¶ 9.

[16]   *Findings of Fact, Conclusions of Law, and Order Approving Qualifying Modification for the Government Development Bank for Puerto Rico Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* ¶ 40, *In re Gov't Dev. Bank for P.R.*, Case No. 18-1561-LTS (D.P.R. Nov. 7, 2018) [Docket No. 270].

[17]   *See Informative Motion Regarding the Closing Date, In re Gov't Dev. Bank for P.R.,* Case No. 18-1561-LTS (D.P.R. Nov. 29, 2018) [Docket No. 276].

Direct Claims and Indirect Claims.  The addendum notes that "$169,438,038 of the principal balance of the Commonwealth Loans are backed by the good faith, credit and taxing power of the Commonwealth."[18]  The addendum further notes that the amounts outstanding under certain loans are secured claims.

16.     With respect to the Indirect Claims, the addendum states that the Indirect Claims are payable from legislative appropriations to be made by the Commonwealth Legislative Assembly, and that the Indirect Claims are asserted "as a precautionary measure and pursuant to the applicable loan documentation and law."[19]  While the addendum lists the loan agreements and notes related to the Direct Claims, it does not contain such a schedule of documents for the Indirect Claims.

17.     No loan documents are attached to the GDB Proof of Claim itself, though copies of certain loan documents have been provided to the Committee.  The Committee has requested documents or other evidence as to amounts actually lent pursuant to the loan agreements and notes listed in the GDB Proof of Claim, as well as evidence of amounts repaid.  To date, none have been provided.

18.     Following the effective date of the Qualifying Modification, a portion of the GDB Proof of Claim was transferred to the GDB Debt Recovery Authority (the "Recovery Authority") and another portion of the GDB Proof of Claim was transferred to the Public Entity Trust.[20]  In particular, GDB transferred to the Recovery Authority the portion of the GDB Proof of Claim related to (a) approximately $169.4 million in outstanding principal amount of General

---

[18]     Addendum to GDB Proof of Claim at 2.

[19]     *Id.* at 3.

[20]     *See Joint Motion to Clarify Transfer of Claim* [Docket No. 5628].  By its *Motion to Inform Transfer of Claim*, dated January 29, 2019 [Docket No. 4970], AmeriNational Community Services, LLC, as servicer for the Recovery Authority, informed the Court that it is authorized to pursue and enforce the Recovery Authority's rights and remedies in any legal proceeding.

Obligation loans extended by the GDB to the Commonwealth and (b) the Commonwealth's

guaranty of approximately $225.5 million in outstanding principal amount of Port of the

Americas Authority bonds.  The portion of the GDB Proof of Claim transferred to the Public

Entity Trust includes the other Direct Claims asserted in the GDB Proof of Claim in the

aggregate principal amount of approximately $926.9 million.[21]

## RELIEF REQUESTED

19.     By this Claim Objection, the Committee seeks entry of an order, pursuant to

section 502 of title 11 of the Bankruptcy Code made applicable to these Title III cases by section

301(a) of PROMESA, Bankruptcy Rule 3007, made applicable to these Title III cases by section

310 of PROMESA, and Local Bankruptcy Rule 3007-1, made applicable to these Title III cases

by the Case Management Procedures, disallowing the GDB Proof of Claim in its entirety.

## OBJECTION TO CLAIM

20.     The Committee objects to and seeks disallowance of the GDB Proof of Claim:

(1) under section 502(d) of the Bankruptcy Code, because GDB received avoidable fraudulent

and preferential transfers; and (2) under section 502(b)(1) of the Bankruptcy Code, because the

GDB Proof of Claim is unenforceable against the Commonwealth given (a) GDB's failure to

provide adequate documentation to support its claim and (b) the Commonwealth's setoff rights

against GDB.

## I.     GDB Proof of Claim Should Be Disallowed Under Section 502(d) of Bankruptcy Code

21.     Pursuant to section 502(d) of the Bankruptcy Code:

> the court **shall** disallow any claim of any entity from which property is
> recoverable under section 542, 543, 550 or 553 of this title . . . unless such

---

[21]  The transfer documentation between the GDB, the Public Entity Trust, and the Recovery Authority does not
address the remaining portion of the GDB Proof of Claim, namely the Indirect Claims, which appears to remain
with GDB.

> entity or transferee has paid the amount, or turned over any such property,
> for which such entity . . . is liable under section 522(i), 542, 543, 550 or
> 553 of this title.[22]

In other words, section 502(d) "requires disallowance of a claim of a transferee of a voidable

transfer *in toto* if the transferee has not paid the amount or turned over the property received as

required under the sections under which the transferee's liability arises."[23]

22. Here, section 502(d) requires the disallowance of the GDB Proof of Claim

because GDB has not returned to the Commonwealth the approximately $1.6 billion in

fraudulent transfers it received and for which it is liable pursuant to section 544 of the

Bankruptcy Code and non-bankruptcy fraudulent transfer law.[24]  Specifically, the approximately

$1.6 billion in fraudulent transfers are avoidable (a) under section 3304 of the FDCPA, which,

similar to section 548(a)(1) of the Bankruptcy Code, allows for the avoidance of constructive and

actual fraudulent transfers and (b) under the so-called paulian cause of action in the Puerto Rico

Civil Code.[25]  In addition, as detailed below, GDB is also the recipient of more than $110 million

---

[22]   11 U.S.C. § 502(d) (emphasis added).

[23]   4 Collier on Bankruptcy ¶ 502.05[1] (16th 2018).

[24]   In this respect, it is important to emphasize that, as the Oversight Board's investigator concluded, the Title III
Debtors are not limited by the two-year lookback period under section 548 of the Bankruptcy Code, but that,
pursuant to section 544(b) of the Bankruptcy Code, they can utilize non-bankruptcy fraudulent transfer law to
avoid transfers going back as far as ten years.  FINANCIAL OVERSIGHT &MANAGEMENT BOARD FOR
PUERTO RICO, Independent Investigator, Final Investigative Report at 509-11 (Aug. 20, 2018)
(https://drive.google.com/open?id=19-lauVo3w9MPS03xYVe0SWhQin-Q6FEf) (the "Kobre & Kim Report").
One such non-bankruptcy law is the Federal Debt Collections Procedure Act (the "FDCPA"), which allows the
IRS to collect a taxpayer's tax liabilities from transferees of the taxpayer's property if the taxpayer made a
fraudulent transfer to or for the benefit of the transferee.  28 U.S.C. § 3001, *et seq.*  As the Oversight Board's
investigator found, the IRS is a creditor here, having filed proofs of claim against the Commonwealth, HTA, and
PREPA.  Kobre & Kim Report at 511.  The FDCPA, which largely tracks the requirements for constructive and
fraudulent transfers found in section 548 of the Bankruptcy Code, provides for a six-year look-back period.  *Id.*
§ 3306(b).  In addition, the IRS (and, by extension, the Title III Debtors) can also utilize any applicable state
fraudulent transfer laws to avoid fraudulent transfers going back ten years.  26 U.S.C. § 6502(a).

[25]   31 L.P.R.A. §§ 3491-3500 (allowing for the rescission of, among other things, contracts executed in fraud of
creditors and "[p]ayments made, while in a state of insolvency, by a debtor on account of obligations, which at the
time of making, the debtor could not be compelled to fulfill.").

in preferential transfers made by the Commonwealth to GDB during the year prior to the

Commonwealth's petition date.

### A.      GDB Received Constructive Fraudulent Transfers

23.      More than half of the net proceeds from the Commonwealth's issuance of general

obligation bonds in 2014 (the "2014 GO Bonds") were used to repay lines of credit extended by

GDB to the Commonwealth (approximately $1.15 billion) and the Public Building Authority (the

"PBA") (approximately $450 million).[26]  These transfers of 2014 GO Bond proceeds appear to

have been constructively fraudulent as to GDB.  Specifically:

- These transfers were clearly made for GDB's benefit because the transfers were made to repay debts owed to GDB.

- The Commonwealth did not receive reasonably equivalent value in exchange for these transfers.  As numerous courts have recognized, a parent entity does not receive reasonably equivalent value for transfers made to a subsidiary when the subsidiary is insolvent, as such transfers do not increase the value of the parent's equity interest in the subsidiary.[27]  Here, GDB and the PBA were both undercapitalized, if not insolvent, at the time of the transfers.[28]

- The Commonwealth was also undercapitalized, if not insolvent, when these transfers were made.  It is no defense that the Commonwealth was able to access the capital markets with the 2014 GO Bond offering.

---

[26]   As detailed in the Kobre & Kim Report, approximately $1.9 billion of the 2014 GO Bond proceeds were earmarked for the repayment of lines of credit with GDB and for deposit to the Redemption Fund.  Kobre Kim Report at 107.  Approximately $234.9 million of that amount were deposited into the Redemption Fund.  Of the remaining amount, *i.e.*, $1,661.1 million, the Commonwealth used (a) $459.4 million to reduce PBA's lines of credit (as noted above), (b) $1,107.5 million to reduce its own lines of credit with GDB, and (c) $94.1 million for working capital.  *See* Commonwealth's Quarterly Report dated July 17, 2014, at 32.

[27]   *See Gen. Elec. Credit Corp. v. Murphy (In re Rodriguez)*, 895 F.2d 725, 728 (11th Cir. 1990) (holding that a parent company's payments on an insolvent subsidiary's loan were not in exchange for reasonably equivalent value when the parent received no economic benefit); *Commerce Bank of Kansas City, N.A. v. Achtenberg*, No. 90–0950–CV–W–6, 1993 WL 476510, *4 (W.D. Mo. 1993) (finding that the subsidiary's insolvency at the time of the transaction "erased any presumption of reasonably equivalent value"); *Tourtellot v. Huntington Nat'l Bank (In re Renegade Holdings, Inc.)*, 457 B.R. 441, 445 (Bankr. M.D.N.C. 2011) (finding that transfers to an insolvent subsidiary are not entitled to a presumption of indirect benefit going to reasonably equivalent value).

[28]   The Oversight Board's position is that GDB was insolvent beginning in 2014.  *See Objection of Financial Oversight and Management Board to Official Committee of Unsecured Creditors' Motion for Order Granting Derivative Standing to Act on Behalf of Title III Debtors for Certain Limited Purposes and Other Related Relief with Respect to Restructuring of Government Development Bank for Puerto Rico* ¶ 48 n.14 [Docket No. 3959].

Courts have rejected such a "market test" defense where, as here, the true financial condition of the issuer was not disclosed to the investing public.[29]  As revealed in the Kobre & Kim Report, a high-ranking GDB official expressed concern over the truthfulness of certain public statements made by GDB at the time.[30]

## B.    GDB Received Actual Fraudulent Transfers

24.    The transfers of 2014 GO Bond proceeds to GDB to pay off Commonwealth and PBA lines of credit were not just constructively fraudulent, but actually fraudulent as well. Importantly, actual fraudulent intent does not require a showing of criminal intent to defraud. Indeed, no showing of intent to defraud is required; an intent to hinder or delay creditors is sufficient.[31]  Moreover, the requisite intent can be demonstrated (including under the FDCPA) through certain "badges of fraud."[32]

25.    Here, several badges of fraud are present, including that:

- the transfers were made to or for the benefit of insiders (GDB and the PBA);

- the Commonwealth did not fully disclose the extent of its financial distress and the retention of bankruptcy counsel by GDB prior to the 2014 GO Bond issuance;

- the Commonwealth was undercapitalized, if not insolvent, at the time; and

---

[29]    *See*, *e.g.*, *Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 300 (Bankr. S.D.N.Y. 2013) (finding that "the assumption of market efficiency" in connection with an IPO was "overcome" by omissions in the IPO disclosures related to significant environmental liabilities); *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 633 (3d Cir. 2007) ("**Absent some reason to distrust it**, the market price is a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses.") (emphasis added) (internal quotation omitted).  Here, of course, the market did not know that GDB had hired bankruptcy counsel to draft a bankruptcy statute several months before the 2014 GO Bond issuance.  Kobre & Kim Report at 106.

[30]    Kobre & Kim Report at 105 ("then-high ranking official within GDB suggested [in an internal email] that the [GDB] spokeperson's statement was 'false' and should be reframed").

[31]    The relevant fraudulent intent is the "actual intent to hinder, delay, *or* defraud" creditors.  28 U.S.C. § 3304(b) (emphasis added).

[32]    *See* 26 U.S.C. § 3404(b) (in determining actual intent to hinder, delay, or defraud a creditor, consideration may be given to a list of factors, including insider relationships and insolvency) (emphasis added).  As the statute indicates ("among other factors"), the list of badges of fraud is not exhaustive.

- the transfers occurred in connection with the incurrence of substantial debt ($3.5 billion of additional GO Bonds).[33]

26.     Even the repayment of an antecedent debt of the Commonwealth itself, if done (as here) in contemplation of bankruptcy, is "an element upon which fraud [in the transfer of debtor property] may be predicated."[34]

27.     Furthermore, given that GDB controlled every significant aspect of the Title III Debtors' various bond offerings,[35] it is GDB's intent (not the Commonwealth's) that governs.[36] As detailed in the Kobre & Kim Report, GDB abused its position as a lender to the Title III Debtors by increasing their debt load in a way that benefitted GDB as a creditor of the Commonwealth relative to other Commonwealth creditors.[37]  But GDB's officers and directors had another, more personal reason for orchestrating a bond issuance to pay off debts owed to

---

[33]     While the repayment of the Commonwealth's own lines of credit with GDB with proceed from the 2014 GO Bond offering may have constituted "value" to the Commonwealth (as it was the repayment of an antecedent debt), the actual fraudulent intent analysis does not require a showing that the transferor received less than reasonably equivalent value.

[34]     *Dean v. Davis*, 242 U.S. 438, 444 (1917) ("[W]here the advance is made to enable the debtor to make a preferential payment with bankruptcy in contemplation, the transaction presents an element upon which fraud may be predicated.  The *fact* that the money advanced is actually used to pay a debt does not necessarily establish good faith;" affirming lower court's decisions that the debtor mortgaged his property with the purpose and intent of hindering, delaying, or defrauding his creditors).

[35]     Kobre & Kim Report at 71 (characterizing GDB as a "traffic cop" that "intermediated all of the [Title III Debtors'] bond issuances," deciding "which of the Puerto Rico-Related Entities would issue their bonds [] and when" and selecting underwriters and law firms for those issuances).

[36]     *See ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 369 (S.D. Tex. 2008) ("Most courts recognize that when a transferee is in a position to dominate or control the debtor's disposition of the property, the transferee's intent to hinder, delay, or defraud will be imputed to the debtor/transferor."); *Carmel v. River Bank Am. (In re FBN Food Serv., Inc.)*, 175 B.R. 671, 686 (Bankr. N.D. Ill. 1994), *aff'd sub nom. In re FBN Food Servs., Inc.*, 185 B.R. 265 (N.D. Ill. 1995), *aff'd and remanded sub nom. In re FBN Food Servs., Inc.*, 82 F.3d 1387 (7th Cir. 1996) ("To protect the assets of a Debtor from actions taken by insiders, courts recognize that when a transferee is in a position to dominate or control the debtor's disposition of property, the transferee's intent to hinder, delay, or defraud will be imputed to the debtor/transferor."); *European Am. Bank v. Sackman Mortg. Corp. (In re Sackman Mortg. Corp.)*, 158 B.R. 926, 938 (Bankr. S.D.N.Y. 1993) ("Moreover, where the transferee is in a position to dominate or control the debtor's disposition of his property, the transferee's intent to hinder, delay, or defraud creditors may be imputed to the debtor to render the transfer fraudulent within section 548(a)(1) without respect to the actual purpose of the debtor transferor.").  Here, the Oversight Board's investigator has concluded that GDB controlled the debt offering process for Puerto Rico governmental entities.

[37]     Kobre & Kim Report at 72 ("GDB's provision of short-term cash injections to certain Puerto Rico-Related Entities while they waited to access the capital markets appears to have increased the debt load of certain Puerto Rico-Related Entities, in a way that arguably had the effect of benefitting GDB as creditor relative to others.").

GDB; namely, GDB's officers and directors were facing potential criminal liability for allowing

GDB to accept deposits while insolvent.[38]

28.  In short, the 2014 GO Bond offering was orchestrated, in large part, to prop up

GDB's balance sheet (for the benefit of GDB's directors and officers) by hindering or delaying

(if not defrauding) other Commonwealth creditors.

### C.  GDB Received Preferential Transfers

29.  During the year prior to the Commonwealth's Title III petition date (i.e., May 3,

2017), and at a time that the Commonwealth was insolvent, GDB received more than $110

million in preferential transfers from the Commonwealth (the "Preferential Transfers").

30.  The foregoing transfers were made to or for the benefit of GDB, which was, at all

relevant times, a creditor of the Commonwealth as well as an insider of the Commonwealth.  On

information and belief, these transfers were made for or on account of an antecedent debt owed

by the Commonwealth before such transfers were made.

31.  To the extent that the Commonwealth's general unsecured creditors receive less

than the full value of their allowed claims under a Title III plan of adjustment, as a result of the

Preferential Transfers, GDB received more than it would receive under a plan of adjustment.

Moreover, as a result of the Preferential Transfers, GDB received more than it would have

received if: (i) the Commonwealth's Title III case provided for the liquidation of the

Commonwealth; (ii) the Preferential Transfers had not been made; and (iii) GDB received

payments of its debts to the extent provided by the provisions of the Bankruptcy Code.

---

[38]  *See* GDB Enabling Act, 1948 P.R. Laws 17, § 15, as amended by 1957 P.R. Laws 3 (providing for criminal
penalties, including imprisonment for up to five years, for officers and directors who allow GDB to accept
deposits while insolvent); *see also* 2015 P.R. Laws 97 (amending GDB Enabling Act to remove such criminal
penalties).  The current version of the statute can be found at 7 L.P.R.A. § 563.

32.     Accordingly, the Preferential Transfers are avoidable under section 547 of the Bankruptcy Code.

33.     In the alternative, to the extent that the Commonwealth did not receive reasonably equivalent value in exchange for the foregoing payments, such payments were made without reasonably equivalent value, and, thus are constructively fraudulent transfers under section 548(a)(1)(B) of the Bankruptcy Code.

### D.     Section 702 of GDB Restructuring Act Does Not Preclude Defensive Claim Objection Predicated on Section 502(d)

34.     Because the Claim Objection raises section 502(d) of the Bankruptcy Code merely as a defense to GDB's Proof of Claim, the release of Commonwealth claims against GDB contained in section 702 of the GDB Restructuring Act does not preclude the Committee from objecting to the GDB Proof of Claim.

35.      As explained by GDB and AAFAF in the Informative Motion, the scope of the releases in section 702 of the GDB Restructuring Act is qualified by, among other things, the Public Entity Deed of Trust,[39] which excepts from the releases "**any defense** a Government Entity may have against any claim asserted against it by the Public Entity Trust or GDB."[40] Thus, all defenses to GDB's Proof of Claim are explicitly preserved.

36.     Here, the Claim Objection raises section 502(d) as a **defense** against the claim affirmatively asserted by GDB, and does **not** seek affirmative relief against GDB.  To put it another way, the Claim Objection does not seek the recovery of the $1.6 billion of fraudulent transfers or the more than $110 million of preferential transfers received by GDB, but only the disallowance of GDB's claim against the Commonwealth.  Courts have consistently read and

---

[39]   Informative Mot. ¶ 2.

[40]   *Id.* ¶ 10 (emphasis added).

understood section 502(d) claim objections as defensive in nature,[41] just as they have recognized

the defensive nature of claim objections generally.[42]  Therefore, the Committee is free to raise

section 502(d) as a defense to GDB's claim, regardless of the releases contained in the GDB

Restructuring Act.

## II.   GDB Proof of Claim Should Be Disallowed Under Section 502(b)(1)

37.   Pursuant to section 502(b)(1), a claim shall not be allowed to the extent it is

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law for a reason other than because such claim is contingent or unmatured."[43]  The GDB Proof of

Claim must be disallowed under section 502(b)(1) given GDB's failure to provide adequate

documentation in support of its claim and the Commonwealth's setoff rights against GDB.

### A.   GDB Has Failed to Substantiate Its Claims

38.   The GDB Proof of Claim is also unenforceable because GDB has failed to

provide the documentation required to establish the amount and validity of the claims it asserts

against the Commonwealth.  With respect to its Direct Claims, the Addendum lists two types of

documents—loan agreements and notes—but has asserted claims based on **outstanding**

**amounts** allegedly owed by the Commonwealth.  The list of loan agreements and notes only

---

[41]   *See Parker N. Am. Corp. v. Resolution Trust Corp. (In re Parker N. Am. Corp.),* 24 F.3d 1145, 1155 (9th Cir. 1994) ("[B]y invoking § 502(d), PNA transformed the preference action into an affirmative defense against the RTC's proof of claim."); *Rhythms NetConnections v. Cisco Systems Inc. (In re Rhythms NetConnections Inc.),* 300 B.R. 404, 409 (Bankr. S.D.N.Y. 2003) ("§ 502(d) is in essence an affirmative defense to a creditor's claim against the estate").  In fact, the defensive nature a section 502(d) claim objection **is one of the reasons why courts have held that section 502(d) can be used to assert an affirmative defense to the claim of a creditor even if the avoidable transfer claim underlying the section 502(d) objection is time-barred or otherwise nonrecoverable**.  *See* 4 Collier on Bankruptcy ¶ 502.05[2] (16th 2018) ("Most courts find that there is no prohibition against the trustee's asserting section 502(d) as an affirmative defense to a claim of a creditor even if the trustee's claim is time-barred or otherwise nonrecoverable.").

[42]   *See Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 875 (9th Cir. 2011) ("a claim objection or motion to disallow a claim is generally defensive"); *In re Werth*, 37 B.R. 979, 987 (Bankr. D. Colo. 1984), *aff'd*, 54 B.R. 619 (D. Colo. 1985) ("the debtor is in a defensive position in an objection to claim proceeding").

[43]   11 U.S.C. § 502(b)(1)

14

provides information regarding the total amounts agreed to be lent under lines of credit and the existence of a promise to repay, but provides *no information regarding the amounts that were actually extended under the loan agreements or the amounts that have already been repaid*. Therefore, there is no way to validate the amounts actually outstanding with respect to the Direct Claims.  Nor is any documentation provided to substantiate the allegation that no less than $169,438,038 of the principal balance of the Commonwealth Loans are backed by the good faith, credit and taxing power of the Commonwealth.

39.    With respect to its Indirect Claims, GDB has not even provided a schedule of documents with its proof of claim.  Thus, not only is there no way to validate outstanding amounts, there is also no way to verify, for example, the nature of the Commonwealth's liability with respect to these claims against non-Commonwealth entities, or whether these Indirect Claims are in fact payable from legislative appropriations.

40.    Given the lack of supporting documentation, the entire amount in the GDB Proof of Claim is unsubstantiated and unenforceable with respect to both Direct Claims and Indirect Claims, and, therefore, the GDB Proof of Claim should be disallowed under section 502(b)(1) of the Bankruptcy Code.[44]

**B.    GDB Proof of Claim Is Subject to Setoff**

41.    The GDB Proof of Claim should also be disallowed to the extent that it is subject to the Commonwealth's right of setoff, including on account of any litigation claims (including in connection with the $1.6 billion of fraudulent transfers received by GDB), Commonwealth deposits at GDB, and other Commonwealth claims against GDB.  Thus, GDB's claims against the Commonwealth must be reduced by the required setoff amount.

---

[44]    In addition, the Bar Date Order establishes that each proof of claim must, among other things, set forth with specificity the legal and factual basis for the asserted claim and include a copy of the documentation supporting the claim or a summary of such documentation.  Bar Date Order ¶ 12.

### III.    Liens Securing GDB Claims Are Void Under Section 506(d)

42.    Under section 506(d) of the Bankruptcy Code, a secured creditor's lien is voided to the extent such creditor's secured claim is not allowed.[45]  As discussed above, the GDB Proof of Claim asserts a secured claim against the Commonwealth, yet must be disallowed pursuant to multiple provisions in section 502 of the Bankruptcy Code.  Therefore, any liens securing GDB's claims must be voided.

### RESERVATION OF RIGHTS

43.    The Committee reserves its right to object to (a) the GDB Proof of Claim on any additional grounds at a later date (to the extent the GDB Proof of Claim is not disallowed in its entirety as a result of this Claim Objection) and (b) any other proof of claim on any grounds whatsoever at a later date.

### CERTIFICATION PURSUANT TO LOCAL BANKRUPTCY RULE 3007-1

44.    The claimant, Government Development Bank for Puerto Rico, is not a service member.  Nor are the other two holders of portions of the GDB Proof of Claim, *i.e.*, the Recovery Authority and the Public Entity Trust, service members.

### NOTICE

45.    Notice of this Objection has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (v) the official committee of retirees; (vi) the insurers of the bonds issued or guaranteed by the Debtors; (vii) counsel to certain ad hoc groups of holders of bonds

---

[45]    11 U.S.C. § 506(d) ("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.").

issued or guaranteed by the Debtors; (viii) counsel identified in the GDB Proof of Claim; (ix)
counsel to the Public Entity Trust; (x) counsel to the Recovery Authority; and (xi) all parties that
have filed a notice of appearance in the Title III Cases.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit A** granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: July 15, 2019

*/s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. (Pro Hac Vice)
Nicholas A. Bassett, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

18