# **EXHIBIT A**

**EXHIBIT A**

```
                    UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION


IN RE:  CITY OF DETROIT,        .      Docket No. 13-53846
        MICHIGAN,               .
                                .      Detroit, Michigan
                                .      January 16, 2014
                 Debtor.        .      2:00 p.m.
. . . . . . . . . . . . . . . . .


                            BENCH OPINION
              BEFORE THE HONORABLE STEVEN W. RHODES
              UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:      Jones Day
                     By:  GREGORY SHUMAKER
                     51 Louisiana Avenue, N.W.
                     Washington, D.C.  20001-2113
                     (202) 879-3768

                     Jones Day
                     By:  CORINNE BALL
                     222 East 41st
                     New York, NY  10017-6702
                     (212) 326-7844

                     Pepper Hamilton, LLP
                     By:  ROBERT S. HERTZBERG
                     4000 Town Center, Suite 1800
                     Southfield, MI  48075-1505
                     (248) 359-7333

For UBS and Bank     Warner, Norcross & Judd, LLP
of America           By:  SCOTT WATSON
Merrill Lynch:       111 Lyon Avenue, NW - Suite 900
                     Grand Rapids, MI  49503
                     (616) 752-2465

For UBS AG:          Bingham McCutchen, LLP
                     By:  JARED R. CLARK
                     399 Park Avenue
                     New York, NY  10022-4689
                     (212) 705-7770
```

APPEARANCES (continued):

| | |
|---|---|
| For Syncora Holdings, Ltd., Syncora Guarantee, Inc., and Syncora Capital Assurance, Inc.: | Kirkland & Ellis, LLP<br>By: WILLIAM E. ARNAULT<br>300 North LaSalle<br>Chicago, IL 60654<br>(312) 862-3062 |
| For Detroit Retirement Systems- General Retirement System of Detroit, Police and Fire Retirement System of the City of Detroit: | Clark Hill, PLC<br>By: JENNIFER K. GREEN<br>500 Woodward Avenue, Suite 3500<br>Detroit, MI 48226<br>(313) 965-8300<br><br>Clark Hill, PLC<br>By: ROBERT D. GORDON<br>151 South Old Woodward, Suite 200<br>Birmingham, MI 48009<br>(248) 988-5882 |
| For Erste Europaische Pfandbrief-und Kommunalkreditbank Aktiengesellschaft in Luxemburg, S.A.: | Ballard Spahr, LLP<br>By: VINCENT J. MARRIOTT, III<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103-7599<br>(215) 864-8236 |
| For David Sole: | Jerome D. Goldberg, PLLC<br>By: JEROME D. GOLDBERG<br>2921 East Jefferson, Suite 205<br>Detroit, MI 48207<br>(313) 393-6001 |
| For Financial Guaranty Insurance Company: | Williams, Williams, Rattner & Plunkett, PC<br>By: MARK R. JAMES<br>380 N. Old Woodward Ave., Suite 300<br>Birmingham, MI 48009<br>(248) 642-0333 |
| For Ambac Assurance Corporation: | Arent Fox, LLP<br>By: CAROLINE TURNER ENGLISH<br>1717 K Street, NW<br>Washington, DC 20036-5342<br>(202) 857-6178 |
| For FMS Wertmanagement: | Schiff Hardin, LLP<br>By: RICK FRIMMER<br>233 South Wacker Drive, Suite 6600<br>Chicago, IL 60606<br>(312) 258-5573 |

3

```
APPEARANCES (continued):

For Detroit Retired    Lippitt O'Keefe, PLLC
City Employees         By:  RYAN C. PLECHA
Association,           370 East Maple Road, 3rd Floor
Retired Detroit        Birmingham, MI  48009
Police and Fire        (248) 723-6263
Fighters Associa-
tion, Shirley V.
Lightsey, and
Donald Taylor:




Court Recorder:        Letrice Calloway
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1   whether the disclosure by the emergency manager allowed the
2   city to take advantage of its statutory opportunity to
3   propose an alternative.  Here the Court concludes that the
4   disclosures that the city made to City Council, especially as
5   they pertained to the proposed interest rates, were
6   sufficient to permit it to evaluate the loan and for the City
7   Council to go out into the marketplace to attempt to obtain
8   an alternative.  Accordingly, the Court concludes that there
9   was substantial compliance with PA 436, and this objection is
10  overruled.
11          It is next asserted that the city has not adequately
12  explained the uses of the loan proceeds.  In the Court's
13  view, this objection overlaps with the question of the
14  conditions that the Court has determined must be placed on
15  the loan.  The problem arises because the record is
16  contradictory on what the proceeds of this loan would be used
17  for.  In recognition of the limitations on the use of gaming
18  revenues under state law, some evidence suggests that the
19  city will use the proceeds for, quote, "quality of life,"
20  close quote, purposes.  Other evidence, however, suggests
21  that the proceeds will simply be working capital.  The city
22  contends that even if gaming revenue is provided as security,
23  the limitations of the Gaming Act do not apply because
24  Section 364 authorizes this Court to approve the loan without
25  regard for any state law limitations.  The Court rejects this

26

1  view of its authority under Section 364 and concludes that
2  any offer of security for a loan under Section 364 must
3  comply with state law unless, of course, Section 364
4  expressly provides otherwise.  As the city points out, the
5  Court can, under Section 364, give a senior or priming lien
6  to existing liens which might be or would be in derogation of
7  state law; however, nothing in Section 364 suggests that a
8  Court can allow a municipality to use its property in
9  violation of state law.  The Court does conclude that
10 offering gaming revenue as security for a loan would comply
11 with the Gaming Control Act but only if the proceeds of the
12 loan that are so secured are used as limited by state law.
13 Accordingly, if this loan is secured by gaming revenues, the
14 proceeds must be used for the purposes identified in the
15 Gaming Act.  The Court must caution the city here, however.
16 While the Act does permit the use of gaming revenues to
17 improve quality of life in the city, that authorization
18 cannot be applied so broadly that it effectively eliminates
19 the statutorily imposed limitations.  Specifically, nothing
20 in the Act authorizes proceeds to be used for working
21 capital.  To enforce this state statutory limitation, the
22 Court will condition this approval on a process by which the
23 city gives 14 days' written and filed notice of its intent to
24 use the proceeds during which interested parties can object
25 on the grounds that the proposed use is not consistent with

1  the Gaming Act.  The Court would then schedule a prompt
2  hearing and promptly resolve the objection.  Consistent with
3  Section 904, however, the Court will not review any aspect of
4  the use of the proceeds other than its compliance with the
5  Gaming Act.
6          In the alternative, of course, subject to Barclays'
7  approval, the city could use as security other property for
8  this loan such as other revenue streams that carry with them
9  no such restrictions under state law.  In that event, the
10 Court -- excuse me.  In that event, the process that the
11 Court outlined would not be necessary and would not be
12 imposed.
13         The Court further cautions the city that if it does
14 decide to pursue only the quality of life loan at this time,
15 it may want to consider whether under state law it is
16 necessary to present the revised loan to the City Council
17 under PA 436 and to the Emergency Loan Board for its
18 approval.  This caution, however, is not intended to be a
19 ruling on this issue.
20         Finally, the Court will overrule the objection that
21 this loan should be approved only in the context of plan
22 confirmation.  The city has determined out of necessity to
23 pursue this loan now.  Section 364 of the Bankruptcy Code
24 certainly permits the city to do that.  Under Section 904 it
25 is not for this Court to review the city's political and