**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>　　　　Debtors.[1] | PROMESA<br>Title III<br><br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**REPLY TO OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO JOINT MOTION OF CERTAIN ADVERSARY DEFENDANTS SEEKING ENTRY OF AN ORDER AUTHORIZING PARTICIPATION IN DETERMINATION OF CONSTITUTIONAL VALIDITY OF CHALLENGED BONDS
AND
OPPOSITION TO URGENT MOTION FOR STAY OF ADVERSARY PROCEEDING SUPPLEMENTAL TO PENDING MOTION TO STAY GO BOND PROCEEDINGS PENDING CONFIRMATION OF COMMONWEALTH PLAN OF ADJUSTMENT**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................2
CERTIFICATION ............................................................................................................................5
ARGUMENT ....................................................................................................................................5
    A.    The Interests of the Adversary Defendants in the GO Bonds Objection
           Litigation Establish Their Right to Participate ........................................................5
    B.    The Adversary Defendants Simply Seek an Opportunity to Participate in
           the GO Bonds Objection Litigation .........................................................................8
    C.    The Adversary Proceeding Should Move Forward on Issues Not
           Implicated by the Question of Bond Validity .........................................................9
CONCLUSION ................................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re ACEMLA De P. R. Inc.*,
  No. 17-02021, 2019 WL 311008 (Bankr. D.P.R. Jan. 22, 2019)...............................................7

*In re Johns-Manville Corp.*,
  36 B.R. 743 (Bankr. S.D.N.Y. 1984)..........................................................................................8

*Nolan v. City of L. A.*,
  No. CV 03-2190 GAF, 2014 WL 66416 (C.D. Cal. Jan. 8, 2014) ..........................................10

*In re Pub. Serv. Co. of N. H.*,
  88 B.R. 546 (Bankr. D.N.H. 1988) ............................................................................................7

*In re Savage Indus., Inc.*,
  43 F.3d 714 (1st Cir. 1994)........................................................................................................7

*SEC v. Fraser*,
  No. CM-09-00443-PHX-GMS, 2009 WL1531854 (D. Ariz. Jun. 1, 2009) ...........................10

*SEC v. Oakford Corp.*,
  181 F.R.D. 269 (S.D.N.Y. 1998) .............................................................................................10

**Other Authorities**

7 Collier on Bankr. ¶ 1109.04 (16th ed. 2016) ................................................................................8

Bankruptcy Rule 546(e)....................................................................................................................9

Bankruptcy Rule 3007 ..............................................................................................................1, 4, 8

Federal Rule of Bankruptcy Procedure 2018(a) ............................................................................11

To the Honorable United States District Court Judge Laura Taylor Swain:

The Adversary Defendants,[2] consisting of defendants (defined below) named in the Complaint filed on behalf of the Commonwealth of Puerto Rico by the Financial Oversight and Management Board for Puerto Rico ("FOMB") and the Official Committee of Unsecured Creditors (the "Committee") on May 2, 2019, respectfully submit this (i) Reply in support of their *Joint Motion of Certain Adversary Defendants Seeking Entry of an Order Authorizing Participation in Determination of Constitutional Validity of Challenged Bonds* (ECF No. 7747, the "Motion to Participate" or "Motion")[3] in the proceedings determining the constitutional validity of any series of bonds issued by the Commonwealth of Puerto Rico and its agencies, instrumentalities, or affiliated debtors that are implicated both in the Complaint and the *Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* (ECF. No. 4784, the "GO Bonds Objection") or related constitutional bond validity challenges, and (ii) Opposition to the *Urgent Motion for Stay of Adversary Proceeding Supplemental to Pending Motion to Stay GO Bond Proceedings*

---

[2] The Adversary Defendants consist of the following entities: Barclays Capital Inc.; BMO Capital Markets GKST Inc.; Goldman Sachs & Co. LLC; Jefferies LLC; J.P. Morgan Securities LLC; Merrill Lynch, Pierce, Fenner & Smith Inc. (successor to Banc of America Securities LLC) and Merrill Lynch Capital Services, Inc.; Mesirow Financial, Inc.; Morgan Stanley & Co LLC; RBC Capital Markets, LLC; Samuel A. Ramirez & Co., Inc.; Scotiabank de Puerto Rico; and UBS Financial Services Inc. of Puerto Rico. The Complaint misidentifies various legal entities and incorrectly names as defendants other parties that were not involved in the underwritings or other matters implicated in the Complaint – including but not limited to BMO Capital Markets, Jefferies Group LLC, JPMorgan Chase & Co., BofA Securities and Scotia MSD. The incorrectly named parties, as well as the Adversary Defendants joining this Motion, reserve all rights and defenses relating to Plaintiffs' incorrect identifications in the Complaint, including but not limited to defenses based upon lack of personal jurisdiction.

[3] The Committee filed an opposition to the Motion to Participate, framed as the *Objection of the Official Committee of Unsecured Creditors to Joint Motion of Certain Adversary Defendants Seeking Entry of an Order Authorizing Participation in Determination of Constitutional Validity of Challenged Bonds* (ECF No. 7894, the "Participation Objection").

1

*Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 7882, the "Motion for Stay"). In support of this Reply and Opposition, the Adversary Defendants respectfully state as follows:

## PRELIMINARY STATEMENT

1. FOMB acknowledges in its Motion for Stay that the Adversary Defendants' goal here—as was communicated to FOMB and the Committee when the Adversary Defendants initially reached out for meet and confer discussions—is not to seek 'multiple bites at the apple,' but, rather, that the Adversary Defendants be permitted to participate in the litigation concerning the constitutional validity of the challenged GO Bonds in light of the significant legal and financial interests at stake. The constitutional validity of the challenged GO Bonds may be litigated only once, but is likely to have far-reaching implications in these Title III cases, including with respect to the Adversary Proceeding.[4] *See* Motion for Stay ¶ 7. FOMB further concedes that here, where FOMB and the Committee have sought to funnel all litigation regarding validity of the challenged GO Bonds into one proceeding—*i.e.*, "the inclusive approach embodied by the GO Procedures Order"—the Adversary Defendants ought to have a role in that proceeding. *See id.* ¶ 9. Indeed, FOMB itself has represented that it does not oppose the Adversary Defendants' participation in the GO Bonds Objection. *Id.*

2. The Adversary Defendants agree with FOMB on that score. But the Adversary Defendants further submit—in opposition to the Motion for Stay—that the Adversary Proceeding should be allowed to proceed on other issues, unrelated to the constitutional validity of the

---

[4] On May 2, 2019, Plaintiffs filed a 62-count Adversary Complaint (ECF. No. 6802, the "Complaint") commencing an adversary proceeding against the Adversary Defendants and others for their role in the issuance of several different bond series, including GO bonds issued between 2011 and 2014 (Adv. Proc. No. 19-00280, the "Adversary Proceeding").

2

bonds, that may be dispositive of the Adversary Proceeding or may significantly narrow its scope. Regardless of the ultimate process and forum chosen for resolving the bond validity issue, the Adversary Defendants have the right to seek promptly to eliminate or narrow the issues to be adjudicated in the Adversary Proceeding. Through the coordinated Participation Objection and Motion for Stay, the Committee and FOMB are seeking to sideline the Adversary Defendants, foreclosing participation in the GO Bonds Objection litigation and simultaneously obstructing resolution of claims in the Adversary Proceeding. FOMB and the Committee chose to bring claims challenging the validity of certain GO bonds against the Adversary Defendants and cannot now prevent Adversary Defendants from defending those claims.

3. The Committee, for its part, fails to acknowledge the factual history here—*see* supra ¶ 1—and, instead, argues that the Adversary Defendants have no interest in the resolution of the bond validity issue. Yet the constitutional validity of the GO Bonds is patently fundamental to the Complaint.[5] In fact, a number of the counts in the Complaint turn on whether the issuance of the 2014 GO Bonds exceeded the Constitutional Debt Service Limit. *See* Compl. ¶¶ 47 n.4 (incorporating the GO Bonds Objection, which, *inter alia*, challenges the validity of the GO bonds issued from March 2012 through 2014, into the Complaint); and ¶ 149 (asserting a claim for aiding and abetting breach of fiduciary duty by "underwriting the 2014 GO Bonds, even though they knew or should have known that the Commonwealth's debt obligations exceeded the Constitutional Debt Service Limit").

4. In its Participation Objection, the Committee attempts to obscure this connection by arguing that the Constitutional Debt Service Limit affects only one count of the Complaint,

---

[5] Capitalized terms used but not defined in this Objection shall have the meaning ascribed in the Motion to Participate.

3

and that resolution of that issue "in a vacuum would not dispose of nor resolve any cause of action" against the Adversary Defendants. Participation Obj. ¶ 2. But at least 10 separate counts of the Complaint include foundational allegations substantially similar to Count 1, exposing the Adversary Defendants to significant potential financial liability on the premise that the Adversary Defendants in some fashion contributed to the issuance of constitutionally invalid bonds. For the GO Bond issuances *alone*, the Complaint claims approximately $119 million in damages.[6] The fact that the GO Bonds Objection litigation *may* ultimately be decided on an issue not explicitly raised in the Complaint—the Constitutional Balanced Budget Clause—will not lessen the impact of a Court decision on the GO Bonds' validity.

5. Thus, the Committee's denial that any determination as to the validity of the GO Bonds will have broad implications across multiple adversary proceedings that pertain to the Commonwealth's bond issuances, including the Complaint against the Adversary Defendants, is illogical. Moreover, the Committee recently filed a similar claim objection challenging the validity of the 2011 GO Bonds, thereby expanding the claims and allegations in the Complaint that will be affected by any constitutional validity determination.[7]

6. The Committee also misconstrues the Adversary Defendants' Motion by reading a general reservation of rights with respect to other defenses as an attempt to get multiple bites at the apple. In fact, the opposite is true. A disposition as to the constitutional validity of the challenged bonds will affect the Adversary Defendants, and all that the Adversary Defendants seek is to be heard by the Court when that issue is decided. By the Motion, the Adversary

---

[6] Cmpl. ¶¶ 185, 188, 216, 236, 256, 276, 296, 310, 324, 338.

[7] *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds*. (ECF. No. 7057) ¶ 3.

4

Defendants do not seek more or greater rights with respect to the matters at issue; rather, the focus is to address a concern pertaining to timing and judicial economy: the Adversary Defendants wish to address the very issues raised in the Complaint—which they would have every right to litigate later down the line when the Adversary Proceeding has sufficiently progressed—now. The straightforward reservation of rights sought by the Adversary Defendants is intended simply to protect against an end run around their due process rights to be heard on the issue. Regardless of the forum in which the issue plays out, the Adversary Defendants will be equally affected by any determination of bond validity. The Adversary Defendants agree that the bond validity issue should be litigated only once, but litigation on this central issue should only proceed with proper participation by interested parties.

## CERTIFICATION

7. The Committee suggests that the Adversary Defendants refused to engage in discussions regarding the form of their participation in the GO Bonds Objection litigation. This is false. To the contrary, and as noted in FOMB's Motion to Stay, the Adversary Defendants sought support from FOMB and the Committee for their participation in the GO Bonds Objection litigation, and the parties reached an impasse when the Adversary Defendants would not agree to a stay of the Adversary Proceeding, in connection with those discussions. *See* Motion for Stay ¶ 7.

## ARGUMENT

**A. The Interests of the Adversary Defendants in the GO Bonds Objection Litigation Establish Their Right to Participate**

8. The Committee's Participation Objection is contingent on the misplaced argument that the Adversary Defendants have no articulable interest in the issues being litigated in the GO

5

Bonds Objection. Yet, as fully explained in the Motion, the Complaint and the GO Bonds Objection are inextricably linked. The GO Bonds Objection "seek[s] to disallow the claims" with respect to the 2012-2014 GO Bonds "because the bonds were invalid *ab initio* as violative of the Constitutional Debt Service Limit and the Balanced Budget Clause." Participation Obj. ¶ 4. Importantly, the validity analysis is based on the constitutional debt calculations that must be applied to each of the bond issuances contested in the Complaint. The Committee's claim that the GO Bonds Objection affects "some, but not all" of the claims in the Complaint is incorrect and merely an attempt to minimize the articulable interest of Adversary Defendants. Participation Obj. ¶ 5.[8] And as outlined in the Motion, those same allegations are fundamental to the Complaint's claims that the Adversary Defendants "deepened the Commonwealth's insolvency" by underwriting or otherwise participating in the issuance of the GO Bonds. Even FOMB and the Committee recognize as much, expressly incorporating the GO Bonds Objection wholesale into the Complaint by reference. Compl. ¶ 47 n.4.

9. In an attempt to obscure this clear connection, the Committee disingenuously mischaracterizes the constitutional validity of the bonds as a minor issue in the Complaint, the resolution of which purportedly may have no impact on the resolution of the Adversary Proceeding. However, when the Complaint's allegations are read properly, there can be no serious argument that the Adversary Defendants should be precluded from participating in the GO Bonds Objection litigation. Although the Committee claims that the aiding and abetting allegations in Count 1 are the "only" ones implicating the bonds' validity under the

---

[8] In fact, the Committee makes the *opposite* argument in its objection to FOMB's Motion to Stay contested matters. "There is no justification (and neither the PSA nor the Stay Motions offer any) for the distinction between bonds issued before 2012 and bonds issued in and after 2012." *Official Committee of Unsecured Creditors' Omnibus Objection to (A) Motion to Stay Contested Matters and (B) Motion to Stay PBA Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 7899) ¶ 3.

6

Constitutional Debt Service Limit (Participation Obj. ¶ 2), this ignores the Complaint's broader allegations that "from 2008 through the issuance of the 2014 GO Bonds, the ***Defendants knowingly participated in bond issuances that were unlawful***." Compl. ¶ 47 (emphasis added).

10. The Complaint's numerous claims of rescission and unjust enrichment are also each dependent on allegations that the "underwriters, counsel and other professionals, including the Defendants, earned enormous fees from" the GO Bond issuances. Compl. ¶ 46. The unjust enrichment counts pertaining to the GO Bonds *alone* claim the Adversary Defendants received approximately $119 million in payments and fees that FOMB and the Committee seek to claw back specifically on the basis that the bond series were void *ab initio*.[9]

11. Thus, the Adversary Defendants' legal and pecuniary stake in the outcome of these constitutional validity determinations is certain and significant and fits squarely within the courts' broad construction of "parties in interest" for purposes of these proceedings. *See, e.g.*, *In re Savage Indus., Inc.*, 43 F.3d 714, 720 (1st Cir. 1994) ("The term 'parties in interest' encompasses . . . any entity whose pecuniary interests might be directly and adversely affected by the proposed action."); *In re ACEMLA De P. R. Inc.,* No. 17-02021, 2019 WL 311008, at *13 (Bankr. D.P.R. Jan. 22, 2019) ("The term is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings."); *In re Pub. Serv. Co. of N. H.*, 88 B.R. 546, 550 (Bankr. D.N.H. 1988) (the term parties in interest "is to be construed broadly, in order to allow parties affected by a [bankruptcy] case to appear and be heard").[10]

---

[9] *See* Compl. ¶¶ 185, 188, 216, 236, 256, 276, 296, 310, 324, 338.

[10] See also *In re Johns-Manville Corp.*, 36 B.R. 743, 754 (Bankr. S.D.N.Y. 1984) ("[T]he concept of 'party in interest' is an elastic and broad one designed to give a Court great latitude to insure fair representation of all constituencies impacted in any significant way by a [bankruptcy] case."); 7 Collier on Bankr. ¶ 1109.04 (16th ed.

7

**B.  The Adversary Defendants Simply Seek an Opportunity to Participate in the GO Bonds Objection Litigation**

12.  Given their substantial interest in the common threshold legal issues presented by the GO Bonds Objection, due process and equity require the preservation and vindication of the Adversary Defendants' right to protect their financial and legal interests implicated in that litigation.[11]

13.  Importantly, the Adversary Defendants are seeking to maximize judicial economy, not frustrate it.  As parties facing allegations unequivocally implicating whether the challenged GO Bonds were (or were not) issued in violation of the Constitution of the Commonwealth, the Adversary Defendants want to avoid duplicative proceedings.  Participation in the GO Bonds Objection litigation, or any proceeding that takes up the question of constitutional validity of the challenged bonds, will allow the Adversary Defendants to preserve their rights and protect their substantial legal and financial stake in the resolution of that question.  Even FOMB has recognized that the Adversary Defendants' participation in the GO Bonds Objection is in line with the "inclusive approach" of the GO Procedures Order and furthers judicial efficiency (Motion for Stay ¶ 9), highlighting that the Committee is left to oppose the Motion on its own.

---

2016) ("A fundamental purpose of section 1109(b) is to grant any party with a financial stake in the case the right, at the party's election, to participate…").

[11] The procedures adopted by this Court contemplate that "any party in interest" that wishes to participate may notify the Court of its intent to do so.  *Order, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, Establishing Initial Procedures with Respect to Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Granting Related Relief* (ECF. No. 5143, the "GO Preliminary Procedures Order").  Parties seeking to participate in the GO Bonds Objection litigation may file a "Notice of Participation" by April 16, 2019 or later as may be accepted by the Court upon a showing of good cause.  Because the April 16 deadline had already passed when the FOMB and Committee filed a Complaint putting the Adversary Defendants' legal and pecuniary interests directly at stake, good cause exists for the Court to authorize participation by the Adversary Defendants.  GO Preliminary Procedures Order, Ex. 2 at pp. 2-3.

The Committee cannot be allowed to drag the Adversary Defendants into their dispute with FOMB.

14. As stated in the Motion, the Adversary Defendants anticipate that their participation, at a minimum, will include briefing and argument on the common legal issues central to the Adversary Proceeding and the GO Bonds Objection: whether the GO Bonds were validly issued. Participation is likely to include the development of fact and expert evidence and the preservation of associated appellate rights as well.

    **C.    The Adversary Proceeding Should Move Forward on Issues Not Implicated by the Question of Bond Validity**

15. Although the Adversary Defendants share FOMB's view that the constitutional validity issue should be litigated only once (Motion for Stay ¶ 7), it is also the Adversary Defendants' position that they are entitled to move forward with other bases for resolution of the Complaint, including on grounds that are unrelated to the validity of the bonds. The Adversary Defendants believe that there are case dispositive issues that the Court can address in a motion to dismiss, including, for instance, the unavailability of certain causes of action under Puerto Rico law such as aiding and abetting, limitations on claims arising from Bankruptcy Rule 546(e), the doctrine of *in pari delicto*, and other defenses that call into question the FOMB's and the Committee's claims in the Complaint.

16. The stay requested by FOMB would exacerbate the difficulty of litigating the claims asserted in the Complaint, all of which challenge acts that took place many years, and in some cases more than a decade, ago. *See, e.g.,* Compl. Counts 32-33 (seeking recovery on calendar year 2007 bond issuance). The delay imposed by the stay will create additional difficulties with respect to the availability and memory of witnesses. *See, e.g., Nolan v. City of*

9

*L. A.*, No. CV 03-2190 GAF (AJWx), 2014 WL 66416, at *8 (C.D. Cal. Jan. 8, 2014) (noting significant prejudice from requested continuance where disputed events were eight to thirteen years old). FOMB and the Committee chose to bring these claims, along with nearly a dozen other adversary proceedings filed on May 2, 2019. They cannot now prevent the defense of those claims.

17. The Adversary Defendants have the right to move forward in their defense of allegations brought against them, even as common issues regarding the constitutional validity of the bonds are adjudicated in a separate proceeding. Defendants in a civil case "have a strong interest in being able to defend themselves . . . as quickly as possible." *SEC v. Fraser*, No. CM-09-00443-PHX-GMS, 2009 WL 1531854 at *3 (D. Ariz. Jun. 1, 2009). Interestingly, the Complaint has yet to be served, leaving Adversary Defendants without any discernable timeline for the Adversary Proceeding. FOMB seeks essentially to toll the Adversary Proceeding and leverage the action in order to obtain settlements from the Adversary Defendants, whom are likely viewed as the "deep pockets." FOMB cannot seek to stay an action that it initiated in order to gain a tactical advantage over the Adversary Defendants. *SEC v. Oakford Corp.*, 181 F.R.D. 269, 273 (S.D.N.Y. 1998) (stating that tactical advantage of one party over the other is irrelevant to stay analysis).

18. For all of the foregoing reasons, the Adversary Defendants also plainly qualify as "interested parties" for purposes of Federal Rule of Bankruptcy Procedure 2018(a), to the extent applicable. Participation by the Adversary Defendants in a single proceeding to determine the constitutional validity of the GO Bonds will create greater efficiencies, not undue delay or prejudice as the Committee asserts without support. The Adversary Defendants cannot rely on bondholders to represent the interests of the Adversary Defendants—underwriters of the

challenged GO Bonds—because bondholders may possess different motivations and incentives in the resolution of this question, particularly given the ongoing discussions regarding the proposed plan of adjustment. Given the direct impact on the claims in the Adversary Proceeding, the Adversary Defendants are entitled to represent their own unique interests as underwriters and litigation defendants in connection with the determination of the constitutional validity of the GO Bonds.

## **CONCLUSION**

19. The Adversary Defendants are merely asking to be heard in any process determining the constitutional validity of the GO Bonds and are prepared to litigate the issue in any proceeding that best suits the Court. Not only does their legal and financial stake in the validity of the bonds make their involvement in the GO Bonds Objection litigation necessary, but participation will promote judicial efficiency and avoid the need to relitigate the issue multiple times.

Dated: July 16, 2019

| | |
|---|---|
| SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ, P.S.C. | McCONNELL VALDÉS LLC |
| /s/ Ángel E. Rotger-Sabat<br>Luis N. Saldaña-Román<br>USDC-PR No. 208001<br>Ángel E. Rotger-Sabat<br>USDC-P.R. No. 208601<br>166 Avenida de la Constitución<br>San Juan, Puerto Rico 00901<br>Tel.: 787-289-9250<br>Fax: 787-289-9253<br>E-mail: lsaldana@scvrlaw.com<br>E-mail: arotger@scvrlaw.com<br><br>*Counsel to Morgan Stanley* | /s/ Roberto C. Quiñones-Rivera, Esq.<br>Roberto C. Quiñones-Rivera, Esq.<br>USDC-PR Bar No. 211512<br>270 Muñoz Rivera Avenue<br>Hato Rey, Puerto Rico 00918<br>Telephone: (787) 250-2631<br>Facsimile: (787) 759-9225<br>E-mail: rcq@mcvpr.com<br><br>*Counsel to Barclays Capital Inc., RBC Capital Markets, LLC, Scotiabank de Puerto Rico, and UBS Financial Services Inc. of Puerto Rico* |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | BOBONIS, BOBONIS & RODRIGUEZ POVENTUD |
| /s/ Julie E. Cohen<br>Julie E. Cohen (*Pro Hac Vice*)<br>Four Times Square<br>New York, New York 10036-6522<br>Telephone: (212) 735-3000<br>Facsimile: (212) 735-2000<br>E-mail: julie.cohen@skadden.com<br><br>*Counsel to Morgan Stanley* | /s/ Enrique G. Figueroa-Llinás<br>Enrique G. Figueroa-Llinás<br>USDC No. 201709<br>129 de Diego Ave.<br>San Juan, Puerto Rico 00911-1927<br>Tel: (787) 725-7941<br>Fax: (787) 725-4245<br>Email: efl@bobonislaw.com<br><br>*Counsel for Merrill Lynch, Pierce, Fenner & Smith Inc. (successor to Banc of America Securities LLC) and Merrill Lynch Capital Services, Inc.* |
| ANTONETTI MONTALVO & RAMIREZ COLL | GOODWIN PROCTER LLP |
| /s/ José L. Ramirez-Coll<br>José L. Ramírez-Coll<br>USDC-PR No. 221702<br>P.O. Box 13128<br>San Juan, PR 00908<br>Tel: (787) 977-0312<br>Fax: (787) 977-0323<br>E-mail: jramirez@amrclaw.com<br><br>*Counsel for J.P. Morgan Securities LLC* | /s/ Brian E. Pastuszenski<br>Brian E. Pastuszenski (*Pro Hac Vice*)<br>Charles A. Brown (*Pro Hac Vice*)<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>Telephone: (212) 813-8800<br>Facsimile: (212) 355-3333<br>E-mail: BPastuszenski@goodwinlaw.com<br>E-mail: CBrown@goodwinlaw.com<br><br>*Counsel to Goldman Sachs & Co. LLC* |

| | |
|---|---|
| McGUIRE WOODS LLP | WINSTON & STRAWN LLP |
| /s/ E. Andrew Southerling | /s/ Jennifer L. Malin |
| E. Andrew Southerling (*Pro Hac Vice*) | Jennifer L. Malin (*Pro Hac Vice*) |
| 2001 K Street N.W., Suite 400 | Carrie V. Hardman (*Pro Hac Vice*) |
| Washington, DC 20006-1040 | 200 Park Avenue |
| Telephone: (202) 857-1700 | New York, NY 10166 |
| Facsimile: (202) 857-1737 | Telephone: (212) 294-6700 |
| E-mail: asoutherling@mcguirewoods.com | Facsimile: (212) 294-4700 |
| | E-mail: jmalin@winston.com |
| -and- | E-mail: chardman@winston.com |
| Aaron G. McCollough (*Pro Hac Vice*) | -and- |
| 77 West Wacker Drive, Suite 4100 | Joseph L. Motto (*Pro Hac Vice*) |
| Chicago, IL 60601-1818 | 35 W. Wacker Drive |
| Telephone: (312) 849-8256 | Chicago, IL 60601 |
| Facsimile : (312) 698-4522 | Telephone: (312) 558-5600 |
| E-mail: amccollough@mcguirewoods.com | E-mail: jmotto@winston.com |
| *Counsel for Jefferies LLC and BMO Capital Markets GKST, Inc.* | *Counsel for Merrill Lynch, Pierce, Fenner & Smith Inc. (successor to Banc of America Securities LLC) and Merrill Lynch Capital Services, Inc.* |
| MURPHY & MCGONIGLE PC | CHAPMAN AND CUTLER LLP |
| /s/ Andrew J. Melnick | /s/ James M. Heiser |
| Andrew J. Melnick (*Pro Hac Vice*) | James M. Heiser (*Pro Hac Vice*) |
| Cameron S. Matheson | 111 West Monroe Street |
| Daniel M. Payne | Chicago, IL 60603-4080 |
| 1185 Avenue of the Americas | Telephone: (312) 845-3000 |
| Floor 21 | Facsimile: (312) 701-2361 |
| New York, NY 10036 | E-mail: heiser@chapman.com |
| Telephone: (212) 880-3580 | |
| E-mail: amelnick@mmlawus.com | *Counsel to Mesirow Financial Inc.* |
| E-mail: cmatheson@mmlawus.com | |
| E-mail: dpayne@mmlawus.com | |
| *Counsel to Scotiabank de Puerto Rico* | |

| | |
|---|---|
| KAYSER & REDFERN, LLP | McCONNELL VALDÉS LLC |
| /s/ Leo Kayser III | /s/ Antonio A. Arias-Larcada, Esq. |
| Leo Kayser III (*Pro Hac Vice*) | Antonio A. Arias-Larcada, Esq. |
| 515 Madison Avenue | USDC-PR Bar No. 204906 |
| New York, NY 10022 | 270 Muñoz Rivera Avenue |
| Telephone: 212-935-5057 | Hato Rey, Puerto Rico 00918 |
| E-mail: lkayser@515law.com | Telephone: (787) 250-5604 |
| | Facsimile: (787) 759-9225 |
| *Counsel for Samuel A. Ramirez & Co., Inc.* | E-mail: aaa@mcvpr.com |
| | *Counsel to Samuel A. Ramirez & Co., Inc.* |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | NAVARRO-CABRER LAW OFFICES |
| /s/ Paul J. Lockwood | /s/ Nilda M. Navarro-Cabrer |
| Paul J. Lockwood (*Pro Hac Vice*) | Nilda M. Navarro-Cabrer |
| One Rodney Square | USDC-PR No. 201212 |
| P.O. Box 636 | El Centro I, Suite 206 |
| Wilmington, DE 19899 | 500 Muñoz Rivera Ave. |
| Telephone.: (302) 651-3000 | San Juan, Puerto Rico 00918 |
| Facsimile: (302) 651-3001 | Telephone: (787) 764-9595 |
| E-mail: paul.lockwood@skadden.com | Facsimile: F. 787.764.7575 |
| | E-mail: navarro@navarrolawpr.com |
| *Counsel for UBS Financial Services Inc. of Puerto Rico* | *Counsel to Jefferies LLC and BMO Capital Markets GKST, Inc.* |

| | |
|---|---|
| MORELL, CARTAGENA & DAPENA LLC | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| /s/ Ramón E. Dapena<br>Ramón E. Dapena<br>USDC-PR No. 125005<br>Iván Lladó<br>USDC-PR No. 302002<br>PO Box 13399<br>San Juan, Puerto Rico 00908<br>Telephone: 787.723.1233<br>Facsimile: 787.723.8763<br>Email: ramon.dapena@mbcdlaw.com<br>Email: ivan.llado@mbcdlaw.com<br><br>*Counsel for Goldman Sachs & Co. LLC* | /s/ Robert Stern<br>Robert Stern (*Pro Hac Vice*)<br>Tiffany Rowe (*Pro Hac Vice*)<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Telephone: (202) 339-8400<br>E-mail: RStern@orrick.com<br>E-mail: TRowe@orrick.com<br><br>Lorraine McGowen (*Pro Hac Vice*)<br>The CBS Building<br>51 West 52nd Street<br>New York, NY 10019<br>Telephone: (212) 506-5000<br>E-mail: LMcgowen@orrick.com<br><br>*Counsel for RBC Capital Markets, LLC* |

COTO & ASSOCIATES

/s/ Ramón Coto-Ojeda
Ramón Coto-Ojeda (USDC-PR No. 202006)
Arianna Shokooh-Fermaintt (USDC-PR No. 301406)
MCS Plaza, Suite 800
255 Ponce de León Avenue
San Juan, Puerto Rico 00917
PO Box 71449
San Juan, PR 00936-8549
Telephone: (787) 756-9640
Facsimile: (787) 756-9641
E-mail: rco@crlawpr.com
E-mail: asf@crlawpr.com

*Counsel for Mesirow Financial, Inc.*

15