**Hearing Date:** July 24, 2019

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## AMBAC ASSURANCE CORPORATION'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING PRIFA RUM TAXES

**FERRAIUOLI LLC**

221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

**MILBANK LLP**

55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5770
Facsimile: (212) 822-5770

***Attorneys for Ambac Assurance Corporation***

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 3

I.      Ambac Has Standing to Pursue Rule 2004 Discovery Concerning the Rum Taxes........... 3

II.     Ambac Has Established Good Cause to Pursue Rule 2004 Discovery Concerning
        the Rum Taxes. .......................................................................................... 5

        A.      The "Pending Proceeding" Rule Poses No Barrier to the
                Rum Tax 2004 Motion................................................................... 5

        B.      The Information Sought in the Rum Tax 2004 Motion Is
                Directly Relevant to the Financial Condition of the Debtor
                and Ambac's Bankruptcy Claim. ...................................................... 11

III.    The Rum Producers Should Not Be Permitted to Forestall Any Inquiry Into the
        Commonwealth's Ongoing Transfer of Rum Taxes. ........................................... 13

IV.     The Oversight Board Should Not Be Permitted to Force Rum Tax Discovery Into
        Plan Confirmation Proceedings. ..................................................................... 14

CONCLUSION ..................................................................................................... 15

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re 2435 Plainfield Ave., Inc.*,
    223 B.R. 440 (Bankr. D.N.J. 1998) ...................................................................6, 7

*In re City of Detroit*,
    524 B.R. 147 (Bankr. E.D. Mich. 2014) .................................................................12

*In re Coffee Cupboard, Inc.*,
    128 B.R. 509 (Bankr. E.D.N.Y. 1991).................................................................8, 13

*In re Dinubilo*,
    177 B.R. 932 (E.D. Cal. 1993)...............................................................................6

*In re Drexel Burnham Lambert Grp.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ....................................................................5

*In re Duratech Indus.*,
    241 B.R. 291 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999) ..................6

*In re Gawker Media LLC*,
    No. 16-11700 (SMB), 2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017) ..........13

*In re Hilsen*,
    No. 87–11261 (JMP), 2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ..........12

*In re Int'l Fibercom*,
    283 B.R. 290 (Bankr. D. Ariz. 2002)..........................................................5, 7, 9, 10

*In re M4 Enters., Inc.*,
    190 B.R. 471 (Bankr. N.D. Ga. 1995) ...................................................................11

*In re Martin*,
    403 B.R. 359 (Bankr. D.S.C. 2009) .........................................................................7

*Quadrant Structured Prods. v. Vertin*,
    23 N.Y.3d 549 (2014) ...............................................................................................4

*In re Sunridge Assocs.*,
    202 B.R. 761 (Bankr. E.D. Cal. 1996).....................................................................7

*In re Wash. Mut., Inc.*,
    408 B.R. 45 (Bankr. D. Del. 2009) ....................................................................6, 10

**Statutes**

3 L.P.R.A. § 1913 ........................................................................................................................4

**Other Authorities**

Fed. R. Bankr. P. 2004 ........................................................................................ *passim*

Fed. R. Bankr. P. 7026 ........................................................................................ *passim*

Fed. R. Bankr. P. 9014 ........................................................................................9

Ambac[2] respectfully submits this reply in further support of its Rum Tax 2004 Motion and
in response to the oppositions, objections, and joinders filed by the Oversight Board (Dkt. No.
7891, "OB Br."), AAFAF (Dkt. No.7896), the Official Committee of Unsecured Creditors for All
Title III Debtors ("UCC") (Dkt. No. 7881), Bacardi International Limited and Bacardi Corporation
(together, "Bacardi") (Dkt. No. 7897, "Bacardi Br."), and Destilerias Serrales, Inc. ("Serrales" and,
together with Bacardi, the "Rum Producers") (Dkt. No. 7912).  The Oversight Board and AAFAF
are together referred to herein as "Respondents."  In support of its reply, Ambac states as follows:

## PRELIMINARY STATEMENT

1.     Ambac's Rum Tax 2004 Motion established good cause to conduct an inquiry
pursuant to Rule 2004 into the Commonwealth's treatment of the Rum Taxes.  As the Oversight
Board correctly notes (OB Br. 4), Ambac's requests fall into three basic buckets:  (1) the flow of
funds of the Rum Taxes, (2) the ownership and/or restricted status of the Rum Taxes, and (3) the
apparent transfer of substantial amounts of Rum Taxes to the Rum Producers during the
Commonwealth's Title III case.  Each of these topics is directly germane to the financial condition
of the debtor and Ambac's claim against the Commonwealth.

2.     In response, the Oversight Board and AAFAF regurgitate their challenge to
Ambac's standing (as set forth in their opposition to Ambac's pending Automatic Stay Motion
relating to PRIFA), while also arguing that Ambac lacks good cause to pursue a Rule 2004 inquiry
into the Rum Taxes or, alternatively, that any such discovery should be folded into the plan
confirmation proceedings that are supposedly coming down the pike.  In addition, the Rum

---

[2] All capitalized terms not defined herein are as defined in *Ambac Assurance Corporation's Motion for
Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* (Dkt.
No. 7328, the "Rum Tax 2004 Motion").  Financial Guaranty Insurance Company has joined the Rum Tax
2004 Motion.  *Joinder of Financial Guaranty Insurance Company to Ambac's Motion for Entry of Order
Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* (Dkt. No. 7676).

Producers—apparently threatened by Ambac's interest in understanding the facts and circumstances surrounding their ongoing receipt of the Rum Taxes—have objected as well, advancing arguments concerning the PRIFA structure that they, as non-holders of PRIFA bonds and non-parties to the governing bond documents, have no standing to advance and no basis for understanding, absent coordination with the Commonwealth.  The Rum Producers' appearance and echoing of the Oversight Board and AAFAF's objections, and the disclosure of a lockbox arrangement that appears to have been created to intentionally and artificially grant greater legal protections to expressly subordinate creditors, only underscore the importance of Ambac's questions concerning the Rum Producers' uninterrupted enjoyment of hundreds of millions of dollars in Rum Taxes while PRIFA bondholders are not being paid.  This is especially so when set against the backdrop of the major corruption scandals currently unfolding in Puerto Rico.

3.      In any event, Respondents' objections are without merit.   First, Ambac unquestionably has standing as a creditor of the Commonwealth in respect of the Rum Taxes due to claims arising under the Fifth Amendment to the U.S. Constitution, Section 407 of PROMESA, and the Commonwealth's statutory non-impairment covenant with PRIFA's bondholders under the PRIFA Enabling Act.  Nor does the Trust Agreement pose any impediment to Ambac's standing, as the collective action provision in that agreement does not apply to bond insurers such as Ambac or to the claims Ambac asserted against the Commonwealth in its proof of claim.

4.      Second, Ambac's showing of good cause in its opening brief is not forestalled by the pending proceeding doctrine.  The purpose of that doctrine is to prevent parties to litigation whose requests for discovery have been determined to be beyond the scope of Rule 7026 of the Federal Rules of Bankruptcy Procedure from pursuing the same discovery under Rule 2004 as a workaround.  But there have been no such determinations made in connection with discovery

requests in Ambac's stayed lawsuits relating to "clawback" or in its Automatic Stay Motion—
there are no "discovery parameters" for Ambac to "circumvent."  Even if it were otherwise, the
third and largest bucket of Ambac's requests (concerning transfers to the Rum Producers) are not
at issue in the stayed lawsuits or the Automatic Stay Motion, rendering the pending proceeding
doctrine particularly irrelevant to that category of information.  Moreover, good cause has been
shown for the same reason that Ambac has standing—the information sought relates to the
financial condition of the debtor and Ambac's bankruptcy claim against the Commonwealth.

5.     Third, Respondents' effort to squeeze the "broad examination" authorized by Rule
2004 into forthcoming plan confirmation proceedings should be rejected.  As an initial matter,
there should not be any plan confirmation proceedings at this juncture at all, especially when the
constitutional status of the Oversight Board is an open question before the U.S. Supreme Court,
the Puerto Rico government is in virtual collapse over unfolding ethics, bribery, and other
scandals, and the plan support agreement on which the forthcoming plan of adjustment will be
based requires the proposal of a patently unconfirmable plan.  *A fortiori*, the Oversight Board's
misguided intent to propose such a plan in the near future should not be used as an excuse to delay
Ambac's legitimate inquiry into the Rum Taxes pursuant to Rule 2004.

## **ARGUMENT**

## I.     **Ambac Has Standing to Pursue Rule 2004 Discovery Concerning the Rum Taxes.**

6.     For the same reasons set forth in more detail in its reply in support of the Automatic
Stay Motion, Ambac has standing to pursue the Rum Tax 2004 Motion.

7.     First, the fact that Ambac's interest in understanding the Commonwealth's
treatment of the Rum Taxes is related in some sense to Ambac's PRIFA rum bond exposures does
not mean that "Ambac has no direct relationship with the Commonwealth and is only a creditor of
a Commonwealth creditor."  (OB. Br. 9.)  Ambac's claims against the Commonwealth are not

3

derivative of PRIFA's rights to receive the Pledged Rum Taxes, but rather are direct claims arising under the Fifth Amendment to the U.S. Constitution, Section 407 of PROMESA, and the Commonwealth's non-impairment covenant with PRIFA's bondholders pursuant to the PRIFA Enabling Act.  *See* 3 L.P.R.A. § 1913 ("Covenant of Commonwealth with bondholders").

8.      Nor does the collective action provision in Section 705 of the governing trust agreement between PRIFA and the bond trustee (the "Trust Agreement") pose a barrier to Ambac's standing.  Section 705 only applies to "Holders" of PRIFA bonds, not "Credit Facility" providers, who are defined to include bond insurers such as Ambac.  Indeed, the language immediately preceding Section 705 contains extensive language relating to Credit Facility providers, including in connection with remedial proceedings.  The absence of that term from Section 705 must be interpreted to be deliberate.  *See Quadrant Structured Prods. v. Vertin*, 23 N.Y.3d 549, 560 (2014).  Moreover, Section 705 relates only to actions or proceedings "on any Bond" or for a remedy under the Trust Agreement.  Ambac's claim against the Commonwealth is not "on" the PRIFA bonds— it does not seek payment on those bonds by the Commonwealth—nor does it seek a remedy under the Trust Agreement.  Rather, it seeks to vindicate Ambac's property and statutory rights against the Commonwealth, a non-party to the Trust Agreement.[3]

9.      As for Respondents' suggestion that the Court hold the Rum Tax 2004 Motion in abeyance, the Court should reject Respondents continued efforts to delay discovery into core financial matters.  Although the Court held discovery in connection with the Automatic Stay Motion briefly in abeyance pending briefing and oral argument on standing and secured status,

---

[3] Puzzlingly, Respondents contend that Ambac is somehow collaterally estopped from seeking Rule 2004 discovery because it did not object to or appeal from district court orders staying pre-petition lawsuits relating in part to the Rum Taxes.  (OB Br. 10.)  This is incoherent:  The Rum Tax 2004 Motion is not seeking the kind of relief that Respondents contend Ambac should be collaterally estopped from seeking (a declaration that the automatic stay does not apply to the Rum Taxes).

(*see Order Regarding Argument and Discovery in Connection with Ambac Assurance Corporation's Motion Concerning Application of the Automatic Stay* (Dkt. No. 7420), at 1), the Rule 2004 discovery sought in the Rum Tax 2004 Motion is fundamentally different. The 2004 discovery relates to the financial condition, assets and liabilities of the Commonwealth and Ambac's bankruptcy claim in the Commonwealth's Title III case. Ambac is entitled to Rule 2004 discovery on these topics irrespective of how the Automatic Stay Motion plays out.

## II.   **Ambac Has Established Good Cause to Pursue Rule 2004 Discovery Concerning the Rum Taxes.**

### A.   **The "Pending Proceeding" Rule Poses No Barrier to the Rum Tax 2004 Motion.**

10.   Respondents seek to weaponize the so-called "pending proceeding" doctrine to block any inquiry into the Commonwealth's treatment of the Rum Taxes during these Title III cases. That doctrine—a limited exception to the "broad discovery" afforded by Rule 2004, *In re Int'l Fibercom*, 283 B.R. 290, 291-93 (Bankr. D. Ariz. 2002)—does not apply for two reasons. First, there is no pending adversary proceeding here; at most, there is a pending motion in which Ambac **seeks** (but has not yet been authorized) to pursue certain lawsuits relating to the Rum Taxes. Second, even if there were a relevant pending proceeding, Ambac is not seeking to circumvent the procedural safeguards imposed by Federal Rule of Bankruptcy Procedure 7026 ("Rule 26") or to otherwise obtain discovery to which it would not be entitled under Rule 26.

11.   "The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad." *In re Drexel Burnham Lambert Grp.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). Bankruptcy courts have observed that, unlike discovery in adversary proceedings and other civil litigation, "[a] Rule 2004 exam has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct." *In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 456 (Bankr.

D.N.J. 1998) (collecting cases).  Consistent with its broad purpose, the discovery limitations that ordinarily apply in civil litigation are relaxed.  *In re Duratech Indus.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y.), aff'd, 241 B.R. 283 (E.D.N.Y. 1999) ("That delimited statutory end presumably justifies the open-ended means of discovery under Rule 2004.").

12.     The pending proceeding doctrine is a narrow exception to Rule 2004's broad discovery, and generally applies only when the pending proceeding at issue is an adversary proceeding.  *See, e.g.*, *In re 2435 Plainfield Ave., Inc.*, 223 B.R. at 457 (finding that discovery in the pending adversary proceeding had to be conducted pursuant to the Federal Rules of Civil Procedure).  The underlying motivation of the doctrine is to prevent the procedural protections provided by Rule 26 in an ongoing litigation from being circumvented through contemporaneous use of Rule 2004's more permissive discovery.  *See In re Wash. Mut., Inc.,* 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("The primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure.").  Those protections include the right of witnesses to be represented by counsel, a right to object to irrelevant or improper questions, the right to cross-examination, and the right to have issues defined in advance.  *See In re Dinubilo*, 177 B.R. 932, 939-40 & n. 12 (E.D. Cal. 1993).  The pending proceeding doctrine is intended to preserve "the distinction between the broad fishing expedition-like nature of the Rule 2004 exam . . . and the more restrictive nature of discovery under Fed. R. Bankr. P. 7026-7037."  *In re 2435 Plainfield Ave., Inc.*, 223 B.R. at 456 (citations omitted).

13.     To determine whether a party is seeking to evade the restrictions of Rule 26, a court assessing a pending proceeding objection to Rule 2004 discovery must first determine whether there is in fact a currently pending proceeding to which Rule 26 applies.  *See In re Int'l Fibercom, Inc.,* 283 B.R. at 292-93 (considering whether there is pending litigation and then going on to

6

consider whether discovery is available in that pending proceeding).  The case law is clear that the

kinds of proceedings that conflict with Rule 2004 discovery (to the extent there is substantive

overlap) are *adversary proceedings*.  *See In re 2435 Plainfield Ave., Inc.*, 223 B.R. at 456 (finding

that discovery in the instant adversary proceeding had to be conducted pursuant to the Federal

Rules of Civil Procedure); *see also In re Sunridge Assocs.*, 202 B.R. 761, 762 (Bankr. E.D. Cal.

1996) ("The discovery rules available in adversary proceedings . . . are more restrictive in scope

with respect to requirements of relevance and to protections available."); *In re Martin*, 403 B.R.

359, 362 (Bankr. D.S.C. 2009) (granting Rule 2004 motion where the discovery sought was

different and broader than the adversary proceeding discovery).

14.     Here, Ambac has not brought an adversary proceeding relating to the Rum Taxes.

Rather, Ambac filed certain pre-petition lawsuits in two federal district courts that related (in part)

to PRIFA and the Rum Taxes.  Those three lawsuits were ordered stayed in response to a request

by the Oversight Board in 2017.  The pending proceeding exception to the broad discovery

afforded by Rule 2004 is not intended to apply where the proceeding in question is a stayed lawsuit

that was filed before the bankruptcy case was initiated.  *See In re Int'l Fibercom*, 283 B.R. at 293

(granting Rule 2004 motion where discovery was stayed in pre-petition lawsuits, because applying

pending proceeding doctrine in that circumstance "would be adverse to the purpose underlying the

Bankruptcy Rule 2004" and would perpetuate an "information deficit" created by the stay).

15.     The difference between an adversary proceeding (to which the pending proceeding

doctrine potentially applies) and a pre-petition lawsuit (to which it does not) is significant.  Where

there is a pending adversary proceeding brought in the bankruptcy case, the plaintiff in that

proceeding is typically entitled to discovery into her claims, assuming the claims survive any

threshold challenges.  That discovery, however, is governed by Rule 26.  *See* Fed. R. Bankr. P.

7

7026 ("Rule 26 F.R. Civ. P. applies in adversary proceedings."). The concern is that the plaintiff will seek to use Rule 2004 to obtain information in support of her claims in the adversary proceeding *to which she would not have been entitled under Rule 26*.

16.     That concern is wholly absent where, as here, the allegedly pending proceedings are pre-petition lawsuits that have been ordered stayed by operation of the bankruptcy filing. By definition, there is no discovery in such lawsuits—they have been stayed. Thus, unlike the plaintiff in an adversary proceeding, the plaintiff in the stayed lawsuit is receiving *no information at all*.

17.     Respondents' view is apparently that the stay of the pre-petition litigation is itself a "discovery parameter" that a Rule 2004 examination would necessarily "circumvent." But this argument proves too much; if credited, it would sound the death knell for the "broad discovery" pursuant to Rule 2004 that has been a common feature of bankruptcy proceedings for decades. *See In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is . . . that the rights of the creditor may be preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)). It is completely routine that in the months or weeks before a debtor files for bankruptcy, lawsuits will be filed. It is also routine that, upon the filing of the bankruptcy petition, most such lawsuits will be stayed. And many such lawsuits—which are generally motivated by the debtor's worsening financial condition and/or insolvency—will touch upon topics that are relevant in bankruptcy, including the assets, liabilities, and financial condition of the debtor, as well as creditors' bankruptcy claims against the debtor. *See, e.g.*, *In re Int'l Fibercom*, 283 B.R. at 293 (noting that denying Rule 2004 discovery because of the automatic stay in pending contract dispute litigations would forestall proper Rule 2004 inquiries to "uncover additional claims that may exist for the benefit of the estate"). To read the pending proceeding doctrine as barring Rule 2004 discovery whenever there is overlap between the subjects of the pre-

8

petition lawsuits and matters that are otherwise within the scope of Rule 2004 discovery would render such discovery close to categorically impermissible.  That is plainly not the law.

18.     The only even arguably close call here is with respect to the Automatic Stay Motion, in which Ambac seeks to revive two of the pre-petition lawsuits that were ordered stayed upon the Commonwealth's Title III filing.  Ambac does not dispute that the information sought in the first two categories of requests identified by Respondents—which relate to the flow of funds of the Rum Taxes and the ownership and/or restricted status of those monies—are relevant to the lawsuits Ambac seeks leave to pursue in the Automatic Stay Motion.  It may also be the case that, in connection with the Automatic Stay Motion itself, Ambac requires discovery into those topics to establish why the automatic stay does not apply to the Rum Taxes or, alternatively, why Ambac is entitled to an order lifting the stay.  Neither scenario, however, is currently at issue—discovery is not pending at all, such that there are no Rule 26 parameters to circumvent.

19.     Discovery in the Automatic Stay Motion has been stayed pursuant to this Court's order.  (*See Order Regarding Argument and Discovery in Connection with Ambac Assurance Corporation's Motion Concerning Application of the Automatic Stay* (Dkt. No. 7420).)  If and when that reality changes, the ensuing discovery will presumably be governed by Rule 26 or its equivalent (in the case of a lawsuit) or Federal Rule of Bankruptcy Procedure 9014 (in the case of a contested matter).  It is no more in Ambac's interest to pursue duplicative discovery than it is in the Commonwealth's interest to have to respond to such discovery.

20.     Ambac is also not seeking to evade the procedural restrictions imposed by Rule 26. *See In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) (pending proceeding doctrine applies only when moving party seeks to circumvent procedural safeguards of Rule 26).  Ambac

simply wants the information, and no longer has the luxury of waiting given the plan of adjustment proceedings that the Oversight Board is apparently intent on initiating in the immediate future.

21.    Importantly, however, even if discovery commenced into factual issues relating to the Automatic Stay Motion, or if the Automatic Stay Motion were granted such that Ambac was free to obtain discovery in an alternative forum, a Rule 2004 examination would nonetheless be entirely proper with respect to the third category of requests relating to the Rum Producers.  The information sought with respect to the Rum Producers is not related to the lawsuits contemplated by the Automatic Stay Motion; those lawsuits are targeted at escrowing Rum Taxes that belong to PRIFA and otherwise halting the dissipation of Ambac's collateral.  The information relating to the Rum Producers, by contrast, relates to the financial condition of the Commonwealth, including the assets that are available to it to repay its creditors.  Accordingly, even if the first two categories of requests were to be subjected to Rule 26 once an operative proceeding is "pending," there is no basis for subjecting the Rum Producer inquiry to Rule 26.  *See In re Washington Mut., Inc.*, 408 B.R. at 51 ("[D]iscovery of evidence related to the pending proceeding must be accomplished in accord with more restrictive provisions of the Federal Rules of Bankruptcy Procedure, [but] unrelated discovery should not be subject to those rules simply because there is an adversary proceeding pending."); *see also In re Int'l Fibercom, Inc.*, 283 B.R. at 292 ("Consequently when the Rule 2004 examination relates not to the pending adversary litigation, but to another matter, the 'pending proceeding' rule does not apply."); *In re M4 Enters., Inc.,* 190 B.R. 471, 475 n. 4 (Bankr. N.D. Ga. 1995) (Rule 2004 examination did not relate to the pending adversary proceeding and thus the 'pending proceeding' rule did not apply).

22.    Respondents' pending proceeding argument is further belied by the Oversight Board's agreement to provide flow of funds information to Ambac.  (OB Br. 3, 8.)  Of all the

information sought in the Rum Tax 2004 Motion, that information is the most potentially relevant

to the Automatic Stay Motion.  Indeed, Ambac represented in its Rum Tax 2004 Motion that it

would stand down on its requests for flow of fund information under Rule 2004 if it were provided

with that information in connection with the Automatic Stay Motion.  In offering to provide that

core financial information, the Oversight Board recognizes that it cannot credibly hide behind the

pending proceeding doctrine to avoid discovery here.

### B.   The Information Sought in the Rum Tax 2004 Motion Is Directly Relevant to the Financial Condition of the Debtor and Ambac's Bankruptcy Claim.

23.     In addition to their pending proceeding objection, Respondents argue that much of

the information sought by the Rum Tax 2004 Motion "stray[s] far from the Commonwealth's

financial condition and Ambac's claim." (*Id.* 3-4.)  Specifically, although Respondents appear to

concede the propriety of the first category of requests (concerning flow of funds) (*id.* 8, 21), they

contend that the remaining two (ownership/restricted status of Rum Taxes and Rum Producer

information) are somehow "unrelated" to the financial condition of the debtor or "unnecessary" to

establishing Ambac's PRIFA bond claim (*id.* 14-15).  Neither is true.

24.     First, the notion that the ownership and/or restricted status of the Rum Taxes is

irrelevant to the Commonwealth's financial condition can hardly be taken seriously.  Central to

the financial condition question is, what assets are available to the Commonwealth to repay its

creditors?  Do those Rum Taxes belong to the Commonwealth such that they can used to fund

distributions in a plan, as the recently announced plan support agreement apparently contemplates?

Or are they PRIFA bondholders' collateral such that the Commonwealth's taking of those monies

over the past many years gives rise to a non-dischargeable takings claim? *See In re City of Detroit*,

524 B.R. 147, 270 (Bankr. E.D. Mich. 2014).  As for the hundreds of millions of dollars in Rum

Taxes that have been flowing to the Rum Producers during the pendency of the Title III cases, are

*those* monies available to repay the Commonwealth's creditors?  If so, why have those monies

continued to flow to the Rum Producers while PRIFA, which is statutorily entitled to the "first

proceeds" of the Rum Taxes, is starved of cash?  Does the Commonwealth justify those transfers

on the basis of economics—*e.g.*, that "subsidizing" the Rum Producers is economically stimulative

and results in a net gain for the Puerto Rico economy?  If so, do the economics in fact bear that

out?  These and other questions are plainly within the proper scope of Rule 2004 discovery into

the Commonwealth's financial condition.[4]

25.     The argument that these categories of information are not "necessary" to establish

Ambac's bankruptcy claim against the Commonwealth fares no better.  As an initial matter, there

is no legal requirement that information sought pursuant to Rule 2004 must be necessary to

establishing a bond claim.  Information concerning the financial condition of the debtor is

discoverable under Rule 2004 even if it is not strictly necessary to establish a claim.  *See In re

Hilsen*, No. 87–11261 (JMP), 2008 WL 2945996, at *1 (Bankr. S.D.N.Y. July 25, 2008) (Rule

2004 examination extend to "the acts, conduct, or property and financial condition of the debtor,

or to any matter that may affect the administration of the debtor's estate or the debtor's right to a

discharge"); *In re Coffee Cupboard, Inc.*, 128 B.R. at 514 ("The purpose of a Rule 2004

examination is 'to show the condition of the estate and to enable the Court to discover its extent

and whereabouts, and to come into possession of it[.]'") (quotation omitted)).

26.     Even if there were such a prerequisite, however, Ambac's proof of claim filed in

the Commonwealth's Title III case puts this argument to rest.  There, Ambac asserts a bankruptcy

---

[4] Respondents and the Rum Producers contend that their limited selective disclosure of a single agreement
somehow obviates Ambac's requests for information.  Just the opposite.  The agreement simply highlights
the backroom deals and information that Ambac is seeking discovery of.  It is not up to the Commonwealth
or the Rum Producers, who both appear intent on protecting the current preferred status being afforded to
the Rum Producers, to unilaterally determine what information is relevant.  Factual information that is the
basis of the request cannot be used as a basis to deny the underlying request.

claim against the Commonwealth in respect of the PRIFA bonds based on violations of constitutional rights, Section 407 of PROMESA, and various other statutory and common law sources.  Ambac is entitled to discovery to better understand the factual particulars relevant to, and establish the bases for, those bankruptcy claims.  *See In re Gawker Media LLC*, No. 16-11700 (SMB), 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. June 28, 2017) (showing that information requested is necessary to creditor's claim constitutes good cause to conduct Rule 2004 discovery).

III.    **The Rum Producers Should Not Be Permitted to Forestall Any Inquiry Into the Commonwealth's Ongoing Transfer of Rum Taxes.**

27.    The Rum Producers' appearance in connection with the Rum Tax 2004 Motion is, if not surprising, at least unorthodox.  Typically, third parties objecting to a Rule 2004 motion do so in anticipation that they will be recipients of discovery requests in the examination.  And to be sure, the Rum Producers indicate such concerns here.  But they go further by attempting to amplify Respondents' arguments concerning PRIFA's property rights and the scope of PRIFA bondholders' lien on the Rum Taxes, as well as making factual assertions regarding the flow of the Rum Taxes that, unsurprisingly, seem aimed at protecting their enjoyment of hundreds of millions of dollars in Rum Tax "subsidies" during and after Puerto Rico's bankruptcy proceedings.

28.    It is not clear that the Rum Producers have standing to weigh in on the rights of PRIFA or its bondholders to the Rum Taxes—the Rum Producers do not purport to be holders of PRIFA bonds or in any way subject to the statutory and contractual arrangements between the Commonwealth, PRIFA, and its bondholders.  Moreover, Bacardi's narrative concerning the flow of the Rum Taxes only underscores the absence of sunlight—"the best of disinfectants," according to Justice Brandeis—into these matters.  Reading Bacardi's narrative, one gets the impression that Bacardi and other rum subsidy recipients enjoy an entirely different stream of money from that belonging to PRIFA.  If that were so, it is unclear why Bacardi's subsidy agreement with the

Commonwealth expressly provides that such subsidies can be paid only *after* the rum tax bonds. (*See* Agreement Between Bacardi Int'l Ltd., et al. and the Government of Puerto Rico, et al. § 4.6.1 (attached hereto as Exhibit A).) Bacardi's misleading portrait only highlights the legitimacy and importance of Ambac's inquiry into the transfers of Rum Taxes to the Rum Producers.[5]

## IV. The Oversight Board Should Not Be Permitted to Force Rum Tax Discovery Into Plan Confirmation Proceedings.

29. Respondents' final argument—that Ambac should be forced to wait until plan confirmation proceedings to inquire into the Commonwealth's treatment of the Rum Taxes— should be rejected out of hand. (OB Br. 20.) To be blunt, the Oversight Board has no business filing a proposed plan of adjustment for the Commonwealth under the current circumstances. The First Circuit has ruled that the members of the Oversight Board were unconstitutionally appointed. In October, the U.S. Supreme Court will be hearing argument in that case, including review of whether the First Circuit had the power to extend the *de facto* officer doctrine to the time period post-dating the decision. Meanwhile, the Commonwealth government itself is in the throes of a major corruption scandal, with high-level indictments and officer resignations, ongoing and fast-moving FBI investigations, and rampant speculation that the Governor either will be forced to resign or will be impeached. That the Oversight Board would view these circumstances as an auspicious moment to propose a restructuring of $35 billion in debt defies common sense.

30. In any event, Respondents' proposal gets things backwards. Respondents' position

---

[5] The Rum Producers' objections concerning overbreadth and burden should be disregarded. (Bacardi Br. ¶¶ 11-15; Seralles Br. ¶ 3(a).) Any concerns that requests served on a particular party are overly broad or unduly burdensome can be resolved through negotiation and, if necessary, relief from the Court; they are not a basis to deny the discovery. Nor should the Court entertain the Rum Producers' argument that paragraphs 5 and 6 of Ambac's proposed order improperly shift the burden in objecting to a subpoena. (Bacardi Br. ¶¶ 16-17; Seralles Br. ¶ 3(b).) Permitting the recipients of subpoenas to summarily reject them, then requiring Ambac to pursue a motion to compel, would repeat the very process the parties are undertaking here. Ambac's authorization to pursue discovery into the Rum Taxes should be resolved now, with recipients of discovery requests remaining free to seek relief from the Court, if necessary.

is that Ambac should get discovery relating to the Rum Taxes if, and only if, "the Court determines Ambac has . . . a direct claim relating to the PRIFA rum bonds." (OB Br. 4.) If the Court does so, they reason, Ambac may then pursue "discovery of any factual issues regarding its claim at that time"—*i.e.*, in connection with plan confirmation proceedings. (*Id.*) At the same time, Respondents seek to block any Rule 2004 inquiry because the information is allegedly unnecessary for the establishment of Ambac's claim. Thus, Ambac should not be permitted to conduct a Rule 2004 inquiry into the Rum Taxes because the inquiry is insufficiently tethered to Ambac's claim; the Court should then determine whether Ambac has a claim; and if it does, then Ambac should be allowed to pursue discovery, but only in connection with plan confirmation proceedings. The convenient result is that Rule 2004 itself evaporates altogether. This proposal is of a piece with the Oversight Board's strategy of pushing as many contested issues as possible into plan proceedings—including a wave of adversary proceedings against hundreds of defendants—in a ploy to exert maximum leverage over creditors. The Court should not countenance these tactics.

## CONCLUSION

For the foregoing reasons, Ambac respectfully requests that the Court grant the Rum Tax 2004 Motion and such other and further relief as the Court deems just and proper.

Dated:  July 16, 2019
     San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*

Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
      scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Dennis F. Dunne*

Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5770
Facsimile:  (212) 822-5770
Email: ddunne@milbank.com
      aleblanc@milbank.com
      amiller@milbank.com
      gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this same date a true and exact copy of this notice was filed

with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

_/s/ Roberto Cámara-Fuertes_

Roberto Cámara-Fuertes (USDC-PR No. 219002)