- 1 -

# EXHIBIT 3

- 1 -

Puerto Rico Infrastructure Financing Authority
Special Tax Revenue Bonds, Series 2005A
Special Tax Revenue Bonds, Series 2005B
Special Tax Revenue Refunding Bonds, Series 2005C

## CONTINUING DISCLOSURE AGREEMENT

This Continuing Disclosure Agreement (this "Disclosure Agreement") is executed and delivered by Puerto Rico Infrastructure Financing Authority (the "Authority") and the Commonwealth of Puerto Rico (the "Commonwealth") in connection with the issuance by the Authority of $309,102,577.35 principal amount of its Special Tax Revenue Bonds, Series 2005A, $324,625,000 aggregate principal amount of its Special Tax Revenue Bonds, Series 2005B and $699,235,338.80 aggregate amount of its Special Tax Revenue Refunding Bonds, Series 2005C (collectively, the "Bonds"), pursuant to the provisions of Sections 208 and 209 of that certain trust agreement, dated as of October 1, 1988, as amended (the "Trust Agreement"), by and between the Authority and U.S. Bank Trust National Association, successor trustee.

The Authority and the Commonwealth hereby severally and not jointly covenant and agree as follows:

SECTION 1. <u>Purpose of the Disclosure Agreement</u>. This Disclosure Agreement is being executed and delivered by the Commonwealth for the benefit of the holders and in order to assist the Participating Underwriters in complying with the Rule.

SECTION 2. <u>Definitions</u>. The following terms shall have the following meanings for purposes of this Disclosure Agreement:

"Annual Report" shall mean any Annual Report provided by the Commonwealth pursuant to, and as described in, Sections 3 and 4 of this Disclosure Agreement.

"Dissemination Agent" shall mean the Commonwealth, acting in its capacity as Dissemination Agent hereunder, or any successor Dissemination Agent designated in writing by the Commonwealth and which has filed with the Commonwealth a written acceptance of such designation.

"Fiscal Year" shall mean the twelve-month period at the end of which the financial position of the Commonwealth and results of its operations for such period are determined. Currently, the Commonwealth's Fiscal Year begins July 1 and continues through June 30 of the next year.

"holder" shall mean, for purposes of this Disclosure Agreement, any person who is a record owner or beneficial owner of a Bond.

"Listed Events" shall mean any of the events listed in clause (b)(5)(i)(C) of the Rule.

"MSRB" shall mean Municipal Securities Rulemaking Board.

"National Repository" shall mean any Nationally Recognized Municipal Information Repository for purposes of the Rule.

"Participating Underwriter" shall mean any of the original purchasers of the Authority's Bonds required to comply with the Rule in connection with the offering of such Bonds.

"Repository" shall mean each National Repository and any State Depository.

"Rule" shall mean Rule 15c2-12 adopted by the SEC under the Securities Exchange Act of 1934, as the same may be amended from time to time.

"SEC" shall mean the United States Securities and Exchange Commission.

"State Depository" shall mean any public or private depository or entity designated by the Commonwealth as a state depository for purposes of the Rule.

SECTION 3.   Provision of Annual Reports; Audited Financial Statements.

(a) Not later than 305 days following the end of each Fiscal Year of the Commonwealth, commencing with the Fiscal Year ending June 30, 2005, the Commonwealth shall, or shall cause the Dissemination Agent (if differs from the Commonwealth) to, provide to each Repository an Annual Report which is consistent with the requirements of Section 4 of this Disclosure Agreement. Not later than 10 days prior to said date, the Commonwealth shall provide the Annual Report to the Dissemination Agent (if applicable). In each case, the Annual Report (i) may be submitted as a single document or as separate documents comprising a package, (ii) may cross-reference other information as provided in

-2-

       Section 4 of this Disclosure Agreement, and (iii) shall include the financial statements described in subsection (c).

(b) Not later than 305 days following the end of each Fiscal Year of the Authority, commencing with the Fiscal Year ending June 30, 2005, the Authority shall, or shall cause the Dissemination Agent (if different from the Authority), to provide to each Repository audited financial statements of the Authority relating to such Fiscal Year. Not later than 10 days prior to said date, the Authority shall provide such financial statements to the Dissemination Agent (if applicable).

(c) The annual financial statements of the Commonwealth and the Authority shall be prepared on the basis of generally accepted accounting principles and will be audited. Copies of the audited annual financial statements, which may be filed separately from the Annual Report, will be filed with each Repository when they become publicly available. If the audited annual financial statements have not been previously filed with each Repository when the Annual Report is due, copies of the unaudited financial statements will be filed with the Annual Report.

(d) The Commonwealth expects to provide the information described in Section 3(a) hereof by delivering its first bond official statement for each Fiscal Year that includes its audited financial statements for the most recent fiscal year, or, if no such official statement is delivered by the deadline set forth in said Section 3(a), by delivering its Comprehensive Annual Financial Report by such deadline.

(e) If the Commonwealth fails to provide an Annual Report to each Repository by the date required is Section 3(a) hereof or if the Commonwealth or the Authority fail to file their respective audited annual financial statements with each Repository when they become publicly available, the Commonwealth or the Authority, as appropriate, shall send an appropriate notice to each National Repository or the MSRB, and to any State

-3-

                    Depository, in substantially the form attached hereto as <u>Exhibit A</u>.

    (f)    The Commonwealth further agrees in conjunction withy any amendment pursuant to Section 8 hereof that the annual financial information containing the amended operation data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

SECTION 4. <u>Content of Annual Reports</u>. Each Annual Report required to be filed hereunder shall include, at a minimum, the information referred to in <u>Exhibit B</u> hereto as it relates to the Commonwealth. Any or all of such information may be incorporated by reference from other documents, including official statements containing information with respect to the Commonwealth, which have been filed with each Repository or the SEC. No final official statement may be incorporated by reference in the Annual Report unless it is available from the MSRB. The Commonwealth shall clearly identify each such other document so incorporated by reference.

SECTION 5. <u>Reporting of Listed Events</u>. The Authority will provide in a timely manner to each National Repository or to the MSRB, and to any State Depository, notice of the occurrence of any of the Listed Events, if material.

SECTION 6. <u>Termination of Reporting Obligation</u>. The obligations of the Commonwealth and the Authority under this Disclosure Agreement shall terminate upon the earlier to occur of the legal defeasance or final retirement of the Bonds, and the Authority shall notify the Commonwealth promptly upon the occurrence of either such event.

SECTION 7. <u>Dissemination Agent</u>. The Commonwealth and the Authority, may, from time to time, appoint or engage a Dissemination Agent to assist them in carrying out their respective obligations under this Disclosure Agreement and may discharge any such Dissemination Agent, with or without appointing a successor Dissemination Agent. If at any time there is not any other designated Dissemination Agent, the Commonwealth shall be the Dissemination Agent.

SECTION 8. <u>Amendment</u>. Notwithstanding any other provision of this Disclosure Agreement, the Commonwealth and the Authority may amend this Disclosure Agreement, if (a) the amendment is made in

-4-

connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Authority or the Commonwealth, or type of business conducted; provided, however, this Disclosure Agreement, as amended, would have complied with the requirements of the Rule at the date of the execution and delivery hereof, after taking into account any amendments or change in circumstances, and the amendment does not materially impair the interest of holders, as determined by parties unaffiliated with the Authority or the Commonwealth; and (b) all or any part of the Rule, as interpreted by the staff of the SEC at the date of the adoption of such Rule, ceases to be in effect for any reason, and the Authority or the Commonwealth, as applicable, elects that this Disclosure Agreement shall be deemed amended accordingly.

SECTION 9. <u>Additional Information</u>. Nothing in this Disclosure Agreement shall be deemed to prevent the Authority or the Commonwealth from disseminating any other information, using the means of dissemination set forth in this Disclosure Agreement or any other means of communication, or including any other information in any Annual Report or notice of occurrence of a Listed Event, in addition to that which is required by this Disclosure Agreement. If the Commonwealth chooses to include any information in any Annual Report or if the Authority chooses to include any notice of the occurrence of a Listed Event, not specifically required by this Disclosure Agreement, neither the Authority nor the Commonwealth shall have no obligation to include it in any future Annual Report.

SECTION 10. <u>Default</u>. Any person referred to in Section 11 (other than the Authority or the Commonwealth) may take such action as may be permitted by law against the appropriate public official to secure compliance with the obligations of (a) the Commonwealth, subject to the sovereign immunity provisions of Section 2 of Act No. 104 of the Legislature of Puerto Rico, approved June 29, 1955, as amended (32 L.P.R.A. Section 3077 and Section 3077a) ("Act No. 104"), to file its Annual Report, or (b) the Authority to give notice of a Listed Event or to file its Audited Financial Statements. In addition, holders of the Bonds outstanding may take such remedial actions as may be permitted by the Trust Agreement, subject to the sovereign immunity provisions of Section 2 of Act No. 104, to challenge the adequacy of any information provided pursuant to this Disclosure Agreement, or to enforce any other obligation of the Commonwealth hereunder. A default under this Disclosure Agreement shall not be deemed an event of default under the Trust Agreement or under any applicable resolution, trust agreement or other debt authorization of the Authority or the Commonwealth, and the sole remedy under this Disclosure Agreement

in the event of any failure of the Commonwealth or the Authority to comply herewith shall be an action to compel performance. Subject to the sovereign immunity provisions of Section 2 of Act No. 104, nothing in this Section shall be deemed to restrict the rights or remedies of any holder pursuant to the Securities Exchange Act of 1934, the rules and regulations promulgated thereunder, or other applicable laws.

SECTION 11. <u>Beneficiaries</u>. This Disclosure Agreement shall inure solely to the benefit of the Authority, the Commonwealth, the Participating Underwriters, and holders from time to time of the Bonds, and shall create no rights in any other person or entity. Any assertion of beneficial ownership must be filed with full documentary support.

SECTION 12. <u>Counterparts</u>. This Disclosure Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

PUERTO RICO INFRASTRUCTURE
FINANCING AUTHORITY

Date: June 16, 2005      By: _____
                              Acting Executive Director

COMMONWEALTH OF PUERTO RICO

Date: June 16, 2005      By: _____
                              Secretary of the Treasury

IGM147-334.WPD

-6-

in the event of any failure of the Commonwealth or the Authority to comply herewith shall be an action to compel performance. Subject to the sovereign immunity provisions of Section 2 of Act No. 104, nothing in this Section shall be deemed to restrict the rights or remedies of any holder pursuant to the Securities Exchange Act of 1934, the rules and regulations promulgated thereunder, or other applicable laws.

SECTION 11. <u>Beneficiaries</u>. This Disclosure Agreement shall inure solely to the benefit of the Authority, the Commonwealth, the Participating Underwriters, and holders from time to time of the Bonds, and shall create no rights in any other person or entity. Any assertion of beneficial ownership must be filed with full documentary support.

SECTION 12. <u>Counterparts</u>. This Disclosure Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

PUERTO RICO INFRASTRUCTURE
FINANCING AUTHORITY

Date: June 16, 2005        By:_____
                              Acting Executive Director

COMMONWEALTH OF PUERTO RICO

Date: June 16, 2005        By: _____
                              Secretary of the Treasury

IGM147-334.WPD

EXHIBIT A

## NOTICE OF FAILURE TO FILE ANNUAL REPORT
[AUDITED ANNUAL FINANCIAL STATEMENTS]

COMMONWEALTH OF PUERTO RICO
[PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY]
in connection with
Puerto Rico Infrastructure Financing Authority
Special Tax Revenue Bonds, Series 2005A
Special Tax Revenue Bonds, Series 2005B
Special Tax Revenue Refunding Bonds, Series 2005C

CUSIP NO. _____

Dated: _____, \_\_\_\_\_

NOTICE IS HEREBY GIVEN that the Commonwealth of Puerto Rico [Puerto Rico Infrastructure Financing Authority] has not provided an Annual Report [Audited Annual Financial Statements] as required by Section 3 of the Continuing Disclosure Agreement, which was delivered in connection with the above-named bonds issued on June \_\_, 2005 by Puerto Rico Infrastructure Financing Authority. The Commonwealth [Puerto Rico Infrastructure Financing Authority] anticipates that the Annual Report [Audited Annual Financial Statements] will be filed by _____.

Dated: _____

                                    COMMONWEALTH OF PUERTO RICO
                                    [PUERTO RICO INFRASTRUCTURE
                                    FINANCING AUTHORITY]

                                    By:_____
                                        Secretary of the Treasury
                                          [Executive Director]

**EXHIBIT B**

## CONTENT OF ANNUAL REPORT

Core financial information and operating data for the prior Fiscal Year, including (i) the Commonwealth's audited financial statements, prepared in accordance with generally accepted accounting principles in effect from time to time, and (ii) material historical quantitative data (including financial information and operating data) on the Commonwealth and revenues, expenditures, financial operations and indebtedness generally found or incorporated by reference in the Official Statement relating to the Bonds.