Objection Due Date: July 23, 2019
Reply Due Date: July 25, 2019
Hearing Date: July 30, 2019 at 9:30 a.m. (ADT)

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

----------------------------------------------------------------- X
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
     as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.,* : (Jointly Administered)
:
     Debtors.[1] :
----------------------------------------------------------------- X
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
     as representative of : Case No. 17-BK-4780 (LTS)
:
PUERTO RICO ELECTRIC POWER AUTHORITY : **This filing relates only to**
: **Case No. 17-BK-4780 (LTS)**
:
     Debtor. :
----------------------------------------------------------------- X

**RENEWAL OF JUNE 3, 2019 OMNIBUS MOTION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO COMPEL IN CONNECTION WITH PREPA RSA
<u>RULE 9019 SETTLEMENT MOTION</u>**

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four
(4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto
Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico
Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of
Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case
No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the
Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last
Four Digits of Federal Tax ID: 9686); and  (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy
Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as
Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 4

I.      THE COMMITTEE IS ENTITLED TO DISCOVERY CONCERNING
        FUNDAMENTAL PREMISES OF 9019 MOTION ........................................ 4

II.     RESPONDENTS' RESPONSES TO COMMITTEE'S DISCOVERY
        REQUESTS REMAIN INSUFFICIENT................................................................ 6

        A.      Additional Electronic Communications Beyond Emails from Official
                Email Accounts Should be Produced...................................................... 6

        B.      Key Custodians Should be Included in Discovery ................................ 8

        C.      Government Parties' Deliberative Process Assertions Remain
                Unsupportable ....................................................................................... 9

        D.      Respondents' Common-Interest Privilege Assertions Remain Vastly
                Overbroad ............................................................................................ 11

        E.      AAFAF, PREPA, and their Advisors Must Be Ordered to Complete a
                Thorough Review and Production of Responsive Materials ............... 13

        F.      Committee Should be Allowed to Use Renewed Receiver Motion
                Documents for Discovery Purposes...................................................... 14

        G.      Assured Should be Required to Produce Loss Reserves and Internal
                Valuation Information........................................................................... 15

CONCLUSION.............................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*F.D.I.C. v. Ogden Corp.*,
  202 F.3d 454 (1st Cir. 2000)....................................................................................12

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
  322 F.R.D. 1 (D.D.C. 2017)......................................................................................7

*In re The Financial Oversight and Management Board for Puerto Rico*,
  2019 WL 2636273 (D.P.R. June 27, 2019) (LTS)...................................................12

To the Honorable Magistrate Judge Judith Gail Dein:

Pursuant to the revised scheduling order entered on June 20, 2019 [Dkt. No. 1366] as subsequently modified at the July 11, 2019 pretrial conference, the Official Committee of Unsecured Creditors of all Title III Debtors (the "Committee") hereby submits this renewal of its motion to compel [Dkt. No. 1269] (the "Motion to Compel")[1] in light of additional developments in the litigation of the 9019 Motion (the "Renewed Motion to Compel").  In support of this Renewed Motion to Compel, the Committee respectfully relies upon and incorporates by reference its prior submissions in support of the Motion to Compel [Motion to Compel, Dkt. No. 1269, and Motion to Compel Reply, Dkt. No. 1318], and further states as follows: [2]

## INTRODUCTION

1.     Former Supreme Court Justice Louis Brandeis once wrote: "[s]unlight is said to be the best of disinfectants."[3]  This sentiment has never been more true than it is at this moment in these Title III cases.  In the last few days, several news outlets published nearly 900 pages of an online "group chat" session involving numerous high-ranking Puerto Rico government officials, including the governor himself and one of his top deputies, Christian Sobrino, the leader of AAFAF and the primary negotiator of the RSA.[4]  The group chat, which also included persons who are not government officials, contains numerous embarrassing and disparaging comments relating to official government business and political matters, including comments relating to PREPA.  In the wake of these revelations, several officials, including Sobrino, have resigned from their posts, and pressure has been mounting on the governor to do the same.

---

[1]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion to Compel.

[2]     A revised proposed order is attached hereto.

[3]     Louis Brandeis, What Publicity Can Do, HARPER'S WEEKLY, Dec. 20, 1913, at 10.

[4]     See Ex. 1 (*Top Puerto Rican Officials Resign Over Profanity-Laced Chat*, NYTimes (July 13, 2019), available at https://www.nytimes.com/aponline/2019/07/13/world/americas/ap-cb-puerto-rico-beleaguered-governor.html).

These disclosures, and their consequences, highlight the critical importance of full transparency from government officials, especially those charged with overseeing Puerto Rico's restructuring.

2.     Against this backdrop, it is highly ironic that the Nonproducing Parties seek the opposite of full disclosure when it comes to the 9019 Motion.  They seek to suppress as much information as possible, refusing to produce the exact types of information that would likely be *most* revealing as to the Government Parties' true views and intentions concerning the RSA, the proposed transformation, and other relevant topics.  As discussed in the Motion to Compel, the Nonproducing Parties have, among other things, (i) declined to search for and produce the documents of critical custodians, (ii) categorically refused to search for and produce *any* non-email communications, such as text messages or group chat excerpts (and, moreover, they appear to be searching only their "official" email accounts, and not personal or other accounts), (iii) objected to producing certain categories of relevant information entirely, and (iv) asserted overbroad privileges.  For the reasons discussed in the Motion to Compel, these positions are unfounded.  Recent developments, including not only the recent group chat scandal but also information the Committee has received in discovery, only strengthen the Committee's position.

3.     The Nonproducing Parties will likely contend that the scope of permissible discovery has narrowed in light of the Court's comments at the July 11, 2019 status conference.  Not so.  During the conference, the Court articulated the standard applicable to the 9019 Motion, noting that it must consider whether the settlement falls within the range of reasonableness, which includes an assessment of, among other things, "the probability of success in the litigation being compromised" and "the paramount interest of the creditors and proper deference to their reasonable views."  July 11 Tr. at 8.  The Court further made clear that any and all statements in the Government Parties' declarations are open to discovery, stating, "[i]t's [the Government

Parties'] burden, . . . if you have grounds for attacking their proffer in support of their burden, of course you can explore that.  I have to consider that."  *Id*. at 32.

4.      The justifications that the declarants offer in support of the proposed settlement are sweeping, thus necessitating broad discovery.  The declarations cover a wide range of topics, from macroeconomic issues, such as the impact of the settlement on future electricity rates, to the relationship between the RSA and the proposed PREPA transformation.  For example, the declarants allege that:

- The RSA will not negatively impact Puerto Rico's overall restructuring efforts or impose rates on customers beyond their ability to pay.  *See* Brownstein Decl. ¶ 25 [Dkt. No. 1426] ("repayment of legacy debt [will] not outpace revitalization of the island's overall economy, and in particular the ability of PREPA's customers to pay any increased rates or additional charges required to service restructured PREPA debt.").

- The RSA will facilitate the proposed transformation.  *See, e.g.*, Jaresko Decl.  ¶ 14 [Dkt. No. 1428] (the "benefits accruing to PREPA from the RSA reduce risk to PREPA's future and will also help to facilitate [its] Transformation.").

- The RSA will reduce the likelihood that PREPA will ever re-enter Title III in the future.  *See, e.g.*, Brownstein Decl. ¶ 27.

- The RSA provides for a sustainable level of debt service in an environment involving improved electricity demand.  *See, e.g.*, Jaresko Decl. ¶ 37.

- The RSA will result in a significant decrease in the present value of future debt service, with the amount of the decrease varying depending on "whether ratepayer utilization meets fiscal plan projections or declines by 20%."  Brownstein Decl. ¶ 40.

- Absent the RSA, if the bondholders are successful in their litigation against PREPA, rates may rise without limitation in the future.  *See, e.g.*, *id*. ¶ 45.

- The Administrative Claims, Settlement Payments, and Waiver and Support Fees – which could collectively total nearly a billion dollars – "are intended to reasonably compensate Supporting Holders for agreeing to lock in to plan treatment through an RSA that will have lasted at least two years, and the significant delay in any debt service."  *Id*. ¶ 58.

The Committee must be permitted to thoroughly test each of these factual assertions, as well as all other contentions proffered in support of the 9019 Motion by the Government Parties and Supporting Holders.  This cannot be done without the significant discovery the Committee has requested.

5.      To date, however, the volume of documents the Committee has received in discovery is surprisingly small.  For example, PREPA, AAFAF, and their advisors have collectively produced only approximately 2,400 documents, and many of these documents are of limited relevance, including hundreds of bank account statements.  In part, this modest volume reflects the efforts of the Committee to focus its discovery efforts.  It also reflects, however, the improper objections of the Respondents, which have led them to either not sufficiently search for responsive documents or to withhold large swaths of materials from production on purported privilege grounds, as indicated by their sweeping categorical privilege logs.[5]

6.      The discovery sought by the Committee is appropriately tailored to the scope defined by the Government Parties themselves in their submission in support of the 9019 Motion, and it is proportionate in scope to the magnitude of the consequences that the RSA would impose on PREPA and its creditors.  The Committee respectfully asks the Court to grant the Renewed Motion to Compel in its entirety.

## <u>ARGUMENT</u>

**I.      THE COMMITTEE IS ENTITLED TO DISCOVERY CONCERNING FUNDAMENTAL PREMISES OF 9019 MOTION**

7.      As to the specific requests for relevant information to which the Respondents have objected, to avoid unnecessary duplication, the Committee will largely stand on its prior

---

[5]      The Committee believes these categorical privilege logs are deficient in several material respects. Nevertheless, the Committee is presently engaged in meet-and-confer discussions with the Respondents in an effort to resolve the Committee's objections and reserves the right to seek further relief from the Court as necessary.

arguments.[6]  The Committee notes, however, that the categories of documents at issue all bear

directly on topics that the Nonproducing Parties have raised in their declarations.  For example:

- The Government Parties contend that the RSA will result in a sustainable level of debt service and that future electricity rates will not increase beyond customers' ability to pay.  *See, e.g.*, Jaresko Decl. ¶ 37; Brownstein Decl. ¶ 25.  The Committee is therefore entitled to documents relating to the impact of the RSA on PREPA creditors and of the ability of Puerto Rico's electric system to absorb the Settlement and Transition Charges.  *See* FOMB/AAFAF/PREPA First Document Requests Nos. 4, 9, 25 and 26[7]; FOMB/ AAFAF/PREPA 30(b)(6) Topic No. 6, FOMB/AAFAF 30(b)(6) Topic No. 9/PREPA 30(b)(6) Topic No. 10[8].

- The Government Parties point to the facilitation of PREPA's transformation as one of the key benefits purportedly supporting approval of the RSA.  *See* Chapados Decl. ¶ 25 [Dkt. No.1427].  Therefore, the Committee is entitled to discovery into whether and how the RSA will actually provide such benefits, and whether alternative structures considered by the Government Parties also would have facilitated PREPA's transformation.  *See* FOMB/AAFAF/PREPA First Document Request Nos. 8, 10, 11 and 12; FOMB/AAFAF/PREPA 30(b)(6) Topic No. 4.

- The Government Parties refer to PREPA rate and demand projections in their calculations of the claimed benefits of the RSA.  *See* Brownstein Decl. ¶¶ 35, 40-41, 49-54.  Therefore, the Committee is entitled to discovery into the economic projections and analyses that undergird these calculations.  *See* FOMB/AAFAF/PREPA First Document Requests Nos. 4, 9, 25 and 26; FOMB/AAFAF 30(b)(6) Topic No. 9/PREPA 30(b)(6) Topic No. 10; FOMB/AAFAF 30(b)(6) Topic No. 11/PREPA 30(b)(6) Topic No. 12; FOMB Second Document Request No. 11/PREPA/AAFAF Second Document Request No. 9[9].  Similarly, because the Government Parties support the 9019 Motion with

---

[6]     Motion to Compel ¶¶ 46-53, 58; Motion to Compel Reply ¶¶ 22-26.

[7]     The Responses and Objections of PREPA, AAFAF and the FOMB to the Committee's First Set of Document Requests were attached to the Motion to Compel as Exhibits 15 (PREPA), 17 (AAFAF), and 19 (FOMB) [Dkt. No. 1269].

[8]     The Responses and Objections of the FOMB, AAFAF and PREPA to the Committee's requests for 30(b)(6) testimony are attached as Exhibits 2 (FOMB), 3 (AAFAF), and 4 (PREPA).  The 30(b)(6) Responses and Objections were received after the filing of the original Motion to Compel.  As cited herein, the topics of the 30(b)(6) requests mirror document requests already subject to the original Motion to Compel, and are relevant for the same reasons discussed herein and in the Motion to Compel and Motion to Compel Reply.

[9]     The Responses and Objections of the FOMB, AAFAF and PREPA to the Committee's Second Set of Document Requests, which were received after the filing of the original Motion to Compel, are attached as Exhibits 5 (FOMB), 6 (AAFAF), and 7 (PREPA).  The Committee continues to meet and confer (i) with AAFAF and PREPA concerning Second Document Requests Nos. 7 and 8, (ii) with all Government Parties concerning FOMB/AAFAF 30(b)(6) Topic No. 12/PREPA Topic No. 13, and (iii) with P3 regarding the Committee's 30(b)(6) deposition notice to P3, and reserves its rights with respect to such continued discussions.

comparisons of rate expectations under the RSA with "but-for" expectations of rates required to repay PREPA's legacy bonds, the Committee is entitled to discovery bearing on the extent to which PREPA would or could actually raise rates absent a settlement. *Id.*

- The Government Parties defend the Administrative Claims, Settlement Payments, and Waiver and Support Fees as reasonable compensation to the Supporting Holders for agreeing to lock in plan support. *See* Brownstein Decl. ¶ 58. Therefore, the Committee is entitled to discovery bearing on the likelihood (or unlikelihood) that (i) the RSA will ever be implemented, and (ii) a confirmable plan will ever follow from the RSA. *See* FOMB/AAFAF/PREPA First Document Request Nos. 17-19; FOMB/AAFAF 30(b)(6) Topic No. 10/PREPA 30(b)(6) Topic No. 11. The Committee is also entitled to discovery bearing on the nature and value of any security interests that PREPA bondholders may hold in assets of PREPA, and whether the value of any such security interests has decreased since PREPA's petition date. *See* Request No. 20.

8. To be clear, the Committee does not propose to conduct a trial on the merits of the claims being settled or to conduct a full confirmation hearing, but it is necessary for the Committee to be allowed to explore these issues in discovery in order to fully assess the 9019 Motion and fairly develop its objections.

## II. RESPONDENTS' RESPONSES TO COMMITTEE'S DISCOVERY REQUESTS REMAIN INSUFFICIENT

### A. Additional Electronic Communications Beyond Emails from Official Email Accounts Should be Produced

9. In light of the recent scandal that has shaken up the Puerto Rico government, it is now more clear than ever that the Respondents should be required to collect, review, and produce responsive non-email electronic communications and emails from accounts other than official government or business accounts to the extent such emails contain responsive information. Indeed, history has shown these are likely to be the ***most*** candid, interesting, and revealing communications in this dispute.

10. The Government Parties claim that the "Committee offers no reasonable basis to believe that the information that is contained in text messages, instant messages and WhatsApp

messages is not also captured in the emails the Government Parties have already agreed to produce." The Oversight Board and AAFAF's Objections to the Motion to Compel ¶ 28 [Dkt. No. 1304] (the "Government Obj."). In meet-and-confer discussions, Respondents have repeatedly questioned whether the key participants in the RSA negotiations use text at all. However, even the limited documents produced thus far in discovery indicate that texts and group chats were and are used by these individuals to discuss relevant topics. For example, Christian Sobrino's AAFAF email account (CEO@AAFAF.pr.gov) appears to have a message to recipients indicating that for urgent matters, he should be contacted at his mobile device. *See* Ex. 8 (PRP3_OCUC_00008882). ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

11.     The recent online messaging scandals remove any doubt that such officials indeed use non-email forms of communication to conduct official business. One of the officials involved in the most recently revealed group chat is Christian Sobrino, who until just days ago was the Chief Executive Officer of AAFAF, a board member of PREPA, the Governor's *ex officio* member of FOMB, a declarant for the Government Parties in support of the 9019 Motion, and the **only** custodian offered by PREPA and AAFAF who is not an attorney or outside advisor. That such a high ranking official has used non-email communications to discuss government issues, including PREPA's transformation, underscores the need for the collection of such documents from all relevant custodians.[10]  Moreover, the recent scandal suggests that the

---

[10]     Any objection that it would be disproportionately burdensome to search for and produce such documents must be set aside in light of the billions of dollars that are at stake in the 9019 Motion. *See, e.g., Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7-9 (D.D.C. 2017) (finding no undue burden and granting defendants' motion to compel where, among other Rule 26 factors, the amount-in-controversy of more than $150 million far exceeded the $1.4 million spent on production and the additional requested production costing $142,000). Moreover, it would create a dangerous precedent to allow the Nonproducing Parties to avoid their discovery obligations by using forms of communications that are allegedly difficult to collect and produce. Such a

government parties should also collect and search non-official email accounts (*e.g.*, personal accounts), as it now seems likely that any candid email communications would have occurred through such accounts.

B.    <u>Key Custodians Should be Included in Discovery</u>

12.    The Respondents' positions regarding custodians have not meaningfully changed since the original Motion to Compel.  The Committee will stand on its prior briefing on the subject[11], except to briefly supplement its position as follows.

13.    **FOMB Custodians**:  The documents produced thus far by the FOMB include virtually no correspondence reflecting the thoughts, analyses, or decisions of members of the FOMB.  This is presumably because no members of the FOMB were designated as custodians for discovery.  The decision by the FOMB to enter into the RSA was made by each of the board members, not by their advisors or staff, and the documents in the hands of these individuals are among the most relevant in this entire dispute, given that the Court is being asked to evaluate the FOMB's exercise of its business judgment.  These documents should be produced.

14.    **AAFAF/PREPA**:  Prior to his resignation, Sobrino was the only custodian offered by AAFAF and PREPA that was not an outside attorney or advisor.  Now that he has resigned, the need for another AAFAF and/or PREPA custodian is even more acute.  Based on our review of the documents produced to date, Jose Ortiz (for PREPA) and Gerardo Loran Butron (for AAFAF) should be added as custodians, as well as Eli Atienza Diaz (chairman of PREPA's board) and Nelson Morales (CFO of PREPA), who has already been identified by AAFAF as having relevant knowledge.

---

rule would incentivize litigants to use such communications for the very purpose of avoiding disclosure in discovery.

[11]    Motion to Compel ¶¶ 37-42; Motion to Compel Reply ¶¶ 15-18.

15.    **Ad Hoc Group Custodians**:  The Ad Hoc Group continues to refuse to produce documents from a single custodian from any of its member firms, offering only emails from counsel and its financial advisor.  In an unsuccessful effort to narrow the dispute, the Committee offered to limit its request only to a pair of custodians[12] from each of two Ad Hoc Group members who are known (based on documents produced by the Government Parties) to have directly engaged with the Government Parties in the RSA negotiations.  ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████  This directly belies the Ad Hoc Group's claim that discovery can be adequately developed by relying only on intermediaries as custodians.  The Court should direct the Ad Hoc Group to at least make the minimal custodial production that the Committee has requested.

C.    Government Parties' Deliberative Process Assertions Remain Unsupportable

16.    The legal flaw of the Government Parties' deliberative process claim has been consistent throughout discovery:[14]  when the government's intent is at issue, the deliberative process does not apply to and cannot shield its internal deliberations.  Here, the central issue on the 9019 Motion is the reasonableness of the Government Parties' decision to enter into the RSA, which necessarily involves an assessment of their intentions and motivations, particularly in light of the Government Parties' assertions regarding the good faith of their negotiations (which they can only have proffered with the expectation that these will help to sway the Court to defer to

---

[12]    The two requested custodians from each firm are (1) the most senior responsible professional, and (2) the professional most involved on a day-to-day basis.

[13]    ████████████████████████████████

[14]    *See* Motion to Compel ¶18-19; Motion to Compel Reply ¶¶ 42-45.

their judgment, as they have asked the Court to do). Therefore, any communications disclosing such intentions and motivations should not be privileged.

17.     With the Government Parties having substantially completed their productions (absent an order from the Court granting this Renewed Motion to Compel), the overbreadth of their assertions of the deliberative process privilege is now glaringly apparent. The Government Parties have provided privilege logs identifying numerous categories of documents withheld under broad deliberative process assertions.[15] Although the categorical privilege logs lack full transparency, it is clear that the Government Parties are withholding basic materials necessary to evaluate their exercise of judgment in entering into the RSA:



- In his declaration, Sobrino states that "[o]n April 17, 2019, I, along with Nancy Mitchell (AAFAF and PREPA's outside counsel), made a presentation to a joint session with AAFAF's Board of Directors and PREPA's Governing Board, explaining the key provisions of the RSA, the above-described benefits, and countervailing considerations, including the possibility that the Government Parties could prevail in the Lien Litigation." Sobrino Decl. ¶ 24 [Dkt. No. 1429]. Nevertheless, it does not appear as if any of the materials created for this session were produced.

18.     The Committee is entitled to take discovery of the facts underlying the Government Parties' intentions and motivations, and the deliberative process privilege cannot protect such facts from disclosure. The Government Parties cannot ask this Court to rely upon

---

[15]     The privilege logs that the Committee initially received from the Government Parties contained no information as to the volume of documents the Government Parties are withholding based on the deliberative process privilege. The Committee has requested this information.

their good faith and good judgment while simultaneously refusing to produce the documents that would allow their exercise of judgment to be reasonably evaluated.

D.     Respondents' Common-Interest Privilege Assertions Remain Vastly Overbroad

19.     Although the Committee's understanding of the negotiations that culminated in the Definitive RSA continues to be constrained by the overly aggressive privilege assertions of the RSA parties, the more the Committee has learned in discovery the clearer it has become that the negotiating parties did not share a common legal interest until the parties executed the RSA on May 3, 2019.

20.     Although the Committee already established this in its submissions in the original Motion to Compel[16], documents since produced in discovery establish that:



---

[16]      Motion to Compel at 10-15.

- 

21.     Under First Circuit precedent, common interest is narrowly defined as an

"*identical (or nearly identical) legal interest* as opposed to a merely similar interest."  *F.D.I.C.*

*v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000) (emphasis added); *In re The Financial*

*Oversight and Management Board for Puerto Rico*, 2019 WL 2636273, at *10 (D.P.R. June 27,

2019) (LTS) (noting First Circuit common interest standard as stated in *F.D.I.C. v. Ogden*

*Corp.*).  As demonstrated by the communications above and the communications that the

Committee attached to its Motion to Compel, the Government Parties and the Ad Hoc Group did

not have close to an identical (or even nearly identical) legal interest at the time of the

Preliminary RSA.[17]

22.     This is even more clearly established by the Government Parties' July 2, 2019

supplemental submissions in support of their 9019 Motion, which focus on the securitization and

remedies provisions of the RSA as the key features justifying the sweeping economic

concessions made by the Government Parties to close a deal with the Supporting Parties.  As the

charts tracking the evolution of the RSA terms that were submitted by the Government Parties in

their Objection demonstrate, it was these very terms that were still "to be agreed upon" (along

---

[17]     Further, as discussed in the Committee's Motion to Compel Reply ¶¶ 39-41, the FOMB's intentional
disclosure of RSA negotiation correspondence to the Committee operated as a waiver of any common-interest
privilege over these communications, at least until the Definitive RSA was concluded.

with other key terms such as "demand protections" and "implementation") at the time of the Preliminary RSA.  *See* Government Obj. at Appx. A.

23.     The Government Parties can hardly rely on these structural provisions as key government benefits justifying the RSA, while simultaneously claiming that a common interest arising from the purported conclusion of the transaction had already sprung into existence ***before these terms had been agreed upon***.  It is important to recall that the Preliminary RSA was not binding on any party[18], and that negotiations subsequently came close to breaking down altogether on a number of occasions.  The Respondents' claimed common interest cannot survive these facts and cannot be used to conceal the full record of their negotiations.

E.     Underline AAFAF, PREPA, and their Advisors Must Be Ordered to Complete a Thorough Review and Production of Responsive Materials

24.     Based on the Committee's review, the document productions of AAFAF, PREPA, and their advisors appear to be deficient in certain respects.  Indeed, it seems that these parties have failed to produce—or, in some instances, even to review—certain responsive, non-privileged communications.  For example, the Committee has noticed that many of the most significant documents concerning AAFAF and PREPA custodians were not actually produced by AAFAF or PREPA, but by other parties.[19]  Perhaps the reason AAFAF and PREPA did not produce these documents is that they have taken the position that certain entire categories of documents—including all internal communications of the Government Parties—are so likely to

---

[18]     *See* Motion to Compel ¶ 24.

[19]     ███████████████████████████████████████████████

13

be privileged that they need not even be collected and reviewed (much less included on a

privilege log).  *See* Ex. 24 (Letter of Elizabeth L. McKeen, dated July 8, 2019).[20]  This strategy is

not only legally indefensible but also clearly ineffective as a means to weed out privileged

documents, given that other parties have produced such documents.  The Committee requests

that AAFAF and PREPA be ordered to complete a comprehensive review of all potentially

responsive documents and appropriately log all documents withheld as privileged.

       F.    <u>Committee Should be Allowed to Use Renewed Receiver Motion Documents for
Discovery Purposes</u>

       25.    The Government Parties' refusal to permit the Committee to use documents

produced in the Renewed Receiver Motion remains indefensible.  As discussed in the Motion to

Compel[21], the Government Parties have taken the position that they should decide which

materials from the Renewed Receiver Motion are relevant to this dispute and then only produce

those materials.  The discovery process to date has shown that this approach does not work, as

key documents from the Renewed Receiver Motion productions were omitted from the

Government Parties' selection of documents they view as relevant to the 9019 Motion.  For

example, the Government Parties failed to produce:



---

[20]    AAFAF's counsel provided a further letter on July 16, 2019 indicating that it would inform the Committee
of the number of documents withheld based on an asserted common interest privilege with the other RSA Parties,
but that it would not log such documents.  Counsel further reiterated that it would not review documents consisting
of internal government communications.

[21]    Motion to Compel ¶¶ 59-63; Motion to Compel Reply ¶ 19.

[22]    ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

The Committee cannot be subjected to the Government Parties' whims in deciding what is and is not appropriately used from discovery in the Renewed Receivership Motion, particularly given that the Receivership Motion itself is at the heart of the disputes that would be settled through the 9019 Motion.  The Committee should be allowed to use any documents already in its possession from the Renewed Receivership Motion for discovery purposes—such as for use in depositions—with the Government Parties reserving the right to object to the admissibility of such documents if and when they are used at trial.

G.   Assured Should be Required to Produce Loss Reserves and Internal Valuation Information

26.   The arguments concerning Assured's loss reserves have not changed since the briefing of the original Motion to Compel, and the Committee will therefore stand on its prior arguments, except to note that Assured recently provided the Committee a privilege log identifying the following withheld materials:  "Emails and attachments regarding Assured's submissions to the New York State Department of Financial Services in compliance with its statutory oversight mandate containing confidential, privileged and highly sensitive loss reserve amounts that are calculated based on legal advice, pending or anticipated litigation, and settlement and/or mediation discussions."

27.   In response, the Committee requested that Assured provide documentation of any assertion of the bank examiner privilege by the New York State Department of Financial Services, but Assured had none to provide.  For the reasons already discussed at length in the Committee's reply brief[23] these submissions by Assured to the New York State Department of Financial Services are not protected by any privilege, and – unlike the situation addressed in the

---

[23]     Motion to Compel Reply at ¶¶ 27-35.

Renewed Receiver Motion dispute over production of Assured's loss reserve communications –

they are probative of the question before the Court on the 9019 Motion, whether the RSA falls

within the range of reasonable litigation outcomes.  They should be produced.

*[Remainder of page intentionally left blank.]*

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this court enter an order

substantially in the form attached hereto granting the relief requested herein, and granting the

Committee such other relief as this court deems just and proper.

Dated:  July 16, 2019

*/s/ Luc A. Despins*
PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel:  (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel:  (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors[24]*

- and –

*/s/ John Arrastia*
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
GENOVESE JOBLOVE & BATTISTA, P.A
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of*

---

[24]     Paul Hastings LLP does not represent the Committee with respect to any statements in this Renewed
Motion to Compel regarding Citigroup Global Markets, Inc.

17

*Unsecured Creditors for all Title III Debtors with
Respect to Claims against Citi*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR
225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR
306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors*

18