Hearing Date: **July 30, 2019 at 1:00 p.m. (AST)**
Response Deadline: **July 23, 2019**
Reply Deadline: **July 25, 2019**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------x
                                :

*In re*                           :

                         :   PROMESA
THE FINANCIAL OVERSIGHT AND    :   Title III
MANAGEMENT BOARD FOR PUERTO RICO, :

      as representative of         :   Case No. 17-BK-3283 (LTS)

                         :
THE COMMONWEALTH OF PUERTO RICO,  :   (Jointly Administered)
*et al.*,[*]                     :

                         :

          Debtors.           :

                         :
----------------------------------------------------------x
                         :

*In re*                           :

                         :   PROMESA
THE FINANCIAL OVERSIGHT AND    :   Title III
MANAGEMENT BOARD FOR PUERTO RICO, :

      as representative of         :   Case No. 17-BK-04780 (LTS)

                         :
PUERTO RICO ELECTRIC POWER    :   **Court Filing Relates Only to PREPA**
AUTHORITY (PREPA),             :

                         :

          Debtor.            :
----------------------------------------------------------x

## RENEWED OMNIBUS MOTION OF CORTLAND CAPITAL MARKET SERVICES LLC, AS ADMINISTRATIVE AGENT, AND SOLUS TO COMPEL DISCOVERY RESPONSES IN CONNECTION WITH PREPA RSA SETTLEMENT MOTION

---

[*]       The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .............................................................................................. 1

JURISDICTION AND VENUE ........................................................................................... 7

RELEVANT BACKGROUND .............................................................................................. 7

    A.    The Fuel Line Lenders' Claims ................................................................. 7

    B.    The Proposed Bond Settlement.................................................................. 9

    C.    The Present Discovery Dispute................................................................ 11

ARGUMENT ..................................................................................................................16

    A.    The Government Parties' refusal to respond to discovery requests regarding
           priority issues means that they cannot present argument or evidence regarding
           those issues in connection with the Settlement Motion. ............................... 17

    B.    If the Government Parties seek to present evidence or argument concerning
           Current Expense or priority issues, the Fuel Line Lenders are entitled to
           discovery. .......................................................................................... 19

    C.    Cortland and Solus join the motion to compel filed by the Official Committee
           of Unsecured Creditors. ....................................................................... 20

RESERVATION OF RIGHTS .............................................................................................21

CONCLUSION..................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Autoridad de Carreteras y Transportacion* v. *Transcore Atl., Inc.*,
  319 F.R.D. 422 (D.P.R. 2016) ................................................. 20

*Baez Cruz* v. *Municipality of Dorado*,
  780 F. Supp. 2d 154 (D.P.R. 2011) ......................................... 18

*Diaz-Garcia* v. *Surillo-Ruiz*,
  45 F. Supp. 163 (D.P.R. 2014) ............................................... 20

*Donovan* v. *Prestamos Presto Puerto Rico, Inc.*,
  91 F.R.D. 222 (D.P.R. 1981) ................................................. 16

*Gilliland* v. *Hergert*,
  No. 2:05-cv-01059, 2008 WL 2682587 (W.D. Pa. July 1, 2008) ............ 18

*In re Smith*,
  No. 14-21261, 2017 WL 1190590 (Bankr. D. Conn. Mar. 29, 2017) ......... 20

*Oppenheimer Fund, Inc.* v. *Sander*s,
  437 U.S. 340 (1978) ........................................................... 16

*Ortiz-Lopez* v. *Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*,
  248 F.3d 29 (1st Cir. 2001) ................................................... 18

*Republic Tobacco, L.P.* v. *N. Atl. Trading Co.*,
  254 F. Supp. 985 (N.D. Ill. 2002) ........................................... 18

*S.E.C.* v. *Grossman*,
  887 F. Supp. 649 (S.D.N.Y. 1995) ........................................... 18

*S.E.C.* v. *Sargent*,
  229 F. 3d 68 (1st Cir. 2000) ................................................. 16

*Skytec, Inc.* v. *Logistic Sys., Inc.*,
  No. CV 15-2104-BJM, 2018 WL 4372726 (D.P.R. Sept. 12, 2018) .......... 19

**Rules**

FED. R. BANKR. P. 7026 ............................................................................................................ 16

FED. R. CIV. P. 26(a)(1)(A)(ii) .............................................................................................. 17

FED. R. CIV. P. 26(b)(1) ........................................................................................................ 16

FED. R. CIV. P. 37(c)(1) ........................................................................................................ 17

Cortland Capital Market Services LLC ("<u>Cortland</u>" or the "<u>Agent</u>"), as successor administrative agent[1] for lenders under the Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank, and the lenders party thereto (as amended, the "<u>Scotiabank Credit Agreement</u>"), and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD and Ultra NB LLC (collectively, "<u>Solus</u>"), as lenders to PREPA under the Trade Finance Facility Agreement, dated as of July 20, 2012, among PREPA and Citibank, N.A., as predecessor to the existing lenders thereunder (as amended, the "<u>Citibank Credit Agreement</u>," together with the Scotiabank Credit Agreement, the "<u>Fuel Lines</u>"), respectfully submit this renewed motion to compel the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), PREPA and the Puerto Rico Fiscal Agency and Financial Authority ("<u>AAFAF</u>," together with the Oversight Board and PREPA, the "<u>Government Parties</u>") to respond to discovery requests in connection with the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Dkt. No. 1235] (the "<u>Settlement Motion</u>").[2]

### <u>PRELIMINARY STATEMENT</u>

1.      Aside from the bondholders, the Fuel Line Lenders are the main financial creditors of PREPA.  Beginning in 2012, the Fuel Line Lenders extended $700 million in

---

[1]      Effective May 17, 2019, Cortland replaced Scotiabank de Puerto Rico ("<u>Scotiabank</u>") as administrative agent for lenders under the Scotiabank Credit Agreement.

[2]      Capitalized terms not defined have the same meanings as in the Settlement Motion.  The lenders under the Fuel Lines are referred to as the "<u>Fuel Line Lenders</u>" and the approximately $700 million in loans they made to PREPA are referred to as the "<u>Fuel Line Advances</u>."

working capital to permit PREPA to purchase the fuel it needed to operate its system.[3]  The Fuel
Line Advances were made on the express understanding of all parties — including PREPA, the
Fuel Line Lenders and PREPA's bondholders — that the advances were "Current Expenses"
under the Trust Agreement governing PREPA's bond debt.  As will be shown, the Trust
Agreement not only requires PREPA to pay all Current Expenses *before* the bonds, but it also
provides that the bondholders' lien and recourse are limited to "Net Revenues" in a specified
"Sinking Fund" — namely, revenues *after* all Current Expenses are paid.  Accordingly, unless
the Fuel Lines are paid in full or agree to alternate treatment, the bondholders have *no security*
(beyond, at most, the amounts already in the Sinking Fund) and *no right to recover* (again,
beyond amounts already in the Sinking Fund).  On July 9, 2019, the Fuel Line Lenders filed an
adversary complaint objecting to the bondholders' claim and seeking a determination that both
their claim and their lien are contingent on payment in full of the Fuel Lines.[4]

2.    Against this backdrop, the Fuel Line Lenders intend to object to the Settlement
Motion on the basis that it materially impacts the rights of the Fuel Line Lenders vis-à-vis the
bonds.  Although the Oversight Board has asserted that "[t]he rights of all other creditors are left
unprejudiced and unaffected" by the settlement (Settlement Motion ¶ 65), that is simply not true.
Under the RSA, the bondholders will get paid significant amounts ahead of the Fuel Line
Lenders, both in cash and through allowance of administrative claims, prior to approval of any

---

[3]    As of the date of their proof of claim, lenders under the Scotiabank Credit Agreement were also
owed $45,958,492.80 on account of accrued interest, as well as additional costs and expenses.  *See* Claim
No. 44378, Annex ¶ 7.  As of the date of Solus' proof of claim, lenders under the Citibank Credit
Agreement were also owed $11,075,323.70 on account of accrued interest, as well as additional costs and
expenses.  See Claim No. 44342, Annex ¶ 7 & Ex. A.  Additional interest, costs and expenses have since
accrued.

[4]    Complaint, *Cortland Capital Mkt. Servs. LLC, et al.* v. *Financial Oversight & Mgmt. Board for
Puerto Rico, et al.*, Dkt. No. 1, Adv. Pro. No. 19-00396 (July 9, 2019) ("Adversary Complaint").

-2-

plan of adjustment.  The settlement, if approved, will also bar the Fuel Line Lenders from

pursuing their own causes of action and objections to the bondholders' claims under sections

502(a) and 506(a) of the Bankruptcy Code, including causes of action asserted in the adversary

complaint.  As the objection will show, any judicial determination regarding the ability of the

bondholders to be paid ahead of the Fuel Line Lenders must occur in the context of the Fuel Line

Lenders' adversary proceeding or in connection with plan confirmation, and cannot be resolved

in approving a compromise between the Government Parties and the bondholders.  However,

because the Government Parties are pursuing approval of an RSA that proposes to predetermine

these inter-creditor issues, thereby compromising rights that belong to the Fuel Line Lenders, the

Fuel Line Lenders are compelled to protect their rights in the context of the 9019 motion.

       3.      To gather facts relating to their objection to the 9019 motion, the Fuel Line

Lenders served document requests, a Rule 30(b)(6) deposition notice and interrogatories on the

Oversight Board, PREPA and AAFAF.  Among other things, the Fuel Line Lenders sought

documents relating to their status as "Current Expenses" and their right to be paid before funds

are made available for payment of the bonds.  In response, the Oversight Board, PREPA and

AAFAF refused to answer any interrogatories, to produce many of the documents requested or to

produce a Rule 30(b)(6) witness on various issues.  Following a meet-and-confer and subsequent

communications, a basic dispute has crystallized:  The Oversight Board, PREPA and AAFAF

have all taken the position, both in writing and otherwise, that the rights of the Fuel Line Lenders

to payment prior to the bondholders "*have no bearing*" on the Settlement Motion.[5]  Based on that

---

[5]     *See, e.g.*, Ex. C (Responses and Objections of the Financial Oversight and Management Board for
Puerto Rico to Cortland Capital Market Services LLC's and Solus Alternative Asset Management LP's
First Request for Production of Documents) at 29 (emphasis added).

argument, the Government Parties have refused to produce witnesses, documents or other

information in response to numerous requests.

     4.     The Fuel Line Lenders sought to resolve these discovery disputes consensually.

Before filing this motion, the Fuel Line Lenders proposed, in light of the Government Parties'

position that priority issues have "*no bearing*" on approval of the settlement, to forgo this

discovery if the Government Parties would confirm that they will *not* argue the merits of the

priority issue, but only that the Settlement Motion should be approved *regardless* of how that

issue is decided in the future.  The Government Parties did not accept this proposal.  Cortland

and Solus thus filed the initial version of this motion to compel on June 3, 2019.  *See* Dkt.

No. 1267.[6]

     5.     Thereafter, at the June 12, 2019 status conference, the Court commented on the

approach the Government Parties have taken to the Settlement Motion, whereby they have failed

to provide, among other things, a legal and factual explanation "as to how the RSA will preserve

the rights of non-settling interested parties."  June 12, 2019 Tr. at 157:20-24.  The Court further

stated that this "has led to the current quite inefficient process in which we have parties arguing

over discovery concerning topics that may or may not seriously be raised by the way the motion

is advocated" and have sought discovery "in an attempt to put meat on the bones of the 9019

motion."  *Id.* at 153:3-10.  Notwithstanding that direction, in the Supplemental Memorandum in

support of the RSA[7] filed on July 2, 2019, the Government Parties said almost nothing about the

---

[6]    Cortland and Solus rely on and incorporate by reference their prior submissions in support of
their June 3, 2019 Motion to Compel.  *See* Dkt. Nos. 1267, 1317.

[7]    *Supplemental Memorandum of Law and Facts in Support of Joint Motion of Puerto Rico Electric
Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and
Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring
Support Agreement and Tolling Certain Limitations Periods* [Dkt. No. 1425] (the "Supplemental
Memorandum").

impact of the RSA on the rights and claims of the Fuel Line Lenders, and instead doubled down on their conclusory assertion that the settlement "fully preserve[s]" the rights of "[n]on-settling creditors . . . to object to their treatment."  Supp. Mem. ¶ 97.

6.        But at the renewed pretrial conference on July 11, the Oversight Board took a completely different position, arguing for the first time that the Fuel Line Lenders do *not* have any "priority right" and, in colorful language, that the priority right has been "made up" by the Fuel Line Lenders "out of the thin blue air."  July 11, 2019 Tr. at 55:9, 24-25.  After hearing from the parties on July 11, the Court ordered the Oversight Board to make a further supplemental submission on July 19 concerning the basis of the Government Parties' position that approval of the Settlement Motion "does not adversely affect legal rights" of the Fuel Line Lenders.  *See id.* at 55:1-6; 57:25-58:6.  Now, three days before the Government Parties will finally submit in writing their position on whether the RSA impacts the legal rights of the Fuel Line Lenders, the Fuel Line Lenders file this motion based on what the Government Parties may contend, rather than in response to actual argument.

7.        The existing factual record is certainly sufficient to refute the Oversight Board's newly asserted position that the Fuel Lines' Current Expense status and payment priority were "made up" out of "thin blue air."  To take one example of many, PREPA itself — in various official statements to bondholders — proclaimed to bondholders and to the world that "[t]he debt service payments on" the Fuel Lines "are Current Expenses **payable prior to debt service on the Authority's Power Revenue Bonds**."[8]  In official statements, PREPA likewise confirmed to

---

[8]        Adversary Complaint, Ex. 14 (PREPA Series 2013A Official Statement) at 53 (emphasis added).

bondholders that the Fuel Line Lenders are "***entitled* to be paid before debt service on the Power Revenue Bonds**."[9]

8.        Nonetheless, there is clearly room for additional factual development regarding the parties' course of conduct.  Thus, if the Government Parties intend to stand by their new assertion that the Fuel Line Lenders "made up" their priority right, the Fuel Line Lenders are entitled not only to argue that priority issues should not be predetermined against them on this motion but also to test the Government Parties' assertion and to build an evidentiary record regarding the parties' course of conduct.  (In that scenario, the current litigation schedule is plainly unworkable, since the Government Parties are just now introducing new and significant arguments that they chose not to introduce in the Settlement Motion or in their Supplemental Memorandum, and this motion will be heard just three days before the close of fact discovery.)

9.        For those reasons and the reasons set forth below, to the extent the Government Parties are seeking a determination on the merits of the Fuel Line Lenders' Current Expense status, they should be compelled to respond to the disputed discovery requests (with the Fuel Line Lenders reserving all rights to seek extensions of the schedule and to oppose a premature determination of such inter-creditor issues in the context of a Rule 9019 motion).  In the alternative, the Government Parties should be precluded from seeking adjudication of the merits of issues that they themselves have repeatedly claimed have "no bearing" on the settlement hearing.

---

[9]        *Id*. at 22 (emphasis added); Adversary Complaint, Ex. 15 (PREPA Series 2012A Official Statement) at 18 (emphasis added).

## JURISDICTION AND VENUE

10.     The United States District Court for the District of Puerto Rico (the "Court") has

subject matter jurisdiction over this matter pursuant to PROMESA § 306(a).  Venue is proper

subject to PROMESA § 307(a).

## RELEVANT BACKGROUND

### A.     The Fuel Line Lenders' Claims

11.     Cortland is administrative agent for lenders under the Scotiabank Credit

Agreement, pursuant to which approximately $550,000,000 in principal is currently outstanding.

*See* Claim No. 44378, Annex ¶ 5.  Substantial interest and other amounts are also owed under the

Scotiabank Credit Agreement.

12.     Solus is a lender under both the Scotiabank Credit Agreement and the Citibank

Credit Agreement.  Approximately $146,000,000 in principal is currently outstanding under the

Citibank Credit Agreement.  *See* Claim No. 44342, Annex ¶ 5.  Substantial interest and other

amounts are also owed under the Citibank Credit Agreement.

13.     The Fuel Line Lenders made the Fuel Line Advances at a time when PREPA had

bond debt outstanding under the Trust Agreement dated as of January 1, 1974 (the "Trust

Agreement").  Unlike PREPA's bond debt, however, the Fuel Line Facilities had a specific and

narrow purpose: "to finance [PREPA's] working capital requirements, classified as Current

Expenses (as defined in the Trust Agreement), including but not limited to fuel oil purchases."[10]

14.     The Trust Agreement creates a special fund called the "General Fund" into which

all Revenues were to be deposited, and then contains a covenant that "moneys in the General

---

[10]     Adversary Complaint, Ex. 1 (Scotiabank Credit Agreement) § 5.08; Adversary Complaint, Ex. 2
(Citibank Credit Agreement) § 5.08.

Fund will be used first for the payment of the Current Expenses of the System."[11]  The Fuel Line

Lenders agreed to extend credit to PREPA — at relatively modest interest rates — on the express

agreement and representation by PREPA and its representatives that the Fuel Line Advances

would be treated as "Current Expenses" under the Trust Agreement and would be repaid prior to

the bond debt under the Trust Agreement.

15.    On a monthly basis, PREPA was directed by the Trust Agreement to transfer the

remaining *"Net* Revenues," namely revenues <u>after</u> payment of Current Expenses, into a Sinking

Fund.  The revenues in those specified accounts, *and only those accounts*, are "subject to a

lien . . . in favor of the holders of the bonds."[12]  The form of Power Revenue Bond appended to

the Trust Agreement further states that PREPA "hereby promises to pay" the amount owed

"solely from the special fund provided therefor."[13]  The bondholders thus have no lien on

PREPA's revenues, and no right to payment, until the revenues are deposited in the Sinking

Fund after payment of Current Expenses, including the Fuel Lines.

16.    This payment scheme (and the "net" pledge to the bondholders) was confirmed in

numerous documents, including in Official Statements distributed to bondholders, which

provided that "Repayment of [the Fuel Line Facilities] and future lines of credit to cover

operational expenses is treated as a Current Expense under the Trust Agreement, *which is

entitled to be paid before debt service on the Power Revenue Bonds*."[14]

---

[11]    *See* Adversary Complaint, Ex. 3 (Trust Agreement) §§ 503, 505.

[12]    *Id.* § 507(h).

[13]    *Id.* at 3.

[14]    Adversary Complaint, Ex. 14 (PREPA Series 2013A Official Statement) at 22; Adversary
Complaint, Ex. 15 (PREPA Series 2012A Official Statement) at 18 (emphasis added).

### B.    The Proposed Bond Settlement

17.    On May 10, 2019, the Oversight Board filed the Settlement Motion, which

contemplates a settlement of claims with certain of PREPA's bondholders that is embodied in the

Restructuring Support Agreement (the "RSA") that is attached as Exhibit A to the proposed

order approving the Settlement Motion.  *See* Dkt. No. 1235.

18.    The RSA does not merely compromise disputes between the bondholders and

PREPA.  Rather, significant aspects of the RSA contravene the Fuel Line Lenders' rights as

holders of Current Expense claims.  For example, the RSA provides that the settling bondholders

will receive payments from PREPA during the pendency of these Title III cases, *before* any

payments are made to the Fuel Line Lenders and *before* approval of any plan.  *See* RSA § 2(d)

(describing requirement that PREPA make monthly "Settlement Payments" to bondholders based

on a charge to be imposed by PREPA on its customers).  These payments subvert the

requirement of the Trust Agreement and the Fuel Line Credit Agreements that payments to the

Fuel Line Lenders must be made *before* any revenues are made available for payment to the

bondholders.  The RSA also provides that "no person or entity (including a person or entity

acting on behalf of a Government Party) other than the Government Parties shall have standing

or otherwise be permitted to bring a Lien Challenge," defined broadly as "any action that a

Government Party . . . may bring to challenge the liens and claims (including the validity,

priority, nature or extent of any liens or security interests) related to the Bonds."  *Id.* §§ 3(i),

1(a)(lxvi).  In doing so, the RSA ignores the Fuel Line Lenders' standing to pursue claim

objections that affect their particular rights as creditors.

19.    In addition, the RSA includes a "Most Favored Nations" clause providing that no

financial creditor of PREPA, including the Fuel Line Lenders, may receive more favorable

treatment than the settling bondholders.  *See id.* § 23.  Beyond that, the RSA prohibits the

Oversight Board from reaching an agreement with the Fuel Line Lenders on *any* treatment

without the prior consent of the requisite bondholder parties. *Id.* § 7(a)(x). In form and

substance, those clauses would commit the Oversight Board to proposing a plan that ignores the

payment scheme and other limitations that govern the bondholders' claims — limitations on

which the Fuel Line Lenders relied in extending credit to PREPA.

20.     The RSA also contemplates that the Court will allow substantial secured claims

for the bondholders. If the settlement is approved and securitization bonds are issued under a

confirmed plan providing the treatment set forth in the RSA, bondholders will receive an allowed

secured claim "for plan distribution purposes" in an amount equal to their treatment under the

settlement, *i.e.*, 67.5% of principal amount (plus interest accrued at the contract rate through

May 1, 2019) in Tranche A Bonds and 10% of principal amount of outstanding bonds in Tranche

B Bonds. Dkt. No. 1235 Ex. A ¶ 15. And if the securitization transaction does not occur,

consenting bondholders would still receive an allowed secured claim against PREPA's Net

Revenues in the amount of approximately 73% of the principal amount (plus interest accrued at

the contract rate through May 1, 2019). *Id.*; RSA §§ 2(c)(i), 9(b).

21.     In addition, the RSA provides that the Court will allow administrative claims in

an amount equivalent to the Tranche A Bond interest payments accrued in respect of the bonds

(less the amount of Settlement Payments), commencing as early as May 1, 2019, which

administrative claims will have to be paid in full on the effective date of a plan. RSA

§ 2(d). The Oversight Board has agreed to allow these secured and administrative claims despite

its own consistent position that, in light of the limited nature of the bondholders' security interest

in specified accounts, the alleged security interest "has no value."[15]

### C.     The Present Discovery Dispute

22.     In light of the issues raised by the Settlement Motion, the Fuel Line Lenders

served requests for document production and interrogatories on the Government Parties.  The

requests for production are attached as Exhibit A; the interrogatories are attached as Exhibit B.[16]

23.     In addition to seeking documents and information about the terms and negotiation

of the RSA, the Fuel Line Lenders propounded requests regarding the Fuel Line Advances and

the Current Expense status of those loans.  Specifically:

- RFPs 5 and 6 requested communications between the Government Parties and PREPA's bondholders "regarding the status of the Fuel Line Loans as Current Expenses and the treatment or priority afforded to the Fuel Line Loans."  *See* Ex. A at 12.

- RFPs 8-10 requested documents showing PREPA's pre-petition borrowing requests and repayments under the Fuel Line Loans.  *See* Ex. A at 13.

- RFP 15 sought "All Documents, including all reports, filed with PREPA on or after May 4, 2012 by the Consulting Engineers pursuant to section 706 of the Trust Agreement."  *See* Ex. A at 13.

---

[15]     *See, e.g.*, *Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Ad Hoc Group of PREPA Bondholders, National Public Finance Guaranty Municipal Corp., Assured Guaranty Corp., and Syncora Guarantee Inc. for Relief from Automatic Stay* at 17-18 [Dkt. No. 149] (July 31, 2017) ("Because PREPA's Net Revenues are negative . . . [PREPA's bondholders] have no collateral value . . . ."); *Decl. of Kevin Lavin in Support of Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Ad Hoc Group of PREPA Bondholders, National Public Finance Guaranty Municipal Corp., Assured Guaranty Corp., and Syncora Guarantee Inc. for Relief from Automatic Stay to Enforce their Statutory Right to Have a Receiver Appointed* ¶ 11 [Dkt. No. 149-1] (July 31, 2017).

[16]     These discovery requests were served in accordance with the original Discovery and Scheduling Order entered by Judge Swain.  *See Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]* [Dkt. No. 1253].

- RFPs 22 and 23 sought documents "relating to the Current Expense treatment or priority of loans" made under each of the Scotiabank Credit Agreement and the Citibank Credit Agreement. *See* Ex. A at 15-16.

- Interrogatories 3 and 4 sought identification of the individuals involved in the negotiation of the Fuel Line Loans. *See* Ex. B at 7.

- Interrogatory 6 sought identification of the individuals involved in issuing borrowing requests under the Fuel Line Loans. *Id.* at 7-8.

24. On May 29, 2019, the Oversight Board, AAFAF and PREPA served responses and objections to the Fuel Line Lenders' requests.[17]  The responses served by the Government Parties all stated unequivocally that the Fuel Line Lenders' Current Expense status — and the merits of any dispute relating to priority — have no relevance to the Settlement Motion and, in particular, have "**no bearing** on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019." *See* Exhibits C-H (emphasis added).  Specifically:

- In response to RFP 5, the Oversight Board stated that "**[t]he status of the Fuel Line Loans and payment priorities between the Fuel Line Lenders and the Bondholders has no bearing on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019.**" Ex. C at 14 (emphasis added).  The Oversight Board provided a nearly identical response to RFP 6, as did AAFAF and PREPA in response to RFPs 5 and 6.  *See* Ex. C at 15, Ex. E at 12-13, Ex. G at 12-13.

- Likewise, in response to RFPs 8-10, the Government Parties took the position that the history of borrowings and repayments under the Fuel Line Loans has "no bearing on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019." Ex. C at 17-19.  *See* Ex. E at 14-16, Ex. G at 14-16 (providing nearly identical responses).

---

[17]    The Oversight Board's responses and objections to the Fuel Line Lenders' requests for document production are attached as Exhibit C, and the Oversight Board's responses and objections to the Fuel Line Lenders' interrogatories are attached as Exhibit D.  AAFAF's responses and objections to the Fuel Line Lenders' requests for document production are attached as Exhibit E, and AAFAF's responses and objections to the Fuel Line Lenders' interrogatories are attached as Exhibit F.  PREPA's responses and objections to the Fuel Line Lenders' requests for document production are attached as Exhibit G, and PREPA's responses and objections to the Fuel Line Lenders' interrogatories are attached as Exhibit H.

- In response to RFPs 22 and 23, the Government Parties each stated that "[p]riority of loans made under the [Citibank Credit Agreement and Scotiabank Credit Agreement] have no bearing on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019." Ex. C at 28-30; *see also* Ex. E at 25-26, Ex. G at 24-26 (providing nearly identical responses).

- In response to Interrogatories 3, 4 and 6, AAFAF and PREPA responded that the negotiation of the Scotiabank Credit Agreement and the Citibank Credit Agreement and borrowing requests thereunder "have no bearing whatsoever on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019." *See* Ex. F at 9-11, Ex. H at 9-11. The Oversight Board stated that the information requested related to claims of the Fuel Line Lenders "that are irrelevant to the Rule 9019 Motion." Ex. D at 10-11.

25. On May 31, 2019, counsel for the Fuel Line Lenders met and conferred with counsel for the Oversight Board, AAFAF and PREPA. In that discussion, the Fuel Line Lenders proposed that, in light of the Government Parties' position that the status of the Fuel Line Advances as Current Expenses and the payment priorities between the Fuel Line Advances and the bonds "have no bearing" on the Settlement Motion, discovery on those matters could be deferred if the Government Parties would confirm that they would not make arguments regarding the merits of the Fuel Line Lenders' Current Expense status and payment priority in connection with the Settlement Motion. The Government Parties have refused to provide that confirmation.

26. Following submission of the original Settlement Motion, at the June 12, 2019 status conference, the Court gave the Government Parties an additional opportunity to address the manner in which the RSA "establish[es] priorities [and] mak[es] irretrievable pre-plan payments" in supplemental briefing and deferred Cortland and Solus' June 3, 2019 motion to compel pending those additional submissions. June 12, 2019 Tr. at 155-56.

27. The Fuel Line Lenders' position that they are entitled to be paid in full prior to any revenues being made available for payment to the bondholders was not a secret. To the contrary, the Fuel Line Lenders have repeatedly articulated their position that the Fuel Lines are

Current Expenses entitled to payment in full before the bondholders can receive any payments in

submissions in these Title III cases dating back to September 2017, and have likewise made clear

in submissions dating back to early June of this year that they intend to object to the Settlement

Motion on that basis.[18]  Moreover, they articulated the basis for their claims, with documentary

support, in a complaint in intervention filed on September 12, 2017, and in the adversary

proceeding complaint filed on July 9, 2019.  Any assertion that the Oversight Board has not been

informed of the basis for the Fuel Line Lenders' claims is dumbfounding.

28.    Notwithstanding the Oversight Board's familiarity with the Fuel Line Lenders'

position and the Court's direction to lay out its factual and legal bases for arguing that objecting

parties would be unaffected by the settlement, the Supplemental Memorandum and

accompanying declarations continued to ignore the issues raised by the Fuel Line Lenders and

again insisted that "[n]on-settling creditors' rights to object to their treatment and the Supporting

Holders' treatment under a future plan are fully preserved."  Supp. Mem. ¶ 97.

29.    On July 5, 2019, Cortland and Solus served notices of deposition pursuant to

Rule 30(b)(6) of the Federal Rules of Civil Procedure on the Oversight Board, PREPA and

---

[18]    *See, e.g.*, *Motion of Scotiabank de Puerto Rico, as Administrative Agent, and Funds Advised by Solus Alternative Asset Management LP for Leave to Intervene* ¶ 1 [Case No. 17-00232, Dkt. No. 24] (Sept. 12, 2017) ("the Fuel Line Advances must be paid in full *before* the bonds are paid" (emphasis in original)); Claim No. 44378 filed by Scotiabank de Puerto Rico, Annex ¶ 6 (June 13, 2018) ("the Fuel Line Advances 'constitute Current Expenses under the Trust Agreement'"); Claim No. 44342 filed by SOLA LTD, Annex ¶ 6 (June 13, 2018) ("the Fuel Line Advances 'constitute Current Expenses under the Trust Agreement'"); Joint Status Report at 17-18, Dkt. No. 1294 (June 7, 2019) ("The Fuel Line loans are 'Current Expenses' under the Trust Agreement governing PREPA's bond debt — meaning that they must be repaid in full *ahead* of the bonds and *before* PREPA's revenues are deposited into accounts on which the bondholders may have a lien." (emphasis in original)); Supp. Joint Status Report at 7, Dkt. No. 1361 (June 18, 2019) ("As previously explained, the Fuel Line Lenders, UTIER and SREAEE in particular also intend to object to the Amended Proposed Order on the basis that the requested relief — including the payments to bondholders outside a plan and allowance of administrative expense claims — would violate their priority rights and prejudice them in the context of a plan.").

AAFAF.[19]  Each of the notices sought deposition testimony on the following topic ("30(b)(6)

Topic 4"):

> To the extent [the Government Party] may present argument or
> submit evidence regarding the status of the Fuel Line Loans as
> "Current Expenses" under the Trust Agreement or the priority
> rights of the Fuel Line Lenders:
>
> a. [The Government Party's] position regarding the status of the
> Fuel Line Loans as "Current Expenses" under the Trust Agreement
> or the priority rights of the Fuel Line Lenders; and
>
> b. Agreements and resolutions of PREPA regarding the treatment
> of the Fuel Line Loans as Current Expenses.[20]

30.     Cortland and Solus' 30(b)(6) notice to PREPA included the following additional

sub-topics in 30(b)(6) Topic 4:

> c. Approval of the "Official Statements," "Offering Memoranda"
> or similar offering documents relating to any issuance of any
> Bonds that are currently outstanding;
>
> d. Annual Budgets since May 4, 2012 prepared pursuant to section
> 504 of the Trust Agreement;
>
> e. Communications with the Oversight Board, AAFAF,
> Bondholders, Assured, National or Syncora regarding the status of
> the Fuel Line Loans as "Current Expenses" or the priority rights of
> the Fuel Line Lenders.[21]

31.     On July 10, 2019, the Government Parties served responses and objections to the

notices of deposition, each of which contended that 30(b)(6) Topic 4 "seeks testimony that is not

---

[19]     Cortland and Solus' 30(b)(6) deposition notice to the Oversight Board is attached hereto as
Exhibit I; their 30(b)(6) deposition notice to AAFAF is attached as Exhibit J; and their 30(b)(6)
deposition notice to PREPA is attached as Exhibit K.

[20]     Ex. I, Sched. A at 7; Ex. J, Sched. A at 7, Ex. K, Sched. A at 7.

[21]     Ex. K, Sched. A at 7.

relevant to the issues before the Court in connection with the Rule 9019 Motion."[22]  On July 16,

2019, counsel for PREPA offered 30(b)(6) testimony on what appears to be a limited subset of

the topics requested in 30(b)(6) Topic 4.  As of the date of this motion, the parties have not

reached agreement as to whether PREPA will produce a witness to testify concerning the entirety

of 30(b)(6) Topic 4.

32.     Only at the hearing on July 11, 2019, after six weeks of resisting discovery on the

grounds that it was wholly irrelevant, did the Government Parties articulate the basis on which

they might mount a challenge to the Fuel Line Lenders' rights as Current Expense holders, rather

than just arguing that all parties' rights are preserved.  *See* July 11, 2019 Tr. at 18:3-19:7, 59:8-

11.  The Court directed the Government Parties to submit an additional memorandum "as to the

government parties' position on the fuel line lenders['] . . . priority assertions."  *Id.* at 58:25-59:7.

## ARGUMENT

33.     Parties may obtain discovery regarding any "nonprivileged matter that is relevant

to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV.

P. 26(b)(1); FED. R. BANKR. P. 7026.  This broad mandate encompasses any matter that bears on,

or that reasonably could lead to other matters that could bear on, any issue that is or may be in

the case.  *See Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 351 (1978); *see also S.E.C.* v.

*Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("The Supreme Court has long recognized that the

Federal Rules of Civil Procedure are to be construed liberally in favor of discovery.") (citing

*Hickman* v. *Taylor*, 329 U.S. 495, 507 (1947)); *Donovan* v. *Prestamos Presto Puerto Rico, Inc.*,

91 F.R.D. 222, 223 (D.P.R. 1981) ("The basic philosophy of the present federal procedure is that

---

[22]     Ex. M (AAFAF Responses and Objections to 30(b)(6) Notice) at 11; Ex. N (PREPA Responses
and Objections to 30(b)(6) Notice) at 11-12; *see also* Ex. L (Oversight Board Responses and Objections
to 30(b)(6) Notice) at 12 (providing nearly identical response).

prior to trial every party to a civil action is entitled to the disclosure of all relevant information in

the possession of any person, unless the information is privileged.").

A.   **The Government Parties' refusal to respond to discovery requests regarding priority issues means that they cannot present argument or evidence regarding those issues in connection with the Settlement Motion.**

34.   As noted, the Oversight Board, AAFAF and PREPA have all stated

unambiguously, in their responses and objections to the Fuel Line Lenders' document requests

and interrogatories, that "[t]he status of the Fuel Line Loans and payment priorities between the

Fuel Line Lenders and the Bondholders ***has no bearing*** on whether the RSA" should be

approved.  Ex. C at 14 (emphasis added); *see also* Ex. E at 12, Ex. G at 12.

35.   In light of that position, and the Government Parties' unwillingness to provide

discovery, the Fuel Line Lenders' expectation and understanding was that the Government

Parties will *not* present evidence or argument at the settlement hearing regarding the status of the

Fuel Line Advances as Current Expenses or their rights vis-à-vis the bonds, and instead will

argue that the Settlement Motion should be approved *regardless* of the Fuel Line Lenders' rights.

36.   In the event the Government Parties intend to contest the Fuel Line Lenders'

position regarding inter-creditor issues, they certainly cannot refuse to produce relevant

documents and other information.  Rule 37(c)(1) provides that "[i]f a party fails to provide

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless."  Rule 26(a)(1)(A)(ii) in turn requires that

parties provide "a copy—or a description by category and location—of all documents,

electronically stored information, and tangible things that the disclosing party has in its

possession, custody, or control and may use to support its claims or defenses, unless the use

would be solely for impeachment."  The First Circuit has recognized that the trial court has

"wide latitude" to impose sanctions, including exclusion of evidence or argument, for failure to disclose consistent with the Rules. *Ortiz-Lopez* v. *Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001); *see also Baez Cruz* v. *Municipality of Dorado*, 780 F. Supp. 2d 154, 156 (D.P.R. 2011) (precluding defendant from introducing any argument concerning contents of police logbooks due to its refusal to produce them to plaintiff).

37.    Accordingly, courts have recognized that where a party "stonewall[s] . . . specific discovery by claiming it to be irrelevant[,] he will have to live with the consequences of having taken that position"; *i.e.*, the party's argument and evidence on that topic must be excluded. *Gilliland* v. *Hergert*, No. 2:05-cv-01059, 2008 WL 2682587, at *2 (W.D. Pa. July 1, 2008); *see also Republic Tobacco, L.P.* v. *N. Atl. Trading Co.*, 254 F. Supp. 2d 985, 993 (N.D. Ill. 2002) (where defendant refused discovery on trademark infringement claim on grounds that it was not making any such claim, it was precluded from later taking position that plaintiff infringed on its trademark); *S.E.C.* v. *Grossman*, 887 F. Supp. 649, 660 (S.D.N.Y. 1995) (defendants "were obligated to come forward with any relevant evidence in the event they wished to change their position on issues for which they previously had refused discovery"; accordingly, defendants were "precluded from offering their proposed additional evidence").

38.    In light of the Government Parties' persistent refusal to provide discovery — based on their position that the status of the Fuel Line Advances and the right of those loans to be paid prior to the bonds have "no bearing" on the Settlement Motion — the Government Parties should not be permitted to contest the merits of the Fuel Line Lenders' position.

**B.     If the Government Parties seek to present evidence or argument concerning
Current Expense or priority issues, the Fuel Line Lenders are entitled to
discovery.**

39.     Despite uniformly stating in their discovery responses that the Current Expense

status of the Fuel Lines has "no bearing" on the relief sought, at the July 11, 2019 status

conference counsel for the Oversight Board for the first time challenged the Fuel Line Lenders'

position.  If the Government Parties maintain this new position that the inter-creditor dispute

between the Fuel Line Lenders and the bonds is relevant to the Settlement Motion, the Fuel Line

Lenders will argue that these issues should not be pre-determined against the Fuel Line Lenders

outside of the adversary proceeding that the Fuel Line Lenders have commenced to vindicate

their rights.  In the meantime, however, the Court should order the Government Parties to

produce relevant documents and provide interrogatory responses and deposition testimony.

40.     In the event that this Court orders the Government Parties to respond to the Fuel

Line Lenders' discovery requests, the current litigation schedule will not be workable:  fact

discovery closes and expert reports are due just three days after the hearing on this motion, and

the Fuel Line Lenders' objection to the Settlement Motion is due eight days after the hearing.

The Fuel Line Lenders are fully entitled to explore and find evidence to, among other things,

refute the Government Parties' newfound assertion that the Fuel Line Lenders' priority position

is somehow "made up" rather than based on the parties' agreements and course of conduct.

July 11, 2019 Tr. at 55:24-25.

41.     The Federal Rules are intended to "remove the elements of surprise and

gamesmanship to make trial a transparent, fair process."  *Skytec, Inc.* v. *Logistic Sys., Inc.*,

No. 15-2104-BJM, 2018 WL 4372726, at *5 (D.P.R. Sept. 12, 2018).  The documents and

responses Cortland and Solus have requested, which concern the negotiation and history of the

priority treatment of the Fuel Line Advances, have clear relevance to the extent that the

Government Parties will seek to address the status of the Fuel Lines as "Current Expenses" in the context of the Settlement Motion.  In particular:  (a) RFPs 5 and 6 ask for communications with third parties that specifically relate to the Current Expense and priority issue; (b) RFPs 8, 9 and 10 ask for discrete documents needed to show that the Fuel Lines were used for their intended purpose of funding fuel purchases and repaid within the short-term maturities contemplated by the Fuel Line Facilities; and (c) RFPs 22 and 23 again ask for documents that are specifically focused on the Current Expense treatment of the Fuel Lines, including the specific provisions in the credit agreements that deal with that treatment.  *See* Ex. A at 13, 15.

42.     "When a party resists the production of evidence, it bears the burden of establishing lack of relevancy or undue burden." *Autoridad de Carreteras y Transportacion* v. *Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (internal quotation marks and citations omitted).  The Government Parties have not made any such showing; and the Court's repeated requests that they address "their position as to how the RSA will preserve the rights of non-settling interested parties," June 12, 2019 Tr. at 157, establishes the relevance of the requested discovery.  *See In re Smith*, No. 14-21261, 2017 WL 1190590, at *8 (Bankr. D. Conn. Mar. 29, 2017) (party resisting discovery has burden to move for protective order or risk waiver of objections); *see also Diaz-Garcia* v. *Surillo-Ruiz*, 45 F. Supp. 3d 163, 166-68 (D.P.R. 2014) (granting motion to compel production on showing that request was relevant to plaintiff's claim).

**C.     Cortland and Solus join the motion to compel filed by the Official Committee of Unsecured Creditors.**

43.     The Fuel Line Lenders hereby join in the renewed motion to compel filed by the Creditors' Committee with respect to the discovery sought from the Government Parties.  As discussed in the Creditors' Committee's motion, the search and custodian criteria proposed by AAFAF and PREPA are inadequate to provide a record that will allow objecting parties to assess

the RSA and cross-examine the Government Parties' witnesses.  Moreover, as set forth in detail

in the Creditors' Committee's motion, the Oversight Board, AAFAF and PREPA's blanket

assertions of deliberative process privilege and common interest with the bondholders are

unjustified.

## RESERVATION OF RIGHTS

44.     The Fuel Line Lenders reserve all rights to amend or supplement this motion and

to file additional motions to compel production of documents or other information at a future

date if necessary in light of developments.

## CONCLUSION

45.     For the foregoing reasons, the Fuel Line Lenders respectfully request that the

Court enter the Proposed Order appended hereto.  Specifically, the Government Parties should be

compelled to produce documents, respond to interrogatories and provide deposition witnesses

pursuant to Federal Rule 30(b)(6) relating to the Fuel Line Lenders' Current Expense status and

right to be paid in full before the bondholders unless they agree and stipulate — as stated in their

numerous discovery responses — that those issues have no bearing on the Settlement Motion and

the Settlement Motion should be granted regardless of those rights of the Fuel Line Lenders.  In

the alternative, in light of their refusal to produce relevant documents and information, the

Government Parties should be precluded from seeking a determination of the merits of the inter-

creditor issues that they have claimed have no bearing on the Settlement Motion.

## Certification Pursuant to Fed. R. Civ. P. 37(a)(1)

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, I hereby certify

that on May 31, 2019 and July 8, 2019, I conferred in good faith with counsel for the Oversight

Board, AAFAF and PREPA via telephone, and engaged in further discussion via email.  After

conferring about the subject of this motion, the parties were unable to agree on a resolution as of

the deadline for this filing.

Dated:  July 16, 2019                                    Respectfully submitted,

 /s/ Nayuan Zouairabani                                  /s/ Emil A. Kleinhaus
Nayuan Zouairabani                                       Richard G. Mason (admitted *pro hac vice*)
USDC-PR No. 226411                                       Amy R. Wolf (admitted *pro hac vice*)
MCCONNELL VALDÉS LLC                                     John F. Lynch (admitted *pro hac vice*)
270 Muñoz Rivera Avenue, Suite 7                         Emil A. Kleinhaus (admitted *pro hac vice*)
Hato Rey, Puerto Rico  00918                             Angela K. Herring (admitted *pro hac vice*)
P.O. Box 364225                                          WACHTELL, LIPTON, ROSEN & KATZ
San Juan, Puerto Rico  00936-4225                        51 West 52nd Street
Telephone:  (787) 250-5604                               New York, New York  10019
Facsimile:  (787) 759-9225                               Telephone:  (212) 403-1000
Email:  nzt@mcvpr.com                                    Facsimile:  (212) 403-2000
                                                         Email:  rgmason@wlrk.com
                                                                 arwolf@wlrk.com
                                                                 jlynch@wlrk.com
                                                                 eakleinhaus@wlrk.com
                                                                 akherring@wlrk.com

                                                         *Attorneys for Cortland Capital Market
                                                         Services LLC, as Administrative Agent*


 /s/ Jose L. Ramirez-Coll                                /s/ Bryce L. Friedman
Jose L. Ramirez-Coll                                     Bryce L. Friedman (admitted *pro hac vice*)
USDC-PR No. 221702                                       Nicholas Baker (admitted *pro hac vice*)
ANTONETTI, MONTALVO                                      Sarah E. Phillips (admitted *pro hac vice*)
& RAMIREZ-COLL                                           SIMPSON THACHER & BARTLETT LLP
1225 Ponce de Leon Avenue                                425 Lexington Avenue
San Juan, Puerto Rico  00907                             New York, New York  10017
Telephone:  (787) 977-0303                               Telephone:  (212) 455-2000
Facsimile:  (787) 977-0323                               Facsimile:  (212) 455-2502
Email:  jramirez@amrclaw.com                             Email:  bfriedman@stblaw.com
                                                                 nbaker@stblaw.com
                                                                 sarah.phillips@stblaw.com

                                                         *Attorneys for SOLA LTD, Solus Opportunities
                                                         Fund 5 LP, Ultra Master LTD and Ultra NB
                                                         LLC*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------- x
                                                        :
In re                                                   :
                                                        :   PROMESA
THE FINANCIAL OVERSIGHT AND                             :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                       :
                                                        :
     as representative of                               :   Case No. 17-BK-3283 (LTS)
                                                        :
THE COMMONWEALTH OF PUERTO RICO,                        :   (Jointly Administered)
et al.,¹                                                :
                                                        :
          Debtors.                                      :
                                                        :
------------------------------------------------------- x
                                                        :
In re                                                   :
                                                        :   PROMESA
THE FINANCIAL OVERSIGHT AND                             :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                       :
                                                        :
     as representative of                               :   Case No. 17-BK-04780 (LTS)
                                                        :
PUERTO RICO ELECTRIC POWER                              :
AUTHORITY (PREPA),                                      :
                                                        :
          Debtor.                                       :
------------------------------------------------------- x
```

## [PROPOSED] ORDER GRANTING RENEWED OMNIBUS MOTION OF CORTLAND CAPITAL MARKET SERVICES LLC, AS ADMINISTRATIVE AGENT, AND SOLUS TO COMPEL DISCOVERY RESPONSES IN CONNECTION WITH PREPA RSA SETTLEMENT MOTION

---

[1]       The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:  8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747).

Upon consideration of the *Renewed Omnibus Motion of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion* (the "Motion"),[2] filed on July 16, 2019, and it appearing that (i) the Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a); (ii) venue of this proceeding and the Motion is proper under 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a); (iii) notice of the Motion was adequate and proper under the circumstances and no further or other notice need be given; and after due deliberation and sufficient cause appearing therefor, the Court concludes that Cortland Capital Market Services LLC, as administrative agent, SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD and Ultra NB LLC have satisfied the requirements for an order compelling production of documents, interrogatory responses, and deposition testimony pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rules 7026 and 7037 of the Federal Rules of Bankruptcy Procedure and 48 U.S.C. § 2170,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Oversight Board, AAFAF and PREPA (the "Government Parties") shall, no later than July ___, 2019:  (a) produce all non-privileged documents responsive to Requests for Production 5, 6, 8, 9, 10, 22 and 23 set forth in Exhibit A to the Motion; (b) respond to all of the interrogatories set forth in Exhibit B to the Motion; and (c) prepare and make available for deposition a witness or witnesses to testify concerning 30(b)(6) Topic 4 set forth in Exhibits I, J and K to the Motion.

---

[2]      Capitalized terms not defined have the meanings given in the Motion.

3.      The Government Parties' failure to produce documents responsive to Requests for Production 5, 6, 8, 9, 10, 22 and 23 and to make a witness available to testify concerning 30(b)(6) Topic 4 precludes the Government Parties from advancing any arguments or submitting any evidence regarding the "Current Expense" status of the Fuel Lines or the payment rights of the Fuel Lines in relation to PREPA's bondholders at or in advance of the hearing on the Settlement Motion.


Dated:  _____, 2019


_____
Honorable Judith G. Dein
United States Magistrate Judge