Hearing Date: **July 30, 2019 at 1:00 p.m. (AST)**
Response Deadline: **July 23, 2019**
Reply Deadline: **July 25, 2019**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.* | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRICAL POWER AUTHORITY (PREPA),<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-04780-LTS<br><br>**Court Filing Relates Only to PREPA** |

## MOTION OF SOLUS TO COMPEL TESTIMONY PURSUANT TO RULE 30(b)(6) FROM U.S. BANK IN CONNECTION WITH PREPA RSA SETTLEMENT MOTION

---

\* The Debtors in these title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Case:17-03283-LTS Doc#:8047-2 Filed:07/17/19 Entered:07/17/19 00:38:31 Desc:
Exhibit 1 Page 2 of 18

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................................2

JURISDICTION AND VENUE .............................................................................................................6

RELEVANT BACKGROUND ...............................................................................................................6

      A.      The Proposed Bond Settlement...................................................................................8

      B.      The Present Discovery Dispute...................................................................................9

ARGUMENT .........................................................................................................................................10

      A.      The Fuel Line Lenders' Subpoena To U.S. Bank Indisputably Seeks
              Relevant Testimony And Does Not Impose An Undue Burden .............................11

      B.      The Bondholders, Acting Through Trustee U.S. Bank, Cannot Seek to
              Subordinate The Fuel Line Lenders' Priority Without Providing Discovery
              Concerning Current Expense or Priority Status......................................................13

RESERVATION OF RIGHTS ..............................................................................................................14

CONCLUSION......................................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
  262 F.R.D. 293 (S.D.N.Y. 2009) ............................................................................................... 11

*Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*,
  319 F.R.D. 422 (D.P.R. 2016) ............................................................................................ 11, 12

*B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters*,
  285 F.R.D. 185 (D.P.R. 2012) ................................................................................................. 11

*Hickman v. Taylor*,
  329 U.S. 495 (1947)................................................................................................................. 10

*Irizarry-Santiago v. Essilor Indus.*,
  293 F.R.D. 100 (D.P.R. 2013) ................................................................................................. 10

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)................................................................................................................. 10

*S.E.C. v. Archer*,
  No. 16-cv-3505, 2018 WL 3424449 (S.D.N.Y. July 2, 2018).................................................. 11

*S.E.C. v. Sargent*,
  229 F.3d 68 (1st Cir. 2000)...................................................................................................... 10

**Statutes**

PROMESA § 306(a) ....................................................................................................................... 6

PROMESA § 307(a) ....................................................................................................................... 6

PROMESA § 310........................................................................................................................... 1

**Rules**

Fed. R. Bankr. P. 7026................................................................................................................. 11

Fed. R. Bankr. P. 9014................................................................................................................... 1

Fed. R. Civ. P. 26(b)(1)................................................................................................................ 11

Fed. R. Civ. P. 30(b)(6)......................................................................................................... passim

Fed. R. Civ. P. 37(a)(1)................................................................................................................ 16

SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (collectively, "Solus"), as lenders to the Puerto Rico Electric Power Authority ("PREPA") under the Trade Finance Facility Agreement, dated as of July 20, 2012, among PREPA and Citibank, N.A., as predecessor to the existing lenders thereunder (as amended, the "Citibank Credit Agreement," together with the Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank, Cortland Capital Market Services LLC, as successor administrative agent[1] ("Cortland") and the lenders party thereto (as amended, the "Scotiabank Credit Agreement"), the "Fuel Lines") respectfully submits this motion to compel U.S. Bank, National Association, Trustee ("U.S. Bank"), to produce a witness pursuant to Federal Rule of Civil Procedure 30(b)(6), made applicable to these proceedings by Rules 7030 and Rule 9014 of the Federal Rules of Bankruptcy Procedure and section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), in compliance with the Notice of Amended Subpoena to U.S. Bank, National Association, as PREPA Bond Trustee, by Cortland Capital Markets LLC, As Administrative Agent, and Solus, dated July 5, 2019 (the "Subpoena"), in connection with the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Dkt. No. 1235] (the "Settlement Motion").[2]  A copy of the Subpoena is attached as Exhibit A.

---

[1]   Effective May 17, 2019, Cortland replaced Scotiabank de Puerto Rico ("Scotiabank") as administrative agent for lenders under the Scotiabank Credit Agreement.

[2]   Capitalized terms not defined have the same meanings as in the Settlement Motion.  The lenders under the Fuel Lines are referred to as the "Fuel Line Lenders" and the approximately $700 million in loans they made to PREPA are referred to as the "Fuel Line Loans."

**PRELIMINARY STATEMENT**

1. Beginning in 2012, the Fuel Line Lenders extended approximately $700 million in working capital to PREPA so that PREPA could purchase the fuel needed to operate its power generation system. Aside from holders of power revenue bonds, the Fuel Line Lenders are the main financial creditors of PREPA.[3] U.S. Bank is trustee under the indenture dated as of January 1, 1974 governing Power Revenue Bonds issued by PREPA (as amended, the "Trust Agreement") for holders of approximately $8.3 billion of bonds issued by PREPA (the "Bondholders"). U.S. Bank is a supporter and primary beneficiary of the Settlement Motion. U.S. Bank should be compelled to produce a Rule 30(b)(6) witness to provide evidence that will support the Fuel Line Lenders' objections to the Settlement Motion.

2. The Fuel Line Loans were made on the express understanding of relevant parties—including PREPA, the Fuel Line Lenders and U.S. Bank as Trustee—that the Fuel Line advances were "Current Expenses" under the Trust Agreement governing PREPA's bond debt. Each of these parties understood that the Trust Agreement not only requires PREPA to pay all Current Expenses *before* the bonds, but it also provides that the bondholders' lien and recourse are limited to "Net Revenues" in a specified "Sinking Fund"—namely, revenues *after* all Current Expenses are paid. As a result, unless and until the Fuel Lines are paid in full, the bondholders have *no security* (beyond, at most, the amounts already in the Sinking Fund) and *no right to recover anything* (again, beyond amounts already in the Sinking Fund).

---

[3] As of the date of their proof of claim, lenders under the Scotiabank Credit Agreement were also owed $45,958,492.80 on account of accrued interest, as well as additional costs and expenses. *See* Claim No. 44378, Annex ¶ 7. As of the date of Solus's proof of claim, lenders under the Citibank Credit Agreement were also owed $11,075,323.70 on account of accrued interest, as well as additional costs and expenses. See Claim No. 44342, Annex ¶ 7 & Ex. A. Additional interest, costs and expenses have since accrued.

3. Through the Settlement Motion, the Bondholders and PREPA, acting though its representative the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF," together with the Oversight Board and PREPA, the "Government Parties") seek to have this Court approve a Restructuring Support Agreement (the "RSA") in an order that would subvert and disregard the pre-petition priority scheme and provide substantial recoveries to bondholders, outside of a plan, on account of claims that have almost *no value* unless and until Current Expenses are paid in full.

4. The Fuel Line Lenders intend to object to the Settlement Motion on the basis that, among other things, it would expand the rights of bondholders and U.S. Bank as Trustee, while preventing the Fuel Line Lenders from vindicating their own rights. As outlined below, to gather facts supporting their objections, the Fuel Line Lenders served document requests on May 22, as well as the Subpoena on U.S. Bank seeking a deposition pursuant to Rule 30(b)(6) on topics related to the Settlement Motion and U.S. Bank's position, documents, communications and analysis regarding the Current Expense treatment or priority status of the Fuel Lines under the Trust Agreement. Following a meet-and-confer process, U.S. Bank agreed to produce certain documents in response to the document requests, subject to objections. At the eleventh hour, the day before this motion was due, U.S. Bank did an about face and refused to produce a Rule 30(b)(6) witness on any of the examination topics in the Subpoena.

5. Recent statements by the Government Parties at the July 11 status conference, as well as this Court's direction that the Government Parties "address the fuel line and compensation priority arguments and tell [the Court] what the legal basis and factual basis is of the government parties' position that this requested set of approvals of the 9019 does not adversely affect legal rights that these people have", *see* July 11, 2019 Hr'g Tr., at 55:1–6 [Dkt.

3

No. 1459], have underscored that U.S. Bank testimony in response to the Subpoena is important to the Fuel Line Lenders' objections and critical to the adjudication of the Settlement Motion.

6. Specifically, whereas the Government Parties, with the support of U.S. Bank initially asserted (falsely) that "[t]he rights of all other creditors are left unprejudiced and unaffected" by the settlement (Settlement Motion ¶ 65), at the July 11 status conference the Oversight Board suddenly changed its tack and argued for the first time that the Fuel Line Lenders had made up their priority right out of "thin blue air", *see* July 11, 2019 Hr'g Tr. at 55:24-25 [Dkt. No. 1459], and that the Trust Agreement merely grants PREPA "permission" to pay its Current Expenses first, *see id.* at 58:7–14.

7. To the contrary, the factual record already produced in discovery belies the Government Parties' and U.S. Bank's positions. In a host of documents authored or produced by parties in interest —including offering documents, credit agreements, credit approval memos, bond indentures, legal opinions and government resolutions—it is made plain that the common understanding of relevant parties is that the Fuel Line Loans have priority over U.S. Bank and the Bondholders. PREPA, for example, in various official statements to U.S. Bank and its Bondholders has proclaimed to U.S. Bank, its Bondholders and the world that "[t]he debt service payments on" the Fuel Lines "are Current Expenses **payable prior to debt service on the Authority's Power Revenue Bonds**"[4] and that the Fuel Line Lenders are "**ENTITLED to be paid before debt service on the Power Revenue Bonds**."[5]

---

[4] Complaint, *Cortland Capital Market Services LLC, et al.*, v. *The Financial Oversight and Management Board, et al.*, Adv. Pro. No. 19-00396 ("Adversary Complaint"), Ex. 14 (PREPA Series 2013A Official Statement at 53) (emphasis added).

[5] Adversary Complaint, Ex. 15 (PREPA Series 2013A Official Statement) at 22 (emphasis added); Adversary Complaint, Ex. 15 (PREPA Series 2012A Official Statement) at 18 (emphasis added).

4

8.  Similarly, Citibank N.A, who negotiated and entered into the Citibank Credit Agreement with PREPA in 2012, wrote in contemporaneous documents that █████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ *See* Citibank Approval Memo at 5, attached as Exhibit C.  In connection with its internal approval of the terms of the credit agreement, Citibank ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ *Id.* at 6. Citibank assigned its loans under the Citibank Credit Agreement to the Solus entities on or about April 30, 2015.  Citibank currently acts as a financial advisor to the Oversight Board.

9.  Undoubtedly, U.S. Bank, as Trustee can provide similar evidence reflecting its contemporary understanding that the Fuel Line Loans have priority over the bonds for which U.S. Bank acts as Trustee.  When it does so, there will be no evidence to support the Government Parties' and U.S. Bank's current positions that the Fuel Line Lenders do not have priority.  The Fuel Line Lenders are entitled to discovery from U.S. Bank to establish the factual basis for its priority and to undermine the Government Parties' and U.S. Bank's position that the RSA does not materially and irrevocably affect the rights of the Fuel Line Lenders.

10. U.S. Bank has articulated no coherent basis for its refusal produce a witness.  It cannot hide behind relevance, because it has produced documents on the same subject matter. As outlined further herein, and as articulated in the *Renewed Omnibus Motion of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion* (to be filed contemporaneously with this motion), the testimony sought from U.S. Bank is highly relevant because it goes to the core issue of whether the Settlement Motion impacts the rights of the Fuel Line Lenders vis-à-vis

5

the Bondholders. Nor can it hide behind burden, because the indisputable relevance of the discovery, coupled with U.S. Bank's status as trustee for the primary beneficiaries of the RSA far outweighs the burden of a single deposition. Alternatively, if U.S. Bank refuses to produce a Rule 30(b)(6) witness in response to the Subpoena, U.S. Bank and the Bondholders must be precluded from presenting any evidence in support of the Settlement Motion regarding any topic they have refused to provide discovery on, including the Current Expense treatment or priority status of the Fuel Line Loans. U.S. Bank cannot sit on the sidelines of discovery, under the false mantle of a "non-party", while the Bondholders it represents attempt to orchestrate a premature and self-serving determination of priority issues at the Fuel Line Lenders' expense without the benefit of the full factual record.

11. For those reasons and the reasons set forth below, Solus respectfully requests that the Court either compel U.S. Bank to comply fully with the Subpoena by producing a witness to testify to each of the examination topics outlined therein, or preclude U.S. Bank and the Bondholders from introducing evidence or argument on issues related to the Current Expense treatment or priority status of the Fuel Line Loans.

## JURISDICTION AND VENUE

12. The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA § 306(a). Venue is proper subject to PROMESA § 307(a).

## RELEVANT BACKGROUND

13. Cortland is administrative agent for lenders under the Scotiabank Credit Agreement, pursuant to which approximately $550,000,000 in principal is currently outstanding. *See* Claim No. 44378. Substantial interest and other amounts are also owed under the Scotiabank Credit Agreement.

6

14. Solus is a lender under both the Scotiabank Credit Agreement and the Citibank Credit Agreement. Approximately $146,000,000 in principal is currently outstanding under the Citibank Credit Agreement. *See* Claim No. 44342. Substantial interest and other amounts are also owed under the Citibank Credit Agreement.

15. U.S. Bank is the current trustee under the Trust Agreement. The Fuel Line Lenders made the Fuel Line Loans at a time when PREPA had bond debt outstanding under the Trust Agreement. Unlike PREPA's bond debt, however, the Fuel Line Facilities had a specific and narrow purpose: "to finance [PREPA's] working capital requirements, classified as Current Expenses (as defined in the Trust Agreement), including but not limited to fuel oil purchases."[6]

16. The Trust Agreement creates a special fund called the "General Fund" into which all Revenues were to be deposited, and then contains a covenant that "moneys in the General Fund will be used first for the payment of the Current Expenses of the System."[7] The Fuel Line Lenders agreed to extend credit to PREPA—at relatively modest interest rates—on the express agreement and representation by PREPA and its representatives that the Fuel Line Loans would be treated as "Current Expenses" under the Trust Agreement and would be repaid prior to the bond debt under the Trust Agreement.

17. On a monthly basis, PREPA was directed by the Trust Agreement to transfer the remaining *"Net* Revenues," namely revenues after payment of Current Expenses, into a Sinking Fund. The revenues in those specified accounts, *and only those accounts*, are "subject to a

---

[6] Adversary Complaint, Ex. 1 (Scotiabank Credit Agreement) § 5.08; Adversary Complaint, Ex. 2 (Citibank Credit Agreement) § 5.08.

[7] *See* Adversary Complaint, Ex. 3 (Trust Agreement) §§ 503, 505.

7

lien . . . in favor of the holders of the bonds."[8] The form of Power Revenue Bond appended to the Trust Agreement further states that PREPA "hereby promises to pay" the amount owed "solely from the special fund provided therefor."[9] The bondholders thus have no lien on PREPA's revenues, and no right to payment, until the revenues are deposited in the Sinking Fund after payment of Current Expenses, including the Fuel Lines.

18.  PREPA confirmed this payment scheme (and the "net" pledge to the bondholders) in numerous documents contemporaneous with the Fuel Lines, including in Official Statements distributed to bondholders in April 2012 and August 2013, which provided that "Repayment of [the Fuel Line Facilities] and future lines of credit to cover operational expenses is treated as a Current Expense under the Trust Agreement, *which is entitled to be paid before debt service on the Power Revenue Bonds*."[10]

19.  Citibank, N.A., in connection with its internal approval of the terms of the Citibank Credit Facility, also indicated its understanding that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Exhibit C, at 6.

### A. The Proposed Bond Settlement

20.  On May 10, 2019, the Oversight Board filed the Settlement Motion, which contemplates a settlement of claims with certain of PREPA's bondholders embodied in the RSA that is attached as Exhibit A to the proposed order approving the Settlement Motion. *See* Dkt.

---

[8]   *Id.* § 507(h).

[9]   *Id.* at 3.

[10]  Adversary Complaint, Ex. 14 (PREPA Series 2013A Official Statement) at 22; Ex. 15 (PREPA Series 2012A Official Statement) at 18 (emphasis added).

8

No. 1235. The Oversight Board submitted an amended proposed order on June 18, 2019. *See* Dkt. No. 1361-1.

21. The RSA includes provisions that would prejudice the Fuel Line Lenders by predetermining critical issues that are normally addressed under a plan or in an adversary proceeding. For example, the RSA provides that the settling bondholders will receive payments from PREPA—before any payments are made to the Fuel Line Lenders—prior to approval of any plan and during the pendency of these Title III cases. *See* RSA § 2(d). The RSA also includes a "Most Favored Nations" clause providing that no financial creditor of PREPA, including the Fuel Line Lenders, may receive more favorable treatment than the settling bondholders. *See* RSA § 23.[11]

### B. The Present Discovery Dispute

22. In light of the issues raised by the Settlement Motion, the Fuel Line Lenders served a document request on U.S. Bank on May 22, 2019[12] and a subpoena and notice of deposition on U.S. Bank on June 3, 2019. The Fuel Lenders served an amended subpoena and notice of deposition on July 5, 2019, the Subpoena.[13] The amended notice of deposition is attached as Exhibit A.

---

[11] *See also Renewed Omnibus Motion of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion* (to be filed contemporaneously with this motion).

[12] *See First Set of Document Requests of Cortland Capital Market Services LLC, as Administrative Agent, and Solus Alternative Asset Management LP to U.S. Bank National Association, As Bond Trustee*, attached as Exhibit B.

[13] This discovery request was served in accordance with the original Discovery and Scheduling Order entered by Judge Swain. *See Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]* [Dkt. No. 1253] (the "Discovery and Scheduling Order").

9

23.     The Subpoena seeks testimony from U.S. Bank pursuant to Rule 30(b)(6) regarding the following:

- Examination Topic 1: U.S. Bank's "negotiation of, entry into, and terms of the RSA";

- Examination Topic 2: U.S. Bank's control as of the Petition Date and at present over the funds created by the Trust Agreement, including the General Fund and Sinking Fund;

- Examination Topic 3: U.S. Bank's "position, documents or communications regarding, or analysis of the Current Expense treatment or priority status of the Fuel Line Loans under the Trust Agreement"; and

- Examination Topic 4: Testimony concerning documents produced in response to the Fuel Line Lenders' *First Set of Document Requests of Cortland Capital Market Services LLC, as Administrative Agent, and Solus Alternative Asset Management LP to U.S. Bank National Association, As Bond Trustee.*"

24.     The Fuel Line Lenders have attempted to amicably resolve this dispute without the need for motion practice by meeting and conferring with U.S. Bank on numerous occasions. Though U.S. Bank agreed to produce certain documents in response to each and every one of the Fuel Line Lenders' document request, on July 15 (the day before this motion was due), U.S. Bank announced that it would refuse to produce a 30(b)(6) witness in response to any of the examination topics in the Subpoena.

## ARGUMENT

25.     Parties may obtain discovery regarding any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); FED. R. BANKR. P. 7026. The scope of discovery extends to "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Irizarry-Santiago v. Essilor Indus.*, 293 F.R.D. 100, 104 (D.P.R. 2013) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see S.E.C. v. Sargent*, 229 F.3d

68, 80 (1st Cir. 2000) ("[T]he deposition-discovery rules are to be accorded a broad and liberal treatment.") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

26. Depositions are a favored method of discovery, as they often provide the most effective means for a party to obtain complete information. *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 437 (D.P.R. 2016) (citation omitted). A party must therefore show a "particular and compelling need" supported by "specific facts" to avoid a deposition. *Id.*; *see also B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters*, 285 F.R.D. 185, 186 (D.P.R. 2012) (requiring "'extraordinary' or 'exceptional' circumstances" to quash a deposition).

27. While courts are mindful not to impose undue burdens on non-parties, a non-party (assuming U.S. Bank is one) "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009); *cf. id.* at 300 ("Inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony."). Moreover, the "protection" to be afforded non-parties from the imposition of undue burdens "is less robust" where, as here, "the nonparty is closely allied with [the parties seeking relief] and the information [it] possess[es] is . . . pertinent." *S.E.C. v. Archer*, No. 16-cv-3505, 2018 WL 3424449, at *2 (S.D.N.Y. July 2, 2018).

### A. The Fuel Line Lenders' Subpoena To U.S. Bank Indisputably Seeks Relevant Testimony And Does Not Impose An Undue Burden

28. U.S. Bank cannot dispute that the Fuel Line Lenders' Subpoena seeks testimony directly relevant to whether the RSA adversely affects the legal rights of the Fuel Line Lenders, which this Court ruled must be addressed at the July 11 status conference, *see* July 11, 2019 Hr'g

11

Tr., at 55:1–6 [Dkt. No. 1459]. As outlined above, the factual record already reflects a course of dealing over decades in which the Government Parties, Citibank, and the Fuel Line Lenders recognized and affirmed the Current Expense treatment and priority of the Fuel Line Loans. There can be no serious debate that similar discovery with respect to U.S. Bank as Trustee for the Bondholders is critical to completing the factual record. U.S. Bank undoubtedly has records reflecting a similar course of dealing and understanding, and the Fuel Line Lenders are entitled to examine the Trustee to the PREPA Bondholders regarding these issues in connection with their objection to the Settlement Motion. Discovery of U.S. Bank will reveal that its and the Bondholders' current position that the Fuel Line Lenders do not have priority is without merit.

29. U.S. Bank's stated reason for refusing to provide deposition testimony—that the testimony sought amounts to mere legal conclusions—is specious. Course of dealing and understanding of contractual relations are facts. Documents already produced by other parties and testimony to be given by them shows robust business analysis by non-lawyers as to the priority of the Fuel Lines vis å vis U.S. Bank' and the Bondholders, as well as the parties' business understanding that the payment of Fuel Lines comes before U.S. Bank and the Bondholders.

30. Further, the Fuel Line Lenders' Subpoena does not place an undue burden on U.S. Bank. "When a party resists the production of evidence, it bears the burden of establishing lack of relevancy or undue burden." *Autoridad de Carreteras y Transportacion*, 319 F.R.D. at 427 (internal quotation marks and citations omitted). Not only has U.S. Bank failed to articulate the manner and extent of any burden whatsoever in designating a 30(b)(6) witness for deposition, it did not refuse, on relevance, burden, or any other grounds, to produce documents on the same

12

topic: "communications relating to the Current Expense treatment or priority of the Fuel Line Loans." *See* Exhibit B, at 9.

31. The Subpoena seeks tailored and proportional testimony, which the Fuel Line Lenders offered to narrow, if necessary. The Fuel Line Lenders offered to take the deposition in Minnesota to minimize burden on U.S. Bank. U.S. Bank refused to engage and offered no proposal. Even if U.S. Bank had been able to articulate the manner and extent of any specific burden (which they did not and cannot), the burden associated with producing a 30(b)(6) witness is trivial in comparison to the importance of the highly relevant discovery testimony through the Subpoena, which speaks to the core issue of whether the RSA Agreement materially and irrevocably affects the rights of non-settling creditors in favor of U.S. Bank and its Bondholders.

**B. The Bondholders, Acting Through Trustee U.S. Bank, Cannot Seek to Subordinate The Fuel Line Lenders' Priority Without Providing Discovery Concerning Current Expense or Priority Status**

32. Though U.S. Bank seeks to hide behind the mantle of its alleged status as a "non-party" to the RSA in avoiding its discovery obligations, it is anything but. To the contrary, U.S. Bank, as trustee to the Bondholders, is an RSA supporter hoping to orchestrate a resolution of the Bondholders' disputes with the Government Parties through the Settlement Motion, at the expense of the Fuel Line Lenders' priority rights. *See* July 11, 2019 Hr'g Tr., at 26:13–16 [Dkt. No. 1459] ("[W]e do anticipate participating in these proceedings at the appropriate time. . . . [W]e disagree with the positions taken by the fuel line lenders . . . with respect to their interpretation of the trust agreement"). To the extent that the Government Parties with the support of U.S. Bank as Trustee is seeking to use the Settlement Motion hearing as a forum to predetermine inter-creditor issues that should be determined in the context of a plan for the benefit of itself and the Bondholders, U.S. Bank, as Trustee, cannot be permitted to avoid discovery as a "non-party" or otherwise. The Court should order U.S. Bank to produce a Rule

13

30(b)(6) witness to provide testimony in response to the Subpoena as the Fuel Line Lenders are fully entitled to all evidence regarding communications, analysis and conduct related to the Current Expense treatment and priority status of the Fuel Lines. In the alternative, in light of its refusal to comply with the Subpoena, U.S. Bank and the Bondholders it represents as Trustee must be precluded from making further arguments or submitting evidence regarding any topics to which they have refused to provide testimony.

## RESERVATION OF RIGHTS

33. Solus reserves all rights to amend or supplement this motion and to file additional motions to compel production of documents or other information at a future date if necessary in light of future developments.

## CONCLUSION

34. For the foregoing reasons, Solus respectfully requests that the Court enter the Proposed Order appended hereto. Specifically, U.S. Bank, as PREPA Bond Trustee, should be compelled to produce a witness pursuant to Federal Rule 30(b)(6) in response to each of the examination topics outlined in the Subpoena, including testimony regarding its position, documents or communications regarding, or analysis of, the Current Expense treatment or priority status of the Fuel Line Loans under the Trust Agreement. In the alternative, if the Fuel Line Lenders are not permitted to take the Rule 30(b)(6) deposition of U.S. Bank, as PREPA Bond Trustee, U.S. Bank and the Bondholders should be precluded from making further arguments or submitting evidence regarding Current Expense treatment of the Fuel Lines, the priority status of the Fuel Line Loans under the Trust Agreement, and any other topic for which they have refused to grant discovery.

**Certification Pursuant to Fed. R. Civ. P. 37(a)(1)**

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, I hereby certify that on July 9, and July 16, counsel to the Fuel Line Lenders conferred in good faith with counsel for U.S. Bank via telephone, and engaged in further discussion via email. After conferring about the subject of this motion, the parties were unable to agree on a resolution as of the deadline for this filing.

| | |
|---|---|
| Dated: July 16, 2019 | Respectfully Submitted, |
| /s/ Jose L. Ramirez-Coll | /s/ Bryce L. Friedman |
| Jose L. Ramirez-Coll | Bryce L. Friedman (admitted *pro hac vice*) |
| USDC-PR No. 221702 | Nicholas Baker (admitted *pro hac vice*) |
| ANTONETTI, MONTALVO | Sarah E. Phillips (admitted *pro hac vice*) |
| & RAMIREZ-COLL | SIMPSON THACHER & BARTLETT LLP |
| 1225 Ponce de Leon Avenue | 425 Lexington Avenue |
| Suite 1001 | New York, NY 10017 |
| San Juan, Puerto Rico 00907 | Tel.: 212-455-2000 |
| Telephone: (787) 977-0303 | Fax: 212-455-2502 |
| Facsimile: (787) 977-0323 | Email: sarah.phillips@stblaw.com |
| Email: jramirez@amrclaw.com | bfriedman@stblaw.com |
| | nbaker@stblaw.com |

*Attorneys for Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC*