UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- X
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
     as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
:
Debtors.[1] :
---------------------------------------------------------------------- X Re: ECF No. 7640

**OMNIBUS REPLY IN SUPPORT OF THE**
**FINANCIAL OVERSIGHT AND MANAGEMENT**
**BOARD OF PUERTO RICO'S MOTION TO STAY CONTESTED MATTERS**

To the Honorable United States District Judge Laura Taylor Swain and the Honorable United States Magistrate Judge Judith G. Dein:

    The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), acting by and through its Special Claims Committee (the "Special Claims Committee"), respectfully submits this reply (the "Reply") in further support of its *Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment*, ECF No. 7640, (the "Motion"). The Special Claims Committee also incorporates herein by reference the *Omnibus Reply of Financial Oversight and Management Board in Further Support of Its Motion to Stay*

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment*, filed contemporaneously herewith in Adv. Pro. No. 18-00149, and further respectfully represents as follows:[2]

### Introduction

1. While it should be obvious, it bears emphasis that the Motion is not a request to approve the recently achieved PSA nor is it an effort to obtain confirmation of the plan of adjustment that the Oversight Board intends to file soon. As the Court has recently observed, a plan support agreement does not "lock" a debtor into a plan. Rather, "given [the debtor's] judgment that they believe this is a realistic and important opportunity," and that "things may change," the debtor "propos[es] to buy…a space of time in which to develop around [the] model" for plan confirmation embodied in the agreement.[3] Accordingly, a hearing on the Motion should not be utilized by opponents as an opportunity for a "full Monty confirmation hearing."[4]

2. Rather, the Oversight Board and its Special Claims Committee asks, explicitly, only to buy a space of time to further develop a confirmable plan model. That time, taxpayer dollars, and judicial resources could well be wasted if the parties were to continue litigating issues that the model seeks to resolve on a consensual basis. Upon a grant of the Motion, the Oversight Board fully intends to continue the process of developing the terms of, and building

---

[2] Capitalized terms herein shall have the meaning ascribed to them in the Motion unless otherwise noted.

[3] Hr'g. Tr., Case No. 17-04780 (July 11, 2018) at 27:23-28:14.

[4] *Id.* at 32:3-6.

support for, a proposed plan that offers the opportunity to settle contested bond claims rather than fully litigate them.[5]

3. Accordingly, while the Special Claims Committee will not now engage with the premature accusations that a plan contemplated by the PSA is not confirmable, it notes that (i) certain of the objecting parties underestimate the breadth of support for the PSA, and (ii) references in the PSA to limitations on claimant voting rights will be or have been modified, and are not meant to be inconsistent with section 502 and 1126(a) of the Bankruptcy Code, or Bankruptcy Rule 3018 (both incorporated by PROMESA sections 301 and 310). *See Declaration of Brian S. Rosen in Support of Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* filed contemporaneously herewith.

4. Instead, the Special Claims Committee addresses the primary argument that the Court should not exercise its broad discretion to stay the GO Objections under applicable standards for such relief. The Objectors argue that the exercise of such discretion is not warranted under the present circumstances because the PSA and soon-to-be-filed proposed plan could not possibly resolve the GO Objections and thus any delay in litigation prejudices the defendants and the general public.

5. The Objectors ignore the fact that the requested delay inures to the vastly greater benefit of the Commonwealth, its taxpayers and citizens, other non-party stakeholders, and the

---

[5] The formal "Objections" are: *Objection and Reservation of Rights of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. with Respect to Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment*, ECF No. 7892; *Objection to Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment*, ECF No. 7937; *The Ad Hoc Group of General Obligation Bondholders' Objection to Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment*, ECF No. 7938; *Response of Individual General Obligation Bondholder to Motion of FOMB to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment*, ECF No. 7961; *Official Committee of Unsecured Creditors' Omnibus Objection to (A) Motion to Stay Contested Matters [Docket No. 7640 in Case No. 17-3283 (LTS)] and (B) Motion to Stay PBA Adversary Proceeding [Docket No. 99 in Adv. Proc. No. 18-149 (LTS)] Pending Confirmation of Commonwealth Plan of Adjustment*, ECF No. 106 in Adv. Pro. No. 18-00149 (LTS); and *Ambac Assurance Corporation's Objection To The Motion To Stay Contested Matters Pending Confirmation Of Commonwealth Plan Of Adjustment,* ECF No. 7902.

Court. The unfortunate reality is that no plan can pay all stakeholders in full, and thus any plan is likely to face opposition from some quarters. The Objectors mount strenuous objections to the PSA and the yet to be filed plan at this early stage, even though the PSA and the contemplated plan preserves litigation rights and defenses of the objecting parties and enjoys strong support from key constituents in the early stages of consensus-building. Objections of the kind raised to this Stay Motion should not become the basis to deny the Oversight Board the time and resources required to build on its momentum to accomplish the primary objective of PROMESA—to achieve fiscal responsibility and access to the capital markets for Puerto Rico.[6]

## ARGUMENT

6. The Supreme Court counsels that "in cases of extraordinary public moment, the [party] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). The First Circuit adds that balancing the interests involved in any stay motion "is a situation-specific task, and an inquiring court must take a careful look at the idiosyncratic circumstances of the case before it." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004).

7. The present circumstances are certainly idiosyncratic, and extraordinarily public. The public welfare and convenience are promoted by requiring the Objectors to submit to an adjustment in normal litigation procedures—even a brief delay—to try to facilitate the completion of one of the largest, most complex bankruptcies in American history.

II. **The Objectors Are Not Prejudiced By a Stay of the GO Objections.**

8. Aside from attempting a premature confirmation objection, the Objectors argue that the Oversight Board has not met its burden on the Stay Motion because the Objectors would

---

[6] PROMESA, § 101(a).

4

be prejudiced by the proposed stay. In so arguing, the Objectors mischaracterize the Oversight Board's burden as being "heavy" and "extraordinary." It is not.

9. The movant does indeed carry a heavy burden only "if there is a danger that the stay will damage the other party." *See Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). The burden is "heavy" and "extraordinary" when a party seeks to postpone litigation to gain a strategic advantage, but not when a plaintiff seeks a stay simply to consolidate relief and settlement opportunities with numerous interested parties. *See Microfinancial,* 385 F.3d at 78; *Austin*, 705 F.2d at 5; *Albert v. Blue Diamond Growers*, 232 F. Supp. 3d 509, 513 (S.D.N.Y. 2017).

10. Here, the danger is not analogous to the cases cited by the Objectors regarding the harm of continued non-payment, because there is *already* an automatic stay in place preventing payment to the Objectors—the purpose of which is to facilitate repayment of such portion of the Commonwealth's legitimate debts as it is able to repay while fulfilling its core duties to the residents, taxpayers, and legitimate creditors of Puerto Rico.[7] Denying the Stay Motion will not result in the Objectors being paid any sooner, it only makes it more difficult, and costly, for the Oversight Board to confirm a plan by which any party might be repaid.

11. Regardless, even to the extent the Objectors are damaged in any cognizable way, the Special Claims Committee has met its burden because the Stay Motion would not result in any extraordinary delay or prejudice to the Objectors.[8] To be clear, under the current GO

---

[7] *See, e.g.*, ECF No. 7938, p. 4 (GO Group objection citing *Microfinancial*, 385 F.3d at 78). In *Microfinancial*, the Court omitted reference to the "danger that the stay will damage the other party" element because under the circumstances the requirement was obviously met: defendants to a civil action moved for stay on grounds that they were about to defend a parallel criminal proceeding. 385 F.3d at 76. The defendants had already tried and been dismissed from bankruptcy, and the appellate court observed that the plaintiff's "prospects of recovery were ebbing" such that it would be harmed by a further stay. *Id.* at 78.

[8] The cases cited regarding the prejudice caused by delay are inapposite. Puerto Rico is not a melting ice cube of the sort contemplated where delay in litigation and collection would allow for complete dissipation of assets.

Procedures Order, the parties to the GO Objections are in the midst of a meet and confer process seeking to develop procedures for the timing and sequencing of the bond validity litigation. As described in the Stay Motion, the Oversight Board is prepared to continue those discussions with respect to the GO Objections. *See* Stay Motion, ¶¶ 5-8.

12. The PSA clearly contemplates a proposed plan by which litigation of the GO Objections, if necessary, would proceed following confirmation. For a disclosure statement to be approved and the plan to be confirmed, the Oversight Board must develop procedures for any such litigation. Accordingly, the Oversight Board proposes that the disclosure statement for the proposed plan is the appropriate vehicle to permit parties-in-interest to disclose their view of appropriate litigation procedures for a post-effective date litigation of the GO Objections. In other words, the PSA does not alter the status quo: it continues to obligate the Oversight Board to

---

*See Microfinancial*, 385 F.3d at 78. Even the cases cited by the GO Group in the context of uncertain prospects for confirmation can be distinguished: in *In re DeLuca*, 194 B.R. 65 (Bankr. E.D. Va. 1996), a bankruptcy court denied a litigation stay motion where confirmation was before the court, objections had been filed, and the court itself had expressed doubts as to permissibility of certain plan provisions. In *In re Friedman's, Inc.*, No. 05-40129, 2006 WL 6902025 (Bankr. S.D. Ga. Jan. 25, 2006), a plan had already been confirmed and litigation would determine recoveries to unsecured creditors; the court denied a motion for stay pending appeal of various discovery orders because the movant failed to show a "strong likelihood of success" on the merits of the appeal to justify delaying recoveries. The bankruptcy court itself had already ruled on the underlying discovery issues, and unsurprisingly did not foresee a strong likelihood of successful appeal of its own ruling. *Id*. The issues presented here are not analogous; no confirmation objections could be properly filed and there is no merits decision underlying the Objectors' pessimistic forecasts regarding the proposed plan.

The Objectors additionally allege other forms of prejudice, some of which may be addressed herein or at the hearing on the Stay Motion, and others which may not warrant a response. The GO Group, for instance, decries the delay in its ability to file a substantive response to the GO Objections on the merits. *See* ECF No. 7938 at 22-23; *cf.* ECF No. 7937 at ¶38. The GO Group, however, has filed numerous documents with the Court detailing its substantive responses to the GO Objections on the merits, including within its own objection to the Stay Motion. *See* ECF No. 7938 at 7-8; *Omnibus Conditional Objection of the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds*, ECF No. 6099. The GO Group cites cases suggesting that claims once filed must be resolved promptly on the merits, which cases are not applicable in the context of the anticipated plan and are especially dubious in light of the GO Group's repeated attempts to have the Court adjudicate a bond objection which the GO Group itself believes is without merit. *See Renewed Motion of the Ad Hoc Group of General Obligation Bondholders, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Conditional Objection to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds*, ECF No. 7814 (the "Second Conditional Procedures Motion"); ECF No. 7879 (Oversight Board objection to Second Conditional Procedures Motion).

work with the bondholders to develop procedures for litigation. It simply provides a mechanism for bondholders to opt to settle the litigation, thereby providing a streamlined process that may not require litigation with over 1,600 individual bondholders.

13. Moreover, the Stay Motion requests a stay that is "not immoderate" and would be subject to modification by this Court if warranted by the circumstances. Specifically, if the Court addresses confirmation issues at an appropriate moment and determines that confirmation is not feasible, it can terminate the stay. Such a moment would be likely to occur, if at all, in the coming weeks or months: the PSA may be terminated if the Oversight Board fails to garner additional support by September 28, 2019; likewise, the Oversight Board expects the disclosure statement approval and plan confirmation stages, among others, to serve as significant benchmarks.

14. In sum, the Oversight Board acknowledges it has a limited amount of time to prove the sufficiency of the PSA and the contemplated plan of adjustment. The Oversight Board requests that it be afforded that time. The Special Claims Committee respectfully submits that the assertion that even a few months' breathing space, while preserving all of the Objectors' litigation defenses and continuing to negotiate litigation procedures, causes substantial prejudice to such entities is without merit.

II. **Redundant Litigation Causes a Cognizable Hardship.**

15. It is beyond cavil that forcing a party to litigate the same issue (*i.e.*, the GO Objections and the proposed settlement of the GO Objections) against the same opponents on dual tracks, concurrently, is a cognizable form of hardship for that party and for the courts. That fact underlies the Stay Motion in its entirety. Nevertheless, certain of the Objectors state that the

7

Oversight Board would not experience hardship were the Stay Motion denied. *See* ECF No. 7938 at 4; ECF No. 7937 at ¶¶ 28-29; ECF No. 7892 at ¶ 20.[9]

16. To be clear, the Oversight Board is currently engaged in numerous litigation actions that would not be stayed if the Motion is granted. These include over 250 avoidance actions against contract vendors concerning billions of dollars in payments and approximately a hundred other potential actions subject to tolling agreements that are being resolved concurrently, as well as litigation concerning potential corruption in purchases of fuel oil. The Oversight Board is additionally litigating actively as a representative of other Title III debtors, and reviewing fiscal plans and other financial information concerning dozens of instrumentalities of Puerto Rico. To continue a dual track litigation regarding the GO Objections is a wasteful expenditure of estate, and this Court's, resources.

17. More broadly, the GO Objections are but one facet of a broad-reaching proposed plan that may resolve numerous issues that affect stakeholders. To say that litigation expenses are the only hardship that might result from denial of the Motion ignores the fact that all stakeholders have an interest in resolving the GO Objections—not just bondholders (individual and institutional) but also Puerto Rico taxpayers, retirees, and other stakeholders with interests in plan confirmation.

---

[9] The Objectors cite inapposite cases to the effect that merely having to litigate is not hardship. For instance, the GO Group cites *In re ConAgra Foods*, No. CV-11-05379-MMM, 2014 WL 12580052 (C.D. Cal. Dec. 29, 2014), in which a court held that "merely being required to *defend* the suit does not constitute hardship." ECF No. 7938, p. 16 (emphasis added). In that case, a court denied a motion for stay relief where it found that parallel issues to be decided on appeal would have no bearing on the litigation, and that the purpose of the motion was for defendants to avoid having to respond to a lawsuit. Similarly, the GO Group cites *Salinas v. City of San Jose*, No. 9-CV-04410 EJD, 2012 WL 2906052 (N.D. Cal. July 13, 2012), a case in which no hardship could be shown by a movant that had been litigating for four years. These cases are clearly not applicable where the movant is a plan proponent in the early stages of obtaining support for a plan that would directly impact the litigation. The other cases cited by the Objectors can be similarly distinguished; more importantly, the Commonwealth's Title III case simply bears no adequate resemblance to *any* prior case such that the weight of precedent can properly address the present circumstances. *See Microfinancial*, 385 F.3d at 78 (cautioning that determinations on stay motions should be highly fact-specific).

### III. **The Objectors Are Not Prejudiced By a Stay of the GO Objections.**

18. Certain of the Objectors state that the public interest in a decision on the merits of the GO Objections weighs against the stay because, among other reasons, the market requires assurances of Puerto Rico's future ability and obligation to repay bonds. *See* ECF No. 7938 at 30; ECF No. 7937 at ¶¶ 55-58.

19. It does not. *See, e.g.*, *Supplemental Opinion Regarding Plan Confirmation, Approving Settlements, and Approving Exit Financing*, ECF No. 8993 in Case No. 13-53846 (Bankr. E.D. Mich. 2014) (approving settlement of debt validity litigation and finding city of Detroit capable of satisfying debts over 30-year period). Any debt issued pursuant to the proposed plan would be subject to a confirmation order regarding its legality. To the extent the markets desire clarity regarding debt limit calculations with respect to post-PROMESA debt issuances, such issues can be teed up at an appropriate time using the bounty of legal theories and accumulated research published in recent years. In the meantime, investors can continue as they always have, obtaining lower or higher yields from any given debt security as a reflection of default risk, without knowing exactly how a default and/or restructuring might play out.

20. The benefits of staying litigation to promote settlement *prior* to, and in place of, a decision on the merits, however, have been long recognized by the courts. *See, e.g.*, *Albert v. Blue Diamond Growers*, 232 F. Supp. 3d 509, 513 (S.D.N.Y. 2017) (granting stay of class action litigation because "[p]roceeding with [litigation] while a potential nationwide settlement that encompasses Plaintiffs' claims is pending would cause the parties to expend considerable resources conducting discovery and briefing motions that may be unnecessary. Such expense would unduly burden Blue Diamond as well as [the] Court."); *Lewis v. Russell*, CIV 2:03-2646 WBS, 2011 WL 222109, at *1 (E.D. Cal. Jan. 19, 2011) (initially granting stay to allow parties to voluntarily mediate claims, and denying to further extend stay because case pending for eight

years and parties had not indicated "any time frame in which they believe[d] settlement of the entire case would result"); *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005) (granting stay of litigation pending approval of settlement which would transfer the stayed litigation to a litigation trust and noting that "prejudice" factor usually applies to a plaintiff's desire to vindicate its rights).

21. In *Blue Diamond Growers*, for instance, a district court exercised its discretion and held that a stay of litigation of a consumer class action pending a nationwide settlement agreement in a parallel action "would promote the interest of the Court, persons not parties to th[e] civil litigation, the public interest, and [the defendant], while not unfairly prejudicing the Plaintiffs." 232 F. Supp. 3d at 513. Similar to the Objectors, the plaintiffs in *Blue Diamond Growers* argued against the stay because their claims were "separate" and "distinct" enough from those encompassed in the settlement agreement that litigation could continue without harm to the public interest in a broader resolution. *Id*. at 512.

22. The court found the plaintiffs' arguments unavailing because although the settlement agreement contemplated a broader range of claims than those of the plaintiffs, it did specifically encompass the plaintiffs' claims. *Id*. Additionally, because the claims settled in the settlement agreement arose out of the same conduct alleged in the plaintiffs' claim, the court found that a stay of the case was "in the interest of judicial economy." *Id*. at 513.

23. Ultimately, the court found that "[p]roceeding with this case while a potential nationwide settlement that encompasses Plaintiffs' claims is pending would cause the parties to expend considerable resources conducting discovery and briefing motion that may be unnecessary." *Id*; *cf. Pieterson v. Wells Fargo Bank, N.A.*, 17-CV-02306-EDL, 2019 WL 1466963, at *3 (N.D. Cal. Feb. 14, 2019) (granting stay of litigation pending approval of

10

settlement in parallel action because the reasons cited by plaintiffs for not granting stay were arguments about the merits of the settlement in the parallel action, "[a] decision on settlement approval in [parallel action] [would] be a significant step toward . . . streamlining the questions that must be resolved by this Court and clarifying what claims remain in those case and who may pursue them.").

24. As in *Blue Diamond Growers*, there is potential here for a settlement that encompasses the claims of thousands of bondholders, including but not limited to the Objectors. Moreover, the requested stay would not deprive any party of its defenses and would have no negative impact on bondholders except to—perhaps—delay litigation for a short time as to the amounts, if any, that must eventually be paid in respect of certain bonds. The prospect of resolving even a portion of the litigation, rather than litigating matters concurrently with the pursuit of confirmation, weighs heavily in favor of granting the stay.

## **CONCLUSION**

25. For the foregoing reasons, the Special Claims Committee respectfully requests that this Court grant the relief requested in the Stay Motion.

Dated: July 17, 2019

*/s/ Edward S. Weisfelner, Esq.*
**BROWN RUDNICK LLP**
Edward S. Weisfelner, Esq. (*Pro Hac Vice*)
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com

Sunni P. Beville, Esq. (*Pro Hac Vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

and

*/s/ Alberto Estrella, Esq.*
**ESTRELLA, LLC**
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

63451543 v9