## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------------------- x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO *et al.*,

        Debtors.[1]

----------------------------------------------------------------------- x

: 
: 
:   PROMESA
:   Title III
: 
:   Case No. 17-BK-3283 (LTS)
: 
:   (Jointly Administered)
: 
: 
: 

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO URGENT MOTION FOR STAY OF ADVERSARY PROCEEDING SUPPLEMENTAL TO PENDING MOTION TO STAY GO BOND PROCEEDINGS PENDING CONFIRMATION OF COMMONWEALTH PLAN OF ADJUSTMENT

The Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") respectfully files this objection to the *Urgent Motion for Stay of Adversary Proceeding Supplemental to Pending Motion to Stay GO Bond Proceedings Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 7882][2] (the "Supplemental Stay Motion") filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), acting through its Special Claims Committee.  In support of this Objection, the Committee states as follows:

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID:  3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID:  3747).

[2]   Unless otherwise indicated, "ECF No." refers to the docket entries in the Commonwealth's Title III case, *i.e.*, Case No. 17-3283 (LTS).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .............................................................................................................. 2

A.  The Various Proceedings the Oversight Board Instituted and Now Seeks to Stay.................. 2

B.  The Intervening Plan Support Agreement.............................................................. 3

C.  The Oversight Board's Coordinated Effort to Derail Its (and the Committee's) Own
     Efforts  to Recover Value for the Commonwealth and its General Unsecured Creditors ......... 4

D.  Legal Standard Governing A Plaintiff's Motion to Indefinitely Stay its Own Case ............... 6

ARGUMENT ................................................................................................................. 8

A.  The Proposed Supplemental Stay Will Prejudice the Committee and Its Constituents........... 8

B.   The Oversight Board's Responsibility to Prosecute Its Litigation Is Not The Prejudice or
     Hardship Warranting an Indefinite, Global Stay ...................................................... 9

CONCLUSION................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Amersham Int'l v. Corning Glass Works*,
   108 F.R.D. 71, 72 (D. Mass. 1985)..................................................................... 6

*Austin v. Unarco Indus., Inc.,*
   705 F.2d 1, 5 (1st Cir.1983)............................................................................... 6

*Bakken Res., Inc. v. Edington*,
   No. 1:15-CV-8686 (ALC), 2018 WL 1353271, at *4 (S.D.N.Y. Mar. 15, 2018) ........... 13

*Bechhold v. Bogner*,
   No. C 07-0870 SBA, 2008 WL 170688, at *3 (N.D. Cal. Jan. 17, 2008) ........................ 8

*Edwards v. Oportun, Inc.*,
   193 F. Supp. 3d 1096, 1102 (N.D. Cal. 2016) .................................................. 11

*Efron, v. Candelario (In re Efron)*,
   529 B.R. 396, 403 (B.A.P. 1st Cir. 2015) ........................................................ 15

*Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*,
   748 F.2d 42, 46 (1st Cir. 1984) ........................................................................ 15

*Grant v. Houser*,
   799 F. Supp. 2d 673, 679 (E.D. La. 2011) ........................................................ 8

*In re ConAgra Foods, Inc.*,
   No. 11-05379 (MMM) (AGRx), 2014 WL 12580052 at *8 (C.D. Cal. Dec. 29, 2014)..... 7

*In re Coyne Elec. Contractors, Inc.*,
   231 B.R. 204, 207 (Bankr. S.D.N.Y. 1999).................................................... 9

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   335 F. Supp. 3d 256, 262 (D.P.R. 2018).......................................................... 7

*In re Hanish, LLC*,
   570 B.R. 4, 12 (Bankr.  D.N.H. 2017) ............................................................ 15

*In re Lernout & Hauspie Secs. Litig.*,
   No. 00-11589-PBS, 2003 WL 23341390, at *2 (D. Mass. June 12, 2003) ..................... 12

*In re Mahoney Hawkes, LLP*,
   289 B.R. 285, 294 (Bankr. D. Mass. 2002) .................................................... 15

*Konopca v. Ctr. for Excellence in Higher Educ., Inc.*,
   No. CV155340FLWDEA, 2016 WL 4644461, at *3 (D.N.J. Sept. 6, 2016) .................. 10

*Landis v. N. Am. Co.*,
   299 U.S. 248, 255 (1936) ................................................................. 7

*Lathrop v. Uber Techs., Inc.*,
   No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) ....................... 13

*Lincoln Gen. Ins. Co. v. Ryan Mercaldo LLP*,
   No. 13-CV-2192 W (DHB), 2015 WL 12672145, at *4 (S.D. Cal. Sept. 14, 2015) ........ 11

*Lugo v. Alvarado*,
   819 F.2d 5, 7 (1st Cir. 1987) ............................................................ 11

*Marquis v. F.D.I.C.*,
   965 F.2d 1148, 1154-55 (1st Cir. 1992) ................................................. 7

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
   385 F.3d 72, 77 (1st Cir. 2004) .......................................................... 6

*Nat'l Indus. for Blind v. Dep't of Veterans Affairs*,
   296 F. Supp. 3d 131, 143 (D.D.C. 2017) ................................................ 11

*Nken v. Holder*,
   556 U.S. 418, 427 (2009) ................................................................ 7

*Nussbaum v. Diversified Consultants, Inc.*,
   2015 WL 5707147, at *2-3 (D.N.J. Sept. 28, 2015) .................................... 8

*Sierra Club v. Federal Emergency Management Agency*,
   Civ. Action No. H-07-0608, 2008 WL 2414333, at *7 (S.D. Tex. June 11, 2008) ........ 2, 6

*Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*,
   3:09-CV791, 2010 WL 1946262, at *4 (E.D. Va. 2010) ................................. 8

*Total Petroleum Puerto Rico Corp. v. T.C. Oil, Corp.*,
   No. CV 09-1105 (JP), 2010 WL 11545626, at *1 (D.P.R. May 7, 2010) ................ 7

*Villafañe–Colon v. B Open Enters., Inc.*,
   932 F. Supp. 2d 274, 280 (D.P.R. 2013) ............................................... 7

## PRELIMINARY STATEMENT

1.      The Oversight Board, acting through its Special Claims Committee, seeks an indefinite, unconditional, and global stay of the adversary proceedings against some of the world's largest "banks, underwriters, law firms and other professionals" (the "Adversary Defendants") who, the Oversight Board alleges, "participated in the issuance of bonds or other financial transactions that caused or contributed to the insolvency of the Commonwealth."[3] Despite ultimately agreeing to the filing of the 92 page, 547 paragraph, and 62 count complaint (the "Financial Target Litigation") as Co-Plaintiff against the Adversary Defendants[4], the Oversight Board now wants to stop that litigation dead in its tracks.

2.      The Oversight Board now seeks to slam the brakes on all litigation and contested matters while it seeks to marshal after-the-fact support for its proposed plan of adjustment.[5] That plan is contained in the May 31, 2019 plan support agreement ("PSA") that the Oversight Board entered into with a small, minority group of holders of Commonwealth GO bonds and PBA bonds ("PSA Creditors").   As a supplemental motion to its pending motion to stay all the challenges to the certain GO and PBA bonds, as well as the pending PBA "lease" challenges, the

---

[3]     Supplemental Stay Motion, [ECF No. 7882], ¶ 2 (emphasis added).

[4]      The members of the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico, on the one hand, and the Official Committee of Unsecured Creditors, on the other hand, serve as co-trustees and co-plaintiffs in the prosecution of the adversary proceeding as described in that certain *Stipulation and Agreed Order by and among the Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Debtor Causes of Action,* Case No. 17-BK-3283 (LTS), ECF No. 6505-1.  The Court will recall that concurrently with the submission of the proposed stipulation, the Committee also filed and prosecuted its Motion for Order Authorizing Committee to Pursue Certain Causes of Action on Behalf of Commonwealth and Granting Related Relief [ECF 6325], which sought to permit the Committee to pursue claims it perceived were not being investigated and prosecuted (as appropriate) by the Oversight Board.  That motion was denied by the Court [ECF 6533].

[5]     *See Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No.7640]; *Omnibus Objection to (A) Motion to Stay Contested Matters [Docket No. 7640 in Case No. 17-3283 (LTS) and (B) Motion to Stay PBA Adversary Proceeding [Docket No. 99 in Adv. Proc. No. 18-149 (LTS)] Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 7899] (the "Committee Objection to Stay").

Oversight Board's strategy across the entirety of these proceedings is crystal clear: bringing progress on all disputes to a complete stop. The Oversight Board's intent behind this strategy is equally transparent: to offer disproportionate and lucrative plan treatment to a small minority of PSA Creditors in an effort to manipulate the creditor body and gerrymander an impaired accepting class.

3.     An open-ended stay of highly-valuable litigation — which the Oversight Board was ultimately prodded into co-authoring and filing as Co-Plaintiff — would be tremendously prejudicial to the Committee, its constituents, and the Debtors' estates.  As set forth below, in balancing the equities, the Oversight Board's claim for a stay cannot outweigh the inevitable prejudice it would cause to the Committee and its constituents. For all of the reasons discussed below, the Supplemental Stay Motion should be denied.

## BACKGROUND

### A.  The Various Proceedings the Oversight Board Instituted and Now Seeks to Stay

4.     ***GO Bond Claims***. On January 14, 2019 and May 21, 2019, the Committee and the Oversight Board filed omnibus objections [ECF Nos. 4784, 7057] to claims asserted on account of (i) GO bonds issued in 2012 and 2014 (the "2012-2014 GO Bonds"), and (ii) GO bonds issued in 2011 (the "2011 GO Bonds") (collectively, the "GO Claim Objections").

5.     Among other things, the GO Claim Objections assert that the issuance of the 2012-2014 GO Bonds and the 2011 GO Bonds violated the constitutional debt service limit in the Puerto Rico Constitution and that the claims by purported holders of such bonds for principal and interest should therefore be disallowed.

6.     ***PBA Leases***.  On December 21, 2018, the Oversight Board and the Committee filed a complaint [ECF No. 1 in Adv. Proc. No. 18-149 (LTS)] (the "PBA Complaint") seeking a

declaratory judgment that purported leases between the PBA, on the one hand, and various of the Commonwealth's departments, agencies, instrumentalities, authorities, public corporations, and municipalities on the other hand (the "PBA Leases"), are not "true leases" but rather disguised financing transactions (the "PBA Adversary Proceeding").

7.     ***Financial Target Litigation***.   On May 2, 2019, the Oversight Board and Committee, as Co-Plaintiffs, initiated the Financial Target Litigation by filing a 62-count complaint [ECF No. in Adv. Proc. No. 18-00280 (LTS)] (the "Financial Target Complaint") against a collection of some of the world's largest banks and underwriters and their respective law firms, and other professionals — *i.e.*, the Adversary Defendants.

8.     The Financial Target Litigation arose from the failure of the Government Development Bank for Puerto Rico (the "GDB") to discharge its fiduciary duties as the steward of the Commonwealth's fiscal health, and the Adversary Defendants' assistance in the GDB's breaches. The Financial Target Complaint also includes myriad claims against the Adversary Defendants, generally categorized as aiding and abetting breach of fiduciary duty;  rescission of various transfers under 31 L.P.R.A. §§ 3491-3500, avoidance claims under Chapter 5 of the Bankruptcy Code, and 26 U.S.C. § 6502; breach of contract; and unjust enrichment.

9.     Through the Financial Target Litigation, the Committee and the Oversight Board seek to hold the Adversary Defendants responsible for billions of dollars in damages sustained by the Debtors as a result of the Adversary Defendants' acts and omissions.

**B.  The Intervening Plan Support Agreement**

10.     On June 16, 2019, the Oversight Board announced that it had entered into the PSA with the PSA Creditors, a group of PBA and GO bondholders ***with approximately just 17%***

*of the outstanding PBA and GO bond claims*.[6]   Neither AAFAF nor the Government of Puerto

Rico are parties to the PSA.  Quite the opposite, those central figures oppose certain fundamental

aspects of the PSA, including the PBA becoming a debtor under Title III of PROMESA.[7]

### C. The Oversight Board's Coordinated Effort to Derail Its (and the Committee's) Own Efforts to Recover Value for the Commonwealth and its General Unsecured Creditors

11. On June 25, 2019, the Oversight Board filed its *Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 7640] (the "Motion to Stay Contested Matters").

12. On June 27, 2019, in the PBA Adversary Proceeding, the Oversight Board filed its *Motion to Stay PBA Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 99 in Adv. Proc. No. 18-00149 (LTS)] (the "PBA Stay Motion and, together with the Motion to Stay Contested Matters, the "Stay Motions").

13. Through the Stay Motions, the Oversight Board seeks an indefinite, unconditional, and global stay of all pending challenges to certain GO and PBA bonds, as well as the pending PBA "lease" challenge, bringing the Commonwealth's Title III case to a screeching halt for an indeterminate length of time (the "PSA Stay").[8]

---

[6]   Financial Oversight & Management Board for Puerto Rico, *Oversight Board Reaches Agreement on a Framework to Restructure $35 Billion of Liabilities*, OVERSIGHT BOARD, *available at* https://oversightboard.pr.gov/oversight-board-reaches-agreement-on-a-framework-to-restructure-35-billion-of-liabilities/. For a detailed description and analysis of the untenable terms of the  PSA, and the mechanics of the Proposed PBA Settlement and the Proposed Plan, the Committee respectfully refers the Court to, and incorporates by reference herein, its Committee Objection to Stay, [ECF No. 7899].

[7]   *See Objection of Elected Government Parties Regarding Plaintiff Financial Oversight and Management Board for Puerto Rico's Motion to Stay PBA Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment* ¶ 2 [ECF No. 102 in Adv. Proc. No. 18-149 (LTS)] ("Elected Government Parties Objection").

[8]   *See* Committee Objection to Stay, [ECF No. 7899].

14.     In addition to the Committee, several other parties-in-interest have objected to the Stay Motions, including the Ad Hoc Group of General Obligation Bondholders[9]; the Ad Hoc Group of Constitutional Debtholders[10]; Ambac Assurance Corporation[11]; Assured Guaranty Corp. and Assured Guaranty Municipal Corp.[12]; the Financial Advisory Authority in its capacity as fiscal agent, and the Puerto Rico Public Buildings Authority.[13]

15.     Despite this chorus of objections to the Stay Motions, the Oversight Board doubled down and filed the instant Supplemental Stay Motion, seeking "the supplemental relief" of "extending the [proposed] Plan Support Agreement Stay" (the "Proposed Supplemental Stay") to the Financial Target Litigation against the Adversary Defendants "that caused or contributed to the insolvency of the Commonwealth."  Supplemental Stay Motion, ECF No. 7882, ¶ 2.

16.     The Oversight Board spends more than half of the Supplemental Stay Motion discussing the Adversary Defendants' improper attempt to participate in the GO Claim Objections — which is the subject of a separate and unrelated briefing.[14] The Oversight Board

---

[9]     *See The Ad Hoc Group of General Obligation Bondholders' Objection to Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 7938].

[10]    *See Objection to Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 7937].

[11]     *See Ambac Assurance Corporation's Objection to the Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 7902]; *see also Ambac Assurance Corporation's Objection to the Motion of Plaintiff Financial Oversight and Management Board for Puerto Rico  to Stay PBA Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 108 in Adv. Proc. No. 18-00149 (LTS)].

[12]    *Objection and Reservation of Rights of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. With Respect to Motion to Stay Contested Matters Pending Confirmation Commonwealth Plan of Adjustment* [ECF No. 7892]; *see also Objection of Defendant-Intervenors Assured Guaranty Corp. and Assured Guaranty Municipal Corp. to Plaintiff Financial Oversight and Management Board for Puerto Rico's Motion to Stay PBA Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment* [ECF No. 105 in Adv. Proc. No. 18-00149 (LTS)].

[13]    *See* Elected Government Parties Objection.

[14]    Certain of the Adversary Defendants have filed a *Joint Motion Of Certain Adversary Defendants Seeking Entry Of An Order Authorizing Participation In Determination Of Constitutional Validity Of Challenged Bonds* [ECF No. 7747], wherein they impermissibly seek to participate in the GO Bond  Litigation. The Committee has responded and objected to that motion. *See Objection of the Official Committee of Unsecured Creditors to Joint*

argues that the Adversary Defendants should not be permitted to hijack the GO Claim Objections to argue the issue of the Constitutional debt service limit issues.  But at the same time, the Oversight Board proposes to stay the Financial Target Litigation, claiming that the Adversary Defendants should not be permitted to raise the debt service issue there.  But even though the issue is just a sliver  of the issues in that complaint, the Oversight Board wants to stay the entire action indefinitely.

17.     Moreover, the Oversight Board's so-called reasons for the stay are unavailing. The entirety of its rationale is as follows: [15]

    a.  Efficiency, conservation of resources, and avoidance of duplicate litigation;

    b.  Avoid premature litigation of bond validity in the GO Claim Objections;

    c.  Bond litigation would "potentially interfere with the progress underway toward a joint plan of adjustment," *i.e*., the progress made with the PSA Creditors that represent just a fraction of outstanding PBA and GO bonds.

18.     Doing nothing, as the Oversight Board suggests, and freezing all litigation admittedly would avoid duplication, prematurity, and conserve resources — but only at the cost of bringing the these proceedings to a screeching halt without advancing the valuable claims and objections filed by the Oversight Board and the Committee.

### D.  Legal Standard Governing A Plaintiff's Motion to Indefinitely Stay its Own Case

19.     The movant seeking a stay must satisfy a "heavy" burden of demonstrating the necessity of a stay. *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004); *Amersham Int'l v. Corning Glass Works*, 108 F.R.D. 71, 72 (D. Mass. 1985); *GLL GmbH & Co. Messeturm KG v. LaVecchia*, 247 F.R.D. 231, 233 (2008).  "A stay is an intrusion into the

---

*Motion of Certain Adversary Defendants Seeking Entry of an Order Authorizing Participation in Determination of Constitutional Validity of Challenged Bonds* [ECF No. 7894].

[15]  Supplemental Stay Motion, [ECF No. 7882], ¶10.

6

ordinary processes of administration" that is inconsistent with the courts' "prompt execution of orders" to which the "parties and the public" are entitled. *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted).  To satisfy its burden, the movant must demonstrate that (i) the stay will balance competing equities after considering the prejudice resulting from, or interests frustrated by, the imposition of the stay; and (ii) the duration of the requested stay is reasonable. *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154-55 (1st Cir. 1992); *see Total Petroleum Puerto Rico Corp. v. T.C. Oil, Corp.*, No. CV 09-1105 (JP), 2010 WL 11545626, at *1 (D.P.R. May 7, 2010); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 335 F. Supp. 3d 256, 262 (D.P.R. 2018) (courts must balance the equities and consider potential prejudice to each party).[16]

20.    As the Supreme Court cautioned in the seminal *Landis* decision: where "there is even a <u>fair possibility</u> that the stay for which [the movant] prays will work damage to someone else," the movant "must make out a <u>clear case of hardship or inequity in being required to go forward</u>." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphases added). The potential prejudice faced by the non-moving party is of paramount importance. *Landis*, 299 U.S. at 255; *Villafañe–Colon v. B Open Enters., Inc.*, 932 F. Supp. 2d 274, 280 (D.P.R. 2013) (court considering motion for stay must account for "potential prejudice to the non-movant").

21.    The applicable legal standard is further refined by fact that the Oversight Board, as movant, is also the Co-Plaintiff of the litigation it seeks to indefinitely stay.  "[A]s a general matter, the moving party must make out a clear case of hardship or inequity in being required to go forward, and merely being required to defend the suit does not constitute hardship." *In re ConAgra Foods, Inc.*, No. 11-05379 (MMM) (AGRx), 2014 WL 12580052 at *8 (C.D. Cal. Dec. 29, 2014) (internal quotation marks omitted) (citing *Landis*, 299 U.S. at 255)); *Sunbeam Prods.,*

---

[16]    *See also Water Quality Prot. Coal. v. Municipality of Arecibo*, 858 F. Supp. 2d 203, 212 (D.P.R. 2012).

*Inc. v. Hamilton Beach Brands, Inc.*, 3:09-CV791, 2010 WL 1946262, at *4 (E.D. Va. 2010) ("The mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay."); *Nussbaum v. Diversified Consultants, Inc.*, 2015 WL 5707147, at *2-3 (D.N.J. Sept. 28, 2015) (finding that avoiding "unnecessary discovery and motion practice" does not support a clear case of hardship).  As the Co-Plaintiff that initiated, authored, and filed the Financial Target Litigation just two months ago, on May 2, 2019, the Oversight Board must demonstrate that prosecuting **its own lawsuit** would be a "clear case of hardship or inequity."  *In re ConAgra Foods*, 2014 WL 12580052, at *8-9; *Bechhold v. Bogner*, No. C 07-0870 SBA, 2008 WL 170688, at *3 (N.D. Cal. Jan. 17, 2008) (stating there is no hardship for a plaintiff to "pursue multiple actions" where it "is by choice that the plaintiff instituted the actions in [one] forum while also litigating in another").

## ARGUMENT

### A.  The Proposed Supplemental Stay Will Prejudice the Committee and Its Constituents

22.    The Proposed Supplemental Stay will prejudice the unsecured creditors both specifically with respect to their interests in the Financial Target Litigation and, more broadly, with respect to their interests in these Title III cases.  *First*, the Supplemental Stay Motion ignores the Committee's right, as Co-Plaintiff, to prosecute the Financial Target Litigation (to which the Oversight Board is Co-Plaintiff) without undue delay. *See, e.g.*, *Grant v. Houser*, 799 F. Supp. 2d 673, 679 (E.D. La. 2011) ("Although this proceeding is at an early stage, this Court cannot ignore the fact that Plaintiffs are entitled to the right to litigate and redress their grievances. . . . [A] stay directly infringes on Plaintiffs' right to litigate by delaying these proceedings for an 'indefinite duration.'") (quoting *Landis*, 299 U.S. at 255).  The Oversight

Board has not made any effort to identify any basis for a stay that could outweigh the Committee's right as a plaintiff to pursue the litigation.

23.     **Second,** the significant delay that will inevitably result from the Proposed Supplemental Stay in the Financial Target Litigation will disadvantage the Committee, the unsecured creditors, and other real parties-in-interest because they will be prevented from *maximizing* the value of the Financial Target Litigation.  *In re Coyne Elec. Contractors, Inc.*, 231 B.R. 204, 207 (Bankr. S.D.N.Y. 1999) ("In a [reorganization] case, adversary proceedings <u>affect not only the parties to the proceeding but all parties in interest in the [reorganization case]</u>. Delay in an adversary proceeding prejudices not only the parties to the proceeding but all parties in interest in the [reorganization] case." (emphasis added)).

24.     Against the Committee's clear and unequivocal right to prosecute the Financial Target Litigation as Co-Plaintiff, the Oversight Board must demonstrate that a) it has satisfied its "heavy burden" for a stay; b) the stay is based on equitable considerations; c) the stay is supported by a "clear case of hardship or inequity"; d) the stay is of reasonable length; and e) any benefit of the stay outweighs the certain prejudice that the Committee will suffer.  The Oversight Board has failed to make any such showing, therefore, the Committee submits that the Supplemental Stay Motion should be denied.

### B.  The Oversight Board's Responsibility to Prosecute Its Litigation Is Not The Prejudice or Hardship Warranting an Indefinite, Global Stay

25.     The Oversight Board uses flawed logic in an attempt to bootstrap its Supplemental Stay Motion on the GO Claim Objections.  It argues that constitutional debt service limit is a threshold issue framed by the GO Claim Objections, which should only be resolved in that contested matter.  But the Oversight Board wants to stay those proceedings. The Oversight Board then predicts that the parties that cannot proceed because of the hoped-for

stay will race to raise the constitutional debt limit in the Financial Target Litigation.  In order to close what the Oversight Board perceives as a loophole that would permit parties to actually argue this issue, it now seeks a stay of the Financial Target Litigation.[17] It is apparent that the Oversight Board is focused on ensuring that the issue of the constitutional debt service limit is not heard by this Court at all, in any matter, for an indefinite period of time.

26.     The Oversight Board assumes that this Court will enter a stay of the GO Claim Objections and predicates its argument on that presumption.  If that proceeding is not stayed, however, then the Supplemental Stay Motion fails without further analysis or explanation.  Even if that litigation is stayed, the motion does not support the relief requested.

27.     *First*, the Oversight Board contends that a stay of the "GO Objections pending confirmation of a joint plan of adjustment will avoid unnecessary consumption of the Court's and parties' limited time and resources."[18]  But that is not the case.  In reality, a stay of those objections will only delay the resolution of those claims and objections because such objections must be addressed in the determining the reasonableness of the settlements in the proposed plan. Moreover, the GO Group, holding 2012-2014 GO Bonds, has already indicated its intention to litigate the claim objections post-confirmation under the Oversight Board's proposed plan.[19]

28.     There is no efficiency in simply kicking the can down the road, as the Oversight Board proposes, because the open, unresolved issues will still remain. On this basis alone, the requested supplemental stay is inappropriate. *See, e.g.*, *Konopca v. Ctr. for Excellence in Higher Educ., Inc.*, No. CV155340FLWDEA, 2016 WL 4644461, at *3 (D.N.J. Sept. 6, 2016) (refusing to stay pending ruling of appellate court on legal issue where factual and legal issues would be

---

[17]    Supplemental Stay Motion, [ECF No. 7882], ¶¶ 15, 17.

[18]    *Id.* ¶ 15.

[19]    *See, e.g.*, Committee Objection to Stay, [ECF No. 7899], ¶¶ 51-52.

litigated irrespective of such ruling); *Lugo v. Alvarado*, 819 F.2d 5, 7 (1st Cir. 1987) (affirming denial of full discovery stay pending resolution of immunity defense: "the suspension of discovery proceedings on the equitable claims . . . only delays the case unnecessarily, because sooner or later the parties will have the right to engage in discovery as to the equitable claims, irrespective of whether there is a surviving damage action"); *Lincoln Gen. Ins. Co. v. Ryan Mercaldo LLP*, No. 13-CV-2192 W (DHB), 2015 WL 12672145, at *4 (S.D. Cal. Sept. 14, 2015) (denying *Landis* stay where granting the requested stay of appeal would only delay inevitable litigation that is needed to litigate remaining issues).

29.      Even if an overlapping legal issue exists, it does not justify a stay because the remaining, unrelated issues in each of the two cases must still be independently determined regardless of a ruling on that common legal issue (which may not even have preclusive effect or bind the parties in the other litigation).[20]

30.      Notably, to the extent there is any overlap, the issue of the constitutional debt service limit does not control the determination of the Financial Target Litigation.   That complaint pleads ***forty-five separate counts for rescission, unjust enrichment, and breach of contract that do not implicate or reference the Constitutional debt service limit***.

31.      The remaining counts that reference the debt service limit are all for aiding and abetting GDB's breach of fiduciary duty, which was breached by amassing additional debt while GDB knew of the Commonwealth's insolvency and inability to pay the obligations.  Insolvency

---

[20] *See, e.g.*, *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1102 (N.D. Cal. 2016) (rejecting class action defendant's argument that pending appellate case could decide three common legal issues where there were "issues in this case that must still be determined regardless of that ruling"); *Nat'l Indus. for Blind v. Dep't of Veterans Affairs*, 296 F. Supp. 3d 131, 143 (D.D.C. 2017) (declining to stay litigation pending ruling of appellate decision that involved "similar" legal issues because even if appellate court reached merits of case, it would be unlikely to resolve "all of the issues that Plaintiffs raise in the instant consolidated matters").

is the linchpin of each of those claims, which can occur irrespective of any consideration of the constitutional debt service limit.

32.     Those counts that do implicate the debt limit issues merely allege that the Adversary Defendants aided and abetted GDB's breach of fiduciary duty by "*among other things*" underwriting bonds even though they knew or should have known that Puerto Rico's debt obligations "exceeded *or were at risk of exceeding the Constitutional limit*" or "were beyond the Constitutional Limit" or "exceeded the Constitutional Debt Service Limit." Thus, even counts that use the term "debt service limit" as an illustration of conduct at issue, those claims will survive based on other acts and omissions that assisted the GDB in breaching its fiduciary duty.

33.     **Second**, although the Court has the discretionary power to issue a stay, the Oversight Board's request should be denied because "it is well-established that such a stay should not be for an indefinite period of time." *In re Lernout & Hauspie Secs. Litig.*, No. 00-11589-PBS, 2003 WL 23341390, at *2 (D. Mass. June 12, 2003); *Total Petroleum*, 2010 WL 11545626, at *1.  Seeking an indefinite stay creates a heightened standard, requiring a "pressing need" to even establish a prima facie basis supporting the request.  *Lernout*, 2003 WL 23341390, at *2; *see also Edwards v. Oportun*, *Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (denying stay under *Landis* decision and related progeny because "there is no certain way to determine when a ruling will be forthcoming").

34.     In its Supplemental Stay Motion, the Oversight Board has not even attempted to articulate the requisite "pressing need" for a stay.   The Oversight Board instead offers only equivocation, speculating that the Financial Target Litigation would "***potentially interfere with***

*the __progress underway__* towards a joint plan of adjustment for the Commonwealth"[21] and that the

Financial Target Litigation could somehow "***undermine[]*"* "*__progress__*"* towards confirmation."[22]

The Oversight Board concedes that it actually wants a *de facto* injunction on the litigation to

preserve the "status quo" while it looks to solicit a minimum level of support for the proposed

plan. [23]

35. The Oversight Board has not, and cannot, forecast if and when a plan of

adjustment could be filed and presented, much less *confirmed* by the Court (assuming the plan is

confirmable, which it is not, as detailed *infra)*. These are the sorts of amorphous representations

that fall far short of the required standard of "pressing need" and that courts across the country

uniformly prohibit as indefinite stays. *See Lernout*, 2003 WL 23341390, at *2; *Bakken Res., Inc.*

*v. Edington*, No. 1:15-CV-8686 (ALC), 2018 WL 1353271, at *4 (S.D.N.Y. Mar. 15, 2018);

*Edwards*, 193 F. Supp. 3d at 1101; *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016

WL 97511, at *4 (N.D. Cal. Jan. 8, 2016).

36. ***Third***, the Oversight Board argues that the issues that should be heard in the GO

Claim Objections, *i.e.*, the constitutional debt service limit, should be stayed.  But, it also argues

that the Financial Target Litigation should also be stayed completely, unconditionally, and

indefinitely so that the issue cannot be raised in that litigation. The Oversight Board contends

that a significant adversary proceeding should be frozen in place because of the possibility that

one discrete issue — which is not dispositive in that litigation and would not have preclusive

---

[21] Supplemental Stay Motion, [ECF No. 7882], ¶ 10.

[22] *Id.* ¶ 17 (emphasis added).

[23] The Oversight Board wants to preserve the "status quo" and thereby facilitate ongoing discussions and "__gather__ __further__ support for the __framework__ of a plan of adjustment." Motion to Stay Contested Matters, [ECF No. 7640], ¶ 16. The proposed PSA Stay will, according to the Oversight Board, "allow[] key stakeholders to __continue__ __discussions__ and provide[] an opportunity to __gather further support__ for the restructuring framework in the PSA." *Id.* ¶ 3.

effect on the GO Claimants[24] — could potentially be heard in the Financial Target Litigation. That is a red herring.  If the Oversight Board truly wanted to have the issue of the constitutional debt limit heard in the GO Claim Objections and not this action, it could have requested as much, but it chose not to do so.

37.    The Committee recognizes the potential value in an initial determination of the limited issues relating to the Commonwealth's constitutional debt service limit.[25]  Although these questions are central to the GO Claim Objections, they only narrowly impact the Financial Target Litigation, which is primarily founded on acts and omissions independent and separate from the issue of the constitutional debt service limit.  Instead of streamlining the litigation for an orderly and efficient resolution, the Special Claims Committee's approach is to seek to completely stay both the GO Claim Objections and the Financial Target Litigation for an indefinite period of time.  The legitimate goal does not warrant the requested relief.

38.    ***Fourth,*** the Oversight Board's real goal for the stay is to permit it to indefinitely silence the real parties-in-interest from asserting and pursuing valid, recognized claims and positions while it searches for supporters of the PSA, which in turn provides for a proposed plan of adjustment.   But the Oversight Board overlooks the fatal defect in its argument — the ultimate plan of adjustment is patently unconfirmable, so there is no sense in pursuing "a clearly fruitless venture."[26]

---

[24]    Supplemental Stay Motion, [ECF No. 7882], ¶ 6.

[25]    If this Court were to determine that the constitutional debt service limit should be considered as an initial matter, the Committee would respectfully suggest the following: a) any stay of the Financial Target Litigation should be carefully tailored to only stay this discrete issue while allowing the remaining pretrial aspects of the case to proceed; b) the issue be decided in the GO Bond Litigation because it has the overwhelmingly significant nexus to the issue; and c) any determination have the appropriate preclusive effect so as to truly promote efficiency and avoid duplication, inefficiency, and repeated re-litigation.

[26]    Committee Objection to Stay, [ECF No. 7899], at n. 41 and accompanying text (citing *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr. S.D. Fla. 1990) ("Soliciting votes and seeking court approval on a clearly

39.    As previously set forth by the Committee, the Oversight Board has provided *no* plausible indication that the proposed plan has the necessary support, and it is clear that *significant* interested parties have expressly rejected the terms of the PSA.[27] ***Two***, the Proposed Plan reflects an about-face of the Oversight Board's longstanding and eminently meritorious position (with which the Committee agrees) that the GO bondholders' constitutional priority of payment does not apply in Title III. ***Three***, the Proposed Plan arbitrarily distinguishes between, and provides equally disparate treatment of, classes of bondholders not by their relative legal risk of invalidation on constitutional grounds, but by the identity of the parties holding them.[28] ***Four***, the Proposed Plan creates the real possibility that post-confirmation litigation of the GO Claim Objections could result in the invalidity of all outstanding PBA bonds, which would mean that the PBA bondholders, the favored class under the PSA, should not have recovered *anything*, let alone the disproportionate recovery they will recover pursuant to the PSA and any plan implementing its terms.

---

fruitless venture is a waste of the time of the Court and the parties."); *see also Efron, v. Candelario (In re Efron)*, 529 B.R. 396, 403 (B.A.P. 1st Cir. 2015) ("By not curing all post-petition DSO payments, Debtor's plan is patently unconfirmable from its face. The Court granted Debtor one last opportunity to comply with the DSO order, which he flagrantly disregarded."); *In re Hanish, LLC*, 570 B.R. 4, 12 (Bankr.  D.N.H. 2017) (affirming bankruptcy court's denial of the debtor's Amended Third Disclosure Statement because "the classification structure rendered the Amended Third Plan patently unconfirmable"); *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 294 (Bankr. D. Mass. 2002) (denying the debtor's motion to approve a disclosure statement because the plan provided for inappropriate releases and injunctions and was therefore patently unconfirmable)).   The Committee's position on the unconfirmability of the proposed plan is set forth in its Committee Objection to Stay, [ECF No. 7899], at "I. Proposed Plan is Patently Unconfirmable," commencing at ¶ 39, which it incorporated by reference.

[27]   These include the Committee; the Ad Hoc Group of General Obligation Bondholders; the Ad Hoc Group of Constitutional Debtholders; Ambac Assurance Corporation; and Assured Guaranty Corp. and Assured Guaranty Municipal Corp.

[28]   A significant example of this disparate treatment emanates from the Proposed Plan's arbitrary distinctions between pre-2012 Vintage Bonds, which are offered a preferential recovery and a full release, and the later-issued 2012-2014 Bonds, which are offered the option between a lower settlement recovery and continued litigation, even though the 2011 GO bonds and the 2011 and 2012 PBA bonds are subject to the same constitutional debt limit challenge as the 2012 and 2014 GO bonds. This artificial distinction is not consistent with First Circuit precedent. *E.g.*, *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748 F.2d 42, 46 (1st Cir. 1984) ("[T]he general rule regarding classification is that 'all creditors of equal rank with claims against the same property should be placed in the same class.'").

## **CONCLUSION**

40.     None of the Oversight Board's articulated reasons for the indefinite, unconditional, and global stay of the Financial Target Litigation meet the standards to issue a stay, let alone an indefinite stay, or identify the "pressing need" necessary to overcome the Co-Plaintiff Committee's rights to prosecute the Financial Target Litigation for the benefit of the Commonwealth as a whole.

41.     For the foregoing reasons, the Committee respectfully requests that the Court deny the Supplemental Motion to Stay, and allow this case to continue progressing toward a confirmable plan of adjustment, alongside the GO Claim Objections and the Financial Target Litigation.

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Special Litigation Counsel to the Official Committee of Unsecured Creditors*
Miami Tower- 44th Floor
100 SE 2nd Street,
Miami, FL 33131
Telephone: 305-349-2300
Facsimile: (305) 349-2310

/s/ John Arrastia
John H. Genovese, Esq. (Pro Hac Vice)
jgenovese@gjb-law.com
John Arrastia, Esq. (Pro Hac Vice)
jarrastia@gjb-law.com
Jesus M. Suarez, Esq. (Pro Hac Vice)
jsuarez@gjb-law.com
Mariaelena Gayo-Guitian (Pro Hac Vice)
mguitian@gjb-law.com

**-and-**

16

**CASILLAS, SANTIAGO & TORRES LLC**
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Counsel to the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF notification upon all interested parties registered to receive electronic notification on this matter (which is incorporated herein by reference) on this 17th day of July, 2019.

  /s/ John Arrastia
John Arrastia, Esq.

17