# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

   as representative of

THE COMMONWEALTH OF PUERTO RICO,

                  Debtor.[1]

PROMESA
Title III

Case No. 17-BK-03283 (LTS)

## OBJECTION OF CERTAIN DEFENDANTS TO THE OVERSIGHT BOARD'S REQUEST FOR RECONSIDERATION OF THE COURT'S STAY CONTAINED IN THE SUPERSEDING STATUS REPORT OF THE DEBTORS AND ALTERNATIVE PROPOSED CASE MANAGEMENT ORDERS OF DEBTORS AND CERTAIN DEFENDANTS IN CONNECTION WITH ADVERSARY PROCEEDING NUMBERS 19-291, 19-292, 19-293, 19-294, 19-295, 19-296, 19-297, 19-362, 19-363, 19-364, 19-365

Financial Guaranty Insurance Company ("**FGIC**"), Ambac Assurance Corporation, the

Ad Hoc Group of General Obligation Bondholders (the "**GO Group**")[2], Ad Hoc Group of

Constitutional Debtholders, Cantor-Katz Collateral Monitor, LLC, Assured Guaranty Corp. and

Assured Guaranty Municipal Corp., and AmeriNational Community Services, LLC as servicer

for the GDB Debt Recovery Authority (collectively "**Certain Defendants**"), by and through their

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "**Commonwealth**") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("**COFINA**") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("**HTA**") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("**PREPA**") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (the Commonwealth, COFINA, HTA, ERS and PREPA, each a Debtor and collectively, the "**Debtors**") (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Members of the GO Group file this Objection exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

undersigned counsel, file this objection (the "**Objection**") to the Oversight Board's request for reconsideration of the two related orders: (1) *Order Regarding Omnibus Motion by Official Committee of Unsecured Creditors, Financial Oversight and Management Board, and Its Special Claims Committee to Extend Time For Service of Summonses and Complaints and to Stay Certain Adversary Proceedings [Adv. Nos. 19-362, 19-363, 19-364, 19-365] Relating to Certain HTA Bonds* [Dkt. # 583 in No. 17-BK-3567]; and (2) *Order Regarding Omnibus Motion by Official Committee of Unsecured Creditors, Financial Oversight and Management Board, and Its Special Claims Committee to Extend Time For Service of Summonses and Complaints and to Stay Certain Adversary Proceedings Relating to Certain Challenged GO Bonds* [Dkt. # 7426 in No. 17-BK-3283] (collectively, the "**Stay and CMO Orders**").  The Oversight Board's request for reconsideration is contained in paragraphs six through nine of the *Superseding Status Report of the Debtors and Alternative Proposed Case Management Orders of Debtors and Certain Defendants in Connection with Adversary Proceeding Numbers 19-291, 19-292, 19-293, 19-294, 19-295, 19-296 and 19-297* (the "**Status Report**"), which was filed in the Commonwealth Title III case and the HTA Title III case.

The Stay and CMO Orders stayed certain adversary proceedings, except with respect to service of process, until September 1, 2019.  They also directed the Oversight Board and Unsecured Creditors Committee, as Plaintiffs, to meet and confer with interested Defendants on a proposed joint case management order.  They further set a deadline of noon on July 17, 2019, for the parties to submit a proposed order.

As detailed further below, the Oversight Board wholly ignored this directive.  It failed to propose *any* case management order to the interested Defendants.  Instead, the Oversight Board waited to arrange a meet and confer until seven days prior to the deadline for submission of a

proposed case management order.  In the meet and confer, the Oversight Board, rather than offer

any schedule, proposed simply to extend the stay by 45 days, relief this Court rejected in the Stay

and CMO Orders.

       The Court should deny the request for reconsideration as the Oversight Board has

provided no new evidence or law that would permit the Court to grant the requested relief.

Instead the Court should approve a Case Management Order such as the one proposed by Certain

Defendants and attached to the Status Report as Exhibit C.  This Order (or a similar schedule)

conforms with the expectations of the Court's Stay and CMO Orders.

       In support of this Objection, the Certain Defendants respectfully state as follows: [3]

### Procedural History and Background

1.      On May 7, 2019, the Oversight Board and the Unsecured Creditors Committee[4]

filed the *Omnibus Motion by Official Committee of Unsecured Creditors, Financial Oversight
and Management Board, and its Special Claims Committee to Extend Time for Service of
Summonses and Complaints and to Stay Certain Adversary Proceedings Relating to Certain
Challenged GO Bonds*. (Title III Case No. 17-3283, DOC # 6857).  On May 21, 2019, the

Oversight Board and the Unsecured Creditors Committee filed the *Omnibus Motion by Official
Committee of Unsecured Creditors, Financial Oversight and Management Board, and its Special
Claims Committee to Extend Time for Service of Summonses and Complaints and to Stay Certain*

---

[3]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the
related pleadings.

[4]  The Unsecured Creditors Committee is not a party to the Status Report and in fact opposes the request for
reconsideration of the Stay and CMO Orders.  So, while the Oversight Board complains in the Status Report that
less than all of the Defendants who attended the July 11th meet and confer have signed on to the proposed case
management order, 50% of the Plaintiffs in the stayed adversary proceedings oppose the Oversight Board's motion
for reconsideration.  (*See e.g.* Title III Case No. 17-3283, DOC # 8083 at ¶ 7a). Unfortunately, the position of the
Oversight Board has precluded substantive discussions regarding a case management order among Certain
Defendants and the Unsecured Creditors Committee.

*Adversary Proceedings Relating to Certain Challenged HTA Bonds*.  (Title III Case No. 17-3283, DOC # 7060).  Collectively, the two Motions are referred to as the "***Motions to Stay***".

2.     Through their Motions to Stay, the Oversight Board and the Unsecured Creditors Committee sought six months to effectuate service of their complaints in the adversary proceedings *plus* an unlimited, unilateral stay that would have given only them (and the Court) the power to terminate.  The grounds offered for such relief were that Plaintiffs needed such time to serve the large volume of Defendants and pursue settlement discussions. (Title III Case No. 17-3283, DOC # 6857; Title III Case No. 17-3283, DOC # 7060).

3.     The Oversight Board and the Unsecured Creditors Committee also alleged that their proposed stay was necessary because, without it, there would be "[many] different answer deadlines…[and] [s]uch a multi-tracked schedule would not be manageable."  Thus, the Oversight Board and the Unsecured Creditors Committee proffered that "[t]he Court should instead wait until all or a significant portion of the defendants have been served and then enter global scheduling orders as appropriate." (DOC # 6857 at ¶ 5; DOC # 7060 at ¶ 5).

4.     Timely objections to the Motions to Stay were filed. (*See e.g.* Title III Case No. 17-3283, DOC #s 7114, 7116 and 7118).

5.     On June 12, 2019, the Court heard oral arguments on the Motions to Stay.

6.     At the June 12 hearing, counsel for the Unsecured Creditors Committee, Mr. Luc Despins, handled the principal argument for all of the movants on the Motions to Stay.[5]  Mr. Despins abandoned movants' argument that service was impossible based on the sheer volume of Defendants and argued instead that the requested service extension and stay should be granted because, according to the Oversight Board, a Plan of Adjustment was forthcoming "in the next

[5] Mr. Martin Bienenstock, representing the Oversight Board, also participated at the hearing.

4

30 days or so [t]hat will deal with…99 percent of the issues that are built into these complaints."
(6/12/19 Omnibus Hearing Transcript, pg. 118, lines 13-16 (cited pages attached as **Exhibit A**)).

7.     Mr. Despins further argued that it made "sense to see whether these issues can be
settled or not before we…start dealing with 1,500 defendants, and the motions to dismiss,
motions for summary judgment, motions on the pleadings, et cetera, et cetera." (*Id*. at 118:17-
21.)

8.     However, in the same breath, Mr. Despins conceded "[w]e can do it [*i.e.*, deal
with motions to dismiss, motions for summary judgment, and motions on the pleadings], so it's
not an impossibility." (*Id*. at 118:21-22.)

9.     Mr. Despins then stated "[t]here is no point in [] arguing a lot about this because
it's completely within [the Court's] discretion as to whether it should be a stay or not. We think
it makes sense, but if Your Honor doesn't think it makes sense, then we'll operate accordingly."
(*Id*. at 119:16-20.)

10.    Mr. Despins later stated in rebuttal that while the plaintiffs wanted a stay, "[i]t's
okay to build into the stay a case management process[;] [t]here's no problem with that." Indeed,
Mr. Despins further stated that the Court's "proposal to have a case management process meet
and confer, take place during that stay period, makes a lot of sense[;] [t]here's no doubt about
that." (*Id*. at 144:14-16.)  Although the Oversight Board also participated in the hearing, at no
time did its counsel contradict these statements or any others made by Mr. Despins.

11.    On June 13, 2019, the Court entered the Stay and CMO Orders, ordering that the
Plaintiffs' service of process deadline be extended to September 1, 2019, and that the adversary
proceedings be stayed until the same date. (Title III Case No. 17-3283, DOC # 7427, ¶ 2-3; Title
III Case No. 17-3283, DOC # 7426, ¶ 2-3).

12.     The Court further ordered that:

> The Plaintiffs shall be responsible for meeting and conferring with all
> interested Defendants who have been served with this Order for the
> purpose of submitting a proposed joint case management order for the
> Court's consideration. The proposed order shall be filed by **12:00 noon on
> July 17, 2019**.
> ….
> Absent good cause shown, and despite the extension of the ultimate
> service deadline, it is expected that all Defendants…shall have been
> served with the complaint and this order in sufficient time to participate in
> the preparation of the proposed joint case management order.

(DOC # 7427 at ¶ 7-8).

13.     Despite the Court's clear directives in the Stay and CMO Orders, the Oversight

Board apparently waited until July 8, 2019, to provide the Clerk with summonses, which did not

allow the Clerk to begin to issue the summonses until July 12, 2019. (Title III Case No. 17-3283,

DOC # 8083 at ¶ 3a-c).

14.     Prior to the Clerk's issuance of the summonses, the Oversight Board, on July 10,

2019, emailed the Certain Defendants (who, despite the Oversight Board's delay in formal

service, had indicated to the Oversight Board that they wanted to participate in a meet and

confer) to arrange a meet and confer for the following day.  Rather than proposing or even

discussing a case management order, as required by the Stay and CMO Orders, the Oversight

Board instead attached a draft "status report" that included a request for an additional 45 day stay

after September 1, 2019. Signaling the Oversight Board's recognition of its non-compliance with

the Stay and CMO Orders, the Oversight Board's draft, sent in advance of the meet and confer

call, concluded with "[t]he Interested Defendants could not agree to the Debtors' proposal and

instead propose the following: [TBD]."

15.     The Defendants participating in the meet and confer held on July 11, 2019,

unanimously rejected the Oversight Board's *de facto* motion for reconsideration of the Stay and

6

CMO Orders masquerading as a status report.[6]  These Defendants insisted that pursuant to the

Stay and CMO Orders, the parties were obligated to propose a joint case management order. In

response, the Oversight Board asked to see a proposed schedule, which certain of the

participating Defendants thereafter prepared and provided to the Oversight Board on July 15,

2019.  Confirmation was also obtained that service issues could be completed by September 1,

2019.

16.     The Oversight Board rejected this proposed schedule on July 16, 2019 via email

sent at approximately 8 p.m. Atlantic Standard Time.  In its email, the Oversight Board attached

a revised filing that did not include *any* alternative schedule to the one proposed by the

Defendants.  Instead, the Oversight Board chose to include, for the first time, several paragraphs

arguing why an additional stay was necessary—the actual argument for reconsideration

supporting the Defendants' interpretation of the Oversight Board's initial draft.

17.     On July 17, 2019, the Oversight Board filed the Status Report at issue after the

Oversight Board refused to withdraw the new paragraphs arguing for reconsideration of the Stay

and CMO Orders.

18.     In these paragraphs, the Oversight Board reiterated the arguments it initially

raised in its Motions to Stay and at the June 12, 2019 Omnibus Hearing. Specifically, the

Oversight Board alleged that an additional 45 day stay was necessary because:

   a.   the issues raised in the Adversary Proceedings would be better handled in

        connection with the forthcoming Plan of Adjustment;

   b.   "the length of time required to complete service upon all affected Defendants";

        and

---

[6] Counsel for the various Defendants who participated in the July 11 meet and confer are identified in the Status
Report at Paragraph 5.

c. "in order to avoid disjointed meet and confers and uncoordinated motion practice."

(*See e.g.* Title III Case No. 17-3283, DOC # 8083 at ¶ 6).

19.    By proceeding in this manner, the Oversight Board ignored the Stay and CMO Orders, contradicted the Plaintiffs' own concessions at the June 12, 2019 Omnibus Hearing and prior meet and confers, and turned its portion of the Status Report into a motion to reconsider.

## Discussion

### A.    The Board's Request For Reconsideration Of The Court's Stay Decision Should Be Denied.

20.    The Court should deny this thinly-disguised motion to reconsider.  "A motion for reconsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scare judicial resources." *In re Pabon Rodriguez*, 233 B.R. 212, 220 (Bankr. D.P.R. 1999), aff'd, 2000 WL 35916017 (B.A.P. 1st Cir. 2000), aff'd, 17 Fed. Appx. 5 (1st Cir. 2001).  Accordingly, the standard for these motions is exceedingly high.  In order to prevail, the Oversight Board must "clearly establish a manifest error of law or…present newly discovered evidence." *Cherena v. Coors Brewing Co*., 20 F. Supp. 2d 282, 287 (D.P.R. 1998).  A motion for reconsideration cannot be used "to repeat old arguments previously considered and rejected."  *Nat'l Metal Finishing Co.*, 899 F.2d at 123; *accord Berrios–Berrios v. Commonwealth of P.R.*, 205 F.Supp.2d 1, 2 (D.P.R.2002); *Colón v. Fraticelli*, 181 F.Supp.2d 48, 49 (D.P.R.2002) (denying motion for reconsideration because it merely rehashed prior arguments made in a prior motion).

21.    This Court, citing some of the above referenced case law, has denied motions for reconsideration when the movant asserted identical argument to ones it made in its initial motion. *See, e.g., In re Financial Oversight and management Board for Puerto Rico*, No. 17-bk-3283,

2018 WL 626183, *Order Denying Cooperativa De Seguros Multiples' Motion for Reconsideration of Order* at *1 (Title III, Jan. 5, 2018). This Court found that reconsideration unwarranted when the "[m]ovant ha[d] not identified any facts overlooked by this Court nor identified any law that was not previously examined." *Id.*

22.     The same is true here. As detailed above, the Oversight Board simply rehashes the arguments it made in support of its Motions to Stay.  Moreover, nothing has changed since entry of the Stay and CMO Orders.  The Oversight Board offers no new facts or evidence nor even suggests that the Court made a "manifest error of law."

23.     Further, the Oversight Board's backtracking on representations made at the Omnibus Hearing offer additional grounds for denial.  As detailed above, Mr. Despins stated that a stay was completely within the Court's discretion and that the Plaintiffs would "operate accordingly" on whatever the Court decided.  (6/12/19 Omnibus Hearing Transcript at pg. 119).  Mr. Despins also stated that "[t]here's no problem with" building a case management process into the stay and that the proposal to do so "makes a lot of sense[;] [t]here's no doubt about that." (*Id.* at pg. 144).  The Oversight Board, the Unsecured Creditors Committee's Co-Plaintiff, stayed silent when these representations were made and expressed no doubts or reasons why the parties could not work to craft a schedule.  Now, a month later, it appears the Oversight Board never intended to engage in good faith negotiations of a case management order. Instead, the Oversight Board waited until days before the deadline to schedule a meet and confer on what turned out to be a rehash of its Motions to Stay on which the Court had already ruled.

**B.     The Oversight Board's Criticisms Of Defendants' Case Management Proposal Are Meritless.**

24.     The Status Report contains a series of criticisms of the case management proposals embodied in Certain Interested Defendants' proposed case management order.  (*See,*

*e.g.,* Title III Case No. 17-3283, DOC # 8083 at ¶ 7).  As noted in the Status Report, these arguments were added to the draft shortly before the filing deadline, and Certain Defendants did not have an opportunity to respond in the Status Report itself.  *Id.* ¶ 13.  Pursuant to their reservation of rights (*id.*), Certain Defendants hereby briefly address the Oversight Board's criticisms of these Defendants' case management proposal.

25.    The Oversight Board first complains (*id.* ¶ 7.a.i) that Certain Defendants' proposal contemplates discovery beginning before motions to dismiss are filed.  In Certain Defendants' view, however, the most expeditious path to resolution of the critical issues implicated by these adversary proceedings is to require prompt briefing of potentially dispositive legal issues (in the form of motions to dismiss) while also making progress on any required discovery.  In any event, if the Oversight Board views immediate discovery as an unreasonable burden, then the Board should propose case management procedures that it believes would address that concern.  This is not a basis to refuse to engage on case management altogether and seek only further delay.

26.    The Oversight Board also suggests (*id.* ¶ 7.a.ii) that defendants' proposal "does not contain any mechanism for a manageable coordination of briefing" on motions to dismiss. That is wrong.

27.    The Certain Defendants' proposed order requires the parties to use reasonable efforts to coordinate to file joint briefs on issues as to which they are aligned, while minimizing duplicative briefing, and it contemplates a two-stage briefing schedule under which Defendants other than the Certain Interested Defendants must review those briefs filed by the Certain Interested Defendants and then certify that any additional briefs they wish to file are not

duplicative of the previously filed one.  (*See* Exhibit C of Status Report at ¶ 1-3).  This procedure should meaningfully reduce the burden on the Court.

28.     In any event, the Oversight Board's proposed "solution"—rounds of briefing on what issues may be raised in motions to dismiss—is not a solution at all. If the Board truly believes that briefing on motions to dismiss would be disorderly because of the number of parties involved in these cases (a premise we reject, given Defendants' obvious interest in providing a coordinated presentation on key legal issues), then the Oversight Board's proposed initial briefing would be no more orderly.  Requiring this initial stage would no doubt suit the Board's interest in delay, but it would not reduce any burden on the Court or the parties.

29.     Finally, the Oversight Board contends (*id.* ¶ 7.c) that Certain Defendants' proposal should be rejected because not all defendants have been served and thus some defendants have not been able to participate in the parties' initial meet and confer sessions.  But that position is directly contrary to the position the Board took in connection with its recent request to establish procedures for litigating the Unsecured Creditors Committee's omnibus objection to certain Commonwealth general obligation bonds ("**GO Bonds**") issued in 2011.  In that context, the Board argued that the objection to the 2011 GO Bonds should be consolidated with its pre-existing objection to GO Bonds issued in 2012 and 2014, but that the process of establishing litigation procedures should not be delayed while holders of the 2011 GO Bonds received notice of the objection.  (Title III Case No. 17-3283, DOC # 7154 at ¶ 16).  The Board recognized that the interests of these 2011 bondholders could be adequately represented, for the limited purpose of establishing litigation procedures, by the many sophisticated institutions that were already parties to the 2012 and 2014 GO Bond objection.  *Id.*  The same logic holds true here, and the fact that not all Defendants have been served thus should not prevent the Court

11

from establishing case management procedures as outlined in Certain Defendants' proposal and as contemplated by the Court in its Stay and CMO Orders. ( Doc # 7427 at ¶ 7-8).

30.     Moreover, once again, the Unsecured Creditors Committee raised this possibility before the Court entered the Stay and CMO Orders (See 6/12/19 Omnibus Hearing Transcript, 116:2-6).[7] The Court nevertheless requested that the parties propose a Case Management Order. The Oversight Board has failed to do so.

## Conclusion

31.     The Court should deny the Oversight Board's request to reconsider and enter a case management order consistent with that proposed by the Certain Defendants in the Status Report.

Dated:  San Juan, Puerto Rico

July 22, 2019

REXACH & PICÓ, CSP

By: *María E. Picó*
    María E. Picó
    USDC-PR 123214
    802 Ave. Fernández Juncos
    San Juan PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    E-mail: mpico@rexachpico.com

BUTLER SNOW LLP

By: *Martin A. Sosland*
    Martin A. Sosland (*pro hac vice*)
    5430 LBJ Freeway, Suite 1200
    Dallas, TX 75240

---

[7] Indeed, the UCC represented that the Plaintiffs "can put as many people as needed" to ensure service of 1500 defendants.  (*See* 6/12/19 Omnibus Hearing Transcript at 117:7).

Telephone: (469) 680-5502
Facsimile: (469) 680-5501
E-mail: martin.sosland@butlersnow.com


J. Mitchell Carrington (*pro hac vice*)
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone: (601) 985-2200
Facsimile: (601) 985-4500
E-mail: mitch.carrington@butlersnow.com


Jason W. Callen (*pro hac vice*)
150 3rd Avenue, South, Suite 1600
Nashville, TN 37201
Telephone: (615) 651-6774
Facsimile: (615) 651-6701
E-mail: jason.callen@butlersnow.com

***Attorneys for Financial Guaranty Insurance
Company***

/s/ Ramón Rivera Morales
J. Ramón Rivera Morales
USDC-PR Bar No. 200701
Andrés F. Picó Ramírez
USDC-PR Bar No. 302114
JIMÉNEZ, GRAFFAM & LAUSELL
P.O. Box 366104
San Juan, PR 00936
Telephone: (787) 767-1030
Facsimile: (787) 751-4068
Email: rrivera@jgl.com

/s/ Lawrence S. Robbins
Lawrence S. Robbins (admitted *pro hac vice*)
Gary A. Orseck (admitted *pro hac vice*)
Kathryn S. Zecca (admitted *pro hac vice*)
Mark T. Stancil (admitted pro hac vice)
Donald Burke (admitted *pro hac vice*)
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Email: lrobbins@robbinsrussell.com

/s/ Andrew N. Rosenberg
Andrew N. Rosenberg (admitted *pro hac vice*)
Karen R. Zeituni (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Email: arosenberg@paulweiss.com

***Counsel to the Ad Hoc Group of General Obligation Bondholders***

**G. CARLO-ALTIERI LAW OFFICES, LLC**

By: */s/ Gerardo A. Carlo*
Gerardo A. Carlo
USDC PR No. 112009
Telephone: (787) 247-6680
gacarlo@carlo-altierilaw.com

By: */s/ Kendra Loomis*
Kendra Loomis
USDC PR No. 227408
Telephone: (787) 370-0255
loomislegal@gmail.com

254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Telephone: (787) 247-6680
Facsimile: (787) 919-0527

**MORRISON & FOERSTER LLP**

By: /s/ *Gary S. Lee*
James M. Peck (admitted *pro hac vice*)
Gary S. Lee (admitted *pro hac vice*)
Grant J. Esposito (admitted *pro hac vice*)
David J. Fioccola (admitted *pro hac vice*)
James A. Newton (admitted *pro hac vice*)
Andrew R. Kissner (admitted *pro hac vice*)

250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
jpeck@mofo.com
glee@mofo.com
gesposito@mofo.com
dfioccola@mofo.com
jnewton@mofo.com
akissner@mofo.com

*Counsel for the Ad Hoc Group of Constitutional Debtholders*

/s/ Carmen D. Conde Torres
Carmen D. Conde Torres
(USDC No. 207312)
254 San José Street
Suite 5
San Juan, PR 00901-1523
Tel. 787-729-2900
Fax. 787-729-2203
E-Mail: condecarmen@condelaw.com

-and-

/s/ Douglas S. Mintz
Douglas S. Mintz (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone:  (202) 339-8400
Facsimile:   (202) 339-8500
E-mail:      dmintz@orrick.com

/s/ Peter Amend
Peter Amend (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, N.Y. 10019
Telephone:  (212) 506-5000
E-mail:      pamend@orrick.com

***Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt
Recovery Authority***

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*

    Roberto Cámara-Fuertes (USDC-PR No. 219002)

    Sonia Colón (USDC-PR No. 213809)

    221 Ponce de León Avenue, 5th Floor

    San Juan, PR 00917

    Telephone: (787) 766-7000

    Facsimile:  (787) 766-7001

    Email:  rcamara@ferraiuoli.com

        scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Dennis F. Dunne*

    Dennis F. Dunne

    Andrew M. Leblanc

    Atara Miller

    Grant R. Mainland

    (admitted *pro hac vice*)

    55 Hudson Yards

    New York, NY 10001

    Telephone: (212) 530-5770

    Facsimile:  (212) 822-5770

    Email: ddunne@milbank.com

        aleblanc@milbank.com

        amiller@milbank.com

        gmainland@milbank.com

***Attorneys for Ambac Assurance Corporation***

CASELLAS ALCOVER & BURGOS P.S.C.

CADWALADER, WICKERSHAM & TAFT LLP

By: */s/ Heriberto Burgos Pérez*

    Heriberto Burgos Pérez
    USDC-PR 204809
    Ricardo F. Casellas-Sánchez
    USDC-PR 203114
    Diana Pérez-Seda
    USDC-PR 232014
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile:  (787) 756-1401
    Email:  hburgos@cabprlaw.com
           rcasellas@cabprlaw.com
           dperez@cabprlaw.com

***Attorneys for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.***

By: */s/ Mark C. Ellenberg*

    Howard R. Hawkins, Jr.*
    Mark C. Ellenberg*
    William J. Natbony*
    Ellen M. Halstead*
    Thomas J. Curtin*
    Casey J. Servais*
    200 Liberty Street
    New York, NY 10281
    Telephone:  (212) 504-6000
    Facsimile:  (212) 406-6666
    Email:  howard.hawkins@cwt.com
           mark.ellenberg@cwt.com
           bill.natbony@cwt.com
           ellen.halstead@cwt.com
           thomas.curtin@cwt.com
           casey.servais@cwt.com

* Admitted *pro hac vice*

***Attorneys for Assured Guaranty Corp. and Assured
Guaranty Municipal Corp.***

By: /s/Arturo J. García-Solá
    Arturo J. García-Solá
    USDC No. 201903
    Email: ajg@mcvpr.com
By: /s/Nayuan Zouairabani
    Nayuan Zouairabani
    USDC No. 226411
    Email: nzt@mcvpr.com
    MCCONNELL VALDÉS LLC
    270 Muñoz Rivera Avenue, Suite 7
    Hato Rey, Puerto Rico 00918
    PO Box 364225
    San Juan, Puerto Rico 00936-4225
    Telephone: 787-250-5632
    Facsimile: 787-759-9225

***Attorneys for AmeriNational Community
Services, LLC as servicer for the GDB Debt Recovery Authority***

48529407.v3

1

1      UNITED STATES BANKRUPTCY COURT

2      DISTRICT OF PUERTO RICO

3

In Re:                         )      Docket No. 3:17-BK-3283(LTS)
4                                  )
                                   )      Title III
5      The Financial Oversight and )
       Management Board for        )
6      Puerto Rico,                )      (Jointly Administered)
                                   )
7      *as representative of*      )
                                   )
8      The Commonwealth of         )
       Puerto Rico, *et al.,*      )      June 12, 2019
9                                  )
       and                        )
10                                  )
                                   )
11     Puerto Rico Electric        )
       Power Authority,           )
12                                  )
                Debtors.           )
13

14     In Re:                         )      Docket No. 3:17-BK-3566(LTS)
                                   )
15                                  )      PROMESA Title III
                                   )
16     The Financial Oversight and )
       Management Board for        )
17     Puerto Rico,                )      (Jointly Administered)
                                   )
18     *as representative of*      )
                                   )
19     Employees Retirement System )
       of the Government of the    )
20     Commonwealth of             )
       Puerto Rico,                )
21                                  )
                Debtor.            )
22

23

24

25



2

```
 1
 2   In Re:                        )   Docket No. 3:17-BK-3567(LTS)
                                   )
 3                                 )   PROMESA Title III
     The Financial Oversight and  )
 4   Management Board for          )
     Puerto Rico,                  )   (Jointly Administered)
 5                                 )
     as representative of          )
 6                                 )
     Puerto Rico Highways and      )
 7   Transportation Authority,     )
                                   )
 8              Debtor.            )

 9
10   In Re:                        )   Docket No. 3:17-BK-4780(LTS)
                                   )
11                                 )   PROMESA Title III
     The Financial Oversight and  )
12   Management Board for          )
     Puerto Rico,                  )   (Jointly Administered)
13                                 )
     as representative of          )
14                                 )
     Puerto Rico Electric          )
15   Power Authority,              )
                                   )
16              Debtor.            )

17
18                   OMNIBUS HEARING

19    BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

20              UNITED STATES DISTRICT COURT JUDGE

21    AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

22              UNITED STATES DISTRICT COURT JUDGE

23
24
25
```

1    also there's a reason to stay the clawback, which is that

2    there's an underlying action that relates to the clawback.

3    Let's see how that action turns out before we, you know,

4    disrupt the various people that are the targets there.

5         And the other point to be made is that -- is again,

6    it's not only the service of this.  Of course we can serve the

7    1,500.  We can put as many people as needed on that.  That's

8    not the point.  We don't need until necessarily November to do

9    that, but it's everything that will be caused by the service,

10   service at different times, you know, coordinating all of

11   that.

12        HONORABLE MAGISTRATE JUDGE DEIN:  Your papers say

13   that you needed the time to -- you have two separate issues,

14   right?  You have service and then you have the stay of

15   litigation?

16        MR. DESPINS:  Correct.

17        HONORABLE MAGISTRATE JUDGE DEIN:  But your papers

18   were pretty clear, I thought, that said you wanted the stay

19   for service for really administrative reasons.

20        MR. DESPINS:  Correct.  I'm getting to that.

21        So one of them is you have to coordinate service,

22   because people are served at different times.  Their time to

23   answer runs -- so there's a whole coordination effort.  But on

24   top of that, it's the issue of -- and, you know, I think when

25   we got approval to do this in New York, I remember Judge Swain

1   looking at me and saying -- there was a reference to some

2   circus.  I forget if it's -- but basically saying, look,

3   you're doing this because the statute of limitations is about

4   to expire.

5          The answer is yes.  I fully expect that what's going

6   to happen after that is an effort to resolve all of this

7   rather than having -- and I forget the expression.  That's

8   where the circus analogy came in.  But I fully expect there

9   will be efforts to settle all of this rather than litigate in

10  39 different directions.  I think that was the analogy that

11  was used.

12         And that's part of it as well.  Mr. Bienenstock says

13  that he thinks he will file a plan or may file a plan in the

14  next 30 days or so.  That will deal with a lot of the issues,

15  I would say with 99 percent of the issues that are built into

16  these complaints.

17         So it does make sense to see whether these issues can

18  be settled or not before we go all out and start dealing with

19  1,500 defendants, and the motions to dismiss, motions for

20  summary judgment, motions on the pleadings, et cetera, et

21  cetera.  We're happy to do that in a sense.  We can do it, so

22  it's not an impossibility.  But from a case management point

23  of view, we don't think that makes sense.

24         Now, obviously, does it have to be November 1st?  No.

25  It could be -- you know, I understand their concern, which is

1    hey, if there's a plan that's going full steam ahead while I'm

2    stayed here, that's not good.  But there's a safety valve in

3    the Order that says they can move to terminate the stay and

4    the Court for good cause can terminate the stay.

5         So there is a safety valve, and that is one of the

6    biggest arguments here, which is what is the prejudice to

7    them.  Yes, nobody likes a stay, but there's a very precise

8    safety valve that says that either the plaintiffs or the

9    defendants can terminate the stay.

10        The defendants have to show good cause.  I don't

11   think that's a -- we didn't try to define what good cause is

12   because that could take weeks to agree with everyone as to

13   what that means.  But the point is the Court has a lot of

14   discretion.

15        And that's where I started with this, and I would end

16   with this:  There is no point in me arguing a lot about this

17   because it's completely within your discretion as to whether

18   it should be a stay or not.  We think it makes sense, but if

19   Your Honor doesn't think it makes sense, then we'll operate

20   accordingly.  But I think the Court has a lot of discretion in

21   giving us more time to serve and on staying the litigation

22   generally.

23        HONORABLE MAGISTRATE JUDGE DEIN:  All right.  But

24   just clarify for me why you think you shouldn't serve as

25   opposed to just -- because clearly you can serve an order that

1    that anger come from?  That was the law.  The Court didn't

2    have jurisdiction to decide things that they posed that they

3    should have known in the first place.  So it's just

4    inexplicable to us.

5          The other accusations made -- I'm over time, so I'll

6    just say we couldn't disagree more.  But the Oversight Board

7    is going to propose a plan and ask for scheduling that is fair

8    to everybody and gets the issues resolved in the most

9    efficient way.  That's always what it intended to do and that

10   is what it will do.

11         Thank you, Your Honor.

12         HONORABLE MAGISTRATE JUDGE DEIN:  Thank you.

13         MR. DESPINS:  Just two seconds, Your Honor.

14         We think there should be a stay of some kind.  It's

15   okay to build into the stay a case management process.

16   There's no problem with that.  And we're also okay to start

17   serving the lien challenge summons.

18         So we're -- where we have concerns is serving the

19   clawback action, so I want to make sure that's not lost in

20   this.  But your proposal to have a case management process

21   meet and confer, take place during that stay period, makes a

22   lot of sense.  There's no doubt about that.  So I don't

23   think --

24         HONORABLE MAGISTRATE JUDGE DEIN:  There's nothing

25   that you've asked for that would prevent you from serving, is