# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, and PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>Movants,<br>v.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *et al.*<br><br>Respondents. | **This filing relates only to PREPA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and PREPA's Title III case (Case No. 17-BK-4780-LTS)** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**RESPONSE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD TO THE COURT'S ORDER GRANTING MOTION TO SEAL FOR LIMITED DURATION AND FOR SUPPLEMENTAL BRIEFING**

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), on its own behalf, and on behalf of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor") as the Debtor's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this brief in support of the continued sealing of certain documents that were included as exhibits in the Official Committee of Unsecured Creditors' *Omnibus Motion to Compel Production of Documents in Connection with PREPA RSA Rule 9019 Settlement Motion* [ECF No. 1269] (the "Motion to Compel") and *Renewal of June 3, 2019 Omnibus Motion to Compel Production of Documents in Connection with PREPA RSA Rule 9019 Settlement Motion* [ECF No. 1467] (the "Renewed Motion to Compel").

**INTRODUCTION**

1. On June 3, 2019, the Official Committee of Unsecured Creditors (the "Committee") filed the Motion to Compel. In connection with that motion, on June 4, 2019, the Committee filed its *Urgent Motion of Official Committee of Unsecured Creditors to File Under Seal Unredacted Omnibus Motion to Compel Production of Documents in Connection with PREPA RSA Rule 9019 Settlement Motion* [ECF No. 1270], due to the fact that certain exhibits to the Motion to Compel had been designated "Confidential" by the producing parties under the terms of the operative protective order. On July 16, 2019, the Committee filed its Renewed Motion to Compel. Contemporaneously therewith, the Committee filed its *Urgent Motion of Official Committee of Unsecured Creditors to File Under Seal Unredacted Renewal of June 3,*

---

[2] PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

2

*2019 Omnibus Motion to Compel in Connection with PREPA RSA Rule 9019 Settlement Motion* (the "Motion to Seal") [ECF No. 1468].

2. On July 17, 2019, the Court permitted an unredacted version of the Renewed Motion to Compel to be filed under seal and directed the producing parties to submit briefing explaining why certain of the exhibits to the Renewed Motion to Compel should remain sealed.

3. The Oversight Board submits this brief to justify sealing the information contained in Exhibits 12, 13, 15, and 22 to the Renewed Motion to Compel, which are documents that were produced by the Oversight Board and/or Proskauer Rose LLP.[3]

4. The *Stipulation and Order in Connection with Discovery Regarding the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(I) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [ECF No. 1322] (the "Protective Order"), provides that

> "'Confidential'" or 'Confidential Material' shall mean and refer to any Material produced by any Party or non-party (each referred to herein as a "Producing Party") that the Producing Party considers in good faith to contain commercial, financial, trade secret, research and development, or personal information of a proprietary nature that is not known to, or has not generally been made available to, the public or other information the disclosure of which, in the good faith judgment of the Producing Party, would be detrimental to the conduct of the Producing Party's business or official functions."

5. Exhibits 12, 13, 15, and 22 to the Renewed Motion to Compel meet this definition. Pursuant to Section 101(a) of PROMESA, the purpose of the Oversight Board is to provide a method for the Commonwealth to "achieve fiscal responsibility and access to capital markets." To fulfill that responsibility, the Oversight Board regularly negotiates with creditors in an effort to reach agreements with respect to the financial obligations of the Commonwealth

---

[3] The Oversight Board hereby withdraws its confidentiality designations as to Exhibits 9, 10, 11, 16, and 17-20.

3

and certain of its instrumentalities.  The definitive RSA, the subject of the 9019 Motion currently pending before this Court, is only one example of the agreements the Oversight Board has reached as a result of these ongoing negotiations.

6.  The Exhibits the Oversight Board seeks to retain under seal include drafts of the preliminary Restructuring Support Agreement between PREPA and the Ad Hoc Group of PREPA Bondholders (collectively, the "Ad Hoc Group") (Exs. 12 and 13), a presentation made by Houlihan Lokey, a financial advisor to the Ad Hoc Group, that summarizes key terms proposed by the parties during the negotiations that ultimately resulted in the definitive RSA (Ex. 15), and an email summarizing the current status of the negotiations for the benefit of the Oversight Board's members (Ex. 22).  These documents reflect the Oversight Board's negotiation strategy, priorities, and other material non-public information.  The public disclosure of these documents would be detrimental to the Oversight Board's ability to perform its core official function, which is to provide a path to restored fiscal health for the Commonwealth and its instrumentalities, including PREPA.

## ARGUMENT

7.  Although there is a general presumption of public access to court records, Fed. R. Civ. P. 26(c)(1)(G) provides courts authority to enter a protective order sealing "confidential . . . commercial information."  A party seeking a protective order sealing documents must demonstrate good cause, which requires a "particularized factual showing of the harm that would be sustained" if the documents were not sealed.  *Dunkin Donuts Franchised Restaurants, LLC v. Agawam Donuts, Inc.*, 2008 WL 427290 at *1 (D. Mass. Feb. 13, 2008).  However, the burden to show good cause is lower when the documents for which sealed treatment is requested relate to discovery matters, because there is no tradition of public access to discovery materials.  *See*

*Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986) (declining to extend the common law presumption that the public may view judicial records to discovery materials because "there is no tradition of public access to discovery").

8. Courts have regularly permitted parties to file documents relating to contract negotiations under seal, particularly where the disclosure of the information puts the party at a competitive disadvantage. *See Powertech Tech., Inc. v. Tessera, Inc.*, 2013 WL 12324116 at *19 (N.D. Cal. Apr. 15, 2013) (granting motion to seal draft of a license agreement between movant and third party); *Wisconsin Alumni Research Found. v. Apple*, 2015 WL 6453837 at *1 (W.D. Wis. Oct. 26, 2015) (sealing movant's manufacturing agreements with third party companies because release of the information would "provide a competitive advantage" to movant's counterparts in future negotiations); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 2008 WL 199537 at *7 (S.D.N.Y. Jan. 22, 2008) (sealing documents that reveal party's negotiating strategies where their release would harm the party in future transactions); *FTC. v. OSF Healthcare Sys.*, 2012 WL 1144620, at *3 (N.D. Ill. Apr. 5, 2012) (sealing contract terms, contract negotiations and strategies, where disclosure of the information would have put the party at a competitive disadvantage); *FTC v. Qualcomm Inc.*, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to seal because information would harm third parties' "competitive standing" by "divulg[ing] terms of confidential contracts, contract negotiations, or trade secrets").

9. The four exhibits at issue here all relate to the negotiations between the Oversight Board and PREPA's creditors. Exhibit 12 is a copy of the Ad Hoc Group's July 24, 2018 draft of the preliminary RSA. Prior to sending the document to the Oversight Board and AAFAF, the Ad Hoc Group placed a legend on the document designating it as "Strictly Confidential."

Moreover, the exhibit gives direct insight into the negotiation of the preliminary RSA because it reveals non-final deal terms and open points of negotiation between the parties, including their negotiating positions as of the time the document was prepared. The release of this document would provide in-depth insight into the parties' negotiations, which would harm the Oversight Board, PREPA, and AAFAF (the "Government Parties"), as well as the Ad Hoc Group, in future negotiations with other creditors.

10. Exhibit 13 is a copy of the Ad Hoc Group's July 24, 2018 draft of the Recovery Plan Term Sheet. The Recovery Plan Term Sheet details the proposed terms of the Preliminary Restructuring Support Agreement, including information about the future structure of PREPA's debt, its expected tax treatment, and potential remedies of the parties under the Restructuring Support Agreement. As with the draft preliminary RSA, public disclosure of Exhibit 13 would reveal sensitive non-public information about the parties' negotiating positions, which would negatively impact the ability of the Government Parties and the Ad Hoc Group to negotiate and reach agreements with other counterparties in the future.

11. Exhibit 15 is a January 2019 Houlihan Lokey presentation which compares key terms of the Oversight Board's proposal regarding a potential restructuring agreement against the Ad Hoc Group's latest counterproposal. This document provides a direct window into the inner workings of the parties' negotiations, highlighting which terms the parties viewed as most important, revealing key points and positions taken by the parties at this stage of the negotiations, and highlighting the main points of disagreement between the Oversight Board and the Ad Hoc Group. Revealing the information contained in Exhibit 15 will therefore also put the Government Parties at a disadvantage in future negotiations with other creditor groups.

12. Exhibit 22 is an email from David Brownstein of Citigroup to the members of the Oversight Board providing a detailed update regarding the status of the negotiations regarding the Restructuring Support Agreement. The exhibit reveals sensitive details regarding the process of the parties' negotiations and the internal deliberations between the Oversight Board and its advisors regarding the negotiations and contains material, nonpublic details regarding how the Commonwealth plans to pay the Ad Hoc Group under the terms of the agreement. Additionally, it provides insight into the Oversight Board's negotiation strategy with other creditors, including the key areas of disagreement between the parties. Public disclosure of Exhibit 22 will likewise materially harm the Oversight Board's ability to negotiate with other creditors.

## **RELIEF REQUESTED**

13. For the reasons set forth above, the Oversight Board respectfully requests that the Court grant this motion and permit Exhibits 12, 13, 15, and 22 to the Committee's Renewed Motion to Compel to remain under seal.

Dated: July 22, 2019

**PROSKAUER ROSE, LLP**

*/s/* Margaret A. Dale

Martin J. Bienenstock
Ehud Barak
Margaret A. Dale
Gregg M. Mashberg
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
mbienenstock@proskauer.com
ebarak@proskauer.com
mdale@proskauer.com
gmashberg@proskauer.com

-and-

Paul V. Possinger
70 W. Madison St., Suite 3800
Chicago, IL 60602
Tel: (312) 962-3550
Fax: (312) 962-3551
ppossinger@proskauer.com

-and-

**DEL VALLE EMMANUELLI LAW OFFICES**

Luis F. del Valle Emmanuelli
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932
devlawoffices@gmail.com

*Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*

8