UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION'S OMNIBUS REPLY
IN FURTHER SUPPORT OF THE PENSIONS DISCOVERY MOTIONS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

I.     Respondents Have Not Provided Ambac With Sufficient Information Regarding the Commonwealth's Pensions Obligations. ....................................................................... 4

        a.     The Materials Produced by Respondents Do Not Satisfy the Request That Is the Subject of Ambac's Motion to Compel. ....................................................... 5

        b.     The Materials Produced by Respondents Do Not Satisfy the Requests Contained Within Ambac's Rule 2004 Motion. ...................................................... 8

II.     Ambac Has Shown Good Cause for Why It Requires Additional Pensions-Related Information. .......................................................................................................................... 10

CONCLUSION ............................................................................................................................. 12

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Coffee Cupboard, Inc.*,
    128 B.R. 509 (Bankr. E.D.N.Y. 1991) ...................................................................................11

*In re Devani*,
    556 B.R. 37 (Bankr. E.D.N.Y. 2016) ...............................................................................10, 11

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004) ...................................................................................11

**Rules and Statutes**

11 U.S.C. § 2146 .............................................................................................................................5

11 U.S.C. § 2161 .............................................................................................................................5

11 U.S.C. § 2231 .............................................................................................................................5

Fed. R. Bankr. P. 2004 ............................................................................................................ *passim*

ii

Ambac Assurance Corporation ("Ambac") respectfully submits this *Omnibus Reply in Further Support of the Pensions Discovery Motions*.[1] In further support of the Pensions Discovery Motions, and in reply to the *Oversight Board's Omnibus Opposition to the Pensions Discovery Motions* (Dkt. No. 7895, the "Opposition Brief"), Ambac states as follows:

## PRELIMINARY STATEMENT

1. On July 15, 2019, the parties filed a joint urgent motion informing the Court that the parties had agreed to meet and confer further on the Pensions Discovery Motions in an effort to narrow the dispute before the Court, and requesting an order (i) extending the deadline for Ambac to file its reply to July 23, 2019, and (ii) deferring consideration of the Pensions Discovery Motions to the July 30, 2019 hearing before the Honorable Judith G. Dein. (Dkt. No. 8007.) On July 16, the Court granted the motion. (Dkt. No. 8017.) AAFAF subsequently agreed to provide Ambac with additional documents, including census data and Milliman reports for 2017, materials concerning the Puerto Rico Teachers Retirement System ("TRS"), the census data and Milliman reports for 2017, as well as certain documents responsive to Request Nos. 21 and 26 of Ambac's Rule 2004 Motion. Ambac can represent that the parties agree that the recent discussions have been in good faith and constructive.[2] The parties accordingly have agreed to continue to meet and

---

[1] Ambac's *Motion To Compel Compliance with the Court's December 15, 2017 and February 26, 2018 Orders Regarding the Urgent Renewed Joint Motion of the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., The Mutual Fund Group, and National Public Finance Guarantee Corporation For Order Authorizing Rule 2004 Examination* (Dkt. No. 7505, the "Motion to Compel") and *Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Pension Liabilities* (Dkt. No. 7507, the "Rule 2004 Motion") shall be collectively referred to herein as the "Pensions Discovery Motions."

[2] Respondents have also represented to Ambac that, in light of the ongoing productive discussions, neither the Oversight Board nor AAFAF would continue to argue that the Pensions Discovery Motions should be denied solely on the basis of an alleged failure to adequately meet and confer. In reliance on this representation, Ambac's reply does not address the Opposition Brief's argument to that effect. Such silence should not be construed as agreement with the argument, which Ambac disputes.

confer over the course of the week in order to determine whether the parties can reach further agreement regarding the scope of the requests.

2. Despite this recent progress, Ambac maintains that the Commonwealth and Oversight Board have not produced the information Ambac needs to properly assess the Commonwealth's pension liabilities. Therefore, Ambac continues to seek (i) an order from the Court compelling Respondents to produce relevant pensions-related discovery, consistent with the Court's prior orders (*see* Dkt. No. 7505); and (ii) authorization to conduct an examination into the Commonwealth's pension obligations under Rule 2004 (*see* Dkt. No. 7507).

3. The Pensions Discovery Motions clearly establish Ambac's entitlement to this discovery. While Respondents argue that the Pensions Discovery Motions should be denied because Respondents have already provided or have agreed to provide Ambac with the materials it seeks, a review of the materials shows this not to be the case. As discussed further below, *see infra* Point I, the materials produced by Respondents to date do not satisfy the request that is the subject of Ambac's Motion to Compel. Nor have the productions satisfied the requests made in Ambac's Rule 2004 Motion. *See id.*

4. Respondents further argue that Ambac has not shown good cause for Rule 2004 discovery. As discussed in detail in the Pensions Discovery Motions and below, however, the pensions information that Ambac seeks is critical to the administration of the debtor's estate. This Court has acknowledged the importance of information regarding the liabilities and financial condition of the Commonwealth, stating nearly a year-and-a-half ago that information needed to understand "the past, present and future financial condition of the Commonwealth" would "form the basis for any plan of adjustment," which constituted "an appropriate purpose for discovery under Rule 2004." (*See* Dkt. No. 2590 at 8-10.) The Court further stated that materials underlying

2

the fiscal plan were important so that the movants could "assess the financial condition of the debtor and participate in a plan confirmation process. Fiscal projections of the debtor are relevant no matter how one interprets the plan confirmation standard." *Id.* at 10.

5. In support of its argument that Ambac has not established good cause, Respondents claim that Ambac's purpose in filing the Pensions Discovery Motions is to "investigat[e] the investigation." (Opp. Br. 1.) To the extent Respondents mean that Ambac wishes to understand how the Commonwealth and Oversight Board have arrived at the conclusion that $55 billion is an accurate measure of the Commonwealth's pension obligations, Respondents are correct. Nor is there anything untoward in Ambac's desire to understand this massive number; indeed, this is precisely what Rule 2004 provides for. Fed. R. Bankr. P. 2004(b) (allowing examination of the "the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate").

6. The facts and circumstances surrounding these Title III proceedings further establish that Ambac needs this information now. First, the Oversight Board has announced that it is on the verge of filing a plan of adjustment for the Commonwealth. On June 16, 2019, the Oversight Board announced that it had reached an agreement with a small group of GO and PBA bondholders on the framework for a plan of adjustment to address $35 billion of funded bond debt and unsecured claims against the Commonwealth. In a summary of the Plan Support Agreement ("PSA") filed that day, the Oversight Board noted that $55 billion of pension liabilities are also expected to be adjusted through the Commonwealth's plan of adjustment. *See Commonwealth of Puerto Rico Title III Case: Plan Support Agreement*, June 16, 2019. Second, recent events involving the Commonwealth, including the arrests and indictments of former administration officials and consultants in an ongoing federal investigation into corruption on the island, further

underscore creditors' need for this information in order to allow the parties to determine the true extent of the Commonwealth's pension obligations. *See* Press Release, U.S. DEP'T OF JUSTICE, *Former Secretary of Puerto Rico Department of Education and Former Executive Director of Puerto Rico Health Insurance Administration Indicted with Four Others for Conspiracy, Wire Fraud, Theft of Government Funds, and Money Laundering* (July 10, 2019).

7. Thus, Ambac has clearly demonstrated good cause to be granted the relief sought in the Pensions Discovery Motions. As the Title III proceedings speed toward confirmation and pension settlements are announced, creditors must have fulsome information concerning the financial condition of the Commonwealth, and specifically with regard to its pension obligations. Without this information, Ambac—and creditors more generally—cannot participate meaningfully in the restructuring process, and these Title III cases cannot achieve successful plans of adjustment. Thus, the Pensions Discovery Motions should be granted.

**ARGUMENT**

**I. Respondents Have Not Provided Ambac With Sufficient Information Regarding the Commonwealth's Pensions Obligations.**

8. Although Respondents have produced some pensions-related materials to date, and have agreed to produce some additional information to Ambac in the future, this information is not sufficient to satisfy the requirements of Rule 2004.

9. The Opposition Brief provides a list of materials that Respondents maintain satisfy their Rule 2004 obligations. (Opp. Br. 2-3.) These materials are insufficient. As a preliminary matter, many of the materials that Respondents list in their Opposition Brief do not pertain to the Commonwealth's pension liabilities at all. For instance, Respondents note that AAFAF routinely publishes detail reporting regarding weekly cash flow updates, monthly summaries of account balances for the Commonwealth and its instrumentalities, liquidity reports, and other monthly

4

reporting. However, the fact that AAFAF publishes certain reporting information regarding the Commonwealth's financial condition, as it is required to do under law,[3] does not satisfy its obligations under Rule 2004.

10. As for Respondents' list of produced materials that do pertain to pensions, these materials similarly do not satisfy Respondents' obligations under Rule 2004. This list includes, among other things: (i) the financial models underlying the Commonwealth Fiscal Plans (up to and including the October 2018 Fiscal Plan), (ii) pension models underlying the pension projections, which are used in the Fiscal Plan financial models; (iii) Milliman actuarial analyses; (iv) census data for years 2015 and 2016; and (v) certain policies and procedures relating to pensions. (Opp. Br. 2-3.) For the reasons set forth below, these materials do not satisfy either of the Pensions Discovery Motions.

    a. <u>The Materials Produced by Respondents Do Not Satisfy the Request That Is the Subject of Ambac's Motion to Compel.</u>

11. With respect of the Motion to Compel, Respondents maintain that production of the information described in its Opposition Brief satisfies Ambac's Request No. 4.[4] Ambac disagrees. As noted in its correspondence with AAFAF, Ambac appreciated AAFAF's cooperation with Ambac in producing these materials, and was hopeful that the parties could continue to work cooperatively. *See* Letter from G. Mainland to E. McKeen and M. Pocha, dated

---

[3] *See, e.g.*, 11 U.S.C. § 2146 (PROMESA § 206(a)) (providing that in order for the Oversight Board to issue a restructuring certification (a prerequisite to Title III eligibility), an entity must have "made public draft financial statements and other information sufficient for any interested person to make an informed decision with respect to a possible restructuring"); *id.* at § 2161 (PROMESA § 301(a)) (incorporating the disclosure requirements of 11 U.S.C. § 1125 to a Title III plan of adjustment); *id.* at § 2231 (PROMESA § 601(f)) (requiring delivery of certain information, including "a description of the Issuer's economic and financial circumstances" to creditors prior to soliciting votes on a bond modification under Title VI of PROMESA).

[4] Ambac's Motion to Compel requests an order compelling the production of certain documents and information underlying the Commonwealth's fiscal plan, including "[a]ll models, documents, and actuarial reports supporting the calculation of the pension benefit and administrative cost projections in the October 2018 Fiscal Plan." ("<u>Request No. 4</u>"). *See* Motion to Compel ¶¶ 7, 16.

5

November 8, 2018 (Dkt. No. 7507-1 at 12-23). However, Ambac has repeatedly stated that it believes that its requests seek information beyond what has been produced thus far, and has specifically requested the underlying information used by Milliman as the basis for the figures provided in Respondents' document productions.[5] But Ambac's entreaties for this additional information have been largely met with silence or rejection, which has forced Ambac to seek relief from this Court.

12. In their first response to Ambac since January 2019, Respondents claim that they understood Ambac's requests to simply refer to "the ERS census data that underlie the Milliman reports," and maintain that they have produced all relevant information. (Opp. Br. 7.) As a preliminary matter, Ambac maintains that the census data information produced to date is insufficient. Although Respondents have produced ERS and JRS census data for 2015 and 2016 (and have agreed to do so for 2017), the Commonwealth's pension liability is comprised of more than just ERS and JRS—it also includes liabilities for TRS, for which Respondents have not yet produced any census information.

13. Similarly, Respondents have not produced the most current versions of the financial models underlying the Commonwealth Fiscal Plans. The current operative fiscal plan is dated May 9, 2019, yet the information provided pertains to the fiscal plan dated October 2018. As Respondents have been able to locate and produce information for previous fiscal plans, so too should they be required to produce information for the operative version of the plan. Without this

---

[5] *See, e.g.*, Letter from Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Ad Hoc Group of General Obligation Bondholders (the "Rule 2004 Movants") to M. Dale and E. McKeen, dated November 21, 2018 (Dkt. No. 7505-1 at 4); Letter from Rule 2004 Movants to M. Dale and E. McKeen, dated January 14, 2019 (Dkt. No. 7505-1 at 10); see also Letter from G. Mainland to E. McKeen and M. Pocha, dated November 8, 2018 (Dkt. No. 7507-1 at 13).

6

information, Ambac and other creditors are not able to review and analyze the ways in which the Oversight Board's assessment of the Commonwealth's financial condition has changed.

14. In addition, Ambac's Request No. 4 extends to Milliman's assumptions and working papers used in creating its actuarial reports. This information is critical to Ambac's assessment of the true amount of the Commonwealth's pension liability.

15. In their Opposition Brief, Respondents represent that they have produced all the materials that were provided to Milliman. But the Milliman reports produced by Respondents contain only hard-coded numbers that make it impossible to test Milliman's actuarial analysis. In the reports, Milliman states that it relied on census data and other written and oral information provided by the parties in reaching its conclusions, but also expressly disclaims any assessment of the integrity of the data relied on in the reports, stating that to the extent the data are inaccurate or incomplete, so too may the results of the valuation be inaccurate or incomplete. This type of circular justification, where the Commonwealth points to Milliman as the source of its analysis and Milliman points to the Commonwealth, underscores the need for independent verification of the valuations.

16. Contrary to Respondents' barebones assertion that "an outside actuary can evaluate Milliman's work" by applying the information disclosed in the Milliman reports to the census data (Opp. Br. 8), in fact the issues described above make it impossible to understand the underlying assumptions and drivers without additional information about Milliman's analysis. And while Respondents claim that they "have nothing further to produce with respect to this request" (*id.*), Ambac's Rule 2004 motion provides authorization for Ambac to issue subpoenas directing the production of documents and the examination of third parties who may have knowledge of the

matters described therein. This includes Milliman, a third party that provided actuarial analyses to the Commonwealth that were used as the basis for its purported pension obligations.

      b. <u>The Materials Produced by Respondents Do Not Satisfy the Requests Contained Within Ambac's Rule 2004 Motion.</u>

17. With respect of the Rule 2004 Motion, Respondents concede that they have not produced information responsive to many of Ambac's requests. While Respondents maintain that information they have produced is relevant to some requests (*e.g.* Requests 1, 8, 9, 10, 11, 12, 13), they fail to indicate any documents that are responsive to the other requests.[6] (*See* Opp. Br. 9-10.)

18. Among other information requested in its Rule 2004 Motion, Respondents have not produced information sufficient to satisfy the following requests:

    a. <u>Request No. 21</u>: All documents, communications, studies, data, and/or analyses prepared for or relied upon in connection with the actuarial analysis of pension funding requirements referenced on page 181 of the New Fiscal Plan.[7]

    b. <u>Request No. 23</u>: All documents, communications, studies, data, and/or analyses concerning the announcement made by Governor Ricardo Rosselló regarding a joint resolution to use $1.4 billion from the Commonwealth's single treasury account to restore past contributions made by public servants to individual retirement accounts under the System 2000 program.

    c. <u>Request No. 27</u>: All ProVal library files (in provaldd.sf, pvvip.sf, pvasmp.sf, and/or pvout.sf format) used in developing the last three sets of aggregate liability and benefit payment projections for each component of the Pension Systems.

    d. <u>Request No. 29</u>: All documents shared with or received from the Puerto Rico Teachers Association in connection with its attempted agreement with the Oversight Board, announced on or about June 3, 2019, regarding the

---

[6] Even if some of the documents cited by Respondents are relevant to certain of Ambac's requests, Respondents have not produced sufficient information. Partial responses do not satisfy Respondents' obligations under Rule 2004.

[7] The "New Fiscal Plan" is defined in the Rule 2004 Motion as the New Fiscal Plan for Puerto Rico, dated April 5, 2018.

8

  treatment of pensions in a future Commonwealth plan of adjustment, including, but not limited to, the use of cash contemplated by such agreement and/or whether any such cash will be placed in trust.

  e. <u>Request No. 30</u>: All documents shared with or received from the Puerto Rico United Public Servants Union in connection with its agreement with the Oversight Board, announced on or about June 10, 2019, regarding the treatment of pensions in a future Commonwealth plan of adjustment, including, but not limited to, the use of cash contemplated by such agreement and/or whether any such cash will be placed in trust.

  f. <u>Request No. 31</u>: All documents shared with or received from the Official Committee of Retired Employees of the Government of Puerto Rico in connection with its agreement with the Oversight Board, announced on or about June 12, 2019, regarding the treatment of pensions in a future Commonwealth plan of adjustment, including, but not limited to, the use of cash contemplated by such agreement and/or whether any such cash will be placed in trust.

  19. These requests are narrowly tailored and designed to discover information that is critical to understanding the Commonwealth's pension liabilities. For instance, Request No. 21 seeks information regarding the analysis of pension funding requirements, which is a critical component of the fiscal plan, which is in turn the basis for the proposed plan of adjustment. The information sought in Request No. 23 relating to the proposal to appropriate $1.4 billion from the Commonwealth's treasury account to restore past contributions to retirement accounts directly relates to the financial condition of the Commonwealth. And the information sought in Request No. 27 would enable third parties to replicate the actuarial model and outputs allegedly used by the Commonwealth and its advisors in reaching their assessment of the Commonwealth's pension liabilities. Finally, Request Nos. 29, 30, and 31 target documents relating to recent negotiations between the Oversight Board and certain pensioner groups. Ambac believes it is necessary to understand the basis for these deals and for the Commonwealth's calculation of its pension liabilities therein, and therefore seeks documents shared with these groups regarding the treatment of pensions in a future Commonwealth plan of adjustment.

9

## II. Ambac Has Shown Good Cause for Why It Requires Additional Pensions-Related Information.

20. As discussed above, *supra* Point I, Respondents do not argue that they have produced information sufficient to respond to the requests contained in Ambac's Rule 2004 Motion. Rather, Respondents rationalize that the Court should not grant the Rule 2004 Motion because they have produced *some* relevant information to Ambac, and therefore, Ambac has not shown good cause for why it requires the additional information.[8] (*See* Opp. Br. at 10.) This is not the law—the fact that Respondents have produced some information over the course of a two-year period does not excuse them from their obligation to produce additional relevant information to creditors. *See, e.g.*, *In re Devani*, 556 B.R. 37, 44 (Bankr. E.D.N.Y. 2016) (concluding that debtor's production of some documents regarding his income without supporting documentation was insufficient to meet debtor's disclosure obligations under Rule 2004).

21. Without these materials, Ambac cannot participate meaningfully in the process of advancing these Title III cases towards successful plans of adjustment. Thus, it is critical that Ambac and other creditors receive the pensions-related information that they request through the Pensions Discovery Motions.

22. Respondents do not appear to dispute the relevance of this information to any proposed plan of adjustment. And given recent events, including the impending filing of a plan of adjustment for the Commonwealth and the arrests and indictments related to corruption on the island, Ambac's need for this information is more critical than ever. The Court should grant the

---

[8] Respondents represent that they have produced "hundreds of documents in response to the Renewed Joint Rule 2004 Motion," and "scores" of documents in response to Ambac's pension-related requests. Respondents cite the number as including "over 700 documents comprising over 97,000 pages." (Opp. Br. 9.) In the context of a bankruptcy case as complex and far-reaching as this one, and an aggregate pension liability allegedly totaling $55 billion, the production of 700 documents is underwhelming at best. Further, Ambac believes that many of these documents are weekly cash flow updates and liquidity reports that are not helpful to the analysis of the Commonwealth's pension obligations.

10

Pensions Discovery Motions in order to allow for an assessment into whether and to what extent any wrongdoing has occurred and to ensure that creditor rights are being preserved in any plan of adjustment. *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (Rule 2004 is designed to allow creditors to obtain discovery into any matter regarding the "nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred"); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'").

23. Ambac has also clearly established good cause for the information sought in its Motion to Compel. Ambac and other creditors must have the ability to review the data and information considered and relied upon by Milliman—without it, these parties are unable to test the accuracy or assess the reasonableness of the Commonwealth's estimated pension liabilities, preventing them from conducting diligence on the underlying model, assumptions, and calculations used to produce the projections used in the Commonwealth's fiscal plan, which is in turn the basis for the proposed plan of adjustment. *See In re Devani*, 556 B.R. at 44 (noting that the debtor had the ability and obligation to obtain documents that he did not have in his possession in satisfying his Rule 2004 obligations).

24. This Court has acknowledged creditors' need for this essential information. To date, the Court has issued two orders concerning the Movants' requests for pensions-related materials, and both have instructed the Respondents to produce non-privileged documents responsive to Movants' requests. (Dkt. Nos. 2033 and 2590.) Request No. 4 falls squarely within

11

these orders. However, as described more fully in Ambac's opening brief and above, Ambac's requests with regard to Request No. 4 have largely been ignored.

## CONCLUSION

For the foregoing reasons, Ambac respectfully requests that this Court grant the Pensions Discovery Motions (Dkt. Nos. 7505, 7507), and grant such other and further relief as the Court deems just and proper.

Dated: July 23, 2019
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile:  (787) 766-7001
    Email:  rcamara@ferraiuoli.com
          scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne
    Andrew M. Leblanc
    Atara Miller
    Grant R. Mainland
    (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
          aleblanc@milbank.com
          amiller@milbank.com
          gmainland@milbank.com

***Attorneys for Ambac Assurance Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)