**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------------- X
                                               :

In re:                                       :

THE FINANCIAL OVERSIGHT AND      :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,    :    Title III
                                               :
     as representative of                   :    Case No. 17-BK-3283 (LTS)
                                               :
THE COMMONWEALTH OF PUERTO RICO *et al.*,    :    (Jointly Administered)
                                               :
      Debtors.[1]                                :
---------------------------------------------------------------------- X
                                               :

In re:                                        :

THE FINANCIAL OVERSIGHT AND      :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,    :    Title III
                                               :
     as representative of                   :    Case No. 17-BK-4780 (LTS)
                                               :
PUERTO RICO ELECTRIC POWER AUTHORITY    :    **This filing relates only to**
                                               :    **Case No. 17-BK-4780 (LTS)**
                                               :
      Debtor.                                  :
---------------------------------------------------------------------- X

**OPPOSITION TO MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR (1) A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26 FROM
SUBPOENA AND DEPOSITION NOTICE ISSUED TO ANDREW WOLFE BY
OFFICIAL COMMITTEE OF UNSECURED CREDITORS; AND (2) AN ORDER *IN
LIMINE* PRECLUDING OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FROM ENTERING IN EVIDENCE AT THE 9019 MOTION HEARING JULY 2017
<u>DECLARATION OF ANDREW WOLFE</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................................ 1
ARGUMENT ....................................................................................................................................... 5
I. WOLFE DECLARATION IS RELEVANT TO 9019 MOTION .................................... 5
    A.    Wolfe Declaration is Relevant to Determining Whether Settlement Forecloses Recovery for Other Creditors and Predetermines Plan Treatment ............................................................................................................. 5
    B.    Wolfe Declaration is Relevant to Assessing the Facts Proffered in Government Parties' Supplemental Declarations ..................................................... 7
    C.    Wolfe Declaration is Relevant to Assessing Government Parties' Likelihood of Success on Receiver Motion ............................................................ 9
II. ADMISSION OF THE WOLFE DECLARATION WOULD NOT BE PREJUDICIAL, NOR WOULD IT WASTE COURT'S OR PARTIES' TIME .............. 9
III. EXCLUSION OF WOLFE'S TESTIMONY WOULD BE PREMATURE ................... 11
CONCLUSION ................................................................................................................................. 11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bielunas v. F/V Misty Dawn, Inc.*,
   621 F.3d 72 (1st Cir. 2010) ................................................................................................5

*In Re Iridium Operating LLC*,
   478 F.3d 452 (2d Cir. 2007) ................................................................................................6

*In Re Nutraquest, Inc.*,
   434 F.3d 639 (3d Cir. 2006) ................................................................................................6

*Ritch v. AM Gen. Corp.*,
   No. 93-451-SD, 1997 WL 834214 (D.N.H. Nov. 17, 1997) ..............................................11

*Sec'y of Labor v. DeSisto*,
   929 F.2d 789 (1st Cir. 1991) ..............................................................................................10

*Smith & Nephew, Inc. v. Interlace Med. Inc.*,
   No. 10-10951-RWZ, 2012 WL 3560811 (D. Mass. Aug. 17, 2012) .................................11

*United States v. AWECO, Inc.*,
   725 F.2d 293 (5th Cir. 1984) ...............................................................................................6

*United States v. McMahon*,
   938 F.2d 1501 (1st Cir. 1991) ............................................................................................10

**Other Authorities**

Fed. R. Evid.
   R. 401 ................................................................................................................................5, 9
   R. 403 .................................................................................................................................10

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of all Title III Debtors (the "Committee") respectfully submits this opposition to the July 16, 2019 *Motion of the Financial Oversight and Management Board for (1) a Protective Order Pursuant to Fed. R. Civ. P. 26 From the Subpoena and Deposition Notice Issued to Andrew Wolfe by the Official Committee of Unsecured Creditors; and (2) an Order in Limine Precluding the Official Committee of Unsecured Creditors From Entering in Evidence at the 9019 Motion Hearing the July 2017 Declaration of Andrew Wolfe* [Dkt. 1464] (the "Motion in Limine").

## INTRODUCTION

1. The declaration of Andrew Wolfe (the "Wolfe Declaration"[1]) and the related testimony he may offer in a deposition are directly relevant to this dispute. They are relevant not because of "macroeconomic" issues, but rather because they relate to the effect that the proposed settlement may have on PREPA and its creditors and to the evaluation of the Government Parties'[2] assertions that the proposed Transition Charge will not increase electricity rates beyond customers' ability to pay.

2. In the Wolfe Declaration, which the Oversight Board submitted in support of its opposition to the Receiver Motion,[3] Wolfe offered his opinion on the effect that a "forced increase in the electric power rates" "may have on the prospect of success for ending the

---

[1] A copy of the Wolfe Declaration [originally Dkt. 149-2] is attached as Exhibit A.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion in Limine.

[3] The term "Receiver Motion" refers to the July 18, 2017 *Motion of Ad Hoc Group of PPREPA Bondholders, National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief from the Automatic Stay to Allow Movants to Enforce Their Statutory Right to Have a Receiver Appointed* [Dkt. 74] (the "Original Receiver Motion"), which was subsequently renewed by the October 3, 2018 *Motion of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief from the Automatic Stay to Allow Movants to Enforce Their Statutory Right to Have a Receiver Appointed* [Dkt. 975] (the "Renewed Receiver Motion").

Commonwealth's negative economic growth and achieving sufficient positive growth to achieve fiscal and debt sustainability and capital market access." Wolfe Decl. ¶ 2. He concluded that:

> (*i*) adopting a rate above $0.214 per kWh or (*ii*) increasing the rate (even if not above $0.214 per kWh) at a pace that is disproportionate to rate increases adopted by other Caribbean countries and the U.S. mainland region *would eventually contribute to a downward economic spiral that would result in Puerto Rico returning to a path of declining economic activity, which would in turn adversely impact the demand for electricity and in the end lead to another debt service payments crisis for PREPA*.

*Id*. ¶ 12 (emphasis added). In other words, Wolfe testified, under oath, that raising electricity rates above a certain level—specifically, $0.214 per kWh—or at too fast a pace would be devastating to the future of PREPA. The 9019 Motion now seeks exactly that relief: *a forced increase in electricity rates by an average of approximately $0.0399 per kWh[4], to a total rate well above $0.214 per kWh*. Thus, although the Committee is still evaluating the impact of Wolfe's testimony on the 9019 Motion and the feasibility of an eventual plan of adjustment for PREPA, the Wolfe Declaration on its face raises a concern as to whether the RSA's proposed Transition Charge is already unsustainable or cannot be increased further to provide a recovery for PREPA's other creditors. If the Oversight Board previously took the position that an increase above $0.214 per kWh was too much, it would stand to reason that the Oversight Board may subsequently take the position, after implementation of the even higher rates contemplated by the RSA, that nothing remains for other creditors. This evidence is plainly relevant to the Court's evaluation of the 9019 Motion.

3. The Oversight Board nevertheless takes the position in its Motion in Limine that the Wolfe Declaration has no probative value at all with respect to the 9019 Motion, both because the Court entered orders limiting the introduction of certain evidence on broad

---

[4] Dkt. 1486-2 at 2.

macroeconomic issues at the July 11, 2019 status conference (the "July 11 Conference") and because the Wolfe Declaration was prepared in 2017—before Hurricane Maria and the influx of federal funding that followed. These arguments miss the mark.

4. At the July 11 Conference, the Court made clear that the Committee is able to introduce any evidence at the hearing on the 9019 Motion that is relevant to the "range of reasonableness" inquiry, including evidence that may (i) help determine whether the settlement is inconsistent with the "paramount interests of [PREPA's] creditors," (ii) test the assertions in the Oversight Board's supplemental declarations in support of the 9019 Motion, and (iii) help assess the risks attendant to the litigation being settled. *See* July 11 Tr. at 8, 31-32. The Wolfe Declaration and Wolfe's potential related deposition testimony are directly relevant to each of these issues.

5. First, if Wolfe is correct that the Puerto Rico economy can withstand only a certain level of rate increases, then the Committee is entitled to explore whether this means that no value remains in PREPA to provide a recovery to other creditors after the implementation of the proposed Transition Charge. If so, approval of the RSA would not satisfy the "paramount interests of creditors" prong of the "range of reasonableness" inquiry. At a minimum, the Court should not allow the Oversight Board to take the position that the principles set forth in Wolfe's testimony are irrelevant to the 9019 Motion and then use those same principles later to argue at confirmation that no value remains in PREPA for unsecured creditors.

6. Second, the Committee is entitled to explore whether the Wolfe Declaration is inconsistent with various assertions by the Government Parties in their supplemental declarations, including David Brownstein's assertion that the first "key economic goal" of the RSA was to ensure that "any agreed repayment of legacy debt could not outpace revitalization of

3

the island's overall economy, and in particular the ability of PREPA's customers to pay any increased rates or additional charges required to service restructured PREPA debt."[5] Wolfe's declaration addresses these very issues, and thus his testimony is squarely relevant to assessing the veracity of Brownstein's assertions.

7. Third, one of the justifications that the Oversight Board offers for the 9019 Motion is that it will resolve the Receiver Motion, thus eliminating the Oversight Board's risk of potentially losing that motion. In determining how much value to ascribe to this purported benefit of the settlement, the strengths and weaknesses of the Oversight Board's opposition to the Receiver Motion—including the arguments in the Wolfe Declaration—must be considered. It cannot simultaneously be true that the Wolfe Declaration is relevant to the Receiver Motion but irrelevant to the Court's consideration of a settlement resolving that motion.

8. The Oversight Board argues that, regardless of the relevance of the Wolfe Declaration at the time it was prepared in 2017, it is no longer relevant today given the influx of federal funding the island received in the aftermath of Hurricane Maria. Neither the Committee nor the Court can simply take the Oversight Board's word for it, however. The Committee is entitled to explore the Oversight Board's assertion through discovery. Moreover, even if the Oversight Board is correct that circumstances have materially changed since 2017, the fundamental premise of the Wolfe Declaration remains the same: according to Wolfe, at some point, if electricity rates either rise beyond a certain level or rise too quickly, PREPA and the larger Puerto Rico economy will descend into a crippling downward spiral. This premise, if true, is undeniably relevant to the 9019 Motion for the reasons stated above.

---

[5]  *Declaration of David Brownstein in Support of Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement* [Dkt. 1426] ("Brownstein Declaration") ¶ 25.

4

9. Finally, in ruling on the Motion in Limine, it is important to keep in mind that all that is currently at stake is one single deposition.[6] The threatened burden on the Government Parties is minimal, particularly when viewed in light of the magnitude of the billions of dollars that are at issue in the 9019 Motion. The Motion in Limine should be denied, and the Committee should be permitted to take Wolfe's deposition.

## ARGUMENT

### I. Wolfe Declaration is Relevant to 9019 Motion

10. The crux of the Motion in Limine is the claim that the Wolfe Declaration is irrelevant to the 9019 Motion. As an initial matter, a "relevancy-based argument is usually a tough sell" in the First Circuit. *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010). "[R]elevant evidence is 'evidence having *any* tendency to make the existence of any fact that is of consequence' more or less probable." *Id.* (emphasis in original); *see also* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Thus, "evidence need not definitively resolve a key issue in the case" to be relevant, so long as it "move[s] the inquiry forward to some degree." *Bielunas*, 621 F.3d at 76.

#### A. Wolfe Declaration is Relevant to Determining Whether Settlement Forecloses Recovery for Other Creditors and Predetermines Plan Treatment

11. At the July 11 Conference, the Court acknowledged that issues such as whether the RSA effectively gives the settling bondholders a veto right over distributions to other unsecured creditors or otherwise prejudices their rights are relevant to the 9019 Motion if tied to the "range of reasonableness" inquiry:

---

[6] Further, the Committee has offered to withdraw this deposition if the Government Parties will consent to the admissibility of the Wolfe Declaration, reserving their objections as to its relevance, but the Government Parties have refused.

5

> THE COURT: Well, that is one reason that I spoke in terms of the core relevant issues including contentions that what I [am] asked to approve now affects or forecloses legal rights that a nonsettling party contends it would otherwise be able to pursue. And in relation to the extent to which potential confirmability is argued to go to whether the proposed features being approved now are within the range of reasonableness, I [am] not precluding that argument, but at the same time I hope I made myself very clear that I do not expect to entertain or have an attempt to set up before me a full Monty confirmation hearing. You need to find an efficient way to identify your core points, tie them to the range of reasonableness and find an efficient way to present them.[7]

12. This statement is consistent with the decisions of circuit courts holding that a bankruptcy court considering a settlement must, among other things, (i) ensure that that the settlement is "fair and equitable" by "look[ing] to the fairness of the settlement to other persons, i.e., the parties who did not settle," *In Re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006), and (ii) consider the "paramount interests of the creditors" by examining "each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement." *In Re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (internal quotations omitted); *United States v. AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984) (respect afforded by settlement to relative priority of affected creditors is paramount).

13. Here, the extent to which other, non-settling creditors are affected by the RSA cannot be determined without knowing whether PREPA has the capacity to raise rates beyond the Transition Charge to provide a recovery for other, non-bondholder creditors, or at the very least whether the Oversight Board will attempt to foreclose a recovery by other creditors on that basis. Wolfe's testimony is directly relevant to this issue insofar as he has taken the position that, if rates increase above $0.214 per kWh—an amount that is less than the total rate following implementation of the Transition Charge under the RSA[8]—Puerto Rico's economy will enter

---

[7] July 11 Tr. at 31-32.

[8] The current PREPA fiscal plan contemplates rates, inclusive of the RSA charges, in excess of $0.25/kWh by 2022, more than 15% over the $0.214/kWh threshold identified by Dr. Wolfe, and projects increasing rates thereafter.

6

into a downward spiral. In other words, Wolfe's view, based on his 2017 declaration, seems to be that no room for an increase in rates exists under the RSA, meaning that the bondholders will receive all of PREPA's value. While the Committee does not necessarily agree with Wolfe's position, it is entitled to explore whether the Oversight Board believes any value remains for other creditors. In addition, to the extent Wolfe's position has changed since 2017, the Committee is entitled to explore that changed position in a deposition.

### B. Wolfe Declaration is Relevant to Assessing the Facts Proffered in Government Parties' Supplemental Declarations

14. The Court also acknowledged at the July 11 Conference that all facts and arguments proffered by the Government Parties in support of the 9019 Motion, including in their declarations, are open to discovery in connection with the 9019 Motion:

> MR. DESPINS: So, when Mr. Brownstein is saying this is an amazing deal for rate payers, you might say normally, Mr. Despins, I don't want you to address that issue. But he's saying that's the key selling point. Mr. Bienenstock actually said that's number one on their list. I need to be able to engage on those issues that they're relying on, your Honor. That's really the main point we want to make.
>
> THE COURT: It's their burden, and if you have grounds for attacking their proffer in support of their burden, of course you can explore that. I have to consider that.[9]

15. Therefore, when the Government Parties submitted the declaration of David Brownstein of Citigroup Global Markets Inc. in support of the 9019 Motion, they opened the door for discovery to test his various assertions. Critically, in his declaration, Mr. Brownstein describes the following as the "First" among the "Key Economic Goals of the RSA":

> Any recovery by PREPA's creditors had to be secondary to the Commonwealth's *overall economic recovery*, for which the recovery of PREPA plays an important role. That meant that any *agreed repayment of legacy debt could not outpace revitalization of the island's overall economy, and in particular the ability of PREPA's customers to pay any increased rates* or additional charges required to service restructured PREPA debt.

---

[9] July 11 Tr. at 32.

7

Brownstein Declaration ¶ 25 (emphasis added). The Brownstein Declaration also asserts that "[t]he ultimate agreement PREPA reached with in the Supporting Holders satisfied each of [the Government Parties'] key objectives." *Id.* ¶ 30.

16. The Government Parties cannot simultaneously ask this Court to accept that the RSA satisfies the Commonwealth's key economic goals, as Brownstein contends, while simultaneously insisting that all related evidence be excluded. When the Government Parties assert that the RSA is economically justified for the Commonwealth as part of their contention that the settlement embodied in the 9019 Motion falls within the range of reasonableness, their contentions cannot simply be taken at face value, but must be tested. This will not transform the 9019 Motion hearing into an open-ended referendum on PREPA's economic future—rather, it will simply allow for fair litigation of the Government Parties' proffered contentions in support of the motion, and of their claim that the RSA falls within the range of reasonableness.

17. The Wolfe Declaration is directly relevant to the Court's assessment of the feasibility of the proposed settlement and therefore whether it falls within the range of reasonableness. If the long-term consequence of the RSA is likely to be PREPA's collapse, or if the short-term consequence is likely to be such that a contemplated plan of adjustment can never be confirmed (and the settlement will therefore simply consist of an almost billion dollar giveaway to the holders of non-recourse PREPA debt with no commensurate benefit to PREPA), the Court should be aware of this when considering the 9019 Motion.

18. It may be, given the events of the past two years, that the upper limit of the electric rates that the Commonwealth of Puerto Rico can absorb has changed. It may even be that this upper limit has improved, as the Government Parties suggest (without explicitly so saying) in their Motion in Limine. If so, this should be a matter for exploration in a deposition or

8

development through expert testimony, not cursory legal argument in a motion in limine before such discovery has even occurred.

### C. Wolfe Declaration is Relevant to Assessing Government Parties' Likelihood of Success on Receiver Motion

19. In analyzing a proposed settlement, the Court must, of course, consider the risk associated with any litigation that the settlement purports to resolve. Here, the 9019 Motion seeks to resolve, among other litigation, the Receiver Motion. The Court must understand the parties' arguments in the Receiver Motion to assess the value to the Government Parties of resolving it consensually. One argument the Oversight Board has asserted in opposition to the Receiver Motion is the position set forth in the Wolfe Declaration that the Court should not appoint a receiver because doing so could lead to a steady increase in electricity rates, which would eventually cripple Puerto Rico's economy. It is therefore necessarily relevant for the Court to consider the Wolfe Declaration when evaluating the 9019 Motion.[10]

20. In short, because the Wolfe Declaration is directly relevant to the 9019 Motion, there is no basis on which it should be excluded, and the Motion in Limine should be denied.[11]

## II. Admission of the Wolfe Declaration Would Not Be Prejudicial, Nor Would It Waste Court's or Parties' Time

21. As set forth above, the Wolfe Declaration is relevant to the 9019 Motion, and therefore there is no basis on which to exclude it under Federal Rule of Evidence 401. In the alternative, the Oversight Board argues that "even if the Court were not otherwise inclined to

---

[10] The fact that the Wolfe Declaration was filed in connection with the Original Receiver Motion, as opposed to the Renewed Receiver Motion is of no consequence. Both filings seek the appointment of a receiver, which would have the authority ultimately to pursue rate increases for the benefit of bondholders. Thus, the same arguments that the Oversight Board deemed relevant to the original filing concerning the impact of such rate increases are also relevant to the renewed filing, subject to any modifications to those arguments occasioned by the passage of time or other changed factual circumstances.

[11] The Committee has no objection to the Oversight Board's request to submit a supplemental declaration from Wolfe, but if Wolfe submits such a declaration he should be required to sit for a deposition, and the declaration should be provided in advance of his deposition. Moreover, if the Oversight Board seeks to qualify Wolfe as an expert, then the Committee requests the opportunity to submit a rebuttal expert report.

9

exclude" the Wolfe Declaration, it should be excluded as prejudicial and as a waste of the Court's and the Parties' time. This request is equally baseless.

22. The Oversight Board relies upon Federal Rule of Evidence 403, "a liberal rule under which relevant evidence generally is admitted." *United States v. McMahon*, 938 F.2d 1501, 1508 (1st Cir. 1991). Although Rule 403 "enables a trial judge to exclude needlessly cumulative evidence" (*Sec'y of Labor v. DeSisto*, 929 F.2d 789, 794-95 (1st Cir. 1991)), it "does not mean that a court may exclude evidence that will cause delay regardless of its probative value. If the evidence is crucial, the judge would abuse his discretion in excluding it." *Id*. at 795. Here, the Wolfe Declaration is not cumulative at all—to the contrary, it is the sole record of the arguments relating to Puerto Rico's capacity to absorb electricity rate increases that the Oversight Board previously made in filings with this Court, before it reversed course through the 9019 Motion.

23. When evidence, like the Wolfe Declaration, is not cumulative, Rule 403 "requires a balance of probative value against the negative consequences of using a particular piece of evidence." *De Sisto*, 929 F.2d at 795. "Only when the probative value of the evidence is substantially outweighed by unfair prejudice will it be excluded." *McMahon*, 938 F.2d at 1508. As discussed above, the Wolfe Declaration is directly probative of matters placed at issue by the Government Parties in the 9019 Motion. The hearing on the 9019 Motion will be held before this Court, not a jury, and the only purported prejudice claimed by the Oversight Board is the need to offer rebuttal testimony. But that is true of any evidence in opposition to the 9019 Motion that the Committee may offer. The mere fact that the Oversight Board may feel the need to rebut testimony is no reason to exclude such evidence.

10

24. Notwithstanding the passage of two years, the destruction wrought by the 2017 hurricanes, and the subsequent reconstruction efforts, the Committee respectfully submits that the underlying economic dynamics affecting Puerto Rico described by Wolfe in his declaration remain relevant to assessment of the 9019 Motion, or at least warrant a deposition of Wolfe to determine whether his views have changed. The Oversight Board may disagree, as is its right, but the topic should not be foreclosed at the outset.

### III. Exclusion of Wolfe's Testimony Would Be Premature

25. Finally, the Committee notes that no expert discovery has yet occurred in connection with the 9019 Motion. It would be premature to exclude the Wolfe Declaration before the parties have had the opportunity to develop expert arguments and testimony that could underscore the significance of the Wolfe Declaration. *See, e.g.*, *Smith & Nephew, Inc. v. Interlace Med. Inc.*, No. 10-10951-RWZ, 2012 WL 3560811, at *1 (D. Mass. Aug. 17, 2012) ("The relevance of this evidence is unclear and, accordingly, ruling on the motion is deferred to the trial."); *Ritch v. AM Gen. Corp.*, No. 93-451-SD, 1997 WL 834214, at *5 (D.N.H. Nov. 17, 1997) ("[T]he court finds that it cannot at this time rule on the relevance of that evidence and therefore defers such ruling until the issues are better developed at trial.").

26. All that is immediately at stake is a single deposition. The schedule governing the 9019 Motion would allow the Oversight Board plenty of time to bring a motion in limine in advance of the hearing on the 9019 Motion, after fact and expert discovery are complete, at which point the significance of all discovery, including the Wolfe Declaration, should be better established. There is no need for the Court to rule on the admissibility of this discovery now.

### CONCLUSION

27. WHEREFORE, for the reasons set forth above, the Committee respectfully requests that the Court deny the Oversight Board's Motion in Limine.

| | |
|---|---|
| Dated: July 23, 2019 | */s/ Luc A. Despins* |
| | PAUL HASTINGS LLP |
| | Luc. A. Despins, Esq. *(Pro Hac Vice)* |
| | 200 Park Avenue |
| | New York, New York 10166 |
| | Tel: (212) 318-6000 |
| | lucdespins@paulhastings.com |

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors*