Hearing Date:  July 30, 2019 at 1:00 pm (AST)
Objection Deadline:  To be determined

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------- x
                              :

*In re*                           :

                            :   PROMESA

THE FINANCIAL OVERSIGHT AND   :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,   :

                            :

      as representative of           :   Case No. 17-BK-3283 (LTS)

                            :

THE COMMONWEALTH OF PUERTO RICO, *et*   :   (Jointly Administered)
*al.,*                           :

                            :

      Debtors.[*]               :

                            :

-------------------------------------------------------------- x
                            :

*In re*                           :

                            :

THE FINANCIAL OVERSIGHT AND   :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :   Title III

                            :

      as representative of           :

                            :   Case No. 17-BK-04780-LTS

PUERTO RICO ELECTRICAL POWER   :
AUTHORITY (PREPA),           :   **Court Filing Relates Only to PREPA**

                            :

      Debtor.                 :

-------------------------------------------------------------- x

## SOLUS' OPPOSITION TO U.S. BANK'S MOTION TO QUASH AMENDED DEPOSITION NOTICE, AND MEMORANDUM IN SUPPORT OF URGENT NEW MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY U.S. BANK

---

[*]       The Debtors in these title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................................1

JURISDICTION AND VENUE ...............................................................................................7

RELEVANT BACKGROUND ................................................................................................7

ARGUMENT ...........................................................................................................................11

I.      U.S. Bank Should Be Compelled to Produce Relevant and Necessary Documents
        Relating to the Fuel Line Loans In Response to Request No. 4 ....................................11

II.     U.S. Bank's Motion to Quash Should Be Denied Because A Rule 30(b)(6)
        Deposition of U.S. Bank is Relevant and Necessary to the Fuel Line Lenders'
        Objection.........................................................................................................................16

        A.      Testimony Concerning U.S. Bank's Role in Connection with the RSA Is
                Relevant And Necessary To Fuel Line Lenders' Objection (Topic 1) ................ 17

        B.      Factual Information Concerning U.S. Bank's Lack of Control Over
                Certain Accounts Is Relevant And Necessary To The Fuel Line Lenders'
                Objection (Topic 2)............................................................................................ 19

        C.      U.S. Bank's Position, Documents, and Communications Regarding, or
                Analysis of, the Current Expense Treatment or Priority Status of the Fuel
                Line Loans Under the Trust Agreement Is Relevant And Necessary to the
                Fuel Line Lenders' Objection (Topic 3) ............................................................ 22

        D.      Preparing A Witness To Testify About The Documents U.S. Bank Has
                Produced Puts No Undue Burden on U.S. Bank (Topic 4).................................. 24

CONCLUSION.........................................................................................................................25

## **TABLE OF AUTHORITIES**

### **Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
  262 F.R.D. 293 (S.D.N.Y. 2009) ........................................................................ 18

*Autogermana, Inc. v. BMW of N. Am., Inc.*,
  38 F. Supp. 3d 230 (D.P.R. 2014) ...................................................................... 27

*Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*,
  319 F.R.D. 422 (D.P.R. 2016) ............................................................... 17, 20, 27

*B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters*,
  285 F.R.D. 185 (D.P.R. 2012) ............................................................................ 17

*Blasco-Figueroa v. Puerto Rico Aqueducts & Sewer Auth.*,
  No. CIV. 14-1395 GAG/BJM, 2015 WL 2062011 (D.P.R. May 4, 2015) ............ 17

*Cooper v. Charter Commc'ns, Inc.*,
  No. 3:12-CV-10530-MGM, 2016 WL 128099 (D. Mass. Jan. 12, 2016) ............. 23

*Donovan v. Prestamos Presto Puerto Rico, Inc.*,
  91 F.R.D. 222 (D.P.R. 1981) .............................................................................. 12

*Fidelity Management. & Research Co. v. Actuate Corp.*,
  275 F.R.D. 63 (D. Mass. 2011) .................................................................... 20, 22

*Garcia v. Benjamin Grp. Enter. Inc.*,
  800 F. Supp. 2d 399 (E.D.N.Y. 2011) ................................................................. 26

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
  89 F. Supp. 3d 211 (D. Mass. 2015) ................................................................... 18

*In re Abengoa Bioenergy Biomass of Kansas, LLC*,
  No. 16-10446, 2018 WL 812941 (Bankr. D. Kan. Feb. 8, 2018) ......................... 25

*In re Howland*,
  545 B.R. 653 (Bankr. D. Or. 2015) ..................................................................... 25

*In re Mihalko*,
  87 B.R. 357 (Bankr. E.D. Pa. 1988) .................................................................... 25

*Jenks v. New Hampshire Motor Speedway, Inc.*,
  No. 09-CV-205-JD, 2011 WL 839709 (D.N.H. Mar. 8, 2011) ............................ 22

*Johnston v. Holiday Inns, Inc.*,
  565 F.2d 790 (1st Cir. 1977) .............................................................................. 26

*Mangham v. Westin Hotel Mgmt., LP*,
    No. 1:16-CV-3725-WSD, 2017 WL 4540712 (N.D. Ga. Oct. 11, 2017) ............................. 22

*McGahey v. Fed. Nat'l Mortg. Ass'n*,
    No. 2:16-CV-00219-JDL, 2018 WL 3521175 (D. Me. July 20, 2018) .......................... 17, 26

*Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*,
    279 F.R.D. 59 (D. Mass. 2011) .......................................................................................... 22

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340, (1978) .......................................................................................................... 11

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
    322 F.R.D. 1 (D.D.C. 2017) ............................................................................................... 12

*S.E.C. v. Archer*,
    No. 16-cv-3505, 2018 WL 3424449 (S.D.N.Y. July 2, 2018) ............................................ 18

*Sec. & Exch. Comm'n v. Present*,
    No. CV 14-14692-LTS, 2016 WL 10998439 (D. Mass. May 12, 2016) .............................. 22

*United States v. Fresenius Med. Care Holdings, Inc.*,
    No. 1:10-CV-1614-AT, 2014 WL 11517841 (N.D. Ga. May 13, 2014) ............................. 14

*W Holding Co. v. Chartis Ins. Co. of Puerto Rico*,
    300 F.R.D. 46–47 (D.P.R. 2014) ....................................................................................... 23

*William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*,
    256 F.R.D. 134 (S.D.N.Y. 2009) ....................................................................................... 15

*Xerox Fin. Servs. Life Ins. Co. v. High Plains Ltd. P'ship*,
    44 F.3d 1033 (1st Cir. 1995) .............................................................................................. 27

## Statutes

19 L.P.R.A. § 2214(a) ................................................................................................................. 22

PROMESA § 306(a) ...................................................................................................................... 9

PROMESA § 307(a) ...................................................................................................................... 9

## Rules

Fed. R. Bankr. P. 7026 ................................................................................................................ 11

Fed. R. Civ. P. 26(b)(1) .............................................................................................................. 11

Rule 30(b)(6) ....................................................................................................................... passim

SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB

LLC (collectively, "Solus"), as lenders to the Puerto Rico Electric Power Authority ("PREPA")

under the Trade Finance Facility Agreement, dated as of July 20, 2012, among PREPA and

Citibank, N.A., as predecessor to the existing lenders thereunder (as amended, the "Citibank

Credit Agreement," together with the Credit Agreement, dated as of May 4, 2012, among

PREPA, Scotiabank, Cortland Capital Market Services LLC, as successor administrative agent[1]

("Cortland") and the lenders party thereto (as amended, the "Scotiabank Credit Agreement"), the

"Fuel Lines") respectfully submits this *Opposition to Motion of U.S. Bank, National Association,*

*as PREPA Bond Trustee, To Quash Amended Deposition Subpoena, And Memorandum in*

*Support of Urgent New Motion to Compel Production of Documents by U.S. Bank*, in connection

with the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to*

*Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019*

*for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling*

*Certain Limitations Periods* [Dkt. No. 1235] (the "Settlement Motion").[2]

## PRELIMINARY STATEMENT

1.      U.S. Bank, National Association ("U.S. Bank"), Trustee under the indenture dated

as of January 1, 1974 governing Power Revenue Bonds issued by PREPA (as amended, the

"Trust Agreement") for holders of approximately $8.4 billion in bonds issued by PREPA (the

"Bondholders") is the beneficiary and a supporter of the Settlement Motion in that its $8.4 billion

---

[1]      Effective May 17, 2019, Cortland replaced Scotiabank de Puerto Rico ("Scotiabank") as
administrative agent for lenders under the Scotiabank Credit Agreement.

[2]      Capitalized terms not defined have the same meanings as in the Settlement Motion.  The lenders
under the Fuel Lines are referred to as the "Fuel Line Lenders" and the approximately $700 million in
loans they made to PREPA are referred to as the "Fuel Line Loans."

proof of claim would be resolved by the Settlement Motion, while at the same time

extinguishing the Fuel Line Lenders' right to challenge U.S. Bank's lien and priority.  U.S. Bank

now seeks, without merit, to avoid both a deposition *and* a document production that would

provide a critical component of the factual record the Court has stated is relevant to whether the

Settlement Motion materially and irrevocably affects the Fuel Line Lenders' rights.

2.      At the July 11 status conference, this Court directed PREPA, acting though its

representative the Financial Oversight and Management Board for Puerto Rico (the "Oversight

Board"), and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF," together with

the Oversight Board and PREPA, the "Government Parties") to "address the fuel line and

compensation priority arguments and tell [the Court] what the legal basis and factual basis is of

the government parties' position that this requested set of approvals of the 9019 does not

adversely affect legal rights that these people have", *see* July 11, 2019 Hr'g Tr., at 55:1–6 [Dkt.

No. 1459].

3.      The July 19 supplemental memoranda the Government Parties filed advances an

interpretation of the Trust Agreement that strips the Fuel Line Lenders of priority rights the

relevant parties have acknowledged and agreed to for years.  The Government's position directly

contravenes the course of dealing by which the Government Parties, U.S. Bank, Citibank, and

the Fuel Line Lenders recognized and affirmed the Current Expense treatment and priority of the

Fuel Line Loans through, among other things, offering documents, credit agreements, credit

approval memos, bond indentures, and government resolutions.

4.      To give just one example, this evidence includes an official statement by PREPA

that would have been furnished to and agreed to by U.S. Bank prior to publication, that "[t]he

line of credit used to finance the purchase of fuel oil is not subordinate to the Authority's Power

Revenue Bonds and is considered an operational expense payable prior to the payment of the

Authority's Power Revenue Bonds."[3]  Documents already produced by PREPA and Citibank,

and testimony to be given by them shows robust business analysis as to the priority of the Fuel

Lines vis-à-vis U.S. Bank and the Bondholders, as well as the parties' business understanding

that the payment of Fuel Lines comes before U.S. Bank and the Bondholders.  In additional

offering memoranda, which must also have been shared with and agreed to by U.S. Bank,

PREPA has proclaimed to bondholders and the world that "[t]he debt service payments on" the

Fuel Lines "are Current Expenses **payable prior to debt service on the Authority's Power**

**Revenue Bonds**"[4] and that the Fuel Line Lenders are "**entitled to be paid before debt service**

**on the Power Revenue Bonds**."[5]

5.      The Government Parties' position underscores the need for the factual discovery

the Fuel Line Lenders seek from U.S. Bank to show U.S. Bank's agreement to the exact opposite

position the Government Parties are espousing now.  But U.S. Bank, despite acting as Trustee to

the bondholders who will benefit under the Restructuring Support Agreement ("RSA") at the

Fuel Line Lenders' expense, and despite filing an $8.4 billion claim on behalf of the

bondholders, now seeks to walk away from providing testimony or documents on the

communications and course of dealing.  The Fuel Line Lenders are entitled to such discovery in

defending against the post hoc assertions the Government Parties are now advancing in support

---

[3]      Complaint, *Cortland Capital Market Services LLC, et al.*, v. *The Financial Oversight and Management Board, et al.*, Adv. Pro. No. 19-00396 ("Adversary Complaint"), Ex. 13 (PREPA Series XX Official Statement) at 42.

[4]      Adversary Complaint, Ex. 14 (PREPA Series 2013A Official Statement at 53) (emphasis added).

[5]      Adversary Complaint, Ex. 14 (PREPA Series 2013A Official Statement) at 22 (emphasis added); Adversary Complaint, Ex. 15 (PREPA Series 2012A Official Statement) at 18 (emphasis added).

of the Settlement Motion contrary to a multi-year course of dealing and agreements among the parties.

6.    Testimony and documents from U.S. Bank will confirm that its and the Bondholders' post hoc position that the Fuel Line Lenders do not have priority is without merit. As outlined in the *Motion of Solus to Compel Testimony Pursuant to Rule 30(b)(6) from U.S. Bank in Connection with PREPA RSA Settlement Motion* [Dkt. No. 1469] (the "Motion to Compel"), the factual record already reflects that for years the common understanding of the Government Parties, Citibank, and the Fuel Line Lenders is that the Fuel Line Loans have priority over U.S. Bank and the Bondholders.  U.S. Bank cannot shield itself from producing documents or sitting for a single deposition to avoid confirming these facts through its own evidence.  U.S. Bank's tactics are indefensible given its status as Trustee for the primary beneficiaries of the RSA and its $8.4 billion claim.  As such U.S. Bank's Motion to Quash must be denied and it must be compelled to make a supplemental production in response to Request No. 4 to enable the Fuel Line Lenders to present to the Court how the RSA materially and irrevocably affects its rights on a complete factual record.

7.    In moving to quash the *Notice of Amended Subpoena to U.S. Bank, National Association, as PREPA Bond Trustee, by Cortland Capital Markets LLC, As Administrative Agent, and Solus*, dated July 5, 2019 (the "Subpoena"), U.S. Bank erroneously argues that the Subpoena seeks testimony regarding "legal conclusions."  Legal conclusions do not materialize out of thin air; rather they are predicated on *facts*, such as whether the Government Parties, U.S. Bank and the bondholders, through words and conduct, paid the Fuel Line Loans as Current Expenses and acknowledged that the Fuel Line Loans had priority over the bondholders in their own analyses and communications.  It is these *facts* the Fuel Line Lenders seek to develop

through U.S. Bank's Rule 30(b)(6) testimony, regardless of the ultimate legal conclusion advocated by any party. Under U.S. Bank's view, there would be no discovery of any fact that was relevant to support a legal conclusion—a baseless contention that misses the point of discovery entirely.

8.      Further, U.S. Bank's arguments as to burden do not meet the extraordinary bar required to quash a deposition subpoena. Critically, U.S. Bank is hardly a "non-party". It is Trustee for the Bondholders' $8.4 billion claim and takes direction from the Bondholders that are the prime beneficiaries of the RSA. It has gone on record in support of the Settlement Motion. *See* July 11, 2019 Hr'g Tr., at 26:13–16 [Dkt. No. 1459] ("[W]e do anticipate participating in these proceedings at the appropriate time. . . . [W]e disagree with the positions taken by the fuel line lenders . . . with respect to their interpretation of the trust agreement"). Through the Subpoena, the Fuel Line Lenders sought one deposition, offered to conduct that deposition in Minneapolis, and offered to narrow certain of the Subpoena's topics. But on July 15, the day before discovery motions were due, U.S. Bank refused to produce a witness on any topic, under any circumstance, leaving Solus in the position of filing a Motion to Compel on all examination topics in the Subpoena to preserve its rights. The Fuel Line Lenders are entitled to a deposition from U.S. Bank's representative to establish the factual basis for their priority and to undermine the Government Parties' and U.S. Bank's position that there is no enforceable subordination agreement and that the RSA does not materially and irrevocably affect the rights of the Fuel Line Lenders. It would also be incredibly inefficient and a waste of time to have U.S. Bank examined for the first time at the evidentiary hearing on the Settlement Motion.

9.      U.S. Bank also has been delinquent in its document production and produced nothing regarding the Fuel Line Loans until the day motions to compel were first due; and then

only a handful of irrelevant material.  After multiple meet and confers, U.S. Bank has refused to supplement its production.  The Fuel Line Lenders are further entitled to an order compelling U.S. Bank to make a supplemental production of all documents and communications relating to the Current Expense Treatment or priority status of the Fuel Line Loans.  U.S. Bank's incomplete production contained *no* communications with PREPA about the Fuel Line Loans' status under the Trust Agreement, *no* communications with the Bondholders about the treatment of the Fuel Line Loans, and *no* internal documents pertaining to the same.  This defies common sense given that, since May 4, 2012, there were numerous amendments to the Trust Agreement, new bond series were issued, bond offering memoranda were prepared (each recognizing the Fuel Line Lenders' Current Expense treatment and priority), and the Bondholders negotiated the RSA.  It is impossible that a major commercial bank does not have a single document explaining agreed payment priorities under an $8.4 billion facility for which it is responsible.  Indeed, Citibank has produced their documents as the bank opposite U.S. Bank on the transaction; U.S. Bank should be ordered to do the same.

10.     For these reasons and the reasons set forth below, Solus respectfully requests that the Court deny U.S. Bank's Motion to Quash and (i) enter Solus' Proposed Order compelling U.S. Bank to make a complete production in response to Request No. 4 of the *First Set of Document Requests of Cortland Capital Market Services LLC, as Administrative Agent, and Solus Alternative Asset Management LP to U.S. Bank National Association, As Bond Trustee* (the "Requests for Production" or the "Requests") and (ii) grant Solus' Motion to Compel [Dkt. No. 1469] by ordering U.S. Bank to produce a witness pursuant to Federal Rule 30(b)(6) in response to each of the examination topics outlined in the Subpoena; or in the alternative, if the Fuel Line Lenders are not permitted to take the Rule 30(b)(6)  deposition of U.S. Bank, as PREPA Bond

Trustee, U.S. Bank and the Bondholders should be precluded from making further arguments or submitting evidence regarding Current Expense treatment of the Fuel Lines, the priority status of the Fuel Line Loans under the Trust Agreement, and any other topic for which they have refused to grant discovery.

## JURISDICTION AND VENUE

11.     The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA § 306(a).  Venue is proper subject to PROMESA § 307(a).

## RELEVANT BACKGROUND

12.     As outlined more fully in the *Renewed Omnibus Motion of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion* [Dkt. No. 1470], Solus' Motion to Compel, and the Fuel Line Lenders' Complaint, *see* Case No. 19-00396 (LTS) [Dkt. No. 1], beginning in 2012 the Fuel Line Lenders extended approximately $700 million in working capital to PREPA so that PREPA could purchase the fuel needed to operate its power generation system.  The Fuel Line Loans were made on the express understanding of relevant parties—including PREPA, the Fuel Line Lenders and U.S. Bank as Trustee—that the Fuel Line advances were "Current Expenses" under the Trust Agreement governing PREPA's bond debt.  Each of these parties understood that the Trust Agreement not only requires PREPA to pay all Current Expenses before the bonds, but it also provides that the Bondholders' lien and recourse are limited to "Net Revenues" in a specified "Sinking Fund"—namely, revenues after all Current Expenses are paid.  As a result, unless and until the Fuel Lines are paid in full, the bondholders have no security (beyond, at most, the amounts already in the Sinking Fund) and no right to recover anything (again, beyond amounts already in the Sinking Fund).

7

13.     Through the Settlement Motion, PREPA and the Bondholders seek to have this Court approve a Restructuring Support Agreement (the "RSA") in an order that would subvert and disregard the pre-petition priority scheme and provide substantial recoveries to bondholders, outside of a plan, on account of claims that have almost *no value* unless and until Current Expenses are paid in full.

14.     In view of the issues raised by the Settlement Motion, the Fuel Line Lenders have sought discovery of U.S. Bank on issues related to the Fuel Line Lenders' Current Expense treatment and priority interest, as well as the RSA, because U.S. Bank is a key stakeholder and Trustee to the Bondholders that would benefit at the Fuel Line Lenders' expense, and because U.S. Bank, along with other relevant parties, has agreed and acknowledged for years that the Fuel Line Lenders have priority.  On May 22, 2019, the Fuel Line Lenders served the Requests for Production on U.S. Bank.[6]  On June 3, 2019 the Fuel Line Lenders served an initial subpoena and notice of deposition on U.S. Bank on June 3, 2019.  On July 5, 2019, the Fuel Line Lenders served the Subpoena with the Amended Notice on July 5, 2019.[7]  The Subpoena is attached as Exhibit B to the Motion to Quash.

15.     The Requests for Production sought documents from U.S. Bank relating to the following:

---

[6]     *See First Set of Document Requests of Cortland Capital Market Services LLC, as Administrative Agent, and Solus Alternative Asset Management LP to U.S. Bank National Association, As Bond Trustee*, Exhibit B to Motion to Compel.

[7]     This discovery request was served in accordance with the original Discovery and Scheduling Order entered by Judge Swain.  *See Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]* [Dkt. No. 1253] (the "Discovery and Scheduling Order").

- Request 1:  All executed versions of the Trust Agreement, including all amendments and supplements thereto;

- Request 2:  All resolutions of the PREPA Board authorizing the issuance of any Bonds that are currently outstanding;

- Request 3:  All "Official Statements", "Offering Memoranda" or similar offering documents issued in connection with any issuance of any Bonds that are currently outstanding;

- Request 4:  All Communications, since May 4, 2012, with any other person or entity relating to the Fuel Line Loans, including all such Communications relating to the Current Expense Treatment or priority status of the Fuel Line Loans;

- Request 5:  Documents showing whether U.S. Bank had or has control— as of the Petition Date or at present—over accounts including the General Fund and Sinking Fund; and

- Request 6:  Documents sufficient to show the amount and series of all Bonds currently outstanding.

16.     The Subpoena seeks testimony from U.S. Bank pursuant to Rule 30(b)(6)

regarding the following:

- Examination Topic 1:  "The negotiation of, entry into, and terms of the RSA";

- Examination Topic 2:  U.S. Bank's control as of the Petition Date and at present over the funds created by the Trust Agreement, including the General Fund and Sinking Fund;

- Examination Topic 3:  U.S. Bank's "position, documents or communications regarding, or analysis of the Current Expense treatment or priority status of the Fuel Line Loans under the Trust Agreement"; and

- Examination Topic 4:  Testimony concerning documents produced in response to the Requests for Production.

17.     The parties met and conferred numerous times regarding both the Requests for

Production and the Subpoena.  U.S. Bank agreed to produce certain documents in response to the

Requests, but delayed making its production in response to Request No. 4 several times.  The

Fuel Line Lenders relied in good faith on U.S. Bank's representation that it would make a thorough and complete production in response to Request No. 4 on July 15.  On July 15, U.S. Bank again asked to delay its production in response to Request No. 4 until July 16, the day discovery motions to compel were due.  Later that evening—the night before discovery motions were due—U.S. Bank announced that it would not provide a Rule 30(b)(6) witness to give testimony on any examination topic outlined in the Subpoena.

18.     On the afternoon of July 16, U.S. Bank made an incomplete and largely unresponsive document production in response to Request No. 4 before filing its *Motion of U.S. Bank National Association, as PREPA Bond Trustee, To Quash Amended Deposition Subpoena of Cortland Capital Markets, LLC and Solus Alternative Asset Management LP* [Dkt. No. 1466] (the "Motion to Quash").  Solus simultaneously moved to compel the appearance of U.S. Bank's witness.  [Dkt. No. 1469].

19.     U.S. Bank's July 16 production in response to Request No. 4 was deficient.  The only communications discussing the Fuel Line Loans related to a 2015 restructuring support agreement to which the Fuel Line Lenders were a party, that was rejected by the Oversight Board.  This deficient production is inexplicable given that during the relevant time period there were numerous amendments to the Trust Agreement, the issuance of new bond series, bond offering memoranda recognizing the Fuel Line Lenders' Current Expense treatment and priority, and the bondholders' negotiation of the instant RSA.  Further, U.S. Bank did not produce any internal communications, such as emails or memoranda, discussing or analyzing current expenses or the Fuel Line Loans' treatment under the Trust Agreement.  Though Request 4 sought communications as of May 2012, U.S. Bank produced no documents prior to 2016.  U.S. Bank's failure to make an adequate production is especially troubling in view of the fact that it is

simultaneously arguing in its Motion to Quash that it should avoid a deposition because evidence outside the four corners of the relevant documents is impermissible parol evidence. U.S. Bank basically produced no such documents.

20.    Solus has attempted to resolve this dispute without the need for motion practice by meeting and conferring with U.S. Bank on numerous occasions. On July 22, U.S. Bank confirmed that it would not make a further production of documents in response to Request No. 4, or produce a witness in response to any examination topic noticed in the Subpoena.

21.    Because the Requests for Production and the Subpoena seek highly relevant evidence that goes to a core issue of whether the RSA materially and irrevocably alters the Fuel Line Lenders' rights, Solus now opposes the Motion to Quash and moves to compel U.S. Bank to produce documents responsive to Request No. 4.

## **ARGUMENT**

### I.    **U.S. Bank Should Be Compelled to Produce Relevant and Necessary Documents Relating to the Fuel Line Loans In Response to Request No. 4**

22.    Parties may obtain discovery regarding any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); FED. R. BANKR. P. 7026. This broad mandate encompasses any matter that bears on any issue that is or may be in the case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Donovan v. Prestamos Presto Puerto Rico, Inc.*, 91 F.R.D. 222, 223 (D.P.R. 1981) ("The basic philosophy of the present federal procedure is that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged."). It is insufficient for a party to argue that searching for and producing documents is overly burdensome where, as here, the amount of money in

controversy far exceeds the projected cost of complying with a discovery request.  *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7-9 (D.D.C. 2017).

23.     Request 4 of the Requests for Production seeks all communications since May 4, 2012 relating to the Fuel Line Loans, including all such communications relating to the Current Expense Treatment or priority status of the Fuel Line Loans.  These documents are central to the Fuel Line Lender's objection to the Settlement Motion.  This is because, as a key stakeholder to the RSA, the communications of U.S. Bank will answer the question of whether U.S. Bank has acknowledged its agreement that the Fuel Line Lenders are entitled to Current Expense status and payment ahead of the bonds, just as PREPA's and Citibank's communications have already shown.  This acknowledgment is central to the determination of whether the Fuel Line Lenders had an enforceable priority right, which goes directly to whether approval of the RSA at the Fuel Line Lenders' expense is legally permissible.

24.     The Fuel Line Lenders disagree with U.S. Bank's and the Bondholders' position that approval of the RSA would not interfere with or otherwise harm the rights of the Fuel Line Lenders, and they have the right to challenge U.S. Bank's position with documents showing U.S. Bank's understanding of the Trust Agreement and the priority status of the Fuel Line Lenders as Current Expenses.

25.     By frustrating the discovery process with its inadequate production in response to Request No. 4 and its subsequent refusal to make a supplemental production, U.S. Bank is prejudicing the Fuel Line Lenders' rights to object to the Settlement Motion with the benefit of a complete factual record.  There can be no doubt that U.S. Bank's production is incomplete.  Despite being a Trustee for the PREPA Bondholders for over a decade, U.S. Bank's production indicates that it does not have in its possession, custody, or control (1) a single communication

pertaining to the Fuel Line Loans dated prior to 2015, or (2) any communications related to the

Fuel Line Loans since 2015, other than communications about the prior rejected 2015

restructuring support agreement to which the Fuel Line Lenders were a party.

26.     It simply cannot be the case that U.S. Bank, as Trustee to $8.4 billion in power

revenue bonds has *no* communications with PREPA about the Fuel Line Loans' status under the

Trust Agreement, *no* communications with the Bondholders about the treatment of the Fuel Line

Loans, and *no* internal documents pertaining to the same.  This defies common sense given that,

since May 4, 2012, there were numerous amendments to the Trust Agreement, new bond series

were issued, bond offering memoranda were prepared recognizing the Fuel Line Lenders'

Current Expense treatment and priority, and the Bondholders negotiated the RSA.

27.     At least ten Offering Memoranda to which U.S. Bank agreed discuss treatment of

the Fuel Line Loans and recognize the Current Expense status and priority of the Fuel Line

Loans.  *See, e.g.*, Adversary Complaint, Ex. 13 (PREPA Series XX Official Statement) at 42;

Adversary Complaint, Ex. 14 (PREPA Series 2013A Official Statement) at 22, 53; Adversary

Complaint, Ex. 15 (PREPA Series 2012A Official Statement) at 18.  *See also* Government

Development Bank for Puerto Rico, *Investor Resources*,

http://www.gdb.pr.gov/investors_resources/prepa.html.  Yet U.S. Bank has produced no

communications regarding these particular offering documents, or any others.  Such

communications would indicate that U.S. Bank reviewed the materials in question, analyzed and

agreed with such statements, and discussed its position on such statements with parties of

interest, all of which is relevant to the existence of an agreement between the Fuel Line Lenders

and the Bondholders regarding priority and Current Expense status.

28.     Though the parties met and conferred on search terms that could assist U.S. Bank

in its identification of emails in response to Request 4, suggesting search terms in no way waived

the Fuel Line Lenders' right to responsive communications (including internal non-email

communications), nor did it relieve U.S. Bank's obligation to locate and produce them.  Though

U.S. Bank may argue that it ran these search terms on three custodians whose role is entirely

unclear to the Fuel Line Lenders, this is not a basis to withhold production on indisputably

relevant discovery simply because the Fuel Line Lenders, as outsiders to U.S. Bank's files, did

not guess the "magic words" or request the right custodians that would reveal these

communications, including centrally stored electronic files U.S. Bank could search with no

burden.  *See United States v. Fresenius Med. Care Holdings, Inc.*, No. 1:10-CV-1614-AT, 2014

WL 11517841, at *6 (N.D. Ga. May 13, 2014) (ordering producing party to "work in good faith

with [the requestor] to ensure . . . that the stipulated discovery parameters are not unreasonably

limiting [its] disclosure of relevant, responsive documents"); *see also William A. Gross Const.*

*Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("[W]hile key

word searching is a recognized method to winnow relevant documents . . . [c]ommon sense

dictates that sampling and other quality assurance techniques must be employed to meet

requirements of completeness.") (citations omitted).

29.     The complete absence of relevant communications in U.S. Bank's production—

when other parties have produced contemporaneous documents discussing the Fuel Line Loans

that would have been provided to U.S. Bank—indicates that the search U.S. Bank performed in

response to Request No. 4 was insufficient.

30.     Further, U.S. Bank produced a number of redacted documents, but has not

provided a privilege log, making it nearly impossible for the Fuel Line Lenders to understand

what information was redacted or determine the nature of any other documents withheld entirely

on privilege grounds.  This is especially problematic given that U.S. Bank is simultaneously

hiding behind a speculative privilege claim to quash the Subpoena's Topic 1 regarding the RSA.

31.     The various defects of U.S. Bank's production are particularly problematic given

that U.S. Bank is simultaneously seeking to quash the Subpoena and avoid producing a Rule

30(b)(6) witness on the basis that the pertinent documents speak for themselves.  *See* Motion to

Quash at 11–12.  It is unreasonable for U.S. Bank to take the position that it should not be

deposed regarding its position or communications about the Current Expense or priority status of

the Fuel Line Loans, but also refuse to produce responsive documents on this topic.  The Court

appears intent on addressing the issue of the priority status of the Fuel Line Loans.  The topic is

therefore ripe for discovery.  *See* Motion to Quash at 11.  This Court must compel U.S. Bank to

make a supplemental production in response to Request No. 4.

32.     Good cause exists for filing this cross-motion to compel after July 16, 2019.[8]

Although parties were required under the Court's scheduling order to respond to document

requests by July 10, Solus agreed, at the request of U.S. Bank (presumably in good faith), to

extend this deadline numerous times due to trouble U.S. Bank was having in collecting

documents.  On the agreed upon postponed deadline of July 15, U.S. Bank requested yet another

extension to make its production on July 16—the date discovery motions were due.  Relying on

U.S. Bank's representations that it would respond fully to Request No. 4, Solus again consented

to the extension.  In seeking Solus' consent, U.S. Bank represented on July 15 that it would not

---

[8]      *See Order (A) Granting the Urgent Motion in Limine to Exclude Testimony Offered by the Energy
Non-Profits, the Environmental Non-Profits, and Somos, (B) Granting in Part the Urgent Motion in
Limine to Exclude Testimony Offered by Utier, Sreaee, and Windmar, and (C) Modifying the Current
Briefing Schedule Pertaining to Discovery Motions* [Dkt. No. 1457].

contest that Solus has cause to file a discovery motion after July 16 if needed.  Solus did not

receive U.S. Bank's inadequate production until the very day that Solus would have been

required to submit a motion to compel, and did not receive final confirmation from U.S. Bank

that it would not make a supplemental production until July 22, the day before this motion.  As

such, Solus respectfully submits that it has good cause to cross-move to compel discovery after

the July 16 deadline.

**II.     U.S. Bank's Motion to Quash Should Be Denied Because A Rule 30(b)(6) Deposition
of U.S. Bank is Relevant and Necessary to the Fuel Line Lenders' Objection**

33.     Depositions are a favored method of discovery, as they often provide the most

effective means for a party to obtain complete information.  *Autoridad de Carreteras y*

*Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 437 (D.P.R. 2016) (citation omitted).  Of

course, a party may properly seek relevant testimony about historical facts—even if those facts

may ultimately bear on some "legal conclusion."  *See Blasco-Figueroa v. Puerto Rico Aqueducts*

*& Sewer Auth.*, No. CIV. 14-1395 GAG/BJM, 2015 WL 2062011, at *2 (D.P.R. May 4, 2015);

*McGahey v. Fed. Nat'l Mortg. Ass'n*, No. 2:16-CV-00219-JDL, 2018 WL 3521175, at *4 (D.

Me. July 20, 2018).  A person resisting discovery must therefore show a "particular and

compelling need" supported by "specific facts" to quash a deposition notice.  *Autoridad de*

*Carreteras y Transportacion*, 319 F.R.D. at 437; *see also B. Fernandez & Hnos., Inc. v. Int'l*

*Bhd. of Teamsters*, 285 F.R.D. 185, 186 (D.P.R. 2012) (requiring "'extraordinary' or

'exceptional' circumstances" to quash a deposition notice).

34.     The Settlement Motion purports to seek Court approval of a settlement of U.S.

Bank's $8.4 billion proof of claim, *see* Proof of Claim No. 18449.  As Trustee, U.S. Bank

represents the interests of bondholders, the multi-billion dollar beneficiaries of the Settlement

Motion.  U.S. Bank is on the record as a supporter of the Settlement Motion.  U.S. Bank cannot

be described or treated as a non-party.  However, even if U.S. Bank is a "non-party" it "cannot

merely assert that compliance with the subpoena would be burdensome without setting forth the

manner and extent of the burden and the probable negative consequences of insisting on

compliance." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299

(S.D.N.Y. 2009); *cf. id.* at 300 ("Inconvenience alone will not justify an order to quash a

subpoena that seeks potentially relevant testimony.").  A party resisting discovery based on

grounds of proportionality must, at the very least, submit an affidavit or other evidence detailing

the extent of its alleged burden. *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 89 F. Supp.

3d 211, 216 (D. Mass. 2015).  U.S. Bank has not done so.  Moreover, the "protection" to be

afforded non-parties from the imposition of undue burdens "is less robust" where, as here, "the

nonparty is closely allied with [the parties seeking relief] and the information [it] possess[es]

is . . .pertinent." *S.E.C. v. Archer*, No. 16-cv-3505, 2018 WL 3424449, at *1 (S.D.N.Y. July 2,

2018).

### A.   Testimony Concerning U.S. Bank's Role in Connection with the RSA Is Relevant And Necessary To Fuel Line Lenders' Objection (Topic 1)

35.   U.S. Bank's role in connection with the RSA is relevant and necessary to the Fuel

Line Lenders' objection to the Settlement Motion.  U.S. Bank as Trustee for the Bondholders

stands to directly benefit from the RSA, at the Fuel Line Lenders' expense.  U.S. Bank is on

record in support of the RSA, *see* July 11, 2019 Hr'g Tr., at 26:13–16 [Dkt. No. 1459].  Through

their objection and the evidentiary hearing, the Fuel Line Lenders will show that the Fuel Line

Loans are Current Expenses with priority over the Bondholders.  The Fuel Line Lenders will

show that the RSA would materially and irrevocably alter the Fuel Line Lenders' priority right

by paying the Bondholders first, based on a security interest that does not exist until the Fuel

Line Lenders are paid.  U.S. Bank's involvement in the negotiation of the RSA, its effort to

extinguish the Fuel Line Lenders' legal rights to benefit U.S. Bank and its Bondholders, and its

position on how RSA terms are to be implemented are critical questions the Fuel Line Lenders

should be permitted to put to U.S. Bank, a key stakeholder in the arrangement that would strip

the Fuel Line Lenders' rights.  This is especially the case when such discovery would likely

show—as have other documents already in the factual record—that the Government Parties, U.S.

Bank, and the Bondholders have been well aware of the Fuel Line Lenders' priority rights they

now seek to extinguish for years, and were well aware of them in connection with advancing the

RSA.

36.     The Court has ordered the Government Parties to outline the very "legal basis and

factual basis" for its position on the fuel lines priority rights; *see* July 11, 2019 Hr'g Tr., at 55:1–

6 [Dkt. No. 1459]; as such it is indefensible that U.S. Bank resists discovery on the factual bases

related to Fuel Line Lenders' rights.

37.     U.S. Bank refuses to produce a witness on Topic 1 because, according to its

Motion to Quash, it was "not involved in the negotiation or entry into the RSA" and its

knowledge of the RSA extends only to "information that has been made publicly available."

Motion to Quash at 5-6.  These empty claims, unsupported by a sworn statement or other

competent evidence, do not withstand the most minimal of scrutiny.  It is highly implausible that

U.S. Bank's $8.4 billion proof of claim was settled without its knowledge or participation.

38.     The emptiness of U.S. Bank's counsel's claim that U.S. Bank was "not involved

in the negotiation or entry into the RSA" is laid bare by its simultaneous blanket (and

unmeritorious) claim of privilege over everything to do with the RSA.  If U.S. Bank had no

involvement then there would be no claim of privilege.  *See* Motion to Quash at 5-6.  In any

event, a prospective and speculative fear that Topic 1 may implicate issues of privilege cannot

justify the "extraordinary measure" of quashing a deposition in its entirety. *Autoridad de Carreteras y Transportacion*, 319 F.R.D. at 437.

39.    *Fidelity Management. & Research Co. v. Actuate Corp.*, 275 F.R.D. 63, 64 (D. Mass. 2011), does not suggest a different result. There, the plaintiff sought testimony from a 30(b)(6) witness on "the facts which form the basis of defendant's damage claims and asserted affirmative defenses." *Id.* The court held that because claims and defenses are typically drafted by attorneys, it would be difficult for a lay witness to articulate the facts used to develop a particular claim or defense without inadvertently revealing the attorney's mental impressions. *Id.* The Fuel Line Lenders, by contrast, do not request testimony on the facts U.S. Bank used to develop a legal position. Topic 1 seeks testimony on narrow topics related to the RSA, including whether the Ad Hoc Group and Assured directed U.S. Bank to join the Settlement Motion and, if so, why U.S. Bank refused to do so. A witness's response to these factual questions would pose no threat of revealing an attorney's mental impressions. Indeed it will likely reveal that U.S. Bank did not join the RSA because it is understood between U.S. Bank and the Fuel Line Lenders that U.S. Bank's interest are subordinate. The Fuel Line Lenders must be given an opportunity to ask questions that seek factual, non-privileged information.

**B.    Factual Information Concerning U.S. Bank's Lack of Control Over Certain Accounts Is Relevant And Necessary To The Fuel Line Lenders' Objection (Topic 2)**

40.    U.S. Bank's control over accounts created by the Trust Agreement, including the General Fund and Sinking Fund, is relevant to whether U.S. Bank and the Bondholders have a perfected security interest in the funds the Bondholders hope to receive under the RSA. There can be no perfected lien over PREPA funds if U.S. Bank does not maintain the accounts, or if there is no deposit account control agreement among PREPA, U.S. Bank and another financial institution. *See* 19 L.P.R.A. § 2214(a). While the RSA currently contemplates payouts to the

19

bondholders well beyond the amounts in the Sinking Fund, U.S. Bank has produced a four-page spreadsheet indicating that the bondholders may only hold a perfected lien over the Sinking Fund, worth at most $33 million.  Given that the bonds are non-recourse, if this is the case, it confirms the Fuel Line Lenders' position that the Bondholders have a security interest in nothing more than the Sinking Fund.  An explanation of this document by a witness is critical.  Such discovery goes directly to whether the RSA can be approved if the Bondholders' true security interest is much less than contemplated by the RSA.

41.    U.S. Bank does not contest the significance of this information to the Fuel Line Lenders.  U.S. Bank instead refuses to produce a witness because it contends Topic 2 calls for a "legal conclusion."  But every deposition, including this one, seeks to establish facts in support of a legal conclusion.  With this one, the Fuel Line Lenders will establish in this deposition which of the accounts in question U.S. Bank controls, and which of the accounts in question are subject to a deposit account control agreement with U.S. Bank.  *See Jenks v. New Hampshire Motor Speedway, Inc.*, No. 09-CV-205-JD, 2011 WL 839709, at *2–3 (D.N.H. Mar. 8, 2011) (allowing deposition on facts regarding an organization's "control" over its volunteers); *Mangham v. Westin Hotel Mgmt., LP*, No. 1:16-CV-3725-WSD, 2017 WL 4540712, at *3 (N.D. Ga. Oct. 11, 2017) (holding assertion that one entity was under the "exclusive control" of another entity was a "statement of fact, not a legal conclusion").  These facts, elicited at the deposition of U.S. Bank, will eventually support the legal conclusion that the Bondholders have no security interest in anything other than the Sinking Fund, but the point of the deposition is to elicit the facts and not to argue with the witness about a "legal conclusion."

42.    The case law U.S. Bank cites does not support its position, as they involved either broad demands for testimony on topics that broadly requested all facts in support of a party's

claims and defenses[9], or vague testimony about "duties" the FDIC owed to banks and whether

the FDIC conducted "due diligence" in examining and rating banks.  *See W Holding Co. v.*

*Chartis Ins. Co. of Puerto Rico*, 300 F.R.D. 46–47 (D.P.R. 2014).  The Fuel Line Lenders, on the

contrary, seek specific, factual information concerning whether U.S. Bank controls certain

accounts.

43.     Further, while U.S. Bank has offered to provide a declaration concerning its

control of the accounts and whether U.S. Bank is aware of any deposit account control

agreements for PREPA's accounts at other financial institutions, such a declaration is not

sufficient because it will not necessarily be admissible at the hearing against all parties in interest

and the Fuel Line Lenders will be entitled to cross-examine a declarant, in any event.  For an

issue as critical as the degree to which the Bondholders have perfected liens over the funds they

intend to appropriate through the RSA, the Fuel Line Lenders are entitled to fully examine a

witness on the nature of the security interest vis-à-vis the accounts at issue in order to inform

their objection.  A deposition is the most efficient way to do so.  To underscore this point, the

single created-for-litigation document U.S. Bank's counsel has produced on this Topic requires

clarification.  Especially because it appears U.S. Bank may not hold most of the accounts created

by the Trust Agreement, and because U.S. Bank has provided no deposit account control

agreements, U.S. Bank's contention that it should be able to wash its hands of this critical issue

by declaration cannot stand.

---

[9] *See Fid. Mgmt.*, 275 F.R.D. at 64 ("the facts which form the basis of defendant's damage claims and
asserted affirmative defenses"); *Neponset Landing Corp. v. Nw. Mut. Life Ins. Co.*, 279 F.R.D. 59, 61 (D.
Mass. 2011) ("the basis of [defendant's] affirmative defenses"); *Sec. & Exch. Comm'n v. Present*, No. CV
14-14692-LTS, 2016 WL 10998439, at *3 (D. Mass. May 12, 2016) ("'the bases' for certain allegations
made by the SEC"); *Cooper v. Charter Commc'ns, Inc.*, No. 3:12-CV-10530-MGM, 2016 WL 128099, at
*2 (D. Mass. Jan. 12, 2016) ("facts, circumstances and evidence that support [defendant's] affirmative
defenses").

    **C.**    **U.S. Bank's Position, Documents, and Communications Regarding, or Analysis of, the Current Expense Treatment or Priority Status of the Fuel Line Loans Under the Trust Agreement Is Relevant And Necessary to the Fuel Line Lenders' Objection (Topic 3)**

44.    On June 12 and July 11, the Court ordered the Government Parties to "address the fuel line and compensation priority arguments and tell [the Court] what the legal basis and factual basis is of the government parties' position that this requested set of approvals of the 9019 does not adversely affect legal rights that these people have", *see* July 11, 2019 Hr'g Tr., at 55:1–6 [Dkt. No. 1459]. On July 19, 2019, the Government Parties filed a brief stating that the Fuel Line Lenders are not Current Expenses, that the Trust Agreement does not create a payment priority in favor of Current Expenses, and that in any event, Current Expense claimants have no rights under the Trust Agreement and cannot enforce its provisions.

45.    The Government Parties' position is a 180 degree about-face from the relevant parties' position at the time the Fuel Line Loans were made and Power Revenue Bonds were issued.

46.    For example, when Citibank made the Fuel Line Loans (before it began acting as the Oversight Board's financial advisor as it is today) it said:

> Advances under the trade finance facility will be considered by PREPA as ***current expenses proving priority claim over bondholders and other creditors***.

Motion to Compel, Ex. C, at 5 (emphasis added). Citibank also noted that this priority treatment was a key component of its basis for agreeing to PREPA's request for 270-day draws. *Id.* at 6.

47.    When PREPA borrowed the Fuel Line loans, it told U.S. Bank and the Bondholders:

> Repayment of [the Fuel Line Facilities] and future lines of credit to cover operational expenses is treated as a Current Expense under the Trust Agreement, ***which is entitled to be paid before debt service on the Power Revenue Bonds***.

Ex. 14 (PREPA Series 2013A Official Statement) at 22 (emphasis added); Ex. 15 (PREPA Series

2012A Official Statement) at 18 (emphasis added).

48.    Now, the Fuel Line Lenders are entitled to discovery showing that U.S. Bank

knew of and agreed with PREPA and Citibank that the Fuel Lines are "***entitled to be paid before***

***debt service on the Power Revenue Bonds***." *Id.* at 22 (emphasis added).  This is especially the

case because the Government Parties also contend that there is no agreement between the Fuel

Line Lenders and the Bondholders on priority.  But there is, and the Fuel Line Lenders are

entitled to prove the existence of an agreement that the Fuel Line Lenders will be paid first

through the testimony of U.S. Bank.  *See, e.g., In re Howland*, 545 B.R. 653, 660 (Bankr. D. Or.

2015) (finding course of dealings between creditor and debtor established a binding

subordination agreement under 11 U.S.C. § 510(a) in favor of other creditors, even without direct

communication amongst creditors); *In re Mihalko*, 87 B.R. 357, 365 (Bankr. E.D. Pa. 1988)

(holding that one creditor may agree to subordinate its claim to another through a course of

conduct.); *In re Abengoa Bioenergy Biomass of Kansas, LLC*, No. 16-10446, 2018 WL 812941,

at *14 (Bankr. D. Kan. Feb. 8, 2018) (finding subordinated agreement where course of dealing

showed a general understanding that all claims against debtor by its affiliates would be

subordinated to the claims of third parties).

49.    Course of dealing, understandings and agreements concerning contractual

relations are facts.  U.S. Bank's position that the testimony sought amounts to discovery of mere

"legal conclusions" is baseless.  Documents already produced by other parties and testimony to

be given by them shows business analysis by non-lawyers as to the priority of the Fuel Lines vis-

à-vis U.S. Bank and the bondholders, as well as the parties' business understanding that the

payment of Fuel Lines comes before U.S. Bank and the Bondholders.  *See McGahey*, 2018 WL

3521175, at *5 (holding that the mere fact an organization consulted with or interpreted legal guidelines in making a decision did not transform "historical facts" into "legal conclusions"). U.S. Bank's position would categorically prevent any party alleging the existence of a contract based on the parties' course of dealing or otherwise from proving its position through a deposition. Obviously, such a position is without merit.

50.     U.S. Bank's argument against discovery of "parol evidence" is just as meritless. Factual testimony aimed at establishing an agreement in the first place is not parol evidence. It is the evidence of the contract. *See Johnston v. Holiday Inns, Inc.*, 565 F.2d 790, 792 (1st Cir. 1977). And even if Topic 3 did call for parol evidence, such evidence is properly the subject of discovery. *See, e.g.*, *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 404 (E.D.N.Y. 2011). "Parol evidence" is admissible for a variety of purposes such as to explain the parties' intent concerning an issue not clearly expressed by a written contract, *Autogermana, Inc. v. BMW of N. Am., Inc.*, 38 F. Supp. 3d 230, 235–36 (D.P.R. 2014), or to prove modifications or additional agreements subsequent to a written contract, *Xerox Fin. Servs. Life Ins. Co. v. High Plains Ltd. P'ship*, 44 F.3d 1033, 1041 (1st Cir. 1995).

### D.     Preparing A Witness To Testify About The Documents U.S. Bank Has Produced Puts No Undue Burden on U.S. Bank (Topic 4)

51.     Examination Topic 4 poses no undue burden on U.S. Bank. "When a party resists the production of evidence, it bears the burden of establishing lack of relevancy or undue burden." *Autoridad de Carreteras y Transportacion*, 319 F.R.D. at 427 (internal quotation marks and citations omitted). U.S. Bank has not done so. Apart from iterations of the Trust Agreement, U.S. Bank has produced only a handful of documents, which is why Solus is cross-moving to compel U.S. Bank to produce relevant documents in response to Request No. 4, *see* Section I, *supra*. U.S. Bank is Trustee for more than $8.4 billion of Power Revenue Bonds. It

stands to gain billions of dollars in payments if the Settlement Motion is granted.  U.S. Bank has offered no cognizable reason supported by actual evidence showing why it is burdensome for a single witness to testify about the Trust Agreement, the course of dealing thereunder, the RSA and the handful of documents that have been produced.

52.     Solus does not intend to depose U.S. Bank on arcane provisions of old Trust Agreements; rather Solus has highly relevant questions regarding issues such as U.S. Bank's involvement in approving Offering Memoranda relating to the Current Expense status and priority of the Fuel Line Loans, U.S. Bank's agreement that the Fuel Line Lenders have priority, whether U.S. Bank ever objected to the characterization of the Fuel Line Loans' priority as articulated in such documents, and U.S. Bank's explanation of any internal analyses or memoranda it drafted regarding the treatment of the Fuel Line Loans under the Trust Agreement (which analyses have yet to be produced).

53.     The Fuel Line Lenders' approach to the deposition is tailored and proportional to the needs of the case.  The burden associated with producing a 30(b)(6) witness is trivial in comparison to the importance of the highly relevant testimony sought regarding the core issue of whether the RSA Agreement materially and irrevocably affects the rights of non-settling creditors in favor of U.S. Bank and its Bondholders.  U.S. Bank should not be able to hide behind "burden", especially when it has also failed to meet its document production obligations, to avoid one deposition on  the settlement of an $8.4 billion claim.

## CONCLUSION

54.     For the foregoing reasons, the Court should (i) enter Solus' Proposed Order compelling U.S. Bank to make a complete production in response to Request No. 4 of the *First Set of Document Requests of Cortland Capital Market Services LLC, as Administrative Agent, and Solus Alternative Asset Management LP to U.S. Bank National Association, As Bond Trustee*

and (ii) deny the Motion to Quash grant the *Motion of Solus to Compel Testimony Pursuant to Rule 30(b)(6) from U.S. Bank in Connection with PREPA RSA Settlement Motion* [Dkt. No. 1469] by ordering U.S. Bank to produce a witness pursuant to Federal Rule 30(b)(6) in response to each of the examination topics outlined in the Subpoena; or in the alternative, if the Fuel Line Lenders are not permitted to take the Rule 30(b)(6) deposition of U.S. Bank, as PREPA Bond Trustee, U.S. Bank and the Bondholders should be precluded from making further arguments or submitting evidence regarding Current Expense treatment of the Fuel Lines, the priority status of the Fuel Line Loans under the Trust Agreement, and any other topic for which they have refused to grant discovery.

## CERTIFICATION

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, Solus hereby certifes that on July 9, July 16, and July 19, counsel to Solus conferred in good faith with counsel for U.S. Bank via telephone, and engaged in further discussion via email. After conferring about the subject of this motion, the parties were unable to agree on a resolution as of the deadline for this filing.

Pursuant to Local Rule 9013-1 and paragraph I.H of the Case Management Procedures, Solus hereby certifies that it has (a) carefully examined the matter and concluded that there is a true need for an urgent hearing; (b) not created the urgency through a lack of due diligence; (c) made a bona fide effort to resolve the matter without a hearing; (d) made reasonable, good faith communications in an effort to resolve or narrow the issues being brought to the court; and (e) conferred with U.S. Bank who, as of the date of this filing, has not informed Solus of its intent to oppose the relief requested herein.

Dated: July 23, 2019

_____/s/ Jose L. Ramirez-Coll_____
Jose L. Ramirez-Coll
USDC-PR No. 221702
ANTONETTI, MONTALVO
& RAMIREZ-COLL
1225 Ponce de Leon Avenue
Suite 1001
San Juan, Puerto Rico 00907
Telephone: (787) 977-0303
Facsimile: (787) 977-0323
Email: jramirez@amrclaw.com

Respectfully Submitted,

_____/s/ Bryce L. Friedman_____
Bryce L. Friedman (admitted *pro hac vice*)
Nicholas Baker (admitted *pro hac vice*)
Sarah E. Phillips (admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel.: 212-455-2000
Fax: 212-455-2502
Email: sarah.phillips@stblaw.com
          bfriedman@stblaw.com
          nbaker@stblaw.com

*Attorneys for Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC*