## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO

     Debtor.

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 7776**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

## OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO MOTION TO LIFT AUTOMATIC STAY AND/OR TO ASK THE COURT THAT IT IS NOT APPLICABLE IN THIS CASE FILED BY HIRAM PÉREZ-SOTO

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

OBJECTION ........................................................................................................................... 4

    I.      SECTION 362(B)(4) IS INAPPLICABLE BECAUSE MOVANT IS NOT
         A GOVERNMENTAL UNIT ................................................................................. 4

    II.    MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO
         MODIFY THE AUTOMATIC STAY ..................................................................... 5

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Begier v. IRS*, 496 U.S. 53, 58 (1990) ...........................................................................10

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
    217 F. Supp. 3d 508, 518 (D.P.R. 2016).....................................................7, 8, 11

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
    369 B.R. 87, 94-95 (D.P.R. 2007) ...........................................................................8

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
    28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) ...........................................................13

*Delpit v. Commissioner*,
    18 F.3d 768 (9th Cir. 1994) .....................................................................................6

*FCC v. NextWave Pers. Commc'ns Inc.*, 537 US 293, 302 (2003) .............................10

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. Of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ...................................................8

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
    2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006 ...................................12-13

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000) ...................4

*In re 234-6 West 22nd St. Corp.*,
    214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997)...........................................................6

*In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977).......................8

*In re Breitburn Energy Partners LP*,
    No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017)......................8

*In re BFW Liquidation, LLC*, No. 09-00634-BGC-11,
    2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ...........................................10

*In re City of Stockton*,
    484 B.R. 372, 379 (Bankr. E.D. Cal. 2012).....................................................12, 14

*In re Cummings*,
    221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) .........................................................9

*In re Jefferson Cnty.*,
    491 B.R. 277, 285 (Bankr. N.D. Ala. 2013))....................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Motors Liquidation Co.*,
　　No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010)................................................10

*In re Mu'min*,
　　374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) ....................................................................... 8

*In re Murrin*,
　　477 B.R. 99, 109 (D. Minn. 2012) .....................................................................................9

*In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y.
Mar. 13, 2006)……………………………………………………………………………………11

*In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586,
　　at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) .................................................................11, 12, 14

*In re Taub*,
　　413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009)...........................................................................9

*In re Unanue-Casal*,
　　159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ..........................7, 8

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
　　362 B.R. 49, 56 (B.A.P. 1st Cir. 2007 ................................................................................6

*Matter of Garofalo's Finer Foods, Inc.*,
　　186 B.R. 414, 435 (Bankr. N.D. Ill. 1995) ...................................................................... 10

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
　　474 U.S. 494, 503 (1986).....................................................................................................6

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
　　537 B.R. 128, 140 (Bankr. D.P.R. 2015 .............................................................................6

*Peaje Invs. LLC v. Garcia-Padilla*,
　　2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) ..........................................8

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
　　980 F.2d 110, 117 (2d Cir. 1992)......................................................................................10

*Soares v. Brockton Credit Union (In re Soares)*
　　107 F. 3d 969, 975 (1st Cir, 1997)......................................................................................5

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

907 F.2d 1280, 1286 (2d Cir. 1990)................................................................ 7, 8, 9, 10-15

*Unisys Corp. v. Dataware Prods., Inc.*,
    848 F.2d 311, 313 (1st Cir. 1988)..................................................................6

*Union Bank v. Wolas,* 502 U.S. 151, 161 (1991) ......................................................10

## <u>STATUTES</u>

11 U.S.C. § 101(27) ........................................................................................4

11 U.S.C. § 362(a) ....................................................................................1, 3, 5

11 U.S.C. § 362(1) ........................................................................................4

11 U.S.C. § 362(b)(4) ....................................................................................4,5

11 U.S.C. § 362 (d)(1) ..................................................................................4, 7

11 U.S.C. § 922............................................................................................5, 9

PROMESA § 301(a) ..................................................................................1, 3, 4

PROMESA § 315(b) ........................................................................................1

42 U.S.C. § 12101 ..........................................................................................1

48 U.S.C. § 2101 ..........................................................................................10

Act No. 9 of November 26, 1975, as amended
    P.R. Laws Ann. tit. 32 § 3077 *et seq* ............................................................2, 12

## <u>OTHER AUTHORITIES</u>

H.R. Rep. No. 95-595 (1977)........................................................................6, 10

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion to Lift Automatic Stay and/or to Ask The Court That It Is Not Applicable In This Case* [ECF No. 7776] (the "Motion") filed by Hiram Pérez-Soto ("Movant"), plaintiff in the case captioned *Hiram Pérez Soto v. Judges of the Supreme Court, et als.*, Civil No. 19-01266 (CCC) (the "Litigation"), pending before the United States District Court of Puerto Rico (the "District Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1. On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof.

2. On March 25, 2019, in violation of the automatic stay pursuant to sections 362(a) and 922 of title 11 of the United States Code (the "Bankruptcy Code"),[3] Movant commenced the Litigation against several judges of the Supreme Court of Puerto Rico, judges from the Puerto Rico Appeals Court, judges from the Court of First Instance of Puerto Rico, directors of the Judicial Administration Office, other officials of the Office of the Solicitor General of the Commonwealth

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3] Bankruptcy Code sections 362(a) and 922 are incorporated into Title III of PROMESA pursuant to PROMESA section 301(a). The Commonwealth reserves all rights and remedies in connection Movant's violation of the automatic stay.

of Puerto Rico, and private parties (jointly, the "<u>Defendants</u>")[4] for events that allegedly occurred

before the commencement of the Commonwealth's Title III case on May 3, 2017 (the "<u>Petition</u>

<u>Date</u>").  In the Litigation, Movant seeks (a) a determination that the Commonwealth violated his

civil rights; (b) injunctive relief and declaratory judgments to void sanctions and judgments in

connection with Movant's disbarment from the practice of law; and (c) compensation pursuant to

42 U.S.C. § 1983 in an amount that ranges from $200,000.00 to $800,000.00 for each Defendant.

3.      On April 17, 2019, the Commonwealth filed in the Litigation a *Notice of Automatic

*Stay And Of Procedures for Filing Motions for Relief from the Automatic Stay In the*

*Commonwealth of Puerto Rico Title III Case*, requesting the District Court to take notice of the

automatic stay under the Commonwealth's Title III Case applicable to the Litigation.  On July 2,

2019, the District Court entered an order staying the Litigation.

4.      On April 23, 2019, several Defendants in the Litigation moved to dismiss the

action.  Discovery in the Litigation has not commenced.

5.      On July 1, 2019,[5] Movant filed the Motion, seeking relief from the automatic stay

to seek damages from the Defendants in the District Court and "*to be paid by government or former*

*government officials if the Commonwealth decides not to pay those damages.*"  Motion at 10-11,

¶ 6.  Pursuant to Act 9, the Commonwealth would be required to incur in the costs of litigation

---

[4]   The Defendants in the Litigation, which comprises of allegations of violations of civil rights, are officers, former officers, employees and/or former employees of the Commonwealth. Pursuant to Act 9 of November 26, 1975 ("<u>Act 9</u>"), P.R. Laws Ann. §3085, tit. 32, the Commonwealth may represent current or former officers and employees in connection with actions for alleged violations of civil rights.  The Commonwealth, through the Department of Justice ("<u>DOJ</u>"), is representing the Defendants in the Litigation, and would be required to disburse funds of the Commonwealth to pay any judgment against the Defendants pursuant to the provisions of § 3092 of title 32, unless such judgment is a result of gross negligence or intentional conduct by the Defendants.

[5]   Neither AAFAF nor the Commonwealth of Puerto Rico Department of Justice have any record of receiving a Lift Stay Notice from Movant pursuant to Paragraph III.R. of the *Ninth Amended Case Management Procedures* [ECF No. 7115-1].

entreated in the case and disburse funds to pay any judgments against the Defendants. *See* P.R. Laws Ann. § 3092, tit. 32.

6.     As further explained below, the Motion should be denied as Movant has failed to show that "cause" exists to lift or modify the automatic stay under sections 362(d) and 922(a) of title 11 of the United States Code (the "Bankruptcy Code"). As a potential prepetition, unsecured litigation claimant, Movant has failed to demonstrate the extraordinary circumstances necessary to show why his potential claim should not be addressed through the claims resolution process to be undertaken in the Commonwealth's Title III case. Modifying the automatic stay would allow Movant to receive preferential treatment of his prepetition, potential unsecured claim against the Commonwealth, while the Commonwealth's other prepetition, unsecured creditors must wait to have their claims treated under a plan of adjustment.

7.     From the outset, the Commonwealth engaged in substantial communications and negotiations with the Movant to attempt to resolve the Motion amicably by allowing the Litigation to proceed to final judgment in the District Court case, Case No. 19-1266(CCC).[6] Nevertheless, Movant refused to enter into any stipulation for the modification of the automatic stay unless such modification allows for the execution of certain judgments against the Defendants, which is essentially execution against the Commonwealth.  The Commonwealth therefore submits this objection to the Motion.

---

[6]   The Commonwealth does not object to modifying the automatic stay solely to allow for the Litigation to proceed to judgment; however, the Commonwealth does not consent to any waiver or modification of the automatic stay to permit the execution and enforcement of any judgment in the Litigation, but continues to engage with Movant in discussions to consensually resolve the Motion.

## **OBJECTION**

### I.    SECTION 362(B)(4) IS INAPPLICABLE BECAUSE MOVANT IS NOT A GOVERNMENTAL UNIT

8.    Section 362(b)(4) of the Bankruptcy Code provides that the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of an action or proceeding *by a governmental unit* . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's policy of regulatory power." 11 U.S.C. § 362(b)(4) (emphasis added).[7]  Section 362(b)(4) applies to actions and proceedings commenced or continued *by a governmental unit*. The purpose of this exception to the automatic stay is to "permit regulatory, police and criminal actions to proceed in spite of section 362(a)(1) . . ." such that the bankruptcy court does not become a haven for wrongdoers.  3-362 Collier on Bankruptcy ¶ 362.05[5][a] (16th ed.).  Accordingly, it provides private creditors no affirmative rights under any circumstance against a debtor.

9.    The Litigation was commenced and prosecuted by Movant, a private individual. Because Movant is not a governmental unit, he cannot assert that Bankruptcy Code section 362(b)(4) applies to actions brought by him.  *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."); *Memorandum Order Denying Motion of Cooperativa De Seguros Multiples' Motion for Clarification of the Automatic Stay and in the Alternative Relief from the Automatic Stay (Docket Entry No. 1276)* at 3-4 [ECF No. 1765] ("The UFA litigation has been commenced and is

---

[7] The term governmental unit is defined as "the United States; State; Commonwealth; District; Territory; municipality; foreign state; department; agency or instrumentality of the United States, … a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27)

being prosecuted by Cooperativa, a private entity, in accordance with the procedural provisions of the UFA, not by any governmental unit.  Section 362(b)(4) is, thus, inapplicable on its face."); *Memorandum Order Denying Motion of PV Properties, Inc. Regarding Automatic Stay (Docket Entry No. 332)* at 4-5 [ECF No. 1624] ("It is undisputed that Movant commenced the PREC Proceeding, and that PREC is not a party to that Proceeding.  PREC has not taken over prosecution of the Proceeding, and it seeks no relief in the Proceeding. . . .").

## II.   MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO MODIFY THE AUTOMATIC STAY

10.   Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. § 362(a).   Additionally, section 922(a) of the Bankruptcy Code, also applicable to Title III cases, provides that the Title III petition "operates as a stay … applicable to all entities, of …the commencement or continuation, including the issuance of process, of a judicial, administrative, or other action or proceeding, against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor."  11 U.S.C. § 922(a)(1).  The application of Bankruptcy Code sections 362(a) and 922(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543].

11.   "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997)

(citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986).

The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b),

applies to almost any type of formal or informal action taken against the debtor or the property of

the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R.

128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves one of the cardinal

purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the

preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's

ability to administer its case and engage in restructuring efforts without undue distraction or

interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he

automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of

diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cnty.*, 491 B.R.

277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the

breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted

routinely to allow claimants to assert their claims in state court, a municipality will not have the

time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*,

362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of

the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his

creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'"); *Delpit

v. Commissioner*, 18 F.3d 768 (9th Cir. 1994) ("Congress intended to give debtors a breathing spell

from their creditors and *to stop all collection efforts*, all harassment, and all foreclosure actions.")

(internal quotes and citations omitted) (emphasis added).

12.    An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West

22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1),

made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2nd Cir. 1990):

(1)   whether relief would result in complete or partial resolution of the issues;

(2)   the lack of any connection with or interference with the bankruptcy case;

(3)   whether the foreign proceeding involves the debtor as fiduciary;

(4)   whether a specialized tribunal has been established to hear the cause of action at issue;

(5)   whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)   whether the action essentially involves third parties rather than the debtor;

(7)   whether the litigation could prejudice the interest of other creditors;

(8)   whether a judgment in the foreign action is subject to equitable subordination;

(9)   whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)  the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)  the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

13.     Courts in this Circuit have adopted these "*Sonnax* factors."  *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this

district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in Sonnax and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

14.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

15.     Movant has not established that cause exists to modify the Title III stay. Instead, Movant is merely seeking preferential treatment on his potential unsecured claims against officers of the Debtor, collectible from the Debtor, by seeking the continuation of the Litigation and to enforce any judgment in his favor against the Defendants that the Commonwealth would ultimately have to pay pursuant to Act 9, which would undermine the purpose of the automatic stay "to prevent interference with, or diminution of, the debtor's property." *In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977); *see also In re Mu'min*, 374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) (allowing creditors to get a "head start on collection [is] precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution

of available assets."). The *Sonnax* factors point squarely toward maintaining the automatic stay and against the relief Movant seeks.

16.     ***Sonnax* Factor 1:**   The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against modifying the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See*, *e.g.*, *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

17.     Here, Movant does not identify any bankruptcy issue related to the Title III case that would be resolved by allowing Movant to enforce any potential judgment that could be entered by the District Court for the alleged violation of his civil rights, for which the discovery stage has not even commenced.  Indeed, Movant concedes that the Litigation is for damages to be paid by the government or former government officials.  Motion ¶ 6 (". . . Plaintiff is asking for damages. The damages will be paid by government or former government officials if the Commonwealth decides not to pay those damages . . . .").  Therefore, the first *Sonnax* factor supports denying the Motion.

18.     ***Sonnax* Factor 2**:  The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support modifying the stay.  First, lifting the stay to allow the resolution and execution of Movant's claim in a separate proceeding and forum, would interfere with the centralized claims resolution and distribution process contemplated under Title III.

19.     The claims adjustment process under Title III applies with respect to <u>all</u> debts, claims, and liens asserted against the Commonwealth (as such terms are defined in Bankruptcy Code section 101). *See* 48 USC § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case … [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 US 293, 302 (2003).

20.     As a potential, prepetition, unsecured creditor of the Commonwealth, Movant's claims are subject to the claim resolution process that will be undertaken in the Title III Case. Thus, requiring the Commonwealth to pay Movant's claims ahead of all other creditors would undermine the restructuring process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court…" *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009)  ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates

would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

21.     Second, lifting the stay to allow execution and enforcement of any potential judgment against the Commonwealth will interfere with the Title III case by diverting the Commonwealth's funds from its restructuring, thereby encouraging other creditors to seek similar relief. Should every plaintiff with an asserted prepetition claim be given *carte blanche* to execute their claims, the combined result would have a substantial and negative impact on the Commonwealth's fiscal plan and budget. This would impede the restructuring process, and thus, should be avoided. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").

22.     Thus, *Sonnax* factor 2 weighs in favor of denying the Motion, and Movant fails to satisfy his heavy burden to establish cause. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *see also In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006)  ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to

restructure … interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)). Accordingly, the second *Sonnax* factor supports denial of the Motion. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."); *In re City of Stockton*, 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (denying lift-stay motion where it would consume the time and attention of the debtor's officers).

23. **_Sonnax_ Factor 4**:  The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the Litigation at issue—does not support granting the Motion.  No specialized tribunal has been established to hear the Litigation, which was initiated before the District Court after the Petition Date. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

24. **_Sonnax_ Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed any financial responsibility for payment of any amounts in connection with the Litigation, and Movant does not allege any facts to the contrary. Thus, *Sonnax* factor 5 does not support granting the Motion.

25. **_Sonnax_ Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion.  This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties *rather than* the debtor.  *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc.*

12

*(In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at \*33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

26.     Here, although the Litigation seemingly involves third parties, because of the applicability of Act 9, and because the Department of Justice is representing the Defendants, the repayment of any damages in connection with the Litigation would have to be paid by the Commonwealth, unless such damages were the result of gross negligence or intentional conduct by the Defendants.    The Litigation therefore seeks payment of Movant's claim from the Commonwealth rather than any third party.  Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion.  *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

27.     ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of others creditors—does not support granting the Motion. The Commonwealth would have to expend considerable time and expenses to litigate the Litigation by responding to the complaint, conducting and finalizing discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial.  In the event of any judgment against any of the Defendants, the Commonwealth would likely be required to disburse funds to satisfy any judgment in the Litigation.  Furthermore, allowing Movant to obtain payment of his claim in full would prejudice the interest of other creditors, who must wait to have their claims treated under a plan of adjustment and pursuant

to the Title III claims resolution process. *See, e.g., In re City of Stockton*, 484 B.R. 372, 379

(Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of

the City treasury"). Accordingly, *Sonnax* factor 7 does not support granting the Motion.

28.     **_Sonnax_ Factors 10 and 11:**  The interest of judicial economy and the status of the

Litigation also weigh against the relief requested in the Motion.  The Litigation was filed almost

two years after the commencement of the Commonwealth's Title III case and was stayed by the

District Court shortly thereafter.    Motions to dismiss have been filed but not adjudicated.  Were

the Litigation to survive dismissal, the Defendants would need to answer, discovery would need

to commence and conclude, and other pretrial matters would need to be completed, all of which

will require the Commonwealth to expend considerable time and expense. As such, the parties are

nowhere near ready for trial in the Litigation and granting the Motion will neither promote judicial

economy nor result in the timely resolution of the issues.

29.     Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re

Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things,

"the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy

proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re

Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among

other things, "there has been no motion practice addressing the sufficiency of the pleadings or of

the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a

settlement, trial all remain to be done").

30.     **_Sonnax_ Factor 12:**  Balancing of the harms clearly favors denial of the Motion.

The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that

Movant would suffer if the automatic stay remains in place. The diversion of the Commonwealth's

resources to satisfy Movant's asserted claims, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III case. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment.

31.     On the other hand, postponing the resolution of Movant's asserted claim is a hardship that is shared with other creditors so the Commonwealth can focus on its restructuring and recovery efforts for the benefit of all creditors and to ensure that similarly situated creditors are treated the same.  Any claim Movant may have can and should be determined during the Title III claims process and treated pursuant to a plan of adjustment, like every other unsecured creditor's claims. Thus, on balance, *Sonnax* factor 12 weighs in favor of denying the Motion.[8]

## CONCLUSION

32.     Movant has failed to establish cause to justify lifting the automatic stay in the Commonwealth's Title III case to allow the Litigation to proceed or for Movant to enforce and execute upon any judgment in his favor. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: July 24, 2019.
      San Juan, Puerto Rico

                              Respectfully submitted,

                              **WANDA VÁZQUEZ GARCED**
                              Secretary of Justice

                              **WANDYMAR BURGOS VARGAS**
                              Deputy Secretary in Charge of
                              Litigation

---

[8]     The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

Department of Justice

s/*Susana I. Peñagarícano-Brown*
**SUSANA PEÑAGARÍCANO BROWN**
Director of Federal Litigation
and Bankruptcy Division
USDC NO. 219907
Puerto Rico Department of Justice
Federal Litigation Division
PO Box 9020192
San Juan, PR, 00902-0192
Tel. (787) 459-2799
*Counsel for Defendants*