# **EXHIBIT 19**

*Privileged and Confidential*
*Subject to FRE 408*
*DRAFT - March 13, 2019*

## Summary of Open Business Points

*General Issues*

1. <u>Lien Challenge Prior to Entry of 9019 Order</u>: If Lien Challenge is brought prior to 9019 order and is not stayed, bondholders shall have right to defend lien challenge without causing a termination event, provided that they do not seek to exercise any remedies under the Trust Agreement, including the appointment of a receiver.

    - <u>Note</u>:  The Government Parties believe that the parties should be able to terminate in this event.  The Government Parties originally conditioned the deal on the stay of the monoline motion so that no lien challenge would be filed.  Because of the timing issues, it now appears that the lien challenge may have to be filed as a stay of the monoline motion may not be possible prior to the date the response is due.  The Government Parties have agreed to seek a stay of the Lien Challenge pending the entry of the 9019 Order.  In the event that the stay is not granted and the 9019 Order is not entered for a substantial period of time (which is possible given the likely objections and the Court's generally speed), the Government Parties do not want to have to litigate a Lien Challenge with all of the bondholders while also pursuing the 9019.

2. <u>Stipulated Treatment Termination on Failure to Confirm Plan</u>:  The Term Sheet currently includes the Government Parties' position that if the Title III Court denies confirmation of the plan, the Definitive RSA terminates, the bondholders are no longer entitled to Stipulated Treatment and all litigation can resume.  The bondholders believe they should still be entitled to the Stipulated Treatment in exchange for a continued agreement not to litigate.

    - <u>Note</u>:  Bondholder counsel has expressed a willingness to agree to a limited Stipulated Treatment Termination if court denies confirmation of plan due to bondholder treatment.  In other circumstances for denial of confirmation, bondholders take the position that they have no say in the plan, with the Government Parties controlling the entire plan and plan process, and therefore cannot agree to take risk of Stipulated Treatment Termination if the Government Parties cannot propose a confirmable plan.

    - Government Parties believe that if they have done everything they can do to get a plan confirmed and the Title III Court denies confirmation, then the Parties should be free to terminate.

    - <u>Possible Compromise</u>:  We have discussed whether or not we can approach this issue by providing that the parties need to work in good faith toward plan confirmation and if confirmation is denied be required to attempt in good faith to modify the plan and resubmit before termination.  In this case, the bondholders would also require that they keep their accrued Administrative Claim.

3. <u>Full Implementation of Charge</u>:  The Government Parties are requiring that the full implementation of the charge (i.e., the "Outside Outside Date") be contingent upon any necessary legislative or regulatory approval.  The bondholders take the position that this requirement undoes the value and purpose of the Outside Outside Date, as future legislatures or regulators could refuse to issue the legislation or orders necessary to implement the full charge.

    - <u>Possible Compromises</u>:  We have discussed a couple of possible compromises.
        - **Option 1**:  9019 Order requires payment of the bondholders' administrative claims commence at the transition charge levels on the Outside Outside Date

1

*Privileged and Confidential*
*Subject to FRE 408*
*DRAFT - March 13, 2019*

- o **Option 2**: Requiring legislation authorizing the charge by a date certain with the Stipulated Treatment available to bondholders if the legislation does not pass.
- o **Option 3**: Requiring legislation for Full Charge to be wrapped into the transformation legislation.

4. <u>Force Majeure</u>:  AHG and Assured have indicated that they will negotiate a force majeure that provides for delay in the event of an unexpected event (e.g. another hurricane) but will not agree to a termination due to a force majeure occurrence.

5. <u>Waiver and Support Fees</u>:  Government Parties have indicated that no Tranche B Bonds will be issued on account of relending bonds due to waiver and support fees.  This is an open economic issue.

6. <u>Taxable Bonds</u>:  The issue of what happens if the parties cannot issue tax-exempt debt is still open.

<u>Note</u>:  In addition, the parties still need to address the Demand Protections and Securitization Protections as well as the modeling on the collections.

***Assured Issues***

1. <u>Consequence of Assured Individual Termination</u>:  If an Individual Termination event occurs as to Assured but the Definitive RSA has not otherwise terminated, then can Assured bring the Monoline Motion or similar relief?

   - <u>Note</u>:  Government Parties position is that once a party is bound to the Definitive RSA, they have settled the Monoline Motion or similar relief in the 9019 Order unless the Definitive RSA has terminated.  AHG members have agreed to Government Parties position as to their claims.

2. <u>Gross-Up of Administrative Claim</u>:  If the transaction has not closed by the Outside Date (i.e. June 30, 2020), then Assured has requested that they receive an Administrative Claim in the full amount of all of their policy payments made between May 1, 2019 and closing of the transaction.

   - <u>Note</u>:  Government Parties have not agreed to this gross-up.  AHG has indicated they also may have issues with it (or at least expect increased compensation as well if Assured receives the gross-up).

3. <u>Covenant on Information Regarding Transformation Process</u>:  Assured has requested that we provide more and more detailed information on the Transformation Transaction and process.  Cleary has indicated the P3 Authority is prepared to provide regular updates based on public information but believes providing more detailed information or confidential information could taint the process.

4. <u>Underwriting Costs on New Assured Bonds</u>:  Assured has indicated those should be paid by PREPA.  Government Parties believe that is a cost to be borne by Assured.

5. <u>Payment of Insurance Premium</u>:  Assured has indicated it expects to get its insurance premium whether or not it actually wraps new bonds.  Government Parties have said no.

PROFESSIONAL EYES ONLY                                                                                                                    PROSK_9019_00006011