```
 1  ||            UNITED STATES BANKRUPTCY COURT
    ||
 2  ||              DISTRICT OF PUERTO RICO
    ||
 3  ||
    || In Re:                      )      Docket No. 3:17-BK-3283(LTS)
 4  ||                             )
    ||                             )      Title III
 5  || The Financial Oversight and )
    || Management Board for        )
 6  || Puerto Rico,                )      (Jointly Administered)
    ||                             )
 7  || as representative of        )
    ||                             )
 8  || The Commonwealth of         )
    || Puerto Rico, et al.,        )      July 24, 2019
 9  ||                             )
    || and                         )
10  ||                             )
    ||                             )
11  || Puerto Rico Electric        )
    || Power Authority,            )
12  ||                             )
    ||              Debtors.       )
13  ||
    ||_____
14  ||
    || In Re:                      )      Docket No. 3:17-BK-3566(LTS)
15  ||                             )
    ||                             )      PROMESA Title III
16  || The Financial Oversight and )
    || Management Board for        )
17  || Puerto Rico,                )      (Jointly Administered)
    ||                             )
18  || as representative of        )
    ||                             )
19  || Employees Retirement System )
    || of the Government of the    )
20  || Commonwealth of             )
    || Puerto Rico,                )
21  ||                             )
    ||              Debtor.        )
22  ||
    ||_____
23  ||
    ||
24  ||
    ||
25  ||
```

```
 1 _____
 2 The Financial Oversight      )        Docket No. 3:18-AP-149(LTS)
   and Management Board for      )
 3 Puerto Rico,                  )        PROMESA Title III
                                 )
 4                 Plaintiff,    )        (Jointly Administered)
   v.                            )
 5                               )
   Puerto Rico Public            )
 6 Building Authority,           )
                                 )
 7                 Defendant.    )
 8 _____
 9                      OMNIBUS HEARING
10   BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN
11             UNITED STATES DISTRICT COURT JUDGE,
12     AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN
13             UNITED STATES DISTRICT COURT JUDGE
14   AND THE HONORABLE U.S. DISTRICT CHIEF JUDGE BARBARA J. HOUSER
15             UNITED STATES BANKRUPTCY COURT JUDGE
16 _____
17
   APPEARANCES:
18
   For The Commonwealth
19 of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
                            Ms. Laura Stafford, PHV
20                          Mr. Brian S. Rosen, PHV
                            Mr. Michael Firestein, PHV
21
   For the U.S. Trustee
22 Region 21:               Ms. Monsita Lecaroz Arribas, AUST
23 For Official Committee
   of Unsecured Creditors:  Mr. Luc A. Despins, PHV
24
   For the Adversary
25 Defendants:              Ms. Julie E. Cohen, PHV
```

```
 1   APPEARANCES, Continued:

 2   For Financial Guaranty
     Insurance Company:        Mr. Martin Sosland, PHV
 3                             Mr. Jason Callen, PHV

 4   For the Lawful
     Constitutional Debt
 5   Coalition:                Mr. Susheel Kirpalani, PHV

 6   For Ad Hoc Group of
     General Obligation
 7   Bondholders:              Mr. Mark T. Stancil, PHV

 8   For AmeriNational
     Community Services,
 9   LLC:                      Mr. Nayuan Zouairabani, Esq.

10   For Peter Hein:           Mr. Peter C. Hein, Pro Se

11   For Assured Guaranty
     Corporation and Assured
12   Guaranty Municipal
     Corporation:              Mr. William Natbony, PHV
13
     For the Official
14   Committee of Retired
     Employees of the
15   Commonwealth of
     Puerto Rico:              Mr. Landon Raiford, PHV
16
     For the QTCB
17   Noteholder Group:         Mr. Kurt A. Mayr, PHV

18   For the Puerto Rico
     Public Buildings
19   Authority:                Mr. Toby L. Gerber, PHV

20   For the Ad Hoc
     Group of PREPA
21   Bondholders:              Mr. Thomas Moers Mayer, PHV

22   For Ambac Assurance
     Corporation:              Ms. Atara Miller, PHV
23
     For Del Valle Group,
24   S.P.:                     Mr. Michael Craig McCall, PHV

25
```

```
 1   APPEARANCES, Continued:

 2   For Corporacion de
     Servicios Integrales
 3   de Salud del Area de
     Barranquitas, Comerio,
 4   Corozal, Naranjito and
     Orocovis:              Mr. John Mudd, Esq.
 5

 6   For the Fee Examiner:   Mr. Eyck Lugo, PHV

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by stenography.  Transcript produced by
25   CAT.
```

```
 1                           I N D E X

 2   WITNESSES:                                    PAGE

 3        None offered.

 4

 5   EXHIBITS:

 6        None offered.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                                    San Juan, Puerto Rico

 2                                    July 24, 2019

 3                                    At or about 9:48 AM

 4                          *      *      *

 5           THE COURT:  Again, buenos dias.  Good morning.

 6    Welcome counsel, parties in interest, and members of the

 7    public and press here in San Juan and in New York and the

 8    telephonic participants.  It is good to be here in San Juan.

 9           This is a significant time in the history of the

10    Commonwealth, one in which people have expressed hope and

11    pride, as well as their concerns.  I said at the first hearing

12    in these cases that the goal of these Title III proceedings is

13    to find a path forward, and that we must work in good faith to

14    enable Puerto Rico to emerge as a stronger place that provides

15    quality education for its future leaders, retains talented

16    people who can contribute to Puerto Rico's future, and is

17    building a vibrant economy that provides for public safety,

18    appropriate support for citizens and return for investors.

19    The Court remains committed to moving forward toward these

20    goals.

21           As usual, I remind you that consistent with court and

22    judicial conference policies, and the Orders that have been

23    issued, there is to be no use of any electronic devices in the

24    courtroom to communicate with any person, source, or outside

25    repository of information, nor to record any part of the
```

1    proceedings.  Thus, all electronic devices must be turned off

2    unless you are using a particular device to take notes or to

3    refer to notes or documents already loaded on the device.  All

4    audible signals, including vibration features, must be turned

5    off.

6         No recording or retransmission of the hearing is

7    permitted by any person, including but not limited to the

8    parties or the press.  Anyone who is observed or otherwise

9    found to have been texting, e-mailing or otherwise

10   communicating with a device from a courtroom during the court

11   proceeding will be subject to sanctions, including but not

12   limited to confiscation of the device and denial of future

13   requests to bring devices into the courtroom.

14        Our overall timing today is from now until noon or

15   thereabouts, and from 1:00 to 5:00 PM, as necessary.  Due to a

16   scheduling issue, I'm changing the order of the agenda.  So

17   we'll deal with the items numbered as Roman IV.13 through

18   Roman IV.18, and Section V of the Agenda immediately after the

19   contested claim objections.  And given the estimated times

20   listed on the Agenda and prior experience, the Court expects

21   that we'll turn to those items around 10:30 AM Eastern, local

22   time or earlier.

23        And so I'd now like to turn to the status reports.

24        Mr. Bienenstock, good morning.

25        MR. BIENENSTOCK:  Good morning, Judge Swain.  Martin

1   Bienenstock of Proskauer Rose, LLP, for the Oversight Board.

2   Your Honor, I think this morning I can contribute at least a

3   few minutes savings to the Court's agenda, of course subject

4   to the Court's questions.

5          In respect of the general status and activities of

6   the Oversight Board, a few items, Your Honor.  The First

7   Circuit granted a stay of its mandate through the Supreme

8   Court's determination of the petitions for certiorari.

9          On June 18, 2019, President Trump formally nominated

10  all seven voting board members to the United States Senate.

11  PROMESA Section 101(e)(5) provides that even though the Board

12  members' terms end August 31, 2019, the Board members serve

13  until they resign or are replaced.  Therefore, the continuing

14  existence of the Board appears assured through the foreseeable

15  future.

16         In terms of the Board's activities, the Board

17  continues to work on the following matters, among others:

18  Expanding creditor consensus in the PREPA restructuring, the

19  PREPA transformation, HTA restructuring, compiling more data

20  for the Commonwealth's proposed disclosure statement and

21  agreements with more creditor groups in the Commonwealth

22  restructuring.

23         In addition, the Board staff is very actively engaged

24  in the implementation and monitoring of its recently certified

25  new fiscal plan and budget for the Commonwealth.  The Board's

1   litigation docket remains active.

2           Concurrently with this Omnibus hearing, the

3   Governor's appeal is being heard by the First Circuit, where

4   the Governor is appealing rulings that fiscal plan provisions

5   he regards as policy choices, whether aimed at fostering

6   transparency, efficiency or the like, are mandatory as this

7   Court ruled, or not mandatory as he contends.  He is also

8   appealing the ruling that he cannot change the Board's

9   certified budget by reprogramming.

10          The Court is familiar with the activity on the

11  Board's Law 29 Complaint, for which a hearing on the

12  Governor's Motion to Dismiss is scheduled for August 2.  The

13  Municipality of San Juan is challenging the Board's

14  designation of it as a covered territorial instrumentality,

15  and the ERS bondholders have appealed to the First Circuit the

16  Court's ruling concerning Bankruptcy Code Section 552.  And

17  the Board's certiorari petition relating to the perfection of

18  the bondholders' security interest is still pending with the

19  United States Supreme Court.

20          The Board intends to file a proposed Plan of

21  Adjustment for the Commonwealth, if possible, within a few

22  weeks, and in any event, as soon as reasonably possible.  This

23  is somewhat later, Your Honor, than the 30 days I announced at

24  the last Omnibus hearing.  The delay is occasioned by the

25  Board's efforts to compile more data, explore more creditor

1    participation and adjust for current events.  Even when the

2    proposed plan is filed, the Board anticipates a period of

3    significant additional negotiations with additional creditor

4    groups before it requests a hearing on its proposed disclosure

5    statement.

6            Your Honor, that's the end of the remarks I prepared.

7    Of course if the Court has questions, I'm happy to try to

8    answer them.

9            THE COURT:  I don't at this time.  Thank you,

10   Mr. Bienenstock.

11           And the second item in terms of status reports is a

12   status report from AAFAF.

13           MR. RAPISARDI:  Good morning, Your Honor.  John

14   Rapisardi of O'Melveny Myers on behalf of the Puerto Rico

15   Fiscal Agency Financial Advisory Authority, AAFAF.

16           First and foremost, Your Honor, I wish to thank you

17   for the opportunity to address the Court this morning

18   regarding recent events at AAFAF.  Before providing a more

19   detailed update, I want to make sure that the Court is aware

20   that the AAFAF Board of Directors remain in place, and the

21   Board continues to guide and make decisions for that agency.

22           Jose Santiago Ramos is acting as the interim director

23   of AAFAF through mid August.  AAFAF expects a new executive

24   director will be named in short order.  The new executive

25   director will work closely with AAFAF's restructuring

1  professionals to make sure that there is continuity and no

2  interruption in ongoing tasks and projects.

3       Other critical members of the AAFAF team remain in

4  place and continue to work with AAFAF's legal and financial

5  professionals to further the restructuring effort.  AAFAF

6  receives direction and guidance from Hacienda and the

7  executive branch, for which continued timeliness is an

8  important factor and remains in place.

9       As this Court knows, over the past two years, AAFAF

10  has played a critical role in many matters before this Court.

11  AAFAF led the first consensual Title VI restructuring on

12  behalf of the Government Development Bank.  AAFAF played a

13  lead role in negotiating and implementing the Plan of

14  Adjustment for COFINA.  It worked in cooperation with the

15  Oversight Board to put in place a process to transform PREPA

16  and to reach consensus with the vast majority of PREPA

17  bondholders over the terms of the restructuring for PREPA.

18       AAFAF has developed and provided oversight in

19  development of fiscal plans and budgets for the Commonwealth

20  and multiple public corporations.  It has negotiated and

21  entered into multiple forbearance and restructuring support

22  agreements for other entities not in Title III, including a

23  series of forbearance agreements for PRASA and two recent

24  restructuring support agreements for PRIFA and PRIDCO.

25       On the litigation front, AAFAF played an essential

1   role in facilitating the Commonwealth's compliance with

2   extensive discovery requests.  AAFAF has cooperated and

3   collaborated with the Oversight Board and the Commonwealth's

4   creditors on many issues, although there have been moments of

5   disagreement and litigation on certain decisions of the

6   Oversight Board, or positions by creditors very consistent

7   with the interests of Puerto Rico, of the people of Puerto

8   Rico.

9          As this Court has delineated and observed, the

10  Oversight Board and the government play separate but equally

11  important roles in a monumental and historic restructuring

12  task that is at hand.  And AAFAF will continue to safeguard

13  the interests of Puerto Rico, the people of Puerto Rico, and

14  act in a constructive and cooperative fashion with all

15  parties, including the Board.

16         AAFAF has performed its duties over the past two

17  years under different management.  Due to recent events,

18  former CEO Christian Sobrino resigned his position.

19  Mr. Santiago Ramos took over as interim director of AAFAF

20  immediately upon Mr. Sobrino's resignation and agreed to serve

21  in that position through mid August.

22         As I mentioned, AAFAF expects his replacement to be

23  named soon.  Other critical members of the AAFAF team remain

24  in place and continue to work with AAFAF's legal and financial

25  professionals to further their restructuring effort.  AAFAF's

1  statutory mandate remains unchanged.  It expects to continue

2  to play a key and constructive role in the restructuring and

3  litigation matters pending before this Court.

4          This will, of course, include advancing the interests

5  of the people of Puerto Rico in connection with any proposed

6  plan of adjustment that's filed from the Commonwealth and/or

7  in any other Title III case pending before this Court.

8          At this time, if the Court allows, I will provide a

9  brief update on AAFAF's ongoing activities on various matters,

10  Your Honor.

11          THE COURT:  Yes, please.

12          MR. RAPISARDI:  On the PREPA front, AAFAF continues

13  to work on the 9019 settlement, as well as efforts to expand

14  the number of creditor parties to that settlement.  AAFAF is

15  also supporting the transformation process and working with

16  the Oversight Board on development of the terms of a plan of

17  adjustment for PREPA.

18          On COFINA, AAFAF is working on the exchange of

19  restructured sales tax bonds for tax exempt bonds, which is

20  scheduled to close on August 1st, along with defending appeals

21  related to the Plan of Adjustment.  On PRIDCO, P-R-I-D-C-O,

22  AAFAF is working to negotiate and draft the solicitation

23  materials and definitive documentation necessary to implement

24  the proposed Title VI transaction that is supported by a

25  majority of PRIDCO's bondholders.

1          With respect to PRIFA ports, AAFAF continues to work

2    with the Ports Authority and PRIFA to restructure the PRIFA

3    Ports bonds through an out-of-court restructuring under

4    PROMESA Section 207, in a transaction that is anticipated to

5    be supported by more than 90 percent of the applicable

6    bondholders.

7          On ERS, AAFAF continues to coordinate with the

8    Oversight Board on the development of factual issues needed

9    for hearings and legal briefing related to Act 106 and the

10   extent of the ERS bondholders' liens.  As the Court knows, and

11   Mr. Bienenstock mentioned, next week AAFAF will be arguing its

12   Motion to Dismiss the Act 29 lawsuit.  AAFAF is also joined in

13   the Oversight Board's papers and filed its own pleadings in

14   the PRIFA rum bond litigation.

15         AAFAF'S role is important for two reasons in this

16   matter.  First, PRIFA is not a Title III debtor, and AAFAF, as

17   PRIFA's fiscal agent, is the party with the power to hold the

18   movants to their contractual restrictions on bringing suit.

19   And second, as fiscal agent for PRIFA, PRIDCO and the

20   Commonwealth, AAFAF will necessarily take the lead on

21   addressing the Rule 2004 motion -- the 2004 motion to the

22   extent necessary.

23         With respect to undergoing discovery, including

24   Ambac's motion for pension discovery, AAFAF is working with

25   the various Commonwealth agencies and public corporations who

1   have been targeted.  AAFAF is also currently working with the

2   Oversight Board and legal advisors to review and reconcile the

3   over 165,000 proofs of claim that have been filed against the

4   Title III debtors.

5          I would like to emphasize for the Court that neither

6   AAFAF, nor its counsel, nor the government of Puerto Rico have

7   changed or modified your stated legal positions as it may

8   relate to any matters now pending before the Court.  Through a

9   future informative motion and other communications, AAFAF will

10  keep the Court promptly informed of any developments regarding

11  the future governance of AAFAF.

12         Finally, on a personal note, I wish to say it has

13  been truly, and will continue to be, a privilege and honor to

14  represent the people of Puerto Rico, which I've been

15  personally involved over the last two and a half years.  Last

16  night, in walking through the streets of Old San Juan, I was

17  profoundly struck and humbled with the passion, idealism,

18  peaceful public participation and democracy in action.  May

19  God bless the people -- may God bless and protect the people

20  of Puerto Rico.

21         Your Honor, if you have any questions, I am

22  available.

23         THE COURT:  Thank you, Mr. Rapisardi.

24         Is there anyone else by way of status reports?

25         (No response.)

```
 1              THE COURT:  All right.  Item II on the Agenda is the
 2  fee applications, but those are being dealt with on paper.
 3              Sir.
 4              MR. LUGO:  Good morning, Your Honor.  Eyck Lugo on
 5  behalf of the Fee Examiner, very briefly.
 6              THE COURT:  Oh, I'm sorry.
 7              MR. LUGO:  Good morning.
 8              THE COURT:  Good morning.
 9              MR. LUGO:  Very briefly, as the Court points out, the
10  only thing pending in today's Agenda pertaining to the Fee
11  Examiner is the Fee Examiner's Third Interim Consolidated
12  Application.  The objection deadline for that application was
13  July 23rd.  No objections have been received, so we will be
14  filing a proposed order at the conclusion of today's
15  hearing.
16              THE COURT:  I look forward to that.  Thank you.
17              MR. LUGO:  Thank you, Your Honor.
18              THE COURT:  It's good to see you.
19              So this takes us now to Agenda Item III, which is the
20  uncontested claims objections.
21              Good morning, Mr. Rosen.
22              MR. ROSEN:  Good morning, Your Honor.  Thank you very
23  much.  Brian Rosen from Proskauer Rose.
24              Your Honor, if I could, what I'd like to do is
25  perhaps extend the status report with respect to the claim
```

1  itself, give the Court a slight update from what happened from

2  the June Omnibus hearing through this period as well, and also

3  ask one question.  When you were realigning some matters on

4  the Agenda, I just want to make sure -- there was, right after

5  the contested claims objections, the motion with respect to

6  the implementation -- or with respect to the alternative

7  dispute resolution procedures.  Is that to be pushed to the

8  back as well?

9          THE COURT:  Yes.

10          MR. ROSEN:  Okay.  Thank you.

11          Your Honor, with respect to the uncontested claims,

12  we have submitted certificates of no objection, Your Honor.

13  And we noticed yesterday on the docket the Court was entering

14  orders with respect to I think virtually all of those that had

15  been submitted by way of a CNO.  I'll get to the June ones in

16  a second, Your Honor, which were still outstanding based upon

17  your request for a recertification, if you will, or an

18  auditing process.  I'll go through that now.

19          THE COURT:  Thank you.

20          MR. ROSEN:  Your Honor, we wanted to inform the Court

21  generally regarding the responses that were filed in

22  connection with the June Omnibus objections, as well as the

23  overall claim process, including the number and the amount of

24  claims that remain pending and with respect to any concerns

25  that were raised by the Court.

1    First, as the Court recalls, I informed the Court

2    that following the bar date Order and the logging in of all of

3    the claims by Prime Clerk, the debtors and the Court, we were

4    both looking it over, and as Mr. Rapisardi mentioned, over

5    165,000 proofs of claim that -- had been filed in liquidated

6    amounts that were in excess of 43 trillion dollars.  And I say

7    liquidated because that is an important issue as we go along.

8    Assuming that orders are entered, Your Honor, with

9    respect to all of the claims objections that have been filed

10   to date, including those from June that the Court

11   preliminarily ruled upon, as well as those that are pending

12   today, we believe, Your Honor, that the claims process will be

13   down to approximately 145,000 proofs of claim and totaling in

14   liquidated amounts in excess of 345 billion.

15   So we've gone down from the trillions to the

16   billions, but there is still a lot that remains, Your Honor.

17   And obviously a lot of those are with respect to funded

18   indebtedness, and we continue to try and get rid of the

19   duplicative claims there.

20   Of the 145,000 claims, Your Honor, over 100,000 of

21   those were filed, even though the bar date Order expressly

22   said that they did not need to be filed because they were not

23   the types of proofs of claim that we were going to be

24   considering here.  And we'll get to what we refer to as the

25   admin reconciliation process, but the majority of those, Your

1  Honor, were for tax refunds, union grievances and benefit

2  plans that we did not think were appropriate to be bringing

3  before the Court at this time.

4        Your Honor, with respect to even those 100,000, over

5  80,000 of those proofs of claim were filed in blank, or with

6  no documentation to support the claim itself.  And it's very

7  unfortunate what unfolded or what we've been able to

8  ascertain.  Many people were told, convinced even, that they

9  were required to file a proof of claim, even though the Order

10 said they were not required to do so.  And they were charged a

11 fee by persons who assisted them in connection with the filing

12 of those proofs of claim.

13       So we have all of these claims on file, Your Honor,

14 in blank, with no documentation.  And that will get us to part

15 of the process that we want to get to, when we get to the ADR

16 procedures motion, Your Honor, in connection with a

17 supplemental mailing, to try and get some more information

18 from the multitude of people who filed those claims in blank.

19       Your Honor, with respect to the concerns that you

20 raised at the June hearing as to the claims that you

21 preliminary ruled upon and where there might have been a

22 discrepancy or two, first I'd like to note that in the

23 courtroom, we have today Ms. Julie Hertzberg and Mr. Jay

24 Herriman, managing directors from Alvarez & Marsal.  They are

25 working with the Oversight Board and with AAFAF in connection

1    with the claims reconciliation process.  And to the extent

2    that I'm not able to answer any questions, I just want you to

3    know that they are here to address any concerns that remain

4    for you.

5            THE COURT:  Thank you.

6            MR. ROSEN:  Your Honor, the objection process has

7    been extremely educational for all of us with respect to the

8    complexity of the claims, the process and the claims that have

9    been filed to date.  It alerted both the Oversight Board, A&M

10   and AAFAF to potential concerns with respect to the claims,

11   including the fact that claimants did not always understand

12   the intent of the amendment box and claimants often filed very

13   similar claims that nevertheless asserted different

14   liabilities.

15           As a result of that educational process, the debtors

16   and the Oversight Board and A&M re-reviewed certain Omnibus

17   objections in advance of the June Omnibus hearing.  And at the

18   Court's request, we proceeded to re-review each and every

19   claim subject to the June Omnibus objections, and every claim

20   subject to the July Omnibus objections as well in the weeks

21   that were following the June hearing.

22           In undertaking this additional review, the

23   reconciliation agent, A&M, implemented certain changes to the

24   procedures by which they reviewed claims.  From a

25   technological standpoint, Your Honor, the reviewers used

1    side-by-side computer monitors to ensure that each page of the

2    claims flagged as duplicates could be reviewed simultaneously.

3         In assessing whether a claim is, in fact, duplicative

4    or subsequently amended, inferences were decided in favor of

5    retaining the creditor's claims wherever possible.  For

6    example, to the extent that any claims were not identical

7    because, for example, the supporting documentation did not

8    exactly match, the claim was removed from the objection.

9         On their face, many claims appeared to be duplicates

10   with only slight changes between the claims within the

11   supporting documentation, and in many instances, Your Honor,

12   the change was as small as one letter.  To the extent that

13   there was any difference between the two claims, again, they

14   were removed in an abundance of caution and not subject to an

15   Omnibus objection.

16        If a claimant checked an amendment box, we

17   re-reviewed both the original and the amended claim to

18   determine whether it was, in fact, the intent of the claimant

19   to amend the original claim.  In light of certain responses

20   received, we now understand that not every claimant who

21   checked the box indicating they were amending their claim in

22   fact meant to amend the claim.

23        Upon reviewing certain amended claims, if it appeared

24   that the claims were actually seeking to assert different

25   liabilities, we removed them from the Omnibus objections.

1   These responses educated us to the possibility of problems

2   with a wider pool of claims subject to the July Omnibus

3   objections.  And as a result, where we had concerns about

4   whether the parties intended to amend their claims, we reached

5   out to the parties to ensure we did our best -- to ensure,

6   excuse me, we did our best not to remove any parties where,

7   one, it looked like they didn't actually intend to amend a

8   claim but we're adding to it, or were actually including

9   additional bases for the claim; or two, they filed duplicate

10  claims but were intending to file claims on behalf of

11  different parties, thus the one letter change sometimes, Your

12  Honor.

13          After all the claims were re-reviewed using these

14  protocols, each and every claim pair was reviewed by

15  Mr. Herriman to ensure -- and Ms. Hertzberg to ensure that

16  everyone was properly treated.  And to the extent, Your Honor,

17  that we even had doubts after this review process, we removed

18  the claims, even if they were claims we would typically keep

19  on an objection, just to provide additional protection for the

20  claimant until follow-up inquiries can be made through the

21  subsequent mailing process, if and when it is approved by this

22  Court, pursuant to the ADR motion that we have on file.

23          So based upon that review process, Your Honor, we

24  then certify the June Omnibus Hearing objections so -- that

25  were preliminary approved by the Court.  And those remain

1   pending before the Court, Your Honor, but we believe that we

2   have removed all of those where there might have been a

3   possibility of a duplicate claim that was intended to be

4   something else.

5        And what is left, Your Honor, from that June hearing

6   now are just the claims that we believe were rightfully

7   subject to the Omnibus hearing in June.

8        THE COURT:  I'm very glad to hear that you have gone

9   through this meticulous process and changed baseline elements

10   of the process to ensure that claim filings are properly

11   understood and that people understand what's going on.

12        Now, just as to pure mechanical status, are you

13   saying that my chambers have received the certification and

14   updated Order and you're waiting to see that hit the docket?

15        MR. ROSEN:  Yes, Your Honor.  With respect to the

16   June Omnibus proceeding, yes.

17        THE COURT:  All right.  Well, I'm sure that we're

18   dealing with that expeditiously.

19        MR. ROSEN:  I'm sure, Your Honor.

20        One final note, Your Honor.  I mentioned the

21   administrative reconciliation procedures.  We've been working

22   with AAFAF.  And it's just due to the magnitude of the issue.

23   It's an extremely challenging process, but the goal here is to

24   ultimately remove from the claims registry over 100,000 claims

25   and have that funneled through the administrative

1    reconciliation procedures that will be subject to approval by

2    this Court.

3            We think it's important not just that it be removed

4    and dealt with internally through the government processes,

5    but in order to give comfort not only to the claimants but

6    especially to the Court and to the Oversight Board that those

7    claims are being treated, there will be time frames at which

8    those claims have to be handled, and there will be

9    requirements to report back to the Court the processes being

10   undertaken and the progress being made with respect to those

11   types of claims.

12           As I indicated, there are three buckets, Your Honor:

13   The tax refund claims, which are usually routine tax refund

14   claims; the union grievances issue; as well as the pension and

15   benefits programs.  So we will be filing that, Your Honor,

16   hopefully in the next several weeks as we continue to refine

17   that process with AAFAF.

18           THE COURT:  And so in very broad terms, and I know

19   that you've previewed this in other ways before, but to make

20   sure that I understand and that everybody understands

21   conceptually, there are those types of matters that even

22   outside the Title III, before the Title III, have an

23   administrative structure and an administrative adjudication

24   process within the Commonwealth government.  And you're going

25   to give me a formal proposal to have that administrative

1   treatment continue, at least in the first instance.

2           And I assume that those administrative mechanisms, if

3   things remain contested, have some sort of provision for

4   seeking review.

5           MR. ROSEN:  Exactly, Your Honor.

6           THE COURT:  But you intend to channel those types of

7   claims through those administrative procedures with the hope

8   that most of them will be resolved in that context, and then

9   whatever is not resolved, there would be some clear path for a

10  final resolution of those that coordinates with the Title III

11  proceedings?

12          MR. ROSEN:  Absolutely, Your Honor.  That's our

13  goal.

14          THE COURT:  Thank you.

15          MR. ROSEN:  Thank you.  If I could, Your Honor, what

16  I'd like to do is turn over the contested matters to my

17  colleague, Ms. Stafford.

18          THE COURT:  I am not quite done with the uncontested

19  matters.

20          MR. ROSEN:  Okay.

21          THE COURT:  There is one aspect of the uncontested

22  matters about which I had some questions that were not

23  addressed by your review of the process.

24          MR. ROSEN:  Okay.

25          THE COURT:  And that is the objections seeking to

1    expunge claims that map to Class 10 of the COFINA Plan of

2    Adjustment.  These are claims that are subordinated pursuant

3    to Section 510(b) of the Code under the Confirmed COFINA Plan,

4    but were classified under the COFINA Plan.  That Plan provides

5    that they receive no dividend, but that is a provision in the

6    Plan.  And then the Plan overall provides that all

7    distributions and rights afforded under the Plan are deemed to

8    be -- and in exchange for, and in complete satisfaction,

9    settlement, discharge and release of all claims.

10             So what I don't understand is why we would separately

11   expunge claims that, by terms of the Plan, have already been

12   discharged.

13             MR. ROSEN:  Your Honor, only because they were

14   remaining on the claims registry.  We don't care how --

15             THE COURT:  But why shouldn't they remain on the

16   claims registry if they're dealt with?  Because you're not

17   expunging from the claims registry the claims that are

18   actually getting replacement securities.  So why aren't they

19   treated in that same way?

20             MR. ROSEN:  That is fine with us, Your Honor, if you

21   want to handle it that way.

22             THE COURT:  I think that's more consistent with the

23   way the rest of the claims have been handled.

24             MR. ROSEN:  That's fine, Your Honor.

25             THE COURT:  And so will you file a withdrawal of

1    those objections?

2            MR. ROSEN:  Yes.  We'll handle it that way, Your

3    Honor.

4            THE COURT:  Thank you.  I appreciate that.

5            MR. ROSEN:  Thank you.

6            Your Honor, if I could pass the podium over to

7    Ms. Stafford now.

8            THE COURT:  Yes.  Thank you.

9            Good morning, Ms. Stafford.

10           MS. STAFFORD:  Good morning, Your Honor.  Laura

11   Stafford of Proskauer Rose on behalf of the Oversight Board.

12   I'll begin with the 35th Omnibus Objection, the first of the

13   contested objections.

14           THE COURT:  Yes.

15           MS. STAFFORD:  This objection was filed to disallow

16   418 proofs of claim that were filed against HTA.  Each of

17   these proofs of claim are duplicates of master proofs of claim

18   that were filed in the HTA Title III case.  Only one response

19   to this objection was received.  It was filed by Edwin Emery

20   as trustee of a revocable trust.

21           Both the proof of claim and the response that was

22   received provided a CUSIP number, which is duplicative of and

23   covered by a master proof of claim that was filed on behalf of

24   HTA bondholders in the HTA Title III case.  And so as a

25   result, Your Honor, we would request the Court grant this

1   Omnibus Objection, not withstanding the response, and disallow

2   the claim subject to it.

3           THE COURT:  I've reviewed the objection and the

4   response, and I find that because the CUSIP number matches the

5   claim, the objection is well taken.  Therefore, the objection

6   is sustained and the response is overruled.

7           MS. STAFFORD:  Thank you, Your Honor.

8           THE COURT:  And that is ECF number 7243.  Is that --

9   I'm sorry.  No.  ECF number 8065 is Mr. Emery's response.

10          MS. STAFFORD:  Correct, Your Honor.

11          Moving on to the next contested claim objection, Your

12  Honor, this is the 39th Omnibus Objection, which seeks to

13  disallow 99 proofs of claim filed against HTA and ERS on the

14  basis that they purported to assert liabilities associated

15  with either bonds or money loaned, but either didn't provide

16  sufficient information for the debtors to determine who issued

17  the bonds, or attempted to assert liabilities associated with

18  bonds issued by nondebtors, or otherwise attempted to assert

19  bonds issued by one debtor against another debtor.  So an HTA

20  bond against ERS or vice versa, without providing any basis

21  for asserting such liability.

22          Four responses were received.  The first of those was

23  filed by Rafael Castro Lang, and it's ECF 7584.  And it

24  relates to proof of claim number 23624.  The response included

25  an ERS bond CUSIP number, which is duplicative of and covered

1    by another master proof of claim that was filed on behalf of

2    ERS bondholders in the ERS case.

3         And so we request that the Court grant the objection

4    as to this claim, not withstanding the response, on the

5    grounds that this claim is duplicative.

6         THE COURT:  The objection is sustained.

7         MS. STAFFORD:  Thank you, Your Honor.

8         The next response that was filed was filed by Jesus

9    Librada Sanz, and this is ECF number 7579 and relates to proof

10   of claim number 60916.  This proof of claim originally

11   attached an investment account statement that contained only

12   mutual funds and had no supporting documentation of ERS bonds

13   owned by the claimant.  The response that was filed included

14   documentation regarding an ERS bond, and the CUSIP number that

15   is associated with that bond is duplicative of and covered by

16   a master proof of claim filed in the ERS case on behalf of ERS

17   bondholders.

18        And so we'd request the Court grant the objection

19   with respect to this claim, not withstanding the response on

20   the grounds the claim is duplicative.

21        THE COURT:  When we looked at the documentation and

22   tried to make sure we could follow the path through and

23   connect the dots, we didn't see in the referenced master proof

24   of claim, CUSIP numbers or other specific information tying

25   the bonds that Mr. Librada Sanz has to the bonds covered by

1    the master proof of claim.

2           Now, we may have missed something, but if you would,

3    just explain how you've matched them up.

4           MS. STAFFORD:  I believe, Your Honor, that this

5    master proof of claim relates to a specific type of --

6           THE COURT:  Sorry.

7           MS. STAFFORD:  That this master proof of claim

8    relates to a specific series of bonds which are -- which are

9    the same series as this ERS bond CUSIP number, but we'll be

10   happy to send something supplemental to clear that up for Your

11   Honor.

12          THE COURT:  I'd be grateful for that.

13          MS. STAFFORD:  Sure.

14          THE COURT:  And so assuming that the dots are

15   connected a little more clearly, that objection will be

16   sustained.

17          MS. STAFFORD:  Thank you, Your Honor.

18          The next response that was received was filed by Joe

19   Pace, and this is ECF number 7680 and proof of claim number

20   5427.  This proof of claim originally also had no supporting

21   detail or CUSIP information, but the response that was

22   submitted included an ERS bond and a CUSIP number which is

23   duplicative of and covered by a master proof of claim filed in

24   the Title III case on behalf of ERS bondholders.

25          And so we again request the Court grant this

1   objection, not withstanding the response, on the grounds the

2   claim is duplicative.

3         THE COURT:  The objection is sustained.

4         MS. STAFFORD:  Thank you, Your Honor.

5         And the last response that was received was filed by

6   Edwin Emery as trustee of a revocable trust.  The proof of

7   claim originally had no supporting detail, but the response

8   that we received did include supporting documentation that's

9   sufficient to allow us to reconcile the claim.  So we've

10   withdrawn our objection while we review and analyze that

11   documentation.

12         THE COURT:  And so at this point, no further action

13   on the part of the Court is necessary?

14         MS. STAFFORD:  No, Your Honor.

15         THE COURT:  Thank you.

16         MS. STAFFORD:  And so otherwise, Your Honor, we'd

17   request the Court grant the Omnibus Objection with respect to

18   the claims with which no responses were received.

19         THE COURT:  And so just to help me update my own

20   notes, so you've withdrawn the response -- withdrawn the

21   issues as to the response of Quebrada Bonita CRL and Oaktree

22   as well?

23         MS. STAFFORD:  Yes.  We've resolved the issues with

24   both creditors.  The Quebrada Bonita response, following the

25   filing of the reply demonstrating how their claim was

1    duplicative of a master proof of claim, and the Oaktree

2    response was resolved between the parties.  The claim was

3    ultimately marked as docketed in error, the claim that we had

4    objected to.

5           THE COURT:  Thank you.

6           And so the remaining outstanding contested objections

7    are sustained with the caveat that a further supplement will

8    be filed with respect to the Librada Sanz objection.

9           MS. STAFFORD:  Thank you, Your Honor.

10          THE COURT:  Thank you.

11          MS. STAFFORD:  And turning now to the 45th Omnibus

12   Objection.  This objection seeks to partially disallow and

13   partially reclassify seven proofs of claim.  In each instance,

14   a portion of the claim should have been filed in either the

15   Commonwealth's or PREPA's Title III case, and another portion

16   of the claim purports to arise from bonds, mutual funds or

17   money loaned but fails to provide sufficient information for

18   the debtors to determine the validity of that portion of the

19   claim.

20          One response was received, filed by Mr. De Osuna and

21   Ms. Velez Perez.  The original proof of claim that was filed

22   against ERS did not include any information regarding ERS

23   bonds.  However, the supporting documentation that we've

24   received does allow us to understand and reconcile the claim.

25   So we've withdrawn our objection while we review and analyze

1     that documentation.

2            THE COURT:  Thank you.  And no further Court action

3     is necessary on that at this time?

4            MS. STAFFORD:  No.  So we'd request the Court grant

5     the objection as to the uncontested portions of the 45th

6     Omnibus Objection.

7            THE COURT:  And as to the others to which there's

8     been no response, are you now, having been through the process

9     of which Mr. Rosen spoke about, looking at the mechanics of

10     the process again, confident that the objections were well

11     taken with respect to the others?

12            MS. STAFFORD:  Yes, we are, Your Honor.

13            THE COURT:  Then the objection is sustained.

14            MS. STAFFORD:  Thank you, Your Honor.

15            Moving on to the 48th Omnibus Objection, which was

16     filed by the Commonwealth as to subsequently amended claims,

17     this objection seeks to disallow 500 proofs of claim that were

18     amended or superseded by a subsequently filed proof of claim.

19            The first response that was -- we received a number

20     of responses to this objection.  The first of those was filed

21     by Leida Pagan Torres on behalf of the Damexco Group.  This is

22     ECF number 7662, and it relates to proof of claim number

23     10282.

24            We understand from the response that Leida Pagan

25     Torres had filed proof of claim 10282 on behalf of Damexco,

 1   and subsequently a second counsel, James Bailey, had filed

 2   proof of claim 33003, also on behalf of Damexco.

 3         Proof of claim 33003 states that it amends proof of

 4   claim 10282.  The response does not dispute that proof of

 5   claim 33003 amends proof of claim 10282.  The claims assert

 6   the same liabilities and the claimant will not be prejudiced

 7   by the disallowance of proof of claim 10282 because the

 8   liabilities the claimant asserts are covered by proof of claim

 9   33003.

10         Counsel for the Oversight Board has confirmed with

11   both Leida Pagan Torres and James Bailey, in an effort to

12   resolve this response, and there appears to be some confusion

13   as to which attorney is authorized to represent the creditor

14   in these Title III cases.  And I understand that Leida Pagan

15   Torres may be here and wish to speak.

16         THE COURT:  I have been informed that Leida Pagan

17   Torres is here and wishes to speak.

18         So Ms. Pagan, would you please come to the podium?

19         MS. PAGAN TORRES:  Good morning, Your Honor.

20         THE COURT:  Good morning.

21         MS. PAGAN TORRES:  And to all the people here.

22         Yes, Your Honor.  We presented a proof of claim on

23   May 2, 2019, claim 10282; and on May 29, claim 33003 was

24   presented by James Bailey.  We had notice of this amendment,

25   which is -- certainly the only amends are the change of

1   notification, which is the name of the counsel Bailey and his

2   address, to be notified of all the documents or any payments

3   to be sent to Damexco, Inc.

4       That's the only change basically, because his claim

5   is exactly -- in all the documents, exactly as I have

6   presented my proof of claim.  I understand that being the

7   attorney at law of Mr. -- of Damexco, Inc., since 2001, we

8   have not received no notification from him stating us not to

9   continue notifi -- any claims on his behalf under these

10  procedures.  I have tried to contact Mr. Lou Brunell, who is

11  the president of Damexco, and he has not responded.

12      I was approached by counsel of the Oversight Board,

13  Ms. Alicia Carreno, last week.  She stated that she had

14  presented -- that they were going to present a motion to this

15  Court requesting to Mr. Lou Brunell to indicate to this Court

16  who he preferred to have, which attorney, to represent him in

17  the proof of claim or to keep notifications of any procedures

18  of his claim under the Oversight procedures.

19      And when I received the reply, it's a reply that says

20  that Your Honor will be and -- can't disallow whichever claim

21  you estimate should be disallowed.  In my position, I

22  understand that my claim, my proof of claim submitted, which I

23  should be notified, should be sustained because I have all the

24  information regarding the case, and I will be validating all

25  the rights of Mr. Lou Brunell, as well as Damexco, Inc.

1          In the alternative, it could be my client to indicate

2     to this Court who he prefers to maintain as the person to be

3     notified of any procedures of this case, or to include as both

4     attorneys.

5          THE COURT:  Well, I think I understand the problem,

6     and it sounds like it's a problem of the attorneys'

7     relationships with the client and discerning the client's true

8     wishes.

9          We do have to be able to move forward with the court

10    proceedings, and so let me make a suggestion that, first of

11    all, I'm sustaining the objection because there are these two

12    proofs of claim that were filed in a fashion that would have

13    one supersede the other.  And our ordinary process is to

14    expunge the older one as superseded by the amendment.

15         Is that correct, Ms. Stafford?

16         MS. STAFFORD:   (Nodding head up and down.)

17         THE COURT:  Ms. Stafford nodded yes, for the benefit

18    of those who can't see.

19         And so I think what I want to do is follow that

20    unless I got a -- we got a specific instruction to the

21    contrary from the client, and so what I would say is that we

22    would wait two weeks to enter an Order expunging 10282.  And

23    if it's filed on the docket, a statement signed by the

24    principal, or whoever can act for Damexco, indicating that the

25    claim of Damexco -- that you should be the contact person for

1  the claim of Damexco, not Mr. Bailey, we would take that

2  information as superseding what was written on this second

3  proof of claim filed by Mr. Bailey.

4          Is that feasible for us, Ms. Stafford?

5          MS. STAFFORD:  Yes, Your Honor.

6          THE COURT:  And I'm just asking the court PROMESA

7  administrator, is that -- does that present any problem for

8  the court?

9          COURTROOM DEPUTY:  Only a little.

10         THE COURT:  Only a little?  But you'll deal with it?

11         COURTROOM DEPUTY:  (Nodding head up and down.)

12         THE COURT:  Thank you.

13         So you have two weeks to get any change of contact

14  person filed as an informative motion on the docket, that

15  should clearly refer to the claim which will be kept as number

16  33003.  And it should include a statement signed by the

17  officer or principal of the company.

18         MS. PAGAN TORRES:  Okay, Your Honor.  Thank you.

19         The 14 days would be 14 days starting from now or --

20         THE COURT:  Yes.  So by two weeks from today.

21         MS. PAGAN TORRES:  Okay.  Perfect.  Thank you.

22         THE COURT:  Thank you so much.

23         MS. PAGAN TORRES:  Have a nice day.

24         THE COURT:  Thank you.  You, too.

25         MS. STAFFORD:  All right.  Your Honor, the next

1    response that was filed was filed by Jose A. Vazquez

2    Padilla.

3              THE COURT:  Oh, I'm sorry.

4              MS. STAFFORD:  I'm sorry.

5              THE COURT:  We had missed --

6              MS. STAFFORD:  No, you're right.  I'm sorry.

7              THE COURT:  But we had missed one, the response of

8    the Del Valle Group, number 7864, which on my notes was before

9    the Damexco.

10             MS. STAFFORD:  Yes.  You're right, Your Honor.  I

11   apologize.

12             THE COURT:  So we can go back to that --

13             MS. STAFFORD:  Sure.

14             THE COURT:  -- 7864?

15             MS. STAFFORD:  Yes.  And this is the 46th Omnibus

16   Objection, which was filed by HTA and ERS seeking to disallow

17   384 claims that had been amended or superseded by a

18   subsequently filed proof of claim.

19             This response was filed with respect to proof of

20   claim number 10 -- 190.  The claimant originally filed proof

21   of claim 190, and then subsequently filed 107011, which

22   amended proof of claim 190.

23             The claimant states in their response that they had

24   filed an amended proof of claim because the proof of claim

25   form had changed and they wanted to confirm that they provided

1   all the information required by the updated form.

2        The two claims assert the same liabilities, and the

3   same amount and have the same supporting documentation.  The

4   response does not dispute that proof of claim 107011 sought to

5   amend proof of claim 190, but it asks that proof of claim 190

6   only be disallowed if proof of claim 107011 is allowed.  And

7   we do reserve our right to object to proof of claim 107011 on

8   other grounds.

9        Because there's no substantive difference between the

10  two claims, and the claimant does not dispute that one sought

11  to amend the other, the claimant won't be prejudiced by the

12  disallowance.  And accordingly, Your Honor, we'd request that

13  you grant the objection with respect to this claim, but I

14  understand that counsel for Del Valle Group may be here as

15  well.

16       THE COURT:  Is counsel for Del Valle Group here?

17       MR. MCCALL:  Yes, Your Honor.

18       THE COURT:  If you wish to be heard, you have to come

19  to the podium.

20       MR. MCCALL:  Yes, I do wish to be heard.

21       THE COURT:  All right.  Thank you.

22       MR. MCCALL:  Good morning, Your Honor.  My name is

23  Michael McCall.  I represent Del Valle Group.

24       THE COURT:  Good morning, Mr. McCall.

25       MR. MCCALL:  A lot of what Ms. Stafford said we don't

1   disagree with in that I had originally filed, on behalf of Del

2   Valle Group, on August 31, 2017, on the original form, before

3   it was modified, a proof of claim.  We filed a subsequently

4   amended -- and it was intended to amend the proof of claim

5   that we originally filed on June 29th.

6         They're both in the same amount.  They represent

7   construction work that was done for the HTA.  The only

8   question I had -- and I did have some discussions with

9   Ms. Stafford and a brief call with Mr. Brian Rosen last week.

10  In the notice of Omnibus Objection 46, specifically 7269-4,

11  and in the overview that -- it says the Omnibus Objection

12  seeks to alter your rights as to any claims listed in the

13  column titled "claims to be disallowed."  Any claim that is

14  disallowed will be treated as though it were never filed.

15        And that's the one caveat I have, and we raised it to

16  see if we could come up with language that would understand

17  their concerns.  We're not interested in a duplicative

18  recovery.  We understand that we have a proof of claim in that

19  amount.

20        The one caveat I have is the way this is drafted,

21  they reserve the right to object to the later filed claim on

22  any other ground.  And what we had suggested, if we could

23  agree on language, is that we would reserve the right, if they

24  later object on a ground that applied only to the amended

25  claim filed on June 29th but would not have applied to the

1  August 31st, 2017, that we be allowed to reinstate.  That it's

2  not like it's a nullity and was never filed.

3         I had spoken with them last week, but I didn't hear

4  back, so that's why I'm here today, to state that.  If we

5  would agree to strike the original claim so that there's only

6  one on the docket, but if at some point on a ground that we

7  don't know at this point, they move to object to that second

8  one on a ground that would not have applied to the original

9  one, that we be allowed to argue that the first one should be

10  valid.

11         THE COURT:  Well, do you know of any difference

12  between the two of them that would support anything other than

13  like a timeliness objection?

14         MR. MCCALL:  I'm really not, because I understand

15  that they're both timely.  The first one was filed way before.

16  There was not even a bar date at the time.  So I think -- and

17  the other one's filed before the deadline on the bar date.

18         So on timeliness grounds, I don't see -- I think both

19  of them are timely.  It's just in advance, I don't know what

20  objections they do -- could conceivably do.  It may never come

21  to pass if they don't object to something that would

22  invalidate it.  We would just request language that --

23         THE COURT:  You're seeking reassurance that if there

24  is a later objection based on the amended claim, it's not

25  going to be something that could not have been raised in

1   connection with the original claim?  You're not asking them to

2   promise not to object to the amended claim on any ground at

3   all?

4          MR. MCCALL:  No.  I understand that they have the

5   right to do that and they reserve the right.  The only thing

6   we would request is if they later object to the second filed

7   amended claim on a ground that applies to that, but would not

8   have applied to the August 31st, the original one, that we be

9   allowed to argue that that -- the original one should be a

10   valid claim.

11          And I would agree to language, and I said we haven't

12   come to that, but they could propose a language, and I could

13   agree to language to state that contingency if Your Honor

14   would allow us to do so.  But --

15          THE COURT:  Let me hear from Ms. Stafford.

16          MS. STAFFORD:  Your Honor, given that the claims

17   assert the same liabilities and the same amount with the same

18   documentation, we're not sure, and we asked counsel to explain

19   to us if he had anything in mind, what substantive objections

20   we would assert to an amended claim that we couldn't have

21   asserted to the earlier claim.

22          And we don't want down the road to wind up in a

23   dispute as to whether or not an objection could have been

24   raised to the amended claim but not to the original claim.  So

25   given the fact that the two claims clearly are intended to

1    amend the other and intended to assert the same liabilities --

2    and Mr. McCall is correct, we wouldn't have a timeliness

3    objection with respect to the second proof of claim because it

4    was filed well in advance of the bar date.  We simply don't

5    see any reason for the language that he's requested.

6         THE COURT:  And you don't want to be in the

7    administrative place of having custom language as to one

8    response you're relating to one of 165,000 claims and don't

9    want to set a precedent of having some customized stipulations

10   that would permit some sort of look back in some event nobody

11   can identify?

12        MS. STAFFORD:  Correct, Your Honor.

13        THE COURT:  Thank you.

14        So because there -- first of all, because the law and

15   the structure that the Court has approved anticipates that an

16   amended claim supersedes entirely the claim that it amends, so

17   that there is no right to go back and say, well, the first one

18   was better in some respects, because we can't even imagine

19   what scenario that would come up realistically with respect to

20   this one, and because customizing carve-outs just is not

21   administrable, the response is overruled and the objection is

22   sustained as to the Del Valle Group claim.  And so it is that

23   later filed August claim that will be the operative claim

24   going forward.

25        MS. STAFFORD:  Thank you, Your Honor.

```
 1              THE COURT:  Thank you.

 2              MS. STAFFORD:  And did Your Honor have any other

 3    questions with respect to the 46th Objection before we return

 4    to the 48th?

 5              THE COURT:  No, I did not.

 6              MS. STAFFORD:  Thank you.

 7              And so we just request that the 46th Omnibus

 8    Objection also be granted with respect to the uncontested

 9    claims as well.

10              THE COURT:  Yes, the 46th Omnibus Objection is

11    sustained.

12              MS. STAFFORD:  Thank you, Your Honor.

13              Moving on to the 48th Omnibus Objection, I apologize

14    for taking them somewhat out of turn.  The secondary response

15    that was filed was filed by Lizandra Carrero Aviles.

16              This claimant had filed multiple claims and then

17    filed an amendment to one of those claims.  And in light of

18    the response received, we are working with the claimant to

19    understand which claim the amendment actually sought to amend.

20    And so we've withdrawn our objection as to this claim while we

21    work with the claimant to figure that out.

22              THE COURT:  So no action by the Court at this point?

23              MS. STAFFORD:  No, Your Honor.

24              THE COURT:  And is that the same for Vazquez Padilla

25    and Matos Santos?
```

1          MS. STAFFORD:  It is the same as with respect to

2    Vazquez Padilla, Matos Santos, and Medina Figueroa and Mendez

3    Hernandez, Your Honor.

4          THE COURT:  Very well.  So those will be carved out

5    of any proposed order, assuming that I sustain the remainder

6    of the objection?

7          MS. STAFFORD:  That is correct, Your Honor.

8          THE COURT:  All right.  And then Azize Alvarez?

9          MS. STAFFORD:  Yes, Your Honor.  This response is

10   with respect to proof of claim number 37571, which we

11   understand proof of claim number 36659 sought to amend.

12         Neither proof of claim 36659 nor proof of claim 37571

13   included any supporting documentation.  However, with the

14   response, we received details regarding a bond bearing a CUSIP

15   number which is covered by and duplicative of a PRIDCO master

16   proof of claim that was filed in the Commonwealth's Title III

17   case.

18         And so in light of the fact that this proof of claim

19   seeks to assert a PRIDCO bond that is covered by a master

20   proof of claim, we would request the Court grant the objection

21   and disallow this claim, not withstanding the response.

22         THE COURT:  The objection to the claim is

23   sustained.

24         MS. STAFFORD:  Thank you, Your Honor.

25         THE COURT:  And so the objections, the outstanding

1    objections in the 48th Omnibus are sustained.

2              MS. STAFFORD:  Thank you very much, Your Honor.

3              THE COURT:  Thank you.

4              MS. STAFFORD:  The next Omnibus objection on the

5    Agenda is the 49th Omnibus Objection, which is an objection of

6    the Commonwealth seeking to disallow 145 proofs of claim that

7    have been amended or superseded by a subsequently filed proof

8    of claim.

9              Only one response was received, and similar to the

10   responses discussed with respect to the 48th Omnibus

11   Objection, this claimant had filed multiple claims, sought to

12   amend one of those claims.  And in light of the response,

13   we're working with the claimant to understand which claim

14   they're seeking to amend, and have withdrawn our objection as

15   to their proof of claim while we work with the claimant on

16   that.

17             THE COURT:  Very well.

18             MS. STAFFORD:  So does Your Honor have any further

19   questions on the 49th Omnibus Objection?

20             THE COURT:  No.  The remaining aspects of the 49th

21   Omnibus Objection are sustained.

22             MS. STAFFORD:  Thank you, Your Honor.

23             That takes us to the 50th Omnibus Objection, which is

24   an objection of the Commonwealth seeking to disallow 254

25   proofs of claim that failed to comply with applicable rules

1   because they asserted liabilities against the Commonwealth in

2   respective bonds but failed to provide any documentation

3   regarding the bonds that are allegedly at issue.

4          We received six responses.  The first of them was by

5   Mr. Casanovas and Ms. Trinidad.  Their proof of claim

6   originally did not provide supporting documentation showing a

7   CUSIP number, but the response that was filed provided a

8   financial statement with a CUSIP number that reflects a PRIDCO

9   bond, which is duplicative of a master proof of claim filed on

10  behalf of PRIDCO bondholders in the Commonwealth's Title III

11  case.

12         And so we'd request the Court grant the objection as

13  to the claim and disallow it as duplicative, not withstanding

14  the response.

15         THE COURT:  The objection is sustained.

16         MS. STAFFORD:  Thank you, Your Honor.

17         The next response was filed by Ethel Alvarez.  This

18  proof of claim originally did not provide supporting

19  documentation.  However, the response that was filed does

20  include documentation that we will now use to try to reconcile

21  the claim.  So we've withdrawn our objection as to that claim

22  while we work with them.

23         THE COURT:  And the same with Santos Diaz?

24         MS. STAFFORD:  The same with Santos Diaz.

25         THE COURT:  Now UBS.

1          MS. STAFFORD:  The next response was filed by UBS and

2     it relates to nine proofs of claim that were filed lacking

3     supporting documentation and/or a CUSIP number.  Seven of

4     those proofs of claim, as UBS Trust Company stated in its

5     response, were subsequently amended.

6          The -- in light of those amendments, the original

7     claims should be disallowed because of the amended and

8     superseding amended proofs of claim that were filed.

9          THE COURT:  The objection is sustained and the

10    amended proofs of claim will be the operative proofs of

11    claim.

12         MS. STAFFORD:  Thank you, Your Honor.

13         The UBS Trust Company also responded with respect to

14    two other proofs of claim and does not dispute that they are

15    deficient.  It simply notes that they were not subsequently

16    amended.

17         One sought to assert bonds regarding GDB -- issued by

18    GDB, and one sought to assert bonds asserted by PREPA.

19    However, the response indicates that that -- that the bonds

20    issued by PREPA, there's a duplicative proof of claim filed

21    against PREPA in respect of the same bonds.

22         And so we request the Court grant the objection as to

23    the claim and disallow these two claims as deficient, not

24    withstanding the response.

25         THE COURT:  The objection is sustained and the claims

1  are disallowed.

2  　　　　MS. STAFFORD:  Thank you, Your Honor.

3  　　　　The next response was filed by Delia Hernandez.  This

4  is ECF number 7877.  The proof of claim originally did not

5  provide supporting documentation showing a CUSIP number, and

6  the response indicates that the claim was amended to include

7  supporting documentation.

8  　　　　We've received the amended proof of claim, and in

9  light of that amendment, the original proof of claim should be

10  disallowed as subsequently amended, not withstanding the

11  response.

12  　　　　THE COURT:  The objection is sustained.

13  　　　　MS. STAFFORD:  Thank you, Your Honor.

14  　　　　And the final response that was received was filed by

15  Mr. Popelnik.  And in light of the response which provided us

16  with additional documentation, we've removed the claim from

17  the objection in order to evaluate the documentation that was

18  provided by the claimant.

19  　　　　THE COURT:  Very well.  And so the objection in

20  the -- this is the 50th Omnibus?

21  　　　　MS. STAFFORD:  That's correct, Your Honor.

22  　　　　THE COURT:  It is sustained as to the remaining

23  outstanding items.

24  　　　　MS. STAFFORD:  Thank you very much, Your Honor.

25  　　　　The 56th Omnibus Objection is next on the Agenda.

1  This is an objection seeking to disallow 215 proofs of claim

2  filed against the Commonwealth that are duplicative of one or

3  more master proofs of claim filed in the Commonwealth Title

4  III case.

5       We received four responses.  The first was filed by

6  the Cooperativa de Ahorro y Credito de Empleados de la

7  Autoridad de Energia Electrica.  This proof of claim contained

8  documentation regarding a bond issued by the Puerto Rico

9  Public Financing Corporation, and indicated or provided a

10  CUSIP number that is duplicative of that master proof of claim

11  that was filed on behalf of PRPFC bondholders in the

12  Commonwealth Title III case.

13       The response does not dispute those facts and simply

14  notes that only one claim was registered and hadn't been

15  subsequently amended.  Because the response does not dispute

16  that the claim is duplicative of the master proof of claim, we

17  would request the Court grant the objection as to the claim

18  and disallow it as duplicative.

19       THE COURT:  The objection is sustained.

20       MS. STAFFORD:  Thank you, Your Honor.

21       The next response was filed by the Cooperativa de

22  Ahorro y Credito de Caparra, and this response, the proof of

23  claim provided documentation regarding bonds issued by the

24  PRPFC, which are covered by a PRPFC master proof of claim

25  filed in the Commonwealth Title III case.

1        And again, the response does not dispute these facts

2    and simply notes that only one claim was registered, and the

3    claim was not subsequently amended.  But because the response

4    does not dispute that the claim is duplicative of a master

5    proof of claim, we request the Court grant the objection and

6    disallow the claim as duplicative of the master proof of

7    claim.

8        THE COURT:  The objection is sustained.

9        MS. STAFFORD:  Thank you, Your Honor.

10       The third response that was filed was filed by Ariel

11   Ferdman and Fe-Ri Construction.  The proofs of claim that were

12   filed contained documentation again regarding PRIDCO bonds

13   bearing CUSIP numbers that are duplicative of and covered by

14   the PRIDCO master proof of claim that was filed on behalf of

15   PRIDCO bondholders in the Commonwealth Title III case.

16       The response does not dispute these facts and instead

17   notes that the claimants had not received proof of a master

18   proof of claim that was filed on their behalf.  Because the

19   response does not dispute that the claim is duplicative, we

20   would again request the Court grant the objection and disallow

21   the claim as duplicative.

22       THE COURT:  The objection is sustained.

23       MS. STAFFORD:  Thank you, Your Honor.

24       And the final response was filed by Evelyn Martino

25   Gonzalez.  This proof of claim contained documentation

1  regarding a PRPFC bond, which has a CUSIP number that is

2  duplicative of and covered by a PRPFC master proof of claim,

3  and again, the response does not dispute these facts and

4  simply notes the claimant was not informed of the filing of a

5  master proof of claim.  But because the response does not

6  dispute that the claim is duplicative of a master proof of

7  claim, we would ask the Court to grant the objection as to the

8  claim and disallow it as duplicative of the master proof of

9  claim.

10         THE COURT:  The objection is sustained.

11         MS. STAFFORD:  Thank you, Your Honor.

12         THE COURT:  And so the objection is sustained as to

13  the remaining outstanding items in the 56th Omnibus Objection.

14         MS. STAFFORD:  Thank you very much.

15         And finally, the last of the contested claim

16  objections, Your Honor, is the 59th Omnibus Objection, which

17  seeks to disallow 91 proofs of claim that were filed against

18  the Commonwealth and are duplicative of one or more master

19  proofs of claim filed in the Commonwealth case.

20         The first response was filed by Bradford C. Vassey.

21  His proof of claim provided supporting documentation regarding

22  a PBA bond, which is duplicative -- and provided a CUSIP

23  number that is duplicative of and covered by a master proof of

24  claim filed on behalf of PBA bondholders in the Commonwealth

25  Title III.

1          The response does not dispute these facts and simply

2     states that in Mr. Vassey's view, the objection was a waste of

3     debtors' resources.  But because the response does not dispute

4     that the claim is duplicative of the master proof of claim, we

5     would request the Court grant the objection as to the claim

6     and disallow it as duplicative of the master proof of claim.

7          THE COURT:  The objection is sustained.

8          MS. STAFFORD:  Thank you, Your Honor.

9          And the final response was filed by Evan Kallan.

10    This respondent's proof of claim submitted documentation

11    regarding a PRIFA bond and provided a CUSIP number that is

12    duplicative of a proof of master claim filed on behalf of

13    PRIFA bondholders in the Commonwealth's Title III case.

14         The response again does not dispute these facts and

15    simply states that the claimant's broker could not confirm

16    that a master proof of claim had been filed on Kallan's

17    behalf.  But because the response does not dispute that the

18    claim is duplicative of the master proof of claim, we ask the

19    Court to grant the objection, as the claim is duplicative, not

20    withstanding the response.

21         THE COURT:  The objection is sustained.  And the

22    objection in the 59th Omnibus is sustained as to the remaining

23    outstanding items.

24         MS. STAFFORD:  Thank you, Your Honor.

25         THE COURT:  Thank you.

1            Mr. Rosen.

2            MR. ROSEN:  Yes, Your Honor.  Just two points very

3    quickly.  One, Your Honor, we talked briefly about the

4    certification that we did in connection with the June

5    Omnibus.

6            THE COURT:  Yes.

7            MR. ROSEN:  I checked.  Those were filed under a

8    notice of certification.  If the Court has difficulty in

9    locating those, we're happy to provide copies to chambers if

10   you'd just let us know.

11           THE COURT:  We'll reach out if we need it.

12           MR. ROSEN:  Secondly, Your Honor, if I could ask that

13   Ms. Hertzberg and Mr. Herriman can be relieved, as the claim

14   objection process is concluded?

15           THE COURT:  Yes.

16           Thank you, Mr. Herriman and Ms. Hertzberg.

17           MR. ROSEN:  Thank you, Your Honor.

18           THE COURT:  All right.  So this is the point at which

19   we have altered the Agenda, so I am now going to take up the

20   items beginning at Roman IV.13 in the Agenda.  And those are

21   the various motions to stay contested matters and adversary

22   proceedings, pending the confirmation of the anticipated

23   proposed Commonwealth Plan of Adjustment, as well as motions

24   to establish claims objection procedures.

25           Before I hear from the parties, I will make some

1   extended remarks reflecting the Court's consideration of these

2   motions, the multiplicity of potentially interrelated bond-

3   and claim-related objections and adversary proceedings that

4   are currently pending, and how the Court believes we can best

5   move forward.

6          Many of these matters go to issues that could be key

7   or even gating issues in connection with the confirmation of a

8   plan.  As demonstrated by the Ad Hoc Group of General

9   Obligation Bondholders' efforts to press their conditional

10  objection relating to debt limit and balanced budget

11  implications for various tranches of bonds that are not yet

12  the subject of unequivocal claims objection motion practice or

13  adversaries, many of the issues raised in separate adversaries

14  or targeted claims objections implicate issues that could

15  affect other interests were they litigated or settled.

16         The Court's view is that putting all litigation of

17  such issues on hold pending successful efforts to confirm a

18  Commonwealth plan could unfairly and inefficiently hamper

19  potentially productive developments in the litigation and

20  mediation milieux.  On the other hand, litigation in

21  potentially dozens of separate silos, each of which is

22  jostling for the Court's attention and has numerous potential

23  intervenors concerned about collateral effects would be an

24  inefficient use of judicial and debtor resources.

25         The Court has come to the conclusion that with a plan

1    proposal on the horizon, the time has come for a pause of 120

2    days or so, during which the Oversight Board, AAFAF, the

3    official committees and other litigants must work with Judge

4    Houser, the mediation team leader, to identify key and

5    gating issues, assess their crosscutting and collateral

6    implications, seek to reach substantial consensus as to the

7    prioritization of matters for litigation or mediation, and

8    formulate a proposed schedule and appropriate notice and

9    participation mechanisms that are as standardized and

10   comprehensive as possible.

11         This short-term stay will apply to consideration of

12   the pending objections to claims of holders of bonds issued by

13   the Commonwealth, HTA, and ERS, as well as to litigation

14   regarding the PBA bonds, adversary proceedings concerning lien

15   priority, avoidance, and validity issues relating to such

16   bonds, the procedures motions, the motions to stay such

17   litigation pending confirmation, and Ambac's recently filed

18   motion to strike certain elements of the Plan Support

19   Agreement.

20         We will now display a list of these matters for the

21   reference of the parties present in court in San Juan and New

22   York, and this list will be made an appendix to the Order

23   imposing the stay that the Court intends to enter shortly

24   after today's hearing.

25         While the list is being displayed -- and we'll make

1    that full screen.  I think we can.  Yes.  All right.  Don't

2    worry about trying to copy this down.  I will just read off

3    the relevant docket entry numbers and AP numbers at this

4    point, but it will be an appendix to an Order that I expect to

5    file, you know, unless you all cut my head off and scream at

6    me and change my mind.  Yeah.  Which is possible, but --

7           Anyway, so the relevant docket entry numbers are as

8    follows:  In case 3283, the Commonwealth case, docket entry

9    numbers 4784, 5580, 5586, 5589, 6482, 7057, 7137, 7640, 7747,

10   7803, 7814, 7882, 8020 and 8141.  In adversary proceeding

11   18-149, docket entry 99.

12          In addition to those docket entry numbers, the stay

13   shall apply to the following adversary proceedings, which were

14   all filed in 2019.  So starting with 19-AP-281, also 282, 283,

15   284, 285, 286, 287, 288, 355, 356, 357, 358, 359, 360, 361,

16   also, 291, 292, 293, 294, 295, 296 and 297.

17          Now, the service of summons and complaints in the

18   enumerated adversary proceedings must, however, continue

19   during the stay.  All of the time -- all of the defendants'

20   time to respond to those adversary complaints will be extended

21   until 30 days after the termination of this stay, including

22   any extensions of the stay.

23          And a copy of the Order imposing this stay, which

24   includes a footnote addressing the service issue, must be

25   served with each summons and complaint served after today's

1    date and while the stay is in effect.

2          Participation in the work with Judge Houser will be

3    mandatory for the Oversight Board, AAFAF, the official

4    committees, and as directed by Judge Houser, all plaintiffs,

5    movants, opponents, defendants, respondents and parties in

6    interest who have appeared in the stayed matters to date.

7          The issues to be taken up for consideration in the

8    manner directed by Judge Houser include addressing procedures

9    and mechanisms for the resolution of the following issues, and

10   any additional issues identified by Judge Houser.

11         First, issues including validity, secured status if

12   any, and priority relating to bonds issued by the

13   Commonwealth, the PBA, HTA and ERS, some or all of which have

14   been the subject of challenges or claims objections.

15         Second, whether and to what extent there are common

16   issues underlying or implicated by the objections and

17   challenges to the bonds, whether across series of bonds issued

18   by particular entities or across bonds issued by particular

19   entities that can be litigated in a coordinated fashion.

20         Third, the validity and impact of revenue clawbacks.

21         Fourth, claims against underwriters and other service

22   providers in connection with debt issuances.

23         Five, anticipated gerrymandering challenges to

24   classification, including as between issues of securities and

25   as between types of unsecured claims.  For instance, pensions

1   versus general unsecured claims.

2          Six, identification and treatment of essential

3   services under a plan of adjustment.

4          Seven, treatment of claims based on alleged

5   violations of the Federal Constitution under a plan of

6   adjustment.

7          Eight, whether and to what extent cooperation of the

8   elected government is required to commence Title III or Title

9   VI proceedings that may be necessary to initiate and implement

10  a plan of adjustment.

11         And nine, mechanisms for efficient litigation of

12  issues, including, A, whether and how certain issues can be

13  litigated in advance of or in connection with consideration of

14  a disclosure statement; B, efficient mechanisms for

15  notification and participation of parties whose interests may

16  be affected by the determination of issues, including

17  identification of lead parties to act as proponents and

18  opponents of key propositions and coordinating of briefing and

19  argument; C, whether and when the creation of limited scope

20  committees might be necessary or advisable to address issues

21  unique to individual bondholders, such as the payment

22  structures of replacement bonds; and D, whether litigation of

23  certain issues can be left for confirmation hearing or post

24  confirmation proceedings.

25         The stay will expire on November 30th, 2019.  By

1  October 28, 2019, the mediation team leader, Judge Houser,

2  will either have, one, facilitated the filing of agreed or

3  substantially agreed scheduling orders with respect to the

4  stayed adversary proceedings and contested matters, and if a

5  plan of adjustment has been filed, the process for

6  consideration of an approval of a disclosure statement and/or

7  confirmation of such a plan; or, two, filed a report

8  identifying procedural issues upon which substantial consensus

9  has been achieved and any further recommendations by Judge

10  Houser, the mediation team leader.

11      In no event will the mediation team leader's report

12  disclose parties' positions on substantive matters without

13  that party's consent. The report will in all other respects

14  be focused on procedural matters.

15      Any responses to the report must be filed by November

16  4th, 2019, and the Court will hold a hearing in New York on

17  November 14th, 2019, to consider any proposed schedule and any

18  report from the mediation team leader. For calendar control

19  purposes, the stayed matters will be adjourned to the December

20  Omnibus Hearing date.

21      Judge Houser has graciously agreed to organize and

22  facilitate joint work on these key procedural matters.

23  Because I believe time is of the essence in getting to

24  resolution of key issues and confirmation of a plan, I have

25  also asked Judge Houser to determine whether mediation on any

1    of the issues is appropriate at this time and to commence such

2    mediation work that she deems appropriate.

3          Therefore, my Order will also provide that if the

4    mediation team leader believes it appropriate to commence

5    substantive mediation on any of the issues, including issues

6    relating to the confirmation of a plan of adjustment for any

7    Title III debtor, parties to the mediation agreement

8    identified by the mediation team leader will be required to

9    participate in any mediation sessions that she schedules.

10         Judge Houser is joining us by telephone today.  She

11   couldn't be here in person.  And I'd now like to invite her to

12   speak.

13         Judge Houser.

14         HONORABLE CHIEF JUDGE HOUSER:  Thank you, Judge

15   Swain.  I and other members of the mediation team are happy to

16   be of assistance to the Court and the parties with respect to

17   the organization of the myriad of adversary proceeding issues

18   and contested matter issues that are currently pending before

19   you, as you have delineated them.

20         I harken back to over two years ago when I attended

21   my first hearing in Puerto Rico, and you asked me if I would

22   assist the parties and the Court on a process to attempt to

23   resolve the Commonwealth-COFINA dispute.  The parties and I

24   were substantially able to come to an agreement on a process

25   that you ultimately approved, and, importantly, that process

1   worked.   Then through extensive substantive mediation of the

2   legal issues, we were able to achieve confirmation of a

3   substantially consensual plan for COFINA.

4        My hope is that working with the parties now, we can

5   be equally successful in coming to agreed or substantially

6   agreed scheduling orders, and then, in addition, through

7   substantive mediation, a substantially consensual plan or

8   plans for the remaining Title III debtors in these cases.

9        I will say, however, that I am not naive.   I

10  recognize that the number of issues, the number of adversary

11  proceedings are substantially more voluminous and the issues

12  are arguably more complex.   But we have excellent lawyers.   We

13  have excellent members of the mediation team.   And my hope is,

14  and my sincere belief is, that working together we will be

15  able to present you with substantially agreed scheduling

16  orders and processes for wrestling these issues to the ground,

17  unless, through substantive mediation, I am able to resolve

18  them so that you don't have to do that through further

19  litigation.

20       With that said, once your Order is entered on the

21  docket, Judge Swain, the parties should expect to hear from me

22  by e-mail.   And we will get the process first of working on

23  the procedural issues you've identified moving forward, and

24  after discussions with the parties or representatives of

25  groups of parties, we will see if it's appropriate to begin

1   substantive mediation promptly.

2          Thank you for the opportunity to speak to you and the

3   parties.

4          THE COURT:  Thank you, Judge Houser.

5          Now, Judge Houser and I have just delivered a lot

6   that you probably didn't expect, so I would suggest -- well,

7   what I'm going to do is give us a 15-minute break now so

8   everybody can collect their thoughts, and then Judge Houser

9   and I will hear remarks from counsel.

10         So we will reconvene at 11:30.  That's 15 minutes

11   from now.  Thank you all very much.

12         (At 11:14 AM, recess taken.)

13         (At 11:35 AM, proceedings reconvened.)

14         THE COURT:  Please be seated.

15         And Judge Houser, are you still there?

16         (No response.)

17         THE COURT:  Well, I imagine she'll be rejoining us

18   and we can proceed and she will be there.  So I propose that

19   --

20         HONORABLE CHIEF JUDGE HOUSER:  Judge Swain, I'm

21   sorry.  I am here.  I was muted and needed to unmute.

22         THE COURT:  All right.  Judge Houser is there, so

23   she'll be able to hear everything as well.

24         And so you had originally proposed, in relation to

25   the stay motion, to organize yourselves as proponents and then

1    opponents.  That works for me, if you need an organizing

2    principle.  And so I would invite counsel to come to the

3    podium, and let's keep in mind the time and the things that

4    are most important.

5          Mr. Bienenstock.

6          MR. BIENENSTOCK:    Thank you, Your Honor.  Martin

7    Bienenstock of Proskauer Rose, LLP, for the Oversight Board.

8          The short answer is yes, we welcome and have

9    continuously welcomed the assistance, and oftentimes the

10   monumental assistance, that Judge Houser and her other

11   judicial colleagues have brought to the overall process.  And

12   we're happy to have it more formally re-engaged here.

13         I wanted to advise the Court, and to some extent the

14   other parties who know different amounts of what I'm about to

15   say, of some issues that will have to come up.  And I mention

16   them now, Your Honor, simply because as -- I could barely

17   scribble down all of the issues that Your Honor mentioned, but

18   it was just emblematic of the fact that on the one hand,

19   there's a lot of complexity.

20         And the only observation I want to make about that is

21   it's very difficult to script a perfect mediation formula for

22   that complexity.  And I just want to mention, but I have no

23   doubt, on the other hand, it will work out.  It just can't all

24   be put into a simple formula.

25         So I want to mention a few considerations that I

1    don't know if they'll impact the Order Your Honor will issue,

2    or the initial considerations that Judge Houser and the other

3    mediators may want to take into account, but they'll be

4    relevant.  And they're probably not unique to the Oversight

5    Board.

6         The first is that we do plan on proceeding with the

7    filing of our proposed plan.  And of course Judge Houser can

8    speak for herself, but suffice it to say that based on prior

9    discussions, I don't think this would be inconsistent with

10   anything the mediators were thinking of.

11        That plan, as Your Honor may already sense, and many

12   of the creditors in the courtroom know, settles a lot of the

13   issues that Your Honor mentioned earlier.  And what this

14   introduces is, if it settles the issues for some but not all,

15   which it's likely to do, some vintage debt, GO debt will

16   agree, some won't.  Some -- and some vintage may agree and

17   some of the same vintage may not agree.

18        There's going to be an issue as to whether the

19   litigation should go forward for those who don't agree to the

20   deal before we see if there's a plan that will -- you know,

21   you only need two-thirds an amount, half plus one, a number,

22   et cetera, for an accepting class.  And then there are other

23   cramdown standards.

24        So we're going to somehow have to work out whether

25   some of these issues are better settled in the context of a

1    plan, if it's ultimately confirmed, or should be litigated

2    first.  And I just wanted -- all I'm saying now is we want the

3    ability to speak about that with the mediators, to do this in

4    a sensible way, and I think everyone wants that.

5            Second, and I'm speaking now of the financial

6    creditors, very significant amounts of the financial holdings

7    are in discussions with us through their various holders.  And

8    the discussions, some of them will actually be reflected in

9    the plan we file.  And some may not be far enough along, but

10   no one who's participating in those discussions wants to stop

11   them.

12           We want to find a way perhaps to coordinate them with

13   the mediation, but they're all very positive and constructive.

14   And perhaps the most important observation I can make about

15   the discussions and the likely outcome with financial

16   creditors is, and Your Honor has heard this before, and I'm

17   speaking now about only the financial creditors, not the

18   retirees, not the unions, these are other important issues

19   with a lot of other ramifications.  But on the purely

20   financial creditors, Your Honor has heard this before, it's

21   just about the money.

22           None of them that we know of or have met yet really

23   care about vindicating a constitutional principle.  They want

24   to know either they're getting an amount they'll vote for or

25   they won't.  And if they won't, then the litigation, including

1    constitutional litigation, is fine with them.  But if they do,

2    they could care less, frankly.

3         So going back to my opening comment about this sounds

4    very complex but it might get simple is a lot of the issues go

5    away with settlement.  And so what we're most looking forward

6    to mediating and receiving assistance and guidance and

7    whatever progress we can from the mediators, is figuring out

8    the right way to schedule how these issues get resolved

9    before, during or after confirmation, because we are

10   optimistic that many of them will go away as a result of

11   confirmation.

12        And, in fact, litigating them earlier might retard

13   even the existence of a confirmation hearing or other things.

14   And as Your Honor can tell, I -- I've articulated these things

15   generally without a lot of precision, and I don't think they

16   can be so much embodied in an order, but they are issues that

17   we look forward to speaking with Judge Houser about at the

18   outset so that we can do this in a sensible way to make a lot

19   of progress.

20        In Your Honor's remarks, it was unclear, and I think

21   a lot of people who follow me to the podium will ask whether

22   some things might have been left out of the list intentionally

23   or unintentionally.  Among the ones I've been alerted to

24   already are there's an adversary proceeding, number 280,

25   against underwriters.

1          THE COURT:  I think that that was intended to be on

2     the list.

3          MR. BIENENSTOCK:  Okay.  We might have missed that.

4          There's a status conference for later today on some

5     of the litigation.  We think, based on Your Honor's comments,

6     that's probably adjourned.

7          THE COURT:  That's my intention.

8          MR. BIENENSTOCK:  Some of the parties have tolling

9     agreements obviously for Statute of Limitations reasons, and

10    they're going to want methods of being able to extend them

11    without violating any stay, and basically to maintain the

12    status quo without changing leverage of the parties or

13    violating a stay, et cetera.  I don't have an exhaustive list

14    of them, but again --

15         THE COURT:  I didn't intend to preclude anything that

16    will facilitate our being in stand-still, attention-shifted

17    mode.  So applications, particularly joint applications to

18    continue tolling agreements are not precluded.

19         MR. BIENENSTOCK:  Great.

20         And finally, Your Honor, I want to, on behalf of the

21    Oversight Board, make very clear that it fully intends to go

22    forward with its RSA, with the Retiree -- Statutory Retirees'

23    Committee, to go forward with its RSA with the unions.

24         We made deals.  We intend to keep our deals.  The --

25    and I don't think, and Your Honor can correct me, that Your

1    Honor said anything that would preclude that or would be

2    contrary to that, but I just wanted to assure the parties

3    we've dealt with that the deals we've made, we want to

4    maintain.

5         THE COURT:  My expectation and intention is that

6    everybody walks into this room of sorting and triage, and one

7    hopes productive discussions with whatever positions they

8    have, and Judge Houser will work with you accordingly.

9         And in terms of issues lists, there is a general

10   category of additional issues deemed appropriate by Judge

11   Houser.  And I imagine there are things that will come up and

12   things that have not been on my radar screen that are

13   important on the procedural side and on the substantive

14   negotiation side.

15        MR. BIENENSTOCK:  So the only additional comment I

16   have, Your Honor, is that virtually everyone in the courtroom

17   knows these mediators.  They are truly terrific.  We've known

18   them before they were judges, while they are judges, in this

19   mediation, and so we are optimistic this will help optimize

20   the outcome.

21        And as Your Honor mentioned at the outset of this

22   hearing, there are concerns, particularly for the people of

23   Puerto Rico.  Nothing works here unless they have a bright

24   future.  And that's somewhat reflected in the deals we have

25   made with retirees and the unions.

1      They're two-way streets, but we think the -- they
2   were win-win deals because the Commonwealth got the financial
3   elbow room and feasibility that it needed, and the employees
4   got what they needed, whether -- well, I don't want to start
5   characterizing because I'll leave something out, but they were
6   really calculated to be win-win, that -- we want to go forward
7   with.  And we are going to keep to them.

8      We're going to keep to our schedule, to file the plan
9   as soon as reasonably possible.  And we are going to
10   vigorously and optimistically, you know, participate with the
11   mediators to see if this can get done in the timeframe that
12   Your Honor laid out.  And we thank you for it.

13      THE COURT:  Thank you, Mr. Bienenstock.

14      Judge Houser, did you want to say anything before the
15   next speaker comes up?  Judge Houser, are you muted again?

16      Okay.  Did you want to say anything before the next
17   speaker comes up?  Judge Houser?

18      Well, let's have the next speaker come up.

19      HONORABLE CHIEF JUDGE HOUSER:  Okay.  The website is
20   being difficult with respect to muting and unmuting, but I
21   have now accomplished it, so that's a major step forward.

22      Yes.  I did want to respond to Mr. Bienenstock, only
23   to tell him that he said nothing that surprises me.  And, in
24   fact, I want them to file a plan as soon as possible, and I'm
25   hoping that that will be done.

1        I am not asking things to stop.  What I am asking is

2   to be more involved in the process, or what I will be asking.

3   And I completely agree, as I at least gently alluded in my

4   remarks, that one way to resolve many of these issues is

5   through confirmation of the substantially consensual plan.

6        I share his view that many of these issues may well

7   be resolvable if we can come to an agreement on what's

8   acceptable.  And in hopes that that might minimize how many

9   other people feel the need to speak, I wanted to assure

10  Mr. Bienenstock and others that nothing he said surprised me.

11  And we look forward to working with the parties, again, both

12  on the process points, but I hope most importantly on the

13  substantive points, because I would prefer to moot the need to

14  decide these issues because agreements are reached than to

15  simply come to an agreement on a process to litigate them.

16       THE COURT:  Thank you, Judge Houser.

17       And Mr. Bienenstock has returned to the podium.

18       MR. BIENENSTOCK:  Right.  Not really to respond to

19  Judge Houser, although I thank her for her remarks.  I left

20  out one important point, and Mr. Rapisardi allowed me to add

21  it before he starts.

22       To show Your Honor that we really meant it, we'd like

23  to add something to the mediation.  Ambac and the Oversight

24  Board are happy to put the PRIFA issue into that mediation.

25  It doesn't mean it will necessarily be resolved in mediation,

1   but it very well might be.

2           And unless the Court has objections, because we know

3   how hard the Court must have worked on it with all of the

4   paper, we'd both be agreeable to adjourning the argument on

5   that today to the future, if it's ever necessary.

6           THE COURT:  I am happy to keep my homework in my

7   bookbag.  Thank you.

8           MR. BIENENSTOCK:   Thank you.

9           THE COURT:  We will add the PRIFA issues to the

10  issues to be included in the discussions.  Thank you.

11          MR. BIENENSTOCK:  Thank you.

12          MR. RAPISARDI:  Your Honor, John Rapisardi of

13  O'Melveny Myers for AAFAF.

14          First of all, I want to thank Your Honor for this

15  proposed solution as I see it, and it comes at a very welcome

16  time given everything that we -- that the government are

17  facing.  It's something that we had asked for in the weeks

18  leading up to today in terms of mediation, and we welcome

19  Judge Houser and her team getting involved again.

20          Judge Houser was invaluable the last time around in

21  terms of putting together COFINA, which was incredibly

22  complex.  The only question or issue we have is, and I

23  understand Martin wanting to file the Plan of Adjustment, and

24  I think that is a good thing because that presents a target, a

25  benchmark for which everyone can shoot at or negotiate off of

1   or discuss.  The concern we have is that it doesn't launch a

2   cycle of litigation, if you will.

3        Will there be a disclosure statement hearing and the

4   need to file objections to the disclosure statement during

5   this 120-day period?  Ideally, it would -- if we're true to

6   the word, the concept of a stay, that that process -- while

7   the disclosure statement plans are filed, that objections

8   aren't going to be expected to be filed, because that's going

9   to take a life of its own and an expense of its own.

10       THE COURT:  The Order, the procedural aspect of the

11   Order anticipates that either the consensual schedule, if

12   that's the direction it goes, or the mediation team leader's

13   report will include dealing with proposals for the timing of

14   consideration of any disclosure statement and litigation in

15   connection with a plan.

16       And hold on.  I'm just trying to find that page in my

17   draft order.

18       Yes.  So the Order includes the procedural paragraph

19   that says, the mediation team leader will facilitate the

20   filing of agreed or substantially agreed scheduling orders

21   with respect to, one, the stayed adversaries and contested

22   matters that are listed; and two, if a plan of adjustment is

23   filed for any Title III debtor, the process for considering

24   approval of a disclosure statement and/or confirmation of any

25   such plan of adjustment.

1          And so the expectation is that that timetable doesn't

2   start to run until after the issues of priority timing --

3          MR. RAPISARDI:  Yes.

4          THE COURT:  -- and appropriate litigation vehicles

5   have been discussed.

6          MR. RAPISARDI:  That's fine, Your Honor.  Thank

7   you.

8          THE COURT:  Thank you.

9          Did anyone else wish to be heard?  Yes.  I see some

10  people coming.

11         MR. RAIFORD:  Good morning.  I think it's still

12  morning, Your Honor.  Landon Raiford from Jenner & Block for

13  the Retiree Committee.

14         THE COURT:  Good morning.

15         MR. RAIFORD:   We support the stay.  It may turn out

16  that the devil is in the details, but we believe that the

17  framework that Your Honor has laid out today will help at

18  least give us some structure to the chaos that we have all

19  worked so hard to create.

20         Alluding to Mr. Bienenstock's comments a little bit,

21  the most important thing to the Retiree Committee is our deal

22  with the Board which was announced at the last Omnibus

23  Hearing.  And our hope and our optimism for this process is

24  that it will allow other creditor constituents to reach their

25  own deals, which at the end of the day will allow our deal

1  with the Board to be approved through a plan.

2  And that's all I have, Your Honor.  Thank you.

3  THE COURT:  Thank you, Mr. Raiford.

4  I see Mr. Mudd was standing up from the back, so

5  we'll hear from Mr. Mudd.

6  MR. MUDD:  Good morning, Your Honor.  John Mudd.

7  THE COURT:  Good morning.

8  MR. MUDD:  I represent Servicios Integral en la

9  Montana, which is a Medicare-Medicaid provider, and Ms. Baul

10  in San Sebastian, who is a creditor, also.

11  Now, I have unfortunately several doubts as to the

12  application of the Order.  My clients have constitutional

13  claims.  One of them provides essential services, you know,

14  and we would like to know if the Order that you've issued

15  includes them in terms of have they -- do they have to be

16  involved in mediation?

17  And also, you also stated very recently, dealing with

18  the proposal considerations of the disclosure, objections to

19  the disclosure statement and the plan.  Now, obviously we all

20  know there will be several of that, and if we -- if this

21  process will be determined somewhere, we would like to be

22  involved.  So I am at a little bit of a loss there.

23  THE COURT:  Well, I'll give you a short answer.  You

24  filed pleadings in connection with the stay motion proposals

25  and the procedural proposals, correct?

1         MR. MUDD:  No, Your Honor.

2         THE COURT:  You made some filings?

3         MR. MUDD:  I made some filings, but as to the ADR

4    procedures, which was another question I had.  Are the ADR

5    procedures going to go forward or not?

6         THE COURT:  ADR procedures will be discussed in the

7    next agenda item.

8         MR. MUDD:  Okay.

9         THE COURT:  So anyone who had filed pleadings or

10   statements in connection with the stay motions, the adversary

11   stay motions, that sort of thing, is presumptively in this

12   process with Judge Houser.

13        As directed by Judge Houser, we did focus on the bond

14   oriented adversaries in enumerating the listed adversaries.

15   And so I -- my guess then would be if you didn't file anything

16   about the stay motion, your client's adversaries are not

17   specifically addressed.

18        So what I would suggest is that you can make a

19   request to Judge Houser, and she is going to determine how all

20   of this will be managed.  And if you're not -- if your

21   adversaries aren't on -- are not on that specific stay list, I

22   think there are other procedural mechanisms going on with

23   respect to timing, and it can be addressed in that context,

24   because I can't sit here and start making promises and putting

25   things in and out without risking creating some of the chaos

1   I'm trying to tamp down.

2           And in any event, this -- you know, this process is a

3   120-day period.  You know, we're not talking about forever,

4   either stopping things cold or gunning an engine.

5           So Judge Houser, are you amenable to Mr. Mudd

6   reaching out to you?

7           I think she has to unmute.

8           HONORABLE CHIEF JUDGE HOUSER:  Yes, I am perfectly

9   happy to have Mr. Mudd reach out to me.

10          MR. MUDD:  All right.  No problem.  I'll do that.

11          One final thing, Your Honor.  All these procedures,

12  if Judge Houser determines, you know, Mr. Mudd, these things

13  don't apply to you, all those procedures that will be agreed

14  upon will not apply to any of the -- none of my clients, those

15  things will not apply to them, correct?

16          THE COURT:  I think that that is a question for

17  consideration in the process that Judge Houser is organizing.

18          MR. MUDD:  Sure.

19          THE COURT:  Because I can't promise what will be on

20  her list or not or what that will look like.

21          MR. MUDD:  I will make the question to Judge Houser

22  in writing.

23          THE COURT:  Thank you.

24          MR. MUDD:  Thank you.

25          THE COURT:  Okay.  So, Counsel --

1          MS. COHEN:  Good afternoon.  Julie Cohen from Skadden

2    Arps on behalf of defendant Morgan Stanley and certain other

3    of the adversary defendants.

4          In adversary proceeding 280, and I think we tried to

5    clarify this before and I just didn't hear what the answer

6    was --

7          THE COURT:  If it wasn't on the list that I read, it

8    should have been.  It will be on the list in the Order.

9          MS. COHEN:  Thank you, Your Honor.

10          THE COURT:  Thank you.

11          Mr. Sosland.

12          MR. SOSLAND:  Just a similar comment, Your Honor.  We

13    heard you stay the HTA lien avoidance action adversary

14    proceedings in your comments.  Those are numbers 362, 363, 364

15    and 365.  I did not see them on the list or hear you read

16    them, so I wanted to point that out.

17          THE COURT:  They will be on the list if they weren't

18    when I read them.  I'm sorry.

19          MR. GERBER:  Your Honor, Toby Gerber of Norton Rose

20    Fulbright, LLP, on behalf of the Puerto Rico Public Buildings

21    Authority.

22          Your Honor, first, to state that we welcome the

23    Court's Order, and I know it came as both a surprise and

24    relief to a lot of people.  But PBA is uniquely situated.

25    We're an agency of the government, but we're not a Title III

1  entity.   And we have been sued by the Oversight Management

2  Board, and there are -- and the proposals have been made to

3  restructure our debt without our participation.

4       So we welcome the opportunity to participate in the

5  mediation.  I did want to say that we would like to be able to

6  reach out to Judge Houser in order to articulate a few of the

7  issues that we have already presented indirectly to this

8  Court, but are gating issues of the type you represented.  And

9  I wanted to make sure that would be okay with you and with

10  Judge Houser.

11       THE COURT:  I suspect it is.  And I think, as Judge

12  Houser said, she will be sending out a communication to all

13  those involved in the stay matters, which of course include

14  the PBA litigation parties.

15       So it may be that she will have a process for

16  soliciting that sort of input from people who are on the list,

17  but let me see if she wants to unmute and say anything more

18  about how that should work.

19       Judge Houser?

20       HONORABLE CHIEF JUDGE HOUSER:  I have decided that

21  it's safer to stay unmuted.

22       THE COURT:  That works.

23       HONORABLE CHIEF JUDGE HOUSER:  So Mr. Gerber, I'm

24  delighted to visit with you.  You and the other parties that I

25  believe are encompassed in this or representatives of them

1    will be getting a memorandum from me shortly.

2           We do have an idea of a process in mind of how to get

3    together with people very promptly and hear what's on their

4    list of important things and begin the dialogue, both on a

5    procedural basis and then subject to mediation confidentiality

6    on a substantive basis.

7           MR. GERBER:  Thank you, Your Honors.

8           THE COURT:  Thank you.

9           Ms. Miller.

10          MS. MILLER:  Good afternoon, Your Honor.  Atara

11   Miller from Milbank on behalf of Ambac.

12          We echo the sentiments of others that we welcome

13   this.  I know I've stood up at the last number of Omnis and

14   suggested that we needed a process that was more inclusive and

15   that opened negotiations, and so we think that the

16   participation of Judge Houser and the other mediation judges

17   will move forward hopefully to a more consensual and less

18   adversarial process.

19          With that, we just wanted to also confirm what

20   Mr. Bienenstock said, that we have agreed and are amenable to

21   adding the PRIFA issues to Judge Houser's docket, assuming

22   she's willing to take them, as there is pretty significant and

23   substantial overlap with respect to the issues raised in the

24   stay motion.

25          We would like to still proceed on the 2004 discovery

1    request.  We think that the need for information will

2    facilitate the process.  And so we would like to continue to

3    have that.  No?  Oh.

4            MR. BIENENSTOCK:  Your Honor, this is just a

5    matter --

6            THE COURT:  You have to come to the microphone.

7            MR. BIENENSTOCK:  Your Honor, this is just a matter

8    that this was all done in, you know, conversations in less

9    than a minute before we reconvened.

10           Our understanding was that it's a package deal.  If

11   they don't want to adjourn the 2004, we're happy to argue the

12   PRIFA motion today.

13           THE COURT:  Well, why don't -- we are going to have a

14   break for lunch before the PRIFA motion would come up, and so

15   why don't you take that time to see if you can work things

16   out.  And I brought my school bag with me, so -- and Judge

17   Dein has her school bag of 2004 information with her, too.  So

18   whichever way you call it, we will go that way.

19           MR. BIENENSTOCK:  Thank you, Your Honor.

20           THE COURT:  Thank you.

21           MS. MILLER:  All right.  So --

22           HONORABLE CHIEF JUDGE HOUSER:  And Judge Swain, if I

23   might add that if the parties agree that this should be added,

24   I'm certainly willing to let it be added.  I recognize there

25   is substantial overlap among some of these issues.

1          THE COURT:  Thank you for confirming that, and I'm

2     afraid that I sort of sold you down the river on that earlier

3     when I said "good."  So thank you for agreeing.

4          MS. MILLER:  So we'll confer further with counsel for

5     the Oversight Board and advise the Court after lunch.

6          THE COURT:  Thank you.

7          MS. MILLER:  Thank you.

8          THE COURT:  Yes, sir.

9          MR. ZOUAIRABANI:  Good morning, Your Honor, all

10     parties present.  Attorney Nayuan Zouairabani of McConnell

11     Valdes on behalf of the DLA parties.

12          Your Honor, just as a question on a housekeeping

13     matter, this has to do with amended Agenda Item Roman numeral

14     IV, subsection 15, which is docket 7154, the FOMB and UCC's

15     Amended Motion Establishing Revised Procedures for Litigating

16     Objections to Claims of GO bonds.

17          Given the scope of what is going to be subject to

18     Judge Houser in the mediation, we suspect this is also

19     included, but we did not see it on the list.

20          THE COURT:  It is included, and I thought it was on

21     the list, but if it is not, it will be.  The intention is to

22     stay the matters trying to construct procedures and particular

23     silos so that there can be a look at things on a more

24     crosscutting basis.

25          MR. ZOUAIRABANI:  Okay.  Thank you for clarifying,

1  Your Honor.

2         THE COURT:  Thank you.  It is on the list that we

3  displayed.  I might not have read the number, and if so, I'm

4  sorry.

5         MR. MAYR:  Good morning, Your Honor.  Kurt Mayr of

6  Bracewell, LLP on behalf of the QTCB Noteholder Group.

7         THE COURT:  Good morning.

8         MR. MAYR:  Good morning.  One of the two noteholder

9  groups of the parties to the Plan Support Agreement that has

10 drawn such popular review by many of the folks in the

11 courtroom --

12        THE COURT:  Will you just project a little more?

13        MR. MAYR:  Sure.

14        At the risk of being original, we understand your

15 ruling and we welcome the opportunity to return to the

16 mediation team and Judge Houser.

17        The process issues are unprecedented in their

18 complexity, and we think whether or not there are things that

19 will be folded into a plan process or whether or not they are

20 going to be litigated separately, the mitigation team's help

21 will be very important to helping move that issue forward.

22        I also look forward to continuing to work with the

23 Oversight Board and the other parties to the PSA to broaden

24 the tent of support for the plan.  And I just want to confirm

25 that since Mr. Bienenstock listed his deals with the Unions

1    and with the Official Retiree Committee, that we weren't

2    mentioned, but I think we're still on that list.

3           Mr. BIENENSTOCK:   (Nodding head up and down.)

4           THE COURT:  And for those of you who don't have

5    visual, Mr. Bienenstock just nodded very enthusiastically.

6           THE COURT:  Mr. Kirpalani is headed up, and then

7    we'll hear Mr. Hein after we hear Mr. Kirpalani.

8           MR. KIRPALANI:  Okay.  Good afternoon, Your Honor.

9    Susheel Kirpalani of Quinn, Emanuel, Urquhart & Sullivan on

10   behalf of the Lawful Constitutional Debt Coalition.

11          I, too, thank the Court for really taking the

12   initiative here and imposing a stay on the parties who wish to

13   litigate issues that, frankly speaking, I know Your Honor

14   knows, we've worked around the clock to try to help figure out

15   a way to resolve them.

16          A lot of folks in their opposition papers took some

17   shots at what we put together and really glossed over the

18   benefits.  And I do think they're important for everyone

19   that's going to participate in this process to understand.

20          First of all, even undisputed valid priority GO debt

21   would be agreeing to cap their recoveries and allow adequate

22   funding, on a long-term basis, of the pensioners, of all of

23   the fiscal discipline that the Oversight Board has been

24   seeking for the past several years to provide for --

25          THE COURT:  Mr. Kirpalani, I just want to say, what I

1    don't want to start is a process in which you tout all the

2    advantages and people feel compelled to come up and say why

3    they don't like it.  So there will be plenty of opportunity

4    for discussion in the context of Judge Houser's proceedings.

5              MR. KIRPALANI:  Yeah.  That's fine, Your Honor.

6              THE COURT:  And so I know that you wouldn't be in

7    favor of it if you didn't think it was good.

8              MR. KIRPALANI:  Yes, that is true.  We look forward

9    to working with Judge Houser.  We've worked with her and her

10   team before.

11             We even look forward, if it's at all possible, to

12   working with Ad Hoc GO Group if there's a way to forge a

13   consensus forward.  If not, we'll litigate these issues in

14   whatever way the Court deems appropriate.

15             We do thank you, though, for taking a moment, I

16   think, of pause and recognizing what's going on outside, which

17   a lot of the people involved in these cases seem to have been

18   ignoring.  So we appreciate that.

19             THE COURT:  Thank you.

20             Mr. Hein, from New York.

21             MR. HEIN:  Yes.  Thank you, Your Honor.  Peter Hein,

22   pro se.  I'll be very brief.

23             Your Honor, respectfully, it's my view that under

24   U.S. Supreme Court precedent, including *Security Industrial*

25   *Bank,* 459 U.S. 70, I do not believe a new bankruptcy regime

1   such as PROMESA can retroactively change the rules and rights

2   for bonds bought pre-PROMESA.

3        Thus, I believe that if FOMB wishes to persist in its

4   belated challenges to the validity, secured status of the

5   bonds, then there has to be an adjudication.  I do not,

6   respectfully, believe that delaying that adjudication in the

7   hopes of a plan is appropriate.

8        And just one final thing.  I do very much care about

9   vindicating the constitutional principle.  Thank you.

10       THE COURT:  Thank you.

11       Mr. Stancil.

12       MR. STANCIL:  Thank you, Your Honor.  Mark Stancil

13   for the Ad Hoc GO Group.

14       I wanted to add points that I would hope it would be

15   clear, but I want to make it explicit so there's no

16   misunderstanding.  We think this is a great step forward, and

17   our clients, even though I'm the filer of quite a bit of paper

18   challenging what has been proposed procedurally, we very much

19   want an organized, logical and cohesive resolution to these

20   interconnected issues.

21       We would -- furthermore, we would love a consensual

22   resolution to the case.  We think that's achievable, and we

23   understand Your Honor's Order will contemplate a wide variety

24   of issues that maybe we won't all agree on what issues we'd

25   like to litigate now, but we think that with a meaningful and

1   robust approach to how to clear that up, that real progress

2   could be made.

3          And I share Judge Houser's goal, and I know my

4   clients do as well, that an actual global consensual

5   resolution of all these issues, I think it's achievable and I

6   think that's worth the hard work.  So we wanted to be clear

7   and say thank you.  We agree.

8          THE COURT:  Thank you, Mr. Stancil.

9          All right.  I think -- oh, sorry, Mr. Despins.

10         MR. DESPINS:  Good afternoon, Your Honor.  Luc

11  Despins for the Committee.

12         I add my thanks to the other comments that were made,

13  and so we think that it's a great thing that the Court took

14  initiative to list these issues that need to be addressed.

15         Procedurally, I want to make sure I understood Your

16  Honor saying the Motion to Strike by Ambac is also stayed --

17         THE COURT:  Yes.

18         MR. DESPINS:  -- and I heard that.  I think we need

19  to understand how that works in the sense of clearly it's

20  stayed.  That part is easy.  But, you know --

21         THE COURT:  No more briefs.

22         MR. DESPINS:  No.  No.  I understand that.  But there

23  are -- under the PSA, there are some milestones under which

24  they can earn a fee of up to a hundred million dollars.  So

25  when we -- let's assume that no deal is reached for a second,

1    just to be negative, at the end of the process, have they

2    acquired rights during the stay period?

3         I just want to put that in front of the Court.  Not

4    to decide it today, but I think that -- I want to make sure

5    that that's on your radar screen because, for example, if they

6    don't have 50 percent of a certain group, they would have no

7    entitlement of the hundred million dollar fee.

8         I don't think they have reached that milestone today,

9    so I think it's something that obviously you're not going to

10   decide this on the fly like this, but I want to make sure that

11   it's mentioned.

12        THE COURT:  All right.  So I would encourage you to

13   speak, with or without Judge Houser's facilitation, with the

14   proponents of the PSA about their positions on the managing of

15   the stay of that motion practice and whether there's a set of

16   mechanics that can freeze that or not.  And if there's a

17   dispute about that, you always seem to know where to find me,

18   so --

19        MR. DESPINS:  Okay.

20        THE COURT:  -- I can be found.

21        MR. DESPINS:  The next point, Your Honor, is since --

22   and first, I apologize to Judge Houser for raising this

23   without having discussed this with her, but I didn't see this

24   coming today.  But there is a matter in these cases that is

25   substantial, we believe it's the whole ball of wax, but for

 1   some reason has never been through mediation at all, which is

 2   PREPA.

 3          And I want to be clear for my PREPA friends that

 4   we're not suggesting to change any dates in terms of when the

 5   hearing will be and all that.  Just that it would behoove the

 6   parties to the process to attempt to resolve the PREPA issue

 7   through mediation between now and whenever the ultimate

 8   hearing date will be on this.

 9          So again, I want to be clear, we're not seeking a

10   stay in PREPA, but since we're dealing with all these crucial

11   issues, PREPA is really critical to the whole case.  And I

12   think -- I may be missing something, but I don't think we've

13   ever been through a mediation process with respect to the

14   issues that are before the Court now.

15          So I know I'm -- that's not on the Agenda.  I just

16   want to suggest that that be considered, given that we're

17   talking about broad mediation issues.

18          THE COURT:  Judge Houser, did you wish to comment on

19   that?

20          HONORABLE CHIEF JUDGE HOUSER:  Well, I'm certainly,

21   Mr. Despins, happy to visit with you and then other parties to

22   the RSA to see if everyone's agreeable to including PREPA.  So

23   why don't we -- I'm glad you raised the issue.  And why don't

24   we take it up off line and include other parties that would be

25   affected and see if we can come to agreement on that.

1            MR. DESPINS:  Thank you.

2            Thank you, Your Honor.

3            THE COURT:  Thank you, Mr. Despins.

4            Mr. Mayer is on his way up.

5            MR. MOERS MAYER:  Yes, Your Honor.  I had not

6    expected to speak at all at this hearing.  We'll, of course,

7    always speak to Judge Houser.  As I stand here today, we are

8    looking forward to proceeding with a hearing on the 9019

9    motion, but we will of course be happy to talk to Judge

10   Houser.  We're always available to talk.

11           THE COURT:  Thank you.

12           Mr. Natbony.

13           MR. NATBONY:  Thank you, Your Honor.  William Natbony

14   from Cadwalader on behalf of Assured.

15           We, too, would obviously want to be involved in any

16   conversation with Judge Houser regarding PREPA or any other

17   conversations that are had, but we are looking forward to and

18   believe we should be going forward full force with the 9019

19   hearing and that separate schedule with PREPA and moving

20   forward with that.

21           Since Assured has also joined a number of the papers

22   that are before Your Honor, I also want to join in the thank

23   you on behalf of Assured for your thoughtful consideration of

24   the issues and a process which we hope will lead to good

25   benefits.  And Assured looks forward to its active

1    participation in all those proceedings.

2            Thank you.

3            THE COURT:  Thank you.

4            All right.  It looks like everyone else is sitting,

5    and so I declare a lunch break.  And we will reconvene at

6    1:15.

7            Thank you.

8            (At 12:18 PM, recess was taken.)

9            (At 1:21 PM, proceedings reconvened.)

10           THE COURT:  Buenas tardes.  Please be seated.

11           We are now up to item Roman IV.10 of the Agenda,

12   which is the Debtors' Motion to Authorize Alternative Dispute

13   Resolution Procedures.  I have some more surprises for you, so

14   why don't you have a seat.

15           So before hearing the parties' arguments concerning

16   this motion, I'd like to set the stage with remarks that

17   outline the Court's views on some of the more significant

18   issues.

19           Judge Dein and I have reviewed carefully the motion

20   for entry of an Order, A, authorizing alternative dispute

21   resolution procedures; B, approving additional forms of

22   notice; C, approving proposed mailing; and D, granting related

23   relief, which is docket entry number 7224 in case 17-3283,

24   which was filed by the Oversight Board on behalf of the

25   Commonwealth, HTA, ERS and PREPA.  We've also reviewed the

1    papers filed in opposition and reply thereto.

2         We are aware that debtors' counsel consulted with the

3    Administrative Office of the United States Courts in

4    formulating certain aspects of the motion, and we appreciate

5    counsels' consideration of issues raised in that context.

6         The motion seeks entry of an Order, first,

7    authorizing the use of Proposed Alternative Dispute Resolution

8    Procedures, which are collectively referred to as the Proposed

9    ADR Procedures.  Second, approving a proposed Notice of Intent

10   to Transfer to the Alternative Dispute Procedure, which is

11   referred to as an ADR Notice, and a proposed Election Form for

12   Alternative Dispute Resolution Procedure, which I'll refer to

13   as the ADR Form.  Third, approving a proposed mailing, which

14   I'll refer to as the Proposed Mailing, and collectively with

15   the ADR Notice and the ADR Form, as the Notice Materials,

16   requesting certain information from claimants.  And fourth,

17   granting related relief.

18        Under the Proposed ADR Procedures, the debtors

19   propose to select certain claimants to participate in a claim

20   resolution process beginning with a settlement offer exchange,

21   and then, if the claim remains unresolved, proceed to a

22   summary adjudication based on documentary submissions to a

23   United States Magistrate Judge, referred to in this context as

24   the Claims Adjudication Judge, and culminating in a final

25   order setting the allowed amount of the monetary aspects of

1  the claim, or if the claimant has not consented to

2  adjudication by the Claims Adjudication Judge, a report and

3  recommendation subject to objections and final resolution by

4  the Title III Judge.

5          Claimants who are selected to participate in the

6  claims resolution process would be afforded the opportunity to

7  opt out.  However, a claimant's failure to timely return the

8  ADR Form would be deemed consent to participate insofar as a

9  written offer would be made, and the claim, if unresolved,

10 would go to a Claims Adjudication Judge for report and

11 recommendation.

12         As a preliminary matter, I want to make it clear that

13 the Court supports the implementation of an alternative

14 dispute resolution process to facilitate fair and efficient

15 resolution of claims.  And I refer to alternative dispute

16 resolution as ADR.  Indeed, it's the Court's view that if

17 properly devised and implemented, an ADR process could

18 streamline significantly the claims resolution process to the

19 benefit of the creditors, the debtors and the judicial process

20 alike.

21         The Court also views the inquiry letter component of

22 the proposal as a positive one.  Mr. Rosen indicated this

23 morning that similar efforts in connection with claim

24 objections have already lead to clarity and the resolution of

25 controversies.

1          That being said, the Court cannot approve the package

2     of Proposed ADR Procedures and Notice Materials as submitted.

3     There are a number of informational, structural and practical

4     barriers to the approval and implementation of the current

5     proposal.

6          First, because the debtors have neither provided the

7     Court with nor included in the Proposed ADR Procedures

8     sufficient detail regarding the types of claims intended to be

9     subject to the ADR process, it's impossible for the Court to

10    gauge whether the proposed adjudication procedures will be

11    suitable for the claims that are not resolved through the

12    non-judicial ADR portion of the process, or even whether the

13    adjudication procedures would be feasible as a practical

14    matter.  More on this shortly.

15         Second, the proposed summary adjudication procedures

16    are, in several respects, inconsistent with the governing

17    federal statutes and rules, including 28 U.S. Code Section

18    636, and they do not appear likely to meet the requirements of

19    due process, particularly insofar as matters involve genuine

20    factual disputes, or even to be administratable in an

21    efficient way.  If, for example, the claims that cannot be

22    resolved through the exchange of offers on paper are likely to

23    present factual disputes, the sort of summary adjudication on

24    paper records that is contemplated by the proposal would not

25    be consistent with due process, and evidentiary proceedings

1   will be required.

2          Such proceedings will present significant logistical

3   challenges, since we will not be able to provide

4   Commonwealth-based Claims Adjudication Judges.  And as the

5   number of potentially available Magistrate Judges is low,

6   there is limited capacity to conduct large numbers of

7   evidentiary proceedings.  So the process would likely be

8   neither quick nor economical.

9          This problem leads the Court to suggest revisitation

10  of the feasibility of a much more robust, multilayered

11  prelitigation non judicial ADR component.  Summary judgment on

12  a sufficient paper record is a well grounded, useful tool for

13  adjudication of disputes that are in essence legal and do not

14  involve issues of fact.  Federal judges cannot, however,

15  perform summary adjudications of factual disputes on informal

16  paper records.  That -- the latter is an ADR technique that

17  could be created and implemented outside of judicial

18  proceedings on a purely consensual basis, but cannot be

19  adopted as an operating standard for federal judicial

20  processes.

21         For these and other reasons that I will discuss, the

22  Court is inclined to deny the motion without prejudice to

23  renewal or adjourn it pending the submission of revised

24  proposed procedures that comport with the specific feedback

25  and guidelines that I'll now outline.

1          As noted, the Proposed ADR Procedures and the Notice

2    Materials lack sufficient information regarding the nature of

3    the claims that the Oversight Board intends to refer to the

4    ADR process.  The Oversight Board has essentially proposed one

5    uniform procedure intended to resolve tens of thousands of

6    claims, which it describes only as general unsecured claims,

7    including unliquidated claims that are more substantive in

8    nature.

9          Absent additional details concerning the types of

10   claims anticipated, however, the Court finds it impossible to

11   evaluate the process in a meaningful way.  More specific

12   information regarding the categories of claims that the

13   debtors intend to channel into the ADR component and then to

14   structured litigation, if necessary, will also aid counsel for

15   other parties in interest in understanding and one hopes being

16   receptive to the ADR component.

17         The debtors have represented in their papers that

18   claims asserting liabilities arising from funded indebtedness

19   or the Commonwealth's clawback of revenues will not be subject

20   to the ADR process, and further, that they do not presently

21   intend to transfer into the ADR procedures claims arising out

22   of union grievances, tax refunds or employee benefits,

23   including pension claims to the extent that they are

24   administrative in nature and related to the entitlement or

25   quantification of benefits pursuant to existing benefit

programs.

These statements are helpful, but they do not tell the Court or the creditor body what types of claims the debtors do intend to refer to the ADR process.  As I noted earlier, additional information regarding the likely character of the disputes, for example, are they likely to be contract interpretation or about eligibility for a particular public program, on the one hand, or on the other, disputes regarding whether and to what extent a personal injury claimant is entitled to damages, that sort of information is necessary to enable the Court to determine whether it can provide a team of Claims Adjudication Judges that would be sufficient in number and have sufficient available time and resources to address the anticipated volume of claims that are ultimately to be resolved through litigation.

Thus, any renewed application or supplemental application must identify, to the extent possible, the claims at issue, as well as the nature of the determinations likely to be required.  Identification of the likely numbers of claims the debtors would channel to the process would be very helpful as well.

By providing such information, the debtors will also enable the Court to assess whether there are means by which resources can be leveraged into opportunities to address common legal issues efficiently, and to identify the volume of

matters that are likely to require evidentiary proceedings and factual determinations.

In this regard, any new procedures should provide that similar claims that are ultimately referred to judges will be grouped together. This will enable the Court to maximize the efficiency of assignments among Claims Adjudication Judges if litigation is required.

The offer exchange portion of the proposed process is the only true ADR component of the current proposal. The claims adjudication phase, as it is currently proposed, is necessarily a litigation phase, as it involves federal judges and decisions on the merits in Federal Court. And if it maintains that character, it will need to comply with Federal Court adjudication procedures.

The Court notes that it has carefully reviewed the ADR procedures adopted in the City of Detroit bankruptcy case, which I'll refer to as the Detroit ADR Procedures. Those do recognize clearly the distinction between ADR techniques and litigation and are focused on the ADR techniques. They're clear. They're also informative in terms of their sequential use of different ADR methods prior to litigation.

The first phase of the Detroit ADR Procedures involved an offer exchange process commenced by the City of Detroit's service of an ADR notice, among other materials. Notably, unlike the Proposed ADR Procedures here, the Detroit

1    ADR Procedures did not provide for an automatic waiver of

2    rights in connection with the final determination of a claim

3    in the event that a claimant failed to respond.

4         If the offer exchange did not facilitate a

5    settlement, the matter was sent for a, quote, unquote, case

6    evaluation, which was to utilize procedures borrowed from

7    local court rules to obtain a non-binding, confidential,

8    monetary valuation of each claim to serve as a focal point for

9    ongoing settlement negotiations between the parties.  The

10   Detroit ADR Procedures recognize that the parties could either

11   accept or reject the case evaluators' valuations.

12        Next, the Detroit ADR Procedures provided that if the

13   case did not settle after the case evaluation, and only upon

14   the parties' consent, the claim would proceed to binding

15   arbitration, which included, among other procedural

16   protections, the mutual exchange of limited discovery.  In the

17   event that the parties did not settle their claims, they would

18   proceed to litigation, either in bankruptcy or non-bankruptcy

19   court.  The procedures did not seek to define the scope or

20   nature of the litigation proceedings.

21        The exchange of written settlement offers, mediation

22   or non-binding case evaluation by either mediators or lawyers

23   not employed by the Court or even by magistrate judges, and

24   consensual non-binding -- sorry, consensual binding

25   non-judicial arbitration are all alternatives to and are

1    entirely separate from judicial resolution of disputes.  These

2    additional methods could be used here prior to the invocation

3    of court processes or as temporary or permanent off-ramps from

4    court processes, and could, in the Court's view, help to avoid

5    a premature overload of the litigation process.

6           This Court urges the Oversight Board to determine --

7    to develop a more robust ADR component that can be invoked

8    prior to litigation, or as a true off-ramp during the course

9    of the litigation process, such as for contested claims

10   objections.

11          The Court now turns to the aspects of the motion that

12   concern the manner in which matters are to be addressed by

13   Claims Adjudication Judges and the solicitation of consents to

14   final adjudication by magistrate judges.  There are some

15   fundamental problems with these aspects of the current

16   proposal.

17          The Proposed ADR Procedures elide ADR and

18   adjudicative proceedings in a manner that's neither feasible

19   nor appropriate in that they contemplate the use of federal

20   magistrate judges to conduct summary proceedings on records

21   that might be suitable for arbitrations or mediations but

22   appear unlikely sufficient to meet the requirements of due

23   process as reflected in the relevant rules of procedure and

24   evidence.

25          The proposed summary adjudication procedures afford

1   the claimants no right to obtain discovery from the debtors;

2   they limit the parties' submissions to five-page position

3   papers along with exhibits; they contemplate deemed consent to

4   proceed in a summary fashion before a Claims Adjudication

5   Judge; and they offer no indication as to how the Claims

6   Adjudication Judges are to resolve factual disputes.

7         I first note that the consent issue is a limited one

8   in connection with the litigation aspects of the proceedings,

9   but the timing and manner of solicitation of the consent are

10  important.  The only consent that would be relevant, effective

11  and necessary in connection with the use of magistrate judges

12  for litigation is consent pursuant to 28 U.S.C. Section

13  636(c), to adjudication of the claim by a magistrate judge

14  with a direct appeal to the First Circuit.

15        As the parties are aware, magistrate judges are

16  judicial officers.  With the parties' consent, the magistrate

17  judge has the same authority as the district judge with the

18  same rights of appeal to the First Circuit.  28 U.S.C. Section

19  636 requires that this consent be solicited in a non-coercive

20  manner and at the time the litigation phase of the controversy

21  begins, rather than in advance of the use of ADR procedures.

22        The district judge can refer matters to the

23  magistrate judge without the parties' consent for

24  nondispositive pretrial management, for report and

25  recommendation on dispositive matters, or for both.  If

1   dispositive matters are referred, the magistrate judge can

2   issue a report and recommendation to which the parties have

3   the right to object, in which case the district judge reviews

4   de novo the magistrate judge's determination.

5        With respect to the adjudication procedures

6   themselves, while certain streamlining, such as page limits,

7   taking matters on submission unless the circumstances require

8   hearings, and other provisions typical of case management

9   orders may be feasible and consistent with due process, the

10  record created for adjudication and the method of adjudication

11  must be sufficient to provide the judge with the requisite

12  legal submissions and factual information in evidentiary form

13  to make and document a reasoned decision and for testimony

14  where credibility determinations are at issue.

15       Discovery from the debtors can't be eliminated

16  entirely, and it is unrealistic to expect that the offer

17  exchange phase will be sufficient to develop a proper

18  litigation record.  For a start, the Court suggests that the

19  debtors' initial settlement offer letter in the ADR phase be

20  accompanied by documentation and an explanation putting that

21  settlement offer into context.  That may help to engage

22  claimants in that part of the process and it would also

23  provide a foundation for the construction of a litigation

24  record if litigation becomes necessary.

25       It may also be -- it must also be sufficient to

1    support review by the District Judge in connection with

2    objections to a report and recommendation and/or review by the

3    First Circuit upon appeal of the final decision.  To be clear,

4    summary judgment is available where there are no genuine

5    factual disputes and a party is entitled to judgment as a

6    matter of law, but summary adjudication of material factual

7    issues based on conflicting declarations and/or attorney

8    arguments is not a procedure that can properly be undertaken

9    by a federal judge, whether district or magistrate.

10         Moreover, the five-page limit proposed for briefing

11    seems likely to be insufficient to permit the parties to

12    convey their full legal and factual arguments in a manner that

13    will enable the judge to assess and adjudicate the dispute

14    efficiently.  The fact that attachments are unlimited also

15    means that the five-page limit may not in fact result in

16    efficiencies, and may lead to waste of the judge's time in

17    trying to glean information from the attachments.

18         For pro se litigants, an explanation of the summary

19    judgment process and what is required in terms of proffers

20    would also be appropriate, and I would refer you for an

21    exemplar to Local Civil Rule 56.2 of the Southern District of

22    New York.  If any part of a pro se claimant's submission is

23    not in English, the debtor will be required to provide a

24    certified translation of the submission.

25         Finally, the Court finds the ADR Form and the ADR

1  Notice to be inadequate and somewhat confusing and, as such,

2  in need of revision.  By way of example, claimants should be

3  told more clearly that the purpose of the ADR process is to

4  fix an allowed claim in an amount that will later be

5  translated into an actual payment amount, which is likely to

6  be a fraction of the allowed claim number, in the context of a

7  future plan confirmation proceeding.

8          Furthermore, the ADR Notice and/or the ADR Form

9  should be clear about any binding ADR methods for which

10  consent is being solicited if you go in that direction, and it

11  should not purport to elicit consents to adjudication by

12  magistrate judges or modification of court procedures.  It

13  should distinguish accurately between ADR procedures and

14  litigation.  It can describe the role of the Claims

15  Adjudication Judge, both where the claimant consents to

16  adjudication under 636(c) and where the claimant withholds

17  such consent, but it should not suggest that that Claims

18  Adjudication Judge's role is part of an alternative dispute

19  resolution process.

20          So in summary, any renewed or supplemented

21  application must first distinguish clearly between ADR and

22  litigation proceedings.  Next, clarify and specify the types

23  of claims that will and will not be channeled into the ADR

24  process to the greatest extent possible, and provide any

25  available insight into the likely numbers of types of claims

1    and likelihood of fact-based disputes that will flow through

2    the process.

3         Next, provide for some meaningful level of

4    information disclosure by the debtor in conjunction with the

5    first settlement offer, and not prohibit record augmentation

6    at the litigation phase.

7         Next, it must remove the provision for claimant's

8    consent to adjudication by a Claims Adjudication Judge from

9    the original agreement to enter the ADR process given that

10   Section 636(c) requires that consent opportunity be offered at

11   the commencement of the litigation phase and be non-coercive.

12        Next, it must devise a mechanism for grouping

13   unresolved claims that proceed to litigation before the Title

14   III judge and/or the Claims Adjudication Judges by substantive

15   area in a manner that will permit binding adjudication of

16   common legal issues before evaluation of facts unique to

17   particular claims, and by likelihood of the need for

18   evidentiary proceedings.  The Oversight Board might also

19   consider building a mechanism for sending claims with common

20   legal issues back to some ADR process after the determination

21   of key legal issues and before adjudicatory proceedings

22   involving factual determinations.

23        Next, it should revise the streamlined adjudication

24   process to ensure a record that is sufficient for adjudication

25   and appellate review.

1         And finally, the notice materials should be revised

2    to reflect the changes and address the concerns that I have

3    outlined.

4         So I'm now calling a 15-minute break for reflection

5    before reaction, unless you don't need it.

6         MR. ROSEN:  I don't, Your Honor.  I think I can

7    respond very quickly.

8         Your Honor, with respect to your suggestions, we'll

9    obviously read the transcript again and try to revise the

10   procedures in accordance with your directive.  And we'll also

11   be in touch again with the Administrative Office of the United

12   States Courts just to make sure that we're working in

13   compliance with what their wishes are.

14        THE COURT:  Great.  And we'll obviously update them

15   on precisely what was said here.

16        MR. ROSEN:  If I could ask the Court to enter an

17   Order with respect to, one, supplementing the procedures as

18   you suggested, or giving us time to do that and coming back to

19   the Court; but if I could ask the Court to enter an Order

20   today, or as soon as possible, authorizing the proposed

21   mailing that was in that motion itself --

22        THE COURT:  That's the inquiry letter part?

23        MR. ROSEN:  Exactly, Your Honor.  That is critical to

24   moving forward to any claims reconciliation in these cases,

25   and we want to get that out.  It's going to have to be staged

1    because of the multitude of letters that have to go out, but

2    we'd like to begin that process the first week in August.  And

3    getting Court approval of that as soon as possible would be

4    very helpful.

5             THE COURT:  So will you send me a clean order that

6    just deals with that?

7             MR. ROSEN:  We will do that, Your Honor.

8             THE COURT:  And I don't think I saw any significant

9    -- or any objection to that aspect of the proposal.

10            MR. ROSEN:  No.

11            THE COURT:  And in any event, as you say, you need

12   that to --

13            MR. ROSEN:  Right.  There were only two responses,

14   Your Honor, to the motion itself, and neither of those went to

15   the proposed mailing itself.  We can propose an order that

16   will deal with what you suggested as far as deferring

17   consideration of that, of the procedures themselves, and then

18   authorizing the mailing.

19            THE COURT:  That would be terrific.  So if you get

20   that to me as soon as possible, I will deal with that

21   promptly.

22            MR. ROSEN:  Very much appreciated.  Thank you.

23            THE COURT:  And thank you for all the work you've

24   done so far.  And I look forward to having a full process in

25   place.

1        MR. ROSEN:  Thank you, Your Honor.

2        THE COURT:  Thank you.

3        So it is time for an update on PRIFA.  Ms. Miller.

4        MS. MILLER:  Good afternoon, Your Honor.

5        So we conferred during the lunch break, and AAFAF has

6    agreed to provide us with certain we'll call publicly

7    available but potentially hard to find information, including

8    any documents governing the flow of funds and then documents,

9    public documents evidencing payments of rum taxes to the

10   Commonwealth, as well as to make an inquiry of Hacienda or

11   another relevant entity who would know the information

12   regarding whether the wire transfers from the LockBox account

13   have a particular designation on them with regard to on whose

14   credit they're being deposited for.

15       With that, we have also agreed with the Oversight

16   Board and AAFAF to submit the remaining issues and requests in

17   the 2004 discovery motion to the mediation process and to

18   address them in that context.  So I think that resolves both

19   of the motions today.

20       THE COURT:  Very good.  So shall I adjourn both of

21   those motions to the December Omni control date?

22       MS. MILLER:  I think that's right.  Yes.

23       MR. BIENENSTOCK:  (Nodding head up and down.)

24       THE COURT:  Thank you.

25       MS. MILLER:  Thank you.

```
 1              THE COURT:  Thank you.  I am glad to hear that this
 2    is the resolution for the short term and that those issues
 3    will go into the larger discussions.
 4              So I think that completes everything that is on the
 5    prepared Agenda.  Is there anything else that we need to
 6    address this afternoon?
 7              (No response.)
 8              THE COURT:  Seeing no hands, I will say that this
 9    concludes today's agenda.
10              I'm sorry.  Judge Dein, did you want to say anything?
11              HONORABLE MAGISTRATE JUDGE DEIN:  I'm always going to
12    schedule my hearings for the day after yours.
13              THE COURT:  Judge Dein says she's always going to
14    schedule her hearings for the day after mine.
15              And Judge Houser, if you are back, did you want to
16    say anything?
17              (No response.)
18              THE COURT:  I think she may not be back yet, but she
19    knows precisely what we're doing and we'll inform her about
20    PRIFA.
21              So this concludes today's agenda.  The next scheduled
22    hearing date is Tuesday, July 30th, in Boston with video
23    connection to San Juan, unless Judge Dein hears that there's
24    some agreement to another process that would obviate the need
25    for that.  And if there is going to be, please let her know
```

1    sooner rather than later.

2         And then on Friday the 2nd we have the argument on

3    the Oversight Board's litigation against the Governor and the

4    Governor's Motion to Dismiss that Complaint.

5         I would like to thank the court staff here in Puerto

6    Rico, in Boston and in New York for their ongoing work in

7    connection with these cases.  And I wish you all safe travels

8    and that you will keep well.  Thank you.

9         (At 1:50 PM, proceedings concluded.)

10                        *     *     *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  U.S. DISTRICT COURT     )

 2  DISTRICT OF PUERTO RICO)

 3

 4       I certify that this transcript consisting of 111 pages is

 5  a true and accurate transcription to the best of my ability of

 6  the proceedings in this case before the Honorable United

 7  States District Court Judge Laura Taylor Swain, the Honorable

 8  United States Magistrate Judge Judith Gail Dein and the

 9  Honorable United States Bankruptcy Court Chief Judge Barbara

10  J. Houser on July 24, 2019.

11

12

13

14  S/ Amy Walker

15  Amy Walker, CSR 3799

16  Official Court Reporter

17

18

19

20

21

22

23

24

25
```

< Dates >
August 1st 13:20
August 2 9:12
August 31, 2017 40:2
August 31, 2019 8:12
August 31st 42:8
August 31st, 2017
   41:1
July 23rd 16:13
July 24, 2019 1:16,
   6:2, 111:10
June 18, 2019 8:9
June 29th 40:5,
   40:25
June. 23:7
May 2, 2019 34:23
May 29 34:23
November 14th, 2019
   60:17
November 4th, 2019
   60:15
October 28, 2019
   60:1


< 1 >
10 26:1, 38:20
100,000 18:20, 19:4,
   23:24
101(e)(5 8:11
10282 33:25, 34:7,
   34:23
10282. 33:23, 34:4,
   34:5, 36:22
106 14:9
107011 38:21, 39:4,
   39:6, 39:7
10:30 7:21
111 111:4
11:14 63:12
11:30. 63:10
11:35 63:13
120 56:1
120-day 73:5, 77:3
12:18 91:8
14 37:19
145 46:6
145,000 18:13, 18:20
15 63:10, 82:14
15-minute 63:7,

106:4
165,000 15:3, 18:5,
   43:8
17-3283 91:23
17-BK-3283(LTS 1:6
17-BK-3566(LTS 1:28
18-149 57:11
18-AP-149(LTS 2:3
19-AP-281 57:14
190 38:21, 39:5
190. 38:20, 38:22
1:00 7:15
1:15. 91:6
1:21 91:9
1:50 110:9


< 2 >
2001 35:7
2004 14:21, 80:25,
   81:11, 81:17,
   108:17
2019. 57:14, 59:25
207 14:4
215 50:1
21: 2:35
23624. 28:24
254 46:24
28 94:17, 101:12,
   101:18
280 67:24, 78:4
282 57:14
283 57:14
284 57:15
285 57:15
286 57:15
287 57:15
288 57:15
29 9:11, 14:12
291 57:16
292 57:16
293 57:16
294 57:16
295 57:16
296 57:16
297. 57:16
2nd 110:2


< 3 >

30 9:23, 57:21
30th 59:25, 109:22
3283 57:8
33003 34:2, 34:3,
   34:5, 34:23
33003. 34:9, 37:16
345 18:14
355 57:15
356 57:15
357 57:15
358 57:15
359 57:15
35th 27:12
360 57:15
361 57:15
362 78:14
363 78:14
364 78:14
365. 78:15
36659 45:11, 45:12
37571 45:10, 45:12
3799 111:15
384 38:17
39th 28:12
3: 1:6, 1:28, 2:3


< 4 >
418 27:16
43 18:6
459 85:25
45th 32:11, 33:5
46 40:10
46th 38:15, 44:3,
   44:7, 44:10
4784 57:9
48th 33:15, 44:4,
   44:13, 46:1, 46:10
49th 46:5, 46:19,
   46:20


< 5 >
50 88:6
500 33:17
50th 46:23, 49:20
510(b 26:3
5427. 30:20
552. 9:16
5580 57:9

5586 57:9
5589 57:9
56.2 103:21
56th 49:25, 52:13
59th 52:16, 53:22
5:00 7:15

< 6 >
60916. 29:10
636 94:18, 101:19
636(c 101:13,
   104:16, 105:10
6482 57:9

< 7 >
70 85:25
7057 57:9
7137 57:9
7154 82:14
7224 91:23
7243. 28:8
7269-4 40:10
7579 29:9
7584. 28:23
7640 57:9
7662 33:22
7680 30:19
7747 57:9
7803 57:10
7814 57:10
7864 38:8, 38:14
7877. 49:4
7882 57:10

< 8 >
80,000 19:5
8020 57:10
8065 28:9
8141. 57:10

< 9 >
90 14:5
9019 13:13, 90:8,
   90:18
91 52:17
99 28:13

99. 57:11
9:48 6:3

< A >
A&M 20:9, 20:16,
   20:23
A. 2:38, 3:33, 38:1
AAFAF'S 14:15
ability 66:3, 111:5
able 19:7, 20:2,
   36:9, 61:24, 62:2,
   62:15, 62:17,
   63:23, 68:10,
   79:5, 95:3
Absent 96:9
Absolutely 25:12
abundance 21:14
accept 99:11
acceptable 71:8
accepting 65:22
accompanied 102:20
accomplished 70:21
accordance 106:10
accordingly 39:12,
   69:8
account 29:11, 65:3,
   108:12
accurate 111:5
accurately 104:13
achievable 86:22,
   87:5
achieve 62:2
achieved 60:9
acquired 88:2
across 58:17, 58:18
Act 12:14, 14:9,
   14:12, 36:24,
   59:17
acting 10:22
action 15:18, 31:12,
   33:2, 44:22, 78:13
active 9:1, 90:25
actively 8:23
activities 8:5,
   8:16, 13:9
activity 9:10
actual 87:4, 104:5
actually 21:24,
   22:7, 22:8, 26:18,

44:19, 66:8
Ad 3:11, 3:39, 55:8,
   85:12, 86:13
add 71:20, 71:23,
   72:9, 81:23,
   86:14, 87:12
added 81:23, 81:24
adding 22:8, 80:21
addition 8:23,
   57:12, 62:6
additional 10:3,
   20:22, 22:9,
   22:19, 49:16,
   58:10, 69:10,
   69:15, 91:21,
   96:9, 97:5, 100:2
address 10:17, 20:3,
   35:2, 59:20,
   97:13, 97:24,
   106:2, 108:18,
   109:6
addressed 25:23,
   76:17, 76:23,
   87:14, 100:12
addressing 14:21,
   57:24, 58:8
adequate 84:21
adjourn 81:11,
   95:23, 108:20
adjourned 60:19,
   68:6
adjourning 72:4
adjudicate 103:13
adjudications 95:15
adjudicative 100:18
adjudicatory 105:21
adjust 10:1
Adjustment 9:21,
   11:14, 13:6,
   13:17, 13:21,
   26:2, 54:23, 59:3,
   59:6, 59:10, 60:5,
   61:6, 72:23,
   73:22, 73:25
admin 18:25
Administered 1:11,
   1:33, 2:8
administrable 43:21
administratable
   94:20

Administrative
  23:21, 23:25,
  24:23, 24:25,
  25:2, 25:7, 43:7,
  92:3, 96:24,
  106:11
administrator 37:7
adopted 95:19, 98:16
advance 20:17,
  41:19, 43:4,
  59:13, 101:21
advancing 13:4
advantages 85:2
adversarial 80:18
adversaries 55:13,
  73:21, 76:14,
  76:16, 76:21
Adversary 2:40,
  54:21, 55:3,
  56:14, 57:10,
  57:13, 57:18,
  57:20, 60:4,
  61:17, 62:10,
  67:24, 76:10,
  78:3, 78:4, 78:13
advisable 59:20
advise 64:13, 82:5
advisors 15:2
Advisory 10:15
affect 55:15
affected 59:16,
  89:25
afford 100:25
afforded 26:7, 93:6
afraid 82:2
afternoon 78:1,
  80:10, 84:8,
  87:10, 108:4,
  109:6
agencies 14:25
Agency 10:15, 10:21,
  78:25
Agenda 7:16, 7:18,
  7:20, 8:3, 16:1,
  16:10, 16:19,
  17:4, 46:5, 49:25,
  54:19, 54:20,
  76:7, 82:13,
  89:15, 91:11,
  109:5, 109:9,

  109:21
agent 14:17, 14:19,
  20:23
ago 61:20
agree 40:23, 41:5,
  42:11, 42:13,
  65:16, 65:17,
  65:19, 71:3,
  81:23, 86:24, 87:7
agreeable 72:4,
  89:22
agreed 12:20, 60:2,
  60:3, 60:21, 62:5,
  62:6, 62:15,
  73:20, 77:13,
  80:20, 108:6,
  108:15
agreeing 82:3, 84:21
Agreement 56:19,
  61:7, 61:24, 71:7,
  71:15, 83:9,
  89:25, 105:9,
  109:24
agreements 8:21,
  11:22, 11:23,
  11:24, 68:9,
  68:18, 71:14
Ahorro 50:6, 50:22
aid 96:14
aimed 9:5
al 1:16, 2:29
alerted 20:9, 67:23
Alicia 35:13
alike 93:20
alleged 59:4
allegedly 47:3
allow 31:9, 32:24,
  42:14, 74:24,
  74:25, 84:21
allowed 39:6, 41:1,
  41:9, 42:9, 71:20,
  92:25, 104:4,
  104:6
allows 13:8
alluded 71:3
Alluding 74:20
already 7:3, 26:11,
  65:11, 67:24,
  79:7, 93:24
alter 40:12

altered 54:19
Alternative 17:6,
  36:1, 91:12,
  91:20, 92:7,
  92:10, 92:12,
  93:13, 93:15,
  104:18
alternatives 99:25
although 12:4, 71:19
Alvarez 19:24, 45:8,
  47:17
Ambac 3:43, 14:24,
  56:17, 71:23,
  80:11, 87:16
amenable 77:5, 80:20
amend 21:19, 21:22,
  22:4, 22:7, 39:5,
  39:11, 40:4, 43:1,
  44:19, 45:11,
  46:12, 46:14
Amended 21:4, 21:17,
  21:23, 33:16,
  33:18, 38:17,
  38:22, 38:24,
  40:4, 40:24,
  41:24, 42:2, 42:7,
  42:20, 42:24,
  43:16, 46:7, 48:5,
  48:7, 48:8, 48:10,
  48:16, 49:6, 49:8,
  49:10, 50:15,
  51:3, 82:13, 82:15
amending 21:21
amendment 20:12,
  21:16, 34:24,
  36:14, 44:17,
  44:19, 49:9
amendments 48:6
amends 34:3, 34:5,
  34:25, 43:16
Amerinational 3:15
Among 8:17, 67:23,
  81:25, 98:6,
  98:24, 99:15
amount 17:23, 39:3,
  40:6, 40:19,
  42:17, 65:21,
  66:24, 92:25,
  104:4, 104:5
amounts 18:6, 18:14,

64:14, 66:6
Amy 111:14, 111:15
analyze 31:10, 32:25
and/or 13:6, 48:3,
  60:6, 73:24,
  103:2, 103:7,
  104:8, 105:14
announced 9:23,
  74:22
answer 10:8, 20:2,
  64:8, 75:23, 78:5
anticipated 14:4,
  54:22, 58:23,
  96:10, 97:14
anticipates 10:2,
  43:15, 73:11
Anyway 57:7
AP 57:3
apologize 38:11,
  44:13, 88:22
appeal 9:3, 101:14,
  101:18, 103:3
appealed 9:15
appealing 9:4, 9:8
appeals 13:20
appear 94:18, 100:22
APPEARANCES 2:26,
  3:1, 4:1
appeared 21:9,
  21:23, 58:6
appears 8:14, 34:12
appellate 105:25
appendix 56:22, 57:4
applicable 14:5,
  46:25
Application 16:12,
  75:12, 97:16,
  97:17, 104:21
applications 16:2,
  68:17
applied 40:24,
  40:25, 41:8, 42:8
applies 42:7
apply 56:11, 57:13,
  77:13, 77:14,
  77:15
appreciate 27:4,
  85:18, 92:4
appreciated 107:22
approach 87:1

approached 35:12
appropriate 6:18,
  19:2, 56:8, 61:1,
  61:2, 61:4, 62:25,
  69:10, 74:4,
  85:14, 86:7,
  100:19, 103:20
approval 24:1, 60:6,
  73:24, 94:4, 107:3
approve 94:1
approved 22:21,
  22:25, 43:15,
  61:25
approving 91:21,
  91:22, 92:9, 92:13
approximately 18:13
arbitration 99:15,
  99:25
arbitrations 100:21
Area 4:5, 105:15
arguably 62:12
argue 41:9, 42:9,
  81:11
arguing 14:11
argument 59:19,
  72:4, 110:2
arguments 91:15,
  103:8, 103:12
Ariel 51:10
arise 32:16
arising 96:18, 96:21
around 7:21, 72:20,
  84:14
Arps 78:2
Arribas 2:35
articulate 79:6
articulated 67:14
ascertain 19:8
asks 39:5
aspect 25:21, 73:10
aspects 46:20, 92:4,
  92:25, 100:11,
  100:15, 101:8
assert 21:24, 28:14,
  28:17, 28:18,
  34:5, 39:2, 42:17,
  42:20, 43:1,
  45:19, 48:17,
  48:18
asserted 20:13,

42:21, 47:1, 48:18
asserting 28:21,
  96:18
asserts 34:8
assess 56:5, 97:23,
  103:13
assessing 21:3
assignments 98:6
assist 61:22
assistance 61:16,
  64:9, 64:10, 67:6
assisted 19:11
associated 28:14,
  28:17, 29:15
assume 25:2, 87:25
Assuming 18:8,
  30:14, 45:5, 80:21
Assurance 3:43
assure 69:2, 71:9
Assured 3:21, 3:22,
  8:14, 90:14,
  90:21, 90:23,
  90:25
Atara 3:44, 80:10
attached 29:11
attachments 103:14,
  103:17
attempt 61:22, 89:6
attempted 28:17,
  28:18
attended 61:20
attention 55:22
attention-shifted
  68:16
Attorney 34:13,
  35:7, 35:16,
  82:10, 103:7
attorneys 36:4, 36:6
audible 7:4
auditing 17:18
augmentation 105:5
August 10:23, 12:21,
  43:23, 107:2
AUST 2:35
Authority 1:22,
  2:11, 3:37, 10:15,
  14:2, 78:21,
  101:17
Authorize 91:12
authorized 34:13

authorizing 91:20,
    92:7, 106:20,
    107:18
automatic 99:1
Autoridad 50:7
available 15:22,
    90:10, 95:5,
    97:13, 103:4,
    104:25, 108:7
Aviles 44:15
avoid 100:4
avoidance 56:15,
    78:13
aware 10:19, 92:2,
    101:15
away 67:5, 67:10
Azize 45:8

< B >
back 17:8, 24:9,
    38:12, 41:4,
    43:10, 43:17,
    61:20, 67:3, 75:4,
    105:20, 106:18,
    109:15, 109:18
bag 81:16, 81:17
Bailey 34:1, 34:11,
    34:24, 35:1, 37:1,
    37:3
balanced 55:10
ball 88:25
Bank 11:12, 85:25
Bankruptcy 1:1,
    2:23, 9:16, 85:25,
    98:16, 99:18,
    111:9
bar 18:2, 18:21,
    41:16, 41:17, 43:4
Barbara 2:22, 111:9
barely 64:16
Barranquitas 4:6
barriers 94:4
based 17:16, 22:23,
    41:24, 59:4, 65:8,
    68:5, 92:22, 103:7
baseline 23:9
bases 22:9
basically 35:4,
    68:11

basis 28:14, 28:20,
    80:5, 80:6, 82:24,
    84:22, 95:18
Baul 75:9
bearing 45:14, 51:13
becomes 102:24
begin 27:12, 62:25,
    80:4, 107:2
beginning 54:20,
    92:20
begins 101:21
behoove 89:5
belated 86:4
belief 62:14
believe 18:12, 23:1,
    23:6, 30:4, 60:23,
    74:16, 79:25,
    85:25, 86:3, 86:6,
    88:25, 90:18
believes 55:4, 61:4
benchmark 72:25
benefit 19:1, 36:17,
    93:19, 96:25
benefits 24:15,
    84:18, 90:25,
    96:22, 96:25
best 22:5, 22:6,
    55:4, 111:5
better 43:18, 65:25
BIENENSTOCK 2:29,
    7:24, 7:25, 8:1,
    10:10, 14:11,
    64:5, 64:6, 64:7,
    68:3, 68:8, 68:19,
    69:15, 70:13,
    70:22, 71:10,
    71:17, 71:18,
    72:8, 72:11,
    74:20, 80:20,
    81:4, 81:7, 81:19,
    83:25, 84:3, 84:5,
    108:23
billion 18:14
billions 18:16
binding 99:14,
    99:24, 104:9,
    105:15
bit 74:20, 75:22,
    86:17
blank 19:5, 19:14,

    19:18
bless 15:19
Block 74:12
body 97:3
bond 14:14, 28:20,
    28:25, 29:14,
    29:15, 30:9,
    30:22, 45:14,
    45:19, 47:9, 50:8,
    52:1, 52:22,
    53:11, 76:13
bond- 55:2
Bondholders 3:13,
    3:41, 9:15, 9:18,
    11:17, 13:25,
    14:6, 14:10,
    27:24, 29:2,
    29:17, 30:24,
    47:10, 50:11,
    51:15, 52:24,
    53:13, 55:9, 59:21
bonds 13:19, 14:3,
    28:15, 28:17,
    28:18, 28:19,
    29:12, 29:25,
    30:8, 32:16,
    32:23, 47:2, 47:3,
    48:17, 48:18,
    48:19, 48:21,
    50:23, 51:12,
    55:11, 56:12,
    56:14, 56:16,
    58:12, 58:17,
    58:18, 59:22,
    82:16, 86:2, 86:5
Bonita 31:21, 31:24
bookbag 72:7
borrowed 99:6
Boston 109:22, 110:6
bought 86:2
box 20:12, 21:16,
    21:21
Bracewell 83:6
Bradford 52:20
branch 11:7
break 63:7, 81:14,
    91:5, 106:4, 108:5
Brian 2:31, 16:23,
    40:9
brief 13:9, 40:9,

85:22
briefing 14:9,
   59:18, 103:10
briefly 16:5, 16:9,
   54:3
briefs 87:21
bright 69:23
bring 7:13
bringing 14:18, 19:2
broad 24:18, 89:17
broaden 83:23
broker 53:15
brought 64:11, 81:16
Brunell 35:10,
   35:15, 35:25
buckets 24:12
budget 8:25, 9:9,
   55:10
budgets 11:19
Buenas 91:10
buenos 6:5
Building 2:11, 6:17,
   105:19
Buildings 3:36,
   78:20


< C >
C. 3:19, 52:20
Cadwalader 90:14
calculated 70:6
calendar 60:18
call 40:9, 81:18,
   108:6
Callen 3:5
calling 106:4
cap 84:21
capacity 95:6
Caparra 50:22
care 26:14, 66:23,
   67:2, 86:8
carefully 91:19,
   98:15
Carreno 35:13
Carrero 44:15
carve-outs 43:20
carved 45:4
Casanovas 47:5
case 13:7, 27:18,
   27:24, 29:2,

29:16, 30:24,
   32:15, 35:24,
   36:3, 45:17,
   47:11, 50:4,
   50:12, 50:25,
   51:15, 52:19,
   53:13, 57:8,
   86:22, 89:11,
   91:23, 98:16,
   99:5, 99:11,
   99:13, 99:22,
   102:3, 102:8,
   111:6
cases 6:12, 34:14,
   62:8, 85:17,
   88:24, 106:24,
   110:7
Castro 28:23
CAT 4:49
categories 96:12
category 69:10
caution 21:14
caveat 32:7, 40:15,
   40:20
CEO 12:18
certain 12:5, 20:16,
   20:23, 21:19,
   21:23, 56:18,
   59:12, 59:23,
   78:2, 88:6, 92:4,
   92:16, 92:19,
   102:6, 108:6
certainly 34:25,
   81:24, 89:20
certificates 17:12
certification 23:13,
   54:4, 54:8
certified 8:24, 9:9,
   103:24
certify 22:24, 111:4
certiorari 8:8, 9:17
cetera 65:22, 68:13
challenges 58:14,
   58:17, 58:23,
   86:4, 95:3
challenging 9:13,
   23:23, 86:18
chambers 23:13, 54:9
change 9:8, 21:12,
   22:11, 34:25,

35:4, 37:13, 57:6,
   86:1, 89:4
changed 15:7, 23:9,
   38:25
changes 20:23,
   21:10, 106:2
changing 7:16, 68:12
channel 25:6, 96:13,
   97:20
channeled 104:23
chaos 74:18, 76:25
character 97:5,
   98:13
characterizing 70:5
charged 19:10
checked 21:16,
   21:21, 54:7
Chief 2:22, 61:14,
   63:20, 70:19,
   77:8, 79:20,
   79:23, 81:22,
   89:20, 111:9
choices 9:5
Christian 12:18
Circuit 8:7, 9:3,
   9:15, 101:14,
   101:18, 103:3
circumstances 102:7
citizens 6:18
City 98:16, 98:23
Civil 103:21
claim-related 55:3
claimant 21:16,
   21:18, 21:20,
   22:20, 29:13,
   34:6, 34:8, 38:20,
   38:23, 39:10,
   39:11, 44:16,
   44:18, 44:21,
   46:11, 46:13,
   46:15, 49:18,
   52:4, 53:15, 93:1,
   93:7, 97:9, 99:3,
   103:22, 104:15,
   104:16, 105:7
Claimants 20:11,
   20:12, 24:5,
   51:17, 92:16,
   92:19, 93:5,
   101:1, 102:22,

104:2
clarify 78:5, 104:22
clarifying 82:25
clarity 93:24
Class 26:1, 65:22
classification 58:24
classified 26:4
clawback 96:19
clawbacks 58:20
clean 107:5
clear 25:9, 30:10,
    68:21, 86:15,
    87:1, 87:6, 89:3,
    89:9, 93:12,
    98:20, 103:3,
    104:9
clearly 30:15,
    37:15, 42:25,
    87:19, 98:18,
    104:3, 104:21
Clerk 18:3
client 36:1, 36:7,
    36:21, 76:16
clients 75:12,
    77:14, 86:17, 87:4
clock 84:14
close 13:20
closely 10:25
CNO 17:15
Coalition 3:9, 84:10
Code 9:16, 26:3,
    94:17
COFINA 11:14, 13:18,
    26:1, 26:3, 26:4,
    62:3, 72:21
COHEN 2:41, 78:1,
    78:9
cohesive 86:19
cold 77:4
collaborated 12:3
collateral 55:23,
    56:5
colleague 25:17
colleagues 64:11
collect 63:8
collectively 92:8,
    92:14
column 40:13
Comerio 4:6
comes 70:15, 70:17,

72:15
comfort 24:5
coming 62:5, 74:10,
    88:24, 106:18
commence 59:8, 61:1,
    61:4
commenced 98:23
commencement 105:11
comment 67:3, 69:15,
    78:12, 89:18
comments 68:5,
    74:20, 78:14,
    87:12
committed 6:19
Committee 2:37,
    3:27, 68:23,
    74:13, 74:21,
    84:1, 87:11
committees 56:3,
    58:4, 59:20
common 58:15, 97:25,
    105:16, 105:19
Commonwealth-based
    95:4
Commonwealth-cofina
    61:23
communicate 6:24
communicating 7:10
communication 79:12
communications 15:9
Community 3:16
Company 3:4, 37:17,
    48:4, 48:13
compelled 85:2
compile 9:25
compiling 8:19
Complaint 9:11,
    57:25, 110:4
complaints 57:17,
    57:20
complete 26:8
completely 71:3
completes 109:4
complex 62:12, 67:4,
    72:22
complexity 20:8,
    64:19, 64:22,
    83:18
compliance 12:1,
    106:13

comply 46:25, 98:13
component 93:21,
    95:11, 96:13,
    96:16, 98:9, 100:7
comport 95:24
comprehensive 56:10
computer 21:1
conceivably 41:20
concept 73:6
conceptually 24:21
concern 73:1, 100:12
concerned 55:23
concerning 9:16,
    56:14, 91:15, 96:9
concerns 6:11,
    17:24, 19:19,
    20:3, 20:10, 22:3,
    40:17, 69:22,
    106:2
concluded 54:14
concluded. 110:9
concludes 109:9,
    109:21
conclusion 16:14,
    55:25
Concurrently 9:2
conditional 55:9
conduct 95:6, 100:20
confer 82:4
conference 6:22,
    68:4
conferred 108:5
confident 33:10
confidential 99:7
confidentiality 80:5
confirm 38:25,
    53:15, 55:17,
    80:19, 83:24
confirmation 54:22,
    55:7, 56:17,
    59:23, 59:24,
    60:7, 60:24, 61:6,
    62:2, 67:9, 67:11,
    67:13, 71:5,
    73:24, 104:7
Confirmed 26:3,
    34:10, 66:1
confirming 82:1
confiscation 7:12
conflicting 103:7

confusing 104:1
confusion 34:12
conjunction 105:4
connect 29:23
connected 30:15
connection 13:5,
    17:22, 19:11,
    19:16, 19:25,
    42:1, 54:4, 55:7,
    58:22, 59:13,
    73:15, 75:24,
    76:10, 93:23,
    99:2, 101:8,
    101:11, 103:1,
    109:23, 110:7
consensual 11:11,
    62:3, 62:7, 71:5,
    73:11, 80:17,
    86:21, 87:4,
    95:18, 99:24
consensus 8:18,
    11:16, 56:6, 60:8,
    85:13
consent 60:13, 93:8,
    99:14, 101:3,
    101:7, 101:9,
    101:10, 101:12,
    101:16, 101:19,
    101:23, 104:10,
    104:17, 105:8,
    105:10
consented 93:1
consents 100:13,
    104:11, 104:15
consider 60:17,
    105:19
consideration 55:1,
    56:11, 58:7,
    59:13, 60:6,
    73:14, 77:17,
    90:23, 92:5,
    107:17
considerations
    64:25, 65:2, 75:18
considered 89:16
considering 18:24,
    73:23
consistent 6:21,
    12:6, 26:22,
    94:25, 102:9

consisting 111:4
Consolidated 16:11
constituents 74:24
Constitution 59:5
Constitutional 3:8,
    66:23, 67:1,
    75:12, 84:10, 86:9
construct 82:22
Construction 40:7,
    51:11, 102:23
constructive 12:14,
    13:2, 66:13
consulted 92:2
contact 35:10,
    36:25, 37:13
contained 29:11,
    50:7, 51:12, 51:25
contemplate 86:23,
    100:19, 101:3
contemplated 94:24
contends 9:7
contested 7:19,
    17:5, 25:3, 25:16,
    27:13, 28:11,
    32:6, 52:15,
    54:21, 60:4,
    61:18, 73:21,
    100:9
context 25:8, 65:25,
    76:23, 85:4, 92:5,
    92:23, 102:21,
    104:6, 108:18
contingency 42:13
continue 11:4,
    12:12, 12:24,
    13:1, 15:13,
    18:18, 24:16,
    25:1, 35:9, 57:18,
    68:18, 81:2
Continued 3:1, 4:1,
    11:7
continues 8:17,
    10:21, 13:12,
    14:1, 14:7
continuing 8:13,
    83:22
continuity 11:1
continuously 64:9
contract 97:6
contractual 14:18

contrary 36:21, 69:2
contribute 6:16, 8:2
control 60:18,
    108:21
controversies 93:25
controversy 101:20
conversation 90:16
conversations 81:8,
    90:17
convey 103:12
convinced 19:8
cooperated 12:2
cooperation 11:14,
    59:7
Cooperativa 50:6,
    50:21
cooperative 12:14
coordinate 14:7,
    66:12
coordinated 58:19
coordinates 25:10
coordinating 59:18
copies 54:9
copy 57:2, 57:23
Corozal 4:7
Corporacion 4:3
Corporation 3:22,
    3:24, 3:44, 50:9
corporations 11:20,
    14:25
Correct 28:10,
    36:15, 43:2,
    43:12, 45:7,
    49:21, 68:25,
    75:25, 77:15
Counsel 6:6, 15:6,
    34:1, 34:10, 35:1,
    35:12, 39:14,
    39:16, 42:18,
    63:9, 64:2, 77:25,
    82:4, 92:2, 96:14
counsels 92:5
course 8:3, 10:7,
    13:4, 65:7, 79:13,
    90:6, 90:9, 100:8
COURTROOM 6:24,
    7:10, 7:13, 19:23,
    37:9, 37:11,
    65:12, 69:16,
    83:11

Courts 92:3, 106:12
covered 9:14, 27:23,
  28:25, 29:15,
  29:25, 30:23,
  34:8, 45:15,
  45:19, 50:24,
  51:13, 52:2, 52:23
Craig 3:47
cramdown 65:23
create 74:19
created 95:17,
  102:10
creating 76:25
creation 59:19
credibility 102:14
credit 108:14
Credito 50:6, 50:22
creditor 8:18, 8:21,
  9:25, 10:3, 13:14,
  21:5, 34:13,
  74:24, 75:10, 97:3
Creditors 2:38,
  12:4, 12:6, 31:24,
  65:12, 66:6,
  66:16, 66:17,
  66:20, 93:19
critical 11:3,
  11:10, 12:23,
  89:11, 106:23
CRL 31:21
crosscutting 56:5,
  82:24
crucial 89:10
CSR 111:15
culminating 92:24
current 10:1, 94:4,
  98:9, 100:15
currently 15:1,
  55:4, 61:18, 98:10
CUSIP 27:22, 28:4,
  28:25, 29:14,
  29:24, 30:9,
  30:21, 30:22,
  45:14, 47:7, 47:8,
  48:3, 49:5, 50:10,
  51:13, 52:1,
  52:22, 53:11
custom 43:7
customized 43:9
customizing 43:20

cut 57:5
cycle 73:2


< D >
damages 97:10
Damexco 33:21,
  33:25, 34:2, 35:3,
  35:7, 35:11,
  35:25, 36:24,
  36:25, 37:1, 38:9
data 8:19, 9:25
date 18:2, 18:10,
  18:21, 20:9,
  41:16, 41:17,
  43:4, 58:1, 58:6,
  60:20, 89:8,
  108:21, 109:22
dates 89:4
day 37:23, 74:25,
  109:12, 109:14
days 9:23, 37:19,
  56:2, 57:21
De 4:3, 4:5, 32:20,
  50:6, 50:7, 50:21,
  50:22, 102:4
deadline 16:12,
  41:17
deal 7:17, 37:10,
  65:20, 74:21,
  74:25, 81:10,
  87:25, 107:16,
  107:20
dealing 23:18,
  73:13, 75:17,
  89:10
deals 68:24, 69:3,
  69:24, 70:2,
  74:25, 83:25,
  107:6
dealt 16:2, 24:4,
  26:16, 69:3
Debt 3:8, 55:10,
  58:22, 65:15,
  79:3, 84:10, 84:20
Debtor 1:42, 14:16,
  28:19, 55:24,
  61:7, 73:23,
  103:23, 105:4
Debtors 1:24, 15:4,

18:3, 20:15,
  28:16, 32:18,
  53:3, 62:8, 91:12,
  92:2, 92:18,
  93:19, 94:6,
  96:13, 96:17,
  97:4, 97:20,
  97:22, 101:1,
  102:15, 102:19
December 60:19,
  108:21
decide 71:14, 88:4,
  88:10
decided 21:4, 79:20
decision 102:13,
  103:3
decisions 10:21,
  12:5, 98:12
declarations 103:7
declare 91:5
deemed 26:7, 69:10,
  93:8, 101:3
deems 61:2, 85:14
Defendant 2:13, 78:2
Defendants 2:41,
  57:19, 58:5, 78:3
defending 13:20
deferring 107:16
deficient 48:15,
  48:23
define 99:19
definitive 13:23
Dein 2:20, 81:17,
  91:19, 109:10,
  109:11, 109:13,
  109:23, 111:8
Del 3:46, 4:5, 38:8,
  39:14, 39:16,
  39:23, 40:1, 43:22
delay 9:24
delaying 86:6
Delia 49:3
delighted 79:24
delineated 12:9,
  61:19
delivered 63:5
democracy 15:18
demonstrated 55:8
demonstrating 31:25
denial 7:12

deny 95:22
deposited 108:14
DEPUTY 37:9, 37:11
describe 104:14
describes 96:6
designation 9:14,
    108:13
Despins 2:38, 87:9,
    87:10, 87:11,
    87:18, 87:22,
    88:19, 88:21,
    89:21, 90:1, 90:3
detail 30:21, 31:7,
    94:8
detailed 10:19
details 45:14,
    74:16, 96:9
determination 8:8,
    59:16, 99:2,
    102:4, 105:20
determinations
    97:18, 98:2,
    102:14, 105:22
determine 21:18,
    28:16, 32:18,
    60:25, 76:19,
    97:11, 100:6
determined 75:21
determines 77:12
Detroit 98:16,
    98:17, 98:22,
    98:24, 98:25,
    99:10, 99:12
develop 100:7,
    102:17
developed 11:18
Development 11:12,
    11:19, 13:16, 14:8
developments 15:10,
    55:19
device 7:2, 7:3,
    7:10, 7:12
devices 6:23, 7:1,
    7:13
devil 74:16
devise 105:12
devised 93:17
dialogue 80:4
dias 6:5
Diaz 47:23, 47:24

difference 21:13,
    39:9, 41:11
different 12:17,
    20:13, 21:24,
    22:11, 64:14,
    98:21
difficult 64:21,
    70:20
difficulty 54:8
direct 101:14
directed 58:4, 58:8,
    76:13
direction 11:6,
    73:12, 104:10
directive 106:10
director 10:22,
    10:24, 10:25,
    12:19
Directors 10:20,
    19:24
disagree 40:1
disagreement 12:5
disallow 27:15,
    28:1, 28:13,
    32:12, 33:17,
    35:20, 38:16,
    45:21, 46:6,
    46:24, 47:13,
    48:23, 50:1,
    50:18, 51:6,
    51:20, 52:8,
    52:17, 53:6
disallowance 34:7,
    39:12
disallowed 35:21,
    39:6, 40:14, 48:7,
    49:1, 49:10
disallowed. 40:13
discerning 36:7
discharge 26:9
discharged 26:12
discipline 84:23
disclose 60:12
disclosure 8:20,
    10:4, 59:14, 60:6,
    73:3, 73:4, 73:7,
    73:14, 73:24,
    75:18, 75:19,
    105:4
Discovery 12:2,

14:23, 14:24,
    80:25, 99:16,
    101:1, 102:15,
    108:17
discrepancy 19:22
discuss 73:1, 95:21
discussed 46:10,
    74:5, 76:6, 88:23
discussion 85:4
discussions 40:8,
    62:24, 65:9, 66:7,
    66:8, 66:10,
    66:15, 69:7,
    72:10, 109:3
Dismiss 9:12, 14:12,
    110:4
display 56:20
displayed 56:25,
    83:3
dispositive 101:25,
    102:1
Dispute 17:7, 34:4,
    39:4, 39:10,
    42:23, 48:14,
    50:13, 50:15,
    51:1, 51:4, 51:16,
    51:19, 52:3, 52:6,
    53:1, 53:3, 53:14,
    53:17, 61:23,
    88:17, 91:12,
    91:20, 92:7,
    92:10, 92:12,
    93:14, 93:15,
    103:13, 104:18
disputes 94:20,
    94:23, 95:13,
    95:15, 97:6, 97:8,
    100:1, 101:6,
    103:5, 105:1
distinction 98:18
distinguish 104:13,
    104:21
distributions 26:7
District 1:3, 2:18,
    2:19, 2:21, 2:22,
    101:17, 101:22,
    102:3, 103:1,
    103:9, 103:21,
    111:1, 111:2,
    111:7

dividend 26:5
DLA 82:11
Docket 1:6, 1:28,
  2:3, 9:1, 17:13,
  23:14, 36:23,
  37:14, 41:6, 57:3,
  57:7, 57:8, 57:11,
  57:12, 62:21,
  80:21, 82:14,
  91:23
docketed 32:3
document 102:13
documentary 92:22
documents 7:3, 35:2,
  35:5, 108:8, 108:9
doing 109:19
dollar 88:7
dollars 18:6, 87:24
done 25:18, 40:7,
  70:11, 70:25,
  81:8, 107:24
dots 29:23, 30:14
doubt 64:23
doubts 22:17, 75:11
down 18:13, 18:15,
  42:22, 57:2,
  64:17, 77:1, 82:2
down. 36:16, 37:11,
  84:3, 108:23
dozens 55:21
draft 13:22, 73:17
drafted 40:20
drawn 83:10
Due 7:15, 12:17,
  23:22, 94:19,
  94:25, 100:22,
  102:9
duplicate 22:9, 23:3
duplicates 21:2,
  21:9, 27:17
during 7:10, 56:2,
  57:19, 67:9, 73:4,
  88:2, 100:8, 108:5
duties 12:16


< E >
e-mail 62:22
e-mailing 7:9
E. 2:41

earlier 7:22, 42:21,
  65:13, 67:12,
  82:2, 97:5
earn 87:24
Eastern 7:21
easy 87:20
ECF 28:8, 28:9,
  28:23, 29:9,
  30:19, 33:22, 49:4
echo 80:12
economical 95:8
economy 6:17
educated 22:1
education 6:15
educational 20:7,
  20:15
Edwin 27:19, 31:6
effect 58:1
effective 101:10
effects 55:23
efficiencies 103:16
efficiency 9:6, 98:6
efficient 59:11,
  59:14, 93:14,
  94:21
efficiently 97:25,
  103:14
effort 11:5, 12:25,
  34:11
efforts 9:25, 13:13,
  55:9, 55:17, 93:23
Eight 59:7
either 28:15, 32:14,
  60:2, 66:24,
  73:11, 77:4,
  99:10, 99:18,
  99:22
elbow 70:3
elected 59:8
Election 92:11
Electric 1:21
Electrica 50:7
electronic 6:23, 7:1
elements 23:9, 56:18
elicit 104:11
elide 100:17
eligibility 97:7
eliminated 102:15
Emanuel 84:9
emblematic 64:18

embodied 67:16
emerge 6:14
Emery 27:19, 28:9,
  31:6
emphasize 15:5
Empleados 50:6
employed 99:23
employee 96:22
Employees 1:37,
  3:28, 70:3
en 75:8
enable 6:14, 97:11,
  97:23, 98:5,
  103:13
encompassed 79:25
encourage 88:12
end 8:12, 10:6,
  74:25, 88:1
Energia 50:7
engage 102:21
engaged 8:23
engine 77:4
English 103:23
enough 66:9
ensure 21:1, 22:5,
  22:15, 23:10,
  105:24
enter 36:22, 56:23,
  105:9, 106:16,
  106:19
entered 11:21, 18:8,
  62:20
entering 17:13
enthusiastically
  84:5
entirely 43:16,
  100:1, 102:16
entities 11:22,
  58:18, 58:19
entitled 97:10,
  103:5
entitlement 88:7,
  96:24
entity 79:1, 108:11
entry 57:3, 57:7,
  57:8, 57:11,
  57:12, 91:20,
  91:23, 92:6
enumerated 57:18
enumerating 76:14

equally 12:10, 62:5
error 32:3
ERS 9:15, 14:7,
    14:10, 28:13,
    28:20, 28:25,
    29:2, 29:12,
    29:14, 29:16,
    30:9, 30:22,
    30:24, 32:22,
    38:16, 56:13,
    58:13, 91:25
especially 24:6
Esq 3:17, 4:8
essence 60:23, 95:13
essential 11:25,
    59:2, 75:13
essentially 96:4
establish 54:24
Establishing 82:15
estimate 35:21
estimated 7:19
et 1:16, 2:29,
    65:22, 68:13
Ethel 47:17
evaluate 49:17,
    96:11
evaluation 99:6,
    99:13, 99:22,
    105:16
evaluators 99:11
Evan 53:9
Evelyn 51:24
event 9:22, 43:10,
    60:11, 77:2, 99:3,
    99:17, 107:11
events 10:1, 10:18,
    12:17
everybody 24:20,
    63:8, 69:6
everyone 22:16,
    66:4, 69:16,
    72:25, 84:18,
    89:22, 91:4
everything 63:23,
    72:16, 109:4
evidence 100:24
evidencing 108:9
evidentiary 94:25,
    95:7, 98:1,
    102:12, 105:18

Exactly 21:8, 25:5,
    35:5, 106:23
Examiner 4:11, 16:5,
    16:11
example 21:6, 21:7,
    88:5, 94:21, 97:6,
    104:2
excellent 62:12,
    62:13
excess 18:6, 18:14
exchange 13:18,
    26:8, 92:20,
    94:22, 98:8,
    98:23, 99:4,
    99:16, 99:21,
    102:17
excuse 22:6
executive 10:23,
    10:24, 11:7
exemplar 103:21
exempt 13:19
exhaustive 68:13
EXHIBITS 5:9, 101:3
existence 8:14,
    67:13
existing 96:25
expand 13:13
Expanding 8:18
expect 57:4, 62:21,
    63:6, 102:16
expectation 69:5,
    74:1
expected 73:8, 90:6
expects 7:20, 10:23,
    12:22, 13:1
expeditiously 23:18
expense 73:9
experience 7:20
expire 59:25
explain 30:3, 42:18
explanation 102:20,
    103:18
explicit 86:15
explore 9:25
expressed 6:10
expressly 18:21
expunge 26:1, 26:11,
    36:14
expunging 26:17,
    36:22

extend 16:25, 68:10
extended 55:1, 57:20
extensions 57:22
extensive 12:2, 62:1
extent 14:10, 14:22,
    20:1, 21:6, 21:12,
    22:16, 58:15,
    59:7, 64:13,
    96:23, 97:9,
    97:17, 104:24
extremely 20:7,
    23:23
Eyck 4:11, 16:4


< F >
face 21:9
facilitate 60:22,
    68:16, 73:19,
    81:2, 93:14, 99:4
facilitated 60:2
facilitating 12:1
facilitation 88:13
facing 72:17
fact 20:11, 21:3,
    21:18, 21:22,
    42:25, 45:18,
    64:18, 67:12,
    70:24, 95:14,
    103:14, 103:15
fact-based 105:1
factor 11:8
facts 50:13, 51:1,
    51:16, 52:3, 53:1,
    53:14, 105:16
factual 14:8, 94:20,
    94:23, 95:15,
    98:2, 101:6,
    102:12, 103:5,
    103:6, 103:12,
    105:22
failed 46:25, 47:2,
    99:3
fails 32:17
failure 93:7
fair 93:14
faith 6:13
familiar 9:10
far 66:9, 107:16,
    107:24

fashion 12:14, 36:12, 58:19, 101:4
favor 21:4, 85:7
Fe-ri 51:11
feasibility 70:3, 95:10
feasible 37:4, 94:13, 100:18, 102:9
features 7:4
Federal 59:5, 94:17, 95:14, 95:19, 98:11, 98:12, 98:13, 100:19, 103:9
Fee 4:11, 16:2, 16:5, 16:10, 16:11, 19:11, 87:24, 88:7
feedback 95:24
feel 71:9, 85:2
Ferdman 51:11
few 8:3, 8:6, 9:21, 64:25, 79:6
Figueroa 45:2
figure 44:21, 84:14
figuring 67:7
file 9:20, 19:9, 19:13, 22:10, 22:22, 26:25, 57:5, 66:9, 70:8, 70:24, 72:23, 73:4, 76:15
filer 86:17
filing 16:14, 19:11, 24:15, 31:25, 52:4, 60:2, 65:7, 73:20
filings 23:10, 76:2, 76:3
final 23:20, 25:10, 49:14, 51:24, 53:9, 77:11, 86:8, 92:24, 93:3, 99:2, 100:14, 103:3
Finally 15:12, 52:15, 68:20, 103:25, 106:1
Financial 1:9, 1:31,

2:3, 3:3, 10:15, 11:4, 12:24, 47:8, 66:5, 66:6, 66:15, 66:17, 66:20, 70:2
Financing 50:9
find 6:13, 28:4, 66:12, 73:16, 88:17, 108:7
finds 96:10, 103:25
fine 26:20, 26:24, 67:1, 74:6, 85:5
Firestein 2:32
Fiscal 8:25, 9:4, 10:15, 11:19, 14:17, 14:19, 84:23
Five 58:23
five-page 101:2, 103:10, 103:15
fix 104:4
flagged 21:2
flow 105:1, 108:8
fly 88:10
focal 99:8
focus 76:13
focused 60:14, 98:19
folded 83:19
folks 83:10, 84:16
follow 29:22, 36:19, 67:21
follow-up 22:20
following 8:17, 18:2, 20:21, 31:24, 57:13, 58:9
follows 57:8
FOMB 82:14, 86:3
footnote 57:24
forbearance 11:21, 11:23
force 90:18
foremost 10:16
foreseeable 8:14
forever 77:3
forge 85:12
Form 38:25, 39:1, 40:2, 92:11, 92:13, 92:15, 93:8, 102:12, 103:25, 104:8
formal 24:25

formally 8:9, 64:12
former 12:18
forms 91:21
formula 64:21, 64:24
formulate 56:8
formulating 92:4
forward 6:13, 6:19, 16:16, 36:9, 43:24, 55:5, 62:23, 65:19, 67:5, 67:17, 68:22, 68:23, 70:6, 70:21, 71:11, 76:5, 80:17, 83:21, 83:22, 85:8, 85:11, 85:13, 86:16, 90:8, 90:17, 90:18, 90:20, 90:25, 106:24, 107:24
fostering 9:5
found 7:9, 88:20
foundation 102:23
Four 28:22, 50:5
Fourth 58:21, 92:16
fraction 104:6
frames 24:7
framework 74:17
frankly 67:2, 84:13
freeze 88:16
Friday 110:2
friends 89:3
front 11:25, 13:12, 88:3
Fulbright 78:20
full 57:1, 90:18, 103:12, 107:24
fully 68:21
fundamental 100:15
funded 18:17, 96:18
funding 84:22
funds 29:12, 32:16, 108:8
funneled 23:25
future 6:15, 6:16, 7:12, 8:15, 15:9, 15:11, 69:24, 72:5, 104:7

< G >
Gail 2:20, 111:8
gating 55:7, 56:5,
  79:8
gauge 94:10
GDB 48:17, 48:18
General 3:12, 8:5,
  55:8, 59:1, 69:9,
  96:6
generally 17:21,
  67:15
gently 71:3
genuine 94:19, 103:4
GERBER 3:37, 78:19,
  79:23, 80:7
gerrymandering 58:23
getting 26:18,
  60:23, 66:24,
  72:19, 80:1, 107:3
give 17:1, 24:5,
  24:25, 63:7,
  74:18, 75:23
Given 7:19, 42:16,
  42:25, 72:16,
  82:17, 89:16,
  105:9
giving 106:18
glad 23:8, 89:23,
  109:1
glean 103:17
global 87:4
glossed 84:17
goal 6:12, 23:23,
  25:13, 87:3
goals 6:20
God 15:19
Gonzalez 51:25
good. 82:3
governance 15:11
governing 94:16,
  108:8
Government 1:38,
  11:12, 12:10,
  15:6, 24:4, 24:24,
  59:8, 72:16, 78:25
Governor 9:3, 9:4,
  9:12, 110:3, 110:4
graciously 60:21
grant 27:25, 29:3,

29:18, 30:25,
  31:17, 33:4,
  39:13, 45:20,
  47:12, 48:22,
  50:17, 51:5,
  51:20, 52:7, 53:5,
  53:19
granted 8:7, 44:8
granting 91:22,
  92:17
grateful 30:12
Great 68:19, 86:16,
  87:13, 106:14
greatest 104:24
grievances 19:1,
  24:14, 96:22
ground 40:22, 40:24,
  41:6, 41:8, 42:2,
  42:7, 62:16
grounded 95:12
grounds 29:5, 29:20,
  31:1, 39:8, 41:18
Group 3:11, 3:33,
  3:40, 3:46, 33:21,
  38:8, 39:14,
  39:16, 39:23,
  40:2, 43:22, 55:8,
  83:6, 85:12,
  86:13, 88:6
grouped 98:5
grouping 105:12
groups 8:21, 10:4,
  62:25, 83:9
Guaranty 3:3, 3:21,
  3:23
guess 76:15
guidance 11:6, 67:6
guide 10:21
guidelines 95:25
gunning 77:4


< H >
Hacienda 11:6,
  108:10
half 15:15, 65:21
hamper 55:18
hand 12:12, 55:20,
  64:18, 64:23, 97:8
handle 26:21, 27:2

handled 24:8, 26:23
hands 109:8
happened 17:1
happy 10:7, 30:10,
  54:9, 61:15,
  64:12, 71:24,
  72:6, 77:9, 81:11,
  89:21, 90:9
hard 72:3, 74:19,
  87:6, 108:7
harken 61:20
head 36:16, 37:11,
  57:5, 84:3, 108:23
headed 84:6
hear 23:8, 41:3,
  42:15, 54:25,
  62:21, 63:9,
  63:23, 75:5, 78:5,
  78:15, 80:3, 84:7,
  109:1
heard 9:3, 39:18,
  39:20, 66:16,
  66:20, 74:9,
  78:13, 87:18
hearings 14:9,
  102:8, 109:12,
  109:14
hears 109:23
Hein 3:19, 84:7,
  85:20, 85:21
help 31:19, 69:19,
  74:17, 83:20,
  84:14, 100:4,
  102:21
helpful 97:2, 97:21,
  107:4
helping 83:21
Hernandez 45:3, 49:3
Herriman 19:24,
  22:15, 54:13,
  54:16
herself 65:8
Hertzberg 19:23,
  22:15, 54:13,
  54:16
historic 12:11
history 6:9
hit 23:14
Hoc 3:11, 3:39,
  55:8, 85:12, 86:13

hold 14:17, 55:17,
  60:16, 73:16
holders 56:12, 66:7
holdings 66:6
homework 72:6
Honorable 2:18,
  2:20, 2:22, 61:14,
  63:20, 70:19,
  77:8, 79:20,
  79:23, 81:22,
  89:20, 109:11,
  111:6, 111:7,
  111:9
Honors 80:7
hope 6:10, 25:7,
  62:4, 62:13,
  71:12, 74:23,
  86:14, 90:24
hopefully 24:16,
  80:17
hopes 69:7, 71:8,
  86:7, 96:15
hoping 70:25
horizon 56:1
housekeeping 82:12
HTA 8:19, 27:16,
  27:18, 27:24,
  28:13, 28:19,
  38:16, 40:7,
  56:13, 58:13,
  78:13, 91:25
humbled 15:17
hundred 87:24, 88:7


< I >
idea 80:2
idealism 15:17
Ideally 73:5
identical 21:6
Identification 59:2,
  59:17, 97:19
identified 58:10,
  61:8, 62:23
identify 43:11,
  56:4, 97:17, 97:25
identifying 60:8
ignoring 85:18
II 16:1
imagine 43:18,

63:17, 69:11
immediately 7:18,
  12:20
impact 58:20, 65:1
implement 13:23,
  59:9
implementation 8:24,
  17:6, 93:13, 94:4
implemented 20:23,
  93:17, 95:17
implementing 11:13
implicate 55:14
implicated 58:16
implications 55:11,
  56:6
important 11:8,
  12:11, 14:15,
  18:7, 24:3, 64:4,
  66:14, 66:18,
  69:13, 71:20,
  74:21, 80:4,
  83:21, 84:18,
  101:10
importantly 61:25,
  71:12
imposing 56:23,
  57:23, 84:12
impossible 94:9,
  96:10
inadequate 104:1
Inc. 35:3, 35:7,
  35:25
inclined 95:22
include 13:4, 31:8,
  32:22, 36:3,
  37:16, 47:20,
  49:6, 58:8, 73:13,
  79:13, 89:24
included 28:24,
  29:13, 30:22,
  45:13, 72:10,
  82:19, 82:20,
  94:7, 99:15
includes 57:24,
  73:18, 75:15
including 7:4, 7:7,
  7:11, 11:22,
  12:15, 14:23,
  17:23, 18:10,
  20:11, 22:8,

57:21, 58:11,
  58:24, 59:12,
  59:16, 61:5,
  66:25, 85:24,
  89:22, 94:17,
  96:7, 96:23, 108:7
inclusive 80:14
inconsistent 65:9,
  94:16
incredibly 72:21
indebtedness 18:18,
  96:18
indicate 35:15, 36:1
indicated 24:12,
  50:9, 93:22
indicates 48:19,
  49:6
indicating 21:21,
  36:24
indication 101:5
indirectly 79:7
individual 59:21
Industrial 85:24
inefficient 55:24
inefficiently 55:18
inferences 21:4
inform 17:20, 109:19
informal 95:15
information 6:25,
  19:17, 28:16,
  29:24, 30:21,
  32:17, 32:22,
  35:24, 37:2, 39:1,
  81:1, 81:17,
  92:16, 96:2,
  96:12, 97:5,
  97:10, 97:22,
  102:12, 103:17,
  105:4, 108:7,
  108:11
informational 94:3
informative 15:9,
  37:14, 98:20
informed 15:10,
  18:1, 34:16, 52:4
initial 65:2, 102:19
initiate 59:9
initiative 84:12,
  87:14
injury 97:9

input 79:16
inquiries 22:20
inquiry 93:21,
    106:22, 108:10
insight 104:25
insofar 93:8, 94:19
instance 25:1,
    32:13, 58:25
instances 21:11
instead 51:16
instruction 36:20
instrumentality 9:14
insufficient 103:11
Insurance 3:4
Integral 75:8
Integrales 4:4
intend 22:7, 25:6,
    68:15, 68:24,
    96:13, 96:21, 97:4
intended 22:4, 23:3,
    40:4, 42:25, 43:1,
    68:1, 94:8, 96:5
intending 22:10
intends 9:20, 56:23,
    68:21, 96:3
Intent 20:12, 21:18,
    92:9
intention 68:7,
    69:5, 82:21
intentionally 67:22
interconnected 86:20
interest 6:6, 9:18,
    58:6, 96:15
interested 40:17
interests 12:7,
    12:13, 13:4,
    55:15, 59:15
Interim 10:22,
    12:19, 16:11
internally 24:4
interpretation 97:7
interrelated 55:2
interruption 11:2
intervenors 55:23
introduces 65:14
invalidate 41:22
invaluable 72:20
investment 29:11
investors 6:18
invite 61:11, 64:2

invocation 100:2
invoked 100:7
involve 94:19, 95:14
involved 15:15,
    71:2, 72:19,
    75:16, 75:22,
    79:13, 85:17,
    90:15, 98:23
involves 98:11
involving 105:22
issuances 58:22
issue 7:16, 18:7,
    23:22, 24:14,
    47:3, 57:24, 65:1,
    65:18, 71:24,
    72:22, 83:21,
    89:6, 89:23,
    97:18, 101:7,
    102:2, 102:14
issued 6:23, 28:16,
    28:18, 28:19,
    48:17, 48:20,
    50:8, 50:23,
    56:12, 58:12,
    58:17, 58:18,
    75:14
Item 10:11, 16:1,
    16:19, 76:7,
    82:13, 91:11
items 7:17, 7:21,
    8:6, 49:23, 52:13,
    53:23, 54:20
itself 17:1, 19:6,
    106:21, 107:14,
    107:15
IV 82:14
IV.10 91:11
IV.13 7:17, 54:20
IV.18 7:18

< J >
J. 2:22, 2:29,
    111:10
James 34:1, 34:11,
    34:24
Jason 3:5
Jay 19:23
Jenner 74:12
Jesus 29:8

Joe 30:18
John 4:8, 10:13,
    72:12, 75:6
join 90:22
joined 14:12, 90:21
joining 61:10
joint 60:22, 68:17
Jointly 1:11, 1:33,
    2:8
Jose 10:22, 38:1
jostling 55:22
Juan 6:1, 6:7, 6:8,
    9:13, 15:16,
    56:21, 109:23
Judges 69:18, 80:16,
    95:4, 95:5, 95:14,
    97:12, 98:4, 98:7,
    98:11, 99:23,
    100:13, 100:14,
    100:20, 101:6,
    101:11, 101:15,
    104:12, 105:14
judgment 95:11,
    103:4, 103:5,
    103:19
judicial 6:22,
    55:24, 64:11,
    93:19, 95:11,
    95:17, 95:19,
    100:1, 101:16
Judith 2:20, 111:8
Julie 2:41, 19:23,
    78:1
July 20:20, 22:2,
    109:22
June 17:2, 17:15,
    17:22, 18:10,
    19:20, 20:17,
    20:19, 20:21,
    22:24, 23:5,
    23:16, 54:4

< K >
Kallan 53:9, 53:16
keep 15:10, 22:18,
    35:17, 64:3,
    68:24, 70:7, 70:8,
    72:6, 110:8
kept 37:15

key 13:2, 55:6,
  56:4, 59:18,
  60:22, 60:24,
  105:21
KIRPALANI 3:9, 84:6,
  84:7, 84:8, 84:9,
  84:25, 85:5, 85:8
known 69:17
knows 11:9, 14:10,
  69:17, 84:14,
  109:19
Kurt 3:33, 83:5


< L >
L. 3:37
la 50:6, 75:8
lack 96:2
lacking 48:2
laid 70:12, 74:17
Landon 3:30, 74:12
Lang 28:23
language 40:16,
  40:23, 41:22,
  42:11, 42:12,
  42:13, 43:5, 43:7
large 95:6
larger 109:3
Last 9:24, 15:15,
  31:5, 35:13, 40:9,
  41:3, 52:15,
  72:20, 74:22,
  80:13
later 9:23, 40:21,
  40:24, 41:24,
  42:6, 43:23, 68:4,
  104:4, 110:1
latter 95:16
launch 73:1
Laura 2:18, 2:30,
  27:10, 111:7
Law 9:11, 35:7,
  43:14, 103:6
Lawful 3:7, 84:10
lawsuit 14:12
lawyers 62:12, 99:22
lead 11:13, 14:20,
  59:17, 90:24,
  93:24, 103:16
leader 56:4, 60:1,

60:10, 60:11,
  60:18, 61:4, 61:8,
  73:12, 73:19
leaders 6:15
leading 72:18
leads 95:9
least 8:2, 25:1,
  71:3, 74:18
leave 70:5
Lecaroz 2:35
led 11:11
left 23:5, 59:23,
  67:22, 71:19
legal 11:4, 12:24,
  14:9, 15:2, 15:7,
  62:2, 95:13,
  97:25, 102:12,
  103:12, 105:16,
  105:20, 105:21
Leida 33:21, 33:24,
  34:11, 34:14,
  34:16
less 67:2, 80:17,
  81:8
letter 21:12, 22:11,
  93:21, 102:19,
  106:22
letters 107:1
level 105:3
leverage 68:12
leveraged 97:24
liabilities 20:14,
  21:25, 28:14,
  28:17, 34:6, 34:8,
  39:2, 42:17, 43:1,
  47:1, 96:18
liability 28:21
Librada 29:9, 29:25,
  32:8
lien 56:14, 78:13
liens 14:10
life 73:9
light 21:19, 44:17,
  45:18, 46:12,
  48:6, 49:9, 49:15
likelihood 105:1,
  105:17
likely 65:15, 66:15,
  94:18, 94:22,
  95:7, 97:5, 97:6,

97:18, 97:19,
  98:1, 103:11,
  104:5, 104:25
limit 55:10, 101:2,
  103:10, 103:15
Limitations 68:9
limited 7:7, 7:12,
  59:19, 95:6,
  99:16, 101:7
limits 102:6
line 89:24
liquidated 18:5,
  18:7, 18:14
list 56:20, 56:22,
  56:25, 67:22,
  68:2, 68:13,
  76:21, 77:20,
  78:7, 78:8, 78:15,
  78:17, 79:16,
  80:4, 82:19,
  82:21, 83:2, 84:2,
  87:14
listed 7:20, 40:12,
  73:22, 76:14,
  83:25
lists 69:9
litigants 56:3,
  103:18
litigate 71:15,
  84:13, 85:13,
  86:25
litigated 55:15,
  58:19, 59:13,
  66:1, 83:20
Litigating 67:12,
  82:15
little 30:15, 37:9,
  37:10, 74:20,
  75:22, 83:12
Lizandra 44:15
LLC 3:17
LLP 8:1, 64:7,
  78:20, 83:6
loaded 7:3
loaned 28:15, 32:17
Local 7:21, 99:7,
  103:21
locating 54:9
Lockbox 108:12
logging 18:2

logical 86:19
logistical 95:2
long-term 84:22
look 16:16, 43:10,
    67:17, 71:11,
    77:20, 82:23,
    83:22, 85:8,
    85:11, 107:24
looked 22:7, 29:21
looking 18:4, 33:9,
    67:5, 90:8, 90:17
looks 90:25, 91:4
loss 75:22
lot 18:16, 18:17,
    39:25, 63:5,
    64:19, 65:12,
    66:19, 67:4,
    67:15, 67:18,
    67:21, 78:24,
    84:16, 85:17
Lou 35:10, 35:15,
    35:25
love 86:21
low 95:5
Luc 2:38, 87:10
LUGO 4:11, 16:4,
    16:7, 16:9, 16:17
lunch 81:14, 82:5,
    91:5, 108:5


< M >
Magistrate 2:20,
    92:23, 95:5,
    99:23, 100:14,
    100:20, 101:11,
    101:13, 101:15,
    101:16, 101:23,
    102:1, 102:4,
    103:9, 104:12,
    109:11, 111:8
magnitude 23:22
Mailing 19:17,
    22:21, 91:22,
    92:13, 92:14,
    106:21, 107:15,
    107:18
maintain 36:2,
    68:11, 69:4
maintains 98:13

major 70:21
majority 11:16,
    13:25, 18:25
managed 76:20
Management 1:10,
    1:32, 2:4, 12:17,
    79:1, 101:24,
    102:8
managing 19:24,
    88:14
mandate 8:7, 13:1
mandatory 9:6, 9:7,
    58:3
manner 58:8, 100:12,
    100:18, 101:9,
    101:20, 103:12,
    105:15
map 26:1
Mark 3:13, 86:12
marked 32:3
Marsal 19:24
Martin 2:29, 3:4,
    7:25, 64:6, 72:23
Martino 51:24
match 21:8
matched 30:3
matches 28:4
material 103:6
Materials 13:23,
    92:15, 94:2, 96:2,
    98:24, 106:1
Matos 44:25, 45:2
matter 14:16, 61:18,
    81:5, 81:7, 82:13,
    88:24, 93:12,
    94:14, 99:5, 103:6
matters 8:17, 11:10,
    13:3, 13:9, 15:8,
    17:3, 24:21,
    25:16, 25:19,
    25:22, 54:21,
    55:6, 56:7, 56:20,
    58:6, 60:4, 60:12,
    60:14, 60:19,
    60:22, 73:22,
    79:13, 82:22,
    94:19, 98:1,
    100:12, 101:22,
    101:25, 102:1,
    102:7

maximize 98:6
MAYER 3:41, 90:4,
    90:5
MAYR 3:33, 83:5,
    83:8, 83:13
Mccall 3:47, 39:17,
    39:20, 39:22,
    39:23, 39:24,
    39:25, 41:14,
    42:4, 43:2
Mcconnell 82:10
mean 71:25
meaningful 86:25,
    96:11, 105:3
means 97:23, 103:15
meant 21:22, 71:22
mechanical 23:12
mechanics 33:9,
    88:16
mechanism 105:12,
    105:19
mechanisms 25:2,
    56:9, 58:9, 59:11,
    59:14, 76:22
mediating 67:6
mediations 100:21
mediators 65:3,
    65:10, 66:3, 67:7,
    69:17, 70:11,
    99:22
Medicare-medicaid
    75:9
Medina 45:2
meet 94:18, 100:22
members 6:6, 8:10,
    8:12, 11:3, 12:23,
    61:15, 62:13
memorandum 80:1
Mendez 45:2
mention 64:15,
    64:22, 64:25
mentioned 12:22,
    14:11, 18:4,
    23:20, 64:17,
    65:13, 69:21,
    84:2, 88:11
merits 98:12
met 66:22
method 102:10
methods 68:10,

98:21, 100:2,
104:9
meticulous 23:9
Michael 2:32, 3:47,
39:23
microphone 81:6
mid 10:23, 12:21
Milbank 80:11
milestone 88:8
milestones 87:23
milieux 55:20
MILLER 3:44, 80:9,
80:10, 80:11,
81:21, 82:4, 82:7,
108:3, 108:4,
108:22, 108:25
million 87:24, 88:7
mind 42:19, 57:6,
64:3, 80:2
mine 109:14
minimize 71:8
minute 81:9
minutes 8:3, 63:10
missed 30:2, 38:5,
38:7, 68:3
missing 89:12
misunderstanding
86:16
mitigation 83:20
mode 68:17
modification 104:12
modified 15:7, 40:3
MOERS 3:41, 90:5
moment 85:15
moments 12:4
monetary 92:25, 99:8
money 28:15, 32:17,
66:21
monitoring 8:24
monitors 21:1
Monsita 2:35
Montana 75:9
monumental 12:11,
64:10
moot 71:13
Morgan 78:2
morning 6:5, 7:24,
7:25, 8:2, 10:13,
10:17, 16:4, 16:7,
16:8, 16:21,

16:22, 27:9,
27:10, 34:19,
34:20, 39:22,
39:24, 74:11,
74:12, 74:14,
75:6, 75:7, 82:9,
83:5, 83:7, 83:8,
93:23
motions 54:21,
54:23, 55:2,
56:16, 76:10,
76:11, 108:19,
108:21
movants 14:18, 58:5
move 36:9, 41:7,
55:5, 80:17, 83:21
Moving 6:19, 28:11,
33:15, 44:13,
62:23, 90:19,
106:24
MUDD 4:8, 75:4,
75:5, 75:6, 75:8,
76:1, 76:3, 76:8,
77:5, 77:9, 77:10,
77:12, 77:18,
77:21, 77:24
multilayered 95:10
multiple 11:20,
11:21, 44:16,
46:11
multiplicity 55:2
multitude 19:18,
107:1
Municipal 3:23
Municipality 9:13
muted 63:21, 70:15
muting 70:20
mutual 29:12, 32:16,
99:16
Myers 10:14, 72:13
myriad 61:17

< N >
naive 62:9
name 35:1, 39:22
named 10:24, 12:23
Naranjito 4:7
Natbony 3:24, 90:12,
90:13

nature 96:2, 96:8,
96:24, 97:18,
99:20
Nayuan 3:17, 82:10
necessarily 14:20,
71:25, 98:11
necessary 7:15,
13:23, 14:22,
31:13, 33:3, 59:9,
59:20, 72:5,
96:14, 97:10,
101:11, 102:24
need 18:22, 54:11,
64:1, 65:21, 71:9,
71:13, 73:4, 81:1,
87:14, 87:18,
98:13, 104:2,
105:17, 106:5,
107:11, 109:5,
109:24
needed 14:8, 63:21,
70:3, 70:4, 80:14
negative 88:1
negotiate 13:22,
72:25
negotiated 11:20
negotiating 11:13
negotiation 69:14
negotiations 10:3,
80:15, 99:9
Neither 15:5, 45:12,
94:6, 95:8,
100:18, 107:14
nevertheless 20:13
New 6:7, 8:25,
10:23, 10:24,
56:21, 60:16,
85:20, 85:25,
98:3, 103:22,
110:6
Next 14:11, 24:16,
28:11, 29:8,
30:18, 37:25,
46:4, 47:17, 48:1,
49:3, 49:25,
50:21, 70:15,
70:16, 70:18,
76:7, 88:21,
99:12, 104:22,
105:3, 105:7,

105:12, 105:23,
   109:21
nice 37:23
night 15:16
nine 48:2, 59:11
No. 1:6, 1:28, 2:3,
   28:9, 33:4, 42:4,
   46:20, 87:22
nobody 43:10
nodded 36:17, 84:5
Nodding 36:16,
   37:11, 84:3,
   108:23
nominated 8:9
non 95:11
non-bankruptcy 99:18
non-binding 99:7,
   99:22, 99:24
non-coercive 101:19,
   105:11
non-judicial 94:12,
   99:25
nondebtors 28:18
nondispositive
   101:24
None 5:5, 5:11,
   66:22, 77:14
noon 7:14
nor 6:25, 15:6,
   45:12, 94:7, 95:8,
   100:19
Norton 78:19
Notably 98:25
note 15:12, 19:22,
   23:20, 101:7
noted 96:1, 97:4
Noteholder 3:33,
   83:6, 83:8
notes 7:2, 7:3,
   31:20, 38:8,
   48:15, 50:14,
   51:2, 51:17, 52:4,
   98:15
Nothing 69:23,
   70:23, 71:10
Notice 34:24, 40:10,
   54:8, 56:8, 91:22,
   92:9, 92:11,
   92:15, 94:2, 96:1,
   98:24, 104:1,

104:8, 106:1
noticed 17:13
notifi 35:9
notification 35:1,
   35:8, 59:15
notifications 35:17
notified 35:2,
   35:23, 36:3
November 59:25
novo 102:4
nullity 41:2
numbered 7:17
numbers 29:24,
   51:13, 57:3, 57:7,
   57:9, 57:12,
   78:14, 95:6,
   97:19, 104:25
numeral 82:13
numerous 55:22

< O >
O'melveny 10:14,
   72:13
Oaktree 31:21, 32:1
object 39:7, 40:21,
   40:24, 41:7,
   41:21, 42:2, 42:6,
   102:3
objected 32:4
Obligation 3:12,
   55:9
observation 64:20,
   66:14
observed 7:8, 12:9
obtain 99:7, 101:1
obviate 109:24
obviously 18:17,
   68:9, 75:19, 88:9,
   90:15, 106:9,
   106:14
occasioned 9:24
off-ramp 100:8
off-ramps 100:3
offer 92:20, 93:9,
   98:8, 98:23, 99:4,
   101:5, 102:16,
   102:19, 102:21,
   105:5
offered 5:5, 5:11,

105:10
offers 94:22, 99:21
Office 92:3, 106:11
officer 37:17
officers 101:16
Official 2:37, 3:26,
   56:3, 58:3, 84:1,
   111:16
often 20:12
oftentimes 64:9
Okay 17:10, 25:20,
   25:24, 37:18,
   37:21, 68:3,
   70:16, 70:19,
   76:8, 77:25, 79:9,
   82:25, 84:8, 88:19
Old 15:16
older 36:14
Omni 108:21
Omnis 80:13
once 62:20
one. 93:22
ones 17:15, 67:23
ongoing 11:2, 13:9,
   99:9, 110:6
opened 80:15
opening 67:3
operating 95:19
operative 43:23,
   48:10
opponents 58:5,
   59:18, 64:1
opportunities 97:24
opportunity 10:17,
   63:2, 79:4, 83:15,
   85:3, 93:6, 105:10
opposition 84:16,
   92:1
opt 93:7
optimism 74:23
optimistic 67:10,
   69:19
optimistically 70:10
optimize 69:19
Orders 6:22, 17:14,
   18:8, 60:3, 62:6,
   62:16, 73:20,
   102:9
ordinary 36:13
organization 61:17

organize 60:21,
  63:25
organized 86:19
organizing 64:1,
  77:17
oriented 76:14
original 21:17,
  21:19, 32:21,
  40:2, 41:5, 41:8,
  42:1, 42:8, 42:9,
  42:24, 48:6, 49:9,
  83:14, 105:9
originally 29:10,
  30:20, 31:7,
  38:20, 40:1, 40:5,
  47:6, 47:18, 49:4,
  63:24
Orocovis 4:8
Osuna 32:20
others 8:17, 33:7,
  33:11, 71:10,
  80:12
otherwise 7:8, 7:9,
  28:18, 31:16
out-of-court 14:3
outcome 66:15, 69:20
outline 91:17, 95:25
outlined 106:3
outset 67:18, 69:21
outside 6:24, 24:22,
  85:16, 95:17
outstanding 17:16,
  32:6, 45:25,
  49:23, 52:13,
  53:23
overall 7:14, 17:23,
  26:6, 64:11
overlap 80:23, 81:25
overload 100:5
overruled 28:6,
  43:21
overview 40:11
own 14:13, 31:19,
  73:9, 74:25
owned 29:13


< P >
P-R-I-D-C-O 13:21
Pace 30:19

package 81:10, 94:1
Padilla 38:2, 44:24,
  45:2
PAGAN 33:21, 33:24,
  34:11, 34:14,
  34:16, 34:18,
  34:19, 34:21,
  37:18, 37:21,
  37:23
PAGE 5:3, 21:1,
  73:16, 102:6
pages 111:4
pair 22:14
paper 16:2, 72:4,
  86:17, 94:22,
  94:24, 95:12,
  95:16
papers 14:13, 84:16,
  90:21, 92:1,
  96:17, 101:3
paragraph 73:18
part 6:25, 19:14,
  31:13, 87:20,
  102:22, 103:22,
  104:18, 106:22
partially 32:12,
  32:13
participants 6:8
participate 61:9,
  70:10, 79:4,
  84:19, 92:19,
  93:5, 93:8
participating 66:10
Participation 10:1,
  15:18, 56:9, 58:2,
  59:15, 79:3,
  80:16, 91:1
particular 7:2,
  58:18, 82:22,
  97:7, 105:17,
  108:13
particularly 68:17,
  69:22, 94:19
party 14:17, 60:13,
  103:5
pass 27:6, 41:21
passion 15:17
past 11:9, 12:16,
  84:24
path 6:13, 25:9,

29:22
pause 56:1, 85:16
payment 59:21, 104:5
payments 35:2, 108:9
PBA 52:22, 52:24,
  56:14, 58:13,
  78:24, 79:14
peaceful 15:18
pending 9:18, 13:3,
  13:7, 15:8, 16:10,
  17:24, 18:11,
  23:1, 54:22, 55:4,
  55:17, 56:12,
  56:17, 61:18,
  95:23
pension 14:24,
  24:14, 96:23
pensioners 84:22
pensions 58:25
people 6:10, 6:16,
  12:7, 12:13, 13:5,
  15:14, 15:19,
  19:8, 19:18,
  23:11, 34:21,
  67:21, 69:22,
  71:9, 74:10,
  78:24, 79:16,
  80:3, 85:2, 85:17
percent 14:5, 88:6
Perez 32:21
Perfect 37:21, 64:21
perfection 9:17
perfectly 77:8
perform 95:15
performed 12:16
perhaps 16:25,
  66:12, 66:14
period 10:2, 17:2,
  73:5, 77:3, 88:2
permanent 100:3
permit 43:10,
  103:11, 105:15
permitted 7:7
persist 86:3
person 6:24, 7:7,
  36:2, 36:25,
  37:14, 61:11
personal 15:12, 97:9
personally 15:15
persons 19:11

pertaining 16:10
Peter 3:19, 85:21
petition 9:17
petitions 8:8
phase 98:10, 98:11,
   98:22, 101:20,
   102:17, 102:19,
   105:6, 105:11
PHV 2:29, 2:30,
   2:31, 2:32, 2:38,
   2:41, 3:4, 3:5,
   3:9, 3:13, 3:24,
   3:30, 3:33, 3:37,
   3:41, 3:44, 3:47,
   4:11
place 6:14, 10:20,
   11:4, 11:8, 11:15,
   12:24, 43:7,
   107:25
Plaintiff 2:7
plaintiffs 58:4
plans 11:19, 19:2,
   62:8, 73:7
play 12:10, 13:2
played 11:10, 11:12,
   11:25
pleadings 14:13,
   75:24, 76:9
Please 13:11, 34:18,
   63:14, 91:10,
   109:25
plenty 85:3
plus 65:21
PM 7:15, 91:8, 91:9,
   110:9
podium 27:6, 34:18,
   39:19, 64:3,
   67:21, 71:17
point 31:12, 41:6,
   41:7, 44:22,
   54:18, 57:4,
   71:20, 78:16,
   88:21, 99:8
points 16:9, 54:2,
   71:12, 71:13,
   86:14
policies 6:22
policy 9:5
pool 22:2
Popelnik 49:15

popular 83:10
portion 32:14,
   32:15, 32:18,
   94:12, 98:8
portions 33:5
Ports 14:1, 14:2,
   14:3
position 12:18,
   12:21, 35:21,
   101:2
positions 12:6,
   15:7, 60:12, 69:7,
   88:14
positive 66:13,
   93:22
possibility 22:1,
   23:3
possible 9:21, 9:22,
   21:5, 56:10, 57:6,
   70:9, 70:24,
   85:11, 97:17,
   104:24, 106:20,
   107:3, 107:20
post 59:23
potential 20:10,
   55:22
potentially 55:2,
   55:19, 55:21,
   95:5, 108:7
Power 1:22, 14:17
pproved 75:1
practical 94:3,
   94:13
practice 55:12,
   88:15
PRASA 11:23
pre-promesa 86:2
precedent 43:9,
   85:24
precisely 106:15,
   109:19
precision 67:15
preclude 68:15, 69:1
precluded 68:18
prefer 71:13
preferred 35:16
prefers 36:2
prejudice 95:22
prejudiced 34:6,
   39:11

preliminarily 18:11
preliminary 19:21,
   22:25, 93:12
prelitigation 95:11
premature 100:5
PREPA 3:40, 8:18,
   8:19, 11:15,
   11:16, 11:17,
   13:12, 13:17,
   32:15, 48:18,
   48:20, 48:21,
   89:2, 89:3, 89:6,
   89:10, 89:11,
   89:22, 90:16,
   90:19, 91:25
prepared 10:6, 109:5
present 35:14, 37:7,
   56:21, 62:15,
   82:10, 94:23, 95:2
presented 34:22,
   34:24, 35:6,
   35:14, 79:7
presently 96:20
presents 72:24
President 8:9, 35:11
press 6:7, 7:8, 55:9
presumptively 76:11
pretrial 101:24
pretty 80:22
previewed 24:19
PRIDCO 11:24, 13:21,
   13:25, 14:19,
   45:15, 45:19,
   47:8, 47:10,
   51:12, 51:14,
   51:15
pride 6:11
PRIFA 11:24, 14:1,
   14:2, 14:14,
   14:16, 14:17,
   14:19, 53:11,
   53:13, 71:24,
   72:9, 80:21,
   81:12, 81:14,
   108:3, 109:20
Prime 18:3
principal 36:24,
   37:17
principle 64:2,
   66:23, 86:9

prior 7:20, 65:8,
  98:21, 100:2,
  100:8
prioritization 56:7
priority 56:15,
  58:12, 74:2, 84:20
privilege 15:13
Pro 3:19, 85:22,
  103:18, 103:22
probably 63:6, 65:4,
  68:6
problem 36:5, 36:6,
  37:7, 77:10, 95:9
problems 22:1,
  100:15
procedural 60:8,
  60:14, 60:22,
  62:23, 69:13,
  73:10, 73:18,
  75:25, 76:22,
  80:5, 99:15
Procedurally 86:18,
  87:15
Procedure 92:10,
  92:12, 96:5,
  100:23, 103:8
proceed 63:18,
  80:25, 92:21,
  99:14, 99:18,
  101:4, 105:13
proceeded 20:18
proceeding 7:11,
  23:16, 57:10,
  61:17, 65:6,
  67:24, 78:4, 90:8,
  104:7
processes 24:4,
  24:9, 62:16,
  95:20, 100:3,
  100:4
produced 4:48
productive 55:19,
  69:7
professionals 11:1,
  11:5, 12:25
proffers 103:19
profoundly 15:17
program 97:8
programs 24:15, 97:1
progress 24:10,

67:7, 67:19, 87:1
prohibit 105:5
project 83:12
projects 11:2
PROMESA 1:30, 2:5,
  8:11, 14:4, 37:6,
  86:1
promise 42:2, 77:19
promises 76:24
promptly 15:10,
  63:1, 80:3, 107:21
proofs 15:3, 18:5,
  18:13, 18:23,
  19:5, 19:12,
  27:16, 27:17,
  28:13, 32:13,
  33:17, 36:12,
  46:6, 46:25, 48:2,
  48:4, 48:8, 48:10,
  48:14, 50:1, 50:3,
  51:11, 52:17,
  52:19
proper 102:17
properly 22:16,
  23:10, 93:17,
  103:8
proponents 59:17,
  63:25, 88:14
proposal 24:25,
  56:1, 75:18,
  93:22, 94:5,
  94:24, 98:9,
  100:16, 107:9
proposals 73:13,
  75:24, 75:25, 79:2
propose 42:12,
  63:18, 92:19,
  107:15
propositions 59:18
Proskauer 8:1,
  16:23, 27:11, 64:7
protect 15:19
protection 22:19
protections 99:16
protocols 22:14
provide 13:8, 22:19,
  28:15, 32:17,
  47:2, 47:6, 47:18,
  49:5, 54:9, 61:3,
  84:24, 95:3,

97:11, 98:3, 99:1,
  102:11, 102:23,
  103:23, 104:24,
  105:3, 108:6
provided 11:18,
  27:22, 38:25,
  47:7, 49:15,
  49:18, 50:9,
  50:23, 52:21,
  52:22, 53:11,
  94:6, 99:12
provider 75:9
providers 58:22
provides 6:14, 6:17,
  8:11, 26:4, 26:6,
  75:13
providing 10:18,
  28:20, 97:22
provision 25:3,
  26:5, 105:7
provisions 9:4,
  102:8
PRPFC 50:11, 50:24,
  52:1, 52:2
PSA 83:23, 87:23,
  88:14
Public 2:10, 3:36,
  6:7, 6:17, 11:20,
  14:25, 15:18,
  50:9, 78:20, 97:7,
  108:9
publicly 108:6
PUERTO 1:3, 1:11,
  1:16, 1:21, 1:33,
  1:40, 2:5, 2:10,
  2:29, 3:30, 3:35,
  6:1, 6:14, 6:16,
  10:14, 12:7,
  12:13, 13:5, 15:6,
  15:14, 15:20,
  50:8, 61:21,
  69:23, 78:20,
  110:5, 111:2
pure 23:12
purely 66:19, 95:18
purport 104:11
purported 28:14
purports 32:16
purpose 104:3
purposes 60:19

pursuant 22:22,
    26:2, 96:25,
    101:12
pushed 17:7
put 11:15, 64:24,
    71:24, 84:17, 88:3
putting 55:16,
    72:21, 76:24,
    102:20

< Q >
QTCB 3:32, 83:6
quality 6:15
quantification 96:25
Quebrada 31:21,
    31:24
question 17:3, 40:8,
    72:22, 76:4,
    77:16, 77:21,
    82:12
questions 8:4, 10:7,
    15:21, 20:2,
    25:22, 44:3, 46:19
quick 95:8
quickly 54:3, 106:7
Quinn 84:9
quite 25:18, 86:17
quo 68:12
quote 99:5

< R >
radar 69:12, 88:5
Rafael 28:23
Raiford 3:30, 74:11,
    74:12, 74:15, 75:3
raised 17:25, 19:20,
    40:15, 41:25,
    42:24, 55:13,
    80:23, 89:23, 92:5
raising 88:22
ramifications 66:19
Ramos 10:22, 12:19
RAPISARDI 10:13,
    10:14, 13:12,
    15:23, 18:4,
    71:20, 72:12,
    74:3, 74:6
rather 101:21, 110:1

Re 1:6, 1:28
re-engaged 64:12
re-review 20:18
re-reviewed 20:16,
    21:17, 22:13
reach 11:16, 54:11,
    56:6, 74:24, 77:9,
    79:6
reached 22:4, 71:14,
    87:25, 88:8
reaching 77:6
reaction 106:5
read 57:2, 78:7,
    78:15, 78:18,
    83:3, 106:9
real 87:1
realigning 17:3
realistically 43:19
really 41:14, 66:22,
    70:6, 71:18,
    71:22, 84:11,
    84:17, 89:11
reason 43:5, 89:1
reasonably 9:22,
    70:9
reasoned 102:13
reasons 14:15, 68:9,
    95:21
reassurance 41:23
recalls 18:1
receive 26:5
received 16:13,
    21:20, 23:13,
    27:19, 27:22,
    28:22, 30:18,
    31:5, 31:8, 31:18,
    32:20, 32:24,
    33:19, 35:8,
    35:19, 44:18,
    45:14, 46:9, 47:4,
    49:8, 49:14, 50:5,
    51:17
receives 11:6
receiving 67:6
recent 10:18, 11:23,
    12:17
recently 8:24,
    56:17, 75:17
receptive 96:16
recertification

17:17
recess 63:12, 91:8
reclassify 32:13
recognize 62:10,
    81:24, 98:18,
    99:10
recognizing 85:16
recommendation 93:3,
    93:11, 101:25,
    102:2, 103:2
recommendations 60:9
reconcile 15:2,
    31:9, 32:24, 47:20
reconciliation
    18:25, 20:1,
    20:23, 23:21,
    24:1, 106:24
reconvene 63:10,
    91:5
reconvened 81:9
reconvened. 63:13,
    91:9
record 6:25, 95:12,
    102:10, 102:18,
    102:24, 105:5,
    105:24
recorded 4:48
recording 7:6
records 94:24,
    95:16, 100:20
recoveries 84:21
recovery 40:18
refer 7:3, 18:24,
    37:15, 92:12,
    92:14, 93:15,
    96:3, 97:4, 98:17,
    101:22, 103:20
reference 56:21
referenced 29:23
referred 92:8,
    92:11, 92:23,
    98:4, 102:1
refine 24:16
reflect 106:2
reflected 66:8,
    69:24, 100:23
reflecting 55:1
reflection 106:4
reflects 47:8
refund 24:13

refunds 19:1, 96:22
regard 98:3, 108:13
regarding 10:18,
   15:10, 17:21,
   29:14, 32:22,
   35:24, 45:14,
   47:3, 48:17, 50:8,
   50:23, 51:12,
   52:1, 52:21,
   53:11, 56:14,
   90:16, 94:8, 96:2,
   96:12, 97:5, 97:8,
   108:12
regards 9:5
regime 85:25
Region 2:35
registered 50:14,
   51:2
registry 23:24,
   26:14, 26:16,
   26:17
reinstate 41:1
reject 99:11
rejoining 63:17
relate 15:8
related 13:21, 14:9,
   91:22, 92:17,
   96:24
relates 28:24, 29:9,
   30:5, 30:8, 33:22,
   48:2
relating 9:17, 43:8,
   55:10, 56:15,
   58:12, 61:6
relation 63:24
relationships 36:7
release 26:9
relevant 57:3, 57:7,
   65:4, 100:23,
   101:10, 108:11
relief 78:24, 91:23,
   92:17
relieved 54:13
remain 10:20, 11:3,
   12:23, 17:24,
   20:3, 22:25, 25:3,
   26:15
remainder 45:5
remaining 26:14,
   32:6, 46:20,

49:22, 52:13,
   53:22, 62:8,
   108:16
remains 6:19, 9:1,
   11:8, 13:1, 18:16,
   92:21
remarks 10:6, 55:1,
   63:9, 67:20, 71:4,
   71:19, 91:16
remind 6:21
remove 22:6, 23:24,
   105:7
removed 21:8, 21:14,
   21:25, 22:17,
   23:2, 24:3, 49:16
renewal 95:23
renewed 97:16,
   104:20
replaced 8:13
replacement 12:22,
   26:18, 59:22
reply 31:25, 35:19,
   92:1
report 10:12, 16:25,
   24:9, 60:7, 60:11,
   60:13, 60:15,
   60:18, 73:13,
   93:2, 93:10,
   101:24, 102:2,
   103:2
Reporter 111:16
reports 7:23, 10:11,
   15:24
repository 6:25
represent 15:14,
   34:13, 35:16,
   39:23, 40:6, 75:8
representative 1:13,
   1:35
representatives
   62:24, 79:25
represented 79:8,
   96:17
reprogramming 9:9
request 17:17,
   20:18, 27:25,
   29:3, 29:18,
   30:25, 31:17,
   33:4, 39:12,
   41:22, 42:6, 44:7,

45:20, 47:12,
   48:22, 50:17,
   51:5, 51:20, 53:5,
   76:19, 81:1
requested 43:5
requesting 35:15,
   92:16
requests 7:13, 10:4,
   12:2, 108:16
require 98:1, 102:7
required 19:9,
   19:10, 39:1, 59:8,
   61:8, 95:1, 97:19,
   98:7, 103:19,
   103:23
requirements 24:9,
   94:18, 100:22
requires 101:19,
   105:10
requisite 102:11
reserve 39:7, 40:21,
   40:23, 42:5
resign 8:13
resignation 12:20
resigned 12:18
Resolution 17:7,
   25:10, 58:9,
   60:24, 86:19,
   86:22, 87:5,
   91:13, 91:21,
   92:7, 92:12,
   92:20, 93:3, 93:6,
   93:14, 93:15,
   93:16, 93:18,
   93:24, 100:1,
   104:19, 109:2
resolvable 71:7
resolve 34:12,
   61:23, 62:17,
   71:4, 84:15, 89:6,
   96:5, 101:6
resolved 25:8, 25:9,
   31:23, 32:2, 67:8,
   71:25, 94:11,
   94:22, 97:15
resolves 108:18
resources 53:3,
   55:24, 97:13,
   97:24
respectfully 85:23,

86:6
respective 47:2
respects 43:18,
  60:13, 94:16
respond 57:20,
  70:22, 71:18,
  99:3, 106:7
responded 35:11,
  48:13
respondent 53:10
respondents 58:5
response. 15:25,
  63:16, 109:7,
  109:17
responses 17:21,
  21:19, 22:1,
  28:22, 31:18,
  33:20, 46:10,
  47:4, 50:5, 60:15,
  107:13
rest 26:23
restrictions 14:18
restructure 14:2,
  79:3
restructured 13:19
restructuring 8:18,
  8:19, 8:22, 10:25,
  11:5, 11:11,
  11:17, 11:21,
  11:24, 12:11,
  12:25, 13:2, 14:3
result 20:15, 22:3,
  27:25, 67:10,
  103:15
retaining 21:5
retains 6:15
retard 67:12
Retired 3:27
Retiree 68:22,
  74:13, 74:21, 84:1
Retirees 66:18,
  68:22, 69:25
Retirement 1:37
retransmission 7:6
retroactively 86:1
return 6:18, 44:3,
  83:15, 93:7
returned 71:17
revenue 58:20
revenues 96:19

review 15:2, 20:22,
  22:17, 22:23,
  25:4, 25:23,
  31:10, 32:25,
  83:10, 103:1,
  103:2, 105:25
reviewed 20:24,
  21:2, 22:14, 28:3,
  91:19, 91:25,
  98:15
reviewers 20:25
reviewing 21:23
reviews 102:3
revise 105:23, 106:9
Revised 82:15,
  95:23, 106:1
revision 104:2
revisitation 95:9
revocable 27:20,
  31:6
RICO 1:3, 1:11,
  1:16, 1:21, 1:33,
  1:40, 2:5, 2:10,
  2:29, 3:30, 3:35,
  6:1, 6:14, 6:16,
  10:14, 12:7, 12:8,
  12:13, 13:5, 15:6,
  15:14, 15:20,
  50:8, 61:21,
  69:23, 78:20,
  110:6, 111:2
rid 18:18
rightfully 23:6
rights 26:7, 35:25,
  40:12, 86:1, 88:2,
  99:2, 101:18
risk 83:14
risking 76:25
river 82:2
road 42:22
robust 87:1, 95:10,
  100:7
role 11:10, 11:13,
  12:1, 13:2, 14:15,
  104:14, 104:18
roles 12:11
Roman 7:17, 7:18,
  54:20, 82:13,
  91:11
room 69:6, 70:3

Rose 8:1, 16:23,
  27:11, 64:7, 78:19
routine 24:13
RSA 68:22, 68:23,
  89:22
Rule 14:21, 103:21
ruled 9:7, 18:11,
  19:21
rules 46:25, 86:1,
  94:17, 99:7,
  100:23
ruling 9:8, 9:16,
  83:15
rulings 9:4
rum 14:14, 108:9
run 74:2


< S >
S. 2:31
S/ 111:14
safe 110:7
safeguard 12:12
safer 79:21
safety 6:17
sales 13:19
Salud 4:5
San 6:1, 6:7, 6:8,
  9:13, 15:16,
  56:21, 75:10,
  109:23
sanctions 7:11
Santiago 10:22,
  12:19
Santos 44:25, 45:2,
  47:23, 47:24
Sanz 29:9, 29:25,
  32:8
satisfaction 26:8
savings 8:3
saw 107:8
saying 23:13, 66:2,
  87:16
says 35:19, 40:11,
  73:19, 109:13
scenario 43:19
schedule 56:8,
  60:17, 67:8, 70:8,
  73:11, 90:19,
  109:12, 109:14

scheduled 9:12,
   13:20, 109:21
schedules 61:9
scheduling 7:16,
   60:3, 62:6, 62:15,
   73:20
school 81:16, 81:17
scope 59:19, 82:17,
   99:19
scream 57:5
screen 57:1, 69:12,
   88:5
scribble 64:17
script 64:21
Se 3:19, 103:18,
   103:22
se. 85:22
seat 91:14
seated 63:14, 91:10
Sebastian 75:10
Second 10:11, 14:19,
   17:16, 34:1, 37:2,
   41:7, 42:6, 43:3,
   58:15, 66:5,
   87:25, 92:9, 94:15
secondary 44:14
Secondly 54:12
Section 7:18, 8:11,
   9:16, 14:4, 26:3,
   94:17, 101:12,
   101:18, 105:10
secured 58:11, 86:4
securities 26:18,
   58:24
Security 9:18, 85:24
Seeing 109:8
seek 56:6, 99:19
seeking 21:24, 25:4,
   25:25, 38:16,
   41:23, 46:6,
   46:14, 46:24,
   50:1, 84:24, 89:9
seeks 28:12, 32:12,
   33:17, 40:12,
   45:19, 52:17, 92:6
seem 85:17, 88:17
seems 103:11
select 92:19
selected 93:5
Senate 8:10

send 30:10, 107:5
sending 79:12,
   105:19
sense 65:11, 87:19
sensible 66:4, 67:18
sent 35:3, 99:5
sentiments 80:12
separate 12:10,
   55:13, 55:21,
   90:19, 100:1
separately 26:10,
   83:20
sequential 98:20
series 11:23, 30:8,
   30:9, 58:17
serve 8:12, 12:20,
   99:8
served 57:25
service 57:17,
   57:24, 58:21,
   98:24
Services 3:16, 59:3,
   75:13
Servicios 4:4, 75:8
sessions 61:9
set 43:9, 88:15,
   91:16
setting 92:25
settle 99:13, 99:17
settled 55:15, 65:25
settlement 13:13,
   13:14, 26:9, 67:5,
   92:20, 99:5, 99:9,
   99:21, 102:19,
   102:21, 105:5
settles 65:12, 65:14
Seven 8:10, 32:13,
   48:3, 59:4
several 24:16,
   75:11, 75:20,
   84:24, 94:16
shall 57:13, 108:20
share 71:6, 87:3
she'll 63:17, 63:23
shoot 72:25
short 10:24, 64:8,
   75:23, 109:2
short-term 56:11
shortly 56:23, 80:1,
   94:14

shots 84:17
shouldn't 26:15
show 71:22
showing 47:6, 49:5
side 69:13, 69:14
side-by-side 21:1
signals 7:4
signed 36:23, 37:16
significant 6:9,
   10:3, 66:6, 80:22,
   91:17, 95:2, 107:8
significantly 93:18
silos 55:21, 82:23
similar 20:13, 46:9,
   78:12, 93:23, 98:4
simple 64:24, 67:4
simply 43:4, 48:15,
   50:13, 51:2, 52:4,
   53:1, 53:15,
   64:16, 71:15
simultaneously 21:2
sincere 62:14
Sir 16:3, 82:8
sit 76:24
sitting 91:4
situated 78:24
Six 47:4, 59:2
Skadden 78:1
slight 17:1, 21:10
small 21:12
Sobrino 12:18, 12:20
sold 82:2
solicitation 13:22,
   100:13, 101:9
solicited 101:19,
   104:10
soliciting 79:16
solution 72:15
somehow 65:24
sometimes 22:11
somewhat 9:23,
   44:14, 69:24,
   104:1
somewhere 75:21
soon 9:22, 12:23,
   70:9, 70:24,
   106:20, 107:3,
   107:20
sooner 110:1
Sorry 16:6, 28:9,

30:6, 38:3, 38:4, 38:6, 63:21, 78:18, 83:4, 87:9, 99:24, 109:10
sort 25:3, 43:10, 76:11, 79:16, 82:2, 94:23, 97:10
sorting 69:6
SOSLAND 3:4, 78:11, 78:12
sought 39:4, 39:10, 44:19, 45:11, 46:11, 48:17, 48:18
sounds 36:6, 67:3
source 6:24
Southern 103:21
speaker 70:15, 70:17, 70:18
speaking 66:5, 66:17, 67:17, 84:13
specific 29:24, 30:5, 30:8, 36:20, 76:21, 95:24, 96:11
specifically 40:10, 76:17
specify 104:22
spect 107:9
spoke 33:9
spoken 41:3
staff 8:23, 110:5
stage 91:16
staged 106:25
Stancil 3:13, 86:11, 86:12, 87:8
stand 90:7
stand-still 68:16
standard 95:19
standardized 56:9
standards 65:23
standing 75:4
standpoint 20:25
Stanley 78:2
start 70:4, 74:2, 76:24, 85:1, 102:18
starting 37:19, 57:14

starts 71:21
state 41:4, 42:13, 78:22
stated 15:7, 35:13, 48:4, 75:17
statement 8:20, 10:5, 29:11, 36:23, 37:16, 47:8, 59:14, 60:6, 73:3, 73:4, 73:7, 73:14, 73:24, 75:19
statements 76:10, 97:2
States 1:1, 2:19, 2:21, 2:23, 8:10, 9:19, 34:3, 38:23, 53:2, 53:15, 92:3, 92:23, 106:12, 111:7, 111:8, 111:9
stating 35:8
status 7:23, 8:5, 10:11, 10:12, 15:24, 16:25, 23:12, 58:11, 68:4, 68:12, 86:4
Statute 68:9
statutes 94:17
Statutory 13:1, 68:22
stayed 58:6, 60:4, 60:19, 73:21, 87:16, 87:20
stenography 4:48
step 70:21, 86:16
stipulations 43:9
stood 80:13
stop 66:10, 71:1
stopping 77:4
streamline 93:18
streamlined 105:23
streamlining 102:6
streets 15:16, 70:1
Strike 41:5, 56:18, 87:16
stronger 6:14
struck 15:17
structural 94:3
structure 24:23,

43:15, 74:18
structured 96:14
structures 59:22
subject 7:11, 8:3, 20:19, 20:20, 21:14, 22:2, 23:7, 24:1, 28:2, 55:12, 58:14, 80:5, 82:17, 93:3, 94:9, 96:19
submission 95:23, 102:7, 103:22, 103:24
submissions 92:22, 101:2, 102:12
submit 108:16
submitted 17:12, 17:15, 30:22, 35:22, 53:10, 94:2
subordinated 26:2
subsection 82:14
subsequent 22:21
subsequently 21:4, 33:16, 33:18, 34:1, 38:18, 38:21, 40:3, 46:7, 48:5, 48:15, 49:10, 50:15, 51:3
substantial 56:6, 60:8, 80:23, 81:25, 88:25
substantially 60:3, 61:24, 62:3, 62:5, 62:7, 62:11, 62:15, 71:5, 73:20
substantive 39:9, 42:19, 60:12, 61:5, 62:1, 62:7, 62:17, 63:1, 69:13, 71:13, 80:6, 96:7, 105:14
successful 55:17, 62:5
sued 79:1
suffice 65:8
sufficient 28:16, 31:9, 32:17, 94:8, 95:12, 96:2, 97:12, 97:13, 100:22, 102:11,

102:17, 102:25,
   105:24
suggest 63:6, 76:18,
   89:16, 95:9,
   104:17
suggested 40:22,
   80:14, 106:18,
   107:16
suggesting 89:4
suggestion 36:10
suggestions 106:8
suggests 102:18
suit 14:18
suitable 94:11,
   100:21
Sullivan 84:9
Summary 92:22,
   94:15, 94:23,
   95:11, 95:15,
   100:20, 100:25,
   101:4, 103:4,
   103:6, 103:18,
   104:20
summons 57:17, 57:25
supersede 36:13
superseded 33:18,
   36:14, 38:17, 46:7
supersedes 43:16
superseding 37:2,
   48:8
supplement 32:7
supplemental 19:17,
   30:10, 97:16
supplemented 104:20
supplementing 106:17
Support 6:18, 11:21,
   11:24, 19:6,
   41:12, 56:18,
   74:15, 83:9,
   83:24, 103:1
supported 13:24,
   14:5
supporting 13:15,
   21:7, 21:11,
   29:12, 30:20,
   31:7, 31:8, 32:23,
   39:3, 45:13, 47:6,
   47:18, 48:3, 49:5,
   49:7, 52:21
supports 93:13

Supreme 8:7, 9:19,
   85:24
surprise 78:23
surprised 71:10
surprises 70:23,
   91:13
Susheel 3:9, 84:9
suspect 79:11, 82:18
sustain 45:5
sustained 28:6,
   29:6, 30:16, 31:3,
   32:7, 33:13,
   35:23, 43:22,
   44:11, 45:23,
   46:1, 46:21,
   47:15, 48:9,
   48:25, 49:12,
   49:22, 50:19,
   51:8, 51:22,
   52:10, 52:12,
   53:7, 53:21, 53:22
sustaining 36:11
Swain 2:18, 7:25,
   61:15, 62:21,
   63:20, 81:22,
   111:7
System 1:37


< T >
T. 3:13
taken. 63:12, 91:8
talented 6:15
talked 54:3
tamp 77:1
tardes 91:10
target 72:24
targeted 15:1, 55:14
task 12:12
tasks 11:2
tax 13:19, 19:1,
   24:13, 96:22
taxes 108:9
Taylor 2:18, 111:7
team 11:3, 12:23,
   56:4, 60:1, 60:10,
   60:11, 60:18,
   61:4, 61:8, 61:15,
   62:13, 72:19,
   73:12, 73:19,

83:16, 83:20,
   85:10, 97:11
technique 95:16
techniques 98:18,
   98:19
technological 20:25
telephone 61:10
telephonic 6:8
temporary 100:3
tens 96:5
tent 83:24
term 109:2
termination 57:21
terms 8:12, 8:16,
   10:11, 11:17,
   13:16, 24:18,
   26:11, 69:9,
   72:18, 72:21,
   75:15, 89:4,
   98:20, 103:19
terrific 69:17,
   107:19
territorial 9:14
testimony 102:13
texting 7:9
thanks 87:12
themselves 102:6,
   107:17
thereabouts 7:15
thereto 92:1
they'll 65:1, 65:3,
   66:24
thinking 65:10
Third 16:11, 51:10,
   58:20, 92:13
Thomas 3:41
though 8:11, 18:21,
   19:9, 40:14,
   85:15, 86:17
thoughtful 90:23
thoughts 63:8
thousands 96:5
three 24:12
timeframe 70:11
timeliness 11:7,
   41:13, 41:18, 43:2
timely 41:15, 41:19,
   93:7
timetable 74:1
timing 7:14, 73:13,

74:2, 76:23, 101:9
titled 40:13
Toby 3:37, 78:19
today 7:14, 16:10,
   16:14, 18:12,
   19:23, 37:20,
   41:4, 56:24,
   57:25, 61:10,
   68:4, 72:5, 72:18,
   74:17, 81:12,
   88:4, 88:8, 88:24,
   90:7, 106:20,
   108:19, 109:9,
   109:21
together 62:14,
   72:21, 80:3,
   84:17, 98:5
tolling 68:8, 68:18
took 12:19, 84:16,
   87:13
tool 95:12
TORRES 33:21, 33:25,
   34:11, 34:15,
   34:17, 34:19,
   34:21, 37:18,
   37:21, 37:23
totaling 18:13
touch 106:11
tout 85:1
toward 6:19
tranches 55:11
transaction 13:24,
   14:4
Transcript 4:48,
   106:9, 111:4
transcription 111:5
Transfer 92:10,
   96:21
transfers 108:12
transform 11:15
transformation 8:19,
   13:15
translated 104:5
translation 103:24
transparency 9:6
travels 110:7
treated 22:16, 24:7,
   26:19, 40:14
treatment 25:1,
   59:2, 59:4

triage 69:6
tried 29:22, 35:10,
   78:4
trillion 18:6
trillions 18:15
Trinidad 47:5
true 36:7, 73:5,
   85:8, 98:9, 100:8,
   111:5
truly 15:13, 69:17
Trump 8:9
Trust 27:20, 31:6,
   48:4, 48:13
Trustee 2:34, 27:20,
   31:6
try 10:7, 18:18,
   19:17, 47:20,
   84:14, 106:9
trying 57:2, 73:16,
   77:1, 82:22,
   103:17
Tuesday 109:22
turn 7:21, 7:23,
   25:16, 44:14,
   74:15
turned 7:1, 7:4
turning 32:11
turns 100:11
two 11:9, 11:23,
   12:16, 14:15,
   15:15, 19:22,
   21:13, 22:9,
   36:11, 36:22,
   37:13, 37:20,
   39:2, 39:10,
   41:12, 42:25,
   48:14, 48:23,
   54:2, 60:7, 61:20,
   73:22, 83:8,
   107:13
two-thirds 65:21
two-way 70:1
tying 29:24
type 30:5, 79:8
types 18:23, 24:11,
   24:21, 25:6,
   58:25, 94:8, 96:9,
   97:3, 104:22,
   104:25
typical 102:8

typically 22:18


< U >
UBS 47:25, 48:1,
   48:4, 48:13
UCC 82:14
ultimate 89:7
ultimately 23:24,
   32:3, 61:25, 66:1,
   97:14, 98:4
unchanged 13:1
unclear 67:20
uncontested 16:20,
   17:11, 25:18,
   25:21, 33:5, 44:8
undergoing 14:23
underlying 58:16
understand 20:11,
   21:20, 23:11,
   24:20, 26:10,
   32:24, 33:24,
   34:14, 35:6,
   35:22, 36:5,
   39:14, 40:16,
   40:18, 41:14,
   42:4, 44:19,
   45:11, 46:13,
   72:23, 83:14,
   84:19, 86:23,
   87:19, 87:22
understanding 81:10,
   96:15
understands 24:20
understood 23:11,
   87:15
undertaken 24:10,
   103:8
undertaking 20:22
underwriters 58:21,
   67:25
undisputed 84:20
unequivocal 55:12
unfairly 55:18
unfolded 19:7
unfortunate 19:7
unfortunately 75:11
uniform 96:5
unintentionally
   67:23

union 19:1, 24:14, 96:22
Unions 66:18, 68:23, 69:25, 83:25
unique 59:21, 65:4, 105:16
uniquely 78:24
United 1:1, 2:19, 2:21, 2:23, 8:10, 9:19, 92:3, 92:23, 106:11, 111:6, 111:8, 111:9
unless 7:2, 36:20, 57:5, 62:17, 69:23, 72:2, 102:7, 106:5, 109:23
unlike 98:25
unlikely 100:22
unlimited 103:14
unliquidated 96:7
unmute 63:21, 77:7, 79:17
unmuted 79:21
unmuting 70:20
unprecedented 83:17
unquote 99:5
unrealistic 102:16
unresolved 92:21, 93:9, 105:13
Unsecured 2:38, 58:25, 59:1, 96:6
until 7:14, 8:13, 22:20, 57:21, 74:2
update 10:19, 13:9, 17:1, 31:19, 106:14, 108:3
updated 23:14, 39:1
urges 100:6
Urquhart 84:9
useful 95:12
using 7:2, 22:13
usual 6:21
utilize 99:6

< V >
v. 2:8
Valdes 82:11
valid 41:10, 42:10,

84:20
validating 35:24
validity 32:18, 56:15, 58:11, 58:20, 86:4
Valle 3:46, 38:8, 39:14, 39:16, 39:23, 40:2, 43:22
valuation 99:8
valuations 99:11
variety 86:23
various 13:9, 14:25, 54:21, 55:11, 66:7
Vassey 52:20, 53:2
vast 11:16
Vazquez 38:1, 44:24, 45:2
vehicles 74:4
Velez 32:21
versa 28:20
versus 59:1
VI 11:11, 13:24, 59:9
vibrant 6:17
vibration 7:4
vice 28:20
video 109:22
view 53:2, 55:16, 71:6, 85:23, 93:16, 100:4
views 91:17, 93:21
vigorously 70:10
vindicating 66:23, 86:9
vintage 65:15, 65:16, 65:17
violating 68:11, 68:13
violations 59:5
virtually 17:14, 69:16
visit 79:24, 89:21
visual 84:5
volume 97:14, 97:25
voluminous 62:11
vote 66:24
voting 8:10

< W >

wait 36:22
waiting 23:14
waiver 99:1
Walker 111:14, 111:15
walking 15:16
walks 69:6
wanted 17:20, 38:25, 64:13, 66:2, 69:2, 71:9, 78:16, 79:9, 80:19, 86:14, 87:6
wanting 72:23
wants 66:4, 66:10, 79:17
waste 53:2, 103:16
wax 88:25
ways 24:19
website 70:19
week 14:11, 35:13, 40:9, 41:3, 107:2
weeks 9:22, 20:20, 24:16, 36:22, 37:13, 37:20, 72:17
Welcome 6:6, 64:8, 72:15, 72:18, 78:22, 79:4, 80:12, 83:15
welcomed 64:9
whatever 25:9, 67:7, 69:7, 85:14
whenever 89:7
wherever 21:5
whether 9:5, 21:3, 21:18, 22:4, 42:23, 58:15, 58:17, 59:7, 59:12, 59:19, 59:22, 60:25, 65:18, 65:24, 67:21, 70:4, 83:18, 83:19, 88:15, 94:10, 94:12, 97:9, 97:11, 97:23, 103:9, 108:12
whichever 35:20, 81:18
whoever 36:24
whole 88:25, 89:11

wide 86:23
wider 22:2
William 3:24, 90:13
willing 80:22, 81:24
win-win 70:2, 70:6
wind 42:22
wire 108:12
wish 10:16, 15:12,
  34:15, 39:18,
  39:20, 74:9,
  84:12, 89:18,
  110:7
wishes 34:17, 36:8,
  86:3, 106:13
withdrawal 26:25
withdrawn 31:10,
  31:20, 32:25,
  44:20, 46:14,
  47:21
withholds 104:16
within 9:21, 21:10,
  24:24
without 28:20,
  60:12, 67:15,
  68:11, 68:12,
  76:25, 79:3,
  88:13, 88:23,
  95:22, 101:23
withstanding 28:1,
  29:4, 29:19, 31:1,
  45:21, 47:13,
  48:24, 49:10,
  53:20
WITNESSES 5:3
word 73:6
work 6:13, 8:17,
  10:25, 11:4,
  12:24, 13:13,
  14:1, 40:7, 44:21,
  46:15, 47:22,
  56:3, 58:2, 60:22,
  61:2, 64:23,
  65:24, 69:8,
  79:18, 81:15,
  83:22, 87:6,
  107:23, 110:6
worked 11:14, 62:1,
  72:3, 74:19,
  84:14, 85:9
working 13:15,

13:18, 13:22,
  14:24, 15:1,
  19:25, 23:21,
  44:18, 46:13,
  62:4, 62:14,
  62:22, 71:11,
  85:9, 85:12,
  106:12
works 64:1, 69:23,
  79:22, 87:19
worry 57:2
worth 87:6
wrestling 62:16
writing 77:22
written 37:2, 93:9,
  99:21

< Y >
years 11:9, 12:17,
  15:15, 61:20,
  84:24
yesterday 17:13
York 6:7, 56:22,
  60:16, 85:20,
  103:22, 110:6
yourselves 63:25

< Z >
ZOUAIRABANI 3:17,
  82:9, 82:10, 82:25