Hearing Date: July 30, 2019 at 1:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
-----------------------------------------------------------x
                                                           :
In re                                                      :
                                                           :
                                                           :   PROMESA
THE FINANCIAL OVERSIGHT AND                                :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                          :
                                                           :
        as representative of                               :   Case No. 17-BK-3283 (LTS)
                                                           :
THE COMMONWEALTH OF PUERTO RICO,                           :   (Jointly Administered)
et al.,¹                                                   :
                                                           :
                                                           :
        Debtors.                                           :
                                                           :
-----------------------------------------------------------x
                                                           :
In re                                                      :
                                                           :
                                                           :   PROMESA
THE FINANCIAL OVERSIGHT AND                                :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                          :
                                                           :
        as representative of                               :   Case No. 17-BK-04780 (LTS)
                                                           :
PUERTO RICO ELECTRIC POWER                                 :   Court Filing Relates Only to PREPA
AUTHORITY (PREPA),                                         :
                                                           :
        Debtor.                                            :
-----------------------------------------------------------x
```

**REPLY IN SUPPORT OF RENEWED OMNIBUS MOTION OF CORTLAND
CAPITAL MARKET SERVICES LLC, AS ADMINISTRATIVE AGENT,
AND SOLUS TO COMPEL DISCOVERY RESPONSES IN
CONNECTION WITH PREPA RSA SETTLEMENT MOTION**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Cortland Capital Market Services LLC ("Cortland"), solely as successor administrative agent for lenders under the Scotiabank Credit Agreement,[2] and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (collectively, "Solus"), as lenders to PREPA under the Scotiabank Credit Agreement and Citibank Credit Agreement, respectfully submit this Reply in support of their Motion to Compel and in response to the Joint Opposition (the "Opp.") filed by the Oversight Board, PREPA and AAFAF [Dkt. No. 1501]. For the reasons set forth in the Motion to Compel and below, the Government Parties should either be precluded from disputing the positions of the Fuel Line Lenders on priority-related issues in seeking approval of the Settlement Motion or they should be required to provide testimony and documents relating to those issues, including in response to Requests for Production 5, 6, 8, 9, 10, 22 and 23, as well as 30(b)(6) Topic 4. They should also be required to respond to interrogatories.

1. The Fuel Line Lenders showed in their opening papers on this renewed motion that discovery concerning their status as "Current Expenses" and entitlement to be paid ahead of PREPA's bonds is relevant to issues that the Government Parties have raised in the Settlement Motion. As noted in the Motion to Compel, the Fuel Line Lenders will object to the settlement on the basis that it materially impacts the rights of the Fuel Line Lenders vis-à-vis the bonds — immediately upon approval of the RSA, not at confirmation. Among other things, despite the fact that the bondholders' lien and their recourse is limited to "*Net* Revenues" in a specified "Sinking Fund" — namely, revenues *after* Current Expenses are paid — the RSA would award the bondholders massive payments and administrative expense claims immediately upon

---

[2] Capitalized terms have the same meanings as in the *Renewed Omnibus Motion of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion* [Dkt. No. 1470] (the "Motion to Compel").

approval, before the Fuel Lines are paid anything. *See* RSA § 2(d) ("Settlement Payments and Administrative Claims"); *id.* § 4 ("Waiver and Support Fees"); July 11 Tr. 39:9–22. The RSA would also cut off the legal rights of the Fuel Line Lenders to pursue a "Lien Challenge" to vindicate their priority position. *See* RSA §§ 1(a)(lxvi), 3(i); July 11 Tr. 43:19–45:2. And, through its "Most Favored Nations" provision, the RSA would prevent the Oversight Board from providing the Fuel Lines with greater recoveries than the bonds, despite the priority structure. *See* RSA § 23. In sum, while the Fuel Line Lenders believe that issues of priority should be addressed in the context of a plan or an adversary proceeding, it is the Government Parties that have sought to predetermine those issues in the context of a settlement.

2. At the time this renewed Motion to Compel was filed, the Oversight Board had already proclaimed, in open Court, that the Fuel Line Lenders had "made up" the priority claim "out of the thin blue air" for litigation purposes. July 11 Tr. 55:9, 24–25. That misstatement, on its own, shined a giant spotlight on the Government Parties' prior representations and course of conduct in recognizing the Fuel Lines as Current Expenses. Having made that assertion, the Government Parties cannot credibly argue that discovery on those issues cannot go forward. Since then, as shown below, the Government Parties have injected still more factual issues into the litigation of the Settlement Motion, which has only magnified the need for the discovery that the Government Parties have resisted for months.

3. The Government Parties now oppose this Motion to Compel by claiming that priority-related issues are "irrelevant" and "beyond the scope" of the Settlement Motion. Opp. ¶¶ 5, 21. To get there, they first wrongly assert that the Fuel Line Lenders are raising only confirmation issues. Indeed, the Government Parties assert that the Fuel Line Lenders have themselves "claimed this discovery is relevant solely because if their claims are 'Current

Expenses' then a plan based on the RSA is not confirmable." *Id.* ¶ 22; *see also id.* ¶ 10 ("the Fuel Line Lenders continue to seek to compel discovery on issues that, according to the Fuel Line Lenders themselves, go to the issue of whether a plan of adjustment compliant with the RSA is confirmable."). These assertions are false. Indeed, the Motion to Compel says the exact opposite:

> [S]ignificant aspects of the RSA contravene the Fuel Line Lenders' rights as holders of Current Expense claims. For example, the RSA provides that the settling bondholders will receive payments from PREPA during the pendency of these Title III cases, before any payments are made to the Fuel Line Lenders ***and before approval of any plan***. . . . *These payments subvert the requirement of the Trust Agreement and the Fuel Line Credit Agreements that payments to the Fuel Line Lenders must be made before any revenues are made available for payment to the bondholders.*

Mot. to Compel ¶ 18 (emphases added). Thus, the Fuel Line Lenders certainly did *not* "concede" — as the Government Parties claim — that their rights "would not be impaired (if at all) until consummation of a confirmed plan." Opp. ¶ 6 (referencing Mot. to Compel ¶¶ 19-20). The discovery is not directed towards some hypothetical future plan; it is directed at aspects of the RSA that would impair the Fuel Line Lenders' rights *now*.

   4.  The Government Parties then distort Judge Swain's comments on the scope of the settlement hearing. They assert that "the Court has already ruled that the issues on which the Fuel Line Lenders seek to compel discovery are beyond the scope of the 9019 Motion." Opp. § A (capitalization and emphasis removed). That is not correct. At the July 11 hearing, the Court *directed the parties to address* "whether the RSA's lien challenge provision, or any other provision that the Court is being asked to approve at this juncture," including the pre-plan-approval payments to the Supporting Holders, "would preclude nonsettling parties from enforcing rights and seeking remedies they would otherwise have legal rights to assert." July 11

-4-

Tr. 14:15–19; *see also* June 12 Tr. 157:22–24 (directing the Government Parties to "lay out legally and factually their position as to how the RSA will preserve the rights of non-settling interested parties"); July 11 Tr. 55:1–6 (directing the Government Parties to "address the fuel line and compensation priority arguments and tell me what the legal basis and factual basis is of the government parties' position that this requested set of approvals of the 9019 does not adversely affect legal rights that these people have").

5. Accordingly, as the Court recognized, the RSA's impact on the legal rights of non-settling creditors — *prior to approval of a plan* — is squarely before the Court on the Settlement Motion. The Fuel Line Lenders are non-settling creditors who assert legal rights to challenge the bondholders' liens (in their own right) and to be paid before the bonds have a valid lien or claim, and they intend to show that the RSA violates those rights. July 11 Tr. 38:23–39:13, 43:19–45:2. Thus the Government Parties' repeated assertion that priority issues are "irrelevant" or out-of-scope cannot be squared with what Judge Swain has directed them — twice — to address on the Settlement Motion.[3]

6. Until just recently, the Government Parties avoided staking out any factual positions that would be relevant to whether the RSA infringes the Fuel Line Lenders' legal rights. Their initial Settlement Motion was not accompanied by any factual declarations or discussion of the position of the Fuel Line Lenders. When Judge Swain ordered the Government Parties to supplement their papers on the Settlement Motion with "detailed factual proffers and

---

[3] Their position is also at odds with the case law, which supports the proposition that a settlement under Rule 9019 should not prejudice the rights of non-parties, including rights relating to priority. *See, e.g.*, *In re CP del Caribe, Inc.*, 140 B.R. 320, 326-27 (Bankr. D.P.R. 1992) (denying Rule 9019 motion, as not "fair and equitable," where settlement would pay creditors outside of a plan ahead of creditors of equal or higher priority and "would endanger debtors' negotiations with" a priority creditor); *In re Liberia Alma Mater, Inc.*, 123 B.R. 698, 700 (Bankr. D.P.R. 1991) (denying approval of settlement which proposed to "afford [a] creditor a preferred treatment not authorized by" the Bankruptcy Code).

legal arguments that, if uncontroverted, would be sufficient to demonstrate the movant's entitlement to the relief sought in the 9019 motion," June 12 Tr. 153:19–22, the Government Parties responded with declarations addressing the purported benefits of the RSA, but again did not address the specific arguments raised by the Fuel Line Lenders.

7. In light of the Government Parties' failure to address the issues raised by the Fuel Line Lenders, at the July 11 hearing, the Court ordered the Oversight Board to "further supplement your supplemental proffer to address the fuel line and compensation priority arguments and tell me what the legal basis and *factual basis* is of the government parties' position that this requested set of approvals of the 9019 does not adversely affect legal rights that these people have."  July 11 Tr. 55:1–6 (emphasis added).

8. In their second supplemental submission filed on July 19 [Dkt. No. 1486] (the "Second Supplement"), the Government Parties finally stated their position and, in doing so, confirmed that there are factual issues that require discovery.  First, the Government Parties asserted for the first time in the Second Supplement that PREPA's agreements and communications contain "no acknowledgment from PREPA that the Lenders under the Scotiabank Credit Agreement are Current Expenses."  Second Suppl. 29 n.26.  In response to that *factual* assertion, the Fuel Line Lenders are fully entitled to take discovery regarding the Government Parties' prior communications and statements relating to the Fuel Lines, as requested in RFPs 5, 6, 22 and 23.

9. Second, and more broadly, the Government Parties have asserted in the Second Supplement that the Fuel Lines are *not* "Current Expenses" at all.  *See* Second Suppl. § II.C ("The Fuel Line Debt Is Not a Current Expense Under the Trust Agreement.").  It is entirely appropriate for the Fuel Line Lenders to take discovery to compare the current contentions of the

-6-

Government Parties to their own prior communications and statements, whether external or internal, as requested in RFPs 5, 6, 22 and 23. *See Victor* v. *Lawler*, No. 08-cv-01374, 2010 WL 2595945, at *1 (M.D. Pa. June 24, 2010) ("[E]vidence which contradicts prior statements by Defendants regarding matters which are relevant to this litigation is properly discoverable both as substantive evidence as well as impeachment evidence in this case.").[4]

10. Third, the Government Parties state in their Second Supplement that, despite its prior determinations that the Fuel Lines are Current Expenses, which were used to induce the Fuel Line Lenders to loan it $700 million, PREPA "has now determined" that the claims of the Fuel Line Lenders and other Current Expense Claimants "are not Current Expenses." Second Suppl. ¶ 10. The Fuel Line Lenders are entitled to discovery to test this extraordinary assertion as well. Who at PREPA made this new determination, and when? How did PREPA arrive at the decision to make such an about-face after seven years of representing the opposite?

11. As explained in the Motion to Compel, if the Government Parties want to challenge the Fuel Line Lenders' priority, the Fuel Line Lenders are entitled to discovery on the topic. The Government Parties appear intent on doing so, based on the factual assertions contained in the Second Supplement and their comments at the July 11 hearing. But if the Government Parties refuse discovery, they should be precluded from presenting evidence or argument at the settlement hearing regarding the status of the Fuel Line Advances as Current Expenses or their rights vis-à-vis the bonds. They cannot have it both ways. See discussion and authorities cited in Motion to Compel § A.

---

[4] The fact that parties on both sides (including the Fuel Line Lenders) will make arguments based on contractual language does not mean discovery is not appropriate. Even when a contract may be clear, evidence regarding course of conduct is a proper subject of discovery. *See Autoridad de Carreteras y Transportacion* v. *Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (permitting discovery relating to extrinsic evidence in contract dispute while reserving admissibility of such evidence for later decision).

12. The Government Parties also resist discovery by proclaiming that the Fuel Line Lenders' position is lacking in merit, and hence does not warrant discovery. *See* Opp. ¶¶ 5, 21. The Government Parties thus spend over two pages restating the reasons why, in their view, the RSA does not affect the Fuel Line Lenders' priority. *See* Opp. at 9-12. But whether the settlement impacts the rights of the Fuel Line Lenders, or expands the rights of the bondholders as summarized above, is precisely one of the issues that Judge Swain will decide in connection with the hearing on the Settlement Motion. That issue cannot be decided on this discovery motion, and the Government Parties cannot prevent discovery simply by claiming that their position will be vindicated at the ultimate hearing.

13. The Government Parties' assertion that discovery is unnecessary because the lenders already have some information also does not begin to persuade. *See* Opp. ¶¶ 7, 27. The Government Parties cannot simultaneously make factual assertions about the Fuel Line Lenders' position and at the same time argue that there should be no discovery because the dispute is a "legal" one or because the Fuel Line Lenders have been given mainly public documents. As discussed in the Motion to Compel, the Government Parties have failed for months to produce documents relating to the specific issues referenced above or the parties' course of conduct. There is no question that such documents could shed light not only on the parties' understanding of the scope of the bondholders' lien but also on the Government Parties' newfound assertion that there was no "subordination agreement" benefiting the Fuel Line Lenders.[5] The disputed document requests are all tailored to obtain relevant information on those issues:

---

[5] *See, e.g.*, *In re Howland*, 545 B.R. 653, 660 (Bankr. D. Or. 2015) (course of dealings between creditor and debtor established a binding subordination agreement under 11 U.S.C. § 510(a) in favor of other creditors); *In re Credit Indus. Corp.*, 366 F.2d 402, 407-09 (2d Cir. 1966) (subordination agreement "occurs when a creditor and the bankrupt agree to create priorities among debts," and is enforceable

- RFPs 5 and 6 seek communications between the Government Parties and PREPA's bondholders regarding the priority and Current Expense status of the Fuel Line Advances. Documents responsive to this request will bear on PREPA's own consistent position that the Fuel Line Advances are Current Expenses, as well as the notice provided to PREPA's bondholders that their loans were subordinate to the Fuel Line Advances. *See* Mot. to Compel Ex. A at 12.

- RFPs 8-10 seek documents showing PREPA's pre-petition borrowing requests and repayments under the Fuel Lines. The record relating to PREPA's borrowings is expected to establish that the Fuel Line Advances were used to purchase fuel, and records showing timely repayments will establish that the Fuel Line Advances were short-term advances treated at all times as Current Expenses. *See id.* at 13.[6]

- RFPs 22 and 23 seek documents "relating to the Current Expense treatment or priority of loans" under the Fuel Lines, including documents relating to the negotiation of those loans. Documents relating to the origination and negotiation of the Fuel Lines will again confirm that the lenders' willingness to advance funds under the Fuel Lines was predicated on their treatment as Current Expenses, and that PREPA and other interested parties structured the Fuel Line facilities so they would receive such priority treatment. *See id.* at 15-16.

14. The Fuel Line Lenders' 30(b)(6) Topic 4 seeks information regarding the same course of conduct:

- Subtopics a-c seek testimony regarding the positions that the Government Parties' have taken regarding "the status of the Fuel Line Loans as 'Current Expenses.'" PREPA historically represented that the Fuel Lines were Current Expenses with priority over the bonds in agreements, resolutions and "Official Statements" accompanying bond issuances. *See* Mot. to Compel Ex. I, Sched. A at 7; Ex. J, Sched. A at 7; Ex. K, Sched. A at 7.

---

without regard to third-party beneficiary status); *see also In re Abengoa Bioenergy Biomass of Kan., LLC*, No. 16-10446, 2018 WL 812941, at *14 (Bankr. D. Kan. Feb. 8, 2018) (subordination agreement created through course of conduct); *In re Mihalko*, 87 B.R. 357, 365 (Bankr. E.D. Pa. 1988) (same).

[6] Some of those materials may be in the possession of Citibank and Scotiabank de Puerto Rico, as the original lender and agent, and the Fuel Line Lenders may seek to obtain the documents from those sources. However, PREPA is the best source of this information. *See Westernbank P.R.* v. *Kachkar*, Civ. No. 07-1606 (ADC/BJM), 2009 WL 10681125, at *2 (D.P.R. Apr. 7, 2009) (defendants were entitled to seek material "from multiple sources").

- Subtopic d seeks testimony regarding the "Annual Budgets" that PREPA was required to create pursuant to the Trust Agreement, which were required to include estimates of PREPA's Current Expenses for the coming year. *See id.* Ex. K, Sched. A at 7.

- Subtopic e seeks testimony regarding communications between the Government Parties and other parties to the RSA, including any communications that refute or support the Government Parties' contention that the Fuel Line Lenders have "made up" their position for litigation purposes. *See id.*

15. Finally, as for interrogatories, the Government Parties' argument that the Fuel Line Lenders violated the Scheduling Order by requesting identification of individuals with knowledge about certain subjects should be rejected. The agreed-to limitation on interrogatories to ones concerning "identification of witnesses only" does not mean that potential objectors were only permitted to ask for the identities of witnesses that the Government Parties *planned to call* in support of their case. Dkt. No. 1253 ¶ 1(a). Under that view, the only permissible interrogatory would have been a request for a witness list, which was due just one day later under the Discovery and Scheduling Order. Under this narrow interpretation of the order, interrogatories would have been superfluous. The better reading of the Discovery and Scheduling Order, consistent with common practice, is that interrogatories were limited to determining who might have relevant information and thus could be called as a deposition witness. On that basis, the Fuel Line Lenders served interrogatories on the Government Parties seeking, *inter alia*, identification of persons involved in the negotiation of the Fuel Lines, as well as persons with knowledge of the PREPA bondholders' alleged collateral. *See* Motion to Compel, Ex. B at 7. The Government Parties failed to respond to a single one of those interrogatories, and they should be required to do so.

16. For the foregoing reasons, the Court should either grant the Motion to Compel with respect to Requests for Production 5, 6, 8, 9, 10, 22 and 23, Rule 30(b)(6) Topic 4 and

-10-

interrogatories, or else preclude the Government Parties from presenting evidence or argument at trial regarding priority-related issues.

Dated: July 25, 2019            Respectfully submitted,

| | |
|---|---|
| */s/ Nayuan Zouairabani* | */s/ Emil A. Kleinhaus* |
| Nayuan Zouairabani | Richard G. Mason (admitted *pro hac vice*) |
| USDC-PR No. 226411 | Amy R. Wolf (admitted *pro hac vice*) |
| MCCONNELL VALDÉS LLC | Emil A. Kleinhaus (admitted *pro hac vice*) |
| 270 Muñoz Rivera Avenue, Suite 7 | Angela K. Herring (admitted *pro hac vice*) |
| Hato Rey, Puerto Rico 00918 | Joseph C. Celentino (admitted *pro hac vice*) |
| P.O. Box 364225 | WACHTELL, LIPTON, ROSEN & KATZ |
| San Juan, Puerto Rico 00936-4225 | 51 West 52nd Street |
| Telephone: (787) 250-5604 | New York, New York 10019 |
| Facsimile: (787) 759-9225 | Telephone: (212) 403-1000 |
| Email: nzt@mcvpr.com | Facsimile: (212) 403-2000 |
| | Email: rgmason@wlrk.com |
| |        arwolf@wlrk.com |
| |        eakleinhaus@wlrk.com |
| |        akherring@wlrk.com |
| |        jccelentino@wlrk.com |
| | |
| | *Attorneys for Cortland Capital Market Services LLC, as Administrative Agent* |
| | |
| */s/ Jose L. Ramirez-Coll* | */s/ Bryce L. Friedman* |
| Jose L. Ramirez-Coll | Bryce L. Friedman (admitted *pro hac vice*) |
| USDC-PR No. 221702 | Nicholas Baker (admitted *pro hac vice*) |
| ANTONETTI, MONTALVO | Sarah E. Phillips (admitted *pro hac vice*) |
| & RAMIREZ-COLL | SIMPSON THACHER & BARTLETT LLP |
| 1225 Ponce de Leon Avenue | 425 Lexington Avenue |
| San Juan, Puerto Rico 00907 | New York, New York 10017 |
| Telephone: (787) 977-0303 | Telephone: (212) 455-2000 |
| Facsimile: (787) 977-0323 | Facsimile: (212) 455-2502 |
| Email: jramirez@amrclaw.com | Email: bfriedman@stblaw.com |
| |        nbaker@stblaw.com |
| |        sarah.phillips@stblaw.com |
| | |
| | *Attorneys for SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC* |