Hearing Date: **July 30, 2019 at 1:00 p.m. (AST)**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------- x
:
*In re* :
:
: PROMESA
THE FINANCIAL OVERSIGHT AND : Title III
MANAGEMENT BOARD FOR PUERTO RICO, :
:
  as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO, : (Jointly Administered)
*et al.*,[*] :
:
  Debtors. :
:
---------------------------------------------------------------- x
:
*In re* :
:
: PROMESA
THE FINANCIAL OVERSIGHT AND : Title III
MANAGEMENT BOARD FOR PUERTO RICO, :
:
  as representative of : Case No. 17-BK-04780 (LTS)
:
PUERTO RICO ELECTRIC POWER : **Court Filing Relates Only to PREPA**
AUTHORITY (PREPA), :
:
  Debtor. :
---------------------------------------------------------------- x

**REPLY IN FURTHER SUPPORT OF MOTION OF SOLUS TO COMPEL
TESTIMONY PURSUANT TO RULE 30(b)(6) FROM U.S. BANK IN
<u>CONNECTION WITH PREPA RSA SETTLEMENT MOTION</u>**

---

[*]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

## **TABLE OF CONTENTS**

 **Page**

| | | |
|---|---|---|
| A. | The Government Parties' Untested Contention That The Settlement Motion Does Not Affect The Fuel Line Lenders' Priority or Prejudice Their Rights Does Not Insulate U.S. Bank From Discovery | 3 |
| B. | Testimony Concerning U.S. Bank's Position, Documents, and Communications Regarding, or Analysis of, the Current Expense Treatment or Priority Status of the Fuel Line Loans Under the Trust Agreement Is Proper and Relevant to the Fuel Line Lenders' Objection (Topic 3) | 4 |
| C. | Examination Topics 1, 2 and 4 of the Subpoena Are Proper Subjects for U.S. Bank | 7 |
| | 1. Testimony Concerning the Negotiation of, Entry into, and Terms of the RSA Is Relevant to the Fuel Line Lenders' Objection (Topic 1) | 8 |
| | 2. Testimony Concerning U.S. Bank's Lack of Control Over Certain Accounts Is Relevant to the Fuel Line Lenders' Objection (Topic 2) | 8 |
| | 3. Testimony Concerning Documents U.S. Bank Has Produced Poses No Burden (Topic 4) | 9 |
| D. | The Existence of an Adversary Proceeding Against U.S. Bank Does Not Excuse It From Discovery on the Settlement Motion | 9 |

# **TABLE OF AUTHORITIES**

## **Cases**

*Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*,
  319 F.R.D. 422 (D.P.R. 2016) ................................................................................................ 12

*B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters*,
  285 F.R.D. 185 (D.P.R. 2012) ................................................................................................ 12

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
  89 F. Supp. 3d 211 (D. Mass. 2015) ....................................................................................... 10

*In re Abengoa Bioenergy Biomass of Kansas, LLC*,
  No. 16-10446, 2018 WL 812941 (Bankr. D. Kan. Feb. 8, 2018) .............................................. 6

*In re Bennett Funding Group*,
  203 B.R. 24 (Bankr. N.D.N.Y. 1996) ..................................................................................... 11

*In re CP del Caribe, Inc.*,
  140 B.R. 320 (Bankr. D.P.R. 1992) .......................................................................................... 4

*In re Howland*,
  545 B.R. 653 (Bankr. D. Or. 2015) .......................................................................................... 6

*In re Liberia Alma Mater, Inc.*,
  123 B.R. 698 (Bankr. D.P.R. 1991) .......................................................................................... 4

*In re Mihalko*,
  87 B.R. 357 (Bankr. E.D. Pa. 1988) ......................................................................................... 6

*S.E.C. v. Archer*,
  No. 16-cv-3505, 2018 WL 3424449 (S.D.N.Y. July 2, 2018) ................................................ 12

*UTIER v. Autoridad de Energia Electrica de Puerto Rico*,
  Case No. K-AC2016-0291 (P.R. Ct. of First Instance, Dec. 19, 2016) .................................... 7

## **Statutes**

11 U.S.C. § 510(a) .......................................................................................................................... 6

11 U.S.C. § 552 ............................................................................................................................... 9

PROMESA § 310 ............................................................................................................................ 1

## **Rules**

Fed. R. Bankr. P. 2004 .................................................................................................................. 10

Fed. R. Bankr. P. 7001 .................................................................................................................. 10

Fed. R. Bankr. P. 7026 .................................................................................................................. 10

Fed. R. Bankr. P. 7030 .................................................................................................................... 1

Fed. R. Bankr. P. 9014 .................................................................................................................... 1

Fed. R. Bankr. P. 9019 .................................................................................................................. 11

Fed. R. Civ. P. 26(f) ..................................................................................................................... 10

Fed. R. Civ. P. 30(b)(6) .................................................................................................................. 1

SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (collectively, "Solus"), as lenders to the Puerto Rico Electric Power Authority ("PREPA") under the Trade Finance Facility Agreement, dated as of July 20, 2012, among PREPA and Citibank, N.A., as predecessor to the existing lenders thereunder (the "Citibank Credit Agreement," and together with the Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank, Cortland Capital Market Services LLC, as successor administrative agent ("Cortland") and the lenders party thereto (as amended, the "Scotiabank Credit Agreement"), the "Fuel Lines" and the lenders thereunder, the "Fuel Line Lenders"), respectfully submits this reply in further support of its *Motion of Solus to Compel Testimony Pursuant to Rule 30(b)(6) from U.S. Bank in Connection with PREPA RSA Settlement Motion* [Dkt. No. 1469] (the "Motion to Compel"), and in response to the Opposition filed by U.S. Bank, National Association ("U.S. Bank") [Dkt. No. 1496] (the "Opposition" or "Opp.").

For the reasons set forth in the Motion to Compel[1] and below, U.S. Bank should be ordered to produce a witness pursuant to Federal Rule of Civil Procedure 30(b)(6), made applicable to these proceedings by Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 310 of PROMESA, in compliance with the Amended Notice of Subpoena to U.S. Bank dated July 5, 2019 (the "Subpoena"). Alternatively, if U.S. Bank does not produce a Rule 30(b)(6) witness, U.S. Bank and the Bondholders should be precluded from making further arguments or submitting evidence regarding the Current

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Compel, or the Opposition. The lenders under the Fuel Lines are referred to as the "Fuel Line Lenders" and the approximately $700 million in loans they made to PREPA are referred to as the "Fuel Line Loans" or "Fuel Lines."

Expense treatment or priority status of the Fuel Line Loans, and any other topic for which they have refused to grant discovery.

1. As explained in Solus' Motion to Compel, the Fuel Line Lenders financed $700 million in fuel oil purchases based on PREPA's express agreement in multiple documents over many years that the Fuel Line Loans are "Current Expenses" and would be paid ahead of any bond debt. Through the RSA, PREPA and the Oversight Board have agreed to make substantial payments to bondholders—and to provide them with substantial administrative expense claims—before any payments are made to the Fuel Line Lenders, in violation of the Fuel Line Lenders' priority rights. The RSA, if approved, would also release all "Lien Challenges" against the bondholders (and U.S. Bank as their Trustee), including challenges available to the Fuel Line Lenders. The Fuel Line Lenders intend to object to the RSA on the basis that it would materially prejudice their legal position and entitlements. Under the Trust Agreement, the bondholders have no lien and, indeed, no claim unless and until "Current Expenses"—including the Fuel Line Loans—are paid; and yet, under the RSA, bondholders are receiving large recoveries, administrative claims, and releases, before the Current Expenses are paid.

2. Other reasons the Settlement Motion cannot be approved have also been previewed for the Court and the parties in interest. *See* June 12, 2019 Hr'g Tr., at 173:10–178:22 [Dkt No. 1351]; July 11, 2019 Hr'g Tr., at 26:22–47:12 [Dkt. No. 1459]. In response to the Fuel Line Lenders' anticipated objections, the Court ordered the Government Parties to respond, twice, so that among other things the Fuel Line Lenders can fully take discovery and prepare to present evidence at the Settlement Motion hearing. June 12, 2019 Hr'g Tr. [Dkt No. 1351], at 153:16–18, 155:24–156:4 ("I will direct the government parties to file . . . a supplemental memorandum of law . . . [T]he Court must be persuaded that those aspects of the deal, such as

-2-

imposing charges, establishing priorities, making irretrievable pre-plan payments and exempting matters from regulation under local laws are within the Court's legal authority and supported by relevant facts and analysis."); July 11, 2019 Hr'g Tr., at 55:1–6 [Dkt. No. 1459] ("I am going to require that you further supplement your supplemental proffer to address the fuel line and compensation priority arguments.").

> **A.** **The Government Parties' Untested Contention That The Settlement Motion Does Not Affect The Fuel Line Lenders' Priority or Prejudice Their Rights Does Not Insulate U.S. Bank From Discovery**

3. U.S. Bank's reliance on the Government Parties' alleged "unequivocal representations" that "the Fuel Line Lenders' priority rights . . . cannot and will not be affected by the RSA or the Settlement Motion" is misplaced. Opp. at ¶¶ 66–67. A central issue on the Settlement Motion is whether the proposed Order approving the Settlement Motion would, in fact, unlawfully impact the Fuel Line Lenders' priority if it is entered. The Government's contention that the proposed Order would not prejudice the Fuel Line Lenders' priority rights, or bar them from pursuing their own causes of action and objections to bondholders' claims, or eliminate their ability to be fully compensated does not make it true, nor does it insulate U.S. Bank from discovery. Indeed, the Government Parties' brand new—and untested—assertion that the Fuel Line Lenders do not have priority was certainly intended to prop up the otherwise specious "no impact" question. But the Government's position does not make it so. If it were so, U.S. Bank would not have spent over eight pages of its opposition arguing why, as a factual matter, the Fuel Line Lenders are supposedly wrong. These arguments alone demonstrate the relevance of the discovery sought of U.S. Bank.

4. The Fuel Line Lenders are entitled to discovery of U.S. Bank, including the single deposition requested, to refute the Government Parties' newfound position regarding priority

-3-

rights.[2] And, at the hearing on the Settlement Motion, the Fuel Line Lenders will show that the proposed Order impacts those priority rights in a way that does not permit entry of the proposed Order.[3] Under applicable case law, the settlement cannot be approved absent a showing that the rights of non-settling parties, including priority rights, are being respected. *See, e.g.*, *In re CP del Caribe, Inc.*, 140 B.R. 320, 326–27 (Bankr. D.P.R. 1992) (denying Rule 9019 motion, as not "fair and equitable," where settlement would pay creditors outside of a plan ahead of creditors of equal or higher priority and "would endanger debtors' negotiations with" a priority creditor); *In re Liberia Alma Mater, Inc.*, 123 B.R. 698, 700 (Bankr. D.P.R. 1991) (denying approval of settlement which proposed to "afford [a] creditor a preferred treatment not authorized by" the Bankruptcy Code). Whether to enter the proposed Order currently before the Court must be determined on a complete factual record that includes discovery from U.S. Bank.

    **B.    Testimony Concerning U.S. Bank's Position, Documents and Communications Regarding, or Analysis of, the Current Expense Treatment or Priority Status of the Fuel Line Loans Under the Trust Agreement Is Proper and Relevant to the Fuel Line Lenders' Objection (Topic 3)**

    5.    U.S. Bank's contention that the Second Supplemental 9019 Memorandum obviates the need for testimony on Topic 3, U.S. Bank's "position, documents or communications regarding, or analysis of the Current Expense treatment or priority status of the Fuel Line Loans under the Trust Agreement,"[4] is wrong. Rather, it underscores the need for the

---

[2]     *See* Motion to Compel; *Renewed Omnibus Motion of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion* [Dkt. No. 1470].

[3]     U.S. Bank tries to make the issue whether the proposed Order will "undo any priority or rights the Fuel Line Lenders" may have, rather than whether it violates such rights.

[4]     U.S. Bank's suggestion that Solus may not inquire about a "course of dealing and understanding" because those precise words do not appear in Topic 3 of the Subpoena is emblematic of the unreasonableness of U.S. Bank's positions throughout this process. Topic 3 includes the words "documents or communications regarding," "analysis of" and "position," questions about which will capture any "course of dealing and understanding." U.S. Bank's further concern that Topic 3 seeks

-4-

testimony the Fuel Line Lenders seek from U.S. Bank, because such testimony will show—in accord with a substantial body of evidence elicited from other entities[5] and contrary to the Government Parties' bald assertions—U.S. Bank's understanding and agreement that the Fuel Lines would be paid before the bondholders. The course of dealing among U.S. Bank, PREPA, the Bondholders and Fuel Line Lenders is relevant to the Fuel Line Lenders' opposition to the Settlement Motion. It will demonstrate that the Government Parties' arguments are contrary to their own priority positions and without merit.[6]

6. While it is unnecessary to fully explain the myriad reasons why U.S. Bank's and the Government Parties' positions are wrong here and why the Fuel Line Lenders benefit from a subordination agreement, separate and apart from their ability to object to the bondholders' liens and their claims, it is plain there is no legal requirement that there be a single "agreement signed by the PREPA Bond Trustee or the PREPA Bondholders" to establish a subordination agreement, as U.S. Bank appears to contend. Proof of an agreement may be offered in a number of ways and has already been demonstrated through the Trust Agreement and many other documents. *See In re Howland*, 545 B.R. 653, 660 (Bankr. D. Or. 2015) (finding course of dealings between creditor and debtor established a binding subordination agreement under 11 U.S.C. § 510(a) in favor of other creditors, even without direct communication amongst

---

testimony dating back "decades" about "unidentified transactions" is also unjustified, for the simple reason that the Fuel Lines Loans at issue date back to 2012.

[5] *See, e.g.*, Motion to Compel at ¶¶ 18–19 (quoting PREPA Series 2013A Official Statement that "[r]epayment of [the Fuel Line Loans] and future lines of credit to cover operational expenses is treated as a Current Expense under the Trust Agreement, which is entitled to be paid before debt service on the Power Revenue Bonds" and Citibank memo stating "advances under the trade finance facility have priority claims over bondholders and other creditors as they are considered current expenses").

[6] The Fuel Line Lenders will present their arguments in response to the Settlement Motion and the Government Parties' First and Second Supplemental 9019 Memoranda in their Objection as opposed to this discovery briefing.

creditors); *In re Mihalko*, 87 B.R. 357, 365 (Bankr. E.D. Pa. 1988) (holding that one creditor may agree to subordinate its claim to another through a course of conduct); *In re Abengoa Bioenergy Biomass of Kansas, LLC*, No. 16-10446, 2018 WL 812941, at *14 (Bankr. D. Kan. Feb. 8, 2018) (finding subordination agreement where course of dealing showed a general understanding that all claims against debtor by its affiliates would be subordinated to the claims of third parties); *see also* Motion to Compel, at ¶¶ 7–19.

7.  U.S. Bank's selective reading of the Trust Agreement to argue the merits of its position ignores the course of dealing, understanding, and the constellation of other documents (including the Fuel Lines Lenders') and conduct that will be revealed through proper discovery and used to confirm the existence of the agreement U.S. Bank contends is absent. U.S. Bank is resisting discovery and singularly focusing on a cribbed reading of the Trust Agreement so that the Fuel Line Lenders will be hampered in their efforts to prove such an agreement. Discovery of course of dealing, understandings and agreements concerning contractual relations is discovery of facts relevant to prove the agreement that U.S. Bank says does not exist. It is also relevant to confirm all parties' understanding of the limited scope of the bondholders' "*Net Revenues*" lien, which provides a stand-alone basis to deny approval of the settlement even if there were no subordination agreement.

8.  To the extent U.S. Bank contends that *UTIER v. Autoridad de Energia Electrica de Puerto Rico*, Case No. K-AC2016-0291 (P.R. Ct. of First Instance, Dec. 19, 2016), has already decided the issues here in the Government Parties' favor, U.S. Bank is wrong. A full treatment of *UTIER* is beyond the scope of this memorandum, but several points are particularly relevant: *First*, *UTIER* says *nothing* about the scope of the bondholders' lien or the non-recourse nature of claim—the matters addressed in the Fuel Line Lenders' complaint, and a primary basis

-6-

on which the Fuel Line Lenders have asserted priority. By the same token, *UTIER* says nothing about the Fuel Line Lenders' loan documents, which expressly state that the Fuel Lines are Current Expenses entitled to priority in payment. *Second*, in a part of the decision that U.S. Bank and the Government Parties ignore, *UTIER* says that "PREPA was bound to comply with paying its current expenses before proceeding to pay the bonds." *UTIER*, Case No. K-AC2016-0291 at 72. That is the Fuel Line Lenders' position and directly contrary to the Government Parties' contentions on which U.S. Bank relies. *Third*, the *UTIER* court ultimately denied UTIER's constitutional challenge to a charge on the basis that the charge would *not* be paid from PREPA's general fund or other PREPA assets; the settlement, in contrast, would allow massive administrative claims against PREPA, among other things. Thus, as will be shown in an objection, *UTIER* does not address or resolve the main issues raised by the settlement.

    **C.    Examination Topics 1, 2 and 4 of the Subpoena Are Proper Subjects for U.S. Bank**

9. As articulated in Solus' Opposition to U.S. Bank's Motion to Quash[7] at ¶¶ 35–43, 51–53, Topics 1, 2 and 4 of the Subpoena are also proper subjects for examination.[8] In the interest of efficiency, Solus incorporates but does not repeat those arguments in full here.

---

[7] *Solus' Opposition to U.S. Bank's Motion to Quash Amended Deposition Notice, And Memorandum in Support of Urgent New Motion to Compel Production of Documents by U.S. Bank* [Dkt. No. 1502].

[8] Solus has not waived its right to compel a deposition on Topics 1, 2 and 4 because the Motion to Compel presents Solus' arguments regarding why the Subpoena must be complied with in its entirety, and because Solus' right to testimony on all Topics is further articulated in Solus' Opposition to U.S. Bank's Motion to Quash. Solus tried to meet U.S. Bank's concerns about particular topics but, at the end of the day, U.S. Bank refused to offer a witness on any topic, under any circumstance and Solus was forced to engage in the instant motion practice to preserve its rights.

### 1. Testimony Concerning the Negotiation of, Entry into and Terms of the RSA Is Relevant to the Fuel Line Lenders' Objection (Topic 1)

10. Topic 1 seeks testimony on the "negotiation of, entry into, and terms of the RSA." U.S. Bank's counsel says (without any evidentiary basis) that U.S. Bank was not involved in the negotiation of the RSA, and is not a party to the RSA, but asserts at the same time that a deposition on Topic 1 would raise privilege and work product concerns. These conclusory and inconsistent claims support the need for a deposition, not a motion to quash. U.S. Bank's involvement cannot be both non-existent and privileged, and a deposition should be taken to discover the true state of affairs. It is U.S. Bank's position that has been opaque and ever-changing with respect to its role in connection with the negotiation and formulation of the RSA and the manner in which it proposes to trample on the Fuel Line Lenders' rights. A deposition is needed to nail down the facts, as depositions do in every matter.

11. U.S. Bank has commercial obligations under the Trust Agreement and to the Fuel Line Lenders. It has been fulfilling those obligations to, and its agreements with, the Fuel Line Lenders for many years. U.S. Bank's understanding of those commercial obligations and how, if at all, the RSA will impact those obligations and whether U.S. Bank was involved in trying to breach those obligations and now seeks to be exculpated for those breaches, are key issues at the Settlement Motion hearing and an appropriate area for inquiry. The other financial institutions impacted and involved in the RSA have produced the requested material and witnesses on these issues; U.S. Bank's refusal to do the same is unjustified.

### 2. Testimony Concerning U.S. Bank's Lack of Control Over Certain Accounts Is Relevant to the Fuel Line Lenders' Objection (Topic 2)

12. Testimony with respect to Topic 2 (U.S. Bank's control as of the Petition Date and at present over the funds created by the Trust Agreement including the General Fund and Sinking Fund), is relevant to the issue of the validity, scope and priority of the Trustee's asserted

liens. Because the RSA contemplates payouts to the bondholders well beyond the amounts in the Sinking Fund, the Fuel Line Lenders are entitled to prove that U.S. Bank lacks a perfected lien on such other funds. U.S. Bank erroneously claims that the bonds are secured by PREPA's gross revenue, but this is contrary to the actual terms of the Trust Agreement, which provides a lien only on money transferred to the Sinking Fund and which can be perfected only through control. U.S. Bank must show how it has a perfected lien.

### 3. Testimony Concerning Documents U.S. Bank Has Produced Poses No Burden (Topic 4)

13. With respect to Topic 4 (the documents produced in response to the Fuel Line Lenders' Requests for Production), the Fuel Line Lenders seek only to depose a witness on relevant documents in U.S. Bank's production bearing on the other Subpoena topics. If U.S. Bank makes a proper production, it is these documents (even if authored by someone else like PREPA) and U.S. Bank's knowledge and assent to their terms which will prove the Fuel Line Lenders' factual contentions in the case. For example, at least nine bond offering memoranda, which U.S. Bank produced, discuss treatment of the Fuel Line Loans and recognize their Current Expense status and priority.

14. U.S. Bank has failed to submit an affidavit or other evidence of the burden presented by a single deposition regarding the very limited documents from its own files. *See Garcia v. E.J. Amusements of New Hampshire, Inc.*, 89 F. Supp. 3d 211, 216 (D. Mass. 2015) (rejecting claim that discovery imposed an undue burden in the absence of an affidavit "specifically outlining the number of hours it would take to comply").

### D. The Existence of an Adversary Proceeding Against U.S. Bank Does Not Excuse It From Discovery on the Settlement Motion

15. U.S. Bank's argument that Solus' Motion to Compel seeks "premature and unilateral" discovery for use in its adversary proceeding is nothing but an unfounded attempt to

-9-

sidestep its own discovery obligations in connection with the Settlement Motion. The priority of the Fuel Line Loans has been put at issue by the Government Parties in the Settlement Motion—the Court has twice directed the Government Parties to confront it.[9] Solus seeks U.S. Bank's deposition testimony because it goes directly to the Government Parties' contentions and claims, and the claims and defenses the Fuel Line Lenders will raise in their objection to the RSA. The fact that the adversary proceeding implicates some overlapping issues does not bar the Fuel Line Lenders from seeking relevant testimony in connection with the Settlement Motion until it would be permitted to in the adversary proceeding.[10]

16. Other arguments advanced as to why the adversary proceeding bars discovery relating to the Settlement Motion are without merit. The only support U.S. Bank provides for its proposition that "two-front" discovery is "discouraged" is *In re Bennett Funding Group*, 203 B.R. 24 (Bankr. N.D.N.Y. 1996), a case relating to Rule 2004 examinations (which are not implicated here) in which the court simply ruled that if a party is subject to an adversary proceeding, discovery of that party should be pursuant to the Federal Rules of Civil Procedure (as incorporated into the Bankruptcy Rules). That is already the case here with respect to both the Settlement Motion and the adversary proceeding. In any event, there is no "two-front" discovery at issue because fact discovery with respect to the Settlement Motion will conclude

---

[9] June 12, 2019 Hr'g Tr., at 155:24–156:4 [Dkt No. 1351]; July 11, 2019 Hr'g Tr., at 55:1–6 [Dkt. No. 1459].

[10] Furthermore, U.S. Bank's technical arguments are incorrect. Federal Rule of Civil Procedure 26, which governs discovery in an adversary proceeding, *see* Fed. R. Bankr. P. 7026, does not bar discovery prior to a motion to dismiss, as U.S. Bank contends. Opp. at ¶ 5. Discovery may begin at any time after a Rule 26(f) conference takes place between the parties, and a Rule 26(f) conference is intended to occur "as soon as practicable." Fed. R. Civ. P. 26(f). U.S. Bank's response to the adversary proceeding is due August 12. Any discovery that is taken here that can be used in the later adversary proceeding is efficient, not prejudicial to U.S. Bank.

before U.S. Bank's response to the Adversary Complaint is due. Finally, contrary to U.S. Bank's assertion, Rule 7001 sets forth the subject matter of adversary proceedings (including subordination disputes); it does not bar a court from hearing priority issues arising in the context of a Rule 9019 motion. Priority is at issue by virtue of the Settlement Motion and therefore discovery on that issue is relevant and necessary. U.S. Bank has offered no evidence or cognizable argument as to how it would be prejudiced by providing the requested discovery and appears to be attempting to avoid such discovery to avoid a fair resolution of the merits.

* * *

17. At bottom, U.S. Bank spends a substantial part of its opposition quibbling about the meet and confer process during which, despite the efforts of two law firms, U.S. Bank bobbed and weaved and would not agree to produce a witness to testify about anything, and has similarly produced virtually no documentary evidence. Then as now, U.S. Bank has not met its high burden to show "exceptional circumstances" that would excuse its obligation to produce a witness on issues central to the Fuel Line Lenders' opposition to the Settlement Motion. *B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters*, 285 F.R.D. 185, 186 (D.P.R. 2012); *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 437 (D.P.R. 2016) ("Prohibiting the taking of depositions is an extraordinary measure") (citations omitted). U.S. Bank's burden is particularly high here because, as the Trustee to the bondholders it is "closely allied with [the parties seeking relief] and the information [it] possess[es] is . . . pertinent," *see S.E.C. v. Archer*, No. 16-cv-3505, 2018 WL 3424449, at *2 (S.D.N.Y. July 2, 2018). Therefore, U.S. Bank must produce a witness.

-11-

| | |
|---|---|
| Dated: July 25, 2019 | Respectfully submitted, |

| | |
|---|---|
| */s/ Jose L. Ramirez-Coll* | */s/ Bryce L. Friedman* |
| Jose L. Ramirez-Coll | Bryce L. Friedman (admitted *pro hac vice*) |
| USDC-PR No. 221702 | Nicholas Baker (admitted *pro hac vice*) |
| ANTONETTI, MONTALVO & RAMIREZ-COLL | Sarah E. Phillips (admitted *pro hac vice*) |
| | SIMPSON THACHER & BARTLETT LLP |
| 1225 Ponce de Leon Avenue | 425 Lexington Avenue |
| Suite 1001 | New York, New York 10017 |
| San Juan, Puerto Rico 00907 | Telephone: (212) 455-2000 |
| Telephone: (787) 977-0303 | Facsimile: (212) 455-2502 |
| Facsimile: (787) 977-0323 | Email: bfriedman@stblaw.com |
| Email: jramirez@amrclaw.com | nbaker@stblaw.com |
| | sarah.phillips@stblaw.com |

*Attorneys for SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC*