Hearing Date: September 11, 2019, at 9:30AM (Atlantic Time)
Response Deadline: August 28, 2019 at 4:00PM (Atlantic Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                           Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to HTA.** |

**SIXTY-FIRST OMNIBUS OBJECTION
(NON-SUBSTANTIVE) OF THE PUERTO RICO HIGHWAYS
AND TRANSPORTATION AUTHORITY TO DUPLICATE BOND CLAIMS**

The Puerto Rico Highways and Transportation Authority ("HTA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of HTA pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this sixty-first omnibus objection (the "Sixty-First Omnibus Objection") to the duplicate proofs of claim filed by HTA bondholders listed on

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, COFINA, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

**Exhibit A** hereto, and in support of the Sixty-First Omnibus Objection respectfully represents as follows:

## JURISDICTION

1. The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2. Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.** **The Bar Date Orders**

3. On May 21, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "HTA Title III Case").

4. On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the HTA Title III Case. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

2

with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

5. Pursuant to the Initial Bar Date Order, the indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents. Initial Bar Date Order, ¶ 5(a).

**B.     HTA Bond Debt Master Proofs of Claim**

6. HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act"). HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth. *See* 9 L.P.R.A § 2002.

7. The HTA Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l). Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "Resolution Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution," and with the 1968 Resolution, the "Resolutions"). As of the Petition Date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.

8. Bank of New York Mellon ("BNYM") serves as fiscal agent with respect to the Resolution Bonds. On behalf of the holders of the Resolution Bonds, BNYM filed three master

3

proofs of claim in the HTA Title III Case (collectively, the "BNYM Master Proofs of Claims"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

9. Each of the BNYM Master Proofs of Claim asserted with respect to the Resolution Bonds at issue "[a]ny and all claims, rights and/or remedies the Fiscal Agent and/or the Owners may have under or in connection with" the 1968 Resolution or 1998 Resolution, as applicable, along with "[a]ny and all claims, rights, and/or remedies the Fiscal Agent and/or the Owners may have arising at law or in equity based upon" the 1968 Resolution or 1998 Resolution, as applicable, "including, but not limited to, claims for breach of contract, specific performance, indemnification, contribution, recession, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, alter ego, reimbursement and/or subrogation related to, or arising from or on account of any and all part, present, or future litigations, actions, or transactions by, among, or involving the Fiscal Agent, the Owners, and/or [HTA]." Addendum to Proof of Claim No. 32622, ¶ 17; Addendum to Proof of Clam No. 37245, ¶ 19; Addendum to Proof of Clam No. 38574, ¶ 18.

10. Additionally, in accordance with the HTA Enabling Act, in 2003, HTA issued a series of Special Facility Revenue Refunding Bonds to facilitate the financing of the Teodoro Moscoso Bridge (the "Bridge Bonds"). Banco Popular de Puerto Rico ("Banco Popular") serves as trustee with respect to the Bridge Bonds. On behalf of the holders of Bridge Bonds, Banco Popular filed a master proof of claim asserting approximately $153 million in liabilities plus

4

unliquidated amounts for "all amounts owed on account of the [Bridge] Bonds," which was logged by Prime Clerk, LLC, as Proof of Claim No. 22624 (the "Banco Popular Master Proof of Claim," and together with the BNYM Master Proofs of Claim, the "Master Proofs of Claim").

**C.     HTA Claims**

11.     To date, approximately 169,591 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.[4]  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors.

12.     Of the proofs of claim filed, approximately 2,338 have been filed in relation to, or reclassified to be asserted against, HTA.  The HTA-related proofs of claim total approximately $83.1 billion in asserted claims, in addition to unliquidated amounts asserted.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being duplicative of other proofs of claim.

**D.     Omnibus Objection Procedures and Objections to HTA Claims**

13.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, the Debtors, on October 16, 2018, filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The relief requested therein was non-substantive in nature and was designed to expedite and streamline the claims reconciliation process by, among other things, enlarging the number of claims permitted to be within the scope of an omnibus objection.  After the proposed order was revised to incorporate certain comments received, including those from the Court at a

---

[4] This total count of recorded entries on the claims register in the Title III cases includes over 8,000 claims that have been marked as docketed in error and removed.

5

hearing held on November 7, 2018, the Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").

14. Pursuant to the Initial Omnibus Objection Procedures, the Court has heard fifty-nine non-substantive omnibus objections filed by the Commonwealth, COFINA, HTA, and/or ERS. Following hearings held on January 30, 2019, and March 13, 2019, the Court sustained nineteen of these omnibus objections, in addition to certain individual objections to claims filed against COFINA, resulting in thousands of proofs of claim filed against COFINA being disallowed and expunged, and hundreds of other claims being reclassified to be asserted against another of the Debtors. Forty omnibus objections to claims filed against the Commonwealth, HTA, ERS, and/or COFINA, in addition to a number of individual objections to claims filed against the Commonwealth, ERS, or COFINA, were heard on June 12, 2019, and July 24, 2019. Based upon rulings and orders of the Court, over 9,000 claims asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

15. In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, the Debtors, on May 23, 2019, filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. The Court granted the requested relief by the June 14, 2019 *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Procedures Order").

16. This Sixty-First Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

17. The Amended Omnibus Objection Procedures allow HTA to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7).

18. The Sixty-First Omnibus Objection seeks to disallow, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, bond claims that are duplicates of one or more Master Proofs of Claim filed in the HTA Title III Case.

19. In each claim identified in **Exhibit A** hereto (the "Duplicate Bond Claims"), the claimant asserts liability associated with one or more bonds issued by HTA that are duplicative of one or more Master Proofs of Claim, which as explained above were filed in the HTA Title III Case by BNYM as fiscal agent of the Resolution Bonds and by Banco Popular as trustee of the Bridge Bonds. As a result, any failure to disallow the Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against HTA, to the detriment of other stakeholders in the HTA Title III Case. The holders of the Duplicate Bond Claims will not be prejudiced by the disallowance of their claims because the liabilities associated with their claims are subsumed within one or more Master Proofs of Claim.

7

20. In support of the foregoing, HTA relies on the *Declaration of Jay Herriman in Support of the Sixty-First Omnibus Objection (Non-Substantive) of Puerto Rico Highways and Transportation Authority to Duplicate Bond Claims*, dated July 26, 2019, attached hereto as **Exhibit B**.

## NOTICE

21. In accordance with the Amended Omnibus Objection Procedures, HTA is providing notice of this Sixty-First Omnibus Objection to (a) the individual creditors subject to this Sixty-First Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Ninth Amended Case Management Procedures* [ECF No. 7115-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico. A copy of the notice for this Sixty-First Omnibus Objection is attached hereto as **Exhibit C**. Spanish translations of the Sixty-First Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties. HTA submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

22. This Sixty-First Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to the Duplicate Bond Claims or any other claims on any ground whatsoever. The Debtors expressly reserve all further substantive or procedural objections. Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

8

## **NO PRIOR REQUEST**

23. No prior request for the relief sought in this Sixty-First Omnibus Objection has been made to this or any other court.

WHEREFORE HTA respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting HTA such other and further relief as is just.

Dated: July 26, 2019  
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Ricardo Burgos Vargas*  
Ricardo Burgos Vargas  
USDC No. 218210  
**A&S LEGAL STUDIO, PSC**  
434 Ave. Hostos  
San Juan, PR 00918  
Tel: (787) 751-6764  
Fax: (787) 763-8260

/s/ *Martin J. Bienenstock*  
Martin J. Bienenstock (*pro hac vice*)  
Brian S. Rosen (*pro hac vice*)  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
New York, NY 10036  
Tel: (212) 969-3000  
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for HTA*

9

**Fecha de la vista: 11 de septiembre de 2019 a las 9.30 a.m. (AST)**
**Fecha límite para la contestación: 28 de agosto de 2019 a las 4.00 p.m. (AST)**

> **REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA SU(S) RECLAMO(S)**

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| En el asunto de:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>como representante de<br><br>EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, *y otros*<br><br>Deudores[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrada conjuntamente)<br><br>**Esta presentación se relaciona con la ACT.** |

**SEXAGÉSIMA PRIMERA OBJECIÓN GLOBAL (NO SUSTANTIVA) DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO CONTRA LOS RECLAMOS DUPLICADOS POR BONOS**

La Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") mediante la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), en calidad de representante de la ACT de conformidad con el artículo 315 b) de la *Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] presenta esta sexagésima primera objeción (la "Sexagésima Primera Objeción Global") a las evidencia de reclamo duplicadas presentadas por bonistas de la ACT que se enumeran en el **Anexo A** al

---

[1] Los Deudores en estas causas promovidas conforme al Título III, el número de causa para cada Deudor y los últimos cuatro (4) dígitos del número federal de contribuyente de cada uno de ellos, según corresponda, son los siguientes: i) el Estado Libre Asociado de Puerto Rico (el "ELA"), (procedimiento de quiebra núm. 7 BK 3283-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3481); ii) la Corporación del Fondo de Interés Apremiante ("COFINA") (procedimiento de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos del número federal de contribuyente: 8474); ii) la Autoridad de Carreteras y Transportación ("ACT") (procedimiento de quiebra núm. 17 BK 3567-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3808); iv) la Administración de Sistemas de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("ASR") (procedimiento de quiebra núm. 17 BK 3566-LTS) (últimos cuatro dígitos del número federal de contribuyente: 9686); y v) la Autoridad de Energía Eléctrica de Puerto Rico ("AEEPR") , y junto con el ELA, COFINA, la ACT y la ASR, los "Deudores" (procedimiento de quiebra núm. 17 BK 4780-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3747 ) (Debido a limitaciones informáticas, a los casos promovidos conforme al Título III se les asigna un número como procedimientos de quiebra).

[2] La ley PROMESA ha sido codificada en los artículos 2101-2241 del Título 48 del Código de los Estados Unidos (USC).

presente, y en apoyo de dicha Sexagésima primera objeción global respetuosamente aduce lo siguiente:

## JURISDICCIÓN

1. De conformidad con el artículo 306(a) de PROMESA, el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción en razón de la materia para entender en esta causa y en la reparación solicitada.

2. De conformidad con el artículo 307 a) de PROMESA, es apropiado constituir sede en este distrito.

## ANTECEDENTES

**A. Las órdenes de fecha final**

3. El 21 de mayo de 2017 (la "fecha de la petición"), la Junta de Supervisión emitió una certificación de reestructuración al amparo de los artículos 104 j) y 206 de PROMESA y presentó una petición voluntaria de reparación para la ACT de conformidad con el artículo 304 a) de PROMESA, de esa forma dando inicio a una causa al amparo del Título III de dicha ley (el "caso de la ACT conforme al Título III").

4. El 16 de enero de 2018, los Deudores presentaron su *Moción para una orden que a) establezca plazos y procedimientos para presentar pruebas de reclamo y b) apruebe la forma y la manera de notificarlas* [ECF núm. 2255][3] (la "Moción de fecha final"). De conformidad con la *Orden que a) establece plazos y procedimientos para presentar pruebas de reclamo y b) aprueba la forma y la manera de notificarlas* [ECF núm. 2521] (la "Moción inicial de fecha final"), el Tribunal declaró con lugar el remedio solicitado en la Moción de fecha final y estableció los plazos y procedimientos para presentar la evidencia de reclamo en la causa de la ACT promovida conforme al Título III. Tras la moción informativa de ciertos acreedores y con el apoyo de los Deudores, posteriormente el Tribunal dictó la *Orden que a) prorroga los plazos para presentar evidencia de reclamo y b) aprueba la forma y manera de notificarlas* [ECF núm.

---

[3] A menos que se indique otra cosa en el presente, las citas a ECF se refieren a documentos presentados en el marco del procedimiento de quiebra núm. 17 BK 3283-LTS.

2

3160] (junto con Moción inicial de fecha final, las "Mociones de fecha final") y prorrogó los plazos hasta el 29 de junio de 2018 a las 4.00 p.m. (AST).

5. De conformidad con la Moción inicial de fecha final, el administrador judicial, los agentes fiscales o cualquier representante o apoderado similar para cada serie respectiva de bonos emitidos por uno o más de los deudores podrá presentar una evidencia maestra de reclamo contra el deudor que corresponda —en representación de sí mismo y de todos los titulares de reclamos por los bonos de la serie que corresponda— por las obligaciones que surjan de cada acuerdo, resolución o documento similar sobre los bonos. Moción inicial de fecha final, ¶ 5(a).

**B. Pruebas maestras de reclamos por la deuda de los Bonos ACT**

6. La ACT es una empresa pública y una dependencia del ELA, del cual es independiente como entidad empresarial y política, creada de conformidad con la ley núm. 74-1965 de la Asamblea Legislativa del ELA ("Ley de creación de la ACT"). La ACT se encarga de la construcción, la operación y el mantenimiento de las carreteras y los demás sistemas de transporte en el ELA. *Véase* 9 L.P.R.A § 2002.

7. La Ley de creación de la ACT la autoriza a emitir bonos. *Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). De conformidad con dicha ley, la ACT emitió varias series de bonos de conformidad con dos resoluciones distintas (las "Resoluciones Sobre los Bonos"). *i*) resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y *ii*) Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998," y junto con la resolución de 1968, las "Resoluciones"). Para la fecha de petición, permanecen pendientes de pago unos $830 millones de capital por los bonos emitidos de conformidad con la Resolución de 1968, y unos $3,400 millones de capital por los bonos emitidos de conformidad con la Resolución de 1998.

8. Bank of New York Mellon ("BNYM") es el agente fiscal para las Resoluciones Sobre los Bonos. En representación de los titulares de las Resoluciones Sobre los Bonos, BNYM presentó tres evidencia maestras de reclamos en el caso de la ACT habida conforme al Título III (colectivamente, las "evidencia maestras de reclamo de BNYM"): la evidencia de

3

reclamo núm. 37245, que en representación de los titulares de los bonos emitidos de conformidad con la Resolución de 1968 aduce obligaciones por unos $847 millones más montos no liquidados; la evidencia de reclamo núm. 38574, que en representación de los titulares de los bonos emitidos de conformidad con la Resolución de 1998 aduce obligaciones por unos $3,200 millones más montos no liquidados; y la evidencia de reclamo núm. 32622, que en representación de los titulares de los bonos subordinados emitidos de conformidad con la resolución de 1998 aduce obligaciones por unos $279 millones más montos no liquidados.

9. Cada una de las evidencia maestras de reclamo de BNYM procuraba, respecto de los bonos emitidos conforme a las Resoluciones, hacer valer "todos los reclamos, derechos o remedios que el Agente Fiscal o los Propietarios puedan tener de conformidad con" las Resoluciones de 1968 o 1998, según proceda, junto "con todos los reclamos, derechos o remedios que el Agente Fiscal o los Propietarios puedan tener de conformidad con la ley o los principios de equidad" sobre la base de las Resoluciones de 1968 y 1998, según proceda, "incluidos, a modo de ejemplo, los reclamos por incumplimientos contractuales, cumplimiento estricto, indemnidad, contribuciones, recesión, fraude, incentivos fraudulentos, enajenación fraudulenta, tergiversaciones, velos societarios o corporativos, reembolsos o subrogaciones relacionadas con cualesquiera litigios, acciones judiciales o transacciones pasadas, presentes o futuras que involucren al agente fiscal, los propietarios o la [ACT]". Artículo suplementario a la reclamo de reclamo núm. 32622, ¶ 17; artículo suplementario a la evidencia de reclamo núm. 37245, ¶ 19; artículo suplementario a la evidencia de reclamo núm. 38574, ¶ 18.

10. Además, de conformidad con la Ley de creación de la ACT, en 2003 la ACT emitió una serie de bonos de refinanciamiento para facilitar la financiación del puente Teodoro Moscoso (los "Bonos para el Puente"). Banco Popular de Puerto Rico ("Banco Popular") es el fiduciario de los Bonos para el Puente. En representación de los titulares de los bonos para el puente, Banco Popular presentó una evidencia maestra de reclamo por unos $153 millones en obligaciones más montos no liquidados por todos los montos adeudados en virtud de los bonos

4

para el puente; Prime Clerk registró la prueba de reclamo con el número 22624 (la "prueba maestra de reclamo de Banco Popular", y junto con las evidencias maestras de reclamo de BNYM, las "Evidencias Maestras de Reclamos").

**C.    Reclamos ACT**

11.    A la fecha, se han presentado aproximadamente 169,591 evidencia de reclamo contra los Deudores, que han sido registrada por Prime Clerk, LLC.[4] Dichas evidencia de reclamo totalizan unos $43.6 billones en reclamos contra los Deudores.

12.    Unas 2,338 de esas pruebas de reclamo han sido presentadas con relación al ACT, o reclasificadas como presentadas contra la ACT.  Las evidencia de reclamo relacionadas con la ACT totalizan unos $83,100 millones en obligaciones alegadas, más montos no liquidados. De conformidad con las Mociones de fecha final, o bien no habría sido necesario presentar muchos de estos reclamos, o bien los reclamos presentan algún otro tipo de error, por ejemplo, haber duplicado otra evidencia de reclamo.

**D.    Procedimientos para las objeciones globales y objeciones a los reclamos contra la ACT**

13.    A los efectos de resolver con eficacia la mayor cantidad posible de evidencia de reclamo innecesarias, el 16 de octubre de 2018 los Deudores presentaron ante este Tribunal su *Moción para una orden que a) apruebe procedimientos limitados para las objeciones globales, b) no exija cumplir el requisito de la regla 3007(e)(6) del Código de Quiebras, y c) otorgue medidas relacionadas* [ECF núm. 4052] la "Moción de procedimientos globales"] Las medidas solicitadas en dicho documento eran de naturaleza no sustantiva y tenían por objeto acelerar y racionalizar el proceso de conciliación de reclamos mediante, entre otras cosas, aumentar el número de reclamos pudieran quedar incluidos dentro del ámbito de una objeción global. Tras revisar la orden propuesta para incorporar ciertos comentarios que se recibieron —incluidos los que el Tribunal realizó en una vista del 7 de noviembre de 2018—, el Tribunal otorgó las

---

[4] Tras haberse determinado que se presentaron erróneamente, más de 8,000 de estos reclamos han sido dados de baja del registro.

5

medidas solicitadas en la Moción de procedimientos para objeciones globales mediante una orden de 14 de noviembre de 2018. *Véase Orden que a) aprueba procedimientos limitados para las objeciones globales, b) no exige cumplir el requisito de la regla 3007(e)(6) del Código de Quiebras, y c) otorga medidas relacionadas* [ECF núm. 4230]; *Moción de procedimientos globales* [ECF núm. 4230-1] (colectivamente, los "Procedimientos originales para las mociones globales").

14. De conformidad con los Procedimientos originales para las mociones globales, el Tribunal ha celebrado vistas con respecto a (59) objeciones globales no sustantivas presentadas por el ELA, COFINA, la ACT y/o la ASR. Tras las vistas del 30 de enero y el 13 de marzo de 2019, el Tribunal declaró con lugar a (19) de tales objeciones globales, como consecuencia de lo cual miles de evidencias de reclamo presentadas contra COFINA quedaron desestimadas y fueron eliminadas del expediente, y cientos de otros reclamos fueron reclasificados para que se presentasen contra otros de los Deudores. El 12 de junio de 2019 y el 24 de julio de 2019 se escucharon cuarenta objeciones globales a reclamos presentados contra el ELA, COFINA, la ACT y/o la ASR, además de una serie de objeciones individuales a reclamaciones contra el ELA, la ASR o COFINA. Sobre la base de las sentencias y órdenes del Tribunal, más de 9,000 reclamos presentados que afirman aproximadamente $ 43 billones en responsabilidad contra el ELA, la ACT, COFINA y la ASR han sido rechazadas y serán eliminadas del registro de reclamaciones en los procedimientos del Título III al momento de la entrada de órdenes finales

15. En aras de continuar resolviendo con eficiencia cualquier prueba de reclamo innecesaria, el 23 de mayo de 2019 los Deudores presentaron una moción modificada sobre los procedimientos a los efectos de que, entre otras cosas, se les permitiese presentar objeciones globales sobre fundamentos sustantivos, se ampliase el número de reclamos que pueden incluirse en una objeción, y se aprobasen otras modalidades de notificación. *Notificación de vista con respecto a una Orden que a) apruebe procedimientos modificados para las objeciones globales b) no exija cumplir los requisitos de la regla 3007(e) c) del Código de Quiebras, c) apruebe*

6

*modalidades adicionales de notificación, y d) otorgue medidas relacionadas* [ECF núm. 7091]. El Tribunal otorgó la medida solicitada del 14 de julio de 2019, mediante la *Orden que a) aprueba procedimientos modificados para las objeciones globales b) no exige cumplir los requisitos de la regla 3007(e)(C) del Código de Quiebras, c) aprueba modalidades adicionales de notificación, y d) otorga medidas relacionadas* [ECF núm. 7440] (la "<u>Orden modificada de procedimientos globales</u>"

16. La Sexagésima Primera Objeción Global se presenta de conformidad con los Procedimientos modificados del Tribunal para las objeciones globales.

## **OBJECIONES A LAS PRUEBAS DE RECLAMO**

17. Los Procedimientos modificados para las objeciones globales permiten que la ACT presente una objeción global contra múltiples pruebas de reclamo acogiéndose a cualquiera de los fundamentos que establece la regla 3007(d)(1)-(7) del Reglamento Federal de Quiebras.

18. La Sexagésima Primera Objeción Global busca desestimar, de conformidad con la regla 3007(d)(1) del Código Federal de Quiebras y los Procedimientos modificados para las objeciones globales, los reclamos por bonos que duplican una o más de las evidencias maestras de reclamos presentadas en el marco de la causa de la ACT promovida según el Título III.

19. En cada reclamo que se enumera en el **Anexo A** del presente (los "<u>Reclamos Duplicados por Bonos</u>"), la demandante afirma que existe responsabilidad por uno o más bonos emitidos por la ACT que duplican una o más de las Evidencias Maestras de Reclamos que, como se explicó anteriormente, BNYM, como agente fiscal de los bonos emitidos conforme a las Resoluciones, y Banco Popular, como fiduciario de los bonos para el puente, presentaron durante la causa de la ACT promovida conforme al Título III. Como resultado, si los Reclamos Duplicados por Bonos no se desestiman, las demandantes podrían recibir injustificadamente el doble del monto de recuperación de la ACT, en detrimento de otras partes interesadas en la causa de la ACT promovida conforme al Título III. Los titulares de los Reclamos Duplicados por

7

Bonos no se verán perjudicados si sus reclamos se desestiman, puesto que las obligaciones asociadas con ellos están incluidas en una o más de las pruebas maestras de reclamos.

20. En apoyo de lo anterior, la ACT se basa en la *Declaración de Jay Herriman en apoyo de la Sexagésima Primera Objeción Global (no sustantiva) de la Autoridad de Carreteras y Transportación de Puerto Rico contra Reclamos Duplicados por Bonos*, de fecha 26 de julio de 2019, adjunta al presente como **Anexo B**.

## NOTIFICACIONES

21. De conformidad con los Procedimientos modificados para las objeciones globales, la ACT ha enviado notificación de su Sexagésima Primera Objeción Global a a) los acreedores individuales incluidos en esta Sexagésima Primera Objeción Global, b) el Síndico en los EE. UU., y c) Lista Maestra de Notificaciones (según se define en el *Noveno procedimiento modificado para la gestión de casos* [ECF núm. 7115-1]), disponible en el sitio web de los Deudores para el caso en https://cases.primeclerk.com/puertorico. Se adjunta como **Anexo C** una copia de la notificación de esta Sexagésima Primera Objeción Global. También se adjuntan traducciones al español de la Sexagésima Primera Objeción Global, y todos los anexos adjuntos se presentan junto con esta objeción y se enviarán copias a las partes. La ACT declara que, habida cuenta de la naturaleza de la reparación solicitada, no es necesario cursar ninguna otra notificación.

## RESERVA DE DERECHOS

22. Esta Sexagésima Primera Objeción Global se limita a las cuestiones aducidas en el presente. En consecuencia, no afecta los derechos de los Deudores de objetar a los Reclamos Duplicados por Bonos o cualquier otro reclamo sobre cualquier base que corresponda. Los Deudores se reservan expresamente el derecho a presentar todas las demás objeciones de naturaleza sustantiva o procesal. Nada de lo contenido en el presente, ni ninguna acción realizada en el marco de la medida solicitada, persigue ninguno de los siguientes objetivos, ni podrá interpretarse a tales efectos: a) admitir la validez de alguno de los reclamos contra los

8

Deudores; b) renunciar al derecho de los Deudores a objetar a cualquier reclamo sobre cualquier base que proceda; c) prometer u obligarse a pagar cualquier reclamo; d) solicitar o autorizar la formalización de ningún acuerdo, contrato o arrendamiento previo a la petición de conformidad con el artículo 365 del Código de Quiebras, o e) renunciar a los derechos que PROMESA, el Código de Quiebras o cualquier otra legislación que sea de aplicación otorgan a los Deudores.

### **NO EXISTEN SOLICITUDES PREVIAS**

23.     Antes de esta Sexagésima Primera Objeción Global, no se ha presentado ninguna solicitud para la medida buscada, ni ante este ni ante ningún otro Tribunal.

EN VISTA DE LO ANTERIOR, la ACT solicita respetuosamente que se dicte una orden, en esencia en la forma de la propuesta de orden que se adjunta al presente como **Anexo D**, que 1) otorgue la medida solicitada en el presente, y 2) otorgue a la ACT cualquier otra medida que considere justa.

Fecha: 26 de julio de 2019
San Juan (Puerto Rico)

Sometido respetuosamente,

[*Firma en versión en inglés*]
Ricardo Burgos Vargas
USDC núm. 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel.: (787) 751-6764
Fax: (787) 763-8260

[*Firma en versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Abogados adjuntos para la Junta de Supervisión y Administración Financiera como representante de la ACT*