**Hearing Date: September 11, 2019, at 9:30AM (Atlantic Time)**
**Response Deadline: August 28, 2019 at 4:00PM (Atlantic Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

### SIXTY-SECOND OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO GDB BONDHOLDER CLAIMS

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this sixty-second omnibus objection (the "Sixty-Second Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which purports to assert liability based on an ownership interest in bonds issued by the Government

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, COFINA, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Development Bank of Puerto Rico ("GDB"), and in support of the Sixty-Second Omnibus Objection, respectfully represents as follows:

<div align="center">**JURISDICTION**</div>

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

<div align="center">**BACKGROUND**</div>

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion. The court then extended these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time) upon entering the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders")..

---

[3] Unless otherwise state herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

**B.      Operations and Bond Debt of the Commonwealth**

5.      The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution")
became effective in 1952.  The P.R. Constitution created the Commonwealth as the central
government of Puerto Rico, "republican in form" and divided into three branches: legislative,
judicial and executive.  *See* P.R. Const., Art. I, §§ 1, 2.

6.      The P.R. Constitution authorizes the Commonwealth to issue debt, subject to
various limitations, including on the ability of the Commonwealth to pledge its revenues.  *See* P.R.
Const. Art. VI § 2.  In 1961, Section 2 of Article VI of the P.R. Constitution was amended to limit
the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth
would have to pay relative to its historical revenues.  Since 1961, the Commonwealth has issued
billions of dollars of general obligation bonds purportedly backed by its full faith, credit, and taxing
power.

**C.      Proofs of Claim Filed Against the Commonwealth**

7.      To date, approximately 169,591 proofs of claim have been filed against the Debtors
and logged by Prime Clerk, LLC.[4]  Such proofs of claim total approximately $43.6 trillion in
asserted claims against the Debtors.

8.      Of the proofs of claim filed, approximately 107,375 have been filed in relation to,
or reclassified to be asserted against, the Commonwealth.  The Commonwealth-related proofs of
claim total approximately $33.2 trillion in asserted liabilities plus unliquidated amounts.  In
accordance with the terms of the Bar Date Orders, many of these claims need not have been filed

---

[4]  This total count of recorded entries on the claims registry in the Title III cases includes over 8,000 claims that have
been marked as docketed in error and removed.

at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, or being duplicative of other proofs of claim.

**D.      Omnibus Objection Procedures and Objections to Commonwealth Claims**

9.      In order to efficiently resolve as many of the unnecessary proofs of claim as possible, the Debtors, on October 16, 2018, filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The relief requested therein was non-substantive in nature and was designed to expedite and streamline the claims reconciliation process by, among other things, enlarging the number of claims permitted to be within the scope of an omnibus objection.  After the proposed order was revised to incorporate certain comments received, including those from the Court at a hearing held on November 7, 2018, the Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").

10.      Pursuant to the Initial Omnibus Objection Procedures, the Court has heard fifty-nine non-substantive omnibus objections filed by the Commonwealth, COFINA, HTA, and/or ERS.  Following hearings held on January 30, 2019, and March 13, 2019, the Court sustained nineteen of these omnibus objections, in addition to certain individual objections to claims filed against COFINA, resulting in thousands of proofs of claim filed against COFINA being disallowed and expunged, and hundreds of other claims being reclassified to be asserted against another of the Debtors.  Forty omnibus objections to claims filed against the Commonwealth, HTA, ERS,

and/or COFINA, in addition to a number of individual objections to claims filed against the
Commonwealth, ERS, or COFINA, were heard on June 12, 2019, and July 24, 2019. Based upon
rulings and orders of the Court, over 9,000 claims asserting approximately $43 trillion in liability
against the Commonwealth, HTA, COFINA, and ERS have been disallowed and will be expunged
from the claims registry in the Title III proceedings upon entry of final orders.

11.     In the continued interest of resolving any unnecessary proofs of claims in an
efficient manner, the Debtors, on May 23, 2019, filed an amended procedures motion seeking,
among other things, to allow the Debtors to file omnibus objections on substantive bases, to expand
the number of claims that may be included on an objection, and to approve additional forms of
notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection
Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional
Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  The Court granted the
requested relief by the June 14, 2019 *Order (A) Approving Amended Omnibus Objection
Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional
Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus
Objection Procedures").

12.     This Sixty Second Omnibus Objection is filed in accordance with the Court's
Amended Omnibus Objection Procedures.

**E.      The GDB Title VI Proceedings and Qualifying Modification**

13.     GDB is a public corporation and governmental instrumentality of the
Commonwealth, which was created by the Legislative Assembly of in 1948 to aid the government
of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively
carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017,

the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

14.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

15.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

16.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

## OBJECTIONS TO PROOFS OF CLAIM

17.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

18.     The Sixty-Second Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, claims that seek recovery for amounts for which the Commonwealth is not liable because the claims were released and extinguished pursuant to the transactions consummated through the Qualifying Modification for GDB.

19.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  Each of the claims listed on **Exhibit A** hereto (collectively the "GDB Bondholder Claims") purport to assert liability based on an alleged ownership of GDB Bonds.  Some of the GDB Bondholder Claims set forth Constitutional arguments as to why the claimant alleges the Commonwealth is liable for bonds issued by GDB, while other GDB Bondholder Claims provided no explanation for the basis of the claim beyond attaching a bond statement showing ownership of bonds issued by GDB.  All of the GDB Bondholder Claims are based on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance of new securities in exchange for the

cancellation of the GDB Bonds and the extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer liable for these claims.

20.     Each of the GDB Bondholder Claims has been released pursuant to the approval and consummation of the Qualifying Modification.  As noted above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GBD Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to GDB.  GDB is a public corporation and instrumentality of the Commonwealth.  Accordingly, the Commonwealth is an affiliate of GDB within the scope of the release pursuant to the Qualifying Modification.  Because all of the GDB Bondholder Claims relate to GDB Bonds, the GDB Bondholder Claims were released upon the consummation of the Qualifying Modification on November 29, 2018.  As a result, the GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1) and should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

21.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Sixty-Second Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to GDB Bondholder Claims*, dated July 26, 2019, attached hereto as **Exhibit B**.

## NOTICE

22.     In accordance with the Amended Omnibus Objection Procedures, the Commonwealth is providing notice of this Sixty-Second Omnibus Objection to (a) the individual creditors subject to this Sixty-Second Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Ninth Amended Case Management Procedures* [ECF No. 7115-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this Sixty Second Omnibus Objection is attached hereto as **Exhibit C**.  Spanish

translations of the Sixty Second Omnibus Objection and all of the exhibits attached hereto are being filed and served with this objection.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

### RESERVATION OF RIGHTS

23.      This Sixty-Second Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to the GDB Bondholder Claims or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

### NO PRIOR REQUEST

24.      No prior request for the relief sought in this Sixty-Second Omnibus Objection has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: July 26, 2019
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Ricardo Burgos Vargas*
Ricardo Burgos Vargas
USDC No. 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel: (787) 751-6764
Fax: (787) 763-8260

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth*

Fecha de la vista: **11 de septiembre de 2019 a las 9.30 a.m. (AST)**
Fecha límite para la contestación: **28 de agosto de 2019 a las 4.00 p.m. (AST)**

<div style="border:1px solid black">

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA SU(S) RECLAMO(S)**

</div>

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

En el asunto de:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,

    como representante de

EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, *y otros*

               Deudores[1]

PROMESA
Título III

Núm. 17 BK 3283-LTS

(Administrada conjuntamente)

**Esta presentación se relaciona con el ELA.**

## SEXAGÉSIMA SEGUNDA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO CONTRA LOS RECLAMOS DE LOS BONISTAS BGF

El Estado libre asociado de Puerto Rico (el "ELA") mediante la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), en calidad de representante del ELA de conformidad con el artículo 315 b) de la *Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] presenta esta

---

[1] Los Deudores en estas causas promovidas conforme al Título III, el número de causa para cada Deudor y los últimos cuatro (4) dígitos del número federal de contribuyente de cada uno de ellos, según corresponda, son los siguientes: i) el Estado Libre Asociado de Puerto Rico (el "ELA"), (procedimiento de quiebra núm. 7 BK 3283-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3481); ii) la Corporación del Fondo de Interés Apremiante ("COFINA") (procedimiento de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos del número federal de contribuyente: 8474); ii) la Autoridad de Carreteras y Transportación ("ACT") (procedimiento de quiebra núm. 17 BK 3567-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3808); iv) la Administración de Sistemas de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("ASR") (procedimiento de quiebra núm. 17 BK 3566-LTS) (últimos cuatro dígitos del número federal de contribuyente: 9686); y v) la Autoridad de Energía Eléctrica de Puerto Rico ("AEEPR") , y junto con el ELA, COFINA, la ACT y la ASR, los "Deudores" (procedimiento de quiebra núm. 17 BK 4780-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3747 ) (Debido a limitaciones informáticas, a los casos promovidos conforme al Título III se les asigna un número como procedimientos de quiebra).

[2] La ley PROMESA ha sido codificada en los artículos 2101-2241 del Título 48 del Código de los Estados Unidos (USC).

sexagésima segunda  objeción (la "<u>Sexagésima Segunda  Objeción Global</u>") a las pruebas de reclamo que se enumeran en el **<u>Anexo A</u>** al presente, cada una de las cuales busca crear una obligación hacia los titulares de los bonos emitidos por el Banco Gubernamental de Fomento de Puerto Rico ("<u>GBF</u>"), y en apoyo de dicha Sexagésima Segunda Objeción Global respetuosamente aduce lo siguiente:

<center><u>**JURISDICCIÓN**</u></center>

1.      De conformidad con el artículo 306(a) de PROMESA, el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción en razón de la materia para entender en esta causa y en la reparación solicitada.

2.      De conformidad con el artículo 307(a) de PROMESA, es apropiado constituir la competencia  en este distrito.

<center><u>**ANTECEDENTES:**</u></center>

**A. Las órdenes de fecha final**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración al amparo de los artículos 104 j) y 206 de PROMESA y presentó una petición voluntaria de reparación para el ELA de conformidad con el artículo 304 a) de PROMESA, de esa forma dando inicio a una causa al amparo del Título III de dicha ley (el "<u>caso del ELA conforme al Título III</u>").

4.      El 16 de enero de 2018, los Deudores presentaron su *Moción para una orden que a) establezca plazos y procedimientos para presentar evidencias de reclamo y b) apruebe la forma y la manera de notificarlas* [ECF núm. 2255][3] (la "<u>moción de fecha final</u>"). De conformidad con la *Orden que a) establece plazos y procedimientos para presentar evidencias*

---

[3]A menos que se indique otra cosa en el presente, las citas a ECF se refieren a documentos presentados en el marco del procedimiento de quiebra núm. 17 BK 3283-LTS.

<center>2</center>

*de reclamo y b) aprueba la forma y la manera de notificarlas* [ECF núm. 2521] (la "Moción inicial de fecha final"), el Tribunal declaró con lugar la medida solicitada en la Moción de fecha final. Posteriormente el Tribunal prorrogó dichos plazos hasta el 29 de junio de 2018 a las 4.00 p.m. (AST) a través de la Orden que a) prorroga el plazo para presentar las evidencias de reclamo y b) aprueba la forma y la forma de notificarlas [ECF núm. 3160] (junto con Moción inicial de fecha final, las "Mociones de fecha final").

**B.       Operaciones y bonos de deuda del ELA**

5.        La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución del ELA") entró en vigor en 1952. de P.R.. La Constitución de Puerto Rico estableció al ELA como el gobierno central de Puerto Rico, "de forma republicana", y lo dividió en tres poderes: legislativo, judicial y ejecutivo. *Véase* Const. de P.R., Art. I, §§ 1, 2.

6.        Con sujeción a varias limitaciones, la Constitución faculta al ELA a emitir deuda y a constituir garantías sobre sus ingresos. *Véase* Const. P. R. Art. VI § 2. En 1961, se enmendó la sección 2 del artículo VI de la Constitución de Puerto Rico para limitar las facultades del ELA de solicitar empréstitos en función de la cuantía del servicio de la deuda que el ELA tendría que pagar en relación a sus ingresos históricos relativos. Desde 1961, el ELA ha emitido miles de millones de dólares en bonos de obligaciones generales, supuestamente respaldados por su buena fe, su crédito y su poder de imponer contribuciones.

**C.       Evidencias de reclamo presentadas contra el ELA**

7.        A la fecha, se han presentado aproximadamente (169,591) evidencia de reclamo contra los Deudores, que han sido registrada por Prime Clerk, LLC.[4] Dichas evidencias de reclamo totalizan unos $43.6 billones en reclamos contra los Deudores.

---

[4] Tras haberse determinado que se presentaron erróneamente, más de 8.000 estos reclamos han sido dados de baja del registro.

8.      Unas (107,375) de esas pruebas de reclamo han sido presentadas con relación al ELA, o reclasificadas como presentadas contra el ELA. Las evidencias de reclamo relacionadas con el ELA totalizan unos $33.2 billones en obligaciones alegadas más montos no liquidados. De conformidad con las Mociones de fecha final, o bien no habría sido necesario presentar muchos de estos reclamos, o bien los reclamos presentan algún otro tipo de error, por ejemplo, haber sido modificados posteriormente, no aducir ningún reclamo por el que pueda atribuirse responsabilidad a los Deudores, o haber duplicado otras evidencias de reclamo.

**D.      Procedimientos para las objeciones globales y objeciones a los reclamos contra el ELA**

9.      A los efectos de resolver con eficacia la mayor cantidad posible de evidencias de reclamo innecesarias, el 16 de octubre de 2018 los Deudores presentaron ante este Tribunal su *Moción para una orden que a) apruebe procedimientos limitados para las objeciones globales, b) no exija cumplir el requisito de la regla 3007(e)(6) del Código de Quiebras, y c) otorgue medidas relacionadas* [ECF núm. 4052] la "Moción de procedimientos globales"] Las medidas solicitadas en dicho documento eran de naturaleza no sustantiva y tenían por objeto acelerar y racionalizar el proceso de conciliación de reclamos mediante, entre otras cosas, aumentar el número de reclamos pudieran quedar incluidos dentro del ámbito de una objeción global. Tras revisar la orden propuesta para incorporar ciertos comentarios que se recibieron —incluidos los que el Tribunal realizó en una vista del 7 de noviembre de 2018—, el Tribunal otorgó las medidas solicitadas en la Moción de procedimientos para objeciones globales mediante una orden de 14 de noviembre de 2018. *Véase Orden que a) aprueba procedimientos limitados para la objeciones globales, b) no exige cumplir el requisito de la regla 3007(e)(6) del Código de Quiebras, y c) otorga medidas relacionadas* [ECF núm. 4230]; *Moción de procedimientos*

*globales* [ECF nro 4230-1] (colectivamente, los "Procedimientos originales para las mociones globales."

10.     De conformidad con los Procedimientos originales para las mociones globales, el Tribunal ha celebrado vistas con respecto a (59) objeciones globales no sustantivas presentadas por el ELA, COFINA, la ACT y/o la ASR. Tras las vistas del 30 de enero y el 13 de marzo de 2019, el Tribunal declaró con lugar a (19) de tales objeciones globales, como consecuencia de lo cual miles de evidencias de reclamo presentadas contra COFINA quedaron desestimadas y fueron eliminadas del expediente, y cientos de otros reclamos fueron reclasificados para que se presentasen contra otros de los Deudores.  El 12 de junio de 2019 y el 24 de julio de 2019 se escucharon cuarenta objeciones globales a reclamos presentados contra el ELA, COFINA, la ACT y/o la ASR, además de una serie de objeciones individuales a reclamaciones contra el ELA, la ASR o COFINA.  Sobre la base de las sentencias y órdenes del Tribunal, más de 9,000 reclamos presentados que afirman aproximadamente $ 43 billones en responsabilidad contra el ELA, la ACT, COFINA y la ASR han sido rechazadas y serán eliminadas del registro de reclamaciones en los procedimientos del Título III al momento de la entrada de órdenes finales

11.     En aras de continuar resolviendo con eficiencia cualquier prueba de reclamo innecesaria, el 23 de mayo de 2019 los Deudores presentaron una moción modificada sobre los procedimientos a los efectos de que, entre otras cosas, se les permitiese presentar objeciones globales sobre fundamentos sustantivos, se ampliase el número de reclamos que pueden incluirse en una objeción, y se aprobasen otras modalidades de notificación. *Notificación de vista con respecto a una orden que a) apruebe procedimientos modificados para las objeciones globales b) no exija cumplir los requisitos de la regla 3007(e)(C) del Código de Quiebras, c) apruebe modalidades adicionales de notificación, y d) otorgue medidas relacionadas* [ECF núm. 7091].

El Tribunal otorgó la medida solicitada del 14 de julio de 2019, mediante la *Orden que a) aprueba procedimientos modificados para las objeciones globales b) no exige cumplir los requisitos de la regla 3007(e)(C) del Código de Quiebras, c) aprueba modalidades adicionales de notificación, y d) otorga medidas relacionadas* [ECF núm. 7440] (la "Orden modificada de procedimientos globales").

12.     La Sexagésima Segunda Objeción Global se presenta de conformidad con los Procedimientos modificados del Tribunal para las objeciones globales.

**E.     El procedimiento del BGF conforme al Título VI y modificación admisible**

13.     El BGF es una empresa pública y una dependencia del Gobierno creada en 1948 por la Asamblea Legislativa cuyo cometido es ayudar al Gobierno del ELA (el "Gobierno") a cumplir sus obligaciones fiscales y su responsabilidad de impulsar el desarrollo de la economía de Puerto Rico. El 27 de abril de 2017, la Junta de Supervisión certificó por unanimidad el Plan Fiscal de febrero de 2017 del BGF, que tras determinar que la situación financiera del BGF no permitía definir ninguna vía clara para la viabilidad a largo plazo del banco, planteaba una reducción progresiva de las operaciones del Banco.

14.     El 12 de julio de 2017, la Junta de Supervisión emitió una resolución al amparo del artículo 601 e) de PROMESA para autorizar al BGF a acogerse a Título VI de PROMESA. El 10 de agosto de 2018, el GBF presentó una solicitud para que el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico aprobase una modificación admisible (la "Modificación Admisible") conforme a lo dispuesto en el artículo 601 m) 1) D) de PROMESA.

15.     El 7 de noviembre de 2018, el Tribunal aprobó la modificación admisible de conformidad con el artículo 601 m) 1) D) de PROMESA. Véase ECF núm. 270 en Banco Gubernamental de Fomento para Puerto Rico, caso núm. 18-1561 (D.P.R. 7 de noviembre de

2018). En otras cosas, la Modificación Admisible dispone i) la emisión de nuevos bonos por parte de la recientemente creada Autoridad de Recuperación de la Deuda del BGF a cambio de la cancelación, entre otras cosas, de ciertos bonos de participación y reclamos garantizados por bonos (colectivamente, los "Bonos BGF"); ii) la extinción de la garantía del ELA sobre los bonos garantizados, una vez estos fueran canjeados y revocados; y iii) la renuncia de los Bonistas BGF a los reclamos que tuvieran contra el BGF y sus afiliados con relación a, entre otras cosas, cualquier inversión que tuvieran en el BGF o la compra, venta o transferencia de cualquier título valor o participación de BGF, y cualquier acción u omisión con respecto a cualquier endeudamiento o préstamo otorgado al BGF (incluido cualquier pagaré emitido por BGF o depósito que tuviese en su poder) o por el BGF. *Declaración de solicitud*, en 57-60, ECF núm. 1-15, en Banco Gubernamental de Fomento de Puerto Rico, procedimiento núm. 18-1561 (D.P.R. 10 de agosto de 2018).

16.     El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Admisible para el BGF. Comunicado de prensa, *Gobierno de Puerto Rico anuncia la consumación de la Modificación Admisible del BGF*, gobernador de Puerto Rico (29 de noviembre de 2018), *disponible en* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

## OBJECIONES A LAS EVIDENCIA DE RECLAMO

17.     Los Procedimientos modificados para las objeciones globales permiten que el ELA presente una objeción global contra múltiples evidencias de reclamo acogiéndose a cualquiera de los fundamentos que establece la regla 3007(d)(1)-(7) del Reglamento Federal de Quiebras y a otros fundamentos sustantivos que se establecen en dichos procedimientos modificados.

18.     La Sexagésima Segunda Objeción Global tiene por objeto desestimar, de conformidad con los Procedimientos modificados para objeciones globales, reclamos que buscan recuperar montos por los cuales el ELA no es responsable debido a que los reclamos quedaron eximidos y extinguidos de conformidad con las transacciones consumadas a través de la Modificación Admisible del BGF.

19.     Los reclamos que son "inexigibles contra el deudor y la propiedad del deudor por motivo de cualquier acuerdo con la legislación aplicable" deben ser desestimados. Artículo 502(b)(1) del Título 11 del Código de los Estados Unidos. Todos los reclamos que se enumeran en el anexo A al presente (colectivamente, los "Reclamos de los Bonistas BGF") buscan aducir la existencia de responsabilidades basadas en la presunta condición de titular de Bonos BGF.  En algunos de los Reclamos de los Bonistas BGF se aducen argumentos constitucionales en cuanto al motivo por el que el demandante alega que el ELA es responsable por los bonos emitidos por el BGF, mientras que otros no brindaron más explicación sobre sus fundamentos que adjuntar una constancia que muestra que el demandante es titular de bonos emitidos por el BGF. Todos los Reclamos de los Bonistas BGF se basan en el hecho de que son titulares de Bonos BGF que estaban sujetos a la Modificación Admisible, que establecía la emisión de nuevos títulos valores a cambio de cancelar los bonos BGF y extinguir las garantías otorgadas por el ELA a ciertos Bonos BGF, por lo que el ELA ya no tiene responsabilidad con respecto a tales reclamos.

20.     Cada uno de los Reclamos de los Bonistas BGF ha quedado eximido en virtud de la aprobación y la consumación de la Modificación Admisible. Como ya se mencionó, la Modificación Admisible establece, entre otras cosas, que los titulares de los Bonos BGF eximirán al BGF y a sus afiliados de los reclamos relacionados con los Bonos BGF y cualquier acción u omisión del BGF y sus afiliados con respeto a cualquier endeudamiento del BGF o

préstamo que se le haya otorgado. El BGF es una empresa pública y una dependencia del ELA. En consecuencia, el ELA es un afiliado del BGF y está abarcado en la exención que establece la Modificación Admisible. Por cuanto todos los Reclamos de los Bonistas BGF se relacionan con Bonos BGF, dichos reclamos quedaron eximidos al momento de la consumación de la Modificación Admisible, el 28 de noviembre de 2018. En consecuencia, los Reclamos de los Bonistas BGF no son exigibles contra el ELA ni sus bienes de conformidad con el artículo 502(b)(1) del Código de Quiebras, y deberían desestimarse porque buscan recuperar montos por los cuales el ELA no es responsable.

21.     En apoyo de lo anterior, el ELA se basa en la *Declaración de Jay Herriman en apoyo de la Sexagésima Segunda Objeción Global (sustantiva) del Estado Libre Asociado de Puerto Rico contra los Reclamos de los Bonistas BGF*, de fecha 26 de julio de 2019, adjunta al presente como **Anexo B**.

## NOTIFICACIONES

22.     De conformidad con los Procedimientos modificados para las objeciones globales, el ELA ha enviado notificación de su Sexagésima Segunda Objeción Global a a) los acreedores individuales abarcados en esta Sexagésima Segunda Objeción Global, b) el Síndico en los EE. UU., y c) Lista Maestra de Notificaciones (según se define en el *Noveno procedimiento modificado para la gestión de casos* [ECF núm. 7115-1]), disponible en el sitio web de los Deudores para el caso en https://cases.primeclerk.com/puertorico. Se adjunta como **Anexo C** una copia de la notificación de esta Sexagésima Segunda Objeción Global. También se adjuntan traducciones al español de la Sexagésima Segunda Objeción Global, y todos los anexos adjuntos se presentan junto con esta objeción y se enviarán copias a las partes. El ELA declara que, habida cuenta de la naturaleza de la reparación solicitada, no es necesario cursar ninguna otra notificación.

## **RESERVA DE DERECHOS**

23.     Esta Sexagésima Segunda Objeción Global se limita a las cuestiones aducidas en el presente. En consecuencia, no afecta los derechos de los Deudores de objetar a los Reclamos de los Bonistas BGF o a cualquier otro reclamo sobre cualquier base que corresponda. Los Deudores se reservan expresamente el derecho a presentar todas las demás objeciones de naturaleza sustantiva o procesal. Nada de lo contenido en el presente, ni ninguna acción realizada en el marco de la medida solicitada, persigue ninguno de los siguientes objetivos, ni podrá interpretarse a tales efectos: a) admitir la validez de alguno de los reclamos contra los Deudores; b) renunciar al derecho de los Deudores a objetar a cualquier reclamo sobre cualquier base que proceda; c) prometer u obligarse a pagar cualquier reclamo; d) solicitar o autorizar la formalización de ningún acuerdo, contrato o arrendamiento previo a la petición de conformidad con el artículo 365 del Código de Quiebras, o e) renunciar a los derechos que PROMESA, el Código de Quiebras o cualquier otra legislación que sea de aplicación otorgan a los Deudores.

## **NO EXISTEN SOLICITUDES PREVIAS**

24.     Antes de esta Sexagésima Segunda Objeción Global, no se ha presentado ninguna solicitud para la medida buscada, ni ante este ni ante ningún otro Tribunal.

[*El resto de la página se deja en blanco intencionalmente*]

10

EN VISTA DE LO ANTERIOR, el ELA solicita respetuosamente que se dicte una orden, en esencia en la forma de la propuesta de orden que se adjunta al presente como **Anexo D**, que 1) otorgue la medida solicitada en el presente, y 2) otorgue al ELA cualquier otra medida que considere justa.

Fecha: 26 de julio de 2019
      San Juan (Puerto Rico)

Sometido respetuosamente,

[*Firma en versión en inglés*]
Ricardo Burgos Vargas
USDC núm. 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel.: (787) 751-6764
Fax: (787) 763-8260

[*Firma en versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Abogados para la Junta de
Supervisión y Administración
Financiera como representante del
Estado Libre Asociado de Perto Rico*