Hearing Date: September 11, 2019, at 9:30AM (Atlantic Time)
Response Deadline: August 28, 2019 at 4:00PM (Atlantic Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

### SIXTY-FIFTH OMNIBUS OBJECTION
### (SUBSTANTIVE) OF THE COMMONWEALTH OF
### PUERTO RICO TO PROOFS OF CLAIM NOS. 695, 5290, 33087, 128006

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of

the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and*

*Economic Stability Act* ("PROMESA"),[2] files this sixty-fifth omnibus objection (the "Sixty-Fifth

Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which purports to

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, COFINA, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

assert liability in full or in part based on an ownership interest in notes issued by the Puerto Rico
Conservation Trust Fund.  Additionally, Proofs of Claim Nos. 695 and 5290 both (a) purport to
assert liability based in part on an ownership interest in bonds issued by the Puerto Rico Sales Tax
Financing Corporation ("COFINA"), and (b) are partially duplicative of the master proofs of claim
filed against the Commonwealth.   In support of the Sixty-Fifth Omnibus Objection, the
Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter
jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section
306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant
to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the
Commonwealth, pursuant to PROMESA section 304(a), commencing a case under Title III thereof
(the "Commonwealth Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing
Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of
Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing
Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of
Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief

---

[3] Unless otherwise stated herein, all ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

requested in the Bar Date Motion. The court then extended these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time) upon entering the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders")..

**B.      Operations and Bond Debt of the Commonwealth**

5.      The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution") became effective in 1952. The P.R. Constitution created the Commonwealth as the central government of Puerto Rico, "republican in form" and divided into three branches: legislative, judicial and executive. *See* P.R. Const., Art. I, §§ 1, 2.

6.      The P.R. Constitution authorizes the Commonwealth to issue debt, subject to various limitations, including on the ability of the Commonwealth to pledge its revenues. *See* P.R. Const. Art. VI § 2. In 1961, Section 2 of Article VI of the P.R. Constitution was amended to limit the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth would have to pay relative to its historical revenues. Since 1961, the Commonwealth has issued billions of dollars of general obligation bonds purportedly backed by its full faith, credit, and taxing power.

**C.      Proofs of Claim Filed Against the Commonwealth**

7.      To date, approximately 169,591 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.[4] Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors.

---

[4] This total count of recorded entries on the claims registry in the Title III cases includes over 8,000 claims that have been marked as docketed in error and removed.

8.      Of the proofs of claim filed, approximately 107,375 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  The Commonwealth-related proofs of claim total approximately $33.2 trillion in asserted liabilities plus unliquidated amounts.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, or being duplicative of other proofs of claim.

**D.      Omnibus Objection Procedures and Objections to Commonwealth Claims**

9.      In order to efficiently resolve as many of the unnecessary proofs of claim as possible, the Debtors, on October 16, 2018, filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The relief requested therein was non-substantive in nature and was designed to expedite and streamline the claims reconciliation process by, among other things, enlarging the number of claims permitted to be within the scope of an omnibus objection.  After the proposed order was revised to incorporate certain comments received, including those from the Court at a hearing held on November 7, 2018, the Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").

10.      Pursuant to the Initial Omnibus Objection Procedures, the Court has heard fifty-nine non-substantive omnibus objections filed by the Commonwealth, COFINA, HTA, and/or ERS. Following hearings held on January 30, 2019, and March 13, 2019, the Court sustained

nineteen of these omnibus objections, in addition to certain individual objections to claims filed against COFINA, resulting in thousands of proofs of claim filed against COFINA being disallowed and expunged, and hundreds of other claims being reclassified to be asserted against another of the Debtors.  Forty omnibus objections to claims filed against the Commonwealth, HTA, ERS, and/or COFINA, in addition to a number of individual objections to claims filed against the Commonwealth, ERS, or COFINA, were heard on June 12, 2019, and July 24, 2019. Based upon rulings and orders of the Court, over 9,000 claims asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

11.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, the Debtors, on May 23, 2019, filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  The Court granted the requested relief by the June 14, 2019 *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

12.     This Sixty-Fifth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

13.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.  Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

14.     The Sixty-Fifth Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, claims that seek recovery in full or in part for amounts for which the Commonwealth is not liable because the claims are based on notes that were not issued by the Commonwealth and for which the Commonwealth is not an obligor.  Additionally, with regard to Proofs of Claim Nos. 695 and 5290, the Commonwealth is not liable for the part of the claims that purports to assert liability based on bonds issued by COFINA because such claims were (1) compromised and settled pursuant to the Settlement Order, and (2) released and discharged in accordance with the Plan and Amended Confirmation Order.  Further, pursuant to Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, the Commonwealth seeks to disallow yet another part of Proofs of Claim Nos. 695

and 5290 because, to the extent the claims are based on bonds issued by the Employees Retirement System of the Government of Puerto Rico ("ERS") and the Puerto Rico Sewer and Aqueduct Authority ("PRASA"), such claims are duplicates of master proofs of claims filed against the Commonwealth by the fiscal agent on behalf of the holders of the bonds issued by ERS or PRASA.

### A. No Liability for Notes Issued By the Puerto Rico Conservation Trust Fund (Proofs of Claim Nos. 695, 5290, 33087, 128006)

15.     Each of the claims identified on Exhibit A hereto (collectively, the Claims") purports to assert liability on the basis of notes issued by the Puerto Rico Conservation Trust Fund (the "Conservation Notes").  Proofs of Claim Nos. 33087 and 128006 were both filed by Mr. Jaime Robles Bidot (Proof of Claim. No. 128006 also lists Raquel Rodriquez as a claimant), and both claims purport to assert liability against the Commonwealth solely on the basis of an alleged ownership interest in Conservation Notes.  Proofs of Claim Nos. 695 and 5290 were both filed by Manuel B. Martinez Giraud, and purport to assert liability based on an alleged ownership interest in a number of different notes and bonds, including Conservation Notes.[5]

16.     While all of the Claims attached supporting documentation showing holdings related to Conservation Notes, none of the Claims provided any explanation as to why the Commonwealth should be held liable for these amounts.  The Claims provided no evidence that the Commonwealth issued the Conservation Notes, guaranteed the Conservation Notes, or for any other reason is an obligor to the Conservation Notes.  Nor can they.  As set forth in the May 9, 2014 report from Moody's Investors Services attached hereto as **Exhibit B** ("Moody's Report"), the Puerto Rico Conservation Trust Fund was a conduit issuer of notes; Doral Financial ("Doral")

---

[5]  While the proofs of claim themselves lists different asserted amounts, the supporting documentation for Proofs of Claim Nos. 695 and 5290 lists the same CUSIPs as the basis for the claims.  To the extent Proofs of Claim Nos. 695 and 5290 are asserting liability on behalf of the same claimant and on the basis of an alleged ownership interest in the same bonds and notes, one of these claims should be disallowed, pursuant to Federal Rule of Bankruptcy Procedure 3007(d)(1), for the additional reason that the claims are duplicative of each other.

was the notes' underlying obligor.  The Puerto Rico Conservation Trust Fund issued notes to purchase medium term notes issued by Doral, as a form of Puerto Rico tax-exempt financing for Doral.  Moody's Report, at 1.  Accordingly, Proofs of Claim. Nos. 33087 and 128008 should be disallowed in their entirety, and Proofs of Claim Nos. 695 and 5290 should be disallowed in part, because they purport to assert liability on the basis of notes for which the Commonwealth is not liable.

### B.  No Liability for COFINA Bondholder Claims (Proofs of Claim Nos. 695 and 5290)

17.     Proofs of Claim Nos. 695 and 5290 also purport to assert claims based on an alleged ownership interest in bonds issued by COFINA, a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth.

18.     On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "COFINA Title III Case").  The Oversight Board filed that certain *Eighth Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9, 2019.

19.     On February 4, 2019, the Court confirmed the Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment Confirming the Eighth Amended Title III Plan of Adjustment of Puerto Rico Sales*

*Tax Financing Corporation* [ECF No. 5048]. On the same day, the Court approved the compromise and settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "Settlement Order"). On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Eighth Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order"). The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming the Eighth Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

20.     The Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released. Additionally, pursuant to the Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018 and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute. Furthermore, pursuant to Paragraph 29(f) of the Amended Confirmation Order, claims, such as these, that arise from or relate to the relationship of the

Commonwealth and COFINA were released.  Amended Confirmation Order, ¶ 29(f).[6]  For all these reasons, to the extent Proofs of Claim Nos. 695 and 5290 purport to assert liability on the basis of COFINA bonds, such claims against the Commonwealth should be disallowed because the claims have been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement Agreement, Amended Confirmation Order, and Plan.

### C.  Duplicate Bond Claims (Proofs of Claim Nos. 695 and 5290)

21.     Proofs of Claim Nos. 695 and 5290, in part, purport to assert liability as well on the basis of an alleged ownership interest in bonds issued by ERS and PRASA.  Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).

22.     ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.  Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[7]  Bank of New York Mellon

---

[6] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

[7] On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof.  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground

("BNYM") serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS Master Claim").[8]

23.    PRASA issued certain revenue bonds (the "PRASA Bonds"), under the Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for the PRASA Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 22620 (together with the ERS Master Claim, the "Master Claims").

24.    To the extent Proofs of Claim Nos. 695 and 5290 purport to assert liability against the Commonwealth associated with one or more bonds issued by ERS or PRASA, such claims are duplicative of the Master Claims filed in the Commonwealth Title III Case.  Any failure to disallow these portions of the claims will result in the claimant, Mr. Martinez Giraud, potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case.  Mr. Martinez Giraud will not be prejudiced by the

---

that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

[8]    On May 22, 2019, the Commonwealth filed an objection to the ERS Master Claim.  *See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775)* [ECF No. 7075].  For the avoidance of doubt, this Sixty-Fifth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

disallowance of this portion of his claims because the associated liabilities are subsumed within the Master Claims.

25.     In support of the foregoing, the Commonwealth relies on the May 9, 2014 report by Moody's Investors Services, entitled "*Moody's downgrades Puerto Rico Conservation Trust Fund's Secured Notes to C from Caa3*," a copy of which is attached hereto as **Exhibit B**, and the *Declaration of Jay Herriman in Support of the Sixty-Fifth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Proofs of Claim Nos. 695, 5290, 33087, 128006*, dated July 26, 2019, attached hereto as **Exhibit C**.

## NOTICE

26.     In accordance with the Amended Omnibus Objection Procedures, the Commonwealth is providing notice of this Sixty-Fifth Omnibus Objection to (a) the individual creditors subject to this Sixty-Fifth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Ninth Amended Case Management Procedures* [ECF No. 7115-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this Sixty Eighth Omnibus Objection is attached hereto as **Exhibit D**.  Spanish translations are being filed and served with this objection of the Sixty Eighth Omnibus Objection, schedule of claims subject thereto, supporting declaration of Jay Herriman, notice, and proposed order, each of which is attached hereto.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

27.     This Sixty-Fifth Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to the Claims or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or

procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

28.     No prior request for the relief sought in this Sixty-Fifth Omnibus Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit E**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: July 26, 2019
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
as representative for the
Commonwealth*

**Fecha de la vista: 11 de septiembre de 2019, a las 09.30 a.m. (AST)**
**Fecha límite para responder: 28 de agosto de 2019, a las 04.00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMO(S).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**PARA EL DISTRITO DE PUERTO RICO**

*In re*:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN
FINANCIERA PARA PUERTO RICO,

    como representante de

ESTADO LIBRE ASOCIADO DE PUERTO RICO y
otros,

                            Deudores.[1]

PROMESA,
título III

Núm. 17 BK 3283-LTS

(Administración conjunta)

**El presente escrito guarda relación con el ELA.**

---

**SEXAGÉSIAMA QUINTA OBJECIÓN GLOBAL**
**(SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A LAS**
**EVIDENCIAS DE RECLAMOS NÚMS. 695, 5290, 33087 y 128006**

El Estado Libre Asociado de Puerto Rico (el "ELA"), a través de la Junta de Supervisión

y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del

ELA conforme al artículo 315(b) de la *Ley para la Supervisión, Administración y Estabilidad*

*Económica de Puerto Rico* ("PROMESA"),[2] radica la presente sexagésima quinta objeción global

---

[1] Los Deudores en el marco de los presentes Procedimientos radicados conforme al título III, junto con el respectivo número de procedimiento radicado conforme al título III y los últimos cuatro (4) dígitos del número federal de contribuyente de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (núm. de procedimiento de quiebra 17 BK 3283-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (núm. de procedimiento de quiebra 17 BK 3284-LTS) (últimos cuatro dígitos del número federal de contribuyente: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (núm. de procedimiento de quiebra 17 BK 3567-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (núm. de procedimiento de quiebra 17 BK 3566-LTS) (últimos cuatro dígitos del número federal de contribuyente: 9686); y v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE", y conjuntamente con el ELA, COFINA, la ACT y el SRE, los "Deudores") (núm. de procedimiento de quiebra 17 BK 4780-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3747) (los números de causas radicadas conforme al título III figuran como números de procedimiento relativos a procedimientos de quiebra debido a limitaciones del programa informático).

[2] PROMESA ha sido codificada en el título 48 U.S.C., §§ 2101 a 2241.

(la "Sexagésima Quinta Objeción Global") a las evidencias de reclamos mencionadas en el

**Anexo A** del presente, cada una de las cuales presuntamente alega, en su totalidad o en parte,

responsabilidad sobre la base de una participación patrimonial en pagarés emitidos por el Fono de

Fideicomiso de Conservación de Puerto Rico. Además, las Evidencias de reclamos núms. 695 y

5290 a) alegan presuntamente responsabilidad en parte sobre la participación patrimonial en bonos

emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), y b)

están parcialmente duplicados en relación con las evidencias de reclamos principales radicadas

contra el ELA. En apoyo de la Sexagésima Quinta Objeción Global, el ELA manifiesta

respetuosamente lo siguiente:

## JURISDICCIÓN

1.        El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene

jurisdicción sobre la materia para conocer la presente causa y el en ella remedio solicitado

conforme al artículo 306(a) de PROMESA.

2.        La sede judicial de este distrito es la competente conforme al artículo 307(a).

## ANTECEDENTES

**A.        Órdenes de fecha final**

3.        El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de

reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y presentó una petición

voluntaria de remedio para el ELA conforme al artículo 304(a) de PROMESA, incoando una causa

con arreglo al título III de dicho cuerpo legal (la "Causa relativa al ELA radicada conforme al

título III").

4.        El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A)*

*fijara fechas límite y procedimientos para radicar evidencias de reclamos y B) aprobara la forma*

*y la manera de su notificación* [núm. ECF 2255][3] (la "Moción de fecha final"). Conforme a la
*Orden que A) fijó fechas límite y procedimientos para radicar evidencias de reclamos y B) aprobó
la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden inicial de fecha final"), el
Tribunal concedió el remedio solicitado en la Moción de fecha final. Más tarde, el Tribunal
extendió dichas fechas límite hasta el 29 de junio de 2018 a las 04.00 p.m. (AST) al dictar la *Orden
que A) extendió fechas límite para radicar evidencias de reclamos y B) aprobó la forma y la
manera de su notificación* [núm. ECF. 3160] (conjuntamente con la Orden inicial de fecha final,
las "Órdenes de fecha final").

**B.      Operaciones y deuda relativa a bonos del ELA**

5.      La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución de
Puerto Rico") entró en vigor en 1952. La Constitución de Puerto Rico creó el ELA como el
Gobierno central de Puerto Rico, de "forma republicana" y dividida en tres poderes: legislativo,
ejecutivo y judicial. *Véase* Const. de Puerto Rico, art. I, §§ 1, 2.

6.      La Constitución de Puerto Rico autoriza al ELA a emitir deuda, con sujeción a
determinadas limitaciones, incluida la capacidad del ELA de empeñar sus rentas. *Véase* Const. de
Puerto Rico, art. VI § 2. En 1961, la sección 2 del artículo VI de la Constitución de Puerto Rico
fue modificado para limitar la contracción de la deuda por parte del ELA sobre la base del monto
de la deuda que el ELA tuviera que haber pagado en relación con sus rentas históricas. Desde 1961,
el ELA ha emitido bonos de obligación general por miles de millones de dólares presuntamente
garantizados mediante la buena fe, el crédito y el poder de imponer contribuciones.

---

[3] Salvo disposición en contrario contenida en el presente documento, todas las citas ECF harán referencia a
documentos radicados en el marco del procedimiento de quiebra núm. 17 BK 3283-LTS.

**C.     Evidencias de reclamos radicados contra el ELA**

7.     Hasta la fecha, se han radicado aproximadamente 169,591 evidencias de reclamos, y se han registrado por Prime Clerk, LLC., contra los Deudores. [4]  Dichas evidencias de reclamos ascienden a un total de $43.6 billones en reclamos presentados contra los Deudores.

8.     De las evidencias de reclamos radicadas, aproximadamente 107,375 han sido radicados en relación con el ELA, o reclasificados como presentados contra el ELA. Las evidencias de reclamos relacionadas con el ELA ascienden a un total de $33.2 billones en responsabilidad reclamada más montos no liquidados. De conformidad con los términos de las Órdenes de fecha final, muchos de esos reclamos no tenían que ser radicados siquiera, o adolecen de algún otro vicio; por ejemplo, haber sido modificados posteriormente, no contener reclamos de los que los Deudores fuesen responsables, o estar repetidos en relación con otras evidencias de reclamos.

**D.     Procedimientos relativos a objeciones globales y objeciones a reclamos del ELA**

9.     Para resolver, de manera eficaz, el mayor número posible de las evidencias de reclamos innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su Moción de que se dictase una orden a) que aprobase procedimientos limitados relativos a objeciones globales, b) declarase la renuncia al requisito contenido en la regla *3007(e)(6) de las Reglas de quiebras, y c) concediese el remedio relacionado* [núm. ECF 4052] (la "Moción de procedimientos globales"). El remedio solicitado en dicha moción era de una naturaleza no sustantiva y estaba concebido para agilizar y optimizar el proceso de reconciliación de los reclamos, entre otras cosas, al aumentar el número de reclamos permitido dentro del alcance de objeciones globales. Una vez revisada la orden propuesta para incorporar determinados comentarios recibidos, incluidos los realizados por el Tribunal durante una vista celebrada el 7 de

---

[4] Más de 8000 de esos reclamos han sido retirados del registro tras haber sido etiquetados como inscritos por error.

noviembre de 2018, el Tribunal concedió el remedio solicitado en la Moción de procedimientos globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden a) que aprobó procedimientos limitados relativos a objeciones globales, B) declaró la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de quiebras, y c) concedió el remedio relacionado* [núm. ECF 4230]; *Procedimientos relativos a objeciones globales* [núm. ECF. 4230-1] (conjuntamente, los "Procedimientos originales relativos a objeciones globales").

10.    De conformidad con los Procedimientos originales relativos a objeciones globales, el Tribunal ha celebrado vistas con respecto a (59) objeciones globales no sustantivas presentadas por el ELA, COFINA, la ACT y/o el SRE. Tras las vistas del 30 de enero y el 13 de marzo de 2019, el Tribunal declaró con lugar a (19) de tales objeciones globales, como consecuencia de lo cual miles de evidencias de reclamo presentadas contra COFINA quedaron desestimadas y fueron eliminadas del expediente, y cientos de otros reclamos fueron reclasificados para que se presentasen contra otros de los Deudores.  El 12 de junio de 2019 y el 24 de julio de 2019 se escucharon cuarenta objeciones globales a reclamos presentados contra el ELA, COFINA, la ACT y/o el SRE, además de una serie de objeciones individuales a reclamaciones contra el ELA, el SRE o COFINA.  Sobre la base de las sentencias y órdenes del Tribunal, más de 9,000 reclamos presentados que afirman aproximadamente $43 billones en responsabilidad contra el ELA, la ACT, COFINA y el SRE han sido rechazadas y serán eliminadas del registro de reclamaciones en los procedimientos del Título III al momento de la entrada de órdenes finales

11.    En aras del interés constante para resolver, de una manera eficaz, cualesquiera evidencias de reclamos innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en las que solicitaron, entre otras cosas, que los Deudores pudieran radicar objeciones globales sobre unas bases sustantivas para aumentar el número de

reclamos que pudieran incluirse en una objeción y para aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que aprobara procedimientos enmendados relativos a objeciones globales, B) declarara la renuncia al requisito contenido en la regla 3007(e) de las Reglas de quiebras C) aprobara formas de notificación adicionales y D) concediera el remedio relacionado* [núm. ECF 7091]. El Tribunal concedió, el 14 de junio de 2019, el remedio solicitado por medio de la *Orden A) que aprobó procedimientos enmendados relativos a objeciones globales, B) declaró la renuncia al requisito contenido en la regla 3007(e) de las Reglas de quiebras C) aprobó formas de notificación adicionales y D) concedió el remedio relacionado* [núm. ECF 7440] (la "Orden relativa a procedimientos enmendados globales").

12.    La Sexagésima Quinta Objeción Global se radica de conformidad con la Orden relativa a procedimientos enmendados relativos a objeciones globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMOS

13.    Los Procedimientos enmendados relativos a objeciones globales permiten al ELA radicar una objeción global a varias evidencias de reclamos sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos enmendados relativos a objeciones globales. Los reclamos que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamos debidamente formalizada y radicada constituye una evidencia *prima facie* de validez del reclamo, *véase* R. Fed. de Proc. de Quiebr. 3001(f), aplicable al presente procedimiento en virtud del artículo 310 de PROMESA, la parte que radique la objeción podrá superar dicha evidencia *prima facie* con evidencias que, según su criterio, refutarían al menos una de las alegaciones esenciales para la causa. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase*

*también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e

presume que un reclamo es válido hasta que la parte que radique la objeción haya introducido

evidencias suficientes para refutar la causa *prima facie* de la demandante." (se omite cita)).

14.     La Sexagésima Quinta Objeción Global pretende que se rechacen, de conformidad

con los Procedimientos enmendados relativos a objeciones globales, reclamos que pretenden

recuperar, en su totalidad o en parte, montos por los que el ELA no tiene responsabilidad porque

los reclamos se basan en parte en pagarés que no fueron emitidos por el ELA y en relación con los

cuales el ELA no tiene obligación. Además, con respecto a las Evidencias de reclamos núms. 695

y 5290, el ELA no es responsable por la parte de los reclamos que presuntamente alega

responsabilidad sobre la base de los bonos emitidos por COFINA, puesto que dichos reclamos

fueron 1) pactados y conciliados conforme a la Orden de conciliación y (2) liberados y liquidados

conforme al Plan y Orden de conformación enmendada. Además, conforme a la regla 3007(d)(1)

de las Reglas federales del procedimiento de quiebra y los Procedimientos enmendados relativos

a objeciones globales, el ELA pretende que se rechace también otra parte delas Evidencias de

reclamos núms. 695 y 5290 porque, en la medida en que los reclamos se basen en los bonos

emitidos por el Sistema de Retiro de los empleados del Gobierno del Estado Libre Asociado de

Puerto Rico ("SRE") y la por Autoridad de Acueductos y Alcantarillados de Puerto Rico ("AAA"),

dichos reclamos son duplicados de las evidencias de reclamos principales radicadas contra el ELA

por el agente fiscal en nombre de los tenedores de los bonos emitidos por el SRE y la AAA.

**A. Ausencia de responsabilidad por pagarés emitidos por el Fondo de Fideicomiso de
Conservación de Puerto Rico (evidencias de reclamos núms. 695, 5290, 33087 y
128006)**

15.     Cada uno de los reclamos identificados en el **Anexo A** del presente (conjuntamente,

los "Reclamos") alegan presuntamente responsabilidad sobre la base de los bonos emitidos por el

Fondo de Fideicomiso de Conservación de Puerto Rico (el "Pagarés de conservación"). Las Evidencias de reclamos núms. 33087 y 128006 fueron radicadas por el Sr. Jaime Robles Bidot (Prueba de reclamos núm. 128006 también menciona a Raquel Rodríguez como demandante), y ambos reclamos alegan presuntamente responsabilidad contra el ELA únicamente sobre la base de una supuesta participación patrimonial en los Pagarés de conservación. Las Evidencias de reclamos núms. 695 y 5290 fueron presentados por el Sr. Manuel B. Martínez Giraud, y alegan presuntamente responsabilidad sobre la base de una supuesta participación patrimonial en una serie de diferentes pagarés y bonos, incluidos los Pagarés de conservación. [5]

16.     Aunque todos los Reclamos adjuntaban documentación justificativa que muestran posesiones relacionadas con los Pagarés de conservación, ninguno de los Reclamos brindó una explicación sobre el motivo por el que el ELA debería tener responsabilidad por dichos montos. Los Reclamos no presentaron ninguna evidencia de que el ELA emitiera los Pagarés de conservación, garantizara los Pagarés de conservación o, por algún motivo, sea un obligado en relación con los Pagarés de conservación. Ni tampoco pueden hacerlo. Según se establece en informe del 9 de mayo de 2014 elaborado por Moody's Investors Services que se adjunta al presente documento como **Anexo B** ("Informe de Moody's"), el Fondo de Fideicomiso de Conservación de Puerto Rico fue un emisor instrumental de los pagarés; Doral Financial ("Doral") fue el obligado subyacente de los pagarés. El Fondo de Fideicomiso de Conservación de Puerto Rico emitió pagarés para comprar pagarés a medio plazo emitidos por Doral, como una forma de

---

[5] Aunque las propias evidencias de reclamos mencionan diferentes montos alegados, la documentación justificativa de las Evidencias de reclamos núms. 695 y 5290 menciona los mismos números CUSIP como la base de los reclamos. En la medida en que las Evidencias de reclamos núms. 695 y 5290 aleguen responsabilidad en nombre de la misma demandante y sobre la base de una supuesta participación patrimonial en los mismos bonos y pagarés, uno de estos reclamos deberá ser rechazado, conforme a la regla 3007(d)(1) de las Reglas federales del procedimiento de quiebra, por el motivo adicional de que los reclamos están duplicados los unos con respecto a los otros.

financiamiento exento de impuestos de Doral. Informe de Moody's, en 1. En consecuencia, las Evidencias de reclamos núms. 33087 y 128008 deben ser rechazados en su totalidad, y las Evidencias de reclamos núms. 695 y 5290 deben ser rechazados parcialmente, puesto que alegan supuestamente responsabilidad sobre la base de pagarés por los que el ELA no tiene responsabilidad.

**B. Ausencia de responsabilidad en el caso de los Reclamos relativos a los bonistas de COFINA (Evidencias de reclamos núms. 695 y 5290)**

17.     Las Evidencias de reclamos núms. 695 y 5290 también alegan presuntamente reclamos sobre la base de una supuesta participación patrimonial en bonos emitidos por COFINA, una corporación pública y organismo del ELA que constituye una entidad corporativa y política independiente y separada del ELA, creada conforme a la Ley núm. 91 de la Asamblea Legislativa del ELA.

18.     El 5 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y presentó una petición voluntaria de remedio para COFINA conforme al artículo 304(a) de PROMESA, incoando una causa con arreglo al título III de dicho cuerpo legal (la "Causa relativa a COFINA radicada conforme al título III"). La Junta de Supervisión radicó el *8º Plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al título III* (el "Plan") [núm. ECF 4652] el 9 de enero de 2019.

19.     El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la conciliación de la controversia sobre si, luego de examinar todas las contestaciones y reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son

propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia relativa al ELA y a COFINA"). *Véase la Orden y la Sentencia que confirman el 8º Plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico* [núm. ECF 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia relativa al ELA y a COFINA conforme al *Dictamen abreviado y orden que la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [núm. ECF 5045] (la "Orden de conciliación"). El 5 de febrero de 2019, el Tribunal dictó una Orden y Sentencia enmendadas que confirman el *8º Plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al título III* [núm. ECF 5055] (la "Orden de confirmación enmendada"). El Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de entrada en vigor"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el 8º Plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al título III, según el título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [procedimiento núm. 17 BK 3284-LTS, núm. ECF 587].

20.    La Orden de conciliación resolvió la Controversia relativa al ELA y a COFINA y, conforme al párrafo 55 de la Orden de conciliación, la totalidad de los reclamos contra el ELA, surgidos o vinculados con la relación del ELA y COFINA, han sido liberados. Además, conforme al párrafo 3(c) del Acuerdo de conciliación [núm. ECF 5045-1], de fecha 19 de octubre de 2018 que se adjunta a la Orden de conciliación (el "Acuerdo de conciliación"), y el párrafo 7 de la Orden de confirmación enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia relativa al ELA y a COFINA ha sido rechazado de forma definitiva luego de la

aprobación del pacto y la conciliación de la Controversia relativa al ELA y a COFINA. Además,

conforme al párrafo 29(f) de la Orden de confirmación enmendada, este tipo de reclamos, que

surgen o están vinculados con la relación entre el ELA y COFINA, fueron liberados. Orden de

confirmación enmendada, ¶ 29(f).[6] Por todos estos motivos, en la medida en que las Evidencias

de reclamos núms. 695 y 5290 aleguen presuntamente responsabilidad sobre la base de los Bonos

de COFINA, dichos reclamos contra el ELA deberían ser desestimados porque los reclamos han

sido satisfechos, liberados y/o liquidados conforme a la Orden de conciliación, el Acuerdo de

conciliación, la Orden de confirmación enmendada y el Plan.

### C.  Reclamos de bonos duplicados (Evidencias de reclamos núms. 695 and 5290)

21.     Las Evidencias de reclamos núms. 695 y 5290, alegan presuntamente, en parte,

responsabilidad también sobre la base de una supuesta participación patrimonial en bonos emitidos

por el SRE y la AAA. Conforme a la Orden inicial de fecha final, fiduciarios autorizados, agentes

fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos

emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamos

principal contra el deudor pertinente, en su propio nombre y en el de todos los tenedores de los

reclamos de bonos relacionados con la respectiva serie de bonos en relación con las obligaciones

surgidas de los respectivos acuerdos fiduciarios, resoluciones o documentos similares vinculados

con los bonos. Orden inicial de fecha final, ¶ 5(a).

---

[6] Conforme al Plan, "Reclamo" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, accidental, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, accidental, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas radicadas, procedimientos o reclamos de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

22.     El SRE es un organismo gubernamental, separado e independiente del Gobierno del ELA y de otros de sus órganos. *Véase* 3 L.P.R.A § 775.  Presuntamente conforme a la *Resolución sobre bonos para el financiamiento de pensiones*, adoptada el 24 de enero de 2008, y las resoluciones complementarias, el SRE emitió unos bonos preferentes y subordinados relativos al financiamiento de pensiones (los "Bonos del SER"), por un monto total del principal de aproximadamente $2900 millones.[7] El Bank of New York Mellon ("BNYM") actúa como agente fiscal con respecto a los Bonos del SRE. En nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamos principal en el marco de la Causa del ELA radicada conforme al título III (el "Reclamo principal del SER").[8]

23.     La AAA emitió determinados bonos de renta (los "Bonos de la AAA"), conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto Rico núm. 1583, por la que se garantizan los bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico, y algunas resoluciones complementarias. El Banco Popular de Puerto Rico ("Banco Popular") actúa como fideicomisario en relación con

---

[7] El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y presentó una petición voluntaria de remedio para SRE conforme al artículo 304(a) de PROMESA, incoando una causa con arreglo al título III de dicho cuerpo legal. El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamos presentados por los tenedores de los bonos emitidos por el SRE* [procedimiento núm. 17-3566, núm. ECF 381], sobre el motivo de que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, lo cual convertía los Bonos del SRE en nulos de pleno derecho. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al Código de quiebras, artículo 502, y la regla 3007 de las Reglas de quiebras, a reclamos radicados o alegados por los tenedores de los Bonos del SRE contra el SRE y el ELA* [núm. ECF 6482], sobre el motivo, entre otros, de que la emisión de los bonos fue *ultra vires*. El SRE se reserva los derechos a impugnar la emisión de los bonos sobre cualquier motivo, también sobre el motivo de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

[8] El 22 de mayo de 2019, el ELA radicó una objeción al Reclamos principal del SRE. *Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de quiebras y la regla 3007 de las Reglas de quiebras, a los reclamos radicados o alegados contra el ELA por el Bank of New York Mellon, como agente fiscal (núm. de reclamo 16775)* [núm. ECF 7075]. En aras de la claridad, la Sexagésima Quinta Objeción Global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, lo que incluye cualesquiera derechos a intervenir, que quedan reservados.

los Bonos de la AAA, y radicó una evidencia de reclamo principal contra el ELA en nombre de los tenedores de los Bonos de la AAA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamo núm. 22620 (conjuntamente con el Reclamo principal del SRE, los "Reclamos principales").

24.     En la medida en que las Evidencias de reclamos núms. 695 y 5290 aleguen presuntamente responsabilidad contra el ELA en relación con uno o varios bonos emitidos por el SRE o la AAA, dichos reclamos están duplicados en relación con los Reclamos principales presentados en el marco de la Causa del ELA radicada conforme al título III. Si dichas partes de los reclamos no son rechazadas, ello acarreará que la demandante, el Sr. Martínez Giraud, obtenga posiblemente una recuperación doble no justificada contra el ELA, en detrimento de otras partes interesadas de la Causa del ELA radicada conforme al título III. El Sr. Martínez Giraud no se verá perjudicado por el hecho de que se rechacen estas partes de sus reclamos, puesto que las responsabilidades asociadas figuran en los Reclamos principales.

25.     En apoyo de lo que antecede, el ELA invoca el informe del 9 de mayo de 2014 elaborado por Moody's Investors Services, denominado "*Moody's rebaja los pagarés garantizados del Fondo de Fideicomiso de Conservación de Puerto Rico de Caa3 a C*," cuya copia se adjunta al presente documento como **Anexo B**, y la *Declaración de Jay Herriman en apoyo de la Sexagésima Quinta Objeción Global (sustantiva) del Estado Libre Asociado de Puerto Rico a las Evidencias de Reclamos Núms. 695, 5290, 33087* y *128006*, de fecha 26 de julio de 2019, adjunta al presente como **Anexo C**.

## NOTIFICACIÓN

26.     De conformidad con los Procedimientos enmendados relativos a objeciones globales, el ELA notifica la presente Sexagésima Quinta Objeción Global a) a los acreedores

13

individuales objeto de esta Sexagésima Quinta Objeción Global, b) al Síndico estadounidense, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de causas enmendados núm. 9* [núm. ECF 7115-1]), disponibles en el sitio de causas del Deudor, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Sexagésima Quinta Objeción Global se adjunta al presente como **Anexo D**. Con la presente objeción se radican y notifican las traducciones al español de la Sexagésima Quinta Objeción Global, del calendario de reclamos sujeto a la misma, de la declaración justificativa de Jay Herriman, de la notificación y de la orden propuesta, cada uno de los cuales se adjunta al presente documento. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## **RESERVA DE DERECHOS**

27.     La presente Sexagésima Quinta Objeción Global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores a objetar a los Reclamos o a cualesquiera otros reclamos sobre la base de los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamos contra los Deudores; b) constituyan una renuncia a los derechos que asisten a los Deudores a oponerse a cualesquiera reclamos sobre la base de los motivos que fuere; c) constituyan una promesa o requisito a pagar cualquier reclamo; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una

14

renuncia a los derechos que asisten a los Deudores conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## <u>AUSENCIA DE SOLICITUDES PREVIAS</u>

28.    No se ha radicado ninguna solicitud de remedio previa a la presente Sexagésima Quinta Objeción Global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en

la forma de la orden propuesta que se adjunta al presente como **Anexo E**, 1) que conceda el remedio

solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se

consideren justos.

Fecha: 26 de julio de 2019                                            Respetuosamente sometida,
      San Juan (Puerto Rico)

[*Firma en la versión en inglés*]
Hermann D. Bauer
Núm. USDC: 215205
Daniel J. Pérez-Refojos
Núm. USDC: 303909
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión*
*y Administración Financiera como*
*representante del ELA*

16