Hearing Date: September 11, 2019, at 9:30AM (Atlantic Time)
Response Deadline: August 28, 2019 at 4:00PM (Atlantic Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to HTA.** |

### SIXTY-SEVENTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO DUPLICATE AND DEFICIENT CLAIMS

The Puerto Rico Highways and Transportation Authority ("HTA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of HTA pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this sixty-seventh omnibus objection (the "Sixty-

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, COFINA, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Seventh Omnibus Objection") to the deficient and/or duplicate proofs of claim listed on **Exhibit A**

hereto, and in support of the Sixty-Seventh Omnibus Objection respectfully represent as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA

section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a),

commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21,

2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to

PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA, pursuant to

PROMESA section 304(a), commencing a case under Title III thereof (the "HTA Title III Case"

and together with the Commonwealth Title III Case the "Title III Cases").  On June 29, 2017, the

Court entered an order granting the joint administration of the Title III Cases for procedural

purposes only.

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing*

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

*Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the HTA Title III Case.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

5.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).

**B.      HTA Bond Debt Master Proofs of Claim**

6.      HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.

7.      The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "Resolution Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution," and with the

3

1968 Resolution, the "Resolutions").  As of the Petition Date, approximately $830 million in

principal amount of bonds issued under the 1968 Resolution remain outstanding, and

approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain

outstanding.

8.      The Bank of New York Mellon ("BNYM") serves as fiscal agent with respect to

the Resolution Bonds.  On behalf of the holders of the Resolution Bonds, BNYM filed three master

proofs of claim in the HTA Title III Case (collectively, the "BNYM Master Proofs of Claims"):

Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968

Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim

No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution

approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622,

asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution

approximately $279 million in liabilities plus unliquidated amounts.

9.      Each of the BNYM Master Proofs of Claim asserted with respect to the Resolution

Bonds at issue "[a]ny and all claims, rights and/or remedies the Fiscal Agent and/or the Owners

may have under or in connection with" the 1968 Resolution or 1998 Resolution, as applicable,

along with "[a]ny and all claims, rights, and/or remedies the Fiscal Agent and/or the Owners may

have arising at law or in equity based upon" the 1968 Resolution or 1998 Resolution, as applicable,

"including, but not limited to, claims for breach of contract, specific performance, indemnification,

contribution, recession, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation,

alter ego, reimbursement and/or subrogation related to, or arising from or on account of any and

all part, present, or future litigations, actions, or transactions by, among, or involving the Fiscal

Agent, the Owners, and/or [HTA]." Addendum to Proof of Claim No. 32622, ¶ 17; Addendum to

Proof of Clam No. 37245, ¶ 19; Addendum to Proof of Clam No. 38574, ¶ 18.

10.     Additionally, in accordance with the HTA Enabling Act, in 2003, HTA issued a

series of Special Facility Revenue Refunding Bonds to facilitate the financing of the Teodoro

Moscoso Bridge (the "Bridge Bonds"). Banco Popular de Puerto Rico ("Banco Popular") serves

as trustee with respect to the Bridge Bonds. On behalf of the holders of Bridge Bonds, Banco

Popular filed a master proof of claim asserting approximately $153 million in liabilities plus

unliquidated amounts for "all amounts owed on account of the [Bridge] Bonds," which was logged

by Prime Clerk, LLC, as Proof of Claim No. 22624 (the "Banco Popular Master Proof of Claim,"

and together with the BNYM Master Proofs of Claim, the "Master Proofs of Claim").

## C.     HTA Claims

11.     To date, approximately 169,591 proofs of claim have been filed against the Debtors

and logged by Prime Clerk, LLC.[4]  Such proofs of claim total approximately $43.6 trillion in

asserted claims against the Debtors.

12.     Of the proofs of claim filed, approximately 2,338 have been filed in relation to, or

reclassified to be asserted against, HTA. The HTA-related proofs of claim total approximately

$83.1 billion in asserted claims, in addition to unliquidated amounts asserted. In accordance with

the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer

from some other flaw, such as being duplicative of other proofs of claim.

---

[4]  This total count of recorded entries on the claims registry in the Title III cases includes over 8,000 claims that have
    been marked as docketed in error and removed.

**D.    Omnibus Objection Procedures and Objections to Claims**

13.    In order to efficiently resolve as many of the unnecessary proofs of claim as possible, the Debtors, on October 16, 2018, filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The relief requested therein was non-substantive in nature and was designed to expedite and streamline the claims reconciliation process by, among other things, enlarging the number of claims permitted to be within the scope of an omnibus objection.  After the proposed order was revised to incorporate certain comments received, including those from the Court at a hearing held on November 7, 2018, the Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").

14.    Pursuant to the Initial Omnibus Objection Procedures, the Court has heard fifty-nine non-substantive omnibus objections filed by the Commonwealth, COFINA, HTA, and/or ERS.  Following hearings held on January 30, 2019, and March 13, 2019, the Court sustained nineteen of these omnibus objections, in addition to certain individual objections to claims filed against COFINA, resulting in thousands of proofs of claim filed against COFINA being disallowed and expunged, and hundreds of other claims being reclassified to be asserted against another of the Debtors.  Forty omnibus objections to claims filed against the Commonwealth, HTA, ERS, and/or COFINA, in addition to a number of individual objections to claims filed against the Commonwealth, ERS, or COFINA, were heard on June 12, 2019, and July 24, 2019. Based upon

rulings and orders of the Court, over 9,000 claims asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

15.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, the Debtors, on May 23, 2019, filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  The Court granted the requested relief by the June 14, 2019 *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

16.     This Sixty-Seventh Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

17.     The Amended Omnibus Objection Procedures allow HTA to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as certain substantive bases set forth in the Amended Omnibus Objection Procedures.

18.     The Sixty-Seventh Omnibus Objection seeks to disallow, in accordance with Federal Rules of Bankruptcy Procedure 3007(d)(1) and 3007(d)(6), and the Amended Omnibus Objection Procedures, claims that are duplicates of one or more Master Proofs of Claim filed in

the Title III Cases and/or are failed to comply with the applicable rules for filing a claim and the Bar Date Orders.

19.     Each claim identified in **Exhibit A** hereto (collectively, the "Claims to Be Disallowed") failed to provide a basis for asserting the claim or a portion of the claim against HTA. Each of the Claims to Be Disallowed purports to assert liabilities associated with bonds issued by another entity that is not one of the Debtors, and failed to comply with the applicable rules by not providing a basis for purporting to assert a claim against HTA due to bonds not issued by HTA. One of the Claims to Be Disallowed also purports to partially assert liability against HTA based on ERS bonds, without providing a basis for purporting to assert a claim against HTA based on bonds issued by ERS.  Because of one or more of these failures to comply with the applicable rules, neither the Debtors nor the Court are able to determine the validity of the Claims to Be Disallowed, in full or in part.

20.     Additionally, as set forth in **Exhibit A** hereto, some of the Claims to Be Disallowed purport to assert liability against HTA based on bonds issued by HTA.  Such portions of the Claims to Be Disallowed are duplicative of one or more Master Proofs of Claim, which as explained above were filed in the HTA Title III Case by the fiscal agent or indenture trustee for the bonds at issue. As a result, any failure to disallow these portions of the Claims to Be Disallowed will result in the applicable claimants potentially receiving an unwarranted double recovery against HTA, to the detriment of other stakeholders in the Title III Cases.  The holders of the Claims to Be Disallowed will not be prejudiced by the disallowance of the duplicate portions of their claims because the liabilities associated are subsumed within one or more Master Proofs of Claim.  Because the Claims to Be Disallowed only contain duplicative or deficient information, HTA requests that these claims be disallowed in their entirety.

8

21.     In support of the foregoing, HTA relies on the *Declaration of Jay Herriman in Support of the Sixty-Seventh Omnibus Objection (Non-Substantive) of the Puerto Rico Highways and Transportation Authority to Duplicate and Deficient Claims*, dated July 26, 2019, attached hereto as **Exhibit B**.

## NOTICE

22.     In accordance with the Amended Omnibus Objection Procedures, HTA is providing notice of this Sixty-Seventh Omnibus Objection to (a) the individual creditors subject to this Sixty-Seventh Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Ninth Amended Case Management Procedures* [ECF No. 7115-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  A copy of the notice for this Sixty-Seventh Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Sixty-Seventh Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  HTA submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

23.     This Sixty-Seventh Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to the Claims to Be Disallowed or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or

(e) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

24.     No prior request for the relief sought in this Sixty-Seventh Omnibus Objection has been made to this or any other court.

WHEREFORE HTA respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting HTA such other and further relief as is just.

Dated: July 26, 2019
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
as representative for HTA*

**Fecha de la vista: 11 de septiembre de 2019, a las 09.30 a.m. (AST)**
**Fecha límite para responder: 28 de agosto de 2019, a las 04.00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMO(S).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante de<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO y otros,<br><br>                      Deudores.[1] | PROMESA,<br>título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administración conjunta)<br><br>**El presente escrito guarda relación con la ACT**. |

## SEXAGÉSIMA SÉPTIMA OBJECIÓN GLOBAL (NO SUSTANTIVA) DE LA AUTORIDAD DE CARRETARAS Y TRANSPORTACIÓN DE PUERTO RICO A LOS RECLAMOS DUPLICADOS Y DEFICIENTES

La Autoridad de Carreteras y Transportación de Puerto Rico ("ACT"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante de la ACT conforme al artículo 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica esta sexagésima séptima

---

[1] Los Deudores en el marco de los presentes Procedimientos radicados conforme al título III, junto con el respectivo número de procedimiento radicado conforme al título III y los últimos cuatro (4) dígitos del número federal de contribuyente de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (núm. de procedimiento de quiebra 17 BK 3283-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (núm. de procedimiento de quiebra 17 BK 3284-LTS) (últimos cuatro dígitos del número federal de contribuyente: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (núm. de procedimiento de quiebra 17 BK 3567-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "er") (núm. de procedimiento de quiebra 17 BK 3566-LTS) (últimos cuatro dígitos del número federal de contribuyente: 9686); y v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE", y conjuntamente con el ELA, COFINA, la ACT y el SRE, los "Deudores") (núm. de procedimiento de quiebra 17 BK 4780-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3747) (los números de causas radicadas conforme al título III figuran como números de procedimiento relativos a procedimientos de quiebra debido a limitaciones del programa informático).

[2] PROMESA ha sido codificada en el título 48 U.S.C., §§ 2101 a 2241.

objeción global (la "Sexagésima Séptima Objeción Global") a las evidencias de reclamos deficientes y/o duplicados que se mencionan en el **Anexo A** del presente, y en apoyo de la Sexagésima Séptima Objeción Global manifiesta respetuosamente lo siguiente:

### JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para conocer la presente causa y el en ella remedio solicitado conforme al artículo 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme al artículo 307(a).

### ANTECEDENTES

**A.      Órdenes de fecha final**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y presentó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme al artículo 304(a) de PROMESA, incoando una causa con arreglo al título III de dicho cuerpo legal (la "Causa relativa al ELA radicada conforme al título III"). El 21 de mayo de 2017 (la "Fecha de petición"), la Junta de Supervisión emitió certificaciones de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó peticiones voluntarias de remedio para la ACT conforme al artículo 304(a) de PROMESA, iniciando una causa al amparo del título III del referido cuerpo legal (la "Causa de la ACT radicada conforme al título III," y denominadas conjuntamente con la Causa del ELA radicada conforme al título III, las "Causas radicadas conforme al título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de las Causas radicadas conforme al título III únicamente con fines procesales.

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fijara fechas límite y procedimientos para radicar evidencias de reclamos y B) aprobara la forma*

2

*y la manera de su notificación* [núm. ECF 2255][3] (la "Moción de fecha final"). Conforme a la
*Orden que A) fijó fechas límite y procedimientos para radicar evidencias de reclamos y B) aprobó
la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden inicial de fecha final"), el
Tribunal concedió el remedio solicitado en la Moción de fecha final y fijó fechas límite y
procedimientos para presentar evidencias de reclamos en el marco de la Causa de la ACT radicada
conforme al título III. Luego de la moción informativa de determinados acreedores, y del apoyo
de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para
radicar evidencias de reclamos y B) aprobó la forma y la manera de su notificación* [núm. ECF
3160] (conjuntamente con la Orden inicial de fecha final, las "Órdenes de fecha final"),
extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

5.      Conforme a la Orden inicial de fecha final, fiduciarios autorizados, agentes fiscales
o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos
por uno de los Deudores, podrán radicar una evidencia de reclamos principal contra el deudor
pertinente, en su propio nombre y en el de todos los tenedores de los reclamos de bonos
relacionados con la respectiva serie de bonos en relación con las obligaciones surgidas de los
respectivos acuerdos fiduciarios, resoluciones o documentos similares vinculados con los bonos.
Orden inicial de fecha final, ¶ 5(a).

**B.      Evidencias de reclamos principales relativas a la deuda de los Bonos de la ACT**

6.      La ACT es una corporación pública y organismo del ELA, que constituye una
entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm.
74-1965 de la Asamblea Legislativa del ELA ("Ley habilitante de la ACT").  La ACT se encarga

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos
radicados en el marco del procedimiento de quiebra núm. 17 BK 3283-LTS.

de la construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A, § 2002.

7.      La Ley de habilitación de la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A, § 2002. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos relativos a resoluciones"): *i*) Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución 1968"), y *ii*) Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución 1998", y conjuntamente con la Resolución 1968, las "Resoluciones"). Desde la Fecha de petición, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución 1998 quedan igualmente pendientes de pago.

8.      El Bank of New York Mellon ("BNYM") actúa como agente fiscal con respecto a los Bonos relativos a resoluciones. En nombre de los tenedores de los Bonos relativos a resoluciones, BNYM radicó tres evidencias de reclamos principales en el marco de la causa de la ACT radicada conforme al título III (conjuntamente, las "Evidencias de reclamos principales del BNYM"): la Evidencia de reclamos núm. 37245, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución 1968, aproximadamente $847 millones en concepto de responsabilidad más montos no liquidados; la Evidencia de reclamos núm. 38574, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución 1998, aproximadamente $3200 millones en concepto de responsabilidad más montos no liquidados; y la Evidencia de reclamos núm. 32622, por la que se reclama, en nombre de los tenedores de los bonos subordinados emitidos conforme a la Resolución 1998, aproximadamente $279 millones en concepto de responsabilidad más montos no liquidados.

9.     Cada uno de las Evidencias de reclamos principales del BNYM presentadas en relación con los Bonos relativos a resoluciones controvertidos, "[t]odos los reclamos, derechos y/o remedios que el Agente fiscal y/o los Propietarios puedan tener con forme a, o en relación con" la Resolución 1968 o la Resolución 1998, según sea el caso, junto con "[t]odos los reclamos, derechos y/o remedios que el Agente fiscal y/o los Propietarios puedan tener en ley o en equidad sobre la base de" la Resolución 1968 o la Resolución 1998, según sea el caso, "incluidos, entre otros, reclamos por incumplimiento contractual, cumplimiento específico, indemnización, contribución, recesión, fraude, instigación fraudulenta, transmisión fraudulenta, falseamiento, *alter ego*, reembolso y/o subrogación, relacionados, surgidos o vinculados con cualquiera de las partes de litigios, acciones o transacciones presentes o futuros entre el Agente fiscal, el Propietario y/o [la ACT], o que les impliquen". Adenda de la Evidencia de reclamos núm. 32622, ¶ 17; Adenda de la Evidencia de reclamos núm. 37245, ¶ 19; Adenda de la Evidencia de reclamos núm. 38574, ¶ 18.

10.     Además, de conformidad con la Ley habilitante de la ACT, la ACT emitió en 2003 una serie de Bonos relativos a rentas de instrumentos financieros especiales para facilitar el financiamiento del puente de Teodoro Moscoso (los "Bonos relativos al puente"). El Banco Popular de Puerto Rico ("Banco Popular") actúa como fideicomisario en relación con los Bonos relativos al puente. En nombre de los tenedores de los Bonos relativos al puente, el Banco Popular presentó una evidencia de reclamos principal reclamando aproximadamente $153 millones en concepto de responsabilidades más montos no liquidados relativos a "todos los montos adeudados con respecto a los Bonos [relativos al puente]", que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 22624 (la "Evidencia de reclamos principal del Banco Popular", y conjuntamente con la Evidencia de reclamos principal del BNYM, las "Evidencias de reclamos principales").

5

C.      **Reclamos de la ACT**

11.     Hasta la fecha, se han radicado aproximadamente 169,591 evidencias de reclamos, y se han registrado por Prime Clerk, LLC., contra los Deudores.[4]  Dichas evidencias de reclamos ascienden a un total de $43.6 billones en reclamos presentados contra los Deudores.

12.     De las evidencias de reclamos radicadas, aproximadamente 2,338 han sido radicados en relación con el ACT, o reclasificados como presentados contra la ACT.  Las evidencias de reclamos relacionadas con la ACT ascienden a un total de $83 100 millones en reclamos presentados, además de los montos no liquidados reclamados. De conformidad con los términos de las Órdenes de fecha final, muchos de esos reclamos no tenían que radicarse siquiera, o adolecen de algunos otros vicios; por ejemplo, estar duplicados en relación con otras evidencias de reclamos.

D.      **Procedimientos relativos a objeciones globales y objeciones a los reclamos**

13.     Para resolver, de manera eficaz, el mayor número posible de las evidencias de reclamos innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su Moción de que se dictase una orden a) que aprobase procedimientos limitados relativos a objeciones globales, b) declarase la renuncia al requisito contenido en la regla *3007(e)(6) de las Reglas de quiebras, y c) concediese el remedio relacionado* [núm. ECF 4052] (la "Moción de procedimientos globales"). El remedio solicitado en dicha moción era de una naturaleza no sustantiva y estaba concebido para agilizar y optimizar el proceso de reconciliación de los reclamos, entre otras cosas, al aumentar el número de reclamos permitido dentro del alcance de objeciones globales. Una vez revisada la orden propuesta para incorporar determinados comentarios recibidos, incluidos los realizados por el Tribunal durante una vista celebrada el 7 de

---

[4] Más de 8000 de esos reclamos han sido retirados del registro tras haber sido inscritos por error.

noviembre de 2018, el Tribunal concedió el remedio solicitado en la Moción de procedimientos globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden a) que aprobó procedimientos limitados relativos a objeciones globales, B) declaró la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de quiebras, y c) concedió el remedio relacionado* [núm. ECF 4230]; *Procedimientos relativos a objeciones globales* [núm. ECF. 4230-1] (conjuntamente, los "Procedimientos originales relativos a objeciones globales").

14.     De conformidad con los Procedimientos originales para las mociones globales, el Tribunal ha celebrado vistas con respecto a (59) objeciones globales no sustantivas presentadas por el ELA, COFINA, la ACT y/o el SRE. Tras las vistas del 30 de enero de 2019 y el 13 de marzo de 2019, el Tribunal declaró con lugar a (19) de tales objeciones globales, como consecuencia de lo cual miles de evidencias de reclamo presentadas contra COFINA quedaron desestimadas y fueron eliminadas del expediente, y cientos de otros reclamos fueron reclasificados para que se presentasen contra otros de los Deudores.  El 12 de junio de 2019 y el 24 de julio de 2019 se escucharon cuarenta objeciones globales a reclamos presentados contra el ELA, COFINA, la ACT y/o el SRE, además de una serie de objeciones individuales a reclamaciones contra el ELA, el SRE o COFINA.  Sobre la base de las sentencias y órdenes del Tribunal, más de 9,000 reclamos presentados que afirman aproximadamente $43 billones en responsabilidad contra el ELA, la ACT, COFINA y el SRE han sido rechazadas y serán eliminadas del registro de reclamaciones en los procedimientos del Título III al momento de la entrada de órdenes finales

15.     En aras del interés constante para resolver, de una manera eficaz, cualesquiera evidencias de reclamos innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en las que solicitaron, entre otras cosas, que los Deudores pudieran radicar objeciones globales sobre unas bases sustantivas para aumentar el número de

reclamos que pudieran incluirse en una objeción y para aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que aprobara procedimientos enmendados relativos a objeciones globales, B) declarara la renuncia al requisito contenido en la regla 3007(e) de las Reglas de quiebras C) aprobara formas de notificación adicionales y D) concediera el remedio relacionado* [núm. ECF 7091]. El Tribunal concedió, el 14 de junio de 2019, el remedio solicitado por medio de la *Orden A) que aprobó procedimientos enmendados relativos a objeciones globales, B) declaró la renuncia al requisito contenido en la regla 3007(e) de las Reglas de quiebras C) aprobó formas de notificación adicionales y D) concedió el remedio relacionado* [núm. ECF 7440] (la "Procedimientos enmendados relativos a objeciones globales").

16.    La Sexagésima Séptima Objeción Global se radica de conformidad con la Procedimientos enmendados relativos a objeciones globales.

## OBJECIONES A EVIDENCIAS DE RECLAMOS

17.    Los Procedimientos enmendados relativos a objeciones globales permiten a la ACT radicar una objeción global a varias evidencias de reclamos sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre determinadas bases sustantivas establecidas en los Procedimientos enmendados relativos a objeciones globales.

18.    La Sexagésima Séptima Objeción Global trata de conseguir que se rechacen, de conformidad con las reglas 3007(d)(1) y 3007(d)(6) de las Reglas federales del procedimiento de quiebra y los Procedimientos enmendados relativos a objeciones globales, reclamos que constituyen duplicados de una o varias de las Evidencias de reclamos principales presentadas en el marco de las Causas radicadas conforme al título III y/o que han incumplido con la normativa aplicable en materia de la radicación de reclamos y con lo dispuesto en las Órdenes de fecha final.

8

19.    Cada reclamo identificado en el **Anexo A** del presente (conjuntamente, los "Reclamos que han de ser rechazados") no proporcionó ninguna base para presentar el reclamo o parte del reclamo contra la ACT. Cado de los Reclamos que han de ser rechazados alegan presuntamente responsabilidades asociadas con bonos emitidos por otra entidad que no está entre los Deudores, e incumplieron con la normativa aplicable al no brindar una base para presentar presuntamente un reclamo contra la ACT en relación con los bonos no emitidos por la ACT.  Otro de los Reclamos que han de ser rechazados alega presuntamente, en parte, responsabilidad contra la ACT sobre la base de los bonos del SRE, sin brindar ninguna base para presentar presuntamente un reclamo contra la ACT sobre la base de los bonos emitidos por el SRE.  Como consecuencia de uno o varios de dichos incumplimientos de la normativa aplicable, ni los Deudores ni el Tribunal pueden determinar la validez de los Reclamos que han de ser rechazados, en su totalidad o en parte.

20.    Además, según se establece en el **Anexo A** del presente, algunos de los Reclamos que han de ser rechazados alegan presuntamente responsabilidad contra la ACT sobre la base de los bonos emitidos por la ACT. Dichas partes de los Reclamos que han de ser rechazados constituyen duplicados de una o varias Evidencias de reclamos principales que, como se explicó anteriormente, fueron presentadas en el marco de la Causa de la ACT radicada conforme al título III por el agente fiscal o fiduciario autorizado en relación con los bonos controvertidos. En consecuencia, si estas partes de los Reclamos que han de ser rechazados no son rechazadas, ello resultará en que las demandantes pertinentes obtengan potencialmente una recuperación doble no justificada contra la ACT, en detrimento de otras partes interesadas de las Causas radicadas conforme al título III. Los autores de los Reclamos que han de ser rechazados no se verán perjudicados por el hecho de que se rechacen estas partes duplicadas de sus reclamos, puesto que las responsabilidades relacionadas figuran en una o varias Evidencias de reclamos principales.

Puesto que los Reclamos que han de ser rechazados solo contienen información duplicada o deficiente, la ACT solicita que dichos reclamos sean rechazados en su totalidad.

21.     En apoyo de lo que antecede, la ACT invoca la *Declaración de Jay Herriman en apoyo de la Sexagésima Séptima Objeción Global (no sustantiva) de la Autoridad de Carreteras y Transportación de Puerto Rico a los Reclamos Duplicados y Deficientes*, de fecha 26 de julio de 2019, adjunta al presente documento como **Anexo B**.

## NOTIFICACIÓN

22.     De conformidad con los Procedimientos enmendados relativos a objeciones globales, la ACT notifica la presente Sexagésima Séptima Objeción Global a) a los acreedores individuales objeto de esta Sexagésima Séptima Objeción Global, b) al Síndico estadounidense, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de causas enmendados núm. 9* [núm. ECF 7115-1]), disponibles en el sitio de causas del Deudor, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a la Sexagésima Séptima Objeción Global se adjunta al presente como **Anexo C**. Las traducciones al español de la Sexagésima Séptima Objeción Global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. La ACT sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

23.     La presente Sexagésima Séptima Objeción Global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores a objetar a los Reclamos que han de ser rechazados o a cualesquiera otros reclamos sobre la base de los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objeto, ni se interpretarán en el

10

sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamos contra los Deudores; b) constituyan una renuncia a los derechos que asisten a los Deudores a oponerse a cualesquiera reclamos sobre la base de los motivos que fuere; c) constituyan una promesa o requisito a pagar cualquier reclamo; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## **AUSENCIA DE SOLICITUDES PREVIAS**

24.     No se ha radicado ninguna solicitud de remedio previa a la presente Sexagésima Séptima Objeción Global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

11

POR LO QUE la ACT solicita respetuosamente que se dicte una orden, esencialmente en

la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el

remedio solicitado en el presente documento, y 2) que conceda la ACT cualesquiera otros remedios

que se consideren justos.

Fecha: 26 de julio de 2019                                          Respetuosamente sometida,
      San Juan (Puerto Rico)

[*Firma en la versión en inglés*]
Hermann D. Bauer
Núm. USDC: 215205
Daniel J. Pérez-Refojos
Núm. USDC: 303909
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Letrados de la Junta de Supervisión
y Administración Financiera como
representante de la ACT*

12