UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |

MEMORANDUM ORDER GRANTING MOTION FOR PROTECTIVE ORDER
AND ORDER IN LIMINE PRECLUDING EVIDENCE IN CONNECTION WITH 9019 MOTION

Before the Court is the *Motion of the Financial Oversight and Management*

*Board for (1) a Protective Order Pursuant to Fed. R. Civ. P. 26 from the Subpoena and*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Deposition Notice Issued to Andrew Wolfe by the Official Committee of Unsecured Creditors; and (2) an Order in Limine Precluding the Official Committee of Unsecured Creditors from Entering in Evidence at the 9019 Motion Hearing the July 2017 Declaration of Andrew Wolfe* (Docket Entry No. 1464 in Case No. 17-4780,[2] the "Motion"), which seeks (i) a protective order precluding a deposition of Andrew Wolfe ("Dr. Wolfe"), an economic advisor to the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") by the Official Committee of Unsecured Creditors of all Title III Debtors (except COFINA) (the "UCC"), and (ii) an order in limine precluding the UCC's introduction into evidence of a July 2017 declaration of Dr. Wolfe (Docket Entry No. 149-2, the "Wolfe Declaration") that was tendered by the Oversight Board in connection with a July 2017 motion by certain PREPA bondholder and insurer interests for relief from the automatic stay to permit an application for the appointment of a receiver (Docket Entry No. 74, the "First Receiver Motion"), in connection with currently pending motion practice for approval pursuant to Federal Rule of Bankruptcy Procedure 9019 of a Restructuring Support Agreement (the "RSA") with certain PREPA bondholder and insurer interests (Docket Enty Nos. 1235, 1361, 1425, 1426, 1427, 1428, and 1429, collectively, the "9019 Motion"). In the alternative, the Oversight Board seeks permission to tender a further declaration of Dr. Wolfe in the event the Wolfe Declaration is admitted into evidence in connection with the 9019 Motion. The Court has jurisdiction of this contested matter pursuant to Section 306 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2166.[3]

---

[2] All docket entry references are to entries in Case No. 17-4780.
[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

The Court has reviewed carefully the Motion and all of the pleadings filed in connection therewith. Familiarity with those pleadings, and with the 9019 Motion practice, is assumed. For the following reasons, the Motion is granted.

As the Court explained at the July 11, 2019, pre-trial conference in connection with the 9019 Motion, the question before the Court in that motion practice is the reasonableness of certain aspects of the proposed settlement embodied in the RSA, as determined through application of the factors identified in *Jeffrey v. Desmond*, 70 F.3d 183 (1st Cir. 1995).[4] While the RSA contemplates the proposal of a plan of adjustment incorporating a broader range of the provisions of the RSA and eventual motion practice directed to the confirmation of such a plan, the question of confirmation of a plan based on the RSA is not before the Court on the 9019 Motion practice. At the July 11, 2019, conference, the Court ruled, inter alia, that evidence going to macroeconomic projections of the future state of Puerto Rico's economy and the long-term impact of full implementation of the RSA is outside the scope of the 9019 Motion and therefore will not be admitted in connection with the hearing on that motion. (See Transcript of Motion Hearing Held on July 11, 2019 (Docket Entry No. 1495) at 10:5-11:4.) The Wolfe Declaration, which was tendered in response to the First Receiver Motion, includes an opinion that raising PREPA customer rates above a certain rate or at a pace disproportionate to

---

[4] *Jeffrey* instructs courts evaluating the reasonableness of a settlement pursuant to Federal Rule of Bankrupcy Procedure 9019 to consider

> (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience, and delay in attending it; [and] (iv) the paramount interests of the creditors and a proper deference to their reasonable views . . . .

70 F.3d at 185.

competitive benchmarks would provoke a long-term downward economic spiral for Puerto Rico that would eventually lead to another debt service payment crisis for PREPA. (Wolfe Declaration ¶ 12.) In the First Receiver Motion, one of the moving parties' explicit goals was to enforce a rate covenant and thereby force rate increases to PREPA customers to a level sufficient to pay debt service under the terms of the currently outstanding bonds.

The UCC has announced, and contends in opposition to the instant Motion practice, that it intends to tender into evidence the Wolfe Declaration for the hearing on the 9019 Motion and it seeks to depose Dr. Wolfe in advance of that hearing. The UCC wishes to utilize the Wolfe Declaration in aid of exploring the proposition that a "Transition Charge" to ratepayers that is contemplated by the RSA will exhaust the capacity of PREPA revenues to pay the claims of unsecured creditors, which are not parties to the RSA. The Oversight Board has not tendered the Wolfe Declaration or any statement by Dr. Wolfe in support of the 9019 Motion practice, and it represents that Dr. Wolfe was not involved in the formulation of the RSA.

The Wolfe Declaration concerns macroeconomic considerations and is based on conditions predating Hurricane Maria, widespread damage and federal aid in consequence thereof, and a fiscal plan that has long been superseded. It was also tendered in response to a receivership motion that was, unlike the receivership motion that the RSA proposes to settle, focused principally on raising rates to service PREPA's current legacy bond-related debt obligations. The UCC's arguments that the Wolfe Declaration is relevant to a demonstration that the impact of the Transition Charge could be such as to render a later debt adjustment plan insufficient to support payments to unsecured creditors, and that such eventuality renders it relevant to the interests of creditors in connection with the 9019 Motion, is simply a renewed

attempt to broaden the 9019 Motion practice to address the macroeconomic factors that the Court has already ruled beyond the scope of the hearing.

The factual macroeconomic issues attendant to full implementation and confirmation of a plan based on the agreements embodied in the RSA, while not entirely irrelevant to the question of reasonableness of the measures the Court has been asked to approve, are outside of the evidentiary parameters that the Court has, in the exercise of its discretion, set in connection with the 9019 Motion. Furthermore, any probative value of the Wolfe Declaration in connection with the 9019 Motion is substantially outweighed by the prospect of multiplication of the 9019 Motion proceedings through discovery and evidence concerning changes since July 2017 in the economic factors and projections underlying the opinion in the Wolfe Declaration and the effect of such changes on the relevance and significance of that opinion. A mini-trial of such issues poses a material risk of unfair prejudice arising from waste of time and is not in the interest of efficient proceedings and use of judicial resources. See Fed. R. Evid. 403. A deposition of Dr. Wolfe in connection with the 9019 Motion would also be unduly burdensome given the volume and pace of discovery already in process in connection with that motion. See Fed. R. Civ. P. 26(c) (made applicable in these proceedings by Fed. R. Bank. P. 7026).

For these reasons and for substantially the reasons set forth in the Oversight Board's pleadings in support of the Motion, the Oversight Board's motion for a protective order precluding the deposition of Dr. Wolfe in connection with the 9019 Motion, and its request for an order in limine precluding the introduction of the Wolfe Declaration in connection with the 9019 Motion, are granted. The request for leave to file a further declaration of Dr. Wolfe is denied as moot.

This Order resolves Docket Entry No. 1464.

SO ORDERED.

Dated: July 29, 2019

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge