**Proposed Response Deadline:  August 9, 2019**
**Proposed Reply Deadline:  August 14, 2019**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------- x

|  |  |  |
|---|---|---|
| *In re* | : | |
| | : | |
| | : | PROMESA |
| THE FINANCIAL OVERSIGHT AND | : | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | |
| | : | |
|    as representative of | : | Case No. 17-BK-3283 (LTS) |
| | : | |
| THE COMMONWEALTH OF PUERTO RICO, | : | (Jointly Administered) |
| *et al.*,[1] | : | |
| | : | |
|       Debtors. | : | |
| | : | |

----------------------------------------------------------- x

|  |  |  |
|---|---|---|
| *In re* | : | |
| | : | |
| | : | PROMESA |
| THE FINANCIAL OVERSIGHT AND | : | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | |
| | : | |
|    as representative of | : | Case No. 17-BK-04780 (LTS) |
| | : | |
| PUERTO RICO ELECTRIC POWER | : | **Court Filing Relates Only to PREPA** |
| AUTHORITY (PREPA), | : | |
| | : | |
|       Debtor. | : | |

----------------------------------------------------------- x

## URGENT OMNIBUS MOTION OF CORTLAND CAPITAL MARKET SERVICES LLC, AS ADMINISTRATIVE AGENT, AND SOLUS TO COMPEL DISCOVERY RESPONSES IN CONNECTION WITH PREPA RSA SETTLEMENT MOTION

---

[1]      The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:  8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747).

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

JURISDICTION AND VENUE ..................................................................................................4

RELEVANT BACKGROUND ...................................................................................................4

    A.  The Fuel Line Lenders ....................................................................................................4

    B.  The Settlement Motion ....................................................................................................5

    C.  The Rate Motion .............................................................................................................8

    D.  The Present Discovery Dispute........................................................................................9

ARGUMENT .............................................................................................................................11

    A.  The requested discovery regarding the Rate Motion is relevant.......................................11

    B.  Good cause exists for filing this motion at this time. ........................................................13

RESERVATION OF RIGHTS ...................................................................................................14

CONCLUSION...........................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Autoridad de Carreteras y Transportacion* v. *Transcore Atlantic, Inc.*,
319 F.R.D. 422 (D.P.R. 2016) ................................................................................ 11

*Donovan* v. *Prestamos Presto Puerto Rico, Inc.*,
91 F.R.D. 222 (D.P.R. 1981) ................................................................................ 11

*Hickman* v. *Taylor*,
329 U.S. 495 (1947) ............................................................................................ 11

*In re C.R. Stone Concrete Contractors, Inc.*,
346 B.R. 32 (Bankr. D. Mass. 2006) .................................................................... 12

*Irizzary-Santiago* v. *Essilor Inds.*,
293 F.R.D. 100 (D.P.R. 2013) ............................................................................. 13

*Jeffrey* v. *Desmond*,
70 F.3d 183 (1st Cir. 1995) ...................................................................... 6 n.8, 11

*Oppenheimer Fund, Inc.* v. *Sanders*,
437 U.S. 340 (1978) ............................................................................................ 11

*S.E.C.* v. *Sargent*,
229 F.3d 68 (1st Cir. 2000) ................................................................................. 11

**Rules**

FED. R. BANKR. P. 7026 ............................................................................................ 11

FED. R. CIV. P. 26(b)(1) ............................................................................................ 11

FED. R. CIV. P. 30(a)(1) ............................................................................................ 11

Cortland Capital Market Services LLC ("Cortland"), as successor administrative agent for lenders under the Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank, and the lenders party thereto (as amended, the "Scotiabank Credit Agreement"), and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD and Ultra NB LLC (collectively, "Solus"), as lenders to PREPA under the Trade Finance Facility Agreement, dated as of July 20, 2012, among PREPA and Citibank, N.A., as predecessor to the existing lenders thereunder (as amended, the "Citibank Credit Agreement," together with the Scotiabank Credit Agreement, the "Fuel Lines"), respectfully submit this motion to compel the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), PREPA and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF," together with the Oversight Board and PREPA, the "Government Parties") to respond to discovery requests in connection with the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Dkt. No. 1235] (the "Settlement Motion").[2]

In particular, as discussed below, all of the Government Parties should be required to respond to discovery requests relating to *PREPA's Conditional Motion to Make an Offsetting Change in Base Rate Charges* dated July 3, 2019.

## **PRELIMINARY STATEMENT**

1.      Aside from the bondholders, the Fuel Line Lenders are the main financial creditors of PREPA.  Beginning in 2012, the Fuel Line Lenders extended $700 million in

---

[2]      Capitalized terms not defined herein have the same meanings as in the Settlement Motion.  The lenders under the Fuel Lines are referred to as the "Fuel Line Lenders" and the approximately $700 million in loans they made to PREPA are referred to as the "Fuel Line Advances."

working capital to permit PREPA to purchase the fuel it needed to operate its system.[3]  The Fuel

Line Advances were made on the express understanding of all parties — including PREPA, the

Fuel Line Lenders and PREPA's bondholders — that the advances were "Current Expenses"

under the Trust Agreement governing PREPA's bond debt and would be paid before any "net

revenues" of PREPA would be available to bondholders.

2.      Through the Settlement Motion, the Government Parties seek approval of millions

of dollars of pre-plan payments to PREPA's bondholders, including "Settlement Payments" of

approximately $11.2 million per month, to be funded by a "Settlement Charge" of one cent per

kilowatt hour to be "added" to customer bills.  *See* Settlement Motion ¶ 9.

3.      In seeking to justify the proposed Settlement Payments, which would be made

prior to approval of a plan of adjustment, the Government Parties represented to the Court that

non-settling creditors will *not* be prejudiced by those payments because, among other things,

they "are coming from **new—not existing—**charges."  *Id.* ¶ 68 (emphasis added).  In their

supplemental filing on July 2, 2019, the Government Parties again represented that the

"recoveries of other creditors of PREPA" would not be affected because PREPA would "only"

pay the bondholders "out of a **special, new charge**" on top of existing charges.  Dkt. No. 1425

¶ 103 (emphasis added).

4.      It now appears that those representations were untrue or misleading.  On July 3,

2019 — the day after its supplemental submission — PREPA filed with the Puerto Rico Energy

---

[3]      As of the date of their proof of claim, lenders under the Scotiabank Credit Agreement were also
owed $45,958,492.80 on account of accrued interest, as well as additional costs and expenses.  *See* Claim
No. 44378, Annex ¶ 7.  As of the date of Solus' proof of claim, lenders under the Citibank Credit
Agreement were also owed $11,075,323.70 on account of accrued interest, as well as additional costs and
expenses.  See Claim No. 44342, Annex ¶ 7 & Ex. A.  Additional interest, costs and expenses have since
accrued.

Bureau (the "Energy Bureau") a *Conditional Motion to Make an Offsetting Change in Base Rate Charges* (the "Rate Motion"). The Rate Motion, attached hereto as Exhibit A, seeks permission to *decrease* PREPA's base rate by one cent per kilowatt hour so as to "offset" the new one-cent Settlement Charge that will be used to fund the Settlement Payments. Thus, contrary to the Government Parties' repeated statements to the Court regarding the settlement's lack of impact on other creditors, the Settlement Payments will in fact be funded in full from *existing* PREPA revenues and thus out of the revenues that could otherwise fund payments to those other creditors.

5.      The Fuel Line Lenders did not learn about the Rate Motion until July 15, 2019. At that point, the Fuel Line Lenders immediately served a targeted document request and a deposition notice on each of the Government Parties in an effort to understand the rationale for and context of the Rate Motion and to determine whether it can be reconciled with the Government Parties' repeated assertions about the RSA. The Government Parties refused to comply with the discovery requests, contending that the Rate Motion is not "relevant or proportionate to the needs of the litigation related to the Rule 9019 Motion and Supplemental Memorandum."[4]

6.      The Fuel Line Lenders disagree: As part of the RSA, the Government Parties are seeking approval to make very significant payments outside of a plan and in contravention of the pre-petition priority scheme. In defending that aspect of the RSA, including under the "paramount interest of the creditors" factor in the case law, the Government Parties repeatedly stated — to this Court — that the payments would *not* be made from existing PREPA revenues and would not affect recoveries of other creditors. Settlement Motion ¶ 68. Those statements

---

[4]      *See, e.g.*, Ex. G at 9-10.

appear to have been inaccurate or at least misleading, and yet the Government Parties have

repeated the statements in multiple submissions rather than correcting them.  The Fuel Line

Lenders and other creditors are entitled to understand the Government Parties' decision to seek a

rate change to offset the Settlement Charge, and how that decision affects the grounds put

forward by the Government Parties themselves in defending their settlement.

7.    For those reasons and the reasons that follow, the Government Parties should be

compelled to respond to the Fuel Line Lenders' discovery requests.

## JURISDICTION AND VENUE

8.    The United States District Court for the District of Puerto Rico (the "<u>Court</u>") has

subject-matter jurisdiction over this matter pursuant to PROMESA § 306(a).  Venue is proper

subject to PROMESA § 307(a).

## RELEVANT BACKGROUND

**A.    The Fuel Line Lenders**

9.    Cortland is administrative agent for lenders under the Scotiabank Credit

Agreement, pursuant to which approximately $550,000,000 in principal is currently outstanding.

*See* Claim No. 44378, Annex ¶ 5.  Solus is a lender under both the Scotiabank Credit Agreement

and the Citibank Credit Agreement.  Approximately $146,000,000 in principal is currently

outstanding under the Citibank Credit Agreement.  *See* Claim No. 44342, Annex ¶ 5.

10.   The Trust Agreement dated as of January 1, 1974 (the "<u>Trust Agreement</u>") that

governs PREPA's bond debt creates a fund called the "General Fund" into which all Revenues

were to be deposited, and then requires that "moneys in the General Fund will be used first for

the payment of the Current Expenses of the System."[5]  The Fuel Line Lenders agreed to extend

credit to PREPA to finance working capital requirements on the express agreement and

representation by PREPA and its representatives that the Fuel Line Advances would be treated as

"Current Expenses" under the Trust Agreement and would be repaid prior to the bond debt under

the Trust Agreement.

11.     On a monthly basis, PREPA was directed by the Trust Agreement to transfer the

remaining *net* revenues, namely revenues *after* payment of Current Expenses, into a Sinking

Fund.  The revenues in those specified accounts, *and only those accounts*, are "subject to a

lien . . . in favor of the holders of the bonds."[6]  The form of Power Revenue Bond appended to

the Trust Agreement further states that PREPA "hereby promises to pay" the amount owed

"solely from the special fund provided therefor."[7]  The bondholders thus have no lien on

PREPA's revenues, and no right to payment, until the revenues are deposited in the Sinking

Fund after payment of Current Expenses, including the Fuel Lines.

**B.     The Settlement Motion**

12.     On May 10, 2019, the Government Parties filed the Settlement Motion, seeking

approval of the Definitive Restructuring Support Agreement that was attached as Schedule 1 to

Exhibit A to the Settlement Motion (the "RSA").  The RSA contemplates that settling

bondholders will receive, among other things, monthly cash payments (the "Settlement

Payments") upon approval of the Settlement Motion to be funded by a special charge of one cent

---

[5]      *See* Complaint, *Cortland Capital Mkt. Servs. LLC, et al.* v. *Financial Oversight & Mgmt. Bd. for Puerto Rico, et al.*, Dkt. No. 1, Adv. Pro. No. 19-00396 (July 9, 2019), Ex. 3 (Trust Agreement) §§ 503, 505.

[6]      *Id.* § 507(h).

[7]      *Id.* at 3.

per kilowatt hour that PREPA would add to its customers' bills (the "Settlement Charge").  RSA §§ 1(a)(c), 1(a)(cii), 2(d).  Based on the sales volume estimate in the May 2018 PREPA Fiscal Plan, the Settlement Charge would amount to approximately $11.2 million per month, or $100 million in the aggregate from October 1, 2019 through June 30, 2020.[8]

13.     In the Settlement Motion, the Government Parties asserted that the RSA could benefit objecting creditors[9] and would not prejudice them because the Settlement Charge would be paid from new revenues rather than existing revenues:  "Unsecured claimholders may also benefit, and are not prejudiced [by the RSA] for several reasons. . . .  [T]he payments to the Supporting Holders are coming from **new—not existing—**charges."  Settlement Motion ¶ 68 (emphasis added).  The Government Parties described the Settlement Charge as a "fixed charge **added** to PREPA's current rates."  *Id.* ¶ 9 (emphasis added).

14.     In the original Proposed Order accompanying the Settlement Motion, the Government Parties sought language describing the Settlement Charge as "additional":

> Commencing on July 1, 2019, PREPA shall implement, include in its customer bills, and collect an **additional charge** of 1 cent per kilowatt-hour (1 c/kWh), as part of its ordinary course collection of customer bills, as provided by and defined in the RSA as the "Settlement Charge."

Settlement Motion, Ex. A ¶ 8 (emphasis added).

15.     The Government Parties later submitted a new Proposed Order that does not include that language.  But the Government Parties still seek an order approving and directing PREPA to make the Settlement Payments.  *See* Dkt. No. 1361, Ex. A, ¶ 5 ("The Settlement

---

[8]     June 30, 2020 is the "Outside Date" for effectiveness of a Plan contemplated by the RSA.  RSA § 1(a)(lxx).

[9]     Under the case law, "the paramount interest of the creditors and a proper deference to their reasonable views" is an important factor in evaluating settlements.  *Jeffrey* v. *Desmond*, 70 F.3d 183, 185 (1st Cir. 1995).

Payments . . . provided for by the RSA are hereby approved and authorized.  PREPA shall make the Settlement Payments . . . to the extent required by the RSA.").

16.     The Government Parties' subsequent submissions and public filings again stated that the Settlement Charge would be *in addition* to existing rates, such that existing base rates would remain intact and available for payment of Current Expenses or other claims.  On June 27, 2019, the Oversight Board certified a new Fiscal Plan, which included an overview of PREPA's current rate structure that was approved by the Energy Bureau in 2017 and implemented in May 2019.[10]  The Fiscal Plan outlines the components of the approved rates — to which the one cent per kilowatt hour Settlement Charge would be added — with *no* change in the base rates.[11]

17.     In their July 2, 2019 supplemental brief, which was filed just one day before the Rate Motion, the Government Parties again stated that the Settlement Payments would be "funded from a charge of 1 cent per kilowatt hour *added* to PREPA's bills to customers."  Dkt. No. 1425 ¶ 32(b) (emphasis added).  In the same filing, the Government Parties defended the RSA on the basis that it "**only** pays the Supporting Holders out of a special, **new charge** that is being created pursuant to the RSA to deal with PREPA bond debt.  It therefore does not materially or directly affect[] the recoveries of other creditors of PREPA (none of whom could demand that PREPA raise its rates to pay their debt)."  *Id.* ¶ 103 (emphasis added).

18.     In short, the Government Parties have consistently and publicly asserted — including in multiple submissions to this Court — that the charges associated with the RSA, including the Settlement Charge, would be paid solely from the proceeds of the newly imposed charges, which would be *added to* existing base rates.

---

[10]     *See* Fiscal Plan, appended as Exhibit B, at 63.

[11]     *Id.*

C.    **The Rate Motion**

19.    On July 15, 2019, the Fuel Line Lenders learned that PREPA had filed the Rate

Motion with the Energy Bureau on July 3, 2019.

20.    In the Rate Motion, PREPA seeks approval from the Energy Bureau for a

reduction in base rates to "offset" the new "Settlement Charge" in the event the Settlement

Motion is granted.  It asks the Energy Bureau to approve in advance:

> that PREPA, in the event that the Title III court approves the aspects
> of the RSA before the court, may change the customer bill format
> promptly after such Title III court approval: (1) to reduce by 1 cent
> / kWh the applicable base rate charges billed on a kWh basis; (2) to
> add a 1 cent / kWh base rate charge to be identified as "Settlement
> Charge" in English and "Cargo por Transacción" in Spanish; so that
> (3) **the two changes (the base rate reduction and the Settlement
> Charge addition) offset and have no net impact on customer
> bills**.[12]

21.    Thus, although the Settlement Payments may be paid from the Settlement Charge

as contemplated, the Rate Motion seeks to offset the Settlement Charge in full through a

reduction of PREPA's base rate, so that overall rates remain the same.  In other words, despite

the multiple representations that the Settlement Payments would not affect other creditors or

come from *existing* revenue sources, the Government Parties have taken steps to ensure that non-

settling creditors could end up funding the *entirety* of the Settlement Payments through the

reduction in PREPA's base rate.  And again, the Rate Motion was filed just one day after the

Government Parties stated in their supplemental brief that payments to bondholders would come

"only" from "a special, new charge."[13]

---

[12]    Ex. A ¶ 11 (emphasis added).

[13]    Dkt. No. 1425 ¶ 103.

### D.    The Present Discovery Dispute

22.     On July 15, 2019, the same day that the Fuel Lenders first learned of the Rate

Motion, they served a document request (the "Document Request") and a Rule 30(b)(6)

deposition notice (the "30(b)(6) Notices") on each of the Government Parties seeking documents

and testimony concerning the Rate Motion.[14]  The Document Request seeks one category of

documents:

> All Documents related to the Rate Motion and the relief sought
> therein, including PREPA's request for "the Energy Bureau's
> advance approval, that PREPA, in the event that the Title III court
> approves the aspects of the RSA before the court, may change the
> customer bill format promptly after such Title III court approval: (1)
> to reduce by 1 cent / kWh the applicable base rate charges billed on
> a kWh basis; (2) to add a 1 cent / kWh base rate charge to be
> identified as 'Settlement Charge' in English and 'Cargo por
> Transacción' in Spanish; so that (3) the two changes (the base rate
> reduction and the Settlement Charge addition) offset and have no
> net impact on customer bills."[15]

23.     The 30(b)(6) Notices seek testimony from each Government Party concerning

(1) the documents produced in response to the Document Request, and (2) "The Rate Motion,

including: (i) the timing of the filing, (ii) the relief sought in the Rate Motion, and

(iii) Communications by [the Government Party] regarding this Examination Topic"

("Topic 2").[16]

---

[14]     The Fuel Line Lenders' document requests are attached as Exhibit C; the Fuel Line Lenders'
30(b)(6) deposition notice to the Oversight Board is attached as Exhibit D; the Fuel Line Lenders'
30(b)(6) deposition notice to PREPA is attached as Exhibit E; and the Fuel Line Lenders' 30(b)(6)
deposition notice to AAFAF is attached as Exhibit F.

[15]     Ex. C at 9.

[16]     Ex. D, Sched. B; Ex. E, Sched. B.; Ex. F, Sched. B.

24.     On July 19, 2019, the Government Parties served responses and objections to the

Fuel Line Lenders' requests, objecting in wholesale fashion on grounds of relevance.[17]  While

the Fuel Line Lenders are prepared to meet and confer regarding targeted search criteria, the

Government Parties declined to search for or produce anything.  Thus:

- In response to the Document Request, each of the Government Parties
  stated that it "objects to this request on the ground that it does not seek
  information that is relevant or proportionate to the needs of the litigation
  related to the Rule 9019 Motion and Supplemental Memorandum," and
  then referred to the revised Proposed Order.  In addition, each
  Government Party referred the Fuel Line Lenders to publicly filed
  documents, but did not agree to search for or produce any documents in
  response to the Document Request.[18]

- In response to the 30(b)(6) Notices, PREPA and AAFAF again referred to
  the revised Proposed Order and stated that Topic 2 "does not seek
  information that is relevant or reasonably calculated to lead to the
  discovery of admissible evidence."[19]

25.     The Government Parties have also taken the position that the Document Request

and 30(b)(6) Notices were untimely in light of the July 5, 2019 deadline to serve any additional

document requests and deposition notices.

26.     On July 22, 2019, the parties met and conferred telephonically, and counsel for

the Government Parties stated that they would conduct further diligence relating to the requests.

The Fuel Line Lenders have followed up multiple times asking for an update.  As of today,

nearly three weeks after service the relevant discovery requests, the Government Parties still

have not provided any further response, thus requiring this filing.

---

[17]     The Oversight Board's responses and objections to the Document Request are attached as
Exhibit G; PREPA's and AAFAF's responses and objections to the Document Request are attached as
Exhibit H; PREPA's responses and objections to the 30(b)(6) Notice are attached as Exhibit I; and
AAFAF's responses and objections to the 30(b)(6) Notice are attached as Exhibit J.

[18]     Ex. G at 9-10; *see also* Ex. H at 11-13 (providing nearly identical response).

[19]     See Ex. I at 10-11; Ex. J at 10-11.

## ARGUMENT

**A.    The requested discovery regarding the Rate Motion is relevant.**

27.    Parties may obtain discovery regarding any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); FED. R. BANKR. P. 7026. This broad mandate encompasses any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *See Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 351 (1978); *see also S.E.C.* v. *Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("The Supreme Court has long recognized that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery." (citing *Hickman* v. *Taylor*, 329 U.S. 495, 507 (1947))); *Donovan* v. *Prestamos Presto Puerto Rico, Inc.*, 91 F.R.D. 222, 223 (D.P.R. 1981) ("The basic philosophy of the present federal procedure is that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged."). As for deposition discovery, Rule 30(a)(1) provides that a party may "depose *any person*," and a party must establish "extraordinary circumstances" to avoid participation in a Rule 30 deposition. *Autoridad de Carreteras y Transportacion* v. *Transcore Atlantic, Inc.*, 319 F.R.D. 422, 438-39 (D.P.R. 2016).

28.    The Government Parties have asked the Court to approve and direct payment by PREPA of millions of dollars per month to bondholders in advance of a plan of adjustment. The Settlement Payments, therefore, are squarely at issue as the Court considers the Settlement Motion. In determining whether the RSA and the payments should be approved, the Court must consider, *inter alia*, "the paramount interest of the creditors and a proper deference to their reasonable views in the premise." *Jeffrey* v. *Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). Where a proposed compromise would provide "little to no benefit to creditors," or would harm non-

-11-

settling creditors, that factor (among others) weighs against approval. *In re C.R. Stone Concrete Contractors, Inc.*, 346 B.R. 32, 51 (Bankr. D. Mass. 2006) (denying approval of proposed settlement).

29.    As explained above, the Government Parties have themselves sought to defend the Settlement Payments on the basis that they would not deplete PREPA's existing assets or revenues and instead would be funded only by an *additional* charge.  But the relief sought from the Energy Bureau in the Rate Motion is inconsistent with those prior statements, undermining the Government Parties' arguments about prejudice and the interests of non-settling creditors.  If PREPA intends, in effect, to make millions of dollars of monthly payments out of existing revenues, rather than out of an additional charge, then approval of the RSA would result in an immediate, pre-plan reduction in the assets available to other creditors.

30.    In light of the Government Parties' own submissions and assertions, the Fuel Line Lenders are entitled to discovery concerning the Rate Motion, which may include communications with the Energy Bureau, non-privileged communications among parties to the RSA, and PREPA documents and testimony.  This discovery can be expected to shed light on: who was responsible for deciding to file the Rate Motion; the rationale for the relief requested; why the Rate Motion was filed when it was; whether and when the RSA Parties knew about the Rate Motion and their responses to that motion; as well as whatever analysis the Government Parties have done concerning the impact that the new payment structure will have on PREPA creditors.  Beyond all this, the discovery will shed light on whether and why the Government Parties made statements in filings regarding the RSA that appear to be at odds with their own contemporaneous actions and statements to the Energy Bureau.  Such discovery clearly falls within the "liberal discovery of relevant information" permitted by Rule 26, and is especially

appropriate given the Government Parties' own submissions as quoted above.  *See Irizzary-Santiago* v. *Essilor Indus.*, 293 F.R.D. 100, 104 (D.P.R. 2013) ("Defendants are free to challenge the admissibility of the documents through a pretrial motion *in limine* . . . but at the discovery stage the Court declines to determine the potential relevance of the [disputed] documents.").

### B.    Good cause exists for filing this motion at this time.

31.     The Fuel Line Lenders learned of the Rate Motion on July 15, 2019, ten days after the deadline to serve document requests and deposition notices, and one day before the deadline for motions to compel under the existing schedule.[20]  Upon learning about the Rate Motion, the Fuel Line Lenders acted immediately to gather more information, serving the Document Requests and 30(b)(6) Notices *the same day*.  The Government Parties served their responses and objections on July 19, 2019.  The parties met and conferred on July 22, 2019 and the Government Parties committed to provide a further response, but despite multiple inquiries, that has not occurred as of this filing.  Accordingly, good cause exists for service of the Document Requests and 30(b)(6) Notices after the July 5, 2019 deadline to serve discovery requests, and for the filing of this motion at this time.[21]

---

[20]     *See Revised Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of PREPA and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]* [Dkt. No. 1366] at 2; *Order (A) Granting the Urgent Motion in Limine to Exclude Testimony Offered by the Energy Non-Profits, the Environmental Non-Profits, and SOMOS, (B) Granting in Part the Urgent Motion in Limine to Exclude Testimony Offered by UTIER, SREAEE, and Windmar, and (C) Modifying the Current Briefing Schedule Pertaining to Discovery Motions* [Dkt. No. 1457] ("Discovery Motion Order") at 3.

[21]     *See* Discovery Motion Order at 3 ("Discovery Motions or motions to quash filed after July 16, 2019, must be accompanied by a showing of good cause.").

## **RESERVATION OF RIGHTS**

32.     The Fuel Line Lenders reserve all rights to amend or supplement this motion and to file additional motions to compel production of documents or other information as necessary in light of developments.

## **CONCLUSION**

33.     For the foregoing reasons, the Fuel Line Lenders respectfully request that the Court enter the Proposed Order appended hereto.  Specifically, the Government Parties should be compelled to produce documents and to provide one or more deposition witnesses pursuant to Federal Rule 30(b)(6) relating to the Rate Motion.

### **Certification Pursuant to Fed. R. Civ. P. 37(a)(1)**

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, I hereby certify that on July 22, 2019, counsel for the Fuel Line Lenders conferred in good faith with counsel for the Oversight Board, AAFAF and PREPA via telephone, and engaged in further discussion via email.  After conferring about the subject of this motion, the parties have not been able to agree on a resolution as of the date of this filing.

Dated:  August 2, 2019

Respectfully submitted,

 _/s/ Nayuan Zouairabani_
Nayuan Zouairabani
USDC-PR No. 226411
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico  00918
P.O. Box 364225
San Juan, Puerto Rico  00936-4225
Telephone:  (787) 250-5604
Facsimile:  (787) 759-9225
Email:  nzt@mcvpr.com

 _/s/ Emil A. Kleinhaus_
Richard G. Mason (admitted _pro hac vice_)
Amy R. Wolf (admitted _pro hac vice_)
John F. Lynch (admitted _pro hac vice_)
Emil A. Kleinhaus (admitted _pro hac vice_)
Angela K. Herring (admitted _pro hac vice_)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  rgmason@wlrk.com
           arwolf@wlrk.com
           jlynch@wlrk.com
           eakleinhaus@wlrk.com
           akherring@wlrk.com

_Attorneys for Cortland Capital Market
Services LLC, as Administrative Agent_

_/s/ Jose L. Ramirez-Coll_
Jose L. Ramirez-Coll
USDC-PR No. 221702
ANTONETTI, MONTALVO
& RAMIREZ-COLL
1225 Ponce de Leon Avenue
San Juan, Puerto Rico  00907
Telephone:  (787) 977-0303
Facsimile:  (787) 977-0323
Email:  jramirez@amrclaw.com

_/s/ Bryce L. Friedman_
Bryce L. Friedman (admitted _pro hac vice_)
Nicholas Baker (admitted _pro hac vice_)
Sarah E. Phillips (admitted _pro hac vice_)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York  10017
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502
Email:  bfriedman@stblaw.com
           nbaker@stblaw.com
           sarah.phillips@stblaw.com

_Attorneys for SOLA LTD, Solus Opportunities
Fund 5 LP, Ultra Master LTD and Ultra NB
LLC_

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------- x

*In re*                                          :
                                                 :
                                                 :    PROMESA
THE FINANCIAL OVERSIGHT AND                      :    Title III
MANAGEMENT BOARD FOR PUERTO RICO,                :
                                                 :
    as representative of                         :    Case No. 17-BK-3283 (LTS)
                                                 :
THE COMMONWEALTH OF PUERTO RICO,                 :    (Jointly Administered)
*et al.*,[1]                                     :
                                                 :
        Debtors.                                 :
                                                 :
------------------------------------------------------- x
                                                 :
*In re*                                          :
                                                 :    PROMESA
THE FINANCIAL OVERSIGHT AND                      :    Title III
MANAGEMENT BOARD FOR PUERTO RICO,                :
                                                 :
    as representative of                         :    Case No. 17-BK-04780 (LTS)
                                                 :
PUERTO RICO ELECTRIC POWER                       :
AUTHORITY (PREPA),                               :
                                                 :
        Debtor.                                  :
------------------------------------------------------- x

## [PROPOSED] ORDER GRANTING URGENT OMNIBUS MOTION OF CORTLAND CAPITAL MARKET SERVICES LLC, AS ADMINISTRATIVE AGENT, AND SOLUS TO COMPEL DISCOVERY RESPONSES IN CONNECTION WITH PREPA RSA SETTLEMENT MOTION

---

[1]     The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:  8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747).

Upon consideration of the *Urgent Omnibus Motion of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion* (the "Motion"),[2] filed on August 2, 2019, and it appearing that (i) the Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a); (ii) venue of this proceeding and the Motion is proper under 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a); (iii) notice of the Motion was adequate and proper under the circumstances and no further or other notice need be given; and after due deliberation and sufficient cause appearing therefor, the Court concludes that Cortland Capital Market Services LLC, as administrative agent, SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD and Ultra NB LLC have satisfied the requirements for an order compelling production of documents and deposition testimony pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rules 7026 and 7037 of the Federal Rules of Bankruptcy Procedure and 48 U.S.C. § 2170,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Oversight Board, AAFAF and PREPA (the "Government Parties") shall each, by no later than August ___, 2019:  (a) produce all non-privileged documents responsive to the Document Request set forth in Exhibit C to the Motion; and (b) prepare and make available for deposition a witness or witnesses to testify concerning the examination topics set forth in Exhibits D, E and F to the Motion.  The parties shall meet and confer regarding search criteria to applied by the Government Parties in responding to the Document Request.

---

[2]      Capitalized terms not defined have the meanings given in the Motion.

Dated: _____, 2019

_____
Honorable Judith G. Dein
United States Magistrate Judge