RECEIVED & FILED
2019 AUG -9 PM 2:12
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN P.R.

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

   Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION (COFINA),

   Debtor.

PROMESA
Title III

No. 17 BK 3284-LTS

------------------------------------------------------------x

[Further Response to Docket#4417 in Accordance with Docket#7113 –
Relating to Claim No. 10701]

**RESPONSE OF INDIVIDUAL COFINA BONDHOLDER (CLAIM NO. 10701) TO
COFINA SUPPLEMENT TO ITS "THIRTEENTH OMNIBUS OBJECTION (NON-
SUBSTANTIVE) TO DUPLICATE CLAIMS"**

August 8, 2019

**Table of Contents**

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| A. Response to FOMB's Argument of Lack of Jurisdiction. | 1 |
| B. FOMB Fails to Answer the Points that PROMESA Cannot Constitutionally Be Applied to Retroactively Abrogate My Property and Other Rights, and that My Constitutional Claims, Including My Takings Clause Claims, Cannot Be Released or Discharged Under the Plan. | 2 |
|     1. Retroactively | 2 |
|     2. Takings Clause | 3 |
| C. FOMB's Response to My Other Constitutional and Statutory Claims Side-Steps the Authorities Supporting Those Claims. | 3 |
|     1. Contracts Clause | 3 |
|     2. Privileges and Immunities | 3 |
|     3. Equal Protection | 5 |
|     4. Due Process, First Amendment and Public Right of Access to Court Proceedings | 5 |
|     5. Appointments Clause | 7 |
|     6. PROMESA | 7 |
| D. FOMB's "*a fait accompli*" Response Is No Answer to My Specification of Some of the Consequences Flowing from Unreleasable Violations of the U.S. Constitution. | 7 |
|     1. FOMB's misrepresentation of tax matters. | 8 |
|     2. FOMB's misrepresentation of the rationale for discrimination. | 10 |
|     3. FOMB's misdepiction of Bonistas | 11 |
|     4. FOMB's misrepresentation of what individual investors in the 50 states would receive | 12 |
|     5. Special benefits for negotiators of the Plan in the confidential process | 13 |
| CONCLUSION | 15 |

APPENDIX

[Note: Citations in this Response to the Appendix that accompanied my 5/29/2019 submission (Docket #7211) are in the form of: "App.___" or "Docket#7211-page-___-of-___"; pages 0001 to 0144 are in Docket#7211]

[Citations in this Response to the Supplemental Appendix that accompanies this submission are in the form of "App.II- ___"; pages 0145 to 0208 are in accompanying Appendix II]

## TABLE OF AUTHORITIES

Page

**Cases**

*American United Mut. Life* v. *City of Avon Park,*
311 U.S. 138 (1940) .................................................................................................. 15

*Barraford* v. *T&N Ltd.,*
778 F.3d 258 (1st Cir. 2015) ....................................................................................... 3

*Calder* v. *Bull,*
3 Dall. 386 (1798) ..................................................................................................... 14

*Eastern Enterprises* v. *Appel,*
524 U.S. 498 (1998) ...................................................................................... 2, 3, 14, 15

*Griggs* v. *Provident Consumer Discount Co.,*
459 U.S. 56 (1982) ...................................................................................................... 2

*Hicklin* v. *Orbeck,*
437 U.S. 518 (1978) .................................................................................................... 3

*Hodel* v. *Virginia Surface Mining,*
452 U.S. 264 (1981) .................................................................................................... 5

*In re City of Detroit,*
524 B.R. 147 (Bankr. E.D. Mich. 2014) ................................................................. 2, 3

*In re Pacific Lumber Co.,*
584 F.3d 229 (5th Cir. 2009) ...................................................................................... 6

*Louisville Joint Stock Land Bank* v. *Radford,*
295 U.S. 555 (1935) .................................................................................................... 2

*Mullaney* v. *Anderson,*
342 U.S. 415 (1952) .................................................................................................... 3

*Neblett* v. *Carpenter,*
305 U.S. 297 (1938) .................................................................................................... 5

*Saenz* v. *Roe,*
526 U.S. 489 (1999) ................................................................................................. 3, 5

*Service Emp. Int. Union, Loc. 82* v. *Dist. of Col.,*
608 F. Supp. 1434 (D.D.C. 1985) ............................................................................... 5

*Shapiro* v. *Thompson,*
394 U.S. 618 (1969) .................................................................................................... 5

*Toomer* v. *Witsell,*
334 U.S. 385 (1948) .................................................................................................... 4

*U.S.* v. *Brooks,*
145 F.3d 446 (1st Cir. 1998) ....................................................................................... 2

Case:17-03283-LTS Doc#:8427 Filed:08/09/19 Entered:08/09/19 15:52:22 Desc: Main
Document Page 5 of 20

*U.S.* v. *Kras*,
   409 U.S. 434 (1973) ................................................................................................................ 5

*United States Trust* v. *New Jersey*,
   431 U.S. 1 (1977) .................................................................................................................... 3

*United States* v. *Security Industrial Bank*,
   459 U.S. 70 (1982) ....................................................................................................... 2, 13-14

*United Student Aid Funds, Inc.* v. *Espinosa*,
   559 U.S. 260 (2010) ............................................................................................................ 5-6

*Wood* v. *United States (In re Wood)*,
   866 F.2d 1367 (11th Cir. 1989) .............................................................................................. 5

**Rules and Statutes**

26 CFR §1.1001-3(e)(2)(ii) ........................................................................................................... 9

18 U.S.C. § 3731 ........................................................................................................................... 2

48 U.S.C. § 737 ............................................................................................................................. 4

48 U.S.C. § 2126(e), § 106(e) of PROMESA .............................................................................. 7

48 U.S.C. § 2141(b)(1)(N) ........................................................................................................... 7

Fed. R. App. P. 4(a)(4) .................................................................................................................. 2

Fed. R. Civ. P. 59 .......................................................................................................................... 2

## PRELIMINARY STATEMENT

I submit this response to COFINA's Supplement (#7958) to its "Thirteenth Omnibus Objection (Non-Substantive) to Duplicate Claims." COFINA's Supplement, submitted by FOMB as COFINA's representative, responds to my submission (#7211) made in response to FOMB's request at the April 24, 2019 hearing that I provide additional information concerning the claims asserted in Claim No. 10701 (#6538-Tr.-178-79).

### A. Response to FOMB's Argument of Lack of Jurisdiction.

*First*, FOMB ignores that what is before the Court is *not* an application for allowance of a claim by me—I am *responding* to COFINA's "Thirteenth Omnibus Objection (Non-Substantive) to Duplicate Claims" (Docket#4417). COFINA is seeking to disallow my claim. If FOMB believes there is no jurisdiction, COFINA should withdraw its objection.

*Second*, while FOMB casts the alleged lack of jurisdiction as self-obvious ("black-letter law"), FOMB does not explain why FOMB did not raise lack of jurisdiction as an issue at or before the April 24, 2019 hearing. My Notice of Appeal was filed 2/19/19 (Docket#5166), over two months before the April 24, 2019 hearing. FOMB proceeded, on April 17, 2019, to file a "Reply" "In Support of the Thirteenth Omnibus Objection (Non-Substantive) To Duplicate Claims" (Docket#6367), but did *not* argue in that Reply that there was a lack of jurisdiction.

Furthermore, I expressly referenced the pendency of my appeal at the April 24, 2019 hearing (Docket#6538-Tr.-171:17-20,176:12-19), and suggested that any issues of disallowance of my claim be deferred until after the First Circuit rules on my appeal. *Id.* In response, FOMB did *not* argue there was a lack of jurisdiction and thus the Court was disabled from acting on its application to disallow my claim. Rather, Mr. Rosen for FOMB argued:

> I don't think the pendency of the appeal *has anything to do with* respect to the existence of the 13th Omnibus Objection. *I think they're totally distinct issues and can be handled at this time.* (Docket#6538-Tr.-177:7-10, emphasis added).

The Court thereupon ruled "I deny Mr. Hein's request that I hold that determination pending the determination of his appeal." (Docket#6538-Tr.-178:4-6).

The fact that FOMB—now arguing lack of jurisdiction—has effectively reversed the position it took at the April 24, 2019 hearing, at the very least raises a question as to the validity of FOMB's newly-asserted position that jurisdiction is lacking.

*Third*, the cases FOMB cites are inapposite to the situation here. *Griggs* (COFINA Br. 8) dealt with the interrelationship between Fed. R. Civ. P. 59 (motion for a new trial or to alter or amend a judgment) and Fed. R. App. P. 4(a)(4); the rule set out in *Griggs* was later modified by the 1993 Amendment to Rule 4(a)(4). *U.S. v. Brooks* (COFINA Br. 8), concerned 18 U.S.C. § 3731 and has no apparent bearing on the issues at hand here.

**B.    FOMB Fails to Answer the Points that PROMESA Cannot Constitutionally Be Applied to Retroactively Abrogate My Property and Other Rights, and that My Constitutional Claims, Including My Takings Clause Claims, Cannot Be Released or Discharged Under the Plan.**

In Docket#7211(Points II.A & II.E), I showed that PROMESA cannot be applied to retroactively abrogate property and other rights arising from bonds purchased pre-PROMESA, *citing, e.g., United States v. Security Industrial Bank*, and *Louisville Joint Stock Land Bank v. Radford*. *See also Eastern Enterprises v. Appel*, 524 U.S. 498 (1998) (discussed in Section D.5, below); Docket#4585-page-24-to-25,29-of-43; Docket#4911-page-4-of-8; #5041-2-page-19-to-21-of-22. I also showed that my Takings claims, including claims for just compensation, as well as my other rights and claims under the Constitution, whether as against the debtor or, *e.g.*, as against the Commonwealth, cannot be released or discharged under the Plan, *citing In re City of Detroit*, 524 B.R. 147, 267-70 (Bankr. E.D. Mich. 2014).

    **1.    Retroactively**. In arguing that any liabilities owed to me as a result of Constitutional and statutory claims have been discharged (COFINA Br. 20), FOMB simply ignores the point that PROMESA cannot retroactively abrogate rights arising from pre-PROMESA bond purchases. The U.S. Constitution prevails over a statutory enactment, such as PROMESA, which cannot be applied retroactively to abrogate pre-PROMESA rights. *See* authority discussed above, in #7211 II.A & II.E, and in Section D.5 below. As *Eastern Enterprises* notes, "[r]etroactivity is generally disfavored in the law." 524 U.S. at 532-33.

*Barraford* (COFINA Br. 20), is wholly inapposite. Not only does that case not address the issue at hand here (whether a bankruptcy regime can be applied retroactively to abrogate rights that pre-date the legislature's enactment of the regime). But that case actually involved a Chapter 11 plan that by its terms did *not* discharge the debtor's liabilities for the claims at issue.

**2. Takings Clause.** FOMB also does not answer my argument based on *City of Detroit. Compare* COFINA Br. 13. *City of Detroit*—citing Supreme Court opinions I have relied upon—held that a plan that impaired a constitutional claim for just compensation would violate the Fifth Amendment. Accordingly, Takings Clause claims—including by property owners with still-pending suits—were excepted from discharge to avoid a constitutional violation. This Court's opinion (#5053), which FOMB cites, *likewise* does not address this aspect of *Detroit*. And *City of Detroit* was a Chapter 9 case; the issue of retroactive application of a new bankruptcy regime (here, PROMESA) to abrogate pre-PROMESA rights was not presented. This case is thus *a fortiori* from *City of Detroit*.

**C. FOMB's Response to My Other Constitutional and Statutory Claims Side-Steps the Authorities Supporting Those Claims.**

**1. Contracts Clause.** FOMB's response on the Contracts Clause ignores the controlling Supreme Court case I relied upon, *United States Trust* v. *New Jersey. Compare* #7211 Point II.B and #4585-page-22-to-24-of-43 with COFINA Br. 14-15. FOMB cites two Chapter 9 cases (COFINA Br. 14n.8), but those cases involved a pre-existing bankruptcy regime of general applicability (Chapter 9), whereas here it is sought to retroactively abrogate prior rights of pre-PROMESA purchasers arising from "transactions long closed" (*Eastern Enterprises*, 524 U.S. at 548, Kennedy, J. concurring, discussed in Section D.5, below). Neither of these Chapter 9 cases involved a newly enacted bankruptcy regime sought to be used to retroactively abrogate "transactions long closed."

**2. Privileges and Immunities.** FOMB ignores *Mullaney* v. *Anderson*, 342 U.S. 415 & 419-20 n.2 (1952), *Hicklin* v. *Orbeck*, 437 U.S. 518 (1978) and *Saenz* v. *Roe*, 526 U.S. 489 (1999) (discussed #4595-page-6-to-10-of-21) which are controlling. Instead,

FOMB relies on language it takes out-of-context from an earlier case, *Toomer*, to suggest that preferences for Puerto Rico residents are okay if there are valid independent reasons for the disparate treatment. COFINA Br. 16. But *Toomer*, too, supports my position. *Toomer invalidated* the preferences for South Carolina residents (a lower license fee for shrimp boats owned by nonresidents than those owned by residents) there at issue (334 U.S. at 389, 396-403, 406-07) and made clear that the purpose of the privileges and immunities clause "is to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed" (*id.* at 398). As noted, individual retail purchasers in the 50 states can hardly be said to constitute "a peculiar source of the evil," any more than Puerto Rico resident purchasers who received the unconstitutional preference. Docket#4595-page-8-of-21.

Furthermore, a specific statute, 48 U.S.C. § 737, was enacted to ensure that non-residents of Puerto Rico are not discriminated against. Docket#4595-page-6-to-7-of-21.

The supposed justifications for discrimination here are not "valid independent reasons" (COFINA Br. 16) but rather are illegitimate and contrived.

- Mainland investors not subject to federal taxation (*e.g.*, retirement accounts) were ***not*** offered the preferential treatment. Docket#6283-page-6-to-7-of-13. If the true purpose of the Puerto Rico preference was to help mainland investors by enhancing their ability to receive tax-exempt bonds, the preference would have been extended to mainland holders (such as retirement accounts) not subject to federal tax.
- The premise of FOMB's justification—that there (supposedly) was only a "limited quantity of tax-exempt bonds" that could be "issued pursuant to the COFINA Plan" (COFINA Br. 16)—is now shown to be false based on information withheld prior to Plan confirmation. This matter is the subject of targeted discovery requests that FOMB has refused to answer. *See* sections D.1 and D.2, below. FOMB's refusal to disclose the documents that would address whether FOMB's stated rationale for the discrimination is false should result in an adverse inference against FOMB.

    **3.**  **Equal Protection**. FOMB ignores *Shapiro* v. *Thompson*, 394 U.S. 618 (1969) and *Saenz, supra* (discussed Docket#4595-page-10-of-21), which expressly reject distinctions based on residence. Instead, FOMB cites inapposite cases: *U.S.* v. *Kras* (COFINA Br. 16) involved no issue of discrimination based on residence; it dealt with whether a $50 filing fee was unconstitutional (the Supreme Court upheld the constitutionality of the filing fee since "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy." 409 U.S. at 446). *Wood* (COFINA Br. 16 n.9) addressed an equal protection challenge to a Bankruptcy Code distinction between debtors seeking discharge of federal tax liabilities (866 F.2d at 1369)—it too does not suggest it is okay for a Plan to discriminate based on residence. And *Serv. Employees* (COFINA Br. 16 n.9) invalidated D.C.'s higher bond requirement on nonresidents, invoking the Commerce Clause (608 F. Supp. at 1439-40).

    **4.**  **Due Process, First Amendment and Public Right of Access to Court Proceedings**. FOMB's response ignores my arguments about the unconstitutional use of PROMESA to retroactively abrogate bondholder rights. *See* #7211 II.E. & II.A and papers cited therein. Contrary to FOMB's assertion (COFINA Br. 17), the Due Process violations—referenced in #7211 Point II, as well as in my prior papers—are both substantive and procedural.

  FOMB responds only on procedural due process, citing 4 off-point cases (COFINA Br. 17-18): **[1]** *Hodel* concerned procedures applicable to immediate cessation orders against surface coal mining operations to protect against imminent dangers (452 U.S. at 299-301); **[2]** *Neblett* arose from review of the judgment roll of a California Supreme Court decision affirming an order of rehabilitation of a California insurance company; the U.S. Supreme Court concluded that, on account of the state of the record before it, petitioners had not shown they were disadvantaged (305 U.S. at 303-305); **[3]** *United Student Aid Funds* addressed whether an order confirming a Chapter 13 plan could be set aside under Rule 60(a)(4)—requiring that "the judgment is void"—at the behest of a student loan debt creditor who "received notice of, but did not object to, the plan, and failed to file an appeal" of the plan confirmation (559 U.S. at 264). That case involves the very different considerations required for relief under Rule 60(b)(4), is

factually off point, and did not present an attempt to retroactively abrogate rights under a newly enacted bankruptcy regime. **[4]** *Pacific Lumber*, a Chapter 11 case, stated that secured creditors *do* have property rights protected by the Taking and Due Process clauses, in explaining why the Court ***rejected*** equitable mootness as a bar to review (584 F.3d at 243-44 & n.18 & 19); *a fortiori* here where FOMB seeks to apply PROMESA retroactively.

As to procedure, FOMB argues that individual COFINA bondholders, like me, were able to file and press objections. However, FOMB does not dispute that even individual COFINA bondholders who had timely filed proofs of claims—specifying in Item 3 "where notices to the creditor should be sent"—**(i)** were **not** sent a notice inviting them to participate in the confidential mediation and informing them that the mediation could result in a plan that would impact on their property and other rights; **(ii)** were **not** provided information about what was going on in the confidential process as it unfolded; and **(iii)** were **not** provided copies of various iterations of the COFINA Plan Support Agreement, Plan, disclosure statement and exhibits thereto as such documents were exchanged among participants in the confidential process. Despite the conclusory statement that the confidential mediation was "open to all interested participants on terms announced by the Mediation Team" (COFINA Br. 18), conspicuously absent is any citation to the record to an actual advance notice sent to all COFINA bondholders. Footnote 13 in #5053, which FOMB cites, is appended to text citing #560, which on its face states the mediation "will proceed on a confidential basis, and will not be open to the public or media"—by definition, this runs afoul of the First Amendment public right of access. Only after terms were agreed among participants were nonparticipants mailed a flash drive that included the then current version of the Plan and the final disclosure statement, a mailing that was not received by me and other individual COFINA bondholders until the eve of the Christmas-New Year's holidays (*see* Docket #4585-page-27-to-28-of-43; #4595-page-15-to-16-of-21&n.6).

Finally, FOMB ignores that plan proponents initially filed bare bones moving papers, holding back their factual and legal arguments for voluminous on-the-eve-of-confirmation-hearing supporting memoranda, reply memoranda and factual submissions (*e.g.*, #4663, #4664,

-6-

#4665, #4756, #4757, #4758, #4759, #4760, *see also* #4652, #4656, #4660, #4662, #4667, #4669, #4670, *contrast* #4686). And these belated filings were not served on individual COFINA bondholders—not even individual bondholders who had filed proofs of claim and objections to confirmation. *See, e.g.*, #7211 II.D; Docket #4585-page-27-to-28-of-43; #4595-page-15-to-16-of-21&n.6, *compare* #4780 & Ex.B.

     **5.**     **Appointments Clause**. I stand on my prior positions. The Supreme Court will be hearing the Appointments Clause issue, currently scheduled for October 15, 2019.

FOMB argues (COFINA Br. 19) that the First Circuit decision is "binding precedent" that "preclude[s]" my claim. But two weeks later, FOMB submitted a merits brief in the Supreme Court seeking to have the First Circuit judgment "reversed" (7/25/19 FOMB Br. 57). My claim should not be disallowed based upon a decision FOMB is itself urging be reversed.

     **6.**     **PROMESA**. I stand on my prior positions, but add this response to FOMB's argument that PROMESA § 106(e) deprives any district court of jurisdiction to consider my contention that 48 U.S.C. 2141(b)(1)(N) has been violated (COFINA Br. 20): FOMB simply highlights one of the reasons why, under the U.S. Constitution, PROMESA cannot be applied retroactively to abrogate COFINA bondholder property and other rights.

     **D.**     **FOMB's "*a fait accompli*" Response Is No Answer to My Specification of Some of the Consequences Flowing from Unreleasable Violations of the U.S. Constitution.**

The Constitutional claims cannot be released or discharged under the Plan (as discussed above and in prior papers), and thus FOMB's *a fait accompli* defense cannot preclude examination of the substance of issues I have raised. Further, it is no answer for FOMB to say issues I am raising should have been raised as an objection to the disclosure statement, particularly when information—such as FOMB's *post*-confirmation written acknowledgment that on December 14, 2018, well before confirmation, COFINA had requested a private closing agreement with the IRS (as discussed below)—was concealed. In any event, these matters are relevant to FOMB's current objection to my claim.

1. **FOMB's misrepresentation of tax matters.**

    a. **Misrepresentation that a private letter ruling "has not been submitted."**
FOMB does not dispute that **(i)** on *December 14, 2018*—well before Confirmation and while the notices for the confirmation hearing were literally in the mail to bondholders (#4585-page-27-to-28-of-43)—COFINA requested a private letter ruling or closing agreement with the IRS (Docket#6283-2-page-3-of-24, Recital "E"; #7211-page-7-of-24), but **(ii)** there was *no* disclosure of that fact prior to Plan Confirmation. To the contrary, the disclosure statement mailed to bondholders stated that "a private letter ruling has *not* been submitted to the Internal Revenue Service (the "IRS") and no written or other formal determination has been issued by the IRS" (Docket#4364-page-232-of-263, emphasis added).

    FOMB cites to a different portion of a preliminary version of the disclosure statement (COFINA Br. 9), *citing* #4299, not the final thereafter mailed (#4364). But FOMB cannot dispute that the version mailed to bondholders contained the above quoted statement—a statement which was untrue when I (and other) bondholders received the disclosure statement on December 17, 2018 and which was also untrue at the time of the confirmation hearing.

    Although the disclosure statement was demonstrably *not* accurate at the time of the confirmation hearing, FOMB never told the Court or the parties.

    b. **Misrepresentation as to coupon rates.** The disclosure statement specified specific coupons and maturities for 11 new COFINA bonds. (Docket#4364-page-19-to-23, 25-to-26,168-to-169). Nothing was said about a possible reduction in coupon rate. The Plan attached, as Exhibit A, a document entitled "Coupons and Maturity Dates" that also spelled out the coupons and maturity dates. Docket#5055-1-page-91-of-91. Nothing was said in the Plan about a possible reduction in coupon rates. And nothing was disclosed anywhere about (i) issuing bonds whose tax treatment was not yet opined on, but then (ii) requiring a reduction in interest rate in order for bonds without a tax-opinion on the Effective Date to be exchanged into tax-free bonds, were an opinion later given that tax-free treatment was appropriate all along. *See* Docket#7211-page-6-to-9-of-24.

c. **FOMB compounds its earlier misrepresentations.** The exchange offer documents dated June 10, 2019, which COFINA used to insist upon a reduction in the coupon rates promised under the Plan in order for holders of securities issued without a tax opinion to receive tax-exempt securities, compound the misrepresentations in the disclosure statement and show that COFINA has not complied with the terms of the Plan FOMB jammed through. For example, the following passage from COFINA's June 10, 2019 Exchange Offer Q&A misleadingly implies that the coupon rate had to be reduced in order for the IRS to approve the issuance of tax-exempt bonds in exchange for no-tax-opinion-yet bonds:

> most importantly, in the course of seeking the ruling from the IRS, the Corporation represented to the IRS that the exchange for tax-exempt bonds would result in a twenty-five (25) basis point reduction in yield on the Invited Bonds exchanged for Converted Bonds. The IRS specifically referenced this yield reduction in the IRS Closing Agreement. The Corporation has been advised by its bond counsel that the IRS Closing Agreement will not apply to an exchange that does not comply with the twenty-five (25) basis point change in yield specified in the Tax Implementation Agreement. (App.II, Ex.4, p.6[(0153)])

That COFINA's exchange offer documents are misleading in implying that reducing the coupon rate was required by the IRS in order to provide tax-exempt treatment is evident from IRS Regulation 26 CFR §1.1001-3(e)(2)(ii), which provides that a change in the yield is a "significant modification" (that would make an exchange taxable) if the yield varies by more than the greater of (A) 25 basis points or (B) .05 × annual yield. When one compares the new lower exchanged yields versus the original coupon yields promised in the Plan and disclosure statement, it appears that—contrary to COFINA's implication that the IRS required a reduction in the coupon rate—the IRS actually *precluded* COFINA from pressing for a greater reduction in the coupon rate as part of the exchange. *Compare* App.II, Ex.4, p.1 (0148) and disclosure statement (Docket#4364-page-25-of-263) coupon rates with the new coupon rates in reduced amounts demanded by COFINA as the price for bondholders getting what qualified all along as tax-exempt bonds (App.II, Ex.3, p.2, 0146).

d. **FOMB refuses to disclose documents that would reveal the truth.** COFINA refuses to disclose the documents that would tell us what was concealed from both the Court and

COFINA bondholders pre-confirmation. *See* App.II, Ex.4, p.5, 0152, answer to Q11 ¶1; App.II, Ex.5, 0162 ¶4; COFINA response to my discovery (App.II, Ex.7, pp.5-8, 0197-0200).

COFINA is not precluded from disclosing the IRS Closing Agreement or what COFINA communicated to the IRS back on December 14, 2018. COFINA admits that "there is no non-disclosure agreement between COFINA and the IRS" (App.II, Ex.7, p.12, 0204) and COFINA itself disclosed a purported "summary" of the terms of the IRS Closing Agreement in its exchange offer Q&A (App.II, Ex.4, p.5, 0152 [response to Q11]).

Why not disclose the actual documents—documents that COFINA is free to disclose? The inference that should be drawn from COFINA's refusal to make the disclosure is that COFINA knows that disclosure of what was communicated to the IRS and the IRS Closing Agreement would reveal that the 25 basis point reduction in yield as a condition for the exchange of no-tax-opinion-yet bonds for tax-exempt bonds was ***not*** required by the IRS, but rather IRS regulations ***precluded*** COFINA from seeking any ***greater*** reduction in yield. *See also* App.II, Ex.5, p.III-4, 0180, p.IV-2, 0184; App.II, Ex.8 (208-209).

### 2. FOMB's misrepresentation of the rationale for discrimination.

Plan proponents sought to justify the discriminatory additional consideration made available only to Puerto Rico residents as supposedly benefiting everybody by maximizing the availability of tax exempt bonds to holders in the 50 states. See FOMB proposed findings of fact and conclusions of law ¶142 (Docket#4846-1-page-56-to-57-of-121), adopted in ¶145 of this Court's opinion (at 5053-page-64-of-88).

The "questions and answers" document dated June 10, 2019 that accompanied the COFINA exchange offer makes clear that both those who received the Puerto Rico preference and bondholders in the 50 states received the same "Exchange Offer" to exchange no-tax-opinion-yet bonds for bonds that would be opined to be tax-exempt. The CUSIPs issued to those who received the Puerto Rico preference and to mainland investors are both listed as eligible for the exchange to tax exempt. App.II, Ex.4, p.1, 0148 and App.II, Ex.5, p.1, 0158 (both listing the

CUSIPs of the 2040 bonds issued to recipients of the Puerto Rico preference and the CUSIPs of the 2040 bonds issued to mainland investors, *see* #7211-1-page-7-to-8-of-146).

Did the Plan proponents know all along that the transaction they structured would result in federal tax exempt treatment for all bonds—including bonds for those who elected the Puerto Rico preference? The answer may be found in the December 14, 2018 request to the IRS for a ruling and the IRS May 2019 response, but FOMB refuses to disclose these documents.

### 3. FOMB's misdepiction of Bonistas.

FOMB does not dispute that it described Bonistas in the disclosure statement (Docket#4364, approved at #4382) as "AN ORGANIZATION ADVOCATING FOR THE INTERESTS OF LOCAL BONDHOLDERS ..." (Docket#4364-page-37-of-263); that FOMB submitted proposed findings to this Court that described Bonistas as "advocating for the interests of Puerto Rico resident bondholders" (Docket#4846-1-page-41-of-121); and that this Court adopted word-for-word the FOMB's assertions with respect to Bonistas (Docket#5053-page-43-of-88). FOMB also does not dispute that the now known matters, enumerated at #7211-page-11-to-12-of-24, were not disclosed. *Compare* COFINA Br. 10-11. And FOMB does not dispute that Bonistas' support was critical to winning the support of Puerto Rico investors. *Compare* #7211-page-10-to-12-of-24 *with* COFINA Br. 10-11.

FOMB's only response is that the disclosure statement "did not need to include" the information in issue and that "the Court approved" the disclosure statement "without requiring" these matters be disclosed. COFINA Br. 10. But—absent FOMB being candid with the Court in its submissions to the Court—how would Court know what was being omitted?

Finally, FOMB does not even attempt to respond to the showing that misrepresentations in the disclosure statement about the nature of Bonistas' interests, coupled with the Puerto Rico preference, made the difference in the Class 5 vote results. *Compare* #7211-page-12-of-24 *with* COFINA Br. 10-11.

-11-

### 4. FOMB's misrepresentation of what individual investors in the 50 states would receive.

FOMB does not dispute that the disclosure statement: **[1]** stated in **BOLD, ALL CAPS,** the representation that:

> **"YOU WILL RECEIVE A DISTRIBUTION CONSISTING PRIMARILY OF COFINA BONDS APPROXIMATELY EQUAL TO 56.414% OF YOUR 'FIRST SUBORDINATE' EXISTING SECURITIES AND NO CASH."** (Docket#4364-page-43-of-263);

**[2]** in Table 2B, identified specific maturities of coupon interest-bearing bonds (CIBs) and capital appreciation bonds (CABs) that an individual holder with $50,000 par existing COFINA securities would receive (#4364-page-23-of-263); and **[3]** repeatedly stated that a subordinate bondholder in the 50 states "will receive" a "projected" or "estimated" recovery of 56.414% (Docket#4364-page-49,121-of-263).

Docket#7211 and #6283 specified in detail, with supporting documentation, that this did not occur. Even the quantities of bonds specified in Table 2B were not always received. *See* #7211-page-13-of-24; #7211-1-Page-27-to-44,131-137; #6283-page-8-to-12-of-13; #6283-8; #6283-9; #6283-10; #6283-11-page-2-to-18-of-18.[1] Yet no evidence is offered by FOMB to respond to the showing that I made. All that is offered are excerpts from counsel's statements and counsel's flowchart demonstrative presented at the March 13, 2019 hearing. FOMB's failure to respond to the specific facts and documents that I proffered in #7211 and #6283 is a tacit concession that individual investors have *not* received what they were promised.

It is also no answer for FOMB to claim that any problems with how the exchange process occurred should have been raised earlier. Even putting aside the issue of inadequate notice, *see* section C.4, above, FOMB does not specify exactly where in the disclosure statement someone could have learned that 14 (not 11) CUSIPs would be issued and that individuals would be subject to forced sales of fractional bonds at distressed prices materially and adversely impacting their recovery. Table 2B (docket #4364-page-23-of-263), which purports to detail how the

---

[1] A typo in a record citation appears on 7211-page-28-of-146, line 11. The citation should be to Docket#62_8_3-3-page-6-to-15-of-15, not #62_9_3-3.

-12-

distribution to those who are not able or willing to elect the Puerto Rico preference will be made, depicts a "total recovery" per $50,000 par of $28,205, only a minimal portion of which constitutes "rounding cash". The coupon bonds to be received all appear as round 1,000 lots. The CAB bonds are shown as including a number of fractions for the initial principal amount and, in the case of the 2046 and 2051 maturities, in the ultimate principal amount at maturity. There is no indication in the example presented that any fractional amounts are being liquidated, much less liquidated at distressed prices. Table 2B shows the bondholder receiving bonds in the stated quantities.

### 5. Special benefits for negotiators of the Plan in the confidential process.

As just three examples, #7211 details **(i)** how the Commonwealth took bondholders' property by releasing the lien on almost one-half of pledged tax revenues (Docket #7211-page-13-to-14-of-24); **(ii)** the special benefits to other plan negotiators, including particulars as to purchases by Plan negotiator funds of over $2 billion COFINA *subordinate bonds post-PROMESA at distressed prices,* which they could then vote as members of Class 5 in favor of the Plan terms they had negotiated, thereby voting to award themselves large profits (#7211-page-14-to-15-of-24); and **(iii)** how, despite the fact over $1.2 billion was held in trust for subordinate holders, instead of paying subordinate holders their share of the monies held in trust for them, almost all of the pre-7/1/2018 debt service cash was distributed to favored parties who negotiated the plan (#7211-page-14-to-15-of-24). To this FOMB offers no factual response—FOMB simply relies on the fact that this is what the Court approved. COFINA Br. 12-13.

Multiple constitutional violations would result if PROMESA is construed to permit **(i)** the retroactive abrogation of property and other rights of COFINA subordinate bondholders who purchased their bonds pre-PROMESA, and **(ii)** the use by plan negotiators of the voting mechanism retroactively imposed by PROMESA to vote themselves special benefits and award themselves hundreds of millions—likely over $1 billion—in profits.

As discussed in section B above, *Security Industrial Bank* makes clear that violations of the Takings Clause would result were PROMESA construed to retroactively abrogate

bondholder property and other rights. But there is more: the plurality opinion in *Eastern Enterprises* v. *Appel*, in applying a Takings Clause analysis, cited Justice Chase's opinion from 1798 in *Calder* v. *Bull*, 3 Dall. 386, 388 (1798) to make the point that "'It is against all reason and justice' to presume that the legislature has been entrusted with the power to enact 'a law that takes *property* from A. and gives it to B'" (524 U.S. at 523). Yet that is fundamentally what has happened here.

The plurality in *Eastern Enterprises* recognized that the retroactive application of the legislation there at issue could violate substantive Due Process if the plaintiff had established that its liability under retroactive legislation is "arbitrary and irrational." 524 U.S. at 537. Having concluded that retroactive application of the act at issue violated the Takings Clause, the plurality concluded it need not address the Due Process claim. *Id.* at 538. However, Justice Kennedy, in his concurrence, explained his view that it was the Due Process Clause, not the Takings Clause, that applied, reasoning that:

> If retroactive laws change the legal consequences of transactions long closed, the change can destroy the reasonable certainty and security which are the very objects of property ownership. As a consequence, due process protection for property must be understood to incorporate our settled tradition against retroactive laws of great severity. Groups targeted by retroactive laws, were they to be denied all protection, would have a justified fear that a government once formed to protect expectations now can destroy them. Both stability of investment and confidence in the constitutional system, then, are secured by due process restrictions against severe retroactive legislation (*id.* at 548-49).

Justice Thomas concurred in the plurality opinion that the act there at issue violated the Takings Clause, and wrote separately to emphasize that the Ex Post Facto Clause (Art. I, §9, cl. 3), "even more clearly reflects the principle that '[r]etrospective laws are, indeed, generally unjust.'" (524 U.S. at 538-39).

While I recognize the plurality in *Eastern Enterprises* relied upon the Takings Clause to invalidate retroactive application of the legislation before them, I also urge—based on the opinions of Justices Kennedy and Thomas—application of both substantive Due Process and extension of prior Supreme Court jurisprudence involving the Ex Post Facto Clause—to preclude

retroactive application here of PROMESA to purchases of bonds issued years ago (in the 2007 to 2011 time period).

Finally, PROMESA should not be construed to sanction the use of special benefits to Plan negotiators, and the purchase at distressed prices (and then voting) of subordinate bonds, that occurred here. The Supreme Court reversed and set aside confirmation of a municipal debtor's Plan in *American United Mut. Life* v. *City of Avon Park*, 311 U.S. 138 (1940) in analogous circumstances. The Supreme Court emphasized the responsibility of the court to insure a plan is "openly arrived at and devoid of overreaching, however subtle." *Id.* at 146. Among the conduct to be avoided, in the Court's view, were "special benefits for the reorganizers", and the Court addressed "the need for protection of investors against an inside few or of one class of investors from the encroachments of another." *Id.* The Court admonished against "unfair discrimination," noting that "a composition would not be confirmed where one creditor was obtaining some special favor or inducement not accorded the others" and that "if a vote is influenced by the expectation of advantage … it cannot be considered an honest and unbiased vote." *Id.* at 147-48.

## CONCLUSION

FOMB's objection to Claim No. 10701 should be denied.

Dated: August 8, 2019

Respectfully Submitted,

*Peter C. Hein*

Peter C. Hein, Pro Se
101 Central Park West, Apt. 14E
New York, NY 10023
petercheinsr@gmail.com