UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

        Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION (COFINA),

        Debtor.

PROMESA
Title III

No. 17 BK 3284-LTS

----------------------------------------------------------------x

**SUPPLEMENTAL APPENDIX TO ACCOMPANY**

**[Further Response to Docket 4417 in Accordance with Docket #7113 – Relating to Claim No. 10701]**

**RESPONSE OF INDIVIDUAL COFINA BONDHOLDER (CLAIM NO. 10701) TO COFINA SUPPLEMENT TO ITS "THIRTEENTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO DUPLICATE CLAIMS"**

August 8, 2019

## INDEX TO APPENDIX

Declaration of Peter C. Hein and Exhibits 3 to 8 thereto

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

        Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION (COFINA)

        Debtor.

PROMESA
Title III

No. 17 BK 3284-LTS

------------------------------------------------------------x

**AUGUST 2019 SUPPLEMENTAL DECLARATION OF PETER C. HEIN**

**to Accompany**

**[Further Response To 4417 in Accordance with Docket#7113 – Relating to Claim No. 10701]**

**RESPONSE OF INDIVIDUAL COFINA BONDHOLDER (CLAIM NO. 10701) TO COFINA SUPPLEMENT TO ITS "THIRTEENTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO DUPLICATE CLAIMS"**

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief:

1.     This declaration attaches certain documents and statements referred to in my accompanying "Response of Individual COFINA Bondholder (Claim No. 10701) to COFINA Supplement to its "Thirteenth Omnibus Objection (Non-Substantive) to Duplicate Claims." The factual statements in my Response are true and correct to the best of my knowledge and belief.

2.     Attached are the following exhibits:

| Exhibit | Description | App. Page Nos. |
|---|---|---|
| 3[1] | 6/10/2019 COFINA Invitation to Exchange Bonds – Letter (received by U.S. mail 6/24/2019). | 0145[2] |
| 4 | 6/10/2019 Questions and Answers accompanying COFINA Invitation to Exchange Bonds (received by U.S. mail 6/24/2019). | 0148 |
| 5 | 6/10/2019 COFINA Invitation to Exchange Bonds – lengthier document (received by U.S. mail 6/24/2019) (excerpts).[3] | 0158 |
| 6 | Interrogatories and Requests for Production, served by Hein on FOMB (excerpts). | 0185 |
| 7 | FOMB Response and Objections to Hein Interrogatories and Requests for Production. | 0193 |
| 8 | Glenn Ryhanych, CFA, 6/21/2019 analysis.  (Docket #8388-page-3-to-4-of-2019) | 0208 |

Dated:  August 8, 2019

*Peter C. Hein*
_____
Peter C. Hein

---

[1] Docket#7211 attached the Hein May 2019 Declaration that annexed Exhibits 1 and 2.
[2] The appendix that accompanied Docket#7211 included pages 0001 to 0144.
[3] The full text of this document is publicly available on EMMA.

# GOVERNMENT OF PUERTO RICO

## Puerto Rico Sales Tax Financing Corporation

June 10, 2019

Re:   **Invitation to Exchange Bonds**
      **Puerto Rico Sales Tax Financing Corporation**
      **Restructured Sales Tax Bonds, Series 2019A-2 and Series 2019B-2 (the "Invited Bonds")**
      **CUSIPs: 74529JPY5, 74529JPZ2, 74529JQA6, 74529JQY4,**
      **74529JQN8, 74529JQP3, and 74529JQQ1**

Dear Bondholder:

The Puerto Rico Sales Tax Financing Corporation (the "**Corporation**") appreciates your investment in our bonds.

You are receiving this letter because the Corporation is inviting you to exchange your Invited Bonds for an equal aggregate principal amount of the Corporation's bonds (the "**Converted Bonds**") and to consent to certain document amendments. This invitation is further described in the Invitation to Exchange Bonds and Consent to Amendments, dated June 10, 2019 (the "**Invitation**") and is subject to the terms and conditions set forth in the Invitation. Information concerning the Corporation and its bonds, including the tax treatment of the Invited Bonds and the Converted Bonds is set forth in Appendix A - Information Statement, dated June 10, 2019 (the "**Information Statement**"). Questions and Answers, dated June 10, 2019 (the "**Questions and Answers**") are also provided to assist you in your review.

**Background:**

The Invited Bonds were originally issued by the Corporation on February 12, 2019 as part of a debt restructuring proceeding under Title III of the Puerto Rico, Oversight, Management and Economic Stability Act. The interest on the Invited Bonds is <u>not</u> excluded from gross income for federal income tax purposes (except in the case of Puerto Rico residents or corporations that meet certain requirements under the U.S. Internal Revenue Code (the "Code"), as further explained under "TAX MATTERS" in the Information Statement). On May 15, 2019, the Corporation entered into a closing agreement with the U.S. Internal Revenue Service that permits the Corporation to make certain allocations with respect to the use of proceeds of its Restructured Sales Tax Bonds. The making of these allocations and the taking of certain other actions by the Corporation will permit Nixon Peabody LLP, as bond counsel, to deliver its opinion that, subject to customary qualifications, interest (other than pre-issuance accrued interest) on the Converted Bonds, and on Invited Bonds exchanged for Converted Bonds from the original delivery date of such Invited Bonds exchanged for Converted Bonds (February 12, 2019), will be excluded from gross income for federal income tax purposes under Section 103 of the Code. The purpose of the Invitation is to give holders of Invited Bonds the opportunity to exchange currently outstanding Invited Bonds for tax-exempt Converted Bonds with an adjusted yield.

**Opportunity to Exchange Bonds:**

Holders of the Invited Bonds that accept the Corporation's offer to exchange their bonds will receive on the Settlement Date an equal principal amount of the Converted Bonds, plus accrued interest to the Settlement Date.

The Converted Bonds shall have the same terms as the Invited Bonds **except as described below.**



# GOVERNMENT OF PUERTO RICO

**Puerto Rico Sales Tax Financing Corporation**

- <u>first</u>, the interest rate on the Converted Bonds has been adjusted to reflect a yield that is no more than twenty-five basis points lower than the yield for Invited Bonds of the same Series and Subseries and maturity with such yield comparison determined in the manner specified in applicable U.S. Treasury Regulations promulgated under the Code, and

- <u>second</u>, interest (other than pre-issuance accrued interest) on the Converted Bonds, and on Invited Bonds exchanged for such Converted Bonds from the original date of delivery of the Invited Bonds exchanged for such Converted Bonds (February 12, 2019) is, in the opinion of Nixon Peabody LLP, as bond counsel, excluded from gross income for federal income tax purposes and from state, Commonwealth of Puerto Rico and local income taxation.

Additionally, on the Settlement Date, in order to preserve the mandatory sinking fund redemptions of the Invited Bonds, the sinking fund installment payments set forth in the original mandatory redemption schedules for the Invited Bonds will be allocated pro rata between the Converted Bonds and the Unexchanged Invited Bonds.

The respective maturity dates, interest rates and CUSIP Nos. for the Exchange of Invited Bonds to Converted Bonds is as follows:

| Maturity Date (July 1) | Invited Bond CUSIP[1] | Converted Bond CUSIP[1] | New Coupon |
|---|---|---|---|
| 2040 | 74529JPY5 | 74529JRH0 | 4.329% |
| 2040 | 74529JQY4 | 74529JRJ6 | 4.329 |
| 2053 | 74529JPZ2 | 74529JRK3 | 4.536 |
| 2058 | 74529JQA6 | 74529JRL1 | 4.784 |
| 2040 | 74529JQN8 | 74529JRM9 | 4.329 |
| 2053 | 74529JQP3 | 74529JRN7 | 4.536 |
| 2058 | 74529JQQ1 | 74529JRP2 | 4.784 |

In addition, holders of the Invited Bonds that accept the Corporation's invitation to exchange his or her Invited Bonds for Converted Bonds <u>will be deemed to have consented to certain amendments to the documents under which such Invited Bonds were issued</u>. Specifically, such amendments will: (i) reduce the interest rate on his or her Invited Bond to applicable interest rate for the Converted Bond, (ii) provide for the payment of interest on the Settlement Date on the Invited Bonds that are exchanged for Converted Bonds, and (iii) provide that in the event there are insufficient funds on deposit in the Interest Account within the Debt Service Fund to pay interest due and payable on the Corporation's Bonds on January 1, 2020, the pro rated interest payment to be made to a holder of a Converted Bonds shall be reduced by an amount equal to the interest paid in respect of such bonds on the Settlement Date.

---

[1]     CUSIP is a registered trademark of American Bankers Association. CUSIP data herein is provided by Standard and Poor's CUSIP Service Bureau, a division of The McGraw-Hill Companies, Inc. CUSIP data is not intended to create a database and does not serve in any way as a substitute for the CUSIP Service. None of the Corporation or the Information and Exchange Agent makes any representation as to, or takes any responsibility for, the accuracy of such CUSIP numbers. CUSIP numbers are provided for convenience of reference only.



# GOVERNMENT OF PUERTO RICO

## Puerto Rico Sales Tax Financing Corporation

*What if I choose to not participate in the invitation to exchange my Invited Bonds for Converted Bonds?*

Holders of Invited Bonds who do not accept the Corporation's invitation to exchange pursuant to the Invitation will continue to hold such Invited Bond and such Invited Bond will remain Outstanding under the Indenture and the interest thereon will <u>not</u> be excluded from gross income for federal income tax purposes (except in the case of Puerto Rico residents or corporations that meet certain requirements under the Code, as further explained under "TAX MATTERS" in the Information Statement).

<u>**You should consult your bank, broker, tax advisor or other financial advisor in deciding whether, and if so how, to respond to the Invitation.**</u>

The deadline to accept the Invitation to exchange your bonds and consent to the amendments is July 26, 2019 at 5:00 p.m. (NYC time) (the "Expiration Date"). Should you wish to participate, please contact your bank, broker or other financial advisor in advance of this date, so that they may have sufficient time to relay your instructions to the Corporation prior to expiration.

This brief letter cannot provide you with all the information that you need to consider the Invitation. *<u>Please read the Invitation, the Information Statement and the Questions and Answers</u>*. The Invitation, Information Statement and the Questions and Answers are available online at www.globic.com/cofina. We have also posted the documents on the Electronic Municipal Market Access website of the Municipal Securities Rulemaking Board, currently located at http://emma.msrb.org, using the CUSIP numbers of the Invited Bonds. Upon expiration of the invitation, the Corporation will post notices including the results of this exchange.

Institutional investors with questions about the Invitation should contact the Dealer Manager at (800) 292-0070. Individual investors and their brokers, account executives, financial advisors and/or other appropriate professionals with questions about the Invitation should contact the Information and Exchange Agent, Robert Stevens of Globic Advisors at: (212) 227-9699 or by email: rstevens@globic.com. Copies of the Invitation, the Information Statement and the Questions and Answers are available on request from the Information and Exchange Agent.

Please note the Corporation retains the right to modify or withdraw the Invitation at any time prior to the Expiration Date.

Thank you for taking the time to consider the Invitation.

*Puerto Rico Sales Tax Financing Corporation*

**Puerto Rico Sales Tax Financing Corporation**

# QUESTIONS AND ANSWERS

### June 10, 2019

**INVITATION TO EXCHANGE BONDS AND CONSENT TO AMENDMENTS**
made by the
**PUERTO RICO SALES TAX FINANCING CORPORATION**
to Bondholders of all or any portion of the
following Restructured Sales Tax Bonds:

| Maturity Date | Sub-Series | Principal Amount | Interest Rate | CUSIP No.* |
|---|---|---|---|---|
| 2040 | 2019A-2 | $1,905,085,000 | 4.550% | 74529JPY5 |
| 2040 | 2019A-2 | 865,919,000 | 4.550 | 74529JQY4 |
| 2053 | 2019A-2 | 57,021,000 | 4.750 | 74529JPZ2 |
| 2058 | 2019A-2 | 763,784,000 | 5.000 | 74529JQA6 |
| 2040 | 2019B-2 | 35,156,000 | 4.550 | 74529JQN8 |
| 2053 | 2019B-2 | 723,000 | 4.750 | 74529JQP3 |
| 2058 | 2019B-2 | 9,691,000 | 5.000 | 74529JQQ1 |

(collectively, the "**Invited Bonds**")

1. **What did I receive in this package and why have I received it?**

   You should have received the following items in this package:

   (a) These Questions and Answers,

   (b) The Invitation to Exchange Bonds and Consent to Amendments, dated June 10, 2019 (the "*Invitation*"); and

   (c) A letter from the Puerto Rico Sales Tax Financing Corporation (the "*Corporation*"), dated June 10, 2019.

   Additionally, prior to making a decision as to whether to accept the Corporation's invitation to exchange your Invited Bonds, you will need to review a copy of the Information Statement, which is attached to the Invitation as Appendix A. The Information Statement contains financial, operating and other information with respect to the Corporation. Electronic copies of the Invitation and the Information Statement may be obtained from Globic Advisors, the information and exchange agent (the "*Information and Exchange Agent*"), on its website at www.globic.com/cofina or by calling the Information and Exchange Agent toll-free at 800-974-5771 or 212-227-9699 or by emailing the Information and Exchange Agent at info@globic.com.

---

* CUSIP is a registered trademark of American Bankers Association. CUSIP data herein is provided by Standard and Poor's CUSIP Service Bureau, a division of The McGraw-Hill Companies, Inc. CUSIP data is not intended to create a database and does not serve in any way as a substitute for the CUSIP Service. None of the Corporation or the Information and Exchange Agent makes any representation as to, or takes any responsibility for, the accuracy of such CUSIP numbers. CUSIP numbers are provided for convenience of reference only.

Exhibit 4                                                                                                0148

*Capitalized terms used but not defined herein have the meanings assigned to them in the Invitation.* The Invitation, the letter of the Corporation and the Information Statement are collectively referred to herein as the *"Other Exchange Materials."*

You are a beneficial owner (a *"Bondholder"*) of the Invited Bonds referenced above. The Invited Bonds were issued on February 12, 2019 in connection with the restructuring of the Corporation's previously outstanding bonds. This package describes an invitation from the Corporation to the Bondholders of Invited Bonds to submit an acceptance to the Corporation's invitation to exchange such Invited Bonds for an equal aggregate principal amount of Corporation bonds (the "*Converted Bonds*").

**2.     What is the Invitation and what are my options?**

The Corporation is inviting Bondholders to exchange all or a portion of the Invited Bonds held by the Bondholder for an equal aggregate principal amount of Converted Bonds that will have the same terms as the Invited Bonds except as follows:

- <u>first</u>, the interest rate on the Converted Bonds has been adjusted to reflect a yield that is no more than twenty-five (25) basis points lower than the yield for Invited Bonds of the same Series and subseries and maturity (the "*Converted Bonds Interest Rate*"), with such yield comparison determined in the manner specified in applicable U.S. Treasury Regulations (the "*Treasury Regulations*") promulgated under the Internal Revenue Code of 1986, as amended, and

- <u>second</u>, interest (other than pre-issuance accrued interest) on the Converted Bonds, and on Invited Bonds exchanged for such Converted Bonds from the original date of delivery of the Invited Bonds exchanged for such Converted Bonds (February 12, 2019) is, in the opinion of Nixon Peabody LLP, as bond counsel, excluded from gross income for federal income tax purposes and from state, Commonwealth of Puerto Rico and local income taxation,

as described in the Invitation. Acceptances of the Corporation's Invitation must be received by the Corporation at any time on or before 5:00 p.m., New York City time, on July 26, 2019, unless earlier terminated or extended (the *"Expiration Date"*). As described herein and in the Other Exchange Materials and subject to the conditions contained in the Invitation, the Invited Bonds (or any portion thereof) that the Bondholders accepts to exchange shall be exchanged on August 1, 2019 (the *"Settlement Date"*). The Corporation may change the Settlement Date by giving notice to the Information Services prior to the change. The Corporation retains the right to modify or withdraw the Invitation at any time through and including the Expiration Date as described herein.

<u>Your options:</u>

(i)     Accept the invitation to exchange all or a portion of your Invited Bonds of a particular Series and subseries, maturity date and CUSIP number for an equal aggregate principal amount of Converted Bonds, with the particular Converted Bonds Interest Rate and with interest that is exempt from gross income for federal income tax purposes and from state, Commonwealth of Puerto Rico and local income taxation. The par amount of the Invited Bonds that is being accepted for exchange must be in denominations of $1,000 or any integral multiple thereof.

Subject to the satisfaction of all conditions described herein and in the Other Exchange Materials, your Invited Bonds will be exchanged on the Settlement Date. All Bondholders of Invited Bonds that accept the exchange invitation will receive an equal principal amount of Converted Bonds, plus accrued interest to the Settlement Date.

- 2 -

Bondholders who accept the Invitation will be deemed to have consented to certain amendments to certain documents as described in the Invitation.

     (ii)     Do nothing, and your Invited Bonds will remain outstanding as taxable bonds for federal income tax purposes (except in the case of Puerto Rico residents or corporations that meet certain requirements under the Code, as further discussed under "TAX MATTERS" in the Information Statement), and payable and secured, pursuant to the terms of the Indenture until their stated maturity or earlier redemption date in accordance with the Indenture. The Corporation has no present intention of making another invitation to exchange any Invited Bonds.

### 3.     How do I accept the Corporation's Invitation to exchange my Invited Bonds to the Corporation?

Your Invited Bonds are held in book-entry-only form at DTC by your bank, broker or financial representative, who maintains your account. In order to participate in the exchange, your bank or broker will need to deliver your Invited Bonds to the Corporation via DTC. *The Corporation will not recognize any acceptances that are not made through DTC as described in the Invitation.* Please contact your bank, broker or financial representative in order to instruct them to take action on your behalf; please check with them for their preferred procedure, such as whether they accept electronic, oral or written instruction. For your convenience (and if required by your bank, broker, or financial representative), a Bondholder's Instruction Form may be obtained from the Information and Exchange Agent on its website at www.globic.com/cofina.

To ensure your acceptance is submitted to the Corporation via DTC by 5:00 p.m., New York City time, on the Expiration Date, you must provide instructions to your bank, broker or financial representative in sufficient time for them to deliver your Invited Bonds to the Corporation by this deadline. *You should contact your Financial Representative for information on when and how they need your instructions in order to submit your acceptance to the Corporation's ATOP Account by 5:00 p.m., New York City time, on the Expiration Date.*

The Bondholder should include the following information for the Invited Bonds which he or she would like to exchange: (1) the Series and subseries designation of the Invited Bond, (2) the maturity date of the Invited Bond, (3) the CUSIP number of the Invited Bond, and (4) amount of the Invited Bond in denominations of $1,000 or any integral multiple thereof.

### 4.     Can I exchange some, but not all, of my Invited Bonds?

Yes. You can choose which Invited Bonds and how much of each Invited Bond that you want to exchange to the Corporation. The par amount of the Invited Bonds must be in denominations of $1,000 or any integral multiple thereof. An acceptance which does not meet this requirement will be reduced to the greatest integral multiple of $1,000.

### 5.     Can I exchange some or all my Invited Bonds, but not consent to the amendments?

No. Bondholders who accept the Invitation will be deemed to have consented to certain amendments to certain documents as described in the Invitation.

### 6.     Can I change my mind after I submit my acceptance?

Yes. As with the process by which you delivered your acceptance to the Corporation, you may amend or withdraw your acceptance in any respect you choose by instructing your bank, broker or

0150

financial representative to take such action with respect to your previous acceptance not later than 5:00 p.m., New York City time, on the Expiration Date.

All questions as to the validity (including the time of receipt) of an amendment or withdrawal will be determined by the Corporation in its sole discretion and will be final, conclusive and binding.

**7.      What is the deadline for accepting the Corporation's Invitation?**

Acceptances of the Corporation's Invitation must be given as described in Question 3 above at any time on or before 5:00 p.m. New York City time, on the Expiration Date (July 26, 2019). Acceptances received after 5:00 p.m., New York City time, on the Expiration Date will not be considered. As your Invited Bonds are held by your bank or broker, they may require your instruction to participate in advance of the Expiration Date to ensure that they can deliver your Invited Bonds to the Corporation via DTC.

The Corporation has the right to extend the Invitation, as to any or all of the Invited Bonds, to any date in its sole discretion, provided that a notice of any extension of the Invitation is given to the Information Services (including by posting such notice to the Information and Exchange Agent's website at www.globic.com/cofina) not later than 9:00 a.m., New York City time, on the first business day following the previously scheduled Expiration Date.

See also Question 18 with respect to information on the Corporation's ability to change the terms of the Invitation.

**8.      Why is the Corporation making the Invitation?**

Pursuant to a Tax Exemption Implementation Agreement dated as of February 12, 2019 (the "***Tax Implementation Agreement***"), the Corporation agreed to continue to pursue guidance from the U.S. Internal Revenue Service (the "***IRS***") regarding the tax treatment of its Restructured Sales Tax Bonds and to the extent guidance was received facilitate a potential future exchange for tax-exempt bonds, and bondholders that executed the Tax Implementation Agreement agreed to a twenty-five (25) basis point reduction in the yield on their bonds in any future exchange. On May 15, 2019, the Corporation entered into a closing agreement (the "***IRS Closing Agreement***") with the IRS in which the IRS permits the Corporation to make certain allocations with respect to the use of proceeds of its Restructured Sales Tax Bonds. The making of these allocations and the taking of certain other actions by the Corporation will permit Nixon Peabody LLP, as bond counsel, to deliver its opinion that, subject to customary qualifications, interest (other than pre-issuance accrued interest) on the Converted Bonds, and on Invited Bonds exchanged for Converted Bonds from the original delivery date of such Invited Bonds exchanged for Converted Bonds (February 12, 2019), will be excluded from gross income for federal income tax purposes under Section 103 of the U.S. Internal Revenue Code (the "***Code***"). The purpose of the Invitation is to give Bondholders the opportunity to exchange currently outstanding Invited Bonds for tax-exempt bonds with an adjusted yield.

**9.      Did the IRS rule in the IRS Closing Agreement that the Invited Bonds are tax-exempt? Can't I just keep my Invited Bonds and the interest at the current coupon rate will be tax-exempt?**

The IRS Closing Agreement does not provide that the Invited Bonds are automatically tax-exempt. The IRS Closing Agreement merely permits the Corporation to make certain allocations with respect to the proceeds of its Restructured Sales Tax Bonds as a whole under applicable Treasury Regulations. The Corporation must make those allocations and must also take additional actions required

- 4 -

under the Code and Treasury Regulations in order for interest on the bonds to be tax-exempt, including, among other things, adopting tax covenants and amending documents. It is the Corporation's allocations and its other actions to be taken which will enable interest on the Converted Bonds to be tax-exempt for federal income tax purposes. The Corporation will not make the same allocations or take the same actions with respect to Invited Bonds that are not exchanged for Converted Bonds. As a result, the interest on Invited Bonds that are not exchanged for Converted Bonds will be fully subject to federal income taxation (except in the case of Puerto Rico residents or corporations that meet certain requirements under the Code, as further discussed under "TAX MATTERS" in the Information Statement).

In addition, and most importantly, in the course of seeking the ruling from the IRS, the Corporation represented to the IRS that the exchange for tax-exempt bonds would result in a twenty-five (25) basis point reduction in yield on the Invited Bonds exchanged for Converted Bonds. The IRS specifically referenced this yield reduction in the IRS Closing Agreement. The Corporation has been advised by its bond counsel that the IRS Closing Agreement will not apply to an exchange that does not comply with the twenty-five (25) basis point change in yield specified in the Tax Implementation Agreement.

10.   **What will happen to any Invited Bonds that are not exchanged? Won't those bonds automatically become tax-exempt because the IRS says they're tax-exempt?**

The IRS Closing Agreement does not provide that the Invited Bonds are automatically tax-exempt. The Converted Bonds will only be eligible to be treated as tax-exempt for federal income tax purposes if the Corporation makes the required allocations and takes the additional actions required by the Code and Treasury Regulations in order for interest on them to be tax-exempt, as described above. As a result, the interest on Invited Bonds that are not exchanged for Converted Bonds will be fully subject to federal income taxation (except in the case of Puerto Rico residents or corporations that meet certain requirements under the Code, as further discussed under "TAX MATTERS" in the Information Statement).

11.   **Will the IRS Closing Agreement be made public?  If the Closing Agreement won't be made public, is a summary of the IRS Closing Agreement available?**

The IRS Closing Agreement is a confidential agreement between the Internal Revenue Service and the Corporation and will not be made public.  However, the following is a summary of the IRS Closing Agreement.

The IRS Closing Agreement resolves a matter raised in a request for a private letter ruling submitted by the Corporation in December of 2018. The IRS Closing Agreement generally discusses the events connected to the Title III proceeding of the Puerto Rico Oversight, Management and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. 2101 *et. seq.*, and specifically states that on the Effective Date, the Corporation and certain bondholders entered into the Tax Implementation Agreement which provides that, to the extent permitted in any favorable guidance received from the IRS, the Corporation would offer holders of the bonds for which no tax-exemption opinion was provided the option to exchange those bonds for bonds for which the Corporation's bond counsel may provide a tax-exemption opinion with the yield on such bonds reduced by twenty-five (25) basis points. For a copy of the Tax Implementation Agreement, see https://emma.msrb.org/ES1240566-ES968665-ES1370318.pdf.

The IRS Closing Agreement further provides that neither the U.S. Treasury Regulations, including Treasury Regulation Section 1.148-6, nor the Code, adequately address the facts and circumstances presented by the Corporation's restructuring of its outstanding bonds or the allocation of a reduction in a debtor's bond indebtedness in this context. The Corporation and its bond counsel were

uncertain whether under this Treasury Regulation, proceeds of the Restructured Sales Tax Bonds could be allocated to the repayment of the existing tax-advantaged securities up to the amount of such securities outstanding as of the Effective Date. In the IRS Closing Agreement, the IRS determined that for federal income tax purposes, the Corporation may allocate the proceeds of the Restructured Sales Tax Bonds to existing securities claims arising out of existing tax-advantaged securities up to an amount equal to the total of the existing securities claims for the existing tax-advantaged securities outstanding as of the Effective Date.

The IRS Closing Agreement does not provide that the Invited Bonds are automatically tax-exempt. Rather, it permits the Corporation to make an allocation of the proceeds of the Restructured Sales Tax Bonds in a manner that was unclear under existing Treasury Regulations. However, that allocation is not all that is required for interest on the Invited Bonds to be tax-exempt. In addition to making the allocations permitted under the IRS Closing Agreement, the Corporation must also take certain actions with respect to the Invited Bonds that are exchanged for Converted Bonds, including providing tax covenants, amending certain documents and filing IRS forms. It is the Corporation's allocations and its other actions to be taken which will enable interest on the Converted Bonds to be tax-exempt for federal income tax purposes. The Corporation will not make the same allocations or take the same actions with respect to Invited Bonds that are not exchanged for Converted Bonds.

In addition, and most importantly, in the course of seeking the ruling from the IRS, the Corporation represented to the IRS that the exchange for tax-exempt bonds would result in a twenty-five (25) basis point reduction in yield on the Invited Bonds exchanged for Converted Bonds. The IRS specifically referenced this yield reduction in the IRS Closing Agreement. The Corporation has been advised by its bond counsel that the IRS Closing Agreement will not apply to an exchange that does not comply with the twenty-five (25) basis point change in yield specified in the Tax Implementation Agreement.

**12.    What happens to holders of Invited Bonds who signed the Tax Implementation Agreement and do not exchange their Invited Bonds? What happens to holders of Invited Bonds who did not sign the Tax Implementation Agreement and do not exchange their Invited Bonds?**

There is no difference in the treatment of holders who do not exchange their bonds. All Invited Bonds that are not exchanged for Converted Bonds will be fully subject to federal income taxation for the reasons stated above (except in the case of Puerto Rico residents or corporations that meet certain requirements under the Code, as further discussed under "TAX MATTERS" in the Information Statement). This applies to all holders of Invited Bonds, whether they signed the Tax Implementation Agreement or not.

**13.    What will happen if I do not accept the invitation to exchange my Invited Bonds?**

All Invited Bonds that are not exchanged for Converted Bonds will remain outstanding with the same terms as when issued on the Effective Date, and payable and secured, pursuant to the terms of the Indenture until their stated maturity or earlier redemption in accordance with the Indenture. Interest on Invited Bonds that are not exchanged for Converted Bonds will not be excluded from gross income for federal tax purposes and therefore will be fully subject to federal income taxation (except in the case of Puerto Rico residents or corporations that meet certain requirements under the Code, as further discussed under "TAX MATTERS" in the Information Statement). The Corporation has no present intention of making another invitation to exchange any Invited Bonds.

14.    **Will I be required to pay a commission or fee if accept the Corporation's exchange invitation?**

You will not be required to pay a fee or commission to the Corporation or any agent of the Corporation. However, please check with your Financial Representative to determine whether they will charge you a fee.

15.    **What are the benefits of exchange my Invited Bonds?**

Your broker, account executive or financial advisor is probably the best person to answer that question. You should, therefore, consult with your own experts.

16.    **Is exchanging my Invited Bonds a good idea?**

The Corporation cannot and does not advise you on whether or not this is a good idea for you. Your broker, account executive or financial advisor is probably the best person to answer that question. You should, therefore, consult with your own experts. **THE CORPORATION MAKES NO RECOMMENDATION TO YOU AS TO WHETHER OR NOT YOU SHOULD ACCEPT THE INVITATION. YOU MUST MAKE YOUR OWN DECISION WHETHER TO EXCHANGE INVITED BONDS.**

By accepting the Corporation's invitation to exchange, you will be deemed to have represented to and agreed with the Corporation that: (a) you have made your own independent decisions to accept the invitation to exchange and consent to the amendments, as to the terms thereof, and whether your acceptance and consent is appropriate for you; (b) such decisions were based upon your own judgment and upon advice from such advisors as you have consulted; (c) you are not relying on any communication from the Corporation as investment advice or as a recommendation to accept the Invitation, it being understood that the information from the Corporation related to the terms and conditions of the Invitation shall not be considered investment advice or a recommendation to accept the Invitation; (d) you are capable of assessing the merits of and understanding (on your own and/or through independent professional advice), and do understand and accept, the terms and conditions of the Invitation; and (e) you have received, and have had the opportunity to review, these Questions and Answers and the Other Exchange Materials prior to making the decision as to whether or not you should accept the Invitation.

17.    **What will be the tax consequences of exchanging my Invited Bonds?**

See the Information Statement for a discussion of certain United States Federal income tax consequences relating to the Invited Bonds and the Converted Bonds. Interest on Invited Bonds that are not exchanged for Converted Bonds will not be excluded from gross income and therefore will be fully subject to federal income taxation (except in the case of Puerto Rico residents or corporations that meet certain requirements under the Code, as further explained under "TAX MATTERS" in the Information Statement). Residents of Puerto Rico and Puerto Rico corporations should review such section for a discussion of the federal and Puerto Rico income tax treatment of Invited Bonds, including the Unexchanged Invited Bonds (as such term is defined therein).

18.    **Can the terms of the Invitation change?**

**YES. THE CORPORATION RESERVES THE RIGHT TO EXTEND, TERMINATE, AMEND OR WAIVE THE TERMS OF THE INVITATION AT ANY TIME UP TO AND INCLUDING THE EXPIRATION DATE.**

0154

The Corporation has the right to extend the Invitation, as to any or all of the Invited Bonds, to any date in its sole discretion, provided that a notice of any extension of the Expiration Date is given to the Information Services (including by posting such notice to the Information and Exchange Agent's website at www.globic.com/cofina) not later than 9:00 a.m., New York City time, on the first business day following the previously scheduled Expiration Date.

The Corporation also has the right to terminate the Invitation at any time up to and including the Expiration Date by giving notice to the Information Services (including by posting such notice to the Information and Exchange Agent's website at www.globic.com/cofina) of such termination.   The termination will be effective at the time specified in such notice.

The Corporation also has the right to amend or waive the terms of the Invitation in any respect and at any time by giving notice to the Information Services (including by posting such notice to the Information and Exchange Agent's website at www.globic.com/cofina) of this amendment or waiver. This amendment or waiver will be effective at the time specified in such notice.

If the Corporation extends the Invitation, or amends the terms of the Invitation (including a waiver of any term) in any material respect, the Corporation may (but is not required to) disseminate additional Invitation material and extend the Invitation to the extent required to allow reasonable time for dissemination to Bondholders and for Bondholders to respond.

**19.   How can I receive information on the Corporation?**

Your decision to participate in the Invitation may be based on a variety of factors including financial and operating information regarding the Corporation.   In connection with the issuance of the Invitation, the Corporation has prepared the Information Statement attached as Appendix A to the Invitation Statement which sets forth information describing the Corporation.   It is important that you review the Information Statement before you make a decision whether or not to exchange your Invited Bonds.   By accepting the Invitation, you shall be deemed to have acknowledged and represented to the Corporation that you have received, and have had the opportunity to review, these Questions and Answers and the Other Exchange Materials prior to making the decision as to whether or not you should exchange your Invited Bonds.

**20.   Are there any conditions to the Corporation's obligation to exchange Invited Bonds?**

Yes.   The Corporation will not be required to exchange any Invited Bonds, and will incur no liability as a result, if, between the Expiration Date and the Settlement Date:

(i)   A war, national emergency, banking moratorium, suspension of payments by banks, a general suspension of trading by the New York Stock Exchange or a limitation of prices on the New York Stock Exchange exists and the Corporation believes this fact makes it inadvisable to proceed with the purchase of these Invited Bonds;

(ii)   A material disruption in commercial banking or securities settlement or clearance services shall have occurred;

(iii)   A court with competent jurisdiction has issued a decision invalidating all or any part of Act No. 91 of the Legislative Assembly of Puerto Rico, approved May 13, 2006, as amended, including as amended by Act No, 241 approved on November 15, 2018, which, among other things, created the Corporation;

- 8 -

(iv)   A stop order, restraining order, or injunction has been issued by, or litigation has been commenced before, any agency, court, or other governmental body of any jurisdiction, on or after the date of this Invitation, with respect to this Invitation, any of the transactions in connection with, or contemplated by, this Invitation or the Other Exchange Materials, which the Corporation or its legal counsel in good faith believes makes it inadvisable to proceed with the exchange of these Invited Bonds; or

(v)   A court with competent jurisdiction has issued an order that materially adversely affects the Corporation's Plan of Adjustment under Title III of PROMESA.

**21.    What will my brokerage firm or bank do to accomplish the exchange?**

Brokerage firms and banks keep the Invited Bonds in book-entry-only form at DTC.  Subject to satisfaction of all conditions to the Corporation's obligation to exchange Invited Bonds, as described herein and in the Other Exchange Materials, the Corporation will cause the exchange of the Invited Bonds to be made on the Settlement Date.

**22.    Whom may I call if I have questions or would like additional copies of this document?**

Your Financial Representative should be able to answer most questions concerning the Invitation. Investors with questions about the Invitation should also contact the Information and Exchange Agent or the Dealer Manager.

Globic Advisors is the Information and Exchange Agent for the Invitation.

**Globic Advisors**
**Attn: Robert Stevens**
**Telephone: 212-227-9699**
**Email: info@globic.com**
**Web: www.globic.com/cofina**

BofA Securities, Inc. is the Dealer Manager for the Invitation.

**BofA Securities, Inc.**
**Attn: Debt Advisory**
**Collect: (646) 855-8988**
**U.S. Toll Free: (800) 292-0070**

**PLEASE NOTE**

THE CORPORATION IS SOLELY RESPONSIBLE FOR THE INVITATION, THESE QUESTIONS AND ANSWERS AND THE OTHER EXCHANGE MATERIALS.  THE DEALER MANAGER AND THE INFORMATION AND EXCHANGE AGENT ARE NOT RESPONSIBLE IN ANY WAY FOR THE INVITATION, THESE QUESTIONS AND ANSWERS OR THE OTHER EXCHANGE MATERIALS.

ALL OF THE TERMS AND CONDITIONS OF THE INVITATION TO EXCHANGE ARE SET FORTH IN THESE QUESTIONS AND ANSWERS AND THE OTHER EXCHANGE MATERIALS, ALL OF WHICH ARE PROVIDED BY THE CORPORATION.  YOU SHOULD READ EACH SUCH DOCUMENT THOROUGHLY IN ORDER TO MAKE AN INFORMED DECISION REGARDING THE PROPOSED INVITATION.  **BY ACCEPTING THE EXCHANGE**

0156

INVITATION, YOU SHALL BE DEEMED TO HAVE ACKNOWLEDGED AND REPRESENTED TO THE CORPORATION THAT YOU HAVE RECEIVED, AND HAVE HAD THE OPPORTUNITY TO REVIEW, THESE QUESTIONS AND ANSWERS AND THE OTHER EXCHANGE MATERIALS PRIOR TO MAKING THE DECISION AS TO WHETHER OR NOT YOU SHOULD EXCHANGE YOUR INVITED BONDS.

THE CORPORATION RESERVES THE RIGHT TO CANCEL THE INVITATION AT ANY TIME ON OR PRIOR TO THE EXPIRATION DATE, AS EXTENDED FROM TIME TO TIME, IN ITS SOLE DISCRETION. THERE WILL BE NO OBLIGATION TO EXCHANGE INVITED BONDS PREVIOUSLY ACCEPTED FOR EXCHANGE IF CANCELLATION OCCURS. NOTICE OF ANY SUCH CANCELLATION WILL BE GIVEN TO BONDHOLDERS THROUGH PROVISION OF SUCH NOTICE TO THE INFORMATION SERVICES (INCLUDING BY POSTING SUCH NOTICE TO THE INFORMATION AND EXCHANGE AGENT'S WEBSITE AT WWW.GLOBIC.COM/COFINA), PROMPTLY AFTER THE DATE THEREOF.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION REGARDING THE INVITATION ON BEHALF OF THE CORPORATION THAT IS NOT CONTAINED IN THESE QUESTIONS AND ANSWERS AND THE OTHER EXCHANGE MATERIALS. IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED.

NONE OF THE CORPORATION, THE DEALER MANAGER OR THE INFORMATION AND EXCHANGE AGENT MAKES ANY RECOMMENDATION AS TO WHETHER OR NOT YOU SHOULD EXCHANGE BONDS PURSUANT TO THE INVITATION.

THE INVITATION IS NOT BEING MADE TO, NOR WILL AN ACCEPTANCE TO THE EXCHANGE BE ACCEPTED FROM OR ON BEHALF OF, BONDHOLDERS IN ANY JURISDICTION IN WHICH THE MAKING OF THE INVITATION OR THE ACCEPTANCE THEREOF WOULD NOT BE IN COMPLIANCE WITH THE LAWS OF THAT JURISDICTION.

0157

## INVITATION TO EXCHANGE BONDS AND CONSENT TO AMENDMENTS
### made by the
## PUERTO RICO SALES TAX FINANCING CORPORATION
### to Bondholders of all or any portion of the following
### Restructured Sales Tax Bonds:

| Maturity Date (July 1) | Subseries | Principal Amount | Interest Rate | CUSIP No.[*] |
|---|---|---|---|---|
| 2040 | 2019A-2 | $1,905,085,000 | 4.550% | 74529JPY5 |
| 2040 | 2019A-2 | 865,919,000 | 4.550 | 74529JQY4 |
| 2053 | 2019A-2 | 57,021,000 | 4.750 | 74529JPZ2 |
| 2058 | 2019A-2 | 763,784,000 | 5.000 | 74529JQA6 |
| 2040 | 2019B-2 | 35,156,000 | 4.550 | 74529JQN8 |
| 2053 | 2019B-2 | 723,000 | 4.750 | 74529JQP3 |
| 2058 | 2019B-2 | 9,691,000 | 5.000 | 74529JQQ1 |

### THE INVITATION WILL EXPIRE AT 5:00 P.M., NEW YORK CITY TIME, ON THE EXPIRATION DATE OF JULY 26, 2019, UNLESS EARLIER TERMINATED OR EXTENDED.

This Invitation to Exchange Bonds and Consent to Amendments, dated June 10, 2019 (the "Invitation"), describes an invitation made by the Puerto Rico Sales Tax Financing Corporation (the "Corporation") to the beneficial owners (the "Holders" or "Bondholders") of the Corporation's Restructured Sales Tax Bonds of the Subseries listed above (such bonds are collectively referred to herein as the "Invited Bonds"), to exchange all or a portion of such Invited Bonds for the Exchange Consideration (as defined herein). In addition, Bondholders who accept the Invitation will be deemed to have consented to certain amendments to certain documents. See **Section 3** herein for a description of the Indenture Amendments, as such term is defined therein.

The Invited Bonds were originally issued by the Corporation on February 12, 2019, pursuant to (i) a Master Trust Indenture, dated as of February 12, 2019, as supplemented by a First Supplemental Trust Indenture, dated as of February 12, 2019, and Second Supplemental Trust Indenture, dated as of February 12, 2019, each by and between the Corporation and The Bank of New York Mellon, as trustee, and (ii) a plan of adjustment consummated in connection with the Corporation's case under Title III of the Puerto Rico Oversight, Management and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. 2101 *et. seq.* ("PROMESA"), including the confirmation order entered by the U.S. District Court for the District of Puerto Rico.

Holders of the Invited Bonds that accept the Corporation's invitation to exchange their Invited Bonds will receive on the Settlement Date (as such term is defined below) an equal principal amount of bonds (the "Converted Bonds"), plus accrued interest to the Settlement Date (collectively, the "Exchange Consideration"). The Converted Bonds will be dated as of the Settlement Date and shall have the same terms as the Invited Bonds except as follows:

- first, the interest rate on the Converted Bonds has been adjusted to reflect a yield that is no more than twenty-five basis points lower than the yield for Invited Bonds of the same Series and subseries and maturity, with such yield comparison determined in the manner specified in applicable U.S. Treasury Regulations (the "Treasury Regulations") promulgated under the Internal Revenue Code of 1986, as amended, and

- second, interest (other than pre-issuance accrued interest) on the Converted Bonds, and on Invited Bonds exchanged for such Converted Bonds from the original date of delivery of the Invited Bonds exchanged for such Converted Bonds (February 12, 2019) is, in the opinion of Nixon Peabody LLP, as bond counsel, excluded from gross income for federal income tax purposes and from state, Commonwealth of Puerto Rico and local income taxation.

Additionally, on the Settlement Date, in order to preserve the mandatory sinking fund redemptions of the Invited Bonds, the sinking fund installment payments set forth in the original mandatory redemption schedules for the Invited Bonds will be allocated pro rata between the Converted Bonds and the Unexchanged Invited Bonds (as such term is defined below).

---

[*] CUSIP is a registered trademark of American Bankers Association. CUSIP data herein is provided by Standard and Poor's CUSIP Service Bureau, a division of The McGraw-Hill Companies, Inc. CUSIP data is not intended to create a database and does not serve in any way as a substitute for the CUSIP Service. None of the Corporation or the Information and Exchange Agent makes any representation as to, or takes any responsibility for, the accuracy of such CUSIP numbers. CUSIP numbers are provided for convenience of reference only.

Exhibit 5

0158

The respective maturity dates, interest rates and CUSIP Nos. for the Converted Bonds are below:

| Maturity Date (July 1) | Subseries | Interest Rate | CUSIP No.[*] |
|---|---|---|---|
| 2040 | 2019A-2 | 4.329% | 74529JRH0 |
| 2040 | 2019A-2 | 4.329 | 74529JRJ6 |
| 2053 | 2019A-2 | 4.536 | 74529JRK3 |
| 2058 | 2019A-2 | 4.784 | 74529JRL1 |
| 2040 | 2019B-2 | 4.329 | 74529JRM9 |
| 2053 | 2019B-2 | 4.536 | 74529JRN7 |
| 2058 | 2019B-2 | 4.784 | 74529JRP2 |

Holders of Invited Bonds who do not accept this Invitation will continue to hold such Invited Bonds ("Unexchanged Invited Bonds") and such Unexchanged Invited Bonds will remain Outstanding under the Indenture. The interest on Unexchanged Invited Bonds will not be excluded from gross income for federal income tax purposes.

To make an informed decision as to whether, and how, to accept the Corporation's invitation to exchange Invited Bonds for Converted Bonds and consent to the Indenture Amendments, a Holder must read this Invitation and all Other Exchange Materials (as described herein) carefully and should consult with his or her broker, account executive, tax advisor, financial advisor and/or other financial professional. This Invitation and the Other Exchange Materials and such other information with respect to this Invitation are and will be available from the Information and Exchange Agent at Globic Advisors.

Any Bondholder wishing to accept the Corporation's invitation to exchange his or her Invited Bonds and to consent to the Indenture Amendments pursuant to this Invitation should follow the procedures more fully described herein. Bondholders and their brokers and account executives with questions about this Invitation should contact the Information and Exchange Agent.

---

### Key Dates and Times

*All of these dates and times are subject to change. All times are New York City time.*
*Notices of changes will be sent in the manner provided for in this Invitation.*

Expiration Date ...................................................................................................................July 26, 2019
Announcement of Final Results of Acceptance of Exchange Invitation.........................................July 30, 2019
Settlement Date: Exchange made on all Converted Bonds..............................................................August 1, 2019

---

**The Dealer Manager for the Initiation is:**
**BofA Securities, Inc.**
One Bryant Park
New York, NY 10036
Attn: Debt Advisory
Collect: (646) 855-8988
U.S. Toll Free: (800) 292-0070

**The Information and Exchange Agent for the Invitation is:**
**GLOBIC ADVISORS**
Attn: Robert Stevens
485 Madison Ave, 7th Floor
New York, NY 10022
Phone: 212-227-9622
E-mail: rstevens@globic.com
Document Website: www.globic.com/cofina

June 10, 2019

---

[*] CUSIP is a registered trademark of American Bankers Association. CUSIP data herein is provided by Standard and Poor's CUSIP Service Bureau, a division of The McGraw-Hill Companies, Inc. CUSIP data is not intended to create a database and does not serve in any way as a substitute for the CUSIP Service. None of the Corporation or the Information and Exchange Agent makes any representation as to, or takes any responsibility for, the accuracy of such CUSIP numbers. CUSIP numbers are provided for convenience of reference only.

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED OF THIS INVITATION OR PASSED UPON THE FAIRNESS OR MERITS OF THIS INVITATION OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS INVITATION. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

This Invitation is not being extended to, and acceptances of this Invitation will not be accepted from or on behalf of, Bondholders in any jurisdiction in which this Invitation or the acceptance of this Invitation would not be in compliance with the laws of such jurisdiction. In any jurisdictions where the securities, "blue sky" or other laws require this Invitation to be made through a licensed or registered broker or dealer, this Invitation shall be deemed to be made on behalf of the Corporation by the Dealer Manager or one or more registered brokers or dealers licensed under the laws of that jurisdiction.

No dealer, salesperson or other person has been authorized to give any information or to make any representation not contained in this Invitation or the Other Exchange Materials and, if given or made, such information or representation may not be relied upon as having been authorized by the Corporation.

The delivery of this Invitation and the Other Exchange Materials shall not under any circumstances create any implication that the information contained herein or therein is correct as of any time subsequent to the date hereof or that there has been no change in the information set forth herein or therein or in any attachments hereto or Other Exchange Materials delivered herewith or in the affairs of the Corporation since the date hereof.

Certain statements contained in or incorporated by reference into this Invitation or the Other Exchange Materials are "forward-looking statements." Forward-looking statements are based on the Corporation's beliefs, assumptions and expectations of future economic performance, taking into account the information currently available to the Corporation. These statements may be identified by the use of words like "plans," "expects," "aims," "believes," "projects," "anticipates," "intends," "estimates," "will," "should," "could" and other expressions that indicate future events and trends. Such forward-looking statements are subject to risks and uncertainties that could cause actual results to differ materially from those contemplated in such statements. Inevitably, some assumptions used in connection with the forward-looking statements will not be realized and unanticipated events and circumstances may occur. Therefore, there are likely to be differences between such statements and actual results, and those differences may be material.

Forward-looking statements speak only as of the date of the document in which they are made. The Corporation disclaims any obligation or undertaking to provide any updates or revisions to any forward-looking statement to reflect any change in the Corporation's expectations or any change in events, conditions or circumstances on which the forward-looking statement is based.

**This Invitation and the Other Exchange Materials contain important information which should be read before any decision is made with respect to this Invitation.**

Questions regarding the process for exchanging Invited Bonds for Converted Bonds and consenting to the Indenture Amendments pursuant to this Invitation, and requests for additional copies of this Invitation or the Other Exchange Materials, may be directed to Globic Advisors, who is acting as information and exchange agent in connection with this Invitation (the *"Information and Exchange Agent"*) at its address and telephone number set forth below. Bondholders may also contact their broker, dealer, commercial bank or trust company or other nominee for assistance concerning this Invitation.

### Globic Advisors
Attn: Robert Stevens
485 Madison Ave, 7th Floor, New York, NY 10022
Phone: 212-227-9622    E-mail: rstevens@globic.com
Document Website: www.globic.com/cofina

# TABLE OF CONTENTS

| Section | Heading | Page |
|---|---|---|
| 1. | Introduction | 1 |
| 2. | Expiration Date; Acceptances of Invitation Only Through Financial Institutions; Information to Market and Bondholders | 4 |
| 3. | Acceptance of Invitation. | 5 |
| 4. | Provisions Applicable to All Acceptances of the Invitation | 6 |
| 5. | Transmission of Acceptance of Invitation to Exchange and Consent; DTC ATOP Account | 6 |
| 6. | Determinations as to Form and Validity of a Bondholder's Acceptance of the Invitation; Right of Waiver and Rejection | 7 |
| 7. | Amendments and Withdrawals of Acceptances | 7 |
| 8. | Irrevocability of Acceptance of Invitation | 8 |
| 9. | Determination of Interest Rate on Converted Bonds | 8 |
| 10. | Priority of Exchange | 8 |
| 11. | Acceptance of Invitation Constitutes Irrevocable Agreement; Notice of Results | 9 |
| 12. | Settlement Date; Exchange of Bonds | 9 |
| 13. | Conditions to Exchange | 9 |
| 14. | Extension and Amendment of Invitation; Changes to Terms; Termination | 10 |
| 15. | Certain United States Federal Income Tax Consequences | 11 |
| 16. | Additional Considerations | 11 |
| 17. | Representation by Bondholders to the Corporation | 11 |
| 18. | Dealer Manager | 12 |
| 19. | Information Statement | 12 |
| 20. | Miscellaneous | 12 |

Appendix A - Information Statement ............................................................ A-1

## INVITATION TO EXCHANGE BONDS AND CONSENT TO AMENDMENTS
### made by the
### PUERTO RICO SALES TAX FINANCING CORPORATION

**1.     Introduction**

This Invitation to Exchange Bonds and Consent to Amendments, dated June 10, 2019 (the "Invitation"), describes an invitation made by the Puerto Rico Sales Tax Financing Corporation (the "Corporation") to the beneficial owners (the "Holders" or "Bondholders") of the Invited Bonds listed on the cover page of this document and as defined below.

On February 12, 2019, the Corporation and the Puerto Rico Fiscal Agency and Financial Advisory Authority announced the occurrence of the "Effective Date" of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, dated January 9, 2019, approved by the U.S. District Court for the District of Puerto Rico pursuant to Title III of the PROMESA. On the Effective Date, the Corporation issued $11,869,739,717.80 in principal amount and initial accreted value of Puerto Rico Sales Tax Financing Corporation Restructured Sales Tax Bonds, Series 2019A, consisting of: $8,277,930,717.80 in principal amount and initial accreted value of Restructured Sales Tax Bonds, Series 2019A-1 and $3,591,809,000.00 in principal amount of Restructured Sales Tax Bonds, Series 2019A-2 (the "Series 2019A-2 Bonds"); and $151,582,099.55 in principal amount of Puerto Rico Sales Tax Financing Corporation Restructured Sales Tax Bonds, Series 2019B, consisting of: $106,012,099.55 in principal amount and initial accreted value of Restructured Sales Tax Bonds, Series 2019B-1 and $45,570,000.00 in principal amount of Restructured Sales Tax Bonds, Series 2019B-2 (the "Series 2019B-2 Bonds," and, together with the Series 2019A-2 Bonds, the "Invited Bonds").

The Invited Bonds were authorized pursuant to a resolution of the board of directors of the Corporation adopted on February 8, 2019. The Series 2019A-2 Bonds were issued pursuant to a Master Trust Indenture, by and between the Corporation and The Bank of New York Mellon, as trustee (the "Trustee"), dated as of February 12, 2019 (the "Master Indenture"), and the First Supplemental Trust Indenture, by and between the Corporation and the Trustee, dated as of February 12, 2019 (the "First Supplemental Indenture"). The Series 2019B-2 Bonds were issued pursuant to the Master Indenture and the Second Supplemental Trust Indenture, by and between the Corporation and the Trustee, dated as of February 12, 2019 (the "Second Supplemental Indenture", and together with the Master Indenture and the First Supplemental Indenture, collectively, the "Indenture").

On May 15, 2019, the Corporation received a determination from the U.S. Internal Revenue Service that will allow the Corporation to take certain actions that will permit Nixon Peabody LLP, as bond counsel, to deliver its opinion that, subject to customary qualifications, interest (other than pre-issuance accrued interest) on the Converted Bonds and Invited Bonds exchanged for such Converted Bonds from the original delivery date of such Invited Bonds (February 12, 2019), will be excluded from gross income for federal income tax purposes under Section 103 of the U.S. Internal Revenue Code, as amended (the "Code"). The determination from the U.S. Internal Revenue Service was made pursuant to a closing agreement between the U.S. Internal Revenue Service and the Corporation (the "IRS Closing Agreement"). The Closing Agreement will not be released. The IRS Closing Agreement references the Tax Exemption Implementation Agreement dated as of February 12, 2019, and that the exchange will occur in accordance with the terms thereof, which includes the twenty-five (25) basis point reduction to

the yield on the Converted Bonds. Pursuant to the IRS Closing Agreement, the IRS permitted the Corporation to allocate the proceeds of its Restructured Sales Tax Bonds to the refunding of the Corporation's bonds originally issued as tax-advantaged obligations up to an amount equal to the total of the existing tax-advantaged securities claims outstanding as of February 12, 2019. The Corporation will make those allocations with respect to Invited Bonds that are exchanged for Converted Bonds and will also take additional actions required under the Code and Treasury Regulations that must be taken for interest on Invited Bonds that are exchanged for Converted Bonds to be excluded from gross income for federal income tax purposes under Section 103 of the Code, including, among other things, adopting tax covenants and amending certain documents. The Corporation will not allocate the proceeds of Unexchanged Invited Bonds (as such term is defined below) to purposes that are eligible to be financed under Section 103 of the Code and will not take any actions required under the Code and Treasury Regulations that must be taken for interest on the Unexchanged Invited Bonds to be excluded from gross income under Section 103 of the Code. As a result, the interest on Unexchanged Invited Bonds will not be excluded from gross income for federal income tax purposes and so will be fully subject to federal income taxation (except in the case of Puerto Rico residents or corporations that meet certain requirements under the Code, as further explained under "TAX MATTERS" in the Information Statement, as such term is defined below).

The Invited Bonds are each identified by a separate CUSIP number on the cover page. The Invitation is contained in this document, including the cover page and the Information Statement of the Corporation attached hereto as Appendix A (the "Information Statement"). Capitalized terms used herein but not otherwise defined herein have the meanings assigned to them in the Indenture, a summary of certain defined terms is attached hereto as Appendix II of the Information Statement.

Bondholders of the Invited Bonds that accept the Corporation's invitation to exchange their Invited Bonds and consent to certain amendments to the Indenture (such Indenture Amendments as more fully described in Section 3 below), will receive on the Settlement Date (as such term is defined below) an equal principal amount of bonds (the "Converted Bonds"), plus accrued interest to the Settlement Date. Each Bondholder of Invited Bonds may exchange all or any part of his or her beneficial ownership interests (in authorized denominations of $1,000 or integral multiples thereof only) in the Invited Bonds. The Converted Bonds shall have the same terms as the Invited Bonds except as follows:

- first, the interest rate on the Converted Bonds has been adjusted to reflect a yield that is no more than twenty-five basis points lower than the yield for Invited Bonds of the same Series and Subseries and maturity with such yield comparison determined in the manner specified in applicable Treasury Regulations, and

- second, interest (other than pre-issuance accrued interest) on the Converted Bonds, and on Invited Bonds exchanged for such Converted Bonds from the original date of delivery of the Invited Bonds exchanged for such Converted Bonds (February 12, 2019) is, in the opinion of Nixon Peabody LLP, as bond counsel, excluded from gross income for federal income tax purposes and from state, Commonwealth of Puerto Rico and local income taxation.

Additionally, on the Settlement Date, in order to preserve the mandatory sinking fund redemptions of the Invited Bonds, the sinking fund installment payments set forth in the original

0163

mandatory redemption schedules for the Invited Bonds will be allocated pro rata between the Converted Bonds and the Unexchanged Invited Bonds.

**Holders of Invited Bonds that are Series 2019A-2 Bonds that accept the Corporation's invitation to exchange Invited Bonds for Converted Bonds will be deemed to have consented to certain amendments to the First Supplemental Indenture. Holders of Invited Bonds that are Series 2019B-2 Bonds that accept the Corporation's invitation to exchange Invited Bonds for Converted Bonds will be deemed to have consented to certain amendments to the Second Supplemental Indenture.** See Section 3 herein for a description of the Indenture Amendments and for the respective maturity dates, interest rates and CUSIP No. for the Converted Bonds. See Sections 4 and 5 herein for more information on how a Bondholder can accept the Corporation's invitation to exchange his or her Bonds.

*All exchanges of Invited Bonds for Converted Bonds must be made through DTC's Automated Tender Offer Program account described herein. The Corporation will not accept any acceptances that are not made through its Automated Tender Offer Program account.*

The exchange of Invited Bonds for Converted Bonds will take place by 3:00 p.m. on August 1, 2019 (the "Settlement Date"). The Converted Bonds will be dated as of the Settlement Date. Accrued interest on the Invited Bonds that are exchanged for Converted Bonds through the day before the Settlement Date will be paid on the Settlement Date.

Holders of Invited Bonds who do not accept the Corporation's invitation to exchange their Invited Bonds pursuant to this Invitation will continue to hold such Invited Bonds ("Unexchanged Invited Bonds") and such Unexchanged Invited Bonds will remain outstanding under the Indenture. The interest on Unexchanged Invited Bonds will not be excluded from gross income for federal income tax purposes.

The Corporation makes no representations as to whether it will or will not in the future again invite Holders of Unexchanged Invited Bonds to exchange any of the Unexchanged Invited Bonds. The Corporation has no present intention of making another invitation to exchange any Unexchanged Invited Bonds.

To make an informed decision as to whether, and how, to accept this Invitation, a Bondholder must read the following documents carefully and consult with his or her broker, account executive, tax advisors, financial advisor and/or other financial professional:

(1)     This Invitation, including the Information Statement attached as Exhibit A hereto,

(2)     The Questions and Answers dated June 10, 2019; and

(3)     A letter from the Corporation dated June 10, 2019.

The Information Statement and the Questions and Answers from the Corporation are collectively referred to herein as the "Other Exchange Materials."

The Dealer Manager for the Invitation is BofA Securities, Inc. (the firm, in its capacity as the Dealer Manager only, is referred to in the Invitation as the "Dealer Manager").

The Information and Exchange Agent for the Invitation is Globic Advisors (the "Information and Exchange Agent"). Investors and their brokers and account executives with questions about the Invitation should contact the Information and Exchange Agent. Requests for

0164

additional copies of the Invitation and Other Exchange Materials may be directed to the Information and Exchange Agent.

**None of the Corporation, the Dealer Manager or the Information and Exchange Agent make any recommendation that any Holder of Invited Bonds accept this Invitation or refrain from accepting this Invitation. Each Holder of Invited Bonds must make the decision and should read this Invitation and the Other Exchange Materials and consult with his or her broker, account executive, financial advisor and/or other financial professional in making these decisions.**

All times in the Invitation are New York City time.

## 2. Expiration Date; Acceptances of Invitation Only Through Financial Institutions; Information to Market and Bondholders

The ability of Holders of Invited Bonds to accept the Corporation's invitation to exchange Invited Bonds for Converted Bonds and consent to the Indenture Amendments will expire at 5:00 p.m. on July 26, 2019 or such earlier or later date as the Corporation may determine (the "Expiration Date"). See Section 14. Any Holder's acceptance of the Corporation's invitation to exchange Invited Bonds for Converted Bonds and consent to the Indenture Amendments received at the DTC's ATOP Account (defined and described below in Section 5) after the Expiration Date will not be considered validly submitted, except that all questions as to the validity, form, eligibility (including time of receipt) and acceptance of any Invited Bonds pursuant to any of the procedures described herein will be determined by the Corporation in its sole discretion, which determination shall be final, conclusive and binding.

The Invited Bonds are all held in book-entry-only form through the facilities of The Depository Trust Company of New York ("DTC") through banks, brokers and other institutions that are participants in DTC. *Holders of Invited Bonds who want to accept this Invitation, must do so through the DTC's Automated Tender Offer Program Account (the "DTC's ATOP Account"). The Corporation will not recognize any acceptances of this Invitation that are not made through the DTC's ATOP Account.* As a result, Holders of Invited Bonds who are not DTC participants can only accept this Invitation through the financial institution which maintains the DTC account in which their Invited Bonds are held.

The Corporation may give information about this Invitation to the market and Holder of Invited Bonds by delivery of the information to the following institutions: Bloomberg Financial Market Systems, Thompson Reuters and the Municipal Securities Rulemaking Board through its Electronic Municipal Market Access system ("EMMA") and DTC. These institutions are referred to herein as the "Information Services." Delivery by the Corporation of information to the Information Services will be deemed to constitute delivery of this information to each Holder of Invited Bonds. The Corporation, the Dealer Manager and the Information and Exchange Agent have no obligation to ensure that a Holder of Invited Bonds actually receives any information given to the Information Services. A Holder of Invited Bonds who would like to receive information furnished by or on behalf of the Corporation to the Information Services must make appropriate arrangements with his or her broker, account executive or other financial advisor. The Corporation also may post information about the Invitation on the website of the Information and Exchange Agent as listed on the cover of this Invitation.

0165

3.    **Acceptance of Invitation.**

A Holder of Invited Bonds has the opportunity to exchange some or all of his or her Invited Bonds of a particular Subseries, maturity date and CUSIP number at par (in authorized denominations only). The Converted Bonds shall have the same terms as the Invited Bonds, except as follows:

- first, the interest rate on the Converted Bonds has been adjusted to reflect a yield that is no more than twenty-five basis points lower than the yield for Invited Bonds of the same Subseries and maturity with such yield comparison determined in the manner specified in applicable Treasury Regulations, and

- second, interest (other than pre-issuance accrued interest) on the Converted Bonds, and on Invited Bonds exchanged for such Converted Bonds from the original date of delivery of the Invited Bonds exchanged for such Converted Bonds (February 12, 2019) is, in the opinion of Nixon Peabody LLP, as bond counsel, excluded from gross income for federal income tax purposes and from state, Commonwealth of Puerto Rico and local income taxation.

Additionally, on the Settlement Date in order to preserve the mandatory sinking fund redemptions of the Invited Bonds, the sinking fund installment payments set forth in the original mandatory redemption schedules for the Invited Bonds will be allocated pro rata between the Converted Bonds and the Unexchanged Invited Bonds.

The respective subseries, maturity dates, interest rates and CUSIP Nos. for the Converted Bonds are below:

| Maturity Date (July 1) | Subseries | Interest Rate | CUSIP No. [*] |
|---|---|---|---|
| 2040 | 2019A-2 | 4.329% | 74529JRH0 |
| 2040 | 2019A-2 | 4.329 | 74529JRJ6 |
| 2053 | 2019A-2 | 4.536 | 74529JRK3 |
| 2058 | 2019A-2 | 4.784 | 74529JRL1 |
| 2040 | 2019B-2 | 4.329 | 74529JRM9 |
| 2053 | 2019B-2 | 4.536 | 74529JRN7 |
| 2058 | 2019B-2 | 4.784 | 74529JRP2 |

**Holders of Invited Bonds that are Series 2019A-2 Bonds that accept the Corporation's invitation to exchange Invited Bonds for Converted Bonds will be deemed to have consented to the amendments to the First Supplemental Indenture described in the next succeeding paragraph. Holders of Invited Bonds that are Series 2019B-2 Bonds that accept the Corporation's invitation to exchange Invited Bonds for Converted Bonds will be deemed to have consented to the amendments to the Second Supplemental Indenture described in the next succeeding paragraph.**

---

[*] CUSIP is a registered trademark of American Bankers Association. CUSIP data herein is provided by Standard and Poor's CUSIP Service Bureau, a division of The McGraw-Hill Companies, Inc. CUSIP data is not intended to create a database and does not serve in any way as a substitute for the CUSIP Service. None of the Corporation or the Information and Exchange Agent makes any representation as to, or takes any responsibility for, the accuracy of such CUSIP numbers. CUSIP numbers are provided for convenience of reference only.

Any Holder of an Invited Bond that accepts this Invitation and accepts delivery of a Converted Bond shall be deemed to have consented to the following amendments to the applicable Supplemental Indenture (collectively, the "Indenture Amendments"):

(i)     the reduction of the rate of interest on his or her Invited Bond to the applicable interest rate for the Converted Bond,

(ii)    the payment of interest on the Settlement Date, and

(iii)   to provide that in the event there are insufficient funds on deposit in the Interest Account within the Debt Service Fund to pay interest due and payable on the Corporation's Bonds on January 1, 2020, the pro rated interest payment to be made to a Holder of a Converted Bonds shall be reduced by an amount equal to the interest paid in respect of such bonds on the Settlement Date.

## 4.     Provisions Applicable to All Acceptances of the Invitation

A Bondholder should ask his or her broker or account executive at the financial institution that maintains the account in which his or her Invited Bonds are held or another financial advisor or tax advisors for help in determining whether to accept this Invitation and the par amount of any Invited Bonds to exchange (if any). A Bondholder also should inquire as to whether the financial institution that holds his or her Invited Bonds will charge a fee for submitting an acceptance of this Invitation or for the exchange his or her Invited Bonds for Converted Bonds. The Corporation and the Information and Exchange Agent will not charge any Bondholder for accepting the Invitation or for the exchange of his or her Invited Bonds for Converted Bonds.

The Bondholder should include the following information for the Invited Bonds which he or she would like to exchange: (1) the Series and subseries designation of the Invited Bond, (2) the maturity date of the Invited Bond, (3) the CUSIP number of the Invited Bond, and (4) the par amount of the Invited Bond in denominations of $1,000 or any integral multiple thereof. An acceptance which does not meet this requirement will be reduced to the greatest integral multiple of $1,000.

A Holder may only exchange Invited Bonds it owns at the time it accepts this Invitation.

A Bondholder that is not a DTC participant must instruct his or her account executive at the firm that holds his or her beneficial ownership interests in the Invited Bonds to submit the acceptance of this Invitation that he or she wishes to accept.

The Corporation, the Dealer Manager and the Information and Exchange Agent are not responsible for making or transmitting any acceptance of this Invitation or for any mistakes, errors or omissions in the making or transmission of any acceptance.

## 5.     Transmission of Acceptance of Invitation to Exchange and Consent; DTC ATOP Account

The Corporation, through the Information and Exchange Agent, will establish for each Series and subseries, maturity date and CUSIP number to which this Invitation relates a DTC ATOP Account for purposes of this Invitation within three business days after the date of this Invitation. Bondholders who wish to accept this Invitation may do so through the applicable

6

DTC ATOP Account. Any financial institution that is a participant in DTC may make a book-entry acceptance of this Invitation by causing DTC to transfer the applicable Invited Bonds into the applicable DTC ATOP Account in accordance with DTC's procedures. Concurrently with the delivery of Invited Bonds through book-entry transfer into the applicable DTC ATOP Account, an agent's message in connection with such book-entry transfer must be transmitted to and received at the applicable DTC ATOP Account by not later than 5:00 p.m. on the Expiration Date (as this date may have been changed pursuant to the Invitation). The confirmation of a book-entry transfer into the DTC's ATOP Account as described above is referred to herein as a "Book-Entry Confirmation." The term "Agent's Message" means a message transmitted by DTC to, and received by, the Depositary and forming a part of the Book-Entry Confirmation which states that DTC has received an express acknowledgment from the DTC participant exchanging the Invited Bonds that are the subject of such Book-Entry Confirmation, stating (1) the CUSIP number(s), series and par amount(s) of the Invited Bonds that have been exchanged by such participant pursuant to this Invitation, and (2) that such participant on behalf of the related Bondholder agrees to be bound by the terms of this Invitation, including the Indenture Amendments.

6.    **Determinations as to Form and Validity of a Bondholder's Acceptance of the Invitation; Right of Waiver and Rejection**

All questions as to the validity (including the time of receipt at the applicable DTC ATOP Account), form, eligibility and acceptance of this Invitation will be determined by the Corporation in its sole discretion and will be final, conclusive and binding.

The Corporation reserves the right to waive any irregularities or defects in any Bondholder acceptance of this Invitation. The Corporation, the Dealer Manager and the Information and Exchange Agent are not obligated to give notice of any defects or irregularities in the Bondholder acceptance and they will have no liability for failing to give this notice.

7.    **Amendments and Withdrawals of Acceptances**

A Bondholder may amend his or her acceptance of this Invitation in any respect he or she chooses by causing an amended acceptance to be received at the applicable DTC ATOP Account by not later than 5:00 p.m. on the Expiration Date (as this date may have been changed pursuant to this Invitation).

A Bondholder may withdraw his or her acceptance of this Invitation, which will include his or her consent to the Indenture Amendments, by causing a withdrawal notice to be received at the applicable DTC ATOP Account by not later than 5:00 p.m. on the Expiration Date (as this date may have been changed pursuant to this Invitation).

An amended acceptance or a notice of withdrawal must be submitted in substantially the same manner as an acceptance of the Invitation. *All amended acceptances and withdrawal notices must be made through the DTC's ATOP Account. The Corporation will not accept any amended acceptances or notices of withdrawal that are not made through DTC's ATOP account.* Bondholders who are not DTC participants can only amend their acceptances of this Invitation by making arrangements with and instructing their financial representative to submit the Bondholder's amended acceptance or the Bondholder's notice of withdrawal through the DTC's ATOP Account.

7

0168

An amended or withdrawn acceptance of this Invitation must specify the name and account number of the Bondholder (*i.e.*, the beneficial owner of the Invited Bonds for which this Invitation to exchange was accepted) whose acceptance is being amended or withdrawn, the Series and subseries designation of the Invited Bond subject to such amended or withdrawn acceptance, the maturity date of the Invited Bond subject to such amended or withdrawn acceptance, the applicable CUSIP number of the Invited Bond subject to such amended or withdrawn acceptance, the par amount previously subject to the acceptance and, if applicable, the new par amount subject to such amended acceptance. All questions as to the validity, form, eligibility (including time of receipt at the applicable DTC ATOP Account) and acceptance of any Invited Bonds pursuant to any of the procedures described herein will be determined by the Corporation in its sole discretion, which determination shall be final, conclusive and binding.

## 8.    Irrevocability of Acceptance of Invitation

All acceptances by Holders of this Invitation will become irrevocable as of 5:00 p.m. on the Expiration Date (as this date may have been changed pursuant to the Invitation).

## 9.    Determination of Interest Rate on Converted Bonds

Holders of Invited Bonds can accept the Corporation's invitation to exchange his or her Invited Bonds for an equal par amount of Converted Bonds of a particular Series and subseries, maturity date and CUSIP number at a yield that is no more than twenty-five (25) basis points lower than that of the particular Invited Bond, with such yield comparison determined in the manner specified in applicable Treasury Regulations. See Section 3 for the new interest rates on the Converted Bonds (the "Converted Bonds Interest Rate").

Bondholders who accept the Corporation's invitation to exchange their Invited Bonds will be deemed to have accepted the Converted Bonds Interest Rate and to have consented to the Indenture Amendments unless they direct the financial institution that holds their Invited Bonds to withdraw their acceptance of this Invitation.  Under the circumstances described in this paragraph only, for a withdrawal of an acceptance to be effective, such withdrawal must be received at DTC's ATOP Account prior to 5:00 p.m. on the Expiration Date (as this Date may have been changed pursuant to this Invitation).  **Any Bondholder who may be unable to receive and transmit this notice on a timely basis or to act on this right of withdrawal should make arrangements for someone else to act on his or her behalf.**  The Corporation will accept for exchange all of the Invited Bonds of a Series and subseries, maturity date and CUSIP number that are validly accept and not properly withdrawn.

The Corporation will notify the Information Services (including by posting such information to the Information and Exchange Agent's website at www.globic.com/cofina) of the par amount of each Series, subseries, maturity and CUSIP number of Converted Bonds by 10:00 a.m., New York City time, on the third business day after the Expiration Date that were accepted for exchange.

## 10.    Priority of Exchange

There will be no order of priority for the exchange.  All Bondholders of Invited Bonds that accept this Invitation will receive the Exchange Consideration on the Settlement Date.

8

**11.    Acceptance of Invitation Constitutes Irrevocable Agreement; Notice of Results**

Acceptance by the Bondholders of this Invitation will constitute an irrevocable agreement between the accepting Bondholder and the Corporation to exchange these Invited Bonds and consent to the Indenture Amendment subject to the conditions and terms of this Invitation.

The acceptance of the Corporation's invitation to exchange Invited Bonds for Converted Bonds and consent to the Indenture Amendments will be deemed made when written notification is transmitted by the Corporation to the Information Services. Such notification will be made on or about 12:00 p.m. on the third business day following the Expiration Date. This notification will state the principal amount of the Converted Bonds of each Series and subseries, maturity date and CUSIP number.

**12.    Settlement Date; Exchange of Bonds**

The Settlement Date is the day on which Invited Bonds are exchanged for the Exchange Consideration. The Settlement Date has initially been set as August 1, 2019. The Corporation may change the Settlement Date by giving notice to the Information Services prior to the change. If the Corporation does not complete the exchange of the Invited Bonds for the Converted Bonds by 3:00 p.m., on August 1, 2019, the right and obligation of the Corporation to exchange the Invited Bonds for Converted Bonds will continue and Corporation will notify the Bondholders of the new Settlement Date by giving notice to the Information Services. The Indenture Amendments will become effective with respect to the Converted Bonds when the Exchange Compensation is distributed by the Corporation. A delay in the Settlement Date could result in a change to the Converted Bonds Interest Rate.

**13.    Conditions to Exchange**

The Corporation will not be required to exchange any Invited Bonds for Converted Bonds, and will incur no liability as a result, if, between the Expiration Date and the Settlement Date:

(i)    A war, national emergency, banking moratorium, suspension of payments by banks, a general suspension of trading by the New York Stock Exchange or a limitation of prices on the New York Stock Exchange exists and the Corporation believes this fact makes it inadvisable to proceed with the exchange of these Invited Bonds;

(ii)    A material disruption in commercial banking or securities settlement or clearance services shall have occurred;

(iii)    A court with competent jurisdiction has issued a decision invalidating all or any part of Act No. 91 of the Legislative Assembly of Puerto Rico, approved May 13, 2006, as amended, including as amended by Act No, 241 approved on November 15, 2018, which, among other things, created the Corporation;

(iv)    A stop order, restraining order, or injunction has been issued by, or litigation has been commenced before, any agency, court, or other governmental body of any jurisdiction, on or after the date of this Invitation, with respect to this Invitation, any of the transactions in connection with, or contemplated by, this Invitation or the Other Exchange Materials, which the Corporation or its legal counsel in good

0170

faith believes makes it inadvisable to proceed with the exchange of these Invited Bonds; or

(v) A court with competent jurisdiction has issued an order that materially adversely affects the Corporation's Plan of Adjustment under Title III of PROMESA.

**These conditions are for the sole benefit of the Corporation. They may be asserted by the Corporation regardless of the circumstances giving rise to any of these conditions, may be waived by the Corporation in whole or in part at any time and from time to time in its sole discretion and may be exercised independently for each Series and subseries, maturity date and CUSIP number. The failure by the Corporation at any time to exercise any of these rights will not be deemed a waiver of any of these rights, and the waiver of these rights with respect to particular facts and other circumstances will not be deemed a waiver of these rights with respect to any other facts and circumstances. Each of these rights will be deemed an ongoing right of the Corporation which may be asserted at any time and from time to time. Any determination by the Corporation concerning the events described in this Section will be final and binding upon all parties. If, prior to the time of exchange for any Invited Bonds for Converted Bonds, any of the events described happens, the Corporation will have the absolute right to cancel its obligations to exchange Invited Bonds for Converted Bonds without any liability to any Bondholder or nominee.**

**14. Extension and Amendment of Invitation; Changes to Terms; Termination**

The Corporation has the right to extend the Invitation at any time but no later than 9:00 a.m., New York City time, on the first Business Day following the previously scheduled Expiration Date, or any prior extension thereof, as to any or all of the Invited Bonds. Notice of an extension of the Expiration Date will be given to the Information Services and will be effective when this notice is given.

The Corporation also has the right to amend or waive the terms of this Invitation as to any or all of the Invited Bonds in any respect and at any time by giving notice to the Information Services of this amendment or waiver. The amendment or waiver will be effective at the time specified in the notice; provided that such notice with respect to a Series and subseries, maturity date and CUSIP number of an Invited Bond can only become effective before the date of the notice of the acceptance of this Invitation given pursuant to <u>Section 11</u> hereof.

If the Corporation extends this Invitation, or amends the terms of this Invitation (including a waiver of any term) in any material respect, the Corporation may (but is not required to) disseminate additional Invitation materials and extend this Invitation to the extent required to allow, in the Corporation's judgment, reasonable time for dissemination to Bondholders and for Bondholders to respond.

No extension or amendment of this Invitation (or waiver of any terms of this Invitation) will give rise to any liability of the Corporation or the Information and Exchange Agent to any Bondholder or nominee.

The Corporation also has the right to terminate the Invitation at any time up to an including the Expiration Date by giving notice to the Information Services (including by posting such notice to the Information and Exchange Agent's website at www.globic.com/cofina) of such termination. The termination will be effective at the time specified in such notice.

### 15.     Certain United States Federal Income Tax Consequences

See the Information Statement for a discussion of certain United States Federal income tax consequences relating to the Converted Bonds and Unexchanged Invited Bonds. The Corporation will not allocate proceeds of Unexchanged Invited Bonds to costs that are eligible to be financed under Section 103 of the Code and will not take any actions required under the Code and Treasury Regulations that must be taken for interest on those bonds to be excluded from gross income under Section 103 of the Code. <u>As a result, interest on the Unexchanged Invited Bonds is not excluded from gross income for federal income tax purposes under Section 103 of the Code and so will be fully subject to federal income taxation</u> (except in the case of Puerto Rico residents or corporations that meet certain requirements under the Code, as further explained under "TAX MATTERS" in the Information Statement, as such term is defined below). Residents of Puerto Rico and Puerto Rico corporations should review the section in the Information Statement that discusses the federal and Puerto Rico income tax treatment of Invited Bonds, including the Unexchanged Invited Bonds.

### 16.     Additional Considerations

In deciding whether to participate in this Invitation, each Bondholder should consider carefully, in addition to the other information contained in this Invitation and the Other Exchange Materials, the following:

***Market for Invited Bonds.***  Neither the Unexchanged Invited Bonds nor the Converted Bonds are listed on any national or regional securities exchange or reported on a national quotation system. To the extent that the Unexchanged Invited Bonds or Converted Bonds are traded, their prices may fluctuate greatly depending on the trading volume and the balance between buy and sell orders.

***Treatment of Unexchanged Invited Bonds.***  Unexchanged Invited Bonds will remain outstanding with the same terms as originally issued on February 12, 2019 and the interest thereon will <u>not</u> be excludable from gross income for federal income tax purposes.

### 17.     Representation by Bondholders to the Corporation

By accepting this Invitation, Bondholders will be deemed to have represented to and agreed with the Corporation that: (a) they consent to the Indenture Amendments, (b) they have made their own independent decisions to accept this Invitation, as to the terms thereof, and whether acceptance of this Invitation is appropriate for them; (c) such decisions were based upon their own judgment and upon advice from such advisors as they have consulted; (d) they are not relying on any communication from the Corporation as investment advice or as a recommendation to accept this Invitation, it being understood that the information from the Corporation related to the terms and conditions of this Invitation shall not be considered investment advice or a recommendation to accept this Invitation; (e) they are capable of assessing the merits of and understanding (on their own and/or through independent professional advice), and do understand and accept the terms and conditions of this Invitation, the Questions and Answers, and the Information Statement prior to making the decision as to whether or not they should exchange their Invited Bonds for Converted Bonds and consent to the Indenture Amendments.

0172

## 18.    Dealer Manager

The Corporation has retained BofA Securities, Inc. to act as Dealer Manager in connection with this Invitation. In their capacity as Dealer Manager, BofA Securities, Inc. may contact Bondholders of Invited Bonds regarding this Invitation and may request brokers, dealers and other nominees to forward this Invitation and Other Exchange Materials to beneficial owners of Invited Bonds.

The Corporation has agreed to indemnify the Dealer Manager for certain liabilities.

The Dealer Manager and its affiliates are financial institutions engaged in various activities, which may include securities trading, commercial and investment banking, financial advisory, investment management, principal investment, hedging, financing and brokerage activities. The Dealer Manager and its affiliates have, from time to time, performed, and may in the future perform, various investment banking services for the Commonwealth of Puerto Rico and/or its instrumentalities, including the Corporation, for which they received or will receive customary fees and expenses.

In the ordinary course of their various business activities, the Dealer Manager and its affiliates may make or hold a broad array of investments and actively trade debt and equity securities (or related derivative securities) and financial instruments (which may include bank loans and/or credit default swaps) for their own account and for the accounts of their customers and may at any time hold long and short positions in such securities and instruments. Such investment and securities activities may involve securities and instruments of the Commonwealth of Puerto Rico and/or its instrumentalities, including the Corporation.

As a result, holders should not rely on the Dealer Manager to make any judgment for them as to the desirability or fairness of this Invitation.

**Holders of Invited Bonds are urged to consult their own independent advisors prior to accepting or rejecting this Invitation. The Dealer Manager makes no recommendation to such holders whether to accept or reject this Invitation.**

References in this Invitation to the Dealer Manager are to BofA Securities, Inc. only in its capacity as the Dealer Manager. The Corporation reserves the right to add additional dealer managers in connection with this Invitation. Notice of any such appointment will be posted on EMMA.

## 19.    Information Statement

The Corporation has prepared the Information Statement attached hereto as Appendix A for use in connection with the Invitation. The Information Statement speaks only as of June 10, 2019.

## 20.    Miscellaneous

This Invitation is not being made to, and acceptances of this Invitation will not be accepted from or on behalf of, Bondholders in any jurisdiction in which this Invitation or the acceptance thereof would not be in compliance with the laws of such jurisdiction. In those jurisdictions whose laws require this Invitation to be made through a licensed or registered broker or dealer, this Invitation is being made on behalf of the Corporation by the Dealer Manager.

# INFORMATION STATEMENT

of

# PUERTO RICO SALES TAX FINANCING CORPORATION

RELATING TO

INVITATION TO EXCHANGE BONDS AND CONSENT TO AMENDMENTS

DATED JUNE 10, 2019

0174

Agreements are satisfied; *provided, however,* that, notwithstanding the foregoing, until all obligations with respect to the COFINA Bonds have been paid or satisfied in full in accordance with their terms, if the rate of the Pledged Sales Taxes is reduced below three percent (3%), then, in connection with such reduction, the Government must comply with the Substitution Requirements (as defined below);

(c)   impair, limit, restrict, rescind, delay or modify the rights or powers of the Corporation, the Trustee or the holders of COFINA Bonds under this Act or relating to the COFINA Revenues, or the Corporation's ability to meet its obligations to its bondholders;

(d)   amend Act 91 to impair, limit, restrict, rescind, delay or modify any obligation or commitment of the Corporation to the holders of COFINA Bonds; and

(e)   limit or restrict the rights or powers of the appropriate officers of the Government to impose, maintain, charge or collect the Pledged Sales Taxes, provided that the foregoing shall not preclude the Government from exercising its power, through a change in law, to replace the portion of the Sales Tax that corresponds to a tax rate of five and one half percent (5.5%) with Substituted Collateral (as defined below) in accordance with the Substitution Requirements.

"Substituted Collateral" means all or a portion of a tax of general applicability throughout Puerto Rico that is enacted in full substitution of the Pledged Sales Taxes or otherwise constitutes like or comparable security for the COFINA Bonds. "Substitution Requirements" is defined in Act 91 as (1) the enactment of legislation providing for Substituted Collateral that also provides (A) that the Substituted Collateral in an amount equal to the COFINA Revenues has been irrevocably transferred to and is owned solely and exclusively by the Corporation to the full extent provided under Act 91 with respect to the COFINA Revenues, (B) that, following such transfer, such Substituted Collateral in an amount equal to the COFINA Revenues is not, and shall not constitute, "available resources" or "available revenues" of the Government as that term is used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution, (C) for a lien on such Substituted Collateral in favor of the Trustee for the benefit of the Holders of COFINA Bonds to the full extent provided for under Act 91 with respect to the Statutory Lien, and (D) that the Government and the government entities shall continue to provide the covenants set forth in (a) through (e) above with respect to such Substituted Collateral, and (2) prior to the substitution of the Substituted Collateral, the ratings requirements set forth in the Ancillary Agreements are satisfied with respect to the Substituted Collateral. *See* Appendix II for definition of "Substitution Requirements" included in the Indenture, which specifies the applicable rating requirements.

### THE COFINA BONDS

**Interest Payments**

The COFINA Bonds (except for the Converted Bonds) shall bear interest from August 1, 2018 until paid (whether at maturity, prior redemption or after maturity following payment default by the Corporation), payable on the Effective Date and semiannually thereafter on each Interest Payment Date. The Unexchanged Invited Bonds shall continue to bear interest at the Effective Date interest rate. The Converted Bonds shall bear interest from the Settlement Date until paid (whether at maturity, prior redemption or after maturity following payment default by the Corporation), payable semiannually thereafter on each Interest Payment Date at the following rates:

0175

| Maturity Date | Sub-Series | Interest Rate | CUSIP No.[*] |
|---|---|---|---|
| 2040 | 2019A-2 | 4.329% | 74529JRH0 |
| 2040 | 2019A-2 | 4.329 | 74529JRJ6 |
| 2053 | 2019A-2 | 4.536 | 74529JRK3 |
| 2058 | 2019A-2 | 4.784 | 74529JRL1 |
| 2040 | 2019B-2 | 4.329 | 74529JRM9 |
| 2053 | 2019B-2 | 4.536 | 74529JRN7 |
| 2058 | 2019B-2 | 4.784 | 74529JRP2 |

Interest on the COFINA Bonds shall be computed on the basis of a 360-day year consisting of twelve 30-day months. Interest shall accrue on overdue interest and principal at the rates provided in the First Supplemental Indenture and Second Supplemental Indenture with respect to the COFINA Bonds (except for the Converted Bonds) and as listed above for the Converted Bonds, and shall compound on each Interest Payment Date. All overdue interest and principal (and any interest accruing thereon) shall remain due and payable until paid. The COFINA Bonds shall be issued as fully registered bonds in Authorized Denominations. If any Interest Payment Date or Principal Payment Date (July 1) is not a Business Day, any action to be taken on such date need not be taken on such date but may be taken on the next succeeding Business Day with the same force and effect as if taken on such date, with no additional interest accruing in respect of such delay.

## Redemption Prices and Terms

### Series 2019A Current Interest Bonds

Optional Redemption. The Series 2019A Current Interest Bonds maturing on July 1, 2034 are subject to redemption prior to maturity on and after July 1, 2025, at the election or direction of the Corporation, in whole or in part (and, if in part, in an Authorized Denomination) on any Business Day, at a redemption price equal to the principal amount thereof, plus accrued interest to the date fixed for redemption.

The Series 2019A Current Interest Bonds maturing on July 1, 2040, July 1, 2053 and July 1, 2058 are subject to redemption prior to maturity on and after July 1, 2028, at the election or direction of the Corporation, in whole or in part (and, if in part, in an Authorized Denomination) on any Business Day, at a redemption price equal to the Principal amount thereof, plus accrued interest to the date fixed for redemption.

Mandatory Redemption of the Series 2019A-1 Current Interest Bonds. The Series 2019A-1 Current Interest Bonds shall be subject to mandatory redemption, in part, through application of Sinking Fund Installments, as provided in the Indenture, upon notice given as prescribed in Article IV of the Master Indenture, at the Redemption Price of one hundred per centum (100%) of the Principal amount of each Series 2019A-1 Current Interest Bond or portion thereof to be redeemed, plus accrued interest, if any, to the date of redemption. Unless none of the Series 2019A-1 Current Interest Bonds of a maturity to be so redeemed shall then be Outstanding and, subject to the provisions of Section 5.07(b) of the Master Indenture and the paragraph "Series 2019A Current Interest Bonds – Credit Against Sinking Fund Installments" below permitting amounts to be credited to part or all of any one or more Sinking Fund Installments or the payment due at stated maturity, there shall be due and the Corporation shall be required to pay for the retirement of the Series 2019A-1 Current Interest Bonds maturing on July 1 of the years set forth below on July 1 of each of the years set forth in the following table, the amount set forth opposite such year in said table, and the said amount to be paid on each such date is established as and each payment prior to stated maturity shall constitute a Sinking Fund Installment for retirement of such Series 2019A-1 Current Interest Bonds:

---

[*] CUSIP is a registered trademark of American Bankers Association. CUSIP data herein is provided by Standard and Poor's CUSIP Service Bureau, a division of The McGraw-Hill Companies, Inc. CUSIP data is not intended to create a database and does not serve in any way as a substitute for the CUSIP Service. None of the Corporation or the Information and Exchange Agent makes any representation as to, or takes any responsibility for, the accuracy of such CUSIP numbers. CUSIP numbers are provided for convenience of reference only.

**APPENDIX III**

**FORM OF BOND COUNSEL OPINION**

August ___, 2019

Puerto Rico Sales Tax Financing Corporation
San Juan, Puerto Rico

Ladies and Gentlemen:

On February 12, 2019, we delivered our approving opinion relating to the issuance by the Puerto Rico Sales Tax Financing Corporation (the "Corporation"), an independent public corporation and instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth"), constituting an entity separate from the Commonwealth and any other instrumentality of the Commonwealth, created pursuant to Act No. 91-2006, as amended, including as amended by Act No. 241, approved November 15, 2018 (as amended, "Act 91"), of its (a) $8,277,930,717.80 aggregate principal amount at issuance of Restructured Sales Tax Bonds, Series 2019A-1 (the "Series 2019A-1 Bonds"); (b) $3,591,809,000 aggregate principal amount of Restructured Sales Tax Bonds, Series 2019A-2 (the "Series 2019A-2 Bonds", and together with the Series 2019A-1 Bonds, the "Series 2019A Bonds"); (c) $106,012,099.55 aggregate principal amount at issuance of Restructured Sales Tax Bonds, Series 2019B-1 (the "Series 2019B-1 Bonds"); and (d) $45,570,000 aggregate principal amount of Restructured Sales Tax Bonds, Series 2019B-2 (the "Series 2019B-2 Bonds", and together with the Series 2019B-1 Bonds, the "Series 2019B Bonds"). The Series 2019A Bonds and the Series 2019B Bonds are collectively referred to herein as the "Series 2019 Bonds". The Series 2019A-1 Bonds and the Series 2019B-2 Bonds are collectively referred to herein as the "Original Tax-Exempt Bonds", and the Series 2019A-2 Bonds and the Series 2019B-2 Bonds are collectively referred to herein as the "Invited Bonds". The Series 2019 Bonds and any additional bonds authorized by the Master Trust Indenture (as such term is defined below) to be issued by the Corporation are collectively referred to herein as the "Bonds".

The Series 2019 Bonds were issued under and secured by the Master Trust Indenture, dated as of February 12, 2019 (the "Master Trust Indenture"), by and between the Corporation and The Bank of New York Mellon, as trustee (the "Trustee"), as supplemented by the First Supplemental Trust Indenture, dated as of February 12, 2019, by and between the Corporation and the Trustee (the "First Supplemental Trust Indenture") and the Second Supplemental Trust Indenture, dated as of February 12, 2019, by and between the Corporation and the Trustee (the "Second Supplemental Trust Indenture", and together with the First Supplemental Trust Indenture, the "Supplemental Indentures"; the Supplemental Indentures and the Master Trust Indenture are referred to collectively as the "Original Indentures").

On May 5, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), established pursuant to the provisions of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), filed a voluntary petition for relief for the Corporation pursuant to PROMESA in the United States District Court for the District of Puerto Rico (the "Title III Court").

The Oversight Board subsequently filed with the Title III Court a *Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* dated January 9, 2019 (such plan, in the form approved in the *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* entered February 5, 2019 (the "Judgment") and as modified pursuant to any revisions made at or subsequent to the Confirmation Hearing and as may have been modified pursuant to Section 313 of PROMESA, the "COFINA Plan of Adjustment"). On February 5, 2019, the Title III Court also issued a *Memorandum of Findings of Fact and Conclusions of Law in connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* containing Findings of Fact and Conclusions of law with respect to the Bonds, and matters relevant to the Bonds, in addition to, and consistent with those of the Judgment (collectively with the Judgment, the "Confirmation Order").

On the date of original issuance on February 12, 2019, we delivered an opinion that interest (excluding pre-issuance accrued interest) on the Original Tax-Exempt Bonds was excluded from gross income for federal income tax purpose under Section 103 of the United States Internal Revenue Code of 1986, as amended (the "Code"). The Invited Bonds were issued without an opinion related to the federal income tax treatment of the interest thereon. At the time of original issuance, the Corporation was pursuing guidance from the United States Internal Revenue Service (the "IRS"), which, if obtained, could permit the delivery of such a tax-exemption opinion with respect to some or all of the Invited Bonds from the date of original issuance thereof. The Corporation and certain holders of the Series 2019 Bonds entered into the Tax Exemption Implementation Agreement, dated as of February 12, 2019 (the "Tax Implementation Agreement"), which provides, in general, that to the extent permitted in any favorable guidance received from the IRS, the Corporation would offer holders of the Invited Bonds the option to exchange those bonds for bonds which (i) receive an opinion that interest thereon is excluded from gross income for federal income tax purposes under Section 103 of the Code and (ii) have a yield that is reduced by twenty-five (25) basis points, with such yield comparison made in the manner specified in applicable Treasury Regulations.

On May 15, 2019, the Corporation and the IRS entered into a closing agreement (the "IRS Closing Agreement") in which the IRS provided such favorable guidance. The IRS Closing Agreement references the Tax Implementation Agreement and that the exchange will occur in accordance with the terms thereof, which includes the twenty-five (25) basis point reduction in yield on each of the Converted Bonds (as defined below). Pursuant to the Closing Agreement, the IRS permitted the Corporation to allocate the proceeds of the Series 2019 Bonds to the refunding of the Corporation's bonds originally issued as tax-advantaged obligations up to an amount equal to the total of the existing tax-advantaged securities claims outstanding as of February 12, 2019.

Pursuant to an Invitation to Exchange Bonds and Consent to Amendments, dated June 10, 2019 (the "Invitation"), the Corporation invited holders of the Invited Bonds to exchange those bonds (the "Exchange") for bonds of the Corporation the interest on which is excluded from gross income for federal income tax purposes under Section 103 of the Code, with a yield that is no more than twenty-five (25) basis points lower than the Invited Bond so exchanged (the "Converted Bonds") and to consent to certain amendments to the First Supplemental Indenture and the Second Supplemental Indenture. The change in yield reflected in the interest rates on the Converted Bonds has been calculated to be no more than twenty-five (25) basis points lower than the yield on the Invited Bonds so exchanged in the Yield Calculation Report dated the date hereof provided by OmniCap LLC (the "Calculation Report"). The Corporation is consummating the Exchange on the date hereof. Invited Bonds that are not exchanged are referred to herein as "Unexchanged Invited Bonds".

The Corporation is making the allocations with respect to the Converted Bonds permitted under the IRS Closing Agreement. It is also taking certain actions necessary for the Converted Bonds and Invited Bonds exchanged for such Converted Bonds to receive the tax opinions provided below. The Corporation will not allocate proceeds of the Unexchanged Invited Bonds to purposes that are eligible to be financed under Section 103 of the Code, and will not take any additional actions required under the Code and the Treasury Regulations that would enable interest on the Unexchanged Invited Bonds to be excluded from gross income for federal income tax purposes under Section 103 of the Code.

In order to effectuate the Exchange, the First Supplemental Indenture and the Second Supplemental Indenture are being amended on the date hereof to (i) reduce the rate of interest on the Converted Bonds, (ii) to permit the payment of accrued interest on the date of the Exchange, (iii) to extend the tax covenants relating to the Original Tax-Exempt Bonds contained in Section 5.01 to the Converted Bonds *mutatis mutandis* as if they were the Original Tax-Exempt Bonds and (iv) in order to preserve the mandatory sinking fund redemptions of the Invited Bonds, the sinking fund installment payments set forth in the original mandatory redemption schedules for the Invited Bonds will be allocated pro rata between the Converted Bonds and the Unexchanged Invited Bonds (the "Amended Supplemental Indentures" and with the Original Indentures, the "Indentures"). Other than as described herein, there are no other changes being made to the terms of the Invited Bonds that are exchanged for Converted Bonds. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Indentures.

The Converted Bonds are dated, mature, are redeemable prior to maturity, are payable and bear interest or accrete in value in the manner and upon the terms set forth in the Indentures. The Converted Bonds are issuable in the form of fully registered bonds in the denominations set forth in the Indentures and will be initially registered in

the name of Cede & Co., as registered owner and nominee for The Depository Trust Company, New York, New York, which will act as securities depository for the Converted Bonds.

As Transaction Counsel we have examined (i) Act 91, (ii) certified copies of the proceedings of the Corporation authorizing the issuance of the Series 2019 Bonds, (iii) certified copies of the proceedings of the Corporation authorizing the Exchange and the issuance of the Converted Bonds, (iv) the Indentures, (v) one Converted Bond, as executed and authenticated, (vi) the COFINA Plan of Adjustment, (vii) the Confirmation Order and the Closing Agreement. We have also examined originals or copies, certified or otherwise identified to our satisfaction, of such instruments, certificates and documents as we have deemed necessary or appropriate for the purposes of rendering the opinions set forth below.

In such examinations, we have assumed the genuineness of all signatures, the authenticity of all documents tendered to us as originals and the conformity to original documents of all documents submitted to us as certified or photostatic copies. As to questions of fact material to our opinion we have relied upon the certified proceedings and other certifications of public officials furnished to us without undertaking to verify the same by independent investigation.

With respect to opinions set forth below, we have assumed legality of PROMESA and all determinations made, and actions taken, by the Commonwealth, the Oversight Board, the Title III Court and the Corporation pursuant thereto. In addition, with respect to the opinions 1, 2, 3 and 4 below, we have expressly relied upon the determinations of the Title III Court contained in the Confirmation Order, portions of which are also set forth in the Recitals of the Master Trust Indenture.

The Code sets forth certain requirements which must be met subsequent to the issuance and delivery of the Converted Bonds (and the Invited Bonds exchanged for such Converted Bonds) and the Original Tax-Exempt Bonds for interest thereon to be and remain excluded from gross income for federal income tax purposes. Noncompliance with such requirements could cause the interest on the Converted Bonds (and the Invited Bonds exchanged for such Converted Bonds) and the Original Tax-Exempt Bonds to be included in gross income for federal income tax purposes retroactive to February 12, 2019, the date of issue of the Converted Bonds (and the Invited Bonds exchanged for such Converted Bonds) and the Original Tax-Exempt Bonds. Pursuant to the Indentures and/or the Tax Certificate as to Arbitrage and the Provisions of Sections 103 and 141-150 of the Internal Revenue Code of 1986 dated February 12, 2019 (the "Original Tax Certificate"), as supplemented on the date hereof (the "Supplemental Tax Certificate", and with the Original Tax Certificate, the "Tax Certificate"), the Corporation, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Commonwealth have covenanted to comply with the applicable requirements of the Code in order to maintain the exclusion of the interest on the Converted Bonds (and the Invited Bonds exchanged for such Converted Bonds) and the Original Tax-Exempt Bonds from gross income for federal income tax purposes pursuant to Section 103 of the Code. In addition, the Corporation, AAFAF and the Commonwealth have made certain representations and certifications in the Indentures and/or Tax Certificate. We have not undertaken to independently verify the accuracy of those certifications and representations. We are further relying on the conclusions of the IRS contained in the IRS Closing Agreement in providing the opinions herein.

As a result of the allocations permitted under the IRS Closing Agreement and the delivery of the opinions provided below, the Converted Bonds (and Invited Bonds exchanged for such Converted Bonds) will be treated for federal income tax purposes as originally issued on the same date (February 12, 2019) and for the same general purposes as the Original Tax-Exempt Bonds. In providing the opinions herein, we have assumed compliance with all covenants and agreements contained in the Original Indentures and the Original Tax Certificate with respect to the Original Tax-Exempt Bonds, including (without limitation) covenants and agreements compliance with which is necessary to assure that actions, omissions or events on and after the date of original issuance of the Original Tax-Exempt Bonds have not caused and will not cause interest on the Original Tax-Exempt Bonds and the Converted Bonds (and the Invited Bonds exchanged for such Converted Bonds) to be included in gross income for federal income tax purposes. We have not undertaken to determine compliance with any of such covenants and agreements or any other requirements of law, and, except as expressly described herein, we have not otherwise reviewed any actions, omissions or events occurring after the date of original issuance of the Original Tax-Exempt Bonds and the Converted Bonds (and the Invited Bonds exchanged for such Converted Bonds).

Based upon the foregoing, and subject to the assumptions, limitations and qualifications set forth herein, we are of the opinion that:

1. Act 91 is valid in all respects material to the matters covered in this opinion.

2. The Corporation is duly constituted and validly existing as an independent public corporation and instrumentality of the Commonwealth, constituting an entity independent and separate from the Commonwealth and any other instrumentality of the Commonwealth.

3. The Amended Supplemental Indentures have been duly and lawfully authorized, executed and delivered by the Corporation. The Amended Supplemental Indentures are in full force and effect and are valid and binding upon the Corporation and enforceable in accordance with their respective terms.

4. The Corporation is authorized and entitled to issue the Converted Bonds and, upon the execution and delivery thereof and upon authentication by the Trustee, the Converted Bonds will be duly and validly issued and will constitute valid and binding special obligations of the Corporation entitled to the benefits of the Indentures and enforceable in accordance with their respective terms. The Statutory Lien creates the valid pledge and the valid lien upon the right, title and interest of the Corporation in the Trust Estate in favor of the Trustee (for the benefit of the Holders of Bonds) which it purports to create, subject only to the provisions of the Indentures permitting the withdrawal, payment, setting apart or appropriation thereof for the purposes and on the terms and conditions set forth in the Indentures.

5. In reliance upon the Calculation Report's determination that there is less than a twenty-five (25) basis point change in yield between the yield on the Invited Bonds and the yield on the Converted Bonds exchanged for such Invited Bonds, for U.S. federal income tax purposes, such change in yield, also taking into account the other modifications described above, is not considered a significant modification under Treasury Regulation Section 1.1001-3, and therefore the Exchange of each of the Invited Bonds for the Converted Bonds will not, in and of itself, result in a reissuance or refunding of such Invited Bonds under such Treasury Regulation Section 1.1001-3.

6. Under existing law, assuming compliance with the aforementioned tax covenants and the accuracy of the aforementioned representations and certifications, interest (including original issue discount) on the Converted Bonds, and Invited Bonds exchanged for such Converted Bonds beginning on February 12, 2019, the date of original issuance, is excluded from gross income for federal income tax purposes under Section 103 of the Code. We are also of the opinion that such interest is not treated as a preference item in calculating the alternative minimum tax imposed under the Code. We express no opinion regarding interest and other amounts with respect to the Invited Bonds exchanged for Converted Bonds that accrued from August 1, 2018, the original dated date of such bonds, to February 12, 2019, the date of original issuance thereof.

7. Interest on the Converted Bonds, and Invited Bonds exchanged for such Converted Bonds beginning on February 12, 2019, the date of original issuance thereof, is exempt from state, Commonwealth and local income taxation.

Except as stated in paragraphs (5), (6) and (7) above, we express no opinion as to: (a) any other federal, state, Commonwealth, local or foreign tax consequences of the ownership or disposition of, or the amount, accrual or receipt of interest on, the Series 2019 Bonds (including the Converted Bonds, Invited Bonds exchanged for such Converted Bonds and the Unexchanged Invited Bonds), or (b) any transaction that is not expressly referenced in this opinion, or the effect of any such transaction on either (I) the character or treatment of interest on the Series 2019 Bonds (including the Converted Bonds, Invited Bonds exchanged for such Converted Bonds and the Unexchanged Invited Bonds) for federal, state, Commonwealth, local or foreign tax purposes, or (II) the amount of interest on the Series 2019 Bonds (including the Converted Bonds, Invited Bonds exchanged for such Converted Bonds and the Unexchanged Invited Bonds) that will be treated as interest for federal, state, Commonwealth, local or foreign tax purposes. We express no opinion as to any federal, state, Commonwealth, local or foreign tax law consequences

Appendix III-4

with respect to Series 2019 Bonds (including the Converted Bonds, Invited Bonds exchanged for such Converted Bonds and the Unexchanged Invited Bonds) that are held by the Commonwealth, the Corporation, or any agency or instrumentality thereof. Furthermore, we express no opinion as to any federal, state, Commonwealth, local or foreign tax law consequences with respect to the Series 2019 Bonds (including the Converted Bonds, Invited Bonds exchanged for such Converted Bonds and the Unexchanged Invited Bonds) or the interest thereon, if any action is taken with respect to the Series 2019 Bonds (including the Converted Bonds, Invited Bonds exchanged for such Converted Bonds and the Unexchanged Invited Bonds) or the proceeds thereof upon the advice or approval of other counsel. We express no opinion with respect to interest on Unexchanged Invited Bonds.

It is to be understood that the rights of the holders of the Series 2019 Bonds (including the Converted Bonds, Invited Bonds exchanged for such Converted Bonds and the Unexchanged Invited Bonds) and the enforceability thereof and of the Statutory Lien and the Indentures may be subject to bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights heretofore or hereafter enacted to the extent constitutionally applicable and that their enforcement may also be subject to the exercise of judicial discretion in appropriate cases.

Respectfully submitted.

[THIS PAGE INTENTIONALLY LEFT BLANK]

## APPENDIX IV

## FORM OF OPINION OF ORRICK HERRINGTON & SUTCLIFFE LLP

August 1, 2019

Bank of New York Mellon (as Trustee)
240 Greenwich Street, 7 East
New York, New York 10286

Re:    Exchange of COFINA Bonds Series 2019-A-2 and Series 2019-B-2

Ladies and Gentlemen:

We have acted as special counsel for COFINA Senior Bondholders' Coalition (the "Coalition") in connection with the Invitation to Exchange Bonds and Consent to Amendments by the Puerto Rico Sales Tax Financing Corporation ("COFINA") to Tender and Exchange certain Sub-Series of COFINA's Restructured Sales Tax Bonds (the "Invited Bonds"), dated as of June 10, 2019 (the "Invitation"), offered to the beneficial owners of those Invited Bonds (the "Bondholders"), as specified in the Invitation. Capitalized terms not otherwise defined herein shall have the meanings set forth in the Invitation.

The Invited Bonds were originally issued on February 12, 2019 without an opinion related to the U.S. federal income tax treatment of the interest thereon. Pursuant to a Tax Exemption Implementation Agreement dated as of February 12, 2019 (the "Tax Implementation Agreement") by and among the Financial Oversight and Management Board for Puerto Rico, COFINA, the Puerto Rico Fiscal Agency and Financial Advisory Authority, and certain beneficial holders of the existing securities listed in the Tax Implementation Agreement (among such beneficial holders, the Bondholders), to the extent permitted in any favorable guidance received from the IRS, COFINA would engage in the Invitation described above – i.e., COFINA would offer holders of the Invited Bonds the option to exchange those bonds for bonds which receive an opinion that interest is excluded from gross income for federal income tax purposes under Section 103 of the U.S. Internal Revenue Code of 1986, as amended (the "Converted Bonds"), with the yield on such Converted bonds reduced by no more than twenty-five (25) basis points when compared to the yield of the Invited Bonds, with such yield comparison made in the manner specified in applicable Treasury Regulations. The Invitation has been extended in response to the promulgation of such favorable guidance by the IRS, as evidenced in the IRS Closing Agreement dated May 15, 2019, as referenced in the Invitation.

For purposes of giving the opinion hereinafter set forth, we have examined executed or conformed counterparts, or copies otherwise proved to our satisfaction, of:

(i)      the Invitation;

(ii)    the Information Statement of COFINA relating to Invitation to Tender and Exchange Bonds dated June 10, 2019 (the "Information Statement");

(iii)   the documents relating to the issuance of the Invited Bonds;

(iv)   the amendments being made to the First and Second Supplemental Indentures;

(v)    the Yield Calculation Report prepared by Omnicap LLC (the "Report"); and

(vi)   such other documents as we have deemed necessary or appropriate as a basis for the opinion set forth below.

0183

In rendering the opinion below, we have assumed the following: (i) the due authorization, execution and delivery by all parties thereto with respect to all documents examined by us; (ii) that each party to such documents has the power and authority to enter into and perform all of its obligations thereunder; and (iii) the respective parties to the documents examined by us and all persons having obligations thereunder or making representations therein have, and will, act in all respects and at all relevant times in conformity with the requirements and provisions of such documents and all representations contained therein. We have further assumed the following: (i) the authenticity of original documents and the genuineness of all signatures; (ii) the conformity to the originals of all documents submitted to us as copies; (iii) the truth, accuracy and completeness of the information, factual matters, representations and warranties contained in the records, documents, instruments and certificates we have reviewed; and (iv) other than the change in the coupon rate on the Converted Bonds, and certain amendments to the First And Second Supplemental Indentures described in the Invitation to (a) permit the payment of accrued interest on the date of the Exchange, (b) extend certain tax covenants so as to apply them to the Converted Bonds, and (c) allocate a portion of required sinking fund installment payments to the Converted Bonds, there are no other changes or modifications being made to any of the original documents. As to any facts material to this opinion which we did not independently establish or verify, we have relied upon statements and representations of officers and other representatives of COFINA and others. We specifically are relying on the calculations prepared by Omnicap, LLC in the Report that show the difference in yield between the Invited Bonds and the Converted Bonds to be no more than 25 basis points.

Based on and limited by the foregoing, having regard for legal considerations which we deem relevant, we are of the opinion that,

- in reliance upon the Report's determination that there is less than a 25 basis point change in yield between the yield on each of the Invited Bonds and the yield on the Converted Bonds exchanged for such Invited Bonds, for U.S. federal income tax purposes, such change in yield, also taking into account the other modifications described above, are not considered significant modifications under Treasury Regulations Section 1.1001-3, and therefore the exchange of the Converted Bonds for the Invited Bonds will not, in and of itself, result in a reissuance or refunding of such Invited Bonds under such Treasury Regulations Section 1.1001-3.

We express no opinion as to the law of any jurisdiction other than the federal income tax laws of the United States of America. Our opinion is limited solely to the matters contained in the paragraph above. Our services did not include financial or other non-legal advice. We have issued no opinion as to the validity or enforceability of, or the tax-exempt status of interest on, the Invited Bonds or the Converted Bonds. In addition, we undertake no responsibility for the accuracy, completeness or fairness of the Invitation, Information Statement or other offering material, if any, relating to the Invited Bonds or the Converted Bonds and express no opinion with respect thereto.

This letter is being delivered to Bank of New York Mellon, as Trustee (the "Trustee"), pursuant to the Tax Implementation Agreement. Notwithstanding the delivery of this letter to the Trustee, this letter is for the sole benefit of, and may be relied upon only by, the Coalition. This letter may not be used, circulated, quoted, relied upon or otherwise referred to for any other purpose or by any other person (including, without limitation, the Trustee and COFINA) without our prior written consent. No attorney-client relationship has existed or exists between the addressee of this letter and our firm in connection with the Invited Bonds or the Converted Bonds or by virtue of this letter.

This letter speaks only as of the date hereof, and we have no responsibility or intent to update this letter, to consider its applicability or correctness to any person other than the Coalition, or to take into account any actions or omissions or changes in law or facts or any other matters which may come to our attention after the date hereof.

Very truly yours,

ORRICK, HERRINGTON & SUTCLIFFE LLP

0184

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

        Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

-------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION (COFINA),

        Debtor.

PROMESA
Title III

No. 17 BK 3284-LTS

-------------------------------------------------------------------x

**INTERROGATORIES AND REQUESTS FOR PRODUCTION
OF INDIVIDUAL COFINA BONDHOLDER (CLAIM NO. 10701)
TO FOMB AND COFINA**

June 19, 2019

Exhibit 6

0185

**PLEASE TAKE NOTICE THAT,** pursuant to Rules 7033 and 7034 of the Federal Rules of Bankruptcy Procedure, incorporating by reference Rules 33 and 34 of the Federal Rules of Civil Procedure, Financial Oversight and Management Board ("FOMB") as Representative of the Puerto Rico Sales Tax Financing Corp. ("COFINA"), Puerto Rico Sales Tax Financing Corp., and Financial Oversight and Management Board as Representative of the Commonwealth of Puerto Rico (the "Commonwealth"), are required within thirty (30) days of the service hereof, to produce the documents requested by, and to answer in writing and under oath the following interrogatories propounded by, Peter C. Hein (Claimant in No. 10701).

### Request for Production of Documents

1.     Produce the determination the IRS provided to COFINA on or about May 15, 2019. (This determination is referred to in an "Event Notice" disseminated by or on behalf of COFINA on or about May 15, 2019 (¶ 3 of that Event Notice).)

2.     Produce the closing agreement COFINA and the IRS entered into on or about May 15, 2019. (This closing agreement is referred to in the COFINA June 10, 2019 Exchange Offer (page 1), the June 10, 2019 COFINA Information Statement (page 1 and 60), and the COFINA June 10, 2019 Q&A page 5 (response to Q 11).)

3.     Produce the private letter ruling or closing agreement request filed by COFINA with the IRS on or about December 14, 2018. (This is referred to in the COFINA June 10, 2019 Q&A, page 5 (response to Q 11) and the "tax exemption implementation agreement" dated February 12, 2019 that COFINA entered into (Clause "E").)

4.     Produce any documents that any person submitted to the IRS, or any other government office or agency, in support of the request referenced in Request 3 above.

5.     Produce any documents that reflect or refer to the transmittal of any drafts, preliminary or final versions of one or more of the documents requested in Request 1, 2, or 3, above, to any person who is or was a bondholder or attorney or other representative of a bondholder.

6.     Produce any documents that reflect or refer to the transmittal of any drafts, preliminary or final versions of one or more of the documents requested in Request 1, 2 or 3 above, to any person who is **not** an employee, officer, attorney for, or agent of, FOMB, COFINA, the Commonwealth or the IRS.

### Interrogatories

**INTERROGATORY NO. 1**:  State whether any bondholder or attorney or other representative of a bondholder has been provided one or more copies, in any form, of the:

(a)   determination referred to in Request 1,

(b)   closing agreement referred to in Request 2,

(c)   the private letter ruling or closing agreement request referred to in Request 3 above, or

(d)   drafts, preliminary versions of, portions of, or extracts from, any of the foregoing.

If the answer to (a), (b), (c) or (d) is "yes", identify each such person, describe the date and circumstances under which each such document or portion thereof was provided to such person, and produce all documents reflecting the Communications related thereto.

**INTERROGATORY NO. 2**:  State whether any person who is **not** an employee, officer, attorney for, or agent of, FOMB, COFINA, the Commonwealth or the IRS has been provided one or more copies, in any form, of the:

(a)   determination referred to in Request 1,

(b)   closing agreement referred to in Request 2,

-2-

0187

(c) the private letter ruling or closing agreement request referred to in Request 3 above, or

(d) drafts, preliminary versions of, portions of, or extracts from, any of the foregoing

If the answer to (a), (b), (c) or (d) is "Yes", identify each such person, describe the date and circumstances under which each such document or portion thereof was provided to such person, and produce all documents reflecting the Communications related thereto.

**INTERROGATORY NO. 3**:  Is there any agreement with any party, or other restraint imposed by any party, that prohibits You from producing a copy of any of the documents referred to in Requests for Production No. 1, 2, 3 or 4 above.

If your answer is "Yes," (a) produce a copy thereof (if written) or describe it (if oral), (b) specify who requested such agreement or other restraint and under what circumstances such agreement or restraint was requested, (c) state whether You requested or suggested such agreement or restraint, and (d) describe and produce all Communications related thereto.

**INTERROGATORY NO. 4**:  Identify by date and participants, and describe, each Communication that took place prior to February 12, 2019, with any bondholder or attorney or other representative of a bondholder concerning (i) the "tax exemption implementation agreement" dated February 12, 2019, or (ii) the request referred to in Request for Production No. 3 above, and produce the documents reflecting each such Communication.

**INTERROGATORY NO. 5**:  State the name of the person(s) answering these Interrogatories and their telephone number, email address, and physical address.

## Definitions

1.    "Communication(s)" or "communication(s)" shall mean any contact, oral or written, including electronic, whereby information of any nature is transmitted or transferred,

0188

including without limitation, a Person(s) seeing or hearing any information by any means and any Document memorializing or referring to the contact.

      2.     The terms "Document," "Documents," "document," and "documents" are used in their broadest possible sense and refer, without limitation, to all written, electronically stored, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications or records of every kind and description, whether comprised of letters, words, numbers, pictures, sounds, or symbols, or any combination thereof, whether prepared by hand or by mechanical, electronic, magnetic, photographic, or other means, and including audio or video recordings of communications, occurrences or events.  The terms "Document" and "Documents" shall include all preliminary versions, drafts or revisions of the foregoing, and all copies of a Document shall be produced to the extent that the copies differ from the Document produced due to notations, additions, insertions, comments, enclosures, attachments or markings of any kind.

      3.     "Including" means including, but not limited to.

      4.     "Person(s)" shall mean any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other entity.  The acts of a Person shall include the acts of directors, officers, owners, members, employees, agents, attorneys or other representatives acting on the Person's behalf.

      5.     "You," "Your," "you," or "your" means either COFINA or FOMB including employees, officers, attorneys for or agents of COFINA or FOMB.

### Instructions

      1.     Pursuant to Rule 7033, you are to furnish all information available to You and to Your agents, employees and attorneys in answering the Interrogatories.  You are to designate which of such information is not within your first-hand knowledge, and as to that information

-4-

you are to state the name and address of every person from whom it was received, or, if the source of the information is documentary, a full description of the document including the location thereof.

2.      Pursuant to Rule 7033, you are not to leave any part of an Interrogatory unanswered merely because you may object to another part of that Interrogatory.  If you raise a claim of privilege and/or an objection to any Interrogatory, or any subpart thereof, and an answer is not provided on the basis of your assertion of that objection, you must identify the nature of the privilege or reasons for nondisclosure asserted and provide the following information:

A.      For documents:

(1)     the reasons for withholding the document;

(2)     a statement of the basis for the claim of privilege, work product protection or other ground for non-disclosure; and

(3)     a brief description of the document, including:

(a)     the date of preparation of the document and any date identified on the document;

(b)     its number of pages, attachments and appendices;

(c)     the name or names of its authors or preparers and an identification by employment and title of each such person;

(d)     the name of each person who was sent, shown, or blind or carbon copied on the document, or who has had access to or custody of the document, together with an identification of each such person;

(e)     the present custodian; and

(f)     its subject matter and, in the case of any document referring or relating to a meeting or conversation, an identification of such meeting or conversation.

B.      For oral communications:

(1)     the name of the person making the communication and the name of all persons present while the communication was made, and, where not apparent, the relationship of the persons present to the person making the communication;

      (2)     the date and place of the communication; and

      (3)     the general subject matter of the communication.

3.     If you answer any Interrogatory by reference to records from which the answer may be derived or ascertained, you must:

     A.    specify the document to be produced in sufficient detail to permit the propounder of these Interrogatories to locate and identify the records and to ascertain the answer to the Interrogatory as readily as you would be able to ascertain the answer to the Interrogatory;

     B.    make available any computerized information or summaries thereof that you have, or can adduce by a relatively simple procedure;

     C.    provide compilations, abstracts or summaries in your custody or readily obtainable by you; and

     D.    make available such documents for inspections and copying within thirty (30) days after service of answers to this First Set of Interrogatories.

4.     If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify in writing each such document and provide the following information:

     A.    the date it was lost, discarded or destroyed;

     B.    the circumstances and manner in which it was lost, discarded or destroyed;

     C.    the reason for disposing of the document (if discarded or destroyed);

     D.    the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document;

     E.    the identity of the person(s) who lost, discarded or destroyed the document; and

     F.    the identity of all persons having knowledge of the contents thereof.

5.     Unless another time period is encompassed by the Interrogatory, each Interrogatory refers to and includes the period from May 5, 2017 through the date of your response to that Interrogatory.

6.     If in response to an Interrogatory, you do not know all the facts necessary to provide a complete answer, you should provide such facts as are known to you and any

estimates, approximations or beliefs that you consider reliable.  Any such estimates,

approximations or beliefs should be clearly noted, and the basis for your belief and the reliability

thereof should be explained.  Specify the portion of the Interrogatory that you claim you are

unable to answer fully and completely, and state what knowledge, information or belief you have

concerning the unanswered portion of the interrogatory.  If the information sought is in the

possession of a person other than you, identify that person.

7.    All Interrogatories and subdivisions thereof should be answered separately and

identified so that the answer clearly corresponds to the Interrogatory or subdivision to which the

answer is being offered.

8.    Where an Interrogatory does not specifically request a particular fact or particular

information, but where such fact or information is necessary to make the answer to the

Interrogatory comprehensible, complete or not misleading, the Interrogatory is deemed to request

such fact or information.

9.    The Interrogatories set forth herein are to be answered to the extent of all

information that is or may be available to you or to any other person or entity who has acted or is

now acting on your behalf.

10.    Pursuant to Rule 7033, these Interrogatories are deemed continuing in nature and

require supplemental responses in the event you obtain information that renders the answers

supplied in any way incomplete or inaccurate.

Dated:  June 19, 2019

Peter C. Hein, Pro Se
101 Central Park West, Apt. 14E
New York, NY  10023
petercheinsr@gmail.com

0192

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al,*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## RESPONSES AND OBJECTIONS OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING CORPORATION, TO INDIVIDUAL BONDHOLDER'S (CLAIM NO. 10701) INTERROGATORIES AND REQUESTS FOR PRODUCTION

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, COFINA, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Exhibit 7                                                                                     0193

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Section 310 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA") (48 U.S.C. § 2170) and Federal Rules of Bankruptcy Procedure 7026, 7033, 7044 and 9014, the Local Rules of the United States Bankruptcy Court for the District of Puerto Rico, or the presiding Court's chambers practices and case management orders (collectively, the "Governing Rules"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "FOMB"), as the representative for COFINA pursuant to Section 315(b) of PROMESA, hereby responds and objects to the *Interrogatories and Requests for Production of Individual COFINA Bondholder (Claim No. 10701) to FOMB and COFINA* (the "Interrogatories," and each individual interrogatory an "Interrogatory," and the "Requests," and each individual request a "Request") served by Peter C. Hein ("Hein"), and dated June 19, 2019, as follows:

## GENERAL OBJECTIONS

1.      COFINA objects to the Interrogatories, and to each and every Interrogatory, and to the Requests, and to each and every Request, as irrelevant, overbroad, and unduly burdensome in light of the fact that the Court lacks jurisdiction to consider the issues raised by the Requests and Interrogatories because those same issues are currently pending before the First Circuit Court of Appeals. *See, e.g.*, *Pinto Lugo v. Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 19-1182 (1st Cir.).

2.      COFINA objects to the Interrogatories, and to each and every Interrogatory, and to the Requests, and to each and every Request, as irrelevant, overbroad, and unduly burdensome to the extent they seek information neither necessary nor proportionate to the narrow question whether the remainder of Proof of Claim No. 10701 (the "Claim"), filed by Hein on May 4, 2018,

2

should be disallowed.  Hein's effort to engage in voluminous discovery is clearly outside of the scope of the narrow issues to be decided by the Court in connection with COFINA's objection to Hein's claim.

3.      COFINA objects to the Requests and Interrogatories, and to each and every Request and Interrogatory, to the extent (i) they exceed the legitimate scope of discovery in connection with Rule 7033 and Rule 7034, and (ii) the burden or expense of the proposed discovery outweighs the likely benefit, considering the needs of the case, the amount in controversy, and the parties' resources.

4.      The response to any Request or Interrogatory does not constitute an admission by COFINA that the information requested by the Request or Interrogatory or the information contained in COFINA's response is relevant or material to the issues before the Court or is admissible.

5.      COFINA objects to the Definitions, the Instructions, the Requests, and the Interrogatories, and to each and every Request and Interrogatory, to the extent they purport to impose burdens on COFINA inconsistent with, or not otherwise authorized by, or seek to impose obligations exceeding those imposed by the Governing Rules. In responding to these Requests and Interrogatories, and unless otherwise noted, COFINA will construe (a) all words in accordance with their ordinary English meaning, as informed by the Governing Rules, and (b) respond to the Requests and Interrogatories in a manner consistent with its obligations under the Governing Rules, and not otherwise.

6.      COFINA objects to the Requests and Interrogatories, and to each and every Request and Interrogatory, to the extent the information sought is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process

3

privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. COFINA intends to and does assert any and all such privileges with respect to all such information. Nothing in these Responses and Objections is intended as, nor shall in any way be deemed, a waiver of any of these privileges, doctrines, or immunities.

7.      COFINA objects to the Interrogatories, and to each and every Request and Interrogatory, as unduly burdensome to the extent they request COFINA respond to topics beyond its knowledge. COFINA likewise objects to the Requests, and to each and every Request, to the extent they request documents outside COFINA's possession, custody or control. COFINA further objects to the Requests and Interrogatories, and to each and every Request and Interrogatory, to the extent they call for information that is publicly available, unreasonably cumulative or duplicative, or obtainable from another source more convenient, less burdensome, or less expensive, including information known to Hein.

8.      COFINA objects to the Requests and Interrogatories, and to each and every Request and Interrogatory, to the extent they seek information that is confidential or proprietary in nature, or otherwise constitutes protected commercial, strategic, financial or competitively sensitive or trade secret information, including, but not limited to, information or models created by COFINA's current or former financial advisors. COFINA will provide responses to Requests and Interrogatories seeking such information only pursuant to an appropriate Protective Order.

9.      COFINA objects to the Requests and Interrogatories, and to each and every Request and Interrogatory, to the extent they (i) imply the existence of facts or circumstances that do not or did not exist, or (ii) state or assume legal or factual conclusions. By providing these Objections and Responses, COFINA does not admit any factual or legal premise in the Requests and

4

Interrogatories.

10.     COFINA objects to the Requests and Interrogatories, and to each and every Request
and Interrogatory, as overbroad and unduly burdensome to the extent they purport to require
COFINA to provide "all" or "any" information concerning a topic, so as to make it impossible to
identify the limits of the inquiry, and to make the topics so overbroad as to be impossible to address
by Request and Interrogatory response.

11.     The above General Objections are incorporated into each of the following specific
Objections and Responses.

## SPECIFIC RESPONSES AND OBJECTIONS TO
## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

Produce the determination the IRS provided to COFINA on or about May 15,
2019. (This determination is referred to in an "Event Notice" disseminated by or on behalf
of COFINA on or about May 15, 2019 (¶ 3 of that Event Notice).)

**RESPONSE TO REQUEST NO. 1:**

COFINA objects to this Request in light of the fact that this Court lacks jurisdiction to
consider the issues raised by the Request.  COFINA further objects to this Request as irrelevant,
unnecessary, and beyond the scope of discovery necessary in connection with the Court's
consideration of COFINA's objection to the Claim.  COFINA further objects to this Request on
the grounds that it seeks documents protected by the attorney-client privilege, the attorney work
product doctrine, the common interest privilege, the deliberative process privilege, or any other
applicable privileges, doctrines, or immunities protecting information from disclosure.

5

0197

In light of the foregoing General Objections, each of which is specifically incorporated into this Response, and the specific objections above, COFINA will not produce documents responsive to this Request.

**REQUEST NO. 2:**

Produce the closing agreement COFINA and the IRS entered into on or about May 15, 2019. (This closing agreement is referred to in the COFINA June 10, 2019 Exchange Offer (page 1), the June 10, 2019 COFINA Information Statement (page 1 and 60), and the COFINA June 10, 2019 Q&A page 5 (response to Q 11).)

**RESPONSE TO REQUEST NO. 2:**

COFINA objects to this Request in light of the fact that this Court lacks jurisdiction to consider the issues raised by the Request. COFINA further objects to this Request as irrelevant, unnecessary, and beyond the scope of discovery necessary in connection with the Court's consideration of COFINA's objection to the Claim. COFINA further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

In light of the foregoing General Objections, each of which is specifically incorporated into this Response, and the specific objections above, COFINA will not produce documents responsive to this Request.

**REQUEST NO. 3:**

Produce the private letter ruling or closing agreement request filed by COFINA with the IRS on or about December 14, 2018. (This is referred to in the COFINA June 10, 2019 Q&A, page 5 (response to Q 11) and the "tax exemption implementation agreement" dated February 12, 2019 that COFINA entered into (Clause "E").)

**RESPONSE TO REQUEST NO. 3:**

6

0198

COFINA objects to this Request in light of the fact that this Court lacks jurisdiction to consider the issues raised by the Request.  COFINA further objects to this Request as irrelevant, unnecessary, and beyond the scope of discovery necessary in connection with the Court's consideration of COFINA's objection to the Claim.  COFINA further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

In light of the foregoing General Objections, each of which is specifically incorporated into this Response, and the specific objections above, COFINA will not produce documents responsive to this Request.

## REQUEST NO. 4:

Produce any documents that any person submitted to the IRS, or any other government office or agency, in support of the request referenced in Request 3 above.

## RESPONSE TO REQUEST NO. 4:

COFINA objects to this Request in light of the fact that this Court lacks jurisdiction to consider the issues raised by the Request.  COFINA further objects to this Request as irrelevant, unnecessary, and beyond the scope of discovery necessary in connection with the Court's consideration of COFINA's objection to the Claim.  Moreover, COFINA objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  In addition, COFINA objects to this Request to the extent it seeks documents that are outside its possession, custody or control.  Further, COFINA objects to this Request as overly broad, unduly burdensome,

7

and not proportional to the needs of the case because it seeks "any" documents submitted by "any" person or government agency or official.

In light of the foregoing General Objections, each of which is specifically incorporated into this Response, and the specific objections above, COFINA will not produce documents responsive to this Request.

**REQUEST NO. 5:**

Produce any documents that reflect or refer to the transmittal of any drafts, preliminary or final versions of one or more of the documents requested in Request 1, 2, or 3, above, to any person who is or was a bondholder or attorney or other representative of a bondholder.

**RESPONSE TO REQUEST NO. 5:**

COFINA objects to this Request in light of the fact that this Court lacks jurisdiction to consider the issues raised by the Request. COFINA further objects to this Request as irrelevant, unnecessary, and beyond the scope of discovery necessary in connection with the Court's consideration of COFINA's objection to the Claim. Moreover, COFINA objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. In addition, the Cofina objects to this Request to the extent it seeks documents that are outside its possession, custody or control. Further, COFINA objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks "any" documents that "reflect or refer to" "any" drafts.

In light of the foregoing General Objections, each of which is specifically incorporated into this Response, and the specific objections above, COFINA will not produce documents responsive to this Request.

8

**REQUEST NO. 6:**

Produce any documents that reflect or refer to the transmittal of any drafts, preliminary or final versions of one or more of the documents requested in Request 1, 2 or 3 above, to any person who is **not** an employee, officer, attorney for, or agent of, FOMB, COFINA, the Commonwealth or the IRS.

**RESPONSE TO REQUEST NO. 6:**

COFINA objects to this Request in light of the fact that this Court lacks jurisdiction to consider the issues raised by the Request. COFINA further objects to this Request as irrelevant, unnecessary, and beyond the scope of discovery necessary in connection with the Court's consideration of COFINA's objection to the Claim. Moreover, COFINA objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. In addition, COFINA objects to this Request to the extent it seeks documents that are outside its possession, custody or control. Further, COFINA objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks "any" documents that "reflect or refer to" "any" drafts.

In light of the foregoing General Objections, each of which is specifically incorporated into this Response, and the specific objections above, COFINA will not produce documents responsive to this Request.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

State whether any bondholder or attorney or other representative of a bondholder has been provided one or more copies, in any form, of the:
(a)   determination referred to in Request 1,

9

0201

(b)  closing agreement referred to in Request 2,

(c)  the private letter ruling or closing agreement request referred to in Request 3 above, or

(d)  drafts, preliminary versions of, portions of, or extracts from, any of the foregoing.

If the answer to (a), (b), (c) or (d) is "yes", identify each such person, describe the date and circumstances under which each such document or portion thereof was provided to such person, and produce all documents reflecting the Communications related thereto.

## RESPONSE TO INTERROGATORY NO. 1:

COFINA objects to this Interrogatory in light of the fact that this Court lacks jurisdiction to consider the issues it raises.  COFINA further objects to this Interrogatory because it seeks information that is irrelevant, unnecessary, and beyond the scope of discovery necessary in connection with the Court's consideration of COFINA's objection to the Claim.  In addition, COFINA objects to this Interrogatory to the extent it seeks information that is outside its possession, custody or control.  Further, COFINA objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the matter because it seeks information as to "any" bondholder or attorney or other representative of a bondholder.

In light of the foregoing General Objections, each of which is specifically incorporated into this Interrogatory, and the specific objections above, COFINA will not respond to this Interrogatory.

## INTERROGATORY NO. 2:

State whether any person who is **not** an employee, officer, attorney for, or agent of, FOMB, COFINA, the Commonwealth or the IRS has been provided one or more copies, in any form, of the:

(a)  determination referred to in Request 1,

(b)  closing agreement referred to in Request 2,

10

    (c)   the private letter ruling or closing agreement request referred to in
Request 3 above, or

    (d)   drafts, preliminary versions of, portions of, or extracts from, any
of the foregoing

If the answer to (a), (b), (c) or (d) is "Yes", identify each such person, describe the date and
circumstances under which each such document or portion thereof was provided to such
person, and produce all documents reflecting the Communications related thereto.

## RESPONSE TO INTERROGATORY NO. 2:

COFINA objects to this Interrogatory in light of the fact that this Court lacks jurisdiction

to consider the issues it raises.  COFINA further objects to this Interrogatory because it seeks

information that is irrelevant, unnecessary, and beyond the scope of discovery necessary in

connection with the Court's consideration of COFINA's objection to the Claim.  In addition,

COFINA objects to this Interrogatory to the extent it seeks information that is outside its

possession, custody or control.  Further, COFINA objects to this Interrogatory as overly broad,

unduly burdensome, and not proportional to the needs of the matter because it seeks information

as to "any person."

In light of the foregoing General Objections, each of which is specifically incorporated into

this Interrogatory, and the specific objections above, COFINA will not respond to this

Interrogatory.

## INTERROGATORY NO. 3:

Is there any agreement with any party, or other restraint imposed by any party, that
prohibits You from producing a copy of any of the documents referred to in Requests for
Production No. 1, 2, 3 or 4 above.

If your answer is "Yes," (a) produce a copy thereof (if written) or describe it (if oral), (b)
specify who requested such agreement or other restraint and under what circumstances such
agreement or restraint was requested, (c) state whether You requested or suggested such
agreement or restraint, and (d) describe and produce all Communications related thereto.

11

0203

**RESPONSE TO INTERROGATORY NO. 3:**

COFINA objects to this Interrogatory in light of the fact that this Court lacks jurisdiction to consider the issues it raises. COFINA further objects to this Interrogatory because it seeks information that is irrelevant, unnecessary, and beyond the scope of discovery necessary in connection with the Court's consideration of COFINA's objection to the Claim. Further, COFINA objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks information as to "any party," and requests the production of "all Communications" related to a topic.

Subject to and without waiving the foregoing General and Specific Objections, COFINA responds that there is no non-disclosure agreement between COFINA and the IRS.

**INTERROGATORY NO. 4:**

Identify by date and participants, and describe, each Communication that took place prior to February 12, 2019, with any bondholder or attorney or other representative of a bondholder concerning (i) the "tax exemption implementation agreement" dated February 12, 2019, or (ii) the request referred to in Request for Production No. 3 above, and produce the documents reflecting each such Communication.

**RESPONSE TO INTERROGATORY NO. 4:**

COFINA objects to this Interrogatory in light of the fact that this Court lacks jurisdiction to consider the issues it raises. COFINA further objects to this Interrogatory because it seeks information that is irrelevant, unnecessary, and beyond the scope of discovery necessary in connection with the Court's consideration of COFINA's objection to the Claim. Further, COFINA objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the matter because it seeks information as to "any" bondholder or attorney or other representative of a bondholder, without any limitation.

12

In light of the foregoing General Objections, each of which is specifically incorporated into this Interrogatory, and the specific objections above, COFINA will not respond to this Interrogatory.

**INTERROGATORY NO. 5:**

State the name of the person(s) answering these Interrogatories and their telephone number, email address, and physical address.

**RESPONSE TO INTERROGATORY NO. 5:**

Kyle Rifkind
Restructuring Officer
Deputy General Counsel
The Financial Oversight and Management Board for Puerto Rico
P.O. Box 192018
San Juan, PR 00919-2018

13

0205

Dated:  July 19, 2019
San Juan, Puerto Rico

Respectfully submitted,


/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email:  hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for
COFINA*


/s/Martin J. Bienenstock
Martin J. Bienenstock *(pro hac vice)*
Brian S. Rosen *(pro hac vice)*
Jeffrey W. Levitan *(pro hac vice)*

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Co-Attorneys for the Financial Oversight and
Management Board as representative for
COFINA*

0206

## **VERIFICATION**

I am the Restructuring Officer and Deputy General Counsel of the Financial Oversight and Management Board for Puerto Rico.  I have read the foregoing Responses and Objections of the Financial Oversight and Management Board for Puerto Rico, as Representative for the Puerto Rico Sales Tax Financing Corporation, to Individual Bondholder's (Claim No. 10701) Interrogatories and Requests for Production and know the contents thereof, and the same are true to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 17, 2019.

Kyle Rifkind

15

0207

**COFINA's Invitation to Exchange Taxable Bonds Requires More Scrutiny**

**Subject:** The Puerto Rico Sales Tax Financing Corporation (COFINA) is offering to exchange recently restructured taxable bonds for an equal principal amount of bonds whose interest will be tax-exempt. As per the exchange notice, the coupon rate will be reduced by approximately 0.25% while other bond characteristics -- maturity date, call features, collateral -- remain the same.

**Issue:** While most bondholders, even with the reduced coupon, stand to benefit from owning tax-exempt bonds, it is very unclear why an exchange is required in the first place. Bondholders, therefore, should require COFINA to be fully transparent and release the IRS Closing Agreement or Private Letter Ruling along with all communications relevant to this matter. For its part, COFINA has stated that the Closing Agreement *will not* be made public.

**Background:** In February the restructuring of *OLD* COFINA bonds was implemented by providing cash and *NEW* COFINA bonds, of which approximately 30% were classified as taxable for federal gross income tax purposes. This was rather unusual in that the criteria to determine whether municipal bond interest is tax-exempt is largely a matter of whether the bond proceeds are used for public, not private, purposes. The funds raised by the *OLD* COFINA bonds were generally used for public purposes, meaning that, to the extent that the *OLD* COFINA bonds were tax-exempt, the *NEW* COFINA bonds should also be tax- exempt. However, the IRS still needed to opine on such matters and was unable to do so by the February restructuring date, partly due to the federal government shut-down. Without this IRS ruling but still determined to move forward with the February restructuring, large bondholders, COFINA and the federally appointed Control Board entered into a "Tax Exemption Implementation Agreement." Basically, the agreement stated that large holders would be willing to exchange their bonds for other bonds with 0.25% less interest if Puerto Rico and its agencies continued to vigorously pursue an IRS determination that all *NEW* COFINAs were fully tax-exempt. Fast forward to today, with a favorable IRS ruling in hand, COFINA is now inviting *all* bondholders to exchange their taxable bonds for tax-exempt bonds that are identical in all respects except that they pay 0.25% less interest.

**Moreover:** The "Tax Exemption Implementation Agreement" dated February 12, 2019 states that if COFINA receives a favorable IRS ruling then *only parties to the agreement* are required to exchange their bonds for ones with a lower rate (Section 4.8 of Agreement).

On May 15, 2019, COFINA, announced the receipt of a favorable tax ruling and entered into a closing agreement with the IRS permitting COFINA to make certain allocations of the proceeds from *OLD* COFINA bonds -- used for public purposes and ruled to be tax exempt-- to *NEW* COFINA bonds. This reallocation now allows COFINA to reclassify the 30% taxable bond portion, issued in the February restructuring, entirely as tax-exempt securities.

**Key Points:** As part of their June 10 letter inviting a taxable for tax-exempt exchange, COFINA states that the "IRS Closing Agreement does <u>not</u> provide that the taxable *NEW* COFINA bonds are "automatically tax-exempt." Rather, the bonds will be deemed tax-exempt only if COFINA correctly allocates proceeds, amends bond documents and files IRS forms. In addition, COFINA appears to represent to bondholders that the IRS's favorable tax ruling makes note of the reduced interest rate and

Exhibit 8

0208

thus *requires* COFINA to impose the "Tax Exemption Implementation Agreement" not just on parties to the agreement, but on *all* bondholders.

The Plan Support Agreement (PSA), is the Title III court approved restructuring agreement entered into by *OLD* COFINA bondholders, Puerto Rico, the Control Board and all concerned parties with respect to COFINA's debt restructuring.  Under Article IV "Covenants" in the PSA, the Oversight Board, Puerto Rico's Fiscal Agency and COFINA all pledge to "use its reasonable best efforts to cause the *NEW* COFINA securities to be tax-exempt to the extent permitted by law, including without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities."

**Opinion:**  COFINA repeatedly implies that the 0.25% coupon reduction was an important element that allowed for a favorable IRS ruling and thus requires COFINA to impose the exchange on all bondholders. Without supporting IRS documentation, I have to respectfully question this assertion. The IRS determines tax-exemption, as stated earlier, based on what a state or municipal issuer uses the funds for - a public purpose.  And if an existing bond is refinanced or, in COFINA's case, exchanged, then the initial use of funds has to be reviewed and applied or reallocated to the replacement debt so that the new issue can also be tax-exempt.  The determination has nothing to do with the level of interest rates as they change all the time and certainly has nothing to do with a change of 0.25%.  I suspect COFINA came up with the 0.25% coupon haircut not only save money, but that the 0.25% is exactly the minimum coupon change allowable by the IRS to prevent a taxable event from occuring.  Meaning, anything over 0.25% and the proposed exchange itself would generate a short-term capital gain. On this point, the fact that COFINA limited the coupon change to 0.25% is itself a "tell" in that a non-taxable exchange can only occur in respect to substantially similar bonds with a de minimis (0.25% or less) coupon change.  If the bonds are substantially similar then why exactly is an exchange needed in the first place?

Individual bondholders are effectively being forced to exchange bonds, deemed by the IRS to be tax-exempt for "new" bonds that are also tax-exempt but pay less interest.  To be clear, what stands in the way of the existing taxable bonds becoming tax-exempt is that COFINA will not take the customary steps to reallocate bond proceeds, amend bond documents or file IRS forms with respect to bonds which are *not exchanged.*

Given that many market participants and tax professionals are questioning the basis for this exchange, it is incumbent on COFINA to justify their actions and inactions with respect to this matter.  As such, COFINA should release the IRS Closing Agreement to the public. In addition, COFINA and the Control Board need to explain why this exchange method is required of all bondholders and why COFINA's statements to not take steps to cause the existing taxable bonds to be tax-exempt (without exchange) fall outside of the scope of the covenants agreed to in the PSA.

**Glenn Ryhanych, CFA, is President and Founder of BlueList Partners, LLC., a Northern Virginia municipal bond investment management firm.  The views expressed herein are his own.**

**June 21, 2019**