INTAKE DROP BOX
RECEIVED & FILED
2019 AUG -9 PM 2:03

IN THE UNITED STATES DISTRIC COURT
FOR THE DISTRICT OF PUERTO RICO

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD

FOR PUERTO RICO                                     PROMESA TITLE III

As representative of                                 Num. 17BK3283-LTS

THE COMMONWEALTH OF PUERTO RICO, ET AL

Debtors

Enrique Vázquez Quintana, MD
Plaintiff  Pro Se

E. uy.

Case # 3:19-cv-01491-JAG

MOTION OF OUR POSITION OF INAPPLICABILITY OF THE AUTOMATIC STAY IN MY CASE

Now comes Dr. Enrique Vázquez Quintana, Pro Se, respectfully states his opposition to the Motion of Stay proposed by the lawyers of the seven defendant honorable judges of the judiciary system of Puerto Rico and respectfully alleges and prays as follows:

MALFEASANCE BY THREE COURTS OF JUSTICE

It is my aim to present direct scientific evidence, with the assistance of medical experts and the appropriate documentation as well as circumstantial and/or indirect evidence to confirm that the sentence issued on December 18, 2015, by the Puerto Rico Supreme Court is absurd and denies all existing scientific knowledge. It will become clear that actions taken, or opinions expressed by the judges of Puerto Rico's three courts of justice were intended to cause personal harm to me as defendant in the case of Isabel Montañez Ortiz v Enrique Vázquez Quintana. By direct evidence based on scientific data and statements by a respected neurologist expert in dementias, as well as by circumstantial evidence - Rule 110 H, Colón González v K- Mart 2001 TSPR 95 and Bacó v Almacén Rosa

1

Delgado 2000 TSPR 111 – I will demonstrate that the decisions of the three judicial courts were not based on justice: they were retaliatory actions for having had the audacity to bring suit and prevail against an attorney who had filed a frivolous lawsuit against the defendant.

## COURT OF FIRST INSTANCE (CFI)

1. SC p135: The CFI claims that hypocalcemia produces mental disorders such as confusion and memory problems. This asseveration is false.
2. SC p147: A footnote cites that I declared that during surgery the pathologist cannot determine if the parathyroid gland has hyperplasia or not. This is entirely false.
3. SC p148, k: Affirms that once Dr. Vázquez extracted the inferior parathyroid gland, he proceeded to remove a fragment of the thymus at the cervical area. In the revision of the pathology, not during the surgical procedure, a supposedly tiny fragment of the right parathyroid gland was identified. The thymus segment was removed since on occasion the parathyroid adenoma is found in the thymus. No permission is needed for this procedure. The surgeon has ample professional discretion in the treatment of a patient and does not overreach the boundaries of propriety if the treatment is within reasonable limits; in this case, to arrive at the correct diagnosis and the location of the pathology responsible for the illness.
4. SC p156, e1: The CFI Judge affirmed: "With respect to this point, Dr. Falk declared – gave a truthful testimony – that there is consensus in the medical community that low blood calcium levels (hypocalcemia) usually cause memory problems in patients such as the ones that Mrs. Isabel presents." This is totally false; an incorrect interpretation of Dr. Falk's testimony, which was untruthful. Dr. Falk lied. The case of Pueblo de PR vs Luciano Arroyo applies to our own. In his sentence, Judge Raúl Serrano Geyls affirmed: "We judges cannot be so innocent as to believe declarations that no one else would believe." Also, there is no such consensus in the medical community as to low calcium levels causing memory loss. This last statement was added by the CFI judge.
5. SC p156: In the footnote, the judge twisted the truth by partially citing the declarations of my expert witness, Dr. Carlos Isales, when she pronounced

2

that "patients with acute hypocalcemia may present memory problems such as those manifested by Mrs. Isabel in the postsurgical stage." The CFI judge failed to cite the entire text of Dr. Isales' testimony, in which he declared that "memory loss is temporary; calcium and vitamin D are administered, the patient returns to normal and no patient goes on to suffer from dementia."

6. SC p157: In the early stage of this action, the court states that "for her memory problems Mrs. Isabel was prescribed Aricept, also used in the treatment of the neurological disease known as Alzheimer. However, at the trial no evidence was presented to the effect that Mrs. Isabel has been diagnosed with said condition." This statement is incorrect. Aricept is a medication prescribed exclusively for the treatment of Alzheimer.

7. SC p157: The footnote indicates that this court, the CFI, concluded that Mrs. Isabel was found to be oriented in time, space and location. The CFI judge has no medical knowledge to make this asseveration. Aside from lacking the medical knowledge, this statement is prejudiced and discriminatory against the defendant.

8. SC p158, K: Reads: "Specifically the defendant established that Mrs. Isabel takes daily doses of Synthroid (hypothyroidism), Calcitriol (hypocalcemia), and Aricept (memory problems). Her memory loss was due to Alzheimer. Mrs. Isabel's husband testified that his wife was forgetful, unable to recognize her grandchildren, almost burnt down the house, forgot her church hymns, and that sexual intimacy between them had diminished to less than once a month. He testified that he took her to a treatment center in Levittown where they diagnosed her as suffering Alzheimer's disease and was placed on Aricept and Namenda, both medications used exclusively on Alzheimer patients.

9. SC p162, G: Reads "that Dr. Vázquez Quintana had the obligation to preserve the blood flow to the left parathyroid and he did not do so." No one could have preserved that gland since it was inside the thyroid lobe and could not be seen. This had nothing to do with the lobe's artery." P162, L reads: "if he understood that he was unable to adequately treat the patient, Dr. Vázquez was required to consult the case with an endocrinologist, and he failed to do so." This statement is completely cynical, humiliating, unprofessional and uttered with the intent to harm me. During the trial (as described in my

3

curriculum vitae) my vast experience in thyroid and parathyroid surgery was shown to be the most extensive among the island's surgeons.

10. SC p163: As to the number of malpractice cases on my record, Dr. Iguina included the name of the patient and his wife, another during my tenure as Health Secretary and a third case that I did not remember. He characterized me as absent-minded and a liar. The CFI judge allowed the lawyer's characterization of the defendant, again, in order to undermine my credibility. I answered that there had been six cases because that was the baseline number of cases for Triple-S to remove my name as a provider on January 2002. Dr. Iguina, however, did not mention that I prevailed in every lawsuit while I was insured by Triple-S and that I defended Triple-S' money as if it had been my own.

11. SCp176: In the first paragraph, the CFI judge, referring to Dr. Falk's testimony, indicates "above all for his truthful declaration merited the confidence of this court." The First Instance judge Gloria M. Soto Burgos due to her incapacity and lack of medical knowledge, accepted Dr. Falk's lie as truth.

12. SC p177: Article 3 indicates that the left inferior parathyroid gland, which was normal, had been removed. The gland could not have been observed during the operation since it was inside the left lobe of the thyroid, as reported in the pathology revision. There was no way to preserve that gland.

13. SC p179: Item 3 states that "the surgeon failed to order analyses or studies directed at discarding or confirming the MEN 2A diagnosis. In fact, those studies had already been performed by Dr. Julio César López, the endocrinologist who referred the patient to me.

14. SC p180: The second paragraph states that Dr. Vázquez removed the inferior right parathyroid gland in a deliberate manner and with full conscience of his act. This is totally false. In the surgical operative report, I describe that the inferior parathyroid glands were not identified. According to my best impression, I had removed the two superior parathyroid glands.

15. SC p183: The first paragraph states: "In consideration of this evidence, it is inevitable to conclude that Dr. Vázquez did not remove the left inferior parathyroid gland inadvertently as he alleged in court." I repeat: the gland

4

was inside the left thyroid lobe and there was no human way possible to preserve it.

16. SC p184: In the second paragraph, the judge reiterates: "this court placed much weight on Dr. Falk's testimony, which deserved our utmost credibility." This witness admitted upon questioning by my lawyer that he had no scientific evidence to sustain his testimony that hypocalcemia caused loss of memory to the patient. That is so because there is no evidence in the medical literature to sustain his testimony. According to the American Alzheimer Research Foundation there is no causal relationship between hypocalcemia and Alzheimer's disease. Eventually, Dr. Stephen A. Falk, their witness, entered into a confidential economic settlement with me.

17. The CFI permitted herself to be impressed and deceived by a false declaration offered by an expert who is a paid witness. It is correct to say that hypocalcemia is an inherent risk of thyroid and parathyroid surgeries; it occurs in 3% to 5% of all cases, no matter the surgeon's level of experience.

18. SC p185: Item 3 states "hypocalcemia is the cause of mental disorders such as confusion and memory problems." This statement is false: hypocalcemia does not produce memory loss; this is confirmed by the medical literature.

19. SC p186: At the end of the second paragraph it is stated "Mrs. Isabel showed to the complete satisfaction of this court that she was oriented in time, space and location. Luckily for judicial idealism, Mr. Hermenegildo was able to supply many, if not all, of the answers to the questions that his wife, due to memory problems, could not offer." I am baffled by the knowledge of neurology of the Lower Court judge. These statements are prejudiced and improper. It is unheard of for a court to permit the husband of a patient to supply answers to questions that she could not answer due to her memory loss.

20. SC p88: The plaintiffs' ties with family and friends have been affected, Mrs. Isabel is irritated by the presence of her grandchildren, they cannot go to church, she was about to burn down the house, the frequency of the couple's sexual intimacy has decreased to less than once a month. These situations are not due to low calcium levels but rather to Mrs. Isabel Montañez Alzheimer's disease and are certainly not a consequence of the surgery that I performed upon her.

21. SC pp195-96: The CFI judge Gloria M. Soto Burgos accepted as true the opinion of both plaintiff lawyers who indicated that Dr. Vázquez Quintana was not equipped to make an evaluation of Mrs. Isabel's mental capacity since he was completely biased and, no less important, he is not a specialist in the fields of neurology or psychiatry. This is totally false. The most knowledgeable about dementias and Alzheimer's during the trial was me, since my wife had suffered the disease for 11 years and I was the author of a book on the subject. No neurologist or psychiatrist has written a book about Alzheimer in Puerto Rico. The CFI judge made medical statements by indicating that the patient was oriented in time, space and location. In addition, she accepted the testimony of Dr. Falk, who is neither neurologist nor psychiatrist and who was there to testify as to the adequacy of the surgery and surgical technique. Also, his testimony that low calcium had caused loss of memory to the patient was based on a superficial interview in the lobby of his hotel, with the claimant's counsel as translator, without having read the lab results and without examining the patient. The actions of the CFI judge demonstrate bias and prejudice with intent to cause harm to me as defendant.
22. SC p197: The CFI concludes that the defendant did not make a reasonable effort to obtain Mrs. Isabel's medical records from the Levittown Treated and Diagnosis Center (TDC). This was the job of Attorney Jorge J. López López. On this point there is cause for confusion since Mrs. Isabel did not receive treatment at the public Levittown TDC but at the Levittown Medical Services Community Center, a private health center. It was the responsibility of the plaintiff to enter the correct name of the health center where the patient was being treated. In this sense we were surprised by new evidence which did not permit us to retain the services of a neurologist for the defense.
23. SC p198: Attorney López López, not the defendant, was responsible for presenting the medical malpractice insurance policy.
24. SC p199: The CFI judge imposed a fine of $284,000 and $2,000 for lawyer fees for the 10 years it took for the case to reach the CFI. This delay was due to the inefficiency of the country's judicial system and was not my fault. Therefore, the fine is unfair, and it does not fall on me to pay it.

6

25. In her final sentence Judge Gloria M. Soto Burgos does not even mention the testimony of the endocrinologist, my expert witness, Dr. Carlos Isales who testified that an acute drop in calcium can cause disorientation and a temporary loss of memory. The correction of the calcium levels in the blood by giving calcium and Vitamin D corrects the symptoms of hypocalcemia and none of these patients go on to suffer dementias, much less Alzheimer's disease. That is the correct scientific knowledge at the time and presently. This action denotes prejudice from the part of Judge Gloria M. Soto Burgos.

All the actions of the CFI were meant to hurt the defendant, Dr. Enrique Vázquez Quintana. The court's decision was based on prejudice, discrimination and the acceptance of unfounded testimonies meant to inflict harm on the defendant.

## APPELATE COURT (AC)

1. SC p5, i: States that hypocalcemia causes mental disturbances such as confusion and memory problems. This asseveration is false since there is no evidence in the medical literature to sustain that low calcium is responsible for mental disturbances such as confusion and memory loss.
2. The first 30 pages of the AC decision are an exact and faithful copy of the description given by the CFI. This denotes that the AC's analysis and evaluation of the case warrant no credibility.
3. SC p8, d: States that Dr. Vázquez Quintana informed Mrs. Isabel "that she had to undergo surgery because she could develop cancer if she did not." This statement is false; it is an erroneous interpretation. I never warned Mrs. Isabel of any such thing.
4. SC p15, J: States that "Dr. Vazquez identified the inferior right parathyroid gland and having identified it proceeded to attempt to remove it." This interpretation is incorrect. When a specimen is sent for analysis by frozen section it is labeled with the name of that which the surgeon suspects and is sent in for confirmation. The circulating nurse labeled the specimen as parathyroid tissue; however, the pathologist informed the result as negative for parathyroid tissue in the frozen section analysis. I was unable to identify the inferior parathyroid glands during the surgery, which I indicated in the surgical report.

7

5. SC p16, K: Reads: "there was no clinical indication whatsoever to justify the removal of a piece of the thymus in Mrs. Isabel's cervical region." This denotes the lack of medical knowledge of the AC, since the parathyroid can be found at times inside the thymus that has been removed. Also, the court allows the surgeon ample discretion in order to identify a pathology during the surgical procedure.
6. SC p17, 3: Indicates that Dr. Vázquez removed the left inferior parathyroid gland, which was found to be normal. This statement is incorrect since I had previously explained that the gland was found inside the left thyroid lobe, which could not be observed and, therefore, was humanly impossible to preserve.
7. SC p23, e: Indicates: "after the operation to which she was subjected, Mrs. Isabel began to suffer and presently suffers from mental problems in the form of memory loss and occasional disorientation." This asseveration is false and has nothing to do which calcium levels but rather with the Alzheimer's disease suffered by Mrs. Isabel. In p23, l: the AC again sustains that "Dr. Falk declared – in a truthful testimony – that there is consensus in the medical community that low calcium levels (hypocalcemia) ordinarily cause memory problems in patients such as those presented by Mrs. Isabel Montañez. This statement is totally false and is at odds with the scientific knowledge available that year and at present. No one knows the cause of dementias, but it is unanimously agreed that they are unrelated to low calcium.
8. SC p25, l: States that Mrs. Isabel is unable to fulfill various tasks she was once able to perform. This statement could be true; however, these limitations are due to her Alzheimer's disease and have nothing to do with her surgery.
9. SC p29, g: Indicates that Dr. Vázquez "had the obligation to preserve the blood flow to the left parathyroid and he did not. This is a cut and paste copy of the description by the CFI which I addressed earlier. P29, l is also a copy of a CFI statement and I have also refuted this claim.
10. SC p36: The last paragraph reads: "While evaluating a medical doctor we must remember that these and other health professionals are allowed ample professional discretion in their work." This same argument supports the principle that allowed me to identify and attempt to remove what could have

8

most probably been the cause of the hypercalcemia, including removal of a segment of the thymus. This does not require special permission from the patient who is under anesthesia.

11. SC p37: The last paragraph indicates: "the doctor does not incur in civil responsibility if the treatment given to his patient, even when erroneous, is contained within the limits of that which is reasonable and accepted by an ample sector of the medical profession." Even when the AC is conscious of this, it decides to ratify a CFI decision that is incorrect for being counter to the scientific knowledge of the time. The Appellate Court abused its discretion.

12. SC p40: The last paragraph reads: "Additionally, it is the established norm in this jurisdiction that the AC will not intervene with the appreciation of the evidence made by a CFI, in the absence of passion, prejudice, partiality or manifest error." The AC makes a mistake by not identifying the gross error incurred by the CFI when it accepted as truthful a testimony that is not supported by scientific evidence. The dogma established by the former PR Supreme Court Judge Raúl Serrano Geyls, in Pueblo v Luciano Arroyo again applies here: "We judges cannot be so innocent as to believe declarations that no one else would believe." The AC has the obligation to fully revise the decisions of the CFI and to conduct oral hearings, such as established in Ramos Milano v Walmart (168 DPR 112, 123, 2006), Méndez v Morales (142 DPR 26, 36, 1996) and Cárdenas Maxán v Rodríguez Rodríguez (12 DPR 702, 712, 1990).

13. SC pp41-42: In 4 instances where it should read hypocalcemia, the text reads the opposite or hypercalcemia. This mistake alters the meaning of the sentence. It is unpardonable that three AC judges would not be sufficiently careful and diligent as to review a document which they signed. It is inexcusable.

14. SC p45: The first paragraph reads: "We resolve that there was a causal nexus between the procedure performed on Mrs. Montañez Quintana and the health conditions that she has since then developed." This asseveration is incorrect since there is no causal relation between low calcium and the dementia suffered by Mrs. Isabel. Furthermore, it makes the crass mistake of incorrectly citing the patient's name: it should read Isabel Montañez Ortiz.

9

The AC judges created a hybrid or a chimera between the patient and her surgeon. This is another mistake that shows the carelessness and lack of diligence in failing to evaluate and cite an error in a court document, even if that document is a CFI decision.

15. SC p45: The last paragraph indicates: "The CFI's sentence stated for the record that Mrs. Montañez Ortiz had at all times shown to be able to participate and understand the proceedings." Again, the CFI judge decided to practice medicine by writing a prejudiced opinion while lacking knowledge of this subject.

16. SC p48: The second paragraph indicates, and the AC accepts: "Therefore, during ten (10) years the defendant forced the plaintiff to immerse herself in an arid and protracted litigation." This asseveration wreaks of a very peculiar cynicism. The case was finally heard by the San Juan CFI after a ridiculous amount of time and this was exclusively the fault of the inefficient judicial system of this country. I had no part in the fact that after being assigned to six different judges one after the other, the case did not proceed until 10 years later.

17. SC p51: In the first paragraph the AC indicates that the CFI did not abuse its discretion by imposing a fine for temerity on the defendant. The AC abused its authority by ratifying the $284,000 fine. And the AC again abused its authority by imposing an added fine of $6,000 for presenting, according to them, a frivolous appeal before this court. This demonstrates a faulty work ethic and a diminished ability to perform the function for which the AC was created.

18. SC p56: The first paragraph includes a phrase that constitutes a serious bias: "It befalls on us to make use of our faculty to economically sanction one of the parts with the purpose of asserting our legal system, which is devoted to the highest values of justice and equity." This is a cynic expression and demonstrate that the supposed judicial immunity promotes the abuse by the judges of honest citizens who turn to the court in search of justice.

The AC has shown to be prejudiced and to have discriminated against the appellant, Dr. Vázquez Quintana, who approached the court in search of the justice that he did not receive from the San Juan CFI. The actions of the AC were meant to inflict

10

harm on the appellant; its decision was based on multiple unjustifiable and unpardonable mistakes.

## SUPREME COURT (SC)

1. P3: The first paragraph states that I told Mrs. Montañez that she could suffer cancer if she did not submit to the surgery. This is the patient's misinterpretation of our conversation and that the judge accepted as true. I never said this to the patient.
2. P3: At the end of the page it is stated that the court accepted that the defendant had performed 631 parathyroid surgeries. That is the highest number of this type of surgery performed by any surgeon in Puerto Rico. However, in another part of the sentence the court states that if I was not apt to treat the patient, I should have referred her to an endocrinologist. The court cannot adopt these two opposing views without contradicting itself.
3. P4, A: It is stated at the middle of the page that the defendant removed the left inferior parathyroid glands as well as a segment of the right inferior parathyroid, neither of which presented enlargement. It is interesting to read that the judges knew that the glands were not enlarged. In other words, that non-medical professionals would be able to discern this fact when an experienced surgeon doing the operation does not have that luxury since they are not visible without some portion of the glands being removed. The left inferior gland was contained inside the left thyroid lobe and no one could have spared it; at the right inferior side of the gland as a small segment that could possibly belong to the parathyroid was removed. This was discovered when the pathology report was reviewed once the patient returned for the post-surgery follow-up with low calcium levels.
4. P5: The end of the second paragraph reads: "Mrs. Montañez continued to visit Dr. Vázquez Quintana, but the doctor was unable to normalize her calcium levels." This assertion is false and denotes the judges' lack of medical knowledge. On her follow-up visits to my office, the patient's calcium levels fluctuated between 7.7 and 8 mg/dl. These levels are enough to control the symptom of tingling in a patient's hands and lips. However, the Alzheimer

11

symptoms will not be controlled since these are not related to calcium levels. It is not necessary to increase these calcium levels. Mrs. Montañez's medical file from the Levittown Medical Services Community Center records her blood calcium at acceptable levels, but the symptoms of Alzheimer are present since they have absolutely nothing to do with calcium levels.

5. P6: The first paragraph states: "the patient on occasions has been admitted to the Medical Center's Endocrinology Clinic. This statement is false since patients are not admitted to the Clinics; they are seen at the Ambulatory Clinics. There, her calcium levels were raised to above normal, which is not indicated. Mrs. Montañez has never been admitted to the University Hospital, where patients who arrive at the Medical Center are admitted only if need be.

6. P7: The Triple-S Insurance lawyer of record was negligent for failing to document and present a copy of the insurance policy as stipulated in the pre-trial meeting in 2009. The defendant had authorized the lawyer in writing, at the lawyer's request, to obtain and present a copy of his policy.

7. P8: At the end of the page it is again stated that low calcium levels caused the patient to suffer memory loss, disorientation and depression. The statement is false: low calcium levels do not cause these symptoms. The symptoms are due to her Alzheimer's disease and have nothing to do with low calcium.

8. P9: The CFI imposed a fine on the defendant on grounds of temerity and the AC ratified the fine of $180,000 plus lawyers' fees in the amount of $2,000. Also, the AC imposed an additional fine of $6,000 for burdening this court with a frivolous appeal.

9. P 13 The plaintiffs failed to comply with their obligation to continually amend their answers and to notify the defendant about all additional information obtained after the discovery of evidence and related to the evidence, according to Rule 23.1 of Civil Procedure (Berrios Falcón v Torres Merced, 175 DPR 962, 971, 2009). The plaintiffs surprised the defendant on the first day of trial when Attorney Antonio Iguina brandished a document from the Levittown Medical Services Community Center, not from the Levittown TDC, instructing me to continue paying for the use of Namenda and Aricept for the remainder of the patient's life. The CFI judge decided to proceed with

12

the case without amending the cause of the suit from hypocalcemia to memory loss. This is a clear sign of the judge's bias in this case.

10. P15: The first paragraph indicates: "We consider that the plaintiff did not have to amend his allegations to include all of Mrs. Montañez's health conditions because of hypocalcemia." The honorable SC is mistaken, since memory loss, disorientation and depression are not caused by hypocalcemia. There is no causal relation between hypocalcemia and dementias. Alzheimer is the most frequent among dementias.

    The end of the first paragraph reads: "The defendant was aware of the symptoms and the evidence submitted was neither wrong nor incomplete." The defendant knew the patient's symptoms of hypocalcemia when he treated her post-surgery. However, he was unaware that the patient was suffering from Alzheimer's disease. In this sense, the evidence brought up in court was a surprise and unmasked either a faulty or a deceitful discovery of evidence. It is known that when the first symptoms of Alzheimer's disease are detected by the relatives, the disease has been present for the last 5, 10, 15, 20 and even 30 years before, progressing very slowly. It can be said that at the time of surgery Mrs. Montañez was already suffering from the disease. I can no possibly have caused Alzheimer's disease to this lady.

11. P17: In the last paragraph, the SC again insists that two parathyroid glands and a fraction of a third one that were not enlarged were removed from the patient. I repeat that the honorable judges cannot make this asseveration since I, the surgeon who operated on the patient, was unable to see those glands. How and on what basis can the judges say that the glands were not enlarged!!!

12. P18: The third paragraph indicates that "heart problems, confusion, memory loss and depressive and irritable moods are all conditions associated with hypocalcemia." This affirmation is totally false. None of these symptoms are due to hypocalcemia but rather to Alzheimer's disease. It is an incorrect interpretation by the CFI, ratified by the AC, and now repeated by the SC-- Incredible.

13. P19: The SC endorses the CFI's decision that the physical and mental conditions suffered by Mrs. Montañez Ortiz, including her loss of memory, are associated with hypocalcemia. The SC insists on making the same mistake

13

as the CFI judge. Again, those symptoms are due to Alzheimer and not to hypocalcemia. This is the scientific consensus at the time of surgery, the time of the trial and now.

14. P20: The first paragraph indicates that the neurologist who evaluated Mrs. Montañez Ortiz concluded that the patient suffered from a moderate dementia compatible with Alzheimer. This asseveration is totally true. To this date (February 2019), the patient is being treated at the Levittown Medical Services Community Center and is on Namenda and Aricept. This honorable court must accept that no one is cured, nor survives Alzheimer's disease. Invariably, all patients suffering Alzheimer's will succumb to the disease.

> At the end of page 20, the court states: "the fact that a medication has been approved for the treatment of a certain condition does not preclude that, according to prevailing medical norms, its application to situations not indicated by the manufacturer." This is a major misjudgment of the prevailing norms. The honorable court is once again practicing medicine. Aricept and Namenda are medications exclusively indicated for the treatment of Alzheimer's disease. Aside from the fact that they should not be prescribed for any other purpose, both these medications cost $30 per day and no medical insurance –not even the government Vital Health Plan – will pay the price if the patient has not been diagnosed by a neurologist. Therefore, the reference to Rios Ruiz v Mark (119 DPR, 816, 826, 1987) has no bearing on this case. The court is mistaken since the judges are not trained in medicine, especially in neurology.

14. P24: The CFI, in a display of medical savvy, certifies that "Mrs. Montañez was oriented in time and space, and understood the nature of the proceeding." This affirmation is false and denotes the judge's bias. She does not have the medical knowledge needed to make this asseveration.

What is even more surprising is that the SC endorses the CFI's expression that "Although the court recognizes that Mrs. Montañez Ortiz could not remember the answers to some of the questions, her husband, Mr. Martinez Remigio, appropriately offered the required information." This statement is totally prejudiced and biased towards the plaintiff in this case. No court will allow someone to help the witness with the answers to the questions posed.

    It is astounding that the SC would endorse such a statement, in fact allowing the CFI's bias.

15. It is interesting that the Honorable Supreme Court states that "The Court of First Instance did not properly weigh the arguments presented by the defendant in the context of the probationary presumptions that are pertinent to an action for medical malpractice." The statement implies that the CFI judge was unfair in her evaluation of our defense but nevertheless did not proceed to correct this mistake.
16. The SC removed the CFI's fine for temerity as well as the fine imposed by the AC for supposedly filing an unjustified appeal to that court. I am grateful to this Honorable Court for this action.
17. P38: The SC finally concludes, as did the CFI and the AC: "considering all the evidence, the hypocalcemia that appeared after the parathyroid surgery was the proximal and efficient cause which most probably brought on Mrs. Montañez Ortiz's health conditions. This decision is totally wrong and against all scientific knowledge. In fact the Supreme Court of Puerto Rico— "Converted a scientific lie into a judicial truth thru a crass judicial mistake".

All three Puerto Rico courts of justice are mistaken. Suppose, for the sake of argument, that the surgery in question was not performed on the neck but, instead, the gall bladder was removed and 4 or 5 years later the patient developed Alzheimer's disease. Would the surgeon be responsible for the patient's dementia because it occurred after the gall bladder surgery? This is not possible and is not backed by science.

The sentence handed down by this Honorable Court affirms that I am the only surgeon in the world who has caused dementia on a patient in a thyroid and parathyroid surgery. This is a judicial aberration based on a crass error by the country's three courts of law. This decision is equivalent to malfeasance or prevarication as defined in the penal code of many developed countries around the world – among which the U.S. and its judicial systems rank 20th for transparency and judicial propriety.

I can only conclude that the actions taken by the three judicial courts of Puerto Rico in tandem, without the due corrections to the preceding courts' statements and

15

opinions, were meant to inflict harm on the defendant (Perhaps an exemplary punishment?) The actions taken by all three courts of Puerto Rico were designed to harm the defendant; therefore, I affirm that the Puerto Rico Department of Justice has been rendered invalid to represent the judges who acted with malice and knowingly caused me harm, personal suffering and public disdain solely for having dared to sue and prevail over an attorney who had earlier filed a frivolous case against me. The 104 Act nor the 9 Act can be used to defend the seven judges of the Puerto Rico Judiciary System for their aberrant and crass judicial mistake similar to prevarication in the Penal Code of Spain and other Latin American countries. With direct and indirect evidence, I will prove that the action taken by the PR Supreme Court was not based on judicial principles but rather on prejudice, discrimination and a quest for vengeance. The prejudice emanated from the lower court and worked its way up to the Supreme Court. Among the Supreme Court judges the Hon. Judge Anabelle Rodríguez Rodríguez's mother sadly died of Alzheimer's disease. Especially in a collegial body she had the legal, moral and ethical duty to orient her colleagues on the Supreme Court concerning the known facts about the disease. She clearly did not do so and voted against me, sentencing that I was guilty of causing dementia on a patient, a judgment that is unheard of and grossly unfair. This type of disregard for the truth is the reason I am compelled to file this lawsuit. The most obvious evidence for doing harm to me is the fact that the Supreme Court made a Sentence, not an opinion, no jurisprudence is created. No other physician surgeon will ever be accused of causing a dementia to a patient after an operation.

My lawsuit is against the seven judges in their personal capacity, they have to defend themselves, not by Department of Justices. The Puerto Rico Justice Department can offer legal representation in their personal capacities to government officers under Act No. 104 of June 25, 1955 only if their acts or omissions are according to law and committed in good faith. That was not the behavior of the judges in the present case, for that reason Act 104 does not apply. The judges have to represent themselves and respond for their bad faith decisions.

In the present lawsuit, Title 111 of the Puerto Rico Oversight, Management and Economic Stability Act, (PROMESA) does not apply to this case. No law can override the American Constitution in a case of violation of civil rights. The action of the three local courts was with the intention of causing me harm by discrimination, by not giving me the equal protection of the law and due process, by violating the Art.

16

1802 of our legal system and by the imposition of a severe sentence in violation of Article 8 of the United States Constitution.

Wherefore, the Plaintiff Pro Se Dr. Enrique Vázquez Quintana, respectfully prays this Honorable Court to reject the Motion of Stay presented by Mr. Juan C. Ramírez-Ortiz, Squire to five of the defendant judges.

Respectfully submitted.
In San Juan, Puerto Rico on this 9 day of July, 2019.

*Enrique Vázquez Quintana MD*
Enrique Vázquez Quintana, MD

I hereby certify that on this same date, I personally filed the foregoing with the Clerk of the Court. I also sent notification by electronic mail to:
Mr. Juan C. Ramírez Ortiz—juramirez@justicia.pr.gov
Mr. José A. Morales Boscio—jose.morales@himapr.com