Objection Deadline: August 27, 2019, at 4:00 p.m. (AST)
Hearing Date and Time: September 11, 2019, at 9:30 a.m. (AST)

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

   Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION (COFINA),

   Debtor.

PROMESA
Title III

No. 17 BK 3284-LTS

-----------------------------------------------------------------x

**[Related to #4417 and Claim No. 10701]**

**NOTICE OF HEARING AND MOTION TO COMPEL BROUGHT BY INDIVIDUAL
COFINA BONDHOLDER**

August 14, 2019

**PLEASE TAKE NOTICE** that:

1. On August 14, 2019, movant served the subject motion, which appears herein below.

2. Any response or objections to the motion must be served upon:

   Peter C. Hein, Pro se
   101 Central Park West, Apt. 14E
   New York, NY 10023
   petercheinsr@gmail.com

   as well as all other parties entitled to notice under the Court's rules and procedures.

3. The Objection deadline is August 27, 2019 at 4:00 p.m. (AST).

4. The date of the hearing at which the motion is to be considered is the previously scheduled omnibus hearing on **September 11, 2019, at 9:30 a.m. (AST)** at the locations for such omnibus hearing to be specified by the Court.

5. The relief requested in the Motion may be granted by the Court without a hearing if no objection is timely filed and served in accordance with the Court's Case Management Procedures.

## MOTION TO COMPEL BROUGHT BY INDIVIDUAL COFINA BONDHOLDER

This motion is brought pursuant to, *inter alia*, Bankruptcy Rules 9014, 7026, 7033 and 7034, and, in the alternative, pursuant to Bankruptcy Rule 2004 and the Court's inherent authority, and seeks the relief set forth below, and in the accompanying [proposed] order, and as described in the accompanying Memorandum.

I. Compelling production of the documents requested in Requests for Production Nos. 1 through 6, and answers to Interrogatories Nos. 1, 2 and 4, of the Interrogatories and Requests for Production of Individual COFINA Bondholder (Claim No. 10701) to FOMB and COFINA that Peter C. Hein served on June 19, 2019, annexed as Exhibit A to the accompanying Memorandum.

II. Any other relief that is just, proper or appropriate to effectuate the objective of this motion.

August 14, 2019

Respectfully Submitted,

*Peter C. Hein*
Peter C. Hein, Pro se
101 Central Park West, Apt. 14E
New York, NY 10023
petercheinsr@gmail.com

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

    Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

---------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION (COFINA),

    Debtor.

PROMESA
Title III

No. 17 BK 3284-LTS

---------------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BROUGHT BY
INDIVIDUAL COFINA BONDHOLDER**

Dated: August 14, 2019

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

I. Requests for Production of Documents ....................................................................................2

II. Interrogatories ...........................................................................................................................5

III. FOMB/COFINA's objections lack merit ..................................................................................7

    1. Asserted lack of jurisdiction .........................................................................................7

    2. Asserted burden ............................................................................................................8

    3. Asserted lack of relevance ............................................................................................8

    4. Asserted confidential or proprietary character ...........................................................13

    5. Asserted privilege .......................................................................................................13

CERTIFICATION OF CONDUCTING MEET AND CONFER ......................................................14

CONCLUSION...................................................................................................................................15

## PRELIMINARY STATEMENT

On June 19, 2019, I propounded a set of targeted requests for production of documents and interrogatories to FOMB, as representative of COFINA and the Commonwealth, and to COFINA, which are attached as Exhibit A. FOMB and COFINA are sometimes referred to herein as "FOMB/COFINA."

The requests seek the production of specific documents that FOMB/COFINA has refused to disclose, yet has identified post-confirmation (and in some cases even purported to summarize) in documents that FOMB/COFINA has used in its efforts to induce COFINA bondholders to accept lower coupon rates — below those promised in the Plan and disclosure statement — in order for bondholders to receive the tax-exempt treatment for interest that bondholders were entitled to all along. Several of the requests for production and interrogatories also seek information that bears on FOMB/COFINA's asserted grounds for refusing to disclose these documents.

In particular, this motion seeks to compel disclosure of (i) the private letter ruling or closing agreement request that COFINA submitted to the IRS on or about December 14, 2018 — a request to the IRS that FOMB/COFINA did **not** disclose to all COFINA bondholders or the Court prior to the confirmation of the Plan — and (ii) the IRS determination and closing agreement that resulted from that undisclosed December 14, 2018 request to the IRS. As discussed below, not only was the December 14, 2018 request that COFINA submitted to the IRS **not** disclosed prior to confirmation, the disclosure statement — what was supposed to be in the hands of bondholders at the time they considered whether to object and how to vote, and was in front of the Court when it considered whether to approve the Plan — contained the statement that "a private letter ruling has **not** been submitted" to the IRS (#4364-page-232-of-263). So bondholders and the Court were given affirmatively **in**accurate information bearing upon on the important issue of federal tax consequences. *See* Docket#7211-page-5-to-9-of-24; #8427-page-13-to-16-of-20; #6283-page-3-to-7-of-13.

FOMB/COFINA has refused to produce any of the requested documents and (with two exceptions noted below) has also refused to answer the interrogatories. *See* FOMB/COFINA, July 19, 2019 Response, annexed hereto as Exhibit B. This Motion is brought to compel production of the requested documents and answers to the interrogatories.

### I. Requests for Production of Documents

The requests for production of documents are targeted and seek the production of documents that FOMB/COFINA itself has referred to in event notices or exchange offer documents that it has distributed post-confirmation.

FOMB/COFINA belatedly, post-confirmation, made reference to these documents — but still refuses to disclose these documents — in the course of FOMB/COFINA's gambit to induce bondholders to exchange bonds that COFINA originally issued without tax opinions for new bonds with lower coupon rates (coupon rates below those promised in the Plan and disclosure statement). In our meet and confer on July 23, 2019, I was clear that if there were practical issues involving the volume of documents or the scope of search — which I doubt there are — I would be willing to work with FOMB/COFINA to adjust the requests to minimize any burden.

Requests 1, 2 and 3 seek specific, identified documents that FOMB/COFINA has referred to in post-confirmation public filings (related to FOMB/COFINA's exchange offer gambit) — the requests even provide "pin cites" to specific pages and paragraphs of FOMB/COFINA's own post-confirmation statements. Clearly, FOMB/COFINA could locate and send PDFs of these documents to me in a matter of minutes. Requests 1, 2 and 3 state:

1. **Produce the determination the IRS provided to COFINA on or about May 15, 2019. (This determination is referred to in an "Event Notice" disseminated by or on behalf of COFINA on or about May 15, 2019 (¶ 3 of that Event Notice).)**

2. **Produce the closing agreement COFINA and the IRS entered into on or about May 15, 2019. (This closing agreement is referred to in the COFINA June 10, 2019 Exchange Offer (page 1), the June 10, 2019 COFINA**

> Information Statement (page 1 and 60), and the COFINA June 10, 2019
> Q&A page 5 (response to Q 11).)

> 3. **Produce the private letter ruling or closing agreement request filed by COFINA with the IRS on or about December 14, 2018. (This is referred to in the COFINA June 10, 2019 Q&A, page 5 (response to Q 11) and the "tax exemption implementation agreement" dated February 12, 2019 that COFINA entered into (Clause "E").)**

Request No. 4 seeks the production of the documents submitted to the IRS or another government agency in support of the private letter ruling or closing agreement request that FOMB/COFINA submitted to the IRS on or about December 14, 2008.

> 4. **Produce any documents that any person submitted to the IRS, or any other government office or agency, in support of the request referenced in Request 3 above.**

I assume the volume of documents requested in No. 4 and not already in the public domain is a small quantity of documents that could be readily PDF'd and sent to me. If there is an unanticipated volume — perhaps because FOMB/COFINA submitted to the IRS already publicly available documents such as official statements or the like — FOMB/COFINA could simply produce the first page to identify what was furnished to the IRS or provide a list of any such already publicly available documents. If there is an issue of burden — unanticipated by me — I was clear to counsel for FOMB/COFINA in our meet and confer that I am willing to discuss adjusting the requests so that the effort involved in production would be modest.

Request No. 4 includes the phrase "any person" because someone working with FOMB/COFINA may have made the submission (*e.g.*, not only could the submitter be an agent of FOMB/COFINA, such as an attorney or financial advisor, but in addition a Plan proponent bondholder or its agent may have made a submission to the IRS). I recognize FOMB/COFINA can only produce what is in FOMB/COFINA's possession, custody or control. Thus, if a Plan proponent bondholder made a submission to the IRS and FOMB/COFINA or its agent was provided a copy, FOMB/COFINA would have it to produce. But if, hypothetically, another person made a submission and never provided a copy to FOMB/COFINA or one of its agents, then I recognize FOMB/COFINA might assert that that third-party's submission is not within

-3-

FOMB/COFINA's power to produce. This possibility would not, however, justify FOMB/COFINA's refusal to produce whatever FOMB/COFINA or their agents have in their possession, custody or control.

Requests Nos. 5 and 6 are also targeted:

5. **Produce any documents that reflect or refer to the transmittal of any drafts, preliminary or final versions of one or more of the documents requested in Request 1, 2, or 3, above, to any person who is or was a bondholder or attorney or other representative of a bondholder.**

6. **Produce any documents that reflect or refer to the transmittal of any drafts, preliminary or final versions of one or more of the documents requested in Request 1, 2 or 3 above, to any person who is not an employee, officer, attorney for, or agent of, FOMB, COFINA, the Commonwealth or the IRS.**

If FOMB/COFINA was sharing, privately (without public disclosure), drafts or preliminary or final versions of documents submitted to the IRS — potentially going back to COFINA's submission to the IRS on December 14, 2018 of its private letter ruling or closing agreement request, or even before then — that would raise pointed concerns about why such documents were being selectively supplied to some bondholders or other market participants without disclosure to all COFINA bondholders and to the Court. If FOMB/COFINA did not selectively share such documents, FOMB/COFINA can simply so state.

Requests Nos. 5 and 6 likely overlap. The essence of these requests is to obtain the production of drafts, preliminary or final versions provided to persons **outside** of FOMB, COFINA, the Commonwealth or the IRS. That would include bondholders or attorneys or financial advisors for bondholders (covered by Request No. 5). But if, for example, copies of these documents were provided to others — such as other market participants — that too is significant, particularly given that there was no disclosure to all COFINA bondholders or the Court that this was going on prior to the confirmation hearing on January 16-17, 2019 or the issuance of the confirmation order on February 4 or 5, 2019.

-4-

Selective disclosure to parties specified in Requests 5 and 6 may also bear on the validity of FOMB/COFINA objections to disclosure (such as alleged privilege claims by FOMB/COFINA), which are discussed below.

## II. **Interrogatories**

The interrogatories are likewise discrete and in part foundational, seeking information that would bear on FOMB/COFINA's refusal to produce the requested documents.

The first two interrogatories address whether the documents requested have been provided to any bondholder (or a bondholder's attorney, financial advisor or other representative) or other persons (such as other market participants). These interrogatories are express (in No. 2) that they are **not** seeking information about communications with employees, officers, attorneys or agents of FOMB, COFINA, the Commonwealth or the IRS.

> **INTERROGATORY NO. 1**: State whether any bondholder or attorney or other representative of a bondholder has been provided one or more copies, in any form, of the:
> 
> (a) determination referred to in Request 1,
> 
> (b) closing agreement referred to in Request 2,
> 
> (c) the private letter ruling or closing agreement request referred to in Request 3 above, or
> 
> (d) drafts, preliminary versions of, portions of, or extracts from, any of the foregoing.

If the answer to (a), (b), (c) or (d) is "yes", identify each such person, describe the date and circumstances under which each such document or portion thereof was provided to such person, and produce all documents reflecting the Communications related thereto.

> **INTERROGATORY NO. 2**: State whether any person who is **not** an employee, officer, attorney for, or agent of, FOMB, COFINA, the Commonwealth or the IRS has been provided one or more copies, in any form, of the:
> 
> (a) determination referred to in Request 1,
> 
> (b) closing agreement referred to in Request 2,
> 
> (c) the private letter ruling or closing agreement request referred to in Request 3 above, or
> 
> (d) drafts, preliminary versions of, portions of, or extracts from, any of the foregoing.

If the answer to (a), (b), (c) or (d) is "yes", identify each such person, describe the date and the circumstances under which each such document or portion thereof was provided to such person, and produce all documents reflecting the Communications related thereto.

If in fact selected COFINA bondholders (or attorneys, financial advisors or other representatives) were supplied with the private letter ruling or closing agreement request or the other documents referenced — still being withheld from all COFINA bondholders — that is relevant in assessing any FOMB/COFINA claim of privilege, confidentiality or the like. This is also relevant in assessing whether information was selectively provided to certain favored COFINA bondholders even while being withheld from the Court and all COFINA bondholders. For example, were selected COFINA bondholders working with FOMB in pushing through the COFINA plan provided the private letter ruling or closing agreement request that FOMB/COFINA submitted to the IRS December 14, 2018? If such persons knew about and had copies of that document even while it was being withheld from other COFINA bondholders and the Court during the course of the objection, voting and confirmation hearing and decision-making process — and at a time that other COFINA bondholders and the Court were being told, incorrectly, that "a private letter ruling has **not** been submitted" to the IRS — that would be troubling indeed.

Interrogatory No. 4 seeks to determine how far in advance of February 12, 2019 FOMB/COFINA had been communicating with selected COFINA bondholders concerning the tax exemption implementation agreement dated February 12, 2019, which was made public only following consummation of the Plan. Specifically:

> **INTERROGATORY NO. 4**: Identify by date and participants, and describe, each Communication that took place prior to February 12, 2019, with any bondholder or attorney or other representative of a bondholder concerning (i) the "tax exemption implementation agreement" dated February 12, 2019, or (ii) the request referred to in Request for Production No. 3 above, and produce the documents reflecting each such Communication.

Were these communications going on even before the confirmation order entered on February 4 and 5, 2019? Even before or during the confirmation hearing on January 16-17, 2019? Even while other COFINA bondholders — without the benefit of this information — were evaluating whether to object or voting? If there were no such communications that took

-6-

place prior to February 12, 2019, it would be easy to say so. If there were such communications prior to February 12, 2019 — and the inference from COFINA's objection is that there were — they should be disclosed. If there were only a few communications there is not much burden. If there were a lot of communications, that makes the need for the disclosure even more pointed.

### III. FOMB/COFINA's objections lack merit

#### 1. Asserted lack of jurisdiction.

FOMB/COFINA objects that "this Court lacks jurisdiction." *E.g.*, Ex. B, pp. 2, 5, 6, 7, 8, 9, 10, 11, 12. However, as demonstrated in Docket#8427 (my August 8, 2019 Further Response to #4417), particularly so long as FOMB/COFINA presses its objection to my Claim No. 10701 there is no basis for saying that there is a lack of jurisdiction for the discovery I seek related to my response to FOMB/COFINA's objection.

Mr. Rosen's position on April 24, 2019 — at a time when my appeal had been on file for over two months, and indeed almost two weeks after FOMB (on April 12) moved to dismiss my appeal[1] — was that (quoting Mr. Rosen) "I don't think the pendency of the appeal has anything to do with respect to the existence of the 13th Omnibus Objection." #8427-page-6-of-20.

Yet after reading the submission Mr. Rosen requested that I make (#7211), and facing the discovery here at issue (Exhibit A hereto), now FOMB/COFINA has an epiphany: the pendency of my appeal precludes this Court from even considering the discovery now at issue. I responded to FOMB/COFINA's position on lack of jurisdiction in #8427-page-6-to-7-of-20, to which the Court is referred.

Furthermore, this Court's confirmation order, and the Plan itself, expressly provide for a retention of jurisdiction "to the fullest extent as is legally permissible." #5055-page-41-of-45; #5055-1-page-76-to-78-of-91.

---

[1] FOMB's motion was denied by the First Circuit on Aug. 7, 2019 in an order in Docket Nos. 19-1181 and 19-1182. *See* Exhibit C hereto.

-7-

### 2. **Asserted burden.**

FOMB/COFINA assert that I seek "voluminous" discovery and that "every" Request and "every" Interrogatory is "unduly burdensome." Ex. B pp. 2-3. But FOMB/COFINA's objection is purely conclusory.

FOMB/COFINA do not provide any substantiation for its claim of burden. How long would it take to find and email to me a pdf of the December 14, 2018 private letter ruling or closing agreement request to the IRS, or the IRS May 15, 2019 determination and closing agreement? Two minutes? Five minutes? Certainly less time than FOMB/COFINA has spent trying to defend its refusal to disclose.

### 3. **Asserted lack of relevance.**

FOMB/COFINA repeatedly objects in conclusory fashion based on lack of relevance. *E.g.*, Ex. B, pp. 5, 6, 7, 8, 9, 10, 11, 12.

One answer is that the requested discovery is relevant to my Claim No. 10701, to which COFINA is objecting and seeking to disallow. My responses to FOMB/COFINA's request that I provide more information about my position (#8427 and #7211) set forth that I am continuing to press my non-dischargeable Constitutional claims and specifically discuss FOMB/COFINA's failure to disclose the matters requested (*see* #7211-page-5-to-9-of-24 and #8427-page-13-to-16-of-20), including that FOMB/COFINA withheld from the disclosure statement information about its December 14, 2018 private letter ruling or closing agreement request of the IRS — and that the disclosure statement had instead asserted that "a private letter ruling has not been submitted" (#4364-page-232-of-263). While pre-confirmation there was no way to know what FOMB/COFINA were concealing, and that what FOMB/COFINA said was not accurate, I had also previously raised the subject of the need to know, and have a full disclosure of, the IRS's position in prior filings going back to (at least) January 8, 2019. *See, e.g.*, #4673-page-9-to-10-of-17; *see also* #6283-page-3-to-7-of-13. Others had also objected to the lack of disclosure. *E.g.*, #4244, #4613.

Furthermore, in addition to the pendency of FOMB/COFINA's objection to my Claim No. 10701 as a basis under Bankruptcy Rules 9014 and 7026, 7033 and 7034 for providing the limited discovery I seek, there is a broader issue about FOMB's lack of candor that is pertinent to all of these cases.

The pertinent background is spelled out in the above-referenced sections of my prior filings, including #8427, #7211 and #6283, but in brief: my requests seek the production of "the private letter ruling or closing agreement request filed by COFINA with the IRS on or about December 14, 2018," and the IRS determination and closing agreement that resulted from that request. The December 14, 2018 request only became known to me (and other individual bondholders) after confirmation.

FOMB does not dispute that **(i)** on ***December 14, 2018***—well before Confirmation and while the notices for the confirmation hearing were literally in the mail to bondholders (#4585-page-27-to-28-of-43)—COFINA requested a private letter ruling or closing agreement with the IRS (Docket#6283-2-page-3-of-24, Recital "E"; #7211-page-7-of-24), but **(ii)** there was *no* disclosure of that fact prior to Plan Confirmation. To the contrary, the disclosure statement mailed to bondholders stated that "a private letter ruling has *not* been submitted to the Internal Revenue Service (the "IRS") and no written or other formal determination has been issued by the IRS" (Docket#4364-page-232-of-263, emphasis added). Although the disclosure statement was demonstrably *not* accurate at the time of the confirmation hearing, FOMB never told the Court or the parties.

And the lack of candor is worse than that: Even if the statement that "a private letter ruling has **not** been submitted to the Internal Revenue Service" was technically still the case as the disclosure statement was "in the mail" to bondholders as of say December 13, 2018 (albeit false by the time the disclosure statement was received in the mail on December 17, 2018, *see* #8427-page-13-of-20; #7211-page-5-to-9-of-24), the development of this request likely was in the works for months before December 14, 2018.

That FOMB/COFINA's undisclosed effort to seek a private letter ruling or closing agreement from the IRS was long in the works is apparent from the following statement by FOMB's financial advisor, who said this in its June 10, 2019 application to this Court for a $5.9 million "success" fee:

> ***beginning early 2018***, Citi led efforts to develop theories under which more new securities could be issued by COFINA on a Federal tax-exempt basis, with assistance from special tax counsel. ***Their work was subsequently utilized in a request for letter ruling from the IRS.*** The IRS recently entered into an agreement with COFINA, based on one of the arguments developed by Citi and special tax counsel that will permit nearly $3.7 billion in new COFINA bonds issued under the Plan to be exchanged this summer for Federally tax-exempt bonds, which will further save the Government of Puerto Rico a significant amount in future debt service obligations, and also benefit creditors. (#7341-page-6&n.1-of-9, emphasis added).

If — as appears probable — preliminary versions of the December 14, 2018 private letter ruling or closing agreement request to the IRS were in existence on November 26, 2018 (when FOMB/COFINA submitted a further revised version of the disclosure statement to the Court for approval, see #4364) — and perhaps even shared with other Plan proponents — that would be even more troubling because, if that was the case, then the Court was being asked to approve a disclosure statement stating "a private letter ruling has **not** been submitted" to the IRS even while FOMB/COFINA (and other perhaps Plan proponents) knew that the disclosure statement would become inaccurate when FOMB/COFINA submitted to the IRS the request they were working on.

Adding to the concern that FOMB/COFINA knew the disclosure statement would soon become inaccurate is the artful phrasing — "As of the date of this Disclosure Statement" — preceding the statement that "a private letter ruling has not been submitted" to the IRS. #4364-page-232-of-263. Is it FOMB/COFINA's position that all that matters is that the disclosure statement be (FOMB/COFINA might argue) technically or literally accurate when mailed (putting aside the failure to disclose that a private letter ruling or closing agreement request was in process), and that it does not matter that the disclosure statement has become inaccurate by the time investors receive it in the mail or when the Court conducts the confirmation hearing?

-10-

And it is not like the subject of federal tax treatment is a nothing. 11 U.S.C. §1125(a) expressly requires that a disclosure statement include "a discussion of the potential material Federal tax consequences of the Plan."

In late December (after the December 14, 2018 request was submitted to the IRS) the IRS sought a stay of its deadline to object to the COFINA Plan in light of the Government shutdown — noting that DOJ employees, and many IRS employees, "are prohibited from working, even on a voluntary basis, except in very limited circumstances." #4570-page-1-of-3. This Court provided only very limited relief: an extension to January 4, 2019 (#4574). While that was without prejudice to a further application for an extension, that assumes someone at DOJ would be working (voluntarily, in violation of Government policy?) to make such a further application for an extension.

With the IRS disabled by the Government shutdown, still FOMB/COFINA failed to correct the disclosure statement and disclose to all bondholders and to the Court that on December 14, 2018 it had requested a private letter ruling or closing agreement with the IRS.

In my objections, I expressly raised the issue of the importance of tax considerations to bondholders and I requested that the Court defer any further consideration of the Plan until "there is a full disclosure to bondholders of the IRS' position." #4673-page-10-of-17.

But did FOMB/COFINA — even in response to my position that "a full disclosure to bondholders of the IRS position" was necessary — inform the Court and all bondholders that the statement in the disclosure statement that "a private letter ruling has not been submitted" was not true and that on December 14, 2018 FOMB/COFINA **had** requested a private letter ruling or closing agreement with the IRS? No. Not a peep about the fact there was an untrue statement in the disclosure statement.

If FOMB/COFINA believes the perpetuation of an untrue statement in the disclosure statement is not a big deal, why does FOMB/COFINA refuse to disclose the documents that would tell us what was concealed from both the Court and COFINA bondholders

-11-

pre-confirmation?[2] Why not disclose the documents? The Court should draw the inference that the documents would be adverse to FOMB/COFINA's position.

Finally, the requested discovery is also relevant to FOMB/COFINA's own continued assertions, in support of its objection to my claim, that the disclosure statement "was always clear" (#7958-page-13-of-26); that — based simply on FOMB/COFINA's attorneys' unsubstantiated assertions at the March 13, 2019 hearing — "Hein should ultimately have received 'within pennies' of what he was owed pursuant to the COFINA Plan" (#7958-page-16-of-26); and that giving Puerto Rico investors "a supplemental 2% cash recovery in lieu of a mix of taxable and tax-exempt bonds" does not represent "an improper boon" to Puerto Rico investors (#7958-page-17-of-25).

Was the disclosure statement "always clear?" Comparing the withheld December 14, 2018 private letter ruling or closing agreement request with what the disclosure statement did say ("a private letter ruling has not been submitted") would help answer that question. Was the "bait and switch" of specifying particular coupons in the disclosure statement and Plan, yet requiring bondholders to accept lower coupons to receive tax-exempt bonds, giving bondholders what they were owed under the Plan? The withheld documents would help answer whether tax-exempt bonds bearing the coupons specified in the disclosure statement and Plan should have been distributed to bondholders all along. Was it known as of December 2018 (or before) that Puerto Rico investors would be able to exchange the taxable bonds they received for tax-exempt bonds and thus the added 2% cash was "an improper boon?" Again the withheld documents will provide answers.

FOMB/COFINA cannot seek disallowance of my claim based on factual assertions it advanced in #7958 to support its objections to my claim and then refuse to make

---

[2] *See* Docket#8427-page-14-to-15-of-20; #8427-1-page-12-of-69 (App.II, Ex.4, p.5, 0152, answer to Q11 ¶11); Docket#8427-1-page-22-of-69 (App.II, Ex.5, 0162 ¶4); COFINA response to my discovery (Ex. B hereto, pp.5-8).

-12-

discovery as to whether the withheld documents support — or contradict — what FOMB/COFINA asserts.

### 4. **Asserted confidential or proprietary character.**

FOMB/COFINA asserted, in conclusory fashion, that it objects "to the extent" the requests "seek information that is confidential or proprietary in nature." Ex. B p. 4.

But, FOMB/COFINA is **not** precluded from disclosing the IRS Closing Agreement or what COFINA communicated to the IRS back on December 14, 2018. FOMB/COFINA admits that "there is no non-disclosure agreement between COFINA and the IRS" (Ex. B, p.12) and COFINA itself disclosed a purported "summary" of the terms of the IRS Closing Agreement in its exchange offer Q&A (#8427-page-15-of-20; #8427-1-page-12-of-69 (App.II, Ex.4, p.5, 0152 [response to Q11])).

### 5. **Asserted privilege.**

FOMB/COFINA's conclusory assertion of privileges — without any privilege log identifying what is being withheld and why, and without citation to any supporting rule, statute or case law (e.g., Ex. B pp. 3-4, 5, 6, 7, 8, 9) — should be rejected out of hand. An IRS determination or closing agreement, a request of the IRS for a private letter ruling or closing agreement, and other documents submitted to the IRS, are clearly not privileged. Indeed, FOMB/COFINA admits there is not even a non-disclosure agreement between COFINA and the IRS. Response to Interrog. 3, Ex. B, p.12.

Communications between FOMB/COFINA and bondholders, or their advisors or agents, likewise are not privileged. Indeed, if FOMB/COFINA now claims a relationship or agreement with selected bondholders that would support the withholding as privileged of the documents I seek, FOMB/COFINA could shoot themselves in the foot: Revelation of the type of relationship or agreement with selected bondholders that might support a privilege claim would raise the question of whether that relationship or agreement itself should have been — but was not — disclosed pre-confirmation in the disclosure statement.

-13-

And, if FOMB/COFINA truly intends to rely on its (conclusory) assertion of "mediation privilege" (Ex. B p. 4) to justify withholding, that would raise the specter of even more troubling consequences. Is it FOMB-COFINA's position that drafts, preliminary or final versions of what became its December 14, 2018 private letter ruling or closing agreement request to the IRS were shared in mediation, but that such sharing in mediation immunizes them from disclosure to nonparticipants in the confidential mediation process? If so, that would mean information contradicting the disclosure statement was shared with mediation participants but not all COFINA bondholders.

Finally, even if hypothetically some privilege against disclosure might have existed, FOMB/COFINA waived any such privilege. **[1]** Failing to provide a privilege log or any other specific support for a claim of privilege is a waiver. **[2]** Disclosure to the IRS and to selected bondholders waives any privilege (and responses to Requests 5 and 6 and Interrogatories 1, 2 and 4 may reveal additional waivers). **[3]** In addition:

(a) FOMB/COFINA has repeatedly referenced the IRS determination and closing agreement in exchange offer documents (as described above and in #8427-page-13-to-16-of-20 and #7211-page-5-to-9-of-24),

(b) FOMB/COFINA even purported to provide a "summary" of the IRS determination and closing agreement (*see* #8427-page-15-of-20; #8427-1-page-12-of-69).

(c) FOMB/COFINA chose to expressly address in the disclosure statement the topic of what it had or had not communicated with the IRS — representing that no private letter ruling had been submitted (Docket#4364-page-232-of-263).

Having chosen to repeatedly address the topic and having purported to provide summaries, FOMB/COFINA must reveal the full facts.

### CERTIFICATION OF CONDUCTING MEET AND CONFER

The undersigned hereby certifies that, prior to filing this motion, I met and conferred with counsel for FOMB/COFINA on July 23, 2019. Those efforts did not result in an

-14-

agreement. I do not believe that any of the participants in the meet-and-confer believe that any further meet-and-confer sessions would be productive.

## CONCLUSION

This Court should compel responses to the interrogatories and production of the requested documents.

Dated: August 14, 2019

Respectfully Submitted,

*/s/ Peter C. Hein/*

Peter C. Hein, Pro se
101 Central Park West, Apt. 14E
New York, NY 10023
petercheinsr@gmail.com