# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | X | |
| | : | |
| THE FINANCIAL OVERSIGHT AND | : | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | Title III |
| | : | |
| as representative of | : | Case No. 17-BK-3283 (LTS) |
| | : | |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors.[1] | : | |
| | X | |
| | : | |
| In re: | : | |
| | : | |
| THE FINANCIAL OVERSIGHT AND | : | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | Title III |
| | : | |
| as representative of | : | Case No. 17-BK-4780 (LTS) |
| | : | |
| PUERTO RICO ELECTRIC POWER AUTHORITY | : | **This filing relates only to** |
| | : | **Case No. 17-BK-4780 (LTS)** |
| Debtor. | : | |
| | X | |

## SUPPLEMENTAL AND SUPERSEDING RESPONSES AND OBJECTIONS BY AD HOC GROUP OF PREPA BONDHOLDERS TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SUBPOENA FOR PRODUCTION OF DOCUMENTS IN CONNECTION WITH JOINT MOTION OF DEBTOR AND AAFAF FOR APPROVAL OF CERTAIN SETTLEMENTS (DKT. # 1235)

Pursuant to Federal Rules of Civil Procedure 26, 34 and/or 45 (applicable here

under Rules 9014 and/or 9016 of the Federal Rules of Bankruptcy Procedure), the Ad Hoc Group

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

of PREPA Bondholders (the "Ad Hoc Group"), hereby responds and objects to the Subpoena (the "Subpoena") dated May 22, 2019, served by the Official Committee of Unsecured Creditors (the "Committee") and each individual request for documents set forth therein (the "Requests") in connection with the above referenced motion (the "Motion"):

## PRELIMINARY STATEMENT

Now that (a) the Government Parties have supplemented their submissions in support of the Motion, (b) the Ad Hoc Group and the Committee have met and conferred about the Requests, and (c) the Ad Hoc Group has completed its document production, the Ad Hoc Group submits these supplemental and superseding responses and objections to the Committee's Requests (the "Responses and Objections") to further explain the nature of the Ad Hoc Group's objections and the scope of its document production in another effort to avoid, limit or frame any discovery-related motion practice.[2]

## GLOBAL OBJECTIONS AND RESPONSES

The Ad Hoc Group interposes the following global objections and responses to the Subpoena as a whole, and to each of the Requests set forth therein:

1.      On May 10, 2019, the Government Parties moved pursuant to Bankruptcy Rule 9019 for approval of the settlement set forth in the Definitive RSA. The Committee has stated that it served its Requests to evaluate "the facts and circumstances surrounding the settlement." (June 3, 2019 Motion to Compel, at 2). Certain identified custodians at Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"), the attorneys for the Ad Hoc Group, and Houlihan Lokey Inc. ("Houlihan"), the financial advisor for the Ad Hoc Group, handled the negotiation of the RSA and related documents on behalf of the Ad Hoc Group. The Ad Hoc Group objects to the

---

[2]      Capitalized terms not defined herein shall have the meanings set forth in the Motion.

Requests insofar as they purport to require the Ad Hoc Group's members to search for and produce documents held by anyone other than the identified custodians at Kramer Levin or Houlihan. Any additional searches or production would be unnecessary, unduly burdensome, disproportionate to the needs of the Motion, harassment, and not likely to lead to the discovery of relevant or admissible evidence.

2.     This is confirmed by the supplemental submissions by the Government Parties in further support of their Motion by (*see* Declaration of David Brownstein [Dkt. No. 7816] at ¶ 17) and the document productions by other constituencies. Almost all of the communications they have produced that involve the Ad Hoc Group were with Kramer Levin and Houlihan, not the Ad Hoc Group members.

3.     In its meet and confer communications with the Ad Hoc Group, the Committee has not provided any basis to seek documents held by the Ad Hoc Group's members other than a desire to obtain the views of client decision-makers. However, the subjective views of these investors are not relevant to the Motion. The determination whether to approve a settlement under Rule 9019 requires a deferential assessment of (a) the business judgment of the Debtors (not the Ad Hoc Group members) in entering into the settlement, and (b) whether the benefits of the settlement to the Debtors (not the Ad Hoc Group) fall below the lowest point in the range of reasonableness. The subjective views of any individual settling non-debtor party are irrelevant in determining the Debtors' business judgment, and whether the benefits of a settlement are reasonable to the Debtors. Accordingly, the Ad Hoc Group members' judgments, valuations or assessments of the settlement, the collateral underlying the Bonds, future electrical demand, economic growth or other subjects is not relevant to the Motion. To the extent the Requests seek documents that reflect these judgments, valuations or assessments, the Requests are overbroad,

- 3 -

unduly burdensome, disproportionate to the discovery that is needed for a proper evaluation of the Motion, and not likely to lead to the discovery of relevant or admissible evidence.

4. In addition to being irrelevant, this information is (a) highly proprietary and commercially sensitive to the Ad Hoc Group members, and (b) Privileged, because all of the Ad Hoc Group members' views of the values of the RSA settlement are based on and infused with assessments and assumptions of counsel and other legal advice. To the extent that the Committee is seeking pure mathematical calculations from the Ad Hoc Group members, the Settlement gives explicit descriptions of all values to be received by bondholders. Accordingly the Committee has professionals that can perform their own calculations of those payments without any need or basis to invade the work product of the Ad Hoc Group concerning such issues. Based on the June 24, 2019 telephone conference between the Ad Hoc Group and the Committee, the Ad Hoc Group understands the Committee is no longer pursuing these documents insofar as they are Privileged or proprietary, which would encompass all or virtually all of the Ad Hoc members' documents.[3]

5. The only documents in the possession of the Ad Hoc Group that could conceivably be relevant to the Motion are Kramer Levin and Houlihan's communications with the Government Parties to negotiate the RSA, the Preliminary RSA, the Definitive RSA and any term sheets and exhibits related thereto (together, the "RSA-Related Negotiation Documents"). Those communications demonstrate that the RSA resulted from arms' length negotiations, a fact the Committee has not disputed.[4] The Ad Hoc Group has produced such documents of the identified custodians at Kramer Levin and Houlihan that pre-date execution of the Definitive RSA to the

---

[3] In meet and confer sessions, the Committee requested the credit committee or investment committee files of three Ad Hoc Group members, but that request is not included in the Requests. To the extent such files exist, they are not relevant to the 9019 Motion, and contain proprietary and Privileged information. Accordingly the Ad Hoc Group reiterates its objection to producing any such documents.

[4] The Committee expressly states in its June 3, 2019 Omnibus Motion to Compel (at 12) that the parties negotiated "at arms-length."

- 4 -

KL3 3218678.1

extent they are not privileged, even though the Ad Hoc Group is not a party to the Motion and the communications with the Government Parties could and should have been obtained from the Government Parties themselves (to whom the Committee issued many virtually identical Requests). Kramer Levin and Houlihan also had communications in connection with the negotiation of the RSA, the Preliminary RSA, the Definitive RSA and any term sheets and exhibits related thereto with (a) the P3 Authority, (b) Assured, (c) National, (d) Syncora, and (e) the Fuel Line Lenders. In an additional effort to be cooperative, the Ad Hoc Group has also produced those communications that pre-date execution of the Definitive RSA of the identified custodians at Kramer Levin and Houlihan to the extent they are not privileged. In a further effort to be cooperative, Kramer Levin and Houlihan have also produced communications with bondholders and market makers who joined the Preliminary RSA or Definitive RSA transmitting their joinders and instructions to effectuate their joinders (the "Joinder Documents"). (Such bondholders and market makers, the Government Parties, and (a) through (e) above, are together referred to as the "Communication Counterparties".) Insofar as the Requests seek communications between the Ad Hoc Group and anyone other than the Communication Counterparties, the Ad Hoc Group objects to producing them because they are unnecessary, unduly burdensome, disproportionate to the needs of the Motion, harassment, and not likely to lead to the discovery of relevant or admissible evidence.

6. In light of the foregoing, the Ad Hoc Group's responses that state it will produce or has produced documents (and similar statements) mean the Ad Hoc Group has caused the identified custodians at Kramer Levin and Houlihan to produce documents on behalf of the Ad Hoc Group. It is reasonable under the circumstances for Kramer Levin and Houlihan to limit the number of custodians whose emails are reviewed and the time period of that review to expedite

- 5 -

the search and review process and to complete the production of any Non-Privileged documents (as defined below) in accordance with the schedule set forth in the revised scheduling order [Dkt. No 1366].

7.  A proceeding under Rule 9019 is not a trial on the merits of the underlying dispute that is being settled. To the extent the Requests seek full merits discovery from the Ad Hoc Group, they are overbroad, unduly burdensome and disproportionate to the discovery that is needed for a proper evaluation of the Motion. Nevertheless, the Ad Hoc Group has produced many documents that bear on the merits of the disputes being settled, such as the Trust Agreements, the Trust Agreement Supplements, and the Ad Hoc Group's proofs of claims in PREPA's Title III Case. The Ad Hoc Group objects to the Requests insofar as they seek additional merits-related documents.

8.  The Ad Hoc Group objects to the Requests to the extent they seek the disclosure of documents or information that is or are privileged or immune from production, including, without limitation, (i) documents and/or information that are protected by the attorney-client privilege, (ii) documents and/or information that were prepared, generated, or received for or in anticipation of litigation, (iii) documents that constitute attorney work product, (iv) documents and/or information protected by the common interest doctrine, (v) documents and/or information that are protected by a mediation privilege, or (vi) any other applicable privilege, doctrine, statute, regulation, rule of confidentiality, immunity, protection, or restriction that makes such documents and/or information otherwise non-discoverable (all such privileges and immunities in (i)-(vi) above together are referred to as "Privileges," and documents containing such information are referred to as "Privileged"). Many, if not all, of the Committee's Requests

- 6 -

are improper because they plainly seek documents of a Privileged nature, and the Committee has made no effort to omit such Privileged information from its Requests.

9. Documents containing Privileged information have not been and will not be produced. Only documents not protected by any such Privileges ("Non-Privileged") have been or will be produced, subject in all respects to the objections described herein. In the event that any document containing Privileged information is produced, such disclosure or production is inadvertent and does not constitute a waiver of any such Privileges. The Ad Hoc Group reserves the right to recall any document and/or information inadvertently produced or disclosed that is protected by any such Privileges. In addition, the production of any document protected by any Privilege and/or information properly subject to objection on any ground, including without limitation, relevance, does not constitute a waiver of any Privilege or other objection which may apply to the production of that document and/or information or any class or category of document and/or information from which that document and/or information has been drawn. Upon notification that such disclosure was inadvertent, the documents and any copies thereof shall be returned to the Ad Hoc Group or destroyed immediately with confirmation to the Ad Hoc Group.

10. The Ad Hoc Group objects to the Requests because they contain no date restrictions or parameters. The Ad Hoc Group has limited its search to dates it considers reasonable under the circumstances. The Ad Hoc Group will not search for communications that predate May 1, 2018, a reasonable estimate of the date when the negotiation of the Preliminary RSA began.

11. The Ad Hoc Groups objects to searching or producing any text messages, web messages, instant messages, WhatsApp messages, social media messages, voice recording, or similar messages. Such messages are not readily accessible and/or it would be unduly burdensome

- 7 -

and disproportionate to what is needed for the Motion and the abbreviated timeframe for discovery to search for or produce them.  The Committee requested a representation from the Ad Hoc Group that the Kramer Levin and Houlihan custodians whose documents the Ad Hoc Group produced did not use such messaging platforms to negotiate the RSA (or related documents).  The Ad Hoc Group has provided that representation.

12.     The Ad Hoc Group objects to all Requests to the extent they seek discovery beyond the scope appropriate under Rule 9019, including insofar as they call for the production of documents not relevant to any party's arguments, claims, defenses, positions or assertions in the upcoming Rule 9019 proceeding.

## GENERAL OBJECTIONS AND RESPONSES
## TO REQUESTS, DEFINITIONS AND INSTRUCTIONS

1.     The General Objections and Responses to Requests, Definitions and Instructions (the "General Objections") set forth below and the Global Objections and Responses set forth above apply to each of the individual Requests and to each individual Definition and Instruction set forth in the Requests, and unless otherwise stated, shall have the same force and effect as if set forth in full in response to each Request.  The fact that an objection is not listed herein does not constitute a waiver of the objection or otherwise preclude the Ad Hoc Group from raising the objection at a later time.

2.     The responses and objections contained herein are made without waiving, or intending to waive, but rather to expressly preserve the right to object on any and all grounds to the propriety and legality of the Requests, including the right to move to quash and/or for a protective order, without assuming any obligation to make such a motion.

3.     The Ad Hoc Group objects to the Requests to the extent they seek to impose obligations inconsistent with or greater than those set forth in the Bankruptcy Rules, the Federal

- 8 -

Rules, or the Local Rules of the United States District Court for the District of Puerto Rico. The Ad Hoc Group expressly disclaims any obligation to provide any documents and/or information beyond those required by any of the above.

4.      The Ad Hoc Group objects to the Requests to the extent they seek discovery that is cumulative or duplicative, or that can be obtained from another source from whom it would be more convenient, less burdensome, or less expensive to obtain it, including the UCC, the Government Parties, and other parties. The Ad Hoc Group is not a party to the Motion.

5.      The Ad Hoc Group objects to the Requests to the extent that any portions thereof are vague, ambiguous, incomprehensible, overly broad, unduly burdensome, oppressive, or disproportionate to what is appropriate for the Motion.

6.      The Ad Hoc Group objects to the Requests to the extent they are premature or seek presently inaccessible or yet to be discovered documents or information. In responding to the Requests, the Ad Hoc Group has provided responses based on presently available documents and/or information. The Ad Hoc Group expressly reserves the right at any time, to revise, correct, or add to its responses if additional documents and/or information become available, without assuming any obligation to do so. The Ad Hoc Group further expressly reserves the right to rely at any time on subsequently discovered documents and/or information of which it is currently unaware or which are unintentionally omitted from this response.

7.      The Ad Hoc Group objects to the Requests to the extent they contain, expressly or implicitly, inaccurate, incomplete or misleading descriptions of the law, facts, events and pleadings underlying this action. The production of any documents and/or information shall not constitute the Ad Hoc Group's agreement with or acquiescence in any such description.

- 9 -

8.      In responding to the Requests, the Ad Hoc Group does not waive or intend

to waive, but rather intends to preserve:

>           A.      all questions as to the competence, relevance, materiality, privilege and admissibility as evidence for any purpose of the responses or documents, or the subject matter thereof, in any aspect of this or any other litigation, action, proceeding or investigation;

>           B.      the right to object on any ground to the use of the responses in any aspect of this or any other litigation, action, proceeding or investigation;

>           C.      the right to object at any time to this or any other set of requests for the production of documents and things; and

>           D.      the right at any time to revise or supplement these responses.

9.      The Ad Hoc Group objects to the Requests to the extent they seek documents and/or information containing trade secrets, confidential business and financial information, or proprietary or competitively or commercially sensitive information. The Ad Hoc Group reserves the right to seek appropriate confidentiality protections in the event such documents are to be produced.

10.     The Ad Hoc Group objects to the Requests to the extent they are disproportionate, excessive or seek information and/or documents that are not reasonably calculated to lead to the discovery of admissible evidence. The Ad Hoc Group expressly reserves the right to limit the provision of information and production of documents to information and documents relevant to, or likely to lead to admissible evidence in connection with the Motion.

11.     The Ad Hoc Group objects to the Requests insofar as they use terms not defined, or adequately defined, anywhere in the Committee's Requests, or that are otherwise ambiguous or unclear as to their specific or intended meaning.

12.     The Ad Hoc Group objects to Instructions 6, 7 and 9 of the Instructions, which purport to specify information that the Ad Hoc Group must provide if documents are no

- 10 -

longer available, in its possession, or have been destroyed, on the grounds that those instructions are vague, ambiguous, overly broad, unduly burdensome and exceed the Ad Hoc Group's obligations under the Federal Rules, the Bankruptcy Rules or the Local Rules.

13.    The Ad Hoc Group objects to Instruction 8 of the Instructions. The Ad Hoc Group will not furnish a list of each document withheld on the ground of privilege, except in accordance with any agreement between the parties and/or direction from the Court, because to do so would be disproportionately burdensome and costly. The Committee's Requests plainly seek attorney-client communications and attorney work product and other documents and communications protected by Privilege. Viewed in light of the Committee's overbroad Requests, and the applicable scheduling order, the instruction to provide an itemized privilege log seeks to impose a disproportionate and undue burden on the Ad Hoc Group. The Ad Hoc Group further objects to this instruction to the extent it seeks to impose obligations inconsistent with or greater than those set forth in the Bankruptcy Rules, the Federal Rules, or the Local Rules. The Ad Hoc Group will provide a categorical privilege log of the documents of the identified custodians at Kramer Levin and Houlihan that the Ad Hoc Group has otherwise agreed to produce that it is withholding on the ground of Privilege.

14.    The Ad Hoc Group objects to Definition 13 and all Definitions that state that a defined term includes "any of their affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting" on an entity's behalf. This definition renders each Request in which the term is used vague and ambiguous, overly broad and unduly burdensome and oppressive. Such

- 11 -

requests seek the production of information that is neither relevant to the subject matter of the Motion nor reasonably calculated to lead to the discovery of admissible evidence.

15. The Ad Hoc Group objects to Definition 21 ("Proposed Transformation") on the grounds that it is overly broad, unduly burdensome, vague and ambiguous.

16. The Ad Hoc Group objects to Definitions 26, 27 and 29, and all Requests that ask for all "documents" or "communications" "concerning" a particular subject without any limitations. Those Definitions, and all such Requests, are overbroad and oppressive, particularly given the short time period in which the Ad Hoc Group must comply with production and the scope of the Committee's Requests. Compliance would impose undue burden and expense on the Ad Hoc Group. The Ad Hoc Group also objects to all such Requests on the grounds that they violate the proportionality requirements of Federal Rule 26(b)(1) and to the extent they seek to require retrieval of information stored in electronic form that is not "accessible" as that term is used in Federal Rule 26(b). In order to respond to these Requests, the Ad Hoc Group has identified potentially responsive documents by applying search terms (including domain names) and/or other technology-assisted review tools to the e-mail files of the identified Kramer Levin and Houlihan custodians, using electronic searches to eliminate presumptively privileged information, and then reviewing the remaining documents for responsiveness and privilege.

17. In searching for documents, the Ad Hoc Group has utilized electronic tools that it believes are reasonable and proportionally appropriate, including email threading and de-duping. Furthermore, the Ad Hoc Group has collected documents and communications in response to the Requests in a manner that it considers reasonable and proportionally appropriate. None of these electronic tools or methods of collection assures the collection, review and production of "[a]ll documents and communications," as requested by the Committee. However they represent

- 12 -

KL3 3218678.1

the Ad Hoc Group's good faith effort to comply, subject to the responses and objections noted

herein. If the Ad Hoc Group states in this response that responsive documents, if any, have been

or will be produced, that does not constitute an admission that responsive documents exist but only

that it has conducted the searches described above of the identified custodians at Kramer Levin

and Houlihan for responsive documents. Similarly, if the Ad Hoc Group states in this response

that it does not possess documents responsive to the Requests, or that it believes any relevant

documents are in the possession, custody, or control of others, that is not in any way an admission

that such documents exist or do not exist or that allegations asserted or implied in the Requests are

true. The Ad Hoc Group's responses to any particular Requests, including its agreement to provide

documents, do not constitute admissions that such documents are evidence of any particular

allegation or issue.

18.     Each of the above General Objections and Global Objections shall be

deemed to apply to the Ad Hoc Group's responses set forth below, even though the Ad Hoc Group

has supplied additional specific objections and has produced responsive documents.

## RESPONSES AND OBJECTIONS TO THE
## COMMITTEE'S SPECIFIC REQUESTS FOR PRODUCTION OF DOCUMENTS

The Ad Hoc Group provides the following specific responses and objections to the

Requests:

1.     All drafts and prior versions of the RSA, including the Preliminary RSA,
and any and all term sheets and exhibits related to such drafts and prior versions.

RESPONSE:

The Ad Hoc Group objects to this Request because it is overly broad, unduly

burdensome, not relevant or material to or reasonably calculated to lead to the discovery of

admissible evidence, and disproportionate to what is needed for the Motion, for the reasons

KL3 3218678.1

described in additional detail in the Global Responses and Objections above. The Ad Hoc Group also objects to this Request because it seeks Privileged documents.

Subject to all of its objections and the search and production parameters discussed above, the Ad Hoc Group has produced Non-Privileged RSA-Related Negotiation Documents between the Communication Counterparties and the identified Kramer Levin and Houlihan custodians. Insofar as the Request seeks any additional documents, the Ad Hoc Group objects to producing them.

2. All documents and communications concerning the Settlement, the RSA and all prior versions and drafts thereof, including but not limited to the Preliminary RSA, including communications with (a) the Oversight Board, (b) AAFAF, (c) PREPA or any member of its governing board, (d) any Supporting Holder, (e) any Concessionaire, (f) any creditor or stakeholder of PREPA other than a Supporting Holder, (g) the news media, (h) any government official or employee, or (i) any agent of or advisor to any of the foregoing.

RESPONSE:

The Ad Hoc Group objects to this Request because it is overly broad, unduly burdensome, not relevant or material to or reasonably calculated to lead to the discovery of admissible evidence, and disproportionate to what is needed for the Motion, for the reasons described in additional detail in the Global Responses and Objections above. The Ad Hoc Group also objects to this Request because it seeks Privileged documents. The Ad Hoc Group further objects to this Request insofar as it seeks documents or communications not related to the Government Parties' exercise of business judgment, or that relate to the Ad Hoc Group members' or any other person's judgments.

Subject to all of its objections and the search and production parameters discussed above, the Ad Hoc Group has produced Non-Privileged RSA-Related Negotiation Documents, Joinder Documents between the Communication Counterparties and the identified Kramer Levin

- 14 -

and Houlihan custodians. Insofar as the Request seeks any additional documents, the Ad Hoc

Group objects to producing them.

3. All documents and communications concerning the Proposed
Transformation, and the effect (if any) of the Settlement on the Proposed Transformation,
including communications with (a) the Oversight Board, (b) AAFAF, (c) PREPA or any member
of its governing board, (d) any Supporting Holder, (e) any Concessionaire, (f) any creditor or
stakeholder of PREPA other than a Supporting Holder, (g) the news media, (h) any government
official or employee, (i) Puerto Rico Public-Private Partnerships Authority, or (j) or any agent of
or advisor to any of the foregoing.

RESPONSE:

The Ad Hoc Group objects to this Request because it is overly broad, unduly

burdensome, not relevant or material to or reasonably calculated to lead to the discovery of

admissible evidence, and disproportionate to what is needed for the Motion, for the reasons

described in additional detail in the Global Responses and Objections above. The Ad Hoc Group

also objects to this Request because it seeks Privileged documents. The Ad Hoc Group further

objects to this Request insofar as it seeks documents or communications not related to the

Government Parties' exercise of business judgment, or that relate to the Ad Hoc Group members'

or any other person's judgments. The Ad Hoc Group also objects to this Request insofar as it

seeks documents and communications that relate to the Proposed Transformation, but do not relate

to the Settlement, which is the only subject at issue in the Motion. Such documents and

communications are irrelevant, and the request for their production is overbroad, unduly

burdensome, and disproportionate to what is needed for the Motion.

Subject to all of its objections and the search and production parameters discussed

above, the Ad Hoc Group has produced Non-Privileged RSA-Related Negotiation Documents

between the Communication Counterparties and the identified Kramer Levin and Houlihan

custodians. Insofar as the Request seeks any additional documents, the Ad Hoc Group objects to

producing them.

- 15 -

4.     All documents and communications concerning Your analysis or
calculation of the various payments that You will receive under the terms of the Settlement.

RESPONSE:

The Ad Hoc Group objects to this Request because it is overly broad, unduly
burdensome, not relevant or material to or reasonably calculated to lead to the discovery of
admissible evidence, and disproportionate to what is needed for the Motion, for the reasons
described in additional detail in the Global Responses and Objections above. In addition, the
Settlement speaks for itself and expressly discloses all payments. Accordingly, this Request is
superfluous, irrelevant and unduly burdensome. The Ad Hoc Group also objects to this Request
because it seeks Privileged documents. The Ad Hoc Group further objects to this Request as vague
and ambiguous to the extent it refers to "various payments" without defining precisely what it
means by that term. The Ad Hoc Group objects to this Request insofar as it seeks documents,
communications, analyses and calculations not related to the Government Parties' exercise of
business judgment, or that relate to the Ad Hoc Group members' judgments. The Ad Hoc Group
further objects to the extent this Request seeks documents and/or information that constitute, in
whole or in part, trade secrets or protected, private, confidential, proprietary or competitively
sensitive information. In the parties' meet and confer on June 24, 2019, the Committee orally
agreed to withdraw this Request insofar as it seeks Privileged and proprietary documents.

Subject to all of its objections and the search and production parameters discussed
above, the Ad Hoc Group has produced Non-Privileged RSA-Related Negotiation Documents
between the Communication Counterparties and the identified Kramer Levin and Houlihan
custodians, as well as publicly filed documents disclosing the Ad Hoc Group members' holdings
of the relevant bonds pursuant to Bankruptcy Rule 2019. Insofar as the Request seeks any
additional documents, the Ad Hoc Group objects to producing them.

- 16 -

5.     All documents and communications concerning the nature, extent, and value of any security interest that PREPA bondholders purport to hold in assets of PREPA, including the extent to which the value of such security interest has decreased since PREPA's title III petition date, including documents evidencing or concerning any re-marking, change in, or reevaluation of Your members' PREPA exposure.

RESPONSE:

The Ad Hoc Group objects to this Request because it is overly broad, unduly burdensome, not relevant or material to or reasonably calculated to lead to the discovery of admissible evidence, and disproportionate to what is needed for the Motion, for the reasons described in additional detail in the Global Responses and Objections above.  Any change in the holdings of the Ad Hoc Group members is irrelevant, and, in any event, disclosed in Statements filed Pursuant to Rule 2019.  Insofar as the Request seeks additional information about changes in the holdings of the Ad Hoc Group members, it is unduly burdensome and seeks information that is not relevant to the Motion.  The Ad Hoc Group also objects to this Request because it seeks Privileged documents.  The Ad Hoc Group further objects to this Request as vague and ambiguous to the extent it refers to the "value of any security interest that PREPA bondholders purport to hold in assets of PREPA" without defining precisely what it means by that.  What the Ad Hoc Group members may believe about the value of a security interest, how any such value might have changed, and "any re-marking, change in, or reevaluation of [the Ad Hoc Group's] PREPA exposure" is not relevant to the Motion.  It is the Government Parties' business judgment that is at issue, not the Ad Hoc Group members'.  The Ad Hoc Group further objects to the extent this Request seeks documents and/or information that constitute, in whole or in part, trade secrets or protected, private, confidential, proprietary or competitively sensitive information.  In the parties'

- 17 -

meet and confer on June 24, 2019, the Committee orally agreed to withdraw this Request insofar as it seeks Privileged and proprietary documents.

Subject to all of its objections and the search and production parameters discussed above, the Ad Hoc Group has produced Non-Privileged RSA-Related Negotiation Documents and Joinder Documents between the Communication Counterparties and the identified Kramer Levin and Houlihan custodians, as well as publicly filed documents disclosing the Ad Hoc Group members' holdings of the relevant bonds pursuant to Bankruptcy Rule 2019, the Trust Agreement, the Trust Agreement Supplements and the Ad Hoc Group's proofs of claim in PREPA's Title III case. Insofar as the Request seeks any additional documents, the Ad Hoc Group objects to producing them.

6.    All documents produced to any other party in connection with the Rule 9019 Motion.

RESPONSE:

The Ad Hoc Group objects to this Request because the Ad Hoc Group should not be burdened by requiring it to reproduce any documents that it is producing in response to any other non-party subpoenas. It is the responsibility of any requesting party to provide such documents. Without waiver of the foregoing, the Ad Hoc Group has produced the same documents to the Committee as it produced to UTIER, which is the only other entity that served any discovery requests on the Ad Hoc Group.

7.    All documents and communications that You intend to use as exhibits or otherwise rely on at the hearing on the Rule 9019 Motion.

RESPONSE:

The Ad Hoc Group objects to this request on the grounds that the Ad Hoc Group is not a party to the Motion, and has no obligation to use exhibits or rely on any documents. The Ad Hoc Group further objects to this Request on the grounds that it seeks Attorney Work Product.

KL3 3218678.1

The Ad Hoc Group also objects because this Request is premature in that it calls for disclosure of exhibits in advance of the filing of relevant pleadings under the schedule applicable to the Motion.

Subject to all of its objections, the Ad Hoc Group refers to all of the documents it produces, and documents produced by any other party or non-party in discovery in connection with the Motion, all deposition and hearing transcripts, and all other pleadings filed in connection with the Motion or these cases, any of which may be used as exhibits or otherwise relied upon at the hearing on the Motion.

8.     All documents and communications consisting of any spreadsheets or models concerning projected revenues from the sale of electricity or other revenue sources in Puerto Rico.

RESPONSE:

The Ad Hoc Group objects to this Request because it is overly broad, unduly burdensome, not relevant or material to or reasonably calculated to lead to the discovery of admissible evidence, and disproportionate to what is needed for the Motion, for the reasons described in additional detail in the Global Responses and Objections above. The Ad Hoc Group also objects to this Request insofar as it seeks Privileged documents. In addition, what the Ad Hoc Group may believe about projected revenues is not relevant to the current proceeding. It is the Government Parties' business judgment that is at issue, not the Ad Hoc Group members'. The Ad Hoc Group further objects because the reference in this Request to "other revenue sources in Puerto Rico" is vague, ambiguous, overly broad and not relevant to the Motion. The Ad Hoc Group further objects to the extent this Request seeks documents and/or information that constitute, in whole or in part, trade secrets or protected, private, confidential, proprietary or competitively

- 19 -

sensitive information. In the parties' meet and confer on June 24, 2019, the Committee orally agreed to withdraw this Request insofar as it seeks Privileged and proprietary documents.

Subject to all of its objections and the search and production parameters discussed above, the Ad Hoc Group has produced Non-Privileged RSA-Related Negotiation Documents between the Communication Counterparties and its identified Kramer Levin and Houlihan custodians, which may contain some Non-Privileged material responsive to this Request. Insofar as the Request seeks any additional documents, the Ad Hoc Group objects to producing them.

9.  All documents and communications concerning projected demand forecasts, sales forecasts, electricity pricing forecasts, and related assumptions for electricity in Puerto Rico, including the effect, if any, of the Settlement (including the Settlement Charge and/or the Transition Charge) on such forecasts, pricing, and assumptions, and any spreadsheets or models concerning the same.

RESPONSE:

The Ad Hoc Group objects to this Request because it is overly broad, unduly burdensome, not relevant or material to or reasonably calculated to lead to the discovery of admissible evidence, and disproportionate to what is needed for the Motion, for the reasons described in additional detail in the Global Responses and Objections above. The Ad Hoc Group also objects to this Request insofar as it seeks Privileged documents. In addition, what the Ad Hoc Group may believe in terms of forecasts, and the effect (if any) of the Settlement on such forecasts, is not relevant to the current proceeding. It is the Government Parties' business judgment that is at issue, not the Ad Hoc Group members'. The Ad Hoc Group further objects to the extent this Request seeks documents and/or information that constitutes, in whole or in part, trade secrets or protected, private, confidential, proprietary or competitively sensitive information. In the parties'

- 20 -

meet and confer on June 24, 2019, the Committee orally agreed to withdraw this Request, insofar as it seeks Privileged and proprietary documents.

Subject to all of its objections and the search and production parameters discussed above, the Ad Hoc Group has produced Non-Privileged RSA-Related Negotiation Documents between the Communication Counterparties and the identified Kramer Levin and Houlihan custodians which may contain some Non-Privileged material responsive to this Request. Insofar as the Request seeks any additional documents, the Ad Hoc Group objects to producing them.

Dated: July 9, 2019
New York, New York

**TORO COLÓN MULLET P.S.C.**
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

*/s/ Manuel Fernandez-Bared*
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
E-mail: mfb@tcm.law

*/s/ Linette Figueroa-Torres*
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
E-mail: lft@tcm.law

*/s/ Nayda Perez-Roman*
NAYDA PEREZ-ROMAN
USDC–PR No. 300,208
E-mail: nperez@tcm.law

*Counsel for the Ad Hoc Group of PREPA Bondholders*

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000

*/s/ Natan M. Hamerman*
AMY CATON*
THOMAS MOERS MAYER*
NATAN HAMERMAN*
ALICE J. BYOWITZ*
Email: acaton@kramerlevin.com
tmayer@kramerlevin.com
nhamerman@kramerlevin.com
abyowitz@kramerlevin.com
*Admitted Pro Hac Vice*

*Counsel for the Ad Hoc Group of
PREPA Bondholders*

KL3 3218678.1