# **EXHIBIT B**

## *"Puerto Rico Highway and Transportation Authority Act"*

Act No. 74 of June 23, 1965 as amended,

(Contains amendments incorporated by:
Act No. 112 of June 21, 1968
Act No. 4 of August 24, 1990
Act No. 1 of March 6, 1991
Act No. 207 of August 25, 2000
Act No. 84 of August 26, 2005)

(Amendments non-incorporated:
Act No. 89 of July 26, 2010)

Creating a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico to be known as the Puerto Rico Highway and Transportation Authority; defining its powers and duties; authorizing the Authority to construct or acquire roads, speedways, bridges, tunnels, parking facilities and other facilities necessary or desirable in connection with the movement of vehicular traffic; establishing that the Authority may carry out its program in cooperation with the Secretary of Public Works; authorizing the Secretary of Public Works to enter into agreements with the Authority; authorizing the Authority to issue bonds to carry out its purposes; providing for the collection of tolls and other charges to pay such bonds and the interest thereon and the cost of maintenance, repair and operation of such facilities; authorizing the Authority to pledge the proceeds of any taxes or other funds made available to it by the Commonwealth of Puerto Rico; exempting such facilities and the revenues therefrom from taxes and exempting such bonds from income taxes; prescribing the rights of the holders of such bonds; authorizing the Governor and the Secretary of Public Works to acquire property for the Authority; authorizing municipalities and political subdivisions to grant and convey property to the Authority; declaring of public utility all traffic facilities and other property necessary for the Authority to carry out the purposes of this act; and for other purposes relating to the financing, construction, acquisition and operation of traffic facilities.

*Be it enacted by the Legislature of Puerto Rico :*

**Section  1. — Short title.** (9 L.P.R.A. § 2001)

This act shall be known as the "Puerto Rico Highway and Transportation Authority Act".

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

**Section  2. —  Authority Created.** (9 L.P.R.A. § 2002)

   With the purpose of continuing the government's work to provide the people with the best roads and means of transportation, to expedite the movement of vehicles and individuals, to relieve in every possible way the hazards and inconveniences caused by congestion on the roads of the Commonwealth, to face the increasing demand for more and better traffic and transportation facilities that the economic growth of Puerto Rico entails, to contribute to the development and establishment of the Transportation Plan defined in this Act, and to promote the development of the areas around the train stations; a body corporate and politic is hereby created consisting of a public corporation and government instrumentality of the Commonwealth, which shall be known as Puerto Rico Highway and Transportation Authority (hereinafter denominated "the Authority"). The powers and duties of the Authority shall be exercised by the Secretary of Transportation and Public Works. The Authority thus constituted shall exercise public and essential functions of the government. The exercise by the Authority of the powers and faculties conferred by this Act shall not have any effect whatsoever of vesting the Authority as a private corporation; Provided, however, That in order to attain the goals and objectives set forth by this Act, the Authority may, as provided further and in relation to certain activities, conduct or engage in certain such activities and obtain the benefit of the profits yielded thereby beyond self-liquidation for the Authority.

**Section  3. —  Definitions.** (9 L.P.R.A. § 2003)

   The following words or terms as used or referred to in this section shall have the meaning expressed below, except when the context clearly indicates otherwise:
(a) *Authority* — Shall mean Puerto Rico Highways and Transportation Authority, created by Section 2 of this Act, or, should said Authority be abolished, the agency or body succeeding it in its main functions, or on which whom the faculties conferred to the Authority by this Act are granted by law.
(b) *Bonds* — Shall mean bonds, temporary bonds, refunding bonds, debentures, notes, interim receipts or provisional bonds, certificates or other evidences of indebtedness of the Authority issued under the provisions of this Act.
(c) *Traffic or Transportation Facilities* — Shall mean:
   (1) Roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals, railways, trains, buses, vessels, and any other land and water facilities necessary or desirable in connection with the movement of persons, freight, vehicles or vessels.
   (2) Parking lots and structures and other facilities necessary or desirable in connection with the parking, loading or unloading of all kinds of vehicles and vessels.
   (3) All property, rights, easements, and interests therein necessary or desirable for the construction, maintenance, control, operation or development of such traffic facilities.
   (4) Systems, equipment and mechanisms for the operation and control of the movement of vehicles and individuals on public highways, including communication and traffic signal systems, passenger shelters, intermodal or multimodal terminals or centers, vehicles, power transmission systems for the operation of passenger vehicles, and other

public systems and facilities related to the operation and maintenance of equipment and vehicles used for the transportation of passengers.

(5) Informative electronic signboards or billboards Means any structure devoted to the diffusion of information about the disappearance of minors in case an Amber Alert is activated (America's Missing: Broadcast Emergency Response), such as the vehicle used and the direction in which it was traveling, among other things, or to issue information to send an alert or announce an emergency through the Emergency Broadcast System in the case of meteorological emergencies or relevant information on the conditions of the highways. The term "traffic and transportation facilities", shall also apply to all property, rights, easements, or interests on these that may be necessary or advisable for the construction, maintenance, control, operation or development of such informative electronic signboards or billboards.

(d) *Transportation Plan* — Shall mean the document that presents the public policy on transportation, prepared by the Secretary of the Department of Transportation and Public Works with the participation and counseling of the Puerto Rico Transportation Advisory Board and approved by the Governor of the Commonwealth, and on the basis of which, the objectives and goals of public and private activity in the transportation sector are established. Prior to its promulgation, the plan shall be submitted to public hearings, following the procedure established in Act No. 170 of August 12, 1988 [3 L.P.R.A. §§ 2101 et seq.]. This document also presents the general guidelines regarding quality standards of the service to be rendered by the different components and operators of the transportation system, including the highway system and the mass transportation systems. It shall define the technology and transportation means to be established or promoted in specific areas or routes, the guidelines for interrelation and coordination between the different means of transportation and their operators, and the guidelines or plans for future development and growth of the system; as well as other guidelines and plans atuned with, and necessary to obtain the established goals.

(e) *Influence Zone* — Shall mean the geographical area within a radius of five hundred (500) meters measured from property limits to train station accesses, including the lands and structures located in and out of the right of way acquired for said facilities, as well as the air space above them, over which the Authority shall exercise the powers conferred by this Act in order to promote the protection and safety of property and users, as well as the orderly and intensive use of the lands so as to lead to the improvement of the urban setting. It shall be understood to include but is not limited to streets, roads, pedestrian walkways, public services, recreational areas, urban chattel, planting areas, buildings, structures and facilities, as well as all those other things necessary or convenient to that concept. Any property located totally or partially within the radius stated above shall be deemed to be located within the Influence Zone.

(f) *Special Development District* — Shall mean a Special Planning District as defined by the Planning Board or by municipalities declared to be autonomous pursuant to Act No. 81 of August 30, 1991, as amended [21 L.P.R.A. §§ 4001 et seq.], with jurisdiction over the area in question, for those areas around train stations, including the lands and structures located in and out of the right of way acquired for said facilities, as well as the air space above them, in relation to which special requirements shall be established to allow and promote high-density developments and land uses which conform, promote, integrate and maximize the efficient use of said facilities, the protection and safety of property and users, and where the orderly

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

and intensive use of the lands is also promoted so as to lead to the improvement of the urban setting. It shall be understood to include but is not limited to streets, roads, pedestrian walkways, public services, recreational areas, urban chattels, planting areas, buildings, structures and facilities, as well as all those other things necessary or convenient for said concept.

**Section 4. — Powers.** (9 L.P.R.A. § 200)

Subject to the provisions of Section 5 of this Act, the Authority is hereby empowered to:
(a) To have perpetual existence as a corporation.
(b) To adopt, alter, and use a corporate seal, which shall be judicially noticed.
(c) To adopt, amend and repeal bylaws for the regulation of its affairs and the conduct of its business.
(d) To have complete control and supervision of any traffic or transportation facilities owned, operated, constructed or acquired by it under the provisions of this Act, including without limitation the determination of the site, location, and the establishment, limit and control of points of ingress to and egress from such facilities, and materials of construction, and the construction, maintenance, repair and operation thereof.
(e) Prepare plans, designs, cost and construction estimates, extension, improvements, expansion or repair of any traffic or transportation facilities or any structure or building, whether for residential, commercial, tourist, mixed, or industrial use, or any other public or private use allowed in an influence zone or in a Special Development District, or any part thereof, or arrange for these to be prepared; and to modify such plans, designs and estimates.
(f) To have complete control and supervision over the character of and necessity for all of its expenditures and the manner in which they shall be incurred, allowed and paid without regard to the provision of any laws governing the expenditure of public funds.
(g) To sue and be sued, complain and defend in all courts of justice and administrative bodies.
(h) To make contracts and to execute all instruments necessary or incidental in the exercise of any of its powers.
(i) Acquire any real or personal property or interest therein in any lawful manner, including but not limited to acquisition by purchase, whether by agreement or by the exercise of eminent domain, or by lease, bequest, devise, gift, exchange, assignment or surrender, and to hold, maintain, use and operate such property or interest therein to meet the purposes of this Act; and for such end, without it being construed as a limitation, to acquire properties in any manner, except through the exercise of eminent domain, in an influence zone or in the special development districts themselves, when such acquisition has the purpose of avoiding inflation produced by speculation practices in the purchase or sale of real estate or of directing any kind of project that propitiate the development of influence zones or Special Development Districts, per se or through or jointly with agencies, instrumentalities or political subdivisions of the Commonwealth or the Government of the United States, or with private entities.
(j) Determine, fix, impose, alter and collect tolls or ferriage, rentals, assessments, rates and other reasonable charges for the use of the traffic or transportation facilities owned, operated, constructed, acquired or financed by the Authority or for the services rendered thereby. In

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

fixing or altering these charges, the Authority shall take into account such factors as will promote the use of the traffic or transportation facilities owned or operated by it in the broadest and most varied manner economically possible. To fix or alter such charges, the Authority shall hold a public hearing of an informative and quasi-legislative character before any official or officials designated by the Board for such purpose. Such hearings shall be announced reasonably in advance, stating the place and time of the hearing and the proposed charges or alteration.

(k) To appoint an Executive Director and a Secretary neither of whom shall be a member of the Board of Directors of the Authority, and such other officers, agents and employees and to confer upon them such powers and duties and pay such compensation for their services as the Board of Directors of the Authority may determine.

(l) To borrow money for any of its corporate purposes, and to issue bonds of the Authority in evidence of such indebtedness and to secure payment of bonds and interest thereon by pledge of, or other lien on, all or any of its properties, revenues or other income, and subject to the provisions of § 8 of Art. VI of the Constitution of the Commonwealth, pledge to the payment of said bonds and interest thereon, the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth.

(m) To issue bonds for the purpose of funding, refunding, purchasing, paying, or discharging any of its outstanding bonds.

(n) To accept grants or loans from, and enter into contracts, leases, agreements, or other transactions with, any agency or department of the United States of America, any state, the Commonwealth of Puerto Rico, or any political subdivision or instrumentality of the Commonwealth of Puerto Rico and to expend the proceeds of any such grants or loans for any of its corporate purposes.

(o) Sell, exchange, and grant options for sale, sell in installments and guarantee the sales price through mortgage on the property sold; Provided, That said mortgage shall accrue interest and constitute a preferred nonsubrogable lien, within an influence zone or a Special Development District, without being subject to the provisions of Act No. 12 of December 10, 1975, as amended [28 L.P.R.A. §§ 31 et seq.], and without being subject to the provisions of Act No. 47 of June 18, 1965, as amended [28 L.P.R.A. §§ 221 et seq.]; and in any other case, to sell or otherwise dispose of any real or personal property of the Authority or any interest therein that in the judgement of the Authority is no longer necessary to achieve the purposes of the Authority or of which the disposal is consistent with the ends of this Act; and to lease properties acquired within an influence zone or a special development zone under those terms and conditions that are convenient to the purposes of this Act and without being subject to the provisions of Act No. 12 of December 10, 1975, as amended [28 L.P.R.A. §§ 31 et seq.], and without being subject to the provisions of Act No. 47 of June 18, 1965, as amended [28 L.P.R.A. §§ 221 et seq.]; and in any other case, to lease property under the terms and conditions that are most convenient to the purposes of this Act.

(p) To enter upon any lands, bodies of water or premises, by permission of the owners or holders thereof, or their representatives, for the purpose of making surveys, soundings or examinations for the purposes of this Act. Should the owners or holders, or their representatives, refuse permission to enter upon said lands, bodies of water or premises, for the aforesaid purposes, any judge of the Court of First Instance shall, upon presentation to him of an affidavit setting forth the Authority's intent to enter upon said lands, bodies of

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

water or premises for such purposes, issue an order authorizing any officials or employees of the Authority to enter upon the lands, bodies of water or premises described in the affidavit, for said purposes. In the absence of known owners or holders, or their representatives, the Authority may, through its officials or employees, enter without any permission.

(q) To do all acts or things necessary or desirable to the carrying out of the powers granted to the Authority by this Act or by any other act of the Legislature of Puerto Rico; Provided, however, That neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal of or interest on any bonds issued by the Authority and such principal and interest shall be payable only from the funds of the Authority pledged for such payment pursuant to subsection (l) of this section.

(r) To adopt, proclaim, amend and repeal such rules and regulations as may be necessary or pertinent for the exercise of its powers and the performance of its duties according to this Act.

(s) Construct or reconstruct any traffic or transportation facility or any part or parts thereof, and any additions, improvements or expansion of any traffic or transportation facility of the Authority through contract or contracts or under the direction of its own officials, agents or employees, or through or by mediation of the same; Provided, That it shall have the same power within an influence zone or special development district in relation to any structure or building, whether for residential, commercial, tourist, mixed, or industrial use, or any other public or private use allowed within the influence zone or the special development district.

(t) Contribute to the development of the Transportation Plan and, under instructions of the Secretary, to establish and implement the necessary mechanisms in order to efficiently plan, evaluate and develop the highway and mass transportation system. These mechanisms include the following, among others: to perform studies on mass transportation needs in Puerto Rico; to contract within the operational territorial jurisdiction of the Metropolitan Bus Authority which should not exceed the municipal limits of San Juan, Cataño, Bayamón, Toa Baja, Guaynabo, Trujillo Alto and Carolina, for the rendering of mass transportation services attune with the Transportation Plan without being subject to the provisions of Act No. 109 of June 28, 1962, as amended [23 L.P.R.A. § 1371 et seq.], and Act No. 5 of May 11, 1959, as amended [23 L.P.R.A. § 601 et seq.]; to promote the search for alternatives for mass transportation financing; and to perform other germane and necessary tasks to implement the public policy on mass transportation, by request of the Secretary.

(u) Establish, when disposing of any real property it holds at present or acquires in the future, all those conditions and limitations, in terms of its use and exploitation, that it deems necessary and convenient to ensure compliance with the purposes of this Act, in order for the end use not to facilitate or to lead to the creation of undesirable or adverse conditions for the public interest which this Act seeks to protect. When the Authority sells or otherwise disposes of a property in an influence zone or in a special development district with the purpose of having the buyer develop the same, this shall be done, in the case of influence zones and Special Planning districts, pursuant to the procedures established by the Planning Board, and the Authority may recommend and the Planning Board shall impose, except when there is just cause which shall be consigned in writing, those restrictions it believes necessary to carry out the purposes of this Act. In all cases, the Authority shall include a clause in which the extent of participation is provided, as well as the profits that the Authority shall have in and from the revenues, securities, sales volume or income of any kind which in

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

respect to the land, the development and any other aspect or activity of the project shall generate for the buyer.

(v) Present illustrative maps of the influence zones and propose specific projects to be developed therein; to recommend plans to establish and define the special development districts, plan specific projects for such districts and to that effect suggest amendments and supplements for plans, maps, blueprints, rules and regulations relative to the planning, designs, design control, development and development control of such districts.

(w) The Puerto Rico Highways and Transportation Authority is authorized to establish along the expressways, avenues, streets or main public thoroughfares, informative electronic signboards or billboards to provide information on the disappearance of minors in case an Amber Alert is activated (America's Missing: Broadcast Emergency Response), such as the vehicle used and the direction in which it was traveling, among other things, or to issue information to send an alert or announce an emergency through the Emergency Broadcast System in the case of meteorological emergencies. The display of relevant information on the conditions of the highways is also allowed. The Puerto Rico Highways and Transportation Authority shall not be subject to the provisions of any other Commonwealth law that regulates the placement of informative electronic signboards or billboards when establishing or placing informative electronic signboards or billboards to provide information on the disappearance of minors in case an Amber Alert is activated (America's Missing: Broadcast Emergency Response), or to issue information to send an alert or announce an emergency through the Emergency Broadcast System in the case of meteorological emergencies. However, the use of said informative electronic signboards or billboards for any type of propaganda or announcements unrelated to the information issued about an Amber Alert or an alert or emergency through the Emergency Broadcast System in the case of meteorological emergencies or to relevant information about the conditions of the highways, is prohibited.

**Section 4-A. — Contracts for Construction, Operation and Maintenance.** (9 L.P.R.A. § 2004a)

(1) The Authority or the Department of Transportation and Public Works may contract with private entities and through the use of private funds, the final design, construction, operation and maintenance of new highways, bridges, avenues, expressways and ancillary transit facilities and of informative electronic signboards or billboards devoted to the diffusion of information about the disappearance of minors in case an Amber Alert is activated (America's Missing: Broadcast Emergency Response), or to issue information to send an alert or announce an emergency through the Emergency Broadcast System in the case of meteorological emergencies or relevant information on the conditions of the highways subject to the following conditions:

(a) The highways, bridges, avenues, expressways and ancillary transit facilities and the informative electronic signboards or billboards devoted to the diffusion of information in case an Amber Alert is activated or in case of an alert or emergency shall be public property.

(b) The preliminary design of the project may be entrusted to any legally authorized natural or juridical person chosen by the Secretary of Transportation and Public Works or

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

the Authority, except that it may not be the same private entity contracted for the construction, including the final design done by a legally authorized person, and the operation and maintenance of the highway, bridge, avenue or expressway and the ancillary transit facilities or of the informative electronic signboards or billboards devoted to the diffusion of information in case an Amber Alert is activated or in case of alert or emergency or with relevant information on the conditions of the highways.

(c) The easements needed to operate the highway, bridge, avenue or expressway and the ancillary transit facilities or to locate the informative electronic signboards or billboards for information in case an Amber Alert is activated or in case of alert or emergency or with relevant information on the conditions of the highways shall belong to the Commonwealth or to the Authority.

(d) The land and other properties or rights required for the construction of the highway, bridge, avenue or expressway and their transit facilities or to establish the informative electronic signboards or billboards for information in case an Amber Alert is activated or in case of alert or emergency or with relevant information on the conditions of the highways shall be acquired by the Commonwealth, and financed or not by the private entity contracted for the creation of their final design and their construction, operation and maintenance. The private entity contracted for such purposes shall be able to acquire, subject to the standards established for such purposes by the Authority, the land, properties or rights directly from their owners by purchase, in which case it shall transfer them immediately to the Commonwealth. If an acquisition by means of expropriation is required, the private entity under contract may be required to advance to the Commonwealth all the amounts needed to acquire the land, properties or rights in question. In cases of voluntary purchase as well as in cases of expropriation, the acquisition costs shall include those for relocating the affected persons pursuant to the applicable laws and the other expenses incidental to the acquisition of the right in question.

(e) The contract shall include, in addition to the final design and construction, the operation and maintenance of the highway, bridge, avenue or expressway and their ancillary transit facilities or of the informative electronic signboards or billboards for information in case an Amber Alert is activated or in case of alert or emergency or with relevant information on the conditions of the highways.

(f) The private entity to whom the contract is awarded shall give a bond that guarantees to the Commonwealth of Puerto Rico, faithful compliance with all obligations under the contract, the amount of which bond shall be established by the Authority or the Secretary of Transportation and Public Works, using as a criterion the investment contemplated for the project or the work or stage in question.

(g) The contract shall contain an indemnity clause by which the private entity commits itself to defend and to pay any claim filed under Section 404 of the Political Code of 1902 as amended, [3 L.P.R.A. § 422], or Sections 1802, 1803, 1807, and 1809 of the Puerto Rico Civil Code of 1930 as amended, [31 L.P.R.A. §§ 5141, 5142, 5146 and 5148], for the Commonwealth and the Authority. This obligation shall be secured or covered by a public liability insurance policy that shall include the Commonwealth and the Authority as coinsured. The sums or amounts to be secured by said policy shall be fixed by the Authority or the Secretary of Transportation and Public Works and their

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

decision shall be backed by the evaluation of a professional with expertise in the field of insurance concerning the risks involved in the design, construction, operation and maintenance phases of the public highway or the informative electronic signboards or billboards for information in case an Amber Alert is activated or in case of alert or emergency or with relevant information on the conditions of the highways object of the contract.

(h) The contract may be assigned or encumbered with the prior written consent of the Adjudications Board. The Board cannot deny its consent except for just cause. The assignment shall only be authorized if the assignee is a private entity that meets the requirements and conditions established in this Act. Said requirement shall not be demanded of a mere holder of an encumbrance.

(i) The term of the contract, in relation to the operation, administration and maintenance phases of the project, shall not exceed fifty (50) years.

(j) Once the term of the contract has expired, the operation, administration and maintenance of the project shall pass on to the government, with no cost to it.

(k) Once the construction phase of the project is concluded, the private entity shall be responsible for maintaining the highway, bridge, avenue or expressway and their ancillary transit facilities or the informative electronic signboards or billboards for information in case an Amber Alert is activated or in case of alert or emergency or with relevant information on the conditions of the highways, in adequate conditions for their use.

(2)  The phases of the contract pertaining to the construction, operation, administration and maintenance of public highways and their ancillary facilities, shall be considered to all legal purposes as an eligible activity covered by Supplement P of Act No. 91 of June 29, 1954.

(3)  The Authority is empowered to negotiate and award contracts to finance, to issue bonds and any other contracts and instruments necessary or convenient to exercise the powers and functions conferred on the Authority and on the Secretary under Sections 4-A, 4-B and 4-C hereof in order to expedite financing of any project authorized under Sections 4-A, 4-B and 4-C.

**Section  4-B. — Toll Tax.** (9 L.P.R.A. § 2004 b)

   The private entity contracted for the final design, construction, operation and maintenance of the public highway and its ancillary transit facilities shall have the faculty to charge the public the amount of the toll tax established for the use of the same by the contract negotiated by the Secretary or the Authority and ratified by the Adjudications Board established in this Act. The income derived from the toll tax shall be used for the following ends:

(a) To recover invested capital and expenses incurred with regard to the development, construction and financing of the public highway, and its transit facilities.

(b) Repayment or amortization of any debt incurred by the private entity in the construction and operation of the project.

(c) Payment of the costs of collecting the toll tax and the operation, administration and maintenance of the public highway and its ancillary transit facilities.

(d) Reimbursing the government for the costs of the services assigned to it in the contract or services requested by the private entity.

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

(e) A reasonable profit for the private entity which shall be determined according to the specific provisions of the contract.

## Section  4-C. — Requirements and conditions applicable to the private entity. (9 L.P.R.A. § 2004c)

The private entity that aspires to be contracted for the construction, operation and maintenance of the public highway and its ancillary transit facilities must meet the following requirements and conditions:
(a) Must be a corporation or a partnership authorized to do business in the Commonwealth of Puerto Rico.
(b) It shall have a corporate or social capital available that in no way shall be less than two (2) percent of the total foreseeable investment in the construction of the public highway and its ancillary transit facilities.
(c) It shall show the economic and financial viability of the project.
(d) It shall show it has the managerial, organizational and technical capacity to develop and manage the project.

## Section  4-D. — Representative of the Public Interest. (9 L.P.R.A. § 2004d)

The Secretary of Transportation and Public Works, or the official designated by him, shall be the representative of the public interest. In said capacity he shall have the following faculties and duties:
(a) To ensure that the private entity that has been contracted fulfills its contractual obligations.
(b) To ensure compliance with the financial plan contemplated in the contract.
(c) To inspect the construction projects and installations and services related with the project, as many times as it is deemed convenient and it is reasonable.
(d) To request from the corporation or partnership under contract all data and reports it considers necessary and may reasonably be required in relation to the development of the project, and shall also have the power to examine the books and accounts related to said project.
(e) To submit an annual report to the Governor of Puerto Rico and to the Legislature in relation to the development of the project.

## Section  4-E. — Operation and administration by private entities of existing public highways. (9 L.P.R.A. § 200)

Whenever the Highways Authority and/or the Secretary of Transportation and Public Works determine that the public interest requires that an existing highway or a stretch thereof, bridge, avenue or expressway, with its ancillary transit facilities, be converted to a toll road operated and maintained by a private entity, they shall propose the project to the Legislature; said project shall be subject to approval by the Legislature by means of a joint resolution. Once the project has been approved by the Legislature, it shall be subject to the provisions of this Act.

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

In case an existing road is converted into a toll road, there shall be an alternate road for the citizenry that is not subject to the payment of tolls.

## Section 4-F. — Adjudications Board. (9 L.P.R.A. § 200)

An Adjudications Board is hereby created to award contracts for the final design, construction, operation and maintenance of highways, constituted by the President of the Government Development Bank for Puerto Rico, who shall be its chairperson, the Secretary of Consumer Affairs and the Secretary of the Treasury.

This Board shall have the following functions:

(a) To receive the recommendations of the Secretary of Transportation and Public Works and to award the negotiated competition bids referred to in Section 4-A and 4-B of this Act.

(b) To ratify contracts referred to in Section 4-A and 4-B of this Act., once they have been negotiated by the Secretary and/or the Authority, which shall contain the term of the contract, the structure of the toll tax to be paid by the users as well as the formula for its adjustment during the term of each contract.

(c) To ensure adequate compliance with the regulations and procedures established to negotiate and award contracts and bids.

(d) To approve the regulations referred to in subsection (b) of Section 4-G of this Act..

(e) To submit a report to the Governor and the Legislature on bids and contracts awarded and ratified by it, and a certificate that establishes that all the procedures and requirements for such awards and contracts provided by law and regulations have been complied with.

## Section 4-G. — Negotiated Competitive Bids. (9 L.P.R.A. § 2004g)

The contracts referred to in Sections 4-A and 4-E, of this Act shall be awarded by means of negotiated competitive bids.

The Secretary of Transportation and Public Works or the Executive Director of the Authority shall be responsible for negotiating the terms and conditions of the contracts referred to in Sections 4-A and 4-E, of this Act of this title, subject to the following rules:

(a) The Secretary of Transportation and Public Works and the Executive Director shall establish administratively the procedures and guidelines that shall rule the process of negotiated competitive bids, with the purpose of obtaining the largest number of bidders; to promote competition among them and maintain the confidentiality of the negotiation process prior to the award.

(b) The regulations for negotiated competitive bids shall include the qualifying criteria for bidders and for awarding contracts, among which the following shall be included:

(1) The total estimated cost of the proposed project.

(2) An estimate of the proposed toll tax.

(3) The professional capacity and experience of the bidder to develop, construct, operate and maintain highways and ancillary transit facilities.

(4) The quality and adaptability of the technology, proposed construction materials, as well as the services to be offered by the bidder.

(5) The economic capacity of the bidder, his guarantors and underwriters to be responsible for the obligations contracted under the contract to be awarded.

(6) The financing of the project proposed by the bidder.

(7) The quality of the proposal submitted by the bidder with regard to design, engineering, estimated construction time, required capital investment, financing plan, timeframe for recovery of capital, internal rate of return employed by the bidder, the projected net income flow and the estimated toll tax required to recover the capital and cover the cost of the project during the term of the contract.

(c) The regulations for the negotiable open bids shall include in its procedures, the following processes among others:

(1) Publish a notice calling for letters of qualification in a newspaper of general circulation.

(2) Communicate the information to be submitted with the letters of qualification and general information about the projects to be done, to the interested parties.

(3) Evaluate the letters of qualification and choose the applicants with the highest number of points to ask for their proposals.

(4) Ask the applicants for proposals on how to carry out the project.

(5) Evaluate the proposals and remit them to the Adjudications Board.

(6) Award through the Adjudications Board, the proposal that best satisfies the requirements of the project and establish the order of preference of the next proposals.

(7) Establish the terms to initiate negotiations, by the Secretary of Transportation and Public Works and/or the Executive Director of the Authority, with the person obtaining the highest number of points in the award of the Adjudications Board, as well as the procedures to continue negotiations with the other applicants in a strict order of award, in case an agreement is not reached with the person who was awarded the first place. The procedure shall continue until a contract can be agreed upon, or the Secretary determines that it is not possible to obtain one under the reigning conditions, in which case the project may be discarded, a new process of negotiable open bids may be initiated, or the Commonwealth of the Authority may carry out the project directly.

The Board shall award the bid to the bidder who best satisfies the criteria established in this section and in the regulations approved thereunder.

**Section  5. — Coordination.** (9 L.P.R.A. § 2005)

(a) The Planning Board or the municipalities declared autonomous pursuant to Act No. 81 of August 30, 1991, as amended [21 L.P.R.A. §§ 4001 et seq.], with jurisdiction over the area in question, shall establish in coordination with the Authority Special Development Districts in areas surrounding the train stations. Said districts shall comprise a geographical area not lesser than that of the influence zone surrounding each station and may include one or more land lots or appurtenances, or only part thereof, whether private or public property; Provided, That before establishing a special development district, a public hearing shall be held pursuant to Section 27 of Act No. 75 of June 24, 1975, as amended [23 L.P.R.A. § 62z], or Act No. 81 of August 30, 1991, as amended. [3 L.P.R.A. §§ 2101 et seq.]. The Authority may take the initiative to request the designation of one or more special development districts, in which case the Planning Board or the autonomous municipality in question shall initiate the process for the public hearing within a term not greater than thirty (30) days counted from the date the Authority completes the corresponding request and said form has

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

been duly filed. The designation of these districts shall be settled pursuant to the provisions of Act No. 170 of August 12, 1988, as amended [3 L.P.R.A. §§ 2101 et seq.]. An equal procedure shall be observed for the elimination, extension, reduction, or any modification of the area of these districts. Once the special development district has been designated, its plan shall overrule any other plan previously approved; Provided, That in the event any person or entity has acquired pursuant to the law any rights to develop which are incompatible with the new plans, the Authority may, if convenient to its purposes, acquire the same by any means available in law, except for the exercise of eminent domain.

(b)  The Planning Board or the autonomous municipality in question, before the approval of any public or private construction project to be carried out within the influence zone or a special development district, shall request the endorsement of said project from the Authority. The Authority shall respond to said request within thirty (30) days or before, counted from the date of notice to the Authority.

## Section 6. — Agreements. (9 L.P.R.A. § 2006)

The Secretary of Transportation and Public Works is hereby authorized to enter into agreements with the Authority for the study, design, construction, repair, maintenance, acquisition of properties and easements, and any other matter necessary to carry out the purposes of this Act. The Authority may also enter into agreements under which the Secretary of Transportation and Public Works agrees to pay, totally or partially, the cost of repairs, maintenance, and operation of any traffic facilities financed under the provisions of this Act with funds of the Commonwealth covered into the public treasury.

The Authority shall be bound to provide to the Secretary of Transportation and Public Works the necessary funds for him to perform the obligations incurred by him under the provisions of Joint Resolution No. 94, approved June 26, 1964.

## Section 7. — Officers and Employees. (9 L.P.R.A. § 2007)

(a)      Appointments, removals, promotions, transfers, discontinuances, reinstatements, suspensions, leaves of absence and changes in grade, compensation or title of the officers and employees of the Authority shall be made and permitted as provided in rules and regulations to be prescribed by the Authority in consultation with the Director of the Personnel Office, with a view to establishing a general plan similar, insofar as the Authority shall deem it consistent with the best interests of the Authority, of its employees and of its service to the public, to that which may be in effect for employees of the Commonwealth. The officers and employees of the Authority shall be entitled to reimbursement for, or per diem payment in lieu of, such necessary travel expenses as shall be authorized or approved pursuant to rules and regulations of the Authority. The officers and employees of any board, commission, agency, instrumentality or public corporation, or department of the Commonwealth of Puerto Rico that may be appointed by the Authority who, prior to such appointment, were beneficiaries of any retirement system or savings and loan fund plan, shall continue to have, after such appointment, the rights, privileges, obligations, and status, with respect thereto that are prescribed by law for officers and employees holding similar positions in the Commonwealth Government.

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

(b)  No person shall hold office as a member, officer, employee or agent of the Authority who has a direct or indirect financial interest in any privately owned enterprise engaged in business transactions with the Authority, or any business whose activities are related with the acquisition, construction, design, operation or maintenance of traffic facilities. Where such incompatibility affects a member of the Authority, his office shall become vacant and the vacancy shall be filled for the time that said incompatibility exists, by the appointment by the Governor of any other head of a department or agency of the Commonwealth, or by another mayor, as the case may be.

## Section  8. — Funds and accounts of Authority. (9 L.P.R.A. § 2008)

   All moneys of the Authority shall be deposited in qualified depositaries for funds of the Commonwealth of Puerto Rico, but they shall be kept in a separate account or accounts in the name of the Authority. The disbursements shall be made by it pursuant to regulations and budgets approved by the Authority.
   The Authority, in consultation with the Secretary of the Treasury, shall establish the accounting system required for the proper statistical control and record of all expenses and income belonging to or managed or controlled by the Authority. The accounts of the Authority shall be kept in such manner as to segregate appropriately, insofar as advisable, the accounts in respect of the different classes of operations, projects, undertakings, and activities of the Authority.

## Section  9. — Acquisition of Property by Commonwealth for the Authority. (9 L.P.R.A. § 2009)

   Upon application of the Authority the Governor of Puerto Rico or the Secretary of Transportation and Public Works shall have power to acquire, by purchase or expropriation, or by any other lawful means, on behalf and in the name of the Commonwealth of Puerto Rico, and for the use and benefit of the Authority, in the manner provided by this Act and the laws of Puerto Rico on eminent domain, title to any property or interest therein which the Authority shall deem necessary or convenient for its purposes, including its future requirements. The Authority may make available to said officers in advance such funds as may be needed for the payment for said property, and upon acquisition thereof, may reimburse the Commonwealth Government for any amount paid that shall not have been previously advanced. Upon such reimbursement to the Commonwealth Government (or, if the total cost or price has been previously advanced by the Authority, within such reasonable period as shall be determined by the Governor) the title to property so acquired shall pass to the Authority. When the property has been acquired by condemnation, title thereto shall be conveyed to the Authority by order of the pertinent court through statement to the effect that the Authority has advanced or reimbursed in full the cost or price of such property. The Secretary of Transportation and Public Works may, with the approval of the Governor, make such arrangements as he may deem appropriate for the operation and control of said property by the Authority in behalf of the Commonwealth Government during the period intervening before said title has passed to the Authority. The power hereby conferred shall not limit or restrict in any manner or to any extent the power of the Authority itself to acquire property.

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

The title to any property of the Commonwealth of Puerto Rico heretofore or hereafter acquired, and which shall be considered necessary or convenient for the purposes of the Authority, may be transferred to the Authority by the official in charge of said property or having the custody thereof, upon such terms and conditions as shall be determined by the Governor or the officer or agency he may designate.

## Section 10. — Transfers of Funds and Property. (9 L.P.R.A. § 2010)

Notwithstanding any legal provision to the contrary, all municipalities and political subdivisions of Puerto Rico are hereby empowered to cede or transfer any property or interest thereon (including assets already dedicated to public use) to the Authority, upon its request and under reasonable terms and conditions, that the Authority deems necessary or convenient to carry out its own purposes. The Authority may transfer the necessary funds to the agencies, departments, instrumentalities, dependencies or political subdivisions, including the municipalities, of the Commonwealth of Puerto Rico, so that these bodies may perform the functions of construction, operation and maintenance of traffic or transportation facilities that are or may be under the jurisdiction of the Authority, as well as for acquisition of the necessary easements for these purposes, when in its judgment the Authority deems it more convenient to better comply with the purposes of this Act.

## Section 11. — Construction, Operation and Purchase Contracts. (9 L.P.R.A. § 2011)

All work or service contracts, except for personal services, and all purchases made by the Authority, including the awarding of contracts for the construction and/or operation of traffic or transportation facilities, shall be made through bidding after a call for bids has been posted sufficiently in advance of opening the bids to secure appropriate notice and opportunity for competition. Provided, That when the estimated sum for the purchase, work or contract does not exceed twenty-five thousand (25,000) dollars, the same may be carried out without bidding. In addition, bidding shall not be required when:

(1) The immediate delivery of supplies, goods and equipment, rendering of services, or performance of works is required due to an emergency;

(2) spare parts, accessories, equipment or supplementary services for previously delivered or contracted goods or services are needed;

(3) professional or expert work or services are required and the Authority deems that, in the interest of good management, such services and works should be contracted without mediation of such announcements, or

(4) prices are not competitive because there is a single supply source or because prices are regulated by law; in such cases, the purchase of supplies, material and equipment, or the procurement of such services, may be made in open market in the current business practice.

When considering bids and making awards, the Authority shall give due consideration to such factors, besides the price, that in its judgement will allow the most beneficial selection for the Authority, such as: whether the bidder has met the specifications, rules and regulations approved by the Authority; the ability of the bidder to perform the construction or development of the nature involved in the contract under consideration; the relative quality

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

and adaptability of the supplies, material, equipment or service; the financial accountability and capability of the bidder and his/her expertise, commercial reputation and ability to furnish repair, maintenance or development services; the time of delivery or performance offered; and the capacity to operate, manage, or exploit transportation systems or the matter at hand in the bid, in the cases pertinent. The Authority may decree regulations for the submission and award of bids. The Authority shall be exempted from complying with the requirement of public bidding for the adjudication of contracts awarded for the development of properties in an influence zone or a special development district when it deems it is necessary and convenient to meet the specific purposes of this Act and when so authorized by the Secretary in each specific case, through a resolution to that effect. Said resolution shall state the circumstances justifying that the Authority be exempted from the requirement of bidding. A copy of said resolution shall be filed with both the Secretary of the Senate and the Clerk of the House within five (5) work days following the approval of said resolution by the Secretary.

**Section 12. — Bonds.** (9 L.P.R.A. § 2012)

(a) By authority of the Commonwealth of Puerto Rico, granted hereby, the Authority may from time to time issue and sell its own bonds and have them outstanding for any of its corporate purposes.

(b) The bonds may be authorized by resolution or resolutions of the Authority and may be of such series, may bear such date or dates, may mature at such time or times not exceeding fifty (50) years from their respective dates, may bear interest at such rate or rates not exceeding the maximum rate then permitted by law, may be in such denomination or denominations, may be in such form, either coupon or registered bonds, may carry such registration or conversion privileges, may be executed in such manner, may be payable in such medium of payment and at such place or places, may be subject to such terms of redemption, with or without premium, may be declared or become due at such time before the maturity date thereof, may provide for the replacement of mutilated, destroyed, stolen or lost bonds, may be authenticated in such manner and upon compliance with such conditions, and may contain such other terms and covenants as such resolution or resolutions may provide. The bonds may be sold at public or private sale for such price or prices as the Authority shall determine; Provided, That refunding bonds may be exchanged for outstanding bonds of the Authority on such terms as the Authority may deem to be in the best interests of the Authority. Notwithstanding the form and tenor thereof, and in the absence of an express recital on the face thereof that the bond is nonnegotiable, all bonds of the Authority shall at all times be, and shall be understood to be, negotiable instruments for all purposes.

(c) The bonds of the Authority bearing the signature of the officers of the Authority in office on the date of the signing thereof shall be valid and binding obligations, notwithstanding that before the delivery thereof and payment therefor any or all of the officers whose signatures or facsimile signatures appear thereon shall have ceased to be such officers of the Authority. The validity of the authorization and issuance of the bonds shall not be dependent on or affected in any way by any proceedings relating to the construction, acquisition, extension, or improvement of the undertaking for which the bonds are issued, or by any contracts made in

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

connection with such undertaking. Any resolution authorizing the bonds may provide that any such bond may contain a recital that it is issued pursuant to the provisions of this Act, and any bond containing such recital under authority of any such resolution shall be conclusively deemed to be valid and to have been issued in conformity with the provisions of this Act.

(d)   Pending the execution and delivery of definitive bonds, temporary or interim bonds, receipts or certificates may be issued in such form and with such provisions, as may be provided in such resolution or resolutions.

(e)   Any resolution or resolutions authorizing any bonds may contain provisions, which shall be a part of the contract with the holders of the bonds:

(1) As to the disposition of the entire gross or net revenues and present or future income or other funds of the Authority, including the pledging of all or any part thereof to secure payment of the principal of and interest on the bonds to the extent permitted by the provisions of subsection (l) of § 2004 of this title;

(2) as to the tolls, fees and other charges to be imposed, and the application, use, and disposition of the amounts that may be raised by the collection thereof and from other receipts of the Authority;

(3) as to the setting aside of reserves for amortization funds, and the regulation and disposition thereof;

(4) as to limitations on the right of the Authority to restrict and regulate the use of any traffic facility or part thereof;

(5) as to limitations on the purposes to which the proceeds of the sale of any issue of bonds then or thereafter to be issued may be applied;

(6) as to limitations on the issuance of additional bonds;

(7) as to the procedure by which the terms of any resolution authorizing bonds or any trust agreement or other contract with or for the benefit of the bondholders, may be amended or abrogated, and the amount of the bonds the holders of which must consent thereto, and the manner in which such consent may be given;

(8) as to the amount and kind of insurance to be maintained on the traffic facilities of the Authority, and the use and disposition of insurance moneys;

(9) covenanting against pledging all or any part of the revenues, other income and other funds of the Authority to which its right then exists or the right to which may therefor come into existence;

(10) as to events of default and terms and conditions upon which any or all of the bonds shall become or may be declared due before maturity and as to the terms and conditions upon which such declaration and its consequences may be waived;

(11) as to the rights, liabilities, powers and duties arising upon the breach by the Authority of any of its covenants, conditions, or obligations;

(12) as to the vesting in a trustee or trustees the right to enforce any covenants made to secure, to pay, or in relation to the bonds; as to the powers and duties of each trustee or trustees, and the limitation of the liabilities thereof; and as to the terms and conditions upon which the holders of the bonds or any proportion or percentage of them may enforce any covenants made under this Act or duties imposed hereby;

(13) as to the manner of collecting the tolls, fees and other charges for the use of the traffic facilities or the services rendered by the Authority; and

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

(14) as to any other acts and things not inconsistent with the provisions of this Act that may be necessary or convenient for the security of the bonds, or as may tend to make the bonds more marketable.

(f)  Neither the members of the Authority nor any person executing the bonds shall be liable personally on the bonds.

(g)  The Authority is authorized to purchase any outstanding bonds issued or assumed by it with any funds available therefor, at a price not more than the principal amount or the current redemption price thereof and the accrued interest.

(h)  The Authority is hereby authorized to issue bonds from time to time for the principal sums that the Authority deems are needed to provide sufficient funds for the full or partial payment of the cost of any project for the construction, operation and maintenance of new highways, bridges, avenues, expressways and its ancillary transit facilities authorized by Sections 4-A, 4-B and 4-C herein. The bonds issued by the Authority under this provision may be made payable from all or part of the revenue derived by the Authority, or by the Commonwealth of Puerto Rico through the Department of Transportation and Public Works under the clauses of a financing contract relating to the project. The bonds issued by the Authority under this provision shall not encumber its credit margin nor constitute a debt of the Commonwealth of Puerto Rico, nor of any of its political subdivisions, which shall not be liable therefor. The bonds or other obligations issued for the construction of highways and accessory roads authorized by Sections 4-A, 4-B and 4-C hereof and which shall be operated by private entities, shall be payable solely from the funds generated by said project, which funds shall have been pignorated to pay for such bonds under the financing contract and the trust deed by virtue of which the bond issue is authorized. The bonds and other obligations issued to finance projects authorized by Sections 4-A, 4-B and 4-C of this title may be payable biannually, annually or under any terms agreed upon in the trust deed authorizing the bond issue for this purpose. Part of the bond issue shall be offered on the local market in denominations that do not exceed one thousand (1,000) dollars.

## Section  13. — Remedies of Bondholders. (9 L.P.R.A. § 2013)

(a)  Subject to any contractual limitations binding upon the holders of any issue of bonds, or trustees therefor, including but not limited to the restriction of the exercise of any remedy to a specified proportion or percentage of such holders, any holder of bonds, or trustee therefor, shall have the right and power, for the equal benefit and protection of all holders of bonds similarly situated:

(1) By mandamus or other suit, action, or proceeding at law or in equity to enforce his rights against the Authority, its officers, agents, and employees to perform and carry out its and their duties and obligations under this Act and its and their covenants and agreements with bondholders;

(2) by action or suit in equity to require the Authority to account as if it were the trustee of an express trust;

(3) by action or suit in equity to enjoin any acts or things which may be unlawful or in violation of the rights of the bondholders, and

(4) to bring suit upon the bonds.

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

(b)  No remedy conferred by this Act upon any holder of the bonds, or any trustee therefor, is intended to be exclusive of any other remedy, but each such remedy is cumulative and in addition to every other remedy, and may be exercised without exhausting and without regard to any other remedy conferred by this Act or by any other law. No waiver of any default or breach of duty or contract, whether by any holder of the bonds, or any trustee therefor, shall extend to or shall affect any subsequent default or breach of duty or contract or shall impair any rights or remedies thereon. No delay or omission of any bondholder or any trustee therefor to exercise any right or power accruing upon default shall impair any such right or power or shall be construed to be a waiver of any such default or acquiescence therein. Every substantive right and every remedy, conferred upon the holders of the bonds, may be enforced or exercised from time to time and as often as may be deemed expedient. In case any suit, action, or proceeding to enforce any right or exercise any remedy shall be brought or taken and then discontinued or abandoned, or shall be determined adversely to the holder of the bonds, or any trustee therefor then and in every such case the Authority and such holder, or such trustee, shall be restored to their former positions and rights and remedies as if no such suit, action, or proceeding had been brought or taken.

## Section  14. — Reports. (9 L.P.R.A. § 2014)

The Authority shall submit to the Legislature, annually, a master development plan, containing the program to be executed during the following fiscal year, at the beginning of each regular session. The Authority shall also submit (1) a financial statement and complete report of the business of the Authority for the preceding economic year, and (2) a complete report on the status and progress of all its traffic or transportation facilities, and activities since creation of the Authority or the date of its last such reports to the Legislature and the Governor of Puerto Rico, as soon as possible after the close of the Commonwealth Government's fiscal year, but prior to end of the calendar year. The Authority shall also submit official reports of its business and activities under this Act, to the Legislature and the Governor of Puerto Rico, at such other times as it may be required.

## Section  15. — Commonwealth and Political Subdivisions not Liable on Bonds. (9 L.P.R.A. § 201)

Except as to any bonds of the Authority the payment of which is guaranteed by the Commonwealth of Puerto Rico, the bonds issued by the Authority shall not be a debt of the Commonwealth of Puerto Rico or any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such political subdivision shall be liable thereon, nor shall such bonds or the interest thereon be payable out of any funds other than those pledged for the payment of such bonds and interest thereon pursuant to the provisions of subsection (l) of § 2004 of this title.

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

**Section  16. — Bonds legal investments and security for deposits.** (9 L.P.R.A. § 2016)

The bonds of the Authority shall be lawful investment, and may be accepted as security, for all fiduciary, trust, and public funds, the investment or deposit of which shall be under the authority or control of the Government of Puerto Rico or any officer or officers thereof.

**Section  17. — Tax Exemption.** (9 L.P.R.A. § 2017)

(a)  It is hereby found and declared that the purposes for which the Authority is created and shall exercise its powers are: the promotion of the general welfare, and the increase of commerce and prosperity, and all these are public purposes for the benefit of the people of Puerto Rico in every sense, and therefore, the Authority shall not be required to pay taxes or excises on any of the properties acquired by it or under its jurisdiction, authority, domain, possession or inspection, or on its activities in the operation and maintenance of any traffic or transportation facility, or on revenues derived from any of its undertaking and activities.
(b)  The Authority shall also be exempt from the payment of all kinds of fees, taxes, or imposts heretofore or hereafter required by law for the prosecution of judicial proceedings, the issuing of certifications in all offices and dependencies of the Commonwealth of Puerto Rico, and the execution of public documents and their registration in any public registry of Puerto Rico.
(c)  In order to facilitate the procurement of funds by the Authority to enable it to carry out its corporate purposes, the bonds issued by the Authority and the income therefrom shall be and remain at all times exempt from the payment of income tax.

**Section  18. — Declaration of Public Utility.** (9 L.P.R.A. § 2018)

For the purposes of subsection (a) of Section 4 and Section 9 of this Act, all traffic or transportation facilities and all other property that the Authority deems necessary and convenient to use in carrying out the purposes of this Act, are hereby declared of public utility.

**Section  19. — Agreement of the Commonwealth Government.** (9 L.P.R.A. § 2019)

The Commonwealth Government does hereby pledge to, and agree with, any person, firm or corporation, or any federal, commonwealth or state agency, subscribing to or acquiring bonds of the Authority to finance in whole or in part any traffic facilities or any part thereof, that it will not limit or restrict the rights or powers hereby vested in the Authority until all such bonds at any time issued, together with the interest thereon, are fully met and discharged.

**Section  20. — Injunctions.** (9 L.P.R.A. § 2020)

No injunctions shall be granted to prevent the application of this Act or any part thereof.

"Puerto Rico Highway and Transportation Authority Act" [Act No. 74 of June 23, 1965, as amended]

**Section  21. — Inconsistent Provisions Superseded.** (9 L.P.R.A. § 2001 note)

Insofar as the provisions of this act are inconsistent with the provisions of any other act of the Legislature of Puerto Rico, the provisions of this act shall be controlling, and no law heretofore or hereafter passed governing the administration of the Commonwealth Government or any parts, offices, bureaus, departments, commissions, dependencies, municipalities, branches, agents, officers, or employees thereof shall be construed to apply to the Authority unless so specifically provided.

**Section  22. — Constitutional Construction.** (9 L.P.R.A. § 2001 note)

The provisions of this act are severable, and if any of its provisions shall be held unconstitutional by any court of competent jurisdiction, the decision of such court shall not affect or impair any of the remaining provisions.

**Section  23. —** This act shall take effect July 1, 1965.

---

**Note.  This compilation was prepared by Puerto Rico OMB staff who have striven to ensure it is complete and accurate. However, this is not an official compilation and may not be completely free of error. It contains all amendments  incorporated  for reading purposes only. For accuracy and exactitude  please refer to the act original text. Compiled by the Office of  Management and Budget Library.**