# **EXHIBIT C**

**CERTIFICATE OF SECRETARY OF THE AUTHORITY**
**AS TO RESOLUTION 68-18, AS AMENDED**

I, Sonia Ramirez, Secretary of Puerto Rico Highways and Transportation Authority, DO HEREBY CERTIFY, that attached hereto is a true and correct copy of Resolution 68-18 which was adopted by the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico on June 13, 1968, as amended, which resolution, as so amended, has not been annulled, rescinded or revoked and the same is still in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Authority, this 7th day of May, 2003.

Sonia Ramirez-Sumoguet
Secretary
Puerto Rico Highways
and Transportation Authority

[SEAL]

# PUERTO RICO HIGHWAY AUTHORITY

**Resolution No. 68-18**

**Adopted June 13, 1968**

**Authorizing and Securing**

## HIGHWAY REVENUE BONDS

NY1 5342478v2

## TABLE OF CONTENTS

Page

### ARTICLE I.
### Definitions

Section 101. Meanings of Words and Terms...........................**Error! Bookmark not defined.**
Section 102. Miscellaneous.....................................................................................................13

### ARTICLE II.
### Authorization, Form, Issuance, Delivery and Registration of Bonds

Section 201. Authorization of Bonds ...................................................................................13
Section 202. Certain Details of Bonds.................................................................................13
Section 203. Execution of Bonds and Coupons...................................................................15
Section 204. Registration of Bonds.....................................................................................20
Section 205. Ownership of Registered Bonds; Ownership of Bearer Bonds and
Coupons ........................................................................................................28
Section 206. Reconversion of Registered Bonds .................................................................28
Section 207. Initial Issue of $40,000,000 Highway Revenue Bonds (Series A) .....................29
Section 208. Issuance of Bonds to Complete Any Traffic Facilities and for Additional
Traffic Facilities............................................................................................30
Section 209. Issuance of Refunding Bonds ..........................................................................33
Section 210. Deposit of Accrued Interest .............................................................................36
Section 211. Temporary Bonds.............................................................................................36
Section 212. Mutilated, Destroyed, Lost or Stolen Bonds....................................................36

### ARTICLE III.
### Redemption of Bonds

Section 301. Redemption of Bonds; Selection of Fiscal Agent for Partial Redemption..........39
Section 302. Redemption Notice...........................................................................................39
Section 303. Effect of Calling for Redemption.....................................................................40
Section 304. Matured Coupons.............................................................................................40
Section 305. Cancellation of Bonds and Coupons Redeemed ...............................................40
Section 306. Bonds Called for Redemption Not Deemed Outstanding ..................................41

### ARTICLE IV.
### Revenues and Funds

Section 401. Sinking Fund; Bond Service Account, Redemption Account and Reserve
Account.........................................................................................................41
Section 402. Application of Moneys in Bond Service Account .............................................43
Section 403. Application of Moneys in Redemption Account ...............................................44
Section 404. Application of Moneys in Reserve Account......................................................46

Section 405.   Certificate to be Filed for Withdrawal from Construction Fund ......................... 46
Section 406.   Pledge of Moneys in Bond Service Account, Redemption Account and
               Reserve Account ................................................................................................. 46
Section 407.   Moneys Set Aside for Principal and Interest Held in Trust; Moneys
               Unclaimed for Six Years After Maturity of Bonds and Coupons ....................... 47
Section 408.   Cancellation of Bonds and Coupons Upon Payment ......................................... 47
Section 409.   Balance in Funds to Authority When Bonds Paid ............................................. 47

## ARTICLE V.
### Depositaries of Moneys, Security for Deposits and Investment of Funds

Section 501.   Deposits Constitute Trust Funds; Security for Deposits ................................... 47
Section 502.   Investment of Moneys; Investments Deemed to be Part of Fund or
               Account for Which Purchased; Interest and Profit on Investments to be
               Credited to Reserve Account and any Loss Charged to Reserve Account .......... 48

## ARTICLE VI.
### Particular Covenants

Section 601.   Payment of Principal, Interest and Premium ..................................................... 50
Section 602.   Pledge of Revenues ........................................................................................... 50
Section 603.   Master Plan for Construction of Traffic Facilities and Priorities
               Construction Program for Five Year Period; Five Year Priorities
               Construction Program to be Updated Each Year ................................................ 50
Section 604.   Costs of Maintaining Traffic Facilities to be Paid from Construction Fund
               if not Paid from General Funds of Commonwealth ........................................... 50
Section 605.   Annual Report of Traffic Engineers; Filing of Copies of Report; Repairs
               Recommended by Report to be Made ................................................................ 51
Section 606.   Annual Statement Concerning Traffic Facilities Program to be Submitted
               to Legislature, Planning Board and Others by Authority ................................... 51
Section 607.   Authority to Keep Accurate Records and Accounts; Annual Audit ........... ........ 52
Section 608.   Employment of Traffic Engineers ..................................................................... 52

## ARTICLE VII.
### Concerning the Fiscal Agent

Section 701.   Appointment of Fiscal Agent; Acceptance of Duties ......................................... 53
Section 702.   Limitations on Responsibilities of Fiscal Agent ............................................... 53
Section 703.   Fiscal Agent Not Liable for Failure of Authority to Act .................................... 53
Section 704.   Quarterly Statements from Fiscal Agent ........................................................... 54
Section 705.   Fiscal Agent Protected in Relying on Certain Documents ................................. 54
Section 706.   Resignation of Fiscal Agent .............................................................................. 55
Section 707.   Removal of Fiscal Agent ................................................................................... 55
Section 708.   Appointment of Successor Fiscal Agent ........................................................... 55
Section 709.   Vesting of Rights in Successor Fiscal Agent ..................................................... 56
Section 710.   Compensation and Indemnification of Fiscal Agent and Paying Agents ............ 56

## ARTICLE VIII.
### Supplemental Resolutions

| | | |
|---|---|---|
| Section 801. | Restrictions on Adoption of Supplemental Resolutions | 57 |
| Section 802. | Consent of Bondholders | 57 |
| Section 803. | Supplemental Resolution Thereafter Part of Resolution | 59 |
| Section 804. | Modification of Rights or Obligations of Fiscal Agent or any Paying Agent Not to be Made Without Consent; Fiscal Agent Not Responsible for Propriety of Supplemental Resolutions | 59 |

## ARTICLE IX.
### Defeasance

| | | |
|---|---|---|
| Section 901. | Bondholders' Rights Cease Upon Provision for Payment of Bonds | 59 |

## ARTICLE X.
### Miscellaneous Provisions

| | | |
|---|---|---|
| Section 1001. | Authority May Finance Traffic Facilities by Obligations Not Secured by Resolution | 61 |
| Section 1002. | Successorship of Authority | 61 |
| Section 1003. | Successorship of Paying Agent | 61 |
| Section 1004. | Manner of Giving Notice | 61 |
| Section 1005. | Authority, Fiscal Agents and Bondholders Alone Have Rights Under Resolution | 62 |
| Section 1006. | Effect of Partial Invalidity | 62 |
| Section 1007. | Effect of Covenants | 62 |
| Section 1008. | Duties of Officers and Agents of Authority | 62 |
| Section 1009. | Repeal of Inconsistent Resolutions | 62 |
| Section 1010. | Resolution Effective Upon Passage | 62 |

**Resolution No. 68-18**

## A RESOLUTION AUTHORIZING THE ISSUANCE OF PUERTO RICO HIGHWAY AUTHORITY HIGHWAY REVENUE BONDS

WHEREAS, Act No. 74, approved June 23, 1965 (hereinafter sometimes called the "Enabling Act") created the Puerto Rico Highway Authority (hereinafter sometimes called the "Authority") as a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico for the purpose of continuing the government program of providing highways to facilitate the movement of vehicular traffic, relieve hazards and handicaps on the congested roads and highways of the Commonwealth and to meet the increasing demand for additional traffic facilities resulting from the continuing economic development of the Commonwealth; and

WHEREAS, by virtue of the Enabling Act, the Authority has, among others, the power

(i)     to have perpetual existence as a corporation,

(ii)    to have complete control and supervision of any traffic facilities owned, operated, constructed or acquired by it under the provisions of the Enabling Act, including without limitation the determination of the site, location, and the establishment, limit and control of points of ingress to and egress from such facilities, and materials of construction and the construction, maintenance, repair and operation thereof,

(iii)   to have complete control and supervision over the character of and necessity for all of its expenditures and the manner in which they shall be incurred, allowed and paid without regard to the provision of any laws governing the expenditure of public funds,

(iv)    to sue and be sued, complain and, defend in all courts of justice and administrative bodies,

(v)     to make contracts and to execute all instruments necessary or incidental in the exercise of any of its powers,

(vi)    to determine, fix, impose, alter and collect tolls or ferriage, rentals, assessments, and other reasonable charges for the use of the traffic facilities owned, operated, constructed, acquired or financed by the Authority or for the services rendered thereby. In fixing or altering these charges the Authority shall take into amount such factors as will promote the use of the traffic facilities owned or operated by it in the broadest and most varied manner economically possible. To fix or alter such charges the Authority shall hold a public hearing of an informative and quasi-legislative character, before the Authority Board, or before any official or officials that the Authority may designate for the purpose. Such hearings shall be announced reasonably in advance, stating the place and time of the hearing and the proposed charges or alteration,

(vii)    to borrow money for any of its corporate purposes, and to issue bonds, notes or other obligations of the Authority in evidence of such indebtedness and to secure payment of bonds, notes and other obligations and interest thereon by pledge of, or other lien on, all or any of its properties, revenues or other income, and subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth, pledge to the payment of said bonds and interest thereon, the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth,

(viii)   to issue bonds for the purpose of funding, refunding, purchasing, paying or discharging any of its outstanding bonds or other obligations, and

(ix)    to do all acts or things necessary or desirable to the carrying out of the powers granted to the Authority by the Enabling Act or by any other act of the Legislature of Puerto Rico; provided, however, that neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal of or interest on any bonds issued by the Authority and such principal and interest shall be payable only from the funds of the Authority pledged for such payment pursuant to clause (vii) of this preamble; and

WHEREAS, by virtue of the Enabling Act, the Secretary of Public Works is authorized to enter into agreements with the Authority for the study, design, construction, repair, maintenance, acquisition of properties and easements, and any other matter necessary to carry out the purposes of said Act and the Authority is authorized to enter into agreements under which the Secretary of Public Works agrees to pay in whole or in part, the cost of repairs, maintenance and operation of any traffic facilities financed under the provisions of the Enabling Act with funds of the Commonwealth covered into the public treasury; and

WHEREAS, pursuant to the Enabling Act the Authority has entered into an agreement with the Secretary of Public Works pursuant to which the Secretary of Public Works has agreed to pay the costs from general funds of the Commonwealth of Puerto Rico which are made available to him for that purpose, of maintaining, repairing and operating all traffic facilities financed by the Authority in whole or in part by the issuance of bonds of the Authority under the provisions of this Resolution; and

WHEREAS, by Act No. 75, approved June 23, 1965 as supplemented by Act No. 50, approved May 22, 1968, the proceeds of six-elevenths of the eleven cents a gallon tax imposed on gasoline by Act No. 2, approved January 20, 1956, as amended, was allocated to the Authority for use for its corporate purposes and expressly authorized the Authority to pledge the proceeds of said six cents a gallon tax received by it to the payment of the principal of and the interest on bonds or other obligations of the Authority or for any other lawful purpose of the Authority, the tax proceeds so pledged being subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed therefor but only to the extent that the other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose; and

2

WHEREAS, the Authority for the purpose of continuing the government program of providing highways has heretofore borrowed money and issued its temporary notes pursuant to a line of credit extended to the Authority by The Chase Manhattan Bank (National Association) (such notes as are outstanding and unpaid being hereinafter called the "Outstanding Notes"); and

WHEREAS, the Authority has determined to provide at this time for the issuance of bonds of the Authority for the purpose of providing funds to pay the Outstanding Notes and for providing additional funds for use by the Authority for continuing its highway construction program; and

WHEREAS, the Authority has also determined to provide for the issuance from time to time of additional bonds under the terms and conditions hereinafter set forth for any of the · purposes specified in the Enabling Act; now, therefore,

BE IT RESOLVED by the Puerto Rico Highway Authority:

## ARTICLE I.

### Definitions

Section 101. As used in this Resolution words and terms shall have the meanings ascribed to them in the preamble to this Resolution and elsewhere in this Resolution, unless otherwise defined below. In addition, the following words and terms shall have the following meanings, unless some other meaning is plainly intended:

The term "Accreted Value" shall mean, with respect to any Capital Appreciation Bond or Capital Appreciation and Income Bond, an amount equal to the principal amount of such Bond on the date of original issuance plus the interest accrued on such Capital Appreciation Bond or Capital Appreciation and Income Bond from the date of original issuance to the date of calculation or the Interest Commencement Date, as the case may be, compounded on the dates and in the manner provided for in the resolution authorizing the issuance of such Capital Appreciation Bond or Capital Appreciation and Income Bond.

The term "Additional Bonds" shall mean Bonds issued under Section 208 or 209 hereof.

The term "Amortization Requirements" shall mean

(a) with respect to the term bonds issued under the provisions of Section 207 of this Resolution, the following amounts in the following fiscal years, respectively:

| Fiscal Year | Amount | Fiscal Year | Amount |
|---------|-------------|---------|-------------|
| 1988-89 | $1,600,000 | 1993-94 | $2,100,000 |
| 1989-90 | 1,700,000 | 1994-95 | 2,150,000 |
| 1990-91 | 1,800,000 | 1995-96 | 2,200,000 |
| 1991-92 | 1,900,000 | 1996-97 | 2,250,000 |
| 1992-93 | 2,000,000 | 1997-98 | 2,300,000 |

3

, and

(b) with respect to term bonds issued under the provisions of Sections 208 and 209 of this Resolution, initially the respective amounts which are required in each year to provide for redeeming from time to time under the provisions of this Resolution all of such bonds by their stated maturity as fixed in the resolution providing for the issuance of such bonds.

If during any fiscal year the total principal amount of term bonds of any Series retired by purchase or redemption or called for redemption under the provisions of this Resolution or defeased pursuant to Section 901 of this Resolution shall be in excess of the amount of the Amortization Requirements for the term bonds of such Series for such fiscal year, then the amount of the Amortization Requirements for the term bonds of such Series shall be reduced for such subsequent fiscal years in such amounts aggregating the amount of such excess as shall be determined by the Executive Director in an order filed with the Fiscal Agent on or before the 10th day of July following the close of such fiscal year.

The term "Appreciated Value" shall mean with respect to any Capital Appreciation and Income Bond, (i) to the Interest Commencement Date set forth in the resolution authorizing the issuance of such Capital Appreciation and Income Bond, the Accreted Value and (ii) as of any date of computation on and after the Interest Commencement Date, the Accreted Value on the Interest Commencement Date.

The term "Balloon Bonds" shall mean any Bonds the interest on which is payable periodically and twenty-five percent (25%) or more of the original principal amount of which matures during any one fiscal year and for which maturing principal amount Amortization Requirements have not been fixed.

The word "Bondholder", "Holder", "Holder of Bonds", or "Owner" or any similar word, shall mean any person who shall be the holder or registered owner, as the case may be, of any Outstanding Bond or Bonds.

The word "Bonds" shall mean the Bonds issued under Sections 207, 208 and 209 hereof.

The term "Capital Appreciation Bonds" shall mean any Bonds as to which interest is compounded periodically on each of the applicable dates designated for compounding in the resolution authorizing said Bonds and payable in an amount equal to the then current Accreted Value only at the maturity (or extended maturity date for Extendible Maturity Bonds), earlier redemption or other payment date therefor, all as so provided by such resolution, and which may be either Serial Bonds or Term Bonds.

The term "Capital Appreciation and Income Bonds" shall mean any Bonds as to which accruing interest is not paid prior to the Interest Payment Date immediately succeeding the Interest Commencement Date specified in the resolution authorizing such Bonds and interest on which is compounded periodically on each of the applicable dates designated for compounding in such resolution prior to the Interest Commencement Date for such Capital Appreciation and Income Bonds, and which may be either Serial Bonds or Term Bonds.

4

The term "Capital Expenditures" shall mean all expenditures made on account of the Cost of Traffic Facilities.

The word "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and the regulations promulgated thereunder and applicable regulations promulgated under the Internal Revenue Code of 1954, as amended.

The word "Construction" or "construction" shall mean construction or acquisition or both.

The term "Construction Fund" shall mean the Puerto Rico Highway Authority Construction Fund, a special fund created and designated by Section 207 of this Resolution.

The term "Cost of Traffic Facilities" or "cost of Traffic Facilities" shall mean the cost of construction of Traffic Facilities and the cost of all labor, materials, machinery and equipment, the cost of all lands, property, rights, easements and franchises acquired, interest prior to and during construction and for any additional period authorized by law if so provided by, and subject to any limitations in, the resolution authorizing the issuance of a series of Bonds, cost of engineering and legal services, cost of preliminary surveys, plans and specifications, expenses of administration properly chargeable to such construction or acquisition, legal, architectural and engineering expenses and fees, cost of audits and of preparing and issuing the Bonds, fees and expenses of the Fiscal Agent, Paying Agents, consultants, financing charges, taxes or other governmental charges lawfully assessed during construction, claims arising in connection with construction, premiums on insurance in connection with construction, premiums for bond insurance, interest rate insurance or insurance assuring availability of the amounts required to be on deposit in the Reserve Account, any amounts required to be deposited in the Reserve Account, initial set-up fees and annual fees for any Credit Facility or Liquidity Facility and tender agent fees and fees payable for remarketing Bonds supported by any Credit Facility or Liquidity Facility during such period, as may be specified in the resolution authorizing the issuance of such Series of Bonds and all other items of expense not elsewhere in this definition specified, incident to the financing or construction of any Traffic Facilities and the placing of the same in operation.

The term "Credit Facility" shall mean an irrevocable letter of credit, policy of municipal bond insurance, guaranty, purchase agreement, credit agreement or similar facility in which the entity providing such facility irrevocably agrees to provide funds to make payment of the principal of, redemption premium, if any, and interest on Bonds.

The term "Executive Director" shall mean the Executive Director of the Authority or the officer succeeding to his principal functions and duties.

The term "Extendible Maturity Bonds" shall mean Bonds the maturities of which, by their terms, may be extended by and at the option of the Holders of the Bonds or the Authority.

The term "Fiscal Agent" shall mean the bank or trust company appointed by the Authority and acting as Fiscal Agent pursuant to the provisions of this Resolution, and shall be held and construed to mean the Fiscal Agent for the time being, whether original or successor.

5

The term "fiscal year" shall mean the period commencing on the first day of July of any year and ending on the last day of June of the following year or any other twelve month period designated by the Authority.

The term "Government Obligations" shall mean (i) direct obligations of, or obligations the payment of the principal of and interest on which are unconditionally guaranteed by, the United States of America; (ii) municipal obligations, the payment of the principal of, redemption premium, if any, and interest on which are irrevocably secured by obligations described in clause (i) above, which obligations are not subject to redemption prior to the date on which the proceeds attributable to the principal of the obligations are to be used and have been deposited in an escrow account which is irrevocably pledged to the payment of the principal of, redemption premium, if any, and interest on such municipal obligations; (iii) evidences of ownership of proportionate interests in future interest or principal payments on obligations specified in clauses (i) and (ii) above held by a bank (including the Fiscal Agent) or trust company as custodian, under which the owner of said interests is the real party in interest and has the right to proceed directly and individually against the issuer of the underlying obligations described in said clauses (i) and (ii) and which underlying obligations are not available to satisfy any claim of the custodian or any person claiming through the custodian or to whom the custodian may be obligated; and (iv) Time Deposits.

The term "Interest Commencement Date" shall mean, with respect to any particular Capital Appreciation and Income Bonds, the date specified in the resolution authorizing the issuance of such Bonds after which interest accruing on such Bonds shall be payable on a periodic basis prior to maturity, with the first such payment date being the applicable Interest Payment Date immediately succeeding such Interest Commencement Date.

The term "Interest Payment Date" shall mean the date on which interest on a Series of Bonds or portion thereof is scheduled to be due and payable, as provided in the resolution authorizing the issuance of such Series of Bonds.

The term "Interim Bonds" shall mean any Bonds issued under this Resolution on an interim basis which are expected to be repaid from the proceeds of other Bonds or other indebtedness.

The term "Investment Obligations" shall mean any of the following, to the extent that the same is legal for the investment of public funds under the laws of the Commonwealth:

   (i) Government Obligations;

   (ii) obligations issued or guaranteed by any instrumentality or agency of the United States of America, whether now existing or hereafter organized, including but not limited to those of the Federal Financing Bank, Federal Home Loan Banks, the Export-Import Bank, Government National Mortgage Association and the Tennessee Valley Authority;

   (iii) bankers' acceptances, certificates of deposit or time deposits of any bank or national banking association (including the Fiscal Agent), trust company or savings and loan association (including any investment in pools of such

6

bankers acceptances, certificates of deposit or time deposits), which to the extent that such obligations are not insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation, are either (A) issued by a bank, trust company or savings and loan association having a combined capital and surplus aggregating at least $50,000,000 or (B) collateralized at all times by such securities as are described in clauses (i) or (ii) above or (iv) or (v) below, having a market value at least equal to the principal amount of such bankers acceptances, certificates of deposit or time deposits (or portion thereof not so insured); provided that the Fiscal Agent has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties;

(iv) obligations issued by any state or territory of the United States, which are rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradation within such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Corporation or any successors thereto;

(v) municipal obligations, the payment of the principal of and the interest on which is insured, which are rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradation within such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Corporation or any successors thereto;

(vi) any repurchase, reverse repurchase or investment agreement with any bank or trust company organized under the laws of any state of the United States or the Commonwealth of Puerto Rico or any national banking association (including the Fiscal Agent), insurance company, or government bond dealer reporting to, trading with, and recognized as a primary dealer by the Federal Reserve Bank of New York and a member of the Security Investors Protection Corporation, which agreement is secured by any one or more of the securities described in clauses (i) or (ii) above, provided that the Fiscal Agent has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties;

(vii) commercial paper rated, or backed by a letter of credit or line of credit the issuer of which is rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradation within such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Corporation or any successors thereto; and

(viii) any other investment obligations, which are rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradation within such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Corporation or any successors thereto.

7

The term "Liquidity Facility" shall mean a letter of credit, line of credit, policy of municipal bond insurance, guaranty, purchase agreement or similar facility in which the provider of such facility agrees to provide funds to pay the purchase price of Put Bonds upon their tender by the Holders of Put Bonds.

The word "Outstanding" when used with reference to the Bonds shall mean, as of any date of determination, all Bonds theretofore issued except:

      (i)    Bonds theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for or after cancellation;

      (ii)    Bonds which are deemed paid and no longer Outstanding as provided herein;

      (iii)    Bonds in lieu of which other Bonds have been issued pursuant to the provisions hereof relating to Bonds destroyed, mutilated, stolen or lost, unless evidence satisfactory to the Fiscal Agent has been received that any such Bond is held by a bona fide purchaser;

      (iv)    Bonds tendered or deemed tendered pursuant to any tender provision, as further provided in the resolution authorizing such Series of Bonds; and

      (v)    for purposes of any consent or other action to be taken hereunder by the Holders of a specified percentage of principal amount of Bonds, Bonds held by or for the account of the Authority.

The term "Outstanding Notes" shall have the meaning set forth in the preambles of this Resolution.

The term "Paying Agents" shall mean the banks or trust companies at which the principal of and the interest on coupon bonds not registered as to both principal and interest shall be payable.

The term "Principal and Interest Requirements" for any period, as applied to the Bonds of any Series, shall mean the sum of:

      (i)    the amount required to pay the interest on all Bonds of such Series then Outstanding which is payable on each Interest Payment Date in such period,

      (ii)    the amount required to pay the principal of all Serial Bonds of such Series then Outstanding which is payable upon the stated maturity of such Serial Bonds in such period, and

      (iii)    the Amortization Requirements for the Term Bonds of such Series for such period.

8

To the extent that the period for calculating Principal and Interest Requirements shall be a fiscal year and the first day of the next fiscal year shall be an interest or principal payment date, such first day of the next fiscal year shall be included in the preceding fiscal year and not in the next fiscal year for purposes of calculating Principal and Interest Requirements.

The following rules shall apply in determining the amount of the Principal and Interest Requirements for any period:

(a) in the case of Variable Rate Bonds, the interest rate thereon shall be assumed to be the greater of (A) one hundred ten percent (110%) of the average interest rate on such Variable Rate Bonds during the twelve months ending with the month preceding the date of calculation or such shorter period that such Variable Rate Bonds shall have been Outstanding, (B) the actual rate of interest on such Variable Rate Bonds on the date of calculation and (C) the lesser of the maximum rate then permitted by law and the maximum rate permitted on such Variable Rate Bonds by the resolution authorizing the issuance thereof; provided, however, that if the Authority has notified the Fiscal Agent that a SWAP agreement is in effect in respect of Variable Rate Bonds, then for all purposes of this paragraph the interest rate on such Variable Rate Bonds shall be the SWAP rate under such SWAP agreement.;

(b) in the case of Put Bonds, the "tender" date or dates shall be ignored if the source for payment of said tender is a Liquidity Facility and the stated periods for Amortization Requirements and the stated dates for principal payments shall be used, and in the case of Bonds secured by a Credit Facility or a Liquidity Facility, the terms of the reimbursement obligation to the issuers thereof shall be ignored and the stated periods for Amortization Requirements and the stated dates for principal payments shall be used; provided, however, that during any period after the issuer of a Credit Facility or a Liquidity Facility, as the case may be, has advanced funds thereunder, the reimbursement obligation of which is payable from and secured on a parity with the Bonds and before such amount is repaid, Principal and Interest Requirements shall include the principal amount so advanced and interest thereon, in accordance with the principal repayment schedule and interest rate or rates specified in the Credit Facility or Liquidity Facility, as the case may be, in lieu of the stated principal of and Amortization Requirements and interest on such Bonds;

(c) in the case of Extendible Maturity Bonds, the Bonds shall be deemed to mature on the later of the stated maturity date and the date to which such stated maturity date shall have been extended;

(d) in the case of Capital Appreciation Bonds, the principal and interest portions of the Accreted Value of Capital Appreciation Bonds becoming due at maturity or by virtue of an Amortization Requirement shall be included during such period in which said principal and interest portions are due;

(e) in the case of Capital Appreciation and Income Bonds, the principal and interest portions of the Appreciated Value of Capital Appreciation and Income Bonds shall be included during the period in which said principal and interest portions are due;

9

(f)     in the case of Balloon Bonds or Interim Bonds, the debt service requirements of the Balloon Bonds or Interim Bonds may be excluded and in lieu thereof the Balloon Bonds or Interim Bonds shall be viewed as debt securities having a comparable Federal tax status as such Balloon Bonds or Interim Bonds, maturing in substantially equal annual payments of principal and interest over a period of not more than 30 years from the date of issuance thereof, bearing interest at a fixed rate per annum equal to the average interest rate per annum for such debt securities on the date of issuance of the Balloon Bonds or Interim Bonds and issued by issuers having a credit rating, issued by Moody's Investors Service, Inc. or any successors thereto or Standard & Poor's Corporation or any successors thereto comparable to that of the Authority, as shown by a certificate of an underwriting or investment banking firm experienced in marketing such securities; and

(g)     if all or a portion of the principal of or interest on a Series of Bonds is payable from moneys irrevocably set aside or deposited for such purpose, together with projected earnings thereon to the extent such earnings are projected to be from Investment Obligations irrevocably set aside or deposited for such purpose on the date of computation, such principal or interest shall not be included in determining Principal and Interest Requirements; provided that the above computation shall be supported by a verification report from a nationally recognized independent certified public accountant as to the sufficiency of such moneys set aside and projected earnings.

The term "principal corporate trust office" or "principal office" of the Fiscal Agent means the principal corporate trust office of the Fiscal Agent at which, at any particular time, its corporate trust business shall be administered, except that with respect to presentation of Bonds for payment or of Bonds for registration of transfer or exchange and the location of the bond registration books, such term shall mean the office or agency of the Fiscal Agent, if different, at which, at any particular time, its corporate agency business shall be conducted.

The term "principal underwriters" shall mean the firm or corporation or the firms or corporations named as principal underwriters in the resolution of the Authority awarding the bonds of each Series. In the event any such underwriter shall retire from active business leaving no successor, the term shall thereafter mean the remaining principal underwriter or underwriters. In the event each such underwriter shall retire from active business leaving no successor, the provisions of this Resolution which relate to the principal underwriters shall no longer be in force. For the purposes of this paragraph any firm or corporation succeeding to the business of any such underwriter by assignment, merger or otherwise shall be deemed to be a principal underwriter.

The term "Put Bonds" shall mean Bonds which by their terms may be tendered by and at the option of the Holder thereof for payment prior to the stated maturity thereof.

The term "Reserve Account Insurance Policy" shall mean the insurance policy, surety bond or other acceptable evidence of insurance, which policy, bond or other evidence of insurance constitutes an unconditional senior obligation of the issuer thereof. The issuer shall be a municipal bond insurer whose senior debt obligations, ranking pari passu with its obligations under such policy, bond or other evidence of insurance, are rated at the time of deposit to the credit of the Reserve Account in any of the three highest rating categories (without regard to any

10

gradation within any such category) of either Moody's Investors Service, Inc. or any successors thereto or Standard & Poor's Corporation or any successors thereto.

The term "Reserve Account Letter of Credit" shall mean the irrevocable, transferable letter of credit, if any, deposited to the credit of the Reserve Account in lieu of or in partial substitution for moneys or securities on deposit therein, which letter of credit constitutes an unconditional senior obligation of the issuer thereof. The issuer providing such letter of credit shall be a banking association, bank or trust company or branch thereof whose senior debt obligations, ranking pari passu with its obligations under such letter of credit, are rated at the time of deposit to the credit of the Reserve Account in any of the three highest rating categories (without regard to any gradation within any such category) of either Moody's Investors Service, Inc. or any successors thereto or Standard & Poor's Corporation or any successors thereto.

The term "Reserve Requirement" shall mean the lesser of (a) the maximum Principal and Interest Requirements for any fiscal year on account of the Outstanding Bonds and (b) ten percent (10%) of the proceeds of each Series of Bonds Outstanding determined on the basis of their initial offering prices to the public.

The word "Resolution" shall mean the Authority's Resolution No. 68-18, adopted June 13, 1968, as amended and supplemented by Resolution No. 72-08, adopted February 17, 1972 and Resolution No. 90-42, adopted October 29, 1990, together with all resolutions supplemental thereto as herein permitted.

The word "Revenues" shall mean (a) all moneys received by the Authority on account of gasoline tax allocated to the Authority by Act No. 75, approved June 23, 1965; (b) Toll Revenues; (c) the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may hereafter allocate to the Authority and expressly authorize the Authority to pledge to the payment of the principal of and interest on Bonds or other obligations of the Authority and which are pledged by the Authority to the payment of the principal and interest on Bonds or other obligations issued under the provisions of this Resolution; provided that written notice of such pledge has been delivered to Standard & Poor's Corporation, Moody's Investors Service, Inc. and any other rating agency then rating the bonds; and (d) investment earnings on deposit to the credit of the funds and accounts established hereunder, except for the Construction Fund.

The word "Secretary" shall mean the Secretary of Transportation and Public Works of the Commonwealth from time to time, or such other officer or the board or body succeeding to the powers and principal functions of the Secretary of Transportation and Public Works of the Commonwealth insofar as such powers and principal functions pertain to governance of the Authority.

The term "Serial Bonds" shall mean the Bonds of a Series designated as serial Bonds in the resolution authorizing such Bonds.

The word "Series" shall mean all of the Bonds delivered at any one time on original issuance and pursuant to any resolution authorizing such Bonds as a separate Series of Bonds, or

11

any Bonds thereafter delivered in lieu of or in substitution for such Bonds pursuant to Article II hereof, regardless of variations in maturity, interest rate or other provisions.

The term "Sinking Fund" shall mean the Puerto Rico Highway Authority Highway Revenue Bonds Interest and Sinking Fund, a special fund created and designated by Section 401 of this Resolution.

The term "SWAP agreement" shall mean an agreement between the Authority and a SWAP party whereby the SWAP party agrees to pay to the Authority amounts calculated on the basis of all or a portion of the interest on Variable Rate Bonds at or prior to the times such interest is due and payable in consideration of the Authority's payment to the SWAP party of amounts set forth in the SWAP agreement.

The term "SWAP party" shall mean a person who is party to a SWAP agreement and whose senior obligations are rated at the time of the execution and delivery of such SWAP agreement in one of the three highest rating categories (without regard to gradations within a category) by (i) Standard & Poor's Corporation or its successor and (ii) Moody's Investors Service, Inc. or its successor.

The term "SWAP rate" shall mean the fixed rate per annum on the principal amount of Variable Rate Bonds covered by a SWAP agreement equal to the percentage derived by dividing (i) the sum of the amounts in the last twelve months paid by the Authority in respect of interest on such bonds and to the SWAP party less the amount paid to the Authority by the SWAP party by (ii) such principal amount of Variable Rate Bonds; provided, however, that if such SWAP agreement has been in effect for less than twelve months, such percentage shall be multiplied by 360 divided by the number of days between the effective date of such SWAP agreement and the date of calculation determined on the basis of 30-day month; provided, further, that if no amount has been paid under the SWAP agreement, the SWAP rate shall be deemed to be the fixed rate per annum contracted to be paid by the Authority to the SWAP party.

The term "Term Bonds" shall mean the Bonds of a Series designated as term Bonds in the resolution authorizing such Bonds.

The term "Time Deposits" shall mean one or more agreements with the Fiscal Agent for moneys held for the credit of any or all of the funds or accounts established hereunder to be held by the Fiscal Agent as interest-bearing time deposits or other similar arrangements; provided, however, that such Time Deposits shall be secured in the manner set forth in Section 501 of this Resolution.

The term "Toll Revenues" shall mean the tolls or other charges, if any, imposed by the Authority for the use of any of its Traffic Facilities.

The term "Traffic Engineers" shall mean the engineer or engineering firm or corporation at the time employed by the Authority under the provisions of Section 608 of this Resolution.

The term "Traffic Facilities" shall mean any of the following facilities for which bonds or other obligations shall be issued by the Authority under the provisions of this Resolution the cost

of which facilities paid from the proceeds of such bonds or other obligations shall not have been reimbursed to the Authority from funds not encumbered by this Resolution:

(1) roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals, and any other land or water facilities necessary or desirable in connection with the movement of persons, freight, vehicles or vessels;

(2) parking lots and structures and other facilities necessary or desirable in connection with the parking, loading or unloading of all kinds of vehicles and vessels;

all property, rights, easements, and interests therein necessary or desirable for the construction, maintenance, control, operation or development of such traffic facilities.

The term "Variable Rate Bonds" shall mean Bonds issued with a variable, adjustable, convertible or similar interest rate which is not fixed in percentage at the date of issue for the term thereof, but which may or may not be convertible to a fixed interest rate for the remainder of their term.

Section 102.   Miscellaneous.   Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Unless the context shall otherwise indicate, the words "bond", "coupon", "owner", "holder" and "person" shall include the plural as well as the singular number, the word "person" shall include corporations and associations, including public bodies, as well as natural persons, and the word "holder" or "bondholder" when used herein with respect to bonds issued hereunder shall mean the holder or registered owner, as the case may be, of bonds at the time issued and outstanding hereunder.

ARTICLE II.

Authorization, Form, Issuance,
Delivery and Registration of Bonds

Section 201.   Authorization of Bonds.   For the purpose of providing funds to pay the Outstanding Notes and to provide additional funds for use by the Authority for the construction of Traffic Facilities, there shall be issued under and pursuant to the Enabling Act, bonds of the Authority in the amount and subject to the conditions hereinafter provided in Section 207 of this Article. All of the covenants, agreements and provisions of this Resolution shall be for the benefit and security of all and singular the present and future holders of the bonds and interest coupons so issued, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond by reason of priority in the issue, sale or negotiation thereof or otherwise.

Section 202.   Certain Details of Bonds.   The definitive bonds of each Series issued under the provisions of this Resolution shall be issuable as coupon bonds registrable as to both principal and interest or as registered bonds without coupons, shall be in such denominations, shall be numbered consecutively from 1 upwards as to coupon bonds and from R__-1 (inserting an identifying Series letter) upwards as to registered bonds without coupons, shall be dated, shall bear interest until their payment, which interest shall be payable at such times, and shall be stated

13

to mature (subject to the right of prior redemption), all as shall be provided in the resolution authorizing the issuance of said Series.

Each coupon Bond shall bear interest from its date. Registered Bonds without coupons shall be dated as provided in the resolution authorizing the issuance of such Series of Bonds; may bear interest, which may be fixed or variable, from the Interest Payment Date next preceding the date on which they are authenticated unless otherwise provided in the resolution authorizing the issuance of such Series of Bonds or unless they are authenticated upon an Interest Payment Date in which event they shall bear interest from such Interest Payment Date, or are authenticated before the first Interest Payment Date, in which event they shall bear interest from the date as of which the first issued Bonds of said Series bear interest; provided, however, that if at the time of authentication of any registered Bond without coupons interest is in default, such Bond shall bear interest from the date to which interest shall have been paid; except for (i) Capital Appreciation Bonds which shall bear interest as described under the defined term Accreted Value, payable only upon redemption or maturity thereof and (ii) Capital Appreciation and Income Bonds which shall bear interest as described under the defined term Appreciated Value, payable on the amount due at maturity but only from and after the Interest Commencement Date. The interest rate shall not exceed the maximum legal rate per annum, with interest on the Bonds being payable as provided hereinbelow. In the event that interest on registered Bonds without coupons is not punctually paid or duly provided for on any Interest Payment Date, such interest not so punctually paid or duly provided for shall forthwith cease to be payable to the registered owner shown on the registration books held by the Fiscal Agent at the close of business on the Record Date preceding such Interest Payment Date and may be paid to the person in whose name such Bonds are registered at the close of business on a special record date for the payment of such defaulted interest to be fixed by the Fiscal Agent, notice having been given by the Fiscal Agent to the registered Holder not less than ten (10) days prior to such special record date on a special payment date established by the Fiscal Agent, or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Bonds may be listed and upon such notice as may be required by such exchange, or as more fully provided for in the resolution authorizing the issuance of the Bonds. The above procedure for the payment of overdue interest may be varied in resolutions authorizing the issuance of specific Series of Bonds, which resolutions may provide for the payment of such interest at defaulted interest rates.

Both the principal of and the interest on the bonds shall be payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of and interest on coupon bonds, unless registered, shall be payable at The Chase Manhattan Bank (National Association), in the Borough of Manhattan, City and State of New York, or in the Municipality of San Juan, Puerto Rico, or at Bank of America National Trust and Savings Association, in the City of San Francisco, California (herein sometimes called the "Paying Agents") at the option of the holder. The Authority reserves the right to designate additional Paying Agents from time to time. Payment of the interest on the coupon bonds to the respective maturities thereof shall be made only upon presentation and surrender of the coupons, if any, representing such interest as the same respectively become due; or, if any coupon bond shall be registered as to both principal and interest, payment of the interest on such bond on any interest payment date shall be made to the person appearing on the bond registration books of the Authority hereinafter provided for as the

14

registered owner thereof, such interest to be paid by check mailed to the registered owner at his address as it appears on such registration books.  Payment of interest on any registered bond without coupons shall be made to the person appearing on the bond registration books of the Authority as the registered owner thereof (or of one or more predecessor bonds) on the Record Date, such interest to be paid by check mailed to such registered owner at his address as it appears on such registration books; provided, however, that to the extent provided in the resolution authorizing the issuance of bonds, interest may be payable by wire transfer.  The principal of any coupon bond registered as to both principal and interest or any registered bond without coupons shall be payable upon presentation and surrender thereof at the principal corporate trust office of The Chase Manhattan Bank (National Association).

Section 203.  <u>Execution of Bonds and Coupons</u>.  Coupon bonds shall bear the facsimile signature of the Secretary of Transportation and Public Works of the Commonwealth and shall be signed by the Executive Director and the Secretary or an Assistant Secretary of the Authority, and a facsimile of the corporate seal of the Authority shall be imprinted on such bonds.

The coupon bonds, the interest coupons to be attached thereto, the provisions for registration and reconversion to be endorsed on such coupon bonds, the registered bonds without coupons, the certificate of authentication by the Fiscal Agent to be endorsed thereon and the form of assignment shall be, respectively, substantially in the forms set forth below, with such variations, omissions and insertions as are required or permitted by this Resolution, as the same may be amended from time to time, including, without limitation, variations, omissions and insertions to reflect provisions for Balloon Bonds, Capital Appreciation Bonds, Capital Appreciation and Income Bonds, Interim Bonds, Variable Rate Bonds, Put Bonds, Extendible Maturity Bonds and other types of Bonds, including taxable Bonds and Bonds to be issued in book entry form, subject to any limitations under the laws of Puerto Rico at the time of the issuance of the particular Bonds.  All such bonds may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or any usage or requirement of law with respect thereto.

[FORM OF BONDS]

No.___                                                                                          $5,000

United States of America
Commonwealth of Puerto Rico

PUERTO RICO HIGHWAY AUTHORITY

Highway Revenue Bond (Series A)

The Puerto Rico Highway Authority (hereinafter sometimes called the "Authority"), a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the bearer or, if this bond be registered, to the registered owner hereof, on the 1st day of _____, 19__ (or earlier as hereinafter referred to), the principal sum of

15

NY1 5342478v2

## FIVE THOUSAND DOLLARS

and to pay, solely from said special fund, interest thereon from the date hereof at the rate of _____ per centum (_____%) per annum until payment of such principal sum, such interest to the maturity hereof being payable semi-annually on the 1st days of January and July in each year. Both the principal of and the interest on this bond are payable in any coin or currency of the United States of America which, at the respective dates of payment thereof, is legal tender for the payment of public and private debts. Unless registered, both the principal of this bond and the interest hereon are payable at _____
_____ at the option of the holder. Payment of the interest on this bond to the maturity hereof will be made only upon presentation and surrender of the coupons, if any, representing such interest as the same respectively become due; or, if this bond be registered payment of the interest on this bond on any interest payment date will be made to the person appearing on the bond registration books of the Authority as the registered owner hereof, such interest to be paid by check or draft mailed to the registered owner at his address as it appears on such registration books. The principal of this bond if registered is payable upon the presentation and surrender hereof at the principal office of The Chase Manhattan Bank (National Association).

This bond is one of a duly authorized series of bonds of the Authority designated "Highway Revenue Bonds (Series A)", aggregating Forty Million Dollars ($40,000,000), consisting of $20,000,000 bonds maturing in annual instalments on July 1 in each of the years 1970 to 1988, inclusive (herein called the "serial bonds"), and of $20,000,000 bonds maturing on July 1, 1998 (herein called the "term bonds") and issued to pay the cost of constructing highways and other traffic facilities, as such term is defined in the Enabling Act hereinafter mentioned, including the payment of notes heretofore issued by the Authority for such purpose. The Resolution provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional bonds for the purpose of paying all or a part of the cost of additional traffic facilities, and for the purpose of refunding any bonds issued by the Authority under the provisions of the Resolution hereinafter mentioned. All of the bonds are issued or are to be issued under and pursuant to Resolution No. 68-18, duly adopted by the Authority on June 13, 1968 (said Resolution No. 68-18 being herein called the "Resolution"), reference to which is hereby made for the provisions, among others, with respect to the application of the proceeds of bonds issued under the Resolution, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the rights, duties and obligations of the Authority and of the Fiscal Agent under the Resolution and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Resolution.

This bond is issued and the Resolution was adopted under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly Act No. 74, approved June 23, 1965, as amended (said Act as amended being herein called the "Enabling Act"). The Resolution provides for the creation of a special fund designated "Puerto Rico Highway Authority Highway Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund"), which special fund is pledged to and charged with the payment of the principal of and the interest on all bonds issued under the provisions of the Resolution, and also provides for the deposit to the credit of said special fund of a sufficient amount of the

16

moneys received by the Authority (a) from the gasoline taxes allocated to the Authority by Act No. 75, approved June 23, 1965, (b) from any tolls or other charges imposed by the Authority for the use of any traffic facilities to the extent provided in the Resolution and (c) from the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority and expressly authorize the Authority to pledge to the payment of the principal of and interest on bonds or other obligations issued by the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of the Resolution, to pay such principal and interest as the same shall become due and to create and maintain a reserve therefor. The proceeds of the gasoline taxes so allocated to the Authority by said Act No. 75 and any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority are subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed for such purpose, but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose.

The bonds at the time outstanding may be redeemed prior to their respective maturities at the option of the Authority (here insert the applicable redemption provisions).

If less than all of the bonds of any one maturity shall be called for redemption, the particular bonds to be redeemed shall be selected as provided in the Resolution.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Resolution, and shall be made in the manner and under the terms and conditions provided in the Resolution. Bonds which have been duly called for redemption, or with respect to which irrevocable instructions to call for redemption at the earliest redemption date have been given to the Fiscal Agent, notice having been published and moneys for the payment of the redemption price being held by the Fiscal Agent or by the paying agents, all as provided in the Resolution, shall become and be due and payable at the redemption price provided for redemption of such bonds on the date designated for redemption, interest on such bonds so called for redemption shall thereafter cease to accrue, the coupons for any such interest payable subsequent to the redemption date shall be void, and the holders or registered owners thereof shall have no rights in respect of such bonds so called for redemption except to receive payment of the redemption price thereof so held by the Fiscal Agent or by the paying agents.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

This bond may be registered as to both principal and interest and, if registered, may be reconverted into a coupon bond, in accordance with the provisions endorsed hereon and subject to the terms and conditions set forth in the Resolution.

Subject to the provisions for registration endorsed hereon and contained in the Resolution, nothing contained in this bond or in the Resolution shall affect or impair the negotiability of this bond. As declared by the Enabling Act, this bond shall be deemed to be fully negotiable.

17

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the resolutions of the Authority to happen, exist and be performed precedent to and in the issuance of this bond have happened, exist and have been performed as so required.

IN WITNESS WHEREOF, the Puerto Rico Highway Authority has caused this bond to be signed with the facsimile signature of its Chairman and to be signed by its Executive Director and (insert either "its Secretary" or "an Assistant Secretary"), and a facsimile of its corporate seal to be imprinted hereon, and the interest coupons attached hereto to be executed with the facsimile signature of said Chairman, all as of the 1st day of January, 1968.

_____           _____
            *Chairman*                              *Executive Director*


                                           _____
(Seal)                                              *Secretary*

## PROVISIONS FOR REGISTRATION AND RECONVERSION

This bond may be registered as to both principal and interest on books of the Authority kept by The Chase Manhattan Bank (National Association), New York, N. Y., under the within mentioned Resolution, as Bond Registrar, upon presentation hereof to the Bond Registrar at its principal office which shall detach and retain in its custody all unmatured coupons and all matured coupons, if any, not theretofore paid or provided for and shall make notation of such registration in the registration blank below, and this bond may thereafter be transferred only upon an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar, such transfer to be made on such books and endorsed hereon by the Bond Registrar; after such registration both the principal of and the interest on this bond shall be payable only to or upon the order of the registered owner or his legal representative. This bond, if converted into a registered bond, may be reconverted into a coupon bond upon presentation hereof to the Bond Registrar, accompanied by an instrument duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar; upon any such reconversion the Bond Registrar shall re-attach hereto the coupons representing the interest to become due thereafter on this bond to the date of maturity and the interest, if any, not theretofore paid and shall make notation in the registration blank below that this bond is payable to bearer.

|  | *Name of* | *Signature* |
| *Date of* | *Registered* | *of Bond* |
| *Registration* | *Owner* | *Registrar* |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

18

---

_____    _____    _____

[FORM OF COUPONS]

No. _____                                                             $_____

On _____ 1, 19__, the Puerto Rico Highway Authority will pay to bearer (unless the bond mentioned below shall previously have become payable as provided in the Resolution referred to in said bond and provision for payment thereof shall have been duly made) at _____

_____

_____,
upon the presentation and surrender hereof, the sum of _____ Dollars in any coin or currency of the United States of America which at the time of payment is legal tender for the payment of public and private debts, as provided in and for the semi-annual interest then due upon, its Highway Revenue Bond (Series A), dated as of January 1, 1968, No. _____.

_____

*Chairman*

19

[Form of registered bonds without coupons]

[Front side of bond]

No. R__-__                                                                                              $_____

United States of America

Commonwealth of Puerto Rico

PUERTO RICO HIGHWAY AUTHORITY

Highway Revenue [Refunding] Bond (Series ___)

| Maturity Date | Interest Rate | Original Issue Date | Cusip No. |
| --- | --- | --- | --- |

REGISTERED HOLDER:

PRINCIPAL AMOUNT:                                     DOLLARS

       Puerto Rico Highway Authority (hereinafter sometimes called the "Authority"), a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Holder shown above, or registered assigns or legal representative, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the principal corporate trust office of the Fiscal Agent (hereinafter mentioned), the Principal Amount shown above and premium, if any, and to pay to the Registered Holder hereof, from said special fund, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication hereof to which interest shall have been paid, unless such date of authentication is a January 1 or July 1 to which interest shall have been paid, in which case from such date, such interest being payable on January 1 and July 1 in each year, commencing _____ 1, ____, at the Interest Rate per annum specified above, until payment of said Principal Amount.  The interest so payable and punctually paid, or duly provided for, on any interest payment date will be paid to the person in whose name this bond (or one or more predecessor bonds, as defined in the Resolution hereinafter mentioned) is registered at the close of business on the fifteenth (15th) day (whether or not a business day) of the calendar month next preceding such interest payment date, by check mailed to such person at his address as it appears on the bond registration books of the Authority maintained by the Fiscal Agent [add wire transfer provisions, if applicable].  All such payments shall be made in such coin or currency of the United States as at the time of payment is legal tender for payment of public and private debts.

       This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such political subdivision shall be liable thereon, nor shall this bond or the interest thereon be payable out of any funds other than those pledged for the payment thereof pursuant to the Resolution.

20

NY1 5342478v2

ADDITIONAL PROVISIONS OF THIS BOND ARE SET FORTH ON THE REVERSE HEREOF AND SHALL FOR ALL PURPOSES HAVE THE SAME EFFECT AS IF SET FORTH HERE.

This bond shall not be valid or become obligatory for any purpose or be entitled to any lien, benefit or security under the Resolution herein described until the certificate of authentication endorsed hereon shall have been duly executed by the Fiscal Agent.

IN WITNESS WHEREOF, Puerto Rico Highway Authority has caused this bond to bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico and of the Executive Director and [Assistant] Secretary of Puerto Rico Highway Authority and a facsimile of its corporate seal to be imprinted hereon, all as of the 1st day of _____.

PUERTO RICO HIGHWAY AUTHORITY

By:_____
Secretary of Transportation and Public Works

(SEAL)

By:_____
Executive Director

By:_____
[Assistant] Secretary

21

Certificate of Authentication

This is one of the bonds of the series designated therein and issued under and secured by the provisions of the within mentioned Resolution.

> The Chase Manhattan Bank
> (National Association),
> as Fiscal Agent

By:_____ __ _____

Authorized Officer

Date of authentication: _____

[Reverse side of bond]

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO
PUERTO RICO HIGHWAY AUTHORITY
HIGHWAY REVENUE [REFUNDING] BOND (SERIES _____)

This bond is one of a duly authorized series of bonds of the Authority designated "Puerto Rico Highway Authority Highway Revenue [Refunding] Bonds (Series _)", aggregating _____ _____DOLLARS ($_____), consisting of [$_____ bonds maturing in annual installments on July 1 in each of the years _____ to _____, inclusive (herein called the "serial bonds"),] [and of $_____ bonds maturing on July 1, ____ (herein called the "term bonds"),] issued by the Authority for the purpose of [insert purpose]. All of the bonds are issued pursuant to Resolution No. 68-18 adopted by the Authority on June 13, 1968 (said resolution, together with all supplemental resolutions therein permitted, being herein called the "Resolution"), reference to which is hereby made for the provisions, among others, with respect to the application of the proceeds of bonds issued under the Resolution, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the rights, duties and obligations of the Authority and of the Fiscal Agent under the Resolution and the rights of the holders of the bonds, and, by the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Resolution.  A certified copy of the Resolution is on file at the principal corporate trust office of The Chase Manhattan Bank (National Association), fiscal agent (said fiscal agent and any successor fiscal agent under the Resolution being herein called the "Fiscal Agent"), in the Borough of Manhattan, City and State of New York.

[Insert applicable terms of redemption]

.

22

The moneys in the Redemption Account (referred to in the Resolution) available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Resolution in the manner provided in the Resolution.

If less than all of the bonds of any one maturity shall be called for redemption, the particular bonds or portions of bonds to be redeemed shall be selected by the Fiscal Agent in such manner as it shall deem fair and appropriate.

At least thirty (30) days before the redemption date of any bonds to be redeemed, whether such redemption be in whole or in part, the Fiscal Agent shall cause a notice of such redemption to be mailed, by first class mail, postage prepaid, to all registered owners of bonds to be redeemed at their addresses appearing upon the bond registration books of the Authority. The failure to mail such notice to any registered owner of bonds or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of bonds of other registered owners. On the date fixed for redemption, notice having been given as aforesaid, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for the redemption of such bonds or portions thereof on such date, and, if sufficient moneys, or certain securities or other arrangements permitted under the Resolution, the principal of and interest on which securities or other arrangements when due will provide sufficient moneys, for payment of such redemption price and the accrued interest are held by the Fiscal Agent, as provided in the Resolution, interest on the bonds or the portions thereof so called for redemption shall cease to accrue, such bonds shall cease to be entitled to any lien, benefit or security under the Resolution, and the registered owners thereof shall have no rights in respect to such bonds except to receive payment of the redemption price thereof and the accrued interest so held by the Fiscal Agent. If a portion of this bond shall be called for redemption, a new bond or bonds in an aggregate principal amount equal to the unredeemed portion hereof will be issued to the Registered Holder hereof or his legal representative upon the surrender hereof; said new bond or bonds shall be of any authorized denomination or denominations and shall be of the same series and maturity and shall bear interest at the same rate as the bonds surrendered for partial redemption.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

The bonds are issuable only as fully registered bonds in denominations of $5,000 and any multiple thereof. At the principal corporate trust office of the Fiscal Agent, in the manner and subject to the conditions provided in the Resolution and without cost to the registered owners thereof except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The Fiscal Agent is required to keep at its principal corporate trust office the books of the Authority for the registration of transfers of bonds. The transfer of this bond may be registered only upon such books and as otherwise provided in the Resolution upon the surrender hereof to the Fiscal Agent together with an assignment duly executed by the Registered Holder hereof or his attorney or legal representative in such form as shall be satisfactory to the Fiscal Agent. Upon any registration of transfer, the Authority shall execute and the Fiscal Agent shall

23

authenticate and deliver in exchange for this bond, a new bond or bonds registered in the name of the transferee, of authorized denominations, in an aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

The Fiscal Agent shall not be required to exchange or register any transfer of this bond during the fifteen (15) days immediately preceding the date of mailing of notice of any redemption of bonds, or after this bond has been selected for redemption.

This bond is issued and the Resolution was adopted under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly Act No. 74, approved June 23, 1965, as amended (said Act as amended being herein called the "Enabling Act"). The Resolution provides for the issuance, from time to time, of additional series of bonds under the conditions, limitations and restrictions therein set forth. The Resolution provides for the creation of a special fund designated "Puerto Rico Highway Authority Highway Revenue Bonds Interest and Sinking Fund", which special fund is pledged to and charged with the payment of the principal of and the interest on all bonds issued under the provisions of the Resolution, and also provides for the deposit to the credit of said special fund of a sufficient amount of the moneys received by the Authority (a) from the taxes on gasoline and gas oil and diesel oil heretofore allocated to the Authority by the Excise Act of Puerto Rico (Act No. 5, approved October 8, 1987, as amended), (b) from certain receipts of annual motor vehicle license fees imposed by the Commonwealth and allocated to the Authority by the Vehicle and Traffic Law of Puerto Rico (Act No. 141, approved July 20, 1960), (c) from any tolls or other charges imposed by the Authority for the use of any traffic facilities to the extent provided in the Resolution and (d) from the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico has allocated and may allocate to the Authority and expressly authorizes the Authority to pledge to the payment of the principal of and interest on bonds or other obligations issued by the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of the Resolution to pay such principal and interest as the same shall become due and to create and maintain a reserve therefor. The proceeds of the taxes on gasoline and gas oil and diesel oil so allocated to the Authority by said Excise Act of Puerto Rico, the proceeds of the license fees so allocated to the Authority by said Vehicle and Traffic Law of Puerto Rico and any other taxes, fees or charges which the Legislature of Puerto Rico has allocated and may allocate to the Authority are subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed for such purpose, but only to the extent that other available revenues of the Commonwealth referred to in said Sections are insufficient for such purpose.

As declared in the Enabling Act, this bond, notwithstanding the provisions for transfer contained in the Resolution, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including the Enabling Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in

24

the issuance of this bond and the adoption of the Resolution have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

NY1 5342478v2

**[Form of Assignment]**

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto _____

the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to register the transfer of the within bond on the books kept
for registration thereof with full power of substitution in the premises.

Dated:_____

> NOTICE: The signature on this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Social Security Number or
Employer Identification Number
of Transferee: _____

Signature Guaranteed:

> NOTICE: Signature must be guaranteed by a member firm of the New York Stock Exchange or a commercial bank or a trust company.

[End of Form of Registered Bond]

[Section 2.] The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Fiscal Agent, and the Fiscal Agent assumes and shall be under no responsibility for the correctness of the same.

[Section 3.] The provisions of this Fourth Supplemental Resolution shall become effective immediately upon its passage.

Section 204.  <u>Registration of Bonds</u>.  Registered bonds without coupons, upon surrender thereof to the Fiscal Agent, as Bond Registrar, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of coupon bonds of the same Series (if authorized for such Series) and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Resolution, and bearing interest at the same rate, and, in either case, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in this Resolution, in the same form as the registered bonds without coupons surrendered for exchange.

Title to any coupon bond, unless such bond is registered in the manner hereinafter provided, and to any interest coupon shall pass by delivery in the same manner as a negotiable instrument payable to bearer.  The Authority shall cause books for the registration and for the registration of transfer of the bonds as provided in this Resolution to be kept by The Chase Manhattan Bank (National Association), New York, New York, as Bond Registrar.  At the option of the bearer, any coupon bond (but not any temporary bond unless the Authority shall so provide) may be registered as to both principal and interest on such books upon presentation thereof to the Bond Registrar accompanied by all unmatured coupons and all matured coupons, if any, not theretofore paid or provided for, and the Bond Registrar shall make notation of such registration thereon and detach therefrom and retain in its custody all such coupons.  The transfer of any registered bond without coupons and any coupon bond registered as to both principal and interest may thereafter be registered only upon an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar, such registration of transfer to be made on such books and, in the case of a coupon bond, endorsed on the bond by the Bond Registrar.  In the case of the registration of transfer of a registered bond without coupons, the Authority shall execute and the Bond Registrar shall authenticate and deliver in exchange for such bond a new registered bond or bonds without coupons registered in the name of the transferee, of any denomination or denominations authorized by this Resolution or, at the option of the transferee and if coupon bonds are authorized for such Series of bonds, coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in an aggregate principal amount equal to the principal amount of such registered bond without coupons, of the same Series and maturity and bearing interest at the same rate.  The principal of and redemption premium, if any, and interest on any coupon bond registered as to both principal and interest and of any registered bond without coupons shall be payable in accordance with the provisions of Section 202 of this Resolution.  In all cases in which the transfer of registered bonds without coupons shall be registered or registered bonds without coupons shall be exchanged hereunder, the Authority shall execute and the Bond Registrar shall authenticate and deliver at the earliest practicable time registered bonds without coupons or coupon bonds, if authorized, with coupons attached representing all unpaid interest due or to become due thereon (except that coupon bonds need not be authenticated), in accordance with the provisions of this Resolution.  All registered bonds without coupons

surrendered in any such registration of transfer or exchange shall forthwith be cancelled by the Bond Registrar.

No charge shall be made to any bondholder for the privilege of registration, registration of transfer and exchange hereinabove granted, but any bondholder requesting any such registration, registration of transfer or exchange shall pay any tax or other governmental charge required to be paid with respect thereto. The Bond Registrar shall not be required to transfer any coupon bond registered as to both principal and interest and issued prior to the Date of Adoption of the Fourth Supplemental Resolution during the fifteen (15) days immediately preceding any interest payment date of such bond, nor after such bond has been selected for redemption. The Bond Registrar shall not be required to transfer any coupon bond registered as to both principal and interest and issued after the Date of Adoption of the Fourth Supplemental Resolution or any registered bond without coupons during the fifteen (15) days immediately preceding the date of mailing of notice of redemption or after such bond has been selected for redemption. No coupon bond registered as to both principal and interest shall thereafter be discharged from registration except as provided in Sections 206 and 213 of this Article."

Section 205. Ownership of Registered Bonds; Ownership of Bearer Bonds and Coupons. As to any registered bond without coupons and any coupon bond registered as to both principal and interest, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, whether such bond shall be overdue or not and neither the Authority, the Fiscal Agent, the Bond Registrar nor the Paying Agents shall be affected by any notice to the contrary, and payment of or on account of the principal of or redemption premium, if any, or interest on any such bond shall be made only to or upon the order of the registered owner thereof or his legal representative, but such registration may be changed as herein provided. All such payments shall be valid and effectual to satisfy and discharge the liability upon such bond to the extent of the sum or sums so paid. The Authority, the Fiscal Agent, the Bond Registrar and the Paying Agents may deem and treat the bearer of any coupon bond which shall not at the time be registered, and the bearer of any coupon appertaining to any coupon bond, as the absolute owner of such bond or coupon, as the case may be, whether such bond or coupon shall be overdue or not, for the purpose of receiving payment thereof and for all other purposes whatsoever, and neither the Authority, the Fiscal Agent, the Bond Registrar nor the Paying Agents shall be affected by any notice to the contrary.

Section 206. Reconversion of Registered Bonds. Any coupon bond registered as to both principal and interest may be reconverted into a coupon bond upon presentation thereof to the Bond Registrar, together with an instrument requesting such reconversion duly executed by the registered owner or his attorney or legal representative and in such form as shall be satisfactory to the Bond Registrar. Upon any such presentation the Bond Registrar shall reattach to such bond the coupons representing the interest to become due thereafter on the bond to the date of maturity and interest then due and unpaid, if any, and shall make notation thereon that the bond is payable to bearer.

No charge shall be made to any bondholder for any such reconversion, except that the Bond Registrar shall require payment by such bondholder of any tax or other governmental charge required to be paid with respect to such reconversion. The Bond Registrar shall not be required to reconvert any coupon bond under the provisions of this Section during the period of

28

fifteen (15) days next preceding any interest payment date of such bond nor after such bond has been selected for redemption.

Section 207. Initial Issue of $40,000,000 Highway Revenue Bonds (Series A). There shall be initially issued and secured by this Resolution bonds of the Authority in the aggregate principal amount of Forty Million Dollars ($40,000,000). Said bonds shall be designated "Puerto Rico Highway Authority Highway Revenue Bonds (Series A)", shall be dated as of the 1st day of January, 1968, shall bear interest from their date until their payment at a rate or rates not exceeding the maximum rate then permitted by law and shall be stated to mature (subject to prior redemption as hereinafter provided) as follows:

$20,000,000 of said bonds shall be serial bonds and shall be stated to mature in annual instalments on July 1, in the order of their numbers, lowest numbers first, in the years and in the amounts as follows:

| Year of Maturity | Principal Amount | Year of Maturity | Principal Amount |
|---|---|---|---|
| 1970 | $ 675,000 | 1979 | $1,010,000 |
| 1971 | 710,000 | 1980 | 1,060,000 |
| 1972 | 735,000 | 1981 | 1,110,000 |
| 1973 | 775,000 | 1982 | 1,160,000 |
| 1974 | 810,000 | 1983 | 1,225,000 |
| 1975 | 850,000 | 1984 | 1,280,000 |
| 1976 | 880,000 | 1985 | 1,350,000 |
| 1977 | 925,000 | 1986 | 1,420,000 |
| 1978 | 965,000 | 1987 | 1,500,000 |
|  |  | 1988 | 1,560,000 |

The remaining $20,000,000 of said bonds shall be term bonds and shall be stated to mature on July 1, 1998.

Each of said bonds shall be executed substantially in the form and manner hereinabove set forth, and shall be deposited with the Fiscal Agent for delivery, but before such bonds shall be delivered by the Fiscal Agent there shall be filed with it the following:

(a) a copy, certified by the Secretary of the Authority, of the resolution of the Authority fixing, subject to the provisions of Article III of this Resolution, the times and prices at which said bonds are to be redeemable;

(b) a copy, certified by the Secretary of the Authority, of the resolution of the authority awarding said bonds, specifying the interest rate of each of said bonds and directing the delivery of said bonds to or upon the order of the principal underwriters therein named upon payment of the purchase price therein set forth; and

(c) an opinion of the Legal Counsel of the Authority stating that the issuance of said bonds has been duly authorized and that all conditions precedent to the delivery of said bonds have been fulfilled.

NY1 5342478v2

When the documents mentioned in clauses (a) to (c), inclusive, of this Section shall have been filed with the Fiscal Agent and when said bonds shall have been executed as required by this Resolution, the Fiscal Agent shall deliver said bonds at one time to or upon the order of the principal underwriters named in the resolution mentioned in clause (b) of this Section, but only upon payment to the Fiscal Agent of the purchase price of said bonds. The Fiscal Agent shall be entitled to rely upon such resolution as to the names of the principal underwriters, the interest rate of each of said bonds and the amount of such purchase price.

Simultaneously with the delivery of said bonds the Fiscal Agent shall apply the proceeds (excluding accrued interest but including any premium) of said bonds as follows:

(1)     Such sum as is required for the purpose shall be applied to the payment of the Outstanding Notes upon the cancellation of said Notes and the delivery thereof to the Authority.

(2)     Such sum as is specified in a certificate signed by the Executive Director of the Authority and filed with the Fiscal Agent shall be deposited to the credit of a special checking account in the name of the Authority to be used for the payment of expenses incident to the financing as shall be approved by the Executive Director. When all expenses incident to the financing have been paid, any balance remaining to the credit of such special checking account shall be deposited to the credit of the Construction Fund.

(3)     The balance of such proceeds, if any, shall be deposited with the Fiscal Agent to the credit of a special fund hereby created and designated "Puerto Rico Highway Authority Construction Fund" (herein sometimes called the "Construction Fund") and applied by the Authority to the payment of the costs of Traffic Facilities.

Section 208.     Issuance of Bonds to Complete Any Traffic Facilities and for Additional Traffic Facilities.  Bonds may be issued under and secured by this Resolution subject to the conditions hereinafter provided in this Section, at any time or times, for the purpose of paying all or any part of the Cost of Traffic Facilities (including the repayment of any moneys which may have been made available to the Authority from any source for paying any part of such Cost).

Before any Bonds shall be issued under the provisions of this Section, the Authority shall adopt a resolution authorizing the issuance of such Bonds, fixing the amount and the details of the Bonds and specifying the amount of interest, if any, on such Bonds to be funded from the net proceeds of the Bonds.  The Bonds authorized by any such resolution shall be designated, shall be dated, shall be in such denominations, shall be numbered, shall be issued in such form, shall bear interest until their payment at any rate or rates not exceeding the maximum rate permitted by applicable law, shall be stated to mature at such time or times, shall have such Amortization Requirements (to the extent that such Bonds are term Bonds), and may be made subject to redemption, either in whole or in part, at such times and prices (subject to the provisions of Article III of this Resolution), as may be determined by resolution of the Authority adopted prior to the issuance of such Bonds.  Prior to the issuance of Variable Rate Bonds, the Authority shall adopt a resolution specifying, among other things, the interest rate calculation methods and any conversion features and any Credit Facility or any Liquidity Facility which may be drawn upon

to make principal and interest payments on the Variable Rate Bonds. The Variable Rate Bonds may provide that the Holder of any such Bond may demand payment of principal and interest within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender for the Variable Rate Bond to such agent. The designated agent for the Authority, in accordance with the terms of a remarketing agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Authority at a price provided for in such agreement. If the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized to draw upon a Credit Facility or Liquidity Facility for payment of interest on and principal of such Bonds. The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Authority, the terms and provisions for the remarketing agreement, and the terms and provisions of the Credit Facility or the Liquidity Facility, including the terms of any lien on Revenues in connection with the Credit Facility or the Liquidity Facility, shall be designated by a resolution of the Authority. Prior to the issuance of Put Bonds, the Authority shall adopt a resolution which, among other terms and provisions, may provide for some of the above terms and provisions. Prior to the issuance of Extendible Maturity Bonds, the Authority shall specify by resolution the terms and conditions of the exercise by the Holders or the Authority of any option to extend the maturity of said Bonds. Prior to the issuance of Capital Appreciation Bonds and Capital Appreciation and Income Bonds, the Authority shall specify by resolution the manner in which and the period during which interest shall be deemed to accrue on such Bonds.

All Bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth, with such changes as may be necessary or appropriate to conform to the provisions of the resolution authorizing the issuance of such Bonds, and shall be deposited with the Fiscal Agent for delivery and, if such bonds consist of registered bonds without coupons, authentication, but before any of such Bonds shall be delivered and, if applicable, authenticated, by the Fiscal Agent, there shall be filed with the Fiscal Agent the following:

(a)  a copy, certified by the Secretary of the Authority, of the resolution mentioned above;

(b)  a copy, certified by the Secretary of the Authority, of the resolution of the Authority directing the authentication, if applicable, of such Bonds, specifying the interest rate or interest rate modes of each such Bond, and directing the delivery of such Bonds to or upon the order of the purchasers therein named upon payment of the purchase price therein set forth;

(c)  a certificate dated the date of original issuance of such Bonds, signed by the Executive Director, setting forth

(i)  the amount of the Revenues for any twelve (12) consecutive calendar months out of the fifteen (15) calendar months immediately preceding the month in which such certificate is signed;

31

(ii)    the amount of the Toll Revenues for the twelve (12) calendar months for which the Revenues are shown in item (i) of this clause (c);

(iii)    the difference between the amounts set forth in items (i) and (ii) of this clause (c);

(iv)    the amount of the maximum Principal and Interest Requirement for any fiscal year thereafter on account of the Bonds then Outstanding and the Bonds then requested to be delivered; and

(v)    the percentage derived by dividing the amount in item (i) above by the amount shown in item (iv) above; and

(vi)    the percentage derived by dividing the amount shown in item (iii) above by the amount shown in item (iv) above;

(d)    an opinion of counsel for the Authority dated the date of the original issuance of such Bonds to the effect that

(i)    the issuance of such Bonds has been duly authorized and that all conditions precedent to the authentication, if applicable, and delivery of such Bonds have been duly fulfilled;

(ii)    the form and terms of such Bonds have been established by or pursuant to one or more resolutions adopted by the Authority, in conformity with the provisions of this Resolution;

(iii)    such Bonds, when authenticated, if applicable and delivered by the Fiscal Agent and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Resolution;

(iv)    the Authority has the corporate power to issue such Bonds and has duly taken all necessary corporate action with respect to such issuance;

(v)    the issuance of such Bonds will not contravene the Enabling Act or result in any violation of any of the terms or provisions of any law or regulation or of any indenture, mortgage or other agreement by which the Authority is bound and under which long-term debt of the Authority is outstanding; and

(vi)    all requirements of this Resolution applicable to the Authority in respect of the execution and delivery by the Authority of such Bonds have been complied with and that, assuming due authentication, if applicable, and delivery of such Bonds by the Fiscal Agent, no authorization, approval or consent by any regulatory or statutory or other public authority which has not been obtained is required for the issuance, authentication, if applicable, and delivery of such Bonds pursuant to this Resolution.

32

When the documents mentioned above shall have been filed with the Fiscal Agent and when the Bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and, if applicable, authenticated, as required by this Resolution, the Fiscal Agent shall deliver such Bonds to or upon the order of the purchasers named in the resolution mentioned in said clause (b) upon payment to the Fiscal Agent of the purchase price of such Bonds. The Fiscal Agent shall not deliver such bonds unless the percentage mentioned in item (v) or (vi) of the certificate mentioned in clause (c) of this Section is not less than one hundred fifty per centum (150%).

Bonds may be issued under this Section as part of a Series of Bonds which contains Bonds issued under Section 209 hereof, in which event the conditions to execution, delivery and, if applicable, authentication listed above shall pertain only to the portion of the Series of Bonds issued for the purposes described in this Section.

The proceeds of the Bonds issued under the provisions of this Section shall be applied by the Fiscal Agent as provided in a resolution of the Authority adopted prior to the issuance of the Bonds."

Section 209. Issuance of Refunding Bonds. Bonds may be issued under and secured by this Resolution, subject to the conditions hereinafter provided in this Section, at any time or times, for the purpose of providing funds for refunding all or any part of the Outstanding Bonds of any one or more Series by payment at maturity or redemption at a selected redemption date or dates or combination of such payment at maturity and redemption, including the payment of any redemption premium thereon, for making a deposit to the Reserve Account and for paying any costs of issuance of such Bonds. Before any Bonds shall be issued under the provisions of this Section, the Authority shall adopt a resolution authorizing the issuance of such Bonds, fixing the amount and the details of the Bonds, and describing the Bonds to be refunded. The Bonds authorized by any such resolution shall be designated, shall be dated, shall be in such denominations, shall be numbered, shall be issued in such form, shall bear interest until their payment at any rate or rates not exceeding the maximum rate permitted by applicable law, shall be stated to mature at such time or times, shall have such Amortization Requirements (to the extent that such Bonds are term Bonds), and may be made subject to redemption, either in whole or in part, at such times and prices (subject to the provisions of Article III of this Resolution), as may be determined by resolution adopted prior to the issuance of such Bonds. Prior to the issuance of Variable Rate Bonds, the Authority shall adopt a resolution specifying, among other things, the interest rate calculation methods and any conversion features and any Credit Facility or any Liquidity Facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds. The Variable Rate Bonds may provide that the Holder of any such Bond may demand payment of principal and interest within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent. The designated agent for the Authority, in accordance with the terms of a remarketing agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Authority at a price provided for in such agreement. If the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized to draw upon a Credit Facility or Liquidity Facility for payment of interest on and principal of such Bonds. The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the

33

agent for the Authority, the terms and provisions for the remarketing agreement, and the terms and provisions of the Credit Facility or Liquidity Facility, including the terms of any lien on Revenues in connection with the Credit Facility or Liquidity Facility, shall be as designated by a resolution of the Authority. Prior to the issuance of Put Bonds, the Authority shall adopt a resolution which, among other terms and provisions, may provide for some of the above terms and provisions. Prior to the issuance of Extendible Maturity Bonds, the Authority shall specify by resolution the terms and conditions of the exercise by the Holders or the Authority of any option to extend the maturity of said Bonds. Prior to the issuance of Capital Appreciation Bonds and Capital Appreciation and Income Bonds, the Authority shall specify by resolution the manner in which and the period during which interest shall be deemed to accrue on such Bonds.

All Bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth, with such changes as may be necessary or appropriate to conform to the provisions of the resolution authorizing the issuance of such Bonds, and shall be deposited with the Fiscal Agent for delivery and, if such bonds consist of registered bonds without coupons, authentication, but before any of such Bonds shall be delivered and, if applicable, authenticated, by the Fiscal Agent, there shall be filed with the Fiscal Agent the following:

    (a)    a copy, certified by the Secretary of the Authority, of the resolution mentioned above;

    (b)    a copy, certified by the Secretary of the Authority, of the resolution of the Authority directing the authentication, if applicable, of such Bonds, specifying the interest rate or interest rate modes of each such Bond and directing the delivery of such Bonds to or upon the order of the purchasers therein named upon payment of the purchase price therein set forth;

    (c)    an opinion of counsel for the Authority dated the date of the original issuance of such Bonds to the effect that

    (i)    the issuance of such Bonds has been duly authorized and that all conditions precedent to the authentication, if applicable, and delivery of such Bonds have been fulfilled;

    (ii)    the form and terms of such Bonds have been established by or pursuant to one or more resolutions adopted by the Authority, in conformity with the provisions of this Resolution;

    (iii)    such Bonds, when authenticated, if applicable, and delivered by the Fiscal Agent and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Resolution;

    (iv)    the Authority has the corporate power to issue such Bonds, and has duly taken all necessary corporate action with respect to such issuance;

34

(v)     the issuance of such Bonds will not contravene the Enabling Act or result in any violation of any of the terms or provisions of any law or regulation or of any indenture, mortgage or other agreement by which the Authority is bound and under which long-term debt of the Authority is outstanding; and

(vi)    all requirements of this Resolution applicable to the Authority in respect of the execution and delivery by the Authority of such Bonds have been complied with and that, assuming due authentication, if applicable, and delivery of such Bonds by the Fiscal Agent, no authorization, approval or consent by any regulatory or statutory or other public authority which has not been obtained is required for the issuance, authentication, if applicable, and delivery of such Bonds pursuant to this Resolution;

(d)     such documents as shall be required by counsel of recognized standing in the field of law relating to municipal bonds to show that provision has been made in accordance with the provisions of this Resolution for the payment or redemption of all the Bonds to be refunded;

(e)     a certificate dated the date of original issuance of the Bonds, signed by the Executive Director, that the sum of the net proceeds (excluding accrued interest but including any premium) of such Bonds, together with investment earnings on said proceeds, other moneys to be deposited and investment earnings on said moneys, shall not be less than an amount sufficient to pay the principal of, the redemption premium, if any, and interest accrued to the payment dates on the Bonds to be refunded, and the expenses incident to such financing; and

(f)     the certificate required by Section 208(c); provided that the Authority need not deliver said certificate if the Executive Director delivers a certificate to the effect that the maximum Principal and Interest Requirements for any fiscal year thereafter on account of the Bonds to be Outstanding after the issuance of the Bonds then requested to be delivered shall be equal to or less than the maximum Principal and Interest Requirements for any fiscal year thereafter on account of the Bonds Outstanding prior to the issuance of the Bonds then requested to be delivered.

When the documents mentioned above shall have been filed with the Fiscal Agent and when the Bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and, if applicable, authenticated, as required by this Resolution, the Fiscal Agent shall deliver such Bonds to or upon the order of the purchasers named in the resolution mentioned in clause (b) upon payment of the purchase price of such Bonds.  If the certificate required by Section 208(c) has been filed with the Fiscal Agent, the Fiscal Agent shall not deliver such Bonds unless the percentage mentioned in either item (v) or (vi) of said certificate is not less than one hundred fifty per centum (150%).

Bonds may be issued under this Section as a part of a Series of Bonds which contains Bonds issued under Section 208 hereof, in which event the conditions to execution, delivery and, if applicable, authentication listed above shall pertain only to the portion of the Series of Bonds issued for purposes described in this Section.

35

The proceeds of the Bonds issued under the provisions of this Section shall be applied by the Fiscal Agent as provided in a resolution of the Authority adopted prior to the issuance of the Bonds. Simultaneously with the delivery of the Bonds, the Fiscal Agent may withdraw from the Bond Service Account and the Redemption Account amounts theretofore deposited which are allocable to the Bonds to be refunded (including amounts transferred to the Bond Service Account from the Reserve Account due to any excess therein) and shall transfer said amounts in accordance with such resolution.

Section 210.  Deposit of Accrued Interest.  All moneys received as accrued interest on bonds issued under the provisions of this Resolution shall be deposited with the Fiscal Agent to thecredit of the special account hereinafter created in the Sinking Fund and designated "Bond Service Account".

Section 211.  Temporary Bonds.  Until the definitive bonds are ready for delivery, there may be executed, and upon request of the Executive Director of the Authority, the Fiscal Agent shall deliver, in lieu of definitive bonds and subject to the same limitations and conditions except as to identifying numbers, temporary printed, engraved, lithographed or typewritten bonds in the denomination of Five Thousand Dollars ($5,000) or any multiple thereof, substantially of the tenor hereinabove set forth, with or without coupons, and with or without the privilege of registration as to both principal and interest as the Authority may provide, and with appropriate omissions, insertions and variations as may be required. The Authority shall cause the definitive bonds to be prepared and to be executed and delivered to the Fiscal Agent, and the Fiscal Agent, upon presentation to it of any temporary bond accompanied by all unmatured coupons, and all matured coupons representing interest not paid or duly provided for, if any, shall cancel the same and deliver, in exchange therefor, at its principal office, without expense to the holder, a definitive bond or bonds in the same aggregate principal amount maturing on the same date and bearing interest at the same rate as the temporary bond surrendered. Upon any such exchange, all coupons appertaining to definitive coupon bonds and representing interest theretofore paid shall be detached and cancelled by the Fiscal Agent. Until so exchanged, the temporary bonds shall in all respects, including the privilege of registration if so provided, be entitled to the same benefit of this Resolution as the definitive bonds to be issued hereunder, and interest on such temporary bonds, when payable, if the definitive bonds shall not be ready for exchange, shall be paid on presentation of such temporary bonds and notation of such payment shall be endorsed thereon, or such interest shall be paid upon the surrender of the appropriate coupons if coupons representing such interest shall be attached to such temporary bonds.

Section 212.  Mutilated, Destroyed, Lost or Stolen Bonds.  In case any bond or any coupon issued hereunder shall become mutilated or be destroyed, lost or stolen the Authority shall cause to be executed, and the Fiscal Agent shall authenticate (if such bond is a registered bond without coupons) and deliver, a new bond of like date, maturity and tenor in exchange and substitution for and upon the cancellation of such mutilated bond and its interest coupons, if any, or in lieu of and in substitution for such bond and its coupons, if any, mutilated, destroyed, lost or stolen; provided, however, that if any such coupon or bond shall have matured or shall be about to mature, the Authority may pay such coupon or such bond in lieu of issuing a new bond, all upon the holder's paying the reasonable expenses and charges of the Authority and the Fiscal Agent in connection therewith, and, in the case of a bond or coupon destroyed, lost or stolen, his filing with the Fiscal Agent evidence satisfactory to it and the Authority that such bond and

36

coupons, if any, were destroyed, lost or stolen and of his ownership thereof, and furnishing the Authority and the Fiscal Agent with indemnity satisfactory to them.

Section 213.  Subject to the provisions of Section 212 of this Resolution, at the request of the holder of any mutilated, destroyed, lost or stolen coupon bond, the Authority shall cause to be executed, and the Bond Registrar shall authenticate and deliver, in lieu of a new definitive coupon bond prepared in the same manner as the original bond, a registered replacement bond without coupons, which may be typewritten, printed, or otherwise prepared, of like date and tenor with such appropriate variations, omissions and insertions as are required by this Section. Such replacement bond shall be registered in the name designated by such holder and shall bear interest from the interest payment date to which interest has been paid immediately preceding the date, if any, on which a stop-payment notice was given with respect to the original bond.  The principal of such replacement bond shall be payable, upon presentation and surrender thereof to the Fiscal Agent, only to the registered owner or his legal representative, and payment of the interest on such replacement bond shall be made on each interest payment date to the person appearing on the registration books of the Authority herein provided for as the registered owner thereof on the Record Date, if any, for such interest payment date, by check mailed to such registered owner at his address as it appears on such registration books.

Except with respect to the exchange or transfer of such registered replacement bond (which shall be governed solely by the provisions of this Section), such replacement bond shall be entitled to the same lien, benefit and security of this Resolution as the definitive bonds issued hereunder.

Registered replacement bonds without coupons, upon surrender thereof to the Bond Registrar, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of definitive coupon bonds of the same Series and maturity and bearing interest at the same rate, having attached thereto coupons representing all unpaid interest due or to become due thereon, and prepared in the same manner as the original definitive coupon bonds.  No charge shall be made to any bondholder for the privilege of any such exchange hereinabove granted, but any bondholder requesting any such exchange shall pay any tax or other governmental charge required to be paid with respect to such exchange and the reasonable expenses and charges of the Authority and the Bond Registrar in connection therewith, including the costs of printing new definitive coupon bonds.

The Authority shall cause books for the registration of and the registration of transfers of registered replacement bonds without coupons as provided in this Section to be kept by the Fiscal Agent as Bond Registrar.  The transfer of any registered replacement bond without coupons may be registered only upon such books upon surrender thereof to the Bond Registrar together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar.  Upon any such registration of transfer the Authority shall execute and the Bond Registrar shall authenticate (in the case of (i) below) and deliver in exchange for such replacement bond, at the option of the transferee, (i) a new registered replacement bond or (ii) new definitive coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in aggregate

37

NY1 5342478v2

principal amount equal to the principal amount of such replacement bond, of the same Series and maturity and bearing interest at the same rate. No charge shall be made to any bondholder for the privilege of any such registration of transfer hereinabove granted, but any bondholder requesting any such registration of transfer shall pay any tax or other governmental charge required to be paid with respect to such registration of transfer and the reasonable expenses and charges of the Authority and the Bond Registrar in connection therewith, including the costs of printing new definitive coupon bonds.

All replacement bonds surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Bond Registrar. Neither the Authority nor the Bond Registrar shall be required to make any such exchange or registration of transfer of replacement bonds after the Record Date or during the fifteen (15) days next preceding the date of first giving of the notice of any redemption or after such bonds have been selected for redemption.

Registered replacement bonds without coupons may also be issued under the provisions of this Section to the holder of any mutilated, destroyed, lost or stolen coupon upon surrender of the original definitive coupon bond to which such coupon appertains and all remaining coupons appertaining thereto.

In case any mutilated, destroyed, lost or stolen coupon bond or coupon, as the case may be, has become or is about to become due and payable, the Authority in its discretion may pay such bond or coupon.

Section 214. Notwithstanding anything to the contrary contained in this Resolution, a Series of coupon bonds may be issued hereunder after the Date of Adoption of the Fourth Supplemental Resolution only upon delivery by the Authority to the Fiscal Agent of an opinion of counsel of recognized standing in the field of law relating to municipal bonds to the effect that the issuance of bonds in coupon form will not cause the interest on bonds issued hereunder as bonds the interest on which is excludable from gross income for federal income tax purposes to be includable in gross income for federal income tax purposes; provided, however, that no such opinion shall be required in connection with the reconversion into a coupon bond of a coupon bond registered as to principal and interest or a registered replacement bond.

Section 215. The Fiscal Agent is hereby authorized to enter into agreements with The Depository Trust Company of New York and other depository trust companies, including but not limited to agreements necessary for wire transfers of interest and principal payments with respect to the Bonds, utilization of electronic book entry data received from The Depository Trust Company of New York and other depository trust companies in place of delivery of definitive Bonds and provision of notices with respect to Bonds registered in the name of The Depository Trust Company of New York and other depository trust companies (or any of their designees identified to the Fiscal Agent) by overnight delivery, courier service, telegram, telecopy or other similar means of communication. No such agreements with The Depository Trust Company of New York and other depository trust companies may adversely affect the interests of any of the Holders of the Bonds; provided, however, that the Fiscal Agent shall not be liable with respect to any such agreements it may enter into pursuant to this Section.

Section 216. For purposes of determining the principal amount of a Capital Appreciation Bond or a Capital Appreciation and Income Bond for redemption or computation of the amount of Bonds held by the Holder thereof in giving to the Authority or the Fiscal Agent any notice, covenant, request or demand pursuant to this Resolution for any purpose whatsoever, the principal amount of a Capital Appreciation Bond shall be deemed to be its Accreted Value and the principal amount of a Capital Appreciation and Income Bond shall be deemed to be its Appreciated Value."

## ARTICLE III.

### Redemption of Bonds

Section 301. Redemption of Bonds; Selection of Fiscal Agent for Partial Redemption. The Bonds of each Series may be made subject to redemption, either in whole or in part and at such times and prices, as may be provided in the resolution authorizing the issuance of such Bonds. Term Bonds shall be made subject to redemption to the extent of any Amortization Requirements therefor, as specified in the resolution authorizing the issuance of such term Bonds.

Section 302. Redemption Notice. At least thirty (30) days before the redemption date of any bonds, the Fiscal Agent shall cause a notice of any such redemption, signed in the name of the Authority by the Fiscal Agent, (a) to be published once in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, (b) to be filed with the Paying Agents and (c) to be mailed, by first class mail, postage prepaid, to all registered owners of bonds to be redeemed at their addresses as they appear on the registration books hereinabove provided for, but failure to mail any such notice shall not affect the validity of the proceedings for the redemption of bonds of a Series consisting only of coupon bonds not registered as to principal and interest; provided, however, that with respect to the redemption of bonds of a Series consisting of coupon bonds registered as to both principal and interest or registered bonds without coupons, published notice of redemption shall not be required, and the failure to mail notice of redemption or any defect in any such notice shall not affect the validity of the proceedings for redemption of any other bonds of such Series to the holders of which notice of such redemption has been properly mailed. Each such notice shall set forth (1) the date fixed for redemption, (2) the redemption price to be paid, (3) that on the date fixed for redemption the redemption price will become due and payable upon each bond or portion thereof called for redemption, if moneys for the payment of the redemption price shall be on deposit on such date, (4) that interest thereon shall cease to accrue on and after said redemption date, (5) the place where such bonds are to be surrendered for payment of such redemption price and (6) if less than all of the bonds then outstanding shall be called for redemption, the maturities and the numbers of the bonds to be redeemed. In case any registered bond without coupons is to be redeemed in part only, the notice of redemption which relates to such bond shall state also the portion of the principal amount to be redeemed and that on or after the redemption date, upon surrender of such bond, a new registered bond or bonds without coupons, of the same Series and maturity, bearing interest at the same rate and in principal amount equal to the unredeemed portion of such bond will be issued.

39

In addition to the foregoing notice, further notice shall be mailed by the Fiscal Agent as set out below, but no defect in said further notice nor any failure to give all or any portion of such further notice shall in any manner defeat the effectiveness of a call for redemption if notice thereof is given as above prescribed.

(a)     Each further notice of redemption given hereunder shall contain the information required above for an official notice of redemption plus (i) the date of issue of the bonds as originally issued; (ii) the rate of interest borne by each bond being redeemed; (iii) the maturity date of each bond being redeemed; and (iv) any other descriptive information needed to identify accurately the bonds being redeemed.

(b)     Each further notice of redemption shall be sent by registered or certified mail or overnight delivery service or by facsimile transmission for receipt at least two (2) business days prior to the thirtieth (30) day before the redemption date to the registered securities depositories and national information services whose names and addresses are included on the most recent list furnished to the Fiscal Agent by the Authority.

(c)     The Fiscal Agent shall cause a second notice of redemption to be mailed in the manner and in the form specified above for the initial notice of redemption to holders of registered bonds or portions thereof to be redeemed who have not surrendered their bonds within sixty (60) days after the redemption date."

Section 303.   Effect of Calling for Redemption.   On the date so designated for redemption, notice having been given and filed in the manner and under the conditions hereinabove provided, the Bonds or portions of registered Bonds so called for redemption shall become and be due and payable at the redemption price provided for redemption of such Bonds or portions thereof on such date, and, if sufficient moneys for payment of the redemption price and accrued interest or Sufficient Government Obligations as defined in Section 306 hereof are held by the Fiscal Agent or the Paying Agents in trust for the Holders of the Bonds or portions thereof to be redeemed, all as provided in this Resolution, interest on the Bonds or portions of Bonds so called for redemption shall cease to accrue, any coupons for interest thereon payable subsequent to the redemption date shall be void, such Bonds or portions of Bonds shall cease to be entitled to any lien, benefit or security hereunder and shall no longer be outstanding under this Resolution, and the Holders of such Bonds or portions of Bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof and accrued interest, and, to the extent, provided in Section 307 hereof, to receive Bonds for any unredeemed portions of registered Bonds.

Section 304.   Matured Coupons.   All unpaid interest coupons which appertain to bonds so called for redemption and which shall have become payable on or prior to the date of redemption designated in such notice shall continue to be payable to the bearers severally and respectively upon the presentation and surrender of such coupons.

Section 305.   Cancellation of Bonds and Coupons Redeemed.   Coupon bonds so called for redemption, all unmatured coupons appertaining thereto and registered bonds without coupons so called for redemption, shall be cancelled upon the surrender thereof.

NY1 5342478v2

Section 306. Bonds Called for Redemption Not Deemed Outstanding. If (a) Bonds shall have been duly called for redemption under the provisions of this Article or irrevocable instructions have been given by the Authority to the Fiscal Agent or the Paying Agents, as applicable, to (i) call Bonds for redemption under the provisions of this Article or (ii) pay Bonds at their maturity or maturities (the Bonds described in clause (a) are herein collectively called the "Bonds to be Paid"), and (b) sufficient moneys for payment of the principal of, redemption premium, if any, and interest on the Bonds to be Paid to their redemption or maturity or Sufficient Government Obligations (as defined below) are held in separate accounts by the Fiscal Agent, the Paying Agents or other appropriate fiduciary institution acting as escrow agent solely for the Holders of the Bonds to be Paid, then, notwithstanding any other provisions herein to the contrary, the Bonds to be Paid shall not be deemed to be Outstanding under the provisions of this Resolution and shall cease to be entitled to any lien, benefit or security under this Resolution.

For purposes of this Section 306 "Sufficient Government Obligations" shall mean Government Obligations that are in such principal amounts, bear interest at such rate or rates and mature (without option of prior redemption) on such date or dates so that the proceeds to be received upon payment of such Government Obligations at their maturity and the interest to be received thereon, without any reinvestment thereof, will provide sufficient moneys on the dates required to pay the principal of, redemption premium, if any, and the interest on the Bonds to be Paid to the dates of their redemption or maturity.

Section 307. In case part but not all of an outstanding registered bond without coupons shall be selected for redemption, the registered owner thereof or his attorney or legal representative shall present and surrender such bond to the Fiscal Agent for payment of the principal amount thereof so called for redemption, and the Authority shall execute and the Bond Registrar shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the registered bond without coupons so surrendered, a new registered bond or bonds without coupons of the same Series and maturity, bearing interest at the same rate and of any denomination or denominations authorized by this Resolution.

## ARTICLE IV.

### Revenues and Funds

Section 401. Sinking Fund; Bond Service Account, Redemption Account and Reserve Account. A special fund is hereby created and designated "Puerto Rico Highway Authority Highway Revenue Bonds Interest and Sinking Fund" (herein sometimes called the "Sinking Fund"). There are hereby created in the Sinking Fund three separate accounts designated "Bond Service Account", "Redemption Account" and "Reserve Account", respectively.

The moneys in said Funds and Accounts shall be held by the Fiscal Agent in trust and applied as hereinafter provided with regard to each such Fund and Account and, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Resolution and for the further security of such holders until paid out or transferred as herein provided.

41

The Authority covenants that all of the Revenues (other than investment earnings on deposits to the credit of funds and accounts established hereunder), and any other funds of the Commonwealth allocated to the Authority for the payment of principal and interest on bonds of the Authority issued under the provisions of this Resolution, which it receives will be deposited monthly with the Fiscal Agent to the credit of the following Accounts and Fund in the amounts specified and in the following order:

(a)    to the credit of the Bond Service Account, an amount equal to one-sixth (1/6) of the amount of interest payable on all bonds of each Series issued hereunder on the interest payment date next succeeding and (beginning with the twelfth month preceding the first maturity of any serial bonds of such Series) an amount equal to one-twelfth (1/12) of the next maturing instalment of principal of such serial bonds; provided, however, that the amount so deposited on account of interest in each month after the delivery of the bonds of any Series under the provisions of this Resolution up to and including the month immediately preceding the first interest payment date thereafter of the bonds of such Series shall be that amount which when multiplied by the number of such deposits will be equal to the amount of interest payable on such bonds on such first interest payment date less the amount of any accrued interest paid on such bonds and deposited with the Fiscal Agent to the credit of the Bond Service Account;

In the event that the Authority has issued Variable Rate Bonds pursuant to the provisions of Sections 208 or 209 of this Resolution, Revenues shall be deposited at such additional times and amounts as established in the resolution under which the Variable Rate Bonds are issued as necessary to pay the interest coming due on the Variable Rate Bonds on the next Interest Payment Date.

If the period between Interest Payment Dates will be other than six (6) months, the period between principal payment dates will be other than twelve (12) months, or the period for Amortization Requirements will be other than twelve (12) months, then such monthly deposits shall be increased or decreased, as appropriate, in sufficient amounts to provide the required interest amount coming due on the next Interest Payment Date, principal amount maturing on the next principal payment date and the amount of the next Amortization Requirement.

(b)    to the credit of the Redemption Account, for a period of 12 months beginning with the second month preceding each fiscal year in which there is an Amortization Requirement for the bonds of any Series, an amount equal to one-twelfth (1/12) of the Amortization Requirement for such fiscal year for the term bonds of each Series then outstanding plus an amount equal to one-twelfth (1/12) of the premium, if any, which would be payable on the first redemption date in the following fiscal year on a like principal amount of bonds if such principal amount of bonds should be redeemed prior to their maturity from moneys in the Sinking Fund;

(c)    to the credit of the Reserve Account, such amount as is required to make the amount deposited to the credit of said Account in the then current fiscal year at least equal to twenty per centum (20%) of the Reserve Requirement; provided, however, that no such deposit under this clause (c) shall be made in any month if the amount then to

42

credit of the Reserve Account shall be equal to the Reserve Requirement or in excess of such amount as may be required to make the amount then to credit the Reserve Account equal to the Reserve Requirement; provided, further, that notwithstanding the above, in the event of an increase in the Reserve Requirement due to the issuance of additional Series of Bonds, such increase may be funded by deposits in each of five (5) years commencing in the fiscal year in which such additional Series of Bonds is issued, of 20% of such increase in the Reserve Requirements, and

(d) the balance, if any, remaining after making the deposits under clauses (a), (b) and (c) above, shall be deposited to the credit of the Construction Fund for use by the Authority for any of its authorized purposes subject to the provisions of Sections 604 and 605 of this Resolution.

If the amount so deposited in any month to the credit of any Account mentioned in clause (a), (b) or (c) above shall be less than the required amount, the requirement therefor shall nevertheless be cumulative and the amount of any deficiency in any month shall be added to the amount otherwise required to be deposited to the credit of such account in each month thereafter until such time as such deficiency shall be made up.

The Authority further covenants that any other funds which it receives from the Commonwealth to make up any deficiencies in the amounts needed to pay the principal of and interest on any bonds issued under the provisions of this Resolution will be applied for such purpose.

Notwithstanding the provisions of clause (c) above, in lieu of any required deposit of Revenues to the credit of the Reserve Account, or in substitution for all or a portion of the moneys then held to the credit of the Reserve Account, the Authority may deposit to the credit of the Reserve Account a Reserve Account Insurance Policy or a Reserve Account Letter of Credit for the benefit of the Holders in an amount equal to the required deposit, which Reserve Account Insurance Policy or Reserve Account Letter of Credit shall be payable or available to be drawn upon, as the case may be (upon the giving of notice as required thereunder), on any Interest Payment Date on which a deficiency exists which cannot be cured by moneys in any other fund or account held by the Fiscal Agent pursuant to this Resolution and available for such purpose. If a disbursement is made under the Reserve Account Insurance Policy or the Reserve Account Letter of Credit, the Authority shall be obligated either to reinstate the limits of such Reserve Account Insurance Policy or Reserve Account Letter of Credit following such disbursement, or to deposit into the Reserve Account from the Revenues, funds in the amount of the disbursement made under such Reserve Account Insurance Policy or Reserve Account Letter of Credit, or to undertake a combination of such alternatives.

Section 402. Application of Moneys in Bond Service Account. The Fiscal Agent shall, from time to time, withdraw from the Bond Service Account and (1) remit by mail to each owner of registered bonds or coupon bonds registered as to both principal and interest the amount required for paying interest upon such bonds as such interest becomes due, (2) set aside or deposit in trust with the Paying Agents sufficient moneys for paying the interest on the remaining bonds as such interest becomes due, (3) set aside in trust an amount equal to the amount of, and for the sole and exclusive purpose of paying, the principal of all serial bonds

43

which are registered as such principal becomes due, and (4) deposit in trust with the Paying Agents sufficient moneys for paying the principal of serial bonds not registered as such principal becomes due; provided, that the Fiscal Agent may withdraw the amounts required for paying interest by wire transfer to the extent provided for in the resolution adopted by the Authority authorizing the issuance of the registered bonds. If Paying Agents other than the Fiscal Agent have been designated, the Fiscal Agent will transfer such amounts to the Paging Agents to permit the Paying Agents to comply with the foregoing sentence.

Notwithstanding the foregoing or any other provision herein to the contrary, if any amount applied to the payment of principal of and premium, if any, and interest on the Bonds that would have been paid from the Bond Service Account or the Redemption Account is paid instead under a Credit Facility or a Liquidity Facility, amounts deposited in the Bond Service Account and the Redemption Account, as applicable, and allocable to such payment for said Bonds shall be paid, to the extent required under any agreement with the issuer of the Credit Facility or Liquidity Facility, to the issuer of the Credit Facility or the Liquidity Facility having theretofore made said corresponding payment. The Fiscal Agent shall establish one or more subaccounts within the Bond Service Account and the Redemption Account, to the extent required by a resolution of the Authority, to segregate amounts paid to the issuer of a Credit Facility or a Liquidity Facility and amounts paid from a Credit Facility or a Liquidity Facility.

Section 403.  Application of Moneys in Redemption Account.  Moneys held for the credit of the Redemption Account shall be applied to the retirement of bonds issued under the provisions of this Resolution as follows:

(a)     Subject to the provisions of paragraph (c) of this Section, the Fiscal Agent shall endeavor to purchase bonds secured hereby and then outstanding, whether or not such bonds shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, having regard to interest rate and price, such price not to exceed the principal of such bonds plus the amount of the premium, if any, which would be payable on the next redemption date to the holders of such bonds under the provisions of Article III of this Resolution if such bonds should be called for redemption on such date from moneys in the Sinking Fund. The Fiscal Agent shall pay the interest accrued on such bonds to the date of delivery thereof from the Bond Service Account and the purchase price from the Redemption Account, but no such purchase shall be made within the period of forty-five (45) days next preceding any interest payment date on which such bonds are subject to call for redemption under the provisions of this Resolution except from moneys in excess of the amounts set aside or deposited for the redemption of bonds; provided, however, that the Fiscal Agent shall withhold a sufficient amount of the moneys held for the credit of the Redemption Account to redeem at least $50,000 principal amount of bonds under the provisions of paragraph (b) of this Section unless all of such moneys, as nearly as may be, are applied to the purchase of bonds under the provisions of this paragraph (a).

(b)     Subject to the provisions of paragraph (c) of this Section, the Fiscal Agent shall call for redemption on each interest payment date on which bonds are subject to redemption from moneys in the Sinking Fund such amount of bonds then subject to redemption as, with the redemption premium, if any, will exhaust the Redemption

44

Account as nearly as may be; provided, however, that not less than Fifty Thousand Dollars ($50,000) in principal amount of bonds shall be called for redemption at any one time. Such redemption shall be made pursuant to the provisions of Article III of this Resolution. Not less than thirty (30) days before the redemption date the Fiscal Agent shall withdraw from the Bond Service Account and from the Redemption Account and set aside in separate accounts or deposit with the Paying Agents the respective amounts required for paying the interest on the bonds so called for redemption and the principal of and the redemption premium on such bonds.

(c) Moneys in the Redemption Account shall be applied to the purchase or redemption of bonds in the following order:

*first,* term bonds of each Series, if any, issued under the provisions of Section 207, 208 or 209 of this Resolution, in the order of their issuance, to the extent of the Amortization Requirement, if any, of the then current fiscal year for such term bonds and any deficiency in preceding fiscal years in the purchase or redemption of such term bonds under the provisions of this subdivision; provided, however, that if none of the term bonds of a Series shall be subject to redemption from moneys in the Sinking Fund and if the Fiscal Agent shall at any time be unable to exhaust the moneys applicable to the bonds of any such Series in the purchase of such bonds under the provisions of paragraph (a) of this Section, such moneys or the balance of such moneys, as, the case may be, shall be retained in the Redemption Account and, as soon as it is feasible, applied to the retirement of the bonds of such Series;

*second,* to the purchase of any bonds secured hereby and then outstanding whether or not such bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section;

*third,* term bonds of each Series in proportion (as nearly as practicable) to the aggregate principal amount of the bonds of each such Series originally issued; and

*fourth,* after the retirement of all term bonds, serial bonds issued under the provisions of this Resolution in the inverse order of their maturities, and to the extent that serial bonds of different Series mature on the same date, in proportion (as nearly as practicable) to the principal amount of each Series maturing on such date.

All expenses in connection with such purchase or redemption shall be paid from the Construction Fund.

Upon the retirement of any bonds by purchase or redemption the Fiscal Agent shall file with the Authority a statement briefly describing such bonds, and setting forth the date of their purchase or redemption, the amount of the purchase price or the redemption price of such bonds, and the amount paid as interest thereon.

Section 404. Application of Moneys in Reserve Account. Moneys held for the credit of the Reserve Account shall be used for the purpose of paying interest on the bonds and maturing principal of serial bonds whenever and to the extent that the moneys held for the credit of the Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the Redemption Account pursuant to the requirements of clause (b) of Section 401 of this Resolution whenever and to the extent that the Revenues are insufficient for such purpose.

Any moneys in the Reserve Account in excess of the Reserve Requirement shall, at the option and upon the written direction of the Authority, be transferred to and deposited to the credit of the Construction Fund, the Bond Service Account or the Redemption Account, as the Authority shall direct.

For the purpose of determining the amount on deposit to the credit of the Reserve Account, obligations in which moneys in said Account have been invested shall be valued (a) as to obligations which mature within six months from the date of the valuation thereof, at the purchase price of such obligations, and (b) as to obligations which mature more than six months after the date of the valuation thereof, at the lesser of (i) the purchase price of such obligations, or (ii) the bid quotation thereof on the business day next preceding the date of such valuation as reported in The Wall Street Journal or in the event said newspaper is not published or such price is not reported in said newspaper, in a newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, selected by the Fiscal Agent, or (iii) the price at which such obligations are redeemable by the holder at his option.

Section 405. Certificate to be Filed for Withdrawal from Construction Fund. Before any payment or withdrawal shall be made from moneys in the Construction Fund there shall be filed with the Fiscal Agent a certificate signed by the Executive Director of the Authority or an officer of the Authority designated by him for such purpose setting forth the amount of money to be so disbursed and stating that such money will be used to pay the costs of constructing Traffic Facilities or for other purposes permitted by this Resolution. Upon receipt of such certificate the Fiscal Agent shall withdraw from the Construction Fund and deposit to the credit of a special checking account in its commercial department in the name of the Authority the amount so specified in such certificate. The Fiscal Agent shall also at any time at the written direction of the Executive Director of the Authority transfer any part of the moneys in the Construction Fund to the credit of the Redemption Account.

Section 406. Pledge of Moneys in Bond Service Account, Redemption Account and Reserve Account. Subject to the terms and conditions set forth in this Resolution, moneys held for the credit of the Bond Service Account, the Redemption Account and the Reserve Account shall be held in trust and disbursed by the Fiscal Agent for (a) the payment of interest upon the bonds issued hereunder as such interest falls due, or (b) the payment of the principal of such bonds at their respective maturities, or (c) the payment of the purchase price or redemption price of such bonds, and such moneys are hereby pledged to and charged with the payments mentioned in this Section.

Whenever the total of the moneys held for the credit of the Bond Service Account, the Redemption Account and the Reserve Account shall be sufficient for paying the principal of and

46

the interest accrued on all bonds then outstanding under the provisions of this Resolution and any redemption premium and any amounts needed to pay redemption expenses, such moneys shall be applied by the Fiscal Agent to the payment, purchase or redemption of such bonds.

Section 407. Moneys Set Aside for Principal and Interest Held in Trust; Moneys Unclaimed for Six Years After Maturity of Bonds and Coupons. All moneys which the Fiscal Agent shall have withdrawn from the Sinking Fund or shall have received from any other source and set aside, or deposited with the Paying Agents, for the purpose of paying any of the bonds hereby secured, either at the maturity thereof or upon call for redemption, or for the purpose of paying any maturing coupons appertaining to any of the bonds hereby secured, shall be held in trust for the respective holders of such bonds or coupons. But any moneys which shall be so set aside or deposited by the Fiscal Agent and which shall remain unclaimed by the holders of such bonds or of such coupons for a period of six (6) years after the date on which such bonds or such coupons shall have become payable shall be paid to the Authority or to such officer, board or body as may then be entitled by law to receive the same, and thereafter the holders of such bonds or coupons shall look only to the Authority or to such officer, board or body, as the case may be, for payment and then only to the extent of the amounts so received without any interest thereon, and the Fiscal Agent and the Paying Agents shall have no responsibility with respect to such moneys.

Section 408. Cancellation of Bonds and Coupons Upon Payment. All bonds paid, redeemed or purchased, either at or before maturity, shall be delivered to the Fiscal Agent when such payment, redemption or purchase is made, together with all unmatured coupons, if any, appertaining thereto, and such bonds and coupons shall thereupon be cancelled. All interest coupons shall be cancelled upon their payment and delivered to the Fiscal Agent. The Fiscal Agent shall certify to the Executive Director and to the Treasurer of the Authority the details of all bonds and coupons so cancelled. All bonds and coupons cancelled under any of the provisions of this Resolution shall be destroyed by the Fiscal Agent, which shall execute a certificate of destruction in duplicate, describing the bonds and coupons so destroyed, except that the numbers of the bonds to which such coupons appertain may be omitted unless otherwise directed by the Executive Director, and one executed certificate shall be filed with the Treasurer of the Authority and the other executed certificate shall be retained by the Fiscal Agent.

Section 409. Balance in Funds to Authority When Bonds Paid. After provision shall be made for the payment of all bonds secured hereby and the interest thereon and all expenses and charges herein required to be paid, the Fiscal Agent shall pay any balance in the Sinking Fund and any balance in any other fund then held by it to the Authority.

ARTICLE V.

Depositaries of Moneys, Security for Deposits
and Investment of Funds

Section 501. Deposits Constitute Trust Funds; Security for Deposits. All moneys deposited with the Fiscal Agent under the provisions of this Resolution shall be held in trust and applied only in accordance with the provisions of this Resolution, and shall not be subject to lien or attachment by any creditor of the Authority.

47

All moneys deposited with the Fiscal Agent hereunder shall be continuously secured, for the benefit of the Authority and the holders of the bonds, either (a) by lodging with a bank or trust company approved by the Authority as custodian, as collateral security, Government obligations or other marketable securities eligible as security for the deposit of trust funds under regulations of the Comptroller of the Currency of the United States of America, having a market value (exclusive of accrued interest) not less than the amount of such deposit, or (b) in such other manner as may then be required or permitted by applicable Commonwealth or federal laws and regulations regarding the security for, or granting a preference in the case of, the deposit of trust funds; provided, however, that it shall not be necessary for the Paying Agents to give security for the deposit of any moneys with it for the payment of the principal of or the redemption premium or the interest on any bond issued hereunder, or for the Fiscal Agent to give security for any moneys which shall be represented by obligations purchased under the provisions of this Article as an investment of such moneys.

All moneys deposited with the Fiscal Agent shall be credited to the particular Fund or Account to which such moneys belong.

Section 502.  Investment of Moneys; Investments Deemed to be Part of Fund or Account for Which Purchased; Interest and Profit on Investments to be Credited to Reserve Account and any Loss Charged to Reserve Account.  Moneys held for the credit of the Bond Service Account and the Redemption Account shall, as nearly as may be practicable, be continuously invested and reinvested at the written direction of the Authority in Government Obligations, and moneys held for the credit of the Construction Fund and the Reserve Account shall, as nearly as may be practicable, be continuously invested and reinvested at the written direction of the Authority in Investment Obligations, which Government Obligations and Investment Obligations shall mature, or which shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said Accounts and Fund will be required for the purposes intended; provided, however, that the amounts on deposit in the Reserve Account shall be invested in Investment Obligations which mature not later than the final maturity date of any Bonds Outstanding.

Obligations so purchased as an investment of moneys in said Accounts and Fund shall be deemed at all times to be a part of said Accounts and Fund, and any profit or loss realized on the sale or maturity thereof shall be credited or debited to said Accounts and Fund.  The Fiscal Agent, at the written direction of the Authority, shall sell at the best price reasonably obtainable any obligations so purchased as an investment in any Fund or Account maintained by the Fiscal Agent hereunder whenever it shall be necessary to do so in order to provide moneys to meet any payments or transfers from any such Fund or Account.  Neither the Fiscal Agent nor the Authority shall be liable or responsible for any loss resulting from any such investment; provided that the foregoing shall not be deemed to limit the Authority's obligation to make deposits to the credit of the Fund and Accounts otherwise required in other Sections hereof.

Investment earnings on moneys on deposit to the credit of the Construction Fund and the Bond Service Account, the Redemption Account and the Reserve Account shall be applied as follows:

NY1 5342478v2

(a)    Investment earnings on moneys on deposit to the credit of the Bond Service Account, the Redemption Account and the Construction Fund shall be transferred to the credit of or retained in the Construction Fund; provided that the Authority may elect to have such investment earnings remain to the credit of the Bond Service Account or the Redemption Account to fund the next payment of principal of, Amortization Requirements for and interest on the Bonds, in which event the Authority shall receive a credit against the amounts required to be deposited in either of said Accounts as applicable; and

(b)    Investment earnings on moneys on deposit to the credit of the Reserve Account shall be retained in said Account at any time that the amount on deposit to the credit of said Account is less than the Reserve Requirement and, if moneys on deposit therein are sufficient for such purposes, then such earnings shall be withdrawn and deposited to the credit of the Construction Fund, the Bond Service Account or the Redemption Account, as the Authority shall direct.

Section 503.    In computing the amount in any Fund or Account created pursuant to the provisions of this Resolution, obligations purchased as an investment of moneys therein shall be valued at par if purchased at par or at amortized value if purchased at other than par, plus, in each case, accrued interest. Amortized value, when used with respect to an obligation purchased at a premium above or a discount below par means the value as of any given time obtained by dividing the total premium or discount at which such obligation was purchased by the number of days remaining to maturity on such obligation at the date of such purchase and by multiplying the amount thus calculated by the number of days having passed since such purchase; and (1) in the case of an obligation purchased at a premium by deducting the product thus obtained from the purchase price and (2) in the case of an obligation purchased at a discount by adding the product thus obtained to the purchase price. Valuation on any particular date shall include the amount of interest then earned or accrued to such date on any moneys or investments in such Fund or Account. The computation of the amount held to the credit of the Fund and Accounts created under this Resolution and the valuation of the investments of such amount shall be performed by the Fiscal Agent as of the close of business on the last day of each fiscal year and at such other times as the Authority shall request, and such computation and valuation shall not be required to be performed at other times.

Section 504.    The Authority covenants and agrees that so long as any Bonds remain Outstanding, to the extent permitted by the Constitution and laws of the Commonwealth of Puerto Rico, it shall comply with the requirements of the Code, including any arbitrage rebate covenants contained in any certificate of the Authority or any agreement entered into by and between the Authority and the Fiscal Agent in connection with the issuance of any Series of Bonds, except to the extent failure so to comply would not, in the written opinion of counsel of recognized standing in the field of law relating to municipal bonds, delivered to the Fiscal Agent, result in the interest payable on such Bonds being included in gross income for Federal income tax purposes to the Holders thereof under the Code. Notwithstanding anything to the contrary contained herein or otherwise, the Authority shall not be required to comply with the covenants herein contained to the extent that interest on any Bonds issued hereunder shall be intended by the Authority, on the date of issuance of such Bonds, to be included in gross income for Federal income tax purposes to the Holders thereof under the Code.

49

ARTICLE VI.

Particular Covenants

Section 601.   Payment of Principal, Interest and Premium.  The Authority covenants that it will promptly pay the principal of and the interest on every bond issued under the provisions of this Resolution at the places, on the dates and in the manner provided herein and in said bonds and in any coupons appertaining to said bonds, and any premium required for the retirement of said bonds by purchase or redemption, according to the true intent and meaning thereof. Except as in this Resolution otherwise provided, the principal, interest and premiums are payable solely from Revenues and from any funds received by the Authority for that purpose from the Commonwealth which Revenues and funds are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified.

Section 602.   Pledge of Revenues.  The Authority will not incur any indebtedness nor create or cause or suffer to be created any debt, lien, pledge, assignment, encumbrance or any other charge having a priority to or being on a parity with the lien on Revenues on the Bonds, except upon the conditions and in the manner provided herein; provided that, subject to Section 802(c) of the Resolution, as said Section may be amended from time to time, the Authority may, and is hereby permitted to, enter into agreements with issuers of Credit Facilities or Liquidity Facilities which involve liens on Revenues on a parity with, but not prior to, that of the Bonds.  Any other indebtedness incurred by the Authority after the effective date hereof under documents not in effect on the effective date hereof shall contain a statement that such indebtedness is junior, inferior and subordinate in all respects to the Bonds and agreements with issuers of Credit Facilities or Liquidity Facilities secured on a parity with the Bonds as to lien on and source and security for payment from Revenues hereunder.  For purposes of the above limitation on incurrence of indebtedness, indebtedness shall not be deemed to include contracts entered into in the ordinary course of business or agreements to repay advances received from the Federal government.  Nothing in this Resolution shall be deemed to prohibit the Authority from entering into currency swaps, interest rate swaps or from other arrangements for hedging of interest rates on any indebtedness.

Section 603.   Master Plan for Construction of Traffic Facilities and Priorities Construction Program for Five Year Period; Five Year Priorities Construction Program to be Updated Each Year.  The Authority has adopted a master plan for the construction of required Traffic Facilities in Puerto Rico and a priorities construction program thereof covering the five year period 1968-69 to 1972-73 which has been approved by the Traffic Engineers. The Authority covenants that the master plan will be supplemented periodically as necessary and that the five year priorities construction program will be updated each year to cover the Traffic Facilities to be constructed by the Authority in the ensuing five year period. A copy of each supplement or revision of said master plan and said five year priorities construction program made by the Authority shall be furnished to the Traffic Engineers.

Section 604.   Costs of Maintaining Traffic Facilities to be Paid from Construction Fund if not Paid from General Funds of Commonwealth.  As recited in the preambles hereof the Authority has entered into an agreement with the Secretary of Public Works pursuant to which the Secretary of Public Works has agreed to pay the costs of maintaining, repairing and operating

50

all Traffic Facilities financed by the Authority in whole or in part by the issuance of bonds of the Authority under the provisions of this Resolution, from general funds of the Commonwealth of Puerto Rico which are made available to him for such purpose. The Authority covenants, however, that if and to the extent funds for this purpose are not provided by the Commonwealth of Puerto Rico, the Authority will pay such costs from unencumbered funds then on deposit in the Construction Fund or from the Revenues thereafter deposited to the credit of the Construction Fund pursuant to clause (d) of Section 401 of this Resolution.

The Authority further covenants that it will cause an annual general evaluation to be made by the Traffic Engineers of the level of maintenance of said Traffic Facilities financed in whole or in part by the issuance of bonds under the provisions of this Resolution, which Traffic Facilities shall be, in the judgment of the Authority with the approval of the Traffic Engineers, material to the overall system of traffic facilities operated by the Authority, such evaluation to be directed towards surface and shoulder conditions, condition of all structures and signs on said Traffic Facilities. References in Section 605 to "the Traffic Facilities referred to in Section 604" shall mean those Traffic Facilities which are financed in whole or in part by the issuance of Bonds and which are material, in the judgment of the Authority and the Traffic Engineers, to the overall system of traffic facilities operated by the Authority.

Section 605. Annual Report of Traffic Engineers; Filing of Copies of Report; Repairs Recommended by Report to be Made. The Authority covenants that it will cause the Traffic Engineers to prepare a report each year promptly after the completion of their general evaluation of the level of maintenance of the Traffic Facilities referred to in Section 604 of this Resolution, setting forth (i) their comments with respect to any supplements or revisions made by the Authority in the master plan or in the five year priorities construction program referred to in Section 603 of this Resolution and their recommendations as to any additional supplements or revisions which should be made in such plan or in such priorities program, and (ii) their findings resulting from such general evaluation of the level of maintenance of such Traffic Facilities as to whether such Traffic Facilities have been maintained in good repair, working order and sound condition and their recommendations as to repairs, renewals or replacements which are needed.

A copy of such report shall be filed with the Authority, the Fiscal Agent, the Secretary of Public Works and the Secretary of the Treasury. If it appears from such report that repairs, renewals or replacements of any such Traffic Facilities are necessary the Authority shall promptly cause the same to be made and if and to the extent that funds for such purpose have not been made available by the Commonwealth of Puerto Rico, moneys on deposit to the credit of the Construction Fund which have not theretofore been encumbered for other purposes, and moneys which are thereafter deposited to the credit of said Fund pursuant to clause (d) of Section 401 of this Resolution shall first be applied for such purpose.

Section 606. Annual Statement Concerning Traffic Facilities Program to be Submitted to Legislature, Planning Board and Others by Authority. The Authority shall on or before October 1 of each year submit to the Planning Board, the Director of the Bureau of the Budget, the Secretary of the Treasury, the Fiscal Agent and the Traffic Engineers, a statement setting forth (i) a brief description of the program of traffic facilities to be carried out during the next fiscal year, (ii) its estimate of the total construction cost of such program, (iii) a description of the rights of way which will be needed to carry out such program and the respective dates by

51

which they will be needed, and (iv) the estimated costs of such rights of way and the amount of general funds of the Commonwealth which the Legislature is requested to appropriate for such purpose. The Authority covenants that it will, pursuant to Section 14 of the Enabling Act, file a copy of such statement with the Legislature prior to its next regular session.

Section 607.  Authority to Keep Accurate Records and Accounts; Annual Audit.  The Authority covenants that it will keep accurate records and accounts of all items of cost and of all expenditures relating to the Traffic Facilities and of the Revenues and the application of the Revenues. Such records and accounts shall be open to the inspection of all interested persons.

The Authority further covenants that in the first month of each fiscal year it will cause an audit to be made of its books and accounts relating to the Traffic Facilities financed hereunder by an independent firm of certified public accountants of suitable experience and responsibility. Within a reasonable time thereafter, but not later than 90 days after the beginning of such fiscal year, reports of each such audit shall be filed with the Fiscal Agent and the Government Development Bank for Puerto Rico and copies of such reports shall be mailed by the Secretary of the Authority to the principal underwriters and to each bondholder who shall file his name and address with the Secretary of the Authority for such purpose. Each such audit report shall set forth in respect of the preceding fiscal year:

(a)      the Revenues received by the Authority,

(b)      the deposits or transfers to the credit of and all withdrawals from each special fund or account created under the provisions of this Resolution,

(c)      the details of all bonds paid, purchased and redeemed, and

(d)      the amounts on deposit with the Fiscal Agent at the end of the preceding fiscal year to the credit of each such fund or account and the security held therefor, and showing the details of the investments thereof.

Section 608.  Employment of Traffic Engineers.  The Authority covenants that it will, for the purpose of performing and carrying out the duties imposed on the Traffic Engineers by this Resolution, employ an independent engineer or engineering firm or corporation having a nationwide and favorable repute for skill and experience in such work. The Authority further covenants that before employing any engineer or engineering firm or corporation as Traffic Engineers under this Resolution other than the Traffic Engineers who are now employed by the Authority, it will secure the written approval of the Fiscal Agent.

Section 609.  If the percentage shown in item (vi) of the certificate mentioned in clause (c) of Section 208 filed with the Fiscal Agent in connection with the issuance of any series of Bonds is less than 150%, the Authority covenants that it will not reduce the tolls or other charges imposed by it for the use of its Traffic Facilities such that, as of the effective date of such reduction, the amount of Revenues for any twelve (12) consecutive calendar months out of the fifteen (15) calendar months immediately preceding such effective date, adjusted to reflect the Toll Revenues it would have received, based on the volume of traffic for such twelve (12) months, if such reduction had been in effect for such twelve (12) months, is less than 150% of

52

the maximum Principal and Interest Requirements for any fiscal year thereafter on account of all Bonds then Outstanding.

Section 610. The Authority hereby covenants that it will not enter into a SWAP agreement unless it first delivers copies of the proposed SWAP agreement to Standard and Poor's Corporation, Moody's Investor's Service, Inc. and any other rating agency then rating the bonds.

## ARTICLE VII.

### Concerning the Fiscal Agent

Section 701. <u>Appointment of Fiscal Agent; Acceptance of Duties</u>. The Chase Manhattan Bank (National Association), in the Borough of Manhattan, City and State of New York, is hereby appointed as Fiscal Agent. Prior to the issuance of bonds under the provisions of this Resolution the Authority shall obtain from a duly authorized officer of said bank a written acceptance of the duties, obligations and trusts imposed upon said bank by this Resolution. Said bank shall have only such duties and obligations as are expressly specified by this Resolution and no other duties or obligations shall be implied to said bank.

Section 702. <u>Limitations on Responsibilities of Fiscal Agent</u>. The recitals of fact, statements and representations herein and in the bonds are made by the Authority, and the Fiscal Agent assumes no responsibility in respect thereof. The Fiscal Agent shall not have any responsibility and makes no representation in respect of the validity or sufficiency of this Resolution or of the bonds or of the coupons or the due execution or issuance thereof or in respect of the security afforded by this Resolution and the Fiscal Agent shall not have any responsibility or duty and makes no representation with respect to the issuance of the bonds for value. The Fiscal Agent shall not have any responsibility or duty as to the amount of bonds issued or outstanding at any time and the Fiscal Agent shall have no responsibility, and makes no representation as to whether the signatures on any bond are genuine or as to whether any bond is in the form authorized by the Authority or as to whether any bond is within the amount the Authority is authorized to issue. The Fiscal Agent shall not be under any obligation to see that any duties herein imposed upon the Authority or on any party other than itself, or any covenants herein contained on the part of any party other than itself to be performed shall be done or performed, and the Fiscal Agent shall not be under any obligation for failure to see that any such duties or covenants are so done or performed. The Fiscal Agent shall have no obligation or duty to perform any act which would involve it in expense or liability or to institute or defend any suit in respect hereof, or to advance any of its own moneys, unless properly indemnified to its satisfaction. The Fiscal Agent shall not be liable in connection with the performance of its duties hereunder except for its own negligence or default. The Fiscal Agent shall have no duty, obligation, responsibility or liability to examine the reports or certificates filed with it pursuant to Sections 405, 605, 606 and 607 of this Resolution or to take any action with respect to such reports or certificates or in any other respect whatsoever, except that the Fiscal Agent shall retain such reports or certificates in its possession pursuant to Section 1004 of this Resolution.

Section 703. <u>Fiscal Agent Not Liable for Failure of Authority to Act</u>. The Fiscal Agent shall not be liable or responsible because of the failure of the Authority or any of its employees

53

or agents to make any collections or deposits or to perform any act herein required of them. The Fiscal Agent shall not be responsible for the application of any of the proceeds of the bonds or any other moneys deposited with it which are paid out, withdrawn or transferred in accordance with the provisions of this Resolution. The immunities and exemptions from liability of the Fiscal Agent hereunder shall extend to its directors, officers, employees and agents.

Section 704. Quarterly Statements from Fiscal Agent. It shall be the duty of the Fiscal Agent on or before the 15th day of January, April, July and October of each year to file with the Authority and the Government Development Bank for Puerto Rico a statement setting forth in respect of the preceding three months' period:

(a) the amount deposited with it and the amount withdrawn or transferred by it on account of each fund and account held by it under the provisions of this Resolution,

(b) the amount on deposit with it at the end of each such three months' period to the credit of each such fund and account,

(c) a brief description of all obligations held by it as an investment of moneys in each such fund and account,

(d) the amount, if any, applied to the purchase or redemption of bonds under the provisions of Section 403 of the Resolution and a description of the bonds so purchased or redeemed, and

(e) any other information which the Authority may reasonably request.

Section 705. Fiscal Agent Protected in Relying on Certain Documents. The Fiscal Agent shall be protected and shall incur no liability in acting or proceeding, or in not acting or not proceeding, in good faith, and in accordance with the terms of this Resolution, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other document which it shall in good faith believe to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Resolution. The Fiscal Agent may consult with counsel, who may or may not be counsel to the Authority, or any engineer, consultant or accountant and the written opinion of such counsel, engineer, consultant or accountant shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in accordance therewith. Whenever the Fiscal Agent shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a certificate signed by the Chairman, Executive Director, Secretary or any authorized officer of the Authority; but in its discretion the Fiscal Agent may in lieu thereof accept other evidence of such fact or matter or may require such further or additional evidence as to it may seem reasonable. Except as otherwise expressly provided herein, any request, order, notice, consent or other direction required or permitted to be furnished pursuant to any provision hereof by the Authority to the Fiscal Agent shall be sufficient if executed by the Chairman, Executive Director, Secretary or other authorizers officer of the Authority.

54

Section 706. Resignation of Fiscal Agent. The Fiscal Agent may resign and thereby become discharged from the trusts hereby created, by notice in writing to be given to the Authority and to the principal underwriters and published once in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, not less than sixty (60) days before such resignation is to take effect, but such resignation shall take effect immediately upon the appointment of a new Fiscal Agent hereunder, if such new Fiscal Agent shall be appointed before the time limited by such notice and shall then accept the trusts hereof.

Section 707. Removal of Fiscal Agent. The Fiscal Agent may be removed at any time by an instrument or concurrent instruments in writing, signed by the holders of not less than a majority in principal amount of the bonds hereby secured and then outstanding, and filed with the Authority. A photostatic copy of each such instrument shall be delivered promptly by the Authority to the Fiscal Agent. The Fiscal Agent may also be removed at any time for any breach of trust or for acting or proceeding in violation of, or for failing to act or proceed in accordance with, any provision of this Resolution with respect to the duties and obligations of the Fiscal Agent by any court of competent jurisdiction upon the application of the Authority or the holders of not less than five per centum (5%) in aggregate principal amount of the bonds then outstanding hereunder.

Section 708. Appointment of Successor Fiscal Agent. If at any time hereafter the Fiscal Agent shall resign, be removed, be dissolved, or otherwise become incapable of acting, or if the bank or trust company acting as the Fiscal Agent shall be taken over by any governmental official, agency, department or board, the position of the Fiscal Agent shall thereupon become vacant. If the position of the Fiscal Agent shall become vacant for any of the foregoing reasons or for any other reasons, the Authority shall appoint a Fiscal Agent to fill such vacancy. The Authority shall publish notice of any such appointment by it made once in each week for two (2) successive weeks in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, and shall mail a copy of the notice of appointment to the principal underwriters.

At any time within one year after any such vacancy shall have occurred, the holders of a majority in aggregate principal amount of the bonds hereby secured and then outstanding, by an instrument or concurrent instruments in writing, executed by such bondholders or their attorneys in fact or legal representatives and filed with the Authority, may appoint a successor Fiscal Agent which shall supersede any Fiscal Agent theretofore appointed by the Authority. Photostatic copies of each such instrument shall be delivered promptly by the Authority to the predecessor Fiscal Agent and to the Fiscal Agent so appointed by the bondholders.

If no appointment of a successor Fiscal Agent shall be made pursuant to the foregoing provisions of this Section, the holder of any bond outstanding hereunder or any retiring Fiscal Agent may apply to any court of competent jurisdiction to appoint a successor Fiscal Agent. Such court may thereupon, after such notice, if any, as such court may deem proper and prescribe, appoint a successor Fiscal Agent.

55

Any Fiscal Agent hereafter appointed shall be a bank or trust company having its principal office in the Borough of Manhattan, City, and State of New York, authorized by law to exercise corporate trust powers and subject to examination by federal or state authority, of good standing, and having at the time of its appointment a combined capital and surplus aggregating not less than Twenty-five Million Dollars ($25,000,000).

Section 709.  <u>Vesting of Rights in Successor Fiscal Agent</u>.  Every successor Fiscal Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor, and also to the Authority, an instrument in writing accepting such appointment hereunder, and thereupon such successor, without any further act, shall become fully vested with all the rights, immunities, powers and trusts, and subject to all the duties and obligations, of its predecessors; but such predecessor shall, nevertheless, on the written request of its successor or of the Authority, execute and deliver an instrument transferring to such successor all the rights, immunities, powers and trusts of such predecessor hereunder; and every predecessor Fiscal Agent shall deliver all property and moneys held by it hereunder to its successor. Should any instrument in writing from the Authority be required by any successor Fiscal Agent for more fully and certainly vesting in such Fiscal Agent the rights, immunities, powers and trusts hereby vested or intended to be vested in its predecessor, and such instrument in writing shall and will, on request, be executed, acknowledged and delivered by the Authority.

Notwithstanding any of the foregoing provisions of this Article, any bank or trust company having power to perform the duties and execute the trusts of this Resolution and otherwise qualified to act as Fiscal Agent hereunder with or into which the bank or trust company acting as Fiscal Agent may be merged, consolidated or converted, or to which the assets and business of such bank or trust company may be sold, shall be deemed the successor of the Fiscal Agent.

Section 710.  <u>Compensation and Indemnification of Fiscal Agent and Paying Agents</u>. Subject to the provisions of any contract between the Authority and the Fiscal Agent and Paying Agents, the Authority shall, from Revenues pay to the Fiscal Agent and Paying Agents reasonable compensation for all services rendered by it hereunder and also all its reasonable expenses, charges and other disbursements and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created, and the performance of its powers and duties hereunder, and, from such Revenues or any other funds available therefor, agrees to indemnify and save the Fiscal Agent and Paying Agents harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder. In default of such payment by the Authority, the Fiscal Agent and Paying Agents may deduct the same from any moneys coming into its hands and shall be entitled to a preference in payment over any of the bonds and coupons outstanding hereunder.

Any Fiscal Agent or Paying Agent may become the owner of any bonds and coupons, with the same rights it would have if it were not a Fiscal Agent or Paying Agent.

NY1 5342478v2

## ARTICLE VIII.

### Supplemental Resolutions

Section 801. Restrictions on Adoption of Supplemental Resolutions. The Authority may, from time to time and at any time, adopt such resolutions supplemental hereto as shall not be inconsistent with the terms and provisions hereof (which supplemental resolutions shall thereafter form a part hereof)

(a) to cure any ambiguity or formal defect or omission or to correct any inconsistent provisions or errors in this Resolution or in any supplemental resolution, or

(b) to grant to or confer upon the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the bondholders, or

(c) to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of this Resolution other conditions, limitations and restrictions thereafter to be observed, or

(d) to add to the covenants and agreements of the Authority in this Resolution other covenants and agreements thereafter to be observed by the Authority or to surrender any right or power herein reserved to or conferred upon the Authority, or

(e) to make such changes as may be necessary to adjust the terms hereof so as to facilitate the issuance of Variable Rate Bonds, Capital Appreciation Bonds, Capital Appreciation and Income Bonds, Put Bonds, Extendible Maturity Bonds, Balloon Bonds, Interim Bonds and such other Bonds as may be marketable from time to time; or

(f) to make such changes (other than changes described in clauses (a) through (e) of the proviso to the first sentence of the first paragraph of Section 802 hereof) as may evidence the right and interest herein of an issuer of a Credit Facility or a Liquidity Facility that secures any Series of Bonds.

At least thirty (30) days prior to the adoption of any supplemental resolution for any of the purposes of this Section, the Fiscal Agent shall at the request of the Authority cause a notice of the proposed adoption of such supplemental resolution to be mailed, postage prepaid, to all registered owners of bonds at their addresses as they appear on the registration books and any other bondholders who shall have filed his name and address with the Fiscal Agent for that purpose, and also to Government Development Bank for Puerto Rico. Such notice shall briefly set forth the nature of the proposed supplemental resolution and shall state that copies thereof are on file at the office of the Fiscal Agent for inspection by all bondholders. A failure on the part of the Fiscal Agent to mail the notice required by this Section shall not affect the validity of such supplemental resolution.

Section 802. Consent of Bondholders. Subject to the terms and provisions contained in this Section, and not otherwise, the holders of not less than two-thirds (2/3) in aggregate principal amount of the bonds then outstanding shall have the right, from time to time, anything

57

NY1 5342478v2

contained in this Resolution to the contrary notwithstanding, to consent to and approve the adoption of such resolution or resolutions supplemental hereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in this Resolution or in any supplemental resolution; provided, however, that nothing herein contained shall permit, or be construed as permitting, (a) an extension of the maturity of the principal of or the interest on any bond issued hereunder, or (b) a reduction in the principal amount of any bond or the redemption premium or the rate of interest thereon, or (c) the creation of a lien upon or a pledge of Revenues other than the lien and pledge created by this Resolution, or (d) a preference or priority of any bond or bonds over any other bond or bonds, or (e) a reduction in the aggregate principal amount of the bonds required for consent to such supplemental resolution. Nothing herein contained, however, shall be construed as making necessary the approval by bondholders of the adoption of any supplemental resolution as authorized in Section 801 of this Article.

If at any time the Authority shall determine that it is necessary or desirable to adopt any supplemental resolution for any of the purposes of this Section, the Fiscal Agent at the expense and request of the Authority shall cause notice of the proposed adoption of such supplemental resolution to be published once in each week for two (2) successive weeks in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, and, on or before the date of the first publication of such notice, it shall also cause a similar notice to be mailed, postage prepaid, to all registered owners of bonds at their addresses as they appear on the registration books and all other bondholders who shall have filed their names and addresses with the Fiscal Agent for such purpose. Such notice shall briefly set forth the nature of the proposed supplemental resolution and shall state that copies thereof are on file at the office of the Fiscal Agent for inspection by all bondholders. The Fiscal Agent shall not, however, be subject to any liability to any bondholder by reason of its failure to cause the notice required by this Section to be mailed, and any, such failure shall not affect the validity of such supplemental resolution when consented to and approved as provided in this Section.

Whenever, at any time after the date of the first publication of such notice, the Authority shall obtain an instrument or instruments in writing purporting to be executed by the holders of not less than two-thirds (2/3) in aggregate principal amount of the bonds then outstanding, which instrument or instruments shall refer to the proposed supplemental resolution described in such notice and shall specifically consent to and approve the adoption thereof in substantially the form of the copy thereof referred to in such notice, and the Authority shall deliver to the Fiscal Agent a certificate signed by the Executive Director that the holders of such required percentage of bonds have filed such consents, thereupon, but not otherwise, the Authority may adopt such supplemental resolution in substantially such form, without liability or responsibility to any holder of any bond, whether or not such holder shall have consented thereto.

If the holders of not less than two-thirds (2/3) in aggregate principal amount of the bonds outstanding at the time of the adoption of such supplemental resolution shall have consented to and approved the adoption thereof as herein provided, no holder of any bond shall have any right to object to the adoption of such supplemental resolution, or to object to any of the terms and provisions contained therein or the operation thereof or in any manner to question the propriety of the adoption thereof, or to enjoin or restrain the Authority from adopting the same or from

58

taking any action pursuant to the provisions thereof and such consent shall be binding on the holder giving such consent and upon any subsequent holder whether or not he has notice thereof.

Upon the adoption of any supplemental resolution pursuant to the provisions of this Section, this Resolution shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Resolution of the Authority, the Fiscal Agent and all holders of bonds then outstanding shall thereafter be determined, exercised and enforced in all respects under the provisions of this Resolution as so modified and amended.

Section 803.  Supplemental Resolution Thereafter Part of Resolution.  Any supplemental resolution adopted in accordance with the provisions of this Article shall thereafter form a part of this Resolution, and all of the terms and conditions contained in any such supplemental resolution as to any provision authorized to be contained therein shall be and shall be deemed to be part of the terms and conditions of this Resolution for any and all purposes. In case of the adoption and approval of any supplemental resolution, express reference may be made thereto in the text of any bonds issued thereafter, if deemed necessary or desirable by the Authority.

Section 804.  Modification of Rights or Obligations of Fiscal Agent or any Paying Agent Not to be Made Without Consent; Fiscal Agent Not Responsible for Propriety of Supplemental Resolutions.  No supplemental resolution pursuant to this Article changing, amending or modifying the rights or obligations of the Fiscal Agent or of any Paying Agent may be adopted by the Authority without the written consent of the Fiscal Agent or the Paying Agent affected thereby. The Fiscal Agent shall have no liability, duty, responsibility or obligation with respect to whether any supplemental resolution is authorized or permitted by this Resolution or whether any necessary consent of the holders of bonds has been obtained, or in any other respect whatsoever.

## ARTICLE IX.

### Defeasance

Section 901.  Bondholders' Rights Cease Upon Provision for Payment of Bonds.  If all the Outstanding Bonds shall have been paid or deemed to have been paid as provided below, and provision shall have been made for the payment of all other sums payable hereunder, then and in that case the right, title and interest of the Bondholders hereunder shall cease, terminate and become void, and such Bonds shall cease to be entitled to any, lien, benefit or security under this Resolution; provided that until the Outstanding Bonds have been surrendered and cancelled, said Bonds shall be entitled to the benefits, inter alia, of Sections 205, 206 and 212 hereof and the provisions of Article VII hereof shall continue to apply.  In such event, the Authority shall repeal and cancel this Resolution (except to the extent provided in the immediately preceding sentence) and may apply any surplus in the Sinking Fund and all balances remaining in any other Funds and Accounts other than moneys held for the redemption or payment of Bonds to any lawful purposes of the Authority as the Secretary shall determine.

Any Outstanding Bond shall be deemed to have been paid within the meaning and with the effect expressed in this Section 901 when the whole amount of the principal of, redemption premium, if any, and interest on such Bond shall have been paid or duly provided for and the conditions set forth in clause (c) below have been satisfied or when (a) in case such bond has been called for redemption in accordance with Article III hereof prior to its maturity or the Authority shall have given to the Fiscal Agent irrevocable instructions to give in accordance with the provisions of Section 302 hereof notice of redemption of such bond, (b) there shall have been deposited with the Fiscal Agent, or other appropriate fiduciary institution acting as escrow agent for the Holder of such Bond and other Bonds being defeased and specifically designated for the purpose of defeasance either moneys in an amount which shall be sufficient, or Sufficient Government Obligations, as defined in Section 306 hereof, to pay when due the principal of, redemption premium, if any, and interest due and to become due on such Bond or prior to the redemption date or maturity date thereof, as the case may be, and (c) if such bond shall be a coupon bond, the Fiscal Agent shall within thirty (30) days after such moneys or Sufficient Government Obligations shall have been deposited with it cause a notice signed by the Fiscal Agent to be published once in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, stating that, or if such bond shall be a registered bond without coupons and in the event such Bond does not mature and is not to be redeemed within the next succeeding sixty (60) days, the Authority shall have given the Fiscal Agent irrevocable instructions to give, as soon as practicable, a notice to the Holder of such Bond by first-class mail, postage prepaid, stating that the deposit of moneys or Sufficient Government Obligations mentioned in clause (b) of this paragraph has been made with the Fiscal Agent or other appropriate fiduciary institution acting as escrow agent for the Holder of such Bond, and that such Bond is deemed to have been paid in accordance with this Section and stating such maturity or redemption date upon which moneys are to be available for the payment of the principal of, redemption premium, if any, and interest on such Bond.

Neither the moneys nor Sufficient Government Obligations deposited with the Fiscal Agent or other appropriate fiduciary institution acting as escrow agent pursuant to this Section nor principal or interest payments on any such obligations shall be withdrawn or used for any purpose other than, and shall be held in trust for, the payment of the principal of, redemption premium, if any, and interest on such Bonds.

As to Variable Rate Bonds, the amount required for the interest thereon shall be calculated at the maximum rate permitted by the terms of the provisions of the resolution which authorized the issuance of such Variable Rate Bonds.

Notwithstanding any of the provisions of this Resolution to the contrary, Put Bonds and Extendible Maturity Bonds may only be fully discharged and satisfied either by paying the principal of and interest on said Bonds as they become due and payable or by depositing moneys which shall be sufficient at the time of such deposit to pay when due the maximum amount of principal of, redemption premium, if any, and interest on such Put Bonds and Extendible Maturity Bonds which could become payable to the Holders of such Bonds upon the exercise of any options provided to the Holders of such Bonds and the Authority; provided, however, that if, at the time a deposit is made pursuant to this Section, the options originally exercisable on the

60

Put Bonds and Extendible Maturity Bonds are no longer exercisable, such Bonds shall not be considered Put Bonds or Extendible Maturity Bonds for purposes of this Section.

If any portion of the moneys deposited for the payment of the principal of, redemption premium, if any, and interest on any portion of Bonds is not required for such purpose, the Authority may use the amount of such excess, subject to Section 504 hereof, free and clear of any trust, lien, security interest, pledge or assignment securing said Bonds or otherwise existing under this Resolution.

## ARTICLE X.

### Miscellaneous Provisions

Section 1001. Authority May Finance Traffic Facilities by Obligations Not Secured by Resolution. Nothing in this Resolution expressed or implied shall be construed as preventing the Authority from financing any facilities authorized by the Enabling Act by the issuance of bonds or other obligations which are not secured under the provisions of this Resolution.

Section 1002. Successorship of Authority. All of the covenants, stipulations, obligations and agreements contained in this Resolution shall be deemed to be covenants, stipulations, obligations and agreements of the Authority to the full extent authorized or permitted by law, and all such covenants, stipulations, obligations and agreements shall be binding upon the successor or successors thereof from time to time, and upon any officer, board, commission, authority, agency or instrumentality to whom or to which any power or duty affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law.

Section 1003. Successorship of Paying Agent. Any bank or trust company with or into which any Paying Agent may be merged, consolidated or converted, or to which the assets and business of such Paying Agent may be sold, shall be deemed the successor of such Paying Agent for the purposes of this Resolution. If the position of any Paying Agent shall become vacant for any reason, the Authority shall, within thirty (30) days thereafter, appoint a bank or trust company located in the same city as such Paying Agent to fill such vacancy; provided, however, that if the Authority shall fail to appoint such Paying Agent within said period, the Fiscal Agent shall make such appointment.

Section 1004. Manner of Giving Notice. Any notice, demand, direction, request or other instrument authorized or required by this Resolution to be given to or filed with the Authority or the Fiscal Agent shall be deemed to have been sufficiently given or filed for all purposes of this Resolution:

To the Authority, if and when sent by registered mail, return receipt requested to the Authority, if addressed to the Executive Director of the Authority, San Juan, Puerto Rico;

To the Fiscal Agent, if given or made in writing at the principal office of the Fiscal Agent addressed to the attention of its Corporate Trust Department.

Any notice required or permitted to be mailed hereunder shall be given by first class mail, postage prepaid.

61

All documents received by the Fiscal Agent under the provisions of this Resolution and not required to be redelivered shall be retained in its possession, subject at all reasonable times to the inspection of the Authority, any bondholder and the agents and representatives thereof.

Section 1005. Authority, Fiscal Agents and Bondholders Alone Have Rights Under Resolution. Except as herein otherwise expressly provided, nothing in this Resolution expressed or implied is intended or shall be construed to confer upon any person, firm or corporation other than the Authority, the Fiscal Agent, the Paying Agents and the holders of the bonds issued under and secured by this Resolution any right, remedy or claim, legal or equitable, under or by reason of this Resolution or any provision hereof, this Resolution and all its provisions being intended to be and being for the sole and exclusive benefit of the Authority, the Fiscal Agent, the Paying Agents and the holders from time to time of the bonds issued hereunder.

Section 1006. Effect of Partial Invalidity. In case any one or more of the provisions of this Resolution or of the bonds or coupons issued hereunder shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Resolution or of said bonds or coupons, but this Resolution and said bonds and coupons shall be construed and enforced as if such illegal or invalid provision had not been contained therein. In case any covenant, stipulation, obligation or agreement contained in the bonds or in this Resolution shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement shall be deemed to be the covenant, stipulation, obligation or agreement of the Authority to the full extent permitted by law.

Section 1007. Effect of Covenants. No covenant, stipulation, obligation or agreement contained herein shall be deemed to be a covenant, stipulation, obligation or agreement of any present or future member of the Authority or agent, officer or employee of the Authority in his individual capacity, and neither the members of said Authority nor any official executing the bonds shall be liable personally on the bonds or be subject to any personal liability or accountability by reason of the issuance thereof. This Resolution is adopted with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

Section 1008. Duties of Officers and Agents of Authority. The officers and agents of the Authority are hereby authorized and directed to do all the acts and things required of them by the bonds and this Resolution for the full, punctual and complete performance of all of the terms, covenants, provisions and agreement contained in the bonds and this Resolution.

Section 1009. Repeal of Inconsistent Resolutions. All resolutions and parts thereof, which are in conflict or inconsistent with any provisions of this Resolution are hereby repealed and declared to be inapplicable to the provisions of this Resolution.

Section 1010. Resolution Effective Upon Passage. The provisions of this Resolution shall become effective immediately upon its passage.

PASSED AND ADOPTED JUNE 13, 1968.

NYI 5342478v2