# **EXHIBIT O**



**FINANCIAL SECURITY ASSURANCE®**

## MUNICIPAL BOND INSURANCE POLICY

ISSUER: Puerto Rico Highways and Transportation Authority

BONDS: $188,395,000 in aggregate principal amount of Highway Revenue Refunding Bonds (Series AA) Maturing on July 1, 2026

Policy No.: 200688-N

Effective Date: April 29, 2003

Premium: $5,982,995.00

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

Page 2 of 2
Policy No. 200688-N

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud) whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

Countersignature

By _____

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.
350 Park Avenue, New York, N.Y. 10022-6022

(212) 826-0100

Form 500NY (5/90)

# AGREEMENT REGARDING BOND INSURANCE

THIS AGREEMENT REGARDING BOND INSURANCE, dated as of April 29, 2003, by and between Puerto Rico Highways and Transportation Authority (the "Authority") and JPMorgan Chase Bank, Fiscal Agent (the "Fiscal Agent") under Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended (the "Resolution").

## W I T N E S S E T H:

WHEREAS, the Authority has determined to issue its Puerto Rico Highways and Transportation Authority Highway Revenue Refunding Bonds (Series AA) (the "Series AA Bonds") and to obtain a municipal bond insurance policy (the "FSA Bond Insurance Policy") to be issued by Financial Security Assurance Inc. ("FSA") to secure the payment of the principal of and interest on said Series AA Bonds in the principal amount of $188,395,000 maturing July 1, 2026 and bearing interest at the initial rate of 5% per annum (the "FSA Insured Bonds"), subject to the terms of the FSA Bond Insurance Policy; and

WHEREAS, as a condition to the issuance of the FSA Bond Insurance Policy, FSA has requested that the Authority and the Fiscal Agent agree to certain provisions; and

WHEREAS, the Authority and the Fiscal Agent have agreed to said provisions for the benefit of FSA to induce FSA to issue the FSA Bond Insurance Policy;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants herein set forth, the Authority and the Fiscal Agent hereby agree as follows:

Section 1. Notwithstanding anything to the contrary contained in the Resolution or in Resolution No. 2003-23, adopted by the Authority on April 10, 2003, authorizing the issuance of said Series AA Bonds (the "Authorizing Resolution"), so long as the FSA Bond Insurance Policy shall be in full force and effect with respect to the FSA Insured Bonds, the Authority and the Fiscal Agent hereby agree to comply with the following provisions with the same affect as if such provisions were set forth in the Authorizing Resolution:

(a) Except to the extent otherwise agreed by FSA, funds and accounts pledged to the payment of FSA Insured Bonds shall be invested in Qualified Investments, but only to the extent that each such investment is permitted by the Resolution. Qualified Investments shall conform to the requirements set forth in Appendix A. Qualified Investments shall not include corporate debt other than commercial paper rated in the highest category by the applicable rating agencies.

(b) For purposes of the definition of "Principal and Interest Requirements" in the Resolution, (1) amounts due on bonds payable from an irrevocable escrow shall

only be excluded if held in cash or invested in Defeasance Obligations (as defined in paragraph (k) of this Section) for which a Verification (as defined in paragraph (k) of this Section) has been delivered in accordance with the requirements hereof, (2) a condition to ignoring tender dates on Put Bonds shall be that the credit or liquidity facility has a short term rating of at least "A" by Standard & Poor's and Moody's and (3) annual amounts due to any provider of a credit or liquidity facility or a Reserve Account Insurance Policy or Reserve Account Letter of Credit shall be included in calculating Principal and Interest Requirements.

(c) The Authority shall provide FSA with the following information:

(i) Annual audited financial statements of the Authority within 180 days after the end of the applicable fiscal year (together with an Authority certification to the effect that it is not aware of any material default under the Resolution or, if there is any such default, specifying the nature and extent of such default) and the annual budget within 30 days after the approval thereof;

(ii) The commencement of any proceeding by or against the Authority commenced under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding");

(iii) The making of any claim in connection with any Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment of principal of, or interest on, the Insured Bonds;

(iv) Any official statement prepared in connection with the issuance of additional debt of the Authority, within 30 days after the sale of such debt;

(v) A full original transcript of all proceedings relating to the adoption of any resolution amending or supplementing the Resolution or the Authorizing Resolution;

(vi) All reports, notices and correspondence to be delivered under the terms of the Resolution and the Authorizing Resolution; and

(vii) Such additional information as FSA from time to time may reasonably request.

(viii) Copies of any modifications or amendments (not including resolutions that authorize the issuance of bonds and do not amend the Resolution) to the Resolution or any other related document shall be sent by the Authority to Moody's Investors Service, Inc. or any successors thereto and Standard &

2

NY1 5357255v6

04/28/2003 20:08 7877547532 FIDDLER GONZALEZ ROD PAGE 03

Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. or any successors thereto at least ten (10) days prior to the effective date thereof; and

(d) The Fiscal Agent shall provide FSA with the following information:

    (i) Notice of any failure of the Authority to make any required deposit into the Sinking Fund for the FSA Insured Bonds within two business days of the Fiscal Agent's knowledge thereof;

    (ii) Notice of any draw upon the Reserve Account within two business days after knowledge thereof other than (i) withdrawals of amounts in excess of the Reserve Requirements and (ii) withdrawals in connection with a refunding of bonds;

    (iii) Notice of any default known to the Fiscal Agent within five business days after knowledge thereof;

    (iv) Notice of the advance refunding and redemption of any of the FSA Insured Bonds, including the principal amounts, maturities and CUSIP numbers thereof.

(e) Notice of the optional redemption of FSA Insured Bonds, other than any notice that refers to FSA Insured Bonds that are to be redeemed from proceeds of a refunding bond issue or from amounts to be provided by FSA in its discretion, shall be given to the owners of such Bonds only if sufficient funds have been deposited with the Fiscal Agent to pay the applicable redemption price of the FSA Insured Bonds to be redeemed.

(f) In determining whether there are sufficient funds to provide for the payment of principal of and interest on the FSA Insured Bonds, no effect shall be given to payments made or available under the FSA Bond Insurance Policy.

(g) For all purposes of rights of giving notice, making a request, granting consent and giving direction and exercising remedies under the Authorizing Resolution and the Resolution, FSA shall be deemed to be the sole owner of the FSA Insured Bonds. In addition, with respect to amendments to the Authorizing Resolution and the Resolution that may be made without the consent of the owners of the FSA Insured Bonds, the written consent of FSA shall nonetheless be required if such amendment would adversely affect FSA's interests. In determining whether FSA's interests are adversely affected, the Fiscal Agent shall receive an opinion to that effect of a firm of nationally recognized standing in municipal bond law.

(h) (1) Only cash, direct non-callable obligations of the United States of America or non-callable obligations fully and unconditionally guaranteed as to timely

3

04/28/2003 20:08 7877547532 FIDDLER GONZALEZ ROD PAGE 04

payment of principal and interest by the United States of America ("U.S. Government Obligations") or evidence of ownership of proportionate interests in future interest and principal payments on U.S. Government Obligations held by a bank or trust company as custodian, under which the owner of the investment is the real party in interest and has the right to proceed directly and individually against the obligor and the underlying U.S. Government Obligations are not available to any person claiming through the custodian or to whom the custodian may be obligated, and pre-refunded state and municipal obligations rated "AAA" and "Aaa" by Standard & Poor's and Moody's, respectively (together with U.S. Government Obligations, "Defeasance Obligations") (or any combination thereof) shall be authorized to be used to effect defeasances of the FSA Insured Bonds unless FSA otherwise approves. In the event of an advance refunding of FSA Insured Bonds and prior to the issuance of bonds under the Resolution for such refunding purposes, the Authority shall cause to be delivered, on the deposit date and upon any reinvestment of the defeasance amounts, (i) a report of an independent firm of nationally recognized certified public accountants verifying the sufficiency of the escrow established to pay the FSA Insured Bonds to be refunded (such report being called a "Verification"), (ii) the escrow agreement shall provide that (A) no substitution of a Defeasance Obligation shall be permitted except with another Defeasance Obligation and upon delivery of a new Verification and (B) reinvestment of a Defeasance Obligation shall not be permitted except as contemplated by the original Verification or upon delivery of a new Verification, and (iii) an opinion of a firm of nationally recognized standing in municipal bond law to the effect that the FSA Insured Bonds being refunded are no longer "outstanding" under the Resolution. Each Verification and opinion shall be in form and substance acceptable and addressed to the Authority, the Fiscal Agent and FSA. If a float forward or similar agreement is entered into, such Resolution will be subject to the approval of the FSA and accompanied by such opinions of counsel as may be required by FSA. FSA shall be provided with final drafts of the above-referenced documentation not less than five business days prior to the funding of the escrow or the execution thereof whichever shall be later. Money set aside to pay redeemed FSA Insured Bonds under Section 306 of the Resolution must be invested as provided in this paragraph for such FSA Insured Bonds to be considered not "outstanding" under the Resolution.

2. Amounts in respect of the FSA Insured Bonds paid by FSA under the FSA Bond Insurance Policy shall not be deemed paid for purposes of the Resolution and shall remain outstanding and continue to be due and owing until paid by the Authority in accordance with the Resolution.

3. Notwithstanding payment of the FSA Insured Bonds from amounts made available by FSA, the FSA Insured Bonds shall continue to be deemed "Outstanding" under the Resolution and the Resolution shall not be discharged until all amounts due or to become due to FSA have been paid.

4

NY1 5357255v6

(i) FSA Insured Bonds or portions thereof paid by FSA under the FSA Bond Insurance Policy shall not be deemed paid for purposes of the Resolution and shall continue to be due and owing until paid by the Authority in accordance with the Resolution or the criteria set forth in paragraph (h) above have been met in respect of a defeasance.

(j) All reports, notices and correspondence to be delivered to FSA shall be delivered to FSA at the following address: Financial Security Assurance Inc., 350 Park Avenue, New York, New York 10022-6022, Attention: Managing Director — Surveillance, Policy No. _____-N Telephone: (212) 826-0100; Telecopier: (212) 339-3556. In each case in which notice or other communication refers to a default under the Resolution then a copy of such notice or other communication shall also be sent to the attention of General Counsel and shall be marked to indicate. "URGENT MATERIAL ENCLOSED."

(k) FSA shall be recognized as and have all rights available to it as a third party beneficiary under the Authorizing Resolution and the Resolution.

(l) Rights of FSA to direct or consent to the Authority, Fiscal Agent or bondholder actions under the Resolution shall be suspended during any period in which FSA is in default in its payment obligations under the FSA Bond Insurance Policy (except to the extent of amounts previously paid by FSA and due and owing to FSA) and shall be of no force or effect in the event the FSA Bond Insurance Policy is no longer in effect or FSA asserts that the FSA Bond Insurance Policy is not in effect.

(m) A Reserve Account Insurance Policy or Reserve Account Letter of Credit shall meet the then applicable criteria of FSA prior to the deposit thereof in the Reserve Account. The prior written consent of FSA shall be required prior to the deposit of any other credit instrument into the Reserve Account other than one which matures no earlier than the final stated maturity of the Insured Bonds and is rated by Standard & Poor's Ratings Services and Moody's Investors Service in their highest long-term rating category.

(n) The following sets forth the procedures for claims upon the FSA Bond Insurance Policy and payments thereunder by FSA:

    A. If, on the third business day prior to the related scheduled interest payment date or principal payment date ("Payment Date"), there are not on deposit with the Fiscal Agent amounts sufficient to pay the principal of and interest on the FSA Insured Bonds due on such Payment Date, the Fiscal Agent shall give notice to FSA and to its designated agent (if any) ("FSA's Fiscal Agent") by telephone, facsimile or telecopy of the amount of such deficiency by 12:00 noon, New York City time, on such business day. If, on the second business day prior to the related Payment Date, there

continues to be a deficiency in the amount available to pay the principal of and interest on the FSA Insured Bonds due on such Payment Date, the Fiscal Agent shall make a claim under the FSA Bond Insurance Policy and give notice to FSA and FSA's Fiscal Agent (if any) by telephone of the amount of such deficiency, and the allocation of such deficiency between the amount required to pay interest on the FSA Insured Bonds and the amount required to pay principal of the FSA Insured Bonds, confirmed in writing to FSA and FSA's Fiscal Agent by 12:00 noon, New York City time, on such second business day by filling in the form of Notice of Claim and Certificate delivered with the FSA Bond Insurance Policy.

B. The Fiscal Agent shall establish a separate special purpose trust account for the benefit of the owners of the FSA Insured Bonds referred to herein as the "Policy Payments Account" and over which the Fiscal Agent shall have exclusive control and sole right of withdrawal. The Fiscal Agent shall deposit any amount paid under the FSA Bond Insurance Policy in the Policy Payments Account and distribute such amount only for purposes of making the payments for which a claim was made. Such amounts shall be disbursed by the Fiscal Agent to the owners of FSA Insured Bonds in the same manner as principal and interest payments are to be made with other funds with respect to the FSA Insured Bonds under the sections of the Resolution or the Authorizing Resolution regarding payment of FSA Insured Bonds.

It shall not be necessary for such payments to be made by check or wire transfers separate from the check or wire transfer used to pay debt service with other funds available to make such payments. Notwithstanding anything to the contrary set forth in the Resolution, and to the extent permitted by law, in the event amounts paid under the FSA Insurance Policy are applied to claims for payment of principal of or interest on the FSA Insured Bonds, interest on such principal of and interest on the FSA Insured Bonds shall accrue and be payable from the date of such payment at the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank or its successors at its principal office in The City of New York, as the prime or base lending rate plus 3% and (ii) the then applicable rate of interest on the FSA Insured Bonds; provided, however, that in no event shall such rate exceed the maximum rate permissible under applicable usury or other laws limiting interest rates. However, the amount of any payment of principal of or interest on the FSA Insured Bonds to be paid from the Policy Payments Accounts shall be noted as provided in paragraph D. below. Funds held in the Policy Payments Account shall not be invested by the Fiscal Agent.

6

NY1 5357255v6

In the event FSA Insured Bonds are subject to mandatory redemption, upon receipt of the moneys due, affected owners of FSA Insured Bonds shall surrender their FSA Insured Bonds to the Fiscal Agent, and the Fiscal Agent shall authenticate and deliver to such owners new FSA Insured Bonds in an aggregate principal amount equal to the unredeemed portion of the FSA Insured Bonds surrendered. Upon maturity and receipt of the moneys due, the owners of the affected FSA Insured Bonds shall surrender their FSA Insured Bonds to the Fiscal Agent for cancellation. The Fiscal Agent shall designate any portion of payment of principal of FSA Insured Bonds paid by FSA, whether by virtue of mandatory redemption or maturity or other advancement of maturity, on its books as a reduction in the principal amount of FSA Insured Bonds registered to the then current owner, whether DTC or its nominee or otherwise, and shall issue a replacement bond to FSA, registered in the name of Financial Security Assurance Inc., in a principal amount equal to the amount of principal so paid (without regard to authorized denominations); provided that the Fiscal Agent's failure so to designate any payment or issue any replacement bond shall have no effect on the amount of principal or interest payable by the Authority on any such bond or the subrogation rights of FSA.

C. Any funds received by the Fiscal Agent as a result of any claim under the FSA Bond Insurance Policy shall be received by the Fiscal Agent as an agent of the owners of FSA Insured Bonds and shall be applied by the Fiscal Agent, subject to being held in trust for the owners of FSA Insured Bonds, together with the funds, if any, available under the Resolution, directly to the payment in full of the principal and interest due on the FSA Insured Bonds (including FSA Insured Bonds held for the Fiscal Agent's own account). Notwithstanding Section 902 of the Resolution, funds received by the Fiscal Agent as a result of any claim under the FSA Bond Insurance Policy shall be deposited by the Fiscal Agent in the Policy Payments Account and used solely for payment to the owners of FSA Insured Bonds and may not be applied to satisfy any costs, expenses or liabilities of the Fiscal Agent. Any funds remaining in the Policy Payments Account following a Payment Date shall promptly be remitted to FSA except for funds held for the payment of FSA Insured Bonds pursuant to any provisions of the Resolution governing unclaimed funds, provided that if under Commonwealth law unclaimed moneys should escheat, such moneys shall be returned to FSA.

D. The Fiscal Agent shall keep a complete and accurate record of all funds deposited by FSA into the Policy Payments Account and the allocation of such funds to payment of interest on and principal paid in respect of any FSA Insured Bond. FSA shall have the right to inspect such records at

E. reasonable times during the Fiscal Agent's normal business hours upon one business day's prior notice to the Fiscal Agent.

E. Subject to and conditioned upon payment of any interest or principal with respect to the FSA Insured Bonds by or on behalf of FSA, the Fiscal Agent hereby assigns to FSA, but only to the extent of all payments made by FSA, all rights to the payment of interest on or principal of the FSA Insured Bonds, including, without limitation, any amounts due to the owners of the FSA Insured Bonds in respect of securities law violations arising from the offer and sale of the Bonds, which are then due for payment. FSA may exercise any option, vote, right, power or the like with respect to the FSA Insured Bonds to the extent it has made a principal payment pursuant to the FSA Bond Insurance Policy. The foregoing assignment is in addition to and not in limitation of, rights of subrogation otherwise available to FSA in respect of such payments. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by FSA to effectuate the purpose or provisions of this paragraph E. The Fiscal Agent agrees that FSA shall be subrogated to all of the rights to payment of the owners of the FSA Insured Bonds or in relation thereto to the extent that any payment of principal or interest was made to such owners with payments made under the FSA Bond Insurance Policy by FSA.

F. The Fiscal Agent shall promptly notify FSA of either of the following as to which it has actual knowledge: (i) the commencement of any proceeding by the Authority under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") and (ii) the making of any claim in connection with any Insolvency Proceeding seeking the avoidance as a preferential transfer (a "Preference Claim") of any payment of principal of or interest on any FSA Insured Bonds. Each owner of FSA Insured Bonds, by its purchase of FSA Insured Bonds, and the Fiscal Agent and the Authority hereby agree that FSA shall have the rights of the owners of the FSA Insured Bonds, at any time during the continuation of any Insolvency Proceeding, to direct all matters in respect of the FSA Insured Bonds relating to such Insolvency Proceeding, including, without limitation, (i) all matters relating to any Preference Claim, (ii) the direction of any appeal of any order relating to any Preference Claim and (iii) the posting of any surety, supersedes or performance bond pending any such appeal. In addition, and without limiting the foregoing, FSA shall be subrogated to the rights of each owner of FSA Insured Bonds in any Insolvency Proceeding to the extent it is subrogated pursuant to paragraph G. below, including, without limitation, any rights of any party to an adversary proceeding action with

8

G. FSA shall, to the extent it makes any payment of principal of or interest on the FSA Insured Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the FSA Bond Insurance Policy.

respect to any court order issued in connection with any such Insolvency Proceeding.

H. FSA shall have the right to advance any payment required to be made by the Authority in order to prevent an event of default under the Resolution, and the Fiscal Agent shall be required to accept such advance. The Authority shall be required to reimburse FSA for any such advance.

I. The rights granted to the owners of FSA Insured Bonds to request, consent to or direct any action are rights granted to FSA in consideration of its issuance of the FSA Bond Insurance Policy. Any exercise by FSA of such rights is merely an exercise of FSA's contractual rights and shall not be construed or deemed to be taken for the benefit or on behalf of the owners of FSA Insured Bonds nor does such action evidence any position of FSA, positive or negative, as to whatever consent of an owner of FSA Insured Bonds is required to consent of FSA. The obligations to FSA shall survive the discharge or termination of the Resolution.

J. The Authority hereby agrees to pay or reimburse FSA for any and all charges, fees, costs and expenses which FSA may reasonably pay or incur, including, but not limited to, reasonable fees and expenses of attorneys, accountants, consultants and auditors and reasonable costs of investigations, in connection with (i) the administration, enforcement, defense or prevention of any rights in respect of the Resolution or the Authorizing Resolution, including defending, monitoring or participating in any litigation or proceeding (including any bankruptcy proceeding in respect of the Authority or any affiliate thereof) relating to the Resolution or the Authorizing Resolution, any party to the Resolution or the transactions contemplated by the Resolution or the Authorizing Resolution (the "Transaction"), (ii) the pursuit of any remedies under the Resolution or the Authorizing Resolution, or (iii) any amendment, waiver or other action with respect to, or related to, the Resolution or the Authorizing Resolution whether or not executed or completed. Costs and expenses shall include a reasonable allocation of compensation and overhead attributable to time of employees of FSA spent in connection with the actions described in clauses (i) – (iii) above; and FSA reserves the right to charge a reasonable fee as a condition to granting its consent in accordance with the terms of this Agreement to any amendment, waiver or

9

K.     consent proposed in respect of the Resolution or the Authorizing Resolution.

K.     In addition to any and all rights of reimbursement, subrogation and any other rights pursuant hereto or under law or in equity, the Authority (to the extent permitted by law) agrees to pay or reimburse FSA for any and all charges, fees, costs, claims, losses, liabilities (including penalties), judgments, demands, damages, and expenses which FSA or its officers, directors, shareholders, employees, agents and each person, if any, who controls FSA within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended, may reasonably pay or incur, including, but not limited to, fees and expenses of attorneys, accountants, consultants and auditors and reasonable costs of investigations, of any nature in connection with, in respect of or relating to the Transaction by reason of:

(i)     any omission or action (other than of or by FSA) in connection with the offering, issuance, sale, remarketing or delivery of the FSA Insured Bonds;

(ii)     the negligence, bad faith, willful misconduct, misfeasance, malfeasance or theft committed by any director, officer, employee or agent of the Authority in connection with the Transaction;

(iii)     the violation by the Authority of any law, rule or regulation, or any judgment, order or decree applicable to it relating to the Transaction;

(iv)     the breach by the Authority of any representation, warranty or covenant under the Resolution or the Authorizing Resolution; or

(v)     the making of any untrue statement or alleged untrue statement of a material fact contained in any Official Statement or any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading, except insofar as such claims arise out of or are based upon any untrue statement or omission in information included in an Official Statement and furnished by FSA in writing expressly for use therein.

L.     Payments required to be made pursuant to paragraphs (J) and (K) above shall be payable solely from unencumbered moneys constituting revenues held to the credit of the Construction Fund (as defined in Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended), subject to their application in accordance with said Resolution No. 98-06.

10

04/28/2003 20:08 7877547532 FIDDLER GONZALEZ ROD PAGE 11

M.  FSA shall be entitled to pay principal of or interest on the FSA Insured Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer (as such terms are defined in the FSA Bond Insurance Policy) whether or not FSA has received a Notice of Nonpayment (as defined in the FSA Bond Insurance Policy) or a claim upon the FSA Bond Insurance Policy.

(o) Notwithstanding any general discretion given to the Fiscal Agent under the Resolution in the application of funds, the Fiscal Agent shall liquidate Investment Obligations in the Sinking Fund attributable to the FSA Insured Bonds and apply amounts credited to such Fund in respect thereof to the payment of debt service on any Payment Date for the FSA Insured Bonds.

(p) On July 10 of each year, the Authority will obtain from the Fiscal Agent lists of the securities in which Fiscal Agent-held funds are invested and the cash balances held in all such funds under the Resolution. In addition, the Authority will obtain from the Fiscal Agent lists of remaining securities and cash balances in the Reserve Account established under the Resolution upon any withdrawal of amounts in said Account. Such lists shall include each investment in each fund or account on each such date and the then current ratings by Standard & Poor's and Moody's on any such securities. If on any such date, a security shall cease to meet the criteria for investment under the Resolution, the Authority shall cause the Fiscal Agent to liquidate such investment if the market value of such investment, aggregated with other non-conforming investments, exceeds ten percent (10%) of the amount required to be in the applicable fund or account, except to the extent FSA otherwise agrees.

Promptly upon receipt of any such list, the Authority shall cause a valuation of such securities on each date. If on any date of valuation, due to market fluctuations, the value of the securities, exclusive of accrued interest, when added to remaining cash balances in the Reserve Account, is less than the amount required to be in such Account, the Authority will cure the deficiency by making sixty (60) equal monthly deposits to the Reserve Account.

(q) (i) Unless FSA otherwise directs, upon the occurrence and continuance of an event under the Resolution which constitutes a material violation by the Authority of its obligations and covenants thereunder, including any non-payment of bonds outstanding thereunder (each, a "Default Event"), bond proceeds shall not be disbursed or expended except for the payment of debt service or redemption price of such bonds.

(ii) Notwithstanding satisfaction of other conditions to the issuance of additional bonds contained in the Resolution, no such issuance may occur should any Default Event have occurred and be continuing unless such Default Event shall be cured upon such issuance.

11

NY1 5357255v6

(r) Unless FSA consents otherwise, "Revenues" for the purposes of the additional bonds test in Section 208 of the Resolution must be revenues of and originating in the Commonwealth of Puerto Rico, not subject to appropriation or impairment by the Commonwealth, and in effect until all Insured Bonds have been paid; provided, however, that "Revenues" as of the date of issuance of the Insured Bonds or any revenues of the character of "Revenues" as of the date of issuance of the Insured Bonds shall not require such consent. Federal grant revenues may not be included as "Revenues" for purposes of the additional bonds test in Section 208 of the Resolution without FSA's consent.

(s) The Authority shall not enter into any contract or take any action by which the rights of FSA or security for or sources of payment of the Insured Bonds would be impaired in any material respect other than any issuance of indebtedness in accordance with the terms of the Resolution except upon obtaining the prior written consent of FSA.

(t) No amendment to this Agreement will become effective until it has been consented to in writing by FSA.

Section 2. The form of the FSA Insured Bonds shall include the following statement of insurance:

## STATEMENT OF INSURANCE

Financial Security Assurance Inc. ("Financial Security"), New York, New York has delivered its municipal bond insurance policy with respect to the scheduled payments due of principal of and interest on Puerto Rico Highways and Transportation Authority Highway Revenue Refunding Bonds (Series AA) $188,395,000 aggregate principal amount of the Series AA Bonds maturing July 1, 2026 (the "Insured Bonds") to JPMorgan Chase Bank, New York, New York, or its successor, as fiscal agent for the Insured Bonds (the "Fiscal Agent"). Said Policy is on file and available for inspection at the principal office of the Fiscal Agent and a copy thereof may be obtained from Financial Security or the Fiscal Agent.

Section 3. Capitalized Terms. Capitalized terms used herein without definition shall have the meanings given to them in the Resolution, unless the context otherwise requires.

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority and JPMorgan Chase Bank, as Fiscal Agent, have caused this Agreement Regarding Bond Insurance to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
Executive Director

JPMORGAN CHASE BANK,
as Fiscal Agent,

By: _____
Vice President

13

NY1 5357255v6

## QUALIFIED INVESTMENTS

THESE ARE BROAD GUIDELINES BASED ON S&P PARAMETERS. OTHER INVESTMENTS DESIRED BY THE OBLIGOR MAY BE INCLUDED IN THE INDENTURE SUBJECT TO FSA APPROVAL

1. Direct obligations (other than an obligation subject to variation in principal repayment) of the United States of America ("United States Treasury Obligations"), (b) obligations fully and unconditionally guaranteed as to timely payment of principal and interest by the United States of America, (c) obligations fully and unconditionally guaranteed as to timely payment of principal and interest by any agency or instrumentality of the United States of America when such obligations are backed by the full faith and credit of the United States of America, or (d) evidences of ownership of proportionate interests in future interest and principal payments on obligations described above held by a bank or trust company as custodian, under which the owner of the investment is the real party in interest and has the right to proceed directly and individually against the obligor and the underlying government obligations are not available to any person claiming through the custodian or to whom the custodian may be obligated. **THESE MAY CONSTITUTE DEFEASANCE OBLIGATIONS.**

2. Federal Housing Administration debentures.

3. The listed obligations of government-sponsored agencies which are not backed by the full faith and credit of the United States of America:

    -Federal Home Loan Mortgage Corporation (FHLMC)
      Participation certificates (excluded are stripped mortgage securities which are purchased at prices exceeding their principal amounts)
      Senior Debt obligations
    -Farm Credit Banks (formerly: Federal Land Banks, Federal Intermediate Credit Banks and Banks for Cooperatives)
      Consolidated system-wide bonds and notes
    -Federal Home Loan Banks (FHL Banks)
      Consolidated debt obligations
    -Federal National Mortgage Association (FNMA)
      Senior debt obligations
      Mortgage-backed securities (excluded are stripped mortgage securities which are purchased at prices exceeding their principal amounts)
    -Student Loan Marketing Association (SLMA)
      Senior debt obligations (excluded are securities that do not have a fixed par value and/or whose terms do not promise a fixed dollar amount at maturity or call date)
    -Financing Corporation (FICO)
      Debt obligations