# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                        Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**URGENT JOINT MOTION BY THE DRA PARTIES REQUESTING THAT THE OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CLAIM OF GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO BE SUBJECT TO THE ORDER REGARDING STAY AND MANDATORY MEDIATION**

**COME NOW** AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds that the DRA issued pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018, and the approved Qualifying Modification for the Government Development Bank for Puerto Rico (the "GDB") [2] under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act* (the "Collateral Monitor", and together with the Servicer, collectively, the

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

[2] *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS) (Nov. 7, 2018).

"DRA Parties"), by and through their respective undersigned legal counsel, and respectfully request that the *Objection of Official Committee of Unsecured Creditors to Claim of Government Development Bank for Puerto Rico against Commonwealth of Puerto Rio [Claim Number 29,485]* (the "Objection") (Dkt. No. 8000) be included in the mediation imposed by the Court in its *Order Regarding Stay and Mandatory Mediation* (the "Mediation Order") (Dkt. No. 8244).

## I. PRELIMINARY STATEMENT

The Court entered the Mediation Order staying a broad scope of litigation, and subjecting numerous parties to a mandatory mediation process, with clear objectives in mind: the avoidance of piecemeal litigation on overlapping issues and the development of a process to bring this Title III proceeding closer to confirmation of a consensual plan of adjustment. To accomplish these goals, the Court gave the Mediation Team broad authority on a wide range of topics in this case.

While not listed in Appendix 1 to the Mediation Order, the Objection filed by the Official Committee of Unsecured Creditors for the Commonwealth of Puerto Rico (the "UCC") falls squarely within the scope and matters envisioned by the Mediation Order: (i) it raises arguments and seeks relief mirrored by other adversary complaints already subject to the stay and mandatory mediation process; (ii) it addresses issues that are integral to confirmation of a plan of adjustment, mainly the claims allowance process; and (iii) it deals with significant issues related to parties already slated to play meaningful roles in the mediation process. Because of this, and given the Mediation Order's breadth, the DRA Parties respectfully request that the Court make the UCC's Objection subject to the Mediation Order.

## II. JURISDICTION, VENUE, AND STATUTORY BASES

The Court has jurisdiction over this motion pursuant to section 306(a) of PROMESA. Venue is proper in this district pursuant to section 307(a) of PROMESA. The statutory basis for

2

the relief sought herein is section 105 of the Bankruptcy Code as made applicable to these Title III cases by virtue of section 301(a) of PROMESA.

### III. BACKGROUND

**A) The GDB Proof of Claim**

1. The FOMB commenced a Title III case under PROMESA for the Commonwealth on May 3, 2017. *See Title III Petition for the Commonwealth of Puerto Rico*, Dkt. No. 1 of Case No. 17-03283 (LTS). On May 25, 2018, GDB filed Proof of Claim No. 29,485 in the amount of not less than $2,231,033,108.00 (the "GDB Claim").

**ii. GDB Files for Title VI and the Creation of the DRA and PET**

2. On August 10, 2018, GDB and AAFAF initiated a proceeding to restructure GDB's debts under Title VI of PROMESA. *See* Dkt. No. 1 of Civil Case No. 18-01561 (LTS) at ¶ 18 (Aug. 10, 2018).

3. Pursuant to GDB's Title VI restructuring, the FOMB certified GDB's Qualifying Modification under PROMESA on November 5, 2018. The Court certified the Qualifying Modification on November 7, 2018 (the "Certification Order"). *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS). The Closing Date (as defined in the Certification Order) occurred on November 29, 2018. *See* Dkt. No. 276 of Civil Case No. 18- 01561 (LTS).

4. The *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017 (as amended by Act No. 147-2018) was enacted to facilitate the restructuring of GDB's indebtedness under the Qualifying Modification, and it created the DRA and the GDB Public Entity Trust (the "PET") as statutory public trusts and governmental instrumentalities of the Commonwealth. *See* Act No. 109-2017 at Arts. 201 and 204.

3

5. As part of this process, the GDB and the DRA entered into a Master Transfer Agreement on November 29, 2018 (the "Master Transfer Agreement"). Pursuant to the Master Transfer Agreement, the GDB transferred certain of its assets to the DRA (the "Transferred Assets"), which DRA has the obligation to receive and liquidate such assets to satisfy the DRA's obligations under the new bonds it issued. *See* Act No. 109-2017 at Arts. 204 and 207.

6. In addition, upon the Closing Date, GDB executed a Deed of Constitution of Trust (GDB Public Entity Trust) (the "Public Entity Deed of Trust") whereby GDB transferred the Public Entity Trust Assets (as defined in the Public Entity Deed of Trust) to the PET.

### ii. The GDB Claim is Transferred to the DRA and the PET

7. On January 29, 2019, Servicer filed a *Motion to Inform Transfer of Claim* in which it submitted its *Transfer of Claim other than for Security* with regards to GDB's Claim (the "Informative Motion" and "Transfer Notice," respectively). See, Dkt. No. 4970.

8. On March 13, 2019, Servicer and the PET filed a joint motion (Dkt. No. 5628) to correct the Informative Motion and Transfer Notice in order to clarify that, consistent with the Master Transfer Agreement and the Public Entity Deed of Trust, the GDB Claim is allocated to the DRA and the PET as follows:

   a. DRA - $527,581,425.65 corresponding to the notes, loans and relationships identified at page 7 of Dkt. No. 5628; and

   b. PET - $1,210,506,067.03 corresponding to the notes, loans and relationships identified at pages 9-10 of Dkt. No. 5628.

### B) The UCC Files the Objection to Claim

9. On July 15, 2019, the UCC filed its Objection seeking the disallowance of the GDB Claim under sections 502(d) and 502(b)(1) of the Bankruptcy Code, as well as the avoidance of

4

the liens securing the GDB Claim pursuant to section 506(d) of the Code. *See* 11 U.S.C. §§ 502(b)(1), 502(d), and 506. *See* Dkt. No. 8000.

10. The UCC purports to have the necessary authority to pursue the Objection under the terms of the Stipulation entered between it, the GDB, AAFAF and the FOMB in the Title VI case on October 4, 2018, which Stipulation was approved on October 9, 2018. *See* Dkt. No. 187 of Civil Case No. 18- 01561 (LTS). *See also* Dkt. No. 8000 at ¶¶ 11 – 13.

### C) The Court Issues the Mediation Order

11. The Court entered the Mediation Order during the July 24, 2019 Omnibus Hearing. *See* Dkt. No. 8244. As a lead-up to it, the Court recognized the numerous litigation and disputed matters that are pending in the Title III cases, as well as the need for a coordinated and orderly resolution of the same.

12. The Court issued the Mediation Order "to avoid piecemeal litigation of potentially overlapping key issues, and in an effort **to identify efficiently the issues that must be litigated or otherwise resolved to achieve confirmation of a plan of adjustment for the Commonwealth**…as well as to prioritize such issues and develop efficient approaches to the resolution of such issues". *Id.* at p. 1 (emphasis added). To accomplish this, the Mediation Order stays various contested matters and adversary proceedings (listed at Appendix I) until November 30, 2019, and creates a mandatory mediation process.

### D) The Parties Negotiate a Briefing Schedule and a Hearing Date

13. The UCC filed its Objection without a required hearing notice or any response date or other proposed scheduling as required by the *Tenth Amended Notice, Case Management and Administrative Procedures*. *See* Dkt. No. 8027-1 at ¶ I(C). Shortly after the filing of the Objection, and prior to the entry of the Mediation Order, the UCC, the DRA Parties, GDB, and the PET

5

discussed a consensual scheduling order pertaining to the Objection. The entry of the Mediation Order occurred during this process.

14. Subsequent to entry of the Mediation Order, the DRA Parties requested that the UCC consent to include the Objection in the stay and mandatory mediation process, consistent with this Court's desire to have a coordinated litigation processes.

15. The UCC rejected this request and sought to move forward with the scheduling the parties had previously discussed. The DRA Parties worked with the UCC to determine a potential scheduling process. However, after examining that potential calendar, the DRA Parties concluded that this matter best belonged in the mediation, thus requesting that counsel file this motion. The DRA Parties' and their counsel then notified counsel to the UCC of their intention to do so.

## IV. THE COURT SHOULD MOVE THE OBJECTION TO MEDIATION

16. The Court should include the UCC's Objection to the GDB Claim in the mediation process for several reasons. First, the Mediation Order does not exclude other matters from mediation and this Court has shown a desire to add other significant issues to the Mediation.

17. For instance, during the July 24, 2019 Omnibus Hearing, the parties subject to the contested matters surrounding the *Ambac Assurance Corporation's Motion and Memorandum of Law in Support of Its Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* (Dkt. No. 7176) and *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* (Dkt. No. 7328) (jointly, the "Ambac Motions") included the Ambac Motions as part of Appendix I to the Mediation Order due the overlap between the Mediation Order's scope and the issues pending consideration in the Ambac Motions. *See* July 24, 2019 Hr'g Tr. at 108:15-19.

18. Likewise, on August 15, 2019, AAFAF, FOMB, and the DRA Parties entered into a stipulation to subject *The DRA Parties' Motion and Memorandum of Law in Support of Their Motion for Relief from the Automatic Stay, or in the Alternative, Ordering Payment of Adequate Protection* (Dkt. No. 7643) to the stay and mandatory mediation of the Mediation Order, and to add this contested matter to Appendix I of the Mediation Order. *See* Dkt. 8479. The stipulation was approved on August 16, 2019. *See* Dkt. No. 8481.

19. Second, the UCC and the DRA Parties are already party to the mediation and, upon information and belief, the GDB and the PET have requested inclusion in the mediation process. Failing to address the Objection, a significant economic issue between the UCC and the DRA Parties, through the mediation will leave uncertainty among the parties, compromising the efficiency of the mediation process.

20. Third, the UCC's arguments for disallowance of the GDB Claim under section 502(d) of the Bankruptcy Code mirror the same contentions and causes of actions asserted by the Special Claims Committee of the FOMB and the UCC for avoidance of certain transfers and/or claims of those defendants in a number of the adversary proceedings included in the Mediation Order.[3] *See* Dkt. 8244-1 at p. 2. Many of these issues will be addressed in the mediation process and litigating the Objection on a separate track will create the piecemeal litigation approach the Court hoped to avoid with the Mediation Order. *See* July 24, 2019 Hr'g Tr. at 55:20-24 ("Litigation in separate silos would be an inefficient use of judicial and debtor resources."); *id.* at 82: 21-24 ("The intention is to stay the matters trying to construct procedures and particular silos so that there can be a look at things on a more crosscutting basis.").

---

[3] Such as 19-AP-280; 19-AP-281; 19-AP-282; 19-AP-283; 19-AP-284; 19- AP-285; 19-AP-286; 19-AP-287; 19-AP-288; 19-AP-355; 19-AP-356; 19-AP-357; 19-AP-358; 19-AP-359; 19- AP-360; and 19-AP-361, all of which are included in Appendix I to the Mediation Order.

7

21. Finally, addressing the Objection in mediation will facilitate resolution of the Commonwealth's debt adjustment plan, which is the crux of its Title III proceeding. *See* In re Galindez, 514 B.R. 79, 86 (Bankr. D.P.R. 2014) (determination on the allowance of a claim is indispensable for purposes of confirming a plan). Cognizant of the importance and over-arching effect that the disclosure statement and plan of adjustment will have on the resolution of the Title III cases, the Court provided the Mediation Team with broad authority to address and resolve virtually all plan-related issues. *See eg.* Dkt. No. 8244 at ¶¶ A(3); A(4); B(6); B(8); B910(a); and C.

22. The Objection, therefore, should be subject to the terms of the Mediation Order so that parties can maintain uniformity in the development, coordination, and resolution of issues surrounding the preparation and filing of a disclosure statement and plan of adjustment of debt in this case.

23. The DRA Parties believe that including the Objection to the GDB Claim in the mandatory mediation process is not only appropriate under the terms of the Mediation Order, its inclusion is consistent with the spirit and purpose of the Mediation Order itself: the avoidance of piecemeal litigation of overlapping key issues. *See* Dkt. No. 8244 at p. 1. Moreover, inclusion of the Objection in the mediation process will not unduly prejudice the UCC, which is already a party to the mediation.

**WHEREFORE,** the DRA Parties respectfully request this Court to enter an order substantially in the form of **Exhibit A** hereto, subjecting the UCC's Objection to GDB Claim to the stay and mandatory mediation process of the Mediation Order, and to include the Objection in Appendix 1 of the Mediation Order, and further granting such other relief as may be just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 27th day of August, 2019.

| **MCCONNELL VALDÉS LLC** | **C. CONDE & ASSOC. LAW OFFICES** |
|---|---|
| 270 Muñoz Rivera Avenue, Suite 7<br>Hato Rey, Puerto Rico 00918<br>PO Box 364225<br>San Juan, Puerto Rico 00936-4225<br>Telephone: 787-250-5632<br>Facsimile: 787-759-9225<br><br>By: /s/Arturo J. García-Solá<br>Arturo J. García-Solá<br>USDC No. 201903<br>Email: ajg@mcvpr.com<br><br>By: /s/Nayuan Zouairabani<br>Nayuan Zouairabani<br>USDC No. 226411<br>Email: nzt@mcvpr.com<br><br>***Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority*** | By: /s/ Carmen D. Conde Torres<br><br>Carmen D. Conde Torres<br>(USDC No. 207312)<br>254 San José Street<br>Suite 5<br>San Juan, PR 00901-1523<br>Tel. 787-729-2900<br>Fax. 787-729-2203<br>E-Mail: condecarmen@condelaw.com<br><br>*-and-*<br><br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br><br>By: /s/ Douglas S. Mintz<br>Douglas S. Mintz (admitted pro hac vice)<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Telephone: (202) 339-8400<br>Facsimile: (202) 339-8500<br>E-mail: dmintz@orrick.com<br><br>and<br>Peter Amend (admitted pro hac vice)<br>51 West 52nd Street<br>New York, N.Y. 10019<br>Telephone: (212) 506-5000<br>E-mail: pamend@orrick.com<br><br>***Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority*** |