## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | **PROMESA** |
| | **Title III** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | **No. 17 BK 3283-LTS** |
| As a representative of | **(Jointly Administered)** |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | **Re: Dkt. No. 8332** |
| **Debtors.**[1] | |

## FEE EXAMINER'S PRELIMINARY STATUS REPORT ON CONTINUING REVIEW PROCESS FOR MCKINSEY & COMPANY, INC. AS CONSULTANT TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD

The Fee Examiner files this report (the "**Report**") pursuant to the *Order Setting Deadline for Further Status Report Regarding Fee Examiner's Review of Applications of McKinsey & Company, Inc.* [Dkt. No. 8332], and respectfully states:

### SUMMARY

Six weeks ago, the General Services Administration ("**GSA**"), through its Office of Inspector General ("**OIG**"), publicly issued an audit report on the standard consulting agreement used by United States government agencies to contract with McKinsey & Company, Inc. ("**McKinsey**"). While the report did not refer to McKinsey's consulting agreement with the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Federal Oversight & Management Board ("**FOMB**"), its significance to the Fee Examiner was apparent. Almost immediately, an informative motion notified the Court of the report's release [Dkt. No. 8330].

Since then, the Fee Examiner and counsel have conducted additional due diligence to ensure compliance with PROMESA sections 316 and 317 in light of the newly-released report's unexpected disclosures. That process is continuing and, to this point, has not led the Fee Examiner to change the conclusion and recommendation that McKinsey's fees through September 30, 2018 are reasonable and necessary. What has changed, however, is the Fee Examiner's confidence in varying from the well-established foundation for the assessment of professional fees under section 330 of the Bankruptcy Code and, here, under section 316 of PROMESA. With the exception of McKinsey, every professional in these Title III cases has provided a quantitative basis to support its applications for flat-fee compensation.

This report is preliminary and interim. The Fee Examiner's investigation and review of additional documents and sources are continuing. So are its discussions with McKinsey and the FOMB. When complete, the Fee Examiner will present definitive conclusions and recommendations for the Court's consideration.

## BACKGROUND

1.     On July 31, 2019, the Fee Examiner filed the *Informative Motion of the Fee Examiner on Review Status of Applications of McKinsey & Company, Inc. as Consultant to the Financial Management and Oversight Board* [sic] [Dkt. No. 8330] (the "**Informative Motion**"). This Report incorporates the procedural and factual recitations in the Informative Motion by reference, supplementing them with subsequent developments.

2.     On May 8, 2018, the Fee Examiner filed the *Motion of the Fee Examiner to Amend the Fee Examiner Order with Respect to the Scope of the Fee Examiner's Authority in the*

*Interest of Administrative Efficiency* (the "**Motion to Amend**") [Dkt. No. 3032], asking the

Court to revise the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code*

*Section 105(A) Appointing a Fee Examiner and Related Relief* (the "**Fee Examiner Order**")

[Dkt. No. 1416].[2]

      3.      The Motion to Amend reported that the Fee Examiner could not evaluate

McKinsey's fees under the PROMESA Section 316 and 317 standards because McKinsey's

billing practices under its initial proposal and subsequently negotiated contract with the FOMB

are based on a team-based, fixed price model that does not require the maintenance of time

records.[3]  Motion to Amend at p. 4, ¶ 11.  As a result, the Fee Examiner asked to excuse

McKinsey from the reasonableness and necessity review described in the Fee Examiner Order.

      4.      At the June 6, 2018 omnibus hearing, the Court considered the Motion to Amend,

denying it in relevant part and directing the Fee Examiner to develop an individualized proposal

for an appropriate protocol for McKinsey to satisfy PROMESA's reasonableness and necessity

requirements.

      5.      After extensive consultation with the FOMB and McKinsey, including a day-long

visit to McKinsey's Washington, D.C. offices, the Fee Examiner filed the *Fee Examiner's Third*

---

[2] The Fee Examiner Order was subsequently amended but, for purposes of this Report, not materially.  *See* Dkt. No. 3324.

[3] The FOMB retained McKinsey based on a request for proposal ("RFP").  McKinsey submitted its RFP response on October 20, 2016.  McKinsey and the FOMB executed an initial Consulting Agreement for pre-Title III work on November 27, 2016, amending the scope of work under that agreement on March 9, 2017.  After the Title III filings, the FOMB and McKenzie executed their Title III consulting agreement (the "**FOMB-McKinsey Contract**") effective July 3, 2017.  The parties have amended the FOMB-McKinsey Contract several times, and the FOMB has stated that McKinsey now is working on a month-to-month basis until the FOMB approves an agreed form of amended contract covering the current fiscal year. All of McKinsey's contracts with the FOMB are available through the FOMB's website at https://oversightboard.pr.gov/documents.  *See* https://drive.google.com/file/d/1qeH3RM1Ic0q0N0qLb8fa9o-s-la_3AZ3/view (November 26, 2016 Consulting Agreement); https://drive.google.com/file/d/1n5u9kDhqHoIemLhSfGc0Q-W2PTx0oeuU/view (March 9, 2017 amended Scope of Work document); https://drive.google.com/file/d/1iV82ACFcYQfgtCq02v8rk19nx-g4_VA7/view (July 3, 2017 Title III Consulting Agreement).

*Interim Report on Professional Fees and Expenses (February 1, 2018 – May 31, 2018)* [Dkt.
No. 4126] (the "**Third Interim Fee Period Report**").  It set forth an alternative methodology for
reviewing McKinsey's fees (the "**McKinsey Fee Protocol**") and recommended McKinsey's first
three groups of interim applications for Court approval without adjustment.  Third Interim Fee
Period Report at pp. 10-14.  These applications requested total compensation of $27.437 million
in fees.  The FOMB-McKinsey Contract does not provide for the separate reimbursement of
expenses.

6.      As noted in the Third Interim Fee Period Report, one factor in the Fee Examiner's
due diligence and recommendation last year was a Federal Supply Services Schedule with the
GSA (the "**GSA Pricelist**"), representing the U.S. government's negotiated "most favored
customer pricing" available to qualified federal government users of McKinsey services.  *See id.*
at pp. 11-12.

7.      Though the FOMB-McKinsey Contract *is not* itself a GSA Pricelist contract,[4]
McKinsey provided the GSA Pricelist, along with the name of a contact at the General Services
Administration (the "**GSA Reference**"), as part of the extensive discussions leading to the
McKinsey Fee Protocol.  In particular, McKinsey represented to the Fee Examiner that the GSA
Pricelist, setting forth team-based, flat-fee weekly pricing, was similar to its proposal to the
FOMB, reflecting its practice of not maintaining time records in its government consulting
practice.  McKinsey specifically recommended that the Fee Examiner's counsel contact the GSA
Reference.

8.      Ultimately, the Fee Examiner based the reasonableness recommendation on "a
review of McKinsey's work records, the site visit, […] client interviews and expressed

---

[4] The Oversight Board is not an eligible user of the GSA Pricelist.  *See* Third Interim Fee Period Report at p. 11, n.9.

satisfaction, and the fee applications themselves," roughly calculating an estimated blended

hourly rate for McKinsey's work.  That estimation yielded an hourly rate comparable to

similarly-situated professionals involved in these proceedings.  *See* Third Interim Fee Period

Report at p. 13.

9.     Neither the GSA Pricelist nor the GSA Reference was a primary factor in the Fee

Examiner's assessment.  Rather, the Fee Examiner relied on the GSA Reference to answer

questions about the GSA contracting process, to corroborate McKinsey's representations about

the GSA Pricelist, and to obtain a point of comparison for the fixed fee team composition and

pricing under the FOMB-McKinsey Contract.

### THE GSA INVESTIGATIONS

10.     In late March 2019, just after the Fee Examiner had recommended the Court's

approval of McKinsey's fourth interim fee period applications, *see* Dkt. No. 5409, an

investigator with the GSA OIG unilaterally and without prior notice contacted the Fee

Examiner's counsel.  He asked about counsel's earlier conversation with the GSA Reference and

summarized OIG's ongoing internal review of the GSA Pricelist.  The Fee Examiner

immediately requested copies of any investigative documents or reports to better understand the

OIG review process, the facts the investigator had described, and the potential relevance to these

proceedings.

11.     When the production of a report was not initially forthcoming, the Fee Examiner

asked McKinsey for details, meeting in person with McKinsey representatives in Washington,

D.C. on July 8, 2019 to discuss the investigator's inquiry.  McKinsey denied having any

knowledge of the then-ongoing OIG audit.

12.     On July 23, 2019 the OIG published a report entitled *Improper Pricing on the*

*McKinsey Professional Services Contract May Cost the United States an Estimated $69 Million*.

The report is publicly available at https://www.gsaig.gov/content/improper-pricing-mckinsey-professional-services-contract-may-cost-united-states-estimated-69 (the "**OIG Report**").

Counsel to the OIG stated that this report was the result of the same OIG investigation during which the OIG investigator initially had called the Fee Examiner's counsel.

13.     The OIG Report describes an earlier OIG audit process, conducted prior to the 2016 renewal of McKinsey's GSA contract,[5] known as the "**Preaward Audit**."  The Preaward Audit itself was the subject of a formal, albeit restricted, OIG report dated March 24, 2016.[6]

14.     While the GSA Pricelist was not a significant basis for the recommendations to this Court, the facts and findings described in the OIG Report raise serious concerns because they suggest that the OIG, like the Fee Examiner, noted some time ago the absence of a meaningful quantitative method to calculate comparable hourly rates as one possible measure of reasonableness.

15.     The OIG Report further suggests that McKinsey may not have initially complied with at least some of the GSA's 2016 requests for pricing information in connection with the Preaward Audit.

---

[5] McKinsey's contract with the GSA dates to January 27, 2006, with three five-year renewal options.  The OIG conducted the routine Preaward Audit in connection with McKinsey's request that the GSA exercise the second five-year renewal option.

[6] Also on July 23, 2019, the office of counsel to the OIG provided the Fee Examiner with a redacted copy of the March 24, 2016 Preaward Audit report.  It contains an annotation stating: "*NOTICE THIS REPORT CONTAINS INFORMATION THAT THE OFFICE OF INSPECTOR GENERAL HAS DETERMINED IS PROPRIETARY AND PRE-DECISIONAL AND DISTRIBUTION IS RESTRICTED TO AGENCY OFFICIALS AND OTHER COGNIZANT FEDERAL OFFICIALS.  THE OFFICE OF INSPECTOR GENERAL HAS NO OBJECTION TO THE RELEASE OF THIS REPORT, AT THE DISCRETION OF THE CONTRACTING OFFICER, TO AUTHORIZED PERSONS OF THE SUBJECT CONTRACTOR.  PERSONS DISCLOSING THIS INFORMATION PUBLICLY OR TO OTHERS NOT HAVING AN OFFICIAL NEED TO KNOW ARE SUBJECT TO POSSIBLE ADMINISTRATIVE OR CIVIL PENALTIES, OR CRIMINAL PENALTIES PURSUANT TO THE TRADE SECRETS ACT (18 U.S.C. SECTION 1905).*"  McKinsey has since provided an unredacted read-only copy of the Preaward Audit.

16.     These developments are material because they again raise the question of whether McKinsey can or should be required to maintain additional records to support its fees in compliance with PROMESA—though not required by the FOMB-McKinsey Contract.

**ADDITIONAL DUE DILIGENCE**

17.     After reviewing the OIG Report and Preaward Audit, the Fee Examiner promptly consulted with the FOMB, through its executive director, counsel, and special counsel, to obtain additional information about the process by which FOMB initially selected McKinsey as one of its advisors.  Through special counsel Michael Luskin, the FOMB has provided—and the Fee Examiner has reviewed—roughly 3,000 documents (21,000 pages) potentially related to the RFP process and FOMB's retention of McKinsey.  Mr. Luskin had reviewed many of these same documents in connection with his independent review of McKinsey's conflicts disclosures before retention.  *See* Dkt. No. 5154.

18.     The Fee Examiner also spoke personally with the FOMB's executive director and general counsel, both of whom confirmed their continued satisfaction with McKinsey's work, their belief in the reasonableness of McKinsey's fees, and the crucial role McKinsey continues to play in these Title III cases, particularly in light of the recent changes within Puerto Rico's government.

19.     On August 2, 2019, the Fee Examiner asked McKinsey, through counsel, to produce 14 categories of documents and to respond to nine specific questions that the OIG Report and Preaward Audit raised.

20.     McKinsey began providing responsive documents on August 23, 2019, supplementing the production on August 28 and 29, and September 3, 2019, and committing to supplementing its production on a rolling basis as new documents are gathered.

21.     The Fee Examiner's counsel has reviewed all 278 documents (1,431 pages) that
McKinsey has produced.  McKinsey acknowledges that it has not yet responded in full to all of
the Fee Examiner's information and document requests, but McKinsey repeatedly has stated its
intent to comply fully as additional documents are gathered and reviewed.

## INITIAL OBSERVATIONS

22.     Any fee review process depends on professionals' complete cooperation with the
Fee Examiner's requests for the general and specific information needed to conduct a
reasonableness analysis.

23.     While the OIG Report and Preaward Audit have no *direct* bearing on the
reasonableness of the FOMB-McKinsey Contract pricing and while they do not change the Fee
Examiner's conclusions, they do disclose facts and information material to the PROMESA fee
review dating to the outset of the Title III process.

24.     McKinsey's non-disclosure of the facts and circumstances surrounding the
Preaward Audit does not amount to an affirmative misrepresentation, but the importance of
quantitative work records has been at issue since McKinsey's first communication with the Fee
Examiner late in 2017.  The Fee Examiner then expressly requested that McKinsey begin
providing some form of quantitative work records to support its Title III fee requests.  McKinsey
would not agree to do so.

25.     McKinsey's restructuring affiliates have, in Chapter 11 cases, maintained
quantitative records to support its 11 U.S.C. § 327 fee requests.  *See*, *e.g.*, *In re AMR*

*Corporation*, United States Bankruptcy Court-Southern District of New York Case

No. 11-15463 (SHL).[7]

26.     McKinsey itself introduced the GSA Pricelist into these Title III cases when it:

- Used the GSA Pricelist as a partial explanation for its inability to provide time records;

- Provided a copy of the GSA Pricelist as part of its proposal for the McKinsey Fee Protocol, referring to it during the Fee Examiner's review process; and

- Provided the name and contact information of the (now discredited) GSA Reference to corroborate and explain, if necessary, the GSA contracting process to the Fee Examiner.

**PRELIMINARY CONCLUSIONS AND RECOMMENDATIONS**

27.     Many non-lawyer consultants in Chapter 11 cases bill on a flat-fee basis.  *See*

11 U.S.C. § 328(8) (allowing professional compensation "on a fixed or percentage fee basis …").

The Fee Examiner does not suggest that the team-based fixed pricing in the FOMB-McKinsey

Contract is improper or imprudent.  In fact, FOMB representatives repeatedly have shared their

view that, were McKinsey to bill hourly, the cost to the Commonwealth would be significantly

higher than the fixed fees.[8]

28.     Given the information available today, the Fee Examiner does not believe the

pricing in the FOMB-McKinsey Contract is unreasonable.  One of the documents McKinsey

produced this month is McKinsey's "commercial rate card," reflecting the weekly team-based

---

[7] McKinsey's final fee application in the AMR (American Airlines) bankruptcy appears at Dkt. No. 11689 in the AMR docket.  The application is filed in the name of McKinsey Recovery & Transformation Services, LLC, McKinsey & Company Inc. Japan, McKinsey & Company Canada, McKinsey & Company, Inc. Belgium, McKinsey & Company, Inc. Italy, and McKinsey & Company, S.L.  At least one McKinsey timekeeper has worked both on the AMR cases and these Title III cases.

[8] McKinsey professional hourly rates in AMR ranged from $200 to $950 per hour, with a blended hourly rate of $552.87 in 2014 dollars.  Assuming the staffing patterns in the Title III cases are as reported and the working hours are as the Fee Examiner has presumed, the FOMB's impression of the value provided is likely correct.

price for McKinsey's *non*-governmental clients.  This commercial rate pricing correlates with the
FOMB-McKinsey contract.

29.     Further, McKinsey's services and institutional knowledge most certainly are
necessary to the administration of these cases—perhaps more so now than at any other time.

30.     Nonetheless, given the new and unanticipated information in the OIG reports, it
may be appropriate for the Court to revisit the McKinsey Fee Protocol.

31.     Even flat-fee professionals in Chapter 11 cases must maintain *some* quantitative
records.  Typically, these materials consist of periodic work records that might ordinarily be used
for payroll or other administrative purposes.

32.     Indeed, several professionals in these Title III cases have been paid on a flat-fee
basis (Citigroup Global Markets, Andrew Wolfe, Rothschild Global Advisory, Conway
McKenzie, Inc.), but all generate some form of quantitative records.

33.     The Fee Examiner's initial recommendation on the reasonableness of McKinsey's
fees was based on the assumption "that each full-time team participant contributes 60 hours per
week and each part-time team participant contributes 25 hours per week," but the Fee Examiner
could not independently verify that assumption.

34.     It is not the Fee Examiner's place to dictate the terms of the FOMB's relationship
with its professionals, including McKinsey.  The contract renewal discussions between the
FOMB and McKenzie are continuing.  However, enhanced record-keeping and disclosure could
provide additional assurance to the Court, and to the public, that McKinsey's flat fees are fair
and reasonable.

35.     Given the information available now, the Fee Examiner believes that periodic
quantitative records of time worked on these Title III cases and certification of the integrity and

10

accuracy of its fee information as part of the Title III fee application process could enhance

transparency.

36.     McKinsey and the Fee Examiner have been discussing appropriately enhanced

record-keeping procedures, and McKinsey representatives will next meet in person with the Fee

Examiner and counsel in connection with the September 11, 2019 omnibus hearing in San Juan.

37.     More definitive conclusions and recommendations may arise after McKinsey has

provided complete responses to the Fee Examiner's information requests.

38.     As always, the Fee Examiner reserves the right to make final recommendations

and conclusions with respect to the reasonableness of McKinsey's fees in connection with

McKinsey's subsequent interim and final fee applications.

Dated this 3rd day of September, 2019.

WE HEREBY CERTIFY that on this date, we electronically filed the foregoing motion

with the Clerk of the Court using the CM/ECF system that will send notification of such filing to

all attorneys of record registered in the use of the CM/ECF system.

EDGE Legal Strategies, PSC


_s/Eyck O. Lugo_
Eyck O. Lugo
Vilmarys M. Quiñones Cintrón
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Telephone:  (787) 522-2000
Facsimile:  (787) 522-2010

*Puerto Rico Counsel for Fee Examiner*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609

Katherine Stadler (*Pro Hac Vice*)

*Counsel for the Fee Examiner*

21110547.3