**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY OF PUERTO RICO SALES
TAX FINANCING CORPORATION IN SUPPORT OF SUPPLEMENT OF
PUERTO RICO SALES TAX FINANCING CORPORATION TO THIRTEENTH
OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO DUPLICATE CLAIMS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, COFINA, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    A.    Hein Has Not—And Cannot—Refute This Court's Lack of Jurisdiction over the Arguments He Raises in Support of His Claims.........................................3

    B.    COFINA Has Addressed Hein's Arguments Regarding Retroactivity and the Takings Clause.................................................................................................7

    C.    Hein Repeats the Same Arguments in Support of his Constitutional and Statutory Claims......................................................................................................8

    D.    Hein Continues to Find Fault with the Plan Process, But Cannot Identify Any Liabilities Owed to Him That Arise Therefrom................................................9

        i.    COFINA Has Not "Misrepresent[ed]" Any Tax Issues, and In Any Event, Hein Has Not Demonstrated How the Statements He Attacks Give Rise to Additional Liabilities..........................9

        ii.    Hein Has Not Demonstrated How Alleged "Misrepresentations" Regarding the Bonistas Give Rise To Additional Liabilities. ..................................................................................11

        iii.    Hein Has Not Demonstrated Any Misrepresentations With Respect to Individual Bondholder Recoveries............................................12

        iv.    Hein Likewise Cannot Demonstrate that the Alleged "Special Benefits" for Consummation Costs Parties Give Rise to Additional Liabilities. ..................................................................13

CONCLUSION.............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alphas Co., Inc. v. Empacadora, GAB, Inc.*,
   519 F. App'x 692 (1st Cir. 2013)..................................................................................5

*Caban Hernandez v. Philip Morris USA, Inc.*,
   486 F.3d 1 (1st Cir. 2007)...............................................................................................5

*In re City of Detroit*,
   524 B.R. 147 (Bankr. E.D. Mich. 2014)....................................................................7, 8

*In re City of Stockton*,
   909 F.3d 1256 (9th Cir. 2018) .......................................................................................8

*Macera v. Mort. Elec. Registration Sys., Inc.*,
   719 F.3d 46 (1st Cir. 2013)............................................................................................5

*Pennsylvania Central Transportation Co. v. City of New York*,
   438 U.S. 104 (1978)......................................................................................................8

*United States v. Brooks*,
   145 F.3d 446 (1st Cir. 1998).....................................................................................6, 7

*United States v. George*,
   841 F.3d 55 (1st Cir. 2016)............................................................................................6

*United States v. Rodríguez-Rosado*,
   909 F.3d 472 (1st Cir. 2018)..........................................................................................6

**STATUTES**

11 U.S.C. § 101(5) ................................................................................................................1

18 U.S.C. § 3731..................................................................................................................6

PROMESA § 106(e) ............................................................................................................9

PROMESA § 2(b)(2) .......................................................................................................7, 9

Fed. R. App. P. 4(a)(4).........................................................................................................6

The Puerto Rico Sales Tax Financing Corporation ("COFINA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as COFINA's representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this reply (the "Reply") in support of the *Supplement of Puerto Rico Sales Tax Financing Corporation to Thirteenth Omnibus Objection (Non-Substantive) to Duplicate Claims and Reply to Hein Submissions* [ECF No. 7958] (the "Supplement to the Thirteenth Omnibus Objection") and in response to the *Response of Individual COFINA Bondholder (Claim No. 10701) to COFINA Supplement to its "Thirteenth Omnibus Objection (Non-Substantive) to Duplicate Claims"* [ECF No. 8427] (the "Latest Response"), filed by Peter C. Hein ("Hein"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Latest Response confirms what Hein's earlier Response[3] made clear: Hein can articulate no bases on which COFINA owes him additional liabilities. Hein has been afforded every opportunity, in both the Response and the Latest Response, to explain to COFINA and to this Court whether and why he might be owed a greater recovery under the Plan than he already received in respect of his COFINA bonds. He has not done so. Instead, he continues to conflate his *Claim*—which, pursuant to 11 U.S.C. § 101(5), preserves only his right to payment for liabilities owed to him by COFINA—with the legal theories underpinning his many grievances against the Plan and the process by which it was negotiated, solicited and confirmed. As a result, the Latest Response consists primarily of a rehash of not just the Response, but also the numerous filings Hein lodged in opposing confirmation of the Plan.

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] Capitalized terms used but not defined herein carry the same meanings ascribed to them in the Supplement to the Thirteenth Omnibus Objection.

2. As COFINA has already explained, however, each one of the legal theories upon which Hein purports to find fault with the Plan are the subject of Hein's pending appeal to the First Circuit, and accordingly, this Court lacks jurisdiction to consider the arguments raised by the Response. The Latest Response does not dispute this, effectively conceding that Hein seeks to litigate his objections to confirmation of the Plan before the First Circuit while simultaneously re-litigating the same issues before this Court. Hein's only retort is that COFINA should have raised its jurisdictional arguments earlier. Of course, it was not until *after* Hein filed the Response that it became clear that he intended to re-litigate his Plan objections in the guise of responding to COFINA's claim objection. And, in any event, Hein's appeal divests this Court of subject matter jurisdiction to consider Hein's arguments, and COFINA cannot waive an objection premised on subject matter jurisdiction.

3. The balance of the Latest Response simply repeats the same constitutional, statutory, and factual arguments against the Plan that Hein advanced in his Response. With respect to his constitutional and statutory claims, the Latest Response largely recites arguments made in the pleadings Hein filed in opposition to the Plan—even though this Court has already rejected each and every one of these positions in its Confirmation Order. The Latest Response also largely reiterates Hein's complaints regarding the Plan process, alleging that the Disclosure Statement (1) misrepresented certain tax matters; (2) failed to disclose certain facts regarding the Bonistas (many of which are either non-controversial, or are currently being addressed through ongoing litigation); (3) misrepresented what individual bondholders would receive; and (4) that the Plan improperly provided special benefits to the negotiators of the Plan. But, the Latest Response does not even attempt to tie these allegations to additional damages or liabilities owed on account of Hein's pre-

2

petition Claim, nor provide any basis to reconsider confirmation of the Plan—which it cannot do in any event.

4. Put simply, none of the arguments set forth in either the Response or the Latest Response—let alone any of the six other pleadings Hein has filed to address these exact same issues—demonstrates that Hein is owed any further liabilities in respect of his COFINA claim. Hein's Claim should be disallowed in its entirety.

## ARGUMENT

### A. Hein Has Not—And Cannot—Refute This Court's Lack of Jurisdiction over the Arguments He Raises in Support of His Claims.

5. Hein contends that this Court has jurisdiction to consider the arguments he raises for three reasons—(1) because "what is before the Court is *not* an application for allowance of a claim," but an objection to the Claim, Latest Resp. at 1; (2) because there is "a question as to the validity of" the position that jurisdiction is lacking in light of the fact that counsel for COFINA did not raise its jurisdictional arguments at the April 24 Hearing, Latest Resp. at 2; and (3) the cases upon which COFINA relies are, in Hein's view, distinguishable. None of these points refute the plain fact that Hein is seeking to litigate the same issues before two different courts at the same time—which controlling Supreme Court precedent does not allow.

6. Hein contends that, if this Court has jurisdiction to consider the Thirteenth Omnibus Objection, it must therefore have jurisdiction to hear Hein's arguments in support of his Claim. Not so. This Court *does* have jurisdiction to consider whether Hein has properly asserted additional liabilities against COFINA or whether Hein's claim should be disallowed. The Court lacks jurisdiction, however, to consider issues currently on review by the First Circuit with respect to this Court's Confirmation Order. The litany of arguments set forth in the Latest Response—

3

each of which touches upon either the decision to confirm the Plan, the decision to approve the Disclosure Statement, or other alleged flaws in the Plan confirmation process—all address issues that are subsumed within the Confirmation Order and are, accordingly, already squarely before the First Circuit.

7. Hein next "question[s the] validity" of COFINA's jurisdictional arguments because, at the April 24 Hearing, counsel for COFINA stated that the Thirteenth Omnibus Objection was independent of Hein's appeal of the Confirmation Order and could be decided while that appeal was pending. Latest Resp. at 1. But, Hein ignores the procedural posture of the parties' dispute at the April 24 Hearing. At that time, all that was before the Court was the Thirteenth Omnibus Objection, which contended that Hein's Claim was duplicative of a master proof of claim filed on behalf of COFINA bondholders by BNYM. In response to these pleas, Hein asserted that his Claim was not wholly duplicative of the master proof of claim, but needed additional time to present his arguments. As the Court may recall, no one (neither the Court nor counsel) knew with specificity what Hein was contending as he had never articulated additional bases for liability in the Claim.

8. So, the Court agreed not to disallow the Claim in its entirety because, according to the Court, the Claim seems to "target[] a broader set of rights . . . including entitlement to all rights and claims under applicable law, including the Constitutions of the United States and Puerto Rico." Apr. 24 Hr'g. Trans. at 178: 9-12. COFINA's counsel then noted that the Claim, which included only two sentences that purported to preserve "all rights and claims under applicable law, including but not limited to the United States Constitution and the Puerto Rico Constitution," did not provide sufficient information for COFINA to apprehend what additional liabilities Hein purported to

4

assert. Claim at 6. Accordingly, COFINA requested a schedule by which Hein could "put[] a little bit more meat on those two bones" of his Claim, so that COFINA "could adequately respond and object"; this Court granted that request. *Id.* at 179:5-9.

9. The Response, however, made clear that Hein did not intend to assert through his Claim any additional liabilities owed by COFINA arising out of his constitutional and statutory arguments. Instead, he intended to use his Claim as a vehicle to yet again (1) attack the adequacy of the Disclosure Statement and (2) rehash the exact same constitutional and statutory arguments that this Court had already considered—and rejected—when it confirmed the Plan. In other words, only after having had the opportunity to review the Response did it become clear that Hein's only arguments in support of his Claim are ones as to which this Court lacks jurisdiction.

10. In any event, it is immaterial whether COFINA raised the argument that this Court lacks subject matter jurisdiction at the April 24 Hearing, because it remains black-letter law that lack of subject matter jurisdiction cannot be waived and may be raised at any time. *See, e.g.*, *Macera v. Mort. Elec. Registration Sys. Inc.*, 719 F.3d 46, 49 (1st Cir. 2013) ("[S]ubject-matter jurisdiction . . . [is] beyond the parties' power to stipulate or confer by waiver of objection if asleep. And, as noted, a court is not free to wink at a subject-matter defect."); *Alphas Co., Inc. v. Empacadora, GAB, Inc.*, 519 F. App'x 692, 693 (1st Cir. 2013) ("After all, it is settled beyond hope of contradiction that a party cannot confer subject matter jurisdiction, otherwise absent, by waiver, consent, or indolence."); *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 5 (1st Cir. 2007) ("Ordinary raise-or-waive rules do not apply with respect to claims that a court lacks subjectmatter jurisdiction."). Accordingly, COFINA has not and cannot waive its objection on the grounds that this Court lacks subject-matter jurisdiction.

5

11. Nevertheless, Hein attempts to evade this result by identifying minor distinctions between the controlling authority COFINA has cited and the present case, and claiming, on the basis of such distinctions, that COFINA's cases are "inapposite." For example, Hein claims, baselessly, that "the rule set out in *Griggs* [that an appeal divests a lower court of jurisdiction] was later modified by the 1993 Amendment to Rule 4(a)(4)." Latest Resp. at 2. The 1993 Amendment does nothing of the sort. Rather, it modifies the requirement that parties "file a new notice of appeal after" the disposition of certain post-trial motions by providing that "a notice of appeal filed before the disposition of [such motions] will become effective upon disposition of the motion." Fed. R. App. P. 4(a)(4) advisory committee's note to 1993 amendment. According to the Advisory Committee's notes, this rule change was necessary in order to avoid circumstances in which "the *court of appeals* lacks jurisdiction to hear the appeal." (emphasis added). Nothing in the 1993 Amendment has any impact upon the rule that a notice of appeal divests the lower court of jurisdiction over the case, as numerous cases decided after the amendment make plain. *See, e.g.*, *United States v. George*, 841 F.3d 55, 71 (1st Cir. 2016) ("[W]e start with the abecedarian principle that once a notice of appeal is filed, the district court is divested of 'authority to proceed with respect to any matter touching upon, or involved in, the appeal.'") (citation omitted); *United States v. Rodríguez-Rosado*, 909 F.3d 472, 477 (1st Cir. 2018) ("This [*Griggs*] rule provides that filing a notice of appeal, for the most part, shifts 'jurisdiction' from the district court to the court of appeals."). Hein also complains that *United States v. Brooks*, 145 F.3d 446 (1st Cir. 1998) is inapplicable because it "concerned 18 U.S.C. § 3731," (Latest Resp. at 2) which addresses appeals by the United States. But, in *Brooks*, the First Circuit considered 18 U.S.C. § 3731 solely for the purpose of determining whether the government had "a right to an immediate appeal." *Brooks*,

6

145 F.3d at 453. Once it determined that the United States did, in fact, have such a right, it applied the *Griggs* rule and held that the appeal divested the district court of jurisdiction. *Id.* at 544.

B.  **COFINA Has Addressed Hein's Arguments Regarding Retroactivity and the Takings Clause.**

12. Hein contends that COFINA "fail[ed] to answer" his arguments that (1) PROMESA cannot "retroactively abrogate rights arising from pre-PROMESA bond purchases" or (2) pursuant to *In re City of Detroit*, 524 B.R. 147 (Bankr. E.D. Mich. 2014), his Takings Clause claims "were excepted from discharge to avoid a constitutional violation." Latest Resp. at 3. Not only has COFINA responded to both of these arguments in previous filings, but the Court has also *rejected* both in its Confirmation Order.

13. As COFINA explained in its Reply to Plan Confirmation Objections (the "COFINA Plan Objections Reply", Case No. 17 BK 3284-LTS, ECF No. 443 (Jan. 9, 2019)), a bankruptcy law may retroactively destroy property rights only where this is "an explicit command from Congress." *Id.* at 26. PROMESA contains just such an "explicit command": § 2(b)(2), which expressly applies Titles III and VI of PROMESA to all "debts, claims, and liens . . . created before, on, or after" PROMESA's effective date. *See FOMB v. Altair Glob. Credit Opportunities Fund (A), LLC*, Adv. Proc. No. 17-213-LTS in Case No. 17 BK 3566-LTS, ECF No. 215 (Aug. 17, 2018) at 26-27. This Court had before it both parties' arguments regarding retroactivity when it decided to confirm the Plan. By overruling Hein's Objection and confirming the Plan, this Court already considered and rejected Hein's argument regarding the impact of PROMESA on pre-PROMESA bond purchases.

14. Hein also contends that neither COFINA nor this Court have "answer[ed his] argument based on *City of Detroit*." Latest Resp. at 3. As an initial matter, Hein's argument is

7

premised upon dicta; in *In re City of Detroit*, the court held that it should "use its discretion under § 944(c)(1) to order the nondischarageability of Takings Clause claims in the confirmation order" in order to avoid the need to reach a determination as to the constitutionality of chapter 9. 524 B.R. at 270. And, at least one court has subsequently reached a different conclusion, reasoning that "[t]he Supreme Court has never held that the Takings Clause renders claims that accrued after the Bankruptcy Code was enacted immune from the bankruptcy power, or the bankruptcy process." *See In re City of Stockton*, 909 F.3d 1256, 1268 (9th Cir. 2018). In any event, this Court, in applying the Takings Clause framework set forth in *Pennsylvania Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), held that "[t]he Plan *contains no provisions that would violate the Takings Clause*." Am. Conf. Mem. [ECF No. 5053 at 48-51] (emphasis added). In light of the Court's finding that the Plan does not violate the Takings Clause, there was no need for the Court to undertake to respond to Hein's arguments regarding *City of Detroit*, because the Court had already determined that Hein did not have any Takings Clause claims to discharge.

C.      **Hein Repeats the Same Arguments in Support of his Constitutional and Statutory Claims.**

15.     The Latest Response continues to press Hein's already-rejected arguments that the Plan, and by extension, the Confirmation Order violates the Contracts Clause, the Privileges and Immunities Clause, the Equal Protection Clause, the Due Process Clause, the First Amendment, and the public right of access to Court proceedings.[4] In so doing, Hein simply recites the same

---

[4] Hein also responds, in summary fashion, to COFINA's arguments regarding potential violations of the Appointments Clause and PROMESA. With respect to the Appointments Clause, Hein objects to the fact that COFINA described the First Circuit's decision as "binding precedent" even though the Oversight Board is "urging" the First Circuit's decision "be reversed." Latest Resp. at 7. Of course, the Oversight Board is urging reversal solely with respect to the First Circuit's rulings on the applicability of the Appointments Clause. The Oversight Board has also

8

arguments he presented to this Court on multiple previous occasions, but still fails to articulate how any of the alleged constitutional or statutory violations give rise to any further liabilities owed to him by COFINA. COFINA has already responded at length to Hein's constitutional and statutory claims, both in the COFINA Plan Objections Reply and in the Supplement to the Thirteenth Omnibus Objection, and need not reiterate those arguments here. *See, e.g.*, Supplement to the Thirteenth Omnibus Objection at 13-20; COFINA Plan Objections Reply at 21-35.

**D.      Hein Continues to Find Fault with the Plan Process, But Cannot Identify Any Liabilities Owed to Him That Arise Therefrom.**

   i.    COFINA Has Not "Misrepresent[ed]" Any Tax Issues, and In Any Event, Hein Has Not Demonstrated How the Statements He Attacks Give Rise to Additional Liabilities.

16.    Hein continues to assert that COFINA made alleged "misrepresentations" regarding three tax issues relevant to the Plan: (1) whether a private letter ruling had been submitted; (2) the coupon rates bondholders would receive; and (3) the "rationale" for the "additional consideration made available only to Puerto Rico residents."[5] Nowhere does Hein

---

submitted a merits brief in support of the applicability of the *de facto* officer doctrine, the doctrine upon which it relied in the Supplement to the Thirteenth Omnibus Objection. With respect to violations of PROMESA, Hein states that, because this court lacks jurisdiction pursuant to § 106(e) to review the fiscal plan, PROMESA "cannot be applied retroactively to abrogate COFINA bondholder property." Latest Resp. at 7. This argument ignores the plain language of PROMESA § 2(b)(2), which, as described above, expressly states that pre-PROMESA liens are subject to Title III of PROMESA .

[5]     Hein further contends that (1) COFINA "compounded" its earlier misrepresentations through its exchange offer documents, and (2) COFINA "refuses" to disclose certain documents in response to overbroad and irrelevant discovery requests he has propounded upon COFINA. The sole alleged "misrepresentation" Hein purports to identify in the exchange offer documents is Hein's guess that the IRS may have "precluded COFINA from pressing for a greater reduction in the coupon rate as part of the exchange." Latest Resp. at 9. It goes without saying that there is no basis for this unsupported surmise. Further, with respect to Hein's discovery requests, COFINA has responded to Hein's assertions on that issue in its response to his motion to compel. *See*

9

articulate, however, how any of those purported "misrepresentations" resulted in additional liabilities owed to him by COFINA in respect of his Claim.

17. With respect to the alleged "misrepresentation" regarding the existence of a private letter ruling request, Hein simply reiterates the same arguments advanced in his Response. Hein does not—and cannot—contest the fact that, as COFINA explained in the Supplement to the Thirteenth Omnibus Objection, the exact proportion, availability, and tax treatment of Tax-Exempt COFINA Bonds was uncertain at the time of the Disclosure Statement. Case No. 17 BK 3283-LTS, ECF No. 4364 (Nov. 26, 2018) at 197-198.

18. Hein further contends that COFINA "misrepresented" coupon rates applicable to the bonds because it never mentioned "a possible reduction in coupon rate." Latest Resp. at 8. But, Hein again does not address the fact that, as COFINA also explained in the Supplement to the Thirteenth Omnibus Objection, the Tax Exemption Implementation Agreement—the mechanism by which the complained-of reduction in coupon rate might occur—was entirely optional. Hein was not required to exchange his taxable bonds for tax-exempt bonds, with the corresponding reduction in coupon rate, if he did not wish to do so. Indeed, the Plan was always clear that taxable bonds would be issued to some holders. The fact that Hein was subsequently able to exchange taxable bonds for tax-exempt bonds, in exchange for a modest reduction in coupon rate, was not a misrepresentation, but an additional benefit offered to Hein.

19. Lastly, Hein asserts, without any basis, that COFINA "misrepresented" the rationale for providing "additional consideration" to Puerto Rico holders. Latest Resp. at 10. The

---

*Objection of Puerto Rico Sales Tax Financing Corporation to Motion to Compel Brought by Individual COFINA Bondholder*, Case No. 17 BK 3283-LTS, ECF No. 8553 (Aug. 27, 2019).

10

sole support Hein provides for that statement is that both Puerto Rico holders and mainland investors are eligible to participate in the exchange offer, which permits holders to trade taxable bonds for tax exempt bonds. Hein fails to explain, however, how extending eligibility to participate in the exchange offer to Puerto Rico holders, who do not pay most federal taxes, somehow undermines the argument that incentivizing Puerto Rico holders to select taxable bonds during the election process maximizes the number of tax exempt bonds available to mainland holders.

    ii.    Hein Has Not Demonstrated How Alleged "Misrepresentations" Regarding the <u>Bonistas Give Rise To Additional Liabilities</u>.

20. Hein reiterates his assertion that COFINA "misdepicted" the Bonistas because the Disclosure Statement did not state, *inter alia*, whether the Bonistas owned COFINA bonds or intended to seek payments for their expenses in supporting the Plan. Latest Resp. at 11. But, Hein fails to connect these alleged "misdepict[ions]" regarding the Bonistas to additional liabilities Hein may assert against COFINA.

21. As COFINA explained in the Supplement to the Thirteenth Omnibus Objection, the Bonistas are an advocacy group that seeks to represent Puerto Rico residents who hold Puerto Rico debt. The Bonistas were participants in the mediation process that led to the development of the Plan. If they believed they were entitled to reimbursement for expenses incurred by their professionals during the mediation process, they were permitted to request such payment. And, parties in interest were permitted to object to the payment of the Bonistas' professional expenses—indeed, the Bonistas' administrative expense payment remains the subject of active litigation. *See Notice of a Revised Proposed Order to the Notice of Withdrawal by AAFAF of Previously Filed Stipulation Regarding Bonistas Expenses and Motion to Vacate Scheduling Orders with Respect*

11

*to the Stipulation*, Case No. 17 BK 3283-LTS, ECF No. 8547 (Aug. 26, 2019). Particularly in light of the fact that parties in interest may object to the payment of the Bonistas' professional expenses, Hein nowhere explains why the alleged failure to disclose the fact that the Bonistas might seek reimbursement for such expenses gives rise to additional liabilities held by bondholders against COFINA.

    iii.    Hein Has Not Demonstrated Any Misrepresentations With Respect to Individual <u>Bondholder Recoveries</u>.

22.    Hein also claims that COFINA misrepresented the recoveries individual bondholders could expect to receive pursuant to the Plan, and that his April Supplement demonstrates that he did not, in fact, receive the projected recoveries. Latest Resp. at 12-13. Neither of these assertions are true.

23.    As already explained both at the April 24 Hearing and in multiple previous filings, COFINA provided the consideration it owed to bondholders when it issued new bonds to BNYM for distribution to bondholders. Once that consideration was provided by COFINA, BNYM, in conjunction with DTC and brokers, took the steps required to effectuate distributions, by among other things, distributing the bonds and cash and in some instances cash in lieu of fractional bonds. *See* Supplement to Thirteenth Omnibus Objection at 11-12; *Motion Submitting Demonstrative Exhibit in Compliance with Court Order*, Case No. 17 BK 3283-LTS, ECF No. 5701 (Mar. 14, 2019). Hein does not contest that COFINA provided the consideration it owed to BNYM, or that, to the extent bondholders did not receive "the, quote, exact amounts that were projected by the plan, that was a function of the fact that the COFINA bond prices traded down subsequent to the issuance." Mar. 13 Hr'g. Tr. at 20:17-24:12; <u>Supplement to the Thirteenth Omnibus Objection at 11</u>.

24. Hein contends, nevertheless, that the Disclosure Statement was not adequate because it did not disclose that "any fractional amounts [we]re being liquidated, much less liquidated at distressed prices." Latest Resp. at 13. But as COFINA has already explained, at the DTC participant level, entities took typical market action to provide cash in lieu of fractional positions. This did not alter the stated plan recoveries, which were based on bonds, not value.

iv. Hein Likewise Cannot Demonstrate that the Alleged "Special Benefits" for Consummation Costs Parties Give Rise to Additional Liabilities.

25. Finally, Hein continues to allege that, by awarding consummation costs to certain plan negotiators, the Plan violates the Takings Clause and constitutes an improper abrogation of Hein's property rights. Hein maintains this position even though, as COFINA noted in the Supplement to the Thirteenth Omnibus Objection, this Court already carefully considered and approved the award of consummation costs. Supplement to Thirteenth Omnibus. Objection at 12-13, citing Am. Conf. Mem. at 32-33. To the extent Hein continues to disagree with this Court's ruling that the payment of consummation costs does not violate the Takings Clause or otherwise abrogate bondholder property rights, the proper forum for Hein to raise those arguments is the First Circuit.

## **CONCLUSION**

26. For the foregoing reasons, COFINA respectfully requests this Court overrule Hein's objections and grant the Thirteenth Omnibus Objection with respect to his Claim.

Dated: September 3, 2019
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and Management Board as representative for COFINA*

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock *(pro hac vice)*
Brian S. Rosen *(pro hac vice)*
Jeffrey W. Levitan *(pro hac vice)*

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Co-Attorneys for the Financial Oversight and Management Board as representative for COFINA*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, and all CM/ECF participants in the case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer