UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x
: 
In re: :
: 
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
: 
as representative of : Case No. 17-BK-3283 (LTS)
: 
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
: 
Debtors.[1] :
------------------------------------------------------------------------ x

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO URGENT JOINT MOTION BY DRA PARTIES REQUESTING THAT OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CLAIM OF GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO BE SUBJECT TO ORDER REGARDING STAY AND MANDATORY MEDIATION**

The Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") respectfully files this objection (the "Objection") to the *Urgent Motion by the DRA Parties Requesting that the Objection of Official Committee of Unsecured Creditors to Claim of Governmental Development Bank for Puerto Rico Be Subject to the Order Regarding Stay and Mandatory Mediation* [Docket No. 8551] (the "Motion").[2] In support of this Objection, the Committee states as follows:

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**OBJECTION**

1. The Committee respectfully submits that its objection to the GDB Claim against the Commonwealth [Docket No. 8000] (the "GDB Claim Objection") should not be made subject to the Mediation Order. Most fundamentally, and contrary to the assertions in the Motion, the GDB Claim Objection does **not** "address[] issues that are integral to confirmation of a plan of adjustment" or "raise[] arguments and seek[] relief mirror by other adversary complaints already subject to the stay and mandatory mediation process." Motion at 2. Rather, the GDB Claim Objection presents a claims allowance matter that can be resolved independently of (and after) confirmation of a Commonwealth plan of adjustment. In fact, there are thousands of unliquidated claims asserted against the Commonwealth. From the point of view of the holders of such claims, the same arguments advanced by the DRA Parties could be made. There is no compelling reason why the GDB Claim should somehow get moved to the "front of the line" to be resolved.

2. The principal purpose of the Mediation Order is "to identify efficiently the issues that must be litigated or otherwise resolved to achieve confirmation of a plan of adjustment for the Commonwealth (and other debtors and potential debtors in Title III proceedings), as well as prioritize such issues and develop efficient approaches to the resolution of such issues." Mediation Order at 1. At the July 24, 2019 omnibus hearing, the Court specifically recognized that many of the matters raised in the multiplicity of potentially interrelated bond- and claim-related objections "go to issues that could be **key or even gating issues in connection with the confirmation of a plan**." July 24, 2019 Hr'g Tr. at 55:6-8 (emphasis added). For that reason, the Court concluded that

> with a plan proposal on the horizon, the time has come for a pause of
> 120 days or so, during which the Oversight Board, AAFAF, the
> official committees and other litigants must work with Judge Houser,

2

>the mediation team leader **to identify key and gating issues, assess their crosscutting and collateral implications, seek to reach substantial consensus as to the prioritization of matters for litigation or mediation, and formulate a proposed schedule and appropriate notice and participation mechanisms that are as standardized and comprehensive as possible**. July 24, 2019 Hr'g Tr. at 55:25 - 56:10.

In other words, the purpose of the stay and related mediation process under the Mediation Order is to set out the path to confirmation of a plan of adjustment in these Title III cases.

3. This overarching objective is reflected in the list of issues identified in paragraph B of the Mediation Order, which issues include (a) the validity, secured status (if any), and priority relating to GO bonds, PBA bonds, ERS bonds, and HTA bonds, (b) the validity and impact of the so-called "clawback" of revenues, and (c) the standards for confirming a plan of adjustment. Accordingly, the Court stayed the various contested matters and adversary proceedings that involve the related gating issues, including the pending challenges to the validity of the Commonwealth's GO bonds and the PBA bonds,[3] pending challenges to the validity of the ERS bonds,[4] pending challenges to the secured status of GO bonds,[5] ERS bonds,[6] and HTA bonds,[7] pending challenges to the Commonwealth's "clawback" of certain revenues,[8] as well as related adversary proceedings seeking to recover principal and interest payments made on account of the GO bonds[9] and ERS bonds[10] subject to challenge.

---

[3] *See* Docket Nos. 4784, 7057, 7814, and 8141.

[4] *See* Docket Nos. 5580, 5586, and 6482.

[5] *See* Adv. Proc. Nos. 19-291, 19-292, 19-293, 19-294, 19-294, 19-295, 19-296, and 19-297.

[6] *See* Adv. Proc. Nos. 19-366, and 19-367.

[7] *See* Adv. Proc. Nos. 19-362, 19-363, 19-364, and 19-365.

[8] *See* Docket No. 7176.

[9] *See* Adv. Proc. Nos. 19-281, 19-282, 19-282, 19-283, 19-284, 19-285, 19-286, 19-287, and 19-288.

[10] *See* Adv. Proc. No. 19-355, 19-356, 19-357, 19-358, 19-359, 19-360, and 19-361.

3

4.  All of this stands in contrast to the GDB Claim Objection which does not involve gating issues to the confirmation of a plan of adjustment, but is a claims allowance matter that can be resolved at a later stage. In particular, the Claim Objection seeks to disallow the GDB Claim (1) under section 502(d) of the Bankruptcy Code because the GDB is the recipient of preferential and fraudulent transfers and (2) under section 502(b)(1) of the Bankruptcy Code because GDB has failed to provide the documentation to establish the amount and validity of the claims it asserts against the Commonwealth. These are simply not questions that must be resolved in order to be able to confirm a plan of adjustment and, instead, can be resolved in due course through the normal claims allowance process.[11] For the same reason, the Committee is also not pressing the GDB Claim Objection at this time.[12]

5.  The Committee recognizes, of course, that the Court also stayed, as part of the Mediation Order, that certain adversary proceeding [Adv. Proc. No. 19-280 (LTS)] (the "<u>Underwriters Litigation</u>") brought jointly by the Special Claims Committee of the FOMB and the Committee (through special conflicts counsel) against certain underwriters, swap counterparties, and other parties asserting claims, among others, for aiding and abetting GDB's breaches of fiduciary duty. Importantly, however, the Underwriters Litigation focuses on GDB's role in the illegal issuance of GO, PBA, and ERS bonds, and thus ties into the pending

---

[11] As the Motion indicates, the Committee and the DRA Parties have been in discussions regarding the briefing and hearing schedule of the GDB Claim Objection as well as related questions concerning the sequencing of issues, including as it relates to the Committee's standing to assert the GDB Claim Objection. However, the DRA Parties abandoned these discussions in favor of seeking to include the GDB Claim Objection in the Mediation Order.

[12] As noted in the GDB Claim Objection, the only reason that the Committee filed the GDB Claim Objection on July 15, 2019 was because the tolling agreement between the Committee, GDB, the Public Entity Trust, and the GDB Debt Recovery Authority expired on July 15, 2019. While the Committee did not, and does not, concede that section 546(a) of the Bankruptcy Code applies to a defense under section 502(d) of the Bankruptcy Code, the Committee entered into the tolling agreement out of an abundance of caution.

challenges to the GO, PBA, and ERS bonds.[13] By contrast, the GDB Claim Objection focuses on (a) GDB's receipt of more than $110 million in preferential transfers from the Commonwealth and (b) GDB's receipt approximately $1.6 billion in fraudulent transfers as a result of the repayment of GDB lines of credit from the net proceeds of the 2014 GO bond issuance. These transfers have nothing to do with the pending objections to the validity of the GO, PBA, or ERS bonds, nor do they raise any confirmation issues.

6. Moreover, the DRA Parties are already participants in the mediation process and, as such, have a seat at the table as it relates to the validity of GO bonds (certain of which are also held by the DRA Parties). Thus, despite the fact that the pending GDB Claim Objection does not, at this time, challenge the DRA Parties' GO bond and GO guaranty claims on constitutional debt limit grounds, the Committee does not object to the DRA Parties participating in the mediation to argue that the GO bonds and GO guarantees were issued in compliance with the Puerto Rico constitutional debt service limit, because that is an issue central to confirmation of the plan sponsored by the FOMB.

7. The DRA Parties also raise the concern that excluding the GDB Claim Objection from the Mediation Order would "compromis[e] the efficiency of the mediation process." Motion at 7. However, if anything, the contrary is the case. The Mediation Order can only accomplish its objective (*i.e.*, setting out the path to confirmation of a plan of adjustment) if it remains focused on those matters that are vital to confirmation. Inserting other, tangential issues into the mediation process will make the already complicated task even more daunting—and could, if left unchecked, derail the entire process.

---

[13] The defendants in the Underwriter Litigation also filed a joint motion [Docket No. 7747] seeking entry of an order authorizing their participation in the pending objections to the GO bonds. That motion is also expressly made subject to the Mediation Order.

8. Finally, the Committee is aware that following the entry of the Mediation Order, the Court approved a stipulation [Docket No. 8481] pursuant to which AAFAF, FOMB, and the DRA Parties agreed to submit the DRA Parties' motion for stay relief in connection with certain allegedly secured loans made by GDB to HTA [Docket No. 7643] (the "Stay Relief Motion"). The Stay Relief Motion, however, is not comparable with the GDB Claim Objection. For one, all relevant parties **agreed** to make the Stay Relief Motion subject to the Mediation Order. In contrast, the Committee does not so consent to have its objection to the GDB Claim inserted into the mediation process (for the reasons already discussed). The Committee should not be compelled to mediate an issue that is, at best, tangential to a plan of adjustment.[14] Moreover, the Stay Relief Motion unquestionably raises issues that are at the heart of the Mediation Order and which are, in fact, specifically identified in the Mediation Order, namely the scope of the security interest securing HTA bonds and the validity and impact of revenue clawbacks.[15]

[*Remainder of page intentionally left blank.*]

---

[14] The Committee notes that it had previously requested that the PREPA 9019 motion be made subject to mediation, but such request was declined apparently based solely on the refusal of the parties opposed to the Committee on the PREPA 9019 motion. The Committee questions how a different result could obtain with respect to this Motion given the Committee's refusal to have the GDB Claim allowance made subject to mediation.

[15] For the same reason it is unremarkable that, during the July 24, 2019 omnibus hearing, the Court agreed to include, at the request of the parties, Ambac Assurance Corporation's PRIFA-related motions [Docket Nos. 7176 and 7328] (together, the "Ambac Motions") as part of the Mediation Order. The Ambac Motions concern the validity and impact of the Commonwealth's "clawback" of revenues allegedly securing PRIFA rum tax bonds (and related Rule 2004 discovery)—an issue that, as noted, is central to confirmation to a plan of adjustment in these Title III cases.

WHEREFORE, the Committee respectfully requests that the Motion be denied.

Dated: September 4, 2019

/s/ Luc A. Despins

PAUL HASTINGS LLP
Luc. A. Despins, Esq. (Pro Hac Vice)
James R. Bliss, Esq. (Pro Hac Vice)
Michael E. Comerford, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
michaelcomerford@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*[16]

/s/ John Arrastia
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
GENOVESE JOBLOVE & BATTISTA, P.A
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Counsel to the Official Committee of Unsecured Creditors with Respect to Claims Against Underwriters and Their Affiliates*

- and -

---

[16] Paul Hastings LLP does not represent the Committee with respect to the statements in this Objection regarding underwriters or their affiliates.

7

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*