# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br><br>THIS PLEADING RELATES ONLY TO THIS TITLE II CASE[2]<br><br>(Jointly Administered)<br><br>Re: Docket No. 8297 |

## Response to Objection to Claim

Within the extension of time granted by the Court in the corresponding August 28, 2019 Order (Docket No. 8566) and pursuant to the Court's *Third Amended Notice, Case Management and Administrative Procedures* Order entered on October 24, 2017 (the "CMP Order") (Docket No. 1512-1 of Case No. 17-03283 (LTS)), as made applicable to the instant proceedings (See, Docket No. 167), Jorge A. Diaz Mayoral and Juan A. Frau Escudero ("Movants"), hereby submit the following response to the Sixty-Fourth Omnibus Objection (Docket No. 8297):

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] This clarification is made in accordance to the Court's *Order (A) Pursuant to PROMESA Section 304(G), Directing Joint Administration of Initial Title III Cases and Additional Title III Cases, and (B) Pursuant to Section 105(A) of The Bankruptcy Code, Making Certain Orders Entered on First Day Pleadings Applicable to the Additional Title III Cases.* See, Docket No. 167 at ¶ 5 of p. 4.

**I.     Identity of the Movant and its Contact Information.**

    Jorge A. Diaz Mayoral
    and Juan A. Frau Escudero
    c/o Diaz Mayoral Law
    Attn. Monique Díaz Mayoral, Esq.
    P.O. Box 364174
    San Juan, PR 00936
    Telephone: 787-552-2000
    Facsimile: 1-888-620-2043

**II.    Motion from which Movant Seeks Relief.**

Mr. Diaz Mayoral and Mr. Frau Escudero are requesting that the ***Sixty-Fourth Omnibus Objection (Substantive) Of The Commonwealth Of Puerto Rico To Claims Based On Investments In Mutual Funds*** **(Docket No. 8297)** be denied and/or overruled. Said objection was filed by the Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"). Said objection includes in Exhibit A thereto, two claims field by movants: Claim No. 152470 filed by Mr. Díaz Mayoral on 6/29/2018 for $68,498.12 and Claim No. 152283 filed by Mr. Frau Escudero on 6/29/2018 for $259,917.43.

**III.   Cause as to Why the *Sixty-Fourth Omnibus Objection (Substantive) Of The Commonwealth Of Puerto Rico To Claims Based On Investments In Mutual Funds* (Docket No. 8297) should be denied.**

    A proof of claim, filed pursuant to 11 U.S.C. § 501, is deemed allowed unless a party in interest objects. It is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr.P. 3001(f). *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–4 (3d Cir.1992); *Raj Singh v. Mariner Post–Acute Network, Inc.* (*In re Mariner Post–Acute Network, Inc.*), 2005 U.S. Dist. LEXIS 13673, *4 (D.Del. July 8, 2005). If a party in interest wishes to object1, the objector needs to overcome the presumption of validity through submission of evidence. *Id*. If the objecting party advances sufficient evidence to challenge the validity of the proof of claim, the

> burden shifts back to the claimant to prove the claim's validity by a preponderance of the evidence. *Id.*
>
> *In re Rafter*, 2007 WL 1591880, at *2 (Bkrtcy.D.N.J. 2007).

The proofs of claims of the individual investors are presumed valid. Therefore, the burden is on the Debtor to prove that said proofs of claim are invalid. The reasons presented in the *Sixty-Fourth Omnibus Objection (Substantive) Of The Commonwealth Of Puerto Rico To Claims Based On Investments In Mutual Funds* (Docket No. 8297) do not meet that burden. Instead of informing the Court that the Debtor has found that the individual investors' proofs of claim are duplicative of proofs of claims filed by mutual funds (and identifying the mutual fund's proof of claim for which each objected individual investor's proof of claim is duplicative), the Debtor presents an alternative legal theory of the individual investor being a creditor of a creditor of the Debtor (assuming that the mutual fund is the creditor of the debtor and the individual investor is a creditor of the mutual fund) and that being a creditor of a creditor of the Debtor precludes standing to file proof of claim against the Debtor.

Firstly, the reference made by the Oversight Board to a previous determination by the Court with respect to Proof of Claim Number 78877 (in Docket No. 5969, at 64:01-10) should not preclude the present consideration of the non-creditor argument, because (i) the argument that the individual investor was not a creditor of the Debtors was not made in the *Puerto Rico Sales Tax Financing Corporation's Sixth Omnibus Objection (Non-Substantive) to Deficient Claims* (Docket No. 4410) as in that motion COFINA (through the Oversight Board) only argued that the claims were duplicative of other proofs of claim and/or deficient in failing to provide a basis for asserting a claim against COFINA or another of the Debtors; (ii) the movants' claims were not objected to in that motion; and (iii) that motion was not notified to the undersigned, so the movants'

-3-

were not on notice that they needed to oppose said motion in order to defend against that argument with respect to the movants' claims in controversy here.

Secondly, it is important to note that § 501 of the Bankruptcy Code states that "[i]f a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim", 11 USCA § 501. Therefore, under § 501 of the Bankruptcy Code, an individual investor, as a co-owner of the bonds issued by the Commonwealth can file a claim if the Mutual Fund has not filed the claim. In accordance with that right, the movants, in an abundance of caution, in case the mutual funds did not timely file the corresponding proof of claim, timely filed their individual proofs of claim to safeguard their payment of their participation in the bonds issued by the Commonwealth and cannot now be penalized because of their abundance of caution, in the absence of proof from the Debtor that their individual proofs of claim are duplicative of a timely filed mutual fund's proof of claim that directly corresponds to the individual investor's proof of claim and that has been allowed.

However, in addition, the nature of an investor of a mutual fund is not akin to a creditor of a mutual fund. An investor of a mutual fund is more akin to a co-owner of the bond issued by the Commonwealth rather than a creditor of the mutual fund or even than an equity holder or owner of the legal entity that holds the bonds issued by the Debtor.

A mutual fund is a type of financial vehicle made up of a pool of money collected from many investors to invest in securities such as stocks, bonds, money market instruments, and other assets. https://www.investopedia.com/terms/m/mutualfund.asp It has a dual nature, as "both an investment and an actual company" such that "a mutual

fund investor is buying part ownership of the mutual fund company and its assets."
https://www.investopedia.com/terms/m/mutualfund.asp Basically, the mutual fund acts just like a brokerage house that takes the money of the various co-owners to buy the bonds and (after deducting the fees for making the investments) passes the payment of the bond directly to the co-owners in accordance with their percentage of ownership. https://www.investopedia.com/terms/m/mutualfund.asp

That the individual investors are co-owners of the bonds issued by the Commonwealth is an additional reason that the individual investors do have standing to present the proofs of claim under § 501 of the Bankruptcy Code.

Persuasively, we mention the U.S. Supreme Court's holding, in *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S.Ct. 1012, 1015 (2016), that, for purposes of diversity jurisdiction, a court must take into consideration the nationality of each member of a real estate trust because their shareholders are more akin to shareholders of a joint-stock company or the partners of a limited partnership than to shareholders of a corporation. The *Americold* case required the U.S. Supreme Court "to determine the citizenship of Americold Realty Trust, a 'real estate investment trust' organized under Maryland law", and, in that case, the U.S. Supreme Court decided that Americold "possesse[d] its members' citizenship" because, under Maryland law, a real estate investment trust is an "unincorporated business trust or association" in which property is held and managed "for the benefit and profit of any person who may become a shareholder" and, therefore, Americold's "shareholders appear[ed] to be in the same position as the shareholders of a joint-stock company or the partners of a limited partnership—both of whom [the U.S. Supreme Court] view[ed] as members of their relevant entities" *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S.Ct. at 1015-

1016. This case is cited persuasively, because the dual nature of the mutual funds as both investment vehicles and legal entities (even if they are also incorporated entities) and that the securities they hold are held and managed for the benefit and profit of any person who may become a shareholder of the mutual fund, makes them more akin to a real estate investment trust, in the sense that their shareholders are also co-owners of the securities issued by the Commonwealth and their shareholders have a beneficial interest in the securities they hold.

This is especially relevant because the relevant mutual funds are investment companies under the Puerto Rico Investment Companies Act PR ST T. 10 § 661 *et seq*. and/or Puerto Rico Investment Companies Act of 2013, PR ST T. 10 § 691 *et seq*. not the U.S. Investment Company Act of 1940. *See* Exhibits 1, 2 and 3 hereto. The Puerto Rico Investment Companies Act PR ST T. 10 § 661 *et seq*. and/or Puerto Rico Investment Companies Act of 2013, PR ST T. 10 § 691 *et seq*. regulate all types of investment companies, including corporations and unincorporated entities, such as a partnership, a limited partnership, a limited liability company, an association, a joint stock company, a trust, a fund, or any organized group of persons whether incorporated or not. PR ST T. 10 § 661(a)(5) and 691(c). An investment company means "any issuer who is or holds itself out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or trading in securities", PR ST T. 10 § 662(a) and 691(d), and an issuer is "every company that issues or proposes to issue any security, or has outstanding any such security issued by it", PR ST T. 10 § 661(a)(3). It is the characteristics of these regulations that do not apply to ordinary corporation and which are applicable to both incorporated and unincorporated investment companies, that make the shareholders have a beneficial interest in the securities similar to trust

beneficiaries and that make the investment advisors and/or mutual fund administrators similar to trustees in a trust, so that the individual investors do have standing to present their proofs of claim in these PROMESA Cases. For example, § 662 states that "[e]very investment company shall offer its securities to the general public when its outstanding securities (other than short-term debentures) are owned *for the benefit* of more than 100 persons. PR ST T. 10 § 662 (emphasis added). Also, § 662 that "[e]very investment company shall offer its securities to the general public when its outstanding securities (other than short-term debentures) are owned *for the benefit* of more than 100 persons. PR ST T. 10 § 662 (emphasis added).

However, if these individual investors' proof of claim are actually duplicative of allowed mutual funds' proofs of claim, then it is not necessary for the Court to determine the nature of the individual investors' interest in the mutual funds, because the individual investors' proofs of claim can simply be paid through the mutual fund's proof of claim or, in the alternative, be disallowed only the extent they are duplicative of a mutual fund's proofs of claim that are ultimately allowed and the Court can retain jurisdiction to reverse the disallowance if the duplicative mutual fund's proof of claims are ultimately disallowed for any reason. Nevertheless, in order for the movants' proofs of claims to be disallowed as duplicative, the Oversight Board must meet its burden of clearly identifying the mutual funds' proofs of claim which the movants' proofs of claims are duplicative.

Lastly, it is in the public interest to allow said proofs of claim and require the Debtors to clearly identify the specific allowed mutual fund's proof of claim that the Debtor alleges are duplicative of the individual investor's proof of claim, including the movants' proofs of claim. This requirement and the allowance of the individual investors'

proofs of claim will not cause undue burden to the Debtors with respect to the instant Title III Cases because: (1) the Oversight Board is the appropriate entity with the knowledge and necessary expertise to inform the individual investors and the Court if the proofs of claims of the individual investors are duplicative of previously filed proofs of claim that were timely filed by mutual funds and have been allowed (just as they were able to identify duplicative proofs of claim with respect to COFINA – *see* Docket No. 5969 at 52:06-09; 52:20-22; 60:12-16; 60:19-22; 61:01-04; 61:21-24; 62:02-06; 62:20-22; 63:11-14; 66:05-08; 66:15-19; 67:15-19; 68:22-25 and 69:1; 70:18-20; 70:23-25 and 71:1; 71:05-12; 71:15-20; 72:02-04; 72:12-19; and 74:18-21); (2) the allowance of the individual investors' proofs of claim will not prejudice the interests of other creditors (as the Commonwealth can simply state in the reorganization plan that any duplicative individual investors' proofs of claim shall be paid through the payment of the allowed mutual funds' proofs of claims); and (3) the interests of public policy warrant the allowance of the individual investors' proofs of claims as it is the public interest that all valid claims be paid by the Commonwealth and the impact of the disallowance of the individual investors' proofs of claims will have a devastating effect on the individual investors (whose claim would then remain disallowed even if there were no mutual funds' proofs of claims that were duplicative of their individual claim or if the mutual funds' proof of claims are later disallowed for any reason), which is not outweighed by any possible harm upon the Debtor, who can simply state in the reorganization plan that any duplicative proofs of claim shall be paid through the payment of the mutual funds' proofs of claims that are allowed or can identify the specific previously filed proofs of claim that were timely filed by mutual funds and have been allowed that are duplicative of the objected individual investors' proofs of claim. However, if the corresponding

mutual funds' proofs of claims is later disallowed for any reason, then the individual investor's proofs of claims should be preserved (which is another reason the duplicative mutual funds' proofs of claims must be clearly identified by the Oversight Board).

WHEREFORE, the movants herein, Mr. Diaz Mayoral and Mr. Frau Escudero, respectfully request that this Honorable Court overrule or deny the *Sixty-Fourth Omnibus Objection to Claims* and/or with respect to the herein appearing parties' proofs of claim, including but not limited to POC Nos. 152470 and 152283, and to allow the proofs of claim as filed; or, in the alternative, to allow the objection only the extent they are duplicative of a mutual fund's proof of claims that are ultimately allowed and retain jurisdiction to reverse the disallowance if the duplicative mutual fund's proof of claims are ultimately disallowed for any reason.

I HEREBY CERTIFY that the foregoing has been filed with the Court's CM/ECF which will automatically send an exact copy to all parties so subscribed on this 4th day of September, 2019, including the attorneys for the Financial Oversight and Management Board as representative for the Commonwealth: Hermann D. Bauer and Daniel J. Pérez-Refojos, both of O'neill & Borges, LLC and Martin J. Bienenstock of Proskauer Rose, LLP.

RESPECTFULLY SUBMITTED, in San Juan, PR, this 4th day of September, 2019.

Attorney for
Jorge A. Díaz Mayoral and
Juan A. Frau Escudero

s/Monique J. Díaz Mayoral
Monique J. Díaz Mayoral
USDC-PR No. 225712
diazmayorallaw@gmail.com
P.O. Box 364134
San Juan PR 00936-4134
Tel. 787-552-2000
Fax 1-888-620-2043