**Opposition Deadline**: September 6, 2019 (proposed)
**Hearing Date**: Taken on submission (proposed)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*, Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |

**AAFAF AND PREPA'S URGENT MOTION FOR PROTECTIVE ORDER QUASHING OFFICIAL COMMITTEE OF UNSECURED CREDITORS' DEPOSITION NOTICE TO <u>JOSE ORTIZ</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 9014, and Federal Rule of Civil Procedure 26(c), made applicable to these proceedings by Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA")[2] (48 U.S.C. § 2170), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Puerto Rico Electric Power Authority ("PREPA")[3] respectfully submit *AAFAF and PREPA's Urgent Motion for Protective Order Quashing Official Committee of Unsecured Creditors' Deposition Notice to Jose Ortiz* (the "Motion"), requesting that this Court enter a protective order quashing the deposition notice to Jose Ortiz (the "Ortiz Deposition Notice"),[4] which was served untimely on AAFAF, PREPA, and the Oversight Board (the "Government Parties") on August 16, 2019, by the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee" or "UCC"). In support of the Motion, AAFAF and PREPA state as follows:

### INTRODUCTION AND BACKGROUND

1. The Title III Court's Original Scheduling Order[5] on the 9019 Motion[6] required Objectors[7] to serve document requests and interrogatories by May 22, 2019, and to serve deposition notices or subpoenas by June 3, 2019 [ECF No. 1253]. Pursuant to this Scheduling

---

[2] PROMESA has been codified in 48 U.S.C. §§ 2101–2241.
[3] The Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as PREPA's representative pursuant to section 315(b) of PROMESA, has authorized the undersigned to file the Motion on behalf of PREPA.
[4] *See* Exhibit B.
[5] The "Original Scheduling Order" is the Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1), and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement, 17-4780 (May 22, 2019) [ECF 1253].
[6] The "9019 Motion" is the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922 and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [the "RSA"] and Tolling Certain Limitations Periods [Dkt. No. 1235], as supplemented by the amended proposed order filed on June 18, 2019 (the "Amended Proposed Order" [ECF No. 1361, Ex. A]), and the supplemental memoranda of law and facts and supporting declarations the Government Parties filed on July 2 and July 19, 2019 (the "Supplemental Submissions" [ECF No. 1425, 1426, 1427, 1428, 1429, 1486]).
[7] "Objectors" are (1) the Committee, (2) Cortland Capital Market Services LLC, SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (together, the "Fuel Line Lenders"); (3) Unión de Trabajadores de la Industria Eléctrica y Riego Inc. ("UTIER"); and (4) Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica's ("SREAEE").

1

Order, on May 22, 2019, the Committee served the Government Parties and their consultants with 12 sets of requests for production of documents, three sets of interrogatories, and nine requests for deposition testimony. That same day, the Fuel Line Lenders served one set of document requests, one set of interrogatories, and seven deposition notices.

2. After the Government Parties made a supplemental filing on July 2, 2019, the Title III Court permitted additional discovery intended to be narrowly targeted to the information set forth in that filing. The Revised Scheduling Order[8] set a July 5, 2019 deadline to serve deposition notices and supplemental document requests, with the caveat that "[a]ny supplemental document requests shall be related to any new information asserted in the July 2 supplemental filing and shall not be repetitive of prior discovery requests." [ECF No. 1366]. Pursuant to the Revised Scheduling Order, on July 5, 2019, the Committee served the Government Parties and their consultants with four additional sets of document requests and 10 deposition notices (including the same nine parties identified on May 22, 2019). The Fuel Line Lenders served one set of document requests, and ten deposition notices (including seven parties they previously identified on May 22, 2019).

3. While the schedule in this matter has been amended two more times since the Revised Scheduling Order, the deadline to serve deposition notices and document subpoenas has not been extended. [ECF Nos. 1534, 1579]. The Third Revised Scheduling Order[9] allows for

---

[8] The "Revised Scheduling Order" is the Revised Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of PREPA and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1), and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement, No. 17-4780 (June 20, 2019) [ECF 1366].

[9] The "Third Revised Scheduling Order" is the Third Revised Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of PREPA and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1), and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement (August 9, 2019) [ECF 1579].

2

additional deposition notices to non-declarants only upon a showing of good cause and does not allow for additional document requests. [ECF No. 1579 at 2, n.2].

4. Nonetheless, the Committee and the Fuel Line Lenders have simply repeatedly refused to abide by either of these requirements. While the Government Parties have attempted to work with Objectors in good faith to avoid unnecessarily involving the Court, it is clear that intervention is now warranted to keep discovery within the bounds properly articulated by the Title III Court, informed both by timing considerations and by what is relevant to the scope of issues before the Title III Court on the 9019 Motion.

5. On July 15, 2019, the Fuel Line Lenders untimely served the Government Parties with additional document requests and 30(b)(6) deposition topics concerning PREPA's Conditional Motion to Make an Offsetting Change in Base Rate Charges, filed before its regulator, the Puerto Rico Energy Bureau on July 3, 2019. The Committee served substantially identical document requests and deposition topics on the Government Parties on July 16, 2019. Notwithstanding the untimeliness of these requests, and their lack of relevance to the issues before the Title III Court on the 9019 Motion, the Government Parties agreed in good faith to produce a limited set of responsive materials to resolve the Fuel Line Lenders' pending motion to compel, which the Committee joined.[10]

---

[10] *See* Joint Opposition to the Urgent Omnibus Motion of [Fuel Line Lenders] to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion, ¶ 4, No. 17-4780 (Aug. 9, 2019) [ECF 1580] ("Notwithstanding the lack of relevance of the discovery sought, the Government Parties have been willing to make reasonable productions in response to these requests."); Joinder of Official Committee of Unsecured Creditors to Urgent Omnibus Motion of [Fuel Line Lenders] to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion, No. 17-4780 (Aug. 6, 2019) [ECF 1568]; Notice of Withdrawal of Urgent Motion of [Fuel Line Lenders] to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion, No. 17-4780 (Aug. 19, 2019) [ECF 1597].

3

6. On July 23, 2019, the Fuel Line Lenders served document requests relating to the treatment of the Fuel Line Loans as Current Expenses. The Fuel Line Lenders later agreed that these requests were subsumed by their first set of discovery requests served on May 22, 2019.[11]

7. On August 4, 2019, the Fuel Line Lenders served an untimely notice for the deposition of Jose Roque Torres, PREPA's Treasurer.[12] AAFAF and PREPA agreed with the Fuel Line Lenders to defer discussions of any deposition of Mr. Torres until after PREPA's 30(b)(6) deposition.[13]

8. Then, on August 16, 2019, more than seven weeks after the July 5 deadline, the Committee propounded on the Government Parties: (1) deposition topics and document requests seeking testimony and materials regarding the services BDO Puerto Rico ("BDO") provided for PREPA[14] (the "BDO Requests") and (2) the Ortiz Deposition Notice, a deposition notice directed to Jose Ortiz, the Chief Executive Officer of PREPA.[15]

9. The BDO Requests sought information regarding the services that BDO provided to PREPA. But as the Government Parties have represented to the Committee, BDO did not negotiate the RSA and the Government Parties did not rely on BDO's work to inform its decision-making process.[16] After extensive meet and confer, on September 4, 2019, counsel for the Committee informed counsel for the Government Parties that the Committee would withdraw the BDO Requests.[17]

10. The deposition notice to Jose Ortiz is equally improper but the Committee refuses to withdraw it. While Jose Ortiz is the Chief Executive Officer of PREPA, he was not involved

---

[11] *See* Exhibit C, Email from Angela K. Herring to Government Parties (Aug. 1, 2019).
[12] *See* Exhibit D.
[13] *See* Exhibit E, Email from Angela K. Herring to Government Parties (Aug. 6, 2019).
[14] *See* Exhibits F-I.
[15] *See* Exhibit B.
[16] *See* Exhibit J, Email from Jennifer Jones to Nicholas Bassett (Aug. 29, 2019).
[17] *See* Exhibit K, Email from Nicholas Bassett to Gregg Mashberg and Elizabeth McKeen (Sept. 4, 2019).

4

in the RSA negotiations. As a matter of Puerto Rico law, AAFAF served as PREPA's agent in negotiating that agreement. Act 2-2017 § 5 (c). Moreover, the Committee has been aware of Jose Ortiz's role at PREPA since before the start of this litigation. There is simply no justification for an untimely deposition notice.

11. Allowing the Committee to propound the Ortiz Deposition Notice at this late juncture would only further inject undue delay into proceedings that have already been significantly delayed as a result of the Committee's overbroad and unduly burdensome discovery demands. A protective order is warranted.

### RELIEF REQUESTED

12. AAFAF and PREPA respectfully request that this Court enter a protective order, substantially in the form of the accompanying proposed order at Exhibit A, relieving Mr. Ortiz of the obligation of appearing at a deposition.

### ARGUMENT

### I. APPLICABLE LEGAL STANDARD

13. The District Court has wide discretion to limit discovery, *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001), including for the purpose of ensuring that it is "proportional to the needs of the case…." *SEC v. Navellier & Assocs., Inc.*, No. 17-11633, 2019 WL 688164, at *1 (D. Mass. Feb. 19, 2019). "[T]he trial court is required to balance the burden of proposed discovery against the likely benefit." *Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 400 (1st Cir. 2005).

14. Discovery into matters irrelevant to the issues before the court is by its very nature unduly burdensome and expensive. *Cf. U.S. v. Sosa*, 78 F. Supp. 2d 20, 24 (D.P.R. 1999) (motion seeking discovery into issues "irrelevant to the present controversy," was "burdensome" and a "bad faith attempt to harass"). When a party seeks to take discovery that is of limited

5

probative value relative to the burden it imposes, "[t]he court may, for good cause, issue an order to protect a party or person from … [that] undue burden or expense . . . [including] forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A).

15. Moreover, a protective order is also appropriate where a party fails to timely pursue discovery. *See, e.g.*, *Healy v. U.S. Bank, N.A. for LSF9 Master Participation Tr.*, No. 16-11996-GAO, 2018 WL 3733934, at *1 (D. Mass. Aug. 3, 2018) (granting protective order excusing responses to untimely requests); *Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 29 (1st Cir. 2013) (a party who fails to diligently pursue discovery cannot subsequently claim good cause for that same discovery).

## II. THE COURT SHOULD GRANT A PROTECTIVE ORDER WITH RESPECT TO THE COMMITTEE'S DEPOSITION NOTICE TO JOSE ORTIZ.

### A. There Is Not Good Cause for an Untimely Deposition Notice.

16. The Committee argues that its untimely deposition notice to Jose Ortiz is justified for three reasons. First, the Committee says that Mr. Ortiz has made recent unspecified statements about the RSA. Second, the Committee says that the deposition is justified because Christian Sobrino resigned and AAFAF and PREPA had not yet designated a witness to replace him. Third, the UCC says that the deposition is justified because this Court only recently ordered AAFAF and PREPA to designate Mr. Ortiz as a custodian.[18] None of these arguments is persuasive.

17. First, that Jose Ortiz made public statements about the RSA months after it was executed does not justify an untimely deposition notice. *See In re Bradley*, No. 10-16021-WCH,

---

[18] Exhibit L, Email from Nicholas Bassett to the Government Parties (Aug. 16, 2019). After AAFAF and PREPA informed the Committee that Fernando Batlle would replace Christian Sobrino as a witness, the Committee asserted that Mr. Ortiz's deposition is additionally proper because (i) "not a single government official from either AAFAF or PREPA is slated to testify," and (ii) "at present, PREPA and AAFAF are only offering one witness—Mr. Batlle—for deposition." Exhibit M, Email from Counsel for the Committee to Counsel for the Government Parties (Aug. 28, 2019).

6

2014 WL 2612482, at *3 (Bankr. D. Mass. June 11, 2014) (sustaining relevancy objection to admissibility of emails because the "post-hoc emails were not relevant" to the issue at hand, given that "the earliest email post-dates the relevant time period"). Moreover, the Committee has never identified any particular statements that supposedly justify deposing Mr. Ortiz, let alone explained how those statements excuse an untimely deposition notice. If the Committee is referring to comments Jose Ortiz made on or around August 13, 2019, in which Mr. Ortiz noted that delays in litigation of the 9019 Motion may delay the Transformation Transaction because it is critical for T&D proponents to have certainty regarding the cost of the settlement with creditors before proceeding with the transaction, this is hardly a late-breaking revelation. The Government Parties have repeatedly asserted that achieving settlements with legacy debtholders is critical to transformation, and the Committee will receive testimony from multiple witnesses— AAFAF and PREPA's 30(b)(6) witness, Natalie Jaresko, David Brownstein, and Fred Chapados—on this point. That Mr. Ortiz echoed the sentiments of the parties to the negotiation does not justify an untimely deposition notice.

18. Second, Christian Sobrino's resignation does not justify deposing Jose Ortiz. AAFAF and PREPA have informed the Objectors that Fernando Batlle will serve as AAFAF's and PREPA's 30(b)(6) witness for all of the topics for which AAFAF and PREPA had previously designated Mr. Sobrino.[19]

19. Third, the Committee's suggestion that it could not have known it would want to take Jose Ortiz's declarations until this Court's July 30, 2019 order adding Mr. Ortiz as a document custodian strains credulity. Mr. Ortiz did not suddenly become a person of interest for the Committee on July 30, 2019. The Committee included Mr. Ortiz on its initial disclosures,

---

[19] Exhibit N, Email from A. Pavel to Objectors (Aug. 27, 2019).

7

served May 30, 2019, and intentionally chose not to serve a deposition notice on him at that time.[20] The Committee identified Mr. Ortiz as a "key custodian" in its June 3, 2019 Motion to compel—the day deposition notices were due.[21] The Committee had ample opportunity to serve a deposition notice within the time allowed under the scheduling order and elected not to. There is no excuse for the Committee's untimely notice now.

### B. The Committee's Cumulative Apex Deposition Notice Is Improper.

20. Where a party, as here, seeks to depose a high-level official, courts are especially cognizant of the risk of undue burden. *See B. Fernandez & Hnos., Inc. v. Int'l B'hd of Teamsters*, 285 F.R.D. 185, 186 (D.P.R. 2012) (high-ranking officials are "particularly vulnerable to unwarranted harassment and abuse"); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (high-ranking officials have a "right to be protected" because they "can be easily subjected to unwarranted harassment and abuse"). It is improper to depose PREPA's Chief Executive Officer when the information relevant to the 9019 Motion is available through less intrusive methods: document discovery and 30(b)(6) depositions. *See B. Fernandez & Hnos., Inc.*, 285 F.R.D. at 186 (granting protective order).

21. As AAFAF and PREPA have previously explained, Mr. Ortiz did not participate in the RSA negotiations. Allowing Mr. Ortiz's deposition to proceed would be a classic example of a "fishing expedition." *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989) (holding that a party may not "undertake wholly exploratory operations in the vague hope that something helpful will turn up"); *Tolliver v. Fed. Republic of Nigeria*, 265 F. Supp. 2d 873, 880

---

[20] Exhibit O, Official Committee of Unsecured Creditors' Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1) in Connection with Rule 9019 Motion to Approve Settlement with PREPA Bondholders at 4, No. 17-4780 (May 30, 2019).

[21] Official Committee of Unsecured Creditors' Omnibus Motion to Compel Production of Documents in Connection with PREPA RSA Rule 9019 Settlement Motion at 16, No. 17-4780 (June 3, 2019) [ECF 1269].

(W.D. Mich. 2003) ("The mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions."). Moreover, the burden to AAFAF and PREPA of requiring the CEO of the Commonwealth's sole electricity provider to block out time away from his other obligations during hurricane season to prepare for and sit for a deposition to give cumulative testimony is far outweighed by any marginal benefit to the Committee.

## CONCLUSION

For the reasons set forth herein, AAFAF and PREPA respectfully request that this Court enter a protective order, substantially in the form attached as Exhibit A, barring the deposition of Jose Ortiz.

## NOTICE

22. Notice of the Motion has been provided to the Committee or its counsel.

## CERTIFICATION

Pursuant to Local Rule 9013-1 and paragraph I.H of the Tenth Amended Case Management Procedures [Case No. 17-3283, Dkt. No. 8027-1], AAFAF and PREPA hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent hearing; (b) not created the urgency through a lack of due diligence; (c) made a bona fide effort to resolve the matter without a hearing; (d) made reasonable, good faith communications in an effort to resolve or narrow the issues being brought to the court; and (e) conferred with counsel for the Committee, who have informed counsel for AAFAF and PREPA of the Committee's intent to oppose the Motion.

Dated: September 4, 2019
    San Juan, Puerto Rico

Respectfully submitted,

*/s/ Elizabeth L. McKeen*
John J. Rapisardi
Nancy A. Mitchell
Peter Friedman
(Admitted *Pro Hac Vice*)

**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

-and-

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

-and-

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
lmarini@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ, LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*