**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                        Debtors.¹ | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**DRA PARTIES' REPLY TO UCC'S OPPOSITION TO
URGENT JOINT MOTION BY THE DRA PARTIES REQUESTING THAT THE
OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
CLAIM OF GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO BE
SUBJECT TO THE ORDER REGARDING STAY AND MANDATORY MEDIATION**

**COME NOW** AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company which serves as the collateral monitor for Wilmington Trust, N.A. (the "Collateral Monitor", and together with the Servicer, collectively, the "DRA Parties") in connection with the new bonds that the DRA issued pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018, and the approved Qualifying Modification for the Government Development Bank for Puerto Rico (the "GDB")² under Title VI of the *Puerto Rico Oversight, Management and*

---

¹ The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).
² *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS) (Nov. 7, 2018).

*Economic Stability Act*, by and through their respective undersigned legal counsel, and respectfully file this reply to the Official Committee of Unsecured Creditors for the Commonwealth of Puerto Rico's (the "UCC") opposition (the "Opposition") (Dkt. No. 8598) to the DRA Parties' *Urgent Joint Motion by the DRA Parties Requesting that the Objection of Official Committee of Unsecured Creditors to Claim of Government Development Bank for Puerto Rico be Subject to the Order Regarding Stay and Mandatory Mediation* (the "Motion") (Dkt. 8551).

## PRELIMINARY STATEMENT

The Court should order the Objection into mediation. The UCC filed the Objection[3] on July 15, 2019. The UCC objected to allowance of $527.5million of the DRA's claims against the Commonwealth – an amount that constitutes approximately 20% of the DRA's claims in the Title III cases. The UCC sought to disallow those claims as avoidable under Chapter 5 of the Bankruptcy Code. Subsequently, the Court entered its Mediation Order, giving the Mediation Team authority over key litigations among significant creditors in the various Title III cases, and authority to work toward consensual Title III plans of adjustment.

The DRA Parties then requested that the UCC consent to mediating the Objection. The DRA Parties expressed concern they would have difficulty reaching an agreement around settlement of their claims in the Title III cases if they had uncertainty over such a substantial portion of the DRA's portfolio. The UCC refused and the DRA Parties filed the Motion seeking a Court order placing the Objection in the Mediation for the same reasons. The UCC opposed the Motion on the grounds that, *inter alia*, the Objection is not a "gating" issue to a plan and the Mediation Order does not permit the Mediators to consider the Objection.

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

2

Placing the Objection into mediation would help facilitate consensual resolution of all of the DRA's claims and concerns. Failure to do so would make it difficult for the DRA Parties to consent to any proposed plans of adjustment. The DRA Parties would face grave uncertainty that the Objection would unwind a significant portion of their recovery – after they had consented to a proposed plan.

The Mediation Order clearly intends to cover matters like the Objection. The Court explicitly seeks to avoid piecemeal and duplicative litigation – which will occur if the Court proceeds with certain of the stayed avoidance actions, while failing to consider similar issues in the Objection. Moreover, the Mediation Order explicitly authorizes the Mediation Team to consider resolution of claims objections with respect to similarly situated GO bonds. Failing to include the Objection in the process would heighten the piecemeal litigation the Court seeks to avoid.

For these reasons and those detailed below, the DRA Parties request that the Court approve the Motion and order the Objection into mediation.[4]

## DISCUSSION

**I.   Leaving the Objection Outside Mediation Will Make It Difficult to Resolve the DRA Parties' Issues in the Title III Cases**

1.      As noted previously before this Court, the DRA Parties own more than $2.5 billion in claims at HTA and more than $527.5 million in claims against the Commonwealth. *See* Offering Memorandum for GDB Debt Recovery Authority Bonds (Taxable), dated November 7, 2018, at 128. The DRA also holds more than $2.25 billion in claims against non-debtor Commonwealth municipalities and other entities. The DRA is likely to prove an essential party to any resolution of the Title III cases.

---

[4] On information and belief, the GDB Public Entity Trust does not object to the Motion.

2. When the UCC argues that the Objection "presents a claims allowance matter that can be resolved independently of (and after) confirmation of a Commonwealth plan of adjustment" (*Id.* at ¶ 1), they fail to recognize the broader issues posed by doing so. Under the UCC's approach, the DRA Parties would enter into negotiations surrounding a potential recovery on their GO debt without knowing if they could, in fact, recover on those claims. The DRA Parties cannot abide to such a possibility.

3. Failure to address the Objection in the mediation will leave uncertainty among the parties and compromise the efficiency of the mediation process. Therefore, the DRA Parties believe that including the Objection in the mediation process is not only appropriate under the terms of the Mediation Order, it is necessary to help foster a consensual plan process.

4. The DRA Parties recognize the UCC's concerns that inserting "tangential issues into the mediation process will make the already complicated task even more daunting – and could, if left unchecked, derail the entire process." Opposition at ¶ 7. The DRA Parties do not believe the mediation should sweep in *all* claim objections. However, the Mediation Team likely needs to address the validity of the GDB Claim to accomplish meaningful resolution of the DRA Parties' issues regarding Commonwealth and HTA plans of adjustment. Therefore, resolution of the GDB Claim cannot wait until the post-confirmation claims allowance process as the UCC suggests and should be included in any mediation.

**II. The UCC's Arguments Lack Merit and Mischaracterize the Mediation Order**

    **A. The Mediation Order Grants the Mediation Team Authority to Consider This Objection**

5. The UCC argues that the Court should not grant the Motion because the "principal purpose of the Mediation is 'to identify efficiently the issues that must be litigated or otherwise resolved to achieve confirmation of a plan of adjustment for the Commonwealth (and other debtors

4

and potential debtors in the Title III proceedings).'" Opposition at ¶ 2 (quoting Mediation Order at 1).

6.  While the DRA Parties agree that the scheduling of litigation matters helped drive the Court's Mediation Order, the Court granted the Mediation Team a broader mandate than merely scheduling specified litigation. The Mediation Order grants the Mediation Team the authority to consider procedures for the resolution of issues "including the validity of [Commonwealth GO Bonds]…some or all of which have been the subject of challenges or *claim objections*." Mediation Order at ¶ B.1 (emphasis added).[5] It also permits the Mediation Team to commence substantive mediation on any of the issues set forth in the Mediation Order. *See id.* ¶ C.

7.  Here, the Court has granted the Mediation Team authority to consider resolution of the validity of GO bonds – and presumably other similarly classified GO obligations like the GDB Claim. Moreover, the Court explicitly authorized the Mediation Team to consider procedures for resolution of "claim objections" related to those obligations. Given this broad authority, and for the reasons detailed above, the Mediation Team should include the Objection within their purview of their mediation efforts, and the Court should grant the Motion.

 **B.    Not Including the Objection in the Mediation Could Lead to Piecemeal Litigation**

8.  Putting aside that the Mediation Order specifically authorizes the Mediation Team to address key claims objections, the UCC argues that the Court should not order the Objection into mediation because it differs from the many avoidance actions covered by the Mediation Order.

---

[5] While the DRA Parties acknowledge that their claims against the Commonwealth consist of bilateral loans and a loan guaranty with GO priority and status, rather than GO Bonds, assuming the DRA's Commonwealth claims are of same priority as the Commonwealth GO Bonds, the DRA Parties believe the Court intends for the Mediation Team to address these issues collectively in mediation.

5

Opposition ¶¶ 4-6. While the Objection is, of course, not an avoidance action and, thus, varies in procedural nature from the complaints explicitly referenced in Appendix I to the Mediation Order, the Objection nonetheless overlaps in meaningful ways with them.

9. Therefore, the Court should grant the Motion to avoid piecemeal litigation of overlapping issues − which the Court explicitly seeks to avoid. *See* July 24, 2019 Hr'g Tr. at 55:20-24 ("Litigation in separate silos would be an inefficient use of judicial and debtor resources."); *id.* at 82: 21-24 ("The intention is to stay the matters trying to construct procedures and particular silos so that there can be a look at things on a more crosscutting basis.").

10. The Objection's main argument revolves around the UCC's request for alleged disallowance of the GDB Claim under section 502(d) of the Bankruptcy Code. Section 502(d) provides that:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

11. "Section 502(d) is generally operative…when the trustee, having successfully avoided transfers under the sections dealing with the trustee's avoidance powers (including sections 544, 547 and 548), may recover under section 550". 4 Collier on Bankruptcy P 502.05[1] (16th 2019). Stated in another way, an objection to claim under section 502(d) based on the supposed existence of an avoidable transfer can only be successful if an actual avoidable transfer exists. *See Id.* ("In cases where the trustee brings avoidance actions under sections 544, 547 or 548, *section 502(d) has the practical effect of delaying recovery by the defendants on their claims*

6

*until the actions are resolved.*") (emphasis added). See also Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.), 375 F.3d 51, 57 n.4 (1st Cir. 2004).

12. Because the primary thrust of the UCC's Objection springs from section 502(d) of the Bankruptcy Code, the UCC's Objection resembles an avoidance action. The UCC argues, for example:

    a. That GDB allegedly controlled the Title III debtors' bond offerings and in a manner that benefitted GDB as a creditor of the Commonwealth relative to others. See Objection at ¶ 27;

    b. That the 2014 GO bond offering was allegedly conducted to enhance the GDB's balance sheet for the benefit of the GDB's officers and directors and hindered or delayed other Commonwealth creditors. See id. at ¶ 28;

    c. As a result of the above, GDB allegedly received $1.6 billion in transfers for which it is liable under section 544 and applicable non-bankruptcy law, as well as avoidable as purported actual and/or constructive fraudulent transfers under section 548 of the Bankruptcy Code because a portion of the 2014 GO bond proceeds were used to pay existing GDB debt. See id. at ¶ 22-24; and

    d. The GDB supposedly received more than $110 million in preferential payments from the Commonwealth under section 547 of the Code. See id. at ¶ 29.

13. Although the issues raised in the Objection are not identical to the matters listed in the Mediation Order, similar issues arise in several of the avoidance actions and challenges included in the mediation already. These include: (a) GDB's role in the GO bond issuances (*see*

7

the Underwriters Litigation at 19-AP-280); (b) the use of GO bond proceeds to pay pre-existing GDB debt (*see* Dkts. No. 4784, 7057, 7137, and 7154); and (c) relief for avoidance actions under 11 U.S.C. §§ 544, 547, and 548 for alleged preferential or fraudulent conveyances regarding the Commonwealth's use and transfer of GO bond proceeds (*see* 19-AP-281; 19-AP-282; 19-AP-283; 19-AP-284; 19- AP-285; 19-AP-286; 19-AP-287; and 19-AP-288).

14. Clearly, the Mediation Team's proposed litigation schedule – and the Court's ultimate scheduling order – will touch on many of these issues prior to confirmation. Accordingly, the Mediation Team and the Court should address the DRA Parties' overlapping issues concurrent with other parties to avoid piecemeal litigation.

**WHEREFORE,** the DRA Parties respectfully request that the Opposition (Dkt. 8598) be DENIED and the Motion be GRANTED (Dkt. 8551) through an order substantially in the form as the one included at Dkt. 8551-1.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 6th day of September, 2019.

| | |
|---|---|
| **MCCONNELL VALDÉS LLC**<br><br>270 Muñoz Rivera Avenue, Suite 7<br>Hato Rey, Puerto Rico 00918<br>PO Box 364225<br>San Juan, Puerto Rico 00936-4225<br>Telephone: 787-250-5632<br>Facsimile: 787-759-9225<br><br>By: /s/*Arturo J. García-Solá*<br>Arturo J. García-Solá<br>USDC No. 201903<br>Email: ajg@mcvpr.com<br><br>By: /s/*Nayuan Zouairabani*<br>Nayuan Zouairabani<br>USDC No. 226411<br>Email: nzt@mcvpr.com<br><br>*Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority* | **C. CONDE & ASSOC. LAW OFFICES**<br><br>By: /s/ *Carmen D. Conde Torres*<br><br>Carmen D. Conde Torres<br>(USDC No. 207312)<br>254 San José Street<br>Suite 5<br>San Juan, PR 00901-1523<br>Tel. 787-729-2900<br>Fax. 787-729-2203<br>E-Mail: condecarmen@condelaw.com<br><br>-and-<br><br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br><br>By: /s/ *Douglas S. Mintz*<br>Douglas S. Mintz (admitted pro hac vice)<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Telephone: (202) 339-8400<br>Facsimile: (202) 339-8500<br>E-mail: dmintz@orrick.com<br><br>and<br><br>Peter Amend (admitted pro hac vice)<br>51 West 52nd Street<br>New York, N.Y. 10019<br>Telephone: (212) 506-5000<br>E-mail: pamend@orrick.com<br><br>*Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority* |