# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- X
: 
In re: :
 :
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
 :
    as representative of : Case No. 17-BK-3283 (LTS)
 :
THE COMMONWEALTH OF PUERTO RICO *et al.,* : (Jointly Administered)
 :
    Debtors.[1] :
---------------------------------------------------------------------- X
 :
In re: :
 :
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
 :
    as representative of : Case No. 17-BK-4780 (LTS)
 :
PUERTO RICO ELECTRIC POWER AUTHORITY : **This filing relates only to**
 : **Case No. 17-BK-4780 (LTS)**
 :
    Debtor. :
---------------------------------------------------------------------- X

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
AAFAF AND PREPA'S URGENT MOTION FOR PROTECTIVE ORDER QUASHING
OFFICIAL COMMITTEE OF UNSECURED CREDITORS' DEPOSITION NOTICE TO
<u>JOSE ORTIZ</u>**

---

[1]     The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1
ARGUMENT .................................................................................................................................. 4
I.    Committee Has Not Served Unduly Burdensome Discovery or Sought to Delay The Litigation of the 9019 Motion ................................................................................... 4
II.   Deposition is Highly Relevant, Not Cumulative, and Should be Allowed ...................... 5
     A.    Mr. Ortiz Has Relevant and Unique Information ................................................ 6
     B.    Deposition Would Not Be Unduly Burdensome ................................................. 9
III.  Deposition Notice is Timely ............................................................................................10
CONCLUSION..............................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters*,
   285 F.R.D. 185 (D.P.R. 2012) ..........................................................................................6

*Gen. Star Indem. Co. v. Platinum Indem. Ltd.*,
   210 F.R.D. 80 (S.D.N.Y. 2002) .........................................................................................9

*Healy v. U.S. Bank, N.A. for LSF9 Master Participation Tr.*,
   No. 16-11996-GAO, 2018 WL 3733934 (D. Mass. Aug. 3, 2018) ......................................12

*Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*,
   No. CIV. 10-11041-NMG, 2013 WL 1833010 (D. Mass. Apr. 30, 2013) ....................... 5, 6, 9

*Mulvey v. Chrysler Corp.*,
   106 F.R.D. 364 (D.R.I. 1985) ............................................................................................6

*Rivera-Almadovar v. Instituto Socioeconomico Comunitario, Inc.*,
   730 F.3d 23 (1st Cir. 2013) ..............................................................................................12

*Travelers Rental Co. v. Ford Motor Co.*,
   116 F.R.D. 140 (D. Mass. 1987) ........................................................................................6

To the Honorable Magistrate Judge Judith Gail Dein:

Pursuant to the order entered September 5, 2019 [Dkt. No. 1627], the Official Committee of Unsecured Creditors of all Title III debtors (the "Committee") hereby submits this objection (the "Objection") to *AAFAF and PREPA's Urgent Motion for Protective Order Quashing Official Committee of Unsecured Creditors' Deposition Notice to Jose Ortiz* [Dkt. No. 1625] (the "Motion"). In support of this Objection, the Committee respectfully states as follows.

## PRELIMINARY STATEMENT

1. The only discovery request at issue in the Motion is the Committee's request for a single additional deposition—that of Jose Ortiz, PREPA's CEO. The Court recently ordered PREPA and AAFAF to produce documents from Mr. Ortiz's files in its order dated August 2, 2019 [Dkt. No. 1556] (the "August 2 Order"), finding the Committee's request for such documents both relevant and proportional to the needs of this dispute. The Court should similarly permit the Committee to take Mr. Ortiz's deposition. His deposition is highly likely to elicit testimony relevant to the 9019 Motion[2], will not cause an undue burden to PREPA, and has been timely noticed under the *Revised Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of PREPA and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]* [Dkt. No. 1366] ("June 20, 2019 Scheduling Order").

2. As it stands, PREPA and AAFAF are presenting *only one witness* for deposition: Fernando Batlle of Ankura, their outside financial advisor, who will be testifying in his personal capacity and also serving as their Rule 30(b)(6) representative on all topics. Unless Mr. Ortiz's

---

[2] Capitalized Terms not defined herein shall have the meaning ascribed to them in the Motion.

deposition also occurs, ***no government official associated with either PREPA or AAFAF will testify in connection with the 9019 Motion***. It is difficult to see how PREPA and AAFAF can credibly seek approval of a transaction as significant as the RSA without making at least one government official available to testify. That PREPA and AAFAF would shield Mr. Ortiz from deposition and decline to offer the testimony of any other official in support of the RSA is especially surprising given the new administration's supposed commitment to transparency in the wake of recent political scandals.

3. Of all government officials, Mr. Ortiz is particularly likely to have relevant testimony. As PREPA's CEO, Mr. Ortiz was involved in PREPA's decision to approve the RSA. He has made recent public statements concerning the RSA and its linkage to PREPA's proposed transformation, including statements in late July and early August 2019 that call into question the timetable and likelihood of success of the transformation. For example, he revealed to reporters that one of the four bidders in the transaction has withdrawn from the process. Mr. Ortiz has also made statements concerning the status of PREPA's requests for federal funding to support the transformation. Documents produced in discovery further demonstrate Mr. Ortiz's relevant knowledge, including by showing his involvement in the RSA's implementation.

4. The Committee is entitled to explore these matters in a deposition. Indeed, this Court has never held—in the August 2 Order or elsewhere—that the Committee is not entitled to take discovery regarding PREPA's decision to enter into the RSA, its implementation, or the status of the transformation process. These issues are at the very heart of the 9019 Motion and therefore open to exploration in a deposition. At the July 30, 2019 hearing that preceded the August 2 Order, the Court indicated that it was denying the Committee's requests for additional document discovery relating to the transformation, not because those issues were not relevant;

but rather because the Court felt the Committee was already obtaining certain of that discovery from other sources and could adequately explore the topic in depositions. *See* Ex. 1 (July 30, 2019 Hr'g Tr.). It would be inconsistent with that ruling for the Court to now deny the Committee the opportunity to depose PREPA's CEO regarding the transformation and its relationship to the RSA.

5. Finally, the Committee's deposition notice was timely served. Although the June 20, 2019 Scheduling Order set an initial deadline of July 5, 2019 for serving deposition notices, it also allows for additional deposition notices after that date for good cause shown. The Committee served its deposition notice on Mr. Ortiz on August 16, 2019, promptly after learning of the potentially high relevance of his testimony based on his recent public statements, all of which occurred after the July 5 deadline, and the Committee's review of documents produced in discovery. Since serving the deposition notice, the Committee has learned that PREPA and AAFAF will not be replacing Christian Sobrino (the former executive director of AAFAF who submitted a declaration in support of the 9019 Motion and was originally designated as PREPA's and AAFAF's Rule 30(b)(6) representative on all topics, but has since resigned) with another government official to testify in support of the 9019 Motion. The fact that no government official associated with PREPA or AAFAF will be testifying also provides good cause for Mr. Ortiz's deposition at this time.

6. For all of these reasons and those discussed below, the request for a protective order should be denied, and the Committee should be allowed to take Mr. Ortiz's deposition.

**ARGUMENT**

**I. COMMITTEE HAS NOT SERVED UNDULY BURDENSOME DISCOVERY OR SOUGHT TO DELAY THE LITIGATION OF THE 9019 MOTION**

7. PREPA and AAFAF spend several pages of the Motion discussing other purportedly supplemental discovery requests of the Committee and the Fuel Line Lenders that they suggest are unduly burdensome or otherwise improper. But these other discovery requests—which have either been withdrawn or resolved consensually by the parties—are wholly irrelevant to this Motion, which involves only the Committee's request for a deposition of Mr. Ortiz. In any event, the narrative advanced by PREPA and AAFAF that the Committee and the Fuel Line Lenders have somehow delayed the resolution of the 9019 Motion through supposedly burdensome supplemental discovery requests is categorically false.

8. Far from having served inappropriate additional discovery requests, other than joining in certain requests of the Fuel Line Lenders relating to the *Conditional Motion to Make an Offsetting Change in Base Rate Charges* filed with the Puerto Rico Energy Bureau on July 3, 2019 (the "Rate Motion"),³ the Committee has served only a single set of supplemental document requests since the original deadline for serving such requests under the June 20, 2019 Scheduling Order.⁴ These supplemental document requests, which related to the services that BDO Puerto Rico ("BDO") has provided to PREPA, have been withdrawn by the Committee at this time based on discussions with the Government Parties in which they clarified the scope of the services provided by BDO to PREPA, and the requests are therefore no longer pending. *See*

---

³ The Government Parties have agreed to respond to the Rate Motion document requests.

⁴ The May 22, 2019 Scheduling Order set an initial deadline of May 22, 2019 for service of document requests and the June 20, 2019 Scheduling Order set a deadline of July 5, 2019 for service of supplemental document requests relating to new information contained in the supplemental memoranda of law and fact witness declarations that the Government Parties submitted on July 2, 2019 in support of the 9019 Motion.

4

Motion ¶ 9. The deposition notice to Mr. Ortiz is the only supplemental deposition notice the Committee has served and therefore the only such notice currently pending.

9. The real reason for any delay in this litigation is not supplemental discovery requests served by the Committee or the Fuel Line Lenders, but rather the Government Parties' own delay in responding to the Committee's original document requests. In its August 2 Order, and on the record at the July 30, 2019 hearing, the Court ordered the Government Parties to supplement their document productions by, among other things, producing documents from additional custodians, including Mr. Ortiz, and by reviewing and producing certain additional categories of documents that the Government Parties inappropriately failed to review and produce in the first instance.[5] These supplemental categories of documents include basic, highly relevant categories of communications, such as internal emails relating to the Government Parties' decision to enter into the RSA. More than five weeks have passed, and the Government Parties have still not finished their productions of these documents.[6]

10. Thus, contrary to PREPA's and AAFAF's suggestions, any delay in the litigation of the 9019 Motion is not the fault of the Committee.

## II. DEPOSITION IS HIGHLY RELEVANT, NOT CUMULATIVE, AND SHOULD BE ALLOWED

11. PREPA and AAFAF contend that the Committee is not entitled to Mr. Ortiz's deposition because he is a high-level PREPA official. "Highly-placed executives," however, "are not immune from discovery." *Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*, No. CIV. 10-11041-NMG, 2013 WL 1833010, at *1 (D. Mass. Apr. 30, 2013) (internal quotations

---

[5] *See* August 2 Order at 2; Ex. 1 (July 30, 2019 Hr'g Tr.) at 65:25 – 66:4.

[6] The Government Parties have also not completed their review and production of text messages and other non-email communications, which they agreed to do pursuant to a stipulation they executed with the Committee on August 6, 2019. [Dkt. No. 1569].

5

omitted). Rather, a deposition of an executive officer is appropriate if he or she has relevant information and the deposition will not be unduly burdensome. *See, e.g.*, *id.* at *2 (allowing deposition where defendant "demonstrated a good faith basis for believing [the CEO] had specific, unique knowledge of an issue central to [its defense]" and plaintiff had not shown that burden of deposition outweighed its benefit).

    A.  <u>Mr. Ortiz Has Relevant and Unique Information</u>

  12.  A high-level officer seeking to avoid a deposition based on his or her lack of relevant knowledge must at a minimum attest to such lack of knowledge through a sworn affidavit. *See B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters*, 285 F.R.D. 185, 186 (D.P.R. 2012) (granting protective order where company president submitted "an affidavit attesting to his lack of knowledge regarding the discovery sought" and plaintiffs had not first attempted to obtain same information through less burdensome means); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (proposed deponent "signed an affidavit professing ignorance to the information the plaintiffs seek"). In some cases, courts have permitted depositions of executive officers notwithstanding such an affidavit. *See, e.g.*, *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 142 (D. Mass. 1987) (permitting depositions of Ford executives notwithstanding their submission of "know nothing affidavits," finding that plaintiff was entitled to "test" each witness' claimed lack of knowledge).

  13.  Here, Mr. Ortiz has not executed an affidavit certifying that he lacks knowledge relating to the matters at issue in the 9019 Motion, nor would he be capable of doing so. That Mr. Ortiz has knowledge relevant to the 9019 Motion—including knowledge of the RSA's consideration and approval, its implementation, and its relationship to the proposed transformation—is beyond dispute.

6

14. Regarding the RSA's approval, documents produced in discovery  Ex. 2 (PREPA_RSA0027990). *Id.*, Ex. 3 (PREPA_RSA0027814); Ex. 4 (PREPA_RSA0028029). *Id*.

15. Mr. Ortiz also has knowledge regarding the manner in which the RSA will be implemented. For example, documents show that Mr. Ortiz has recently engaged in discussions with Todd Filsinger, PREPA's chief financial advisor, regarding PREPA's ability to "absorb the RSA under the base rates." Ex. 5 (PREPA_RSA0026153). In other words, Mr. Ortiz is apparently interested in determining whether PREPA could implement the surcharges called for the RSA by *offsetting* them against base rates, rather than *adding them* to base rates. This strategy, if adopted, would be inconsistent with representations the Government Parties have made to the Court. For example, in its supplemental submission in support of the 9019 Motion, the Government Parties contended that the settlement will not impact non-settling creditors because it "only pays the Supporting Holders out of a special, new charge that is being created pursuant to the RSA to deal with PREPA bond debt." [Dkt. No. 1425 ¶ 103]. But if PREPA

7

instead pays the supporting bondholders by decreasing PREPA's base rates, as Mr. Ortiz appears to be contemplating, PREPA's other creditors will in fact be funding the settlement. It is therefore highly important for the Committee to explore this topic with Mr. Ortiz.[7]

16. Finally, in recent weeks, Mr. Ortiz has made public statements regarding the timeline for and critical circumstances surrounding PREPA's proposed transformation, which the Government Parties tout as the key driver of their decision to enter into the RSA. These statements are unique to Mr. Ortiz and therefore do not merely "echo" the sentiments of other witnesses, as the Government Parties contend. *See* Motion ¶ 17.

17. For example, on July 29, 2019, during a roundtable with local reporters, Mr. Ortiz announced that one of the four concessionaires for the privatization of PREPA's transmission and distribution systems had "officially" withdrawn from the bidding process. Ex. 6 (July 29, 2019 Reorg Research Alert titled "Ortiz Says 3 PREPA T&D Concession Proponents Remain Interested in Project; PREPA Rates to Decline This Quarter as Public Corporation Beats Fiscal Plan Targets") ("July 29, 2019 Reorg Alert").[8] Later, another government official—the P3 Authority's Executive Director, Fermín Fontanés—gave public testimony *contradicting* Mr. Ortiz's remarks, stating that all four concessionaires remain viable bidders. Ex. 7 (Aug. 23, 2019 Reorg Research Alert titled "PREPA T&D Selection Now Targeted for December, Pushed Out From October") (suggesting that Mr. Ortiz's contrary remarks may have been based on his own interpretation of the behavior of one of the bidders).

---

[7] To the extent PREPA and AAFAF believe that the topics the Committee would seek to explore in Mr. Ortiz's deposition are not relevant under the August 2 Order, the Committee believes it may be helpful for the Court to await a ruling on the Committee's pending objection to the August 2 Order before ruling on the Motion. In fact, the Committee suggested to PREPA and AAFAF that it would be more efficient to wait for such ruling before filing the Motion, but they refused.

[8] In the same July 29, 2019 roundtable, Mr. Ortiz also discussed his views on expected rate reductions and his expectations for PREPA's receipt of federal funding—two other key issues underlying the Government Parties' decision to enter into an RSA. Ex. 6 (July 29, 2019 Reorg Alert).

8

18. Mr. Ortiz again commented on the transformation process on August 13, 2019, telling reporters that the selection of a winning bidder may be delayed due to uncertainty over PREPA's receipt of federal funding, among other reasons. Ex. 8 (Aug. 13, 2019 Reorg Research Alert titled "PREPA Chief Says Delay in 9019 Motion Hearing, Uncertainty Over Total Reconstruction Funding for Grid May Push Back Selection of T&D Concession Winner").[9]

19. If the proposed transformation is in jeopardy because bidders are withdrawing from the process, or for any other reason, the Committee is entitled to explore that issue in a deposition. Moreover, because Mr. Ortiz is the *only* government official who has made all of these assertions, the same information cannot be obtained through other sources.

B. Deposition Would Not Be Unduly Burdensome

20. A party seeking a protective order "to limit or eliminate discovery sought" bears the burden of establishing "good cause" for the request, *i.e.*, that "justice requires [the Court] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Koninklijke Philips Elecs.*, 2013 WL 1833010, at *1. PREPA and AAFAF have failed to carry their burden to obtain a protective order precluding Mr. Ortiz's deposition.

21. Although PREPA and AAFAF contend that the deposition would be unduly burdensome, they provide no support for this bald assertion. Indeed, the Motion does not offer a single concrete reason as to why Mr. Ortiz could not take a few hours out of his schedule over the next few weeks to prepare for and give his testimony. *See Gen. Star Indem. Co. v. Platinum*

---

[9] Documents the Committee has obtained in discovery further establish Mr. Ortiz's relevant knowledge of the transformation process. ▓▓▓ (Ex. 9 (PREPA_LS0013601); Ex. 10 (PRP3_OCUC_00002264); Ex. 11 (PRP3-00075153); Ex. 12 (PREPA_LS0055262)), ▓▓▓ (Ex. 13 (ANKURA_LS0038079)), ▓▓▓ (Ex. 9 (PREPA_LS0013601)), ▓▓▓ Ex. 14 (PRP3-00098508).

9

*Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) ("The fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery."). The Committee has been and continues to be willing to work with PREPA and AAFAF on scheduling the deposition at a mutually agreeable time in the location most convenient for Mr. Ortiz.

22. In any event, any burden that the deposition may impose upon Mr. Ortiz or PREPA more generally pales in comparison to the magnitude and scope of the transaction that PREPA has asked the Court to approve. That Mr. Ortiz refuses to offer his support for the RSA under oath is surprising to say the least and raises substantial questions in the Committee's mind as to the extent of the support within PREPA that the RSA enjoys.

23. Because PREPA and AAFAF have not shown that the deposition's costs outweigh any likely benefit, the Court should permit the deposition to go forward.

### III. DEPOSITION NOTICE IS TIMELY

24. The June 20, 2019 Scheduling Order states that a party may serve a deposition notice after July 5, 2019 for good cause shown. *See* June 20, 2019 Scheduling Order at 2 n.2 (incorporating by reference paragraph 2(b) of the *Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]* [Dkt. No. 1253] ("May 22, 2019 Scheduling Order"), which provided that, "[f]or good cause shown, after [July 5], 2019, the Moving Parties, Objectors or Supporters may serve a deposition notice or subpoena promptly after information comes to such party's attention (after [July 5]) constituting the basis for serving such notice or subpoena, and

10

the opposing party may file a motion to quash or for a protective order with respect thereto.").[10] Good cause exists for the Committee's service of its deposition notice on Mr. Ortiz on August 16, 2019. The notice is therefore timely.

25. In deciding whom to notice for deposition on July 5, the Committee made a conscious effort to avoid unnecessarily burdening any one party. The Committee therefore decided not to depose Mr. Ortiz in addition to Christian Sobrino, who at that time had not yet resigned from his post and still planned to testify in support of his declaration. The Committee understood prior to July 5 that, as PREPA's CEO, Mr. Ortiz could potentially have *some* knowledge relevant to the 9019 Motion, but the Committee was not aware of the extent of his knowledge on various important topics.

26. Since July 5, circumstances have changed dramatically. Mr. Sobrino has resigned from his position, PREPA and AAFAF have decided not to replace him with another government official declarant,[11] and the Committee has obtained additional information regarding Mr. Ortiz's relevant knowledge based on his various public statements and documents produced in discovery, as discussed above. These new circumstances led the Committee to notice Mr. Ortiz's deposition on August 16. PREPA and AAFAF apparently believe that, instead of acting judiciously in deciding which depositions to notice on July 5, the Committee should have noticed a deposition of every possibly relevant individual—including both Mr. Ortiz and Mr. Sobrino—

---

[10] Although the May 22, 2019 Scheduling Order provided a deadline of June 3, 2019 for serving deposition notices, the June 20, 2019 Scheduling Order in effect extended that deadline to July 5, 2019.

[11] The decision not to replace Mr. Sobrino with another government witness is curious. PREPA and AAFAF are now asking the Court to approve a transaction that distributes more than $20 billion to bondholders over the next approximately 40 years based solely on the testimony of Ankura, a financial advisor. The government officials within PREPA and AAFAF, however, are the ones whose business judgment is at issue. The role of Ankura was to advise these officials on their decision to approve the RSA, not make the decision for them.

11

to protect its rights. Such an approach would have been highly inefficient and wasteful and should not be encouraged by the Court.

27. Finally, it is important to note that, although the August 2 Order directed PREPA to produce documents from Mr. Ortiz's files, PREPA has not yet completed that production. Nearly all of the emails and other documents that the Committee has received to date relating to Mr. Ortiz appear to be documents of other custodians that happen to copy or otherwise reference Mr. Ortiz, not documents from his own files.[12] The Committee's deposition notice to Mr. Ortiz cannot possibly be considered untimely before this production is complete.

28. PREPA and AAFAF cite two cases for the proposition that a protective order is appropriate where a party fails to timely pursue discovery, but neither case supports their position here. *Rivera-Almadovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23 (1st Cir. 2013), is inapposite for multiple reasons. That case involved a discovery order that required parties to file a motion to extend the schedule "well in advance of the [discovery] deadline," which the plaintiff indisputably failed to do. *Id*. at 25. Moreover, the plaintiff in that case was found to have "sat on her hands for nearly a year" and to have applied an overall "lackadaisical approach to discovery." *Id*. at 27. The Committee's diligence in pursuing its discovery cannot be similarly questioned.

29. The other case PREPA and AAFAF rely on, *Healy v. U.S. Bank, N.A. for LSF9 Master Participation Tr.*, No. 16-11996-GAO, 2018 WL 3733934, at *1 (D. Mass. Aug. 3, 2018), is even less helpful to their position. In that case, the plaintiff was denied discovery after he failed to serve any discovery requests until less than two hours before the close of all

---

[12] Specifically, out of the nearly 2700 documents the Committee has received from PREPA and AAFAF in productions specific to the 9019 Motion, ***only two*** of those documents list Mr. Ortiz as the custodian.

12

discovery and offered no justification for his delay. The present facts could not be more different, as the Committee has at all times acted diligently in pursuing its discovery from the Government Parties and has explained why it did not notice Mr. Ortiz's deposition at an earlier date. Moreover, the discovery window remains wide open—document productions have not been completed, and no depositions of the Government Parties have occurred.

30. The Committee's deposition notice to Mr. Ortiz is timely under the circumstances, and PREPA and AAFAF have failed to demonstrate otherwise.

## CONCLUSION

28. For all the foregoing reasons, the Committee respectfully requests that the Motion be denied.

[*Remainder of Page Intentionally Left Blank*]

Dated: September 6, 2019

/s/ Luc A. Despins               .
PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors*

- and -

/s/ Juan J. Casillas Ayala
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434  Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors*