# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*, Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 4780-LTS |

**REPLY IN SUPPORT OF AAFAF AND PREPA'S URGENT MOTION FOR PROTECTIVE ORDER QUASHING OFFICIAL COMMITTEE OF UNSECURED CREDITORS' DEPOSITION NOTICE TO JOSE ORTIZ**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.    THE COMMITTEE FAILS TO SHOW GOOD CAUSE FOR SERVING DISCOVERY AFTER THE DEADLINE ............................................................ 2

    II.    THE COMMITTEE'S CUMULATIVE APEX DEPOSITION NOTICE IS IMPROPER.................................................................................................................. 4

    III.    THERE IS NO REASON TO DELAY DECISION ON THE MOTION ............. 8

CONCLUSION............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bogan v. City of Boston*,
  489 F.3d 417 (1st Cir. 2007) .................................................................................................. 5

*In re United States (Kessler)*,
  985 F.2d 510 (11th Cir. 1993) ................................................................................................ 5

**Statutes**

Puerto Rico Electric Power System Transformation Act, Act 120-2018, § 5(b) ........................... 7

**Other Authorities**

http://www.p3.pr.gov/prepa-transformation.html ......................................................................... 7

**PRELIMINARY STATEMENT[2]**

1. The Committee's *Objection of Official Committee of Unsecured Creditors to AAFAF and PREPA's Urgent Motion for Protective Order Quashing Official Committee of Unsecured Creditors' Deposition Notice to Jose Ortiz* [ECF 1629] (the "Opposition") makes clear that there is no good cause to permit the Committee to obtain cumulative and irrelevant deposition testimony from PREPA's Chief Executive Officer. This is particularly so when the Committee identified Mr. Ortiz as a potential witness several months ago on May 30, 2019, but intentionally chose not to timely serve a deposition notice for Mr. Ortiz by July 5, 2019 and instead waited until August 16, 2019 to do so.

2. The Committee concedes a good cause showing is required for any deposition notice served after the July 5, 2019 deadline. The Committee has not shown good cause.

3. The Committee claims it needs to depose Mr. Ortiz about the decision to enter the RSA because Mr. Ortiz was present at the board meeting where PREPA approved the RSA. But PREPA has already identified a witness to give testimony pursuant to Rule 30(b)(6) regarding its decision to approve the RSA. Fernando Batlle, PREPA's designee, was present at that meeting.

4. The Committee also says that it wants to depose Mr. Ortiz regarding PREPA's decision as to how to implement the RSA's Settlement Charge. But this Court has already held implementation of RSA charges is beyond the scope of the 9019 Motion. Even if Judge Swain sustains the Committee's pending objection to that ruling, there is no reason the testimony the Committee seeks could not be given by a 30(b)(6) witness (as the Committee originally contemplated by noticing 30(b)(6) deposition topics on this issue).

---

[2] The Oversight Board, as PREPA's representative pursuant to section 315(b) of PROMESA, has authorized the undersigned to file this reply on behalf of PREPA. Unless otherwise noted, abbreviations and names have the same meaning as in *AAFAF and PREPA's Urgent Motion for Protective Order Quashing Official Committee of Unsecured Creditors' Deposition Notice to Jose Ortiz* [ECF 1625] (the "Motion").

5. The Committee's desire to depose Mr. Ortiz on transformation issues no better entitles them to depose Mr. Ortiz. First, this Court has already held that extensive discovery regarding the status of transformation is beyond the scope of permissible discovery. Second, the Committee will be receiving 30(b)(6) testimony from the Public-Private Partnerships Authority ("P3"), the entity that pursuant to Puerto Rico law, oversees and approves all of PREPA's transformation transactions, and will also be deposing the witnesses upon whose declarations the Government Parties will rely. In addition, the Oversight Board has produced documents with respect to transformation, and the status of transformation is a matter of public record.

6. In short, because the Committee has offered no credible justification for insisting that PREPA's CEO prepare and sit for a deposition to give cumulative deposition testimony in response to an egregiously untimely notice, the Court should grant the requested relief.

## ARGUMENT

### I. THE COMMITTEE FAILS TO SHOW GOOD CAUSE FOR SERVING DISCOVERY AFTER THE DEADLINE

7. As the Committee concedes, deposition notices may only be served after July 5, 2019 "[f]or good cause shown." Opposition ¶ 24. Yet the Committee has not made a good cause showing. Instead, the Committee served an untimely deposition notice as if the July 5, 2019 deadline did not exist.

8. The Committee's representation that it waited until six weeks after the deadline to serve a deposition notice on PREPA's CEO as part of an effort to reduce the burden on the Government strains credulity. Opposition ¶ 25. The Committee has acted with utter disregard to burden or proportionality concerns throughout this litigation.

9. The Committee has served deposition notices on 12 parties and individuals in advance of the July 5, 2019 deadline. On May 29, 2019, the Committee served 27 sets of

2

document requests on 25 entities, many of whom had no real connection to the 9019 Motion. In response to these requests, the Government Parties and other parties have produced thousands of documents, which were retrieved through a review protocol meant to efficiently locate and produce responsive non-privileged documents, while avoiding the burden and expense associated with reviewing materials that were overwhelmingly likely to be unresponsive or privileged. The Committee moved to compel a more extensive review, and, following this Court's July 30, 2019 order, the Committee has demanded that the Government Parties engage in a review protocol that has required AAFAF and PREPA to collectively review approximately 40,000 additional documents from custodial email files. That review is now nearing completion, and, as the Government Parties represented all along, the vast majority of these additional search term hits are either not responsive or are privileged. The Committee also insisted upon production of text messages from personal devices of the Government Parties' custodians without showing a hint of concern as to the burden that retrieval of these messages would impose. Accommodating that demand has required the Government Parties to undergo a time-consuming and disruptive process of collecting personal devices from their custodians.

10. While this review has been ongoing, the Committee, along with the Fuel Line Lenders, has continued to pepper the Government Parties with additional, untimely, and irrelevant document requests. *See* Motion ¶¶ 4-10. Meet and confer on these improper requests has necessitated additional document review and fact investigation. Moreover, notwithstanding that this Court granted the Committee a substantial volume of the additional discovery it was seeking, the Committee has objected to that order, hoping to convince Judge Swain to order even

more discovery on topics that this Court determined, based on its reasoned consideration of Judge Swain's instructions, were beyond the scope of the proceeding.[3]

11. The idea that the Committee's disregard of the scheduling order should be excused because the Committee was acting out of concern for the burden to the Government and efficiency of this proceeding is simply not credible.

12. Christian Sobrino's resignation as AAFAF's Chief Executive Officer also does not justify an untimely deposition notice to PREPA's CEO. The Committee argues that it needs to depose Mr. Ortiz because AAFAF and PREPA have not replaced Mr. Sobrino with another witness who is a Government Official. The Committee provides no basis for its suggestion that a deposition of a Government Official is needed or required. The Committee will be receiving 30(b)(6) testimony on behalf of both AAFAF and PREPA. The Committee will be receiving testimony from at least five Government Party witnesses—1) Fernando Batlle, AAFAF and PREPA's financial advisor, 2) Natalie Jaresko, the Executive Director of the Oversight Board, 3) David Skeel, Oversight Board member, 4) David Brownstein, the Oversight Board's financial advisor with respect to the RSA, and 5) Frederic Chapados, the Oversight Board and P3's financial advisor with respect to the transformation transaction. The Committee has also issued a third-party deposition subpoena to Mr. Sobrino directly.

## II. THE COMMITTEE'S CUMULATIVE APEX DEPOSITION NOTICE IS IMPROPER.

13. Contrary to the Committee's suggestion, AAFAF and PREPA do not argue that Mr. Ortiz has no knowledge regarding the RSA he signed. *Cf.* Opposition ¶¶ 12-13. Rather, the Committee's deposition notice is improper because it seeks an apex deposition for cumulative testimony. As the First Circuit has explained, the need to limit discovery of high ranking

---

[3] *See* ECF No. 1576.

government officials is "well established," "based on the notion that high-ranking government officials have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (internal quotation marks omitted) (quoting *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993)). Even when a high-ranking government official has first-hand knowledge related to the claim being litigated, "discovery is only permitted where it is shown that other persons cannot provide the necessary information." *Id.* (affirming protective order quashing deposition notice to Mayor because plaintiff had not first sought discovery from other sources).

14. The Committee claims it needs to depose Mr. Ortiz because he has unique knowledge with respect to (1) PREPA's approval of the RSA; (2) PREPA's implementation of charges under the RSA; and (3) transformation. All of these contentions lack merit.

15. *First*, the Committee's claim that Mr. Ortiz has unique knowledge with respect to PREPA's approval of the RSA is based on the unremarkable fact that he attended the Governing Board meeting at which the board approved the RSA. Opposition ¶ 14. The Committee claims that it needs Mr. Ortiz's testimony regarding discussions at that meeting and actions PREPA took after the fact. The Committee does not argue, nor could it, that 30(b)(6) deposition testimony regarding these topics would not suffice. PREPA has agreed to provide 30(b)(6) testimony regarding its "consideration and approval of the RSA"[4] and Fernando Batlle, PREPA's 30(b)(6) designee, was also present at this same meeting. *See* Opposition, Ex. 2 at 1.

---

[4] Exhibit P, Responses and Objections to Official Committee of Unsecured Creditors' Notice of Deposition to Puerto Rico Electric Power Authority in Connection with PREPA RSA Rule 9019 Motion Pursuant to Fed. R. Civ. P. 30(B)(6), at 10, No. 17-4780 (June 10, 2019) (response to Topic 5).

5

16. *Second*, the Committee claims that it is "highly important" for the Committee to depose Mr. Ortiz regarding PREPA's implementation of charges under the RSA. Opposition ¶ 15. Both Judge Swain and this Court have held these issues are beyond the scope of the 9019 Motion. As Judge Swain noted at the July 11, 2019 pretrial conference, the Title III Court is not "being asked to approve RSA provisions that would, for example, implement rate increases, impose the settlement charge or transition charge, or implement demand protections or securitization protections." [July 11 Conf. Tr. 7:13-16.] Judge Swain specifically instructed that:

> Evidence and arguments that go only to . . . whether the matters requiring further action by Puerto Rico's elected government officials and agencies of the Puerto Rico government ought to be approved should not be offered at this juncture.

[*Id.* 13:21-14:1 (discussing Motions *in Limine*).]

17. In light of this guidance, this Court denied the Committee's motion to compel production of documents and deposition testimony concerning implementation of the Settlement Charge and the Transition Charge. [ECF 1556, ¶ 19.]; *see also* Transcript of Motion Hearing at 126-27, No. 17-4780 (July 30, 2019) ("Judge Swain was pretty clear that she's not going to be assessing the macroeconomics of this or doing the rate. She's not being asked to approve any specific rate. . . . Judge Swain, it's my understanding in the 9019, will not be assessing whether or not the rate charges as set or the formula for the appropriate rate charges are appropriate.").

18. *Third*, the Committee claims it needs to depose Mr. Ortiz regarding his public statements regarding the status of the PREPA transformation transaction and the effect of the RSA on the transaction. Opposition ¶¶ 17-19. The Committee points to a handful of emails showing Mr. Ortiz participated in meetings concerning the transformation process. The unsurprising fact that PREPA's CEO made public statements about PREPA's transformation and

6

participated in some meetings does not justify a cumulative apex deposition. The Committee has served a 30(b)(6) deposition notice on P3, which includes a topic regarding the "status of the Proposed Transformation."[5] Pursuant to Puerto Rico law, the transformation transaction is handled by P3, not PREPA. *See* Puerto Rico Electric Power System Transformation Act, Act 120-2018, § 5(b) (P3 is the "sole Government Entity authorized to and responsible for (1) implementing the public policy on PREPA Transactions . . . ; (2) determining the Functions, Services, or Facilities for which such Partnerships shall be established . . . ; and (3) determining which PREPA Assets related to electric power generation shall be sold or transferred through Sales Contracts.").[6] In addition, the Committee will be deposing Frederic Chapados, a consultant from Citigroup Capital Markets Inc., regarding the impact of the RSA on transformation. Both of these witnesses are more directly involved in the transformation transaction than Mr. Ortiz.

19.   The Court's August 2, 2019 order denied the Committee's motion to compel with respect to transformation-related requests on the ground that the Committee had "not sufficiently shown that these documents are relevant to the 9019 hearing, and to the extent PREPA's transformation is discussed in declarations before the Court in the context of the 9019 hearing, the UCC has not shown that it lacks the factual information needed to respond." [ECF 1556 ¶ 18.] This ruling counsels strongly against allowing a cumulative apex deposition on transformation issues. Mr. Ortiz has not put a declaration before the Title III Court, and the

---

[5] *See* Exhibit Q, Official Committee of Unsecured Creditors' Notice of Deposition to P3 Authority in Connection with PREPA RSA Rule 9019 Motion Pursuant to Fed. R. Civ. P. 30(B)(6), at 5, No. 17-4780 (June 3, 2019) (Topic 2).
[6] *See also* http://www.p3.pr.gov/prepa-transformation.html.

7

Committee will have the opportunity to depose the witnesses whose declarations are currently before the Title III Court on the 9019 Motion.[7]

### III. THERE IS NO REASON TO DELAY DECISION ON THE MOTION

20. The Committee argues that this Court should defer decision on the Motion for two reasons. Neither is persuasive.

21. *First*, the Committee argues that this Court should defer decision on this Motion pending Judge Swain's ruling on the Committee's objections to this Court's August 2, 2019 Order denying discovery regarding implementation of the Settlement Charge and Transition Charge. Opposition ¶ 15 & n.7. However, even assuming that Judge Swain sustains the Committee's objection, apex deposition testimony would not be justified. This area of testimony is entirely duplicative of the untimely 30(b)(6) deposition topic the Committee served on July 16, 2019.[8] PREPA objected to this topic as untimely and beyond the scope of the issues on the 9019 Motion.[9] While the Committee joined the Fuel Line Lenders' motion to compel with respect to this topic, it did not move in its own right.[10] The Fuel Line Lenders have since withdrawn their motion to compel.[11] The Committee has waived any right to seek this testimony twice: once when it failed to serve a timely deposition notice for Mr. Ortiz, and again when it chose not to pursue 30(b)(6) testimony following the Fuel Line Lenders' withdrawal of their motion.

---

[7] As the Opposition acknowledges, AAFAF and PREPA are no longer relying on Christian Sobrino's declaration and have not replaced him as a declarant.

[8] Exhibit R, Official Committee of Unsecured Creditors' First Supplemental Amended Notice of Deposition to Puerto Rico Electric Power Authority in Connection with PREPA RSA Rule 9019 Motion Pursuant To Fed. R. Civ. P. 30(B)(6), at 5, No. 17-4780 (July 16, 2019) (Topic 2).

[9] Exhibit S, PREPA's Responses and Objections to Official Committee of Unsecured Creditors' First Supplemental Amended Notice of Deposition to Puerto Rico Electric Power Authority in Connection with PREPA RSA Rule 9019 Motion Pursuant To Fed. R. Civ. P. 30(B)(6), at 2-4, 8-9 (July 19, 2019).

[10] Joinder of Official Committee of Unsecured Creditors to Urgent Omnibus Motion of [Fuel Line Lenders] to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion, No. 17-4780 (Aug. 6, 2019) [ECF 1568].

[11] Notice of Withdrawal of Urgent Motion of [Fuel Line Lenders] to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion, No. 17-4780 (Aug. 19, 2019) [ECF 1597].

22. *Second*, the Committee claims that its deposition notice "cannot possibly be considered untimely" until PREPA's production of documents from Mr. Ortiz's custodial file is complete. Opposition ¶ 27. The status of PREPA's document production is no justification for deferring decision on the Motion. The Committee identified Mr. Ortiz (and others) as a potential witnesses—and made its decisions regarding whom among those it would depose—before it had received the majority of the document production in this matter.[12]

23. The Committee complains that it has not received many documents from the custodial files of Mr. Ortiz and that the Government Parties have produced emails on which Mr. Ortiz is copied from the files of other custodians. Opposition ¶ 27. As counsel have discussed, AAFAF and PREPA have de-duplicated files across custodians. Because Mr. Ortiz was among the last custodians added to AAFAF and PREPA's review database, any emails that exist in his files which were already in the files of another earlier-added custodian would not be re-reviewed. Furthermore, as counsel for AAFAF and PREPA explained to the Committee, the hit count in response to the Committee's proposed search terms for the additional custodians this Court ordered (Mr. Ortiz and Eli Diaz) comprised a miniscule proportion of the total document review universe.[13] The small production merely reinforces what AAFAF and PREPA have said all along—Mr. Ortiz did not negotiate the RSA and was not likely to have responsive documents. The Committee's suggestion that this Court ought to defer ruling until some conjectural onslaught of Mr. Ortiz's emails have been produced is not persuasive.

---

[12] *See* Exhibit O, ECF No. 1625-15 (initial disclosures).

[13] *See* Exhibit T, Email from A. Pavel to Committee dated Aug. 14, 2019 ("I just received an updated hit count on UCC's proposal, which now includes Diaz and Ortiz. Searching these two custodians adds roughly 950 hits, making the Committee's proposed review universe just under 93,000, instead of just over 92,000."). Under the final agreed protocol, hits from Mr. Ortiz's custodial file comprised just over 1,000 of the roughly 40,000 documents in the additional review population.

24. The Committee's request for delay is essentially a concession that at present, it cannot meet the requirement to show good cause. Accordingly, the notice should be quashed.

## CONCLUSION

For the foregoing reasons, AAFAF and PREPA respectfully request that the Court grant the Motion and quash the Ortiz Deposition Notice.

Dated: September 9, 2019
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Elizabeth L. McKeen*
John J. Rapisardi
Nancy A. Mitchell
Peter Friedman
(Admitted *Pro Hac Vice*)

**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

-and-

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*


*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC NO. 222301
lmarini@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ, LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority*

*/s Katiuska Bolaños*
Katiuska Bolaños
kbolanos@diazvaz.law
USDC-PR 231812

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**.
644 Ave. Fernández Juncos, Suite 301
District View Plaza
San Juan, PR 00907-3122
Tel. (787) 679-7132
Fax. (787) 919-7319

*Co-Attorneys for Puerto Rico Electric Power Authority*