```
 1                     UNITED STATES BANKRUPTCY COURT

 2                        DISTRICT OF PUERTO RICO

 3
      In Re:                      )        Docket No. 3:17-BK-3283(LTS)
 4                                )
                                  )        Title III
 5    The Financial Oversight and )
      Management Board for        )
 6    Puerto Rico,                )        (Jointly Administered)
                                  )
 7    as representative of        )
                                  )
 8    The Commonwealth of         )
      Puerto Rico, et al.,        )        September 11, 2019
 9                                )
      and                         )
10                                )
                                  )
11    Puerto Rico Electric        )
      Power Authority,            )
12                                )
                    Debtors.      )
13    _____

14

15                          OMNIBUS HEARING

16      BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

17                  UNITED STATES DISTRICT COURT JUDGE

18    _____

19
      APPEARANCES:
20
      For The Commonwealth
21    of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
                                    Appearing in New York
22                              Ms. Laura Stafford, PHV
                                Mr. Paul V. Possinger, PHV
23                              Mr. Michael Firestein, PHV
                                Mr. Ehud Barak, PHV
24

25
```

```
 1   APPEARANCES (Continued):

 2   For the U.S. Trustee
     Region 21:                Ms. Monsita Lecaroz Arribas, AUST
 3
     For Official Committee
 4   of Unsecured Creditors:   Mr. Luc A. Despins, PHV
                                   Appearing in New York
 5

 6   For Peter Hein:           Mr. Peter C. Hein, Pro Se

 7
     For Corporacion de
 8   Servicios Integrales
     de Salud del Area de
 9   Barranquitas, Comerio,
     Corozal, Naranjito and
10   Orocovis:                 Mr. John Mudd, Esq.

11
     For the Fee Examiner:     Mr. Brady C. Williamson, PHV
12                             Ms. Katherine Stadler, PHV

13
     For the Bankruptcy
14   Estate of Romualdo
     Rivera Andrini,
15   Chapter 7 Trustee:        Ms. Noreen Wiscovitch Rentas, Esq.

16   For Jorge Diaz Mayoral
     and Juan Frau Escudero:   Ms. Monique J. Diaz Mayoral, Esq.
17
     For The Official
18   Committee of Unsecured
     Creditors:                Mr. Luc Despins, PHV
19                                 Appearing in New York

20   For The Puerto Rico
     Fiscal Agency and
21   Financial Advisory
     Authority:                Mr. John J. Rapisardi, PHV
22                                 Appearing in New York

23   For Patrick D. O'Neill,
     Edlin S. Buitrago
24   Huertas, Carmen M.
     Huertas, Jose Buitrago
25   and Helvia Caparros
     Santos:                   Mr. Charles P. Gilmore, Esq.
```

```
 1     APPEARANCES (Continued):

 2
       Pro Se Speakers:          Mr. Manuel Torres Diaz
 3                               Dr. Gloria L. Diaz Lopez

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23     Proceedings recorded by stenography.  Transcript produced by
       CAT.
24

25
```

```
1                          I N D E X
2    WITNESSES:                                    PAGE
3           None offered.
4
5    EXHIBITS:
6           None offered.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                                  San Juan, Puerto Rico

 2                                  September 11, 2019

 3                                  At or about 9:47 AM

 4                         *      *      *

 5          THE COURT:  Buenos dias.  Please be seated.  Again,

 6    good morning and welcome to counsel, parties in interest and

 7    members of the public and press here in San Juan, those

 8    observing here and in New York, and the telephonic

 9    participants.  As always, it is good to be back here.

10          I remind you that consistent with court and judicial

11    conference policies and the Orders that have been issued,

12    there is to be no use of any electronic devices in the

13    courtroom to communicate with any person, source, or outside

14    repository of information, nor to record any part of the

15    proceedings.  Thus, all electronic devices must be turned off

16    unless you're using a particular device to take notes or to

17    refer to documents that are already loaded on the device.  All

18    audible signals, including vibration features, must be turned

19    off.

20          No recording or retransmission of the hearing is

21    permitted by any person, including but not limited to the

22    parties or the press.  Anyone who is observed or otherwise

23    found to have been texting, e-mailing or otherwise

24    communicating with a device from a courtroom during the court

25    proceeding will be subject to sanctions, including but not
```

1    limited to confiscation of the device and denial of future

2    requests to bring devices into the courtroom.  And again, a

3    gracious good morning to you all.  And thank you for attending

4    to these restrictions and procedures.

5         Our timing today is from 9:30 to noon and then, if

6    necessary, from 1:00 to 5:00 PM.  Any matters involving pro se

7    parties appearing here in San Juan who need interpreters will

8    be heard starting at 11:00 AM.  There may or may not be those

9    matters, but they would be confined to issues within Agenda

10   Items III through V if we do need to proceed in that fashion.

11        And so with that, we will begin with the status

12   reports.  And so the status report from the Oversight Board,

13   is that being delivered here or in New York?

14        Mr. Bienenstock, in New York, good morning.

15        MR. BIENENSTOCK:  Good morning, Judge Swain.  Martin

16   Bienenstock of Proskauer Rose, LLP, as attorneys for the

17   Oversight Board and the Title III debtors.

18        Your Honor's request for a status report started with

19   the general status and activities of the Oversight Board.  The

20   Board's chairman and executive director have had several

21   meetings with the new Governor.  Meetings have covered the

22   gamut of major topics, from the Commonwealth Plan of

23   Adjustment, to PREPA, to Law 29 and to general methods of

24   working together for the benefit of all stakeholders.

25        Simultaneously, there have been multiple days of

1    meetings between AAFAF and its advisors, with the Board's

2    advisors, primarily concerning the Commonwealth Plan of

3    Adjustment but also other topics.

4         The Board continues its work on monitoring and

5    assessing implementation of the measures in its Certified

6    Fiscals Plans, and determining what changes to the Fiscal

7    Plans are necessary or beneficial to reach economic

8    sustainability.

9         The Board continues to reach out to Capitol Hill to

10   encourage more aid to Puerto Rico, such as Medicaid and money

11   to help transform PREPA.  Litigation has somewhat been

12   curtailed due to the Court's stay, but several matters are

13   continuing both in this Court and in the First Circuit.

14        As to the anticipated timing for the filing of the

15   Commonwealth's Plan of Adjustment, Your Honor, I have given

16   you past predictions that did not turn out as predicted, but

17   each time for a good reason we believe.  As Your Honor likely

18   surmised, this time we did not propose a Commonwealth Plan of

19   Adjustment in August because it would have jammed the new

20   Governor.

21        The meetings among the Governor and the Board and the

22   separate meetings among their financial and legal advisors

23   have been productive we think.  Ultimately, each party's

24   actions will speak louder than words, but we are guardedly

25   optimistic.  As the Court knows, the Board has its statutory

1    mission to carry out, and the Governor is undertaking to

2    protect the Commonwealth.  Therefore, the Board and Governor

3    have many common goals and some differences.

4          I will predict the Board does propose a Commonwealth

5    Plan of Adjustment this month, September, 2019.  The Board has

6    worked hard to make sure the new Governor and her team

7    understand the Proposed Plan and the reasons for its major

8    provisions.

9          Your Honor also asked for a status of the

10   reformulation of the debtors' ADR proposal.  With respect to

11   the ADR motion, we've been working to reformulate the motion,

12   taking guidance from the Court's comments at the July 24

13   hearing.  We have had several productive conversations with

14   the Administrative Office of the United States Courts about

15   the structure of the reformulated proposal and we intend to

16   continue that dialogue.

17         We are also working with our advisors to provide the

18   Court with as much detail as we can regarding the claims we

19   anticipate resolving through this procedure, recognizing,

20   however, that many of the claims provide only limited detail.

21   Our goal is to schedule the amended motion to be heard at the

22   October 30 Omnibus hearing.  It will be shared in advance with

23   the General Creditors Committee.  We know that the Committee

24   wishes that this had been accomplished long ago, and I believe

25   before we finish, Mr. Despins has some remarks on that issue.

1           The Court has also asked for a status report about

2    the process for resolving the vendor issues brought on by the

3    Complaint filed by the Special Claims Committee of the

4    Oversight Board.  The Claims Committee has given me the

5    following to report.

6           The Special Claims Committee of the Oversight Board

7    is pleased to report that the informal resolution process for

8    the vendor avoidance actions is progressing.  As of the end of

9    August, over 150 vendors out of the 250 actions filed

10   expressed an interest in participating in the informal

11   resolution process.

12          The Special Claims Committee's financial advisors are

13   reviewing the information produced by over 50 vendors, with

14   more information to be produced in the coming weeks given

15   extensions of deadlines provided to individual vendors.  We

16   expect about 20 vendor actions to be resolved within the next

17   week.

18          The Special Claims Committee is also undertaking

19   another coordinated outreach effort to increase vendor

20   participation in the informal resolution process.  Vendor

21   actions that are not resolved consensually through the

22   informal resolution process may be subject to litigation

23   likely no earlier than the January 13, 2020, answer deadline,

24   which was established in the Order granting the Omnibus Motion

25   by the Financial Oversight and Management Board of Puerto

1    Rico, acting by and through the members of the Special Claims

2    Committee and the Official Committee of Unsecured Creditors to

3    establish litigation case management procedures and establish

4    procedures for approval of settlements.  That's ECF 7941.

5         We expect, to the extent some vendor actions are not

6    resolved by that date, the Special Claims Committee will

7    negotiate individual extensions of deadlines if the parties

8    believe it is likely the actions can be resolved without

9    formal litigation.

10        Your Honor also asked about the status of the PRIDCO

11   RSA and its anticipated Title VI filing.  Your Honor, the

12   PRIDCO Title VI restructuring has been handled to date by

13   AAFAF.  While Title VI allows the Board to negotiate a deal

14   and to implement it at the request of bondholders, the Board

15   has not done so with PRIDCO to date.  I will defer in a few

16   moments to AAFAF, which I understand is prepared to report on

17   the PRIDCO restructuring.

18        And finally, Your Honor, the Court asks that we

19   report on the general status of relations among the Oversight

20   Board and the Commonwealth and Federal Governments.  As Your

21   Honor likely senses from my prior remarks, the relations

22   between the Board and the new Governor are positive.  We

23   believe each side is trying to find a way to coalesce on

24   matters such as Law 29 and many other matters.  Perhaps most

25   importantly, communications among the principals and advisors

1   are completely open, candid, respectful and cordial on all

2   levels.

3          In respect to the Federal Government, the Oversight

4   Board continues to press it for more aid to Puerto Rico, both

5   generally for the PREPA transformation, for Medicaid, and in

6   every other way we think there's a prospect of receiving more

7   aid or loans.

8          Your Honor, finally, Your Honor may have questions.

9   I don't mean to preclude them, but just so I don't forget,

10  I've been asked by several people in New York and San Juan to

11  ask that when -- just before the Omnibus claims objections

12  commence, the people who have no interest in those objections

13  be allowed to leave the courtroom.

14         THE COURT:  And certainly that will be permitted.

15         I do have one question for you, Mr. Bienenstock, and

16  I thank you for those remarks, which were quite responsive to

17  my request.  And this question has to do with the claims that

18  are expected to go through the ADR process.

19         And one reason that we asked about timing was that,

20  of course, on the litigation side, we do need to explore and

21  establish mechanisms for handling claims that are not resolved

22  through whatever levels of ADR processes are ultimately

23  proposed and approved.

24         So I do understand that the initial first or second

25  phases of inquiry letters to people whose claims were unclear

1    have gone out soliciting additional information.  After that,

2    the proposal that had been made contemplated a process of

3    eliciting interest in and then participation in a process of

4    paper offers of settlement going back and forth.  And then

5    after that, and perhaps with my feedback after some other

6    method of ADR, matters would come to the Court for litigation.

7         So with that background, has there been any activity,

8    informal or otherwise, on the settlement front that has given

9    you all any idea of when matters that are not settled might

10   begin to filter through to litigation so that I can figure out

11   when I need to have a process in place and staffed

12   appropriately?

13        MR. BIENENSTOCK:  Your Honor, some of my colleagues

14   in the courtroom with Your Honor in San Juan may have more

15   information on that.  I think there has been limited --

16   limited progress towards resolutions, but for an

17   understandable reason, which will soon change.

18        When we file our proposed plan, claimants will get

19   some notion of at least what the Oversight Board contemplates

20   general unsecured claims are going to receive under the plan.

21   We think that will -- that will enable people to assess their

22   positions and be a big spur towards getting things resolved

23   more quickly and efficiently than might otherwise be the case.

24        So I think that's largely been a holdup, both in

25   terms of not wanting to agree to allowed claims before we know

1    what they're worth, and people not wanting to take reductions

2    before understanding what they may be giving up.  I don't have

3    any more information, but I can get more for Your Honor and

4    I'd be happy to do so.

5         THE COURT:  Well, if there is further information

6    that can be shared by way of an informative filing before the

7    next Omni, that would be very helpful because we are --

8         MR. BIENENSTOCK:   Okay.  We'll do that.

9         THE COURT:  Oh, I'm sorry.  There is someone here.

10   Ms. Stafford.

11        MS. STAFFORD:  I just note for Your Honor that we

12   have begun the process of sending out letters in an effort to

13   obtain more information about a lot of those claims, and we

14   are just now in the process of receiving results from those

15   letters.  So until we're a little further down the process of

16   evaluating the responses that we get, we're not in a position

17   yet to begin the offer-counteroffer process, but -- in

18   addition to the issues that Mr. Bienenstock just raised.  But

19   we're happy to provide additional information about the kind

20   of information that we've been getting and how it will help us

21   along the way of giving you more information and feedback

22   about the claims that will be going through the ADR processes

23   versus needing to go before the Court.

24        THE COURT:  Thank you.  And doing that either by

25   informative motion, as I mentioned, or through your more

1  informal communications with the Administrative Office will be

2  helpful as we try to make sure that we are structurally ready

3  for whatever's coming.

4          Thank you, both.

5          MR. BIENENSTOCK:  Thank you, Your Honor.

6          Mr. Despins is rising in New York, so if it's okay,

7  he'll comment on the ADR proposal.

8          THE COURT:  That's fine.  Thank you.

9          Good morning, Mr. Despins.

10          MR. DESPINS:  Good morning, Your Honor.

11          Before I go to the ADR process, there was an item on

12  the Agenda which dealt with ERS scheduling issues, and I've

13  been tasked with briefing the Court on that issue.  It was

14  under the FOMB report.  That was ERS' scheduling update.  And

15  so this will be very short, Your Honor.

16          THE COURT:  Yes.

17          MR. DESPINS:  Just to say ERS parties -- and this is

18  a scripted text I'm reading that was agreed to by these

19  parties.  The ERS parties have been meeting with the mediation

20  team and have come to an agreement on one matter concerning

21  ERS.  And the ERS parties, I'll describe them in a second,

22  have all consented to me making an oral motion today

23  requesting that the Court -- the Court's Stay Order be

24  modified to allow the filing of a supplemental procedures

25  motion as it relates solely to ERS.

1          And Your Honor, this would be a modified version of

2    the Procedures Motion that you've previously seen but that you

3    have not ruled on because it's subject to the stay.  And

4    basically, if Your Honor were to grant this oral motion, we

5    would promptly file a supplemental motion and request that it

6    be heard as promptly as Your Honor could hear it, or if no

7    objections are filed, taken on presentment.

8          The parties that support my oral motion to modify

9    your stay as it relates to ERS are, in addition to the

10   Committee, the Oversight Board, AAFAF, the Retiree Committee,

11   the ERS Secured Creditors Group, the Puerto Rico Fund and the

12   Bank of New York.  I think that covers the entire spectrum.

13         So again, I want to be clear that these parties are

14   still discussing the terms of that supplemental motion, but

15   what we could all agree on was that we would make that oral

16   motion to have Your Honor modify your Stay Order to allow for

17   the filing of that motion, which we hope to file as soon as

18   possible.

19         You'll recall that that procedures motion had a

20   process where people had to file a Notice of Participation

21   within X amount of days.  So the main purpose of this, to be

22   clear, is to trigger that and to get ourselves in a position

23   to get moving on ERS matters.

24         THE COURT:  Given your representation that all have

25   agreed that this is the most appropriate way to proceed

1    forward as to ERS at this juncture, the oral motion for

2    modification of the stay to permit the filing of the

3    supplemental motion is granted, and I will look forward to

4    your filing.

5            I'm sorry.  Mr. Barak.

6            MR. BARAK:  Good morning, Your Honor.  Ehud Barak for

7    the Oversight Board as representative for the Title III

8    debtors.

9            THE COURT:  Would you speak up just a bit more,

10   please?

11           MR. BARAK:  Yes.

12           THE COURT:  Thank you.

13           MR. BARAK:  Okay.  We agree with Mr. Despins, but

14   just one thing.  We do not oppose the filing of the motion,

15   but all parties reserve the right obviously to comment or

16   object to those procedures which we've just gotten in the last

17   24 hours.

18           THE COURT:  Yes.  That doesn't surprise me.  I had

19   thought to ask Mr. Despins whether the procedures proposed

20   would be all agreed or consensual, but as you said, the terms

21   were still being discussed.  I thought that that really

22   wouldn't be a productive question.  So we'll see what happens

23   and what gets filed.  Thank you.

24           MR. DESPINS:  Your Honor, certainly the goal is to

25   have agreed upon procedures, but as I stated, it's still being

1    discussed.  So I want to be clear that no one is being bound

2    to anything other than the lifting of the stay for the purpose

3    of the filing of that procedures motion.  But the goal is

4    certainly to make that motion consensual all around.

5          And on the ADR, Your Honor, as -- I won't take a lot

6    of the Court's time.  You already know our issue.  But I just

7    want to explain another -- you know, as we said before, our

8    group, the creditors we represent, are the people affected by

9    this, because a lot of them have unliquidated or disputed

10   claims and, therefore, not resolving their claims is a huge

11   impediment to them eventually getting paid.

12         But it's more than that, and I want to make sure that

13   Your Honor understands that dynamic as well, which is when we

14   get to Plan confirmation, I am sure that other creditors, for

15   example, creditors that are owed, that hold bonds -- so for

16   the bonds, it's very easy to know how much they're owed.  We

17   know that to the penny.  We'll say, wait a minute.  The

18   Creditors Committee, their clients don't hold billions of

19   dollars of claims.  I'm making this up.  They hold 500 million

20   dollars in claims.  And in that context, the fact that we have

21   not yet had any progress really on getting these claims

22   resolved is going to be a huge impediment to the case we

23   believe.

24         We hope there'll be work arounds to that, but, you

25   know, we foresaw that issue.  We submitted a Detroit style ADR

1  procedure to the Board for consideration in January, 2018, and

2  now it's more than a year and a half later and we still don't

3  have an Order entered.

4        So I just want to remind the Court and add that new

5  dimension, which is, in the Plan context, that's going to

6  create some difficulty, because they'll be -- there won't be

7  agreement among the parties as to what our group is owed,

8  because there will not be final resolution of these claims by

9  that time.

10        Thank you, Your Honor.

11        THE COURT:  Thank you.  I understand.

12        Was there any -- Mr. Mudd wished to be heard on the

13  ADR issue as well, and he's coming to the podium here in San

14  Juan.

15        MR. MUDD:  Good morning to all.

16        THE COURT:  Good morning.

17        MR. MUDD:  Your Honor, when the Board filed its

18  original motion, I filed a qualified objection, and I want to

19  emphasize the fact that in the cases that we're dealing with,

20  there's a lot of lawsuits.  I mean thousands upon thousands of

21  lawsuits in state court.  Normally, that's not a problem, but

22  here in Puerto Rico, it's in Spanish.  And most of these

23  lawyers -- not most, but many of these lawyers have no idea of

24  the English language.

25        I litigate in state court.  I can attest to that.  In

1  addition, if we're going to do it with the local magistrates

2  who are extremely competent, but very overworked, that's one

3  problem.

4          THE COURT:  Precisely.  I don't think I made it clear

5  last time in my remarks in July that we cannot expect to

6  enlist the magistrate judges here.  And so we can't expect to

7  have magistrate judges who are fluent in Spanish, and frankly,

8  the proposal that had been made so far and our efforts were to

9  have magistrate judges available for the litigation phase but

10 not involved in mediation.  So there's that other aspect of a

11 gap in terms of Spanish speaking mediators.

12         MR. MUDD:  Okay.  Continuing with that, Your Honor,

13 if we send it to magistrates who do not know English, it's

14 extremely expensive to get certified translations, number one.

15 Number two, there's a lot of people in Puerto Rico, ex-judges,

16 locals, who are very cognizant of Puerto Rican law.  And most

17 of these cases are simply slip and fall cases, and they can be

18 dealt with easily by local former judges.  There is a program

19 for mediation in the state court, which is basically just

20 negotiations.

21         And we have to tie in the Plan of Adjustment in the

22 cases.  Once the Plan of Adjustment is filed, which according

23 to Mr. Bienenstock, and I have no doubt he's saying the truth,

24 will be filed this month, whereas the whole procedure will be

25 filed later on in October and will be dealt with in the

1  October hearing, people will know how much money they can

2  expect in terms of a percentage of their claim, and that

3  impacts the -- what you're going to negotiate about.

4        So maybe -- what I'm trying to say is I think the

5  Court needs to involve the local court system in order to help

6  with these things, because otherwise, it's going to be an

7  incredible mess.

8        THE COURT:  Well, as you know, I have asked the

9  Oversight Board to consider resources and reformulate the ADR

10  aspect of the proposal.  And so to the extent you have

11  specific information or contact information about who runs the

12  state court program and how it works, I would be grateful if

13  you would convey that to the Oversight Board.

14        MR. MUDD:  I have no problem with that.  I offered my

15  services before and I offer them again for free.  I have no

16  problem with that.  I just want this thing solved.

17        THE COURT:  Thank you, Mr. Mudd.

18        MR. MUDD:  Thank you.

19        THE COURT:  And so if there are no further comments

20  at this point, I would ask AAFAF to make its report.

21        Good morning, Mr. Rapisardi.

22        MR. RAPISARDI:  Good morning, Your Honor.  John

23  Rapisardi of O'Melveny Myers on behalf of Puerto Rico Fiscal

24  Agency and Financial Advisory Authority.  I would like to

25  thank Your Honor for the opportunity to address the Court this

1    morning.

2         At the Court's request, I will provide an overview of

3    the recent changes in Commonwealth Government leadership,

4    AAFAF's current activities and priorities, and the general

5    status of relations among the Commonwealth Government, the

6    Oversight Board and the Federal Government.

7         First, Your Honor, as to the government transition

8    and new leadership, the government's recent transition has

9    lead to new leaders but leaders who have vast experience of

10   government service and who are committed to move the process

11   forward under PROMESA within the statute's directive for the

12   parties to work together as partners for prosperity and not

13   rivals for power.

14        Governor Vazquez took office on August 7.  She is the

15   second woman to hold the office of Governor of Puerto Rico.

16   She brings to her role as Governor over 30 years of government

17   service as a District Attorney, Solicitor of the Women's

18   Rights Office and Secretary of Justice.

19        In leading her administration, she is in the process

20   of evaluating and deciding upon important policy issues for

21   the island, many of which intersect with Puerto Rico's ongoing

22   debt restructuring.

23        Omar Marrero is leading AAFAF as its new executive

24   director.  He is also serving as the CFO for the Government of

25   Puerto Rico.  Mr. Marrero was previously at the Puerto Rico

1    Public Private Partnerships Authority, a role that involved

2    close coordination with the Oversight Board and federal

3    agencies.  Mr. Marrero has also served as the Executive

4    Director of the Convention District Authority and Ports

5    Authority, and as Secretary of the Department of Consumer

6    Affairs.  He is supported by new personnel, as well as other

7    people who have been at AAFAF for the past two years who have

8    been instrumental in successes such as the COFINA

9    restructuring.

10        Eli Diaz, who was named by Governor Vazquez as the

11   new ex officio representative of the Board has begun his work

12   earnestly.  He has worked in the government as infrastructure

13   advisor in Fortaleza, and in turn, the legal director of the

14   Puerto Rico Public Private Partnership Authority.

15        He currently serves as the Executive President of the

16   Puerto Rico Aqueduct and Sewer Authority, and was previously

17   the Board chair of PREPA.  PRASA recently commenced a deal

18   with the Federal Government acting as a creditor that received

19   the Board's approval under PROMESA Section 207.

20        Your Honor, having been on island quite frequently

21   over the past two months at AAFAF, I can personally attest to

22   the hard work and countless hours that both Mr. Marrero and

23   Mr. Diaz have dedicated in becoming intimately familiar with

24   the many complex and difficult issues facing Puerto Rico to

25   achieve a timely and satisfactory restructuring of its

1   outstanding debts.

2          Government priorities.  As stated by Governor

3   Vazquez, the government believes there must be a sense of

4   realism in what is truly possible in terms of dealing with

5   both Title III and PROMESA more broadly, and most importantly,

6   within a constructive framework which minimizes delay of the

7   cost, while at the same time defending rights and interests of

8   the people of Puerto Rico.  All of the people working for the

9   Governor will be guided by and act in accordance with that

10   vision.  AAFAF and the government authorities remain focused

11   on subsequently reframing the economy and government, and the

12   people of Puerto Rico can reap benefits of structural reforms

13   along those lines, disaster recovery funds, implementary

14   measures and disbursing funds to Puerto Rico.

15          On that Title III agreement, Your Honor, I want to

16   highlight AAFAF's recent work regarding PRIDCO as highlighted

17   by Mr. Bienenstock.  PRIDCO's main function is economic

18   development of Puerto Rico and provide industrial facilities

19   for lease and sale to private manufacturing companies.

20          On June 13, AAFAF engineered a Restructuring Support

21   Agreement with over two-thirds of PRIDCO's outstanding

22   bondholders.  The parties to PRIDCO recently extended the

23   timelines, ERS amount and new timeline for restructuring.

24   AAFAF anticipates commencing Title VI qualifying modification

25   process by year end.  The RSA continues to enjoy broad

1  support, with over two-thirds of the bondholders a party to

2  it.

3         Relationships with the Oversight Board.  Your Honor,

4  the elected government will continue to defend and assert its

5  rightful powers as recognized in PROMESA and will work

6  together with the Oversight Board within the power sharing

7  arrangement established by the statute.  Mr. Marrero and Mr.

8  Diaz have a history of working cooperatively with the

9  Oversight Board.  And like I said, Your Honor, that -- AAFAF

10  is deeply committed to the ongoing operation and consultation

11  with the Oversight Board.  And I believe that

12  Mr. Bienenstock's comments, with respect to a high degree of

13  cooperation between the Oversight Board and the government, is

14  accurate.

15         Your Honor, Governor Vazquez and the Board's

16  Executive Director, Natalie Jaresko, have publicly reported

17  their recent meetings, which have also included Board Chair

18  Jose Carrion.  As an anecdote, Your Honor, on September 4th,

19  Ms. Jaresko and the Governor each released a picture of their

20  in-person working session in the past month and thanked each

21  other for their cooperation and hard work.

22         Without getting into details, I can say that the

23  professionals and staff from both the Oversight Board and

24  AAFAF have been meeting extensively to address the Title III

25  issues and have been making progress.

1    With respect to the litigation of Act 29, which is

2    ongoing, we can report that even the Speaker of the Puerto

3    Rico House has mentioned that, quote, we are looking for

4    alternatives to Act 29 that would maintain PayGo and health

5    plan subsidies to municipal governments.

6    With respect to relations with the Federal

7    Government, this week Governor Vazquez traveled to Washington,

8    D.C., with Resident Commissioner Gonzalez, Puerto Rico

9    legislative leaders and local business leaders to meet with

10   congressional leaders and executive branch officials.

11   Governor Vazquez said the purpose of her trip was to

12   reestablish credibility, open up lines of communication and

13   guarantee the transparency of the government in its use of

14   funds allocated to Puerto Rico.

15   The Governor also said she would work to accelerate

16   the disbursement of recovery and health care funding.  The

17   Governor has met with executives of the White House, of

18   Intergovernmental Affairs and Budget; Secretary of the Federal

19   Treasury, Stephen Mnuchin; Secretary of the Department of

20   Housing and Urban Development, Ben Carson; and members of the

21   Department of Energy.  The Governor will continue her meetings

22   through the end of the week, and I believe that there are some

23   additional meetings that are scheduled.

24   Topics of conversation include issues related to the

25   island's recovery plans, natural disaster response programs,

1   the allocation of federal funds and a supplemental Medicaid

2   funding extension from Congress.  Hopefully these meetings

3   will help reset the overall relationship between the Federal

4   Government and Puerto Rico, which is an important element in

5   moving forward.

6          In summary, Your Honor, I think things are moving

7   quite well on all fronts, and I'm very pleased that much

8   progress has been made with the Oversight Board and its

9   advisors.  And I remain hopeful that it will continue ongoing

10  as we move forward.

11         Thank you, Your Honor.

12         THE COURT:  Thank you, Mr. Rapisardi, for that very

13  comprehensive and encouraging report.

14         Before we turn to the Fee Examiner's report, I'd like

15  briefly to address an additional topic that is not listed on

16  the Agenda.  I've seen media reports indicating that several

17  so-called sources have provided media outlets with information

18  regarding work by the mediation team and mediation

19  participants that is being done pursuant to the Court's July

20  24th, 2019, Order, which is docket entry number 8244 in the

21  3283 case.

22         For example, on August 27th, 2019, Reorg Research

23  released an alert titled, Commonwealth Mediation Expected to

24  Kick Off After Labor Day Weekend, Sequencing of Gating Issues

25  Seen as Crucial to the Process.  This article contains

1    information attributed to at least five unnamed sources, and

2    includes what purport to be very specific details regarding

3    the status of the ongoing mediation.

4          In a September 5th, 2019, article published in the

5    Bond Buyer, a person described as an anonymous bondholder

6    source familiar with the process provided alleged details

7    about the current focus of the mediation efforts.

8          Since my June 2017 Notice and Order regarding the

9    proposed appointment of the mediation team, that's docket

10   entry number 329, a long time ago, in the 3283 case, the Court

11   has made it abundantly clear that the parties' work with the

12   mediation team is to be confidential, separate from the

13   litigation process and out of the public eye.

14         The Notice and Order specifically stated that both

15   the participants and the mediators will be bound by

16   confidentiality.  These principles were explicitly

17   incorporated into the Court's Order Appointing Mediation Team,

18   which was filed as docket entry number 430 in the 3283 case on

19   June 23rd, 2017.

20         The mediation process was initiated as a voluntary

21   one.  In July of this year, I Ordered mediation of key

22   procedural and substantive issues to give the mediators and

23   the parties confidential space to work together candidly and

24   efficiently to find common ground on priorities and lay the

25   foundation for work toward a substantially consensual plan.

1    That mandatory work is to be entirely confidential.  I do not

2    want to learn details of its process as I proceed with the

3    litigation matters that are still on my plate during the stay

4    period.

5            I have set a particular reporting date and reporting

6    structure.  During the stay and as mediation continues through

7    the course of these cases, I do not want to read about ongoing

8    mediation matters in the papers.  When anyone can read about

9    the progress of ongoing mediation efforts in the press, the

10   separation between the mediation and litigation processes is

11   undermined.  It is a basic, important premise of mediation

12   that the parties and mediators can exchange information,

13   whether in writing or orally, without a concern that that

14   information will be reported outside of the mediation group,

15   in the press or otherwise.

16           In light of the recently published articles, I'm

17   deeply concerned that parties have forgotten or perhaps have

18   chosen to ignore what was clearly stated in the original

19   Orders designating and appointing the mediation team.  Today I

20   will issue a Supplemental Order regarding the confidentiality

21   of ongoing mediation efforts, and the Order will provide that

22   if any additional breaches of mediation confidentiality appear

23   to occur, the Court will not hesitate to take appropriate

24   action to determine the source of the leak and to evaluate

25   whether sanctions may be appropriate.

1          And I really hope I won't have to go there, but I

2     will if I need to.  I trust that this reminder will help to

3     ensure that I will not be reading about confidential mediation

4     activities in the papers ever again.  To ensure that this

5     reminder of the requirement hits home, I am directing the

6     attorneys for each mediation participant to bring these

7     remarks and the Order to the attention of their clients and

8     the other advisors to the clients who are involved with the

9     mediation.

10         I thank you for your anticipated compliance with the

11    mediation confidentiality obligations and these measures

12    designed to protect the mediation process.  And now we'll have

13    the report of the Fee Examiner.

14         Good morning, Ms. Stadler.

15         MS. STADLER:  Good morning, Your Honor.

16         As you know, we filed our status report on the

17    ongoing review process of the McKinsey & Company, Inc., fee

18    applications last week.  We did, as noted in our Informative

19    Motion earlier this week, meet with McKinsey representatives

20    yesterday in San Juan and began mapping out or continued

21    mapping out some additional measures and additional revisions

22    to the existing protocol that would provide more robust

23    descriptions of team assignments and functions, mapping of

24    work product to project teams, an enhanced frequency of task

25    reporting, including publicly filed fee statements that

1    include those additional disclosures.

2            We haven't finished our discussions.  We're still

3    exchanging information and working cooperatively with McKinsey

4    and the Oversight Board to ensure that PROMESA's requirements

5    are continuing to be met.  But as the status report says, we

6    have no reason to believe that an amendment of our prior

7    recommendations is necessary or appropriate at this time.

8            THE COURT:  Amendment of the prior recommendations in

9    terms of the billings to September, 2018?

10           MS. STADLER:  That is correct.

11           THE COURT:  But you are working on amendments, if you

12   will, to the protocols that were put in place?

13           MS. STADLER:  Correct.  So that after September,

14   2018, billings which constitute the fifth interim and

15   subsequent interim fee periods will be reviewed subject to

16   this new enhanced protocol that we're in the process of

17   formulating.

18           We expect to have more details about that for Your

19   Honor at the October Omnibus hearing.  And we're, in the

20   meantime, happy to answer questions about our report or any of

21   the filings related to fees.

22           THE COURT:  Well, I was surprised, as I think many

23   were, by the filing and the revelation of the OIG issues.  I

24   was very pleased to see that the Fee Examiner was right on

25   that issue and to have your first report filed so promptly,

1   and appreciated both the more recent report and the content

2   concerning the serious work that is being done to follow up on

3   the issues.

4           And so I have no questions about the particulars of

5   the report at this point, which was quite comprehensive and

6   very helpful.  And I am glad to hear that you expect to be

7   able to come back for the October Omni with more concrete

8   proposals.

9           The one thing I would encourage you to do is that if

10  you, for some reason, get to a point where you believe there

11  is an impasse or a reason for me to call in McKinsey

12  representatives to discuss, in the context of an Omni, the

13  issues on which there is not comfort or agreement, or deal

14  with that some other way procedurally in connection with the

15  Omni, to file a status report so that we can cue something up

16  that's appropriate, so that we don't then wait beyond the

17  October Omni to be able to take that next step.

18          MS. STADLER:  Understood.  We will absolutely do so,

19  Your Honor.

20          THE COURT:  Thank you, Ms. Stadler.

21          MS. STADLER:  Thank you.

22          THE COURT:  And thank you, as always, Mr. Williamson.

23          All right.  And so at this point, we're going to turn

24  to the Omnibus Objections to Claims.  And as I promised

25  Mr. Bienenstock, anyone who doesn't want to stay for those may

1  leave quietly.  And I thank you for your attendance and wish

2  you safe travels.

3         So now we are at Agenda Item II -- I'm sorry, Agenda

4  Item III, beginning with COFINA's 13th Omnibus Objection to

5  Claims.  And Ms. Stafford, why don't you just wait a moment

6  while people leave.

7         MS. STAFFORD:  Yes.

8         THE COURT:  The Agenda indicates that 20 minutes have

9  been allocated for attention to Mr. Hein's Response, and I'm

10  told that the parties have agreed to split that time.  And so,

11  Ms. Stafford, did you want to reserve any rebuttal time?

12         MS. STAFFORD:  Yes, Your Honor.  I'd like to reserve

13  two minutes for rebuttal.

14         THE COURT:  So we'll put you down for eight minutes

15  opening and two for rebuttal.

16         MS. STAFFORD:  Thank you.

17         THE COURT:  And Mr. Hein down for ten for his

18  response.

19         MS. STAFFORD:  Good morning.  Laura Stafford of

20  Proskauer Rose on behalf of the Financial Oversight and

21  Management Board for Puerto Rico to address the 13th Omnibus

22  Objection to Claims.

23         What remains, Your Honor, of this dispute between

24  COFINA and Mr. Hein is whether Mr. Hein has any additional and

25  independent rights to payment against COFINA beyond the

1  payments he's already received on account of the COFINA bonds

2  that he owned.

3        I'm sure the Court recalls that Mr. Hein held

4  subordinate COFINA bonds.  And when the COFINA Plan was

5  confirmed, Mr. Hein received the treatment to which he was

6  entitled as a holder of those subordinate COFINA bonds.  It's

7  clear that Mr. Hein is not satisfied with the treatment he

8  received as a subordinate COFINA bondholder under the Plan,

9  which is the only asset he held, his subordinate COFINA bonds.

10  He objected to --

11        THE COURT:  Can you slow down just a little bit more

12  and project just a little bit more, too.

13        MS. STAFFORD:  Of course, Your Honor.

14        THE COURT:  Thank you.

15        MS. STAFFORD:  So Mr. Hein objected to the Plan prior

16  to confirmation, and he's appealed to the First Circuit this

17  Court's Orders approving the COFINA Plan Disclosure Statement,

18  and confirming the COFINA Plan.

19        At the April Omnibus hearing, Mr. Hein's claim was

20  disallowed to the extent his claim asserted a right to payment

21  on his COFINA bonds.  Mr. Hein objected to disallowance of his

22  claim in its entirety, however, because he contended that his

23  claim also asserted additional constitutional and statutory

24  rights.

25        Mr. Hein was thereafter afforded an opportunity to

1    explain whether and how those alleged constitutional and

2    statutory rights established that he was entitled to any

3    additional independent rights to payment against COFINA, but

4    Mr. Hein has not done so.  Instead, he has provided the Court

5    with precisely the same arguments he raised during the Plan

6    objection process.

7            He's asserted the same constitutional and statutory

8    claims, arguing once again that the Plan violates a host of

9    constitutional provisions, including the Takings Clause, the

10   Contracts Clause, the Privileges and Immunities Clause, Equal

11   Protection Clause, Due Process Clause, the First Amendment,

12   the Appointments Clause, and numerous provisions of PROMESA.

13   Each one of those arguments this Court has already heard and

14   has already rejected.

15           Mr. Hein has also reasserted his allegations that the

16   Plan improperly discriminates in favor of Puerto Rico

17   investors and provides alleged special benefits for

18   negotiators of the Plan.  He's reasserted those allegations

19   largely through attacks on a Disclosure Statement contending

20   that certain information contained in the Disclosure Statement

21   is not true, and on that basis, he casts doubt upon COFINA's

22   explanation for why certain Plan provisions that allegedly

23   benefited Puerto Rico investors was accurate.  But again, this

24   Court has already heard and rejected those arguments when it

25   decided to approve the Disclosure Statement and confirm the

1  Plan.

2          Not only did Mr. Hein already raise these arguments

3  before this Court, Mr. Hein has also placed those precise

4  arguments before the First Circuit when he appealed this

5  Court's Orders approving the Disclosure Statement and

6  confirming the Plan.  And respectfully, Your Honor, that

7  appeal alone divests this Court of jurisdiction to entertain

8  the arguments that Mr. Hein raises here.

9          Mr. Hein has appealed the Court's decision to confirm

10 the Plan and to approve the Disclosure Statement.  Each of the

11 issues Mr. Hein raises in support of his claim, which he

12 purports to assert given their additional independent right to

13 payment, are before the First Circuit in deciding Mr. Hein's

14 appeal.

15         THE COURT:  I just want you to repeat that so that I

16 can understand that.  Your definitive position is that each

17 and every one of these arguments and categories of argument

18 has been asserted in the appeals before the First Circuit?

19         MS. STAFFORD:  So each of those issues are subsumed

20 within the Notice of Appeal that Mr. Hein has filed.  I don't

21 believe he's -- I'm not sure whether or not the merits briefs

22 have been filed yet, and if so, whether or not those arguments

23 have been made.  However, they are all subsumed within the

24 issues that he has sought to raise in the First Circuit on his

25 appeal from the confirmation of the COFINA Plan.

1          THE COURT:  Thank you.

2          MS. STAFFORD:  This Court cannot consider those

3     issues while on appeal in the very same issues as pending, and

4     that alone disposes of what remains of Mr. Hein's claim.

5          Mr. Hein had an opportunity to explain to this Court

6     why he had an independent and additional right to payment

7     beyond the treatment he received in respect to his COFINA

8     bonds.  In response, he pointed only to the very same

9     arguments he made against confirmation of the Plan.

10          It is now clear that the only arguments Mr. Hein can

11     raise in support of his alleged additional and independent

12     rights to payment are the very same arguments Mr. Hein is

13     pursuing on appeal.  And because this Court lacks jurisdiction

14     to consider the only arguments Mr. Hein has advanced in

15     support of any addition and independent rights to payment he

16     believes he holds, this Court should sustain the objection and

17     disallow Mr. Hein's claim.

18          But even if this Court did have jurisdiction to

19     consider the arguments Mr. Hein raises, the fact remains that

20     Mr. Hein has not demonstrated how any of the arguments he

21     makes would give rise to an additional and independent right

22     to payment; in other words, the right to be paid more for the

23     only asset that he held against COFINA, which are his

24     subordinate COFINA bonds.

25          THE COURT:  May I ask you to pause for a minute?

```
 1              MS. STAFFORD:  Yes.

 2              THE COURT:  I believe a couple of minutes ago you

 3     argued, as is also argued in at least one part of the papers,

 4     that the remainder of the claim should be stricken.  Since he

 5     is making additional legal arguments, why would it be

 6     appropriate for me to strike that portion of the claim as

 7     opposed to recognizing that with the confirmation of the Plan,

 8     the claim is treated and discharged pursuant to Section 944?

 9              MS. STAFFORD:  Because the additional legal arguments

10     that he makes are only in respect of the COFINA bonds,

11     which -- and the treatment that he received under the Plan

12     with respect to those COFINA bonds.  He has no additional and

13     independent right or he has not asserted any additional and

14     independent right beyond the bonds, which, as we discussed at

15     the April Omnibus hearing, were duplicative of the Master

16     Proof of Claim that was filed by Bank of New York Mellon.

17              His ability to assert these additional constitutional

18     and statutory arguments are rights that he has a right to as a

19     creditor who owned bonds.  He does not need an additional

20     claim on the register in order to assert those types of claims

21     and arguments.

22              THE COURT:  And so since the same gross amount of

23     dollars was being sought based on the same set of bondholder

24     rights in the Master Proof of Claim and in Mr. Hein's Proof of

25     Claim, although Mr. Hein has different legal analytical
```

1    pathways for his argument that he should get a hundred cents

2    on the dollar as opposed to the discounted arrangements under

3    the Plan, you believe that the difference in legal theories

4    and legal arguments does not make for a difference in the

5    underlying claim, which is for the amount payable under the

6    bond instrument?

7              MS. STAFFORD:  That's precisely right, Your Honor.

8              THE COURT:  And so your position is that, therefore,

9    the claim is duplicative in its entirety; it should be

10   stricken for that reason?

11             MS. STAFFORD:  That is correct, Your Honor.

12             THE COURT:  Thank you for helping me understand that

13   argument.

14             MS. STAFFORD:  Of course.

15             I'll wrap up quickly, Your Honor, but I just wanted

16   to note that even if the Court has jurisdiction to consider

17   these arguments, these arguments that Mr. Hein is raising are

18   essentially the same arguments that he raised prior to

19   confirmation, and they don't give rise to any additional and

20   independent right to payment because objections that a

21   creditor raises to confirmation do not in and of themselves

22   give rise to additional independent rights to payment.  They

23   are simply confirmation of objections which Mr. Hein was

24   entitled to and did bring prior to confirmation, and which he

25   is now entitled to bring before the First Circuit.

1          Thank you, Your Honor.

2          THE COURT:  Thank you, Ms. Stafford.

3          Good morning, Mr. Hein.  Good morning, Mr. Hein.  Can

4   you hear me?

5          MR. HEIN:  Yes, I can.  Thank you, Your Honor.

6          Your Honor, in light of time constraints, I want to

7   focus my argument on a concession in COFINA's brief opposing

8   my Motion to Compel, and also on the merits arguments that

9   COFINA advanced in its Reply filed last week.  But first a

10  couple of quick points on jurisdiction.

11         One, if there's really no subject matter jurisdiction

12  here as COFINA recently claimed, then the Court is powerless

13  to act on COFINA's efforts to disallow my claim.  COFINA

14  cannot have it both ways, selectively invoking subject matter

15  jurisdiction to press for judicial relief to disallow my

16  claim, but then argue lack of subject matter jurisdiction

17  precludes the Court from considering my responses to their

18  efforts to disallow and from acting on my Motion to Compel

19  Discovery.  Also --

20         THE COURT:  Well, it seems to me -- Mr. Hein, may I

21  just interject?

22         MR. HEIN:  Yes.

23         THE COURT:  It seems to me that your arguments in

24  response to their effort to disallow your claim essentially go

25  to attacks on the Confirmation Order and on the Disclosure

1    Statement.  And so in order to give you relief, I would have

2    to decide that there was something wrong with the Plan that

3    was confirmed and/or with the Disclosure Statement that

4    preceded that Plan.

5         The validity and integrity and propriety of the Plan

6    and the Disclosure Statement are the matters that you have

7    appealed, and others have appealed, to the First Circuit.  And

8    so I -- and I don't see how I could have jurisdiction to grant

9    you relief changing the Plan.

10        The issue raised by the objection to your claim is

11   based on duplication of the underlying economic assertion of

12   economic right, and so that doesn't seem to me to be a

13   tit-for-tat or parallel situation in terms of jurisdiction.

14   So if I've missed something there, perhaps you can help

15   straighten me out.

16        MR. HEIN:  Sure.  So first, just -- it was Mr. Rosen

17   who back in April told Your Honor that COFINA's objection to

18   my claim and my appeal were totally distinct issues.  And

19   Mr. Rosen was responding to my reference to the pendency of

20   the appeal and my suggestion in April that the issue with

21   disallowance of my claim be deferred until after the First

22   Circuit rules.

23        But then turning to the question of the substance

24   here in terms of my constitutional claims, as Your Honor

25   recognized in your ruling in April, my constitutional claims

1   are based on different grounds than the Bank of New York claim

2   on the bonds.  And my constitutional claims, including my

3   takings claim, seek a different measure of compensation than a

4   claim under the bonds.

5        It's the COFINA argument that PROMESA allows

6   truncating and abrogating a lien, and also that rights to

7   bonds or interests are cut off on the date their Title III is

8   filed.  Compensation required by the Fifth Amendment must be a

9   fair and perfect equivalent for the property taken.  That's

10  the *Monongahela Navigation* case, 148 U.S. 312, at 326, 1893.

11       And then last June, the Supreme Court decided the

12  *Knick* case where they reiterated that the Fifth Amendment

13  provides a right to full compensation that arises at the time

14  of taking.  So I think the measure of recovery is greater on

15  the constitutional claim.  In addition, the constitutional

16  claim is not dischargeable.

17       I dispute that PROMESA commands the retroactive

18  destruction of property rights.  In fact, PROMESA provides

19  that a fiscal plan shall respect lawful liens, and that's

20  spelled out in Section 2141(B)(1)(n).

21       And in *Security Industrial Bank*, the Supreme Court

22  said, a Court should construe statutes to avoid the

23  constitutional question.  And there, the Supreme Court said,

24  no bankruptcy law should be construed to eliminate property

25  rights which existed before the law was enacted in the absence

1    of an explicit command from Congress.

2         And here I would submit that would mean one should

3    construe PROMESA to require that lawful liens be protected to

4    avoid the constitutional issue.  COFINA referenced Your

5    Honor's decision in the *Altair* case, the *ERS* case, which has

6    been partially vacated, but there Your Honor found the

7    creditors' interests were unperfected, invalid and

8    unenforceable.  Your Honor, in a footnote, said you weren't

9    reaching the takings issue.

10        In any event, if PROMESA is construed to allow the

11   retroactive abrogation of property rights, then the

12   Constitution must prevail over PROMESA.  And *Security*

13   *Industrial Bank* was -- expressed that the bankruptcy power is

14   subject to the Fifth Amendment's prohibition against taking

15   private property without compensation.  The Court in *Security*

16   *Industrial Bank* discussed and cited with approval its earlier

17   decision in *Louisville Joint Stock Land Bank* where the Court

18   held a bankruptcy statute was void because it effected a

19   taking of substantive rights and specific property acquired

20   prior to the enactment of the statute.

21        Now, even in cases under Chapter Nine, where the

22   courts were dealing with a pre-existing Chapter Nine regime,

23   *City of Detroit*, and thus the retroactivity issue was not

24   presented in *City of Detroit*, the Court there ruled that

25   discharging takings claims would violate the Fifth Amendment.

1  The Takings Clause claims must be excepted from discharge.

2          COFINA cites *City of Stockton*.  That was also in the

3  Chapter Nine context, and it was discussing a situation where

4  the claim accrued after the Bankruptcy Code was enacted.  And

5  the Court there was -- expressed that it was dealing with a

6  claim that arose after the Bankruptcy Code was enacted.  Here,

7  of course, Your Honor, the situation is just the opposite.

8  But beyond that, the *Stockton* Court also made the point that

9  the claim before it was simply an unliquidated and unsecured

10  monetary claim.  There was no property interest.

11          COFINA has argued *Penn Central*, and respectfully, I

12  don't think this case should be analyzed under the regulatory

13  takings under *Penn Central*.  I think *Armstrong*, which involved

14  the taking of a lien, provides the correct analysis.  *Horne*, a

15  2015 Supreme Court case, also underscores that *Penn Central*

16  does not apply and that the Constitution protects against the

17  taking of personal property or intangibles.

18          The statement in the *Security Industrial Bank* case,

19  that lien avoidance under 552(f) fits, but awkwardly, into the

20  analytical framework employed in *Penn Central*, I think that,

21  fairly read, does not support applying *Penn Central* here.  And

22  indeed, in *Penn Central*, the regulation did not interfere with

23  *Penn Central's* primary expectation concerning use.

24          Here, there was an existing lien that was released.

25  And then there's been much emphasis here, Your Honor, on the

1    class five vote.  And while I dispute that a vote can overcome

2    my Constitutional rights, I would submit that the question is

3    whether the rationale for the Puerto Rico preference that

4    induced thousands of Puerto Rico bondholders to opt out of

5    class five and support the Plan, that -- the rationale was

6    argued that one needed to maximize the tax exempt bonds to

7    mainland people.  That was the rationale for the Puerto Rico

8    preference.

9         And this gets to my discovery motion, but

10   respectfully, Your Honor, I think that it will become evident

11   where the discovery provided that the rationale for the Puerto

12   Rico preference was contrived all along.  There was this

13   application for a private letter ruling or closing agreement

14   submitted in December of 2018.  That was not disclosed to the

15   Court.  It was not disclosed to individual bondholders.  It

16   was not before the Court at the time of the confirmation

17   hearing.

18        If Your Honor has questions, I'd be pleased to

19   address them.

20        THE COURT:  Thank you.  You've been very

21   comprehensive.

22        MR. HEIN:  Thank you.

23        THE COURT:  Ms. Stafford.

24        MS. STAFFORD:  Good morning again, Your Honor.

25        I think that each of the points that Mr. Hein just

1   raised with respect to the Takings Clause issues and the

2   issues related to the recoveries that were offered to Puerto

3   Rico investors are -- simply highlight the fact that each of

4   the arguments that Mr. Hein is raising in support of his

5   alleged additional independent right to payment are simply

6   wrapped up in confirmation and in disclosure statement issues,

7   all of which, again, Your Honor, are before the First Circuit

8   at this time.

9          Again, Your Honor, each of these issues are simply

10  confirmation issues that were raised by Mr. Hein prior to

11  confirmation of the Plan, and it would simply turn the

12  bankruptcy process on its head if Mr. Hein were entitled to

13  take second and third bites of the apple of the Confirmation

14  Order through his claim objection.  His claim objection -- I'm

15  sorry.  Through his claim and through our objection to his

16  claim.

17         He's demonstrated no independent or additional rights

18  to payment beyond the bond that he -- the bonds that he owned

19  and to which he already has received the payments that he was

20  entitled to receive under the Plan.  The additional legal and

21  statutory arguments that he wishes to make, he had the

22  opportunity to make them; he made them; and he will be making

23  them again before the First Circuit, I'm sure.

24         Thank you, Your Honor.

25         THE COURT:  Thank you.

1    I would ask that everyone just bear with me as I sit

2    here for a couple of minutes and reflect further on what I've

3    heard, and I expect to be able to make my ruling in just a few

4    minutes.  So let's just all sit quietly.

5    Thank you for your patience.  I will now make my oral

6    ruling in respect of the outstanding aspect of the 13th

7    Omnibus Objection to -- of COFINA to Duplicate Bond Claims,

8    which is docket entry number 4417 in case 17-3283.  I'll refer

9    to it as the 13th Omnibus Objection, and specifically,

10   COFINA's Objection against the Proof of Claim filed by

11   Mr. Peter Hein, which is Proof of Claim 10701.

12   Mr. Hein opposes the objection to his claim in a

13   series of filings that are detailed in the Agenda for today's

14   proceeding.  The Court has reviewed all of the relevant

15   submissions thoroughly.

16   After hearing argument from both Mr. Hein and counsel

17   to the Oversight Board at the April 24th, 2019, Omnibus

18   hearing, the Court disallowed Mr. Hein's claim in part as

19   duplicative of a Master Proof of Claim filed by Bank of New

20   York Mellon and Ordered supplemental briefing with respect to

21   Mr. Hein's claims premised on other theories, such as a

22   broader set of rights and claims under the Constitutions of

23   the United States and Puerto Rico.  The Court has considered

24   carefully and thoroughly the supplemental filings of both

25   parties, and has listened carefully to the arguments here

1   today.

2          The issues raised in Mr. Hein's most recent briefing

3   filed as docket entry numbers 7211 and 8427 in case 17-3283

4   relate to the COFINA Plan process, including allegations that

5   the Disclosure Statement misrepresented certain tax matters;

6   failed to disclose matters regarding the Bonistas; and

7   misrepresented the amounts that individual bondholders could

8   expect to receive; and that the plan improperly provided

9   special benefits to participating negotiators.

10          Mr. Hein also asserts a number of constitutional and

11  statutory objections to the COFINA Plan which have already

12  been considered and rejected by this Court.  Mr. Hein and

13  others have appealed this Court's constitutional

14  determinations, and those appeals are currently pending before

15  the First Circuit.

16          The Court concludes that any element of Mr. Hein's

17  claim that was not literally duplicative of the text of the

18  Bank of New York Master Proof of Claim is nonetheless

19  duplicative of that Master Proof of Claim because both seek to

20  realize rights to payment under the same instruments, the

21  subordinated bonds.

22          The Court declines to address Mr. Hein's arguments

23  related to the sufficiency of preconfirmation disclosures, the

24  legality of the COFINA Plan and the confirmation process,

25  including his constitutional and statutory objections to the

1    COFINA Plan.  All of those arguments are currently before the

2    First Circuit as part of Mr. Hein's pending appeal of this

3    Court's Amended Confirmation Memorandum, Amended Confirmation

4    Order and Disclosure Statement Order.  And the Court,

5    therefore, lacks jurisdiction to consider the wide ranging

6    challenges to the COFINA Plan, the Disclosure Statement, and

7    the confirmation process that Mr. Hein has raised in

8    opposition to the objection to his Proof of Claim.

9          See *Griggs v. Provident Consumer Discount Company*,

10   459 U.S. 56, at page 58, a 1982 Supreme Court decision from

11   which I quote.  The filing of a Notice of Appeal is an event

12   of jurisdictional significance.  It confers jurisdiction on

13   the Court of Appeals and divests the District Court of its

14   control over those aspects of the case involved in the appeal,

15   closed quote.

16         In light of the pending appeals, the Court could not

17   grant the relief that Mr. Hein seeks even if it were persuaded

18   that his arguments have merit, nor can I reject COFINA's

19   subject matter jurisdiction argument as untimely.  The issue

20   of subject matter jurisdiction cannot be waived.  In any

21   event, Mr. Hein's arguments are not responsive to COFINA's

22   pending objection based on the duplication of Bank of New York

23   Mellon's Master Proof of Claim.

24         To the extent that Mr. Hein's arguments regarding the

25   splintering of distributions pursuant to the Plan or any rate

1    of return differential upon the exchange of bonds distributed

2    under the Plan relate to implementation of the Plan, they are

3    outside the scope with COFINA's objection to Mr. Hein's

4    prepetition claim and are not currently the subject of any

5    other pending litigation before this Title III Court.  The

6    Court, therefore, declines to address such arguments as well.

7             The 13th Omnibus Objection, which is docket entry

8    number 4417, is resolved as follows.  It is sustained as to

9    any remaining aspects of Mr. Hein's Proof of Claim number

10   10701, which are merely different legal arguments in support

11   of the same claim for payment under the same bonds that are

12   the subject of the Bank of New York Mellon Master Proof of

13   Claim.

14            Given that there is now no litigation pending before

15   the Court to which the discovery Mr. Hein seeks is relevant,

16   Agenda Item III.6, which is Mr. Hein's Motion to Compel, will

17   not be heard today and will be denied as moot.

18            The Court will enter an Order sustaining the portion

19   of COFINA's objection to Mr. Hein's claim that was not

20   resolved by the Order filed in May, 2019, as docket entry

21   number 7113, and denying Mr. Hein's Motion to Compel, which is

22   docket entry number 8487 in case 17-3283 as moot.  Thank you.

23            We will now go to Agenda Item III.2, which is the

24   Commonwealth's 60th Omnibus Objection to Claims.

25            MS. STAFFORD:  Thank you, Your Honor.  Laura Stafford

1    again on behalf of the Oversight Board.

2          The 60th Omnibus Objection to Claims seeks to

3    disallow 11 proofs of claim that fail to comply with the

4    applicable rules for filing a claim by not providing a basis

5    for asserting a claim against the Commonwealth.  These claims

6    purport to be based on one or more bonds, but fail to either

7    identify or provide enough information to allow the debtor to

8    identify the bonds allegedly at issue.

9          Only one Response was filed by the UBS Trust Company

10   of Puerto Rico.  That's ECF number 8287, Proof of Claim number

11   65124.  That Response states that Proof of Claim number 65124

12   was amended by the claimant.

13         And respectfully, Your Honor, we would submit that

14   the amended -- the original claim should therefore be

15   disallowed in light of the subsequent amendment because Proof

16   of Claim number 65124 was amended by Proof of Claim number

17   169959.

18         We would request the Court grant the objection as to

19   the claim that was the subject of UBS Trust Company's filing

20   and disallow that claim as having been subsequently amended

21   and superseded --

22         THE COURT:  Slow down just a little.

23         MS. STAFFORD:  Sorry.  As having been subsequently

24   amended and superseded by the filing of an amended claim, and

25   that the Court otherwise sustain the remainder of the

1    objection.

2         THE COURT:  Did anyone wish to be heard for UBS?

3         (No response.)

4         THE COURT:  The Court has considered the written

5    filings carefully.  The objection is sustained.

6         An amended claim replaces the original claim, and the

7    original claim must therefore be stricken to avoid

8    duplication.  The original claim is disallowed as amended and

9    superseded by the amended claim, and the Court will enter an

10   Order overruling this Response and sustaining the 60th Omnibus

11   Objection in its entirety.

12        MS. STAFFORD:  Thank you, Your Honor.

13        The next item on the Agenda is the 62nd Omnibus

14   Objection.  And I did just want to pause and confirm whether

15   any translators were needed for this objection, and if so,

16   whether anyone was available.

17        THE COURT:  So this is the objection relating to the

18   Proof of Claim of Mr. Manuel Torres Diaz, who I understand is

19   here.

20        Mr. Torres Diaz, are you comfortable speaking in

21   English or do you want to use the interpreter?

22        MR. TORRES DIAZ:  Sure.  I'm fine.

23        THE COURT:  Okay.  He says he's fine to proceed in

24   English.  So thank you, sir.  So Ms. Stafford will speak

25   first, and then I'll invite you to the podium.

1          And the time allocated -- what was the agreement on

2     time?

3          MS. STAFFORD:  I believe we've agreed to -- we were

4     happy to split our time equally with Mr. Torres Diaz.

5          THE COURT:  So that was out of 15 minutes, that each

6     of you would get seven and a half?

7          MS. STAFFORD:  That's correct.

8          MR. TORRES DIAZ:  I don't need that much.

9          THE COURT:  Okay.  Mr. Torres Diaz says he doesn't

10    need that much, and I assume you don't need that much either.

11         MS. STAFFORD:  I certainly hope not.

12         THE COURT:  So we'll just proceed.

13         MS. STAFFORD:  The 62nd Omnibus Objection seeks to

14    disallow 393 proofs of claim that seek recovery for amounts

15    for which the Commonwealth is not liable because the claims

16    were released and extinguished pursuant to the transactions

17    consummated through the qualifying modification for the

18    Government Development Bank of Puerto Rico.

19         Mr. Torres Diaz's Response simply states that the

20    debt was incurred under the guidelines established by the

21    Puerto Rico Constitution, and that the Court cannot go against

22    the Puerto Rico Constitution.  This Response does not dispute,

23    however, that the claimant owns GDB bonds that were subject to

24    the qualifying modification which this Court has already

25    approved, or the fact that pursuant to the qualifying

1    modification, the claimant should already have received new

2    securities in exchange for the cancellation of his previous

3    bonds.

4         The Response also does not dispute that pursuant to

5    qualifying modification, the Commonwealth's guarantee of GDB's

6    bonds has been extinguished and, therefore, the Commonwealth

7    is not liable for the bonds.  Therefore, we request the Court

8    sustain the objection and disallow the claim, but I will allow

9    Mr. Torres Diaz to speak.

10        THE COURT:  Thank you.  Mr. Torres Diaz, will you

11   come now to the podium?

12        MR. TORRES DIAZ:  Yes.

13        THE COURT:  Good morning, sir.

14        MR. TORRES DIAZ:  Good morning.

15        First of all, I would like to apologize for any

16   errors I make.  I am not a lawyer.  I am just a private

17   citizen.

18        I object to the Omnibus objective that would

19   eliminate all creditors from the list of claims against the

20   Commonwealth.  I believe that the debt incurred did not follow

21   the guidelines of the Constitution and the guarantees that the

22   Constitution gives us when we decide to purchase that.

23        The qualifying modification I also believe did not

24   fully satisfy the Constitution guidelines.  I know in

25   bankruptcy there's always -- creditors are the ones that end

1    up losing.  The reason I object to this Omnibus Objection is

2    that I think more could have been achieved to satisfy the

3    creditors.

4            They gave us 55 percent for our -- it was the

5    modification they got.  I think that they could have given us,

6    for example, tax credits to be used on the amount that was

7    lost.  It doesn't necessarily have to -- the Commonwealth

8    doesn't have to reimburse or pull out that money, you know,

9    but at least it gives us a little relief, at least for those

10   of us who were counting on this for retirement.

11           And that's why I object that they eliminate the

12   creditors, so we won't be able to request any other relief or

13   payback from our investments.  I don't know if that makes

14   sense, but --

15           THE COURT:  Yes.  I understand what you're saying.

16           MR. TORRES DIAZ:  So that's it.

17           THE COURT:  Thank you, sir.  And thank you for coming

18   to court today.

19           Ms. Stafford, do you wish to respond?

20           MS. STAFFORD:  Yes, Your Honor, just briefly.

21           We are very mindful of the concerns that Mr. Torres

22   Diaz has raised, as well as the concerns that have been raised

23   by many claimants throughout this process.  But as we noted in

24   the Objection, and as I stated earlier, the qualifying

25   modification has already been approved.  And pursuant to that,

1    the Commonwealth's guaranty of bonds has been extinguished,

2    and as a result, there is no longer any liability for the

3    Commonwealth with respect to those bonds.

4         So although we are very mindful of the concerns and

5    of the impact of these proceedings upon claimants like

6    Mr. Torres Diaz, unfortunately we still believe the objection

7    should be sustained and the claims should be stricken from the

8    register.

9         THE COURT:  And correct me if I'm wrong, but I do

10   recall that there was some extensive discussion and

11   consideration by me of objections at the time when the

12   qualifying modification was submitted as to the elimination --

13   as to the release provisions.  And there were either formal or

14   informal submissions that made suggestions such as tax credits

15   that wouldn't involve a cash outlay at the time, and that

16   those were considered by the proponents of the qualifying

17   modification in formulating the proposals and in the overall

18   context of the situation that Puerto Rico faces.  And I did

19   ultimately make a ruling approving the qualifying modification

20   with the release provisions.

21        Is that -- is my recollection correct?  There's so

22   much that's gone on, I don't always remember perfectly what

23   I've heard in connection with particular controversies, but I

24   certainly am aware and was aware of the importance and the

25   depth of the sorts of concerns that Mr. Torres Diaz has

1   brought forward.

2          MS. STAFFORD:  Correct, Your Honor.

3          THE COURT:  Thank you.

4          I have considered carefully the submissions and the

5   arguments here in court today.  The Objection to the Proof of

6   Claim is sustained, and the claim is disallowed pursuant to

7   the release provisions of the GDB qualifying modification,

8   which was approved by the Court in November of 2018 and cannot

9   be revisited through this objection motion practice.

10  Therefore, the 62nd Omnibus Objection is sustained in its

11  entirety and an Order will be entered.

12         MS. STAFFORD:  Thank you, Your Honor.

13         THE COURT:  Thank you.

14         MS. STAFFORD:  I move on to the 64th Omnibus

15  Objection.  This is an objection of the Commonwealth seeking

16  to disallow 210 claims for which the Commonwealth is not

17  liable.  Each of these claims purports to be based on

18  investments in one or more mutual funds, which in turn may

19  have invested in bonds issued by the Commonwealth.  However,

20  the investors in these mutual funds themselves have only a

21  derivative claim against the Commonwealth, and accordingly,

22  lack standing to assert a direct claim against the

23  Commonwealth.

24         Thirteen Responses were filed to this Objection.

25  I'll begin with the first of them that is on the Agenda filed

1   by Mr. Ernesto Rodriguez Rodriguez and Ms. Gloria L. Diaz

2   Lopez.

3          THE COURT:  Now, Ms. Diaz Lopez is here.

4          Ms. Diaz Lopez, are you comfortable proceeding and

5   listening in English?

6          MS. DIAZ LOPEZ:  Yes.  I have a written position if

7   Your Honor will let me do it.  It's short.

8          THE COURT:  Thank you.  I shall, after I hear from

9   Ms. Stafford.

10         MS. STAFFORD:  Okay.  This Response states that the

11  General Obligation Bonds owned by the mutual funds in which

12  claimant invested were issued in 2003, 2005 and 2006, and not

13  challenged GO Bonds, which we understand to be a reference to

14  objections that were filed by the Special Claims Committee.

15         This Objection, however, seeks to disallow the

16  claimant's claim on the basis that the claimant is seeking to

17  assert a claim directly against the Commonwealth, even though,

18  if any claim exists against the Commonwealth, it's properly

19  asserted only by the mutual funds in which the claimant has

20  invested.

21         Accordingly, the fact that the bonds are not a part

22  of the Special Claims Committee's Objection is not relevant to

23  the determination of the objection here today.  And because

24  the claimant does not dispute that the claim arises from

25  investments made in mutual funds or that the claimant lacks

1    standing to assert a direct claim against the Commonwealth

2    arising from those investments, the Commonwealth respectfully

3    requests the Court disallow the claim, not withstanding the

4    Response.  And I'll step aside.

5              THE COURT:  Thank you.

6              Ms. Diaz Lopez, would you come now to the podium?

7              MS. DIAZ LOPEZ:  Thank you.

8              THE COURT:  Thank you.  Good morning and thank you

9    for coming to court.

10             MS. DIAZ LOPEZ:  Good morning.  Good morning, Your

11   Honor, Honorable Court, Financial Supervision and Management

12   Board (sic) members.  It's to --

13             THE COURT:  It's fine.  Take your time.

14             MS. DIAZ LOPEZ:  Financial Supervision and Management

15   Board members, if any, Puerto Rico Fiscal Agency members, if

16   any, distinguished lawyers and visitors.

17             My name is Gloria L. Diaz Lopez.  I am a 66-year-old

18   retired medical doctor.  I also have been a widow for the past

19   five years.  I was married for almost 34 years to Dr. Ernesto

20   Rodriguez Rodriguez, whose name appears as number 173 in page

21   32 of the Annex A of the 64th Global Objection of Puerto Rico

22   to claims based on mutual funds investment.

23             Over the years, we started to plan our retirement,

24   including a trust under the name of Ernesto Rodriguez

25   Rodriguez and Gloria L. Diaz Lopez, co-trustees for FBO

1    Rodriguez Diaz, in order to insure our assets as much as

2    possible.  In that trust, we both appear as trustors and

3    fiduciaries and trustees.

4         We decided to invest our assets through Santander

5    Securities, with Mr. Rafael David Rodriguez as the financial

6    advisor.  Coincidentally, Mr. Carlos M. Garcia, a member of

7    the Financial Supervision and Management Board of Puerto Rico,

8    worked at Santander Securities Corporation as president and

9    CEO from 2001 to 2005.

10         My husband and I both decided to invest in our

11   country, Puerto Rico.  Because of that, we invested in

12   different Puerto Rico Government instrumentalities, including

13   General Obligation Bonds, content in three different mutual

14   funds, with the respective tax advantage opportunities for the

15   years 2003, 2005 and 2006.

16         At the same time, those mutual funds were contained

17   in the Trust Rodriguez Diaz previously mentioned, for which we

18   were both trustors, fiduciaries and trustees.  The

19   considerable amount mentioned in Annex A of the global

20   objection was the product of years of hard and dedicated work

21   invested in instrumentalities of the Government of Puerto Rico

22   with the aim of having a worthy retirement.

23         In the case of COFINA bonds, a restructuring was

24   approved in May of 2019.  As holders of subordinated bonds, we

25   received a revalorization of 53 cents per dollar invested

1   after almost three years of interest nonpayment.  In the case

2   of General Obligation Bonds, there has been -- there has been

3   no restructuring plan up to now, as far as I am concerned.

4        In our case, the Rodriguez claim, the total

5   cancellation or elimination of the amount of money mentioned

6   on Annex A, a product of years of hard and committed work, is,

7   in my opinion, with all due respect to Your Honor and this

8   Honorable Court, unfair.

9        We have full conviction of the legality and

10  constitutionality of the GOs emitted in 2003, 2005 and 2006;

11  and I do not think it is fair to declare those General

12  Obligation Bonds as illegitimate, because they are contained

13  in the mutual funds previously mentioned and, therefore, are

14  under the protection of a trust constituted legally, of which

15  we were both trustors, fiduciaries and trustees.

16       The mutual funds have no voice of their own.  We, as

17  individuals, were the ones who finally invested our money in

18  those Commonwealth bonds in good faith, and as individuals,

19  trustors, trustees feel committed in raising our voice,

20  demanding justice.

21       Thank you very much, Your Honor, and thank you to

22  this Honorable Court for the unique opportunity to express

23  myself.  Thank you very much.

24       THE COURT:  Thank you, Dr. Diaz Lopez.

25       Ms. Stafford.

1          MS. STAFFORD:  I want to reiterate again the concern

2     that we all have for the impact of these matters upon the many

3     claimants that we deal with.  But I do want to reiterate that

4     the basis of this objection to this claim that was filed is

5     that the claimant was an investor in a mutual fund, and that

6     investment in the mutual fund does not give the standing to

7     assert a claim directly against the Commonwealth.

8          And so not withstanding our concern about the impact

9     of these issues upon the claimants, I would submit again that

10    this claim should still be disallowed in light of the fact

11    that it is an investment in a mutual fund.

12         THE COURT:  And for clarity, the Objection to this

13    claim is different from the issues that have been raised about

14    the validity of the General Obligation Bonds.  This Objection

15    to this claim is not an assertion that the trust of Dr. Diaz

16    Lopez and her husband should not ever get anything in respect

17    of the bonds.  That question of what should be paid on the

18    bond is separate.

19         Your objection is that because the bonds were held by

20    a mutual fund, which is a legal entity, that legal entity, the

21    mutual fund, is the one that needs to pursue any rights.  And

22    people who owned interest in the mutual fund, like this trust,

23    can't jump over the mutual fund and assert that claim for the

24    bonds themselves.

25         Do I correctly understand the objection?

1          MS. STAFFORD:  That's precisely correct, Your

2    Honor.

3          THE COURT:  Okay.  Thank you.

4          And so I've considered carefully the submissions and

5    the remarks made in court today, and I sustain the Objection

6    as to the Rodriguez-Diaz Lopez claim.  And I am disallowing

7    that claim because the bonds in question were held by the

8    mutual fund as the owner of the bonds in which the investment

9    was made.  So a claim regarding the bonds and any opposition

10   to the separate arguments about the validity of bonds are for

11   the mutual fund, which is a legal entity and can speak and can

12   make submissions in court and arguments in court.

13         It is for the mutual fund to make, and the trust

14   itself and the trustees lack what we call "standing" to assert

15   a claim directly based on those bond investments.  And so

16   ultimately, whatever is to be received on those bonds will

17   come to the trust through the mutual fund.  And so this direct

18   claim is disallowed.

19         Thank you.  I hope that makes things a little bit

20   clearer.

21         MS. STAFFORD:  Thank you, Your Honor.

22         THE COURT:  You may continue.

23         MS. STAFFORD:  The next Response on the Agenda was

24   filed by Mr. Jesus Librada Sanz.  It's ECF number 855 -- 8555

25   and Proof of Claim number 61126.  Mr. Librada Sanz's original

1  Proof of Claim contains information regarding an investment in

2  a mutual fund.  And as we discussed in the Objection,

3  Mr. Librada Sanz's investment in a mutual fund, which may

4  itself have invested in bonds issued by the Commonwealth, does

5  not give Mr. Librada Sanz standing to assert a direct claim

6  against the Commonwealth.

7         In the Response, Mr. Librada Sanz also states that he

8  had invested in a bond issued by ERS bearing CUSIP number

9  29216MBL3.  That CUSIP number is an ERS Series C bond and is

10 associated with a Master Proof of Claim, Proof of Claim number

11 32004, which was filed by the Bank of New York Mellon against

12 the Commonwealth on behalf of ERS bondholders.

13        To the extent that the claimant seeks to assert

14 liabilities associated with investments and mutual funds, the

15 claimant lacks standing to do so, and failure to disallow the

16 claim could result in Mr. Librada Sanz receiving an

17 unwarranted double recovery against the Commonwealth.  And to

18 the extent that claimant is seeking to assert liabilities

19 associated with this ERS bond, that bond is duplicative of a

20 Master Proof of Claim, and any failure to disallow the claim

21 could also result in Mr. Librada Sanz receiving an unwarranted

22 double recovery against the Commonwealth.

23        In light of the fact that Mr. Librada Sanz is either

24 asserting an investment in a mutual fund or an investment in

25 an ERS bond, I would respectfully request the Court disallow

1  the claim and grant the Omnibus Objection with respect to

2  Mr. Librada Sanz's claim.

3         THE COURT:  Thank you.  Is Mr. Librada Sanz here?

4         (No response.)

5         THE COURT:  All right.  I need to ask you to help me

6  make sure that I understand what you understand about the

7  nature of his holdings.

8         MS. STAFFORD:  Yes.

9         THE COURT:  So is it that he may have held directly

10  an ERS security that's the subject of a master proof of claim?

11  And if that's the case, it's duplicated by the master proof of

12  claim, and he may also have had an interest in ERS securities

13  held through a mutual fund?

14         MS. STAFFORD:  We understand that he may hold an ERS

15  bond which is duplicative of a master proof of claim, and that

16  he also holds an investment in a mutual fund.  And it's not

17  clear what investments that mutual fund has made in bonds that

18  may have been issued by the Commonwealth.

19         But respectfully, regardless of what investments that

20  mutual fund may have made, it wouldn't permit Mr. Librada Sanz

21  to file a direct claim against the Commonwealth in respect to

22  bonds held by that mutual fund.

23         THE COURT:  And as to the bond for which we have a

24  CUSIP number and it is, you say, subject to the master proof

25  of claim, we looked on Prime Clerk and apparently the backup

1     is so voluminous that not everything is on Prime Clerk.  So my

2     chambers was not able to verify independently that there was a

3     match between his claimed CUSIP number and the Master Proof of

4     Claim.

5             So can you reassure me today that you have looked at

6     the documentation and it does match up?

7             MS. STAFFORD:  We have.  And I would invite -- I know

8     Jay Herriman is here as well, if he knows -- if he has also

9     looked at this claim -- I'm happy to also provide the Court

10    with an informative motion if that would be preferable for

11    Your Honor.

12            THE COURT:  That would make everything very clear as

13    a matter of record.

14            MS. STAFFORD:  Yes.

15            THE COURT:  So if you'd supplement in that way, I

16    would be grateful.

17            And so assuming that that confirming supplement is

18    received as to the bond directly held, the ERS bond for which

19    there's a CUSIP number, and based on the fact that any

20    remainder of the claim is in respect of a mutual fund

21    investment, the Motion to Disallow the Claim is granted.  And

22    I will expect the supplementation before I sign an Order on

23    this one.

24            MS. STAFFORD:  Of course, Your Honor.

25            THE COURT:  Thank you.

1            MS. STAFFORD:  The next Response on the Agenda was

2      also filed by Mr. Jesus Librada Sanz.  It is ECF number 8556

3      and addresses Proof of Claim number 49803.

4            This Response states only that the Commonwealth's

5      inability to pay its debts has caused Mr. Librada Sanz to feel

6      frustration and anxiety.  And the Commonwealth again is deeply

7      mindful of the concerns that Mr. Librada Sanz raises.

8      However, the Response does not dispute the fact that Mr.

9      Librada Sanz lacks standing to assert a direct claim against

10     the Commonwealth in respect of his mutual fund investments.

11     And accordingly, the Commonwealth requests the Court grant the

12     Objection and disallow the claim in respect of mutual funds

13     owned by Mr. Librada Sanz.

14            THE COURT:  The Objection is sustained.

15            MS. STAFFORD:  Thank you, Your Honor.

16            The next Response on the Agenda was filed by the

17     bankruptcy estate of Romualdo Rivera Andrini.  This is ECF

18     number 8562 and Proof of Claim number 18331.

19            This Response asserts that the Commonwealth has

20     failed to substantiate its burden to demonstrate that the

21     claim is not valid because the Commonwealth has not identified

22     a proof of claim filed by the mutual funds in which the

23     claimant has invested.

24            Whether the mutual funds into which the bankruptcy

25     estate invested filed proofs of claim is not relevant,

1   however, because, as a mutual fund investor, the bankruptcy

2   estate itself lacks standing to assert a direct claim against

3   the debtor in any event.

4       Nevertheless, the Commonwealth has identified in its

5   Reply Proofs of Claim filed by the mutual funds in which the

6   bankruptcy estate invested, and those Proofs of Claim

7   demonstrate that there's a risk of an unwarranted double

8   recovery if the claim is not -- the direct claim that was

9   filed by the bankruptcy estate is not disallowed.  And

10  accordingly, the Commonwealth requests the Court grant the

11  Objection and disallow the claim.

12      THE COURT:  The Objection is sustained because the

13  holding is one through a mutual fund as to which there is no

14  standing to assert a direct claim.

15      MS. STAFFORD:  Thank you, Your Honor.

16      The next Response on the Agenda was filed by the

17  Noreen Wiscovitch Retirement Plan.  This Response also asserts

18  that the Commonwealth has failed to substantiate its burden to

19  demonstrate that the claim is not valid because the

20  Commonwealth has not identified a proof of claim filed by the

21  mutual funds in which the claimant has invested.  And for the

22  same reasons as with respect to the bankruptcy estate's claim

23  that we just dealt with, this retirement plan, as a mutual

24  fund investor, lacks standing to assert a direct claim against

25  the debtor.

1          However, the Commonwealth has also identified in its

2    Reply Proofs of Claim filed by the mutual funds into which the

3    retirement plan invested, which again demonstrates a risk of

4    an unwarranted double recovery if the retirement plan's claim

5    is not disallowed.  So we would request the Court grant the

6    Objection and disallow this claim as well.

7          THE COURT:  The Objection is sustained and the claim

8    which is based on a mutual fund -- I'm sorry.  Did you wish to

9    respond?

10          MS. WISCOVITCH RENTAS:  Yes.

11          THE COURT:  I'm so sorry.

12          MS. WISCOVITCH RENTAS:  Good morning, Your Honor.

13    Noreen Wiscovitch Rentas.  I'm the Chapter 7 Trustee that

14    filed the response to the Omnibus Objection to Mr. Romualdo

15    Rivera Andrini, which was already sustained.  And I understand

16    the reasons why it was sustained, but in the case of the

17    Noreen Wiscovitch Retirement Plan, Your Honor, I would like to

18    point out a couple of things.

19          First of all, the two investment funds that are of

20    concern here were related to COFINA.  And because of the

21    Response of the debtor, I was able to locate the two Proof of

22    Claims.  However, one of the funds that are listed here was

23    liquidated in June 28, 2019, and the liquidation amount is

24    much less than the investment amount.  There's a difference of

25    25,219.50.  That will not be recovered through any type of

1   liquidation or payment through the COFINA Plan.

2        So I want to point that out to the Court, that not

3   necessarily the statement that the debtor is making, that the

4   claimant will receive double, is correct.  It is not because

5   there is some circumstances, like in this one, in which the

6   fund was liquidated before even receiving any type of COFINA

7   funds to them, in which they decided to liquidate to all of

8   the holders of that mutual fund.

9        THE COURT:  But did they liquidate by selling the

10  COFINA securities that they had?

11       MS. WISCOVITCH RENTAS:  No, Your Honor.  I do have

12  some documentation.  I did not submit it.  I can submit it

13  later on in an informative motion as to the notices that were

14  provided to those that were holding an interest in that

15  particular mutual fund.

16       So I just respectfully request, Your Honor, to allow

17  me some time to provide this additional information so that I

18  can show that there is a claim for at least 25,219.50 that is

19  valid against the estate, the debtor's estate.

20       THE COURT:  Thank you.  Would you just state your

21  name again for the record?  Because I didn't get it.

22       MS. WISCOVITCH RENTAS:  Sure.  Noreen Wiscovitch

23  Rentas.  I'm a Chapter 7 Bankruptcy Trustee in the case prior

24  to, and the POC 18331.  And I'm also the trustee in the Noreen

25  Wiscovitch Retirement Fund.  Thank you.

1          THE COURT:  Thank you.

2          Ms. Stafford, did you wish to respond?  And are you

3     agreeable to our adjourning this out so that you can review

4     the documentation that Ms. Wiscovitch Rentas has?

5          MS. STAFFORD:  I would be happy to adjourn and permit

6     Ms. Rentas to file her informative motion and evaluate it at

7     that time.

8          THE COURT:  Very well then.  So we will adjourn this

9     aspect of the Objection to the October Omnibus.

10          MS. STAFFORD:  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          MS. STAFFORD:  The next Response on the Agenda was

13     filed by Alberto Aristizabal Ocampo.  It's ECF number 8572 and

14     addresses Proof of Claim numbers 29949, 31904 and 45838.

15          This Response also asserts that the Commonwealth has

16     failed to substantiate its burden to demonstrate that the

17     claim is not valid because the Commonwealth has not identified

18     a proof of claim filed by the mutual funds in which the

19     claimant has invested.

20          Moreover, this Response asserts that an investor in a

21     mutual fund is more akin to a co-owner of the bond.  As we

22     stated in our Reply, it is not correct that an investor in a

23     mutual fund co-owns the mutual fund's assets.  As with other

24     business associations, the mutual fund is a separate entity

25     from the investor, and the mutual fund, not the investor, owns

1    the bonds that are the mutual fund's assets and, therefore,

2    has a right to assert claims against the Commonwealth in

3    respect to those bonds.

4         And as we noted in our Reply, the Commonwealth has

5    identified in its Reply proofs of claim filed by the mutual

6    funds into which Mr. Aristizabal Ocampo invested, and these

7    proofs of claim demonstrate that there is a risk of

8    unwarranted double recovery if the claim is not disallowed.

9    And so the Commonwealth would request the Court grant the

10   Objection and disallow the claim.

11        And I'll just pause in case against Mr. Aristizabal

12   is here.

13        THE COURT:  All right.  Is Mr. Aristizabal here?

14        (No response.)

15        THE COURT:  I have reviewed the written submissions

16   carefully.  The Objection is sustained.  Mr. Aristizabal's

17   claims are disallowed.  He offers no legal basis for his

18   theory that he should be considered a co-owner of the

19   securities held by the mutual fund, and the legal authorities

20   cited by the Oversight Board in its Reply confirm that a

21   mutual fund is a separate legal entity that owns the

22   investments.

23        He does not dispute that his Proofs of Claim only

24   assert liabilities associated with his investments in mutual

25   funds.  Therefore, Mr. Aristizabal lacks standing to assert

1  claims based on those investments which must instead be

2  asserted by the mutual funds directly.

3      MS. STAFFORD:  Thank you, Your Honor.

4      The next five Responses were all filed by the same

5  attorney and are identical in form and argument, so with the

6  Court's permission, I would like to address them all at

7  once.

8      THE COURT:  Yes.

9      MS. STAFFORD:  Thank you, Your Honor.

10     And I did want to point out that one of the Responses

11 appears to address a claim that is not, in fact, on the 64th

12 Omnibus Objection.  And we did not address this claim in our

13 Reply, and of course we don't request any action from the

14 Court with respect to this claim at this time.

15     The remaining Responses assert that mutual fund

16 investors may assert direct claims against the Commonwealth

17 because they are co-owners of the bonds and also state that

18 the Commonwealth has failed to substantiate its burden to

19 demonstrate that the claim is not valid because the

20 Commonwealth has not identified a proof of claim filed by the

21 mutual funds in which the claimant has invested.

22     As we just discussed, it is not correct that an

23 investor in a mutual fund co-owns the mutual fund's

24 investments.  And again, because the mutual fund is a separate

25 entity from the investor, the mutual fund and not the investor

1   owns the bonds that are the mutual fund's assets.

2            And as we noted in our Reply, the mutual funds into

3   which these investors invested have each filed Proofs of Claim

4   in respect of the bond into which they had invested, which

5   again demonstrates the risk of an unwarranted double recovery

6   if these claims are not disallowed.

7            So accordingly, we request the Court grant the

8   Objection and disallow these claims.

9            THE COURT:  Is there anyone here to speak for these

10  claimants?

11           Yes, sir.  Good morning.

12           MR. GILMORE:  Good morning, Your Honor, court

13  personnel and fellow attorneys.  My name is Charles Gilmore,

14  and I'm here in reference to the following.  We have six

15  identical objections that were filed, Your Honor, and I'm

16  referring to Items G, H, I, J, K and L.  I heard sister

17  counsel reference that one of them should be treated

18  differently, and perhaps that could be specified.

19           We've heard the Court's rulings.  We've heard the

20  arguments made up to this point, and so we'll await the

21  Court's ruling on these matters.  Each of these Objections was

22  based on ownership of shares in a mutual fund.  And so we have

23  been listening carefully, so we'll await the Court's ruling.

24  Thank you.

25           THE COURT:  Thank you.

1         Did you want, Ms. Stafford, to clarify for him which

2    one?

3         MS. STAFFORD:  I'm happy to do that.  And that was --

4    the one that we are not requesting any action from the Court

5    at this time is identified on Item H of the Agenda.  It

6    relates to a claim filed by Helvia S. Caparros Santos, and

7    that's ECF number 8601.

8         THE COURT:  Thank you.

9         And so again, I've read carefully and listened

10   carefully.  I sustain the Objection as to the operative

11   components of this group of claims, and the claims are

12   disallowed for the reasons that I have stated in connection

13   with the Aristizabal claims.

14        These claimants do not dispute that their Proofs of

15   Claim assert liabilities associated with their investments in

16   mutual funds.  Therefore, the claimants lack standing to

17   assert claims based on those investments.  The claims against

18   the debtors' estates here must instead be asserted by the

19   mutual funds directly.

20        MS. STAFFORD:  Thank you, Your Honor.

21        And the final Response that was filed with respect to

22   the 64th Omnibus Objection was filed by Jorge A. Diaz Mayoral

23   and Juan Frau Escudero, ECF number 8646, and addressing Proof

24   of Claim numbers 152470 and 152283.

25        This Response asserts three bases for overruling the

1   objection:  One based on Section 501(b) in which the claimant

2   claims -- permits the claimants to file proofs of claim in

3   case the mutual fund did not timely file a proof of claim.

4   And then also the Response asserts that mutual fund investors

5   are co-owners of mutual fund assets, and that the Commonwealth

6   did not identify proofs of claim filed by the mutual funds in

7   which the claimants invested.

8          As we stated in our Reply, Section 501(b), in fact,

9   protects codebtors' rights to file proofs of claim against the

10  debtor in the event that a creditor of both debtors fails to

11  do so.  And it exists to protect codebtors, not creditors of

12  creditors, such as the mutual fund investors at issue here.

13         And with respect to the remaining two bases for the

14  Objection, we've addressed them over the course of the last

15  few minutes, but as we've noted, mutual fund investors are not

16  co-owners of the mutual fund's assets, as the mutual fund is

17  its own separate legal entity.

18         And although the Commonwealth did not identify in its

19  Reply proofs of claim filed by the mutual funds in which the

20  claimants invested, that is because the claimants' claim does

21  not specify the mutual funds into which the claimants

22  invested, making it impossible to determine whether or not

23  those mutual funds had filed claims against the Commonwealth.

24  But in any event, as simple investors in mutual funds,

25  there's -- these claimants unfortunately don't have the right

1    to assert a direct claim against the Commonwealth.

2          And I believe that someone is here to respond.

3          THE COURT:  Good morning.

4          MS. DIAZ MAYORAL:  Good morning, Your Honor, court

5    personnel and persons in the court today.  Monique Diaz

6    Mayoral representing Jorge Diaz Mayoral and Juan Frau

7    Escudero.

8          There are only a few things that we want to add to

9    what we already asserted in our Response, and the first one is

10   that we did attach to the Response the statements of the

11   investments which have mutual funds in which they were

12   invested in.  They were attachments one and two to the

13   Response.

14         However, we have tried to find in the claims register

15   the claims of those mutual funds, and although some we were

16   able to identify, some we were not able to identify.  So these

17   investments in mutual funds could have situations similar to

18   the previous claim of Noreen Wiscovitch Rentas where there

19   might not be duplicative payment because maybe some of these

20   mutual funds did not file proofs of claim.

21         We'd have to verify to be able to identify the mutual

22   funds proof of claim to see if there is going to be

23   duplicative payment or not.  And some of those proofs of claim

24   have zero amount in the proof of claim, so there is not

25   necessarily going to be duplicative payment.

1          The second is that we want to add, the two cases that

2     were cited by the Board in the Response are two cases that

3     were not cited in the objection to claims, so that's why we

4     did not respond to those cases in our Response.  And we didn't

5     find them in our search because we were searching for cases

6     that specifically had determined that an investor in a mutual

7     fund did not have standing to file a proof of claim, which we

8     did not find, so we thought it was an issue of first

9     impression.

10         But we reviewed the cases cited in the Reply and we

11    are -- we understand that they are not -- they do not decide

12    specifically that an investor in a mutual fund does not have

13    standing to file a proof of claim.  They decide other issues,

14    and they look at the nature of the proof of claim as a result

15    of another issue that's being decided.

16         For example, the first case, which is *Community Trust*

17    *Bank Corp.,* that case evaluates the tax treatment for an

18    investor, which in that case was a bank, of losses sustained

19    by the mutual fund when it sold some bonds at a loss.  And the

20    Court had to decide if those losses could be considered as

21    ordinary losses as required by the relevant tax statute in

22    order for the bank to be able to claim that as a loss in their

23    tax treatment.  And the Court's analysis also did not evaluate

24    mutual funds like the mutual funds at issue here.

25         Attachment number three to our Response is a

1    prospectus of one of the mutual funds that are -- my client's

2    invested in.  And the prospectus specifically states that

3    these mutual funds are not subject to the U.S. Investment

4    Company Act of 1940.  They are subject to the Puerto Rico

5    Investment Companies Act, which is different, which is one of

6    the arguments in our motion, that the specifics of this

7    Investment Act of Puerto Rico gives the shareholders of the --

8    states that the investment company holds the securities for

9    the benefit of the owners.  So that's why we would say that

10   it's slightly different.

11          The second case, which is *Gordon versus Fundamental*

12   *Investors*, examined whether an investor lacks standing to

13   bring suit for alleged violations of proxy rules that caused

14   harm to the mutual fund.  And in that case, also it does not

15   examine the issue of standing to file a proof of claim, and it

16   does not examine funds like the funds at issue here ruled by

17   the Puerto Rico Investment Companies Act.

18          But also in that case, the District Court did

19   recognize that there are circumstances where relief will be

20   awarded in favor of shareholders individually rather than the

21   corporation, and held that while a shareholder may sue for

22   violation of a proxy rule, he must, like any other plaintiff,

23   have been effected by his own interest -- in his own interest

24   by the material omission or misstatement to recover on his own

25   behalf -- this is in 362 F. Supp. at 44, 45 -- because,

1    continues the District Court, a shareholder has a direct right

2    to attack a corporate transaction which dilutes his

3    proportional ownership.

4           Again, this is a different issue.  Different facts in

5    that case.  So even if the Court determines that the

6    individual investors are not co-owners of the bonds, it should

7    evaluate there whether there are beneficial owners under the

8    Puerto Rico Investment Companies Act, which is a fact

9    dependant, case-by-case analysis that cannot be performed on

10   the pleadings alone.

11          And again, as stated in our Response, we reiterate

12   that it is unnecessary to determine the nature of the

13   individual investor's interest in the bonds if they are

14   duplicative of the mutual funds' claims.  So for that reason,

15   we ask that we be given time to be able to identify which

16   mutual funds' claims are duplicative of these claims.  And if

17   not, we ask that they be disallowed because they are

18   duplicitous and not because they lack standing to file the

19   proof of claim.

20          And the last thing is that we want to clarify that

21   these -- our clients also have other proofs of claim that are

22   not subject to this objection.  So the ruling would only apply

23   to the specific proofs of claims in the Objection.  That's it.

24          THE COURT:  Thank you very much.

25          Ms. Stafford.

1          MS. STAFFORD:  Thank you, Your Honor.

2          Certainly any rulings would only apply to the proofs

3    of claim that are subject to the objection and not any others

4    filed by the claimants.

5          I did want to note that none of the case law or

6    authorities that counsel just cited establish that investors

7    in mutual funds have legal title to or are otherwise owners of

8    the assets of the mutual fund.  Whether they have the right to

9    assert -- whether shareholders in corporations might have the

10   right to assert certain claims is not the same inquiry as to

11   whether shareholders or investors in mutual funds have legal

12   title to and the right to assert claims with respect to the

13   investments that the mutual fund makes in specific bonds.

14         And so we'd respectfully state that not withstanding

15   counsel's argument, that we would request the Court grant the

16   Objection and disallow the claims.

17         THE COURT:  Thank you.

18         And so I have, as always, read and listened

19   carefully.  These are, you know, indisputably investments that

20   were made through mutual funds.

21         The cite and section of the Bankruptcy Code, Section

22   501(b), does not authorize mutual fund shareholders to file

23   direct proofs of claim.  And the Supreme Court decision in the

24   *American Realty Trust v. Conagra Foods* case cited in the

25   Response, which concerns jurisdiction, also does not provide

1    authority for the filing of a proof of claim by a mutual fund

2    shareholder.

3        The Puerto Rico Investment Company Act provision

4    providing that mutual fund assets are held for the benefit of

5    mutual fund participants also does not establish the mutual

6    fund participants as title owners of the securities entitled

7    to bring claims directly based on the securities.  And there

8    has been no representation here that there is any potential

9    injury to the shareholders of the mutual fund that is not the

10   same sort of injury that would be suffered by the mutual fund

11   if the security were not paid.

12       Therefore, I find that there is no standing of the

13   mutual fund shareholders to assert claims based on the mutual

14   fund investors, and the Mayoral, Escudero claims which are

15   specifically listed in the claim objection are disallowed.

16       MS. STAFFORD:  Thank you, Your Honor.

17       THE COURT:  And so as to the 64th Omnibus Objection,

18   it is sustained, except with respect to the -- and I will sign

19   an Order -- except with respect to the Librada Sanz Responses

20   to which I am looking for further confirmatory documentation,

21   and the Wiscovitch Rentas Response, which has been adjourned

22   to the October Omnibus.

23       MS. STAFFORD:  Thank you, Your Honor.

24       THE COURT:  Thank you.

25       MS. STAFFORD:  Moving to the last of the Omnibus

1    Objections on the Agenda, this is an objection filed by the

2    Highways and Transportation Authority to duplicate and

3    deficient claims.  This Objection seeks to disallow three

4    claims that failed to provide a basis for asserting a claim or

5    a portion of the claim against HTA.

6            Each of these claims purports to assert liabilities

7    associated with bonds issued by another entity that is not one

8    of the debtors, but fails to comply with the applicable rules

9    because it does not provide a basis for asserting a claim

10   against HTA --

11           THE COURT:  Slow down and speak up, please.

12           MS. STAFFORD:  Sorry -- due to bonds not issued by

13   HTA.  Only one response was filed to this objection, and this

14   was filed by Ms. Aracelia Torres Irizarry.  This was filed at

15   ECF number 8534, and it's Proof of Claim number 10894.

16           In the Response, claimant stated that she had made

17   errors in her original claim, but had sent an e-mail to Prime

18   Clerk including evidence to sustain her claim.  The e-mail

19   that was sent to Prime Clerk was appended to Proof of Claim

20   number 10894, and that e-mail referenced a brokerage statement

21   reflecting a bond bearing CUSIP number 745220JYO, which

22   claimant stated was a PR Highway Bond.  CUSIP 745220JYO,

23   however, is associated with bonds issued by the Puerto Rico

24   Infrastructure Financing Authority and not by HTA.

25           PRIFA is not one of the debtors, and the claim does

1    not provide any basis for asserting claims against HTA due to

2    bonds issued by PRIFA.  And accordingly, Your Honor, we

3    request the Court grant the Objection and disallow the claim.

4         THE COURT:  Is there anyone here that wishes to speak

5    for Ms. Torres Irizarry?

6         (No response.)

7         THE COURT:  So I have read carefully the submissions

8    and listened to the argument.  The Objection is sustained.

9    The Proof of Claim and supporting documentation show that

10   Ms. Torres Irizarry has claims against PRIFA, which is not a

11   Title III debtor, and ERS, which is a separate Title III

12   debtor.  Therefore, the claim asserted in the HTA case is

13   disallowed.

14        I would note that the claim filed in -- separately in

15   the *ERS* case, which is claim number 10814, is not affected by

16   this ruling.

17        Ms. Stafford, we noticed that the additional

18   information that Ms. Irizarry had provided by e-mail to Prime

19   Clerk supporting her claim against ERS has not been matched up

20   with her ERS claim, which is 10814.  And so as to avoid

21   further confusion in the future and to have a complete record,

22   I'd be grateful if you'd reach out to Prime Clerk and make

23   sure that they join up the documentation with the 10814 claim.

24        MS. STAFFORD:  I would be happy to do that, Your

25   Honor.

```
 1              THE COURT:  Thank you very much.

 2              MS. STAFFORD:  Of course.

 3              THE COURT:  And so this concludes the Agenda of

 4   matters to be addressed on claims objections and all of the

 5   matters that I will hear today.  There are several adjourned

 6   matters, as listed in the Agenda and as supplemented today.

 7   The next scheduled hearing date is the Omnibus hearing

 8   scheduled for October 30th, 2019, here in San Juan, with a

 9   video connection to New York.

10              As always, I thank the Court staff here in Puerto

11   Rico, in New York, and in Boston for their work in preparing

12   for and conducting today's hearing, and their superb ongoing

13   support of the administration of these cases.  And I also

14   thank my colleague, Judge Dein, for all of her work in the

15   separate hearings that she holds and her collaboration in

16   managing these cases.

17              Keep well and safe travels to all.  We are adjourned.

18              (At 11:56 AM, proceedings concluded.)

19                          *    *    *

20

21

22

23

24

25
```

```
 1   U.S. DISTRICT COURT     )

 2   DISTRICT OF PUERTO RICO)

 3

 4       I certify that this transcript consisting of 85 pages is

 5   a true and accurate transcription to the best of my ability of

 6   the proceedings in this case before the Honorable United

 7   States District Court Judge Laura Taylor Swain on September

 8   11, 2019.

 9

10

11

12   S/ Amy Walker

13   Amy Walker, CSR 3799

14   Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```

< Dates >
April 24th, 2019
   46:17
August 27th, 2019
   26:22
August 7 21:14
January 13, 2020
   9:23
January, 2018 18:1
July 24 8:12
July 24th, 2019
   26:19
June 13 23:20
June 2017 27:8
June 23rd, 2017
   27:19
June 28, 2019 68:23
May, 2019 49:20
October 30 8:22
September 11, 2019
   1:16, 5:2, 85:7
September 4th 24:18
September 5th, 2019
   27:4
September, 2018
   30:9, 30:13
September, 2019 8:5


< 1 >
10701 49:10
10701. 46:11
10814 83:15, 83:23
10814. 83:20
10894 82:20
10894. 82:15
11 50:3
11:00 6:8
11:56 84:18
13th 32:4, 32:21,
   46:6, 46:9, 49:7
148 41:10
15 52:5
150 9:9
152283. 74:24
152470 74:24
169959. 50:17
17-3283 47:3, 49:22
17-3283. 46:8
17-BK-3283(LTS 1:6

173 58:20
18331. 66:18, 69:24
1893. 41:10
1940. 78:4
1982 48:10
1:00 6:6


< 2 >
20 9:16, 32:8
2001 59:9
2003 57:12, 59:15,
   60:10
2005 57:12, 59:15,
   60:10
2005. 59:9
2006 57:12, 60:10
2006. 59:15
2015 43:15
2018 56:8
2018. 44:14
2019 84:8
2019. 59:24
207. 22:19
210 56:16
2141(b)(1)(n 41:20
21: 2:4
24 16:17
25,219.50 69:18
25,219.50. 68:25
250 9:9
29 6:23, 10:24,
   25:1, 25:4
29216MBL3 63:9
29949 70:14


< 3 >
30 21:16
30th 84:8
312 41:10
31904 70:14
32 58:21
32004 63:11
326 41:10
3283 26:21, 27:10,
   27:18
329 27:10
34 58:19
362 78:25

3799 85:13
393 52:14
3: 1:6


< 4 >
430 27:18
44 78:25
4417 46:8, 49:8
45 78:25
45838. 70:14
459 48:10
49803. 66:3


< 5 >
50 9:13
500 17:19
501(b 75:1, 75:8,
   80:22
53 59:25
55 54:4
552(f 43:19
56 48:10
58 48:10
5:00 6:6


< 6 >
60th 49:24, 50:2,
   51:10
61126. 62:25
62nd 51:13, 52:13,
   56:10
64th 56:14, 58:21,
   72:11, 74:22,
   81:17
65124 50:11, 50:16
65124. 50:11
66-year-old 58:17


< 7 >
7 2:29, 68:13, 69:23
7113 49:21
7211 47:3
745220JYO 82:21,
   82:22
7941. 10:4

< 8 >
8244 26:20
8287 50:10
8427 47:3
8487 49:22
85 85:4
8534 82:15
855 62:24
8555 62:24
8556 66:2
8562 66:18
8572 70:13
8601. 74:7
8646 74:23

< 9 >
944 37:8
9:30 6:5
9:47 5:3

< A >
A. 2:7, 74:22
AAFAF 7:1, 10:13,
  10:16, 15:10,
  20:20, 21:4,
  21:23, 22:7,
  22:21, 23:10,
  23:16, 23:20,
  23:24, 24:9, 24:24
ability 37:17, 85:5
able 31:7, 31:17,
  46:3, 54:12, 65:2,
  68:21, 76:16,
  76:21, 77:22,
  79:15
abrogating 41:6
abrogation 42:11
absence 41:25
absolutely 31:18
abundantly 27:11
accelerate 25:15
accomplished 8:24
accordance 23:9
according 19:22
Accordingly 56:21,
  57:21, 66:11,
  67:10, 73:7, 83:2

account 33:1
accrued 43:4
accurate 24:14,
  34:23, 85:5
achieve 22:25
achieved 54:2
acquired 42:19
Act 23:9, 25:1,
  25:4, 39:13, 78:4,
  78:5, 78:7, 78:17,
  79:8, 81:3
acting 10:1, 22:18,
  39:18
action 28:24, 72:13,
  74:4
actions 7:24, 9:8,
  9:9, 9:16, 9:21,
  10:5, 10:8
activities 6:19,
  21:4, 29:4
activity 12:7
add 18:4, 76:8, 77:1
addition 13:18,
  15:9, 19:1, 36:15,
  41:15
additional 12:1,
  13:19, 25:23,
  26:15, 28:22,
  29:21, 30:1,
  32:24, 33:23,
  34:3, 35:12, 36:6,
  36:11, 36:21,
  37:5, 37:9, 37:12,
  37:13, 37:17,
  37:19, 38:19,
  38:22, 45:5,
  45:17, 45:20,
  69:17, 83:17
address 20:25,
  24:24, 26:15,
  32:21, 44:19,
  47:22, 49:6, 72:6,
  72:11, 72:12
addressed 75:14,
  84:4
addresses 66:3,
  70:14
addressing 74:23
adjourn 70:5, 70:8
adjourned 81:21,

84:5, 84:17
adjourning 70:3
Adjustment 6:23,
  7:3, 7:15, 7:19,
  8:5, 19:21, 19:22
Administered 1:11
administration
  21:19, 84:13
Administrative 8:14,
  14:1
ADR 8:10, 8:11,
  11:18, 11:22,
  12:6, 13:22, 14:7,
  14:11, 17:5,
  17:25, 18:13, 20:9
advance 8:22
advanced 36:14, 39:9
advantage 59:14
advisor 22:13, 59:6
advisors 7:1, 7:2,
  7:22, 8:17, 9:12,
  10:25, 26:9, 29:8
Advisory 2:41, 20:24
Affairs 22:6, 25:18
affected 17:8, 83:15
afforded 33:25
agencies 22:3
Agency 2:40, 20:24,
  58:15
Agenda 6:9, 14:12,
  26:16, 32:3, 32:8,
  46:13, 49:16,
  49:23, 51:13,
  56:25, 62:23,
  66:1, 66:16,
  67:16, 70:12,
  74:5, 82:1, 84:3,
  84:6
ago 8:24, 27:10,
  37:2
agree 12:25, 15:15,
  16:13
agreeable 70:3
agreed 14:18, 15:25,
  16:20, 16:25,
  32:10, 52:3
Agreement 14:20,
  18:7, 23:15,
  23:21, 31:13,
  44:13, 52:1

aid 7:10, 11:4, 11:7
aim 59:22
akin 70:21
al 1:16, 1:37
Alberto 70:13
alert 26:23
allegations 34:15,
   34:18, 47:4
alleged 27:6, 34:1,
   34:17, 36:11,
   45:5, 78:13
allegedly 34:22,
   50:8
allocated 25:14,
   32:9, 52:1
allocation 26:1
allow 14:24, 15:16,
   42:10, 50:7, 53:8,
   69:16
allowed 11:13, 12:25
allows 10:13, 41:5
almost 58:19, 60:1
alone 35:7, 36:4,
   79:10
already 5:17, 17:6,
   33:1, 34:13,
   34:14, 34:24,
   35:2, 45:19,
   47:11, 52:24,
   53:1, 54:25,
   68:15, 76:9
Altair 42:5
alternatives 25:4
although 37:25,
   55:4, 75:18, 76:15
Amended 8:21, 48:3,
   50:12, 50:14,
   50:16, 50:20,
   50:24, 51:6, 51:8,
   51:9
Amendment 30:6,
   30:8, 34:11, 41:8,
   41:12, 42:14,
   42:25, 50:15
amendments 30:11
American 80:24
among 7:21, 7:22,
   10:19, 10:25,
   18:7, 21:5
amount 15:21, 23:23,

37:22, 38:5, 54:6,
   59:19, 60:5,
   68:23, 68:24,
   76:24
amounts 47:7, 52:14
Amy 85:12, 85:13
analysis 43:14,
   77:23, 79:9
analytical 37:25,
   43:20
analyzed 43:12
and/or 40:3
Andrini 2:28, 66:17,
   68:15
anecdote 24:18
Annex 58:21, 59:19,
   60:6
anonymous 27:5
answer 9:23, 30:20
anticipate 8:19
anticipated 7:14,
   10:11, 29:10
anticipates 23:24
anxiety 66:6
apologize 53:15
apparently 64:25
Appeal 35:7, 35:14,
   35:20, 35:25,
   36:3, 36:13,
   40:18, 40:20,
   48:2, 48:11, 48:14
appealed 33:16,
   35:4, 35:9, 40:7,
   47:13
Appeals 35:18,
   47:14, 48:13,
   48:16
appear 28:22, 59:2
APPEARANCES 1:34,
   2:1, 3:2
Appearing 1:38, 2:8,
   2:37, 2:43, 6:7
appears 58:20, 72:11
appended 82:19
apple 45:13
applicable 50:4,
   82:8
application 44:13
applications 29:18
apply 43:16, 79:22,

80:2
applying 43:21
Appointing 27:17,
   28:19
appointment 27:9
Appointments 34:12
appreciated 31:1
appropriate 15:25,
   28:23, 28:25,
   30:7, 31:16, 37:6
appropriately 12:12
approval 10:4,
   22:19, 42:16
approve 34:25, 35:10
approved 11:23,
   52:25, 54:25,
   56:8, 59:24
approving 33:17,
   35:5, 55:19
April 33:19, 37:15,
   40:17, 40:20,
   40:25
Aqueduct 22:16
Aracelia 82:14
Area 2:16
argue 39:16
argued 37:3, 43:11,
   44:6
arguing 34:8
argument 35:17,
   38:1, 38:13, 39:7,
   41:5, 46:16,
   48:19, 72:5,
   80:15, 83:8
arises 41:13, 57:24
arising 58:2
Aristizabal 70:13,
   71:6, 71:11,
   71:13, 71:16,
   71:25, 74:13
Armstrong 43:13
arose 43:6
around 17:4
arounds 17:24
arrangement 24:7
arrangements 38:2
Arribas 2:4
article 26:25, 27:4
articles 28:16
aside 58:4

asks 10:18
aspect 19:10, 20:10,
   46:6, 70:9
aspects 48:14, 49:9
assert 24:4, 35:12,
   37:17, 37:20,
   56:22, 57:17,
   58:1, 61:7, 61:23,
   62:14, 63:5,
   63:13, 63:18,
   66:9, 67:2, 67:14,
   67:24, 71:2,
   71:24, 71:25,
   72:15, 72:16,
   74:15, 74:17,
   76:1, 80:9, 80:10,
   80:12, 81:13, 82:6
asserted 33:20,
   33:23, 34:7,
   35:18, 37:13,
   57:19, 72:2,
   74:18, 76:9, 83:12
asserting 50:5,
   63:24, 82:4, 82:9,
   83:1
assertion 40:11,
   61:15
asserts 47:10,
   66:19, 67:17,
   70:15, 70:20,
   74:25, 75:4
assess 12:21
assessing 7:5
asset 33:9, 36:23
assets 59:1, 59:4,
   70:23, 71:1, 73:1,
   75:5, 75:16, 80:8,
   81:4
assignments 29:23
associated 63:10,
   63:14, 63:19,
   71:24, 74:15,
   82:7, 82:23
associations 70:24
assume 52:10
assuming 65:17
attach 76:10
Attachment 77:25
attachments 76:12
attack 79:2

attacks 34:19, 39:25
attendance 32:1
attending 6:3
attention 29:7, 32:9
attest 18:25, 22:21
Attorney 21:17, 72:5
attorneys 6:16,
   29:6, 73:13
attributed 27:1
audible 5:18
August 7:19, 9:9
AUST 2:4
authorities 23:10,
   71:19, 80:6
Authority 1:22,
   2:42, 20:24, 22:1,
   22:4, 22:5, 22:14,
   22:16, 81:1, 82:2,
   82:24
authorize 80:22
available 19:9,
   51:16
avoid 41:22, 42:4,
   51:7, 83:20
avoidance 9:8, 43:19
await 73:20, 73:23
awarded 78:20
aware 55:24
awkwardly 43:19

< B >
back 5:9, 12:4,
   31:7, 40:17
background 12:7
backup 64:25
Bank 15:12, 37:16,
   41:1, 41:21,
   42:13, 42:16,
   42:17, 43:18,
   46:19, 47:18,
   48:22, 49:12,
   52:18, 63:11,
   77:17, 77:18,
   77:22
Bankruptcy 1:1,
   2:26, 41:24,
   42:13, 42:18,
   43:4, 43:6, 45:12,
   53:25, 66:17,

66:24, 67:1, 67:6,
   67:9, 67:22,
   69:23, 80:21
BARAK 1:42, 16:5,
   16:6, 16:11, 16:13
Barranquitas 2:17
based 37:23, 40:11,
   41:1, 48:22, 50:6,
   56:17, 58:22,
   62:15, 65:19,
   68:8, 72:1, 73:22,
   74:17, 75:1, 81:7,
   81:13
bases 74:25, 75:13
basic 28:11
basically 15:4,
   19:19
basis 34:21, 50:4,
   57:16, 61:4,
   71:17, 82:4, 82:9,
   83:1
bear 46:1
bearing 63:8, 82:21
become 44:10
becoming 22:23
began 29:20
begin 6:11, 12:10,
   13:17, 56:25
beginning 32:4
begun 13:12, 22:11
behalf 20:23, 32:20,
   50:1, 63:12, 78:25
believe 7:17, 8:24,
   10:8, 10:23,
   17:23, 24:11,
   25:22, 30:6,
   31:10, 35:21,
   37:2, 38:3, 52:3,
   53:20, 53:23,
   55:6, 76:2
believes 23:3, 36:16
Ben 25:20
beneficial 7:7, 79:7
benefit 6:24, 78:9,
   81:4
benefited 34:23
benefits 23:12,
   34:17, 47:9
best 85:5
beyond 31:16, 32:25,

36:7, 37:14, 43:8,
45:18
Bienenstock 1:37,
6:14, 6:15, 6:16,
11:15, 12:13,
13:8, 13:18, 14:5,
19:23, 23:17,
24:12, 31:25
big 12:22
billings 30:9, 30:14
billions 17:18
bit 16:9, 33:11,
33:12, 62:19
bites 45:13
Bond 27:5, 38:6,
45:18, 46:7,
61:18, 62:15,
63:8, 63:9, 63:19,
63:25, 64:15,
64:23, 65:18,
70:21, 73:4,
82:21, 82:22
bondholder 27:5,
33:8, 37:23
bondholders 10:14,
23:22, 24:1, 44:4,
44:15, 47:7, 63:12
Bonistas 47:6
Boston 84:11
bound 17:1, 27:15
Brady 2:22
branch 25:10
breaches 28:22
brief 39:7
briefing 14:13,
46:20, 47:2
briefly 26:15, 54:20
briefs 35:21
bring 6:2, 29:6,
38:24, 38:25,
78:13, 81:7
brings 21:16
broad 23:25
broader 46:22
broadly 23:5
brokerage 82:20
brought 9:2, 56:1
Budget 25:18
Buenos 5:5
Buitrago 2:46, 2:48

burden 66:20, 67:18,
70:16, 72:18
business 25:9, 70:24
Buyer 27:5


< C >
C. 2:11, 2:22
call 31:11, 62:14
cancellation 53:2,
60:5
candid 11:1
candidly 27:23
Caparros 2:49, 74:6
Capitol 7:9
care 25:16
carefully 46:24,
46:25, 51:5, 56:4,
62:4, 71:16,
73:23, 74:9,
74:10, 80:19, 83:7
Carlos 59:6
Carmen 2:47
Carrion 24:18
carry 8:1
Carson 25:20
case-by-case 79:9
cases 18:19, 19:17,
19:22, 28:7,
42:21, 77:1, 77:2,
77:4, 77:5, 77:10,
84:13, 84:16
cash 55:15
casts 34:21
CAT 3:46
categories 35:17
caused 66:5, 78:13
Central 43:11,
43:13, 43:15,
43:20, 43:21,
43:22, 43:23
cents 38:1, 59:25
CEO 59:9
certain 34:20,
34:22, 47:5, 80:10
Certainly 11:14,
16:24, 17:4,
52:11, 55:24, 80:2
Certified 7:5, 19:14
certify 85:4

CFO 21:24
Chair 22:17, 24:17
chairman 6:20
challenged 57:13
challenges 48:6
chambers 65:2
change 12:17
changes 7:6, 21:3
changing 40:9
Chapter 2:29, 42:21,
42:22, 43:3,
68:13, 69:23
Charles 2:50, 73:13
chosen 28:18
Circuit 7:13, 33:16,
35:4, 35:13,
35:18, 35:24,
38:25, 40:7,
40:22, 45:7,
45:23, 47:15, 48:2
circumstances 69:5,
78:19
cite 80:21
cited 42:16, 71:20,
77:2, 77:3, 77:10,
80:6, 80:24
cites 43:2
citizen 53:17
City 42:23, 42:24,
43:2
claimant 50:12,
52:23, 53:1,
57:12, 57:16,
57:19, 57:24,
57:25, 61:5,
63:13, 63:15,
63:18, 66:23,
67:21, 69:4,
70:19, 72:21,
75:1, 82:16, 82:22
claimants 12:18,
54:23, 55:5, 61:3,
61:9, 73:10,
74:14, 74:16,
75:2, 75:7, 75:20,
75:21, 75:25, 80:4
claimed 39:12, 65:3
clarify 74:1, 79:20
clarity 61:12
class 44:1, 44:5

Clause 34:9, 34:10,
  34:11, 34:12,
  43:1, 45:1
clear 15:13, 15:22,
  17:1, 19:4, 27:11,
  33:7, 36:10,
  64:17, 65:12
clearer 62:20
clearly 28:18
Clerk 64:25, 65:1,
  82:18, 82:19,
  83:19, 83:22
client 78:1
clients 17:18, 29:7,
  29:8, 79:21
close 22:2
closed 48:15
closing 44:13
co-owner 70:21,
  71:18
co-owners 72:17,
  75:5, 75:16, 79:6
co-owns 70:23, 72:23
co-trustees 58:25
coalesce 10:23
Code 43:4, 43:6,
  80:21
codebtors 75:9,
  75:11
cognizant 19:16
Coincidentally 59:6
collaboration 84:15
colleague 84:14
colleagues 12:13
Comerio 2:17
comfort 31:13
comfortable 51:20,
  57:4
coming 9:14, 14:3,
  18:13, 54:17, 58:9
command 42:1
commands 41:17
commence 11:12
commenced 22:17
commencing 23:24
comment 14:7, 16:15
comments 8:12,
  20:19, 24:12
Commissioner 25:8
committed 21:10,

24:10, 60:6, 60:19
Committee 2:6, 2:35,
  8:23, 9:3, 9:4,
  9:6, 9:12, 9:18,
  10:2, 10:6, 15:10,
  17:18, 57:14,
  57:22
common 8:3, 27:24
communicate 5:13
communicating 5:24
communication 25:12
communications
  10:25, 14:1
Community 77:16
Companies 23:19,
  78:5, 78:17, 79:8
Company 29:17, 48:9,
  50:9, 50:19, 78:4,
  78:8, 81:3
Compel 39:8, 39:18,
  49:16, 49:21
Compensation 41:3,
  41:8, 41:13, 42:15
competent 19:2
Complaint 9:3
complete 83:21
completely 11:1
complex 22:24
compliance 29:10
comply 50:3, 82:8
components 74:11
comprehensive 26:13,
  31:5, 44:21
Conagra 80:24
concern 28:13, 61:1,
  61:8, 68:20
concerned 28:17,
  60:3
concerning 7:2,
  14:20, 31:2, 43:23
concerns 54:21,
  54:22, 55:4,
  55:25, 66:7, 80:25
concession 39:7
concluded. 84:18
concludes 47:16,
  84:3
concrete 31:7
conducting 84:12
conference 5:11

confers 48:12
confidential 27:12,
  27:23, 28:1, 29:3
confidentiality
  27:16, 28:20,
  28:22, 29:11
confined 6:9
confirm 34:25, 35:9,
  51:14, 71:20
Confirmation 17:14,
  33:16, 35:25,
  36:9, 37:7, 38:19,
  38:21, 38:23,
  38:24, 39:25,
  44:16, 45:6,
  45:10, 45:11,
  45:13, 47:24,
  48:3, 48:7
confirmatory 81:20
confirmed 33:5, 40:3
confirming 33:18,
  35:6, 65:17
confiscation 6:1
confusion 83:21
Congress 26:2, 42:1
congressional 25:10
connection 31:14,
  55:23, 74:12, 84:9
consensual 16:20,
  17:4, 27:25
consensually 9:21
consented 14:22
consider 20:9, 36:2,
  36:14, 36:19,
  38:16, 48:5
considerable 59:19
consideration 18:1,
  55:11
considered 46:23,
  47:12, 51:4,
  55:16, 56:4, 62:4,
  71:18, 77:20
considering 39:17
consistent 5:10
consisting 85:4
constitute 30:14
constituted 60:14
Constitution 42:12,
  43:16, 52:21,
  52:22, 53:21,

53:22, 53:24
Constitutional 33:23, 34:1, 34:7, 34:9, 37:17, 40:24, 40:25, 41:2, 41:15, 41:23, 42:4, 44:2, 47:10, 47:13, 47:25
constitutionality 60:10
Constitutions 46:22
constraints 39:6
constructive 23:6
construe 41:22, 42:3
construed 41:24, 42:10
consultation 24:10
Consumer 22:5, 48:9
consummated 52:17
contact 20:11
contained 34:20, 59:16, 60:12
contains 26:25, 63:1
contemplated 12:2
contemplates 12:19
contended 33:22
contending 34:19
content 31:1, 59:13
context 17:20, 18:5, 31:12, 43:3, 55:18
continue 8:16, 24:4, 25:21, 26:9, 62:22
Continued 2:1, 3:2, 29:20
continues 7:4, 7:9, 11:4, 23:25, 28:6, 79:1
Continuing 7:13, 19:12, 30:5
Contracts 34:10
contrived 44:12
control 48:14
controversies 55:23
Convention 22:4
conversation 25:24
conversations 8:13
convey 20:13
conviction 60:9
cooperation 24:13,

24:21
cooperatively 24:8, 30:3
coordinated 9:19
coordination 22:2
cordial 11:1
Corozal 2:18
Corp. 77:17
Corporacion 2:14
corporate 79:2
Corporation 59:8, 78:21
corporations 80:9
Correct 30:10, 30:13, 38:11, 43:14, 52:7, 55:9, 55:21, 56:2, 62:1, 69:4, 70:22, 72:22
correctly 61:25
cost 23:7
counsel 5:6, 46:16, 73:17, 80:6, 80:15
counting 54:10
countless 22:22
country 59:11
couple 37:2, 39:10, 46:2, 68:18
course 11:20, 28:7, 33:13, 38:14, 43:7, 65:24, 72:13, 75:14, 84:2
courtroom 5:13, 5:24, 6:2, 11:13, 12:14
Courts 8:14, 42:22
covered 6:21
covers 15:12
create 18:6
credibility 25:12
creditor 22:18, 37:19, 38:21, 75:10
Creditors 2:7, 2:36, 8:23, 10:2, 15:11, 17:8, 17:14, 17:15, 17:18, 42:7, 53:19, 53:25, 54:3, 54:12, 75:11, 75:12

credits 54:6, 55:14
Crucial 26:25
CSR 85:13
cue 31:15
current 21:4, 27:7
currently 22:15, 47:14, 48:1, 49:4
curtailed 7:12
CUSIP 63:8, 63:9, 64:24, 65:3, 65:19, 82:21, 82:22
cut 41:7


< D >
D. 2:45
date 10:6, 10:12, 10:15, 28:5, 41:7, 84:7
David 59:5
Day 26:24
days 6:25, 15:21
de 2:14, 2:16
deadline 9:23
deadlines 9:15, 10:7
deal 10:13, 22:17, 31:13, 61:3
dealing 18:19, 23:4, 42:22, 43:5
dealt 14:12, 19:18, 19:25, 67:23
debt 21:22, 52:20, 53:20
debtor 50:7, 67:3, 67:25, 68:21, 69:3, 69:19, 75:10, 83:11, 83:12
Debtors 1:24, 6:17, 8:10, 16:8, 74:18, 75:10, 82:8, 82:25
debts 23:1, 66:5
December 44:14
decide 40:2, 53:22, 77:11, 77:13, 77:20
decided 34:25, 41:11, 59:4, 59:10, 69:7, 77:15

deciding 21:20,
   35:13
decision 35:9, 42:5,
   42:17, 48:10,
   80:23
declare 60:11
declines 47:22, 49:6
dedicated 22:23,
   59:20
deeply 24:10, 28:17,
   66:6
defend 24:4
defending 23:7
defer 10:15
deferred 40:21
deficient 82:3
definitive 35:16
degree 24:12
Dein 84:14
del 2:16
delay 23:6
delivered 6:13
demanding 60:20
demonstrate 66:20,
   67:7, 67:19,
   70:16, 71:7, 72:19
demonstrated 36:20,
   45:17
demonstrates 68:3,
   73:5
denial 6:1
denied 49:17
denying 49:21
Department 22:5,
   25:19, 25:21
dependant 79:9
depth 55:25
derivative 56:21
describe 14:21
described 27:5
descriptions 29:23
designating 28:19
designed 29:12
DESPINS 2:7, 2:36,
   8:25, 14:6, 14:9,
   14:10, 14:17,
   16:13, 16:19,
   16:24
destruction 41:18
detail 8:18, 8:20

detailed 46:13
details 24:22, 27:2,
   27:6, 28:2, 30:18
determination 57:23
determinations 47:14
determine 28:24,
   75:22, 79:12
determined 77:6
determines 79:5
determining 7:6
Detroit 17:25,
   42:23, 42:24
Development 23:18,
   25:20, 52:18
device 5:16, 5:17,
   5:24, 6:1
devices 5:12, 5:15,
   6:2
dialogue 8:16
dias 5:5
difference 38:3,
   38:4, 68:24
differences 8:3
Different 37:25,
   41:1, 41:3, 49:10,
   59:12, 59:13,
   61:13, 78:5,
   78:10, 79:4
differential 49:1
differently 73:18
difficult 22:24
difficulty 18:6
dilutes 79:2
dimension 18:5
direct 56:22, 58:1,
   62:17, 63:5,
   64:21, 66:9, 67:2,
   67:8, 67:14,
   67:24, 72:16,
   76:1, 79:1, 80:23
directing 29:5
directive 21:11
directly 57:17,
   61:7, 62:15, 64:9,
   65:18, 72:2,
   74:19, 81:7
Director 6:20,
   21:24, 22:4,
   22:13, 24:16
Disallow 36:17,

39:13, 39:15,
   39:18, 39:24,
   50:3, 50:20,
   52:14, 53:8,
   56:16, 57:15,
   58:3, 63:15,
   63:20, 63:25,
   65:21, 66:12,
   67:11, 68:6,
   71:10, 73:8,
   80:16, 82:3, 83:3
disallowance 33:21,
   40:21
disallowed 33:20,
   46:18, 50:15,
   51:8, 56:6, 61:10,
   62:18, 67:9, 68:5,
   71:8, 71:17, 73:6,
   74:12, 79:17,
   81:15, 83:13
disallowing 62:6
disaster 23:13,
   25:25
disbursement 25:16
disbursing 23:14
discharge 43:1
dischargeable 41:16
discharged 37:8
discharging 42:25
disclose 47:6
disclosed 44:14,
   44:15
Disclosure 33:17,
   34:19, 34:20,
   34:25, 35:5,
   35:10, 39:25,
   40:3, 40:6, 45:6,
   47:5, 48:4, 48:6
disclosures 30:1,
   47:23
Discount 48:9
discounted 38:2
Discovery 39:19,
   44:9, 44:11, 49:15
discriminates 34:16
discuss 31:12
discussed 16:21,
   17:1, 37:14,
   42:16, 63:2, 72:22
discussing 15:14,

43:3
discussion 55:10
discussions 30:2
disposes 36:4
dispute 32:23,
  41:17, 44:1,
  52:22, 53:4,
  57:24, 66:8,
  71:23, 74:14
disputed 17:9
distinct 40:18
distinguished 58:16
distributed 49:1
distributions 48:25
District 1:3, 1:30,
  1:31, 21:17, 22:4,
  48:13, 78:18,
  79:1, 85:1, 85:2,
  85:7
divests 35:7, 48:13
Docket 1:6, 26:20,
  27:9, 27:18, 46:8,
  47:3, 49:7, 49:20,
  49:22
doctor 58:18
documentation 65:6,
  69:12, 70:4,
  81:20, 83:9, 83:23
documents 5:17
doing 13:24
dollar 38:2, 59:25
dollars 17:19,
  17:20, 37:23
done 10:15, 26:19,
  31:2, 34:4
double 63:17, 63:22,
  67:7, 68:4, 69:4,
  71:8, 73:5
doubt 19:23, 34:21
down 13:15, 32:14,
  32:17, 33:11,
  50:22, 82:11
Due 7:12, 34:11,
  60:7, 82:12, 83:1
Duplicate 46:7, 82:2
duplicated 64:11
duplication 40:11,
  48:22, 51:8
duplicative 37:15,
  38:9, 46:19,

47:17, 47:19,
  63:19, 64:15,
  76:19, 76:23,
  76:25, 79:14,
  79:16
duplicitous 79:18
During 5:24, 28:3,
  28:6, 34:5
dynamic 17:13


< E >
e-mail 82:17, 82:18,
  82:20, 83:18
e-mailing 5:23
earlier 9:23, 29:19,
  42:16, 54:24
earnestly 22:12
easily 19:18
easy 17:16
ECF 10:4, 50:10,
  62:24, 66:2,
  66:17, 70:13,
  74:7, 74:23, 82:15
economic 7:7, 23:17,
  40:11, 40:12
economy 23:11
Edlin 2:46
effected 42:18,
  78:23
efficiently 12:23,
  27:24
effort 9:19, 13:12,
  39:24
efforts 19:8, 27:7,
  28:9, 28:21,
  39:13, 39:18
Ehud 1:42, 16:6
eight 32:14
either 13:24, 50:6,
  52:10, 55:13,
  63:23
elected 24:4
Electric 1:21
electronic 5:12,
  5:15
element 26:4, 47:16
Eli 22:10
eliciting 12:3
eliminate 41:24,

53:19, 54:11
elimination 55:12,
  60:5
emitted 60:10
emphasis 43:25
emphasize 18:19
employed 43:20
enable 12:21
enacted 41:25, 43:4,
  43:6
enactment 42:20
encourage 7:10, 31:9
encouraging 26:13
end 9:8, 23:25,
  25:22, 53:25
Energy 25:21
engineered 23:20
English 18:24,
  19:13, 51:21,
  51:24, 57:5
enhanced 29:24,
  30:16
enjoy 23:25
enlist 19:6
enough 50:7
ensure 29:3, 29:4,
  30:4
enter 49:18, 51:9
entered 18:3, 56:11
entertain 35:7
entire 15:12
entirely 28:1
entirety 33:22,
  38:9, 51:11, 56:11
entitled 33:6, 34:2,
  38:24, 38:25,
  45:12, 45:20, 81:6
entity 61:20, 62:11,
  70:24, 71:21,
  72:25, 75:17, 82:7
entry 26:20, 27:10,
  27:18, 46:8, 47:3,
  49:7, 49:20, 49:22
Equal 34:10
equally 52:4
equivalent 41:9
Ernesto 57:1, 58:19,
  58:24
errors 53:16, 82:17
ERS 14:12, 14:14,

14:17, 14:19,
14:21, 14:25,
15:9, 15:11,
15:23, 16:1,
23:23, 42:5, 63:8,
63:9, 63:12,
63:19, 63:25,
64:10, 64:12,
64:14, 65:18,
83:11, 83:15,
83:19, 83:20
Escudero 2:32,
74:23, 76:7, 81:14
Esq 2:19, 2:29,
2:32, 2:50
essentially 38:18,
39:24
establish 10:3,
11:21, 80:6, 81:5
established 9:24,
24:7, 34:2, 52:20
Estate 2:27, 66:17,
66:25, 67:2, 67:6,
67:9, 67:22, 69:19
estates 74:18
et 1:16, 1:37
evaluate 28:24,
70:6, 77:23, 79:7
evaluates 77:17
evaluating 13:16,
21:20
event 42:10, 48:11,
48:21, 67:3,
75:10, 75:24
eventually 17:11
everyone 46:1
everything 65:1,
65:12
evidence 82:18
evident 44:10
ex 22:11
ex-judges 19:15
examine 78:15, 78:16
examined 78:12
Examiner 2:22,
26:14, 29:13,
30:24
example 17:15,
26:22, 54:6, 77:16
except 81:18, 81:19

excepted 43:1
exchange 28:12,
49:1, 53:2
exchanging 30:3
Executive 6:20,
21:23, 22:3,
22:15, 24:16,
25:10
executives 25:17
exempt 44:6
EXHIBITS 4:9
existed 41:25
existing 29:22,
43:24
exists 57:18, 75:11
expect 9:16, 10:5,
19:5, 19:6, 20:2,
30:18, 31:6, 46:3,
47:8, 65:22
expectation 43:23
Expected 11:18,
26:23
expensive 19:14
experience 21:9
explain 17:7, 34:1,
36:5
explanation 34:22
explicit 42:1
explicitly 27:16
explore 11:20
express 60:22
expressed 9:10,
42:13, 43:5
extended 23:22
extension 26:2
extensions 9:15,
10:7
extensive 55:10
extensively 24:24
extent 10:5, 20:10,
33:20, 48:24,
63:13, 63:18
extinguished 52:16,
53:6, 55:1
extremely 19:2,
19:14
eye 27:13


< F >

F. 78:25
faces 55:18
facilities 23:18
facing 22:24
fact 17:20, 18:19,
36:19, 41:18,
45:3, 52:25,
57:21, 61:10,
63:23, 65:19,
66:8, 72:11, 75:8,
79:8
facts 79:4
fail 50:3, 50:6
failed 47:6, 66:20,
67:18, 70:16,
72:18, 82:4
fails 75:10, 82:8
failure 63:15, 63:20
fair 41:9, 60:11
fairly 43:21
faith 60:18
fall 19:17
familiar 22:23, 27:6
far 19:8, 60:3
fashion 6:10
favor 34:16, 78:20
FBO 58:25
features 5:18
Federal 10:20, 11:3,
21:6, 22:2, 22:18,
25:6, 25:18, 26:1,
26:3
Fee 2:22, 26:14,
29:13, 29:17,
29:25, 30:15,
30:24
feedback 12:5, 13:21
feel 60:19, 66:5
fees 30:21
fellow 73:13
few 10:15, 46:3,
75:15, 76:8
fiduciaries 59:3,
59:18, 60:15
Fifth 30:14, 41:8,
41:12, 42:14,
42:25
figure 12:10
file 12:18, 15:5,
15:17, 15:20,

31:15, 64:21,
70:6, 75:2, 75:3,
75:9, 76:20, 77:7,
77:13, 78:15,
79:18, 80:22
filing 7:14, 10:11,
13:6, 14:24,
15:17, 16:2, 16:4,
16:14, 17:3,
30:23, 48:11,
50:4, 50:19,
50:24, 81:1
filings 30:21,
46:13, 46:24, 51:5
filter 12:10
final 18:8, 74:21
finally 10:18, 11:8,
60:17
Financial 1:9, 2:41,
7:22, 9:12, 9:25,
20:24, 32:20,
58:11, 58:14,
59:5, 59:7
Financing 82:24
find 10:23, 27:24,
76:14, 77:5, 77:8,
81:12
fine 14:8, 51:22,
51:23, 58:13
finish 8:25
finished 30:2
Firestein 1:41
First 7:13, 11:24,
21:7, 30:25,
33:16, 34:11,
35:4, 35:13,
35:18, 35:24,
38:25, 39:9, 40:7,
40:16, 40:21,
45:7, 45:23,
47:15, 48:2,
51:25, 53:15,
56:25, 68:19,
76:9, 77:8, 77:16
Fiscal 2:40, 7:6,
20:23, 41:19,
58:15
Fiscals 7:6
fits 43:19
five 27:1, 44:1,

44:5, 58:19, 72:4
fluent 19:7
focus 27:7, 39:7
focused 23:10
follow 31:2, 53:20
following 9:5, 73:14
follows 49:8
FOMB 14:14
Foods 80:24
footnote 42:8
foresaw 17:25
forget 11:9
forgotten 28:17
form 72:5
formal 10:9, 55:13
former 19:18
formulating 30:17,
55:17
Fortaleza 22:13
forth 12:4
forward 16:1, 16:3,
21:11, 26:5,
26:10, 56:1
found 5:23, 42:6
foundation 27:25
framework 23:6,
43:20
frankly 19:7
Frau 2:32, 74:23,
76:6
free 20:15
frequency 29:24
frequently 22:20
front 12:8
fronts 26:7
frustration 66:6
full 41:13, 60:9
fully 53:24
function 23:17
functions 29:23
Fundamental 78:11
funding 25:16, 26:2
future 6:1, 83:21


< G >
gamut 6:22
gap 19:11
Garcia 59:6
Gating 26:24

gave 54:4
GDB 52:23, 53:5,
56:7
General 6:19, 6:23,
8:23, 10:19,
12:20, 21:4,
57:11, 59:13,
60:2, 60:11, 61:14
generally 11:5
gets 16:23, 44:9
getting 12:22,
13:20, 17:11,
17:21, 24:22
Gilmore 2:50, 73:12,
73:13
give 27:22, 36:21,
38:19, 38:22,
40:1, 61:6, 63:5
Given 7:15, 9:4,
9:14, 12:8, 15:24,
35:12, 49:14,
54:5, 79:15
gives 53:22, 54:9,
78:7
giving 13:2, 13:21
glad 31:6
Global 58:21, 59:19
Gloria 3:5, 57:1,
58:17, 58:25
goal 8:21, 16:24,
17:3
goals 8:3
Gonzalez 25:8
Gordon 78:11
Gos 60:10
gotten 16:16
Government 11:3,
21:3, 21:5, 21:6,
21:7, 21:8, 21:10,
21:16, 21:24,
22:12, 22:18,
23:2, 23:3, 23:10,
23:11, 24:4,
24:13, 25:7,
25:13, 26:4,
52:18, 59:12,
59:21
Governments 10:20,
25:5
Governor 6:21, 7:20,

7:21, 8:1, 8:2,
8:6, 10:22, 21:14,
21:15, 21:16,
22:10, 23:2, 23:9,
24:15, 24:19,
25:7, 25:11,
25:15, 25:17,
25:21
gracious 6:3
grant 15:4, 40:8,
48:17, 50:18,
64:1, 66:11,
67:10, 68:5, 71:9,
73:7, 80:15, 83:3
granted 16:3, 65:21
granting 9:24
grateful 20:12,
65:16, 83:22
greater 41:14
Griggs 48:9
gross 37:22
ground 27:24
grounds 41:1
Group 15:11, 17:8,
18:7, 28:14, 74:11
guarantee 25:13,
53:5
guarantees 53:21
guaranty 55:1
guardedly 7:24
guidance 8:12
guided 23:9
guidelines 52:20,
53:21, 53:24


< H >
half 18:2, 52:6
handled 10:12
handling 11:21
happens 16:22
happy 13:4, 13:19,
30:20, 52:4, 65:9,
70:5, 74:3, 83:24
hard 8:6, 22:22,
24:21, 59:20, 60:6
harm 78:14
he'll 14:7
head 45:12
health 25:4, 25:16

hear 15:6, 31:6,
39:4, 57:8, 84:5
heard 6:8, 8:21,
15:6, 18:12,
34:13, 34:24,
46:3, 49:17, 51:2,
55:23, 73:16,
73:19
HEARING 1:29, 5:20,
8:13, 8:22, 20:1,
30:19, 33:19,
37:15, 44:17,
46:16, 46:18,
84:7, 84:12
hearings 84:15
held 33:3, 33:9,
36:23, 42:18,
61:19, 62:7, 64:9,
64:13, 64:22,
65:18, 71:19,
78:21, 81:4
help 7:11, 13:20,
20:5, 26:3, 29:2,
40:14, 64:5
helpful 13:7, 14:2,
31:6
helping 38:12
Helvia 2:49, 74:6
Herriman 65:8
hesitate 28:23
high 24:12
highlight 23:16,
45:3
highlighted 23:16
Highway 82:22
Highways 82:2
Hill 7:9
history 24:8
hits 29:5
hold 17:15, 17:18,
17:19, 21:15,
64:14
holder 33:6
holders 59:24, 69:8
holding 67:13, 69:14
holdings 64:7
holds 36:16, 64:16,
78:8, 84:15
holdup 12:24
home 29:5

Honorable 1:30,
58:11, 60:8,
60:22, 85:6
hope 15:17, 17:24,
29:1, 52:11, 62:19
hopeful 26:9
Hopefully 26:2
Horne 43:14
host 34:8
hours 16:17, 22:22
House 25:3, 25:17
Housing 25:20
HTA 82:5, 82:10,
82:13, 82:24,
83:1, 83:12
Huertas 2:47, 2:48
huge 17:10, 17:22
hundred 38:1
husband 59:10, 61:16


< I >
idea 12:9, 18:23
identical 72:5,
73:15
identified 66:21,
67:4, 67:20, 68:1,
70:17, 71:5,
72:20, 74:5
identify 50:7, 50:8,
75:6, 75:18,
76:16, 76:21,
79:15
ignore 28:18
II 32:3
III 1:8, 6:10, 6:17,
16:7, 23:5, 23:15,
24:24, 32:4, 41:7,
49:5, 83:11
III.2 49:23
III.6 49:16
illegitimate 60:12
Immunities 34:10
impact 55:5, 61:2,
61:8
impacts 20:3
impasse 31:11
impediment 17:11,
17:22
implement 10:14

implementary 23:13
implementation 7:5,
  49:2
importance 55:24
important 21:20,
  26:4, 28:11
importantly 10:25,
  23:5
impossible 75:22
impression 77:9
improperly 34:16,
  47:8
in-person 24:20
in. 76:12, 78:2
inability 66:5
Inc. 29:17
include 25:24, 30:1
included 24:17
includes 27:2
including 5:18,
  5:21, 5:25, 29:25,
  34:9, 41:2, 47:4,
  47:25, 58:24,
  59:12, 82:18
incorporated 27:17
increase 9:19
incredible 20:7
incurred 52:20,
  53:20
independent 32:25,
  34:3, 35:12, 36:6,
  36:11, 36:15,
  36:21, 37:13,
  37:14, 38:20,
  38:22, 45:5, 45:17
independently 65:2
indicates 32:8
indicating 26:16
indisputably 80:19
individual 9:15,
  10:7, 44:15, 47:7,
  79:6, 79:13
individually 78:20
individuals 60:17,
  60:18
induced 44:4
Industrial 23:18,
  41:21, 42:13,
  42:16, 43:18
informal 9:7, 9:10,

9:20, 9:22, 12:8,
  14:1, 55:14
information 5:14,
  9:13, 9:14, 12:1,
  12:15, 13:3, 13:5,
  13:13, 13:19,
  13:20, 13:21,
  20:11, 26:17,
  27:1, 28:12,
  28:14, 30:3,
  34:20, 50:7, 63:1,
  69:17, 83:18
Informative 13:6,
  13:25, 29:18,
  65:10, 69:13, 70:6
Infrastructure
  22:12, 82:24
initial 11:24
initiated 27:20
injury 81:9, 81:10
inquiry 11:25, 80:10
Instead 34:4, 72:1,
  74:18
instrument 38:6
instrumental 22:8
instrumentalities
  59:12, 59:21
instruments 47:20
insure 59:1
intangibles 43:17
Integrales 2:15
integrity 40:5
intend 8:15
interest 5:6, 9:10,
  11:12, 12:3,
  43:10, 60:1,
  61:22, 64:12,
  69:14, 78:23,
  79:13
interests 23:7,
  41:7, 42:7
interfere 43:22
Intergovernmental
  25:18
interim 30:14, 30:15
interject 39:21
interpreter 51:21
interpreters 6:7
intersect 21:21
intimately 22:23

invalid 42:7
invest 59:4, 59:10
invested 56:19,
  57:12, 57:20,
  59:11, 59:21,
  59:25, 60:17,
  63:4, 63:8, 66:23,
  66:25, 67:6,
  67:21, 68:3,
  70:19, 71:6,
  72:21, 73:3, 73:4,
  75:7, 75:20,
  75:22, 76:12, 78:2
Investment 58:22,
  61:6, 61:11, 62:8,
  63:1, 63:3, 63:24,
  64:16, 65:21,
  68:19, 68:24,
  78:3, 78:5, 78:7,
  78:8, 78:17, 79:8,
  81:3
investments 54:13,
  56:18, 57:25,
  58:2, 62:15,
  63:14, 64:17,
  64:19, 66:10,
  71:22, 71:24,
  72:1, 72:24,
  74:15, 74:17,
  76:1, 76:17,
  80:13, 80:19
investor 61:5, 67:1,
  67:24, 70:20,
  70:22, 70:25,
  72:23, 72:25,
  77:6, 77:12,
  77:18, 78:12,
  79:13
Investors 34:17,
  34:23, 45:3,
  56:20, 72:16,
  73:3, 75:4, 75:12,
  75:15, 75:24,
  78:12, 79:6, 80:6,
  80:11, 81:14
invite 51:25, 65:7
invoking 39:14
involve 20:5, 55:15
involved 19:10,
  22:1, 29:8, 43:13,

48:14
involving 6:6
Irizarry 82:14,
    83:5, 83:10, 83:18
island 21:21, 22:20,
    25:25
issue 8:25, 14:13,
    17:6, 17:25,
    18:13, 28:20,
    30:25, 40:10,
    40:20, 42:4, 42:9,
    42:23, 48:19,
    50:8, 75:12, 77:8,
    77:15, 77:24,
    78:15, 78:16, 79:4
issued 5:11, 56:19,
    57:12, 63:4, 63:8,
    64:18, 82:7,
    82:12, 82:23, 83:2
Issues 6:9, 9:2,
    13:18, 14:12,
    21:20, 22:24,
    24:25, 25:24,
    26:24, 27:22,
    30:23, 31:3,
    31:13, 35:11,
    35:19, 35:24,
    36:3, 40:18, 45:1,
    45:2, 45:6, 45:9,
    45:10, 47:2, 61:9,
    61:13, 77:13
Item 14:11, 32:3,
    32:4, 49:16,
    49:23, 51:13, 74:5
Items 6:10, 73:16
itself 62:14, 63:4,
    67:2


< J >
J. 1:37, 2:32, 2:42
jammed 7:19
Jaresko 24:16, 24:19
Jay 65:8
Jesus 62:24, 66:2
John 2:19, 2:42,
    20:22
join 83:23
Joint 42:17
Jointly 1:11

Jorge 2:31, 74:22,
    76:6
Jose 2:48, 24:18
Juan 2:32, 5:1, 5:7,
    6:7, 11:10, 12:14,
    18:14, 29:20,
    74:23, 76:6, 84:8
Judge 1:30, 1:31,
    6:15, 84:14, 85:7
judges 19:6, 19:7,
    19:9, 19:18
judicial 5:10, 39:15
July 19:5, 27:21
jump 61:23
juncture 16:1
June 41:11
jurisdiction 35:7,
    36:13, 36:18,
    38:16, 39:10,
    39:11, 39:15,
    39:16, 40:8,
    40:13, 48:5,
    48:12, 48:19,
    48:20, 80:25
jurisdictional 48:12
Justice 21:18, 60:20


< K >
Katherine 2:23
Keep 84:17
key 27:21
Kick 26:24
kind 13:19
Knick 41:12
knows 7:25, 65:8


< L >
L. 3:5, 57:1, 58:17,
    58:25, 73:16
Labor 26:24
lack 39:16, 56:22,
    62:14, 74:16,
    79:18
lacks 36:13, 48:5,
    57:25, 63:15,
    66:9, 67:2, 67:24,
    71:25, 78:12
Land 42:17

language 18:24
largely 12:24, 34:19
last 16:16, 19:5,
    29:18, 39:9,
    41:11, 75:14,
    79:20, 81:25
later 18:2, 19:25,
    69:13
Laura 1:30, 1:39,
    32:19, 49:25, 85:7
Law 6:23, 10:24,
    19:16, 41:24,
    41:25, 80:5
lawful 41:19, 42:3
lawsuits 18:20,
    18:21
lawyer 53:16
lawyers 18:23, 58:16
lay 27:24
lead 21:9
leaders 21:9, 25:9,
    25:10
leadership 21:3,
    21:8
leading 21:19, 21:23
leak 28:24
learn 28:2
lease 23:19
least 12:19, 27:1,
    37:3, 54:9, 69:18
leave 11:13, 32:1,
    32:6
Lecaroz 2:4
legal 7:22, 22:13,
    37:5, 37:9, 37:25,
    38:3, 38:4, 45:20,
    49:10, 61:20,
    62:11, 71:17,
    71:19, 71:21,
    75:17, 80:7, 80:11
legality 47:24, 60:9
legally 60:14
legislative 25:9
less 68:24
letter 44:13
letters 11:25,
    13:12, 13:15
levels 11:2, 11:22
liabilities 63:14,
    63:18, 71:24,

74:15, 82:6
liability 55:2
liable 52:15, 53:7,
    56:17
Librada 62:24,
    62:25, 63:3, 63:5,
    63:7, 63:16,
    63:21, 63:23,
    64:2, 64:3, 64:20,
    66:2, 66:5, 66:7,
    66:9, 66:13, 81:19
lien 41:6, 43:14,
    43:19, 43:24
liens 41:19, 42:3
lifting 17:2
light 28:16, 39:6,
    48:16, 50:15,
    61:10, 63:23
likely 7:17, 9:23,
    10:8, 10:21
limited 5:21, 6:1,
    8:20, 12:15, 12:16
lines 23:13, 25:12
liquidate 69:7, 69:9
liquidated 68:23,
    69:6
liquidation 68:23,
    69:1
list 53:19
listed 26:15, 68:22,
    81:15, 84:6
listened 46:25,
    74:9, 80:18, 83:8
listening 57:5,
    73:23
literally 47:17
litigate 18:25
Litigation 7:11,
    9:22, 10:3, 10:9,
    11:20, 12:6,
    12:10, 19:9, 25:1,
    27:13, 28:3,
    28:10, 49:5, 49:14
little 13:15, 33:11,
    33:12, 50:22,
    54:9, 62:19
LLP 6:16
loaded 5:17
loans 11:7
local 19:1, 19:18,

20:5, 25:9
locals 19:16
locate 68:21
long 8:24, 27:10
longer 55:2
look 16:3, 77:14
looked 64:25, 65:5,
    65:9
looking 25:3, 81:20
Lopez 3:5, 57:2,
    57:3, 57:4, 57:6,
    58:6, 58:7, 58:10,
    58:14, 58:17,
    58:25, 60:24,
    61:16, 62:6
losing 54:1
loss 77:19, 77:22
losses 77:18, 77:20,
    77:21
lost 54:7
lot 13:13, 17:5,
    17:9, 18:20, 19:15
louder 7:24
Louisville 42:17
Luc 2:7, 2:36


< M >
M. 2:47, 59:6
magistrate 19:6,
    19:7, 19:9
magistrates 19:1,
    19:13
main 15:21, 23:17
mainland 44:7
maintain 25:4
major 6:22, 8:7
Management 1:10,
    9:25, 10:3, 32:21,
    58:11, 58:14, 59:7
managing 84:16
mandatory 28:1
Manuel 3:4, 51:18
manufacturing 23:19
mapping 29:20,
    29:21, 29:23
Marrero 21:23,
    21:25, 22:3,
    22:22, 24:7
married 58:19

Martin 1:37, 6:15
Master 37:15, 37:24,
    46:19, 47:18,
    47:19, 48:23,
    49:12, 63:10,
    63:20, 64:10,
    64:11, 64:15,
    64:24, 65:3
match 65:3, 65:6
matched 83:19
material 78:24
matter 14:20, 39:11,
    39:14, 39:16,
    48:19, 48:20,
    65:13
matters 6:6, 6:9,
    7:12, 10:24, 12:6,
    12:9, 15:23, 28:3,
    28:8, 40:6, 47:5,
    47:6, 61:2, 73:21,
    84:4, 84:5, 84:6
maximize 44:6
Mayoral 2:31, 2:32,
    74:22, 76:4, 76:6,
    81:14
Mckinsey 29:17,
    29:19, 30:3, 31:11
mean 11:9, 18:20,
    42:2
meantime 30:20
measure 41:3, 41:14
measures 7:5, 23:14,
    29:11, 29:21
mechanisms 11:21
media 26:16, 26:17
Mediation 14:19,
    19:10, 19:19,
    26:18, 26:23,
    27:3, 27:7, 27:9,
    27:12, 27:17,
    27:20, 27:21,
    28:6, 28:8, 28:9,
    28:10, 28:11,
    28:14, 28:19,
    28:21, 28:22,
    29:3, 29:6, 29:9,
    29:11, 29:12
mediators 19:11,
    27:15, 27:22,
    28:12

Medicaid 7:10, 11:5,
    26:1
medical 58:18
meet 25:9, 29:19
meeting 14:19, 24:24
Meetings 6:21, 7:1,
    7:21, 7:22, 24:17,
    25:21, 25:23, 26:2
Mellon 37:16, 46:20,
    48:23, 49:12,
    63:11
member 59:6
members 5:7, 10:1,
    25:20, 58:12,
    58:15
Memorandum 48:3
mentioned 13:25,
    25:3, 59:17,
    59:19, 60:5, 60:13
merely 49:10
merit 48:18
merits 35:21, 39:8
mess 20:7
met 25:17, 30:5
method 12:6
methods 6:23
Michael 1:41
million 17:19
mindful 54:21, 55:4,
    66:7
minimizes 23:6
minute 17:17, 36:25
minutes 32:8, 32:13,
    32:14, 37:2, 46:2,
    46:4, 52:5, 75:15
misrepresented 47:5,
    47:7
missed 40:14
mission 8:1
misstatement 78:24
Mnuchin 25:19
modification 16:2,
    23:24, 52:17,
    52:24, 53:1, 53:5,
    53:23, 54:5,
    54:25, 55:12,
    55:17, 55:19, 56:7
modified 14:24, 15:1
modify 15:8, 15:16
moment 32:5

moments 10:16
monetary 43:10
money 7:10, 20:1,
    54:8, 60:5, 60:17
Monique 2:32, 76:5
monitoring 7:4
Monongahela 41:10
Monsita 2:4
month 8:5, 19:24,
    24:20
months 22:21
moot 49:17, 49:22
morning 5:6, 6:3,
    6:14, 6:15, 14:9,
    14:10, 16:6,
    18:15, 18:16,
    20:21, 20:22,
    21:1, 29:14,
    29:15, 32:19,
    39:3, 44:24,
    53:13, 53:14,
    58:8, 58:10,
    68:12, 73:11,
    73:12, 76:3, 76:4
move 21:10, 26:10,
    56:14
Moving 15:23, 26:5,
    26:6, 81:25
MUDD 2:19, 18:12,
    18:15, 18:17,
    19:12, 20:14,
    20:17, 20:18
multiple 6:25
municipal 25:5
Myers 20:23
myself 60:23


< N >
name 58:17, 58:20,
    58:24, 69:21,
    73:13
named 22:10
Naranjito 2:18
Natalie 24:16
natural 25:25
nature 64:7, 77:14,
    79:12
Navigation 41:10
necessarily 54:7,

69:3, 76:25
necessary 6:6, 7:7,
    30:7
need 6:7, 6:10,
    11:20, 12:11,
    29:2, 37:19, 52:8,
    52:10, 64:5
needed 44:6, 51:15
needing 13:23
needs 20:5, 61:21
negotiate 10:7,
    10:13, 20:3
negotiations 19:20
negotiators 34:18,
    47:9
Nevertheless 67:4
next 9:16, 13:7,
    31:17, 51:13,
    62:23, 66:1,
    66:16, 67:16,
    70:12, 72:4, 84:7
Nine 42:21, 42:22,
    43:3
No. 1:6
None 4:5, 4:11, 80:5
nonetheless 47:18
nonpayment 60:1
noon 6:5
nor 5:14, 48:18
Noreen 2:29, 67:17,
    68:13, 68:17,
    69:22, 69:24,
    76:18
Normally 18:21
note 13:11, 38:16,
    80:5, 83:14
noted 29:18, 54:23,
    71:4, 73:2, 75:15
notes 5:16
Notice 15:20, 27:8,
    27:14, 35:20,
    48:11
noticed 83:17
notices 69:13
notion 12:19
November 56:8
numbers 47:3, 70:14,
    74:24
numerous 34:12

< O >
O'melveny 20:23
O'neill 2:45
object 16:16, 53:18,
   54:1, 54:11
objected 33:10,
   33:15, 33:21
Objections 11:11,
   11:12, 15:7,
   31:24, 38:20,
   38:23, 47:11,
   47:25, 55:11,
   57:14, 73:15,
   73:21, 82:1, 84:4
objective 53:18
Obligation 57:11,
   59:13, 60:2,
   60:12, 61:14
obligations 29:11
observed 5:22
observing 5:8
obtain 13:13
obviously 16:15
Ocampo 70:13, 71:6
occur 28:23
October 19:25, 20:1,
   30:19, 31:7,
   31:17, 70:9,
   81:22, 84:8
offer 20:15
offer-counteroffer
   13:17
offered 4:5, 4:11,
   20:14, 45:2
offers 12:4, 71:17
Office 8:14, 14:1,
   21:14, 21:15,
   21:18
Official 2:6, 2:34,
   10:2, 85:14
officials 25:10
officio 22:11
OIG 30:23
Okay 13:8, 14:6,
   16:13, 19:12,
   51:23, 52:9,
   57:10, 62:3
Omar 21:23
omission 78:24

Omni 13:7, 31:7,
   31:12, 31:15,
   31:17
Once 19:22, 34:8,
   72:7
one. 19:14, 27:21,
   65:23
ones 53:25, 60:17
ongoing 21:21,
   24:10, 25:2, 26:9,
   27:3, 28:7, 28:9,
   28:21, 29:17,
   84:12
open 11:1, 25:12
opening 32:15
operation 24:10
operative 74:10
opinion 60:7
opportunities 59:14
opportunity 20:25,
   33:25, 36:5,
   45:22, 60:22
oppose 16:14
opposed 37:7, 38:2
opposes 46:12
opposing 39:7
opposite 43:7
opposition 48:8,
   62:9
opt 44:4
optimistic 7:25
oral 14:22, 15:4,
   15:8, 15:15, 16:1,
   46:5
orally 28:13
Order 9:24, 14:23,
   15:16, 18:3, 20:5,
   26:20, 27:8,
   27:14, 27:17,
   28:20, 28:21,
   29:7, 37:20,
   39:25, 40:1,
   45:14, 48:4,
   49:18, 49:20,
   51:10, 56:11,
   59:1, 65:22,
   77:22, 81:19
Ordered 27:21, 46:20
Orders 5:11, 28:19,
   33:17, 35:5

ordinary 77:21
original 18:18,
   28:18, 50:14,
   51:6, 51:7, 51:8,
   62:25, 82:17
Orocovis 2:19
others 40:7, 47:13,
   80:3
otherwise 5:22,
   5:23, 12:8, 12:23,
   20:6, 28:15,
   50:25, 80:7
ourselves 15:22
outlay 55:15
outlets 26:17
outreach 9:19
outside 5:13, 28:14,
   49:3
outstanding 23:1,
   23:21, 46:6
overall 26:3, 55:17
overcome 44:1
overruling 51:10,
   74:25
Oversight 1:9, 6:12,
   6:17, 6:19, 9:4,
   9:6, 9:25, 10:19,
   11:3, 12:19,
   15:10, 16:7, 20:9,
   20:13, 21:6, 22:2,
   24:3, 24:6, 24:9,
   24:11, 24:13,
   24:23, 26:8, 30:4,
   32:20, 46:17,
   50:1, 71:20
overview 21:2
overworked 19:2
owed 17:15, 17:16,
   18:7
own 60:16, 75:17,
   78:23, 78:24
owned 33:2, 37:19,
   45:18, 57:11,
   61:22, 66:13
owner 62:8
owners 78:9, 79:7,
   80:7, 81:6
ownership 73:22,
   79:3
owns 52:23, 70:25,

71:21, 73:1

< P >
P. 2:50
PAGE 4:3, 48:10,
58:20
pages 85:4
paid 17:11, 36:22,
61:17, 81:11
paper 12:4
papers 28:8, 29:4,
37:3
parallel 40:13
part 5:14, 37:3,
46:18, 48:2, 57:21
partially 42:6
participant 29:6
participants 5:9,
26:19, 27:15,
81:5, 81:6
participating 9:10,
47:9
Participation 9:20,
12:3, 15:20
particular 5:16,
28:5, 55:23, 69:15
particulars 31:4
parties 5:6, 5:22,
6:7, 10:7, 14:17,
14:19, 14:21,
15:8, 15:13,
16:15, 18:7,
21:12, 23:22,
27:11, 27:23,
28:12, 28:17,
32:10, 46:25
partners 21:12
Partnership 22:14
Partnerships 22:1
party 7:23, 24:1
past 7:16, 22:7,
22:21, 24:20,
58:18
pathways 38:1
patience 46:5
Patrick 2:45
Paul 1:40
pause 36:25, 51:14,
71:11

pay 66:5
payable 38:5
payback 54:13
Paygo 25:4
payment 32:25,
33:20, 34:3,
35:13, 36:6,
36:12, 36:15,
36:22, 38:20,
38:22, 45:5,
45:18, 47:20,
49:11, 69:1,
76:19, 76:23,
76:25
payments 33:1, 45:19
pendency 40:19
pending 36:3, 47:14,
48:2, 48:16,
48:22, 49:5, 49:14
Penn 43:11, 43:13,
43:15, 43:20,
43:21, 43:22,
43:23
penny 17:17
people 11:10, 11:12,
11:25, 12:21,
13:1, 15:20, 17:8,
19:15, 20:1, 22:7,
23:8, 23:12, 32:6,
44:7, 61:22
per 59:25
percent 54:4
percentage 20:2
perfect 41:9
perfectly 55:22
performed 79:9
Perhaps 10:24, 12:5,
28:17, 40:14,
73:18
period 28:4
periods 30:15
permission 72:6
permit 16:2, 64:20,
70:5
permits 75:2
permitted 5:21,
11:14
person 5:13, 5:21,
27:5
personal 43:17

personally 22:21
personnel 22:6,
73:13, 76:5
persons 76:5
persuaded 48:17
Peter 2:11, 46:11
phase 19:9
phases 11:25
PHV 1:37, 1:39,
1:40, 1:41, 1:42,
2:7, 2:22, 2:23,
2:36, 2:42
picture 24:19
place 12:11, 30:12
placed 35:3
plaintiff 78:22
Plans 7:6, 7:7,
25:25
plate 28:3
pleadings 79:10
Please 5:5, 16:10,
82:11
pleased 9:7, 26:7,
30:24, 44:18
PM 6:6
POC 69:24
podium 18:13, 51:25,
53:11, 58:6
point 20:20, 31:5,
31:10, 31:23,
43:8, 68:18, 69:2,
72:10, 73:20
pointed 36:8
points 39:10, 44:25
policies 5:11
policy 21:20
portion 37:6, 49:18,
82:5
Ports 22:4
position 13:16,
15:22, 35:16,
38:8, 57:6
positions 12:22
positive 10:22
possible 15:18,
23:4, 59:2
Possinger 1:40
potential 81:8
Power 1:22, 21:13,
24:6, 42:13

powerless 39:12
powers 24:5
PR 82:22
practice 56:9
PRASA 22:17
pre-existing 42:22
preceded 40:4
precise 35:3
Precisely 19:4,
   34:5, 38:7, 62:1
preclude 11:9
precludes 39:17
preconfirmation
   47:23
predict 8:4
predicted 7:16
predictions 7:16
preferable 65:10
preference 44:3,
   44:8, 44:12
premise 28:11
premised 46:21
PREPA 6:23, 7:11,
   11:5, 22:17
prepared 10:16
preparing 84:11
prepetition 49:4
presented 42:24
presentment 15:7
President 22:15,
   59:8
press 5:7, 5:22,
   11:4, 28:9, 28:15,
   39:15
prevail 42:12
previous 53:2, 76:18
previously 15:2,
   21:25, 22:16,
   59:17, 60:13
PRIDCO 10:10, 10:12,
   10:15, 10:17,
   23:16, 23:17,
   23:21, 23:22
PRIFA 82:25, 83:2,
   83:10
primarily 7:2
primary 43:23
Prime 64:25, 65:1,
   82:17, 82:19,
   83:18, 83:22

principals 10:25
principles 27:16
prior 10:21, 30:6,
   30:8, 33:15,
   38:18, 38:24,
   42:20, 45:10,
   69:23
priorities 21:4,
   23:2, 27:24
Private 22:1, 22:14,
   23:19, 42:15,
   44:13, 53:16
Privileges 34:10
Pro 2:11, 3:4, 6:6
problem 18:21, 19:3,
   20:14, 20:16
procedural 27:22
procedurally 31:14
procedure 8:19,
   18:1, 19:24
Procedures 6:4,
   10:3, 10:4, 14:24,
   15:2, 15:19,
   16:16, 16:19,
   16:25, 17:3
proceed 6:10, 15:25,
   28:2, 51:23, 52:12
proceeding 5:25,
   46:14, 57:4
Proceedings 3:45,
   5:15, 55:5, 84:18,
   85:6
processes 11:22,
   13:22, 28:10
produced 3:45, 9:13,
   9:14
product 29:24,
   59:20, 60:6
productive 7:23,
   8:13, 16:22
professionals 24:23
program 19:18, 20:12
programs 25:25
progress 12:16,
   17:21, 24:25,
   26:8, 28:9
progressing 9:8
prohibition 42:14
project 29:24, 33:12
PROMESA 21:11,

22:19, 23:5, 24:5,
   30:4, 34:12, 41:5,
   41:17, 41:18,
   42:3, 42:10, 42:12
promised 31:24
promptly 15:5, 15:6,
   30:25
Proofs 50:3, 52:14,
   66:25, 67:5, 67:6,
   68:2, 71:5, 71:7,
   71:23, 73:3,
   74:14, 75:2, 75:6,
   75:9, 75:19,
   76:20, 76:23,
   79:21, 79:23,
   80:2, 80:23
properly 57:18
property 41:9,
   41:18, 41:24,
   42:11, 42:15,
   42:19, 43:10,
   43:17
proponents 55:16
proportional 79:3
proposal 8:10, 8:15,
   12:2, 14:7, 19:8,
   20:10
proposals 31:8,
   55:17
propose 7:18, 8:4
Proposed 8:7, 11:23,
   12:18, 16:19, 27:9
propriety 40:5
Proskauer 6:16,
   32:20
prospect 11:6
prospectus 78:1,
   78:2
prosperity 21:12
protect 8:2, 29:12,
   75:11
protected 42:3
Protection 34:11,
   60:14
protects 43:16, 75:9
protocol 29:22,
   30:16
protocols 30:12
provide 8:17, 8:20,
   13:19, 21:2,

23:18, 28:21,
29:22, 50:7, 65:9,
69:17, 80:25,
82:4, 82:9, 83:1
provided 9:15,
26:17, 27:6, 34:4,
44:11, 47:8,
69:14, 83:18
Provident 48:9
provides 34:17,
41:13, 41:18,
43:14
providing 50:4, 81:4
provision 81:3
provisions 8:8,
34:9, 34:12,
34:22, 55:13,
55:20, 56:7
proxy 78:13, 78:22
Public 5:7, 22:1,
22:14, 27:13
publicly 24:16,
29:25
published 27:4,
28:16
pull 54:8
purchase 53:22
purport 27:2, 50:6
purports 35:12,
56:17, 82:6
purpose 15:21, 17:2,
25:11
pursuant 26:19,
37:8, 48:25,
52:16, 52:25,
53:4, 54:25, 56:6
pursue 61:21
pursuing 36:13
put 30:12, 32:14


< Q >
qualified 18:18
qualifying 23:24,
52:17, 52:24,
52:25, 53:5,
53:23, 54:24,
55:12, 55:16,
55:19, 56:7
question 11:15,

11:17, 16:22,
40:23, 41:23,
44:2, 61:17, 62:7
questions 11:8,
30:20, 31:4, 44:18
quick 39:10
quickly 12:23, 38:15
quietly 32:1, 46:4
quite 11:16, 22:20,
26:7, 31:5
quote 25:3, 48:11,
48:15


< R >
Rafael 59:5
raise 35:2, 35:24,
36:11
raised 13:18, 34:5,
38:18, 40:10,
45:1, 45:10, 47:2,
48:7, 54:22, 61:13
raises 35:8, 35:11,
36:19, 38:21, 66:7
raising 38:17, 45:4,
60:19
ranging 48:5
Rapisardi 2:42,
20:21, 20:22,
20:23, 26:12
rate 48:25
rather 78:20
rationale 44:3,
44:5, 44:7, 44:11
Re 1:6
reach 7:7, 7:9,
83:22
reaching 42:9
read 28:7, 28:8,
43:21, 74:9,
80:18, 83:7
reading 14:18, 29:3
ready 14:2
realism 23:4
realize 47:20
really 16:21, 17:21,
29:1, 39:11
Realty 80:24
reap 23:12
reason 7:17, 11:19,

12:17, 30:6,
31:10, 31:11,
38:10, 54:1, 79:14
reasons 8:7, 67:22,
68:16, 74:12
reasserted 34:15,
34:18
reassure 65:5
rebuttal 32:11,
32:13, 32:15
recall 15:19, 55:10
recalls 33:3
receive 12:20,
45:20, 47:8, 69:4
received 22:18,
33:1, 33:5, 33:8,
36:7, 37:11,
45:19, 53:1,
59:25, 62:16,
65:18
receiving 11:6,
13:14, 63:16,
63:21, 69:6
recent 21:3, 21:8,
23:16, 24:17,
31:1, 47:2
recently 22:17,
23:22, 28:16,
39:12
recognize 78:19
recognized 24:5,
40:25
recognizing 8:19,
37:7
recollection 55:21
recommendations
30:7, 30:8
record 5:14, 65:13,
69:21, 83:21
recorded 3:45
recording 5:20
recover 78:24
recovered 68:25
recoveries 45:2
recovery 23:13,
25:16, 25:25,
41:14, 52:14,
63:17, 63:22,
67:8, 68:4, 71:8,
73:5

reductions 13:1
reestablish 25:12
refer 5:17, 46:8
reference 40:19,
    57:13, 73:14,
    73:17
referenced 42:4,
    82:20
referring 73:16
reflect 46:2
reflecting 82:21
reforms 23:12
reformulate 8:11,
    20:9
reformulated 8:15
reformulation 8:10
reframing 23:11
regarding 8:18,
    23:16, 26:18,
    27:2, 27:8, 28:20,
    47:6, 48:24, 62:9,
    63:1
regardless 64:19
regime 42:22
Region 2:4
register 37:20,
    55:8, 76:14
regulation 43:22
regulatory 43:12
reimburse 54:8
reiterate 61:1,
    61:3, 79:11
reiterated 41:12
reject 48:18
rejected 34:14,
    34:24, 47:12
relate 47:4, 49:2
related 25:24,
    30:21, 45:2,
    47:23, 68:20
relates 14:25, 15:9,
    74:6
relating 51:17
relations 10:19,
    10:21, 21:5, 25:6
relationship 26:3
Relationships 24:3
release 55:13,
    55:20, 56:7
released 24:19,

26:23, 43:24,
    52:16
relevant 46:14,
    49:15, 57:22,
    66:25, 77:21
relief 39:15, 40:1,
    40:9, 48:17, 54:9,
    54:12, 78:19
remain 23:10, 26:9
remainder 37:4,
    50:25, 65:20
remaining 49:9,
    72:15, 75:13
remains 32:23, 36:4,
    36:19
remarks 8:25, 10:21,
    11:16, 19:5, 29:7,
    62:5
remember 55:22
remind 5:10, 18:4
reminder 29:2, 29:5
Rentas 2:29, 68:10,
    68:12, 68:13,
    69:11, 69:22,
    69:23, 70:4, 70:6,
    76:18, 81:21
Reorg 26:22
repeat 35:15
replaces 51:6
Reply 39:9, 67:5,
    68:2, 70:22, 71:4,
    71:5, 71:20,
    72:13, 73:2, 75:8,
    75:19, 77:10
report 6:12, 6:18,
    9:1, 9:5, 9:7,
    10:16, 10:19,
    14:14, 20:20,
    25:2, 26:13,
    26:14, 29:13,
    29:16, 30:5,
    30:20, 30:25,
    31:1, 31:5, 31:15
reported 24:16,
    28:14
Reporter 85:14
reporting 28:5,
    29:25
reports 6:12, 26:16
repository 5:14

represent 17:8
representation
    15:24, 81:8
representative 1:13,
    16:7, 22:11
representatives
    29:19, 31:12
representing 76:6
request 6:18, 10:14,
    11:17, 15:5, 21:2,
    50:18, 53:7,
    54:12, 63:25,
    68:5, 69:16, 71:9,
    72:13, 73:7,
    80:15, 83:3
requesting 14:23,
    74:4
requests 6:2, 58:3,
    66:11, 67:10
require 42:3
required 41:8, 77:21
requirement 29:5
requirements 30:4
Research 26:22
reserve 16:15,
    32:11, 32:12
reset 26:3
Resident 25:8
resolution 9:7,
    9:11, 9:20, 9:22,
    18:8
resolutions 12:16
resolved 9:16, 9:21,
    10:6, 10:8, 11:21,
    12:22, 17:22,
    49:8, 49:20
resolving 8:19, 9:2,
    17:10
resources 20:9
respect 8:10, 11:3,
    24:12, 25:1, 25:6,
    36:7, 37:10,
    37:12, 41:19,
    45:1, 46:6, 46:20,
    55:3, 60:7, 61:16,
    64:1, 64:21,
    65:20, 66:10,
    66:12, 67:22,
    71:3, 72:14, 73:4,
    74:21, 75:13,

80:12, 81:18,
81:19
respectful 11:1
respectfully 35:6,
43:11, 44:10,
50:13, 58:2,
63:25, 64:19,
69:16, 80:14
respective 59:14
respond 54:19, 68:9,
70:2, 76:2, 77:4
responding 40:19
response. 51:3,
64:4, 71:14, 83:6
Responses 13:16,
39:17, 56:24,
72:4, 72:10,
72:15, 81:19
responsive 11:16,
48:21
restrictions 6:4
Restructuring 10:12,
10:17, 21:22,
22:9, 22:25,
23:20, 23:23,
59:23, 60:3
result 55:2, 63:16,
63:21, 77:14
results 13:14
retired 58:18
Retiree 15:10
Retirement 54:10,
58:23, 59:22,
67:17, 67:23,
68:3, 68:4, 68:17,
69:25
retransmission 5:20
retroactive 41:17,
42:11
retroactivity 42:23
return 49:1
revalorization 59:25
revelation 30:23
review 29:17, 70:3
reviewed 30:15,
46:14, 71:15,
77:10
reviewing 9:13
revisions 29:21
revisited 56:9

Rican 19:16
rightful 24:5
Rights 21:18, 23:7,
32:25, 33:24,
34:2, 34:3, 36:12,
36:15, 37:18,
37:24, 38:22,
41:6, 41:18,
41:25, 42:11,
42:19, 44:2,
45:17, 46:22,
47:20, 61:21, 75:9
rise 36:21, 38:19,
38:22
rising 14:6
risk 67:7, 68:3,
71:7, 73:5
rivals 21:13
Rivera 2:28, 66:17,
68:15
robust 29:22
Rodriguez 57:1,
58:20, 58:24,
58:25, 59:1, 59:5,
59:17, 60:4
Rodriguez-diaz 62:6
role 21:16, 22:1
Romualdo 2:27,
66:17, 68:14
Rose 6:16, 32:20
Rosen 40:16, 40:19
RSA 10:11, 23:25
rule 78:22
ruled 15:3, 42:24,
78:16
rules 40:22, 50:4,
78:13, 82:8
ruling 40:25, 44:13,
46:3, 46:6, 55:19,
73:21, 73:23,
79:22, 83:16
rulings 73:19, 80:2
runs 20:11


< S >
S. 2:46, 74:6
S/ 85:12
safe 32:2, 84:17
sale 23:19

Salud 2:16
San 5:1, 5:7, 6:7,
11:10, 12:14,
18:13, 29:20, 84:8
sanctions 5:25,
28:25
Santander 59:4, 59:8
Santos 2:50, 74:6
Sanz 62:24, 62:25,
63:3, 63:5, 63:7,
63:16, 63:21,
63:23, 64:2, 64:3,
64:20, 66:2, 66:5,
66:7, 66:9, 66:13,
81:19
satisfactory 22:25
satisfied 33:7
satisfy 53:24, 54:2
saying 19:23, 54:15
says 30:5, 51:23,
52:9
schedule 8:21
scheduled 25:23,
84:7, 84:8
scheduling 14:12,
14:14
scope 49:3
scripted 14:18
Se 2:11, 3:4, 6:6
search 77:5
searching 77:5
seated 5:5
second 11:24, 14:21,
21:15, 45:13,
77:1, 78:11
Secretary 21:18,
22:5, 25:18, 25:19
Section 22:19, 37:8,
41:20, 75:1, 75:8,
80:21
Secured 15:11
Securities 53:2,
59:5, 59:8, 64:12,
69:10, 71:19,
78:8, 81:6, 81:7
Security 41:21,
42:12, 42:15,
43:18, 64:10,
81:11
seek 41:3, 47:19,

52:14
seeking 56:15,
    57:16, 63:18
seeks 48:17, 49:15,
    50:2, 52:13,
    57:15, 63:13, 82:3
seem 40:12
seems 39:20, 39:23
Seen 15:2, 26:16,
    26:25
selectively 39:14
selling 69:9
send 19:13
sending 13:12
sense 23:3, 54:14
senses 10:21
sent 82:17, 82:19
separate 7:22,
    27:12, 61:18,
    62:10, 70:24,
    71:21, 72:24,
    75:17, 83:11,
    84:15
separately 83:14
separation 28:10
Sequencing 26:24
Series 46:13, 63:9
serious 31:2
served 22:3
serves 22:15
service 21:10, 21:17
services 20:15
Servicios 2:15
serving 21:24
session 24:20
set 28:5, 37:23,
    46:22
settled 12:9
settlement 12:4,
    12:8
settlements 10:4
seven 52:6
several 6:20, 7:12,
    8:13, 11:10,
    26:16, 84:5
Sewer 22:16
shall 41:19, 57:8
shared 8:22, 13:6
shareholder 78:21,
    79:1, 81:2

shareholders 78:7,
    78:20, 80:9,
    80:11, 80:22,
    81:9, 81:13
shares 73:22
sharing 24:6
short 14:15, 57:7
show 69:18, 83:9
sic 58:12
side 10:23, 11:20
sign 65:22, 81:18
signals 5:18
significance 48:12
similar 76:17
simple 75:24
simply 19:17, 38:23,
    43:9, 45:3, 45:5,
    45:9, 45:11, 52:19
Simultaneously 6:25
sir 51:24, 53:13,
    54:17, 73:11
sister 73:16
sit 46:1, 46:4
situation 40:13,
    43:3, 43:7, 55:18
situations 76:17
six 73:14
slightly 78:10
slip 19:17
Slow 33:11, 50:22,
    82:11
so-called 26:17
sold 77:19
solely 14:25
soliciting 12:1
Solicitor 21:17
solved 20:16
someone 13:9, 76:2
somewhat 7:11
soon 12:17, 15:17
Sorry 13:9, 16:5,
    32:3, 45:15,
    50:23, 68:8,
    68:11, 82:12
sort 81:10
sorts 55:25
sought 35:24, 37:23
source 5:13, 27:6,
    28:24
sources 26:17, 27:1

space 27:23
Spanish 18:22, 19:7,
    19:11
Speaker 25:2
Speakers 3:4
speaking 19:11,
    51:20
Special 9:3, 9:6,
    9:12, 9:18, 10:1,
    10:6, 34:17, 47:9,
    57:14, 57:22
specific 20:11,
    27:2, 42:19,
    79:23, 80:13
specifically 27:14,
    46:9, 77:6, 77:12,
    78:2, 81:15
specifics 78:6
specified 73:18
specify 75:21
spectrum 15:12
spelled 41:20
splintering 48:25
split 32:10, 52:4
spur 12:22
STADLER 2:23, 29:14,
    29:15, 30:10,
    30:13, 31:18,
    31:20, 31:21
staff 24:23, 84:10
staffed 12:11
stakeholders 6:24
standing 56:22,
    58:1, 61:6, 62:14,
    63:5, 63:15, 66:9,
    67:2, 67:14,
    67:24, 71:25,
    74:16, 77:7,
    77:13, 78:12,
    78:15, 79:18,
    81:12
started 6:18, 58:23
starting 6:8
state 18:21, 18:25,
    19:19, 20:12,
    69:20, 72:17,
    80:14
stated 16:25, 23:2,
    27:14, 28:18,
    54:24, 70:22,

74:12, 75:8,
79:11, 82:16,
82:22
Statement 33:17,
34:19, 34:20,
34:25, 35:5,
35:10, 40:1, 40:3,
40:6, 43:18, 45:6,
47:5, 48:4, 48:6,
69:3, 82:20
statements 29:25,
76:10
States 1:1, 1:31,
8:14, 46:23,
50:11, 52:19,
57:10, 63:7, 66:4,
78:2, 78:8, 85:7
status 6:11, 6:12,
6:18, 6:19, 8:9,
9:1, 10:10, 10:19,
21:5, 27:3, 29:16,
30:5, 31:15
statute 21:11, 24:7,
42:18, 42:20,
77:21
statutes 41:22
statutory 7:25,
33:23, 34:2, 34:7,
37:18, 45:21,
47:11, 47:25
Stay 7:12, 14:23,
15:3, 15:9, 15:16,
16:2, 17:2, 28:3,
28:6, 31:25
stenography 3:45
step 31:17, 58:4
Stephen 25:19
Stock 42:17
Stockton 43:2, 43:8
straighten 40:15
stricken 37:4,
38:10, 51:7, 55:7
strike 37:6
structural 23:12
structurally 14:2
structure 8:15, 28:6
style 17:25
subject 5:25, 9:22,
15:3, 30:15,
39:11, 39:14,

39:16, 42:14,
48:19, 48:20,
49:4, 49:12,
50:19, 52:23,
64:10, 64:24,
78:3, 78:4, 79:22,
80:3
submissions 46:15,
55:14, 56:4, 62:4,
62:12, 71:15, 83:7
submit 42:2, 44:2,
50:13, 61:9, 69:12
submitted 17:25,
44:14, 55:12
subordinate 33:4,
33:6, 33:8, 33:9,
36:24
subordinated 47:21,
59:24
subsequent 30:15,
50:15
subsequently 23:11,
50:20, 50:23
subsidies 25:5
substance 40:23
substantially 27:25
substantiate 66:20,
67:18, 70:16,
72:18
substantive 27:22,
42:19
subsumed 35:19,
35:23
successes 22:8
sue 78:21
suffered 81:10
sufficiency 47:23
suggestion 40:20
suggestions 55:14
suit 78:13
summary 26:6
superb 84:12
superseded 50:21,
50:24, 51:9
Supervision 58:11,
58:14, 59:7
Supp 78:25
supplement 65:15,
65:17
Supplemental 14:24,

15:5, 15:14, 16:3,
26:1, 28:20,
46:20, 46:24
supplementation
65:22
supplemented 84:6
Support 15:8, 23:20,
24:1, 35:11,
36:11, 36:15,
43:21, 44:5, 45:4,
49:10, 84:13
supported 22:6
supporting 83:9,
83:19
Supreme 41:11,
41:21, 41:23,
43:15, 48:10,
80:23
surmised 7:18
surprise 16:18
surprised 30:22
sustain 36:16,
50:25, 53:8, 62:5,
74:10, 82:18
sustainability 7:8
sustained 49:8,
51:5, 55:7, 56:6,
56:10, 66:14,
67:12, 68:7,
68:15, 68:16,
71:16, 77:18,
81:18, 83:8
sustaining 49:18,
51:10
Swain 1:30, 6:15,
85:7
system 20:5

< T >
Takings 34:9, 41:3,
42:9, 42:25, 43:1,
43:13, 45:1
task 29:24
tasked 14:13
tax 44:6, 47:5,
54:6, 55:14,
59:14, 77:17,
77:21, 77:23
Taylor 1:30, 85:7

Team 8:6, 14:20,
    26:18, 27:9,
    27:12, 27:17,
    28:19, 29:23
teams 29:24
telephonic 5:8
ten 32:17
terms 12:25, 15:14,
    16:20, 19:11,
    20:2, 23:4, 30:9,
    40:13, 40:24
text 14:18, 47:17
texting 5:23
thanked 24:20
themselves 38:21,
    56:20, 61:24
theories 38:3, 46:21
theory 71:18
there'll 17:24
thereafter 33:25
they'll 18:6
third 45:13
Thirteen 56:24
thoroughly 46:15,
    46:24
though 57:17
thousands 18:20,
    44:4
three 59:13, 60:1,
    74:25, 77:25, 82:3
throughout 54:23
tie 19:21
timeline 23:23
timelines 23:23
timely 22:25, 75:3
timing 6:5, 7:14,
    11:19
tit-for-tat 40:13
Title 1:8, 6:17,
    10:11, 10:12,
    10:13, 16:7, 23:5,
    23:15, 23:24,
    24:24, 41:7, 49:5,
    80:7, 80:12, 81:6,
    83:11
titled 26:23
Today 6:5, 14:22,
    28:19, 46:13,
    47:1, 49:17,
    54:18, 56:5,

57:23, 62:5, 65:5,
    76:5, 84:5, 84:6,
    84:12
together 6:24,
    21:12, 24:6, 27:23
took 21:14
topic 26:15
Topics 6:22, 7:3,
    25:24
Torres 3:4, 51:18,
    51:20, 51:22,
    52:4, 52:8, 52:9,
    52:19, 53:9,
    53:10, 53:12,
    53:14, 54:16,
    54:21, 55:6,
    55:25, 82:14,
    83:5, 83:10
total 60:4
totally 40:18
toward 27:25
towards 12:16, 12:22
transaction 79:2
transactions 52:16
Transcript 3:45,
    85:4
transcription 85:5
transform 7:11
transformation 11:5
transition 21:7,
    21:8
translations 19:14
translators 51:15
transparency 25:13
Transportation 82:2
traveled 25:7
travels 32:2, 84:17
Treasury 25:19
treated 37:8, 73:17
treatment 33:5,
    33:7, 36:7, 37:11,
    77:17, 77:23
tried 76:14
trigger 15:22
trip 25:11
true 34:21, 85:5
truly 23:4
truncating 41:6
Trust 29:2, 50:9,
    50:19, 58:24,

59:2, 59:17,
    60:14, 61:15,
    61:22, 62:13,
    62:17, 77:16,
    80:24
Trustee 2:3, 2:29,
    68:13, 69:23,
    69:24
trustees 59:3,
    59:18, 60:15,
    60:19, 62:14
trustors 59:2,
    59:18, 60:15,
    60:19
truth 19:23
try 14:2
trying 10:23, 20:4
turn 7:16, 22:13,
    26:14, 31:23,
    45:11, 56:18
turned 5:15, 5:18
turning 40:23
two 19:15, 22:7,
    22:21, 32:13,
    32:15, 68:19,
    68:21, 75:13,
    76:12, 77:1, 77:2
two-thirds 23:21,
    24:1
type 68:25, 69:6
types 37:20

< U >
UBS 50:9, 50:19,
    51:2
Ultimately 7:23,
    11:22, 55:19,
    62:16
unclear 11:25
underlying 38:5,
    40:11
undermined 28:11
underscores 43:15
understand 8:7,
    10:16, 11:24,
    18:11, 35:16,
    38:12, 51:18,
    54:15, 57:13,
    61:25, 64:6,

64:14, 68:15,
77:11
understandable 12:17
understanding 13:2
understands 17:13
Understood 31:18
undertaking 8:1,
9:18
unenforceable 42:8
unfair 60:8
unfortunately 55:6,
75:25
unique 60:22
United 1:1, 1:31,
8:14, 46:23, 85:6
unless 5:16
unliquidated 17:9,
43:9
unnamed 27:1
unnecessary 79:12
unperfected 42:7
Unsecured 2:7, 2:35,
10:2, 12:20, 43:9
until 13:15, 40:21
untimely 48:19
unwarranted 63:17,
63:21, 67:7, 68:4,
71:8, 73:5
update 14:14
Urban 25:20
using 5:16


< V >
V. 1:40, 48:9, 80:24
vacated 42:6
valid 66:21, 67:19,
69:19, 70:17,
72:19
validity 40:5,
61:14, 62:10
vast 21:9
Vazquez 21:14,
22:10, 23:3,
24:15, 25:7, 25:11
Vendor 9:2, 9:8,
9:16, 9:19, 9:20,
10:5
vendors 9:9, 9:13,
9:15

verify 65:2, 76:21
version 15:1
versus 13:23, 78:11
VI 10:11, 10:12,
10:13, 23:24
vibration 5:18
video 84:9
violate 42:25
violates 34:8
violation 78:22
violations 78:13
vision 23:10
visitors 58:16
voice 60:16, 60:19
void 42:18
voluminous 65:1
voluntary 27:20
vote 44:1


< W >
wait 17:17, 31:16,
32:5
waived 48:20
Walker 85:12, 85:13
wanted 38:15
wanting 12:25, 13:1
Washington 25:7
ways 39:14
week 9:17, 25:7,
25:22, 29:18,
29:19, 39:9
Weekend 26:24
weeks 9:14
welcome 5:6
whatever 11:22,
14:3, 62:16
whereas 19:24
Whether 16:19,
28:13, 28:25,
32:24, 34:1,
35:21, 35:22,
44:3, 51:14,
51:16, 66:24,
75:22, 78:12,
79:7, 80:8, 80:9,
80:11
White 25:17
whole 19:24
wide 48:5

widow 58:18
Williamson 2:22,
31:22
Wiscovitch 2:29,
67:17, 68:10,
68:12, 68:13,
68:17, 69:11,
69:22, 69:25,
70:4, 76:18, 81:21
wish 32:1, 51:2,
54:19, 68:8, 70:2
wished 18:12
wishes 8:24, 45:21,
83:4
within 6:9, 9:16,
15:21, 21:11,
23:6, 24:6, 35:20,
35:23
Without 10:8, 24:22,
28:13, 42:15
withstanding 58:3,
61:8, 80:14
WITNESSES 4:3
woman 21:15
Women 21:17
words 7:24, 36:22
work 7:4, 17:24,
21:12, 22:11,
22:22, 23:16,
24:5, 24:21,
25:15, 26:18,
27:11, 27:23,
27:25, 28:1,
29:24, 31:2,
59:20, 60:6,
84:11, 84:14
worked 8:6, 22:12,
59:8
working 6:24, 8:11,
8:17, 23:8, 24:8,
24:20, 30:3, 30:11
works 20:12
worth 13:1
worthy 59:22
wrap 38:15
wrapped 45:6
writing 28:13
written 51:4, 57:6,
71:15

< Y >
year 18:2, 23:25,
  27:21
years 21:16, 22:7,
  58:19, 58:23,
  59:15, 59:20,
  60:1, 60:6
yesterday 29:20
York 1:38, 2:8,
  2:37, 2:43, 5:8,
  6:13, 6:14, 11:10,
  14:6, 15:12,
  37:16, 41:1,
  46:20, 47:18,
  48:22, 49:12,
  63:11, 84:9, 84:11


< Z >
zero 76:24