**Hearing Date: October 30, 2019, at 9:30AM (Atlantic Standard Time)**
**Response Deadline: October 15, 2019 at 4:00PM (Atlantic Standard Time)**

<div style="border">

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO
TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

</div>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>             Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth, HTA, and ERS.** |

### SIXTY-EIGHTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, AND EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE BOND CLAIMS

The Commonwealth of Puerto Rico (the "Commonwealth"), Puerto Rico Highways and

Transportation Authority ("HTA"), and Employees Retirement System of the Government of the

Commonwealth of Puerto Rico ("ERS"), by and through the Financial Oversight and Management

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth, HTA, and ERS, pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this sixty-eighth objection (the "Sixty-Eighth Omnibus Objection") to the duplicate proofs of claim listed on **Exhibit A** hereto, each of which is duplicative of one or more master proofs of claim asserted against the Commonwealth, HTA, or ERS, on behalf of the holders of certain bonds, and in support of the Sixty-Eighth Omnibus Objection respectfully represent as follows:

### JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

### BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case"). On May 21, 2017 (the "HTA Petition Date"), the Oversight Board issued restructuring certifications pursuant to PROMESA sections 104(j) and 206 and filed voluntary petitions for relief for HTA and ERS pursuant to PROMESA section 304(a), commencing cases under Title III thereof (respectively the "HTA Title III Case" and the "ERS Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases"). On

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.

4.     On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.     Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

5.     Pursuant to the Initial Bar Date Order, the indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents. Initial Bar Date Order, ¶ 5(a).

6.     The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution") became effective in 1952. The P.R. Constitution created the Commonwealth as the central

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

government of Puerto Rico, "republican in form" and divided into three branches: legislative, judicial and executive.  *See* P.R. Const., Art. I, §§ 1, 2.  The P.R. Constitution authorizes the Commonwealth to issue debt, subject to various limitations, including on the ability of the Commonwealth to pledge its revenues.  *See* P.R. Const. Art. VI § 2.  In 1961, Section 2 of Article VI of the P.R. Constitution was amended to limit the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth would have to pay relative to its historical revenues.

7.      Master proofs of claim have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds issued by, among others, the Puerto Rico Public Buildings Authority ("PBA"); Puerto Rico Convention Center District Authority ("PRCCDA"); Puerto Rico Infrastructure Financing Authority ("PRIFA"); and the Puerto Rico Public Finance Corporation ("PRPFC").

8.      *PBA*—U.S. Bank National Association ("US Bank") and US Bank National Trust Association ("US Bank Trust") serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Proof of Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.  The PBA Master Proof of Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ." Rider to PBA Master Proof of Claim, ¶¶ 19-21.

9.      *PRCCDA*—The Bank of New York Mellon ("BNYM") serves as trustee for certain Hotel Occupancy Tax Revenue Bonds issued by PRCCDA (the "PRCCDA Bonds"), and on behalf of the holders of PRCCDA Bonds filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 37319 (the "PRCCDA Master Proof of Claim").  The PRCCDA Master Claim asserts a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity." Addendum to PRCCDA Master Proof of Claim, ¶ 11.

10.      *PRIFA*—On behalf of the holders of various bonds and notes issued by PRIFA, master proofs of claim were asserted against the Commonwealth by BNYM, US Bank Trust, and UMB Bank, N.A. ("UMB").  BNYM filed Proofs of Claim Nos. 16759 and 19814, on behalf of the holders of certain Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 15, and Proof of Claim No. 103718, on behalf of holders of certain revenue bonds issued by PRIFA, including Revenue Bonds (Port Authority Project), Series 2011A.  US Bank Trust filed Proof of Claim No. 13386 on behalf of holders of certain Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B.  UMB filed Proof of Claim No. 22130 on behalf of holders of certain PRIFA Infrastructure Revenue Bonds, 2007 Series A (MEPSI Campus Project).

11.      *PRPFC*—US Bank Trust serves as trustee for certain bonds issued by PRPFC, specifically the Series 2012A and Series 2011A and B bonds (the "PRPFC Bonds").  On behalf of the holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13374 (the "PRPFC Master Proof of Claim," and together with the PBA Master Proof of Claim, PRCCDA Master Proof of Claim, and PRIFA Master Proofs of Claim, the "Commonwealth Master Proofs of Claim"), asserting

contingent, unliquidated claims, including for "any and all amounts owed on account of any and all claims the Trustees have or may have relating to the outstanding Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf."  Rider to PRPFC Master Proof of Claim, ¶ 11.

**C.     Bond Debt Master Proofs of Claim – HTA Title III Case**

12.     HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.

13.     The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Resolution Bonds"): (a) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (b) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution"). As of the Petition Date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.

14.     BNYM serves as fiscal agent with respect to the HTA Resolution Bonds.  On behalf of the holders of the HTA Resolution Bonds, BNYM filed three master proofs of claim in the HTA Title III Case (collectively, the "BNYM Master Proofs of Claims"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus

unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

15.     Additionally, in accordance with the HTA Enabling Act, in 2003 HTA issued a series of Special Facility Revenue Refunding Bonds to facilitate the financing of the Teodoro Moscoso Bridge (the "Bridge Bonds").  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee with respect to the Bridge Bonds.  On behalf of the holders of Bridge Bonds, Banco Popular filed in the HTA Title III Case a master proof of claim asserting approximately $153 million in liabilities plus unliquidated amounts for "all amounts owed on account of the [Bridge] Bonds," which was logged by Prime Clerk, LLC, as Proof of Claim No. 22624 (together with the BNYM Master Proofs of Claim, the "HTA Master Proofs of Claim").

**D.     Bond Debt Master Proof of Claim – ERS Title III Case**

16.     ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees.  ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.

17.     Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds") in the aggregate original principal amount of approximately $2.9 billion.[4]

---

[4] On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By*

18.     BNYM serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of the ERS Bonds, BNYM filed a master proof of claim in the ERS Title III Case with respect to the ERS Bonds, asserting approximately $3.8 billion in liabilities plus unliquidated amounts, which was logged by Prime Clerk as Proof of Claim No. 16777 (the "ERS Master Proof of Claim," and together with the HTA Master Proofs of Claim and the Commonwealth Master Proofs of Claim, the "Master Proofs of Claim").

**E.     Proofs of Claim Filed in the Title III Cases, the Omnibus Objection Procedures, and Claim Objections**

19.     To date, over 170,300 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors.

20.     Of the proofs of claim filed, approximately 108,052 have been filed in relation to, or reclassified to be asserted against, the Commonwealth, totaling approximately $33.2 trillion in asserted liabilities plus unliquidated amounts.  Approximately 52,574 proofs of claim have been filed in relation to, or reclassified to be asserted against, ERS, totaling approximately $10.2 trillion in asserted claims, in addition to unliquidated amounts asserted.  Approximately 2,210 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA, totaling approximately $83 billion in asserted claims, in addition to unliquidated amounts asserted.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, or being duplicative of other proofs of claim.

---

*Holders Of ERS Bonds Against ERS And The Commonwealth* [ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

21.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved the English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

22.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "<u>Amended Omnibus</u>

<u>Objection Procedures</u>").

23.      Pursuant to these procedures, the Court has sustained over sixty non-substantive or

substantive omnibus objections filed by the Commonwealth, COFINA, HTA, and/or ERS.

Additionally, the Court has sustained a number of individual objections to claims filed against

COFINA, the Commonwealth, or ERS.  As a result, over 9,000 claims asserting approximately

$43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS have been disallowed

and expunged from the claims registry in the Title III Cases.

24.      This Sixty-Eighth Omnibus Objection is filed in accordance with the Court's

Amended Omnibus Objection Procedures.

<div align="center">

**<u>OBJECTIONS TO PROOFS OF CLAIM</u>**

</div>

25.      The Amended Omnibus Objection Procedures allow the Commonwealth, HTA,

and ERS to file an omnibus objection to multiple proofs of claim on any basis provided for in

Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set

forth in the Amended Omnibus Objection Procedures.

26.      The Sixty-Eighth Omnibus Objection seeks to disallow, in accordance with Federal

Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures,

duplicate bond claims.

27.      Each claim identified in **<u>Exhibit A</u>** hereto (collectively, the "<u>Duplicate Bond</u>

<u>Claims</u>") purports to assert liability against the Commonwealth, HTA, or ERS associated with one

or more bonds that is duplicative of one or more Master Proofs of Claim, which as described above

were filed in the Title III Cases.  As a result, the Duplicate Bond Claims should be disallowed in

their entirety.  Any failure to disallow the Duplicate Bond Claims will result in the applicable

claimants potentially receiving an unwarranted double recovery against the Commonwealth, HTA,

<div align="center">

10

</div>

or ERS, to the detriment of other stakeholders in the Title III Cases. The holders of the Duplicate Bond Claims will not be prejudiced by the disallowance of such claims because the liabilities associated with their claims are subsumed within one or more Master Proofs of Claim.

28.    In support of the foregoing, the Commonwealth, HTA, and ERS rely on the *Declaration of Jay Herriman in Support of the Sixty-Eighth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, and Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Duplicate Bond Claims*, dated September 12, 2019, attached hereto as **Exhibit B**.

## NOTICE

29.    In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth, HTA, and ERS are providing notice of this Sixty-Eighth Omnibus Objection to (a) the individual creditors subject to this Sixty-Eighth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Tenth Amended Case Management Procedures* [ECF No. 8027-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico. The notice for this Sixty-Eighth Omnibus Objection is attached hereto as **Exhibit C**. Spanish translations of the Sixty-Eighth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties. The Commonwealth, HTA, and ERS submit that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

30.    This Sixty-Eighth Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in the Title III Cases to object to the Duplicate Bond Claims or any other claims on any ground whatsoever. The Debtors expressly reserve all further substantive or procedural objections.

Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

31.     No prior request for the relief sought in this Sixty-Eighth Omnibus Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Commonwealth, HTA, and ERS respectfully request entry of an order,

substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief

requested herein, and (2) granting the Commonwealth, HTA, and ERS such other and further relief

as is just.

Dated: September 12, 2019                                    Respectfully submitted,
     San Juan, Puerto Rico

/s/ *Ricardo Burgos Vargas*
Ricardo Burgos Vargas
USDC No. 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel: (787) 751-6764
Fax: (787) 763-8260

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board,
as representative for the
Commonwealth, HTA, and ERS*

**Fecha de la vista: 30 de octubre de 2019, a las 09:30 a.m. (AST)**
**Fecha límite para responder: 15 de octubre de 2019, a las 04:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS
ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMO(S).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| En el asunto de:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>      como representante de<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO y otros,<br><br>                              Deudores.[1] | PROMESA,<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrada conjuntamente)<br><br>**La presente radicación guarda relación con el ELA, la ACT y el SRE.** |

**SEXAGÉSIMA OCTAVA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL ESTADO
LIBRE ASOCIADO DE PUERTO RICO, LA AUTORIDAD DE CARRETERAS Y
TRANSPORTACIÓN DE PUERTO RICO Y EL SISTEMA DE RETIRO DE LOS
EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO
A RECLAMOS DUPLICADOS POR BONOS**

El Estado Libre Asociado de Puerto Rico (el "ELA"), la Autoridad de Carreteras y

Transportación de Puerto Rico (la "ACT") y el Sistema de Retiro de los Empleados del Gobierno

---

[1] Los Deudores en el marco de los presentes Procedimientos radicados conforme al Título III, junto con el respectivo número de procedimiento radicado conforme al Título III y los últimos cuatro (4) dígitos del número federal de contribuyente de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (núm. de procedimiento de quiebra 17 BK 3283-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (núm. de procedimiento de quiebra 17 BK 3284-LTS) (últimos cuatro dígitos del número federal de contribuyente: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (núm. de procedimiento de quiebra 17 BK 3567-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3808); iv) el Sistema de Retiro de los Empleados del Estado Libre Asociado de Puerto Rico (el "SER") (núm. de procedimiento de quiebra 17 BK 3566-LTS) (últimos cuatro dígitos del número federal de contribuyente: 9686); y v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") y, conjuntamente con el ELA, la ACT y el SRE, los "Deudores") (núm. de procedimiento de quiebra 17 BK 4780-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3747) (los números de causas radicadas conforme al Título III figuran como números de procedimiento relativos a procedimientos de quiebra debido a limitaciones del programa informático).

del Estado Libre Asociado de Puerto Rico (el "SER"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del ELA, la ACT y el SRE, conforme al artículo 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican la sexagésima octava objeción (la "Sexagésima octava objeción global") a evidencias duplicadas de reclamos que figuran en el **Anexo A** del presente documento, cada una de las cuales está duplicada en relación una o más Evidencias de reclamos principales radicadas contra el ELA, la ACT o el SRE, en nombre de los tenedores de determinados bonos, y en apoyo de la Sexagésima octava objeción global respetuosamente manifiestan lo siguiente:

## JURISDICCIÓN

1.    El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme al artículo 306(a) de PROMESA.

2.    La sede judicial de este distrito es la competente conforme al artículo 307(a).

## ANTECEDENTES

A.    **Órdenes de fecha final**

3.    El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme al artículo 304(a) de PROMESA, incoando una causa conforme al Título III de dicho cuerpo legal (la "Causa relativa al ELA radicada conforme al Título III"). El 21 de mayo de 2017 (la "Fecha de petición de la ACT"), la Junta de Supervisión emitió certificaciones de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

peticiones voluntarias de remedio para la ACT y el SRE conforme al artículo 304(a) de PROMESA, incoando las causas al amparo del Título III del referido cuerpo legal (respectivamente, la "Causa de la ACT radicada conforme al Título III" y la "Causa del SRE radicada conforme al Título III", denominadas conjuntamente con la Causa del ELA radicada conforme al Título III, las "Causas radicadas conforme al Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de las Causas radicadas conforme al Título III únicamente con fines procesales.

4.       El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fijara fechas límite y procedimientos para radicar Evidencias de reclamos y B) aprobara la forma y la manera de su notificación* [núm. ECF 2255][3] (la "Moción de fecha final"). Conforme a la *Orden que A) fijó fechas límite y procedimientos para radicar Evidencias de reclamos y B) aprobó la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden inicial de fecha final"), el Tribunal concedió el remedio solicitado en la Moción de fecha final y fijó fechas límite y procedimientos para radicar evidencias de reclamos en el marco de las Causas radicadas conforme al Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar Evidencias de reclamos y B) aprobó la forma y la manera de su notificación* [núm. ECF 3160] (conjuntamente con la Orden inicial de fecha final, las "Órdenes de fecha final"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

---

[3]   Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del procedimiento de quiebra núm. 17 BK 3283-LTS.

**B.   Evidencias de reclamos principal relativas a la deuda de los bonos: Causa del ELA radicada conforme al Título III**

5.      Conforme a la Orden inicial de fecha final, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamos principal contra el deudor pertinente, en su propio nombre y en el de todos los tenedores de los reclamos por bonos relacionados con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos fiduciarios, resoluciones o documentos similares vinculados con los bonos. Orden inicial de fecha final, ¶ 5(a).

6.      La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución de Puerto Rico") entró en vigor en 1952. La Constitución de Puerto Rico creó el ELA como el Gobierno central de Puerto Rico, de "forma republicana" y dividida en tres poderes: legislativo, ejecutivo y judicial. *Véase* Const. de Puerto Rico, artículo I, §§ 1, 2. La Constitución de Puerto Rico autoriza al ELA a emitir deuda, con sujeción a determinadas limitaciones, incluida la capacidad del ELA de empeñar sus rentas. *Véase* Const. de Puerto Rico. artículo VI § 2. En 1961, la sección 2 del artículo VI de la Constitución de Puerto Rico fue modificada para limitar la contracción de la deuda por parte del ELA sobre la base del monto de la deuda que el ELA tuviera que haber pagado en relación con sus rentas históricas.

7.      En el marco de la Causa del ELA radicada conforme al Título III se aportaron Evidencias de reclamos principales en nombre de los tenedores de determinados bonos emitidos, entre otros, por la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"); la Autoridad del Distrito del Centro de Convenciones de Puerto Rico (la "ADCC"); la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI"); y la Corporación para el Financiamiento Público de Puerto Rico (la "CFP").

8.      *AEP*: U.S. Bank National Association ("US Bank") y U.S. Bank National Trust Association ("US Bank Trust") actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamos núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de la AEP, radicaron una evidencia de reclamos principal en el marco de la Causa del ELA radicada conforme al Título III por todos los montos pendientes de pago adeudados (la "Evidencia de reclamos principal de la AEP"), que fue registrada por Prime Clerk, LLC como Evidencia de reclamos núm. 62833. La Evidencia de reclamos principal de la AEP reivindica reclamos liquidados por aproximadamente $4000 millones en concepto de capital principal presuntamente impagado, $160 millones en concepto de intereses presuntamente impagados y por reembolso de comisiones y gastos de los agentes fiscales, además de reclamos no liquidados y contingentes por la totalidad de los montos adeudados "en razón de la totalidad de los reclamos que el Agente fiscal tenga o pueda tener en relación con las Obligaciones de bonos pendientes, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA". . . ."  Cláusula de la Evidencia de reclamos principal de la AEP, ¶¶ 19-21.

9.      *ADCC*: el Bank of New York Mellon ("BNYM") actúa como fiduciario en relación con determinados Bonos de rentas de impuestos relativos a la ocupación de hoteles, emitidos por la ADCC (los "Bonos de la ADCC (los "Bonos de la ADCC"), y en nombre de los tenedores de los Bonos de la ADCC radicó una evidencia de reclamos principal contra el ELA, que fue registrada por Prime Clerk, LLC como Evidencia de reclamos núm. 37319 (la "Evidencia de reclamos principal de la ADCC"). El Reclamo principal de la ADCC reivindica un "reclamo contingente y no liquidado contra el ELA en razón de la totalidad de los reclamos, causas

5

radicadas, derechos y/o remedios que el Fiduciario o los Propietarios puedan tener contra el ELA

en virtud de la ley o equidad". Adenda de la Evidencia de reclamos principal de la ADCC, ¶ 11.

10.     *AFI*: en nombre de los tenedores de varios bonos y pagarés emitidos por la AFI, se

radicaron evidencias de reclamos principales contra el ELA por parte de BNYM, US Bank Trust

y UMB Bank, N.A. ("UMB"). BNYM radicó Evidencias de reclamos núms. 16759 y 19814, en

nombre de los tenedores de determinados Pagarés de anticipación de bonos relativos a rentas de

fondo de impuestos dedicado, serie 15, y la Evidencia de reclamos núm. 103718, en nombre de los

tenedores de determinados bonos de renta emitidos por la AFI, incluidos Bonos de renta (Proyecto

de la Autoridad Portuaria), serie 2011A. US Bank Trust radicó la Evidencia de reclamos núm.

13386 en nombre de los tenedores de determinados Bonos relativos a rentas de impuestos

especiales, series 2005A, 2005B, 2005C y serie 2006B. UMB radicó la Evidencia de reclamos

núm. 22130 en nombre de los tenedores de determinados Bonos relativos a rentas de

infraestructura de la AFI, 2007 serie A (Proyecto de campus de MEPSI).

11.     *CFP*: US Bank Trust actúa como fiduciario en relación con determinados bonos

emitidos por la CFP, sobre todo la serie 2012A y las series 2011A y B (los "Bonos de la CFP"). En

nombre de los tenedores de los Bonos de la CFP, US Bank Trust radicó una evidencia de reclamos

contra el ELA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 13374

(la "Evidencia de reclamos principal de la CFP", y junto con la Evidencia de reclamos principal

de la AEP, la Evidencia de reclamos principal de la ADCC y la Evidencia de reclamos principal

de la AFI, la "Evidencia de reclamos principal del ELA"), que reivindica reclamos contingentes y

no liquidados, lo que incluye reclamos por "la totalidad de los importes adeudados en razón de

todos los reclamos que los Fiduciarios tengan o puedan tener en relación con las Obligaciones de

bonos principales, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA". Cláusula de la Evidencia de reclamos principal de la CFP, ¶ 11.

**C.  Evidencias de reclamo principal relativas a la deuda de los bonos: Causa de la ACT radicada conforme al Título III**

12.      La ACT es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA ("Ley habilitante de la ACT"). La ACT se encarga de la construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A, § 2002.

13.      La Ley de habilitación de la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A, §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT relativos a resoluciones"): a) Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución 1968"), y b) Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución 1998"). Desde la Fecha de petición, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución 1998 quedan igualmente pendientes de pago.

14.      BNYM actúa como agente fiscal con respecto a los Bonos de la ACT relativos a resoluciones. En nombre de los tenedores de los Bonos de la ACT relativos a resoluciones, BNYM radicó tres evidencias de reclamos principales en el marco de la causa de la ACT radicada conforme al Título III (conjuntamente, las "Evidencias de reclamos principales del BNYM"): la Evidencia de reclamos núm. 37245, por la que se reclaman, en nombre de los tenedores de los bonos emitidos conforme a la Resolución 1968, aproximadamente $847 millones en concepto de

responsabilidad más montos no liquidados; la Evidencia de reclamos núm. 38574, por la que se

reclaman, en nombre de los tenedores de los bonos emitidos conforme a la Resolución 1998,

aproximadamente $3200 millones en concepto de responsabilidad más montos no liquidados; y la

Evidencia de reclamos núm. 32622, por la que se reclaman, en nombre de los tenedores de los

bonos subordinados emitidos conforme a la Resolución 1998, aproximadamente $279 millones en

concepto de responsabilidad más montos no liquidados.

15.     Además, de conformidad con la Ley habilitante de la ACT, la ACT emitió en 2003

una serie de Bonos relativos a rentas de instrumentos financieros especiales para facilitar el

financiamiento del puente de Teodoro Moscoso (los "Bonos relativos al puente"). El Banco

Popular de Puerto Rico ("Banco Popular") actúa como fiduciario en relación con los Bonos

relativos al puente. En nombre de los tenedores de los Bonos relativos al puente, el Banco Popular

presentó, en el marco de la Causa radicada conforme al Título III, una evidencia de reclamos

principal reclamando aproximadamente $153 millones en concepto de responsabilidades más

montos no liquidados relativos a "todos los montos adeudados con respecto a los Bonos [relativos

al puente]", que fue registrada por Prime Clerk, LLC como Evidencia de reclamos núm. 22624

(junto con las Evidencias de reclamos principales del BNYM, las "Evidencias de reclamos

principales de la ACT").

**D.      Evidencia de reclamo principal relativa a la deuda de los bonos: Causa del SRE
radicada conforme al Título III**

16.     El SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar

económico de los empleados públicos. El SRE es un organismo gubernamental, separado e

independiente del Gobierno del ELA y de otros de sus órganos. *Véase* 3 L.P.R.A § 775.

17.     Presuntamente, conforme a la *Resolución sobre bonos para el financiamiento de*

*pensiones*, adoptada el 24 de enero de 2008, y las resoluciones complementarias, el SRE emitió

unos bonos preferentes y subordinados relativos al financiamiento de pensiones (los "Bonos del SER"), por un monto total del principal de aproximadamente $2900 millones.[4]

18.     BNYM actúa como agente fiscal con respecto a los Bonos del SRE.   En nombre de los tenedores de los Bonos del SRE, BNYM presentó una evidencia de reclamos principal en el marco de la causa del SRE radicada conforme al Título III en relación con los Bonos del SRE, reclamando aproximadamente $3800 millones en concepto de responsabilidades más montos no liquidados, que fue registrada por Prime Clerk como Evidencia de reclamos núm. 16777 (la "Evidencia de reclamos principal del SER", y junto con las Evidencias de reclamos principales de la ACT y las Evidencias de reclamos principales del ELA, las "Evidencias de reclamos principales").

**E.     Evidencias de reclamos radicadas en el marco de las Causas radicadas conforme al Título III, a los Procedimientos relativos a objeciones globales y a las Objeciones a reclamos**

19.     Hasta la fecha, se han radicado más de 170,300 evidencias de reclamos, y se han registrado por Prime Clerk, LLC., contra los Deudores. Dichas evidencias de reclamos ascienden a un total de $43.6 billones en reclamos radicados contra los Deudores.

---

[4]  El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamos radicados por los tenedores de los bonos emitidos por el SRE* [procedimiento núm. 17-3566, núm. ECF 381], sobre el motivo de que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, lo cual convertía los Bonos del SRE en nulos de pleno derecho. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al Código de quiebras, artículo 502, y la regla 3007 de las Reglas de quiebras, a reclamos radicados o alegados por los tenedores de los Bonos del SRE contra el SRE y el ELA* [núm. ECF 6482], sobre el motivo, entre otros, de que la emisión de los bonos fue *ultra vires*. El SRE se reserva los derechos a impugnar la emisión de los bonos sobre cualquier motivo, también sobre el motivo de que los Bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

20.     De las evidencias de reclamos radicadas, aproximadamente 108,052 han sido radicados en relación con el ELA, o reclasificados como radicados contra el ELA, que ascendieron a un total de $33.2 billones en deudas, además de los montos no liquidados, que fueron reclamados. Aproximadamente 52,574 evidencias de reclamos han sido radicados en relación con el SRE, o reclasificados como radicados contra el SRE, que ascendieron a un total de $10.2 billones en reclamos reivindicados, además de los montos no liquidados reclamados. Aproximadamente 2210 evidencias de reclamos han sido radicados en relación con la ACT, o reclasificados como radicados contra la ACT, que ascendieron a un total de $83,000 millones en reclamos reivindicados, además de los montos no liquidados reclamados. De conformidad con los términos de las Órdenes de fecha final, muchos de esos reclamos no tenían que ser radicados siquiera, o adolecen de algún otro vicio; por ejemplo, haber sido modificados posteriormente, no contener reclamos de los que los Deudores fuesen responsables, o estar repetidos en relación con otras evidencias de reclamos.

21.     Para resolver, de manera eficaz, el mayor número posible de las evidencias de reclamos innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción de que se dictase una orden a) que aprobase procedimientos limitados relativos a objeciones globales, b) declarase la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de quiebras, y c) concediese el remedio relacionado* [núm. ECF 4052] (la "Moción de procedimientos globales"). El Tribunal concedió el remedio solicitado en la Moción de procedimientos globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden a) que aprobó procedimientos limitados relativos a objeciones globales, B) declaró la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de quiebras, y c) concedió el remedio relacionado* [núm. ECF 4230]; *Procedimientos relativos a objeciones globales* [núm. ECF. 4230-1] (conjuntamente, los "Procedimientos originales relativos a objeciones globales"). El 29 de

10

noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos originales relativos a objeciones globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [núm. ECF 4381] (la "Orden de notificación").

22.     En aras del interés constante de  resolver, de una manera eficaz, cualesquiera evidencias de reclamos innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en las que solicitaron, entre otras cosas, que los Deudores pudieran radicar objeciones globales sobre unas bases sustantivas para aumentar el número de reclamos que pudieran incluirse en una objeción y para aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que aprobara procedimientos enmendados relativos a objeciones globales, B) declarara la renuncia al requisito contenido en la regla 3007(e) de las Reglas de quiebras C) aprobara formas de notificación adicionales y D) concediera el remedio relacionado [núm. ECF 7091].* El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la Orden *A) que aprobó procedimientos enmendados relativos a objeciones globales, B) declaró la renuncia al requisito contenido en la regla 3007(e) de las Reglas de quiebras C) aprobó formas de notificación adicionales y D) concedió el remedio relacionado* [núm. ECF 7440] (los "Procedimientos enmendados relativos a objeciones globales").

23.     Conforme a estos procedimientos, el Tribunal declaró ha lugar más de 60 objeciones globales no sustantivas y sustantivas radicadas por el ELA, COFINA, la ACT y/o el SRE.  Además, el Tribunal declaró ha lugar a una serie de objeciones individuales a reclamos radicados contra COFINA, el ELA o el SRE.  En consecuencia, más de 9000 reclamos que reivindicaban aproximadamente $43 billones en concepto de responsabilidad contra el ELA, la

11

ACT, COFINA y el SRE han sido rechazados y suprimidos del registro de reclamos en el marco de las Causas radicadas conforme al Título III.

24.      La Sexagésima octava objeción global se radica de conformidad con los Procedimientos enmendados relativos a objeciones globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMOS

25.      Los Procedimientos enmendados relativos a objeciones globales permiten al ELA, a la ACT y al SRE radicar una objeción global a varias evidencias de reclamos sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas federales del procedimiento de quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos enmendados relativos a objeciones globales.

26.      La Sexagésima octava objeción global pretende que se rechacen reclamos duplicados por bonos de conformidad con la regla 3007(d)(1) de las Reglas federales del procedimiento de quiebra o los Procedimientos enmendados relativos a objeciones globales.

27.      Cada reclamo identificado en el **Anexo A** del presente (conjuntamente, los "Reclamos duplicados por bonos") alega presuntamente responsabilidad contra el ELA, la ACT o el SRE vinculada con uno o varios bonos duplicados en relación con una o varias Evidencias de reclamos principales, las cuales, como se explicó anteriormente, fueron radicadas en el marco de las Causas radicadas conforme al Título III. En consecuencia, los Reclamos duplicados por bonos deben ser rechazados en su totalidad. Si los Reclamos duplicados por bonos no son rechazados, ello resultaría en que las correspondientes demandantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, la ACT o el SRE en detrimento de otras partes interesadas de las Causa radicadas conforme al Título III. Los tenedores de los Reclamos duplicados por bonos no se verán perjudicados por el hecho de que se rechacen tales reclamos,

puesto que las responsabilidades vinculadas con sus reclamos figuran en una o varias Evidencias de reclamos principales.

28.     En apoyo de lo anterior, el ELA, la ACT y el SRE invocan la *Declaración de Jay Herriman en apoyo de la Sexagésima octava objeción global (no sustantiva) del Estado Libre Asociado de Puerto Rico, de la Autoridad de Carreteras y Transportación de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamos duplicados por bonos*, de fecha 12 de septiembre de 2019, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

29.     De conformidad con los Procedimientos enmendados relativos a objeciones globales y la Orden de notificación del Tribunal, el ELA, la ACT y el SRE notifican la presente Sexagésima octava objeción global a) a los acreedores individuales objeto de esta Sexagésima octava objeción global, b) al Síndico estadounidense, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de causas enmendados núm. 10* [núm. ECF 8027-1]), disponibles en el sitio de causas del Deudor, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Sexagésima octava objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Sexagésima octava objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA, la ACT y el SRE sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

30.     La presente Sexagésima octava objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas de las Causas radicadas conforme al

Título III, a objetar a los Reclamos duplicados por bonos o a cualesquiera otros reclamos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamos contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas de las Causas radicadas conforme Título III, a impugnar cualquier reclamo sobre la base de los motivos que fuere; c) constituyan una promesa o requisito a pagar cualquier reclamo; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas de las Causas radicadas conforme Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

31.     No se ha radicado ninguna solicitud de remedio previa a la presente Sexagésima octava objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE el ELA, la ACT y el SRE solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA, a la ACT y al SRE cualesquiera otros remedios que se consideren justos.

Fecha: 12 de julio de 2019
San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Ricardo Burgos Vargas
Núm. USDC: 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel.: (787) 751-6764
Fax: (787) 763-8260

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.:  (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera como representante del ELA, de la ACT y del SRE*