UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

    Debtor.

PROMESA
Title III

No. 17 BK 4780-LTS

**Court Filing Relates Only to PREPA
and Shall Only be Filed in Case No.
17-BK-4780 (LTS)**

------------------------------------------------------------x

### LIMITED OBJECTION OF WHITEFISH ENERGY HOLDINGS, LLC
### TO THE JOINT MOTION OF PREPA AND AAFAF PURSUANT TO BANKRUPTCY
### CODE SECTIONS 362, 502, 922, AND 928, AND BANKRUPTCY RULES 3012(A)(1)
### AND 9019 FOR ORDER APPROVING SETTLEMENTS EMBODIED IN THE
### <u>RESTRUCTURING SUPPORT AGREEMENT</u>

Whitefish Energy Holdings, LLC ("WEH"), by and through its undersigned counsel, hereby files this limited objection (the "Objection") to the Joint Motion of PREPA and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

4811-7388-1751.5

3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement (the "9019 Motion"). WEH respectfully requests that this Court require the RSA Parties to disclose how the new administrative claims contemplated in the Settlement will impact WEH's administrative claims (as well as other existing administrative claims) and/or provide evidence that existing administrative claimants will be paid and not be negatively impacted by the addition of the administrative claims contemplated by the Settlement.

## INTRODUCTION

Almost exactly two years ago, in the immediate aftermath of Hurricanes Maria and Irma, WEH was the first transmission line contractor engaged by PREPA in the field in Puerto Rico, working to repair the island-wide blackout. WEH's work has been praised as the most efficient and cost-effective of any contractor working on the island.[2] However, in the last 20 months, WEH has not received a single payment from PREPA on account of the over $126 million owed to it.

WEH's swift action and willingness to provide services in Puerto Rico on an emergency basis, coupled with its unique ability to replace *transmission* lines (rather than just distribution lines), in remote areas accessible only by helicopter, provided necessary support to PREPA to help it survive the catastrophic damage of the hurricanes and the long-term disrepair of the island's power grid. WEH repaired the five (5) transmission line segments assigned by PREPA to WEH in less than two months. <u>These were the most critical transmission lines that facilitated the restoration of power to hospitals, industry, and the City of San Juan.</u>

---

[2] *See, e.g.*, "How the US Turned Hurricane Maria from a Natural Disaster to a Manmade Tragedy, September 21, 2018"; available at: https://www.cnn.com/2018/09/21/us/puerto-rico-hurricane-maria-natural-disaster-human-catastrophe-weir/index.html ("Before leaving the island, the fired Whitefish Energy crews managed to repair five transmission lines faster and cheaper than other contractors, PREPA records show, and were given a 'favorable review' by FEMA's Inspector General and PREPA's new chief, José Ortiz.")

2

It is therefore indisputable that the actions of WEH preserved the Debtor's assets and maintained its ability to function as a going concern. However, WEH is still owed in excess of $126 million on an administrative basis by PREPA. It has not received a single payment in over 20 months, causing it significant financial harm. Through the 9019 Motion, PREPA seeks approval of a settlement that will provide many hundreds of millions in administrative claims to certain of its bond creditors (whose claims are the subject of a significant dispute)[3], with no plan to pay its *other* administrative creditors. Indeed, the settlement guarantees the settling bond creditors secured claims in the form of new bonds, as well as the administrative claims and interim payments, prior to the confirmation of a plan of adjustment. These new secured bonds would be paid through proceeds of additional fees charged to PREPA's end customers.

WEH shares the concerns of other creditors, including the Official Committee of Unsecured Creditors (the "Committee") and the Fuel Line Lenders, that the settlement will tie PREPA's and the Court's (and thus all other administrative claimants') hands when the time comes to propose and confirm a plan of adjustment in this case. WEH is also concerned that the addition of significant new administrative claims being added to the estate through the settlement will impact PREPA's ability to pay its current administrative claimants in full at the time of plan confirmation. PREPA and the other parties to the RSA (collectively the "RSA Parties") should be required to provide evidence to the Court that the addition of these new administrative claims will not jeopardize their ability to pay all of the outstanding administrative claims as part of *any* contemplated plan of adjustment.

---

[3] On July 9, 2019, Cortland Capital Market Services, LLC as Administrative Agent and Solus (collectively the "Fuel Line Lenders") filed an adversary complaint against PREPA, AAFAF, the Oversight Board, and U.S. Bank National Association as Trustee (the "Adversary Complaint"). In the Adversary Complaint, the Fuel Line Lenders raise significant concerns about the extent of any security for the bonds that are also the subject of the RSA. Critically, the Adversary Complaint explains that the security for the bonds at issue in this matter is limited to the funds in a so-called "Sinking Account." Adversary Complaint, ¶¶ 34-37. As of the Petition Date, this Sinking Fund contained $33 million. *Id.*, ¶ 45.

## STATEMENT OF FACTS

*a. WEH's Administrative Claim*

1. On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed a voluntary petition for relief pursuant to PROMESA section 304(a) (the "Title III Case"). Following this, the Oversight Board filed Title III cases for various entities, including the Puerto Rico Electric Power Authority ("PREPA") on July 2, 2017.

2. On September 26, 2017, after Puerto Rico was struck by two hurricanes, which severely damaged its electric grid, PREPA entered into a contract with WEH for the repair of the electrical system main structures (the backbone of the system) composed of approximately 200 miles of transmission lines and towers, many of which were located in the mountainous region of Puerto Rico's rugged interior (the "WEH Contract"). PREPA understood that the WEH team had the necessary experience to repair the 230kV transmission lines in remote areas with no access roads.

3. The WEH Contract, as amended, had a ceiling value of $300 million. The WEH Contract obligated PREPA to pay WEH for work PREPA asked it to perform and which work was actually performed on a time-and-materials basis.

4. On October 31, 2017, PREPA terminated the WEH Contract, effective November 30, 2017. The termination was unrelated to WEH's performance under the WEH Contract. In fact, the Office of the Comptroller General of the Commonwealth of Puerto Rico audited the WEH Contract and found no improprieties.

5. Prior to the November 30, 2017 termination date, WEH completed all of the work that had been requested by PREPA including, *inter alia*, the repair of the five (5) transmission

4

4811-7388-1751.5

line segments assigned by PREPA to WEH, which constitute part of the backbone of the transmission system in the area.[4]

6. More specifically, WEH completed the following:

(a) The sum of the Whitefish Energy work covered more than 200 miles of transmission lines. In most areas, Whitefish Energy crews cleared the right-of-ways to reach structures and lines before damage assessment and work could even begin. That preliminary work also involved clearing access roads and helicopter staging areas so that repair equipment and manpower could be transported to repair sites;

(b) Over the course of that 200 miles of transmission line repair work, teams replaced over 50 towers, dismantled a like number of towers and inventoried parts for salvage and reuse, replaced structures, and completed corrective action on at least 200 other transmission structures; and

(c) Whitefish Energy also repaired over 200 miles of critical distribution line infrastructure. Restoring electricity to major residential and industrial areas was PREPA's top priority. Whitefish Energy restored the first electricity to San Juan, Caguas, Manati and Juncos customers. In doing so, Whitefish Energy replaced and repaired several hundred poles and re-wired critical distribution lines.

7. WEH submitted invoices to PREPA for work performed and for mobilization and demobilization costs totaling approximately $142.4 million, which includes amounts owed for work performed by WEH and its subcontractors.

8. As of the date of this Motion, PREPA still owes WEH and its subcontractors $105,244,756.99 (the "Remaining Invoice Amounts")[5], exclusive of interest and fees – which continue to accrue under the WEH Contract. PREPA's September 24, 2018 Disclosure confirms

---

[4] The chart detailing the restoration of transmission lines is part of PREPA's September 24, 2018 Disclosures to bondholders and other parties in this case (the "Disclosures"), on page 12. The Disclosure from September 24, 2018 can be found here: https://emma.msrb.org/ES1200256-ES937715-ES1338535.pdf.

[5] The Remaining Invoice Amounts are subject to further reconciliation by PREPA and WEH. At this time, WEH understands that a small portion of its invoices are still being reconciled.

4811-7388-1751.5

this amount on Page 15.[6] Therefore, there is no dispute about the amount owed and herein claimed.

9. The federal government has authorized 100% federal cost share for emergency protective measures, including direct federal assistance, for 180 days from the start of the declaration on September 17, 2017.[7] All of the work performed by WEH and its subcontractors was performed within this 180-day period.

10. The WEH Contract acknowledged that, starting on October 25, 2017, Federal Emergency Management Agency ("FEMA") financial assistance will be used to fund the WEH Contract. Notwithstanding the foregoing, the WEH Contract provides, "Any failure to secure approvals or funding from FEMA or some other source . . . shall not relieve PREPA from its obligations for payment under this Contract."[8]

11. PREPA prepared the contract analysis, cost reasonableness analysis, and invoices that are required to seek reimbursement from FEMA for the work performed by WEH (collectively, the "Documentation").

12. WEH has promptly and diligently responded to PREPA's requests for information and documentation to support PREPA's efforts in compiling the Documentation.

13. As reflected in PREPA's September 24, 2018 Disclosure, on June 29, 2018, PREPA submitted the Documentation to the Governor's Authorized Representative ("GAR") for review.

---

[6] The September 24, 2018 Disclosure is located at https://emma.msrb.org/ES1200256-ES937715-ES1338535.pdf.

[7] https://www.fema.gov/news-release/2017/09/26/president-donald-j-trump-amends-puerto-rico-declaration

[8] The WEH Contract is in the possession of PREPA and is not attached hereto, but WEH will provide a copy to the Court upon request.

6

4811-7388-1751.5

14. The GAR submitted the Documentation to FEMA on or about August 24, 2018, which is confirmed by the movement of the WEH Project Worksheet from the "pending" to the "submitted" portion of the chart in the August 24, 2018 Disclosure. PREPA then re-submitted the Documentation to FEMA on or about November 27, 2018, as indicated in PREPA's December 5, 2018 Disclosure.[9] PREPA's Disclosures, including its most recent Disclosure as of the date of this filing,[10] all reflect that the Documentation supported a request for reimbursement in the amount of $142.4 million (this amount includes the funds previously paid to WEH in 2017 which are to be reimbursed to PREPA by FEMA). This submission to FEMA by PREPA constitutes an admission by PREPA of what is an accurate statement of fact and a correct statement of the law – that WEH performed the work and is owed payment pursuant to the WEH Contract, as supported by the Documentation.

15. As reflected in PREPA's prior Disclosures, PREPA paid WEH $36.9 million, with the last payment received almost two years ago, in December 2017. However, WEH is still owed the Remaining Invoice Amounts, plus finance charges, which continue to accrue in accordance with the WEH Contract at a rate of 1% per month for all overdue invoices (the "Finance Charges"), amounting to $1 million per month of additional administrative claims.

16. As of September 15, 2019, PREPA owes WEH $21,636,207.22 for Finance Charges alone. The total amount of WEH's administrative claim as of the date of this filing is approximately $126,880,964.21, including $105,244,756.99 of unpaid invoices, and finance charges of $21,636,207.22 as of September 15, 2019. Additional Finance Charges are accruing at a rate of 1% per month on all overdue invoices until the date WEH receives payment in full, as agreed under the terms and conditions of the WEH Contract.

---

[9] https://emma.msrb.org/ES1221958-ES954127-ES1355088.pdf.
[10] https://emma.msrb.org/ES1296577-ES1014670-ES1416019.pdf.

17. PREPA's failure to pay WEH over $100 million for postpetition work that no one disputes was performed and performed well, and its delay in submitting the Documentation to FEMA, has caused a strain on WEH's cash flow, resulting in a higher cost of running its business.

*b. The Proposed Settlement*

18. On May 10, 2019, PREPA filed the 9019 Motion, seeking this Court's approval of a settlement with a number of its bondholders and bond insurers (the "Settlement"). Among other things, the Settlement provides for (i) the allowance of claims of the holders of approximately $8.25 billion of purportedly secured bonds (the "Supporting Holders") in a reduced secured amount, which is to be provided through replacement secured bonds (the "Securitization Bonds"); (ii) the accrual of administrative claims; and (iii) certain Settlement Payments paid from a new transmission charge to be imposed on PREPA ratepayers by July 1, 2019. In exchange for this treatment, the Supporting holders have agreed to accept the allowance of the claims in a reduced amount, dismiss their litigation seeking a receiver over PREPA and support a plan of adjustment that incorporates the terms of the Settlement.

19. On July 2, 2019, PREPA and the parties to the RSA filed their Supplemental Memorandum of Law and Facts in Support of Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods [Dkt. No. 1425] (the "Supplemental Memo").

8

## LIMITED OBJECTION

20. In order to approve a settlement under Fed. R. Bankr. P. 9019, courts in this circuit look to four factors: (1) the probability of success of the litigation being settled; (2) the difficulties of settlement, (3) the complexity of the litigation; and (4) the paramount interest of creditors, including proper deference to their views. *In re C.R. Stone Concrete Contractors, Inc.*, 346 B.R. 32, 49 (Bankr. D. Mass. 2006) (quoting *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995)).

21. Generally, WEH does not oppose a settlement with the major creditors of PREPA, because it could also speed resolution of this matter. WEH further recognizes that the issues resolved by the Settlement are complex and would likely require lengthy and costly litigation to resolve. However, the legitimate concerns and interests of creditors must be addressed in order for the Settlement to be approved.

22. Along with other creditors who have signaled their opposition to the Settlement as currently proposed, including the Committee and the Fuel Line Lenders, WEH is concerned that the Settlement makes payment of its administrative claim a riskier proposition, and dictates the form of any future plan of adjustment. WEH holds one of the largest (if not the largest) administrative claims in this case. As of the filing of this Limited Objection, PREPA owes WEH *over $126 million* in unpaid administrative claims. WEH has not received any payment on account of its administrative claims in over 20 months, despite repeated requests to PREPA.

23. Furthermore, the Settlement contemplates interim payments to the Supporting Holders during the case, and other consideration, such as the payment of their expenses, in addition to the administrative claims they will receive under the Settlement. This, in effect, creates a class of super-priority administrative creditors with far more rights than existing

4811-7388-1751.5

administrative claimholders have. That structure should not be approved without evidence that the other administrative creditors will not be impacted. *See, e.g., In re C.P. del Caribe, Inc.*, 140 B.R. 320, 326 (Bankr. D. P.R. 1992) (denying approval of a settlement where settling creditors would be paid before creditors of the same rank and priority, and where settlement proponents could not explain why such treatment was appropriate).

24. PROMESA requires full payment of administrative claims in order to confirm a plan of adjustment. 48 U.S.C. § 2174(b)(4). The Settlement, as proposed, is unfair to the existing administrative claimholders who PREPA is not required to pay until confirmation of a plan of adjustment, which may not occur for several years. It is particularly painful for smaller companies, such as WEH, who provided emergency services to PREPA when no one else would do so. However, the addition of significant new administrative claims may result in PREPA's inability to pay all of these claims in full. WEH and other pre-existing administrative creditors are being asked to bear the risk of this uncertainty under the Settlement.

25. This Court should require the RSA Parties to provide sufficient evidence to demonstrate that the addition of the administrative claims contemplated by the Settlement will not have any impact on the payment of other administrative claims before approving the Settlement.

## **CONCLUSION**

As set forth above, WEH respectfully requests that this Court require the RSA Parties to: (i) provide full disclosure of how other administrative claimants, including WEH, will be impacted by the Settlement (ii) produce evidence demonstrating that existing administrative claimants will be paid and not be negatively impacted by the addition of the administrative claims contemplated by the Settlement; and (iii) enter such other relief as is just and proper under the circumstances.

4811-7388-1751.5

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 20th day of September 2019.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the participants appearing in said record including the US Trustee, counsel for AAFAF, counsel for the Oversight Board, Counsel for the Creditor's Committee, and Counsel for the Retiree Committee.

Respectfully submitted,

/s/ Ann Marie Uetz
Ann Marie Uetz (*pro hac vice*)
FOLEY & LARDNER LLP
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone (313) 234-7100
Facsimile (313) 234-2800
auetz@foley.com
*Counsel for WEH*

and

**C. CONDE & ASSOC.**
/s/*Carmen D. Conde Torres*
Carmen D. Conde Torres, Esq.
USDC 207312
/s/*Luisa S. Valle Castro*
Luisa S. Valle Castro, Esq.
USDC No. 215611

254 San José Street, 5th Floor
Old San Juan, Puerto Rico 00901
Telephone: 787-729-2900
Facsimile: 787-729-2203
E-Mail: condecarmen@condelaw.com
ls.valle@condelaw.com
*Counsel for WEH*

11

4811-7388-1751.5