**Estimated Hearing Date**: October 30, 2019 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: October 10, 2019 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |

## SUMMARY SHEET TO
## SIXTH INTERIM FEE APPLICATION OF PROSKAUER
## ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED
## AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR
## THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
## RICO, AS REPRESENTATIVE OF THE DEBTOR, THE COMMONWEALTH OF
## PUERTO RICO, FOR THE PERIOD FEBRUARY 1, 2019 THROUGH MAY 31, 2019

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.).

## Schedule 1

**Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period**

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("Proskauer") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board for Puerto Rico as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | February 1, 2019 through May 31, 2019 (the "Compensation Period") |
| Amount of Fees Sought excluding Gross-Up Amount: | $7,846,461.30 |
| Gross-Up Amount[2]: | $706,181.17 |
| Amount of Expense Reimbursement Sought: | $255,078.07 |
| Total Fees and Expenses Sought for Compensation Period including Gross-Up Amount: | $8,807,720.54 |

This is a(n)   ____ Monthly  _X_  Interim __ Final Fee Application

This is the sixth interim fee application filed by Proskauer in the Debtor's Title III case.  The total time expended in connection with the preparation of this interim application is not included herein, as additional time was expended after the Compensation Period.

---

[2]  Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257-2018) starting December 10, 2018 (the "Withholding").  But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

### Sixth Interim Compensation Period
### February 1, 2019 – May 31, 2019

| Statement and Date Served | Period Covered | Total Fees Incurred | Total Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Twenty-Third** 4/30/2019 | 2/1/19 to 2/28/19 | $1,605,448.50 | $1,444,903.65 | $61,945.13 | $1,444,903.65 | $61,945.13 |
| **Twenty-Fourth** 5/1/2019 | 3/1/19 to 3/31/19 | $1,810,583.70 | $1,629,525.33 | $49,310.56 | $1,629,525.33 | $49,310.56 |
| **Twenty-Fifth** 5/30/2019 | 4/1/19 to 4/30/19 | $2,163,896.10 | $1,947,506.49 | $55,100.56 | $1,947,506.49 | $55,100.56 |
| **Twenty-Sixth** 7/1/2019 | 5/1/19 to 5/31/19 | $2,266,533.00 | $2,039,879.70 | $88,721.82 | $2,039,879.70 | $88,721.82 |
| | **Totals:** | **$7,846,461.30** | **$7,061,815.17** | **$255,078.07** | **$7,061,815.17** | **$255,078.07** |

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys | $785.76[3] |
| Blended Rate in This Application for All Timekeepers | $697.63 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $7,061,815.17 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $255,078.07 |
| Number of Professionals Included in this Application[4] | 95 |
| Number of Professionals in This Application NOT Included in Staffing Plan Approved by Client[5] | N/A |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period | 30 |
| Any Rates Higher than Those Approved or Disclosed when Retained?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No. As explained in Proskauer's Fifth Interim Application (as defined below), rates increased in accordance with Proskauer's Engagement Letter on January 1, 2019. Rates have not increased during the Compensation Period. |

---

[3]  This rate excludes non-attorneys (*e.g.*, paralegals).

[4]  As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non-attorneys.

[5]  As noted in the Staffing Plan for the Compensation Period at Exhibit D-2 of the Application, the number of timekeepers expected to work on this matter during the Compensation Period was 99, and thus the actual number of timekeepers was 4 fewer than anticipated.

**Schedule 2**

**Summary of Professional Services Rendered by
Timekeeper for the Period February 1, 2019 through May 31, 2019**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| *PARTNERS* | | | | |
| Ashton, Ann M. | Litigation – 1980 | $789 | 8.50 | $6,706.50 |
| Barak, Ehud | BSGR&B[7] – 2010 | $789 | 299.40 | $236,226.60 |
| Batten Mark W. | Labor & Employment – 1988 | $789 | 1.00 | $789.00 |
| Bienenstock, Martin J. | BSGR&B – 1978 | $789 | 468.30 | $369,488.70 |
| Brenner, Guy | Labor & Employment – 2002 | $789 | 64.10 | $50,574.90 |
| Corn, Richard M. | Tax – 2005 | $789 | 1.90 | $1,499.10 |
| Dale, Margaret A. | Litigation – 1990 | $789 | 29.40 | $23,196.60 |
| Febus, Chantel L. | Litigation – 2003 | $789 | 292.80 | $231,019.20 |
| Ferrara, Ralph C. | Litigation – 1970 | $789 | 172.90 | $136,418.10 |
| Firestein, Michael A. | Litigation – 1983 | $789 | 314.00 | $247,746.00 |
| Hamburger, Paul M. | Labor & Employment – 1985 | $789 | 5.00 | $3,945.00 |
| Hamilton, Martin T. | Tax – 2004 | $789 | 24.80 | $19,567.20 |

---

[6]  In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases.  Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2.  Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1.  Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is available on the Oversight Board's website at https://oversightboard.pr.gov/documents/) (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent.  As detailed in the Fifth Interim Application, as of January 1, 2019, Proskauer's rates under the Engagement Letter increased from $759 per hour for attorneys and $260 per hour for paraprofessionals to $789 per hour for attorneys and $270 per hour for paraprofessionals. Additionally at that time, with the client's knowledge and permission, Proskauer created a new rate class, e-Discovery Attorney, with the rate of $390 per hour. Rates have not increased during this Compensation Period.

[7]  Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Harris, Mark D. | Litigation – 1992 | $789 | 22.00 | $17,358.00 |
| Levitan, Jeffrey W. | BSGR&B – 1983 | $789 | 285.50 | $225,259.50 |
| Mashberg, Gregg M. | Litigation – 1978 | $789 | 6.80 | $5,365.20 |
| Mervis, Michael T. | Litigation – 1990 | $789 | 65.60 | $51,758.40 |
| Mungovan, Timothy W. | Litigation – 1994 | $789 | 316.00 | $249,324.00 |
| Perra, Kevin J. | Litigation – 1995 | $789 | 61.90 | $48,839.10 |
| Possinger, Paul V. | BSGR&B – 1993 | $789 | 218.30 | $172,238.70 |
| Ramachandran, Seetha | Litigation – 2001 | $789 | 1.40 | $1,104.60 |
| Rappaport, Lary Alan | Litigation – 1979 | $789 | 279.70 | $220,683.30 |
| Ratner, Stephen L. | Litigation – 1975 | $789 | 183.90 | $145,097.10 |
| Richman, Jonathan E. | Litigation – 1984 | $789 | 208.80 | $164,743.20 |
| Rosen, Brian S. | BSGR&B – 1983 | $789 | 725.10 | $572,103.90 |
| Triggs, Matthew | Litigation – 1990 | $789 | 152.00 | $119,928.00 |
| Vermal, Ana | Litigation – 2001 | $789 | 6.10 | $4,812.90 |
| Waxman, Hadassa R. | Litigation – 2001 | $789 | 2.20 | $1,735.80 |
| Weise, Steven O. | Corporate – 1974 | $789 | 43.50 | $34,321.50 |
| **Total for Partners:** | | | **4,260.90** | **$3,361,850.10** |
| *SENIOR COUNSEL* | | | | |
| Alonzo, Julia D. | Litigation – 2009 | $789 | 258.90 | $204,272.10 |
| Hackett, Michael R. | Litigation – 2009 | $789 | 2.30 | $1,814.70 |
| Roberts, John E. | Litigation – 2009 | $789 | 295.40 | $233,070.60 |
| Roche, Jennifer L. | Litigation – 2007 | $789 | 58.40 | $46,077.60 |
| **Total for Senior Counsel:** | | | **615.00** | **$485,235.00** |
| *ASSOCIATES* | | | | |
| Bargoot, Alexandra V. | Litigation – 2016 | $789 | 43.10 | $34,005.90 |
| Blackwell, Brooke H. | Corporate – 2018 | $789 | 127.40 | $100,518.60 |

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Bowman, Courtney M. | Litigation – 2013 | $789 | 10.20 | $8,047.80 |
| Carino, Elisa M. | Litigation  – 2019 | $789 | 113.10 | $89,235.90 |
| Chalett, Zachary | Litigation  – 2017 | $789 | 251.70 | $198,591.30 |
| Clark, Brandon C. | Litigation – 2014 | $789 | 0.20 | $157.80 |
| Cushing, Blake R. | Litigation  – 2018 | $789 | 210.20 | $165,847.80 |
| Dalsen, William D. | Litigation – 2011 | $789 | 3.50 | $2,761.50 |
| Desai, Rucha | Litigation – 2017 | $789 | 75.30 | $59,411.70 |
| Desatnik, Daniel S. | BSGR&B – 2016 | $789 | 20.30 | $16,016.70 |
| Esses, Joshua A. | Corporate  – 2017 | $789 | 247.20 | $195,040.80 |
| Fishkind, Peter | Litigation – 2018 | $789 | 96.30 | $75,980.70 |
| Fiur, Seth | Litigation – 2014 | $789 | 0.80 | $631.20 |
| Friedman, Amelia A. | Litigation – 2013 | $789 | 130.70 | $103,122.30 |
| Habenicht, Yomarie S. | Tax – 2017 | $789 | 21.20 | $16,726.80 |
| Jones, Erica T. | Litigation – 2018 | $789 | 4.70 | $3,708.30 |
| Kim, Mee R. | Litigation – 2016 | $789 | 283.10 | $223,365.90 |
| Kline, Emily H. [8] | Litigation – 2019 | $789 | 21.00 | $16,569.00 |
| Kowalczyk, Lucas | Litigation – 2017 | $789 | 168.30 | $132,788.70 |
| Ma, Steve | BSGR&B – 2014 | $789 | 336.50 | $265,498.50 |
| Markofsky, Lisa B. | Litigation – 2005 | $789 | 84.20 | $66,433.80 |
| Mazurek, Carl A. | Litigation – 2018 | $789 | 51.60 | $40,712.40 |
| Morris, Matthew J. | Litigation – 2000 | $789 | 79.30 | $62,567.70 |
| Omorogbe, Philip [9] | Corporate  – 2019 | $789 | 111.30 | $87,815.70 |
| Palmer, Marc C. | Litigation – 2018 | $789 | 62.90 | $49,628.10 |

[8] Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

[9] Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Pollick, Daniel C. | Corporate – 2018 | $789 | 5.90 | $4,655.10 |
| Rochman, Matthew I. | Litigation – 2010 | $789 | 95.90 | $75,665.10 |
| Rogoff, Corey I. | Litigation – 2019 | $789 | 0.20 | $157.80 |
| Sherman, Christine N. | Tax – 2019 | $789 | 37.00 | $29,193.00 |
| Silagi, Alex D. | Litigation – 2015 | $789 | 218.10 | $172,080.90 |
| Skellet, Alexandra K. | Litigation – 2003 | $789 | 16.10 | $12,702.90 |
| Stafford, Laura | Litigation – 2012 | $789 | 258.00 | $203,562.00 |
| Stevens, Elliot R. | BSGR&B – 2018 | $789 | 246.70 | $194,646.30 |
| Theodoridis, Chris | BSGR&B – 2011 | $789 | 103.60 | $81,740.40 |
| Vora, Hena M. | Litigation – 2018 | $789 | 113.00 | $89,157.00 |
| Wertheim, Eric R. [10] | Litigation – 2019 | $789 | 2.30 | $1,814.70 |
| Wolf, Lucy C. | Litigation – 2017 | $789 | 150.80 | $118,981.20 |
| Zerjal, Maja | BSGR&B – 2012 | $789 | 572.10 | $451,386.90 |
| **Total for Associates:** | | | **4,373.80** | **$3,450,928.20** |
| *E-DISCOVERY ATTORNEYS* | | | | |
| Ike, Yvonne O. | Professional Resources – 2009 | $390 | 60.20 | $23,478.00 |
| Kay, James | Professional Resources – 1978 | $390 | 15.60 | $6,084.00 |
| **Total for e-Discovery Attorneys:** | | | **75.80** | **$29,562.00** |
| *LAW CLERKS* | | | | |
| Kline, Emily H. [11] | Litigation Law Clerk – N/A | $270 | 1.50 | $405.00 |

---

[10] Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

[11] Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Muller, Ariella E. | Litigation Law Clerk – N/A | $270 | 8.60 | $2,322.00 |
| Omorogbe, Philip[12] | Corporate Law Clerk – N/A | $270 | 320.00 | $86,400.00 |
| Sosa, Javier F. | Litigation Law Clerk – N/A | $270 | 31.60 | $8,532.00 |
| Wertheim, Eric R.[13] | Litigation Law Clerk – N/A | $270 | 11.90 | $3,213.00 |
| **Total for Law Clerks:** | | | **373.60** | **$100,872.00** |
| *PARAPROFESSIONALS* | | | | |
| Cooper, David C. | Corporate Paralegal – N/A | $270 | 44.00 | $11,880.00 |
| Cordova-Pedroza, Christian | Labor & Employment Paralegal – N/A | $270 | 2.00 | $540.00 |
| Cupplo, Sherri | Professional Resources – N/A | $270 | 0.30 | $81.00 |
| Dillon, Emma K. | Litigation Paralegal – N/A | $270 | 3.20 | $864.00 |
| Elsner, Rebecca R. | Litigation Paralegal – N/A | $270 | 2.80 | $756.00 |
| Geary, Laura M. | Litigation Paralegal – N/A | $270 | 197.30 | $53,271.00 |
| Henderson, Laurie A. | Professional Resources – N/A | $270 | 4.00 | $1,080.00 |
| Infante, Elle M. | Litigation Paralegal – N/A | $270 | 3.00 | $810.00 |
| King, Charles H. | Litigation Paralegal – N/A | $270 | 50.20 | $13,554.00 |

---

[12] Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

[13] Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Klock, Joseph | Professional Resources – N/A | $270 | 0.20 | $54.00 |
| Miller, Tiffany | Labor & Employment Paralegal – N/A | $270 | 7.80 | $2,106.00 |
| Monforte, Angelo | Litigation Paralegal – N/A | $270 | 181.20 | $48,924.00 |
| Petrov, Natasha | BSGR&B Paralegal – N/A | $270 | 98.90 | $26,703.00 |
| Rothschild, Claire | Labor & Employment Paralegal – N/A | $270 | 2.10 | $567.00 |
| Silvestro, Lawrence T. | Litigation Paralegal – N/A | $270 | 198.70 | $53,649.00 |
| Supronik, Lucasz | Professional Resources – N/A | $270 | 0.90 | $243.00 |
| Sutherland, Julia L. | Litigation Paralegal – N/A | $270 | 251.40 | $67,878.00 |
| Tarrant, Christopher M. | BSGR&B Paralegal – N/A | $270 | 404.40 | $109,188.00 |
| Volpicello, Alexander J. | Litigation Paralegal – N/A | $270 | 6.70 | $1,809.00 |
| Wizner, Eamon | Litigation Paralegal – N/A | $270 | 25.90 | $6,993.00 |
| Wolf, Joseph P. | Litigation Paralegal – N/A | $270 | 63.20 | $17,064.00 |
| **Totals for Paraprofessionals:** | | | **1,548.20** | **$418,014.00** |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys, Law Clerks, and Paraprofessional Totals:** | **11,247.30** | **$7,846,461.30** |

10

**Schedule 3**

**Summary of Professional Services Rendered by Project
Category for the Period February 1, 2019 through May 31, 2019**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 201 | Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants | 448.30 | $353,085.90 |
| 202 | Legal Research | 328.50 | $230,018.70 |
| 203 | Hearings and Other Non-Filed Communications with the Court | 52.90 | $41,738.10 |
| 204 | Communications with Claimholders | 224.40 | $176,013.60 |
| 205 | Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities | 21.80 | $17,200.20 |
| 206 | Documents Filed on Behalf of the Board | 2,080.10 | $1,508,549.10 |
| 207 | Non-Board Court Filings | 227.30 | $178,976.40 |
| 208 | Stay Matters | 109.30 | $73,626.00 |
| 210 | Analysis and Strategy | 2,651.30 | $2,042,827.20 |
| 211 | Non-Working Travel Time | 36.40 | $28,719.60 |
| 212 | General Administration | 1,382.20 | $380,418.00 |
| 213 | Labor, Pension Matters | 86.70 | $68,406.30 |
| 214 | Legal/Regulatory Matters | 7.00 | $5,523.00 |
| 215 | Plan of Adjustment and Disclosure Statement | 1,691.30 | $1,326,131.70 |
| 216 | Confirmation | 6.10 | $4,812.90 |
| 217 | Tax | 87.00 | $68,643.00 |
| 218 | Employment and Fee Applications | 261.60 | $126,839.70 |
| 219 | Appeal | 1,519.70 | $1,195,617.90 |
| 220 | Fee Applications for Other Parties | 25.40 | $19,314.00 |
| | **Total for All Project Categories:** | **11,247.30** | **$7,846,461.30** |

**Schedule 4**

**Summary of Actual and Necessary Expenses Incurred
for the Period February 1, 2019 through May 31, 2019**

| EXPENSE CATEGORY | AMOUNTS |
|---|---|
| Airplane | $6,676.47 |
| Court Reporting Service | $238.58 |
| Data Base Search Services | $193.79 |
| Food Service/Conference Dining | $11,505.65 |
| Lexis/Westlaw | $135,811.00 |
| Litigation Support/Docketing | $4,011.29 |
| Local Meals | $288.62 |
| Lodging | $6,075.91 |
| Meals/Dinner Voucher | $79.21 |
| Messenger/Delivery | $156.71 |
| Other Database Research | $1,534.90 |
| Out Of Town Meals | $194.00 |
| Out Of Town Transportation | $1,239.63 |
| Outside Reproduction | $88.82 |
| Practice Support Vendors | $73,772.38 |
| Printing, Binding, Etc. | $1,446.17 |
| Reproduction | $10,000.50 |
| Taxi, Carfare, Mileage And Parking | $472.18 |
| Taxicab/Car Services | $618.26 |
| Telephone | $280.00 |
| Trial Transcriptions | $394.00 |
| **Total:** | **$255,078.07** |

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | **BILLED** <br><br> **Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, *excluding bankruptcy*** | **BILLED** <br><br> **In this fee application[14]** |
| Partners | $1,189 | $789.00 |
| Senior Counsel | $989 | $789.00 |
| Associates (7 or more years since first admission) | $900 | $789.00 |
| Associates (4-6 years since first admission) | $845 | $789.00 |
| Associates (1-3 years since first admission) | $665 | $789.00 |
| e-Discovery Attorneys | $723 | $390.00 |
| Law Clerks | $560 | $270.00 |
| Paraprofessionals | $314 | $270.00 |
| **All Timekeepers Aggregated:** | **$872** | **$697.63** |

---

[14] As detailed in the Fifth Interim Application, as of January 1, 2019, Proskauer's rates under the Engagement Letter increased from $759 to $789 per hour for attorneys, and $260 to $270 per hour for paraprofessionals. Additionally at that time, with the client's knowledge and permission, Proskauer created a new rate class, e-Discovery Attorney, with the rate of $390 per hour. Rates have not increased during this Compensation Period.

**Estimated Hearing Date**: October 30, 2019 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: October 10, 2019 at 4:00 p.m. (Atlantic Standard Time)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |

### SIXTH INTERIM FEE APPLICATION OF PROSKAUER ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE DEBTOR, THE COMMONWEALTH OF PUERTO RICO, FOR THE PERIOD FEBRUARY 1, 2019 THROUGH MAY 31, 2019

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "FOMB") as representative of the Commonwealth of Puerto Rico (the "Debtor" or "Commonwealth") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this sixth interim application (the "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016-1 of the Local

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.).

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3] The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III Case and does not address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf of other Title III debtors, or (b) outside the Title III process.

[4] The Bankruptcy Rules are made applicable to the Debtor's Title III Case by PROMESA section 310.

Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this Court's *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 3269] (the "Interim Compensation Order"), for (a) allowance of interim compensation for professional services performed by Proskauer for the period commencing February 1, 2019 through and including May 31, 2019 (the "Compensation Period") in the amount of **$8,552,642.47**, which is comprised of (i) fees for professional services rendered in the amount of $7,846,461.30, and (ii) the Gross-Up Amount in the amount of $706,181.17;[5] and (b) reimbursement of its actual and necessary expenses in the amount of **$255,078.07** incurred during the Compensation Period.  In support of the Application, Proskauer respectfully avers as follows:

### Jurisdiction

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief requested herein are PROMESA sections 316 and 317.

---

[5] Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

**Background**

4.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section [304] of [PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court." PROMESA § 315(a), (b).

6.      On September 30, 2016, the Oversight Board designated the Debtor as a "covered entity" under PROMESA section 101(d).

7.      On November 25, 2016, the Oversight Board retained Proskauer at substantial discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5** above.

8.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "Debtor's Title III Case").  Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's representative in the Debtor's Title III Case.

9.      Background information regarding the Debtor and its instrumentalities, and the commencement of the Debtor's Title III Case, is contained in the *Notice of Filing of Statement of Oversight Board in Connection with PROMESA Title III Petition* [ECF No. 1], attached to the Commonwealth's Title III petition.

3

10.     On December 15, 2017, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period May 3, 2017 through September 30, 2017* [ECF No. 2068] (the "First Interim Application").

11.     On April 9, 2018, Proskauer filed the *Second Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period October 1, 2017 through January 31, 2018* [ECF No. 2868] (the "Second Interim Application").

12.     On July 16, 2018, Proskauer filed the *Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period February 1, 2018 through May 31, 2018* [ECF No. 3588] (the "Third Interim Application").

13.     On November 16, 2018, Proskauer filed the *Fourth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period June 1, 2018 through September 30, 2018* [ECF No. 4280] (the "Fourth Interim Application").

14.     On May 21, 2019, Proskauer filed the *Fifth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative*

*of the Debtor, the Commonwealth of Puerto Rico, for the Period October 1, 2018 through January 31, 2019* [ECF No. 7045] (the "Fifth Interim Application").

15.     On April 30, 2019, Proskauer served on the Notice Parties (as defined in the Interim Compensation Order) its twenty-third monthly fee statement for the period February 1, 2019 through February 28, 2019.  On May 1, 2019, Proskauer served on the Notice Parties its twenty-fourth monthly fee statement for the period March 1, 2019 through March 31, 2019.  On May 30, 2019, Proskauer served on the Notice Parties its twenty-fifth monthly fee statement for the period April 1, 2019 through April 30, 2019.  On July 1, 2019, Proskauer served on the Notice Parties its twenty-sixth monthly fee statement for the period May 1, 2019 through May 31, 2019.

16.     In accordance with the Interim Compensation Order and as reflected in the foregoing summary, Proskauer has requested an aggregate payment of **$7,316,893.24** (payment of ninety percent (90%) of the compensation sought and reimbursement of one-hundred percent (100%) of expenses incurred) and has received **$7,316,893.24** with respect to fee statements filed during the Compensation Period.

### **Summary of Services Rendered by Proskauer During the Compensation Period**

17.     The instant Application is Proskauer's sixth application for interim compensation in the Debtor's Title III Case.  To make more efficient for the Court and other readers the review of Proskauer's fee applications in all the pending Title III cases, paragraphs 17 through 21 of the instant Application, and the corresponding paragraphs in each of Proskauer's sixth interim fee applications in the other pending Title III cases, are the same and cover the principal activities in all the Title III cases.

18.     In the Compensation Period Proskauer serviced many new Oversight Board projects, but also continued the significant progress achieved during the preceding interim periods:

- In the first interim period, Proskauer transitioned the Commonwealth and certain of its instrumentalities to Title III, and, among other things, proposed and negotiated a mechanism to resolve the Commonwealth-COFINA dispute over which entity owns billions of dollars of sales and use tax revenues, and successfully defended against attempts by creditors to (a) seize the toll revenues HTA needed to maintain the Commonwealth's transportation system and (b) seize PREPA and its revenues by putting PREPA in the hands of a receiver.

- In the second interim period, in the face of the devastation wrought by Hurricanes Irma and Maria, Proskauer worked with the Oversight Board's officers and other professionals to assess the situation, take actions to ensure the provision of basic services, and reformulate restructuring initiatives to reflect the changing economic landscape. Proskauer also successfully defended against numerous creditor efforts to enjoin the Oversight Board from proceeding toward a plan of adjustment based on the certified fiscal plan and to seize many revenue streams.

- In the third interim period, Proskauer secured emergency authorization for the Commonwealth to lend $300 million to PREPA on a superpriority basis, despite significant opposition by creditor groups, and continued its leading role in assisting the Oversight Board with the development, certification, and defense of revised fiscal plans that provide the blueprint for Puerto Rico's future prosperity and fiscal responsibility. Proskauer also successfully defended against numerous creditor efforts to delay or frustrate the debtors' restructurings during these periods.

- In the fourth interim period, Proskauer continued forging paths to restructure Puerto Rico's debt, representing the Oversight Board as the Administrative Supervisor of the Government Development Bank for Puerto Rico's ("GDB") Title VI qualifying modification, representing the Oversight Board in negotiations seeking to restructure a major portion of PREPA's debt, and continuing to work through negotiations related to (and eventually resolving) the Commonwealth-COFINA dispute. COFINA and GDB alone account for over $20 billion of Puerto Rico's $74 billion in bond debt, and their successful restructuring are significant building blocks for the Oversight Board to accomplish its overall mandate to achieve fiscal responsibility and access to capital markets for Puerto Rico. Proskauer also vigorously and successfully protected the Oversight Board's fiscal plan and budgetary powers in adversary proceedings commenced by the Governor and Legislature challenging the Oversight Board's authority, among other critical efforts in litigation during the fourth interim period.

- In the fifth interim period, Proskauer continued its leading role in assisting the Oversight Board with the development and certification of revised fiscal plans. Proskauer also represented the Oversight Board in PREPA's Title III case, leading the defense against a renewed motion seeking to lift the stay to allow for the appointment of a receiver for PREPA, and dedicating significant effort to forward negotiations with a substantial number of PREPA bondholders to draft and finalize a definitive restructuring support agreement. Proskauer also drafted appellate briefs

6

and presented oral argument before the United States Court of Appeals for the First Circuit concerning creditors' appeals seeking to reverse decisions protecting HTA and PREPA from creditor attempts to seize their revenues. Proskauer also worked with several of the Title III Debtors and their related advisors in opposing a multitude of motions seeking to lift the automatic stay and otherwise hamper the debtors' restructuring. Lastly, Proskauer counseled the Oversight Board as it engaged with the Commonwealth's various creditors, stakeholders and professionals in mediations and negotiations related to the Commonwealth's restructuring, and has devoted significant time to research and develop strategies to ensure the debtors exit Title III as soon as possible.

19.     In the instant Compensation Period, Proskauer also completed the briefing for the First Circuit to defend against the now former Governor's appeal and researched and prepared for new litigation to nullify joint resolutions and other laws enacted in violation of PROMESA from the Oversight Board's perspective.   Additionally, Proskauer negotiated new restructuring agreements with various creditor groups and unions, and drafted what would be the major portions of the proposed plan of adjustment and proposed disclosure statement.   In the Commonwealth's Title III case, among many other achievements, Proskauer counseled the Oversight Board through many statutory and constitutional issues related to the development and certification of a fiscal plan and various budgets for the Commonwealth and its instrumentalities.  Moreover, Proskauer advised the Oversight Board as it brought, jointly with the UCC, a challenge to alleged liens asserted by holders of general obligation bonds of the Commonwealth.  In the ERS Title III case, Proskauer defended against efforts by certain secured creditors to lift the automatic stay to access revenues critical to ERS's restructuring.  In the PREPA Title III case, Proskauer made strides in defending against a renewed motion brought by monoline insurers of PREPA bonds to lift PREPA's stay to appoint a receiver, while simultaneously negotiating with some of the moving parties.  In addition, Proskauer finalized the hard-negotiated Definitive Restructuring Agreement for PREPA with a substantial majority of PREPA's bondholders, and sought court approval for the PREPA RSA by filing a motion under Bankruptcy Rule 9019, and several supplemental memoranda of law in

support of it.  In the HTA Title III case, among other matters, Proskauer represented the Oversight

Board in its joint filing with the UCC of a challenge to the nature, extent and scope of purported

liens securing HTA bondholders' claims.   Throughout the Compensation Period, Proskauer

continued to object to defective claims against the debtors, provided on-going legal assistance to

the Oversight Board, and negotiated with various creditors, stakeholders, government parties and

other parties in interest in furtherance of each of the debtors' respective restructurings, and,

ultimately, helped the Oversight Board progress toward its PROMESA prescribed mandate.

20.     Some of Proskauer's notable undertakings during this Compensation Period in

furtherance and defense of the Oversight Board's mandate under PROMESA of returning the

Commonwealth to fiscal responsibility and access to capital markets include:

- Certification of New Fiscal Plans and Budgets. Proskauer played an instrumental and extensive role in the development of new certified fiscal plans and budgets for the Commonwealth and its instrumentalities to reflect and account for ongoing developments in Puerto Rico. Proskauer provided counsel to the Oversight Board in this regard as the Oversight Board and its financial advisors rigorously analyzed data and assessed the economic and structural impact of the proposed fiscal plans. Throughout, Proskauer provided on-going assistance with emergent legal issues, and helped with the drafting of the new fiscal plans and budgets to achieve PROMESA's purpose of instilling fiscal responsibility and restoring the island's access to capital markets.

- Claim Objections. Pursuant to the Bar Date Orders [ECF Nos. 2521 and 3160], approximately 170,378 claims were filed against the Debtors and logged by Prime Clerk. Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors. Of the proofs of claim filed, over 3,000 claims were filed in relation to COFINA, totaling approximately $10.1 trillion in asserted claims; approximately 55,000 claims were filed in relation to, or reclassified to be asserted against, ERS, totaling approximately $10.2 trillion in asserted claims; over 2,000 claims were filed in relation to HTA, totaling approximately $83.1 billion in asserted claims; and approximately 108,000 claims were filed against the Commonwealth, totaling approximately $33.2 trillion in asserted claims. Upon review and further assessment by Proskauer, it became clear that many of these claims need not have been filed at all, or suffered from some other flaw, such as improperly identifying one of the Debtors, or being duplicative of other proofs of claim. In connection with these claims, Proskauer, working with other professionals, filed a total of 15 omnibus objections and 9 individual objections between January 31, 2019 and May 31, 2019.

Proskauer spent a significant amount of time and effort preparing and filing these objections, as well as reviewing responses to various objections, negotiating resolutions to the objections with creditors, preparing and filling replies in support of their objections, and attending several related hearings. As a result of Proskauer's efforts, between January 31, 2019 and May 31, 2019 approximately 2,692 claims were expunged and 38 claims were either partially expunged or moved to another Debtor.

- ERS Lift Stay.  During the Compensation Period, and in connection with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [Case No. 17-3566, ECF No. 289] (the "ERS Lift Stay  Motion"),  Proskauer spent numerous hours conducting research and analyses, as well as drafting objections, responses and discovery requests in connection with (i) the ERS Lift Stay Motion; (ii) an urgent motion by certain secured creditors to expedite consideration of the ERS Lift Stay Motion; and (iii)  and motions to compel concerning the ERS Lift Stay Motion. Additionally, Proskauer (i) communicated with counsel and other advisors to AAFAF on multiple adequate protection related discovery issues and developed further discovery strategy; (ii) communicated with bondholders' counsel on multiple discovery related issues, including motions to compel production of documents, confidentiality and privilege, search terms for document collection and review, and depositions scope and scheduling, and (iii) prepared for and participated in meet-and-confer sessions with bondholders' counsel on multiple adequate protection related discovery issues as well as attended various hearings in connection with discovery issues.

- First Circuit Appeals. During the Compensation Period, Proskauer also defended and litigated several matters before the First Circuit. The following is a summary of major appeals in which Proskauer served as lead counsel for the Title III Debtors during the Compensation Period:

  (1) AMP v. Commonwealth of Puerto Rico, et al., Case No. 18-2194: This appeal stems from a notice of appeal of the *Memorandum Order Denying Motion of Official Committee of Unsecured Creditors for Entry of an Order Enforcing the Automatic Stay* [Case No. 17-3283, ECF No. 3941], denying the Autonomous Municipality of Ponce's ("AMP") request to modify the stay because AMP failed to demonstrate cause.  AMP filed its opening brief on March 18, 2019. Proskauer researched, prepared and filed a brief in opposition, on behalf of the Oversight Board, on May 1, 2019. On June 5, AMP filed its reply.  Oral argument was conducted on September 11, 2019, outside this Compensation Period.

  (2) Rossello Nevares, et al v. FOMB, et al., Case No. 18--2154: This appeal stems from a notice of appeal of the *Opinion and Order Granting in Part Defendants' Motion to Dismiss the Complaint*, ECF No. 33 in Adv. Proc. No. 18-00080, challenging the Court's holding "[t]he power bestowed on the Oversight Board by Section 205(b)(1)(K) of PROMESA allows the Oversight Board to make binding policy choices for the Commonwealth, notwithstanding the Governor's rejection

of Section 205 recommendations . . . ." [6] Proskauer finalized and filed the Appellee's brief on behalf of the FOMB on May 3, 2019. Additionally, Proskauer researched the issues at hand and prepared for oral arguments before the First Circuit, which took place on July 24, 2019.

(3) Gracia Gracia et al. v. Commonwealth of Puerto Rico, Case No. 18-1463: On February 7, 2018, Gracia-Gracia filed a motion to modify the automatic stay to allow the enforcement of the entered settlements. *See Motion Requesting Relief of Stay under 362 (D)(1) of the Bankruptcy Code* [Case No. 17-3283, ECF No. 2434]. The Title III Court granted the request in part, modifying the automatic stay to permit the notice and claim submission and review process, but denying the request in all other respects, including the payment of reimbursements and attorneys' fee awards. Plaintiffs appealed and argued the duplicate premiums held in the Commonwealth's reserve account, and subject to the automatic stay, belong to the class members and are not the property of Debtors. The Debtors disagreed with this contention. The appeal was argued to the First Circuit on June 5, 2019, and awaits decision.

(4) Rene Pinto-Lugo et al. and Manuel Natal-Albelo v. Commonwealth, Case No. 19-1181; Elliott, Hein and Dvores v. Commonwealth, Case No. 19-118; and Cooperativas v. COFINA, Case No. 19-1391: On February 22, 2019, appellants (i) Rene Pinto-Lugo and Manuel Natal-Albelo (Rene Pinto-Lugo et al. and Manuel Natal-Albelo v. Commonwealth, Case No. 19-1181 (1st Cir.)) ("Pinto-Lugo"), (ii) Mark Elliott, Lawrence B. Dvores, and Peter C. Hein (Elliott, Hein and Dvores v. Commonwealth, Case No. 19-1182 (1st Cir.)) (the "Elliott Appellants"), and (iii) Cooperativa de Ahorro y Credito Dr. Manuel Zeno Gandia, Cooperativa de Ahorro y Credito de Juana Diaz, and Cooperativa de Ahorro y Credito de Rincon (Cooperativas v. COFINA, Case No. 19-1391 (1st Cir.) (the "Cooperativas Appellants") filed separate appeals of the order confirming the COFINA Plan of Adjustment. On June 28, 2019 with respect to the Cooperativas appeal and on April 12, 2019 with respect to the Pinto-Lugo and Hein appeals, the Oversight Board filed a motion to dismiss each appeal as equitably moot, arguing that since the COFINA Plan of Adjustment has been fully consummated and relied upon by innocent third parties, granting the appellants' request to overturn the confirmation of the plan would be impractical and inequitable. In particular, COFINA's obligations under its old bonds have been canceled, new bonds have been issued and have been traded in public markets, distributions have been made to creditors, and litigations have been dismissed with prejudice. On the same day, the COFINA Senior Bondholders' Coalition filed a motion to intervene in the appeal in support of the Oversight Board.

(5) Centro de Salud Familiar J.P.F., et al., v. Commonwealth of Puerto Rico, Case No. 19-1189: On April 2, 2018, Magistrate Judge Dein, at ECF No. 55 in Adv. Proc. No. 17-00227, issued a report and recommendation on the Commonwealth's

---

[6] *Hon. Ricardo Antonio Rosselló Nevares et al. v. Oversight Board, et al., (In re The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico)*, Adv. Proc. No. 18-080-LTS in 17 BK 3283-LTS (D.P.R., August 7, 2018) at 25.

motion for abstention and remand, recommending that the motion be granted, the case be remanded back to the Commonwealth Court and the stay be lifted to allow plaintiffs to proceed to judgment in the Commonwealth Court. Plaintiffs objected to the recommendation and report.   On July 10, 2018, the Title III Court entered a memorandum order overruling objections to and adopting the April 2, 2018 report and recommendation, and granting the Commonwealth's motion for abstention and directed the case to be remanded.  On August 8, 2018, plaintiffs appealed the Title III Court's order to the First Circuit, which was docketed on February 25, 2019.  Plaintiffs' opening brief on appeal is due September 6, 2019.

- In addition, the below is a summary of major appeals in which Proskauer received favorable judgments before the First Circuit for the Debtors and the Oversight Board during the Compensation Period:

    (1) Mendez-Nunez v. FOMB, et al., Case No. 18-1773: This appeal stems from a notice of appeal of the Opinion and Order Granting Defendants' Motion to Dismiss the Plaintiffs' Complaint, ECF No. 46 in Adv. Proc. No. 18-00081, dismissing plaintiffs' challenges to the Oversight Board's fiscal year 2019 certified budget. During the fifth interim period, Proskauer researched, drafted, and filed Appellee's brief on behalf of the Oversight Board. Additionally, Proskauer devoted many hours to prepare for the oral arguments and research the issues on appeal. Oral argument took place on February 6, 2019. On February 22, 2019, the First Circuit issued an opinion affirming the Court's order dismissing the adversary proceeding.

    (2) Assured Guaranty Corporation, et al v. Commonwealth of Puerto Rico, et al., Case No. 18-1165:  This appeal stems from a notice of appeal of the Opinion and Order Granting Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(B)(1) and (B)(6), ECF No. 125 from Adv. Proc. No. 17-00155.  During the fifth interim period, Proskauer researched the issues on appeal as well as prepared for oral arguments, which occurred on November 5, 2018 before the First Circuit.  On March 26, 2019, the First Circuit issued its opinion in which the First Circuit affirmed this Court's opinion.

    (3) Aurelius Capital Master, Ltd. et al. v. Commonwealth of Puerto Rico, et al., Case No. 18-1108: This appeal stems from a notice of appeal of the Opinion and Order Granting Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P 12(b)(a) and 12(B)(b), ECF No. 124 from Adv. Proc. No. 17-00189. Proskauer prepared for oral argument before the First Circuit, which took place on November 5, 2018.  On March 26, 2019 the First Circuit issued its opinion in which the First Circuit affirmed this Court's order dismissing the adversary complaint.

- PREPA Renewed Receiver Motion. Following the First Circuit's ruling on the appeal of the initial PREPA receiver motion, on October 3, 2018, National, Assured, and Syncora filed the *Motion of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief From the Automatic Stay to Allow Movants to Enforce Their Statutory Right to Have a Receiver Appointed* [Case No. 17-4780, ECF No. 982] (the "Renewed Receiver Motion"), seeking to lift the automatic stay to seek the appointment of a receiver. In the Renewed Receiver

Motion, National, Assured, and Syncora assert, among other things, that the bondholders' liens encompass all revenues and that their collateral package includes various contractual covenants contained in the Trust Agreement. During the Compensation Period, Proskauer prepared an opposition and related filings defending against the Renewed Receiver Motion and its potentially devastating consequences to PREPA and Puerto Rico as a whole. Proskauer has also agreed to or successfully obtained numerous extensions of the response deadlines for the Renewed Receiver Motion to facilitate ongoing negotiations with PREPA's bondholders.  On May 9, 2019, the Court entered an order staying the briefing on the Renewed Receiver Motion until after the Court's ruling on (i) the PREPA 9019 Motion and (ii) a related motion to dismiss the Renewed Receiver Motion.  On May 10, 2019, the Oversight Board and AAFAF filed a motion to dismiss the Renewed Receiver Motion [Case No. 17-4780, ECF No. 1233] ("Motion to Dismiss").  Briefing on the Motion to Dismiss and PREPA 9019 Motion are currently ongoing.

- PREPA 9019 Motion.  During the Compensation Period, Proskauer employed significant resources researching, drafting and negotiating the terms of the PREPA 9019 Motion and on May 10, 2019 filed the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, And 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Case No. 17-4780, ECF No. 1235] (the "PREPA 9019 Motion").  The PREPA 9019 Motion seeks approval of certain settlements embodied in the Definitive Restructuring Support Agreement dated as of May 3, 2019, (the "RSA" or "Definitive RSA") by among (1) PREPA, (2) the Oversight Board, (3) AAFAF (PREPA, the Oversight Board, and AAFAF are sometimes collectively referred to herein as the "Government Parties"), (4) the members of the Ad Hoc Group of PREPA Bondholders, (5) any other persons who beneficially own or control Uninsured Bonds that are party to the RSA or execute a joinder to the RSA (the "Uninsured Supporting Holders"), and (5) Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively "Assured," Assured and the Uninsured Supporting Holders are collectively referred to herein as the "Supporting Holders," and the Supporting Holders collectively with Government Parties, the "RSA Parties"). Such settlements resolve, as and to the extent set forth in the RSA and the proposed order granting the PREPA 9019 Motion, (a) the claims asserted by the Supporting Holders and objections of the Government Parties thereto, (b) certain bondholder litigation against PREPA by all Supporting Holders, (c) the Supporting Holders' ability to exercise rights under the Trust Agreement or other applicable law, and (d) the Supporting Holders' right to receive any current payments on certain PREPA bonds. The proposed settlements represent a significant milestone in PREPA's Title III case and the overall restructuring of PREPA. Pursuant to the RSA, the creditors (absent future defaults) settle their alleged secured claims and rights asserted thereunder, including requests for stay relief, in exchange for PREPA agreeing to allow their claims in less than their full face amounts. In addition, the creditors agree to support, and PREPA agrees to propose, a plan under which Supporting Holders will exchange their bonds for securitization bonds that are secured by a fixed and predictable transition charge.

- UTIER v. PREPA. In connection with Adversary Case No. 17-229 (UTIER v. P.R. Elec. Power Auth., et al., Adv. Proc. No. 17-0229), Proskauer engaged in extensive discovery

with UTIER, the Puerto Rico Department of Justice, and the Puerto Rico Electric Power Authority. The matter required intensive efforts to gather and analyze documents from multiple sources in order to evaluate UTIER's claims and the Commonwealth's and PREPA's defenses. Over the period covered by the application, Proskauer also analyzed factual and expert discovery that may be needed to defend the case.

21.    In addition to the above, one of Proskauer's primary roles has been the defense of the Title III Debtors' interests in numerous, multi-billion-dollar adversary proceedings and contested matters brought by various bondholders, monoline insurers, and unions. Proskauer has also upheld the Oversight Board's power and responsibilities as it pertains to certifying fiscal plans and budgets, and issuing restructuring certifications. Such matters seek, among other things, to enjoin the Oversight Board from enforcing fiscal plans and budgets, consummating a Title VI Restructuring under PROMESA, and proposing a plan of adjustment consistent with the Commonwealth's certified fiscal plan. Numerous parties also seek to compel turnovers of billions of dollars of revenues critical to the Commonwealth's viability and the provision of public services on the island in the wake of the hurricanes. Proskauer has defended against these challenges, many of first impression, involving, among other things, the constitutionality of various PROMESA provisions, the correct interpretation of various sections of PROMESA and the Bankruptcy Code, and the validity of certain creditors' asserted liens. The following is a summary of major litigation matters in which Proskauer served as lead counsel for the Title III Debtors during this Compensation Period:

- The Financial Oversight and Management Board for Puerto Rico v. Hon. Thomas Rivera-Schatz, Adv. Proc. No. 19-00014: On November 26, 2018, the Oversight Board, pursuant to PROMESA § 104(c)(2), requested bank statements and other financial information from the Puerto Rico Senate and other government branches and instrumentalities. All of the recipients complied with the request except for the Puerto Rico Senate, which responded, in a letter dated February 6, 2019, by contending that it was not obligated to produce the requested documents. The Oversight Board then sued the President of the Puerto Rico Senate, Thomas Rivera-Schatz, on February 14, 2019, seeking a declaration that the Senate is required to produce such information, and an injunction and writ of mandamus requiring it to

do so.  On April 4, 2019, the parties filed a *Joint Stipulation of Dismissal Without Prejudice*, [Case No. 19-AP-14, ECF No. 12], informing the court that since the Oversight Board filed its complaint, the Senate provided the Oversight Board and its advisors the information requested in November 26, 2018 letter, the Senate instructed the financial institution(s) holding its funds to provide the requested information to the Oversight Board and its advisors on no less than a monthly basis, and the Senate agreed to provide information regarding restrictions on funds in its bank accounts. On April 8, 2019, the adversary proceeding was closed.

- <u>Cooperativa de Ahorro y Credito Vegabajena v. The Financial Oversight and Management Board of the Commonwealth of Puerto Rico</u>, Adv. Proc. No. 19-00028: On March 14, 2019, credit union, Cooperativa de Ahorro y Credito Vegabajena, filed an action against ERS and the FOMB alleging it had a statutory (or other) liens against employee contributions made to ERS. Plaintiff alleged its borrowers had assigned the liens to it.  Plaintiff claimed the statutory lien arose under Puerto Rico law, which allowed financial service entities throughout the Commonwealth to enter into individual loan agreements with Commonwealth employees who participated in ERS.  The credit union sought to enforce its alleged lien against employee contributions after certain of their borrowers defaulted on their loans.  Plaintiff had previously filed a motion to lift the automatic stay to enforce its alleged lien, which the Title III Court denied.  During the Compensation Period, on May 3, 2019, ERS filed a motion to dismiss, arguing the employee-borrowers could not have assigned their employee contributions to plaintiff because the employees did not have a retained right in contributions paid to ERS, and that even if Plaintiff had a direct claim to the contributions, any statutory lien was not enforceable against the employee contributions because the property was not traceable to the particular employee-borrowers.  On May 29, 2019, Plaintiff filed its opposition.  Proskauer has since filed a reply, on June 20, 2019.  Plaintiff filed a reply in support of its opposition to the Debtors' motion to dismiss on July 16, 2019.

- <u>Puerto Rico Electric Power Authority v. Union de Trabajadores de la Industria Electrica & Riego.</u>, Adv. Proc. No. 19-00028: Petitioner UTIER filed the case, *Unión de Trabajadores de la Industria Eléctrica y Riego (UTIER) v. Ing. José F. Ortiz Vázquez y Autoridad de Energía Eléctrica* ("*UTIER v. Ortiz Vazquez*") in the Puerto Rico Court of First Instance, San Juan Superior Court on April 24, 2019. In their petition, UTIER alleges that respondents PREPA and its Executive Director Eng. Jose Ortiz Vazquez have made changes in deductibles and copayments for medical coverage under a plan UTIER negotiated with PREPA. This change allegedly increased the amounts UTIER's members with certain medical conditions must pay for healthcare and thereby allegedly fails to comply with duties prescribed in Commonwealth Laws 26-2017 and 28-2018. UTIER seeks a writ of mandamus ordering respondents to comply with the alleged ministerial duties provided for in Laws 26-2017 and 28-2018. On May 8, 2019, the Oversight Board removed *UTIER v. Ortiz Vazquez* to the United States District Court for the District of Puerto Rico. This matter remained ongoing at the end of this Compensation Period.

- <u>Challenges to Liens Asserted by Holders of GO Bonds</u>.[7] On May 2, 2019, the Oversight Board, jointly with the UCC, filed seven complaints against more than 450 defendants seeking declarations that holders of bonds issued or guaranteed by the Commonwealth have entirely unsecured claims (to the extent their claims are valid at all), and do not possess liens against any of the Commonwealth's property, including, without limitation, on (i) the Commonwealth's good faith, credit, and taxing power, (ii) the Commonwealth's "available resources" (as referenced in the Puerto Rico Constitution Article VI, section 8), (iii) certain taxes conditionally allocated to the Commonwealth's instrumentalities under Puerto Rico law, and (iv) property tax revenues authorized under Puerto Rico Act 83-1991. These adversary proceedings also seek judgments (i) declaring the Commonwealth's interest in its property is entitled to priority over any interest bondholders claim to possess in the Commonwealth's property, (ii) avoiding any liens bondholders claim to possess pursuant to the Bankruptcy Code's avoidance powers, and (iii) disallowing all secured claims filed against the Commonwealth by bondholders.[8]

- <u>Challenges to Liens of Existing HTA Bonds</u>.[9] On May 20, 2019, the Oversight Board, jointly with the UCC, filed four complaints against more than one hundred defendants seeking declarations that holders of bonds issued by HTA under HTA Resolutions do not possess security interests against anything other than HTA revenues that have been both received by HTA and deposited in certain accounts held with the HTA bond fiscal agent. These adversary proceedings also seek judgments (i) avoiding any security interests HTA bondholders are held to possess in such property pursuant to the Bankruptcy Code's avoidance powers, (ii) disallowing all secured claims filed against HTA by bondholders alleging security interests on such property, (iv) determining that any right HTA or HTA bondholders have to receive certain taxes or fees conditionally allocated to HTA has been preempted by PROMESA, and (v) declaring that any security interests in HTA's property ceased attaching to revenues received post-petition by virtue of section 552(a).[10]

- <u>The Financial Oversight and Management Board for Puerto Rico, as representative of Employees Retirement System of the Government of the Commonwealth of Puerto Rico v. Andalusian Global Designated Activity Company, et al.</u>, Adv. Proc.

---

[7] The various adversary proceedings challenging the purported liens of the GO Bonds have been docketed as adversary proceeding numbers 19-291, 19-292, 19-293, 19-294, 19-295, 19-296, and 19-297.

[8] On May 21, 2019, the Oversight Board and the UCC filed a joint motion seeking to (i) extend the deadlines to serve the defendants in these adversary proceedings and (ii) stay the adversary proceedings. On June 13, 2019, the Court partially granted the joint motion and granted the deadline to serve the defendants and stayed the adversary proceedings until September 1. On July 16, 2019, the parties filed a status report and competing proposed case management orders. On July 24, 2019, the Court issued an order staying the actions through November 30, 2019

[9] The various adversary proceedings challenging the purported liens of the Existing HTA Bonds have been docketed as adversary proceeding numbers 19-362, 19-363, 19-364, and 19-365.

[10] On May 21, 2019, the Oversight Board and the UCC filed a joint motion seeking to (i) extend the deadlines to serve the defendants in these adversary proceedings and (ii) stay the adversary proceedings. On June 13, 2019, the Court partially granted the joint motion and granted the deadline to serve the defendants and stayed the adversary proceedings until September 1. On July 16, 2019, the parties filed a status report and competing proposed case management orders. On July 24, 2019, the Court issued an order staying the actions through November 30, 2019

No. 19-00366, and The Financial Oversight and Management Board for Puerto Rico, as representative of Employees Retirement System of the Government of the Commonwealth of Puerto Rico v. Glendon Opportunities Fund, L.P., et al., Adv. Proc. No. 19-00367: On April 2, 2019, ERS filed a motion (the "Motion to Amend") [Adv. Proc. No. 17-00213, ECF No. 236], requesting the Title III Court grant ERS leave to file an amended adversary complaint to raise issues concerning the nature and extent of the security interests alleged and the proper method of perfection of any security interest, and that it determine whether Bankruptcy Code section 552(a) operates to prevent the ERS bondholders' asserted lien from attaching to Employers' Contributions received post-petition (the "552(a) Issue"). On May 6, 2019, the Title III Court denied in part and granted in part the Motion to Amend, granting ERS's request to determine the 552(a) Issue, but denying ERS's motion insofar as it sought leave to amend the complaint in its prior lien challenge, without prejudice to the filing of a new adversary complaint. On May 20, 2019, ERS and the UCC filed the two instant above-referenced adversary cases (the "Lien-Scope APs"). The Lien-Scope APs allege the ERS Bondholders do not hold valid and enforceable security interests in any of ERS' remaining assets or the proceeds thereof (other than the Accounts Receivable). On May 30, 2019, summonses were returned as executed. These matters remained ongoing at the end of this Compensation Period.

22.     As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings; (c) researched jurisprudence regarding legal and factual issues, including bankruptcy and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

23.     By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of (a) **$8,552,642.47**, as (i) compensation for professional services rendered in the amount of $7,846,461.30, and (ii) the Gross-Up Amount of $706,181.17; [11] and (b) **$255,078.07** as reimbursement for actual and necessary expenses incurred during the Compensation Period in connection with such professional services. Notably, the Application reflects aggregate voluntary reductions made during the Compensation Period to Proskauer's

---

[11]  Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

request for compensation and reimbursement of expenses in the amount of $94,306.20 and
$31,118.27, respectively, on top of the sizeable discount embedded in its engagement letter with
the Oversight Board, in which it fixed hourly rates at levels providing up to 45% discounts on the
hourly rates of its most senior partners.

24.     Proskauer maintains computerized records of the time spent by all Proskauer
attorneys and paraprofessionals in connection with the firm's representation of the Oversight Board
as representative of the Debtor.   Subject to redaction where necessary to preserve mediation
confidentiality, copies of the computerized records for the Compensation Period are attached hereto
as **Exhibit B**.

25.     Proskauer's budget and staffing plan for the Compensation Period are attached
hereto as **Exhibit D**.[12]

26.     Proskauer's summary of itemized time records for professionals and
paraprofessionals performing services for the Oversight Board with respect to the Debtor during
the Compensation Period is set forth on **Schedule 2**.  During the Compensation Period, Proskauer
billed the Oversight Board for time expended by attorneys based on a set rate of $789 per hour.
The professional services performed by Proskauer on behalf of the Oversight Board as
representative of the Debtor during the Compensation Period required an aggregate expenditure of
4,875.90 recorded hours by Proskauer's partners and senior counsel; 4,373.80 recorded hours by
associates; 75.80 recorded hours by e-Discovery attorneys; 373.60 recorded hours by law clerks;[13]
and 1,548.20 recorded hours by paraprofessionals.  As required by the Guidelines, **Exhibit C** to

---

[12] Budgets are only provided for matters Proskauer actually billed time to in a given month.  If no time was billed to a
given matter during the month, no monthly budget has been provided for that matter.

[13] Law clerks are incoming attorneys who have not yet been admitted or sworn into the bar.  Once admitted and sworn
into the bar, the timing of which varies on an individual- and jurisdictional-basis, such individuals are reclassified and
billed as associates beginning on the first day of the month following such admission.

this Application shows, for each Project Category (as defined below), a list of professionals who performed services in each Project Category and the aggregate recorded hours each professional incurred. In accordance with Guidelines paragraph C.3, Proskauer's blended hourly rates are disclosed in **Schedules 1** and **5**. The fees charged by Proskauer, as set forth in **Schedule 2**, are in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, as revised to reflect Proskauer's arrangement with the Oversight Board. The standard rates Proskauer charges for the services rendered by its professionals and paraprofessionals in these Title III cases have been reduced to reflect the unique circumstances of PROMESA and the position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents. **Schedules 2** and **5** show that the rates Proskauer charges on an hourly basis are below the competitive market rates for bankruptcy and non-bankruptcy matters charged by the other professionals representing the Commonwealth and statutory committees. No Proskauer rates are increased as a result of the geographic location of a bankruptcy case.

27.  All entries itemized in Proskauer's time records comply with the requirements set forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each a "Project Category"), (b) a description of each activity or service that each individual performed, and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services. Each Project Category is organized in accordance with Guidelines paragraph C.8.b. If a Project Category does not appear in a particular application, Proskauer did not bill time or expenses for that Project Category during the Compensation Period, but may bill time for that Project Category in the future.

18

**Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5**

28.    The following answers are provided in response to the questions set forth in

Guidelines paragraph C.5:

**Question**:    Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

Response:    No.

**Question**:    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    The total fees sought in this Application did not exceed total budgeted fees.

**Question**:    Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?  (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

Response:    No, the Application does not include time or fees related to reviewing time records or preparing, reviewing or revising invoices in connection with the preparation of monthly fee statements.

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

Response:    No time was spent redacting time records on account of privilege concerns. However, the Application does include time related to reviewing time records to redact time entries pursuant to Court-ordered mediation confidentiality.

**Question**:    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:    Yes.  The Engagement Letter provides that Proskauer's rates are increased on January 1 (rather than on November 1, the beginning of Proskauer's fiscal year) by the lower of the percentage rate increase announced as of

19

November 1 and four percent.  As Proskauer's announced percentage rate increase exceeded four percent as of November 1, 2018, Proskauer's rates with respect to its representation of the Oversight Board were increased by four percent as of January 1, 2019.

### Gross-Up Amount

29.    Prior to December 10, 2018, Puerto Rico taxed Proskauer's fees differently depending on whether Proskauer's timekeepers performed work while physically present in Puerto Rico or off-island.  Specifically, a 7% withholding tax was assessed (at time of payment) on fees derived from work performed while the timekeeper was physically present in Puerto Rico, but not on fees derived from work performed outside of Puerto Rico.

30.    On December 10, 2018, Puerto Rico enacted Act 257-2018, amending the Puerto Rico tax code and eliminating the differences in tax treatment based on where work was performed. Under Act 257-2018, all Proskauer fees incurred on or after December 10, 2018—regardless of the timekeepers' physical location—are assessed with a 10% withholding tax at the time of payment.

31.    Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by Act 257-2018, starting December 10, 2018 (the "Withholding"), in the amount of **$706,181.17**.  But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

### Professionals Billing Fewer Than Five Hours per Month

32.    The following chart indicates, solely with respect to the Debtor's Title III Case, (a) professionals who billed fewer than five hours per month, (b) the months for which fewer than five hours were billed by the professional, and (c) an explanation of why the use of such professional

was reasonable and necessary.  As a general matter, because of the size and complexity of the

Debtor's Title III Case, it was reasonable and necessary to consult with professionals with specific

practice area expertise to assist Proskauer's core restructuring professionals in providing the Debtor

with necessary and beneficial professional services.  Moreover, it was often necessary to consult

with professionals more familiar with other aspects of the restructuring of Puerto Rico and with

specific adversary proceedings to deal with global strategic issues and ensure that positions taken

by the Oversight Board are consistent across all the Title III cases.  Furthermore, occasionally the

urgency of certain briefing schedules requires pulling in professionals from different work streams

to assist on time-sensitive matters.[14]

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Ashton, Ann M. | February – April | Ms. Ashton is a partner in Proskauer's litigation department who advised on the strategy for the Debtor's proposed plan of adjustment and its confirmation. |
| Batten, Mark W. | March | Mr. Batten is a partner in Proskauer's labor & employment department who advised on pension negotiations and on the Debtor's pension plan alternatives. |
| Bowman, Courtney M. | February – April | Ms. Bowman is an associate in Proskauer's litigation department who assisted with analysis of creditors' claims and Special Claims Committee pleadings and with developing strategy for claims administration. |
| Clark, Brandon C. | February | Mr. Clark is an associate in Proskauer's litigation department who assisted with further developing the Debtor's litigation strategy. |
| Cooper, David C. | March, May | Mr. Cooper is a paralegal in Proskauer's corporate department who assisted with various case management related tasks. |

---

[14] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and outside of PROMESA Title III.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Cordova-Pedroza, Christian | April, May | Mr. Cordova-Pedroza is a paralegal in Proskauer's labor & employment department who assisted with various case management related tasks. |
| Corn, Richard M. | May | Mr. Corn is a partner in Proskauer's tax department who advised on tax related arguments for the Debtor's response to Ambac's motion for relief from the automatic stay. |
| Cupplo, Sherri | March | Ms. Cupplo is a research specialist in Proskauer's library department who assisted with legal research on disclosure statement related issues. |
| Dale, Margaret A. | March, May | Ms. Dale is a partner in Proskauer's litigation department who advised on the Debtor's litigation strategy and on discovery related issues in connection with the GO bondholders' Rule 2004 requests. |
| Dalsen, William D. | February, April | Mr. Dalsen is an associate in Proskauer's litigation department who advised on multiple discovery, document review and document production related issues. |
| Desatnik, Daniel | February, May | Mr. Desatnik is an associate in the BSGR&B group who assisted with developing the Debtor's litigation strategy and with analysis of the First Circuit Appellate Court's decision on Appointments Clause and its impact. |
| Dillon, Emma | May | Ms. Dillon is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Elsner, Rebecca R. | April | Ms. Elsner is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Fiur, Seth | February | Mr. Fiur is an associate in Proskauer's litigation department who assisted with analysis of the First Circuit Appellate Court's decision in the *Aurelius Capital Master* proceeding and its impact. |
| Friedman, Amelia A. | March | Ms. Friedman is an associate in Proskauer's litigation department who assisted with analysis of creditors' claims and with developing strategy for claims administration. |
| Hackett, Michael R. | April | Mr. Hackett is a senior counsel in Proskauer's litigation department who advised on the Debtor's claims administration strategy and on discovery related issues. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Hamburger, Paul M. | February, March | Mr. Hamburger is a partner in Proskauer's labor & employment department who advised on the Debtor's social security and pension benefits related issues in connection with the development of the Debtor's plan of adjustment. |
| Hamilton, Martin T. | March | Mr. Hamilton is a partner in Proskauer's tax department who advised on tax-related issues in connection with the development of the Debtor's plan of adjustment. |
| Harris, Mark D. | March, April | Mr. Harris is a partner in Proskauer's litigation department who advised on the Debtor's litigation strategy and on appellate issues in the *Rossello* proceeding. |
| Henderson, Laurie A. | February – May | Ms. Henderson is a docketing administrator in Proskauer's litigation department who assisted with docket research and electronic filing. |
| Ike, Yvonne O. | February | Ms. Ike is an eDiscovery staff attorney at Proskauer who advised on various document review and production issues. |
| Infante, Elle M. | April, May | Ms. Infante is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Jones, Erica T. | February | Ms. Jones is an associate in Proskauer's litigation department who assisted with analyzing pleadings and developing the Debtor's litigation strategy in the *Senate Bank Account* proceeding. |
| Kay, James | May | Mr. Kay is an eDiscovery staff attorney at Proskauer who assisted with translating Spanish-language pleadings. |
| King, Charles H. | March | Mr. King is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Kline, Emily H. [15] | March | Ms. Kline is an associate in Proskauer's litigation department who assisted with drafting the responsive appellate brief in the *Gracia-Gracia* proceeding. |

[15] Admitted to the bar during the Compensation Period. Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Klock, Joseph P. | February | Mr. Klock is an eDiscovery project coordinator at Proskauer who assisted with various document production related issues. |
| Mashberg, Gregg M. | February – May | Mr. Mashberg is a partner in Proskauer's litigation department who advised on developing the Debtor's litigation and discovery strategy. |
| Mazurek, Carl | May | Mr. Mazurek is an associate in Proskauer's litigation department who assisted with developing the Debtor's litigation strategy and monitoring litigation deadlines. |
| Mervis, Michael T. | March | Mr. Mervis is a partner in Proskauer's litigation department who advised on drafting the response to the UCC's motion concerning avoidance actions. |
| Morris, Matthew J. | May | Mr. Morris is an associate in Proskauer's litigation department who assisted with legal research and analysis for the motion to dismiss the Cooperativas' complaint. |
| Muller, Ariella | April, May | Ms. Muller is a law clerk in Proskauer's litigation department who assisted with drafting responsive appellate briefs in the *Rossello* proceeding and in the appeal by the Autonomous Municipality of Ponce. |
| Palmer, Marc C. | February | Mr. Palmer is an associate in Proskauer's litigation department who assisted with legal research and analysis for the motion to dismiss the *Natal-Albelo* adversary proceeding. |
| Ramachandran, Seetha | May | Ms. Ramachandran is a partner in Proskauer's litigation department who advised on developing the Debtor's litigation strategy. |
| Roche, Jennifer L. | April | Ms. Roche is a senior counsel in Proskauer's litigation department who advised on the Debtor's litigation strategy and drafting stipulation of dismissal in the *Senate Bank Account* proceeding. |
| Rochman, Matthew I. | February | Mr. Rochman is an associate in Proskauer's litigation department who assisted with research and drafting the opposition to the PBA bondholders' intervention motions in the *PBA* adversary proceeding. |

24

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Rogoff, Corey I. | February | Mr. Rogoff is an associate in Proskauer's litigation department who assisted with multiple document review related issues. |
| Rothschild, Claire | February | Ms. Rothschild is a paralegal in Proskauer's labor & employment department who assisted with various case management related tasks. |
| Sherman, Christine N. | April | Ms. Sherman is an associate in Proskauer's tax department who assisted with legal research on tax-related issues in connection with the development of the Debtor's plan of adjustment. |
| Skellet, Alexandra K. | May | Ms. Skellet is an associate in Proskauer's litigation department who assisted with drafting the Debtor's motion for extension of time to file the responsive appellate brief in the *Atlantic Medical Center* proceeding. |
| Sosa, Javier F. | March | Mr. Sosa is a law clerk in Proskauer's litigation department who assisted with document review and production in multiple adversary proceedings. |
| Supronik, Lukasz | February, May | Mr. Supronik is an eDiscovery project coordinator at Proskauer who assisted with various document review and production related issues. |
| Theodoridis, Chris | May | Mr. Theodoridis is an associate in the BSGR&B group who assisted with analysis of pension related issues in connection with the development of the Debtor's plan of adjustment. |
| Volpicello, Alexander J. | February, April, May | Mr. Volpicello is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Vermal, Ana | February – May | Ms. Vermal is a partner in Proskauer's litigation department who advised on developing the Debtor's appellate strategy in the *Atlantic Medical Center* proceeding. |
| Waxman, Hadassa R. | May | Ms. Waxman is a partner in Proskauer's litigation department who advised on motion to dismiss the Cooperativas' complaint and on the response to Ambac's motion for relief from the automatic stay. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Wertheim, Eric | May | Mr. Wertheim is an associate in Proskauer's litigation department who assisted with legal research and analysis related to the motion to dismiss the Cooperativas' complaint. |
| Wizner, Eamon | February | Mr. Wizner is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |

### Summary Description of Professional Services

33.     The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period.   Only Project Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized below.

**I.      Matter No. 33260/002 (PROMESA Title III: Commonwealth)**

34.     This matter number covers time spent relating to the core Commonwealth Title III case, including, for example, time spent regarding mediation, fiscal plan issues, and working on disclosure statements or plans of adjustment.

(a)     Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants (Project Category 201)
(Fees: $318,440.40; Hours: 403.60)

35.     This Project Category includes time spent communicating with the Oversight Board, and its other representatives, agents, and consultants, as well as preparing for and advising on fiscal plans, public meetings, litigation and related issues.   Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with the Oversight Board and its other advisors regarding the Debtor's Title III Case status and strategy, the Commonwealth's proposed fiscal plan and plan of adjustment and revisions to same, and conferring on multiple related

26

issues including, among others, budgets, revenue and cash flow analyses, pension and social security benefits, recent labor and tax reforms and their impact on the Debtor's Title III cases, the best interest analysis, securitization, and the status of the Debtor's labor and pension negotiations;

- Advising the Oversight Board on communications with the Commonwealth regarding fiscal plan and budget-related issues, and participating in Board meetings on a variety of restructuring issues and status of negotiations;

- Preparing litigation updates for the Oversight Board and communicating with the Board and its other advisors regarding litigation strategy and litigation developments, discussing status and proposed strategy for avoidance actions, recovery scenarios, conferring on the proposed mediation strategy and preparation for court-ordered mediation, and on related discovery issues in the Debtor's Title III Case;

- Preparing for and participating in weekly calls with the Oversight Board and its advisors regarding the status of the Debtor's Title III case; and

- Communicating with the Oversight Board and its professionals regarding review and classification of claims filed against the Debtor, preparation of omnibus objections to same, creditor discussions and negotiations, and claims administration and reconciliation procedures.

(b)   Legal Research (Project Category 202)
      (Fees:  $98,570.40; Hours:  154.40)

36.   This Project Category includes time spent researching and analyzing legal issues, as well as time spent drafting internal memoranda and/or draft briefs related to such research and analysis, to the extent that such is not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Researching and analyzing a variety of legal issues in connection with the development of the Debtor's fiscal plan and plan of adjustment, including compliance with PROMESA, application of certain bankruptcy rules, the impact of the appellate court's decisions in the Debtor's adversary cases, issues related to bondholders' discovery requests and required disclosure and privilege considerations, creditors' voting rights, and plan confirmation;

- Researching and analyzing claims filed against the Debtor, and applicable claims administration and reconciliation procedures;

- Researching and analyzing the Debtor's tolling agreements, analyzing potential avoidance issues in the Debtor's Title III case, preferential transfers and fraudulent conveyances, and developing litigation strategy in connection with avoidance actions; and

27

- Researching and analyzing a variety of legal issues related to the enforcement of policy decisions by the Oversight Board and the application of Bankruptcy Code provisions relevant to the Debtor's Title III Case.

(c)   <u>Hearings and Other Non-Filed Communications with the Court (Project Category 203)</u>
(Fees:  <u>$41,501.40</u>; Hours:  <u>52.60</u>)

37.   This Project Category includes time spent communicating with the Court and reviewing the Court's communications and procedures.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with the Court regarding applicable rules and requirements, scheduling and procedure related matters;

- Communicating with the Court regarding omnibus hearing dates and drafting omnibus hearing agendas and informative motions;

- Preparing for and participating in omnibus hearings and in the hearing on the Oversight Board's and UCC's stipulation to jointly prosecute certain causes of action; and

- Reviewing and analyzing transcripts of court hearings.

(d)   <u>Communications with Claimholders (Project Category 204)</u>
(Fees: <u>$120,862.50</u>; Hours: <u>154.50</u>)

38.   This Project Category includes time spent communicating with the Debtor's various claimholders.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with the statutory committees and other claimholders, as well as their respective advisors, on revisions to the Debtor's proposed fiscal plan and plan of adjustment, and multiple restructuring related issues;

- Communicating with the counsel for the UCC and for the Claims Committee regarding the Debtor's tolling agreements and potential avoidance actions;

- Communicating with the Oversight Board and its other advisors and drafting the Oversight Board's letter to the Puerto Rico Government regarding non-payment of certain PayGo pension obligations;

- Communicating with Judge Houser, statutory committees, other claimholders, and their respective advisors on various legal issues related to mediation in preparation for court-ordered mediation sessions and court hearings;

- Preparing for and participating in court-ordered mediation sessions, meet-and-confer calls and sessions with the statutory committees and other claimholders, as well as their respective advisors; and

28

- Communicating with claimholders and their respective advisors on issues related to claims filed against the Debtor, respective Debtor's omnibus claims objections, and claims reconciliation and administration procedures.

(e)   Documents Filed on Behalf of the Board (Project Category 206)
(Fees:  $601,299.90; Hours:  922.40)

39.   This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting research and drafting Debtor's motion requesting amendments to the procedures for omnibus objections to claims;

- Conducting research and analysis of claims and drafting multiple omnibus objections to claims filed against the Debtor, including duplicate, deficient and amended claims, and objection to the ERS fiscal agent's claim;

- Drafting motion approving alternative dispute resolution ("ADR") procedure and notice of eligibility to participate in ADR;

- Conducting research and analysis and drafting a response to the UCC's motion concerning appointment of a trustee to pursue potential avoidance actions, drafting motion to equitably toll time to bring avoidance and recovery actions on behalf of the Debtor and reply in support of same;

- Conducting research and drafting complaints seeking clawback of the payments on PBA bonds and seeking declaratory judgment regarding GO bondholders' lien assertions;

-  Conducting research and drafting response to the fee examiner's motion to impose additional reporting requirements and presumptive standards for professionals' fee applications; and

- Drafting revised case management order to include a no-objection certification provision and drafting multiple informative motions and pleadings related to scheduling and extension of deadlines.

(f)   Non-Board Court Filings (Project Category 207)
(Fees:  $78,142.20; Hours:  99.50)

40.   This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing various filings by other parties and Court orders entered in the

Debtor's Title III Case, including among others, responses and court orders related to the Debtor's omnibus objections to claims, the UCC's motions concerning avoidance actions and respective Judge Swain's orders, the motion by individual GO bondholder's requesting appointment of a statutory committee, the rehearing petition by UTIER and respective First Circuit Court of Appeals' order in connection with the Commonwealth strategies, the Fee Examiner's report and motion to impose additional reporting requirements and presumptive standards for professionals' fee applications, multiple discovery requests, objections thereto, and discovery related motions and orders, and informative motions and scheduling related motions and orders.

(g)   Analysis and Strategy (Project Category 210)
        (Fees: $1,662,679.80; Hours: 2,161.40)

41.     This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including (a) meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category.   Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing a wide variety of reports, memoranda, financial analyses, press releases, pleadings and court orders, drafting and updating tasks and issues lists, preparing for and participating in weekly Proskauer internal litigation calls on further developing litigation, appellate and discovery strategy and on litigation and appellate issues pending in these complex and time sensitive Title III cases, preparing for and participating in weekly Proskauer internal restructuring calls on proposed plan of adjustment and fiscal plan related issues, and drafting internal memoranda to Proskauer litigation and restructuring teams.

(h)   Non-Working Travel Time (Project Category 211)
        (Fees: $28,482.90; Hours: 36.10)

42.     This Project Category includes time spent traveling on behalf of the Oversight Board and the Debtor, during which no billable work is performed.  Fees in this Project Category are billed at fifty percent (50%).

(i)     General Administration (Project Category 212)
        (Fees: $321,888.00; Hours: 1,166.40)

43.     This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities, including maintaining the case calendar; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest. Specifically, Proskauer paraprofessionals and e-Discovery attorneys spent time reviewing and analyzing a wide variety of pleadings and court orders, litigation and appellate dockets, drafting and updating charts of litigation and discovery deadlines, reviewing, analyzing and compiling materials for court hearings and Proskauer internal meetings, analyzing written discovery materials and  maintaining document production indexes, and communicating with e-Discovery vendors on a wide variety of document collection, processing and review related issues.

(j)     Labor, Pension Matters (Project Category 213)
        (Fees: $67,222.80; Hours: 85.20)

44.     This Project Category includes time spent reviewing employee and retiree benefits issues.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Researching and analyzing pension and social security related issues in connection with the Debtor's proposed fiscal plan and plan of adjustment;

- Reviewing and analyzing the Debtor's pension funding issues, recovery scenarios, cash flow and financial projections;

- Reviewing and analyzing the Retiree Committee's and labor unions' proposed term sheets and memoranda related to the Commonwealth's pension and retirement benefits issues and preparing for and participating in discussions and negotiations

31

with the Retiree Committee, labor unions, and their advisors on proposed restructuring of the Commonwealth's pension plans; and

- Reviewing and revising plan support agreements reflecting the negotiations and settlements with the unions and the Retiree Committee.

(k)   <u>Plan of Adjustment and Disclosure Statement (Project Category 215)</u>
(Fees: <u>$1,325,652.00</u>; Hours: <u>1,690.10</u>)

45.   This Project Category includes time spent on issues related to the terms of the proposed Title III plan.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing a wide variety of materials, reports, analyses, and memoranda from the Commonwealth's advisors and experts and modifying and enhancing the strategy for the proposed transformation and restructuring of the Debtor and related negotiations;

- Reviewing and analyzing comments and proposals from creditors, bondholders, statutory committees, labor unions, the Special Claims Committee, and their advisors related to the restructuring and confirmation issues;

- Researching and analyzing a wide variety of claims related issues, including claims classification, reconciliation and administration, and drafting multiple omnibus objections to claims;

- Researching and analyzing a wide variety of financial and legal issues in connection with the proposed plan of adjustment, including, among others, relating to the Debtor's cash flow and cash management system, debt service obligations, lien avoidance and lien preference claims, treatment of clawback claims and of certain insured bonds, Commonwealth's tax and labor reform, proposed modifications of the Debtor's pension and retirement benefits system, assumption and rejection of leases, tax related issues, scope of disclosure obligations and related privilege concerns, and litigation updates among others;

- Reviewing and revising best-interests test and clawback analyses, conducting further research on best interests and feasibility, and drafting related memoranda;

- Preparing for and participating in telephone conferences, meetings, and negotiations and mediation sessions with creditors;

- Communicating with Judge Houser on plan related issues, status of plan related mediation and negotiations, and drafting related memoranda to court;

- Communicating with the Oversight Board and its other advisors regarding development and structure of the Commonwealth's proposed plan of adjustment and disclosure statement, the strategy and timing for the proposed transformation and restructuring of the Debtor, and drafting related memoranda to the Oversight Board; and

- Drafting and revising proposed plan of adjustment, disclosure statement, and supporting agreements and term sheets to reflect the status of plan negotiations and discussions.

(l)   Tax (Project Category 217)
      (Fees: $59,569.50; Hours: 75.50)

46.   This Project Category includes time spent on tax matters involving the Debtor. Specifically, Proskauer attorneys spent time reviewing and analyzing tax issues in connection with the proposed plan of adjustment, including among others, taxation of bonds, subsidy payments on qualified bonds, tax treatment of post-petition interest, and drafting and modifying tax related statements in the proposed plan of adjustment, disclosure statement, plan support agreement and term sheets.

(m)   Employment and Fee Applications (Project Category 218)
      (Fees: $126,839.70; Hours: 261.60)

47.   This Project Category includes time spent on issues related to the compensation of Proskauer, and the retention and compensation of other Oversight Board professionals, including the preparation of monthly fee applications.    Specifically, Proskauer attorneys and paraprofessionals spent time:

- Preparing Proskauer's monthly fee statements and drafting Proskauer's fifth and sixth interim fee applications;

- Review multiple documents, correspondence and pleadings, and compiling updated parties-in-interest master list;

- Reviewing Fee Examiner's correspondence and reports relating to review of Proskauer's monthly fee statements and interim fee applications, and preparing for and participating in conferences with the Fee Examiner on issues relevant to same; and

- Reviewing and analyzing the Fee Examiner's motion to impose additional reporting requirements and presumptive standards for professionals' fee applications and proposed order, conducting relevant research, and drafting proposed changes to same.

(n)   Fee Applications for Other Parties (Project Category 220)
      (Fees: $19,314.00; Hours: 25.40)

48.     This Project Category includes time spent on issues related to the compensation of other Oversight Board professionals, including the preparation of monthly fee applications. Specifically, Proskauer attorneys and paraprofessionals spent time reviewing, discussing, drafting and revising fee applications, fee statements, and dealing with related issues for various professionals.

## II.     Matter No. 33260/034 (Commonwealth Title III – Healthcare)

49.     This matter number covers time spent working on adversary proceedings involving healthcare and Medicaid claims in the Debtor's Title III Case, including *Asociacion de Salud Primaria v. Commonwealth*, Case No. 17-AP-227, *Atlantic Medical Center v. Commonwealth,* Case No. 17-AP-278, and *CSI v. Commonwealth*, Case Nos. 17-AP-292 and 17-AP-298, and on any appeals related thereto.

(a)     General Administration (Project Category 212)
          (Fees:  $3,159.00; Hours: 11.70)

50.     This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities, including maintaining the case calendar; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

(b)     Appeal (Project Category 219)
          (Fees: $168,985.20; Hours: 214.90)

51.     This Project Category includes time spent preparing appeals and participating in appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent not expressly covered by another Project Category.   Specifically, Proskauer attorneys and paraprofessionals spent time researching appellate strategies and identifying appellate issues and standards of appellate review in connection with the *Atlantic Medical Center* appeal in the First

Circuit, communicating with the Court and drafting motion to consolidate the *Atlantic Medical Center* and the *CSI* appellate proceedings, and drafting responsive brief in the consolidated appeal.

### III.   Matter No. 33260/035 (Commonwealth Title III – Appointments Clause)

52.   This matter number covers time spent working on the Appointments Clause motions and adversary proceedings filed in the Debtor's Title III Case, including *Assured v. FOMB*, Case No. 18-AP-087, and *Hernandez-Montañez v. FOMB,* Case No. 18-AP-090, and on any appeals related thereto.

(a)   Appeal (Project Category 219)
      (Fees: $43,397.10; Hours: 52.20)

53.   This Project Category includes time spent preparing appeals and participating in appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent not expressly covered by another Project Category.   Specifically, Proskauer attorneys and paraprofessionals spent time analyzing the First Circuit opinion regarding compliance with the Appointments Clause and its impact on the Debtor's Title III cases, drafting related memoranda to the Oversight Board, conducting research and drafting petition for certiorari to the U.S. Supreme Court and petition to the First Circuit to stay issuance of mandate.

### IV.   Matter No. 33260/039 (Commonwealth Title III – Rule 2004)

54.   This matter number covers time spent working on Rule 2004 motions filed in the Debtor's Title III Case and any appeals related thereto.

(a)   Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants (Project Category 201)
      (Fees: $7,267.20; Hours: 10.00)

55.   This Project Category includes time spent communicating with the Oversight Board, and its other representatives, agents, and consultants, as well as preparing for and advising on fiscal plans, public meetings, litigation and related issues.   Specifically, Proskauer attorneys spent time

conferring with the Oversight Board's advisors in connection with the review and production of documents in response to the GO bondholders' discovery requests.

(b) <u>Analysis and Strategy (Project Category 210)</u>
(Fees: <u>$40,482.90</u>; Hours: <u>59.40</u>)

56.     This Project Category includes time spent related to (a) legal analysis in, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including (*i*) meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (*ii*) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

(c)   <u>General Administration (Project Category 212)</u>
(Fees: <u>$3,456.00</u>; Hours: <u>12.80</u>)

57.     This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (b) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

## V.   <u>Matter No. 33260/040 (Commonwealth Title III – Cooperativas)</u>

58.     This matter number covers time spent working on challenges and adversary proceedings brought by the Cooperativas in the Debtor's Title III Case, including *Cooperativa de Ahorro y Credito Abraham Rosa v. Commonwealth*, 18-AP-028, and any appeals related thereto.

(a)   <u>Legal Research (Project Category 202)</u>
(Fees: <u>$13,178.70</u>; Hours: <u>19.40</u>)

59.     This Project Category includes time spent researching and analyzing legal issues, as well as time spent drafting internal memoranda and/or draft briefs related to such research and analysis, to the extent that such is not expressly covered by another Project Category. Specifically,

Proskauer attorneys and paraprofessionals spent time conducting research and analysis for a motion to dismiss the amended complaint claims under Puerto Rico organized crime statute.

(b)  Documents Filed on Behalf of the Board (Project Category 206)
     (Fees: $73,377.00; Hours: 93.00)

60.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time drafting motion to dismiss the amended complaint.

(c)  Non-Board Court Filings (Project Category 207)
     (Fees: $18,778.20; Hours: 23.80)

61.    This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing plaintiff's motion for leave to amend the complaint and the amended complaint.

(d)  Analysis and Strategy (Project Category 210)
     (Fees: $9,546.90; Hours: 12.10)

62.    This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

## VI.    Matter No. 33260/041 (Commonwealth Title III – Miscellaneous)

63.    This matter number covers time spent working on several different, miscellaneous motions and adversary proceedings, and any appeals related thereto.  In this Compensation Period,

items billed to this matter included, among other things, work on (*i*) various motions for relief from the Title III stay; (*ii*) *Autonomous Municipality of Ponce v. FOMB*, Case No. 18-02194 (1st Cir.) (the "*AMP* Appeal"); (*iii*) *American Federation of Teachers v. Commonwealth*, Case No. 18-AP-134 (the "*AFT* Adversary Proceeding"); (*iv*) *Pinto Lugo v. United States*, Case No. 18-AP-41 (the "*Pinto Lugo* Adversary Proceeding"); (*v*) *UECFSE v. United States*, Case No. 18-AP-66 (the "*UECFSE* Adversary Proceeding"); (*vi*) *Financial Oversight & Management Board for Puerto Rico v. Puerto Rico Public Buildings Authority*, Case No. 18-AP-0149 (the "*PBA* Adversary Proceeding"); (*vii*) *Mandry-Mercado v. Commonwealth,* Case No. 18-02035 (1st Cir.) (the "*Mandry-Mercado* Appeal"); (*ix*) *Gracia-Gracia, Esq. v. FOMB,* Case No. 18-01463 (1st Cir.) (the "*Gracia-Gracia* Appeal"); *(x) Natal-Albelo v. FOMB*, Case No. 19-AP-003 (the "*Natal-Albelo* Adversary Proceeding").

(a)  Legal Research (Project Category 202)
     (Fees:  $102,111.60; Hours: 133.30)

64.    This Project Category includes time spent researching and analyzing legal issues, as well as time spent drafting internal memoranda and/or draft briefs related to such research and analysis, to the extent that such is not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time researching and analyzing a variety of legal issues related to the Debtor's Title III adversary cases, including standing, dismissal and stay of actions, judgment on pleadings, remand, and discovery related issues.

(b)  Communications with Claimholders (Project Category 204)
     (Fees: $18,068.10; Hours: 22.90)

65.    This Project Category includes time spent communicating with the Debtor's various claimholders.  Specifically, Proskauer attorneys spent time:

- Communicating with opposing counsel, drafting and revising a meet-and-confer letter and a request for consensual stay in connection with the Debtor's motion to dismiss the *Natal-Albelo* Adversary Proceeding;

- Communicating with counsel for other parties in preparation for a pre-trial conference and drafting and revising a meet-and-confer letter in connection with the Debtor's motion to dismiss the *PBA* Adversary Proceeding; and

- Communicating with opposing counsel on procedural and scheduling matters in the *UECSFE* and *Pinto Lugo* Adversary Proceedings.

(c)   <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
(Fees: <u>$639,868.80</u>; Hours: <u>812.50</u>)

66.   This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.   Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting additional research, analyzing the impact of recent First Circuit opinions,  and drafting and revising reply briefs in support of the Debtor's dispositive motions in the *Pinto Lugo, UECFSE,*  and *Natal-Albelo* Adversary Proceedings;

- Conducting research and drafting opposition to the intervention motions, three motions to dismiss multiple counterclaims,  an opposition to a motion for judgment on the pleadings, and a proposed protective order in the *PBA* Adversary Proceeding;

- Conducting research, analyzing the impact of recent First Circuit opinions, and drafting a motion to stay or, in the alternative, to dismiss the *Natal-Albelo* Adversary Proceeding, a motion to strike and opposition to the Natal-Albelo remand motions, and replies and declarations in support thereof;

- Conducting research and drafting a brief opposing the AMP's request for relief of stay to enforce judgment in the *AMP* Appeal;

- Conducting research and drafting mediation statement in connection with preparing for court-ordered mediation related to the Asociación Puertorriqueña de la Judicatura, Inc.'s Motion  for Relief from Stay filed in the Debtor's Title III case [ECF No. 4398]; and

- Drafting multiple informative motions and pleadings related to the extension of deadlines and other procedural and scheduling issues.

(d)   <u>Non-Board Court Filings (Project Category 207)</u>
(Fees: <u>$67,380.60</u>; Hours:  <u>85.40</u>)

67.    This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly

covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing newly filed adversary complaints involving the Debtor and related motions to stay, intervene and remand filed by various parties;
- Analyzing a wide variety of pleadings filed by other parties, including, among others, motion by judgment on the pleadings, opposition to Debtor's dispositive motions, answers to complaints and counterclaims, discovery requests, and multiple pleadings related to extension of deadlines and scheduling; and
- Reviewing and analyzing court opinions, orders, and recommendations.

(e) Stay Matters (Project Category 208)
(Fees: $66,761.70; Hours: 100.60)

68. This Project Category includes time spent analyzing and researching stay issues in the Debtor's Title III Case and drafting various pleadings related to stay issues. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing newly filed lift stay requests involving the Commonwealth;
- Conducting research and analyzing stay and intervention issues in the Debtor's pending adversary proceedings;
- Communicating with AAFAF, claimholders, and their respective counsel regarding a variety of issues related to lift stay requests; and
- Drafting responses to lift stay motions and stipulations permitting modifications of the stay.

(f) Analysis and Strategy (Project Category 210)
(Fees: $229,125.60; Hours: 290.40)

69. This Project Category includes time spent related to (a) legal analysis in, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including engaging in meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

    (g)   <u>General Administration (Project Category 212)</u>
          (Fees:  <u>$38,529.00</u>; Hours:  <u>142.70</u>)

70.    This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

    (h)   <u>Appeal (Project Category 219)</u>
          (Fees: <u>$657,563.10</u>; Hours: <u>834.40</u>)

71.    This Project Category includes time spent preparing appeals and participating in appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing underlying pleadings and appellant's brief, identifying appellate issues and developing appellate strategy, drafting the responsive appellate brief and preparing for oral argument in the *Gracia-Gracia* Appeal;

- Reviewing and analyzing underlying pleadings and appellant's briefs, identifying appellate issues and developing appellate strategy, and drafting the responsive appellate brief in the *AMP* Appeal; and

- Reviewing and analyzing appellant's motions for rehearing and for leave to supplement the appellate record and the Court's orders denying appellant's requests in the *Mandry-Mercado* Appeal.

## VII.   <u>Matter No. 33260/061 (Commonwealth Title III – Fiscal Plan/ Budget Litigation)</u>

72.    This matter number covers time spent related to challenges by the Commonwealth government to fiscal plans and budgets certified by the Oversight Board, including *Rossello v. FOMB*, Case No. 18-AP-080, and *Rivera-Schatz v. FOMB,* Case No. 18-AP-081, and on any appeals related thereto.

    (a)   <u>Communications with Claimholders (Project Category 204)</u>
          (Fees: <u>$21,381.90</u>; Hours: <u>27.10</u>)

73.     This Project Category includes time spent communicating with the Debtor's various claimholders.  Specifically, Proskauer attorneys spent time communicating with the Oversight Board and its other advisors and drafting the Board's letters to the Puerto Rico Government regarding the Government's appropriations made through the Joint Resolutions authorizing expenditures outside of the certified fiscal plan and PROMESA's budget approval process.

(b)   Analysis and Strategy (Project Category 210)
      (Fees: $27,220.50; Hours: 34.50)

74.     This Project Category includes time spent related to (a) legal analysis in, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including engaging in meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category.

(c)   General Administration (Project Category 212)
      (Fees: $3,828.00; Hours: 13.20)

75.     This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

(d)   Appeal (Project Category 219)
      (Fees: $324,725.70; Hours: 414.00)

76.     This Project Category includes time spent preparing appeals and participating in appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time:

42

- Reviewing and analyzing underlying pleadings and Governor's appellate brief, identifying appellate issues and developing appellate strategy, conducting research and drafting the responsive appellate brief in the *Rossello* Appeal; and

- Conferring with the Oversight Board and its other advisors, analyzing appellate and underlying pleadings, conducting research, and preparing for oral argument in the *Rivera* appeal.

## VIII.   Matter No. 33260/063 (Commonwealth – Senate Bank Account)

77.     This matter number covers time spent related to the Oversight Board's efforts to procure critical financial information from the Senate of Puerto Rico to ensure the Senate's compliance with the certified fiscal plans and budgets for the Commonwealth and its instrumentalities, including *FOMB v. Rivera-Schatz,* Case No. 19-AP-014, and on any appeals related thereto.

(a)   Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants
(Project Category 201)
(Fees: $16,095.60; Hours: 20.40)

78.     This Project Category includes time spent communicating with the Oversight Board, and its other representatives, agents, and consultants, as well as preparing for and advising on fiscal plans, public meetings, litigation and related issues.  Specifically, Proskauer attorneys spent time communicating with the Oversight Board and its other advisors regarding draft complaint against the Senate alleging failure to timely provide documents and information, discussing next steps and developing litigation strategy, conferring regarding sufficiency and completeness of the Senate data and document productions and outstanding issues, case developments and procedural matters.

(b)   Communications with Claimholders (Project Category 204)
(Fees: $9,704.70; Hours: 12.30)

79.     This Project Category includes time spent communicating with the Debtor's various claimholders.  Specifically, Proskauer attorneys spent time communicating with the counsel to the

43

Senate regarding sufficiency and completeness of the Senate document productions, rectifying production deficiencies, and subsequent dismissal of action.

    (c)   <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
          (Fees: <u>$46,787.70</u>; Hours: <u>59.30</u>)

      80.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time conducting research and drafting a complaint against the Senate for failure to timely provide the requested documents and information and the subsequent joint stipulation of dismissal.

    (d)   <u>Analysis and Strategy (Project Category 210)</u>
          (Fees: <u>$21,697.50</u>; Hours: <u>27.50</u>)

      81.    This Project Category includes time spent related to (a) legal analysis in, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including engaging in meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category.

## IX.    <u>Matter No. 33260/069 (Commonwealth – APPU v. University of Puerto Rico)</u>

      82.    This matter number covers time spent related to the challenge by the *Asociación Puertorriqueña de Profesores Universitarios* to the modifications made to the Retirement System of the University of Puerto Rico pursuant to the Oversight Board's recommendations, including *Asociación Puertorriqueña de Profesores Universitarios v. University of Puerto Rico*, Case No. 19-AP-0034, and on any appeals related thereto.

    (a)   <u>Legal Research (Project Category 202)</u>
          (Fees: <u>$13,869.90</u>; Hours: <u>18.50</u>)

83.     This Project Category includes time spent researching and analyzing legal issues, as well as time spent drafting internal memoranda and/or draft briefs related to such research and analysis, to the extent that such is not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time researching and analyzing a variety of legal issues, including, among others, subject matter jurisdiction and the Oversight Board's standing, for the proposed motion to dismiss claims against the Oversight Board.

(b)   Documents Filed on Behalf of the Board (Project Category 206)
        (Fees:  $108,724.20; Hours:  137.80)

84.     This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time conducting research and analysis and drafting the Oversight Board's motion to dismiss.

(c)   Analysis and Strategy (Project Category 210)
        (Fees: $34,163.70; Hours: 43.30)

85.     This Project Category includes time spent related to (a) legal analysis in, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including engaging in meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category.

## X.     Matter No. 33260/072 (Commonwealth – GO & Guaranteed Bonds Lien Avoidance and Secured Status Complaints)

86.     This matter number covers time spent relating to the Commonwealth Title III avoidance actions challenging the validity, enforceability, and extent of certain pre-petition liens of the Commonwealth general obligation and guaranteed bonds, including *Commonwealth v. Autonomy Master Fund Limited*, Case No. 2019-AP-0291, *Commonwealth v. Cooperativa de*

*Ahorro y Credito de Rincon,* Case No. 2019-AP-0292, *Commonwealth v. Ortiz de la Renta,* Case No. 2019-AP-0293, *Commonwealth v. Martinez Sanchez,* Case No. 2019-AP-0294, *Commonwealth v. Valdivieso,* Case No. 2019-AP-0295, *Commonwealth v. Friedman,* Case No. 2019-AP-0296, *Commonwealth v. Blackrock Financial Management, Inc.,* Case No. 2019-AP-0297, and on any appeals related thereto.

(a) <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
(Fees: <u>$32,731.80</u>; Hours: <u>47.80</u>)

87.     This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time conferring with the Oversight Board's other advisors and counsel to the UCC, conducting research and analysis, and drafting complaints objecting to and challenging the validity, enforceability, and extent of prepetition security interests of certain bondholders.

(b) <u>General Administration (Project Category 212)</u>
(Fees: <u>$5,886.00</u>; Hours: <u>21.80</u>)

88.     This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

## XI.     <u>Matter No. 33260/073 (Commonwealth – AMBAC/PRIFA Stay-Relief  Motion)</u>

89.     This matter number covers time spent relating to opposition to the *Ambac Assurance Corporation's Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* seeking a court order finding that the automatic stay does not apply to certain actions related to Puerto Rico Infrastructure Financing Authority ("<u>PRIFA</u>") bonds, or, in

the alternative, lifting the automatic stay allowing Ambac to pursue those actions [ECF No. 7176],

and on any appeals related thereto.

   (a)   <u>Analysis and Strategy (Project Category 210)</u>
        (Fees: <u>$14,833.20</u>; Hours: <u>18.80</u>)

     90.   This Project Category includes time spent related to (a) legal analysis in, and

brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto,

including engaging in meetings to discuss strategic case considerations, the status of various work

streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered

by another Project Category.

   (b)   <u>Tax (Project Category 217)</u>
        (Fees: <u>$9,073.50</u>; Hours: <u>11.50</u>)

     91.   This Project Category includes time spent on tax matters involving the Debtor.

Specifically, Proskauer attorneys spent time reviewing and analyzing the tax related arguments of

the Ambac motion and drafting related opposition.

*     *     *     *

     92.   The foregoing professional services performed by Proskauer on behalf of the

Oversight Board as representative of the Debtor during the Compensation Period were reasonable,

necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the

Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's

creditors, residents, and other stakeholders.  Compensation for the foregoing services as requested

is commensurate with the complexity, importance, and time-sensitive nature of the problems,

issues, and tasks involved.  The professional services were performed with expedition and in an

efficient manner.

     93.   In accordance with the factors enumerated in the Bankruptcy Code, the amount of

fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b) the

47

time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of comparable services other than in a case under the Bankruptcy Code.

### **Actual and Necessary Expenses of Proskauer**

94.      Pursuant to the Guidelines, **Schedule 4** is Proskauer's summary of actual and necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor during the Compensation Period.

95.      In accordance with paragraph C.13 of the Appendix B Guidelines and as more fully itemized in **Schedule 4**, Proskauer seeks reimbursement for its necessary and reasonable expenses, including: (a) reproduction, (b) online research, (c) delivery services and couriers, (d) local travel to and from airports, (e) out-of-town travel and lodging, (f) out-of-town meals, (g) transcription services, (h) litigation support, and (i) professional services.  All expense entries detailed in **Exhibit B** comply with the requirements set forth in the Guidelines, including an itemization of the expenses by category, the date the expense was incurred, and the individual incurring the expense, where available.  The reasons for the expenses are self-explanatory.  In compliance with Appendix B Guidelines paragraph C.13, the requested expenses are of the kind customarily charged to Proskauer's non-bankruptcy clients and by other comparable professionals.

96.      Proskauer generally charges from $0.10 (black and white) to $0.30 (color) per page for photocopying expenses.  The rates charged by the firm for Westlaw and Lexis computerized research vary according to the type of research conducted and the specific files researched, but, in any event, Proskauer does not profit from the use of computer assisted legal research, as set forth in **Schedule 4**.  As per the Appendix B Guidelines, Proskauer has not requested reimbursement of expenses related to overhead charges, such as secretarial services and proofreading.  The

expenditures Proskauer is seeking reimbursement for and which are reflected on **Schedule 4** are all of the type customarily billed to clients.

97.     During the Compensation Period, Proskauer has disbursed **$255,078.07** as necessary and reasonable expenses.  These charges cover Proskauer's direct operating costs, which costs are not incorporated into the firm's hourly billing rates (because to do so would impose that cost upon clients who do not require extensive photocopying and other facilities and services).  Only clients who actually benefit from services of the kind set forth in **Exhibit B** are separately charged for such services.  Proskauer has made every effort to minimize its expenses in the Debtor's Title III Case. The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to effectively serve the needs of the Debtor in its Title III case.

### Compensation Paid and Its Source

98.     All services for which Proskauer seeks compensation, and expenses for which it seeks reimbursement, were performed on behalf of the Oversight Board as representative of the Debtor.  In connection with the matters covered by this Application, Proskauer received no payment and no promises of payment for services rendered, or to be rendered, from any source other than the Debtor.  There is no agreement or understanding between Proskauer and any other person, other than members of the firm, for the sharing of compensation received for services rendered in this Title III case.

99.     PROMESA sections 316 and 317 provide for interim compensation of professionals and govern the Court's award of such compensation.  PROMESA section 316 provides that a court may award a professional person employed by the Debtor or the Oversight Board under PROMESA "(1) reasonable compensation for actual, necessary services rendered by the professional person, or attorney and by any paraprofessional person employed by any such person; and (2) reimbursement

for actual, necessary expenses."  PROMESA § 316(a).  Section 316 also sets forth the criteria for

the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded …
> the court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;
>
> (3) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the completion of, a
> case under this chapter;
>
> (4) whether the services were performed within a reasonable amount of time
> commensurate with the complexity, importance, and nature of the problem, issue, or
> task addressed;
>
> (5) with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the bankruptcy field;
> and
>
> (6) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other than cases
> under this subchapter or title 11.

PROMESA § 316(c).

100.   As noted above, the professional services and expenditures for which Proskauer

seeks compensation and reimbursement in this Application were necessary and beneficial to the

Oversight Board, as representative of the Debtor, and included, among other things, anticipating or

responding to the Oversight Board's needs and assisting in the Oversight Board's navigation of the

Debtor's very complex Title III case.  The compensation requested herein is reasonable in light of

the nature, extent, and value of such services to the Oversight Board.  The Oversight Board has

reviewed and approved this Application.

**Reservations**

101.    To the extent time or disbursement charges for services rendered or expenses

incurred relate to the Compensation Period but were not processed prior to the preparation of this

Application, or Proskauer has for any other reason not yet sought compensation or reimbursement

of expenses herein with respect to any services rendered or expenses incurred during the

Compensation Period, Proskauer reserves the right to request compensation for such services and

reimbursement of such expenses in a future application.

**Notice**

102.    Pursuant to the Interim Compensation Order, notice of this Application has been

filed in the Debtor's Title III Case and served upon:

  (a) the Financial Oversight and Management Board, 40 Washington Square
      South, Office 314A, New York, NY 10012, Attn: Professor Arthur J.
      Gonzalez, Oversight Board Member;

  (b) attorneys for the Financial Oversight and Management Board as
      representative of The Commonwealth of Puerto Rico, O'Neill & Borges
      LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813,
      Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges. com);

  (c) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory
      Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times
      Square, New York, NY 10036, Attn: John J. Rapisardi, Esq.
      (jrapisardi@omm.com), Suzzanne Uhland, Esq. (suhland@omm.com),
      and Diana M. Perez, Esq. (dperez@omm.com);

  (d) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory
      Authority, Marini Pietrantoni Muniz LLC, MCS Plaza, Suite 500, 255
      Ponce de León Ave., San Juan P.R. 00917, Attn.: Luis C. Marini-Biaggi,
      Esq. (lmarini@mpmlawpr.com)   and Carolina Velaz-Rivero Esq.
      (cvelaz@mpmlawpr.com);

  (e) the Office of the United States Trustee for the District of Puerto Rico,
      Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In
      re: Commonwealth of Puerto Rico*);

(f) attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq. (lucdespins@paulhastings.com);

(g) attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Ste. 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. (jcasillas@cstlawpr.com) and Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com);

(h) attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq. (rlevin@jenner.com); and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine Steege, Esq. (csteege@jenner.com) and Melissa Root, Esq. (mroot@jenner.com);

(i) attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A, 416 Ave. Ponce de León, Hato Rey, PR 00918, Attn: A.J. Bennazar-Zequeira, Esq. (ajb@bennazar.org);

(j) the Puerto Rico Department of Treasury, PO Box 9024140, San Juan, PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E. Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting (Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez, Deputy Assistant Secretary of Internal Revenue and Tax Policy (angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant Secretary of Internal Revenue and Tax Policy (francisco.pares@hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant Secretary of the Treasury (Francisco.Pena@hacienda.pr.gov);

(k) attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252 Ponce de León Avenue, Citibank Tower, 12th Floor, San Juan, PR 00918, Attn: Eyck O. Lugo (elugo@edgelegalpr.com); and

(l) attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler (KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing interim compensation for professional services rendered during the Compensation Period in the

amount of **$8,552,642.47**, which is comprised of (i) fees for professional services rendered in the amount of $7,846,461.30 and (ii) the Gross-Up Amount in the amount of $706,181.17,[16] and allowing reimbursement for actual and necessary expenses Proskauer incurred in connection with such services during the Compensation Period in the amount of **$255,078.07**; (b) authorizing and directing the Debtor to pay promptly to Proskauer the difference between (*i*) the amount of interim compensation for professional services rendered and reimbursement of expenses incurred during the Compensation Period allowed hereunder, and (*ii*) the amounts for such compensation and expenses previously paid to Proskauer, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred without prejudice to Proskauer's right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application; and (d) granting Proskauer such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

---

[16] Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

Dated: September 20, 2019
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
     ppossinger@proskauer.com
     ebarak@proskauer.com
     mzerjal@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M. Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and
Management Board as Representative of the
Debtor*