**Estimated Hearing Date**: October 30, 2019 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: October 10, 2019 at 4:00 p.m. (Atlantic Standard Time)

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17–BK–3283–LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>     Debtor. | PROMESA<br>Title III<br>Case No. 17–BK–4780–LTS<br><br>**This Application relates only to PREPA, and shall be filed in the lead Case No. 17–BK–3283–LTS, and PREPA's Title III Case (Case No. 17–BK–4780–LTS)** |

### SUMMARY SHEET TO SIXTH INTERIM FEE APPLICATION OF PROSKAUER ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE DEBTOR, THE PUERTO RICO ELECTRIC POWER AUTHORITY, FOR THE PERIOD FEBRUARY 1, 2019 THROUGH MAY 31, 2019

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17–BK–3283–LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17–BK–3284–LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17–BK–3567–LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17–BK–3566–LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17–BK–4780–LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.).

## Schedule 1

Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("Proskauer") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board for Puerto Rico as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | February 1, 2019 through May 31, 2019 (the "Compensation Period") |
| Amount of Fees Sought excluding Gross–Up Amount: | $5,257,162.20 |
| Gross–Up Amount:[2] | $473,144.59 |
| Amount of Expense Reimbursement Sought: | $163,334.07 |
| Total Fees and Expenses Sought for Compensation Period including the Gross–Up Amount: | $5,893,640.86 |

This is a(n)   ____ Monthly   _X_ Interim __ Final Fee Application

This is the sixth interim fee application filed by Proskauer in the Debtor's Title III case.  The total time expended in connection with the preparation of this interim application is not included herein, as additional time was expended after the Compensation Period.

---

[2] Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross–Up Amount") introduced by the Commonwealth legislation (Act 257–2018) starting December 10, 2018 (the "Withholding").  But Proskauer will only request payment of the Gross–Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross–Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross–Up Amount.

**Sixth Interim Compensation Period**
**February 1, 2019 – May 31, 2019**

| Statement and Date Served | Period Covered | Total Fees Incurred | Total Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Twenty–First** 4/30/2019 | 2/1/19 to 2/28/19 | $730,323.30 | $657,290.97 | $13,378.15 | $657,290.97 | $13,378.15 |
| **Twenty–Second** 5/1/2019 | 3/1/19 to 3/31/19 | $1,808,814.60 | $1,627,933.14 | $85,710.56 | $1,627,933.14 | $85,710.56 |
| **Twenty–Third** 5/30/2019 | 4/1/19 to 4/30/19 | $1,326,174.90 | $1,193,557.41 | $41,318.50 | $1,193,557.41 | $41,318.50 |
| **Twenty–Fourth** 7/1/2019 | 5/1/19 to 5/31/19 | $1,391,849.40 | $1,252,664.46 | $22,926.86 | $1,252,664.46 | $22,926.86 |
| **Totals:** | | **$5,257,162.20** | **$4,731,445.98** | **$163,334.07** | **$4,731,445.98** | **$163,334.07** |

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys | $754.39[3] |
| Blended Rate in This Application for All Timekeepers | $712.32 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $4,731,445.98 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $163,334.07 |
| Number of Professionals Included in this Application[4] | 80 |
| Number of Professionals in this Application NOT Included in Staffing Plan Approved by Client[5] | 16[6] |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period | 35 |

---

[3]   This rate excludes non–attorneys (*e.g.*, paralegals).

[4]   As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non–attorneys.

[5]   As noted in the Staffing Plan for the Compensation Period at Exhibit D-2 in the Application, the number of timekeepers expected to work on the matter during the Compensation Period was 64, and thus the actual number of timekeepers was 16 more than anticipated. However, while the total number of different timekeepers that worked on PREPA during the Compensation Period exceeded the staffing plan, when taken on a monthly basis, the total number of timekeepers was comparable to the staffing plan, as can be seen in **Exhibit B**.  The number of timekeepers exceeded the staffing plan over the entire Compensation Period because in different months different timekeepers with different expertise were consulted to assist with areas within their special knowledge or experience.

[6]   The number of professionals for this sixth Compensation Period increased significantly over the prior compensation period for a variety of reasons.  Additional team members were needed (i) to assist with the negotiation of the Definitive RSA, dated May 3, 2019, and related analysis and strategy; (ii) the filing of the PREPA 9019 Motion to approve certain provisions of the Definitive RSA, and (iii) to assist with litigation connected with the Renewed Receiver Motion, including both substantive and procedural issues, and (iv) to assist with discovery and other litigation matters in UTIER v. PREPA, Case No. 17-AP-229.  To respond to these demands, Proskauer increased its staffing of PREPA to ensure that diligent and timely representation was provided to the Oversight Board.

| | |
|---|---|
| Any Rates Higher than Those Approved or Disclosed when Retained?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No. As explained in Proskauer's Fifth Interim Application (as defined below), rates increased in accordance with Proskauer's Engagement Letter on January 1, 2019. Rates have not increased during the Compensation Period. |

**Schedule 2**

**Summary of Professional Services Rendered by
Timekeeper for the Period February 1, 2019 through May 31, 2019**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| *PARTNERS* | | | | |
| Barak, Ehud | BSGR&B[8] – 2010 | $789 | 703.70 | $555,219.30 |
| Bell, Cristopher O. | Corporate – 2009 | $789 | 4.50 | $3,550.50 |
| Bienenstock, Martin J. | BSGR&B – 1978 | $789 | 184.10 | $145,254.90 |
| Brenner, Guy | Labor & Employment – 2002 | $789 | 7.30 | $5,759.70 |
| Corn, Richard M. | Tax – 2005 | $789 | 14.50 | $11,440.50 |
| Dale, Margaret A. | Litigation – 1990 | $789 | 259.10 | $204,429.90 |
| Failla, John E. | Litigation – 1989 | $789 | 1.60 | $1,262.40 |
| Febus, Chantel L. | Litigation – 2003 | $789 | 16.90 | $13,334.10 |
| Ferrara, Ralph C. | Litigation – 1970 | $789 | 17.90 | $14,123.10 |
| Firestein, Michael A. | Litigation – 1983 | $789 | 43.30 | $34,163.70 |
| Gerkis, James P. | Corporate – 1984 | $789 | 2.00 | $1,578.00 |
| Hamilton, Martin T. | Tax – 2004 | $789 | 1.10 | $867.90 |
| Levitan, Jeffrey W. | BSGR&B – 1983 | $789 | 3.90 | $3,077.10 |
| Mashberg, Gregg M. | Litigation – 1978 | $789 | 465.60 | $367,358.40 |

---

[7]   In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases.  Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2.  Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1.  Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is available on the Oversight Board's website at https://oversightboard.pr.gov/documents/) (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent.  As detailed in the Fifth Interim Application, as of January 1, 2019, Proskauer's rates under the Engagement Letter increased from $759 per hour for attorneys and $260 per hour for paraprofessionals to $789 per hour for attorneys and $270 per hour for paraprofessionals. Additionally at that time, with the client's knowledge and permission, Proskauer created a new rate class, e–Discovery Attorney, with the rate of $390 per hour. Rates have not increased during this Compensation Period.

[8]   Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Mervis, Michael T. | Litigation – 1990 | $789 | 35.70 | $28,167.30 |
| Mungovan, Timothy W. | Litigation – 1994 | $789 | 24.40 | $19,251.60 |
| Possinger, Paul V. | BSGR&B – 1993 | $789 | 590.20 | $465,667.80 |
| Ramachandran, Seetha | Litigation – 2001 | $789 | 40.40 | $31,875.60 |
| Rappaport, Lary Alan | Litigation – 1979 | $789 | 68.50 | $54,046.50 |
| Ratner, Stephen L. | Litigation – 1975 | $789 | 12.30 | $9,704.70 |
| Richman, Jonathan E. | Litigation – 1984 | $789 | 292.70 | $230,940.30 |
| Rosen, Brian S. | BSGR&B – 1983 | $789 | 0.90 | $710.10 |
| Schafler, Seth B. | Litigation – 1985 | $789 | 2.70 | $2,130.30 |
| Weise, Steven O. | Corporate – 1974 | $789 | 38.90 | $30,692.10 |
| **Total for Partners:** | | | **2,832.20** | **$2,234,605.80** |
| *SENIOR COUNSEL* | | | | |
| Alonzo, Julia D. | Litigation – 2009 | $789 | 22.60 | $17,831.40 |
| Forman, Daniel L. | Corporate – 2009 | $789 | 2.00 | $1,578.00 |
| Roche, Jennifer L. | Litigation – 2007 | $789 | 17.50 | $13,807.50 |
| **Total for Senior Counsel:** | | | **42.10** | **$33,216.90** |
| *ASSOCIATES* | | | | |
| Bargoot, Alexandra V. | Litigation – 2016 | $789 | 13.20 | $10,414.80 |
| Blackwell, Brooke H. | Corporate – 2018 | $789 | 64.90 | $51,206.10 |
| Bowman, Courtney M. | Litigation – 2013 | $789 | 0.80 | $631.20 |
| Carino, Elisa M. | Litigation  – 2019 | $789 | 369.80 | $291,772.20 |
| Clark, Brandon C. | Litigation – 2014 | $789 | 428.60 | $338,165.40 |
| Cushing, Blake R. | Litigation  – 2018 | $789 | 21.90 | $17,279.10 |
| Desatnik, Daniel S. | BSGR&B – 2016 | $789 | 576.10 | $454,542.90 |
| Dodge, Trevor M. | Corporate – 2017 | $789 | 11.00 | $8,679.00 |
| Friedman, Amelia | Litigation – 2013 | $789 | 0.20 | $157.80 |
| Habenicht, Yomarie S. | Tax – 2017 | $789 | 2.40 | $1,893.60 |

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Jones, Erica T. | Litigation – 2018 | $789 | 510.70 | $402,942.30 |
| Kim, Mee R. | Litigation – 2016 | $789 | 151.10 | $119,217.90 |
| Kline, Emily H. | Litigation – 2019 | $789 | 17.90 | $14,123.10 |
| Ma, Steve | BSGR&B – 2014 | $789 | 24.30 | $19,172.70 |
| Morris, Matthew J. | Litigation – 2000 | $789 | 118.10 | $93,180.90 |
| Omorogbe, Philip[9] | Corporate – 2019 | $789 | 19.30 | $15,227.70 |
| Palmer, Marc C. | Litigation – 2018 | $789 | 9.10 | $7,179.90 |
| Pollick, Daniel C. | Corporate – 2018 | $789 | 22.80 | $17,989.20 |
| Presant, Bradley M. | Litigation – 2019 | $789 | 15.60 | $12,308.40 |
| Sherman, Christine N. | Tax – 2019 | $789 | 5.60 | $4,418.40 |
| Silagi, Alex D. | Litigation – 2015 | $789 | 56.80 | $44,815.20 |
| Skellet, Alexandra K. | Litigation – 2003 | $789 | 27.00 | $21,303.00 |
| Stafford, Laura | Litigation – 2012 | $789 | 231.60 | $182,732.40 |
| Stevens, Elliot R. | BSGR&B – 2018 | $789 | 286.80 | $226,285.20 |
| Theodoridis, Chris | BSGR&B – 2011 | $789 | 2.50 | $1,972.50 |
| Wertheim, Eric R. | Litigation – 2019 | $789 | 18.00 | $14,202.00 |
| Wolf, Lucy | Litigation – 2017 | $789 | 259.10 | $204,429.90 |
| Zerjal, Maja | BSGR&B – 2012 | $789 | 15.30 | $12,071.70 |
| **Total for Associates:** | | | **3,280.50** | **$2,588,314.50** |
| ***E–DISCOVERY ATTORNEYS*** | | | | |
| Chamberlain, Sherry A. | Professional Resources – 2003 | $390 | 5.50 | $2,145.00 |
| Ike, Yvonne O. | Professional Resources – 2009 | $390 | 151.00 | $58,890.00 |

---

[9]  Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual– and jurisdictional–basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Kay, James | Professional Resources – 1978 | $390 | 362.00 | $141,180.00 |
| Olener, David P. | Professional Resources – 2003 | $390 | 66.00 | $25,740.00 |
| **Total for e–Discovery Attorneys:** | | | **584.50** | **$227,955.00** |
| *LAW CLERKS* | | | | |
| Omorogbe, Philip[10] | Corporate Law Clerk – N/A | $270 | 14.80 | $3,996.00 |
| Sosa, Javier F. | Litigation Law Clerk – N/A | $270 | 120.90 | $32,643.00 |
| **Total for Law Clerks:** | | | **135.70** | **$36,639.00** |
| *PARAPROFESSIONALS* | | | | |
| Chernus, Eric R. | Professional Resources – N/A | $270 | 92.70 | $25,029.00 |
| D'Errico, Megan T. | Library – N/A | $270 | 0.50 | $135.00 |
| Elsner, Rebecca R. | Litigation Paralegal – N/A | $270 | 2.30 | $621.00 |
| Feldstein, Jesse | Litigation Paralegal – N/A | $270 | 4.00 | $1,080.00 |
| Geary, Laura M. | Litigation Paralegal – N/A | $270 | 94.20 | $25,434.00 |
| Hoffman, Joan K. | Litigation Paralegal – N/A | $270 | 8.90 | $2,403.00 |
| Infante, Elle M. | Litigation Paralegal – N/A | $270 | 3.20 | $864.00 |
| King, Charles H. | Litigation Paralegal – N/A | $270 | 5.60 | $1,512.00 |
| Klock, Joseph | Professional Resources – N/A | $270 | 4.90 | $1,323.00 |

---

[10] Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual– and jurisdictional–basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | TOTAL HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Miller, Tiffany | Labor & Employment Paralegal – N/A | $270 | 0.40 | $108.00 |
| Monforte, Angelo | Litigation Paralegal – N/A | $270 | 3.90 | $1,053.00 |
| Petrov, Natasha | BSGR&B Paralegal – N/A | $270 | 45.00 | $12,150.00 |
| Piacente, Vito S. | Corporate Paralegal – N/A | $270 | 1.30 | $351.00 |
| Silvestro, Lawrence T. | Litigation Paralegal – N/A | $270 | 128.00 | $34,560.00 |
| Supronik, Lucasz | Professional Resources – N/A | $270 | 2.90 | $783.00 |
| Sutherland, Julia L. | Litigation Paralegal – N/A | $270 | 10.30 | $2,781.00 |
| Tarrant, Christopher M. | BSGR&B Paralegal – N/A | $270 | 63.20 | $17,064.00 |
| Urias, Gabriela A. | Litigation Paralegal – N/A | $270 | 13.10 | $3,537.00 |
| Wizner, Eamon | Litigation Paralegal – N/A | $270 | 8.60 | $2,322.00 |
| Wolf, Joseph P. | Litigation Paralegal – N/A | $270 | 12.30 | $3,321.00 |
| **Totals for Paraprofessionals:** | | | **505.30** | **$136,431.00** |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys, Law Clerks, and Paraprofessional Totals:** | **7,380.30** | **$5,257,162.20** |

10

**Schedule 3**

**Summary of Professional Services Rendered by Project
Category for the Period February 1, 2019 through May 31, 2019**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 201 | Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants | 142.60 | $112,044.30 |
| 202 | Legal Research | 226.40 | $176,397.90 |
| 203 | Hearings and Other Non–Filed Communications with the Court | 14.70 | $11,598.30 |
| 204 | Communications with Claimholders | 247.80 | $195,514.20 |
| 205 | Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities | 179.30 | $141,467.70 |
| 206 | Documents Filed on Behalf of the Board | 1,979.30 | $1,548,848.40 |
| 207 | Non–Board Court Filings | 60.00 | $46,561.50 |
| 208 | Stay Matters | 33.80 | $26,253.00 |
| 209 | Adversary Proceedings | 4.50 | $3,550.50 |
| 210 | Analysis and Strategy | 3,706.50 | $2,687,276.40 |
| 211 | Non–Working Travel Time | 42.70 | $33,690.30 |
| 212 | General Administration | 592.20 | $179,763.90 |
| 214 | Legal/Regulatory Matters | 0.40 | $315.60 |
| 215 | Plan of Adjustment and Disclosure Statement | 60.20 | $47,497.80 |
| 217 | Tax | 23.20 | $18,304.80 |
| 218 | Employment and Fee Applications | 61.40 | $23,895.90 |
| 219 | Appeal | 0.40 | $315.60 |
| 220 | Fee Applications for Other Parties | 4.90 | $3,866.10 |
| | **Total for All Project Categories:** | **7,380.30** | **$5,257,162.20** |

**Schedule 4**

**Summary of Actual and Necessary Expenses Incurred
for the Period February 1, 2019 through May 31, 2019**

| EXPENSE CATEGORY | AMOUNTS |
|---|---|
| Airplane | $7,511.22 |
| Dinner Voucher/Sweb | $242.80 |
| Food Service/Conf. Dining | $5,319.62 |
| Lexis | $56,605.00 |
| Local Meals | $53.63 |
| Lodging | $9,794.03 |
| Other Database Research | $161.90 |
| Out Of Town Meals | $1,209.38 |
| Out Of Town Transportation | $1,894.05 |
| Practice Support Vendors | $38,161.70 |
| Printing, Binding, Etc. | $1,601.24 |
| Reproduction | $13,980.80 |
| Taxi, Carfare, Mileage And Parking | $669.01 |
| Taxicab/Car Svc. | $755.46 |
| Telephone | $140.00 |
| Transcripts & Depositions | $24,895.43 |
| Trial Transcriptions | $338.80 |
| **Total:** | **$163,334.07** |

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | **BILLED**<br><br>Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, *excluding bankruptcy* | **BILLED**<br><br>In this fee application[11] |
| Partners | $1,186 | $789.00 |
| Senior Counsel | $987 | $789.00 |
| Associates (7 or more years since first admission) | $898 | $789.00 |
| Associates (4–6 years since first admission) | $847 | $789.00 |
| Associates (1–3 years since first admission) | $667 | $789.00 |
| e–Discovery Attorneys | $722 | $390.00 |
| Law Clerks | $560 | $270.00 |
| Paraprofessionals | $317 | $270.00 |
| **All Timekeepers Aggregated:** | **$887** | **$712.32** |

---

[11] As detailed in the Fifth Interim Application, as of January 1, 2019, Proskauer's rates under the Engagement Letter increased from $759 to $789 per hour for attorneys, and from $260 to $270 per hour for paraprofessionals. Additionally at that time, with the client's knowledge and permission, Proskauer created a new rate class, e–Discovery Attorney, with the rate of $390 per hour. Rates have not increased during this Compensation Period.

**Estimated Hearing Date**: October 30, 2019 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: October 10, 2019 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17–BK–3283–LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br>Case No. 17–BK–4780–LTS<br><br>**This Application relates only to PREPA, and shall be filed in the lead Case No. 17–BK–3283–LTS, and PREPA's Title III Case (Case No. 17–BK–4780–LTS)** |

## SIXTH INTERIM FEE APPLICATION OF PROSKAUER ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE DEBTOR, PUERTO RICO ELECTRIC POWER AUTHORITY, FOR THE PERIOD FEBRUARY 1, 2019 THROUGH MAY 31, 2019

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and Management

Board for Puerto Rico (the "Oversight Board" or "FOMB") as representative of the Puerto Rico

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17–BK–3283– LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17–BK–3284–LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17–BK–3567–LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17–BK–3566–LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17–BK–4780–LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.).

Electric Power Authority (the "Debtor" or "PREPA") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this sixth interim application (the "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016–1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this Court's *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Case No. 17–BK–3283–LTS, ECF No. 3269] (the "Interim Compensation Order"), for (a) allowance of interim compensation for professional services performed by Proskauer for the period commencing February 1, 2019 through and including May 31, 2019 (the "Compensation Period") in the amount of **$5,730,306.79**, which is comprised of (i) fees for professional services rendered in the amount of $5,257,162.20, and (ii) the Gross–Up Amount in the amount of $473,144.59;[5] and (b) reimbursement of its actual and necessary expenses in the amount of **$163,334.07** incurred during the Compensation Period.  In support of the Application, Proskauer respectfully avers as follows:

---

[2]   PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

[3]   The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III Case and does not address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf of other Title III debtors, or (b) outside the Title III process.

[4]   The Bankruptcy Rules are made applicable to the Debtor's Title III Case by PROMESA section 310.

[5]   Proskauer will only request payment of the Gross–Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross–Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross–Up Amount.

**Jurisdiction**

1.        The United States District Court for the District of Puerto Rico (the "Court") has

subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.        Venue is proper in this district pursuant to PROMESA section 307(a).

3.        The statutory predicates for the relief requested herein are PROMESA sections 316

and 317.

**Background**

4.        On June 30, 2016, the Oversight Board was established under PROMESA section

101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting

members.

5.        Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this

subchapter is the representative of the debtor" and "may take any action necessary on behalf of the

debtor to prosecute the case of the debtor, including filing a petition under section [304] of

[PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court."

PROMESA § 315(a), (b).

6.        On September 30, 2016, the Oversight Board designated the Debtor as a "covered

entity" under PROMESA section 101(d).

7.        On November 25, 2016, the Oversight Board retained Proskauer at substantial

discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5** above.

8.        On July 2, 2017, the Oversight Board issued a restructuring certification pursuant to

PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PREPA pursuant to

PROMESA section 304(a), commencing a case under title III thereof (the "Debtor's Title III

Case"). Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's representative in the Debtor's Title III Case.

9.       Background information regarding the Debtor and the commencement of the Debtor's Title III Case is contained in the *Notice of Filing of Statement of Oversight Board Regarding PREPA's Title III Case* [Case No. 17–BK–4780–LTS, ECF No. 2].

10.      On December 15, 2017, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period July 2, 2017 through September 30, 2017* [Case No. 17–BK–3283–LTS, ECF No. 2053] (the "First Interim Application").

11.      On April 9, 2018, Proskauer filed the *Second First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period October 1, 2017 through January 31, 2018* [Case No. 17–BK–3283–LTS, ECF No. 2876] (the "Second Interim Application").

12.      On July 16, 2018, Proskauer filed the *Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period February 1, 2018 through May 31, 2018* [Case No. 17–BK–3283–LTS, ECF No. 3582] (the "Third Interim Application").

13.     On November 16, 2018, Proskauer filed the *Fourth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period June 1, 2018 through September 30, 2018* [Case No. 17–BK–3283–LTS, ECF No. 4287] (the "Fourth Interim Application").

14.     On May 21, 2019, Proskauer filed the *Fifth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period October 1, 2018 through January 31, 2019* [Case No. 17–BK–3283–LTS, ECF No. 7052] (the "Fifth Interim Application").

15.     On April 30, 2019, Proskauer served on the Notice Parties (as defined in the Interim Compensation Order) its twenty–first monthly fee statement for the period February 1, 2019 through February 28, 2019.  On May 1, 2019, Proskauer served on the Notice Parties its twenty–second monthly fee statement for the period March 1, 2019 through March 31, 2019.  On May 30, 2019, Proskauer served on the Notice Parties its twenty–third monthly fee statement for the period April 1, 2019 through April 30, 2019.  On July 1, 2019, Proskauer served on the Notice Parties its twenty–fourth monthly fee statement for the period May 1, 2019 through May 31, 2019.

16.     In accordance with the Interim Compensation Order and as reflected in the foregoing summary, Proskauer has requested an aggregate payment of **$4,894,780.05** (payment of ninety percent (90%) of the compensation sought and reimbursement of one–hundred percent (100%) of expenses incurred) and has received **$4,894,780.05** with respect to fee statements filed during the Compensation Period.

## **Summary of Services Rendered by Proskauer During the Compensation Period**

17.    The instant Application is Proskauer's sixth application for interim compensation in the Debtor's Title III Case.  To make more efficient for the Court and other readers the review of Proskauer's fee applications in all the pending Title III cases, paragraphs 17 through 21 of the instant Application, and the corresponding paragraphs in each of Proskauer's sixth interim fee applications in the other pending Title III cases, are the same and cover the principal activities in all the Title III cases.

18.    In the Compensation Period Proskauer serviced many new Oversight Board projects, but also continued the significant progress achieved during the preceding interim periods:

- In the first interim period, Proskauer transitioned the Commonwealth and certain of its instrumentalities to Title III, and, among other things, proposed and negotiated a mechanism to resolve the Commonwealth-COFINA dispute over which entity owns billions of dollars of sales and use tax revenues, and successfully defended against attempts by creditors to (a) seize the toll revenues HTA needed to maintain the Commonwealth's transportation system and (b) seize PREPA and its revenues by putting PREPA in the hands of a receiver.

- In the second interim period, in the face of the devastation wrought by Hurricanes Irma and Maria, Proskauer worked with the Oversight Board's officers and other professionals to assess the situation, take actions to ensure the provision of basic services, and reformulate restructuring initiatives to reflect the changing economic landscape. Proskauer also successfully defended against numerous creditor efforts to enjoin the Oversight Board from proceeding toward a plan of adjustment based on the certified fiscal plan and to seize many revenue streams.

- In the third interim period, Proskauer secured emergency authorization for the Commonwealth to lend $300 million to PREPA on a superpriority basis, despite significant opposition by creditor groups, and continued its leading role in assisting the Oversight Board with the development, certification, and defense of revised fiscal plans that provide the blueprint for Puerto Rico's future prosperity and fiscal responsibility. Proskauer also successfully defended against numerous creditor efforts to delay or frustrate the debtors' restructurings during these periods.

- In the fourth interim period, Proskauer continued forging paths to restructure Puerto Rico's debt, representing the Oversight Board as the Administrative Supervisor of the Government Development Bank for Puerto Rico's ("GDB") Title VI qualifying modification, representing the Oversight Board in negotiations seeking to restructure

6

a major portion of PREPA's debt, and continuing to work through negotiations related to (and eventually resolving) the Commonwealth-COFINA dispute. COFINA and GDB alone account for over $20 billion of Puerto Rico's $74 billion in bond debt, and their successful restructuring are significant building blocks for the Oversight Board to accomplish its overall mandate to achieve fiscal responsibility and access to capital markets for Puerto Rico. Proskauer also vigorously and successfully protected the Oversight Board's fiscal plan and budgetary powers in adversary proceedings commenced by the Governor and Legislature challenging the Oversight Board's authority, among other critical efforts in litigation during the fourth interim period.

- In the fifth interim period, Proskauer continued its leading role in assisting the Oversight Board with the development and certification of revised fiscal plans. Proskauer also represented the Oversight Board in PREPA's Title III case, leading the defense against a renewed motion seeking to lift the stay to allow for the appointment of a receiver for PREPA, and dedicating significant effort to forward negotiations with a substantial number of PREPA bondholders to draft and finalize a definitive restructuring support agreement. Proskauer also drafted appellate briefs and presented oral argument before the United States Court of Appeals for the First Circuit concerning creditors' appeals seeking to reverse decisions protecting HTA and PREPA from creditor attempts to seize their revenues. Proskauer also worked with several of the Title III Debtors and their related advisors in opposing a multitude of motions seeking to lift the automatic stay and otherwise hamper the debtors' restructuring. Lastly, Proskauer counseled the Oversight Board as it engaged with the Commonwealth's various creditors, stakeholders and professionals in mediations and negotiations related to the Commonwealth's restructuring, and has devoted significant time to research and develop strategies to ensure the debtors exit Title III as soon as possible.

19.     In the instant Compensation Period, Proskauer also completed the briefing for the First Circuit to defend against the now former Governor's appeal and researched and prepared for new litigation to nullify joint resolutions and other laws enacted in violation of PROMESA from the Oversight Board's perspective.    Additionally, Proskauer negotiated new restructuring agreements with various creditor groups and unions, and drafted what would be the major portions of the proposed plan of adjustment and proposed disclosure statement.   In the Commonwealth's Title III case, among many other achievements, Proskauer counseled the Oversight Board through many statutory and constitutional issues related to the development and certification of a fiscal plan and various budgets for the Commonwealth and its instrumentalities.  Moreover, Proskauer advised

7

the Oversight Board as it brought, jointly with the UCC, a challenge to alleged liens asserted by holders of general obligation bonds of the Commonwealth.  In the ERS Title III case, Proskauer defended against efforts by certain secured creditors to lift the automatic stay to access revenues critical to ERS's restructuring.  In the PREPA Title III case, Proskauer made strides in defending against a renewed motion brought by monoline insurers of PREPA bonds to lift PREPA's stay to appoint a receiver, while simultaneously negotiating with some of the moving parties.  In addition, Proskauer finalized the hard-negotiated Definitive Restructuring Agreement for PREPA with a substantial majority of PREPA's bondholders, and sought court approval for the PREPA RSA by filing a motion under Bankruptcy Rule 9019, and several supplemental memoranda of law in support of it.  In the HTA Title III case, among other matters, Proskauer represented the Oversight Board in its joint filing with the UCC of a challenge to the nature, extent and scope of purported liens securing HTA bondholders' claims.  Throughout the Compensation Period, Proskauer continued to object to defective claims against the debtors, provided on-going legal assistance to the Oversight Board, and negotiated with various creditors, stakeholders, government parties and other parties in interest in furtherance of each of the debtors' respective restructurings, and, ultimately, helped the Oversight Board progress toward its PROMESA prescribed mandate.

20.    Some of Proskauer's notable undertakings during this Compensation Period in furtherance and defense of the Oversight Board's mandate under PROMESA of returning the Commonwealth to fiscal responsibility and access to capital markets include:

- <u>Certification of New Fiscal Plans and Budgets.</u> Proskauer played an instrumental and extensive role in the development of new certified fiscal plans and budgets for the Commonwealth and its instrumentalities to reflect and account for ongoing developments in Puerto Rico. Proskauer provided counsel to the Oversight Board in this regard as the Oversight Board and its financial advisors rigorously analyzed data and assessed the economic and structural impact of the proposed fiscal plans. Throughout, Proskauer provided on-going assistance with emergent legal issues, and helped with the drafting of the new fiscal plans and budgets to achieve PROMESA's

8

purpose of instilling fiscal responsibility and restoring the island's access to capital markets.

- Claim Objections. Pursuant to the Bar Date Orders [ECF Nos. 2521 and 3160], approximately 170,378 claims were filed against the Debtors and logged by Prime Clerk. Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors. Of the proofs of claim filed, over 3,000 claims were filed in relation to COFINA, totaling approximately $10.1 trillion in asserted claims; approximately 55,000 claims were filed in relation to, or reclassified to be asserted against, ERS, totaling approximately $10.2 trillion in asserted claims; over 2,000 claims were filed in relation to HTA, totaling approximately $83.1 billion in asserted claims; and approximately 108,000 claims were filed against the Commonwealth, totaling approximately $33.2 trillion in asserted claims. Upon review and further assessment by Proskauer, it became clear that many of these claims need not have been filed at all, or suffered from some other flaw, such as improperly identifying one of the Debtors, or being duplicative of other proofs of claim. In connection with these claims, Proskauer, working with other professionals, filed a total of 15 omnibus objections and 9 individual objections between January 31, 2019 and May 31, 2019. Proskauer spent a significant amount of time and effort preparing and filing these objections, as well as reviewing responses to various objections, negotiating resolutions to the objections with creditors, preparing and filling replies in support of their objections, and attending several related hearings. As a result of Proskauer's efforts, between January 31, 2019 and May 31, 2019 approximately 2,692 claims were expunged and 38 claims were either partially expunged or moved to another Debtor.

- ERS Lift Stay. During the Compensation Period, and in connection with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [Case No. 17-3566, ECF No. 289] (the "ERS Lift Stay Motion"), Proskauer spent numerous hours conducting research and analyses, as well as drafting objections, responses and discovery requests in connection with (i) the ERS Lift Stay Motion; (ii) an urgent motion by certain secured creditors to expedite consideration of the ERS Lift Stay Motion; and (iii) and motions to compel concerning the ERS Lift Stay Motion. Additionally, Proskauer (i) communicated with counsel and other advisors to AAFAF on multiple adequate protection related discovery issues and developed further discovery strategy; (ii) communicated with bondholders' counsel on multiple discovery related issues, including motions to compel production of documents, confidentiality and privilege, search terms for document collection and review, and depositions scope and scheduling, and (iii) prepared for and participated in meet-and-confer sessions with bondholders' counsel on multiple adequate protection related discovery issues as well as attended various hearings in connection with discovery issues.

- First Circuit Appeals. During the Compensation Period, Proskauer also defended and litigated several matters before the First Circuit. The following is a summary of major appeals in which Proskauer served as lead counsel for the Title III Debtors during the Compensation Period:

(1) <u>AMP v. Commonwealth of Puerto Rico, et al.</u>, Case No. 18-2194: This appeal
stems from a notice of appeal of the *Memorandum Order Denying Motion of
Official Committee of Unsecured Creditors for Entry of an Order Enforcing the
Automatic Stay* [Case No. 17-3283, ECF No. 3941], denying the Autonomous
Municipality of Ponce's ("<u>AMP</u>") request to modify the stay because AMP failed
to demonstrate cause. AMP filed its opening brief on March 18, 2019. Proskauer
researched, prepared and filed a brief in opposition, on behalf of the Oversight
Board, on May 1, 2019. On June 5, AMP filed its reply. Oral argument was
conducted on September 11, 2019, outside this Compensation Period.

(2) <u>Rossello Nevares, et al v. FOMB, et al.</u>, Case No. 18--2154: This appeal stems
from a notice of appeal of the *Opinion and Order Granting in Part Defendants'
Motion to Dismiss the Complaint*, ECF No. 33 in Adv. Proc. No. 18-00080,
challenging the Court's holding "[t]he power bestowed on the Oversight Board by
Section 205(b)(1)(K) of PROMESA allows the Oversight Board to make binding
policy choices for the Commonwealth, notwithstanding the Governor's rejection
of Section 205 recommendations . . . ."[6] Proskauer finalized and filed the
Appellee's brief on behalf of the FOMB on May 3, 2019. Additionally, Proskauer
researched the issues at hand and prepared for oral arguments before the First
Circuit, which took place on July 24, 2019.

(3) <u>Gracia Gracia et al. v. Commonwealth of Puerto Rico</u>, Case No. 18-1463: On
February 7, 2018, Gracia-Gracia filed a motion to modify the automatic stay to
allow the enforcement of the entered settlements. *See Motion Requesting Relief
of Stay under 362 (D)(1) of the Bankruptcy Code* [Case No. 17-3283, ECF No.
2434]. The Title III Court granted the request in part, modifying the automatic
stay to permit the notice and claim submission and review process, but denying
the request in all other respects, including the payment of reimbursements and
attorneys' fee awards. Plaintiffs appealed and argued the duplicate premiums held
in the Commonwealth's reserve account, and subject to the automatic stay, belong
to the class members and are not the property of Debtors. The Debtors disagreed
with this contention. The appeal was argued to the First Circuit on June 5, 2019,
and awaits decision.

(4) <u>Rene Pinto-Lugo et al. and Manuel Natal-Albelo v. Commonwealth</u>, Case No. 19-
1181; <u>Elliott, Hein and Dvores v. Commonwealth</u>, Case No. 19-118; and
<u>Cooperativas v. COFINA</u>, Case No. 19-1391: On February 22, 2019, appellants
(i) Rene Pinto-Lugo and Manuel Natal-Albelo (Rene Pinto-Lugo et al. and Manuel
Natal-Albelo v. Commonwealth, Case No. 19-1181 (1st Cir.)) ("<u>Pinto-Lugo</u>"), (ii)
Mark Elliott, Lawrence B. Dvores, and Peter C. Hein (Elliott, Hein and Dvores v.
Commonwealth, Case No. 19-1182 (1st Cir.)) (the "<u>Elliott Appellants</u>"), and (iii)
Cooperativa de Ahorro y Credito Dr. Manuel Zeno Gandia, Cooperativa de Ahorro
y Credito de Juana Diaz, and Cooperativa de Ahorro y Credito de Rincon
(Cooperativas v. COFINA, Case No. 19-1391 (1st Cir.) (the "<u>Cooperativas</u>

---

[6]   *Hon. Ricardo Antonio Rosselló Nevares et al. v. Oversight Board, et al., (In re The Financial Oversight and Management Board for
Puerto Rico, as representative of The Commonwealth of Puerto Rico)*, Adv. Proc. No. 18-080-LTS in 17 BK 3283-LTS (D.P.R.,
August 7, 2018) at 25.

Appellants") filed separate appeals of the order confirming the COFINA Plan of Adjustment. On June 28, 2019 with respect to the Cooperativas appeal and on April 12, 2019 with respect to the Pinto-Lugo and Hein appeals, the Oversight Board filed a motion to dismiss each appeal as equitably moot, arguing that since the COFINA Plan of Adjustment has been fully consummated and relied upon by innocent third parties, granting the appellants' request to overturn the confirmation of the plan would be impractical and inequitable. In particular, COFINA's obligations under its old bonds have been canceled, new bonds have been issued and have been traded in public markets, distributions have been made to creditors, and litigations have been dismissed with prejudice. On the same day, the COFINA Senior Bondholders' Coalition filed a motion to intervene in the appeal in support of the Oversight Board.

(5) <u>Centro de Salud Familiar J.P.F., et al., v. Commonwealth of Puerto Rico</u>, Case No. 19-1189: On April 2, 2018, Magistrate Judge Dein, at ECF No. 55 in Adv. Proc. No. 17-00227, issued a report and recommendation on the Commonwealth's motion for abstention and remand, recommending that the motion be granted, the case be remanded back to the Commonwealth Court and the stay be lifted to allow plaintiffs to proceed to judgment in the Commonwealth Court. Plaintiffs objected to the recommendation and report. On July 10, 2018, the Title III Court entered a memorandum order overruling objections to and adopting the April 2, 2018 report and recommendation, and granting the Commonwealth's motion for abstention and directed the case to be remanded. On August 8, 2018, plaintiffs appealed the Title III Court's order to the First Circuit, which was docketed on February 25, 2019. Plaintiffs' opening brief on appeal is due September 6, 2019.

- In addition, the below is a summary of major appeals in which Proskauer received favorable judgments before the First Circuit for the Debtors and the Oversight Board during the Compensation Period:

  o <u>Mendez-Nunez v. FOMB, et al.</u>, Case No. 18-1773: This appeal stems from a notice of appeal of the Opinion and Order Granting Defendants' Motion to Dismiss the Plaintiffs' Complaint, ECF No. 46 in Adv. Proc. No. 18-00081, dismissing plaintiffs' challenges to the Oversight Board's fiscal year 2019 certified budget. During the fifth interim period, Proskauer researched, drafted, and filed Appellee's brief on behalf of the Oversight Board. Additionally, Proskauer devoted many hours to prepare for the oral arguments and research the issues on appeal. Oral argument took place on February 6, 2019. On February 22, 2019, the First Circuit issued an opinion affirming the Court's order dismissing the adversary proceeding.

  o <u>Assured Guaranty Corporation, et al v. Commonwealth of Puerto Rico, et al.</u>, Case No. 18-1165: This appeal stems from a notice of appeal of the Opinion and Order Granting Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(B)(1) and (B)(6), ECF No. 125 from Adv. Proc. No. 17-00155. During the fifth interim period, Proskauer researched the issues on appeal as well as prepared for oral arguments, which occurred on November 5, 2018 before the First Circuit. On March 26, 2019, the First Circuit issued its opinion in which the First Circuit affirmed this Court's opinion.

    o  <u>Aurelius Capital Master, Ltd. et al. v. Commonwealth of Puerto Rico, et al.</u>, Case No. 18-1108: This appeal stems from a notice of appeal of the Opinion and Order Granting Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P 12(b)(a) and 12(B)(b), ECF No. 124 from Adv. Proc. No. 17-00189. Proskauer prepared for oral argument before the First Circuit, which took place on November 5, 2018.  On March 26, 2019 the First Circuit issued its opinion in which the First Circuit affirmed this Court's order dismissing the adversary complaint.

- <u>PREPA Renewed Receiver Motion.</u> Following the First Circuit's ruling on the appeal of the initial PREPA receiver motion, on October 3, 2018, National, Assured, and Syncora filed the *Motion of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief From the Automatic Stay to Allow Movants to Enforce Their Statutory Right to Have a Receiver Appointed* [Case No. 17-4780, ECF No. 982] (the "<u>Renewed Receiver Motion</u>"), seeking to lift the automatic stay to seek the appointment of a receiver. In the Renewed Receiver Motion, National, Assured, and Syncora assert, among other things, that the bondholders' liens encompass all revenues and that their collateral package includes various contractual covenants contained in the Trust Agreement. During the Compensation Period, Proskauer prepared an opposition and related filings defending against the Renewed Receiver Motion and its potentially devastating consequences to PREPA and Puerto Rico as a whole. Proskauer has also agreed to or successfully obtained numerous extensions of the response deadlines for the Renewed Receiver Motion to facilitate ongoing negotiations with PREPA's bondholders.  On May 9, 2019, the Court entered an order staying the briefing on the Renewed Receiver Motion until after the Court's ruling on (i) the PREPA 9019 Motion and (ii) a related motion to dismiss the Renewed Receiver Motion.  On May 10, 2019, the Oversight Board and AAFAF filed a motion to dismiss the Renewed Receiver Motion [Case No. 17-4780, ECF No. 1233] ("<u>Motion to Dismiss</u>").  Briefing on the Motion to Dismiss and PREPA 9019 Motion are currently ongoing.

- <u>PREPA 9019 Motion.</u>  During the Compensation Period, Proskauer employed significant resources researching, drafting and negotiating the terms of the PREPA 9019 Motion and on May 10, 2019 filed the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, And 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Case No. 17-4780, ECF No. 1235] (the "<u>PREPA 9019 Motion</u>").  The PREPA 9019 Motion seeks approval of certain settlements embodied in the Definitive Restructuring Support Agreement dated as of May 3, 2019, (the "<u>RSA</u>" or "<u>Definitive RSA</u>") by and among (1) PREPA, (2) the Oversight Board, (3) AAFAF (PREPA, the Oversight Board, and AAFAF are sometimes collectively referred to herein as the "<u>Government Parties</u>"), (4) the members of the Ad Hoc Group of PREPA Bondholders, (5) any other persons who beneficially own or control Uninsured Bonds that are party to the RSA or execute a joinder to the RSA (the "<u>Uninsured Supporting Holders</u>"), and (5) Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively "<u>Assured</u>," Assured and the Uninsured Supporting Holders are collectively referred to herein as the "<u>Supporting Holders</u>," and the Supporting Holders collectively with Government Parties, the "<u>RSA Parties</u>"). Such settlements resolve, as and to the extent set forth in the RSA and the proposed order

granting the PREPA 9019 Motion, (a) the claims asserted by the Supporting Holders and objections of the Government Parties thereto, (b) certain bondholder litigation against PREPA by all Supporting Holders, (c) the Supporting Holders' ability to exercise rights under the Trust Agreement or other applicable law, and (d) the Supporting Holders' right to receive any current payments on certain PREPA bonds. The proposed settlements represent a significant milestone in PREPA's Title III case and the overall restructuring of PREPA. Pursuant to the RSA, the creditors (absent future defaults) settle their alleged secured claims and rights asserted thereunder, including requests for stay relief, in exchange for PREPA agreeing to allow their claims in less than their full face amounts. In addition, the creditors agree to support, and PREPA agrees to propose, a plan under which Supporting Holders will exchange their bonds for securitization bonds that are secured by a fixed and predictable transition charge.

- <u>UTIER v. PREPA</u>. In connection with Adversary Case No. 17-229 (UTIER v. P.R. Elec. Power Auth., et al., Adv. Proc. No. 17-0229), Proskauer engaged in extensive discovery with UTIER, the Puerto Rico Department of Justice, and the Puerto Rico Electric Power Authority. The matter required intensive efforts to gather and analyze documents from multiple sources in order to evaluate UTIER's claims and the Commonwealth's and PREPA's defenses. Over the period covered by the application, Proskauer also analyzed factual and expert discovery that may be needed to defend the case.

21.     In addition to the above, one of Proskauer's primary roles has been the defense of the Title III Debtors' interests in numerous, multi-billion-dollar adversary proceedings and contested matters brought by various bondholders, monoline insurers, and unions. Proskauer has also upheld the Oversight Board's power and responsibilities as it pertains to certifying fiscal plans and budgets, and issuing restructuring certifications. Such matters seek, among other things, to enjoin the Oversight Board from enforcing fiscal plans and budgets, consummating a Title VI Restructuring under PROMESA, and proposing a plan of adjustment consistent with the Commonwealth's certified fiscal plan. Numerous parties also seek to compel turnovers of billions of dollars of revenues critical to the Commonwealth's viability and the provision of public services on the island in the wake of the hurricanes. Proskauer has defended against these challenges, many of first impression, involving, among other things, the constitutionality of various PROMESA provisions, the correct interpretation of various sections of PROMESA and the Bankruptcy Code, and the validity of certain creditors' asserted liens. The following is a summary of major litigation

matters in which Proskauer served as lead counsel for the Title III Debtors during this

Compensation Period:

- The Financial Oversight and Management Board for Puerto Rico v. Hon. Thomas Rivera-Schatz, Adv. Proc. No. 19-00014: On November 26, 2018, the Oversight Board, pursuant to PROMESA § 104(c)(2), requested bank statements and other financial information from the Puerto Rico Senate and other government branches and instrumentalities. All of the recipients complied with the request except for the Puerto Rico Senate, which responded, in a letter dated February 6, 2019, by contending that it was not obligated to produce the requested documents. The Oversight Board then sued the President of the Puerto Rico Senate, Thomas Rivera-Schatz, on February 14, 2019, seeking a declaration that the Senate is required to produce such information, and an injunction and writ of mandamus requiring it to do so. On April 4, 2019, the parties filed a *Joint Stipulation of Dismissal Without Prejudice*, [Case No. 19-AP-14, ECF No. 12], informing the court that since the Oversight Board filed its complaint, the Senate provided the Oversight Board and its advisors the information requested in November 26, 2018 letter, the Senate instructed the financial institution(s) holding its funds to provide the requested information to the Oversight Board and its advisors on no less than a monthly basis, and the Senate agreed to provide information regarding restrictions on funds in its bank accounts. On April 8, 2019, the adversary proceeding was closed.

- Cooperativa de Ahorro y Credito Vegabajena v. The Financial Oversight and Management Board of the Commonwealth of Puerto Rico, Adv. Proc. No. 19-00028: On March 14, 2019, credit union, Cooperativa de Ahorro y Credito Vegabajena, filed an action against ERS and the FOMB alleging it had a statutory (or other) liens against employee contributions made to ERS. Plaintiff alleged its borrowers had assigned the liens to it. Plaintiff claimed the statutory lien arose under Puerto Rico law, which allowed financial service entities throughout the Commonwealth to enter into individual loan agreements with Commonwealth employees who participated in ERS. The credit union sought to enforce its alleged lien against employee contributions after certain of their borrowers defaulted on their loans. Plaintiff had previously filed a motion to lift the automatic stay to enforce its alleged lien, which the Title III Court denied. During the Compensation Period, on May 3, 2019, ERS filed a motion to dismiss, arguing the employee-borrowers could not have assigned their employee contributions to plaintiff because the employees did not have a retained right in contributions paid to ERS, and that even if Plaintiff had a direct claim to the contributions, any statutory lien was not enforceable against the employee contributions because the property was not traceable to the particular employee-borrowers. On May 29, 2019, Plaintiff filed its opposition. Proskauer has since filed a reply, on June 20, 2019. Plaintiff filed a reply in support of its opposition to the Debtors' motion to dismiss on July 16, 2019.

- Puerto Rico Electric Power Authority v. Union de Trabajadores de la Industria Electrica & Riego., Adv. Proc. No. 19-00298: Petitioner UTIER filed the case,

*Unión de Trabajadores de la Industria Eléctrica y Riego (UTIER) v. Ing. José F. Ortiz Vázquez y Autoridad de Energía Eléctrica* ("*UTIER v. Ortiz Vazquez*") in the Puerto Rico Court of First Instance, San Juan Superior Court on April 24, 2019. In their petition, UTIER alleges that respondents PREPA and its Executive Director Eng. Jose Ortiz Vazquez have made changes in deductibles and copayments for medical coverage under a plan UTIER negotiated with PREPA. This change allegedly increased the amounts UTIER's members with certain medical conditions must pay for healthcare and thereby allegedly fails to comply with duties prescribed in Commonwealth Laws 26-2017 and 28-2018. UTIER seeks a writ of mandamus ordering respondents to comply with the alleged ministerial duties provided for in Laws 26-2017 and 28-2018. On May 8, 2019, the Oversight Board removed *UTIER v. Ortiz Vazquez* to the United States District Court for the District of Puerto Rico. This matter remained ongoing at the end of this Compensation Period.

- <u>Challenges to Liens Asserted by Holders of GO Bonds</u>.[7] On May 2, 2019, the Oversight Board, jointly with the UCC, filed seven complaints against more than 450 defendants seeking declarations that holders of bonds issued or guaranteed by the Commonwealth have entirely unsecured claims (to the extent their claims are valid at all), and do not possess liens against any of the Commonwealth's property, including, without limitation, on (i) the Commonwealth's good faith, credit, and taxing power, (ii) the Commonwealth's "available resources" (as referenced in the Puerto Rico Constitution Article VI, section 8), (iii) certain taxes conditionally allocated to the Commonwealth's instrumentalities under Puerto Rico law, and (iv) property tax revenues authorized under Puerto Rico Act 83-1991.  These adversary proceedings also seek judgments (i) declaring the Commonwealth's interest in its property is entitled to priority over any interest bondholders claim to possess in the Commonwealth's property, (ii) avoiding any liens bondholders claim to possess pursuant to the Bankruptcy Code's avoidance powers, and (iii) disallowing all secured claims filed against the Commonwealth by bondholders.[8]

- <u>Challenges to Liens of Existing HTA Bonds</u>.[9] On May 20, 2019, the Oversight Board, jointly with the UCC, filed four complaints against more than one hundred defendants seeking declarations that holders of bonds issued by HTA under HTA Resolutions do not possess security interests against anything other than HTA revenues that have been both received by HTA and deposited in certain accounts held with the HTA bond fiscal agent.  These adversary proceedings also seek judgments (i) avoiding any security interests HTA bondholders are held to possess in such property pursuant to the Bankruptcy Code's avoidance powers, (ii)

---

[7]  The various adversary proceedings challenging the purported liens of the GO Bonds have been docketed as adversary proceeding numbers 19-291, 19-292, 19-293, 19-294, 19-295, 19-296, and 19-297.

[8]  On May 21, 2019, the Oversight Board and the UCC filed a joint motion seeking to (i) extend the deadlines to serve the defendants in these adversary proceedings and (ii) stay the adversary proceedings.  On June 13, 2019, the Court partially granted the joint motion and granted the deadline to serve the defendants and stayed the adversary proceedings until September 1. On July 16, 2019, the parties filed a status report and competing proposed case management orders. On July 24, 2019, the Court issued an order staying the actions through November 30, 2019

[9]  The various adversary proceedings challenging the purported liens of the Existing HTA Bonds have been docketed as adversary proceeding numbers 19-362, 19-363, 19-364, and 19-365.

disallowing all secured claims filed against HTA by bondholders alleging security interests on such property, (iv) determining that any right HTA or HTA bondholders have to receive certain taxes or fees conditionally allocated to HTA has been preempted by PROMESA, and (v) declaring that any security interests in HTA's property ceased attaching to revenues received post-petition by virtue of section 552(a).[10]

- The Financial Oversight and Management Board for Puerto Rico, as representative of Employees Retirement System of the Government of the Commonwealth of Puerto Rico v. Andalusian Global Designated Activity Company, et al., Adv. Proc. No. 19-00366, and The Financial Oversight and Management Board for Puerto Rico, as representative of Employees Retirement System of the Government of the Commonwealth of Puerto Rico v. Glendon Opportunities Fund, L.P., et al., Adv. Proc. No. 19-00367: On April 2, 2019, ERS filed a motion (the "Motion to Amend") [Adv. Proc. No. 17-00213, ECF No. 236], requesting the Title III Court grant ERS leave to file an amended adversary complaint to raise issues concerning the nature and extent of the security interests alleged and the proper method of perfection of any security interest, and that it determine whether Bankruptcy Code section 552(a) operates to prevent the ERS bondholders' asserted lien from attaching to Employers' Contributions received post-petition (the "552(a) Issue"). On May 6, 2019, the Title III Court denied in part and granted in part the Motion to Amend, granting ERS's request to determine the 552(a) Issue, but denying ERS's motion insofar as it sought leave to amend the complaint in its prior lien challenge, without prejudice to the filing of a new adversary complaint. On May 20, 2019, ERS and the UCC filed the two instant above-referenced adversary cases (the "Lien-Scope APs"). The Lien-Scope APs allege the ERS Bondholders do not hold valid and enforceable security interests in any of ERS' remaining assets or the proceeds thereof (other than the Accounts Receivable). On May 30, 2019, summonses were returned as executed. These matters remained ongoing at the end of this Compensation Period.

22.    As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings; (c) researched jurisprudence regarding legal and factual issues, including bankruptcy and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

---

[10] On May 21, 2019, the Oversight Board and the UCC filed a joint motion seeking to (i) extend the deadlines to serve the defendants in these adversary proceedings and (ii) stay the adversary proceedings. On June 13, 2019, the Court partially granted the joint motion and granted the deadline to serve the defendants and stayed the adversary proceedings until September 1. On July 16, 2019, the parties filed a status report and competing proposed case management orders. On July 24, 2019, the Court issued an order staying the actions through November 30, 2019

23.     By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of (a) **$5,730,306.79**, as (i) compensation for professional services rendered in the amount of $5,257,162.20, and (ii) the Gross–Up Amount in the amount of $473,144.59;[11] and (b) **$163,334.07** as reimbursement for actual and necessary expenses incurred during the Compensation Period in connection with such professional services.  Notably, the Application reflects aggregate voluntary reductions made during the Compensation Period to Proskauer's request for compensation and reimbursement of expenses in the amount of $43,552.80 and $22,981.30 respectively, on top of the sizeable discount embedded in its engagement letter with the Oversight Board, in which it fixed hourly rates at levels providing up to 45% discounts on the hourly rates of its most senior partners.

24.     Proskauer maintains computerized records of the time spent by all Proskauer attorneys and paraprofessionals in connection with the firm's representation of the Oversight Board as representative of the Debtor.  Subject to redaction where necessary to preserve mediation confidentiality, copies of the computerized records for the Compensation Period are attached hereto as **Exhibit B**.

25.     Proskauer's budget and staffing plan for the Compensation Period are attached hereto as **Exhibit D**.[12]

26.     Proskauer's summary of itemized time records for professionals and paraprofessionals performing services for the Oversight Board with respect to the Debtor during the Compensation Period is set forth on **Schedule 2**.  During the Compensation Period, Proskauer

---

[11] Proskauer will only request payment of the Gross–Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross–Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross–Up Amount.

[12] Budgets are only provided for matters Proskauer actually billed time to in a given month. If no time was billed to a given matter during the month, no monthly budget has been provided for that matter.

billed the Oversight Board for time expended by attorneys based on a set rate of $789 per hour. The professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period required an aggregate expenditure of 2,874.30 recorded hours by Proskauer's partners and counsel; 3,280.50 recorded hours by associates; 584.50 recorded hours by e–Discovery attorneys; 135.70 recorded hours by law clerks;[13] and 505.30 recorded hours by paraprofessionals.  As required by the Guidelines, **Exhibit C** to this Application shows, for each Project Category (as defined below), a list of professionals who performed services in each Project Category and the aggregate recorded hours each professional incurred.  In accordance with Guidelines paragraph C.3, Proskauer's blended hourly rates are disclosed in **Schedules 1** and **5**. The fees charged by Proskauer, as set forth in **Schedule 2**, are in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, as revised to reflect Proskauer's arrangement with the Oversight Board.  The standard rates Proskauer charges for the services rendered by its professionals and paraprofessionals in these Title III cases have been reduced to reflect the unique circumstances of PROMESA and the position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents.  **Schedules 2** and **5** show the rates Proskauer charges on an hourly basis are below the competitive market rates for bankruptcy and non–bankruptcy matters charged by the other professionals representing the Commonwealth and statutory committees.  No Proskauer rates are increased as a result of the geographic location of a bankruptcy case.

27.     All entries itemized in Proskauer's time records comply with the requirements set forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each

---

[13] Law clerks are incoming attorneys who have not yet been admitted or sworn into the bar.  Once admitted and sworn into the bar, the timing of which varies on an individual– and jurisdictional–basis, such individuals are reclassified and billed as associates beginning on the first day of the month following such admission.

a "Project Category"), (b) a description of each activity or service that each individual performed, and (c) the number of hours (in increments of one–tenth of an hour) spent by each individual providing the services.  Each Project Category is organized in accordance with Guidelines paragraph C.8.b.  If a Project Category does not appear in a particular application, Proskauer did not bill time or expenses for that Project Category during the Compensation Period, but may bill time for that Project Category in the future.

**Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5**

28.    The following answers are provided in response to the questions set forth in Guidelines paragraph C.5:

**Question**:    Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

Response:    No.

**Question**:    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    The total fees sought in this Application exceed the total budgeted fees for the time period, however, by less than 10% (the fees sought exceed the budgeted fees by 0.5%). The higher than budgeted fee amounts were in connection with the ongoing receiver motion matter and the *UTIER v Ortiz Vazquez* matter. Efforts defending the Oversight Board and the Debtor in connection with these matters and negotiating the Definitive RSA, dated May 3, 2019 contributed to the higher than budgeted fee amounts.

**Question**:    Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?  (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

19

Response:      No, the Application does not include time or fees related to reviewing time records or preparing, reviewing or revising invoices in connection with the preparation of monthly fee statements.

**Question**:      Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:      No time was spent redacting time records on account of privilege concerns. However, the Application does include time related to reviewing time records to redact time entries pursuant to Court–ordered mediation confidentiality.

**Question**:      If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?

Response:      Yes. The Engagement Letter provides that Proskauer's rates are increased on January 1 (rather than on November 1, the beginning of Proskauer's fiscal year) by the lower of the percentage rate increase announced as of November 1 and four percent. As Proskauer's announced percentage rate increase exceeded four percent as of November 1, 2018, Proskauer's rates with respect to its representation of the Oversight Board were increased by four percent as of January 1, 2019.

**Gross Up Amount**

29.    Prior to December 10, 2018, Puerto Rico taxed Proskauer's fees differently depending on whether Proskauer's timekeepers performed work while physically present in Puerto Rico or off–island. Specifically, a 7% withholding tax was assessed (at time of payment) on fees derived from work performed while the timekeeper was physically present in Puerto Rico, but not on fees derived from work performed outside of Puerto Rico.

30.    On December 10, 2018, Puerto Rico enacted Act 257–2018, amending the Puerto Rico tax code and eliminating the differences in tax treatment based on where work was performed. Under Act 257–2018, all Proskauer fees incurred on or after December 10, 2018—regardless of the timekeepers' physical location—are assessed with a 10% withholding tax at the time of payment.

31.     Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross–Up Amount") introduced by Act 257–2018 starting December 10, 2018 (the "Withholding"), in the amount of **$473,144.59**.  But Proskauer will only request payment of the Gross–Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross–Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross–Up Amount.

### Professionals Billing Fewer Than Five Hours per Month

32.     The following chart indicates, solely with respect to the Debtor's Title III Case, (a) professionals who billed fewer than five hours per month, (b) the months for which fewer than five hours were billed by the professional, and (c) an explanation of why the use of such professional was reasonable and necessary.  As a general matter, because of the size and complexity of the Debtor's Title III Case, it was reasonable and necessary to consult with professionals with specific practice area expertise to assist Proskauer's core restructuring professionals in providing the Debtor with necessary and beneficial professional services.  Moreover, it was often necessary to consult with professionals more familiar with other aspects of the restructuring of Puerto Rico and with specific adversary proceedings to deal with global strategic issues and ensure that positions taken by the Oversight Board are consistent across all the Title III cases.  Furthermore, occasionally the urgency of certain briefing schedules required pulling in professionals from different work streams to assist on time–sensitive matters.[14]

---

[14] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and outside of PROMESA Title III.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Bell, Christopher O. | April | Mr. Bell is a partner in Proskauer's corporate department who analyzed and advised on the Debtor's swap agreements and related proofs of claim. |
| Bowman, Courtney M. | February | Ms. Bowman is an associate in Proskauer's litigation department who assisted with legal research and analyzing pleadings in the *Rivera–Rivera* Adversary Proceeding. |
| Corn, Richard M. | March | Mr. Corn is a partner in Proskauer's tax department who advised on a variety of tax issues related to the PREPA restructuring. |
| D'Errico, Megan T. | March | Ms. D'Errico is a research specialist in Proskauer's library department who assisted with legal research related to the Oversight Board's depositions in connection with the Renewed Receiver Motion. |
| Elsner, Rebecca R. | May | Ms. Elsner is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Failla, John E. | February | Mr. Failla is a partner in Proskauer's litigation department who advised on the Debtor's reply in support of the motion to compel production of insurers' loss reserve information in connection with the Renewed Receiver Motion. |
| Febus, Chantel L. | February, March, April | Ms. Febus is a partner in Proskauer's litigation department who advised on developing litigation strategy in the *UTIER CBA* Adversary Proceeding. |
| Feldstein, Jesse | April | Mr. Feldstein is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Ferrara, Ralph C. | February, March, April | Mr. Ferrara is a partner in Proskauer's litigation department who advised on multiple litigation issues in connection with the proposed restructuring of the Debtor and the Renewed Receiver Motion. |
| Forman, Daniel L. | April | Mr. Forman is a senior counsel in Proskauer's corporate department who advised on issues related to tolling statutes of limitation on certain actions in connection with the Debtors' restructuring. |

22

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Friedman, Amelia A. | May | Ms. Friedman is an associate in Proskauer's litigation department who assisted with research related to the Debtor's omnibus objections to claims. |
| Gerkis, James P. | April | Mr. Gerkis is a partner in Proskauer's corporate department who analyzed and advised on the Debtor's swap agreements and related proofs of claim. |
| Habenicht, Yomarie S. | April | Ms. Habenicht is an associate in Proskauer's tax department who assisted with the review and analysis of materials related to various tax issues in the Debtor's proposed restructuring. |
| Hamilton, Martin T. | April | Mr. Hamilton is a partner in Proskauer's tax department who advised on a variety of tax related issues in connection with the proposed restructuring and transformation of the Debtor. |
| Ike, Yvonne O. | February | Ms. Ike is an e–Discovery staff attorney at Proskauer who advised on a variety of document review and production issues. |
| Infante, Elle M. | February, March | Ms. Infante is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Kay, James | May | Mr. Kay is an e–Discovery staff attorney at Proskauer who advised on a variety of document review and production issues. |
| Kim, Mee R. | February | Ms. Kim is an associate in Proskauer's litigation department who assisted with legal research on loss reserve related issues in connection with the Renewed Receiver Motion. |
| King, Charles H. | March, April | Mr. King is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Klock, Joseph | May | Mr. Klock is an eDiscovery project coordinator at Proskauer who assisted with various document review and production related issues. |
| Levitan, Jeffrey W. | February – May | Mr. Levitan is a partner in Proskauer's BSGR&B group who advised on litigation strategy and on stay related issues in the *Vitol* Adversary Proceeding. |

23

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Ma, Steve | March | Mr. Ma is an associate in Proskauer's BSGR&B group who assisted with drafting an objection to the *Marrero* plaintiffs' motion for relief from stay. |
| Miller, Tiffany | February | Ms. Miller is a paralegal in Proskauer's labor & employment department who assisted with various case management related tasks. |
| Monforte, Angelo | February, March | Mr. Monforte is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Mungovan, Timothy W. | March, April | Mr. Mungovan is a partner in Proskauer's litigation department who advised on further litigation strategy in connection with the Renewed Receiver Motion and in multiple adversary proceedings. |
| Omorogbe, Philip[15] | February, March | Mr. Omorogbe is an associate in Proskauer's BSGR&B group who assisted with drafting a response to *Marrero* plaintiffs' lift say motion and with research for the Debtor's omnibus objections to claims. |
| Petrov, Natasha | April | Ms. Petrov is a paralegal in Proskauer's BSGR&B group who assisted with drafting Proskauer's interim fee applications. |
| Piacente, Vito S. | March | Mr. Piacente is a paralegal in Proskauer's corporate department who assisted with various case management related tasks. |
| Ratner, Stephen L. | February, March, April | Mr. Ratner is a partner in Proskauer's litigation department who advised on further litigation strategy in connection with the Renewed Receiver Motion and in multiple adversary proceedings. |
| Rosen, Brian S. | February | Mr. Rosen is a partner in Proskauer's BSGR&B group who advised on a response to *Marrero* plaintiffs' motion for relief from stay. |

---

[15] Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual– and jurisdictional–basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Schafler, Seth B. | February, March | Mr. Schafler is a partner in Proskauer's litigation department who advised on the reply in support of the Debtor's motion to compel production of insurers' loss reserve information in connection with the Renewed Receiver Motion. |
| Silagi, Alex D. | May | Mr. Silagi is an associate in Proskauer's litigation department who assisted with legal research in connection with the Renewed Receiver Motion |
| Supronik, Lukasz | May | Mr. Supronik is an eDiscovery project coordinator at Proskauer who assisted with various document production related issues. |
| Sutherland, Julia L. | February, April, May | Ms. Sutherland is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Tarrant, Christopher M. | February | Mr. Tarrant is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Theodoridis, Chris | March, May | Mr. Theodoridis is an associate in Proskauer's BSGR&B group who assisted with analyzing pleadings and developing further litigation strategy in the *Vitol* and *UTIER CBA* Adversary Proceedings. |
| Wizner, Eamon | March, May | Mr. Wizner is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Wolf, Joseph P. | March, May | Mr. Wolf is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Zerjal, Maja | February, March, April | Ms. Zerjal is an associate in Proskauer's BSGR&B group who advised on developing further litigation strategy in multiple adversary proceedings. |

### Summary Description of Professional Services

33.    The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period. Only Project

Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized below.

**I.    Matter No. 33260/022 (PROMESA Title III: PREPA)**

34.    This matter number covers  time spent relating to the core PREPA Title III case, including, for example, time spent relating to mediation, fiscal plan issues, and working on disclosure statements or plans of adjustment.

(a)    Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants
(Project Category 201)
(Fees:  $61,147.50; Hours: 77.50)

35.    This Project Category includes time spent communicating with the Oversight Board, the Debtor, and their respective representatives, agents, and consultants.  Specifically, Proskauer attorneys spent time:

- Preparing for and participating in weekly calls with the Oversight Board and its advisors regarding the Debtor's Title III Case status and strategy;

- Conferring with the Oversight Board and its other advisors regarding the proposed PREPA restructuring support agreement (the "RSA"), related open issues, and proposed next steps;

- Updating the Oversight Board on the progress of PREPA bondholder and creditor negotiations;  and

- Communicating with the Oversight Board and its other advisors regarding litigation strategy in the Debtor's Title III Case, litigation developments, and related discovery issues.

(b)    Legal Research (Project Category 202)
(Fees:  $58,811.70; Hours: 75.00)

36.    This Project Category includes time spent researching and analyzing legal issues and drafting internal memoranda analyzing legal issues and/or briefs discussing the legal issues researched and analyzed, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time researching and analyzing a variety of issues related to the Debtor's proposed restructuring and transformation, including,

among others, issues relating to the assumption and rejection of executory contracts, approval standards for Rule 9019 motions, and confidentiality and privilege related issues in preparation for the hearing on the joint PREPA and AAFAF motion to extend deadlines applicable to Assured, National and Syncora's Renewed Receiver Motion and joint PREPA and AAFAF motion to dismiss the Renewed Receiver Motion.

    (c)   <u>Communications with Claimholders (Project Category 204)</u>
           (Fees: $<u>157,957.80</u>; Hours: <u>200.20</u>)

      37.    This category includes time spent communicating with the Debtor's various claimholders. Specifically, Proskauer attorneys spent time preparing for and participating in negotiations with creditors, bondholders, statutory committees, and their advisors regarding the proposed PREPA RSA, analyzing creditors and bondholders' comments and counter–proposals, addressing open issues, and revising the preliminary RSA and related term sheets.

    (d)   <u>Communications with the Commonwealth, its Instrumentalities or Representatives of</u>
         <u>the Commonwealth or its Instrumentalities (Project Category 205)</u>
         (Fees: $<u>57,597.00</u>; Hours: <u>73.00</u>)

      38.    This Project Category includes time spent communicating with the Debtor's representatives in various Title III related matters, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys spent time communicating with counsel and other advisors to AAFAF regarding open issues in connection with the proposed PREPA's restructuring and RSA related negotiations, creditors' and bondholders' comments, proposals and counteroffers, and proposed revisions to the RSA definitive documents.

    (e)   <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
         (Fees: $<u>445,178.40</u>; Hours: <u>578.90</u>)

      39.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting research, analyzing creditors' and bondholders' proposals and RSA negotiations materials, and revising the RSA definitive documents;

- Conferring with other advisors to the Oversight Board and counsel for the AAFAF and drafting joint PREPA and AAFAF Rule 9019 motion for approval of settlements embodied in the RSA and tolling certain statutes of limitations;

- Conferring with other advisors to the Oversight Board and counsel for AAFAF and drafting a joint PREPA and AAFAF motion to extend deadlines applicable to Assured, National and Syncora's Renewed Receiver Motion and the PREPA and AAFAF joint motion to dismiss the Renewed Receiver Motion;

- Conducting research and drafting complaint against U.S. Bank National Association as fiscal agent and secured party for PREPA bonds seeking to challenge validity, enforceability, and extent of prepetition security interests;

- Conducting research and drafting request for proposals to provide PREPA claims review, management and reconciliation services;

- Conducting research and drafting pleadings related to PREPA's assumption of its power purchase and operating agreements; and

- Drafting multiple informative motions and pleadings related to extension of deadlines.

(f)   Analysis and Strategy (Project Category 210)
      (Fees:  $818,928.90; Hours: 1,045.30)

40.     This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case, including meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing a wide variety of reports, memoranda, financial analyses, press releases, pleadings and court orders, drafting and updating tasks and issues lists, preparing for and participating in Proskauer internal meetings on further developing litigation, appellate and discovery strategy and on litigation and appellate issues pending in these complex and time sensitive Title III cases, preparing for and participating in Proskauer internal meetings on the Debtor's plan of adjustment, PREPA RSA and

fiscal plan related issues, and drafting internal analyses and memoranda to Proskauer litigation and restructuring teams.

(g)   Non–Working Travel Time (Project Category 211)
       (Fees: $13,728.60; Hours: 17.40)

41.    This Project Category includes time spent traveling on behalf of the Oversight Board and the Debtor, during which no billable work is performed.  Fees in this Project Category are billed at fifty percent (50%).

(h)   General Administration (Project Category 212)
       (Fees:  $20,844.00; Hours:  77.20)

42.    This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast, and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

(i)   Plan of Adjustment and Disclosure Statement (Project Category 215)
       (Fees: $47,024.40; Hours: 59.60)

43.    This Project Category includes time spent on issues related to the terms of the proposed Title III plan.  Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing a wide variety of materials, reports, financial analyses, and memoranda, further developing the strategy for the proposed transformation and restructuring of the Debtor, and drafting a preliminary plan of adjustment and disclosure statement.

(j)   Tax (Project Category 217)
       (Fees:  $18,068.10; Hours: 22.90)

44.    This Project Category includes time spent on tax matters involving the Debtor. Specifically, Proskauer attorneys spent time researching multiple tax–related issues in connection with the Debtor's proposed plan of adjustment, including, among others, subsidy payments on

29

qualified bonds, tax–exemption of bonds and securitization, and conferring with other Oversight Board's advisors on constructive restructuring options.

(k)   Employment and Fee Applications (Project Category 218)
      (Fees:  $23,895.90; Hours: 61.40)

45.   This Project Category includes time spent on issues related to the compensation of Proskauer, and the retention and compensation of other Oversight Board professionals, including the preparation of monthly fee applications. Specifically, Proskauer attorneys and paraprofessionals spent time analyzing monthly statements and drafting Proskauer's fifth and sixth interim fee applications.

## II.   Matter No. 33260/056 (PREPA Title III – UTIER CBA)

46.   This matter number covers time spent working on the challenge brought by the Union de Trabajadores de la Industria Electrica y Riego, Inc. ("UTIER") to the PREPA and Commonwealth fiscal plans and budgets related to the alleged impairment caused by certain government legislative acts to the UTIER collective bargaining agreement ("CBA"), including *UTIER v. PREPA*, Case No. 17–AP–229 (the "*UTIER CBA* Adversary Proceeding"), and any appeals thereto.

(a)   Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants
      (Project Category 201)
      (Fees:  $7,817.40; Hours: 10.50)

47.   This Project Category includes time spent communicating with the Oversight Board, the Debtor, and their respective representatives, agents, and consultants.  Specifically, Proskauer attorneys spent time communicating with the Oversight Board and its advisors regarding the Adversary Proceeding status, further litigation strategy, and related discovery issues.

(b)   Legal Research (Project Category 202)
      (Fees: $43,735.80; Hours: 57.80)

48.   This Project Category includes time spent researching and analyzing legal issues and

drafting internal memoranda analyzing legal issues and/or briefs showing the legal issues researched and analyzed, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time conducting research related to multiple evidentiary and discovery issues and to the Oversight Board's motion to dismiss UTIER's remaining claims.

(c)  Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities (Project Category 205)
(Fees:  $10,257.00; Hours: 13.00)

49.   This Project Category includes time spent communicating with the Debtor's representatives, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys spent time communicating with counsel and other advisors to AAFAF regarding the proposed initial disclosures, document review and production issues in response to the UTIER's discovery requests, case status, and further discovery and trial strategy.

(d)  Documents Filed on Behalf of the Board (Project Category 206)
(Fees: $13,255.20; Hours: 16.80)

50.   This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time conducting research and drafting the Oversight Board's discovery responses and a motion to dismiss UTIER's remaining  claims.

(e)  Analysis and Strategy (Project Category 210)
(Fees: $412,847.10; Hours: 581.60)

51.   This Project Category includes time spent related to (a) legal analysis and strategic approach to varied issues relating to the *Vitol* adversary proceedings, including meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

31

(f)   General Administration (Project Category 212)
      (Fees:  $6,480.00; Hours:  24.00)

52.    This Project Category includes time spent on general administration of the Debtor's

Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of

documents in court, including affidavits of service and service mailings; and (c) internal filing and

organization of case documents to ensure easy, fast, and free accessibility by the Proskauer team,

the Debtor, and other parties in interest.

**III.    Matter No. 33260/058 (PREPA Title III: Receiver Motions)**

53.    This matter number covers time spent working on motions to appoint a receiver at

PREPA filed in the Debtor's Title III Case, and any appeals thereto, including *Motion of National*

*Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal*

*Corp., and Syncora Guarantee Inc. for Relief From the Automatic Stay to Allow Movants to Enforce*

*Their Statutory Right to Have a Receiver Appointed* [Case No. 17–BK–4780–LTS, ECF No. 982]

(the "Renewed Receiver Motion").

(a)   Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants
      (Project Category 201)
      (Fees:  $40,160.10; Hours: 50.90)

54.    This Project Category includes time spent communicating with the Oversight Board,

the Debtor, and their respective representatives, agents, and consultants.  Specifically, Proskauer

attorneys spent time communicating with the Oversight Board and its other advisors regarding case

status, litigation strategy, and multiple discovery related issues, including propounding and

responding to written discovery, document review and production, depositions, and confidentiality

and privilege related issues, among others.

(b)   Legal Research (Project Category 202)
(Fees:  $42,842.70; Hours: 54.30)

55.    This Project Category includes time spent researching and analyzing legal issues and

drafting internal memoranda analyzing legal issues and/or briefs showing the legal issues

researched and analyzed, to the extent not expressly covered by another Project Category.

Specifically, Proskauer attorneys and paraprofessionals spent time conducting research related to,

among other things, confidentiality and privilege issues for the Oversight Board's motion for

reconsideration of Judge Dein's denial of the Oversight Board's motion to compel production of

documents from movants and stay–relief standards for motion to dismiss the Renewed Receiver

Motion.

(c)   Hearings and Other Non–Filed Communications with the Court (Project Category 203)
(Fees:  $11,598.30; Hours:  14.70)

56.    This Project Category includes time spent communicating with the Court and

reviewing the Court's communications and procedures.   Specifically, Proskauer attorneys and

paraprofessionals spent time:

- Communicating with the Court regarding applicable rules and requirements,
  scheduling and procedure related matters;
- Preparing for and participating in the hearing on the Oversight Board's motion to
  compel production of documents from movants and in hearing on the PREPA and
  AAFAF joint motion for extension of deadlines applicable to the Renewed Receiver
  Motion; and
- Reviewing and analyzing transcripts of court hearings.

(d)   Communications with Claimholders (Project Category 204)
(Fees:  $33,532.50; Hours: 42.50)

57.    This category includes time spent communicating with the Debtor's various

claimholders.  Specifically, Proskauer attorneys spent time:

- Communicating with bondholders' counsel on multiple discovery issues related to
  the Renewed Receiver Motion, including relating to privilege and confidentiality,

search terms for document collection and review, depositions scope and scheduling, among others; and

- Preparing for and participating in meet–and–confer sessions with bondholders' counsel on multiple discovery related issues.

(e)  <u>Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities (Project Category 205)</u>
(Fees:  $<u>69,353.10</u>; Hours:  <u>87.90</u>)

58.   This Project Category includes time spent communicating with the Debtor's representatives, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys spent time:

- Communicating with counsel and other advisors to AAFAF on multiple discovery issues related to the Renewed Receiver Motion and developing further discovery strategy; and

- Communicating with counsel and other advisors to AAFAF regarding litigation strategy and legal research and analysis for opposition to the Renewed Receiver Motion.

(e)  <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
(Fees:  $<u>973,879.50</u>; Hours:  <u>1,235.90</u>)

59.   This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing pleadings and written discovery responses, engaging in document production, conducting legal research and drafting the joint PREPA and AAFAF motion to extend deadlines applicable to the Renewed Receiver Motion and the joint PREPA and AAFAF motion to dismiss the Renewed Receiver Motion, and related declarations;

- Conducting research and drafting Oversight Board's motion to compel production of loss reserve information from the movants, reply in support thereof, and subsequent motion for reconsideration of the Court's denial of the Oversight Board's motion; and

- Drafting multiple informative motions and pleadings related to extension of deadlines.

(f)   Non–Board Court Filings (Project Category 207)
      (Fees:  $32,191.20; Hours:  40.80)

60.   This Project Category includes time spent reviewing and commenting on Court
orders and filings made by other parties, to the extent not expressly covered by another Project
Category.   Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and
analyzing the insurers' opposition to the Oversight Board's motion to compel production of loss
reserve information, additional declarations submitted by the insurers in support of their Renewed
Receiver Motion, their proposed orders, pleadings related to extension of deadlines, and related
court orders.

(g)   Analysis and Strategy (Project Category 210)
      (Fees:  $1,417,865.10; Hours: 2,031.90)

61.   This Project Category includes time spent related to (a) legal analysis in, and
strategic approach to, the Debtor's Title III Case, including meetings to discuss strategic case
considerations, the status of various work streams, and next steps, and (b) all Proskauer internal
meetings, except those specifically dealing with an issue covered by another Project Category.
Specifically, Proskauer attorneys and paraprofessionals attorneys spent time reviewing and
analyzing a wide variety of internal memoranda, pleadings and court orders in connection with the
Renewed Receiver Motion, drafting and updating tasks and issues lists, preparing for and
participating in Proskauer internal meetings on pending litigation issues and further developing
litigation and discovery strategy, drafting internal memoranda to Proskauer litigation team,
reviewing and analyzing parties' document production in connection with the Renewed Receiver
Motion, and communicating with opposing counsel and e–Discovery vendors on a wide variety of
document collection, processing and review related issues.

(h)   Non–Working Travel Time (Project Category 211)
      (Fees: $19,961.70; Hours: 25.30)

35

62.     This Project Category includes time spent traveling on behalf of the Oversight Board and the Debtor, during which no billable work is performed.  Fees in this Project Category are billed at fifty percent (50%).

(i)     General Administration (Project Category 212)
        (Fees:  $152,277.90; Hours:  490.40)

63.     This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast, and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

## IV.     Matter No. 33260/059 (PREPA Title III: Miscellaneous)

64.     This matter number covers time spent working on miscellaneous motions and adversary proceedings, including, for example, motions for relief from the Title III stay, and any appeals thereto.

(a)     Legal Research (Project Category 202)
        (Fees:  $8,757.90; Hours:  11.10)

65.     This Project Category includes time spent researching and analyzing legal issues and drafting internal memoranda analyzing legal issues and/or briefs showing the legal issues researched and analyzed, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting research and analysis for the Debtor's objection to the *Marrero* plaintiffs' motion for relief from automatic stay to proceed with the District Court of Puerto Rico action in *Marrero–Rolon v. Autoridad de Energia Electrica*, No. 15–01167 [the "*Marrero* Lift Stay Motion*", Case No. 17–BK–4780–LTS; ECF No. 1074]; and

- Analyzing multiple pleadings, PREPA and PREPA Retirement System documents, conducting legal research, and developing strategy for the Oversight Board's answer to the amended complaint and counterclaim in the adversary proceeding *PREPA*

*Retirement System v. Commonwealth,* Case No. 18–AP–047 [the "*Rivera–Rivera Adversary Proceeding*"].

(b)   Documents Filed on Behalf of the Board (Project Category 206)
        (Fees:  $44,894.10; Hours:  56.90)

66.   This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.   Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conferring with counsel for AAFAF and drafting the Debtor's objection to the *Marrero* Lift Stay Motion;
- Conducting research and analysis and drafting the Oversight Board's answer to the amended complaint and counterclaim in the *Rivera–Rivera* Adversary Proceeding; and
- Drafting multiple pleadings related to the extension of deadlines.

(c)   Stay Matters (Project Category 208)
        (Fees:  $21,361.20; Hours: 27.60)

67.   This Project Category includes time spent analyzing and researching stay issues in the Debtor's Title III Case and drafting various pleadings related to stay issues.   Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conferring with counsel for AAFAF and conducting research the Debtor's objection to the *Marrero* Lift Stay Motion; and
- Communicating with the Oversight Board, opposing counsel and counsel for AAFAF, reviewing pleadings and analyzing the status of multiple lift stay motions, developing strategy, and drafting responses and joint status reports.

(d)   Analysis and Strategy (Project Category 210)
        (Fees: $18,304.80; Hours: 23.20)

68.   This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including meetings to discuss strategic case considerations, the status of various work streams, and next steps,

and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

## V.  Matter No. 33260/070 (PREPA Title III: UTIER v. Ortiz Vazquez)

69.    This matter number covers time spent working on the challenge brought by the UTIER to the PREPA fiscal plans and budgets related to changes to payments for medical coverage under the UTIER health plan, including *UTIER v. Ing. José F. Ortiz Vázquez y Autoridad de Energía Eléctrica*, Case No. 19–AP–298, and any appeals thereto.

(a)    Legal Research (Project Category 202)
       (Fees:  $22,249.80; Hours:  28.20)

70.    This Project Category includes time spent researching and analyzing legal issues and drafting internal memoranda analyzing legal issues and/or briefs showing the legal issues researched and analyzed, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys spent time developing litigation strategy and conducting analysis and research for the motion to dismiss the UTIER mandamus petition.

(b)    Documents Filed on Behalf of the Board (Project Category 206)
       (Fees:  $70,931.10; Hours:  89.90)

71.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time drafting a notice of removal of the action from the San Juan Superior Court to the United States District Court for the District of Puerto Rico and the Debtor's motion to dismiss the UTIER mandamus petition.

(c)    Analysis and Strategy (Project Category 210)
       (Fees: $15,069.90; Hours: 19.10)

72.    This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including

meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

*      *      *      *

73.    The foregoing professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's creditors, residents, and other stakeholders.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time–sensitive nature of the problems, issues, and tasks involved.  The professional services were performed with expedition and in an efficient manner.

74.    In accordance with the factors enumerated in the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of comparable services other than in a case under the Bankruptcy Code.

**Actual and Necessary Expenses of Proskauer**

75.    Pursuant to the Guidelines, **Schedule 4** is Proskauer's summary of actual and necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor during the Compensation Period.

76.    In accordance with paragraph C.13 of the Appendix B Guidelines and as more fully itemized **Schedule 4**, Proskauer seeks reimbursement for its necessary and reasonable expenses,

39

including: (a) reproduction, (b) online research, (c) local travel to and from airports, (d) out–of–town travel and lodging, (e) out–of–town meals, (f) transcription services, (g) litigation support, and (h) professional services.   All expense entries detailed in **Exhibit B** comply with the requirements set forth in the Guidelines, including an itemization of the expenses by category, the date the expense was incurred, and the individual incurring the expense, where available.   The reasons for the expenses are self–explanatory.   In compliance with Appendix B Guidelines paragraph C.13, the requested expenses are of the kind customarily charged to Proskauer's non–bankruptcy clients and by other comparable professionals.

77.     Proskauer generally charges from $0.10 (black and white) to $0.30 (color) per page for photocopying expenses. The rates charged by the firm for Westlaw and Lexis computerized research vary according to the type of research conducted and the specific files researched, but, in any event, Proskauer does not profit from the use of computer assisted legal research, as set forth in **Schedule 4**.  As per the Appendix B Guidelines, Proskauer has not requested reimbursement of expenses related to overhead charges, such as secretarial services and proofreading.   The expenditures Proskauer is seeking reimbursement for and which are reflected on **Schedule 4** are all of the type customarily billed to clients.

78.     During the Compensation Period, Proskauer has disbursed **$163,334.07** as necessary and reasonable expenses. These charges cover Proskauer's direct operating costs, which costs are not incorporated into the firm's hourly billing rates (because to do so would impose that cost upon clients who do not require extensive photocopying and other facilities and services).  Only clients who actually benefit from services of the kind set forth in **Exhibit B** are separately charged for such services.  Proskauer has made every effort to minimize its expenses in the Debtor's Title III Case.

The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to effectively serve the needs of the Debtor in its Title III case.

## **Compensation Paid and Its Source**

79.   All services for which Proskauer seeks compensation, and expenses for which it seeks reimbursement, were performed on behalf of the Oversight Board as representative of the Debtor.  In connection with the matters covered by this Application, Proskauer received no payment and no promises of payment for services rendered, or to be rendered, from any source other than the Debtor.  There is no agreement or understanding between Proskauer and any other person, other than members of the firm, for the sharing of compensation received for services rendered in this Title III case.

80.   PROMESA sections 316 and 317 provide for interim compensation of professionals and govern the Court's award of such compensation.  PROMESA §§ 316, 317.  PROMESA section 316 provides that a court may award a professional person employed by the Debtor or the Oversight Board under PROMESA "(1) reasonable compensation for actual, necessary services rendered by the professional person, or attorney and by any paraprofessional person employed by any such person; and (2) reimbursement for actual, necessary expenses."  PROMESA § 316(a).  Section 316 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded … the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;
>
> (3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

41

(4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

PROMESA § 316(c).

81.   As noted above, the professional services and expenditures for which Proskauer seeks compensation and reimbursement in this Application were necessary and beneficial to the Oversight Board as representative of the Debtor, and included, among other things, anticipating or responding to the Oversight Board's needs and assisting in the Oversight Board's navigation of the Debtor's very complex Title III case.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Oversight Board.  The Oversight Board has reviewed and approved this Application.

**Reservations**

82.   To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or Proskauer has for any other reason not yet sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, Proskauer reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

## Notice

83.     Pursuant to the Interim Compensation Order, notice of this Application has been

filed in PREPA's and the jointly–administered Commonwealth of Puerto Rico's Title III cases and

served upon:

> (a) the Financial Oversight and Management Board, 40 Washington Square South, Office 314A, New York, NY 10012, Attn: Professor Arthur J. Gonzalez, Oversight Board Member;
>
> (b) attorneys for the Financial Oversight and Management Board as representative of The Commonwealth of Puerto Rico, O'Neill & Borges LLC,  250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918–1813, Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges. com);
>
> (c) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com), Suzzanne Uhland, Esq. (suhland@omm.com), and Diana M. Perez, Esq. (dperez@omm.com);
>
> (d) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muñiz LLC, MCS Plaza, Suite 500, 255 Ponce de León Ave., San Juan, P.R. 00917, Attn.: Luis C. Marini–Biaggi, Esq. (lmarini@mpmlawpr.com)   and Carolina Velaz–Rivero Esq. (cvelaz@mpmlawpr.com);
>
> (e) the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Commonwealth of Puerto Rico*);
>
> (f) attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq. (lucdespins@paulhastings.com);
>
> (g) attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Ste. 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. (jcasillas@cstlawpr.com) and Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com);
>
> (h) attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq.   (rgordon@jenner.com)   and   Richard   Levin,   Esq. (rlevin@jenner.com); and Jenner & Block LLP, 353 N. Clark Street,

Chicago, IL 60654, Attn: Catherine Steege, Esq. (csteege@jenner.com)
and Melissa Root, Esq. (mroot@jenner.com);

(i) attorneys for the Official Committee of Retired Employees, Bennazar,
García & Milián, C.S.P., Edificio Union Plaza, PH–A, 416 Ave. Ponce
de León, Hato Rey, PR 00918, Attn: A.J. Bennazar–Zequeira, Esq.
(ajb@bennazar.org);

(j) the Puerto Rico Department of Treasury, PO Box 9024140, San Juan, PR
00902–4140, Attn: Reylam Guerra Goderich, Deputy Assistant of
Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E.
Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting
(Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez,
Deputy Assistant Secretary of Internal Revenue and Tax Policy
(angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant
Secretary of Internal Revenue and Tax Policy (francisco.pares
@hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant
Secretary of the Treasury (Francisco.Pena@hacienda. pr.gov);

(k) attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252 Ponce
de León Avenue, Citibank Tower, 12th Floor, San Juan, PR 00918, Attn:
Eyck O. Lugo (elugo@edgelegalpr.com); and

(l) attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main
Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler
(KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing
interim compensation for professional services rendered during the Compensation Period in the
amount of **$5,730,306.79**, which is comprised of (i) fees for professional services rendered in the
amount of $5,257,162.20, and (ii) the Gross–Up Amount in the amount of $473,144.59,[16] and
allowing reimbursement for actual and necessary expenses Proskauer incurred in connection with
such services during the Compensation Period in the amount of **$163,334.07**; (b) authorizing and
directing the Debtor to pay promptly to Proskauer the difference between (*i*) the amount of interim

---

[16] Proskauer will only request payment of the Gross–Up Amount from the Debtor if and when Proskauer partners receive
a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits
offsetting the Gross–Up Amount. As of the date of hereof, Proskauer has not yet requested payment of the Gross–Up
Amount.

compensation for professional services rendered and reimbursement of expenses incurred during the Compensation Period allowed hereunder, and (*ii*) the amounts for such compensation and expenses previously paid to Proskauer, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred without prejudice to Proskauer's right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application; and (d) granting Proskauer such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: September 20, 2019
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969–3000
Fax: (212) 969–2900
Email: mbienenstock@proskauer.com
         ppossinger@proskauer.com
         ebarak@proskauer.com
         mzerjal@proskauer.com

–and–

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M. Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918–1813
Tel: (787) 764–8181
Fax: (787) 753–8944

*Attorneys for the Financial Oversight and
Management Board as Representative of the
Debtor*

46