UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE<br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, AND THE PUERTO RICO<br>PUBLIC BUILDINGS AUTHORITY,<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## TITLE III JOINT PLAN OF ADJUSTMENT OF
## THE COMMONWEALTH OF PUERTO RICO, ET AL.

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board*
*as Representative for the Debtors in their Title III Cases*

Dated: September 27, 2019

## TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ........................................................................................................1

| | | |
|---|---|---|
| 1.1 | 2011 GO Bonds | 1 |
| 1.2 | 2012 CW Bond Claim | 1 |
| 1.3 | 2012 CW Bond Claim (Insured) | 1 |
| 1.4 | 2012 CW Bond Claim (Taxable Election) | 1 |
| 1.5 | 2012 CW Bond Settlement | 1 |
| 1.6 | 2012 CW Guarantee Bond Claim | 1 |
| 1.7 | 2012 CW Guarantee Bond Claim (Taxable Election) | 2 |
| 1.8 | 2012 CW Guarantee Bond Settlement | 2 |
| 1.9 | 2012 GO Bonds | 2 |
| 1.10 | 2012 Non-Settling PBA Bondholder | 2 |
| 1.11 | 2012 PBA Bond Claim | 2 |
| 1.12 | 2012 PBA Bonds | 2 |
| 1.13 | 2012 Settlement Savings | 2 |
| 1.14 | 2012 Settling CW Bond Claim | 2 |
| 1.15 | 2012 Settling CW Bond Distribution | 3 |
| 1.16 | 2012 Settling CW Guarantee Bond Claim | 3 |
| 1.17 | 2012 Settling CW Guarantee Bond Distribution | 3 |
| 1.18 | 2012 Taxable Bond Distribution | 3 |
| 1.19 | 2014 CW Bond Claim | 3 |
| 1.20 | 2014 CW Bond Claim (Taxable Election) | 3 |
| 1.21 | 2014 CW Bond Settlement | 3 |
| 1.22 | 2014 CW Guarantee Bond Claim | 3 |
| 1.23 | 2014 CW Guarantee Bond Claim (Taxable Election) | 4 |
| 1.24 | 2014 CW Guarantee Bond Settlement | 4 |
| 1.25 | 2014 GO Bonds | 4 |
| 1.26 | 2014 Settlement Savings | 4 |
| 1.27 | 2014 Settling CW Bond Claim | 4 |
| 1.28 | 2014 Settling CW Bond Distribution | 4 |
| 1.29 | 2014 Settling CW Guarantee Bond Claim | 4 |
| 1.30 | 2014 Settling CW Guarantee Bond Distribution | 4 |
| 1.31 | 2014 Taxable Bond Distribution | 5 |
| 1.32 | AAFAF | 5 |
| 1.33 | Act 106 | 5 |
| 1.34 | Act 106 Board | 5 |
| 1.35 | Active Participant | 5 |
| 1.36 | Active ERS Participant Claim | 5 |
| 1.37 | Active JRS Participant Claim | 5 |
| 1.38 | Active TRS Participant Claim | 5 |

**Table of Contents**
**(Cont'd)**

**Page**

| | | |
|---|---|---|
| 1.39 | Administrative Claim Bar Date | 5 |
| 1.40 | Administrative Expense Claim | 5 |
| 1.41 | ADR Order | 5 |
| 1.42 | ADR Procedures | 6 |
| 1.43 | Affiliate | 6 |
| 1.44 | AFSCME | 6 |
| 1.45 | AFSCME CBAs | 6 |
| 1.46 | AFSCME Employee Claims | 6 |
| 1.47 | AFSCME Plan Support Agreement | 6 |
| 1.48 | AFSCME Term Sheet | 6 |
| 1.49 | Allowed | 6 |
| 1.50 | Allowed Administrative Expense Claim | 7 |
| 1.51 | Allowed Claim | 7 |
| 1.52 | Ambac | 7 |
| 1.53 | Appointments Related Litigation | 7 |
| 1.54 | Assets | 7 |
| 1.55 | Assured | 7 |
| 1.56 | Avoidance Actions | 7 |
| 1.57 | Avoidance Actions Beneficiaries | 7 |
| 1.58 | Avoidance Actions CW Interests | 8 |
| 1.59 | Avoidance Actions ERS Interests | 8 |
| 1.60 | Avoidance Actions Trust | 8 |
| 1.61 | Avoidance Actions Trust Agreement | 8 |
| 1.62 | Avoidance Actions Trust Assets | 8 |
| 1.63 | Avoidance Actions Trust Board | 8 |
| 1.64 | Avoidance Actions Trustee | 8 |
| 1.65 | Avoidance Actions Trust Interests | 8 |
| 1.66 | Ballot Date | 8 |
| 1.67 | Ballot/Election Form | 8 |
| 1.68 | Bankruptcy Code | 8 |
| 1.69 | Bankruptcy Rules | 9 |
| 1.70 | Bar Date | 9 |
| 1.71 | Bar Date Order | 9 |
| 1.72 | Base Contribution | 9 |
| 1.73 | Benefit Reduction Date | 9 |
| 1.74 | Benefit Restoration | 9 |
| 1.75 | Bond Claim | 9 |
| 1.76 | Bondowner | 9 |
| 1.77 | Bond Recovery Cap | 10 |
| 1.78 | Business Day | 10 |
| 1.79 | Capital Improvements | 10 |

## Table of Contents
### (Cont'd)

Page

| | | |
|---|---|---|
| 1.80 | Cash | 10 |
| 1.81 | Causes of Action | 10 |
| 1.82 | Christmas Bonus | 11 |
| 1.83 | Claim | 11 |
| 1.84 | Class | 11 |
| 1.85 | COFINA | 11 |
| 1.86 | Commonwealth | 11 |
| 1.87 | Commonwealth Constitution | 11 |
| 1.88 | Commonwealth Legislature | 11 |
| 1.89 | Commonwealth Petition Date | 11 |
| 1.90 | Commonwealth Title III Case | 11 |
| 1.91 | Confirmation Date | 11 |
| 1.92 | Confirmation Hearing | 12 |
| 1.93 | Confirmation Order | 12 |
| 1.94 | Consummation Costs | 12 |
| 1.95 | Consummation Costs Parties | 12 |
| 1.96 | Convenience Claim | 12 |
| 1.97 | Creditor | 12 |
| 1.98 | Creditors' Committee | 12 |
| 1.99 | CW Appropriations Claims | 12 |
| 1.100 | CW Bond Claims | 12 |
| 1.101 | CW Bond Claims (Insured) | 12 |
| 1.102 | CW Cash | 13 |
| 1.103 | CW Excess Cash | 13 |
| 1.104 | CW Fiscal Plan | 13 |
| 1.105 | CW General Unsecured Claim | 13 |
| 1.106 | CW Guarantee Bond Claims | 13 |
| 1.107 | CW GUC Pool | 13 |
| 1.108 | CW Pari Passu Recovery Percentage | 14 |
| 1.109 | CW Recovery Actions | 14 |
| 1.110 | CW/Convention Constitutional Claim | 14 |
| 1.111 | CW/Convention Constitutional Claim Distribution | 14 |
| 1.112 | CW/HTA Constitutional Claim | 14 |
| 1.113 | CW/HTA Constitutional Claim Distribution | 15 |
| 1.114 | CW/MBA Constitutional Claim | 15 |
| 1.115 | CW/MBA Constitutional Claim Distribution | 15 |
| 1.116 | CW/PRIFA Rum Tax Constitutional Claim | 15 |
| 1.117 | CW/PRIFA Rum Tax Constitutional Claim Distribution | 15 |
| 1.118 | Debt | 15 |
| 1.119 | Debt Limit Objections | 15 |
| 1.120 | Debtors | 15 |

**Table of Contents**
**(Cont'd)**

**Page**

| | | |
|---|---|---|
| 1.121 | Debt Policy Period | 16 |
| 1.122 | Debt Policy Revenues | 16 |
| 1.123 | Definitive Documents | 16 |
| 1.124 | Disallowed | 16 |
| 1.125 | Disbursing Agent | 16 |
| 1.126 | Disclosure Statement | 16 |
| 1.127 | Disclosure Statement Hearing | 17 |
| 1.128 | Disclosure Statement Order | 17 |
| 1.129 | Disputed Claim | 17 |
| 1.130 | Distribution Date | 17 |
| 1.131 | Distribution Record Date | 17 |
| 1.132 | Effective Date | 17 |
| 1.133 | Entity | 17 |
| 1.134 | ERS | 17 |
| 1.135 | ERS Bond Claim | 17 |
| 1.136 | ERS Bond Claim (Taxable Election) | 18 |
| 1.137 | ERS Bond Collateral Cash | 18 |
| 1.138 | ERS Bonds | 18 |
| 1.139 | ERS Bond Settlement | 18 |
| 1.140 | ERS Bond Settlement Distribution | 18 |
| 1.141 | ERS Cash | 18 |
| 1.142 | ERS General Unsecured Claim | 18 |
| 1.143 | ERS GUC Pool | 19 |
| 1.144 | ERS Litigation | 19 |
| 1.145 | ERS Participant Claim | 19 |
| 1.146 | ERS Petition Date | 19 |
| 1.147 | ERS Recovery Actions | 19 |
| 1.148 | ERS Reserve | 20 |
| 1.149 | ERS Resolution | 20 |
| 1.150 | ERS Takings Action | 20 |
| 1.151 | ERS Taxable Bond Distribution | 20 |
| 1.152 | ERS Title III Case | 20 |
| 1.153 | Excess Cash | 20 |
| 1.154 | Excess Cash Surplus | 21 |
| 1.155 | Executory Contract | 21 |
| 1.156 | FGIC | 21 |
| 1.157 | Final Order | 21 |
| 1.158 | Fiscal Plan | 21 |
| 1.159 | Fiscal Plan Surplus | 22 |
| 1.160 | FY | 22 |
| 1.161 | GASB | 22 |

**Table of Contents**
**(Cont'd)**

**Page**

1.162  GDB ................................................................................................................22
1.163  General Fund ..................................................................................................22
1.164  General Unsecured Claims ..............................................................................22
1.165  GO Bond Claim ..............................................................................................22
1.166  GO Bond Claim (Insured) ...............................................................................22
1.167  GO Bonds.........................................................................................................22
1.168  Government Parties .........................................................................................22
1.169  Government Released Claims ..........................................................................22
1.170  Government Releasees .....................................................................................22
1.171  Gracia Gracia Claim .......................................................................................23
1.172  Gracia Gracia CW Action ...............................................................................23
1.173  Gracia Gracia Federal Action .........................................................................23
1.174  Gracia Gracia Settlement ................................................................................23
1.175  GSA Helicopter Loan ......................................................................................23
1.176  HTA ..................................................................................................................23
1.177  HTA Title III Case ..........................................................................................23
1.178  Invalidity Actions............................................................................................23
1.179  IRC ...................................................................................................................23
1.180  IRS ...................................................................................................................23
1.181  JRS ...................................................................................................................23
1.182  JRS Participant Claim .....................................................................................23
1.183  Late Vintage Litigation ...................................................................................24
1.184  Late Vintage Reserve ......................................................................................24
1.185  LCDC ...............................................................................................................24
1.186  Lien ..................................................................................................................24
1.187  Lien Challenge Actions....................................................................................24
1.188  List of Creditors ..............................................................................................24
1.189  Litigation Trust ...............................................................................................24
1.190  Litigation Trust Agreement ............................................................................24
1.191  Litigation Trust Assets ...................................................................................24
1.192  Litigation Trust Beneficiaries ........................................................................24
1.193  Litigation Trust Board.....................................................................................24
1.194  Litigation Trust Interests ................................................................................25
1.195  Litigation Trust Trustee ..................................................................................25
1.196  Local Bankruptcy Rules ..................................................................................25
1.197  Maximum Annual Debt Service ......................................................................25
1.198  Maximum Taxable Bond Election Amount......................................................25
1.199  Medicine Bonus ...............................................................................................25
1.200  Medicine Insurance Benefit ............................................................................25
1.201  Monthly Base Pension .....................................................................................25
1.202  Monthly Benefit Modification .........................................................................25

**Table of Contents**
**(Cont'd)**

**Page**

| | | |
|---|---|---|
| 1.203 | Monthly Christmas Bonus | 26 |
| 1.204 | Monthly Medicine Bonus | 26 |
| 1.205 | Monthly Summer Bonus | 26 |
| 1.206 | National | 26 |
| 1.207 | Net Tax-Supported Debt | 26 |
| 1.208 | New Bonds | 26 |
| 1.209 | New Bonds Indenture | 26 |
| 1.210 | New Bonds Legislation | 27 |
| 1.211 | New Bonds Trustee | 27 |
| 1.212 | Non-Settling CW Bondholders | 27 |
| 1.213 | Non-Settling CW Bondholders' Settlement Savings Portion | 27 |
| 1.214 | Non-Settling ERS Bondholders | 27 |
| 1.215 | Ordinary Course Employee Claim | 27 |
| 1.216 | Outstanding | 27 |
| 1.217 | Oversight Board | 27 |
| 1.218 | Ordinary Course Employee Claim | 27 |
| 1.219 | Participant | 27 |
| 1.220 | PayGo | 27 |
| 1.221 | PBA | 27 |
| 1.222 | PBA Administrative Expense Claim | 28 |
| 1.223 | PBA Bond Claim | 28 |
| 1.224 | PBA Bond Claim (Insured) | 28 |
| 1.225 | PBA Bond Distribution | 28 |
| 1.226 | PBA Bonds | 28 |
| 1.227 | PBA Cash | 29 |
| 1.228 | PBA/DRA Secured Claim | 29 |
| 1.229 | PBA/DRA Unsecured Claim | 29 |
| 1.230 | PBA Excess Cash | 29 |
| 1.231 | PBA General Unsecured Claim | 29 |
| 1.232 | PBA Litigation | 29 |
| 1.233 | PBA Petition Date | 29 |
| 1.234 | PBA Property | 29 |
| 1.235 | PBA Title III Case | 29 |
| 1.236 | Pension Reserve Deed of Trust | 29 |
| 1.237 | Pension Reserve Trust | 30 |
| 1.238 | Person | 30 |
| 1.239 | PFC | 30 |
| 1.240 | Plan | 30 |
| 1.241 | Plan Supplement | 30 |
| 1.242 | Plan Support Agreement | 30 |
| 1.243 | Ports | 30 |

**Table of Contents**
**(Cont'd)**

Page

| | | |
|---|---|---|
| 1.244 | PRASA | 30 |
| 1.245 | PRCCDA | 30 |
| 1.246 | PREPA | 30 |
| 1.247 | PRIFA | 30 |
| 1.248 | Professional | 30 |
| 1.249 | Professional Claim | 31 |
| 1.250 | PROMESA | 31 |
| 1.251 | Pro Rata Share | 31 |
| 1.252 | PSA Creditors | 31 |
| 1.253 | PSA Restriction Fees | 31 |
| 1.254 | Puerto Rico Investor | 31 |
| 1.255 | QTCB Group | 31 |
| 1.256 | Reduction Percentage | 31 |
| 1.257 | Related Persons | 31 |
| 1.258 | Released Claims | 32 |
| 1.259 | Released Parties | 32 |
| 1.260 | Releasing Parties | 32 |
| 1.261 | Remaining Reserve Amount | 32 |
| 1.262 | Rent Claim | 32 |
| 1.263 | Reorganized Debtors | 33 |
| 1.264 | Retiree | 33 |
| 1.265 | Retiree Claim | 33 |
| 1.266 | Retiree Committee | 33 |
| 1.267 | Retiree Committee Plan Support Agreement | 33 |
| 1.268 | Section 510(b) Subordinated Claim | 33 |
| 1.269 | Securities Act | 33 |
| 1.270 | Settlement Savings | 33 |
| 1.271 | Settling ERS Bond Claim | 33 |
| 1.272 | Solicitation Agent | 33 |
| 1.273 | SPU | 33 |
| 1.274 | Summer Bonus | 33 |
| 1.275 | Support Date | 34 |
| 1.276 | Syncora | 34 |
| 1.277 | System 2000 | 34 |
| 1.278 | System 2000 Participant Claim | 34 |
| 1.279 | Taxable New Bonds | 34 |
| 1.280 | Tax-Supported Debt | 34 |
| 1.281 | Term Sheet | 34 |
| 1.282 | Threshold | 35 |
| 1.283 | Title III | 35 |
| 1.284 | Title III Cases | 35 |

**Table of Contents**
**(Cont'd)**

**Page**

1.285   Title III Court.................................................................................35
1.286   Total Monthly Benefit....................................................................35
1.287   TRS................................................................................................35
1.288   TRS Participant Claim....................................................................35
1.289   Unclaimed Distribution...................................................................35
1.290   Unexpired Lease..............................................................................35
1.291   UPR.................................................................................................35
1.292   Vintage CW Bond Claim.................................................................35
1.293   Vintage CW Bond Claim (Insured)..................................................35
1.294   Vintage CW Bond Claim (Taxable Election)....................................35
1.295   Vintage CW Bond Distribution.........................................................36
1.296   Vintage CW Bonds............................................................................36
1.297   Vintage CW Guarantee Bond Claim.................................................36
1.298   Vintage CW Guarantee Bond Claim (Insured)..................................36
1.299   Vintage CW Guarantee Bond Claim (Taxable Election)...................36
1.300   Vintage CW Guarantee Bond Distribution........................................36
1.301   Vintage PBA Bonds..........................................................................37
1.302   Vintage Taxable Bond Distribution...................................................37
1.303   Vintage PBA Bond Claim.................................................................37
1.304   Other Definitions..............................................................................37
1.305   Rules of Interpretation......................................................................37

ARTICLE II COMPROMISE AND SETTLEMENT OF DISPUTES/RESTRUCTING OF
               ENTITIES..............................................................................38

2.1      Litigation Resolution........................................................................38
2.2      Allowance of Bond Claims...............................................................38
2.3      Releases, Injunctions and Exculpation ............................................38
2.4      Purchase and Sale of Certain ERS Assets........................................39

ARTICLE III PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS39

3.1      Administrative Expense Claims........................................................39
3.2      Professional Compensation and Reimbursement Claims ..................39
3.3      Consummation Costs.........................................................................40
3.4      AFSCME Professional Fees..............................................................40
3.5      PSA Restriction Fee..........................................................................40

ARTICLE IV CLASSIFICATION OF CLAIMS...................................................42

4.1      Claims are classified as follows........................................................42

ARTICLE V PROVISIONS FOR TREATMENT OF PBA BOND CLAIMS (CLASS 1).........44

**Table of Contents**
**(Cont'd)**

**Page**

5.1  Treatment of PBA Bond Claims ................................................................44

ARTICLE VI PROVISIONS FOR TREATMENT OF PBA BOND
CLAIMS (INSURED) (CLASS 2) ................................................44

6.1  Treatment of PBA Bond Claims (Insured) ..............................................44

ARTICLE VII PROVISIONS FOR TREATMENT OF
PBA/DRA SECURED CLAIMS (CLASS 3) ................................44

7.1  Treatment of PBA/DRA Secured Claims ..................................................44

ARTICLE VIII PROVISIONS FOR TREATMENT OF PBA GENERAL UNSECURED
CLAIMS (CLASS 4) ................................................................44

8.1  Treatment of PBA General Unsecured Claims ..........................................44

ARTICLE IX PROVISIONS FOR TREATMENT OF PBA/DRA
UNSECURED CLAIMS (CLASS 5) ............................................45

9.1  Treatment of PBA/DRA Unsecured Claims ..............................................45

ARTICLE X PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
CLAIMS (CLASS 6) ................................................................45

10.1  Treatment of Vintage CW Bond Claims....................................................45
10.2  Right of Election to Vintage CW Bond Claims (Taxable Election)......................45

ARTICLE XI PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
BOND CLAIMS (INSURED) (CLASS 7) ....................................45

11.1  Treatment of Vintage CW Bond Claims (Insured)................................45

ARTICLE XII PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
CLAIMS (TAXABLE ELECTION) (CLASS 8)..........................46

12.1  Treatment of Vintage CW Bond Claims (Taxable Election)................................46

ARTICLE XIII PROVISIONS FOR TREATMENT OF VINTAGE CW GUARANTEE BOND
CLAIMS (CLASS 9) ................................................................46

13.1  Treatment of Vintage CW Guarantee Bond Claims ................................46
13.2  Right of Election to Vintage CW Guarantee Bond Claims (Taxable
Election)................................................................................46

**Table of Contents**
**(Cont'd)**

**Page**

ARTICLE XIV PROVISIONS FOR TREATMENT OF VINTAGE CW
        GUARANTEE BOND CLAIMS (INSURED) (CLASS 10)............................47

    14.1    Treatment of Vintage CW Guarantee Bond Claims (Insured)...............................47

ARTICLE XV PROVISIONS FOR TREATMENT OF VINTAGE CW
        GUARANTEE BOND CLAIMS (TAXABLE ELECTION) (CLASS 11)......47

    15.1    Treatment of Vintage CW Guarantee Bond Claims (Taxable Election) ...............47

ARTICLE XVI PROVISIONS FOR TREATMENT OF 2012 CW BOND
        CLAIMS (CLASS 12) ................................................................47

    16.1    Treatment of 2012 CW Bond Claims ...................................................47
    16.2    Rights of Election to 2012 Settling CW Bond Claims .........................................48

ARTICLE XVII PROVISIONS FOR TREATMENT FOR 2012
        CW BOND CLAIMS (INSURED) (CLASS 13)................................................48

    17.1    Treatment of 2012 CW Bond Claims (Insured)...................................................48

ARTICLE XVIII PROVISIONS FOR TREATMENT FOR 2012 SETTLING
        CW BOND CLAIMS (CLASS 14)...................................................49

    18.1    Treatment of 2012 Settling CW Bond Claims........................................................49

ARTICLE XIX PROVISIONS FOR TREATMENT OF 2012 CW BOND
        CLAIMS (TAXABLE ELECTION) (CLASS 15)............................................49

    19.1    Provisions for Treatment of 2012 CW Bond Claims (Taxable Election).............49

ARTICLE XX PROVISIONS FOR TREATMENT OF
        2012 CW GUARANTEE BOND CLAIMS (CLASS 16) ...............................49

    20.1    Treatment of 2012 CW Guarantee Bond Claims...................................................49
    20.2    Rights of Election to 2012 Settling CW Guarantee Bond Claims ........................50

ARTICLE XXI PROVISIONS FOR TREATMENT OF 2012 SETTLING CW GUARANTEE
        BOND CLAIMS (CLASS 17) ............................................................50

    21.1    Treatment of 2012 Settling CW Guarantee Bond Claims ....................................50

ARTICLE XXII PROVISIONS FOR TREATMENT OF 2012 CW GUARANTEE
        BOND CLAIMS (TAXABLE ELECTION) (CLASS 18) ...............................51

    22.1    Treatment of 2012 Settling CW Bond Claims (Taxable Election).......................51

**Table of Contents**
**(Cont'd)**

**Page**

ARTICLE XXIII PROVISIONS FOR TREATMENT OF 2014 CW BOND CLAIMS (CLASS 19) .............................................................................................................51

   23.1   Treatment of 2014 CW Bond Claims ................................................................51
   23.2   Rights of Election to 2014 Settling CW Bond Claims .......................................51

ARTICLE XXIV PROVISIONS FOR TREATMENT OF 2014 SETTLING CW BOND CLAIMS (CLASS 20)........................................................52

   24.1   Treatment of 2014 Settling CW Bond Claims.........................................................52

ARTICLE XXV PROVISIONS FOR TREATMENT OF 2014 CW BOND CLAIMS (TAXABLE ELECTION) (CLASS 21)..........................................52

   25.1   Provisions for Treatment of 2014 CW Bond Claims (Taxable Election).............52

ARTICLE XXVI PROVISIONS FOR TREATMENT OF 2014 CW GUARANTEE BOND CLAIMS (CLASS 22) ...............................52

   26.1   Treatment of 2014 CW Guarantee Bond Claims...................................................52
   26.2   Rights of Election to 2014 Settling CW Guarantee Bond Claims ........................53

ARTICLE XXVII PROVISIONS FOR TREATMENT OF 2014 SETTLING CW GUARANTEE BOND CLAIMS (CLASS 23) ...................53

   27.1   Treatment of 2014 Settling CW Guarantee Bond Claims .....................................53

ARTICLE XXVIII PROVISIONS FOR TREATMENT OF 2014 CW GUARANTEE BOND CLAIMS (TAXABLE ELECTION) (CLASS 24) ...............................54

   28.1   Treatment of 2014 Settling CW Bond Claims (Taxable Election).......................54

ARTICLE XXIX PROVISIONS FOR TREATMENT OF ACTIVE AND RETIRED EMPLOYEE RETIREMENT BENEFITCLAIMS (CLASS 25A THROUGH 25E).........................................................................................................54

   29.1   Treatment of Retiree Claims (Class 25A)............................................................54
   29.2   Treatment of Active ERS Participant Claims (Class 25B) ...................................54
   29.3   Treatment of Active JRS Participant Claims (Class 25C)....................................55
   29.4   Treatment of Active TRS Participant Claims (Class 25D)....................................55
   29.5   Treatment of System 2000 Participant Claims (Class 25E)..................................55

ARTICLE XXX PROVISIONS FOR TREATMENT OF AFSCME EMPLOYEE CLAIMS (CLASS 26) .............................................56

   30.1   Treatment of AFSCME Employee Claims ...........................................................56

**Table of Contents**
**(Cont'd)**

**Page**

ARTICLE XXXI PROVISIONS FOR TREATMENT OF CW
       GENERAL UNSECURED  CLAIMS (CLASS 27)..........................................57

   31.1   Treatment of CW General Unsecured Claims .........................................57
   31.2   Limitation on Recovery ........................................................................58

ARTICLE XXXII PROVISIONS FOR TREATMENT OF
       CW/HTA CONSTITUTIONAL CLAIMS (CLASS 28) ................................58

   32.1   Treatment of CW/HTA Constitutional Claims ......................................58

ARTICLE XXXIII PROVISIONS FOR TREATMENT OF
       CW/CONVENTION CONSTITUTIONAL CLAIMS (CLASS 29) ...............58

   33.1   Treatment of CW/Convention Constitutional Claims............................58

ARTICLE XXXIV PROVISIONS FOR TREATMENT OF
       CW/PRIFA RUM TAX CONSTITUTIONAL CLAIMS (CLASS 30)...........59

   34.1   Treatment of CW/PRIFA Rum Tax Contract Claims .............................59

ARTICLE XXXV PROVISIONS FOR TREATMENT OF
       CW/MBA CONSTITUTIONAL CLAIMS (CLASS 31) ...............................59

   35.1   Treatment of CW/MBA Constitutional Claims .....................................59

ARTICLE XXXVI PROVISIONS FOR TREATMENT OF
       CWAPPROPRIATIONS CLAIMS (CLASS 32) ...........................................59

   36.1   Treatment of CW Appropriations Claims...............................................59

ARTICLE XXXVII PROVISIONS FOR TREATMENT OF
       CW/510(B) SUBORDINATED CLAIMS (CLASS 33)..................................59

   37.1   Treatment of CW/510(B) Subordinated Claims .....................................59

ARTICLE XXXVIII PROVISIONS FOR TREATMENT OF
       ERS BOND CLAIMS (CLASS 34)..............................................................60

   38.1   Treatment of  ERS Bond Claims ...........................................................60
   38.2   Rights of Election to Settling ERS Bond Claims ..................................60

ARTICLE XXXIX PROVISIONS FOR TREATMENT OF
       SETTLING ERS BOND CLAIMS (CLASS 35)..............................................60

   39.1   Treatment of Settling ERS Bond Claims ...............................................60

**Table of Contents**
**(Cont'd)**

**Page**

ARTICLE XL PROVISIONS FOR TREATMENT OF ERS BOND
    CLAIMS (TAXABLE ELECTION) (CLASS 36)............................................61

    40.1    Treatment of ERS Bond Claims (Taxable Election)..............................................61

ARTICLE XLI PROVISIONS FOR TREATMENT OF
    ERS GENERAL UNSECURED CLAIMS (CLASS 37) ................................61

    41.1    Treatment of ERS General Unsecured Claims ......................................................61
    41.2    Limitation on Recovery ........................................................................................61

ARTICLE XLII PROVISIONS FOR TREATMENT OF
    GRACIA GRACIA CLAIMS (CLASS 38)..................................................62

    42.1    Treatment of Gracia Gracia Claims ......................................................................62

ARTICLE XLIII PROVISIONS FOR TREATMENT OF
    CONVENIENCE CLAIMS (CLASS 39) .....................................................62

    43.1    Treatment of Convenience Claims........................................................................62

ARTICLE XLIV PROVISIONS REGARDING NEW BONDS AND
    ADDITIONAL INDEBTEDNESS ...............................................................62

    44.1    Issuance and Distribution of the New Bonds........................................................62
    44.2    Comprehensive Cap on All  Net Tax-Supported Debt .........................................65
    44.3    Adoption and Maintenance of a Debt Management Policy....................................66

ARTICLE XLV TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES ........................................................................................................67

    45.1    Rejection or Assumption of Remaining Executory Contracts and
            Unexpired Leases..........................................................................................67
    45.2    Approval of Rejection or Assumption of Executory Contracts and
            Unexpired Leases..........................................................................................67
    45.3    Inclusiveness ........................................................................................................67
    45.4    Cure of Defaults....................................................................................................68
    45.5    Insurance Policies .................................................................................................68
    45.6    Rejection Damage Claims......................................................................................68
    45.7    Indemnification and Reimbursement Obligations .................................................68
    45.8    Nonoccurrence of Effective Date..........................................................................69
    45.9    Reservation of Rights............................................................................................69
    45.10  Collective Bargaining Agreements .......................................................................69
    45.11  PRASA Guarantee ................................................................................................69

**Table of Contents**
**(Cont'd)**

**Page**

ARTICLE XLVI PROVISIONS GOVERNING DISTRIBUTIONS ........................................... 69

    46.1    Time and Manner of Distribution ........................................ 69
    46.2    Timeliness of Payments ..................................................... 70
    46.3    Distributions by the Disbursing Agent ............................... 70
    46.4    Manner of Payment under the Plan ..................................... 70
    46.5    Delivery of Distributions .................................................. 71
    46.6    Cancellation of Notes, Instruments, Certificates, and Other Documents ............. 71
    46.7    Undeliverable/Reserved Distributions ................................ 71
    46.8    Withholding and Reporting Requirements ........................... 72
    46.9    Time Bar to Cash Payments ............................................... 73
    46.10  Distributions After Effective Date ...................................... 73
    46.11  Setoffs ............................................................................ 73
    46.12  Allocation of Plan Distributions Between Principal and Interest ..................... 73
    46.13  Payment of Trustee Fees and Expenses .............................. 73

ARTICLE XLVII LITIGATION TRUST .......................................................................... 74

    47.1    Execution of Litigation Trust Agreement ........................... 74
    47.2    Purpose of the Litigation Trust ......................................... 74
    47.3    Litigation Trust Assets ..................................................... 74
    47.4    Administration of the Litigation Trust ............................... 75
    47.5    The Litigation Trustee ...................................................... 75
    47.6    Role of the Litigation Trustee ........................................... 75
    47.7    Litigation Trustee's Tax Power ......................................... 75
    47.8    Transferability of Litigation Trust Interests ....................... 76
    47.9    Cash............................................................................... 76
    47.10  Distribution of Litigation Trust Assets .............................. 76
    47.11  Funding, Costs and Expenses of the Litigation Trust ........... 76
    47.12  Compensation of the Litigation Trustee ............................. 76
    47.13  Retention of Professionals/Employees by the Litigation Trustee ........... 76
    47.14  Federal Income Tax Treatment of the Litigation Trust ........ 76
    47.15  Indemnification of Litigation Trustee ................................ 79

ARTICLE XLVIII AVOIDANCE ACTIONS TRUST ......................................................... 80

    48.1    Execution of Avoidance Actions Trust Agreement .............. 80
    48.2    Purpose of the Avoidance Actions Trust ............................ 80
    48.3    Avoidance Actions Trust Assets ....................................... 80
    48.4    Administration of the Avoidance Actions Trust .................. 80
    48.5    The Avoidance Actions Trustee......................................... 81
    48.6    Role of the Avoidance Actions Trustee .............................. 81
    48.7    Avoidance Actions Trustee's Tax Power for Debtors .......... 81

xiv

**Table of Contents**
**(Cont'd)**

**Page**

48.8    Transferability of Avoidance Actions Trust Interests............................................81
48.9    Cash............................................................................................................................81
48.10   Distribution of Avoidance Action Trust Assets........................................................81
48.11   Funding, Costs and Expenses of the Avoidance Actions Trust.............................82
48.12   Compensation of the Avoidance Actions Trustee ..................................................82
48.13   Retention of Professionals/Employees by the Avoidance Actions Trustee...........82
48.14   Federal Income Tax Treatment of the Avoidance Actions Trust .........................82
48.15   Indemnification of Avoidance Actions Trustee......................................................86

ARTICLE XLIX PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD BY THE
        DEBTORS .............................................................................................................86

49.1    Prosecution of Claims ............................................................................................86

ARTICLE L ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
        REJECTION BY ONE OR MORE CLASSES OF CLAIMS ...........................86

50.1    Impaired Classes to Vote .......................................................................................86
50.2    Acceptance by Class of Creditors .........................................................................86
50.3    Cramdown ...............................................................................................................86

ARTICLE LI RIGHTS AND POWERS OF DISBURSING AGENT .........................................87

51.1    Exculpation ..............................................................................................................87
51.2    Powers of the Disbursing Agent ............................................................................87
51.3    Fees and Expenses Incurred From and After the Effective Date.........................87

ARTICLE LII PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS ........................87

52.1    Objections to Claims; Prosecution of Disputed Claims.......................................87
52.2    Estimation of Claims...............................................................................................88
52.3    Payments and Distributions on Disputed Claims.................................................88
52.4    Authority to Amend Lists of Creditors ..................................................................89
52.5    Non-Accrual of Interest ..........................................................................................89
52.6    Disallowance of Claims ..........................................................................................89

ARTICLE LIII GOVERNANCE AND PROVISIONS REGARDING PENSION RESERVE ...89

53.1    Formation and Responsibilities of the Pension Reserve......................................89
53.2    Funding of the Pension Reserve Trust...................................................................89
53.3    Non-Impairment Covenant .....................................................................................90

ARTICLE LIV IDENTIFICATION OF CLAIMS IMPAIRED BY THE PLAN
        AND NOT IMPAIRED BY THE PLAN........................................................90

**Table of Contents**
**(Cont'd)**

**Page**

54.1   Impaired Classes ..................................................................90
54.2   Unimpaired Class ..................................................................90

ARTICLE LV CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN .............91

55.1   Conditions Precedent to Confirmation of the Plan ..............................91
55.2   Waiver of Conditions Precedent to Confirmation ................................92

ARTICLE LVI CONDITIONS PRECEDENT TO THE EFFECTIVE DATE...........................92

56.1   Conditions Precedent to the Effective Date.  The occurrence of the
       Effective Date and the substantial consummation of the Plan are subject to
       satisfaction of the following conditions precedent .................................92
56.2   Waiver of Conditions Precedent ................................................94
56.3   Effect of Non-Occurrence of Conditions to Effective Date...................94

ARTICLE LVII MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ....94

57.1   Modification of Plan ...........................................................94
57.2   Revocation or Withdrawal ......................................................95
57.3   Amendment of Plan Documents ...................................................95
57.4   No Admission of Liability .....................................................95

ARTICLE LVIII CORPORATE GOVERNANCE AND
       MANAGEMENT OF REORGANIZED DEBTORS .......................................95

58.1   Corporate Action................................................................95
58.2   Amendment of By-Laws ..........................................................96
58.3   Dissolution of ERS .............................................................96
58.4   Officers of Reorganized Debtors ...............................................96
58.5   PBA Governance Structure ......................................................96

ARTICLE LIX PROVISIONS REGARDING OVERSIGHT BOARD AND
       COMPLIANCE WITH PROMESA .................................................96

59.1   Effect of Confirmation........................................................96
59.2   Ongoing Role of the Oversight Board .........................................96

ARTICLE LX PROVISIONS REGARDING COMMITTEES ....................................97

60.1   Dissolution of Committees ....................................................97

ARTICLE LXI RETENTION OF JURISDICTION ...........................................97

61.1   Retention of Jurisdiction ....................................................97

**Table of Contents**
**(Cont'd)**

**Page**

ARTICLE LXII MISCELLANEOUS PROVISIONS ..................................................................99

    62.1    Title to Assets .................................................................................99
    62.2    Discharge and Release of Claims and Causes of Action ................99
    62.3    Injunction on Claims .....................................................................100
    62.4    Integral to Plan .............................................................................101
    62.5    Releases by the Debtors and Reorganized Debtors .......................101
    62.6    Injunction Related to Releases ......................................................101
    62.7    Exculpation ...................................................................................101
    62.8    Appointments Related Litigation ..................................................103
    62.9    Bar Order ......................................................................................103
    62.10  No Waiver .....................................................................................103
    62.11  Supplemental Injunction ...............................................................103
    62.12  Post-Effective Date Fees and Expenses ........................................104
    62.13  Securities Act Exemption ..............................................................104
    62.14  Severability ...................................................................................105
    62.15  Governing Law ..............................................................................105
    62.16  Closing Case .................................................................................105
    62.17  Section Headings ..........................................................................105
    62.18  Inconsistencies .............................................................................105
    62.19  Document Retention ......................................................................105
    62.20  Immediate Binding Effect .............................................................105
    62.21  Additional Documents ..................................................................106
    62.22  Reservation of Rights ...................................................................106
    62.23  Successors and Assigns .................................................................106
    62.24  Notices ..........................................................................................106
    62.25  Term of Injunctions or Stays ........................................................108
    62.26  Entire Agreement ..........................................................................108
    62.27  Plan Supplement ...........................................................................108

The Financial Oversight and Management Board for Puerto Rico, as Title III representative of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority pursuant to Section 315(b) of the *Puerto Rico Oversight, Management and Economic Stability Act*, hereby proposes the following joint plan of adjustment.

## ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms have the respective meanings set forth below and are equally applicable to the singular and plural of the terms defined:

1.1    **2011 GO Bonds**:  GO Bonds issued by the Commonwealth and listed on Exhibit "A" hereto.

1.2    **2012 CW Bond Claim**:  A Claim against the Commonwealth on account of (a) 2012 GO Bonds, other than a 2012 CW Bond Claims (Insured), and (b) Hacienda loans, which, as of the Commonwealth Petition Date, were in the aggregate outstanding principal amount of One Hundred Ninety-Eight Million Two Hundred Three Thousand Seven Hundred Sixty-Seven Dollars ($198,203,767.00).

1.3    **2012 CW Bond Claim (Insured)**:  A 2012 CW Bond Claim, the payment of principal and interest of which has been insured by Assured.

1.4    **2012 CW Bond Claim (Taxable Election)**:  A 2012 CW Bond Claim, other than a 2012 CW Bond Claim (Insured), the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Investors holding 2012 CW Bond Claims, 2012 CW Bond Claims, ERS Bond Claims, and Vintage CW Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2012 CW Bond Claim shall be a 2012 CW Bond Claim (Taxable Election) up to such 2012 CW Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2012 CW Bond Claim.

1.5    **2012 CW Bond Settlement:**  The settlement agreement elected, deemed or otherwise, by holders of Allowed 2012 CW Bond Claims to accept the 2012 Settling CW Bond Distribution and, in accordance therewith and in consideration therefor, (a) relinquish its rights to receive distributions pursuant to the Plan as a holder of Claims in Class 11 or Class 12 of the Plan, as applicable, (b) release and discharge (i) any and all claims and causes of action asserted, or which could have been asserted, in the Debt Limit Objections, the Late Vintage Litigation and the Avoidance Actions and (ii) any rights, claims or causes of actions with respect to the priority of the GO Bonds relative to CW General Unsecured Claims and (c) accept the Plan as a holder of a Claim in Class 13 of the Plan.

1.6    **2012 CW Guarantee Bond Claim:**  A Claim against the Commonwealth on account of the Commonwealth's full faith and credit guarantee, as authorized by action, legislation or resolution of the Commonwealth Legislature, of (a) an affiliate, agency or instrumentality indebtedness, which guarantee was executed, delivered or enacted pursuant to

1

legislation or resolution during the period from January 1, 2012 up to and including December 31, 2013, including, without limitation, the GSA Helicopter Loan, and (b) 2012 PBA Bonds; provided, however, that, solely for purposes of distribution under, but not voting with respect to, the Plan, the amount of a holder's 2012 CW Guarantee Bond Claim in respect of the Commonwealth's guarantee of 2012 PBA Bonds shall be measured as the amount of such holder's 2012 PBA Bond Claim minus the amount of such holder's PBA Bond Distribution on account of 2012 PBA Bonds.

1.7     **2012 CW Guarantee Bond Claim (Taxable Election):**  A 2012 CW Guarantee Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Investors holding 2012 CW Bond Claims, 2014 CW Bond Claims, ERS Bond Claims and Vintage CW Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2012 CW Guarantee Bond Claim shall be a 2012 CW Guarantee Bond Claim (Taxable Election) up to such 2012 CW Guarantee Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2012 CW Guarantee Bond Claim.

1.8     **2012 CW Guarantee Bond Settlement:**  The settlement agreement elected, deemed or otherwise, by holders of Allowed 2012 CW Guarantee Bond Claims, to accept the 2012 CW Guarantee Bond Distribution and, in accordance therewith and in consideration therefor, (a) relinquish its rights to receive distributions pursuant to the Plan as a holder of a Claim in Class 15 of the Plan, (b) release and discharge (i) any and all claims and causes of action asserted, or which could have been asserted, in the Debt Limit Objections, the Late Vintage Litigation and the Avoidance Actions and (ii) any rights, claims or causes of action with respect to the priority of the GO Bonds relative to CW General Unsecured Claims and (c) accept the Plan as a holder of a claim in Class 16 of the Plan.

1.9     **2012 GO Bonds:**  GO Bonds issued by the Commonwealth and listed on Exhibit "B" hereto.

1.10     **2012 Non-Settling PBA Bondholder:**  A holder of a 2012 PBA Bond who does not elect to participate in the 2012 CW Guarantee Bond Settlement.

1.11     **2012 PBA Bond Claim:**  A Claim against PBA on account of 2012 PBA Bonds.

1.12     **2012 PBA Bonds:**  PBA Bonds issued by PBA and listed on Exhibit "C" hereto.

1.13     **2012 Settlement Savings:**  The amount of distributable currency equal to (i) the CW Pari Passu Recovery Percentage of the aggregate amount of 2012 Settling CW Bond Claims and 2012 Settling CW Guarantee Bond Claims minus (ii) forty-five percent (45%) of the aggregate amount of 2012 Settling CW Bond Claims and 2012 Settling CW Guarantee Bond Claims.

1.14     **2012 Settling CW Bond Claim:**  A Claim against the Commonwealth by a holder of a 2012 CW Bond Claim that elects, deemed or otherwise, to participate in the 2012 CW Bond Settlement.

2

1.15   **2012 Settling CW Bond Distribution:**  A distribution of (a) CW Cash and (b) New Bonds to a holder of an Allowed 2012 CW Bond Claim that elects, deemed or otherwise, the 2012 CW Bond Settlement in an amount equal to forty-five percent (45%) of such holders' aggregate 2012 CW Bond Claims.

1.16   **2012 Settling CW Guarantee Bond Claim:**  A Claim against the Commonwealth by a holder of a 2012 CW Guarantee Bond Claim that elects, deemed or otherwise, to participate in the 2012 CW Guarantee Bond Settlement.

1.17   **2012 Settling CW Guarantee Bond Distribution:**  A distribution of (a) CW Cash and (b) New Bonds to holders of an Allowed 2012 CW Guarantee Bond Claim that elect, deemed or otherwise, the 2012 CW Guarantee Bond Settlement in an amount equal to forty-five percent (45%) of such holders' aggregate 2012 CW Guarantee Bond Claims.

1.18   **2012 Taxable Bond Distribution**:  The distribution to be made to each holder of an Allowed 2012 CW Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 18.1 hereof.

1.19   **2014 CW Bond Claim:**  A Claim against the Commonwealth on account of the 2014 GO Bonds.

1.20   **2014 CW Bond Claim (Taxable Election)**:  A 2014 CW Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Investors holding 2012 CW Bond Claims, 2014 CW Bond Claims, ERS Bond Claims, and Vintage CW Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2014 CW Bond Claim shall be a 2014 CW Bond Claim (Taxable Election) up to such 2014 CW Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2014 CW Bond Claim.

1.21   **2014 CW Bond Settlement:**  The settlement agreement elected, deemed or otherwise, by holders of Allowed 2014 Settling CW Bond Claims to accept the 2014 Settling CW Bond Distribution and, in accordance therewith and in consideration therefor, (a) relinquish its rights to receive distributions pursuant to the Plan as a holder of Claims in Class 18 of the Plan, (b) release and discharge (i) any and all claims and causes of action asserted, or which could have been asserted, in the Debt Limit Objections, the Late Vintage Litigation and the Avoidance Actions and (ii) any rights, claims or causes of action with respect to the priority of the GO Bonds relative to CW General Unsecured Claims and (c) accept the Plan as a holder of a claim in Class 19 of the Plan.

1.22   **2014 CW Guarantee Bond Claim:**  A Claim against the Commonwealth on account of the Commonwealth's full faith and credit guarantee, as authorized by action, legislation or resolution of the Commonwealth Legislature, of (a) an affiliate, agency or instrumentality, which guarantee was executed, delivered or enacted during the period from January 1, 2014 up to, but not including, the Commonwealth Petition Date, (b) the Ports of Americas Authority bond, which, as of the Commonwealth Petition Date, was in the outstanding principal amount of Two Hundred Twenty-Five Million Five Hundred Thirty-Four Thousand

Dollars ($225,534,000.00), and (c) PRIFA Bond Anticipation Notes, Series 2015, which, as of the Commonwealth Petition Date, were in the outstanding principal amount of Seventy-Eight Million One Hundred forty-Five Thousand Dollars ($78,145,000.00).

1.23   **2014 CW Guarantee Bond Claim (Taxable Election):**  A 2014 CW Guarantee Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Investors holding 2012 CW Bond Claims, 2014 CW Bond Claims, ERS Bond Claim and Vintage CW Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2014 CW Guarantee Bond Claim shall be a 2014 CW Guarantee Bond Claim (Taxable Election) up to such 2014 CW Guarantee Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2014 CW Guarantee Bond Claim.

1.24   **2014 CW Guarantee Bond Settlement:**  The settlement agreement elected, deemed or otherwise, by holders of an Allowed 2014 Settling CW Guarantee Bond Claim to accept the 2014 Settling CW Guarantee Bond Distribution and, in accordance therewith and in consideration therefor, (a) relinquish its rights to receive distributions pursuant to the Plan as a holder of Claims in Class 21 of the Plan, (b) release and discharge (i) any and all claims asserted, or which could have been asserted, in the Debt Limit Objections, the Late Vintage Litigation and the Avoidance Actions and (ii) any rights, Claims or causes of action with respect to the priority of the GO Bonds relative to CW General Unsecured Claims and (c) accept the Plan as a holder of a Claim in Class 22 of the Plan.

1.25   **2014 GO Bonds:**  GO Bonds issued by the Commonwealth and listed on Exhibit "D" hereto.

1.26   **2014 Settlement Savings:**  The amount of distributable currency equal to (i) the CW Pari Passu Recovery Percentage of the aggregate amount of 2014 Settling CW Bond Claims minus (ii) thirty-five percent (35%) of the aggregate amount of 2014 Settling CW Bond Claims.

1.27   **2014 Settling CW Bond Claim:**  A Claim against the Commonwealth by a holder of a 2014 CW Bond Claim that elects to participate in the 2014 CW Bond Settlement.

1.28   **2014 Settling CW Bond Distribution:**  A distribution of (a) CW Cash and (b) New Bonds to holders of 2014 CW Bond Claims that elect, deemed or otherwise, the 2014 CW Bond Settlement in an amount equal to thirty-five percent (35%) of such holders' aggregate 2014 CW Bond Claims.

1.29   **2014 Settling CW Guarantee Bond Claim:**  A Claim against the Commonwealth by a holder of a 2014 CW Guarantee Bond Claim that elects, deemed or otherwise, to participate in the 2014 CW Guarantee Bond Settlement.

1.30   **2014 Settling CW Guarantee Bond Distribution:**  A distribution of (a) CW Cash and (b) New Bonds to holders of Allowed 2014 CW Guarantee Bond Claims in an amount equal to thirty-five percent (35%) of such holders' aggregate 2014 CW Guarantee Bond Claims.

1.31    **2014 Taxable Bond Distribution**:  The distribution to be made to each holder of an Allowed 2014 CW Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 24.1 hereof.

1.32    **AAFAF:**  Autoridad de Asesoría Financiera y Agencia Fiscal, a public corporation and instrumentality of the Commonwealth, whose name in English is the Puerto Rico Fiscal Agency and Financial Advisory Authority.

1.33    **Act 106:**  Act 106 of 2017, which created the pay-as-you-go pension system known as "PayGo".

1.34    **Act 106 Board:**  The board created in accordance with Act 106.

1.35    **Active Participant:**  A Participant that is not a Retiree.

1.36    **Active ERS Participant Claim:**  An ERS Participant Claim held by an Active Participant.

1.37    **Active JRS Participant Claim:**  A JRS Participant Claim held by an Active Participant.

1.38    **Active TRS Participant Claim:**  A TRS Participant Claim held by an Active Participant.

1.39    **Administrative Claim Bar Date:**  Unless otherwise ordered by the Title III Court, the date established by the Title III Court and set forth in the Confirmation Order as the last day to file proof of Administrative Expense Claims, which date shall be no more than ninety (90) days after the Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and the Debtors and Reorganized Debtors shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Title III Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim or (b) is a Professional Claim.

1.40    **Administrative Expense Claim:**  A Claim against the Debtors or its Assets constituting a cost or expense of administration of the Title III Case asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, and otherwise complying with applicable Puerto Rico Law, including, without limitation, subject to the occurrence of the Effective Date, Consummation Costs; provided, however, that, under no circumstances shall an Administrative Expense Claim include the PBA Administrative Expense Claim.

1.41    **ADR Order:**  That certain Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief, dated October ___, 2019 [Dkt. No. ___].

1.42  **ADR Procedures:**  The alternative dispute resolution procedures authorized pursuant to the ADR Order.

1.43  **Affiliate:**  With respect to any specified Entity, any other Person or Entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Entity.

1.44  **AFSCME**:  American Federation of State, County and Municipal Employees, for itself and on behalf of its two local chapters, SPU, AFSCME Council 95 and Capitulo de Retirados de SPU and their fourteen affiliated local unions in Puerto Rico.

1.45  **AFSCME CBAs:**  Those certain collective bargaining agreements between AFSCME and the Commonwealth, and listed on Exhibit "L" hereto.

1.46  **AFSCME Employee Claims**:  A Claim arising from or related to the AFSCME CBAs.

1.47  **AFSCME Plan Support Agreement**:  That certain Plan Support Agreement, dated as of June 7, 2019, by and among the Oversight Board, the Commonwealth and AFSCME, as may be amended and restated.

1.48  **AFSCME Term Sheet**:  The term sheet annexed as Exhibit "A" to the AFSCME Plan Support Agreement.

1.49  **Allowed:**  With respect to any Claim, such Claim or portion thereof (a) proof of which was filed on or before the applicable Bar Date or (b) if no proof of Claim has been timely filed, which has been or hereafter is listed by the Debtors in the List of Creditors and is not listed thereon as "disputed", "contingent", or "unliquidated" or (c) allowed pursuant to (i) section 502(h) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, (ii) the terms of the Plan or (iii) a Final Order; provided, however, that, with respect to any Claim described in clause (a) or (b) above, such Claim shall be considered Allowed only if, and to the extent that, no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  For purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any, original issue discount not accrued as of the date immediately prior to the Commonwealth Petition Date and any Claim that the Debtors may hold against the holder thereof, to the extent such Claim may be set off pursuant to applicable bankruptcy and non-bankruptcy law.  Notwithstanding anything to the contrary herein (x) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Title III Court shall not be considered "Allowed" hereunder unless otherwise specified herein or by order of the Title III Court, (y) for any purpose under the Plan, "Allowed" shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, and (z) "Allowed" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

6

1.50 **Allowed Administrative Expense Claim:** An Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

1.51 **Allowed Claim:** A Claim, to the extent it is or has become Allowed.

1.52 **Ambac**: Ambac Assurance Corporation or its successor or designee.

1.53 **Appointments Related Litigation:** Collectively, the litigation styled (a) In re: The Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico, No. 18-1108, currently pending in the United States Court of Appeals for the First Circuit, (b) In re: The Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico, No. 18-1746, currently pending in the United States Court of Appeals for the First Circuit, (c) Union de Trabajadores de la Industria Electrica y Riego (UTIER) v. Puerto Rico Electric Power Authority, et al., Adv. Pro. No. 17-AP-228-LTS, currently pending in the Title III Court, (d) René Pinto Lugo, et al. v. The Government of the United States of America, et al., Adv. Pro. No. 18-041-LTS, currently pending in the Title III Court, (e) Hermanidad De Esmpleados Del Fondo Del Seguro Del Estado, Inc., et al. v. Government of the United States of America, et al., Adv. Pro. No. 18-066-LTS, currently pending in the Title III Court, (f) Hon. Rafael Hernandez-Montanez, et al. v. The Financial Oversight and Management Board of Puerto Rico, Adv. Pro. No. 18-090-LTS, currently pending in the Title III Court, (g) Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC, No. 18-1334, the Petition for Writ of Certiorari, filed with the United States Supreme Court on April 23, 2019, with certiorari being granted on June 20, 2019, and (h) such other litigation as may be currently pending or as may be commenced during the period from and after the date hereof up to and including the Effective Date wherein claims or causes of action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigations have been asserted.

1.54 **Assets:** With respect to the Debtors, (i) all "property" of the Debtors, including, without limitation, such property as it may be reflected on the Debtor's books and records and the Confirmation Order as of the Effective Date and (ii) all Causes of Action, and any subsequent proceeds thereof, that have been or may be commenced by the Debtors or other authorized representative for the benefit of the Debtors and its Creditors, unless modified or released pursuant to the Plan or a Final Order, including, without limitation, any Avoidance Action.

1.55 **Assured:** Assured Guaranty Municipal Corp. or its successor or designee.

1.56 **Avoidance Actions:** Those avoidance, recovery, subordination or other actions or remedies identified on Exhibit "E" hereto against any Entity that have been brought by or on behalf of the Debtors against an Entity under sections 510, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA, or applicable non-bankruptcy law.

1.57 **Avoidance Actions Beneficiaries:** Collectively, the holders of Avoidance Actions CW Interests and Avoidance Actions ERS Interests.

1.58    **Avoidance Actions CW Interests**:  The tranche of beneficial interests in the Avoidance Actions Trust allocated in accordance with the terms and provisions of the Plan to the CW GUC Pool and relating only to net recoveries attributable to Avoidance Actions relating to the Commonwealth Title III Case.

1.59    **Avoidance Actions ERS Interests**:  The tranche of beneficial interests in the Avoidance Actions Trust allocated in accordance with the terms and provisions of the Plan to the ERS GUC Pool and relating only to net recoveries attributable to Avoidance Actions relating to the ERS Title III Case.

1.60    **Avoidance Actions Trust:**  The trust to be created on or prior to the Effective Date into which on the Effective Date shall be transferred the authority to litigate or compromise and settle the Avoidance Actions.

1.61    **Avoidance Actions Trust Agreement:**  The agreement to be executed and delivered on or prior to the Effective Date providing for, among other things, the ongoing litigation of the Avoidance Actions.

1.62    **Avoidance Actions Trust Assets:**  Collectively, the Avoidance Actions and such other actions that have been brought by or on behalf of the Debtors seeking affirmative recoveries, and which actions are set forth in the respective litigations listed on Exhibit "F" hereto.

1.63    **Avoidance Actions Trust Board:**  The three (3) member board appointed as of the Effective Board to govern the Avoidance Actions Trust, with (a) two (2) directors selected by the Creditors' Committee and (b) one (1) director selected by the Oversight Board.

1.64    **Avoidance Actions Trustee:**  The trustee appointed in accordance with the terms and provisions of the Avoidance Actions Trust Agreement, including, without limitation, and successor thereto.

1.65    **Avoidance Actions Trust Interests:**  Collectively, the Avoidance Actions CW Trust Interests and the Avoidance Actions ERS Trust Interests.

1.66    **Ballot Date:**  The deadline(s) established by the Title III Court and set forth in the Disclosure Statement Order for the submission of Ballots/Election Forms and the election of alternative treatments pursuant to the terms and provisions of the Plan.

1.67    **Ballot/Election Form:**  The ballot and election form, the form of which is approved by the Title III Court, distributed to each holder or insurer, as the case may be, of an impaired Claim entitled to vote on the Plan, on which form is to be indicated, among other things, (a) acceptance or rejection of the Plan and/or (b) to the extent applicable, an election of distribution and treatment which may be required in accordance with the provisions of the Plan.

1.68    **Bankruptcy Code:**  The Bankruptcy Reform Act of 1978, as amended, to the extent codified in Title 11, United States Code, and made applicable to the Title III Cases.

1.69     **Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, as applicable to the Title III Cases.

1.70     **Bar Date:**  The date established by the Title III Court by which proofs of Claim must have been filed with respect to such Claims, pursuant to (a) the Bar Date Order, (b) a Final Order of the Title III Court, or (c) the Plan.

1.71     **Bar Date Order:**  The order of the Title III Court establishing the date by which proofs of Claim against the Debtors or their Assets must have been filed, including, but not limited to, that certain (a) Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof [Case No. 17-3283-LTS, ECF No. 2521], and (b) Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof  [Case No. 17-3283-LTS, ECF No. 3160].

1.72     **Base Contribution**:  One Hundred Seventy-Five Million Dollars ($175,000,000.00), the amount the Commonwealth shall contribute, or cause to be contributed, to the Pension Reserve in accordance with the terms and provisions of Section 69.5 of the Plan; provided, however, that, in the event that, for any FY ending FY 2020 up to FY 2027 and contained in the Fiscal Plan as in effect as of the Effective Date, the projected Fiscal Plan Surplus is equal to or greater than One Billion Seven Hundred Fifty Million Dollars ($1,750,000,000.00), such amount shall increase to an amount equal to twenty-five percent (25%) of the projected Fiscal Plan Surplus for such FY.

1.73     **Benefit Reduction Date**:  The date that is the later to occur of (a) July 1, 2020 and (b) the first (1st) July 1st following the Effective Date; provided, however, that, in the event that the period between the Effective Date and the first (1st) subsequent July 1st is less than one hundred eighty (180) days, then the **"Benefit Reduction Date"** shall be the first (1st) day of the first (1st) calendar month one hundred eighty (180) days after the Effective Date.

1.74     **Benefit Restoration**:  During the period from the Benefit Reduction Date up to and including the conclusion of FY 2033, in the event that, in a particular FY, the Excess Cash Surplus is equal to or greater than One Hundred Million Dollars ($100,000,000.00), ten percent (10%) of such Excess Cash Surplus shall be (a) allocated and applied pro rata to each Participant based on the amount of total reductions experienced by each such Participant during such FY in accordance with the terms and provisions of Articles XXIX and XXX hereof and (b) paid to any such Participant on or prior to October 1st following the conclusion of such FY; provided, however, that such Benefit Restoration shall be capped at the Monthly Benefit Reduction times twelve (12) for each Participant.

1.75     **Bond Claim:**  A Claim on account of a GO Bond, a PBA Bond, or an ERS Bond with the amount of such Claim being calculated as the outstanding principal amount of such bonds plus any accrued and unpaid interest thereon, up to, but not including, the Petition Date.

1.76     **Bondowner:**  Any Person which shall be the registered owner of any GO Bond or PBA Bond.

1.77   **Bond Recovery Cap:**  Eighty-nine and four-tenths percent (89.4%), the aggregate recovery by a holder of an Allowed CW Bond Claim, Allowed CW Bond Claim (Insured), Allowed CW Guarantee Bond Claim, Allowed Vintage CW Guarantee Bond Claim (Insured), Allowed PBA Bond Claim or Allowed PBA Bond Claim (Insured) on account of such Claim; provided, however, that, in the event that Excess Cash is distributed to a holder of an Allowed CW Bond Claim, Allowed CW Bond Claim (Insured), Allowed CW Guarantee Bond Claim, Allowed Vintage CW Guarantee Bond Claim (Insured), Allowed PBA Bond Claim or Allowed PBA Claim (Insured) pursuant to the Plan, the "Bond Recovery Cap" shall be reduced by a percentage equal to (a) the product of (i) the amount of Excess Cash times (ii) one hundred fifteen percent (115%) divided by (b) the sum of (i) the amount of Allowed Vintage CW Bond Claims, (ii) the amount of Allowed Vintage CW Bond Claims (Insured), (iii) the amount of Allowed Vintage PBA Bond Claims, (iv) the amount of Allowed Vintage CW Guarantee Bond Claims (but solely to the extent that the bonds or notes underlying such Claims are entitled to receive their CW Pari Passu Recovery percentage on account of such Allowed Claims and without duplication), (v) Claims of Non-Settling CW Bondholders, and (vi) Claims of 2012 Non-Settling PBA Bondholders (without duplication on account of CW Guarantee Claims); and, provided, further, that, for purposes of the Bond Recovery Cap, distributions to holders of Allowed CW Bond Claims, Allowed CW Bond Claims (Insured), Allowed CW Guarantee Claims, Allowed Vintage CW Guarantee Bond Claims (Insured), Allowed PBA Bond Claims and Allowed PBA Bond Claims (Insured) will be valued as follows:  (x) Cash shall be valued in the amount distributed, (y) the New Bonds shall be valued as of Plan value, and (z) Litigation Trust Interests shall be valued if, as and when recoveries from the Litigation Trust are made to holders of Litigation Trust Interests.  Notwithstanding the foregoing, a holder of an Allowed PBA Bond Claim or Allowed PBA Bond Claim (Insured) and an Allowed CW Guarantee Claim or Allowed Vintage CW Guarantee Bond Claim (Insured) on account of its Allowed PBA Bond Claim or Allowed PBA Bond Claim (Insured) shall not receive more than eighty-nine and four-tenths percent (89.4%) of its Allowed PBA Bond Claim or Allowed PBA Bond Claim (Insured) on account of both such Allowed Claims.

1.78   **Business Day:**  A day other than a Saturday, Sunday, or any other day on which commercial banking institutions in New York, New York and San Juan, Puerto Rico are required to close by law or executive order.

1.79   **Capital Improvements:**  Any project or projects funded, or proposed to be funded, in whole or in part, by or through public monies, to construct, reconstruct, restore, rehabilitate or purchase any equipment, property or facilities, including, without limitation, buildings, park facilities, infrastructure, information technology systems or other equipment that is funded on a necessarily non-repeating basis that is to be used as a public asset or for the public benefit.

1.80   **Cash:**  Lawful currency of the United States, including, but not limited to, bank deposits, checks representing good funds, and legal equivalents thereof.

1.81   **Causes of Action:**  All claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims,

contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) against the Debtors or their Assets that are pending or may be asserted against any Entity whether arising on or before the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date.

1.82 **Christmas Bonus**: The bonus, if any, payable to current, former, active, inactive and disabled employees of the Commonwealth, its agencies and instrumentalities in accordance with Act No. 98-1980, reproduced in 3 L.P.R.A. §761, as amended by Act No. 3-2013, 3 L.P.R.A §761.

1.83 **Claim:** Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

1.84 **Class:** A category of holders of Claims set forth in Article IV of the Plan.

1.85 **COFINA**: Puerto Rico Sales Tax Financing Corporation.

1.86 **Commonwealth**: The Commonwealth of Puerto Rico.

1.87 **Commonwealth Constitution**: The Constitution of the Commonwealth of Puerto Rico.

1.88 **Commonwealth Legislature**: The Legislative Assembly of Puerto Rico.

1.89 **Commonwealth Petition Date**: May 3, 2017.

1.90 **Commonwealth Title III Case**: The Title III case under PROMESA pending for the Commonwealth in the Title III Court, captioned as In re Financial Oversight & Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico, Case No. 17BK 3283-LTS (D.P.R.).

1.91 **Confirmation Date:** The date on which the Clerk of the Title III Court enters the Confirmation Order on the docket.

1.92    **Confirmation Hearing:**  The hearing conducted by the Title III Court pursuant to section 1128(a) of the Bankruptcy Code and Section 314 of PROMESA to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.93    **Confirmation Order:**  The order of the Title III Court confirming the Plan in accordance with the provisions of PROMESA and the Bankruptcy Code.

1.94    **Consummation Costs:**  Collectively, the amounts to be paid, in Cash, on the Effective Date to Consummation Costs Parties in accordance with the terms and conditions of the Plan Support Agreement, the Term Sheet and Article III hereof.

1.95    **Consummation Costs Parties:**  Collectively, the PSA Creditors entitled to receive Consummation Costs in accordance with the terms and provisions of the Term Sheet, the Plan and the Confirmation Order.

1.96    **Convenience Claim:**  An Allowed CW General Unsecured Claim or Allowed ERS General Unsecured Claim (a) that is equal to or less than Ten Thousand Dollars ($10,000.00) or (b) the holder of which, at such holder's option, has elected to reduce the amount of such Allowed CW General Unsecured Claim to or Allowed ERS General Unsecured Claim, as the case may be, Ten Thousand Dollars ($10,000.00) in accordance with terms and provisions set forth in Section 43.1 hereof; provided, however, that, notwithstanding the foregoing, a holder of multiple Allowed CW General Unsecured Claims or Allowed ERS General Unsecured Claims, as the case may be, my elect to reduce all such Claims to an aggregate amount of Twenty Thousand Dollars ($20,000.00).

1.97    **Creditor:**  Any Entity holding a Claim against the Debtors or the Debtor's Assets or, pursuant to section 102(2) of the Bankruptcy Code, against any other property of the Debtors, including, without limitation, a Claim against the Debtors of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case, solely in such Entity's capacity as such.

1.98    **Creditors' Committee:**  The statutory committee of unsecured claimholders appointed in, among other cases, the Commonwealth Title III Case, the ERS Title III Case and the HTA Title III Case.

1.99    **CW Appropriations Claims:**  Collectively, the Claims against the Commonwealth arising from or related to (a) indebtedness payable from appropriations of the Commonwealth Legislature under existing loans or legislative resolutions, including, without limitation, (a) notes from the Commonwealth or its agencies or instrumentalities held by PFC for the repayment of PFC indebtedness and (b) loans payable from appropriations by the Commonwealth Legislature under existing laws or legislative resolutions held by the GDB Debt Recovery Authority or the GDB Public Entity Trust.

1.100   **CW Bond Claims:**  Collectively, the Vintage CW Bond Claims, the 2012 CW Bond Claims, and the 2014 CW Bond Claims.

1.101   **CW Bond Claims (Insured):**  Collectively, the Vintage CW Bond Claims (Insured) and the 2012 CW Bond Claims (Insured).

1.102   **CW Cash:**  The amount of Cash the Oversight Board determines, upon consultation with the Commonwealth, should be made available for distribution to holders of Allowed Vintage CW Bond Claims, Allowed Vintage CW Guarantee Claims, Allowed 2012 CW Bond Claims, Allowed 2012 CW Guarantee Claims, and Allowed 2014 CW Bond Claims, equal to the sum of (a) Two Billion Dollars ($2,000,000,000.00) plus (b) such amount of Cash, up to Four Hundred Million Dollars ($400,000,000.00) determined by the Oversight Board, in its sole and absolute discretion, upon consultation with AAFAF and the Commonwealth, to be included in lieu of the issuance of New Bonds on a dollar-for-dollar basis, minus the sum of (c) the amount of Cash distributed on account of the PSA Restriction Fee and Consummation Costs and (d) the amount of the PBA Cash.

1.103   **CW Excess Cash:**  The Commonwealth's portion of Excess Cash, if any, in an amount equal to Excess Cash minus PBA Excess Cash.

1.104   **CW Fiscal Plan:**  That certain Fiscal Plan of the Commonwealth, certified by the Oversight Board on May 9, 2019, as such Fiscal Plan may be amended, restated, supplemented or modified from time to time in accordance with Section 201 of PROMESA.

1.105   **CW General Unsecured Claim:**  A Claim against the Commonwealth other than a Vintage CW Bond Claim, a Vintage CW Bond Claim (Insured), a Vintage CW Bond Claim (Taxable Election), a Vintage CW Guarantee Bond Claim, a 2012 CW Bond Claim, a 2012 CW Bond Claim (Insured), a 2012 Settling CW Bond Claim, a 2012 CW Bond Claim (Taxable Election), a 2012 CW Guarantee Bond Claim, a 2012 Settling CW Guarantee Bond Claim, a 2012 Settling CW Guarantee Bond Claim, a 2014 CW Bond Claim, a 2014 Settling CW Bond Claim, a 2014 CW Bond Claim Taxable Election), a 2014 CW Guarantee Bond Claim, a 2014 Settling CW Guarantee Bond Claim, an Active and Retired Employee Benefits Claim, an ERS Participant Claim, a JRS Participant Claim, a TRS Participant Claim, an AFSCME Employees Claim, a CW/HTA Constitutional Claim, a CW/Convention Constitutional Claim, a CW/PRIFA Rum Tax Constitutional Claim, a CW/MBA Constitutional Claim, a CW Appropriations Claim, CW 510(b) Subordinated Claim, a Gracia Gracia Claim, Late-Filed Claim, a Convenience Claim, an Inter-Instrumentality Claim, or such other claim determined by the Title III Court to be a CW General Unsecured Claim.

1.106   **CW Guarantee Bond Claims:**  Collectively, the Vintage CW Guarantee Bond Claims, the 2012 CW Guarantee Bond Claims, and the 2014 CW Guarantee Claims.

1.107   **CW GUC Pool:**  The sum of (a) One Hundred Million Dollars ($100,000,000.00) in original principal amount of New Bonds plus (b) the net recoveries by the Avoidance Actions Trust allocable to the Avoidance Actions CW Interests; provided, however, that, under no circumstances, shall such aggregate amount of consideration, including, without limitation, net recoveries from the Avoidance Actions Trust allocable to the Avoidance Actions CW Interests, exceed Seven Hundred Fifty Million Dollars ($750,000,000.00); and, provided, further, that, in the event that the aggregate amount of the CW GUC Pool (y) exceeds the aggregate amount of Allowed CW General Unsecured Claims or (z) would exceed Seven Hundred Fifty Million Dollars ($750,000,000.00) but for the limitation on recovery above, such excess amount shall be reallocated, on a pro rata basis, for the benefit of holders of Allowed CW/Convention

Constitutional Claims, Allowed CW/HTA Constitutional Claims, Allowed CW/MBA Constitutional Claims and Allowed CW/PRIFA Rum Tax Constitutional Claims.

1.108   **CW Pari Passu Recovery Percentage**:  The percentage equal to (a) Eleven Billion Four Hundred Twenty Million Three Hundred Ten Thousand Dollars ($11,420,310,000.00) <u>minus</u> the PSA Restriction Fee and Consummation Costs <u>divided</u> <u>by</u> (b) the sum of the aggregate amounts of (i) CW Bond Claims, (ii) CW Bond Claims (Insured), (iii) CW Guarantee Bond Claims, and (iv) Vintage CW Guarantee Bond Claims (Insured).

1.109   **CW Recovery Actions**:  Collectively, the litigations styled: (a) <u>Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Jefferies LLC, et al.</u>, Adv. Proc. No. 19-00281; (b) <u>Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. BNY Mellon / POP Sec, et al.</u>, Adv. Proc. No. 19-00282; (c) <u>Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Defendant 1L</u>, Adv. Proc. No. 19-00283; (d) <u>Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Defendant 1E et al.</u>, Adv. Proc. No. 19-00284; (e) <u>Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Defendant 1A, et al.</u>, Adv. Proc. No. 19-00285; (f) <u>Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Defendant 1B, et al.</u>, Adv. Proc. No. 19-00286; (g) <u>Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Defendant 1C, et al.</u>, Adv. Proc. No. 19-00287; and (h) <u>Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Defendant 1D, et al.</u>, Adv. Proc. No. 19-00288, each pending in the Title III Court.

1.110   **CW/Convention Constitutional Claim**:  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to PRCCDA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order including claims pursuant to (a) Section 8 of Article VI of the Commonwealth Constitution, 13 L.P.R.A. §2271v, 23 L.P.R.A. §104(c), and the Commonwealth of Puerto Rico Administrative Bulletin Nos. OE-2015-46, OE-2016-14, and OE-2016-31, and (b) the indebtedness issued by PRCCDA pursuant to that certain Trust Agreement, dated as of March 24, 2006, between PRCCDA and JPMorgan Chase Bank, N.A., as trustee.

1.111   **CW/Convention Constitutional Claim Distribution**:  A distribution of New Bonds to holders of CW/Convention Constitutional Claims in an amount equal to four-tenths of one percent (0.4%) of such holders' CW/Convention Constitutional Claim.

1.112   **CW/HTA Constitutional Claim**:  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to HTA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order, including claims pursuant to (a) Section 8 of Article VI of the Commonwealth Constitution, 9 L.P.R.A. §2021, 13 L.P.R.A. §31751 (a)(3)(C), 23 L.P.R.A. §104(c), and Commonwealth of Puerto Rico Administrative Bulletin Nos. OE-2015-46, OE-2016-14, OE-2016-18, OE-2016-30, and OE-2016-31 and (b) the indebtedness issued by HTA pursuant to that certain (i) Resolution No. 68-18, adopted June 13, 1968, and (ii) Resolution No. 98-06, adopted February 26, 1998.

1.113 **CW/HTA Constitutional Claim Distribution:** A distribution of New Bonds to holders of CW/HTA Constitutional Claims in an amount equal to three and one-tenth percent (3.1%) of such holders' Allowed CW/HTA Constitutional Claim.

1.114 **CW/MBA Constitutional Claim:** The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to MBA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order.

1.115 **CW/MBA Constitutional Claim Distribution:** A distribution of New Bonds to holders of CW/MBA Constitutional Claims in an amount equal to thirteen and one-half percent (13.5%) of such holders' Allowed CW/MBA Constitutional Claim.

1.116 **CW/PRIFA Rum Tax Constitutional Claim:** The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to PRIFA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order, including Claims pursuant to (a) Section 8 of Article VI of the Commonwealth Constitution, 3 L.P.R.A. §1914, and Commonwealth of Puerto Rico Administrative Bulletin Nos. OE-2015-46, OE-2016-27, and OE-2016-30, and (b) the indebtedness issued by PRIFA pursuant to that certain Trust Agreement, dated as of October 1, 1988, between PRIFA and U.S. Bank Trust National Association, as successor trustee.

1.117 **CW/PRIFA Rum Tax Constitutional Claim Distribution:** A distribution of New Bonds to holders of CW/PRIFA Rum Tax Constitutional Claims equal to three and four-tenths percent (3.4%) of such holders' CW/PRIFA Rum Constitutional Claim.

1.118 **Debt:** Collectively, bonds, notes, loans and other evidences of indebtedness for borrowed money.

1.119 **Debt Limit Objections:** Collectively, that certain (a) Omnibus Objection of (I) Financial Oversight and Management Board, Acting through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bond, dated January 14, 2019 [Dkt. No. 4784], (b) Omnibus Objections of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, the Claims or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bond, dated May 21, 2019 [Dkt. No. 7057], (c) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted against Commonwealth by Holders of Certain Puerto Rico Public Buildings Authority Bonds, dated July 18, 2019 [Dkt. No. 8141] and (d) any other objections filed pertaining to the same form and counts of requested relief challenging, among other things, the validity and related rights of the 2011 GO Bonds, the 2012 GO Bonds and the 2014 GO Bonds.

1.120 **Debtors:** Collectively, the Commonwealth, ERS and PBA.

1.121   **Debt Policy Period:**  The period commencing on the first (1st) calendar day immediately following the Effective Date and ending on the date on which there are no New Bonds Outstanding.

1.122   **Debt Policy Revenues:**  Collectively, without duplication, (a) revenues derived from taxes, fees, permits, licenses, fines or other charges imposed, approved or authorized by the Commonwealth Legislature, including, without limitation, any such revenue assigned to, or owned by, COFINA or any other  instrumentality of the Commonwealth (subject to subsection (b)(iv) below), and (b) all other revenues or monies deposited in the General Fund or any debt service or other governmental fund of the Commonwealth; provided, however, that, "Debt Policy Revenues" shall exclude (i) monies transferred by the U.S. Federal Government to the Commonwealth and its instrumentalities, except for excise tax revenues "covered over" and deposited directly into the Treasury of the Commonwealth,  (ii) taxes, fees and other charges imposed or collected by or for the use and benefit of any municipality of the Commonwealth (other than amounts required to be transferred by law to the Commonwealth), (iii) fees, permits, licenses, fines or other charges imposed and collected by or for the use and benefit of an instrumentality of the Commonwealth for services rendered or goods sold, including highway tolls and electricity, water and sewer services, that are not transferred by law to the Commonwealth, and (iv) user charges or securitization and transition charges imposed or approved by the Commonwealth Legislature upon customers or former customers of utilities (including PREPA and PRASA) or any related securitization entities that are pledged to secure revenue bonds issued by such entities.

1.123   **Definitive Documents:**  Collectively, the definitive documents and agreements contemplated by the Plan, including (a) the Plan and any documentation or agreements related thereto, (b) the Confirmation Order and pleadings in support of entry thereof, (c) the New Bond Indenture and documents or agreements related thereto, (d) the form of bonds for the New Bonds, (e)  the documents or agreements related to the Pension Reserve and the governance thereof, and (f) each other document that will comprise the Plan Supplement, in all cases, the form and substance of which shall be acceptable to the Oversight Board in its sole and absolute discretion, and reasonably acceptable to AAFAF.

1.124   **Disallowed:**  With respect to any Claim, a Claim or any portion thereof that is not Allowed and (a) has been disallowed by a Final Order, (b) is zero, contingent, disputed, or undisputed and as to which no proof of claim or request for payment of an Administrative Expense Claim as been timely filed or deemed timely filed with the Title III Court, (c) has been withdrawn by agreement of the applicable Debtor and the holder thereof, or (d) has been withdrawn by the holder thereof.

1.125   **Disbursing Agent:**  Such Entity or Entities designated by the Oversight Board and AAFAF on or prior to the Effective Date to make or to facilitate distributions in accordance with the provisions of the Plan.

1.126   **Disclosure Statement:**  The disclosure statement relating to the Plan and approved by the Title III Court pursuant to section 1125 of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA.

16

1.127   **Disclosure Statement Hearing:**  The hearing held by the Title III Court to consider the adequacy of the information contained in the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA.

1.128   **Disclosure Statement Order:**  The order of the Title III Court approving the Disclosure Statement as containing adequate information in accordance with the provisions of section 1125 of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA.

1.129   **Disputed Claim:**  A Claim against the Debtors or their Assets, to the extent the allowance of such Claim is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed by the Debtors in accordance with applicable law, and which objection, request for estimation, or dispute has not been withdrawn, with prejudice, or determined by a Final Order.

1.130   **Distribution Date:**  Except as otherwise set forth herein, the date or dates determined by the Commonwealth, on or after the Effective Date, upon which the Disbursing Agent shall make distributions to holders of Allowed Claims entitled to receive distributions under the Plan.

1.131   **Distribution Record Date:**  The Ballot Date or such other date as may be established by a separate order of the Title III Court, including the Confirmation Order; provided, however, that the "Distribution Record Date" shall not apply to any publicly held securities that will receive a distribution pursuant to the Plan through The Depository Trust Company.

1.132   **Effective Date:**  The first (1st) Business Day on which (i) all the conditions precedent to confirmation of the Plan specified in Section 55.1 of the Plan shall have been satisfied or waived, as provided in Section 55.2 of the Plan, and (ii) all the conditions precedent to the effectiveness of the Plan specified in Section 56.1 of the Plan shall have been satisfied or waived as provided in Section 56.2 of the Plan.

1.133   **Entity:**  A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the office of the United States Trustee, or any other entity.

1.134   **ERS:**  Employees Retirement System of the Government of the Commonwealth of Puerto Rico.

1.135   **ERS Bond Claim:**  A Claim arising from or related to the ERS Bonds, including, without limitation, interest accrued thereon during the period up to, but not including, the ERS Petition Date.

1.136   **ERS Bond Claim (Taxable Election)**:  An ERS Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Investors holding 2012 CW Bond Claims, 2014 CW Bond Claims, ERS Bond Claims and Vintage CW Bond Claims in excess of the Maximum Taxable Bond Election Amount, such ERS Bond Claim shall be an ERS Bond Claim (Taxable Election) up to such ERS Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be an ERS Bond Claim.

1.137   **ERS Bond Collateral Cash**:  The amount of ERS Cash determined to be the collateral for payment of the ERS Bonds after any collateral has been sold to the Commonwealth in accordance with the terms and provision of Section 2.4 hereof.

1.138   **ERS Bonds**:  Collectively, (a) the non-recourse Senior Pension Funding Bonds, Series A, issued by ERS in the original principal amount of $1,588,810,799.60, (b) the non-recourse Senior Pension Funding Bonds, Series B, issued by ERS in the original principal amount of $1,058,634,613.05 and (c) the non-recourse Senior Pension Funding Bonds, Series C, issued by ERS in the original principal amount of $300,202,930.00, which, as of the ERS Petition Date, were in the aggregate outstanding principal amount of $3,168,792,696.00.

1.139   **ERS Bond Settlement**:  The settlement agreement elected, deemed or otherwise, by holders of Allowed Settling ERS Bond Claims and, in accordance therewith and in consideration therefor, to (a) relinquish its rights to receive distributions as a holder of claims in accordance with Class 33 of the Plan, (b) release and discharge the Commonwealth and the United States of America from any claims and causes of action asserted, or which could have been asserted, in the ERS Takings Action and the ERS Litigation, and (c) accept the Plan as a holder of a Claim in Class 34 of the Plan.

1.140   **ERS Bond Settlement Distribution**:  A distribution to holders of ERS Bond Claims that elect, deemed or otherwise, the ERS Bond Settlement in an amount equal to twelve and seven-tenths percent (12.7%) of such holders' aggregate ERS Bond Claims, inclusive of payments of adequate protection made to holders of ERS Bond Claims in accordance with that certain (a) Joint Stipulation and Order, dated May 31, 2017, and (b) Joint Stipulation Regarding (I) Motion of Certain Secured Claimholders of Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Adequate Protection and Stay Relief and Reservation of Rights and (II) Motion of Debtors Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 for Entry of an Order Confirming Application of the Automatic Stay, Stay of Prepetition Lawsuits and Actions and Application of Contract Protections, dated July 14, 2017.

1.141   **ERS Cash**:  The amount of Cash available on the Effective Date comprised of (a) Cash in ERS accounts as of the Effective Date and (b) the proceeds of ERS assets transferred to the Commonwealth in accordance with the provisions of Section 2.4 hereof.

1.142   **ERS General Unsecured Claim**:  A Claim against ERS other than an ERS Bond Claim.

1.143   **ERS GUC Pool:**  The sum of (a) Five Million Dollars ($5,000,000.00) in original principal amount of New Bonds plus (b) the net recoveries by the Avoidance Actions Trust allocable to the Avoidance Actions ERS Interests; provided, however, that, under no circumstances, shall such aggregate amount of consideration, including, without limitation, net recoveries from the Avoidance Actions Trust allocable to the Avoidance Actions ERS Interests, exceed Ten Million Dollars ($10,000,000.00); and, provided, further, that, in the event that the aggregate amount of the ERS GUC Pool (y) exceeds the aggregate amount of Allowed ERS General Unsecured Claims or (z) would exceed Ten Million Dollars ($10,000,000.00) but for the limitation on recovery above, such excess amount or Avoidance Actions ERS Interests, as the case may be, shall be reallocated, on a pro rata basis, for the benefit of holders of Allowed CW/Convention Constitutional Claims, Allowed CW/HTA Constitutional Claims, Allowed CW/MBA Constitutional Claims and Allowed CW/PRIFA Rum Tax Constitutional Claims.

1.144   **ERS Litigation:**  Collectively, the litigation styled (a) The Financial Oversight and Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico v. Andalusian Global Designated Activity Company, et al., Adv. Proc. No. 17-213-LTS, currently pending in the Title III Court, (b) The Financial Oversight and Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico. v. Andalusian Global Designated Activity Company et al., Adv. Proc. No. 19-366-LTS, currently pending in the Title III Court, (c) Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico, dated March 12, 2019 [Dkt No. 5580], currently pending in the Title III Court, (d) Omnibus Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of ERS Bonds Against ERS and the Commonwealth, dated April 23, 2019 [Dkt No. 6482], currently pending in the Title III Court, (e) The Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico, Acting by and through its Members, et al., v. Jefferies, LLC and Northern Trust/Och-Ziff Capital Management, Adv. Pro. No. 19-281-LTS, currently pending in the Title III Court, and (f) Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, as Fiscal Agent (Claim No. 16775), dated May 22, 2019 [Dkt No. 7075], currently pending in the Title III Court.

1.145   **ERS Participant Claim:**  A Claim for retiree benefits that accrued as of July 1, 2013, as set forth in the books and records of ERS (subject to any existing administrative processes for the determination of such claim); provided, however, that "ERS Participant Claim" shall not include Claims held by a Participant, whose hire date was after January 1, 2000, based on participation in System 2000.

1.146   **ERS Petition Date:**  May 21, 2017, the date on which the ERS Title III Case was commenced.

1.147   **ERS Recovery Actions:**  Collectively, the litigations styled: (a) Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Jefferies LLC, et al., Adv. Proc. No. 19-00355; (b) Special Claims Committee of The Financial Oversight

and Management Board for Puerto Rico, et al. v. Defendant 1M, et al., Adv., Proc. No. 19-00356; (c) Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Stoever Glass & Co., et al., Adv. Proc. No. 19-00357; (d) Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Defendant 1F et al., Adv. Proc. No. 19-00358; (e) Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Defendant 1H et al., Adv. Proc. No. 19-00359; (f) Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Wells Fargo Securities, LLC et al., Adv. Proc. No. 19-00360; and (g) Special Claims Committee of The Financial Oversight and Management Board for Puerto Rico, et al. v. Defendant 1G-50G, et al., Adv. Proc. No. 19-00361 each pending in the Title III Court.

1.148   **ERS Reserve**:  The reserve created on the Effective Date to hold distributions to be made for the benefit of holders of ERS Bonds Claims, pending resolution of the ERS Litigation pursuant to a Final Order.

1.149   **ERS Resolution:**  That certain Pension Funding Bond Resolution, adopted January 24, 2008, relating to the issuance of the ERS Bonds.

1.150   **ERS Takings Action**:  The litigation styled Altair Global Credit Opportunities Fund (A) LLC v. United States, Case No. 17-970C, currently pending in the United States Court of Federal Claims.

1.151   **ERS Taxable Bond Distribution:**  The distribution to be made to each holder of an Allowed ERS Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 40.1 hereof.

1.152   **ERS Title III Case:**  The Title III case under PROMESA pending for ERS in the Title III Court, captioned as In re Financial Oversight and Management Board for Puerto Rico, as representative of the Employee Retirement System, Case No. 17BK 3566-LTS (D.P.R.).

1.153   **Excess Cash:**  The amount of Cash, calculated as of the earlier of (a) twenty (20) days prior to the Effective Date and (b) February 29, 2020, determined by the Oversight Board, in good faith and in its reasonable discretion, based on verifiable information provided by professionals retained by the Government Parties, and upon consultation with the Commonwealth, with such calculation based on an analysis of unrestricted and unencumbered cash in the Treasury Single Account and other government accounts including, without limitation, the following accounts listed on page 7 of the Summary of Bank Account Balances for the Government of Puerto Rico and Its Instrumentalities, issued by the AAFAF and dated April 30, 2019, which shall be considered restricted and/or encumbered and therefor unusable for the purposes of determining the account of "Excess Cash", together with such Cash generated pursuant to their operations or resulting from existing assets from and after August 30, 2019: (i) Pension Related; (ii) COFINA; (iii) PREPA; (iv) PRASA; and (v) UPR, less cash being paid as part of the Commonwealth Title III Case and the amount of operating cash required to fund government operations in an amount equal to Two Billion Dollars ($2,000,000,000.00), taking into consideration, among other factors, (1) any amounts of cash in excess of certified fiscal plan projections that are deemed temporary or otherwise due to timing differences and (2) any amounts of cash determined to be unrestricted or unencumbered according to applicable law,

including the Puerto Rico Constitution, PROMESA, the Bankruptcy Code, and GASB accounting standards at such time, and expressly excluding (v) any amounts of cash necessary to fund the obligations hereunder, investments and obligations in order to meet the projections contained and funded during FY2020 in the fiscal plan certified on May 9, 2019, and non-funded indebtedness Plan-related distributions, (w) any amounts of cash received from the federal government, (x) any amounts of cash that become available subsequently due to the receipt of federal funds in excess of amounts forecasted in the applicable certified fiscal plan, (y) any funds received from disaster assistance programs and (z) any portion of the Four Hundred Million Dollars ($400,000,000.00) amount elected by the Oversight Board to be paid by the Commonwealth in lieu of the issuance of New Bonds on a dollar-for-dollar basis in accordance with the provisions set forth herein; provided, however, that the methodology of calculation, together with the amount of such calculation as of such date, shall be included in the solicitation materials distributed in connection with the Plan; and, provided, further, that the aggregate amount of "Excess Cash" shall not exceed Nine Hundred Million Dollars ($900,000,000.00). For the avoidance of doubt, any cash accumulated to make the initial debt service payment on the New Bonds, on or after the Effective Date, shall not count against the calculation of Excess Cash or be considered restricted cash.

1.154   **Excess Cash Surplus**:  The amount of actual cash surplus above and beyond the projected Fiscal Plan Surplus contained in the Fiscal Plan for the Commonwealth certified by the Oversight Board and being in effect as of the Effective Date.

1.155   **Executory Contract**:  A contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection in accordance with section 365 of the Bankruptcy Code, except as provided in Section 311 of PROMESA.

1.156   **FGIC**:  Financial Guaranty Insurance Company or its successor or designee.

1.157   **Final Order**:  An order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, re-argument, or rehearing shall then be pending or (ii) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, (a) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order and (b) the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the Local Bankruptcy Rules.

1.158   **Fiscal Plan**:  A "Fiscal Plan" as defined by Section 5(10) of PROMESA.

1.159   **Fiscal Plan Surplus**:  The amount set forth on the line entitled **"Surplus/ (Deficit) Post Measures (excl. Debt Payments)"** of the Fiscal Plan for the Commonwealth certified by the Oversight Board and being in effect as of the Effective Date.

1.160   **FY:**  A fiscal year of the Commonwealth.

1.161   **GASB:**  Government Accounting Standards Board.

1.162   **GDB:**  The Government Development Bank for Puerto Rico.

1.163   **General Fund:**  The Commonwealth's primary operating fund.

1.164   **General Unsecured Claims**:  Collectively, CW General Unsecured Claims and ERS General Unsecured Claims.

1.165   **GO Bond Claim:**  A Bond Claim, other than a GO Bond Claim (Insured).

1.166   **GO Bond Claim (Insured):**  A Bond Claim on account of a GO Bond, the scheduled repayment of which has been insured by Ambac, Assured, FGIC, National or Syncora, including pursuant to a secondary market insurance policy.

1.167   **GO Bonds:**  Collectively, general obligation bonds issued by the Commonwealth.

1.168   **Government Parties:**  Collectively, the Oversight Board, as the representative of the Debtors, the Debtors and AAFAF.

1.169   **Government Released Claims:**  Collectively, any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which any Party, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Government Releasee arising from, related to, or in connection with the Debtors, Claims, the Debt Limit Objections, the Late Vintage Litigation and the ERS Litigation, and arising prior to the Effective Date; provided, however, that "Government Released Claims" shall not include any and all rights, privileges, claims, demands, liabilities, or causes of action of any and every kind, character or nature whatsoever (a) against (i) the Debtors (or their successors, including Reorganized Commonwealth) arising from or relating to the Debtors' obligations pursuant to the Plan or the securities to be issued pursuant to the Plan or (ii) a Government Party unrelated to the Debtors or (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct.

1.170   **Government Releasees:**  Collectively, the Government Parties and the Debtors, including all instrumentalities, municipalities, public corporations and public agencies of the Commonwealth, together with their respective current or former board members, directors, principals, agents, officers, employees, advisors and professionals, including, without limitation, any and all advisors and professionals retained by the Government Parties in connection with the Title III Cases.

1.171   **Gracia Gracia Claim**:  A Claim of a member of the class of vehicle owners who purchased private insurance after paying the compulsory insurance premium, certified in the Gracia Gracia CW Action and Gracia Gracia Federal Action.

1.172   **Gracia Gracia CW Action**:  The litigation styled Gladys García Rubiera, et al. v. Asociación de Subcripcion Conjunta del Seguro de Responsabilidad Obligatorio, et al., Civil Núm.:  KDP2001-1441(801), currently pending in the Puerto Rico Court of First Instance.

1.173   **Gracia Gracia Federal Action**:  The litigation styled Gladys García Rubiera, et al. v. Fortuño, et al., Civil No.: 02-1179(GAG), currently pending in the United States District Court for the District of Puerto Rico.

1.174   **Gracia Gracia Settlement**:  Collectively, the settlement reached and approved in (a) the Gracia Gracia CW Action pursuant to that certain Joint Motion on Partial Agreement and Stipulation, dated March 29, 2016, as approved pursuant to that certain Partial Judgment, dated July 8, 2016 and (b) the Gracia Gracia Federal Action pursuant to that certain Stipulation for Permanent Injunction, dated February 29, 2016, as approved pursuant to that certain Judgment, dated March 1, 2016.

1.175   **GSA Helicopter Loan**:  The loan extended pursuant to that certain Credit Agreement, dated as of December 26, 2013, between the General Services Administration of the Commonwealth and Scotiabank de Puerto Rico, which, as of the Commonwealth Petition Date, was in the outstanding principal amount of approximately Thirty Three Million Two Hundred Seventy Thousand Four Hundred Fifty-One Dollars ($33,270,451.00).

1.176   **HTA**:  Puerto Rico Highways and Transportation Authority.

1.177   **HTA Title III Case**:  The Title III case under PROMESA pending in the Title III Court, captioned as In re Financial Oversight & Management Board for Puerto Rico as representative of the Puerto Rico Highways and Transportation Authority, Case No. 17BK 3567-LTS (D.P.R.).

1.178   **Invalidity Actions:**  Collectively, the adversary proceedings challenging the validity of certain GO Bonds and PBA Bonds listed on Exhibit "G" hereto.

1.179   **IRC:**  The United States Internal Revenue Code of 1986, as amended from time to time.

1.180   **IRS:**  The Internal Revenue Service, an agency of the United States Department of Treasury.

1.181   **JRS**:  Judiciary Retirement System.

1.182   **JRS Participant Claim**:  A Claim against JRS for (a) retiree benefits accrued as of May 4, 2017, as set forth on the books and records of JRS (subject to any existing administrative processes for the determination of such claim), and (b) any additional retiree benefits in JRS that a Participant would be entitled to receive upon his or her future retirement.

1.183   **Late Vintage Litigation:**  The claims, causes of action and objections to claims asserted in the Debt Limit Objections, the Invalidity Actions, and the Lien Challenge Actions, each as amended or superseded by claims, causes of actions, and objections set forth and reserved to the Litigation Trust in the Plan.

1.184   **Late Vintage Reserve:**  The disputed claims reserve established on the Effective Date in accordance with the terms and provisions of the Plan to hold in escrow those distributions allocable to holders of (a) 2012 CW Bond Claims, (b) 2012 CW Bond Claims (Insured), (c) 2012 CW Guarantee Bond Claims, (d) 2014 CW Bond Claims and (e) 2014 CW Guarantee Bond Claims which affirmatively elect to continue litigation of the Late Vintage Litigation or whose Claims are otherwise subject to a claim objection as of the Effective Date and are not 2012 Settling CW Bond Claims, 2012 Settling CW Guarantee Bond Claims, 2014 Settling CW Bond Claims, or 2012 Settling CW Guarantee Bond Claims.

1.185   **LCDC**:  Lawful Constitutional Debt Coalition.

1.186   **Lien:**  Any charge against or interest in property to secure payment of a debt or performance on an obligation.

1.187   **Lien Challenge Actions:**  Collectively, the adversary proceedings challenging the secured status of GO Bonds listed on Exhibit "H" hereto.

1.188   **List of Creditors:**  The Creditor List (together with all summaries, notes, and schedules) attached as Exhibit A to the (a) *Notice of Filing of Creditor List for the Commonwealth of Puerto Rico* filed in the Commonwealth Title III Case, ECF No. 1215, (b) *Notice of Filing of Creditor List for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* filed in the ERS Title III Case, ECF No. 207, and (c) *Notice of Filing of Creditor List for The Puerto Rico Public Buildings Authority* filed in the PBA Title III Case, ECF No. _____, pursuant to sections 924 and 925 of the Bankruptcy Code, as such lists, summaries, notes, or schedules have been or may be amended, restated, supplemented or otherwise modified by the Debtors.

1.189   **Litigation Trust:**  The trust to be created on or prior to the Effective Date into which on the Effective Date shall be transferred the authority to litigate or compromise and settle the Late Vintage Litigation.

1.190   **Litigation Trust Agreement:**  The agreement to be executed and delivered on or prior to the Effective Date providing for, among other things, the ongoing litigation of the Late Vintage Litigation.

1.191   **Litigation Trust Assets:**  The Late Vintage Litigation and the initial Litigation Trust funding set forth in Section 47.11 hereof.

1.192   **Litigation Trust Beneficiaries:**  Collectively, holders of Allowed Claims that are entitled to receive the Vintage CW Bond Distribution.

1.193   **Litigation Trust Board:**  The seven (7) member board appointed as of the Effective Date to govern the Litigation Trust, with (a) two (2) directors selected by the LCDC,

(b) two (2) directors selected by the QTCB Group, (c) two (2) directors selected by the Oversight Board, upon consultation with the Government of the Commonwealth, and (d) one (1) director selected by the Creditors' Committee.

1.194   **Litigation Trust Interests:**  The beneficial interests in the Litigation Trust allocated in accordance with the terms and provisions of the Plan, which interests shall be transferable to the extent permitted by the governing documents of the Litigation Trust and applicable law.

1.195   **Litigation Trust Trustee:**  The trustee appointed in accordance with the terms and provisions of the Litigation Trust Agreement, and any successor thereto.

1.196   **Local Bankruptcy Rules:**  The Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico and, to the extent applicable to the Title III Case, the Local District Court Rules for the District of Puerto Rico, each as amended from time to time.

1.197   **Maximum Annual Debt Service:**  The maximum scheduled annual debt service (including principal and interest payments due and payable on bonds bearing current interest and, in the case of capital appreciation bonds or similar instruments, the maturity value due and payable on such instruments) for any FY on Net Tax-Supported Debt; provided, however, that, in the case of variable rate Debt, the calculation shall assume that such Debt bears interest at the maximum annual rate permitted by law.

1.198   **Maximum Taxable Bond Election Amount:**  The amount of New Bonds required, after consultation with Section 103 tax counsel and determination by Internal Revenue Service, to be issued as non-exempt for federal income tax purposes.

1.199   **Medicine Bonus:**  The bonus, if any, payable to current, former, active, inactive and disabled employees of the Commonwealth, its agencies and instrumentalities in accordance with Act No. 155-2003, codified at 3 L.P.R.A. §757j, as amended by Act No. 3-2013, 3 L.P.R.A. §761.

1.200   **Medicine Insurance Benefit:**  The monthly allowance of One Hundred Dollars ($100.00) provided to all pre-Act No. 3-2013 eligible ERS, JRS and TRS Participant who have a government approved health insurance policy, which allowance is paid directly to the insurance company.

1.201   **Monthly Base Pension:**  The amount of the monthly pension payment made, or to be made, to a Participant, but expressly excluding all other benefits, including, without limitation, the Christmas Bonus, the Summer Bonus, the Medicine Bonus and the Medical Insurance Benefit.

1.202   **Monthly Benefit Modification:**  The modification, commencing on the Benefit Reduction Date, of monthly retirement benefit payments that exceed the Threshold as follows: (a) by reduction of the Monthly Christmas Bonus until the Threshold is reached or the Reduction Percentage is reached, or the Monthly Christmas Bonus is entirely eliminated, whichever occurs first as the Participant's Total Monthly Benefits is reduced; (b) in the event that the Participant's

Total Monthly Benefit is still in excess of the Threshold and the Reduction Percentage has not been attained following elimination of the Monthly Christmas Bonus, by reduction of the Monthly Summer Bonus until the Threshold is reached or the Reduction Percentage is reached, or the Summer Bonus is entirely eliminated, whichever occurs first as the Participant's Total Monthly Benefit is reduced; (c) in the event that the Participant's Total Monthly Benefit is still in excess of the Threshold and the Reduction Percentage has not been attained following elimination of the Monthly Christmas Bonus and the Monthly Summer Bonus, by reduction of the Monthly Medicine Bonus until the Threshold is reached or the Reduction Percentage is reached, or the Monthly Medicine Bonus is entirely eliminated, whichever occurs first as the Participant's Total Monthly Benefit is reduced; and (d) in the event that the Participant's Total Monthly Benefit is still in excess of the Threshold and the Reduction Percentage has not been attained after elimination of the Monthly Christmas Bonus, Monthly Summer Bonus, and Monthly Medicine Bonus, by reduction of the Monthly Base Pension until the Reduction Percentage is attained; provided, however, that application of the remaining Reduction Percentage to the Monthly Base Pension shall not reduce a Participant's Total Monthly Benefit below the Threshold; and, provided, further, that (i) adjustments for Social Security and the receipt thereof, and (ii) the Monthly Medical Benefit shall be excluded from the calculation of the foregoing; and, provided, further, that, notwithstanding anything contained herein to the contrary, accrued pension benefits earned by Participants from and after May 4, 2017, shall not be subject to reduction.

1.203  **Monthly Christmas Bonus:**  The amount equal to one-twelfth (1/12) of the annual Christmas Bonus, if any.

1.204  **Monthly Medicine Bonus**:  The amount equal to one-twelfth (1/12) of the annual Medicine Bonus, if any.

1.205  **Monthly Summer Bonus:**  The amount equal to one-twelfth (1/12) of the annual Summer Bonus, if any.

1.206  **National:**  National Public Finance Guarantee Corporation or its successor or designee.

1.207  **Net Tax-Supported Debt:**  Any Tax-Supported Debt, excluding any (a) Debt guaranteed by the good faith, credit and taxing power of the Commonwealth that is not payable from or secured by Debt Policy Revenues and which is backed by a rate covenant requiring its continued payment from non-Debt Policy Revenues, to the extent that the Commonwealth's guarantee has not been drawn upon in the five (5) most recently completed FYs, and (b) Debt being refinanced through the proceeds of the proposed bond or note issuance.

1.208  **New Bonds:**  Collectively, the full faith and credit general obligation bonds to be issued on the Effective Date by the Commonwealth in accordance with the terms and conditions of the Plan, the Confirmation Order and the New Bond Legislation.

1.209  **New Bonds Indenture:**  The indenture pertaining to the New Bonds to be executed and delivered on or prior to the Effective Date, and including all of the terms and provisions in connection therewith.

1.210   **New Bonds Legislation:**  The legislation to be enacted on or prior to the Effective Date authorizing certain transactions contemplated herein, including, without limitation, the issuance of the New Bonds, and incorporating such other terms as set forth in Section 45.1 hereof.

1.211   **New Bonds Trustee:**  The trustee or replacement trustee, as the case may be, appointed in accordance with the terms and conditions of the New Bonds Indenture.

1.212   **Non-Settling CW Bondholders:**  Collectively, holders of 2012 CW Bond Claims, 2012 CW Bond Claims (Insured), 2012 CW Guarantee Bond Claims, 2014 CW Bond Claims and 2014 CW Guarantee Bond Claims that do not elect to participate in the 2012 CW Bond Settlement, the 2012 CW Guarantee Bond Settlement, the 2014 CW Bond Settlement, and the 2014 CW Guarantee Bond Settlement, respectively.

1.213   **Non-Settling CW Bondholders' Settlement Savings Portion:**  Non-Settling CW Bondholders' pro rata portion of Settlement Savings.

1.214   **Non-Settling ERS Bondholders:**  Collectively, holders of ERS Bond Claims who do not elect to participate in the settlement, if any, applicable to their Claims.

1.215   **Ordinary Course Employee Claim:**  A Claim held by an employee of the Debtors related to ordinary course employment matters, including, without limitation, a Claim related to termination, holiday pay, vacation, sick leave, back-pay, or other similar Claims; provided, however, that, an "Ordinary Course Employee Claim" shall not include Claims related to retiree benefits.

1.216   **Outstanding:**  Debt that (i) has not been paid in full in accordance with its terms or (ii) has not been legally defeased in accordance with the defeasance requirements set forth in the applicable definitive issuance documents.

1.217   **Oversight Board:**  The Financial Oversight and Management Board for Puerto Rico established pursuant to Section 101 of PROMESA, as the Debtors' representative in their respective Title III Cases pursuant to Section 315(b) of PROMESA.

1.218   **Ordinary Course Employee Claim:**  A Claim held by an employee of the Debtors related to ordinary course employment matters, including, without limitation, a Claim related to termination, holiday pay, vacation, sick leave, back-pay, or other similar Claims; provided, however, that, an "Ordinary Course Employee Claim" shall not include Claims related to retiree benefits.

1.219   **Participant:**  A current, former, active, inactive, or disabled employee of the Commonwealth and its agencies and instrumentalities, together with its beneficiaries, if any.

1.220   **PayGo:**  The pay-as-you-go pension created in accordance with Act 106 of 2017.

1.221   **PBA:**  Puerto Rico Public Buildings Authority.

27

1.222 **PBA Administrative Expense Claim:** The Claim of PBA against the Commonwealth relating to the Commonwealth's use and occupancy of PBA Property during the period from the commencement of the Commonwealth's Title III Case up to and including the Effective Date.

1.223 **PBA Bond Claim:** A Claim against PBA on account of PBA Bonds, other than a PBA Bond Claim (Insured).

1.224 **PBA Bond Claim (Insured):** A PBA Bond Claim, the payment of principal and interest of which has been insured by Ambac, Assured, FGIC or National.

1.225 **PBA Bond Distribution:** The distribution of Cash to holders of Allowed PBA Bond Claims in an amount equal to (a) the Allowed PBA Administrative Expense Claim plus (b) any incremental value distributable as a result of PBA Excess Cash.

1.226 **PBA Bonds:** Collectively, (a) the Government Facilities Revenue Refunding Bonds, Series C, issued by PBA in the original principal amount of $185,290,000.00, (b) the Government Facilities Revenue Bonds, Series D, issued by PBA in the original principal amount of $553,733,794.90, (c) the Government Facilities Revenue Refunding Bonds, Series F, issued by PBA in the original principal amount of $131,445,000.00, (d) the Government Facilities Revenue Bonds, Series G, issued by PBA in the original principal amount of $62,000,000.00, (e) the Government Facilities Revenue Refunding Bonds, Series H, issued by PBA in the original principal amount of $272,717,418.10, (f) the Government Facilities Revenue Bonds, Series I, issued by PBA in the original principal amount of $832,385,000.00, (g) the Government Facilities Revenue Refunding Bonds, Series J, issued by PBA in the original principal amount of $335,580.000.00 (h) the Government Facilities Revenue Refunding Bonds, Series K, issued by PBA in the original principal amount of $347,065,000.00, (i) the Government Facilities Revenue Bonds, Series L, issued by PBA in the original principal amount of $6,795,000.00, (j) the Government Facilities Revenue Refunding Bonds, Series M-1, issued by PBA in the original principal amount of $283,550,000.00, (k) the Government Facilities Revenue Refunding Bonds, Series M-2, issued by PBA in the original principal amount of $129,300,000.00, (l) the Government Facilities Revenue Refunding Bonds Series M-3, issued by PBA in the original principal amount of $150,000,000.00, (m) the Government Facilities Revenue Bonds, Series N, issued by PBA in the original principal amount of $329,415,000.00, (n) the Government Facilities Revenue Bonds, Series O, issued by PBA in the original principal amount of $3,025,000.00, (o) the Government Facilities Revenue Refunding Bonds, Series P, issued by PBA in the original principal amount of $330,935,000.00, (p) the Government Facilities Revenue Refunding Bonds Series Q, issued by PBA in the original principal amount of $152,540,000.00, (q) the Government Facilities Revenue Bonds, Series R, (Qualified School Construction Bonds), issued by PBA in the original principal amount of $756,449,000.00, (r) the Government Facilities Revenue Bonds, Series S, issued by PBA in the original principal amount of $303,945,000.00, (s) the Government Facilities Revenue Bonds, Series T (Qualified Zone Academy Bonds), issued by PBA in the original principal amount of $121,528,000.00, and (t) the Government Facilities Revenue Refunding Bonds, Series U, issued by PBA in the original principal amount of $582,345,000.00, which, as of the PBA Petition Date, were in the aggregate outstanding principal amount of $3,968,771,899.00.

28

1.227 **PBA Cash:** The amount of Cash held by PBA on the Effective Date, excluding any PBA Excess Cash, which, at a minimum, shall be the amount paid by the Commonwealth in connection with the compromise and settlement of the Allowed PBA Administrative Expense Claim.

1.228 **PBA/DRA Secured Claim:** Collectively, the loans allegedly made by GDB to PBA, which, as of the PBA Petition Date, were in the outstanding principal amount of Sixty-Six Million Two Hundred Twenty-Two Thousand Twenty-Eight Dollars ($66,222,028.00), the repayment of which is asserted to be secured by the proceeds of the sale or disposition of certain PBA Property and subordinated to all rights and recoveries with respect to the PBA Bonds.

1.229 **PBA/DRA Unsecured Claim:** Collectively, the subordinated loans allegedly made by GDB, to PBA, which, as of the PBA Petition Date, were in the outstanding principal amount of One Hundred Thirty-Four Million Three Hundred Fifty-Seven Thousand Four Hundred Ninety-Eight Dollars ($134,357,498.00).

1.230 **PBA Excess Cash:** PBA's portion of the Excess Cash, which amount shall be equal to (i) (x) the amount of PBA Cash <u>divided by</u> (y) Twelve Billion Four Hundred Ninety-Three Million Three Hundred Ten Thousand Dollars ($12,493,310,000.00) <u>minus</u> the PSA Restriction Fee and Consummation Costs <u>times</u> (ii) the amount of Excess Cash.

1.231 **PBA General Unsecured Claim**: A Claim against PBA, other than a PBA Bond Claim, a PBA Bond Claim (Insured), a PBA/DRA Secured Claim and a PBA/DRA Unsecured Claim, but including Ordinary Course Employee Claims against PBA.

1.232 **PBA Litigation:** The adversary proceeding styled <u>The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Puerto Rico Public Buildings Authority</u>, Adv. Proc. No. 18-00149, currently pending in the Title III Court.

1.233 **PBA Petition Date:** September 26, 2019, the date on which the PBA Title III Case was commenced.

1.234 **PBA Property:** All property for which title currently resides in PBA, including, without limitation, the buildings and other facilities owned or leased by PBA.

1.235 **PBA Title III Case:** The Title III case under PROMESA pending in the Title III Court, captioned as <u>In re Financial Oversight & Management Board for Puerto Rico as representative of the Puerto Rico Public Buildings Authority</u>, Case No. 19BK___-LTS (D.P.R.).

1.236 **Pension Reserve Deed of Trust:** The deed of trust to be executed and delivered on or prior to the Effective Date, reasonably acceptable to the Government of Puerto Rico, the Retiree Committee, and labor organizations party to plan support agreements for the Plan, substantially in the form included in the Plan Supplement, providing for, among other things, creating the Pension Reserve Trust and providing for the terms for the deposit and withdrawal of monies in the Pension Reserve Trust for the benefit of the Retirees.

1.237   **Pension Reserve Trust:**  The reserve trust to be created in accordance with the terms and conditions of Article L hereof, which reserve trust shall be utilized for payment of the Commonwealth's pension obligations under Act 106.

1.238   **Person:**  An individual, general partnership, limited partnership, corporation, limited liability company, limited liability partnership, cooperative, trust, unincorporated organization, association, joint stock company, joint venture, estate, government, or agency or political subdivision thereof, or any other form of legal entity.

1.239   **PFC:**  Puerto Rico Public Finance Corporation.

1.240   **Plan:**  This Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., including, without limitation, the exhibits and schedules hereto, as the same is amended, supplemented, or modified from time to time in accordance with the provisions of PROMESA, the Bankruptcy Code and the terms hereof.

1.241   **Plan Supplement:**  A separate volume, to be filed with the Clerk of the Title III Court, including, among other documents, forms of the New Bonds and, if not previously enacted, the draft of the New Bond Legislation which, in each case, shall be in form and substance reasonably satisfactory to AAFAF and the PSA Creditors.  The Plan Supplement (containing draft or final versions of the foregoing documents) shall be filed with the Clerk of the Title III Court as soon as practicable (but in no event later than seven (7) days) prior to the Ballot Date, or on such other date as the Title III Court establishes.  The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth herein in full.

1.242   **Plan Support Agreement:**  That certain Plan Support Agreement, dated as of May 31, 2019, by and among the Oversight Board, the Commonwealth and the PSA Creditors, as amended and restated.

1.243   **Ports:**  Ports of the Americas Authority.

1.244   **PRASA:**  Puerto Rico Aqueduct and Sewer Authority.

1.245   **PRCCDA:**  Puerto Rico Convention Center District Authority.

1.246   **PREPA:**  The Puerto Rico Electric Power Authority.

1.247   **PRIFA:**  Puerto Infrastructure Financing Authority.

1.248   **Professional:**  An Entity (a) to be compensated for services rendered prior to or on the Effective Date pursuant to Sections 316 and 317 of PROMESA, and (i) employed in the Title III Cases by the Government Parties (in the Government Parties' sole discretion); or (ii) employed in the Title III Cases by the Oversight Board (in the Oversight Board's sole discretion); or (b) for which compensation and reimbursement has been Allowed by the Title III Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.249   **Professional Claim:**  A Claim by a Professional seeking an award by the Title III Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 316 and 317 of PROMESA.

1.250   **PROMESA:**  The Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. §2101, et. seq., as it may be amended or modified.

1.251   **Pro Rata Share:**  With respect to Allowed Claims (a) within the same Class, the proportion that an Allowed Claim bears to the sum of all Allowed Claims within such Class, and (b) among more than one Class, the proportion that Allowed Claims within such Class of Claims receives in consideration to the sum of consideration received by all Claims within all applicable Classes; provided, however, that, notwithstanding the foregoing, for purposes of New Bonds and CW Cash, "Pro Rata Share" with respect to the 2012 Settling CW Bond Claims, 2012 Settling CW Guarantee Bond Claims and 2014 Settling CW Bond Claims shall take into account the discount set forth in the applicable distribution definition for such Class.

1.252   **PSA Creditors:**  Collectively, the parties to the Plan Support Agreement, other than the Government Parties.

1.253   **PSA Restriction Fees:**  Collectively, the amounts to be paid, in Cash, on the Effective Date to PSA Creditors in accordance with the terms and conditions of the Plan Support Agreement, the Term Sheet and Section 3.4 hereof.

1.254   **Puerto Rico Investor**:  A holder of a Vintage CW Bond Claim, a 2012 CW Bond Claim, a 2014 Bond Claim or an ERS Bond Claim that is, or that is wholly owned by or the sole beneficial owner of which is, a natural person(s) and resident(s) of the Commonwealth of Puerto Rico for purposes of payment of Puerto Rico personal income taxes (as determined by the Oversight Board in its sole and absolute discretion).

1.255   **QTCB Group:**  The ad hoc committee of holders of PBA Bonds appearing in the PROMESA Proceedings before the Title III Court as the "QTCB Noteholder Group."

1.256   **Reduction Percentage:**  The lesser of (a) the lesser of eight and one-half percent (8.5%) of the Total Monthly Benefit or the reduction of the Total Monthly Benefit to One Thousand Two Hundred Dollars ($1,200.00) per month and (b) twenty-five percent (25%) of the difference of the Total Monthly Benefit plus the Monthly Medical Insurance benefit if any, minus either (i) One Thousand Dollars ($1,000.00) for those Participants without Social Security benefits or (ii) Six Hundred Dollars ($600.00) per month for those Participants with Social Security benefits; provided, however, that, in the event that any of Classes 25A through 25D reject the Plan, the "Reduction Percentage" for any such rejecting Class shall be ten percent (10%); and, provided, further, that, for all calculation purposes, and until certified financial information subsequent to July 1, 2016 is provided, Participant pension and other benefit information as of July 1, 2016 shall be used for the calculation of benefits pursuant to the Plan.

1.257   **Related Persons:**  With respect to any Entity (including for the avoidance of doubt, the Commonwealth and the Government Parties), its predecessors, successors and assigns (whether by operation of law or otherwise) and their respective current and former Affiliates and

such Entity's and its current and former Affiliate's current and former employees, managers, elected or appointed officials, directors, officers, board members, principals, members, equity holders (whether such interests are held directly or indirectly), partners, financial advisors, attorneys, accountants, consultants, agents and professionals (including, without limitation, any and all Professionals retained by the Debtors and AAFAF), or other representatives, nominees or investment managers, each acting in such capacity, and any Entity claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals), each in its capacity as such.

1.258    **Released Claims:**  Collectively, (a) with respect to those Entities party to the Plan Support Agreement, Claims and Causes of Action released hereunder and in accordance with the Plan Support Agreement, (b) Claims and Causes of Action that arise in, are related to or have been or could have been asserted against the Debtors or their Assets in the Title III Cases, (c) Claims and Causes of Action that have been or could have been asserted by the Debtors (with respect to releases given by the Debtors) and by Creditors or the Government Parties relating to Claims they have against the Released Parties (with respect to releases given by Releasing Parties), and (d) Claims that otherwise arise from or relate to the Title III Cases, the Plan, the Plan Support Agreement, the Retiree Committee Plan Support Agreement, the AFSCME Plan Support Agreement, and the compromises set forth herein, including, without limitation, in connection with or related to any of the Government Parties, and their respective subsidiaries, assets, liabilities, operations, or property; provided, however, that, "Released Claims" is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to the Debtors or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted, or that could have been asserted, whether sounding in contract or tort; and, provided, further, that "Released Claims" is not intended to release, nor shall it have the effect of releasing, any party from the performance of its obligations in accordance with the Confirmation Order or the Plan, including, without limitation, performance of obligations arising from or related to New Bonds and the New Refunding Bonds.

1.259    **Released Parties:**  Collectively, solely to the extent provided in the Plan, (a) the Government Parties, (b) the Commonwealth, (c) the PSA Creditors, (d) the Retiree Committee, (e) AFSCME and (f) with respect to the foregoing clauses (a) through (e), each of their respective Related Persons.

1.260    **Releasing Parties:**  Collectively, solely to the extent provided in the Plan, (a) all holders of Claims against the Debtors or their Assets; (b) such holders' current and former Affiliates and (c) with respect to the foregoing clauses (a) and (b), each such Entity's current and former Related Persons.

1.261    **Remaining Reserve Amount:**  The amount of New Bonds and Cash remaining in the Late Vintage Reserve following resolution or determination of the Late Vintage Litigation by final, non-appealable orders or settlement, which amount and currency, if any, shall be distributed one-third (1/3) to the Commonwealth and two-thirds (2/3) to the Litigation Trust.

1.262    **Rent Claim:**  The Claim of PBA against the Commonwealth for the Commonwealth's use and occupancy of PBA Property during the period from the commencement of the Commonwealth's Title III Case up to and including the Effective Date.

1.263   **Reorganized Debtors:**  The Debtors, from and after the Effective Date.

1.264   **Retiree:**  A person who, as of July 1, 2019 receives a pension or annuity as a Participant in ERS, JRS or TRS, but excluding any Participant in ERS whose hire date was on or after January 1, 2000; provided, however, that, under no circumstances shall a "Retiree" include a former employee of the Government of Puerto Rico who left public service and was not reimbursed for such person's contributions and/or any accrued benefit up to and including the date of separation.

1.265   **Retiree Claim:**  An ERS Participant Claim, a JRS Participant Claim or a TRS Participant Claim held by a Retiree.

1.266   **Retiree Committee:**  The committee of retired former employees of the Commonwealth, its agencies and instrumentalities appointed by the Office of the United States Trustee in the Commonwealth Title III Case.

1.267   **Retiree Committee Plan Support Agreement:**  That certain Plan Support Agreement, dated as of June 7, 2019, by and between the Debtor, by and through the Oversight Board, pursuant to Section 315(b) of PROMESA, and the Retiree Committee, as may be amended or supplemented by the parties thereto.

1.268   **Section 510(b) Subordinated Claim:**  Any Claim, to the extent determined pursuant to a Final Order, against the Debtors' or their Assets arising from or relating to (a) rescission of a purchase or sale of an existing security, (b) purchase, sale or retention of such a security, or (c) reimbursement, indemnification or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

1.269   **Securities Act:**  The Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state, or local law.

1.270   **Settlement Savings:**  The amount of distributable currency equal to the sum of the 2012 Settlement Savings and the 2014 Settlement Savings, which currency shall be distributed one-third (1/3) to the Commonwealth and, subject to the Bond Recovery Cap, two-thirds (2/3) to the holders of certain Allowed Claims in accordance with the terms and provisions of the Plan.

1.271   **Settling ERS Bond Claim:**  A Claim against ERS by a holder of an ERS Bond Claim that elects, deemed or otherwise, to participate in the ERS Bond Settlement.

1.272   **Solicitation Agent:**  Prime Clerk LLC, the notice, claims, and solicitation agent retained by the Debtors in the Title III Cases by Title III Court order.

1.273   **SPU:**  Servidores Publicos Unidos.

1.274   **Summer Bonus**:  The bonus, if any, payable to current, former, active, inactive and disabled employees of the Commonwealth and its agencies and instrumentalities in accordance with Act No. 37-2001 codified at 3 L.P.R.A. §757g, as amended in accordance with Act No. 3-2013, 3 L.P.R.A. §761.

1.275 **Support Date**:  The date upon which holders of Vintage PBA Bond Claims and Vintage CW Guarantee Claims that hold, in the aggregate, at least fifty percent (50%) in amount of outstanding Vintage PBA Bond Claims, execute the Plan Support Agreement or a joinder thereto.

1.276 **Syncora**:  Syncora Guarantee Inc. or its successor or designee.

1.277 **System 2000**:  The pension contribution system implemented in accordance with Act No. 305-1999, codified at 3 L.P.R.A. §§786-1, et seq, or Act 3-2013.

1.278 **System 2000 Participant Claim**:  A Claim that accrued under System 2000 or Act 3, by a Participant whose hire date was on or after January 1, 2000.

1.279 **Taxable New Bonds**:  Collectively, the portion of the New Bonds in the aggregate amount deemed necessary by the Oversight Board, after consultation with Section 103 tax counsel, to be issued as tax exempt under Puerto Rico law, but taxable in accordance with Section 103 of the IRC, which New Bonds shall be (a) issued as CIBs with an interest rate of seven percent (7.0%), payable monthly in arrears, and having a maturity of July 1, 2041 and (b) made available solely to Puerto Rico Investors with respect to the first One Million Dollars ($1,000,000.00) of aggregate holdings of (i) PBA Bond Claims, (ii) Vintage CW Bond Claims, (iii) Vintage CW Guarantee Bond Claims, (iv) 2012 CW Bond Claims, (v) 2012 CW Guarantee Bond Claims, (vi) 2014 CW Bond Claims, (vii) 2014 CW Guarantee Bond Claims and (viii) ERS Bond Claims.

1.280 **Tax-Supported Debt**:  Collectively, without duplication, (a) direct Debt of the Commonwealth for the payment of which the good faith, credit and taxing power of the Commonwealth has been pledged (including the New Bonds), (b) Debt issued by any Entity and guaranteed by the good faith, credit and taxing power of the Commonwealth, and (c) Debt issued by any Entity, whether or not guaranteed by the Commonwealth, that is secured by or payable from (i) Debt Policy Revenues or (ii) lease agreements with the Commonwealth or any agency thereof, whether or not subject to annual or periodic legislative appropriations; provided, however, that the following shall not be considered Tax Supported Debt: (1) tax and revenue anticipation notes with a final maturity occurring within the same FY of their issuance; and (2) Debt issued to respond directly to damage or destruction and associated risks to the health, safety and welfare of the people of Puerto Rico caused by hurricanes, earthquakes or other natural disasters, pandemics, terrorism and similar emergencies; and, provided, further, and without limiting the foregoing, "Tax-Supported Debt" excludes (x) revenue bonds of an Entity payable solely from user charges or securitization and transition charges imposed upon customers or former customers of a utility or transportation system, including, without limitation, the self-supporting Debt of PRASA or PREPA or any related securitization entity and (y) any other Debt that is not payable from Debt Policy Revenues, in each case, to the extent such Debt is not guaranteed by the good faith, credit and taxing power of the Commonwealth.

1.281 **Term Sheet:**  The term sheet annexed as Exhibit "C" to the Plan Support Agreement and which sets forth, among other things, the terms and conditions of the New Bonds.

34

1.282   **Threshold:**  One Thousand Two Hundred Dollars ($1,200.00) per month.

1.283   **Title III:**  Title III of PROMESA.

1.284   **Title III Cases:**  Collectively, the Commonwealth Title III Case, the ERS Title III Case, and the PBA Title III Case.

1.285   **Title III Court:**  The United States District Court of the District of Puerto Rico or such other court having jurisdiction over the Title III Cases.

1.286   **Total Monthly Benefit:**  The amount of monthly pension benefits equal to the sum of (a) the Monthly Base Pension, (b) the Monthly Christmas Bonus, if any, (c) the Monthly Summer Bonus, if any, and (d) the Monthly Medicine Bonus.

1.287   **TRS:**  Teachers Retirement System.

1.288   **TRS Participant Claim:**  A Claim against TRS for (a) retiree benefits accrued as of May 4, 2017, as set forth in the books and records of TRS (subject to any existing administrative processes for the determination of such claim), and (b) any additional retiree benefits in TRS that a Participant would be entitled to receive upon his or her future retirement.

1.289   **Unclaimed Distribution:**  Any distribution to a Creditor that has not (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check, (b) given notice to the Debtors of an intent to accept a particular distribution, (c) responded to the Debtors' requests for information necessary to facilitate a particular distribution or (d) taken any other action necessary to facilitate such distribution.

1.290   **Unexpired Lease:**  A lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code, except as provided in Section 311 of PROMESA.

1.291   **UPR:**  Universidad de Puerto Rico.

1.292   **Vintage CW Bond Claim:**  A Claim against the Commonwealth on account of Vintage CW Bonds, other than a Vintage CW Bond Claim (Insured).

1.293   **Vintage CW Bond Claim (Insured)**:  A Vintage CW Bond Claim, the payment of principal and interest of which has been insured by Ambac, Assured, FGIC, National and Syncora.

1.294   **Vintage CW Bond Claim (Taxable Election)**:  A Vintage CW Bond Claim, other than a Vintage CW Bond Claim (Insured), the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Investors holding 2012 CW Bond Claims, 2014 CW Bond Claims, ERS Bond Claims and Vintage CW Bond Claims in excess of the Maximum Taxable Bond Election Amount, such Vintage CW Bond Claim shall be a Vintage CW Bond Claim (Taxable Election) up to such Vintage CW Bond Claim's ratable share of the

35

Maximum Taxable Bond Election Amount and the remainder thereof shall be a Vintage CW Bond Claim.

1.295    **Vintage CW Bond Distribution**:  A distribution of (a) New Bonds and CW Cash in an amount equal to the CW Pari Passu Recovery Percentage of the applicable holders' Allowed CW Bond Claims, Allowed CW Bond Claims (Insured), or Allowed CW Guarantee Bond Claims, as applicable, plus (b) such holders' Pro Rata Share of (i) the CW Excess Cash, (ii) two-thirds (2/3) of the Settlement Savings distributable to Allowed Claims, and (iii) Litigation Trust Interests, each as prorated among (y) the Allowed Vintage CW Bond Claims, Allowed Vintage CW Bond Claims (Insured), and Allowed Vintage CW Guarantee Bond Claims, and (z) if and to the extent the Title III Court determines each of the following have priority over CW General Unsecured Claims: the Allowed 2012 CW Bond Claims; the Allowed 2012 CW Bond Claims (Insured); the Allowed 2012 CW Guarantee Bond Claims; the Allowed 2014 CW Bond Claims; and the Allowed 2014 CW Guarantee Bond Claims.

1.296    **Vintage CW Bonds**:  Collectively, the GO Bonds issued and listed on Exhibit "E" hereto.

1.297    **Vintage CW Guarantee Bond Claim**:  A Claim, other than a Vintage CW Guarantee Bond Claim (Insured), on account of the Commonwealth's guarantee of Vintage PBA Bonds; provided, however, that, solely for purposes of distribution under the Plan, the amount of a holder's Vintage CW Guarantee Bond Claim in respect of the Commonwealth's guarantee of Vintage PBA Bonds shall be measured as the amount of such holder's Vintage PBA Bond Claim minus the amount of such holder's PBA Bond Distribution on account of Vintage PBA Bonds; and, provided, further, that Vintage CW Guarantee Claims may include an obligation, other than a Vintage PBA Bond Claim, for which the Commonwealth has pledged its full faith and credit as authorized by the Commonwealth Legislature on or prior to December 31, 2012.

1.298    **Vintage CW Guarantee Bond Claim (Insured)**:  A Vintage CW Guarantee Bond Claim, the payment of principal and interest of which have been insured by AMBAC, Assured, FGIC or National.

1.299    **Vintage CW Guarantee Bond Claim (Taxable Election)**:  A Vintage CW Guarantee Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Investors holding 2012 CW Bond Claims, 2014 CW Bond Claims, ERS Bond Claims and Vintage CW Bond Claims in excess of the Maximum Taxable Bond Election Amount, such Vintage CW Guarantee Bond Claim shall be a Vintage CW Guarantee Bond Claim (Taxable Election) up to such Vintage CW Guarantee Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a Vintage CW Guarantee Bond Claim.

1.300    **Vintage CW Guarantee Bond Distribution**:  A distribution of (a) New Bonds and CW Cash to holders of Vintage CW Guarantee Bond Claims in an amount equal to the CW Pari Passu Recovery Percentage of the applicable holders' aggregate Vintage CW Guarantee Bond Claims plus (b) such holders' Pro Rata Share of (i) the CW Excess Cash, (ii) two-thirds (2/3) of the Settlement Savings distributable to Allowed Claims and (iii) Litigation Trust

36

Interests, each as prorated among (y) the Allowed Vintage CW Bond Claims, Allowed Vintage CW Bond Claims (Insured), and Allowed Vintage CW Guarantee Bond Claims, and (z) if and to the extent the Title III Court determines each of the following have priority over CW General Unsecured Claims; the Allowed 2012 CW Bond Claims; the Allowed 2012 CW Bond Claims (Insured); the Allowed 2012 CW Guarantee Bond Claims; the Allowed 2014 CW Bond Claims; and the Allowed 2014 CW Guarantee Bond Claims.

1.301   **Vintage PBA Bonds:**  Collectively, bonds issued by PBA prior to 2012 and listed on Exhibit "F" hereto, the repayment of which is guaranteed by the Commonwealth.

1.302   **Vintage Taxable Bond Distribution**:  The distribution to be made to each holder of an Allowed Vintage CW Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 13.1 hereof.

1.303   **Vintage PBA Bond Claim:**  A Claim against PBA on account of Vintage PBA Bonds.

1.304   **Other Definitions:**  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in PROMESA or the Bankruptcy Code shall, if defined in PROMESA, have the meaning assigned to that term in PROMESA or, if not defined in PROMESA, but defined in the Bankruptcy Code, shall have the meaning ascribed thereto in the Bankruptcy Code.  Unless otherwise specified, (a) all section, schedule, or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time and (b) all references to dollars are to the lawful currency of the United States of America.  The words, "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.305   **Rules of Interpretation:**  For purposes of the Plan, (a) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) unless otherwise specified, any reference herein to a definition, an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it was, or is amended, modified, or supplemented, including, without limitation, updated to conform to the Definitive Documents; (c) unless otherwise specified, all references herein to distributions being made in an "amount" shall be calculated using the principal amount of any bonds issued on the Effective Date pursuant to the Plan plus the amount, if any, of Cash so distributed; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (f) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (g) unless otherwise specified, references to docket numbers of documents filed in the Title III Cases are references to the docket numbers under the Title III Court's CM/ECF system; (h) the words "include" and

37

"including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (i) any immaterial effectuating provisions may be interpreted by the Oversight Board in such a manner consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Title III Court or any other Entity.

## ARTICLE II

## COMPROMISE AND SETTLEMENT OF DISPUTES/RESTRUCTING OF ENTITIES

2.1     **Litigation Resolution:**  The Plan sets forth the terms and conditions for a compromise and settlement of certain outstanding disputes (a) set forth in the Debt Limit Objections, challenging, among other things, the validity and related rights of the 2011 GO Bonds, the 2012 GO Bonds and the 2014 GO Bonds, (b) set forth in the Invalidity Actions, (c) set forth in the Lien Challenge Actions (d) the ERS Litigation and (e) between the Commonwealth and PBA, including, without limitation, the resolution of (i) the claims and causes of action currently being litigated in the PBA Litigation (ii) the amount, if any, of the Rent Claim, and (iii) the ownership of the PBA Property, between the Commonwealth and PBA and the claims that PBA may assert against the Commonwealth under leases, agreements and applicable law.  The proposed settlement and compromise of the Debt Limit Objections, the Invalidity Actions, and Lien Challenge Actions encompassed in the Plan, shall only be binding upon those holders of claims that accept the terms and conditions offered therein and other holders as may be ordered by the Title III Court in connection with confirmation of the Plan; provided, however, that a holder of a claim subject to the Debt Limit Objections, Invalidity Actions, or Lien Challenge Actions that fails to elect on the Ballot, to continue such litigation or fails to timely submit a Ballot electing to continue such litigation, shall be deemed to have accepted the compromise and settlement set forth in the Plan.  All remaining holders of claims are entitled to participate in litigation regarding the Debt Limit Objections, Invalidity Actions, and Lien Challenge Actions, as applicable, to such holders' claims to the extent provided herein and in the Plan.

2.2     **Allowance of Bond Claims**:  For purposes of confirmation and consummation of the Plan and distributions to be made hereunder, unless otherwise allowed pursuant to an order of the Title III Court, on the Effective Date, among other Claims, (a) the PBA Bond Claims and the PBA Bond Claims (Insured) shall be deemed allowed in the aggregate amount equal to the principal amount outstanding on the PBA Bonds and accrued and unpaid interest thereon during the period up to, but not including, the date on which the PBA Title III Case was commenced, (b) Vintage CW Bond Claims and Vintage CW Bond Claims (Insured) shall be deemed allowed in the aggregate amount of $6,917,394,944.00, (c) the ERS Bond Claims are disputed in the aggregate amount of $3,168,698,777.00, (d) the 2012 CW Bond Claims are disputed in the aggregate amount of $2,871,353,031.00, and (e) the 2014 CW Bond Claims are disputed in the amount of $3,606,171,111.00; provided, however, that, in accordance with the solicitation procedures attendant to the Plan, all of the foregoing amounts shall be deemed allowed solely for voting purposes.

2.3     **Releases, Injunctions and Exculpation**:  The releases, injunctions and exculpation provided in Article LXII herein are integral to obtaining the value provided

hereunder and constitute an essential component of the compromises reached and are not severable from the other provisions of this Plan.

2.4 **Purchase and Sale of Certain ERS Assets**:  On the Effective Date, the Commonwealth shall purchase, and ERS shall sell, assign, transfer and convey, all of ERS's all right, title and interest in ERS's assets, including, without limitation, such assets subject to a valid and perfected lien or security interest, for an aggregate purchase price equal to the sum of (a) one hundred percent (100%) of the Cash in ERS accounts as of the Effective Date, (b) ninety-five percent (95%) of the face amount of performing ERS employee loans as of the Effective Date, (c) one hundred percent (100%) of the market price of the COFINA bonds held by ERS, as of the Effective Date, and (d) fifty percent (50%) of the book value of the ERS portfolio of private equity interests held by ERS as of the Effective Date, with such amount being approved by the Title III Court at the Confirmation Hearing and incorporated into the findings of fact set forth in the Confirmation Order.

## ARTICLE III

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, made applicable to the Title III Case pursuant to Section 301(a) of PROMESA, Administrative Expense Claims and Professional Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article IV of the Plan.

3.1 **Administrative Expense Claims:**  On the later to occur of (i) the Effective Date and (ii) the date on which an Administrative Expense Claim shall become an Allowed Claim, the Reorganized Debtors shall (a) pay to each holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Administrative Expense Claim or (b) satisfy and discharge such Allowed Administrative Expense Claim in accordance with such other terms no more favorable to the claimant than as may be agreed upon by and between the holder thereof and the Reorganized Debtors; provided, however, that Allowed Administrative Expense Claims representing indebtedness incurred in the ordinary course prior to the Effective Date by the Debtors shall be paid in full and performed by the Reorganized Debtors in accordance with the terms and subject to the conditions of any agreement governing, investment evidencing, or other document relating to such transactions; and, provided, further, that, if any such ordinary course expense is not billed, or a written request for payment is not made, within one hundred twenty (120) days after the Effective Date, such ordinary course expense shall be barred and the holder thereof shall not be entitled to, or receive, a distribution pursuant to the Plan.

3.2 **Professional Compensation and Reimbursement Claims:**  All Entities awarded compensation or reimbursement of expenses by the Title III Court shall be paid in full, in Cash, in the amounts allowed by the Title III Court (a) as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date upon which the Title III Court order allowing such Claims is deemed to be a Final Order or (b) upon such other terms no more favorable to the claimant than as may be mutually agreed upon between such claimant and the Government Parties; provided, however, that, except as provided herein, each Professional must file its application for final allowance of compensation for professional services rendered and

39

reimbursement of expenses on or prior to the date that is one hundred twenty (120) days following the Effective Date.  The Reorganized Debtors shall pay compensation for professional services extended and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Title III Court approval.

3.3   **Consummation Costs**:  Notwithstanding anything contained in the Plan to the contrary, in order to compensate certain parties for the cost of negotiation, confirmation and consummation of the Term Sheet and the Plan, each holder of a PBA Bond Claim, and each holder of a CW Bond Claim and CW Bond Claim (Insured), which executed the Plan Support Agreement as of 11:59 p.m. (EDT) on May 31, 2019, shall be entitled to receive on the Effective Date, based upon their respective positions (insured or otherwise) as of 5:00 p.m. (EDT) on May 31, 2019, a pro rata share of Cash in an amount equal to one and twenty-five one hundredths percent (1.25%), truncated to two decimal points, of the aggregate amount of PBA Bond Claims, CW Bond Claims and CW Bond Claims (Insured), without duplication on account of claims against the Commonwealth for CW Guarantee Bond Claims.

3.4   **AFSCME Professional Fees**:  Notwithstanding anything contained in the Plan to the contrary, AFSCME shall be reimbursed its reasonable professional fees and expenses incurred in order to compensate AFSCME for the cost of negotiation, confirmation and consummation of the AFSCME Term Sheet and the Plan, including, without limitation, the resolution of issues pertaining to pensions.

3.5   **PSA Restriction Fee**:  Notwithstanding anything contained in the Term Sheet or the Plan to the contrary, in exchange for executing the PSA, and agreeing to all of its terms and conditions, including the agreement to "lock-up" their bonds in accordance with the terms of the PSA, each of the PSA Creditors that executes the PSA during the sixty (60) day period commencing May 31, 2019 shall, upon the occurrence of the Support Date, be entitled to receive the PSA Restriction Fee for each 120-day period that their bonds remain restricted under the PSA in the form of an allowed administrative expense claim, payable in cash, at the time of consummation of the Plan equal to one and one-half percent (1.5%) of the aggregate amount of PBA Bond Claims and CW Bond Claims, without duplication on account of claims against the Commonwealth for CW Guarantee Bond Claims, held by such holder as of the date that the Title III Court approves a disclosure statement for the Plan which PSA Restriction Fee for each PSA Creditor shall begin accruing on the date upon which such creditor executes the PSA or joinder thereto and will be fully earned on the first day of each 120 day incremental period; provided, however, that, in the event that a PSA Creditor purchased or sold any of the foregoing from and after May 31, 2019, the PSA Restriction Fee, if any, shall be payable as follows:

1.   In the event an initial PSA Creditor sold to a non-initial PSA Creditor any of its PBA Bond Claims or CW Bond Claims in accordance with the terms and conditions of the PSA during the period from May 31, 2019 up to and including August 30, 2019,  including, without limitation, by having the purchaser thereof execute and deliver the Joinder Agreement, as defined in the Plan Support Agreement, to counsel for the Oversight Board, the purchasing party (which shall, as a result of the delivery of a Joinder Agreement and purchased from the initial PSA Creditor within the time period provided above, became an initial PSA Creditor), and not the selling PSA Creditor, shall be entitled to a PSA Restriction Fee with respect to such sold PBA Bond Claims or CW

40

Bond Claims, as the case may be, calculated from the date of execution of the Joinder Agreement provided that such purchaser continues to hold such PBA Bond Claims or CW Bond Claims, as the case may be, as of the tender of its ballot to accept the Plan.

2.     In the event an initial PSA Creditor purchased additional PBA Bond Claims or CW Bond Claims during the period from May 31, 2019 up to and including the date that such initial PSA Creditor tenders its ballot to accept the Plan from any other holder of PBA Bond Claims or CW Bond Claims, such purchasing initial PSA Creditor (a) shall comply with the reporting obligations set forth in Section 2.2 of the Plan Support Agreement, including, without limitation, on the first (1st) Business Day of every calendar month during the period from May 31, 2019 up to and including the Effective Date, by providing counsel for the Oversight Board, in writing, the face amount and CUSIP numbers for each of the GO Bonds and PBA Bonds purchased and/or sold during the prior calendar month, if any, together with the face amount and CUSIP numbers for each of the GO Bonds and PBA Bonds, if any, such initial PSA Creditor then owns or has due investment management responsibility and authority for funds or accounts which own such GO Bonds or PBA Bonds, as the case may be, and (b) and not the selling party, shall be entitled to receive a PSA Restriction Fee for all PBA Bond Claims or CW Bond Claims, as the case may be, held by such initial PSA Creditor as of the date it tenders its ballot to accept the Plan, with such PSA Restriction Fee calculated from the date that such Initial PSA Creditor executed the Plan Support Agreement or the Joinder Agreement, as applicable.

3.     In the event that an initial PSA Creditor sold to a non-initial PSA Creditor any of its PBA Bond Claims or CW Bond Claims in accordance with the terms and conditions of the PSA during the period from and after August 31, 2019, including, without limitation, by having the purchaser thereof execute and deliver the Joinder Agreement to counsel for the Oversight Board, no PSA Restriction Fee shall be paid to either the initial PSA Creditor or the purchasing non-initial PSA Creditor; provided, however, that the selling initial PSA Creditor, and not the purchasing party, shall be entitled to receive the PSA Restriction Fee attributable to such sold PBA Bond Claims or CW Bond Claims if the sale occurs after the selling initial PSA Creditor has tendered its ballot to accept the Plan;

provided, however, that, in all circumstances the sum of the aggregate PSA Restriction Fee plus the Consummation Costs shall not exceed Three Hundred Million Dollars ($300,000,000.00); and, provided, further, that, in the event the Plan Support Agreement is terminated pursuant to the terms of Section 6.1(c)(i) thereof or the Oversight Board terminates the PSA for any reason other than (i) a breach of PSA by a non-Governmental Party, (ii) the denial of confirmation of the Plan by the Title III Court, or (iii) a failure of the Oversight Board, the LCDC and the QTCB Group to reach agreement on the terms of the New Bonds, the aggregate PSA Restriction Fee up to One Hundred Million Dollars ($100,000,000.00) shall be paid, in cash, as an administrative expense claim under a plan of adjustment for the Commonwealth (in the event that there is no disclosure statement approved, such fee shall be paid to holders that are parties to the Plan Support Agreement as of the date of termination); and, provided, further, that, in all other circumstances, upon termination of the Plan Support Agreement, no Consummation Costs or PSA Restriction Fee shall be due and payable to the party to the Plan Support Agreement

41

terminating the Plan Support Agreement or against the party to the Plan Support Agreement as to which the Plan Support Agreement is terminated; and, provided, further, that, any unused portion of the PSA Restriction Fee shall be added to the value distributed to bondholders under the Plan. For the avoidance of doubt, neither the Consummation Costs nor the PSA Restriction Fee will be included for purposes of calculating the Bond Recovery Cap.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS

4.1     **Claims are classified as follows:**

| | | |
|---|---|---|
| (a) | **Class 1:** | PBA Bond Claims |
| (b) | **Class 2:** | PBA Bond Claims (Insured) |
| (c) | **Class 3:** | PBA/DRA Secured Claim |
| (d) | **Class 4:** | PBA General Unsecured Claims |
| (e) | **Class 5:** | PBA/DRA Unsecured Claim |
| (f) | **Class 6:** | Vintage CW Bond Claims |
| (g) | **Class 7:** | Vintage CW Bond Claims (Insured) |
| (h) | **Class 8:** | Vintage CW Bond Claims (Taxable Election) |
| (i) | **Class 9:** | Vintage CW Guarantee Bond Claims |
| (j) | **Class 10:** | Vintage CW Guarantee Bond Claims (Insured) |
| (k) | **Class 11:** | Vintage CW Guarantee Bond Claims (Taxable Election) |
| (l) | **Class 12:** | 2012 CW Bond Claims |
| (m) | **Class 13:** | 2012 CW Bond Claims (Insured) |
| (n) | **Class 14:** | 2012 Settling CW Bond Claims |
| (o) | **Class 15:** | 2012 CW Bond Claims (Taxable Election) |
| (p) | **Class 16:** | 2012 CW Guarantee Bond Claims |
| (q) | **Class 17:** | 2012 Settling CW Guarantee Bond Claims |
| (r) | **Class 18:** | 2012 CW Guarantee Bond Claims (Taxable Election) |
| (s) | **Class 19:** | 2014 CW Bond Claims |

42

(t)　**Class 20:**　　2014 Settling CW Bond Claims

(u)　**Class 21:**　　2014 CW Bond Claims (Taxable Election)

(v)　**Class 22:**　　2014 CW Guarantee Bond Claims

(w)　**Class 23:**　　2014 Settling CW Guarantee Bond Claims

(x)　**Class 24:**　　2014 CW Guarantee Bond Claims (Taxable Election)

(y)　**Class 25:**　　Active and Retired Employee Benefits Claims

　　(i)　**Class 25A:**　Retiree Claims

　　(ii)　**Class 25B:**　Active ERS Participant Claims

　　(iii)　**Class 25C:**　Active JRS Participant Claims

　　(iv)　**Class 25D:**　Active TRS Participant Claims

　　(v)　**Class 25E:**　System 2000 Participant Claims

(z)　**Class 26:**　　AFSCME Employees Claims

(aa)　**Class 27:**　　CW General Unsecured Claims

(bb)　**Class 28:**　　CW/HTA Constitutional Claims

(cc)　**Class 29:**　　CW/Convention Constitutional Claims

(dd)　**Class 30:**　　CW/PRIFA Rum Tax Constitutional Claims

(ee)　**Class 31:**　　CW/MBA Constitutional Claims

(ff)　**Class 32:**　　CW Appropriations Claims

(gg)　**Class 33:**　　CW 510(b) Subordinated Claims

(hh)　**Class 34:**　　ERS Bond Claims

(ii)　**Class 35:**　　Settling ERS Bond Claims

(jj)　**Class 36:**　　ERS Bond Claims (Taxable Election)

(kk)　**Class 37:**　　ERS General Unsecured Claims

(ll)　**Class 38:**　　Gracia Gracia Claims

(mm) **Class 39:**　　Convenience Claims

## ARTICLE V

## PROVISIONS FOR TREATMENT OF PBA BOND CLAIMS (CLASS 1)

5.1 **Treatment of PBA Bond Claims:** On the Effective Date, each holder of an Allowed PBA Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed PBA Bond Claim, such holder's Pro Rata Share of the PBA Bond Distribution, consisting of (a) PBA Cash and (b) subject to the Bond Recovery Cap, PBA Excess Cash. In the event that the Bond Recovery Cap is attained, all property that would have been distributed to holders of the Allowed PBA Bond Claims, but for the Bond Recovery Cap, shall be distributed to holders of Allowed CW Bond Claims in accordance with the terms of the Plan.

## ARTICLE VI

## PROVISIONS FOR TREATMENT OF PBA BOND
## CLAIMS (INSURED) (CLASS 2)

6.1 **Treatment of PBA Bond Claims (Insured):** On the Effective Date, each holder of an Allowed PBA Bond Claim (Insured) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed PBA Bond Claim (Insured), such holder's Pro Rata Share of the PBA Bond Distribution, consisting of (a) PBA Cash and (b) subject to the Bond Recovery Cap, PBA Excess Cash. In the event that the Bond Recovery Cap is attained, all property that would have been distributed to holders of the Allowed PBA Bond Claims (Insured), but for the Bond Recovery Cap, shall be distributed to holders of Allowed CW Bond Claims in accordance with the terms of the Plan.

## ARTICLE VII

## PROVISIONS FOR TREATMENT OF
## PBA/DRA SECURED CLAIMS (CLASS 3)

7.1 **Treatment of PBA/DRA Secured Claims:** Allowed PBA/DRA Secured Claims shall not receive a distribution pursuant to the Plan and the holder of the Allowed PBA/DRA Secured Claims shall be deemed to have rejected the Plan**.**

## ARTICLE VIII

## PROVISIONS FOR TREATMENT OF PBA GENERAL UNSECURED
## CLAIMS (CLASS 4)

8.1 **Treatment of PBA General Unsecured Claims:** On the Effective Date, Allowed PBA General Unsecured Claims shall be deemed unimpaired and each holder of an Allowed PBA General Unsecured Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed PBA General Unsecured Claim, (a) reinstatement pursuant to section 1124(2) of the Bankruptcy Code, including, without limitation, payments of Cash necessary to satisfy the requirements of reinstatement, (b) payment of the

44

Allowed amount of such holder's Claim, in full, in Cash, on, or as soon as practicable after the latest to occur of (1) the Effective Date, (2) the date on which such PBA General Unsecured Claim becomes Allowed, (3) the date on which such Allowed PBA General Unsecured Claim is otherwise due and payable, and (4) such other date as may be mutually agreed to by such holder of such PBA General Unsecured Claim and the Debtor or the Reorganized Debtor, as the case may be, or (c) such other treatment as may be mutually agreed to by and among such holder of a PBA General Unsecured Claim and the Debtor or the Reorganized Debtor, as the case may be.

## ARTICLE IX

## PROVISIONS FOR TREATMENT OF PBA/DRA
## UNSECURED CLAIMS (CLASS 5)

9.1      **Treatment of PBA/DRA Unsecured Claims**:  Allowed PBA/DRA Unsecured Claims shall not receive a distribution pursuant to the Plan and the holder of the Allowed PBA/DRA Unsecured Claims shall be deemed to have rejected the Plan.

## ARTICLE X

## PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
## CLAIMS (CLASS 6)

10.1      **Treatment of Vintage CW Bond Claims**:  On the Effective Date, each holder of an Allowed Vintage CW Bond Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed Vintage CW Bond Claim, such holder's Pro Rata Share of the Vintage CW Bond Distribution, consisting of (a) New Bonds, (b) CW Cash, and (c) subject to the Bond Recovery Cap, (i) CW Excess Cash, (ii) Litigation Trust Interests, and (iii) Settlement Savings.

10.2      **Right of Election to Vintage CW Bond Claims (Taxable Election)**: Notwithstanding the provisions of Section 10.1 of the Plan, each holder of an Allowed Vintage CW Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 12.1 and 46.1 hereof. Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstance may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XI

## PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
## BOND CLAIMS (INSURED) (CLASS 7)

11.1      **Treatment of Vintage CW Bond Claims (Insured)**:  On the Effective Date, each holder of an Allowed Vintage CW Bond Claim (Insured) shall be entitled to receive, in full

consideration, satisfaction, release, and exchange of such holder's Allowed Vintage CW Bond Claim (Insured), such holder's Pro Rata Share of the Vintage CW Bond Distribution, consisting of (a) New Bonds, (b) CW Cash, and (c) subject to the Bond Recovery Cap, (i) CW Excess Cash, (ii) Litigation Trust Interests, and (iii) Settlement Savings.

## ARTICLE XII

## PROVISIONS FOR TREATMENT OF VINTAGE CW BOND CLAIMS (TAXABLE ELECTION) (CLASS 8)

12.1   **Treatment of Vintage CW Bond Claims (Taxable Election)**:  On the Effective Date, each holder of an Allowed Vintage CW Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Vintage CW Bond Claim (Taxable Election), its Pro Rata Share of the Vintage CW Bond Distribution, as modified by its Pro Rata Share of the Vintage Taxable Bond Distribution.

## ARTICLE XIII

## PROVISIONS FOR TREATMENT OF VINTAGE CW GUARANTEE BOND CLAIMS (CLASS 9)

13.1   **Treatment of Vintage CW Guarantee Bond Claims**:  On the Effective Date, and in full consideration, satisfaction, release, and exchange of its Allowed Vintage CW Guarantee Bond Claim, each holder of an Allowed Vintage CW Guarantee Bond Claim shall receive its Pro Rata Share of the Vintage CW Guarantee Bond Distribution, which is composed of (i) New Bonds, (ii) CW Cash, and (iii) subject to the Bond Recovery Cap, (a) CW Excess Cash, (b) Litigation Trust Interests, and (c) Settlement Savings; provided, however, that a holder of an Allowed Vintage CW Guarantee Bond Claim may not recover more in the aggregate than the Bond Recovery Cap on account of such holder's Allowed Vintage PBA Bond Claim and Allowed Vintage CW Guarantee Bond Claim.

13.2   **Right of Election to Vintage CW Guarantee Bond Claims (Taxable Election)**: Notwithstanding the provisions of Section 13.1 of the Plan, each holder of an Allowed Vintage CW Guarantee Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 14.1 and 46.1 hereof.  Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstance may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XIV

### PROVISIONS FOR TREATMENT OF VINTAGE CW
### GUARANTEE BOND CLAIMS (INSURED) (CLASS 10)

14.1 **Treatment of Vintage CW Guarantee Bond Claims (Insured)**: On the Effective Date, and in full consideration, satisfaction, release, and exchange of its Allowed Vintage CW Guarantee Bond Claim (Insured), each holder of an Allowed Vintage CW Guarantee Bond Claim (Insured) shall receive its Pro Rata Share of the Vintage CW Guarantee Bond Distribution, which is composed of (i) New Bonds, (ii) CW Cash, and (iii) subject to the Bond Recovery Cap, (a) CW Excess Cash, (b) Litigation Trust Interests, and (c) Settlement Savings; provided, however, that a holder of an Allowed Vintage CW Guarantee Bond Claim (Insured) may not recover more in the aggregate than the Bond Recovery Cap on account of such holder's Allowed Vintage PBA Bond Claim and Allowed Vintage CW Guarantee Bond Claim (Insured).

## ARTICLE XV

### PROVISIONS FOR TREATMENT OF VINTAGE CW
### GUARANTEE BOND CLAIMS (TAXABLE ELECTION) (CLASS 11)

15.1 **Treatment of Vintage CW Guarantee Bond Claims (Taxable Election)**: On the Effective Date, each holder of an Allowed Vintage CW Guarantee Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Vintage CW Guarantee Bond Claim (Taxable Election), its Pro Rata Share of the Vintage CW Guarantee Bond Distribution, as modified by its Pro Rata Share of the Vintage Taxable Bond Distribution.

## ARTICLE XVI

### PROVISIONS FOR TREATMENT OF 2012 CW BOND
### CLAIMS (CLASS 12)

16.1 **Treatment of 2012 CW Bond Claims**: On the Effective Date, and subject to the rights of election set forth in Section 16.2 hereof, the Late Vintage Litigation, including, without limitation, the Debt Limit Objections and the CW Recovery Actions, and the Bond Recovery Cap, each holder of an Allowed 2012 CW Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 CW Bond Claim, such holder's Pro Rata Share of the Vintage CW Bond Distribution, consisting of (a) New Bonds, (b) Excess Cash, (c) Settlement Savings and (d) Litigation Trust Interests. For the avoidance of doubt, and to the extent that any holder of a 2012 CW Bond Claim elects not to accept the 2012 CW Bond Settlement and is therefore deemed to be a participant in the Late Vintage Litigation, including, without limitation, the Debt Limit Objections and the CW Recovery Actions, and such Late Vintage Litigation determines, by entry of a final, non-applicable order, that such 2012 CW Bond Claim does not have priority over CW General Unsecured Claims, such 2012 CW Bond Claim shall be treated on a *pari passu* basis with

47

Allowed CW General Unsecured Claims and the holder of such 2012 CW Bond Claim shall receive its Pro Rata Share of distributions with respect thereto from the CW GUC Pool.

16.2   **Rights of Election to 2012 Settling CW Bond Claims**:  Each holder of a 2012 CW Bond Claim shall receive a Ballot/Election Form and, in connection with such solicitation, shall be entitled to elect to receive the 2012 CW Bond Settlement and receive (a) its Pro Rata Share of the 2012 Settling CW Bond Distribution or (b) to the extent such holder of a 2012 CW Bond Claim is a Puerto Rico Investor, the 2012 Settling CW Bond Distribution, as modified by its Pro Rata Share of the 2012 Taxable Bond Distribution.  In the event that a holder of a 2012 CW Bond Claim elects, deemed or otherwise, to receive the 2012 CW Bond Settlement, such Claim shall be deemed to be a 2012 Settling CW Bond Claim and, in full satisfaction, release and exchange of its Allowed 2012 Settling Bond Claim, the holder thereof shall (a) have relinquished its rights to receive distributions in accordance with Class 12 of the Plan, (b) be deemed to have released and discharged any and all claims and causes of action asserted, or which could have been asserted, in the Debt Limit Objections, the Late Vintage Litigation and the Avoidance Actions, and (c) be deemed to have accepted the Plan as a holder in Class 14 of the Plan; provided, however, that, in addition to the foregoing, in the event that the holder of an Allowed 2012 Settling CW Bond Claim is a Puerto Rico Investor, such holder shall be entitled to a supplemental election to receive the 2012 Taxable Bond Distribution and, upon such affirmative election, be deemed to have accepted the Plan as a holder in Class 15 of the Plan; and, provided, further, that, in the event that a holder of a 2012 CW Bond Claim elects not to accept the 2012 CW Bond Settlement, such holder shall be a participant in the Late Vintage Litigation and, on the Effective Date, a distribution equal to the amount of such holder's Pro Rata Share of the Vintage CW Bond Distribution, including, without limitation, such holder's Pro Rata Share of Excess Cash, Settlement Savings and Litigation Trust Interests, shall be placed in the Late Vintage Reserve as if such Claim had been an Allowed Vintage CW Bond Claim as of the Effective Date, pending entry of a final, non-appealable order resolving or settling the Late Vintage Litigation.

## ARTICLE XVII

## PROVISIONS FOR TREATMENT FOR 2012
## CW BOND CLAIMS (INSURED) (CLASS 13)

17.1   **Treatment of 2012 CW Bond Claims (Insured)**:  On the Effective Date, subject to the Bond Recovery Cap, each holder of an Allowed 2012 CW Bond Claim (Insured) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 CW Bond Claim (Insured), such holder's Pro Rata Share of the Vintage CW Bond Distribution, consisting of (a) New Bonds, (b) Excess Cash, (c) Settlement Savings and (d) Litigation Trust Interests.  For the avoidance of doubt, and to the extent that any holder of a 2012 CW Bond Claim (Insured) elects not to accept the 2012 CW Bond Settlement and is therefore deemed to be a participant in the Late Vintage Litigation, including, without limitation, the Debt Limit Objections and the CW Recovery Actions, and such Late Vintage Litigation determines, by entry of a final, non-applicable order, that such 2012 CW Bond Claim (Insured) does not have priority over CW General Unsecured Claims, such 2012 CW Bond Claim (Insured) shall be treated on a *pari passu* basis with Allowed CW General Unsecured Claims and the holder of

such 2012 CW Bond Claim (Insured) shall receive its Pro Rata Share of distributions with respect thereto from the CW GUC Pool.

## ARTICLE XVIII

### PROVISIONS FOR TREATMENT FOR 2012 SETTLING CW BOND CLAIMS (CLASS 14)

18.1 **Treatment of 2012 Settling CW Bond Claims**: On the Effective Date, each holder of an Allowed 2012 Settling CW Bond Claim shall be (a) entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 Settling CW Bond Claim, such holder's Pro Rata Share of the 2012 Settling CW Bond Settlement, which is comprised of (i) CW Cash and (ii) New Bonds and (b) pursuant to the Confirmation Order, deemed to be released from all claims and causes of action set forth in the CW Recovery Actions.

## ARTICLE XIX

### PROVISIONS FOR TREATMENT OF 2012 CW BOND CLAIMS (TAXABLE ELECTION) (CLASS 15)

19.1 **Provisions for Treatment of 2012 CW Bond Claims (Taxable Election)**: On the Effective Date, each holder of an Allowed 2012 CW Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 CW Bond Claim (Taxable Election), its Pro Rata Share of the Vintage CW Bond Distribution, as modified by its Pro Rata Share of the 2012 Taxable Bond Distribution.

## ARTICLE XX

### PROVISIONS FOR TREATMENT OF 2012 CW GUARANTEE BOND CLAIMS (CLASS 16)

20.1 **Treatment of 2012 CW Guarantee Bond Claims**: On the Effective Date, and subject to the right of election set forth in Section 20.2 hereof, the Late Vintage Litigation, including, without limitation, the Debt Limit Objections and the CW Recovery Actions, and the Bond Recovery Cap on account of such holder's Allowed PBA Bond Claim and Allowed 2012 CW Guarantee Bond Claim, each holder of an Allowed 2012 CW Guarantee Bond claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 CW Guarantee Bond Claim, such holder's Pro Rata Share of the Vintage CW Guarantee Bond Distribution, consisting of (a) New Bonds, (b) Excess Cash, (c) Settlement Saving and (d) Litigation Trust Interests. For the avoidance of doubt, and to the extent that any holder of a 2012 CW Guarantee Bond Claim elects not to accept the 2012 CW Settling Bond Settlement and is therefore deemed to be a participant in the Late Vintage Litigation, including, without limitation, the Debt Limit Objections and the CW Recovery Actions, and such Late Vintage Litigation determines, by entry of a final, non-applicable order, that such 2012 CW Guarantee Bond Claim does not have priority over CW General Unsecured Claims, such 2012 CW Guarantee Bond Claim shall be treated on a *pari passu* basis with Allowed CW General

Unsecured Claims and the holder of such 2012 CW Guarantee Bond Claim shall receive its Pro Rata Share of distributions with respect thereto from the CW GUC Pool.

20.2     **Rights of Election to 2012 Settling CW Guarantee Bond Claims**:  Each holder of a 2012 CW Guarantee Bond Claim shall receive a Ballot/Election Form and, in connection with such solicitation, shall be entitled to elect to receive the 2012 CW Guarantee Bond Settlement and receive (a) its pro rata share of the 2012 Settling CW Guarantee Bond Distribution or (b) to the extent such holder of 2012 Settling CW Guarantee Bond Claim is a Puerto Rico Investor, the 2012 Settling CW Guarantee Bond Distribution, as modified by its Pro Rata Share of the 2012 Taxable Bond Distribution.  In the event that a holder of a 2012 CW Guarantee Bond Claim elects, deemed or otherwise, to receive the 2012 CW Guarantee Settlement, such claim shall be deemed to be a 2012 Settling CW Guarantee Bond Claim and, in full satisfaction, release and exchange of its Allowed Settling 2012 CW Guarantee Bond Claim, the holder thereof shall (a) have relinquished its rights to receive distributions in accordance with Class 16 of the Plan, (b) be deemed to have released and discharged any and all claims and causes of action asserted, or which could have been asserted, in the Debt Limit Objections, the Late Vintage Litigation and the Avoidance Actions, and (c) be deemed to have accepted the Plan as a holder in Class 17 of the Plan; provided, however, that, in addition to the foregoing, in the event that the holder of an Allowed 2012 Settling CW Guarantee Bond Claim is a Puerto Rico Investor, such holder shall be entitled to a supplemental election to receive the 2012 Taxable Bond Distribution and, upon such affirmative election, be deemed to have accepted the Plan as a holder in Class 18 of the Plan; and, provided, further, that, in the event that a holder of a 2012 CW Guarantee Bond Claim elects not to accept the 2012 CW Guarantee Bond Settlement, such holder shall be a participant in the Late Vintage Litigation and, on the Effective Date, a distribution equal to the amount of such holder's pro rata share of the Vintage CW Guarantee Bond Distribution, including, without limitation, such holder's pro rata share of Excess Cash and Settlement Savings, shall be placed in the Late Vintage Reserve as if such Claim had been an Allowed Vintage CW Guarantee Bond Claim as of the Effective Date, pending entry of a final, non-appealable order resolving or settling the Late Vintage Litigation.

## ARTICLE XXI

## PROVISIONS FOR TREATMENT OF 2012 SETTLING CW GUARANTEE BOND CLAIMS (CLASS 17)

21.1     **Treatment of 2012 Settling CW Guarantee Bond Claims:**  On the Effective Date, each holder of an Allowed 2012 Settling CW Guarantee Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 Settling CW Guarantee Bond Claim, such holder's Pro Rata Share of the 2012 CW Guarantee Bond Settlement, consisting of (i) CW Cash and (ii) New Bonds.

**ARTICLE XXII**

**PROVISIONS FOR TREATMENT OF 2012 CW GUARANTEE
BOND CLAIMS (TAXABLE ELECTION) (CLASS 18)**

22.1    **Treatment of 2012 Settling CW Bond Claims (Taxable Election)**:  On the
Effective Date, each holder of an Allowed 2012 Settling CW Bond Claim (Taxable Election)
shall be (a) entitled to receive, in full consideration, satisfaction, release and exchange of such
holder's Allowed 2012 Settling CW Bond Claim (Taxable Election), such holder's Pro Rata
Share of the 2012 Settling CW Bond Settlement, which is comprised of (i) CW Cash and (ii)
New Bonds and (b) pursuant to the Confirmation Order, deemed to be released from all claims
and causes of action set forth in the CW Recovery Actions.

**ARTICLE XXIII**

**PROVISIONS FOR TREATMENT OF 2014 CW BOND CLAIMS (CLASS 19)**

23.1    **Treatment of 2014 CW Bond Claims**:  On the Effective Date, and subject to the
rights of election set forth in Section 23.2 hereof, the Late Vintage Litigation, including, without
limitation, the Debt Limit Objections and the CW Recovery Actions, and the Bond Recovery
Cap, each holder of an Allowed 2014 CW Bond Claim shall be entitled to receive, in full
consideration, satisfaction, release and exchange of such holder's Allowed 2014 CW Bond
Claim, such holder's Pro Rata Share of the Vintage CW Bond Distribution, consisting of (a)
New Bonds, (b) Excess Cash, (c) Settlement Savings and (d) Litigation Trust Interests.  For the
avoidance of doubt, and to the extent that any holder of a 2014 CW Bond Claim elects not to
accept the 2014 CW Bond Settlement and is therefore deemed to be a participant in the Late
Vintage Litigation, including, without limitation, the Debt Limit Objections and the CW
Recovery Actions, and such Late Vintage Litigation determines, by entry of a final, non-
applicable order, that such 2014 CW Bond Claim does not have priority over CW General
Unsecured Claims, such 2014 CW Bond Claim shall be treated on a *pari passu* basis with
Allowed CW General Unsecured Claims and the holder of such 2014 CW Bond Claim shall
receive its Pro Rata Share of distributions with respect thereto from the CW GUC Pool.

23.2    **Rights of Election to 2014 Settling CW Bond Claims**:  Each holder of a 2014
CW Guarantee Bond Claim shall receive a Ballot/Election Form and, in connection with such
solicitation, shall be entitled to elect to receive the 2014 CW Bond Settlement and receive (a) its
pro rata share of the 2014 Settling CW Bond Distribution or (b) to the extent such holder of 2014
Settling CW Bond Claim is a Puerto Rico Investor, the 2014 Settling CW Bond Distribution, as
modified by its Pro Rata Share of the 2014 Taxable Bond Distribution.  In the event that a holder
of a 2014 CW Bond Claim elects, deemed or otherwise, to receive the 2014 CW Settlement, such
claim shall be deemed to be a 2014 Settling CW Bond Claim and, in full satisfaction, release and
exchange of its Allowed Settling 2014 CW Bond Claim, the holder thereof shall (a) have
relinquished its rights to receive distributions in accordance with Class 19 of the Plan, (b) be
deemed to have released and discharged any and all claims and causes of action asserted, or
which could have been asserted, in the Debt Limit Objections, the Late Vintage Litigation and
the Avoidance Actions, and (c) be deemed to have accepted the Plan as a holder in Class 20 of
the Plan; provided, however, that, in addition to the foregoing, in the event that the holder of an

51

Allowed 2014 Settling CW Bond Claim is a Puerto Rico Investor, such holder shall be entitled to a supplemental election to receive the 2014 Taxable Bond Distribution and, upon such affirmative election, be deemed to have accepted the Plan as a holder in Class 21 of the Plan; and, provided, further, that, in the event that a holder of a 2014 CW Bond Claim elects not to accept the 2014 CW Bond Settlement, such holder shall be a participant in the Late Vintage Litigation and, on the Effective Date, a distribution equal to the amount of such holder's pro rata share of the 2014 CW Guarantee Bond Distribution, including, without limitation, such holder's pro rata share of Excess Cash and Settlement Savings, shall be placed in the Late Vintage Reserve as if such Claim had been an Allowed 2014 CW Guarantee Bond Claim as of the Effective Date, pending entry of a final, non-appealable order resolving or settling the Late Vintage Litigation.

## ARTICLE XXIV

## PROVISIONS FOR TREATMENT OF 2014
## SETTLING CW BOND CLAIMS (CLASS 20)

24.1   **Treatment of 2014 Settling CW Bond Claims**:  On the Effective Date, each holder of an Allowed 2014 Settling CW Bond Claim shall be (a) entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2014 Settling CW Bond Claim, such holder's Pro Rata Share of the 2014 Settling CW Bond Settlement, which is comprised of (i) CW Cash and (ii) New Bonds and (b) pursuant to the Confirmation Order, deemed to be released from all claims and causes of action set forth in the CW Recovery Actions.

## ARTICLE XXV

## PROVISIONS FOR TREATMENT OF 2014 CW BOND
## CLAIMS (TAXABLE ELECTION) (CLASS 21)

25.1   **Provisions for Treatment of 2014 CW Bond Claims (Taxable Election)**:  On the Effective Date, each holder of an Allowed 2014 CW Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2014 CW Bond Claim (Taxable Election), its Pro Rata Share of the Vintage CW Bond Distribution, as modified by its Pro Rata Share of the 2014 Taxable Bond Distribution.

## ARTICLE XXVI

## PROVISIONS FOR TREATMENT OF
## 2014 CW GUARANTEE BOND CLAIMS (CLASS 22)

26.1   **Treatment of 2014 CW Guarantee Bond Claims**:  On the Effective Date, and subject to the right of election set forth in Section 26.2 hereof, the Late Vintage Litigation, including, without limitation, the Debt Limit Objections and the CW Recovery Actions, and the Bond Recovery Cap, each holder of an Allowed 2014 CW Guarantee Bond claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2014 CW Guarantee Bond Claim, such holder's Pro Rata Share of the Vintage CW

Guarantee Bond Distribution, consisting of (a) New Bonds, (b) Excess Cash, (c) Settlement Savings and (d) Litigation Trust Interests.  For the avoidance of debt, and to the extent that any holder of a 2014 CW Guarantee Bond Claim elects not to accept the 2014 CW Guarantee Settlement and is therefore deemed to be a participant in the Late Vintage Litigation, including, without limitation, the Debt Limit Objections and the CW Recovery Actions, and such Late Vintage Litigation determines, by entry of a final, non-applicable order, that such 2014 CW Guarantee Bond Claim does not have priority over CW General Unsecured Claims, such 2014 CW Guarantee Bond Claim shall be treated on a *pari passu* basis with Allowed CW General Unsecured Claims and the holder of such 2012 CW Guarantee Bond Claim shall receive its Pro Rata Share of distributions with respect thereto from the CW GUC Pool.

26.2   **Rights of Election to 2014 Settling CW Guarantee Bond Claims**:  Each holder of a 2014 CW Guarantee Bond Claim shall receive a Ballot/Election Form and, in connection with such solicitation, shall be entitled to elect to receive the 2014 CW Guarantee Bond Settlement and receive (a) its Pro Rata Share of the 2014 Settling CW Guarantee Bond Distribution or (b) to the extent such holder of 2014 Settling CW Guarantee Bond Claim is a Puerto Rico Investor, the 2014 Settling CW Guarantee Bond Distribution, as modified by its Pro Rata Share of the 2014 Taxable Bond Distribution.  In the event that a holder of a 2014 CW Guarantee Bond Claim elects, deemed or otherwise, to receive the 2014 CW Guarantee Settlement, such claim shall be deemed to be a 2014 Settling CW Guarantee Bond Claim and, in full satisfaction, release and exchange of its Allowed Settling 2014 CW Guarantee Bond Claim, the holder thereof shall (a) have relinquished its rights to receive distributions in accordance with Class 22 of the Plan, (b) be deemed to have released and discharged any and all claims and causes of action asserted, or which could have been asserted, in the Debt Limit Objections, the Late Vintage Litigation and the Avoidance Actions, and (c) be deemed to have accepted the Plan as a holder in Class 23 of the Plan; provided, however, that, in addition to the foregoing, in the event that the holder of an Allowed 2014 Settling CW Guarantee Bond Claim is a Puerto Rico Investor, such holder shall be entitled to a supplemental election to receive the 2014 Taxable Bond Distribution and, upon such affirmative election, be deemed to have accepted the Plan as a holder in Class 24 of the Plan; and, provided, further, that, the event that a holder of a 2014 CW Guarantee Bond Claim elects not to accept the 2014 CW Guarantee Bond Settlement, such holder shall be a participant in the Late Vintage Litigation and, on the Effective Date, a distribution equal to the amount of such holder's pro rata share of the Vintage CW Guarantee Bond Distribution, including, without limitation, such holder's pro rata share of Excess Cash and Settlement Savings, shall be placed in the Late Vintage Reserve as if such Claim had been an Allowed 2014 CW Guarantee Bond Claim as of the Effective Date, pending entry of a final, non-appealable order resolving or settling the Late Vintage Litigation.

## ARTICLE XXVII

### PROVISIONS FOR TREATMENT OF 2014
### SETTLING CW GUARANTEE BOND CLAIMS (CLASS 23)

27.1   **Treatment of 2014 Settling CW Guarantee Bond Claims**:  On the Effective Date, each holder of an Allowed 2014 Settling CW Guarantee Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2014

Settling CW Guarantee Bond Claim, such holder's Pro Rata Share of the 2014 CW Guarantee Bond Settlement, consisting of (i) CW Cash and (ii) New Bonds.

## ARTICLE XXVIII

## PROVISIONS FOR TREATMENT OF 2014 CW GUARANTEE BOND CLAIMS (TAXABLE ELECTION) (CLASS 24)

28.1    **Treatment of 2014 Settling CW Bond Claims (Taxable Election)**:  On the Effective Date, each holder of an Allowed 2014 Settling CW Bond Claim (Taxable Election) shall be (a) entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2014 Settling CW Bond Claim (Taxable Election), such holder's Pro Rata Share of the 2014 Settling CW Bond Settlement, which is comprised of (i) CW Cash and (ii) New Bonds and (b) pursuant to the Confirmation Order, deemed to be released from all claims and causes of action set forth in the CW Recovery Actions.

## ARTICLE XXIX

## PROVISIONS FOR TREATMENT OF ACTIVE AND  RETIRED EMPLOYEE RETIREMENT BENEFITCLAIMS (CLASS 25A THROUGH 25E)

29.1    **Treatment of Retiree Claims (Class 25A):**

(a)    <u>Adjustment of Benefits</u>.  Each holder of an Allowed Retiree Claim shall be entitled to receive on account of such Allowed Retiree Claim its benefits as modified pursuant to the Monthly Benefit Modification, as set forth on Exhibit "I" hereto, subject to the Benefit Restoration and the Reduction Percentage as provided in the Plan.

(b)    <u>Preemption</u>.  All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, are preempted as inconsistent with PROMESA and shall be of no further force or effect.

29.2    **Treatment of Active ERS Participant Claims (Class 25B):**

(a)    <u>Adjustment of Benefits</u>.  Each holder of an Allowed Active ERS Participant Claim shall be entitled to receive on account of such Allowed Active ERS Participant Claim its benefits as modified pursuant to the Monthly Benefit Modification, subject to the Benefit Restoration and the Reduction Percentage as provided in the Plan.

(b)    <u>Preemption</u>:  All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, are preempted as inconsistent with PROMESA and shall be of no further force or effect.

### 29.3 **Treatment of Active JRS Participant Claims (Class 25C):**

(a) <u>Adjustment of Benefits</u>. Each holder of an Allowed JRS Participant Claim shall be entitled to receive on account of such Allowed Active JRS Participant Claim (i) its benefits that accrued as of May 4, 2017, as modified pursuant to the Monthly Benefit Modification, as set forth on Exhibit "J" hereto, subject to the Benefit Restoration and the Reduction Percentage as provided in the Plan; and (ii) such additional benefits for service on or after May 4, 2017, frozen as of the Effective Date so such Participant is no longer able to accrue pension benefits after such date. The pension benefit for service on or after the Effective Date will be imposed consistent with the terms and conditions set forth by the Oversight Board and imposed pursuant to the Plan, as set forth on the term sheets attached as Exhibits "I" and "J" hereto, as applicable, to such holder of an Allowed Active JRS Participant Claim, including the social security benefits defined therein.

(a) <u>Preemption</u>. All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, are preempted as inconsistent with PROMESA and shall be of no further force or effect.

### 29.4 **Treatment of Active TRS Participant Claims (Class 25D):**

(a) <u>Adjustment of Benefits</u>. Each holder of an Allowed Active TRS Participant Claim shall be entitled to receive on account of such Allowed Active TRS Participant Claim (i) its benefits that accrued as of May 4, 2017, as modified pursuant to the Monthly Benefit Modification, as set forth on Exhibit "K" hereto, subject to the Benefit Restoration and the Reduction Percentage as provided in the Plan; and (ii) such additional benefits for service on or after May 4, 2017, frozen as of the Effective Date so such Participant is no longer able to accrue pension benefits after such date. The pension benefit for service on or after the Effective Date will be imposed consistent with the terms and conditions set forth by the Oversight Board and imposed pursuant to the Plan, as set forth on the term sheets attached as Exhibits "I" and "K" hereto, as applicable, to such holder of an Allowed Active TRS Participant Claim, including the social security benefits defined therein.

(b) <u>Preemption</u>. All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, are preempted as inconsistent with PROMESA and shall be of no further force or effect.

### 29.5 **Treatment of System 2000 Participant Claims (Class 25E):**

(a) <u>System 2000 Benefits</u>: Except as set forth in Sections 29.2(b), 29.3(b) and 29.4(b) hereof, holders of Allowed System 2000 Participant Claims shall receive the amount of their contributions to these plans from 2000 through June 30, 2017, which amount shall be deposited into the defined contribution accounts established under Act 106-2017. If the total amount of contributions to these plans exceeds One Billion Three Hundred Sixty Million Dollars

($1,360,000,000.00), on the Effective Date, each holder of an Allowed System 2000 Participant Claim shall receive such amount based on such holder's total contributions to System 2000; provided, however, that, if total contributions described in this Section 29.5(a) exceed the One Billion Three Hundred Sixty Million Dollars ($1,360,000,000.00) limit, but are less than or equal to One Billion Five Hundred Million Dollars ($1,500,000,000.00), the difference thereof shall be paid on the later to occur of (i) the Effective Date and (ii) December 31, 2020.  If the total amount of contributions described in this Section 29.5(a) exceeds One Billion Five Hundred Million Dollars ($1,500,000,000.00), the Oversight Board and AFSCME shall develop a payment plan mutually acceptable to both parties to pay out the remaining balance of the contributions (for the avoidance of doubt, the amount in excess of One Billion Five Hundred Million Dollars ($1,500,000,000.00)) described in this Section 29.5(a).  In all events, the full amount of contributions described in this Section 29.5(a) will be paid to all holders of Allowed System 2000 Participant Claims not later than December 31, 2025.  As of the Effective Date, holders of Allowed System 2000 Participant with System 2000 contributions from 2000 through June 30, 2017 who are ineligible for benefits under Act 1 and Act 447 will no longer be entitled to future system administered benefits, such as death and disability benefits.  Holders of Allowed System 2000 Participant Claims who have already retired and converted their contributions to a system paid annuity are not eligible for the treatment described in this Section 29.5(a) and shall not receive a cash payment, but will be subject to the pension reduction applicable to other Participants in accordance with the terms and provisions of Section 29.1 of the Plan.

(b)    Preemption:  All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, are preempted as inconsistent with PROMESA and shall be of no further force or effect.

## ARTICLE XXX

## PROVISIONS FOR TREATMENT OF
## AFSCME EMPLOYEE  CLAIMS (CLASS 26)

### 30.1    **Treatment of AFSCME Employee Claims**:

(a)    Modified AFSCME Collective Bargaining Agreements:  The existing collective bargaining agreements between the Commonwealth, its applicable agencies and instrumentalities, on the one hand, and AFSCME and its related union affiliates, on the other hand, shall be deemed modified and entered into in accordance with the terms and conditions agreed to by AFSCME and the Oversight Board, as set forth on Exhibit "L" hereto.  Without limiting the foregoing, such modifications shall include, among other matters, (a) a term of five (5) years, deemed to have commenced July 1, 2019, (b) provisions regarding layoffs and downsizing, (c) terms regarding System 2000 and (d) provisions for sharing Excess Cash Surplus.  Each holder of an Allowed AFSCME Employee Claim shall be entitled to receive the treatment set forth in Sections 30.1(a), (b), (c) and (d) hereof in full consideration, satisfaction, release, and exchange of such holder's Allowed AFSCME Employee Claim resulting from such modification.  The Commonwealth shall have no obligation to bargain with AFSCME over terms of a new or modified collective bargaining agreements throughout the term of such

modified collective bargaining agreements and the failure to bargain during such period shall not constitute, nor shall it be construed to be, an unfair labor practice under any Puerto Rico law.  No adjudicative forum shall take into consideration prior practices or bargaining history when interpreting the terms of the modified collective bargaining agreements set forth on Exhibit "I" hereto.

(b)      Additional AFSCME Distribution.  On or as soon as reasonably practicable after the Effective Date, AFSCME and its member employees, as applicable, shall receive the additional payments and distributions as set forth on Appendix II to Exhibit "L" hereto.

(c)      Pre-Petition Arbitration and Grievance Claims.  Any distributions on account of Claims for liquidated damage amounts resulting from the disposition of pre-petition actions brought pursuant to the grievance and arbitration procedures arising under the collective bargaining agreements between the Commonwealth and AFSCME shall be made by the Commonwealth to the claimant in each instance on such date that is the later of (i) thirty (30) days after such disposition and (ii) sixty (60) days after the Effective Date.

(d)      Preemption.  All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified herein, are preempted as inconsistent with PROMESA and shall be of no further force or effect.

## ARTICLE XXXI

## PROVISIONS FOR TREATMENT OF CW
## GENERAL UNSECURED  CLAIMS (CLASS 27)

### 31.1   **Treatment of CW General Unsecured Claims:**

(a)      Treatment of CW General Unsecured Claims.  Subject to the election set forth in Section 31.1(b) hereof, each holder of an Allowed CW General Unsecured Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed CW General Unsecured Claim, such holder's Pro Rata Share of the CW GUC Pool; provided, however, that, in the event that (i) one or more of the classes of CW/HTA Constitutional Claims, CW/Convention Constitutional Claims, CW/PRIFA Rum Tax Constitutional Claims, or CW/MBA Constitutional Claims votes to reject the Plan in accordance with the provisions of Section 1126 of the Bankruptcy Code or (ii) any holder of a 2012 CW Bond Claim, a 2012 CW Bond Claim (Insured), a 2012 CW Guarantee Bond Claim, 2014 CW Bond Claim, or a 2014 CW Guarantee Bond Claim elects not to accept the compromises and settlements set forth in the Plan and, in connection therewith, a final non-appealable order is entered that any such Claim does not have priority over CW General Unsecured Claims, such holder shall be entitled to receive such holder's Pro Rata Share of the CW GUC Pool.

(b)      Election to be Treated as Convenience Claim.  Notwithstanding the provisions of Section 31.1(a) of the Plan, any holder of an Allowed CW General Unsecured Claim, other than a CW General Unsecured Claim that is a component of a larger CW General

Unsecured Claim, portions of which may be held by such or any other holder of an Allowed Claim, may elect to be treated as the holder of an Allowed Convenience Claim. Such election must be made on Ballot and be received by the Debtors on or prior to the Ballot Date. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is expressly waived, in writing, by the Debtors; provided, however, that, under no circumstances may such waiver by the Debtors occur on or after the Effective Date.

31.2  **Limitation on Recovery:**  Notwithstanding anything contained herein to the contrary, in the event that (a) Allowed CW General Unsecured Claim have been paid in full or (b) the distributable value in the CW GUC Pool exceeds Seven Hundred Fifty Million Dollars ($750,000,000.00), then such excess value shall be redistributed, on a pro rata basis, to the benefit of holders of Allowed CW/Convention Constitutional Claims, Allowed CW/HTA Constitutional Claims, Allowed CW/PRIFA Rum Tax Constitutional Claim, and Allowed CW/MBA Constitutional Claims.

## ARTICLE XXXII

### PROVISIONS FOR TREATMENT OF
### CW/HTA CONSTITUTIONAL CLAIMS (CLASS 28)

32.1  **Treatment of CW/HTA Constitutional Claims**:  On the Effective Date, each holder of an Allowed CW/HTA Constitutional Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed CW/HTA Constitutional Claim, such holder's Pro Rata Share of the CW/HTA Constitutional Claim Distribution, provided, however, that, in the event that Class 28 votes to reject the Plan in accordance with provisions of section 1126 of the Bankruptcy Code, each holder of an Allowed CW/HTA Contract Claim shall be entitled to receive such holder's Pro Rata Share of the CW GUC Pool.

## ARTICLE XXXIII

### PROVISIONS FOR TREATMENT OF
### CW/CONVENTION CONSTITUTIONAL CLAIMS (CLASS 29)

33.1  **Treatment of CW/Convention Constitutional Claims**:  On the Effective Date, the holder of an Allowed CW/Convention Constitutional Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed CW/Convention Constitutional Claim, such holder's Pro Rata Share of the CW/Convention Constitutional Claim Distribution; provided, however, that, in the event that Class 29 votes to reject the Plan in accordance with provisions of section 1126 of the Bankruptcy Code, each holder of an Allowed CW/Convention Constitutional Claim shall be entitled to receive such holder's Pro Rata Share of the CW GUC Pool.

## ARTICLE XXXIV

### PROVISIONS FOR TREATMENT OF
### CW/PRIFA RUM TAX CONSTITUTIONAL CLAIMS (CLASS 30)

34.1    **Treatment of CW/PRIFA Rum Tax Contract Claims:**  On the Effective Date, each holder of an Allowed PRIFA Rum Tax Constitutional Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed PRIFA Rum Tax Constitutional Claim, such holder's Pro Rata Share of the CW/PRIFA Rum Tax Constitutional Claim Distribution; provided, however, that, in the event that Class 30 votes to reject the Plan in accordance with the provisions of section 1126 of the Bankruptcy Code, each holder of an Allowed PRIFA Rum Tax Constitutional Claim shall be entitled to receive such holder's Pro Rata Share of the CW GUC Pool.

## ARTICLE XXXV

### PROVISIONS FOR TREATMENT OF
### CW/MBA CONSTITUTIONAL CLAIMS (CLASS 31)

35.1    **Treatment of CW/MBA Constitutional Claims:**  On the Effective Date, each holder of an Allowed CW/MBA Constitutional Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed CW/MBA Constitutional Claim, such holders' Pro Rata Share of the CW/MBA Constitutional Claims Distribution; provided, however, that, in the event that Class 31 votes to reject the Plan in accordance with the provisions of section 1126 of the Bankruptcy Code, each holder of an Allowed CW/MBA Constitutional Claim shall be entitled to receive such holder's Pro Rata Share of the CW GUC Pool.

## ARTICLE XXXVI

### PROVISIONS FOR TREATMENT OF
### CWAPPROPRIATIONS CLAIMS (CLASS 32)

36.1    **Treatment of CW Appropriations Claims:**  CW Appropriations Claims shall not receive a distribution pursuant to the Plan and each holder of a CW Appropriations Claim shall be deemed to have rejected the Plan.

## ARTICLE XXXVII

### PROVISIONS FOR TREATMENT OF
### CW/510(B) SUBORDINATED CLAIMS (CLASS 33)

37.1    **Treatment of CW/510(B) Subordinated Claims**:  CW/510(B) Subordinated Claims shall not receive a distribution pursuant to the Plan and each holder of an Allowed CW/510(b) Subordinated Claim shall be deemed to have rejected the Plan.

## ARTICLE XXXVIII

## PROVISIONS FOR TREATMENT OF
## ERS BOND CLAIMS (CLASS 34)

38.1 **Treatment of ERS Bond Claims**:  On the Effective Date, and subject to the election set forth in Section 37.2 of the Plan, each holder of an Allowed ERS Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed ERS Bond Claim, such holder's Pro Rata Share of ERS Bond Collateral Cash.

38.2 **Rights of Election to Settling ERS Bond Claims**:  Each holder of an ERS Bond Claim shall receive a Ballot/Election Form and in connection with such solicitation shall be entitled to elect to receive the ERS Bond Settlement and receive (a) the ERS Bond Settlement Distribution or (b) to the extent such holder of an ERS Bond Claim is a Puerto Rico Investor, the ERS Bond Settlement Distribution, as modified by its Pro Rata Share of the ERS Taxable Bond Distribution, and shall be bound to the ERS Bond Settlement; provided, however, that, in addition to the foregoing, in the event that the holder of an Allowed Settling ERS Bond Claim is a Puerto Rico Investor, such holder shall be entitled to a supplemental election to receive the ERS Taxable Bond Distribution and, upon such affirmative election, shall be deemed to have accepted the Plan as a holder in Class 35 of the Plan; and, provided, further, that, in the event that a holder of an ERS Bond Claim elects not to accept the ERS Bond Settlement, such holder shall be a participant in the ERS Litigation and, on the Effective Date, a distribution equal to the amount of such holder's Pro Rata Share of the ERS Bond Collateral Cash shall be placed in the ERS Reserve as if such Claim had been an Allowed ERS Bond Claim as of the Effective Date, pending entry of a final, non-appealable order resolving or settling the ERS Litigation.

## ARTICLE XXXIX

## PROVISIONS FOR TREATMENT OF
## SETTLING ERS BOND CLAIMS (CLASS 35)

39.1 **Treatment of Settling ERS Bond Claims**:  On the Effective Date, each holder of an Allowed Settling ERS Bond Claim shall be (a) entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Settling ERS Bond Claim, such holder's ERS Bond Settlement Distribution, which is comprised of (i) ERS Bond Collateral Cash and (ii) New Bonds and (b) pursuant to the Confirmation Order, and, in full consideration, satisfaction, release and exchange of the Allowed Settling ERS Bond Claim, (i) deemed to have released and discharged the Commonwealth and the United States of America from any and all claims and causes of action asserted, or which could have been asserted, in the ERS Takings Action and the ERS Litigation, and (ii) deemed to be released from all claims and causes of action set forth in the ERS Recovery Actions.

## ARTICLE XL

## PROVISIONS FOR TREATMENT OF ERS BOND
## CLAIMS (TAXABLE ELECTION) (CLASS 36)

40.1   **Treatment of ERS Bond Claims (Taxable Election)**:  On the Effective Date, each holder of an Allowed ERS Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed ERS Bond Claim (Taxable Election), the ERS Bond Settlement Distribution, as modified by its Pro Rata Share of ERS Taxable Bond Distribution.

## ARTICLE XLI

## PROVISIONS FOR TREATMENT OF
## ERS GENERAL UNSECURED CLAIMS (CLASS 37)

41.1   **Treatment of ERS General Unsecured Claims:**

(a)   Treatment of ERS General Unsecured Claims.  On the Effective Date, and subject to the election set forth in Section 41.1(b) hereof, each holder of an Allowed ERS General Unsecured Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed ERS General Unsecured Claim, such holder's Pro Rata Share of the ERS GUC Pool.

(b)   Allowed Claims of Ten Thousand Dollars ($10,000.00) or More/Election to be Treated as a Convenience Claim.  Notwithstanding the provisions of Section 41.1(a) of the Plan, any holder of an Allowed ERS General Unsecured Claim, other than an ERS General Unsecured Claim that is a component of a larger General Unsecured Claim, portions of which may be held by such or any other holder of an Allowed Claim, whose Allowed ERS General Unsecured Claim is more than Ten Thousand Dollars ($10,000.00), and who elects to reduce the amount of such Allowed ERS General Unsecured Claim to Ten Thousand Dollars ($10,000.00), or, if a holder of multiple Allowed ERS General Unsecured Claims, elects to reduce the amount of such multiple Allowed ERS General Unsecured Claims to an aggregate amount of Twenty Thousand Dollars ($20,000.00), shall, at such holder's option, be entitled to receive, based on such Allowed ERS General Unsecured Claim as so reduced, distributions pursuant to Section 43.1 hereof.  Such election must be made on Ballot/Election Form and be received by the Debtors on or prior to the Ballot Date.  Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is expressly waived, in writing, by the Debtors; provided, however, that, under no circumstances may such waiver by the Debtors occur on or after the Effective Date.

41.2   **Limitation on Recovery:**  Notwithstanding anything contained herein to the contrary, including, without limitation, the distributions to be made to holder of an Allowed ERS General Unsecured Claim in accordance with the provisions of Section 41.1 hereof, in the event that the sum of the distributions of Cash and Cash received on account of Avoidance Actions net recoveries are equal to or in excess of one hundred percent (100%) of such holder's Allowed ERS General Unsecured Claim, the Avoidance Actions Trust Interests allocable to the ERS GUC

Pool and Cash otherwise distributable to such holder on account of net recoveries from the Avoidance Actions Trust shall be deemed redistributed, on a pro rata basis, to the benefit of holders of Allowed CW/Convention Constitutional Claims, Allowed CW/HTA Constructional Claims Allowed CW/PRIFA Rum Tax Constitutional Claims and Allowed CW/MBA Constitutional Claims.

## ARTICLE XLII

## PROVISIONS FOR TREATMENT OF
## GRACIA GRACIA CLAIMS (CLASS 38)

42.1 **Treatment of Gracia Gracia Claims**: On the Effective Date, the Gracia Gracia Settlement shall be deemed assumed and (a) the members of the class certified in the Gracia Gracia CW Action and the Gracia Gracia Federal Action and the counsel to such classes shall be entitled to receive funds in accordance with the terms and provisions of the Gracia Gracia Settlement and (b) pursuant to the Confirmation Order, all pending motions, applications, litigations and appeals with respect to the Gracia Gracia CW Action and the Gracia Gracia Federal Action shall be deemed withdrawn with prejudice.

## ARTICLE XLIII

## PROVISIONS FOR TREATMENT OF
## CONVENIENCE CLAIMS (CLASS 39)

43.1 **Treatment of Convenience Claims**: On the later of the Effective Date and the date such Allowed Convenience Claim becomes an Allowed Claim, or as soon thereafter is probable, the Disbursing Agent shall pay to each holder of an Allowed Convenience Claim, in Cash, the full amount of such Allowed Convenience Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Convenience Claim.

## ARTICLE XLIV

## PROVISIONS REGARDING NEW BONDS AND
## ADDITIONAL INDEBTEDNESS

44.1 **Issuance and Distribution of the New Bonds**: On the Effective Date, Reorganized Commonwealth shall issue the New Bonds consisting of CIBs, as more particularly described herein. The maturities, interest rates and amortization schedules for the New Bonds are annexed hereto as Exhibit "M". All debt service on the New Bonds which is not paid when due, whether at or prior to final scheduled maturity, shall remain due and outstanding until paid in full and shall be paid. Interest shall accrue on such overdue debt service at the regular coupon rate, compounding semiannually, until the applicable New Bonds are paid or satisfied in full in accordance with their terms. Interest on the New Bonds shall be calculated on a 30/360 basis. To the extent the Government Parties, each acting in its sole and absolute discretion, determine to apply for ratings on the New Bonds, the Government Parties shall use their commercially reasonable best efforts to obtain ratings on the New Bonds, including promptly responding in good faith to documentary or other requests, as soon as reasonably practicable as determined

solely by the Government Parties, following consultation with a designee of the PSA Creditors, including based upon the Government Parties' judgment with respect to expected benefits. After the Government Parties determine which rating agencies to apply for ratings from, the Government Parties shall use their commercially reasonable best efforts to obtain the best possible ratings. Notwithstanding anything contained in the Plan to the contrary, to the extent that Taxable New Bonds are issued, such Taxable New Bonds shall be distributed to holders of Allowed Claims in the following order of priority: (1) first, to holders of Allowed PBA Bonds (Taxable Election), Allowed Vintage CW Bond Claims (Taxable Election), Allowed Vintage CW Guarantee Bond Claims (Taxable Election), Allowed 2012 CW Bond Claims (Taxable Election), Allowed 2012 CW Guarantee Bond Claims (Taxable Election), Allowed 2014 CW Bond Claims (Taxable Election), Allowed 2014 CW Guarantee Bond Claims (Taxable Election), and Allowed ERS Bond Claims (Taxable Election); (2) second, pro rata to holders of Allowed ERS Bond Claims and Allowed Settling ERS Bond Claims; (3) third, pro rata to holders of Allowed PBA Bond Claims arising from or related to PBA Bonds associated with the federal reimbursement or subsidization of interest payments made in connection therewith; and (4) fourth, pro rata to all other holders of Allowed Claims and recipients of New Bonds.

      (a)    **New Bonds:** Subject to any adjustments provided for herein, the New Bonds shall have the original principal amount, interest rate and maturity date as follows: (a) One Billion Two Hundred Thirty Five Million Seven Hundred Five Thousand Dollars ($1,235,705,000.00), four and five tenths percent (4.500%), and July 1, 2021; (b) Eight Hundred Thirty-Two Million Six Hundred Seventy Thousand Dollars ($832,670,000.00), four and six hundred twenty-five one thousandths percent (4.625%), and July 1, 2023; (c) Eight Hundred Thirty-One Million Five Hundred Thirty-Five Thousand Dollars ($831,535,000.00), four and seventy-five one hundredths percent (4.750%), and July 1, 2025; (d) Eight Hundred Twenty-Five Million Eight Hundred Forty-Five Thousand Dollars ($825,845,000.00), four and eight hundred seventy-five one thousandths percent (4.875%), and July 1, 2027; (e) Eight Hundred Fourteen Million Five Hundred Ninety Thousand Dollars ($814,590,000.00), five percent (5.000%) and July 1, 2029; (f) Seven Hundred Ninety-Six Million Five Hundred Ninety-Five Thousand Dollars ($796,595,000.00), five and one hundred twenty-five one thousandths percent (5.125%), and July 1, 2031; (g) Seven Hundred Seventy Million Four Hundred Forty-Five Thousand Dollars ($770,445,000.00), five and twenty-five one hundredths percent (5.250%), and July 1, 2033; (h) One Billion Seventy-Eight Million Three Hundred Thirty-Five Thousand Dollars ($1,078,335,000.00), five and one-half percent (5.500%), and July 1, 2039; (i) One Billion One Hundred Nineteen Million Forty Thousand Dollars ($1,119,040,000.00), five and six hundred  twenty-five one thousandths percent (5.625%), and July 1, 2044; (j) Two Billion Twenty-Five Million Ninety Thousand Dollars ($2,025,090,000.00), five and eight hundred seventy-five one thousandths percent (5.875%), and July 1, 2049; and (k) One Billion Four Hundred Forty-Seven Million Four Hundred Sixty Thousand Dollars ($1,447,460,000.00), seven percent (7.000%), and July 1, 2041. New Bonds shall not carry any default rate of interest, provided that interest shall accrue on all overdue debt service at the regular coupon rate, compounding semi-annually, until paid or satisfied in full in accordance with their terms.

      (b)    **Deemed Issuance Date:** Notwithstanding the timing of the Effective Date, interest on the New Bonds shall commence to accrue upon the earlier to occur of the

Effective Date and February 29, 2020, which date shall be designated as the "dated" date of the Debtors Bonds.

(c)     **Call Provisions/Optional Redemption:**  The New Bonds shall be callable, in whole or in part, in any order of maturity, at par plus accrued interest thereon, upon thirty (30) day's prior written notice as follows:

> 2021 CIBS: Non-Call
> 2023 CIBS: Non-Call
> 2025 CIBS: Non-Call
> 2027 CIBS: Non-Call
> 2029 CIBS: Non-Call
> 2031 CIBS: Par-Call Commencing FY2029 (10 year call)
> 2033 CIBS: Par-Call Commencing FY2029 (10 year call)
> 2039 CIBS: Par-Call Commencing FY2029 (10 year call)
> 2041 CIBS: Par-Call Commencing FY2029 (10 year call)
> 2044 CIBS: Par-Call Commencing FY2029 (10 year call)
> 2049 CIBS: Par-Call Commencing FY2029 (10 year call)

If less than all of the New Bonds of a particular series are called for prior redemption, Reorganized Commonwealth will select the maturity or maturities of such series of the New Bonds to be redeemed, and Depository Trust Company, on behalf of the trustee for the New Bonds, will select the New Bonds within the same maturity of such series to be redeemed by means of a random lottery.

(d)     **Deemed Annual Allocation:**  Pursuant to the New Bond Legislation, the Commonwealth shall covenant that, until the New Bonds have been paid or satisfied in full in accordance with their terms, each FY, the Commonwealth shall satisfy its obligations to holders of Allowed Claims in Classes 1, 2, and 6 through 24 herein, by allocating to the payment of principal and interest with respect to the New Bonds issued to such holders, first, the property taxes collected by the Commonwealth and second, a portion of the monies, if any arising from the operation of Article VI, Section 8 of the Puerto Rico Constitution.

(e)     **Monthly Deposits of Interest and Principal:**  Until the New Bonds have been paid or satisfied in full in accordance with their terms, on the first (1st) Business Day of each calendar month, the Reorganized Commonwealth shall deposit with the New Bond Trustee Cash in the aggregate amount equal to (i) one-sixth (1/6) of the Reorganized Commonwealth's semi-annual obligation with respect to the payment of interest to accrue on the New Bonds and (ii) one twelfth (1/12) of the Reorganized Commonwealth's annual obligation with respect to the payment of principal on the New Bonds.  Upon deposit thereof, the New Bond Trustee shall have a valid and perfected lien and security interest on such monies deposited.  Any failure by the Commonwealth to make the monthly deposits required herein shall constitute a breach of the New Bond Indenture subject to action being taken by the New Bond Trustee and the exclusive jurisdiction of the Title III Court in accordance with Section 61.1 hereof.

(f)     **Covenants for New Bonds:**  On the Effective Date, the Definitive Documents, including the New Bond Legislation, will contain customary terms, conditions and

covenants for similarly structured and supported bonds, including, without limitation, the following covenants with respect to New Bonds:

(i)      **Non-Impairment Covenant:**  Pursuant to the New Bond Legislation, the Commonwealth will covenant for the benefit of all initial and subsequent holders of New Bonds that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, the Reorganized Commonwealth will take no action that would (1) impair the monthly deposits of interest and principal referred to in Section 44.1(e) hereof,  (2) limit or alter the rights vested in the Debtors or Reorganized Debtors in accordance with the Plan and the Confirmation Order to fulfill the terms of any agreements with the holders of the New Bonds or (3) impair the rights and remedies of the holders of the New Bonds.

(ii)      **Tax-Exemption Covenant:**  Pursuant to the New Bond Legislation, reorganized Commonwealth will covenant for the benefit of all initial and subsequent holders of federally tax-exempt New Bonds that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, Reorganized Commonwealth will do and perform all acts and things permitted by law and reasonably necessary or desirable to assure that interest paid to the holders of any federally tax-exempt New Bonds shall be and remain excludable from gross income for federal income tax purposes.

(g)      **Debt Service Reserve Fund:**  The New Bonds shall not have a debt service reserve fund.

(h)      **Rights of Acceleration:**  The New Bonds shall not have rights of acceleration.

44.2      **Comprehensive Cap on All  Net Tax-Supported Debt:**  During the Debt Policy Period, in addition to the limit on the Commonwealth's incurrence of full faith and credit public debt set forth in the Commonwealth Constitution, the Commonwealth shall adopt and maintain a Debt Management Policy that includes a comprehensive cap on the Maximum Annual Debt Service payable on Net Tax-Supported Debt and the Commonwealth and its instrumentalities (including COFINA) shall not incur additional Net Tax-Supported Debt if the proposed issuance thereof would cause the ratio of (a) Maximum Annual Debt Service due in any future FY on all Net Tax-Supported Debt Outstanding to (b) the average of the annual Debt Policy Revenues during immediately preceding two (2) FYs, as certified by the Secretary of the Treasury of the Commonwealth, to exceed the limits specified in the comprehensive cap.  Such cap shall be developed by the Commonwealth in consultation with the Oversight Board and shall be published prior to the Effective Date.  Such Debt limitation shall be in addition to any other limitations imposed by law and nothing contained herein shall be construed as superseding, amending or repealing the additional Debt limitation imposed by the Commonwealth Constitution on public Debt and guarantees secured by the Commonwealth's good faith, credit and taxing power.  The Secretary of Treasury's certification of compliance with the Debt limit pursuant to this Section 44.2 shall be conclusive and binding absent manifest error; provided, however, that, in issuing such certification, with respect to the calculation of the revenues of public corporations included as Debt Policy Revenues, the Secretary of Treasury may rely on certifications from officers of such public corporations.

44.3    **Adoption and Maintenance of a Debt Management Policy:**   During the Debt Policy Period, the Commonwealth shall maintain and comply with a Debt Management Policy designed to ensure that certain past Debt issuance practices of the Commonwealth are not repeated.  While the Commonwealth may revise and update its Debt Management Policy to reflect changing bond market conditions and standards, the Debt Management Policy shall, unless otherwise approved, in writing, by the Oversight Board, at all times include the following principles and limitations:

(a)    **Long-Term Borrowing for Capital Improvements Only:**   To ensure the Commonwealth achieves and maintains a structurally balanced budget consistent with PROMESA's requirement that Puerto Rico return to fiscal responsibility, Tax-Supported Debt issued after the Effective Date may only be incurred to finance Capital Improvements, as determined by the issuer of such Debt and approved by AAFAF, or to refinance Tax-Supported Debt in accordance with term and provisions of Section 44.3(d) hereof.  Proceeds derived from any such issuance may be used to cover any and all direct and indirect expenses that, in the issuer's reasonable discretion, are necessary to carry out such Capital Improvements, including, without limitation, any and all expenses incurred in connection with the issuance itself.

(b)    **30-Year Maturity Limitation on All Tax-Supported Borrowing:**   No Tax-Supported Debt issued on or after the Effective date may have a legal final maturity later than thirty (30) years from the date of its original issuance, and no such Debt may be refinanced by any Debt extending such legal final maturity date beyond such original maturity date limitation; provided, however, that, the foregoing shall not apply to (a) Tax-Supported Debt issued to finance public housing facilities, subject to the limitation established in the Commonwealth Constitution or (b) Tax-Supported Debt issued to refinance Debt that was Outstanding prior to the Effective Date and had a legal maturity of more than thirty (30) years, subject to terms and provisions of Section 44.3(d) hereof.

(c)    **Required Principal Amortization:**  No Tax-Supported Debt may be issued unless its principal commences to amortize within two (2) years of its original issuance date, or such other period not to exceed five (5) years from original issuance as may be permitted under the U.S. Internal Revenue Code for tax exempt financings of new construction or reconstruction of Capital Improvements, and continues amortizing in each and every year until such Debt is no longer outstanding.

(d)    **Refinancings Permitted only for Cash Flow Savings in Every Fiscal Year:**  Refinancings of Tax-Supported Debt are permitted only if (i) there is no increase in the amount of bond principal and interest payable in any fiscal year and (ii) such refinancing produces positive present value savings, after taking into consideration transaction expenses, at the levels specified by the Commonwealth in its Debt Management Policies; provided, however, that, refinancings with dissavings in some FYs are permitted if the refinancing is completed in direct response to a hurricane, earthquake, pandemic, terrorism or other natural disaster and similar emergencies and the debt service due in any future FY does not increase by more than ten percent (10%) and the financing is required by its terms to be repaid in full within ten (10) years.

Notwithstanding the foregoing, nothing contained herein shall prohibit the Commonwealth from adopting, maintaining and complying with a Debt Management Policy that is more restrictive

66

than the requirements set forth above.  The Debt Management Policy shall be in addition to any other limitations imposed by law and nothing contained herein shall be construed as superseding, amending, or repealing any additional restrictions imposed by the Commonwealth Constitution.

## ARTICLE XLV

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

45.1    **Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases:**  Pursuant to sections 365(b)(2) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and subject to the provisions of Sections 45.5 and 45.7 hereof, all Executory Contracts and Unexpired Leases that exist between the Debtors and any Entity, and which have not expired by their own terms on or prior to the Confirmation Date, shall be deemed rejected by the Debtors as of the Effective Date, except for any Executory Contract and Unexpired Lease (a) of PBA and relating to the lease or sublease of PBA Property, (b) that has been assumed and assigned or rejected pursuant to an order of the Title III Court entered prior to the Effective Date, (c) that is specifically designated as a contract or lease to be assumed or assumed and assigned on the schedules to the Plan Supplement or (d) that has been registered with the Office of the Comptroller of Puerto Rico or has been approved by the Oversight Board or authorized by the Title III Court, unless specifically designated a contract to be rejected in the Plan Supplement; provided, however, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend such schedules to delete any Executory Contract and Unexpired Lease therefrom or add any Executory Contract and Unexpired Lease thereto, in which event such Executory Contract(s) and Unexpired Lease(s) shall be deemed to be, as the case may be, either rejected, assumed, or assumed and assigned as of the Effective Date.  the Debtors shall serve (y) notice of any Executory Contract and Unexpired Lease to be assumed or assumed and assigned through the operation of this Section 45.1, by including a schedule of such contracts and leases in the Plan Supplement and (z) notice of any Executory Contract and Unexpired Lease to be rejected through the operation of this Section 45.1, by serving a separate notice to the relevant counterparties to such agreements.  To the extent there are any amendments to such schedules, the Debtors shall provide notice of any such amendments to the parties to the Executory Contract and Unexpired Lease affected thereby.  The listing of a document on the schedules to the Plan Supplement or in any separate notice shall not constitute an admission by the Debtors that such document is an Executory Contract and Unexpired Lease or that the Debtors has any liability thereunder.

45.2    **Approval of Rejection or Assumption of Executory Contracts and Unexpired Leases:**  Entry of the Confirmation Order by the Title III Court shall constitute approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection, assumption, or assumption and assignment, as the case may be, of an Executory Contract and an Unexpired Lease pursuant to Section 45.1 of the Plan.

45.3    **Inclusiveness:**  Unless otherwise specified on the schedules to the Plan Supplement, each Executory Contract and Unexpired Lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner

affects such Executory Contract and Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed on such schedule.

45.4   **Cure of Defaults**:  Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to Section 45.1 of the Plan, the Debtors shall, pursuant to the provisions of section 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within at least twenty (20) days prior to the Confirmation Hearing, file with the Title III Court and serve by first class mail on each non-the Debtors party to such Executory Contracts and Unexpired Leases to be assumed pursuant to Section 46.1 of the Plan, a notice, which shall list the cure amount as to each executory contract or unexpired lease to be assumed or assumed and assigned.  The parties to such Executory Contracts and Unexpired Leases will have twenty (20) days from the date of service of such notice to file and serve any objection to the cure amounts listed by the Debtors.  If there are any objections filed, the Title III Court shall hold a hearing on a date to be set by the Title III Court. Notwithstanding Section 45.1 of the Plan, the Debtors shall retain its rights to reject any of its Executory Contracts and Unexpired Leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

45.5   **Insurance Policies:**  Subject to the terms and provisions of Section 45.7 hereof, each of the Debtors' Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan and to the extent executory in nature, on the Effective Date, the Debtors shall, first, deposit all insurance policies and any agreements, documents and instruments relating to coverage of all insured Bond Claims into the applicable Trusts and, second, be deemed to have rejected all such insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims; provided, however, that, such rejection shall not, and shall not be construed to, discharge or relieve any of Ambac, Assured, FGIC, National or Syncora with respect to their respective obligations to holders of Claims.

45.6   **Rejection Damage Claims**:  If the rejection of an Executory Contract and Unexpired Lease by the Debtors hereunder results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, or its properties or agents, successors, or assigns, including, without limitation, Reorganized Debtors, unless a proof of Claim is filed with the Title III Court and served upon attorneys for the Oversight Board and Reorganized Debtors, as the case may be, on or before thirty (30) days after the later to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Title III Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

45.7   **Indemnification and Reimbursement Obligations:**  For purposes of the Plan, (i) to the extent executory in nature, the obligations of the Debtors, including, without limitation, directors and officers insurance policies, to indemnify and reimburse its directors or officers that were directors or officers, respectively, on or prior to the Petition Date shall be deemed assumed as of the Effective Date and (ii) indemnification obligations of the Debtors arising from conduct of officers and directors during the period from and after the Petition Date shall be Administrative Expense Claims.

45.8   **Nonoccurrence of Effective Date:**  In the event that the Effective Date does not occur, the Title III Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

45.9   **Reservation of Rights:**  Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors, Reorganized Debtors or any other party that any such contract or lease is in fact an Executory Contract and Unexpired Lease or that the Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or Reorganized Debtors shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

45.10   **Collective Bargaining Agreements:**  Except as provided in Articles XXIX and XXVI hereof, none of the Debtors' collective bargaining agreements shall be treated as Executory Contracts and none shall be assumed or rejected or otherwise treated pursuant to the Plan, but shall remain in effect subject, in all instances, to Puerto Rico law and Articles XXIX and XXVI regarding the payment and ongoing treatment of pension and related claims and obligations.

45.11   **PRASA Guarantee:**  Notwithstanding anything contained in the Plan to the contrary, on the Effective Date, the Commonwealth shall assume all of its obligations in accordance with the terms and provisions of Act No. 45 of the Commonwealth Legislature, approved on July 28, 1994, as amended, related to (a) PRASA Revenue Refunding Bonds, 2008 Series A, issued in the original principal amount of $159,055,000.00 and (b) PRASA Revenue Refunding Bonds, 2008 Series B, issued in the original principal amount of $125,700,000.00, in each case, pursuant to (i) Resolution No. 1583, adopted December 7, 1995 and amended and restated as of March 7, 2008.

## ARTICLE XLVI

## PROVISIONS GOVERNING DISTRIBUTIONS

46.1   **Time and Manner of Distribution:**  Except as otherwise provided herein, distributions under the Plan shall be made to each holder of an Allowed Claim as follows:

(a)   **Distributions to Holders of PBA Bond Claims:**  Except as otherwise provided herein, within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed PBA Bond Claim, and an Allowed PBA Bond Claim (Insured), and in each case consistent with the terms hereof, such Creditor's Pro Rata Share, if any, of the PBA Bond Distribution, PSA Restriction Fee and Consummation Costs, if applicable.

(b)   **Distributions to Holders of CW Bond Claims:**  Except as otherwise provided herein, within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed CW Bond Claim

such Creditor's Pro Rata Share, if any, of the CW Bond Distribution, PSA Restriction Fee and Consummation Costs, if applicable.

(c)   **Distributions to Holders of ERS Bond Claims**:   Except as otherwise provided herein, within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed ERS Bond Claim, such Creditor's (i) Pro Rata Share, if any, of the ERS Bond Collateral Cash, (ii) ERS Bond Settlement Distribution and (iii) ERS Taxable Bond Distribution, in each case, to the extent applicable.

(d)   **Distributions with Respect to General Unsecured Claims**:   Except as otherwise provided herein, (i) within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed CW General Unsecured Claim and Allowed ERS General Unsecured Claim such Creditor's Pro Rata Share, if any, of the CW GUC Pool and the ERS GUC Pool, respectively, and (ii) the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed PBA General Unsecured Claim distributions in accordance with the terms and provisions of Section 8.1 hereof.

(e)   **Distribution of Cash to Holders of Certain Other Claims**:   Except as otherwise provided herein, on or as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Administrative Expense Claim, Cash in the amount of such Allowed Claim.

46.2   **Timeliness of Payments**:   Any payment or distribution to be made pursuant to the Plan shall be deemed to be timely made if made within ten (10) days after the date specified in the Plan.  Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due, including, without limitation, deeming distributions made pursuant to Section 46.1(a) hereof to have been made on the Effective Date.

46.3   **Distributions by the Disbursing Agent**:   Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Entities entitled to receive the same.  The Disbursing Agent shall not hold an economic or beneficial interest in such property.

46.4   **Manner of Payment under the Plan**:   Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Disbursing Agent shall be made, at the election of the payor, by check drawn on a domestic bank or by wire transfer from a domestic bank; provided, however, that no Cash payment shall be made to a holder of an Allowed Claim until such time, if ever, as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

46.5     **Delivery of Distributions**:  Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided herein, distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address set forth on proofs of Claim filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if the Debtors has been notified in writing of a change of address; provided, however, that initial distributions of Cash by the Disbursing Agent for the benefit of holders of Allowed PBA Bond Claims, Allowed PBA Bond Claims (Insured), Allowed Vintage CW Bond Claims, Allowed Vintage CW Bond Claims (Insured), as applicable, shall be made in accordance with under the respective governing documents for such obligations; and, provided, further, that the Disbursing Agent may make distributions of PSA Restriction Fees and Consummation Costs in Cash to a party entitled thereto in a manner mutually agreed upon between such party and the Disbursing Agent.  The Debtors, its agents and servicers, the Disbursing Agent shall have no obligation to recognize any transfer of Bond Claims after the Distribution Record Date; provided, however, that the New Bonds will be transferable and recognized if made in accordance with the terms and conditions of the New Bonds Indenture.

46.6     **Cancellation of Notes, Instruments, Certificates, and Other Documents**: Except (a) as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, (b) for purposes of evidencing a right to distribution under the Plan, or (c) as specifically provided otherwise in the Plan (including any rejection of Executory Contracts or Unexpired Leases pursuant to Section 45.1 hereof), on the Effective Date, the PBA Bond, ERS Bonds and GO Bonds and all instruments and documents related thereto will be deemed automatically cancelled, terminated and of no further force or effect against the Debtors without any further act or action under any applicable agreement, law, regulation, order or rule, with the Debtors and the applicable trustee, paying agent or fiscal agent, as the case may be, having no continuing obligations or duties and responsibilities thereunder and the obligations of the parties to the Debtors, as applicable, under the PBA Bonds, ERS Bonds and GO Bonds and all instruments and documents related thereto shall be discharged; provided, however, that, notwithstanding anything contained herein to the contrary, the PBA Bonds, ERS Bonds  and GO Bonds and such other instruments and documents shall continue in effect solely (i) to allow the Disbursing Agent to make any distributions as set forth in the Plan and to perform such other necessary administrative or other functions with respect thereto, (ii) to allow holders of Allowed Bond Claims to receive distributions in accordance with the terms and provisions of the Plan, (iii) for any trustee, agent, contract administrator or similar entity under all instruments and documents related thereto, to perform necessary functions, including making distributions, in accordance with the Plan and to have the benefit of all the rights and protections and other provisions of such instruments and documents, as applicable, and all other related agreements, (iv) to set forth the terms and conditions applicable to parties to such documents and instruments other than the Debtors, or (v) as may be necessary to preserve any claims under the respective Insurance Policies.  Notwithstanding the foregoing, and except as otherwise expressly provided in the Plan, such bonds or bond documents that remain outstanding shall not form the basis for the assertion of any Claim against the Debtors or Reorganized Debtors, as the case may be.

46.7     **Undeliverable/Reserved Distributions**:

(a)     **Holding of Undeliverable Distributions by the Disbursing Agent:**  If any distribution to any holder is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified, in writing, of such holder's then-current address.  Subject to the terms and provision of Section 46.7(b) hereof, undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable.  All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind.  Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

(b)     **Failure to Claim Undeliverable Distributions:**  If (i) a check is sent, by the Disbursing Agent to a holder in respect of distributions and such check is not negotiated within one hundred twenty (120) days following the date on which such check was issued, or (ii) any other form of distribution to a holder is otherwise undeliverable, the Disbursing Agent (or its duly authorized agent) shall, on or prior to the date that is one hundred eighty (180) days from (i) the Effective Date, with respect to all Allowed Claims as of the Effective Date, and (ii) the date that a distribution is made with respect to any Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date, file a list with the Title III Court setting forth the names of those Entities for which distributions have been made hereunder that have not been negotiated or have been returned as undeliverable as of the date thereof.  Any holder of an Allowed Claim on such list that does not identify itself and assert its rights pursuant to the Plan to receive a distribution within six (6) months from the date so listed shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the Plan, against Reorganized Debtors, the trustees, or their respective professionals, agents, or property, and any (1) Cash in the possession of the Disbursing Agent or the trustee with respect to existing securities, as the case may be, shall be released to Reorganized Debtors for use to discharge operating expenses of Reorganized Debtors and (2) the Debtors Bonds in the possession of the Disbursing Agent or trustee with respect to existing securities, as the case may be, shall be released to Reorganized Debtors for cancellation or deposit into the treasury of Reorganized Debtors, as determined by Reorganized Debtors in its sole and absolute discretion.

46.8    **Withholding and Reporting Requirements:**  Any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or Tax Authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any Taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding tax obligations and, if any party issuing any instrument or making any distribution under the Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party.  The Disbursing Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or

Form W-9, as applicable to each holder.  If the holder fails to comply with such a request within one year, such distribution shall be deemed an Unclaimed Distribution.

46.9    **Time Bar to Cash Payments:**  Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within one hundred twenty (120) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (i) the first (1st) anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Disbursing Agent shall retain all monies related thereto for the sole purpose of redistribution to holders of Allowed Claims in accordance with the terms and provisions hereof.

46.10    **Distributions After Effective Date:**  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of Article LII of the Plan.

46.11    **Setoffs:**  Except as otherwise provided in the Plan or in the Confirmation Order, the Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim by the Disbursing Agent), the claims, rights, and causes of action of any nature that the Debtors or Reorganized Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such claims, rights, and causes of action that the Debtors or the Reorganized Debtors may possess against such holder; and, provided, further, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment; and, provided, further, that nothing in this Section 46.11 shall affect the releases and injunctions provided in Article LXII of the Plan.

46.12    **Allocation of Plan Distributions Between Principal and Interest:**  To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts; provided, however, that the Debtors or Reorganized Debtor's treatment of any distributions for its tax purposes will not be binding on any Creditor as to the treatment of such distributions for any regulatory, tax or other purposes.

46.13    **Payment of Trustee Fees and Expenses:**  No later than five (5) days prior to the Effective Date, Trustees shall provide invoice summaries and supporting documentation (subject to redaction to preserve attorney-client privilege) to the Oversight Board and AAFAF, on behalf

of the Debtors, relating to all incurred and unpaid trustee claims as of such date, together with an estimate of trustee claims to be incurred from such date up to and including the Effective Date. Within fifteen (15) Business Days thereof, the Debtors shall notify the applicable trustee, in writing, of any dispute relating to the reasonableness of any portion of the trustee claims.  Any portion of the trustee claims that is not disputed by the Debtors shall be paid by the Debtors on the Effective Date without further application to, or approval of, the Title III Court; provided, however, that, upon notification of a dispute, trustees (a) shall submit an application to the Title III Court seeking a resolution of such dispute by the Title III Court or (b) waive, in writing, payment of such disputed amount; and, provided, further, that, upon the entry of an order of the Title III Court authorizing payment of any disputed amount, upon notice and a hearing, unless otherwise stayed, the Debtors shall pay such allowed portion of such trustee claims.  To the extent any trustee claim is incurred from and after the Effective Date, Reorganized Debtors shall be responsible and, upon presentation of supporting documentation in form and substance satisfactory to Reorganized Debtors (subject to redaction to preserve attorney-client privilege), shall satisfy such post-Effective Date trustee claims; provided, however, that, under no circumstance shall the Disbursing Agent, the Debtors or Reorganized Debtors be responsible for any indemnification obligation, cost, or expense of Trustees associated with the gross negligence, intentional fraud or willful misconduct of Trustees in making any distribution pursuant to the Plan.

## ARTICLE XLVII

## LITIGATION TRUST

47.1   **Execution of Litigation Trust Agreement:**  On or prior to the Effective Date, the Commonwealth and the Litigation Trustee shall execute the Litigation Trust Agreement, and shall take all other necessary steps to establish the Litigation Trust and the Litigation Trust Interests therein, which shall be for the benefit of the Litigation Trust Beneficiaries, whether their Claims are Allowed before, on or after the Effective Date.  The Litigation Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Litigation Trust as a "liquidating trust" for United States federal income tax purposes.

47.2   **Purpose of the Litigation Trust:**  The Litigation Trust shall be established, pursuant to the Plan, for the sole purpose of prosecuting or compromising and settling the Late Vintage Litigation and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.

47.3   **Litigation Trust Assets:**  The Litigation Trust shall consist of the Litigation Trust Assets.  On or prior to the Effective Date, the Commonwealth or the Reorganized Commonwealth, as the case may be, shall transfer all of the Litigation Trust Assets to the Litigation Trust.  The Litigation Trust Assets may be transferred subject to certain liabilities, as provided in the Plan or the Litigation Trust Agreement.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code.  Upon delivery of the Litigation Trust Assets to the

Litigation Trust, the Debtors and their predecessors, successors and assigns, and each other Entity released pursuant to Section 62.2 hereof shall be discharged and released from all liability with respect to the delivery of such distributions. Without limiting the foregoing, in the event that there is (a) a Remaining Reserve Amount, subject to the Bond Recovery Cap, the Litigation Trust shall receive such Remaining Reserve Amount up to an amount equal to the Non-Settling CW Bondholders' Settlement Savings Portion (the "Settlement Savings True-Up"), and (b) any additional Remaining Reserve Amount after the Settlement Savings True-Up, (i) the Commonwealth shall receive thirty-three percent (33%) of such Remaining Reserve Amount and (ii) the Litigation Trust shall receive sixty-seven percent (67%) of the Remaining Reserve Amount. Subject to the Bond Recovery Cap, and in accordance with the terms and provisions of Section 47.10 of the Plan, the Litigation Trust shall distribute its allocated portion of the Remaining Reserve Amount to holders of Litigation Trust Interests in accordance with the terms and provisions of the Litigation Trust Agreement.

47.4 **Administration of the Litigation Trust:** The Litigation Trust shall be administered by the Litigation Trustee according to the terms and provisions of Litigation Trust Agreement and the Plan. In the event of any inconsistency between the Plan and the Litigation Trust Agreement, the Litigation Trust Agreement shall govern.

47.5 **The Litigation Trustee:** In the event the Litigation Trustee dies, becomes incapacitated, is terminated, or resigns for any reason, the Litigation Trust Board shall designate a successor; provided, however, that under no circumstance shall the Litigation Trustee be a director or officer with respect to any Affiliate of the Litigation Trust.

47.6 **Role of the Litigation Trustee:** In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, and subject to the terms of the Confirmation Order, the Plan and the Litigation Trust Agreement, and the oversight of the Litigation Trust Board, the Litigation Trustee shall, among other things, have the following rights, powers and duties, (a) to prosecute and resolve the claims and causes of action belonging to the Litigation Trust, (b) to hold the Litigation Trust Assets for the benefit of the Litigation Trust Beneficiaries, whether their Claims are Allowed on or after the Effective Date, (c) in the Litigation Trustee's reasonable business judgment, to investigate, prosecute, settle and/or abandon rights, causes of action, or litigation of the Litigation Trust, (d) to prepare and file (or cause to be prepared and filed), from and after the Effective Date, all tax and regulatory forms, returns, reports, and other documents required, or that the Litigation Trustee otherwise deems appropriate, with respect to the Litigation Trust, (e) in the Litigation Trustee's reasonable business judgment, to control, prosecute, and/or settle on behalf of the Litigation Trust, objections to Claims on account of which the Litigation Trustee will be responsible and (f) to not unduly prolong the duration of the Litigation Trust. In all circumstances, the Litigation Trustee shall act in the best interests of all Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.

47.7 **Litigation Trustee's Tax Power:** From and after the Effective Date, the Litigation Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Litigation Trust, all Tax Returns or other tax information statements required to be filed or that the Litigation Trustee otherwise deems appropriate.

47.8    **Transferability of Litigation Trust Interests:**  The Litigation Trust Interests shall not be transferable or assignable except by will, intestate succession or operation of law.

47.9    **Cash:**  The Litigation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; provided, however, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

47.10    **Distribution of Litigation Trust Assets:**  Upon determination or compromise and settlement of the Late Vintage Litigation, pursuant to a Final Order, the Litigation Trustee shall distribute to the holders of Allowed Claims on account of their Litigation Trust Interests all unrestricted Cash on hand (including any Cash received from the Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section 47.10), except Cash reserved pursuant to the Litigation Trust Agreement to fund the remaining activities and liquidation of the Litigation Trust.

47.11    **Funding, Costs and Expenses of the Litigation Trust:**  On the Effective Date, and solely from Settlement Savings generated, the Litigation Trust shall be funded on a one-time basis in an amount up to Ten Million Dollars ($10,000,000.00), one-third (1/3) of which shall be funded from the portion of the Settlement Savings otherwise distributable to the Commonwealth and two-thirds (2/3) of which shall be funded from the portion of the Settlement Savings otherwise distributable to holders of Allowed CW Bond Claims and Allowed CW Guarantee Bond Claims.  The reasonable costs and expenses of the Litigation Trust, including the fees and expenses of the Litigation Trustee and its retained professionals, shall be paid out of the Litigation Trust Assets.  Fees and expenses incurred in connection with the prosecution and settlement of any Claims shall be considered costs and expenses of the Litigation Trust.

47.12    **Compensation of the Litigation Trustee:**  The individual(s) serving as or comprising the Litigation Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar roles, the payment of which shall be subject to the approval of the Title III Court; provided, however, that, unless otherwise agreed to, in writing, by AAFAF, the Reorganized Debtors shall have no obligation to provide any funding to the Litigation Trust in excess of that provided pursuant to Section 47.11 of the Plan.

47.13    **Retention of Professionals/Employees by the Litigation Trustee:**  Subject to the approval and consent of the Litigation Trust Board, the Litigation Trust may retain and compensate attorneys, other professionals, and employees to assist the Litigation Trust Board on such terms as the Litigation Trustee deems appropriate without Title III Court approval.

47.14    **Federal Income Tax Treatment of the Litigation Trust:**

(a)    Litigation Trust Assets Treated as Owned by Creditors.  For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Litigation Trustee, and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust as (1) a transfer of the Litigation Trust Assets (subject to any obligations relating to those assets) directly to the Litigation Trust Beneficiaries

76

and, to the extent Litigation Trust Assets are allocable to Disputed Claims, to the Litigation Trust Claims Reserve, followed by (2) the transfer by such beneficiaries to the Litigation Trust of the Litigation Trust Assets (other than the Late Vintage Litigation Trust Assets allocable to the Litigation Trust Claims Reserve) in exchange for Litigation Trust Interests.

Accordingly, the Litigation Trust Beneficiaries shall be treated for United States federal income tax purposes as the deemed grantors and owners of their respective share of the Litigation Trust Assets (other than such Litigation Trust Assets as are allocable to the Litigation Trust Claims Reserve, discussed below).

The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)    Tax Reporting.

(1)    The Litigation Trustee shall prepare and file (or cause to be prepare and filed) Tax Returns for the Litigation Trust treating the Litigation Trust as a grantor trust with respect to the Litigation Trust Beneficiaries pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 47.14.  The Litigation Trustee also will annually send to each holder of a Litigation Trust Interest a separate statement regarding the receipts and expenditures of the Litigation Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.  The Litigation Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Litigation Trust that is required by any governmental unit.

(2)    The Litigation Trustee will then in good faith value all other Litigation Trust Assets, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Litigation Trust (including, without limitation, the Debtors, the Litigation Trustee, and Litigation Trust Beneficiaries) for all United States federal income tax purposes.

(3)    Allocations of Litigation Trust taxable income among the Litigation Trust Beneficiaries (other than taxable income allocable to the Litigation Trust Claims Reserve) shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Litigation Trust Claims Reserve) to the holders of the Litigation Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust.  Similarly, taxable

77

loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets. The tax book value of the Litigation Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(4)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), the Litigation Trustee shall (A) timely elect to treat any Litigation Trust Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Litigation Trustee and the Litigation Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(5)     The Litigation Trustee shall be responsible for payment, out of the Litigation Trust Assets, of any Taxes imposed on the Litigation Trust or its assets, including the Litigation Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Litigation Trust Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims (including any income that may arise upon the distribution of the assets of the Litigation Trust Claims Reserve), such Taxes may be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Litigation Trustee as a result of the resolution of such Disputed Claims.

(c)     Tax Withholdings by Litigation Trustee. The Litigation Trustee may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of Litigation Trust Interests. All such amounts withheld and paid to the appropriate Tax Authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders of Litigation Trust Interests for all purposes of the Litigation Trust Agreement, and it being understood that any such amount withheld shall reduce the amount actually received by the applicable holder upon distribution. The Litigation Trustee shall be authorized to collect such tax information from the holders of Litigation Trust Interests (including, without limitation, social security numbers or other tax identification numbers) as in its sole discretion the Litigation Trustee deems necessary to effectuate the Plan, the Confirmation Order, and the Litigation Trust Agreement. In order to receive distributions under the Plan, all holders of Litigation Trust Interests shall be required to identify themselves to the Litigation Trustee and provide tax information and the specifics of

their holdings, to the extent the Litigation Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Litigation Trustee for these purposes.  This identification requirement generally applies to all holders of Litigation Trust Interests, including those who hold their securities in street name.  The Litigation Trustee may refuse to make a distribution to any holder of a Litigation Trust Interest that fails to furnish such information in a timely fashion, and until such information is delivered, and may treat such holder's Litigation Trust Interests as disputed; provided, however, that, if such information is not furnished to the Litigation Trustee within six (6) months of the original request to furnish such information, no further distributions shall be made to the holder of such Litigation Trust Interest; and, provided, further, that, upon the delivery of such information  by a holder of a Litigation Trust Interest, the Litigation Trustee shall make such distribution to which the holder of the Litigation Trust Interest is entitled, without additional interest occasioned by such holder's delay in providing tax information; and, provided, further, that, if the Litigation Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Litigation Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Litigation Trustee for such liability (to the extent such amounts were actually distributed to such holder).

(d)  The Litigation Trustee and the Litigation Trust shall be discharged or dissolved, as the case may be, upon the earlier to occur of (i) all of the Litigation Trust Assets have been distributed pursuant to the Plan and the Litigation Trust Agreement, (ii) the Litigation Trustee determines, with the consent of the Litigation Trust Board, that the administration of any remaining Litigation Trust Assets is not likely to yield sufficient additional Litigation Trust proceeds to justify further pursuit, and (iii) all distributions required to be made by the Litigation Trustee under the Plan and the Litigation Trust Agreement have been made; provided, however, in no event shall the Litigation Trust be dissolved later than three (3) years from the Effective Date unless the Title III Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Litigation Trustee and the Litigation Trust Board that any further extension would not adversely affect the status of the trust as a Litigation Trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets.  If at any time the Litigation Trustee determines, in reliance upon such professionals as the Litigation Trustee may retain, that the expense of administering the Litigation Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Litigation Trust, the Litigation Trustee may apply to the Title III Court for authority to (i) reserve any amount necessary to dissolve the Litigation Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, and (D) that is unrelated to the Debtors, the Reorganized Debtors, the Litigation Trust, and any insider of the Litigation Trustee, and (iii) dissolve the Litigation Trust.

47.15  **Indemnification of Litigation Trustee:**  The Litigation Trustee or the individual(s) comprising the Litigation Trustee, as the case may be, and the Litigation Trustee Employees, agents and professionals, shall not be liable to the Litigation Trust Beneficiaries for actions taken or omitted in their capacity as, or on behalf of, the Litigation Trustee, except those

79

acts arising out of their own willful misconduct or gross negligence,  and each shall be entitled to indemnification and reimbursement  for fees and expenses  in defending any and all actions or inactions in their capacity as, or on behalf of, the Litigation Trustee, except for any actions or inactions involving willful misconduct or gross negligence.  Any indemnification claim of the Litigation Trustee (and the other parties entitled to indemnification under this subsection) shall be satisfied solely from the Litigation Trust Assets and shall be entitled to a priority distribution therefrom, ahead of the Litigation Trust Interests and any other claim to or interest in such assets. The Litigation Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

## ARTICLE XLVIII

## AVOIDANCE ACTIONS TRUST

48.1    **Execution of Avoidance Actions Trust Agreement**:  On or before the Effective Date, the Debtors and the Avoidance Actions Trustee shall execute the Avoidance Actions Trust Agreement, and shall take all other necessary steps to establish the Avoidance Actions Trust and the Avoidance Actions Trust Interests therein, which shall be for the benefit of the Avoidance Actions Trust Beneficiaries, whether their Claims are Allowed before, on or after the Effective Date.  The Avoidance Actions Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Avoidance Actions Trust as a "liquidating trust" for United States federal income tax purposes.

48.2    **Purpose of the Avoidance Actions Trust**:  The Avoidance Actions Trust shall be established for the sole purpose of Avoidance Actions and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Avoidance Actions Trust.

48.3    **Avoidance Actions Trust Assets**:  The Avoidance Actions Trust shall consist of the Avoidance Actions Trust Assets.  On the Effective Date, the Debtors shall transfer all of the Avoidance Actions Trust Assets to the Avoidance Actions Trust. The Avoidance Actions Trust Assets may be transferred subject to certain liabilities, as provided in the Plan or the Avoidance Actions Trust Agreement.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code.  Upon delivery of the Avoidance Actions Trust Assets to the Avoidance Actions Trust, the Debtors and their predecessors, successors and assigns, and each other Entity released pursuant to Section 62.2 herein shall be discharged and released from all liability with respect to the delivery of such distributions.

48.4    **Administration of the Avoidance Actions Trust**:  The Avoidance Actions Trust shall be administered by the Avoidance Actions Trustee according to the Avoidance Actions Trust Agreement and the Plan.  In the event of any inconsistency between the Plan and the Avoidance Actions Trust Agreement, the Avoidance Actions Trust Agreement shall govern.

48.5 **The Avoidance Actions Trustee:**  In the event the Avoidance Actions Trustee dies, becomes incapacitated, is terminated, or resigns for any reason, the Avoidance Actions Trust Board shall designate a successor; provided, however, that under no circumstance shall the Avoidance Actions Trustee be a director or officer with respect to any Affiliate of the Avoidance Actions Trust.

48.6 **Role of the Avoidance Actions Trustee:**  In furtherance of and consistent with the purpose of the Avoidance Actions Trust and the Plan, and subject to the terms of the Confirmation Order, the Plan and the Avoidance Actions Trust Agreement, and the oversight of the Avoidance Actions Trust Board, the Avoidance Actions Trustee shall, among other things, have the following rights, powers and duties, (i) to hold, manage, convert to Cash, and timely distribute the Avoidance Actions Trust Assets, including prosecuting and resolving the Claims belonging to the Avoidance Actions Trust, (ii) to hold the Avoidance Actions Trust Assets for the benefit of the Avoidance Actions Trust Beneficiaries, whether their Claims are Allowed on or after the Effective Date, (iii) in the Avoidance Actions Trustee's reasonable business judgment, to investigate, prosecute, settle and/or abandon rights, causes of action, or litigation of the Avoidance Actions Trust, (iv) to prepare and file (or cause to be prepared and filed), from and after the Effective Date, all tax and regulatory forms, returns, reports, and other documents required, or that the Avoidance actions Trustee otherwise deems appropriate with respect to the Avoidance Actions Trust, (v) in the Avoidance Actions Trustee's reasonable business judgment, to control, prosecute, and/or settle on behalf of the Avoidance Actions Trust, objections to Claims on account of which the Avoidance Actions Trustee will be responsible, (vi) to hold, manage, and timely distribute Cash or non-Cash Avoidance Actions Trust Assets obtained through the exercise of its power and authority and (vii) to not unduly prolong the duration of the Avoidance Actions Trust.  In all circumstances, the Avoidance Actions Trustee shall act in the best interests of all Avoidance Actions Trust Beneficiaries and in furtherance of the purpose of the Avoidance Actions Trust.

48.7 **Avoidance Actions Trustee's Tax Power for Debtors:**  From and after the Effective Date, the Avoidance Actions Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtors, all Tax Returns or other tax information statements required to be filed or that the Avoidance Actions Trustee otherwise deems appropriate.

48.8 **Transferability of Avoidance Actions Trust Interests:**  The Avoidance Actions Trust Interests shall not be transferable or assignable except by will, intestate succession or operation of law

48.9 **Cash:**  The Avoidance Actions Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; provided, however, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

48.10 **Distribution of Avoidance Action Trust Assets:**  The Avoidance Actions Trustee shall distribute to the holders of Allowed Claims on account of their Avoidance Actions Trust Interests, on a semi-annual basis, all unrestricted Cash on hand (including any Cash received from the Debtors on the Effective Date, and treating any permissible investment as

Cash for purposes of this Section 48.10), except (i) Cash reserved pursuant to the Avoidance Actions Trust Agreement to fund the activities of the Avoidance Actions Trust, (ii) such amounts' as are allocable to or retained on account of Disputed Claims in accordance with Section 52.3 hereof to pay reasonable incurred or anticipated expenses (including, but not limited to, any Taxes imposed on or payable by the Avoidance Actions Trust in respect of the Avoidance Actions Trust Assets); provided, however, that the Avoidance Actions Trustee shall not be required to make a distribution pursuant to this Section 48.10 if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such that it would make the distribution impracticable as reasonably determined by the Avoidance Actions Trustee, with the consent of the Avoidance Actions Trust Board, in accordance with applicable law, and so long as such aggregate amount is less than Twenty-Five Million Dollars ($25,000,000.00); and, provided, further, that the Avoidance Actions Trustee, with the consent of the Avoidance Actions Trust Board, may decide to forego the first quarterly distribution to those holders of Avoidance Actions Trust Interests with respect to which the Avoidance Actions Trustee, in its reasonable judgment, is not administratively prepared to make such distribution, in which case, such distribution shall be made to such holders as soon as practicable after the Avoidance Actions Trustee is administratively prepared to do so.

48.11   **Funding, Costs and Expenses of the Avoidance Actions Trust**:  On the Effective Date, and solely from Settlement Savings generated and otherwise distributable to the Commonwealth for distribution to holders of Allowed CW Bond Claims and Allowed CW Guarantee Bond Claims, the Avoidance Actions Trust shall be funded on a one-time basis in an amount up to Five Million Dollars ($5,000,000.00).  The reasonable costs and expenses of the Avoidance Actions Trust, including the fees and expenses of the Avoidance Actions Trustee and its retained professionals, shall be paid out of the Avoidance Actions Trust Assets.  Fees and expenses incurred in connection with the prosecution and settlement of any Claims shall be considered costs and expenses of the Avoidance Actions Trust.

48.12   **Compensation of the Avoidance Actions Trustee**:  The individual(s) serving as or comprising the Avoidance Actions Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar roles, the payment of which shall be subject to the approval of the Title III Court.

48.13   **Retention of Professionals/Employees by the Avoidance Actions Trustee**: Subject to the approval and consent of the Avoidance Actions Trust Board, the Avoidance Actions Trust may retain and compensate attorneys, other professionals, and employees to assist the Avoidance Actions Trust Board on such terms as the Avoidance Actions Trustee deems appropriate without Title III Court approval.

48.14   **Federal Income Tax Treatment of the Avoidance Actions Trust**:

(a)   Avoidance Actions Trust Assets Treated as Owned by Creditors.  For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Avoidance Actions Trustee, and the Avoidance Actions Trust Beneficiaries) shall treat the transfer of the Avoidance Actions Trust Assets to the Avoidance Actions Trust as (1) a transfer of the Avoidance Actions Trust Assets (subject to any obligations relating to those assets) directly to the Avoidance Actions Trust Beneficiaries and, to the extent Avoidance

Actions Trust Assets are allocable to Disputed Claims, to the Avoidance Actions Trust Claims Reserve, followed by (2) the transfer by such beneficiaries to the Avoidance Actions Trust of the Avoidance Actions Trust Assets (other than the Avoidance Actions Trust Assets allocable to the Avoidance Actions Trust Claims Reserve) in exchange for Avoidance Actions Trust Interests. Accordingly, the Avoidance Actions Trust Beneficiaries shall be treated for United States federal income tax purposes as the deemed grantors and owners of their respective share of the Avoidance Actions Trust Assets (other than such Avoidance Actions Trust Assets as are allocable to the Avoidance Actions Trust Claims Reserve, discussed below). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)   Tax Reporting.

(1)   The Avoidance Actions Trustee shall prepare and file (or cause to be prepared and filed) Tax Returns for the Avoidance Actions Trust treating the Avoidance Actions Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 48.14. The Avoidance Actions Trustee also will annually send to each holder of a Avoidance Actions Trust Interest a separate statement regarding the receipts and expenditures of the Avoidance Actions Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Avoidance Actions Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Avoidance Actions Trust that is required by any governmental unit.

(2)   The Avoidance Actions Trustee will then in good faith value all other Avoidance Actions Trust Assets, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Avoidance Actions Trust (including, without limitation, the Debtors, the Avoidance Actions Trustee, and Avoidance Actions Trust Beneficiaries) for all United States federal income tax purposes.

(3)   Allocations of Avoidance Actions Trust taxable income among the Avoidance Actions Trust Beneficiaries (other than taxable income allocable to the Avoidance Actions Trust Claims Reserve) shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Avoidance Actions Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Avoidance Actions Trust Claims Reserve) to the holders of the Avoidance Actions Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Avoidance Actions Trust. Similarly, taxable loss of the Avoidance Actions Trust shall be allocated by reference to the manner in which an economic loss would be borne

immediately after a hypothetical liquidating distribution of the remaining
Avoidance Actions Trust Assets.  The tax book value of the Avoidance Actions
Trust Assets for purpose of this paragraph shall equal their fair market value on
the Effective Date, adjusted in accordance with tax accounting principles
prescribed by the IRC, the applicable Treasury Regulations, and other applicable
administrative and judicial authorities and pronouncements.

(4)     Subject to definitive guidance from the IRS or a court of
competent jurisdiction to the contrary (including the receipt by the Avoidance
Actions Trustee of a private letter ruling if the Avoidance Actions Trustee so
requests one, or the receipt of an adverse determination by the IRS upon audit if
not contested by the Avoidance Actions Trustee), the Avoidance Actions Trustee
shall (A) timely elect to treat any Avoidance Actions Trust Claims Reserve as a
"disputed ownership fund" governed by Treasury Regulation section 1.468B-9,
and (B) to the extent permitted by applicable law, report consistently with the
foregoing for state and local income tax purposes.  All parties (including the
Avoidance Actions Trustee and the Avoidance Actions Trust Beneficiaries) shall
report for United States federal, state and local income tax purposes consistently
with the foregoing.

(5)     The Avoidance Actions Trustee shall be responsible for payment,
out of the Avoidance Actions Trust Assets, of any Taxes imposed on the trust or
its assets, including the Avoidance Actions Trust Claims Reserve.  In the event,
and to the extent, any Cash retained on account of Disputed Claims in the
Avoidance Actions Trust Claims Reserve is insufficient to pay the portion of any
such Taxes attributable to the taxable income arising from the assets allocable to,
or retained on account of, Disputed Claims (including any income that may arise
upon the distribution of the assets of the Avoidance Actions Trust Claims
Reserve), such Taxes may be (i) reimbursed from any subsequent Cash amounts
retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims
have subsequently been resolved, deducted from any amounts otherwise
distributable by the Avoidance Actions Trustee as a result of the resolution of
such Disputed Claims.

(c)     Tax Withholdings by Avoidance Actions Trustee.  The Avoidance Actions
Trustee may withhold and pay to the appropriate Tax Authority all amounts required to be
withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect
to any payment or distribution to the holders of Avoidance Actions Trust Interests.  All such
amounts withheld and paid to the appropriate Tax Authority (or placed in escrow pending
resolution of the need to withhold) shall be treated as amounts distributed to such holders of
Avoidance Actions Trust Interests for all purposes of the Avoidance Actions Trust Agreement,
and it being understood that any such amount withheld shall reduce the amount actually realized
by the applicable holder upon distribution.  The Avoidance Actions Trustee shall be authorized
to collect such tax information from the holders of Avoidance Actions Trust Interests
(including, without limitation, social security numbers or other tax identification numbers) as in
its sole discretion the Avoidance Actions Trustee deems necessary to effectuate the Plan, the
Confirmation Order, and the Avoidance Actions Trust Agreement.  In order to receive

distributions under the Plan, all holders of Avoidance Actions Trust Interests shall be required to identify themselves to the Avoidance Actions Trustee and provide tax information and the specifics of their holdings, to the extent the Avoidance Actions Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Avoidance Actions Trustee for these purposes.  This identification requirement generally applies to all holders of Avoidance Actions Trust Interests, including those who hold their securities in street name.  The Avoidance Actions Trustee may refuse to make a distribution to any holder of a Avoidance Actions Trust Interest that fails to furnish such information in a timely fashion, and until such information is delivered, and may treat such holder's Avoidance Actions Trust Interests as disputed; provided, however, that, if such information is not furnished to the Avoidance Actions Trustee within six (6) months of the original request to furnish such information, no further distributions shall be made to the holder of such Avoidance Actions Trust Interest; and, provided, further, that, upon the delivery of such information  by a holder of a Avoidance Actions Trust Interest, the Avoidance Actions Trustee shall make such distribution to which the holder of the Avoidance Actions Trust Interest is entitled, without additional interest occasioned by such holder's delay in providing tax information; and, provided, further, that, if the Avoidance Actions Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Avoidance Actions Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Avoidance Actions Trustee for such liability (to the extent such amounts were actually distributed to such holder).

(d)     The Avoidance Actions Trustee and the Avoidance Actions Trust shall be discharged or dissolved, as the case may be, upon the earlier to occur of (i) all of the Avoidance Actions Trust Assets have been distributed pursuant to the Plan and the Avoidance Actions Trust Agreement, (ii) the Avoidance Actions Trustee determines, with the consent of the Avoidance Actions Trust Board, that the administration of any remaining Avoidance Actions Trust Assets is not likely to yield sufficient additional Avoidance Actions Trust proceeds to justify further pursuit, and (iii) all distributions required to be made by the Avoidance Actions Trustee under the Plan and the Avoidance Actions Trust Agreement have been made; provided, however, in no event shall the Avoidance Actions Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Avoidance Actions Trustee and the Avoidance Actions Trust Board that any further extension would not adversely affect the status of the trust as an Avoidance Actions Trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Avoidance Actions Trust Assets.  If at any time the Avoidance Actions Trustee determines, in reliance upon such professionals as the Avoidance Actions Trustee may retain, that the expense of administering the Avoidance Actions Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Avoidance Actions Trust, the Avoidance Actions Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Avoidance Actions Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, and (D) that is unrelated to the Debtors, the Reorganized Debtors, the

Avoidance Actions Trust, and any insider of the Avoidance Actions Trustee, and (iii) dissolve the Avoidance Actions Trust.

     48.15  **Indemnification of Avoidance Actions Trustee:**  The Avoidance Actions Trustee or the individual(s) comprising the Avoidance Actions Trustee, as the case may be, and the Avoidance Actions Trustee Employees, agents and professionals, shall not be liable to the Avoidance Actions Trust Beneficiaries for actions taken or omitted in their capacity as, or on behalf of, the Avoidance Actions Trustee, except those acts arising out of their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all actions or inactions in their capacity as, or on behalf of, the Avoidance Actions Trustee, except for any actions or inactions involving willful misconduct or gross negligence.  Any indemnification claim of the Avoidance Actions Trustee (and the other parties entitled to indemnification under this subsection) shall be satisfied solely from the Avoidance Actions Trust Assets and shall be entitled to a priority distribution therefrom, ahead of the Avoidance Actions Trust Interests and any other claim to or interest in such assets.  The Avoidance Actions Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

# ARTICLE XLIX

## PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD BY THE DEBTORS

     49.1  **Prosecution of Claims:**  Except as settled and released herein, from and after the Effective Date, the Avoidance Actions Trustee shall have the exclusive right and power to (a) litigate any and all of the Avoidance Actions and (b) compromise and settle such Avoidance Actions, upon approval of the Bankruptcy Court.  The net proceeds of any such litigation or settlement (after satisfaction of all costs and expenses incurred in connection therewith) shall be transferred to the Avoidance Actions Trust for distribution in accordance with the Plan and the Avoidance Actions Trust Agreement.

# ARTICLE L

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

     50.1  **Impaired Classes to Vote:**  Each holder, as of the Voting Record Date, of a Claim in an impaired Class not otherwise deemed to have rejected or accepted the Plan in accordance with Sections 8.1, 35.1 and 36.1 of the Plan shall be entitled to vote separately to accept or reject the Plan.

     50.2  **Acceptance by Class of Creditors:**  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

     50.3  **Cramdown:**  In the event that any impaired Class of Claims shall fail to accept, or be deemed to reject, the Plan in accordance with section 1129(a) of the Bankruptcy Code, the

Debtors reserve the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or (ii) subject to the consent of the PSA Creditors, which consent shall not be unreasonably withheld, amend the Plan.

## ARTICLE LI

## RIGHTS AND POWERS OF DISBURSING AGENT

51.1 **Exculpation:**  From and after the Effective Date, the Disbursing Agent shall be exculpated by all Entities, including, without limitation, holders of Claims and other parties in interest, from any and all claims, causes of action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Title III Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of such Disbursing Agent.  No holder of a Claim or other party in interest shall have or pursue any claim or cause of action against the Disbursing Agent for making payments in accordance with the Plan or for implementing the provisions of the Plan.

51.2 **Powers of the Disbursing Agent:**  Except as may be provided otherwise hereunder, the Disbursing Agent shall be empowered to (a) take all steps and execute all instruments and documents necessary to effectuate the Plan, (b) make distributions contemplated by the Plan, (c) comply with the Plan and the obligations thereunder, and (d) exercise such other powers as may be vested in the Disbursing Agent pursuant to order of the Title III Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

51.3 **Fees and Expenses Incurred From and After the Effective Date:**  Except as otherwise ordered by the Title III Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the Effective Date and any reasonable compensation and expense reimbursement claims, including, without limitation, reasonable fees and expenses of counsel, incurred by the Disbursing Agent, shall be paid in Cash without further order of the Title III Court.

## ARTICLE LII

## PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS

52.1 **Objections to Claims; Prosecution of Disputed Claims:**  Except with respect to Allowed Claims, and subject to the terms and conditions of the ADR Procedures and the ADR Order, Reorganized Debtors, by and through the Oversight Board, and in consultation with AAFAF, shall object to, and shall assume any pending objection filed by the Debtors to, the allowance of Claims filed with the Title III Court with respect to which it disputes liability, priority or amount, including, without limitation, objections to Claims that have been assigned and the assertion of the doctrine of equitable subordination with respect thereto.  All objections, affirmative defenses and counterclaims shall be litigated to Final Order; provided, however, that Reorganized Debtors, by and through the Oversight Board, and in consultation with AAFAF, shall have the authority to file, settle, compromise or withdraw any objections to Claims, without

approval of the Title III Court.  Unless otherwise ordered by the Title III Court, to the extent not already objected to by the Debtors, Reorganized Debtors shall file and serve all objections to Claims as soon as practicable, but, in each instance, not later than one hundred eighty (180) days following the Effective Date or such later date as may be approved by the Title III Court. Notwithstanding anything contained in the Plan to the contrary, on the Effective Date, any Bond Claim filed by any Entity, for amounts due under existing securities, shall be deemed disallowed and expunged and the Oversight Board shall instruct Prime Clerk LLC, its court-appointed representative, to remove such Bond Claims from the claims registry maintained for the benefit of the Title III Court.

52.2   **Estimation of Claims:**  Except with respect to Allowed Claims, on and after the Effective Date, and unless otherwise limited by an order of the Title III Court, including, without limitation, the ADR Order, Reorganized Debtors, by and through the Oversight Board, may at any time request the Title III Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to or sought to estimate such Claim, and the Title III Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  Unless otherwise provided in an order of the Title III Court, in the event that the Title III Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Title III Court; provided, however, that, if the estimate constitutes the maximum limitation on such Claim, Reorganized Debtors, by and through the Oversight Board, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and, provided, further, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

52.3   **Payments and Distributions on Disputed Claims:**

(a)   **Disputed Claims Holdback:**  From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Title III Court in an amount constituting the allowed amount, or Allowed or Disallowed by Final Order of the Title III Court, Reorganized Debtors shall retain, for the benefit of each holder of a Disputed Claim, the distributions that would have been made to such holder if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claims shall be estimated by the Title III Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and Reorganized Debtors; provided, however, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above.  To the extent that any of the Reorganized Debtors retains any New Bonds on behalf of Disputed Claims holders, until such time as such New Bonds are distributed, such Reorganized Debtors shall exercise voting or consent rights with respect to such bonds.

88

(b)   **Allowance of Disputed Claims:**  At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, Reorganized Debtors shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any earnings that have accrued thereon (net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim.  Such distribution, if any, shall be made as soon as practicable after the date that the order or judgement of the Title III Court allowing such Disputed Claim becomes a Final Order, but in no event more than ninety (90) days thereafter.

52.4   **Authority to Amend Lists of Creditors:**  Except with respect to Bond Claims, the Debtors shall have the authority to amend the List of Creditors with respect to any Claim and to make distributions based on such amended List of Creditors without approval of the Title III Court.  If any such amendment to the List of Creditors reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtors will provide the holder of such Claim with notice of such amendment and such holder will have twenty (20) days to file an objection to such amendment with the Title III Court.  If no such objection is filed, the Disbursing Agent may proceed with distributions based on such amended List of Creditors without approval of the Title III Court.

52.5   **Non-Accrual of Interest:**  Unless otherwise specifically provided for herein or by order of the Title III Court, post-petition interest shall not accrue or be paid on Claims, Allowed or otherwise, and no holder of a Claim, Allowed or otherwise, shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

52.6   **Disallowance of Claims:**  All Claims of any Entity from which property is sought by the Debtors under sections 550, or 553 of the Bankruptcy Code or that the Debtors alleges is a transferee of a transfer that is avoidable under sections 544, 545, 547, 548, or 549 of the Bankruptcy Code shall be disallowed if:  (a) the Entity, on the one hand, and the Debtors, on the other hand, agree or the Title III Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE LIII

## GOVERNANCE AND PROVISIONS REGARDING PENSION RESERVE

53.1   **Formation and Responsibilities of the Pension Reserve:**  On or prior to the Effective Date, the Commonwealth shall take all necessary steps to establish the Pension Reserve Trust, including, without limitation, by execution and delivery of the Pension Reserve Deed of Trust.

53.2   **Funding of the Pension Reserve Trust:**  On the Effective Date, the Commonwealth shall contribute, or cause to be contributed, to the Pension Reserve Five Million

Dollars ($5,000,000.00) to fund the initial administrative fees, costs and expenses of the Pension Reserve Trust. From and after FY 2020 and up to and including the conclusion of FY 2027, the Commonwealth shall make, or cause to be made, annual (but in no event later than October 1st following the conclusion of each FY) contributions to the Pension Reserve in an amount equal to (a) the Base Contribution, (b) such additional amount calculated as the actual primary surplus for such FY <u>minus</u> the sum of (i) the Base Contribution for such FY, <u>plus</u> (ii) the Commonwealth debt service obligation pursuant to the plan for such FY, <u>plus</u> (iii) Two Hundred Million Dollars ($200,000,000.00); <u>provided</u>, <u>however</u>, that, in all instances, such additional amount cannot be lower than zero dollars ($0.00), and (c) subject to applicable laws, including, without limitation, Titles I and II of PROMESA, such additional amounts as the Government, in its discretion, elects to deposit into the Pension Reserve Trust. The Pension Reserve Trust will be managed by an independent entity whose members shall meet the independence, professionalism, experience and qualification standards set forth in the Pension Reserve Deed of Trust and shall be subject to all Government contracting, ethics and conflicts of interest laws and regulations.

       53.3   **Non-Impairment Covenant:**  The Commonwealth will covenant in the Pension Reserve Deed of Trust for the benefit of all Participants that, with respect to payments and other obligations owed to Participants pursuant to the Plan, including, without limitation, PayGo obligations and all components of the Total Monthly Retirement Benefit after any adjustment pursuant to the Plan, shall remain in place and not otherwise be altered, modified or amended until all such obligations have been satisfied in full in accordance with the provisions of the Plan and the Definitive Documents and the New Bond Legislation, enforceable by any and each of the Oversight Board, and any affected Retirees and, with respect to any such provision, the Pension Reserve Deed of Trust shall not be amended or modified by the Commonwealth except (i) with the express prior written consent of the Oversight Board (if in existence), and a majority in number of the Retirees receiving benefits pursuant to the Plan, the Definitive Documents and the New Bond Legislation at the time of such proposed modification or (ii) pursuant to a new Title III case for the Commonwealth and a confirmed and effective plan of adjustment.

## ARTICLE LIV

### IDENTIFICATION OF CLAIMS IMPAIRED BY THE PLAN
### AND NOT IMPAIRED BY THE PLAN

       54.1   **Impaired Classes:**  The Claims in Classes 1, 2, 6 through 31, and 33 through 36 are impaired and receiving distributions pursuant to the Plan, and are therefore entitled to vote to accept or reject the Plan; <u>provided</u>, <u>however</u>, that, based upon the elections made on the Ballot/Election Form, Classes 8, 11, 15, 18, 21 and 24 are deemed to have accepted the Plan. The Claims in Classes 3, 5, 32 and 33 are impaired and not receiving a distribution pursuant to the Plan and, therefore, Classes 3, 5, 32 and 33 are deemed to have rejected the Plan.

       54.2   **Unimpaired Class:**  Claims in Classes 4, 38 and 39 are unimpaired pursuant to the Plan, are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE LV

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN

55.1    **Conditions Precedent to Confirmation of the Plan:**  Confirmation of the Plan is subject to satisfaction of the following conditions precedent:

(a)    **Fiscal Plan Certification:**  The Oversight Board shall have determined that the Plan is consistent with the Debtors Fiscal Plan and shall have certified the submission of the Plan, and any modifications to the Plan through the Confirmation Date, in accordance with Sections 104(j) and 313 of PROMESA.

(b)    **Required Orders:**  The Clerk of the Title III Court shall have entered an order or orders (including, without limitation, the Disclosure Statement Order and the Confirmation Order providing for the following:

(i)    Approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(ii)    Authorizing the solicitation of votes and elections with respect to the Plan;

(iii)    Determining that all votes and elections or deemed elections are binding and have been properly tabulated;

(iv)    Confirming and giving effect to the terms and provisions of the Plan, including the releases set forth in Article LVIII of the Plan;

(v)    Determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Oversight Board and the Debtors;

(vi)    Approving the documents in the Plan Supplement, other than the New Bond Legislation (to the extent included in the Plan Supplement) and the Reorganized Debtors By-Laws;

(vii)    Authorizing Reorganized Debtors to execute, enter into, and deliver the documents in the Plan Supplement, and to execute, implement and take all actions otherwise necessary or appropriate to give effect to the transactions contemplated by the Plan, and the documents in the Plan Supplement; and

(viii)    Determining that the compromises and settlements set forth in the Plan are appropriate, reasonable and approved.

(c)    **Form of Orders:**  The Confirmation Order and the Plan are each in form and substance reasonably acceptable to the Oversight Board, the Debtors, and the PSA Creditors.

(d)     **Confirmation Order:**  The Confirmation Order includes (i) determinations that all of the settlements and compromises contained in the Plan satisfy applicable standards under sections 365, 1123(b)(3) and 1129 of the Bankruptcy Code and Bankruptcy Rule 9019, to the extent applicable, and (ii) the releases, exculpations and injunctions set forth in Article LXII of the Plan.

55.2     **Waiver of Conditions Precedent to Confirmation:**  To the extent practicable and legally permissible, each of the conditions precedent in Section 55.1 hereof may be waived, in whole or in part, by the Oversight Board, subject to the prior written consent of AAFAF, the Debtors, and the PSA Creditors, which consent shall not be unreasonably withheld.  Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Title III Court executed by the Oversight Board.

## ARTICLE LVI

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

56.1     **Conditions Precedent to the Effective Date.**  The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a)     **Fiscal Plan Certification:**  The Oversight Board shall have determined that the Plan is consistent with the Debtors Fiscal Plan and shall have certified the submission of the Plan, and any modifications to the Plan through the Confirmation Date, in accordance with Sections 104(j) and 313 of PROMESA.

(b)     **Entry of the Confirmation Order:**  The Clerk of the Title III Court shall have entered the Confirmation Order in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code, made applicable to the Title III Cases pursuant to Section 301 of PROMESA, which shall be in form and substance reasonably acceptable to the Oversight Board, upon consultation with AAFAF, and the PSA Creditors, and the Confirmation Order shall provide for the following:

(i)     Authorize the Debtors and Reorganized Debtors, as the case may be, to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(ii)     Decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(iii)     Authorize the Debtors and Reorganized Debtors, as the case may be, to (1) make all distributions and issuances as required under the Plan and (2) enter into any agreements and transactions, as set forth in the Plan Supplement;

(iv)     Authorize the implementation of the Plan in accordance with its terms.

(v)      Determine the New Bonds and the covenants by the Commonwealth, for the benefit of the holders of the New Bonds, as provided in the New Bond Legislation and the New Bond Indenture or Confirmation Order, constitute valid, binding, legal and enforceable obligations of the Commonwealth, under Puerto Rico and federal law;

(vi)      Determine the Confirmation Order is full, final, complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by (1) the Debtors, (2) Reorganized Debtors, (3) the Commonwealth, (4) each Person or Entity asserting claims or other rights against the Debtors, the Commonwealth or any of its other instrumentalities, including each holder of a Bond Claim and each holder of a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds issued by the Debtors, the Commonwealth, or any of its other instrumentalities or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such person or entity are impaired pursuant to the Plan and, if impaired, whether or not such person or entity accepted the Plan, (5) any other Person or Entity, and (6) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents, representative, attorneys, beneficiaries or guardians; and

(vii)      Determine the Plan is consistent with the Debtors' Fiscal Plans and satisfied Section 314(b)(7) of PROMESA.

(c)      **No Injunction:**  The Confirmation Order shall not be stayed in any respect.

(d)      **Authorizations:**  All (1) authorizations, consents, regulatory approvals, rulings, or documents, if any, that are necessary to implement and effectuate the Plan, including, without limitation, the New Bond Legislation, have been obtained or enacted or entered and not revoked or reversed, and (2) except to the extent expressly provided herein and not inconsistent with any other provision of the Plan, unless otherwise permitted or required by PROMESA or similar authority, completion of any other required legislative or other governmental action required to consummate the Plan.

(e)      **Execution of Documents; Other Actions:**  All actions and all contracts, instruments, settlements, releases and other agreements or documents, including Definitive Documents and the New Bond Legislation necessary to implement the terms and provisions of the Plan, including the Definitive Documents and the New Bond Legislation are effected or executed and delivered, as applicable, are in full force and effect.

(f)      **Opinions:**  Usual and customary legal opinions for issuances of the type similar to the New Bonds by outside counsel to the Debtors covering matters not expressly addressed in the Confirmation Order, in form and substance reasonably acceptable to the PSA Creditors, have been delivered to the applicable trustee or other parties regarding the Definitive Documents and the Plan.

93

(g) **Constitutional Claims:** The Title III Court shall have entered an order finding that any Claim asserted against the Debtors, the Reorganized Debtors and any other public corporation or instrumentality of the Commonwealth based on any bonds issued or guaranteed by or loans made to or guaranteed by any such entity shall be determined to be a Claim arising prior to the Petition Date and classified in Classes 1 through 3, 6, through 24, 28 through 32 and 34 through 36 (except Allowed ERS Bond Claims to the extent secured) and shall be dischargeable and discharged pursuant to the Plan or Confirmation Order and the Debtors, the Reorganized Debtors and any other public corporation or instrumentality of the Commonwealth shall have no liability on account of such Claim.

56.2   **Waiver of Conditions Precedent:** Subject to the provisions of the Plan Support Agreement, the Oversight Board may waive any of the conditions to the Effective Date set forth in Section 56.1 hereof at any time without any notice to any other parties in interest, other than the PSA Creditors and the Government Parties, and without any further notice to or action, order, or approval of the Title III Court, and without any formal action other than proceeding to confirm and consummate the Plan; provided, however, that the Oversight Board may not waive a condition precedent to the Effective Date, without the prior written consent of AAFAF, if such waiver would increase the aggregate amount of either (a) the cash flow payments with respect to the New Bonds as set forth on Exhibit "M" hereto, or (b) Cash in the amount of Two Billion Dollars ($2,000,000,000.00) necessary to satisfy and discharge Claims pursuant to the Plan, plus Excess Cash, other than Cash necessary to fund the satisfaction of Claims in accordance with Articles III, VIII, XXVIII, XXIX and LIII hereof.

56.3   **Effect of Non-Occurrence of Conditions to Effective Date:** If prior to the Effective Date, the Confirmation Order is vacated pursuant to a Final Order, then, except as provided in any order of the Title III Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, or Causes of Action; (b) prejudice in any manner the rights of the Debtors, the Oversight Board, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors, the Oversight Board, or any other Entity.

## ARTICLE LVII

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

57.1   **Modification of Plan:** Subject to (a) Sections 104(j) and 313 of PROMESA and sections 942 and 1127(d) of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA, and (b) the terms and provisions of the Plan Support Agreement, the AFSCME Plan Support Agreement, the Retiree Committee Plan Support Agreement, the Oversight Board may alter, amend or modify the Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to the Effective Date. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended or modified so long as the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

57.2   **Revocation or Withdrawal:**

    (a)     Subject to the terms and provisions of the Plan Support Agreement, the AFSCME Plan Support Agreement, the Retiree Committee Plan Support Agreement, the Plan may be revoked or withdrawn prior to the Confirmation Date by the Oversight Board.

    (b)     If the Plan is revoked or withdrawn prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claim by the Debtors or any other Entity, or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceeding involving the Debtors.

57.3   **Amendment of Plan Documents:**  From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the Plan, and any document attached to any of the foregoing, shall be as provided in such Plan Supplement, Exhibit to the Plan Supplement, or Exhibit to the Plan and their respective attachments, as the case may be.

57.4   **No Admission of Liability:**

    (a)     The submission of this Plan is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Entity with respect to any of the matters addressed in this Plan.

    (b)     None of this Plan (including, without limitation, the Exhibits hereto), or any settlement entered, act performed or document executed in connection with this Plan: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in any of the Related Actions or of any wrongdoing or liability of any Entity; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Entity in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (iii) is or may be deemed to be or used as an admission or evidence against Reorganized Debtors, the Debtors, or any other Person or Entity with respect to the validity of any Claim. None of this Plan or any settlement entered, act performed or document executed in connection with this Plan shall be admissible in any proceeding for any purposes, except to carry out the terms of this Plan, and except that, once confirmed, any Entity may file this Plan in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

## ARTICLE LVIII

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF REORGANIZED DEBTORS

58.1   **Corporate Action:**  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the directors of the Debtors or Reorganized

Debtors, including, without limitation, the authorization to issue or cause to be issued the New Bonds, the authorization to enter into the Definitive Documents, the adoption of Reorganized Debtors By-Laws, and the election or appointment, as the case may be, of directors and officers of Reorganized Debtors pursuant to the Plan, as applicable, shall be authorized and approved in all respects, in each case, in accordance with the New Bond Legislation and the new corporate governance documents, as applicable, and without further action by any Person or Entity under any other applicable law, regulation, order, or rule.  Other matters provided under the Plan involving the corporate structure of the Reorganized Debtors or corporate action by Reorganized Debtors, as applicable, shall be deemed to have occurred, be authorized, and shall be in effect in accordance with the New Bond Legislation and the new corporate governance documents, as applicable, and without requiring further action by any Person or Entity under any other applicable law, regulation, order, or rule.  Without limiting the foregoing, from and after the Confirmation Date, the Debtors and Reorganized Debtors shall take any and all actions deemed appropriate in order to consummate the transactions contemplated herein in accordance with the New Bond Legislation and the new corporate governance documents, as applicable.

58.2    **Amendment of By-Laws:**  To the extent applicable, the by-laws of the Reorganized Debtors shall be amended as of the Effective Date to provide substantially as set forth in the Reorganized Debtors By-Laws.

58.3    **Dissolution of ERS:**  On or as soon as practicable subsequent to the Effective Date, ERS shall be dissolved and all existing directors and officers of ERS shall be relieved of any further duties and obligations.  Upon such dissolution, all remaining assets of ERS shall be transferred to the Commonwealth.

58.4    **Officers of Reorganized Debtors:**  To the extent applicable, the board of directors of Reorganized Debtors shall elect officers of Reorganized Debtors as of or after the Effective Date.

58.5    **PBA Governance Structure:**  No changes to the PBA governance structure or PBA collective bargaining agreements will be implemented during or following the PBA Title III Case, unless any such changes are approved by the Oversight Board and AAFAF.

### ARTICLE LIX

### PROVISIONS REGARDING OVERSIGHT BOARD AND COMPLIANCE WITH PROMESA

59.1    **Effect of Confirmation:**  Nothing in this Plan or the Confirmation Order shall discharge, substitute, alter or otherwise modify the powers and responsibilities of the Oversight Boars pursuant to PROMESA or the obligations of each Reorganized Debtor under PROMESA. From and after the Effective Date, the Reorganized Debtors shall continue to have all of their obligations pursuant to PROMESA, including, without limitation, the terms and conditions of Titles I and II thereof.

59.2    **Ongoing Role of the Oversight Board:**  Nothing in the Plan or the Confirmation Order shall discharge any or all obligations of each Debtor under PROMESA and, from and after

the Effective Date, the Oversight Board's powers and responsibilities under PROMESA shall continue, and the Debtors' duties and obligations shall continue and be unaffected by the Plan and the consummation thereof.

## ARTICLE LX

### PROVISIONS REGARDING COMMITTEES

60.1   **Dissolution of Committees:**  On the Effective Date, each of the Creditors' Committee and the Retiree Committee shall be (a) dissolved and be deemed to have satisfied all of their respective duties and obligations, and (b) released and discharged from any action or activity taken, or required to be taken, in connection with the Title III Cases.  To the extent that, as of the date immediately prior to the Effective Date, either the Creditors' Committee or the Retiree Committee were a party to a contested matter or adversary proceeding in connection with the Title III Cases, including, without limitation, the Debt Limit Objections, the ERS Litigation, the Appointments Clause Litigation and any objection to claim, from and after the Effective Date and to the extent not already a party thereto, the Reorganized Debtors, the Litigation Trustee or the Avoidance Actions Trustee shall be deemed to have assumed such role and responsibility in connection with such contested matter and, upon such assumption, the Creditors' Committee or the Retiree Committee, as the case may be, shall be relieved of any role, responsibility or obligation with respect thereto.

## ARTICLE LXI

### RETENTION OF JURISDICTION

61.1   **Retention of Jurisdiction:**  The Title III Court shall retain and have exclusive jurisdiction over any matter arising under PROMESA, arising in or related to, the Title III Cases and the Plan, or that relates to the following:

(a)   to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including, without limitation, the resolution of any request for payment of any Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(b)   to resolve any matters related to Executory Contracts or Unexpired Leases, including, without limitation, (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

(c)   to ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(d)     to adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors or Reorganized Debtors that may be pending on the Effective Date or brought thereafter;

(e)     to decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to PROMESA, the Plan or orders entered by the Title III Court;

(f)     to enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Title III Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan,

(g)     to resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(h)     to approve any modification of the Plan or approve any modification of the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any order, the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or enter any order in aid of confirmation pursuant to sections 945 and 1142(b) of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate the Plan;

(i)     to adjudicate, decide or resolve any matters relating to the Debtors' compliance with the Plan and the Confirmation Order consistent with section 945 of the Bankruptcy Code;

(j)     to determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order, in each case, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction;

(k)     to enter and implement other orders, or take such other actions as may be necessary or appropriate to enforce or restrain interference by any Entity with consummation or enforcement of the Plan or the Confirmation Order, including, without limitation, the provisions of Section 44.2 and 44.3 hereof;

(l)     to adjudicate any and all controversies, suits or issues that may arise regarding the validity of any actions taken by any Entity pursuant to or in furtherance of the

Plan or Confirmation Order, including, without limitation, issuance of the New Bonds, and enter any necessary or appropriate orders or relief in connection with such adjudication; to determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, in each case, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction;

(m)     to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)     to enter an order or final decree concluding or closing the Title III Cases pursuant to section 945(b) of the Bankruptcy Code;

(o)     to enforce and clarify any orders previously entered by the District Court in the Title III Cases; and

(p)     to hear any other matter over which the Title III Court has jurisdiction under Sections 305 and 306 of PROMESA.

## ARTICLE LXII

## MISCELLANEOUS PROVISIONS

62.1   **Title to Assets:**  Except as provided in the Confirmation Order, on the Effective Date, title to all Assets and properties of the Debtors encompassed by the Plan shall vest in Reorganized Debtors, free and clear of all Liens (except the Liens granted pursuant to the Plan and Confirmation Order).

62.2   **Discharge and Release of Claims and Causes of Action:**

(a)     Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Debtors or Reorganized Debtors or any of its Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action.  Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.

(b)     All Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property and all such Claims.

(c)     Notwithstanding any other provisions of this Section 62.2, in accordance with the provisions of the Plan Support Agreement, each of the PSA Creditors and their respective Related Persons, solely in their capacity as Creditors of the Debtors, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the claims or causes of action asserted or which could have been asserted in the Actions, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by this Section 62.2.

62.3     **Injunction on Claims:**  Except as otherwise expressly provided in Section 62.2 of the Plan, the Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 62.2 hereof or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 62.2 hereof are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the

100

Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

62.4    **Integral to Plan:**  Each of the discharge, injunction, exculpation and release provisions provided in this Article LXII is an integral part of the Plan and is essential to its implementation.  Each of the Released Parties shall have the right to independently seek the enforcement of the discharge, injunction and release provisions set forth in this Article LXIII.

62.5    **Releases by the Debtors and Reorganized Debtors**:  Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, each of the Debtors and Reorganized Debtors, the Disbursing Agent and each of the Debtors' and Reorganized Debtors' Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtors, Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Debtors taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged or that could have been alleged in the Actions, the Related Actions, including, without limitation, any such Claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees.

62.6    **Injunction Related to Releases:**  As of the Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 62.5 of the Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducing or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 62.5 hereof; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or its inconsistent with the provisions of the Plan or the Confirmation Order.

62.7    **Exculpation:**

    (a)    **Government Parties**:  The Oversight Board, the Commonwealth, AAFAF, the Debtors and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the Effective Date, shall not have or incur any liability

to any Entity for any act taken or omitted to be taken in connection with the Title III Cases, the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the foregoing provisions of this Section 62.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct. Nothing in the foregoing provisions of this Section 62.7(a) shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the Plan.

(b)    **PSA Creditors:**  Each of the PSA Creditors solely in its capacity as a party to the Plan Support Agreement and a Creditor, as applicable, from the Petition Date up to and including the Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Cases, the formation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Settlement Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transaction set forth in the Plan and the Settlement Agreement; provided, however, that the foregoing provisions of this Section 62.7(b) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(c)    **Retiree Committee:**  Each of the members of the Retiree Committee solely in its capacity as a member of the Retiree Committee and a Creditor, as applicable, from the Petition Date up to and including the Effective Date and each of the Retiree Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Cases, the formation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Retiree Committee Plan Support Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan and the Retiree Committee Plan Support Agreement; provided, however, that, the foregoing provisions of this Section 62.7(c) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(d)    **AFSCME:**  Each of AFSCME solely in its capacity as a party to the AFSCME Plan Support Agreement and a Creditor, as applicable, from the Petition Date up to and including the Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Cases, the formation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure

Statement, the AFSCME Plan Support Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transaction set forth in the Plan and the AFSCME Plan Support Agreement; provided, however, that, the foregoing provisions of this Section 62.7(d) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

62.8   **Appointments Related Litigation:**  Notwithstanding anything contained herein to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation subsequent to entry of the Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the Plan and the Confirmation Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article LXII of the Plan.

62.9   **Bar Order:**  To the limited extent provided in the Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the Plan, the negotiation and consummation of the Settlement Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Related Actions, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Related Actions, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related Actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

62.10   **No Waiver:**  Notwithstanding anything to the contrary contained in Sections 62.5 and 62.6 hereof, the releases and injunctions set forth in such sections shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Oversight Board, AAFAF, Reorganized Debtors or the PSA Creditors to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by any of them.

62.11   **Supplemental Injunction:**  Notwithstanding anything contained herein to the contrary, except to the limited extent provided in the Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or

relating to any Claim against the Debtors, whenever and wherever arising or asserted, whether in
the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or
any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently
stayed, restrained and enjoined from taking any action against any of the Released Parties for the
purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with
respect to any Released Claims arising prior to the Effective Date (including prior to the Petition
Date), including, but not limited to:

      (a)    Commencing or continuing in any manner any action or other proceeding
of any kind with respect to any such Released Claim against any of the Released Parties or the
assets or property of any Released Party;

      (b)    Enforcing, attaching, collecting or recovering, by any manner or means,
any judgment, award, decree or order against any of the Released Parties or the assets or
property of any Released Party with respect to any such Released Claim;

      (c)    Creating, perfecting or enforcing any Lien of any kind against any of the
Released Parties or the assets or property of any Released Party with respect to any such
Released Claim;

      (d)    Except as otherwise expressly provided in the Plan or the Confirmation
Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity,
contribution or recoupment of any kind against any obligation due to any of the Released
Parties or against the property of any Released Party with respect to any such Released Claim;
and

      (e)    Taking any act, in any manner, in any place whatsoever, that does not
conform to, or comply with, the provisions of the Plan or the Confirmation Order, provided,
however, that the Debtors' compliance with the formal requirements of Bankruptcy Rule 3016
shall not constitute an admission that the Plan provides for any injunction against conduct not
otherwise enjoined under the Bankruptcy Code.

    62.12  **Post-Effective Date Fees and Expenses**:  From and after the Effective Date,
Reorganized Debtors shall, in the ordinary course of business and without the necessity for any
approval by the Title III Court, retain professionals and pay the reasonable professional fees and
expenses incurred by Reorganized Debtors related to implementation and consummation of the
Plan without further approval from the Title III Court.  Without limiting the foregoing, from and
after the Effective Date, Reorganized Debtors shall, in the ordinary course of business and
without the necessity for any approval by the Title III Court, but in no event later than forty-five
(45) days following the submission of invoices or statements with respect to the incurrence of
fees and expenses to the Reorganized Debtors, pay the reasonable and documented fees and
reimburse the expenses of the Oversight Board and its professionals related to the
implementation and consummation of the Plan and in connection with its duties and
responsibilities pursuant to PROMESA and the terms and provisions of the Plan.

    62.13  **Securities Act Exemption**:  Pursuant to section 1145 of the Bankruptcy Code
and/or Section 3(a)(2) of the Securities Act, the offering, issuance, and distribution of the New

Bonds pursuant to the terms hereof shall be exempt from registration under the Securities Act and any state or local law requiring registration for the offer, issuance or distribution of securities, including, but not limited to, the registration requirements of Section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery or qualification prior to the offering, issuance, distribution, or sale of securities.

62.14   **Severability:**  Subject to the terms and provisions of the Plan Support Agreement, if, prior to the Confirmation Date, any term or provision of the Plan shall be held by the Title III Court to be invalid, void or unenforceable, the Title III Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

62.15   **Governing Law:**  Except to the extent that other federal law is applicable, or to the extent that an exhibit hereto or any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, PROMESA (including the provisions of the Bankruptcy Code made applicable under Section 301 of PROMESA) and, to the extent not inconsistent therewith, the laws of the Commonwealth of Puerto Rico giving effect to principles of conflicts of laws.

62.16   **Closing Case:**  The Oversight Board shall, promptly upon the full administration of the Title III Cases, file with the Title III Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Title III Court.  Notwithstanding the closing of the Title III Cases, the Title III Court shall retain jurisdiction of all of the matters set forth in Article LXI of the Plan.

62.17   **Section Headings:**  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

62.18   **Inconsistencies:**  To the extent of any inconsistency between (a) the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern and (b) the terms and provisions of the Plan and the terms and provisions of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern and be deemed a modification of the Plan; provided, however, that under no circumstances shall the Confirmation Order modify the economic terms set forth herein absent consent of the Oversight Board.

62.19   **Document Retention:**  From and after the Effective Date, the Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors.

62.20   **Immediate Binding Effect:**  Pursuant to section 944(a) of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and

enforceable and deemed binding on any and all holders of Claims and their respective successors and assigns, whether or not the Claim of any such holder is impaired under the Plan and whether or not such holder has accepted the Plan.  The releases, exculpations, and settlements effected under the Plan shall be operative, and subject to enforcement by the Title III Court, from and after the Effective Date, including pursuant to the injunctive provisions of the Plan.  Once approved, the compromises and settlements embodied in the Plan, along with the treatment of any associated Allowed Claims, shall not be subject to collateral attack or other challenge by any Entity in any court or other forum.  As such, any Entity that opposes the terms of any compromise and settlement set forth in the Plan must (a) challenge such compromise and settlement prior to confirmation of the Plan and (b) demonstrate appropriate standing to object and that the subject compromise and settlement does not meet the standards governing settlements under Bankruptcy Rule 9019 and other applicable law.

62.21  **Additional Documents:**  On or before the Effective Date, the Oversight Board may file with Clerk of the Title III Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. the Debtors and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest, from time to time, may prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

62.22  **Reservation of Rights:**  Except as expressly set forth herein, the Plan shall have no force or effect unless the Title III Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the holders of Claims prior to the Effective Date.  Except as expressly set forth herein, the rights and powers of the government of Puerto Rico under the Puerto Rico Constitution and PROMESA, including, without limitation, under Sections 303 and 305 of PROMESA, are expressly reserved (subject to any limitation thereon imposed by the Puerto Rico Constitution, the U.S. Constitution or PROMESA), and nothing herein shall be deemed a waiver of any such rights and powers.

62.23  **Successors and Assigns:**  Except as expressly provided otherwise in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

62.24  **Notices:**  All notices, requests to, demands or other document(s) required by the Plan or the Confirmation Order to be served on or delivered to the Oversight Board, the Debtors or AAFAF to be effective shall be in writing including by facsimile transmission and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Oversight Board, to:     Financial Oversight and Management Board for Puerto Rico
                                   268 Muñoz Rivera Ave, Suite 1107

San Juan, PR 00918-1813
Attn: Natalie A. Jaresko, Executive Director

– with a copy to –

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Attn: Martin J. Bienenstock, Esq.
      Brian S. Rosen, Esq.
Tel: (212) 969-3000
Fax: (212) 969-2900

– with a copy to –

If to the Debtors, to:      The Commonwealth of Puerto Rico
c/o Fiscal Agency and Financial Advisory Authority
Roberto Sánchez Vilella (Minillas) Government Center
De Diego Ave. Stop 22
San Juan, Puerto Rico 00907
Attn: Office of the Executive Director

– with a copy to –

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Attn: Martin J. Bienenstock, Esq.
      Brian S. Rosen, Esq.
Tel: (212) 969-3000
Fax: (212) 969-2900

– and –

O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Attn: John Rapisardi, Esq.
      Nancy Mitchell, Esq.
      Suzzanne Uhland, Esq.
Tel: (212) 326-2000
Fax: (212) 326-2061

If to AAFAF, to:      Fiscal Agency and Financial Advisory Authority
Roberto Sánchez Vilella (Minillas) Government Center

De Diego Ave. Stop 22
San Juan, Puerto Rico 00907

– with a copy to –

O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Attn:  John Rapisardi, Esq.
        Nancy Mitchell, Esq.
        Suzzanne Uhland, Esq.
Tel:  (212) 326-2000
Fax:  (212) 326-2061

     62.25   **Term of Injunctions or Stays:**  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Title III Cases (pursuant to sections 105, 362, or 922 of the Bankruptcy Code or any order of the Title III Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

     62.26   **Entire Agreement:**  Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

     62.27   **Plan Supplement:**  All documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Upon the filing of the Plan Supplement with the Clerk of the Title III Court, copies of the documents contained therein shall be made available upon written request to the Oversight Board's counsel at the address above or by downloading such documents from [https://cases.primeclerk.com/ puertorico/] or the Title III Court's website, available via PACER.  Unless otherwise ordered by the Title III Court, to the extent any document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control; provided, however, that, with respect to matters governed by the New Bond Indenture, to the extent that any provisions of the Plan are inconsistent with the New Bond Indenture, the New Bond Indenture shall control.

Dated: San Juan, Puerto Rico
       September 27, 2019

THE COMMONWEALTH OF PUERTO RICO, by
and through the Financial Oversight and
Management Board for Puerto Rico as its
representative

By: /s/ Natalie A. Jaresko
       Name:  Natalie A. Jaresko
       Title:  Executive Director


EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEATH OF
PUERTO RICO, by and through the Financial
Oversight and Management Board for Puerto Rico
as its representative


By: /s/ Natalie A. Jaresko
       Name:  Natalie A. Jaresko
       Title:  Executive Director


PUERTO RICO PUBLIC BUILDINGS
AUTHORITY, by and through the Financial
Oversight and Management Board for Puerto Rico
as its representative


By: /s/ Natalie A. Jaresko
       Name:  Natalie A. Jaresko
       Title:  Executive Director

109