## **<u>EXHIBIT B</u>**

GO BOND/PBA BOND PSA

**EXECUTION COPY**

## PLAN SUPPORT AGREEMENT

PLAN SUPPORT AGREEMENT, dated as of May 31, 2019, by and among (a) Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), as representative of the Commonwealth of Puerto Rico (the "**Commonwealth**"), (b) holders of GO Bond Claims and/or CW Guarantee Bond Claims, each as defined below, which may include the advisors or managers who are advising or managing a holder of GO Bond Claims on behalf of such holder as set forth on Exhibit "A" hereto, (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**GO Holders**"), and (c) holders of PBA Bond Claims, as defined below, which may include the advisors or managers who are advising or managing a holder of PBA Bond Claims on behalf of such holder as set forth on Exhibit "B" hereto (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**PBA Holders**"). The signatories hereto are referred to hereafter collectively as the "**Parties**" or individually as a "**Party**". Capitalized terms used but not otherwise defined herein shall have the meanings set forth in Article I below or in the Term Sheet (as defined below), as applicable[1].

## RECITALS

A.     Pursuant to the authority of Act 33 of the Legislative Assembly of Puerto Rico, approved on December 7, 1942, as amended, the Commonwealth issued the series of general obligation bonds (the "**GO Bonds**") set forth on Exhibit "C" hereto, including, without limitation, those GO Bonds as to which the Monolines (as defined below) have insured the payment of principal and interest with respect thereto.

B.     Pursuant to the authority of Act 56 of the Legislative Assembly of Puerto Rico, approved July 19, 1958, as amended, the Puerto Rico Public Buildings Authority ("**PBA**") issued the series of bonds (collectively, the "**PBA Bonds**") set forth on Exhibit "D" hereto, guaranteed by the Commonwealth, including, without limitation, those PBA Bonds as to which the Monolines have insured the payment of principal and interest with respect thereto.

C.     On June 30, 2016, the Puerto Rico Oversight, Management, and Economic Stability Act was signed into law by the President of the United States (P.L. 114-187) ("**PROMESA**").

D.     PROMESA created the Oversight Board and provided the Oversight Board with certain powers over the finances and restructuring process with respect to, among others, the Commonwealth and its instrumentalities, all as provided for in PROMESA.

E.     Pursuant to Act 2-2017, Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**") was appointed as the agent, of and advisor to, the Government of Puerto Rico, and granted authority with respect to the restructuring of any indebtedness issued by the Commonwealth and any governmental entity of the Commonwealth.

---

[1] In the event of any conflict between the terms defined in the Term Sheet and herein, the meanings set forth herein shall govern.

108479178v1

F.      On May 3, 2017 (the "**Commonwealth Petition Date**"), the Oversight Board filed a Title III petition on behalf of the Commonwealth (the "**Commonwealth PROMESA Proceeding**") in the United States District Court for the District of Puerto Rico (the "**Title III Court**").

G.      The Oversight Board is the representative of the Commonwealth in the Commonwealth PROMESA Proceeding pursuant to Section 315(b) of PROMESA.

H.      The Parties have engaged in good faith, arm's-length negotiations regarding the principal economic terms of a proposed restructuring of the GO Bonds, the PBA Bonds and claims against the Commonwealth based upon the Commonwealth's guarantee of payment of the PBA Bonds to be implemented in a manner to be mutually agreed upon as set forth in the term sheet annexed hereto as Exhibit "E" (the "**Term Sheet**").

I.      The Oversight Board consents to the Commonwealth's execution and delivery of this Agreement and to the Commonwealth's performing and exercising its rights under this Agreement, including, without limitation, the Commonwealth's right to terminate this Agreement and right to consent to any waiver or amendment, in each case, in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

ARTICLE I
DEFINITIONS

Section 1.1     <u>Recitals.</u>  The recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement.

Section 1.2     <u>Definitions.</u>  The following definitions shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

*"Agreement"* shall mean, collectively, this Plan Support Agreement, and each exhibit annexed hereto or thereto, including, without limitation, the Term Sheet, as each may be amended, supplemented, or otherwise modified in accordance with the terms hereof or thereof.

*"Appointments Related Litigation"* shall mean, collectively, the litigation styled (a) In Re: The Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico, No. 18-1108, currently subject to a petition for a writ of certiorari before the United States Supreme Court, (b) In re: The Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico, No. 18-1746, currently pending in the United States Court of Appeals for the First Circuit, (c) Union de Trabajadores de la Industria Electrica y Riego (UTIER) v. Puerto Rico Electric Power Authority, et al., Adv. Pro. No. 17-AP-228-LTS, currently pending in the Title III Court, (d) Rene Pinto Lugo, et al. v. The Government of the United States of America, et al., Adv. Pro. No. 18-041-LTS, currently pending in the Title III Court, (e) Hermanidad De Empleados Del Fondo

2

Del Seguro Del Estado, Inc., et al. v. Government of the United States of America, et al., Adv. Pro. No. 18-066-LTS, currently pending in the Title III Court, (f) Hon. Rafael Hernandez-Montanez, et al. v. The Financial Oversight and Management Board of Puerto Rico, Adv. Pro. No. 18-090-LTS, currently pending in the Title III Court, and (g) such other litigation as may be currently pending or as may be commenced during the period from and after the date hereof up to and including the Effective Date wherein claims or causes of action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigations have been asserted.

"***Bankruptcy Code***" shall mean Title 11 of the United States Code, as amended, §§101, *et seq*.

"***Bankruptcy Rules***" shall mean the Federal Rules of Bankruptcy Procedure.

"***Business Day***" shall mean a day other than a Saturday, a Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

"***Confirmation Order***" shall mean the order of the Title III Court confirming the Plan in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code made applicable in the PROMESA Proceedings in accordance with Section 301 of PROMESA, and, to the extent applicable, the order of the Title III Court approving a qualifying modification under Section 601 of PROMESA, which orders shall be in form and substance reasonably satisfactory to each Party.

"***Covered Borrowers***" shall mean, collectively, the Commonwealth and, as of the PBA Filing date, PBA.

"***CW Guarantee Bond Claims***" shall have the meaning set forth in the Term Sheet with, for purposes of the Plan, the amount of CW Guarantee Bond Claims calculated as the outstanding principal amount of the PBA Bonds minus the amount of unearned original issue discount and plus accrued, but unpaid, interest during the period up to, but not including, the PBA Filing Date.

"***Debt Limit Objections***" shall mean, collectively, that certain (i) Omnibus Objection of (I) Financial Oversight and Management Board, Acting through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds, dated January 14, 2019 [Dkt. No. 4784], (ii) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds, dated May 21, 2019 [Dkt. No. 7057], and (iii) any other objections that may be filed pertaining to the same form and basis of requested relief.

"***Definitive Documents***" shall mean, collectively, the documents, including, without limitation, any related agreements, instruments, schedules or exhibits, that are necessary or desirable to implement, or otherwise relate to, the terms and provisions set forth herein, in the Term Sheet, the Plan (including any amendments, modifications and supplements thereto), the

**EXECUTION COPY**

Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, and bond resolutions, as amended or as repealed and replaced, each having terms and conditions consistent with this Agreement and PROMESA, in all respects and otherwise be in form and substance reasonably satisfactory to each Party; provided, however, that the rights of each Party with respect to the documentation relating to the treatment of Insured Claims shall be governed exclusively by the terms and provisions of the Term Sheet.

*"Disclosure Statement"* shall mean the disclosure statement filed with respect to the Plan with the Title III Court by the Oversight Board in the PROMESA Proceedings in accordance with section 1125 of the Bankruptcy Code, made applicable in the PROMESA Proceedings in accordance with Section 301 of PROMESA, which disclosure statement shall be in form and substance reasonably satisfactory to each Party.

*"Disclosure Statement Order"* shall mean the order of the Title III Court (a) approving the form of Disclosure Statement and the adequacy of the information contained therein in accordance with section 1125 of the Bankruptcy Code, made applicable in the PROMESA Proceedings in accordance with Section 301 of PROMESA, and (b) authorizing, among other things, the form and manner of solicitation of (i) acceptance and rejections to the Plan, and (ii) elections, if applicable, of distributions thereunder, which order shall be in form and substance reasonably satisfactory to each Party.

*"Effective Date"* shall mean the date on which the transactions contemplated by the Plan and authorized by the Title III Court pursuant to the Confirmation Order have been substantially consummated, but, under all circumstances, shall be the date no later than the tenth (10th) calendar day following the date on which all conditions to the effectiveness of the Plan have been satisfied or waived in accordance with its terms.

*"ERS"* shall mean the Employee Retirement System of the Government of the Commonwealth of Puerto Rico.

*"ERS Title III Case"* shall mean the Title III case commenced by the Oversight Board on behalf of ERS in the Title III Court.

*"Excess Cash"* shall have the meaning set forth in the Term Sheet.

*"Face Amount"* shall mean, solely for purposes of the signature pages affixed hereto, (a) with respect to current interest GO Bonds, the outstanding principal amount of such GO Bonds as of the date of this Agreement, (b) with respect to current interest PBA Bonds, the outstanding principal amount of such PBA Bonds as of the date of this Agreement, and (c) with respect to capital appreciation GO Bonds, the accreted value of such GO Bonds during the period up to, but not including, the Commonwealth Petition Date.

*"Final Order"* shall mean an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial reargument, or rehearing thereof has been sought, (i) such

**EXECUTION COPY**

order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the applicable local Bankruptcy Rules.

*"GO Bond Claims"* shall mean, collectively, (i) the claims against the Commonwealth arising from or relating to the GO Bonds, which shall be calculated, for purposes of the Plan, as the outstanding principal amount of the GO Bonds (which amount shall include accretion, if any, as of the Commonwealth Petition Date), minus the amount of unearned original issuance discount and plus accrued but unpaid interest up to, but not including, the Commonwealth Petition Date and (ii) the CW Guarantee Bond Claims.

*"Government Parties"* shall mean, collectively, the Oversight Board, AAFAF, the Commonwealth, and the PBA.

*"Government Released Claims"* shall mean, collectively, any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which any Party, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Government Releasee arising from, related to, or in connection with PBA, the PBA Bonds, the PBA Bond Claims, the GO Bonds, the GO Bond Claims, CW Guarantee Bond Claims, or the PBA Litigation, and arising prior to the Effective Date; provided, however, that "Government Released Claims" shall not include any and all rights, privileges, claims, demands, liabilities, or causes of action of any and every kind, character or nature whatsoever (a) against (i) the Commonwealth or the PBA arising from or relating to the Plan or the securities to be issued pursuant to the Plan, or (ii) a Government Party unrelated to the GO Bonds, the GO Bond Claims, CW Guarantee Bonds Claims, the PBA Bonds, the PBA Bond Claims, or PBA, or (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct.

*"Government Releasees"* shall mean the Government Parties, together with their respective current or former board members, directors, principals, agents, officers, employees, advisors and professionals, in each case, in their capacities as such, including, without limitation, any and all advisors and professionals retained by the Government Parties in connection with the PROMESA Proceedings, in their respective capacities as such.

*"HTA"* shall mean Puerto Rico Highways and Transportation Authority.

*"HTA Title III Case"* shall mean the Title III case commenced by the Oversight Board on behalf of HTA.

108479178v1

**EXECUTION COPY**

*"Insured Claims"* shall mean, collectively, Insured GO Bond Claims and Insured PBA Bond Claims.

*"Insured GO Bond Claims"* shall mean, collectively, those GO Bond Claims, the principal and interest payments of which have been insured by a Monoline.

*"Insured PBA Bond Claims"* shall mean, collectively, those PBA Bond Claims, the principal and interest payments of which have been insured by a Monoline.

*"Invalidity Actions"* shall mean, collectively, those litigations set forth on Schedule 1 to the Term Sheet.

*"Late Vintage Litigation"* shall have the meaning set forth in the Term Sheet.

*"LCDC"* shall mean the Lawful Constitutional Debt Coalition, consisting of the LCDC Holders.

*"LCDC Holders"* shall mean, collectively, Aristeia Capital, LLC, Farmstead Capital Management, FCO Advisors LLC, GoldenTree Asset Management LP, Monarch Alternative Capital LP, Taconic Capital Advisors L.P., and Whitebox Advisors L.L.C., each on behalf of itself or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms hereof.

*"Lien Challenge Actions"* shall mean, collectively, those litigations set forth on Schedule 2 to the Term Sheet.

*"Monolines"* shall mean Ambac Assurance Corp., Assured Guaranty, Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation, as insurers of GO Bonds and PBA Bonds, as applicable.

*"New Bonds"* shall have the meaning set forth in the Term Sheet.

*"PBA Bond Claims"* shall mean, collectively, the claims against the PBA arising from or relating to the PBA Bonds, which shall be calculated, for the purposes of the Plan, as the outstanding principal amount of the PBA Bonds (which amount shall include accretion, if any, as of the PBA Filing Date), minus the amount of unearned original issue discount and plus accrued, but unpaid, interest up to, but not including, the PBA Filing Date.

*"PBA Filing Date"* shall mean, the date upon which the Oversight Board files (a) a Title III petition on behalf of PBA in the Title III Court or (b) an application in the Title III Court to approve a qualifying modification on behalf of PBA.

*"PBA Litigation"* shall mean the litigation styled <u>The Financial Oversight and Management Board for Puerto Rico v. Puerto Rico Public Building Authority</u>, Adv. Pro. No. 18-AP-149-LTS, currently pending in the Title III Court.

*"PBA PROMESA Proceeding"* shall mean the Title III case commenced by the Oversight Board on behalf of PBA in the Title III Court or, in the event that the LCDC and the

Case:17-03283-LTS   Doc#:8766-2   Filed:09/27/19   Entered:09/27/19 09:44:05   Desc:
Exhibit B1 - GO Bond & PBA Bond PSA (Part 1)   Page 8 of 23

EXECUTION COPY

QTCB Group propose to the Oversight Board a modification of the PBA Bonds under Title VI of PROMESA, the application to approve a qualifying modification filed by the Oversight Board on behalf of PBA.

*"**Plan**"* shall mean the joint plan of adjustment for the Commonwealth, the PBA, and in accordance with Section 312 of PROMESA or, if applicable, a qualifying modification approved under Section 601 of PROMESA and incorporating the terms and provisions herein and in the Term Sheet, the form and substance of which shall be reasonably satisfactory to each Party (including, without limitation, with respect to any matter relating to the Monolines); provided, however, that, in the event that the inclusion of other entities will not negatively economically impact the treatment afforded in the Term Sheet, with the consent of the LCDC and the QTCB Group, which consent shall not be unreasonably withheld, the Oversight Board may include in a plan of adjustment such additional entities as it determines appropriate.

*"**Plan Supplement**"* shall mean, the volume(s) of documents, agreements and instruments, including, without limitation, the Definitive Documents, which shall be filed with the Title III Court in connection with the Plan and consummation of the transactions contemplated therein, and each of which shall be in form and substance reasonably satisfactory to each of the Parties; provided, however, that the rights of each Party with respect to the documentation relating to the treatment of Insured Claims shall be governed exclusively by the terms and provisions of the Term Sheet.

*"**PROMESA Proceedings**"* shall mean, collectively, the Commonwealth PROMESA Proceeding and the PBA PROMESA Proceeding.

*"**PSA Creditors**"* shall mean, collectively, the GO Holders and the PBA Holders.

*"**Qualified Marketmaker**"* shall mean an entity that (x) holds itself out to the market as standing ready in the ordinary course of its business to purchase from customers and sell to customers debt securities such as the GO Bonds or the PBA Bonds or enter with customers into long and short positions in debt securities such as the GO Bonds or the PBA Bonds, in its capacity as a dealer or market marker in such GO Bonds or PBA Bonds; (y) is in fact regularly in the business of making a market in debt securities; and (z) if transacting with respect to GO Bonds or PBA Bonds, is registered with Securities and Exchange Commission and financial institutions regulatory authority.

*"**QTCB Group**"* shall mean the QTCB Noteholder Group, consisting of the QTCB Noteholders.

*"**QTCB Noteholders**"* shall mean, collectively, Canyon Capital Advisors LLC, OZ Management LP, and Davidson Kempner Capital Management LP, each on behalf of itself or on behalf of its participating clients or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms hereof.

Section 1.3     Other Terms.  Other terms may be defined elsewhere in this Agreement and, unless otherwise indicated, shall have such meaning throughout this Agreement.  As used in this Agreement, any reference to any federal, state, local, or foreign law, including any

**EXECUTION COPY**

applicable law, will be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise. The words "include", "includes", and "including" will be deemed to be followed by "without limitation." Pronouns in masculine, feminine or neutral genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement", "herein", "hereof", "hereby", "hereunder", and words of similar impact refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited,

Section 1.4    Interpretations. The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties hereto and no presumption or burden of proof will arise favoring or disfavoring any party hereto because of the authorship of any provision of this Agreement.

Section 1.5    Exhibits. Each of the exhibits, annexes, signature pages and schedules annexed hereto are expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes and schedules.

ARTICLE II
GENERAL PROVISIONS

Section 2.1    Financial Information. Each of the Government Parties acknowledges and agrees that (a) the financial information set forth on signature pages affixed to this Agreement and the CUSIP numbers for the GO Bonds and PBA Bonds provided by the Parties pursuant to Section 2.2 hereof are proprietary, privileged, and confidential, and (b) unless otherwise ordered by the Title III Court, shall use their reasonable best efforts to protect the confidential nature of such financial information and CUSIP numbers, including, without limitation, in filings to be made in the Title III Court or any other public release.

Section 2.2    CUSIP Information. Unless the then current information has previously been provided to the Oversight Board, within five (5) Business Days after the date hereof, each of the GO Holders and PBA Holders shall provide the Oversight Board, in writing, the CUSIP numbers for each of the GO Bonds and PBA Bonds, if any, such Party owns or has due investment management responsibility and authority for funds or accounts which own such GO Bonds or PBA Bonds, as the case may be. In addition, within five (5) Business Days after the date that the Court enters the Disclosure Statement Order, each of the GO Holders and PBA Holders shall provide the Oversight Board, in writing, the CUSIP numbers for each of the GO Bonds and PBA Bonds, if any, such Party then owns or has due investment management responsibility and authority for funds or accounts which own such GO Bonds or PBA Bonds, as the case may be.

ARTICLE III
REPRESENTATIONS AND WARRANTIES

Section 3.1    Representations and Warranties of the Oversight Board. The Oversight Board hereby represents and warrants that: (a) it is duly created in accordance with the terms and

8

Case:17-03283-LTS   Doc#:8766-2   Filed:09/27/19   Entered:09/27/19 09:44:05   Desc:
Exhibit B1 - GO Bond & PBA Bond PSA (Part 1)   Page 10 of 23

EXECUTION COPY

provisions of PROMESA with all requisite consent, approval, power and authority to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite, consent, approval, power and authority to execute and deliver and to perform its obligations under this Agreement and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it or any law, rules or regulations applicable to it; and (c) except with respect to the Appointments Related Litigation, no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.2    Representations and Warranties of AAFAF.  AAFAF hereby represents and warrants that: (a) it is duly created under the laws of the jurisdiction of its organization with all requisite consent, approval, power and authority to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite, consent, approval, power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.3    Representations and Warranties of the Commonwealth.  The Commonwealth hereby represents and warrants that, subject to entry of an order of the Title III Court: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite, consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby: (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.4    Representations and Warranties of PBA.  PBA hereby represents and warrants that, subject to entry of an order of the Title III Court: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite, consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to

Case:17-03283-LTS   Doc#:8766-2   Filed:09/27/19   Entered:09/27/19 09:44:05   Desc:
Exhibit B1 - GO Bond & PBA Bond PSA (Part 1)   Page 11 of 23

EXECUTION COPY

perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.5    Representations and Warranties of the GO Holders.  Each of the GO Holders, severally and not jointly, hereby represents and warrants on behalf of itself that, as of the date hereof: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (d) it owns or has due investment management responsibility and authority for funds or accounts which own the GO Bonds of no less than the Face Amounts set forth on the signature pages affixed to this Agreement as of the date hereof, which it would be entitled to vote in connection with the solicitation of acceptances and rejections to the Plan, other than potentially with respect to the Insured GO Bond Claims, and that, as of the date hereof, subject to any liens or encumbrances permitted by section 4.5(a), it has not sold, transferred, pledged, hypothecated or assigned such GO Bonds or any voting, consent or direction rights related to such GO Bonds to any person or entity, that would prevent or adversely affect in any way such GO Holders' performance of its obligations contained in this Agreement at the time such obligations are required to be performed; provided, however, that each of the Parties acknowledges that each Insured GO Bonds Claim shall be voted in accordance with Section 301(c)(3) of PROMESA, so long as this Agreement remains in effect.

Section 3.6    Representations and Warranties of the PBA Holders.  Each of the PBA Holders, severally and not jointly, hereby represents and warrants on behalf of itself that, as of the date hereof: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; (c) no proceeding,

108479178v1

EXECUTION COPY

litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (d) it owns or has due investment management responsibility and authority for funds or accounts which own the PBA Bonds of no less than the Face Amounts set forth on the signature pages affixed to this Agreement as of the date hereof, which it would be entitled to vote in connection with the solicitation of acceptances and rejections to the Plan, other than potentially with respect to the Insured PBA Bond Claims, and that, as of the date hereof, subject to any liens or encumbrances permitted by Section 4.6(a), it has not sold, transferred, pledged, hypothecated or assigned such PBA Bonds or any voting, consent or direction rights related to such PBA Bonds to any person or entity, that would prevent or adversely affect in any way such PBA Holders' performance of its obligations contained in this Agreement at the time such obligations are required to be performed; provided, however, that each of the Parties acknowledges that each Insured PBA Bond Claim shall be voted in accordance with Section 301(c)(3) of PROMESA, so long as this Agreement remains in effect.

Section 3.7    Representations of the Parties to this Agreement. Each Party, severally and not jointly, represents and acknowledges that: (a) in executing this Agreement, it does not rely, and has not relied, upon any representation or statement made by any other Party or any of such Party's representatives, agents or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as may be stated specifically in this Agreement; (b) in executing this Agreement, it has relied entirely upon its own judgment, beliefs and interest and the advice of its counsel and that it has had a reasonable period of time to consider the terms of this Agreement before entering into it; and (c) it has reviewed this Agreement and that it fully understands and voluntarily accepts all of the provisions contained herein. Nothing contained herein shall limit or otherwise modify any commutation or other separate agreement or instrument entered into by one or more GO Holders or PBA Holders, on the one hand, and a Monoline, on the other hand.

ARTICLE IV<br>COVENANTS

Section 4.1    Covenants of the Oversight Board. The Oversight Board shall take, and cause the Commonwealth and, following the commencement of the PBA PROMESA Proceeding, PBA to take, all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof. Such actions shall include, but not be limited to, (a) commencing the PBA PROMESA Proceeding by a date no earlier than the date that the Oversight Board files the Plan and Disclosure Statement, (b) filing the Plan and Disclosure Statement, in form and substance consistent with this Agreement and reasonably acceptable to the Parties, with the Title III Court by October 15, 2019, (c) prosecuting, in a timely and

11

appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (d) taking such action as is necessary to reconcile Excess Cash by the earlier of (i) twenty (20) days prior to the Effective Date and (ii) February 29, 2020, (e) as soon as reasonably practicable following the date hereof, filing a motion or motions to stay the PBA Litigation and the Late Vintage Litigation, (f) as soon as commercially practicable, seeking (or causing to be sought) ratings on the New Bonds by the applicable ratings agencies as contemplated in accordance with the terms and provisions of the Term Sheet, (g) using its reasonable best efforts to cause the New Bonds, including, without limitation, in connection with the use of custodial trusts by any of the Monolines, to be tax-exempt to the extent permitted by law, including, without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities, and only if the Oversight Board and the Commonwealth determine in their joint and absolute discretion, upon consultation with one representative/advisor for each of the LCDC and the QTCB Group (which representatives/advisors shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board), to seek a private letter ruling from the Internal Revenue Service determining that interest on the New Bonds will be exempt from federal income taxes, and (h) refraining from commencing any action or proceeding or asserting any claim or objection against any GO Holder or PBA Holder relating to the GO Bonds or the PBA Bonds, as the case may be, and taking all reasonable efforts to prevent any other person or entity (private or governmental) from commencing any such action or proceeding or asserting any such claim or objection.

Section 4.2    Covenants of AAFAF.    AAFAF shall take, and cause the Commonwealth and the PBA to take, all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof.  Such actions shall include, but not be limited to, (a) prosecuting, in a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (b) taking such action as is necessary to reconcile Excess Cash by the earlier of (i) twenty (20) days prior to the Effective Date and (ii) February 29, 2020, (c) as soon as reasonably practicable following the date hereof, filing or supporting a motion or motions to stay the PBA Litigation and the Late Vintage Litigation promptly following the date hereof, (d) as soon as commercially practicable, seeking (or causing to be sought) ratings on the New Bonds by the applicable ratings agencies as contemplated in accordance with the terms and provisions of the Term Sheet, (e) using its reasonable best efforts to cause the New Bonds, including, without limitation, in connection with the use of custodial trusts by any of the Monolines, to be tax-exempt to the extent permitted by law, including, without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities, and only if the Oversight Board and the Commonwealth determine in their joint and absolute discretion, upon consultation with one

108479178v1

**EXECUTION COPY**

representative/advisor for each of the LCDC and the QTCB Group (which representatives/advisors shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board), to seek a private letter ruling from the Internal Revenue Service determining that interest on the New Bonds will be exempt from federal income taxes, (f) using its reasonable best efforts to cause the Legislature to enact the legislation required for the issuance of the New Bonds and to facilitate confirmation and consummation of the Plan, (g) providing the Oversight Board with such financial information as shall be reasonably requested to be necessary to prosecute the PROMESA Proceedings, and (h) refraining from commencing any action or proceeding or asserting any claim or objection against any GO Holder or PBA Holder relating to the GO Bonds or the PBA Bonds, as the case may be, and taking all reasonable efforts to prevent any other person or entity (private or governmental) from commencing any such action or proceeding or asserting any such claim or objection.

Section 4.3    Covenants of the Commonwealth.  The Commonwealth shall take all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof.  Such actions shall include, but not be limited to, (a) prosecuting, in a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (b) taking such action as is necessary to reconcile Excess Cash by the earlier of (i) twenty (20) days prior to the Effective Date and (ii) February 29, 2020, (c) as soon as reasonably practicable following the date hereof, filing or supporting a motion or motions to stay the PBA Litigation and the Late Vintage Litigation, (d) as soon as commercially practicable, seeking (or causing to be sought) ratings on the New Bonds by the applicable ratings agencies as contemplated in accordance with the terms and provisions of the Term Sheet, (e) using its reasonable best efforts to cause the New Bonds, including, without limitation, in connection with the use of custodial trusts by any of the Monolines, to be tax-exempt to the extent permitted by law, including, without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities, and only if the Oversight Board and the Commonwealth determine in their joint and absolute discretion, upon consultation with one representative/advisor for each of the LCDC and the QTCB Group (which representatives/advisors shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board), to seek a private letter ruling from the Internal Revenue Service determining that interest on the New Bonds will be exempt from federal income taxes, (f) using its reasonable best efforts to cause the Legislature to enact the legislation required for the issuance of the New Bonds and to facilitate confirmation and consummation of the Plan, and (g) providing the Oversight Board with such financial information as shall be reasonably requested to be necessary to prosecute the Commonwealth PROMESA Proceeding, and (h) refraining from commencing any action or proceeding or asserting any claim or objection against any GO Holder or PBA Holder relating to the GO Bonds or the PBA Bonds, as the case may be, and taking all reasonable efforts to prevent any other

13

Case:17-03283-LTS   Doc#:8766-2   Filed:09/27/19   Entered:09/27/19 09:44:05   Desc:
Exhibit B1 - GO Bond & PBA Bond PSA (Part 1)   Page 15 of 23

EXECUTION COPY

person or entity (private or governmental) from commencing any such action or proceeding or asserting any such claim or objection.

Section 4.4    Covenants of PBA.   PBA shall take all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof.  Such actions shall include, but not be limited to, (a) prosecuting, in a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (b) informing the Oversight Board by a date no earlier than the date upon which the Oversight Board files the Disclosure Statement and Plan that the PBA desires to effect a plan to adjust its debts, (c) as soon as reasonably practicable following the date hereof, filing or supporting a motion or motions to stay the PBA Litigation, (d) providing the Oversight Board with such financial information as shall be reasonably requested to be necessary to prosecute the PBA PROMESA Proceeding, and (e) refraining from commencing any action or proceeding or asserting any claim or objection against any GO Holder or PBA Holder relating to the GO Bonds or the PBA Bonds, as the case may be, and taking all reasonable efforts to prevent any other person or entity (private or governmental) from commencing any such action or proceeding or asserting any such claim or objection.

Section 4.5    Covenants of the GO Holders.   Subject to the terms and conditions hereof, each of the GO Holders, severally and not jointly, hereby covenants and agrees as follows:

(a)    None of the GO Holders shall sell, transfer, pledge, hypothecate or assign (a "**Transfer**") any of the GO Bond Claims, or any voting, consent, or direction rights or participations or other interests therein (collectively, the "**GO Interests**") during the period from the date hereof up to and including the earlier to occur of (i) the Effective Date and (ii) the termination of this Agreement in accordance with the provisions of Section 6.1 hereof; provided, however, that, notwithstanding the foregoing, each of the GO Holders may transfer any GO Interests to (1) another PSA Creditor or (2) in the event that the transferee is not a PSA Creditor at the time of Transfer, such transferee executes and delivers, within five (5) calendar days after execution thereof, to counsel for the Oversight Board and AAFAF, the Joinder Agreement attached hereto as Exhibit "F" (a "**Qualified Transferee**"), pursuant to which (y) such Qualified Transferee shall (i) assume all the rights and obligations of the transferor in accordance with the terms and conditions of this Agreement and (ii) such Qualified Transferee shall then be deemed a PSA Creditor for all purposes herein, including, without limitation, with respect to any additional GO Bonds held by such Qualified Transferee at the time it joins this Agreement, and shall assume all of the rights and obligations hereunder (other than the right to the PSA Restriction Fee and the Consummation Costs, as defined and set forth in the Term Sheet) and (z) on or after the effective date of the Transfer, such GO Holder shall be deemed to have relinquished its rights (other than the right to the PSA Restriction Fee and the Consummation Costs, as defined and set

forth in the Term Sheet), and be released from its obligations (other than as set forth in Section 4.5(c) hereof) on or after the effective date of the Transfer under this Agreement solely to the extent of such transferred rights; and, provided, further, that, to the extent that a Transfer violates the provisions of this Section 4.5(a), it shall be void *ab initio* and the applicable GO Bond Claims or the CW Guarantee Bond Claims and the GO Holder attempting such Transfer shall continue to remain subject to the terms of this Agreement; and, provided, further, that nothing contained herein is intended, nor shall it be construed, to preclude any of the GO Holders from acquiring additional GO Bond Claims, PBA Bond Claims or CW Guarantee Bond Claims; provided, however, that any such GO Bond Claims, PBA Bond Claims, CW Guarantee Bond Claims acquired from and after the date hereof shall automatically and immediately upon acquisition by a GO Holder be deemed subject to all of the terms and provisions of this Agreement; and, provided, further, that the provisions of this Section 4.5(a) shall not apply to the grant of any liens or encumbrances in favor of a bank or broker-dealer holding custody of securities in the ordinary course of business and which lien or encumbrance is released upon the Transfer of such securities. Notwithstanding the foregoing, nothing contained herein shall restrict or prohibit any party from taking any action required by the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, any rule or regulations promulgated thereunder, or by any other applicable law or regulation.

(b)     None of the GO Holders shall, except as expressly provided herein, (i) file any additional claims or proofs of claim, whatsoever, with the Title III Court against the Commonwealth (including secured, unsecured, administrative or substantial contribution claims), on account of any GO Bonds, GO Bond Claims or CW Guarantee Bond Claims, provided that the failure to file any additional proofs of claim as a result of its obligations under this clause (i) shall not prejudice, nor shall it be deemed to be a limitation of, such GO Holders' aggregate holdings of GO Bond Claims or CW Guarantee Bond Claims, (ii) except as permitted by Section 4.5(d) below solely with respect to the Monolines, file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action or matter on account of its GO Bonds, GO Bond Claims or CW Guarantee Bond Claims (and each such GO Holder agrees to stay all such pending litigations, proceedings, actions or matters) or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims, or (iii) aid any person in taking any action with respect to the Government Released Claims that is prohibited by this Section 4.5(b).

(c)     Each of the GO Holders, solely in its capacity as holder of GO Bonds, GO Bond Claims or CW Guarantee Bond Claims, severally and not jointly, shall (i) support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein or in the Term Sheet, or impede or preclude, the filing of the Plan, the administration of the PROMESA Proceedings, the approval of the Disclosure Statement, and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that such Disclosure Statement, Confirmation Order and Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, and (ii) in accordance with the provisions of Section 5.1 hereof, (A) not consent to or vote for any modification of the Plan unless such modification is proposed or supported by the Oversight Board, AAFAF, the

Case:17-03283-LTS   Doc#:8766-2   Filed:09/27/19   Entered:09/27/19 09:44:05   Desc:
Exhibit B1 - GO Bond & PBA Bond PSA (Part 1)   Page 17 of 23

EXECUTION COPY

Commonwealth, and the PBA and has been made in accordance with the provisions of Section 7.2 hereof, and (B) not vote for or support any PBA or Commonwealth plan of adjustment not proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and PBA, so long as none of the Government Parties is in material breach of their obligations sets forth in this Agreement; provided, however, that each of the Parties acknowledges that each Insured GO Bond Claim shall be voted in accordance with Section 301(c)(3) of PROMESA so long as this Agreement remains in effect.

(d)     Subject to the terms set forth herein, none of the GO Holders shall be limited or prohibited from (i) taking any action that any such GO Holder shall deem necessary or appropriate to preserve, protect or defend any of its rights under this Agreement, the Plan, or the other Definitive Documents, (ii) taking any action to defend itself against the claims and causes of action asserted in the Late Vintage Litigation to the extent such litigation is not otherwise stayed, or the claims and causes of action asserted in any other litigation that is not stayed, (iii) asserting any claims or causes of action against any Party that breaches this Agreement, or (iv) in the case of any Insured GO Holder, taking any action such Insured GO Holder shall deem necessary or appropriate as against a Monoline to preserve, protect or defend any of its rights under any policy of insurance issued by a Monoline with respect to any Insured GO Bond Claims.  Without in any way limiting the foregoing, to the extent the Plan and the Definitive Documentation are consistent with the Term Sheet and the terms herein, none of the GO Holders shall take any action to oppose confirmation of the Plan with respect to the Covered Borrowers other than to vote to reject the Plan with respect to any other claims held against either of the Covered Borrowers; provided, however, that nothing in this Agreement shall limit or prohibit a GO Holder from taking any action, or asserting any claims or causes of action, in connection with any matter relating to the Monolines (including, without limitation, voting of claims, subrogation or acceleration, or commutation).  Notwithstanding anything in this Agreement to the contrary, the GO Holders may (1) act in their capacity as holders of bonds, claims, or related interests in the ERS Title III Case and the HTA Title III Case and take any action in such Title III cases in such capacity to file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action, or matter on account of such bonds, claims, or related interests, and (2) to the extent that the Oversight Board and/or the Commonwealth seeks to disallow or expunge a claim in the Commonwealth Title III Case relating to a guarantee of non-GO Bond indebtedness as to which the principal obligor is current on the payment of principal and interest of the underlying obligation as of the date hereof, take action to object to the disallowance or expungement thereof; provided, however, that, other than the above enumerated actions, no other action may be taken in the PROMESA Proceedings which may negatively impact or otherwise affect confirmation or consummation of the Plan; and, provided, further, that the restrictions on taking actions in the PROMESA Proceedings relating to claims arising under or related to HTA Bonds will (i) entitle such PSA creditors holdings such claims to receive no worse treatment or economic consideration as any other holder or insurer of HTA bonds and (ii) not extend to the allowance or liquidation (but not the treatment under the Plan) of HTA bond related claims in the PROMESA Proceedings.

Section 4.6     Covenants of PBA Holders.  Subject to the terms and conditions hereof, each of the PBA Holders, severally and not jointly, hereby covenants and agrees as follows:

16

108479178v1

(a)     None of the PBA Holders shall Transfer any of the PBA Bond Claims, or any voting, consent or direction rights or participations or other interests therein (collectively, the "**PBA Interests**") during the period from the date hereof up to and including the earlier to occur of (i) the Effective Date and (ii) the termination of this Agreement in accordance with the provisions of Section 6.1 hereof; provided, however, that, notwithstanding the foregoing, each of the PBA Holders may transfer any PBA Interests to (1) another PSA Creditor or (2) a Qualified Transferee pursuant to which (y) such Qualified Transferee shall (i) assume all the rights and obligations of the transferor in accordance with the terms and conditions of this Agreement and (ii) such Qualified Transferee shall then be deemed a PSA Creditor for all purposes herein, including, without limitation, with respect to any additional PBA Bonds held by such Qualified Transferee at the time it joins this Agreement, and shall assume all of the rights and obligations hereunder (other than the right to the PSA Restriction Fee and the Consummation Costs, as defined and set forth in the Term Sheet) and (z) on or after the effective date of the Transfer, such PBA Holder shall be deemed to have relinquished its rights (other than the right to the PSA Restriction Fee and the Consummation Costs, as defined and set forth in the Term Sheet), and be released from its obligations (other than as set forth in Sections 4.6(c) hereof) on or after the effective date of the Transfer under this Agreement solely to the extent of such transferred rights; and, provided, further, that, to the extent that a Transfer violates the provisions of this Section 4.6(a), it shall be void *ab initio* and the applicable PBA Bond Claims and the PBA Holder attempting such Transfer shall continue to remain subject to the terms of this Agreement; and, provided, further, that nothing contained herein is intended, nor shall it be construed, to preclude any of the PBA Holders from acquiring additional PBA Bond Claims, GO Bond Claims, or CW Guarantee Bond Claims; provided, however, that any such PBA Bond Claims, GO Bond Claims, or CW Guarantee Bond Claims acquired from and after the date hereof shall automatically and immediately upon acquisition by a PBA Holder be deemed subject to all of the terms and provisions of this Agreement; and, provided, further, that the provisions of this Section 4.6(a) shall not apply to the grant of any liens or encumbrances in favor of a bank or broker-dealer holding custody of securities in the ordinary course of business and which lien or encumbrance is released upon the Transfer of such securities. Notwithstanding the foregoing, nothing contained herein shall restrict or prohibit any party from taking any action required by the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, any rule or regulations promulgated thereunder, or by any other applicable law or regulation.

(b)     None of the PBA Holders shall, except as expressly provided for herein, (i) file any additional claims or proofs of claim, whatsoever, with the Title III Court against the Commonwealth (including secured, unsecured, administrative or substantial contribution claims), on account of any PBA Bonds or PBA Bond Claims, provided that the failure to file any additional proofs of claim as a result of its obligations under this clause (i) shall not prejudice, nor shall it be deemed to be a limitation of, such PBA Holders' aggregate holdings of PBA Bond Claims, (ii) except in accordance with any claims bar date order entered in the PBA PROMESA Proceeding, or as permitted by Section 4.6(d) below solely with respect to the Monolines, file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action or matter on account of its PBA Bonds or PBA Bond Claims (and each such PBA Holder agrees to stay all such pending litigations, proceedings actions or matters) or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims, or (iii) aid any person in taking any action with respect to the Government Released Claims that is prohibited by this Section 4.6(b).

108479178v1

(c)      Each of the PBA Holders, solely in its capacity as holder of PBA Bonds and PBA Bond Claims, severally and not jointly, shall (i) support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein or in the Term Sheet, or impede or preclude, the filing of the Plan, the administration of the PROMESA Proceedings, the approval of the Disclosure Statement, and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that such Disclosure Statement, Confirmation Order and Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Term Sheet, and (ii) in accordance with the provisions of Section 5.1 hereof, (A) not consent to or vote for any modification of the Plan unless such modification is proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and the PBA and was made in accordance with the provisions of Section 7.2 hereof, and (B) not vote for or support any PBA or Commonwealth plan of adjustment not proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and PBA so long as none of the Government Parties is in material breach of their obligations set forth in this Agreement; provided, however, that each of the Parties acknowledges that each Insured PBA Bond Claim shall be voted in accordance with Section 301(c)(3) of PROMESA so long as this Agreement remains in effect.

(d)      Subject to the terms set forth herein, none of the PBA Holders shall be limited or prohibited from (i) taking any action that any such PBA Holder shall deem necessary or appropriate to preserve, protect or defend any of its rights under this Agreement, the Plan, or the other Definitive Documents, (ii) taking any action to defend itself against claims or causes of action asserted in any litigation that is not stayed, (iii) asserting any claims or causes of action against any Party that breaches this Agreement, or (iv) in the case of any Insured PBA Holder, taking any action such Insured PBA Holder shall deem necessary or appropriate as against a Monoline to preserve, protect or defend any of its rights under any policy of insurance issued by a Monoline with respect to any Insured PBA Bond Claims.  Without in any way limiting the foregoing, to the extent the Plan is consistent with the Term Sheet and herein, none of the PBA Holders shall take any action to oppose confirmation of the Plan with respect to the Covered Borrowers other than to vote to reject the Plan with respect to any other claims held against either of the Covered Borrowers; provided however, that nothing in this Agreement shall limit or prohibit a PBA Holder from taking any action, or asserting any claims or causes of action, in connection with any matter relating to the Monolines (including, without limitation, voting of claims, subrogation or acceleration, or commutation).  Notwithstanding anything in this Agreement to the contrary, the PBA Holders may (1) act in their capacity as holders of bonds, claims, or related interests in the ERS Title III Case and the HTA Title III Case and take any action in such Title III cases in such capacity to file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action, or matter on account of such bonds, claims, or related interests, and (2) to the extent that the Oversight Board and/or the Commonwealth seeks to disallow or expunge a claim in the Commonwealth Title III Case relating to a guarantee of non-GO Bond indebtedness as to which the principal obligor is current on the payment of principal and interest of the underlying obligation as of the date hereof, take action to object to the disallowance or expungement thereof; provided, however, that, other than the above enumerated actions, no other action may be taken in the PROMESA Proceedings which may negatively impact or otherwise affect confirmation or consummation of the Plan; and, provided, further, that the restrictions on taking actions in the PROMESA Proceedings relating to

108479178v1

claims arising under or related to HTA Bonds will (i) entitle such PSA creditors holdings such claims to receive no worse treatment or economic consideration as any other holder or insurer of HTA bonds and (ii) not extend to the allowance or liquidation (but not the treatment under the Plan) of HTA bond related claims in the PROMESA Proceedings or other Title III cases.

Section 4.7    Covenants of the Parties.  The Parties shall coordinate and use their reasonable efforts to obtain the consent and joinder of AAFAF and/or another authorized representative of PBA prior to consummation of the transactions contemplated herein.  Any representations, warranties, covenants, or other obligations of AAFAF or PBA contemplated herein shall not be effective as against either such entity until an authorized signatory for such entity has been affixed hereto.

Section 4.8    Qualified Marketmaker Exemption.  Notwithstanding anything contained in this Article IV to the contrary, (a) a PSA Creditor may Transfer any GO Interests or PBA Interests to a Qualified Marketmaker, acting in its capacity as a Qualified Marketmaker, without the requirement that such Qualified Marketmaker be or become a PSA Creditor; provided that such Qualified Marketmaker subsequently Transfers all such GO Interests or PBA Interests to a PSA Creditor or a Qualified Transferee within the date that is twenty (20) Business Days after such Qualified Marketmaker's acquisition of such GO Interests or PBA Interests, as the case may be; and (b) to the extent that a PSA Creditor is acting in its capacity as a Qualified Marketmaker, it may Transfer any GO Interests or PBA Interests that the Qualified Marketmaker acquires from a holder of the GO Interests or PBA Interests that is not a PSA Creditor without the requirement that the transferee be or become a PSA Creditor.

ARTICLE V
PLAN AND PLAN SUPPORT

Section 5.1    Plan Support Commitment.  From and after the date hereof, provided that (a) this Agreement has not been terminated and (b) none of the Disclosure Statement, the Plan or any of the proposed Definitive Documents have been filed, amended or modified in a manner inconsistent with the provisions of Section 7.2 hereof, each of the PSA Creditors (to the extent remaining a Party), shall (i) support (A) approval of the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, (B) confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, (C) unless otherwise ordered by the Title III Court, upon a motion filed by Government Parties, not object to a stay of all proceedings and determinations in connection with the PBA Litigation and the Late Vintage Litigation through a date no earlier than the Effective Date; provided, however, that nothing herein shall limit or prohibit any PSA Creditor from taking any action, or asserting any claims or causes of action, in connection with any matter relating solely to the Monolines (including, without limitation, voting of claims, subrogation, acceleration, or commutation) (ii) subject to receipt of the Disclosure Statement and/or other solicitation materials in respect of the Plan, to the fullest extent permitted by law, timely vote, or cause to be voted, to accept the Plan in its capacity as a GO Holder and/or PBA Holder, as applicable, with rights of acceptance in accordance with the Disclosure Statement Order, each as the case may be, (iii) not change or withdraw (or cause to be changed or withdrawn) any such vote, (iv) not consent to or vote for any modification of the Plan unless such modification is (Y) not adverse to the GO Holders and PBA Holders and (Z) not inconsistent with the terms provided herein and the Term Sheet, and (v) not vote for or support

19

Case:17-03283-LTS   Doc#:8766-2   Filed:09/27/19   Entered:09/27/19 09:44:05   Desc:
Exhibit B1 - GO Bond & PBA Bond PSA (Part 1)   Page 21 of 23

EXECUTION COPY

any PBA or Commonwealth plan of adjustment not proposed to or supported by the Government Parties, so long as none of the Government Parties is in material breach of this Agreement; provided, however, that each of the Parties acknowledges that each Insured GO Bond Claim and Insured PBA Bond Claim shall be voted in accordance with the terms of Section 301(c)(3) of PROMESA so long as this Agreement remains in effect.

Section 5.2    Solicitation Required in Connection with Plan.  Notwithstanding anything contained in this Article V or elsewhere in this Agreement to the contrary, this Agreement is not, and shall not be deemed to be, a solicitation of acceptances of the Plan.  Each of the Parties, severally and not jointly, acknowledges and agrees that (a) the votes on the Plan will not be solicited until the Title III Court has approved the Disclosure Statement and related solicitation materials, and such Disclosure Statement and solicitation materials have been transmitted to parties entitled to receive same and (b) this Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.  NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY PROMESA, THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY ANY ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

ARTICLE VI
TERMINATION

Section 6.1    Termination of Agreement.

(a)    This Agreement may be terminated by any PSA Creditor, solely as to itself, at its sole option and discretion and upon written notice to the other Parties, in the event that (i) any of the Government Parties fails to comply with any of its respective covenants in Article IV hereof or any of its undertakings in this Agreement if such failure to comply has or would have a material negative economic impact on such PSA Creditor, including a negative change in the treatment afforded to such PSA Creditor under the Plan (including any applicable settlement under the Plan), or change in the cash flows for the New Bonds referenced in Exhibit "A" to the Term Sheet or to the definition or calculation of Excess Cash, Bond Recovery Cap, or PSA Restriction Fee that would have a materially negative economic impact on such PSA Creditor, or (ii) the Oversight Board files any motion or pleading with the Title III Court, in each case, that is inconsistent with this Agreement, including the Term Sheet, in any materially negative economic respect (including treatment under the Plan, any applicable settlement under the Plan, or change in cash flows for the New Bonds referenced in Exhibit "A" to the Term Sheet or to the definition or calculation of Excess Cash, Bond Recovery Cap, or PSA Restriction Fee) and such motion or pleading has not been withdrawn before the earlier to occur of (y) five (5) Business Days after the Oversight Board receives written notice from another Party (in accordance with the notice provisions set forth in Section 7.11 hereof) that such motion or pleading is inconsistent with this Agreement in such materially negative economic respect and (z) entry of an order of the Title III Court approving such motion or pleading.

108479178v1

(b)      This Agreement may be terminated as to all Parties hereto by the Oversight Board, or by joint action of the LCDC and the QTCB Group, in the event that (i) any other Party has failed to comply with any of its respective covenants set forth in Article IV hereof or any of its other undertakings in this Agreement, (ii) the Confirmation Order is not entered by the Title III Court on or prior to February 15, 2020, and the Effective Date does not occur on or prior to February 29, 2020, (iii) the Title III Court or such other court of competent jurisdiction enters a Final Order denying confirmation of the Plan, or (iv) a court of competent jurisdiction issues a ruling, judgment, or order making illegal or otherwise preventing or prohibiting the consummation of the Plan, which ruling, judgment, or order has not been reversed or vacated within sixty (60) calendar days after such issuance and is not subject to a stay; provided, however, that, upon the joint instruction and notice provided by the Government Parties, the dates set forth in subsection (ii) above shall be extended up to and including May 15, 2020 and May 31, 2020, respectively.

(c)      Without limiting the rights of the LCDC or the QTCB Group and their respective members under any other provision in this Agreement, each of the LCDC and the QTCB Group may, in its sole discretion, terminate this Agreement as to all Parties if (i) the Oversight Board (y) modifies any of the provisions in the Term Sheet, relating to (1) the 2012 CW Bond Settlement, the 2012 CW Guarantee Bond Settlement and the 2014 CW Bond Settlement or (2) the Classes set forth in the Term Sheet as of the date hereof, and any such modification materially negatively economically impacts the treatment afforded any GO Holder or PBA Holder, as applicable, in the Term Sheet, or (z) files a Plan that is economically inconsistent with the treatment set forth in the Term Sheet, in each case, without the consent of the LCDC and the QTCB Group, or (ii) the New Bonds to be issued under the Plan have any terms that have not been consented to by the LCDC or the QTCB Group, as applicable.

(d)      This Agreement may be terminated as to all Parties hereto by the Oversight Board, or by the joint action of the LCDC and the QTCB Group, in the event that, by the one hundred twentieth (120th) day following the date hereof, (i) holders of Vintage CW Guarantee Bond Claims that hold, in the aggregate, at least fifty percent (50%) in amount of aggregate outstanding Face Amount of Vintage CW Guarantee Bond Claims and (ii) holders of Vintage PBA Bond Claims that hold, in the aggregate, at least fifty percent (50%) in amount of aggregate outstanding Face Amount of Vintage PBA Bond Claims have not executed and delivered a counterpart signature page to this Agreement or a joinder to this Agreement in the form of Exhibit "F".

(e)      This Agreement may be terminated by Davidson Kempner Capital Management LP, on behalf of itself and its funds under management, solely as to itself and such funds under management, at its sole option and discretion and upon written notice to the other Parties, at any time during the period (1) commencing upon the earlier to occur of (i) the filing of a plan of adjustment for or including HTA and (ii) thirty (30) days prior to the deadline for filing objections to confirmation of the Plan and (2) ending five (5) days prior to the deadline for filing objections to confirmation of the Plan.

(f)      The automatic stay under Sections 362 and 922 of the Bankruptcy Code, made applicable to the PROMESA Proceedings pursuant to Section 301 of PROMESA, shall not

Case:17-03283-LTS   Doc#:8766-2   Filed:09/27/19   Entered:09/27/19 09:44:05   Desc:
Exhibit B1 - GO Bond & PBA Bond PSA (Part 1)   Page 23 of 23

EXECUTION COPY

prohibit a Party from taking any action necessary to effectuate the termination of this Agreement pursuant to and in accordance with the terms hereof.

(g)    This Agreement shall automatically terminate as to all Parties upon the occurrence of the Effective Date except with respect to any actions of the Parties that are expressly set forth herein to occur after the Effective Date.

Section 6.2    <u>Effect of Termination.</u>   Except as otherwise provided herein, in the event of the termination of this Agreement as to any Party, (a) this Agreement shall become null and void and be deemed of no force and effect, with no liability on the part of such Party or any of its affiliates (or of any of their respective directors, officers, employees, consultants, contractors, advisory clients, agents, legal and financial advisors or other representatives of such Party or its affiliates), (b) such Party shall not have any obligations to any other Party arising out of, and shall have no further rights, benefits or privileges under, this Agreement (including, without limitation, any rights to Consummation Costs or the PSA Restriction Fee, except as provided in accordance with the provisions of the Term Sheet), except for the obligations and/or provisions set forth in Sections 2.1, 6.3, 7.1, 7.3, 7.6, and 7.15 hereof and this clause (b) of Section 6.2, which provisions are intended to survive the expiration or termination of this Agreement and shall continue in full force and effect in accordance with the terms hereof; <u>provided</u>, <u>however</u>, that any liability of a Party for failure to comply with the terms of this Agreement prior to the date of such expiration or termination shall survive such expiration or termination, and (c) such Party shall have all the rights and remedies that it would have had, and be entitled to take all actions that it would have been entitled to take, had it not entered into this Agreement and no such rights shall be deemed waived pursuant to a claim of laches or estoppel, and the Parties agree to waive, and not raise as a defense, the applicable statute of limitations for any claim, litigation, proceeding, action or matter against another Party barred by this Agreement as though such statute of limitations had been tolled during such time that this Agreement was binding on the Party then asserting such claim, litigation, proceeding, action, or matter; <u>provided</u>, <u>however</u>, that in no event shall any such termination relieve such Party from liability for its breach or non-performance of its obligations hereunder prior to the date of such expiration or termination; and, <u>provided</u>, <u>further</u>, that, unless otherwise ordered by the Title III Court, upon notice to such terminating Party, any and all consents, ballots and votes tendered by such Party prior to such expiration or termination shall be deemed to be, for all purposes, automatically null and void *ab initio*, and shall not be considered or otherwise used in any manner by the Parties in connection with the Plan, this Agreement or otherwise.  Except in connection with a dispute concerning a breach of this Agreement or the interpretation of the terms hereof upon termination, (y) neither this Agreement nor any terms or provisions set forth herein shall be admissible in any dispute, litigation, proceeding or controversy among the Parties and nothing contained herein shall constitute or be deemed to be an admission by any Party as to any matter, it being understood that the statements and resolutions reached herein were the result of negotiations and compromises of the respective positions of the Parties and (z) no Party shall seek to take discovery concerning this Agreement or admit this Agreement or any part of it into evidence against any other Party hereto.

Section 6.3    <u>Post-Effective Date Obligations.</u>   In addition to the surviving obligations and provisions listed in Section 6.2(b) hereof, the obligations and/or provisions set forth in

22