# **EXHIBIT D**

AFSCME PSA

## PLAN SUPPORT AGREEMENT

This Plan Support Agreement, dated as of June 7, 2019 (as amended, supplemented, or otherwise modified from time to time, this "Agreement"), is by and between (i) the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative (the "Oversight Board"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA")[1] and (ii) the American Federation of State, County and Municipal Employees International Union, AFL-CIO ("AFSCME" and together with the Debtor, each referred to as a "Party" and collectively referred to as the "Parties"). Capitalized terms used but not otherwise defined above have the meanings set forth in Article I below.

### RECITALS:

A. On June 30, 2016, PROMESA was signed into law by the President of the United States (P.L. 114-187).

B. PROMESA created the Oversight Board and provided the Oversight Board with certain powers over the finances and restructuring process with respect to the Commonwealth and its instrumentalities.

C. On May 3, 2017, the Oversight Board filed a Title III petition on behalf of the Commonwealth (the "Title III Case") with the United States District Court for the District of Puerto Rico (the "Title III Court").

D. The Oversight Board is the representative of the Commonwealth in the Title III Case pursuant to section 315(b) of PROMESA.

E. AFSCME, a labor union representing public servants nationwide and affiliated with the AFL-CIO, has two local chapters in Puerto Rico: Servidores Públicos Unidos, AFSCME Council 95 ("SPU"), and Capítulo de Retirados de SPU, the independently-chartered AFSCME chapter for retired employees of the Commonwealth of Puerto Rico (collectively with SPU, the "Local Chapters"). SPU and fourteen (14) affiliated local unions (the "Local Unions") serve as the exclusive collective bargaining representative under Commonwealth law for approximately 12,000 active Commonwealth employees, ranging from social workers to corrections officers to nurses who care for juvenile wards of the Commonwealth.

F. Before the date hereof, the Parties and their representatives engaged in negotiations regarding the restructuring of the outstanding pension and collective bargaining agreement obligations of the Commonwealth. During such negotiations, the Oversight Board was made aware of AFSCME's and the Local Unions' opposition to any reduction in pension benefits to the Local Unions' members. The negotiations resulted in the agreed term sheet annexed hereto as Exhibit "A" (the "Term Sheet").

---

[1]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

G. On behalf of and as representative of the Commonwealth, the Oversight Board is executing and delivering this Agreement.

NOW, THEREFORE, the Parties, in consideration of the promises herein, agree as follows:

ARTICLE I
DEFINITIONS

Section 1.01   Recitals.  The recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement.

Section 1.02   Definitions.  The following definitions shall apply to this Agreement and all schedules, exhibits and annexes hereto:

"**AFSCME**" has the meaning set forth in the preamble hereof.

"**Agreement**" has the meaning set forth in the preamble hereof.

"**Appointments Clause Decision**" shall mean the decision in Aurelius Inv., LLC v. Puerto Rico, 915 F.3d 838, 863 (1st Cir. 2019), reh'g denied, Order of Court, No. 18-1671 (1st Cir. Mar. 7, 2019), from which, on April 23, 2019, the Oversight Board filed a petition for a writ of certiorari with the United States Supreme Court challenging the Appointments Clause Decision and sought a stay of the Appointments Clause Decision pending the United State Supreme Court's decision.

"**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§101 et seq., to the extent made applicable to the Commonwealth Title III Case pursuant to PROMESA section 301(a).

"**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as made applicable to the Commonwealth Title III Case pursuant to PROMESA section 310.

"**Business Day**" shall mean any day other than Saturday, Sunday, and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"**CBAs**" means any collective bargaining agreement or agreements between or among the Commonwealth and AFSCME and/or any of the Local Unions in effect as of the date hereof.

"**Claims**" means any claim of AFSCME, the Local Unions , or their members against the Commonwealth arising (i) under the CBAs, (ii) as a result of the implementation of the transactions contemplated by the Term Sheet, including, without limitation, any claim arising from the rejection of any of the CBAs, (iii) as set forth in the Proof of Claim filed in the Title III Case by AFSCME, on or about June 29, 2018,or (iv) as a result of the restructuring of Commonwealth pension obligations as set forth in the Pension Term Sheet.

"**Commonwealth**" has the meaning set forth in the preamble hereof.

"**Confirmation Order**" shall mean the order of the Title III Court confirming the Plan in accordance with section 314 of PROMESA and section 1129 of the Bankruptcy Code made applicable to the Title III Case by section 301(a) of PROMESA, which order is in form and substance reasonably satisfactory to the Oversight Board, and, to AFSCME solely to the extent relating to or materially affecting the treatment of Claims set forth herein and in the Term Sheet.

"**Debtor**" has the meaning set forth in the preamble hereof.

"**Definitive Documents**" shall mean, this Agreement, including, without limitation, any related agreements (including the New CBAs), instruments, schedules or exhibits, necessary or desirable to implement, or otherwise relate to, the terms and provisions set forth herein, in the Term Sheet, the Plan (including any amendments, modifications and supplements thereto), the Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, each having terms and conditions consistent with this Agreement and PROMESA in all respects and being otherwise in form and substance reasonably satisfactory to the Oversight Board and to AFSCME solely to the extent relating to or materially affecting the treatment of Claims set forth herein and in the Term Sheet, including but not limited to the treatment provided in the Pension Term Sheet.

"**Disclosure Statement**" shall mean the disclosure statement filed with respect to the Plan with the Title III Court by the Oversight Board in the Title III Case in accordance with section 1125 of the Bankruptcy Code, made applicable to the Title III Case by section 301(a) of PROMESA, which disclosure statement is in form and substance reasonably satisfactory to the Oversight Board and to AFSCME solely to the extent relating to or materially affecting the treatment of Claims set forth herein and in the Term Sheet.

"*Disclosure Statement Order*" shall mean the order of the Title III Court (a) approving the Disclosure Statement and the adequacy of the information contained therein in accordance with section 1125 of the Bankruptcy Code, made applicable in the Title III Case by section 301(a) of PROMESA, and (b) authorizing, among other things, the form and manner of solicitation of acceptance and rejections to the Plan, which order is in form and substance reasonably satisfactory to the Oversight Board and to AFSCME solely to the extent relating to or materially affecting the treatment of Claims as set forth herein and in the Term Sheet.

"**Effective Date**" means the date on which all conditions precedent to effectiveness of the Plan have occurred or been waived by each entity required for a valid waiver of each waived condition.

"*Final Order*" shall mean an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed or vacated, and is not stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or, (b) if an appeal, writ of certiorari, new trial reargument, or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired;

3

provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the applicable local bankruptcy rules.

"**Litigation Against the Oversight Board**" shall mean, collectively, the litigation styled (a) Aurelius Investment, LLC, et al. v. The Financial Oversight and Management Board of Puerto Rico, et al., Case Nos. 18-1671; 18-8014, (b) Assured Guaranty Corp. et al. v. The Financial Oversight and Management Board of Puerto Rico, et al., Case No. 18-1746, (c) Union de Trabajadores de la Industria Electrica y Riego (UTIER) v. Puerto Rico Electric Power Authority, et al., Case No. 18-1787, (d) René Pinto Lugo, et al. v. The Government of the United States of America, et al., Adv. Pro. No. 18-041-LTS, (e) Hermandad De Empleados Del Fondo Del Seguro Del Estado, Inc. (UECFSE), et al. v. Government of the United States of America, et al., Adv. Pro. No. 18-066-LTS, (f) Hon. Rafael Hernandez-Montanez, et al. v. The Financial Oversight and Management Board of Puerto Rico, Adv. Pro. No. 18-090-LTS, and (g) such other litigation currently pending or commenced during the period from and after the date hereof up to and including the Effective Date wherein claims or causes of action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigations have been asserted.

"**New CBAs**" means new collective bargaining agreements with AFSCME and/or the Local Unions that incorporate the terms set forth in Appendix I to the Term Sheet.

"**Oversight Board**" has the meaning set forth in the preamble hereof.

"**Parties**" has the meaning set forth in the preamble hereof.

"**Pension Term Sheet**" means the term sheet for proposed treatment of retirement benefit claims of active and retired Commonwealth employees attached hereto as Schedule 1.

"**Plan**" shall mean the Commonwealth plan of adjustment filed with the Title III Court by the Oversight Board in the Title III Case in accordance with section 312 of PROMESA, as the Oversight Board amends it from time to time, and incorporating the terms and provisions herein and in the Term Sheet and the Pension Term Sheet, the form and substance of which, solely with respect to the treatment of Claims, the Term Sheet and the Pension Term Sheet, shall be reasonably satisfactory to AFSCME, and which may be a joint plan of adjustment with Commonwealth instrumentalities and public corporations.

"**PROMESA**" has the meaning set forth in the preamble hereof.

"**Term Sheet**" has the meaning set forth in the recitals hereof.

"**Title III Case**" has the meaning set forth in the recitals hereof.

Section 1.03   Other Terms. Other terms may be defined elsewhere in this Agreement and, unless otherwise indicated, shall have such meaning throughout this Agreement. Capitalized terms used herein, but not otherwise defined, have the meanings set forth in the Term Sheet. As used in

this Agreement, any reference to any federal, state, local, or foreign law, including any applicable law, shall be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise. The words "include," "includes," and "including" shall be deemed to be followed by "without limitation." Pronouns in masculine, feminine or neutral genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar impact refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

Section 1.04    Interpretations. The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party hereto because of the authorship of any provision of this Agreement.

Section 1.05    Exhibits. Each of the exhibits, annexes, signature pages and schedules annexed hereto are expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes and schedules.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

Section 2.01    Representations and Warranties of the Oversight Board. The Oversight Board hereby represents and warrants that, as of the date hereof, and subject to the Appointments Clause Decision: (a) it has all requisite consent, approval, power and authority to enter into, execute, and deliver this Agreement on behalf of the Commonwealth, and to perform its obligations under this Agreement and to consummate the transactions contemplated hereby; (b) the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it or any law, rules or regulations applicable to it; and (c) except with respect to the Litigation Against the Oversight Board, no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 2.02    Representations and Warranties of AFSCME. AFSCME hereby represents and warrants that, as of the date hereof: (a) it is duly organized in accordance with all applicable law and has all requisite consent, approval, power and authority to execute this Agreement on behalf of itself and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any agreements applicable to it, or any law rule or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it which would adversely affect its ability to enter into this Agreement or to perform its obligations

5

hereunder. AFSCME hereby further represents and covenants that it will support membership ratification of the Term Sheet and will actively encourage the Local Unions' members to vote in favor of ratification of the Term Sheet.

Section 2.03    Representations of the Parties to this Agreement. Each Party represents and acknowledges that (a) in executing this Agreement, it does not rely, and has not relied, upon any representation or statement made by any other Party or any of such Party's representatives, agents or attorneys, with regard to the subject matter, basis, or effect of this Agreement or otherwise, other than as stated specifically in this Agreement; (b) in executing this Agreement, it has relied entirely upon its own judgment, beliefs and interest and the advice of its counsel and that it has had reasonable time to consider the terms of this Agreement before entering into it; and (c) it has reviewed this Agreement and that it fully understands and voluntarily accepts all provisions contained herein.

## ARTICLE III
## COVENANTS

Section 3.01    Covenants of the Commonwealth. The Commonwealth hereby covenants as follows:

(a)    The Oversight Board, on behalf of the Commonwealth, shall take all actions reasonably necessary to obtain and effectuate, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement, the entry of the Confirmation Order (including any mutual release and exculpation provisions in the Plan), the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, and the satisfaction of all conditions precedent to the Effective Date, including without limitation, required agreements from other entities, as determined by the Oversight Board in its sole discretion, provided, however, that the Disclosure Statement, the Plan (and its consummation, implementation and administration), and the other Definitive Documents are consistent with the terms herein and the Term Sheet. Such actions shall include, but not be limited to, the (A) filing of the Disclosure Statement, the Plan and the Confirmation Order, in form and substance consistent with this Agreement, including the Term Sheet, and reasonably acceptable to the Oversight Board and, solely to the extent relating to or materially affecting the treatment of Claims, the Term Sheet and the Pension Term Sheet, to AFSCME, and (B) prosecuting the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the Title III Case; provided that nothing herein or in the Term Sheet shall limit the Oversight Board's right to classify claims as needed to effectuate the terms and provisions of the Term Sheet.

Section 3.02    Covenants of AFSCME. AFSCME hereby covenants as follows:

(a)    AFSCME shall, and shall take all actions reasonably necessary to cause the Local Unions to urge their respective members to support and vote to accept the Plan, and will not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or frustrate the carrying out of the terms herein or in the Term Sheet or Pension Term Sheet, or impede or preclude (including, but not limited to, by commencing or continuing to prosecute,

6

any litigation, proceeding, action, or matter against the Commonwealth or the Oversight Board), the filing, confirmation, and consummation of the Plan, the administration of the Title III Case, the approval of the Disclosure Statement, the entry of the Confirmation Order (including any mutual release and exculpation provisions in the Plan), and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents and the satisfaction of all conditions precedent to the Effective Date, provided, however, that such Disclosure Statement, Confirmation Order, and Plan (and its consummation, implementation and administration) and the Definitive Documents are consistent with the terms herein and the Term Sheet and Pension Term Sheet.

(b)     AFSCME shall, and shall take all actions reasonably necessary to cause the Local Unions to (i) actively encourage support and votes in favor from their constituency for the New CBAs as set forth in the Term Sheet, (ii) post a statement of support for the Term Sheet, , the New CBAs, and the Plan on AFSCME's website, (iii) make its representatives available to its constituency to encourage support of and answer questions regarding the Term Sheet, the Plan, Disclosure Statement, Confirmation Order, the New CBAs, and other Definitive Documents, (iv) support legislation, if any, necessary or desirable to implement the transactions contemplated by the Term Sheet , and (v) provide the Commonwealth a letter that can be distributed with the Disclosure Statement, which letter shall urge all members of AFSCME to accept the Plan with respect to treatment of any Claims they may have against the Commonwealth, including, without limitation, treatment of claims relating to retirement benefits as set forth in the Term Sheet, (such letter need not address the treatment of Claims relating to arbitration and grievance proceedings, or individual claims unrelated to employment); provided, however, that such Disclosure Statement, Confirmation Order, and Plan (and its consummation, implementation and administration) and the Definitive Documents are consistent with the terms herein and the Term Sheet.

(c)     Notwithstanding the foregoing subsections, AFSCME's covenants herein to encourage the Local Unions' members to vote in favor of the Terms Sheet, New CBAs and the Plan is expressly subject to the provisions of Section 4.02 of this Agreement.

ARTICLE IV
PLAN AND PLAN SUPPORT

Section 4.01   Plan Support Commitment.   From and after the date hereof, and provided that (a) this Agreement has not been terminated and (b) none of the Disclosure Statement, the Plan and any of the proposed Definitive Documents have been filed, amended or modified in a manner adverse to the treatment of Claims as provided herein, AFSCME shall (i) support (A) approval of the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, and (B) confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, (ii) publicly support the terms herein and in the Term Sheet, and publicly encourage the support and timely votes for the Plan from the Local Unions' members to the extent they have claims entitling them to vote to accept or reject the Plan in one or more classes, (iii) not change or withdraw (or cause to be changed or withdrawn) any such support or encouragement,  (iv) encourage the Local Unions' members to vote for any modification of the Plan, provided, however, that such modification is consistent with the terms provided herein and the Term Sheet and Pension Term

7

Sheet, (v) vote their Claims to accept the Plan and any amended Plan as long as the Disclosure Statement is previously approved by the Title III Court and the Plan is consistent with the Definitive Documents, and (v) not (A) oppose or take any action that would undermine approval of the Disclosure Statement or confirmation of the Plan, or (B) oppose any other actions, motions, or other requests for relief by the Oversight Board in its personal or representative capacities unless the relief requested would prevent the carrying out of this Agreement or AFSCME in good faith believes the relief requested would have an adverse effect on AFSCME, the Local Unions, or their members.

Section 4.02   <u>Solicitation Required in Connection with Plan</u>.   Each of the Parties acknowledges (a) the votes of AFSCME members on the Plan shall not be solicited until the Title III Court has approved the Disclosure Statement, and such Disclosure Statement and solicitation materials have been transmitted to parties entitled to receive same and (b) this Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT, NOTHING CONTAINED HEREIN SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY PROMESA, THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY ANY ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

ARTICLE V<br>TERMINATION

Section 5.01   <u>Termination of Agreement</u>.   This Agreement may be terminated as follows:

(a)      By AFSCME, upon written notice to the Oversight Board, that the Oversight Board filed a motion or other request for relief with the Title III Court, that would prevent the carrying out of this Agreement, including the Definitive Documents, in a specified material respect, and that such motion or other request for relief was not withdrawn before the earlier to occur of (y) five (5) Business Days after the Oversight Board received a written notice from AFSCME (in accordance with the notice provisions set forth in Section 6.12 hereof) that such motion or other request for relief would prevent the carrying out of this Agreement in such material respect and (z) entry of an order of the Title III Court granting such motion or other request for relief.

(b)      By the Oversight Board, if:

i.      The Local Unions fail to request requisite votes from their members to ratify the Term Sheet and authorize the New CBAs in time for the Claims to vote timely on the Plan; and

ii.      Any condition precedent to effectiveness of the Plan shall not have occurred by the latest date for satisfaction thereof under the Plan and the Oversight Board believes it would be impracticable to procure confirmation of another Plan consistent with this Agreement.

8

    (c)      By either Party, upon written notice to the other Party, if

      i.     The Local Unions fail to obtain requisite votes from their members to ratify the Term Sheet and authorize the New CBAs;

      ii.    Any class consisting solely of Claims votes to reject the Plan that is consistent with this Agreement and the Term Sheet;

      iii.   The Title III Court or another court of competent jurisdiction enters a Final Order denying confirmation of the Plan for reasons either Party believes would prevent the Oversight Board from proposing another Plan consistent with this Agreement that could plausibly be confirmed;

      iv.   The other Party materially breaches any of the covenants set forth in Article III or IV hereof or any of its other undertakings in this Agreement, and

      v.    A court of competent jurisdiction issues a ruling, judgment, or order making illegal or otherwise preventing or prohibiting the consummation of any transactions or satisfaction of any condition precedent contemplated by the Plan, including any ruling, judgment, or order enforcing a subsequently enacted Commonwealth law, rule, or regulation that would prevent the carrying out of this Agreement, which ruling, judgment or order has not been reversed or vacated within sixty (60) calendar days after such issuance and is not subject to a stay and either Party believes it would be impracticable to procure confirmation of another Plan consistent with this Agreement.

    (d)     If this Agreement is terminated by either Party it shall be terminated as to both Parties. The automatic stay applicable under section 362 of the Bankruptcy Code shall not prohibit AFSCME from taking any action necessary to effectuate the termination of this Agreement pursuant to and in accordance with the terms hereof. This Agreement shall automatically terminate upon the occurrence of the Effective Date.

    Section 5.02   <u>Effect of Termination</u>. In the event of the termination of this Agreement, then subject to the right of either Party to request specific performance for a breach of this Agreement pursuant to Section 6.15 hereof and except to the extent specific performance is granted (a) this Agreement shall become null and void and be of no force and effect, with no liability on the part of either Party (or of any of its directors, members, officers, employees, consultants, contractors, agents, legal and financial advisors or other representatives), (b) neither Party shall have any obligations to any other Party arising out of, and shall have no further rights, benefits or privileges under, this Agreement, except for the obligations and or provisions set forth in Sections 6.04, 6.07 and 6.15 hereof and this clause (b) of Section 5.02, which provisions are intended to survive termination of this Agreement and shall continue in full force and effect in accordance with the terms hereof; and (c) each Party shall have all the rights it would have had, and be entitled to take all actions it would have been entitled to take, had it not entered into this Agreement and no such rights shall be deemed waived pursuant to a claim of laches or estoppel. Except in connection with a dispute concerning a breach of this Agreement, its enforcement, or the interpretation of the terms hereof upon termination (y) this Agreement, any terms or provisions set

forth herein, or any and all negotiations related hereto shall not be admissible in any dispute, litigation, proceeding or controversy, and nothing contained herein shall constitute or be deemed to be an admission by any Party as to any matter, it being understood that the statements and resolutions reached herein were the result of negotiations and compromises of the respective positions of the Parties and (z) no Party shall seek to take discovery concerning this Agreement or admit this Agreement or any part of it into evidence against the other Party hereto for any purpose other than determination of a breach, enforcement, or interpretation.

ARTICLE VI
MISCELLANEOUS

Section 6.01   Commonwealth Duties.

(a)      Notwithstanding anything in this Agreement, neither the Commonwealth nor its representatives is required to take any action, or to refrain from taking any action, to the extent inconsistent with its or their statutory, fiduciary, or other obligations under applicable law (as reasonably determined by the Oversight Board in its personal and representative capacities in good faith after consultation with legal counsel).

(b)      AFSCME's sole remedies if the Commonwealth breaches this Agreement are to seek specific performance pursuant to Section 6.15 hereof and/or to terminate it, regardless of whether the breach is due to the Commonwealth's fiduciary or statutory duties.

Section 6.02   AFSCME Duties.

(a)      Notwithstanding anything in this Agreement, AFSCME is not required to take any action, or to refrain from taking any action, to the extent inconsistent with its statutory, fiduciary, or other obligations under applicable law (as reasonably determined by it in good faith after consultation with legal counsel).

(b)      The Commonwealth and its representative's sole remedies if AFSCME breaches this agreement are to seek specific performance pursuant to Section 6.15 hereof and/or to terminate it regardless of whether the breach is due to AFSCME's fiduciary or statutory duties.

Section 6.03   Amendments.   This Agreement, including, without limitation, the Term Sheet, may not be modified, amended or supplemented except by a written agreement signed by each of the Parties to this Agreement. Notwithstanding the foregoing, the Pension Term Sheet is subject to amendment without the agreement of AFSCME. If the treatment of claims relating to retirement benefits as set forth in the Pension Term Sheet is amended to the detriment of the subject claimholders, AFSCME shall not be obligated to urge its members to accept such treatment absent subsequent agreement; provided, however, that its other obligations under the Agreement shall remain in full force and effect.

Section 6.04   No Admission of Liability.

(a)      The execution of this Agreement shall not be an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or

10

obligation whatsoever (including as to the merits of any claim or defense) by any Party to any other Party or any other Person with respect to any of the matters addressed in this Agreement.

(b)     Neither the members of the Oversight Board nor the members of AFSCME, nor any of their officers, employees, professionals, or other agents, shall have any liability for any claim or obligation hereunder. Nothing herein shall impair the protection PROMESA section 105 provides to the Oversight Board and its members and employees.

(c)     None of this Agreement (including, without limitation, the Recitals and Exhibits hereto), the settlement herein or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made, or of any wrongdoing or liability of any Party; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Party in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to be or used as an admission or evidence against the Commonwealth or the Oversight Board with respect to the validity of any of claims.

Section 6.05   Good Faith Negotiations. The Parties recognize and acknowledge that each of the Parties hereto is represented by counsel, and such Party received independent legal advice with respect to the advisability of entering into this Agreement; the negotiations related to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each Party's own free will; each Party knows all the relevant facts and its rights in connection therewith, and that it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any Party or employee, agent, attorney or representative of any Party to this Agreement. The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the expense and inconvenience of litigation and other disputes, to establish the terms of New CBAs, and to compromise permanently and resolve the claims between the Commonwealth and AFSCME's constituency settled by the execution of this Agreement. The Parties further acknowledge that, in connection with the Title III Case and the negotiation and consummation of this Agreement, including, without limitation, the Term Sheet, the Parties, at all times, acted (a) in good faith and (b) solely for their respective constituencies.

Section 6.06   Third Party Beneficiary. Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any Person other than the Parties hereto, and their respective successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation thereof; and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto and their respective successors and assigns.

Section 6.07   Governing Law; Retention of Jurisdiction; Service of Process. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York and applicable federal law, without giving effect to the principles of conflicts of laws that would require the application of the law of any other jurisdiction. By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally binds itself that any legal action, suit or proceeding between the Parties with respect to any matter under or

11

arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought in the Title III Court for that purpose only, and, by execution and delivery of this Agreement, each hereby irrevocably accepts and submits itself to the jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding, subject to a Party's rights pursuant to applicable law. In the event any such action, suit or proceeding is commenced (a) service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service by mail of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 6.12 hereof, unless another address has been designated by such Party in a notice given to the other Parties in accordance with Section 6.12 hereof and (b) each Party waives to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising from or relating to this Agreement and the representations, covenants and other obligations set forth herein.

Section 6.08   Headings. The headings of the sections, paragraphs and subsections of this Agreement are inserted for convenience only and are not part of this Agreement and do not in any way modify the terms or provisions of this Agreement and shall not affect the interpretation hereof.

Section 6.09   Binding Agreement; Successors and Assigns. This Agreement shall be effective and binding only upon the execution and delivery of this Agreement by the Parties listed on the signature pages hereto. This Agreement is intended to, and shall be deemed to, bind and inure to the benefit of the Parties and their respective successors and assigns. Subject to Section 5.01 hereof, if any provision of this Agreement, or the application of any such provision to any person or entity or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full force and effect so long as the economic and legal substance of the transactions contemplated herein or in the Term Sheet are not affected in any manner materially adverse to any Party. Subject to Section 5.01 hereof, upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner so that the transactions contemplated herein are consummated as originally contemplated to the greatest extent possible.

Section 6.10   Entire Agreement. This Agreement, including, without limitation, the Term Sheet, constitutes the full and entire agreement among the Parties with regard to the subject hereof and the Term Sheet, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party with respect to the subject matter hereof. No Party has entered into this Agreement in reliance on any other Party's prior representation, promise or warranty (oral or otherwise) except for each Party's undertakings expressly set forth in this Agreement.

Section 6.11   Counterparts.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which, when taken together, shall constitute one and the same Agreement. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

12

Section 6.12 <u>Notices</u>. All demands, notices, requests, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given (i), when personally delivered by courier service or messenger, (ii) upon actual receipt (as established by confirmation of receipt or otherwise) during normal business hours, otherwise on the first business day thereafter if transmitted electronically (by e-mail transmission), by facsimile or telecopier, with confirmation of receipt, or (iii) three (3) Business Days after being duly deposited in the mail, by certified or registered mail, postage prepaid- return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following Parties:

    (a)    If to the Commonwealth, to counsel to the Oversight Board:

        PROSKAUER ROSE LLP
        Eleven Times Square
        New York, NY 10036
        Attn: Martin J. Bienenstock, Esq.
        Email: mbienenstock@proskauer.com, and

        PROSKAUER ROSE LLP
        70 W Madison St., Suite 3800
        Chicago, IL 60602
        Attn: Paul V. Possinger, Esq.
        Email: ppossinger@proskauer.com

    (b)    If to AFSCME, to counsel to AFSCME:

        STROOCK & STROOCK & LAVAN LLP
        180 Maiden Lane
        New York, New York 10038
        Attn: Kenneth Pasquale
                Sherry J. Millman
        Email: kpasquale@stroock.com
               smillman@stroock.com

Section 6.13 <u>Non-Waiver of Remedies</u>. Except as expressly provided in this Agreement, nothing contained herein is intended, nor shall it be construed in any manner, to waive, limit, impair or restrict any right or ability of the Parties to protect and preserve each of their rights, remedies and interests, contractual or otherwise, under Title III or any other provision of PROMESA or any other law or regulation.

Section 6.14 <u>Remedies Cumulative</u>. All rights, powers and remedies provided in accordance with the terms and provisions of this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power or remedy thereof by any Party shall not preclude the contemporaneous or later exercise of any other such right, power or remedy by any such Party.

Section 6.15    Specific Performance.  Each of the Parties acknowledges money damages are an insufficient and likely unavailable and/or uncollectable remedy for any breach of this Agreement by any Party, and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Agreement, including, without limitation, an order of the Title III Court or such other court of competent jurisdiction requiring any Party to comply promptly with any of its obligation hereunder.   Notwithstanding anything contained in this Agreement to the contrary, specific performance and injunctive or other relief and the right to terminate this Agreement in accordance with the terms and provisions hereof shall be the sole and exclusive remedies for any breach of this Agreement by any Party and no Party shall be entitled to monetary damages for any breach of any provision of this Agreement.  In any action for specific performance, the defendant shall be entitled to defend on the ground performance would breach its fiduciary or statutory duties and on all other applicable grounds.

Section 6.16    Further Assurances.  Each of the Parties hereto shall execute and deliver, or cause to be executed and delivered, such instruments, and to take such actions as the other Party reasonably requests to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.

*[Remainder of Page Left Intentionally Blank]*

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, as Title III
representative of the Commonwealth of Puerto Rico

By: _____

Name: **Natalie A Jaresko**

Title: **Executive Director**

AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES
INTERNATIONAL UNION, AFL-CIO

By: _____

Name: Steven Kreisberg

Title: Director of Research and Collective Bargaining

**Exhibit A**

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

## SUMMARY OF PROVISIONS OF PROPOSALS

*In re Commonwealth of Puerto Rico, Title III Case No. 17 BK 3283-LTS*
*June 24, 2019*

THIS SUMMARY OF TERMS IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A PLAN OF ADJUSTMENT FOR PURPOSES OF PROMESA, SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF PROMESA AND THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS SUMMARY OF TERMS SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

Below is a summary of provisions of proposals for Union negotiations for the American Federation of State, County and Municipal Employees ("AFSCME" or "Union") regarding:

- Collective Bargaining Agreements ("CBAs")
- ERS System Benefits
- Upside Fiscal Plan Surplus Sharing Agreement

Additional details can be found in the appendix, including definitions and timing for each of the proposals.

For purposes of the Agreement, the word "Union" means AFSCME/SPU and its affiliated local unions.

The word "lawfully" as used in this Agreement (e.g. "lawfully" amended, "lawfully" provided, "lawfully" implemented, etc.) shall mean terms of employment not barred from implementation by a court of competent jurisdiction.

The parties agree that the terms of all aspects of this Agreement, except for the Terms of ERS Benefits in Appendix II, shall not be made available to employees represented by any other exclusive representative other than to employees represented by an exclusive representative that has:

1. expressly agreed to the provisions of this Agreement; and
2. expressly pledged to support the Plan of Adjustment.

If the Government proposes more beneficial economic terms of employment for unrepresented employees, or employees represented by an exclusive representative certified in accordance with Act 45 with the exception of members of the Teachers Retirement System (TRS) (or employees who would have been eligible for membership in TRS but for the adoption of Act 3-2013), and such more beneficial economic terms are lawfully implemented, such more beneficial economic terms shall be provided to AFSCME/SPU bargaining unit employees.

The parties also agree that the Oversight Board will reimburse AFSCME's reasonable professional fees and expenses incurred to represent the interests of AFSCME leading to and in connection with the negotiation and implementation of this Agreement and the resolution of issues pertaining to pensions.

1

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

This summary is for settlement purposes only and is not a commitment by any party to enter into a transaction. The agreement of the parties shall be subject to execution and delivery of definitive documentation.  If executed, the terms of such definitive documentation shall control.

This summary and related discussions are confidential and entitled to the protection of Rule 408 of the Federal Rules of Evidence and any other applicable statutes or doctrines protecting the use or disclosure of confidential information or settlement discussions. The proposed terms remain subject to further negotiation and analysis, and nothing herein shall be an admission of fact or any liability, a waiver of any right or claim, or be deemed binding on any party.

In exchange for the Commonwealth agreeing to this term sheet, AFSCME agrees to support and take any and all commercially reasonable, necessary, or appropriate actions to facilitate, implement, and consummate a plan of adjustment proposed by the Oversight Board on behalf of the Commonwealth and any retirement system applicable to AFSCME represented employees (a "POA") which complies with the provisions of PROMESA, including, without limitation, by working cooperatively with the Oversight Board to prepare and execute any documentation necessary and by giving any notices, orders, instructions, or directions to its active and retired members that are commercially reasonable, necessary, or appropriate to support, facilitate, solicit acceptance of, implement, or consummate, or otherwise give effect to the POA, including, without limitation, inclusion of a letter from AFSCME in the solicitation package for the POA recommending its acceptance by active and retired members entitled to vote.  AFSCME further agrees not to take any action that would reasonably be expected to prevent, interfere with, delay, or impede the confirmation, implementation, and consummation of the POA.

In turn, the Oversight Board will propose terms in the Commonwealth POA, subject to definitive documentation, to the effect of:

To the maximum extent allowed by law, and the Oversight Board having consented for all purposes including PROMESA section 305, all payment and other obligations under the Plan of Adjustment, including those under [these amended CBAs] shall remain, until satisfied, enforceable by any and each of the Oversight Board and the obligees, and the Plan of Adjustment shall not be changed by the Commonwealth other than with the consent of the obligees or pursuant to a new Title III case and confirmed and effective Plan of Adjustment.  The Commonwealth expressly waives any legal claims it may have that [these amended CBAs] are invalid under Puerto Rico law.

This Agreement shall be binding upon the Commonwealth and the Oversight Board and any of their respective successors or assigns.  The Oversight Board will use reasonable efforts to obtain the consent of any successor Oversight Board to this Agreement. AFSCME shall not be required to adhere to the Agreement in the event that any laws required to effectuate the terms of the Agreement are not implemented or in the event that laws that would actually and materially impair the ability of either party to perform its obligations under the Agreement are implemented.

The Oversight Board will consult with AFSCME during its negotiation of the terms of the POA and its drafting of the POA and confirmation order to solicit AFSCME's suggestions and input regarding debt service and applicable confirmation standards. To this end, the Oversight Board will provide AFSCME with a briefing of its projected annual debt service obligations and the standards or benchmarks used in the development of such projected payments within ten (10) days of the execution of this term sheet. Such briefing shall include, but not be limited to, identification of annual aggregate projected debt service payments, by fiscal year, through 2050 or such longer period as developed by the Oversight Board and its professionals. Relevant data such as projections

**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

of revenue, economic forecast assumptions and projected expenditures for government services shall be included in such briefings. The Oversight Board shall notify and brief AFSCME of any material changes in contemplated annual debt service payments and factors bearing on the determination of such payments, as the Oversight Board position changes. In all discussions, the Oversight Board agrees to consider AFSCME's input prior to making a final determination of future debt service payments.  All consultation and exchange of information provided for or contemplated by this provision will be subject to a non-disclosure agreement reasonably acceptable to the parties, including appropriate limitations on recipients of such information.

Similar to states' best practices regarding the gradual funding of pension plans, the Oversight Board will propose terms in the Commonwealth POA and, as applicable, any relevant retirement system POA, subject to definitive documentation, to the effect of:

The Oversight Board having consented for all purposes including PROMESA section 305, all payment and other obligations under the Plan of Adjustment, including the Commonwealth's PayGo obligations, shall remain, until satisfied, enforceable by any and each of the Oversight Board and the obligees, and the Plan of Adjustment shall not be changed by the Commonwealth other than with the consent of the obligees or pursuant to a new Title III case and confirmed and effective Plan of Adjustment.

The Commonwealth shall establish a Pension Reserve Fund.  Such Pension Reserve Fund will be held in trust for the sole benefit of the beneficiaries of PayGo, and managed by a third-party investment adviser mutually agreeable to the Board and the independent pension oversight entity, selected via RFP.

The Plan of Adjustment for the Commonwealth will provide that the Commonwealth shall make annual contributions to the Pension Reserve Fund from the Commonwealth General Fund until FY2027 in an amount no less than $175 million per year; provided further that for any fiscal year ending post-effective date contained in the Certified Fiscal Plan in effect as of the effective date for the Plan of Adjustment for the Commonwealth in which the projected Fiscal Plan Surplus is at least $1.750 billion, the Commonwealth shall make a contribution to the Pension Reserve Fund from the Commonwealth General Fund in an amount equal to 25% of the projected Fiscal Plan Surplus that year.

Amounts from the Pension Reserve Fund, including investment returns, will be withdrawn in a formula to be determined to reduce the Commonwealth cash outlays from the General Fund for annual PayGo expense.  Any withdrawals from the Pension Reserve Fund will require approval of the independent pension oversight entity and shall only be used by the Commonwealth for the payment of PayGo.

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

# APPENDIX I
## PROPOSED CHANGES TO COLLECTIVE BARGAINING AGREEMENTS

Below is a summary of proposed changes to the CBAs for AFSCME for the Commonwealth of Puerto Rico. Provisions of CBAs not in conflict with this Agreement are unchanged and remain in effect. Only those Union affiliate CBAs listed in the Definitions table below were reviewed.

| Definitions | |
|---|---|
| **Administration** | The management for the division (agency/grouping) in which the employee is assigned. |
| **Department** | The division (agency/grouping) in which the employee is assigned. |
| **Union affiliates** | <ul><li>Parole Board and Local 3584 / United Public Servants</li><li>Department of Consumer Affairs and Local 3986 / United Public Servants</li><li>Department of Correction and Rehabilitation and Local 3500-Unit B Correctional Officers (ACU) / United Public Servants</li><li>Department of Correction and Rehabilitation / Bureau of Juvenile Institutions and Local 3559 (ACU) / United Public Servants</li><li>Department of Education and Local 3840 covering only employees within the AFSCME jurisdiction of PASO</li><li>Department of Natural and Environmental Resources and Local 2082-Unit A / United Public Servants</li><li>Department of Natural and Environmental Resources and Local 3647 (Ranger Corps) / United Public Servants</li><li>Department of Transportation and Public Works and Local 3889 / United Public Servants</li><li>Department of Labor and Human Resources / Vocational Rehabilitation Administration and Local 3251 / United Public Servants</li><li>Department of the Family and Local 3227-Unit A / United Public Servants</li><li>Department of the Family and Local 3234-Unit B (UPETEC) / United Public Servants</li><li>Bureau of Forensic Sciences and Local 2099 / United Public Servants</li><li>Department of Correction and Rehabilitation / Pretrial Services Program and Local 3573 (ACU) / United Public Servants</li><li>Bureau of Transport and Other Public Services and Local 3897 / United Public Servants</li></ul> |

| Timing | |
|---|---|
| **Terms** | Five (5) year CBAs effective July 1, 2019. |
| **Implementation** | Commonwealth Plan of Adjustment. |

4

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| More detailed provisions of the proposal | |
| --- | --- |
| **Terminations / Layoffs** | **Section 1** In order to avoid the involuntary layoff of personnel and to give personnel adequate notice of reassignments or relocations, the Union and Board agree to discuss modifying the regulations implementing Act 8-2017 with the Government.<br>**Section 2** In the event that the Administration needs to carry out downsizing of personnel (layoffs) to comply with the provisions of the approved Fiscal Plan, the parties agree to the following:<br><br>A. **Temporary Suspension**. The immediate commencement of the layoff plan will entail the automatic suspension of any clause, precept and/or provision applicable to employees and/or positions covered by this agreement, contained in laws, collective bargaining agreements, agreements, supplementary agreements, policies, employment handbooks, circulars, contract letters, certifications, regulations, rules and conditions of employment, regulatory letters, classification plans and/or retribution plans that conflict with this Article<br><br>The suspension of the clauses and provisions provided herein will be for a term of five (5) years, and the Administration may reduce this period after the Financial Oversight and Management Board certifies compliance with the objectives of the Administration and/or Department's Fiscal Plan.<br><br>B. **Reassignment and Relocation.** The Administration may implement any reassignment of positions and relocation of personnel when its budgetary interests so require to avoid layoffs. If reassignments and/or relocations are necessary and budgetary feasible, the Administration shall reassign/relocate the most qualified volunteer(s) who would otherwise be subject to layoff.  If there are insufficient qualified volunteers, the least senior qualified employee will be involuntary reassigned/relocated. An employee who has been involuntarily relocated because her/his position has been eliminated may request the position she/he previously held, if the Administration creates it again within the term of two (2) years following the relocation. The employee must make the corresponding request to the Human Resources Division. Seniority shall be the determining criteria to the extent that the position is requested by more than one relocated employee. This provision shall establish the order of voluntary and involuntary employee reassignment, relocation and mobility but shall not be interpreted as a limitation to the Administration's right to implement mobility plans pursuant to Act 8-2017.<br><br>C. **Layoffs.**<br><br>a. In view of the state of fiscal emergency, the scarcity of fiscal resources, the gravity of the problems that the Administration faces, and the urgency required to correct the fiscal problems, it is exempted from exhausting |

NY 77702447v2

**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

|  |  |
|---|---|
|  | measures such as retraining employees, the enjoyment of accrued vacations, the enjoyment of unpaid leave, a reduction in work hours, or demotions, prior to implementing the layoffs.<br><br>b.  The Administration will notify in the first place the termination to all employees of the appropriate unit who as of the date of effectiveness of this Agreement have a temporary or irregular appointment, so that it will not be necessary to observe, with respect to these employees, the criterion of seniority. The notification will be made by hand delivery or by certified mail, return receipt requested, to the address that appears in the Administration's files.<br><br>c.  The layoffs of employees with permanent or career appointment will be carried out observing exclusively the criterion of seniority by occupational classification affected by the layoff and consonant with the need to ensure the continuity and quality of Administration services, so that those who have less seniority in each affected occupational classification will be laid off in the first place.<br><br>d.  In order to determine the seniority of affected employees, all of the services provided by the employees affected in the public service will be considered, regardless of the provisions of the collective bargaining agreements, regulations, circulars, and other normative documents.<br><br>e.  The Administration will notify the layoffs at least thirty (30) calendar days in advance of the date of effectiveness, through written communication addressed to the employee and to the Union, indicating the date of effectiveness thereof.<br><br>f.  The affected employee and Union may request a review of the final determination made by the Administration, only as to their seniority and the occupational classification, within a period no greater than thirty (30) calendar days from receipt of the notification from the Administration. |
| **Healthcare plan / Medical services** | **Section 1** The Administration shall cover the cost of Basic Coverage, equal to $170.00 per month or such greater amount that the Administration may lawfully authorize, including Pharmacy services and all employees, regardless of marital status or relationship, shall be entitled to the contribution. The Administration shall recognize a single employer contribution per employee.<br><br>**Section 2** Employees have opted for syndication and shall be entitled to have an exclusive representative negotiate on their behalf regarding all matters concerning health benefits and the contracting of a health plan. The exclusive representative shall designate a Health Plans |

6

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| | |
|---|---|
| | Evaluating Committee to represent the different sectors and interests of the members. This committee shall be responsible for the analysis and evaluation of all health plans in the market in order to select those that offer the lowest and most reasonable premiums, the best coverage and health services benefits and the best medication coverage.<br><br>**Section 3** The exclusive representative shall call the members to an Assembly in which he/she shall present the health plans selected by the Committee, so that the Assembly, by the express vote of the majority constituting quorum to such effects, selected the health plan that better suits its needs. Once the health plan has been selected in a legally convened Assembly, it shall be compulsory for all the members represented by said exclusive representative, except as provided by Act 95-1963, as amended. |
| **Holidays** | **Section 1** Holidays shall include all twenty-four (24) hours, after midnight, of the calendar day in question.<br><br>**Section 2** The Administration recognizes that the days listed below shall be paid holidays for employees covered by this Collective Bargaining Agreement. Provided, that the Administration shall have the right to assign work to the members of the Appropriate Unit in any of them, when the need for service so requires. The time worked shall be compensated in time and a half (1½) of the time worked. On years where general elections shall be held, Election Day shall be considered as included among the holidays listed below. |

|  | **Date** | **Holiday** |
|---|---|---|
| 1 | January 1st | New Year's Day |
| 2 | January 6th | Three Kings' Day |
| 3 | Third Monday of January | Dr. Martin Luther King Day |
| 4 | Third Monday of February | George Washington / Presidents' Day |
| 5 | March 2nd | American Citizenship Day |
| 6 | March 22nd | Abolition of Slavery Day |
| 7 | Movable | Good Friday |
| 8 | Last Monday of May | Memorial Day |
| 9 | July 4th | Independence Day |
| 10 | First Monday of September | Labor Day |
| 11 | October 12th | Race Day (Discovery of America) |
| 12 | November 11th | Veteran's Day |
| 13 | November 19th | Discovery of Puerto Rico |
| 14 | Fourth Thursday of November | Thanksgiving |
| 15 | December 25th | Christmas |

7

| | |
|---|---|
| | **Section 3** The Administration recognizes that holidays that fall on a Sunday shall be enjoyed during the next day and holidays that fall on a Saturday shall be enjoyed on the previous business day. |
| | **Section 4** Days or half days that by proclamations of the Governor of Puerto Rico or the President of the United States are declared as holidays to be observed in Puerto Rico, shall also be considered paid holidays and included as part of the previous list, as long as they are not discounted from ordinary leave. |
| **Sick leave** | **Section 1** All members of the Appropriate Unit covered by this Collective Agreement, which were hired prior to February 4, 2017 shall have the right to accrue sick leave at the rate of one and a half days (1½) for each month of service. Members hired on or after February 4, 2017 shall accrue at the rate of one (1) day for each month of service. |
| | **Section 2** Sick leave may be accrued up to a maximum of ninety (90) business days at the end of each calendar year. Accrual shall commence once the employee has provided services for a period of three (3) months, and will be effective retroactively until the date when the employee began in the public service. |
| | **Section 3** Accrued sick leave days that have not been enjoyed shall not be liquidated in any way. |
| | **Section 4** Sick leave shall be used: |
| | A. When the employee is sick, physically or mentally incapacitated, or exposed to a contagious disease which requires his/her absence from work to protect his/her or other persons' health. |
| | B. A maximum of five (5) days a year may also be used for the following, provided that the employee has accrued a minimum balance of twelve (12) days: |
| | a. The care and attention of his/her sick children. |
| | b. Management of sick, elderly or disabled persons within his/her familial nucleus, within the fourth degree of consanguinity, second of affinity, persons that live within the same household, persons over which employee has legal custody or guardianship. |
| | c. First appearance of any petitioner, victim or complainant before the Department, Agency, Corporation or Public Instrumentality of the Commonwealth of Puerto Rico, in matters regarding alimonies, domestic violence, sexual harassment in the workplace or gender-based discrimination. |
| | B. The employee shall present evidence issued by the competent authority which credits such appearance. |

8

**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

C. For the purposes of this Section, the following definitions shall apply:

   a. "Elderly person": any person sixty (60) years or older.

   b. "Person with disabilities": any person with a physical, mental or sensory disability that substantially limits one (1) or more essential activities in his/her life.

**Section 5** Only in sickness absences for more than three (3) consecutive days shall the employee submit a medical certificate justifying such absences. Notwithstanding, the employee or any of his/her relatives must notify his/her immediate supervisor of his absence. This shall be applied or interpreted in a manner consistent with the Americans with Disabilities Act, better known as ADA, the Family Medical Leave Act of 1993, or any other applicable law.

**Section 6** In the event that the employee exhausts his/her sick leave and remains ill, he/she may use the leave he/she has accrued, in accordance with the provisions of this Collective Agreement.

**Section 7** Sick leave charges shall be made on the basis of the working day's daily work assigned to the employee, it being understood that it shall not be charged for days off in cases where the employee works rotating shifts or for holidays.

**Section 8** When a member of the Appropriate Unit covered by this Collective Bargaining Agreement is using his / her sick leave, he / she shall be entitled to the accrual of regular and sick leave for the time that he / she is enjoying sick leave, as long as he / she is reinstated to his / her job once such enjoyment is finished.

**Section 9** The Administration may advance sick leave up to a maximum of eighteen (18) working days, to any member of the Appropriate Unit covered by this Collective Agreement which requests it by presenting proper justification. He/she must have worked for the Administration for one (1) year or more. Advanced leave may only be granted after the accrued sick and regular leave have been exhausted.

**Section 10**

   A. **Leave for Parents with Children with Physical and / or Mental Disabilities.** In an effort to project itself as an exemplary agency in the treatment of persons with disabilities, the Administration will authorize as official time one (1) day per month to the parents of children with disabilities in order for them to take their children to their appointments and treatments. The parents must notify the date of the appointment or treatment as soon as they become aware of it and in turn must provide a certificate from the health and / or therapeutic services provider of the minor who officially classifies him/her as a person with disabilities.

9

**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

| | |
|---|---|
| | They must also submit a medical certificate that proves that the employee accompanied their child to the appointment or medical treatment. In case both parents or custodians are members of the Appropriate Unit, the license shall be shared between both, in the way that they prefer to do it.<br><br>B. **Leave for Elderly Persons.** In the same way, the Administration shall authorize that this same day can be used for appointments and treatments for Elderly Persons. The person in charge must notify the date of the appointment or treatment as soon as he / she becomes aware. The employee in turn must provide a certificate of birth of the elderly person evidencing that he / she is sixty (60) years or more. They must comply with Section 11's provisions.<br><br>**Section 11** The Administration shall authorize the father or mother of children to stay with them when they are hospitalized. The father or mother must submit evidence of the hospitalization and the duration of the hospitalization. The Administration shall authorize that the days that the employee takes to take care of his / her sick child are discounted from his / her sick leave. An employee that requests this leave must have an accrued sick leave balance of fifteen (15) or more days. |
| **Vacation leave** | **Section 1** All members of the Appropriate Unit covered by this Collective Agreement shall have the right to accrue regular vacation leave at the rate of one and a quarter (1 ¼) days for each month of service. Employees with reduced or part-time regular working hours will accumulate vacation leave proportionally to the number of hours they regularly provide service in. Accrual shall commence once the employee has provided services for a period of three (3) months, and will be effective retroactively until the date when the employee began in the public service.<br><br>**Section 2** Regular vacation leave shall be accrued up to a maximum of sixty (60) business days at the end of each calendar year.<br><br>**Section 3** Every employee shall have the right to enjoy his accrued vacation leave for a period of fifteen (15) business days during each calendar year, of which no less than ten (10) days shall be consecutive. By agreement between the Director and / or Supervisor and the employee, he may be granted periods of less than ten (10) business vacation days, but never less than five (5) days.<br><br>Employees, who, due to the need for service and at the request of the Administration, cannot enjoy their vacation leave during a specific calendar year, shall be exempt from this provision.  In this case, the Department is required to make the necessary adjustments so that the employee is able to enjoy at least leave accrued in excess of the sixty (60)-day limit at the earliest date possible within the first three (3) months of the following calendar year.<br><br>**Section 4** The enjoyment of regular vacation leave shall not be interrupted nor rescheduled for any member of the Appropriate Unit covered by this Collective Agreement. The only |

10

exceptions are clear and unavoidable emergencies related to the need for the service. The Administration shall replenish the time used by the employee.

**Section 5** The Administration shall formulate a Vacation Plan each calendar year, according to the need of service and in coordination with the employees of the Appropriate Unit covered by this Collective Agreement and their respective supervisors, which establishes the period (s) within of which each employee shall enjoy their vacations. The Plan must be established by December 31st of each year so that it becomes effective the first (1st) of January of each year. Both parties agree to comply with the Plan. By agreement between the Director and / or Supervisor and the employee, he / she may enjoy a maximum of two (2) vacation periods per calendar year.

**Section 6** The Administration shall formulate and administer the Vacation Plan harmonizing the observations, recommendations and preferences of the employees with the needs of service, so that they do not lose their vacation leave at the end of the calendar year and enjoy their regular vacation leave annually without affecting the service.

If there is a conflict between two (2) or more employees regarding the date to take vacations, the Director and / or Supervisor shall determine, according to the need of service, which employee shall leave first. In case the only conflict is that both chose the same date and cannot leave at the same time, the employee with the most seniority will leave first and from then on it will be done alternately.

**Section 7** The Administration shall inform the accrued vacation leave balance to all Appropriate Unit members covered by this Collective Agreement, a total of three (3) times a year. In case of any calculation error, the information may be corrected at the initiative of any of the Parties. Any request for review by the employee must be made in writing within fifteen (15) working days before the Director of the Human Resources Division of the Administration. The Director shall have fifteen (15) working days to answer the request. If the employee is not satisfied, he/she may use the Complaint and Grievance Procedure established in this Collective Agreement.

**Section 8** The Administration shall evaluate, if so requested by the employee, granting regular leave in excess of fifteen (15) days in a calendar year, up to a maximum of fifty (50) days in any calendar year to those employees who have accrued leave. The employee shall maintain a minimum of five (5) days of regular vacation leave. When granting said leave, the Administration shall consider the needs of service and any other factor established in applicable law.

**Section 9** When a member of the Appropriate Unit covered by this Collective Agreement is using his / her regular leave, he / she shall be entitled to the accrual of regular and sick leave, for the time that he / she is enjoying said leave, as long as he / she is reinstated to his work when he / she finishes such enjoyment.

NY 77702447v2

|  | |
|---|---|
|  | **Section 10** Due to special circumstances, the Administration may advance regular leave to any member of the Appropriate Unit covered by this Collective Agreement who requests it and has worked for the Administration for more than one (1) year, up to a maximum of fifteen (15) work days, provided that the employee shall return to service. The Administration shall evaluate said request according to the needs of service.<br><br>**Section 11** Any employee who has been granted advanced vacation leave and separates from service, voluntarily or involuntarily, before rendering services for the period needed to accrue the full amount of unearned advanced leave thus granted shall be required to refund the Government of Puerto Rico any amount paid to him/her for said advanced leave.<br><br>**Section 12** At the option of the Appropriate Unit member covered by this Collective Agreement, the payment of regular scheduled vacations shall be effective before beginning to enjoy them. Said request must be submitted forty-five (45) calendar days in advance of the date on which the vacation begins.<br><br>**Section 13** In those cases in which a proclamation or administrative order of the Governor of Puerto Rico is issued, granting official time without charge to vacations, the same shall be applicable to all members of the Appropriate Unit covered by this Collective Agreement who are in use of regular leave. When the employee is enjoying his/her regular vacation leave, the period of his/her vacation will be extended for the official time granted.<br><br>**Section 14** Any member of the Appropriate Unit covered by this Collective Agreement who becomes ill while enjoying regular leave may request that the period of illness be credited to his / her accrued sick leave. The employee must certify his/her illness in conjunction with his/her request.<br><br>**Section 15** The members of the Appropriate Unit covered by this Collective Agreement shall have the right to authorize the Administration to assign five (5) days per month of their accumulated vacation license, in favor of other employees of the agency. It shall be in accordance with the provisions established by Act No. 44 of May 22, 1996, as amended, known as the "Holiday License Assignment Act". |
| **Additional Language for Holidays, Sick and Vacation Leaves** | **Section 1** For the avoidance of doubt, to the extent there are inconsistencies between this Agreement and the provisions of Act 26-2017 regarding Holidays, Vacation Leave, Sick Leave and other Leaves, the provisions of Act 26 as enacted in 2017 shall apply for the duration of this Agreement.  Amendments to Act 26-2017 to improve Holidays, Sick, Vacation and other leaves leave benefits shall be incorporated into this Agreement if lawfully adopted by the Government. |
| **Bonuses** | **Section 1** To the extent that bonuses not otherwise provided for in this Agreement are lawfully provided to similarly situated Commonwealth employees, such more beneficial economic terms shall be provided to AFSCME/SPU bargaining unit employees. |

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| | |
|---|---|
| **Institutional representation** | **Section 1** The Administration will provide for appointment of a Union labor representation board, consisting of four (4) individual members, appointed by the Union to represent labor. |
| | **Section 2** The members may be appointed for terms of twelve (12) months, and may be reappointed by the Union. |
| | **Section 3** The members will meet with representatives of the Financial Oversight and Management Board on an annual basis to discuss and share perspectives on the Commonwealth fiscal plan and budget. |
| | **Section 4** Annual meetings with representatives of the Financial Oversight and Management Board will be provided for members by allowing members to attend with a half day of paid time off, in addition to their normal vacation time. |
| **Full Agreement** | **Section 1** The provisions of this term sheet, combined with the most recent CBAs, shall constitute the CBAs commencing on July 1, 2019; provided that the provisions of this term sheet control if there is any conflict with the most recent CBAs. For the duration of the Agreement, there shall be no changes in base pay, other compensation, leaves, holidays, or benefits without the express agreement of the Union. In addition, no other changes inconsistent with the terms of the Agreement shall be implemented without the express agreement of the Union. Nothing in this Agreement shall be interpreted in a manner to preclude employees represented by the Union from receiving any benefit that is lawfully granted by the Governor or Administration to other employees of the Government. |
| **Dues Deduction, Charges** | **Section 1** During the term of this Agreement and during any extension thereof, the Department shall deduct from the salary of each bargaining unit employee who authorizes payroll deduction of union dues or payments on a form provided by the union the regular dues that the Union certifies in accordance with its regulations and the applicable provisions of Act 45 as amended. The dues amount shall be reported to the Department by the Union. For such purposes, the Department shall notify the Department of the Treasury of dues charges to be deducted from employees included in the Appropriate Unit within thirty (30) working days from the date on which the Union informs the Department regarding the amount to be deducted. |
| | **Section 2** The Department shall send a copy to the Union on a monthly basis of the list provided by the Department of the Treasury, reflecting the name of each employee included in the Appropriate Unit, with Social Security number and amount deducted for dues charges. |
| | **Section 3** The Department shall inform new employees of the right conferred by Act No. 45 as amended at the moment the employee is named to a position included in the Appropriate Unit and shall provide the union with an opportunity to meet with new employees or, at the union's option, with a welcome document prepared by the Union in which are explained the rights of union members under Act 45 of February 25, 1998, as amended. The Administration shall not discourage union membership |

13

**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

**Section 4** The Department shall have fifteen (15) working days to inform the Union in writing of the name, Social Security number, position, date of employment and salary of newly recruited employees and that come to occupy positions included in the Appropriate Unit.

**Section 5** The authorization to deduct membership dues is in effect and irrevocable pursuant to the terms stated on the employee authorization, but employees must be permitted to rescind their authorization prior to any renewal at least annually.

**Section 6** In the event the Union ceases to be the exclusive representative of the Appropriate Unit, the deductions withheld from employees for dues shall automatically stop on the date the Union is no longer the exclusive representative.

**Section 7** The Department shall resume the deduction of dues for employees whose positions are included in the Appropriate Unit once they return from their unpaid leave and notify the Human Resources Office so that it can make the change in payroll and include said deduction within a period not greater than thirty (30) working days from the employee's return date.

**Section 8** In the event the Union requests the deduction of dues and it is determined that the dues are unlawfully set and/or deducted, the Union shall relieve the Department of any liability and make any orderly refund as soon as it is required. If it is determined that the error is attributable to the Department, the Union shall only reimburse what is erroneously deducted and will not be responsible for expenses and fees incurred.

NY 77702447v2

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

## APPENDIX II[1]
## PROPOSED TERMS FOR ERS SYSTEM BENEFITS

Below is a summary of proposed indicative terms for the Puerto Rico Government Employees Retirement System ("ERS") for:

1. participants in the retirement system established by Act 305-1999 ("System 2000" members);
2. participants who participated exclusively in the Act 3 benefit but not in Act 1 or Act 447 benefit tiers; and
3. Act 3 participants who participated in Act 1 or Act 447 benefit tiers.

These terms do not address benefits earned under Act 1 and Act 447.

| Definitions | |
|---|---|
| **Pension System** | The Puerto Rico Government Employees Retirement System (ERS). |
| **System 2000 members** | Generally, those members hired on or after January 1, 2000 and on or before June 30, 2013. In addition, for purposes of this Agreement, employees hired on or after July 1, 2013 and on or before June 30, 2017 shall be treated the same as System 2000 members. |
| **Type of Plan** | System 2000 and Act 3 plans are contributory, hybrid defined benefit plans. |
| **Effective date of the Plan** | The Pension System was established in 1951 by Act 447 to be effective January 1, 1952. The Plan was last amended under Act 3, approved April 4, 2013. |
| **Eligibility for membership** | Members of the ERS and its Instrumentalities include all regular full-time and non-municipal temporary employees who are not contributing to other Retirement Systems (Articles 1-104 and 1-105). |
| **Contributions** | Contributions to System 2000 and Act 3 benefits are made exclusively from mandatory employee payroll deductions of 8.275 percent until 2013 and 10 percent of pay thereafter (starting with the passage of Act 3-2013), with no employer match and no interest credits applied pursuant to the terms of the Acts. |

| Timing | |
|---|---|
| **Effective date** | July 1, 2019. |
| **Implementation** | Applies to benefits earned under the Plan on or before June 30, 2017. |

---

[1] Milliman actuarial valuation report as of June 30, 2016 using July 1, 2015 Census data collection, which is the latest dataset currently available. If a new dataset from 2016 or 2017 becomes available, the values will be updated accordingly.

15

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| Provisions of the proposal | |
|---|---|
| **Segregate cash upfront** | Segregate full System 2000 contributions from 2000 through 2013 (no reduction ), full System 2000 participant Act 3-2013 contributions, and full Act 3 participant (who had not participated in either Act 1 or Act 447) contributions through 2017 (no reduction). Historical interest credits shall not be paid.  Roll balances into Defined Contribution accounts currently being set up under Act 106-2017.  Total amount segregated pursuant to this provision will be limited to $1.360 billion.<br><br>In the event the total amount of contributions described in this section exceeds $1.360 billion, on the Effective Date of the Plan of Adjustment each participant shall receive a pro-rata share based on the participant's total contributions. If total contributions described in this section exceed the $1.360 billion limit but are less than or equal to $1.500 billion, 25% of remaining unpaid contributions shall be paid by December 31, 2020; 25% of remaining unpaid contributions shall be paid by December 31, 2021; 25% of remaining unpaid contributions shall be paid by December 31, 2022; and the remaining 25% of unpaid contributions shall be paid by December 31, 2023.<br><br>In the event the total amount of contributions described in this section exceeds $1.500 billion, the Board and the Union agree to develop a payment plan mutually acceptable to both parties to pay out the remaining balance of the contributions (for the avoidance of doubt, the amount above $1.500 billion) described in this section.<br><br>In all events the full amount of contributions described in this section will be paid to eligible participants not later than December 31, 2025.<br><br>As of the Effective Date of the Plan of Adjustment, participants with System 2000 contributions from 2000 through 2013, and Act 3-2013 contributions through 2017 who are ineligible for benefits under Act 1 and Act 447 will no longer be entitled to future system administered benefits, such as death and disability provisions, etc.<br><br>Participants who have already retired and converted their contributions to a system paid annuity are not eligible for the treatment described in this section.  They will not receive a cash payment and they will be subject to the pension reduction applicable to other retirees. |
| **Exempt from reduction formula** | Pay up to full accumulated contributions value (no reduction), excluding historical interest credits, for all Act 1 and Act 447 contributions made in Act 3 after July 1, 2013.  Act 1 and Act 447 benefits accrued prior to July 1, 2013 remain subject to the reduction |

NY 77702447v2

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

## More detailed Provisions of the Proposal as of July 1, 2015

| | System 2000 | | | |
|---|---|---|---|---|
| | Active members | Retired members | Disabled members | Beneficiaries in payment |
| Count | 65,605 | 273 | 72 | 81 |
| Average age | 42.7 | 67.8 | 54.2 | 62.5 |
| Average salary | $24,891 | | | |
| Average creditable service | 9.5 | | | |
| Average monthly basic system benefit | | $758 | $853 | $997 |
| Average monthly system administered benefit | | $16 | $9 | $8 |

2

_____

17

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

## APPENDIX III
## PROPOSED TERMS FOR UPSIDE FISCAL PLAN SURPLUS SHARING AGREEMENT

Below is a summary of proposed indicative terms for AFSCME Upside Fiscal Plan Surplus Sharing Agreement.

| Definitions | |
|---|---|
| **Fiscal Plan Surplus Sharing Agreement** | Agreement with Unions and Union member participants for each fiscal year of this Agreement to provide participation of Unions on sharing of any excess surplus above and beyond the Certified Fiscal Plan in effect as of the effective date for the Plan of Adjustment for the Commonwealth. |
| **Unions** | AFSCME |
| **Union member participants** | All active Union members and employees in union represented bargaining units on record at the beginning of the fiscal year with continued employment and active status at the time of payment. |
| **Independent agent** | Certified Public Accounting firm licensed to provide accounting services. |
| **Cash basis** | Fiscal Plan surplus calculation will use recorded income and expenses as received or paid. |
| **Excess cash surplus formula** | Excess Cash Surplus is defined as excess cash surplus above and beyond the projected Fiscal Plan surplus contained in the Certified Fiscal Plan in effect as of the Effective Date of the Plan of Adjustment for the Commonwealth. <br><br> If the Excess Cash Surplus is lower than $100 million, no amounts will be distributed. If the Excess Cash Surplus is $100 million or higher, 25% of the Excess Cash Surplus will be allocated to the Upside Participation Bonus pool. |

| Timing | |
|---|---|
| **Implementation** | To be aligned with the implementation of proposed changes to CBAs, as well as the overall agreement with AFSCME, currently targeted for July 1, 2019. |
| **Annual measurement** | Fiscal Plan surplus to be calculated on a cash basis no later than September 30 of each fiscal year by an Independent Agent. |
| **Payment period** | **For signing bonus:** Payable to Union represented participants no later than 60 days after the Effective Date of the Plan of Adjustment. <br><br> **For Upside Participation Bonus:** Payable December 1 to Union represented participants, based upon calculations from the prior period and completed by the Annual Measurement date. |

18

|  | **For support fee:** Payable to Union 60 days after the Effective Date of the Plan of Adjustment. |
| --- | --- |

| **Provisions of the proposal** |  |
| --- | --- |
| **Signing bonus (see Summary of bonuses)** | One-time signing bonus of $500 to each of the Union represented participants. |
| **Upside Participation Bonus** | For the term of this CBA, if Excess Cash Surplus formula is met or exceeded, a distribution will be made to all Union represented participants and all other eligible Commonwealth employees each year from the Upside Participation Bonus pool.  All recipients of this Upside Participation Bonus will have the choice to allocate any portion of their Upside Participation Bonus to their Defined Contribution account and any remainder will be distributed in cash. |
| **Support fee** | One-time payment of $5 million to the Union, to be designated for the healthcare benefit of its represented participants, in recognition of its efforts as the lead negotiator of and as a signatory to this Agreement. |
| **Additional Fee** | One-time payment of $5 million to the Union, to be disbursed in the manner the Union designates, in connection with the efforts undertaken by the Union to fulfill its obligations under this Agreement. |
| **Payment of Pre-petition Arbitration and Grievance Claims** | Any distributions under and pursuant to the Plan on account of claims for liquidated damage amounts resulting from the disposition of pre-petition actions brought pursuant to the grievance and arbitration procedures arising under the CBAs between the Commonwealth and AFSCME's local affiliate(s) in Puerto Rico shall be made by the Commonwealth to the claimant in each instance on such date that is the later of (i) 30 days after such disposition or (ii) 60 days after the Effective Date of the Plan. |
| **Summary of bonuses[3]** | The Union has announced its intention to distribute the Additional Fee as a cash bonus to its represented participants.  Accordingly, the bonuses that Union represented participants are receiving pursuant to this Agreement are a one-time $1000 bonus (approximate) and any Upside Participation Bonus.  In addition, to the extent that similarly situated Commonwealth employees lawfully receive a bonus, such as a Christmas bonus, such more beneficial economic terms shall be provided to AFSCME/SPU bargaining unit employees. |

---

[3] Nothing provided herein is intended to modify the terms of the Agreement.  It is simply presented as a summary of certain already enumerated provisions.

Schedule 1

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

**FOMB PROPOSED TERMS FOR RESTRUCTURING OF RETIREE OBLIGATIONS**
*In re Commonwealth of Puerto Rico, Title III Case No. 17 BK 3283-LTS*
*April 27, 2019*

THIS SUMMARY OF TERMS IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A PLAN OF ADJUSTMENT FOR PURPOSES OF PROMESA, SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF PROMESA AND THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS SUMMARY OF TERMS SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

This is a summary of proposed indicative terms for a restructuring of the outstanding retiree obligations for the Commonwealth of Puerto Rico. This summary is for settlement purposes only and is not a commitment by any party to enter into a transaction. The agreement of the parties shall be subject to execution and delivery of definitive documentation. If executed, the terms of such definitive documentation shall control.

This summary and related discussions are confidential and entitled to the protection of Rule 408 of the Federal Rules of Evidence and any other applicable statutes or doctrines protecting the use or disclosure of confidential information or settlement discussions. The proposed terms remain subject to further negotiation and analysis, and nothing herein shall be an admission of fact or any liability, a waiver of any right or claim, or be deemed binding on any party.

| Definitions | |
|---|---|
| **Retirees** | All current, former, active, inactive, and disabled employees (and their beneficiaries) who, as of May 3, 2017, held an accrued pension benefit (or were beneficiaries thereof) as participants of one of the following:<br><br>• Employees Retirement System (ERS)<br>• Teachers Retirement System (TRS)<br>• Judiciary Retirement System (JRS);<br><br>except for active employees who are participants in the System 2000 program and whose accrued pension benefits are subject to a separate agreement reached on their behalf by AFSCME with the FOMB on behalf of the Commonwealth, to the extent applicable. |
| **Appropriation and Payment of Residual Benefits** | The residual Total Monthly Retirement Benefit due to each Retiree after the terms herein are met will be appropriated and paid on a Pay As You Go ("PayGo") basis each year by the Commonwealth until all such benefits owed to each Retiree have been paid. |
| **Monthly Base Pension** | Monthly Base Pension is the monthly pension payment made to a Retiree, excluding all other benefits, such as the Christmas Bonus, Summer Bonus, Medicine Bonus, and Medical Insurance benefit. |
| **Total Monthly Retirement Benefit** | The Total Monthly Retirement Benefit that will be measured against the Threshold for the purposes of applying cuts pursuant to the Total Cut Formula is calculated by adding together the Monthly Base Pension benefit, plus the annual Christmas Bonus (if any) divided by 12 (the "Monthly Christmas |

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

|  |  |
|---|---|
|  | Bonus"), plus the annual Summer Bonus (if any) divided by 12 (the "Monthly Summer Bonus"), plus the annual Medicine Bonus (if any) divided by 12 (the "Monthly Medicine Bonus"), but excluding any monthly Medical Insurance benefit. |
| **Benefit Reduction Commencement Date** | The date on which the reduction/cut described in the Total Cut Formula will first be applied to benefits paid by the Commonwealth. |
| **PayGo Pension Board** | The independent pension oversight entity to be created pursuant to the Commonwealth Plan of Adjustment in a form acceptable to the FOMB, Retirees, and the Government, to monitor PayGo administration for the benefit of Retirees from and after confirmation of the Plan of Adjustment. |

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| Timing | |
|---|---|
| **Pension Benefits Date** | Accrued pension benefits earned by Retirees before May 4, 2017 are subject to a reduction/cut in the amount described in the Total Cut Formula.<br><br>Accrued pension benefits earned by Retirees on or after May 4, 2017 are not subject to the reduction in the Total Cut Formula. The data set used to calculate the reduction in pension benefits required is based on the July 1, 2015 retiree dataset provided by the ERS, TRS, and JRS which is the latest dataset currently available. If a new dataset from 2016 or 2017 becomes available, the values will be updated accordingly. |
| **Implementation** | The Benefit Reduction Commencement Date shall be the later of July 1, 2020 or the first July 1 date that follows the effective date of a Plan of Adjustment for the Commonwealth; provided, however, that if the period between said effective date and subsequent July 1 date is less than 180 days, then the Benefit Reduction Commencement Date shall be the first day of the first calendar month that is at least 180 days after said effective date. |

| Provisions of the Proposal | |
|---|---|
| **Cut Percentage** | Up to 8.5% of Total Monthly Retirement Benefit, subject to the Total Cut Formula. |
| **Cut Type** | Flat; same Cut Percentage applied to the Monthly Base Pension benefit for all participants, subject to Threshold. |
| **Threshold Over Which Cuts Apply (the "Threshold")** | $1,200 per month |
| **Indexing of Threshold and Annual Benefit Recalculation** | No indexing for future changes in Federal Poverty Level.<br><br>Additionally, no annual benefit recalculation once Cut Percentage is applied. |
| **Adjustment for Social Security** | Excluded from calculation. |
| **Medical Insurance** | Monthly Medical Insurance benefit is excluded from the calculation of the Total Monthly Retirement Benefit and is not subject to the Total Cut Formula. The Monthly Medical Insurance benefit shall vest for the benefit of Retirees and shall be subject to any plan of adjustment injunctions or other provisions protecting the benefits provided to Retirees from elimination, modification or alteration. |

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| **Total Cut Formula** | The reduction in Total Monthly Retirement Benefit shall be calculated as follows (the "Monthly Benefit Reduction"): |
|---|---|
| | *Step 1:* Reduce the Monthly Christmas Bonus until the Threshold is reached or the Cut Percentage is reached or the Monthly Christmas Bonus is entirely eliminated, whichever occurs first as the Total Monthly Retirement Benefit is reduced. |
| | *Step 2:* If the Retiree's Total Monthly Retirement Benefit is still above the Threshold and the Cut Percentage has not been reached after elimination of the Monthly Christmas Bonus, reduce the Monthly Summer Bonus until the Threshold is reached or the Cut Percentage is reached or the Summer Bonus is entirely eliminated, whichever occurs first as the Total Monthly Retirement Benefit is reduced. |
| | *Step 3:* If the Retiree's Total Monthly Retirement Benefit is still above the Threshold and the Cut Percentage has not been reached after elimination of the Monthly Christmas Bonus and Monthly Summer Bonus, reduce the Monthly Medicine Bonus until the Threshold is reached or the Cut Percentage is reached or the Monthly Medicine Bonus is entirely eliminated, whichever occurs first as the Total Monthly Retirement Benefit is reduced. |
| | *Step 4:* If the Retiree's Total Monthly Retirement Benefit is still above the Threshold and the Cut Percentage has not been reached after elimination of the Monthly Christmas Bonus, Monthly Summer Bonus, and Monthly Medicine Bonus, reduce the Monthly Base Pension until the Cut Percentage is reached; provided, however, that the application of the remaining Cut Percentage to the Monthly Base Pension shall not reduce the Total Monthly Retirement Benefit below the Threshold. |
| | Under no circumstances shall the Cut Percentage apply in such a way that an individual Retiree's Total Monthly Retirement Benefit would be cut below the Threshold. If a Retiree's Total Monthly Retirement Benefit is below the Threshold, the Monthly Benefit Reduction is zero. |

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| Benefit Restoration / Upside Participation | Retirees who are subject to a Monthly Benefit Reduction based on the Total Cut Formula above will be eligible for a partial or total restoration of their Monthly Benefit Reduction for any given fiscal year (the "Benefit Restoration"). |
|---|---|
| | Excess Cash Surplus is defined as actual cash surplus above and beyond the projected Fiscal Plan Surplus contained in the Certified Fiscal Plan in effect as of the effective date for the Plan of Adjustment for the Commonwealth.[2] |
| | Benefit Restoration will occur if, in any particular post-confirmation fiscal year, there is Excess Cash Surplus, as provided below. |
| | If the Excess Cash Surplus is lower than $100 million, no amounts will be distributed. |
| | If the Excess Cash Surplus is $100 million or higher, 10 percent of the Excess Cash Surplus will be allocated to Benefit Restoration and paid out to each Retiree on or before October 1 of the following fiscal year. Allocation of Benefit Restoration to each Retiree shall be pro-rata based on the amount of total cuts experienced by each Retiree. |
| | Benefit Restoration for any Retiree will be capped at the Monthly Benefit Reduction multiplied by 12 for such Retiree. |
| | The final year of the Benefit Restoration program will be FY2033, with any Benefit Restoration payments relative to that fiscal year due by October 1, 2033. |
| Pension Reserve Fund | On the effective date of a confirmed Plan of Adjustment for the Commonwealth, the Commonwealth will establish a Pension Reserve Fund. Such Pension Reserve Fund will be held in trust for the sole benefit of the Retirees, and managed by a third-party investment adviser mutually agreeable to the FOMB, the Government, and the PayGo Pension Board, selected via RFP. The funding of the administrative cost of the investment adviser will come from the Pension Reserve Fund. |
| | The Plan of Adjustment for the Commonwealth will provide that the Commonwealth shall make annual contributions to the Pension Reserve Fund from the Commonwealth General Fund until FY2027 in an amount no less than $175 million per year; provided further that for any fiscal year ending post-effective date contained in the Certified Fiscal Plan in effect as of the effective date for the Plan of Adjustment for the Commonwealth in which the projected Fiscal Plan Surplus is at least $1.750 billion, the Commonwealth shall make a contribution to the Pension Reserve Fund from the Commonwealth General Fund in an amount equal to 25% of the projected Fiscal Plan Surplus that year. The annual contribution shall be made by October 1 following the end of each fiscal year. Furthermore, the |

[2] For the avoidance of doubt, Fiscal Plan Surplus shall refer to the "Surplus/(Deficit) Post Measures (excl. Debt Payments)" line item. For example, with respect to the October 2018 Fiscal Plan, that refers to the "Revised FP Presentation – 40yr" tab in the fiscal plan model provided in support of the October 2018 Fiscal Plan on February 6, 2019. (20181023_Model Commonwealth Fiscal Plan_vCERTIFIED_pensions_v6.xlsx).

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| | |
|---|---|
| | Commonwealth shall make a one-time contribution on the effective date for the Plan of Adjustment to the Pension Reserve Fund in the amount of $5 million to cover the upfront administrative fees, costs, and expenses of the PayGo Pension Board.<br><br>Withdrawals from the Pension Reserve Fund, including investment returns, will be made in amounts to be determined by the PayGo Pension Board, in consultation with the Commonwealth, to reduce the Commonwealth cash outlays from the General Fund for annual PayGo expense for Retirees in years in which there is projected to be a budget deficit. Any withdrawals from the Pension Reserve Fund will require approval of the PayGo Pension Board and shall only be used by the Commonwealth for the payment of PayGo. |
| **Miscellaneous** | Subject to further articulation, and without limiting the preamble, definitive documentation shall reflect the following provisions for incorporation into a confirmed Plan of Adjustment for the Commonwealth:<br><br>(a) To the maximum extent allowed by law, and the FOMB having consented on behalf of itself and the Commonwealth for all purposes including PROMESA section 305, all payment and other obligations owed to the Retirees under the Plan of Adjustment, including the Commonwealth's PayGo obligations and all components of the residual Total Monthly Retirement Benefit after application of the Total Cut Formula, shall remain, until satisfied, enforceable by any and each of the FOMB, the PayGo Pension Board, and any affected Retirees, and the Plan of Adjustment shall not be changed by the Commonwealth (i) without the consent of the FOMB (if still extant at the time of the proposed change), the PayGo Pension Board, and Retirees still receiving benefits pursuant to the Plan of Adjustment at the time of the proposed change, or (ii) pursuant to a new Title III case and confirmed and effective Plan of Adjustment;<br><br>(b) The establishment of the PayGo Pension Board in a form acceptable to the FOMB, Retirees, and Government to monitor PayGo administration upon confirmation of a Plan of Adjustment for the benefit of Retirees. Said Board shall receive funding from the Pension Benefit Reserve for (i) administrative costs, including fees and payroll for Board members and staff; (ii) reasonable fees and expenses for an annual audit to verify the Commonwealth's financial statements, including, without limitation, the calculation of the Excess Cash Surplus for Benefit Restoration purposes and the Fiscal Plan Surplus for Pension Reserve Fund purposes; (iii) fees and expenses of prosecuting any mandamus or other litigation by the Board to enforce Retirees' rights under the Plan of Adjustment (with standing explicitly granted to the Board under the Plan) or to defend against any suit; and (iv) indemnification and related fees and expenses |

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| | |
|---|---|
| | pursuant to appropriate indemnification and hold harmless provisions protecting the Board members |

## Appendix
### Illustrative Calculations[1]

| | | Total Pension Value | Christmas bonus [2] | Medicine and/or Summer bonus [3] | Monthly Base Pension | Monthly Medical Insurance | Comment |
|---|---|---|---|---|---|---|---|
| A | Current | $ 875 | $ 17 | $ 8 | $ 850 | $ 0 | No cut since benefit |
| | Reduction | 0 | 0 | 0 | 0 | 0 | below $1,200 |
| | After Cut | $ 875 | $ 17 | $ 8 | $ 850 | $ 0 | |
| B | Current | $1,625 | $ 17 | $ 8 | $1,500 | $100 | |
| | Reduction | 130 | 17 | 8 | 105 | 0 | |
| | After Cut | $1,495 | $ 0 | $ 0 | $1,395 | $100 | Total Monthly Retirement Benefit cut by 8.5%, including full elimination of bonuses, since remaining amount after cut is still above $1,200 |
| C | Current | $1,235 | $ 17 | $ 8 | $1,210 | $ 0 | All bonuses eliminated but |
| | Reduction | 35 | 17 | 8 | 10 | 0 | |
| | After Cut | $1,200 | $ 0 | $ 0 | $1,200 | $ 0 | Total Monthly Retirement Benefit cut by less than 8.5% to remain above $1,200 |
| D | Current | $1,205 | $ 17 | $ 8 | $1,180 | $ 0 | $5 of Christmas |
| | Reduction | 5 | 5 | 0 | 0 | 0 | Bonus cut to remain |
| | After Cut | $1,200 | $ 12 | $ 8 | $1,180 | $ 0 | above $1,200 |
| | | Maximum 8.5% cut to Total Monthly Retirement Benefit so long as remaining amount after cut is still above $1,200 | Cut if total still above $1,200 | Cut if total still above $1,200 | Flat 8.5% cut on Total Monthly Retirement Benefit less bonuses already eliminated so long as total is still above $1,200 | Excluded from cut calculations | |

-----

[1] Examples are illustrative for all systems and intended to demonstrate the methodology described in the Summary of Terms. Bonuses that are available to individual participants depend on various factors such as the date of retirement and the retirement system for the participant's benefit.

[2] Monthly equivalent of $200 annually.

[3] Monthly equivalent of $100 annually. Summer bonus, if applicable, is cut before Medicine bonus in accordance with the Total Cut Formula