# United States Court of Appeals
## For the First Circuit

———

No. 18-2194

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC
POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO
SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Debtors,

———

AUTONOMOUS MUNICIPALITY OF PONCE (AMP),

Movant, Appellant,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC
POWER AUTHORITY (PREPA),

Debtors, Appellees,

THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,

Movant, Appellee.

———

```
             APPEAL FROM THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF PUERTO RICO

            [Hon. Laura Taylor Swain,* U.S. District Judge]


                                  Before

                      Lynch, Lipez, and Thompson,
                             Circuit Judges.
```

Carlos Fernandez-Nadal for appellant Autonomous Municipality of Ponce (AMP).

John E. Roberts, with whom Timothy W. Mungovan, Martin J. Bienenstock, Steven L. Ratner, Jeffrey W. Levitan, Mark D. Harris, and Proskauer Rose LLP were on brief for the Financial Oversight and Management Board for Puerto Rico, as Representative for the Commonwealth of Puerto Rico; the Financial Oversight and Management Board for Puerto Rico, as Representative for the Puerto Rico Highways and Transportation Authority; the Financial Oversight and Management Board for Puerto Rico, as Representative for the Puerto Rico Electric Power Authority (PREPA).

```
                          September 25, 2019
```

---

* Of the Southern District of New York, sitting by designation.

**LYNCH**, **Circuit Judge**.  This appeal primarily concerns whether the Title III court abused its discretion in refusing to lift the automatic stay in PROMESA, 48 U.S.C. § 2161(a) (incorporating 11 U.S.C. § 362), to allow the Municipality of Ponce to secure specific performance by the Commonwealth of Puerto Rico of public works projects required under a Puerto Rico Commonwealth court judgment.  The Title III court plainly did not abuse its discretion.  In essence, Ponce seeks priority over the claims of other communities and creditors of the Commonwealth.  Ponce has not shown cause why its claim warrants this priority.  We affirm.

I.

We describe the relevant statutory context, the events surrounding Ponce's prepetition judgment, and facts of the instant case.

A.   PROMESA's Automatic Stay

The Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101–2241, created the Financial Oversight and Management Board ("FOMB") and, under its Title III, empowered the Board to restructure the debt of the Commonwealth of Puerto Rico through "quasi-bankruptcy proceedings."  Assured Guaranty Corp. v. Fin. Oversight Mgmt. Bd. for P.R., 872 F.3d 57, 59 (1st Cir. 2017).  PROMESA automatically stays any action to recover on a prepetition claim or "the enforcement, against the debtor or against property of the estate,

- 3 -

of a judgment obtained before the commencement of the [Title III case]." 48 U.S.C. § 2161(a) (incorporating 11 U.S.C. § 362(a)(1), (2)). PROMESA defines a "claim" in several ways, including as a "right to payment" and separately as a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." Id. (incorporating 11 U.S.C. § 101(5)).

B.   Ponce's Prepetition Judgment It Now Seeks To Enforce

On October 28, 1992, Ponce, the Commonwealth, the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Highways and Transportation Authority ("PRHTA") agreed to develop municipal projects in Ponce. These projects included installing sewer and transmission lines, building various medical, police, and educational facilities, modernizing local housing, and improving several highways. Within a year, the Commonwealth, PREPA, and PRHTA ("the debtors") withdrew from the agreement. In response, Ponce brought suit in Commonwealth court on October 28, 1993. The suit resulted in a June 24, 1996 judgment that required the debtors to fulfill their commitments under the original agreement and deferred determining monetary damages until after they completed the municipal projects. The Commonwealth court also appointed a monitor to supervise and audit the projects' progress. In December 2004, Ponce and the debtors settled the issue of damages for $34 million, of which a significant portion

remains unpaid.  That portion is not at issue: The parties agree the stay applies to it.

On May 3, 2017, the Commonwealth filed a petition for debt adjustment relief under Title III of PROMESA.[1]  PRHTA and PREPA filed similar Title III petitions on May 21 and July 3, 2017, respectively.  Filing these petitions initiated the automatic stay at issue here, see 11 U.S.C. § 362(a), and transferred exclusive jurisdiction over the debtors' property to the Title III court, see 48 U.S.C. § 2166(b).

The parties agree that most of the projects required by the 1992 Agreement have been completed and this case concerns a subset of uncompleted projects.  As of September 2019, the two highway projects required by the judgment and funded by the Federal Highway Administration's Puerto Rico Highway Program, 23 U.S.C. § 165(b), continued to progress, as they did not involve use of the debtors' property.  Due to the stay however, the court-appointed monitor, who is paid out of the debtors' property, is not auditing these projects.  So the projects are proceeding and Ponce is complaining only that its monitor is not monitoring the progress on these two projects.[2]  Ponce conceded that funding the

---

[1] We note that the Title III court's order denying relief from the stay states that the Commonwealth filed for debt adjustment relief on May 9, 2017, but the correct date is May 3, 2017.  See Title III Petition, In re Commonwealth of P.R., Bankruptcy Case No. 17-BK-3283 (LTS) (D.P.R. May 3, 2017).

[2] This monitoring by the master would be in addition to

monitor for the two highway projects would cost the PRHTA between $90,000 and $150,000 per year.

As to another project, Ponce alleges PREPA could complete an outstanding project to replace overhead electrical lines with underground alternatives for only $700,000. PREPA has stated that its "resources are both extremely limited and fully committed to the restoration and repairs of its electric system." It further stated that its efforts focus on preparing the Commonwealth "for the uncertainty for another hurricane season."[3]

Other outstanding projects covered by Ponce's request to lift the stay include channeling the Río Matilde in Ponce and rehabilitating a lighthouse -- a project which does not affect the safety of the surrounding navigable waters.

---

federal oversight of highway funds. See 23 U.S.C. § 106(g) (requiring the Secretary of Transportation to establish oversight programs to monitor the use federal highway funds); 23 C.F.R. § 1.36 (authorizing the Federal Highway Administrator to withhold federal funds, withhold project approval, or take other action if the recipient fails to comply with federal laws or Department of Transportation regulations).

[3] Over the past ten years, PREPA has faced issues stemming from a declining population, economic downturn, multiple hurricanes devastating its already underperforming electrical system, and, as of May 2017, $9.25 billion in unsustainable debt obligations ($4.5 billion of which PREPA must service over the next five years). Puerto Rico Electric Power Authority, 2019 Fiscal Plan for the Puerto Rico Electric Power Authority 5, 103 (2019).

C.   Procedural History of Ponce's Motion

On May 4, 2018, Ponce moved for relief from the automatic stay to compel the debtors to complete the municipal projects and to allow the Commonwealth court to assess their compliance with its judgment.  Ponce argued that continuing the projects would not entail further litigation, and so it would not interfere with the Title III cases.  Ponce also argued that the projects were close to completion and the litigants could complete them under the monitor's supervision, without significantly siphoning off time or resources from the Title III cases.

The Commonwealth objected to this motion on July 5, 2018. The Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") then filed joinders to the objection for PREPA and PRHTA on July 5 and July 20, 2018, respectively.

On August 3, 2018, Ponce moved for an evidentiary hearing to support its motion to lift the stay, which the debtors opposed. The parties submitted an October 4, 2018 joint report detailing their disputed and undisputed facts:  Ponce asserted that completing the projects would cost only certain sums; the debtors said the figures were much higher.  The details of the dispute are immaterial to our resolution given the Title III court's acceptance, arguendo, of Ponce's sums.  On November 2, 2018, the Title III court denied Ponce's motions for the hearing and relief from the stay.  This appeal followed.

- 7 -

II.

Ponce's first argument -- that the prepetition judgment is not a "claim" and so was never subject to the automatic stay -- turns on an interpretation of law, which we review de novo. Municipality of San Juan v. Puerto Rico, 919 F.3d 565, 576 (1st Cir. 2019). By contrast, review of the denial of motions for relief from an automatic stay and from the denial of an evidentiary hearing is for abuse of discretion. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 814 F.2d 844, 847 (1st Cir. 1987). The Title III court treated Ponce's version of alleged facts as undisputed and we do as well.

We first address Ponce's newly raised argument that the prepetition judgment is not a "claim" subject to the automatic stay. We then turn to whether the Title III court abused its discretion both in denying stay relief and in doing so without holding an evidentiary hearing.

A. Applicability of the Automatic Stay

Ponce argues that the prepetition judgment for specific performance, as an equitable remedy, is not a "claim" subject to the automatic stay under § 362 of the Bankruptcy Code. But Ponce failed to raise this argument in its motion for relief from the stay. And in doing so, Ponce has waived this argument on appeal. Alicea v. Machete Music, 744 F.3d 773, 780 (1st Cir. 2014).

Because the issue may arise again, we put aside Ponce's waivers[4] and also hold that there is no merit to Ponce's argument, even if it had been properly raised, for at least two reasons.

> 1. Ponce Seeks the Enforcement of a Judgment Obtained Before the Title III Case Commenced, Which Is Subject to the Automatic Stay

Under 11 U.S.C. § 362(a)(2), an automatic stay applies to "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the [bankruptcy] case." The judgment at issue was obtained before the commencement of the Title III case. The plain meaning of § 362 covers this prepetition Commonwealth court judgment against the debtors and their property for specific performance of the municipal projects. See Municipality of San Juan, 919 F.3d at 577 (applying the automatic stay to an injunction and collecting cases that do the same).

> 2. Even if § 362(a)(2) Does Not Apply, Ponce's Prepetition Judgment Is a Claim Subject to the Automatic Stay

Even if we concluded that § 362(a)(2) does not apply here, the prepetition judgment is also a "claim" subject to the automatic stay under a different provision, 11 U.S.C. § 362(a)(1). A § 362(a)(1) "claim" comprises rights to equitable remedies for

---

[4] Ponce also failed to address the issue of an exception to waiver in its initial appellate brief and so has waived any argument as to exceptions to waivers for that reason. See Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983).

breach of performance that "give[] rise to a right of payment," 11 U.S.C. § 101(5)(B) -- i.e., "if a monetary payment is an alternative for the equitable remedy," Rederford v. U.S. Airways, Inc., 589 F.3d 30, 36 (1st Cir. 2009).

The parties agree that Ponce's judgment is an equitable remedy and is for breach of performance, but dispute whether it "gives rise to a right of payment." Ponce argues that its equitable remedy cannot be reduced to a monetary award because, even if Ponce recovered the cost of completing the projects, it lacks the debtors' expertise and authorization to "wire . . . underground power distributions" for a specific project. Ponce does not say whether these, or similar, impediments also affect the remaining projects.

Regardless of whether and to what extent Ponce requires the debtors' assistance, its argument fails. Ponce assumes that monetary damages would only be the amount necessary to complete the projects and, without the debtors' assistance, it could not be made whole. But if the Commonwealth court could reduce the delay in project completion to monetary damages, then the Title III court could similarly reduce the projects' further delay or cancellation to monetary damages.

This court, and others, have reduced other equitable judgments to money damages, despite the asserted inability of a damages remedy to "purchase" the performance of the underlying

- 10 -

contract. See Rederford, 589 F.3d at 37 (concluding that reinstatement following termination was a "claim," as money damages served as an alternate remedy); In re Nickels Midway Pier, LLC, 255 F. App'x 633, 637-38 (3d Cir. 2007) (reducing an action for specific performance of a contract for real property to money damages and classifying it as a "claim"); Vil v. Poteau, No. 11-cv-11622-DJC, 2013 WL 3878741, at *8-9 (D. Mass. July 26, 2013) (classifying as a "claim" an injunction to cease copyright infringement); see also In re The Ground Round, Inc., 482 F.3d 15, 20 (1st Cir. 2007) (dictum) (stating that 11 U.S.C. § 101(5) would classify as a claim a specific performance remedy for which money damages could substitute -- were the remedy not for the "return of specific property"); 2 Collier on Bankruptcy ¶ 101.05 [5] (16th ed. 2009) (stating that when a right to payment may satisfy a judgment for specific performance, the judgment is a "claim"). We add that the fact that the costs of compliance with the prepetition judgment may be difficult to estimate does not prevent the enforcement action from being a "claim." See Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 8 (1st Cir. 1992) (holding a "contingent, unliquidated, and unmatured" right to indemnification to be a "claim").  We conclude that the right to equitable remedies here gives rise to money damages under the meaning of § 362(a)(1).  Independently, the stay applies for that reason.

B.   Denial of Relief from the Automatic Stay

The Title III court properly looked to the Sonnax factors outlined by the Second Circuit as a helpful guide to granting or denying relief from a stay. See In re Fin. Oversight & Mgmt. Bd. for P.R., 899 F.3d 13, 23 (1st Cir. 2018) (citing Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1286 (2d Cir. 1990)). Of Sonnax's relevant factors under PROMESA,[5] the Title III court analyzed the following factors, and found them to favor maintaining the stay: (1) "whether relief would result in a partial or complete resolution of the issues"; (2) "lack of any connection with or interference with the bankruptcy case"; (3) "whether litigation in another forum would prejudice the other creditors"; (4) "the interests of judicial economy and the expeditious and economical resolution of litigation"; and (5) the "impact of the stay on the parties and the balance of harms." Sonnax, 907 F.2d at 1286. The Title III court did not abuse its discretion in finding the factors favor maintaining the stay.

---

[5] We reject Ponce's argument that the court-appointed monitor is a "special tribunal" that implicates the fourth Sonnax factor: "whether a specialized tribunal with the necessary expertise has been established to hear the cause of action." See Sonnax, 907 F.2d at 1286. The monitor can only "supervis[e] and audit[]"; he cannot "hear the cause of action" and so this factor is not at issue. See id.

1.  <u>Partial or Complete Resolution of the Issues and the Interests of Judicial Economy (Sonnax Factors 1 and 10)</u>

The Title III court may lift the stay when it would resolve "significant open issues in the [<u>debtors'</u>] bankruptcy case" efficiently -- not issues in Ponce's separate enforcement action. <u>See</u> <u>In re Taub</u>, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (emphasis added). The Title III court found that relief would not efficiently resolve any open issues that would aid the Title III cases; rather, it would divert the debtors' resources to Ponce's projects and give Ponce an advantage. We agree.

Further, to allow separate litigation over the debtors' compliance with the judgment, as Ponce seeks, would conflict with one of PROMESA's core purposes: "centraliz[ing] all disputes concerning property of the [Commonwealth's] estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings." <u>Municipality of San Juan</u>, 919 F.3d at 577 (applying the purposes of the Bankruptcy Code to PROMESA). To give one example, lifting the stay to allow the monitor to begin to oversee the federally financed highway projects could, as the Title III court stated, lead to "costly litigation in the Commonwealth Court concerning . . . the extent or quality of the work." Ponce has not shown that lifting the stay would allow the Commonwealth court to resolve significant open issues in the Title III case more efficiently than the Title III court could resolve them.

2. <u>Interference with the Bankruptcy Case and Prejudice to Other Creditors (Sonnax Factors 2 and 7)</u>

The Title III court found that diverting funds from the debtors to Ponce and to potential litigation over compliance with the judgment would interfere with the bankruptcy cases and cause prejudice to the other creditors. Ponce argues that, because its judgment predates the debtors' bankruptcy, the stay should not apply (or instead, should be lifted). This argument lacks merit, as excluding prepetition claims and judgments -- even decades old ones -- contravenes the purpose of PROMESA's debt restructuring provisions. <u>See</u> <u>Municipality of San Juan</u>, 919 F.3d at 577 (stating that PROMESA's automatic stay provision should "protect[] the debtor's assets from disorderly, piecemeal dismemberment outside the bankruptcy proceedings" (alteration in original)). Ponce correctly, and to its credit, does not argue that granting its request for stay relief would not prejudice other creditors.

Even taking Ponce's alleged facts as to the costs of compliance as setting a top line as the Title III court did, it is clear that lifting the stay would compel the debtors to spend at least $44 million. This sum would impede resolving other Title III claims and prejudice the other creditors to that amount. <u>See, e.g.</u>, <u>U.S. Bank Tr. Nat'l Ass'n</u> v. <u>AMR Corp.</u> (<u>In re AMR Corp.</u>), 730 F.3d 88, 112 (2d Cir. 2013) (finding no abuse of discretion in maintaining a stay to prevent diverting funds from other

- 14 -

creditors). And potential litigation over the debtors' compliance with project commitments could both interfere with resolving the Title III case and result in additional expenses to the prejudice of the other creditors.

    3.    <u>The Impact of the Stay on the Parties and the Balance of Harms (Sonnax Factor 12)</u>

For the final factor, the Title III court explicitly weighed how stay relief would lead to improvement for the people of Ponce's quality of life against how it would impact the debtors' overall fiscal health and ability to repair critical infrastructure throughout the Commonwealth. The Title III court expressed sympathy toward the people of Ponce and noted their long battle to compel the debtors to complete the projects, but in weighing the equities, the Title III court found that they favored maintaining the stay. The Title III court also noted that Ponce failed to show that any of the municipal projects "were related to any federally authorized or delegated program <u>for the protection of health, safety, or the environment</u>." (Emphasis added.)

Despite its own expert witness assessing the projects' cost to the debtors at around $44 million, Ponce argues that lifting the stay would not "affect [the] debtors['] budgets" and we should not consider the Commonwealth's financial crisis. So, Ponce concludes, the balance of harms favor relief. We disagree.

- 15 -

The cost of the local projects and of likely attendant litigation weigh strongly against stay relief.

At oral argument, Ponce focused on lifting the stay for the $700,000 electrification project and funding for the monitor to oversee the highway projects, arguing that the benefits of each dwarfed the costs to the Commonwealth. We reject characterizing these projects in this manner. Even if we were to consider the remaining cost of the electrification project to be relatively small, the Board and PREPA opposed stay relief noting PREPA's extremely limited resources and their view that at present those resources are best spent elsewhere. The record shows the rest of the cities and towns in the Commonwealth use the same above-ground electrical system that this project would replace. Given the critical infrastructure issues from which the Commonwealth suffers and the importance of prioritizing the most pressing issues, the debtors are correct that there is no basis to disturb the judgment of the Title III court. In effect, Ponce requests priority for its projects over the countless other projects needed by other communities in the Commonwealth. The Title III court clearly did not abuse its discretion in declining to give Ponce this priority.[6] Cf. Begier v. IRS, 496 U.S. 53, 58 (1990) ("Equality of

---

[6] We note that denying relief from the stay does not deny Ponce the opportunity to press its claim for the projects in the future. Ponce may still later seek relief in the Title III proceedings.

distribution among creditors is a central policy of the Bankruptcy Code.").

C. Declining to Hold an Evidentiary Hearing

After moving for stay relief, Ponce requested an "evidentiary hearing to submit evidence even by testimonial of Monitor [sic] or documents of the reports made by the debtor[s'] attorneys." Ponce did not request the hearing for any non-evidentiary purpose. The Title III court accepted the costs alleged by Ponce as true and consequently found holding an evidentiary hearing unnecessary. Ponce does not allege that there is any additional material evidence that it would have submitted in the requested hearing. Without any disputed, material facts, the Title III court concluded that an evidentiary hearing was unnecessary. We agree. A Title III court need not always hold a hearing before granting or denying relief from a stay. Peaje Invs. LLC v. García-Padilla, 845 F.3d 505, 512 (1st Cir. 2017). A Title III court may proceed without an evidentiary hearing when the parties do not dispute any material facts. Id.

In its brief on appeal, Ponce for the first time asserts that it would have argued at the hearing that the prepetition judgment, as an equitable remedy, was not a "claim" subject to the automatic stay (an argument we rejected earlier). Ponce did not

- 17 -

argue this in its motion to the Title III court.[7] Regardless, the Title III court, having considered the parties' written arguments, reasonably concluded that Ponce had not shown cause to lift the stay and a hearing would provide no additional benefit. Cf. Mitsubishi Motors, 814 F.2d at 847 (affirming decision lifting stay without hearing when the court reviewed briefing by both parties and the debtor did not show "viable reasons for maintaining the stay"). Consequently, we hold that the Title III court did not abuse its discretion in declining to hold a hearing.

### III.

We affirm the judgment of the Title III court.

---

[7] Had Ponce wished to make this argument to the Title III court, it should have briefed the issue in its motion, requested a non-evidentiary hearing to argue the issue, or moved for reconsideration. See, e.g., 48 U.S.C. § 2170 (incorporating the Federal Rules of Bankruptcy Procedure into PROMESA Title III cases, including Fed. R. Bankr. P. 9024, which allows for a motion for reconsideration).