Objection Deadline: October 23, 2019 at 4:00 p.m. (AST)
Hearing Date: October 30, 2019 at 9:30 a.m. (AST)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 03283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 03566-LTS |
| as representative of | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO ("ERS"), | |
| Debtor. | |

## MOTION OF UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................4

    A.    THE ERS ACTION ................................................................................4

    B.    PROMESA TITLE III CASES ...............................................................6

    C.    EFFORTS TO AMICABLY RESOLVE THIS MOTION .....................................7

JURISDICTION AND VENUE .....................................................................................................8

RELIEF REQUESTED................................................................................................................8

BASIS FOR RELIEF .................................................................................................................9

# TABLE OF AUTHORITIES

## Cases

*Getty Petroleum Mktg., Inc. v. 2211 Realty, LLC*,
No. 11-40003 (FDS), 2012 WL 527655 (D. Mass. Feb. 16, 2012) .......................................... 13

*In re Barry P. Parker's, Inc.*,
33 B.R. 115 (M.D. Tenn. 1983) ...................................................................................... 12

*In re Countryside Manor, Inc.*,
188 B.R. 489 (Bankr. D. Conn. 1995) ............................................................................. 12

*In re Ideal Roofing & Sheet Metal Works, Inc.*,
9 B.R. 2 (Bankr. S.D. Fla. 1980) .................................................................................... 12

*In re Millsap*,
141 B.R. 732 (Bankr. D. Idaho 1992) ............................................................................. 13

*In re N.Y. Med. Grp., P.C.*,
265 B.R. 408 (Bankr. S.D.N.Y. 2001) .............................................................................. 9

*In re Overmyer*,
32 B.R. 597 (Bankr. S.D.N.Y. 1983) ............................................................................... 12

*In re Pro Football Weekly, Inc.*,
60 B.R. 824 (N.D. Ill. 1986) .......................................................................................... 13

*In re Saxon Indus., Inc.*,
43 B.R. 64 (Bankr. S.D.N.Y. 1984) ................................................................................. 12

*In re Sonnax Indus. Inc.*,
907 F.2d 1280 (2d Cir. 1990) ..................................................................................... 9, 10

*In re Unanue-Casal*,
159 B.R. 90 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994) .................................................. 9

*In re Venegas Munoz*,
73 B.R. 283 (Bankr. D.P.R. 1987) .................................................................................. 11

*In re Wedtech Corp.*,
87 B.R. 279 (Bankr. S.D.N.Y. 1988) ............................................................................... 12

Memorandum Order, *In re Fin. Oversight & Mgmt. Bd. for P.R.*,
Case No. 17-03283 (LTS) (D.P.R. July 7, 2017) ..................................................................... 9

*Peerless Ins. Co. v. Rivera*,
208 B.R. 313 (D.R.I. 1997) ............................................................................................. 9

## Statutes

11 U.S.C. § 362 ........................................................................................................................ 9

28 U.S.C. § 1331 ...................................................................................................................... 8

28 U.S.C. § 1391 ...................................................................................................................... 8

48 U.S.C. § 2161 ...................................................................................................................... 9

48 U.S.C. § 2166 ...................................................................................................................... 8

48 U.S.C. § 2167 ...................................................................................................................... 8

P.R. R. Civ. P. 11.1 ................................................................................................................. 11

UBS Financial Services Incorporated of Puerto Rico ("UBS Financial"), by and through
the undersigned counsel, moves this Court for an Order pursuant to section 362(d)(1) of title 11
of the United States Code (the "Bankruptcy Code"), made applicable to the above-captioned
cases by section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act of
2016 ("PROMESA"), 48 U.S.C. § 2161, for relief from the automatic stay.  In support of this
Motion, UBS Financial states as follows:

### PRELIMINARY STATEMENT[2]

1.      UBS Financial requests relief from the automatic stay in order to assert
counterclaims for breach of contract and indemnification against the ERS[3] in a lawsuit that the
ERS is currently pursuing against UBS under the caption *Administración de los Sistemas de
Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico v. UBS Fin. Servs. Inc. of
Puerto Rico*, Civ. No. KAC-2011-1067 (803) (the "ERS Action"), currently pending in the
Commonwealth of Puerto Rico Court of First Instance, San Juan Part (the "Commonwealth
Court").  In that lawsuit, the ERS seeks hundreds of millions of dollars in damages against UBS
Financial[4] based on its role as an arms-length underwriter in three offerings of pension obligation
bonds issued by the ERS in 2008 (the "ERS Bonds").  Among other things, the ERS contends
that the bonds it issued were illegal and inexplicably seeks to hold UBS Financial, which was
one of the underwriters for the bond offerings, responsible for that alleged legal defect in the
ERS's bonds.

---

[2]    Capitalized terms not defined in the Preliminary Statement will be defined below.

[3]    The ERS is a public entity organized as a trust under the laws of Puerto Rico, which was established by Act No.
447 of the Legislature of Puerto Rico to provide pension and other benefits to retired employees of the central
government, municipalities and public systems of the Commonwealth of Puerto Rico (the "Commonwealth").

[4]    UBS Trust Company of Puerto Rico ("UBS Trust", and together with UBS Financial, the "UBS Defendants") is
also a defendant in the ERS Action.  Because the proposed counterclaims only pertain to UBS Financial, UBS
Trust is not a party to the Motion.

3.    Specifically, the ERS's Fourth Amended Complaint,[5] filed on March 6, 2019,

alleges:

> In addition, as explained below, the issuance and sale of the Bonds were illicit as (i) they violated the public policy established by the Legislative Assembly of Puerto Rico, which denied their approval when they were contemplated throughout the Government; and (ii) the Bonds were guaranteed by pledging or alienating employer contributions to the System, which is not permitted by the Retirement Act.

Fourth Amended Complaint ¶ 1.6.

4.    While UBS Financial disagrees with the ERS's contention that its bonds violated

Puerto Rico law, the responsibility for that problem – if it exists – falls solely on the ERS itself.

In connection with the bond offerings, UBS Financial and the ERS entered into purchase

agreements in which the ERS provided express representations that the ERS had "full right,

power and legal authority" to issue and deliver the bonds, that the ERS had obtained any

approval it needed from government and public agencies to issue the bonds, and that the ERS

was not in violation of any constitutional provisions or laws.

5.    The ERS further represented in the ERS Bonds' offering statements that it was

issuing the ERS Bonds in accordance with the general authority provided under Act 447 of the

Legislative Assembly of Puerto Rico (the "Retirement Act"), that the Retirement Act authorized

the system to borrow money through the placement of debt and to secure said debt with its own

assets, and that the ERS Bonds would be "legally binding special obligations of the System,

enforceable in accordance with their terms and the terms of the bond resolutions."  The ERS

further represented that "all conditions, acts and things required by law" would have existed

---

[5]    A copy of the Fourth Amended Complaint is attached as an exhibit to the Lift Stay Notice (defined below), a copy of which is attached hereto as Exhibit A.  A Certified English Translation of the Fourth Amended Complaint is attached hereto as Exhibit B.

and/or occurred at the time of delivery of the bonds, and that the bonds would be within all limits prescribed by the laws of the Commonwealth. The ERS also incorporated into the offering statements an opinion of its lawyers indicating that the bonds "constitute legal, valid and binding limited obligations of the [ERS]."

6.      In effect, the ERS now brazenly contends that it provided ***false representations*** to UBS Financial and the purchasers of the ERS Bonds, thereby conceding that it breached its contractual obligations to UBS Financial.  Thus, in order for UBS Financial to fairly defend itself against the litigation being actively pursued by the ERS, UBS Financial should be allowed to assert counterclaims based on the contractual representations in the purchase agreements. Otherwise, the ERS would be free to pursue its baseless claims without consequences, while UBS Financial would be stripped of its bargained-for protections from such claims pursuant to which the ERS should indemnify UBS Financial for all of the costs associated with such claims.

7.      Recognizing that UBS Financial's counterclaims are governed by the automatic stay in the Title III Cases, UBS Financial contacted counsel for the Oversight Board and the AAFAF to request their agreement to lift the automatic stay, but has received no response.

8.      Even as the ERS prosecutes its action in the Commonwealth Court, parties to the Title III Cases, including the Oversight Board's Special Claims Committee, have filed adversary proceedings and claims objections in this Court with overlapping issues, in particular, the validity of the ERS bond issuances.  On July 24, 2019, this Court granted the Oversight Board's motion for a stay until November 30, 2019 of those proceedings to preserve the Oversight Board's limited resources and avoid duplicative litigation.  Inconsistently, however, the ERS has continued to prosecute its claims against UBS Financial in the Commonwealth Court.

9.      UBS Financial believes that these issues should be resolved by this Court, which is already addressing them, and which has the ability to provide full and fair relief to all parties affected.  Accordingly, UBS Financial also believes that the ERS Action should be stayed pending this Court's resolution of these common legal issues, and reserves the right to seek such a stay or dismissal of the ERS Action in the Commonwealth Court in favor of the overlapping proceedings here.

10.     Nevertheless, UBS Financial does not control the ERS's litigation strategy.  Thus, until such time as the action in the Commonwealth Court is stayed or dismissed, it would be wholly unfair to permit the ERS to continue to pursue its claims against UBS Financial outside the Title III Cases while enforcing the automatic stay against UBS Financial's compulsory counterclaims.  As long as the ERS is allowed to continue to pursue its claims in the Commonwealth Court, UBS Financial has no choice but to pursue its counterclaims there.  Therefore, UBS Financial respectfully requests that this Court lift the automatic stay to allow UBS Financial to file its proposed counterclaims in the ERS Action.

## BACKGROUND

### A.      THE ERS ACTION

11.     The ERS Action was commenced on September 29, 2011 by two beneficiaries of the ERS as a putative derivative suit.  On December 7, 2016, the Commonwealth Court allowed the ERS to intervene and ordered the plaintiffs, now including ERS (the "Plaintiffs"), to file a third amended complaint.

12.     In mid-2017, discovery commenced in the ERS Action.  To date, the UBS Defendants have produced over 114,000 pages of documents in response to document requests from the ERS.  The ERS, however, has ignored discovery requests and has not produced a single

document in the ERS Action.  No depositions have taken place.  The Commonwealth Court has
scheduled an Initial Conference for November 26, 2019 to discuss case management and
establish a schedule for discovery.

13.     On March 6, 2019, the Plaintiffs filed the Fourth Amended Complaint, which was
accepted by the Commonwealth Court on April 15, 2019.  The UBS Defendants were ordered to
file an answer to the Fourth Amended Complaint by April 29, 2019.

14.     In the Fourth Amended Complaint, the Plaintiffs allege that "the issuance and sale
of the Bonds were illicit as (i) they violated the public policy established by the Legislative
Assembly of Puerto Rico, which denied their approval when they were contemplated throughout
the Government; and (ii) the Bonds were guaranteed by pledging or alienating employer
contributions to the [ERS], which is not permitted by the Retirement Act."  Fourth Amended
Complaint ¶ 1.6.  Plaintiffs also allege that by "not only endorsing, but also participating as the
lead underwriter in the illicit and grossly negligent issuance of the Bonds, UBS [Financial]
violated its contractual, non-contractual and fiduciary obligations to the [ERS]…."  Id. ¶ 6.11.

15.     On April 29, 2019, UBS Financial filed, along with the UBS Defendants' answer,
its proposed counterclaims to the Fourth Amended Complaint,[6] alleging breach of contract and
indemnification arising out of the ERS's issuance of the bonds.  UBS Financial merely put the
Commonwealth Court on notice of the proposed counterclaims, but did not file them, because
UBS Financial did not want to violate the automatic stay.

---

[6]     A copy of UBS Financial's proposed counterclaims, which were submitted to the Commonwealth Court by
informative motion but have not been formally accepted, are included as an exhibit to the Lift Stay Notice
(defined below), a copy of which is attached hereto as Exhibit A.  A Certified English Translation of the
proposed counterclaims is attached hereto as Exhibit C.

**B.     PROMESA TITLE III CASES**

16.     On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed a petition in this Court commencing a case under Title III of PROMESA on behalf of the Commonwealth (the "Commonwealth Title III Case").On May 21, 2017, the Oversight Board filed a petition commencing a case under Title III of PROMESA on behalf of the ERS (the "ERS Title III Case", and together with the Commonwealth Title III Case, the "Title III Cases").  Since then, several proceedings in the Title III Cases have also challenged the validity of the ERS Bonds.  These include:

- The ERS Bond Objection,[7] filed by the UCC on March 12, 2019.

- The Retirees Objection,[8] filed by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retirees Committee") on April 23, 2019.[9]

- Case number 19-00280, an adversary proceeding (the "Adversary Proceeding") commenced by the Oversight Board, acting through the Special Claims Committee, and the UCC (collectively, the "Adversary Plaintiffs") naming UBS Financial and several other parties as defendants.  The Adversary Proceeding seeks recovery on 62 separate claims, including several that relate to the same bond issuances that are the subject of the ERS Action.  The complaint in the Adversary Proceeding was filed on May 2, 2019.

- On May 19, 2019, the Adversary Plaintiffs filed the ERS Avoidance Actions,[10] which seek to claw back all funds transferred to the ERS bond holders on account of the ERS Bonds.

---

[7]     *See Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico* (Dkt. No. 5580, the "ERS Bond Objection").

[8]     *See Omnibus Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of ERS Bonds Against ERS and the Commonwealth* (Dkt. No. 6482, the "Retirees Objection").

[9]     The distinction between the ERS Bond Objection and the Retirees Objection is that the Retirees Objection objects to claims arising from the ERS Bonds that were filed against both the ERS *and* the Commonwealth, and additionally alleges that many of these claims are improperly asserted as secured.  *See* Retirees Objection ¶ 31.

[10]    The ERS Avoidance Actions are currently pending before this Court as cases 19-00355, 19-00356, 19-00357, 19-00358, 19-00359, 19-00360 and 19-00361.

Each of the aforementioned proceedings will adjudicate factual and/or legal issues that are also before the Commonwealth Court in the ERS Action, including the validity of the ERS Bonds. *See, e.g.*, Retirees Objection ¶ 31 (arguing that the ERS Bonds were issued *ultra vires* and are therefore unenforceable).

17.     On June 25, 2019, the Oversight Board filed a motion to stay certain contested matters pending confirmation of a proposed plan of adjustment for the Commonwealth.[11]  The Oversight Board sought a similar stay of the Adversary Proceeding on July 9, 2019.[12]  By order dated July 24, 2019, this Court stayed a number of proceedings in the Title III Cases, including the ERS Bond Objection, the Retirees Objection, the ERS Avoidance Actions and the Adversary Proceeding.[13]

## C.     EFFORTS TO AMICABLY RESOLVE THIS MOTION

18.     On April 29, 2019, UBS Financial provided notice to counsel for the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") via email of its intention to seek relief from the automatic stay to file, prosecute and liquidate counterclaims in the ERS Action (the "Lift Stay Notice") in accordance with Paragraph III(R) of the Tenth Amended Notice, Case Management and Administrative Procedures (Dkt. No. 8027-1, the "Case Management Procedures"), in these Title III Cases.  *See* Ex. A.

19.     Counsel for the AAFAF represented that it would coordinate with counsel for the Oversight Board on this matter, and counsel for the AAFAF and UBS Financial held additional

---

[11]   *See Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* (Dkt. No. 7640).

[12]   *See Urgent Motion for Stay of Adversary Proceeding Supplemental to Pending Motion to Stay GO Bond Proceedings Pending Confirmation of Commonwealth Plan of Adjustment* (Dkt. No. 7882).

[13]   *See Order Regarding Stay Period and Mandatory Mediation* (Dkt. No. 8244).

meet and confer sessions, by telephone and email, during May 2019.  While UBS Financial anticipated resolving this matter consensually based on these early discussions with counsel for the AAFAF, they cut off communications instead.  Counsel for UBS Financial has subsequently asked counsel for the AAFAF on several occasions to resolve the subject matter of this Motion, but to date has not received a response. (*See* email from Elisa Klein to Luis Marini and Carolina Velaz Rivero sent June 5, 2019, attached hereto as Exhibit D)

20.     On August 27, 2019, counsel to UBS Financial again reached out to counsel for the Oversight Board and the AAFAF in an attempt to resolve the subject matter of this Motion.  Counsel to UBS Financial has received **no** response to the August 27 letter (attached hereto as Exhibit E).  As a result, UBS Financial was forced to file this Motion.

21.     In sum, the Oversight Board has sought to stay the proceedings in this Court, but it has allowed the ERS to pursue the same relief against UBS Financial in the ERS Action in the Commonwealth Court.  At the same time, the AAFAF has not consented to UBS Financial filing its counterclaims in the ERS Action.  This coordinated conduct smacks of bad faith use of bankruptcy procedures to gain an unfair litigation advantage.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction to grant the relief sought in this Motion pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a).

## RELIEF REQUESTED

23.     UBS Financial seeks relief from the automatic stay imposed by section 362 of the Bankruptcy Code so that it may file, prosecute and liquidate its counterclaims in the ERS Action.

## BASIS FOR RELIEF

24.     Section 362(d) of the Bankruptcy Code, incorporated into PROMESA by 48

U.S.C. § 2161, provides that, at the request of a party in interest and after notice and a hearing, a

court shall grant relief from the stay imposed under Section 362(a) "for cause."  11 U.S.C. §

362(d)(1).  "Cause" is not defined in the Bankruptcy Code.  *See, e.g.*, *In re Unanue-Casal*, 159

B.R. 90, 95-96 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994).  However, "'cause' is said to

exist when the harm that would result from a continuation of the stay would outweigh any harm

that might be suffered by the debtor or the debtor's estate if the stay is lifted." *Peerless Ins. Co.

v. Rivera*, 208 B.R. 313, 315 (D.R.I. 1997).

25.     As this Court has recognized, the factors used in the District of Puerto Rico to

determine whether cause exists for lifting the stay are those enumerated in *In re Sonnax Indus.

Inc.*, 907 F.2d 1280 (2d Cir. 1990).  *See* Memorandum Order at 2, *In re Fin. Oversight & Mgmt.

Bd. for P.R.*, Case No. 17-03283 (LTS) (D.P.R. July 7, 2017) [Dkt. No. 600]; *see also Unanue-

Casal*, 159 B.R. at 95-96 (analyzing the *Curtis* factors, which were adopted in *Sonnax*).  "Not all

of the [*Sonnax*] factors are relevant in every case and the court need not assign equal weight to

each factor." *In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (citations

omitted).  "Generally, courts have relied on only a few factors . . . to determine that sufficient

cause existed to lift the stay." *Unanue-Casal*, 159 B.R. at 96.

26.     The *Sonnax* factors that are applicable here are: (1) "whether relief would result in

a partial or complete resolution of the issues;" (2) the "lack of any connection with or

interference with the bankruptcy case;" (3) "whether the parties are ready for trial in the other

proceeding;" (4) "the interests of judicial economy and the expeditious and economical

resolution of litigation;" and (5) the "impact of the stay on the parties and the balance of harms."

*Sonnax*, 907 F.2d at 1286.  As set forth below, these factors weigh heavily in favor of lifting the stay to allow UBS Financial to file its counterclaims.

27.     First, relief from the stay will allow complete resolution of the issues in the ERS Action, including the counterclaims.  The counterclaims are based on the same contracts, issues and facts as the ERS's claims that are already before the Commonwealth Court.  The ERS has sought to hold UBS Financial – an arms-length underwriter – liable for purported legal defects in the ERS Bonds when the ERS gave UBS Financial express representations that the ERS Bonds were legally authorized.  UBS Financial should be allowed to pursue the counterclaims in order to compel the ERS to fully indemnify UBS Financial in the event that the ERS Bonds are found to have been improperly authorized – an issue that is also before this Court in the context of the ERS Bond Objection, the Retirees Objection, the ERS Avoidance Actions and the Adversary Proceeding.  Because the ERS is still pursuing its claims in the Commonwealth Court, resolution of all issues of fact and law relating to the ERS Action will only be realized if UBS Financial is permitted to assert its counterclaims.

28.     Second, while there is connection and interference with the Title III Cases here, the ERS cannot justifiably claim such interference as a basis for refusing to lift the stay while simultaneously requiring UBS Financial to litigate the same issues in the Title III Cases.  If the ERS were concerned with being forced to litigate the identical and overlapping issues raised in the multiple venues, it could (and should) seek a stay of the ERS Action.  In fact, UBS Financial fully believes that the ERS Action should be stayed pending resolution of these common legal issues before this Court, and reserves the right to seek such relief in Commonwealth Court.  However, as the ERS is aggressively pushing forward on its claims in the Commonwealth Court,

it cannot complain about the legal or economic burdens of these duplicative, parallel actions because the ERS has created that wasteful duplication.[14]

29.     Third, although the parties are not ready for trial in the ERS Action, it has been ongoing since 2011.  Discovery commenced in mid-2017 and will continue through at least 2020.  Refusing to grant UBS Financial relief from the stay will hamper the progress already made in the ERS Action.

30.     Fourth, the interests of judicial economy and the expeditious and economical resolution of litigation weigh in favor of lifting the stay here.  Important to this analysis is the fact that UBS Financial's proposed counterclaims are compulsory under Rule 11.1 of the Puerto Rico Rules of Civil Procedure for the General Court of Justice.  *See* P.R. R. Civ. P. 11.1.[15]  The proposed counterclaims arise out of the same transactions and occurrences as the claims in the Fourth Amended Complaint.  Thus, Rule 11.1 requires UBS Financial to bring these counterclaims in the ERS Action or risk their preclusion in any future litigation.

31.     Lastly, the *Sonnax* factor regarding the impact of the stay on the parties and the balance of harms similarly weighs heavily in favor of granting relief.  The automatic stay unfairly impacts UBS Financial because it permits the ERS to continue the ERS Action without allowing UBS Financial to fully defend itself through the assertion of related counterclaims.  The abusive litigation tactics of the Oversight Board and the ERS are further demonstrated by the pursuit of overlapping relief in this Court.

---

[14]     UBS Financial has not independently sought a stay of the ERS Action in this Court because it lacks standing to do so.  *See In re Venegas Munoz*, 73 B.R. 283, 285 (Bankr. D.P.R. 1987) ("[S]tanding to bring such an [enjoinment] action [against a party to a state court action] rests on the debtor, debtor in possession or the trustee, and not with the liable third party.").  Given this reality, UBS Financial must first seek to lift the automatic stay so it may file its counterclaims and preserve its rights.

[15]     Puerto Rico Rule of Civil Procedure 11.1 mirrors Federal Rule of Civil Procedure 13(a) regarding compulsory counterclaims.

32.     Indeed, while the ERS pursues essentially the same claims in the Commonwealth Court, the Oversight Board has obtained a 120-day stay of similar proceedings in this Court by asserting that the pursuit of such claims would be distracting to the ERS's reorganization efforts. The ERS could avoid the potential problems associated with this duplicative litigation[16] – problems that similarly impact UBS Financial – by seeking a stay of the ERS Action as well.  To the extent it chooses not to, it cannot complain of those corresponding burdens and simultaneously prevent UBS Financial from pursuing its rights in the ERS Action.

33.     Further, numerous courts have recognized the unfair harm that would be caused by enforcing the automatic stay against potential counterclaimants like UBS Financial.  *See, e.g.*, *In re Overmyer*, 32 B.R. 597, 601 (Bankr. S.D.N.Y. 1983) ("Where a debtor seeks affirmative relief as a plaintiff in a lawsuit and then invokes the protection of the automatic stay on a counterclaim, the situation warrants very careful scrutiny.  In such instance, a court must be cautious to avoid a decision which would convert Code § 362 from a shield into a weapon.  A debtor should not be permitted to reap the benefits of litigation in one court, but circumvent the burdens in another forum." (citation omitted)); *In re Wedtech Corp.*, 87 B.R. 279, 290 (Bankr. S.D.N.Y. 1988) (granting stay relief to allow counterclaimant to proceed with state court litigation commenced against it by the debtor pre-petition); *In re Saxon Indus., Inc.*, 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984) (same); *In re Countryside Manor, Inc.*, 188 B.R. 489, 491-92 (Bankr. D. Conn. 1995) (same); *In re Barry P. Parker's, Inc.*, 33 B.R. 115 (M.D. Tenn. 1983) (same); *In re Ideal Roofing & Sheet Metal Works, Inc.*, 9 B.R. 2, 3 (Bankr. S.D. Fla. 1980) (same); *see also Getty Petroleum Mktg., Inc. v. 2211 Realty, LLC*, No. 11-40003 (FDS), 2012 WL 527655, at *3

---

[16]     These potential problems include inconsistent judgments and preclusive effects on one proceeding due to decisions made in another forum.

n.4 (D. Mass. Feb. 16, 2012) ("To the extent that counterclaims are essentially defenses to the debtor's claims, 'when the debtor is in the position of the assailant, it would be inequitable to invoke the stay against the defendant[s'] counterclaim . . . .'" (alterations in original) (citation omitted)).

34.     This is particularly so where, as here, the counterclaims at issue are compulsory. *See In re Millsap*, 141 B.R. 732, 733 (Bankr. D. Idaho 1992) ("A creditor is entitled to relief from the section 362 automatic stay to assert a counterclaim in debtor initiated non-bankruptcy proceedings in most instances as a matter of right considering the compulsory nature of most counterclaims under rules of civil procedure."); *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826-27 (N.D. Ill. 1986) (reversing bankruptcy court's refusal to lift stay for assertion of compulsory counterclaims as an abuse of discretion); *see also Getty Petroleum*, 2012 WL 527655, at *3 n.4 ("[P]ersons whom the debtor has sued are not prevented by the stay from protecting their legal rights.").

35.     Here, the ERS has unfairly weaponized the automatic stay to strip UBS Financial of its bargained-for protections found in the same contracts that form the basis of the ERS's claims against UBS Financial.  If the Commonwealth Court is going to consider claims under those contracts, it should be permitted to consider the whole contract.  The ERS's refusal to consent to the filing of those counterclaims is an abuse of the automatic stay that should not be countenanced.

WHEREFORE, UBS Financial respectfully requests that the Honorable Court enter an order, substantially in the form attached hereto, (A) granting relief from the automatic stay allowing UBS Financial to file, prosecute and liquidate its counterclaims against the ERS in the Commonwealth Court, and (B) granting UBS Financial such further relief as is just and proper.

Respectfully Submitted:

In San Juan, Puerto Rico, this 8th day of October, 2019.

OF COUNSEL:

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
Paul J. Lockwood (*admitted pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Tel.:  (302) 651-3000
Fax:  (302) 651-3001

McCONNELL VALDÉS LLC
270 Muñoz Rivera Ave.
Hato Rey, Puerto Rico  00918
Tel.:  (787) 250-2631
Fax:  (787) 759-9225

By:  */s/ Roberto C. Quiñones-Rivera*
       Roberto C. Quiñones-Rivera, Esq.
       USDC-PR Bar No. 211512
       rcq@mcvpr.com

*Counsel for UBS Financial Services
Incorporated of Puerto Rico*

## CERTIFICATION OF COMPLIANCE WITH CASE MANAGEMENT PROCEDURES

I HEREBY CERTIFY:  That this Motion is in full compliance with the lift stay requirements in Paragraph III(R) of the Case Management Procedures entered in these Title III Cases.

Specifically, on April 29, 2019, UBS Financial provided notice to counsel for the Oversight Board and the AAFAF of its intention to seek relief from the automatic stay to file, prosecute, and liquidate its counterclaims in the ERS Action.

Thereafter, the parties met and conferred to attempt to resolve UBS Financial's request for relief from the automatic stay.  Counsel for the AAFAF indicated they would follow up with UBS Financial regarding its request, but did not do so.

On August 27, 2019, UBS Financial sent another letter notifying the Oversight Board and the AAFAF of UBS Financial's intent to seek relief from the automatic stay from this Court absent a consensual resolution, but to date has received no response.

Respectfully Submitted:

In San Juan, Puerto Rico, this 8th day of October, 2019.

By: */s/ Roberto C. Quiñones-Rivera*
     Roberto C. Quiñones-Rivera, Esq.
     USDC-PR Bar No. 211512
     rcq@mcvpr.com

     *Counsel for UBS Financial*
     *Services Incorporated of Puerto Rico*

15

849969-WILSR01A - MSW

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR<br>PUERTO RICO, | No. 17 BK 03283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO<br>RICO, *et al.*, | |
| Debtors.[17] | |

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR<br>PUERTO RICO, | No. 17 BK 03566-LTS |
| as representative of | |
| THE EMPLOYEES RETIREMENT SYSTEM<br>OF THE COMMONWEALTH OF PUERTO<br>RICO ("ERS"), | |
| Debtor. | |

## [PROPOSED] ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

---

[17]  The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

## <u>TO FILE COUNTERCLAIMS</u>

Upon consideration of the *Motion of UBS Financial Services Incorporated of Puerto Rico for Relief From the Automatic Stay* (Dkt. No. _____) (the "<u>Motion</u>")[18] and all related filings; adequate notice having been given to all relevant parties; having held a hearing before the Court on October 30, 2019; objections to the requested relief having been withdrawn or overruled on the merits; and for good cause shown, it is hereby **ORDERED** that:

1.     The Motion is GRANTED as set forth herein.

2.     Pursuant to Bankruptcy Code section 362, made applicable by PROMESA section 301(a), the automatic stay is hereby lifted for the limited purpose of permitting UBS Financial to file its proposed counterclaims in the ERS Action.

3.     For the avoidance of doubt, nothing in this Order shall prevent the debtors, the Oversight Board, the AAFAF or UBS Financial from seeking or agreeing to a stay of the ERS Action.

4.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.     The Court shall retain jurisdiction to resolve any dispute arising from or related to this Order.

Dated: _____, 2019          _____

                                                                                Honorable Laura Taylor Swain
                                                                                United States District Judge

---

[18]   Capitalized terms not defined in this Order shall have the meanings ascribed to them in the Motion.

17