**<u>EXHIBIT C</u>**

Certified Translation

## COMMONWEALTH OF PUERTO RICO
## COURT OF FIRST INSTANCE
## SAN JUAN SUPERIOR PART

| | |
|---|---|
| COMMONWEALTH OF PUERTO RICO GOVERNMENT EMPLOYEES AND JUDICIARY RETIREMENT SYSTEM ADMINISTRATION, PEDRO JOSÉ NAZARIO SERRANO, HIS SPOUSE, JUANITA SOSA PÉREZ AND THE CONJUGAL PARTNERSHIP COMPRISED BY BOTH; JOEL RIVERA MORALES; MARÍA DE LOURDES GOMEZ PEREZ; HECTOR CRUZ VILLANUEVA; LOURDES RODRÍGUEZ; AND, LUIS M. JORDAN RIVERA<br><br>Plaintiffs<br><br>v.<br><br>UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO AND UBS CONSULTING SERVICES OF PUERTO RICO; ABC INSURANCE COMPANY, INC.; XYZ INSURANCE COMPANY, INC,<br><br>Defendants. | CIVIL NO.: KAC-2011-1067 (901)<br><br>RE: BREACH OF CONTRACT DAMAGES<br><br>[Court Clerk Receipt Stamp April 29, 2019] |

## INFORMATIVE MOTION BY UBS FINANCIAL ON INTENT TO FILE A COUNTERCLAIM ONCE THE AUTOMATIC STAY OF CLAIMS AGAINST THE ERS IS LIFTED

TO THE HONORABLE COURT:

COMES NOW co-defendant UBS Financial Services Incorporated of Puerto Rico ("UBS PR"), through its undersigned attorneys, and respectfully informs and prays:

On this day, co-defendants have filed their *Answer to the Fourth Amended Complaint.* In addition to answering the allegations in the *Fourth Amended Complaint,* however, co-defendant UBS Financial ("UBS Financial") also wishes to file a counterclaim against the Puerto Rico Government Employees and Judiciary Retirement System Administration (ERS, by its Spanish acronym "). However, UBS Financial is not yet formally able to file its *Counterclaim* because it is subject to an automatic stay

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

Certified Translation

of proceedings that the ERS has filed with a federal court under the Puerto Rico

Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101 et seq.

("PROMESA").

Specifically, section III.Q. of the Eighth Amended Notice, Case Management

and Administrative Procedures (Dkt. # 4866-1), of *In re: The Financial Oversight and*

*Management Board for Puerto Rico, as representative of The Commonwealth of Puerto*

*Rico, et al,* No. 17 BK 323-LTS ("Title III Cases") and 17-BK-3566-LTS, prevents UBS

Financial from filing its *Counterclaim* without first having the automatic stay lifted or

rendered ineffective.

UBS Financial has initiated the necessary steps in the Title III Cases to request

a lift of the automatic stay, notifying the attorneys of the Financial Oversight and

Management Board for Puerto Rico (the "Oversight Board"), as well as those of the

Puerto Rico Fiscal Agency & Financial Advisory Authority (the "AAFAF"), of UBS

Financial's intention to request the lift of the automatic stay in order to file the

*Counterclaim*.

Attached as **Exhibit A** is copy of the communication sent to the attorneys of

the Board and AAFAF, which, in turn, includes copy of the document which, in due

course, will be UBS Financial's *Counterclaim*, as to notify Plaintiffs about UBS

Financial's intention to file, once the automatic stay is lifted.

**WHEREFORE, the UBS** Defendants  respectfully reiterate their request to the

Honorable Tribunal to take notice of the foregoing.

**WE HEREBY CERTIFY:** That on this same date we have sent a true and exact
copy of the foregoing, by regular mail to: Harold D. Vicente González, Esq., Harold D.
Vicente Colón, Esq., Ivelisse M. Ortiz Moreau, Esq., Vicente & Cuebas, PO Box 11609,
San Juan, PR 00910-1609; Francisco Pujol Meneses, Esq., Francisco Pujol Law Offices,
PSC, PO Box 363042, San Juan, PR 00936- 3042; Federico Hemández Denton, Esq.,PO
Box 9021279, San Juan, PR 00902- 1279; José Cháves Caraballo, Esq., Puerto Rico
Attorneys & Counselors At Law, PO Box 362122, San Juan, PR 00936-2122; and Carlos
López López, Esq., Rodolfo Carrión Vargas, Esq.,Wolf Popper Law Offices PSC, 654
Plaza, Suite I001, 654 Muñoz Rivera Ave., San Juan, PR 00918.

In San Juan, Puerto Rico, on this 29th day of April, 2019.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing
document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge
and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

Certified Translation

**SKADDEN, ARPS, SLATE**
 **MEAGHER** & **FLOM**
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Tel.:  (302) 651-3000
Fax:  (302) 651-3001

Paul J. Lockwood *(admitted pro hac vice)*
Nicole A. DiSalvo *(admitted pro hac vice)*
 Elisa M.C. Klein *(admitted pro hac vice)*

**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, Suite 800
San Juan, Puerto Rico 00918-1813
Tel.: (787) 764-8181
Fax:  (787) 3-8944

[Signed]

Salvador Antonetti- Stuts
RUA No. 11225
Salvador.antonetti@oneillborges.com

[Signed]
Ubaldo Fernandez Barrera
RUA No. 16298
Ubaldo.fernandez@oneilborges.com

[Signed]
Camill I. Marrero Quiñones
RUA No. 20153
Camille.marrero@oneillborges.com

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing
document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge
and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

Certified Translation

**EXHIBIT B**

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SAN JUAN SUPERIOR PART**

| | |
|---|---|
| COMMONWEALTH OF PUERTO RICO GOVERNMENT EMPLOYEES AND JUDICIARY RETIREMENT SYSTEM ADMINISTRATION, et al.<br><br>Plaintiffs<br><br>v.<br><br>UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO, et al.<br><br>Defendants. | CIVIL NO.: KAC-2011-1067 (803)<br><br>RE: DERIVATIVE ACTION/ FAILURE TO COMPLY WITH FIDUCIARY DUTIES/BREACH OF CONTRACT/DAMAGES |

## DEFENDANT UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO'S COUNTERCLAIMS

Defendant UBS Financial Services Incorporated of Puerto Rico ("UBS Financial"), by and through the undersigned counsel, alleges the following against plaintiff Puerto Rico Government Employees and Judiciary Retirement System Administration ("ERS, by its Spanish acronym").

## FACTUAL BACKGROUND

1.      These are counterclaims for breach of contract and indemnification arising from three purchase contracts that the ERS entered into with UBS Financial and other underwriters in 2008 in connection with the ERS's issuance of three series of pension fund bonds. In those purchase contracts, the ERS represented to UBS Financial that it had "full right, power and legal authority" to issue and deliver the bonds, that it had obtained any approval it needed from government and public agencies to issue the bonds, and that it was not in violation of any constitutional provisions or laws. UBS Financial purchased the ERS bonds relying on representations made by the ERS that the bonds were legally issued.

2.      In addition, the ERS represented in the bonds' offering statements that it was

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

issuing the bonds in accordance with the general authority provided under Act 447 of the Legislative Assembly of Puerto Rico (the "Retirement Act"), that the Retirement Act authorized the system to borrow money through the placement of debt and secure said debt with its own assets, and that the bonds would be "legally binding special obligations of the System, enforceable in accordance with their terms and the terms of in the bond resolutions. The ERS further represented that "all conditions, acts and things required by law" would have existed and/or occurred at the time of delivery of the bonds and that the bonds would be within all limits prescribed by the laws of the Commonwealth. The ERS also incorporated into the offering statements an opinion of its lawyers indicating that the bonds "constitute legal, valid and binding limited obligations of the [ERS]."

3.      However, when the ERS joined this lawsuit and filed the Third Amended Complaint in January 2017, it alleged that the bond issuances violated Puerto Rican law. The ERS has maintained that position in its Fourth Amended Complaint, contradicting its own contractual representations and offering statements, which indicated that the bonds were legal and that the ERS had the authority to issue said bonds. UBS Financial respectfully alleges that the ERS's original statements at the time of the bond offerings are correct and its litigation-motivated change of position should be ignored. However, in the event that it is determined that the bonds were not legally authorized or issued, then the ERS will have materially breached the purchase contracts with UBS Financial upon making false statements and causing UBS Financial to incur substantial expenses in litigating Plaintiffs' claims and other claims arising out of the purchase of the bonds. In addition, UBS Financial would be entitled to indemnification for any losses incurred as a result of the ERS's representations in the bond offering statements with respect to the legality of the bonds.

### A.      The Parties.

4.      The ERS is a public entity organized under the laws of Puerto Rico as a trust. It was established under the Retirement Act to provide pensions and other benefits to retired

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

employees of the central government, municipalities and public systems of the Commonwealth of Puerto Rico.

5.      UBS Financial is a Puerto Rico corporation that, among other things, provides investment banking services to public and private entities in Puerto Rico. UBS Financial was one of several ERS underwriters in connection with ERS's issuance of pension fund bonds in 2008.

**B.      The ERS decides to issue pension fund bonds and enters into purchase contracts with UBS Financial.**

6.      For a long time, the ERS has suffered from a lack of funds. Beginning in or around 2006, and in consultation with its financial advisor, the Government Development Bank for Puerto Rico, the ERS began to consider the option of raising funds through the issuance of pension fund bonds. In 2007, the ERS was contemplating the issuance of bonds in the global market through Merril Lynch & Co., Inc. However, the ERS postponed this plan and, instead, decided to issue several series of bonds in the local Puerto Rico market. To carry out its plan, it entered into three purchase contracts with UBS Financial and other investment banks that had agreed to act as underwriters of the bonds.

7.      Specifically, on January 30, 2008, the ERS accepted and entered into an *Amended and Restated Purchase Contract for Senior Pension Funding Bonds, Series A* (the "Series A Purchase Contract") through which UBS Financial and the other underwriters agreed:

> [u]pon the terms and conditions and in reliance on the representations, warranties and agreements set forth herein ... to purchase from the [ERS] ... all (but not less than all) of the $1,588,810,799.60 initial principal amount of Employees Retirement System of the Government of the Commonwealth of Puerto Rico Senior Pension Funding Bonds, Series A....

(*See*, Exhibit 1 ¶ 1) According to the System Secretary's Certificate, the ERS Board of Trustees approved the *Series A Purchase Contract* through a resolution dated January 29, 2008 (Exhibit l).

8.      On May 28, 2008, the ERS accepted and entered into a *Purchase Contract for Senior Pension Funding Bonds, Series B* (the "Series B Purchase Contract") through which UBS Financial and the other underwriters agreed:

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

[u]pon the terms and conditions and in reliance on the representations,
warranties and agreements set forth herein ... to purchase from the [ERS] ...
all (but not less than all) of the $1,058,634,613.05 initial principal amount of
Employees Retirement System of the Government of the Commonwealth of
Puerto Rico Senior Pension Funding Bonds, Series B....

(*See*, Exhibit 2 ¶ 1)

According to the System Secretary's Certificate, the ERS Board of Trustees approved

the *Series B Purchase Contract* through a resolution dated January 29, 2008 (Exhibit 2).

9.      On June 26, 2008, the ERS accepted and awarded a *Purchase Contract for Senior*

*Pension Funding Bonds, Series* C (the "Series C Purchase Contract" and together with the Series

A Purchase Contract and the Series B Purchase Contract, the "Purchase Contracts") through

which UBS Financial and the other underwriters agreed:

[u]pon the terms and conditions and in reliance on the representations,
warranties and agreements set forth herein ... to purchase from the ERS
all (but not less than all) the amount of $300,202,930.00 in initial capital
of the Pension Fund Bonds, Series A of the Employee Retirement System
of the Government of the Commonwealth of Puerto Rico, ....

(*See*, Exhibit 3 ¶ 1) In accordance with the System Secretary's Certificate, the ERS Board of

Trustees approved the *Series* C *Purchase Contract* by a resolution dated June 26, 2008 (Exhibit

3).

10.     The Series A, Series B, and Series C Bonds are hereinafter referred to as the

"Bonds".

**C. The ERS represents and warrants to UBS Financial that it has the legal
authority to issue the Bonds.**

11.     In order to induce UBS Financial to accept and award the Purchase Contracts, the

ERS made various representations and warranties to UBS Financial and the other underwriters.

Specifically, in the *Series A Purchase Contract,* the ERS represented that:

- The [ERS] has full legal right, power and authority to adopt
  the Bond Resolution, to enter into this Purchase Contract ...... ,
  and to issue and deliver the Bonds to the Underwriters as
  provided herein ......(Ex. 1 ¶ 6(a));

- Except for the approval of the Government Development
  Bank, which has already been or will before the Closing be
  obtained and is or will at the Closing be in full force and effect,
  no approval, permit, consent, or authorization of, or
  registration or filing with, any governmental or public agency

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing
document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge
and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

Translation Page **8** of 16

or authority not already obtained or made is required by the [ERS] in connection with the issuance and sale of the Bonds in the Commonwealth of Puerto Rico, or the execution and adoption and delivery by the System of, or the due performance of its obligations under this Purchase Contract ... (Ex. 1¶ 6(b));

- [T]he [ERS] is not in breach of or default under any applicable constitutional provision, law (including, without limitation, any administrative rule-making law) or administrative regulation of the Commonwealth or the United States, or any agency or department of either, or any applicable judgment or decree and no event has occurred and is continuing relating to bonds, notes or other evidences of indebtedness of the **[ERS]** or any **[ERS]** guaranty of bonds, notes or other evidences of indebtedness or indebtedness of others which, with the passage of time or the giving of notice, or both, would constitute a default or an event of default under any such instrument ... (Ex. 1¶ 6(c)).

The ERS made identical representations and warranties on the *Series B Purchase Contract* (*see,* Exhibit 2 ¶¶ 6(a), (b), (c)) and *Series C Purchase Contract* (*see,* Exhibit 3 ¶¶ 6(a), (b), (c)).

### D.    The ERS represents in the *Official Statements* of the Bonds that it has legal authority to issue the Bonds.

12.    The ERS also agreed in the Purchase Contracts to provide UBS Financial with copies of the offering statements for the Bonds (the "Official Statements") and "a certified copy of the Bond Resolution" (Exhibit 1 ¶ 2; Exhibit 2 ¶ 2; Exhibit 3 ¶ 2), and to indemnify UBS Financial:

against any and all loss, liability claim, damage and expense whatsoever, joint and several, arising out of any untrue statement or alleged untrue statement of material fact contained in the Official Statement (or any amendment or supplement thereto) or the omission or alleged omission of therefrom of a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading. ...

(Exhibit 1 Rodriguez, l l(a); Exhibit 2 ¶ l(a); Exhibit 3 ¶1 1(a)).

13.    The ERS specifically represented in both the Official *Statements* and *Bond Resolution* that it had the legal authority to issue the Bonds. For example, in the *Series A Official Statement,* the ERS stated that "[t]he Bonds are being issued pursuant to general authority contained in the [Retirement] Act" (Ex. 4 at []) and that "[t]he [Retirement] Act authorizes the [ERS] to borrow money, including through the direct placement of debt, and secure any such

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

borrowing with its assets" (*id.,* p. 7). The ERS made similar representations in the *Series B Official Statement* (*See,* Ex. 5 at []) and *Series* C *Official Statement* (*See,* Ex. 6 at []).

14.     In addition, the *Bond Resolution,* which was incorporated into each of the *Official Statements,* stated that:

> The [ERS] is duly authorized under the Act to create and issue the Bonds and to adopt this Resolution and to create a security interest on the Pledged Property in the manner and to the extent provided in this Resolution. . .. The Bonds are and will be the valid and legally binding special obligations of the [ERS], enforceable in accordance with their terms and the terms of this Resolution.

(Ex. 7 § 705) The ERS further represented that:

> Upon the date of authentication and delivery of any of the Bonds, all conditions, acts and things required by law and this Resolution to exist, to have happened and to have been performed precedent to and in the issuance of such Bonds shall exist, shall have happened and shall have been performed and the issue of such Bonds, together with all other indebtedness of the [ERS], shall be within every debt and other limit prescribed by the laws of the Commonwealth.

(*Id.* § 709.3)

15.     The ERS also hired the law firm of Fiddler Gonzalez & Rodriguez, P.S.C. for them to provide their legal opinions, attached to the bond offering statements, asserting that, "[after having] examined the Constitution and the laws of the Commonwealth of Puerto Rico," "[t]he Bonds have been duly authorized by the System and constitute legal, valid and binding limited obligations of the System " (*See,* Exhibit 8 at pp. 1-2; Exhibit 9 at pp. 1-2; Exhibit 10 at pp. 1-2.)

16.     The ERS's current position that the bonds were not legally authorized totally contradicts its claims addressed to buyers in the *Official Statements, which* assured those buyers that the ERS had the authority to issue the Bonds. When revealing all the material facts in the *Official Statements,* the ERS never indicated that it was required to obtain the approval of the Puerto Rico Legislative Assembly before issuing the Bonds.

**E.      UBS Financial purchases the bonds relying on the representations of the ERS.**

17.     As indicated in the Purchase Contracts, UBS Financial and the other underwriters relied on the ERS's representations and warranties with respect to the legality of the Bonds by agreeing to purchase the Bonds. Having received assurances from ERS that it was legally

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

authorized to issue the bonds and that no additional approval from any other government body or agency was necessary, UBS Financial and the other underwriters purchased nearly $3 billion in ERS bonds:

- On January 30, 2008, they purchased the entire amount of $1,588,810,799.60 in initial principal of the Series A Bonds;

- On May 28, 2008, they purchased the entire amount of $1,058,634,613.05 in initial principal of the Series B Bonds;

- And on June 26, 2008, they purchased the entire amount of $300,202,930.00 in initial principal of the C Series Bonds.

    **F.**    **Individual ERS beneficiaries file claims against UBS Financial alleging that it breached the purchase contracts.**

18.    On September 29, 2011, two individuals, Pedro José Nazario Serrano and Juanita Sosa Pérez, who claimed to be beneficiaries of the ERS (the "Original Plaintiffs"), filed a complaint alleging claims on behalf of the ERS arising from the issuance of the Bonds. The Original Plaintiffs named UBS Financial, one of their affiliates, two of the other bond underwriters, an advisor to the ERS, and former employees and members of the ERS Board of Trustees as the defendants.

19.    In their original complaint, the Original Plaintiffs alleged that "the issuance of the Bonds was illegal, as it violated public policy established by the Puerto Rico Legislative Assembly, which denied approval of the Bonds when they were contemplated through the government." (Original Complaint ¶ 1.4) The Original Plaintiffs also alleged that this "violation of public policy promulgated by the Legislative Assembly constituted...a breach of UBS Financial's contractual obligations' and that UBS Financial "illegally charged numerous commissions and fees and deductions related to the reckless, illegal and grossly negligent issuance and sale of the Bonds ... ". (*Id.,* ¶¶ 2.31, 7.3)

20.    On April 16, 2013, the Original Claimants filed a Second Amended Complaint, joining five additional plaintiffs who also allegedly benefited from the ERS (along with the Original Plaintiffs, the "Beneficiaries Plaintiffs"). The Second Amended Complaint included similar allegations that the bonds were issued illegally.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

**G.      The ERS joins the complaint and files a third and fourth amended complaint,
         acknowledging that it had no authority to issue the bonds.**

21.      On September 27, 2016, the ERS requested to join the Beneficiaries Plaintiffs'

claims against UBS Financial, and was granted that request on the condition that the plaintiffs

file an amended complaint, adding the ERS as plaintiff. On January 20, 2017, the ERS and

Beneficiaries Plaintiffs complied with the Court's order and filed a Third Amended Complaint.

In that complaint, the ERS *joined the Beneficiaries Plaintiffs' allegation that the Bonds were*

*illegal* when it issued them:

> the issuance and sale of the Bonds were illicit as (i) they violated the
> public policy established by the Legislative Assembly of Puerto Rico,
> which denied their approval when they were contemplated
> throughout the Government; and (ii) the Bonds were guaranteed by
> pledging or alienation of employer contributions to the System, which
> is not permitted by the Retirement Act.

(Third Amended Complaint, ¶1.7). The ERS included the same allegation when it filed

the Fourth Amended Complaint on March 6, 2019. (Fourth Amended Complaint, ¶1.6 and 6.12).

In asserting such allegations, the ERS contradicted its prior representations in the Purchase

Contracts and *Official Statements* that it had the authority to issue the bonds.

22.      Therefore, in violation of its own contractual and written representations, the ERS

now alleges that UBS Financial breached the Purchase Contracts by agreeing to participate in the

issuance of bonds that were illegal. They allege that the issuance and sale of the Bonds violated

the Retirement Act and constituted "grossly negligent and illicit conduct by UBS Consulting and

UBS [Financial]." (*Id.* ¶4.57).  In addition, they allege that the conduct of UBS Financial was a

"breach by such defendants of their contractual, non-contractual and fiduciary duties to the

System..." (Id. ¶ 7.2) because UBS Financial "knew or should have known that the issuance and

sale of the Bonds violated the public policy established by the Legislative Assembly of Puerto

Rico..." and "that the Retirement Act was being violated" (*Id.* ¶ 6.12).

23.      The dishonest conduct of the ERS with respect to the legality of the Bonds should

not be validated by this Court. UBS Financial respectfully contends that the ERS was right the

first time - that the Bonds were legally issued in 2008. But to the extent that the Bonds were not

duly authorized, the representations made in the Purchase Contracts assign to the ERS the risk

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing
document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge
and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

of illegality of the Bonds. To the extent that it is determined that the Bonds were not legally authorized, then the ERS has breached the Purchase Contracts and is liable to UBS Financial for damages resulting from such breaches.

24.      UBS Financial has incurred substantial expenses in litigating the Beneficiaries Plaintiffs' and the ERS's breach of contract claims and other claims arising out of the Bonds' purchase. In addition, UBS Financial faces potential claims arising from ERS representations in the *Official Statements* on the legality of the Bonds.

## Cause I

## Breach of Contract

25.      UBS Financial reiterates and incorporates the allegations set forth in paragraphs 1 through 24 as if they were set out herein.

26.      The Purchase Contracts are valid and binding contracts.

27.      In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS will have materially breached its contractual obligations under the Purchase Contracts by misrepresenting to UBS Financial as having "full legal right, power and authority ... to issue and deliver the Bonds."

28.      In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS will have materially breached its contractual obligations under the Purchase Contracts by misrepresenting to UBS Financial that "no approval, permit, consent, or authorization of, or registration or filing with, any governmental or public agency or authority not already obtained or made is required by the [ERS] in connection with the issuance and sale of the Bonds in the Commonwealth of Puerto Rico, or the execution or adoption and delivery by the System of, or the due performance of its obligations under th[e] Purchase Contract[s]."

29.      In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS will have materially breached its contractual obligations under the Purchase Contracts by misrepresenting to UBS Financial that  "[it was] not in breach of or default under any applicable constitutional provision, law (including, without limitation, any administrative rule-making law) or administrative regulation of the Commonwealth or the United States, or any

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

agency or department of either, or any applicable judgment or decree."

30.     UBS Financial expressly relied on the veracity of the foregoing representations when entering into the Purchase Contracts.

31.     In the event that the Bonds are determined to be illegal or issued in an invalid manner, material breaches of the Purchase Contracts by the ERS will have caused UBS Financial to suffer substantial damages in litigating the claims of the ERS and Beneficiaries Plaintiffs and other claims in connection with the Purchase Contracts.

32.     The Beneficiaries Plaintiffs have filed claims against UBS Financial, alleging that UBS Financial is liable for the payment of damages because the Bonds were illegally issued.

33.     In the event that UBS Financial is found liable to the Beneficiaries Plaintiffs, such liability shall have emerged, in whole or in part, due to the ERS's material breach of its obligations under the Purchase Contracts.

34.     As a result, UBS Financial will be entitled to damages in an amount to be determined at trial, along with pre and post-judgment interests.

## Cause II

## Indemnification

35.     UBS Financial reiterates and incorporates the allegations set forth in paragraphs 1 through 34 as if they were set out herein.

36.     The Purchase Contracts are valid and binding contracts.

37.     The ERS agreed in the Purchase Contracts to indemnify UBS Financial "against any and all loss, liability, claim, damage and expense whatsoever, joint and several, arising out of any untrue statement or alleged untrue statement of material fact contained in the Official Statement…or the omission or alleged omission therefrom of a material fact necessary in order to make the statements therein, in light of the circumstances in which they were made, not misleading…"

38.     In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS shall have misrepresented in the *Official Statements* of the Bonds that the Bonds

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

were "issued pursuant to general authority contained in the [Retirement] Act".

39.     In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS falsely represented in the *Official Statements* of the Bonds that "[t]he [Retirement] Act authorizes the [ERS] to borrow money, including through the direct placement of debt, and secure any such borrowing with its assets."

40.     In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS falsely represented in the *Bond Resolution* – incorporated to the *Official Statements* – that "(t]he [ERS] is duly authorized under the Act to create and issue the Bonds and to adopt this Resolution and to create a security interest in the Pledged Property in the manner and to the extent provided in this Resolution."

41.     In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS falsely represented in the *Bond Resolution* that "[t]he Bonds are and will be the valid and legally binding special obligations of the [ERS], enforceable in accordance with their terms and the terms of this Resolution."

42.     In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS falsely represented in the *Bond Resolution* that "[u]pon the date of authentication and delivery of any of the Bonds, all conditions, acts and things required by law and this Resolution to exist, to have happened and to have been performed precedent to and in the issuance of such Bonds shall exist, shall have happened and shall have been performed and the issue of such Bonds, together with all other indebtedness of the [ERS], shall be within every debt and other limit prescribed by the laws of the Commonwealth."

43.     In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS omitted the material facts of the *Official Statements* necessary for the statements contained therein not to be misleading.

44.     As a result of the foregoing, the ERS shall indemnify UBS Financial for any losses incurred by the latter.

## REQUEST FOR RELIEF

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

Certified Translation

WHEREFORE, UBS Financial respectfully requests that a judgment be entered in its favor and that the following remedies be granted:

A.      Indemnity for damages in an amount to be determined at trial;

B.      A judgment ordering the ERS to indemnify UBS Financial for any liability to which it is or will be subject;

C.      Any other remedy that the Court deems just and appropriate.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS