**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*, Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |

**RESPONSE TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
URGENT OBJECTION TO MAGISTRATE JUDGE'S SEPTEMBER 16, 2019 ORDER
GRANTING PROTECTIVE ORDER WITH RESPECT TO
<u>DEPOSITION OF JOSE ORTIZ</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

    I.    THE COMMITTEE'S OBJECTION RESTS ON THE FALSE PREMISES THAT IT WILL NOT RECEIVE TESTIMONY FROM CHRISTIAN SOBRINO AND THAT AAFAF AND PREPA ARE REQUIRED TO PRODUCE A CURRENT GOVERNMENT OFFICIAL FOR DEPOSITION. ....................................................................................... 4

    II.    JUDGE DEIN CORRECTLY HELD THAT THE COMMITTEE'S CUMULATIVE APEX DEPOSITION NOTICE WAS IMPROPER................... 6

        A.    Judge Dein Correctly Applied First Circuit Law Regarding Requests for Apex Depositions.................................................................. 6

        B.    Judge Dein Correctly Held That the Discovery The Committee Seeks Can Be Obtained Through Multiple Other Witnesses..................... 8

    III.    JUDGE DEIN'S ENFORCEMENT OF THE SCHEDULING ORDER DEADLINES WAS NOT CLEARLY ERRONEOUS....................................... 10

CONCLUSION..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bogan v. City of Boston*,
   489 F.3d 417 (1st Cir. 2007) ................................................................................................ 6, 7

*Phinney v. Wentworth Douglas Hosp.*,
   199 F.3d 1 (1st Cir. 1999) ...................................................................................................... 4

**Statutes**

Puerto Rico Electric Power System Transformation Act, Act 120-2018, § 5(b) ........................ 2, 9

Puerto Rico Fiscal Agency and Financial Authority Act, Act 2-2017 §§ 8(q), 3(b) .............. 2, 5, 8

**Rules**

Rule 30(b)(6) ............................................................................................................................. 1, 7

To the Honorable United States District Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Puerto Rico Electric Power Authority ("PREPA") [2] respectfully submit this response to the *Official Committee of Unsecured Creditors' Urgent Objection to Magistrate Judge's September 16, 2019 Order Granting Protective Order With Respect to Deposition of Jose Ortiz, Dkt. 1645* (the "Objection"). In support of this Response, AAFAF and PREPA state as follows:

## INTRODUCTION

1. By its Objection, the Committee seeks to overturn Magistrate Judge Dein's *Order on Motion for Protective Order*, Dkt. 1640 (the "Order"), which granted AAFAF and PREPA's motion to quash the Committee's untimely deposition notice to Jose Ortiz, PREPA's CEO. There is no reason for this Court to disturb that ruling, particularly since Judge Dein entered her order "without prejudice to the Committee requesting leave to take Mr. Ortiz's deposition after the Rule 30(b)(6) depositions of AAFAF, PREPA, and P3 have taken place, should the Committee believe, at that point, that there is good cause for a late deposition because the Government Parties have failed to provide adequate testimony on a particular subject relevant to the 9019 hearing." Order at 6. Even though this Court has held that matters pertaining to PREPA's implementation of the RSA are beyond the scope of the 9019 proceeding, the Committee claimed that it required Mr. Ortiz to testify regarding that very topic. *Compare* July 11 Conf. Tr. 7:13-16, 13:21-14:1 (Court is not being asked to approve imposition of charges under the RSA and issues regarding whether further actions of the Puerto Rico government ought to be approved are beyond the scope of the 9019 Motion) *with* Objection ¶ 24 (Committee seeks testimony regarding "the manner in which the Government Parties intend to pass the Transition

---

[2] The Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as PREPA's representative pursuant to section 315(b) of PROMESA, has authorized the undersigned to file the Objection on behalf of PREPA.

Charge on to customers."). The Committee also argued that it needed Mr. Ortiz to testify regarding the RSA negotiations and the effect of the RSA on transformation, notwithstanding that Mr. Ortiz was not a party to the RSA negotiations and the P3 Authority is charged with overseeing the transformation. Objection ¶ 24; *See* Puerto Rico Fiscal Agency and Financial Authority Act, Act 2-2017 §§ 8(q), 3(b) (AAFAF is the sole government entity with authority to negotiate restructuring agreements); Puerto Rico Electric Power System Transformation Act, Act 120-2018, § 5(b) (P3 is the sole government entity with authority to negotiate PREPA transformation transactions). The Committee received 30(b)(6) testimony from P3 and will be receiving 30(b)(6) testimony from AAFAF and from multiple other Government Party witnesses who, unlike Mr. Ortiz, were directly involved in negotiating those transactions. There was no good cause to order a cumulative deposition of PREPA's CEO, as Judge Dein recognized.

2. Moreover, the Committee's deposition notice to Mr. Ortiz was untimely. By its own admission, the Committee made a "deliberate choice" not to serve a deposition notice on Mr. Ortiz until over a month after the scheduling order deadline, despite identifying Mr. Ortiz as a potential witness well beforehand. Objection ¶ 3. Judge Dein's holding that the Committee "waited, at its peril" to serve the notice is far from "clearly erroneous" — it is manifestly fair and reasonable. Order at 4.

3. The Committee now argues in its Objection that cumulative testimony from Mr. Ortiz should be allowed because the Committee will not receive testimony from any currently sitting Government official in support of the RSA. The Committee cites no basis for this alleged requirement and does not contest Judge Dein's finding that no such requirement exists. The Committee will receive testimony regarding the RSA from multiple witnesses who, unlike Mr. Ortiz, have direct knowledge of the negotiations. The Committee will be receiving 30(b)(6)

2

testimony on behalf of AAFAF and PREPA through Fernando Batlle, a financial advisor who advised the Government in the RSA negotiations. The Committee will receive testimony from an Oversight Board member (Mr. Skeel), the Oversight Board's Executive Director (Ms. Jaresko) and the Oversight Board's financial advisor (Citibank, through David Brownstein and Frederic Chapados).

4. The Committee will also be receiving testimony from Mr. Sobrino, a key Government decision-maker, notwithstanding his subsequent resignation. In fact, the very morning after the Objection was filed, counsel for the Committee acknowledged to counsel for the Government Parties that the Committee had been negotiating deposition dates and logistics with counsel for Mr. Sobrino, and that Mr. Sobrino's deposition might occur on October 16, 2019. While a date has not been finalized, Mr. Sobrino's counsel has repeatedly advised that Mr. Sobrino is willing to testify in a deposition for purposes of this proceeding. The Committee's Objection is misleading to the extent it attempts to create the impression otherwise.

5. Under these circumstances, it would have been entirely reasonable for Judge Dein to preclude Mr. Ortiz's deposition outright, rather than offer the Committee a chance for a second bite at the apple after 30(b)(6) depositions are complete. There is no basis to overturn Judge Dein's ruling so that PREPA's highest-ranking officer must give cumulative testimony about transactions he did not negotiate and issues this Court has already instructed are beyond the scope of the 9019 Motion. As set forth in the Committee's Objection, the "clearly erroneous" standard applies to the instant motion. Objection ¶ 14. Under that standard, this Court "must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [it forms] a strong, unyielding belief that a mistake has been made." *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (internal quotation

3

marks and citation omitted). Against this standard, it is clear the Objection ought to be overruled.

6. Because Judge Dein correctly held that the Committee had not demonstrated good cause for its untimely deposition notice to Jose Ortiz and that well-established law in the First Circuit requires the Committee to seek discovery from other sources before pursuing a deposition of PREPA's CEO, her Order should be affirmed.

**I. THE COMMITTEE'S OBJECTION RESTS ON THE FALSE PREMISES THAT IT WILL NOT RECEIVE TESTIMONY FROM CHRISTIAN SOBRINO AND THAT AAFAF AND PREPA ARE REQUIRED TO PRODUCE A CURRENT GOVERNMENT OFFICIAL FOR DEPOSITION.**

7. The Committee's principal reason for demanding a deposition from Jose Ortiz is its claim that "not a single Puerto Rico government official will testify under oath in support of or with respect to the RSA." Objection ¶ 1; *see also id.* ¶¶ 6, 12, 17, 22, 25. But, the Committee does not point to any authority to support its contention that AAFAF and PREPA are required to provide the testimony of a Government Official in support of the RSA. *See generally id.* Nor does the Committee contest Judge Dein's statement that no such requirement exists. *Compare* Objection *with* Order at 4.

8. Here, the absence of testimony from a sitting Government Official does not impair the Committee's ability to receive witness testimony with respect to the issues that are before the Court in connection with the 9019 Motion. The RSA was negotiated on PREPA's behalf by the Oversight Board and AAFAF, with support from their outside counsel and financial advisors. *See* Sobrino Decl., ¶ 4, Dkt. 1429; Jaresko Decl., ¶¶ 10-11, Dkt. 1428; Brownstein Decl. ¶ 17k, Dkt. 1426. Christian Sobrino was the key Government decision-maker for AAFAF and PREPA, but in day-to-day negotiations AAFAF and PREPA were represented by outside counsel from O'Melveny & Myers LLP ("O'Melveny") and financial advisors from

4

Ankura Consulting LLC ("Ankura"). Sobrino Decl. ¶ 4. While Mr. Sobrino has resigned from the Government, he still plans to testify, and AAFAF and PREPA have designated Mr. Batlle, the principal financial advisor from Ankura, to give 30(b)(6) testimony on behalf of AAFAF and PREPA.

9. In fact, the Committee will be receiving testimony from at least five Government Party witnesses, each of whom (unlike Mr. Ortiz) were involved in the negotiation of the RSA or the transformation transaction—1) Fernando Batlle, AAFAF and PREPA's financial advisor with respect to the RSA, 2) Natalie Jaresko, the Executive Director of the Oversight Board, 3) David Skeel, Oversight Board member, 4) David Brownstein, the Oversight Board's financial advisor with respect to the RSA, and 5) Frederic Chapados, the Oversight Board's financial advisor with respect to the transformation transaction. The Committee also took the 30(b)(6) deposition of P3, the Government agency charged with negotiating the transformation transaction.

10. More critically, however, the Committee's demand for Mr. Ortiz's testimony hinges on the theory that he ought to be a substitute for Mr. Sobrino. There is no basis for this contention. As a matter of Puerto Rico law, AAFAF is "the only entity of the Government of Puerto Rico authorized to, on behalf of the Government of Puerto Rico or any component thereof, negotiate, restructure, and/or enter into Creditors' Agreements in connection with any debt of the Government . . . and/or agreement with the creditors of any of the components thereof." Act 2-2017 §§ 8(q), 3(b) (defining "Creditors' Agreement" to include a restructuring agreement). Accordingly, Mr. Sobrino, as AAFAF's Executive Director, directed the efforts of outside counsel and consultants in the RSA negotiations, not Mr. Ortiz. *See* Sobrino Decl.,¶ 4. Mr. Sobrino's resignation does not confer his knowledge to Mr. Ortiz.

5

11. The Objection obscures that the Committee is likely to receive deposition testimony from Mr. Sobrino. Indeed, the Committee was in the midst of negotiating a deposition date with Mr. Sobrino's counsel when it filed its objection. *Cf.* Objection ¶ 11, n.5 (stating that Mr. Sobrino "has not yet agreed to sit for a deposition"). But the Committee has been negotiating with Mr. Sobrino's counsel regarding the parameters of Mr. Sobrino's anticipated deposition for some time. Indeed, in a telephone conversation the day after the Committee filed the Objection, the Committee's counsel informed the Government Parties that Mr. Sobrino's deposition might take place on October 16, 2019.

12. The Committee's contention that PREPA should be ordered to produce its CEO to testify about transactions he did not negotiate, in addition to testimony from half a dozen witnesses who did participate in those negotiations to satisfy the Committee's unsupported demand to depose a current Government Official about the RSA, should therefore be rejected.

## II. JUDGE DEIN CORRECTLY HELD THAT THE COMMITTEE'S CUMULATIVE APEX DEPOSITION NOTICE WAS IMPROPER.

### A. Judge Dein Correctly Applied First Circuit Law Regarding Requests for Apex Depositions.

13. As the First Circuit has explained, the need to limit discovery of high-ranking government officials is "well established," "based on the notion that high-ranking government officials have greater duties and time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (internal quotation marks omitted). Accordingly, a high-ranking government official "is not subject to being deposed absent a demonstrated need." *Id.* at 423. Even when a high-ranking government official has first-hand knowledge related to the claim being litigated, "discovery is permitted only where it is shown that other persons cannot provide the necessary information." *Id.* It is not enough to

6

merely claim that a high-ranking Government official has unique information, as the Committee does. Objection ¶¶ 19-22. The First Circuit requires a litigant to "pursue other sources to obtain relevant information before turning to" a high-ranking official. *Bogan*, 489 F.3d at 424.

14. In *Bogan*, the plaintiffs sued the City of Boston for damages allegedly incurred as a result of an inspection of their property. *Id.* at 422. On appeal, plaintiffs argued that they were prejudiced by the District Court's granting a protective order precluding them from deposing the Mayor because they had uncovered evidence in discovery suggesting that the Mayor ordered the inspection. *Id.* at 423-24. The First Circuit held it was "incumbent on the Bogans to seek information from [aides and City employees] before turning to the Mayor" and "the district judge did not abuse his discretion in issuing a protective order for Mayor Menino because the Bogans had not exhausted other available avenues of discovery." *Id.* at 424.

15. Judge Dein precisely followed the *Bogan* framework. Judge Dein held that "the Committee has failed to identify any topic that cannot be explored through the Rule 30(b)(6) depositions of AAFAF, PREPA, and P3 and that the "Committee has not attempted to obtain the information it seeks from other witnesses." Order at 5. Relying on *Bogan*, the Order concluded that the Committee has not justified an apex deposition notice, but issued the protective order without prejudice to the Committee requesting leave to take Mr. Ortiz's deposition after 30(b)(6) depositions have taken place, "should the Committee believe, at that point, that there is good cause for a late deposition because the Government Parties have failed to provide adequate testimony on a particular subject relevant to the 9019 hearing." Order at 6. Judge Dein followed *Bogan* to the letter—there was no clear error.

**B.      Judge Dein Correctly Held That the Discovery The Committee Seeks Can Be Obtained Through Multiple Other Witnesses.**

16.     The Committee claims it needs to depose Mr. Ortiz with respect to (1) approval of the RSA; (2) PREPA's implementation of charges under the RSA; and (3) the relationship between the RSA transformation.  Objection ¶¶ 20-21, 23.

17.     First, the Committee claims that it is entitled to depose Mr. Ortiz because he "attended the board meeting at which the RSA was approved and was otherwise involved in its evaluation."  *Id.* ¶ 6.  As explained above, Mr. Ortiz did not negotiate the RSA—AAFAF negotiated the RSA on PREPA's behalf.  Act 2-2017 §§ 8(q), 3(b).  Moreover, the Committee does not argue, nor could it, that 30(b)(6) deposition testimony regarding these topics would not suffice.  PREPA has agreed to provide 30(b)(6) testimony regarding its "consideration and approval of the RSA" and Fernando Batlle, PREPA's 30(b)(6) designee, was also present at this same board meeting.  *See* Opposition, Dkt No. 1629 Ex. 2 at 1.  Most critically, the Committee does not contest that Christian Sobrino was the key government decision-maker in the RSA negotiations.  The Committee has subpoenaed Mr. Sobrino's testimony and is in the process of setting a deposition date with Mr. Sobrino's counsel.

18.     Second, the Committee contends it needs to depose Mr. Ortiz regarding PREPA's implementation of charges under the RSA.  Objection ¶¶ 12, 21, 24.  This Court has already held that this testimony is beyond the scope of the 9019 Motion.  Specifically, at the July 11, 2019 pretrial conference, this Court noted that it was not "being asked to approve RSA provisions that would, for example, implement rate increases, impose the settlement charge or transition charge, or implement demand protections or securitization protections."  July 11 Conf. Tr. 7:13-16.  Indeed, the Court  specifically instructed that:

8

> Evidence and arguments that go only to . . . whether the matters requiring further action by Puerto Rico's elected government officials and agencies of the Puerto Rico government ought to be approved should not be offered at this juncture.

*Id.* 13:21-14:1 (discussing Motions in Limine).

19. In light of this guidance, Judge Dein correctly denied the Committee's motion to compel production of documents and deposition testimony concerning implementation of the Settlement Charge and the Transition Charge. [ECF 1556, ¶ 19.]; *see also* Transcript of Motion Hearing at 126-27, No. 17-4780 (July 30, 2019) ("Judge Swain was pretty clear that she's not going to be assessing the macroeconomics of this or doing the rate. She's not being asked to approve any specific rate. . . . Judge Swain, it's my understanding in the 9019, will not be assessing whether or not the rate charges as set or the formula for the appropriate rate charges are appropriate."). Even if this Court reverses Judge Dein's order (and it should not), there is no reason the Committee cannot obtain the information it seeks through a 30(b)(6) witness.

20. Third, the Committee claims it needs to depose Mr. Ortiz regarding his public statements regarding the status of the PREPA transformation transaction and the effect of the RSA on the transaction. Objection ¶¶ 20, 24. The unsurprising fact that PREPA's CEO made public statements about PREPA's transformation does not justify a cumulative apex deposition. The Committee received 30(b)(6) testimony from Fermín Fontanés, P3's Executive Director regarding the status of the Transformation. *See* Puerto Rico Electric Power System Transformation Act, Act 120-2018, § 5(b) (P3 is the "sole Government Entity authorized to and responsible for (1) implementing the public policy on PREPA Transactions . . . ; (2) determining the Functions, Services, or Facilities for which such Partnerships shall be established . . . ; and (3) determining which PREPA Assets related to electric power generation shall be sold or transferred through Sales Contracts.").

9

21. In addition, the Committee received deposition testimony from Frederic Chapados, a consultant from Citigroup Capital Markets Inc., regarding the impact of the RSA on transformation. Both of these witnesses are more directly involved in the transformation transaction than Mr. Ortiz. Accordingly, Judge Dein's determinations that Mr. Ortiz's statements concerned topics that could be explored with other witnesses was correct. Order at 4.

### III. JUDGE DEIN'S ENFORCEMENT OF THE SCHEDULING ORDER DEADLINES WAS NOT CLEARLY ERRONEOUS.

22. The Committee did not serve a deposition notice for Mr. Ortiz until August 16, 2019. Order at 4. As the Committee concedes, the operative scheduling order allowed service of deposition notices after July 5, 2019 only "[f]or good cause shown . . . promptly after information comes to [the serving] party's attention . . . constituting the basis for serving such notice or subpoena." Objection ¶ 9. Judge Dein rightly held that the Committee could have timely served its deposition notice because "Mr. Ortiz, the CEO of PREPA, has been well-known as a potential witness since at least June 3, 2019, when the Committee identified him as a key custodian" in its motion to compel. Order at 3.

23. Judge Dein also considered each of the Committee's good cause arguments and rightly rejected them. First, Judge Dein found PREPA's then-ongoing document production was not good cause for a late deposition notice because (1) the scheduling order assumed depositions would be noticed before document production was complete; and (2) the documents the Committee identified in support of its good cause showing concern "AAFAF and PREPA's process for approving the RSA and the manner in which the RSA will be implemented," subjects which are known to others and could be pursued through a 30(b)(6) deposition. Order at 3. Second, Judge Dein rejected the Committee's contention that statements Mr. Ortiz made in July and August 2019 concerning the PREPA transformation and the potential number of bidders

10

supported good cause because those statements "concern facts which are evolving and not uniquely known by Mr. Ortiz" and can be explored in 30(b)(6) depositions, including the deposition of P3, the entity that is running the transformation transaction. Order at 4. Finally, Judge Dein rejected the Committee's argument that Christian Sobrino's resignation constituted good cause for a late deposition notice to Jose Ortiz because the Committee waited until over a month after Mr. Sobrino's resignation to serve the notice. *Id.* These conclusions were well-reasoned based on the undisputed facts—there is no clear error.

## CONCLUSION

For the foregoing reasons, AAFAF and PREPA respectfully request that the Court overrule the Committee's Objection.

Dated: October 8, 2019
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Elizabeth L. McKeen*
John J. Rapisardi
Nancy A. Mitchell
Peter Friedman
(Admitted *Pro Hac Vice*)

**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

-and-

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*


*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC NO. 222301
lmarini@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ, LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority*

12

>  */s/ Katiuska Bolaños*
> Katiuska Bolaños
> kbolanos@diazvaz.law
> USDC-PR 231812
>
> **DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**.
> 290 Jesús T. Piñero Ave.
> Scotiabank Tower, Suite 11-E
> San Juan, PR  00918
> PO Box 11689
> San Juan, PR  00922-1689
> Cel. (787) 458-8276
>
> *Co-Attorneys for Puerto Rico Electric Power Authority*

13