UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |

MEMORANDUM ORDER REGARDING OFFICIAL COMMITTEE
OF UNSECURED CREDITORS' URGENT (I) OBJECTIONS TO MAGISTRATE
JUDGE'S AUGUST 2, 2019 ORDER ON MOTION TO COMPEL AND (II) ALTERNATIVE MOTION
TO STRIKE AND TO EXCLUDE OUT-OF-SCOPE DECLARATION TESTIMONY AND RELATED EVIDENCE

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case
number and the last four (4) digits of each Debtor's federal tax identification number, as
applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-
3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax
Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four
Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation
Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of
Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the
Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last
Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority
("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax
ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case
No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case
numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is the *Official Committee of Unsecured Creditors' Urgent (i) Objections to Magistrate Judge's August 2, 2019 Order on Motion to Compel* [(the "Objections")] *and (ii) Alternative Motion to Strike and to Exclude Out-of-Scope Declaration Testimony and Related Evidence* [(the "Motion to Strike," and together with the Objections, the "Motion")] (Docket Entry No. 1576[2] in Case No. 17-4780).  The Official Committee of Unsecured Creditors (the "Committee") objects to certain rulings of Magistrate Judge Judith Gail Dein memorialized in the August 2, 2019, *Order Granting in Part Renewed Motion to Compel* (Docket Entry No. 1556, the "August 2 Order"), which pertain to discovery sought by the Committee in connection with the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* (Docket Entry No. 1235, the "9019 Motion").[3]  The Committee moves, in the alternative, to strike various factual proffers in declarations submitted in support of the 9019 Motion by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of PREPA in these Title III cases pursuant to Section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[4] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and collectively with PREPA and the Oversight Board, the "Government Parties").  The Court has reviewed carefully the parties' submissions[5] and, for the

---

[2]     All docket entry references are to entries in Case No. 17-4780, unless otherwise specified.

[3]     By *Order of Reference to Magistrate Judge* (Docket Entry No. 1252) dated May 22, 2019, this Court referred the 9019 Motion to Judge Dein for discovery related matters.

[4]     PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[5]     The Court has considered (a) the Motion; (b) the *Opposition of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. to Official Committee of Unsecured Creditors'*

reasons that follow, the Objections are overruled, the August 2 Order stands, and the Motion to Strike is denied.

# I.

## BACKGROUND

On May 10, 2019, the Government Parties filed the 9019 Motion, seeking this Court's approval of all settlements embodied in a Definitive Restructuring Support Agreement dated May 3, 2019 (the original and each amended version, the "RSA") by and among the Government Parties, members of the Ad Hoc Group of PREPA Bondholders (the "Ad Hoc Group"), and Assured Guaranty Corp. and Assured Guaranty Municipal Corp ("Assured").[6]

---

*Urgent (i) Objections to Magistrate Judge's August 2, 2019 Order on Motion to Compel and (ii) Alternative Motion to Strike and to Exclude Out-of-Scope Declaration Testimony and Related Evidence* (Docket Entry No. 1594); (c) the *Joint Response of the Financial Oversight and Management Board for Puerto Rico, and in Its Capacity as Representative of the Puerto Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority to the Official Committee of Unsecured Creditors' Urgent (i) Objections to Magistrate Judge's August 2, 2019 Order on Motion to Compel and (ii) Alternative Motion to Strike and to Exclude Out-of-Scope Declaration Testimony and Related Evidence* (Docket Entry No. 1595); (d) *The Ad Hoc Group of PREPA Bondholders' Opposition to the Official Committee of Unsecured Creditors' Urgent Objections to Magistrate Judge's August 2, 2019 Order and Alternative Motion to Strike and to Exclude Testimony and Evidence* (Docket Entry No. 1596); (e) the *Omnibus Reply of Official Committee of Unsecured Creditors in Support of Urgent (i) Objections to Magistrate Judge's August 2, 2019 Order on Motion to Compel and (ii) Alternative Motion to Strike and to Exclude Out-of-Scope Declaration Testimony and Related Evidence* (Docket Entry No. 1602, the "Reply"); and (f) the *Sur-Reply of the Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority to Omnibus Reply of Official Committee of Unsecured Creditors in Support of Urgent (i) Objections to Magistrate Judge's August 2, 2019 Order on Motion to Compel and (ii) Alternative Motion to Strike and to Exclude Out-of-Scope Declaration Testimony and Related Evidence [ECF 1602]* (Docket Entry No. 1612-1).

[6]   The latest iteration of the RSA was executed in early September 2019 by and between the Government Parties, the Ad Hoc Group, Assured, National Public Finance Guarantee Corporation, and Syncora Guarantee Inc.  (See *Urgent Joint Motion of All Parties to Stay Deadlines re: Motion to Dismiss* (Docket Entry No. 1637) at 3.)

Shortly thereafter, on May 22, 2019, this Court entered an order extending and establishing

certain deadlines applicable to the 9019 Motion (Docket Entry No. 1253), which set discovery

deadlines and scheduled a hearing on the 9019 Motion (the "9019 Hearing") for July 24, 2019.[7]

The parties then proceeded with discovery, and, on June 3, 2019, the Committee filed the

*Official Committee of Unsecured Creditors' Omnibus Motion to Compel Production of*

*Documents in Connection with PREPA RSA Rule 9019 Settlement Motion* (Docket Entry No.

1269, the "Initial Motion to Compel").  The Initial Motion to Compel requested an order

compelling the production of a broad range of documents from a number of parties.

At an Omnibus Hearing on June 12, 2019, this Court directed the Government

Parties to submit supplemental materials in support of the 9019 Motion, including declarations

and legal authorities, that would identify the precise nature of the relief being sought and enable

the Court to assess the proper scope of the anticipated 9019 Hearing.  Together with a

*Supplemental Joint Status Report* (Docket Entry No. 1361) filed on June 18, 2019, the

Government Parties filed an amended proposed order with respect to the 9019 Motion (Docket

Entry No. 1361-1, the "Amended Proposed Order").  On July 2, 2019, the Government Parties

submitted a supplemental memorandum of law and facts (Docket Entry No. 1425, the

"Supplemental Memorandum") and four declarations (Docket Entry Nos. 1426-1429,

respectively, the "Brownstein Declaration," the "Chapados Declaration," the "Jaresko

Declaration," and the "Sobrino Declaration"; collectively the "Declarations"; and collectively

with the Amended Proposed Order and the Supplemental Memorandum, the "Supplemental

---

[7]     The initial scheduling order has since been amended, most recently on September 13,
2019, by a fourth revised scheduling order (Docket Entry No. 1639), which, inter alia,
scheduled the 9019 Hearing for December 11, 2019.

Materials") in further support of the 9019 Motion.[8]  Through their submission of the

Supplemental Materials, the Government Parties purport to have limited and clarified the relief

sought by means of the 9019 Motion.  According to the Government Parties, the 9019 Motion

now seeks approval only of certain provisions of the RSA that would (i) allow the asserted

secured claims of the PREPA bondholders who are parties to the RSA (the "Supporting

Holders") in discounted amounts, (ii) allow the accrual of certain administrative claims, (iii)

allow certain settlement and adequate protection payments prior to plan confirmation, (iv)

exculpate the Supporting Holders and the bond trustee for acts and omissions in furtherance of

the RSA, (v) require the Supporting Holders to vote in favor of a plan consistent with the RSA,

and (vi) dismiss as to any settling movant the pending motion for relief from the automatic stay

and to appoint a receiver for PREPA.

    At a pretrial conference held on July 11, 2019, this Court heard argument on two

motions _in limine_ filed by the Government Parties, which sought to exclude testimony offered in

opposition to the 9019 Motion by various non-profit groups and other entities.  During that

conference, the Court observed that, as reflected in the Supplemental Submissions, the

Government Parties are no longer requesting Court approval of "RSA provisions that would, for

example, implement rate increases, impose the settlement charge or transition charge, or

implement demand protections or securitization protections."  (_Transcript of July 11, 2019_

_Renewed Pretrial Conference_ (Docket Entry No 1459, the "July 11 Hr'g Tr."), 7:13-16.)  The

Court also acknowledged that the Government Parties are not seeking a determination of

"whether the treatment of disputed secured claims proposed in the RSA would be confirmable or

---

[8]   The Government Parties filed a second supplemental memorandum of law in support of
the 9019 Motion (Docket Entry No. 1486) on July 19, 2019.

not confirmable in the context of PREPA's eventual plan of adjustment." (Id., 7:17-20.) An

assessment of the 9019 Motion, the Court further explained, would entail an evaluation of

"whether the proposed settlement falls below the lowest point in the range of reasonableness"

(id., 8:7-10 (citing ARS Brook, LLC v. Jalbert (In re Servisense.com, Inc.), 382 F.3d 68, 71-72

(1st Cir. 2004))), including consideration of "(i) the probability of success in the litigation being

compromised; (ii) the difficulties, if any, to be encountered in the matter of collection of the

disputed funds; (iii) the complexity of the litigation involved and the expense, inconvenience,

and delay attending it; and (iv) the paramount interest of the creditors and proper deference to

their reasonable views" (id., 8:12-18 (citing Jeffrey v. Desmond, 70 F.3d 183-85 (1st Cir.

1995))). Moreover, the Court recognized that its task on this 9019 Motion practice is to

determine not "whether the compromise embodied in the portions of the RSA presented for

approval is the wisest possible outcome, but, rather, whether [that compromise] is within a range

of reasonable outcomes . . . ." (Id., 8:23-9:1.) Thus, the Court observed, the 9019 Motion "seeks

limited relief under a review standard that is deferential to the choices made by those empowered

to guide the debtors' affairs." (Id., 9:2-7.)

      Consistent with these principles, the Court largely granted the Government

Parties' motions in limine, thereby excluding proffers of evidence related to anticipated

macroeconomic and demographic effects of full implementation of the RSA and to energy policy

issues implicated by the 9019 Motion.[9] In connection with its rulings, the Court emphasized that

"the issues presented in . . . the 9019 [M]otion practice . . . are narrow." (Id., 9:15-17.)

Consequently, the Court instructed that

---

[9]    The Court subsequently granted the remainder of the Government Parties' motions in
limine by its *Order Excluding Testimony Proffered by UTIER and SREAEE in
Connection with the 9019 Motion Practice* (Docket Entry No. 1586), on August 13, 2019.

> evidence and argument at the 9019 [H]earing ought to be focused
> tightly on identification of the range of reasonable settlement
> outcomes and whether the aspects of the agreement currently
> submitted for approval fall within that range and facts directly
> relevant to any legal injury that a party contends it would suffer as a
> direct result of the granting of the specific relief sought. Evidence
> and arguments that go only to the confirmability of a potential plan
> based on the full scope of the RSA and to whether the matters
> requiring further action by Puerto Rico's elected government
> officials and agencies of the Puerto Rico government ought to be
> approved should not be offered at this juncture.

(Id., 13:15-14:1.)

On July 16, 2019, "in light of additional developments in the litigation of the 9019

Motion," the Committee filed its *Renewal of June 3, 2019 Omnibus Motion of Official*

*Committee of Unsecured Creditors to Compel in Connection with PREPA RSA Rule 9019*

*Settlement Motion* (Docket Entry Nos. 1467, 1517, the "Renewed Motion to Compel").[10]  While

the Renewed Motion to Compel was pending, this Court issued its *Memorandum Order Granting*

*Motion for Protective Order and Order in Limine Precluding Evidence in Connection with the*

*9019 Motion* (Docket Entry No. 1543, the "Wolfe Order").  In the Wolfe Order, the Court

reiterated that "evidence going to macroeconomic projections of the future state of Puerto Rico's

economy and the long-term impact of full implementation of the RSA is outside the scope of the

9019 Motion and therefore will not be admitted in connection with the hearing on that motion."

(Id. at 3 (citing July 11 Hr'g Tr., 10:5-11:4).)

Following a July 30, 2019, hearing, Judge Dein issued the August 2 Order,

granting in part and denying in part the Renewed Motion to Compel.  Judge Dein held, in

relevant part, that (i) the Committee was not entitled to receive additional discovery concerning

---

[10]  The Committee filed a slightly revised version of the Renewed Motion to Compel at
Docket Entry No. 1517 following a ruling by Judge Dein on a motion for leave to file
certain documents under seal.

(a) the sustainability of rate increases and feasibility of the proposed settlement (August 2 Ord. ¶ 16), (b) the status of PREPA's proposed "transformation" (id. ¶ 18), (c) the status of legislative and regulatory approvals necessary for implementation of the RSA (id. ¶ 19), and (d) strategies or transactions considered by the Government Parties as potential alternatives to the RSA (id. ¶ 17); (ii) the Committee was not entitled to receive certain additional discovery from the Government Parties (including Filsinger Energy Partners ("Filsinger")) and the Ad Hoc Group (id. ¶¶ 1-3; *Transcript of Motion Hearing on July 30, 2019* (Docket Entry No. 1574, the "July 30 Hr'g Tr."), 66:4-6); (iii) a common interest existed between the Government Parties and the Ad Hoc Group, for purposes of the common interest doctrine, starting on July 30, 2018, the date on which those parties executed a Preliminary Restructuring Support Agreement (the "Preliminary RSA")—the precursor to the RSA (id. ¶ 11); and (iv) the Committee was not entitled to receive discovery pertaining to Assured's loss reserves (id. ¶ 15).  On August 8, 2019, the Committee filed the Motion, whereby it objected to each of these rulings and sought additional relief.

II.

DISCUSSION

Upon review of a timely objection to a non-dispositive order issued by a magistrate judge, the district judge to whom the case is assigned must consider the objection and modify or set aside any part of the order that "is clearly erroneous or contrary to law."  28 U.S.C.A. § 636(b)(1)(A) (West 2018); see also Fed. R. Civ. P. 72(a).  Under the "clearly erroneous" standard, the reviewing court "must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [it] form[s] a strong, unyielding belief that a mistake has been made."  Phinney v. Wentworth Douglas Hosp., 199

F.3d 1, 4 (1st Cir. 1999) (citation and internal quotation marks omitted).  A magistrate judge's

rulings will be reviewed under the "contrary to law" standard when the motion "turns on a pure

question of law."  PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010).  "This means

that, for questions of law, there is no practical difference between review under Rule 72(a)'s

'contrary to law' standard and review under Rule 72(b)'s de novo standard."  Id.  Mixed

questions of law and fact trigger a sliding scale of review pursuant to which:

> [t]he more fact intensive the question, the more deferential the level
> of review (though never more deferential than the 'clear error'
> standard); the more law intensive the question, the less deferential
> the level of review.

Goat Island S. Condo. Ass'n, Inc. v. IDC Clambakes, Inc. (In re IDC Clambakes, Inc.), 727 F.3d

58, 64 (1st Cir. 2013) (citation omitted).[11]

Rule 26 of the Federal Rules of Civil Procedure, made applicable in this

proceeding by Federal Rules of Bankruptcy Procedure 9014(c) and 7026, provides that "[p]arties

may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case, considering the importance of the issues at

stake in the action, the amount in controversy, . . . the importance of the discovery in resolving

the issues, and whether the burden or expense of the proposed discovery outweighs its likely

benefit."  Fed. R. Civ. P. 26(b)(1).  The Committee argues in the Motion that Judge Dein erred in

applying this standard by (i) rejecting its requests for documents relating to topics addressed in

the Supplemental Materials; (ii) denying its motion to compel production of documents from

additional custodians associated with the Government Parties and the Ad Hoc Group; (iii)

---

[11]     Although the Committee identifies the appropriate standard of review, it incorrectly
asserts that all of Judge Dein's rulings to which it objects "are founded upon questions of
law meriting de novo review under a 'contrary to law' standard."  (Motion ¶ 18.)  All of
Judge Dein's determinations instead turn upon questions of fact in varying degrees, and
this Court has applied the foregoing standard in evaluating each ruling accordingly.

applying the common interest doctrine to communications that occurred prior to March 26, 2019,

the date of the RSA term sheet; and (iv) declining to order disclosure of information regarding

Assured's loss reserves.  In addition, the Committee maintains that, to the extent this Court

leaves intact Judge Dein's rulings with respect to discovery that is germane to factual proffers in

the Declarations, any such statements should be stricken.

        For the reasons that follow, the Objections are overruled, the August 2 Order

stands, and the Motion to Strike is denied.  The Court addresses the Committee's arguments in

turn below.

A.  <u>Discovery Pertaining to Topics Addressed in the Supplemental Materials</u>

      1. <u>Sustainability of Rate Increases and Feasibility of the Proposed Settlement</u>

        In the August 2 Order, Judge Dein denied the Committee's motion to compel the

production of additional discovery responsive to its document request numbers 4, 9, 25, and

26—which sought materials regarding the RSA's impact on PREPA, its creditors, and its

ratepayers—and to related deposition topics, on the basis that such discovery "address[es] the

macroeconomic impact of the RSA and [is] outside the scope of the 9019 [H]earing."  (August 2

Ord. ¶ 16.)  The Committee argues that the discovery it seeks is relevant "not because of

'macroeconomic' issues, but because it relates to feasibility of the proposed settlement (and plan

of adjustment on which the RSA is based), the effect the settlement may have on the creditors,

and the validity of the other purported rationales for the settlement that the Government Parties

have raised in their declarations."  (Motion ¶ 23.)  The Committee cites, for example, assertions

in the Declarations that the RSA will pave the way for a Title III plan of adjustment and that a

key economic goal of the RSA is to ensure the sustainability of rate increases.  The Committee

also points out that the Declarations contain detailed calculations of the claimed cost savings of

the RSA.  In its Reply, the Committee indicates that it seeks "only to explore the narrow issues of whether the RSA's rate increases are sustainable and whether any value would potentially remain for other creditors."  (Reply ¶ 15.)

The Committee has not demonstrated that Judge Dein's ruling was either clearly erroneous or contrary to law.  Initially, the Committee has made no showing that the Court must consider the information requested concerning the sustainability of rate increases and the overall feasibility of the settlement as a whole or of any eventual Title III plan of adjustment to evaluate whether the aspects of the settlement that the Court has been asked to approve fall below the lowest point in the range of reasonableness.  The Committee, moreover, has submitted no authority establishing that a plan of adjustment would have to provide a distribution to unsecured creditors in order to be confirmable, or, relatedly, that the Court's assessment of the "paramount interest of the creditors," see Jeffrey, 70 F.3d at 185, requires consideration of detailed evidentiary material with respect to the value that would potentially remain for unsecured creditors under the terms of the proposed settlement.  To the extent the Committee contends that a possible lack of dividend for certain creditors renders the relevant portions of the RSA illegal or takes them outside of the realm of reasonableness, it does not need in-depth discovery concerning the financial analyses underlying the RSA parties' proposal to make that legal argument.  Nor is the Court persuaded that additional discovery is needed to enable the Committee to respond to proffers in the Declarations regarding the effect the settlement may have on creditors and the validity of the other purported rationales for the settlement.  The Committee has already obtained significant document discovery that is pertinent to these topics. The requests at issue are therefore beyond the proportionality parameters applicable to discovery in connection with the 9019 Motion practice.  Insofar as documents relating to issues of rate

increase sustainability and plan feasibility are at all relevant to the Court's assessment of the 9019 Motion, the burden and expense associated with permitting such additional discovery significantly outweighs any likely benefit.  Accordingly, the challenged ruling is neither clearly erroneous nor contrary to law, and the Committee's objection to Judge Dein's conclusion with respect to discovery concerning the sustainability of rate increases and the feasibility of the proposed settlement is overruled.

2.   <u>Status of the Proposed Transformation</u>

With respect to the Committee's request for discovery responsive to its document requests pertaining to the proposed transformation (document request numbers 10, 11, and 12), Judge Dein held that the Committee had "not sufficiently shown that these documents are relevant to the 9019 Hearing, and to the extent PREPA's transformation is discussed in declarations . . . , the [Committee] has not shown that it lacks the factual information needed to respond."  (August 2 Ord. ¶ 18.)  The Committee asserts that this discovery is relevant to the 9019 Motion "because the Government Parties have touted the completion of the proposed transformation as one of the RSA's key benefits, including by submitting an entire declaration devoted solely to that issue."  (Motion ¶ 27.)  Further, the Committee claims that it "does not have nearly enough factual information to respond to these allegations."  (<u>Id.</u> ¶ 28.)

The Committee has failed to explain how the particular discovery it seeks—for example, information regarding the anticipated completion date of the transformation—should influence this Court's assessment of the issues relevant to the 9019 Motion.  Although the Committee is correct that the Chapados Declaration discusses the proposed transformation almost exclusively, the Court has made it clear that the details of implementation, and the prospects for the ultimate success, of the proposed transformation are not being litigated in the context of the 9019 Motion.  In any event, as Judge Dein recognized in the August 2 Order, and

as the Committee has conceded, the Committee has received a substantial number of documents

that provide insight into the effect that the RSA will likely have on the proposed transformation.

These include thousands of documents from the Public-Private Partnerships (P3) Authority, the

entity specifically designated to handle transactions and negotiations related to the proposed

transformation.  The Committee likewise has had or will have the opportunity to depose

individuals with knowledge of the proposed transformation, including Mr. Chapados.  Thus, the

Committee's request for additional discovery concerning the status of the proposed

transformation fails to satisfy the proportionality requirement of Rule 26, and Judge Dein did not

clearly err in declining to permit it.  Accordingly, Judge Dein's decision denying the

Committee's motion to compel additional documents pertaining to the proposed transformation

stands.

3.      Status of Legislative and Regulatory Approvals

Judge Dein found, as to the Committee's request for additional discovery

responsive to its document request numbers 17, 18, and 19 and to related deposition topics—all

of which concern the status of legislative and regulatory approvals necessary for implementation

of the RSA—that any documents beyond presentations and meeting agendas from the

Government Parties are outside the scope of reasonable discovery for the 9019 Hearing.  (August

2 Ord. ¶ 19.)  The Committee contends that Judge Dein's ruling "improperly deprives [it] of the

opportunity to explore facts proffered in support of the settlement and to test the settlement's

feasibility."  (Motion ¶ 29.)  According to the Committee, it is entitled to evaluate the likelihood

that the Government Parties will obtain legislative and regulatory approvals, which are necessary

for the proposed settlement's implementation, and to test the Government Parties' assertion that,

absent a settlement, PREPA's rates would likely rise without limitation.  (Id. ¶¶ 30, 31.)  The

Committee's arguments are again inconsistent with the parameters that the Court has set for the 9019 Hearing.

As this Court has stated previously, "[e]vidence and arguments that go only . . . to whether the matters requiring further action by Puerto Rico's elected government officials and agencies of the Puerto Rico government ought to be approved should not be offered at this juncture."  (July 11 Hr'g Tr., 13:15-14:1.)  Discovery concerning the likelihood that aspects of the RSA requiring government approval will in fact be approved is similarly outside the scope of the issues to be taken up at the 9019 Hearing.  The Government Parties are not, through the 9019 Motion, seeking this Court's approval of components of the RSA that involve regulatory and legislative approvals.  None of the Declarations contains factual proffers regarding these topics. The discovery sought by the Committee, even if it could be considered relevant to the 9019 Motion practice in some manner, has a marginal connection to the specific issues to be litigated on the 9019 Motion and the request thus is not proportional to the needs of the case at this juncture.  The challenged ruling is neither clearly erroneous nor contrary to law, and the Committee's objection is overruled.

4.    Alternative Strategies or Transactions

Judge Dein also held that, with the exception of "formal presentations, vote records, or meeting agendas from the Government Parties discussing alternative settlements that the bondholders expressed an interest in as a potentially viable settlement option," further documents and communications regarding any alternative restructuring or litigation strategies (i.e., materials responsive to the Committee's document request number 8 and to related deposition topics) are outside the scope of discovery that will be relevant in connection with the 9019 Hearing.  (August 2 Ord. ¶ 17.)  The Committee argues that there is "no basis on which to limit such production only to formal presentations, vote records or agendas," particularly given

that the Government Parties' decision to pursue the RSA as a settlement strategy is at issue in the
9019 Motion.  (Motion ¶ 32.)  The Committee contends that the Government Parties'
communications on this subject, and not only materials that are more formal in nature, must be
produced.  (Id.)

          Judge Dein did not clearly err in finding, as a factual matter, that the materials
already produced to the Committee were sufficient to enable it to respond to the Oversight
Board's evidentiary proffers in this regard.  Indeed, this Court has made clear that, in connection
with its determination of the 9019 Motion, it will decide not "whether the compromise embodied
in the portions of the RSA presented for approval is the wisest possible outcome, but, rather,
whether [that compromise] is within a range of reasonable outcomes . . . ."  (July 11 Hr'g Tr.,
8:23-9:1.)  Judge Dein also did not clearly err in concluding that the Government Parties' formal
presentations, vote records, and meeting agendas that discuss the potential alternatives they
considered should provide sufficient insight into the scope of the Oversight Board's deliberations
to enable the Committee to litigate the reasonableness of the RSA features that are before the
Court on the 9019 Motion practice.  The Committee's argument that the Government Parties'
communications regarding this issue are discoverable because the Brownstein Declaration
"tout[s] the benefits of the RSA in contrast to other settlement strategies not ultimately pursued"
(Motion ¶ 32 (citing Brownstein Declaration ¶¶ 17, 71)) is misplaced.  In fact, the cited
paragraphs simply indicate that the Government Parties considered alternative options, and do
not address substantively the benefits offered by the RSA in relation to such alternatives.  This
procedural factual proffer appears to relate to the issue of whether the Government Parties
exercised their reasonable business judgment in entering into the RSA.  Consistent with the
principle of proportionality, the agenda and related materials give the Committee sufficient

information to respond to the Government Parties' proffer that they considered other alternatives prior to entry into the RSA.  Accordingly, the Committee's objection to Judge Dein's ruling concerning such materials is overruled.

5.     Motion to Strike

As an alternative to its request for discovery that relates to the topics addressed in the Declarations, the Committee moves to strike all factual proffers concerning those topics and to preclude the Government Parties from introducing related evidence at the 9019 Hearing.[12] The Committee has attached to the Motion highlighted copies of the Declarations indicating the specific paragraphs that it seeks to strike, which, according to the Committee, include

> all statements that address: (i) the declarants' and the Government Parties' subjective motivations in entering into the settlement; (ii) the extent to which the settlement paves the way for a plan of adjustment; (iii) the effect of the settlement on the proposed transformation; (iv) the effect of the settlement on the Puerto Rico economy and PREPA's ability to avoid a future Title III filing; (v) the ability of PREPA's ratepayers to pay the surcharges contemplated by the RSA; (vi) the likelihood that electricity rates will rise absent a settlement; and (vii) the benefits of the settlement embodied by the RSA as compared to other settlements that the Government Parties considered but rejected.

(Motion ¶ 38.)  The Committee asserts that, based on the Government Parties' own arguments, these statements are outside the limited scope of the 9019 Hearing.  The Committee argues that, particularly if it is denied discovery with regard to these topics, such statements should be stricken from the Declarations and the Government Parties should be precluded from submitting related evidence at the 9019 Hearing.

---

[12]     The Government Parties have indicated that the Sobrino Declaration will be withdrawn given that Christian Sobrino no longer holds the position of AAFAF's Executive Director.  However, no formal notice or application seeking withdrawal of that Declaration have been filed, and, correspondingly, the Committee has not withdrawn the related components of its Motion to Strike.

Having reviewed carefully each of the Declarations, the Court finds no basis at this stage of the case to strike any portions thereof or to preclude related evidence from consideration during the 9019 Hearing.  As a general matter, the Declarations identify the key structural components of the proposed settlement (e.g., capping and isolating in a remote entity the legacy bond liability) and explain the relationship between those structural components and the goals motivating the Government Parties to enter the RSA.  They do not, however, purport to establish the feasibility of the settlement or a resulting plan of adjustment, the sustainability of rate increases, the feasibility of the proposed transformation, or the anticipated macroeconomic effects of the RSA.  Nor do the Declarations assert that the RSA constituted the wisest possible outcome among alternative options.  This Court concurs in Judge Dein's determination that the Committee has been granted sufficient discovery to enable it to respond meaningfully to the Government Parties' factual proffers in support of the 9019 Motion.  Accordingly, the Committee's Motion to Strike is denied.

### B.   Additional Discovery from the Government Parties and the Ad Hoc Group

#### 1.      The Government Parties

In the August 2 Order, Judge Dein denied the Committee's request for documents from custodians other than Oversight Board member David Skeel, PREPA's board Chairman Eli Atienza Diaz, PREPA's Chief Executive Officer Jose Ortiz, and former AAFAF Executive Director Christian Sobrino's replacement.  (August 2 Ord. ¶¶ 1, 2.)  Judge Dein also denied the Committee's request that Filsinger, an advisor to PREPA, designate document custodians.  (Id. ¶ 3.)  As to the Oversight Board, the Committee asserts that it has not received documents from the key individuals who were ultimately responsible for the Government Parties' decision to enter

into the RSA—namely, the individual members of the Oversight Board—and that meeting

agendas and presentations are not suitable substitutes for emails, text messages, notes, and other

files.  The Committee also argues that, in light of Filsinger's leading managerial role at PREPA,

Filsinger is "highly likely to have documents relating to the sustainability of the proposed rate

increases and to the effect of the RSA on the proposed transformation."  (Motion ¶ 45.)

        Judge Dein did not clearly err in making the factual determination that adequate

relevant communications of Oversight Board members could be found in the files of the eighteen

custodians already produced to the Committee by the Government Parties.   The Supreme Court

has held that the reasonableness inquiry in connection with motions filed pursuant Rule 9019

must be based upon the "informed, independent judgment of the bankruptcy court."  <u>See

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414,

424, 88 S. Ct. 1157, 1163, 20 L. Ed. 2d 1 (1968) (citation and internal quotation marks omitted).

The <u>TMT Trailer</u> decision further requires a court evaluating a settlement in the bankruptcy

context to apprise itself of "all facts necessary [to reach] an intelligent and objective opinion of

the probabilities of ultimate success should the claim be litigated[,]" <u>id.</u> at 424.  These principles

do not entitle the Committee to boundless discovery.  Rather, because the Committee already has

extensive documents relevant to the negotiation of the RSA, and the specific views of the

individual members of the Oversight Board are marginally relevant, at best, to the question of

reasonableness, in the context of the 9019 Motion, of the Oversight Board's decision as a body to

approve the RSA, the additional burden and expense associated with producing documents in the

possession of each member outweighs any likely benefit that could be derived from such

discovery.

Nor was Judge Dein's denial of the Committee's request for documents from Filsinger clearly erroneous.  Despite its contention that Filsinger plays a "leading managerial role at PREPA" (Motion ¶ 45), the Committee has not demonstrated that Filsinger personnel are likely to have documents that are sufficiently relevant to issues before the Court on the 9019 Motion to warrant an order compelling their production at this juncture.  The Committee speculates that Filsinger could likely provide information pertaining to many of the issues that this Court has already held are of limited relevance to the 9019 Motion, namely, "the sustainability of the proposed rate increases," "rate-setting discussions," and the "transformation process."  (Id. ¶ 46.)  For the reasons articulated above, no additional discovery on those topics is needed in connection with the 9019 Hearing.  Accordingly, this Court overrules the Committee's objections to the portions of the August 2 Order that denied the Committee's requests for additional documents from custodians of the Government Parties.

2.    Ad Hoc Group Members

Judge Dein held on the record at the July 30, 2019, hearing that the Ad Hoc Group need not designate and produce documents from any additional custodians.  (July 30 Hr'g Tr., 66:4-6.)  The Committee objects to this determination, arguing that it is entitled to receive at least some documents from the member firms themselves, not merely material from their attorneys and financial advisors.  The Committee contends that its request for documents from one custodian of two member firms is reasonable given the Ad Hoc Group's central role in the negotiation of the Preliminary RSA and the RSA, and the fact that its members hold a total of approximately $3 billion in PREPA bonds.

For reasons substantially similar to those articulated above in connection with the Committee's request for documents from additional members of the Oversight Board, Judge

Dein's denial of the Renewed Motion to Compel insofar as it sought documents from member firms of the Ad Hoc Group was not clearly erroneous.  The Committee has provided no support for its claim that, because the member firms "signed the RSA" and "stand to receive billions of dollars if the RSA is approved," the Committee is necessarily entitled to receive discovery from them in the context of the narrow set of issues to be considered on the 9019 Motion practice—it is not.  While discovery from the firms might add further context and detail to the body of information concerning the negotiation and mechanics of the RSA transaction as a whole, such extensive discovery is not warranted in connection with the litigation of the issues targeted in the 9019 Motion practice.  The Committee's objection to Judge Dein's decision is overruled.

C.   <u>The Common Interest Doctrine</u>

Judge Dein held in the August 2 Order that, for purposes of the common interest doctrine, a common interest existed as between the Government Parties and the Ad  Hoc Group starting on July 30, 2018—the date they executed the Preliminary RSA—at which time they began sharing "an 'identical (or nearly identical legal interest)' in finalizing their agreement on material terms."  (August 2 Ord. ¶ 11 (quoting <u>FDIC v. Ogden Corp.</u>, 202 F.3d 454, 461 (1st Cir. 2000)); <u>see also id.</u> ("[O]nce the Government Parties and the Ad Hoc Group had an agreement on th[e] material terms in the Preliminary RSA, they shared a common legal interest in advancing a settlement on those terms." (citing <u>In re Tribune Co.</u>, No. 08-13141 KJC, 2011 WL 386827, at *5 (Bankr. D. Del. Feb. 3, 2011)).)  In reaching these conclusions, Judge Dein expressly found that the "Preliminary RSA . . . contained the material terms of the Definitive RSA."  (August 2 Ord. ¶ 11.)  The Committee disputes these conclusions, arguing principally that "any 'agreement' between the Government Parties and the Ad Hoc Group prior to their

execution of the RSA's term sheet [March 16, 2019] did not include key features of the final

deal, such as demand protection provisions, remedies, securitization protections, and

implementation provisions."  (Motion ¶ 52.)  In addition, the Committee maintains that a

common interest could not have attached until the term sheet was executed because, during the

preceding months, each side repeatedly threatened to walk away from the negotiations, and

because the Preliminary RSA was not binding on any party.

Judge Dein's findings that the Government Parties initially established the

material economic terms of the RSA when they executed the Preliminary RSA on July 30, 2018,

and that the common interest doctrine applies to communications between the Government

Parties and the Ad  Hoc Group from that date forward, were neither clearly erroneous nor

contrary to law.  Such agreed-upon material terms included the overall structure of the RSA,

exchange ratios, and other bond terms.  Additionally, the Government Parties maintain, and the

Committee does not dispute in any meaningful way, that they and the Ad Hoc Group had, at the

time of the Preliminary RSA's execution, reached a meeting of the minds with respect to features

of the RSA such as demand protection, remedies, securitization protections, and implementation.

The Committee has provided no legal support for its contentions that the Government Parties'

and the Ad Hoc Group's agreement on all material terms is even required for the common

interest doctrine to apply and that their continued negotiations somehow negate their agreement

on such terms.  The Committee's argument that Judge Dein's reliance on Tribune was misplaced

because that case was "decided under less stringent Third Circuit common interest standards"

(Motion ¶ 60), is similarly unpersuasive because, based upon Judge Dein's finding that the

Government Parties had agreed on material terms, the common interest doctrine would also

apply under the standard that has been approved in this Circuit.  See FDIC, 202 F.3d at 461

("The term 'common interest' typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest." (citation omitted)).  Further, given that Judge Dein defined the Government Parties and the Ad  Hoc Group's common legal interest as "advancing a settlement on those material terms," her application of the common interest doctrine to all communications made in furtherance of that objective is consistent with the Tribune court's observation that, "when the interests of the parties diverge to some extent[,] the . . . doctrine applies only insofar as their interests [are] in fact identical[,]" 2011 WL 386827, at *4.  Accordingly, Judge Dein's conclusions with respect to the common interest doctrine were neither contrary to law nor clearly erroneous.  Cf. Cavallaro v. United States, 153 F. Supp. 2d 52, 62 (D. Mass. 2001) (stating that "[t]he weight of the case law suggests that, as a general matter, privileged information disclosed during a merger between two unaffiliated businesses would fall within the common-interest doctrine," and citing as support a decision concerning communications between "potential" merger partners), aff'd, 284 F.3d 236 (1st Cir. 2002).  The Committee's objection in this regard is overruled.

D.  Discovery Regarding Assured's Loss Reserves

Finally, Judge Dein denied the Committee's request for production of documents that reflect Assured's loss reserves, reasoning that, although Assured's loss reserves may show the entity's expectations in connection with different possible litigation outcomes, that information is not probative of whether the proposed settlement at issue here is reasonable. (August 2 Ord. ¶ 14.)  The Committee argues that information concerning Assured's loss reserves is relevant and thus subject to discovery because, in connection with the 9019 Motion, the Court will need to evaluate the parties' probability of success of the litigation being

compromised.  The Committee also asserts that Assured's loss reserves are not protected from disclosure by any privilege.

Judge Dein made no clear error in declining to compel disclosure by Assured of information pertaining to its loss reserves.  Information regarding Assured's subjective assessments of potential litigation outcomes is not significantly probative of the question to be determined by the Court on the 9019 Motion.  As discussed previously, in evaluating a motion pursuant to Rule 9019, the court must make an intelligent and objective assessment of the likelihood of success of the litigation being compromised.  See TMT Trailer, 390 U.S. at 424. Such assessment is better informed by the Court's evaluation of the relevant agreements, facts, and legal doctrines than by a party's financial loss analyses.  Considering the specific needs of this case in its current posture, the Committee's request does not comport with the proportionality component of Rule 26.  Accordingly, the objection to Judge Dein's ruling pertaining to Assured's loss reserve information is overruled.  In light of this determination, the Court need not address whether the work product doctrine or any other privileges independently shield such materials from production.

III.

CONCLUSION

The Court has considered the Committee's remaining arguments and finds them to be without merit.  Accordingly, the Objections are overruled, Judge Dein's August 2 Order stands, and the Motion to Strike is denied.

This Memorandum Order resolves Docket Entry No. 8412 in Case No. 17-3283

and Docket Entry No. 1576 in Case No. 17-4780.


SO ORDERED

Dated:  October 10, 2019

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge