## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | Case No. 17-BK-4780-LTS<br><br>**This Court Filing Relates Only to PREPA and Shall Only Be Filed in PREPA′s Title III Case (Case No. 17-BK-4780-LTS)** |
| COBRA ACQUISITIONS LLC,<br><br>    Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of | **Re: ECF No. 17-BK-3283-LTS, ECF No. 8789.** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.).

PUERTO RICO ELECTRIC POWER AUTHORITY,

Respondent.

**JOINT URGENT MOTION OF
THE OVERSIGHT BOARD, PREPA, AND AAFAF TO EXTEND ALL
APPLICABLE DEADLINES TO COBRA ACQUISITION LLC'S MOTION
<u>FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

JURISDICTION AND VENUE ......................................................................................6

BACKGROUND ...........................................................................................................6

     I.     Title III Case and the Cobra Contracts .............................................6

     II.    Criminal Indictment of Tribble, Ellison, and Patterson ..........................8

RELIEF REQUESTED....................................................................................................8

ARGUMENT ................................................................................................................9

     I.     The Court Should Stay All Litigation of the Administrative Expense
              Motion Pending the Criminal Trial and FEMA Investigation .................9

CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 9013-1 AND THE EIGHTH
AMENDED CASE MANAGEMENT PROCEDURES ........................................................14

CONCLUSION...............................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Dopp v. HTP Corp.*,
    947 F.2d 506 (1st Cir. 1991) ............................................................................12

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
    335 F. Supp. 3d 256 (D.P.R. 2018) ....................................................................8

*Rosario Rosario v. Pagan Santiago*,
    196 D.P.R. 180 (P.R. 2016) ..............................................................................11

*Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical*,
    886 F. Supp. 1134 (S.D.N.Y. 1995) .................................................................11

STATUTES

11 U.S.C. § 105(a) ...............................................................................................5, 8

11 U.S.C. § 503(b) ...................................................................................................10

11 U.S.C. § 503(b)(1)(A) .....................................................................................1, 3

18 U.S.C. § 371 .........................................................................................................2

18 U.S.C. § 1343 ........................................................................................................2

18 U.S.C. § 1346 ........................................................................................................2

18 U.S.C. § 1952 ........................................................................................................2

31 L.P.R.A. § 3408 ..................................................................................................12

31 L.P.R.A. § 3432 ..................................................................................................11

31 L.P.R.A. §§ 3511, 3513, 3514 ...........................................................................12

31 L.P.R.A. § 3516 ..................................................................................................11

PROMESA § 104(j) ...................................................................................................5

PROMESA § 206 .......................................................................................................5

PROMESA § 301(a) ..................................................................................................5

PROMESA § 304(a) ................................................................................................................5

PROMESA § 306(a) ................................................................................................................5

PROMESA § 307(a) ................................................................................................................5

PROMESA § 310 ....................................................................................................................5

PROMESA § 314(b)(4) .......................................................................................................5, 12

PROMESA § 315(b) ................................................................................................................1

Fed. R. Bankr. P. 9006(b) ....................................................................................................5, 8

To the Honorable United States District Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with PREPA and the Oversight Board, "Movants"), hereby file this joint urgent motion (the "Urgent Motion") requesting that the Court enter an order, substantially in the form of **Exhibit A** (the "Proposed Order"), staying litigation relating to *Cobra Acquisitions LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-BK-3283-LTS, ECF No. 8789] (the "Administrative Expense Motion") until the January 29, 2020 omnibus hearing, without prejudice to Movants seeking further extensions.  In support of the Urgent Motion, Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1.      On September 30, 2019, Cobra Acquisitions LLC ("Cobra") filed the Administrative Expense Motion, seeking allowance and immediate payment of an alleged $216,116,471.93 administrative expense claim under Bankruptcy Code section 503(b)(1)(A) as an actual, necessary expense of preserving the Debtor's estate.  *See* Administrative Expense Motion ¶¶ 15, 63.  Cobra entered into two contracts with PREPA following Hurricane Maria to assist in rebuilding PREPA's power grid, which had been severely damaged.  The amount sought by Cobra is the last remaining amount allegedly due under two large contracts, for which approximately $1.1 billion has already been paid to Cobra.

---

[1]  PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

2.      Cobra's motion is replete with statements about how Cobra supposedly expended "enormous effort and expense" "under extremely difficult circumstances" to assist in rebuilding Puerto Rico's electricity system.  *See, e.g., id.* at ¶ 6.  Conspicuously absent, however, is any mention of the fact that Cobra's former President Donald Keith Ellison and two FEMA officials have been criminally indicted and arrested for fraud and conspiracy to commit bribery in connection with Cobra's work on PREPA's electric grid, under the very contracts Cobra now seeks to enforce.  *See U.S.A. v. Tribble*, Case No. 19-CR-541-FAB, ECF No. 3 (D.P.R. Sep. 3, 2019), attached hereto as **Exhibit B** (the "Indictment").  Specifically, according to the Indictment, Ellison and two FEMA officials—Ahsha Nateef Tribble and Jovanda R. Patterson—engaged in a conspiracy to provide Ms. Tribble with various "things of value" in an attempt to influence and exert pressure on PREPA and FEMA officials to award and/or divert restoration work to Cobra and accelerate payments to Cobra.  *Id.*; *see also* U.S. Attorney's Office Press Release dated Sep. 10, 2019, available at https://www.justice.gov/usao-pr/pr/fema-deputy-regional-administrator-former-president-cobra-acquisitions-llc-and-another (last visited Oct. 8, 2019).  The Indictment includes 15 counts against Ellison, Tribble, and Patterson in connection with Cobra's work on the island of Puerto Rico since October 2017, including conspiracy to commit bribery of public officials; acts affecting a personal financial interest; false statements; disaster fraud; honest services wire fraud, Travel Act violations, and wire fraud in violation of various criminal federal statutes, including Title 18, United States Code, Sections 371, 1343, 1346 and 1952, among others. *Id.*  In addition, the Indictment also seeks forfeiture from the defendants in an amount that exceeds four-million dollars.

3.      Also missing from the Administrative Expense Motion is any mention of the July 3, 2019 report of the U.S. Department of Homeland Security Office of Inspector General entitled,

"FEMA's Eligibility Determination of Puerto Rico Electric Power Authority's Contract with Cobra Acquisitions LLC" (OIG-19-52) ("OIG Report"). The OIG Report, issued in connection with its audit of FEMA's public assistance grants to PREPA and PREPA's contract to Cobra, determined that FEMA's December 2017 determination that Cobra's contract rates and costs were "reasonable and eligible" for public assistance "was not sound and lacked supporting documentation." "As a result," the OIG Report determined, "FEMA approved a PA [public assistance] grant and reimbursed millions of dollars based on an unsound eligibility determination." Consequently, FEMA and the Department of Homeland Security Operational Analysis Center are conducting an extensive analysis (the "FEMA Analysis") into the cost reasonableness of the First Cobra Contract, and FEMA will make a final determination as to the "eligibility of the contract costs and disallow any costs that are not reasonable." The estimated completion date of the determination of Cobra's eligibility for public assistance is May 29, 2020. *See* OIG Report at 5.

4. If the FEMA Investigation's concerns and the assertions contained in the Indictment are true (and a grand jury had already determined that there is probable cause to believe that such allegations are in fact true), then the propriety of Cobra's contracts with PREPA—and any claims Cobra may have based on those contracts—are called deeply into question. Pursuant to Article 69 of the First Contract and Article 49 of the Second Contract (both as defined below), Cobra certified neither it nor its officers and directors have been convicted or pled guilty to any public corruption crime, and that if it is convicted of any such crimes PREPA has the right to terminate the Contract. Any such violations are grounds for rescission of the Second Contract pursuant to Article 6 of Puerto Rico Public Law 458. Cobra also certified that it and its employees and executives were in compliance with the Ethics Act of Puerto Rico prohibition against having

any direct or pecuniary interest in the services rendered under the Contract.  Any representation, warrant or certification in Article 69 of the First Cobra Contract or 49 of the Second Cobra Contract, that is "incorrect, inaccurate or misleading, in whole or in part," "shall be sufficient cause for PREPA to terminate" the respective contract.[2]  Moreover, if the allegations of illegal actions in the Indictment are true, it would potentially make the Cobra contracts avoidable under Puerto Rico law, and Cobra liable to either pay damages or disgorge some or all of the payments Cobra has already received.

5.       Significantly more clarity as to Cobra's potentially illegal actions or other misconduct is necessary before the Administrative Expense Motion should be briefed or tried. Notably, the existence of fraud and bribery, among other things, in the execution and performance of these contracts may well undermine or negate any argument that Cobra's service were actual, necessary or beneficial to PREPA—sinking Cobra's assertion of an administrative expense claim under section 503(b)(1)(A).[3]

6.       In addition, the allowance of the alleged administrative expense claim (over almost a quarter billion dollars) cannot be resolved by simple motion practice.  Significant factual disputes, likely requiring substantial discovery, will need to be tried and adjudicated.  PREPA is in the process of conducting a review of Cobra's work and invoices to determine the validity of charges separate and apart from the allegations of criminal misconduct and the matters being analyzed by FEMA and DHS as a result of the OIG Report.  As Cobra itself notes, PREPA has identified several points of disagreement with the charges.  Administrative Expense Motion at 16-

---

[2]  PREPA, AAFAF and the Oversight Board reserve all rights under the Cobra Contracts, including, without limitation, rights relating to the jurisdiction and venue provisions contained in Article 35 of the First Contract and Article 30 of the Second Contract.

[3]  For the avoidance of doubt, Movants reserve the right to challenge the Administrative Expense Motion and Cobra's alleged right to an administrative expense claim on any ground whatsoever, including, without limitation, grounds based on contract law or bankruptcy law and grounds relating to the size of any potential claim.

20.  These potential disputes, in addition to potential defenses arising from the Indictment and the OIG Report, are fact-intensive.  Discovery into these matters will likely have significant overlap with the Indictment, and would be materially impeded while the criminal cases are pending.

7.      As a result, Movants respectfully request that the Court stay litigation relating to the Administrative Expense Motion until, at the earliest, the January 29, 2020 omnibus hearing, without prejudice to Movants' rights to seek further extensions.  Notably, a limited stay until the January 29, 2020 omnibus hearing should give the criminal court enough time to try Ellison, Tribble and Patterson.[4]  Such a limited stay is in the interests of justice, to allow both the criminal investigation and trial of Ellison, Tribble and Patterson and the FEMA Analysis to conclude and bring greater clarity to Cobra's rights under its contracts.  The balance of the equities greatly favors staying the Administrative Expense Motion until the issues raised in the Indictment have been tried and FEMA has issued its final determination of the eligibility of the contract costs for public assistance funding.

8.      While litigating the Administrative Expense Motion now would be very prejudicial to PREPA, staying the Administrative Expense Motion would not prejudice Cobra at all.  Even if Cobra does have an administrative expense claim against PREPA, it has no right to immediate payment.  Instead, PROMESA section 314(b)(4) makes clear that this would only give them a right to cash payment on the effective date of a future PREPA plan of adjustment.  Delaying briefing on Cobra's Motion while the criminal investigation is prosecuted would therefore not prejudice Cobra.

9.      Without prejudice to Movants' right to seek further extensions of time, Movants therefore respectfully request that the Court enter the Proposed Order, staying litigation relating to

---

[4]  Judge Besosa has set December 9, 2019 as the date for the jury trial of these defendants.  *See U.S.A. v. Tribble*, Case No. 19-CR-541-FAB, ECF No. 55 (D.P.R. Oct. 8, 2019).

the Administrative Expense Motion in all respects until the January 29, 2020 omnibus hearing,

prior to which Movants propose they and Cobra will submit a joint status report on or before

January 24, 2020, (i) stating the status of the criminal matter, (ii) stating the status of the

determination of FEMA as to the eligibility of Cobra contract costs for public assistance funding,

(iii) providing a preliminary summary of potential factual disputes that will need to be tried, and

(iv) proposing a consensual pretrial schedule for discovery and briefing (if the parties can agree to

such a schedule).  Movants propose that a status conference relating to the Administrative Expense

Motion be held at the January 29, 2020 omnibus hearing.

## JURISDICTION AND VENUE

10.     The United States District Court for the District of Puerto Rico (the "Court") has

subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

11.     Venue is proper pursuant to PROMESA section 307(a).

12.     The statutory predicates for the relief sought herein is section 105(a) of title 11 of

the United States Code (the "Bankruptcy Code"), made applicable to this case pursuant to

PROMESA section 301(a), and Bankruptcy Rule 9006(b), made applicable to this case by

PROMESA section 310.

## BACKGROUND

**I.      Title III Case and the Cobra Contracts**

13.     On July 2, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PREPA pursuant

to PROMESA section 304(a), commencing a case under title III thereof (the "Title III Case").

14.     During September 2017, Puerto Rico was hit by two historically powerful

hurricanes—Irma and Maria—that severely damaged PREPA's transmission grid and other

infrastructure and left the island without power for several weeks.  On September 20, 2017,

President Donald J. Trump issued a major disaster declaration for Puerto Rico due to the damage resulting from Hurricane Maria, which was designated FEMA-4339-DR.

15.     Pursuant to FEMA-4339-DR, the Federal Emergency Management Agency ("FEMA") was authorized, among other things, to provide assistance to the Commonwealth of Puerto Rico and to PREPA to assist in rebuilding the power system.

16.     From October 2017 until about September 2018, Ahsha Nateef Tribble ("Tribble") was a FEMA Region II Deputy Regional Administrator assigned to work in Puerto Rico as part of FEMA's response to Hurricane Maria.  *See* Indictment ¶ 3.  During that time, Tribble was Sector Lead for Power and Infrastructure in Puerto Rico.  *Id.* at ¶ 4.

17.     From October 2017 until March 2018, Jovanda R. Patterson ("Patterson") was a FEMA Deputy Chief of Staff assigned to San Juan, Puerto Rico as part of FEMA's response to Hurricane Maria.  *Id.* at ¶ 6.

18.     On October 19, 2017, PREPA and Cobra entered into that certain *Emergency Master Service Agreement for PREPA's Electrical Grid Repairs – Hurricane Maria in October 2017* ("First Contract") for Cobra to perform emergency "storm restoration services" for $200 million.  Through five subsequent amendments, the contract amount for the First Contract was increased to $945 million.  Cobra has been paid approximately $892.9 million pursuant to the First Contract.

19.     On May 26, 2018, following the receipt of several proposals from various other contractors in response to an Request for Proposals, PREPA and Cobra entered into that certain Master Services Contract for PREPA's Electrical Grid Repairs - Hurricane Maria, dated May 26, 2018 ("Second Contract," and with the First Contract, the "Cobra Contracts"), for Cobra to perform restoration and reconstruction services in addition to its emergency storm repair services

under the First Contract, in the amount of up to $900 million.  Cobra has been paid approximately $202.0 million pursuant to the Second Contract.

20.    PREPA relies upon FEMA funding to pay for the costs of power repairs and power restoration.  PREPA was and remains financially incapable of undertaking the extensive grid repairs necessary after Hurricane Maria without public assistance from FEMA.

21.    During the period of October 2017 until June 2019, Donald Keith Ellison ("Ellison") was President of Cobra Acquisitions, LLC.  Indictment, ¶ 5.

## II.    Criminal Indictment of Tribble, Ellison, and Patterson

22.    On September 3, 2019, a federal grand jury in the District of Puerto Rico returned a criminal indictment against Tribble, Ellison, and Patterson in 15 counts.  *See* Indictment.  The indictment alleges in sum and substance that Ellison, Tribble, and Patterson used Tribble's positions in FEMA to enrich themselves.  Specifically, it alleges that Ellison provided Tribble with various "things of value" in an attempt to influence Tribble and persuade her to exert pressure on PREPA and FEMA officials to award restoration work to Cobra under both the First Contract and the Second Contract, and to accelerate payments to Cobra in violation of several federal criminal statutes.  *Id.*

23.    The criminal indictments remain pending before the District of Puerto Rico.  Jury trial has been set for December 9, 2019.  *See U.S.A. v. Tribble*, Case No. 19-CR-541-FAB, ECF No. 55 (D.P.R. Oct. 8, 2019).

## RELIEF REQUESTED

24.    Without prejudice to Movants' rights to seek further extensions of time, Movants respectfully request that the Court enter the Proposed Order, staying litigation relating to the Administrative Expense Motion in all respects until the January 29, 2020 omnibus hearing, prior to which Movants propose they and Cobra will submit a joint status report on or before January

24, 2020, (i) stating the status of the criminal matter, (ii) stating the status of the determination of

FEMA as to the eligibility of Cobra contract costs for public assistance funding, (iii) providing a

preliminary summary of potential factual disputes that will need to be tried, and (iv) proposing a

consensual pretrial schedule for discovery and briefing (if the parties can agree to such a schedule).

Movants also propose that a status conference relating to the Administrative Expense Motion be

held at the January 29, 2020 omnibus hearing.

## ARGUMENT

**I.     The Court Should Stay All Litigation of the Administrative Expense Motion
Pending the Criminal Trial and FEMA Investigation**

25.     Pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9006(b), this

Court has the power to stay the Administrative Expense Motion.  As this Court has recognized,

"the power to stay proceedings is incidental to the power inherent in every court to control the

disposition of the causes on its docket with economy of time and effort for itself, counsel, and for

litigants."  *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 335 F. Supp. 3d 256, 262 (D.P.R.

2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "Generally, courts have the

discretionary power to stay an action in the interest of justice and efficiency." *Id.* (quoting *Total

Petroleum P.R. Corp. v. T.C. Oil, Corp.*, 2010 WL 11545626, at *1 (D.P.R. May 7, 2010)). The

court must balance the equities and potential prejudice to each party. *Id.* (internal quotations and

citations omitted).

26.     Movants submit that the Court should exercise its discretion to stay litigation

relating to the Administrative Expense Motion until at least the January 29, 2020 omnibus hearing,

without prejudice to Movants' rights to seek further extensions.  Staying this contested matter

promotes the interests of justice.  Many of the facts surrounding the Cobra contracting process,

compliance with relevant certification and ethical obligations, scope of work, project costs and

related issues, will be the subjects of the oral and documentary evidence in the criminal trial, and/or will come to light through the FEMA Analysis now underway.  By allowing the completion of these matters before litigating the Administrative Expense Motion, (a) the Court and the parties will be aware of relevant facts relating to Ellison, Tribble, and Patterson's alleged crimes and their impact on PREPA's dealings with Cobra, (b) the parties will have better information regarding federal reimbursement for outstanding charges under the Cobra Contracts, and (c) discovery in the Administrative Expense Motion of facts relevant to both proceedings may be minimized, including testimony under oath of potential fact witnesses and the entry into evidence in the criminal trial of documents regarding the extent of corruption relating to the procurement, administration, and performance of the Cobra Contracts.  Until these matters, and other facts relevant to Cobra's services and PREPA's defenses, are investigated and presented to this Court, it is impossible for this Court to determine whether Cobra is entitled to an administrative expense claim at all, let alone a claim of close to a quarter billion dollars.

27.     Notably, the Indictment alleges that over the course of several months Ellison, then-president of Cobra, provided Tribble with various bribes, including personal helicopter use, hotel accommodations, airfare, personal security services, and the use of a credit card, among other things, in order to obtain work for Cobra at PREPA.  Indictment, ¶ 42.  In return for these financial benefits, the Indictment alleges that Tribble "performed official acts . . . to advance COBRA's interests and secure favorable treatment for COBRA," "including but not limited to influencing, providing advice to, and exerting pressure on PREPA executives . . . so that PREPA would accelerate payments to COBRA, assign tasks to COBRA instead of using PREPA employees, and use COBRA in restoration tasks to the exclusion of other contractors."  *Id.* at ¶¶ 43-44.

28.     These are serious allegations that directly impact whether Cobra can make out a case that its services to PREPA that might entitle it to an administrative expense under Bankruptcy Code section 503(b), and whether PREPA can establish complete or partial defenses.[5]  Litigating the Administrative Expense Motion now would force the parties to litigate these issues without many relevant facts, and potentially would result in Cobra being awarded an administrative expense claim for contracts that it fraudulently induced PREPA to enter and/or despite otherwise available evidence in support of PREPA's defense.  The harm to PREPA would be immense.[6]

29.     The interests of efficiency also greatly support staying the Administrative Expense Motion.   The Administrative Expense Claim will be highly fact and discovery intensive. Attempting to seek discovery while the criminal investigation is pending will likely involve duplicating judicial effort on investigating issues relating to Ellison's, Tribble's, and Patterson's alleged crimes.   Moreover, discovery will likely be rendered more difficult if witnesses feel it necessary to invoke Fifth Amendment privileges while the criminal proceeding remains ongoing. For all these reasons the requested stay should be imposed.[7]

---

[5]   Movants reserve the right to challenge Cobra's alleged administrative expense claim on any basis, including, without limitation, on the basis that chapter 9 does not recognize services such as Cobra's as giving rise to administrative expense claims.

[6]   Notably, PREPA relies upon FEMA funding to pay for the costs of power repairs and power restoration.  PREPA was and remains financially incapable of undertaking the extension grid repairs necessary after Hurricane Maria without public assistance from FEMA.  Moreover, PREPA is not itself the holder of any accounts containing federal disaster relief funds, which are all held at the Commonwealth level and are not subject to attachment or enforcement actions by any creditors or territorial instrumentalities, pursuant to Court order.  *See Order Granting Urgent Joint Motion of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Order Concerning Receipt and use of Anticipated Federal Disaster Relief Funds and Preserving Rights of Parties*, Case No. 17-BK-3283-LTS (D.P.R. Oct. 26, 2017), ECF No. 1547, ¶ 6.  PREPA therefore does not have immediate or clear access to the funds necessary to pay Cobra's purported claims without taking those funds away from paying operating expenses.

[7]   *See, e.g., Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical*, 886 F. Supp. 1134, 1138-41 (S.D.N.Y. 1995) (staying civil proceeding given pending criminal proceeding given to avoid impairing criminal defendants' Fifth Amendment rights and to avoid "duplicative discovery efforts" and as "the indictment against the Danica defendants is, as with the individual defendants, based on the same allegations as in the civil case, the evidence garnered in the criminal trial could reduce the scope of discovery in the civil case.").

30.     Similarly, the extent of public assistance funding for invoices from Cobra is under review by FEMA.  Pursuant to Article 53(F) of the Second Contract, if PREPA is unable to secure Federal assistance funding "due to [Cobra's] sole fault," PREPA is relieved of its obligation to pay Cobra for any such invoices.  In light of PREPA's reliance on FEMA funding, litigating the merits of the Cobra invoices at issue in the Administrative Expense Claim while FEMA is conducting its cost analysis in compliance with the OIG Report risks inconsistent determinations of the reasonableness of the Cobras contract rates for labor, equipment and other costs.

31.     Additionally, under Puerto Rico law, if the allegations contained in the Indictment are proven true either through a jury finding or a guilty plea, PREPA may have a complete defense to all of Cobra's demands, and may even have a claim against Cobra for damages or disgorgement of prior payments.[8]  Given these implications that the criminal allegations may have on Cobra's rights against PREPA, it is clear that PREPA would be greatly prejudiced if forced to litigate the Administrative Expense Motion without greater clarity as to the contours of the criminal actions of Cobra's president and the FEMA officials.

32.     The balance of the equities also greatly favors staying the Administrative Expense Motion.  Movants would be prejudiced having to litigate the Administrative Expense Motion now, while a federal criminal investigation of Cobra remains ongoing and these serious allegations of

---

[8]   For example, the Cobra Contracts may be voidable for having been obtained by "deceit," defined to be "when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them it would not have made."  31 L.P.R.A. § 3408.  This could give PREPA a complete defense to further payments, a damages claim against Cobra, and/or the right to receive back payments made to Cobra under the vitiated contracts.  *See* 31 L.P.R.A. §§ 3511, 3513, 3514; *Dopp v. HTP Corp.*, 947 F.2d 506, 510 (1st Cir. 1991).  Moreover, under Puerto Rico law, when one contracting party is implicated in an "illicit" consideration for a contract—that is, a consideration that is contrary to law or good morals (*see* 31 L.P.R.A. § 3432)—the innocent party (here, PREPA), "may recover what he may have given, and shall not be bound to fulfill what he may have promised."  *See* 31 L.P.R.A. § 3516; *see also Rosario Rosario v. Pagan Santiago*, 196 D.P.R. 180, 188 (P.R. 2016) (if one of the contracting parties was not at fault, he can claim what he gave and will not be obliged to fulfill what he promised).  This could apply to give PREPA a defense to future payments and a claim against Cobra.  Movants reserve the right to make any other challenge to Cobra's claims, including, without limitation, other challenges based on Puerto Rico contract law.

fraud and bribery are yet to be fully probed and decided by the criminal court.  Also, regardless of

the Indictment, and as acknowledged by Cobra in its motion, PREPA disputes that it owes Cobra

the amount claimed in the Administrative Expense Motion.  The litigation of these matters,

including discovery, should await the conclusion of the criminal case.

33.     Staying the Administrative Expense Motion, however, would not prejudice Cobra

at all.  Even if Cobra is right and does have an administrative expense claim against PREPA, that

does not give Cobra any right to immediate payment.  As PROMESA section 314(b)(4) makes

clear, as holder of an administrative expense claim Cobra would only have a right to cash payment

on the effective date of a confirmed plan of adjustment.  *See* PROMESA § 314(b)(4) (providing

that a plan must provide for the payment of administrative expense claims on the plan's effective

date).  Even assuming that the Court has discretion to order immediate payment, such expedited

payment would not be appropriate while Cobra's conduct with respect to the Cobra Contracts is

the subject of a criminal indictment and the FEMA Analysis.  Delaying adjudication of Cobra's

motion while the criminal case is prosecuted would therefore not prejudice Cobra.

34.     This is all the more true given the limited nature of the stay—until the January 29,

2020 omnibus hearing—which will allow time for the FEMA Analysis to proceed and for the

criminal court to try Ellison, Tribble, and Patterson on December 9, 2019, the date set for their

jury trial,[9] without overly prolonging briefing on the Administrative Expense Motion.  Moreover,

Cobra has already been paid approximately $1.1 billion on account of the Cobra Contracts, over

83% of its invoiced amounts to PREPA since the hurricanes.  Delaying payment of the final 17%

while the criminal trial and FEMA Investigation are pending will not unduly prejudice its rights

under these circumstances.

---

[9]  *See U.S.A. v. Tribble*, Case No. 19-CR-541-FAB, ECF No. 55 (D.P.R. Oct. 8, 2019).

35.     For all these reasons, Movants respectfully request that the Court stay litigation relating to the Administrative Expense Motion until at least the January 29, 2020 omnibus hearing, without prejudice for Movants' rights to seek further extensions.

### CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 9013-1 AND THE EIGHTH AMENDED CASE MANAGEMENT PROCEDURES

36.     Pursuant to Local Rule 9013-1 and ¶ I.H of the Eighth Amended Case Management Order, the undersigned counsel hereby certify they have (a) carefully examined the matter and concluded that there is a true need to any urgent extension; (b) have not created the urgency through any lack of due diligence; and (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

*[Remainder of page intentionally left blank]*

## CONCLUSION

37.     For the foregoing reasons, the Court should grant the Urgent Motion and enter the

Proposed Order.

New York, New York
October 10, 2019

Respectfully submitted,

**O'NEILL & BORGES LLC**

By: /s/ *Hermann D. Bauer*
   Hermann D. Bauer
   USDC No. 215205
   250 Muñoz Rivera Ave., Suite 800
   San Juan, PR 00918-1813
   Telephone: (787) 764-8181
   Facsimile: (787) 753-8944
   Email: hermann.bauer@oneillborges.com

**PROSKAUER ROSE LLP**

By: /s/ *Martin J. Bienenstock*
   Martin J. Bienenstock*
   Paul V. Possinger*
   Ehud Barak*
   Gregg M. Mashberg*
   Eleven Times Square New York, NY 10036
   Telephone: (212) 969-3000
   Facsimile: (212) 969-2900
   Email:    mbienenstock@proskauer.com
             ppossinger@proskauer.com
             ebarak@proskauer.com
             gmashberg@proskauer.com

   * admitted *pro hac vice*

*Attorneys for the Financial Oversight and
Management Board and as representative of the
Puerto Rico Electric Power Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**.

By: /s/ *Katiuska Bolaños*
   Katiuska Bolaños
   kbolanos@diazvaz.com
   USDC-PR 231812
   290 Jesús T. Piñero Ave.
   Scotiabank Tower, Suite 11-E
   San Juan, PR 00918
   PO Box 11689
   San Juan, PR  00922-1689
   Cel.: (787) 458-8276

*Co-Attorneys for Puerto Rico Electric Power
Authority*

**O'MELVENY & MYERS LLP**

By: /s/ *Nancy. A Mitchell*
   John J. Rapisardi*
   Nancy A. Mitchell*
   7 Times Square
   New York, NY 10036
   Telephone: (212) 326-2000
   Facsimile: (212) 326-2061
   Email:    jrapisardi@omm.com
             nmitchell@omm.com

   * admitted pro hac vice

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory
Authority and Puerto Rico Electric Power
Authority*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record and CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer

16