Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors. | ) PROMESA<br>) Title III<br>)<br>) No. 17 BK 3283-LTS<br>)<br>) (Jointly Administered)<br>)<br>)<br>) |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA")<br><br>Debtor.[1] | ) PROMESA<br>) Title III<br>)<br>) No. 17 BK 4780-LTS<br>)<br>)<br>)<br>)<br>)<br>) |

## COBRA ACQUISITIONS LLC'S
## OPPOSITION TO THE JOINT URGENT MOTION OF THE OVERSIGHT BOARD, PREPA, AND AAFAF TO EXTEND ALL APPLICABLE DEADLINES TO COBRA ACQUISITIONS LLC'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT....................................................................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT ...............................................................................................................................5

    I.      Legal Standard ................................................................................................5

    II.     No Stay Is Warranted .....................................................................................6

          a.      Approval of Funding by FEMA is not Grounds for Withholding
Payments Under the Contracts and Does Not Warrant a Stay ....................6

          b.      The Indictment of Non-Parties Is not Grounds for Withholding
Payments Under the Contracts and Does Not Warrant a Stay ....................7

          c.      The DHS OIG Report Does Not Justify a Stay.........................................12

    III.    The Requested Stay Would Greatly Prejudice Cobra and Delay This Case
For No Reason, While Denying the Stay Would Not Prejudice Movants ............15

    IV.    The Court Should Hear Cobra's Undisputed Claims Immediately and the
Disputed Claims After Any Necessary Discovery ..................................................18

          a.      Cobra's Undisputed Claims Should be Heard at the October 30,
2019 or December 11, 2019 Omnibus Hearings.........................................18

          b.      After a Conference Addressing the Need for Any Discovery on the
Disputed Claims, the Court Should Hear the Disputed Claims at
the January 29, 2020 Omnibus Hearing....................................................19

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

## TABLE OF AUTHORITIES

*Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989) .......................... 5

*In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) .......................................... 17

*In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) ................................. 17

*In re Rare Coin Galleries, Inc.*, 72 B.R. 415, 417 (Bankr. D. Mass. 1987)................................. 17

*Keating v. Office of Thrift Supervision*, 45 F.2d 322 (9th Cir. 1995)........................................... 5

*Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119

(S.D.N.Y. 1980) ...................................................................................................................... 5

*Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1997), *cert.

denied*, 449 U.S. 993, 66 L. Ed. 2d 289, 101 S. Ct. 529 (1980))................................................. 5

*Trustees of the Plumbers & Pipefitters National Pension Fund v. Transworld Mechanical*, 886 F.

Supp. 1134 (S.D.N.Y. 1995) ...................................................................................................... 9

*U.S.A. v. Tribble*, Case No. 19-CR-541-FAB, ECF No. 3 (D.P.R. Sep. 3, 2019) .......................... 2

*Weil v. Markowitz*, 829 F.2d 166, 174 (D.C. Cir. 1987)................................................................. 6

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

To the Honorable United States District Judge Laura Taylor Swain:

Cobra Acquisitions LLC ("Cobra"), by and through counsel, hereby files this Opposition to the Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims (the "Opposition") requesting that the Court deny the Puerto Rico Electric Power Authority ("PREPA"), the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority's ("AAFAF," collectively the "Movants") motion for a stay of litigation (the "Urgent Motion") relating to Cobra Acquisitions LLC's Motion for Allowance and Payment of Administrative Expense Claim [Case No. 17-BK-3283-LTS, ECF No. 8789] (the "Administrative Expense Motion").  In support of its Opposition, Cobra respectfully states as follows:

## **PRELIMINARY STATEMENT**

1.      The Movants' purported "urgent" motion does not assert any valid exigency that would require this Court to delay Cobra's rights to collect amounts that are due, owing, and in large part undisputed by Movants.  Instead, the motion is little more than a set of newly concocted red-herring arguments that are irrelevant to the fact that Cobra performed vital services to the Movants under a valid and existing contract and is entitled to payment for those services

2.      Cobra opposes the Movants' request for a stay of Cobra's $216 million in claims under the October 19, 2017 Emergency Master Service Agreement for PREPA's Electrical Grid Repairs – Hurricane Maria (the "First Contract") and the May 26, 2018 Master Service Contract for PREPA's Electrical Grid Repairs Hurricane Maria (the "Second Contract" and together with the First Contract, the "Contracts") between Cobra and PREPA, including claims that PREPA has

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

never disputed.  The Movants do not dispute that Cobra successfully rebuilt Puerto Rico's

electrical system at tremendous effort and expense in accordance with its Contracts with PREPA.

Nor do they disagree that PREPA has never disputed Cobra's right to be paid for the work it did

and that some of Cobra's claims seek payments of amounts that PREPA has never questioned,

including $61,668,083.34 in tax reimbursements owed under the First Contract.  Additionally,

accruing interest is increasing Cobra's claims by approximately $2.5 million per month.

3.      Instead, the Movants have invented a new reason to delay the day PREPA must

pay Cobra for its work.  Movants now contend that Cobra's claims must be stayed because of an

indictment dated September 3, 2019 against three individuals who are not parties to this case and

a July 3, 2019 report issued by the Office of the Inspector General of the Department of

Homeland Security ("OIG Report") about the process the Federal Emergency Management

Agency ("FEMA") used in approving the rates PREPA agreed to pay Cobra.  *See U.S.A. v.*

*Tribble*, Case No. 19-CR-541-FAB, ECF No. 3 (D.P.R. Sep. 3, 2019) (the "Indictment"),

"FEMA's Eligibility Determination of Puerto Rico Electric Power Authority's Contract with

Cobra Acquisitions LLC " (OIG-19-52) ("OIG Report").  Neither the Indictment nor the OIG

Report are grounds upon which to stop all progress on Cobra's claims, the prompt payment of

which are crucial to the Company.  Neither the Indictment nor the OIG Report calls into question

Cobra's entitlement to be paid for the work it did pursuant to the Contracts awarded by PREPA

and reviewed by FOMB, the Central Office of Recovery, Reconstruction, and Resilience

("COR3"), the Office of Contracts and Procurement Compliance ("OCPC"), and FEMA.  There

is no reason Cobra's claims should languish while the criminal matters proceed and therefore the

Movants' request for a stay should be denied.

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

4.      In particular, rather than stay Cobra's claims, Cobra requests that the Court hear

Cobra's undisputed claims, totaling $89,357,178.29, for which no discovery is necessary, at

either the October 30, 2019 or December 11, 2019 omnibus hearings.  For the disputed claims,

Cobra requests that the Court address them at either the October 30 or December 11 hearing to

determine whether and to what extent discovery is necessary, the timing of any discovery for the

disputed claims, and then hear those claims at the January 29, 2020 omnibus hearing.  In any

event, a stay of the proceedings is entirely unwarranted.

## **BACKGROUND**

5.      Movants say that Cobra "supposedly" expended enormous effort and expense

under extremely difficult circumstances to assist in rebuilding Puerto Rico's electrical system.

Urgent Motion at 2.  This blithe dismissal of Cobra's efforts could only have been written by a

lawyer sitting in the safety and comfort of an office on the mainland.  The simple truth is that,

but for Cobra's restoration work, PREPA would have no free cash flow and no reorganization

would be on the horizon. Movants' insulting position is undermined by statements by FEMA and

the government of Puerto Rico.  Both FEMA, in a December 23, 2017 letter to the Governor of

Puerto Rico, and the Governor of Puerto Rico, in a July 9, 2018 report, recognized the enormity

of the devastation of the island following Hurricane Maria and the importance of repairing the

electrical grid, work undertaken and completed by Cobra.  *See* OIG Report at 1-3, Letter from

U.S. Department of Homeland Security Region II to José I. Marrero, Esq., CPA, Governor's

Authorized Representative, Government of Puerto Rico, *FEMA-4339-DR-PR Puerto Rico*

*Electric Power Authority – Emergency Power Restoration Review of Contract and Funding for*

*Cobra Energy* (Dec. 23, 2017) ("December 23, 2017 Letter").  FEMA also recognized that Cobra

had been waiting for months to be paid close to $200 million dollars for work performed.  *See*

3

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

December 23, 2017 Letter.  Even today, Cobra is owed approximately $250 million, much of which is for the recovery of out of pocket expenses.

6.        These amounts were due and owing (and in some instances undisputed by PREPA) long before Movants concocted the arguments set forth in their "urgent" motion. Before now, PREPA has never contended that its failure to pay Cobra has anything to do with the well-known criminal investigation that led to the Indictment or the FEMA cost analysis that led to the OIG Report. To the contrary, PREPA has long acknowledged that Cobra must be paid for the crucial work it performed, but has cited various other issues for its lengthy delay in actually issuing the required payments.

7.        In accordance with the terms of the Contracts, Cobra has submitted timely invoices and continually sought payment.  PREPA has not disputed the services rendered, but for the last six months continually sought to delay payment for reasons unrelated to their new arguments.  The Movants now seek to further delay Cobra's recovery of almost one quarter of a billion dollars, citing for the first time the Indictment and the OIG Report.

8.        Critically, the Indictment does not charge Cobra.  The Indictment was issued on September 3, 2019 by the U.S. Attorney's Office for the District of Puerto Rico.  The Indictment states fifteen criminal charges against Ahsha Tribble, former FEMA Region II Deputy Regional Administrator and Sector Lead for Power and Infrastructure in Puerto Rico, Keith Ellison, a former President of Cobra who was terminated from his employment by Cobra well before the issuance of the Indictment, and Jovanda Patterson, former FEMA Deputy Chief of Staff assigned to San Juan, Puerto Rico.

9.        The Indictment alleges that Tribble accepted things of value from Ellison in return for performance of official acts as a FEMA employee.  The Indictment asserts ten charges against

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

Tribble for conspiracy to commit bribery, honest services wire fraud, disaster fraud, and violation

of the Travel Act.  The Indictment asserts eight charges against Ellison for conspiracy to commit

bribery, honest services wire fraud, disaster fraud, and making false statements.  The Indictment

contains two charges against Patterson for wire fraud and committing acts affecting personal

conflicts of interest.

10.     The OIG Report that Movants rely upon was issued on July 3, 2019.  The OIG

Report did not find that the rates were unreasonable or ineligible for reimbursement nor did the

OIG Report find any wrong-doing on the part of Cobra, but instead recommended that FEMA

perform further analysis, which is to be completed by May 2020.  FEMA's further analysis will

not have any legal effect on Cobra's entitlement to payment under the Contracts, which are with

PREPA, not FEMA, and are not dependent upon PREPA's receipt of funding from FEMA.

## ARGUMENT

### I.    Legal Standard

11.     "The Constitution does not ordinarily require a stay of civil proceedings pending

the outcome of criminal proceedings."  *Keating v. Office of Thrift Supervision*, 45 F.2d 322 (9th

Cir. 1995) (*citing Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989);

*Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1997), *cert.*

*denied*, 449 U.S. 993, 66 L. Ed. 2d 289, 101 S. Ct. 529 (1980)).  It is within courts' discretion to

stay civil proceedings "when the interests of justice seem to require such action."  *Dresser*

*Indus.*, 628 F.2d at 1375.  However, it would become a "constant source of delay and an

interference with judicial administration" to issue stays solely because a litigant is defending

simultaneous lawsuits.  *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F.

Supp. 1118, 1119 (S.D.N.Y. 1980).  A stay of pending civil action until the outcome of related

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

criminal proceedings is considered to be an "extraordinary remedy." *Weil v. Markowitz*, 829 F.2d

166, 174 (D.C. Cir. 1987).

**II.   No Stay Is Warranted**

      **a.   Approval of Funding by FEMA is not Grounds for Withholding Payments
         Under the Contracts and Does Not Warrant a Stay**

12.     The Movants rely heavily on the notion that FEMA funding pays for the costs of

power repairs and restoration as an additional pretext for delay.  These arguments, however,

ignore the incontestable fact that Cobra's contracts are with PREPA, not FEMA.  Under the

Contracts, PREPA is required to pay Cobra for its work regardless of whether FEMA is obligated

to reimburse PREPA.  Article 29 of the First Contract provides, "The Contractor acknowledges

that starting on October 25, 2017, FEMA financial assistance will be used to fund this

Contract…Any failure to secure approvals or funding from FEMA or some other source (except

due to the Contractor's sole fault) shall not relieve PREPA from its obligations for payment

under this Contract."  Article 53(F) of the Second Contract provides "The Contractor

acknowledges that Federal assistance awarded by U.S. federal agencies will be used, in part, to

fund this Contract.  However, any failure of PREPA to secure this funding (except due to the

Contractor's sole fault), shall not relieve PREPA from its obligations of payment under this

Contract."

13.     The Indictment's allegations of wrongdoing by FEMA officials are irrelevant to

whether PREPA must pay Cobra for the work Cobra performed, and the resolution of those

allegations in the criminal proceedings will have no effect on the validity of Cobra's

administrative claims for payment from PREPA.  Likewise, to the extent there are any factual

issues raised by Cobra's administrative claims, they clearly do not include issues about the

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

conduct of FEMA officials or interactions between Cobra employees and FEMA and there is no reason for any discovery relating to Cobra's claims to touch upon any such issues.

**b.   The Indictment of Non-Parties Is not Grounds for Withholding Payments Under the Contracts and Does Not Warrant a Stay**

14.     The Court should reject the Movants' request that the Court halt all progress on Cobra's administrative expense claims pending the criminal trial of Ahsha Tribble, Jovanda Patterson, and Keith Ellison.

15.     The Movants mischaracterize the Indictment and the impact it could have on PREPA's obligations under the Contracts with Cobra.  The Movants repeatedly suggest that the Indictment charges Cobra with misconduct, when it clearly does not.  To the contrary, the Indictment contains no charges against Cobra at all.

16.     The Indictment also does not "call[] deeply into question" "the propriety of Cobra's contracts with PREPA" or "any claims Cobra may have based on those contracts." Urgent Motion at 3, ¶ 4.  The Indictment is of three individuals, none of whom is a party to the Contracts at issue.  The Indictment does not accuse Cobra of any wrongdoing, nor does it allege that any PREPA officials took any bribes or otherwise acted corruptly in connection with the Contracts.  Indeed, the Indictment does not make any allegation at all to suggest that Cobra's Contracts with PREPA were awarded improperly or corruptly.  Nor does it suggest in any way that Cobra did not fully earn the right to be paid for the work it indisputably performed at PREPA's direction to restore power to the island of Puerto Rico after the electrical grid was demolished.

17.     In particular, Movants wrongly suggest that the Indictment alleges conduct that, if proven, would allow PREPA to accept Cobra's work without paying for it under the contracts. Contrary to Movants' contention, convictions under the Indictment would not result in rescission

7

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

under either Article 69 of the First Contract or Article 49 of the Second Contract. Article 69 of

the First Contract provides for rescission only if the contractor (i.e., Cobra) is convicted of or

pleads to any of the crimes enumerated in Article 3 of Public Law 458.  Cobra, of course, has not

been charged, much less convicted, of any such crime. Article 49 of the Second Contract does

not provide for rescission.

18.     Movants' citation to various provisions of the Contracts that permit PREPA to

"terminate" the Contracts in the event of wrongdoing by Cobra executives or employees are of

no help to Movants.  Both Contracts are clear that, upon termination, "PREPA shall pay to the

Contractor all portions of the work completed and for actual, reasonable, and necessary expenses

caused by such termination, which shall apply in the case of Termination by either Party for any

reason."  First Contract, Article 14; Second Contract, Article 14.  Thus, PREPA is contractually

required to pay Cobra on its administrative claims even if all of the Indictment's allegations are

proved true.

19.     Also demonstrably wrong is Movants' assertion that allowing Cobra's

administrative claim "potentially would result in Cobra being awarded an administrative expense

claim for contracts that it fraudulently induced PREPA to enter".  Urgent Motion at 11, ¶ 28.

Equally baseless is the Movants' suggestion that the Indictment raises the specter that Cobra's

Contracts may be "voidable" for having been obtained by "deceit."  Urgent Motion at 12 n. 8.

The Indictment does not allege that the Contracts were obtained by fraud, deceit or other

improper action.  Nor does it allege any facts that would give rise to a contention that Cobra or

PREPA were "implicated in an 'illicit' consideration for a contract." Urgent Motion at 12 n. 8.

To the contrary, the Indictment makes no allegations at all that undermine the legitimacy of the

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

Contracts awarded by PREPA, much less the quality of the work Cobra performed under the
Contracts and its entitlement to be paid for that work.

### i. The Indictment of Non-Parties Does Not Justify the Delay of Discovery

20.      PREPA cites *Trustees of the Plumbers & Pipefitters National Pension Fund v.
Transworld Mechanical*, 886 F. Supp. 1134 (S.D.N.Y. 1995), to support its argument that a stay
should be entered in the instant proceedings because the ongoing criminal proceedings could
impede on parties' Fifth Amendment rights and to avoid duplicative discovery efforts.  Urgent
Motion at 11, n. 6.  In *Trustees*, defendants in a civil matter were indicted for conduct identical to
that at issue in the civil matter.  *Trustees*, 886 F. Supp. at 1139.  The court found that the
significant overlap of the issues in the civil and criminal proceedings weighed in favor of a stay.
*Id*.

21.      The *Trustees* case is easily distinguishable from the instant matter.  The
government has not charged Cobra with any crimes.  Unlike in *Trustees*, the defendants in the
civil matter are not the same as the defendants in the criminal matter.  Moreover, the conduct that
is the subject of the criminal matter is not identical to the conduct in the civil matter.  Cobra's
civil claims are that PREPA entered into post-petition contracts with Cobra, Cobra performed
those contracts by restoring electrical power to Puerto Rico, and PREPA has failed to pay Cobra
for its services.  These claims are far from the conduct alleged in the criminal proceeding, which
involves only actions taken by three individuals, none of which affects the legitimacy of the
Contracts between Cobra and PREPA.

22.      The Movants further argue that a stay is necessary because discovery in the
criminal proceedings and the instant matter will have significant overlap and "would be
materially impeded while the criminal cases are pending."  Urgent Motion at 5.  The Movants

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

argue that discovery will be rendered "more difficult if witnesses feel it necessary to invoke Fifth

Amendment privileges while the criminal proceeding remains ongoing."  Urgent Motion at 11.

But the possibility that a witness might invoke the Fifth Amendment is present in any case. The

only witnesses who could be expected to do so here are the three indicted individuals, none of

whom Cobra relies on for its administrative expense claims and none of whom Movants show

have any testimony relevant to those claims.

23.      Notably, the United States has not indicated that it shares the Movants' view that

adjudicating Cobra's claims for payment should await the criminal proceedings against the three

individuals.  The federal prosecutors are well aware of this civil action, as Cobra informed the

assigned Assistant United States Attorney of its intent to file its administrative expense claims in

this Court.  And shortly after filing the administrative expense motion, Cobra provided a courtesy

copy of the filing to the prosecutor.

### ii.   The Indictments Do Not Support Movants' Arguments

24.      Ahsha Tribble is an employee of FEMA, not PREPA.   The Contracts under which

Cobra seeks payment are between PREPA and Cobra.  Even if Tribble were found guilty of any

of the charged crimes, it would not affect the validity of the Contracts between Cobra and

PREPA. *See* Ind. ¶ 39.

25.      The charges against Jovanda Patterson are independent of the charges against

Tribble and Ellison.  Patterson is alleged to have defrauded Cobra by misrepresenting her salary

at FEMA to Cobra.  Thus, <u>Cobra</u> is the victim of Patterson's alleged crime.  According to the

Indictment, because of this misrepresentation, Cobra suffered close to $200,000 in damages.

Accordingly, the charges against Tribble and Patterson do not affect this Court's ability to hear

Cobra's claims for administrative expenses.

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

26.     The charges against Ellison also do not call into question Cobra's contracts or
claims.  The conduct alleged in the Indictment did not begin until after the First Contract was
awarded to Cobra.  The alleged misconduct began no earlier than February 2018, the first time
Ellison is alleged to have provided something of value to Tribble.  *See* Ind.¶ 42.  The Indictment
alleges that in February 2018, Ellison provided Tribble with a helicopter tour of Puerto Rico and
a contact to provide her with a place to stay in New York.  *Id.* at ¶¶ 42, 56.  This was not only
well after the First Contract had been executed but after the execution of the first four
amendments to that contract.  Neither of these incidents bears upon the validity of the fifth
amendment to the First Contract nor the execution of the Second Contract.

27.     In fact, most of the alleged things of value provided to Tribble are asserted to have
been provided in July 2018.  The Indictment alleges that Ellison provided Tribble with hotel
accommodations and airfare in July 2018, September 2018, and November 2018.  The Second
Contract preceded all of this alleged conduct by several months.

28.     The Indictment also contains no allegations that Cobra failed to fully perform the
Contracts, was overpaid or did not earn all of the sums it seeks in its administrative expense
claims.  To the contrary, Cobra successfully restored power to Puerto Rico, thus providing an
immense benefit to PREPA and the people of Puerto Rico.  The Indictment makes no allegations
that bring into question any of the pricing of Cobra's services under the Contracts.  PREPA,
COR3, OCPC, and FEMA all reviewed the costs and rates included in the Contracts and the
Indictment does not allege that any of the charged conduct resulted in costs or rates higher than
Cobra deserved.  *See* Letter from the Federal Oversight and Management Board of Puerto Rico
to Walter Higgins, Executive Director Puerto Rico Electric Power Authority, *Cobra Acquisitions
LLC Power Restoration Contract – Observations, Feedback not Required* (May 24, 2018).

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

29.     The Indictment's allegations that, in return for things of value, Tribble recommended that PREPA use Cobra to perform certain restoration work and helped Cobra get paid for some of its work are not relevant to Cobra's claims for administrative expenses.[2]  The Indictment does not allege that Tribble's actions caused Cobra to receive any amounts to which it was not due under the Contracts.  The Indictment's allegations are fully consistent with Cobra's contention that it fully and successfully performed all of the work that PREPA assigned to it, its work was to PREPA's tremendous benefit, and Cobra is entitled to be paid in full for that work.

### c.   The DHS OIG Report Does Not Justify a Stay

30.     The Court should also reject the Movant's request to halt all progress on Cobra's administrative expense claims pending a FEMA review of its process for approving rates.

31.     The Movants make much of the OIG Report that found fault with FEMA's December 2017 analysis of the rates used in the First Contract with Cobra.  However, FEMA's December 2017 analysis concluded that the rates and costs PREPA agreed to pay to Cobra in the First Contract were reasonable.  The OIG recommended, and FEMA agreed, that FEMA should review the analysis based on the OIG's findings and assess whether each of the costs for which PREPA has requested FEMA to pay are reasonable.  FEMA has said it will complete that review by the end of May 2020.

32.     The Movants ignore the fact that Cobra's Contracts are with PREPA and not with FEMA.  FEMA's analysis, however it may come out, will not change PREPA's obligation to pay Cobra for the work it performed under its Contracts with PREPA in accordance with the rates and terms of the Contracts.  *See* Art. 29 of the First Contract, Art. 53(F) of the Second Contract.

---

[2] The Indictment alleges that Tribble sought to convince PREPA to assign Cobra repair work at the Monacillo substation and Roosevelt Roads. Those projects are not the subject of Cobra's current administrative expense claims.

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

As the OIG recognizes, PREPA is responsible for showing the claimed costs are reasonable. *See* OIG Report at 3. Any adjustment that FEMA may make to the rates will be an issue between FEMA and PREPA and does not affect PREPA's obligation to pay Cobra.

33. In describing the OIG Report, the Movants fail to mention several key statements in that report that support Cobra's claims for payment from PREPA. In its December 23, 2017 letter to the Governor of Puerto Rico, which is Appendix B to the report, FEMA found that Cobra was "performing critical emergency repairs to transmission lines that are essential to the restoration of the overall system to transmit and distribute electric power throughout Puerto Rico." This description by FEMA undermines the Movants' bizarre statement that the work performed by Cobra may not have been "actual, necessary or beneficial" to PREPA. Urgent Motion at 4. It is self-evident that the work performed by Cobra was actual, necessary and beneficial to PREPA, the only power utility on the entire island of Puerto Rico. In fact, anyone enjoying power in Puerto Rico today knows the absurdity of the Movants' suggestion. Without Cobra's work, PREPA would lack its present cash flow and would be in no position to reorganize.

34. FEMA also recognized that as of the date of the December 23, 2017 letter, Cobra had billed PREPA $174 million, under exigent circumstances, for which it had not been paid. *See* December 23, 2017 Letter. Before making payment, PREPA sought assurances from FEMA that the First Contract, including the costs and rates, was acceptable. FEMA confirmed that it had reviewed PREPA's First Contract with Cobra, including rates for services, and found that the First Contract was in compliance with FEMA requirements and also found the "costs under the this contract to be reasonable." December 23, 2017 Letter. FEMA came to this conclusion after comparing Cobra's rates to two other proposals received by PREPA. *See* OIG Report at 2.

13

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

35.     Further, FEMA officials were not alone in finding the reasonableness of the rates

and costs agreed upon between PREPA and Cobra.  FEMA had requested that the Homeland

Security Operational Analysis Center ("HSOAC"), which is operated by Rand Corporation on

behalf of the Federal Government, "independently review the Cobra contract rates."  *See* OIG

Report App. A.   On March 28, 2019, Rand Corporation reported its findings to FEMA that

"Cobra's contract rates fall within a representative range that is reasonable for emergency work."

*Id*.  The Rand report independently verifies the reasonableness of the pricing—agreed to by

Cobra and PREPA.

36.     Moreover, the Movants' argument that PREPA may put off payment while FEMA

re-evaluates rates under the First Contract, which FEMA approved prior to its execution, is a red

herring.  The largest payment remaining under the First Contract is for the reimbursement of

taxes paid by Cobra to the government of Puerto Rico, which is for $61,668,083.34.  *See*

Administrative Expense Motion at ¶ 61.  There is no dispute that Cobra paid the taxes or that the

First Contract requires PREPA to reimburse such payment.  *See* Ex. B to the First Contract.  This

tax reimbursement claim is unrelated to rates and can be resolved now.  In light of all this,

Movants cannot rely on the OIG report as a basis for putting off all of PREPA's obligations to

pay.

37.     In seeming recognition of this, Movants make a general claim that PREPA is in

the process of conducting a review of Cobra's work and invoices and they need more time to

complete the review.  Urgent Motion at 4.  For more than six months, PREPA has maintained to

Cobra that it is reviewing Cobra's invoices but there has been no apparent indication that this

review will come to a conclusion, which is the very reason Cobra filed its claim with this court.

Much of Cobra's claim includes amounts that are uncontested yet remain unpaid and the asserted

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

ongoing review is clearly a smokescreen to delay making any payment, even uncontested

amounts, for work completed.  Cobra has a right under its Contracts with PREPA to be paid.

Furthermore, the outstanding amounts owed to Cobra are accumulating monthly interest of 1%,

or approximately $2.5 million per month.  *See* Administrative Expense Motion at ¶ 62.

38.     Accordingly, neither the Indictment nor the OIG Report provide a basis for the

stay Movants request.

## III.   The Requested Stay Would Greatly Prejudice Cobra and Delay This Case For No Reason, While Denying the Stay Would Not Prejudice Movants

39.     The Movants claim that they will suffer "immense" prejudice if Cobra's claims

are allowed to go forward without a stay and that Cobra will suffer no prejudice "at all" if its

claims for more than $216 million are stayed.   Urgent Motion at 5 and 13. The Movants have it

exactly backwards.

40.     Cobra will be severely prejudiced by the stay the Movants seek.  To begin with,

there is no dispute that Cobra performed the services and is entitled to payment.  While the

Movants purport to be requesting a stay "only" until the January 29, 2020 omnibus hearing at

this time, they are almost certainly going to seek to extend that stay.  The current trial date in the

criminal case is December 9, 2019, but that date was set before the initial status conference with

all three defendants and it is very likely that the trial date will be continued well into 2020, if not

later.  Counsel for Cobra understands that voluminous document productions have begun in the

criminal proceedings, and that the time necessary to review those documents, as well as other

factors, will almost certainly preclude a December 2019 trial and likely result in a significant

delay.  Moreover, the Movants do not state that a stay will no longer be necessary upon

completion of the criminal trial; they can be expected to contend that any stay should remain in

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

effect during any appeals and any remands.  In short, it is clear that the Movants intend the stay

they are seeking to be in place for far longer than until the January 29, 2020 omnibus hearing.

41.     A stay of any length will greatly prejudice Cobra.  The sums owed to Cobra are in

excess of $250 million.  Administrative Expense Motion at ¶ 15.  While Movants calculate that

Cobra's claims amount to "only" 17 percent of the overall price of the Contracts, this is

misleading.  The market capitalization of Cobra's parent company, Mammoth Energy Services,

Inc., is currently less than $100 million based on the closing price of its common stock on

Nasdaq on October 14, 2019.  Cobra is out of pocket most of its claimed amounts, having paid

its laborers, suppliers, overhead and myriad others costs associated with rebuilding Puerto Rico's

electrical grid on PREPA's behalf.  Under the Contracts, Cobra is entitled to payment within 30

days of its invoices unless validly disputed by PREPA.  Administrative Expense Motion at ¶¶ 25,

33.  PREPA, however, has failed to pay as required under the Contracts, even on invoices to

which it has raised no dispute at all.  Only after six months of diligent but fruitless efforts to

persuade PREPA to comply with its contractual obligation to pay Cobra for its work did Cobra

bring its administrative expense claims to this Court.  Requiring a company of Cobra's size to

wait indefinitely to receive payments due and owing that are more than double the market

capitalization of its parent company is unsustainable and unfair.

42.     The Movants also incorrectly contend that Cobra is not prejudiced because it is

not entitled to immediate payment on its claims.  Setting aside the fact that Cobra was

contractually entitled to payment long ago, the Movants' argument further fails because it

misreads PROMESA section 314(b)(4) as authorizing it to defer payment on post-petition

contracts until the effective date of a plan of arrangement.  Rather than giving PREPA the option

of paying a post-petition contract pursuant to the terms of such contract, or indefinitely deferring

16

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

such payment until a plan is confirmed, PROMESA section 314(b)(4) merely provides that a

condition of confirmation of a plan includes all administrative claims must be paid in cash on the

effective date of the plan.  Nothing prohibits immediate payment of an allowed administrative

expense, either, as the timing of payment is within a court's discretion.  *See In re HQ Global*

*Holdings, Inc*., 282 B.R. 169, 173 (Bankr. D. Del. 2002); *In re Rare Coin Galleries, Inc*., 72 B.R.

415, 417 (Bankr. D. Mass. 1987) ("In general, the timing of the payment of ordinary

administrative claims is in the discretion of the Court.").  Courts look to a variety of factors in

determining whether to order immediate payment, including, but not limited to, prejudice to the

debtor, hardship to the claimant, potential detriment to other creditors, and the length and

expense of the case's administration.  *See id.; see also In re Garden Ridge Corp*., 323 B.R. 136,

143 (Bankr. D. Del. 2005).

43.     Cobra will be prejudiced by any delay, much less an indefinite delay.  It entered

into the post-petition Contracts with PREPA with the expectation of being paid in the ordinary

course of business as provided in the Contracts.  Cobra incurred significant costs in rebuilding

the electrical grid in Puerto Rico and getting the lights back on.  Failing to pay such post-petition

contracts pursuant to their terms will discourage companies from supporting a debtor during its

reorganization case by doing business with it.  Should another natural disaster strike Puerto Rico

during the pendency of the PROMESA cases, PREPA may find itself unable to find a contractor

willing to take the risk that PREPA has the option but not the requirement to pay for the goods

and services as set forth in the contract.  This is especially discriminatory and unfair at a time

when PREPA is proposing to allow and pay administrative expenses representing interest on pre-

petition bonds.  *See* Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant

to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and

Tolling Certain Limitations Periods [Case No. 17-BK-3283-LTS, ECF No. 1235].

44.     The Movants, by contrast, will not be prejudiced by having to respond to Cobra's

administrative claims now.  Their arguments otherwise are primarily based on their incorrect

assertions that resolution of the criminal charges against Tribble, Ellison and Patterson might

somehow allow PREPA to keep the benefit of Cobra's work without paying for it.  As

demonstrated above, nothing in the Indictment suggests that PREPA was "fraudulently induced"

into awarding the Contracts to Cobra or was the victim of any "deceit."  Urgent Motion at 11, 12

n. 8.  Nor does anything in the Indictment raise the possibility that PREPA will be excused from

its contractual obligation to pay Cobra for its work.  Similarly, the OIG Report does not create

any possibility that PREPA will not have to pay Cobra.

## IV.     The Court Should Hear Cobra's Undisputed Claims Immediately and the Disputed Claims After Any Necessary Discovery

### a.     Cobra's Undisputed Claims Should be Heard at the October 30, 2019 or December 11, 2019 Omnibus Hearings

45.     As set forth in Cobra's motion for allowance any payment of its administrative

expense claims, PREPA has not disputed Cobra's entitlement to payment of significant sums that

are due and owing under the Contracts.  First, Cobra has submitted invoices totaling

$20,137,138.94 to which PREPA has not raised any objections.  PREPA has acknowledged in

discussions that payment is due for these invoices and, for several months preceding Cobra's

motion in this Court, PREPA represented to Cobra that payment of these invoices was

forthcoming, but no payment was made.  Second, PREPA withheld $7,551,956.01 in payments

based on a prompt payment discount to which it was not entitled.  Third, PREPA has also failed

to pay Cobra $61,668,083.34 due under the First Contract for reimbursement of Puerto Rico

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

taxes in excess of 8.5% in 2018.  PREPA has failed to provide any explanation for its failure to reimburse Cobra for these taxes as required.

46.     These undisputed claims require no discovery and should be addressed immediately.  Cobra requests that the Court hear these claims at either the October 30, 2019 or the December 11, 2019 omnibus hearings.

> **b.  After a Conference Addressing the Need for Any Discovery on the Disputed Claims, the Court Should Hear the Disputed Claims at the January 29, 2020 Omnibus Hearing**

47.     The remainder of Cobra's claims, which seek payment on invoices that PREPA raised some objection to, may require some limited discovery.  Cobra requests that the Court hear the parties' contentions regarding the need for discovery on those claims, and the scope and timing of any such discovery, at either the October 30, 2019 or the December 11, 2019 omnibus hearings.  Cobra further requests that the Court order that any necessary be completed in time for the claims to be fully hears at the January 29, 2020 omnibus hearing.

RESPECTFULLY SUBMITTED.

19

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

Dated: October 15, 2019

Respectfully submitted,

REICHARD & ESCALERA, LLC

/s/ Rafael Escalera Rodríguez
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

/s/Sylvia M. Arizmendi
Sylvia M. Arizmendi
USDC-PR No. 210714
arizmendis@reichardescalera.com

/s/ Alana Vizcarrondo-Santana
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

/s/Gustavo A. Pabón-Rico
Gustavo A. Pabón-Rico
USDC-PR No. 231207
pabong@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

AKIN GUMP STRAUSS HAUER & FELD
LLP

/s/ Thomas P. McLish
Thomas P. McLish (pro hac vice)
tmclish@akingump.com

/s/ Scott M. Heimberg
Scott M. Heimberg (pro hac vice)
sheimberg@akingump.com

/s/ Allison Thornton
Allison S. Thornton (pro hac vice)
athornton@akingump.com

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288

and

/s/ Stephen M. Baldini
Steven M. Baldini (Of Counsel-Pro Hac Vice
Pending)
sbaldini@akingump.com

/s/ Ira S. Dizengoff
Ira S. Dizengoff (Of Counsel- Pro Hac Vice
Pending)
idizengoff@akingump.com

/s/ Phillip C. Dublin
Phillip C. Dublin (Of Counsel- Pro Hac Vice
Pending)
pdublin@akingump.com

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036

Estimated Hearing Date: October 30, 2019 at 9:30a.m. (AST)
Objection Deadline: October 16, 2019 at 10:00a.m. (AST)

Tel: (212) 872-1000
Fax: (214) 872-1002

*Attorneys for Cobra Acquisitions LLC*