UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>**THE COMMONWEALTH OF PUERTO RICO** *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>Re: Dkt. No. 8450<br><br>Hearing Date: October 30, 2019 at 9:30 a.m.[2] |

**FEE EXAMINER'S LIMITED OBJECTION TO THE AMENDED FIRST
INTERIM APPLICATION OF DUFF & PHELPS LLC FOR ALLOWANCE
OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED AS INDEPENDENT
FORENSIC ANALYSIS TEAM TO THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF
THE DEBTOR, THE COMMONWEALTH OF PUERTO RICO,
FOR THE PERIOD OF NOVEMBER 1, 2018 THROUGH JANUARY 31, 2019**

The Fee Examiner, Brady C. Williamson ("**Fee Examiner**"), appointed in the above-captioned cases, by his counsel, Godfrey & Kahn, S.C. ("**Godfrey & Kahn**"), submits this Limited Objection (the "**Limited Objection**") to the *Amended First Interim Application of Duff*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747 ) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Pursuant to the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 3269] (the "**Interim Compensation Order**"), Fee Examiner objections are to be filed and served on or before 15 calendar days before the hearing. *Id.* ¶ 2(h).

*& Phelps LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Independent Forensic Analysis Team to the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period of November 1, 2018 Through January 31, 2019* [Dkt. No. 8450] (the "**First Fee Application**"). In support of the Limited Objection, the Fee Examiner respectfully represents:

## PRELIMINARY STATEMENT

The First Fee Application seeks Court approval of $1,914,104.50 in legal fees and $71,798.08 in expenses incurred from November 1, 2018 to January 31, 2019 (the "**Compensation Period**") as Independent Forensic Analysis Team ("**IFAT**") for the Financial Oversight and Management Board for Puerto Rico ("**FOMB**").

The Fee Examiner objects to Court approval of $570,827.75 in fees and $23,353.14 in expenses, about one third of the total requested, in the First Fee Application.[3] This Limited Objection focuses on:

- $15,561.00 in fees and $23,353.14 in expenses attributable to guideline and record-keeping deficiencies;

- $461,504.50 in fees attributable to project management charges in excess of the capped amounts provided in D&P's engagement agreement with the FOMB; and

- $93,762.25 in fees attributable to travel time billed at full hourly rates.[4]

---

[3] A set of exhibits outlining in detail the Fee Examiner's quantitative objections is attached to the accompanying *Declaration of Katherine Stadler in Support of Limited Objection to Amended First Interim Application of Duff & Phelps LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Independent Forensic Analysis Team to the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico for the Period of November 1, 2018 Through January 31, 2019* ("**Stadler Decl.**") as Exhibit 3.

2

In each instance, D&P has failed to sustain its burden of proof under PROMESA to demonstrate that its First Fee Application reflects reasonable and necessary services as those terms are used in PROMESA.

**BACKGROUND**

*Fee Review Guidelines*

1. The Court appointed the Fee Examiner on October 6, 2017 [Dkt. No. 1416] to execute the duties set forth in the Fee Examiner order, including, among other things, monitoring the fees and expenses incurred by professionals in these Title III cases and making appropriate recommendations to the Court.

2. In November 2018, the Fee Examiner promulgated a set of uniform fee and expense standards in a memorandum to all of the retained professionals.[5] That memorandum outlined the statutory standards imposed by PROMESA and, by reference, the U.S. Bankruptcy Code and U.S. Trustee Guidelines, as well as some of the Fee Examiner's own suggested fee and expense parameters. A second memorandum on January 3, 2018 reflected initial observations on the then-filed applications and noted several categorical concerns.

3. The *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932] and the *Order Imposing Additional Presumptive Standards: Rate Increases and the Retention of Expert*

---

[4] The Fee Examiner and D&P reached a compromise on certain issues initially raised with the professional. Those compromises are not reflected in this Limited Objection. *See* Stadler Decl. ¶ 6. If the professional no longer wishes to honor the categorical compromises reached, the Fee Examiner reserves the right to amend this Limited Objection to address guideline issues previously adjusted by agreement.

[5] Several professional groups, including D&P, did not receive the first memorandum immediately upon retention because, without a publicly-filed retention application, the Fee Examiner was not immediately aware that D&P intended to file interim fee applications. On March 18, 2019, D&P filed its initial interim fee application, later amended. On April 9, 2019, the Fee Examiner provided D&P with all memoranda and guidelines.

3

*Witnesses or Other Sub-Retained Professionals* [Dkt. No. 7678] provided additional guidance to all professionals.

4. Taken together, PROMESA, the Bankruptcy Code and Rules, the U.S. Trustee Guidelines, the memoranda, the local rules, and the two presumptive standards orders provide both general and specific standards governing professional compensation and reimbursement (together, the "**Standards and Guidelines**"). The Court's periodic comments from the bench have re-enforced the Standards and Guidelines.

*The FOMB's Retention of Duff & Phelps*

5. On January 31, 2018, the FOMB retained D&P to serve as an independent forensic analysis team for the Commonwealth Bank Account Report Project ("**Project**"), which included development and publication of the March 12, 2019 "IFAT Report on Title III Bank Accounts." *See* Stadler Decl., Ex. 1 (the "**IFAT Report**").[6] The original stated objectives of the Project were:

    A. To obtain an accurate picture of the liquidity of Puerto Rico (and all of its instrumentalities and its entities); and

    B. To determine a clear cash baseline for all parties in the debt restructuring process.

6. D&P and the FOMB amended the Engagement Letter three times: first on March 31, 2018, second on August 16, 2018, and third on December 11, 2018.[7] The first two

---

[6] The January 31, 2018 engagement letter (the "**Engagement Letter**") is attached to the IFAT Report as Appendix B-2.

[7] The three amendments are attached to the IFAT Report as Appendices B-4, B-5, and B-6 (collectively, with the Engagement Letter, the "**Engagement Agreements**").

4

amendments each modified the scope of services and increased the total estimated fees for the Project.[8]

*Objection: Project Management Fees*

7. In the December 11, 2018 Amendment--the most recent--D&P agreed to formally assume the role of Project Manager—to work on-site in San Juan and provide direct supervision to the Oversight Board's staff performing review and data entry—for an estimated $50,000 per week in additional fees (the "**Project Management Fees**").[9] When D&P assumed the Project Manager role, it acknowledged that all fees and expenses incurred on or after November 1, 2018 would be subject to the Title III review process. D&P's pre-November 2018 fees, totaling $919,210.09, have not been subject to Fee Examiner review.

8. D&P's Project Manager role lasted about 19 weeks, effective the week of November 5, 2018 and continuing through March 12, 2019.

9. D&P's engagement substantially concluded with the publication of the IFAT Report on March 12, 2019. The firm is no longer providing significant services to the FOMB.

10. On March 12, 2019, the FOMB shifted responsibility for the second phase of the Project, including completion of the liquidity analysis, to another of the Oversight Board's retained financial advisors, Ernst & Young Puerto Rico LLP. *See* Stadler Decl., Ex. 2

---

[8] Amendment No. 2 provides: "[the] revised Scope of Services will total $1,715,663.00. D&P will bill for the actual hours incurred in connection with the Engagement. However, should D&P's hours exceed the estimated hours…D&P agrees to seek advance approval for any such excess."

[9] The December 11, 2018 Amendment provides: "the assumption by D&P of the role of Project Management will *supplement*, but not replace, those enumerated responsibilities D&P currently has under the Scope of Services" (emphasis added), and "D&P's estimate of its incremental fees for its services hereunder is $50,000 per week effective the week beginning November 5, 2018 through [March 12, 2019], provided that the billings will be based on actual hours worked."

5

(Amendment No. 4 to [Ernst & Young Puerto Rico LLC] Statement of Work in Connection with Title III of PROMESA).

11. Notwithstanding the $50,000 per month estimate, D&P reported incurring more than $90,000 per week in Project Management Fees—totaling approximately $1,177,891.50—during the 13-week Compensation Period.[10] Despite multiple requests, D&P has not provided documentation supporting its claim that the FOMB ever approved Project Management Fees in excess of $50,000 per week or that it kept the FOMB appropriately apprised of periodic increases.

***Objection: Travel Time Billed at Full Rates***

12. During the Compensation Period, D&P timekeepers also recorded $187,524.50 for 376 hours of travel to and from Puerto Rico at full hourly rates, ranging from $225 to $650, though, pursuant to the Standards and Guidelines and Local Rule 2016-1(a)(3), most other Title III professionals bill travel time at no more than one half of their customary hourly rates.[11] Many AAFAF and PREPA services contracts disallow billing for travel time altogether. Despite multiple requests, D&P has not provided documentation supporting its claim that the FOMB approved travel at full hourly rates.

13. On March 18, 2019, D&P filed the *First Interim Application of Duff & Phelps LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Independent Forensic Analysis Team to the Financial Oversight and Management Board for Puerto Rico, as Representative of Debtor, the Commonwealth of Puerto Rico, for the*

---

[10] In its second interim fee application, filed on July 16, 2019 [Dkt. No. 7997], D&P requested additional fees totaling $350,401.50—including approximately $218,619.00 in Project Management Fees—and expenses totaling $8,574.81. Review of D&P's second interim application awaits the outcome of this Limited Objection.

[11] In both the original and amended First Fee Applications, D&P incorrectly certified compliance with the U.S. Trustee Guidelines, Fed. R. Bankr. P. 2016, and Local Rule 2016-1. *See* Dkt. No. 8450 at p. 28-30 of 162.

6

*Period of November 1, 2018 Through January 31, 2019* [Dkt. No. 5800], requesting $1,914,104.50 in fees and $71,798.08 in expenses (the "**Original First Fee Application**").

14. On June 6, 2019, consistent with the Interim Compensation Order, the Fee Examiner issued an 11-page (not including exhibits) confidential letter report to D&P on the Original First Fee Application (the "**Letter Report**"). The Letter Report notified D&P of the Fee Examiner's initial observations and recommended reductions for various billing guidelines violations, including those outlined in this Limited Objection. The Letter Report also included the first of a series of requests for additional information to assess the reasonableness and necessity of the Project Management Fees.

15. On August 13, 2019, D&P amended its Original First Fee Application seeking the Court's approval for the same fees and expenses sought in the original application. D&P revised its time detail to address some of the concerns raised in the Letter Report and inserted a new table showing D&P's discounted rate structure. These amendments did not address the concerns with respect to Project Management Fees, travel time, and guideline violations.

16. Despite extended and repeated discussions, the Fee Examiner and D&P have been unable to reach a consensual resolution of the significant issues raised in this Limited Objection.

## LEGAL STANDARD

17. Interim compensation for professionals is governed by PROMESA §§ 316 and 317, incorporating 11 U.S.C §§ 330 and 331. The Court is authorized to grant "reasonable compensation for actual, necessary services rendered by the [professional] and reimbursement for actual, necessary expenses." PROMESA also provides standards for "determining the amount of reasonable compensation," echoing the analogous U.S. Bankruptcy Code sections.

18. PROMESA Section 316 and Bankruptcy Code section 330(a)(1) provide that:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, … professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. §§ 330(a)(1)(A) and (B).

19. Section 316 of PROMESA and section 330 of the Bankruptcy Code focus on reasonableness and the benefit to the estate of the professionals' services. *In re Lederman Enters., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993); *In re Fibermark, Inc.*, 349 B.R. 385, 396 (Bankr. D. Vt. 2006).

20. Accordingly, an application for compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and conferred a real benefit to the estate or its creditors. *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997) (citing *In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986) (other citation omitted)).

21. Each applicant bears the burden of proof in all fee matters. *In re CCT Commc'ns, Inc.*, No. 07–10210 (SMB), 2010 WL 3386947, at *4 (Bankr. S.D.N.Y. Aug. 24, 2010); *In re Northwest Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009) (citing *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997)); *In re JLM, Inc.*, 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997).

22. To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation. *In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007); *In re Bennett Funding Grp., Inc.*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). The inability of an applicant to

8

sustain its burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation. *In re Beverly Mfg. Corp.*, 841 F.2d 365 (11th Cir. 1988).

23. The Court also has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." *Keene Corp.*, 205 B.R. at 695 (*quoting In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3d Cir. 1994)). The Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code.[12] *In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995); *see also Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts' denial of improperly documented and inadequately detailed expenses).

**LIMITED OBJECTION**

1. The first category of fees and expenses subject to objection is familiar—D&P has failed to comply with the requirements of the Standards and Guidelines. The Fee Examiner seeks disallowance of approximately $38,914.14 in fees and expenses attributable to billing guideline violations and similar deficiencies—all of which have been previously identified for D&P through the fee review process and discussed with the firm. *See* Stadler Decl., Ex. 3 (itemized exhibits). By definition, therefore, it has failed to meet its burden of establishing the reasonableness of approximately $15,561.00 in fees and $23,353.14 in expenses.

2. While the Guidelines, local rules, and Fee Examiner's expense standards are not ambiguous or unprecedented, D&P routinely failed to observe applicable limits and prohibitions

---

[12] Here, of course, the FOMB need not obtain Court approval for professional retentions. Nonetheless, the Fee Examiner considers the terms of the Engagement Agreements as the best available analogue to a professional retention order under Bankruptcy Code section 327 or 328.

9

(such as for lodging, meal and any alcohol charges), relying on the fee review process to cull the excessive charges, rather than documenting and adjusting them. Many of the applied caps and prohibitions were imposed by the Oversight Board's standard expense policy, applicable to all FOMB professionals—long before D&P was subject to the Title III review process.

3. The second category of objectionable fees involves approximately $461,504.50 of Project Management Fees in excess of the projected amounts contemplated in the Engagement Agreement. *See* Stadler Decl., Ex. 3. On average, D&P incurred more than $90,000 of weekly Project Management Fees during the 13-week Compensation Period—nearly double the amount the FOMB approved. The third category of objectionable fees includes $187,524.50 in charges for professionals' travel time, billed at full hourly rates. The Standards and Guidelines allow professionals to be paid for travel, if at all, at rates no more than one half the customary hourly rate.

## CONCLUSION

D&P has not met its burden under PROMESA to establish that all of its requested fees are reasonable and necessary. D&P asserts that the FOMB explicitly approved Project Management Fees above the estimate and full-rate travel time. Despite repeated requests for documentation of any FOMB approvals, D&P has not provided the necessary support for its additional requested fees.

WHEREFORE, the Fee Examiner asks the Court to disallow $570,827.75 in fees and $23,353.14 requested in D&P's First Fee Application, as well as ordering D&P to honor the consensual adjustments made prior to the filing of this Limited Objection.

Dated: October 15, 2019.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all attorneys of record registered in the use of the CM/ECF system.

EDGE LEGAL STRATEGIES, PSC

*s/Eyck O. Lugo*
Eyck O. Lugo
Vilmarys M. Quiñones Cintrón
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Telephone: (787) 522-2000
Facsimile: (787) 522-2010

*Puerto Rico Counsel for Fee Examiner*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 257-3911
Facsimile: (608) 257-0609

Brady Williamson (*Pro Hac Vice*)
*Fee Examiner*

Katherine Stadler (*Pro Hac Vice*)
*Counsel for the Fee Examiner*

21328837.3

11