UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---

| | |
|---|---|
| In re: | : |
| | : |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : PROMESA |
| | : Title III |
| as representative of | : |
| | : Case No. 17-BK-3283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO *et al.,* | : |
| | : (Jointly Administered) |
| Debtors.[1] | : |

---

**LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING ADMINISTRATIVE RECONCILIATION OF CERTAIN CLAIMS, (B) APPROVING ADDITIONAL FORM OF NOTICE, AND (C) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby submits this limited objection (the "Objection") to the Debtors' *Motion for Entry of an Order (A) Authorizing Administrative Reconciliation of Certain Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Docket No. 8827] (the "Motion").[3] In support of this Objection, the Committee respectfully represents as follows:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

## LIMITED OBJECTION

1. The Committee files this limited objection because, while it is generally supportive of streamlining the claims resolution process through the use of existing administrative processes, it believes the Administrative Claims Reconciliation Procedures (the "<u>Proposed Procedures</u>") should be modified to protect claimants against the risk of undue delay in the allowance and payment of claims. Undue delay in the allowance and payment of unsecured claims is of critical concern to unsecured creditors. In fact, the Committee has been made aware that certain claims against the Commonwealth have been outstanding for years.

2. The Committee acknowledges that the Proposed Procedures provide certain deadlines in connection with the resolution of claims. For example, they require agencies to "grant or deny" Pension/Retiree Claims, Public Employee Claims, and Tax Refund Claims within 60 days from the submission of the claim (which submission must occur within 60 days of the submission of the Administrative Reconciliation Notice).[4] In addition, the Proposed Procedures provide a mechanism for reporting the status of claims to the Court.[5]

3. However, the Proposed Procedures do not address what will happen if the claims allowance process continues beyond the 60-day deadline and do not contain a deadline for payment. Critically, the Proposed Procedures provide no avenue for redress before this Court for a creditor whose claim remains unresolved or unpaid after the deadline. This issue exists despite the fact that the Proposed Procedures seem to contemplate that claims may not be resolved within the 60-day deadline as the Proposed Procedures require the Debtors to notify the Court

---

[4] Proposed Procedures, at ¶¶ 3, 4, and 5.
[5] *Id.* ¶ 6.

with respect to, among other things, claims that have not been resolved within 180 days of the filing of the Administrative Reconciliation Notice.[6]

4. To address this issue, the Committee requests that the Proposed Procedures be amended to include a "safety valve" provision that would allow a creditor (i) whose claim remains pending without a ruling on whether the claim has been allowed or not for over 60 days (or for such other period as the Court determines is appropriate) from the filing of the Administrative Reconciliation Notice and/or (ii) whose claim, if allowed, has not been paid within 60 days (or for such other period as the Court determines is appropriate) after such ruling, to seek relief regarding allowance and/or payment from this Court.[7] In other words, a creditor that is placed in the Proposed Procedures should be allowed to come back to this Court if the administrative process has resulted in excessive delay. Therefore, the Committee proposes the addition of the following language to paragraph 6 of the Proposed Procedures (in bold and underlined):

> Within one-hundred and twenty (120) days of filing the first Administrative Reconciliation Notice, and every sixty (60) days thereafter, the Debtors shall file with the Court a notice (an "Administrative Reconciliation Status Notice") setting forth those claims since the filing of the prior Administrative Reconciliation Status Notice that (a) have been resolved through one or more administrative reconciliation processes (the "ACR Resolved Claims"); (b) are currently in an administrative reconciliation process; or (c) have not been resolved by the Commonwealth within one-hundred and eighty (180) days of the filing of the Administrative Reconciliation Notice transferring the claim into Administrative Claims Reconciliation. **The holder of any claim that has (a) not been resolved by a ruling on whether the claim is allowed or disallowed within sixty (60) days of the filing of the Administrative Reconciliation Notice transferring the claim into Administrative Claims Reconciliation and/or (b), if allowed, has not been paid within an additional sixty (60) days of such ruling shall have**

---

[6] *Id.* It should be further noted that the Proposed Procedures do not clarify what it means for a claim to be "resolved." Resolution of a claim should not be deemed to occur until the allowance or disallowance of the claim has been ruled on.

[7] The Committee proposed this concept to the Oversight Board in an effort to avoid filing this Objection, but its proposal was rejected.

3

**the right to seek relief with respect to allowance and/or payment of such claim, as applicable, from the Court.**

5.  The Committee believes that a safeguard such as the one proposed above is of critical importance to the integrity of the Title III process and the protection of claimants' rights therein. Creditors have a right, under the Bankruptcy Code and Title III, to a claims resolution process administered by this Court, and the authority that the Debtors have cited in their Motion and their subsequent supplemental briefing[8] does not necessarily support the non-consensual wholesale and permanent expulsion of thousands of creditors from that process. To the degree the Debtors rely on the twelve factors supporting discretionary abstention, the Committee must note that several of those factors would militate *against* abstention here.[9] For example, one of those factors is "the relatedness of the proceeding to the main bankruptcy case," but the claims resolution process is a core matter[10] and a "quintessential bankruptcy court function."[11] Similarly, it is not apparent that forum shopping has occurred or that the claims at issue involve parties other than the Debtors and the respective claimants. Moreover, nothing in section 305 of PROMESA means that creditors have waived their rights to a claims allowance process before the Court or allows the Oversight Board to deprive thousands of creditors of those rights. Section 305 may prevent certain forms of interference in the Debtors' affairs, but it cannot be

---

[8] *Supplemental Brief of the Debtors in Support of Motion for Entry of an Order (A) Authorizing Administrative Reconciliation of Certain Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* (the "Supplemental Brief") [Docket No. 8876].

[9] *See* Supplemental Brief at ¶ 5. It should be noted that *In re Unanue-Casal*, 164 B.R. 216, 221 (D.P.R. 1993), and the other cases cited at paragraph 7 of the Supplemental Brief are all cases in which *non-debtors* sought abstention and therefore are of limited precedential value.

[10] *See e.g.*, 28 U.S.C. § 157(b)(2)(B) (listing "allowance or disallowance of claims" as a core proceeding).

[11] *In re Penson Worldwide*, 587 B.R. 6, 24 (Bankr. D. Del. 2018). *See also In re DBSD N. Am., Inc.*, 506 B.R. 358, 363 (Bankr. S.D.N.Y. 2009) (determination of the allowance of a creditor's claims against a debtor was a "classic function of the Bankruptcy Court"). *See also id.* ("Because the determination [of the allowance of disallowance of a claim] requires so basic a Bankruptcy Court function, and indeed is a core matter, in order for

4

used to bulldoze other parties' bankruptcy rights or the structure of the Bankruptcy Code, of which claims resolution is a key pillar.

6. Given the above, the Court should not accept the Oversight Board's invitation to completely delegate the claims allowance process to the Commonwealth with respect to the ACR Designated Claims and abandon all safeguards that are supposed to be in place to protect creditors. The "safety valve" proposed by the Committee provides a reasonable and necessary mechanism because it would permit the Debtors to use an existing administrative process to streamline claims resolution while at the same time preserving a creditor's ability to seek recourse in this Court for limited purposes.

7. Importantly, the realities faced by creditors of the Puerto Rico government make this essential for practical reasons that go beyond the legal requirements of the Bankruptcy Code. The experience of too many creditors has been that (i) resolution of their claims by the Puerto Rico government has been (intentionally or not) subject to tremendous delay (separate and apart from the Title III process); and, (ii) even after claims have been resolved, the payment process has been deferred (intentionally or not) for months if not, in some cases, years. Therefore, creditors must continue to have the right to seek relief from this Court if they are subjected to undue delay in connection with the administrative process.

8. The Committee also notes that in the Motion the Debtors have proposed a process that will affect the rights of thousands of creditors, permanently depriving them of their ability to seek relief from this Court, without providing any notice. This is another compelling reason why the above protections must be incorporated into the Proposed Procedures, which will allow

---

me to abstain from making that determination, there must be some reason that a Bankruptcy Court cannot decide this particular issue of claims allowance, as Bankruptcy Courts routinely do.").

creditors, once they have been notified of such process and not had their claim resolved, to return to this Court for limited purposes.

9. For the reason stated above, the Committee requests that the relief granted by the Court be modified to reflect the issues raised herein.[12]

*[Remainder of page intentionally left blank.]*

---

[12] The Committee further reserves its rights to raise any and all issues, including with respect to the treatment of claims, in connection with the approval of any disclosure statement or plan of adjustment filed in these Title III cases.

WHEREFORE, the Committee respectfully requests that the relief granted by the Court be modified to reflect the issues raised herein.

Dated: October 18, 2019  /s/ Luc A. Despins

PAUL HASTINGS LLP
Luc. A. Despins, Esq. (Pro Hac Vice)
James R. Bliss, Esq. (Pro Hac Vice)
Michael E. Comerford, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
michaelcomerford@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*