Hearing Date: December 11, 2019, at 9:30AM (Atlantic Time)
Response Deadline: November 26, 2019 at 4:00PM (Atlantic Time)

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to HTA.** |

---

### SEVENTY-SIXTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO DUPLICATE CLAIMS ASSERTING AMOUNTS FOR WHICH THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY IS NOT LIABLE

---

The Puerto Rico Highways and Transportation Authority ("HTA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of HTA pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this seventy-sixth omnibus objection (the "Seventy-

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5532-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Sixth Omnibus Objection") seeking to disallow, in whole or in part, the proofs of claim listed on

**Exhibit A** hereto, each of which are duplicative and/or assert amounts for which HTA is not liable.

In support of the Seventy-Sixth Omnibus Objection, HTA respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA

section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a),

commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21,

2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant

PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to

PROMESA section 304(a), commencing a case under Title III thereof (the "HTA Title III Case"

and together with the Commonwealth Title III Case the "Title III Cases").  On June 29, 2017, the

Court entered an order granting the joint administration of the Title III Cases for procedural

purposes only.

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of*

2

*Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the HTA Title III Case.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

5.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).

**B.      HTA Bond Debt Master Proofs of Claim**

6.      HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.

7.      The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

"Resolution Bonds"): (i) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (ii) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution," and with the 1968 Resolution, the "Resolutions").  As of the Petition Date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.

8.     The Bank of New York Mellon ("BNYM") serves as fiscal agent with respect to the Resolution Bonds.  On behalf of the holders of the Resolution Bonds, BNYM filed three master proofs of claim in the HTA Title III Case (collectively, the "BNYM Master Proofs of Claim"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

9.     Each of the BNYM Master Proofs of Claim asserted, with respect to the Resolution Bonds at issue, "[a]ny and all claims, rights and/or remedies the Fiscal Agent and/or the Owners may have under or in connection with" the 1968 Resolution or 1998 Resolution, as applicable, along with "[a]ny and all claims, rights, and/or remedies the Fiscal Agent and/or the Owners may have arising at law or in equity based upon" the 1968 Resolution or 1998 Resolution, as applicable, "including, but not limited to, claims for breach of contract, specific performance, indemnification, contribution, recession, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, alter ego, reimbursement and/or subrogation related to, or arising from or on account of any and

all part, present, or future litigations, actions, or transactions by, among, or involving the Fiscal

Agent, the Owners, and/or [HTA]." Addendum to Proof of Claim No. 32622, ¶ 17; Addendum to

Proof of Clam No. 37245, ¶ 19; Addendum to Proof of Clam No. 38574, ¶ 18.

10. On September 22, 2011, HTA entered into a concession agreement with Autopistas

Metropolitanas de Puerto Rico, LLC ("Metropistas"), pursuant to which, for a period of 40 years,

Metropistas would have the right to charge, collect and retain tolls imposed on certain toll roads

in Puerto Rico. In exchange, HTA received an upfront payment from Metropistas (the

"Concession Fee"), which HTA used to "defease, redeem or pay the purchase price of certain

bonds [] issued under" the 1998 Resolution. *Material Event Notice (Notice of Purchase,*

*Defeasance and Redemption*, September 22, 2011, *available at* https://emma.msrb.org/EA477903-

EA370346-EA767176.pdf (the "Notice of Defeasance and Redemption"). With a portion of the

Concession Fee, HTA repurchased certain bonds issued pursuant to the 1998 Resolution (the

"Purchased Bonds"). *Id.* HTA also used a portion of the Concession Fee to defease certain bonds

issued pursuant to the 1998 Resolution (the "Defeased Bonds"). *Id.* The CUSIP numbers for the

Purchased and Defeased Bonds are listed in the Notice of Defeasance and Redemption.

**C.     HTA Claims**

11. To date, approximately 171,377 proofs of claim have been filed against the Debtors

and logged by Prime Clerk, LLC.[4] Such proofs of claim total approximately $43.6 trillion in

asserted claims against the Debtors. Of the proofs of claim filed, approximately 2,229 have been

filed in relation to, or reclassified to be asserted against, HTA. The HTA-related proofs of claim

total approximately $83.1 billion in asserted claims, in addition to unliquidated amounts asserted.

---

[4] This total count of recorded entries on the claims register in the Title III cases includes over 8,000 claims that have
been marked as docketed in error and removed.

In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being duplicative of other proofs of claim or asserting amounts for which HTA is not liable.

**C.    Omnibus Objection Procedures and Objections to HTA Claims**

12.    In order to efficiently resolve as many of the unnecessary proofs of claim as possible, the Debtors, on October 16, 2018, filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The relief requested therein was non-substantive in nature and was designed to expedite and streamline the claims reconciliation process by, among other things, enlarging the number of claims permitted to be within the scope of an omnibus objection.  After the proposed order was revised to incorporate certain comments received, including those from the Court at a hearing held on November 7, 2018, the Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Original Omnibus Objection Procedures").

13.    In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, the Debtors, on May 23, 2019, filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  The Court granted the

requested relief by the June 14, 2019 *Order (A) Approving Amended Omnibus Objection*

*Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus

Procedures").

      14.    Pursuant to the Initial Omnibus Objection Procedures, the Court has held hearings

related to sixty-four non-substantive omnibus objections filed by the Commonwealth, the Puerto

Rico Sales Tax Financing Corporation ("COFINA"), HTA, and/or the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico ("ERS").  After hearings held on

January 30, 2019, and March 13, 2019, the Court sustained nineteen of these omnibus objections,

resulting in thousands of proofs of claim filed against COFINA being disallowed and expunged,

and hundreds of other claims being reclassified to be asserted against another of the Debtors.

Forty-three non-substantive omnibus objections and five substantive objections to claims filed

against the Commonwealth, HTA, ERS, and/or COFINA, in addition to a number of individual

objections to claims filed against the Commonwealth, ERS, or COFINA, were heard on June 12,

2019, July 24, 2019, and September 11, 2019.  Two non-substantive omnibus objections and five

substantive omnibus objections to claims filed against the Commonwealth, HTA and ERS are

scheduled to be heard on October 30, 2019.  Based upon rulings and orders of the Court, over

9,000 claims asserting approximately $43 trillion in liability against the Commonwealth, HTA,

COFINA, and ERS have been disallowed and will be expunged from the claims registry in the

Title III proceedings upon entry of final orders.

      15.    This Seventy-Sixth Omnibus Objection is filed in accordance with the Court's

Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

16.      The Amended Omnibus Objection Procedures allow HTA to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

17.      The Seventy-Sixth Omnibus Objection seeks to disallow, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, respectively, claims that are duplicates of one or more HTA Master Proofs of Claim filed in the Title III Cases and/or seek recovery for amounts for which HTA is not liable because the claims are based on notes that have already been redeemed or defeased.

18.      Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1). Each claim identified in **Exhibit A** hereto (collectively, the "Claims to Be Disallowed") seeks, in part, recovery of amounts for which HTA is not liable because the bonds claimants purport to own have already been refunded, either through redemption or defeasance, in whole or in part. Each of the Claims to Be Disallowed asserts, in part, a CUSIP number associated with either a Purchased Bond or a Defeased Bond. For the Purchased Bonds, HTA has already refunded the original bonds. For the Defeased Bonds, HTA refunded a portion of the original bonds and set up an escrow to pay off the remaining principal and interest on the bonds until their maturity or call date. The Notice of Defeasance and Redemption reflects that the maturity and/or redemption dates for each of the Defeased Bonds have already passed. Notice of Defeasance and Redemption at Ex. B. As a result, "all [] rights granted to the holders [of the Purchased and the Defeased Bonds] under the [1998] Resolution [are] discharged and satisfied." Notice of Defeasance and Redemption at 1. Accordingly, because the Refunded Bonds and the Purchased Bonds have already been refunded

or defeased, holders of those bonds no longer have a valid claim against HTA, and those portions of the Claims to Be Disallowed should be disallowed.

19.     Moreover, as set forth in **Exhibit A** hereto, the Claims to Be Disallowed also liability against HTA based on bonds issued by HTA.  Such portions of the Claims to Be Disallowed are duplicative of one or more Master Proofs of Claim, which as explained above were filed in the HTA Title III Case by the fiscal agent or indenture trustee for the bonds at issue.  As a result, any failure to disallow these portions of the Claims to Be Disallowed will result in the applicable claimants potentially receiving an unwarranted double recovery against HTA, to the detriment of other stakeholders in the Title III Cases.  The holders of the Claims to Be Disallowed will not be prejudiced by the disallowance of the duplicate portions of their claims because the liabilities associated are subsumed within one or more Master Proofs of Claim.  Because the Claims to Be Disallowed only contain duplicative information or assert obligations for which HTA is no longer liable, HTA requests that these claims be disallowed in their entirety.

20.     In support of the foregoing, HTA relies on the *Declaration of Jay Herriman in Support of the Seventy-Sixth Omnibus Objection (Substantive) of the Puerto Rico Highways and Transportation Authority to Duplicate Claims Asserting Amounts for which the Puerto Rico Highways and Transportation Authority Is Not Liable*, dated October 24, 2019, attached hereto as **Exhibit B**.

## NOTICE

21.     In accordance with the Amended Omnibus Objection Procedures, HTA is providing notice of this Seventy-Sixth Omnibus Objection to (a) the individual creditors subject to this Seventy-Sixth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Ninth Amended Case Management Procedures* [ECF No. 7115-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  A copy of the

notice for this Seventy-Sixth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Seventy-Sixth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  HTA submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **RESERVATION OF RIGHTS**

22.     This Seventy-Sixth Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to the Claims to Be Disallowed or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (a) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

23.     No prior request for the relief sought in this Seventy-Sixth Omnibus Objection has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE HTA respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting HTA such other and further relief as is just.

Dated: October 24, 2019
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Carla García Benitez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP** Eleven
Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
as representative for HTA*

11

**Fecha de la vista: 11 de diciembre de 2019, a las 09:30 a.m. (AST)**
**Fecha límite para responder: 26 de noviembre de 2019, a las 04:00 p.m. (AST)**

> **REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS
> ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMO(S).**

### TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
### PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| En el asunto de:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN<br>FINANCIERA PARA PUERTO RICO,<br><br>    como representante de<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO y<br>otros,<br><br>                      Deudores.[1] | PROMESA,<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrada conjuntamente)<br><br>**La presente radicación guarda
relación con la ACT**. |

### SEPTUAGÉSIMA SEXTA OBJECIÓN GLOBAL (SUSTANTIVA)
### DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO
### A RECLAMOS DUPLICADOS EN LOS QUE SE RECLAMAN MONTOS POR LOS
### QUE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO
### NO TIENE RESPONSABILIDAD

La Autoridad de Carreteras y Transportación de Puerto Rico ("ACT"), a través de la Junta

de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como

representante de la ACT conforme al artículo 315(b) de la *Ley para la Supervisión, Administración*

---

[1]  Los Deudores en el marco de los presentes Procedimientos radicados conforme al Título III, junto con el respectivo
número de procedimiento radicado conforme al Título III y los últimos cuatro (4) dígitos del número federal de
contribuyente de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (núm. de
procedimiento de quiebra. 17 BK 3283-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3481);
ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (núm. de procedimiento de quiebra
17 BK 3284-LTS) (últimos cuatro dígitos del número federal de contribuyente: 8474); iii) la Autoridad de Carreteras
y Transportación de Puerto Rico (la "ACT") (núm. de procedimiento de quiebra 17 BK 3567-LTS) (últimos cuatro
dígitos del número federal de contribuyente: 3808); iv) Sistema de Retiro de los Empleados del Gobierno del Estado
Libre Asociado de Puerto Rico (el "SRE") (núm. de procedimiento de quiebra 17 BK 3566-LTS) (últimos cuatro
dígitos del número federal de contribuyente: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE")
(núm. de procedimiento de quiebra 17 BK 4780-LTS) (últimos cuatro dígitos del número federal de contribuyente:
3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el
ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (núm. de procedimiento de quiebra 19-BK-5532-LTS)
(últimos cuatro dígitos del número federal de contribuyente: 3801) (los números de causas radicadas conforme al
Título III figuran como números de procedimientos de quiebra debido a limitaciones del programa informático).

*y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente septuagésima sexta objeción global (la "Septuagésima sexta objeción global") en la que se pretende que se rechacen, total o parcialmente, las evidencias de reclamos que figuran en el **Anexo A** del presente documento, cada una de las cuales está duplicada y/o reclama montos por lo que la ACT no tiene responsabilidad. En apoyo de la Septuagésima sexta objeción global, la ACT manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.        El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme al artículo 306(a) de PROMESA.

2.        La sede judicial de este distrito es la competente conforme al artículo 307(a).

## ANTECEDENTES

### A.     Órdenes de fecha final

3.        El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme al artículo 304(a) de PROMESA, incoando una causa conforme al Título III de dicho cuerpo legal (la "Causa relativa al ELA radicada conforme al Título III"). El 21 de mayo de 2017 (la "Fecha de petición"), la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la ACT conforme al artículo 304(a) de PROMESA, incoando una causa conforme al Título III de dicho cuerpo legal (la "Causa de la ACT radicada conforme al Título III", y junto con la Causa del ELA radicada conforme al Título III, las "Causas radicadas conforme Título III"). El 29 de junio de

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

2

2017, el Tribunal dictó una orden por la que concedió la administración conjunta de las Causas radicadas conforme al Título III únicamente con fines procesales.

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamos y B) apruebe la forma y la manera de su notificación* [núm. ECF 2255][3] (la "<u>Moción de fecha final</u>"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar Evidencias de reclamos y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "<u>Orden inicial de fecha final</u>"), el Tribunal concedió el remedio solicitado en la Moción de fecha final y fijó fechas límite y procedimientos para radicar evidencias de reclamos en el marco de la Causa de la ACT radicada conforme al Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extiende las fechas límite para radicar Evidencias de reclamos y B) aprueba la forma y la manera de su notificación* [núm. ECF 3160] (conjuntamente con la Orden inicial de fecha final, las "<u>Órdenes de fecha final</u>"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

5.      Conforme a la Orden inicial de fecha final, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores, podrán radicar una evidencia de reclamos principal contra el deudor pertinente, en su propio nombre y en el de todos los tenedores de los reclamos de bonos relacionados con la respectiva serie de bonos, en relación con las obligaciones surgidas de los respectivos acuerdos fiduciarios, resoluciones o documentos similares vinculados con los bonos. Orden inicial de fecha final, ¶ 5(a).

**B.      Evidencias de reclamos principales relativas a la deuda de los Bonos de la ACT**

---

[3]  Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del procedimiento de quiebra núm. 17 BK 3283-LTS.

6.      La ACT es una corporación pública y organismo del ELA que constituye una entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA ("Ley habilitante de la ACT"). La ACT se encarga de la construcción, el funcionamiento y el mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A, § 2002.

7.      La Ley habilitante de la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A, §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos relativos a resoluciones"): i) Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución 1968"), y ii) Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución 1998", y conjuntamente con la Resolución 1968, las "Resoluciones"). Desde la Fecha de petición, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución 1998 quedan igualmente pendientes de pago.

8.      El Bank of New York Mellon ("BNYM") actúa como agente fiscal con respecto a los Bonos relativos a resoluciones. En nombre de los tenedores de los Bonos relativos a resoluciones, BNYM radicó tres evidencias de reclamos principales en el marco de la causa de la ACT radicada conforme al Título III (conjuntamente, las "Evidencias de reclamos principales del BNYM"): la Evidencia de reclamos núm. 37245, por la que se reclaman, en nombre de los tenedores de los bonos emitidos conforme a la Resolución 1968, aproximadamente $847 millones en concepto de responsabilidad más montos no liquidados; la Evidencia de reclamos núm. 38574, por la que se reclaman, en nombre de los tenedores de los bonos emitidos conforme a la Resolución 1998, aproximadamente $3200 millones en concepto de responsabilidad más montos no liquidados; y la Evidencia de reclamos núm. 32622, por la que se reclaman, en nombre de los

4

tenedores de los bonos subordinados emitidos conforme a la Resolución 1998, aproximadamente

$279 millones en concepto de responsabilidad más montos no liquidados.

9.      Cada una de las Evidencias de reclamos principales del BNYM tenía por objeto

hacer valer, en relación con los Bonos relativos a resoluciones en cuestión, "[t]odos los reclamos,

derechos y/o remedios que el Agente fiscal y/o los Propietarios puedan tener conforme a, o en

relación con" la Resolución 1968 o la Resolución 1998, según sea el caso, junto con "[t]odos los

reclamos, derechos y/o remedios que el Agente fiscal y/o los Propietarios puedan tener en ley o en

equidad sobre la base de" la Resolución 1968 o la Resolución 1998, según sea el caso, "incluidos,

entre otros, reclamos por incumplimiento contractual, cumplimiento específico, indemnización,

contribución, recesión, fraude, instigación fraudulenta, transmisión fraudulenta, falseamiento,

*alter ego*, reembolso y/o subrogación, relacionados, surgidos o vinculados con cualquiera de las

partes de litigios, acciones o transacciones presentes o futuros entre el Agente fiscal, el Propietario

y/o [la ACT], o que les impliquen". Adenda de la Evidencia de reclamos núm. 32622, ¶ 17; Adenda

de la Evidencia de reclamos núm. 37245, ¶ 19; Adenda de la Evidencia de reclamos núm. 38574,

¶ 18.

10.      El 22 de septiembre de 2011, la ACT suscribió un contrato de concesión con

Autopistas Metropolitanas de Puerto Rico, LLC ("Metropistas"), en virtud del cual, y por un

período de 40 años, Metropistas tendría derecho a facturar, cobrar y conservar peajes establecidos

en relación con determinadas carreteras de peaje en Puerto Rico. A cambio, la ACT recibió de

Metropistas un pago por anticipado (la "Tarifa sobre la concesión") que utilizó para "cancelar,

canjear o pagar el precio de compra de determinados bonos [] emitidos en virtud de" la Resolución

1998. *Notificación relativa a acontecimiento sustancial* (Notificación relativa a la compra,

cancelación y canje, 22 de septiembre de 2011, disponible en https://emma.msrb.org/EA477903-

EA370346-EA767176.pdf (la "Notificación relativa a la cancelación y canje"). Con parte de la

Tarifa sobre la concesión, la ACT compró determinados bonos emitidos conforme a la Resolución

5

1998 (los "Bonos comprados"). *Id.* La ACT también utilizó parte de la Tarifa sobre la concesión para cancelar determinados bonos emitidos conforme a la Resolución 1998 (los "Bonos cancelados"). *Id.* Los números CUSIP relativos a los Bonos comprados y los Bonos cancelados figuran en la Notificación relativa a la cancelación y canje.

**C.     Reclamos de la ACT**

11.     Hasta la fecha, se han radicado aproximadamente 171.377 evidencias de reclamos contra los Deudores, que han sido registradas por Prime Clerk, LLC.[4]   Dichas evidencias de reclamos ascienden a un total de $43.6 billones en reclamos radicados contra los Deudores. De las evidencias de reclamos radicadas, aproximadamente 2229 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra la ACT. Las evidencias de reclamos relacionadas con la ACT ascienden a un total de $83 100 millones en reclamos radicados, además de los montos no liquidados reclamados. De conformidad con los términos de las Órdenes de fecha final, muchos de esos reclamos no tenían que radicarse siquiera, o adolecen de algunos otros vicios; por ejemplo, estar duplicados en relación con otras evidencias de reclamos o reclamar montos por los que la ACT no tiene responsabilidad.

**C.     Procedimientos relativos a objeciones globales y objeciones a reclamos de la ACT**

12.     Para resolver de manera eficaz el mayor número posible de las evidencias de reclamos innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) declare la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de quiebras, y c) conceda el remedio relacionado* [núm. ECF 4052] (la "Moción de procedimientos globales"). El remedio solicitado en dicha moción era de una naturaleza no sustantiva y estaba concebido para agilizar y optimizar el proceso de reconciliación de los

---

[4]  Dicho recuento total de entradas inscritas en el registro de reclamos relativo a las causas radicadas conforme al Título III incluye más de 8000 reclamos que han sido etiquetados como inscritos por error y eliminados.

reclamos, entre otras cosas, al aumentar el número de reclamos permitido dentro del alcance de objeciones globales. Una vez revisada la orden propuesta para incorporar determinados comentarios recibidos, incluidos los realizados por el Tribunal durante una vista celebrada el 7 de noviembre de 2018, el Tribunal concedió el remedio solicitado en la Moción de procedimientos globales mediante la orden de fecha 14 de noviembre de 2018. Véase la *Orden a) que aprueba procedimientos limitados relativos a objeciones globales, b) declara la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de quiebras, y c) concede el remedio relacionado* [núm. ECF 4230]; *Procedimientos relativos a objeciones globales* [núm. ECF. 4230-1] (conjuntamente, los "Procedimientos originales relativos a objeciones globales").

13.     En aras del interés constante de resolver de una manera eficaz cualesquiera evidencias de reclamos innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en las que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamos que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe procedimientos enmendados relativos a objeciones globales, B) declare la renuncia al requisito contenido en la regla 3007(e) de las Reglas de quiebras C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [núm. ECF 7091]. El Tribunal concedió, el 14 de junio de 2019, el remedio solicitado por medio de la *Orden que A) aprueba procedimientos enmendados relativos a objeciones globales, B) declara la renuncia al requisito contenido en la regla 3007(e) de las Reglas de quiebras C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [núm. ECF 7440] (la "Procedimientos enmendados globales").

14.     Conforme a los Procedimientos originales relativos a objeciones globales, el Tribunal celebró vistas vinculadas con 64 objeciones globales no sustantivas radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT y/o el

7

Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE"). Tras las vistas celebradas el 30 de enero de 2019, y el 13 de marzo de 2019, el Tribunal declaró ha lugar a 19 de dichas objeciones globales, lo cual resultó en que miles de las evidencias de reclamos radicadas contra COFINA fueron rechazadas y suprimidas, y cientos de otros reclamos fueron reclasificados como radicados contra otros Deudores. El 12 de junio de 2019, el 24 de julio de 2019 y el 11 de septiembre de 2019 se atendieron 43 objeciones globales no sustantivas y 5 objeciones sustantivas a reclamos radicados contra el ELA, la ACT, el SRE y/o COFINA, además de una serie de objeciones individuales a reclamos radicados contra el ELA, el SRE o COFINA. El 30 de octubre de 2019 está previsto atender dos objeciones globales no sustantivas y cinco objeciones globales sustantivas a reclamos radicados contra el ELA, la ACT y el SRE. Sobre la base de las resoluciones y órdenes del Tribunal, más de 9000 reclamos que reivindicaban aproximadamente $43 billones en responsabilidad contra el ELA, la ACT, COFINA y el SRE fueron rechazados y serán retirados del registro de reclamos en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

15.     La Septuagésima sexta objeción global se radica de conformidad con los procedimientos enmendados relativos a objeciones globales del Tribunal.

## **OBJECIONES A EVIDENCIAS DE RECLAMOS**

16.     Los Procedimientos enmendados relativos a objeciones globales permiten a la ACT radicar una objeción global a varias evidencias de reclamos sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos enmendados relativos a objeciones globales.

17.     La Septuagésima sexta objeción global pretende que se rechacen, de conformidad con la regla 3007(d)(1) de las Reglas federales del procedimiento de quiebra y los Procedimientos enmendados relativos a objeciones globales, respectivamente, reclamos que están duplicados en

relación con una o varias Evidencias de reclamos principales de la ACT radicadas en el marco de las Causas conforme al Título III y/o pretenden recuperar montos por los que la ACT no tiene responsabilidad, porque los reclamos se basan en pagarés que ya han sido canjeados o cancelados.

18.    Los reclamos que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Cada reclamo identificado en el **Anexo A** del presente (conjuntamente, los "Reclamos que han de ser rechazados") pretende, en parte, recuperar montos por los que la ACT no tiene responsabilidad, porque los bonos que las demandantes presuntamente poseen ya han sido reembolsados total o parcialmente mediante un canje o una cancelación. Cada uno de los Reclamos que han de ser rechazados incluye, en parte, un número CUSIP vinculado con un Bono comprado o un Bono cancelado. En el caso de los Bonos comprados, la ACT ya ha reembolsado los bonos originales. Y en lo que respecta a los Bonos cancelados, la ACT reembolsó parte de los bonos originales y creó una cuenta de plica para liquidar el resto del principal y de los intereses sobre los bonos hasta su fecha de vencimiento o venta. La Notificación relativa a la cancelación y canje refleja que las fechas de vencimiento y/o canje en relación con cada uno de los Bonos cancelados ya han pasado. Notificación relativa a la cancelación y canje en Ex. B.   En consecuencia, "[t]odos los derechos otorgados a los tenedores [de los Bonos comprados y los Bonos cancelados] conforme a la Resolución [1998] [fueron] liberados y satisfechos". Notificación relativa a la cancelación y canje en 1. Por ende, puesto que los Bonos reembolsados y los Bonos comprados ya han sido reembolsados o cancelados, los tenedores de dichos bonos ya no pueden alegar un reclamo válido contra la ACT, por lo que esas partes de los Reclamos que han de ser rechazados deben ser rechazadas.

19.    Además, como se establece en el **Anexo A** del presente documento, los Reclamos que han de ser rechazados también alegan responsabilidad contra la ACT sobre la base de los bonos emitidos por la ACT. Dichas partes de los Reclamos que han de ser rechazados duplican

9

una o varias Evidencias de reclamos principales que, como se explicó anteriormente, fueron radicadas en el marco de la Causa de la ACT radicada conforme al Título III por el agente fiscal o fiduciario autorizado en relación con los bonos controvertidos. En consecuencia, si estas partes de los Reclamos que han de ser rechazados no son rechazadas, ello podría resultar en que las demandantes pertinentes obtengan una recuperación doble no justificada contra la ACT, en detrimento de otras partes interesadas de las Causas radicadas conforme al Título III. Los autores de los Reclamos que han de ser rechazados no se verán perjudicados por el hecho de que se rechacen estas partes duplicadas de sus reclamos, puesto que las responsabilidades relacionadas figuran en una o varias Evidencias de reclamos principales. Puesto que los Reclamos que han de ser rechazados solo contienen información duplicada o alegan obligaciones por las que la ACT ya no tiene responsabilidad, la ACT solicita que dichos reclamos sean rechazados en su totalidad.

20.     En apoyo de lo anterior, la ACT invoca la *Declaración de Jay Herriman en apoyo de la Septuagésima sexta objeción global (sustantiva) de la Autoridad de Carreteras y Transportación de Puerto Rico a Reclamos duplicados en los que se reclaman montos por los que la Autoridad de Carreteras y Transportación de Puerto Rico no tiene responsabilidad*, de fecha 24 de octubre de 2019, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

21.     De conformidad con los Procedimientos enmendados relativos a objeciones globales, la ACT notifica la presente Septuagésima sexta objeción global a) a los acreedores individuales objeto de esta Septuagésima sexta objeción global, b) al Síndico estadounidense, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de causas enmendados* núm. 9 [núm. ECF 7115-1]), disponibles en el sitio de causas del Deudor, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a la Septuagésima sexta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Septuagésima sexta objeción global y de la totalidad de los anexos adjuntos al presente se están

10

radicando con la presente objeción y se trasladarán a las partes. La ACT sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

22.    La presente Septuagésima sexta objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores a objetar a los Reclamos que han de ser rechazados o a cualesquiera otros reclamos sobre la base de los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objeto, a) admitir la validez de cualesquiera reclamos contra los Deudores; b) renunciar a los derechos de los Deudores a oponerse a cualquier reclamo sobre la base de los motivos que fuere; c) prometer o exigir el pago de ningún reclamo; d) solicitar o autorizar el otorgamiento de ningún acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o (a) renunciar a los derechos que asisten a los Deudores conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable, ni podrán interpretarse en ese sentido.

## AUSENCIA DE SOLICITUDES PREVIAS

23.    No se ha radicado ninguna solicitud de remedio previa a la presente Septuagésima sexta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

11

POR LO QUE la ACT solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda la ACT cualesquiera otros remedios que se consideren justos.

Fecha: 24 de octubre de 2019
      San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
Núm. USDC: 215205
Daniel J. Pérez-Refojos
Núm. USDC: 303909
Carla García Benitez
Núm. USDC: 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera como representante de la ACT*

12