## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>        Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 7419**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA")<br><br>        Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>**This document relates to the COFINA Title III case only and will be filed in the main case and COFINA Title III case.** |

## UNITED STATES' RESPONSE TO COFINA'S OBJECTION TO THE INTERNAL REVENUE SERVICE'S PROOFS OF CLAIM

The Court should deny the objection of the Puerto Rico Sales Tax Financing Corporation ("COFINA") to the Internal Revenue Service's proofs of claims (the "Objection"). This dispute relates to certain bonds issued by COFINA (the "COFINA Bonds"). The Internal Revenue Code ("IRC") entitled COFINA to a credit "with respect to each interest payment under such bond." 26 U.S.C. § 6431(a). Two subsequent subsections of § 6431 required the IRS to pay to COFINA a percentage of the "interest payable" under the bonds contemporaneously with every date when such interest was payable. 26 U.S.C. § 6431(b) and (d). After COFINA's PROMESA case was filed, COFINA continued to request payment of these credits even though the bondholders were

1

no longer entitled to interest payments due to 11 U.S.C. 502's disallowance of any claims for unmatured interest.  The United States contends that COFINA was not entitled to these payments and therefore is liable to the United States in the amount of all credit payments it received on account of interest that accrued post-petition but was never paid.

In order to resolve this dispute, the Court must answer the following questions:

(1) whether the credits COFINA was entitled to were based on–

(a) any "interest payment," as referred to in § 6431(a), that was actually made to bondholders, or

(b) the "interest payable" on the bonds, as referred to in § 6431(b); and if (b)

(2) whether "interest payable," as referred to in § 6431(b), means–

(a) the interest called for under the terms of the bonds; or

(b) the interest that was actually paid, if any, in light of the pending PROMESA case.

As will be explained below, the language of § 6431, its legislative history, and its underlying purpose all require that COFINA only be entitled to credits for interest actually paid to bondholders, not interest that was called for by the terms of the COFINA bonds but which was never paid.

## BACKGROUND

For the purposes of this contested matter, the United States does not dispute the factual contentions in the "Background" section of the Objection regarding the procedural history of these PROMESA cases or the general nature of the COFINA Bonds. [1]  The United States does

---

[1] The United States reserves its right to dispute any factual or legal assertions made in the Objection in future proceedings in these PROMESA cases.

wish to clarify, though, certain facts about COFINA's use of credit payments it received from the IRS.

COFINA asserts that all credit payments it received were deposited with BNY Mellon ("BNYM") pursuant to a court order dated May 30, 2017 (the "Interpleader Order"). These funds were ultimately paid out pursuant to COFINA's plan of adjustment (the "Plan"). The United States does not dispute these facts.

Where the United States and COFINA potentially part ways is over how to characterize those payments which BNYM made to bondholders pursuant to the plan. Specifically, should they be treated as principal or interest owed on the bonds? The United States believes these payments, which include all credit payments made by the Treasury to COFINA after the petition date, must be considered the repayment of principal owed under the bonds–not interest, and especially not post-petition interest. It is not clear if COFINA takes a contrary position, but since the issue is central to the United States' claims, any doubt on this question must be resolved.

The United States' position is based on the Plan itself. The Plan defines "Bond Claim" as claims on account of certain securities issued by COFINA with the amount of the claims calculated based on outstanding principal plus "any accrued and unpaid interest thereon … as of, up to, but not including, the Petition Date." Section 19.12 of the Plan provides that distributions will go first to principal then to interest. It is the United States' understanding that the total amount paid to holders of the COFINA Bonds was less than the outstanding principal owed. Thus, it appears that holders of the COFINA Bonds were not entitled to any post-petition interest on the COFINA Bonds, nor can any portion of the payments they received under the Plan be attributable to post-petition interest.

COFINA may argue that Section 19.12 of the Plan also states that COFINA's treatment

3

of any distributions for its own tax purposes is not binding on any creditor as to their personal taxes. That is of cold comfort to the IRS and largely irrelevant given the practical realities of the situation. If a holder of a COFINA Bond were to report the distribution as interest, it would be subject to income tax. If the bondholder reported it as principal, it would not be subject to income tax. It is extremely hard to imagine why a bondholder would take a position contrary to COFINA's when doing so would expose them to liability of up to 39.6% of any amount they reported as interest. The Court therefore should proceed on the assumption that none of the credits received by COFINA related to interest accruing post-petition was actually paid out as interest to the holders of the COFINA Bonds.

## ARGUMENT

The Objection should be denied. The IRS's claims are valid because COFINA applied for and received credits to which it was not entitled. It did so based on a strained interpretation of a specific subsection in the applicable statute. While superficially plausible, COFINA's reading of § 6431 is fundamentally unreasonable. The Court should reject its preferred interpretation, find that COFINA was not entitled to the credits it sought, and therefore allow the IRS's claims.

The statute at the heart of this dispute is the former version of 26 U.S.C. § 6431.[2] Subsection (a) provided that the issuer of certain bonds, such as the COFINA Bonds, "shall be allowed a credit with respect to each interest payment under such bond which shall be payable by the Secretary [of the Treasury] as provided in subsection (b)." That subsection provided that "[t]he Secretary shall pay (contemporaneously with each interest payment date under such bond)

---

[2] The version discussed here was repealed by Pub. L. 115-97, Title I, § 13404(b), Dec. 22, 2017, 131 Stat. 2138.

4

to the issuer of such bond … 35 percent of the interest payable under such bond on such date."
§ 6431(b).[3]

COFINA's objection essentially asks the Court to resolve the dispute based solely on
§ 6431(b).  COFINA contends that, based on that subsection: (1) it was entitled to credits in the
amount of 35% of the "interest payable" on each date payment was due under the terms of the
bond; and (2) "interest payable" only means interest called for under those terms, not interest that
would actually be paid.  COFINA therefore believes that it was entitled to the credits even if: (1)
at the time COFINA requested the credits, it never intended to use the funds to make the interest
payments called for by the COFINA Bonds; and (2) under § 502(b) of the Bankruptcy Code,
COFINA was not legally required ever to make the interest payments.[4]

The United States believes this is an unreasonable interpretation that is inconsistent with
the language of § 6431, the legislative history of the provision, and its underlying purpose.
Under a proper reading of § 6431, COFINA was only entitled to a credit in the amount of interest
it was actually going to pay and did pay.  The IRS's claims, which represent credit payments for
interest that was never paid, should be allowed.

Statutory Language

COFINA is correct that the Court's first step should be analyzing the statutory language

---

[3] For certain of the COFINA Bonds, the applicable rate would have been higher pursuant to 26
U.S.C. § 1400U-2.

[4] Section 502(b)(2) of the Bankruptcy Code requires a bankruptcy court to disallow any claim for
unmatured interest, which would include interest payable under the terms of the COFINA Bonds
for interest payment dates after the filing of COFINA's PROMESA case.  This provision of the
Bankruptcy Code was made applicable to PROMESA cases by 48 U.S.C. § 2161(a).  As such,
COFINA was not legally obligated to pay interest which, under the terms of the COFINA Bonds,
first became payable after its PROMESA case commenced.  Indeed, it *could not* legally pay
them.  The proofs of claim mentioned in the Objection relate solely to interest payments due
under the COFINA Bonds after COFINA's case commenced.

at issue.  "Statutory interpretation begins with the language of the statute. '[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the texts is not absurd—is to enforce it according to its terms.'"  *In re Reswick*, 446 B.R. 362, 367 (B.A.P. 9th Cir. 2011) (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)).  Whether the language of a statutory provision is plain, though, can be a complicated question.

The Court cannot simply look at specific words alone, as COFINA suggests it do with the term "interest payable" in § 6431(b).  Statutory interpretation is a "holistic endeavor."  *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S 365, 371 (1988).

> The definition of words in isolation … is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).  *Accord Yates v. United States*, 135 S. Ct. 1074, 1081–82 (2015) ("Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words.  Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'") (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).  If § 6431(b)'s requirement for the Treasury to pay over the "interest payable" under a bond is read in conjunction with § 6431(a)'s tying of the allowed amount of the credit to each "interest payment," its meaning becomes clear and is incompatible with COFINA's interpretation.

———

The Court should start with § 6431(a), which is the provision that actually creates the credit and which refers to § 6431(b), then interpret § 6431(b) in light of it.  Subsection (a) provides that "the issuer of [a qualified] bond shall be allowed a credit *with respect to each*

6

*interest payment* under such bond* which shall be payable by the Secretary as provided in

subsection (b)."   *Black's* defines "payment" as–

> (1) "Performance of an obligation by the delivery of money or some other valuable thing
>
> accepted in partial or full discharge of the obligation"; or
>
> (2) "The money or other valuable thing so delivered in satisfaction of an obligation."

*Black's Law Dictionary* (11th ed. 2019).   Subsection (b) then requires the IRS to "pay

(*contemporaneously with each interest payment date under such bond*) to the issuer of such bond

… 35 percent of the interest payable under such bond on such date."   "Interest payment date" is

defined as "each date on which interest is payable by the issuer under the terms of the bond."

§ 6431(d).

When all relevant subsections of § 6431 are read together, it becomes clear that

COFINA's position is unreasonable.   It is § 6431(a) that creates the right to the credit and

explicitly links it to an "interest payment."   The plain meaning of "payment" is the actual

satisfaction of a monetary obligation by the delivery of the money owed, not the initial obligation

to pay money.   Section 6431(b) does not create any actual entitlement; it merely establishes the

mechanism for how the credit tied to the actual payment of interest, as authorized by § 6431(a),

should be paid to the issuer.   In order to allow the issuer to use the actual funds from the

Treasury to make an interest payment, the provision requires that the credit be paid at the time

the interest is owed–that is, when it is "payable."   But that does not mean the credit arises simply

because a bond calls for payment on a certain date.   That reading would render § 6431(a) and its

reference to each "interest payment" surplusage.

An analogy to a more familiar situation–construction contract disputes–will illustrate the

difference.   Suppose A promises to construct a building for B within a year in return for B's

promise to pay $120,000.  The contract requires B to make monthly progress payments of
$10,000.   After nine months, A has yet to break ground and cannot provide assurance that he
will ever do so, but B has already made 9 progress payments.  If B were to sue A for breach of
contract, it is highly unlikely that a court would allow A to retain the $90,000 in progress
payments.  The provision requiring progress payments does not create a right to payment
independent of A's obligation to construct the building.  Instead, it creates a mechanism for
satisfaction of B's obligation to pay $120,000, which itself is tied to A's obligation to complete
the building.  Its purpose is to prevent either party from taking advantage of the sequential nature
of performance that would exist under a simpler agreement which made full payment due either
when the parties entered into the contract or only when the building was complete.

In the present case, § 6431(a) is like B's obligation to pay $120,000, and § 6431(b) is like
B's obligation to make monthly progress payments.  The latter creates no independent reciprocal
right to a credit, let alone a right based on a potentially unsatisfied obligation to pay interest due
under a bond.  It merely establishes a mechanism to ensure that when a credit is allowable
because the issuer is actually going to pay interest owed, the credit is paid at the time the issuer
needs it.

_____

If, instead of starting with § 6431(a), the Court agrees with COFINA that it should start
with the dictionary definition of "payable" as used in § 6431(b), it will ultimately end up in the
same place–back with § 6431(a).  COFINA cites the following passage from a decision
interpreting the word "payable" elsewhere in the IRC.

> English dictionaries agree on the meaning of payable, defining it to mean inter
> alia "[t]hat may, can, or should be paid," "due," or "capable of being paid."
> Black's Law Dictionary provides the following definition of payable:
> Capable of being paid; suitable to be paid; admitting or demanding

8

> payment; justly due; legally enforceable. A sum of money is said to be
> payable when a person is under an obligation to pay it. Payable may
> therefore signify an obligation to pay at a future time, but, when used
> without qualification, the term normally means that the debt is payable at
> once, as opposed to "owing."

*Cathey v. United States*, 35 F.Supp.2d 518, 520 (S.D. Tex. 1998) (quoting various dictionaries),

*aff'd sub nom. Cathey v. U.S. I.R.S.,* 200 F.3d 814 (5th Cir. 1999).  That decision also cites

another legal dictionary defining the term as

> [d]ue or to be paid.... To be paid, rather than "may be paid." ... A word which in
> itself leaves no option or privilege as to time or manner of payment.... Likely or
> able to yield a profit; profitable; as, payable wash dirt; a payable commercial
> undertaking.

*Id*. (quoting *Ballentine's Law Dictionary* 925 (William S. Anderson ed., 3d ed. 1969)). [5]

Based on the definitions given in COFINA's preferred source, it is clear that the word

"payable" is ambiguous or at least rather vague.  One version of the definition given by *Black's*–

"[a] sum of money is said to be payable when a person is under an obligation to pay it"–is rather

expansive, since it does not clarify what kind of obligations are contemplated.  In contrast, one

definition in *Black's*–"legally enforceable"–and another in *Ballentine's*–"[a] word which in itself

leaves no option or privilege as to the time and manner of payment"–are more limited.  They

thus restrict the concept of "payable" to obligations that *must* be paid *as a matter of law*.

---

[5] The United States acknowledges that the court in *Cathey* held that "[t]he plain meaning of
'payable' indicates a future action or a present obligation, not a past payment," but this decision
is not controlling, persuasive, or even relevant.  Coming from the Fifth Circuit, it obviously is
not binding on the Court.  Nor need it be persuasive.  "[The Supreme Court has] several times
affirmed that identical language may convey varying content when used in different statutes,
sometimes even in different provisions of the same statute."  *Yates v. United States*, 135 S. Ct. at
1082 (collecting cases).  Here, the provisions arise in very different contexts.  Section 6334
concerns the collection of delinquent taxes, whereas § 6431 relates to payments of credits *by the
IRS*.  Finally, the case addressed a fundamentally different question–whether "payable" referred
to future obligations or obligations that had already been satisfied through payment.  The
question in this case is not whether it refers to future obligations, but whether it refers to future
obligations that are not legally enforceable and will never be satisfied through payment.

Case:17-03283-LTS   Doc#:8993   Filed:10/25/19   Entered:10/25/19 13:55:47   Desc: Main
Document   Page 10 of 15

This distinction is crucial to this case.  The COFINA bonds set forth an obligation to pay interest.  Based on the broad definition of payable, which does not distinguish between different types of obligations, this interest may be said to be "payable" under the bonds.  It may even be said to be a legal obligation, in the sense that the interest is owed under state law.  However, under the narrow definition, which requires that the obligation be "legally enforceable," the interest is not payable because PROMESA rendered the prior legal obligation to pay post-petition interest unenforceable.

Given the ambiguity, the Court thus must look beyond § 6431(b), since "payable" need "not extend to the outer limits of its definitional possibilities"–it could be confined to the narrower notion of legally enforceable obligations.  And where should it look to next under established principles of statutory construction?  The rest of the provisions in § 6431, the most obvious being § 6431(a).  As explained above, that subsection makes clear that an issuer is only entitled to a credit with respect to an "interest payment" that was actually made.

_____

The Court thus should find that under the plain language of § 6431(a), COFINA was only entitled to credits for interest payments actually made to bondholders on account of post-petition interest.  Since it was not actually required to pay interest based on 11 U.S.C. § 502 and its payments to bondholders were only on account of principal owed and perhaps a small amount of prepetition interest, it never made any interest payments that would have entitled it to credits.  Alternatively, if the Court wishes to limit its analysis to § 6431(b), it should find that "interest payable" means interest COFINA was legally obligated to pay.  Since, again, it was not legally obligated to pay post-petition interest under 11 U.S.C. § 502, the Court should find that no interest was "payable" under § 6431(b), and therefore COFINA was not entitled to any credit

payments.  Accordingly, the IRS's claims based on those improperly requested credits should be

allowed.

Legislative History

If, after analyzing the language of § 6431, the Court still believes the provision is unclear,

it should turn to the legislative history.  The legislative history and underlying purposes of a

statute may be consulted in appropriate circumstances.

> "[C]ourts must presume that a legislature says in a statute what it means and
> means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249,
> 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (collecting authorities). Thus, if
> the statutory language is unambiguous, the court need not resort to legislative
> history to construe the plain text of the statute. "Where statutory language is
> ambiguous, however, courts look to the statute's 'historical context, its legislative
> history, and the underlying policies that animate its provisions' to determine
> legislative intent."  *Marrama v. Citizens Bank of Mass. (In re Marrama)*, 430 F.3d
> 474, 480 (1st Cir. 2005) (quoting *United States v. Yellin (In re Weinstein)*, 272
> F.3d 39, 48 (1st Cir. 2001)), aff'd, 549 U.S. 365 (2007)).

*In re Montreal, Maine & Atl. Ry., Ltd.*, 558 B.R. 473, 491 n. 16 (B.A.P. 1st Cir. 2016).

What does the legislative history say?  In explaining the effect of the provision, the

House Conference Report states:

> Under the special rule for qualified bonds, in lieu of the tax credit to the holder,
> the-issuer is allowed a credit equal to 35 percent of each interest payment made
> under such bond. If in 2009 or 2010, the issuer elects to receive the credit, in the
> example above, for the State or local issuer's bond to sell at par, the issuer would
> have to issue the bond with a $1,000 interest coupon. The taxpayer who holds
> such a bond would include $1,000 on interest in his or her income. From the
> taxpayer's perspective the bond is the same the taxable bond in the example
> above [describing the default system in which the taxpayer receives the credit]
> and the taxpayer would be willing to pay par for the bond. However, *under the
> provision the State or local issuer would receive a payment of $350 for each
> $1,000 coupon <u>paid</u> to bondholders*. (The net interest cost to the issuer would be
> $650.)

155 Cong. Rec. H1307-03, H1463 (emphasis added).  It goes on to clarify that "[t]he payment by

the Secretary is to be made contemporaneously *with the interest payment made by the issuer*, and

11

may be made either in advance or as reimbursement." *Id.* (emphasis added). Nowhere does it suggest that the payment of credits is to be independent of whether interest payments are actually being made. To the contrary, its statements that: (1) the hypothetical issuer would receive $350 from the Treasury for each $1,000 "paid" to bondholders; and (2) the credits "may be made either in advance or as a reimbursement" make clear that credit payments were only intended to be paid by the IRS on account of interest actually paid to bondholders.

Statute's Underlying Purpose

COFINA's interpretation of § 6431 is inconsistent with the statute's underlying purpose. Like other tax credits for bonds intended to finance activities beneficial to the public and the exemption from gross income for interest on traditional state and local bonds, the credits created by § 6431 are intended to lower borrowing costs (interest) for the issuers. *See* 155 Cong. Rec. H1307-03, H1463 (explaining how the § 6431 credits result in a net interest cost for the issuer that is 65% of the coupon actually paid to bondholders). But COFINA's theory, under which it is entitled to receive the credits even when it will not use the proceeds to pay interest and instead will use them to pay principal, essentially turns an interest subsidy into a partial guaranty of principal.

That is not what Congress intended. Congress knows how to guaranty payment of the principal portions of loan obligations. It does so in all sorts of contexts, such as student loans, farm loans, and Small Business Association loans. It did not choose to guaranty the payment of principal on the type of bonds in this case, however. COFINA thus should not be permitted to use payments intended to lower its interest costs to pay principal to bondholders; that would be counter to the underlying purpose of this statute.

At this point, it is appropriate to go back to the earlier analysis of the language of the

statute.  Again, the United States contends that § 6431(a) establishes the right to a credit only with respect to "any interest payment" and that term refers to interest actually paid.  Section 6431(b), with its reference to "interest payable," only establishes the mechanism by which the credit conditioned on actual payment of interest is transferred to the issuer.  The plain language of the provision thus shows that entitlement to the credit is contingent on actual payment of the interest.

If the Court agrees with COFINA, however, that it is § 6431(b) that establishes the right to a credit in the amount of the "interest payable" under the bonds, it should interpret that subsection in light of the statute's underlying purpose–lowering the issuer's borrowing costs by subsidizing its interest payments.  That is accomplished by assigning to the word "payable" the narrow definition discussed above, which restricts the word to amounts owed on legally enforceable obligations.  If, as in this case, the issuer has no legal obligation to pay interest on its bonds, the statute's purpose is not achieved by requiring the Treasury to pay credits anyways.  Doing so only gives bondholders, whose principal was not guaranteed by the Treasury, a windfall at the expense of their fellow taxpayers.  Thus, to the extent the Court believes that this dispute is solely governed by § 6431(b), the Court should still find that COFINA was only entitled to credits for interest payments that were "payable" in the sense that it was legally required to make them.[6]  Since COFINA was not required to pay post-petition interest and did

---

[6] The Court could also reach this result by employing an even broader interpretation of "payable" than the one preferred by COFINA.  One definition of "payable" in *Black's* is "to be paid."  One definition of the verb "to be" is "an appointed or arranged future action; (hence also) expressing necessity, obligation, duty, fitness or appropriateness." *Oxford English Dictionary Online* ("be" definition 18(c)), https://www.oed.com/view/Entry/16441?rskey=ch1C4v&result=4#eid (last visited October 24, 2019).  In this usage, "to be" can refer to something that will definitely happen in the future or is unequivocally expected to happen, with the only contingency being the passage of time–e.g., "I am to be married tomorrow."  Using this construction, "payable" could mean that which inevitably will paid, not just that which should (but will not) be paid.

13

not pay any such interest, the Court should find that it was not entitled to the credits at issue here.

## CONCLUSION

Based on the analysis above, COFINA was not entitled to credits under § 6431 for interest payments which came due under the terms of the COFINA Bonds after the petition date but which it was not obligated to pay by operation of 11 U.S.C § 502.  COFINA's arguments to the contrary are inconsistent with the statute, its legislative history, its underlying purpose, and basic common sense.  This Court should not adopt its interpretation, since doing so gives an unwarranted benefit to bondholders at the expense of innocent taxpayers.

WHEREFORE THE UNITED STATES OF AMERICA RESPECTFULLY REQUESTS that the Court deny COFINA's objection to the IRS's proofs of claim.


Dated:  October 25, 2019

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Ward W. Benson*
WARD W. BENSON
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044
Telephone: 202-514-9642
Email: ward.w.benson@usdoj.gov
Attorney Bar No: G02102

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2019, I filed the foregoing RESPONSE with the clerk

of the court using the CM/ECF system, which will send notification of such filing to all parties

appearing in said system.


/s/ Ward W. Benson
WARD W. BENSON