UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

**COBRA ACQUISITIONS LLC'S LIMITED OBJECTION
TO THE JOINT MOTION OF PUERTO RICO ELECTRIC
POWER AUTHORITY AND AAFAF FOR ORDER APPROVING
<u>SETTLEMENT EMBODIED IN THE RESTRUCTURING SUPPORT AGREEMENT</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Cobra Acquisitions LLC ("Cobra"), by and through its undersigned counsel, hereby files this limited objection (the "Objection") to the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Docket No. 1235] (the "9019 Motion"), which seeks approval of all settlements embodied in a Definitive Restructuring Support Agreement (the original and each amended version, the "RSA"). In support hereof, Cobra respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Court is well aware of the destruction caused by Hurricanes Irma and Maria in 2017. The entity responsible for Puerto Rico's power grid, and thus its post-storm restoration, is The Puerto Rico Electric Power Authority ("PREPA"). Since July 2017, PREPA has been the subject of a voluntary petition for relief pursuant to Title III, section 304(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") (the "Title III Case").

2. PREPA awarded Cobra two postpetition contracts for the restoration of Puerto Rico's hurricane-devastated power grid (collectively, the "Contracts"). PREPA and Cobra entered into an initial $200 million postpetition Emergency Master Service Agreement for PREPA's Electrical Grid Repairs – Hurricane Maria in October 2017 to aid in the restoration of the power grid and the rebuilding of the power infrastructure. The contract amount eventually was increased to $945 million. PREPA awarded Cobra a second postpetition contract, in the amount of up to $900 million, in response to a subsequent request for proposals process. The second postpetition contract—the Master Services Contract for PREPA's Electrical Grid Repairs - Hurricane Maria, dated May 26, 2018—called for Cobra to perform all of the work necessary to

2

restore and reconstruct Puerto Rico's power grid. In return for Cobra providing the services contemplated by the Contracts, PREPA agreed to pay Cobra for its services and materials at pre-negotiated rates and at specific times, in each case as set forth in detail in the Contracts.

3. As detailed in *Cobra Acquisitions LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Docket No. 8789] (the "Administrative Expense Payment Motion"), despite numerous, extreme difficulties and costly expenses, Cobra successfully complied with its obligations under the Contracts by repairing and replacing the electrical grid in Puerto Rico. Cobra's remarkable efforts led to the restoration of Puerto Rico's electrical grid by April 2019. However, much of this effort went, and continues to go, uncompensated. In sum, PREPA has not met its postpetition contractual obligations to Cobra. Cobra invoices in excess of $216 million remain unpaid and interest continues to accrue on the unpaid balance at over $2 million per month.

4. Consequently, through the Administrative Expense Payment Motion, Cobra has sought an order allowing and directing the immediate payment of Cobra's unpaid invoices in the aggregate amount of $216,116,471.93 (the "Outstanding $216 Million Obligation") as a postpetition administrative expense claim (plus contractual interest). A substantial portion of the amounts owed to Cobra were never disputed by PREPA prior to the filing of the Administrative Expense Payment Motion and clearly are due and payable. To the extent invoices were timely disputed in accordance with the terms of the Contracts, Cobra has provided additional backup documentation to substantiate its claims.[2]

5. Although PREPA intended and expected to be reimbursed by the Federal Emergency Management Agency ("FEMA") pursuant to the Stafford Act for the payments

---

[2] The Administrative Expense Payment Motion is now set for a status conference on January 29, 2020.

required to be made to Cobra pursuant to the Contracts, the Contracts solely are between PREPA and Cobra and obligate PREPA to pay Cobra regardless of whether PREPA receives FEMA funding. Now, however, it appears that PREPA has acknowledged that it is administratively insolvent absent obtaining funding from FEMA. *See Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expenses Claims* [Docket No. 8838] (the "Extension Motion") ¶¶ 20, 28, fn. 6 ("PREPA was and remains financially incapable of undertaking the extension grid repairs necessary after Hurricane Maria without public assistance from FEMA.").

6. On May 10, 2019, PREPA filed the 9019 Motion, which seeks approval of a settlement with a number of prepetition PREPA bondholders and bond insurers (the "Proposed Settlement"). The Proposed Settlement, among other things, provides for: (i) the allowance of approximately $8.25 billion in bond claims held by the PREPA bondholders that support the Proposed Settlement (the "Supporting Bondholders");[3] (ii) the accrual of administrative claims in favor of the Supporting Bondholders on account of interest in respect of new secured bonds contemplated to be provided to the Supporting Bondholders on account of their prepetition claims;[4] (iii) certain monthly cash settlement payments to the Supporting Bondholders on account of such new administrative claims to be paid from a new transmission charge to be imposed on PREPA ratepayers; and (iv) reimbursement on a monthly basis of the fees and

---

[3] The allowed claims in favor of the Supporting Bondholders are to be allowed in a reduced secured amount and provided through replacement secured bonds.

[4] PREPA estimates that, "[a]ssuming all Bondholders joined [the RSA] on May 1, 2019, the administrative claim that will accrue until July 1, 2020 (if no [offsetting settlement payments are made]) will be approximately *$394 million*." *See Supplemental Memorandum of Law and Facts in Support of Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitation Periods* [Docket No. 1425] ¶ 32, fn. 9 (emphasis added). The accrued administrative claims are payable in new replacement bonds or cash in the Government Parties' discretion. *Id.*

4

expenses of the Supporting Bondholders' and bond insurer's professionals through the effective date of the contemplated plan of adjustment.[5] The Supporting Bondholders, in return, have agreed to accept the allowance of their prepetition claims in a reduced amount, dismiss pending litigation seeking a receiver over PREPA, and support a plan of adjustment that incorporates the terms of the Proposed Settlement.

7. Despite its statement that it has no ability to pay its postpetition administrative obligations to Cobra absent financing from FEMA, PREPA nevertheless seeks approval of the Proposed Settlement that would result in additional significant administrative expense obligations including, among other things, current payment of new, legally unsupportable administrative expenses and professional fees for the benefit of the Supporting Bondholders. In short, absent PREPA demonstrating its administrative solvency and ability to pay Cobra's outstanding invoices in full, no administrative claims should be paid current whether contemplated by the Proposed Settlement or otherwise.[6] In fact, the Court likely should prevent PREPA's professionals from being paid current in light of PREPA's current financial position.

**LIMITED OBJECTION**

8. In approving a settlement under Bankruptcy Rule 9019, courts generally look to four factors:

---

[5] PREPA has agreed to reimburse certain fees and expenses accruing from July 23, 2018 (with respect to the Ad Hoc Group) and August 1, 2018 (with respect to Assured) through the effective date of the contemplated plan of adjustment. *See* RSA § 22(a)-(b). PREPA also has agreed to reimburse up to $25 million of the reasonable fees and reasonable expenses of the Ad Hoc Group for the period prior to July 23, 2018 on the effective date of the contemplated plan of adjustment. *Id.*

[6] On September 19, 2019, Whitefish Energy Holdings, LLC ("Whitefish") filed the *Limited Objection of Whitefish Energy Holdings, LLC to the Joint Motion of PREPA and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement* [Docket No. 1641] (the "Whitefish Objection"). Whitefish contends that it is also owed significant amounts—$126,880,964.21—for disaster relief assistance and that such amounts are unpaid administrative expenses. The Whitefish Objection similarly notes the potentially problematic nature of building the administrative claim pool without a showing by PREPA and the other parties to the RSA that such administrative claims have a probability of being paid.

    (i)      The probability of success of the litigation being compromised;

    (ii)     The difficulties, if any, to be encountered in the matter of collection;

    (iii)    The complexity of the litigation involved, and the expense, inconvenience and delay attending to it; and

    (iv)    The paramount interest of creditors and a proper deference to their reasonable views.

*See ARS Brook, LLC v. Jalbert (In re Servisense.com, Inc.)*, 382 F.3d 68, 72 (1st Cir. 2004) (citing *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995)). While Cobra does not necessarily have an issue with the Proposed Settlement generally and understands that the Proposed Settlement settles complex issues that likely would require lengthy and costly litigation, the aspects of the Proposed Settlement that provide Supporting Bondholders with pre-plan of adjustment consideration, current cash distributions, accrual of administrative claims on prepetition claims and payment of professional fees should not be approved at this time. Indeed, so long as interested parties in the Title III Case, including Cobra, have not received payment for beneficial, postpetition services and are entitled to payment on large administrative claims against PREPA,[7] paying money out of what currently appears to be an administratively insolvent estate in the form of monthly cash settlement payments on prepetition claims prior to confirmation of any plan of adjustment,[8] has no foundation in the law and would create a class of prepetition claimants with super priority administrative expense status ahead of legitimate administrative claims.[9]

---

[7] *See also Whitefish Objection, supra* note 2.

[8] *See, e.g.*, RSA §§ 1(a)(xii), 1(a)(c), 1(a)(cii), 2(c)(iv), 2(d), 2(e), 6(c), 9.

[9] Bankruptcy Code section 503 does not address the question of when an administrative expense claim is to be paid; instead, the timing of payment is left in the court's discretion, and courts have recognized that, when an estate may not be able to pay all administrative expenses in full, a court should prohibit distributions prior to confirmation in order to ensure an orderly and equal distribution among creditors. *See, e.g., In re Colortex*

9. PREPA has the burden of persuading the Court that the Proposed Settlement is reasonable and in the best interest of the estate. As it stands, the structure of the Proposed Settlement—which converts prepetition debt into postpetition administrative expense claims entitled to current interim payments, all before a plan of adjustment is confirmed and before true postpetition administrative expense claims are paid in full—should not be approved by this Court without a demonstration that PREPA is and will remain administratively solvent. *See* 48 U.S.C. § 2174(b)(4) (requiring payment of administrative claims in full in order for PREPA to confirm a plan of adjustment); *In re Greenacre*, 103 B.R. 1, 5 (Bankr. D.Me. 1989) (noting the burden of proof and that the compromise must be in the best interest of the estate); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D.R.I. 1986) (same); *see also In re C.P. DEL CARIBE, INC.,* 1992 Bankr. LEXIS 2510, at *18-19 (Bankr. D. P.R. 1992) (denying approval of a settlement where settling creditors would be paid before creditors of the same rank and priority and where settlement proponents could not explain why such treatment was appropriate).

---

*Industries, Inc.*, 19 F.3d 1371, 1384 (11th Cir. 1994); *In re Verco Industries*, 20 B.R. 664, 665 (9th Cir. BAP 1982); *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002); *In re Baptist Medical Center of New York, Inc.*, 52 B.R. 417, 421 (E.D.N.Y. 1985); *In re Standard Furniture*, 3 B.R. 527, 532 (Bankr. S.D. Cal. 1980).

**CONCLUSION**

For the foregoing reasons, Cobra respectfully requests in order for the Court to approve the 9019 Motion and the Proposed Settlement that PREPA be required to (i) (x) prove that it is administratively solvent and that the Proposed Settlement will not render it otherwise or (y) provide some form of assurance, in the form of a letter of credit, reserve or escrow, to fund Cobra's Outstanding $216 Million Obligation, plus contract rate interest, in full, in cash and (ii) grant Cobra such other such relief as is just, proper and equitable.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 25th day of October 2019.

| REICHARD & ESCALERA, LLC | AKIN GUMP STRAUSS HAUER & FELD LLP |
|---|---|
| */s/ Rafael Escalera Rodríguez* <br> Rafael Escalera Rodríguez <br> USDC-PR No. 122609 <br> escalera@reichardescalera.com | */s/ Thomas P. McLish* <br> Thomas P. McLish (*pro hac vice*) <br> Scott M. Heimberg (*pro hac vice*) <br> Allison S. Thornton (*pro hac vice*) <br> 2001 K Street, N.W. |
| */s/Sylvia M. Arizmendi* <br> Sylvia M. Arizmendi <br> USDC-PR No. 210714 <br> arizmendis@reichardescalera.com | Washington, DC 20006 <br> Tel: (202) 887-4000 <br> Fax: (202) 887-4288 <br> Email:  tmclish@akingump.com <br>             sheimberg@akingump.com |
| */s/ Alana Vizcarrondo-Santana* <br> Alana Vizcarrondo-Santana <br> USDC-PR No. 301614 <br> vizcarrondo@reichardescalera.com | athornton@akingump.com <br> and <br><br> Ira S. Dizengoff (*pro hac vice*) <br> Philip C. Dublin (*pro hac vice*) |
| */s/Gustavo A. Pabón-Rico* <br> Gustavo A. Pabón-Rico <br> USDC-PR No. 231207 <br> pabong@reichardescalera.com | Stephen M. Baldini (*pro hac vice*) <br> One Bryant Park <br> New York, New York 10036 <br> Telephone: (212) 872-1000 <br> Facsimile: (212) 872-1002 |
| 255 Ponce de León Avenue <br> MCS Plaza, 10th Floor <br> San Juan, PR 00917-1913 <br> Telephone: (787) 777-8888 | Email: idizengoff@akingump.com <br>            pdublin@akingump.com <br>            sbaldini@akingump.com <br><br> *Attorneys for Cobra Acquisitions LLC* |