**Objection Deadline: November 26, 2019, 4:00 pm AST**
**Hearing Date: December 11, 2019, 9:30 am AST**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 <u>CONCERNING COMMONWEALTH ASSETS</u>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................ 1

JURISDICTION ..................................................................................................... 2

RELEVANT FACTUAL BACKGROUND.................................................................. 2

RELIEF REQUESTED............................................................................................. 4

BASIS FOR RELIEF REQUESTED .......................................................................... 5

I.      Rule 2004 Entitles Ambac to Broad Discovery Concerning
        the Financial Condition of the Debtor. .................................................. 5

II.     Ambac Must Have Information Regarding The
        Commonwealth's Assets In Order To Meaningfully
        Participate In The Resolution Of These Title III Cases ......................... 8

CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1.......... 10

NOTICE................................................................................................................ 11

NO PRIOR REQUEST FOR RELIEF........................................................................ 11

CONCLUSION...................................................................................................... 11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Barnwell Cty. Hosp.*,
471 B.R. 849 (Bankr. D.S.C. 2012) ...................................................10

*In re China Fishery Grp. Ltd.*,
2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ...........................6, 8

*In re Coffee Cupboard, Inc.*,
128 B.R. 509 (Bankr. E.D.N.Y. 1991).................................................7, 9

*In re Drexel Burnham*,
123 B.R. (Bankr. S.D.N.Y. 1991)......................................................6, 8, 9

*ePlus, Inc. v. Katz (In re Metiom, Inc.)*,
318 B.R. 263 (S.D.N.Y. 2004)...............................................................7

*Freeman v. Seligson*,
405 F.2d 1326 (D.C. Cir. 1968) .............................................................7

*In re Gawker Media LLC*,
2017 WL 2804870 (Bankr. S.D.N.Y. 2017) .......................................7, 8

*In re Hilsen*,
2008 WL 2945996 ...............................................................................7, 9

*In re Hughes*,
281 B.R. 224 (Bankr. S.D.N.Y. 2002)....................................................7

*In re Ionosphere Clubs, Inc.*,
156 B.R. 414 (Bankr. S.D.N.Y. 1993)..................................................6, 7

*In re Johns-Manville Corp.*,
36 B.R. 743 (Bankr. S.D.N.Y. 1984).......................................................6

*Lorber v. Vista Irrigation Dist.*,
127 F.2d 628 (9th Cir. 1942) .................................................................10

*In re Recoton Corp.*,
307 B.R. 751 (Bankr. S.D.N.Y. 2004)..................................................7, 9

*In re Summit Corp.*,
891 F.2d 1 (1st Cir. 1989)........................................................................6

*In re Velo Holdings Inc.*,

472 B.R. 201, 211 (Bankr. S.D.N.Y. 2012) ...........................................................10

*In re the Financial Oversight and Management Board for Puerto Rico, as
Representative of the Commonwealth of Puerto Rico,*
No. 17-BK-3283-LTS (D.P.R. May 3, 2017) ...........................................................3

*In re Youk-See,*
450 B.R. 312 (Bankr. D. Mass. 2011) ..............................................................6, 8

**Statutes**

11 U.S.C § 105(a) ..................................................................................................8

11 U.S.C. § 1109(b) ..............................................................................................6

28 U.S.C. § 1331 ...................................................................................................2

28 U.S.C. § 1391(b) ..............................................................................................2

48 U.S.C. §§ 2121(a), (b)(1) .................................................................................3

48 U.S.C. § 2170 ...................................................................................................5

32 L.P.R.A. § 781 ..................................................................................................9

PROMESA § 206(a) ..............................................................................................9

PROMESA § 301(a) ..............................................................................................9

PROMESA § 304(a) ..............................................................................................3

PROMESA § 306(a) ..............................................................................................2

PROMESA § 307(a) ..............................................................................................2

PROMESA § 310 ................................................................................................1, 5

PROMESA § 601(f) ...............................................................................................9

**Other Authorities**

*2019 Fiscal Plan for Puerto Rico: Restoring Growth and Prosperity* (available at
https://oversightboard.pr.gov/documents/) ...........................................................3

Fed. R. Bankr. P. §§ 2004 ............................................................................ *passim*

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding by Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Ambac Assurance Corporation ("Ambac") respectfully submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), to take discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) PROMESA; and (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF").  In support of this Motion, Ambac respectfully states as follows:

## PRELIMINARY STATEMENT

1.      On September 27, 2019, the Oversight Board filed a Plan of Adjustment (the "Plan") and Disclosure Statement on behalf of the Commonwealth.  *See* Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, *et al.* (Dkt. No. 8765); Disclosure Statement for the Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority (Dkt. No. 8766).

2.      By this motion, Ambac broadly seeks to understand the full range of Commonwealth assets available to repay creditors of the Commonwealth and its instrumentalities. More specifically, Ambac's document requests seek information that will allow Ambac and other similarly situated creditors to understand the extent of the assets held by the Commonwealth and its instrumentalities, including the identity of any property interests, any sales, alienation, or encumbrances of any property, and the flow of funds resulting from any sale, alienation, or encumbrances of property.

3.     Ambac and other similarly situated creditors cannot evaluate the Plan without complete transparency into the Commonwealth's financial condition, which includes transparency into the actual assets that make up the Commonwealth's estate and the ability to monetize these assets.   Thus, discovery of this information is essential to enable Ambac to meaningfully participate in the process of advancing the Title III cases towards successful plans of adjustment.

4.     The need to obtain information necessary to understand the Commonwealth's assets is even more pressing now, in light of the filing of the Commonwealth's Plan and Disclosure Statement.   Ambac and other similarly-situated creditors cannot endure months of negotiations over the essential information sought herein, nor can it continue to wait for the meaningful production of relevant information.   The requested information must be produced as soon as practicable to allow creditors to explore the financial condition of the Commonwealth and its related entities before these proceedings move to the plan confirmation stage.

5.     For these reasons, Ambac respectfully requests the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing Ambac to pursue the requested Rule 2004 discovery and requiring the Respondents to comply with Ambac's requests forthwith.

## JURISDICTION

6.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1331 and PROMESA § 306(a).   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a).

## RELEVANT FACTUAL BACKGROUND

7.     On June 30, 2016, President Obama signed PROMESA into law.   PROMESA established the Oversight Board, which is intended "to provide a method for a covered territory [including the Commonwealth] to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. §§ 2121(a), (b)(1).   To effect these purposes, the Oversight Board is charged with

- 2 -

approving and certifying nearly all actions of the Commonwealth government that relate to its finances.

8.      PROMESA provides for an out-of-court, voluntary restructuring process in Title VI of PROMESA ("Title VI"), and a court-supervised restructuring process akin to Chapter 9 of the Bankruptcy Code in Title III of PROMESA ("Title III").  Sections 201 and 202 of PROMESA grant the Oversight Board the power to formulate and certify fiscal plans and budgets that comply with certain enumerated requirements.[2]

9.      Pursuant to Act 2-2017, AAFAF was appointed as the agent of and advisor to the Puerto Rico government, and granted authority with respect to the restructuring of any indebtedness issued by the Commonwealth and any governmental entity of the Commonwealth.

10.      On May 3, 2017, the Oversight Board filed a voluntary petition for relief on behalf of the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III. *See In re the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico*, No. 17-BK-3283-LTS (D.P.R. May 3, 2017) (the "Commonwealth Title III Case").

11.      On September 27, 2019, the Oversight Board filed the Commonwealth's Plan of Adjustment and Disclosure Statement.  The Plan built on a plan support agreement (the "PSA") that was announced in June 2019, between the Oversight Board and a small group of GO and PBA bondholders.

---

[2] The Oversight Board certified its most recent Commonwealth fiscal plan on May 9, 2019.  *See 2019 Fiscal Plan for Puerto Rico: Restoring Growth and Prosperity* (*available at* https://oversightboard.pr.gov/documents/).

12.     Ambac is a provider of financial guaranty insurance, whereby an insurer guarantees scheduled payments of principal and interest as and when due on a bond or other obligation. Ambac insures scheduled principal and interest payments when due on municipal, public infrastructure, and structured financings both in the United States and around the world.  As a holder and/or insurer of more than $1 billion in bonds issued by the Commonwealth and its instrumentalities, Ambac has long been focused on understanding the financial condition of the Commonwealth.

13.     On October 23, 2019, Ambac served document requests, attached hereto as **Exhibit A**, for information pertaining to the Commonwealth's assets.  Through these requests, Ambac seeks, among other things, information pertaining to the assets of the Commonwealth—specifically the identity and value of any property interests held by the Commonwealth and its instrumentalities, any sale, alienation, and/or encumbrances of those interests, and the flow of funds resulting from any sale, alienation, and/or encumbrances of those interests.  These requests are designed to allow Ambac to understand the full extent of the Commonwealth's assets and identify assets that are potentially available to repay creditors of the Commonwealth and its instrumentalities.

## **RELIEF REQUESTED**

14.     Pursuant to Bankruptcy Rule 2004, Ambac requests entry of an order:

  a.  Directing the Oversight Board, AAFAF, and the Commonwealth to produce responsive, non-privileged documents requested in the attached **Exhibit A** hereto for examination by Ambac;

  b.  Directing the Oversight Board, AAFAF, and the Commonwealth to designate an individual or individuals with knowledge of the matters described in **Exhibit A** hereto as the representative of the Oversight Board, AAFAF, and/or the

- 4 -

Commonwealth and to produce that individual(s) to be examined by Ambac under

oath on such date and time and at such location in Puerto Rico as may be designated

in writing by Ambac on not less than 14 days' notice;

c.   Directing the Oversight Board, AAFAF, and the Commonwealth to identify other

individual(s) with knowledge of the matters described in **Exhibit A** hereto and to

produce that individual(s) to be examined by Ambac under oath on such date and

time and at such location in Puerto Rico as may be designated in writing by Ambac

on not less than 14 days' notice; and

d.   Authorizing Ambac to issue subpoenas directing the production of documents and

the examination of other witnesses who may have knowledge of the matters

described in **Exhibit A** attached hereto without separate application to this Court

for each subpoena or witness, and in accordance with the procedures set forth herein

and in the Proposed Order.

## BASIS FOR RELIEF REQUESTED

**I.    Rule 2004 Entitles Ambac to Broad Discovery Concerning the Financial Condition of the Debtor.**

15.    Federal Rule of Bankruptcy Procedure 2004 applies to these proceedings pursuant

to PROMESA § 310. 48 U.S.C. § 2170 (providing that the Bankruptcy Rules apply to Title III

proceedings and civil proceedings arising thereunder).

16.    Rule 2004 provides that "any party in interest" may move for examination relating

to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any

matter which may affect the administration of the debtor's estate."  Fed. R. Bankr. P. §§ 2004(a)-

(b).

17.     As a significant long-term creditor of the Commonwealth, Ambac is a party in interest entitled to information regarding the Commonwealth's assets.  *See e.g.*, ¶ 12; *In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) ("Courts have generally construed the term 'party in interest' as used in 11 U.S.C. § 1109(b) liberally.") (citation omitted); *see also In re Johns-Manville Corp.*, 36 B.R. 743, 747-48 (Bankr. S.D.N.Y. 1984) (finding that the term "party in interest" is to be construed broadly).

18.     "Courts recognize that the permitted scope of a Rule 2004 examination is extremely broad." *In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass. 2011); *see also In re Drexel Burnham*, 123 B.R. at 702, 711 (Bankr. S.D.N.Y. 1991) ("The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad.").  In fact, the scope is even broader than discovery under the Federal Rules of Civil Procedure.  *See In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *4 (Bankr. S.D.N.Y. July 19, 2017) (noting that Rule 2004 discovery can be "legitimately compared to a fishing expedition") (citation omitted); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (Bankr. S.D.N.Y. 1993) ("The investigation of an examiner in bankruptcy, unlike civil discovery under Rule 26(c), is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper to the Examiner.") (internal citations omitted); *In re Drexel*, 123 B.R. at 711 (noting that Rule 2004 provides few of the procedural safeguards of the Federal Rules of Civil Procedure).

19.     In line with the broad scope of Rule 2004, the target of Rule 2004 discovery is not limited to the debtor itself.  *See In re Ionosphere Clubs, Inc.*, 156 B.R. at 432 ("Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."); *see also*

*Freeman v. Seligson*, 405 F.2d 1326, 1333 (D.C. Cir. 1968); *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 268 (S.D.N.Y. 2004).

20.     Financial information about the debtor, its assets and liabilities, including information relating "to the operation of any business and the desirability of its continuance . . . and any other matter relevant to the case or to the formulation of a plan," are appropriate subjects of a Rule 2004 request. *In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. 2017); *see In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("Rule 2004 of the Federal Rules of Bankruptcy Procedure provides courts with the authority to order examinations with respect to the financial matters of debtors . . . .").

21.     Similarly, creditors may obtain discovery into any matter regarding the "***nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurre***d." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (emphasis added); *see also In re Hilsen*, 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25, 2008) (defining Rule 2004 examinations to cover "the acts, conduct, or property and financial condition of the debtor, or to any matter that may affect the administration of the debtor's estate or the debtor's right to a discharge").

22.     As such, information relating the Commonwealth's and its instrumentalities assets, including (i) the identity of any property interests; (ii) any sale, alienation, or encumbrances of any property, and (iii) the flow of funds resulting from any sale, alienation, or encumbrances of property is precisely the type of information that Rule 2004 is designed to cover. *See e.g.*, *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be

preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)).  And, Ambac is entitled to discovery of such information.

II.   **Ambac Must Have Information Regarding The Commonwealth's Assets In Order To Meaningfully Participate In The Resolution Of These Title III Cases**

23.    The granting of a motion under Rule 2004 is within the discretion of the Court.  *See In re Gawker Media LLC*, 2017 WL 2804870, at *5 ("Rule 2004 gives the Court 'significant' discretion.") (internal citation omitted).  Furthermore, section 105(a) of the Bankruptcy Code "sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code." *In re Drexel*, 123 B.R. at 711 (quoting *In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir. 1986)).

24.    In assessing Rule 2004 motions, courts look to whether the party seeking to conduct a Rule 2004 examination has demonstrated good cause.  *See In re Gawker Media LLC*, 2017 WL 2804870, at *5; *In re Youk-See*, 450 B.R. at 319, 320.  This can include a showing that the information requested is necessary to the claim of the party seeking examination or that denial of the request would cause the examiner undue hardship or injustice.  *See id*.  Courts also balance the competing interests of the parties, "weighing the relevance of and necessity of the information sought by examination." *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017).

25.    Ambac has demonstrated good cause to be granted a Rule 2004 investigation.  The information sought by Ambac is essential to its ability to meaningfully participate in the resolution of the Title III case.  As the Title III proceedings move forward, it is critical that creditors have fulsome information concerning the financial condition of the Commonwealth.  *See e.g., In re Hilsen*, 2008 WL 2945996, at *1 (stating Rule 2004 discovery is warranted so long as "there is a

reasonable nexus to the debtor and the administration of the debtor's case"). An essential component of that inquiry is to explore the Commonwealth's assets and the extent to which those assets can be and/or have been monetized or encumbered. Such information sheds light on the financial condition of the debtor and is fundamental to Ambac's ability to evaluate any restructuring proposals. This is more true than ever in light of the Oversight Board's filing of the Plan and Disclosure Statement on behalf of the Commonwealth.

26.     Discovery of this critical information is the very "purpose of a Rule 2004 examination." *In re Recoton Corp.*, 307 B.R. at 755; *see also In re Coffee Cupboard, Inc.*, 128 B.R. at 514. And without the information sought, Ambac will be unable to participate meaningfully in the process of advancing these Title III cases towards successful plans of adjustment and will suffer "undue hardship [and] injustice." *See In re Drexel Burnham*, 123 B.R. at 712. Information that sheds light on the financial condition of the debtor is fundamental to Ambac's ability to evaluate the proposed Plan. Ambac is entitled to this information and thus, should be authorized to pursue the requested discovery.

27.     Creditor access to such information is a fundamental tenet of PROMESA and Puerto Rico law. Title III of PROMESA provides that creditors are entitled to information that enables them to make informed decisions about potential restructurings. *See, e.g.*, PROMESA §§ 206(a), 301(a), 601(f). In addition, the Puerto Rican government has taken steps to ensure that citizens have access to information about public entities such as AAFAF, the Oversight Board, and the Commonwealth itself. *See, e.g.*, 32 L.P.R.A. § 781 (granting citizens the right to inspect and copy any public documents, subject to certain exceptions).

28.     Discovery of such information is particularly important because the assets held by the Commonwealth have yet to be disclosed and these assets are appropriately considered by the

court in considering whether a plan of adjustment meets the best interests of creditors test. *See e.g.*, *In re Barnwell Cty. Hosp.*, 471 B.R. 849, 869 (Bankr. D.S.C. 2012) (considering the value of Debtor's assets in determining is a plan of adjustment was in the best interest of creditors). Furthermore, the information sought is relevant to the requirement that a plan of adjustment must be "fair and equitable" in order to be confirmed over an impaired class's objection under 11 U.S.C. § 1129(b)(1); *see* 48 U.S.C. §§ 2161(a), 2174(b)(1) (incorporating this requirement into PROMESA. This inquiry necessarily considers the Commonwealth's assets. *See Lorber v. Vista Irrigation Dist.*, 127 F.2d 628, 639 (9th Cir. 1942) (stating a municipal debtor's plan of adjustment may be approved only upon a factual finding that the recovery proposed for creditors is "the maximum that the [debtor] could reasonably pay"); *see also* 6 Collier 943.03(1)(f)(i) ("A plan under chapter 9 is fair and equitable if the amount to be received by the bondholders is all that they 'can reasonably expect in the circumstances.'"). *In re Velo Holdings Inc.*, 472 B.R. 201, 211 (Bankr. S.D.N.Y. 2012) (noting that one of the goals of Chapter 11 is to maximize recovery for creditors).

29.     Ambac's information requests are narrowly focused, targeting specific information needed to better understand the assumptions made about the Commonwealth's financial condition and its ability to pay its debts.  Respondents have not identified an appropriate basis on which to object to these requests.  Ambac accordingly seeks an Order from this Court compelling the Oversight Board and the Commonwealth to produce the requested information.

## **CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1**

30.     Undersigned counsel hereby certify that, prior to filing this motion, they circulated to counsel for the Oversight Board and AAFAF the requests attached hereto, inquired as to their willingness to provide the information sought, and requested to meet and confer regarding this

motion.  Counsel to the Oversight Board and AAFAF have not responded to Ambac's inquiry and meet-and-confer request.

## NOTICE

31.     Under the Tenth Amended Case Management Procedures, the deadline to file an objection to this Motion is November 26, 2019 at 4:00pm AST.  Ambac therefore provides the following notice pursuant to Rule 2004-1(d) of the Puerto Rico Local Bankruptcy Rules, modified accordingly with respect to the objection deadline: Any party who objects to the examination shall serve and file an objection or motion for protective order with the United States Bankruptcy Court for the District of Puerto Rico by November 26, 2019 at 4:00pm AST.  If no objection or motion for protective order is timely filed, the court may grant the motion for examination without further notice or a hearing.

## NO PRIOR REQUEST FOR RELIEF

No previous request for the relief sought herein has been made by Ambac to this or any other Court.

## CONCLUSION

Ambac respectfully requests authority to direct the production of documents, the examination of witnesses, and direct responses to interrogatories pursuant to Rule 2004 as set forth herein and consistent with the Proposed Order, and that Ambac be granted such other and further relief as is just and proper.

Dated:  October 28, 2019
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*_____

Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
      scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*_____

Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5770
Facsimile:  (212) 822-5770
Email: ddunne@milbank.com
      aleblanc@milbank.com
      amiller@milbank.com
      gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

**Attachment 1**

<u>**DEFINITIONS**</u>

1.      "<u>AAFAF</u>" means the Puerto Rico Fiscal Agency and Financial Advisory Authority and each of its present or former officers, directors, agents, representatives, employees, and members.

2.      "<u>Agreement</u>" means any agreement reached by the parties indicated in the Request and includes all side letters, schedules, attachments, exhibits, and documents incorporated by reference or otherwise referred to therein.

3.      "<u>CCDA</u>" means the Puerto Rico Convention Center District Authority and each of its present or former officers, directors, agents, representatives, and employees.

4.      "<u>Committee</u>" means the Real Property Evaluation and Disposal Committee created pursuant to Act 26-2017 (Fiscal Plan Compliance Act) and each of its present or former officers, directors, agents, representatives, and employees.

5.      "<u>Commonwealth</u>" means the Commonwealth of Puerto Rico, including its executive and legislative branches of government, and each of their present or former representatives, employees, and agents.

6.      "<u>Concerning</u>" means directly or indirectly connected to, on the subject of, about, respecting, regarding, referring to, relevant to, and/or dealing with.

7.      "<u>CRIM</u>" means the Municipal Revenue Collection Center, including its executive and legislative branches of government, and each of their present or former representatives, employees, and agents.

8.      "<u>Document</u>" or "<u>documents</u>" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and the Local Rules for the District of Puerto Rico, including tangible

- 13 -

things, correspondence, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), any electronically stored information, recordings (*e.g.*, voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

9. "HTA" means the Puerto Rico Highways and Transportation Authority and each of its present or former officers, directors, agents, representatives, and employees.

10. "Including" means including but not limited to.

11. "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico and each of its present or former board members, agents, representatives, and employees.

12. "Property" means any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest.

13. "Related to" shall mean "concerning."

14. "You" or "Your" refers to (1) the Oversight Board; (2) AAFAF; and (3) the Commonwealth and their respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former elected officials, officers, trustees, accountants, attorneys, employees, agents, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

## INSTRUCTIONS

1. Unless otherwise indicated, the communications and documents hereby requested for production and inspection include all documents in Your possession, custody, or control.

- 14 -

Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a communication or document is in Your possession, custody, or control if You have actual possession or custody or the right to obtain the document or a copy thereof upon demand from one or more of Your employees, representatives, agents, independent contractors, consultants, attorneys, advisors, accountants, auditors, or any other person or public or private entity that has actual physical possession thereof.

    a. This includes, but is not limited to, documents physically held by Your agents, representatives, employees, attorneys, financial advisors, or other advisors. It also includes any communications and documents contained in any computer, mobile device, server, mainframe, or other storage device (including (i) documents on or in computer memory; (ii) documents on or in computer or network backup files; and (iii) documents which have been "deleted" or "erased" but are recoverable) whether located on-site or at an off-site facility, within Your possession, custody, or control.

    b. For the avoidance of doubt, this also includes any communications and documents contained on any personal computer, mobile device, server, mainframe, or other storage device within the possession of Your agents, representatives, employees, attorneys, financial advisors, or other advisors, regardless of whether the device is issued or owned by You.

    2. As the term "possession" relates to e-mail, text messages, mobile device chats, and any other electronically stored information, the term includes, but is not limited to, documents and communications contained in Your electronic e-mail, cloud-based, and mobile device directories, including, but not limited to: (a) "deleted" documents and communications that have not been

permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" documents and communications, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" documents and communications, including all subdirectories irrespective of the title of such subdirectories.

3.    As the Requests relate to e-mail, text messages, mobile device chats, and any other electronically stored information, You are to review the text of each individual document and communication (*i.e.*, not simply review the subject heading or utilize an electronic search device).

4.    With respect to the documents produced, You shall produce them as they are kept in the usual course of business as defined in Rule 34 of the Federal Rules of Civil Procedure.

5.    Selection of documents from files and other sources, and the numbering of such documents, shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

6.    File folders with tabs, labels, or directories of files identifying documents must be produced intact with such tabs, labels, or directories and the documents contained therein.

7.    Documents attached to each other shall not be separated.

8.    A document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

9.    Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto. If a document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

10.     In construing the Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any Request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

11.     The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the Request.

12.     The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

13.     Any ambiguity in a Request shall be construed to bring within the scope of the Request all responses that otherwise could be construed to be outside of its scope.

14.     If You withhold any document requested herein on the basis of any assertion of privilege or other immunity from discovery, that document is to be identified by stating: (i) any addressor and addressee; (ii) any indicated or blind copy; (iii) the document's date, subject matter, and attachment or appendages; and (iv) the nature of the privilege or immunity asserted.

15.     If You object to a Request, You must clearly indicate whether any responsive materials are being withheld on the basis of that objection.  If You object to only a portion of a Request, You must clearly indicate to which part of the Request the objection is directed, whether any responsive materials are being withheld on the basis of that objection, and provide all documents to which objection is not made as if such part or portion of the Request were propounded as a separate Request.

16.     If Your response to a particular Request is that You lack the ability to comply with that Request, You must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or

has never been, or is no longer, in Your possession, custody, or control, in which case the name and address of any person or entity known or believed by You to have possession, custody, or control of that information, item, or category of information must be identified.

17.     If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

18.     Terms not specifically defined herein shall be given their ordinary meanings as You understand them to be used in the trade or pursuant to ordinary usage.

19.     Unless otherwise specified, the time period covered by these Requests is from September 1, 2010 to the present, and shall encompass all documents and information relating in whole or in part to such period.

20.     The Requests shall be deemed to be continuing so as to require supplemental productions as You obtain additional documents between the time of the initial production hereunder and the time of trial in this action.

## DOCUMENT REQUESTS

### REQUEST NO. 1

Documents sufficient to identify any Property, or interests therein, held by the Commonwealth or its instrumentalities from January 1, 2015 to the present.

### REQUEST NO. 2

All documents and communications, from January 1, 2015 to the present, concerning the alienation of any Property, or interests therein, held by the Commonwealth, or its instrumentalities.

- 18 -

**REQUEST NO. 3**

All documents and communications, from January 1, 2015 to the present, concerning the
encumbrance of any Property, or interests therein, held by the Commonwealth, or its
instrumentalities.

**REQUEST NO. 4**

All documents and communications, from January 1, 2015 to the present, regarding the process
for choosing and assessing which Property, or interests therein, held by the Commonwealth, or
its instrumentalities would be alienated or encumbered.

**REQUEST NO. 5**

All documents and communications, from January 1, 2015 to the present, concerning any
restraints on alienation or encumbrance of any Property, or interests therein, held by the
Commonwealth, or its instrumentalities.

**REQUEST NO. 6**

All documents and communications, from January 1, 2015 to the present, regarding any proceeds
or revenue derived from the alienation or encumbrance of any Property, or interests therein, held
by the Commonwealth, or its instrumentalities; including but not limited to documents showing
the flow of funds and/or use of any revenue.

**REQUEST NO. 7**

All documents and communications regarding the use and intended use of any proceeds or
revenue derived from the alienation or encumbrance of any Property, or interests therein, held by
the Commonwealth, or its instrumentalities.

**REQUEST NO. 8**

All documents and communications, from January 1, 2015 to the present, regarding any
assessment of the present, future, or contingent value of any Property, or interests therein, held
by the Commonwealth, or its instrumentalities.

**REQUEST NO. 9**

All documents and communications concerning the Puerto Rico Highways and Transportation
Authority's ("HTA") sale of properties as identified in the August 2019 report on the
implementation of HTA's certified fiscal plan.

**REQUEST NO. 10**

All documents and communications identifying the 23 properties that were indicated as sold, or
to be sold by December 2019, in the August 2019 report.

**REQUEST NO. 11**

All documents and communications regarding the sale price and valuation of the 23 properties
identified as sold, or to be sold by December 2019, in the August 2019 report.

**REQUEST NO. 12**

All documents and communications regarding the process for choosing and assessing which
properties would be sold as described in the August 2019 report.

**REQUEST NO. 13**

All documents and communications regarding the identity of the buyers or prospective buyers of
the 23 properties identified as sold, or to be sold by December 2019, in the August 2019 report.

**REQUEST NO. 14**

All documents and communications regarding the use and intended use of the proceeds from the
sale of the 23 properties identified as sold, or to be sold by December 2019, in the August 2019
report.

**REQUEST NO. 15**

All documents and communications regarding the bank account information where any proceeds
from the sale of the 23 properties identified as sold, or to be sold by December 2019, in the
August 2019 report are held.

**REQUEST NO. 16**

All documents and communications regarding the Committee created pursuant to Act 26-2017
(Fiscal Plan Compliance Act) regarding unused real property of entities and instrumentalities of
the Executive Branch of the Commonwealth, including (i) negotiations, (ii) execution of
contracts, (iii) assignment of ownership of title, possession or use of such unused property, (iv)
proposals considered (whether ultimately accepted or not), (v) transactions recently approved,
and (vi) transactions currently under evaluation.

**REQUEST NO. 17**

All documents and communications regarding (i) AAFAF's (or any other Commonwealth
instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing

- 20 -

the formalization of disposal of Commonwealth properties, including how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.

**REQUEST NO. 18**

All documents and communications regarding the valuation and price assessment of the Puerto Rico Convention Center.

**REQUEST NO. 19**

All documents and communications regarding the valuation and price assessment of the Coliseo de Puerto Rico José Miguel Agrelot.

**REQUEST NO. 20**

All documents and communications regarding the valuation and price assessment of the Rivas Domenici Executive Airport.

**REQUEST NO. 21**

A list of all hospitality, commercial and residential developments owned, managed, developed, or overseen by CCDA and all documents and communications regarding the valuation and price assessment of those properties.

**REQUEST NO. 22**

All documents and communications, from January 1, 2015 to the present, concerning any restraints on alienation or encumbrance of any Property, or interests therein, held by CCDA, including the Puerto Rico Convention Center, the Coliseo de Puerto Rico José Miguel Agrelot, the Rivas Domenici Executive Airport, and all hospitality, commercial and residential developments owned, managed, developed, or overseen by CCDA.

**REQUEST NO. 23**

All documents and communications, from January 1, 2015 to the present, regarding any proceeds or revenue derived from the alienation or encumbrance of any Property, or interests therein, held by CCDA; including but not limited to documents showing the flow of funds and/or use of any revenue.

**REQUEST NO. 24**

Documents sufficient to identify any Property, or interests therein, held CRIM from January 1, 2015 to the present.

**REQUEST NO. 25**

All documents and communications regarding the valuation and price assessment of CRIM's assets, including, but not limited to assets reviewed as part of Garnet Capital Advisors initiative to sell CRIM's assets.

**REQUEST NO. 26**

All documents and communications sufficient to show the sale of CRIM's assets, including tax debts and related assets, by Garnet Capital Advisors and the revenue derived from those sales; including but not limited to documents showing the flow of funds and/or use of any revenue.

**REQUEST NO. 27**

All documents and communications, from January 1, 2015 to the present, regarding any proceeds or revenue derived from the alienation or encumbrance of any Property, or interests therein, held by CRIM; including but not limited to documents showing the flow of funds and/or use of any revenue.

**REQUEST NO. 28**

All documents and communications, from January 1, 2015 to the present, regarding Garnet Capital Advisors initiative to sell CRIM's assets; including, but not limited to reports created by Garnet Capital Advisor's related to CRIM's assets and any transactions related to those assets.

## Exhibit A

**Proposed Order**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## [PROPOSED] ORDER GRANTING AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH ASSETS

Upon the motion ("the Motion")[2] of Ambac Assurance Corporation ("Ambac"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an Order authorizing Ambac to take Rule 2004 discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

- 2 -

Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) of the Puerto

Rico Oversight, Management, and Economic Stability Act ("PROMESA"); (ii) the Puerto Rico

Fiscal Agency and Financial Advisory Authority ("AAFAF"); and (iii) the Commonwealth as well

as the examination of and production of documents from entities determined by Ambac to have

information in connection with Ambac's investigation, and responses to interrogatories as more

fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. § 1331 and PROMESA § 306(a); and venue being

proper before this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a); and notice of

the Motion having been given as provided in the Motion, and such notice having been adequate

and appropriate under the circumstances; and it appearing that no other or further notice of the

Motion need be provided; and the Court having held a hearing to consider the relief requested in

the Motion; and the Court having found and determined that the relief sought in the Motion and

granted herein is in the best interests of the Debtor, its respective creditors, and all parties in

interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as provided herein.

2.      The Oversight Board, AAFAF, and the Commonwealth shall comply with the

document requests attached hereto as Attachment 1 by no later than ten (10) days after entry of

this Order.

3.      The Oversight Board, AAFAF, and the Commonwealth shall designate an

individual or individuals with knowledge of the matters described in Attachment 1 hereto (the

"Designated Individual(s)").    The Designated Individual(s) shall produce themselves for

examination by counsel to Ambac under oath and in accordance with Bankruptcy Rule 2004 on such date and time and at such location as may be designated in writing by counsel to Ambac.

4.      Ambac is authorized, pursuant to Bankruptcy Rule 2004, to issue such subpoenas as may be necessary to compel the production of documents and/or testimony of a third party witness to accomplish the discovery authorized by this Order.

5.      Third party witnesses shall have fourteen (14) days from the service of a subpoena to either (i) produce to Ambac all responsive non-privileged documents requested in Ambac's subpoena, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

6.      Third party witnesses are directed to either (i) submit to oral examination upon reasonable notice and, absent other agreement with Ambac, in no event more than fourteen (14) days from the date of the service of a deposition subpoena upon such witness, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

7.      Ambac shall serve each subpoena and a copy of this Order on the target of the subpoena.

8.      Nothing herein shall limit Ambac's right to request additional discovery, including any additional documents or depositions, under Bankruptcy Rule 2004 and applicable law, based on any information that may be revealed as a result of the information provided pursuant to this Order or otherwise.

9.      This Court shall retain jurisdiction to resolve any dispute arising or related to this Order and to interpret, implement and enforce the provisions of this Order.

10.     This Order is without prejudice to Ambac's right to file further motions seeking additional documents pursuant to Bankruptcy Rule 2004 or any other applicable law.

SO ORDERED.


Dated: _____, 2019

      San Juan, Puerto Rico


_____

HONORABLE LAURA TAYLOR SWAIN

UNITED STATES DISTRICT JUDGE