**Objection Deadline: November 26, 2019 4:00 pm AST**
**Hearing Date: December 11, 2019, 9:30 am AST**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH CASH RESTRICTION ANALYSIS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

RELEVANT FACTUAL BACKGROUND ......................................................................... 3

RELIEF REQUESTED ........................................................................................................ 5

BASIS FOR RELIEF REQUESTED .................................................................................. 6

      A.     Rule 2004 Entitles Ambac to Broad Discovery Concerning
             the Financial Condition of the Debtor ............................................. 6

      B.     Ambac Must Have Information Regarding The
             Commonwealth's Cash Status In Order To Meaningfully
             Participate In The Resolution Of These Title III Cases ...................... 8

CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1 .......... 11

NOTICE ............................................................................................................................ 11

NO PRIOR REQUEST FOR RELIEF ................................................................................ 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re China Fishery Grp. Ltd.*,
2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ..........................................6, 8

*In re Coffee Cupboard, Inc.*,
128 B.R. 509 (Bankr. E.D.N.Y. 1991) ...............................................................8, 9

*In re Drexel Burnham Lambert Grp., Inc.*,
123 B.R. 702 (Bankr. S.D.N.Y. 1991)...........................................................6, 7, 9

*In re Gawker Media LLC*,
2017 WL 2804870 (Bankr. S.D.N.Y. 2017)...................................................7, 8, 9

*In re Hilsen*,
2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ............................................8

*In re Hughes*,
281 B.R. 224 (Bankr. S.D.N.Y. 2002) ..................................................................8

*Ionosphere Clubs, Inc. v. Am. Nat'l Bank and Tr. Co. of Chi. (In re Ionosphere
Clubs, Inc.)*,
156 B.R. 414 (Bankr. S.D.N.Y. 1993).................................................................7

*In re Johns-Manville Corp.*,
36 B.R. 743 (Bankr. S.D.N.Y. 1984).................................................................7

*Lorber v. Vista Irrigation Dist.*,
127 F.2d 628 (9th Cir. 1942) .........................................................................10

*In re Recoton Corp.*,
307 B.R. 751 (Bankr. S.D.N.Y. 2004) ...............................................................8, 9

*In re Summit Corp.*,
891 F.2d 1 (1st Cir. 1989)...............................................................................7

*In re the Financial Oversight and Management Board for Puerto Rico, as
Representative of the Commonwealth of Puerto Rico*,
No. 17-BK-3283-LTS (D.P.R. May 3, 2017) .................................................1, 3, 1

*In re Velo Holdings Inc.*,
472 B.R. 201 (Bankr. S.D.N.Y. 2012).................................................................10

**Statutes and Rules**

11 U.S.C. § 1109(b) .................................................................................................7

11 U.S.C. § 1129(b)(1) ...........................................................................................10

28 U.S.C. § 1331 ......................................................................................................2

28 U.S.C. § 1391(b) .................................................................................................2

48 U.S.C.A. §§ 2121(a), (b)(1) ...............................................................................3

48 U.S.C. § 2161(a) ............................................................................................9, 10

48 U.S.C.A. § 2231(f) ..............................................................................................3

48 U.S.C. § 2146(a) .................................................................................................9

48 U.S.C. § 2170 ......................................................................................................6

48 U.S.C. § 2174(b)(1) ...........................................................................................10

32 L.P.R.A. § 781 ....................................................................................................9

Fed. R. Bankr. P. 2004 .........................................................................................6, 7

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding by Section 310 of PROMESA, Ambac Assurance Corporation ("Ambac") respectfully submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), to take discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"); and (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"). In support of this Motion, Ambac respectfully states as follows:

## PRELIMINARY STATEMENT

1.      On September 27, 2019, the Oversight Board filed a Plan of Adjustment (the "Plan") and Disclosure Statement on behalf of the Commonwealth. *See* Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, *et al.* (Dkt. No. 8765); Disclosure Statement for the Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority (Dkt. No. 8766). The Plan estimates that there is approximately $6.9 billion of unrestricted cash available at the Commonwealth and its related entities.

2.      By this motion, Ambac broadly seeks to understand how the Oversight Board arrived at the $6.9 billion figure in order to assess the Oversight Board's analysis of what monies are potentially available to repay creditors of the Commonwealth and its instrumentalities. More specifically, Ambac's document requests seek information that will allow Ambac and other similarly situated creditors to understand the amount of unrestricted cash at the Commonwealth's disposal, as well as to test the Commonwealth's analysis of restricted versus unrestricted cash.

3.      This inquiry is essential to enable Ambac to meaningfully participate in the process of advancing these Title III cases towards successful plans of adjustment.  Ambac and other similarly situated creditors cannot evelute the Plan without complete transparency into the Commonwealth's financial condition, which includes transparency into the actual amount of cash available for debt service.

4.      The foregoing topics are at the core of Rule 2004 discovery.  Ambac is entitled to information that enables them to assess the assumptions, data, and procedures that underlie the Oversight Board's cash analysis.

5.      The need to obtain information necessary to understand the Commonwealth's cash position is even more pressing now, in light of the filing of the Commonwealth's Plan and Disclosure Statement.  Ambac and other similarly-situated creditors cannot endure months of negotiations over the essential information sought herein, nor can it continue to wait even longer for the meaningful production of relevant information.  The information must be produced as soon as practicable in order to allow creditors to explore the financial condition of the Commonwealth and its related entities before these proceedings move to the plan confirmation stage.

6.      For these reasons, Ambac respectfully requests the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing Ambac to pursue the requested Rule 2004 discovery and requiring the Respondents to comply with Ambac's requests forthwith.

## **JURISDICTION**

7.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1331 and PROMESA § 306(a).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a).

## **RELEVANT FACTUAL BACKGROUND**

8.      On June 30, 2016, President Obama signed PROMESA into law.  PROMESA

established the Oversight Board, which is intended "to provide a method for a covered territory

[including the Commonwealth] to achieve fiscal responsibility and access to the capital markets."

48 U.S.C.A. §§ 2121(a), (b)(1).  To effect these purposes, the Oversight Board is charged with

approving and certifying nearly all actions of the Commonwealth government that relate to its

finances.

9.      PROMESA provides for an out-of-court, voluntary restructuring process in Title VI

of PROMESA ("Title VI"), and a court-supervised restructuring process akin to Chapter 9 of the

Bankruptcy Code in Title III of PROMESA ("Title III").  Sections 201 and 202 of PROMESA

grant the Oversight Board the power to formulate and certify fiscal plans and budgets that comply

with certain enumerated requirements.[2]

10.      Pursuant to Act 2-2017, the Puerto Rico Fiscal Agency and Financial Advisory

Authority ("AAFAF") was appointed as the agent of and advisor to the Puerto Rico government,

and granted authority with respect to the restructuring of any indebtedness issued by the

Commonwealth and any governmental entity of the Commonwealth.

11.      On May 3, 2017, the Oversight Board filed a voluntary petition for relief on behalf

of the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III.

*See In re the Financial Oversight and Management Board for Puerto Rico, as Representative of*

---

[2] The Oversight Board certified its most recent Commonwealth fiscal plan on May 9, 2019.  *See 2019 Fiscal Plan for Puerto Rico: Restoring Growth and Prosperity* (available at https://oversightboard.pr.gov/documents/).

*the Commonwealth of Puerto Rico*, No. 17-BK-3283-LTS (D.P.R. May 3, 2017) (the "Commonwealth Title III Case").

12.     On September 27, 2019, the Oversight Board filed the Commonwealth's Plan and Disclosure Statement.  The Plan built on a plan support agreement (the "PSA") that was announced in June 2019, between the Oversight Board and a small group of GO and PBA bondholders.

13.     On October 17, 2019, the Commonwealth published to the Electronic Municipal Market Access System ("EMMA") a presentation prepared by the Oversight Board and its advisors regarding its analysis of the Commonwealth's cash status, including its analysis of what cash it deemed restricted versus unrestricted (the "Cash Restriction Analysis").  *See* Mediation: Summary of Cash Restriction Analysis, dated October 2, 2019 (attached hereto as **Exhibit B**); *see also Mediation-Related Cleansing Materials Reveal $6.9B Unrestricted Cash Estimate, Discuss Risks to Commonwealth Fiscal Plan*, REORG RESEARCH, October 18, 2019.  The next day, the Oversight Board did the same with respect to the Oversight Board's analysis related to the Commonwealth's bank accounts (the "Bank Account Analysis").  *See* Bank Account Analysis: Status Update – June 20, 2019 Balances, dated October 2, 2019 (attached hereto as **Exhibit C**); *see also AAFAF Posts Oversight Board Mediation Materials Related to Bank Account Analysis*, REORG RESEARCH, October 18, 2019.

14.     Ambac is a provider of financial guaranty insurance, whereby an insurer guarantees scheduled payments of principal and interest as and when due on a bond or other obligation.  Ambac insures scheduled principal and interest payments when due on municipal, public infrastructure, and structured financings both in the United States and around the world.  As a holder and/or insurer of more than $1 billion in bonds issued by the Commonwealth and its

instrumentalities, Ambac has long been focused on understanding the financial condition of the Commonwealth.

15.     Accordingly, on October 23, 2019, Ambac served document requests, attached hereto as **Attachment 1** to **Exhibit A**, for information pertaining to the Oversight Board's analysis of the Commonwealth's cash status.  Through these requests, Ambac seeks, among other things, materials prepared for and/or relied upon in connection with the Cash Restriction Analysis and Bank Account Analysis, information concerning the process and methodology applied in the analyses, backup data, and the diligence process surrounding the analyses.  These requests are designed to allow Ambac to understand both the amount of unrestricted cash at the Commonwealth's disposal and to allow Ambac to test the Commonwealth's analysis of restricted versus unrestricted cash, in an effort to understand what monies are potentially available to repay creditors of the Commonwealth and its instrumentalities.

### RELIEF REQUESTED

16.     Pursuant to Bankruptcy Rule 2004, Ambac requests entry of an order:

a.    Directing the Oversight Board, AAFAF, and the Commonwealth to produce responsive, non-privileged documents requested in the attached **Exhibit A** hereto for examination by Ambac;

b.    Directing the Oversight Board, AAFAF, and the Commonwealth to designate an individual or individuals with knowledge of the matters described in **Exhibit A** hereto as the representative of the Oversight Board, AAFAF, and/or the Commonwealth and to produce that individual(s) to be examined by Ambac under oath on such date and time and at such location in Puerto Rico as may be designated in writing by Ambac on not less than 14 days' notice;

c.  Directing the Oversight Board, AAFAF, and the Commonwealth to identify other individual(s) with knowledge of the matters described in **Exhibit A** hereto and to produce that individual(s) to be examined by Ambac under oath on such date and time and at such location in Puerto Rico as may be designated in writing by Ambac on not less than 14 days' notice; and

d.  Authorizing Ambac to issue subpoenas directing the production of documents and the examination of other witnesses who may have knowledge of the matters described in **Attachment 1** to **Exhibit A** attached hereto without separate application to this Court for each subpoena or witness, and in accordance with the procedures set forth herein and in the Proposed Order.

## BASIS FOR RELIEF REQUESTED

### A. Rule 2004 Entitles Ambac to Broad Discovery Concerning the Financial Condition of the Debtor.

17.  Federal Rule of Bankruptcy Procedure 2004 applies to these proceedings pursuant to PROMESA § 310. 48 U.S.C. § 2170 (providing that the Bankruptcy Rules apply to Title III proceedings and civil proceedings arising thereunder).

18.  Rule 2004 allows examination relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. § 2004(b). "The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad," *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991), even broader than discovery under the Federal Rules of Civil Procedure. *See In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *4 (Bankr. S.D.N.Y. July 19, 2017) (noting that Rule 2004 discovery can be "legitimately compared

- 6 -

to a fishing expedition") (citation omitted).; *Ionosphere Clubs, Inc. v. Am. Nat'l Bank and Tr. Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (Bankr. S.D.N.Y. 1993) ("The investigation of an examiner in bankruptcy, unlike civil discovery under Rule 26(c), is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper to the Examiner.") (internal citations omitted); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. at 711 (noting that Rule 2004 provides few of the procedural safeguards of the Federal Rules of Civil Procedure).

19.     The granting of a motion under Rule 2004 is within the discretion of the Court.  *See In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. 2017) ("Rule 2004 gives the Court 'significant' discretion.") (internal citation omitted).  Furthermore, section 105(a) of the Bankruptcy Code "sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (quoting *In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir. 1986)).

20.     Rule 2004 provides that any party in interest may move for examination.  Fed. R. Bankr. P. 2004(a).   As a significant long-term creditor of the Commonwealth and its instrumentalities, Ambac is a party in interest entitled to information regarding the Commonwealth's cash status.  *See In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) ("Courts have generally construed the term 'party in interest' as used in 11 U.S.C. § 1109(b) liberally."); *see also In re Johns-Manville Corp.*, 36 B.R. 743, 747-48 (Bankr. S.D.N.Y. 1984) (finding that the term "party in interest" is to be construed broadly).

21.     Financial information about the debtor, its assets and liabilities, including information relating "to the operation of any business and the desirability of its continuance . . . and any other matter relevant to the case or to the formulation of a plan," are appropriate subjects

of a Rule 2004 request. *In re Gawker Media LLC*, 2017 WL 2804870, at \*5; *see In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("Rule 2004 of the Federal Rules of Bankruptcy Procedure provides courts with the authority to order examinations with respect to the financial matters of debtors[.]").

22.    Similarly, creditors may obtain discovery into any matter regarding the "nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see also In re Hilsen*, 2008 WL 2945996, at \*4 (Bankr. S.D.N.Y. July 25, 2008) (defining Rule 2004 examinations to cover "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge").

23.    As such, information relating to the receipt and flow of funds and restriction of cash assets is precisely the type of information that Rule 2004 is designed to cover. *See In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)).  This information is essential to the formulation of the proposed Plan and the assessment of the Commonwealth's financial condition.  Thus, Ambac is entited to discovery of such information.

**B. Ambac Must Have Information Regarding The Commonwealth's Cash Status In Order To Meaningfully Participate In The Resolution Of These Title III Cases**.

24.    In assessing Rule 2004 motions, courts balance the competing interests of the parties, "weighing the relevance of and necessity of the information sought by examination." *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at \*5 (Bankr. S.D.N.Y. July 19, 2017).  Further,

- 8 -

courts look to whether the party seeking to conduct a Rule 2004 examination has demonstrated good cause. *In re Gawker Media LLC*, 2017 WL 2804870, at \*5. This can include a showing that the information requested is necessary to the claim of the party seeking examination or that denial of the request would cause the examiner undue hardship or injustice. *Id*. (citation omitted).

25.     Ambac has demonstrated good cause to be granted a Rule 2004 investigation. It is critical for creditors to have fulsome information concerning the financial condition of the Commonwealth, which clearly includes information regarding the amount of cash that is available for debt service. This information is essential to Ambac's ability to meaningfully evaluate the terms of the proposed Plan.

26.     In addition, Ambac will suffer "undue hardship [and] injustice" if it is not provided the information it seeks. *See In re Drexel Burnham*, 123 B.R. at 712. Information that sheds light on the financial condition of the Debtor is fundamental to Ambac's ability to evaluate the proposed Plan. Indeed, discovery of this critical information is the very "purpose of a Rule 2004 examination." *In re Recoton Corp.*, 307 B.R. at 755; *see also In re Coffee Cupboard, Inc.*, 128 B.R. at 514. Ambac is entitled to information that enables them to assess the data, assumptions, and procedures that underlie the Oversight Board's cash analysis, and thus, should be authorized to pursue the requested discovery.

27.     Creditor access to such information is a fundamental tenet of PROMESA and Puerto Rico law. Title III of PROMESA provides that creditors are entitled to information that enables them to make informed decisions about potential restructurings. *See, e.g.*, 48 U.S.C §§ 2146(a), 2161(a), 2231(f). In addition, the Puerto Rican government has taken steps to ensure that citizens have access to information about public entities such as AAFAF, the Oversight Board,

and the Commonwealth itself.  *See, e.g.*, 32 L.P.R.A. § 781 (granting citizens the right to inspect and copy any public documents, subject to certain exceptions).

28.  Furthermore, the information sought is relevant to the requirement that a plan of adjustment must be "fair and equitable" in order to be confirmed over an impaired class's objection under 11 U.S.C. § 1129(b)(1); *see* 48 U.S.C. §§ 2161(a), 2174(b)(1) (incorporating this requirement into PROMESA).  This inquiry necessarily considers the Commonwealth's asssessment of the amount cash available for debt service.  *See, e.g., Lorber v. Vista Irrigation Dist.*, 127 F.2d 628, 639 (9th Cir. 1942) (finding that a municipal debtor's plan of adjustment may be approved only upon a factual finding that the recovery proposed for creditors is "the maximum that the [debtor] could reasonably pay"); *see also In re Velo Holdings Inc.*, 472 B.R. 201, 211 (Bankr. S.D.N.Y. 2012) (noting that one of the goals of Chapter 11 is to maximize recovery for creditors).

29.  In any contested confirmation proceeding, the Oversight Board will have to demonstrate to the Court's satisfaction that the proposed plan of adjustment does all that is reasonably possible to maximize creditor recoveries. *See Lorber*, 127 F.2d at 639; *see also* 6 Collier 943.03[1][f][i] ("A plan under chapter 9 is fair and equitable if the amount to be received by the bondholders is all that they can reasonably expect in the circumstances." (quotation marks omitted)); H.R. Rep. No. 94- 686, 94th Cong., 1st Sess. 33 (1977) (noting that the debtor "must exercise its taxing power to the fullest extent possible for the benefit of its creditors").  Creditors will be entitled to challenge the assumptions, procedures, and analyses that underlie its cash position.

30.  Ambac's information requests are narrowly focused, targeting specific information needed to better understand the assumptions made about the Commonwealth's financial condition

and its ability to pay its debts.  Respondents have not identified an appropriate basis on which to object to these requests; indeed, they have largely conceded their relevance by publishing the Cash Restriction Analysis and Bank Account Analysis.  Ambac accordingly seeks an Order from this Court compelling the Oversight Board and the Commonwealth to produce the requested information.

## CERTIFICATION OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2004-1

31.    Undersigned counsel hereby certify that, prior to filing this motion, they circulated to counsel for the Oversight Board and AAFAF the requests attached hereto, inquired as to their willingness to provide the information sought, and requested to meet and confer regarding this motion.  Counsel to the Oversight Board and AAFAF have not responded to Ambac's inquiry and meet-and-confer request.

## NOTICE

32.    Under the Tenth Amended Case Management Procedures, the deadline to file an objection to this Motion is November 26, 2019 at 4:00pm AST.  Ambac therefore provides the following notice pursuant to Rule 2004-1(d) of the Puerto Rico Local Bankruptcy Rules, modified accordingly with respect to the objection deadline: Any party who objects to the examination shall serve and file an objection or motion for protective order with the United States Bankruptcy Court for the District of Puerto Rico by November 26, 2019 at 4:00pm AST.  If no objection or motion for protective order is timely filed, the court may grant the motion for examination without further notice or a hearing.

- 11 -

## <u>NO PRIOR REQUEST FOR RELIEF</u>

No previous request for the relief sought herein has been made by Ambac to this or any other Court.

## <u>CONCLUSION</u>

Ambac respectfully requests authority to direct the production of documents, the examination of witnesses, and direct responses to interrogatories pursuant to Rule 2004 as set forth herein and consistent with the Proposed Order, and that Ambac be granted such other and further relief as is just and proper.

Dated:  October 28, 2019
         San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email:  rcamara@ferraiuoli.com
          scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5770
Facsimile: (212) 822-5770
Email: ddunne@milbank.com
          aleblanc@milbank.com
          amiller@milbank.com
          gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

**Attachment 1**

## DEFINITIONS

1.      "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority and each of its present or former officers, directors, agents, representatives, employees, and members.

2.      "Agreement" means any agreement reached by the parties indicated in the Request and includes all side letters, schedules, attachments, exhibits, and documents incorporated by reference or otherwise referred to therein.

3.      "Cash Restriction Analysis" means the analysis conducted by Duff & Phelps and/or Ernst & Young in connection with the presentation provided on October 2, 2019.

4.      "CCDA" means the Puerto Rico Convention Center District Authority and each of its present or former officers, directors, agents, representatives, and employees.

5.      "Commonwealth" means the Commonwealth of Puerto Rico, including its executive and legislative branches of government, and each of their present or former representatives, employees, and agents.

6.      "Commonwealth Fiscal Plan" means the most recent Commonwealth fiscal plan certified on May 9, 2019.

7.      "Concerning" means directly or indirectly connected to, on the subject of, about, respecting, regarding, referring to, relevant to, and/or dealing with,

8.      "Document" or "documents" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and the Local Rules for the District of Puerto Rico, including tangible things, correspondence, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), any

electronically stored information, recordings (*e.g.*, voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

9.    "D&P Report" means the Duff & Phelps Cash Report published by the Oversight Board, dated March 12, 2019.

10.    "ERS" means the Puerto Rico Employees Retirement System, and each of its present or former board members, agents, representatives, and employees.

11.    "Federal Funds" is given the definition used in the Cash Restriction Analysis presentation, which is funds received from the Federal Government for specific uses.

12.    "Government-Wide Bank Account Reports" means the May 31, 2019 Summary of Bank Account Balances for the Government of Puerto Rico and its Instrumentalities, dated as of June 28, 2019 and all other historical or subsequent reports.

13.    "Hacienda" means the Department of Finance at the Puerto Rico Department of Treasury and each of its present or former officers, directors, agents, representatives, and employees.

14.    "HTA" means the Puerto Rico Highways and Transportation Authority and each of its present or former officers, directors, agents, representatives, and employees.

15.    "Including" means including but not limited to.

16.    "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico and each of its present or former board members, agents, representatives, and employees.

17.     "PRIFA" means the Puerto Rico Infrastructure Financing Authority and each of its present or former board members, agents, representatives, and employees.

18.     "PSA" means the Plan Support Agreement the Oversight Board announced on June 16, 2019.

19.     "Related to" shall mean "concerning."

20.     "Special Revenue Funds" is given the meaning as it is used and/or defined in the Cash Restriction Analysis presentation.

21.     "Title III Account Holders" means all bank accounts held by Commonwealth instrumentalities and entities that have filed for Title III restructuring.

22.     "UPR" means the University of Puerto Rico.

23.     "Working Capital Requirement" is given the meaning as it is used and/or defined in the Cash Restriction Analysis presentation.

24.     "You" or "Your" refers to (1) the Oversight Board; (2) AAFAF; and (3) the Commonwealth and their respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former elected officials, officers, trustees, accountants, attorneys, employees, agents, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

## **INSTRUCTIONS**

1.     Unless otherwise indicated, the communications and documents hereby requested for production and inspection include all documents in Your possession, custody, or control. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a communication or document is in Your possession, custody, or control if You have actual

- 3 -

possession or custody or the right to obtain the document or a copy thereof upon demand from one
or more of Your employees, representatives, agents, independent contractors, consultants,
attorneys, advisors, accountants, auditors, or any other person or public or private entity that has
actual physical possession thereof.

  a. This includes, but is not limited to, documents physically held by Your agents,
representatives, employees, attorneys, financial advisors, or other advisors.  It also
includes any communications and documents contained in any computer, mobile
device, server, mainframe, or other storage device (including (i) documents on or
in computer memory; (ii) documents on or in computer or network backup files;
and (iii) documents which have been "deleted" or "erased" but are recoverable)
whether located on-site or at an off-site facility, within Your possession, custody,
or control.

  b. For the avoidance of doubt, this also includes any communications and documents
contained on any personal computer, mobile device, server, mainframe, or other
storage device within the possession of Your agents, representatives, employees,
attorneys, financial advisors, or other advisors, regardless of whether the device is
issued or owned by You.

  2. As the term "possession" relates to e-mail, text messages, mobile device chats, and
any other electronically stored information, the term includes, but is not limited to, documents and
communications contained in Your electronic e-mail, cloud-based, and mobile device directories,
including, but not limited to: (a) "deleted" documents and communications that have not been
permanently deleted, including all subdirectories irrespective of the title of such subdirectories;

(b) "sent" documents and communications, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" documents and communications, including all subdirectories irrespective of the title of such subdirectories.

3.      As the Requests relate to e-mail, text messages, mobile device chats, and any other electronically stored information, You are to review the text of each individual document and communication (*i.e.*, not simply review the subject heading or utilize an electronic search device).

4.      With respect to the documents produced, You shall produce them as they are kept in the usual course of business as defined in Rule 34 of the Federal Rules of Civil Procedure.

5.      Selection of documents from files and other sources, and the numbering of such documents, shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

6.      File folders with tabs, labels, or directories of files identifying documents must be produced intact with such tabs, labels, or directories and the documents contained therein.

7.      Documents attached to each other shall not be separated.

8.      A document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

9.      Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto. If a document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

- 5 -

10.     In construing the Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any Request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

11.     The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the Request.

12.     The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

13.     Any ambiguity in a Request shall be construed to bring within the scope of the Request all responses that otherwise could be construed to be outside of its scope.

14.     If You withhold any document requested herein on the basis of any assertion of privilege or other immunity from discovery, that document is to be identified by stating: (i) any addressor and addressee; (ii) any indicated or blind copy; (iii) the document's date, subject matter, and attachment or appendages; and (iv) the nature of the privilege or immunity asserted.

15.     If You object to a Request, You must clearly indicate whether any responsive materials are being withheld on the basis of that objection.  If You object to only a portion of a Request, You must clearly indicate to which part of the Request the objection is directed, whether any responsive materials are being withheld on the basis of that objection, and provide all documents to which objection is not made as if such part or portion of the Request were propounded as a separate Request.

16.     If Your response to a particular Request is that You lack the ability to comply with that Request, You must specify whether the inability to comply is because the particular item or

- 6 -

category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or

has never been, or is no longer, in Your possession, custody, or control, in which case the name

and address of any person or entity known or believed by You to have possession, custody, or

control of that information, item, or category of information must be identified.

17.     If any requested document or other document potentially relevant to this action is

subject to destruction under any document retention or destruction program, the document(s)

should be exempted from any scheduled destruction and should not be destroyed until the

conclusion of this action or unless otherwise permitted by the Court.

18.     Terms not specifically defined herein shall be given their ordinary meanings as You

understand them to be used in the trade or pursuant to ordinary usage.

19.     Unless otherwise specified, the time period covered by these Requests is from

January 1, 2015 to the present, and shall encompass all documents and information relating in

whole or in part to such period.

20.     The Requests shall be deemed to be continuing so as to require supplemental

productions as You obtain additional documents between the time of the initial production

hereunder and the time of trial in this action.

## DOCUMENT REQUESTS

### REQUEST NO. 1

All back-up materials, including documents, communications, studies, data, and/or analyses, for
the "Summary of Cash Restriction Analysis" presentation, dated October 2, 2019.

### REQUEST NO. 2

All documents, communications, and information related to Duff & Phelps' investigation into the
cash at government and fiscal plan entities, certain other Title III debtors, and UPR.

**REQUEST NO. 3**

All documents, communications, and information related to the assessment of the Commonwealth's necessary operating expenses, including any analyses of whether unrestricted cash exceeds necessary operating expenses.

**REQUEST NO. 4**

All documents, communications, and information related to any and all logistical problems presented by the Commonwealth's cash management regime in connection with Duff & Phelps' investigation.

**REQUEST NO. 5**

All documents, communications, and information related to additional procedures that were developed to obtain more timely access to account balances and reconcile balances to government reporting.

**REQUEST NO. 6**

All documents and communications sufficient to show the direction given to Duff & Phelps regarding assumptions made in connection with the Cash Restriction Analysis, including, but not limited to preemption issues and designation of funds as "restricted."

**REQUEST NO. 7**

A key to the documents produced in the folder titled "1.5 Cash Documents" on the Intralink data room that would allow parties to replicate the Cash Restriction Analysis performed in connection with the presentation provided on October 2, 2019, including the relevant identifying information for each document (*i.e.* bates numbers).

**REQUEST NO. 8**

All documents, communications, and information concerning (i) additional tasks and activities that have been undertaken or considered by the Oversight Board, AAFAF, or Duff & Phelps to more fully develop information referred to in the D&P Report, or (ii) the preparation of a working capital and/or liquidity analysis by the Oversight Board, AAFAF, Duff & Phelps, or any other entity acting on behalf of the Oversight Board or AAFAF.

**REQUEST NO. 9**

All documents, communications, and information obtained through the "Inquiry and Data Collection Process" described in paragraphs 43 through 46 of the D&P Report.

- 8 -

**REQUEST NO. 10**

All documents, communications, and information evidencing the "analytical procedures" (as described in the D&P Report), whether past and ongoing, used by AAFAF, Duff & Phelps, or any other entity acting on behalf of Oversight Board or AAFAF to determine whether or not account holders' cash flows are restricted, or reflecting the conclusions reached by the Oversight Board, AAFAF, Duff & Phelps, or any other entity acting on behalf of the Oversight Board or AAFAF in employing such procedures.

**REQUEST NO. 11**

All documents, communications, and information contained in the master database, described in paragraph 15 of the D&P Report.

**REQUEST NO. 12**

All documents, communications, and information evidencing how the account holders label their funds as restricted or unrestricted.

**REQUEST NO. 13**

All documents, communications, and information used in the course of, or collected or generated as a result of, the "Analytical Steps and Reporting" processes described in paragraphs 47 through 54 of the D&P Report.

**REQUEST NO. 14**

All documents, communications, and information reflecting the sources and usage of funds in accounts identified in the D&P Report, and, relatedly whether those uses include the payment of any obligations that are projected to be paid from Commonwealth resources under the Commonwealth Fiscal Plan certified by the Oversight Board.

**REQUEST NO. 15**

All documents, communications, and information reflecting or used to arrive at the "Results" described in paragraphs 55 through 80 of the D&P Report.

**REQUEST NO. 16**

All documents, communications, and information concerning, or collected or generated as a result of, the "Next Steps" described in paragraphs 81 through 83 of the D&P Report.

**REQUEST NO. 17**

All documents, communications, and information concerning the basis for the termination of Duff & Phelps and/or the decision not to retain or reengage Duff & Phelps.

**REQUEST NO. 18**

All documents, communications, and information concerning the criteria or basis for retaining or engaging an advisor to continue work begun by Duff & Phelps or expand upon the work done by Duff & Phelps.

**REQUEST NO. 19**

Documents sufficient to identify the board members of each public corporation not receiving general funds from the Commonwealth, and documents concerning the selection and method for selecting such board members.

**REQUEST NO. 20**

Documents sufficient to identify the board members of each public corporation receiving general funds from the Commonwealth and documents concerning the selection and method for selecting such board members.

**REQUEST NO. 21**

Documents and information sufficient to determine whether the public corporations listed as "not receiving general funds" have ever received indirectly any government appropriations, including how much of the $1.381bn held by such public corporations can be traced back to the general fund.

**REQUEST NO. 22**

Documents sufficient to show the number of bank accounts held by each public corporation, both those receiving general funds and those not receiving general funds, excluding the bank account information provided in the documents produced in folder titled "1.5 Cash Documents" on the Intralinks data room.

**REQUEST NO. 23**

Documents sufficient to show the identifying information of each bank account held by public corporations, both those receiving general funds and those not receiving general funds, including but not limited to account holder, financial institution, cash balance, and type of entity, excluding the bank account information provided in the documents produced in folder titled "1.5 Cash Documents" on the Intralinks data room.

**REQUEST NO. 24**

Documents sufficient to show the ownership and control of each bank account held by public corporations, both those receiving general funds and those not receiving general funds, as reviewed in the Cash Restriction Analysis conducted by Duff & Phelps.

- 10 -

## REQUEST NO. 25

All documents, communications, and information related to the assessment of the ownership and control of bank accounts held by public corporations not receiving general funds, including but not limited to analysis reports.

## REQUEST NO. 26

All documents and communications, including emails, notes, and memoranda, concerning efforts to identify and obtain information from all relevant bank accounts, including but not limited to outreach to Title III account holders.

## REQUEST NO. 27

Documents sufficient to identify all entities that have failed to provide information regarding cash accounts.

## REQUEST NO. 28

All documents, communications, and information concerning efforts to obtain information regarding cash accounts from entities that have failed to do so, including efforts already made and any planned efforts to obtain this information.

## REQUEST NO. 29

Documents sufficient to identify the location and amount of monies in any and all public corporation accounts that contain revenues from the following sources:

      a.     The first $117 million of rum taxes collected and covered into the treasury of Puerto Rico pursuant to 3 L.P.R.A. §§ 7652(a)(3), 1914;

      b.     All funds, including but not limited to hotel taxes, collected pursuant to 13 L.P.R.A. § 2271v;

      c.     HTA excise taxes collected pursuant to 13 L.P.R.A. § 31751(a);

      d.     Toll revenues collected and held by HTA pursuant to 9 L.P.R.A. § 2013(a)(2); and

      e.     Vehicle fees collected by HTA pursuant to 9 L.P.R.A. §§ 2021, 5681.

**REQUEST NO. 30**

Documents sufficient to show the flow of funds in any and all public corporation accounts that contain revenues from the following sources, including but not limited to the origin and sources of those funds:

a.    The first $117 million of rum taxes collected and covered into the treasury of Puerto Rico pursuant to 3 L.P.R.A. §§ 7652(a)(3), 1914;

b.    All funds, including but not limited to hotel taxes, collected pursuant to 13 L.P.R.A. § 2271v;

c.    HTA excise taxes collected pursuant to 13 L.P.R.A. § 31751(a);

d.    Toll revenues collected and held by HTA pursuant to 9 L.P.R.A. § 2013(a)(2); and

e.    Vehicle fees collected by HTA pursuant to 9 L.P.R.A. §§ 2021, 5681.

**REQUEST NO. 31**

Documents sufficient to show the lowest intermediate balance of any and all public corporate accounts that contain revenues from the following sources:

a.    The first $117 million of rum taxes collected and covered into the treasury of Puerto Rico pursuant to 3 L.P.R.A. §§ 7652(a)(3), 1914;

b.    All funds, including but not limited to hotel taxes, collected pursuant to 13 L.P.R.A. § 2271v;

c.    HTA excise taxes collected pursuant to 13 L.P.R.A. § 31751(a);

d.    Toll revenues collected and held by HTA pursuant to 9 L.P.R.A. § 2013(a)(2); and

e.    Vehicle fees collected by HTA pursuant to 9 L.P.R.A. §§ 2021, 5681.

**REQUEST NO. 32**

Documents sufficient to show the location and amount of monies in HTA, PRIFA, and CCDA's respective bank accounts that is considered restricted under the Cash Restriction Analysis conducted by Duff & Phelps and/or Ernst & Young.

**REQUEST NO. 33**

Documents sufficient to show the flow of funds to HTA, PRIFA, and CCDA's respective bank accounts, including but not limited to the origin and sources of those funds.

**REQUEST NO. 34**

All documents, communications, and information regarding any analyses of offsets or allocations of revenues in future fiscal years for all Federal Funds held in all public corporation accounts.

**REQUEST NO. 35**

Documents sufficient to show the identifying information of each bank account at Hacienda that holds clawback funds collected prior to PROMESA's enactment, including but not limited to account holder, financial institution, cash balance, and type of entity.

**REQUEST NO. 36**

Documents sufficient to identify designated use for any Commonwealth or instrumentality funds identified in the cash analysis as restricted or as Special Revenue Funds, and the basis for such designation.

**REQUEST NO. 37**

All documents, communications, studies, data, and/or analyses prepared for or relied upon in connection with an analysis of Federal Funds, including but not limited to any analysis of whether, when, and how Federal Funds have been allocated, as well as any analysis of leftover Federal Funds received in prior fiscal years that remain unspent.

**REQUEST NO. 38**

All documents related to federal consent decrees that have been and will be considered in the future in connection with the Cash Restriction Analysis.

**REQUEST NO. 39**

Documents sufficient to identify designated use for any Federal Funds identified in the cash analysis as restricted or as Federal Funds, and the basis for such designation.

- 13 -

**REQUEST NO. 40**

All documents, communications, studies, data, and/or analyses prepared for or relied upon in connection with the working capital calculation, as provided in the Cash Restriction Analysis.

**REQUEST NO. 41**

All documents, communications, studies, data, and/or analyses prepared for or relied upon in connection with any assumptions relied upon in calculating the Working Capital Requirement, as provided in the Cash Restriction Analysis.

**REQUEST NO. 42**

All documents, communications, studies, data, and/or analyses prepared for or relied upon in connection with any assumptions relied upon in calculating the convenience class payout amount, as provided in the Cash Restriction Analysis.

**REQUEST NO. 43**

Documents sufficient to identify all non-cash assets being acquired by ERS.

**REQUEST NO. 44**

All documents, communications, and information related to the decision to acquire assets from ERS.

**REQUEST NO. 45**

All documents, communications, and information related to the valuation of assets being acquired by ERS.

**REQUEST NO. 46**

All documents, communications, and information related to any marketing efforts with regard to the assets being acquired from ERS.

**REQUEST NO. 47**

All documents, communications, and information related to the valuation of other public corporations' non-cash assets conducted as part of the Cash Restriction Analysis.

- 14 -

**REQUEST NO. 48**

All documents, communications, studies, data, and/or analyses prepared for or relied upon in connection with any analyses of the annual budgets of public corporations receiving general funds, as reviewed in the Cash Restriction Analysis conducted by Duff & Phelps and/or Ernst & Young, including but not limited to any analyses of whether and why these public corporations have experienced budget surpluses.

**REQUEST NO. 49**

Any and all engagement letters with Ernst & Young that describe the scope of work that E&Y was or has been hired to do concerning the cash balances held by the Commonwealth and its agencies, instrumentalities, and other political subdivisions, and any restrictions on the use of such cash balances.

**REQUEST NO. 50**

All documents concerning or related to Ernst & Young's cash investigation.

**REQUEST NO. 51**

All documents, communications, and information provided by Ernst & Young concerning any restrictions on the use of funds in the Commonwealth cash accounts that have been identified by Ernst & Young.

**REQUEST NO. 52**

All documents, communications, and information sufficient to determine how the Emergency Reserve Fund, as defined under P.R. Stat Tit. 23 § 106, was calculated.

**REQUEST NO. 53**

All documents, communications, and information concerning historical details on the lottery-related funds cash balance described on p. 7 & p. 19 of the May 31, 2019 Summary of Bank Account Balances for the Government of Puerto Rico and its Instrumentalities, dated as of June 28, 2019, whether related to the period prior to or after May 31, 2019.

**REQUEST NO. 54**

All documents, communications, and information concerning the calculation of the $2,000,000,000 of Cash and $900,000,000 of Excess Cash in the PSA.

- 15 -

**<u>REQUEST NO. 55</u>**

All documents, communications, and information forming the basis for the conclusion that cash being used for essential services is subject to restriction.

**<u>Exhibit A</u>**


**Proposed Order**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## [PROPOSED] ORDER GRANTING AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004

Upon the motion ("the Motion")[2] of Ambac Assurance Corporation ("Ambac"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an Order authorizing Ambac to take Rule 2004 discovery of (i) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) of the Puerto

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS) (Last Four Digits of Federal Tax ID: 3801)   (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Rico Oversight, Management, and Economic Stability Act ("PROMESA"); (ii) the Puerto Rico

Fiscal Agency and Financial Advisory Authority ("AAFAF"); and (iii) the Commonwealth as well

as the examination of and production of documents from entities determined by Ambac to have

information in connection with Ambac's investigation, and responses to interrogatories as more

fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. § 1331 and PROMESA § 306(a); and venue being

proper before this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a); and notice of

the Motion having been given as provided in the Motion, and such notice having been adequate

and appropriate under the circumstances; and it appearing that no other or further notice of the

Motion need be provided; and the Court having held a hearing to consider the relief requested in

the Motion; and the Court having found and determined that the relief sought in the Motion and

granted herein is in the best interests of the Debtor, its respective creditors, and all parties in

interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. The Motion is granted as provided herein.

2. The Oversight Board, AAFAF, and the Commonwealth shall comply with the

document requests attached hereto as Attachment 1 by no later than ten (10) days after entry of

this Order.

3. The Oversight Board, AAFAF, and the Commonwealth shall designate an

individual or individuals with knowledge of the matters described in Attachment 1 hereto (the

"Designated Individual(s)").   The Designated Individual(s) shall produce themselves for

examination by counsel to Ambac under oath and in accordance with Bankruptcy Rule 2004 on such date and time and at such location as may be designated in writing by counsel to Ambac.

4.      Ambac is authorized, pursuant to Bankruptcy Rule 2004, to issue such subpoenas as may be necessary to compel the production of documents and/or testimony of a third party witness to accomplish the discovery authorized by this Order.

5.      Third party witnesses shall have fourteen (14) days from the service of a subpoena to either (i) produce to Ambac all responsive non-privileged documents requested in Ambac's subpoena, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

6.      Third party witnesses are directed to either (i) submit to oral examination upon reasonable notice and, absent other agreement with Ambac, in no event more than fourteen (14) days from the date of the service of a deposition subpoena upon such witness, or (ii) file with the Court an objection or response to the subpoena with a hearing promptly scheduled.

7.      Ambac shall serve each subpoena and a copy of this Order on the target of the subpoena.

8.      Nothing herein shall limit Ambac's right to request additional discovery, including any additional documents or depositions, under Bankruptcy Rule 2004 and applicable law, based on any information that may be revealed as a result of the information provided pursuant to this Order or otherwise.

9.      This Court shall retain jurisdiction to resolve any dispute arising or related to this Order and to interpret, implement and enforce the provisions of this Order.

10.     This Order is without prejudice to Ambac's right to file further motions seeking additional documents pursuant to Bankruptcy Rule 2004 or any other applicable law.

SO ORDERED.


Dated: _____, 2019

      San Juan, Puerto Rico


                                _____

                                HONORABLE LAURA TAYLOR SWAIN

                                UNITED STATES DISTRICT JUDGE

# Exhibit B

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision



# Mediation: Summary of Cash Restriction Analysis

October 2, 2019

## Executive Summary

- The FOMB and its advisors have conducted an extensive analysis of cash at the Commonwealth and its related entities to determine relevant restrictions

  - AAFAF involvement and support has facilitated greater cooperation and information flow

  - Analysis included both public corporations and the Commonwealth and its agencies, the latter on a granular account-level basis

  - All accounts at the Commonwealth and its agencies that held over $6.9 million in cash or securities were reviewed, or approximately 98% of the total balance

  - Unlike AAFAF reporting, the FOMB and EY included both cash and securities accounts in the review

  - Analysis based on figures and account balances available as of fiscal year-end 2019 (June 30, 2019)

- Analysis currently estimates $6.9 billion of unrestricted cash

  - Given cash requirements under the current draft of the Plan, unrestricted cash for creditors beyond the requirements of the Excess Cash definition is limited at this point

- Though the analysis is substantially final, FOMB and AAFAF teams are continuing to diligence other key items, including commitments under federal consent decrees and specific restricted amounts within certain accounts

- Goal is to provide creditor advisors access to documentary back-up for restricted accounts after the October 2nd presentation

  - Objective to provide maximum transparency to the creditor community without compromising certain confidential and/or sensitive account-level information

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision



# Temporary Benefits to Commonwealth Cash

A large portion of the Commonwealth's fiscal outperformance has been the result of temporary and one-time items, several of which are discussed below.

| | Description |
|---|---|
| **Corporate Income Tax** | ▪ The Corporate Income Tax ("CIT") revenue uptick is likely to be temporary<br><br>▪ While CIT increased 40% year-over-year, the May Fiscal Plan forecasted 23% growth and several more years of above-trend collections before reverting to historical levels<br><br>▪ Mainland US and OECD economies on average do not sustain these types of booms<br><br>▪ Risk due to the concentration of a few large corporate entities that could leave Puerto Rico or become less profitable |
| **Act 154** | ▪ Act 154 excise tax revenues are vulnerable with the loss of federal tax creditability or firm investment priorities, federal tax reform, and supply chain diversification |
| **Motor Vehicle Tax** | ▪ After four quarters of year-over-year growth in motor vehicle tax revenues, the trend has subsided and growth appears to be slowing<br><br>▪ The surge in FY18-FY19 was likely a pull forward of demand |

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Methodology and Approach for Assessing Restrictions

The total cash balance can be broken down into several component categories to facilitate analysis. Unrestricted cash represents potential value available to Commonwealth Title III creditors.

| | | Amount | Description |
|---|---|---|---|
| **Public Corporations** | **Separate Fiscal Plan / Title III Filing** | $5,111 | ▪ ERS, COFINA, COSSEC, CRIM, GDB, HTA, PBA, PRASA, PREPA, and UPR<br>▪ Cash presumed to be addressed through individual fiscal plans |
| | **Receiving General Funds** | 991 | ▪ Public corporation unrestricted cash based on (i) working capital requirement (2 months of Special Revenue Fund and Federal Fund FY2020 budget) and (ii) FY2020 appropriations |
| | **Not Receiving General Funds** | 1,381 | ▪ Treated as restricted as the FOMB lacks recourse to access cash by reducing FY2020 appropriations |
| **Plan of Adjustment Entities** | **Commonwealth Treasury** | 8,410 | ▪ TSA assumed to be unrestricted other than emergency funds and estimated federal funds surplus<br>▪ Hacienda classifications based upon individual account review |
| | **Agencies** | 1,975 | ▪ Conducted individual account review to classify into the following categories:<br>– Restricted categories include emergency, federal funds, court order, federal law, third parties, third party contract, and bond funds<br>– Budget appropriations and cash earmarked (but not pledged) for creditors treated as unrestricted |
| | **Not Reviewed** | 190 | ▪ Plan of Adjustment entities not yet reviewed<br>▪ Remaining $190 million held in 349 accounts<br>▪ Accounts will be reviewed on rolling basis to finalize restriction analysis |

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

## Summary of Definitions for Account Analysis

**Restricted Accounts**

| | |
|---|---|
| **Court Order** | Federal court order restricting use of funds. |
| **Emergency** | Funds restricted for emergency use by the FOMB. |
| **Federal Funds** | Funds received from the Federal Government for specific uses. |
| **Federal Law** | Funds restricted by federal laws or regulations. |
| **Third Party** | Funds belonging to third parties and held by a government entity in custodial or other segregated accounts. |
| **Bond Funds** | Tax-exempt bond proceeds with restricted use under the IRC. |
| **Third Party Contract** | Funds restricted for use due to contracts with third parties (e.g. debt service reserve funds held by Trustee). |

**Unrestricted Accounts**

| | |
|---|---|
| **Unrestricted** | Funds that do not have legal restrictions regardless of whether such funds were generated by a government entity or appropriated to such entity by the Commonwealth under Puerto Rico law. |

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

4

# Sources of Cash: 6/30/19 Measurement Date

*($ in millions)*

| | Unrestricted | Restricted | Total | Note |
|---|---|---|---|---|
| **Public Corporations:** | | | | |
| Separate Fiscal Plan / Title III Entity[1] | $27 | $5,084 | $5,111 | A |
| Receiving General Funds | 119 | 871 | 991 | B |
| Not Receiving General Funds | – | 1,381 | 1,381 | C |
| **Subtotal** | **$146** | **$7,336** | **$7,482** | |
| | | | | |
| **Plan of Adjustment Entities:** | | | | |
| Commonwealth Treasury (TSA + Hacienda) | $6,523 | $1,887 | $8,410 | D |
| Agencies[2] | 235 | 1,739 | 1,975 | D |
| Not Reviewed | – | – | 190 | E |
| **Subtotal** | **$6,759** | **$3,626** | **$10,575** | |
| **Total** | **$6,905** | **$10,962** | **$18,057** | |

(1)   Includes ERS, COFINA, COSSEC, CRIM, GDB, HTA, PBA, PRASA, PREPA, and UPR.
(2)   Includes $10mm of "inconclusive" accounts treated as unrestricted for the purposes of this table and which are subject to ongoing review.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Uses of Cash: 6/30/2019 Measurement Date

*($ in millions)*

| | As of May 31, 2019<br>As of PSA Signing<br>(AAFAF Data) | As of June 30, 2019<br>Revised Analysis<br>(EY Data) |
|---|---|---|
| Total Cash | $14,010 | $14,730 |
| Total Investments | – | 3,327 |
| (-) Non-Commonwealth Restricted / Non-Title III Entities | (2,904) | (7,336) |
| (-) Commonwealth and its Agencies Restricted | (4,157) | (3,626) |
| (-) Not Reviewed | – | (190) |
| (-) Timing Adjustments | (882) | – |
| **Potential Eligible PSA Cash** | **6,067** | **6,905** |
| | | |
| PSA Requirements (Excess Cash Definition) | | |
| (-) Working Capital Requirement | (2,000) | (2,000) |
| (-) Base Cash Consideration to GO / PBA Creditors | (2,000) | (2,000) |
| (-) Union and Retiree Settlements | (1,600) | (1,600) |
| (-) Cash / Bond Consideration Toggle | (400) | (400) |
| (-) Maximum Excess Cash | (900) | (900) |
| **Potential PSA Unrestricted Cash** | **(833)** | **5** |
| | | |
| (-) Federal Consent Decrees | – | TBD |
| (-) Convenience Class | – | (200) |
| (-) Cash Required to Purchase ERS Assets[1] | (632) | (632) |
| **Potential Remaining Cash / (Deficit)** | **($1,465)** | **($827)** |
| | | |
| **Memo: Bridge to June 30, 2019** | | |
| Additional TSA Cash Through June 28, 2019 | $339 | |
| Convenience Class | (200) | |
| Additional Cash Determined to be Unrestricted | 499 | |
| **Adjusted Remaining Cash** | **($827)** | |

(1)   Calculated as 95% of $479mm of Employee Loans, 50% of $75mm of private equity investments, and $139mm of COFINA holdings.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision



**Appendix**

 **A** **Public Corporations with Own Fiscal Plan / Title III Filing**

*($ in millions)*

| Entity | FY2020 Commonwealth Budget | | | | Non-CW Budget | Total Cash | Potential Unrestricted Cash | Implied Restricted Cash |
|---|---|---|---|---|---|---|---|---|
| | General Fund | Special Revenue Fund | Federal Funds | Total | | | | |
| Employee Retirement System | $9 | $38 | – | $47 | – | $705 [3] | $9 | $696 |
| COSSEC | – | – | – | – | – | 313 | – | 313 |
| CRIM (Fiscal Plan and Budget certification in process) | – | – | – | – | – | 55 | – | 55 |
| Government Development Bank (Winding Down) | – | – | – | – | 159 | 46 | – | 46 |
| Public Building Authority (PBA) | – | 127 | – | 127 | – | 100 | – | 100 |
| Puerto Rico Aqueducts and Sewers Authority (PRASA) | – | – | – | – | 1,351 | 851 | – | 851 |
| Puerto Rico Electric Power Authority (PREPA) | – | – | – | – | 2,998 | 1,332 | – | 1,332 |
| Puerto Rico Highways and Transportation Authority (HTA)[1] | – | 67 | – | 67 | 797 | 413 | – | 413 |
| Puerto Rico Sales Tax Financing Corporation (COFINA) | – | – | – | – | 438 | 676 | – | 676 |
| University of Puerto Rico (UPR)[2] | 560 | – | – | 560 | 837 | 618 | 18 | 600 |
| **Total** | **$569** | **$232** | **–** | **$801** | **$6,580** | **$5,111** | **$27** | **$5,084** |

Note: FY20 Budget represents appropriations from the Commonwealth. Does not include direct federal funding.
(1) HTA to receive a SRF appropriation from the Commonwealth of $67mm in FY20. Amount is held in a treasury custody account.
(2) UPR receives ~$304mm in federal receipts per year (June 3, 2019 fiscal plan). UPR balance includes both segregated retirement accounts, bond funds held with trustees, and funds for operations. As of 6/30/19, UPR had 67 days of FY19 budget expenditures in unrestricted cash balances, in line with comparably rated universities.
(3) Includes $214mm in Hacienda account restricted for ERS creditors.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision



# B  Public Corporations Receiving General Funds

*($ in millions)*

| Entity | FY2020 Commonwealth Budget | | | | Total Cash | Working Capital Estimate | Potential Unrestricted Cash | Implied Restricted Cash |
|---|---|---|---|---|---|---|---|---|
| | General Fund | Special Revenue Fund | Federal Funds | Total | | | | |
| Agricultural Enterprises Development Administration (ADEA)[1] | $65 | $60 | – | $126 | $79 | ($10) | $43 | $36 |
| Center for Research, Education and Services Medical Care and Diabetes | 0 | 0 | – | 1 | 1 | (0) | 0 | 0 |
| Company for the Integral Development of the "Península de Cantera" | 0 | 1 | 1 | 2 | 1 | (0) | 0 | 1 |
| Corporation for the "Caño Martin Peña" Enlace Project | 10 | 4 | 0 | 15 | 13 | (1) | 10 | 2 |
| Fine Arts Center Corporation | 3 | 3 | – | 6 | 4 | (0) | 3 | 1 |
| Fiscal Agency & Financial Advisory Authority[2] | 104 | – | – | 104 | 58 | – | – | 58 |
| Institute of Puerto Rican Culture | 15 | 0 | 1 | 16 | 6 | (0) | 5 | 0 |
| Local Redevelopment Authority of the Lands | 1 | 1 | 1 | 3 | 2 | (0) | 1 | 1 |
| Medical Services Administration of Puerto Rico[3] | 72 | 113 | – | 184 | 49 | (19) | 4 | 45 |
| Musical Arts Corporation | 5 | 2 | – | 8 | 6 | (0) | 5 | 0 |
| Puerto Rico Conservatory of Music Corporation | 5 | 4 | – | 9 | 2 | (1) | 1 | 1 |
| Puerto Rico Health Insurance Administration | 917 | 364 | 1,661 | 2,942 | 284 | (337) | – | 284 |
| Puerto Rico Housing Finance Corporation | 8 | 30 | 159 | 197 | 79 | (31) | 8 | 70 |
| Puerto Rico Infrastructure Financing Authority | 2 | 6 | – | 8 | 300 | (1) | 2 | 298 |
| Puerto Rico Integrated Transit Authority | 54 | 38 | 15 | 107 | 15 | (9) | 7 | 9 |
| Puerto Rico Public Private Partnership Authority | 13 | – | 155 | 169 | 31 | (26) | 5 | 26 |
| Puerto Rico Public Broadcasting Corporation | 7 | 2 | 2 | 11 | 3 | (1) | 2 | 1 |
| Puerto Rico School of Plastic Arts | 2 | 2 | – | 5 | 4 | (0) | 2 | 1 |
| Solid Waste Authority | 3 | 1 | – | 4 | 12 | (0) | 3 | 9 |
| Trade & Export Company | 1 | 13 | 0 | 14 | 15 | (2) | 1 | 14 |
| University of Puerto Rico Comprehensive Cancer Center | 15 | 27 | 4 | 46 | 29 | (5) | 15 | 14 |
| **Total** | **$1,305** | **$670** | **$2,001** | **$3,975** | **$991** | **($445)** | **$119** | **$871** |

(1)  Includes $26.1mm of restricted cash.
(2)  Elimination of excess cash due to likely use for professional fees and other budgeted uses.
(3)  Includes $26.2mm of restricted cash.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision



 **C** **Public Corporations NOT Receiving General Funds**

*($ in millions)*

| Entity | FY2020 Commonwealth Budget | | | | Total Cash | Working Capital Estimate | Potential Unrestricted Cash | Implied Restricted Cash |
|---|---|---|---|---|---|---|---|---|
| | General Fund | Special Revenue Fund | Federal Funds | Total | | | | |
| Agricultural Insurance Corporation | – | $3 | – | $3 | $7 | ($1) | – | $7 |
| Automobile Accidents Compensation Administration | – | 87 | – | 87 | 140 | (14) | – | 140 |
| Cardiovascular Center Corporation of Puerto Rico and the Caribbean | – | 72 | – | 72 | 14 | (12) | – | 14 |
| Convention Center of District Authority | – | 28 | – | 28 | 14 | (5) | – | 14 |
| Economic Development Bank of PR | – | 12 | – | 12 | 126 | (2) | – | 126 |
| Institutional Trust of the National Guard of Puerto Rico | – | 7 | – | 7 | 42 | (1) | – | 42 |
| Land Authority | – | 23 | – | 23 | 19 | (4) | – | 19 |
| Land Authority of Puerto Rico | – | 8 | – | 8 | 14 | (1) | – | 14 |
| Model Forest Of Puerto Rico (CLOSED) | – | – | – | – | 0 | – | – | 0 |
| Municipal Finance Corporation (COFIM) | – | 130 | – | 130 | 138 | (22) | – | 138 |
| Puerto Rico Industrial Development Company | – | 42 | 0 | 42 | 59 | (7) | – | 59 |
| Puerto Rico Municipal Finance Agency | – | – | – | – | 282 | – | – | 282 |
| Puerto Rico Ports Authority | – | 136 | 55 | 190 | 37 | (32) | – | 37 |
| Puerto Rico Tourism Company | – | 105 | – | 105 | 135 | (17) | – | 135 |
| Puerto Rico Tourism Development Fund | – | – | – | – | 11 | – | – | 11 |
| State Insurance Fund Corporation | – | 453 | – | 453 | 180 | (76) | – | 180 |
| Teacher's Retirement System | – | 16 | – | 16 | 150 | (3) | – | 150 |
| The Children's Trust | – | – | – | – | 12 | – | – | 12 |
| **Total** | **–** | **$1,121** | **$55** | **$1,176** | **$1,381** | **($196)** | **–** | **$1,381** |

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# D  Commonwealth Agencies

*($ in millions)*

| | Court Order | Emergency | Restricted Federal Funds | Federal Law | Third Party | Bond Funds | Third Party Contract | Inconclusive | Unrestricted | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Commonwealth:** | | | | | | | | | | |
| TSA | – | $520 | $659 | – | – | – | – | – | $6,099 | $7,278 |
| Hacienda[1] | 22 | – | 114 | – | 538 | 34 | – | 10 | 415 | 1,132 |
| **Commonwealth Subtotal** | **$22** | **$520** | **$773** | **–** | **$538** | **$34** | **–** | **$10** | **$6,514** | **$8,410** |
| | | | | | | | | | | |
| **Agencies:** | | | | | | | | | | |
| 911 Emergency System Bureau | – | – | – | $23 | – | – | – | – | – | $23 |
| Child Support Administration | – | – | – | – | 58 | – | – | – | – | 58 |
| Department of Education | – | – | – | – | – | – | – | – | 23 | 23 |
| Department of Labor [2] | – | – | – | 687 | 37 | – | – | – | 104 | 828 |
| Electronic Lottery[1] | – | – | – | – | 72 | – | – | – | – | 72 |
| Office of Court Administration | – | – | – | – | 289 | – | – | – | 44 | 334 |
| Office of Legislative Services | – | – | – | – | – | – | – | – | 16 | 16 |
| Public Housing Administration | – | – | 433 | – | – | – | 50 | – | – | 483 |
| Puerto Rico Police Bureau | – | – | – | – | – | – | – | – | 19 | 19 |
| Telecommunications Regulatory Board | – | – | – | 15 | – | – | – | – | – | 15 |
| Traditional Lottery[1] | – | – | – | – | 75 | – | – | – | – | 75 |
| Other | – | – | – | – | – | – | – | – | 30 | 30 |
| **Agencies Subtotal** | **–** | **–** | **$433** | **$725** | **$531** | **–** | **$50** | **–** | **$235** | **$1,975** |
| **Total** | **$22** | **$520** | **$1,206** | **$725** | **$1,069** | **$34** | **$50** | **$10** | **$6,749** | **$10,385** |

(1)  Funds in the Lottery accounts hold both operational funds for the lottery as well as prize money.
(2)  Includes funds collected from private employers for disabilities benefit fund. FOMB and AAFAF continuing to diligence restriction.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# **D**  **Treasury Single Account Federal Funding**

- The TSA is a conduit for many reimbursement-based and advance-based federal programs for central government agencies
  - The working capital reserve accounts for potential timing differences for these programs
  - The working capital reserve does not account for unspent FEMA, NAP, and Medicaid funds in the TSA
- The process to reconcile Federal Fund TSA activity is ongoing and the below represents a preliminary view on the major federally funded programs where the TSA acts as a conduit to distribute Medicaid funding to ASES, Nutritional Assistance funding to the Department of Family, and FEMA funding to various central government agencies
  - The TSA receives the funding and then distributes, meaning the TSA will be in a net surplus position for these programs
  - To the extent the TSA is overfunded in any period, future distributions from the Federal Government would be reduced, meaning there are no permanent excess funds in the TSA

*($ in millions)*

| | FY17 | FY18 | FY19 | Total | Estimated Range Low | Estimated Range Mid | Estimated Range High |
|---|---|---|---|---|---|---|---|
| **Inflows:** | | | | | | | |
| Nutritional Assistance Program (NAP)[1] | 2,040 | 2,344 | 2,897 | 7,281 | 7,281 | 9,321 | 13,401 |
| Medicaid (ASES)[2] | 1,735 | 1,894 | 2,924 | 6,553 | 6,553 | 8,288 | 11,757 |
| Disaster spend[3] | – | 107 | 1,461 | 1,568 | 1,568 | 1,568 | 1,568 |
| **Outflows:** | | | | | | | |
| Nutritional Assistance Program (NAP)[1] | (2,010) | (2,289) | (2,810) | (7,109) | (7,109) | (9,119) | (13,140) |
| Medicaid (ASES)[2] | (1,721) | (1,712) | (2,693) | (6,126) | (6,126) | (7,847) | (11,289) |
| Disaster spend[3] | – | (108) | (1,353) | (1,461) | (1,461) | (1,461) | (1,461) |
| **Surplus / (Deficit):** | | | | | | | |
| Nutritional Assistance Program (NAP)[1] | $30 | $55 | $87 | 172 | $172 | $201 | $231 |
| Medicaid (ASES)[2] | 14 | 182 | 231 | 426 | 276 | 351 | 426 |
| Disaster spend[3] | – | (1) | 108 | 106 | 106 | 106 | 106 |
| **Total** | **$44** | **$236** | **$425** | **$704** | **$554** | **$659** | **$764** |

(1) NAP funding is advanced to the TSA and then sent to the Dept of Family. There's typically a week lag in funding. As NAP funding has grown, the surplus in the TSA has as well. Low = cumulative FY17 - FY19; Mid = Low + additional $30M (FY17 amount) for prior year; Higher = Low + additional $60M for prior years

(2) The TSA receives Medicaid funding from the Federal Government and then distributes it to ASES as a reimbursement for MCO premiums paid by ASES. The temporary build in Medicaid funds at the TSA is likely due to the Commonwealth's transition to the new health care model in 2019 and delayed reconciliation between CMS and ASES with respect to enrollment.

(3) Disaster spend started in FY18 and the TSA currently has received FEMA funding of $106M that has not been disbursed to end recipients.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision



## E    Plan of Adjustment Not Reviewed

*($ in millions)*

| | |
|---|---:|
| Office of Court Administration | $61 |
| Department of Economic Development and Commerce | 25 |
| Public Housing Administration | 16 |
| Department of Treasury | 13 |
| Child Support Administration | 12 |
| Department of Labor and Human Resources | 12 |
| Department of Housing | 12 |
| Puerto Rico Energy Commission | 12 |
| Superintendent of the Capitol | 6 |
| Senate | 5 |
| Government Ethics Office | 4 |
| Statistics Institute of PR | 4 |
| Socioeconomic Development of the Family Administration | 2 |
| Department of Correction and Rehabilitation | 1 |
| Department of Sports and Recreation | 1 |
| Department of Education | 1 |
| Puerto Rico Education Council | 1 |
| Office of the Solicitor - Special Independent Prosecutor | 1 |
| Family and Children Administration | 1 |
| Independent Consumer Protection Office | 1 |
| Other | 2 |
| **Total** | **$190** |

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408
Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Exhibit C

# Bank Account Analysis:
## *Status Update – June 30, 2019 Balances*

**As of October 2, 2019**



Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Table of Contents



| | | |
|---|---|---|
| 1. Executive Summary | 3 | |
| 2. Overview of Commonwealth Liquidity Activities | 5 | |
| 3. Detailed Bank Account Analysis | 12 | |
| 4. Appendix | 17 | |

# 1. Executive Summary

# Executive Summary

| | |
|---|---|
| **Presentation Objectives** | - Explain **forensic bank account and cash balance work** completed<br><br>- Highlight preliminary **restricted/unrestricted cash balance classifications** |
| **Primary Observations** | - Subject to certain scope adjustments, the **Government's monthly cash reporting appears to be generally comprehensive and accurate**<br><br>- **The Board identified, and now has online access** to, more than 1,100 bank accounts, which allows for cash balance monitoring going forward<br><br>   o Initial **mapping completed on 147 government entities and programs with 2,013 bank accounts** holding an est. $18.10b as of June 30, 2019<br><br>   o Focused detailed procedures on **Title III entities with $11.32b in 524 accounts at 11 financial institutions** as of June 30, 2019<br><br>- Subject to ongoing analysis, **approximately $6.75b of the Title III balances appear to be unrestricted**, but much of those funds have committed purposes<br><br>   o The TSA and certain other cash balances **are held in pooled accounts**, which consist of both unrestricted and restricted funds<br><br>   o Analysis is ongoing to identify any additional restricted funds |

# 2. Overview of Commonwealth Liquidity Activities

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Background on cash investigation

- **In December 2017, AAFAF disclosed for the first time information on cash balances** for the Commonwealth and instrumentalities (Docket #2120)

- This court filing laid out the steps necessary to conduct an **Independent Review Process** in relation to the Government's cash position

  1. Determine, validate and reconcile all bank accounts;
  2. Engage an independent firm to conduct an evaluation of the cash inflows and outflows into all governmental bank accounts;
  3. Review the results of the independent evaluation to confirm legal restrictions relative to funds deposited into the bank accounts for each governmental entity;
  4. If excess unrestricted cash exists in bank accounts of the major component units, determine if such unrestricted cash exceeds necessary operating expenses; and
  5. Establish a process to access excess unrestricted cash as may be appropriate

- **In January 2018, the Oversight Board retained Duff & Phelps to conduct an investigation** into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR

- Over more than a year, the Oversight Board modified the scope and processes to address **logistical problems presented by a cash management regime that was more disorganized and decentralized than anticipated**

- In March 2019, **a report was issued** identifying cash balances as of June 30, 2018

- After publishing the report, the **Oversight Board expanded its cash management review efforts** as described on the next page

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# The Oversight Board's current efforts around cash

 **The Oversight Board continued the investigation** with the goal of putting in place a process to report and update cash balances, reconcile them to government reports, and identify, in consultation with legal counsel, any restrictions placed on each of the bank accounts

 **The expanded activities increased the number of covered accounts** and separately identified accounts related to Title III and non-Title III entities

 Additional procedures were developed to **obtain more timely access to account balances and reconcile balances to government reporting**

 For June 30, 2019 balances, **82% of identified accounts and 94% of the estimated balances were confirmed through financial institution support**

- For covered Title III entities, **86% of identified accounts and 99% of estimated balances** were confirmed

 Furthermore, additional parameters were established to assess cash balance restrictions – **prioritizing the largest account balances and Title III entities**

 **Significant volume** of supporting documentation was reviewed by legal counsel to make a determination on the classification of restrictions

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

7

# Progress of bank account analysis

*The Oversight Board has greatly increased transparency into the Government's cash position*

| | December 2017 | September 2019 |
|---|---|---|
| **Reporting**<br /> | • **No centralized accounts** or timely reporting<br /><br />• **Lack of cooperation** by financial institutions or account holders | • **Independent and consolidated reporting** by Oversight Board that is substantially reconciled to govt. reporting<br /><br />• While not automated, the Board has the ability to obtain balances for more than 1,100 accounts **on accelerated basis** |
| **Restrictions**<br /> | • **No consistent standards** for assessing restricted vs. unrestricted cash balances | • **Structured framework for categorization** of balances by restriction type<br /><br />• **Legal process to review documentation** to determine presence and type of restriction imposed on cash |
| **Title III Cash** | • **Lack of clarity** in delineation of cash between Title III and non-Title III entities | • **Complete database of bank accounts** with details on account holder, financial institution, cash balance, type of entity (Title III vs. non-Title III; agency vs. public corp.) |

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Summary of outreach to account holders

**63 of 88 Title III Account Holders** contacted by email, telephone, or in-person meetings
to obtain supporting documentation for account balances and restriction support

**Status of Outreach**

| 63 Title III Account Holders contacted | **39 Account Holders** provided all requested supporting documentation | 11 of these Account Holders stated they have some or all accounts managed by Hacienda and are pending analysis |
|---|---|---|
| | **23 Account Holders** have outstanding requests (restriction documentation and other bank account information) | As of September 24, 2019, multiple follow ups via email or phone with each Account Holder have been performed |
| | **1 Account Holder** has not responded to requests | AAFAF and FOMB have been separately contacted and are currently helping with Account Holder outreach |
| **25 Title III Account Holders not contacted** | **25 Account Holders** have accounts under the custody of Hacienda, which are directly providing financial and restriction documentation | |

**Outreach Specifically for Restrictions**

Approx. 40 accounts across 10 agencies required subsequent follow up to obtain add'l. restrictions support, as requested by the Legal Due Diligence team

AAFAF and FOMB are sending agencies numerous emails per day (as needed) and scheduling on-site visits to gather documentation to complete the analysis

Team of attorneys reviewing large volume of data which consists of:

- Performing independent research for restrictions

- Total number of documents reviewed thus exceeds ~1,200

- Documentation for contracts and laws can be 400 pages in length

- Re-reviewing documentation from IFAT report as well as newly obtained documentation

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Summary of account restriction description

| Preliminary type | Classification | Description |
|---|---|---|
| **Restricted** | **Federal Funds/Law** | Funds received from the Federal government or restricted by federal law or regulation for specific uses |
| | **Emergency Funds** | Funds restricted for emergency use by the FOMB |
| | **Third Party Funds** | Funds belonging to third parties and held by government entity in custodial or other segregated accounts |
| | **Third Party Contract** | Funds restricted for use due to contracts with third parties (e.g., debt service reserve funds held by Trustee) |
| | **Court Order** | Federal court order restricting use of funds |
| | **Bond Funds** | Tax-exempt bond proceeds with restricted use under the IRC |
| | **Title III** | Funds restricted pursuant to Title III cases for a specific debtor |
| **Pooled Accounts** | **Treasury Single Account (TSA)** | Funds deposited in the Government's main pooled operating accounts, which consists of both restricted and unrestricted funds |
| | **Inconclusive** | Funds where deposits may be pooled and/or information is limited to identify the source and potential restriction of funds |
| **Unrestricted** | **Unrestricted** | Funds that do not have legal restrictions regardless of whether such funds were generated by government entity or appropriated to such entity by the Commonwealth under Puerto Rico law |

# Preliminary TSA sweep structure

## The Government's Treasury Single Account (TSA) is actually a series of multiple accounts



1: Two additional accounts, ####1216 and ####9865, were historically included as part of the TSA but have since been closed. The government classifies accounts ####4406 and ####3630 as part of the TSA cash balance as well while the analysis herein does not.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# 3. Detailed Bank Account Analysis

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Summary of accounts and balances as of June 30, 2019

## Commonwealth Title III entities:

524 accounts out of 607 Title III accounts have been tied to financial institution support

 86%

representing balances totaling an est. $11.32b of an est. $11.34b

99%

## And for 147[1] government entities and programs:

1,649 accounts out of 2,013 accounts have been tied to financial institution support

 82%

representing balances totaling an est. $17.00b of an est. $18.10b

 94%

| Cash Reconciliation | 6/30/19 Balance ($b) | No. of Accounts |
|---|---|---|
| Accounts reported by AAFAF | $14.71 | 1,592 |
| Out of AAFAF Scope[2] | 1.88 | 319 |
| Additional Accounts Identified[3] | 0.99 | 232 |
| Removed[4] | (0.03) | (130) |
| Reconciling est. balance differences[5] | 0.56 | - |
| **Total Est. Cash Accounts** | **18.10** | **2,013** |
| Reconciling confirmed cash differences[6] | (1.10) | (364) |
| **Total Cash Confirmed** | **17.00** | **1,649** |
| Non-Title III Entities[7] | (5.68) | (1,125) |
| **Total Title III Cash Confirmed[8]** | **$11.32**[9] | **524** |

1: Refer to page 18 for a summary of entities included within scope for this analysis.
2: Refer to page 21. These differences are attributed to the exclusion of specific agencies from AAFAF's scope, as noted in their monthly Summary of Bank Account Balances report.
3: Refer to pages 22 and 23. These differences relate to additional accounts identified at agencies included in AAFAF's scope.
4: This adjustment removes accounts that were consolidated or eliminated during the analysis period, or duplicates due to aggregation of multiple sources of information.
5: Refer to page 24. This item is due to accounts where account balances differ between confirmed and reported values.
6: Refer to page 25. This item is due to accounts for which financial institution ("FI") support has not been provided and are still pending review.
7: Refer to pages 26 and 27 for a summary of the non-Title III entities and their respective account balances. Entity classifications still subject to legal review and material change.
8: Refer to pages 28 and 29 for a summary of the Title III entities and their respective account balances. Entity classifications still subject to legal review and material change.
9: Commonwealth entities make up approximately $10.77b of the total $11.32b Plan of Adjustment cash. Variances in the totals above are attributable to rounding.
**Disclaimer**: Amounts included throughout the presentation are subject to material modification based on the receipt of additional information and review by legal counsel.

# Bank account balance overview

**Overall Scope** - Have FI support on 1,649 bank accounts for 147 entities, $17.00b in value
**Title III Accounts** - Have FI support on 524 bank accounts for 88 entities, $11.32b in value

| Topic | Overall Scope of Accounts | | Title III Entities | |
|---|---|---|---|---|
| | **Description** | **Detail** | **Description** | **Detail** |
| **Population Under Review** | 2,013 bank accounts in population | $17.00b in balances across 1,649 bank accounts supported by financial institution support, such as bank statements | 607 bank accounts in population | $11.32b in balances across 524 bank accounts supported by financial institution support, such as bank statements |
| **Online Access for Bank Balances** | Online access to 1,161 bank accounts (approx. 70% of accounts), worth $12.78b | Expect online access to additional 125 accounts with $2.27b<br><br>Account access unlikely for 363 accounts with $1.95b[1] | Online access to 237 bank accounts (approx. 45% of accounts), worth $8.29b | Expect online access to additional 54 bank accounts with $1.73b<br><br>Account access unlikely for 233 accounts with $1.30b[1] |
| **Bank Accounts Pending Analysis** | 364 accounts pending analysis, i.e., govt. has not provided sufficient documentation to assess restriction | Expect online access to additional 59 accounts<br><br>Account access unlikely for 305 accounts | 83 accounts pending analysis, i.e., govt. has not provided sufficient documentation to assess restriction | Expect online access to additional 20 accounts<br><br>Account access unlikely for 63 accounts |

1: For example, Puerto Rico's Office of Court Administration did not provide online access, but provided bank statements. Additionally, online access was provided for several accounts within this population at Banco Popular; however, it was not possible to electronically extract balance information and Banco Popular provided bank statements.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Restricted accounts – Title III

Below is a summary of the current status of Legal Due Diligence analysis over restrictions by Component Unit for accounts comprising 95% of the $11.32b balance as of June 30, 2019

| Component Unit | 6/30/19 Balance ($b) | Preliminary Restriction Categories | | | | | | | Incon-clusive | Un-restricted |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Federal Funds/ Law | Emerg. Funds | Third Party Funds | Third Party Contract | Court Order | Bond Funds | Title III | | |
| **CW – TSA**[1] | $7.28 | $0.66 | $0.52 | $- | $- | $- | $- | $- | $- | $6.10 |
| **CW** | 3.10 | 1.27 | --- | 1.07 | 0.05 | 0.02 | 0.03 | --- | 0.01 | 0.65[2] |
| **PBA** | 0.08 | --- | --- | --- | --- | --- | --- | 0.08 | --- | --- |
| **ERS** | 0.66[3] | --- | --- | --- | --- | --- | --- | 0.66 | --- | --- |
| **Total** | **$11.12** | **$1.93** | **$0.52** | **$1.07** | **$0.05** | **$0.02** | **$0.03** | **$0.74** | **$0.01** | **$6.75** |

**TSA[1] restrictions**

- The Oversight Board's position is that the TSA funds are generally unrestricted except for Federal Funds and Budgetary Reserve Accounts remaining in pooled TSA accounts, but much of those funds have committed purposes.

- Restricted TSA funds are approximately **$1.18b** as of June 30, 2019. The unrestricted portion of the TSA is approximately **$6.10b**.

1: TSA restrictions are preliminarily determined to be not restricted, except for federal and emergency funds; analysis is ongoing to identify any additional restricted funds.
2: The unrestricted amount consists of $0.41b in Department of Treasury accounts and $0.24b in accounts assigned to other agencies.
3: Balance is inclusive of $0.21b held by Department of Treasury. The Retirement System of Puerto Rico Judiciary holds an additional $0.04b balance.
**Disclaimer**: Amounts included throughout the presentation are subject to material modification based on the receipt of additional information and review by legal counsel.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Next steps

- **Finalize legal analysis** on restricted versus unrestricted balances

- **Secure documentation and online access** from remaining agencies with cash balance that have not responded to repeated due diligence requests

- **Secure pending documentation to continue rolling forward cash balances** from financial institutions and agencies

# 4. Appendix

# List of government agencies included and excluded from cash reporting

## Agencies <u>Included</u> in FOMB analysis

### Title III Entities:

- 86 Commonwealth agencies, including:
  - Executive Branch
  - Legislative Branch
  - Judicial Branch
  - Executive Agencies and Departments
- PBA
- ERS

### Additional government entities and programs:

- Public Corporations, such as:
  - PREPA
  - COFINA
  - UPR
  - PRASA
  - COSSEC
  - Insurance Fund State Corporation
  - HFA
  - AFI

## Agencies <u>Excluded</u> from FOMB analysis

### Eliminated and consolidated government entities and programs:

- Puerto Rico Energy Administration
- Office of Municipal Management
- Labor Development Administration
- Film Development
- Office of Industrial Tax Exemption
- Pretrial Services Program
- Parole Board

### Managed by Other Agencies:

- Contributions for Pensions and Social Security - Teacher Retirement System (managed by TRS directly)
- Transit Safety Commission (bank accounts managed by AACA)

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# List of financial institutions where cash balances are held for Title III Entities

**524** bank accounts for **88 agencies** reflect approximately **$11.32b** in balances across multiple financial institutions

| Financial Institution | Number of Accounts | Balance as of 6/30/2019 | % of Number of Accounts |
|---|---|---|---|
| Banco Popular | 243 | $7,277,642,519 | 46.37% |
| First Bank | 46 | 161,268,213 | 8.78% |
| Banco de Desarrollo Economico | 1 | 528,349 | 0.19% |
| Banco Santander | 175 | 1,325,464,093 | 33.40% |
| BCOOP | 2 | 1,929,874 | 0.38% |
| BNY Mellon | 8 | 134,199,039 | 1.53% |
| Citibank | 4 | 1,616,533,657 | 0.76% |
| Northern Trust | 2 | 28,859,993 | 0.38% |
| Oriental Bank | 10 | 27,454,680 | 1.91% |
| US Bank | 32 | 61,364,007 | 6.11% |
| US Treasury[1] | 1 | 687,272,393 | 0.19% |
| **Grand Total[2]** | **524** | **$11,322,516,817** | **100.00%** |

1: The U.S. Treasury account pertains to unemployment claims.
2: Minimal differences in totals are attributed to rounding.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Top 5 entities that comprise the Commonwealth's cash balance

**Five** entities reflect approximately **$10.44b[1]** in balances
of an estimated $10.77b within the Commonwealth



_____
1: Minimal differences in totals are attributed to rounding.
2: Traditional Lottery is a government program whose accounts are managed by the Department of Treasury.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Agencies included in cash analysis herein but fall outside of AAFAF reporting scope in cash reports[1]

*$ in millions*

| Agency Name | FOMB 3/31/2019 Balance[2] | FOMB 6/30/2019 Balance[2] | Number of Accounts |
|---|---|---|---|
| Electric Power Authority (PREPA)[3] | $949.51 | $926.94 | 32 |
| Office of Court Administration | 373.09 | 394.13 | 130 |
| Public Corp for the Supervision and Deposit Ins of PR Coops (COSSEC) | 315.47 | 320.53 | 9 |
| Municipal Finance Corporation (COFIM) | 151.42 | 130.78 | 85 |
| Government Development Bank For Puerto Rico | 40.90 | 46.36 | 6 |
| Puerto Rico Municipal Finance Agency | 282.35 | 22.51 | 22 |
| Office of Legislative Services | 15.67 | 15.61 | 4 |
| Senate | 13.81 | 14.28 | 6 |
| Superintendent of the Capitol | 5.42 | 5.55 | 4 |
| **Accounts pending confirmation** | | | |
| Council of Occupational Development & Human Resources (CDORH) | - | - | 8 |
| House of Representatives | - | - | 6 |
| Joint Special Commission of Legislative Funds | - | - | 3 |
| Department of State | - | - | 1 |
| State Office of Energy Public Policy | - | - | 1 |
| Program of Youth Affairs | - | - | 1 |
| General Services Administration | - | - | 1 |
| **Grand Total[4]** | **$2,147.64** | **$1,876.69** | **319** |

———————
1: The following analysis is ongoing and subject to change.
2: The balances for the accounts for which further FI information is required are currently marked with a dash (-).
3: These accounts include PREPA Networks and PREPA Retirement.
4: Minimal differences in totals are attributed to rounding.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Additional accounts identified

*$ in millions*

| Agency Name | Balance as of 3/31/2019[1] | Balance as of 6/30/2019[1] | Number of Accounts |
|---|---|---|---|
| Puerto Rico Sales Tax Financing Corporation (COFINA) | $663.76 | $653.38 | 47 |
| Authority for the Financing of Infrastructure of Puerto Rico | 158.18 | 164.24 | 22 |
| University of Puerto Rico | 193.33 | 83.93 | 15 |
| Institutional Trust of the National Guard of Puerto Rico | 31.93 | 22.38 | 5 |
| Public Housing Administration | 15.29 | 15.29 | 1 |
| The Childrens Trust | 11.48 | 11.52 | 2 |
| Puerto Rico Tourism Development Fund | - | 11.00 | 1 |
| Highway and Transportation Authority | 18.96 | 10.53 | 30 |
| Department of Treasury | 0.47 | 9.50 | 4 |
| Industrial Development Company | 3.08 | 3.09 | 4 |
| School of Plastic Arts and Design | 2.51 | 2.58 | 1 |
| Maritime Transport Authority | 1.59 | 2.04 | 8 |
| Department of Labor and Human Resources | 0.52 | 0.53 | 1 |
| Metropolitan Bus Authority | 1.15 | 0.40 | 1 |
| Conservatory of Music Corporation of Puerto Rico | 0.20 | 0.20 | 1 |
| Retirement System for Employees of the Government | 0.14 | 0.15 | 3 |
| Retirement System of Puerto Rico Judiciary | 0.06 | 0.08 | 2 |
| Comprehensive Cancer Center | 0.01 | 0.01 | 5 |
| Public Buildings Authority | 1.48 | 0.00[2] | 12 |
| **Accounts pending confirmation** | | | |
| Land Authority de Puerto Rico | 2.07 | - | 2 |
| Teacher Retirement System | 39.76 | - | 2 |
| *Cont. on following page* | | | |

1: The balances for the accounts for which further FI information is required are currently marked with a dash (-).
2: This additional bank accounts associated with this agency include balances that are less than $10,000.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

22

# Additional accounts identified (cont.)

*$ in millions*

| Agency Name | Balance as of 3/31/2019[1] | Balance as of 6/30/2019[1] | Number of Accounts |
|---|---|---|---|
| Statistics Institute of PR | 0.76 | - | 1 |
| Family and Children Administration | 0.35 | - | 4 |
| Company for the Integral Development of the Cantera Peninsula | 0.30 | - | 2 |
| Solid Waste Authority | 0.20 | - | 1 |
| Automobile Accident Compensation Administration | 0.04 | - | 1 |
| Tourism Company | 0.00 | - | 1 |
| **Accounts pending confirmation (active/inactive status)** | | | |
| Housing Financing Authority | - | - | 12 |
| Ports Authority | - | - | 4 |
| Department of Family | - | - | 1 |
| Puerto Rico Aqueduct and Sewer Authority (PRASA) | - | - | 7 |
| Department of Housing | - | - | 3 |
| Other - pending identification | - | - | 3 |
| Project Corporation ENLACE Cano Martin Pena | - | - | 1 |
| Convention Center District Authority of Puerto Rico | - | - | 5 |
| Day Care Center | - | - | 1 |
| Film Development Company | - | - | 1 |
| Department of Education | - | - | 1 |
| Department of Economic Development and Commerce | - | - | 6 |
| Department of Justice | - | - | 2 |
| National Parks Company of Puerto Rico | - | - | 1 |
| Department of Sports and Recreation | - | - | 1 |
| Natural Resources Administration | - | - | 3 |
| Land Administration | - | - | 1 |
| **Grand Total[2]** | **$1,147.60** | **$990.84** | **232** |

1: The balances for the accounts for which further FI information is required are currently marked with a dash (-).
2: Minimal differences in totals are attributed to rounding.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Reconciling estimated balance differences[1]

| Differences attributable to potential **timing or classification variances** in supporting documentation | | | |
|---|---|---|---|
| $ in millions | | | |
| **Agency Name** | **FOMB 6/30/2019 Balance** | **AAFAF 6/30/2019 Balance** | **Difference[2]** |
| Puerto Rico Municipal Finance Agency | $259.86 | $- | $259.86 |
| Retirement System for Employees of the Government | 454.40 | 333.65 | 120.75 |
| University of Puerto Rico | 529.32 | 413.76 | 115.57 |
| Municipal Revenue Collection Center (CRIM) | 55.48 | 0.00 | 55.47 |
| Teacher Retirement System | 150.29 | 110.28 | 40.01 |
| Economic Development Bank for Puerto Rico | 124.00 | 105.39 | 18.61 |
| Institutional Trust of the National Guard of Puerto Rico | 18.60 | 4.98 | 13.63 |
| Child Support Administration | 70.64 | 58.20 | 12.44 |
| Municipal Finance Corporation (COFIM) | 7.34 | - | 7.34 |
| Highway and Transportation Authority | 402.25 | 395.38 | 6.87 |
| Department of Housing | 11.79 | 7.75 | 4.04 |
| Land Authority de Puerto Rico | 19.25 | 16.18 | 3.07 |
| Tourism Company | 134.60 | 131.57 | 3.03 |
| Puerto Rico Aqueduct and Sewer Authority (PRASA) | 418.53 | 415.84 | 2.69 |
| Insurance Fund State Corporation | 180.00 | 177.72 | 2.28 |
| Maritime Transport Authority | 6.58 | 4.50 | 2.08 |
| Department of Labor and Human Resources | 839.97 | 838.14 | 1.83 |
| Public Buildings Authority | 100.31 | 98.79 | 1.52 |
| Land Administration | 14.45 | 13.22 | 1.24 |
| Statistics Institute of PR | 4.06 | 3.04 | 1.02 |
| Electric Power Authority (PREPA) | 398.38 | 407.50 | (9.13) |
| Industrial Development Company | 54.54 | 162.02 | (107.48) |
| **Grand Total[3]** | **$13,036.47** | **$12,473.93** | **$562.54** |

1: The following analysis is ongoing and subject to change.
2: The above represents the top 22 agencies with differences above ~$1.00m. Many differences attributable to timing or classification differences (such as the inclusion of investment accounts in the FOMB analysis). In other instances, the government is investigating the differences between publicly reported balances and bank statement data or supporting data for the government balances has not yet been provided.
3: Grand total includes differences for other agencies totaling $5.8m.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Reconciling estimated confirmed cash differences[1]

| FOMB is **awaiting financial institution support** for certain accounts where an estimated balance is expected |
|---|

*$ in millions*

| Agency Name | FOMB 6/30/2019 Balance | Estimated 6/30/2019 Balance | Difference[2] |
|---|---|---|---|
| Puerto Rico Aqueduct and Sewer Authority (PRASA) | $- | $430.26 | ($430.26) |
| Puerto Rico Municipal Finance Agency | - | 259.38 | (259.38) |
| University of Puerto Rico | - | 116.57 | (116.57) |
| Economic Development Bank for Puerto Rico | - | 81.34 | (81.34) |
| Municipal Revenue Collection Center (CRIM) | - | 55.47 | (55.47) |
| Teacher Retirement System | - | 39.76 | (39.76) |
| Administration for the Development of Agricultural Enterprises | - | 20.60 | (20.60) |
| Housing Financing Authority | - | 17.50 | (17.50) |
| Project Corporation ENLACE Cano Martin Pena | - | 12.62 | (12.62) |
| Child Support Administration | - | 12.44 | (12.44) |
| Institutional Trust of the National Guard of Puerto Rico | - | 12.00 | (12.00) |
| Municipal Finance Corporation (COFIM) | - | 7.13 | (7.13) |
| Highway and Transportation Authority | - | 6.03 | (6.03) |
| Ports Authority | - | 3.85 | (3.85) |
| Government Ethics Office | - | 3.36 | (3.36) |
| Electric Power Authority (PREPA) | - | 3.28 | (3.28) |
| Tourism Company | - | 3.03 | (3.03) |
| Land Authority de Puerto Rico | - | 2.07 | (2.07) |
| Convention Center District Authority of Puerto Rico | - | 1.79 | (1.79) |
| Other agencies[3] | - | 21.22 | (21.22) |
| **Grand Total[4]** | **$-** | **$1,109.72** | **($1,109.72)** |

_____

1: The following analysis is ongoing and subject to change.
2: The above represents the top 22 agencies with differences above ~$3.00m. This count is due to accounts for which financial institution ("FI") support has not been provided and are still pending review.
3: Sum of AAFAF balances less than $1.50m.
4: Minimal differences in totals are attributed to rounding.

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Non-Title III entity confirmed balances

$ in millions

| Agency Name | Balance as of 3/31/2019[1] | Balance as of 6/30/2019[1] |
|---|---:|---:|
| Administration for the Development of Agricultural Enterprises | $45.70 | $56.07 |
| Agricultural Insurance Corporation | 5.78 | 7.05 |
| Authority for Financing of Industrial, Tourist, Edu., Medical, and Environmental Cntrl Facilities | 0.17 | 0.28 |
| Authority for the Financing of Infrastructure of Puerto Rico | 225.76 | 300.17 |
| Authority for the Redevelopment of the Lands and Facilities of the Naval Station Roosevelt Roads | 1.86 | 1.87 |
| Automobile Accident Compensation Administration | 134.73 | 139.65 |
| Cardiovascular Center of Puerto Rico and the Caribbean Corporation | 13.52 | 13.86 |
| Comprehensive Cancer Center | 28.41 | 28.69 |
| Conservatory of Music Corporation of Puerto Rico | 1.94 | 4.09 |
| Convention Center District Authority of Puerto Rico | 16.02 | 11.47 |
| Economic Development Bank for Puerto Rico | 130.53 | 43.95 |
| Educational Research and Medical Services Center for Diabetes | 0.77 | 0.72 |
| Electric Power Authority (PREPA) | 1,340.03 | 1,327.51 |
| Financial Oversight and Management Board for Puerto Rico | 33.27 | 43.78 |
| Fine Arts Center Corporation | 4.18 | 4.10 |
| Fiscal Agency & Financial Advisory Authority (AAFAF) | 51.90 | 57.70 |
| Government Development Bank For Puerto Rico | 40.91 | 46.36 |
| Health Insurance Administration | 284.93 | 283.44 |
| Highway and Transportation Authority | 446.20 | 406.75 |
| Housing Financing Authority | 51.37 | 60.81 |
| Industrial Development Company | 47.62 | 59.48 |
| Institute of Puerto Rican Culture | 2.89 | 5.60 |
| Institutional Trust of the National Guard of Puerto Rico | 39.76 | 28.84 |
| Insurance Fund State Corporation | 288.01 | 180.09 |
| Integrated Transport Authority | 6.44 | 4.86 |
| Land Administration | 14.12 | 14.45 |
| Land Authority de Puerto Rico | 18.45 | 17.18 |
| Maritime Transport Authority | 11.96 | 8.62 |
| Medical Services Administration | 38.29 | 49.03 |
| *Cont. on following page* | | |

1: The balances for the accounts for which further FI information is required are currently marked with a dash (-).

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Non-Title III entity confirmed balances (cont.)

| Agency Name ($ in Millions) | Balance as of 3/31/2019[1] | Balance as of 6/30/2019[1] |
|---|---:|---:|
| Metropolitan Bus Authority | $1.67 | $1.90 |
| Municipal Finance Corporation (COFIM) | 151.42 | 130.78 |
| Musical Arts Corporation | 5.37 | 5.55 |
| Office for Promotion of Human Development (OPDH) | 0.02 | 0.02 |
| Ponce Ports Authority | 0.17 | 0.17 |
| Ports Authority | 34.16 | 32.68 |
| Public Corp for the Supervision and Deposit Insurance of PR Cooperatives (COSSEC) | 315.47 | 320.53 |
| Public Private Partnership Authority | 33.54 | 30.73 |
| Puerto Rico Aqueduct and Sewer Authority (PRASA) | 588.22 | 419.11 |
| Puerto Rico Municipal Finance Agency | 282.35 | 22.51 |
| Puerto Rico Public Broadcasting Corporation | 2.33 | 2.70 |
| Puerto Rico Public Finance Corporation | - | 0.01 |
| Puerto Rico Sales Tax Financing Corporation (COFINA) | 686.86 | 676.19 |
| Puerto Rico Tourism Development Fund | - | 11.00 |
| Retirement System of Puerto Rico Judiciary | 36.16 | 36.24 |
| School of Plastic Arts and Design | 3.73 | 3.86 |
| Solid Waste Authority | 12.22 | 11.90 |
| Teacher Retirement System | 142.58 | 110.28 |
| The Childrens Trust | 11.48 | 11.52 |
| Tourism Company | 122.30 | 131.57 |
| Trade and Export Company | 13.93 | 14.82 |
| University of Puerto Rico | 608.48 | 498.61 |
| **Accounts pending confirmation** | | |
| Company for the Integral Development of the Cantera Peninsula | 1.17 | - |
| Culebra Conservation and Development Authority | 0.12 | - |
| Day Care Center | - | - |
| Model Forest | - | - |
| Municipal Revenue Collection Center (CRIM) | 55.48 | - |
| National Parks Company of Puerto Rico | - | - |
| Project Corporation ENLACE Cano Martin Pena | 10.63 | - |
| **Grand Total** | **$6,445.36** | **$5,679.17** |

1: Minimal differences in totals are attributed to rounding. The balances for the accounts for which further FI information is required are currently marked with a dash (-).

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Title III entity confirmed balances

*$ in millions*

| Agency Name | Balance as of 3/31/2019[1] | Balance as of 6/30/2019[1] |
|---|---:|---:|
| 911 Emergency System Bureau | $20.74 | $22.64 |
| Child Support Administration | 58.83 | 58.20 |
| Controllers Office | 6.25 | 7.75 |
| Department of Consumer Affairs | 0.00 | 0.00 |
| Department of Correction and Rehabilitation | 1.57 | 1.34 |
| Department of Economic Development and Commerce | 22.08 | 24.98 |
| Department of Education | 18.15 | 24.01 |
| Department of Family | 0.10 | 0.03 |
| Department of Housing | 7.59 | 11.79 |
| Department of Labor and Human Resources | 766.30 | 840.50 |
| Department of Natural and Environmental Resources | 0.02 | 0.01 |
| Department of Sports and Recreation | 0.24 | 0.61 |
| Department of Treasury | 6,917.19 | 8,636.44 |
| Electronic Lottery | 136.97 | 71.98 |
| Environmental Quality Board | 1.44 | 0.00 |
| Family and Children Administration | 0.83 | 0.24 |
| Forensics Science Bureau | 11.99 | 12.80 |
| Independent Consumer Protection Office | 0.68 | 0.57 |
| National Guard of Puerto Rico | 0.00 | 0.04 |
| Office for Community and Socioeconomic Development of Puerto Rico | 0.36 | 0.36 |
| Office of Court Administration | 373.09 | 394.14 |
| Office of Legislative Services | 15.67 | 15.61 |
| Office of the Governor | 0.01 | 0.01 |
| Public Buildings Authority | 76.73 | 98.83 |
| Public Housing Administration | 414.17 | 499.14 |
| Puerto Rico Education Council | 1.74 | 0.76 |
| Puerto Rico Energy Commission | 12.22 | 11.77 |
| *Cont. on following page* | | |

1: The balances for the accounts for which further FI information is required are currently marked with a dash (-).

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Title III entity confirmed balances (cont.)

*$ in millions*

| Agency Name | Balance as of 3/31/2019[1] | Balance as of 6/30/2019[1] |
|---|---:|---:|
| Puerto Rico Police Bureau | $14.69 | $18.78 |
| Retirement System for Employees of the Government and Judiciary Retirement System | 447.84 | 454.55 |
| Senate | 13.81 | 14.28 |
| Socioeconomic Development of the Family Administration | 0.14 | 1.74 |
| Statistics Institute of PR | 4.01 | 3.31 |
| Superintendent of the Capitol | 5.42 | 5.55 |
| Telecommunications Regulatory Board | 13.92 | 14.74 |
| Vocational Rehabilitation Administration | 0.56 | 0.32 |
| **Accounts pending confirmation** | | |
| Council of Occupational Development & Human Resources (CDORH) | - | - |
| Department of Justice | - | - |
| Department of State | - | - |
| Film Development Company | - | - |
| General Services Administration | - | - |
| Government Ethics Office | - | - |
| House of Representatives | - | - |
| Joint Special Commission of Legislative Funds | - | - |
| Natural Resources Administration | - | - |
| Office of the Solicitor - Special Independent Prosecutor | 0.61 | - |
| PR Federal Affairs Administration | 0.22 | - |
| Program of Youth Affairs | - | - |
| State Office of Energy Public Policy | - | - |
| **Grand Total** | **$9,371.29** | **$11,322.52** |

_____
1: Minimal differences in totals are attributed to rounding. The balances for the accounts for which further FI information is required are currently marked with a dash (-).

Provided Pursuant to Court-Ordered Mediation / Subject to FRE 408 / Prepared with Advice of and at the Request of Counsel / Preliminary and Subject to Material Revision

# Disclaimer

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") and Ernst & Young Puerto Rico LLC ("EY") have prepared this report (the "Report") based upon information and material supplied by the Oversight Board, Oversight Board advisors, the Government of Puerto Rico (the "Government"), and publicly-available sources.  The Oversight Board engaged EY to perform an analysis of Puerto Rico's cash position as part of their mandate under the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").

The nature and scope of EY's services were determined by the Oversight Board and are reflected in agreements between EY and the Oversight Board dated December 12, 2017, as amended from time to time (the "Agreements").  EY's procedures were limited to the procedures requested by the Oversight Board and which are described in the Agreements.  EY's work was performed only for the use and benefit of the Oversight Board and should not be used or relied on by anyone else.  Other persons who read this Report who are not a party to the Agreements do so at their own risk and are not entitled to rely on it for any purpose.  EY does not assume any duty, obligation or responsibility whatsoever to any other parties that may obtain access to the Report.

EY's services were advisory in nature.  While EY's work in connection with this Report was performed under the standards of the American Institute of Certified Public Accountants (the "AICPA"), EY did not render an assurance report or opinion under the Agreement, nor did EY's services constitute an audit, review, examination, forecast, projection or any other form of attestation as those terms are defined by the AICPA.  None of the services EY provided constituted any legal opinion or advice.  This Report is not being issued in connection with any issuance of debt or other financing transaction.
The Oversight Board has the knowledge, experience and ability to form its own conclusions.  Any assumptions, forecasts, projections, recommendations, conclusions or opinions contained in this Report are solely those of the Oversight Board.

In assisting in the preparation of this Report, EY relied on information and underlying data provided by the Oversight Board, Oversight Board advisors, the Government of Puerto Rico, or publicly-available resources, and such information was presumed to be current, accurate and complete. EY has not conducted an independent assessment or verification of the completeness, accuracy or validity of the information obtained.  Consequently, EY provides no assurance of any kind with respect to, or on, the information presented.

There will usually be differences between projected and actual results because events and circumstances frequently do not occur as expected and those differences may be material.  As a result, no assurance regarding the achievement of forecasted results is provided, and reliance should not be placed on any forecasted results or projects contained herein as such information is subject to material change and may not reflect actual results.  EY takes no responsibility for the achievement of projected results.