**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------------- x
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO, *et al.,* : (Jointly Administered)
:
Debtors.[1] :
---------------------------------------------------------------------- x
In re: :
:
THE FINANCIAL OVERSIGHT AND MANAGEMENT :
BOARD FOR PUERTO RICO, :
:
as representative of : Case No. 17-BK-4780-LTS
:
PUERTO RICO ELECTRIC POWER AUTHORITY, : **This Court Filing Relates Only
to Case No. 17-BK-4780-LTS**
Debtor. :
:
---------------------------------------------------------------------- x

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO PROOF OF CLAIM NUMBER 18449 FILED BY U.S. BANK NATIONAL
ASSOCIATION, IN ITS CAPACITY AS TRUSTEE FOR NON-RECOURSE
<u>PREPA BONDS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION, VENUE, AND STATUTORY PREDICATE .................................................. 3

BACKGROUND ........................................................................................................................ 4

RELIEF REQUESTED................................................................................................................ 6

BASIS FOR RELIEF.................................................................................................................. 7

I.     DEFENSIVE NATURE OF CLAIM OBJECTION........................................................... 9

II.    BURDEN IS ON TRUSTEE TO PROVE CLAIM GREATER THAN
APPROXIMATELY $8.8 MILLION................................................................................. 10

RESERVATION OF RIGHTS .................................................................................................. 11

NOTICE..................................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Alexander*,
   No. 11-74515-SCS, 2014 WL 3511499 (Bankr. E.D. Va.), *aff'd*, 524 B.R. 82
   (E.D. Va. 2014) ..................................................................................................................9

*In re Alleghany Int'l, Inc.*,
   954 F.2d 167 (3d Cir. 1991)..............................................................................................10

*Bank of N.Y. Mellon v. Jefferson Cty. (In re Jefferson Cty.)*,
   482 B.R. 404 (Bankr. N.D. Ala. 2012) ................................................................................7

*In re Everett*,
   No. 10–19457–FJB, 2013 WL 3757283 (Bankr. D. Mass. July 15, 2013)........................10

*Ezenia! Inc. v. Nguyen (In re Ezenia! Inc.)*,
   536 B.R. 485 (Bankr. D.N.H. 2015) .................................................................................10

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   297 F. Supp. 3d 261 (D.P.R. 2017)......................................................................................3

*Fin. Oversight & Mgmt. Bd. for P.R. v. U.S. Bank Nat'l Ass'n*,
   Adv. Pro. No. 19-391-LTS (Bankr. D.P.R. July 1, 2019)....................................................6

*In re Gerathy*,
   No. 04-52744, 2007 WL 1686694 (Bankr. E.D. Mich. June 12, 2007)..............................9

*Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc. (In re Palmdale
   Hills Prop., LLC)*,
   654 F.3d 868 (9th Cir. 2011) ..............................................................................................9

*In re Werth*,
   37 B.R. 979 (Bankr. D. Colo. 1984), *aff'd*, 54 B.R. 619 (D. Colo. 1985)..........................9

**Statutes**

19 L.P.R.A.
   § 2214(a)(1)-(3) ..................................................................................................................8

11 U.S.C., Bankr. Code
  § 502 ............................................................................................................................. 1, 3, 5, 9
  § 1109(b) ................................................................................................................................ 3
  § 928 ...................................................................................................................................... 5
  § 927 ................................................................................................................................... 2, 7
  § 922 ...................................................................................................................................... 5
  § 506(b) .................................................................................................................................. 4
  § 506(a) .................................................................................................................................. 3
  § 502(d) ............................................................................................................................. 7, 9
  § 502(b) .................................................................................................................................. 6
  § 502(a) .................................................................................................................................. 3
  § 501 ...................................................................................................................................... 3
  § 362 ...................................................................................................................................... 5

48 U.S.C.
  § 2101 .................................................................................................................................... 1
  § 2241 .................................................................................................................................... 1

PROMESA
  § 301(a) .............................................................................................................................. 1, 3
  § 304(a) .................................................................................................................................. 3
  § 306(a) .................................................................................................................................. 3
  § 307(a) .................................................................................................................................. 3
  § 310 .................................................................................................................................. 1, 3

Puerto Rico UCC
  § 9-104 ................................................................................................................................... 8

**Other Authorities**

Bankr.
  R. 3007 .................................................................................................................................. 3
  R. 3012 .................................................................................................................................. 3
  R. 3012(a)(1) ......................................................................................................................... 5
  R. 9019 .................................................................................................................................. 5

Fed. R. Bankr. P.
  R. 3007 .................................................................................................................................. 1
  R. 3012 .................................................................................................................................. 1

iii

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "<u>Committee</u>")[2] hereby files this objection (the "<u>Claim Objection</u>"), pursuant to section 502 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), made applicable to these Title III cases by section 301(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("<u>PROMESA</u>"),[3] and Rules 3007 and 3012 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), made applicable to these Title III cases by section 310 of PROMESA, to Proof of Claim Number 18449 (the "<u>Non-Recourse Proof of Claim</u>") filed by U.S. Bank National Association in its capacity as Trustee (the "<u>Trustee</u>") for certain non-recourse bonds issued by PREPA (collectively, the "<u>Non-Recourse Bonds</u>").  In support of this Claim Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Non-Recourse Bonds are governed by that trust agreement dated as of January 1, 1974 (as amended and supplemented from time to time, the "<u>Trust Agreement</u>").[4] Section 701 of the Trust Agreement provides that the Non-Recourse Bonds are payable **solely** from amounts actually deposited in four funds (collectively, the "<u>Specified Accounts</u>").[5] This means that, under the terms of their pre-petition documents, the Trustee and the beneficial owners of the Non-Recourse Bonds (the "<u>Non-Recourse Bondholders</u>") have no right of recovery against PREPA or its assets beyond their right to look to amounts on deposit in the Specified Accounts.

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] PROMESA has been codified at 48 U.S.C. §§ 2101 – 2241.

[4] The Trust Agreement is attached as Appendix I to Exhibit A to the Non-Recourse Proof of Claim.

[5] The four funds are defined in the Trust Agreement as the "Sinking Fund," the "Reserve Maintenance Fund," the "Self-insurance Fund," and the "Capital Improvement Fund." *See* Trust Agreement § 507(h).

Because allowance of a proof of claim is determined with reference to applicable non-bankruptcy law, this means that both the Trustee and the Non-Recourse Bondholders have no claim against, and are not entitled to any distributions from, PREPA for any difference between the principal amount of (and any interest on) the Non-Recourse Bonds and the funds on deposit in the Specified Accounts.

2. According to PREPA's own audited financial statement dated two days prior to its July 2, 2017 petition date (the "Petition Date"), PREPA's funds in the Specified Accounts totaled approximately $25.0 million.[6] Moreover, only approximately $8.8 million of these funds were deposited in accounts held by the Trustee and thus subject to a perfected security interest of the Trustee and the Non-Recourse Bondholders.[7]

3. The Non-Recourse Proof of Claim ignores this reality and asserts a claim against PREPA in the amount of $8,477,156,729.56, representing the full amount of principal and interest purportedly due on the Non-Recourse Bonds on the Petition Date. Yet, for the reasons explained herein, there is no scenario under which PREPA is obligated to pay the Trustee or the Non-Recourse Bondholders the amount set forth in the Non-Recourse Proof of Claim because, other than the approximately $8.8 million that was on deposit in the Specified Accounts and held by the Trustee on the Petition Date, the Non-Recourse Bondholders have no right to payment from PREPA or its other assets.

---

[6] *See Puerto Rico Electric Power Authority Audited Financial Statements for Year Ended June 30, 2017* ("PREPA 2017 Audited Financial Statements"), at 101, available at https://emma.msrb.org/ES1289841-ES1009388-ES1410773.pdf. (showing amounts of $3.388 million and $5.417 million in the Sinking Fund, and $16.15 million in the Reserve Maintenance Fund, with no amounts shown for the Self-insurance Fund or the Capital Improvement Fund). Page 101 of the PREPA 2017 Audited Financial Statements is attached hereto as **Exhibit B**; a full copy of the PREPA 2017 Audited Financial Statements is available at https://emma.msrb.org/ES1289841-ES1009388-ES1410773.pdf.

[7] *See id.* (showing amount of $8.873 million held by the Trustee, U.S. Bank, for purposes of the Trust Agreement).

2

4.	Thus, the Non-Recourse Proof of Claim greatly exceeds PREPA's obligations under the Non-Recourse Bonds, meaning that the Trustee is effectively seeking to convert a non-recourse obligation into a recourse obligation. This outcome is specifically prohibited by section 927 of the Bankruptcy Code, and the Court should disallow the Non-Recourse Proof of Claim to the extent it exceeds the amounts on deposit in the Specified Accounts and held by the Trustee on the Petition Date.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

5.	The Court has jurisdiction over this Claim Objection pursuant to section 306(a) of PROMESA.

6.	Venue is proper in this district pursuant to section 307(a) of PROMESA.

7.	The statutory bases for the relief sought herein are section 502 of the Bankruptcy Code,[8] made applicable to these Title III cases by section 301(a) of PROMESA, and Bankruptcy Rules 3007 and 3012, as made applicable to these Title III cases by section 310 of PROMESA.

8.	The Committee is a "party in interest" pursuant to section 1109(b) of the Bankruptcy Code, as incorporated by section 301(a) of PROMESA,[9] and has standing to file and maintain this Claim Objection under section 502 of the Bankruptcy Code.[10]

---

[8]	The Committee also relies, to the extent the Court deems appropriate or necessary, on section 506(a) of the Bankruptcy Code, which provides that the bankruptcy court shall determine the value of an "allowed" secured claim.

[9]	*See In re Fin. Oversight & Mgmt. Bd. for P.R.,* 297 F. Supp. 3d 261, 264 (D.P.R. 2017) ("Pursuant to 11 U.S.C. § 1109(b), a provision of the Bankruptcy Code that was expressly incorporated by PROMESA, '[a] party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter.'") (alterations in original).

[10]	Section 502(a) of the Bankruptcy Code provides, in relevant part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a **party in interest . . . objects**." 11 U.S.C. § 502(a) (emphasis added).

3

**BACKGROUND**

9. On July 2, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed a voluntary petition for relief for PREPA pursuant to PROMESA section 304(a), commencing a Title III case for PREPA.[11]

10. On February 15, 2018, the Court entered the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [Case No. 17-BK-3283-LTS, Docket No. 2521] (the "Bar Date Order"), which set May 29, 2018 as the general deadline for filing proofs of claim against the Debtors. Subsequently, on May 25, 2018, the Court entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [Case No. 17-BK-3283-LTS, Docket No. 3160], which extended the general deadline for filing proofs of claim against the Debtors to June 29, 2018.

11. On May 21, 2018, the Trustee filed the Non-Recourse Proof of Claim. In addition to seeking recovery from PREPA for $8,477,156,729.56 in outstanding principal and pre-petition interest, the Non-Recourse Proof of Claim also asserts a claim against PREPA for post-petition interest and other items in an unspecified amount.[12]

12. On July 18, 2017, an ad hoc group of holders of the Non-Recourse Bonds, National Public Finance Guaranty Municipal Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc., sought relief from the automatic stay and the appointment of a receiver for PREPA. [Docket No. 74] (the "Initial Receiver Motion").

---

[11] Unless otherwise noted, all docket references are to the docket for PREPA's Title III case, Case 17-BK-4780-LTS.

[12] For the same reasons outlined in this Claim Objection, it is inconceivable that the Non-Recourse Bonds are entitled to post-petition interest or other costs under section 506(b) of the Bankruptcy Code and the Committee expressly reserves the right to challenge the Non-Recourse Proof of Claim on this and other grounds at a later date.

4

13. On July 31, 2017, the Oversight Board filed its opposition to the Initial Receiver Motion [Docket No. 149] (the "Opposition"). In its Opposition, the Oversight Board stated, among other things, that (i) movants were not entitled to adequate protection as the value of their collateral was zero, (ii) PREPA's Net Revenues are negative and movants have zero collateral value, and (iii) movants' security interest had no value (*i.e.*, Net Revenues are zero). Opposition, at 17-19.[13]

14. On October 3, 2018, a second motion seeking the appointment of a receiver was filed and styled *Motion of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc., for Relief from the Automatic Stay to Allow Movants to Seek Appointment of Receiver* (the "Receiver Motion") [Docket No. 975].

15. On March 27, 2019, the Committee filed its objection to the Receiver Motion (the "Receiver Motion Objection") [Docket No. 1151]. Many, if not all, of the arguments that are fatal to the Receiver Motion equally render the Non-Recourse Proof of Claim subject to disallowance, and the Committee therefore incorporates the Receiver Motion Objection into this Claim Objection.[14]

16. On May 10, 2019, the Oversight Board, in its capacity as representative of PREPA and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") filed a *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922 and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order*

---

[13] "Net Revenues" is defined in the Trust Agreement as the difference between PREPA's revenues and its "Current Expenses" (*i.e.*, reasonable and necessary current expenses of maintaining, repairing, and operating PREPA's system). *See* Opposition, at 5 (citing Trust Agreement, at 18, 20).

[14] The Committee's Receiver Motion Objection also contains a detailed description of the limited nature of the Specified Accounts (including the flow of funds into the Specified Accounts).

5

*Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Docket No. 1235] (the "<u>Settlement Motion</u>").

17. On July 1, 2019, the Oversight Board filed an adversary complaint (the "<u>Lien Challenge</u>") (a) challenging the Trustee and the Non-Recourse Bondholders' assertions of collateral beyond the Specified Accounts (and the funds therein) and (b) asserting that the Bondholders' only collateral (if any) is limited to the moneys deposited in those Specified Accounts that are held by the Trustee.[15] As the Committee will explain in its forthcoming objection to the Settlement Motion, the Committee is in agreement with the assertions set forth in the Lien Challenge. The purpose of this Claim Objection is not to repeat those assertions. Instead, this Claim Objection addresses an issue not addressed in the Lien Challenge: because the Non-Recourse Bonds are (i) non-recourse and payable solely from the collateral that secures them and (ii) secured solely by the Specified Accounts (and the moneys on deposit therein), any claim on account of the Non-Recourse Bonds cannot be valued in an amount greater than the approximately $8.8 million held in the Specified Accounts controlled by the Trustee on the Petition Date (and, by reason of that control, in which the Trustee's and the Non-Recourse Bondholders' security interests were arguably perfected).

## **RELIEF REQUESTED**

18. The Committee respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A,** reducing the Non-Recourse Claim to the amounts deposited in the Specified Accounts on the Petition Date, to the extent the Trustee holds a perfected security interest in such accounts.

---

[15] *See* Compl., *Fin. Oversight & Mgmt. Bd. for P.R. v. U.S. Bank Nat'l Ass'n*, Adv. Pro. No. 19-391-LTS (Bankr. D.P.R. July 1, 2019) [Docket No. 1].

6

## BASIS FOR RELIEF

19. Section 502(b) of the Bankruptcy Code provides in relevant part that if an objection to a claim has been made, "the court, after notice and a hearing, shall determine the amount of such claim[.]" 11 U.S.C. § 502(b); 4 Collier on Bankruptcy ¶ 502.03[1][a] (16th ed. 2015) ("After objection is made to a proof of claim, one of the tasks of the court is to determine the 'amount' of the claim. In determining the amount of the claim, the court is guided by otherwise applicable state or federal law, whether the claim is liquidated or contingent or if any other issues exist which bear upon the amount of the claim.").

20. As the Court is aware from the oppositions filed to the Initial Receiver Motion and Receiver Motion, the Non-Recourse Bonds have no recourse against PREPA and have an extremely limited pool of funds from which they can be satisfied – Net Revenues that are on deposit in the Specified Accounts. Indeed, according to PREPA 2017 Audited Financial Statements (two days prior to the Petition Date), the amount on deposit in the Specified Accounts was only approximately $25.0 million.[16]

21. At best, holders of the Non-Recourse Bonds have the right to recover the approximately $8.8 million in the Specified Accounts held by the Trustee as of the Petition Date. Any such right, however, does not, and cannot, transform a claim with recourse to those limited funds into a general claim against PREPA for the full amount of outstanding principal of and pre-petition interest on the Non-Recourse Bonds. To do so would transform a non-recourse claim into a recourse claim in violation of section 927 of the Bankruptcy Code. *Bank of N.Y. Mellon v. Jefferson Cty*. *(In re Jefferson Cty.)*, 482 B.R. 404, 433 (Bankr. N.D. Ala. 2012)

---

[16] *See* Ex. B (showing amounts totaling $8.805 million in the Sinking Fund, and $16.15 million in the Reserve Maintenance Fund, while showing no funds in the Self-insurance Fund, and making no reference to the Capital Improvement Fund).

7

(purpose of section 927 was to ensure that debt could not be "turned from a nonrecourse into a recourse obligation of the municipal government").[17]

22. The Non-Recourse Proof of Claim is also subject to disallowance in part pursuant to section 502(d) of the Bankruptcy Code because, with the exception of the approximately $8.8 million held by the Trustee, the security interests purportedly granted in the Specified Accounts were not perfected on the Petition Date.

23. As discussed in the Receiver Motion Objection, pursuant to section 9-104 of the Uniform Commercial Code as that section was adopted in Puerto Rico, a security interest in deposit accounts can be perfected only by control. In turn, control over a deposit account is obtained if (i) the secured party is the bank with which deposit account is maintained; (ii) the secured party is the bank's customer with respect to the deposit account, or (iii) the debtor, the secured party, and the bank have entered into an agreement giving the secured party the requisite control over the deposit account (a "control agreement").[18]

24. Paragraph 9 of the Addendum to the Non-Recourse Proof of Claim speaks generally of financing statements filed in connection with securing the Non-Recourse Bonds. It does not, however, mention any control agreements governing the Specified Accounts. To the contrary, while the Sinking Fund and certain accounts comprising the Self-insurance Fund are held by the Trustee and are, therefore, arguably subject to control by the Trustee,[19] the remaining

---

[17] *See also* 11 U.S.C. § 927 ("The holder of a claim payable solely from special revenues of the debtor under applicable nonbankruptcy law shall not be treated as having recourse against the debtor on account of such claim pursuant to section 1111(b) of this title."); *see also* 6 Collier on Bankruptcy ¶ 927.02 ("The language [of Section 927] also makes clear that the only effect of the section is to render ineffective with respect to such a claim the provision in section 1111(b) that would otherwise grant the claim treatment as though it had recourse against the debtor.").

[18] *See* 19 L.P.R.A. § 2214(a)(1)-(3).

[19] *See* Cash In Bank and Time Deposit Accounts chart ("Bank Account Chart") attached to Puerto Rico Electric Power Authority 13 Week Cash Flow Update Dated October 9, 2019 (the "Cash Flow Update"), available at https://emma.msrb.org/MarketActivity/ContinuingDisclosureDetails/ER972824 (showing amounts in the

8

Specified Accounts, including the Reserve Maintenance Fund (and the $16.15 million credited thereto as of the Petition Date) appear to be neither held by the Trustee nor subject to a control agreement—rendering any security interest in them unperfected and avoidable.[20]

### I. Defensive Nature of Claim Objection

25. The Committee is filing this Claim Objection as a defense to the allowance of the Non-Recourse Proof of Claim. Courts have consistently held that objections to claims under section 502 are defensive in nature,[21] and thus the Committee is well within its right to object to the Non-Recourse Proof of Claim under section 502 solely for purposes of challenging the allowance or amount of the Non-Recourse Proof of Claim. As explained herein, under the express language contained in the Trust Agreement, both the Trustee and the Non-Recourse Bondholders are not entitled to any recovery from PREPA because the Non-Recourse Bonds have no contractual right of recourse against PREPA. The only recovery to which the Trustee and the Non-Recourse Bondholders may be entitled is limited to the amounts on deposit in the Specified Accounts on the Petition Date—and, of those, only the Specified Accounts that were held by the Trustee on the Petition Date. As discussed above, the security interests purportedly

---

Sinking Fund and the Self-insurance Fund deposited in accounts with the Trustee). The Cash Flow Update is attached hereto as **Exhibit C**. To be clear, despite its control of certain accounts comprising the Self-Insurance Fund, any security interest the Trustee may have therein is entirely academic given that the balance of the Self-insurance fund was $0 on the Petition Date. Ex. B, at 101. As of October 9, 2019, that amount was only approximately $36,000. *See* Bank Account Chart.

[20] Lien Challenge ¶ 3.

[21] *See Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 875 (9th Cir. 2011) ("a claim objection or motion to disallow a claim is generally defensive"); *In re Alexander*, No. 11-74515-SCS, 2014 WL 3511499, at *10 (Bankr. E.D. Va.) ("Trustee is entitled to raise her 'strong-arm powers' under § 544(a) as a defense to a superior claim to an asset of the estate, without regard to whether she has raised such powers in a lien avoidance adversary proceeding."), *aff'd*, 524 B.R. 82 (E.D. Va. 2014); *In re Gerathy*, No. 04-52744, 2007 WL 1686694, at *3 (Bankr. E.D. Mich. June 12, 2007) (holding that section 502(d) allows trustee to object to secured status of claim without first bringing an adversary proceeding); *In re Werth*, 37 B.R. 979, 987 (Bankr. D. Colo. 1984) ("the debtor is in a defensive position in an objection to claim proceeding"), *aff'd*, 54 B.R. 619 (D. Colo. 1985).

9

granted in the Specified Accounts not held by the Trustee were not perfected on the Petition Date.

26. Accordingly, the value of the Non-Recourse Bondholders' collateral is limited to the approximately $8.8 million in the Specified Accounts held by the Trustee on the Petition Date and, therefore, the amount of the Non-Recourse Proof of Claim is limited to approximately $8.8 million, with no claim (secured or unsecured) for any excess.

## II. Burden Is On Trustee to Prove Claim Greater than Approximately $8.8 Million

27. It is a basic principle of bankruptcy law that claim objections are governed by a burden-shifting framework under which the objecting party bears the initial burden rebutting the presumption of validity that attaches to a properly filed proof of claim. This initial burden requires "evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Everett*, No. 10–19457–FJB, 2013 WL 3757283, at *5 (Bankr. D. Mass. July 15, 2013) (quoting *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1991).

28. Once a claim is no longer entitled to the *prima facie* assumption of validity, "the claim-filing creditor bears the ultimate risk of nonpersuasion as to the allowability of the claim. Ultimately, the creditor must demonstrate, by a preponderance of the evidence, that the claim is entitled to allowance." *Ezenia! Inc. v. Nguyen (In re Ezenia! Inc.)*, 536 B.R. 485, 496 (Bankr. D.N.H. 2015) (quoting *Juniper Dev. Grp. v. Kahn (In re Hemingway Transp. Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993)); *see also In re Alleghany,* 954 F.2d at 174 ("The burden of persuasion is always on the claimant.").

29. The Trustee's Non-Recourse Proof of Claim may have been entitled to a *prima facie* presumption of validity. However, the assertions in the Lien Challenge, the text of the

Trust Agreement (a copy of which was attached to the Lien Challenge), PREPA's own audited financial statement, and the absence of any control agreement in the Trustee's own addendum attached to the Non-Recourse Proof of Claim, all refute allegations central to the Non-Recourse Proof of Claim—or, at the least, the allegation that the Trustee and the Non-Recourse Bondholders are entitled to more than approximately $8.8 million. It is, therefore, the Trustee's burden to support its proof of claim with evidence, and it has manifestly failed to do so.

## RESERVATION OF RIGHTS

30. The Committee reserves its right to object to the Non-Recourse Proof of Claim on any additional grounds at a later date and any other proof of claim on any grounds whatsoever at a later date.

## CERTIFICATION PURSUANT TO LOCAL BANKRUPTCY RULE 3007-1

31. The Trustee is not a service member.

## NOTICE

32. Notice of this Claim Objection has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (v) PREPA; (vi) the insurers of the bonds issued or guaranteed by the Debtors; (vii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors; (vii) Citigroup Global Markets, Inc.; (viii) Filsinger Energy Partners; (ix) Ankura Consulting Group; (x) counsel identified in the Non-Recourse Proof of Claim; and (xi) all parties that have filed a notice of appearance in the above-captioned Title III cases.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit A** reducing the Non-Recourse Proof of Claim to the amount on deposit in the Specified Accounts on the Petition Date, and granting such other and further relief as the Court deems just and proper.

Dated: October 29, 2019

/s/ Luc A. Despins                    .
PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*