# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | **PROMESA**<br>**Title III** |
| **THE FINANCIAL OVERSIGHT AND**<br>**MANAGEMENT BOARD FOR PUERTO RICO,** | **No. 17 BK 3283-LTS**<br>**No. 17 BK 4780-LTS** |
| As a representative of | **(Jointly Administered)** |
| **THE COMMONWEALTH OF PUERTO RICO**<br>*et al.,* | **Re: Dkt. No. 1235**<br><br>**Case No. 17-BK-4780-LTS** |
| **Debtors.**[1] | **Hearing date:** December 11, 2019 at 9:30 a.m.<br>(Atlantic Standard Time)<br><br>**[This pleading relates only to PREPA, and**<br>**shall be filed in lead Case No. 17-BK-3283-**<br>**LTS, and PREPA's Title III case (Case No. 17-**<br>**BK-4780-LTS)]** |

## LIMITED OBJECTION AND RESERVATION
## OF RIGHTS BY THE FEE EXAMINER WITH RESPECT TO THE
## PREPA/AAFAF RULE 9019 MOTION FOR PREPA RSA APPROVAL

The Fee Examiner, by his counsel, Godfrey & Kahn, S.C., responds with this limited

objection to the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to*

*Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019*

*for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Certain Limitations Periods* (the "**Motion**"), filed on May 10, 2019 [Case No. 17-BK-4780, Dkt.

No. 1235], subsequently amended, conformed as of September 9, 2019, and subject to stipulated

and disputed discovery and rescheduled hearing dates. *See Sixth Revised Order Modifying*

*Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and*

*AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules*

*3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support*

*Agreement [ECF No. 1235]* [Dkt. No. 9010].

## PRELIMINARY STATEMENT

This limited objection focuses on the contractual commitment by the Government

Parties,[2] in section 22 of the Definitive Restructuring Support Agreement (the "**RSA**"), to pay

largely unspecified, apparently unlimited, and wholly unchecked professional fees and expenses

in this proceeding. The recipients and beneficiaries of those payments would be the members of

the Ad Hoc Group of PREPA Bondholders, now and as it expands, and Assured Guaranty

Municipal Corp. In short, from the standpoint of cost and administrative expenses, neither the

RSA nor the supporting pleadings provide the Court, parties in interest, or the public with the

information necessary to evaluate it, even under the standards of Rule 9019—generally more

forgiving than comparable plan confirmation standards.

## SUPPLEMENTAL BACKGROUND

1.      The objection incorporates by reference paragraphs 14-22 of the Motion,

particularly the statement that PREPA is "one of the largest municipal utilities in the United

States, ranking first in number of clients and revenues." Motion ¶ 20. Every household and

business in the Commonwealth will bear the cost of implementing the Motion and RSA, if

---

[2] Capitalized terms not otherwise defined have the meanings set forth in the Motion.

approved—including the payment of undisclosed and unlimited professional fees—through an increase in utility rates already among the highest nationwide.

2. The Fee Examiner did not participate in the discussions leading to the Motion and RSA or the discussions following their filing, nor did he ask to participate. Nonetheless, recognizing the $25 million fee-shifting provisions in the July 30, 2018 Preliminary RSA, and the potential for additional unchecked fees, the Fee Examiner shared his concerns with the Government Parties as early as May 2019. Those concerns include the absence of any meaningful limitation on the still undisclosed fees and expenses, and this Limited Objection brings those same concerns to the Court.

3. The Motion seeks Court approval of "proposed settlements [that] represent a significant milestone in PREPA's Title III case and the overall restructuring of PREPA." Motion ¶ 2. The Motion and RSA propose to "resolve[] significant disputes…and provide[] PREPA a path to confirmation…" consistent with PROMESA. The pleadings are a "giant first step" in the words of the Motion. *Id*. ¶ 10. The proposed RSA resolves disputes affecting a significant portion of $6 billion of uninsured bonds and $2.25 billion of allegedly secured and guaranteed bonds, and it effectively resolves the pending PREPA receivership motion. *See* Dkt. No. 1233. However, neither the Motion nor the RSA gives the Court (or the public) sufficient information to determine whether the settlement is fair and reasonable in its opaque provisions to reimburse the fees and expenses incurred by so many parties with so many professionals.

4. Since the Motion's filing six months ago, and at the request of the parties, the Court has periodically extended deadlines for discovery and objections, and disagreements over discovery have been resolved by the Court. *See*, *e.g.*, Dkt. Nos. 1534, 1579, 1639, 1646, 1654, 1667, 1670 and 1672.

3

5.      On October 7, 2019, the Financial Oversight Board sent a response letter to members of Congress addressing Congressional inquiries in a September 24, 2019 letter and noting the "exorbitant and tragic" amount of professional fees already incurred in these proceedings.[3]

6.      Through October 1, 2019, 55 professionals have been subject to Title III review for their fees and expenses.  Of that total, 19 have been retained by the Financial Oversight and Management Board, 12 by AAFAF, and seven by the Official Committee of Unsecured Creditors.

## ARGUMENT

Section 22 of the RSA requires PREPA to pay, "on a monthly basis," the "reasonable fees and reasonable expenses of the Ad Hoc Group incurred in connection with the Preliminary RSA, this Definitive RSA, and any documents and transactions relating to or implementing…" them on or after July 23, 2018.  The Ad Hoc Group has more than 70 members now, though the RSA permits the group to grow with a simple notice.  *See* Annex A, RSA; *see also* Motion ¶ 41, at 27.  The RSA also requires PREPA to pay up to $25 million in fees and expenses incurred *before* July 23, 2018 by the Ad Hoc Group members and to pay all of Assured's reasonable fees and expenses "on or after August 1, 2018" continuing through either the Effective Date of a PREPA plan of reorganization or through another termination event defined in the RSA.[4]

---

[3] Congress's letter to the Oversight Board is publicly available at
https://www.documentcloud.org/documents/6428306-Congressional-letter-to-Financial-Oversight-Board.html#document/p1.  The Oversight Board's response is publicly available at
https://drive.google.com/file/d/1qsq0Qm7F4TaqPsrjQEvKj_4v945mUDIK/view.

[4] The Preliminary RSA was announced on July 30, 2018, promising in section 8 to reimburse the reasonable fees and expenses of "the members of the Ad Hoc Group."  The Motion does not disclose the basis either for the July 23, 2018 date, one week *before* the Oversight Board approved the Preliminary RSA, or for the August 1, 2018 date for Assured.

4

Neither the RSA, the Motion, nor any of the subsequently-filed pleadings contains any basis for, estimate of, nor quantitative limit on the reimbursable professional fees and expenses of either Assured or the Ad Hoc Group members for a period that began more than 16 months ago and extends indefinitely.[5]  While the term "reasonable" modifies the term "fees," the RSA provides no limits or process for a reasonableness determination.  And while the reimbursement requirement in favor of the Ad Hoc Group members *before* July 23, 2018 is limited to $25 million, for fees and expenses after that date (August 1, 2018 for Assured professionals), the only limitation is that each member group can seek reimbursement for only five designated professionals *each*.

The result of these provisions is that PREPA—and its ratepayers—could become liable for the fees and expenses of scores of professionals for, at the very least, a 16-month period plus $25 million for fees and expenses before July 23, 2018.  This liability inures with no requirement that the parties establish and document the authority for the payments (other than the RSA itself) or disclose to the Court their professionals' identities, retention terms (including discounts, if any) or incurred or expected fees and expenses.[6]

Regardless of their ultimate amount, the fees and expenses provided in section 22 are analogous to fees and expenses awardable under 11 U.S.C. § 503(b), and only under that section, subject to Court approval under established standards.[7]  Yet section 22's payment provisions

---

[5] The parties may terminate the RSA if the Rule 9019 motion is denied or if the Court has not approved the settlement by August 30, 2019—a deadline since extended.  Nevertheless, whether or not approved, the obligation of the Government Parties to pay *all* of the Ad Hoc Group's professional fees "shall survive."  RSA ¶ 14.

[6] Section 22(c) requires professionals to submit "detailed time records with appropriate redactions" to counsel for the Oversight Board, for AAFAF, and for PREPA, but it does not require public disclosure let alone Court approval.  Unlike the fees for many of the professionals providing services here, the paid or reimbursed fees under the RSA would not be subject to tax withholding under the Puerto Rico Internal Revenue Code.

[7] Section 503 of the Bankruptcy Code applies to these Title III proceedings pursuant to section 301(a) of PROMESA.

5

conflict with the Bankruptcy Code's standards and procedures for disclosure and payment of

administrative expenses without requiring professionals to file a public application or meet the

evidentiary and administrative burdens for reimbursement or payment.

On its face, the RSA requires PREPA to pay for the fees and expenses for professionals

not retained by a Government Party or official committee. It also requires PREPA to pay these

unlimited amounts without the approval of this Court or public disclosure. These payments are

to begin immediately and continue through the effective date of a PREPA plan or termination of

the RSA. Notably, even if this Court declines to authorize the settlement, the Government has

committed itself to pay the fees at least as long as they were incurred before the date of the

Motion's denial. *See* RSA ¶ 14.

Approval of a restructuring support agreement does not guarantee that a plan embodying

its terms will be confirmed. *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 468 (Bankr.

S.D.N.Y. 2014). Plan issues should be reserved for the confirmation hearing—with a distinct

inquiry examining whether the plan satisfies the statutory standards. *See id*., citing *In re*

*Residential Capital, LLC*, No. 12-12020, 2013 WL 3286198, at *2-3 (Bankr. S.D.N.Y. June 27,

2013). While the RSA seeks to pre-determine the award of undisclosed professional fees, which

is the subject of this limited objection, the Fee Examiner also reserves his right to object to the

payment of Title III professional fees in connection with plan confirmation, except as provided

by PROMESA.

Whenever the Court addresses the issue, and in whatever context, the Motion does not

disclose any statutory authority for payment of the Ad Hoc Group's and Assured's fees, nor does

it characterize them as part of a secured claim under 11 U.S.C. § 506(b) or (c).[8] In a Chapter 11

---

[8] PROMESA § 301(a) incorporates § 506 of the Bankruptcy Code.

case, section 503(b) is the only recognized avenue for payment of most creditor administrative

expenses.  *See In re Lehman Bros. Holdings, Inc.*, 508 B.R. 283, 289 (S.D.N.Y. 2014).  That

section allows the reimbursement of expenses of "a creditor, an indenture trustee, an equity

security holder, or a committee representing creditors or equity security holders other than a

committee appointed under section 1102 of this title" but only upon a showing that the claimant

has made a "substantial contribution" in the case and court approval.  11 U.S.C. § 503(b)(3)(D).

PROMESA contains no suggestion that Congress intended to allow creditors to

"short-circuit the process by effectively deeming an entity to have made a substantial

contribution" without an application to and determination by the Court that warrant

reimbursement.  *Lehman*, 508 B.R. at 294.  The RSA ignores the section 503(b) requirements

and lacks any reference to the legal authority for the significant professional fee payments it

promises.

Even if the movants can establish legal authority for the payments or reimbursements, the

Court should not be powerless to assess and monitor this hidden cost of the PREPA Title III

process—all to be absorbed by Puerto Rico's ratepayers.  By point of reference, in *Energy

Future Holdings Inc.*, a recent Delaware Chapter 11 case (cited with approval, Motion ¶ 46), the

bankruptcy court awarded $111.7 million in section 503(b) substantial contribution fee and

expense reimbursement for 46 professional firms—after four years and four separate plan

confirmation processes.  The total retained professional fees and expenses awarded in that

proceeding, under section 330, as adjusted and judicially approved, exceeded $650 million.  *See

In re Energy Future Holdings Corp.*, Case No. 14-10979, Dkt. Nos. 13660 and 13610 (Bankr. D.

Del. Dec. 12, 2018 & Nov. 6, 2018).

Here, the legion of additional professionals proposed to be paid under section 22 of the

RSA could join—without disclosure or Court approval—the growing number of professionals

already being paid but only *with* Court approval. The total cost of the professionals paid under

the RSA could be a significant percentage of the total fees here, just as they were in *Energy*

*Future*. The total sought here already exceeds $530 million with many principal professional

firms providing discounts from their normal hourly rates and making further adjustments to their

fees prior to Court review and approval. Whether as part of the retention process at the outset or

as part of the PROMESA section 316 review, many professionals are charging—and being

paid—less than the "market" rates they charge in Chapter 11 proceedings. *See*, *e.g.*, Dkt.

No. 2868, ¶ 7; Dkt. No. 6047, ¶ 18; and Dkt. No. 5891, ¶ 23 (sample fee applications). Because

section 22 is silent on rates and billing practices, not to mention disclosure, the RSA creditors'

professionals face no similar constraints on either their fees or expenses.

The legal standard for Rule 9019 motions is deferential, determined by the lowest point

in the range of reasonableness. *See* Motion ¶¶ 44-49. Nevertheless, Rule 9019 movants always

need to present a factual record, short of an evidentiary hearing, that permits the Court to

exercise its discretion in approving or disapproving a motion. Bankruptcy courts necessarily will

review "all facts necessary for an intelligent and objective opinion…[including] an educated

estimate of the complexity, expense, and likely duration…" of the anticipated litigation that the

compromise will avoid. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.*

*Anderson*, 390 U.S. 414, 424 (1968); *see also Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.

1995) (courts must "assess and balance" the value of the competing interests being

compromised) (citation omitted); *see generally* 10 *Collier on Bankruptcy* ¶ 9019.02 (Richard

Levin & Henry J. Sommer eds., 16th ed. 2019).

8

The RSA, with its general language about a contractual obligation to pay very substantial professional fees, does not provide the information necessary for the Court to "'apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision.'" Motion ¶ 48 (cited and quoted cases omitted). Of course, the most recent Rule 9019 precedent is this Court's own decision approving the Commonwealth/COFINA plan support agreements. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 360 F. Supp. 3d 65, 75 (D.P.R. 2019), *citing Jeffrey v. Desmond*, *supra*, and collecting cases.

The confirmed COFINA plan of reorganization [Case No. 17-BK-3284, Dkt. No. 559] included a blanket and undifferentiated "consummation cost" provision, *id*. ¶ 28, but the COFINA settlement agreement did not provide for the reimbursement of the professional fees and expenses of supporting creditors. That was a point of emphasis both in the parties' agreement and in the Court's order approving it. 360 F. Supp. 3d at 81 (noting that "no costs (including professional fees) incurred by COFINA or its stakeholders…shall be borne by the Commonwealth…"). Now, even the post-confirmation fees and expenses of COFINA professionals are subject to at least limited review. *See* Case No. 17-BK-03284 [Dkt. No. 681].

The Motion leaves no doubt about the importance of PREPA to the economic future of the Commonwealth or about the unprecedented challenges PREPA presents. Yet the Court cannot meaningfully assess the Motion or the RSA without a robust disclosure of the cost, including the virtual blank check, free from tax withholding, proposed in section 22.

To be sure, the ultimate judicial determination—of risk, of value, and of expense—need not be based on precise information. *See In re Healthco Int'l, Inc.*, 136 F.3d 45, 50-51 (lst Cir. 1998) (exhaustive review of contested invoices not necessary) (cited with approval, Motion ¶ 45). Yet where the parties themselves have already set a $25 million ceiling on fees and

9

expenses incurred *before* July 2018, there must be at the very least some estimated range or expectation of post-July 2018 fees and expenses and some form of documented process to disclose and evaluate the fees' reasonableness.

Accountability, transparency and public disclosure have been hallmarks of PROMESA itself and the Title III proceedings.  The Motion discloses the precise means of calculating distributions and allowed administrative claims.  *See* Motion ¶ 41, at 22-23.  In "further consideration" for the RSA's supporters, moreover, it also discloses "Waiver and Support Fees" in the form of additional Tranche A bonds, valued at the least at $80 million for Assured and the Ad Hoc Group members and another $80 million for other supporters and new signatories to the RSA.  Yet section 22 provides no estimates or ranges for a line item for professional fees and expenses that could be even greater than these other enumerated support and waiver fees.[9]

If approved as filed, the RSA in effect could pay some creditors an unrestricted amount in fees—reimbursed or paid with no questions asked.  This provision reduces the facially attractive value of the undoubtedly "significant discounts" of debt principal and interest being given by the RSA parties and offered to justify its approval.  The Court cannot determine the reasonableness of the full consideration to be paid to plan supporters by PREPA ratepayers without additional disclosures, limitations, and a process for the verification and reimbursement of professional fees and expenses.

---

[9] The Debtors have estimated the Waiver and Support Fees at $150 million in Tranche A bonds.  *See Supplemental Memorandum of Law and Facts in Support of Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922 and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Dkt. No. 7815], ¶ 28, pp. 12-13.

## CONCLUSION

The Motion asserts that the RSA is a "reasonable, fair, and equitable" settlement of significant issues and claims.  Motion ¶ 42.  It may well be.  However, the Court cannot reach that conclusion in the face of the undefined and incomplete provisions of section 22.  The Fee Examiner reserves the right to object to any plan of reorganization that authorizes unchecked and undisclosed professional fees and asks that the RSA be amended to include a more robust and complete disclosure of the true professional fee cost to PREPA's ratepayers.

Dated this 30th day of October, 2019.

WE HEREBY CERTIFY that on this date, we electronically filed the foregoing objection with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all attorneys of record registered in the use of the CM/ECF system.

EDGE Legal Strategies, PSC


  s/Eyck O. Lugo
Eyck O. Lugo
Vilmarys M. Quiñones Cintrón
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Telephone:  (787) 522-2000
Facsimile:  (787) 522-2010

*Puerto Rico Counsel for Fee Examiner*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609

Katherine Stadler (*Pro Hac Vice*)

*Counsel for the Fee Examiner*

20619071.6

11