# Exhibit 3

**1974 Trust Agreement**

PUERTO RICO WATER RESOURCES AUTHORITY

TO

FIRST NATIONAL CITY BANK

*Trustee*

---

# Trust Agreement

---

Dated as of January 1, 1974

1

USB_9019MOTION_0000001

2

USB_9019MOTION_0000002

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| Parties | 1 |
| Recitals: | |
|    Authority Act | 1 |
|    Powers of Authority | 1 |
|    The System and the 1947 Indenture | 3 |
|    Resignation of Trustee under the 1947 Indenture | 3 |
|    Successor trustee under the 1947 Indenture | 4 |
|    Determination to acquire additional facilities | 4 |
|    Determination to issue revenue bonds | 4 |
|    Forms: | |
|       Coupon bonds | 4 |
|       Coupons | 10 |
|       Registered bonds without coupons | 11 |
|       Certificate of authentication | 13 |
|       Certificate of authentication for registered bonds | 13 |
| Power to enter Agreement | 13 |
| Authorization of Agreement | 14 |
| Compliance with law | 14 |
| Acceptance of trusts by Trustee | 14 |
| Pledge of revenues | 14 |
| Agreement of parties | 14 |

## ARTICLE I.

### DEFINITIONS.

SEC.   101.   Meaning of words and terms:

| | PAGE |
|---|---|
| "Agreement" | 15 |
| "Amortization Requirement" | 15 |
| "Annual Budget" | 16 |
| "Authority" | 16 |
| "Authority Act" | 16 |
| "Board" | 16 |
| "Bond Service Account" | 17 |
| "bondholder of record" | 17 |
| "bonds" | 17 |
| "Capital Expenditures" | 17 |
| "Construction Fund" | 17 |
| "Consulting Engineers" | 17 |
| "Controller" | 17 |
| "cost" | 18 |
| "Current Expenses" | 18 |
| "daily newspaper" | 18 |

USB_9019MOTION_0000003

ii

|  | PAGE |
|---|---|
| "Depositary" | 18 |
| "Executive Director" | 18 |
| "fiscal year" | 19 |
| "General Fund" | 19 |
| "General Reserve Fund" | 19 |
| "Government Obligations" | 19 |
| "Improvements" | 19 |
| "Investment Obligations" | 20 |
| "Net Revenues" | 20 |
| "1947 Construction Fund" | 20 |
| "1947 Indenture" | 20 |
| "1947 Indenture Bonds" | 20 |
| "1947 Revenue Fund" | 20 |
| "1947 Sinking Fund" | 20 |
| "1947 Trustee" | 20 |
| "Opinion of Counsel" | 21 |
| "Paying Agents" | 21 |
| "Principal and Interest Requirements" | 22 |
| "Redemption Account" | 22 |
| "Renewal and Replacement Fund" | 22 |
| "Reserve Account" | 22 |
| "Reserve Maintenance Fund" | 22 |
| "Revenue Fund" | 22 |
| "Revenues" | 23 |
| "Secretary" | 23 |
| "serial bonds" and "term bonds" | 23 |
| "Series" | 23 |
| "Sinking Fund" | 23 |
| "System" | 23 |
| "Time Deposits" | 24 |
| "Treasurer" | 24 |
| "Trustee" | 24 |
| SEC. 102.  Miscellaneous definitions | 24 |

## ARTICLE II.

FORM, EXECUTION AND REGISTRATION OF BONDS AND CONDITIONS FOR
AUTHENTICATION AND DELIVERY OF BONDS.

| SEC. 201.  Limitation on issuance of bonds | 24 |
|---|---|
| SEC. 202.  Form of bonds | 24 |

USB_9019MOTION_0000004

iii

|  |  |  | PAGE |
|---|---|---|---|
| SEC. | 203. | Details of bonds | 25 |
|  |  | Execution of bonds and coupons | 25 |
|  |  | Payment of principal and interest | 26 |
| SEC. | 204. | Authentication of bonds | 26 |
| SEC. | 205. | Exchange of coupon bonds for registered bonds | 27 |
|  |  | Exchange of registered bonds for coupon bonds or registered bonds | 27 |
| SEC. | 206. | Negotiability of coupon bonds | 27 |
|  |  | Transfer of registered bonds | 27 |
|  |  | Cancellation of bonds and coupons surrendered for exchange or transfer | 28 |
| SEC. | 207. | Ownership of registered bonds | 28 |
|  |  | Ownership of coupon bonds | 29 |
|  |  | Transfer of title of bonds | 29 |
| SEC. | 208. | Issuance of revenue bonds to pay cost of Improvements | 29 |
|  |  | Conditions of authentication and delivery | 30 |
|  |  | Disposition of bond proceeds | 32 |
| SEC. | 209. | Issuance of revenue bonds for any proper corporate purpose | 32 |
|  |  | Conditions of authentication and delivery | 33 |
|  |  | Disposition of bond proceeds | 35 |
| SEC. | 210. | Issuance of revenue refunding bonds to refund all 1947 Indenture Bonds and bonds issued under this Agreement | 35 |
|  |  | Conditions of authentication and delivery | 37 |
|  |  | Disposition of bond proceeds | 39 |
| SEC. | 211. | Temporary bonds | 40 |
| SEC. | 212. | Mutilated, destroyed or lost bonds | 41 |

## ARTICLE III.

### REDEMPTION OF BONDS.

| SEC. | 301. | Redemption of bonds | 41 |
|---|---|---|---|
|  |  | Selection by Trustee | 41 |
| SEC. | 302. | Redemption notice | 42 |
| SEC. | 303. | Effect of calling for redemption | 42 |
| SEC. | 304. | Matured coupons | 43 |
| SEC. | 305. | Redemption of portion of registered bonds | 43 |

USB_9019MOTION 0000005

iv

|  |  |  | PAGE |
|---|---|---|---|
| Sec. | 306. | Cancellation of bonds and coupons redeemed | 43 |
| Sec. | 307. | Bonds and portions of bonds called for redemption not deemed outstanding | 43 |

### ARTICLE IV.

#### CUSTODY AND APPLICATION OF PROCEEDS OF BONDS.

| Sec. | 401. | Construction Fund | 44 |
|---|---|---|---|
| Sec. | 402. | Payments from Construction Fund | 44 |
| Sec. | 403. | Items of cost | 45 |
| Sec. | 404. | Lands for projects | 46 |

### ARTICLE V.

#### REVENUES AND FUNDS.

| Sec. | 501. | Covenant as to bills for services | 46 |
|---|---|---|---|
| Sec. | 502. | Covenant as to rates | 46 |
| Sec. | 503. | General Fund | 48 |
| Sec. | 504. | Annual Budget | 49 |
| Sec. | 505. | Application of moneys in General Fund | 50 |
| Sec. | 506. | Revenue Fund | 51 |
| Sec. | 507. | Sinking Fund | 51 |
|  |  | Bond Service Account, Reserve Account and Redemption Account | 51 |
|  |  | Reserve Maintenance Fund | 51 |
| Sec. | 508. | Disposition of balances in 1947 Indenture funds and accounts | 54 |
| Sec. | 509. | Application of moneys in Bond Service Account | 54 |
| Sec. | 510. | Application of moneys in Reserve Account | 55 |
| Sec. | 511. | Application of moneys in Redemption Account | 55 |
|  |  | Purchase of bonds | 55 |
|  |  | Redemption of bonds | 55 |
| Sec. | 512. | Use of moneys in Reserve Maintenance Fund | 57 |
| Sec. | 513. | Application and pledge of moneys in Sinking Fund | 58 |

USB_9019MOTION_0000006

v

|  |  |  | PAGE |
|---|---|---|---|
| SEC. | 514. | Moneys set aside for principal and interest held in trust .... | 58 |
|  |  | Moneys unclaimed for six years after maturity of bonds and coupons ............................................. | 58 |
| SEC. | 515. | Cancellation of bonds and coupons upon payment ......... | 58 |

## ARTICLE VI.

### DEPOSITARIES OF MONEYS, SECURITY FOR DEPOSITS AND INVESTMENT OF FUNDS.

| SEC. | 601. | Deposits constitute trust funds ........................ | 59 |
|---|---|---|---|
|  |  | Security for deposits ................................ | 59 |
| SEC. | 602. | Investment of moneys ................................ | 60 |
|  |  | Investments deemed to be part of Fund or Account for which purchased ...................................... | 61 |

## ARTICLE VII.

### PARTICULAR COVENANTS.

| SEC. | 701. | Payment of principal, interest and premium ............ | 61 |
|---|---|---|---|
|  |  | Pledge of revenues .................................. | 62 |
|  |  | Bonds not general obligations of Commonwealth of Puerto Rico ............................................. | 62 |
|  |  | Offices or agencies for payment of coupon bonds and coupons | 62 |
| SEC. | 702. | Covenant to integrate Improvements into System ......... | 62 |
|  |  | Covenant to construct Improvements in accordance with plans | 62 |
|  |  | Covenant as to operation ............................ | 63 |
| SEC. | 703. | Compliance with 1947 Indenture ...................... | 63 |
|  |  | Release of 1947 Indenture .......................... | 63 |
|  |  | Covenant as to amendment of 1947 Indenture ............ | 63 |
| SEC. | 704. | Covenant as to Renewal and Replacement Fund .......... | 63 |
| SEC. | 705. | Payment of lawful charges ........................... | 64 |
| SEC. | 706. | Employment of Consulting Engineers ................... | 64 |
| SEC. | 707. | Insurance .......................................... | 65 |
| SEC. | 708. | Inspection of insurance policies ......................... | 67 |
| SEC. | 709. | No inconsistent action ............................... | 67 |
| SEC. | 710. | Accurate records .................................... | 67 |
|  |  | Monthly reports .................................... | 68 |
|  |  | Annual audits ...................................... | 68 |
|  |  | Additional reports or audits .......................... | 68 |

7

vi

| | | | PAGE |
|---|---|---|---|
| Sec. | 711. | Covenant as to additional 1947 Indenture Bonds | 69 |
| Sec. | 712. | Covenant against sale or encumbrance; exceptions | 69 |

### ARTICLE VIII.

#### Remedies.

| | | | |
|---|---|---|---|
| Sec. | 801. | Extended coupons | 71 |
| Sec. | 802. | Events of default | 71 |
| Sec. | 803. | Acceleration of maturities | 73 |
| Sec. | 804. | Enforcement of remedies | 74 |
| Sec. | 805. | Pro rata application of funds | 75 |
| Sec. | 806. | Effect of discontinuance of proceedings | 77 |
| Sec. | 807. | Majority of bondholders may control proceedings | 77 |
| Sec. | 808. | Restrictions upon action by individual bondholder | 78 |
| Sec. | 809. | Actions by Trustee | 79 |
| Sec. | 810. | No remedy exclusive | 79 |
| Sec. | 811. | No delay or omission construed to be a waiver | 79 |
| | | Repeated exercise of powers and remedies | 79 |
| | | Waiver of default | 79 |
| Sec. | 812. | Notice of default | 79 |

### ARTICLE IX.

#### Concerning the Trustee.

| | | | |
|---|---|---|---|
| Sec. | 901. | Acceptance of trusts | 80 |
| Sec. | 902. | Trustee entitled to indemnity | 80 |
| | | Trustee may act without indemnity | 80 |
| | | Reimbursement of Trustee | 80 |
| Sec. | 903. | Limitation on obligations and responsibilities of Trustee | 80 |
| Sec. | 904. | Trustee not liable for failure of Authority to act or for deposits in other banks | 81 |
| Sec. | 905. | Compensation and indemnification of Trustee | 81 |
| Sec. | 906. | Monthly statement from Trustee | 82 |

8

vii

|  |  |  | PAGE |
|---|---|---|---|
| SEC. | 907. | Trustee may rely on certificates | 82 |
| SEC. | 908. | Notice of default | 83 |
| SEC. | 909. | Trustee may deal in bonds and take action as bondholder | 83 |
| SEC. | 910. | Trustee not responsible for recitals | 83 |
| SEC. | 911. | Trustee protected in relying on certain documents | 83 |
| SEC. | 912. | Resignation of Trustee | 84 |
| SEC. | 913. | Removal of Trustee | 84 |
| SEC. | 914. | Appointment of successor Trustee | 84 |
| SEC. | 915. | Vesting of trusts in successor Trustee | 85 |

## ARTICLE X.

### EXECUTION OF INSTRUMENTS BY BONDHOLDERS AND PROOF OF OWNERSHIP OF BONDS.

| SEC. | 1001. | Execution of instruments by bondholders | 86 |
|---|---|---|---|
|  |  | Proof of execution | 86 |
|  |  | Proof of holding of bonds | 87 |
|  |  | Other proof | 87 |
|  |  | Bondholders' actions bind future holders | 87 |

## ARTICLE XI.

### SUPPLEMENTAL AGREEMENTS.

| SEC. | 1101. | Supplemental agreements by Authority and Trustee | 87 |
|---|---|---|---|
|  |  | Notice of supplemental agreement | 88 |
| SEC. | 1102. | Modification of Agreement with consent of 60% of bond-holders | 88 |
|  |  | Restrictions on modifications | 89 |
|  |  | Notice of supplemental agreement | 89 |
|  |  | Consent of holders of 60% of bonds binds all | 90 |
| SEC. | 1103. | Trustee joining in supplemental agreement | 90 |
|  |  | Supplemental agreements part of this Agreement | 90 |
| SEC. | 1104. | Responsibilities of Trustee under this Article | 91 |
|  |  | Trustee may rely upon opinion of counsel | 91 |

## ARTICLE XII.

### DEFEASANCE.

| SEC. | 1201. | Release of Agreement | 91 |
|---|---|---|---|

USB 9019MOTION 0000009

viii

## ARTICLE XIII.

### MISCELLANEOUS PROVISIONS.

| | | |
|---|---|---|
| SEC. 1301. | Successorship of Authority | 92 |
| SEC. 1302. | Manner of giving notice, etc. | 93 |
| SEC. 1303. | Successorship of Paying Agents | 93 |
| SEC. 1304. | Parties and bondholders alone have rights under Agreement | 94 |
| SEC. 1305. | Effect of partial invalidity | 94 |
| SEC. 1306. | Substitute publication | 94 |
| SEC. 1307. | Other funds not prohibited | 95 |
| SEC. 1308. | Headings, etc. not part of Agreement | 95 |
| SEC. 1309. | Multiple counterparts | 95 |

## EXECUTION

| | |
|---|---|
| Execution by Authority | 96 |
| Execution by Trustee | 96 |

## ACKNOWLEDGMENTS

| | |
|---|---|
| Acknowledgment by Authority | 97 |
| Acknowledgment by Trustee | 97 |

USB_9019MOTION_0000010

THIS TRUST AGREEMENT, dated for convenience of reference as of January 1, 1974, by and between

PUERTO RICO WATER RESOURCES AUTHORITY,

a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (hereinafter sometimes called the "Authority"), and

FIRST NATIONAL CITY BANK,

a national banking association duly incorporated and existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise trust powers and is subject to examination by federal authority (said banking association and any bank or trust company becoming successor trustee under this Agreement being hereinafter sometimes called the "Trustee"), WITNESSETH:

WHEREAS, by Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), the Authority was created a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico; and   *Authority Act.*

WHEREAS, by virtue of the Authority Act the Authority is empowered to conserve, develop and utilize the water and energy resources of Puerto Rico for the purpose of making available to the inhabitants of the Commonwealth, in the widest economic manner, the benefits thereof, for the promotion of the general welfare and to increase commerce and prosperity, and the Authority is granted and may exercise all the rights and powers necessary or convenient to carry out the aforesaid purposes including but not limited to the following, among others:   *Powers of Authority.*

(a) to have complete control and supervision of any undertaking constructed or acquired by it including the power to determine the character of and necessity for all its expenditures and the manner in which they shall be incurred, allowed and paid without regard to the provisions of any laws governing the expen-

USB_9019MOTION 0000011

2

diture of public funds, and such determination shall be final and conclusive upon all officers of the Commonwealth Government, and to prescribe, adopt, amend, and repeal such rules and regulations as may be necessary or proper for the exercise and performance of its powers and duties or to govern the rendering of service or sale or exchange of water or electric energy;

(b) to sue and be sued, implead and be impleaded, complain and defend, in all courts;

(c) to make contracts and to execute all instruments necessary or convenient in the exercise of any of its powers;

(d) to acquire in any lawful manner including, but without limitation, acquisition by purchase, whether by agreement or by the exercise of the power of eminent domain, lease, bequest, devise, gift, and to hold, maintain, use and operate any undertaking or parts thereof;

(e) to acquire in the manner set forth above, produce, impound, develop, manufacture, treat, hold, conserve, use, transmit, distribute, supply, exchange, sell, rent and otherwise dispose of, water, electric energy, equipment, and such other things, supplies and services as the Authority shall deem necessary, proper, incidental, or convenient in connection with its activities; provided, that in disposing at wholesale of electric energy the Authority shall give preference and priority as to supply to public bodies and cooperatives;

(f) to construct or reconstruct any undertaking or any part or parts thereof, and any additions, improvements, and extensions to any undertaking of the Authority by contract or contracts, or under, through, or by means of its own officers, agents, and employees;

(g) to determine, fix, alter, charge and collect reasonable rates, fees, rentals, and other charges for the use of the facilities of the Authority, or for the services, electric energy, or other commodities sold, rendered, or furnished by it, which shall be sufficient for the payment of the expenses of the Authority incurred in the conservation, development, improvement, extension, repair, maintenance, and operation of its facilities and properties,

USB_9019MOTION_0000012

3

for the payment of the principal of and interest on its bonds, and
for fulfilling the terms and provisions of such covenants as may
be made with, or for the benefit of, the purchasers or holders of
any bonds of the Authority;

(h) to borrow money, make and issue bonds of the Authority
for any of its corporate purposes, and to secure payment of its
bonds and of any and all other obligations by pledge of or lien
on all or any of its contracts, revenues, and income only; and

(i) to make and issue bonds for the purpose of funding,
refunding, purchasing, paying, or discharging any of the out-
standing bonds or obligations issued or assumed by it or any bonds
or obligations the principal or interest of which is payable in
whole or in part from its revenues; and

WHEREAS, the Authority owns and operates an integrated system    The System and the
for the generation, transmission and distribution of electricity through-    1947 Indenture.
out the Commonwealth of Puerto Rico, and for the purpose of pro-
viding funds, with other available funds, for refunding certain out-
standing bonds and paying the cost of a capital improvement program
to provide additional generating capacity for the System (as defined
herein) and necessary extensions of the transmission and distribution
lines of the System and other improvements, the Authority has here-
tofore issued its Puerto Rico Water Resources Authority Electric
Revenue Bonds, outstanding on the date hereof in the aggregate prin-
cipal amount of $868,643,000, under and pursuant to the provisions
of a trust indenture, dated as of the first day of January, 1947, by and
between the Authority and The National City Bank of New York (now
First National City Bank), as trustee, as amended by supplemental
indentures dated as of January 1, 1948, July 1, 1956, January 1, 1961,
March 1, 1962, March 1, 1965, April 1, 1967, April 1, 1970 and Septem-
ber 1, 1971 (said indenture as so amended, together with all future
amendments and all indentures supplemental thereto as therein per-
mitted, being herein called the "1947 Indenture"); and

WHEREAS, First National City Bank has resigned as trustee under    Resignation of
the 1947 Indenture and has thereby become discharged from the trusts    Trustee under the
created thereby; and    1947 Indenture.

USB 9019MOTION 0000013

4

Successor trustee under the 1947 Indenture.

WHEREAS, the Authority has appointed The Chase Manhattan Bank (National Association) trustee under the 1947 Indenture, and said banking association, having executed, acknowledged and delivered to its predecessor trustee, and also to the Authority, an instrument in writing accepting such appointment under the 1947 Indenture, is now vested with all rights, immunities, powers and trusts, and subject to all the duties and obligations, of its predecessor trustee under the 1947 Indenture; and

Determination to acquire additional facilities.

WHEREAS, based upon surveys, estimates and recommendations, the Authority has found and determined that it is necessary and advisable to provide funds for additional facilities for the generation, transmission and distribution of electricity to serve the present and prospective demands upon the System, and has determined that it is necessary to increase its capacity to issue revenue bonds secured as hereinafter provided to provide funds for the foregoing purposes; and

Determination to issue revenue bonds.

WHEREAS, the Authority deems it advisable to make provision for the issuance from time to time of revenue bonds on a parity with the bonds issued initially under the provisions of this Agreement for the purpose of paying all or any part of the cost of any Improvements (as defined herein); and

WHEREAS, the Authority has determined that the coupon bonds to be issued hereunder and the interest coupons to be attached thereto, the registered bonds without coupons to be issued hereunder and the certificate of authentication by the Trustee to be endorsed on all such bonds shall be, respectively, substantially in the following forms, with such variations, omissions and insertions as are required or permitted by this Agreement:

Form of coupon bonds.

[FORM OF COUPON BONDS]

No. .................................                                         $.................................

UNITED STATES OF AMERICA

PUERTO RICO WATER RESOURCES AUTHORITY

POWER REVENUE BOND, SERIES ............

Puerto Rico Water Resources Authority, a body corporate and politic constituting a public corporation and governmental instru-

USB_9019MOTION_0000014

5

mentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the bearer on the 1st day of ........................., ........ (or earlier as hereinafter referred to), upon the presentation and surrender hereof, the principal sum of

........................... THOUSAND DOLLARS

and to pay, solely from said special fund, interest thereon from the date hereof at the rate of ........................... per centum (........%) per annum until payment of said principal sum, such interest to the maturity hereof being payable semi-annually on the 1st days of January and July in each year upon the presentation and surrender of the coupons representing such interest as the same respectively become due. Both the principal of and the interest on this bond are payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of this bond and the interest hereon are payable at the principal office of ........................... ..........................., in the ..........................., or at the principal office of ........................... in the Borough of Manhattan, City and State of New York, at the option of the holder, or at such other office or agency of the Authority maintained for that purpose as the Authority shall determine.

This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions are liable for the payment of this bond or the interest hereon, but this bond shall be payable as to both principal and interest solely from the special fund provided therefor as hereinafter set forth.

This bond is one of a duly authorized series of revenue bonds known as "Puerto Rico Water Resources Authority Power Revenue Bonds, Series ..........", dated as of the 1st day of ........................., ........, consisting of bonds maturing in annual installments on the 1st day of ........... in the years ........... to ..........., inclusive (herein called the "serial bonds"), and of bonds maturing on the 1st day of ........................., ........ and the 1st day of ........................., ........ (herein collectively called the

USB_9019MOTION_0000015

6

"term bonds"), and issued for the purpose of paying the cost of acquiring or constructing capital improvements to the electric power properties of the Authority (the electric power properties owned and operated by the Authority as a single integrated system, together with all improvements, renewals and replacements thereof and extensions and additions thereto financed under the provisions of the 1947 Indenture (hereinafter mentioned) and the Agreement (hereinafter mentioned), being herein called the "System").

All of the bonds are issued under and pursuant to a trust agreement (said agreement, together with all agreements supplemental thereto as therein permitted, being herein called the "Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and First National City Bank, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the Corporate Trust Office of the Trustee. Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Agreement.

The Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the bonds of the series of which this is one being herein collectively called the "bonds").

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to resolutions duly adopted by the Authority.

USB_9019MOTION_0000016

7

The Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the conservation, repair, maintenance and operation of the System and for the payment of the principal of and the interest on the 1947 Indenture Bonds and the bonds as the same become due and payable, including reserves for such purposes. The 1947 Indenture provides for the deposit to the credit of a special fund designated "Water Resources Authority Renewal and Replacement Fund" (herein called the "Renewal and Replacement Fund") of the revenues of the System, to the extent required, over and above such expenses of conservation, repair, maintenance and operation and the amounts required to be deposited to the credit of the Puerto Rico Water Resources Authority Electric Revenue Bonds Sinking Fund and the Puerto Rico Water Resources Authority General Reserve Fund under the 1947 Indenture, and the Agreement provides for the deposit to the credit of the Renewal and Replacement Fund of sufficient funds to provide for the payments from said Fund to the special fund created under the Agreement designated "Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund"). The Agreement also provides for the payment into the Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Renewal and Replacement Fund to pay the principal of and the interest on all bonds issued under the Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of and the interest on the bonds.

The Authority has heretofore issued under the provisions of the trust indenture, dated as of the first day of January, 1947 (such indenture as amended being herein called the "1947 Indenture"), Puerto Rico Water Resources Authority Electric Revenue Bonds (herein, with any additional bonds which hereafter may be issued under the provisions of the 1947 Indenture, called the "1947 Indenture Bonds"). Until all of the 1947 Indenture Bonds shall be paid or provision be made for their payment and the release of the 1947 Indenture, the revenues of the System, over and above the expenses of conservation, repair, maintenance and operation thereof, are pledged to the extent required to the payment of the principal of and the interest on the outstanding 1947 Indenture Bonds.

USB_9019MOTION 0000017

8

The bonds are issuable as coupon bonds and as registered bonds without coupons, in such denominations as the Authority may by resolution determine. At the Corporate Trust Office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, registered bonds without coupons may be exchanged for an equal aggregate principal amount of coupon bonds of the same series and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate, and coupon bonds with all coupons appertaining thereto representing all unpaid interest due or to become due thereon may in like manner be exchanged for an equal aggregate principal amount of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate.

[Here insert in the bonds of each Series the terms of redemption applicable to the bonds of such Series.]

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Agreement.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Agreement, and shall be made in the manner and under the terms and conditions provided in the Agreement. On the date designated for redemption, notice having been published as provided in the Agreement, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for pay-

USB_9019MOTION_0000018

9

ment of the redemption price and the accrued interest are held by the Trustee or by the paying agents, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, the coupons for any such interest payable subsequent to the redemption date shall be void, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the holders or registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee or by the paying agents.

The holder of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

As declared by the Authority Act, this bond shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution of the Agreement have happened, exist and have been performed as so required.

USB_9019MOTION_0000019

10

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Puerto Rico Water Resources Authority has caused this bond to [be signed by] [bear the facsimile signature of] the Executive Director of the Authority and to [be signed by] [bear the facsimile signature of] the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, and the attached interest coupons to bear the facsimile signature of said Executive Director, all as of the 1st day of ............................, ................

[Facsimile of
  corporate seal]

                                    PUERTO RICO WATER
                                    RESOURCES AUTHORITY

                              By ........................................................
                                        Executive Director

                                    ........................................................
                                              Secretary

Form of coupons.                    [FORM OF COUPONS]

No. ..........................................                  $ ..........................................

On ........................ 1, 19..........., Puerto Rico Water Resources Authority will pay to bearer (unless the bond mentioned below shall previously have become payable as provided in the Agreement referred to in said bond and provision for payment thereof shall have been duly made) at the principal office of ........................................................, in the ........................, ........................, or at the principal office of ........................, in the Borough of Manhattan, City and State of New York, at the option of the bearer, or at such other office or agency of the Authority maintained for that purpose as the Authority shall determine upon the presentation and surrender hereof, the sum of ........................................................ Dollars

USB_9019MOTION_0000020

11

in any coin or currency of the United States of America which at the time of payment is legal tender for the payment of public and private debts, solely from the special fund referred to in, and for the semi-annual interest then due upon, its Puerto Rico Water Resources Authority Power Revenue Bond, Series ............, dated as of ............................, ..............., No. ......................

> Executive Director, Puerto Rico
> Water Resources Authority

[FORM OF REGISTERED BONDS WITHOUT COUPONS]

Form of registered
bonds without
coupons.

Same as Form of Coupon Bonds except as follows:

1. *Substitute the following for the caption and the first paragraph:*

No. R...................                              $.....................

## UNITED STATES OF AMERICA
## PUERTO RICO WATER RESOURCES AUTHORITY
### POWER REVENUE BOND, SERIES ...........

Puerto Rico Water Resources Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to ................................................, or registered assigns or legal representative, on the 1st day of ........................, .......... (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the Corporate Trust Office of the Trustee (hereinafter mentioned), the principal sum of

.......................................................................... DOLLARS

in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the registered owner hereof by check mailed to the registered owner at his address as it appears on the bond registration books of the Authority, interest on said principal sum from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which

USB 9019MOTION 0000021

12

interest shall have been paid, unless such date of authentication is a
January 1 or July 1, in which case, from such date, semi-annually on
January 1 and July 1 in each year in like coin or currency, at the rate
of            per centum (     %) per annum until payment of said
principal sum.

2. *Substitute the following for the paragraph concerning the notice of
redemption and the effect thereof:*

Any such redemption, either in whole or in part, shall be made upon
at least thirty (30) days' prior notice by publication and otherwise as
provided in the Agreement, and shall be made in the manner and under
the terms and conditions provided in the Agreement. On the date desig-
nated for redemption, notice having been published as provided in the
Agreement, the bonds or portions of registered bonds without coupons
so called for redemption shall become and be due and payable at the
redemption price provided for redemption of such bonds or such por-
tions thereof on such date, and, if moneys for payment of the redemp-
tion price and the accrued interest are held by the Trustee, as provided
in the Agreement, interest on such bonds or such portions thereof so
called for redemption shall cease to accrue, such bonds or such portions
thereof so called for redemption shall cease to be entitled to any benefit
or security under the Agreement, and the holders or registered owners
thereof shall have no rights in respect of such bonds or such portions
thereof so called for redemption except to receive payment of the
redemption price thereof and the accrued interest so held by the Trus-
tee. If a portion of this bond shall be called for redemption, a new bond
or bonds in principal amount equal to the unredeemed portion hereof
will be issued to the registered owner upon the surrender hereof.

3. *Substitute the following for the paragraph concerning negotiability:*

The transfer of this bond is registrable by the registered owner
hereof in person or by his attorney or legal representative at the prin-
cipal office of the Trustee but only in the manner and subject to the
limitations and conditions provided in the Agreement and upon sur-
render and cancellation of this bond. Upon any such registration of
transfer the Authority shall execute and the Trustee shall authenticate
and deliver in exchange for this bond a new registered bond or bonds
without coupons, registered in the name of the transferee, of authorized
denominations, or, at the option of the transferee, coupon bonds with

USB_9019MOTION_0000022

13

coupons attached representing all unpaid interest due or to become due thereon, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

4. *Substitute the following for the witnessing clause:*

IN WITNESS WHEREOF, Puerto Rico Water Resources Authority has caused this bond to [be signed by] [bear the facsimile signature of] the Executive Director of the Authority and to [be signed by] [bear the facsimile signature of] the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, all as of the 1st day of .................................., .............

5. *Omit the Form of Coupons.*

[TO BE ENDORSED ON ALL BONDS]

*Form of Certificate of Authentication.*

CERTIFICATE OF AUTHENTICATION

This is one of the bonds of the series designated therein and issued under the provisions of the within mentioned Agreement.

First National City Bank, Trustee

By ........................................................

Authorized Officer

[TO BE ENDORSED ON ALL REGISTERED BONDS FOLLOWING THE CERTIFICATE OF AUTHENTICATION]

*Form of Certificate of Authentication for registered bonds.*

Date of authentication: ................................

and

WHEREAS, by virtue of the Authority Act, the Authority is authorized to issue revenue bonds as hereinafter provided, to enter into this Agreement and to do or cause to be done all the acts and things herein provided or required to be done as hereinafter covenanted; and

*Power to enter Agreement.*

USB 9019MOTION 0000023

14

**Authorization of Agreement.**

WHEREAS, the execution and delivery of this Agreement have been duly authorized by resolution of the Authority; and

**Recital of compliance with law.**

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act, by the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Agreement have happened, exist and have been performed as so required, in order to make this Agreement a legal, valid and binding trust agreement for the security of the bonds in accordance with its terms; and

**Recital of acceptance by Trustee.**

WHEREAS, the Trustee has accepted the trusts created by this Agreement and in evidence thereof has joined in the execution hereof;

**Pledge of revenues of the System.**

NOW, THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the premises, of the acceptance by the Trustee of the trusts hereby created, and of the purchase and acceptance of the bonds by the holders thereof, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Agreement, the receipt of which is hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which the bonds are to be issued, executed, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding hereunder and the interest and the redemption premium, if any, thereon according to their tenor, purport and effect, and in order to secure the performance and observance of all the covenants, agreements and conditions therein and herein contained, the Authority has executed and delivered this Agreement and has pledged and does hereby pledge to the Trustee the revenues of the System, subject to the pledge of such revenues to the payment of the principal of and the interest on the 1947 Indenture Bonds (hereinafter mentioned), and other moneys to the extent provided in this Agreement as security for the payment of the bonds and the interest and the redemption premium, if any, thereon and as security for the satisfaction of any other obligation assumed by it in

**Agreement of parties.**

connection with such bonds, and it is mutually agreed and covenanted by and between the parties hereto, for the equal and proportionate benefit and security of all and singular the present and future holders

USB_9019MOTION_0000024

15

of the bonds issued and to be issued under this Agreement, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond, by reason of priority in the issue, sale or negotiation thereof or otherwise, as follows:

## ARTICLE I.

### DEFINITIONS.

SECTION 101. In addition to words and terms elsewhere defined in this Agreement, the following words and terms shall have the following meanings, unless some other meaning is plainly intended:

The word "Agreement" shall mean this Agreement, dated as of January 1, 1974, together with all agreements supplemental hereto as herein permitted.

*Agreement.*

As applied to the term bonds of any Series, the term "Amortization Requirement" for any fiscal year shall mean the principal amount fixed or computed for such fiscal year as hereinafter set forth for the retirement of such term bonds by purchase or redemption.

*Amortization Requirement.*

The Amortization Requirements for the term bonds of each Series shall be initially the respective principal amounts for each fiscal year as fixed in a resolution of the Board adopted prior to the issuance of the bonds of such Series; provided, however, that if any additional term bonds of such Series shall be issued under the provisions of the first paragraph of Section 210 of this Agreement, the respective Amortization Requirements for the term bonds of such Series shall be increased in proportion as nearly as may be practicable to the increase in the total principal amount of the term bonds of such Series. The aggregate amount of such Amortization Requirements for the term bonds of each Series shall be equal to the aggregate principal amount of the term bonds of such Series. The Amortization Requirements for the term bonds of each Series shall begin in the fiscal year determined by the Board.

If at the close of any fiscal year the total principal amount of term bonds of any Series retired by purchase or redemption, or prior to the close of such fiscal year called for redemption under the provisions of Section 511 of this Agreement, shall be in excess of the amount of the Amortization Requirements for the term bonds of such Series

USB 9019MOTION 0000025

Section 101

16

for such fiscal year, then the amount of the Amortization Requirements for the term bonds of such Series shall be reduced for such subsequent fiscal years in such amounts aggregating the amount of such excess as shall be determined by the Executive Director in an order filed with the Trustee on or before the 10th day of July following the close of such fiscal year.

If at the close of any fiscal year the total principal amount of term bonds of any Series retired by purchase or redemption, or called for redemption under the provisions of Section 511 of this Agreement, prior to the close of such fiscal year shall be less than the amount of the Amortization Requirements for the term bonds of such Series for such fiscal year, then the amount of the Amortization Requirements for the term bonds of such Series for the next succeeding fiscal year shall be increased by the amount of the excess of such deficiency over the amount then held to the credit of the Redemption Account.

It shall be the duty of the Trustee, on or before the 15th day of July in each fiscal year, to compute the Amortization Requirements for the then current fiscal year for the term bonds of each Series then outstanding. The Amortization Requirement for the then current fiscal year shall continue to be applicable during the balance of such current fiscal year and no adjustment shall be made therein by reason of term bonds purchased or redeemed or called for redemption during such current fiscal year.

Annual Budget.     The term "Annual Budget" shall mean the Authority's budget of Current Expenses and Capital Expenditures for a fiscal year adopted pursuant to the provisions of Section 504 of this Agreement.

Authority.     The word "Authority" shall mean the Puerto Rico Water Resources Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, and the successor or successors of the Authority.

Authority Act.     The term "Authority Act" shall mean the Puerto Rico Water Resources Authority Act, being Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended and reenacted by Act No. 19, approved April 8, 1942, as amended, and Act No. 111, approved May 6, 1941, as amended by Act No. 153, approved May 14, 1943, as amended.

Board.     The word "Board" shall mean the governing board of the Authority as constituted from time to time and defined by the Authority Act,

USB_9019MOTION_0000026

Section 101

17

or if said Board shall be abolished, then the board, body or officer succeeding to the principal functions thereof or to whom the powers of the Authority shall be given by law.

The term "Bond Service Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement. *Bond Service Account.*

The term "bondholder of record" shall mean any bondholder who shall have filed with the Secretary, within the period of two years immediately prior to any time when such term has application, a written request setting forth his name and address and the particular reports, notices and other documents which he desires to receive and which are required to be mailed under the requirements of this Agreement. *Bondholders of record.*

The word "bonds" shall mean the bonds issued under this Agreement. *Bonds.*

The term "Capital Expenditures" shall mean all expenditures made on account of the cost of the Capital Improvement Program, as defined in the 1947 Indenture, and the cost of Improvements under this Agreement and the 1947 Indenture and those expenditures made for the purposes for which funds are provided pursuant to the provisions of Section 512 of the 1947 Indenture. *Capital Expenditures.*

The term "Construction Fund" shall mean the Puerto Rico Water Resources Authority Power System Construction Fund, a special fund created and designated by the provisions of Section 401 of this Agreement. *Construction Fund.*

The term "Consulting Engineers" shall mean the engineer or engineering firm or corporation at the time employed by the Authority under the provisions of Section 706 of this Agreement to perform and carry out the duties imposed on the Consulting Engineers by this Agreement. *Consulting Engineers.*

The word "Controller" shall mean the Controller or any Assistant Controller of the Authority, or if there is no controller or assistant controller, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the chief financial officer of the Authority. *Controller.*

27

USB 9019MOTION 0000027

Section 101

18

**Cost.**

The word "cost", as applied to any Improvements, shall embrace the cost of the acquisition and construction and all obligations and expenses and all items of cost which are set forth in Section 403 of this Agreement.

**Current Expenses.**

The term "Current Expenses" shall mean the Authority's reasonable and necessary current expenses of maintaining, repairing and operating the System and shall include, without limiting the generality of the foregoing, all administrative expenses, insurance premiums, expenses of preliminary surveys not chargeable to Capital Expenditures, engineering expenses relating to operation and maintenance, fees and expenses of the Trustee, the 1947 Trustee, the Paying Agents and of the paying agents under the 1947 Indenture, legal expenses, any payment to pension or retirement funds, and all other expenses required to be paid by the Authority under the provisions of the 1947 Indenture, this Agreement or by law, or permitted by standard practices for public utility systems, similar to the properties and business of the Authority and applicable in the circumstances but shall not include any deposits to the credit of the Sinking Fund, the Reserve Maintenance Fund or the 1947 Sinking Fund or deposits under the provisions of Sections 511, 512 and 513 of the 1947 Indenture.

**Daily newspaper.**

The term "daily newspaper" shall mean a newspaper regularly published in the English language on at least five (5) business days in each calendar week and, in the case of a newspaper published in the Commonwealth of Puerto Rico, may include a newspaper regularly published in the Spanish language on at least five (5) business days in each calendar week.

**Depositary.**

The word "Depositary" shall mean one or more banks or trust companies duly authorized under the laws of the United States of America, or any state thereof or the Commonwealth of Puerto Rico to engage in the banking business therein and designated by the Authority as a depositary of moneys under the provisions of this Agreement, each such depositary to be a member of the Federal Deposit Insurance Corporation and shall also mean the Trustee and Government Development Bank for Puerto Rico.

**Executive Director.**

The term "Executive Director" shall mean the Executive Director or the Vice Executive Director of the Authority for the time being, or if there is no Executive Director or Vice Executive Director, then any

USB_9019MOTION_0000028

Section 101

19

person designated by the Board or by the by-laws of the Authority to perform the functions of the Executive Director.

The term "fiscal year" shall mean the period commencing on the 1st day of July of any year and ending on the last day of June of the following year.

*Fiscal year.*

The term "General Fund" shall mean the Puerto Rico Water Resources Authority General Fund, a special fund created and designated by the provisions of Section 503 of this Agreement.

*General Fund.*

The term "General Reserve Fund" shall mean the Puerto Rico Water Resources Authority General Reserve Fund, a special fund created and designated by the provisions of Section 511 of the 1947 Indenture.

*General Reserve Fund.*

The term "Government Obligations" shall mean (i) direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States Government, (ii) bonds, debentures or notes issued by any of the following Federal agencies: Banks for Cooperatives, Federal Intermediate Credit Banks, Federal Home Loan Banks, Export-Import Bank of the United States, Government National Mortgage Association, Federal Land Banks, or the Federal National Mortgage Association (including participation certificates issued by such Association) and (iii) all other obligations issued or unconditionally guaranteed as to principal and interest by an agency or person controlled or supervised by and acting as an instrumentality of the United States Government pursuant to authority granted by the Congress.

*Government Obligations.*

The word "Improvements" shall mean such improvements, renewals and replacements of the System or any part thereof and such extensions and additions thereto as may be necessary or desirable, in the judgment of the Board, to keep the same in proper condition for the safe, efficient and economic operation thereof and to integrate into the System any unit or part thereof, and shall include such electric-power projects as may be authorized to be acquired or constructed by the Authority under the provisions of the Authority Act and such improvements, renewals and replacements of such properties and the System and such extensions and additions thereto as may be necessary or desirable for continuous and efficient service to the public, which shall be financed in whole or in substantial part from the proceeds of bonds

*Improvements.*

USB_9019MOTION 0000029

Section 101

20

issued under the provisions of the 1947 Indenture or this Agreement or from moneys deposited to the credit of the 1947 Construction Fund, the Construction Fund or the Renewal and Replacement Fund.

Investment Obligations.

The term "Investment Obligations" shall mean (i) Government Obligations, (ii) obligations of any state or territory of the United States or political subdivision thereof (other than obligations rated lower than the three highest grades by a nationally recognized rating agency) and (iii) repurchase agreements with commercial banks fully secured by Government Obligations.

Net Revenues.

The term "Net Revenues" for any particular period shall mean the amount of the excess of the Revenues for such period over the Current Expenses for such period.

1947 Construction Fund.

The term "1947 Construction Fund" shall mean the Puerto Rico Water Resources Authority Construction Fund, a special fund created and designated by the provisions of Section 401 of the 1947 Indenture.

1947 Indenture.

The term "1947 Indenture" shall mean the Trust Indenture, dated as of January 1, 1947, by and between the Authority and The National City Bank of New York (now First National City Bank), as trustee, as amended by Supplemental Indentures, dated January 1, 1948, July 1, 1956, January 1, 1961, March 1, 1962, March 1, 1965, April 1, 1967, April 1, 1970 and September 1, 1971, together with all future amendments and all indentures supplemental thereto as therein permitted.

1947 Indenture Bonds.

The term "1947 Indenture Bonds" shall mean the bonds issued under the 1947 Indenture.

1947 Revenue Fund.

The term "1947 Revenue Fund" shall mean the Water Resources Authority Electric Revenue Fund, a special fund created and designated by the provisions of Section 506 of the 1947 Indenture.

1947 Sinking Fund.

The term "1947 Sinking Fund" shall mean the Puerto Rico Water Resources Authority Electric Revenue Bonds Sinking Fund, a special fund created and designated by the provisions of Section 507 of the 1947 Indenture.

1947 Trustee.

The term "1947 Trustee" shall mean the trustee under the 1947 Indenture for the time being, whether original or successor.

USB_9019MOTION_0000030

Section 101

21

The term ''Opinion of Counsel'' shall mean a written opinion of **Opinion of Counsel.** counsel who may (except as otherwise expressly provided in this Agreement) be counsel for the Authority. Every opinion of counsel required to be filed with the Trustee in connection with an application to the Trustee to authenticate bonds under this Agreement shall contain the following statements: (i) that the Authority has the legal right and power to enter into this Agreement and has duly authorized and validly executed and delivered this Agreement and this Agreement is legally valid and binding upon the Authority and enforceable in accordance with its terms, (ii) that this Agreement creates a legally valid and effective pledge of the Net Revenues, subject only to the lien of the 1947 Indenture, and of the moneys, securities and funds held or set aside under this Agreement as security for the bonds, subject to the application thereof to the purposes and on the conditions permitted by this Agreement and specifying the place or places, if any, where filing or recording of any document is necessary in order to make such pledge effective or to continue it in effect, (iii) that the Authority has paid all municipal or governmental charges lawfully levied or assessed upon the System or any part thereof or upon any Revenues, (iv) that the issuance of the bonds then directed to be authenticated and delivered will not violate any provision of law or of the by-laws of the Authority, or result in the breach of, or constitute a default under, any agreement, indenture or other instrument to which the Authority is a party or by which it may be bound, (v) that no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the legal issue of said bonds (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the legal issue of said bonds, it shall specify and attach any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced), and (vi) that the bonds then directed to be authenticated and delivered are legally valid and binding direct obligations of the Authority, enforceable in accordance with their terms and the terms of this Agreement and have been duly and validly authorized and issued in accordance with law and this Agreement.

The term ''Paying Agents'' shall mean with respect to the bonds **Paying Agents.** of each Series the one or more banks or trust companies designated in a resolution of the Board the office or agency of the Authority where the coupon bonds and coupons may be presented for payment.

USB 9019MOTION 0000031

Section 101

22

Principal and
Interest
Requirements.

The term "Principal and Interest Requirements" for any fiscal year, as applied to the bonds of any Series issued under this Agreement or the 1947 Indenture, shall mean the sum of:

(a) the amount required to pay the interest on all outstanding bonds of such Series which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year,

(b) the amount required to pay the principal of all outstanding serial bonds of such Series which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year, and

(c) the Amortization Requirement for the term bonds of such Series for such fiscal year.

The Principal and Interest Requirements for the bonds of any Series issued under this Agreement shall be determined, as required from time to time, by the Trustee. In computing the Principal and Interest Requirements for any fiscal year for the bonds of any Series, the Trustee shall assume that an amount of the term bonds of such Series equal to the Amortization Requirement for the term bonds of such Series for such fiscal year will be retired by purchase or redemption on July 1 in the following fiscal year.

Redemption Account.

The term "Redemption Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

Renewal and
Replacement Fund.

The term "Renewal and Replacement Fund" shall mean the Water Resources Authority Renewal and Replacement Fund, a special fund created and designated by the provisions of Section 512 of the 1947 Indenture.

Reserve Account.

The term "Reserve Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

Reserve Maintenance
Fund.

The term "Reserve Maintenance Fund" shall mean the Puerto Rico Water Resources Authority Reserve Maintenance Fund, a special fund created and designated by the provisions of Section 507 of this Agreement.

Revenue Fund.

The term "Revenue Fund" shall mean the Puerto Rico Water Resources Authority Power Revenue Fund, a special fund created and designated by the provisions of Section 506 of this Agreement.

USB_9019MOTION_0000032

23

The word "Revenues" shall mean all moneys received by the Authority in connection with or as a result of its ownership or operation of the System, including the income derived by the Authority from the sale of electricity generated or distributed by the System, any proceeds of use and occupancy insurance on the System or any part thereof and income from investments made under the provisions of the 1947 Indenture and this Agreement, except income from the investment of moneys in the 1947 Construction Fund, the Construction Fund and the Reserve Maintenance Fund which shall be deemed to be a part of said Funds, respectively.

*Revenues.*

The word "Secretary" shall mean the Secretary or any Assistant Secretary of the Authority, or if there is no secretary or assistant secretary, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Secretary.

*Secretary.*

The term "serial bonds" shall mean the bonds of a Series which shall be stated to mature in annual or semi-annual installments, and the term "term bonds" shall mean the bonds of a Series maturing on July 1 and designated term bonds in a resolution of the Board adopted prior to the issuance of such bonds.

*serial bonds and term bonds.*

The word "Series" shall mean either (i) the bonds issued and delivered at any one time under the provisions of Sections 208 or 209 of this Agreement or (ii) the refunding bonds issued at any one time under the provisions of the second paragraph of Section 210 of this Agreement. Bonds issued under the first paragraph of Section 210 of this Agreement to refund serial bonds of any Series shall be deemed to constitute a part of the bonds of such Series.

*Series.*

The term "Sinking Fund" shall mean the Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund, a special fund created and designated by the provisions of Section 507 of this Agreement.

*Sinking Fund.*

The word "System" shall mean all the properties presently owned and operated by the Authority as a single integrated system, together with all works and properties which may be hereafter acquired or constructed by the Authority in connection with the production, distribution or sale of electric energy and the acquisition or construction of which shall be financed in whole or in part from the proceeds of bonds issued under the provisions of the 1947 Indenture or this

*System.*

USB 9019MOTION 0000033

Section 101

24

Agreement or from moneys deposited to the credit of the 1947 Construction Fund, the Construction Fund or the Renewal and Replacement Fund.

**Time Deposits.**

The term "Time Deposits" shall mean time deposits, certificates of deposit or similar arrangements with the Trustee, Government Development Bank for Puerto Rico or any bank or trust company which is a member of the Federal Deposit Insurance Corporation having a combined capital and surplus aggregating not less than $100,000,000.

**Treasurer.**

The word "Treasurer" shall mean the Treasurer or any Assistant Treasurer of the Authority, or if there is no treasurer or assistant treasurer, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Treasurer.

**Trustee.**

The word "Trustee" shall mean the Trustee for the time being, whether original or successor.

**Miscellaneous.**

SECTION 102. Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Unless the context shall otherwise indicate, the words "bond", "coupon", "owner", "holder" and "person" shall include the plural as well as the singular number, the word "person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof, and the word "holder" or "bondholder" when used herein with respect to bonds issued hereunder shall mean the holder or registered owner, as the case may be, of bonds at the time issued and outstanding hereunder.

## ARTICLE II.

### FORM, EXECUTION AND REGISTRATION OF BONDS AND CONDITIONS FOR AUTHENTICATION AND DELIVERY OF BONDS.

**Limitation on issuance of bonds.**

SECTION 201. No bonds may be issued under the provisions of this Agreement except in accordance with the provisions of this Article.

**Form of bonds.**

SECTION 202. The definitive bonds are issuable as coupon bonds and as registered bonds without coupons. The definitive bonds issued under the provisions of this Article shall be substantially in the forms hereinabove set forth, with such appropriate variations, omis-

*see supplemented under 1800 1740/57 dtd 9/1/83*

34

Section 203

25

sions and insertions as are permitted or required by this Agreement and with such additional changes as may be necessary or appropriate to conform to the provisions of the resolution or resolutions providing for the issuance of such bonds. All such bonds may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or of any securities exchange on which the bonds may be listed or traded or any usage or requirement of law with respect thereto or as may be authorized by the Authority and approved by the Trustee.

SECTION 203. The bonds shall be dated, shall bear interest until their payment, such interest to the maturity thereof being payable semi-annually on the 1st days of January and July in each year, and shall be stated to mature (subject to the right of prior redemption), all as hereinafter provided. <span style="float:right">Details of bonds.</span>

Each coupon bond shall bear interest from its date. Each registered bond without coupons shall bear interest from the interest payment date next preceding the date on which it is authenticated, unless authenticated on an interest payment date, in which case it shall bear interest from such interest payment date, or, unless authenticated prior to the first interest payment date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any registered bond without coupons interest is in default, such bond shall bear interest from the date to which interest shall have been paid.

The bonds shall be signed by, or bear the facsimile signature of, the Executive Director and shall be signed by, or bear the facsimile signature of, the Secretary, and a facsimile of the corporate seal of the Authority shall be imprinted on the bonds. <span style="float:right">Execution of<br>bonds and coupons.</span>

The coupons attached to the coupon bonds shall be substantially in the form hereinabove set forth and shall bear the facsimile signature of the Executive Director.

In case any officer whose signature or a facsimile of whose signature shall appear on any bonds or coupons shall cease to be such officer before the delivery of such bonds, such signature or such facsimile shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery; and also any bond may bear the facsimile signature of or may be signed by

USB  9019MOTION  0000035

Section 203

26

such persons as at the actual time of the execution of such bond shall be the proper officers to sign such bond although at the date of such bond such persons may not have been such officers.

**Payment of principal and interest.**

Both the principal of and the interest on the bonds shall be payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of coupon bonds of each Series and the interest on all coupon bonds of such Series shall be payable at the principal offices of the Paying Agents designated for the bonds of such Series. The principal of all registered bonds without coupons shall be payable only to the registered owner or his legal representative at the principal office of the Trustee, and payment of the interest on each registered bond without coupons shall be made by the Trustee on each interest payment date to the person appearing on the registration books of the Authority hereinafter provided for as the registered owner thereof, by check mailed to such registered owner at his address as it appears on such registration books. Except as provided in Section 211 of this Agreement, payment of the principal of all bonds shall be made upon the presentation and surrender of such bonds as the same shall become due and payable. Payment of the interest on the coupon bonds shall be made upon the presentation and surrender of the coupons, if any, representing such interest as the same respectively become due and payable.

**Authentication of bonds.**

SECTION 204. Only such of the bonds as shall have endorsed thereon a certificate of authentication substantially in the form hereinabove set forth, duly executed by the Trustee, shall be entitled to any benefit or security under this Agreement. No bond and no coupon appertaining to any coupon bond shall be valid or obligatory for any purpose unless and until such certificate of authentication shall have been duly executed by the Trustee, and such certificate of the Trustee upon any such bond shall be conclusive evidence that such bond has been duly authenticated and delivered under this Agreement. The Trustee's certificate of authentication on any bond shall be deemed to have been duly executed if signed by an authorized officer of the Trustee, but it shall not be necessary that the same officer sign the certificate of authentication on all of the bonds that may be issued hereunder at any one time. Before authenticating or delivering any coupon bonds the Trustee shall detach and cancel all matured coupons, if any, appertaining thereto, except any coupons which represent unpaid interest.

USB_9019MOTION_0000036

Section 206

27

SECTION 205. Coupon bonds, upon surrender thereof at the principal office of the Trustee with all unmatured coupons and all matured coupons in default, if any, appertaining thereto, may, at the option of the holder thereof, be exchanged for an equal aggregate principal amount of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, bearing interest at the same rate, and, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the coupon bonds surrendered for exchange.

*Exchange of coupon bonds for registered bonds.*

Registered bonds without coupons, upon surrender thereof at the principal office of the Trustee, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Trustee, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of coupon bonds of the same Series and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, and bearing interest at the same rate, and in either case, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the registered bonds without coupons surrendered for exchange.

*Exchange of registered bonds for coupon bonds or registered bonds.*
*see supplemental agreement (Doc 7740/57) dtd 8/1/83*

The Authority shall make provision for the exchange of bonds at the principal office of the Trustee.

SECTION 206. Title to any coupon bond and to any interest coupon shall pass by delivery in the same manner as a negotiable instrument payable to bearer. The Trustee as Bond Registrar shall keep books for the registration of and for the registration of transfers of bonds as provided in this Agreement. The transfer of any registered bond without coupons may be registered only upon the books kept for the registration of and registration of transfers of bonds upon surrender thereof to the Bond Registrar together with an assignment

*Negotiability of coupon bonds.*
*see supplemental agreement (Doc 7740/57) dtd 8/1/83*
*Transfer of registered bonds.*

USB 9019MOTION 0000037

Section 206

28

duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for such bond a new registered bond or bonds without coupons registered in the name of the transferee, of any denomination or denominations authorized by this Agreement, or, at the option of the transferee, coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in an aggregate principal amount equal to the principal amount of such registered bond without coupons, of the same Series and maturity and bearing interest at the same rate.

**Cancellation of bonds and coupons surrendered for exchange or transfer.**

In all cases in which bonds shall be exchanged or the transfer of registered bonds without coupons shall be registered hereunder, the Authority shall execute and the Trustee shall authenticate and deliver at the earliest practicable time bonds in accordance with the provisions of this Agreement. All registered bonds without coupons surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Trustee. All coupon bonds and unmatured coupons surrendered in any such exchange or registration of transfer shall be retained by the Trustee in its custody. The Authority or the Trustee may make a charge for every such exchange or registration of transfer of bonds sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer, but no other charge shall be made to any bondholder for the privilege of exchanging or registering the transfer of bonds under the provisions of this Agreement. Neither the Authority nor the Trustee shall be required to make any such exchange or registration of transfer of bonds during the fifteen (15) days immediately preceding an interest payment date on the bonds or, in the case of any proposed redemption of bonds, immediately preceding the date of first publication of notice of such redemption, or after such bond or any portion thereof has been selected for redemption.

**Ownership of registered bonds.**

SECTION 207. As to any registered bond without coupons, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of and the interest on any such bond shall be made only to the registered owner thereof or

USB_9019MOTION_0000038

Section 205

29

his legal representative. All such payments shall be valid and effectual to satisfy and discharge the liability upon such bond including the interest thereon to the extent of the sum or sums so paid. The Authority, the Trustee, the Bond Registrar and the Paying Agents may deem and treat the bearer of any coupon bond and the bearer of any coupon appertaining to any coupon bond as the absolute owner of such bond or coupon, as the case may be, whether such bond or coupon shall be overdue or not, for the purpose of receiving payment thereof and for all other purposes whatsoever, and neither the Authority, the Trustee, the Bond Registrar nor the Paying Agents shall be affected by any notice to the contrary. *Ownership of coupon bonds.*

Any person in possession of any coupon bond or of any coupon appertaining to any coupon bond is hereby authorized to represent himself as the absolute owner of such bond or coupon, as the case may be, and is hereby granted power to transfer absolute title thereto by delivery thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his transferor or any person in the chain of title and before the maturity of such bond. Any registered owner of any registered bond without coupons is hereby granted power to transfer absolute title thereto by assignment thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his assignor or any person in the chain of title and before the maturity of such bond. Every prior holder or owner of any bond or of any coupon appertaining to any coupon bond shall be deemed to have waived and renounced all of his equities or rights therein in favor of every such bona fide purchaser, and every such bona fide purchaser shall acquire absolute title thereto and to all rights represented thereby. *Transfer of title of bonds.*

SECTION 208. Revenue bonds of the Authority may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time for the purpose of paying all or any part of the cost of any Improvements, including the repayment of moneys advanced for paying such cost and, if deemed necessary by the Board, the payment of the interest to accrue on such moneys advanced to the date of such payment and for providing moneys for deposit to the credit of the Reserve Account. *Issuance of revenue bonds to pay cost of Improvements. see supplemental agmt (Doc 7949/57) dt 8/1/63*

USB 9019MOTION 0000039

Section 208

30

Before any bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof, describing in brief and general terms the Improvements which are to be acquired or constructed or which were acquired or constructed from any moneys to be repaid from the proceeds of such bonds, and specifying the amount, if any, of the proceeds of such bonds to be deposited to the credit of the Reserve Account. The bonds of each Series issued under the provisions of this Section shall be designated "Puerto Rico Water Resources Authority Power Revenue Bonds, Series ............" (inserting a year or a letter to identify the particular Series), shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and the term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such bonds shall be on a parity with and shall be entitled to the same benefits and security under this Agreement as all other bonds issued under this Agreement.

**Conditions of authentication and delivery.** Such bonds shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution of the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth:

USB_9019MOTION_0000040

Section 208

31.

(i) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(ii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement,

(iii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement and the bonds then to be issued hereunder,

(iv) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years,

(v) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (iv) of this clause (c),

(vi) the percentage derived by dividing the amount in item (i) of this clause (c) by the amount shown in item (ii) of said clause, and

(vii) the percentage derived by dividing the amount in item (v) of this clause (c) by the amount shown in item (iii) of said clause;

(d) if any of the 1947 Indenture Bonds are outstanding, a certificate, signed by the Executive Director and approved by the Consulting Engineers, to the effect that the sum determined by the Authority, with the approval of the Consulting Engineers, as the proper amount to be transferred each month from the 1947 Revenue Fund to the credit of the Renewal and Replacement Fund is not less than one-twelfth (1/12) of the maximum Principal and Interest Requirements for any fiscal year

USB_9019MOTION  0000041

Section 208

32

thereafter to and including the fiscal year in which the last maturity of any outstanding 1947 Indenture Bonds occurs on account of all bonds then outstanding under this Agreement and the bonds then to be issued hereunder; and

(e) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolutions as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless each of the percentages shown in items (vi) and (vii) of the certificate mentioned in clause (c) of this Section is not less than one hundred twenty per centum (120%).

Disposition of
bond proceeds.

The proceeds (excluding accrued interest but including any premium) of such bonds shall be deposited as is required by the resolution or resolutions authorizing the issuance of such bonds; provided, however, that any balance of such proceeds remaining after providing for (i) any repayment of moneys advanced to the Authority, including any payment of interest accrued on such moneys advanced to the date of such payment, (ii) any deposit to the credit of the Reserve Account, and (iii) any deposit to the Bond Service Account on account of interest on such bonds in accordance with clause (f) of Section 403 of this Agreement and (iv) any payment of expenses incident to the financing shall be paid to the Authority for deposit to the credit of the Construction Fund.

All moneys received as accrued interest on bonds issued under the provisions of this Section shall be deposited with the Trustee to the credit of the Bond Service Account.

Issuance of revenue
bonds for any proper
corporate purpose.

*see doc 7740/57
for supplemental
of.*

SECTION 209. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, in addition to any other bonds which may be issued under the provisions of this Article, revenue bonds of the Authority may be issued under and secured by this Agreement,

USB_9019MOTION_0000042

Section 209

33

subject to the conditions hereinafter provided in this Section, from time to time for any proper corporate purpose of the Authority (other than for the purpose of refunding outstanding bonds of the Authority or for the purpose of providing funds to pay any part of the cost of Improvements or for repaying advances for such purpose).

Before any bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof and setting forth the purpose for which such bonds are to be issued. The bonds of each Series issued under the provisions of this Section shall be designated "Puerto Rico Water Resources Authority Power Revenue Bonds, Series ........" (inserting a year or a letter to identify the particular Series), shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents and the term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such bonds shall be on a parity with and shall be entitled to the same benefits and security under this Agreement as all other bonds issued under this Agreement.

Such bonds shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

> Conditions of authentication and delivery.

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution of the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned

USB_9019MOTION_0000043

Section 209

34

therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth:

(i) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(ii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under this Agreement,

(iii) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under this Agreement and the bonds then to be issued hereunder,

(iv) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years,

(v) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (iv) of this clause (c),

(vi) the percentage derived by dividing the amount in item (i) of this clause (c) by the amount shown in item (ii) of said clause, and

(vii) the percentage derived by dividing the amount in item (v) of this clause (c) by the amount shown in item (iii) of said clause; and

(d) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

USB_9019MOTION_0000044

Section 210

35

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolutions as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless each of the percentages shown in items (vi) and (vii) of the certificate mentioned in clause (c) of this Section is not less than one hundred twenty per centum (120%).

The proceeds (excluding accrued interest but including any premium) of such bonds shall be deposited as is required by the resolution or resolutions authorizing the issuance of such bonds.

Disposition of bond proceeds.

All moneys received as accrued interest on bonds issued under the provisions of this Section shall be deposited with the Trustee to the credit of the Bond Service Account.

SECTION 210.  If at any time the Board shall determine that the moneys in the Sinking Fund available for such purpose will not be sufficient for paying at their maturity the serial bonds of any Series which will mature within one year thereafter, revenue refunding bonds of the Authority may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, for the purpose of providing funds for refunding such bonds and, if deemed necessary by the Board, for paying the interest to accrue thereon to their maturity and any expenses in connection with such refunding. Before any bonds shall be issued under the provisions of this paragraph the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof, and describing the bonds to be refunded. Such revenue refunding bonds shall be deemed to constitute a part of the term bonds, if any, of such Series and shall mature at the same time and shall be subject to redemption at the same times and prices as such term bonds or, in case all the outstanding bonds of such Series shall be serial bonds, such revenue refunding bonds shall mature on the 1st day of July in a year not earlier than one

Issuance of revenue refunding bonds to refund all 1947 Indenture Bonds and bonds issued under this Agreement.
*see supplemental agmt. (Doc 7740/571 dtd 6/1/83*

USB_9019MOTION_0000045

Section 210

36

year after the last maturing installment of the bonds of such Series and not later than fifty (50) years from their date, shall be deemed to be term bonds of such Series and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), all as may be provided by the resolution or resolutions authorizing the issuance of such bonds. Such revenue refunding bonds shall be designated, shall be dated and shall bear interest at a rate not exceeding the maximum rate then permitted by law, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds.

Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time, for the purpose of providing funds, with any other available funds, for redeeming prior to their maturity or maturities all of the outstanding 1947 Indenture Bonds, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series, including the payment of any redemption premium thereon, and, if deemed necessary by the Board, for paying the interest to accrue thereon to the date fixed for their redemption and any expenses in connection with such refunding. Before any bonds shall be issued under the provisions of this paragraph, the Board shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof and describing the bonds to be redeemed. Such revenue refunding bonds shall be designated, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds in such year or years, not later than fifty (50) years from their date, and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and any term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement.

USB_9019MOTION_0000046

Section 210

37

Revenue refunding bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following: <span>Conditions of authentication and delivery.</span>

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution adopted by the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series at or prior to their maturity or maturities;

(i) a certificate, signed by the Executive Director, setting forth (A) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement, and (B) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds to be outstanding under this Agreement after the issuance of such revenue refunding bonds and the redemption of the bonds to be refunded, and

(ii) such documents as shall be required by the Trustee to show that provision has been made in accordance with the provisions of the 1947 Indenture or this Agreement, as the case may be, for the redemption of all of the bonds to be refunded; and

(d) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolu-

USB_9019MOTION 0000047

**Section 210**

38

tions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolution as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless

(I) the proceeds (excluding accrued interest but including any premium) of such revenue refunding bonds, together with any moneys to be withdrawn from the Sinking Fund by the Trustee, and any other moneys which have been made available to the Trustee, for such purpose as hereinafter provided, or the principal of and the interest on the investment of such proceeds or any such moneys, shall be not less than an amount sufficient to pay the principal of and the redemption premium, if any, on the bonds to be refunded and the interest which will become due and payable on or prior to the date of their payment or redemption, and the financing costs in connection with such refunding, and

(II) in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series prior to their maturity or maturities, either (1) the amount shown in item (B) of the certificate mentioned in subclause (i) of clause (e) of this Section shall be less than the amount shown in item (A) of said certificate or (2) there shall be filed with the Trustee a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth

(A) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(B) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the

USB_9019MOTION_0000048

Section 210

39

rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years, and

(C) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (B) above,

and stating that each of the amounts shown in items (A) and (C) above is not less than one hundred twenty per centum (120%) of each of the amounts shown in items (A) and (B) of the certificate mentioned in subclause (i) of clause (c) of this Section.

The proceeds of such revenue refunding bonds shall, to the extent practicable, be invested and reinvested by the Trustee, with the approval of the Executive Director, in Government Obligations or in Time Deposits, secured in the manner set forth in Section 601 of this Agreement, and the moneys so invested shall be available for use when required. The income derived from such investments shall be added to such proceeds and applied in accordance with the provisions of this Section 210.

*Disposition of bond proceeds.*

Simultaneously with the delivery of such revenue refunding bonds the Trustee shall withdraw from the Bond Service Account and the Redemption Account in the Sinking Fund an amount equal to the sum of the amounts deposited to the credit of such Accounts under the provisions of Section 507 of this Agreement on account of the interest which is payable on the bonds to be refunded on the next interest payment date of such bonds and on account of the next maturing installment of principal of or the current Amortization Requirement for the bonds to be refunded, but no such withdrawal shall be made on account of any deposits to the credit of the Reserve Account in the Sinking Fund. The amount so withdrawn, the proceeds (excluding accrued interest but including any premium) of such revenue refunding bonds and any other moneys which have been made available to the Trustee for such purpose, shall be held by the Trustee or deposited with the Paying Agents to be held in trust for the sole and exclusive purpose of paying such principal, redemption premium and interest; provided, however, that such portion of the proceeds of such revenue refunding bonds as is specified by the Executive Director in a certificate filed with the Trustee shall be paid to the Authority to be used for the payment of expenses incident to the financing. Any part of the proceeds of such revenue refunding bonds which are not needed for the purpose of paying the principal of and the redemption premium,

USB_9019MOTION 0000049

Section 210

40

if any, on the bonds to be refunded or any expenses in connection with such refunding shall be deposited with the Trustee to the credit of the Bond Service Account in the Sinking Fund. The amount received as accrued interest on such revenue refunding bonds shall be deposited with the Trustee to the credit of the Bond Service Account in the Sinking Fund.

Temporary bonds.

SECTION 211. Until definitive bonds of any Series are ready for delivery, there may be executed, and upon request of the Authority the Trustee shall authenticate and deliver, in lieu of definitive bonds and subject to the same limitations and conditions, temporary printed, typewritten, engraved or lithographed bonds, in the form of either coupon bonds in such denominations, with or without coupons, or registered bonds without coupons in such denominations, or both, or in the form of a single registered bond without coupons in a denomination equal to the aggregate principal amount of such definitive bonds and payable in installments corresponding to the maturities of such definitive bonds, with payment record attached for the notation of payments of such installments and interest, without presentation and surrender of such single registered bond, as the Authority by resolution may provide, substantially of the tenor hereinabove set forth and with such appropriate omissions, insertions and variations as may be required.

Until definitive bonds of any Series are ready for delivery, any temporary bond of such Series may, if so provided by the Authority by resolution, be exchanged at the principal office of the Trustee, without charge to the holder thereof, for an equal aggregate principal amount of temporary coupon bonds or of temporary registered bonds without coupons or both, of like tenor, of the same Series and maturity and bearing interest at the same rate.

If temporary bonds shall be issued, the Authority shall cause the definitive bonds to be prepared and to be executed and delivered to the Trustee, and the Trustee, upon presentation to it at its principal office of any temporary bond accompanied by all unpaid coupons, if any, shall cancel the same and authenticate and deliver in exchange therefor at the place designated by the holder, without charge to the holder thereof, a definitive bond or bonds of an equal aggregate principal amount, of the same Series and maturity and bearing interest at the same rate as the temporary bond surrendered. Upon any such exchange all coupons appertaining to definitive coupon bonds and representing interest theretofore paid shall be detached and cancelled by the Trustee. Until so exchanged the temporary bonds shall in all respects be entitled to the same benefit and security of this Agreement as the

USB_9019MOTION_0000050

Section 301

41

definitive bonds to be issued and authenticated hereunder. Interest
on temporary coupon bonds, when due and payable, if the definitive
bonds shall not be ready for exchange, shall be paid on presentation
of such temporary coupon bonds and notation of such payment shall
be endorsed thereon, or such interest shall be paid upon the surrender
of the appropriate coupons if coupons representing such interest shall
be attached to such temporary bonds. No charge for taxes or govern-
mental charges shall be made against the holder upon an exchange
of a temporary bond for a definitive bond.

SECTION 212. In case any bond secured hereby shall become muti-   *Mutilated, destroyed
lated or be destroyed or lost, the Authority shall cause to be executed,   or lost bonds.*
and the Trustee shall authenticate and deliver, a new bond of like date
and tenor in exchange and substitution for and upon the cancellation
of such mutilated bond and its interest coupons, if any, or in lieu of
and in substitution for such bond and its coupons, if any, destroyed
or lost, upon the holder's paying the reasonable expenses and charges
of the Authority and the Trustee in connection therewith and, in the
case of a bond destroyed or lost, his filing with the Trustee evidence
satisfactory to it and to the Authority that such bond and coupons, if
any, were destroyed or lost, and of his ownership thereof, and furnish-
ing the Authority and the Trustee with indemnity satisfactory to them.

## ARTICLE III.
### REDEMPTION OF BONDS.

SECTION 301. The bonds of any Series issued under the provisions   *Redemption of bonds.*
of this Agreement shall be made subject to redemption, both in whole   *see supplemental agmt*
and in part and at such time and prices, as may be provided by resolu-   *dtd 8/1/63 ( Doc 794/57)*
tion adopted by the Authority prior to the issuance of such bonds;
provided, however, that term bonds shall be made subject to redemp-
tion to the extent of any Amortization Requirements therefor on July 1
immediately following each year in which there is an Amortization
Requirement in respect of such bonds.

If less than all of the bonds of any one maturity of a Series shall   *Selection by Trustee.*
be called for redemption, the particular bonds or portions of registered
bonds without coupons to be redeemed from such Series and maturity
shall be selected by the Trustee in such manner as the Trustee in
its discretion may determine; provided, however, that the portion
of any registered bond without coupons to be redeemed shall be in the
principal amount equal to the lowest denomination of coupon bonds
of such Series or some multiple thereof, and that, in selecting bonds

51

USB_9019MOTION 0000051

Section 301

42

for redemption, the Trustee shall treat each registered bond without coupons as representing that number of coupon bonds which is obtained by dividing the principal amount of such registered bond without coupons by the amount of the lowest denomination of coupon bonds of such Series.

Redemption notice.

*see supplemental agmt dtd 8/1/83 (Doc 7749/57)*

SECTION 302. At least thirty (30) days before the redemption date of any bonds the Trustee shall cause a notice of any such redemption, either in whole or in part, signed by the Trustee, (a) to be published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, (b) to be filed with the Paying Agents, and (c) to be mailed, postage prepaid, to all registered owners of bonds or portions of bonds to be redeemed at their addresses as they appear on the registration books hereinabove provided for, but failure so to file or mail any such notice shall not affect the validity of the proceedings for such redemption. Each such notice shall set forth the date fixed for redemption, the redemption price to be paid and, if less than all of the bonds of any one maturity of a Series then outstanding shall be called for redemption, the distinctive numbers and letters, if any, of such bonds to be redeemed and, in the case of registered bonds without coupons to be redeemed in part only, the portion of the principal amount thereof to be redeemed. In case any registered bond without coupons is to be redeemed in part only, the notice of redemption which relates to such bond shall state also that on or after the redemption date, upon surrender of such bond, a new bond or bonds of the same Series and maturity, bearing interest at the same rate and in principal amount equal to the unredeemed portion of such bond will be issued.

Effect of calling
for redemption.

*see supplemental agmt dtd 8/1/83 (Doc 7749/57)*

SECTION 303. On the date so designated for redemption, notice having been published in the manner and under the conditions hereinabove provided, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or portions of bonds on such date, and, if moneys for payment of the redemption price and the accrued interest are held in separate accounts by the Trustee or by the Paying Agents in trust for the holders of the

USB_9019MOTION_0000052

Section 307

43

bonds or portions thereof to be redeemed, as provided in this Agreement, interest on the bonds or portions of bonds so called for redemption shall cease to accrue, the coupons for interest on any coupon bonds so called for redemption payable subsequent to the redemption date shall be void, such bonds or portions of bonds shall cease to be entitled to any benefit or security under this Agreement, and the holders or registered owners of such bonds or portions of bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof and the accrued interest and, to the extent provided in Section 305 of this Article, to receive bonds for any unredeemed portions of registered bonds without coupons.

SECTION 304. All unpaid coupons which appertain to coupon bonds so called for redemption and which shall have become due and payable on or prior to the date of redemption designated in such notice shall continue to be payable to the bearers severally and respectively upon the presentation and surrender of such coupons. — Matured coupons.

SECTION 305. In case part but not all of an outstanding registered bond without coupons shall be selected for redemption, the registered owner thereof or his attorney or legal representative shall present and surrender such bond to the Trustee for payment of the principal amount thereof so called for redemption, and the Authority shall execute and the Trustee shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the registered bond without coupons so surrendered, either coupon bonds or a registered bond or bonds without coupons, at the option of such registered owner or his attorney or legal representative, of the same Series and maturity, bearing interest at the same rate and of any denomination or denominations authorized by this Agreement. — Redemption of portion of registered bonds. *see supplemental agmt (Doc 7749/57) dtd 8/1/63*

SECTION 306. Coupon bonds so redeemed and all unmatured coupons appertaining thereto, and registered bonds without coupons so presented and surrendered, shall be cancelled upon the surrender thereof. — Cancellation of bonds and coupons redeemed.

SECTION 307. Bonds and portions of bonds which have been duly called for redemption under the provisions of this Article, or with — Bonds and portions of bonds called for redemption not deemed outstanding.

USB 9019MOTION 0000053

Section 307

44

respect to which irrevocable instructions to call for redemption at the earliest redemption date have been given to the Trustee in form satisfactory to it, and for the payment of the redemption price and the accrued interest of which sufficient moneys, or Government Obligations or Time Deposits secured in the manner set forth in Section 601 of this Agreement, shall be held in separate accounts by the Trustee or by the Paying Agents in trust for the holders of the bonds or portions thereof to be redeemed, all as provided in this Agreement, shall not thereafter be deemed to be outstanding under the provisions of this Agreement.

## ARTICLE IV.

### Custody and Application of Proceeds of Bonds.

Construction Fund.   SECTION 401. A special fund is hereby created and designated "Puerto Rico Water Resources Authority Power System Construction Fund" (herein sometimes called the "Construction Fund"), to the credit of which such deposits shall be made as are required by the provisions of Section 208 of this Agreement. There shall also be deposited to the credit of the Construction Fund any moneys received from any other source for paying any portion of the cost of any Improvements. One or more separate accounts may be created in the Construction Fund for use for specified projects.

The moneys in the Construction Fund shall be held by the Authority in trust, separate and apart from all other funds of the Authority, and shall be applied to the payment of the cost of any Improvements and, except for any moneys in separate accounts in the Construction Fund received from the United States Government or any agency thereof or from the Commonwealth of Puerto Rico or any agency thereof, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred as herein provided.

Payments from
Construction Fund.   SECTION 402. Payment of the cost of any Improvements shall be made from the Construction Fund as herein provided. Moneys in the Construction Fund shall be disbursed by check, voucher, order, draft, certificate or warrant signed by the Executive Director or by any

USB_9019MOTION_0000054

Section 403

45

officer or employee of the Authority designated by him for such purpose.

SECTION 403. For the purposes of this Article, the cost of any Improvements shall embrace the cost of acquisition or construction and equipment and all other items of cost incident to such acquisition and construction and equipment and the financing thereof, and shall include, without intending thereby to limit or restrict any proper definition of such cost under the provisions of law or this Agreement, the following:

Items of cost.

(a) obligations incurred for labor and materials and to contractors, builders and materialmen in connection with the construction of any Improvements;

(b) the cost of acquiring by purchase, if such purchase shall be deemed expedient, and the amount of any award or final judgment in or any settlement or compromise of any proceeding to acquire by condemnation, such property, lands, rights, rights of way, franchises, easements and other interests in land constituting a part of, or as may be deemed necessary or convenient for the construction of any Improvements, options and partial payments thereon, the cost of filling, draining or improving any lands so acquired, and the amount of any damages incident to or consequent upon the construction of any Improvements;

(c) the fees and expenses of the Trustee for its services under Article II of this Agreement, including its services in connection with the acceptance of the trusts hereby created, legal expenses and fees, fees and expenses of consultants, financing charges, cost of preparing and issuing the bonds, taxes or other municipal or governmental charges lawfully levied or assessed during construction upon any Improvements, and premiums on insurance in connection with any Improvements during construction;

(d) fees and expenses of architects or engineers for making studies, surveys and testing, for preparing plans and specifications and supervising construction, as well as for the performance of all other duties of architects or engineers set forth herein in relation to the construction of any Improvements;

(e) expenses of administration properly chargeable to any Improvements and all other items of expense not elsewhere in

USB 9019MOTION 0000055

Section 403

46

this Section specified, incident to the acquisition or construction and equipment of any Improvements;

(f) interest on the bonds prior to and during construction of the Improvements financed by such bonds and for such period after completion of such construction as the Authority may determine, if then permitted by law; and

(g) any obligation or expense heretofore or hereafter incurred by the Authority and any amounts heretofore or hereafter advanced by the Commonwealth of Puerto Rico or any agency thereof or by the United States Government, or from any other source, for any of the foregoing purposes.

Lands for projects.  SECTION 404. The Authority covenants that no disbursement will be made for the purchase price or cost of any electric system or portion thereof, or any lands, buildings, franchises, licenses, easements or rights of way, unless and until counsel for the Authority shall have rendered his written opinion to the Authority to the effect that the Authority either has or will have immediately upon such disbursement (by reason of the prior or simultaneous delivery of proper instruments of conveyance and transfer mentioned in such opinion) title thereto sufficient for the purposes of the System.

## ARTICLE V.

### REVENUES AND FUNDS.

Covenant as to bills for services.  SECTION 501. The Authority covenants that it will continue to render bills for the services and facilities furnished by the System on a monthly or bi-monthly basis until such time as the Authority shall deem it advisable to change the period covered by such bills, and that it will establish and enforce reasonable regulations in relation to the collection of such bills.

Covenant as to rates.  SECTION 502. The Authority further covenants that it will at all times fix, charge and collect reasonable rates and charges for the use of the services and facilities furnished by the System and that from time to time, and as often as it shall appear necessary, it will adjust such rates and charges so that the Revenues will at all times be sufficient

USB_9019MOTION_0000056

Section 502

47

(A) until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture:

(a) to pay the Current Expenses of the System, and

(b) to provide the greater of (i) the amount equal to one hundred twenty per centum (120%) of the aggregate Principal and Interest Requirements for the next fiscal year on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement, reduced by any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon in such fiscal year, or (ii) the amount required to make the deposits, transfers and payments mentioned in items (1) through (4), inclusive, below:

(1) to make the deposits to the credit of the 1947 Sinking Fund which are required to be made in each fiscal year under the provisions of Section 507 of the 1947 Indenture,

(2) to make the deposits to the credit of the General Reserve Fund which are required to be made in each fiscal year under the provisions of Section 511 of the 1947 Indenture,

(3) to make the transfers to the credit of the Renewal and Replacement Fund which are required to be made in each fiscal year under the provisions of Section 512 of the 1947 Indenture, and

(4) to make the payments which are required to be made in each fiscal year under the provisions of clause (a) of Section 513 of the 1947 Indenture, and

(B) after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture:

(a) to pay the Current Expenses of the System, and

(b) to provide an amount at least equal to one hundred twenty per centum (120%) of the aggregate Principal and Interest Requirements for the next fiscal year on account of all the bonds then outstanding under this Agreement, reduced

USB_9019MOTION 0000057

Section 502

48

by any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon in such fiscal year.

The Authority further covenants that if at any time the Revenues shall not be sufficient to make such deposits, transfers and payments, it will revise the rates and charges for the services and facilities furnished by the System and, if necessary, it will revise its regulations in relation to the collection of bills for such services and facilities, so that such deficiency will be made up before the end of the next ensuing fiscal year. Should any deficiency not be made up in such next ensuing fiscal year, the requirement therefor, except as to the payments which are required to be made in such fiscal year under subclause (4) of clause (b) of paragraph (A) of this Section, shall be cumulative and the Authority shall continue to revise such rates until such deficiency shall have been completely made up.

Forthwith upon the adoption of any revision of rates and charges the Authority shall cause certified copies thereof to be filed with the Trustee.

In the event that the Authority shall fail to adjust the schedule of rates and charges in accordance with the provisions of this Section, the Trustee, without regard to whether an event of default, as defined in Article VIII of this Agreement, shall have occurred, shall, upon the request of the holders of not less than ten per centum (10%) in principal amount of all bonds then outstanding and upon being indemnified to its satisfaction, institute and prosecute in a court of competent jurisdiction an appropriate suit, action or proceeding to compel the Authority to adjust such schedule in accordance with the requirements of this Section, and the Authority covenants that it will adopt and charge rates and charges in compliance with any judgment, order or decree entered in any such suit, action or proceeding.

General Fund.

SECTION 503. A special fund is hereby created and designated the "Puerto Rico Water Resources Authority General Fund" (herein sometimes called the "General Fund"). The Authority covenants that, after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, all Revenues, other than income from investments made under the provisions of this Agreement, will be deposited as received

USB_9019MOTION_0000058

Section 504

49

in the name of the Authority with a qualified depositary or depositaries to the credit of the General Fund and applied in accordance with the provisions of this Article.

SECTION 504. The Authority covenants that on or before the 15th day of May in each year the Board will cause to be prepared and will adopt and file with the Secretary, with the Trustee and with the Consulting Engineers a proposed budget of Current Expenses and of Capital Expenditures for the ensuing fiscal year.   **Annual Budget.**

The Authority further covenants that such proposed budget of Current Expenses will be prepared in such manner as to segregate, in so far as advisable, the accounts in respect of the different classes of operations, projects, undertakings and activities of the Authority and will be prepared on the basis of monthly requirements so that it will be possible to determine from the budget the Current Expenses for each month during the fiscal year, that it will comply with any reasonable request of the Consulting Engineers as to the classifications in which such budget shall be prepared, and that such proposed budget of Capital Expenditures will show separately (a) so long as any 1947 Indenture Bonds are outstanding, the amount to be expended during such fiscal year from moneys deposited or transferred to the credit of the Renewal and Replacement Fund, including a separate statement as to the amount to be withdrawn from said Fund under the provisions of Section 507 of this Agreement, (b) the amount to be expended during such fiscal year from moneys deposited to the credit of the Construction Fund and, so long as any 1947 Indenture Bonds are outstanding, the 1947 Construction Fund, and (c) the amount of the working cash funds required for each month during such fiscal year.

The Authority further covenants that on the 1st day of June of each year, or on the first business day thereafter, it will hold a public hearing at its office in the Municipality of San Juan, Puerto Rico, on the proposed budget for the ensuing fiscal year, at which any bondholder, any consumer or any other interested person may appear, in person or by agent or attorney, and present any objections he may have to such proposed budget, and that promptly after each such public hearing and, in any event, on or before the first day of the next ensuing fiscal year the Board will finally adopt the annual budget of Current Expenses and Capital Expenditures for such fiscal year (which budget, together with any amendment thereof or supplement

USB_9019MOTION_0000059

Section 504

50

thereto as hereinafter permitted, is herein sometimes called the "Annual Budget"). The Authority covenants that the total expenditures provided for in the Annual Budget of Current Expenses will not exceed the total expenditures set forth in the proposed budget unless such excess shall be approved by the Consulting Engineers, and that before adopting the budget of Capital Expenditures it will receive and consider the Consulting Engineers' advices and recommendations with respect thereto.

If for any reason the Board shall not have adopted the Annual Budget before the first day of any fiscal year, the proposed budget for such fiscal year, if approved by the Consulting Engineers, or, if there is none so approved, the budget for the preceding fiscal year, shall, until the adoption of the Annual Budget, be deemed to be in force and shall be treated as the Annual Budget under the provisions of this Article; provided, however, that, so long as any 1947 Indenture Bonds are outstanding, the amounts provided for in the Annual Budget to be transferred from the 1947 Revenue Fund to the Renewal and Replacement Fund shall not be less than the amount set forth in the most recent certificate of the Executive Director filed with the Trustee pursuant to clause (d) of Section 208 of this Agreement.

The Board may at any time cause to be prepared and may file with the Secretary, with the Trustee and with the Consulting Engineers, and the Board may thereafter adopt, after receiving the approval of the Consulting Engineers, an amended or supplemental Annual Budget for the then current fiscal year.

**Application of moneys in General Fund.** SECTION 505. The Authority covenants that moneys in the General Fund will be used first for the payment of the Current Expenses of the System, that such expenses will not exceed an amount which is reasonable and necessary for maintaining, repairing and operating the System in an efficient and economical manner, and that the total amount of Current Expenses in any fiscal year will not exceed the amount provided therefor in the Annual Budget for such fiscal year or any amendment thereof or supplement thereto unless such expenses shall be required by conditions beyond the control of the Authority happening during such fiscal year and which could not reasonably have been contemplated at the time of the adoption of the Annual Budget. If at any time the total amount theretofore expended during any fiscal

USB_9019MOTION_0000060

Section 507

51

year for Current Expenses shall exceed the total amount provided in the Annual Budget for Current Expenses for such fiscal year, the Authority covenants that it will report in writing the amount of such excess and the reason or reasons therefor to the Consulting Engineers and to the Trustee as soon as practicable but not later than the last day of the sixth month following the month in which such excess shall have occurred.

Revenue Fund.

SECTION 506.  A special fund is hereby created and designated the "Puerto Rico Water Resources Authority Power Revenue Fund" (herein sometimes called the "Revenue Fund"). After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Treasurer shall transfer, on or before the 15th day of each month, from the General Fund to the credit of the Revenue Fund an amount equal to the amount of all moneys held for the credit of the General Fund on the last day of the preceding month less such amount to be held as reserve for Current Expenses as the Treasurer may determine but not more than one-sixth (1/6) of the amount shown by the Annual Budget to be necessary for Current Expenses for the current fiscal year, such transfer to be made on the books of the Authority as of the close of the preceding month. The Authority covenants that all moneys to the credit of the Revenue Fund will be applied to the purposes and in the order set forth in this Article.

Sinking Fund.

Bond Service
Account, Reserve
Account and
Redemption Account.

Reserve Maintenance
Fund.

SECTION 507.  A special fund is hereby created and designated the "Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund" (herein sometimes called the "Sinking Fund"). There are hereby created three separate accounts in the Sinking Fund designated "Bond Service Account", "Reserve Account" and "Redemption Account", respectively. Another special fund is hereby created and designated "Puerto Rico Water Resources Authority Reserve Maintenance Fund" (herein sometimes called the "Reserve Maintenance Fund"). On or before the last day of the month during which the first Series of bonds shall be issued under the provisions of Section 208 of this Agreement and on or before the 25th day of each month thereafter, (i) until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture it shall be the duty of the Executive Director or any officer or employee of the Authority designated by him for such purpose to withdraw from the Renewal and Replacement Fund, and

USB_9019MOTION_0000061

Section 507

52

(ii) after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture it shall be the duty of the Treasurer to withdraw from the Revenue Fund, all of the moneys then held to the credit of such Fund and deposit the moneys so withdrawn to the credit of the following Accounts and Fund in the following order:

(a) to the credit of the Bond Service Account, such amount thereof (or the entire sum so withdrawn if less than the required amount) as may be required to make the total amount then to the credit of the Bond Service Account equal to the sum of (i) the amount of interest then or to become within the next ensuing six (6) months due and payable on the bonds of each Series then outstanding, (ii) the amount of principal of the serial bonds of each Series then or to become within the next ensuing six (6) months due and payable, and (iii) one-half of the amount of principal of the serial bonds of each Series to become due and payable following such next ensuing six (6) months and within the next ensuing twelve (12) months;

(b) to the credit of the Redemption Account, such amount, if any, of any balance remaining after making the deposit under clause (a) above (or the entire balance if less than the required amount) as may be required to make the amount deposited in the then current fiscal year to the credit of the Redemption Account equal to one-half of, if such deposit is made on or prior to December 31 in such fiscal year, and all of, if such deposit is made after December 31 in such fiscal year, the Amortization Requirements, if any, for such fiscal year for the term bonds of each Series then outstanding, plus the premiums, if any, on such principal amount of term bonds which would be payable in such fiscal year if such principal amount of term bonds were to be redeemed prior to their respective maturities from moneys held for the credit of the Sinking Fund;

(c) to the credit of the Reserve Account, such amount, if any, of any balance remaining after making the deposits under clauses (a) and (b) above (or the entire balance if less than the required amount) as may be required to make the amount then to the credit of the Reserve Account equal to the interest payable on the bonds of each Series issued hereunder within the next ensuing twelve (12) months; provided, however, that the amount so deposited in any month in respect of bonds of any Series issued under Sections 208 or 209 of this Agreement need not exceed one-sixtieth (1/60)

USB_9019MOTION_0000062

53

of the amount of the increase in the interest payable within the next ensuing twelve (12) months resulting from the issuance of the bonds of such Series; provided, however, that if the amount so deposited in any month to the credit of said Account shall be less than the required amount for such month, the requirement therefor shall nevertheless be cumulative and the amount of any deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up; and

(d) after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Reserve Maintenance Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b) and (c) above (or the entire balance if less than the required amount) as may be required to make the amount deposited in such month to the credit of the Reserve Maintenance Fund equal to the amount recommended by the Consulting Engineers, as provided by Section 706 of this Agreement, to be deposited to the credit of said Fund during such month; provided, however, that if the amount so deposited to the credit of said Fund in any month shall be less than the amount recommended by the Consulting Engineers, the requirement therefor shall nevertheless be cumulative and the amount of any such deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up, unless such requirement shall have been modified by the Consulting Engineers in writing, a signed copy of such modification to be filed with the Authority.

Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a), (b) and (c) above shall be transferred to the Renewal and Replacement Fund. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a), (b), (c) and (d) above may be used for any lawful purpose of the Authority.

The moneys in the Sinking Fund shall be held by the Trustee in trust, and the moneys in the Reserve Maintenance Fund shall be held

USB_9019MOTION_0000063

Section 507

54

by the Authority in trust, separate and apart from all other funds of the Authority, and shall be applied as hereinafter provided with respect to such Funds and, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred as herein provided.

<div style="float:left; font-size:smaller">Disposition of balances in 1947 Indenture funds and accounts.</div>

SECTION 508. At such time as the outstanding 1947 Indenture Bonds shall be paid or provision shall be made for their payment and the Trustee under the 1947 Indenture shall have released the 1947 Indenture, all moneys (other than moneys held for the redemption or payment of bonds and coupons), including any obligations purchased as an investment of such moneys, then held for the credit of the special funds and accounts created under the provisions of the 1947 Indenture shall be withdrawn and deposited to the credit of the special funds and accounts created under the provisions of this Agreement, as follows:

| 1947 Indenture | Agreement |
|---|---|
| Construction Fund | Construction Fund |
| General Fund | General Fund |
| Revenue Fund | Revenue Fund |
| Sinking Fund, including | Reserve Account in |
| Reserve Account | Sinking Fund |
| General Reserve Fund | General Fund |
| Renewal and Replacement Fund | General Fund |

At the same time the Authority shall withdraw all moneys then held to the credit of the Construction Fund revolving fund under the provisions of the 1947 Indenture and deposit such moneys to the credit of the Construction Fund under the provisions of this Agreement.

<div style="float:left; font-size:smaller">Application of moneys in Bond Service Account.</div>

SECTION 509. The Trustee shall, on the business day immediately preceding each interest payment date, withdraw from the Bond Service Account and (a) remit by mail to each owner of registered bonds without coupons the amounts required for paying the interest on such bonds as such interest becomes due and payable and (b) set aside or deposit in trust with the Paying Agents the amounts required for paying the interest on the coupon bonds as such interest becomes due and payable and the principal of all serial bonds as such principal becomes due and payable.

USB_9019MOTION_0000064

Section 511

55

SECTION 510. Moneys held for the credit of the Reserve Account shall first be used for the purpose of paying interest on the bonds and maturing principal of the serial bonds whenever and to the extent that the moneys held for the credit of the Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the Redemption Account pursuant to the requirements of clause (b) of Section 507 of this Agreement wherever and to the extent that the withdrawals from the Renewal and Replacement Fund or the Revenue Fund, as the case may be, are insufficient for such purpose. If at any time the moneys held for the credit of the Reserve Account shall exceed interest payable within the next ensuing twelve (12) months, on the bonds of each Series issued hereunder, such excess shall be transferred to the credit of the Bond Service Account. *Application of moneys in Reserve Account.*

SECTION 511. Moneys held for the credit of the Redemption Account shall be applied to the retirement of bonds issued under the provisions of this Agreement as follows: *Application of moneys in Redemption Account.*

(a) Subject to the provisions of paragraph (c) of this Section, the Trustee shall endeavor to purchase bonds or portions of bonds secured hereby and then outstanding, whether or not such bonds or portions shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, such price not to exceed the principal of such bonds plus the amount of the premium, if any, which would be payable on the next redemption date to the holders of such bonds under the provisions of Article III of this Agreement if such bonds or portions of bonds should be called for redemption on such date from the moneys in the Sinking Fund. The Trustee shall pay the interest accrued on such bonds or portions of bonds to the date of settlement therefor from the Bond Service Account and the purchase price from the Redemption Account, but no such purchase shall be made by the Trustee within the period of forty-five (45) days immediately preceding any interest payment date on which such bonds are subject to call for redemption under the provisions of this Agreement except from moneys other than the moneys set aside or deposited for the redemption of bonds. *Purchase of bonds.*

(b) Subject to the provisions of paragraph (c) of this Section, the Trustee shall call for redemption on each interest payment date on which bonds are subject to redemption from moneys *Redemption of bonds.*

USB_9019MOTION_0000065

Section 511

56

in the Sinking Fund such amount of bonds or portions of bonds then subject to redemption as, with the redemption premium, if any, will exhaust the moneys then held for the credit of the Redemption Account as nearly as may be; provided, however, that not less than One Hundred Thousand Dollars ($100,000) principal amount of bonds shall be called for redemption at any one time. Such redemption shall be made pursuant to the provisions of Article III of this Agreement. Prior to calling bonds or portions of bonds for redemption the Trustee shall withdraw from the Bond Service Account and from the Redemption Account and set aside in separate accounts or deposit with the Paying Agents the respective amounts required for paying the interest on, and the principal and redemption premium of, the bonds or portions of bonds so called for redemption.

(c) Moneys in the Redemption Account shall be applied by the Trustee in each fiscal year to the retirement of bonds of each Series then outstanding in the following order:

*first,* the term bonds of each such Series to the extent of the Amortization Requirement, if any, for such fiscal year for the term bonds of each such Series then outstanding, plus the applicable premium, if any, and, if the amount available in such fiscal year shall not be equal thereto, then in proportion to the Amortization Requirement, if any, for such fiscal year for the term bonds of each such Series then outstanding, plus the applicable premium, if any;

*second,* any balance then remaining shall be applied to the purchase of any bonds secured hereby and then outstanding whether or not such bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section;

*third,* any balance then remaining shall be applied to the redemption of the term bonds of each such Series in proportion to the Amortization Requirement, if any, for such fiscal year for the term bonds of each such Series then outstanding, plus the applicable premium, if any; and

*fourth,* after the retirement of all term bonds, any balance still remaining shall be applied to the retirement of the serial

USB_9019MOTION_0000066

Section 512

57

bonds of each Series in proportion to the aggregate principal amount of the serial bonds of each such Series originally issued under the provisions of this Agreement.

Until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Authority shall pay from the Renewal and Replacement Fund all expenses in connection with any such purchase or such redemption; thereafter all such expenses shall be paid from the Revenue Fund.

SECTION 512. Except as hereinafter provided in this Section and in Section 707 of this Agreement, moneys held for the credit of the Reserve Maintenance Fund shall be disbursed only for the purpose of paying the cost of unusual or extraordinary maintenance or repairs, maintenance or repairs not recurring annually and renewals and replacements, including major items of equipment. Such disbursements shall be made in accordance with the provisions of Section 402 of this Agreement for payments from the Construction Fund.

Use of moneys in Reserve Maintenance Fund.

If at any time moneys held for the credit of the Bond Service Account and the Reserve Account shall be insufficient for the purpose of paying the interest on all bonds and the principal of the serial bonds as such interest and principal become due and payable, then the Authority shall transfer from any moneys held for the credit of the Reserve Maintenance Fund to the credit of the Bond Service Account an amount sufficient to make up any such deficiency. If at any time the moneys held for the credit of the Redemption Account and the Reserve Account shall be insufficient for the purpose of providing funds for the retirement of term bonds to the extent of the Amortization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Reserve Maintenance Fund an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement. Any moneys so transferred from the Reserve Maintenance Fund shall be restored by the Authority from available moneys in the Revenue Fund, subject to the same conditions as are prescribed for deposits to the credit of the Reserve Maintenance Fund under the provisions of Section 507 of this Agreement.

USB_9019MOTION_0000067

Section 513

58

Application and
pledge of moneys
in Sinking Fund.

SECTION 513. Subject to the terms and conditions set forth in this Agreement, moneys held for the credit of the Bond Service Account, the Reserve Account and the Redemption Account shall be held in trust and disbursed by the Trustee for (a) the payment of interest on the bonds issued hereunder as such interest becomes due and payable, or (b) the payment of the principal of such bonds at their respective maturities, or (c) the payment of the purchase or redemption price of such bonds before their respective maturities, and such moneys are hereby pledged to and charged with the payments mentioned in this Section.

Whenever the total of the moneys held for the credit of the Bond Service Account, the Reserve Account and the Redemption Account shall be sufficient for paying the principal of and the redemption premium, if any, and the interest accrued on all bonds then outstanding under the provisions of this Agreement, such moneys shall be applied by the Trustee to the payment, purchase or redemption of such bonds.

Moneys set aside for
principal and interest
held in trust.

SECTION 514. All moneys which the Trustee shall have withdrawn from the Sinking Fund or shall have received from any other source and set aside, or deposited with the Paying Agents, for the purpose of paying any of the bonds hereby secured, either at the maturity thereof or upon call for redemption, or for the purpose of paying any maturing coupons appertaining to any of the coupon bonds hereby secured, shall be held in trust for the respective holders of such bonds or coupons. But any moneys which shall be so set aside or deposited by the Trustee and which shall remain unclaimed by the holders of such bonds or of such coupons for the period of six (6) years after the date on which such bonds or such coupons shall have become due and payable shall upon request in writing be paid to the Authority or to such officer, board or body as may then be entitled by law to receive the same, and thereafter the holders of such bonds or coupons shall look only to the Authority or to such officer, board or body, as the case may be, for payment and then only to the extent of the amounts so received without any interest thereon, and the Trustee and the Paying Agents shall have no responsibility with respect to such moneys.

Moneys unclaimed
for six years after
maturity of bonds
and coupons.

Cancellation of
bonds and coupons
upon payment.

SECTION 515. All bonds paid, redeemed or purchased, either at or before maturity, together with all unmatured coupons, if any, apper-

USB_9019MOTION_0000068

Section 601

59

taining thereto, shall be cancelled upon the payment, redemption or purchase of such bonds and shall be delivered to the Trustee when such payment, redemption or purchase is made. All coupons, which are paid by the Paying Agents, shall be cancelled upon their payment and delivered to the Trustee in the Borough of Manhattan, City and State of New York. Except for such coupons, all bonds and coupons cancelled under any of the provisions of this Agreement shall be destroyed by the Trustee, which shall execute a certificate in duplicate describing the bonds and coupons so destroyed except that the numbers of the bonds to which such coupons appertain may be omitted unless otherwise directed by the Authority, and one executed certificate shall be filed with the Secretary and the other executed certificate shall be retained by the Trustee. The coupons so paid by the Paying Agents shall be destroyed by the Trustee in the Borough of Manhattan, City and State of New York, which shall execute a certificate in triplicate describing the coupons so destroyed except that the numbers of the bonds to which such coupons appertain may be omitted unless otherwise directed by the Authority, and one executed certificate shall be filed with the Secretary and another with the Trustee and the third executed certificate shall be retained by such Paying Agent.

## ARTICLE VI.

### Depositaries of Moneys, Security for Deposits and Investment of Funds.

SECTION 601. All moneys received by the Authority under the provisions of this Agreement shall be deposited with a Depositary or Depositaries, shall be held in trust, shall be applied only in accordance with the provisions of this Agreement and shall not be subject to lien or attachment by any creditor of the Authority.

*Deposits constitute trust funds.*

All moneys deposited with the Trustee or any other Depositary hereunder in excess of the amount guaranteed by the Federal Deposit Insurance Corporation or other Federal agency shall be continuously secured, for the benefit of the Authority and the holders of the bonds, either (a) by lodging with a bank or trust company approved by the Authority and by the Trustee as custodian, or, if then permitted by law, by setting aside under control of the trust department of the bank holding such deposit, as collateral security, Government Obligations, or,

*Security for deposits.*

USB_9019MOTION_0000069

Section 601

60

with the approval of the Trustee, other marketable securities eligible
as security for the deposit of trust funds under applicable regulations
of the Comptroller of the Currency of the United States or applicable
Commonwealth of Puerto Rico or state law or regulations, having a
market value (exclusive of accrued interest) not less than the amount of
such deposit, or (b), if the furnishing of security as provided in clause
(a) of this Section is not permitted by applicable law, in such other
manner as may then be required or permitted by applicable Common-
wealth of Puerto Rico, state or Federal laws or regulations regarding
the security for, or granting a preference in the case of, the deposit of
trust funds; provided, however, that it shall not be necessary for the
Paying Agents to give security for the deposits of any moneys with
them for the payment of the principal of or the redemption premium or
the interest on any bonds issued hereunder, or for the Trustee to give
security for any moneys which shall be represented by obligations pur-
chased under the provisions of this Article as an investment of such
moneys.

All moneys deposited with each Depositary, including the Trustee,
shall be credited to the particular fund or account to which such
moneys belong.

Investment of
moneys.

SECTION 602. Moneys held for the credit of the Bond Service Ac-
count and the Redemption Account, shall, as nearly as may be prac-
ticable, be continuously invested and reinvested by the Trustee in
Government Obligations which shall mature, or which shall be subject
to redemption by the holder thereof at the option of such holder, not
later than the respective dates when moneys held for the credit of said
Accounts will be required for the purposes intended, or in Time
Deposits; provided, however, that each such Time Deposit shall permit
the moneys so placed to be available for use at the times provided
above.

Moneys held for the credit of the Construction Fund and the
Reserve Maintenance Fund shall, as nearly as may be practicable, be
continuously invested and reinvested by the Authority in Investment
Obligations, and moneys held for the credit of the Revenue Fund
shall, as nearly as may be practicable, be continuously invested and
reinvested by the Authority in Government Obligations, which Invest-
ment Obligations and Government Obligations shall mature, or shall
be subject to redemption by the holder thereof at the option of such

USB_9019MOTION_0000070

61

holder, not later than the respective dates when moneys held for the credit of said Funds will be required for the purposes intended, or in Time Deposits; provided, however, that each such Time Deposit shall permit the moneys so placed to be available for use at the times provided above.

Moneys held for the credit of the Reserve Account shall, as nearly as may be practicable, be continuously invested and reinvested by the Trustee in Investment Obligations which shall mature, or which shall be subject to redemption by the holder thereof at the option of such holder, (i) as to approximately 50% of such moneys, not later than 5 years after the date of such investment, and (ii) as to the balance of such moneys, as directed by order mentioned below, or in Time Deposits; provided, however, that each such Time Deposit shall permit the moneys so placed to be available for use at the times provided above.

Fifty per centum (50%) of the moneys held for the credit of the Reserve Account shall be invested by the Trustee upon receipt of an order signed by the Executive Director stating the amount to be invested and directing such investment in Investment Obligations having such maturities as are specified in such order. Such obligations shall be sold by the Trustee upon receipt of an order signed by the Executive Director.

Obligations and Time Deposits so purchased as an investment of moneys in any such Fund or Account shall be deemed at all times to be part of such Fund or Account. The interest accruing thereon and any profit realized from such investment shall be credited to such Fund or Account and any loss resulting from such investment shall be charged to such Fund or Account. The Trustee shall sell or present for payment or redemption any obligations so acquired whenever it shall be necessary so to do in order to provide moneys to meet any payment from such Fund or Account. Neither the Trustee nor the Authority nor any officer or agent of either thereof shall be liable or responsible for any loss resulting from any such investment.

*Investments deemed to be part of Fund or Account for which purchased.*

## ARTICLE VII.

### Particular Covenants.

Section 701. The Authority covenants that it will promptly pay the principal of and the interest on each and every bond issued under

*Payment of principal, interest and premium.*

USB 9019MOTION 0000071

Section 701

62

the provisions of this Agreement at the places, on the dates and in the manner specified herein and in said bonds and in the coupons, if any, appertaining thereto, and any premium required for the retirement of said bonds by purchase or redemption, according to the true intent and meaning thereof. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such principal, interest and premium are payable solely from moneys in the Renewal and Replacement Fund and said moneys are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such principal, interest and premium will be payable solely from the Revenues and said Revenues are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified. Nothing in the bonds or in this Agreement shall be deemed to constitute the bonds a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions shall be liable for the payment of the principal of or the interest on the bonds.

*Pledge of revenues.*

*Bonds not general obligations of Commonwealth of Puerto Rico.*

*Offices or agencies for payment of coupon bonds and coupons.*

The Authority further covenants that so long as the bonds or any of them shall be outstanding it will cause offices or agencies where the coupon bonds and coupons may be presented for payment to be maintained in the Borough of Manhattan, City and State of New York.

*Covenant to integrate Improvements into System.*

SECTION 702. The Authority covenants that, upon the acquisition or construction of any Improvements, it will forthwith integrate the properties so acquired or constructed with the System and will thereupon operate and maintain the System and all of such properties as an integrated system.

*Covenant to construct Improvements in accordance with plans.*

The Authority further covenants that it will construct all Improvements for the construction of which bonds shall be issued under the provisions of this Agreement, or for which moneys repayable from the proceeds of bonds issued under the provisions of this Agreement shall have been advanced to the Authority, in accordance with plans theretofore adopted by the Board and approved by the Consulting Engineers and that upon the completion of such Improvements it will operate and maintain the same as a part of the System.

USB_9019MOTION_0000072

Section 704

63

The Authority further covenants that it will establish and enforce reasonable rules and regulations governing the use of the System and the operation thereof, that all compensation, salaries, fees and wages paid by it in connection with the maintenance, repair and operation of the System will be reasonable, that no more persons will be employed by it than are necessary, that it will operate the System in an efficient and economical manner, that it will at all times maintain the System in good repair and in sound operating condition and will make all necessary repairs, renewals and replacements, and that it will comply with all valid acts, rules, regulations, orders and directions of any legislative, executive, administrative or judicial body applicable to the System. <span style="float:right">Covenant as to operation.</span>

SECTION 703. The Authority further covenants that, until all of the 1947 Indenture Bonds shall have been paid or provision shall have been made for their payment and the 1947 Indenture shall have been released, it will duly and punctually perform all of the covenants, agreements and conditions contained in the 1947 Indenture on the part of the Authority to be performed. The Authority further covenants that it will cause the 1947 Indenture to be released at the earliest practicable date. The Authority further covenants that it will not enter into any indenture or agreement supplemental to the 1947 Indenture for the purpose of granting to or conferring upon the 1947 Trustee for the benefit of the holders of the bonds issued under the 1947 Indenture any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon such holders or the 1947 Trustee, or for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in the 1947 Indenture, or for the purpose of extending the maturity of any 1947 Indenture Bond or creating a lien upon or a pledge of revenues ranking prior to or on a parity with the lien or pledge created by the 1947 Indenture. Nothing herein contained shall prevent the Authority from entering into an indenture or agreement supplemental to the 1947 Indenture to cure any ambiguity or formal defect or omission in the 1947 Indenture. <span style="float:right">Compliance with 1947 Indenture.<br><br>Release of 1947 Indenture.<br><br>Covenant as to amendment of 1947 Indenture.</span>

SECTION 704. The Authority covenants that so long as any 1947 Indenture Bonds are outstanding under the provisions of the 1947 Indenture it will cause to be made the deposits to the credit of the Renewal and Replacement Fund required by Section 512 of the 1947 Indenture and it will not revise its determination as to the proper <span style="float:right">Covenant as to Renewal and Replacement Fund.</span>

USB_9019MOTION_0000073

Section 704

64

amount to be transferred each month from the 1947 Revenue Fund
to the credit of the Renewal and Replacement Fund, as set forth in
the most recent certificate of the Executive Director filed with the
Trustee pursuant to clause (d) of Section 208 of this Agreement,
by reducing such amount below one-twelfth (1/12) of the maximum
Principal and Interest Requirements for any fiscal year thereafter
to and including the fiscal year in which the last maturity of any
outstanding 1947 Indenture Bonds occurs on account of all bonds
then outstanding under this Agreement.

**Payment of
lawful charges.**
  SECTION 705. The Authority further covenants that, out of the
Revenues, it will pay all municipal or governmental charges lawfully
levied or assessed upon the System or any part thereof or upon any
Revenues when the same shall become due, that it will duly observe
and comply with all valid requirements of any municipal or govern-
mental authority relative to the System, that it will not create or suffer
to be created any lien or charge upon the System or any part thereof
or upon the Revenues ranking equally with or prior to the bonds, except
the lien and charge of the 1947 Indenture Bonds and the bonds secured
hereby upon the Revenues, and that, out of the Revenues, it will pay
or cause to be discharged, or will make adequate provision to satisfy
and discharge, within sixty (60) days after the same shall accrue, all
lawful claims and demands for labor, materials, supplies or other
objects which, if unpaid, might by law become a lien upon the System
or any part thereof or the Revenues; provided, however, that nothing
contained in this Section shall require the Authority to pay or cause
to be discharged, or make provision for, any such lien or charge so
long as the validity thereof shall be contested in good faith and by
appropriate legal proceedings.

**Employment of
Consulting Engineers.**
  SECTION 706. The Authority covenants and agrees that so long as
any 1947 Indenture Bonds are outstanding it will, for the purpose of
performing and carrying out the duties imposed on the Consulting
Engineers by this Agreement, employ such Consulting Engineers as are
employed under Section 704 of the 1947 Indenture, and after the 1947
Indenture Bonds have been paid or provision has been made for their
payment and the release of the 1947 Indenture and so long as any bonds
are outstanding under this Agreement, it will employ an independent
engineer or engineering firm or corporation having a wide and favor-
able repute in the United States for skill and experience in the con-

USB_9019MOTION_0000074

65

struction and operation of electric systems. No engineer or engineering firm shall be employed as Consulting Engineers under this Agreement, except with the written approval of the Trustee. Except for fees and expenses incurred under the provisions of Section 403 of this Agreement, the cost of employing Consulting Engineers shall be treated as a part of the cost of operation and maintenance of the System.

It shall be the duty of the Consulting Engineers to prepare and file with the Authority and with the Trustee on or before the 1st day of May in each year a report setting forth their recommendations as to any necessary or advisable revisions of rates and charges and such other advices and recommendations as they may deem desirable. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, it shall be the duty of the Consulting Engineers to include in such report their recommendations as to the amount that should be deposited monthly during the ensuing fiscal year to the credit of the Reserve Maintenance Fund for the purposes set forth in Section 512 of this Agreement.

The Authority further covenants that the Consulting Engineers shall at all times have free access to all properties of the System and every part thereof for the purposes of inspection and examination, and that its books, records and accounts may be examined by the Consulting Engineers at all reasonable times.

SECTION 707. The Authority covenants that it will at all times carry insurance, in a responsible insurance company or companies authorized and qualified under the laws of Puerto Rico to assume the risk thereof, covering such properties belonging to the System as are customarily insured, and against loss or damage from such causes as are customarily insured against, by companies engaged in similar business. <span>Insurance.</span>

All such policies shall be for the benefit of the Authority, shall be made payable to the Authority and shall be deposited with the Treasurer, and the Treasurer shall have the sole right to receive the proceeds of such policies and to collect and receipt for claims thereunder. The proceeds of any and all such insurance shall be deposited by the Treasurer in the name of the Authority in a Depositary.

The Authority covenants that, immediately after any loss or damage to any properties of the System resulting from any cause, whether or not such loss or damage shall be covered by insurance, it will cause

USB 9019MOTION 0000075

Section 707

66

its engineers to prepare plans and specifications for repairing, replacing or reconstructing (either in accordance with the original or a different design) the damaged or destroyed property, and that it will forthwith commence and diligently prosecute the repair, replacement or reconstruction of the damaged or destroyed property unless it shall determine that the repair, replacement or reconstruction of such property is not essential to the efficient operation of the System.

The proceeds of all insurance policies referred to in this Section shall be available for, and shall to the extent necessary be applied to, the repair, replacement or reconstruction of the damaged or destroyed property, and shall be disbursed in the manner provided by Section 402 of this Agreement for disbursements from the Construction Fund. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, if such proceeds are more than sufficient for such purpose, the balance remaining shall be deposited to the credit of the Renewal and Replacement Fund. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such balance shall be deposited to the credit of the Redemption Account in the Sinking Fund or, at the option of the Authority, to the credit of the Construction Fund. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, if such proceeds shall be insufficient for such purpose, the deficiency may be supplied, first, out of moneys in the General Reserve Fund under the 1947 Indenture, and second, out of moneys in the Renewal and Replacement Fund. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such deficiency may be supplied out of any moneys held for the credit of the Reserve Maintenance Fund or from any other moneys of the Authority available for such purpose.

Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the proceeds of any insurance not applied within eighteen (18) months after their receipt by the Treasurer to repairing, replacing or reconstructing the damaged or destroyed property, unless the Authority shall be prevented from so doing because of conditions beyond its control, or unless the holders of fifty-one per centum (51%) in aggregate principal amount of all 1947 Indenture Bonds then outstanding

USB_9019MOTION_0000076

Section 710

67

shall otherwise direct, shall be deposited to the credit of the Renewal and Replacement Fund. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such proceeds shall be deposited to the credit of the Redemption Account in the Sinking Fund or, at the option of the Authority, to the credit of the Construction Fund, unless the Authority shall be prevented from so doing because of conditions beyond its control, or unless the holders of fifty-one per centum (51%) in aggregate principal amount of all bonds then outstanding under this Agreement shall otherwise direct.

SECTION 708. All insurance policies shall be open to the inspection of the bondholders and their representatives at all reasonable times. The Treasurer of the Authority is hereby authorized to demand, collect, sue and receipt for the insurance money which may become due and payable under any policies payable to the Authority.

*Inspection of insurance policies.*

SECTION 709. The Authority covenants and agrees that, so long as any of the bonds secured hereby shall be outstanding, none of the gross revenues of the System will be used for any purpose other than as provided in the 1947 Indenture and this Agreement, and that no contract or contracts will be entered into or any action taken by which the rights of the Trustee or of the bondholders might be impaired or diminished.

*No inconsistent action.*

SECTION 710. The Authority covenants that its accounts will be kept according to standard practices for public utility systems similar to the properties and business of the Authority and applicable in such circumstances, and in such manner as appropriately to segregate, in so far as advisable, the accounts in respect of the different classes of its operations, projects, undertakings and activities, that it will keep accurate records and accounts of all items of cost and expenditures relating to the System and to each integral unit of the System, the Revenues collected and the application of the Revenues, and the number of consumers, and that it will keep such records and accounts with respect to its physical properties in such manner that it will be possible at all times to identify both the amounts and the items of all additions and retirements.

*Accurate records.*

USB_9019MOTION 0000077

Section 710

68

**Monthly reports.**

The Authority further covenants that at least once each month it will cause to be filed with the Trustee and the Consulting Engineers copies of any revisions of the rate schedules during the preceding calendar month and a report, signed by the Executive Director, setting forth the following:

(a) a separate income and expense statement for Revenue Fund purposes of the System for the preceding calendar month and the twelve (12) months' period ending with such month;

(b) a statement for the preceding calendar month and for the fiscal year to date of all deposits and transfers to the credit of and withdrawals from each special fund and account created under the provisions of this Agreement, showing the balance to the credit of each such fund or account;

(c) a statement of the amount of bonds issued, paid, purchased or redeemed during the preceding calendar month;

(d) a balance sheet as of the end of the preceding calendar month;

(e) the amounts on deposit at the end of the preceding calendar month in each bank or trust company; and

(f) the amounts of the proceeds received during the preceding calendar month from any sales of property pursuant to Section 712 of this Article.

**Annual audits.**

The Authority further covenants that in the first month of each fiscal year it will cause an audit to be made of its books and accounts pertaining to the System by an independent firm of certified public accountants of suitable experience and responsibility and widely known in the United States, to be chosen by the Executive Director with the approval of the Trustee. Before the first day of the third month following the making of such audit, reports of such audits shall be filed with the Trustee and the Authority, and copies of such reports shall be mailed to the Consulting Engineers. Such audit reports shall set forth in respect of the preceding fiscal year the same matters as are hereinabove required for the monthly reports.

**Additional reports or audits.**

The Authority further covenants that it will cause any additional reports or audits relating to the System to be made as required by law

USB_9019MOTION_0000078

Section 712

69

or by any applicable rules or regulations of any governmental authority or of any securities exchange on which the bonds may be listed or traded, and that as often as may be requested it will furnish to the Trustee such other information concerning the System or the operation thereof as the Trustee may reasonably request. The cost of such audits shall be treated as a part of the cost of operation of the System.

SECTION 711. The Authority covenants that so long as any bonds shall be outstanding under the provisions of this Agreement it will not issue additional 1947 Indenture Bonds which mature after July 1, 2007 and except as follows:

Covenant as to additional 1947 Indenture Bonds.

(a) revenue bonds under the provisions of Section 209 of the 1947 Indenture issued to pay the cost of Improvements and sold to the Rural Electrification Administration of the United States of America; provided, however, that the aggregate principal amount of such revenue bonds issued hereafter shall not exceed $12,834,000,

(b) revenue bonds under the provisions of Section 210 of the 1947 Indenture issued for the purpose of providing working cash funds for the Authority; provided, however, that the aggregate principal amount of such revenue bonds outstanding in any fiscal year hereafter shall not exceed one-sixth (1/6) of the amount shown by the Annual Budget to be necessary for Current Expenses for such fiscal year or for the next ensuing fiscal year, whichever is greater, and

(c) revenue refunding bonds under the provisions of Section 211 of the 1947 Indenture.

SECTION 712. (a) The Authority covenants that so long as any bonds shall be outstanding under the provisions of this Agreement and except as in this Agreement otherwise permitted, it will not sell, lease or otherwise dispose of or encumber the System or any part thereof and will not create or permit to be created any charge or lien on the Revenues ranking equally with or prior to the charge or lien on the Revenues of the bonds issued under and secured by this Agreement. The Authority may, however, from time to time, sell any machinery, fixtures, apparatus, tools, instruments, or other movable property acquired by it in connection with the System, or any materials used in connection therewith, if the Authority shall determine that such articles are no longer needed or are no longer useful in connection with the construction or operation and maintenance of the System, and the proceeds

Covenant against sale or encumbrance; exceptions.

USB_9019MOTION_0000079

Section 712

70

thereof shall be applied to the replacement of the properties so sold or disposed of or shall be deposited (i) until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Renewal and Replacement Fund, and (ii) after the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Redemption Account in the Sinking Fund or the Construction Fund, at the option of the Authority.

(b) Notwithstanding the provisions of paragraph (a) of this Section, the Authority may from time to time sell or lease such other property forming part of the System as is not needed or serves no useful purpose in connection with the maintenance and operation of the System, and the proceeds of any such sale of property which is declared by resolution of the Board to be unnecessary for the System shall be deposited, so long as any 1947 Indenture Bonds are outstanding, to the credit of the Renewal and Replacement Fund or to the credit of the 1947 Reserve Account, as may be provided by such resolution, and, after the 1947 Indenture Bonds shall have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Redemption Account in the Sinking Fund or the Construction Fund, as may be provided by such resolution. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the rentals under any such lease shall be deposited to the credit of the 1947 Revenue Fund, and thereafter such rentals shall be deposited to the credit of the Revenue Fund.

(c) Notwithstanding the provisions of paragraph (a) of this Section, after the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Authority may from time to time permanently abandon the use of, sell at fair market value or lease any property forming a part of the System but only if

(1) there shall be filed with the Trustee prior to such abandonment, sale or lease a certificate, signed by the Executive Director and approved by the Consulting Engineers, stating

(A) that the Authority is not then in default in the performance of any of the covenants, conditions, agreements or provisions contained in this Agreement, and

(B) that the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months

USB_9019MOTION_0000080

next preceding the date of such certificate, after giving effect
to such abandonment, sale or lease and any replacement and
after adjustment to reflect the moneys which would have been
received if the rate schedule in effect on the date of such
certificate had been in effect throughout such twelve (12)
calendar months, are not less than one hundred twenty per
centum (120%) of the maximum aggregate Principal and
Interest Requirements for any fiscal year thereafter on ac-
count of all bonds then outstanding under the provisions of
this Agreement, and

(2) the amount held by the Trustee to the credit of the
Reserve Account in the Sinking Fund is the maximum amount
required under the provisions of Section 507 of this Agreement.

The proceeds of the sale of any property forming part of the System
under the provisions of paragraph (e) of this Section shall either
be deposited by the Authority to the credit of the Redemption Account
in the Sinking Fund or the Construction Fund, at the option of the
Authority, or shall be applied to the replacement of the property so
sold, and any property acquired as such replacement shall become
a part of the System subject to the provisions of this Agreement. The
rentals under any such lease shall be deposited to the credit of the
Revenue Fund.

## ARTICLE VIII.

### REMEDIES.

SECTION 801. In case the time for the payment of any coupon or
the interest on any registered bond without coupons shall be extended,
whether or not such extension be by or with the consent of the Author-
ity, such coupon or such interest so extended shall not be entitled in
case of default hereunder to the benefit or security of this Agreement
except subject to the prior payment in full of the principal of all bonds
then outstanding and of all coupons and interest the time for the pay-
ment of which shall not have been extended.

*Extended coupons.*

SECTION 802. Each of the following events is hereby declared an
"event of default", that is to say: If

*Events of default.*

(a) payment of the principal and of the redemption premium,
if any, of any of the bonds shall not be made when the same shall

Section 802

72

become due and payable, either at maturity or by proceedings for redemption or otherwise; or

(b) payment of any installment of interest on any of the bonds shall not be made when the same shall become due and payable; or

(c) the Authority shall for any reason be rendered incapable of fulfilling its obligations hereunder; or

(d) any part of the System necessary for its effective operation shall be destroyed or damaged and shall not be properly repaired, replaced or reconstructed; or

(e) final judgment for the payment of money shall be rendered against the Authority as a result of the ownership, control or operation of the System and any such judgment shall not be discharged within sixty (60) days from the entry thereof or an appeal shall not be taken therefrom or from the order, decree or process upon which or pursuant to which such judgment shall have been granted or entered, in such manner as to stay the execution of or levy under such judgment, order, decree or process or the enforcement thereof; or

(f) an order or decree shall be entered, with the consent or acquiescence of the Authority, for the purpose of effecting composition between the Authority and its creditors or for the purpose of adjusting the claims of such creditors pursuant to any federal or Commonwealth statute now or hereafter enacted, if the claims of such creditors are under any circumstances payable from the Revenues; or

(g) any proceeding shall be instituted, with the consent or acquiescence of the Authority, for the purpose of effecting a composition between the Authority and its creditors or for the purpose of adjusting the claims of such creditors pursuant to any federal or Commonwealth statute now or hereafter enacted, if the claims of such creditors are under any circumstances payable from the Revenues; or

(h) the Authority shall default in the due and punctual performance of any other of the covenants, conditions, agreements and provisions contained in the bonds or in this Agreement on the

USB_9019MOTION_0000082

Section 803

73

part of the Authority to be performed, including meeting any Amortization Requirement, and such default shall continue for thirty (30) days after written notice specifying such default and requiring same to be remedied shall have been given to the Authority by the Trustee, which may give such notice in its discretion and shall give such notice at the written request of the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding; or

(i) an event of default within the meaning of that term in Section 802 of the 1947 Indenture shall occur.

SECTION 803.  Upon the happening and continuance of any event of default specified in Section 802 of this Article, then and in every such case the Trustee may, and upon the written request of the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds then outstanding shall, by a notice in writing to the Authority, declare the principal of all of the bonds then outstanding (if not then due and payable) to be due and payable immediately, and upon such declaration the same shall become and be immediately due and payable, anything contained in the bonds or in this Agreement to the contrary notwithstanding; provided, however, that if at any time after the principal of the bonds shall have been so declared to be due and payable, and before the entry of final judgment or decree in any suit, action or proceeding instituted on account of such default, or before the completion of the enforcement of any other remedy under this Agreement, moneys shall have accumulated in the Sinking Fund sufficient to pay the principal of all matured bonds and all arrears of interest, if any, upon all the bonds then outstanding (except the principal of any bonds not then due and payable by their terms and the interest accrued on such bonds since the last interest payment date), and the charges, compensation, expenses, disbursements, advances and liabilities of the Trustee and all other amounts then payable by the Authority hereunder shall have been paid or a sum sufficient to pay the same shall have been deposited with the Trustee, and every other default known to the Trustee in the observance or performance of any covenant, condition, agreement or provision contained in the bonds or in this Agreement (other than a default in the payment of the principal of such bonds then due and payable only because of a declaration under this Section) shall have

*Acceleration of maturities.*

USB_9019MOTION_0000083

Section 803

74

been remedied to the satisfaction of the Trustee, then and in every such case the Trustee may, and upon the written request of the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds not then due and payable by their terms and then outstanding shall, by written notice to the Authority, rescind and annul such declaration and its consequences, but no such rescission or annulment shall extend to or affect any subsequent default or impair any right consequent thereon.

Enforcement of remedies.

SECTION 804. Upon the happening and continuance of any event of default specified in Section 802 of this Article, then and in every such case the Trustee may proceed, and upon the written request of the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding hereunder shall proceed, subject to the provisions of Section 902 of this Agreement, to protect and enforce its rights and the rights of the bondholders under applicable laws or under this Agreement by such suits, actions or special proceedings in equity or at law, or by proceedings in the office of any board or officer having jurisdiction, either for the appointment of a receiver as authorized by the Authority Act or for the specific performance of any covenant or agreement contained herein or in aid or execution of any power herein granted or for the enforcement of any proper legal or equitable remedy, as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights; provided, however, that the Trustee shall not be required to proceed for the appointment of a receiver of the System unless it shall receive the written request of the holders of not less than twenty-five centum (25%) in principal amount of the bonds then outstanding under the provisions of this Agreement.

In the enforcement of any remedy under this Agreement the Trustee shall be entitled to sue for, enforce payment of and receive any and all amounts then or during any default becoming, and at any time remaining, due from the Authority for principal, interest or otherwise under any of the provisions of this Agreement or of the bonds and unpaid, with interest on overdue payments of principal at the rate or rates of interest specified in such bonds, together with any and all costs and expenses of collection and of all proceedings hereunder and under such bonds, without prejudice to any other right or remedy of the Trustee or of the bondholders, and to recover and enforce any judgment or decree against the Authority, but solely as

USB_9019MOTION_0000084

Section 805

75

provided herein and in such bonds, for any portion of such amounts remaining unpaid and interest, costs and expenses as above provided, and to collect (but solely from moneys in the Sinking Fund and any other moneys available for such purpose) in any manner provided by law, the moneys adjudged or decreed to be payable.

SECTION 805. Anything in this Agreement to the contrary not-withstanding, if at any time the moneys in the Sinking Fund shall not be sufficient to pay the interest on or the principal of the bonds as the same shall become due and payable (either by their terms or by acceleration of maturities under the provisions of Section 803 of this Article), such moneys, together with any moneys then available or thereafter becoming available for such purpose, whether through the exercise of the remedies provided for in this Article or otherwise, shall be applied as follows:

*Pro rata application of funds.*

(a) If the principal of all the bonds shall not have become or shall not have been declared due and payable, all such moneys shall be applied

*first:* to the payment to the persons entitled thereto of all installments of interest then due and payable in the order in which such installments became due and payable and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment, ratably, accord-ing to the amounts due on such installment, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds;

*second:* to the payment to the persons entitled thereto of the unpaid principal of any of the bonds which shall have become due and payable (other than bonds called for redemp-tion for the payment of which moneys are held pursuant to the provisions of this Agreement) in the order of their due dates, with interest on the principal amount of such bonds at the respective rates specified therein from the respective dates upon which such bonds became due and payable, and, if the amount available shall not be sufficient to pay in full the principal of the bonds due and payable on any particular date, together with such interest, then to the payment first

USB 9019MOTION 0000085

Section 805

76

of such interest, ratably, according to the amount of such interest due on such date, and then to the payment of such principal, ratably, according to the amount of such principal due on such date, to the persons entitled thereto without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds; and

*third:* to the payment of the interest on and the principal of the bonds, to the purchase and retirement of bonds and to the redemption of bonds, all in accordance with the provisions of Article V of this Agreement.

(b) If the principal of all the bonds shall have become or shall have been declared due and payable, all such moneys shall be applied

*first:* to the payment to the persons entitled thereto of all installments of interest due and payable on or prior to maturity, if any, in the order in which such installments became due and payable and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment, ratably, according to the amounts due on such installment, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds, and then to the payment of any interest due and payable after maturity on the bonds, ratably, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds; and

*second:* to the payment of the principal of the bonds, ratably, to the persons entitled thereto, without preference or priority of any bond over any other bond.

(c) If the principal of all the bonds shall have been declared due and payable and if such declaration shall thereafter have been rescinded and annulled under the provisions of Section 803 of this Article, then, subject to the provisions of paragraph (b) of this Section in the event that the principal of all the bonds shall later become due and payable or be declared due and payable, the moneys remaining in and thereafter accruing to the Sinking Fund shall be applied in accordance with the provisions of paragraph (a) of this Section.

USB_9019MOTION_0000086

Section 807

77

The provisions of paragraphs (a), (b) and (c) of this Section are in all respects subject to the provisions of Section 801 of this Article.

Whenever moneys are to be applied by the Trustee pursuant to the provisions of this Section, such moneys shall be applied by the Trustee at such times, and from time to time, as the Trustee in its sole discretion shall determine, having due regard to the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future; the deposit of such moneys with the Paying Agents, or otherwise setting aside such moneys, in trust for the proper purpose shall constitute proper application by the Trustee; and the Trustee shall incur no liability whatsoever to the Authority, to any bondholder or to any other person for any delay in applying any such moneys, so long as the Trustee acts with reasonable diligence, having due regard to the circumstances, and ultimately applies the same in accordance with such provisions of this Agreement as may be applicable at the time of application by the Trustee. Whenever the Trustee shall exercise such discretion in applying such moneys, it shall fix the date (which shall be an interest payment date unless the Trustee shall deem another date more suitable) upon which such application is to be made and upon such date interest on the amounts of principal to be paid on such date shall cease to accrue. The Trustee shall give such notice as it may deem appropriate of the fixing of any such date, and shall not be required to make payment to the holder of any unpaid coupon or any bond until such coupon or such bond and all unmatured coupons, if any, appertaining to such bond shall be surrendered to the Trustee for appropriate endorsement, or for cancellation if fully paid.

SECTION 806. In case any proceeding taken by the Trustee or bondholders on account of any default shall have been discontinued or abandoned for any reason, then and in every such case the Authority, the Trustee and the bondholders shall be restored to their former positions and rights hereunder, respectively, and all rights, remedies, powers and duties of the Trustee shall continue as though no such proceeding had been taken.

*Effect of discontinuance of proceedings.*

SECTION 807. Anything in this Agreement to the contrary notwithstanding, the holders of a majority in principal amount of the bonds then outstanding hereunder shall have the right, subject to the

*Majority of bondholders may control proceedings.*

USB 9019MOTION 0000087

Section 807

78

provisions of Section 902 of this Agreement, by an instrument or concurrent instruments in writing executed and delivered to the Trustee, to direct the method and place of conducting all remedial proceedings to be taken by the Trustee hereunder, provided that such direction shall not be otherwise than in accordance with law or the provisions of this Agreement.

Restrictions upon
action by
individual bondholder.

SECTION 808. No holder of any of the bonds shall have any right to institute any suit, action or proceeding in equity or at law on any bond or for the execution of any trust hereunder or for any other remedy hereunder unless such holder previously shall have given to the Trustee written notice of the event of default on account of which such suit, action or proceeding is to be instituted, and unless also the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding shall have made written request of the Trustee after the right to exercise such powers or right of action, as the case may be, shall have accrued, and shall have afforded the Trustee a reasonable opportunity either to proceed to exercise the powers hereinabove granted or to institute such action, suit or proceeding in its or their name, and unless, also, there shall have been offered to the Trustee reasonable security and indemnity against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee shall have refused or neglected to comply with such request within a reasonable time; and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this Agreement or to any other remedy hereunder; provided, however, that notwithstanding the foregoing provisions of this Section and without complying therewith, the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds then outstanding may institute any such suit, action or proceeding in their own names for the benefit of all holders of bonds hereunder. It is understood and intended that, except as otherwise above provided, no one or more holders of the bonds hereby secured shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the security of this Agreement, or to enforce any right hereunder except in the manner herein provided, that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the

USB_9019MOTION_0000088

Section 812

79

benefit of all holders of such outstanding bonds and coupons, and that any individual right of action or other right given to one or more of such holders by law is restricted by this Agreement to the rights and remedies herein provided.

SECTION 809. All rights of action under this Agreement or under any of the bonds secured hereby, enforceable by the Trustee, may be enforced by it without the possession of any of the bonds or the coupons appertaining thereto or the production thereof at the trial or other proceeding relative thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in its name for the benefit of all of the holders of such bonds and coupons, subject to the provisions of this Agreement.

*Actions by Trustee.*

SECTION 810. No remedy herein conferred upon or reserved to the Trustee or to the holders of the bonds is intended to be exclusive of any other remedy or remedies herein provided, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder.

*No remedy exclusive.*

SECTION 811. No delay or omission of the Trustee or of any holder of the bonds to exercise any right or power accruing upon any default shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given by this Agreement to the Trustee and to the holders of the bonds, respectively, may be exercised from time to time and as often as may be deemed expedient.

*No delay or omission construed to be a waiver.*

*Repeated exercise of powers and remedies.*

The Trustee may, and upon written request of the holders of not less than a majority in principal amount of the bonds then outstanding shall, waive any default which in its opinion shall have been remedied before the entry of final judgment or decree in any suit, action or proceeding instituted by it under the provisions of this Agreement or before the completion of the enforcement of any other remedy under this Agreement, but no such waiver shall extend to or affect any other existing or any subsequent default or defaults or impair any rights or remedies consequent thereon.

*Waiver of default.*

SECTION 812. The Trustee shall mail to all registered owners of bonds at their addresses as they appear on the registration books and

*Notice of default.*

USB  9019MOTION  0000089

Section 812

80

to all bondholders of record, written notice of the occurrence of any event of default set forth in Section 802 of this Article within thirty (30) days after the Trustee shall have notice, pursuant to the provisions of Section 908 of this Agreement, that any such event of default shall have occurred. The Trustee shall not, however, be subject to any liability to any bondholder by reason of its failure to mail any such notice.

## ARTICLE IX.

### CONCERNING THE TRUSTEE.

**Acceptance of trusts.** SECTION 901. The Trustee accepts and agrees to execute the trusts imposed upon it by this Agreement, but only upon the terms and conditions set forth in this Article and subject to the provisions of this Agreement, to all of which the parties hereto and the respective holders of the bonds agree.

**Trustee entitled to indemnity.** SECTION 902. The Trustee shall be under no obligation to institute any suit, or to take any remedial proceeding under this Agreement, or to enter any appearance or in any way defend in any suit in which it may be made defendant, or to take any steps in the execution of the trusts hereby created or in the enforcement of any rights and powers hereunder, until it shall be indemnified to its satisfaction against any and all costs and expenses, outlays and counsel fees and other rea- **Trustee may act without indemnity.** sonable disbursements, and against all liability; the Trustee may, nevertheless, begin suit, or appear in and defend suit, or do anything else in its judgment proper to be done by it as such Trustee, without indemnity, and in such case the Authority shall reimburse the Trustee from Revenues for all costs and expenses, outlays and counsel fees and other reasonable disbursements properly incurred in connection **Reimbursement of Trustee.** therewith. If the Authority shall fail to make such reimbursement, the Trustee may reimburse itself from any moneys in its possession under the provisions of this Agreement and shall be entitled to a preference therefor over any of the bonds or coupons outstanding hereunder.

**Limitation on obligations and responsibilities of Trustee.** SECTION 903. The Trustee shall be under no obligation to effect or maintain insurance or to renew any policies of insurance or to inquire as to the sufficiency of any policies of insurance carried by the Authority, or to report, or make or file claims or proof of loss for, any

USB_9019MOTION_0000090

Section 905

81

loss or damage insured against or which may occur, or to keep itself informed or advised as to the payment of any taxes or assessments, or to require any such payment to be made. The Trustee shall have no responsibility in respect of the validity, sufficiency, due execution or acknowledgment by the Authority of this Agreement, or, except as to the authentication thereof, in respect of the validity of the bonds or of the coupons or the due execution or issuance thereof. The Trustee shall be under no obligation to see that any duties herein imposed upon the Authority, the Consulting Engineers, the Paying Agents, any Depositary, or any party other than itself, or any covenants herein contained on the part of any party other than itself to be performed, shall be done or performed, and the Trustee shall be under no obligation for failure to see that any such duties or covenants are so done or performed.

SECTION 904. The Trustee shall not be liable or responsible because of the failure of the Authority or of any of its employees or agents to make any collections or deposits or to perform any act herein required of the Authority or because of the loss of any moneys arising through the insolvency or the act or default or omission of any other Depositary in which such moneys shall have been deposited under the provisions of this Agreement. The Trustee shall not be responsible for the application of any of the proceeds of the bonds or any other moneys deposited with it and paid out, withdrawn or transferred hereunder if such application, payment, withdrawal or transfer shall be made in accordance with the provisions of this Agreement. The immunities and exemptions from liability of the Trustee hereunder shall extend to its directors, officers, employees and agents.

Trustee not liable for failure of Authority to act or for deposits in other banks.

SECTION 905. Subject to the provisions of any contract between the Authority and the Trustee relating to the compensation of the Trustee, the Authority shall, from the Revenues, pay to the Trustee reasonable compensation for all services performed by it hereunder and also all its reasonable expenses, charges and other disbursements and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created and the performance of its powers and duties hereunder, and, from such Revenues only, shall indemnify and save the Trustee harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder. If the Authority shall fail to make any payment required by this Section, the Trustee may make such

Compensation and indemnification of Trustee.

USB_9019MOTION 0000091

Section 905

82

payment from any moneys in its possession under the provisions of this Agreement and shall be entitled to a preference therefor over any of the bonds or coupons outstanding hereunder.

Monthly statement from Trustee.

SECTION 906. It shall be the duty of the Trustee, on or before the 10th day of each month, to file with the Authority a statement setting forth in respect of the preceding calendar month

(a) the amount withdrawn or transferred by it and the amount deposited with it on account of each Fund and Account held by it under the provisions of this Agreement,

(b) the amount on deposit with it at the end of such month to the credit of each such Fund and Account,

(c) a brief description of all obligations held by it as an investment of moneys in each such Fund and Account,

(d) the amount applied to the purchase or redemption of bonds under the provisions of Section 511 of this Agreement and a description of the bonds or portions of bonds so purchased or redeemed, and

(e) any other information which the Authority may reasonably request.

All records and files pertaining to the trusts hereunder in the custody of the Trustee shall be open at all reasonable times to the inspection of the Authority and its agents and representatives.

Trustee may rely on certificates.

SECTION 907. In case at any time it shall be necessary or desirable for the Trustee to make any investigation respecting any fact preparatory to taking or not taking any action or doing or not doing anything as such Trustee, and in any case in which this Agreement provides for permitting or taking any action, the Trustee may rely conclusively upon any certificate, requisition, opinion or other instrument required or permitted to be filed with it under the provisions of this Agreement, and any such instrument shall be conclusive evidence of such fact to protect the Trustee in any action that it may or may not take or in respect of anything it may or may not do, in good faith, by reason of the supposed existence of such fact. Except as otherwise provided in this Agreement, any request, notice, certificate or other

92

USB_9019MOTION_0000092

Section 911

83

instrument from the Authority to the Trustee shall be deemed to have been signed by the proper party or parties if signed by the Executive Director or by any officer or employee of the Authority who shall be designated by the Authority by resolution for that purpose, and the Trustee may accept and rely upon a certificate signed by the Executive Director as to any action taken by the Authority.

SECTION 908. Except upon the happening of any event of default specified in clauses (a) and (b) of Section 802 of this Agreement, the Trustee shall not be obliged to take notice or be deemed to have notice of any event of default hereunder, unless specifically notified in writing of such event of default by the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds hereby secured and then outstanding. *Notice of default.*

SECTION 909. The bank or trust company acting as Trustee under this Agreement, and its directors, officers, employees or agents, may in good faith buy, sell, own, hold and deal in any of the bonds or coupons issued under and secured by this Agreement, may join in any action which any bondholder may be entitled to take with like effect as if such bank or trust company were not the Trustee under this Agreement, may engage or be interested in any financial or other transaction with the Authority, and may maintain any and all other general banking and business relations with the Authority with like effect and in the same manner as if the Trustee were not a party to this Agreement; and no implied covenant shall be read into this Agreement against the Trustee in respect of such matters. *Trustee may deal in bonds and take action as bondholder.*

SECTION 910. The recitals, statements and representations contained herein and in the bonds (excluding the Trustee's certificate of authentication on the bonds) shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same. *Trustee not responsible for recitals.*

SECTION 911. The Trustee shall be protected and shall incur no liability in acting or proceeding, or in not acting or not proceeding, in good faith, reasonably and in accordance with the terms of this Agreement, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other *Trustee protected in relying on certain documents.*

USB_9019MOTION_0000093

Section 911

84

paper or document which it shall in good faith reasonably believe to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Agreement, or upon the written opinion of any attorney, engineer or accountant believed by the Trustee to be qualified in relation to the subject matter, and the Trustee shall be under no duty to make any investigation or inquiry as to any statements contained or matters referred to in any such instrument. The Trustee shall not be under any obligation to see to the recording or filing of this Agreement or otherwise to the giving to any person of notice of the provisions hereof.

**Resignation of Trustee.** SECTION 912. The Trustee may resign and thereby become discharged from the trusts hereby created, by notice in writing to be given to the Authority and published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, not less than sixty (60) days before such resignation is to take effect, but such resignation shall take effect immediately upon the appointment of a new Trustee hereunder, if such new Trustee shall be appointed before the time limited by such notice and shall then accept the trusts hereof.

**Removal of Trustee.** SECTION 913. The Trustee may be removed at any time by an instrument or concurrent instruments in writing executed by the holders of not less than a majority in principal amount of the bonds hereby secured and then outstanding and filed with the Authority. A facsimile copy of each such instrument shall be delivered promptly by the Authority to the Trustee. The Trustee may also be removed at any time for any breach of trust or for acting or proceeding in violation of, or for failing to act or proceed in accordance with, any provision of this Agreement with respect to the duties and obligations of the Trustee by any court of competent jurisdiction upon the application of the Authority pursuant to resolution or the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding under this Agreement.

**Appointment of successor Trustee.** SECTION 914. If at any time hereafter the Trustee shall resign, be removed, be dissolved or otherwise become incapable of acting, or

94

USB_9019MOTION_0000094

85

the bank or trust company acting as Trustee shall be taken over by any
governmental official, agency, department or board, the position of
Trustee shall thereupon become vacant. If the position of Trustee
shall become vacant for any of the foregoing reasons or for any other
reason, the Authority shall appoint a Trustee to fill such vacancy. The
Authority shall publish notice of any such appointment by it made
once in each week for four (4) successive weeks in a daily newspaper
of general circulation published in the Municipality of San Juan, Puerto
Rico, and in a daily newspaper of general circulation or a financial
journal published in the Borough of Manhattan, City and State of
New York.

At any time within one year after any such vacancy shall have
occurred, the holders of a majority in principal amount of the bonds
hereby secured and then outstanding, by an instrument or concurrent
instruments in writing, executed by such bondholders and filed with the
Authority, may appoint a successor Trustee, which shall supersede any
Trustee theretofore appointed by the Authority. Facsimile copies of
each such instrument shall be delivered promptly by the Authority to
the predecessor Trustee and to the Trustee so appointed by the bond-
holders.

If no appointment of a successor Trustee shall be made pursuant
to the foregoing provisions of this Section within ten (10) days after
the vacancy shall have occurred, the holder of any bond outstanding
hereunder or any retiring Trustee may apply to any court of competent
jurisdiction within the Commonwealth of Puerto Rico or the State of
New York to appoint a successor Trustee. Such court may thereupon,
after such notice, if any, as such court may deem proper and prescribe,
appoint a successor Trustee.

Any Trustee hereafter appointed shall be a bank or trust company
having its principal office in the Borough of Manhattan, City and State
of New York, duly authorized to exercise corporate trust powers and
subject to examination by federal or state authority, of good standing,
and having at the time of its appointment a combined capital and sur-
plus aggregating not less than Fifty Million Dollars ($50,000,000).

SECTION 915. Every successor Trustee appointed hereunder shall     Vesting of trusts in
execute, acknowledge and deliver to its predecessor, and also to the    successor Trustee.
Authority, an instrument in writing accepting such appointment here-

USB_9019MOTION_0000095

Section 915

86

under, and thereupon such successor Trustee, without any further act, shall become fully vested with all the rights, immunities, powers and trusts, and subject to all the duties and obligations, of its predecessor; but such predecessor shall, nevertheless, on the written request of its successor or of the Authority, and upon payment of the expenses, charges and other disbursements of such predecessor which are payable pursuant to the provisions of Section 905 of this Article, execute and deliver an instrument transferring to such successor Trustee all the rights, immunities, powers and trusts of such predecessor hereunder; and every predecessor Trustee shall deliver all property and moneys held by it hereunder to its successor. Should any instrument in writing from the Authority be required by any successor Trustee for more fully and certainly vesting in such Trustee the rights, immunities, powers and trusts hereby vested or intended to be vested in the predecessor Trustee, any such instrument in writing shall and will, on request, be executed, acknowledged and delivered by the Authority.

Notwithstanding any of the foregoing provisions of this Article, any bank or trust company having power to perform the duties and execute the trusts of this Agreement and otherwise qualified to act as Trustee hereunder with or into which the bank or trust company acting as Trustee may be merged, converted or consolidated, or to which the assets and business of such bank or trust company may be sold, shall be deemed the successor of the Trustee.

## ARTICLE X.

### EXECUTION OF INSTRUMENTS BY BONDHOLDERS AND PROOF OF OWNERSHIP OF BONDS.

Execution of instruments by bondholders.

SECTION 1001. Any request, direction, consent or other instrument in writing required or permitted by this Agreement to be signed or executed by bondholders may be in any number of concurrent instruments of similar tenor and may be signed or executed by such bondholders or their attorneys or legal representatives. Proof of the execution of any such instrument and of the ownership of bonds shall be sufficient for any purpose of this Agreement and shall be conclusive in favor of the Trustee with regard to any action taken by it under such instrument if made in the following manner:

Proof of execution.

(a) The fact and date of the execution by any person of any such instrument may be proved by the verification of any officer

USB_9019MOTION_0000096

Section 1101

87

in any jurisdiction who, by the laws thereof, has power to take affidavits within such jurisdiction, to the effect that such instrument was subscribed and sworn to before him, or by an affidavit of a witness to such execution. Where such execution is on behalf of a person other than an individual such verification or affidavit shall also constitute sufficient proof of the authority of the signer thereof.

(b) The fact of the holding of coupon bonds hereunder by any bondholder and the amount and the numbers of such bonds and the date of his holding the same may be proved by the affidavit of the person claiming to be such holder, if such affidavit shall be deemed by the Trustee to be satisfactory, or by a certificate executed by any trust company, bank, banker or any other depositary, wherever situated, if such certificate shall be deemed by the Trustee to be satisfactory, showing that at the date therein mentioned such person had on deposit with or exhibited to such trust company, bank, banker or other depositary the bonds described in such certificate. The Trustee may conclusively assume that such ownership continues until written notice to the contrary is served upon it. The ownership of registered bonds without coupons shall be proved by the registration books kept under the provisions of Section 206 of this Agreement. *Proof of holding of bonds.*

But nothing contained in this Article shall be construed as limiting the Trustee to such proof, it being intended that the Trustee may accept any other evidence of the matters herein stated which it may deem sufficient. Any request or consent of the holder of any bond shall bind every future holder of the same bond in respect of anything done by the Trustee in pursuance of such request or consent. *Other proof.* *Bondholders' actions bind future holders.*

Notwithstanding any of the foregoing provisions of this Section, the Trustee shall not be required to recognize any person as a holder of any bond or coupon or to take any action at his request unless such bond or coupon shall be deposited with it.

## ARTICLE XI.

### SUPPLEMENTAL AGREEMENTS.

SECTION 1101. The Authority and the Trustee may, from time to time, enter into such agreements supplemental hereto as shall not be *Supplemental agreements by Authority and Trustee.*

USB_9019MOTION_0000097

Section 1101

88

inconsistent with the terms and provisions hereof (which supplemental agreements shall thereafter form a part hereof)

(a) to cure any ambiguity, to correct or supplement any provision herein which may be inconsistent with any other provision herein, or to make any other provisions with respect to matters or questions arising under this Agreement which shall not be inconsistent with the provisions of this Agreement, provided such action shall not adversely affect the interest of the bondholders, or

(b) to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the bondholders or the Trustee, or

(c) to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of this Agreement other conditions, limitations and restrictions thereafter to be observed, or

(d) to add to the covenants and agreements of the Authority in this Agreement other covenants and agreements thereafter to be observed by the Authority or to surrender any right or power herein reserved to or conferred upon the Authority.

Notice of supplemental agreement.

At least thirty (30) days prior to the execution of any supplemental agreement for any of the purposes of this Section, the Trustee shall cause a notice of the proposed execution of such supplemental agreement to be mailed, postage prepaid, to all registered owners of bonds at their addresses as they appear on the registration books and to all bondholders of record. Such notice shall briefly set forth the nature of the proposed supplemental agreement and shall state that copies thereof are on file at the principal office of the Trustee for inspection by all bondholders. A failure on the part of the Trustee to mail the notice required by this Section shall not affect the validity of such supplemental agreement.

Modification of Agreement with consent of 60% of bondholders.

SECTION 1102. Subject to the terms and provisions contained in this Section, and not otherwise, the holders of not less than sixty per centum (60%) in aggregate principal amount of the bonds then outstanding shall have the right, from time to time, anything contained in this Agreement to the contrary notwithstanding, to consent to and

98

USB_9019MOTION_0000098

Section 1102

89

approve the execution by the Authority and the Trustee of such agree-
ment or agreements supplemental hereto as shall be deemed necessary
or desirable by the Authority for the purpose of modifying, altering,
amending, adding to, repealing or rescinding, in any particular, any
of the terms or provisions contained in this Agreement or in any sup-
plemental agreement; provided, however, that nothing herein contained    Restrictions on
shall permit, or be construed as permitting, (a) an extension of the     modifications.
maturity of the principal of or the inerest on any bond issued here-
under, or (b) a reduction in the principal amount of any bond or the
redemption premium or the rate of interest thereon, or (c) the creation
of a lien upon or a pledge of the Revenues other than the lien and
pledge created by this Agreement, or (d) a preference or priority of
any bond or bonds over any other bond or bonds, or (e) a reduction
in the aggregate principal amount of the bonds required for consent to
such supplemental agreement. Nothing herein contained, however,
shall be construed as making necessary the approval by bondholders
of the execution of any supplemental agreement as authorized in Sec-
tion 1101 of this Article.

If at any time the Authority shall request the Trustee to enter into    Notice of
any supplemental agreement for any of the purposes of this Section,     supplemental
the Trustee shall, at the expense of the Authority, cause notice of the  agreement.
proposed execution of such supplemental agreement to be published
once in each week for four (4) successive weeks in a daily newspaper
of general circulation published in the Municipality of San Juan,
Puerto Rico, and in a daily newspaper of general circulation or a
financial journal published in the Borough of Manhattan, City and
State of New York, and, on or before the date of the first publication
of such notice, the Trustee shall also cause a similar notice to be mailed,
postage prepaid, to all registered owners of bonds at their addresses
as they appear on the registration books and all bondholders of record.
Such notice shall briefly set forth the nature of the proposed supple-
mental agreement and shall state that copies thereof are on file at the
principal office of the Trustee for inspection by all bondholders. The
Trustee shall not, however, be subject to any liability to any bond-
holder by reason of its failure to mail the notice required by this Sec-
tion, and any such failure shall not affect the validity of such supple-
mental agreement when consented to and approved as provided in
this Section.

USB_9019MOTION_0000099

Section 1102

90

Whenever, at any time within one year after the date of the first publication of such notice, the Authority shall deliver to the Trustee an instrument or instruments in writing purporting to be executed by the holders of not less than sixty per centum (60%) in aggregate principal amount of the bonds then outstanding, which instrument or instruments shall refer to the proposed supplemental agreement described in such notice and shall specifically consent to and approve the execution thereof in substantially the form of the copy thereof referred to in such notice, thereupon, but not otherwise, the Trustee may execute such supplemental agreement in substantially such form, without liability or responsibility to any holder of any bond, whether or not such holder shall have consented thereto.

*Consent of holders of 60% of bonds binds all.*

If the holders of not less than sixty per centum (60%) in aggregate principal amount of the bonds outstanding at the time of the execution of such supplemental agreement shall have consented to and approved the execution thereof as herein provided, no holder of any bond shall have any right to object to the execution of such supplemental agreement, or to object to any of the terms and provisions contained therein or the operation thereof, or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Authority from executing the same or from taking any action pursuant to the provisions thereof.

Upon the execution of any supplemental agreement pursuant to the provisions of this Section, this Agreement shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Agreement of the Authority, the Trustee and all holders of bonds then outstanding shall thereafter be determined, exercised and enforced in all respects under the provisions of this Agreement as so modified and amended.

*Trustee joining in supplemental agreement.*

SECTION 1103. The Trustee is authorized to join with the Authority in the execution of any such supplemental agreement and to make the further agreements and stipulations which may be contained therein. Any supplemental agreement executed in accordance with the provisions of this Article shall thereafter form a part of this Agreement, and all of the terms and conditions contained in any such supplemental agreement as to any provision authorized to be contained therein shall be and shall be deemed to be part of the terms and

*Supplemental agreements part of this Agreement.*

USB_9019MOTION_0000100

Section 1201

91

conditions of this Agreement for any and all purposes. In case of the execution and delivery of any supplemental agreement, express reference may be made thereto in the text of any bonds issued thereafter, if deemed necessary or desirable by the Trustee.

SECTION 1104.   In each and every case provided for in this Article, the Trustee shall be entitled to exercise its discretion in determining whether or not any proposed supplemental agreement, or any term or provision therein contained, is desirable, having in view the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders, and the rights, obligations and interests of the Trustee, and the Trustee shall not be under any responsibility or liability to the Authority or to any bondholder or to anyone whomsoever for its refusal in good faith to enter into any such supplemental agreement if such agreement is deemed by it to be contrary to the provisions of this Article. The Trustee shall be entitled to receive, and shall be fully protected in relying upon, the opinion of any counsel approved by it, who may be counsel for the Authority, as evidence that any such proposed supplemental agreement does or does not comply with the provisions of this Agreement, and that it is or is not proper for it, under the provisions of this Article, to join in the execution of such supplemental agreement.

*Responsibilities of Trustee under this Article.*

*Trustee may rely upon opinion of counsel.*

## ARTICLE XII.

### DEFEASANCE.

SECTION 1201.   If, when the bonds secured hereby shall have become due and payable in accordance with their terms or otherwise as provided in this Agreement or shall have been duly called for redemption or irrevocable instructions to call the bonds for redemption shall have been given by the Authority to the Trustee, the whole amount of the principal and the interest and the premium, if any, so due and payable upon all of the bonds and coupons then outstanding shall be paid or sufficient moneys, or Government Obligations or Time Deposits secured in the manner set forth in Section 601 of this Agreement, the principal of and the interest on which when due will provide sufficient moneys, shall be held by the Trustee or the Paying Agents for such purpose under the provisions of this Agreement, and provision shall also be made for paying all other sums payable

*Release of Agreement.*

USB_9019MOTION_0000101

Section 1201

92

hereunder by the Authority, then and in that case the right, title and interest of the Trustee hereunder shall thereupon cease, determine and become void, and the Trustee in such case, on demand of the Authority, shall release this Agreement and shall execute such documents to evidence such release as may be reasonably required by the Authority, and shall turn over to the Authority or to such officer, board or body as may then be entitled by law to receive the same any surplus in any account in the Sinking Fund and all balances remaining in any other funds or accounts other than moneys held for the redemption or payment of bonds or coupons; otherwise this Agreement shall be, continue and remain in full force and effect; provided, however, that in the event Government Obligations or Time Deposits secured in the manner set forth in Section 601 of this Agreement shall be held by the Trustee as hereinabove provided, (i) in addition to the requirements set forth in Article III of this Agreement, the Trustee shall within thirty (30) days after such obligations shall have been deposited with it cause a notice signed by the Trustee to be published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, setting forth (a) the date designated for the redemption of the bonds, (b) a description of the Government Obligations so held by it and (c) that this Agreement has been released in accordance with the provisions of this Section, and (ii) the Trustee shall nevertheless retain such rights, powers and privileges under this Agreement, as may be necessary and convenient in respect of the bonds for the payment of the principal, interest and any premium for which such Government Obligations have been deposited or such Time Deposits have been made.

## ARTICLE XIII.

### MISCELLANEOUS PROVISIONS.

Successorship of Authority.

SECTION 1301. All covenants, stipulations, obligations and agreements of the Authority contained in this Agreement shall be deemed to be covenants, stipulations, obligations and agreements of the Authority to the full extent authorized or permitted by the laws of the Commonwealth of Puerto Rico, and all such covenants, stipulations, obligations and agreements shall be binding upon the successor

102

USB_9019MOTION_0000102

**Section 1303**

93

or successors thereof from time to time and upon any officer, board, body or commission to whom or to which any power or duty affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law.

No covenant, stipulation, obligation or agreement herein contained shall be deemed to be a covenant, stipulation, obligation or agreement of any present or future member, agent or employee of the Authority in his individual capacity, and neither the members of the Authority or of any other agency of the Commonwealth of Puerto Rico nor any officer thereof or of the Authority, present or future, executing the bonds shall be liable personally on the bonds or be subject to any personal liability or responsibility by reason of the issuance thereof.

The laws of the Commonwealth of Puerto Rico shall govern the construction of this Agreement, except that the rights, limitations of rights, immunities, duties and obligations of the Trustee shall be governed by the laws of the State of New York.

SECTION 1302. Any notice, demand, direction, request or other instrument authorized or required by this Agreement to be given to or filed with the Authority or the Trustee shall be deemed to have been sufficiently given or filed for all purposes of this Agreement if and when sent by first class mail: **Manner of giving notice, etc.**

to the Authority, if addressed to the Executive Director, Puerto Rico Water Resources Authority, San Juan, Puerto Rico;

to the Trustee, if addressed to it at its Corporate Trust Office, or to any successor Trustee, if addressed to it at its principal office.

SECTION 1303. Any bank or trust company with or into which any Paying Agent may be merged, converted or consolidated, or to which the assets and business of such Paying Agent may be sold, shall be deemed the successor of such Paying Agent for the purposes of this Agreement. If the position of any Paying Agent shall become vacant for any reason, the Authority shall, within thirty (30) days thereafter, appoint a bank or trust company located in the same city as Paying Agent to fill such vacancy; provided, however, that if the Authority shall fail to appoint such Paying Agent within such period, the Trustee shall make such appointment. **Successorship of Paying Agents.**

USB_9019MOTION_0000103

Section 1304

94

**Parties and bondholders alone have rights under Agreement.**

SECTION 1304. Except as herein otherwise expressly provided, nothing in this Agreement expressed or implied is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto and the holders of the bonds issued under the provisions of this Agreement any right, remedy or claim, legal or equitable, under or by reason of this Agreement or any provisions hereof, this Agreement and all its provisions being intended to be and being for the sole and exclusive benefit of the parties hereto and the holders from time to time of the bonds issued hereunder.

**Effect of partial invalidity.**

SECTION 1305. In case any one or more of the provisions of this Agreement or of the bonds or coupons issued hereunder shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Agreement or of the bonds or coupons, but this Agreement and the bonds and coupons shall be construed and enforced as if such illegal or invalid provision had not been contained therein. In case any covenant, stipulation, obligation or agreement contained in the bonds or in this Agreement shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement shall be deemed to be the covenant, stipulation, obligation or agreement of the Authority to the full extent permitted by law.

**Substitute publication.**

SECTION 1306. If, because of the temporary or permanent suspension of publication of any newspaper or financial journal or for any other reason, the Trustee or the Authority shall be unable to publish in a newspaper or financial journal any notice required to be published by the provisions of this Agreement, the Trustee or the Authority, as the case may be, shall give such notice in such other manner as in its judgment shall most effectively approximate such publication thereof, and the giving of such notice in such manner shall for all purposes of this Agreement be deemed to be compliance with the requirement for the publication thereof.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to bondholders of record when such notice is required to be given pursuant to any provision of this Agreement, any manner of giving notice as shall be satisfactory to the Trustee and the Authority shall be deemed to be a sufficient giving of such notice.

104

Section 1309

95

SECTION 1307. Nothing in this Agreement expressed or implied shall be construed as preventing the Authority, if then authorized or permitted by law, from financing the acquisition or construction of any land, building, structure or other facility by the issuance of obligations which are not issued under or secured by the provisions of this Agreement or the 1947 Indenture or by entering into any financing agreement or agreements relating to any such facility pursuant to which the Authority has the right to the use, occupancy and possession of such facility and is required to make periodic payments in an aggregate amount substantially equal to the cost of such facility and reasonable financing charges, regardless of the disposition of title to such facility. *Other funds not prohibited.*

SECTION 1308. Any headings preceding the texts of the several articles hereof, and any table of contents appended to copies hereof, shall be solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect. *Headings, etc. not part of Agreement.*

SECTION 1309. This Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument. *Multiple counterparts.*

105

USB_9019MOTION_0000105

96

In Witness Whereof, Puerto Rico Water Resources Authority has caused this Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary and First National City Bank has caused this Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Associate Trust Officers, all as of the day and year first above written.

**Execution by Authority.**

PUERTO RICO WATER RESOURCES AUTHORITY

By  /s/   JULIO NEGRONI
*Executive Director*

[SEAL]

Attest:

/s/   R. BETANCOURT
*Secretary*

**Execution by Trustee.**

FIRST NATIONAL CITY BANK

By  /s/   D. C. MCNEILL
*Vice President*

[SEAL]

Attest:

/s/   J. A. OLIVE
*Associate Trust Officer*

USB_9019MOTION_0000106

97

STATE OF NEW YORK } ss.
COUNTY OF NEW YORK

On the 7th day of January, 1974, before me personally came JULIO NEGRONI, to me known, who, being by me duly sworn, did depose and say that he resides at 269 Georgetown St., San Juan, Puerto Rico; that he is the Executive Director of Puerto Rico Water Resources Authority; and that he signed his name to the above instrument by order of the Authority, the Authority being the public corporation described in and which executed the above instrument.

Acknowledgment by Authority.

/s/   GUNDARS APERANS
*Notary Public*
GUNDARS APERANS
Notary Public, State of New York
No. 31-5091740
Qualified in New York County
Commission Expires March 30, 1974

[SEAL]

STATE OF NEW YORK } ss.
COUNTY OF NEW YORK

On the 7th day of January, 1974, before me personally came D. C. McNEILL, to me known, who, being by me duly sworn, did depose and say that he resides at 33 Ferris Hill Rd., New Canaan, Conn.; that he is a Vice President of First National City Bank, the banking association described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of said banking association; that it was so affixed by authority of said banking association; and that he signed his name thereto by like authority.

Acknowledgment by Trustee.

/s/   GUNDARS APERANS
*Notary Public*
GUNDARS APERANS
Notary Public, State of New York
No. 31-5091740
Qualified in New York County
Commission Expires March 30, 1974

[SEAL]

USB_9019MOTION_0000107

USB_9019MOTION_0000108

SUPPLEMENTAL AGREEMENT

THIS SUPPLEMENTAL AGREEMENT, dated for convenience
of reference as of the 1st day of August, 1983, by and between

PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico
(formerly Puerto Rico Water Resources Authority), and

CITIBANK, N.A.,

a national banking association existing under the laws of the
United States of America (formerly First National City Bank) and
having its principal office in the Borough of Manhattan, City and
State of New York, which is authorized under such laws to exer-
cise corporate trust powers and is subject to examination by
federal authority, Trustee under the Trust Agreement hereinafter
referred to (hereinafter sometimes called the "Trustee"),

W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (herein-
after sometimes called the "Authority") and the Trustee have
heretofore caused to be executed and delivered a Trust Agreement
dated as of January 1, 1974 (the "Agreement"), for the purpose of
fixing and declaring the terms and conditions upon which revenue
bonds are to be issued, authenticated, delivered, secured and
accepted by all persons who shall from time to time be or become
holders thereof, and in order to secure the payment of all the
bonds at any time issued and outstanding thereunder, and the
interest thereon, according to their tenor, purport and effect;
and

WHEREAS, Section 1101 of the Agreement provides that
the Authority and the Trustee may, from time to time and at any
time, enter into such agreements supplemental thereto as shall
not be inconsistent with the terms and provisions thereof (which
supplemental agreements shall thereafter form a part of the Agree-
ment) to cure any ambiguity, to make any provision with respect
to matters or questions arising under the Agreement which shall
not be inconsistent with the provisions of the Agreement, pro-
vided such action shall not adversely affect the interest of the
bondholders, or to grant to or confer upon the Trustee for the
benefit of the bondholders any additional rights, remedies,
powers, authority or security that may lawfully be granted or
conferred upon the Trustee; and

USB_9019MOTION_0000109

WHEREAS, the Authority has determined that it is desirable to modify certain provisions of the Agreement to provide for the issuance of bonds in the form of registered bonds without coupons only; and

WHEREAS, the Trustee has received an opinion of counsel that it is proper for the Trustee to join in the execution hereof; and

WHEREAS, the execution and delivery of this Supplemental Agreement have been duly authorized by resolution of the Authority and the Authority has requested the Trustee to join with it in the execution of this Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1. The Agreement is hereby amended in the following respects:

A. The first sentence of Section 202 is changed to read as follows:

"Section 202. The definitive bonds are issuable as coupon bonds or as registered bonds without coupons or both."

B. The second paragraph of Section 205 is changed to to read as follows:

"Registered bonds without coupons, upon surrender thereof at the principal office of the Trustee, together with an assignment duly executed by the registered owner or his attorney or legal representative

-2-

USB_9019MOTION_0000110

in such form as shall be satisfactory to the Trustee, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of coupon bonds of the same Series (if authorized for such Series) and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, and bearing interest at the same rate, and in either case, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the registered bonds without coupons surrendered for exchange."

C.  The last sentence of the first paragraph of Section 206 is changed to read as follows:

"Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for such bond a new registered bond or bonds without coupons registered in the name of the transferee, of any denomination or denominations authorized by this Agreement, or, at the option of the transferee and if coupon bonds are authorized for the same Series as such bond, coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in an aggregate principal amount equal to the principal amount of such registered bond without coupons, of the same Series and maturity and bearing interest at the same rate."

D.  The second sentence of the second paragraph of Section 208 is changed to read as follows:

"The bonds of each Series issued under the provisions of this Section shall be designated 'Puerto Rico Electric Power Authority Power Revenue Bonds, Series ....' (inserting a year or a letter to identify the particular Series), shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and the term bonds of

-3-

USB_9019MOTION_0000111

such Series shall have such Amortization Requirements,
all as may be provided by resolution or resolutions
adopted by the Board prior to the issuance of such
bonds."

E.  The second sentence of the second paragraph of Sec-
tion 209 is changed to read as follows:

"The bonds of each Series issued under the provisions
of this Section shall be designated 'Puerto Rico Elec-
tric Power Authority Power Revenue Bonds, Series ....'
(inserting a year or a letter to identify the particu-
lar Series), shall be issued in such form, shall be
in such denominations, shall be dated, shall bear in-
terest at a rate or rates not exceeding the maximum
rate then permitted by law, shall be stated to mature
on July 1 as to term bonds or annually on January 1
or July 1 or semi-annually on January 1 and July 1
as to serial bonds, in such year or years, not later
than fifty (50) years from their date, shall be made
redeemable at such times and prices (subject to the
provisions of Article III of this Agreement), shall
be numbered, shall have such Paying Agents and the
term bonds of such Series shall have such Amortiza-
tion Requirements, all as may be provided by resolu-
tion or resolutions adopted by the Board prior to
the issuance of such bonds."

F.  The last sentence of the first paragraph of Sec-
tion 210 is changed to read as follows:

"Such revenue refunding bonds shall be designated,
shall be issued in such form, shall be dated and shall
bear interest at a rate not exceeding the maximum
rate then permitted by law, all as may be provided
by resolution or resolutions adopted by the Board prior
to the issuance of such bonds."

G.  The third sentence of the second paragraph of Sec-
tion 210 is changed to read as follows:

"Such revenue refunding bonds shall be designated,
shall be issued in such form, shall be in such de-
nominations, shall be dated, shall bear interest at
a rate or rates not exceeding the maximum rate then
permitted by law, shall be stated to mature on July
1 as to term bonds or annually on January 1 or July
1 or semi-annually on January 1 and July 1 as to serial
bonds in such year or years, not later than fifty (50)
years from their date, and shall be made redeemable
at such times and prices (subject to the provisions

-4-

USB_9019MOTION_0000112

of Article III of this Agreement), shall be numbered, shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds."

H.   The second paragraph of Section 301 is changed to read as follows:

"If less than all of the bonds of any one maturity of a Series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redemmed from such Series and maturity shall be selected by the Trustee in such manner as the Trustee in its discretion may determine; provided, however, that the portion of any registered bond without coupons to be redeemed shall be in the principal amount equal to the lowest denomination authorized for such Series or some multiple thereof, and that, in selecting bonds for redemption, the Trustee shall treat each registered bond without coupons as representing that number of bonds which is obtained by dividing the principal amount of such registered bond without coupons by the amount of such lowest authorized denomination."

I.   After the first sentence of Section 302, the following is inserted:

"If all the bonds to be redeemed are issuable only as registered bonds without coupons, such notice of redemption shall be given by mail and the Trustee shall not be required to publish such notice of redemption."

J.   In Section 303 the word "published" is changed to "given".

K.   Section 305 is changed to read as follows:

"Section 305.   In case part but not all of an outstanding registered bond without coupons shall be selected for redemption, the registered owner thereof or his attorney or legal representative shall present and surrender such bond to the Trustee for payment of the principal amount thereof so called for redemption, and the Authority shall execute and the Trustee shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the registered bond without coupons so surrendered, either coupon bonds (if authorized for the

-5-

USB_9019MOTION_0000113

Series of such registered bond) or a registered bond
or bonds without coupons, at the option of such regis-
tered owner or his attorney or legal representative,
of the same Series and maturity, bearing interest at
the same rate and of any denomination or denominations
authorized by this Agreement."

L.   The last paragraph of Section 701 is changed to
read as follows:

"The Authority further covenants that so long as
any bonds issuable as coupon bonds shall be outstand-
ing it will cause offices or agencies where the coupon
bonds and coupons may be presented for payment to be
maintained in the Borough of Manhattan, City and State
of New York."

2.   The recitals, statements and representations con-
tained herein shall be taken and construed as made by and on the
part of the Authority and not by the Trustee, and the Trustee as-
sumes and shall be under no responsibility for the correctness of
the same.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority
has caused this Supplemental Agreement to be executed by its Execu-
tive Director and its corporate seal to be impressed hereon and
attested by its Secretary or an Assistant Secretary and Citibank,
N.A. has caused this Supplemental Agreement to be executed in its
behalf by one of its Assistant Vice Presidents and its corporate
seal to be impressed hereon and attested by one of its Trust Of-
ficers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By _____
            Executive Director

(SEAL)

Attest:

_____
            Secretary

CITIBANK, N.A., as Trustee

By _____
            Assistant Vice President

(SEAL)

Attest:

_____
            Trust Officer

-6-<sup>114</sup>

COMMONWEALTH OF PUERTO RICO )
                            ) ss.:
MUNICIPALITY OF SAN JUAN    )

On the 21st day of September, in the year 1983, before
me personally came Wilfredo Marcial González to me known, who, being
by me duly sworn, did depose and say that he resides in the Munici-
pality of San Juan , Puerto Rico; that he is the Executive Di-
rector of Puerto Rico Electric Power Authority, the body corporate
described in and which executed the above instrument; that he
knows the seal thereof; that the seal affixed to said instrument
is the corporate seal of Puerto Rico Electric Power Authority;
that it was so affixed by order of the Governing Board of Puerto
Rico Electric Power Authority; and that he signed his name there-
to by like order.

José F. Irizarry González
NOTARY PUBLIC

Affidavit #12,632 (copy)

(SEAL)


STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

On the 28th day of September, in the year 1983, before
me personally came J. A. OLIVE , to me known, who, being by
me duly sworn, did depose and say that he resides at
Mamaroneck, N.Y. ; that he is an Assistant
Vice President of Citibank, N.A., the banking corporation de-
scribed in and which executed the above instrument; that he knows
the seal of said corporation; that the seal affixed to said
instrument is the corporate seal of said corporation; that it was
so affixed by authority of the Board of Directors of said corpora-
tion; and that he signed his name thereto by like authority.

Patricia C. Tampol

My commission expires _____

PATRICIA C. TAMPOL
Notary Public, State of New York
No. 01TA4659889
Qualified in Kings County
Certificate Filed in New York County
Term Expires March 30, 1985

(SEAL)

USB_9019MOTION_0000115

(4)

## CERTIFICATE OF SECRETARY OF THE AUTHORITY
## AS TO SECOND SUPPLEMENTAL AGREEMENT

I, ANGEL RAUL VEGA, Secretary of Puerto Rico Electric Power Authority, DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Second Supplemental Agreement, dated as of February 1, 1988, supplementing the provisions of the Trust Agreement dated as of January 1, 1974 by and between the Authority and Citibank, N.A., as Trustee, which Second Supplemental Agreement was duly executed and delivered on the date hereof by the Authority and said Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand this 17th day of February, 1988.


_____
                    Secretary
Puerto Rico Electric Power Authority

Confidential
Jianli Montserrat
Various Exchange Whitmore Trust
Aug 01, 2017 15:28

## SECOND SUPPLEMENTAL AGREEMENT


THIS SECOND SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of February, 1988, by and between

PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

CITIBANK, N.A.,

a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, it is desirable to supplement the Agreement so as (1) to provide the Authority with the ability to utilize and take advantage of new financing techniques which are from time to time developed and to provide the Authority with the ability to issue different types of bonds, as may be marketable from time to time, including, without limitation, variable rate bonds, put bonds, capital appreciation bonds, extendible maturity bonds and other types of bonds which may from time to time be created, subject to any limitations under the laws of Puerto Rico, and, in this regard, to supplement and amend the definition of Principal and Interest Requirements, provisions for interest payment periods, provisions for additional parity bonds, the flow of monies from the Bond Service Account and Redemption Account established under the Agreement, the events of default and the provisions for

Confidential
Jianli Montserrat
Various Exchange Whitmore Trust
Aug 01, 2017 15:28

USB_9019MOTION_0000117

defeasance of bonds; and (2) to clarify the provisions for the advance refunding of bonds and issuance of revenue refunding bonds, and in this regard, to provide for the funding of a portion of the Reserve Account established under the Agreement with proceeds of revenue refunding bonds; and

WHEREAS, the Trustee has received an opinion of counsel that this Second Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Second Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Second Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Second Supplemental Agreement to be published and mailed as required by the Agreement, and the holders of at least sixty per cent (60%) in aggregate principal amount of the outstanding bonds have specifically consented to and approved the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Second Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Second Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SECOND SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Second Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.    The Agreement is hereby amended and supplemented in the following respects:

- 2 -

USB_9019MOTION_0000118

A.    Section 101 is hereby supplemented by the addition of a definition of "Accreted Value" before the definition of "Agreement ", as follows:

The term "Accreted Value" shall mean with respect to any Capital Appreciation Bonds (i) as of any Valuation Date, the amount set forth for such date in the resolution authorizing such Capital Appreciation Bonds and (ii) as of any date other than a Valuation Date, the sum of (a) the Accreted Value on the preceding Valuation Date and (b) the product of (1) a fraction, the numerator of which is the actual number of days having elapsed from the preceding Valuation Date and the denominator of which is the actual number of days from such preceding Valuation Date to the next succeeding Valuation Date and (2) the difference between the Accreted Values for such Valuation Dates.

B.    Section 101 is hereby supplemented by the addition of a definition of "Capital Appreciation Bonds" after the definition of "bonds", as follows:

The term "Capital Appreciation Bonds" shall mean any bonds hereafter issued as to which interest is payable only at the maturity or prior redemption of such bonds.  For the purposes of (i) receiving payment of the redemption price if a Capital Appreciation Bond is redeemed prior to maturity to the extent provided in the resolution authorizing the Capital Appreciation Bonds, or (ii) receiving payment of a Capital Appreciation Bond if the principal of all bonds is declared immediately due and payable following an event of default as provided in Section 802 of this Agreement or (iii) computing the principal amount of bonds held by the registered owner of a Capital Appreciation Bond in giving to the Authority or the Trustee any notice, consent, request, or demand pursuant to this Agreement for any purpose whatsoever, the principal amount of a Capital Appreciation Bond shall be deemed to be its Accreted Value.  In the case of Capital Appreciation Bonds that are convertible to bonds with interest payable prior to maturity or prior redemption of such bonds, the term "Capital Appreciation Bonds" shall be limited to the period prior to such conversion, and after such conversion, the bonds shall be viewed as any other bonds of the same type for purposes of this Agreement.

C.    Section 101 is hereby supplemented by the addition of a definition of "Designated Maturity Bonds" before the definition of "Executive Director", as follows:

The term "Designated Maturity Bonds" shall mean the indebtedness incurred by the Authority under the terms of a separate trust agreement or resolution, which indebtedness

- 3 -

USB_9019MOTION_0000119

has a maturity of at least ten (10) years and is secured, as
to the unamortized principal thereof, on a subordinate basis
to the bonds and for which (i) no amortization of principal
has been established or (ii) the aggregate amount of the
amortized principal that has been established is less than
the principal amount of the indebtedness; provided that
interest on said indebtedness and any amortized principal of
said indebtedness may be payable on a parity, respectively,
with interest on bonds and Amortization Requirements on term
bonds, in which case said interest and amortized principal
shall be included in the calculation of Principal and
Interest Requirements on bonds for purposes of this Agree-
ment and shall otherwise be deemed to be, and be payable as,
interest and Amortization Requirements on bonds for purposes
of this Agreement.

D.    Section 101 is hereby supplemented by the addi-
tion of a definition of "Extendible Maturity Bonds" before the
definition of "fiscal year," as follows:

The term "Extendible Maturity Bonds" shall mean bonds
the maturities of which, by their terms, may be extended by
and at the option of the bondholder or the Authority.

E.    The definition of "Government Obligations" in
Section 101 is hereby supplemented by the addition of the clause
"including securities evidencing ownership interests in such
obligations or in specified portions thereof (which may consist
of specific portions of the principal of or interest in such
obligations)" after the words "United States Government," in the
third line.

F.    Section 101 is hereby supplemented by the addi-
tion of a definition of "Prerefunded Municipals" before the defi-
nition of "Principal and Interest Requirements," as follows:

The term "Prerefunded Municipals" shall mean any bonds
or other obligations of any state of the United States of
America or Puerto Rico or of any agency, instrumentality or
local governmental unit of any such state or Puerto Rico (a)
which are (x) not callable prior to maturity or (y) as to
which irrevocable instructions have been given to the
trustee of such bonds or other obligations by the obligor to
give due notice of redemption and to call such bonds or
other obligations for redemption on the date or dates speci-
fied in such instructions, (b) which are secured as to prin-
cipal, redemption premium, if any, and interest by a fund
consisting only of cash or Government Obligations or Time
Deposits, secured in the manner set forth in Section 601 of
this Agreement, which fund may be applied only to the pay-
ment of such principal of and interest and redemption pre-

- 4 -

USB_9019MOTION_0000120

mium, if any, on such bonds or other obligations on the maturity date or dates thereof or the specified redemption date or dates pursuant to such irrevocable instructions, as appropriate, and (c) as to which the principal of and interest on the Government Obligations or Time Deposits secured in the manner set forth in Section 601 of this Agreement, which have been deposited in such fund, along with any cash on deposit in such fund are sufficient to pay principal of and interest and redemption premium, if any, on the bonds or other obligations on the maturity date or dates thereof or on the redemption date or dates specified in the irrevocable instructions referred to in clause (a) of this paragraph, as appropriate.

G.   The definition of "Principal and Interest Requirements" in Section 101 is hereby supplemented by the addition of three paragraphs at the end thereof to read, as follows:

"For purposes of determining the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502, the maximum Principal and Interest Requirements for purposes of Section 704 and the maximum aggregate Principal and Interest Requirements for purposes of Section 712 of this Agreement, the interest rate on Variable Rate Bonds shall be assumed to be one hundred ten percent (110%) of the greater of (i) the average interest rate on such Variable Rate Bonds during the twelve months ending with the month preceding the date of calculation; or such shorter period that such Variable Rate Bonds shall have been outstanding under this Agreement, or (ii) the rate of interest on such Variable Rate Bonds on the date of calculation.   For purposes of determining the maximum aggregate Principal and Interest Requirements and the maximum Principal and Interest Requirements for purposes of Sections 208, 209 and 210 of this Agreement, the interest rate on Variable Rate Bonds outstanding or proposed to be issued on the date of calculation shall be determined in accordance with the formula in the previous sentence.   If Variable Rate Bonds are payable at the option of the Bondholder and the source for said payment is a credit or liquidity facility, the "put" date or dates shall be ignored and the stated dates for Amortization Requirements and principal payments thereof shall be used for purposes of this calculation.

For purposes of determining the above requirements in the case of Put Bonds, the "put" dates or dates shall be ignored if the source for payment of said put is a credit or liquidity facility and the stated dates for Amortization Requirements and principal payments shall be used.   For purposes of determining the above requirements in the case of Extendible Maturity Bonds, the bonds shall be deemed to

- 5 -

mature on the later of the stated maturity date or the date to which such stated maturity date has been extended. For purposes of determining the above requirements in the case of Capital Appreciation Bonds, the principal and interest portions of the Accreted Value of Capital Appreciation Bonds becoming due at maturity or by virtue of an Amortization Requirement shall be included in the calculations of accrued and unpaid interest and principal requirements in such manner and during such period of time as is specified in the resolution authorizing such Capital Appreciation Bonds.

Principal and Interest Requirements on bonds shall be deemed to include the amount required to pay interest on outstanding Designated Maturity Bonds and any amortized principal of said Designated Maturity Bonds for any fiscal year, if said interest and amortized principal are payable, under the trust agreement or resolution providing for said Designated Maturity Bonds, on a parity with interest and Amortization Requirements on bonds.

H.   Section 101 is hereby supplemented by the addition of a definition of "Put Bonds" before the definition of "Redemption Account," as follows:

The term "Put Bonds" shall mean bonds, other than Variable Rate Bonds, which by their terms may be tendered by and at the option of the holder thereof for payment prior to the stated maturity thereof.

I.   The definition of "serial bonds" in Section 101 is hereby supplemented by the addition of the clause "or bonds which are otherwise designated serial bonds in a resolution of the Board adopted prior to the issuance of such bonds" after the word "installments" in the second line.

J.   Section 101 is hereby supplemented by the addition of a definition of "Valuation Date" after the definition of "Trustee", as follows:

The term "Valuation Date" shall mean with respect to any Capital Appreciation Bonds the date or dates set forth in the resolution authorizing such bonds on which Accreted Values are assigned to the Capital Appreciation Bonds.

K.   Section 101 is hereby supplemented by the addition of a definition of "Variable Rate Bonds" after the definition of "Valuation Date", as follows:

The term "Variable Rate Bonds" shall mean bonds issued with a variable, adjustable, convertible or similar interest rate which is not fixed in percentage at the date of issue

- 6 -

for the term thereof, and which may or may not be convert-
ible to a fixed interest rate for the remainder of their
term.

L.     Section 202 is supplemented by the addition of
the following sentence:

"The form of bonds may be changed as specified in said
resolution or resolutions to reflect appropriate provisions
for the issuance of bonds with interest payable other than
semi-annually, and may reflect, without limitation, provi-
sions for Capital Appreciation Bonds, Variable Rate Bonds,
Put Bonds, Extendible Maturity Bonds and other types of
bonds, subject to any limitations under the laws of Puerto
Rico at the time of the issuance of the particular bonds.

M.     The first paragraph of Section 203 is hereby
supplemented by the addition of a last sentence as follows:

"Notwithstanding the previous sentence, bonds may bear
interest payable other than semi-annually, as may be provid-
ed by the resolution or resolutions authorizing the issuance
of particular bonds, and bonds may include, without limita-
tion, Capital Appreciation Bonds, Variable Rate Bonds, Put
Bonds, Extendible Maturity Bonds and other types of bonds,
subject to any limitations under the laws of Puerto Rico at
the time of the issuance of the particular bonds.

N.     Section 208 is hereby supplemented by the addi-
tion of a paragraph to be included after the second paragraph in
said Section, as follows:

"Prior to the issuance of Variable Rate Bonds, the
Board shall adopt a resolution specifying, without limita-
tion, the interest rate calculation methods and any conver-
sion features, and any credit or liquidity facility which
may be drawn upon to make principal and interest payments on
the Variable Rate Bonds. The Variable Rate Bonds may pro-
vide that the owner of any such Bond may demand payment of
principal and interest within a stated period after deliver-
ing notice to a designated agent for the Authority and pro-
viding a copy of the notice with the tender of the Variable
Rate Bond to such agent. The designated agent for the
Authority, in accordance with the terms of a remarketing or
replacement agreement, may provide for the resale or
redelivery of the Variable Rate Bonds on behalf of the
Authority at a price provided for in the agreement. If the
Variable Rate Bonds shall not be resold or redelivered with-
in a stated period, the agent for the Authority may be
authorized to draw upon a previously executed credit or
liquidity facility of one or more banks or other financial

- 7 -

USB_9019MOTION_0000123

or lending institutions for payment of interest and princi-
pal for a particular series of Variable Rate Bonds to which
such credit or liquidity facility shall pertain.  The par-
ticular form or forms of such demand provisions, the period
or periods for payment of principal and interest after
delivery of notice, the appointment of the agent for the
Authority, the terms and provisions for the remarketing or
replacement agreement, and the terms and provisions of the
credit or liquidity facility, including the terms of any
lien on Revenues in connection with the credit or liquidity
facility not inconsistent with Section 712 hereof, shall be
as designated by a resolution of the Board pertaining to the
Variable Rate Bonds to which such terms and provisions are
applicable prior to the issuance thereof.  Prior to the
issuance of Put Bonds, the Board shall adopt a resolution
which may provide for some of the above terms and provi-
sions.  Prior to the issuance of Extendible Maturity Bonds,
the Board shall adopt a resolution which shall set forth the
terms and conditions of the exercise by the bondholders or
the Authority of any option to extend the maturity of said
bonds.  Prior to the issuance of Capital Appreciation Bonds,
the Board shall specify by resolution, the Valuation Dates,
the Accreted Values on such dates, the manner in which and
the period during which principal and interest shall be
deemed to accrue on such bonds for purposes of the defini-
tion of "Principal and Interest Requirements" and the amount
of any deposit required for the Reserve Account in accor-
dance with Section 507 hereof."

        O.    Section 209 is hereby supplemented by the addi-
tion of a paragraph to be inserted after the second paragraph in
said Section, as follows:

        "Prior to the issuance of Variable Rate Bonds, the
Board shall adopt a resolution specifying, without limita-
tion, the interest rate calculation methods and any conver-
sion features, and any credit or liquidity facility which
may be drawn upon to make principal and interest payments on
the Variable Rate Bonds.  The Variable Rate Bonds may pro-
vide that the owner of any such bond may demand payment of
principal and interest within a stated period after deliver-
ing notice to a designated agent for the Authority and pro-
viding a copy of the notice with the tender of the Variable
Rate Bond to such agent.  The designated agent for the
Authority, in accordance with the terms of a remarketing or
replacement agreement, may provide for the resale or rede-
livery of the Variable Rate Bonds on behalf of the Authority
at a price provided for in the agreement.  If the Variable
Rate Bonds shall not be resold or redelivered within a
stated period, the agent for the Authority may be authorized
to draw upon a previously executed credit or liquidity

- 8 -

Confidential
Claims/Disputes
Provisional Review Documents Produced
April 30, 2017 15:53

facility of one or more banks or other financial or lending
institutions for payment of interest and principal for a
particular series of Variable Rate Bonds to which such
credit or liquidity facility shall pertain.  The particular
forms of such demand provisions, the period or periods for
payment of principal and interest after delivery of notice,
the appointment of the agent for the Authority, the terms
and provisions of the remarketing or replacement agreement,
and the terms and provisions of the credit or liquidity
facility, including the terms of any lien on Revenues in
connection with the credit or liquidity facility not incon-
sistent with Section 712 hereof, shall be as designated by a
resolution of the Board pertaining to the Variable Rate
Bonds to which such terms and provisions are applicable
adopted prior to the issuance thereof.  Prior to the issu-
ance of Put Bonds, the Board shall adopt a resolution which
may provide for some of the above terms and provisions.
Prior to the issuance of Extendible Maturity Bonds, the
Board shall adopt a resolution which shall set forth the
terms and conditions of the exercise by the bondholders or
the Authority of any option to extend the maturity of said
bonds.  Prior to the issuance of Capital Appreciation Bonds,
the Authority shall specify by resolution, the Valuation
Dates, the Accreted Values on such dates, the manner in
which and the period during which principal and interest
shall be deemed to accrue on such bonds for purposes of the
definition of "Principal and Interest Requirements" and the
amount of any deposit required for the Reserve Account in
accordance with Section 507 hereof."

          P.    Section 210 is hereby amended and supplemented
to read as follows:

          "Section 210.   If at any time the Board shall deter-
mine that the moneys in the Sinking Fund available for such
purpose will not be sufficient for paying at their maturity
the serial bonds of any Series which will mature within one
year thereafter, revenue refunding bonds of the Authority
may be issued under and secured by this Agreement, subject
to the conditions hereinafter provided in this Section, for
the purpose of providing funds for refunding such bonds and,
if deemed necessary by the Board, for paying the interest to
accrue thereon to their maturity and any expenses in connec-
tion with such refunding.  Before any bonds shall be issued
under the provisions of this paragraph the Board shall adopt
a resolution or resolutions authorizing the issuance of such
bonds, fixing the amount and the details thereof, and des-
cribing the bonds to be refunded.  Such revenue refunding
bonds shall be deemed to constitute a part of the term
bonds, if any, of such Series and shall mature at the same
time and shall be subject to redemption at the same times

Confidential
Claims/Disputes
125
Provisional Review Documents Produced
April 30, 2017 15:53

USB_9019MOTION_0000125

and prices as such term bonds or, in case all the outstanding bonds of such Series shall be serial bonds, such revenue refunding bonds shall mature on the 1st day of July in a year not earlier than one year after the last maturing installment of the bonds of such Series and not later than fifty (50) years from their date, shall be deemed to be terms bonds of such Series and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), all as may be provided by the resolution or resolutions authorizing the issuance of such bonds. Such revenue refunding bonds shall be designated, shall be issued in such form, shall be dated and shall bear interest at a rate not exceeding the maximum rate then permitted by law, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds.

Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time, for the purpose of providing funds, with any other available funds, for redeeming prior to or at their maturity or maturities all of the outstanding 1947 Indenture Bonds, any 1947 Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all of the outstanding bonds of any Series or all of the outstanding term bonds of any Series or outstanding Designated Maturity Bonds, including the payment of any redemption premium thereon, and, if deemed necessary by the Board, for paying the interest to accrue thereon to the date fixed for their redemption or their maturity and any expenses in connection with such refunding, and for the purpose of providing moneys for deposit to the credit of the Reserve Account. Before any bonds shall be issued under the provisions of this paragraph, the Board shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof and describing the bonds to be redeemed or paid. Such revenue refunding bonds shall be designated, shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds in such year or years not later than fifty (50) years from their date, and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and any term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the

- 10 -

USB_9019MOTION_0000126

maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement.

Prior to the issuance of Variable Rate Bonds, the Board shall adopt a resolution specifying, without limitation, the interest rate calculation methods and any conversion features, and any credit or liquidity facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds. The Variable Rate Bonds may provide that the owner of any such Bond may demand payment of principal and interest from the Authority within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent. The designated agent for the Authority, in accordance with the terms of a remarketing or replacement agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Authority at a price provided for in the agreement. If the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized to draw upon a previously executed credit or liquidity facility of one or more banks or other financial or lending institutions for payment of interest and principal for a particular series of Variable Rate Bonds to which such credit or liquidity facility shall pertain. The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Authority, the terms and provisions of the remarketing or replacement agreement, and the terms and provisions of the credit or liquidity facility, including the terms of any lien on Revenues in connection with the credit or liquidity facility not inconsistent with Section 712 hereof, shall be as designated by a resolution of the Board pertaining to the Variable Rate Bonds to which such terms and provisions are applicable adopted prior to the issuance thereof. Prior to the issuance of Put Bonds, the Board shall adopt a resolution which may provide for some of the above terms and provisions. Prior to the issuance of Extendible Maturity Bonds, the Board shall adopt a resolution which shall set forth the terms and conditions of the exercise by the bondholders or the Authority of any option to extend the maturity of said bonds. Prior to the issuance of Capital Appreciation Bonds, the Authority shall specify by resolution, the Valuation Dates, the Accreted Values on such dates, the manner in which and the period during which principal and interest shall be deemed to accrue on such bonds for purposes of the definition of "Principal and Interest Require-

- 11 -

USB_9019MOTION_0000127

ments" and the amount of any deposit required for the
Reserve Amount in accordance with Section 507 hereof.

Revenue refunding bonds issued under the provisions of
this Section shall be executed substantially in the form and
manner hereinabove set forth and shall be deposited with the
Trustee for authentication, but before the Trustee shall
authenticate and deliver such bonds there shall be filed
with the Trustee the following:

(a)   a copy, certified by the Secretary, of the reso-
lutions mentioned above;

(b)   a copy, certified by the Secretary, of the reso-
lution adopted by the Board awarding such bonds,
specifying the interest rate for each of such bonds
and directing the authentication and delivery of such
bonds to or upon the order of the purchasers mentioned
therein upon payment of the purchase price therein set
forth and the accrued interest on such bonds;

(c)   in case such bonds are to be issued for the pur-
pose of providing funds for redeeming all of the out-
standing 1947 Indenture Bonds or any 1947 Indenture
Bonds issued for a purpose for which moneys may be
expended from the Renewal and Replacement Fund, all of
the outstanding bonds of any Series or all of the
outstanding term bonds of any Series or outstanding
Designated Maturity Bonds at or prior to their
maturity or maturities:

(i)   a certificate, signed by the Executive
Director, setting forth (A) the amount of the
maximum aggregate Principal and Interest
Requirements for any fiscal year thereafter on
account of all 1947 Indenture Bonds then out-
standing and all bonds then outstanding under
this Agreement, and (B) the amount of the maxi-
mum aggregate Principal and Interest Require-
ments for any fiscal year thereafter on account
of all 1947 Indenture Bonds then outstanding and
all bonds to be outstanding under this Agreement
after the issuance of such revenue refunding
bonds and the redemption or payment of the bonds
to be refunded; and

(ii)   such documents as shall be required by the
Trustee to show that provision has been made in
accordance with the provisions of the 1947
Indenture or this Agreement, as the case may be,
for the redemption or payment of all of the
bonds to be refunded; and

- 12 -

confidential
128

(d)    an Opinion of Counsel stating that all condi-
tions precedent to the delivery of such bonds have
been fulfilled.

When the documents mentioned above in this Section
shall have been filed with the Trustee and when the bonds
described in the resolutions mentioned in clauses (a) and
(b) of this Section shall have been executed and authenti-
cated as required by this Agreement, the Trustee shall deli-
ver such bonds at one time to or upon the order of the pur-
chasers mentioned in the resolution mentioned in said clause
(b), but only upon payment to the Trustee of the purchase
price of such bonds and the accrued interest.  The Trustee
shall be entitled to rely upon such resolution as to all
matters stated therein.   The Trustee, however, shall not
authenticate and deliver such bonds unless

(I)    the proceeds (excluding accrued interest but
including any premium) of such revenue refunding
bonds, together with any moneys to be withdrawn from
the Sinking Fund by the Trustee, and any other moneys
which have been made available to the Trustee, for
such purpose as hereinafter provided, or the principal
of and the interest on the investment of such proceeds
or any such moneys, shall be not less than an amount
sufficient to pay the principal of and the redemption
premium, if any, on the bonds to be refunded and the
interest which will become due and payable on or prior
to the date of their payment or redemption, the finan-
cing costs in connection with such refunding, and any
deposit to the credit of the Reserve Account, and

(II)   in case such bonds are to be issued for the pur-
pose of providing funds for redeeming all of the out-
standing 1947 Indenture Bonds or any 1947 Indenture
Bonds issued for a purpose for which moneys may be
expended from the Renewal and Replacement Fund, all of
the outstanding bonds of any Series or all of the
outstanding term bonds of any Series or outstanding
Designated Maturity Bonds prior to or at their
maturity or maturities, either (1) the amount shown in
item (B) of the certificate mentioned in subclause (i)
of clause (c) of this Section shall be less than the
amount shown in item (A) of said certificate or (2)
there shall be filed with the Trustee a certificate,
signed by the Executive Director and approved by the
Consulting Engineers, setting forth

(A)    the amount of the Net Revenues for any
twelve (12) consecutive calendar months out of

- 13 -

USB_9019MOTION_0000129

Confidential
Eidos & Young
Web of Confidential x & esord
Apr 03, 2017 19:22

the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(B)  his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years, and

(C)  his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (B) above,

and stating that each of the amounts shown in items (A) and (C) above is not less than one hundred twenty per centum (120%) of each of the amounts shown in items (A) and (B) of the certificate mentioned in subclause (i) of clause (c) of this Section.

The proceeds of such revenue refunding bonds shall, to the extent practicable, be invested and reinvested by the Trustee, with the approval of the Executive Director, in Government Obligations, Prerefunded Municipals or in Time Deposits, secured in the manner set forth in Section 601 of this Agreement, and the moneys so invested shall be available for use when required.  The income derived from such investments shall be added to such proceeds and applied in accordance with the provisions of this Section 210.

Simultaneously with the delivery of such revenue refunding bonds, the Trustee shall withdraw from the Bond Service Account and the Redemption Account in the Sinking Fund an amount equal to the sum of the amounts deposited to the credit of such Accounts under the provisions of Section 507 of this Agreement on account of the interest which is payable on the bonds to be refunded on the next interest payment date of such bonds and on account of the next maturing installment of principal of or the current Amortization Requirement for the bonds to be refunded, but no such withdrawal shall be made on account of any deposits to the credit of the Reserve Account in the Sinking Fund.  The amount so withdrawn, the proceeds (excluding accrued inter-

Confidential
Eidos & Young
130
Web of Confidential x & esord
Apr 03, 2017 15:23

USB_9019MOTION_0000130

Confidential
Cleary Warning
Privileged Independence and Security
Aug 03 2017 16:25

est but including any premium) of such revenue refunding
bonds and any other moneys which have been made available to
the Trustee for such purpose, shall be held by the Trustee
or deposited with the Paying Agents to be held in trust for
the sole and exclusive purpose of paying such principal,
redemption premium and interest; provided, however, that
such portion of the proceeds of such revenue refunding bonds
as is specified by the Executive Director in a certificate
filed with the Trustee shall be paid to the Authority to be
used for the payment of expenses incident to the financing
and the portion of the proceeds of such revenue refunding
bonds to be deposited to the credit of the Reserve Account
shall be deposited in the Reserve Account.  Any part of the
proceeds of such revenue refunding bonds which are not
needed for the purpose of paying the principal of and the
redemption premium, if any, on the bonds to be refunded, any
deposit to the Reserve Account or any expenses in connection
with such refunding shall be deposited with the Trustee to
the credit of the Bond Service Account in the Sinking
Fund.   The amount received as accrued interest on such
revenue refunding bonds shall be deposited with the Trustee
to the credit of the Bond Service Account in the Sinking
Fund."

Q.   Section 301 is hereby supplemented by the addi-
tion of a new paragraph following the second paragraph, as fol-
lows:

"For purposes of this Section 301, if less than all of
the Capital Appreciation Bonds shall be called for redemp-
tion, the portion of any Capital Appreciation Bond of a
denomination of more than the maturity amount specified in
the resolution authorizing such Bonds to be redeemed shall
be such maturity amount or a multiple thereof, and, in
selecting portions of such Capital Appreciation Bond for
redemption, the Trustee shall treat such Capital Appreci-
ation Bond as representing that number of Capital Appre-
ciation Bonds of such maturity amount which is obtained by
dividing the maturity amount of such Capital Appreciation
Bond to be redeemed in part by the maturity amount specified
in such resolution."

R.   Section 307 is hereby amended to read as fol-
lows:

"Section 307.  Bonds and portions of bonds which
have been duly called for redemption under the provisions of
this Article, or with respect to which irrevocable instruc-
tions to call for redemption or payment at or prior to
maturity have been given to the Trustee in form satisfactory
to it, and for the payment of principal or the redemption

- 15 -

Confidential
Cleary Warning
Privileged Independence and Security
131
Aug 03 2017 16:35

price and the accrued interest of which sufficient moneys, or Government Obligations or Prerefunded Municipals or Time Deposits secured in the manner set forth in Section 601 of this Agreement, shall be held in separate accounts by the Trustee or by the Paying Agents in trust for the holders of the bonds or portions thereof to be paid or redeemed, all as provided in this Agreement, shall not thereafter be deemed to be outstanding under the provisions of this Agreement."

S.    Section 507 is hereby supplemented by the addition of a proviso to be inserted at the end of clause (a) of that Section, as follows:

", provided that in the case of Variable Rate Bonds, the amount deposited shall be the amount of interest estimated, on the 25th day of the month, to be due and payable within the next ensuing six (6) months, which interest shall be based initially on the interest rate in effect on the date of issuance and then shall be adjusted on the 25th day of each subsequent month based on the actual interest accrued from the 25th day of the previous month to the date of adjustment; provided further that in the case of a shortfall in the Bond Service Account for interest payable on any interest payment date, the amount of shortfall shall be funded on the business day immediately preceding such interest payment date from amounts on deposit in the Reserve Account."

T.    Section 507 is hereby supplemented by the addition of a proviso to be inserted at the end of clause (c) of the Section as follows:

", provided further that in the case of Variable Rate Bonds, the minimum amount to be deposited in the Reserve Account which shall be funded over the period required herein, shall be based initially on the interest rate in effect on the date of issuance of the Variable Rate Bonds and then shall be adjusted on the 25th day of each subsequent month based on the actual interest accrued from the 25th day of the previous month to the date of adjustment and any shortfall in the Reserve Account due to a withdrawal to fund interest pursuant to the proviso contained in paragraph (a) above shall be funded on the 25th day of the next month; provided further that in the case of Capital Appreciation Bonds, the minimum amount required to be deposited in the Reserve Account shall be an amount derived from the interest rate which has been used to calculate the assumed yield on such bonds through their maturity times the Accreted Value of such bonds on the Valuation Date occurring at or after the first day of the twelfth succeeding month to the date of calculation of this requirement, as may be further specified in the resolution authorizing Capital Appreciation Bonds; and"

- 16 -

USB_9019MOTION_0000132

Confidential
Draft of Version
Municipal Restructuring Support Program
April 13, 2017 16:28

U.    Section 509 is hereby supplemented by the addi-
tion of a new paragraph to be inserted at the end, as follows:

"Notwithstanding the foregoing, if principal and
interest payments, or a portion thereof (other than any
payments of the purchase price of bonds pursuant to a
"put"), for particular bonds have been made on behalf of the
Authority by a credit or liquidity facility issuer or other
entity insuring, guaranteeing or providing for said pay-
ments, amounts deposited in the Bond Service Account and
allocable to said payments for said bonds shall be paid, to
the extent required under any agreement, to the credit or
liquidity facility issuer or entity having theretofore made
said corresponding payment."

V.    Section 510 is hereby supplemented by the addi-
tion of a sentence to be inserted at the end, as follows:

"For purposes of determining whether any excess exists
in the Reserve Account, the amount required for Capital
Appreciation Bonds and interest payable within the next
ensuing twelve (12) months for Variable Rate Bonds shall be
calculated in accordance with clause (c) of Section 507, and
the minimum amount required in the Reserve Account shall be
deemed to include any additional level of funding of the
Reserve Account required under the terms of the resolution
adopted by the Authority for such bonds."

W.    Section 511 is hereby supplemented by the addi-
tion of a paragraph to be inserted at the end, as follows:

"Notwithstanding the foregoing, if amounts applied to
the retirement of bonds that would have been applied from
the Redemption Account are paid instead by a credit or
liquidity facility issuer or other entity insuring, guaran-
teeing or providing for said payment, amounts deposited in
the Redemption Account and allocable to said payments for
said bonds shall be paid, to the extent required under any
agreement, to the credit or liquidity facility issuer or
entity having theretofore made said corresponding payment."

X.    Section 602 is hereby supplemented by the addi-
tion of the words "or other authorized officer of the Authority
or authorized representative of the Executive Director or other
authorized officer" after the words "Executive Director" in the
third line and seventh line of the fourth paragraph.

Y.    Section 703 is hereby supplemented by the addi-
tion of a clause to be inserted at the end of the last sentence,
as follows:

- 17 -

Confidential
Draft of Version
Municipal Restructuring Support Program
April 13, 2017 16:54
133

confidential
Clark-Williams
Moody, Eric Robin Bondholder & Island
Aug 03, 2017 16:22

"; and notwithstanding the above, the Authority may enter into any indenture or agreement supplemental to the 1947 Indenture for any purposes permitted thereunder, including, without limitation, modifying any of the terms or provisions contained in the 1947 Indenture, to the extent that any such indenture or agreement would not adversely affect the interest of the bondholders under this Agreement. Under this Section, the Trustee will be entitled to receive, and shall be fully protected in relying upon the opinion of any counsel approved by it, who may be counsel for the Authority."

Z.   Section 802 is hereby supplemented by the addition of a clause (j) to be inserted after clause (i), as follows:

"(j)   notice has been received by the Trustee and the Authority, from the bank or other financial or lending institution providing a credit or liquidity facility or other entity insuring, guaranteeing or providing for payments of principal or interest in respect of any bonds that an event of default has occurred under the agreement underlying said facility, or a failure by said bank or other financial or lending institution or other entity to make said facility available or to reinstate the interest component of said facility, in accordance with the terms of said facility, to the extent said notice or failure is established as an event of default under the terms of the resolution authorizing the issuance of said bonds."

AA.   Section 1201 is hereby amended to read as follows:

"Section 1201.   If, when the bonds secured hereby shall have become due and payable in accordance with their terms or otherwise as provided in this Agreement or shall have been duly called for redemption or irrevocable instructions to call the bonds for redemption or payment shall have been given by the Authority to the Trustee, the whole amount of the principal and the interest and the premium, if any, so due and payable upon all of the bonds and coupons then outstanding shall be paid or sufficient moneys, or Government Obligations or Prefunded Municipals or Time Deposits secured in the manner set forth in Section 601 of this Agreement, the principal of and the interest on which when due will provide sufficient moneys, shall be held by the Trustee or the Paying Agents for such purpose under the provisions of this Agreement, and provision shall also be made for paying all other sums payable hereunder by the Authority, then and in that case the right, title and inter-

- 18 -

confidential
Clark-Williams
Moody, Eric Robin Bondholder & Island
Aug 03, 2017 16:22
134

Confidential
Certain Holdings
Section 5 Information Statement of a Board
April 24, 2017 10:20

est of the Trustee hereunder shall thereupon cease, deter-
mine and become void, and the Trustee in such case, on
demand of the Authority, shall release this Agreement and
shall execute such documents to evidence such release as may
be reasonably required by the Authority, and shall turn over
to the Authority or to such officer, board or body as may
then be entitled by law to receive the same any surplus in
any account in the Sinking Fund and all balances remaining
in any other funds or accounts other than moneys held for
the redemption or payment of bonds or coupons; otherwise
this Agreement shall be, continue and remain in full force
and effect; provided, however, that in the event Government
Obligations or Prerefunded Municipals or Time Deposits
secured in the manner set forth in Section 601 of this
Agreement shall be held by the Trustee as hereinabove pro-
vided, (i) in addition to the requirements set forth in
Article III of this Agreement, the Trustee shall within
thirty (30) days after such obligations shall have been
deposited with it cause a notice signed by the Trustee to be
published once in a daily newspaper of general circulation
published in the Municipality of San Juan, Puerto Rico, and
in a daily newspaper of general circulation or a financial
journal published in the Borough of Manhattan, City and
State of New York, setting forth (a) the date designated for
the redemption of the bonds, (b) a description of the
Government Obligations or Prerefunded Municipals or Time
Deposits so held by it and (c) that this Agreement has been
released in accordance with the provisions of this Section,
and (ii) the Trustee shall nevertheless retain such rights,
powers and privileges under this Agreement, as may be neces-
sary and convenient in respect of the bonds for the payment
of the principal, interest and any premium for which such
Government Obligations or Prerefunded Municipals have been
deposited or such Time Deposits have been made.

     For purposes of determining whether Variable Rate Bonds
shall be deemed to have been paid prior to the maturity or
redemption date thereof, as the case may be, the interest to
come due on such Variable Rate Bonds on or prior to the
maturity date or redemption date thereof, as the case may
be, shall be calculated at the maximum rate permitted by the
terms thereof.

     Put Bonds and Extendible Maturity Bonds shall be deemed
to have been paid only if there shall have been deposited
with the Trustee moneys, Government Obligations, Time
Deposits or Prerefunded Municipals, as applicable, in an
amount which shall be sufficient to pay when due the maximum
amount of principal of and premium, if any, and interest on
such bonds which would become payable to the holders of such
bonds upon the exercise of any options or extensions of

- 19 -

Confidential
Certain Holdings
135
Section 5 Information Statement of a Board
April 24, 2017 10:20

Confidential
Latham&Watkins
Product Due Diligence and T Bond
Apr 31 2017 15:23

maturity; provided, however, that, if at the time a deposit is made with the Trustee, the options or maturity extensions originally exercisable are no longer exercisable, such bond shall not be considered a Put Bond or an Extendible Maturity Bond for purposes of this Section."

2.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.     This Second Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

4.     The Trustee shall not be required to authenticate any bonds permitted by this Second Supplemental Agreement if the issue of such bonds will affect the Trustee's own rights, duties or immunities under the Agreement or the bonds or otherwise in a manner which is not reasonably acceptable to the Trustee.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Second Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and Citibank, N.A. has caused this Second Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By_____
Executive Director

Attest:

_____
Secretary

(SEAL)

CITIBANK, N.A., as Trustee

By_____
Vice President

Attest:

_____
Trust Officer

- 20 -

Confidential
Latham&Watkins
Product Due Diligence and T Bond
Apr 31 2017 15:37

USB_9019MOTION_0000136

COMMONWEALTH OF PUERTO RICO   )
                              )  SS:
MUNICIPALITY OF SAN JUAN      )

On the _____ day of February, in the year 1988, before me
personally came CARLOS M. ALVARADO, to me known, who, being by me
duly sworn, did depose and say that he resides in the Municipali-
ty of San Juan, Puerto Rico; that he is the Executive Director of
Puerto Rico Electric Power Authority, the body corporate
described in and which executed the above instrument; that he
knows the seal thereof; that the seal affixed to said instrument
is the corporate seal of Puerto Rico Electric Power Authority;
that it was so affixed by order of the Governing Board of Puerto
Rico Electric Power Authority; and that he signed his name
thereto by like order.



                                        _____
                                        NOTARY PUBLIC

                            (SEAL)

My Commission Expires:



STATE OF NEW YORK             )
                              )  SS:
COUNTY OF NEW YORK            )

On the 17th day of February, in the year 1988, before me
personally came J. A. OLIVE, to me known, who, being by me duly
sworn, did depose and say that he resides in Hicksvield, New
York; that he is an Assistant Vice President of Citibank, N.A.,
the banking corporation described in and which executed the above
instrument; that he knows the seal of said corporation; that the
seal affixed to said instrument is the corporate seal of said
corporation; that it was so affixed by authority of the Board of
Directors of said corporation; and that he signed his name
thereto by like authority.

                                        _____
                                        NOTARY PUBLIC

                            (SEAL)           CHRISTA M. BOWEN
                                        NOTARY PUBLIC, State of New York
                                                No. 30-4723478
                                          Qualified in Nassau County
                                        Certificate Filed in New York County
                                        Commission Expires August 31, 1988

My Commission Expires:



                              - 21 -

USB_9019MOTION_0000137

Confidential
Claims Waivers
Section 5 Subscribe 4 Dyra
Aug 21, 2017 15:28

## SWORN STATEMENT

I, CARLOS M. ALVARADO, being duly sworn, hereby declare:

1. That I am of legal age, single and a resident of the municipality of San Juan, Puerto Rico.

2. That I am the Executive Director of Puerto Rico Electric Power Authority; that I know the seal thereof; that the seal affixed to the instrument titled "Second Supplemental Agreement" is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that I signed my name thereto by like order.

AND FOR ALL LEGAL PURPOSES, I sign this sworn statement in the city of San Juan, Commonwealth of Puerto Rico, this 11th day of February, 1987.

Carlos M. Alvarado

Affidavit Number 2728  (copy)

Sworn and subscribed to before me by Carlos M. Alvarado, in his capacity as Executive Director of Puerto Rico Electric Power Authority, of the above mentioned personal circumstances, personally known to me, in San Juan, Puerto Rico, this 11th day of February, 1988.

NOTARY PUBLIC

My commission is for life

Confidential
Section 5 Subscribe
Section Certifications 4 Dyra
Aug 21, 2017 16:26

138

confidential
Closing Minutes
Master Line and Resolution re: A Bonds
Apr. 11, 2017 10:49

### THIRD SUPPLEMENTAL AGREEMENT

THIS THIRD SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 12th day of January, 2011, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### WITNESSETH:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended, (the "Agreement") for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, it is desirable to amend the Agreement so as to provide that in conjunction with the Authority's issuance of bonds, the Authority may secure its obligations to the provider of a credit or liquidity facility securing said bonds, on a parity with the Authority's bonds issued under the Agreement; and

WHEREAS, the Trustee has received an opinion of counsel that this Third Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Third Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Third Supplemental Agreement; and

WHEREAS, the Trustee has received the specific consent of one hundred per cent (100%) in aggregate principal amount of the outstanding bonds to this Third Supplemental Agreement and to the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution

confidential
Closing Minutes
Master Line and Resolution re: A Bonds
Apr. 11, 2017 10:49

USB_9019MOTION_0000139

confidential
Class settlement
Master Document Rank's Group
Aug 02, 2017 15:02

and delivery of this Third Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Third Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS THIRD SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Third Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.       The Agreement is hereby amended and supplemented in the following respects:

A.       Section 705 is hereby supplemented by the addition of the clause "Except as otherwise permitted in this Agreement", at the beginning of the first sentence.

B.       Section 712 is hereby supplemented by the addition of a proviso to the end of the first sentence of paragraph (a), as follows:

"; provided that in conjunction with the issuance of bonds, the Authority may secure its obligations to the provider of a credit or liquidity facility securing said bonds on a parity with the Authority's bonds under this Agreement."

C.       Clause (c) of Section 1102 is hereby changed to read as follows:

"(c) the creation of a lien upon or a pledge of the Revenues other than any lien and pledge created by or permitted by this Agreement."

2.       The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.       This Third Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

confidential
Class settlement
Master Document Rank's Group
Aug 02, 2017 15:02
140

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Third Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association has caused this Third Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER
AUTHORITY

By _____

Executive Director

(SEAL)

Attest:

_____
Secretary

U.S. BANK NATIONAL ASSOCIATION, as
Trustee

By _____
Vice President

(SEAL)

Attest:

_____
Trust Officer

- 3 -

USB_9019MOTION_0000141

Confidential
Case anderson
Mission Presentation Material & Plan
Aug. 11, 2017 10:38

COMMONWEALTH OF PUERTO RICO )

)

MUNICIPALITY OF SAN JUAN )

On the Nth day of January, in the year 2011, before me personally came *Miguel Angel Cordero Lopez*, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereon that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing .Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # 2,729

(SEAL)

_____
Notary Public

STATE OF NEW YORK )

)

COUNTY OF NEW YORK )

On the 11th day of January, in the year 2011, before me personally came __Michele Mena-Rosado__, to me known, who, being by me duly sworn, did depose and say that she resides in Bronx County, NY ; that she is a Vice President of U.S. Bank National Association, the bank corporation described in and which executed the above instrument and that she signed her name thereto by like authority.

Affidavit #

_____
Carolyn R. Sinclair
Notary Public, State of New York
No. 01SI6034052
Qualified in Queens County
Commission Expires Dec 20, 20 13

Notary Public

My commission expires:

(SEAL)

Confidential
Case anderson
Mission Presentation Material & Plan
Aug. 11, 2017 10:38

142

USB 9019MOTION 0000142

### CERTIFICATE OF SECRETARY OF THE AUTHORITY
### AS TO FOURTH SUPPLEMENTAL AGREEMENT

I, ANGEL RAUL VEGA, Secretary of Puerto Rico Electric Power Authority, DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Fourth Supplemental Agreement, dated as of August 24, 1989, supplementing the provisions of the Trust Agreement dated as of January 1, 1974 by and between the Authority and Citibank, N.A., as Trustee, which Fourth Supplemental Agreement was duly executed and delivered on the date hereof by the Authority and said Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand this 24th day of August, 1989.

                                        _____
                                                  Secretary
                                        Puerto Rico Electric Power Authority

143

## FOURTH SUPPLEMENTAL AGREEMENT

THIS FOURTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 24th day of August, 1989, by and between

PUERTO RICO ELECTRIC POWER AUTHORITY,

a governmental instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

CITIBANK, N.A.,

a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and.

WHEREAS, it is desirable to supplement the Agreement so as to (1) permit the Authority to deposit credit facilities in the Reserve Account established under the Agreement, (2) permit the Authority to refund portions of the bonds of any series issued under the Agreement, (3) provide a credit in the computation of principal and interest requirements under the Agreement for amounts irrevocably deposited for the payment of bonds and (4) expand the categories of eligible investments under the Agreement; and

WHEREAS, the Trustee has received an opinion of counsel that this Fourth Supplemental Agreement complies with the provisions

144

of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Fourth Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Fourth Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Fourth Supplemental Agreement to be published and mailed as required by the Agreement, and the holders of at least sixty per cent (60%) in aggregate principal amount of the outstanding bonds have specifically consented to and approved the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Fourth Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Fourth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS FOURTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Fourth Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.    The Agreement is hereby amended and supplemented in the following respects:

A.    The definition of "Investment Obligations" in Section 101 is hereby amended to read as follows:

The term "Investment Obligations" shall mean (i) Government Obligations, (ii) obligations of any state or territory of the United States or political subdivision thereof (other than obligations rated lower than the three highest grades by a nationally recognized rating agency), (iii) repurchase agreements with commercial banks fully secured by

- 2 -

145

USB 9019MOTION 0000145

Government Obligations and (iv) any other investment obligations permitted for governmental instrumentalities such as the Authority under the laws of the Commonwealth of Puerto Rico which are rated, on the date of investment therein, in any of the three highest grades by a nationally recognized rating agency, or which are collateralized by any of the other Investment Obligations described herein.

B. The definition of "Principal and Interest Requirements" in Section 101 is hereby supplemented by the addition of a paragraph at the end thereof to read as follows:

"To the extent all or a portion of the principal of, Amortization Requirements or interest on, any bonds of any Series are payable from moneys irrevocably set aside or deposited irrevocably for such purpose with a bank or trust company (which may include the Trustee) or from Investment Obligations irrevocably set aside or deposited irrevocably for such purpose with a bank or trust company (which may include the Trustee) or Time Deposits secured in the manner set forth in Section 601 of this Agreement and irrevocably set aside for such purpose, the principal of and the interest on which when due will provide sufficient moneys to make such payments, such principal, Amortization Requirements or interest shall not be included in determining Principal and Interest Requirements; provided, however, that for purposes of the definition of Principal and Interest Requirements as used in Sections 502(A)(b) and 502(B)(b), respectively, said definition shall include any interest payable from any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon. The Executive Director or his designee shall deliver to the Trustee a certificate describing the principal of, Amortization Requirements for and interest on any bonds for which moneys, Investment Obligations or Time Deposits have been set aside or deposited pursuant to this paragraph, and stating that such principal, Amortization Requirements and interest should not be included in determining the Principal and Interest Requirements. Upon request of the Trustee, the Authority shall cause to be delivered to the Trustee a certificate of an independent verification agent as to the sufficiency of the maturing principal amounts of any Investment Obligations or Time Deposits, together with interest thereon, set aside or deposited pursuant to this paragraph to pay said principal, Amortization Requirements and interest."

C. Section 101 is hereby supplemented by the addition of two definitions after the definition of "Reserve Account," as follows:

- 3 -

146

USB 9019MOTION 0000146

The term "Reserve Account Insurance Policy" shall mean the insurance policy, surety bond or other acceptable evidence of insurance, if any, to be deposited in the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, for the purpose of making the payments required to be made from the Reserve Account under Section 510 hereof. The issuer providing such insurance shall be a municipal bond insurer whose policy or bond results in the rating of municipal obligations secured by such policy or bond to be rated, at the time of deposit into the Reserve Account, in one of the three highest grades by (i) either Standard & Poor's Corporation or its successor, or Moody's Investor's Services, Inc. or its successor or (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency.

The term "Reserve Account Letter of Credit" shall mean the irrevocable, transferable letter of credit, if any, to be deposited in the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, for the purpose of making the payments required to be made from the Reserve Account under Section 510 hereof. The issuer providing such letter of credit shall be a banking association, bank or trust company or branch thereof whose letter of credit results in the rating of municipal obligations secured by such letter of credit to be rated, at the time of deposit into the Reserve Account, in one of the three highest grades by (i) either Standard & Poor's Corporation or its successor, or Moody's Investor's Services, Inc. or its successor or (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency.

D. The second paragraph of Section 210 is hereby amended to read as follows:

"Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time, for the purpose of providing funds, with any other available funds, for redeeming prior to or at their maturity or maturities all of the outstanding 1947 Indenture Bonds, any 1947 Indenture Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all or any part of the outstanding bonds of any Series or outstanding Designated Maturity Bonds, including the

— 4 —

147

payment of any redemption premium thereon, and, if deemed necessary by the Board, for paying the interest to accrue thereon to the date fixed for their redemption or their maturity and any expenses in connection with such refunding, and for the purpose of providing moneys for deposit to the credit of the Reserve Account. Before any bonds shall be issued under the provisions of this paragraph, the Board shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof and describing the bonds to be redeemed or paid. Such revenue refunding bonds shall be designated, shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds in such year or years, not later than fifty (50) years from their date, and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and any term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement."

E. The first sub-clause in clause (c) of Section 210 is hereby amended to read as follows:

"in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds or any 1947 Indenture Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all or any part of the outstanding bonds of any Series or outstanding Designated Maturity Bonds at or prior to their maturity or maturities;"

F. Clause (II) of the fifth paragraph of Section 210 is hereby amended to read as follows:

"(II) in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds or any 1947 Indenture Bonds issued for a purpose for which moneys may be

- 5 -

148

expended from the Renewal and Replacement Fund, all or any part of the outstanding bonds of any Series or outstanding Designated Maturity Bonds prior to or at their maturity or maturities, either (1) the amount shown in item (B) of the certificate mentioned in subclause (i) of clause (c) of this Section shall be less than the amount shown in item (A) of said certificate or (2) there shall be filed with the Trustee a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth

> (A) the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

> (B) his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years, and

> (C) his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (B) above,

and stating that each of the amounts shown in items (A) and (C) above is not less than one hundred twenty per centum (120%) of each of the amounts shown in items (A) and (B) of the certificate mentioned in subclause (i) of clause (c) of this Section."

G. Clause (c) of Section 507 is hereby amended to read as follows:

"(c) to the credit of the Reserve Account, such amount, if any, of any balance remaining after making the deposits under clauses (a) and (b) above (or the entire balance if less than the required amount) as may be required to make the amount then to the credit of the Reserve Account, including the amount of any Reserve Account

USB_9019MOTION_0000149

Insurance Policy or any Reserve Account Letter of Credit
therein, equal to the interest payable on the bonds of each
Series issued hereunder within the next ensuing twelve (12)
months; provided, however, that the amount so deposited in
any month in respect of bonds of any Series issued under
Sections 208 or 209 of this Agreement need not exceed one-
sixtieth (1/60) of the amount of the increase in the
interest payable within the next ensuing twelve (12) months
resulting from the issuance of the bonds of such Series;
provided, however, that if the amount so deposited in any
month to the credit of said Account shall be less than the
required amount for such month, the requirement therefor
shall nevertheless be cumulative and the amount of any
deficiency in any month shall be added to the amount
otherwise required to be deposited in each month thereafter
until such time as such deficiency shall have been made up;
provided further, that in the case of Variable Rate Bonds,
the minimum amount to be deposited in the Reserve Account
which shall be funded over the period required herein, shall
be based initially on the interest rate in effect on the
date of issuance of the Variable Rate Bonds and then shall
be adjusted on the 25th day of each subsequent month based
on the actual interest accrued from the 25th day of the
previous month to the date of adjustment, and any shortfall
in the Reserve Account due to a withdrawal to fund interest
pursuant to the proviso contained in paragraph (a) above
shall be funded on the 25th day of the next month; provided
further, that in the case of Capital Appreciation Bonds, the
minimum amount required to be deposited in the Reserve
Account shall be an amount derived from the interest rate
which has been used to calculate the assumed yield on such
bonds through their maturity times the Accreted Value of
such bonds on the Valuation Date occurring at or after the
first day of the twelfth succeeding month to the date of
calculation of this requirement, as may be further specified
in the resolution authorizing Capital Appreciation Bonds;
and"

      H.    Section 510 is hereby amended to read as fol-
lows:

    "Section 510. Moneys held for the credit of the
Reserve Account or amounts available under any Reserve
Account Insurance Policy or Reserve Account Letter of Credit
shall first be used for the purpose of paying interest on
the bonds and maturing principal of the serial bonds
whenever and to the extent that the moneys held for the
credit of the Bond Service Account shall be insufficient for
such purpose and thereafter for the purpose of making the
deposits to the credit of the Redemption Account pursuant to

- 7 -

USB_9019MOTION_0000150

the requirements of clause (b) of Section 507 of this
Agreement whenever and to the extent that the withdrawals
from the Renewal and Replacement Fund or the Revenue Fund,
as the case may be, are insufficient for such purpose. If
at any time the moneys held for the credit of the Reserve
Account, including amounts available under any Reserve
Account Insurance Policy or Reserve Account Letter of
Credit, shall exceed interest payable within the next
ensuing twelve (12) months on the bonds of each Series
issued hereunder, such excess moneys shall be transferred to
the credit of the Bond Service Account or any Reserve
Account Insurance Policy or Reserve Account Letter of Credit
may be reduced to the extent of such excess, at the option
of the Authority. For purposes of determining whether any
excess exists in the Reserve Account, the amount required
for Capital Appreciation Bonds and interest payable within
the next ensuing twelve (12) months for Variable Rate Bonds
shall be calculated in accordance with clause (c) of Section
507, and the minimum amount required in the Reserve Account
shall be deemed to include any additional level of funding
of the Reserve Account required under the terms of the
resolution adopted by the Authority for the bonds.

Notwithstanding anything to the contrary contained in
Section 507 or elsewhere in this Agreement, in lieu, or in
partial satisfaction, of any required deposit into the
Reserve Account, the Authority may cause to be deposited
into the Reserve Account a Reserve Account Insurance Policy
or a Reserve Account Letter of Credit, as to which any
reimbursement obligation in respect of a drawing thereon may
be secured by a lien on Revenues not inconsistent with
Section 712 hereof, for the benefit of the holders of the
bonds in an amount equal to the required deposit or any
portion thereof, and which Reserve Account Insurance Policy
or Reserve Account Letter of Credit shall be payable or
available to be drawn upon, as the case may be (upon the
giving of notice as required thereunder), on any date on
which moneys are required to be paid out of the Reserve
Account pursuant to the first sentence of this Section 510.
If a disbursement is made under the Reserve Account
Insurance Policy or the Reserve Account Letter of Credit,
the Authority shall be obligated either to reinstate the
amount of such Reserve Account Insurance Policy or Reserve
Account Letter of Credit or to deposit into the Reserve
Account moneys, in accordance with the provisions of Section
507 hereof, in the amount of the disbursement made under
such Reserve Account Insurance Policy or Reserve Account
Letter of Credit, or a combination of such alternatives.
The Authority may at any time substitute (i) all or a
portion of the moneys held to the credit of the Reserve

Account with a Reserve Account Insurance Policy or Reserve Account Letter of Credit, or a combination of such alternatives, (ii) all or a portion of any Reserve Account Insurance Policy on deposit in the Reserve Account with moneys or a Reserve Account Letter of Credit, or a combination of such alternatives, or (iii) all or a portion of any Reserve Account Letter of Credit on deposit in the Reserve Account with moneys or a Reserve Account Insurance Policy, or a combination of such alternatives. Any moneys on deposit in the Reserve Account in substitution of which a Reserve Account Insurance Policy or Reserve Account Letter of Credit is deposited into the Reserve Account shall, to the extent not required to fund any deficiences in the amount then required to be on deposit in the Reserve Account, be released and immediately paid over to the Authority to be used by the Authority for any of its lawful corporate purposes.   Prior to the expiration date of any Reserve Account Insurance Policy or Reserve Account Letter of Credit then on deposit to the credit of the Reserve Account, the Authority shall (x) cause the term of such Reserve Account Insurance Policy or Reserve Account Letter of Credit to be extended, (y) replace any such Reserve Account Insurance Policy with moneys (which may include, without limitation, moneys available under the Reserve Account Insurance Policy or from any other source available for such purpose) or a Reserve Account Letter of Credit, or a combination of such alternatives, or (z) replace any such Reserve Account Letter of Credit with moneys (which may include, without limitation, moneys available under the Reserve Account Letter of Credit or from any other source available for such purpose) or a Reserve Account Insurance Policy, or a combination of such alternatives; provided that, in the event the Authority has not extended or replaced the expiring Reserve Account Insurance Policy or Reserve Account Letter of Credit by the fifth (5th) business day prior to the date of expiration, the expiring Reserve Account Insurance Policy or Reserve Account Letter of Credit shall, on such date, be drawn upon to fund the Reserve Account. For purposes of this Agreement, other than Article VI hereof, moneys for deposit to, or held for the credit of, the Reserve Account shall include amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit on deposit in the Reserve Account."

2.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

- 9 -

3.      This Fourth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Fourth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and Citibank, N.A. has caused this Fourth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By _____
                    Executive Director

(SEAL)

Attest:

_____
                    Secretary

CITIBANK, N.A., as Trustee

By _____
                    Assistant Vice President

(SEAL)

Attest:

_____
                    Trust Officer

— 10 —

153

STATE OF NEW YORK        )
                         ) SS:
COUNTY OF NEW YORK       )

On the 27th day of August , in the year 1987, before me
personally came Ronald E Price , to me known, who, being by
me duly sworn, did depose and say that he resides in
_____ ; that he is an Assistant Vice President
of Citibank, N.A., the banking corporation described in and which
executed the above instrument; that he knows the seal of said
corporation; that the seal affixed to said instrument is the cor-
porate seal of said corporation; that it was so affixed by
authority of the Board of Directors of said corporation; and that
he signed his name thereto by like authority.

                              _____
                              NOTARY PUBLIC

                    (SEAL)

My Commission Expires:

                              CHRISTA M. BOWEN
                         Notary Public, State of New York
                                No. 41-4723478
                            Qualified in Queens County
                         Certificate filed in New York County
                         Commission Expires August 31, 1990

- 11 -      154



COMMONWEALTH OF PUERTO RICO
## Puerto Rico Electric Power Authority

JOSE A. DEL VALLE VAZQUEZ
Executive Director

### SWORN STATEMENT

I, JOSE A. DEL VALLE, being duly sworn, hereby declare:

1.  That I am of legal age, married and a resident of the municipality of Guaynabo, Puerto Rico.

2.  That I am the Executive Director of Puerto Rico Electric Power Authority; that I know the seal thereof; that the seal affixed to the instrument titled "Fourth Supplemental Agreement" is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that I signed my name thereto by like order.

    AND FOR ALL LEGAL PURPOSES, I sign this sworn statement in the city of San Juan, Commonwealth of Puerto Rico, this eighth day of September , 1989.

_____
José A. Del Valle

Affidavit Number  2206

Sworn and subscribed to before me by José A. Del Valle, in his capacity as Executive Director of Puerto Rico Electric Power Authority, of the above mentioned personal circumstances, personally known to me, in San Juan, Puerto Rico, this eighth day of September , 1989.

_____
NOTARY PUBLIC

My commission is for life

155

QUALITY, SAFETY AND LOSS CONTROL: IS OUR COMMITMENT
CABLE ADDRESS PREPA PHONE: (809) 725-4232

(4)

## CERTIFICATE OF SECRETARY OF THE AUTHORITY
## AS TO FIFTH SUPPLEMENTAL AGREEMENT

I, ANGEL RAUL VEGA, Secretary of Puerto Rico Electric Power Authority, DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Fifth Supplemental Agreement, dated as of August 14, 1991, supplementing the provisions of the Trust Agreement dated as of January 1, 1974 by and between the Authority and Citibank, N.A., as Trustee, which Fifth Supplemental Agreement was duly executed and delivered on the date hereof by the Authority and said Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand this 14th day of August, 1991.

_____
Secretary
Puerto Rico Electric Power Authority

07/33/91\91S\CONCY.PUR

USB_9019MOTION_0000156

## FIFTH SUPPLEMENTAL AGREEMENT

THIS FIFTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 14th day of August, 19 91, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a governmental instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### CITIBANK, N.A.,

a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended and supplemented to the date hereof (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, it is desirable to supplement the Agreement so as to expand the Authority's ability to sell, lease and transfer portions of the System (as defined in the Agreement) and enter into easements, contracts, licenses and other arrangements with other public and private entities concerning the operation and use of portions of the System; and

WHEREAS, the Trustee has received an opinion of counsel that this Fifth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

USB_9019MOTION_0000157

WHEREAS, the execution and delivery of this Fifth Supple-
mental Agreement have been duly authorized by resolution of the
Governing Board of the Authority and the Authority has requested
the Trustee to join with it in the execution of this Fifth
Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed exe-
cution of this Fifth Supplemental Agreement to be published and
mailed as required by the Agreement, and the holders of at least
sixty per cent (60%) in aggregate principal amount of the out-
standing bonds have specifically consented to and approved the
execution hereof; and

WHEREAS, all acts, conditions and things required by the
Puerto Rico Federal Relations Act and the Constitution and laws
of the Commonwealth of Puerto Rico and by the rules and regula-
tions of the Authority to happen, exist and be performed prece-
dent to and in the execution and delivery of this Fifth Supple-
mental Agreement have happened, exist and have been performed as
so required; and

WHEREAS, the Trustee has accepted the trusts created by this
Fifth Supplemental Agreement and in evidence thereof has joined
in the execution hereof;

NOW, THEREFORE, THIS FIFTH SUPPLEMENTAL AGREEMENT WITNES-
SETH, that in consideration of the premises and of the acceptance
by the Trustee of the trusts created hereby and by the Agreement,
and also for and in consideration of the sum of One Dollar to the
Authority in hand paid by the Trustee at or before the execution
and delivery of this Fifth Supplemental Agreement, the receipt of
which is hereby acknowledged, it is mutually agreed and coven-
anted by and between the parties hereto, as follows:

1.    Section 712 of the Agreement is hereby amended and
supplemented by the deletion of the words "at fair market value"
in paragraph (c) thereof and the addition of the following
paragraph at the end thereof:

For purposes of paragraphs (b) and (c) of this
Section, references to sales or leases shall include also
other transfers of property and for purposes of paragraph
(c) of this Section the transferee may be considered in lieu
of the Authority or in addition to the Authority if the
transferee agrees to assume the Authority's obligations
under this Agreement and the Authority delivers to the
Trustee an opinion of counsel to the Authority to the effect
that the transferee's undertaking to assume the Authority's
obligations hereunder is legally valid and binding with the
same effect as though the transferee were the Authority.  If

- 2 -

USB_9019MOTION_0000158

the transferee is a public corporation or other governmental entity, such transfer shall be permitted notwithstanding the Authority's failure to demonstrate the necessary coverage requirement in paragraph (c) above; provided that the Authority delivers a certificate of its Consulting Engineers to the Trustee demonstrating that the coverage ratio shown in the above certificate is not reduced due to such transfer.

(d) Notwithstanding the provisions of paragraph (a) of this Section, except as may conflict with the provisions of the 1947 Indenture until the 1947 Indenture Bonds have been paid or provisions have been made for their payment and the release of the 1947 Indenture, the Authority may lease portions of the System, or grant licenses, easements and other rights or make contracts or other arrangements for operation or use of portions of the System, if there shall be delivered to the Trustee the following:

(i) a report of the Consulting Engineers determining that (A) the proposed lessee or other contracting party is a financially responsible entity with substantial experience in the operation and management of utilities of the type and size of the System, and (B) the available revenues projected to be derived from the portion of the System subject to the lease, contract, license, easement or other arrangement following the date on which such lease, contract, license, easement or other arrangement is to be effective are forecasted to be sufficient to pay the Authority the rent or other payments provided by such lease, contract, license, easement or other arrangement and to make all necessary repairs, improvements and replacements to said portion of the System in the condition it was prior to such lease, contract, license, easement or other arrangement; and

(ii) a certificate of the Consulting Engineers to the effect that the lease, contract, license, easement or other arrangement provides (A) for rent or other payments sufficient, with other Net Revenues projected to be derived from the System to make all payments of the Principal and Interest Requirements for all Bonds which will remain Outstanding following the execution and delivery of the lease, contract, license, easement or other arrangement, (B) operational covenants binding on the lessee or other contracting party similar to those covenants contained in this Agreement and (C) to the extent permitted by law in the case of a lease, for immediate termination of the lease of such lessee without resort to legal process in the event of a default under the lease; and

- 3 -

159

(iii) an opinion of counsel of recognized standing in the field of law relating to municipal bonds to the effect that the proposed transaction would not adversely affect the federal income tax status of any Bonds.

Rents and other payments received under any such lease, contract, license, easement or other arrangement shall be included in the definition of Revenues.

2.    The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.    This Fifth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Fifth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and Citibank, N.A. has caused this Fifth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By _____
            Executive Director

(SEAL)

Attest:

_____
            Secretary


CITIBANK, N.A., as Trustee

By _____
            Assistant Vice President

(SEAL)

Attest:

_____
            Trust Officer

USB_9019MOTION_0000160

CITIBANK, N.A., as Trustee

By: _____
        Senior Trust Officer

[SEAL]

Attest:

_____

~ 5 ~

USB_9019MOTION_0000161

```
COMMONWEALTH OF PUERTO RICO  )
                             )
MUNICIPAL OF SAN JUAN        )   SS:   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
                             )
```

On the 9th day of August, in the year 1991, before me personally came Mr. Jose A. Del Valle Vazquez, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of Guaynabo, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #11192 (copy)

NOTARY PUBLIC

(SEAL)

My Commission Expires: Never

USB_9019MOTION_0000162

STATE OF NEW YORK          )
                           ) SS:
COUNTY OF NEW YORK         )

On the 9th day of _August_ , in the year 19_91_, before me personally came _Julie Salotito-Miller_ to me known, who, being by me duly sworn, did depose and say that she resides in _Freehold N.J._ ; that she is a Senior Trust Officer of Citibank, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of the Board of Directors of said corporation; and that he signed his name thereto by like authority.

NOTARY PUBLIC

(SEAL)

RAY C. RENIE
Notary Public, State of New York
No. 41-4862896
Qualified in Queens County
Commission Expires January 26, 1993

My Commission Expires: _1-26-93_

(6)

### CERTIFICATE OF SECRETARY OF THE AUTHORITY AS TO SIXTH SUPPLEMENTAL AGREEMENT

I, ANGEL RAUL VEGA, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Sixth Supplemental Agreement, dated as of September 1, 1992, supplementing the provisions of the Trust Agreement dated as of January 1, 1974 by and between the Authority and Citibank, N.A., as Trustee, which Sixth Supplemental Agreement was duly executed and delivered on the date hereof by the Authority and said Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand this 15th day of October, 1992.

_____
Secretary
Puerto Rico Electric Power Authority

164

## SIXTH SUPPLEMENTAL AGREEMENT

THIS SIXTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of September, 1992, by and between

PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

CITIBANK, N.A.,

a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect;

WHEREAS, it is desirable to amend the Agreement so as to provide for an exchange of bonds issued under the Agreement for the outstanding bonds issued under the Trust Indenture dated as of January 1, 1947, as amended (the "Indenture"), by and between the Authority and The Chase Manhattan Bank (National Association), as successor trustee, upon obtaining the consent of owners of 100% of the bonds outstanding under the Indenture; and

WHEREAS, the Trustee has received an opinion of counsel that the Sixth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Sixth Supplemental Agreement have been duly authorized by resolution of the Governing

USB_9019MOTION_0000165

Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Sixth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Sixth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Sixth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SIXTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Sixth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:



1.    The Agreement is hereby amended and supplemented in the following respect:

A.    Section 210 is hereby supplemented by the addition of the following paragraphs to the end of said Section:

"Revenue refunding bonds may also be issued in exchange for the outstanding 1947 Indenture Bonds, with the principal amount, maturity and interest rate of a 1947 Indenture Bond being exchanged for a revenue refunding bond with the same principal amount, maturity and interest rate.  The Trustee shall authenticate and deliver such bonds upon receipt of an opinion of Counsel stating that (a) no 1947 Indenture Bonds (other than 1947 Indenture Bonds being exchanged) shall then be outstanding under the provisions of the 1947 Indenture, (b) notice having been duly given in the manner and under the conditions hereinafter provided and revenue refunding bonds duly executed and authenticated as herein provided being held by the Trustee for delivery in exchange for 1947 Indenture Bonds, interest on such 1947 Indenture Bonds shall be deemed to have ceased to accrue from the January 1 or July 1 to which interest has been paid, the coupons for any coupon bonds called for exchange payable subsequent to the exchange date shall be void and such 1947 Indenture Bonds shall cease to be entitled to any lien, benefit or security under the 1947 Indenture and the holders of such 1947 Indenture Bonds shall have no

2

rights in respect thereof, except to receive such revenue refunding bonds of the same principal amount, maturity and interest rate, and (c) all other requirements set forth herein for said exchange to occur have been fulfilled.

Not later than forty five (45) days prior to the proposed date of exchange, the Authority shall provide written notice to the Trustee and the 1947 Trustee of the pending exchange of bonds for the outstanding 1947 Indenture Bonds, shall direct the 1947 Trustee to provide to the Trustee the names and addresses of the owners of outstanding registered 1947 Indenture Bonds without coupons and of owners of outstanding coupon 1947 Indenture Bonds that are registered as to principal only or as to both principal and interest and such additional information as the Trustee shall reasonably require to effectuate the exchange, and shall direct the Trustee (i) to mail notice of such exchange at least thirty (30) days before the proposed date of exchange to all registered owners of the outstanding 1947 Indenture Bonds, and (ii) to publish notice of such exchange once at least thirty (30) days before the proposed exchange date in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a financial journal or daily newspaper of general circulation published in the Borough of Manhattan, City and State of New York. If all of the 1947 Indenture Bonds to be exchanged are coupon bonds registered as to principal only or as to both principal and interest or registered bonds without coupons, such notice of exchange shall be given by mail only and the Trustee will not be required to publish notice of the exchange. The Trustee shall mail such notice to the registered owners of the outstanding 1947 Indenture Bonds, by first class mail, postage prepaid, and publish such notice, if required, in accordance with such direction. The Authority shall provide the Trustee with a form of such notice and with an Opinion of Counsel that on the exchange date, the 1947 Indenture Bonds will no longer be outstanding under the 1947 Indenture. Said notice shall contain the date of such exchange and the address of the principal corporate trust office of the Trustee to which the owners shall surrender their 1947 Indenture Bonds and shall state that on the exchange date upon surrender of a 1947 Indenture Bond, a new registered bond without coupons equal to the principal amount of such 1947 Indenture Bond will be issued, with the same maturity and bearing interest at the same rate and subject to redemption at the same times and prices either in whole or in part, as such 1947 Indenture Bond. Unless all of the 1947 Indenture Bonds to be so exchanged shall consist of registered bonds



3

without coupons or coupon bonds registered as to principal only or as to both principal and interest, failure to mail any such notice shall not affect the validity of the proceedings for such exchange. The owners of the outstanding 1947 Indenture Bonds shall deliver their 1947 Indenture Bonds (including all unmatured coupons appurtenant thereto for coupon 1947 Indenture Bonds) to the Trustee on the exchange date. Upon receipt of the 1947 Indenture Bonds, the Trustee will deliver the bonds in fully registered form without coupons to or upon the order of the owners of the surrendered 1947 Indenture Bonds, which bonds will be dated the July 1 or January 1 to which interest has been paid on such surrendered 1947 Indenture Bonds, and thereafter the owners of bonds issued in exchange for the 1947 Indenture Bonds will be entitled to all of the rights and benefits of other owners of bonds issued under the Agreement. Upon receipt of 1947 Indenture Bonds (including the unmatured coupons appurtenant to coupon 1947 Indenture Bonds), the Trustee shall deliver the 1947 Indenture Bonds (including the unmatured coupons appurtenant to such coupon 1947 Indenture Bonds) to the 1947 Trustee for cancellation."

2.    The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.    This Sixth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Sixth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and Citibank, N.A., has caused this Sixth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

                                    PUERTO RICO ELECTRIC
                                    POWER AUTHORITY

                          By:  _____
                                    Executive Director

SEAL)

4

USB_9019MOTION_0000168

Attest:

Secretary

CITIBANK, N.A., as Trustee

By: _____

    Assistant Vice President

(SEAL)

Attest:

_____

    Secretary

5

Attest:

_____
          Secretary


                              CITIBANK, N.A., as Trustee


                              By: _____
                                  Assistant Vice President

                                  JULIE SALOVITCH-MILLER
                                  SENIOR TRUST OFFICER

(SEAL)

Attest:

_____
          Secretary
          A. LA PEÑA
      Senior Trust Officer

5

STATE OF NEW YORK    )
                     )    ss:
COUNTY OF NEW YORK   )

On the 14ᵗʰ day of October, in the year 198_, before me personally came _Jose del Valle_, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _San Juan_, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

RICHARD M ZAROFF
NOTARY PUBLIC, State of New York
No. 41-____
Qualified in ____ County
Commission Expires ____ 83

STATE OF NEW YORK    )
                     )    ss:
COUNTY OF NEW YORK   )

On the 14ᵗʰ day of October, in the year 1992, before me personally came _June Sabvitch-Miller_ to me known, who, being by me duly sworn, did depose and say that she resides at _Freehold, N.J._; that she is an _Senior Trust Officer_ ___ of Citibank, N.A., the banking corporation described in and which executed the above instrument; that she knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

_Patricia Tampol_
NOTARY PUBLIC

My commission expires:

(SEAL)

PATRICIA TAMPOL
NOTARY PUBLIC, State of New York
File 24-01 TA 4659889
Qualified in Kings County
Certificate Filed in New York County
Commission Expires January 31, 1994

99/14/92\JUR\PREPA\BONDDOC\PRE-SUPP.AGT

6

confidential
Sankey/Vantage
Debtor Examination, 4 Board
Aug 31, 2017 15:28

( 54 )

## SEVENTH SUPPLEMENTAL AGREEMENT

**THIS SEVENTH SUPPLEMENTAL AGREEMENT,** dated for convenience of reference as of the 1st day of January, 1994, by and between

**PUERTO RICO ELECTRIC POWER AUTHORITY,**

a governmental instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

**CITIBANK, N.A.,**

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which corporation is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, as Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

**WHEREAS,** Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") has heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

**WHEREAS,** Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time and at any time, enter into such

confidential
Sankey/Vantage
Debtor Examination, 4 Board
Aug 31, 2017 15:28

USB_9019MOTION_0000172

agreements supplemental thereto as shall not be inconsistent with the
terms and provisions thereof (which supplemental agreements shall
thereafter form a part of the Agreement) to cure any ambiguity, to
correct or supplement any provisions therein which may be inconsistent
with any other provision therein, or to make any other provisions with
respect to matters or questions arising under the Agreement which shall
not be inconsistent with the provisions of the Agreement, provided such
action shall not adversely affect the interest of the bondholders, or
to grant to or confer upon the Trustee for the benefit of the
bondholders any additional rights, remedies, powers, authority or
security that may lawfully be granted or conferred upon the Trustee;
and

WHEREAS, the Authority has determined that it is desirable to
modify the covenant of the Authority relating to deposits to the credit
of the Renewal and Replacement Fund and to amend the provisions
relating to the qualifications of the Trustee; and

WHEREAS, the Trustee has received an opinion of counsel that this
Seventh Supplemental Agreement complies with the provisions of the
Agreement and that it is proper for the Trustee, under the provisions
of Article XI of the Agreement, to join in the execution hereof; and

WHEREAS, the execution and delivery of this Seventh Supplemental
Agreement have been duly authorized by resolution of the Authority and
the Authority has requested the Trustee to join with it in the
execution of this Seventh Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the
Constitution and laws of the Commonwealth of Puerto Rico and by the
rules and regulations of the Authority to happen, exist and be

USB_9019MOTION_0000173

performed precedent to and in the execution and delivery of this Seventh Supplemental Agreement have happened, exist and have been performed as so required; and

**WHEREAS,** the Trustee has accepted the trusts created by this Seventh Supplemental Agreement and in evidence thereof has joined in the execution hereof;

**NOW, THEREFORE, THIS SEVENTH SUPPLEMENTAL AGREEMENT WITNESSETH,** that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Seventh Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.   The Agreement is hereby amended in the following respects:

A.   Section 704 shall be revised to delete the phrase, ", as set forth in the most recent certificate of the Executive Director filed with the Trustee pursuant to clause (d) of Section 208 of this Agreement,".

B.   In Section 914 the last paragraph is amended by adding immediately after "($50,000,000)" the following:

> "(or whose obligations hereunder are guaranteed by a bank or trust company duly authorized to exercise corporate trust powers and subject to examination by federal or state authority, of good standing, and having at the time of the appointment of such Trustee, a combined capital and surplus of at least such amount)".

2.   The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the

3



Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this Seventh Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary, and Citibank, N.A., has caused this Seventh Supplemental Agreement to be executed in its behalf by one of its Vice Presidents, and its corporate seal to be impressed hereon and attested by its ~~Secretary or an Assistant~~ Secretary, all thereunto duly authorized, all as of the day and year first above written.

*one of / Vice President*

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____
                    Executive Director

(SEAL)

Attest:

_____
Secretary

CITIBANK, N.A.

By: _____
                    Vice President

(SEAL)

Attest:

_____
~~Assistant Secretary~~
*Vice President*

4

USB_9019MOTION_0000175

COMMONWEALTH OF PUERTO RICO      )
                                 )         ss.:
MUNICIPALITY OF SAN JUAN         )      Affidávit No. 584 *(Copy)*

    On the ___16___ day of ___February___, in the year 1994,
before me personally came __Mr. Miguel A. Cordero__, to me
known, who, being by me duly sworn, did depose and say that he resides
in the Municipality of ___Caguas___, Puerto Rico; that
he is the Executive Director of Puerto Rico Electric Power Authority,
the body corporate described in and which executed the above
instrument; that he knows the seal thereof; that the seal affixed to
said instrument is the corporate seal of Puerto Rico Electric Power
Authority; that it was so affixed by order of the Governing Board of
Puerto Rico Electric Power Authority; and that he signed his name
thereto by like order.

                                    _Jorge A. Concepción Rivera_
                                     Jorge A. Concepción Rivera
My commission expires ___is Permanent___

(SEAL)

STATE OF NEW YORK    )
                     )         ss.:
COUNTY OF NEW YORK   )

    On the __11th__ day of __April__, in the year 1994,
before me personally came __John M. Rego__, to me
known, who, being by me duly sworn, did depose and say that he resides
at _Brooklyn, New York_; that he is a Vice President of Citibank,
N.A., the banking corporation described herein and which executed the
above instrument; that he knows the seal of said corporation; that it
was so affixed by the authority of the Board of Directors of said
corporation; and that he signed his name thereto by like authority.

My commission expires _____

(SEAL)

5

(54)

## CERTIFICATE AS TO EIGHTH SUPPLEMENTAL AGREEMENT.

I, HEYDSHA M. ECKERT DE COLON, Secretary of Puerto Rico
Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that
attached hereto is a true and correct copy of the Eighth
Supplemental Agreement, dated as of May 1, 1997, which is
substantially the same as the Supplemental Agreement which was
presented at the meeting of the Authority duly called and held on
April 21, 1994, and which was approved by the Authority by
resolution duly adopted at said meeting.

WITNESS my hand this 23rd day of May, 1997.

Secretary
Puerto Rico Electric Power Authority

2/449848.4

Confidential
State Street Bank
Ander Ferullo, Boeston & Blunn
Apr 01, 2017 10:58

## EIGHTH SUPPLEMENTAL AGREEMENT

THIS EIGHTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of May, 1997, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (hereinafter sometimes called the "Authority"), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal corporate trust office in the City and State of New York, which national banking association is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, as Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, the Authority and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

178
State Street Bank
Ander Ferullo, Boeston & Blunn
Apr 01, 2017 15:23

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may enter into such agreements supplemental to the Agreement as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Trust Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provisions for the calculation of interest on Variable Rate Bonds in respect of which an interest rate SWAP agreement is in effect, and

WHEREAS, the Trustee has received an opinion of counsel that the Eighth Supplemental Agreement complies with the provisions of the Agreement and that it is proper for the Trustee, under the provisions of Article XI of the Agreement, to join in the execution hereof; and

WHEREAS, the execution and delivery of this Eighth Supplemental Agreement have been duly authorized by resolution of the Board of the Authority and the Authority has requested the Trustee to join with it the execution of this Eighth Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Eighth Supplemental Agreement to be published and

USB_9019MOTION_0000179

mailed as required by the Agreement, and the holders of at least sixty per cent (60%) in aggregate principal amount of the outstanding bonds have specifically consented in writing to and approved the execution hereof; and

**WHEREAS**, all acts, conditions and things required by the Constitution and laws of the Commonwealth of Puerto Rico and by the resolutions of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Eighth Supplemental Agreement have happened, exist and have been performed as so required; and

**WHEREAS**, the Trustee has accepted the trusts created by this Eighth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

**NOW, THEREFORE, THIS EIGHTH SUPPLEMENTAL AGREEMENT WITNESSETH,** that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Eighth Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.    The Agreement is hereby amended and supplemented in the following respects:

USB_9019MOTION_0000180

Confidential
Governmente
Ne, don Professional Bank & Trust
Aug 11, 2017 16:08

A.   In Section 101 clause (b) of the definition of "Principal and Interest Requirements" is hereby revised to read as follows:

> "(b) the amount required to pay the principal of all outstanding serial bonds of such Series which is payable after July 31 in such fiscal year and on or prior to July 31 in the following fiscal year, and ".

B.   In Section 101 the definition of "Principal and Interest Requirements" is hereby supplemented by the addition of the following sentence at the end of the third paragraph:

> "If the Authority has notified the Trustee that a SWAP agreement is in effect in respect of Variable Rate Bonds, then for all purposes of this paragraph, except for the purpose of determining the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502 hereof, in the certificate mentioned in clause (d) of Section 208 hereof and in the covenant contained in Section 704 hereof, the interest rate on such Variable Rate Bonds shall be the SWAP rate under such SWAP agreement."

C.   In Section 101 the definition of "Revenues" is hereby supplemented by the addition of the following sentence at the end of the paragraph:

> "Except for the purpose of determining the amount of the Revenues in the covenant as to rates contained in Section 502 hereof, Revenues shall not include any amounts paid to the Authority by a SWAP party in connection with Variable Rate Bonds."

D.   Section 101 is hereby supplemented by the addition of the following definitions before the definition of "System":

> "'SWAP agreement' shall mean an agreement between the Authority and a SWAP party whereby the SWAP party agrees to pay to the Authority amounts calculated on the basis of all or a portion of the interest on Variable Rate Bonds at or prior to the times such interest is due and


Confidential
J&P Dynasty
c don Professional Bank & Trust
Aug 11 2017 16:29

USB_9019MOTION_0000181

payable in consideration of the Authority's payment to the SWAP party of amounts set forth in the SWAP agreement.

"'SWAP party' shall mean a person who is party to a SWAP agreement and whose senior obligations are rated at the time of the execution and delivery of such SWAP agreement in one of the three highest rating categories (without regard to gradations within a category) by (i) Standard & Poor's Corporation or its successor and (ii) Moody's Investors Service or its successor.

"'SWAP rate' shall mean the fixed rate per annum on the principal amount of Variable Rate Bonds covered by a SWAP agreement equal to the percentage derived by dividing (i) the sum of the amounts in the last twelve months paid by the Authority in respect of interest on such bonds and to the SWAP party less the amount paid to the Authority by the SWAP party by (ii) such principal amount of Variable Rate Bonds; provided, however, that if such SWAP agreement has been in effect for less than twelve months, such percentage shall be multiplied by 360 divided by the number of days between the effective date of such SWAP agreement and the date of calculation determined on the basis of 30-day months."

E.   In Section 507 clause (c) is hereby supplemented by the addition of the following at the end of the penultimate proviso before the semi-colon:

" , except that in the case of Variable Rate Bonds in respect of which the Authority has notified the Trustee that a SWAP agreement is in effect, the Trustee shall use the SWAP rate in calculating the interest payable on such Bonds within the next ensuing twelve (12) months;"

2.   The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee shall be under no responsibility for the correctness of the same.

**IN WITNESS WHEREOF**, Puerto Rico Electric Power Authority has caused this Eighth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon



USB_9019MOTION_0000182

and attested by its Secretary or an Assistant Secretary, and State
Street Bank and Trust Company, N.A. has caused this Eighth
Supplemental Agreement to be executed on its behalf by one of its
Vice Presidents and its corporate seal to be impressed hereon and
attested by one of its Assistant Secretaries, all as of the day and
year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY



By: _____

Executive Director

(SEAL)

Attest:

_____
Secretary

STATE STREET BANK AND TRUST COMPANY, N.A.

By: _____
Vice President

(SEAL)

Attest:

_____
~~Assistant Secretary~~
VICE PRESIDENT

USB_9019MOTION_0000183

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

On the 23rd day of May, in the year 1997, before me personally came Miguel A. Cordero, to me known, who, being by me duly sworn, did depose and say that he resides at Caguas, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority; that he signed his name to the above instrument by order of said Authority, said Authority being the public corporation described in and which executed the above instrument.

_____
Notary Public

(SEAL)

**NEREIDA LUGO**
Notary Public, State of New York
No. 24-01LU4501878
Qualified in Kings County
Certificate Filed in New York County
Commission Expires April 30, 1999

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

On the 23rd day of May, in the year 1997, before me personally came James E. Murphy, to me known, who, being by me duly sworn, did depose and say that he resides at Freehold, New Jersey; that he is a Vice President of State Street Bank and Trust Company, N.A., the corporation described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of said corporation that it was so affixed by authority of said corporation; and that he signed his name thereto by like authority.

_____
Notary Public

(SEAL)

**NEREIDA LUGO**
Notary Public, State of New York
No. 24-01LU4501878
Qualified in Kings County
Certificate Filed in New York County
Commission Expires April 30, 1999

184

{47}

## CERTIFICATE OF SECRETARY OF THE AUTHORITY AS TO
## NINTH SUPPLEMENTAL AGREEMENT

I, HEYDSHA M. ECKERT DE COLÓN, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Ninth Supplemental Agreement, dated as of June 1, 1994, by and between the Authority and State Street Bank and Trust Company, N.A., successor Trustee, in substantially the form approved by the Governing Board of the Authority (the "Board") on June 8, 1994 by Resolution No. 2500 duly adopted by the Board and ratified on June 14, 1994 by Resolution No. 2501 duly adopted by the Board.

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of June, 1994.

_____
Secretary
Puerto Rico Electric Power Authority

185

Confidential
CCain W Warren
Master R LiPlaintopany U S SEQ U
Aug 13, 2017 16 28

## NINTH SUPPLEMENTAL AGREEMENT

THIS NINTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of June, 1994, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect;

WHEREAS, the Authority and the Trustee have heretofore entered into the sixth supplemental agreement, dated as of September 1, 1992, to the Agreement for the purpose of amending Section 210 of the Agreement to authorize the issuance of power revenue refunding bonds to be exchanged for an equal principal amount of all of the bonds then outstanding under the 1947 Indenture (hereinafter mentioned) upon satisfaction of the conditions set forth in said supplemental agreement; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provision with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

confidential
Cain Warren
Master R LiReadloccupany U S and
Aug 13, 2017 16 28

USB_9019MOTION_0000186

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined further to amend said Section 210 of the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to correct and supplement certain provisions to said Section 210 made by said sixth supplemental agreement which are inconsistent with certain other provisions thereof and to add to the conditions, limitations and restrictions on the issuance of said power revenue refunding bonds other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, the Authority has further determined to amend the Agreement to provide for a record date in connection with the payment of interest on registered bonds without coupons issued after May 1, 1994; and

WHEREAS, the Trustee has received an opinion of counsel that the Ninth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Ninth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Ninth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Ninth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Ninth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS NINTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Ninth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.  The Agreement is hereby amended and supplemented in the following respect:

USB_9019MOTION_0000187

Confidential
C. Jacob Willinger
Marcal, Smith Subclass 'on & Blank
Aug 03, 2017 10:38

A.    In Section 101 the following definition is added immediately following the definition of Paying Agents:

> "The term 'predecessor bonds' shall mean, with respect to any registered bond without coupons, every previous bond evidencing all or a portion of the same debt as that evidenced by such registered bond without coupons; and, for the purpose of this definition, any bond authenticated and delivered under Section 212 of this Agreement in lieu of a mutilated, destroyed or lost bond shall be deemed to evidence the same debt as the mutilated, destroyed or lost bond."

B.    The third sentence of the sixth paragraph of Section 203 is changed to read as follows:

> "The principal of all registered bonds without coupons shall be payable only to the registered owner or his legal representative at the principal corporate trust office of the Trustee, and payment of the interest on each registered bond without coupons shall, except as may otherwise be provided by resolution of the Authority authorizing the issuance of any Series of bonds under this Agreement, be made by the Trustee on each interest payment date to the person appearing on the registration books of the Authority hereinafter provided for as the registered owner thereof (or of any predecessor bond) on the 15th day of the month next preceding such interest payment date, by check mailed to such registered owner at his address as it appears on such registration books."

C.    The last sentence of the second paragraph of Section 206 is changed to read as follows:

> "Neither the Authority nor the Trustee shall, except as may otherwise be provided by resolution of the Authority authorizing the issuance of any Series of bonds under this Agreement, be required to make any such exchange or registration of transfer of bonds during the fifteen (15) days immediately preceding an interest payment date on the bonds or, in the case of any proposed redemption of bonds, immediately preceding the date of first publication of notice of such redemption, or after such bond or any portion thereof has been selected for redemption."

D.    The last two paragraphs of Section 210 are deleted and the following Section shall be added immediately after Section 210:

> "**Section 210A.**  Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, at one time, for the purpose of exchanging such revenue refunding bonds for an equal principal amount of all of the 1947 Indenture Bonds then outstanding.  Before any bonds shall be issued under the provisions of this Section 210A, the Board shall adopt a resolution

Confidential
C. Jacob Willinger
188
Marcal, Smith Subclass 'on & Blank
Aug 03, 2017 10:38



USB_9019MOTION_0000188

authorizing the issuance of such bonds, fixing the amount and details thereof and describing the 1947 Indenture Bonds to be exchanged therefor. Such revenue refunding bonds shall be designated, shall be issued in the form of registered bonds without coupons, shall be in such denominations and shall be numbered, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Such revenue refunding bonds shall be dated the July 1 or January 1 to which interest has been paid on the 1947 Indenture Bonds to be exchanged therefor, shall bear interest at the same rate or rates as the interest on such 1947 Indenture Bonds, shall be stated to mature in the same principal amounts and on the same dates as such 1947 Indenture Bonds and shall be subject to redemption at the same times and prices, either in whole or in part, as such 1947 Indenture Bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement.

"Revenue refunding bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

(a)     a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b)     a copy, certified by the Secretary, of the resolution adopted by the Board directing the authentication and delivery of such bonds to or upon the order of the holders of the 1947 Indenture Bonds to be exchanged therefor;

(c)     such documents as shall be required by the Trustee to show that, upon the date designated for exchange, no 1947 Indenture Bonds shall then be outstanding under the provisions of the 1947 Indenture;

(d)     an opinion of counsel, who may be counsel for the Authority, to the effect that, on the date designated for exchange, notice having been duly given in the manner and under the conditions hereinafter provided and revenue refunding bonds duly executed and authenticated as herein provided being held by the Trustee for delivery for exchange for 1947 Indenture Bonds, interest on such 1947 Indenture Bonds shall be deemed to have ceased to accrue from the January 1 or July 1 to which interest has been paid, the coupons for any coupon bonds called for exchange payable subsequent to the exchange date shall be void and such 1947 Indenture Bonds shall cease to be entitled to any lien, benefit or security under the 1947 Indenture and the holders of such 1947 Indenture Bonds shall have no rights in respect thereof, except to receive such revenue refunding bonds of the same principal amount and maturity, bearing interest at the same rate, subject to redemption at the same times and prices as such 1947 Indenture Bonds and of any denomination or denominations authorized by this Agreement; and

USB_9019MOTION_0000189

(e)      an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

"Not later than forty-five (45) days before the exchange date of such revenue refunding bonds for such 1947 Indenture Bonds, the Authority shall give written notice to the Trustee and the 1947 Trustee of the proposed exchange and shall direct the 1947 Trustee to provide the Trustee with the names and addresses of the owners of such 1947 Indenture Bonds that are registered bonds without coupons or coupon bonds registered as to principal alone or as to both principal and interest. At least thirty (30) days before such exchange date the Trustee shall cause a notice of such exchange substantially in the form prepared by the Authority and signed by the Trustee (a) to be published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, and (b) to be mailed, postage prepaid, to all registered owners of such 1947 Indenture Bonds at their addresses provided to the Trustee by the 1947 Trustee, but failure to mail such notice to any registered owner shall not affect the validity of the proceedings for the exchange of 1947 Indenture Bonds of any other registered owners. If all the 1947 Indenture Bonds to be exchanged are registered bonds without coupons or coupon bonds registered  as to principal alone  or as to both principal and interest, such notice shall be given by mail, and the Trustee shall not be required to publish such notice. Each such notice shall set forth the date fixed for exchange, the address of the office of the Trustee at which the 1947 Indenture Bonds with all unmatured coupons appurtenant thereto, if any, shall be presented and surrendered for exchange, that on the exchange date interest on such 1947 Indenture Bonds shall be deemed to have ceased to accrue from the January 1 or July 1 to which interest has been paid, the coupons for any coupon bonds called for exchange payable subsequent to the exchange date shall be void and such 1947 Indenture Bonds shall cease to be entitled to any lien, benefit or security under the 1947 Indenture and the holders of such 1947 Indenture Bonds shall have no rights in respect thereof, except to receive registered bonds without coupons issued hereunder of the same principal amount and maturity, bearing interest at the same rate, subject to redemption at the same times and prices as such 1947 Indenture Bonds and of any denomination or denominations authorized by this Agreement.

"All 1947 Indenture Bonds and unmatured coupons appurtenant thereto, if any, upon surrender thereof to the Trustee shall be delivered to the 1947 Trustee for cancellation."

2.      The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.



USB_9019MOTION_0000190

3.      This Ninth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Ninth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Ninth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
        Executive Director

Attest:

_____
        Secretary

        STATE STREET BANK AND
        TRUST COMPANY, N.A.,
        as successor Trustee

        By:_____
                Assistant Vice President

Attest:

_____
        Trust Officer

6

USB_9019MOTION_0000191

3.     This Ninth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Ninth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Ninth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____

Executive Director

Attest:

_____
Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____

Assistant Vice President

Attest:

_____
Trust Officer

USB_9019MOTION_0000192

3.    This Ninth Supplemental Agreement may be amended and supplemented
in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this
Ninth Supplemental Agreement to be executed by its Executive Director and its corporate seal
to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street
Bank and Trust Company, N.A., has caused this Ninth Supplemental Agreement to be executed
in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon
and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
        Executive Director

Attest:

_____
        Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By_____
        Assistant Vice President

Attest:

ANGELITA *der* PENA
ASSISTANT VICE PRESIDENT

USB_9019MOTION_0000193

COMMONWEALTH OF PUERTO RICO        )
                                   )        ss.:
MUNICIPALITY OF SAN JUAN           )

     On the _____ day of _____, in the year 19_____, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

                              _____
                                 NOTARY PUBLIC

My commission expires:

(SEAL)

STATE OF NEW YORK        )
                         )        ss.:
COUNTY OF NEW YORK       )

     On the _30th_ day of _June_, in the year 19 _94_, before me personally came JULIE SALOVITCH-MILLER, to me known, who, being by me duly sworn, did depose and say that he resides at _Freehold, New Jersey_; that he is an Assistant Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

                          *Patricia C. Sampol*
                               NOTARY PUBLIC

My commission expires:

                           PATRICIA C. TAMPOL
                 Notary Public, State of New York
                    No. 01TA4659889
                  Qualified in Kings County
            Certificate Filed in New York County
          Commission Expires January 31, 1996

(SEAL)

7

(55)

## CERTIFICATE OF SECRETARY OF THE AUTHORITY AS TO
## TENTH SUPPLEMENTAL AGREEMENT

I, HEYDSHA M. ECKERT DE COLON, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Tenth Supplemental Agreement, dated as of August 1, 1995, by and between the Authority and State Street Bank and Trust Company, N.A., successor Trustee, in substantially the form approved by the Governing Board of the Authority (the "Board") on August 10, 1995 by Resolution No. 2576 duly adopted by the Board on such date.

IN WITNESS WHEREOF, I have hereunto set my hand this 31st day of August, 1995.

_____
Secretary
Puerto Rico Electric Power Authority

USB_9019MOTION_0000195

## TENTH SUPPLEMENTAL AGREEMENT

THIS TENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of August, 1995, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provision with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

USB_9019MOTION_0000196

WHEREAS, the Authority has determined to amend the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to modify the Agreement to establish a self-insurance fund and to provide for deposits and the application of moneys held to the credit of said fund; and

WHEREAS, the Trustee has received an opinion of counsel that this Tenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Tenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Tenth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed  precedent to and in the execution and delivery of this Tenth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Tenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS TENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Tenth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      Section 101 is hereby supplemented by the addition of the following definition before the definition of "Construction Fund":

"The term "Capital Improvement Fund" shall mean the Puerto Rico Electric Power Authority Capital Improvement Fund, a special fund created and designated by Section 507 of this Agreement."

B.      In Section 101 the definition of Current Expenses is hereby revised by adding a comma after "512" and inserting after such comma "512A, 512B."



USB_9019MOTION_0000197

C.    In Section 101 the definition of Revenues is hereby revised by adding a comma after the words "the Construction Fund" and inserting after such comma the words "the Capital Improvement Fund."

D.    Section 101 is hereby supplemented by the addition of the following definition before the definition of "serial bonds":

"The term "Self-insurance Fund" shall mean the Puerto Rico Electric Power Authority Self-insurance Fund, a special fund created and designated by the provisions of Section 507 of this Agreement."

E.    Section 507 is hereby supplemented by the addition of the following sentence immediately after the third sentence of the first paragraph of said Section:

"Two other special funds are hereby created and designated "Puerto Rico Electric Power Authority Self-insurance Fund" (herein some times called the "Self-insurance Fund") and "Puerto Rico Electric Power Authority Capital Improvement Fund" (herein sometimes called the "Capital Improvement Fund")."

F.    Section 507 is hereby further supplemented by the deletion of the word "and" immediately after the last semicolon in clause (c) of said Section, the deletion of the period and the insertion of a semicolon at the end of clause (d) and the insertion of the following two clauses immediately prior to the penultimate paragraph in said Section as follows:

"(e)  On the date of the release of the 1947 Indenture, to the credit of the Self-insurance Fund an amount equal to the amount held to the credit of the General Reserve Fund under the 1947 Indenture on the date of such release remaining after making the deposits under clauses (a), (b), (c) and (d) above and thereafter such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c) and (d) above, as the Consulting Engineers shall from time to time recommend; and

"(f)  After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Capital Improvement Fund such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c), (d) and (e) above, as the Consulting Engineers shall recommend as provided by Section 706 of this Agreement; provided, however, that if the amount so deposited to the credit of said Fund during any fiscal year of the Authority shall be less than the amount recommended by the Consulting Engineers, the requirement therefor shall nevertheless be cumulative and the amount of any such deficiency in any such fiscal year shall be added to the amount otherwise required to be deposited in each fiscal year thereafter until such time as such deficiency shall have been made



USB_9019MOTION_0000198

Confidential
Claims/Group
Master, Co/Post/Bondholder & Store
Aug 31, 2017 10:28

up, unless such requirement shall have been modified by the Consulting Engineers in writing, a signed copy of such modification to be filed with the Authority."

       G.    The last sentence of the second paragraph of Section 507 is hereby revised to read as follows:

      "After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a) through (f) above may be used for any lawful purpose of the Authority.

       H.    The last paragraph of Section 507 is hereby revised by inserting a comma immediately after the words "Reserve Maintenance Fund" and inserting after such comma the words "the Self-insurance Fund and the Capital Improvement Fund".

       I.    The following two Sections shall be added immediately after Section 512:

      "**Section 512A.**  Except as hereinafter provided in the following two paragraphs and in Section 707 of this Agreement, moneys held for the credit of the Self-insurance Fund (1) shall be disbursed in the manner provided by Section 402 of this Agreement for disbursements from the Construction Fund only for the purpose of paying the cost of repairing, replacing or reconstructing any property damaged or destroyed from or extraordinary expenses incurred as a result of a cause which is not covered by insurance under the provisions of said Section 707 or (2) shall be transferred to the Revenue Fund in an amount, approved by the Consulting Engineers, equal to the loss of income from the System as a result of a cause which is not covered by insurance under the provisions of said Section 707.

      "If at any time moneys held for the credit of the Bond Service Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund to the credit of the Bond Service Account pursuant to the provisions of the first sentence of the second paragraph of Section 512 of this Agreement) shall be insufficient for the purpose of paying the interest on all bonds and the principal of all serial bonds as such interest and principal becomes due and payable, then the Authority shall transfer from any moneys held for the credit of the Self-insurance Fund to the credit of the Bond Service Account an amount sufficient to make up such deficiency. If at any time moneys held for the credit of the Redemption Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund to the credit of the Redemption Account pursuant to the provisions of the second sentence of the second paragraph of Section 512 of this Agreement) shall be insufficient for the purpose

Confidential
Claims/Group
Master, Co/Post/Bondholder & Store
Aug 31, 2017 10:28
199

USB_9019MOTION_0000199

of providing funds for the retirement of bonds to the extent of the Authorization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Self-insurance Fund to the credit of the Redemption Account an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement.

"If the Authority shall have determined that all or any portion of the moneys held to the credit of the Self-insurance Fund is no longer needed for the purposes specified in the second preceding paragraph, the Authority may withdraw an amount equal to such portion from the Self-insurance Fund and transfer such amount to the credit of the Bond Service Account; provided, however, that no such transfer shall be made prior to the time that the Consulting Engineers shall have approved such transfer in writing.

"**Section 512B.** Moneys held for the credit of the Capital Improvement Fund shall be disbursed in the manner provided by Section 402 of this Agreement only for paying the cost of anticipated extensions and Improvements of the System the cost of which has not otherwise been provided for from the proceeds of bonds issued under the provisions of this Agreement.

"If at any time moneys held for the credit of the Bond Service Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund or the Self-insurance Fund to the credit of the Bond Service Account pursuant to the provisions of the first sentence of the second paragraph of Sections 512 and 512A of this Agreement, respectively) shall be insufficient for the purpose of paying the interest on all bonds and the principal of all serial bonds as such interest and principal becomes due and payable, then the Authority shall transfer from any moneys held for the credit of the Capital Improvement Fund to the credit of the Bond Service Account an amount sufficient to make up such deficiency. If at any time moneys held for the credit of the Redemption Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund or the Self-insurance Fund to the credit of the Redemption Account pursuant to the provisions of the second sentence of the second paragraph of Sections 512 and 512A of this Agreement, respectively) shall be insufficient for the purpose of providing funds for the retirement of bonds to the extent of the Authorization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Capital Improvement Fund to the credit of the Redemption Account an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond

USB_9019MOTION_0000200

Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement."

J.     The second paragraph of Section 602 of the Agreement is hereby supplemented by deleting the word "and" immediately after the words "Construction Fund" and inserting instead a comma and adding the phrase "and the Self-insurance Fund" immediately after the words "Reserve Maintenance Fund."

K.     The penultimate paragraph of Section 706 is hereby revised by inserting a comma immediately after the words "Section 512 of this Agreement" in the last sentence of said paragraph" and adding immediately after such comma the phrase "deposited during the ensuing fiscal year to the credit of the Self-insurance Fund for the purposes set forth in Section 512A of this Agreement, if any, and deposited during the ensuing fiscal year to the credit of the Capital Improvement Fund for the purposes set forth in Section 512B of this Agreement".

L.     The last sentence of the penultimate paragraph of Section 707 of the Agreement is hereby supplemented by inserting a comma immediately after the phrase "available for such purpose" and adding immediately after such comma the phrase "including any moneys held for the credit of the Self-insurance Fund."

2.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

6

USB_9019MOTION_0000201

3.    This Tenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Tenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Tenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____
    Executive Director

Attest:

_____
    Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____
    Assistant Vice President

Attest:

_____
    Trust Officer

USB_9019MOTION_0000202

COMMONWEALTH OF PUERTO RICO      )
                                 )      ss.:
MUNICIPALITY OF SAN JUAN         )

On the _25_ day of _August_, in the year 19_95_, before me personally came _Miguel A Cordero_, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _Caguas_, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # _3185_                                    NOTARY PUBLIC

My commission expires:

(SEAL)

STATE OF NEW YORK      )
                       )      ss.:
COUNTY OF NEW YORK     )

On the _30th_ day of _August_, in the year 19_95_, before me personally came _JULIE SALOVITCH-MILLER, Assistant Vice President_, to me known, who, being by me duly sworn, did depose and say that he resides at _Freehold, NJ_; that he is an Assistant Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

                                                    Patricia C. Tampol
                                             NOTARY PUBLIC

                                        PATRICIA C. TAMPOL
                                   Notary Public, State of New York
                                          No. 01TA4659889
                                      Qualified in Kings County
                                Certificate Filed in New York County
                                 Commission Expires January 31, 1996

My commission expires:

(SEAL)

8

(50)

## CERTIFICATE AS TO ELEVENTH SUPPLEMENTAL AGREEMENT

I, HEYDSHA M. ECKERT DE COLON, Secretary of Puerto Rico Electric Power Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Eleventh Supplemental Agreement, dated as of April 1, 1999, which is substantially the same as the Supplemental Agreement which was presented at the meeting of the Authority duly called and held on March 24, 1998, and which was approved by the Authority by resolution duly adopted at said meeting.

WITNESS my hand this 6th day of April, 1999.

Secretary
Puerto Rico Electric Power Authority

USB_9019MOTION_0000204

## ELEVENTH SUPPLEMENTAL AGREEMENT

THIS ELEVENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of April, 1999, by and between

PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Trust Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provisions for the creation of a Subordinate Obligations Fund, modify the required deposits to the Sinking Fund and the Rescue Maintenance Fund and required, and to expand the permitted investments for moneys to the credit of the Self-insurance Fund; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Trustee has received an opinion of counsel that this Eleventh Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for

USB_9019MOTION_0000205

the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Eleventh Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Eleventh Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Eleventh Supplemental Agreement to be published and mailed as required by the Agreement, and the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds have specifically consented in writing to and approved the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Eleventh Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Eleventh Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS ELEVENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Eleventh Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      Section 101 is hereby supplemented by the addition of the following definition before the definition of "Amortization Requirement":

"The term 'Amortization Accrual' shall mean for any period the amount of an Amortization Requirement that would accrue during such period if such Requirement accrued ratably on the basis of a year consisting of twelve (12) thirty-day months. Unless otherwise provided by resolution of the Authority or an agreement supplemental hereto, the monthly accrual in respect of an Amortization Requirement for a term bond shall commence on the first day of each month in the fiscal year for which such Requirement has been established and shall end on the first day of the month succeeding the relevant Deposit Day."

B.      In Section 101, the definition of Current Expenses is hereby revised by deleting the word "and" after the phrase "the Self-insurance Fund", inserting in its place a comma and inserting before the period the phrase "and the Subordinate Obligation Fund".

USB_9019MOTION_0000206

Confidential
Subject to FRE 408
Mediation Privilege and Settlement
April 13, 2017 15:56

      C.     Section 101 is hereby supplemented by the addition of the following definition before the definition of "Executive Director":

      "The term 'Deposit Day' shall mean the date specified in the first paragraph of Section 507 of this Agreement as the date by which all of the moneys then held to the credit of the Revenue Fund shall be withdrawn by the Treasurer and deposited in the manner set forth in said Section."

      D.     Section 101 is hereby supplemented by the addition of the following definitions before the definition of "Investment Obligations":

      "The term 'Independent Consultant' shall mean the consultant or consulting firm or corporation at the time employed by the Authority under the provisions of Section 706 of this Agreement to perform and carry out the duties of the Independent Consultant by this Agreement."

      "The term 'Interest Accrual' shall mean for any period the amount of interest that would accrue during such period if such interest accrued ratably on the basis of a year consisting of twelve (12) thirty-day months. Unless otherwise provided by resolution of the Authority or an agreement supplemental hereto, the monthly accrual in respect of interest on the bonds shall commence on the later to occur of the date of issue of the bonds of such Series and the date that is six months prior to the due date of such interest and shall end on the first day of the month following the relevant Deposit Day. In the case of Variable Rate Bonds, the amount deposited shall be based on the sum of the interest accrued through the business day preceding the relevant Deposit Day and the interest (calculated at the maximum rate of interest on such Bonds, or if there is no such maximum rate, then at the rate on such Bonds on the business day preceding the Deposit Day plus one percent (1%)) that would accrue on such Bonds from the Deposit Day to the later to occur of the first day of the next calendar month and any interest payment date on such Bonds occurring prior to the next Deposit Day."

      E.     Section 101 is hereby supplemented by the addition of the following definition before the definition of "Principal and Interest Requirements":

      "The term 'Principal Accrual' shall mean for any period the amount of principal that would accrue during such period if such principal accrued ratably on the basis of a year consisting of twelve (12) thirty-day months. Unless otherwise provided by resolution of the Authority or an agreement supplemental hereto, the monthly accrual in respect of the principal of serial bonds shall commence on the first day of the twelfth month preceding the due date of such principal and shall end on the first day of the month succeeding the relevant Deposit Day."

      F.     In Section 101 the definition of Revenues is hereby revised by adding a comma after the words "the Capital Improvement Fund" and inserting after such comma the following: "the Subordinate Obligations Fund to the extent such income has been derived from the investment of moneys in such Fund to be used to pay Subordinate Obligations incurred to

Confidential
Subject to FRE 408
Mediation Privilege and Settlement
April 13, 2017 15:56

USB_9019MOTION_0000207

pay the cost of any work or properties which have not been included by the Authority as part of the System as provided in Section 516 hereof."

G.     Section 101 is hereby supplemented by the addition of the following definitions before the definition of "System":

"The term 'Subordinate Obligations' shall mean any obligations of the Authority incurred as provided in Section 516 of this Agreement."

"The term 'Subordinate Obligations Fund' shall mean the Puerto Rico Electric Power Authority Subordinate Obligations Fund, a special fund created and designated by Section 507 of this Agreement."

H.     In Section 101 the definition of System is hereby revised by inserting the following before the period: "or from Subordinate Obligations to the extent such works and properties have been included by the Authority as part of the System as provided in Section 516 hereof."

I.     Section 507 is hereby supplemented by the addition of the following sentence immediately after the fourth sentence of the first paragraph of said Section:

"Another special fund is hereby created and designated "Puerto Rico Electric Power Authority Subordinate Obligations Fund" (herein some times called the "Subordinate Obligations Fund")."

J.     Paragraphs (a), (b) and (d) of Section 507 are hereby changed to read as follows:

"(a) to the credit of the Bond Service Account, such amount thereof (or the entire sum so withdrawn if less than the required amount) as may be required to make the total amount then to the credit of the Bond Service Account equal to the sum of

(i)     the Interest Accrual on all the outstanding bonds to and including the first day of the next calendar month, and

(ii)     the Principal Accrual on the outstanding serial bonds to and including the first day of the next calendar month;"

"(b) to the credit of the Redemption Account, such amount, if any, of any balance remaining after making the deposit under clause (a) above (or the entire balance if less than the required amount) as may be required to make the amount then to the credit of the Redemption Account equal to the Amortization Accrual to and including the first day of the next calendar month;"

"(d) to the credit of the Reserve Maintenance Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b) and (c) above (or the entire balance if less than the required amount) as may be recommended by the Consulting Engineers, as provided by Section 706 of this Agreement, to be deposited to

USB_9019MOTION_0000208

the credit of said Fund during such month; provided, however, that if the amount so deposited to the credit of said Fund in any month shall be less than the amount recommended by the Consulting Engineers, the requirement therefor shall nonetheless be cumulative and the amount of any such deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up, unless such requirement shall have been modified by the Consulting Engineers in writing, a signed copy of such modification to be filed with the Authority; and provided further, however, that in the event that the Authority shall so covenant in respect of any Subordinate Obligation, as authorized by Section 516 of this Agreement, the deposit required by this clause (d) in any month shall be equal to the least of

     (i)     the amount described above in this clause (d),

     (ii)    the amount of $400,000, and

     (iii)   an amount that when added to the amount then held to the credit of the Reserve Maintenance Fund shall make the total amount to the credit of said Fund equal to $10,000,000;"

     K.     Section 507 is hereby further supplemented by redesignating paragraphs (e) and (f) as paragraphs (g) and (h) and inserting the following paragraphs after paragraph (d) to read as follows:

"(e) to the credit of one or more special accounts in the Subordinate Obligations Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c) and (d) above (or the entire balance if less than the required amount) that together with funds then held to the credit of the Subordinate Obligations Fund will make the total amount then to the credit thereof equal to any amounts required to be paid or accrued with respect to any Subordinate Obligations prior to the Deposit Day of the next succeeding month from or to the Subordinate Obligations Fund;"

"(f) in the event the Authority shall have covenanted pursuant to Section 516 with respect to Subordinate Obligations to limit its deposit to the Reserve Maintenance Fund in accordance with the provisions of the second proviso of clause (d) above and in fact the deposit to said Fund pursuant to clause (d) was limited to the amount described in subclause (ii) or (iii), to the credit of the Reserve Maintenance Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c), (d) and (e) above (or the entire balance if less than the required amount) as may be required to make the total amount deposited to the credit of the Reserve Maintenance Fund in such month equal to the amount described in subclause (i) of clause (d) above;"

     L.     The last sentence of the second paragraph of Section 507 is hereby revised to read as follows:

USB_9019MOTION_0000209

"After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a) through (h) above may be used for any lawful purpose of the Authority."

M.    In the last paragraph of Section 507 there are hereby added the following sentences immediately before Section 508:

"The moneys in each account in the Subordinate Obligations Fund shall be held by the Authority (or a Depositary) in trust, separate and apart from all other funds of the Authority, and shall be applied as hereinafter provided with respect to such Fund and, pending such application, shall be subject to a lien and charge in favor of the holders of the Subordinate Obligations incurred in the manner provided under this Agreement and for the further security of such holders until paid out or transferred as herein provided.  The Authority (or such Depositary) may establish one or more accounts within the Subordinate Obligations Fund corresponding to the source of moneys or particular Subordinate Obligations for each deposit made into said Fund so that the Authority (and such Depositary) may ascertain the source and date of deposit of the moneys in each such account."

N.    The following Section shall be added immediately after Section 515:

"Section 516. Application of Moneys in Subordinate Obligations Fund.  (a)  Moneys held for the credit of the Subordinate Obligations Fund shall be paid out or pledged by the Authority as necessary to enable the Authority to meet its Subordinate Obligations.  Subordinate Obligations may be incurred or issued by the Authority for any proper corporate purpose of the Authority.

"(b)  The Authority shall have the right to covenant with the holders from time to time of any Subordinate Obligations issued or incurred by the Authority to limit the deposits to the Reserve Maintenance Fund as authorized by Section 507(d) and to add to the conditions, limitations and restrictions under which bonds may be issued under the provisions of Sections 208, 209 and 210 hereof.

"(c)  Any such Subordinate Obligations shall be payable out of and may be secured by a pledge of (i) such amounts in the Subordinate Obligations Fund as may from time to time be available therefor, and (ii) any other funds of the Authority that may be available for such purpose, provided that any such payment or pledge made pursuant to clause (i) of this sentence shall be, and shall be expressed to be, subordinate and junior in all respects to the lien and charge of the bonds secured hereby upon the Revenues.

"(d)  Before incurring any Subordinate Obligations the proceeds of which shall finance in whole or in part the acquisition or construction of any works or properties by the Authority in connection with the production, distribution or sale of electric energy, the Authority shall adopt a resolution specifying whether or not such works or properties are to be included as part of the System.

USB_9019MOTION_0000210

"(e)   The resolution, indenture or other instrument securing each issue of Subordinate Obligations shall contain provisions (which shall be binding on all holders of such Subordinate Obligations) not more favorable to the holders of such Subordinate Obligations than the following:

(1)   In the event of any insolvency or bankruptcy proceedings, and any receivership, liquidation, reorganization or their similar proceedings in connection therewith, relative to the Authority or to its creditors, as such, or to its property, and in the event of any proceedings for voluntary liquidation, dissolution or other winding up of the Authority, whether or not involving insolvency or bankruptcy, the owners of all bonds then outstanding shall be entitled to receive payment in full of all principal and interest due on all such bonds in accordance with the provisions of this Agreement before the holders of the Subordinate Obligations are entitled to receive any payment from the funds pledged to the bonds on account of principal (and premium, if any) or interest upon the Subordinate Obligations.

(2)   In the event that any Subordinate Obligation is declared due and payable before its expressed maturity because of the occurrence of an event of default (under circumstances when the provisions of (1) above shall not be applicable), the owners of all bonds outstanding at the time such Subordinate Obligation becomes due and payable because of the occurrence of such an event of default shall be entitled to receive payment in full of all principal of and interest on all such bonds then due and payable before the holder of such Subordinate Obligation is entitled to receive any accelerated payment from the Revenues and other moneys pledged to the bonds under this Agreement of principal (and premium, if any) or interest upon such Subordinate Obligation.

(3)   If any event of default specified in Section 802 hereof with respect to the bonds shall have occurred and be continuing (under circumstances when the provisions of (1) above shall not be applicable), the owners of all bonds then outstanding shall be entitled to receive payment in full of all principal of and interest on all such bonds as the same become due and payable before the holders of the Subordinate Obligations are entitled to receive, subject to the provisions of (5) below, any payment from the Revenues or other moneys pledged to the bonds under this Agreement of principal (and premium, if any) or interest upon the Subordinate Obligations.

(4)   No owner of a bond shall be prejudiced in this right to enforce subordination of the Subordinate Obligations by any act or failure to act on the part of the Authority.

(5)   The Subordinate Obligations may provide that the provisions of (1), (2), (3) and (4) above are solely for the purpose of defining the relative rights of the owners of the bonds on the one hand, and the holders of Subordinate Obligations on the other hand, and that nothing therein shall impair, as between the Authority and the holders of the Subordinate Obligations, the

USB_9019MOTION_0000211

obligation of the Authority, which is unconditional and absolute, to pay to the holders thereof the principal thereof and premium, if any, and interest thereon in accordance with their terms, nor shall anything therein prevent the holders of the Subordinate Obligations from exercising all remedies otherwise permitted by applicable law or thereunder upon default thereunder, subject to the rights under (1), (2), (3) and (4) above of the owners of bonds to receive cash, property or securities from the funds pledged to the bonds under this Agreement otherwise payable or deliverable to the holders of the Subordinate Obligations; and the Subordinate Obligations may provide that, insofar as a trustee or paying agent for such Subordinate Obligations is concerned, the foregoing provisions shall not prevent the application by such trustee or paying agent of any moneys deposited with such trustee or paying agent for the purpose of the payment of or on account of the principal (and premium, if any) and interest on such Subordinate Obligations if such trustee or paying agent did not have knowledge at the time of such application that such payment was prohibited by the foregoing provisions.

(6)    Any issue of Subordinate Obligations may have such rank or priority with respect to any other issue of Subordinate Obligations as may be provided in the resolution, trust agreement or other instrument securing such issue of Subordinate Obligations and may contain such other provisions as are not in conflict with the provisions of this Agreement.

(7)    Neither the Trustee nor any Depositary shall be deemed to owe any fiduciary duty to the holders of Subordinate Obligations and shall not be liable to such holders if it shall mistakenly pay over or transfer to owners of bonds, the Authority or any other person, moneys to which any holders of Subordinate Obligations shall be entitled by virtue of this Section 516 or otherwise, provided, however, that neither the Trustee nor any Depositary then holding the Subordinate Obligations Fund shall be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct.  Notwithstanding any of the provisions of this Section 516 or any other provision of this Agreement, neither the Trustee nor any such Depositary shall at any time be charged with knowledge of the existence of any facts that would prohibit the making of any payment of moneys to or by the Trustee or any such Depositary in respect of Subordinate Obligations or of any default in the payment of the principal of or premium, if any, or interest on any Subordinate Obligations, unless and until the Trustee or such Depositary shall have received written notice thereof from the Authority or the holders of a majority in principal amount of any class or category of any Subordinate Obligations or from any trustee or other fiduciary therefor and any financial institution that provides credit or security for any Subordinate Obligations."

O.  The following four paragraphs are hereby added immediately before the last paragraph of Section 602 of the Agreement to read as follows:

"Notwithstanding any provision of this Section to the contrary, moneys to the credit of the Self-insurance Fund may also be invested by the Authority in any

USB_9019MOTION_0000212

investments authorized by from Act. No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended from time to time (codified as Title 3, Chapter 33, Section 779, Laws of Puerto Rico Annotated), for the Retirement System of the Employees of the Government for Puerto Rico and its Instrumentalities; provided, however, that the Authority shall invest not less than the lesser of $25,000,000 and the entire balance to the credit of such Fund in Investment Obligations with an average weighted maturity of not in excess of three years.

"Prior to investing any moneys held for the credit of the Self-insurance Fund in other Investment Obligations, the Authority shall require an Independent Consultant retained pursuant to the provisions of Section 706 to present a report described in said Section 706 recommending what portion of moneys held for the credit of the Self-insurance Fund the Authority shall maintain invested in Investment Obligations. Should the Self-insurance Fund be held by the Trustee on behalf of the Authority, a copy of such report will be furnished to the Trustee.

"Prior to investing any moneys held for the credit of the Self-insurance Fund in other than Investment Obligations, the Authority shall, after duly considering the report it shall have received pursuant to the foregoing paragraph, formally adopt, subject to the consent of Government Development Bank for Puerto Rico, and maintain an investment policy first determining, subject to the limitation prescribed by the second preceding paragraph, the minimum portion of the moneys held for the credit of the Self-insurance Fund to remain invested in Investment Obligations and then setting forth prudent investment principles, considerations and goals, including, without limitation, liquidity, diversification of assets, safety and rate or rates of return, that will govern the investment strategies and goals for the balance of the moneys held for the credit of the Self-insurance Fund. The Authority agrees to advise the Trustee in writing of those investments other than Investment Obligations that are authorized by said investment policy.

"The Board shall receive at each regular meeting a detailed report from its Treasurer of the current portfolio of Investment Obligations, other securities and other moneys held to the credit of the Self-insurance Fund."

P. The following paragraphs are hereby added to Section 706 of the Agreement immediately preceding Section 707 to read as follows:

"The Authority covenants and agrees that so long as any bonds are outstanding under this Agreement, it will, for the purpose of carrying out the duties imposed on the Independent Consultant by this Agreement, employ one or more independent firms having a wide and favorable repute in the United States for expertise in risk management and other insurance matters related to the construction and operation of electric systems. Except for fees and expenses incurred under the provisions of Section 403 of this Agreement, the cost of

USB_9019MOTION_0000213

employing such Independent Consultant shall be treated as part of the cost of operation and maintenance of the System.

"It shall be the duty of the Independent Consultant to prepare and file with the Authority and the Trustee at least biennially, on or before the first day of November, beginning November 1, 1999, a report setting forth its recommendations, based on a review of the insurance then maintained by the Authority in accordance with Section 707 of this Agreement and the status of the Self-insurance Fund, of any changes in coverage, including its recommendations of policy limits and deductibles and self-insurance, and investment strategies for the Self-insurance Fund."

2.      The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.      This Eleventh Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

USB_9019MOTION_0000214

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Eleventh Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Eleventh Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By _____

Executive Director

Attest:

_____
Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____
Vice President

Attest:

_____
Trust Officer

225234/2

11

USB_9019MOTION_0000215

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this
Eleventh Supplemental Agreement to be executed by its Executive Director and its corporate
seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State
Street Bank and Trust Company, N.A., has caused this Eleventh Supplemental Agreement to be
executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon
and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
     Executive Director

Attest:

_____
     Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By:_____
     Vice President

Attest:

_____
Trust Officer

225234/2

USB_9019MOTION_0000216

COMMONWEALTH OF PUERTO RICO  )

)        ss.:

MUNICIPALITY OF SAN JUAN        )

On the __6__ day of _____, in the year 1999, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

NOTARY PUBLIC

My commission expires:

(SEAL)

STATE OF NEW YORK   )

)        ss.:

COUNTY OF NEW YORK)

On the _____ day of _____, in the year 1999, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides at _____; that he is a Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

225234/2

12

USB_9019MOTION_0000217

COMMONWEALTH OF PUERTO RICO )

                                 )     ss.:

MUNICIPALITY OF SAN JUAN        )

         On the _____ day of _____, in the year 1999, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #_____          ──────────────

                             NOTARY PUBLIC

My commission expires:

(SEAL)

STATE OF NEW YORK    )

                            )     ss.:

COUNTY OF NEW YORK)

         On the 8 TH day of APRIL , in the year 1999, before me personally came JAMES E MURPHY , to me known, who, being by me duly sworn, did depose and say that he resides at 66 CROSSWICKS RD FREEHOLD NJ ; that he is a Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

                          *Cheryl L. Clarke*
                          NOTARY PUBLIC

My commission expires:         Cheryl L. Clarke
                          Notary Public, State of New York
                          31-5057121
(SEAL)                  Qualified in New York County
                 Certificate Filed in New York County
                 Commission Expires March 18, 2000

225234/2

**(63)**

## CERTIFICATE OF SECRETARY OF THE AUTHORITY AS TO
## TWELFTH SUPPLEMENTAL AGREEMENT

I, HEYDSHA M. ECKERT DE COLON, Secretary of Puerto Rico Electric Power
Authority (the "Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct
copy of the Twelfth Supplemental Agreement, dated as of April 1, 1998, by and between the
Authority and State Street Bank and Trust Company, N.A., successor Trustee, in substantially
the form approved by the Governing Board of the Authority (the "Board") on March 24, 1998 by
Resolution No. 2706 duly adopted by the Board on such date.

IN WITNESS WHEREOF, I have hereunto set my hand this 7th day of April, 1998.

<div style="text-align:right;">
Secretary<br>
Puerto Rico Electric Power Authority
</div>

237277

4

219

## TWELFTH SUPPLEMENTAL AGREEMENT

THIS TWELFTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of April, 1998, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provision with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the

2/482230.3

USB_9019MOTION_0000220

purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined to amend the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to modify the definition of System to include works and properties the acquisition and construction of which shall be financed in whole or in part from moneys deposited to the credit of the Capital Improvement Fund, make certain formal changes to the definition of Current Expenses and to change the date of delivery of the annual report of the Consulting Engineers pursuant to Section 706 of the Agreement; and

WHEREAS, the Trustee has received an opinion of counsel that this Twelfth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Twelfth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Twelfth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rico Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Twelfth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Twelfth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS TWELFTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Twelfth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.  The Agreement is hereby amended and supplemented in the following respects:

A.  In Section 101 the definition of Current Expenses is hereby revised by deleting the comma after "512" and deleting after such comma "512A, 512B" and inserting a comma after the phrase "the Reserve Maintenance Fund" and after such comma the words "the Self-insurance Fund and the Capital Improvement Fund."

B.    In Section 101 the definition of System is hereby revised by adding a comma after the words "the Construction Fund" and inserting after such comma the words "the Capital Improvement Fund."

C.    The second paragraph of Section 706 is hereby revised by deleting the word "May" in the first sentence thereof and inserting instead the word "November".

2.    The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.    This Twelfth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

USB_9019MOTION_0000222

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Twelfth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Twelfth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____
    Executive Director

Attest:

_____
Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____
    Vice President

Attest:

_____
Vice President

USB_9019MOTION_0000223

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Twelfth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Twelfth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
      Executive Director

Attest:

_____
      Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By:_____
      Vice President

Vice President

2/482230.2                                    4

COMMONWEALTH OF PUERTO RICO )
           ) ss.:
MUNICIPALITY OF SAN JUAN  )

    On the 3rd day of April, in the year 1998, before me personally came Miguel A. Cordero, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of Caguas, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #3513

My commission expires:
 Permanent

(SEAL)

             NOTARY PUBLIC

STATE OF NEW YORK )
         ) ss.:
COUNTY OF NEW YORK )

    On the 6th day of April, in the year 1998, before me personally came James Murphy, to me known, who, being by me duly sworn, did depose and say that he resides at Freehold, New Jersey; that he is a Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

             NOTARY PUBLIC

My commission expires:

(SEAL)

482230

NEREIDA LUGO
Notary Public, State of New York
No. 24-01LU4501878
Qualified in Kings County
Certificate Filed in New York County
Commission Expires April 30, 1987.

5

USB_9019MOTION_0000225

(69)

CERTIFICATE OF SECRETARY OF THE AUTHORITY AS TO
THIRTEENTH SUPPLEMENTAL AGREEMENT

I, Maria E. Hernández-Torrales, Secretary of Puerto Rico Electric Power Authority (the

"Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the

Thirteenth Supplemental Agreement, dated as of January 1, 2002, by and between the Authority

and State Street Bank and Trust Company, N.A., successor Trustee, in substantially the form

approved by the Governing Board of the Authority (the "Board") on December 3, 2001 by

Resolution No. 2978 duly adopted by the Board on such date.

IN WITNESS WHEREOF, I have hereunto set my hand this 3rd day of January, 2002.

_____
Secretary
Puerto Rico Electric Power Authority

USB_9019MOTION_0000226

confidential
Clark Whitman
Nelson Frankliev Beauvais & Smith
Aug 21, 2017 15:29

## THIRTEENTH SUPPLEMENTAL AGREEMENT

THIS THIRTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of January, 2002, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## WITNESSETH:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provision with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined to amend the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to correct

confidential
Clark Whitman
227
Nelson Frankliev Beauvais & Smith
Aug 21, 2017 15:29

USB_9019MOTION_0000227

certain provisions of the Agreement, which provisions are inconsistent with other provisions therein, of the Eleventh Supplemental Agreement, dated as of April 1, 1999 (the "Eleventh Supplement"), by and between the Authority and the Trustee and the Twelfth Supplemental Agreement, dated as of August 1, 1995 (the "Twelfth Supplement"), by and between the Authority and the Trustee, which provisions are inconsistent with other provisions in said Eleventh Supplement or said Twelfth Supplement as the case may be, and of the proposed Third Supplemental Agreement, by and between the Authority and the Trustee (the "Third Supplement"), by amending and restating the Third Supplement in the form attached hereto as Exhibit A, and

WHEREAS, the Trustee has received an opinion of counsel that this Thirteenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement without the consent of the owners of the bonds issued under the Agreement; and

WHEREAS, the execution and delivery of this Thirteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Thirteenth Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Thirteenth Supplemental Agreement have happened, exist and have been performed as required; and

WHEREAS, the Trustee has accepted the trusts created by this Thirteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS THIRTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Thirteenth Supplemental Agreement, receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.  The form of coupon bond is hereby revised by making the phrase "Corporate Trust Office" in the fourth paragraph and in the ninth paragraph lower case and by adding the phrase "the principal of" immediately after the phrase "and charged with the payment of" in the last sentence of the seventh paragraph.

B.  The definition of "Paying Agents" in Section 101 is hereby revised by adding the word "or" immediately after the phrase "resolution of the Board".



USB_9019MOTION_0000228

C.  The definition of "Prerefunded Municipals" in Section 101 is hereby revised by adding a comma after the phrase "Time Deposits" in clause (c) thereof.

D.  The first sentence of the last paragraph of the definition of "Principal and Interest Requirements" in Section 101 is hereby revised by adding the word "for" after the phrase "portion of the principal of, Amortization Requirements" and by adding a comma after the phrase "Time Deposits" and after the phrase "in Section 601 of this Agreement".

E.  The last sentence in the definition of "Reserve Account Insurance Policy" and in the definition of "Reserve Account Letter of Credit" in Section 101 is hereby revised by deleting the words "Moody's Investor's Services, Inc." and inserting in their place "Moody's Investors Service, Inc." each time they appear in said sentences

F.  The last sentence of Section 206 is hereby revised to read as follows:  Neither the Authority nor the Trustee shall, except as may otherwise be provided by resolution of the Authority authorizing the issuance of any Series of bonds under this Agreement, be required to make any such exchange or registration of transfer of bonds, during the fifteen (15) days immediately preceding any interest payment date on the bonds or, in the case of any proposed redemption of bonds, immediately preceding the date of first publication of notice of such redemption (or if all the bonds to be redeemed are issuable as registered bonds without coupons, immediately preceding the date of mailing of notice of such redemption), or after such bond or any portion thereof has been selected for redemption."

G.  The first sentence of Section 207 is hereby revised by inserting the phrase "the premium, if any, and" after the phrase "or on account of the principal of and".

H.  The first sentence of the second paragraph of Section 208 is hereby revised by adding the words "advances of" immediately after the phrase "which were acquired or constructed from any".

I.  The third paragraph of Sections 208, 209 and 210 is hereby revised to read as follows:  "Before any Variable Rate Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution specifying, without limitation, the interest rate calculation methods and any conversion features, and any credit or liquidity facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds.  The Variable Rate Bonds may provide that the owner of any such Bond may demand payment of principal and interest within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent.  The designated agent for the Authority, in accordance with the terms of a remarketing or placement agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Authority at a price provided for in the agreement.  If

3

NY1 5042112v3

the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized to draw upon a previously executed credit or liquidity facility of one or more banks or other financial or lending institutions for payment of interest and principal for a particular Series of Variable Rate Bonds to which such credit or liquidity facility shall pertain. The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Authority, the terms and provisions for the remarketing or placement agreement, and the terms and provisions of the credit or liquidity facility, including the terms of any lien on Revenues in connection with the credit or liquidity facility not inconsistent with Section 712 hereof, shall be as designated by a resolution of the Board pertaining to the Variable Rate Bonds to which such terms and provisions are applicable prior to the issuance thereof. Before any Put Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which may provide for some of the above terms and provisions.   Before any Extendible Maturity Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which shall set forth the terms and conditions of the exercise by the bondholders or the Authority of any option to extend the maturity of said bonds.   Before any Capital Appreciation Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution specifying the Valuation Dates, the Accreted Values on such dates, the manner in which and the period during which principal and interest shall be deemed to accrue on such bonds for purposes of the definition of "Principal and Interest Requirements" and the amount of any deposit required for the Reserve Account in accordance with Section 507 hereof. "

J.   The second paragraph of Section 210 is hereby revised by inserting the word "Indenture" between the words "1947" and "Bonds" in the first sentence thereof.

K.   Clause (I) of the fifth paragraph of Section 210 is hereby revised by deleting the comma after the phrase "and any other moneys which have been made available to the Trustee".

L.   The penultimate paragraph of Section 210 is hereby revised by inserting the word "in" immediately before the words "Prerefunded Municipals".

M.   The penultimate sentence of the last paragraph of Section 210 is revised by adding the word "making" immediately before the phrase "any deposit to the Reserve Account and adding the word "paying" immediately before the phrase "any expenses in connection with".

N.   Section 307 is hereby revised by adding a comma after the phrase "Time Deposits" and after the phrase "in Section 601 of this Agreement".

NY1 5042112v3

O.  The second sentence of Section 506 is hereby revised by adding the word "a" immediately after the phrase "less such amount to be held as" and a comma immediately after the phrase "as the Treasurer may determine".

P.  The fourth sentence of the first paragraph of Section 507 is hereby revised by inserting a comma after the phrase "and the release of the 1947 Indenture" in clause (i) of said sentence and the word "Fund" is deleted immediately before the phrase "in the following order:" and in its place is inserted the word "Funds".

Q.  Clause (c) of Section 507 is hereby revised by deleting the phrase "provided, however," immediately after the phrase "issuance of the bonds of such Series;" and inserting in its place the word "and"; by deleting the phrase "provided further," immediately after the phrase "as such deficiency shall have been made up," and inserting in its place the word "and"; by deleting the phrase "which shall be funded" immediately before the phrase "over the period required herein,"; by deleting the phrase "and any shortfall in the Reserve Account due to a withdrawal to fund interest pursuant to the proviso contained in paragraph (a) above shall be funded on the 25th day of the next month,"; and deleting the phrase "provided further," immediately after the phrase "in calculating the interest payable on such Bonds within the next ensuing twelve (12) months;" and inserting in its place the word "and".

R.  Clause (g) of Section 507 is hereby revised by deleting the phrase "(a), (b), (c), and (d)" each time it appears in said paragraph and inserting instead the phrase "(a), (b), (c), (d), (e) and (f)".

S.  Paragraph (h) of Section 507 is hereby revised by deleting the phrase "(a), (b), (c), (d) and (e)" each time it appears in said paragraph and inserting instead the phrase "(a), (b), (c), (d), (e), (f) and (g)".

T.  The last paragraph of Section 508 is hereby revised by deleting the phrase "the Agreement" and inserting in its place the phrase "this Agreement".

U.  The second sentence of the first paragraph of Section 510 is hereby revised by adding the phrase "and then outstanding" immediately before the phrase "hereunder, and such excess shall".

V.  The antepenultimate sentence of the last paragraph of Section 510 is hereby revised by deleting the phrase "for any of its lawful corporate purposes" and inserting in its place the phrase "for any lawful purpose of the Authority".

W.  The first sentence of the second paragraph of Section 512A and the first sentence of the second paragraph of Section 512B are each hereby revised by deleting the word "becomes" and inserting in its place the word "become".

X.  The second sentence of the second paragraph of Section 512A and the second sentence of the second paragraph of Section 512B are hereby revised by

NY1 5042112v3

deleting the word "Authorization" and inserting in its place the word "Amortization".

Y.   The last sentence of Section 515 is hereby revised by deleting the phrase "the Paying Agents" and inserting in its place the phrase "such Paying Agent".

Z.   The third paragraph of Section 602 is hereby revised by inserting the word "the" between the words "by" and "order".

AA.   The fourth paragraph of Section 602 is hereby revised by inserting the word "held" between the words "moneys" and "to" and the phrase "from Act. No. 447" is hereby deleted and in its place is inserted the phrase "Act No. 447".

BB.   The second paragraph of Section 702 is hereby revised by inserting the phrase "and all other works or properties constituting part of the System" immediately after the phrase "it will construct all Improvements", the phrase "or Subordinate Obligations" immediately after the phrase "for the construction of which bonds" and after the phrase "repayable from the proceeds of bonds", and the phrase "or other works or properties" immediately after the phrase "upon the completion of such Improvements".

CC.   The last paragraph of clause (d) of Section 712 is hereby revised to read as follows: "The rentals and other payments under any such lease, contaract, license, easement or other arrangement shall be included in the definition of Revenues and shall be deposited to the credit of the Revenue Fund.".

DD.   The last sentence of Section 903 is hereby revised by inserting the phrase "the Independent Consultant," immediately after the phrase "the Consulting Engineers,".

EE.   The first   paragraph of Section 1201is hereby revised by inserting a comma after the phrase "Time Deposits" each time said phrase appears before the words "secured in the manner" and by inserting a comma after the phrase "in Section 601 of this Agreement", which phrase appears before the words "shall be held by the Trustee".

FF.   The last paragraph of Section 1201 is hereby revised by deleting the phrase "Time Deposits or" immediately after the phrase "Government Obligations,", by inserting the phrase "Time Deposits, secured in the manner set forth in Section 601 of this Agreement," immediately after the phrase "Prerefunded Municipals," and before the comma after the word "Municipals" in said phrase and by deleting the phrase "the options or maturity extensions originally excercisable" and inserting in its place the phrase "such options or extensions".

NY1 5042112v3



USB_9019MOTION_0000232

GG.   The second paragraph of Section 1305 is hereby revised by inserting the phrase "registered owners of bonds or to" immediately before the phrase "bondholders of record when".

HH.   All references throughout the Agreement to the phrase "Water Resources" are hereby changed to the phrase "Electric Power" except in the third WHEREAS clause in the preamble to the Agreement, in the seventh and eighth paragraphs of the form of coupon bonds in the preamble to the Agreement, in the definition of "Authority Act" in Section 101 and on the signature and notarization pages of the Agreement.

2.   The Eleventh Supplement is hereby amended and supplemented by revising paragraph C in Section 1 by deleting the phrase "'Executive Director'" and inserting in its place the phrase "'Designated Maturity Bonds'". The Twelfth Supplement is hereby amended and supplemented by deleting the word "Tenth" each of the four times it appears in the preamble to said Twelfth Supplement and inserting in its place the word "Twelfth". The proposed Third Supplement is hereby amended and restated in its entirety in the form attached hereto as Exhibit A.

3.   The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

4.   This Thirteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Thirteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N.A., has caused this Thirteenth Supplemental Agreement to be

NY1 5042112v3

USB_9019MOTION_0000233

executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By: _____
Executive Director

Attest:

_Maria E. Fernandez Sonnell_
Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _____
Assistant Vice President

Attest:

_____
Trust Officer

USB_9019MOTION_0000234

confidential
Class Activities
Junior Subordinated Indenture 3 Shore
Aug 05 2017 16:59

### PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

STATE STREET BANK AND
TRUST COMPANY, N.A.,
as successor Trustee

By: _Ward Alfoner_____
Vice President

Attest:

_Cheryl L. Collins_____
Trust Officer

Confidential
Class Activities
235
Junior Subordinated Indenture 3 Shore
Aug 05 2017 16:59

confidential
Commonwealth
Miister Building Board of Directors
April 03, 2017 19:03

COMMONWEALTH OF PUERTO RICO   )
                              )   ss.:
MUNICIPALITY OF SAN JUAN      )

On the __3rd__ day of __January__, in the year 2002, before me personally came Hector Rosario to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of __San Juan__, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # 572

(SEAL)

_____
NOTARY PUBLIC

STATE OF NEW YORK    )
                     )   ss.:
COUNTY OF NEW YORK)

On the _____ day of _____, in the year 200_, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides at _____; that he is an Assistant Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of Board of Directors of said corporation; and that he signed his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires:

(SEAL)

9

confidential
Commonwealth
236
Miister Building Board of Directors
April 03, 2017 19:03

USB_9019MOTION_0000236

Confidential
Banco Gobierno
Hacienda discussion & Inc
April 1, 2017 19:59

EXHIBIT A

## THIRD SUPPLEMENTAL AGREEMENT

THIS THIRD SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of January, 2002, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formely Puerto Rico Water Resources Authority), and

### STATE STREET BANK AND TRUST COMPANY, N.A.,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and Sate of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### WITNESSETH:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, it is desirable to amend the Agreement so as to provide that in conjunction with the Authority's issuance of bonds, the Authority may secure its obligations to the provider of a credit or liquidity facility securing said bonds on a parity with the Authority's bond issued under the Agreement; and

WHEREAS, the Trustee has received an opinion of counsel that this Third Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Third Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Third Supplemental Agreement; and

USB_9019MOTION_0000237

WHEREAS, the Trustee has received the written instruments from the holdes of all of the outstanding bonds spefically consenting to and approving the execution of this third Supplemental Agreement; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Third Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Third Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS THIRD SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Third Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.    The Agreement is hereby amended and supplemented in the following respects:

A.    Section 705 is hereby revised by deleting the comma after the phrase "and the bonds secured hereby upon the Revenues" and adding in its place the phrase "and except as otherwise permitted in this Agreement,".

B.    The last sentence of clause (a) of Section 712 is hereby revised by deleting the period and adding the following:

"; provided that in connection with the issuance of bonds, the Authority may secure its obligations to the provider of a credit or liquidity facility securing said bonds on a parity with the bonds."

C.    Clause (c) of Section 1102 is hereby revised to read as follows:

" (c)   the creation of a lien upon or a pledge of the Revenues other than any lien and pledge created or permitted by this Agreement,"

2. The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.    This Third Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Third Supplemental Agreement to be executed by its Executive Director and its

USB_9019MOTION_0000238

corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and State Street Bank and Trust Company, N. A. has caused this Third Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC
POWER AUTHORITY

BY:_____
    Executive Director

( SEAL)

Attest:

_____
    Secretary

STATE STREET BANK AND TRUST
COMPANY, N.A., as Trustee

By:_____
    Assistant Vice President

(SEAL)

Attest:

_____
    Trust Officer

NY1 5042112v3

A-3

239

COMMONWEALTH OF PUERTO RICO   )
                              )   ss:
MUNICIPALITY OF SAN JUAN      )

On the _____ day of _____, in the year 20__, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof, that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #_____

_____
              Notary Public

(SEAL)

_____

STATE OF NEW YORK      )
                       )   ss:
COUNTY OF NEW YORK     )

On the _2ND_ day of _JANUARY_, in the year 200_2_, before me personally came _WARD A. SPOONER_, to me known, who, being by me duly sworn, did depose and say that he resides at _1 JULIET COURT OLD BRIDGE ᴺᴶ 08857_; the he is an Assistant Vice President of State Street Bank and Trust Company, N.A., the banking corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of the Board of Directors of said corporation; and that he signed his name thereto by like authority.

_Carolyn R. Sinclair_
              Notary Public

My commission expires:

(SEAL)

USB_9019MOTION_0000240

## FOURTEENTH SUPPLEMENTAL AGREEMENT

THIS FOURTEENTH SUPPLEMENTAL AGREEMENT, dated the 12th day of March, 2010 (the "Supplemental Agreement"), by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### WITNESSETH:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provisions with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined to supplement the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to permit the Authority to make use of new financing techniques that are advantageous to the Authority by

USB_9019MOTION_0000241

providing the Authority lower interest costs and to clarify how to treat certain subsidies available in connection with such new financing techniques; and

WHEREAS, it is desirable to supplement the Agreement so as to provide the Authority with the ability to utilize and take advantage of new financing techniques which are from time to time developed and to provide the Authority with the ability to issue different types of bonds, as may be marketable from time to time, including, without limitation, bonds to which the Authority irrevocably elects to apply Section 54AA of the Internal Revenue Code of 1986, as amended (the "Code") and irrevocably elects pursuant to Section 54AA(G) of the Code to receive a federal subsidy under Section 6431 ("Build America Bonds") or any other bonds for which a federal subsidy payment may be received in connection with the issuance of such bonds ("Other Subsidy Bonds" and together with the Build America Bonds ("Federally Subsidized Bonds"), and, in this regard, to supplement and amend the definition of Principal and Interest Requirements, to make certain related changes and to add a covenant that the Authority will do all things necessary and take such actions as are necessary to ensure receipt of any such federal subsidy; and

WHEREAS, the Trustee has received an opinion of counsel that this Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Supplemental Agreement to be mailed as required by the Agreement to all registered owners of bonds and to all bondholders of record at least thirty (30) days prior to the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.   The Agreement is hereby amended and supplemented in the following respects:

USB_9019MOTION_0000242

A.    Section 101 is hereby supplemented by the addition of a definition of "Build America Bonds" after the definition of "bonds", to read as follows:

> The term "Build America Bonds" shall mean a series of bonds designated as "Build America Bonds" by the Authority for purposes of Section 54AA of the Code and for which the Authority has irrevocably elected pursuant to Section 54AA(g) of the Code to receive the Federal Subsidy from the United States Treasury in connection therewith under Section 6431 of the Code and apply it in accordance with the provisions of the resolution or resolutions adopted by the Board authorizing the issuance of such bonds.

B.    Section 101 is hereby supplemented by the addition of a definition of "Federally Subsidized Bonds" after the definition of "Extendible Maturity Bonds", as follows:

> The term "Federally Subsidized Bonds" shall mean either Build America Bonds or Other Subsidy Bonds or both, as the case may be.

C.    Section 101 of the Agreement is hereby supplemented by the addition of the definition of "Federal Subsidy" after the definition of "Federally Subsidized Bonds", to read as follows:

> The term "Federal Subsidy" shall mean a payment made by the Secretary of the Department of Treasury to or for the account of the Authority pursuant to the Code in respect of a series of bonds constituting Federally Subsidized Bonds. Any Federal Subsidy to be received by the Authority in respect of such series of bonds shall be identified as such in the resolution authorizing the issuance of such series of bonds to which it relates.

D.    Section 101 of the Agreement is hereby supplemented by the addition of the definition of "Federal Subsidy Payments" after the definition of "Federal Subsidy", to read as follows:

> The term "Federal Subsidy Payments" shall mean the amount of Federal Subsidy actually paid to and received by the Trustee in respect of an interest payment for the series of Federally Subsidized Bonds to which it relates. Such Federal Subsidy Payments shall be deposited directly into the Bond Service Account in the Sinking Fund.

E.    Section 101 is hereby supplemented by the addition of a definition of "Other Subsidy Bonds" after the definition of "Opinion of Counsel", as follows:

> The term "Other Subsidy Bonds" shall mean bonds for which a subsidy or other payment made by the Secretary of the Department of Treasury may be made in respect of such bonds other than under Section 6431 of the Code.

F.    The definition of "Principal and Interest Requirements" is hereby supplemented by adding the following paragraphs at the end thereof:



"For purposes of determining the maximum Principal and Interest Requirements for purposes of Sections 208, 209 and 210 of this Agreement, the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502, the maximum Principal and Interest Requirements for purposes of Section 704 and the maximum aggregate Principal and Interest Requirements for purposes of Section 712 of this Agreement, on the date of issuance of a Federally Subsidized Bonds and for so long as the Trustee shall receive the scheduled amount of the Federal Subsidy Payments on or before such interest is payable, all or a portion of the interest in respect of one or more series of Federally Subsidized Bonds shall be excluded from the calculation of the Principal and Interest Requirement if, and to the extent that the interest thereon is payable from a Federal Subsidy. Notwithstanding the foregoing, if the Trustee shall not receive the scheduled amount of the Federal Subsidy Payments on or before the date interest on such Federally Subsidized Bonds is payable or within thirty (30) of the date such Federal Subsidy Payments were scheduled to be received under the then current applicable law and regulations, then from and after the occurrence of such failure to receive such Federal Subsidy and until such Federal Subsidy Payments shall resume and all prior deficiencies are cured, the exclusion from the calculation of the Principal and Interest Requirement set forth in the preceding sentence shall no longer be effective for purposes of determining the maximum Principal and Interest Requirements for purposes of Sections 208, 209 and 210 of this Agreement, the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502, the maximum Principal and Interest Requirements for purposes of Section 704 and the maximum aggregate Principal and Interest Requirements for purposes of Section 712 of this Agreement."

G.      Section 208 is hereby supplemented by the addition of a paragraph to be included after the third paragraph in said Section, as follows:

"Prior to the issuance of any Federally Subsidized Bonds, the Board shall adopt a resolution identifying the details of such bonds, including, without limitation, the rate or rates of interest to be paid on such bonds, the source or sources and the amount of the Federal Subsidy expected to be received by the Authority in respect of such Series of Federally Subsidized Bonds, whether the amounts received from such Federal Subsidy are to be pledged solely to the owners of such Series of Federally Subsidized Bonds or to the owners of all outstanding bonds and a covenant by the Authority to take such actions as are necessary to ensure receipt of such Federal Subsidy."

H.      Section 209 is hereby supplemented by the addition of a paragraph to be included after the third paragraph in said Section, as follows:

"Prior to the issuance of any Federally Subsidized Bonds, the Board shall adopt a resolution identifying the details of such bonds, including, without limitation, the rate or rates of interest to be paid on such bonds, the source or sources and the amount of the Federal Subsidy expected to be received by the

USB_9019MOTION_0000244

Authority in respect of such Series of Federally Subsidized Bonds, whether the amounts received from such Federal Subsidy are to be pledged solely to the owners of such Series of Federally Subsidized Bonds or to the owners of all outstanding bonds and a covenant by the Authority to take such actions as are necessary to ensure receipt of such Federal Subsidy."

I.      The last sentence of the first paragraph of Section 507 is hereby amended by inserting the following language after the words "such Fund" and before the words "and deposit":

"(less any amount equal to the amount of Federal Subsidy Payments that have not been received as of the 25th of the month preceding the Interest Payment Date to which such Federal Subsidy Payments relate, which amount will be held in the Revenue   Fund and (x) if the Federal Subsidy Payment has not been received by the Authority by such Interest Payment Date, transferred to the Bond Service Account on the Interest Payment Date and applied to the payment of interest on Bonds or (y) if the Federal Subsidy Payment has been received by the Authority on or before such Interest Payment Date, remain on deposit in the Revenue Fund for application in accordance with the provisions below in the following calendar month)"

J.      Section 507(c) is hereby supplemented by inserting "(A)" after the word "months;" and before the word "provided" and inserting the following clause (B) at the end of such Section 507(c):

"and (B) provided, however, that in the case of Federally Subsidized Bonds, the amount of interest deemed to be payable on such bonds from the date of issuance of such Federally Subsidized Bonds and for so long as the Trustee shall receive the scheduled amount of the Federal Subsidy Payments on or before such interest shall be payable shall exclude the amount of interest to be paid from the Federal Subsidy and provided further, however, that if the Trustee shall not receive the scheduled amount of the Federal Subsidy Payments on or before the date interest on such Federally Subsidized Bonds is payable or within thirty (30) of the date such Federal Subsidy Payments were scheduled to be received under the then current applicable law and regulations, then for purposes of the calculation of interest to be credited to the Reserve Account, the amount shall be equal to the interest payable on the bonds of each Series issued hereunder within the next twelve (12) months."

K.      Article VII is hereby supplemented by the addition of a new Section 713 to read as follows:

"Section 713. With respect to Build America Bonds, the Authority hereby covenants to file, or cause to be filed, a Form 8038-CP with the Internal Revenue Service not less than 45 days and not more than 90 days prior to the date interest on the Build America Bonds shall be payable, as provided in Notice 2010-26 issued by the Internal Revenue Service, so long as filing such form is a condition



USB_9019MOTION_0000245

to receipt of the Federal Subsidy prior to the date such interest shall be payable. In the event that the Internal Revenue Service shall amend or revise the guidance provided in Notice 2010-26, the Authority agrees that it shall take all such actions as are necessary to ensure receipt of the Federal Subsidy. With respect to Other Subsidy Bonds, the Authority hereby covenants it shall take all such actions as are necessary to ensure receipt of the Federal Subsidy related to such series of bonds as shall be set forth in the resolution relating to such Other Subsidy Bonds. The only effect of any failure to comply with this Section 713 shall be that the Federal Subsidy to which such failure relates shall no longer be excluded from the calculation of Principal and interest Requirements. "

2.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

3.     This Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

4.     The Trustee shall not be required to authenticate any bonds permitted by this Supplemental Agreement if the issue of such bonds will affect the Trustee's own rights, duties or immunities under the Agreement or the bonds or otherwise in a manner which is not reasonably acceptable to the Trustee.

USB_9019MOTION_0000246

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association has caused this Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, this 29th day of April, 2010.

PUERTO RICO ELECTRIC POWER
AUTHORITY

By_____
Executive Director

(SEAL)

Attest:

_____
Secretary

**U.S. BANK NATIONAL ASSOCIATION,** as
Trustee

By_____
Vice President

(SEAL)

Attest:

_____
Trust Officer

USB_9019MOTION_0000247

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association has caused this Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, this 29th day of April, 2010.

**PUERTO RICO ELECTRIC POWER AUTHORITY**

By_____
                    Executive Director

(SEAL)

Attest:

_____
                    Secretary

**U.S. BANK NATIONAL ASSOCIATION,** as Trustee

By_____
                    Vice President

(SEAL)

Attest:

_____
                    Trust Officer

- 7 -

USB_9019MOTION_0000248

## FIFTEENTH SUPPLEMENTAL AGREEMENT

THIS FIFTEENTH SUPPLEMENTAL AGREEMENT, dated the 29th day of May, 2010 (the "Supplemental Agreement"), by and between

## PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

## U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Trust Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## WITNESSETH:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1101 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental agreements shall thereafter form a part of the Agreement) to cure any ambiguity, to make any provisions with respect to matters or questions arising under the Agreement which shall not be inconsistent with the provisions of the Agreement, provided such action shall not adversely affect the interests of the bondholders, to grant or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders or the Trustee or to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of the Agreement other conditions, limitations and restrictions thereafter to be observed; and

WHEREAS, Section 1104 of the Agreement authorizes the Trustee, in determining whether any proposed supplemental agreement is desirable, to take into consideration the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders and the rights, obligations and interests of the Trustee; and

WHEREAS, the Authority has determined to supplement the Agreement without the consent of the holders of the bonds issued and outstanding under the Agreement to permit the Authority to make use of new financing techniques that are advantageous to the Authority by

USB_9019MOTION_0000249

providing the Authority lower interest costs and to clarify how to treat certain subsidies available in connection with such new financing techniques; and

WHEREAS, the Authority has previously approved a supplement to the Agreement so as to provide the Authority with the ability to utilize and take advantage of new financing techniques which are from time to time developed and to provide the Authority with the ability to issue different types of bonds, as may be marketable from time to time, including, without limitation, bonds to which the Authority irrevocably elects to apply Section 54AA of the Internal Revenue Code of 1986, as amended (the "Code") and irrevocably elects pursuant to Section 54AA(G) of the Code to receive a federal subsidy under Section 6431 ("Build America Bonds") or any other bonds for which a federal subsidy payment may be received in connection with the issuance of such bonds ("Other Subsidy Bonds" and together with the Build America Bonds ("Federally Subsidized Bonds"), and, in this regard, to supplement and amend the definition of Principal and Interest Requirements, to make certain related changes and to add a covenant that the Authority will do all things necessary and take such actions as are necessary to ensure receipt of any such federal subsidy; and

WHEREAS, the Authority desires to further supplement the Agreement to ensure that sufficient funds will be available to pay interest on the Bonds in the event that a Federal Subsidy Payment is not received on or prior to the 25th day of the month preceding an Interest Payment Date; and

WHEREAS, the Trustee has received an opinion of counsel that this Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement; and

WHEREAS, the execution and delivery of this Supplemental Agreement have been duly authorized by resolution of the Governing Board of the Authority and the Authority has requested the Trustee to join with it in the execution of this Supplemental Agreement; and

WHEREAS, the Trustee has caused notice of the proposed execution of this Supplemental Agreement to be mailed as required by the Agreement to all registered owners of bonds and to all bondholders of record at least thirty (30) days prior to the execution hereof; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Supplemental Agreement have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Agreement, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this

USB_9019MOTION_0000250

Supplemental Agreement, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.     The Agreement is hereby amended and supplemented in the following respects:

A.     The last sentence of the first paragraph of Section 507 is hereby amended by inserting the following language after the words "such Fund" and before the words "and deposit":

"(less any amount equal to the amount of Federal Subsidy Payments that have not been received as of the 25th of the month preceding the Interest Payment Date to which such Federal Subsidy Payments relate, which amount will be held in the Revenue Fund and (x) if the Federal Subsidy Payment has not been received by the Authority by such Interest Payment Date, transferred to the Bond Service Account on the Interest Payment Date and applied to the payment of interest on Bonds or (y) if the Federal Subsidy Payment has been received by the Authority on or before such Interest Payment Date, remain on deposit in the Revenue Fund for application in accordance with the provisions below in the following calendar month)"

USB_9019MOTION_0000251

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association has caused this Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and attested by one of its Trust Officers, this 29th day of May, 2010.

PUERTO RICO ELECTRIC POWER
AUTHORITY

By _____
Executive Director

(SEAL)

Attest:

_____
Secretary

U.S. BANK NATIONAL ASSOCIATION, as
Trustee

By _____
Vice President

Attest:

_____
Trust Officer

USB_9019MOTION_0000252

Confidential
User Privileged
Without Understanding & Under
Aug 02, 2017 15:38

## SIXTEENTH SUPPLEMENTAL AGREEMENT

THIS SIXTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the first day of August, 2014, by and between

PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## WITNESSETH:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Trustee has received an opinion of counsel (the "Sixteenth Supplemental Opinion") that (a) the Authority has the right, power and authority to enter into this Sixteenth Supplemental Agreement, (b) this Sixteenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this Sixteenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, (d) all of the conditions precedent to the execution and delivery by the Trustee of this Sixteenth Supplemental Agreement have been satisfied, and (e) this Sixteenth Supplemental Agreement (including the Authority's use of moneys on deposit in the Construction Fund and Reserve Account for

Confidential
User Privileged
Without Understanding & Under
Aug 02, 2017 15:38

253

Confidential
Current Filings
Puerto Rico Infrastructure Finance
Apr 03 2017 10:19

purposes that are permitted by the Agreement as amended by this Sixteenth Supplemental Agreement) will not have an adverse effect on the exclusion of interest on the outstanding bonds from gross income for federal income tax purposes, and

WHEREAS, the execution and delivery of this Sixteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this Sixteenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this Sixteenth Supplemental Agreement have been satisfied; and

WHEREAS, the Trustee has received written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Sixteenth Supplemental Agreement have happened, exist and have been performed as required and the Authority has delivered to the Trustee a certificate dated the date of this Sixteenth Supplemental Agreement, representing the same; and

WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this Sixteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SIXTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.     The Agreement is hereby amended and supplemented in the following respects:

A.     Section 101 is hereby amended or modified by the addition of and changes to the following definitions in appropriate alphabetical order in said Section (and all capitalized terms that are used but not defined herein shall have the same meanings as given in the Agreement):

"The term 'Additional Construction Fund Usage' shall have the meaning given to it in Section 405.

"The term 'Ad Hoc Group' shall mean such term as defined in the Forbearance Agreement.

"The term 'Amending Creditors' shall mean Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation,

2


Confidential
Claim Response
254
Puerto Rico Infrastructure Finance
Apr 03 2017 10:24

Syncora Guarantee Inc., and the Ad Hoc Group, including successors and assigns thereof. For the purposes of this Agreement, the Trustee shall be entitled to rely on a certification of an Amending Creditor that it is an Amending Creditor.

"The term 'Amending Creditor Bonds' shall mean, with respect to any date, all outstanding bonds that are beneficially owned or (without duplication) insured by the Amending Creditors as of such date (which outstanding bonds that are beneficially owned by the Amending Creditors shall only include such bonds of which the other Amending Creditors have received written notice, which notice will be effective one (1) business day after receipt). For purposes of this Agreement, the Trustee shall be entitled to rely on a certification by an Amending Creditor that it beneficially owns or (without duplication) insures certain principal amount of outstanding bonds.

"The term 'Amendment' shall refer to this Sixteenth Supplemental Agreement, dated as of August 1, 2014, by and among the Authority and the Trustee.

"The term 'Amendment Effective Date' shall mean August 27, 2014, being the effective date of this Amendment.

"The term 'Amendment Period' shall mean the period from the Amendment Effective Date until the Amendment Termination Date.

"The term 'Amendment Period Budget' shall mean the Initial 13-Week Cash Flow Statement or Subsequent 13-Week Budget, as applicable (each as defined in the Forbearance Agreement).

"The term 'Amendment Termination Date' shall mean the earliest of (a) the Scheduled Amendment Termination Date, (b) the filing of a proceeding by or on behalf of the Authority pursuant to the Puerto Rico Public Corporation Debt Enforcement and Recovery Act or any other action or proceeding that seeks to adjust or challenge the claims of its creditors pursuant to any federal, state, or Puerto Rico statute, now in effect or enacted after the Amendment Effective Date, and (c) the date on which (i) the "Forbearance Period" (as defined in the Forbearance Agreement) has expired or terminated, and (ii) the Trustee has received written notice from the Authority or the Required Amending Creditors confirming the same.

"The term 'Construction Fund Replenishment Amount' shall mean in respect of a Construction Fund Replenishment Date an amount equal to:

(a)     the aggregate amount of all Additional Construction Fund Usages prior to such Construction Fund Replenishment Date,

less, the sum of:

(b)     the aggregate amount that the Authority has applied to the cost of Improvements from any source other than the Construction Fund from or after the

3

USB_9019MOTION_0000255

confidential
Unredacted
[illegible]
Aug 03, 2017 10:03

Amendment Effective Date, irrespective of whether such amount has been applied prior to or after the commencement of any bankruptcy proceeding, insolvency proceeding, proceeding under the Puerto Rico Public Corporation Debt Enforcement and Recovery Act, Act No. 71-2014, or any similar proceeding, and

(c)     the aggregate amount theretofore credited to the Construction Fund by the Authority pursuant to Section 406 of this Agreement.

"The term 'Citibank/Scotiabank Forbearance Agreements' shall mean the forbearance agreements, dated August 14, 2014, by and among the Citibank/Scotiabank Lenders and the Authority, as the same may be amended from time to time as therein permitted.

"The term 'Citibank/Scotiabank Lenders' shall mean Citibank, N.A. and the Lenders (as defined in the Scotiabank Credit Agreement).

"The term 'Citibank/Scotiabank Lines of Credit' shall mean that certain Trade Finance Facility Agreement, dated as of July 20, 2012, between the Authority and Citibank, N.A. as amended or otherwise modified from time to time, and the Scotiabank Credit Agreement.

"The term 'Construction Fund Replenishment Date' shall mean the twenty-fifth (25) day of each month (or if such day is not a business day, the immediately succeeding business day) on which the Construction Fund Replenishment Amount is greater than zero.



"The term 'Forbearance Agreement' shall mean the forbearance agreement, dated August 14, 2014, by and among the Amending Creditors and the Authority, as the same may be amended from time to time as therein permitted.

"The term 'Fractional Defeasance Amount' shall mean $34,112,097.79.

"The term 'Potential Default' shall mean each of the events specified on Schedule 1, the occurrence of which would give rise to a default under this Agreement.

"The term 'Required Amending Creditors' shall mean Amending Creditors that beneficially own or (without duplication) insure not less than two-thirds (66 2/3%) of the aggregate principal amount of the Amending Creditor Bonds.

"The term 'Retained General Fund Amount' shall mean $50,000,000.

"The term 'Scheduled Amendment Termination Date' shall mean 11:59 p.m. (prevailing Eastern Time) on March 31, 2015.

"The term 'Scotiabank Credit Agreement' shall mean that certain Credit Agreement, dated as of May 4, 2012, between the Authority, as borrower, the lenders party thereto, and Scotiabank de Puerto Rico, as administrative agent, as amended or otherwise modified from time to time.

4

confidential
[illegible]
256
[illegible]
Aug 03 2017 10:03

"The term 'Specified Period Principal and Interest Requirements' shall mean the Principal and Interest Requirements for all outstanding bonds which accrue and are payable on or before January 1, 2015, excluding for purposes of the calculation of such Requirements any Federal Subsidy Payments.

"The term 'Specified Period Defeasance Fund' shall have the meaning given to it in Section 517.

B.      The following definitions in Section 101 shall be amended as follows:

The following sentence shall be added at the end of the definition of 'Current Expenses':

"Notwithstanding the foregoing or anything herein to the contrary, none of the holders, the Trustee, and the Authority shall contest whether an expense, claim, liability, or amount shall be construed as a Current Expense under this Agreement based solely on (x) the Citibank/Scotiabank Lenders' actions on the Amendment Effective Date or during the Amendment Period, including (i) forbearing, delaying or failing to exercise remedies, (ii) agreeing to a postponement or delay in payment of interest or principal, (iii) granting an extension of any maturity date, or (iv) not requiring the repayment or reborrowing of any loans or not requiring any loans to be revolving loans, or (y) the inclusion in this Agreement as a Potential Default, and the inclusion in the Forbearance Agreement as a "Potential Default" (as defined in the Forbearance Agreement) of the Authority's use of moneys from the General Fund to service its debts under the Citibank/Scotiabank Lines of Credit."

The last sentence of "Reserve Account Insurance Policy" shall be deleted and replaced with the following:

"The issuer providing such insurance shall be a municipal bond insurer that is rated, at the time of deposit into the Reserve Account, in one of the three highest rating categories (without regard to gradations within a category) by either (i) Standard & Poor's Corporation or its successor, or Moody's Investors Service, Inc. or its successors or (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency."

C.      Section 401 shall be amended by the addition of the following paragraph immediately preceding Section 402:

"Notwithstanding the foregoing, during the Amendment Period, moneys in the Construction Fund shall be held by the Authority in trust, separate and apart from all other funds of the Authority, and shall be applied:

(a)      to the payment of the cost of any Improvements, provided that such cost is in accordance with the Amendment Period Budget, inclusive of any permitted variances specified in the Forbearance Agreement; or

5

Confidential
Case Evidence
257
Puerto Rico Forbearance 3.1 Project
Aug 11, 2017 18:59

Confidential
Confidential
Subject to Federal Rule of Evidence 408
Aug 31 2017 15:26

(b)      as provided in Section 405,

and, except for any moneys in separate accounts in the Construction Fund received from the United States Government or any agency thereof or from the Commonwealth of Puerto Rico or any agency thereof, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred as herein provided."

D.      Section 402 shall be amended to read as follows:

"Section 402. Payments from Construction Fund. Payment of the cost of Improvements or any other payment permitted pursuant to Section 401 shall be made from the Construction Fund as herein provided. Moneys in the Construction Fund shall be disbursed by check, voucher, order, draft, certificate or warrant signed by the Executive Director or by any officer or employee of the Authority designated by him for such purpose."

E.      A new Section 405 shall be added immediately preceding Section 406 to read as follows:

"Section 405. Additional application of moneys in Construction Fund. During the Amendment Period, the Authority may apply moneys in the Construction Fund to the payment of the cost of any Current Expense that is not a cost of Improvement (each such application, an "Additional Construction Fund Usage"), provided that:

(a)      there are not sufficient moneys to pay such Current Expense held by the Authority in the General Fund in excess of the Retained General Fund Amount on the date such payment is required;

(b)      the representations of the Authority given in Section 3(b) of the Forbearance Agreement are true and correct as of the date of such application;

(c)      such Current Expense is in accordance with the Amendment Period Budget in effect at the time of such payment, inclusive of any permitted variances specified in the Forbearance Agreement;

(d)      none of the material facts that formed the basis for the officer's certificate delivered by the Authority in connection with the Sixteenth Supplemental Opinion has changed since the date of such certification and the Current Expense to be paid with such Additional Construction Fund Usage is in compliance with the covenants of the Authority in such certification; and

(e)      the Trustee and the Amending Creditors receive a certification from the Authority (in the form of Exhibit A hereto) specifying the amount of moneys to be applied and the Current Expenses to be paid with such moneys, and certifying that the statements in paragraphs (a) through (d) above are true as of the date of the certification, signed by the Executive Director or by any other officer or employee of the Authority with fiscal authority, designated by the Executive Director for such purpose. The Trustee shall have no duty to review any such certification for any purpose, except to confirm that a certification has been made, and

6

Confidential
Confidential
Subject to Federal Rule of Evidence 408
Aug 31 2017 15:26

258

USB 9019MOTION 0000258

Confidential
Cleary Gottlieb
Puerto Rico Investigation - Group
Apr 03, 2017 15:59

the Trustee shall be authorized to provide any requesting bondholder with a copy of any such certifications received."

F.    A new Section 406 shall be added immediately preceding Article V to read as follows:

"Section 406.    Replenishment of the Construction Fund.    On any Construction Fund Replenishment Date, to the extent that moneys in the General Fund exceed the Retained General Fund Amount, the Authority shall transfer from the General Fund to the credit of the Construction Fund an amount equal to the lesser of (x) the excess over the Retained General Fund Amount and (y) the Construction Fund Replenishment Amount, in accordance with Section 505 of this Agreement."

G.    Section 502 is hereby amended by the addition of the following paragraph immediately prior to Section 503 to read as follows:

"Notwithstanding the foregoing, during the Amendment Period, in the event that the Authority shall fail to adjust the schedule of rates and charges in accordance with the provisions of this Section, the Trustee, without regard to whether an event of default, as defined in Article VIII of this Agreement, shall have occurred, shall, upon the request of the holders of a majority in principal amount of all bonds then outstanding upon being indemnified to its satisfaction, institute and prosecute in a court of competent jurisdiction an appropriate suit, action or proceeding to compel the Authority to adjust such schedule in accordance with the requirements of this Section, and the Authority covenants that it will adopt and charge rates and charges in compliance with any judgment, order or decree entered in any such suit, action or proceeding."

H.    Section 505 shall be amended by the addition of the following sentence immediately prior to Section 506 to read as follows:

"On each Construction Fund Replenishment Date, the Authority shall apply moneys credited to the General Fund to satisfy its replenishment obligation under Section 406 prior to using such moneys for the payment of Current Expenses. Notwithstanding anything in this Agreement to the contrary, after the Amendment Period, the obligation to replenish the Construction Fund in accordance with Section 406 shall be junior and subject to the obligation to pay Current Expenses in accordance with this Section 505 and to transfer moneys from the General Fund to the Revenue Fund in accordance with Section 506 of this Agreement until the bonds are paid or deemed paid in full under the provisions of this Agreement."

I.    The second sentence of Section 506 shall be amended by the addition of the following language at the beginning of such sentence:

"Other than during the Amendment Period,"

J.    A new Section 510A shall be added as follows:

"Section 510A.    Additional application of moneys in Reserve Account    Notwithstanding the provisions of Section 510 of this Agreement, on the Amendment Effective

7

Confidential
Cleary Gottlieb
Puerto Rico Investigation - Group
Apr 03, 2017 15:59

Date and on the first (1st) business day of each month thereafter through and including December 1, 2014, the Trustee shall withdraw the Fractional Defeasance Amount from the Reserve Account, and credit this amount to the Specified Period Defeasance Fund; provided, however, that if the Amendment Effective Date occurs on or after September 1, 2014, the Trustee shall withdraw two times the Fractional Defeasance Amount on the Amendment Effective Date.

        K.    A   new   Section   517   shall   be   added   as   follows:

"<u>Specified Period Principal and Interest Requirements Defeasance</u>. A special fund within the Reserve Account is hereby created and designated the "Puerto Rico Electric Power Authority Revenue Bonds Specified Period Defeasance Fund" (herein sometimes called the "Specified Period Defeasance Fund") to be held by the Trustee separate and apart from all other funds and accounts held under this Agreement. The transfer of moneys from the Reserve Account to the Specified Period Defeasance Fund in accordance with Section 510A hereof shall constitute an irrevocable deposit of such moneys in trust solely for the purpose of paying the Specified Period Principal and Interest Requirements, and such moneys will not constitute property of the Authority. Upon such transfer and deposit to the Specified Period Defeasance Fund, the obligation of the Authority to pay the Specified Period Principal and Interest Requirements will be discharged to the extent of each such deposit, and the sole recourse of the holders of outstanding bonds in respect of the portion of the Specified Period Principal and Interest Requirements equal to the aggregate of amounts so deposited shall be to the amounts then to the credit of the Specified Period Defeasance Fund. The transfer and deposit set forth above shall not in any way affect the obligations of the Authority to pay the Principal and Interest Requirements with respect to the outstanding bonds other than the obligation to pay the portion of the Specified Period Principal and Interest Requirements equal to the aggregate of the amounts that are credited to the Specified Period Defeasance Fund. On each date on which any Specified Period Principal and Interest Requirements are payable, the Trustee shall apply moneys in the Specified Period Defeasance Fund to pay the Specified Period Principal and Interest Requirements that are payable on such date. Any amounts remaining in the Specified Period Defeasance Fund after all Specified Period Principal and Interest Requirements are paid in full shall be transferred to the Reserve Account. Moneys held in the Special Period Defeasance Fund shall, as nearly as may be practicable, be continuously invested and reinvested by the Trustee in Government Obligations which shall mature, or which shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held in said Fund will be required for the purposes intended."

        L.    Section 802(h) is hereby amended by the addition of the following language immediately prior to the semi-colon:

"provided, however, that during the Amendment Period, the Trustee may give such notice only upon the written request of the holders of a majority in the aggregate principal amount of the bonds then outstanding"

USB_9019MOTION_0000260

Confidential
Commonwealth
Matter in Contingencies & Crisis
Aug 01, 2017 15:00

M.     The first paragraph of Section 804 is hereby amended by the addition of the following language in the last sentence immediately before the period:

"provided, further, that during the Amendment Period, the Trustee may proceed to take action pursuant to this paragraph only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

2.     The modifications to the Agreement contained in this Sixteenth Supplemental Agreement shall remain in effect only during the Amendment Period and shall terminate automatically on the Amendment Termination Date, except (a) the amendments in Section 1.F. and Section 1.H., and any related definitions, which will continue in effect until the replenishment obligations in Section 406 of the Agreement are satisfied in full and (b) Section 1.B and 1.K., and any related definitions, which will continue in effect until all series of bonds outstanding under the Agreement have been paid or deemed paid in full in accordance with the Agreement. The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of any Amendment Termination Date and the basis therefor.

3.     The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

4.     This Sixteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

5.     Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

9

USB 9019MOTION 0000261

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Sixteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Sixteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S.BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Attest:

_____
Trust Officer

10

USB 9019MOTION 0000262

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Sixteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Sixteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S.BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Attest:

_____
Trust Officer

10

USB_9019MOTION_0000263

COMMONWEALTH OF PUERTO RICO )
                                                                     )        ss.:
MUNICIPALITY OF SAN JUAN                      )

Juan Francisco Alisa Flores  On the 27ᵗʰ day of August , in the year 2014, before me personally came
_____, to me known, who, being by me duly sworn, did depose and say that he
resides in the Municipality of __Caguas__ , Puerto Rico; that he is the Executive Director of
Puerto Rico Electric Power Authority, the body corporate described in and which executed the
above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the
corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the
Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto
by like order.

Affidavit # 3,370                          _____
                                                                     NOTARY PUBLIC

My commission expires: N/A

(SEAL)

STATE OF NEW YORK )
                                      )        ss.:
COUNTY OF NEW YORK)

                On the _____ day of _____, in  the year 2014, before me personally
came _____, to me known, who, being by me duly sworn, did
depose and say that he resides at _____ ; that he is an Assistant
Vice President of U.S. Bank National Association, the banking association described in and
which executed the above instrument; that he knows the seal of said association; that the seal
affixed to said instrument is the corporate seal of said association; that it was so affixed by
authority of Board of Directors of said association; and that he signed his name thereto by like
authority.

                                      _____
                                                 NOTARY PUBLIC

My commission expires:

(SEAL)

11

USB 9019MOTION 0000264

confidential
Merck W Wong
Hearin Buchanan Colbatan & Hyard
Aug 21, 2017 18:59

COMMONWEALTH OF PUERTO RICO   )

                                        )   ss.:

MUNICIPALITY OF SAN JUAN   )

        On the _____ day of _____, in the year 2014, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # _____

                                   NOTARY PUBLIC

My commission expires:

(SEAL)

STATE OF ~~NEW YORK~~ Minnesota   )

COUNTY OF ~~NEW YORK~~ Ramsey   )   ss.:

        On the 27th day of August, in the year 2014, before me personally came Julie C. Ecker, to me known, who, being by me duly sworn, did depose and say that she resides at St. Paul, Minnesota; that she is an ~~Assistant~~ Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she knows the seal of said association; that the seal affixed to said instrument is the corporate seal of said association; that it was so affixed by authority of Board of Directors of said association; and that she signed his name thereto by like authority.

                             Christopher Wood
                             NOTARY PUBLIC

My commission expires:

(SEAL)



CHRISTOPHER WOOD
NOTARY PUBLIC · MINNESOTA
My Commission Expires Jan. 31, 2018

11

confidential
Merck W Wong
Hearin Buchanan Colbatan & Hyard
Aug 21, 2017 18:59

Confidential
Clearly Staten
Motion for Reconsideration of Inion
Aug 10, 2017 16:50

## Schedule 1

1.      Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 501 of the Trust Agreement insofar as such noncompliance or failure is a result of PREPA's failure to establish and enforce reasonable regulations in relation to the collection of bills for services and facilities provided by PREPA.

2.      Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 502 of the Trust Agreement insofar as such noncompliance or failure is a result of PREPA's failure to revise the rates and charges for the services and facilities furnished by PREPA, or the result of PREPA's failure to revise its regulations in relation to the collection of bills for such services and facilities.

3.      Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 503 or section 505 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's use of monies from the General Fund to service its debt under the Citibank/Scotiabank Lines of Credit.

4.      Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 504 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to adopt and file a budget that is consistent with the procedural and/or substantive requirements of section 504.

5.      Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 506 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to transfer monies from the General Fund to the Revenue Fund in a manner consistent with section 506.

6.      Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 507 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to transfer monies from the Revenue Fund to the Sinking Fund in a manner consistent with section 507.

7.      Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 702 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to operate in an efficient and economical manner, maintain the system in good repair and sound operating condition (including by making all necessary repairs, renewals and replacements), or as a result of PREPA's employment of more persons than are necessary and compliance with all valid and applicable rules, regulations, and orders.

USB  9019MOTION  0000266

8.    Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to keep accurate records or complete and file its audited financial statements within the time periods specified in section 710 of the Trust Agreement.

2

USB_9019MOTION_0000267

Confidential
Disseminating
Subject to Confidentiality Order
Apr 21, 2017 15:30

**Exhibit A – Form of Certification**

Confidential
Disseminating
Subject to Confidentiality Order
Apr 21, 2017 15:30

USB 9019MOTION 0000268

Confidential
Classification
Prepared at Request of Counsel
April 25, 2017 10:15

### CERTIFICATION OF ADDITIONAL CONSTRUCTION FUND USAGE

To:     THE TRUSTEE

        THE AMENDING CREDITORS

From:   PUERTO RICO ELECTRIC POWER AUTHORITY

Date:   [        ]

Trust Agreement, dated as of January 1, 1974, as amended, restated, supplemented or otherwise modified from time to time, between Puerto Rico Electric Power Authority (the "Authority") and U.S. Bank, as successor trustee (the "Trustee" and, with respect to said trust agreement, as amended, the "Trust Agreement"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Trust Agreement.

1.  We refer to the Trust Agreement. This is a certification of Additional Construction Fund Usage (as defined below).

2.  The Authority wishes to apply moneys in the Construction Fund to the payment of the cost of any Current Expense that is not a cost of Improvement (each such application, an "Additional Construction Fund Usage") on the following terms:

    a.  Date of application: [   ]

    b.  Amount to be applied from the Construction Fund: U.S.$[        ]

    c.  Current Expense to be paid: [            ]

3.  There are not sufficient moneys to pay such Current Expense held by the Authority in the General Fund in excess of the Retained General Fund Amount on the date such payment is required.

4.  The representations of the Authority given in Section 3(b) of the Forbearance Agreement are true and correct as of the date of such application.

5.  Such Current Expense is contemplated by the Amendment Period Budget currently in effect, inclusive of any permitted variances.

6.  None of the material facts that formed the basis for the officer's certificate delivered by the Authority in connection with the Sixteenth Supplemental Opinion has changed since the date of such certification and the Current Expense to be paid with the Additional Construction Fund Usage set forth above is in compliance with the covenants of the Authority in such certification.

PUERTO RICO ELECTRIC POWER AUTHORITY

By:     _____
        Name:
        Title:

Confidential
269
Prepared at Request of Counsel
April 25, 2017 10:15

confidential
Lbank Version
Waiver and Forbearance on 6 Bond
Aug 31, 2017 15:38

*Execution version*

## SEVENTEENTH SUPPLEMENTAL AGREEMENT

THIS SEVENTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of July, 2015, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H :

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provision for certain actions to be undertaken consistent with Amendment No. 6 to the Forbearance Agreement, dated June 30, 2015 ("Amendment No. 6" and the Forbearance Agreement, dated as of August 14, 2014, as amended, supplemented or otherwise modified from time to time, including by Amendment No. 1, dated March 30, 2015, Amendment No. 2, dated April 15, 2015, Amendment No. 3, dated April 30, 2015, Amendment No. 4, dated June 4, 2015, Amendment No. 5, dated June 18, 2015 and Amendment No. 6, by and among the Authority and the Forbearing Creditors defined therein, the "Forbearance Agreement"), by and among the Authority and the Forbearing Creditors; and

ACTIVE 202749702v.8

confidential
Lbank Version
270
Waiver and Forbearance on 6 Bond
Aug 31, 2017 15:39

WHEREAS, the Trustee has received an opinion of counsel that (a) the Authority has the right, power and authority to enter into this Seventeenth Supplemental Agreement, (b) this Seventeenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this Seventeenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, and (d) all of the conditions precedent to the execution and delivery by the Trustee of this Seventeenth Supplemental Agreement have been satisfied; and

WHEREAS, the execution and delivery of this Seventeenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this Seventeenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this Seventeenth Supplemental Agreement have been satisfied; and

WHEREAS, the Trustee has received written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Seventeenth Supplemental Agreement have happened, exist and have been performed as required and the Authority has delivered to the Trustee a certificate dated the date of this Seventeenth Supplemental Agreement, representing the same; and

WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this Seventeenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS SEVENTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      Section 101 is hereby amended or modified by the addition of and changes to the following definitions in appropriate alphabetical order in said Section (and all capitalized terms that are used but not defined herein shall have the same meanings as given in the Agreement):

USB_9019MOTION_0000271

The term "Ad Hoc Group" shall mean such term as defined in the Forbearance Agreement.

The term "Amending Creditors" shall mean Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, Syncora Guarantee Inc., and the Ad Hoc Group, including successors and assigns thereof. For the purposes of this Agreement, the Trustee shall be entitled to rely on a certification of an Amending Creditor that it is an Amending Creditor.

The term "Amending Creditor Bonds" shall mean, with respect to any date, all outstanding bonds that are beneficially owned or (without duplication) insured by the Amending Creditors as of such date (which outstanding bonds that are beneficially owned by the Amending Creditors shall only include such bonds of which the other Amending Creditors have received written notice, which notice will be effective one (1) business day after receipt). For purposes of this Agreement, the Trustee shall be entitled to rely on a certification by an Amending Creditor that it beneficially owns or (without duplication) insures certain principal amount of outstanding bonds.

The term "Amendment" shall refer to the Seventeenth Supplemental Agreement, dated as of July 1, 2015, by and between the Authority and the Trustee.

The term "Amendment Effective Date" shall mean July 30, 2015, being the effective date of the Amendment.

The term "Amendment Period" shall mean the period from the Amendment Effective Date until the Amendment Termination Date.

The term "Amendment Termination Date" shall mean the earliest of (a) the Scheduled Amendment Termination Date, (b) the filing of a proceeding by or on behalf of the Authority pursuant to the Puerto Rico Public Corporation Debt Enforcement and Recovery Act or any other action or proceeding that seeks to adjust or challenge the claims of its creditors pursuant to any federal, state, or Puerto Rico statute, now in effect or enacted after the Amendment Effective Date, and (c) date on which (i) the "Forbearance Period" (as defined in the Forbearance Agreement) has expired or terminated, and (ii) the Trustee has received written notice from the Authority or any Forbearing Creditor (as defined in the Forbearance Agreement) confirming the same.

The term "Citibank/Scotiabank Forbearance Agreements" shall mean the forbearance agreements, dated August 14, 2014, by and among the Citibank/Scotiabank Lenders and the Authority, as the same may be amended from time to time as therein permitted.

The term "Citibank/Scotiabank Lenders" shall mean Citibank, N.A. or its transferees, as applicable, and the Lenders (as defined in the Scotiabank Credit Agreement).

The term "Citibank/Scotiabank Lines of Credit" shall mean that certain Trade Finance Facility Agreement, dated as of July 20, 2012, between the Authority and Citibank, N.A. or its transferees, as applicable, as amended or otherwise modified from time to time, and the Scotiabank Credit Agreement.

3

USB_9019MOTION_0000272

The term "Forbearance Agreement" shall have the meaning set forth in the third recital of the Seventeenth Supplemental Agreement.

The term "Potential Default" shall mean each of the events specified on Schedule 1, the occurrence of which would give rise to a default under this Agreement.

The term "Scheduled Amendment Termination Date" shall mean 11:59 p.m. (prevailing Eastern Time) on September 15, 2015.

The term "Scotiabank Credit Agreement" shall mean that certain Credit Agreement, dated as of May 4, 2012, between the Authority, as borrower, the lenders party thereto, and Scotiabank de Puerto Rico, as administrative agent, as amended or otherwise modified from time to time.

The term "Series 2015A Bonds" shall mean the Authority's Power Revenue Bonds, Series 2015A, issued pursuant to Resolution 4239, adopted by the Authority on June 30, 2015, as supplemented by Resolution No. 4246, adopted by the Authority on July 30, 2015.

The term "Series 2015A Bonds Period" shall mean the period from the date the Series 2015A Bonds are issued until such date as the Series 2015A Bonds have been paid in full or provision has been made for their payment in full in accordance with their terms and the terms of this Agreement."

B.     The following sentence shall be added at the end of the definition of "Current Expenses" in Section 101:

"Notwithstanding the foregoing or anything herein to the contrary, none of the holders, the Trustee, and the Authority shall contest whether an expense, claim, liability, or amount shall be construed as a Current Expense under this Agreement based solely on (x) the Citibank/Scotiabank Lenders' actions on the Amendment Effective Date or during the Amendment Period, including (i) forbearing, delaying or failing to exercise remedies, (ii) agreeing to a postponement or delay in payment of interest or principal, (iii) granting an extension of any maturity date, or (iv) not requiring the repayment or reborrowing of any loans or not requiring any loans to be revolving loans, or (y) the inclusion in this Agreement as a Potential Default, and the inclusion in the Forbearance Agreement as a "Potential Default" (as defined in the Forbearance Agreement) of the Authority's use of moneys from the General Fund to service its debts under the Citibank/Scotiabank Lines of Credit."

C.     Section 209 is hereby supplemented (1) by the addition of the following words in the fifth paragraph of said Section 209 immediately after the words "with the Trustee the following" and prior to the colon the following the words "; provided, however, that the certificate referred to in clause (c) below shall not be required to be delivered in connection with the issuance of the Series 2015A Bonds" and (2) by the addition in the third to last full paragraph immediately after the words "one hundred and twenty per centum (120%)" the words ", provided, however, that such requirement shall not apply in connection with the issuance of the Series 2015A Bonds."

ACTIVE 202749702v.8

USB_9019MOTION_0000273

D.       Section 502 is hereby amended by the addition of the following language in the fourth paragraph immediately before the period:

", provided that during the Amendment Period, the Trustee may institute and prosecute such suit, action or proceeding only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

E.       Section 506 is hereby amended by deleting the first word of the second sentence of said Section and replacing it with "Other than during the Amendment Period, after".

F.       The last paragraph of Section 507 is hereby amended by the addition of the following language in the first sentence after the second use of the word "Authority" immediately before the comma:

"(except that during the Series 2015A Bonds Period the moneys in the Self-insurance Fund shall be held by the Trustee in trust)"

G.       Section 512A is hereby amended by adding the following after the last paragraph thereof:

"Notwithstanding the foregoing, during the Series 2015A Bonds Period, if the Authority has failed to make a deposit to the Series 2015A Bonds Special Redemption Fund in the amount, and during the period provided in that certain Bond Purchase Agreement, dated as of June 30, 2015, by and among the Authority and the purchasers party thereto, the Trustee shall withdraw from the Self-insurance Fund and deposit to the credit of the Series 2015A Bonds Special Redemption Fund, upon the instruction of the Authority, an amount sufficient to make up such deficiency."

H.       A new Section 518 shall be added as follows:

"Section 518. Series 2015A Bonds Special Redemption Fund. A special fund is hereby created and designated the "Puerto Rico Electric Power Authority Series 2015A Bonds Special Redemption Fund" (herein sometimes called the "Series 2015A Bonds Special Redemption Fund") to be held by the Trustee solely for the benefit of the holders of the Series 2015A Bonds separate and apart from all other funds and accounts held under this Agreement. Moneys in the Series 2015A Bonds Special Redemption Fund shall be used solely to (i) pay interest on the Series 2015A Bonds, (ii) at the option of the Authority redeem the Series 2015A Bonds in part on the first business day of August, September, October, November or December, 2015 or in whole on December 15, 2015 in the manner specified in the Series 2015A Bonds, and (ii) be applied to the maturity of the Series 2015A Bonds in whole on January 1, 2016. Any amounts remaining in the Series 2015A Bonds Special Redemption Fund after the Series 2015A Bonds are paid or deemed paid in full shall be transferred by the Trustee at the direction of the Authority in its discretion."

USB_9019MOTION_0000274

I. The second paragraph of Section 602 is hereby amended in its entirety to read as follows:

"Moneys held for the credit of the Construction Fund and the Reserve Maintenance Fund shall, as nearly as may be practicable, be continuously invested and reinvested by the Authority in Investment Obligations, and moneys held for the credit of the Self-insurance Fund shall, as nearly as may be practicable, be continuously invested and reinvested during the Series 2015A Bonds Period by the Trustee pursuant to the investment requirements set forth in the last sentence of this paragraph (and thereafter by the Authority) in Investment Obligations, and moneys held for the credit of the Revenue Fund shall, as nearly as may be practicable, be continuously invested and reinvested by the Authority in Government Obligations, which Investment Obligations and Government Obligations shall mature, or shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said Funds will be required for the purposes intended, or in Time Deposits; provided, however, that each such Time Deposit shall permit the moneys so placed to be available for use at the times provided above. With respect to the Trustee's investment of monies in the Self-insurance Fund during the Series 2015A Bonds Period, the Trustee shall liquidate the current investments held therein and reinvest all such amounts (a) in Government Obligations, or (b) in such Investment Obligations and in such amounts as the Trustee may be instructed from time to time pursuant to a mutual written direction signed by the Authority and the majority of the Forbearing Creditors; and the Trustee shall not in any manner be liable or responsible for any investment losses or expenses occurring as a result of its compliance with the foregoing investment requirements."

J. The fifth paragraph of Section 602 is hereby amended by deleting the word "Authority" each time it appears in said paragraph or sentence, as the case may be, and inserting in lieu thereof the words "Trustee in its sole discretion during the Series 2015A Bonds Period (and thereafter the Authority)".

K. The first sentence of the sixth paragraph and seventh paragraph of Section 602 is hereby amended by deleting the first word "Prior" and inserting in lieu thereof "After the Series 2015A Bonds Period, prior".

L. The penultimate paragraph of Section 602 is hereby amended by deleting the first word "The" and inserting in lieu thereof "After the Series 2015A Bonds Period, the".

M. Section 802(h) is hereby amended by the addition of the following language immediately prior to the semi-colon:

"provided, however, that during the Amendment Period, the Trustee may give such notice only upon the written request of the holders of a majority in the aggregate principal amount of the bonds then outstanding"

ACTIVE 262749702v.8

USB_9019MOTION_0000275

N.    The first paragraph of Section 804 is hereby amended by the addition of the following language in the last sentence immediately before the period:

", provided, further, that during the Amendment Period, the Trustee may proceed to take action pursuant to this paragraph only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

2.    The modifications to the Agreement contained in this Seventeenth Supplemental Agreement shall remain in effect only during the Amendment Period or the Series 2015A Bonds Period, as applicable, and shall terminate automatically on the Amendment Termination Date, except (i) Sections 1.B and 1.C, and any related definitions, which will continue in effect until all series of bonds outstanding under the Agreement have been paid or deemed paid in full in accordance with the Agreement and (ii) Sections 1.F, G, H, I, J, K and L, and any related definitions, which will continue in effect during the Series 2015A Bonds Period. The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of the Amendment Termination Date and the basis therefor.

3.    The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

4.    This Seventeenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

5.    Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

ACTIVE 202749702v.8

USB_9019MOTION_0000276

COMMONWEALTH OF PUERTO RICO  )

                                  )   ss.:

MUNICIPALITY OF SAN JUAN          )

On the _28th_ day of _July_, in the year 2015, before me personally came _Carlos Javier Cordova Montalvo_ to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _Guaynabo_, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # _1760_

NOTARY PUBLIC

My commission expires: N/A

(SEAL)

LIONEL E. SANTA CRISPIN
ABOGADO - NOTARIO

EXENTO PAGO ARANCEL
LEY 47
4 DE JUNIO DE 1982

STATE OF NEW YORK )

                           )   ss.:

COUNTY OF NEW YORK )

On the _____ day of _____, in  the year 2015, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides at _____; that he is an Assistant Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that he knows the seal of said association; that the seal affixed to said instrument is the corporate seal of said association; that it was so affixed by authority of Board of Directors of said association; and that he signed his name thereto by like authority.

NOTARY PUBLIC

My commission expires:

(SEAL)

ACTIVE 202749702v.7

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Seventeenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Seventeenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

(SEAL)

Attest:

Secretary

PUERTO RICO ELECTRIC POWER AUTHORITY

By:

Executive Director

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By:

Vice President

Attest:

Trust Officer

USB_9019MOTION_0000278

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Seventeenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Seventeenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S.BANK NATIONAL ASSOCIATION,
as successor Trustee

By: Julie J. Becker
Vice President

Attest:

Vice President

USB_9019MOTION_0000279

Dated this 30th day of July, 2015

Name: Julie J. Becker
Vice President

STATE OF MINNESOTA )
                   )    : ss.
COUNTY OF RAMSEY   )

On the 30th day of July, 2015, before me personally came Julie J. Becker, to me known who, being by me duly sworn, did depose and say that she resides at St. Paul, Minnesota; that she is a Vice President of U.S. Bank National Association; and that she signed her name to the above instrument.

Jennifer W. Scobie

My Commission expires: Jan 31, 2017

JENNIFER WIDMYER SCOBIE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2017

2

USB_9019MOTION_0000280

## Schedule 1

1. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 501 of the Trust Agreement insofar as such noncompliance or failure is a result of PREPA's failure to establish and enforce reasonable regulations in relation to the collection of bills for services and facilities provided by PREPA.

2. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 502 of the Trust Agreement insofar as such noncompliance or failure is a result of PREPA's failure to revise the rates and charges for the services and facilities furnished by PREPA, or the result of PREPA's failure to revise its regulations in relation to the collection of bills for such services and facilities.

3. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 503 or section 505 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's use of monies from the General Fund to service its debt under the Citibank/Scotiabank Lines of Credit.

4. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 504 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to adopt and file a budget that is consistent with the procedural and/or substantive requirements of section 504.

5. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 506 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to transfer monies from the General Fund to the Revenue Fund in a manner consistent with section 506.

6. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 507 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to transfer monies from the Revenue Fund to the Sinking Fund in a manner consistent with section 507.

7. Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to comply with or perform its obligations under section 702 of the Trust Agreement, insofar as such noncompliance or failure is a result of PREPA's failure to operate in an efficient and economical manner, maintain the system in good repair and sound operating condition (including by making all necessary repairs, renewals and replacements), or as a result of PREPA's employment of more persons than are necessary and compliance with all valid and applicable rules, regulations, and orders.

ACTIVE 202749702v 8

USB_9019MOTION_0000281

8.    Any default or event of default under section 802(h) of the Trust Agreement as a result of PREPA's failure to keep accurate records or complete and file its audited financial statements within the time periods specified in section 710 of the Trust Agreement.

11

282

USB_9019MOTION_0000282

(5)

## CERTIFICATE AS TO EIGHTEENTH SUPPLEMENTAL AGREEMENT

I, Ivelisse C. Sánchez Soultaire, Secretary of Puerto Rico Electric Power Authority (the

"Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the

Eighteenth Supplemental Agreement, dated as of March 1, 2016, which is substantially the same

as the Eighteenth Supplemental Agreement which was presented at the meeting of the Authority

duly called and held on March 15, 2016, and which was approved by the Authority by resolution

duly adopted at said meeting.

WITNESS my hand this 11ᵗʰ day of March, 2016.

_____
Secretary
Puerto Rico Electric Power Authority

USB_9019MOTION_0000283

Confidential
Marketmaterial
Muster-ForRhododenderi & Brand
Apr 21, 2017 10:55

*Execution Version*

## EIGHTEENTH SUPPLEMENTAL AGREEMENT

THIS EIGHTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of March, 2016, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

### W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974 (as amended from time to time, the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provision for certain actions to be undertaken consistent with the Restructuring Support Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016 (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "RSA"), by and among the Authority and the Supporting Creditors defined therein, and the Bond Purchase Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016, by and among the Authority and the Purchasers defined therein (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "BPA"); true and complete copies of the RSA and BPA are respectively attached hereto as *Attachment A* and *Attachment B*; and

1



Confidential
Marketmaterial
Muster-ForRhododenderi & Brand
Apr 21, 2017 19:38

USB_9019MOTION_0000284

WHEREAS, the Trustee has received an opinion of counsel that (a) the Authority has the right, power and authority to enter into this Eighteenth Supplemental Agreement, (b) this Eighteenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this Eighteenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, and (d) all of the conditions precedent to the execution and delivery by the Trustee of this Eighteenth Supplemental Agreement, including such consents, have been satisfied; and

WHEREAS, the execution and delivery of this Eighteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this Eighteenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this Eighteenth Supplemental Agreement have been satisfied; and

WHEREAS, the Authority has delivered to the Trustee written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Eighteenth Supplemental Agreement have happened, exist and have been performed as required, and the Authority has delivered to the Trustee a certificate dated the date of this Eighteenth Supplemental Agreement, representing the same; and

WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this Eighteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS EIGHTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Agreement is hereby amended and supplemented in the following respects:

A.      Section 101 is hereby amended or modified for purposes of implementing this Eighteenth Supplemental Agreement by the addition of and changes to the following definitions in appropriate alphabetical order in said Section (and all capitalized terms that are used but not defined herein shall have the same meanings as given in the Agreement):

The term "Ad Hoc Group" shall mean such term as defined in the RSA.

USB_9019MOTION_0000285

The term "Amending Creditors" shall mean Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, Solus (solely in its capacity as a bondholder), the Ad Hoc Group and any other Holder (as defined in the RSA) , including successors and assigns thereof. For purposes of this Agreement, the Trustee shall be entitled to rely on a certification of any person or entity that it is an Amending Creditor.

The term "Amendment Effective Date" shall mean March 16, 2016, being the effective date of the Eighteenth Amendment.

The term "Amendment Period" shall mean the period from the Amendment Effective Date until the Amendment Termination Date.

The term "Amendment Termination Date" shall mean the earliest of (a) the Scheduled Amendment Termination Date, (b) the date on which (i) the "Support Period" (as defined in the RSA) has expired or terminated in accordance with the terms of the RSA (including expiration or termination as a result of withdrawal by the relevant Supporting Creditors from the RSA) as to any Supporting Creditor Class or as to any Insurer (as defined in the RSA), and whether such termination or expiration occurred on, before or after the date of the Eighteenth Amendment, and (ii) the Trustee has received written notice from the Authority or any Supporting Creditor (as defined in the RSA) or former Supporting Creditor confirming the same, and (c) the filing of a proceeding by or on behalf of the Authority pursuant to the Puerto Rico Public Corporation Debt Enforcement and Recovery Act, title 11 of the U.S. Code, or any other any bankruptcy or insolvency law, or the commencement of any other action or proceeding that seeks to adjust, extend or challenge the claims of creditors pursuant to any federal, state or Puerto Rico statute, now in effect or hereinafter enacted. Upon the occurrence of the date described in clause (b)(i) of this definition, the Authority shall promptly, and in any event within 2 business days thereof, provide written notice to the Trustee confirming such occurrence. For purposes of this Agreement, the Trustee shall be entitled to rely on a certification of any person or entity that it is a Supporting Creditor or former Supporting Creditor, as applicable.

The term "Approved Costs of Improvements" shall mean the Approved Initial Costs of Improvements and any other costs of Improvements (and of extensions of the System) which the Required Amending Creditors or their respective advisors have confirmed are reasonably acceptable (or which have been deemed reasonably acceptable to the Required Amending Creditors in accordance with clause (3) of Section 505) and regarding which the Authority provided written certification to the Trustee and the Required Amending Creditors or their respective advisors, that such costs of Improvements (and of extensions of the System) are or are deemed to be reasonably acceptable to the Required Amending Creditors or their respective advisors.

The term "Approved Initial Costs of Improvements" shall mean the costs of Improvements (and of extensions of the System) specified in the initial schedule approved by the Required Amending Creditors pursuant to Section 505.

The term "BPA" shall have the meaning set forth in the third recital of the Eighteenth Amendment.

USB_9019MOTION_0000286

The term "Eighteenth Amendment" shall refer to the Eighteenth Supplemental Agreement, dated as of March 1, 2016, by and between the Authority and the Trustee.

The term "Initial Improvements Period" shall have the meaning given to it in Section 505.

The term "Potential Default" shall mean each of the events specified on Schedule 1, the occurrence of which would give rise to a default under this Agreement.

The term "Required Amending Creditor Group" refers individually to each of (i) Assured Guaranty Corp. and Assured Guaranty Municipal Corp., (ii) National Public Finance Guarantee Corporation, or, (iii) at any given time, Holders (as defined in the RSA) that (A) are party to the RSA, and (B) in the aggregate beneficially own a majority of the aggregate principal amount of Uninsured Bonds (as that term is defined in the RSA) beneficially owned by Holders (as defined in the RSA) then party to the RSA.

The term "Required Amending Creditors" shall mean (i) Assured Guaranty Corp. and Assured Guaranty Municipal Corp., (ii) National Public Finance Guarantee Corporation, and, (iii) at any given time, Holders (as defined in the RSA) that (A) are party to the RSA, and (B) in the aggregate beneficially own a majority of the aggregate principal amount of Uninsured Bonds (as that term is defined in the RSA) beneficially owned by Holders (as defined in the RSA) then party to the RSA.

The term "RSA" shall have the meaning set forth in the third recital of the Eighteenth Amendment.

The term "Scheduled Amendment Termination Date" shall mean 11:59 p.m. (prevailing Eastern Time) on June 30, 2016.

The term "Scotiabank Credit Agreement" shall mean that certain Credit Agreement, dated as of May 4, 2012, between the Authority, as borrower, the lenders party thereto, and Scotiabank de Puerto Rico, as administrative agent, as amended or otherwise modified from time to time.

The term "Series 2016 Bonds" shall mean collectively the Authority's Power Revenue Bonds, Series 2016A, and Power Revenue Bonds, Series 2016B, issued at one time or at two separate times pursuant to Resolution 4338, adopted by the Authority on March 15, 2016 and sold pursuant to the BPA.

The term "Solus" shall have the meaning given such term in the RSA.

The term "Solus Credit Agreement" shall mean that certain Trade Finance Facility Agreement, dated as of July 20, 2012, between the Authority and Citibank, N.A. or its transferees party thereto from time to time (including Solus), as applicable, as amended or otherwise modified from time to time.

USB_9019MOTION_0000287

Confidential
James Gilango
Master EnterDdscovery v. 1 Group
Apr 01, 2017 10:38

The term "Solus/Scotiabank Lenders" shall mean Citibank, N.A. or its transferees (including Solus), as applicable, and the Lenders (as defined in the Scotiabank Credit Agreement).

The term "Solus/Scotiabank Lines of Credit" shall mean the Solus Credit Agreement and the Scotiabank Credit Agreement.

The term "Special Effective Date" shall mean the later of (i) the Amendment Effective Date and (ii) March 3, 2016.

The term "Special Period" shall mean the period from the Special Effective Date until the Amendment Termination Date.

The term "Supporting Creditor Class" refers to (i) GDB, (ii) the Holders, (iii) the Insurers, (iv) Solus or (v) Scotiabank and the Scotiabank Lenders, each as defined in the RSA.

The term "Validation Proceeding" shall mean any validation or other legal proceedings in which holders of bonds may have a right to participate under Section 35(c) or (d) of Act No. 4-2016 of the Legislature of Puerto Rico, approved on February 16, 2016 (as the same may be amended, the PREPA Revitalization Act).

B.     The following sentence shall be added at the end of the definition of "Current Expenses" in Section 101:

"Notwithstanding the foregoing or anything herein to the contrary, none of the holders, the Trustee, and the Authority shall contest whether an expense, claim, liability, or amount shall be construed as a Current Expense under this Agreement based solely on (x) the Solus/Scotiabank Lenders' actions on February 3, 2016 (the New Effective Date (as defined in the RSA)), during the Amendment Period, or during the time the Support Period (as defined in the RSA) is in full force and effect as to each Supporting Creditor Class other than GDB, including (i) forbearing, delaying or failing to exercise remedies, (ii) agreeing to a postponement or delay in payment of interest or principal, (iii) granting an extension of any maturity date, or (iv) not requiring the repayment or reborrowing of any loans or not requiring any loans to be revolving loans, or (y) the inclusion in this Agreement as a Potential Default, and the inclusion in the RSA as a "Potential Default" (as defined in the RSA) of the Authority's use of moneys from the General Fund to service its debts under the Solus/Scotiabank Lines of Credit."

C.     Section 208 is hereby supplemented (1) by the addition of the following words in the fifth paragraph of said Section 208 immediately after the words "with the Trustee the following" and prior to the colon ": provided, however, that the certificate referred to in clause (c) below shall not be required to be delivered in connection with the issuance of the Series 2016 Bonds" and (2) by the addition in the third to last full paragraph immediately after the words "one hundred and twenty per centum (120%)" of the words "; provided, however, that such requirement shall not apply in connection with the issuance of the Series 2016 Bonds."

D.     Section 302 is hereby amended by adding the following language at the end of the first sentence of said Section:  "; provided, however, that with respect to any

Confidential
Mark Williams
Master EnterDdscovery v. 1 Group
Apr 01, 2017 15:36

USB_9019MOTION_0000288

redemption of the Series 2016 Bonds or any portions thereof, the requirement for thirty (30) days' notice in this sentence shall be reduced to twenty (20) days' notice."

E.       Section 502 is hereby amended by the addition of the following language in the fourth paragraph immediately before the period:

"; provided, however, that during the Special Period, the Trustee may institute and prosecute such suit, action or proceeding only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

F.       Section 505 is hereby amended by the addition of the following paragraphs immediately preceding Section 506:

"(1) After the Amendment Effective Date and not less than ten (10) business days before the first transfer of moneys from the General Fund to the Capital Improvement Fund pursuant to clause (4) of this Section 505, the Authority shall submit to the Amending Creditors or their respective advisors for approval a schedule of expected costs of Improvements (and of extensions to the System) during an initial period of not more than thirteen (13) weeks from the date of transfer of moneys from the General Fund to the Capital Improvement Fund (the "Initial Improvements Period") that itemizes and contains a brief description of Improvements (and of such extensions of the System) and the applicable project name or names assigned thereto by the Authority the costs of which are expected to be paid from moneys in the Capital Improvement Fund, the Reserve Maintenance Fund or the Construction Fund during such Initial Improvements Period, along with a monthly cost forecast for each such project during the Initial Improvements Period.

"(2) At any point thereafter during the Amendment Period, at least ten (10) business days before the requested date of approval, the Authority may submit to the Amending Creditors or their respective advisors for approval (i) a revised schedule of expected Improvements (and of extensions of the System) during the Initial Improvements Period or (ii) a schedule of expected Improvements (and of extensions of the System) during a subsequent thirteen (13) week period commencing on the date of delivery of such schedule (in each case that itemizes and specifies the expected costs of such Improvements (and of extensions of the System) during such period and contains a brief description of such Improvements (and of such extensions of the System) and the applicable project name or names assigned thereto by the Authority) the costs of which are expected to be paid from moneys in the Capital Improvement Fund, the Reserve Maintenance Fund or the Construction Fund during such period following the date of delivery of such schedule, along with a monthly cost forecast for each such project during such period.

"(3) Within not more than ten (10) business days after receipt of any such schedule referred to in clauses (1) or (2) above in this Section, the Required Amending Creditors or their respective advisors may deliver to the Authority written confirmation or confirmations that the costs of Improvements (and of extensions of the System) described in the applicable schedule (the "Proposed Improvements") are or are not reasonably acceptable. In addition, if within not more than ten (10) business days after receipt of any such schedule referred to in clauses (1) or (2) above in this Section, none of the Required Amending Creditor Groups nor any of their respective advisors objects in one or more writings to the Authority to any such schedule of

USB_9019MOTION_0000289

Proposed Improvements, such Proposed Improvements shall be deemed to be reasonably acceptable to the Required Amending Creditors for purposes of this Section 505. Upon receipt of written confirmation from each Required Amending Creditor Group or its advisor stating that such Proposed Improvements are acceptable or, to the extent a Required Amending Creditor Group or its advisor has not provided a written confirmation stating that such Proposed Improvements are acceptable, the expiration of such ten (10) business day period without the receipt by the Authority of any objection from such Required Amending Creditor Group or its advisors, the Authority shall provide a certificate to the Trustee and the Amending Creditors or their respective advisors, signed by the Executive Director or by any other officer or employee of the Authority with fiscal authority, attaching such schedule and certifying that it has received from each Required Amending Creditor Group or its advisor either (a) a written confirmation that the Proposed Improvements described in such schedule are reasonably acceptable or (b) no objection within the applicable time period described above and, as a result, that such Proposed Improvements are deemed to be reasonably acceptable to such Required Amending Creditor Group for purposes of this Section 505.

"(4) During the Amendment Period, and subject to the Authority's compliance with the provisions of clauses (1) through (3) of this Section 505, the Authority may transfer moneys from the General Fund to the Capital Improvement Fund to be applied as provided in Section 512B of this Agreement to pay Approved Costs of Improvements, provided that:

(a)     immediately prior to any such transfer, the balance in the Construction Fund and the Capital Improvement Fund in the aggregate is less than $75,000,000;

(b)     on the date of each such transfer and application the representations of the Authority given in Section 12(b) of the RSA are true and correct as of the date of any such transfer and as of the date of any application of such funds;

(c)     immediately following any such transfer, the aggregate amount of moneys transferred pursuant to this clause (4) plus the aggregate amount of moneys deposited in the Construction Fund after the date of the Eighteenth Amendment does not exceed the aggregate amount of Approved Costs of Improvements;

(d)     any moneys so transferred during the Amendment Period shall be applied by the Authority only to Approved Costs of Improvements and are applied in the manner required by the Agreement for application of moneys from the Construction Fund; and

(e)     on a quarterly basis, on the fifteenth (15th) day of the month, the Authority shall provide a certification to the Trustee and each Amending Creditor or its advisors for the three-month period preceding the first day of the month in which the certification is given, (i) indicating whether the Improvements on the schedules of Approved Costs of Improvements are complete, and, for any such Improvements that are not complete, an estimate of the percentage of completion of the project, (ii) containing an estimate of the actual costs towards which the moneys in the Construction Fund, Reserve Maintenance Fund and/or Capital Improvement Fund were applied during such three-month period on a project-level basis, and (iii)

USB_9019MOTION_0000290

stating that all funds withdrawn from the Construction Fund, Reserve Maintenance Fund and/or Capital Improvement Fund during such three-month period were applied to Approved Costs of Improvements (A) in a manner consistent with the required manner of application of moneys from the Construction Fund and (B) in compliance with the Eighteenth Amendment.

"(5) After the Amendment Period but subject to any obligation of the Authority to transfer funds to the Bond Service Account and the Redemption Account as and when required under Section 512B, for so long as moneys transferred to the Capital Improvement Fund pursuant to clause (4) remain in the Capital Improvement Fund, (i) the Authority may not apply such moneys for costs of Improvements (or of extensions of the System) other than Approved Costs of Improvements approved during the Amendment Period in accordance with the terms of this Section 505 and (ii) the Authority must provide the certification in clause (4)(e) following the expenditure of such funds; *provided, however*, that if the Authority decides not to apply such funds to such Approved Costs of Improvements, then it shall transfer such funds to the General Fund.

"(6) The Trustee shall have no duty to review any certification received pursuant to previous clauses (1)-(5) for any purpose, except to confirm that such certification has been delivered, and the Trustee shall be authorized to provide any requesting bondholder with a copy of any such certification."

G.      Section 506 is hereby amended by deleting the first word of the second sentence of said Section and replacing it with "Other than during the Special Period, after".

H.      Section 802(h) is hereby amended by the addition of the following language immediately prior to the semi-colon:

"; provided, however, that during the Special Period, the Trustee may give such notice only upon the written request of the holders of a majority in the aggregate principal amount of the bonds then outstanding"

I.      The first paragraph of Section 804 is hereby amended by the addition of the following language in the last sentence immediately before the period:

"; and provided, further, however, that during the Special Period, the Trustee may proceed to take action pursuant to this paragraph only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

J.      A new Section 812 is hereby added to the Agreement as follows:

"Section 812. Rights of Holders Regarding Validation Proceeding. Nothing in this Agreement shall affect, limit or impair the rights of the holders of bonds to participate in any Validation Proceeding."

2.      The modifications to the Agreement contained in this Eighteenth Supplemental Agreement shall remain in effect only during the Amendment Period and shall terminate automatically on the Amendment Termination Date, except (i) Sections 1.B and any related

USB_9019MOTION_0000291

Confidential
Archive Version
Version 1.1 Subordinated BPA Text
Apr. 21, 2017 15:05

definitions, which will continue in effect until all series of bonds outstanding under the Agreement have been paid or deemed paid in full in accordance with the Agreement, (ii) Sections 1.C, 1.D and 1.J and any related definitions, which will continue in effect until the termination of the Agreement, and (iii) Section 1.F and any related terms and definitions will continue in effect solely as to clause (5) of Section 505, added to the Trust Agreement pursuant thereto, until all moneys transferred to the Capital Improvement Fund during the Amendment Period shall have been applied in accordance therewith and all related certifications have been made. The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of the Amendment Termination Date and the basis therefor.

3.      The Authority hereby agrees to provide the Trustee with a copy of any amendments, supplements or waivers to the RSA or BPA (each herein a "Modification"), promptly after the effectiveness of any such Modification, and the Trustee (i) shall not be deemed to have knowledge of any Modification (or the terms and provisions thereof) prior to the Trustee's actual receipt of the same and (ii) may provide a copy thereof to any holder of bonds. It is understood by the Trustee that the Authority may redact information regarding individual holders (such as their identities, dollar amounts of holdings of bonds and purchase commitments) from any such Modification.

4.      The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

5.      The Authority hereby acknowledges and agrees that (i) the Trustee is not a party to the RSA or the BPA, and (ii) this Eighteenth Supplemental Agreement shall not be understood to incorporate the RSA and BPA into the Agreement, and no Modification shall be deemed to be an amendment of the Agreement or this Eighteenth Supplemental Agreement for purposes of Article XI of the Agreement.

6.      This Eighteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

7.      Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

8.      This Eighteenth Supplemental Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument. Delivery of any executed signature page of this Eighteenth Supplemental Agreement by facsimile or email transmission shall be effective as delivery of a manually executed counterpart hereof.

[Signature page follows.]

9

Confidential
Archive Version
Version 1.1 Subordinated BPA Text
Apr. 21, 2017 15:05
292

USB_9019MOTION 0000292

confidential
Litigation Version
Subject to Protective Order
Aug 11, 2017 16:36

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Eighteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Eighteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director


Attest:_____
Secretary


U.S.BANK NATIONAL ASSOCIATION,
as successor Trustee


By:_____
Vice President


Attest:

_____
Trust Officer

11

confidential
Litigation Version
Subject to Protective Order
Aug 11, 2017 16:36
293

COMMONWEALTH OF PUERTO RICO    )
                               )    ss.:
MUNICIPALITY OF SAN JUAN       )

On the 15th day of March, in the year 2016, before me personally came Javier A. Quintana Méndez, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of Guaynabo, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # 3,540

My commission expires: N/A

(SEAL)

NOTARY PUBLIC

STATE OF _____    )
                              )    ss.:
COUNTY OF _____     )

On the _____ day of _____, in the year 2016, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that she/he resides at _____; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

_____
NOTARY PUBLIC

My commission expires: _____

(SEAL)

12

USB_9019MOTION_0000294

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Eighteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Eighteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Attest:

_____
Trust Officer

**Julie J. Becker**
**Vice President**

11

USB_9019MOTION_0000295

STATE OF MINNESOTA    )
                      )        : ss.
COUNTY OF RAMSEY      )

On the ⬚ day of March, 2016, before me personally came Julie J. Becker, to me known who, being by me duly sworn, did depose and say that she resides in St. Paul, MN; that she is a Vice President of U.S. Bank National Association; and that she signed her name to the above instrument.



My Commission expires: Jan. 31, 2017

JENNIFER WIDMYER SCOBIE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2017

2

USB_9019MOTION_0000296

### Schedule 1

1.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 501 of the Agreement insofar as such noncompliance or failure is a result of the Authority's failure to establish and enforce reasonable regulations in relation to the collection of bills for services and facilities provided by the Authority.

2.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 502 of the Agreement insofar as such noncompliance or failure is a result of the Authority's failure to revise the rates and charges for the services and facilities furnished by the Authority, or the result of the Authority's failure to revise its regulations in relation to the collection of bills for such services and facilities.

3.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 503 or section 505 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's use of monies from the General Fund to service its debt under the Solus/Scotiabank Lines of Credit.

4.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 504 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's failure to adopt and file a budget that is consistent with the procedural and/or substantive requirements of section 504.

5.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 506 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's failure to transfer monies from the General Fund to the Revenue Fund in a manner consistent with section 506.

6.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 507 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's failure to transfer monies from the Revenue Fund to the Sinking Fund in a manner consistent with section 507.

7.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to comply with or perform its obligations under section 702 of the Agreement, insofar as such noncompliance or failure is a result of the Authority's failure to operate the System in an efficient and economical manner, maintain the System in good repair and sound operating condition (including by making all necessary repairs, renewals and replacements), or as a result of the Authority's employment of more persons than are necessary and noncompliance with all valid and applicable rules, regulations, and orders.

USB_9019MOTION_0000297

confidential

8.      Any default or event of default under section 802(h) of the Agreement as a result of the Authority's failure to keep accurate records or complete and file its audited financial statements within the time periods specified in section 710 of the Agreement.

USB_9019MOTION_0000298

## Attachment A

[RSA]

USB_9019MOTION_0000299

(5)

## CERTIFICATE AS TO FIRST AMENDMENT
## TO
## EIGHTEENTH SUPPLEMENTAL AGREEMENT

I, Ivelisse C. Sánchez Soultaire, Secretary of Puerto Rico Electric Power Authority (the

"Authority"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the First

Amendment to Eighteenth Supplemental Agreement, dated as of June 1, 2016, which is

substantially the same as the First Amendment to Eighteenth Supplemental Agreement which

was presented at the meeting of the Authority duly called and held on June 2, 2016, and which

was approved by the Authority by resolution duly adopted at said meeting.

WITNESS my hand this 22 day of June, 2016,

_____
Secretary
Puerto Rico Electric Power Authority

USB_9019MOTION_0000300

*Execution version*

# FIRST AMENDMENT TO EIGHTEENTH SUPPLEMENTAL AGREEMENT

THIS FIRST AMENDMENT TO EIGHTEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of June, 2016, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974 (as amended from time to time, the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority and the Trustee have heretofore executed an eighteenth supplemental agreement, dated as of March 1, 2016 (the "Eighteenth Supplemental Agreement"), to the Agreement, which Eighteenth Supplemental Agreement supplemented the Agreement so as to make provision for certain actions to be undertaken consistent with the Restructuring Support Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016 (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "RSA"), by and among the Authority and the Supporting Creditors defined therein, and the Bond Purchase Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016, by and among the Authority and the Purchasers defined

USB_9019MOTION_0000301

therein (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "BPA"); and

WHEREAS, the Eighteenth Supplemental Agreement provides that it may be amended and supplemented in accordance with the provisions of Article XI of the Agreement; and

WHEREAS, the Authority has determined that it is desirable to amend the Eighteenth Supplemental Agreement so as to make provision for certain additional actions to be undertaken consistent with the RSA and BPA; and

WHEREAS, the Trustee has received an opinion of counsel that (a) the Authority has the right, power and authority to enter into this First Amendment to Eighteenth Supplemental Agreement, (b) this First Amendment to Eighteenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this First Amendment to Eighteenth Supplemental Agreement complies with the provisions of the Agreement, and that it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, and (d) all of the conditions precedent to the execution and delivery by the Trustee of this First Amendment to Eighteenth Supplemental Agreement, including such consents, have been satisfied; and

WHEREAS, the execution and delivery of this First Amendment to Eighteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this First Amendment to Eighteenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this First Amendment to Eighteenth Supplemental Agreement have been satisfied; and

WHEREAS, the Authority has delivered to the Trustee written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this First Amendment to Eighteenth Supplemental Agreement have happened, exist and have been performed as required, and the Authority has delivered to the Trustee a certificate dated the date of this First Amendment to Eighteenth Supplemental Agreement, representing the same; and

WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this First Amendment to Eighteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof.

USB_9019MOTION_0000302

NOW, THEREFORE, THIS FIRST AMENDMENT TO EIGHTEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1.      The Eighteenth Supplemental Agreement is hereby amended and supplemented in the following respects:

A.      The definition of the term "Series 2016 Bonds" in Section 1.A is hereby modified by adding ", as amended," immediately after "March 15, 2016". The definition of the term "Series 2016 Bonds" is further amended by (1) adding "(A)" immediately after the word "collectively" and immediately prior to the words "the Authority's Power Revenue Bonds, Series 2016A" and (2) adding the following language immediately after the word "BPA" and prior to the period: "and (B) any other bonds issued under this Agreement prior to January 1, 2017, which bonds are sold pursuant to a bond purchase agreement to which the Authority and each of the following persons is a party: (i) Assured Guaranty Corp., (ii) Assured Guaranty Municipal Corp., (iii) National Public Finance Guarantee Corporation and (iv) Participating Holders (as defined in the BPA), and/or affiliates of such Participating Holders, which collectively represent not less than two-thirds of the purchase commitments made by all Participating Holders under the BPA".

B.      Section 1 is hereby modified to add a new subsection K immediately after subsection J to read as follows:

"K.     Section 209 is hereby supplemented (1) by the addition of the following words "other than the Series 2016 Bonds" immediately after the words "refunding outstanding bonds of the Authority" in the parenthetical in the first paragraph of said Section 209, (2) by the addition of the words "or the Series 2016 Bonds" in the fifth paragraph of said Section 209 immediately after the words "; provided, however, that the certificate referred to in clause (c) below shall not be required to be delivered in connection with the issuance of the Series 2015A Bonds" and prior to the colon and (3) by the addition of the words "or the Series 2016 Bonds" in the third to last full paragraph immediately after the words "; provided, however, that such requirement shall not apply in connection with the issuance of the Series 2015A Bonds" and prior to the period."

C.      Section 1.D is hereby amended and restated as follows:

"D.     Section 302 is hereby amended by adding the following language at the end of the first sentence of said Section:  "; provided, however, that the requirement for notice set forth in this Section 302 shall not apply to any redemption of the Series 2016 Bonds or any portions thereof.""

D.      Clause (ii) of Section 2 is hereby modified by deleting the language "Sections 1.C, 1.D and 1.J" and replacing it with "Sections 1.C, 1.D, 1.J and 1.K"

2.      The modifications to the Agreement contained in this First Amendment to Eighteenth Supplemental Agreement shall remain in effect until the termination of the

USB_9019MOTION_0000303

Agreement.  The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of the Amendment Termination Date and the basis therefor.

3.     The Authority hereby agrees to provide the Trustee with a copy of any amendments, supplements or waivers to the RSA or BPA (each herein a "Modification"), promptly after the effectiveness of any such Modification, and the Trustee (i) shall not be deemed to have knowledge of any Modification (or the terms and provisions thereof) prior to the Trustee's actual receipt of the same and (ii) may provide a copy thereof to any holder of bonds. It is understood by the Trustee that the Authority may redact information regarding individual holders (such as their identities, dollar amounts of holdings of bonds and purchase commitments) from any such Modification.

4.     Notwithstanding any provision of the Agreement to the contrary, the Escrow Agent, as defined in that certain escrow deposit agreement (the "Escrow Agreement") by and among the Authority, the Purchasers and U.S. Bank National Association (solely in its capacity as escrow agent thereunder and not in its capacity as Trustee), is hereby designated a Paying Agent for purposes of the redemption provision added to the 2016A Bonds by virtue of the amendment thereto set forth below in this Section 4.  In addition, there are hereby added to the 2016A Bonds the following (A) sentence immediately after the words "which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds": "The 2016A Bonds will be also be payable from and secured by an exclusive perfected lien on, and security interest in, all of the Authority's right, title and interest in and to the Escrow Account (as defined in the Escrow Agreement hereinafter mentioned) and all moneys and other assets therein." and (B) paragraph immediately after the paragraph reading "The 2016 Bonds shall not be subject to prior redemption except as provided herein and in the Agreement.":

     "The 2016A Bonds at the time outstanding shall be required to be redeemed in whole or in part from, and to the extent of, the balance of the moneys and other assets held to the credit of the Escrow Account (and, to the extent the balance in the Escrow Account is insufficient to effect a redemption in full of the 2016A Bonds, the Authority shall have the option to supplement the funds from the Escrow Account with any moneys of the Authority available to be used for such purpose under the Agreement) at such time as such redemption is required pursuant to that certain escrow deposit agreement (the "Escrow Agreement") by and among the Authority, the Purchasers and U.S. Bank National Association (solely in its capacity as escrow agent thereunder and not in its capacity as Trustee, the "Escrow Agent"), including if the balance held to the credit of the Escrow Account is not transferred to the Trustee for further deposit to the Construction Fund by the specified date set forth in the Escrow Agreement, at a redemption price equal to the principal amount (or, if greater, the Accreted Value) thereof plus accrued interest to the date fixed for redemption (unless such interest is already included in the Accreted Value), without premium, pro rata (to the extent practicable) based on the respective Original Principal Amounts of the 2016A Bonds.  The Escrow Agent is hereby designated a Paying Agent for purposes of any redemption required pursuant to this paragraph."

The revised form of 2016A Bond, which incorporates the foregoing provision and certain related changes provided therein, is attached to this First Amendment to Eighteenth Supplemental

USB_9019MOTION_0000304

Agreement as Exhibit A and shall replace the form of 2016A Bond previously approved by the Authority. In connection with the foregoing and contemporaneously with the execution of this First Amendment to Eighteenth Supplemental Agreement, the Authority shall execute and deliver to the Trustee for authentication new 2016A Bonds in the form of Exhibit A in replacement and substitution of the existing 2016A Bonds and upon the Trustee's receipt and authentication of the replacement 2016A Bonds, it shall cancel the existing 2016A Bonds.

5.      The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

6.      The Authority hereby acknowledges and agrees that (i) the Trustee is not a party to the RSA or the BPA, and (ii) this First Amendment to Eighteenth Supplemental Agreement shall not be understood to incorporate the RSA and BPA into the Agreement, and no Modification shall be deemed to be an amendment of the Agreement or this First Amendment to Eighteenth Supplemental Agreement for purposes of Article XI of the Agreement.

7.      This First Amendment to Eighteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

8.      Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

9.      This First Amendment to Eighteenth Supplemental Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument. Delivery of any executed signature page of this First Amendment to Eighteenth Supplemental Agreement by facsimile or email transmission shall be effective as delivery of a manually executed counterpart hereof.

[Signature page follows.]

USB_9019MOTION_0000305

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this First Amendment to Eighteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this First Amendment to Eighteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By: Javier A. Quintana Méndez
Executive Director

Attest:

Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By: _____
Vice President

Attest:

_____
Trust Officer

USB_9019MOTION_0000306

COMMONWEALTH OF PUERTO RICO   )
                             )   ss.:
MUNICIPALITY OF SAN JUAN      )

On the 22ᵗʰ day of _June_, in the year 2016, before me personally came _Javier Alonso Quintana Mendez_, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _Guaynabo_, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit # 3597

NOTARY PUBLIC

My commission expires: N/A

EXENTO PAGO ARANCEL
LEY 47
4 DE JUNIO DE 1982

STATE OF _____ )
                          )   ss.:
COUNTY OF _____  )

On the _____ day of _____, in the year 2016, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that she/he resides at _____; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

NOTARY PUBLIC

My commission expires:

(SEAL)

USB_9019MOTION_0000307

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this First Amendment to Eighteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this First Amendment to Eighteenth Supplemental Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice President

Attest:

_____
Trust Officer

USB_9019MOTION_0000308

COMMONWEALTH OF PUERTO RICO   )
                              )   ss.:
MUNICIPALITY OF SAN JUAN      )

   On the _____ day of _____, in the year 2016, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #_____

       _____
       NOTARY PUBLIC
My commission expires:

(SEAL)

STATE OF  MINNESOTA   )
                      )   ss.:
COUNTY OF  RAMSEY     )

   On the 21st _____ day of June _____, in the year 2016, before me personally came Julie J. Becker _____, to me known, who, being by me duly sworn, did depose and say that she/he resides at St. Paul, Minnesota _____; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

       _____
       NOTARY PUBLIC

My commission expires: January 31, 2017

(SEAL)

JENNIFER WIDMYER SCOBIE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2017

USB_9019MOTION_0000309

Exhibit A

[Form of 2016A Bond as revised by this First Amendment to Eighteenth Supplemental Agreement]

KL2 2959335.2
[NEWYORK 3211034_12]

USB_9019MOTION_0000310

[FORM OF 2016A BOND]

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IN CONNECTION THEREWITH IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

$[_____]

No. R16A-_

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY

Power Revenue Bonds, Series 2016A

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|
| 10% | July 1, 2019 | [_____] |

Registered Owner:  Cede & Co.

Original Principal Amount: _____ Dollars

　　　　Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from (i) the special fund provided therefor as hereinafter set forth, and (ii) the Escrow Account (as defined in the Escrow Agreement hereinafter mentioned) pursuant to the terms of the Escrow Agreement as provided therein and as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Accreted Value (as hereinafter defined) hereof in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts.

　　　　From and after May 19, 2016, the date of this bond (and as further described in the next paragraph), interest on this bond will accrue on the Accreted Value of this bond at the Interest Rate set forth above, compounded semi-annually on January 1 and July 1 of each year, until payment of the Accreted Value hereof.  Interest shall be computed on the basis of a 360-day year consisting of twelve 30-day months.

- 1 -

USB_9019MOTION_0000311

The Accreted Value means, as of any January 1 or July 1, the unpaid Original Principal Amount, plus the interest accrued on the Original Principal Amount and other Accreted Value of this bond, compounded semiannually on January 1 and July 1 of each year, subject to any reductions in Accreted Value resulting from redemption in accordance with the terms of this bond, and as of any other date, the sum of (a) the Accreted Value on the next preceding January 1 or July 1 and (b) the product of (i) a fraction, the numerator of which is the number of days having elapsed from such next preceding January 1 or July 1 to the date of calculation, and the denominator of which is the number of days between such next preceding and next succeeding January 1 or July 1 and (ii) the difference between the Accreted Value on such next preceding and next succeeding January 1 or July 1 (excluding the effect on the Accreted Value of any redemption that may take place on such next succeeding January 1 or July 1). If this bond is redeemed in part on an interest payment date pursuant to an Accreted Value Partial Redemption (as hereinafter defined) and such redemption payment is made to the Registered Owner, the Accreted Value of this bond outstanding immediately after the date of any such redemption in part shall equal the unpaid Original Principal Amount of this bond, and interest on this bond shall thereafter accrue on such unpaid Original Principal Amount as provided above in this paragraph and in the prior paragraph, compounded semiannually on January 1 and July 1 of each year, from the date of such redemption. References in this bond to the principal amount of 2016 Bonds shall mean, as of any date, the unpaid Original Principal Amount of such 2016 Bonds or, if greater, the Accreted Value of such 2016 Bonds on such date, whether or not specifically stated. Tables 1 through 5 attached as Exhibit A hereto contain a non-exhaustive set of illustrative scenarios showing what the Accreted Value per $1 minimum authorized denomination of outstanding Original Principal Amount would be on the dates specified therein based on the amounts previously redeemed and the dates on which such redemptions occurred. The method of calculating the Accreted Value as of any date shall be consistent with the methodology illustrated on Exhibit A hereto.

This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions (other than the Authority), and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions (other than the Authority) are liable for the payment of this bond or the interest hereon, but this bond shall be payable as to both principal and interest solely from (i) the special fund provided therefor as hereinafter set forth, and (ii) the Escrow Account as provided in the Escrow Agreement and as hereinafter set forth.

This bond is one of a duly authorized series of bonds known as "Puerto Rico Electric Power Authority Power Revenue Bonds, Series 2016A", dated the date hereof, maturing on the 1st day of July, 2019 (the "2016A Bonds"), and issued under the Agreement for the purpose of paying the cost of acquiring or constructing capital improvements to the electric power properties of the Authority (the electric power properties owned and operated by the Authority as a single integrated system, together with all improvements, renewals and replacements thereof extensions and additions thereto financed or refinanced under the provisions of the Agreement being herein called the "System"). The Authority has also entered into a Bond Purchase Agreement, dated as of January 27, 2016 (as amended from time to time, the "Purchase Agreement"), with the purchasers party thereto (the "Purchasers") in connection with the

2

Confidential
Cravath, Swaine...
Pursuant to Protective...
August 2017 *...

issuance of the 2016A Bonds, a true and correct copy of which Purchase Agreement is attached to the Eighteenth Supplemental Agreement (as herein defined).

The Purchase Agreement contemplates the issuance under and secured by the Agreement of Puerto Rico Electric Power Authority Power Revenue Bonds, Series 2016B, in the aggregate original principal amount of $55,210,625 (the "2016B Bonds") upon the satisfaction simultaneously with or subsequent to the delivery of the 2016A Bonds of certain conditions set forth in the Purchase Agreement. The 2016A Bonds and the 2016B Bonds are herein called collectively the "2016 Bonds". Capitalized terms used herein not otherwise defined have the meanings given to them in the Purchase Agreement or if not defined therein, then in the Agreement.

All of the bonds are issued under and pursuant to a trust agreement, as amended (said agreement, together with all agreements supplemental thereto as therein permitted, including that certain Eighteenth Supplemental Agreement, dated as of March 1, 2016, as amended (the "Eighteenth Supplemental Agreement"), being herein called the "Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and U.S. Bank National Association, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the corporate trust office of the Trustee. Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Agreement.

The Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the 2016 Bonds being herein collectively called the "bonds").

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to resolutions duly adopted by the Authority.

The Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the repair, maintenance and operation of the System and for the payment of the principal of and the interest on the bonds as the same become due and payable, including reserves for such purposes. The Agreement provides for the creation of a special fund designated "Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit to the credit of the Sinking Fund of a sufficient amount of the revenues of the System over and above such expenses of repair, maintenance and operation, to pay the principal of and the interest on all bonds (including the Accreted Value of the 2016 Bonds) issued under

Confidential
Cravath, Swaine...
Pursuant to Protective...
August 2017 *...

USB_9019MOTION_0000313

Confidential
Certain Shares
No. Jet 1 - Production on a Loan
August 2017 15:20

the Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds.  The 2016A Bonds will be also be payable from and secured by an exclusive perfected lien on, and security interest in, all of the Authority's right, title and interest in and to the Escrow Account (as defined in the Escrow Agreement hereinafter mentioned) and all moneys and other assets therein.

The 2016 Bonds are issuable as registered bonds without coupons in denominations of $1.00 and any integral multiple thereof.  At the corporate trust office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, definitive bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The 2016 Bonds shall not be subject to prior redemption except as provided herein and in the Agreement.

The 2016A Bonds at the time outstanding shall be required to be redeemed in whole or in part from, and to the extent of, the balance of the moneys and other assets held to the credit of the Escrow Account (and, to the extent the balance in the Escrow Account is insufficient to effect a redemption in full of the 2016A Bonds, the Authority shall have the option to supplement the funds from the Escrow Account with any moneys of the Authority available to be used for such purpose under the Agreement) at such time as such redemption is required pursuant to that certain escrow deposit agreement (the "Escrow Agreement") by and among the Authority, the Purchasers and U.S. Bank National Association (solely in its capacity as escrow agent thereunder and not in its capacity as Trustee, the "Escrow Agent"), including if the balance held to the credit of the Escrow Account is not transferred to the Trustee for further deposit to the Construction Fund by the specified date set forth in the Escrow Agreement, at a redemption price equal to the principal amount (or, if greater, the Accreted Value) thereof plus accrued interest to the date fixed for redemption (unless such interest is already included in the Accreted Value), without premium, pro rata (to the extent practicable) based on the respective Original Principal Amounts of the 2016A Bonds.  The Escrow Agent is hereby designated a Paying Agent for purposes of any redemption required pursuant to this paragraph.

The 2016 Bonds at the time outstanding shall be required to be redeemed in part on each January 1 and July 1, commencing July 1, 2016, in each case, in an amount equal to the difference between the Accreted Value as of such date as set forth in Table 1 and the unpaid Original Principal Amount of the 2016 Bonds as set forth in Table 1 contained in Exhibit A hereto (or if higher, the amount in which such 2016 Bonds are required to be redeemed on such January 1 or July 1 pursuant to the following paragraph).

In the event the 2016 Bonds are not redeemed on any January 1 or July 1 in the amounts set forth in Table 1 contained in Exhibit A hereto, the 2016 Bonds at the time outstanding shall be required to be redeemed in part on any subsequent January 1 or July 1 in an amount equal to the difference between the Accreted Value as of such date and the unpaid Original Principal Amount of such 2016 Bonds.  Tables 2 – 5 of Exhibit A hereto contain a non-exhaustive set of illustrative examples setting forth the required redemption amounts on particular dates based on


Confidential
Certain Shares
No. Jet 1 - Production on a Loan
August 2017 15:20

USB_9019MOTION_0000314

the amounts previously redeemed and the dates on which such redemptions occurred. The difference between the Accreted Value as of any date of redemption and the unpaid Original Principal Amount of such 2016 Bonds in respect of any such redemption in part shall be computed in the manner consistent with the method of computation of such difference as set forth in Tables 2 – 5. Any redemption pursuant to this paragraph or the preceding paragraph shall be referred to as an "Accreted Value Partial Redemption".

Unless the 2016 Bonds have been previously economically defeased as provided in Section 6(c) of the Purchase Agreement, the 2016 Bonds at the time outstanding shall be redeemed in whole at a redemption price equal to the principal amount (or, if greater, the Accreted Value) thereof plus accrued interest to the date fixed for redemption (unless such interest is already included in the Accreted Value), without premium, not later than twenty-five (25) days after the effective date of the termination of the Restructuring Support Agreement (excluding, for purposes of such calculation, such effective date of termination) in accordance with its terms as to any Applicable Insurer or the Holders (as defined in the Restructuring Support Agreement) as a class. If the Restructuring Support Agreement shall be terminated as aforesaid prior to July 1, 2016, the redemption shall occur on the later of (i) July 1, 2016 and (ii) twenty-five (25) days after the termination of the Restructuring Support Agreement as aforesaid (excluding, for purposes of such calculation, such effective date of termination). Notice of redemption shall be given in the manner and subject to the terms and conditions of the Agreement. Notice of the termination of the Restructuring Support Agreement as aforesaid shall be given to the Trustee by the Authority within one (1) business day thereafter and may be given by any Applicable Insurer or any beneficial holder of 2016 Bonds, and the Trustee shall be obligated to give notice of redemption within two (2) business days following Trustee's receipt of any such notice of termination. For purposes of determining whether the Restructuring Support Agreement has terminated as aforesaid, the Trustee shall be entitled to rely on a certification of any entity that it is an Applicable Insurer or a beneficial holder of 2016 bonds.

The Authority hereby acknowledges and agrees that the Restructuring Support Agreement and the Purchase Agreement contain provisions related to the economic defeasance of the 2016 Bonds under certain circumstances. Nothing in this bond is intended to (a) limit the obligation of the Authority to the Purchasers in respect of the Restructuring Support Agreement or the Purchase Agreement or the rights of the Purchasers thereunder, or (b) make the Trustee a party to the Purchase Agreement or the Restructuring Support Agreement or require the Trustee to undertake any duties under the Purchase Agreement or Restructuring Support Agreement, and all rights of the Purchasers under the Restructuring Support Agreement and the Purchase Agreement are preserved and are not intended to be limited by this bond.

If in accordance with the Restructuring Support Agreement and the Purchase Agreement (a) a holder of a 2016 Bond duly elects to exchange all or any portion of its 2016 Bond for Securitization Bonds and (b) the Authority fails to effect such exchange, then such holder shall have the right under this bond at any time thereafter to require the Authority upon 20 days' prior written notice given to the Authority and the Trustee by such holder to have such 2016 Bond redeemed for cash, in whole or in part corresponding to the principal amount elected to be exchanged as specified in its notice, at a redemption price equal to the principal amount (or, if greater, the Accreted Value) thereof plus accrued interest to the date fixed for such redemption

5

USB_9019MOTION_0000315

(unless such interest is already included in the Accreted Value), without premium. If pursuant to the Restructuring Support Agreement and the Purchase Agreement or any related agreement, the holder of a 2016 Bond exchanges such 2016 Bond or the Authority redeems such 2016 Bond, the 2016 Bond so exchanged or redeemed shall be surrendered to the Trustee for cancellation and shall no longer be outstanding under the Agreement. If an offer shall not be made to the holders of Series 2016 Bonds to exchange the Series 2016 Bonds for Securitization Bonds in accordance with the terms and conditions set forth in Section 6 of the Purchase Agreement, then for purposes of satisfying the condition set forth in clause (a) above with respect to a holder's right of redemption contained in this paragraph (and in Section 6(f) of the Purchase Agreement), each holder shall be deemed to have properly elected such exchange. The Accreted Value of this bond will be reduced by the Accreted Value of any portion of this bond redeemed pursuant to this paragraph or exchanged for Securitization Bonds pursuant to Section 6(f) of the Purchase Agreement.

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Agreement.

On the date designated for redemption, notice having been given as provided in the Agreement (except as otherwise modified by the terms of this bond), which may be no notice if permitted by the Agreement, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee. Notwithstanding the preceding sentence, unless and until any principal, redemption price or interest has been actually paid to the Registered Owner hereof, payment of the principal or redemption price of, or accrued interest on, this bond or any portion thereof shall not be deemed paid, interest shall not cease to accrue thereon, the rights of registered and beneficial owners hereof shall not be limited, and this bond (or the applicable portion thereof) shall continue to be entitled to all the benefits and security under the Agreement as if such payment had not been made. If a portion of this bond shall be called for redemption, a new bond or bonds of the same series and maturity in principal amount equal to the unredeemed portion of this bond will be issued to the registered owner upon the surrender thereof.

The owner of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding

6

with respect thereto, except as provided in the Agreement; *provided*, that the owner of this bond shall have the right to enforce the Purchase Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

The transfer of this bond is registrable by the registered owner thereof in person or by his attorney or legal representative at the principal office of the Trustee but only in the manner and subject to the limitations and conditions provided in the Agreement and upon surrender and cancellation of this bond.  Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for this bond a new definitive bond or bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution of the Agreement have happened, exist and have been performed as so required.

This bond is issued pursuant to the Authority Act and is conclusively deemed to be valid and to have been issued in conformity with the provisions of the Authority Act.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

USB_9019MOTION_0000317

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this bond to bear the facsimile signatures of the Executive Director and the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, all as of the 19th day of May, 2016.

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____

By: _____

USB_9019MOTION_0000318

CERTIFICATE OF AUTHENTICATION

This is one of the bonds of the series designated therein and issued under the provisions of the within mentioned Agreement.

U.S. BANK NATIONAL ASSOCIATION,
successor trustee

By: _____
Authorized Officer

Date of Authentication: _____

9

USB_9019MOTION_0000319

[Form of Assignment]

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto
_____ [Please Print or Typewrite Name and Address of Transferee] the
within bond, and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to register the transfer of the within bond on the books
kept for registration thereof, with full power of substitution in the premises.

Dated: _____     Signature: _____

NOTICE: The signature to this assignment must correspond with the name as it appears
upon the face of the within bond in every particular, without alteration or enlargement or any
change whatever.

Signature Guaranteed by*:_____, New York, New York

*Such signature must be guaranteed by an "eligible guarantor institution" meeting the
requirements of the Trustee, which requirements include membership or participation in STAMP
or such other "signature guarantee program" as may be determined by the Trustee in addition to,
or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as
amended.

USB_9019MOTION_0000320

## Exhibit A

See tables 1 through 5 attached hereto

USB_9019MOTION_0000321

PREPA | 2013 A&B Bond Purchases
Accretion Tables (Table 1)
Numbers shown per $1.00 Original Principal Amount

| Interest Rate | 10.000 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 5/14/2016 | 7/1/2016 | 1/1/2017 | 7/1/2017 | 1/1/2018 | 7/1/2018 | 1/1/2019 | 7/1/2019 |
| Days | | 45 | 180 | 180 | 180 | 180 | 180 | 180 |
| Redemption Payment (Table 2) | 0 | | 1 | 1 | 1 | 1 | 1 | 2 |
| | | | | | | | | |
| Beginning Balance | $0.000000000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 |
| Issuance | 1.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Compound Interest | 0.000000000 | 0.011666667 | 0.050000000 | 0.050000000 | 0.050000000 | 0.050000000 | 0.050000000 | 0.050000000 |
| Redemption | 0.000000000 | (0.011666667) | (0.050000000) | (0.050000000) | (0.050000000) | (0.050000000) | (0.050000000) | (0.050000000) |
| Principal | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | (1.000000000) |
| Ending Balance | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 | $0.000000000 |
| | | | | | | | | |
| Principal | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | ($1.000000000) |
| Redemption | (0.000000000) | (0.011666667) | (0.050000000) | (0.050000000) | (0.050000000) | (0.050000000) | (0.050000000) | (0.050000000) |
| Debt Service | ($0.000000000) | ($0.011666667) | ($0.050000000) | ($0.050000000) | ($0.050000000) | ($0.050000000) | ($0.050000000) | ($1.050000000) |
| | | | | | | | | |
| Accreted Value (Prior to Redemption) | $1.000000000 | $1.011666667 | $1.050000000 | $1.050000000 | $1.050000000 | $1.050000000 | $1.050000000 | $1.050000000 |
| Accreted Value Available for Redemption | 0.000000000 | 0.011666667 | 0.050000000 | 0.050000000 | 1.000000000 | 1.000000000 | 0.050000000 | 1.050000000 |

(2) 1 = "Redemption"; 2 = "At Redemption Value"

322

USB_9019MOTION_0000322

PREPA | 2016 A&B Bond Purchases
Redemption Tables (Table 2)
Amounts shown per $1.00 Original Principal Amount

Interest Rate                    _____%

| | 5/18/2016 | 7/1/2015 | 1/1/2017 | 7/1/2017 | 1/1/2018 | 7/1/2018 | 1/1/2019 | 7/1/2019 |
|---|---|---|---|---|---|---|---|---|
| Days | | 42 | 180 | 180 | 184 | 180 | 180 | 181 |
| Redemption Payment Made? | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 |
| | | | | | | | | |
| Beginning Balance | $0.000000000 | $1.000000000 | $1.011866667 | $1.062250000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 |
| Interest | 1.000000000 | 0.000000000 | 0.050383333 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Beginning Interest | 0.000000000 | 0.011866667 | | | | | | |
| Redemption | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Principal | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Ending Balance | $1.000000000 | $1.011866667 | $1.062250000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 |
| | | | | | | | | |
| Principal | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $1.000000000 |
| Redemption | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Debt Service | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $1.000000000 |
| | | | | | | | | |
| Accreted Value (Prior to Redemption) | $1.000000000 | $1.011866667 | $1.062250000 | $1.115362500 | $1.000000000 | $1.000000000 | $1.000000000 | $1.000000000 |
| Accreted Value (Balance for Redemption) | 0.000000000 | 0.011866667 | 0.062250000 | 0.115362500 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |

(1, 0 = Redemption; 0 = Pre-Redemption)

322-A

USB_9019MOTION_0000323

PREPA | 2016 A&B Bond Purchases
Accretion Tables (Table 3)
Numbers shown per $1.00 Original Principal Amount

Interest Rate                    10.00%

| | 5/19/2016 | 7/1/2016 | 1/1/2017 | 7/1/2017 | 1/1/2018 | 7/1/2018 | 1/1/2018 | 7/1/2019 |
|---|---|---|---|---|---|---|---|---|
| Class | | 12 | 120 | 140 | 160 | 160 | 160 | 160 |
| Redemption Payment Made?[1] | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 |
| | | | | | | | | |
| Beginning Balance | $0.000000000 | $1.000000000 | $1.011666667 | $1.062250000 | $1.115562500 | $1.000000000 | $1.050000000 | $1.102500000 |
| Issuance | 1.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Compound Interest | 0.000000000 | 0.011666667 | 0.050583333 | 0.053112500 | 0.055781625 | 0.050000000 | 0.052500000 | 0.055125000 |
| Redemption | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | (1.171150625) | 0.000000000 | 0.000000000 | 0.000000000 |
| Principal | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | (1.157625000) |
| Ending Balance | $1.000000000 | $1.011666667 | $1.062250000 | $1.115562500 | $1.000000000 | $1.050000000 | $1.102500000 | $0.000000000 |
| | | | | | | | | |
| Principal | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | ($1.157625000) |
| Redemption | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | (1.171150625) | 0.000000000 | 0.000000000 | 0.000000000 |
| Debt Service | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | ($1.171150625) | $0.000000000 | $0.000000000 | ($1.157625000) |
| | | | | | | | | |
| Accreted Value (Prior to Redemption) | $1.000000000 | $1.011666667 | $1.062250000 | $1.115562500 | $1.171150625 | $1.050000000 | $1.102500000 | $1.157625000 |
| Accreted Value Available for Redemption | 0.000000000 | 0.011666667 | 0.062250000 | 0.115562500 | 0.171150625 | 0.050000000 | 0.102500000 | 0.157625000 |

[1] "1" for "Redemption"; "0" for "No Redemption"

3

322-B

USB_9019MOTION_0000324

PREPA | 2016 A&B Bond Purchases
Accretion Tables (Table 4)
(numbers shown per $1.00 Original Principal Amount)

Interest Rate          +0.00%

| | 1/1/2016 | 7/1/2016 | 1/1/2017 | 7/1/2017 | 1/1/2018 | 7/1/2018 | 1/1/2019 | 7/1/2019 |
|---|---|---|---|---|---|---|---|---|
| Days | | 12 | 96 | 189 | 182 | 182 | 182 | 182 |
| Redemption Payment Made? [1] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | |
| Beginning Balance | $0.000000000 | $1.000000000 | $1.011566667 | $1.022690000 | $1.115392000 | $1.171190625 | $1.000000000 | $1.000000000 |
| Issuance | 1.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Compound Interest | 0.000000000 | 0.011566667 | 0.000962135 | 0.002172000 | 0.055798125 | 0.056690531 | 0.000000000 | 0.000000000 |
| Redemption | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.027687156 | 0.000000000 | 0.000000000 |
| Principal | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 1.021450000 |
| Ending Balance | $1.000000000 | $1.011566667 | $1.022690000 | $1.115392000 | $1.171190625 | $1.000000000 | $1.000000000 | $0.000000000 |
| | | | | | | | | |
| Principal | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $1.021450000 |
| Redemption | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.027687156 | 0.000000000 | 0.000000000 |
| Debt Service | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.027687156 | $0.000000000 | $1.021450000 |
| | | | | | | | | |
| Accreted Value (Prior to Redemption) | $1.000000000 | $1.011566667 | $1.022690000 | $1.115392000 | $1.171190625 | $1.027687156 | $1.000000000 | $1.021450000 |
| Accreted Value Available for Redemption | 0.000000000 | 0.011566667 | 0.022690000 | 0.115392000 | 0.171190625 | 0.027687156 | 0.000000000 | 0.000000000 |

[1] " Redemption" if "" No Redemption

322-C

USB_9019MOTION_0000325

PREPA | 2016 A&B Bond Purchases
Amortization Tables (Table 9)
Numbers shown per $1.00 Original Principal Amount

Interest Rate                    10.00%

| | 5/14/2016 | 7/1/2016 | 1/1/2017 | 7/1/2017 | 1/1/2018 | 7/1/2018 | 1/1/2019 | 7/1/2019 |
|---|---|---|---|---|---|---|---|---|
| Days | | 48 | 180 | 180 | 180 | 180 | 180 | 180 |
| Redemption Payment Made? | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | |
| Beginning Balance | $1.000000000 | $1.000000000 | $1.011668867 | $1.062258000 | $1.115382500 | $1.171130825 | $1.229687156 | $1.291171514 |
| Issuance | 1.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Compound Interest | 0.000000000 | 0.011668867 | 0.050583333 | 0.053112500 | 0.055691125 | 0.058556631 | 0.061484358 | 0.064558576 |
| Redemption | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Principal | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 1.355730090 |
| Ending Balance | $1.000000000 | $1.011668867 | $1.062258000 | $1.115382500 | $1.171130825 | $1.229687156 | $1.291171514 | $0.000000000 |
| | | | | | | | | |
| Principal | $1.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $1.355730090 |
| Redemption | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 | 0.000000000 |
| Debt Service | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $0.000000000 | $1.355730090 |
| | | | | | | | | |
| Accreted Value (Prior to Redemption) | $1.000000000 | $1.011668867 | $1.062258000 | $1.115382500 | $1.171130825 | $1.229687156 | $1.291171514 | $1.355730090 |
| Accreted Value Available for Redemption | 0.000000000 | 0.011668867 | 0.062258000 | 0.115382500 | 0.171130825 | 0.229687156 | 0.291171514 | 0.355730090 |

[1] 1 = "Redemption" 0 = "No Redemption"

322-D

## NINETEENTH SUPPLEMENTAL AGREEMENT

THIS NINETEENTH SUPPLEMENTAL AGREEMENT, dated for convenience of reference as of the 1st day of April, 2017, by and between

### PUERTO RICO ELECTRIC POWER AUTHORITY,

a government instrumentality of the Commonwealth of Puerto Rico (formerly Puerto Rico Water Resources Authority), and

### U.S. BANK NATIONAL ASSOCIATION,

a national banking association existing under the laws of the United States of America and having an office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, successor Trustee under the Agreement hereinafter referred to (hereinafter sometimes called the "Trustee"),

## W I T N E S S E T H:

WHEREAS, Puerto Rico Electric Power Authority (hereinafter sometimes called the "Authority") and the Trustee have heretofore caused to be executed and delivered a Trust Agreement, dated as of January 1, 1974 (as amended from time to time, the "Agreement"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become owners thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Section 1102 of the Agreement provides that the Authority and the Trustee may, from time to time, enter into such agreements supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms and conditions contained in the Agreement or in any supplemental agreement, with certain exceptions not here applicable, upon receipt of the written consent of the holders of not less than sixty percent (60%) in aggregate principal amount of the bonds then outstanding; and

WHEREAS, the Authority has determined that it is desirable to supplement the Agreement so as to make provision for certain actions to be undertaken consistent with the Restructuring Support Agreement, and all annexes, schedules and exhibits thereto, dated as of March 14, 2016 (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "RSA"), by and among the Authority and the Supporting Creditors defined therein; and

WHEREAS, the Trustee has received an opinion of counsel that (a) the Authority has the right, power and authority to enter into this Nineteenth Supplemental Agreement, (b) this Nineteenth Supplemental Agreement is duly authorized, executed and delivered by the Authority, and is enforceable against the Authority in accordance with its terms, (c) this

28213326.8

USB_9019MOTION_0000327

Nineteenth Supplemental Agreement complies with the provisions of the Agreement, and it is proper for the Trustee to join in the execution hereof under the provisions of Article XI of the Agreement with the written consent of the holders of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds, and (d) all of the conditions precedent to the execution and delivery by the Trustee of this Nineteenth Supplemental Agreement, including such consents, have been satisfied; and

WHEREAS, the execution and delivery of this Nineteenth Supplemental Agreement have been duly authorized by the resolution of the Governing Board of the Authority, and the Authority has requested the Trustee to join with it in the execution of this Nineteenth Supplemental Agreement; and

WHEREAS, the notice and publication requirements of Section 1102 of the Agreement for this Nineteenth Supplemental Agreement have been satisfied; and

WHEREAS, the Authority has delivered to the Trustee written evidence of the consent of the holders or (without duplication) insurers of at least sixty percent (60%) in aggregate principal amount of the outstanding bonds in a form acceptable to the Trustee under Section 1001 of the Agreement; and

WHEREAS, all other acts, conditions and things required by the Puerto Rican Federal Relations Act, the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), and the Constitution and laws of the Commonwealth of Puerto Rico and by the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Nineteenth Supplemental Agreement have happened, exist and have been performed as required, and the Authority has delivered to the Trustee a certificate dated the date of this Nineteenth Supplemental Agreement, representing the same; and

WHEREAS, the Trustee in reliance on the foregoing has accepted the trusts created by this Nineteenth Supplemental Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS NINETEENTH SUPPLEMENTAL AGREEMENT WITNESSETH, that in consideration of the premises and of the existing rights and duties of the parties under the Agreement, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1. The Agreement is hereby amended and supplemented in the following respects:

A. Section 101 is hereby amended or modified for purposes of implementing this Nineteenth Supplemental Agreement by the addition of and changes to the following definitions in appropriate alphabetical order in said Section (and all capitalized terms that are used but not defined herein shall have the same meanings as given in the Agreement):

The term "Amendment Effective Date" shall mean April 28, 2017, being the effective date of the Nineteenth Amendment.



USB_9019MOTION_0000328

The term "Amendment Period" shall mean the period from the Amendment Effective Date until the Amendment Termination Date.

The term "Amendment Termination Date" shall mean the earliest of (a) June 30, 2017, (b) the date on which (i) the "Support Period" (as defined in the RSA) has expired or terminated in accordance with the terms of the RSA (including, without limitation, expiration or termination as a result of withdrawal by the relevant Supporting Creditors from the RSA) as to any Supporting Creditor Class or as to any Insurer (as defined in the RSA), and whether such termination or expiration occurred on, before or after the date of the Nineteenth Amendment, and (ii) the Trustee has received written notice from the Authority or any Supporting Creditor (as defined in the RSA) or former Supporting Creditor confirming the same and (c) the filing of a proceeding by or on behalf of the Authority pursuant to title 11 of the U.S. Code, or any other any bankruptcy or insolvency law, or the commencement of any other action or proceeding that seeks to adjust, extend or challenge the claims of creditors pursuant to any federal, state or Puerto Rico statute, now in effect or hereinafter enacted, including a Title III proceeding under PROMESA; provided, however, that the commencement of a process or proceeding under Title VI of PROMESA shall not cause the termination of this Amendment, and shall not trigger an Amendment Termination Date. Upon the occurrence of the date described in clause (i) of this definition, the Authority shall promptly, and in any event within 2 business days thereof, provide written notice to the Trustee confirming such occurrence. For purposes of this Agreement, the Trustee shall be entitled to rely on a certification of any person or entity that it is a Supporting Creditor or former Supporting Creditor, as applicable.

The term "BPA" shall mean the Bond Purchase Agreement, and all annexes, schedules and exhibits thereto, dated as of January 27, 2016, and the Bond Purchase Agreement, and all annexes, schedules and exhibits thereto, dated as of June 29, 2016, each by and among the Authority and the Purchasers defined therein, as the same may be amended, supplemented or otherwise modified from time to time in accordance with its terms).

The term "Nineteenth Amendment" shall refer to the Nineteenth Supplemental Agreement, dated as of April 1, 2017, by and between the Authority and the Trustee.

The term "RSA" shall have the meaning set forth in the third recital of the Nineteenth Amendment.

The term "Series 2016 Bonds" shall mean collectively the Authority's Power Revenue Bonds, Series 2016A, Power Revenue Bonds, Series 2016B, Power Revenue Bonds, Series 2016C, Power Revenue Bonds, Series 2016D, and Power Revenue Bonds, Series 2016E, issued pursuant to Resolution 4338, adopted by the Authority on March 15, 2016, as amended, and Resolution 4391, adopted by the Authority on June 28, 2016, and sold pursuant to the BPA.

The term "Supporting Creditor Class" refers to (i) GDB, (ii) the Holders, (iii) the Insurers, (iv) the Solus Lenders or (v) Scotiabank and the Scotiabank Lenders, each as defined in the RSA.

B.     Section 302 is hereby amended by adding the following language at the end of the first sentence of said Section: "; provided, however, that the requirement for notice



USB_9019MOTION_0000329

set forth in this Section 302 shall not apply to any redemption of the Series 2016 Bonds or any portions thereof."

C.      Section 502 is hereby amended by the addition of the following language in the fourth paragraph immediately before the period:

"; provided, however, that during the Amendment Period, the Trustee may institute and prosecute such suit, action or proceeding only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

D.      Section 506 is hereby amended by deleting the first word of the second sentence of said Section and replacing it with "Other than during the Amendment Period, after".

E.      Section 802(h) is hereby amended by the addition of the following language immediately prior to the semi-colon:

"; provided, however, that during the Amendment Period, the Trustee may give such notice only upon the written request of the holders of a majority in the aggregate principal amount of the bonds then outstanding"

F.      Section 803 is hereby amended by adding the words "(such percentage to be increased during the Amendment Period to a majority in aggregate principal amount of the bonds then outstanding)" immediately after the words "not less than twenty per centum (20%) in aggregate principal amount of the bonds then outstanding" and the words "(such percentage to be increased during the Amendment Period to a majority in aggregate principal amount of the bonds not then due and payable by their terms and then outstanding)" immediately after the words "not less than twenty per centum (20%) in aggregate principal amount of the bonds not then due and payable by their terms and then outstanding".

G.      The first paragraph of Section 804 is hereby amended by the addition of the following language in the last sentence immediately before the period:

"; and provided, further, however, that during the Amendment Period, the Trustee may proceed to take action pursuant to this paragraph only upon the written request of the holders of not less than a majority in the aggregate principal amount of bonds then outstanding"

H.      Section 808 is hereby amended by adding the words "(such percentage to be increased during the Amendment Period to a majority in aggregate principal amount of the bonds then outstanding)" immediately after the words "not less than ten per centum (10%) in aggregate principal amount of the bonds outstanding" and immediately after the words "not less than twenty per centum (20%) in aggregate principal amount of the bonds outstanding".

2.      The modifications to the Agreement contained in this Nineteenth Supplemental Agreement shall remain in effect only during the Amendment Period and shall terminate automatically on the Amendment Termination Date, except Section 1.B and any related definitions, which will continue in effect until the termination of the Agreement. The Authority shall, and the Trustee shall be authorized to, notify all holders of bonds of the Amendment Termination Date and the basis therefor.



USB_9019MOTION 0000330

3.      The Authority hereby agrees to provide the Trustee with a copy of any amendments, supplements or waivers to the RSA or the BPA (each herein a "Modification"), promptly after the effectiveness of any such Modification, and the Trustee (i) shall not be deemed to have knowledge of any Modification (or the terms and provisions thereof) prior to the Trustee's actual receipt of the same and (ii) may provide a copy thereof to any holder of bonds. It is understood by the Trustee that the Authority may redact information regarding individual holders (such as their identities, dollar amounts of holdings of bonds and purchase commitments) from any such Modification.

4.      The recitals, statements and representations contained herein shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

5.      The Authority hereby acknowledges and agrees that (i) the Trustee is not a party to the RSA and the BPA, and (ii) this Nineteenth Supplemental Agreement shall not be understood to incorporate the RSA or the BPA into the Agreement, and no Modification shall be deemed to be an amendment of the Agreement or this Nineteenth Supplemental Agreement for purposes of Article XI of the Agreement.

6.      This Nineteenth Supplemental Agreement may be amended and supplemented in accordance with the provisions of Article XI of the Agreement.

7.      Except to the extent expressly modified herein, all terms and provisions of the Agreement shall remain in full force and effect.

8.      This Nineteenth Supplemental Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument.   Delivery of any executed signature page of this Nineteenth Supplemental Agreement by facsimile or email transmission shall be effective as delivery of a manually executed counterpart hereof.

[Signature page follows.]


USB_9019MOTION_0000331

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Nineteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Nineteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

(SEAL)

PUERTO RICO ELECTRIC POWER AUTHORITY

By: _____
Executive Director

Attest:

Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By: _____
Vice President

Attest:

_____
Trust Officer

328

USB_9019MOTION_0000332

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this Nineteenth Supplemental Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary, and U.S. Bank National Association, has caused this Nineteenth Supplemental Agreement to be executed in its behalf by one of its Assistant Vice Presidents and its corporate seal to be impressed hereon and attested by one of its Trust Officers, all as of the day and year first above written.

PUERTO RICO ELECTRIC POWER AUTHORITY

(SEAL)

By:_____
Executive Director

Attest:

_____
Secretary

U.S. BANK NATIONAL ASSOCIATION,
as successor Trustee

By:_____
Vice-President

Attest:

_____
Trust Officer
Vice-President

28213326.7

6

USB_9019MOTION_0000333

STATE OF NEW YORK )
                                    )        ss.:
COUNTY OF NEW YORK)

On the 28th day of April, in the year 2017, before me personally came Ricardo Ramos, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____San Juan_____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

                                    _____
                                    NOTARY PUBLIC

My commission expires:

(SEAL)

                    MARTIN E. ROSENFELD
                    Notary Public, State of New York
                    No. 31-4956238
                    Qualified in New York County
                    Commission Expires Sept. 18, 2017

STATE OF _____ )
                                    )  ss.:
COUNTY OF _____ )

On the _____ day of _____, in the year 2017, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that she/he resides at _____; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

                                    _____
                                    NOTARY PUBLIC

My commission expires:(SEAL)

COMMONWEALTH OF PUERTO RICO    )
                               )    ss.:
MUNICIPALITY OF SAN JUAN       )

        On the _____ day of _____, in the year 2017, before me personally came _____, to me known, who, being by me duly sworn, did depose and say that he resides in the Municipality of _____, Puerto Rico; that he is the Executive Director of Puerto Rico Electric Power Authority, the body corporate described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of Puerto Rico Electric Power Authority; that it was so affixed by order of the Governing Board of Puerto Rico Electric Power Authority; and that he signed his name thereto by like order.

Affidavit #_____                    _____

                                     NOTARY PUBLIC
My commission expires:

  (SEAL)

STATE OF Minnesota   )
                     )   ss.:
COUNTY OF Ramsey     )

        On the 28th day of April, in the year 2017, before me personally came Julie J. Becker, to me known, who, being by me duly sworn, did depose and say that she/he resides at Apple Valley, Minnesota; that she/he is a Vice President of U.S. Bank National Association, the banking association described in and which executed the above instrument; that she/he knows the seal of said association; that the seal affixed to said instrument (if required by the association's organizational documents) is the corporate seal of said association and was so affixed by authority of Board of Directors of said association; and that she/he signed her/his name thereto by like authority.

                                     _____
                                     NOTARY PUBLIC

My commission expires: 1/31/2020

  (SEAL)

MARILYN J. KRAMAR
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2020

28213326.7                          7

USB_9019MOTION_0000335