# Exhibit 17

**PREPA Resolutions 3907 and 4063**

CN 078-04495
REV. 06/10

GOVERNMENT OF PUERTO RICO
PUERTO RICO ELECTRIC POWER AUTHORITY
GOVERNING BOARD
SAN JUAN, PUERTO RICO



www.prepa.com

GPO BOX 364267
SAN JUAN, PR  00936-4267

## RESOLUTION NO. 3907

**RESOLUTION AUTHORIZING THE ISSUANCE OF $630,110,000 PUERTO RICO ELECTRIC POWER AUTHORITY POWER REVENUE BONDS, SERIES 2012A (THE "SERIES A BONDS"), AUTHORIZING THE ISSUANCE OF $19,890,000 PUERTO RICO ELECTRIC POWER AUTHORITY POWER REVENUE REFUNDING BONDS, SERIES 2012B (THE "SERIES B BONDS"), DESCRIBING THE BONDS TO BE REFUNDED BY SAID SERIES B BONDS, SPECIFYING THE MATURITY DATES, THE INTEREST RATES AND OTHER DETAILS OF EACH SERIES OF BONDS, FIXING THE REDEMPTION TIMES AND PRICES AND THE AMORTIZATION REQUIREMENTS FOR EACH SERIES OF BONDS, AWARDING SAID BONDS, AUTHORIZING THE EXECUTION AND DIRECTING THE AUTHENTICATION AND DELIVERY OF SAID BONDS, DIRECTING THE APPLICATION OF THE PROCEEDS OF EACH SERIES OF BONDS, APPROVING THE FORM AND RATIFYING THE DISTRIBUTION AND USE OF THE PRELIMINARY OFFICIAL STATEMENT AND APPROVING THE FORM OF THE OFFICIAL STATEMENT RELATING TO THE BONDS, AUTHORIZING THE EXECUTION AND DELIVERY OF THE OFFICIAL STATEMENT FOR THE BONDS, AUTHORIZING A PURCHASE CONTRACT RELATING TO THE BONDS, AUTHORIZING AN ESCROW DEPOSIT AGREEMENT, PROVIDING A CONTINUING DISCLOSURE UNDERTAKING, MAKING A TAX COVENANT, PERMITTING THE INCLUSION OF THE LEGAL OPINION ON SAID BONDS AND PROVIDING FOR INCIDENTAL ACTIONS.**

**BE IT RESOLVED** by Puerto Rico Electric Power Authority (the "Authority"):

SECTION 1.  For the purpose of (i) financing a portion of the cost of various projects under its capital improvement program, (ii) repaying certain advances made to the Authority by Government Development Bank for Puerto Rico (the "Government Development Bank") under a line of credit facility to (a) pay a portion of the interest due on January 1, 2012 and July 1, 2012 on the Authority's outstanding Power Revenue Bonds and (b) pay a portion of the principal due on July 1, 2012 on the Authority's outstanding Power Revenue Bonds, (iii) paying capitalized interest on the Series A Bonds through January 1, 2015, (iv) funding a deposit to the Reserve

"We are an equal opportunity employer and do not discriminate on the basis of race, color, gender, age, national or social origin, social status, political ideas or affiliation, religion; for being or perceived to be a victim of domestic violence, sexual aggression or harassment; for physical or mental disability, for veteran status or genetic information."

Account in the Puerto Rico Electric Power Authority Revenue Bonds Interest and Sinking Fund and (v) paying the costs of issuance of the Series A Bonds, the Authority hereby authorizes the issuance of revenue bonds in an aggregate principal amount of Six Hundred Thirty Million One Hundred Ten Thousand Dollars ($630,110,000) under and pursuant to the provisions of Section 208 and Section 209 of the Trust Agreement, dated as of January 1, 1974, as amended (the "Trust Agreement"), by and between the Authority and U.S. Bank National Association, successor trustee (the "Trustee"). Said bonds shall be designated "Puerto Rico Electric Power Authority Power Revenue Bonds, Series 2012A" (the "Series A Bonds"), shall be issuable as fully registered bonds without coupons in denominations of $5,000 and any multiples thereof and numbered from RA-1 upwards.

An aggregate principal amount of $114,510,000 of the Series A Bonds are serial bonds and shall be stated to mature on July 1, in the years and amounts and bearing interest at the rates, payable semi-annually on January 1 and July 1 of each year, commencing on July 1, 2012, as follows:

| Year of Maturity | Principal Amount | Interest Rate |
|---|---|---|
| 2029 | $34,510,000 | 4.80% |
| 2042 | 80,000,000 | 5.05 |

An aggregate principal amount of $515,600,000 of the Series A Bonds are term bonds stated to mature on July 1, 2029 and July 1, 2042 (the "Term Bonds"). Interest on the Term Bonds shall be payable semi-annually on January 1 and July 1 of each year, commencing on July 1, 2012.

SECTION 2. For the purpose of (i) providing funds, together with any other available funds, to redeem prior to maturity certain outstanding Puerto Rico Electric Power Authority Power Revenue Bonds, as set forth in Schedule 1 hereto (the "Refunded Bonds"), and (ii) paying the costs of issuance of the Series B Bonds, the Authority hereby authorizes the issuance of revenue refunding bonds of the Authority in an aggregate principal amount of Nineteen Million Eight Hundred Ninety Thousand Dollars ($19,890,000) under and pursuant to the provisions of Section 210 of the Trust Agreement. Said bonds shall be designated "Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series 2012B" (the "Series B Bonds" and together with the Series A Bonds, the "Bonds"), shall be issuable as fully registered bonds without coupons in denominations of $5,000 and any multiples thereof and numbered from RB-1 upwards.

The Series B Bonds are serial bonds and shall be stated to mature on July 1, 2016 in the amounts and bearing interest at the rates, payable semi-annually on January 1 and July 1 of each year, commencing on July 1, 2012, as follows:

- 2 -

USB_9019MOTION_0008011

| Year of Maturity | Principal Amount | Interest Rate |
|---|---|---|
| 2016 | $ 3,345,000 | 2.50% |
| 2016 | 16,545,000 | 5.00 |

SECTION 3.   (a) The Series A Bonds that mature after July 1, 2029, may be redeemed at the option of the Authority prior to maturity, from any available moneys (except moneys deposited in the Sinking Fund (hereinafter defined) in respect of an Amortization Requirement (as defined in the Trust Agreement)), upon not less than 30 days' prior notice by mail, either in whole or in part, in such order of maturity as directed by the Authority, on any date not earlier than July 1, 2022, at a redemption price equal to the principal amount of the Series A Bonds to be redeemed plus accrued interest to the redemption date, without premium.

(b)   The Series B Bonds shall not be subject to redemption prior to maturity.

SECTION 4.   The Term Bonds maturing on July 1, 2029 will be redeemed in part on July 1, 2028, and on each July 1 thereafter for which there is an Amortization Requirement in respect of such Series A Bonds, in amounts equal to the Amortization Requirements for such Series A Bonds (less the principal amount of any Series A Bonds retired by purchase and otherwise subject to adjustment as provided in the Trust Agreement), from moneys in the Sinking Fund, at a redemption price equal to the principal amount of the Series A Bonds to be redeemed plus accrued interest to the redemption date, without premium, in the years and amounts set forth below:

| Year (July 1) | Amount |
|---|---|
| 2028 | $ 12,400,000 |
| 2029* | 145,060,000 |

*Final Maturity.

The Term Bonds maturing on July 1, 2042 will be redeemed in part on July 1, 2041, and on each July 1 thereafter for which there is an Amortization Requirement in respect of such Series A Bonds, in amounts equal to the Amortization Requirements for such Series A Bonds (less the principal amount of any Series A Bonds retired by purchase and otherwise subject to adjustment as provided in the Trust Agreement), from moneys in the Sinking Fund, at a redemption price equal to the principal amount of the Series A Bonds to be redeemed plus accrued interest to the redemption date, without premium, in the years and amounts set forth below:

| Year (July 1) | Amount |
|---|---|
| 2041 | $213,725,000 |
| 2042* | 144,415,000 |

- 3 -

USB_9019MOTION_0008012

\*Final Maturity.

SECTION 5.  The Bonds shall be executed in the manner provided in the Trust Agreement.

(i)    The Series A Bonds and the certificate of authentication by the Trustee shall be, respectively, in the following forms:

USB_9019MOTION_0008013

[Form of Series A Bonds]

No. RA-__                                                                                              $

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY
POWER REVENUE BOND, SERIES 2012A

<u>Interest Rate</u>                     <u>Maturity Date</u>                          <u>CUSIP No.</u>

Registered Owner:

Principal Amount:        DOLLARS

Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount set forth above in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Trust Agreement hereinafter mentioned) is registered at the close of business on the June 15 or December 15 next preceding an interest payment date, by check mailed to the Registered Owner at his address as it appears on the bond registration books of the Authority, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year, commencing July 1, 2012, in like coin or currency, at the Interest Rate shown above, until payment of said Principal Amount.

This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions are liable for the payment of this bond or the interest hereon, but this bond shall be payable as to both principal and interest solely from the special fund provided therefor as hereinafter set forth.

This bond is one of a duly authorized series of revenue bonds known as "Puerto Rico Electric Power Authority Power Revenue Bonds, Series 2012A", dated the date hereof, consisting of bonds maturing in annual installments on the 1st day of July in the years 2029 (bearing an interest rate of 4.80%) and 2042 (bearing an interest rate of 5.05%), (herein collectively called the "serial bonds"), and bonds maturing on the 1st day of July in 2029

- 5 -

(bearing an interest rate of 5.00%) and 2042 (bearing an interest rate of 5.00%) (herein collectively called the "term bonds"), and issued for the purpose of providing funds, together with any other available funds, for the purpose of (i) financing a portion of the cost of various projects under its capital improvement program, (ii) repaying certain advances made to the Authority by the Government Development Bank for Puerto Rico under a line of credit facility to (a) paying a portion of the interest due on January 1, 2012 and July 1, 2012 on the Authority's outstanding Power Revenue Bonds and (b) pay a portion of the principal due on July 1, 2012 on the Authority's outstanding Power Revenue Bonds, (iii) paying capitalized interest on the Series A Bonds through January 1, 2015, (iv) funding a deposit to the Reserve Account in the Puerto Rico Electric Power Authority Revenue Bonds Interest and Sinking Fund and (v) paying the costs of issuance of the Series A Bonds.

All of the bonds are issued under and pursuant to a trust agreement, as amended (said agreement, together with all agreements supplemental thereto as therein permitted, being herein called the "Trust Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and U.S. Bank National Association, as successor trustee, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Trust Agreement being herein called the "Trustee"), an executed counterpart of which Trust Agreement is on file at the corporate trust office of the Trustee.  Reference is hereby made to the Trust Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Trust Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Trust Agreement.

The Trust Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the bonds of the series of which this is one being herein collectively called the "bonds").

This bond is issued and the Trust Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to a resolution duly adopted by the Authority on April 12, 2012 (the "Resolution").

The Trust Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the conservation, repair, maintenance and operation of the System and for the payment of the principal of and the interest on the bonds as the same become due and payable, including reserves for such purposes.  The Trust Agreement provides for the creation of a special fund designated "Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit to the credit of the Sinking Fund of

USB_9019MOTION_0008015

a sufficient amount of the revenues of the System over and above such expenses of repair, maintenance and operation, to pay the principal of and the interest on all bonds issued under the Trust Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds.

The bonds of this series are issuable as registered bonds without coupons in denominations of $5,000 or any multiple thereof. At the corporate trust office of the Trustee, in the manner and subject to the limitations and conditions provided in the Trust Agreement and without cost except for any tax or other governmental charge, definitive bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The bonds of this series that mature on or after July 1, 2029, may be redeemed at the option of the Authority prior to maturity, from any available moneys (except moneys deposited in the Sinking Fund in respect of an Amortization Requirement (as defined in the Trust Agreement)), upon not less than 30 days' prior notice by mail, either in whole or in part, in such order of maturity as directed by the Authority, on any date not earlier than July 1, 2022, at a redemption price equal to the principal amount of the Bonds to be redeemed plus accrued interest to the redemption date, without premium.

The term bonds of this series will be redeemed as specified in the Resolution.

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Trust Agreement in the manner provided in the Trust Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Trust Agreement.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by mail or shall be made in the manner and under the terms and conditions provided in the Trust Agreement. On the date designated for redemption, notice having been given as provided in the Trust Agreement, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee, as provided in the Trust Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Trust Agreement, and the registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee. If a portion of this bond shall be called for redemption, a new bond or bonds of the same series and maturity in principal amount equal to the unredeemed portion of this bond will be issued to the registered owner upon the surrender thereof.

- 7 -

USB_9019MOTION_0008016

The Depository Trust Company ("DTC") is hereby appointed as the initial securities depository (the "Securities Depository") for the Series A Bonds, with Cede & Co., a nominee thereof, being the initial securities depository nominee (the "Securities Deposit Nominee") and initial registered owner of the Series A Bonds. The Authority and the Trustee, and any agent of the Authority or any Trustee may treat any Securities Depository Nominee in whose name any Bond is registered as the owner of such Bond for all purposes under the Trust Agreement. For so long as the Securities Depository Nominee is the registered owner of the Series A Bonds, procedures with respect to the transfer of ownership of, redemption of and payment of principal of, redemption premium, if any, and interest on such Bonds, and consent or voting rights so held shall be in accordance with arrangements among the Trustee, the Authority and the Securities Depository.

The owner of this bond shall have no right to enforce the provisions of the Trust Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Trust Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Trust Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Trust Agreement, the principal of all the bonds then outstanding under the Trust Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Trust Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Trust Agreement.

The transfer of this bond is registrable by the registered owner thereof in person or by his attorney or legal representative at the corporate trust office of the Trustee but only in the manner and subject to the limitations and conditions provided in the Trust Agreement and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for this bond a new definitive bond or bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Trust Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution of the Trust Agreement have happened, exist and have been performed as so required.

USB_9019MOTION_0008017

This bond is issued pursuant to Sections 191-217 of the Authority Act and is conclusively deemed to be valid and to have been issued in conformity with the provisions of Sections 191-217 of the Authority Act.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Trust Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this bond to bear the facsimile signatures of the Executive Director and the Secretary of the Authority and a facsimile of its corporate seal to be imprinted hereon, all as of the 1st day of May, 2012.

**PUERTO RICO ELECTRIC POWER AUTHORITY**

By: _____
                        Executive Director


_____
                        Secretary

[Corporate Seal]

- 9 -

[To be endorsed on all bonds]

## CERTIFICATE OF AUTHENTICATION

This is one of the bonds of the series designated therein and referred to under the provisions of the within mentioned Trust Agreement.

**U.S.  BANK  NATIONAL  ASSOCIATION,**
as Trustee


By: _____
                        Authorized Signatory


Date of Authentication: _____

- 10 -

USB_9019MOTION_0008019

[Form of Assignments]

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

_____

[Please Print or Typewrite Name and Address of Transferee]

the within bond, and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to register the transfer of the within bond on the books
kept for registration thereof, with full power of substitution in the premises.

Dated: _____     Signature: _____

NOTICE: The signature to this assignment must correspond with the name as it appears
upon the face of the within bond in every particular, without alteration or enlargement or any
change whatever.

Signature Guaranteed by*: _____, New York, New York

*Such signature must be guaranteed by an "eligible guarantor institution" meeting the
requirements of the Trustee, which requirements include membership or participation in STAMP
or such other "signature guarantee program" as may be determined by the Trustee in addition to,
or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as
amended.

[End of Form of Series A Bond]

USB_9019MOTION_0008020

[Form of Series B Bonds]

No. RB-__                                                                                                           $

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY
POWER REVENUE REFUNDING BOND, SERIES 2012B

<u>Interest Rate</u>                          <u>Maturity Date</u>                          <u>CUSIP No.</u>

Registered Owner:

Principal Amount:     DOLLARS

      Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount set forth above in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Trust Agreement hereinafter mentioned) is registered at the close of business on the June 15 or December 15 next preceding an interest payment date, by check mailed to the Registered Owner at his address as it appears on the bond registration books of the Authority, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year, commencing July 1, 2012, in like coin or currency, at the Interest Rate shown above, until payment of said Principal Amount.

      This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions are liable for the payment of this bond or the interest hereon, but this bond shall be payable as to both principal and interest solely from the special fund provided therefor as hereinafter set forth.

      This bond is one of a duly authorized series of revenue refunding bonds known as "Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series 2012B", dated the date hereof, consisting of bonds maturing in annual installments on the 1st day of July 2016, and issued for the purpose of providing funds, together with any other available funds, for the purpose of (i) providing funds, together with other available moneys, to redeem the Refunded

- 12 -

Bonds (as defined in the Resolution) on the redemption dates and at the redemption prices set forth in the Resolution plus accrued interest to the redemption dates, and (ii) pay the costs of issuance of the Series B Bonds.

All of the bonds are issued under and pursuant to a trust agreement, as amended (said agreement, together with all agreements supplemental thereto as therein permitted, being herein called the "Trust Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and U.S. Bank National Association, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Trust Agreement being herein called the "Trustee"), an executed counterpart of which Trust Agreement is on file at the corporate trust office of the Trustee. Reference is hereby made to the Trust Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Trust Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Trust Agreement.

The Trust Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the bonds of the series of which this is one being herein collectively called the "bonds").

This bond is issued and the Trust Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to a resolution duly adopted by the Authority on April 12, 2012 (the "Resolution").

The Trust Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the conservation, repair, maintenance and operation of the System and for the payment of the principal of and the interest on the bonds as the same become due and payable, including reserves for such purposes. The Trust Agreement provides for the creation of a special fund designated "Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit to the credit of the Sinking Fund of a sufficient amount of the revenues of the System over and above such expenses of repair, maintenance and operation, to pay the principal of and the interest on all bonds issued under the Trust Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds.

The bonds of this series are issuable as registered bonds without coupons in denominations of $5,000 or any multiple thereof. At the corporate trust office of the Trustee, in the manner and subject to the limitations and conditions provided in the Trust Agreement and

- 13 -

USB_9019MOTION_0008022

without cost except for any tax or other governmental charge, definitive bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The bonds of this series shall not be subject to redemption prior to maturity.

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Trust Agreement in the manner provided in the Trust Agreement.

The Depository Trust Company ("DTC") is hereby appointed as the initial securities depository (the "Securities Depository") for the Series B Bonds, with Cede & Co., a nominee thereof, being the initial securities depository nominee (the "Securities Deposit Nominee") and initial registered owner of the Series B Bonds. The Authority and the Trustee, and any agent of the Authority or any Trustee may treat any Securities Depository Nominee in whose name any Bond is registered as the owner of such Bond for all purposes under the Trust Agreement. For so long as the Securities Depository Nominee is the registered owner of the Series B Bonds, procedures with respect to the transfer of ownership of, redemption of and payment of principal of, redemption premium, if any, and interest on such Bonds, and consent or voting rights so held shall be in accordance with arrangements among the Trustee, the Authority and the Securities Depository.

The owner of this bond shall have no right to enforce the provisions of the Trust Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Trust Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Trust Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Trust Agreement, the principal of all the bonds then outstanding under the Trust Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Trust Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Trust Agreement.

The transfer of this bond is registrable by the registered owner thereof in person or by his attorney or legal representative at the corporate trust office of the Trustee but only in the manner and subject to the limitations and conditions provided in the Trust Agreement and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for this bond a new definitive bond or bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Trust Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

- 14 -

USB_9019MOTION_0008023

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution of the Trust Agreement have happened, exist and have been performed as so required.

This bond is issued pursuant to Sections 191-217 of the Authority Act and is conclusively deemed to be valid and to have been issued in conformity with the provisions of Sections 191-217 of the Authority Act.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Trust Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

**IN WITNESS WHEREOF,** Puerto Rico Electric Power Authority has caused this bond to bear the facsimile signatures of the Executive Director and the Secretary of the Authority and a facsimile of its corporate seal to be imprinted hereon, all as of the 1st day of May, 2012.

**PUERTO   RICO   ELECTRIC   POWER AUTHORITY**

By: _____
          Executive Director

_____
          Secretary

[Corporate Seal]

- 15 -

[To be endorsed on all bonds]

## CERTIFICATE OF AUTHENTICATION

This is one of the bonds of the series designated therein and referred to under the provisions of the within mentioned Trust Agreement.

**U.S. BANK NATIONAL ASSOCIATION,**
as Trustee

By: _____

Authorized Signatory

Date of Authentication: _____

USB_9019MOTION_0008025

[Form of Assignments]

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

_____

[Please Print or Typewrite Name and Address of Transferee]

the within bond, and all rights thereunder, and hereby irrevocably constitutes and appoints _____ attorney to register the transfer of the within bond on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____          Signature: _____

NOTICE:  The signature to this assignment must correspond with the name as it appears upon the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Signature Guaranteed by*: _____, New York, New York

*Such signature must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in STAMP or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

[End of Form of Series B Bonds]

- 17 -

USB_9019MOTION_0008026

SECTION 6.   The Executive Director of the Authority is hereby authorized and directed to cause the Bonds to be signed with his manual or facsimile signature, and the Secretary is hereby authorized and directed to cause the Bonds to be signed with her manual or facsimile signature and is hereby directed and authorized to cause the seal of the Authority or a facsimile thereof to be imprinted on each of the Bonds, and the Bonds shall thereupon be delivered to the Trustee for authentication, and the Trustee is hereby authorized and directed to authenticate and deliver the Bonds at one time to or upon the order of the Series A Representative (defined herein) upon payment of the purchase price therefor in accordance with and subject to the provisions of Section 208, Section 209 and Section 210 of the Trust Agreement and Section 7 of this Resolution.

SECTION 7.   The offer to purchase the Bonds at the aggregate purchase price of $645,248,891.80, representing, as to each maturity, a purchase price equal to the public offering price set forth or derived from the information set forth on the inside cover of the Official Statement (hereinafter mentioned), less a net original issue discount of $597,329.70, less an underwriters' discount of $4,153,778.50, submitted by Morgan Stanley & Co. LLC, as representative (the "Representative") of the underwriters (collectively, the "Underwriters") mentioned in the Contract of Purchase (the "Purchase Contract"), by and between the Authority and the Representative, is hereby accepted, and the Bonds are hereby awarded to the Underwriters at said price upon the terms and conditions set forth in the Purchase Contract. The Executive Director, Director of Finance or Treasurer of the Authority or any Executive Vice President or Senior Vice President of Government Development Bank, statutory fiscal agent for the Authority, is hereby authorized and directed, in the name and on behalf of the Authority, to execute and deliver the Purchase Contract substantially in the form presented at this meeting and marked as Exhibit 2896 to this Resolution, with such changes, insertions and omissions as may be approved by such person executing the Purchase Contract, his execution of the Purchase Contract to be conclusive evidence of his approval of any such changes, insertions and omissions.

SECTION 8.   (a) The proceeds of the Series A Bonds shall be applied by the Trustee as follows:

(i)   such amount as shall be specified in a certificate of the Executive Director of the Authority delivered upon the issuance of the Series A Bonds, shall be deposited to the credit of the Construction Fund for the payment of Improvements (as defined in the Trust Agreement);

(ii)   such amount as may be requested by the Executive Director of the Authority delivered upon the issuance of the Series A Bonds, shall be applied for proper corporate purposes, including to refinance principal and interest due under certain lines of credit provided by the Government Development Bank;

(iii)   such amount as shall be specified in a certificate of the Executive Director of the Authority delivered upon the issuance of the Series A Bonds, shall be deposited to the credit of the Bond Service Account in the Sinking Fund for the payment of capitalized interest on the Series A Bonds through July 1, 2015;

- 18 -

(iv)     such amount as shall be specified in a certificate of the Executive Director of the Authority delivered upon the issuance of the Series A Bonds, shall be deposited to the credit of the Reserve Account in the Puerto Rico Electric Power Authority Revenue Bonds Interest and Sinking Fund; and

(v)   such amount as may be requested by the Executive Director of the Authority in a certificate filed with the Trustee for the payment of such expenses incident to the issuance of the Series A Bonds as shall be approved by the Executive Director of the Authority shall be paid by the Trustee to Government Development Bank.

(b)     The proceeds of the Series B Bonds shall be applied by the Trustee as follows:

(i)   such amount as shall be specified in a certificate of the Executive Director of the Authority delivered upon the issuance of the Series B Bonds, shall be deposited to the credit of the Escrow Deposit Trust Fund (the "Escrow Fund") established and as defined in the Escrow Deposit Agreement relating to the Series B Bonds, by and between the Authority and the Trustee, in its capacity as Escrow Agent (the "Escrow Agreement"); and

(ii)   such amount as may be requested by the Executive Director of the Authority in a certificate filed with the Trustee for the payment of such expenses incident to the issuance of the Series B Bonds, as shall be approved by the Executive Director of the Authority shall be paid by the Trustee to Government Development Bank.

Simultaneously with the delivery of the Series B Bonds, the Trustee shall withdraw from the Bond Service Account and the Redemption Account in the Sinking Fund an amount equal to the sum of the amounts deposited to the credit of such Accounts under the provisions of Section 507 of the Agreement on account of the interest which is payable on the Refunded Bonds on the next interest payment date of such Refunded Bonds and on account of the next maturing installment of principal or the current Amortization Requirements for such Refunded Bonds, if any, and shall deposit such amount to the credit of the Escrow Fund.

SECTION 9.  In the event the Bonds shall no longer be registered in the name of any securities depository or its nominee, there shall be printed on the reverse of each of the Bonds the legal opinion of Nixon Peabody LLP, Bond Counsel to the Authority, with respect to the validity of the Bonds, and immediately following such legal opinion a certificate signed with the facsimile signature of the Executive Director of the Authority substantially as follows:

"I HEREBY CERTIFY that the foregoing is a true and correct copy of the legal opinion upon the bonds therein described which was manually signed by Nixon Peabody LLP, and was dated the date of delivery of and payment for said bonds.

[Facsimile signature]
Executive Director
Puerto Rico Electric Power Authority".

SECTION 10. The distribution and use by the Underwriters in connection with the offering of the Bonds of the Preliminary Official Statement, dated March 27, 2012, as

- 19 -

USB_9019MOTION_0008028

supplemented on April 9, 2012, (the "Preliminary Official Statement"), of the Authority relating to the Bonds, in the form presented at this meeting and marked as Exhibit 2897 to this Resolution, are hereby, in all respects, ratified, confirmed and approved. In addition, the execution by the Director of Finance of the Authority of a certificate pursuant to Rule 15c2-12 under the Securities Exchange Act of 1934, deeming the Preliminary Official Statement, except for certain permitted omissions therein, final as of its date, is hereby, in all respects, ratified, confirmed and approved.

SECTION 11. The Official Statement, dated April 12, 2012 of the Authority in connection with the issuance of the Bonds (the "Official Statement"), is hereby authorized in substantially the form of the Preliminary Official Statement. The Executive Director of the Authority is hereby authorized and directed to execute and deliver to the Underwriters copies of the Official Statement with such changes, insertions and omissions as may be approved by the Executive Director, the Director of Finance or the Treasurer of the Authority, and the execution of the Official Statement by the Executive Director of the Authority shall be conclusive evidence of their approval of any such changes, insertions and omissions, and the Underwriters are hereby authorized to distribute the Official Statement in connection with the offering and sale of the Bonds.

SECTION 12. The execution and delivery of the Escrow Agreement to be entered into by and between the Authority and the Escrow Agent relating to the redemption of the Refunded Bonds are hereby authorized and the Escrow Agreement shall be substantially in the form presented at this meeting and marked as Exhibit 2899 to this Resolution, subject to such changes, insertions and omissions as may be approved by the Executive Director, the Director of Finance or the Treasurer of the Authority, and the execution of the Escrow Agreement by the Executive Director, the Director of Finance or the Treasurer of the Authority shall be conclusive evidence of their approval of any such changes, insertions or omissions in such Escrow Agreement.

SECTION 13. For the purposes of Article XI of the Trust Agreement, the purchasers of the Bonds, whether purchasing as underwriters, for resale or otherwise, upon such purchase, may consent to a modification or amendment permitted by Section 1102 in the manner provided in the Trust Agreement, except that no proof of ownership shall be required, and with the same effect as a consent given by the holder of the Bonds; provided, however, that, if such consent is given by a purchaser who is purchasing as an underwriter or for resale, the nature of the modification or amendment and the provisions for the purchaser consenting thereto shall be described in the official statement, prospectus, offering memorandum or other offering document prepared in connection with the primary offering or remarketing of the Bonds by the Authority.

SECTION 14. The Authority covenants to comply, to the extent permitted by the Constitution and laws of the Commonwealth of Puerto Rico, with the requirements of the Internal Revenue Code of 1986, as amended, so that interest on the Bonds will remain exempt from existing federal income taxes to which it is not subject on the date of the issuance of the Bonds.

SECTION 15. (i) In accordance with the requirements of Rule 15c2-12, as amended (the "Rule"), promulgated by the Securities and Exchange Commission (the "Commission"), the

USB_9019MOTION_0008029

Authority covenants for the benefit of the persons who from time to time are the owners of the Bonds for federal income tax purposes (the "Beneficial Owners"):

    (a)      to file within 275 days after the end of each fiscal year with the Electronic Municipal Market Access system ("EMMA") established by the Municipal Securities Rulemaking Board (the "MSRB"), core financial information and operating data for the prior fiscal year, including (A) the Authority's audited financial statements, prepared in accordance with generally accepted accounting principles in effect from time to time, and (B) material historical quantitative data (including financial information and operating data) on the System and revenues, expenditures, financial operations and indebtedness generally found in the Official Statement (but excluding the general information on the economy of the Commonwealth of Puerto Rico incorporated by reference thereto); and

    (b)      to file in a timely manner, with the MSRB through EMMA, notice of failure of the Authority to comply with clause (i)(a) above and notice of any of the following events with respect to the Bonds, if material: (1) principal and interest payment delinquencies; (2) non-payment related defaults; (3) unscheduled draws on debt service reserves reflecting financial difficulties; (4) unscheduled draws on credit enhancements reflecting financial difficulties; (5) substitution of credit or liquidity providers, or their failure to perform; (6) adverse tax opinions or the issuance by the Internal Revenue Service of proposed or final determinations of taxability, Notices of Proposed Issue (IRS Form 5701-TEB) or other material notices or determinations with respect to the tax status of the Bonds, or other material events affecting the tax-exempt status of the Bonds; (7) modifications to rights of the holders (including Beneficial Owners) of the Bonds; (8) Bond calls, if material; (9) defeasances; (10) release, substitution, or sale of property securing repayment of the Bonds, if material; (11) rating changes; and (12) tender offers, (13) bankruptcy, insolvency, receivership or similar events, (14) the consummation of a merger, consolidation, or acquisition involving an obligated person or the sale of all or substantially all of the assets of the obligated person, other than in the ordinary course of business, the entry into a definitive agreement to undertake such an action or the termination of a definitive agreement relating to any such actions other than pursuant to its terms, if material; and (15) appointment of a successor or additional trustee or the change of name of a trustee, if material.

With respect to events (4) and (5), the Authority does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the Authority applies for or participates in obtaining the enhancement.

With respect to event (8), the Authority does not undertake to provide notice of a mandatory scheduled redemption not otherwise contingent upon the occurrence of an event if (i) the terms, dates and amounts of redemption are set forth herein, (ii) the only open issue is which Bonds will be redeemed in the case of a partial redemption, (iii) notice of redemption is given to the Beneficial Owners as required under the terms of the Bonds, (iv) public notice of the redemption is given pursuant to the Release Number 34-23856 of the SEC under the 1934 Act, even if the originally scheduled amounts are reduced by prior optional redemptions or bond purchases.

- 21 -

According to the Rule, event (13) is considered to occur when any of the following occur: the appointment of a receiver, fiscal agent or similar officer for an obligated person in a proceeding under the United States Bankruptcy Code or in any other proceeding under state or federal law in which a court or governmental authority has assumed jurisdiction over substantially all of the assets or business of the obligated person, or if such jurisdiction has been assumed by leaving the existing governing body and officials or officers in possession but subject to the supervision and orders of a court or governmental authority, or the entry of an order confirming a plan of reorganization, arrangement or liquidation by a court or governmental authority having supervision or jurisdiction over substantially all of the assets or business of the obligated person.

The Authority may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the Authority, such other events are material with respect to the Bonds, but the Authority does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

(ii)     No beneficial owner may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of any covenant in paragraph (i) of this Section (the "Undertaking") or for any remedy for breach thereof, unless such Beneficial Owner shall have filed with the Authority evidence of ownership and a written notice of and request to cure such breach, and the Authority shall have refused to comply within a reasonable time and such Beneficial Owner stipulates that (a) no challenge is made to the adequacy of any information provided in accordance with the Undertaking and (b) no remedy is sought other than substantial performance of the Undertaking.  All Proceedings shall be instituted only as specified herein, in the Federal or, any Commonwealth of Puerto Rico court located in the Municipality of San Juan, and for the equal benefit of all beneficial owners of the outstanding Bonds benefited by the same or a substantially similar covenant, and no remedy shall be sought or granted other than specific performance of the Undertaking at issue.  Notwithstanding the foregoing, no challenge to the adequacy of the information provided in accordance with the filings mentioned in said paragraph (i) may be prosecuted by any beneficial owner except in compliance with the remedial and enforcement provisions of Article VIII of the Trust Agreement.

(iii)     Any amendment to this Section may only take effect if:

(a)     the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Authority, or type of business conducted; this Section, as amended, would have complied with the requirements of the Rule at the time of award of the Bonds, after taking into account any amendments or interpretations of the Rule, as well as any change in circumstances; and the amendment does not materially impair the interests of Beneficial Owners, as determined by parties unaffiliated with the Authority (such as, but without limitation, the Authority's financial advisor or bond counsel); or

(b)     all or any part of the Rule, as interpreted by the staff of the Commission at the date of the issuance of the Bonds, ceases to be in effect for any reason, and the Authority elects that Undertaking  shall be deemed terminated or amended (as the case may be) accordingly.

- 22 -

The Authority further agrees in conjunction with any such amendment that the annual financial information containing the amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

(iv)   Any assertion of beneficial ownership must be filed, with full documentary support, as part of the written request described in paragraph (ii) hereof.

SECTION 16. The Executive Director, the Director of Finance or the Treasurer of the Authority is hereby authorized and directed, in the name and on behalf of the Authority, to execute and file with the appropriate office such financing statements as the person signing such statements determines (with the advice of counsel) are necessary to preserve under applicable Puerto Rico law the lien on and pledge of Revenues (as defined in the Trust Agreement) for the benefit of the holders of the Bonds and of any outstanding bonds issued under and secured by the Trust Agreement as said signer determines with the advice of counsel.

SECTION 17. The officers of the Authority, the Consulting Engineers and the officers and agents of the Trustee are hereby authorized and directed to do all acts and things required of them by the provisions of the Bonds, the Purchase Contract, the Escrow Agreement, and the Trust Agreement, for the full, punctual and complete performance of all the terms, covenants, provisions and agreements of the Bonds, the Purchase Contract, the Escrow Agreement, and the Trust Agreement and also to do all acts and things required of them by the provisions of this Resolution.

SECTION 18. The Bonds shall contain a recital that such Bonds are issued pursuant to Sections 191-217 of the Authority Act and shall be conclusively deemed to be valid and to have been issued in conformity with the provisions of Sections 191-217 of the Authority Act.

SECTION 19. The Authority shall implement the necessary control measures to monitor and authorize the disbursement of proceeds of the Bonds to avoid any future budget overruns on costs of Improvements.

SECTION 20. The provisions of this Resolution shall become effective immediately upon its adoption.

**ADOPTED** in San Juan, Puerto Rico, the 12th day of April, 2012.

- 23 -

USB_9019MOTION_0008032

LIST OF EXHIBITS AND APPENDICES
TO PUERTO RICO ELECTRIC POWER AUTHORITY
RESOLUTION NO. 3907

Exhibit 2895   Description of Improvements
Exhibit 2896   Form of Contract of Purchase*
Exhibit 2897   Form of Preliminary Official Statement*
Exhibit 2898   Form of the Official Statement*
Exhibit 2899   Form of Escrow Agreement

---

*Exhibits on file with the Secretary of the Puerto Rico Electric Power Authority.

Schedule 1 — Schedule of Refunded Bonds

13840615.7

USB_9019MOTION_0008033

RESOLUTION NO. 4063

RESOLUTION AUTHORIZING THE ISSUANCE OF NOT TO
EXCEED $700,000,000 PUERTO RICO ELECTRIC POWER
AUTHORITY POWER REVENUE BONDS, SERIES 2013A,
ESTABLISHING GUIDELINES AND STANDARDS AND
DELEGATING TO THE EXECUTIVE DIRECTOR, THE
DIRECTOR OF FINANCE AND THE TREASURER OF THE
AUTHORITY RESPONSIBILITY FOR FIXING THE
PRINCIPAL AMOUNT, THE MATURITY DATES, THE
INTEREST RATES AND OTHER DETAILS OF SUCH BONDS,
DELEGATING THE AWARD OF SAID BONDS TO SAID
PERSONS, AUTHORIZING THE EXECUTION AND
DIRECTING THE AUTHENTICATION AND DELIVERY OF
SAID BONDS, DIRECTING THE APPLICATION OF THE
PROCEEDS OF SAID BONDS, APPROVING THE FORM AND
RATIFYING THE DISTRIBUTION AND USE OF THE
PRELIMINARY OFFICIAL STATEMENT AND APPROVING
THE FORM OF THE OFFICIAL STATEMENT RELATING TO
SAID BONDS, AUTHORIZING THE EXECUTION OF THE
OFFICIAL STATEMENT, AND PERMITTING THE
INCLUSION OF THE LEGAL OPINION ON EACH OF SAID
BONDS.

BE IT RESOLVED by Puerto Rico Electric Power Authority (the "Authority"):

Section 1.      (a)      For the purpose of paying the cost of the Improvements described
below, which Improvements are described in brief and general terms as follows:

Current additions to production, transmission and distribution
facilities, and construction, enlargement and improvement of
buildings and the acquisition of additional land and equipment for
general purposes of the Authority,

the issuance of revenue bonds of the Authority in the aggregate principal amount of not to
exceed Seven Hundred Million Dollars ($700,000,000) under and pursuant to the provisions of
Section 208 of the Trust Agreement, dated as of January 1, 1974, as amended (the "Agreement"),
by and between the Authority and U.S. Bank National Association, successor trustee (the
"Trustee"), is hereby authorized. Said bonds shall be designated "Puerto Rico Electric Power
Authority Power Revenue Bonds, Series 2013A" (the "Bonds"), shall be issuable as registered
bonds without coupons in denominations of $5,000 or any multiple thereof, numbered from
R13A-1 upwards. The Bonds shall be dated their date of delivery, shall be serial bonds and term
bonds with Amortization Requirements (as defined in the Agreement) as the Executive Director,
the Director of Finance and the Treasurer of the Authority (collectively, the "Delegates") shall
determine results in the lowest true interest cost to the Authority, shall mature annually on July 1
of such years not earlier than 2014 and not later than 2053 and in such principal amounts, not

3

USB_9019MOTION_0003999

exceeding $700,000,000 in the aggregate, and shall bear interest, payable on January 1 and July 1 in each year, commencing January 1, 2014, at such rates per annum, no one of which shall exceed eight percent (8%) per annum.

Section 2.     All or any portion of the Bonds may be made subject to redemption prior to their maturity, at the option of the Authority, from any moneys which may be provided for that purpose and deposited with the Trustee on or before the date fixed for redemption, other than moneys deposited in the Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund in respect of an Amortization Requirement, either in whole or in part, and if in part, in such order of maturity as the Authority may direct, on any date or dates, upon such terms and at such redemption price or prices as the Delegates shall determine results in the lowest true interest cost to the Authority for the Bonds. Such redemption may be made upon at least thirty (30) days' prior notice by mail as provided in the Agreement. With respect to any notice of redemption of Bonds at the option of the Authority, such notice may state that such redemption shall be conditional upon the receipt by the Trustee, on or prior to the date fixed for such redemption, of moneys sufficient to pay the principal of and interest on such Bonds to be redeemed, and that if such moneys shall not have been so received, said notice shall be of no force and effect and the Authority shall not be required to redeem such Bonds. In the event that such notice of redemption contains such a condition and such moneys are not so received, the redemption shall not be made and the Trustee shall within a reasonable time thereafter give notice, in the manner in which the notice of redemption was given, that such moneys were not so received.

In the event the Delegates determine, pursuant to Section 1 hereof, to provide for term bonds with Amortization Requirements, such term bonds shall also be subject to redemption to the extent of such Amortization Requirements at a redemption price of par plus accrued interest to the date fixed for redemption on July 1 in such years as shall be determined by said Delegates.

USB_9019MOTION_0004000

Section 3.      The Bonds shall be executed in the manner provided in the Agreement. The Bonds and the certificate of authentication by the Trustee shall be, respectively, in the following forms:

[Form of Bonds]

$

No. R13A-___

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY

Power Revenue Bond, Series 2013A

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|

Registered Owner

Principal Amount          Dollars

Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount set forth above in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Agreement hereinafter mentioned) is registered at the close of business on the June 15 or December 15 next preceding an interest payment date, by check mailed to the Registered Owner at his address as it appears on the bond registration books of the Authority, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year, commencing _____ 1, 201_, in like coin or currency, at the Interest Rate shown above until payment of said Principal Amount.

This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions are liable for the payment of this bond or the interest hereon, but this bond shall be

5

USB_9019MOTION_0004001

payable as to both principal and interest solely from the special fund provided therefor as hereinafter set forth.

This bond is one of a duly authorized series of bonds known as "Puerto Rico Electric Power Authority Power Revenue Bonds, Series 2013A", dated the date hereof, consisting of bonds maturing in annual installments on the 1st day of July in the years [ ] to [ ], inclusive, and [ ] [(herein collectively called the "serial bonds")] and of bonds maturing on the 1st day of July, [ ] and [ ] (herein collectively called the "term bonds"), and issued for the purpose of paying the cost of acquiring or constructing capital improvements to the electric power properties of the Authority (the electric power properties owned and operated by the Authority as a single integrated system, together with all improvements, renewals and replacements thereof and extensions and additions thereto financed or refinanced under the provisions of the Agreement, being herein called the "System").

All of the bonds are issued under and pursuant to a trust agreement, as amended (said agreement, together with all agreements supplemental thereto as therein permitted, being herein called the "Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and U.S. Bank National Association, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the corporate trust office of the Trustee. Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Agreement.

The Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the bonds of the series of which this is one being herein collectively called the "bonds").

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to resolutions duly adopted by the Authority.

The Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the repair, maintenance and operation of the System and for the payment of the principal of and the interest on the bonds as the same become due and payable, including reserves for such purposes. The Agreement provides for the creation of a special fund designated "Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit to the credit of the Sinking Fund of a sufficient amount of the revenues of the

6

USB_9019MOTION_0004002

System over and above such expenses of repair, maintenance and operation, to pay the principal of and the interest on all bonds issued under the Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds.

The bonds of this series are issuable as registered bonds without coupons in denominations of $5,000 or any multiple thereof. At the corporate trust office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, definitive bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The bonds of this series maturing after July 1, [ ] at the time outstanding may be redeemed prior to their respective maturities, at the option of the Authority, from any moneys which may be provided for that purpose and deposited with the Trustee on or before the date fixed for redemption, other than moneys deposited in the Sinking Fund in respect of an amortization requirement, either in whole, on any date not earlier than July 1, [ ], or in part, in such order of maturity as the Authority may direct, on any date not earlier than July 1, [ ], at the principal amount of the bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption[, plus a premium of  % of such principal amount if redeemed on or prior to June 30, [ ], % if redeemed thereafter and or prior to June 30, [ ], and without premium if redeemed thereafter]; provided, however, that the term bonds maturing July 1, [ ] and [ ] may be redeemed in part, in order of maturity, from moneys in the Sinking Fund, at par and accrued interest without premium, beginning July 1, [ ] and [ ], respectively, and on each July 1 thereafter in the principal amount of the respective amortization requirements therefor set out in the resolution of the Authority authorizing the issuance of said bonds.

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Agreement.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by mail and shall be made in the manner and under the terms and conditions provided in the Agreement. With respect to any notice of redemption of bonds of the series of which this is one at the option of the Authority, such notice may state that such redemption shall be conditional upon the receipt by the Trustee, on or prior to the date fixed for such redemption, of moneys sufficient to pay the principal of and interest on such bonds to be redeemed, and that if such moneys shall not have been so received, said notice shall be of no force and effect and the Authority shall not be required to redeem such bonds. In the event that such notice of redemption contains such a condition and such moneys are not so received, the redemption shall not be made and the Trustee shall within a reasonable time thereafter give notice, in the manner in which the notice of redemption was given, that such moneys were not so received.

7

USB_9019MOTION_0004003

On the date designated for redemption, notice having been given as provided in the Agreement, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee.  If a portion of this bond shall be called for redemption, a new bond or bonds of the same series and maturity in principal amount equal to the unredeemed portion of this bond will be issued to the registered owner upon the surrender thereof.

The owner of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

The transfer of this bond is registrable by the registered owner thereof in person or by his attorney or legal representative at the principal office of the Trustee but only in the manner and subject to the limitations and conditions provided in the Agreement and upon surrender and cancellation of this bond.  Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for this bond a new definitive bond or bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond

8

USB_9019MOTION_0004004

and the execution of the Agreement have happened, exist and have been performed as so required.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

NY1 8883401v.4

USB_9019MOTION_0004005

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this bond to bear the facsimile signatures of the Executive Director and the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, all as of the __ day of __, 201_.

PUERTO RICO ELECTRIC POWER AUTHORITY

By         [Facsimile signature]
         Executive Director


         [Facsimile signature]
         Secretary

[Corporate Seal]

[To be endorsed on all bonds]

CERTIFICATE OF AUTHENTICATION

This is one of the bonds of the series designated therein and issued under the provisions of the within mentioned Agreement.

U.S. BANK NATIONAL ASSOCIATION
Trustee

By  _____
       Authorized Officer

Date of authentication: _____

10

USB_9019MOTION_0004006

[Form of Assignment]

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto _____ [Please Print or Typewrite Name and Address of Transferee] the within bond, and all rights thereunder, and hereby irrevocably constitutes and appoints _____ attorney to register the transfer of the within bond on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____   Signature _____

NOTICE:  The signature to this assignment must correspond with the name as it appears upon the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Signature Guaranteed by*:_____, New York, New York

*    Such signature must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in STAMP or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

NY1 8883401v.4

USB_9019MOTION_0004007

Section 4.     The Executive Director of the Authority is hereby authorized and directed to cause the Bonds to be signed with his facsimile signature, and the Secretary is hereby authorized and directed to cause the Bonds to be signed with her facsimile signature and is hereby directed and authorized to cause a facsimile of the corporate seal to be imprinted on each of the Bonds, and the Bonds shall thereupon be delivered to the Trustee for authentication, and the Trustee is hereby authorized and directed to authenticate and deliver the Bonds at one time to or upon the order of the Underwriters (hereinafter mentioned) upon payment of the purchase price therefor in accordance with and subject to the provisions of Sections 208 and 210 of the Agreement and Section 6 of this resolution.

Section 5.     The Delegates are hereby authorized to accept an offer submitted by Morgan Stanley & Co. LLC, Wells Fargo Securities, LLC and the other underwriters (collectively, the "Underwriters") mentioned in the form of Purchase Contract (the "Purchase Contract"), by and between the Authority and the Underwriters, presented at this meeting to purchase the Bonds at an aggregate purchase price of not less than ninety-eight and one-half percent (98 1/2%) of the aggregate purchase price to the public of the Bonds, plus accrued interest and resulting in a true interest cost to the Authority of not in excess of seven and one-half percent (7½%), upon the terms and conditions set forth in the Purchase Contract. The Delegates are further authorized to take all actions on behalf of the Governing Board with respect to all matters necessary upon the advice of counsel and Development Bank, statutory fiscal agent to the Authority, to award the Bonds. The form of the Purchase Contract presented at this meeting relating to the sale of the Bonds is hereby authorized, and if the Delegates shall accept the offer of the Underwriters, the Executive Director or the Acting Executive Director of the Authority or any Executive Vice President or Senior Vice President of Development Bank, statutory fiscal agent for the Authority, is hereby authorized and directed, in the name and on behalf of the Authority, to execute and deliver the Purchase Contract in the form presented to this meeting, with such changes, insertions and omissions as may be approved by the person executing the Purchase Contract, his execution of the Purchase Contract to be conclusive evidence of his approval of any such changes, insertions and omissions.

Section 6.     (a)     The proceeds of the Bonds (excluding accrued interest) shall be applied by the Trustee as follows:

      A.     such amount as may be requested by the Executive Director of the Authority in a certificate filed with the Trustee for the payment of such expenses incident to the financing as shall be approved by the Executive Director of the Authority shall be paid by the Trustee to Development Bank; and

      B.     the balance, if any, of said proceeds shall be paid to the Authority for deposit to the credit of the Construction Fund.

      (b)     The amount received as accrued interest on the Bonds, if any, shall be deposited with the Trustee to the credit of the Bond Service Account in the Sinking Fund.

12

USB_9019MOTION_0004008

Section 7.    In the event the Bonds shall no longer be registered in the name of any securities depository or its nominee, there shall be printed on the reverse of each of the Bonds the legal opinion of Sidley Austin LLP, Bond Counsel to the Authority, with respect to the validity of the Bonds, and immediately following such legal opinion a certificate signed with the facsimile signature of the Executive Director of the Authority substantially as follows:

> "I HEREBY CERTIFY that the foregoing is a true and correct copy of the legal opinion upon the bonds therein described which was manually signed by Sidley Austin LLP, New York, New York, and was dated the date of delivery of and payment for said bonds.

[Facsimile signature]
Executive Director
Puerto Rico Electric Power Authority".

Section 8.    The distribution and use of the Preliminary Official Statement, dated July 26, 2013, of the Authority in connection with the issuance of the Bonds, in the form presented to this meeting by the Underwriters in connection with the offering of the Bonds is hereby, in all respects, ratified, confirmed and approved. The Delegates are hereby authorized to approve the form of the final Official Statement, to be dated the date of the award of the Bonds to be distributed by the Underwriters. Such final Official Statement (the "Official Statement") shall be substantially in the form of the Preliminary Official Statement, and the Executive Director of the Authority is hereby authorized and directed to execute and deliver upon the award of the Bonds to the Underwriters copies of the Official Statement with such appropriate changes, insertions and omissions as may be approved by the Executive Director, his signing of the Official Statement to be conclusive evidence of his approval of any such changes, insertions and omissions.

Section 9.    The Authority covenants to comply, to the extent permitted by the Constitution and laws of the Commonwealth of Puerto Rico, with the requirements of the Internal Revenue Code of 1986, as amended, so that interest on the Bonds will remain exempt from existing federal income taxes to which it is not subject on the date of the issuance of the Bonds.

Section 10.    (a)    In accordance with the requirements of Rule 15c2-12, as amended (the "Rule"), promulgated by the Securities and Exchange Commission (the "Commission"), the Authority covenants for the benefit of the persons who from time to time are the owners of the Bonds for federal income tax purposes (the "beneficial owners"):

(A)    to file within 275 days after the end of each fiscal year, beginning with its 2013 fiscal year, with the Electronic Municipal Market Access system established by the Municipal Securities Rulemaking Board (at http://emma.msrb.org), core financial information and operating data for the prior fiscal year, including (i) the Authority's audited financial statements, prepared in accordance with generally accepted accounting principles in effect from time to time, and (ii) material historical quantitative data (including financial information and operating data) on the Authority's System (including its pension plans, labor relations and litigation) and revenues,

13

USB_9019MOTION_0004009

expenditures, financial operations and indebtedness generally found in the Official Statement (but excluding the Commonwealth of Puerto Rico Financial Information and Operating Data Report incorporated by reference therein); and

(B)     to file in a timely manner, not in excess of ten (10) business days after the occurrence of the event, with the MSRB, through EMMA, notice of any failure of the Authority to comply with the requirements of paragraph (A) above and of any of the following events with respect to the Bonds:

a.     principal and interest payment delinquencies;

b.     non-payment related defaults, if material;

c.     unscheduled draws on debt service reserves reflecting financial difficulties;

d.     unscheduled draws on credit enhancements reflecting financial difficulties;

e.     substitution of credit or liquidity facility providers, or their failure to perform;

f.     adverse tax opinions, the issuance by the Internal Revenue Service (hereinafter, the "IRS") of proposed or final determinations of taxability, Notices of Proposed Issue (IRS Form 5701-TEB) or other material notices or determinations with respect to the tax status of the Bonds, or other material events affecting the tax status of the Bonds;

g.     modifications to rights of the bondholders, if material;

h.     Bond calls, if material;

i.     defeasances;

j.     release, substitution, or sale of property securing repayment of the Bonds, if material;

k.     rating changes;

l.     tender offers;

m.     bankruptcy, insolvency, receivership, or similar event of the Authority;

n.     the consummation of a merger, consolidation or acquisition involving the Authority, or the sale of all or substantially all of the assets of the Authority, other than in the ordinary course of business, the entry into a definitive agreement to undertake such action or the termination of a definitive agreement relating to any such actions, other than pursuant to its terms, if material; or

o.     the appointment of a successor or additional trustee, or the change of name of a trustee, if material.

The Authority does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the Authority applies for or participates in obtaining the enhancement.

NYI 8883401v.4

USB_9019MOTION_0004010

The Authority may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the Authority, such other events are material with respect to the Bonds, but the Authority does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

(b)   No beneficial owner may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of any covenant in paragraph (a) of this Section ("Authority Covenant") or for any remedy for breach thereof, unless such owner shall have filed with the Authority written notice of and request to cure such breach, and the Authority shall have refused to comply within a reasonable time. All Proceedings shall be instituted only as specified herein, in the Federal or any Commonwealth court located in the Municipality of San Juan, and for the equal benefit of all beneficial owners of the outstanding Bonds benefited by the same or a substantially similar covenant, and no remedy shall be sought or granted other than specific performance of the Authority Covenant at issue. Notwithstanding the foregoing, no challenge to the adequacy of the information provided in accordance with the filings mentioned in said paragraph (a) may be prosecuted by any beneficial owner except in compliance with the remedial and enforcement provisions of Article VIII of the Agreement.

(c)   Any amendment to this Section may only take effect if:

(1)   the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Authority, or type of business conducted; this Section, as amended, would have complied with the requirements of the Rule at the time of award of the Bonds, after taking into account any amendments or interpretations of the Rule, as well as any change in circumstances; and the amendment does not materially impair the interests of beneficial owners, as determined by parties unaffiliated with the Authority (such as, but without limitation, the Authority's financial advisor or bond counsel); or

(2)   all or any part of the Rule, as interpreted by the staff of the Commission at the date of the adoption of this resolution, ceases to be in effect for any reason, and the Authority elects that this Section shall be deemed amended accordingly.

The Authority further agrees in conjunction with any such amendment that the annual financial information containing the amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

(d)   Any assertion of beneficial ownership must be filed, with full documentary support, as part of the written request described in paragraph (b) hereof.

Section 11.   Any of the Delegates is hereby authorized and directed, in the name and on behalf of the Authority, to execute and file with the appropriate office such financing statements as the person signing such statements determines (with the advice of counsel) are necessary to preserve under applicable Puerto Rico law the lien on and pledge of Revenues (as defined in the Agreement) for the benefit of the holders of the Bonds and of any outstanding

15

USB_9019MOTION_0004011

bonds issued under and secured by the Agreement as said signer shall determine with the advice of counsel.

The Delegates are also authorized in the name and on behalf of the Authority to employ one or more bidding agents on such terms as they shall determine, upon advice of counsel and Development Bank, to facilitate the investment of some or all of the proceeds of the Bonds, to approve any request for bids for the investment of such proceeds (the "Investments RFP"), substantially in the form of similar requests for bids utilized by the Authority in connection with the issuance of prior series of power revenue and revenue refunding bonds under the Agreement, with the necessary changes being made, and to approve, execute and deliver any agreements regarding the investment of such proceeds as shall be negotiated by them with the winning providers under such Investments RFP (the "Investment Agreements").

Section 12.    There are hereby delegated to the Delegates, subject to the limitations contained herein, the following additional powers with respect to the Bonds:

(a)    to determine all matters provided in Sections 1 and 2 of this resolution, including the conditions under which term bonds, if any, may be issued and sold and the Amortization requirements therefor; and

(b)    to determine and carry out any other provisions, including the provisions of Section 12 hereof, deemed advisable by the Delegates, not in conflict with the provisions of this resolution and the Agreement.

The Delegates shall execute a certificate evidencing the determination and actions taken pursuant to the authority granted in this resolution, and such certificate shall be conclusive evidence of the determinations and actions of the Delegates as stated therein.

Section 13.    The Delegates are hereby authorized to cause all or any of the Bonds to be insured, provided that the Underwriters shall first determine that the true interest cost for the Bonds, including the premium for such insurance as interest payable on the date of issue of the Bonds, is less than would have been the true interest cost on the Bonds without such insurance, and Development Bank, statutory fiscal agent to the Authority, otherwise recommends the use of such insurance on all or some of the Bonds and in connection therewith to execute and deliver in the name and on behalf of the Authority such insurance commitment or commitments and related agreements and instruments (collectively, the "Insurance Commitment") as the Delegates deem appropriate in order to obtain such insurance, with such appropriate changes, insertions and omissions as may be approved the officer signing the same, his execution of the Insurance Commitment to be conclusive evidence of his approval of any such changes, insertions and omissions.

Section 14.    The officers of the Authority, the Consulting Engineers and the officers and agents of the Trustee are hereby authorized and directed to do all acts and things required of them by the provisions of the Bonds, the Purchase Contract, the Investments RFP, the Investment Agreements, the Insurance Commitment and the Agreement for the full, punctual and complete performance of all the terms, covenants, provisions and agreements of the Bonds, the Purchase Contract, the Investments RFP, the Investment Agreements, the Insurance

16

USB_9019MOTION_0004012

Commitment and the Agreement and also to do all acts and things required of them by the provisions of this resolution.

The delegation of authority to the Delegates provided in this resolution shall remain in effect through December 31, 2013.

Section 15.    The provisions of this resolution shall become effective immediately upon its adoption.

17

USB_9019MOTION_0004013

I, María M. Méndez-Rivera, Secretary of Puerto Rico Electric Power Authority, DO HEREBY CERTIFY that the foregoing is a true and correct copy of the pertinent paragraphs of the minutes of the meeting of the Governing Board of Puerto Rico Electric Power Authority held on August 1, 2013 as the same appear in the official records of said Authority on file, under my custody, at my office whereby Resolution No. 4063 was adopted by the Governing Board of the Authority.

I FURTHER CERTIFY that such Resolution is the only resolution of the Governing Board of Puerto Rico Electric Power Authority relating to the issuance of $673,145,000 Puerto Rico Electric Power Authority Power Revenue Bonds, Series 2013A, and such Resolution has not been amended, annulled, rescinded or revoked in any way, and the same is still in full force and effect.

I FURTHER CERTIFY that each member of the Governing Board of the Authority was either furnished with notice of said meetings in compliance with the By-Laws of the Authority or waived his right to such notice.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of Puerto Rico Electric Power Authority this 21st day of August, 2013.

_____
Secretary
Puerto Rico Electric Power Authority

(SEAL)



NY1 8883401v.4

USB_9019MOTION_0004014