# Exhibit 20

**Fuel Oil Purchase Contract between PREPA and Freepoint
Commodities, dated February 2, 2015, with the amendments thereto**

Cuantía: $869,611,880.00

Núm. de Cuenta: 1-2321-23215-000-000

2016-P00009

**FUEL OIL PURCHASE CONTRACT**
**AGUIRRE, COSTA SUR, SAN JUAN AND PALO SECO STEAM PLANTS**
**CONTRACT NUMBER 902-02-15**

AS FIRST PARTY: The Puerto Rico Electric Power Authority, hereinafter referred to as "PREPA", a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Acting Executive Director, Carlos Javier Castro Montalvo, of legal age, married, professional engineer, and resident of Guaynabo, Puerto Rico.

AS SECOND PARTY: Freepoint Commodities LLC, hereinafter referred to as "FREEPOINT", a limited liability company organized and existing under the laws of Delaware, authorized to do business in Puerto Rico, duly registered as a supplier to PREPA, represented in this act by its Director, Brandon Diket of legal age, married, and resident of Riverside, Connecticut, duly authorized to sign this Contract by virtue of the Certificate of Incumbency and authorization dated as of February 2nd, 2015.

WITNESSETH

WHEREAS, PREPA issued a Request for Proposal (RFP) 47658 for the supply of residual No. 6 fuel oil at the Aguirre and Costa Sur steam plants and a Request for Proposal (RFP) 47709 for the supply of residual No. 6 Fuel Oil at the San Juan and Palo Seco steam plants.

WHEREAS, in response to the referred RFPs, FREEPOINT made an offer for the supply of No. 6 Fuel Oil at the Aguirre and Costa Sur steam plants and an offer for the supply of No. 6 Fuel Oil at the San Juan and Palo Seco steam plants.

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 2

THEREFORE, after a negotiation process between the parties and in consideration of the mutual covenants herein stated, PREPA and FREEPOINT agree themselves, their representatives, successors and assignees as follows:

ARTICLE I: <u>Scope and Term of Contract</u>

A. FREEPOINT agrees to sell and deliver to PREPA, and PREPA agrees to purchase from FREEPOINT, No. 6 Fuel Oil in compliance with the specifications detailed in Exhibit A, Fuel Oil Specifications No. 6 for the Aguirre, Costa Sur, San Juan and Palo Seco steam plants.  The monthly rate of delivery for each calendar month of this Contract shall be the amount as requested by PREPA, as long as it does not exceed a limit of one million six hundred fifty thousand (1,650,000) barrels per month for the Aguirre, Costa Sur, San Juan and Palo Seco steam plants combined.

B. On a quantity of product equal to 25 percent of the volume of this Contract,  PREPA may present FREEPOINT with opportunities to purchase product that  conforms in all ways with the contractual specifications contained herein and that is, on a delivered basis, available for a price lower than the purchase price under this Contract. FREEPOINT will review any such potential transaction, and where reasonably practicable, shall purchase product referenced in PREPA's proposal. FREEPOINT may elect, in its sole discretion, to pass any amount of savings realized due to such purchase through to PREPA.  For the avoidance of doubt, the purchase prices specified in this Contract are based on assumptions with respect total volume delivered during the term and certain fixed costs associated with this Contract. Therefore, any comparison of the purchase price under this Contract to any spot



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 3

purchase transaction presented by PREPA in accordance with this section shall take those fixed costs into account and shall be adjusted as necessary to achieve accurate comparison. Such opportunities shall be presented to FREEPOINT by PREPA no later than thirty (30) days in advance of delivery and shall contain full details as to quantity, quality, and precise delivery time.

C. This Contract will become effective on the date of its signature, and will be in effect for a period of one (1) year, starting from the commencement date as notified by PREPA (the "Initial Term"). This Contract is subject to one (1) automatic extension of one (1) year unless either party indicates its intention that said automatic extension does not occur by providing the other party with written notice at least one hundred and twenty (120) days before the expiration of the Initial Term (a "Non-Extension Notice").

D. This Contract may be extended on a monthly basis upon mutual agreement after the end of the contracted term or its renewal; provided, however, that said extensions shall not exceed four (4) consecutive months, except when an emergency is declared by PREPA's Governing Board.

ARTICLE II: <u>Termination or Insolvency</u>

A. Prior to its normal expiration date, this Contract may be terminated immediately by written notice upon the happening of any of the following events of termination: (i) by FREEPOINT, if any invoice remains unpaid by PREPA two (2) calendar days after its due date or (ii) by PREPA, with ten (10) days' advance notice, if FREEPOINT fails to deliver the fuel ten (10) days after its committed delivery date



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 4

without PREPA's consent, except when failure to deliver is a consequence of Force
Majeure, PREPA's nonpayment of due invoices, or noncompliance with the Credit
Limit by PREPA.

B. Prior to its normal expiration date, except where provided elsewhere in this
Contract, if either party breaches: (i) any obligation under this Contract or (ii) any
representation or warranty pursuant to Article XII.F., G., I., K., L., M., O. and Q.
under this Contract, and such failure continues for a period of seven (7) days
following notice of such failure from the performing party, the performing party may
terminate this Contract.

C. The exercise of its right to terminate this Contract shall not be understood as a
waiver by the party to any other remedy it may have under this Contract or under
the law for delays or breach incurred by the other party in the performance of its
obligations under this Contract.

D. If (i) either party commences any debt adjustment proceeding, bankruptcy
proceeding, insolvency proceeding, dissolution or wind-up proceeding, proceeding
under the Public Corporation Debt Enforcement and Recovery Act, Act No. 71, of
June 28, 2014 ("Recovery Act"), or any similar proceedings, or (ii) a petition in
bankruptcy or insolvency is filed against either party and the relevant proceeding or
case shall continue undismissed, unstayed or not sufficiently bonded for a period of
90 or more days, or (iii) a Moratorium Event occurs for PREPA, other than a
Moratorium Event referred to in Article XII.M.b (ii) that is solely due to nonpayment
of one or more creditors under the Fuel Lines, or (iv) a receiver is appointed for

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 5

either party without such party's consent, the other party shall have the right to terminate this Contract upon written notice to the insolvent party, without prejudice to any claim or any other right of the terminating party under this Contract at the time of such termination. Notice of termination under this provision shall not create any liability to the terminating party, except that it shall still be responsible for the payment of amounts due and owing to the breaching party not subject to claims.

E.  If either party terminates this Contract pursuant to this Article II, FREEPOINT shall release the barge delivering under this Contract and use commercially reasonable efforts to not impede PREPA in obtaining the use of the barge.

ARTICLE III: Independent Contractor

FREEPOINT shall be considered as an independent contractor, for all material purposes under this Contract, and all persons engaged or contracted by FREEPOINT for the performance of its obligations herein, shall be considered as its employees or agents or those of its subcontractors, and not as employees or agents of PREPA. In consequence, FREEPOINT is not entitled to any fringe benefit, such as, but not limited to: vacation, sick leave, and others.

ARTICLE IV: Delivery and Title

A.  Delivery shall be, via barge or other vessel, for fuel as specified in Exhibit A or for fuel components to be blended at CORCO to obtain final product as specified in Exhibit A, delivered by FREEPOINT at Aguirre, Costa Sur, San Juan and Palo Seco. The pricing period is comprised of three (3) calendar days around the deemed commencement of discharge, considering the deemed date mutually

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 6

agreed between the parties, and it shall not be modified, except with the parties' mutual agreement.

B.  All costs relating to the use of the tank at CORCO and to the handling of vessel or barge in CORCO's dock (rent, dockage, line handling, hoses connection, loading, unloading, etc.) shall be for FREEPOINT's account, and shall be as specified in Exhibit D, the fuel oil Terminal Services Agreement, of this Contract.  PREPA's failure to provide the terminal facilities and related services as provided in the fuel oil Terminal Services Agreement shall constitute a default under this Contract.  Any outstanding amounts of principal or late payment interest arising out of due and unpaid invoices by PREPA can be offset by FREEPOINT (in its discretion) from amounts owed by FREEPOINT under this clause and the fuel oil Terminal Services Agreement.

The following Articles of this Contract shall apply to the fuel oil Terminal Services Agreement (Exhibit D):

  – XII F

  – XIII (Force Majeure)

  – XVII (Contract Assignment)

  – XX (Choice of Law and Venue)

  – XXI (Code of Ethics)

  – XXII (Modification and Novation)

  – XXIV (Separability)

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 7

C.  PREPA shall submit to FREEPOINT, no later than the fifteenth (15th) calendar day of each month, an estimate of its requirements and proposed dates for delivery of fuel for the following month.  FREEPOINT shall promptly acknowledge receipt of such estimate and shall, within five (5) days of such receipt, confirm or propose new delivery dates for such following month.  PREPA shall accept or make a counter-proposal with respect to such delivery schedule within one (1) business day. Said delivery schedule, if accepted by PREPA, shall be final. Delivery dates shall consist of delivery windows of three (3) days each for actual delivery to occur.  If estimates are not submitted within the aforementioned timeframes, delivery will be delayed for as long as required for FREEPOINT to obtain availability of the fuel.

D.  Title of product delivered shall pass to PREPA after the fuel passes the pipeline flange at the Aguirre, Costa Sur, San Juan or Palo Seco steam plants. FREEPOINT is responsible for cleaning, removing, and disposing of any spill of its product, which might occur before the pipeline interconnection during delivery; and shall be responsible for securing all materials, permits, and personnel required for handling the transfer of fuel.

E.  Deliveries via barge or vessel to the San Juan and Palo Seco Steam Plants through the San Juan Dock A/B, at present, are limited to an arrival draft of 26 feet. Deliveries via barge or vessel to the Aguirre Steam Plant are limited by a dredged channel with maximum draft of 21.5 feet. Deliveries through the CORCO dock, at present, are limited as follows:

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 8

| DWT | 82,000 tons |
|-----|-------------|
| LOA | 840 feet |
| BCM | 425 feet |
| DRAFT | 42 feet sw |

FREEPOINT shall conduct its own investigation relative to navigational information or any natural changes that might occur at the San Juan Dock A/B, Jobos bay or Guayanilla bay, since PREPA does not assume any responsibility for the same. However, if any change to the port restrictions occurs, FREEPOINT will have the right to charge PREPA for any and all costs related to the more restricted port conditions.

F.  Considering that a single barge is available at Puerto Rico to transport the product from the CORCO dock to Aguirre, any problem related to the barge that prevents delivery of the product, and is not as a consequence of FREEPOINT's fault or negligence, will be treated as a Force Majeure event.

G.  Maximum temperature of oil entering PREPA's pipeline shall not exceed one hundred and eighty-five degrees Fahrenheit (185° F), nor shall it be less than one hundred and twenty-five degrees Fahrenheit (125° F), and at the pressure of not more than one hundred and fifty (150) psig. nor less than one hundred and twenty-five (125) psig., measured at PREPA's intake flange.

H.  If FREEPOINT, for any reason, solely as a consequence of its own fault and except as provided for in Article XIII (Force Majeure), of this Contract, fails to deliver the

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 9

fuel required as provided for in this Contract, PREPA may procure the product from any other supplier.  In such event, PREPA shall notify FREEPOINT of the chosen supplier and applicable price.   FREEPOINT shall reimburse PREPA, for any difference which PREPA may have paid in excess of contracted price in the same due date of corresponding payment to the other supplier provided that PREPA submits evidence of such payment. In no circumstance will this clause apply if FREEPOINT ceased deliveries due to delay or nonpayment by PREPA of invoices already due or to the Credit Limit being exceeded, as set forth in Article IX.  Other than as set forth in Article XII F, it shall be understood that PREPA is not waiving any rights available to it under the law, including rights to any claims or actions for damages caused by noncompliance by FREEPOINT with the terms of this Contract.

I.   FREEPOINT will be responsible for any and all damages to the dock or to any other property caused by the vessel during delivery to the extent cause by FREEPOINT's negligence.   All fuel oil deliveries and transfers should be in compliance with Homeland Security Regulations including, but not limited to, 33 CFR 104 & 105. Also, all fuel oil operations should be in compliance with 33 CFR 154, 155 & 156.

J.   Should PREPA need fuel of the same type and quality as the fuel herein contracted for at any of its other plants, PREPA may request such deliveries as per the rules outlined in paragraph C of this Article, and FREEPOINT shall endeavor within its best efforts to deliver this order to such other plant, up to a maximum of FREEPOINT's Contractual Commitment under this Contract.  Said requested fuel oil to be delivered by FREEPOINT shall be at the same delivered price and under

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 10

the same payment conditions as for the Aguirre, Costa Sur, San Juan and Palo Seco steam plants under this Contract, adjusted to reflect any increased or decreased transportation costs resulting from delivery to such other plant.

K.  FREEPOINT is responsible under a predicted Force Majeure event to execute reasonable plans to avoid human hazards or damages to public or private property that may be caused by FREEPOINT's operation and performance under this Contract.

L.  To the extent caused by FREEPOINT's negligence, FREEPOINT agrees to indemnify PREPA for all expenses and costs of any nature arising out of any claim due to an environmental violation, caused by its agents, employees, subcontractors or assignees during performance or nonperformance of its obligation under this Contract.

M.  To the extent caused by PREPA's negligence, PREPA agrees to indemnify FREEPOINT for all expenses and costs of any nature arising out of any claim due to an environmental violation, caused by its agents, employees, subcontractors or assignees during performance or nonperformance of its obligation under this Contract.

N.  Neither party shall be liable to the other pursuant to this Contract, for any punitive, consequential, or exemplary damages.

O.  Every vessel shall be capable of acceptance by the terminal(s), and FREEPOINT shall bear the risk of any failure to obtain such acceptance.

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 11

P.  It is FREEPOINT's responsibility to familiarize itself with all the locations referred to in this Contract.  FREEPOINT will be required to have the proper personnel and equipment to service the locations as specified in this Contract.  In case of environmental or safety risks on CORCO operations, FREEPOINT, at its sole discretion, will have the option to cancel the Terminal and Services Agreement (Exhibit D) and return the tanks.

Q.  If FREEPOINT needs to lease tanks in another facility due to CORCO not being operational, PREPA shall reimburse FREEPOINT for any additional costs and expenses related thereto; and PREPA shall pay any such amounts on the due date of the relevant invoice delivered by FREEPOINT detailing such costs.

ARTICLE V: Type of Fuel to be Supplied

A.  PREPA requires a fuel appropriate for burning without requiring extraordinary maintenance at each plant's boilers and its associated equipment, or causing extraordinary problems in the plant operations, and which will yield the lowest cost per kW hour produced. All fuel shall be analyzed and evaluated in terms of its ultimate cost and consistency with PREPA's applicable environmental regulations.

B.  FREEPOINT warrants that the fuel supplied meets the contracted specifications and is free of any components that have been derived from petrochemical processes such as ethylene cracker residues, olefin cracker residues, resins, styrene's, acetates, and hazardous wastes including chlorinated hydrocarbons.  FREEPOINT further warrants that fuel oil shall be homogeneously stable and will not separate,



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 12

stratify or form undesirable compounds by chemical reaction during shipping, storage, handling and heating.

C.  In the event that during the term of this Contract, either Federal or Commonwealth of Puerto Rico laws or regulations are modified, requiring the burning of a fuel with different specifications than the fuel contracted for, and if these changes require an adjustment in the price of the fuel to be supplied, then the parties shall meet within five (5) days from the enactment of any such law or regulation to discuss the matter for the purpose of establishing new price terms satisfactory to both parties. If an agreement cannot be reached prior to the effective date of any such law or the enforcement date of any such regulations then PREPA shall have the right to terminate this Contract.

D.  In the event that, during the term of this Contract, PREPA requests a fuel of different specifications than the fuel contracted for, FREEPOINT and PREPA shall meet to negotiate in good faith new price terms (lower or higher than the contracted price) for said different fuel oil specifications satisfactory to both parties. If an agreement cannot be reached, the contracted fuel specification shall prevail.

ARTICLE VI: Specifications

A.  All fuel delivered under this Contract shall be in accordance with the latest corresponding specifications, as specified in Exhibit A. PREPA requires a fuel with homogeneous hydrocarbons, free of inorganic acids and microorganisms, with no water, solid or fibrous foreign matter, and which will yield the lowest cost per kW hour produced.

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 13

B.  The fuel required by PREPA shall be appropriate for burning successfully without requiring extraordinary maintenance to the boiler, associated equipment, or causing other extraordinary problems in the operation of the steam plant, and shall conform to all prevailing Federal or local environmental rules and regulations.

C.  The fuel supplied shall comply with the contracted specifications and shall be homogeneous. A fuel shipment shall be considered to be homogeneous and within specifications when the maximum difference between any two (2) samples for different strata or compartments is not greater than 0.3 degrees for tested API and 0.02 weight percent in tested sulfur without exceeding the maximum allowable limits in all tests.

D.  To assure fuel compliance with specifications, before discharge of each delivery, the parties will contract a mutually agreed Independent Laboratory Company accredited by US Customs and Border Protection as per Title 19 CFR 151.12 to perform laboratory analyses as per specified methods of the fuel actually being supplied.  A laboratory certificate including all the parameters contained in Exhibit A and signed by an authorized chemist in Puerto Rico will be produced and its results shall be considered final and binding for both parties.  Acceptance criteria will be based on these laboratory results.  The sampling process shall allow for a large enough representative split of the volumetric composite sample such that PREPA can receive a 1 (one) liter sample for its own use.  The sample shall be provided to PREPA by the mutually agreed Independent Laboratory Company within the next

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 14

twenty-four (24) hours after completion of fuel discharge or transfer. The cost of such additional sampling shall be borne by PREPA.

E.  Should PREPA encounter difficulties in the efficient handling and burning of the fuel, special analysis of the retained independent inspector's sample shall be requested by PREPA and made by an authorized laboratory licensed in Puerto Rico, so as to determine whether such difficulties are attributable to the fuel delivered not being in compliance with the Specifications and FREEPOINT's warranties.

F.  If it is determined that the difficulties are attributable to the fuel not being in compliance with the Specifications or FREEPOINT's warranties, FREEPOINT will take such immediate measures as necessary to correct the deviation and to prevent further difficulties. PREPA's acceptance of, or agreement to, remedial or preventive measures shall not be interpreted or considered as a waiver of any rights available to it under the law, including, but not limited to, rights of actions or claims for damages caused by FREEPOINT's noncompliance with the fuel specifications or with any other provision of this Contract.

G.  If during any delivery FREEPOINT fails to meet the specifications and warranties as contracted, PREPA reserves the right: (i) to immediately reject the shipment, (ii) evaluate the deviation, (iii) and/or establish a claim for nonperformance. PREPA shall notify FREEPOINT of any specification non-compliance that will result in product being rejected or discounts to be applied before discharge commences, and discharge will be suspended until FREEPOINT and PREPA can reach an agreement.

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 15

H.  General provisions in this Article VI regarding compliance with specifications, discrepancies and laboratory analyses shall apply to Article XI (Guaranteed Calorific Value), whenever required.

I.  FREEPOINT will be held responsible for any fines, penalties, direct damages, expenses, costs or claims, actions and causes of actions, which may arise due to the fact that any of the fuel provided by FREEPOINT has deviations or variations from the contracted Specifications and warranties for the same.  Therefore, should such circumstances take place, FREEPOINT will hold and save harmless and will defend PREPA, its officers, agents, and employees, from any claims, actions, causes of actions, damages, costs, fines, penalties and expenses due or attributable to variations or deviations from fuel specifications as contracted and guaranteed by FREEPOINT.

ARTICLE VII: Laytime and Demurrage

A.  PREPA assumes no responsibility or liability for demurrage incurred by the vessel(s) delivering fuel pursuant to this Contract, unless such demurrage is attributed to the fault or negligence of PREPA, and except in the situation defined in Article IX (Price), paragraph C. Laytime shall commence six (6) hours: a) after FREEPOINT notifies PREPA that the vessel is ready to discharge cargo, or b) upon arrival at berth and cleared by Customs, whichever occurs last.

B.  Notice shall be given to PREPA seventy-two (72), forty-eight (48), and twenty-four (24) hours before the vessel's arrival by the vessel's master or its agent. In the event the vessel is delayed in getting into berth after giving notice, for any reason

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 16

over which PREPA has no control or due to docking restrictions, if any, such delay shall not count as used laytime.

C.   It is understood and agreed that it is the practice of CORCO/Proterm to load and unload vessels at the docks in order of their arrival to the CORCO/Proterm buoy, subject to the availability of the docks. PREPA shall not be responsible for demurrages attributable to dock unavailability, unless said unavailability is caused by PREPA's intervention to change CORCO's practice.

D.   Laytime shall commence within the meaning of this Article, whether the vessel arrives during or outside normal business hours.  Laytime shall not be increased, nor shall PREPA be held accountable for, any delay in berthing the vessel attributable to the failure of FREEPOINT to give the notices set forth in this Article.

E.   Allowed laytime shall be forty-two (42) hours for each and every delivery of No. 6 residual fuel oil under this Contract. PREPA and FREEPOINT agree, however, that the allowed laytime of forty-two (42) hours depends upon:

   1. FREEPOINT's vessel being capable of pumping its entire cargo within thirty (30) hours.

   2. FREEPOINT's personnel or agents promptly performing the connection and disconnection of discharging hoses.

   3. Unloading temperature and pressure as specified in Article IV (Delivery and Title) of this Contract.

   4. FREEPOINT's maximum cargo volume of 350,000 barrels.

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 17

F.   Allowed laytime shall be increased by the time a vessel is prevented or delayed from arriving, departing, or discharging cargo due to:

1. Vessel's condition, vessel's facilities, or vessel's failure to comply with US Coast Guard or other governmental agency regulations, which do not permit connection, discharging cargo or disconnecting in the allowed laytime.

2. The failure of the No. 6 residual fuel oil to meet the quantity or specifications by any of the determinations set forth in this Contract.

3. Regulations of port authorities, vessel's owners or vessel's master, which prohibit discharging of the cargo at night.

4. FREEPOINT's cargo volume exceeding the established maximum volume.

5. Tide conditions, heavy seas, wind or bad weather of any nature.

G.   If the vessel is delayed at any discharging berth for ships purposes or reasons beyond the control of PREPA, laytime shall cease when discharging is completed even though hoses are not disconnected. If regulations of port authorities or vessel's owner prohibit discharging of the cargo at night, time so lost shall increase the allowed laytime. If PREPA prohibits discharging at night, time lost shall count as laytime. In all other cases laytime shall continue to run until cargo hoses or loading arms, as the case may be, have been disconnected.

H.   Subject to FREEPOINT'S full compliance with this Article, PREPA shall pay demurrage per running hours, and pro-rata for a part thereof, for all time that exceeds the allowed laytime at the rate stated in the Voyage Charter Agreement for the vessel if such vessel is contracted under VCP. For TCP vessels or barges,

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 18

parties shall use current TC3 value plus Wordscale 10 points with minimum flat rate of US$ 5.50 per metric ton.  All demurrage claims must be presented in writing along with substantiation thereof within ninety (90) days after fuel delivery date, after which PREPA will no longer be liable for any demurrage charges for said delivery.

I.  If discharging has ceased because it is completed or if the discharging rate has decreased to a rate, which will not permit discharge of the entire cargo within forty-two (42) hours, or due to any other problem with the vessel, PREPA may order the vessel off the dock at no cost to PREPA.  If practical, the vessel shall be allowed to return later and complete discharging.  In the event that the discharging rate has decreased to a rate which will not permit discharge of the entire cargo within forty-two (42) hours, PREPA may delay ordering the vessel off the dock and allow pumping to continue, provided FREEPOINT pays the dock per hour fee rate and any other associated cost.

J.  FREEPOINT shall furnish all appropriate documentation and available evidence in support of any demurrage claim which may be brought against PREPA.

ARTICLE VIII: General Liabilities

The parties agree to make, use, provide, and take all proper, necessary precautions, safeguards, and protection against the occurrence or happening of injuries, death, and/or damages to any person or property during the delivery process. The parties also agree to be responsible for, and indemnify, and save each other harmless from public liability, costs and expenses resulting therefrom, or

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 19

damages that may happen or occur through the negligence or willful misconduct of the breaching party, its employees, agents, and subcontractors, during the performance of this Contract, or while carrying out any act or action directly or indirectly related to, or in connection with the performance of this Contract, and from loss, liability, and fines incurred for, or by reason of violation by the breaching party of any federal, state, or municipal ordinance, or regulation of law, while said delivery is in progress.

ARTICLE IX: Price

A. The price for the fuel to be supplied under this Contract includes all taxes, fees or established import tariffs, and will be subject to on the Initial Term ultimately chosen from the options outlined in Article I (Scope and Term of Contract), paragraph B. Such price is to be determined as follows:

The price to be paid for each barrel of fuel delivered throughout the entire duration of the Initial Term will consist of an escalator plus a price differential, with seventy (70) day credit term. Subject to Article IX (K), the fixed price differential shall be, in US dollars per barrel for all deliveries under this Contract, (i) discounted to $5.71 for San Juan and Palo Seco Plants and $7.78 for Aguirre and Costa Sur Plants (the "Discount Differential") if the invoice is paid early on or before the sixty-second (62nd) day following issuance thereof (the "Early Payment Discount Period"), or (ii) $17.71 for San Juan and Palo Seco and $19.78 for Aguirre and Costa Sur Plants (the "Full Differential") if the invoice is paid before, on, or after the seventy-second (72nd) day following issuance thereof (the "Full Payment Period").

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 20

Price differentials will be added to the escalator to obtain the final fuel price.

At any time PREPA has made the representation in Article XII (M) (ii), Freepoint shall have the right to reduce the seventy (70) day credit term, the Early Payment Discount Period, and the Full Payment Period after first meeting and conferring with PREPA.   If a Non-Extension Notice has been delivered, or on and after one hundred and twenty (120) days prior to the expiration of the Agreement if an automatic extension of one (1) year has occurred pursuant to Article I(C), Freepoint shall have the right to reduce the seventy (70) day credit term, the Early Payment Discount Period, the Full Payment Period and the Credit Limit after first meeting and conferring with PREPA.

B.   FREEPOINT shall provide PREPA with a Credit Limit of $250,000,000.  Whenever the Credit Limit is reached, PREPA shall anticipate payments of invoices in chronological order as much as necessary in order to comply with the Credit Limit.

C.   Should PREPA fail to pay any invoice by the end of the Early Payment Discount Period, FREEPOINT may, at its own discretion, suspend any and all deliveries to PREPA.  Where FREEPOINT suspends deliveries pursuant to this Section (C), if PREPA pays such invoice within two (2) calendar days following the due date thereof, FREEPOINT shall resume deliveries to PREPA. Any costs including but not limited to demurrage due to this suspension of delivery shall be borne by PREPA.

D.   Should PREPA fail to pay any invoice within two (2) calendar days following such invoice's due date (i.e., subject to Article IX (A) and Article XII (M) (ii), the seventy-second (72nd) day following issuance thereof), or if the Credit Limit is exceeded,

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 21

FREEPOINT may, at its own discretion, terminate this Contract as provided in Article II (Termination or Insolvency), paragraph A(i).

E.  The escalator that is mentioned in paragraph A of this Article IX shall be increased or decreased according to Platt's Oilgram Price Report, "Estimated New York Spot – (Cargo)" corresponding to the effective date of the posting at the deemed date the fuel delivery commences, the day before, and the day after the deemed fuel delivery, each one of these evaluated utilizing the following formula:

> Fifty percent (50%) of the zero point three percent (0.3%) sulfur fuel high pour, as published on Platt's Oilgram Price Report, New York/Boston No. 6 Fuel Oil Cargo Columns, rounded to four (4) decimal places; plus fifty percent (50%) of the zero point seven percent (0.7%) sulfur fuel, as published on Platt's Oilgram Price Report, New York/Boston No. 6 Fuel Oil Cargo columns, rounded to four (4) decimal places.

A sample calculation of the escalation factor is shown on Exhibit C, Sample Calculation - Escalation Factor, of this Contract.

Municipal taxes are to be presented as a separate line item on the invoice.

F.  The pricing period is defined as three (3) calendar days around the deemed commencement of discharge date, as agreed by the parties. Pricing will be established considering the deemed date agreed between the parties, and this pricing shall not be modified, except by mutual agreement. Should the deemed delivery take place on a Saturday, Sunday or on a Holiday, the effective prices in the last editions of Platt's Oilgram Price Report published before that date will be utilized to readjust the prices.

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 22

G.   The date published prices are made effective will govern, holding the price firm until the next publication date. Should the format used by the publishers for the postings be changed, both parties will meet within five (5) days of the occurrence to determine how to interpret the same.

H.   FREEPOINT assumes the responsibility of the transportation of the product and all other related responsibilities up to PREPA's flange connecting FREEPOINT's vessel with the PREPA's pipeline at the dock.

I.   Should PREPA require volumes of the same type and quality of the fuel herein contracted in excess of FREEPOINT's contractual commitment, PREPA may request it from FREEPOINT. If FREEPOINT has such fuel available, then FREEPOINT may, at its option, supply it under the same terms and conditions agreed hereupon. Any fuel delivered pursuant to this clause shall be deemed to be fuel delivered pursuant to this Contract. FREEPOINT's consent to supply the requested fuel shall not be unreasonably withheld.

J.   Should the due date of an invoice fall on a non-business day that is either Sunday or Monday, payment shall be made the following business day. However, if due date falls on a non-business day which not Sunday or Monday, then payment shall be made on the preceding business day. Business days shall be days in which banks are open for business in Puerto Rico.

K.   For late payments (i.e., subject to Article IX (A) and Article XII (M) (ii), after 72 days), interest on unpaid amount shall be calculated at monthly rate of one-percent (1%).

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 23

L. This entire Article IX is applicable to all past and future invoices due by PREPA under this Contract.

ARTICLE X: Duties and Taxes

A. The contracted price includes all Federal and local taxes, fees and established import tariffs for the fuel being supplied. Municipal taxes shall be fully reimbursed by PREPA and are to be presented as a separate line item on the invoice.

B. Any changes, whether up or down, in these taxes, fees, or tariffs, should they be imposed, will be reflected in the price in its entirety and FREEPOINT will adjust the price accordingly. Upon PREPA's request, FREEPOINT shall apply for any applicable waivers on taxes, fees or tariffs, and any costs associated with the application to such waivers will be passed in their entirety to PREPA.

C. PREPA commits to work with FREEPOINT, the government of the Commonwealth of Puerto Rico, and any applicable third parties to mitigate any tax and operational issues that may arise under this Contract, including but not limited to making commercially reasonable best efforts to put in place an oil delivery structure that eliminates FREEPOINT's tax exposure to Puerto Rico.

ARTICLE XI: Guaranteed Calorific Value

A. PREPA will not pay any premium for calorific values in excess of the minimum established in Exhibit A.

B. Any delivery by FREEPOINT, in which the fuel fails to meet such guarantee, the deficiency shall be determined in barrels, calculated on the basis of the example attached as Exhibit B of this Contract. The deficiency thus calculated shall serve as

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 24

a credit deficiency for an equivalent number of barrels, before computing the fuel billings for such invoice.

C. General provisions in Article VI, <u>Specifications</u>, regarding compliance with specifications and laboratory analyses shall apply to this Article XI whenever required.

ARTICLE XII: <u>Measurement and Payment</u>

A. The quantity of fuel delivered to PREPA shall be computed by measurements in PREPA's shore tanks, to be conducted by a mutually agreed Independent Inspector accredited by US Customs and Border Protection as per Title 19 CFR 151.13. Inspection cost shall be borne equally between PREPA and FREEPOINT. All measurements shall be corrected to sixty degrees Fahrenheit (60° F) using the ASTM Petroleum Measurements Table 6-B. Quantities certified on the independent inspector's report will be binding for both parties absent fraud or manifest error.

B. Notwithstanding anything herein to the contrary, PREPA reserves the right to exclusively select and contract inspection services to conduct measurements and produce certifications of quantity at any time during the term of this Contract. If PREPA exercises this right, then this inspection cost shall be borne fully by PREPA, and FREEPOINT, at its own expense, may send its own inspector to verify these measurements.



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 25

C.  FREEPOINT shall invoice PREPA regularly and promptly after fuel is delivered. For payment purposes, invoices shall be sent from FREEPOINT to PREPA via e-mail and shall be deemed received on the same day. Copies of the inspector's certificates of quantity shall be included with invoices. Such invoices shall be paid by PREPA in immediately available US dollars, as provided for on Article IX (Price), paragraph A.

D.  All invoices submitted by FREEPOINT shall include the following Certification in order to proceed with payment. This is an essential requirement, and those invoices without this Certification will not be processed for payment:

> *No Interest Certification:*
> *Under penalty of absolute nullity, I hereby certify that no employee, official or director of PREPA is a party or has any interest in the profits or benefits to be obtained under this Contract, or if any employee, official or director or PREPA has any interest in the profits or benefits under this Contract, a waiver has been previously obtained. I also certify that the only consideration to deliver the fuel under this Contract is the payment agreed with PREPA's authorized representative. The total amount of this invoice is fair and correct. The fuel has been delivered and no payment has been received previously for said delivery.*

> _____
> *FREEPOINT's **Authorized Representative** signature*

E.  A paper copy of all invoices will be sent by regular mail to:

> Puerto Rico Electric Power Authority
> Attention: Fuels Office
> PO Box 364267
> San Juan, Puerto Rico 00936-4267

F.  Notwithstanding anything herein or otherwise to the contrary, PREPA covenants and, as of the date hereof and on the date of each delivery, represents and

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 26

warrants all invoices submitted by FREEPOINT shall be paid without reduction, offset or counterclaim of any sort.

G. PREPA will include in both the Annual Budget (as defined in such Trust Agreement) and PREPA's internal annual budget (together with the Annual Budget, the "Budgets") the payment in full of all amounts expected to be due under this Contract as "Current Expenses". Without limiting Article XII.I, to the extent PREPA chooses to reflect such amounts in the Budgets at the Discount Differential (as opposed to the Full Differential), PREPA will include in the Budgets, the following footnote: "This amount reflects PREPA obtaining a contractual early payment discount by paying all fuel invoices within 62 days."

H. Subject to Article XII F, nothing herein shall be interpreted under any circumstances or theory as a waiver from PREPA of any right, claim or counterclaim it may have against Freepoint.

I. As of date hereof and on the date of each delivery, PREPA represents and warrants (i) all amounts payable by PREPA pursuant to the term of this Contract constitute and qualify as a "Current Expense", under that certain Trust Agreement between PREPA and U.S. Bank National Association as Successor Trustee, dated as January 1, 1974, as amended and supplemented (the "Trust Agreement"), which amounts are reasonable and necessary with other expenses of PREPA to operate the System (as defined in the Trust Agreement), and constitute expenses that are permitted by standard practices for public utility systems and generally accepted accounting principles, and are reasonable for operating the System in an efficient

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 27

and economical manner; (ii) the Trust Agreement has not been modified or amended in any way that affects the definition or priority of "Current Expense", including without limitation, that to the extent provided by the Trust Agreement all Revenues (as defined in the Trust Agreement), other than income from investments made under the provisions of the Trust Agreement, will be deposited to the credit of the General Fund  (as defined in the Trust Agreement) and applied in accordance with Article V of the Trust Agreement; and (iii) PREPA has complied with Article XII.G.

J.  **[RESERVED]**

K.  As of the date hereof, and at the time of any delivery hereunder, PREPA represents and warrants (i) it is paying all "Current Expenses" (as defined in the Trust Agreement) as they become due, other than any amounts due under (1) that certain credit agreement dated as of May 4, 2012 between PREPA, Scotiabank De Puerto Rico and the lenders signatory thereto (as amended, restated, extended, supplemented or otherwise modified and in effect from time to time), (2) that certain trade finance facility agreement dated as of July 20, 2012 between PREPA and Solus Alternative Asset Management LP (as amended, restated, extended, supplemented or otherwise modified and in effect from time to time) (such agreements referred to in clauses (1) and (2), the "Fuel Lines"), and (3) certain pension obligations that PREPA may have under applicable law or contract, (ii) that it expects and intends to pay all outstanding invoices under this Contract by their respective due dates, and (iii) it has reasonably concluded that no event has



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 28

occurred that will have any adverse impact or delay on PREPA's performance of or compliance with its obligations under this Agreement.

L.  As of the date hereof, and at the time of any delivery hereunder, PREPA represents and warrants (a) to its knowledge, that a PREPA Event, as defined below, has not occurred, and (b) PREPA does not have current intentions to cause a PREPA Event within the next 72 days.

A "PREPA Event" shall be (a) any act by PREPA, Government Development Bank for Puerto Rico ("GDB") or the Commonwealth of Puerto Rico (the "Commonwealth") to (i) avoid or impair or cause to be past due all or any portion of this Contract or the payment of any invoice, or (ii) challenge this Contract or any invoice's validity or enforceability, including challenging the status of any invoice as a "Current Expense" (as defined in the Trust Agreement); or (b) any adverse determination by a court of competent jurisdiction concerning (i) or (ii) above.

M.  As of the date hereof, and at the time of any delivery hereunder, PREPA represents and warrants to one of the following: (i) it does not have current intentions to cause, or has no actual knowledge that a third party will cause, a PREPA Insolvency Event within 72 days, or (ii) it does not have current intentions to cause, or has no actual knowledge that a third party will cause, a PREPA Insolvency Event within 72 days unless (x) such PREPA Insolvency Event is a Qualified PREPA Insolvency Event and (y) it believes in good faith that any such PREPA Insolvency Event will constitute a Qualified PREPA Insolvency Event.



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 29

A "PREPA Insolvency Event" shall be any of the following events:

a. The commencement of any debt adjustment proceeding, bankruptcy proceeding, insolvency proceeding, dissolution or wind-up proceeding, proceeding under Recovery Act, or any similar proceeding (including the occurrence of a general assignment, arrangement or composition with or for the benefit of PREPA's creditors or the appointment of a receiver, administrator or similar officer for some or all of PREPA's assets).

b. (i) The announcement, declaration or implementation of a moratorium with respect to PREPA or any portion of its debts, unless such debts are the subject of a consensual forbearance that is in effect and continuing, (ii) PREPA is generally not paying its debts as they become due, it being understood that the phrase "generally not paying" shall include any failure by PREPA to make a principal or interest payment on its power revenue bond debt, a credit agreement or trade finance facility agreement (including the Fuel Lines), and one or more creditors have taken acts (x) to enforce their rights or remedies, including, without limitation, acts taken against PREPA resulting from a default or an event of default under the Trust Agreement, a credit agreement or trade finance facility agreement; provided, however, that the delivery of a notice of default or notice of an event of default shall not constitute an action by a creditor to enforce its rights or remedies for purposes of this clause, or (y) that seek to adversely impact or delay PREPA's performance of or compliance with its

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 30

obligations under this Agreement, or (iii) PREPA is unable by virtue of legislation, rule, policy, stay, moratorium, injunction or any other similar act to pay its debts as they become due (clauses (i), (ii), and (iii), each a "Moratorium Event").

c. Any resolution, authorization or steps to implement any of the foregoing by PREPA, the GDB or the Commonwealth.

A "Qualified PREPA Insolvency Event" shall mean a PREPA Insolvency Event that will not have any impact or delay on PREPA's performance of its obligations under this Agreement and PREPA's obligations under this Agreement, whether because (A) Freepoint is designated a critical vendor in connection with a PREPA Insolvency Event that is a case under chapter 9 of the United States Bankruptcy Code, (B) Freepoint is designated as an unaffected creditor in connection with a PREPA Insolvency Event that is in a case commenced under Recovery Act, (C) the obligations under this Agreement are specifically designated to be paid pursuant to an order of a court of competent jurisdiction in connection with a PREPA Insolvency Event that is the appointment of a receiver (under the Trust Agreement, Act No. 83 of 1941, as amended, or otherwise), or (D) Freepoint and the obligations under this Agreement are otherwise designated pursuant to legislation, court order, or in another binding manner (reasonably satisfactory to Freepoint), to be unaffected in the same manner as if Freepoint were designated as a critical vendor under the United States Bankruptcy Code or unaffected debt under Recovery Act; provided, however, that a PREPA Insolvency Event caused solely by a Moratorium Event shall



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 31

constitute a Qualified PREPA Insolvency Event so long as PREPA has reasonably concluded that there will not be any adverse impact or delay on PREPA's performance of or compliance with its obligations under this Agreement as a result of or in connection with such Moratorium Event.

N. PREPA agrees not to take any action in furtherance of commencing a PREPA Insolvency Event that it does not believe in good faith will be a Qualified PREPA Insolvency Event.

O. As of the date hereof, and at the time of any delivery hereunder, PREPA acknowledges that the invoices generated under this Contract may be sold and/or assigned, and PREPA will pay any amounts owing in respect of such invoices including without limitation amounts due under Section IX.K., without reduction, offset or counterclaim of any kind, to an entity designated by FREEPOINT.

P. If FREEPOINT decides to assign or transfer an amount, due or payable, to which it is entitled for services rendered or goods provided during the term of this Contract, FREEPOINT shall notify PREPA of such transfer, in accordance with the provisions of Act 21-2012. Said notice shall clearly indicate the rights granted, including reasonable proof that the assignment has been made, the exact amount of funds to be assigned or transferred, and specific identification information regarding the assignee (full name of the person or company), address and any other contact information. Delivery to PREPA of a notice of assignment substantially in the form of Exhibit F shall satisfy the requirements of this paragraph.



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 32

FREEPOINT's aforementioned notice of assignment shall be accompanied by a cashier's check or money order payment of two hundred dollars ($200), payable to "Puerto Rico Electric Power Authority", for administrative costs for processing said assignment.

Q. As of the date hereof, and at the time of any delivery hereunder, PREPA represents and warrants that (i) the creation of the receivables shall not conflict with any applicable law, (ii) the sale or assignment of such receivables shall not conflict with any law applicable to PREPA, and (iii) no further consents from PREPA or the Commonwealth of Puerto Rico (including any officer or agent thereof) are necessary for the sale or assignment of such receivables by Freepoint in accordance with this Contract.

R. Any representation and warranty made by PREPA pursuant to this Contract shall inure to the benefit of the assignee of any invoice under this Contract.

S. As a condition precedent to any fuel delivery, the representations and warranties in Article XII F., G., I., K. L., M., O. and Q. shall be true and correct and shall be made with certification by an authorized signatory of PREPA prior to the commencement of any fuel delivery, and such certification shall provide that such representations and warranties are true and correct as of the date of such certification through and including the date on which such fuel delivery is completed, unless and until PREPA provides a notice to the contrary.  For the avoidance of doubt, PREPA shall specify in each such certification whether the representation in Article XII (M) is made under (i) or (ii).

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 33

T. In the event any of the representations or warranties contained herein shall at any time become untrue or incorrect, PREPA shall immediately provide FREEPOINT with notice of such condition.

## ARTICLE XIII: Force Majeure

The parties hereto shall be excused from performing hereunder (except for any obligation to pay any money provided in this Contract, which shall not be excusable pursuant to this Article XIII under any circumstance) and shall not be liable in damages or otherwise, if and only to the extent that they shall be unable to perform or are prevented from performing by a Force Majeure event. For the purpose of this Contract, Force Majeure means any cause without the fault or negligence, and beyond the reasonable control of, the party claiming the occurrence of a Force Majeure event, whether foreseeable or not. Force Majeure may include, but not be limited to, the following: Acts of God, industrial disturbances, acts of the public enemy, war, blockages, boycotts, riots, insurrections, epidemics, earthquakes, storms, floods, civil disturbances, lockouts, fires, explosions, interruptions of services due to the acts or failure to act of any governmental authority, provided that these events, or any other claimed as Force Majeure, and/or its effects, whether foreseeable or not, are beyond the reasonable control and without the fault or negligence of the party claiming Force Majeure, and that such party, within ten (10) days of the occurrence of the alleged Force Majeure event, gives the other party written notice describing the particulars of the occurrence and, to the extent possible, its estimated duration. In the event that the Force Majeure claim extends



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 34

for a period of more than sixty (60) consecutive days, either party shall have the right to terminate this Contract without further obligation, except that either party shall still be responsible for the payment of amounts due and owing under this Contract, on their due date. The burden of proof as to whether a Force Majeure event has occurred shall be on the party claiming Force Majeure. Upon cessation of the Force Majeure event, the party declaring Force Majeure shall notify the other party of the termination of the Force Majeure claim. Performance shall be resumed, but the excuse from performing due to a Force Majeure event shall not operate to extend the term of this Contract nor obligate either party to make up deliveries or receipts, as the case may be.

Operational issues related to the barge or Puerto Rico port and terminals, not as a consequence of FREEPOINT's fault or negligence, shall be considered Force Majeure events.

ARTICLE XIV: Performance Bond

Upon execution of the Contract, FREEPOINT will furnish a Performance Bond payable to the order of PREPA issued by a qualified surety company, authorized to do business in Puerto Rico and reasonably acceptable to PREPA's Risk Manager, in the amount of $43,480,594, equivalent to five percent (5.0%) of the estimated Contract value.

PREPA will accept a Letter of Credit for the same amount in lieu of a Performance Bond, provided that the Letter of Credit shall incorporate the following conditions to be acceptable to PREPA:

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 35

1. to be issued or notified and confirmed by a local bank in Puerto Rico,

2. to be unconditional and irrevocable,

3. payments to be made by issuing bank on a business day by wire transfer, immediately after PREPA's instructions,

4. to be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico, applicable to contracts being made and performed solely within Puerto Rico, without giving effect to any conflicts or choice of law principles which otherwise might be applicable, except to the extent such laws are inconsistent with the uniform customs and practices for documentary credits,

5. final draft of the Letter of Credit shall be subject to approval by PREPA's Treasurer acting in a commercially reasonable manner.

ARTICLE XV: Notices

Any notice to be given hereunder shall be in writing and will be sufficiently served when delivered in person or properly mailed to the following addresses:

To PREPA:        Puerto Rico Electric Power Authority
                 PO Box 364267
                 San Juan, Puerto Rico 00936-4267
                 Attention: Eng. Edwin Rodriguez

To FREEPOINT:    Freepoint Commodities LLC
                 58 Commerce Road
                 Stamford, CT 06902
                 Attention: Mr. Brandon Dicket

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 36

Notices can also be sent through e-mail and shall be deemed valid if the notified party provides the notifying party with confirmation of receipt, provided notices are sent to the following e-mail addresses:

> To PREPA:        erodriguez@PREPA.com (Eng. Edwin Rodriguez)


> To FREEPOINT:   goztemel@freepoint.com (Mr. Glenn Oztemel)

Should a party's address(es) change from those set forth above, that party shall notify the other party in writing, and after such notification the address therein specified shall be deemed the correct address of such party for all future notices.


ARTICLE XVI: Certifications Required by law

A. Prior to the execution of this Contract, FREEPOINT will have to submit the following documents and certifications:

1. A sworn statement which indicates the reason why the Firm does not have to submit income tax returns for the five (5) previous years, and that it does not owe taxes to the Commonwealth of Puerto Rico.

2. Certification issued by the Municipal Revenues Collection Center (MRCC), assuring that the Firm does not owe any tax to such governmental agency. To request such Certification, the Firm will use the form issued by the MRCC.

3. Certification, issued by the Child Support Administration, assuring that the Firm is in compliance with the withholdings required by law as an employer.

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 37

4.   Certificate, issued by the Department of Labor and Human Resources of Puerto Rico, assuring that the Firm has paid to the Department of Labor and Human Resources of Puerto Rico its employees' contributions, in accordance with the Puerto Rico Employment Security Act (unemployment, temporary disability or sickness or social security for drivers/chauffeurs); or is paying such contributions by an installment plan in full compliance with its terms.   To request such Certification, the Firm will use the form issued by the Department of Labor and Human Resources of Puerto Rico.

5.   An Income Tax Return Filling Certificate, issued by the Treasury Department of Puerto Rico, Area of Internal Revenues, assuring that FREEPOINT has filed its Income Tax Return for the last four (4) years.

6.   A statement which indicates that FREEPOINT, to the extent it has been required to do so, has filed its Income Tax Returns during the four (4) previous years and that it does not owe back taxes to the Commonwealth of Puerto Rico, or that it is paying such taxes by an installment plan and in full compliance with its terms.

7.   A certification issued by the Municipal Revenues Collection Center (MRCC), assuring that FREEPOINT does not owe any tax to such governmental agency.

B.   It shall also be FREEPOINT's responsibility to require all subcontracted third parties to comply will all the above Certifications outlined in paragraph A, and FREEPOINT agrees to notify PREPA of such compliance within ten (10) working days of subcontracting such third parties.

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 38

C.  If any of the previously required Certifications shows a debt, and FREEPOINT has requested a review or adjustment of this debt, FREEPOINT will certify that it has made such request at the time of this Contract execution. If the requested review or adjustment is denied and such determination is final, FREEPOINT will immediately provide to PREPA a proof of payment of this debt; otherwise, FREEPOINT accepts that the owed amount will be offset by PREPA and retained at the origin, deducted from the corresponding payments. For the avoidance of doubt, such offset will not be against any fuel oil invoice created under this Contract in accordance with Article XII F.

D.  FREEPOINT recognizes that submittal of the aforementioned certifications and documents is an essential condition of this Contract, and failure to comply shall constitute a default under this Contract.

ARTICLE XVII: <u>Contract Assignment</u>

This contract, as well as any other of the rights, duties, liabilities, and obligations under it, cannot be assigned, transferred, subcontracted, hypothecated or otherwise disposed of by either party without the prior written consent of the other party, and such consent shall not be unreasonably withheld. Notwithstanding, FREEPOINT may assign this Contract or any rights or obligations arising out of it, without previous consent of PREPA, to one of its affiliates, provided that such affiliate is a U.S. incorporated, substantially capitalized trading entity, and fully owned, directly or indirectly, by FREEPOINT. Prior to assignment, FREEPOINT shall provide PREPA with all the documentation that certifies that the assignee is a U.S.



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 39

incorporated, substantially capitalized trading entity, and fully owned, directly or indirectly, by FREEPOINT. Notwithstanding anything herein or otherwise to the contrary, FREEPOINT may also assign invoices created under this Contract and any rights related to such invoices, without previous consent of PREPA, to Freepoint's receivable assignee.

## ARTICLE XVIII: <u>Financial Reporting</u>

Subject to a non-disclosure agreement on terms similar to those required from all other creditors of PREPA receiving PREPA financial information satisfactory to PREPA, PREPA shall keep Freepoint reasonably apprised of material developments with respect to its restructuring process and, for as long as the Forbearance Agreements are in place, PREPA shall deliver to FREEPOINT the same financial information reporting provided to Forbearing Creditors under Sections 4(a)(ii) and (vi) of the Bondholder Forbearance Agreement. For purposes of this Article XVIII, "Forbearance Agreements" means certain Forbearance Agreements, each dated August 14, 2014 (as subsequently amended), among PREPA and inter alia: (i) ScotiaBank de Puerto Rico, Banco Popular de Puerto Rico, Oriental Bank, and FirstBank Puerto Rico; (ii) National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Syncora Guarantee Inc. and members of the Ad Hoc Group of PREPA Bondholders (the "Bondholder Forbearance Agreement"); (iii) Citibank, N.A. (or its successors and assigns); and (iv) Government Development Bank for Puerto Rico (collectively, the "Forbearing Creditors").



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 40

ARTICLE XIX: Contingent Fees

A.  FREEPOINT warrants that it has not employed any person to solicit or secure this Contract upon any agreement for a commission, percentage, brokerage or contingent fee. Breach of this warranty will give PREPA the right to immediately terminate this Contract and/or to deduct from payments the amount of such commission, percentage, brokerage, or contingent fee, or to claim said amount by whatever means available under the law. For the avoidance of doubt, such offset will not be against any fuel oil invoice created under this Contract in accordance with Article XII F.

B.  No officer, employee or agent of PREPA or of the Commonwealth of Puerto Rico, or of any Municipal Government shall be admitted to any share or part of this Contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this Contract if made with a well-known oil corporation for its general benefit, although said corporation employs a relative, by reasons of consanguinity or affinity, of a PREPA employee.

C.  FREEPOINT represents and warrants that it is authorized to enter into and to perform its obligations under this Contract, and that it is not prohibited from doing business in Puerto Rico or barred from contracting with agencies or instrumentalities of the Commonwealth of Puerto Rico.

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 41

ARTICLE XX: <u>Choice of Law and Venue</u>

This Contract shall be governed, construed, and enforced in accordance with the laws of the Commonwealth of Puerto Rico, without regard to its conflict of laws rules. All actions and proceedings arising out of or relating to this Contract will be heard and determined in the United States District Court for the District of Puerto Rico ("USDCPR"), and the parties hereby irrevocably submit to the jurisdiction of such court in any such action or proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such action or proceeding. In the event that the USDCPR does not have jurisdiction over any action or proceeding, the parties agree that such action or proceeding will be heard and determined in the courts of the Commonwealth of Puerto Rico with jurisdiction.

THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS CONTRACT OR THE ACTIONS OF ANY PARTY OR THEIR RESPECTIVE REPRESENTATIVES IN THE NEGOTIATION OF PERFORMANCE HEREOF.

ARTICLE XXI: <u>Code of Ethics</u>

FREEPOINT agrees to comply with the provisions of Act 84, of the 18th of June 2002, which establishes a Code of Ethics for contractors, suppliers and economic incentive applicants of the executive agencies of the Commonwealth of Puerto Rico.



Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 42

ARTICLE XXII: Modification and Novation

No modification, change, renewal, extension, discharge, or waiver of this Contract, or any of the provisions herein contained, shall be valid and binding except by a written, mutual agreement of the parties signed by a duly authorized officer of each party.

PREPA and FREEPOINT expressly agree that no amendment which could be made to this Contract, during its term, shall be understood as a contractual novation, unless both parties agree to the contrary specifically and in writing. The previous provision shall be equally applicable in such other cases where PREPA gives FREEPOINT a time extension for the compliance of any of its obligations under this Contract, or where PREPA dispenses the claim or demand of any of its credits or rights under this Contract.

ARTICLE XXIII: Sworn Statement

Prior to the execution of this Contract, FREEPOINT shall submit to PREPA a sworn statement, as provided in Exhibit E of this Contract, to the effect that, as of the effective date, neither FREEPOINT nor any of its subsidiaries or any entity that constitutes the alter ego, or any president, vice president, executive director, board of directors' member, board of officers' member, or any person performing equivalent functions for any of those entities, has been convicted of, nor has pled guilty to, any crime as enumerated in Article 3 of Act 458, of the 29th of December 2000, as amended. In accordance with Article 6 of Act 458, of the 29th of December 2000, as amended, FREEPOINT acknowledges that the conviction or guilty plea of

Contract 902-02-15 – No. 6 Fuel Oil – Aguirre, Costa Sur, San Juan and Palo Seco
Page 43

any of those persons or entities for any of the crimes as enumerated in Article 3 of such Act 458 shall entail, in addition to any other applicable penalty, the automatic rescission of this Contract. In addition, but only to the extent required by Act 458, of the 29th of December 2000, PREPA shall have the right to demand the reimbursement of payments made pursuant to this Contract that directly result from the committed crime.

ARTICLE XXIV: Separability

If a court of competent jurisdiction declares any of this Contract's provisions as null or invalid, such holding will not affect the validity and effectiveness of the remaining provisions of this Contract and the parties agree to comply with their respective obligations under such provisions not included by the judicial declaration.

ARTICLE XXV: Entire Contract

This Contract constitutes the entire agreement of the parties as to the subject matter, and supersedes any and all prior agreements between Puerto Rico Electric Power Authority and Freepoint Commodities LLC.

IN WITNESS WHEREOF, the parties hereto have caused this Contract to be duly executed as of July 31, 2015, in San Juan, Puerto Rico.

FREEPOINT COMMODITIES LLC

Brandon Diket
Director

PUERTO RICO ELECTRIC
POWER AUTHORITY

Carlos Javier Castro Montalvo
Acting Executive Director

EXHIBIT A

## FUEL OIL SPECIFICATIONS NO. 6

| PARAMETER | ASTM METHOD | MINIMUM | MAXIMUM |
|---|---|---|---|
| Sampling | D-4057 | 3 levels composite | (UML) |
| Gravity, API Degree at 60° F | D-1298 | 10.5 | 18 |
| Viscosity, SFS at 122° F | D-445 D-88 | 90 | 350 |
| Water plus Sediment, % vol. | D-95 + D-473 | | 1.0 |
| Flash Point, Degrees F, PMCT | D-93 | 150 | |
| Sulfur, % weight [1] | D-4294 | | 0.50 |
| Ash, % weight | D-482 | | 0.1 |
| Asphaltenes, % weight | D-3279 | | 8.0 |
| Pour Point, Degrees F | D-97 | | 60 |
| Sodium plus Potassium, PPMW [2] | D-1318 | | 35 |
| Vanadium, PPMW | D-1548-92-e1 D-5708 D-5863-A | | 150 |
| Calcium, PPMW | D-5863-B | | 75 |
| Heating Value, BTU/gal. (gross) at 60° F | D-240 | 150,000 | |

Latest published ASTM methods shall be used for all tests where test year is omitted.

[1] Reproducibility and repeatability must be taken into consideration in order to comply with the maximum sulfur percent weight specification. Additional Top, Middle, and Bottom analysis shall be performed to insure cargo is homogeneous.

[2] Method D-1318-83 for sodium analysis, however, sodium as well as potassium can be analyzed by other acceptable atomic absorption or spectrometric analysis.

EXHIBIT B

## SAMPLE CALCULATION
## BTU DEFICIENCY ADJUSTMENT

Example of calculation to determine credit due to PREPA if FREEPOINT supplies fuel of lower than the guaranteed Btus per gallon value.

The guaranteed value is 150,000 Btus per gallon of fuel measured at 60° F.

Assume FREEPOINT delivers 5,000 barrels of fuel measured at 60° F.

Assume the inspector's certificate of the fuel delivered indicates an API degree of 15.8 measured at 60° F which is equivalent to 8.0 lbs. Per gallon and assume a heating value of 17,500 Btus per pound, or a fuel that measures 140,000 Btus per gallon measured at 60° F, (8.00 lbs./gallon) (17,500 Btus/lbs.) = 140,000 Btus/gallon.

Therefore:

For each U.S: gallon the guaranteed value is of 150,000 Btus/gallon.

Actual Btus delivered were 140,000 Btus/gallon. Total barrels delivered were 5,000 barrels. To calculate the equivalent barrels deficiency divide the difference of Btus/gallon received by the guaranteed minimum and multiply this fraction by the delivered volume.

Example:

(5,000 barrels) x ((150,000 - 140,000) / 150,000) = 333.33 bbl. (deficiency)

EXHIBIT C

## SAMPLE CALCULATION
## ESCALATION FACTOR

|  | Platt's Oilgram Price Report | |
|---|---|---|
|  | 0.3% S HiPr | 0.7% S |
| Jan 12, 2015 | 53.66 – 53.68 | 44.06 – 44.08 |
| Jan 13, 2015 | 53.11 – 53.13 | 43.86 – 43.88 |
| Jan 14, 2015 | 54.11 – 54.13 | 45.11 – 45.13 |

**FIRST STEP: AVERAGE**

Platt's 0.3% S HiPr Average $\frac{(53.66 + 53.68 + 53.11 + 53.13 + 54.11 + 54.13)}{6} = 53.6367$

Platt's 0.7% S Average $\frac{(44.06 + 44.08 + 43.86 + 43.88 + 45.11 + 45.13)}{6} = 44.3533$

**SECOND STEP: INTERPOLATION AND FINAL CALCULATION**

Platt's 0.5% S Interpolation = 0.5 (0.3% S HiPr Average) + 0.5 (0.7% S Average)
= 0.5 (53.6367) + 0.5 (44.3533)

Escalation Factor for a delivery
Commencing on Jan 13, 2015 = 26.81833 + 22.17667 = 48.9950 ($/bbl)

EXHIBIT D

## TERMINAL SERVICES AGREEMENT

AS FIRST PARTY: The Puerto Rico Electric Power Authority, hereinafter referred to as "PREPA", a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Acting Executive Director, Carlos Javier Castro Montalvo, of legal age, married, professional engineer, and resident of Guaynabo, Puerto Rico.

AS SECOND PARTY: Freepoint Commodities LLC, hereinafter referred to as "FREEPOINT", a limited liability company organized and existing under the laws of Delaware, authorized to do business in Puerto Rico, duly registered as a supplier to PREPA, represented in this act by its Director, Brandon Diket of legal age, married, and resident of Riverside, Connecticut, duly authorized to sign this Contract by virtue of the Certificate of Incumbency and authorization dated as of February 2nd, 2015.

## WITNESSETH

WHEREAS, in consideration of the mutual desire of the parties to enter into an Agreement whereby PREPA will provide FREEPOINT the use of its Terminal Services Agreement with CORCO for the duration of the Fuel Oil Purchase Contract between the parties.



WHEREAS, PREPA hereby recognizes that all CORCO's responsibilities as described in this Terminal Services Agreement shall be considered PREPA's responsibilities, as it is the party in this Agreement.

WHEREAS, PREPA's failure to provide these terminal facilities and related services shall constitute a default as specified in Article IV (Delivery and Title), Paragraph A, of the Fuel Oil Purchase Contract.

The use of these facilities will be as follows:

ARTICLE I: Facilities Designated for Service

A.  The tanks designated by CORCO for service to PREPA and the ancillary equipment that comprise the petroleum products storage system are suitable for the safe storage and handling of products. CORCO shall assume all costs arising from, or related to, the ownership or operation of all tanks, pipelines/piping and ancillary equipment that are part of the facilities.

The designated tanks and shell capacity of the same are as follows:

Tank 901:   268,000 barrels

Tank 903:   268,000 barrels

Tank 1007:   350,000 barrels

B.  CORCO may designate alternate above-ground storage facilities of comparable size in the event CORCO requires the utilization of the tanks that have been designated for service to PREPA.  CORCO may temporarily retire one or more

tanks designated for service to PREPA if such tank or tanks require repairs or normal maintenance.  In such an event, CORCO will notify PREPA and PREPA will notify FREEPOINT at least two (2) weeks in advance of the tank or tanks retirement, except that in case of emergency, and/or a Force Majeure event, such two (2) weeks advance notice will be waived.  In either case, CORCO will return the tank or tanks for immediate use as soon as the normal maintenance or repairs has been successfully accomplished.

In case CORCO retires one or more tanks designated for service to FREEPOINT, CORCO shall designate alternate above-ground storage of comparable size at the same terminal; and PREPA shall reimburse FREEPOINT for any damage to its product as a result of any movements to alternate tanks.  Otherwise, if FREEPOINT needs to lease tanks in another facility to comply with the Fuel Oil Purchase Contract, PREPA shall reimburse FREEPOINT for any additional costs, including costs related to tank bottoms, and expenses related thereto.

ARTICLE II: Fees and Expenses

A.  Storage Fee: FREEPOINT agrees to pay PREPA a storage fee of 0.479651 US dollars per shell barrel per month ($/bbl/month), based on the shell capacity of the tanks.

B.  Unloading fee: FREEPOINT agrees to pay PREPA an unloading fee of 0.053601 US dollars per barrel ($/bbl) for receiving the product from FREEPOINT's designated tanker/vessel/barge into CORCO's tanks, or 0.078343 US dollars per barrel ($/bbl) if delivered directly into PREPA's tanks at its Costa Sur steam plant.



C. Loading fee: FREEPOINT agrees to pay PREPA a loading fee of 0.053601 US dollars per barrel ($/bbl) for loading FREEPOINT's product or products onto a tanker/vessel/barge.

D. Blending fee: FREEPOINT agrees to pay PREPA a blending fee of 0.002151 US dollars per shell capacity in barrels per hour ($/shell bbl/hour) when CORCO provides tank blending services at its facilities at FREEPOINT's request.

E. Tank-to-tank transfer fee: FREEPOINT agrees to pay PREPA a tank-to-tank transfer fee of 0.024745 US dollars per barrel ($/bbl) for the product or products transferred from FREEPOINT's designated tank or tanks to any other tank or tanks located inside CORCO's facilities, except to the extent such transfer is conducted in accordance with Section 1(B) above.

F. Wharfage and dock maintenance fees: FREEPOINT agrees to pay PREPA wharfage and dock maintenance fees of 0.020619 US dollars per barrel for every barrel of product loaded or discharged at the CORCO docks.

G. Dockage fee: FREEPOINT agrees to pay PREPA a dockage fee of 0.107689 US dollars per gross register ton per twenty four (24) hours ($/ton/24hour), or fraction thereof, when FREEPOINT's designated tankers/vessels/barges are docked at CORCO's facilities.

H. All of these fees shall automatically increase each year on the 1st of February, beginning on the 1st of February 2016, by the same percentage increase of the All Items category of the Consumer Price Index for all urban consumers (seasonally adjusted), as published by the Bureau of Labor Statistics of the U. S. Department of Labor (the "CPI") for the period ended on the immediately preceding 31st of



December, over the CPI for the period ended the 31st of December for the prior year; provided, however, that the annual increase in such fees shall be no less than 3% and no greater than 4%. If the CPI is not calculated in either such months, then the fees shall be increased by 3.5% for any such year.

ARTICLE III: <u>Payment Terms</u>

PREPA agrees to invoice the storage fee to FREEPOINT in advance, on or before the first (1st) business day of each calendar month, and to invoice the handling fees (all the fees other than the storage fee) on or before the tenth (10th) calendar day of each month.

FREEPOINT agrees to pay the storage and handling fees outlined in this Agreement by the fifth (5th) working day after receipt of invoice. All payments will be made by telegraphic transfer in immediately available US dollars, to the following account:

PUERTO RICO ELECTRIC POWER AUTHORITY
CITIBANK, NY - ABA NO. (ROUTING) 021-000089
CITIBANK, PR ACCOUNT NUMBER 0-400015-015

FREEPOINT shall at the time of this telegraphic transfer notify PREPA Fuels Office and subsequently send a copy of this telegraphic transfer within five (5) working days of payment to PREPA Fuels Office, in each case, by e-mail to erodriguez@PREPA.com, k-melendez@PREPA.com and ce-torres@PREPA.com.

PREPA acknowledges and agrees that consistent with the Contract, PREPA will not reduce, offset or counterclaim in any manner any amounts owed by FREEPOINT hereunder from any invoice created under the Contract.

ARTICLE IV: <u>Services</u>

In consideration of the above fees, CORCO shall provide the following services:

1.  Receipt of FREEPOINT's nominated tankers/vessels/barges at CORCO's Guayanilla dock and the delivery of the product or products to PREPA's designated tank or tanks and/or other vessels.

2.  Transfer of the product or products via pipeline, tanker/vessel/barge, or to PREPA's day tank or final tank facilities located at PREPA's South Coast ("Costa Sur") Plant.

3.  Daily inventory and throughput figures handled in the system per calendar month.

4.  CORCO will provide the services of an independent inspector, for product quality and quantity determination at the facilities, whose findings shall be binding on both parties and the cost shall be borne by CORCO. FREEPOINT shall have the right to appoint an independent inspector to witness any inspection services provided by CORCO.

5.  Subject to the terms of this Agreement, CORCO shall use commercially reasonable efforts to maintain the tanks and all handling and delivery facilities in a satisfactory condition and working order, so as to be able to promptly load, discharge and/or transfer the products. Each tank shall be capable to be filled to at least ninety percent (90%) of its shell capacity. In those cases where a tank cannot be filled to ninety percent (90%) of its shell capacity, then the shell capacity of said tank shall be reduced by the equivalent volume deficiency for payment purposes of the storage fee.

6.  FREEPOINT, CORCO and PREPA shall each by itself be responsible for all reporting to, and compliance with, all the various governmental agencies that the

law and/or other applicable regulations may require from either FREEPOINT, CORCO or PREPA. Reporting to the proper authorities of entries and withdrawals involving the Foreign Trade Zone, along with reporting any oil spill within the facilities, shall be CORCO's sole responsibility.

Additional facility requirements: if any additional services or equipment not then available at the facility are required in order to continue providing services to PREPA or expand FREEPOINT's business operations at the facility (including, without limitation, services or equipment required by governmental agencies) under this Agreement, CORCO will notify FREEPOINT and PREPA of whether CORCO will provide such additional services or equipment within thirty (30) days after the earlier of: (i) the request from FREEPOINT to provide such services or equipment, or (ii) the receipt by CORCO of notice that additional services or equipment are required by a governmental agency. Failure to notify the parties within this thirty (30) day period will constitute CORCO's election not to provide such additional services or equipment. In the event that CORCO determines not to provide such services or equipment, FREEPOINT will have the right to install or construct additional equipment (at FREEPOINT's sole cost) and obtain or provide such additional services (at FREEPOINT's sole cost) at the terminal for FREEPOINT's use, provided that such services or equipment do not unreasonably interfere with CORCO's operations with respect to CORCO's other customers. In the event that FREEPOINT installs or constructs any additional equipment, FREEPOINT will have an exclusive property right over the additional equipment, and CORCO will have a non-exclusive right, for a mutually agreed upon fee, to use such equipment for itself



and its customers, but only to the extent that such use does not interfere with FREEPOINT's use of such equipment for its own operations. In the event that neither CORCO nor FREEPOINT provide such services or equipment, and CORCO's ability to provide the affected services to FREEPOINT under this Agreement would therefore be materially impaired, performance by CORCO of the affected services shall be suspended immediately, without any liability to FREEPOINT, CORCO or PREPA.

ARTICLE V: <u>Dock Regulations and Restrictions</u>

Deliveries through the CORCO dock, at present, are limited as follows:

| DWT   | 82,000 tons |
|-------|-------------|
| LOA   | 840 feet    |
| BCM   | 425 feet    |
| DRAFT | 42 feet sw  |

ARTICLE VI: <u>Marine Provisions</u>

A ship berth at CORCO shall be provided to FREEPOINT's vessel. However, all port charges, including but not limited to, pilot fees, line handlers, cargo hose connections, taxes, duties, or other expenses related to the vessel shall be for the account of the vessel or of FREEPOINT through their designated agencies. In order for CORCO to provide services under this Agreement, all vessels (ships and barges) handling products under this Agreement shall always be in compliance with all US Coast Guard Regulations. CORCO, at its cost, shall supply a US Coast Guard certified "person in charge" and all other necessary persons for the safe receipt of the product.

PREPA warrants that it shall provide, or cause CORCO to provide, a safe berth where FREEPOINT's vessel may at all times, lie safely afloat.

## ARTICLE VII: Notices

FREEPOINT shall give CORCO notice of seventy two (72) hours, forty eight (48) hours, and twenty four (24) hours before it nominates vessels arriving at CORCO's Guayanilla dock. Said notices shall be sent via fax and be directed to the CORCO's facility.

It is understood and agreed that it is the practice of CORCO to load and unload vessels at the docks in order of their arrival to the CORCO sea-buoy, subject to the availability of the docks.  Notices to be given under this Agreement shall be deemed properly served on each other when delivered in writing personally, by certified mail, by fax machine, or by e-mail.

## ARTICLE VIII: Title

Title to the product stored and handled at CORCO shall remain with FREEPOINT. CORCO shall be deemed to have custody of the product from the time it passes the flange connection between the vessel's delivery line and CORCO's receiving line and until it passes the flange connection between CORCO's delivery line and FREEPOINT's nominated vessel, barge or pipeline.

ARTICLE IX – <u>FORCE MAJEURE</u>

The parties hereto shall be excused from performing hereunder and shall not be liable for damages or otherwise, if and only to the extent that they shall be unable to perform, or are prevented from performing by a Force Majeure event, provided, however, that neither party shall be excused by reason of Force Majeure from the obligation to make any payment due to the other party for more than ten (10) days after said payment is due.  For purposes of this Agreement, Force Majeure means any cause without the fault or negligence, and beyond the reasonable control of, the party claiming the occurrence Force Majeure event.  Force Majeure may include, but not be limited to, the following: Acts of God, strikes not related or provoked by any action taken by CORCO, industrial disturbances, acts of the public enemy, war, blockages, boycotts, riots, insurrections, epidemics, earthquakes, storms, floods, civil disturbances, lockouts, fires, explosions, interruption of services due to acts or failures to act of any governmental authority. Interference by, or restrictions or onerous regulations imposed by civil or military act or some constitution, decree, law, or otherwise, condemnation, failure of any subcontractor or supplier to perform, provided that these events or any other claimed as Force Majeure, and/or its effects, are beyond the reasonable control of the party claiming the Force Majeure.  The burden of proof as to whether a Force Majeure has occurred shall be on the party claiming the Force Majeure.

If either party is rendered wholly or partly unable to perform its obligations under this Agreement because of Force Majeure, that party shall be excused from whatever performance is affected by the Force Majeure to the extent so affected, provided that: (i) the non-performing party, within ten (10) days after the occurrence of the Force

Majeure, gives the other party written notice describing the particulars of the occurrence and its estimated duration; (ii) the suspension of performance be of no greater scope and of no longer duration that is required by the Force Majeure; (iii) no obligations of either party which arose prior to the Force Majeure be excused as a result of the Force Majeure; and (iv) the Force Majeure party use its best efforts to remedy its inability to perform and resume in full its performance under this Agreement, provided that this obligation shall not require the settlement of any strike, walkout, lockout or other labor dispute on terms which, in the sole judgment of the party involved in the dispute, are contrary to its interest.

## ARTICLE X - ENTIRE AGREEMENT

The terms and conditions set forth in this Agreement comprise the entire Agreement between the parties, and changes or modifications to the same must be approved in writing by both parties.

## ARTICLE XI - GOVERNING LAWS

This Agreement shall be governed and construed according to the laws of the Commonwealth of Puerto Rico and applicable U.S. Federal Law.  Also the parties expressly agree that only the state courts of Puerto Rico will be the courts of competent and exclusive jurisdiction to decide over the judicial controversies that the appearing parties may have among them regarding the terms and conditions of this Agreement.

ARTICLE XII - <u>LIABILITY</u>

The parties agree that their responsibilities for damages under this Agreement will be governed by the <u>Puerto Rico Civil Code</u> and its case law, as dictated by the Supreme Court of Puerto Rico.

ARTICLE XIII - <u>ASSIGNMENT</u>

This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of each of the parties hereto.

This Agreement shall not be assigned, in whole or in party, by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld, except that either party may assign to it an affiliate or a subsidiary corporation. No such assignment shall relive the assigning party of any of its obligations under this Agreement.

ARTICLE XIV - <u>CONFIDENTIALITY</u>

The terms of this Agreement shall not be disclosed to any third parties, except as required by law or regulation, without the prior consent of the other party. Notwithstanding anything herein to the contrary, this Article shall in no way restrict communication or the provision of this agreement or information to Freepoint's receivable assignee.

ARTICLE XV - <u>SEPARABILITY</u>

Any article or provision declared or rendered unlawful by a court of law or regulatory agency with jurisdiction over the parties or deemed unlawful because of a statutory change will not otherwise affect the lawful obligations that arise under this Agreement.

ARTICLE XVI - <u>OTHER</u>

FREEPOINT and PREPA expressly agree that no amendment or change order which could be made to this Agreement, during its term, shall be understood as a contractual novation, unless both parties agree to the contrary, specifically and in writing.

The previous provision shall be equally applicable in such other cases where PREPA gives FREEPOINT a time extension for the compliance of any of its obligation under this Agreement, or where PREPA dispenses the claim or demand of any of its credits or rights under this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Contract to be duly executed as of _July 31_____, 2015, in San Juan, Puerto Rico.


FREEPOINT COMMODITIES LLC                    PUERTO RICO ELECTRIC
                                             POWER AUTHORITY

Brandon Diket                                Carlos Javier Castro Montalvo
Director                                     Acting Executive Director



2016-P00009A
FIRST AMENDMENT TO
FUEL PURCHASE CONTRACT 902-02-15

**AS FIRST PARTY:**   The Puerto Rico Electric Power Authority, hereinafter referred to as "PREPA", a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Executive Director, Javier Antonio Quintana Méndez, of legal age, married, professional engineer, and resident of Guaynabo, Puerto Rico.

**AS SECOND PARTY:** Freepoint Commodities LLC, hereinafter referred to as "FREEPOINT", a limited liability company organized and existing under the laws of Delaware, authorized to do business in Puerto Rico, duly registered as a supplier to PREPA, represented in this act by its Director, Brandon Diket of legal age, married, and resident of Riverside, Connecticut, duly authorized to sign this Contract by virtue of the Certificate of Incumbency and authorization dated as of February 2, 2015.

**WITNESSETH**

**WHEREAS:**  The appearing parties executed the Contract No. 902-02-15, hereinafter referred to as the "Contract", on July 31, 2015 for the supply of residual No. 6 Fuel Oil at San Juan, Palo Seco, Aguirre and Costa Sur steam plants.

**WHEREAS:**   Article I (Scope and Term of Contract) states that the Contract will become effective on the date of its signature, and will be in effect for a period of one (1) year starting from the commencement date as notified by PREPA (the "Initial Term").   On September 3, 2015, PREPA notified FREEPOINT that the commencement date of the Contract was October 1, 2015.  Therefore, the Contract's Initial Term expires on September 30, 2016.

**WHEREAS:**  As per Article I, Section C, the Contract is subject to one (1) automatic extension of one (1) year unless either party indicates its intention that said automatic extension does not

[NEWYORK 3213794_5]

First Amendment to Fuel Purchase Contract No. 902-01-13
Page 2

occur by providing the other party with written notice at least one hundred and twenty (120) days before the expiration of the Initial Term (a "Non-Extension Notice").

**WHEREAS**:    Article XXII (Modifications and Novation) of the Contract states that no modification, change, renewal, extension, discharge, or waiver of the Contract, or any of the provisions herein contained, shall be valid and binding except by a written, mutual agreement of the parties signed by a duly authorized officer of each party.  PREPA and FREEPOINT expressly agreed that no amendment which could be made to the Contract, during its term, shall be understood as a contractual novation, unless both parties agree to the contrary specifically and in writing. The previous provision shall be equally applicable in such other cases where PREPA gives FREEPOINT a time extension for the compliance of any of its obligations under this Contract, or where PREPA dispenses the claim or demand of any of its credits or rights under the Contract.

**WHEREAS**:  The parties are currently undergoing a negotiation process to renew the Contract for one (1) additional year in accordance with Article 1, Section C.  While the parties continue to discuss and resolve certain issues in connection with such renewal of the Contract, the parties have agreed to extend the expiration of the Initial Term until October 31, 2016.  Accordingly, the deadline for the parties to provide a Non-Extension Notice is extended until July 3, 2016.

**NOW, THEREFORE**, in consideration of the foregoing and of the mutual covenants herein stated, the receipt and sufficiency of which are hereby acknowledged, PREPA and FREEPOINT hereby agree to amend the Contract pursuant to this First Amendment to the Contract (this "First Amendment") as follows:

Unless otherwise defined herein or amended hereby, capitalized terms used herein which are defined in the Contract shall have the meanings ascribed to them in the Contract.

**Section 1.**  This First Amendment amends the Contract as follows:

[NEWYORK 3213794_5]



First Amendment to Fuel Purchase Contract No. 902-01-13
Page 3

(a)  The parties hereby agree to extend the expiration of the Initial Term until October 31, 2016. Accordingly, the deadline for the parties to provide a Non-Extension Notice is extended until July 3, 2016.

**Section 2**.    The Contract, as amended by this First Amendment, constitutes the entire agreement between the appearing parties regarding the subject matter hereof and supersedes any prior agreements, including any deemed agreements, among the parties regarding the subject matter hereof.  Except as expressly amended by this First Amendment, the provisions of the Contract are and shall remain in full force and effect without modification, and are hereby ratified.

[*Signature Page follows*]

[NEWYORK 3213794_5]



IN WITNESS THEREOF, the parties hereto have caused this First Amendment to be duly executed as of ___2 June___, 2016.


Freepoint Commodities LLC

Brandon Diket
Director


PUERTO RICO ELECTRIC
POWER AUTHORITY

Javier Antonio Quintana Méndez
Executive Director

[Signature Page to First Amendment to Contract]

2016-P00009B

## RENEWAL AND SECOND AMENDMENT OF
## FUEL PURCHASE CONTRACT 902-02-15

**AS FIRST PARTY:**  The Puerto Rico Electric Power Authority, hereinafter referred to as "PREPA" a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Executive Director, Javier Antonio Quintana Méndez, of legal age, married, professional engineer, and resident of Guaynabo, Puerto Rico.

**AS SECOND PARTY:**  Freepoint Commodities LLC, hereinafter referred to as "FREEPOINT", a limited liability company organized and existing under the laws of Delaware, authorized to do business in Puerto Rico, duly registered as a supplier to PREPA, represented in this act by its Director, Brandon Diket of legal age, married, and resident of Riverside, Connecticut, duly authorized to sign this Contract by virtue of the Certificate of Incumbency and authorization dated as of February 2nd, 2015.

### WITNESSETH

**WHEREAS:**  The appearing parties executed the Contract No. 902-02-15, hereinafter referred to as "the Contract", on July 31, 2015 for the supply of residual No. 6 Fuel Oil at San Juan, Palo Seco, Aguirre and Costa Sur steam plants.

**WHEREAS**:  Article I, Scope and Term of Contract, states that it will become effective on the date of its signature, and will be in effect for a period of one (1) year after the commencement date as notified by PREPA.  The commencement date, as notified by PREPA was October 1, 2015.

**WHEREAS**:  On June 2nd, 2016, the parties executed an amendment to the Contract to extend the expiration of the Initial Term until October 31, 2016.

**WHEREAS**:  As per Article I, Section C, the Contract it is subject to one (1) automatic extension of one (1) year unless either party indicates its intention that said automatic extension does not



Second Amendment Fuel Purchase Contract No. 902-02-15
Page 2

occur by providing the other party with written notice at least one hundred and twenty (120) days before the expiration of the Initial Term (a "Non-Extension Notice").

**WHEREAS**:   As per Article I, Section C, of the Contract, The parties agree to allow the automatic renewal to occur.  Therefore, the Contract will be renewed and will be in effect until October 31, 2017.

**WHEREAS**:    Article XXII, <u>Modifications and Novation</u>, of the Contract states that No modification, change, renewal, extension, discharge, or waiver of this Contract, or any of the provisions herein contained, shall be valid and binding except by a written, mutual agreement of the parties signed by a duly authorized officer of each party.   PREPA and FREEPOINT expressly agree that no amendment which could be made to this Contract, during its term, shall be understood as a contractual novation, unless both parties agree to the contrary specifically and in writing. The previous provision shall be equally applicable in such other cases where PREPA gives FREEPOINT a time extension for the compliance of any of its obligations under this Contract, or where PREPA dispenses the claim or demand of any of its credits or rights under this Contract.

**THEREFORE**, the appearing parties agree to amend Contract No. 902-02-15 as per the following:

TERMS AND CONDITIONS



**FIRST:** The parties agree to amend Article II, Section D. iii to read in its entirety as follows:

    *(iii) Triggering Event, or*

**SECOND:** The parties agree to amend the Article IX, Section A to read in its entirety as follows:

    *The price for the fuel to be supplied under this Contract includes all taxes, fees or established import tariffs, and will be subject to on the Initial Term ultimately chosen from*



Second Amendment Fuel Purchase Contract No. 902-02-15
Page 3

_the options outlined in Article I (Scope and Term of Contract), paragraph B. Such price is
to be determined as follows:_

_The price to be paid for each barrel of fuel delivered throughout the entire duration of the
Initial Term will consist of an escalator plus a price differential, with a credit term of forty-
two (42) days (the "Credit Term"); provided that if and only if PREPA has delivered the
Temporary Term Increase Certificate (attached as Exhibit A) in connection with any
invoice and made the representation in Article XII(M)(i), the Credit Term shall be
extended, for that invoice only, to seventy-two (72) days following issuance of the
invoice thereof._

_Subject to Article IX(K), the fixed price differential shall be, in US dollars per barrel for all
deliveries under this Contract, (i) discounted to $5.71 for San Juan and Palo Seco Plants
and $7.78 for Aguirre and Costa Sur Plants (the "Discount Differential") if the invoice is
paid early on or before the date which is ten (10) days prior to the Credit Term following
issuance thereof (the "Early Payment Discount Period"), or (ii) $17.71 for San Juan and
Palo Seco and $19.78 for Aguirre and Costa Sur Plants (the "Full Differential") if the
invoice is paid at any time before, on, or after the date which is the last day of the Credit
Term (the "Full Payment Period")._

_Price differentials will be added to the escalator to obtain the final fuel price._

_On and after one hundred and twenty (120) days prior to the expiration of the Agreement
Freepoint shall have the right to reduce the Credit Term, the Early Payment Discount
Period, the Full Payment Period and the Credit Limit after first meeting and conferring
with PREPA._

_On the condition that PREPA has timely performed all of its obligations under the
Contract, including payment in full in cash through wire transfers or other fund transfers_

Second Amendment Fuel Purchase Contract No. 902-02-15
Page 4

---

*of all invoices (excluding the final two invoices) by within the Credit Term, PREPA shall receive a credit against the final two invoices as applicable in an amount equal to the product of $0.27 and the number of barrels delivered to PREPA on and after September 1st, 2016.*

**THIRD:** The parties agree to amend Article XII Section G to read in its entirety as follows:

*PREPA will include in both the Annual Budget (as defined in such Trust Agreement) and PREPA's internal annual budget (together with the Annual Budget, the "Budgets") the payment in full of all amounts expected to be due under this Contract as "Current Expenses". Without limiting Article XII.I, to the extent PREPA chooses to reflect such amounts in the Budgets at the Discount Differential (as opposed to the Full Differential), PREPA will include in the Budgets, the following footnote: "This amount reflects PREPA obtaining a contractual early payment discount by paying all fuel invoices within ten (10) days prior to the credit term."*

**FOURTH:** The parties agree to amend Article XII, Section M to read in its entirety as follows:

*As of the date hereof, and at the time of any delivery hereunder, PREPA represents and warrants to one of the following: (i) a Specified Event has not occurred, and PREPA does not have current intentions to cause a Specified Event within 72 days, and PREPA has no actual knowledge that a Specified Event will occur within 72 days, or (ii) a Specified Event has not occurred and PREPA does not have current intentions to cause a Specified Event within 72 days, and PREPA has no actual knowledge that a Specified Event will occur within 72 days unless (x) such Specified Event is a Qualified Specified Event and (y) it believes in good faith that any such Specified Event will constitute a Qualified Specified Event.*

*A.   "Specified Event" shall be any of the following events:*

Second Amendment Fuel Purchase Contract No. 902-02-15
Page 5

a.   *The commencement of any debt adjustment proceeding, reorganization proceeding, bankruptcy proceeding, proceeding under Title III of Puerto Rico Oversight, Management, and Economic Stability Act (as reflected in HR 5278 or any subsequent version or similar law or legislation) ("PROMESA"), insolvency proceeding, dissolution or wind-up proceeding, proceeding under the Recovery Act, or any similar proceeding (including the occurrence of a general assignment, arrangement or composition with or for the benefit of PREPA's creditors or the appointment of a receiver, administrator or similar officer for some or all of PREPA's assets).*

b.   *(i) The announcement, declaration or implementation of a moratorium or stay with respect to PREPA or the payment of any portion of PREPA's debts, unless (x) such debts are the subject of a consensual forbearance that is in effect and continuing or (y) such moratorium or stay (or solely with respect to a moratorium under the Puerto Rico Emergency Moratorium and Rehabilitation Act, provided such act has not been amended from the date hereof to expressly exclude any other debt or obligations of PREPA, any irrevocable executive order issued by the office of the sitting Governor in respect thereof) expressly provides it covers or effects only indebtedness for borrowed money or does not cover or effect any obligations under this Agreement or any fuel supply contract (other than with respect to the enforcement of "ipso facto" provisions); (ii) PREPA is generally not paying its non-borrowed moneydebts as they come due; (iii) creditors of PREPA have taken acts (x) to enforce their rights or remedies, including, without limitation, acts taken against PREPA resulting from a default or an event of default under the Trust Agreement, a*

Second Amendment Fuel Purchase Contract No. 902-02-15
Page 6

credit agreement or trade finance facility agreement; provided, however, that the delivery of a notice of default or notice of an event of default or participation in an action to adjust PREPA's electricity rates shall not constitute an action by a creditor to enforce its rights or remedies for purposes of this clause, or (y) that seek to adversely impact or delay PREPA's performance of or compliance with its obligations under this Agreement; (iv) PREPA is unable by virtue of legislation, rule, policy, stay, moratorium, injunction or any other similar act to pay its debts as they become due; or (v) the termination of the Restructuring Support Agreement, dated as of January 27, 2016 (as it may be amended) by and among PREPA and certain of its creditors, unless and until such agreement is reinstated or a similar forbearance agreement is executed (clauses (i), (ii), (iii),(iv), and (v) each a "Trigger Event").

c.   Any resolution, authorization or steps to implement any of the foregoing by the United States (other than the enactment of PROMESA), PREPA, the GDB or the Commonwealth, or any duly appointed oversight board.

A "Qualified Specified Event" shall mean a Specified Event that will not have any impact or delay on PREPA's performance of its obligations under this Agreement and PREPA's obligations hereunder, whether because (A) the Agreement is assumed pursuant to an order of a court of competent jurisdiction under the United States Bankruptcy Court and all obligations due hereunder have been paid in full in cash through wire transfers or other fund transfers in accordance with their terms; (B) Freepoint is designated a critical vendor in connection with a Specified Event that is a case under chapter 9 of the United States Bankruptcy Code or Title III of PROMESA, (C) Freepoint is designated as an unaffected creditor in connection with a Specified Event that is in a case commenced

Second Amendment Fuel Purchase Contract No. 902-02-15
Page 7

*under Recovery Act, (D) the obligations under this Agreement are specifically designated to be paid pursuant to an order of a court of competent jurisdiction in connection with a Specified Event that is the appointment of a receiver (under the Trust Agreement, Act No. 83 of 1941, as amended, or otherwise), or (E) Freepoint and the obligations under this Agreement are otherwise designated pursuant to legislation, court order, or in another binding manner (reasonably satisfactory to Freepoint), to be unaffected in the same manner as if Freepoint were designated as a critical vendor in a case under chapter 9 of the United States Bankruptcy Code or unaffected debt under Recovery Act; provided, however, that a Specified Event caused solely by a Trigger Event shall constitute a Qualified Specified Event so long as PREPA has reasonably concluded that there will not be any adverse impact or delay on PREPA's performance of or compliance with its obligations under this Agreement as a result of or in connection with such Trigger Event; provided, further, that any event described in this Article XII(M) shall no longer constitute a Specified Event or a Qualified Specified Event in the event that this Agreement and all obligations hereunder (including, for the avoidance of doubt, all outstanding fuel payables) have been expressly assumed by PREPA pursuant to an order of a court of competent jurisdiction (which order shall not be stayed, vacated or revoked) and all obligations due hereunder have been paid in full in cash through wire transfers or other fund transfers in accordance with their terms.*

**FIFTH:** The parties agree to amend Article IX, Section C to read in its entirety as follows:

*Should PREPA fail to pay any invoice by the end of the Early Payment Discount Period, FREEPOINT may, at its own discretion, suspend any and all deliveries to PREPA. Where FREEPOINT suspends deliveries pursuant to this Section (C), if PREPA pays such invoice by the Credit Term, FREEPOINT shall resume deliveries to PREPA. Any*

*costs including but not limited to demurrage due to this suspension of delivery shall be borne by PREPA.*

**SIXTH**: The parties agree to amend Article IX, Section D to read in its entirety as follows:

*Should PREPA fail to pay any invoice within two (2) calendar days following the applicable Credit Term, or if the Credit Limit is exceeded, FREEPOINT may, at its own discretion, terminate this Contract as provided in Article II (Termination or Insolvency), paragraph A(i).*

**SEVENTH**: The parties agree to amend Article IX, Section K to read in its entirety as follows:

*For late payments, interest on unpaid amount shall be calculated at monthly rate of one percent (1%).*

**EIGHTH**: The parties agree to amend Article IV, Section A to read in its entirety as follows:

*Delivery shall be, via barge, other vessel or tank to tank transfer for fuel as specified in Exhibit A or for fuel components to be blended at CORCO to obtain final product as specified in Exhibit A, delivered by FREEPOINT at Aguirre, Costa Sur, San Juan and Palo Seco. The pricing period is comprised of three (3) calendar days around the deemed commencement of discharge, considering the deemed date mutually agreed between the parties, and it shall not be modified, except with the parties' mutual agreement.*

**NINETH**: The parties agree to amend Article IV, Section D to read in its entirety as follows:

*Title of product delivered shall pass to PREPA after the fuel passes the pipeline flange at the Aguirre, Costa Sur, San Juan or Palo Seco steam plants or the pipeline interconnection between PREPA and CORCO or any other terminal for deliveries made from FREEPOINT's tanks. FREEPOINT is responsible for cleaning, removing, and*

Second Amendment Fuel Purchase Contract No. 902-02-15
Page 9

*disposing of any spill of its product, which might occur before the pipeline interconnection during delivery; and shall be responsible for securing all materials, permits, and personnel required for handling the transfer of fuel.*

**TENTH:** The parties agree to make effective the amendments to Article IV, Sections A and D, as of June 1, 2016.

**THEREFORE:**   This is the Agreement between the appearing parties under this First Amendment to the Contract and so is hereby ratified.   All the other terms and conditions, specifications, stipulations, and requirements established in the Contract executed on July 31, 2015 remain unaltered and fully enforceable.

IN WITNESS THEREOF, the parties hereto have agreed to execute this First Amendment, on this day of ____July____/____, 2016.

PUERTO RICO ELECTRIC
POWER AUTHORITY

Javier Antonio Quintana Méndez
Executive Director

FREEPOINT COMMODITIES, LLC

Brandon Diket
Director



EXHIBIT A

## Temporary Credit Extension Certificate

PREPA represents and warrants a Specified Event has not occurred and PREPA does not have current intentions to cause a Specified Event within 72 days, and PREPA has no actual knowledge that a Specified Event will occur within 72 days.

PREPA hereby covenants that if notwithstanding the representation above, a Specified Event does occur, PREPA will use its best efforts to ensure that such Specified Event becomes a Qualified Specified Event as promptly as practicable.

2016-P00009C

## RENEWAL AND THIRD AMENDMENT OF
## FUEL PURCHASE CONTRACT 902-02-15

**AS FIRST PARTY:** The Puerto Rico Electric Power Authority, hereinafter referred to as "PREPA" a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Executive Director, Ricardo Luis Ramos Rodríguez, of legal age, married, professional engineer, and resident of Caguas, Puerto Rico.

**AS SECOND PARTY:**  Freepoint Commodities LLC, hereinafter referred to as "FREEPOINT", a limited liability company organized and existing under the laws of Delaware, authorized to do business in Puerto Rico, duly registered as a supplier to PREPA, represented in this act by its Director, Brandon Diket of legal age, married, and resident of Riverside, Connecticut, United States of America, duly authorized to sign this Contract by virtue of the Certificate of Incumbency and authorization dated as of February 2nd, 2015.



### WITNESSETH

**WHEREAS:**  The appearing parties executed the Contract No. 902-02-15, hereinafter referred to as "the Contract", on July 31, 2015 for the supply of residual No. 6 Fuel Oil at San Juan, Palo Seco, Aguirre and Costa Sur steam plants.

**WHEREAS:**  Article I, <u>Scope and Term of Contract</u>, states that it will become effective on the date of its signature, and will be in effect for a period of one (1) year after the commencement date as notified by PREPA.  The commencement date, as notified by PREPA was October 1, 2015.

*TCO 362474554v2*

Third Amendment Fuel Purchase Contract No. 902-02-15
Page 2

**WHEREAS:** On June 2ⁿᵈ, 2016, the parties executed an amendment to the Contract to extend the expiration of the Initial Term until October 31, 2016.

**WHEREAS:** As per Article I, Section C, the Contract it is subject to one (1) automatic extension of one (1) year unless either party indicates its intention that said automatic extension does not occur by providing the other party with written notice at least one hundred and twenty (120) days before the expiration of the Initial Term (a "Non-Extension Notice").

**WHEREAS:** As per Article I, Section C, of the Contract, The parties agreed to allow the automatic renewal to occur. Therefore, on July 1, 2016, parties executed a renewal and second amendment to the Contract to extend the term of the Contract until October 31, 2017, and to make certain other modifications.

**WHEREAS:** Article XXII, Modifications and Novation, of the Contract states that No modification, change, renewal, extension, discharge, or waiver of this Contract, or any of the provisions herein contained, shall be valid and binding except by a written, mutual agreement of the parties signed by a duly authorized officer of each party. PREPA and FREEPOINT expressly agree that no amendment which could be made to this Contract, during its term, shall be understood as a contractual novation, unless both parties agree to the contrary specifically and in writing. The previous provision shall be equally applicable in such other cases where PREPA gives FREEPOINT a time extension for the compliance of any of its obligations under this Contract, or where PREPA dispenses the claim or demand of any of its credits or rights under this Contract.

**THEREFORE,** the appearing parties agree to amend Contract No. 902-02-15 as per the following:

TCO 362474554v2

Third Amendment Fuel Purchase Contract No. 902-02-15
Page 3

## TERMS AND CONDITIONS

**FIRST:**   The parties agree to amend Article I, Section C. to read in its entirety as follows:

> This Contract shall be in effect until October 31, 2018 (the "Initial Term"). The Contract is subject to one (1) automatic extension of one (1) year from that date unless either party indicates its intention that said automatic extension does not occur by providing the other party with written notice at least one hundred and twenty (120) days before the expiration of the Initial Term (a "Non-Extension Notice").

**SECOND:**   The parties agree to add the following at the end of Article II, Section D:

> Notwithstanding the foregoing, if PREPA becomes subject to a proceeding under Title III of PROMESA, FREEPOINT shall have the right, subject to the following proviso, to terminate this Contract upon written notice to PREPA, without prejudice to any claim or any other right of FREEPOINT under this Contract at the time of such termination; provided, however, on and after the date that PREPA becomes subject to a proceeding under Title III of PROMESA and before the entry of an Assumption Order (as defined in Article XII(J)), FREEPOINT shall forbear from exercising its right to terminate this Contract because of the commencement of a proceeding under Title III of PROMESA so long as PREPA is timely complying with its obligations under Article XII(J); provided, further, upon entry of an Assumption Order, FREEPOINT's right to terminate this Contract

TCO 362474554v2

Third Amendment Fuel Purchase Contract No. 902-02-15
Page 4

because of the commencement of a proceeding under Title III under this Article
II.D. shall expire.

**THIRD:** The parties agree to add the following at the end of Article IX, Section A:

If PREPA fails to deliver a Temporary Term Increase Certificate and fails to make
the representation in Article XII(M)(i), in each case, solely due to (a) the
commencement of a proceeding under Title III or Title VI of PROMESA, (b)
PREPA's current intention to cause the commencement of a proceeding under
Title III or Title VI of PROMESA within 72 days, or (c) PREPA's actual knowledge
that a proceeding under Title III or Title VI of PROMESA will occur within 72
days, then, the Credit Term shall be extended, for that invoice only, to seventy-
two (72) days following issuance of the invoice thereof, provided PREPA has
delivered the Alternative Temporary Term Increase Certificate (attached as
Exhibit B), in connection with such invoice and made the representation in Article
XII(M)(ii).



**FOURTH:** The parties agree to amend Article XII, Section M to read in its entirety as
follows:

As of the date hereof, and at the time of any delivery hereunder, PREPA
represents and warrants to one of the following: (i) a Specified Event has not
occurred, and PREPA does not have current intentions to cause a Specified
Event within 72 days, and PREPA has no actual knowledge that a Specified
Event will occur within 72 days, or (ii) a Specified Event has not occurred and
PREPA does not have current intentions to cause a Specified Event within 72
days, and PREPA has no actual knowledge that a Specified Event will occur

Third Amendment Fuel Purchase Contract No. 902-02-15
Page 5

within 72 days unless (x) such Specified Event is a Qualified Specified Event or
(y) it believes in good faith that any such Specified Event will constitute a
Qualified Specified Event.

A.   "Specified Event" shall be any of the following events:

a. The commencement of any debt adjustment proceeding (including a
consensual restructuring under Title VI of PROMESA, as defined below),
reorganization proceeding, bankruptcy proceeding, proceeding under Title
III of Puerto Rico Oversight, Management, and Economic Stability Act (as
reflected in HR 5278 or any subsequent version or similar law or
legislation) ("PROMESA"), insolvency proceeding, dissolution or wind-up
proceeding, proceeding under the Recovery Act, or any similar proceeding
(including the occurrence of a general assignment, arrangement or
composition with or for the benefit of PREPA's creditors or the
appointment of a receiver, administrator or similar officer for some or all of
PREPA's assets).



b. (i) The announcement, declaration or implementation of a moratorium
or stay with respect to PREPA or the payment of any portion of PREPA's
debts, unless such moratorium or stay (or solely with respect to a
moratorium under the Puerto Rico Financial Emergency and Fiscal
Responsibility Law, provided such act has not been amended from the
date hereof to expressly exclude any other debt or obligations of PREPA,
any irrevocable executive order issued by the office of the sitting Governor
in respect thereof) expressly provides it covers or effects only

Third Amendment Fuel Purchase Contract No. 902-02-15
Page 6

indebtedness for borrowed money or does not cover or effect any obligations under this Agreement or any fuel supply contract (other than with respect to the enforcement of "ipso facto" provisions); (ii) PREPA is generally not paying its non-borrowed money debts as they come due; (iii) creditors of PREPA have taken acts that seek to adversely impact or delay PREPA's performance of or compliance with its obligations under this Agreement; or (iv) PREPA is unable by virtue of legislation, rule, policy, stay, moratorium, injunction or any other similar act to pay its debts as they become due (clauses (i), (ii), (iii), and (iv) each a "Trigger Event").

c. Any resolution, authorization or steps to implement any of the foregoing by the United States (other than the enactment of PROMESA), PREPA, the GDB or the Commonwealth, or any duly appointed oversight board.



A "Qualified Specified Event" shall mean a Specified Event that will not have any impact or delay on PREPA's performance of its obligations under this Agreement and PREPA's obligations hereunder, whether because (A) the obligations under this Agreement are specifically designated to be paid pursuant to an order of a court of competent jurisdiction in connection with a Specified Event that is the appointment of a receiver (under the Trust Agreement, Act No. 83 of 1941, as amended, or otherwise), (B) Freepoint and the obligations under this Agreement are otherwise designated pursuant to legislation, court order, or in another binding manner (reasonably satisfactory to Freepoint), to be unaffected in the same manner as if Freepoint were designated as a critical vendor or provided similar relief in a case under chapter 9 of the United States Bankruptcy Code, (C)

Third Amendment Fuel Purchase Contract No. 902-02-15
Page 7

PREPA shall have otherwise provided assurances acceptable to Freepoint in Freepoint's sole discretion that Freepoint will be paid as provided in this Agreement, or (D) the Specified Event is a consensual restructuring under Title VI of PROMESA in which the obligations under this Agreement are unaffected; provided, however, that a Specified Event caused solely by a Trigger Event shall constitute a Qualified Specified Event so long as PREPA has reasonably concluded that there will not be any adverse impact or delay on PREPA's performance of or compliance with its obligations under this Agreement as a result of or in connection with such Trigger Event, and PREPA is engaging in good faith efforts to ensure that it becomes a Qualified Specified Event; provided, further, that a Specified Event caused solely by the commencement of a proceeding under Title III of PROMESA shall constitute a Qualified Specified Event only and so long as all requirements of Article XII.J. are timely satisfied; provided, further, that any event described in this Article XII(M) shall no longer constitute a Specified Event or a Qualified Specified Event in the event that (A) all requirements of Article XII(J) have been satisfied and (B) this Agreement and all obligations hereunder (including, for the avoidance of doubt, all outstanding fuel payables) have been expressly assumed by PREPA pursuant to an order of a court of competent jurisdiction (which order shall not be stayed, vacated or revoked) and all obligations due hereunder have been paid in full in cash through wire transfers or other fund transfers in accordance with their terms.



Third Amendment Fuel Purchase Contract No. 902-02-15
Page 8

**FIFTH**:   The parties agree to amend Article XII, Section N to read in its entirety as follows:

*PREPA agrees not to take any action in furtherance of commencing a Specified Event that it does not believe in good faith will be a Qualified Specified Event.*

**SIXTH**:   The parties agree to amend Article XII, Section J to read in its entirety as follows:



*If PREPA becomes subject to a proceeding under Title III of PROMESA, PREPA shall (a) file a motion, in form and substance reasonably satisfactory to FREEPOINT, to assume this Agreement (the "Assumption Motion") pursuant to section 365 of the Bankruptcy Code on the first day that PREPA becomes subject to the proceeding under Title III of PROMESA, (b) use best efforts to obtain entry of a final and non-appealable order, in form and substance reasonably satisfactory to FREEPOINT, granting the Assumption Motion (an "Assumption Order"), (c) pending entry of the Assumption Order, continue to comply with the terms of this Agreement to fullest extent permitted by law, and (d) obtain entry of the Assumption Order within 40 days of the commencement of the proceeding under Title III of PROMESA.   For the avoidance of doubt, the denial of the Assumption Motion shall constitute a default of and a failure to satisfy and comply with the requirements of this Article XII(J). References made to PREPA herein shall be deemed to include the terms "debtor" and "trustee" as defined in Title III of PROMESA.*

Third Amendment Fuel Purchase Contract No. 902-02-15
Page 9

**SEVENTH:** Each of Freepoint and PREPA represent and warrant to the other that it has authority to enter into this amendment and any and all consents, approvals, or similar actions necessary to enter into this amendment have been obtained.

**THEREFORE:** This is the Agreement between the appearing parties under this Third Amendment to the Contract and so is hereby ratified. All the other terms and conditions, specifications, stipulations, and requirements established in the Contract executed on July 31, 2015, as thereafter amended on June 2nd, 2016 and July 1, 2016, remain unaltered and fully enforceable.

IN WITNESS THEREOF, the parties hereto have agreed to execute this Third Amendment, on this day of ___April   10_____, 2017.

PUERTO RICO ELECTRIC POWER            FREEPOINT COMMODITIES, LLC
AUTHORITY

_____            _____
Ricardo Luis Ramos Rodríguez              Brandon Diket
Executive Director                        Director

TCO 362474554v2

Third Amendment Fuel Purchase Contract No. 902-02-15
Page 10

EXHIBIT B

Alternative Temporary Term Increase Certificate

PREPA represents and warrants that a Specified Event has not occurred and PREPA does not have current intentions to cause a Specified Event within 72 days, and PREPA has no actual knowledge that a Specified Event will occur within 72 days, other than the potential commencement of a proceeding under Title III and/or Title VI of PROMESA.

PREPA further represents and warrants that PREPA has reasonably concluded that the commencement of a proceeding under Title III and/or Title VI of PROMESA will constitute a Qualified Specified Event and there will not be any adverse impact or delay on PREPA's performance of or compliance with its obligations under this Agreement as a result of or in connection with such proceeding under Title III and/or Title VI of PROMESA.



PREPA hereby covenants that (a) if notwithstanding the representation above, a Specified Event (other than the commencement of a proceeding under Title III and/or Title VI of PROMESA) does occur, PREPA will use its best efforts to ensure that such Specified Event becomes a Qualified Specified Event as promptly as practicable, and (b) it will use its best efforts to ensure that the commencement of a proceeding under Title III and/or Title VI of PROMESA becomes a Qualified Specified Event as promptly as practicable.

### RENEWAL AND FOURTH AMENDMENT OF
### FUEL PURCHASE CONTRACT 902-02-15

**AS FIRST PARTY**:  The Puerto Rico Electric Power Authority, hereinafter referred to as "PREPA" a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Chief Executive Officer/Executive Director, José F. Ortiz Vázquez, of legal age, married, and resident of San Juan, Puerto Rico.

**AS SECOND PARTY**:   Freepoint Commodities LLC, hereinafter referred to as "Freepoint", a limited liability company organized and existing under the laws of Delaware, authorized to do business in Puerto Rico, duly registered as a supplier to PREPA, represented in this act by its Director, Brandon Diket of legal age, married, and resident of Riverside, Connecticut, duly authorized to sign this Contract by virtue of the Certificate of Incumbency and authorization dated as of 2nd July, 2018.


Both PREPA and the Freepoint which are hereinafter referred to individually as a "Party" and, jointly as "Parties".

### WITNESSETH

**WHEREAS**:  On July 31, 2015, the appearing Parties executed the Contract 902-02-15, hereinafter referred to as "the Contract", for the supply of residual No. 6 Fuel Oil for San Juan, Palo Seco, Aguirre and Costa Sur steam plants.

**WHEREAS**:  Article I, Scope and Term of Contract, states that the Contract will become effective on the date of its signature, and it will be in effect for a period of one (1) year



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 2

after the commencement date as notified by PREPA.  The commencement date, as notified by PREPA was October 1, 2015.

**WHEREAS**:  On June 2, 2016 the Parties executed the First Amendment to the Contract to extend its term until October 31, 2016.

**WHEREAS:**  As per Article I, Section C, the Contract is subject to one (1) automatic extension of one (1) year unless either Party indicates its intention that said automatic extension does not occur by providing the other Party with written notice at least one hundred and twenty (120) days before the expiration of the initial term (a "Non-Extension Notice").

WHEREAS:  As per Article I, Section C, of the Contract, the parties agreed to allow the automatic renewal to occur. Therefore, on July 1,2016, parties executed a renewal and second amendment to the Contract to extend the term of the Contract until October 31, 2017, and to make certain other modifications.

**WHEREAS**:   On April 10, 2017, the Parties executed the Third Amendment to the Contract to extend its term until October 31, 2018, with an automatic extension of one (1) year from that date unless either Party indicates its intention that said automatic extension does not occur by providing the other Party at least one hundred and twenty days before the expiration of the initial term.

**WHEREAS**:  As per Article I, Section C, of the Contract, the Parties agreed, in the Third Amendment to the Contract, to allow the automatic renewal to occur with the Contract being extended until October 31, 2019.



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 3

**WHEREAS**:  The Parties wish to further amend the Contract to provide for amendments to the Purchase Price and the Term of the Contract.

**WHEREAS**:  On March 27, 2019, PREPA's Governing Board, through Resolution 4694, authorized PREPA to enter into an agreement with Freepoint to extend the Contract for a term of two (2) years, beginning from its expiration date, October 31, 2019.

**WHEREAS**:  On June 10, 2019, the Financial Oversight and Management Board for Puerto Rico (FOMB) reviewed the proposed amendment to the Contract and approved it with observations. As approved by the FOMB, the Contract will be effective until October 30, 2020, with an automatic extension until October 30, 2021.  Also, the FOMB authorized to sign this Fourth Amendment, which would lock in adders of $4.28/bbl for San Juan and Palo Seco and of $6.28 for Aguirre and Costa Sur steam Plants.

**THEREFORE**, the appearing Parties agree to amend Contract 902-02-15 as per the following:

### TERMS AND CONDITIONS

**FIRST:**  The parties agree that the terms and conditions of this RENEWAL AND FOURTH AMENDMENT shall be immediately effective upon execution by both parties.  Upon (a) PREPA's failure to obtain entry of an Amendment Approval Order by October 31, 2019, or (b) the rejection of, refusal to grant (for any reason including lack of authority or jurisdiction), or failure to rule on, the Amendment Approval Order by the United States District Court presiding over PREPA's proceedings under Title III of PROMESA, then, unless otherwise waived by Freepoint in writing, this RENEWAL AND FOURTH

Fourth Amendment Fuel Purchase Contract 902-02-15
Page 4

AMENDMENT shall immediately terminate, and the Contract prior to the RENEWAL AND

FOURTH AMENDMENT shall govern the parties' rights and obligations on and after the

date of termination of this RENEWAL AND FOURTH AMENDMENT.  An "Amendment

Approval Order" shall mean a final order by the United States District Court presiding over

PREPA's proceedings under Title III of PROMESA that approves this RENEWAL AND

FOURTH AMENDMENT, which order is in form and substance reasonably acceptable to

Freepoint.

**SECOND:**   The parties agree to amend Article I, Section C. to read in its entirety as

follows:

*This Contract shall be in effect until October 31, 2020 (the "Initial Term").   The Contract*

*is subject to one (1) automatic extension of one (1) year from that date unless either party*

*indicates its intention that said automatic extension does not occur by providing the other*

*party with written notice at least one hundred and twenty (120) days before the expiration*

*of the Initial Term (a "Non-Extension Notice").*

**THIRD:**   The parties agree to delete the third paragraph of Article IX, Section A and

replace it with the following:

> *Subject to Article IX(K), the fixed price differential shall be, in US dollars per barrel*
>
> *for all deliveries under this Contract, (i) discounted to $4.28 for San Juan and Palo*
>
> *Seco Plants and $6.28 for Aguirre and Costa Sur Plants (the "Discount*



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 5

*Differential") if the invoice is paid early on or before the date which is ten (10) days prior to the Credit Term following issuance thereof (the "Early Payment Discount Period"), or (ii) $17.71 for San Juan and Palo Seco and $19.78 for Aguirre and Costa Sur Plants (the "Full Differential") if the invoice is paid at any time before, on, or after the date which is two days after the Credit Term following issuance thereof (the "Full Payment Period").  In the event a Jones Act Waiver is granted to Puerto Rico during the Term, and where such waiver is, or is forecasted to be, in place for more than ninety (90) days, the fixed differential referenced herein shall be reduced by $0.75 beginning on the thirty-first (31st) day following notice of such waiver being delivered to Freepoint by PREPA.  In the event the Jones Act waiver is rescinded, or ceases to be in effect for a period of ninety (90) days, PREPA shall reimburse Freepoint for the $0.75 discount applied to the fixed differential up to the date such Jones Act Waiver ceases to be in effect.*

**FOURTH:**   The parties agree to delete Article IX, Section B and replace it with the following:

*Freepoint shall provide PREPA with a Credit Limit of $200,000,000.  Whenever the Credit Limit is reached, PREPA shall anticipate payments of invoices in chronological order as much as necessary in order to comply with the Credit Limit*

**FIFTH**:  The Parties agree to amend Article IV by adding a new Section R, as follows:

In the event of any change, whether directly or indirectly, in the ownership, operatorship, management, and or any similar action relating to any of the



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 6

Plants, occurs with respect to any of the Palo Seco, San Juan, Costa Sur, or Aguirre Plants, PREPA shall ensure that any such change in ownership, operatorship, management, or any similar action relating to any of the Plants shall be expressly subject to any such new owner, operator, manager, or party acting in a similar capacity, agreeing to be bound by the terms of the Fuel Oil Purchase Contract until the expiration thereof.   Notwithstanding the forgoing, in the event of any change, whether directly or indirectly, in the ownership, operatorship, management, and/or any similar action, occurs with respect to any of the Palo Seco, San Juan, Costa Sur, or Aguirre Plants, such new owner, operator, or manager may terminate this Contract with respect to the relevant Plant with one hundred and eighty (180) days' notice to Freepoint.  In the event of such termination, the Contract shall remain in full force and effect with respect to any Plant not affected by such change in ownership, operatorship, or management.  In the event PREPA fails to perform its obligations pursuant to this Section R, and such failure continues for a period of seven (7) days following notice from Freepoint of such failure, Freepoint shall be entitled to terminate this Contract in accordance with the Article II hereunder.

**SIXTH:**   As for the original Contract, Freepoint will continue to comply with all applicable State Law, Regulations or Executive Orders that regulate the contracting process and



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 7

requirements of the Commonwealth of Puerto Rico. Freepoint shall submit to PREPA the
certificates, which are enumerated below. Freepoint hereby recognizes and agrees that
no payment for services under the Contract shall be done by PREPA until all the required
certifications and sworn statement have been provided:

1.  Filing of Puerto Rico Income Tax Returns

    In compliance with Executive Order Number OE-1991-24 of June 18, 1991, Freepoint
    hereby certifies that it has filed all the necessary and required income tax returns to
    the Government of Puerto Rico for the last five (5) years.  As evidence thereof,
    Freepoint has delivered to PREPA an Income Tax Return Filing Certificate, issued by
    the Treasury Department of Puerto Rico assuring that Freepoint has filed his Income
    Tax Return for the last five (5) tax years.  Freepoint accepts and acknowledges its
    responsibility for requiring and obtaining a similar warranty and certification from each
    and every contractor and subcontractor whose service Freepoint has secured in
    connection with the services to be rendered under this Contract and shall forward
    evidence to PREPA as to its compliance with this requirement.


2.  Payment of Puerto Rico Income Taxes

    In compliance with Executive Order Number OE-1991-24 of June 18, 1991, Freepoint,
    hereby certifies that it has complied and is current with the payment of all income taxes
    that are, or were due, to the Government of Puerto Rico.  As evidence thereof,
    Freepoint has delivered to PREPA a certification issued by the Treasury Department



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 8

of Puerto Rico indicating that Freepoint does not owe taxes to the Commonwealth of
Puerto Rico; or is paying such taxes by an installment plan in full compliance with its
terms. During the term of this Contract, Freepoint agrees to pay and/or to remain
current with any repayment plan agreed to by Freepoint with the Government of
Puerto Rico. Freepoint accepts and acknowledges its responsibility for requiring and
obtaining a similar warranty and certification from each subcontractor whose service
Freepoint has secured in connection with the services to be rendered under this
Contract and shall forward evidence to PREPA as to its compliance with this
requirement.

3.  Compliance with Requirements of the Department of Labor and Human Resources of
the Commonwealth of Puerto Rico.

Pursuant to Executive Order Number 1992-52, dated August 28, 1992 amending
OE-1991-24, Freepoint certifies and warrants that it has made all payments required
for unemployment benefits, workmen's compensation and social security for
chauffeurs, whichever is applicable, or that in lieu thereof, has subscribed a payment
plan in connection with any such unpaid items and is in full compliance with the terms
thereof.  As evidence thereof, Freepoint has delivered to PREPA:

a.  A certification issued by the Bureau of Employment Security (Negociado de
Seguridad de Empleo) of the Puerto Rico Department of Labor and Human
Resources certifying that Freepoint does not owe taxes regarding Unemployment
or Disability Insurance.



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 9

   b.  A certification issued by the Program for Social Security for Chauffeurs and Other Employees of the Puerto Rico Department of Labor and Human Resources certifying that Freepoint has no debt with respect to such program.

4.  Real and Personal Property Taxes

Freepoint hereby certifies and guarantees that it does not have any current debt regarding property taxes that may be registered with the Government of Puerto Rico's Municipal Tax Collection Center (Centro de Recaudación de Ingresos Municipales ("CRIM")). Freepoint further certifies to be current with the payment of any and all property taxes that are or were due to the Government of Puerto Rico. Freepoint shall provide:

   a. A certification issued by the Municipal Revenues Collection Center ("MRCC"), assuring that Freepoint does not owe any tax accruing during the last five (5) years to such governmental agency with respect to personal property; or negative Debt certification issued by the MRCC with respect to personal property taxes and a sworn statement executed by Freepoint indicating that (i) its revenues are derived from selling commodities in Puerto Rico, (ii) during the last 5 years (or the time in which it has been selling commodities in Puerto Rico) it has had no taxable business or personal property on the 1st of January of each year, (iii) that for such reasons it has not been required to file personal property tax returns, as required under Article 6.03 of Act 83-1991, as amended and (iv) that for such reason it does not have an electronic tax file in the MRCC's electronic system.



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 10

    b. All Concepts Debt Certification issued by the MRCC assuring that Freepoint does

       not owe any taxes to such governmental agency with respect to real and personal

       property; or Negative certification issued by the MRCC with respect to real property

       taxes.

5. Sales and Use Taxes

   Freepoint has delivered to PREPA:

    a. Certification issued by the Puerto Rico Treasury Department indicating that

       Freepoint does not owe Puerto Rico Sales and Use taxes to the Commonwealth

       of Puerto Rico; or is paying such taxes by an installment plan and is in full

       compliance with its terms.

    b. Puerto Rico Sales and Use Tax Filing Certificate, issued by the Treasury

       Department of Puerto Rico assuring that Freepoint has filed his Puerto Rico Sales

       and Use Tax for the last sixty (60) contributory periods.

    c. A copy of Freepoint's Certificate of Merchant's Registration issued by the Treasury

       Department of Puerto Rico.

6. Puerto Rico Child Support Administration (ASUME)

   Freepoint hereby certifies that it is not duty bound to pay child support, or if so, that

   Freepoint is up to date or has a payment plan to such effects.  As evidence thereof,

   Freepoint has delivered to PREPA a certification issued by the Puerto Rico Child

   Support Administration (Administración Para El Sustento de Menores (ASUME)



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 11

certifying that Freepoint have any debt, outstanding debt, or legal procedures to collect

child support payments that may be registered with ASUME.

7.  Organization Documents

Freepoint shall provide:

a.  a Good Standing Certificate issued by the Department of State of Puerto Rico.

b.  a Certification of Incorporation, or Certification of Organization or Certificate of

Authorization to do business in Puerto Rico issued by the Department of State of

Puerto Rico.

8.  Dispensation

Any and all necessary dispensations have been obtained from any government entity

and that said dispensations shall become part of the contracting record.

9.  Rules of Professional Ethics

Freepoint acknowledges and accepts that it is knowledgeable of the rules of ethics of

his or her profession and assumes responsibility for his or her own actions.

10. Provisions Required under Act 14-2004

Freepoint agrees that articles extracted, produced, assembled, packaged or

distributed in Puerto Rico by enterprises with operations in Puerto Rico, or distributed

by agents established in Puerto Rico shall be used when the service is rendered,

provided that they are available.

11. Law Num. 127, May 31, 2004:  Contract Registration in the Comptroller's Office of

Puerto Rico Act. Payment for services object of this Contract will not be made until



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 12

this Contract is properly registered in the Office of the Comptroller of the Government

of Puerto Rico pursuant to Law Number 18 of October 30, 1975, as amended.

12. Anti-Corruption Code for a New Puerto Rico

   1. Freepoint agrees to comply with the provisions of Act 2-2018, as the same may be

   amended from time to time, which establishes the Anti-Corruption Code for a New

   Puerto Rico.

   2. Freepoint hereby certifies that it does not represent particular interests in cases or

   matters that imply a conflict of interest, or of public policy, between the executive

   agency and the particular interests it represents.

   3. Freepoint shall furnish a sworn statement to the effect that neither Freepoint nor

   any president, vice president, executive director or any member of a board of

   officials or board of directors, or any person performing equivalent functions for

   Freepoint has been convicted of or has pled guilty to any of the crimes listed in

   Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and

   Transformation of Human Resources in the Government of Puerto Rico or any of

   the crimes included in Act 2-2018.

   4. Freepoint hereby certifies that it has not been convicted in Puerto Rico or United

   States Federal court for under Articles 4.2, 4.3, or 5.7 of Act 1-2012, as amended,

   known as the Organic Act of the Office of Government Ethics of Puerto Rico, any

   of the crimes listed in Articles 250 through 266 of Act 146-2012, as amended,

   known as the Puerto Rico Penal Code, any of the crimes typified in Act 2-2018, as



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 13

amended, known as the Anti-Corruption Code for a New Puerto Rico or any other felony that involves misuse of public funds or property, including but not limited to the crimes mentioned in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico.

5. PREPA shall have the right to terminate the Contract in the event Freepoint is convicted in Puerto Rico or United States Federal court for under Articles 4.2, 4.3, or 5.7 of Act 1-2012, as amended, known as the Organic Act of the Office of Government Ethics of Puerto Rico, any of the crimes listed in Articles 250 through 266 of Act 146-2012, as amended, known as the Puerto Rico Penal Code, any of the crimes typified in Act 2-2018, as amended, known as the Anti-Corruption Code for a New Puerto Rico or any other felony that involves misuse of public funds or property, including but not limited to the crimes mentioned in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico.

13. Prohibition with respect to execution by public officers:  (3 L.P.R.A. 8615(c))

No public officer or employee authorized to contract on behalf of the executive agency for which he/she works may execute a contract between the agency for which he/she works and an entity or business in which he/she or any member of his/her family unit has or has had direct or indirect economic interest during the last four (4) years prior to his/her holding office.



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 14

14. Prohibition with respect to contracting with officers or employees:  (3 L.P.R.A. 8615(d))

No executive agency may execute a contract in which any of its officers or employees or any member of their family units has or has had direct or indirect economic interest during the last four (4) years prior to their holding office, unless the Governor gives authorization thereto with the previous recommendation of the Secretary of the Treasury and the Secretary of Justice.

15. Prohibition with respect to contracts with officers and employees of other Government entities: (3 L.P.R.A. 8615(e))

No public officer or employee may be a party to or have any interest in any profits or benefits produced by a contract with any other executive agency or government dependency unless the Governor gives express authorization thereto with previous recommendation from the Secretary of the Treasury and the Secretary of Justice.

16. Prohibition with respect to evaluation and approval by public officers:  (3 L.P.R.A. 8615(f))

No public officer or employee who has the power to approve or authorize contracts shall evaluate, consider, approve or authorize any contract between an executive agency and an entity or business in which he/she or any member of his/her family unit has or has had direct or indirect economic interest during the last four (4) years prior to his/her holding office.

17. Prohibition with respect to execution by public officers contracts with former public officers: (3 L.P.R.A. 8615(h))



Fourth Amendment Fuel Purchase Contract 902-02-15
Page 15

No executive agency shall execute contracts with or for the benefit of persons who have been public officers or employees of said executive agency until after two (2) years have elapsed from the time said person has ceased working as such.

Consequences of Non-Compliance

Freepoint expressly agrees that the conditions outlined throughout this Section are essential requirements of this Contract. Consequently, should any one of these representations, warranties or certifications be incorrect, inaccurate or misleading, in whole or in part, and should such non-compliance not be cured within thirty (30) days, there shall be sufficient cause for PREPA to terminate this Contract. If any of the certifications listed in this Section shows a debt, and Freepoint has requested a review or adjustment of this debt, Freepoint hereby certifies that it has made such request at the time of the Contract execution.  If the requested review or adjustment is denied and such determination is final, Freepoint will provide, immediately, to PREPA a proof of payment of this debt; otherwise, Freepoint accepts that the owed amount be offset by PREPA and retained at the origin, deducted from the corresponding payments. Freepoint accepts and acknowledges its responsibility for requiring and obtaining a similar warranty and certification from each and every contractor and subcontractor whose service Freepoint has secured in connection with the services to be rendered under this Contract and shall forward evidence to PREPA as to its compliance with this requirement.

Fourth Amendment Fuel Purchase Contract 902-02-15
Page 16

Freepoint understands and agrees that PREPA is prohibited to process any payment under the Contract until the enumerated certifications and sworn statements are submitted to PREPA.

**SEVENTH:**  Both Parties represent and warrant to the other that it has authority to enter into this amendment and that any and all consents, approvals, or similar actions necessary to enter into this Fourth Amendment have been obtained.

**EIGHT**:  This is the agreement between the appearing Parties under this Fourth Amendment to the Contract and so is hereby ratified.  All the other terms and conditions, specifications, stipulations, and requirements established in the Contract executed on July 31, 2015, as thereafter amended on June 2, 2016, July 1, 2016 and April 10, 2017 remain unaltered and fully enforceable.


IN WITNESS THEREOF, the Parties hereto have agreed to execute this Fourth Amendment, on this 1st day of August 2019.

Puerto Rico Electric Power Authority                    Freepoint Commodities, LLC


_____                         _____
José F. Ortiz Vázquez                                   Brandon Diket
Chief Executive Officer                                  Director
66-0433747                                              35-2437780

