**<u>EXHIBIT 6</u>**

REGISTRO DE
TRANSACCIONES COMERCIAL

2014 AUG 12 PM 3: 19

PUERTO RICO ELECTRIC POWER AUTHORITY

TO

U.S. BANK NATIONAL ASSOCIATION

*as Successor Trustee*

TRUST AGREEMENT

Dated as of January 1, 1974, as amended and supplemented

through August 1, 2011

13475422.4

# TABLE OF CONTENTS

Page

RECITALS ...............................................................................................1
[FORM OF COUPON BONDS] ...................................................................3
[FORM OF COUPONS] ..............................................................................8
[FORM OF REGISTERED BONDS WITHOUT COUPONS] ...........................9
CERTIFICATE OF AUTHENTICATION................................................11

Article I Definitions. ...................................................................................... 12

    Section 101.    Meaning of words and terms.............................................12
    Section 102.    Miscellaneous definitions .................................................26

Article II Form, Execution and Registration of Bonds and Conditions for Authentication
    and Delivery of Bonds. .................................................................... 26

    Section 201.    Limitation on issuance of bonds .......................................26
    Section 202.    Form of bonds .................................................................26
    Section 203.    Details of bonds...............................................................27
    Section 204.    Authentication of bonds...................................................28
    Section 205.    Exchange of coupon bonds for registered bonds...................28
    Section 206.    Negotiations of coupon bonds ..........................................29
    Section 207.    Ownership of registered bonds .........................................29
    Section 208.    Issuance of revenue bonds to pay cost of Improvements ..........30
    Section 209.    Issuance of revenue bonds for any proper corporate purpose...................33
    Section 210.    Issuance of revenue refunding bonds to refund all 1947 Indenture
        Bonds and bonds issued under this Agreement ....................36
    Section 210A. Issuance of revenue refunding bonds for purposes of exchanging
        such bonds for all outstanding 1947 Indenture Bonds.............40
    Section 211.    Temporary Bonds..............................................................42
    Section 212.    Mutilated, destroyed or lost bonds ....................................43

Article III Redemption of Bonds. ................................................................... 43

    Section 301.    Redemption of bonds .......................................................43
    Section 302.    Redemption notice ...........................................................43
    Section 303.    Effect of calling for redemption........................................44
    Section 304.    Matured coupons..............................................................44
    Section 305.    Redemption of portion of registered bonds ........................44
    Section 306.    Cancellation of bonds and coupons redeemed......................45
    Section 307.    Bonds and portions of bonds called for redemption not deemed
        outstanding....................................................................45

Article IV Custody and Application of Proceeds of Bonds ................................ 45

    Section 401.    Construction Fund............................................................45
    Section 402.    Payments from Construction Fund .....................................45
    Section 403.    Items of cost....................................................................45
    Section 404.    Lands for projects ...........................................................46

- i -

Article V Revenues and Funds .................................................................................... 47
    Section 501.   Covenants as to bills for services ...................................................... 47
    Section 502.   Covenant as to rates ........................................................................ 47
    Section 503.   General Fund .................................................................................... 48
    Section 504.   Annual Budget ................................................................................ 48
    Section 505.   Application of moneys in General Fund ........................................... 49
    Section 506.   Revenue Fund ................................................................................. 50
    Section 507.   Sinking Fund ................................................................................... 50
    Section 508.   Disposition of balances in 1947 Indenture funds and accounts ............... 54
    Section 509.   Application of moneys in Bond Service Account ................................ 54
    Section 510.   Application of moneys in Reserve Account ....................................... 54
    Section 511.   Application of moneys in Redemption Account .................................. 56
    Section 512.   Use of moneys in Reserve Maintenance Fund ................................... 57
    Section 512A. Use of moneys in Self-insurance Fund ............................................ 58
    Section 512B. Use of moneys in Capital Improvement Fund .................................. 59
    Section 513.   Application and pledge of moneys in Sinking Fund .......................... 59
    Section 514.   Moneys set aside for principal and interest held in trust ................. 59
    Section 515.   Cancellation of bonds and coupons upon payment ........................... 60
    Section 516.   Application of moneys in Subordinate Obligations Fund .................... 60

Article VI Depositaries of Moneys, Security for Deposits and Investment of Funds. ................. 62
    Section 601.   Deposits constitute trust funds ........................................................ 62
    Section 602.   Investment of moneys ..................................................................... 63

Article VII Particular Covenants .................................................................................. 65
    Section 701.   Payment of principal, interest and premium .................................... 65
    Section 702.   Covenants to Integrate Improvements into System ........................... 65
    Section 703.   Compliance with 1947 Indenture ..................................................... 66
    Section 704.   Covenant as to Renewal and Replacement Fund .............................. 66
    Section 705.   Payment of lawful charges ............................................................. 67
    Section 706.   Employment of Consulting Engineers .............................................. 67
    Section 707.   Insurance ........................................................................................ 68
    Section 708.   Inspection of insurance policies ...................................................... 69
    Section 709.   No inconsistent action ..................................................................... 69
    Section 710.   Accurate records ............................................................................. 69
    Section 711.   Covenants as to additional 1947 Indenture Bonds ........................... 70
    Section 712.   Covenant against sale or encumbrance; exceptions ......................... 71
    Section 713.   Build America Bonds ...................................................................... 73

Article VIII Remedies .................................................................................................. 74
    Section 801.   Extended coupons .......................................................................... 74
    Section 802.   Events of default ............................................................................ 74
    Section 803.   Acceleration of maturities .............................................................. 75
    Section 804.   Enforcement of remedies ................................................................ 75
    Section 805.   Pro rata application of funds .......................................................... 76
    Section 806.   Effect of discontinuance of proceedings .......................................... 78

Section 807. Majority of bondholders may control proceedings .................................... 78
Section 808. Restrictions upon action by individual bondholder ................................ 78
Section 809. Actions by Trustee ............................................................................ 79
Section 810. No remedy exclusive .......................................................................... 79
Section 811. No delay or omission construed to be a waiver ......................................... 79
Section 812. Notice of default ............................................................................. 79

Article IX Concerning the Trustee ............................................................................ 79

Section 901. Acceptance of trusts ......................................................................... 79
Section 902. Trustee entitled to indemnity ............................................................... 80
Section 903. Limitation on obligations and responsibilities of Trustee ........................ 80
Section 904. Trustee not liable for failure of Authority to act or for deposits in
             other banks ................................................................................... 80
Section 905. Compensation and identification of Trustee ............................................ 80
Section 906. Monthly statement from Trustee .......................................................... 81
Section 907. Trustee may rely on certificates .......................................................... 81
Section 908. Notice of default ............................................................................. 82
Section 909. Trustee may deal in bonds and take action as bondholder .......................... 82
Section 910. Trustee not responsible for recitals ...................................................... 82
Section 911. Trustee protected in relying on certain documents ................................... 82
Section 912. Resignation of Trustee ...................................................................... 82
Section 913. Removal of Trustee ........................................................................... 82
Section 914. Appointment of successor Trustee ......................................................... 83
Section 915. Vesting of trusts in successor Trustee .................................................... 83

Article X Execution of Instruments by Bondholders and Proof of Ownership of Bonds ............. 84

Section 1001. Execution of instruments by bondholders ............................................... 84

Article XI Supplemental Agreements ........................................................................... 85

Section 1101. Supplemental agreements by Authority and Trustee ................................. 85
Section 1102. Modification of Agreement with consent of 60% of bondholders ........... 85
Section 1103. Trustee joining in supplemental agreement ........................................... 87
Section 1104. Responsibilities of Trustee under this Article ......................................... 87

Article XII Defeasance ............................................................................................. 87

Section 1201. Release of Agreement ...................................................................... 87

Article XIII Miscellaneous Provisions ......................................................................... 88

Section 1301. Successorship of Authority ................................................................ 88
Section 1302. Manner of giving notice, etc. .............................................................. 89
Section 1303. Successorship of Paying Agents ........................................................... 89
Section 1304. Parties and bondholders alone have rights under Agreement ..................... 89
Section 1305. Effect of partial invalidity .................................................................. 89
Section 1306. Substitute publication ...................................................................... 90
Section 1307. Other funds not prohibited ................................................................ 90
Section 1308. Headings, etc., not part of the Agreement ............................................. 90
Section 1309. Multiple Counterparts ...................................................................... 90

THIS TRUST AGREEMENT, dated for convenience of reference as of January 1, 1974, as amended, by and between

Puerto Rico Electric Power Authority,

a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (hereinafter sometimes called the "Authority"), and

U.S. Bank National Association, as successor trustee

a national banking association duly incorporated and existing under the laws of the United States of America and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise trust powers and is subject to examination by federal authority (said banking association and any bank or trust company becoming successor trustee under this Agreement being hereinafter sometimes call the "Trustee"),

Witnesseth:

WHEREAS, by Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), the Authority was created a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico; and

WHEREAS, by virtue of the Authority Act the Authority is empowered to conserve, develop and utilize the water and energy resources of Puerto Rico for the purpose of making available to the inhabitants of the Commonwealth, in the widest economic manner, the benefits thereof, for the promotion of the general welfare and to increase commerce and prosperity, and the Authority is granted and may exercise all the rights and powers necessary or convenient to carry out the aforesaid purposes including but not limited to the following, among others:

(a)    to have complete control and supervision of any undertaking constructed or acquired by it including the power to determine the character of and necessity for all its expenditures and the manner in which they shall be incurred, allowed and paid without regard to the provisions of any laws governing the expenditure of public funds, and such determination shall be final and conclusive upon all officers of the Commonwealth Government, and to prescribe, adopt, amend, and repeal such rules and regulations as may be necessary or proper for the exercise and performance of its powers and duties or to govern the rendering of service or sale or exchange of water or electric energy;

(b)    to sue and be sued, implead and be impleaded, complain and defend, in all courts;

(c)    to make contracts and to execute all instruments necessary or convenient in the exercise of any of its powers;

(d)    to acquire in any lawful manner including, but without limitation, acquisition by purchase, whether by agreement or by the exercise of the power of eminent

13475422.4

domain, lease, bequest, devise, gift, and to hold, maintain, use and operate any undertaking or, parts thereof;

(e)    to acquire in the manner set forth above, produce, impound, develop, manufacture, treat, hold, conserve, use, transmit, distribute, supply, exchange, sell, rent and otherwise dispose of, water, electric energy, equipment, and such other things, supplies and services as the Authority shall deem necessary, proper, incidental, or convenient in connection with its activities; provided, that in disposing at wholesale of electric energy the Authority shall give preference and priority as to supply to public bodies and cooperatives;

(f)    to construct or reconstruct any undertaking or any part or parts thereof, and any additions, improvements and extensions to any undertaking of the Authority by contract or contracts, or under, through; or by means of its own officers, agents, and employees;

(g)    to determine, fix, alter, charge and collect reasonable rates, fees, rentals, and other charges for the use of the facilities of the Authority, or for the services, electric energy, or other commodities sold, rendered, or furnished by it, which shall be sufficient for the payment of the expenses of the Authority incurred in the conservation, development, improvement, extension, repair, maintenance, and operation of its facilities and properties, for, the payment of the principal of and interest on its bonds, and for, fulfilling the terms and provisions of such covenants as may be made with, or for the benefit of, the purchasers or holders of any bonds of the Authority;

(h)    to borrow money, make and issue bonds of the Authority, for any of its corporate purposes, and to secure payment of its bonds and of any and all other obligations by pledge of or lien on all or any of its contracts, revenues, and income only; and

(i)    to make and issue bonds for the purpose funding, refunding, purchasing, paying, or discharging any of the outstanding bonds or obligations issued or assumed by it or any bonds or obligations the principal or interest of which is payable in whole or in part from its revenues; and

WHEREAS the Authority owns and operates an integrated system for the generation, transmission and distribution of electricity throughout the Commonwealth of Puerto Rico, and for the purpose of providing funds, with other available funds, for refunding certain outstanding bonds and paying the cost of a capital improvement program to provide additional generating capacity for the System (as defined herein), and necessary extensions of the transmission and distribution lines of the System and other improvements, the Authority has heretofore issued its Puerto Rico Water Resources Authority Electric Revenue Bonds, outstanding on the date hereof in the aggregate principal amount of $868,643,000, under and pursuant to the provisions of a trust indenture, dated as of the first day of January, 1947, by and between the Authority and The National City Bank of New York (now First National City Bank), as trustee, as amended by supplemental indentures dated as of January 1, 1948, July 1, 1956, January 1, 1961, March 1, 1962, March 1, 1965, April 1, 1967, April 1, 1970 and September 1, 1971 (said indenture as so

- 2 -

13475422.4

amended, together with all future amendments and all indentures supplemental thereto as therein permitted, being herein called the "1947 Indenture"); and

WHEREAS, First National City Bank has resigned as trustee under the 1947 Indenture and has thereby become discharged from the trusts created thereby; and

WHEREAS, the Authority has appointed The Chase Manhattan Bank (National Association) trustee under the 1947 Indenture and said banking association, having executed, acknowledged and delivered to its predecessor trustee, and also to the Authority, an instrument in writing, accepting such appointment under the 1947 Indenture, is now vested with all rights, immunities, powers and trusts, and subject to all the duties and obligations, of its predecessor trustee under the 1947 Indenture; and

WHEREAS, based upon surveys, estimates and recommendations, the Authority has found and determined that it is necessary and advisable to provide funds for additional facilities for the generation, transmission and distribution of electricity to serve the present and prospective demands upon the System, and has determined that it is necessary to increase its capacity to issue revenue bonds secured as hereinafter provided to provide funds for the foregoing purposes; and

WHEREAS, the Authority deems it advisable to make provision for the issuance from time to time of revenue bonds on a parity with the bonds issued initially under the provisions of this Agreement for the purpose of paying all or any part of the cost of any Improvements (as defined herein): and,

WHEREAS, the Authority hat determined that, the coupon bonds to be issued hereunder and the interest coupons to be attached thereto, the registered bonds without coupons to be issued hereunder and the certificate of authentication by the Trustee to be endorsed on all such bonds shall be, respectively, substantially in the following forms, with such variations, omissions, and insertions, as are required or permitted by this Agreement:

[FORM OF COUPON BONDS]

No.                                                                                          $

UNITED STATES OF AMERICA

PUERTO RICO ELECTRIC POWER AUTHORITY

POWER REVENUE BOND, SERIES

Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the bearer on the 1st day of _____, ___ (or earlier as hereinafter referred to), upon the presentation and surrender hereof, the principal sum of

- 3 -

_____ THOUSAND DOLLARS

14 AUG 12 PH 3:20

and to pay, solely from said special fund, interest thereon from the date hereof at the rate of _____ per centum (__%) per annum until payment of said principal sum, such interest to the maturity hereof being payable semi-annually on the 1st days of January and July in each year upon the presentation and surrender of the coupons representing such interest as the same respectively become due. Both the principal of and the interest on this bond are payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of this bond and the interest hereon are payable at the principal office of _____, in the _____, or at the principal office of _____, in the Borough of Manhattan, City and State of New York, at the option of the holder or at such other office or agency of the Authority maintained for that purpose as the Authority shall determine.

This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions are liable for the payment of this bond or the interest hereon, but this bond shall be payable as to both principal and interest solely from the special fund provided therefor as hereinafter set forth.

This bond is one of a duly authorized series of revenue bonds known as "Puerto Rico Electric Power Authority Power Revenue Bonds, Series ___", dated as of the 1st day of _____, ____ consisting of bonds maturing in annual installments on the 1st day of ____ in the years _____ to _____, inclusive (herein called the "serial bonds"), and of bonds maturing on the 1st day of _____, _____ and the 1st day of _____, _____ (herein collectively called the "term bonds"), and issued for the purpose of paying the cost of acquiring or constructing capital improvements to the electric power properties of the Authority (the electric power properties owned and operated by the Authority as a single integrated system, together with all improvements, renewals and replacements thereof and extensions and additions thereto financed under the provisions of the 1947 Indenture (hereinafter mentioned) and the Agreement (hereinafter mentioned), being herein called the "System").

All of the bonds are issued under and pursuant to a trust agreement (said agreement, together with all agreements supplemental thereto as therein permitted, being herein called the "Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and First National City Bank, in Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the corporate trust office of the Trustee. Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Agreement.

- 4 -

13475422.4

The Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the bonds of the series of which this is one being herein collectively called the "bonds").

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to resolutions duly adopted by the Authority.

The Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the conservation, repair, maintenance and operation of the System and for the payment of the principal of and the interest on the 1947 Indenture Bonds and the bonds as the same become due and payable, including reserves for such purposes. The 1947 Indenture provides for the deposit to the credit of a special fund designated "Water Resources Authority Renewal and Replacement Fund" (herein called the "Renewal and Replacement Fund") of the revenues of the System, to the extent required, over and above such expenses of conservation, repair, maintenance and operation and the amounts required to be deposited to the credit of the Puerto Rico Water Resources Authority Electric Revenue Bond Sinking Fund and the Puerto Rico Water Resources Authority General Reserve Fund under the 1947 Indenture and the Agreement provides for the deposit to the credit of the Renewal and Replacement Fund of sufficient funds to provide for the payments from said Fund to the special fund created under the Agreement designated "Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund"). The Agreement also provides for the payment into the Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Renewal and Replacement Fund to pay the principal of and the interest on all bonds issued under the Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds.

The Authority has heretofore issued under the provisions of the trust indenture, dated as of the first day of January, 1947 (such indenture as amended being herein called the "1947 Indenture"), Puerto Rico Water Resources Authority Electric Revenue Bonds (herein, with any additional bonds which hereafter may be issued under the provisions of the 1947 Indenture, called the "1947 Indenture Bonds"). Until all of the 1947 Indenture Bonds shall be paid or provision shall be made for their payment and the release of the 1947 Indenture, the revenues of the System, over and above the expenses of conservation, repair, maintenance and operation thereof, are pledged to the extent required to the payment of the principal of and the interest on the outstanding 1947 Indenture Bonds.

The bonds are issuable as coupon bonds and as registered bonds without coupons, in such denominations as the Authority may by resolution determine. At the corporate trust office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, registered bonds without coupons may be exchanged for an equal aggregate principal amount of coupon bonds of the same series and maturity, bearing interest at the same rate and having attached thereto coupons

- 5 -

13475422.4

representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate, and coupon bonds with all coupons appertaining thereto representing all unpaid interest due or to become due thereon may in like manner be exchanged for an equal aggregate principal amount of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate.

[Here insert in the bonds of each Series, the terms of redemption applicable to the bonds of such Series.]

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Agreement.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Agreement, and shall be made, in the manner and under the terms and conditions provided in the Agreement. On the date designated for redemption, notice having been published as provided in the Agreement, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee or by the paying agents, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, the coupons for any such interest payable subsequent to the redemption date shall be void, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the holders or registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee or by the paying agents.

The holder of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Agreement.

In certain events, on the conditions in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

As declared by the Authority Act, this bond shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution of the Agreement have happened, exist and have been performed as so required.

This bond shall not be valid or become obligatory for any purpose, or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this bond to [be signed by] [bear the facsimile signature of] the Executive Director of the Authority and to [be signed by] [bear the facsimile signature of] the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, and the attached interest coupons to bear the facsimile signature of said Executive Director; all as of the 1st day of_____, _____.

[Facsimile of corporate seal]

PUERTO RICO ELECTRIC
POWER AUTHORITY

By:_____
　　　　Executive Director

_____
　　　　Secretary

- 7 -

13475422.4

[FORM OF COUPONS]

No.

On _____ 1, 19____, Puerto Rico Electric Power Authority will pay to bearer (unless the bond mentioned below shall previously have become payable as provided in the Agreement referred to in said bond and provision for payment thereof shall have been duly made) at the principal office of _____ in the _____, _____, or at the principal office of_____ in the Borough of Manhattan, City and State of New York, at the option of the bearer, or at such other office or agency of the Authority maintained for that purpose as the Authority shall determine upon the presentation and surrender hereof, the sum of _____ in any coin or currency of the United States of America which at the time of payment is legal tender for the payment of public and private debts, solely from the special fund referred to in, and for the semi-annual interest then due upon, its Puerto Rico Electric Power Authority Power Revenue Bond, Series _____, dated as of _____, _____, No. _____.

_____

Executive Director, Puerto Rico
Electric Power Authority

13475422.4

[FORM OF REGISTERED BONDS WITHOUT COUPONS]

14 AUG 12 PM 3: 21

Same as Form of Coupon Bonds except as follows:

1.   Substitute the following for the caption and the first paragraph:

No. R                                                                     $ _____

## UNITED STATES OF AMERICA

## PUERTO RICO ELECTRIC POWER AUTHORITY

## POWER REVENUE BOND, SERIES ___

Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to _____, or registered assigns or legal representative, on the 1st day of _____, ____) (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the Corporate Trust Office of the Trustee (hereinafter mentioned), the principal sum of

## DOLLARS

in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the registered owner hereof by check mailed to the registered owner at his address as it appears on the bond registration books of the Authority, interest on said principal sum from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year in like coin or currency, at the rate or _____ per centum (___%) per annum until payment of said principal sum.

2.   Substitute the following for the paragraph concerning the notice of redemption and the effect thereof:

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Agreement, and shall be made in the manner and under the terms and conditions provided in the Agreement.  On the date designated for redemption, notice having been published as provided in the Agreement, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof of such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the holders or registered owners thereof shall have no rights in respect of such bonds or portions thereof so called for redemption except to receive payment of the redemption

13475422.4

- 9 -

price thereof and the accrued interest so held by the Trustee. If a portion of this bond shall be called for redemption, a new bond or bonds in principal amount equal to the unredeemed portion hereof will be issued to the registered owner upon the surrender hereof.

3.    Substitute the following for the paragraph concerning negotiability:

The transfer of this bond is registrable by the registered owner hereof in person or by his attorney or legal representative at the principal office of the Trustee but only in the manner and subject to the limitations and conditions provided in the Agreement and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for this bond a new registered bond or bonds without coupons, registered in the name of the transferee, of authorized denominations, or, at the option of the transferee, coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

4.    Substitute the following for the witnessing clause:

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this bond to [be signed by] [bear the facsimile signature of] the Executive Director of the Authority and to be [signed by] [bear the facsimile signature of] the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, all as of the 1st day of _____, ____.

5.    Omit the Form of coupons.

[to be endorsed on all bonds]

## CERTIFICATE OF AUTHENTICATION

14 AUG 12 PM 3:21

This is one of the bonds of the series designated therein and issued under the provisions of the within mentioned Agreement.

U.S. Bank National Association, as Successor Trustee

By: _____

Authorized Officer

[to be endorsed on all registered bonds
following the certificate of authentication]

Date of authentication: _____

and

WHEREAS, by virtue of the Authority Act, the Authority is authorized to issue revenue bonds as hereinafter provided, to enter into this Agreement and to do or cause to be done all the acts and things herein provided or required to be done as hereinafter covenanted; and

WHEREAS, the execution and delivery of this Agreement have been duly authorized by resolution of the Authority; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act, by the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Agreement have happened, exist and have been performed as so required, in order to make this Agreement a legal, valid and binding trust agreement for the security of the bonds in accordance with its terms; and

WHEREAS, the Trustee has accepted the trusts created by this Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the premises, of the acceptance by the Trustee of the trusts hereby created, and of the purchase and acceptance of the bonds by the holders thereof, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Agreement, the receipt of which is hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which the bonds are to be issued, executed, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all bonds at any time issued and outstanding hereunder and the interest and the redemption premium, if any, thereon according to their tenor, purport and effect, and in order to secure the performance and observance of all the covenants, agreements and conditions therein and herein contained, the Authority has executed and delivered this Agreement and has pledged and does hereby pledge to the Trustee the

- 11 -

13475422.4

revenues of the System, subject to the pledge of such revenues to the payment of the principal of and the interest on the 1947 Indenture Bonds (hereinafter mentioned), and other moneys to the extent provided in this Agreement as security for the payment of the bonds and the interest and the redemption premium, if any, thereon and as security for the satisfaction of any other obligation assumed by it in connection with such bonds, and it is mutually agreed and covenanted by and between the parties hereto, for the equal and proportionate benefit and security of all and singular the present and future holders of the bonds issued and to be issued under this Agreement, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond of any other bond, by reason of priority in the issue, sale or negotiation thereof or otherwise, as follows:

## Article I
### Definitions.

Section 101. <u>Meaning of words and terms.</u> In addition to words and terms elsewhere defined in this Agreement, the following words and terms shall have the following meanings, unless some other meaning is plainly intended:

The term "Accreted Value" shall mean with respect to any Capital Appreciation Bonds (i) as of any Valuation Date, the amount set forth for such date in the resolution authorizing such Capital Appreciation Bonds and (ii) as of any date other than a Valuation Date, the sum of (a) the Accreted Value on the preceding Valuation Date and (b) the product of (1) a fraction, the numerator of which is the actual number of days having elapsed from the preceding Valuation Date and the denominator of which is the actual number of days from such preceding Valuation Date to the next succeeding Valuation Date and (2) the difference between the Accreted Values for such Valuation Dates.

The word "Agreement" shall mean this Agreement, dated as of January 1, 1974, together with all agreements supplemental hereto as herein permitted.

The term "Amortization Accrual" shall mean for any period the amount of an Amortization Requirement that would accrue during such period if such Requirement accrued ratably on the basis of a year consisting of twelve (12) thirty-day months. Unless otherwise provided by resolution of the Authority or an agreement supplemental hereto, the monthly accrual in respect of an Amortization Requirement for a term bond shall commence on the first day of each month in the fiscal year for which such Requirement has been established and shall end on the first day of the month succeeding the relevant Deposit Day.

As applied to the term bonds of any Series, the term "Amortization Requirement" for any fiscal year shall mean the principal amount fixed or computed for such fiscal year as hereinafter set forth for the retirement of such term bonds by purchase or redemption.

The Amortization Requirements for the term bonds of each Series shall be initially the respective principal amounts for each fiscal year as fixed in a resolution of the Board adopted prior to the issuance of the bonds of such Series; provided, however,

- 12 -

that if any additional term bonds of such Series shall be issued under the provisions of the first paragraph of Section 210 of this Agreement, the respective Amortization Requirements for the term bonds of such Series shall be increased in proportion as nearly as may be practicable to the increase in the total principal amount of the term bonds of such Series. The aggregate amount of such Amortization Requirements for the term bonds of each Series shall be equal to the aggregate principal amount of the term bonds of such Series. The Amortization Requirements for the term bonds of each Series shall begin in the fiscal year determined by the Board.

If at the close of any fiscal year the total principal amount of term bonds of any Series retired by purchase or redemption, or prior to the close of such fiscal year called for redemption under the provisions of Section 511 of this Agreement, shall be in excess of the amount of the Amortization Requirements for the term bonds of such Series for such fiscal year, then the amount of the Amortization Requirements for the term bonds of such Series shall be reduced for such subsequent fiscal years in such amounts aggregating the amount of such excess as shall be determined by the Executive Director in an order filed with the Trustee on or before the 10th day of July following the close of such fiscal year.

If at the close of any fiscal year the total principal amount of term bonds of any Series retired by the purchase or redemption, or called for redemption under the provisions of Section 511 of this Agreement, prior to the close of such fiscal year shall be less than the amount of the Amortization Requirements for the term bonds of such Series for such fiscal year, then the amount of the Amortization Requirements for the term bonds of such Series for the next succeeding fiscal year shall be increased by the amount of the excess of such deficiency over the amount then held to the credit of the Redemption Account.

It shall be the duty of the Trustee, on or before the 15th day of July in each fiscal year, to compute the Amortization Requirements for the then current fiscal year for the term bonds of each Series then outstanding. The Amortization Requirements for the then current fiscal year shall continue to be applicable during the balance of such current fiscal year and no adjustment shall be made therein by reason of term bonds purchased or redeemed or called for redemption during such current fiscal year.

The term "Annual Budget" shall mean the Authority's budget of Current Expenses and Capital Expenditures for a fiscal year adopted pursuant to the provisions of Section 504 of this Agreement.

The word "Authority" shall mean the Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, and the successor or successors of the Authority.

The term "Authority Act" shall mean the Puerto Rico Water Resources Authority Act, being Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended and reenacted by Act. No. 19, approved April 8, 1942, as amended, and Act No.

- 13 -

111, approved May 6, 1941, as amended by Act No. 153, approved May 14, 1943, as amended.

The word "Board" shall mean the governing board of the Authority as constituted from time to time and defined by the Authority Act, or if said Board shall be abolished, then the board, body or officer succeeding to the principal functions thereof or to whom the powers of the Authority shall be given by law.

The term "Bond Service Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

The term "bondholder of record" shall mean any bondholder who shall have filed with the Secretary, within the period of two years immediately prior to any time when such term has application, a written request setting forth his name and address and the particular reports, notices, and other documents which he desires to receive and which are required to be mailed under the requirements of this Agreement.

The word "bonds" shall mean the bonds issued under this Agreement.

The term "Build America Bonds" shall mean a series of bonds designated as "Build America Bonds" by the Authority for purposes of Section 54AA of the Code and for which the Authority has irrevocably elected pursuant to Section 54AA(g) of the Code to receive the Federal Subsidy from the United States Treasury in connection therewith under Section 6431 of the Code and apply it in accordance with the provisions of the resolution or resolutions adopted by the Board authorizing the issuance of such bonds.

The term "Capital Appreciation Bonds" shall mean any bonds hereafter issued as to which interest is payable only at the maturity or prior redemption of such bonds. For the purposes of (i) receiving payment of the redemption price if a Capital Appreciation Bond is redeemed prior to maturity to the extent provided in the resolution authorizing the Capital Appreciation Bonds, or (ii) receiving payment of a Capital Appreciation Bond if the principal of all bonds is declared immediately due and payable following an event of default as provided in Section 802 of this Agreement or (iii) computing the principal amount of bonds held by the registered owner of a Capital Appreciation Bond in giving to the Authority of the Trustee any notice, consent, request, or demand pursuant to this Agreement for any purpose whatsoever, the principal amount of a Capital Appreciation Bond shall be deemed to be its Accreted Value. In the case of Capital Appreciation Bonds that are convertible to bonds with interest payable prior to maturity or prior redemption of such bonds, the term "Capital Appreciation Bonds" shall be limited to the period prior to such conversion, and after such conversion, the bonds shall be viewed as any other bonds of the same type for purposes of this Agreement.

The term "Capital Expenditures" shall mean all expenditures made on account of the cost of the Capital Improvement Program, as defined in the 1947 Indenture, and the cost of Improvements under this Agreement and the 1947 Indenture and those expenditures made for the purpose for which funds are provided pursuant to the provisions of Section 512 of the 1947 Indenture.

- 14 -

The term "Capital Improvement Fund" shall mean the Puerto Rico Electric Power Authority Capital Improvement, a special fund created and designated by Section 507 of this Agreement.

The term "Construction Fund" shall mean the Puerto Rico Electric Power Authority Power System Construction Fund, a special fund created and designated by the provisions of Section 401 of this Agreement.

The term "Consulting Engineer" shall mean the engineer or engineering firm or corporation at the time employed by the Authority under the provisions of Section 706 of this Agreement to perform and carry out the duties imposed on the Consulting Engineers by this Agreement.

The word "Controller" shall mean the Controller or any Assistant Controller of the Authority, or if there is no Controller or Assistant Controller, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the chief financial officer of the Authority.

The word "cost", as applied to any Improvements, shall embrace the cost of the acquisition and construction and all obligations and expenses and all items of cost which are set forth in Section 403 of this Agreement.

The term "Current Expenses" shall mean the Authority's reasonable and necessary current expenses of maintaining, repairing and operating the System and shall include, without limiting the generality of the foregoing, all administrative expenses, insurance premiums, expenses of preliminary surveys not chargeable to Capital Expenditures, engineering expenses relating to operation and maintenance, fees and expenses of the Trustee, the 1947 Trustee, the Paying Agents and of the paying agents under the 1947 Indenture, legal expenses, any payment to pension or retirement funds, and all other expenses required to be paid by the Authority under the provisions of the 1947 Indenture, this Agreement or by law, or permitted by standard practices for public utility systems, similar to the properties and business of the Authority and applicable in the circumstances but shall not include any deposits to the credit of the Sinking Fund, the Reserve Maintenance Fund, the Subordinate Obligations Fund, the Self-insurance Fund and the Capital Improvement Fund or the 1947 Sinking Fund or deposits under the provisions of Sections 511, 512 and 513 of the 1947 Indenture.

The term "daily newspaper" shall mean a newspaper regularly published in the English language on at least five (5) business days in each calendar week and, in the case of a newspaper published in the Commonwealth of Puerto Rico, may include a newspaper regularly published in the Spanish language on at least five (5) business days in each calendar week.

The word "Depositary" shall mean one or more banks or trust companies duly authorized under the laws of the United States of America, or any state thereof or the Commonwealth of Puerto Rico to engage in the banking business therein and designated by the Authority as a depositary of moneys under the provisions of this Agreement, each

- 15 -

such depositary to be a member of the Federal Deposit Insurance Corporation and shall also mean the Trustee and Government Development Bank for Puerto Rico.

The term "Deposit Day" shall mean the date specified in the first paragraph of Section 507 of this Agreement as the date by which all the moneys then held to the credit of the Revenue Fund shall be withdrawn by the Treasurer and deposited in the manner set forth in said Section.

The term "Designated Maturity Bonds" shall mean the indebtedness incurred by the Authority under the terms of a separate trust agreement or resolution, which indebtedness has a maturity of at least ten (10) years and is secured, as to the unamortized principal thereof, on a subordinate basis to the bonds and for which (i) no amortization of principal has been established or (ii) the aggregate amount of the amortized principal that has been established is less than the principal amount of the indebtedness; provided that interest on said indebtedness and any amortized principal of said indebtedness may be payable on a parity, respectively, with interest on bonds and Amortization Requirements on term bonds, in which case said interest and amortized principal shall be included in the calculation of Principal and Interest Requirements on bonds for purposes of this Agreement and shall otherwise be deemed to be, and payable as, interest and Amortization Requirements on bonds for purposes of this Agreement.

The term "Executive Director" shall mean the Executive Director or the Vice Executive Director of the Authority for the time being, or if there is no Executive Director or Vice Executive Director, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Executive Director.

The term "Extendible Maturity Bonds" shall mean bonds the maturities of which, by their terms, may be extended by and at the option of the bondholder or the Authority.

The term "Federal Subsidy" shall mean a payment made by the Secretary of the Department of Treasury to or for the account of the Authority pursuant to the Code in respect of a series of bonds constituting Federally Subsidized Bonds. Any Federal Subsidy to be received by the Authority in respect of such series of bonds shall be identified as such in the resolution authorizing the issuance of such series of bonds to which it relates.

The term "Federally Subsidized Bonds" shall mean either Build America Bonds or Other Subsidy Bonds or both, as the case may be.

The term "Federal Subsidy Payments" shall mean the amount of Federal Subsidy actually paid to and received by the Trustee in respect of an interest payment for the series of Federally Subsidized Bonds to which it relates. Such Federal Subsidy Payments shall be deposited directly into the Bond Service Account in the Sinking Fund.

The term "fiscal year" shall mean the period commencing on the 1st day of July of any year and ending on the last day of June the following year.

- 16 -

The term "General Fund" shall mean the Puerto Rico Electric Power Authority General Fund, a special fund created and designated by the provisions of Section 503 of this Agreement.

The term "General Reserve Fund" shall mean the Puerto Rico Electric Power Authority General Reserve Fund, a special fund created and designated by the provisions of Section 511 of the 1947 Indenture.

The term "Government Obligations" shall mean (i) direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States Government including securities evidencing ownership interests in such obligations or in specified portions thereof (which may consist of specific portions of the principal of or interest on such obligations), (ii) bonds, debentures or notes issued by any of the following Federal agencies: Banks for Cooperatives, Federal Intermediate Credit Banks, Federal Home Loan Banks, Export-Import Bank of the United States, Government National Mortgage Association, Federal Land Banks, or the Federal National Mortgage Association (including participation certificates issued by such Association) and (iii) all other obligations issued or unconditionally guaranteed as to principal and interest by an agency or person controlled or supervised by and acting as an instrumentality of the United States Government pursuant to authority granted by the Congress.

The word "Improvements" shall mean such improvements, renewals and replacements of the System or any part thereof and such extensions and additions thereto as may be necessary or desirable, in the judgment of the Board, to keep the same in proper condition for the safe, efficient and economic operation thereof and to integrate into the System any unit or part thereof, and shall include such electric-power projects as may be authorized to be acquired or constructed by the Authority under the provisions of the Authority Act and such improvements, renewals and replacements of such properties and the System and such extensions and additions thereto as may be necessary or desirable for continuous and efficient service to the public, which shall be financed in whole or in substantial part from the proceeds of bonds issued under the provisions of the 1947 Indenture or this Agreement or from moneys deposited to the credit of the 1947 Construction Fund, the Construction Fund or the Renewal and Replacement Fund.

The term "Independent Consultant" shall mean the consultant or consulting firm or corporation at the time employed by the Authority under the provisions of Section 706 of this Agreement to perform and carry out the duties of the Independent Consultant by this Agreement.

The term "Interest Accrual" shall mean for any period the amount of interest that would accrue during such period if such interest accrued ratably on the basis of a year consisting of twelve (12) thirty-day months. Unless otherwise provided by resolution of the Authority or an agreement supplemental hereto, the monthly accrual in respect of interest on the bonds shall commence on the later to occur of the date of issue of the bonds of such Series and the date that is six months prior to the due date of such interest and shall end on the first day of the month following the relevant Deposit Day. In the

- 17 -

case of Variable Rate Bonds, the amount deposited shall be based on the sum of the interest accrued through the business day preceding the relevant Deposit Day and the interest (calculated at the maximum rate of interest on such Bonds, or if there is no such maximum rate, then at the rate on such Bonds on the business day preceding the Deposit Day plus one percent (1%)) that would accrue on such Bonds from the Deposit Day to the later to occur of the first day of the next calendar month and any interest payment date on such Bonds occurring prior to the next Deposit Day.

The term "Investment Obligations" shall mean (i) Government Obligations, (ii) obligations of any state or territory of the United States or political subdivision thereof (other than obligations rated lower than the three highest grades by a nationally recognized rating agency), (iii) repurchase agreements with commercial banks fully secured by Government Obligations and (iv) any other investment obligations permitted for governmental instrumentalities such as the Authority under the laws of the Commonwealth of Puerto Rico which are rated, on the date of investment therein, in any of the three highest grades by a nationally recognized rating agency, or which are collateralized by any of the other Investment Obligations described herein.

The term "Net Revenues" for any particular period shall mean the amount of the excess of the Revenues for such period over the Current Expenses for such period.

The term "1947 Construction Fund" shall mean the Puerto Rico Electric Power Authority Construction Fund, a special fund created and designated by the provisions of Section 401 of the 1947 Indenture.

The term "1947 Indenture" shall mean the Trust Indenture, dated as of January 1, 1947, by and between the Authority and The National City Bank of New York (now First National City Bank), as trustee, as amended by Supplemental Indentures, dated January 1, 1948, July 1, 1956, January 1, 1961, March 1, 1962, March 1, 1965, April 1, 1967, April 1, 1970 and September 1, 1971, together with all future amendments and all indentures supplemental thereto as therein permitted.

The term "1947 Indenture Bonds" shall mean the bonds issued under the 1947 Indenture.

The term "1947 Revenue Fund" shall mean the Electric Power Authority Electric Revenue Fund, a special fund created and designated by the provisions of Section 506 of the 1947 Indenture.

The term "1947 Sinking Fund" shall mean the Puerto Rico Electric Power Authority Electric Revenue Bonds Sinking Fund, a special fund created and designated by the provisions of Section 507 of the 1947 Indenture.

The term "1947 Trustee" shall mean the trustee under the 1947 Indenture for the time being, whether original or successor.

The term "Opinion of Counsel" shall mean a written opinion of counsel who may (except as otherwise expressly provided in this Agreement) be counsel for the Authority.

- 18 -

Every opinion of counsel required to be filed with the Trustee in connection with an application to the Trustee to authenticate bonds under this Agreement shall contain the following statements: (i) that the Authority has the legal right and power to enter into this Agreement and has duly authorized and validly executed and delivered this Agreement and this Agreement is legally valid and binding upon the Authority and enforceable in accordance with its terms, (ii) that this Agreement creates a legally valid and effective pledge of the Net Revenues, subject only to the lien of the 1947 Indenture, and of the moneys, securities and funds held or set aside under this Agreement as security for the bonds, subject to the application thereof to the purposes and on the conditions permitted by this Agreement and specifying the place or places, if any, where filing or recording of any document is necessary in order to make such pledge effective or to continue it in effect, (iii) that the Authority has paid all municipal or governmental charges lawfully levied or assessed upon the System or any part thereof or upon any Revenues, (iv) that the issuance of the bonds then directed to be authenticated and delivered will not violate any provision of law or of the by-laws of the Authority, or result in the breach of, or constitute a default under, any agreement, indenture or other instrument to which the Authority is a party or by which it may be bound; (v) that no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the legal issue of said bonds (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the legal issue of said bonds, it shall specify and attach any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced), and (vi) that the bonds then directed to be authenticated and delivered are legally valid and binding direct obligations of the Authority, enforceable in accordance with their terms and the terms of this Agreement and have been duly and validly authorized and issued in accordance with law and this Agreement.

The term "Other Subsidy Bonds" shall mean bonds for which a subsidy or other payment made by the Secretary of the Department of Treasury may be made in respect of such bonds other than under Section 6431 of the Code.

The term "Paying Agents" shall mean with respect to the bonds of each Series the one or more banks or trust companies designated in a resolution of the Board or the office or agency of the Authority where the coupon bonds and coupons may be presented for payment.

The term "predecessor bonds" shall mean, with respect to any registered bond without coupons, every previous bond evidencing all or a portion of the same debt as that evidenced by such registered bond without coupons; and, for the purpose of this definition, any bond authenticated and delivered under Section 212 of this Agreement in lieu of a mutilated, destroyed or lost bond shall be deemed to evidence the same debt as the mutilated, destroyed or lost bond.

The term "Prerefunded Municipals" shall mean any bonds or other obligations of any state of the United States of America or Puerto Rico or of any agency, instrumentality of local governmental unit of any such state or Puerto Rico (a) which are (x) not callable prior to maturity or (y) as to which irrevocable instructions have been

- 19 -

given to the trustee of such bonds or other obligations by the obligor to give due notice of redemption and to call such bonds or other obligations for redemption on the date or dates specified in such instructions, (b) which are secured as to principal, redemption premium, if any, and interest by a fund consisting only of cash or Government Obligations or Time Deposits, secured in the manner set forth in Section 601 of this Agreement, which fund may be applied only to the payment of such principal of and interest and redemption premium, if any, on such bonds or other obligations on the maturity date or dates thereof or the specified redemption date or dates pursuant to such irrevocable instructions, as appropriate, and (c) as to which the principal of and interest on the Government Obligations or Time Deposits, secured in the manner set forth in Section 601 of this Agreement, which have been deposited in such fund, along with any cash on deposit in such fund are sufficient to pay principal of and interest and redemption premium, if any, on the bonds or other obligations on the maturity date or dates thereof or on the redemption date or dates specified in the irrevocable instructions referred to in clause (a) of this paragraph, as appropriate.

The term "Principal Accrual" shall mean for any period the amount of principal that would accrue during such period if such principal accrued ratably on the basis of a year consisting of twelve (12) thirty-day months. Unless otherwise provided by resolution of the Authority or an agreement supplemental hereto, the monthly accrual in respect of the principal or serial bonds shall commence on the first day of the twelfth month preceding the due date of such principal and shall end on the first day of the month succeeding the relevant Deposit Day.

The term "Principal and Interest Requirements" for any fiscal year, as applied to the bonds of any Series issued under this Agreement or the 1947 Indenture, shall mean the sum of:

(a) the amount required to pay the interest on all outstanding bonds of such Series which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year.

(b) the amount required to pay the principal of all outstanding serial bonds of such Series which is payable after July 31 in such fiscal year and on or prior to July 31 in the following fiscal year, and

(c) the Amortization Requirement for the term bonds of such Series for such fiscal year.

The Principal and Interest Requirements for the bonds of any Series issued under this Agreement shall be determined, as required from time to time, by the Trustee. In computing the Principal and Interest Requirements for any fiscal year for the bonds of any Series, the Trustee shall assume that an amount of the term bonds of such Series equal to the Amortization Requirement for the term bonds of such Series for such fiscal year will be retired by purchase or redemption on July 1 in the following fiscal year.

- 20 -

13475422.4

For purposes of determining the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502, the maximum Principal and Interest Requirements for purposes of Section 704 and the maximum aggregate Principal and Interest Requirements for purposes of Section 712 of this Agreement, the interest rate on Variable Rate Bonds shall be assumed to be one hundred ten percent (110%) of the greater of (i) the average interest rate on such Variable Rate Bonds during the twelve months ending with the month preceding the date of calculation, or such shorter period that such Variable Rate Bonds shall have been outstanding under this Agreement, or (ii) the rate of interest on such Variable Rate Bonds on the date of calculation. For purposes of determining the maximum aggregate Principal and Interest Requirements for purposes of Sections 208, 209 and 210 of this Agreement, the interest rate on Variable Rate Bonds outstanding or proposed to be issued on the date of calculation shall be determined in accordance with the formula in the previous sentence. If Variable Rate Bonds are payable at the option of the Bondholder and the source for said payment is a credit or liquidity facility, the "put" date or dates shall be ignored and the stated dates for Amortization Requirements and principal payments thereof shall be used for purposes of this calculation. If the Authority has notified the Trustee that a SWAP agreement is in effect in respect of Variable Rate Bonds, then for all purposes of this paragraph, except for the purpose of determining the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502 hereof, in the certificate mentioned in clause (d) of Section 208 hereof and in the covenant contained in Section 704 hereof, the interest rate on such Variable Rate Bonds shall be the SWAP rate under such SWAP agreement.

For purposes of determining the above requirements in the case of Put Bonds, the "put" dates or dates shall be ignored if the source for payment of said put is a credit or liquidity facility and the stated dates for Amortization Requirements and principal payments shall be used. For purposes of determining the above requirements in the case of Extendible Maturity Bonds, the bonds shall be deemed to mature on the later of the stated maturity date or the date to which such stated maturity date has been extended. For purposes of determining the above requirements in the case of Capital Appreciation Bonds, the principal and interest portions of the Accreted Value of Capital Appreciation Bonds becoming due at maturity or by virtue of an Amortization Requirement shall be included in the calculations of accrued and unpaid interest and principal requirements in such manner and during such period of time as is specified in the resolution authorizing such Capital Appreciation Bonds. If the Authority has notified the Trustee that a SWAP agreement is in effect in respect of Variable Rate Bonds, then for all purposes of this paragraph, except for the purpose of determining the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502 hereof, in the certificate mentioned in clause (d) of Section 208 hereof and in the covenant contained in Section 704 hereof, the interest rate on such Variable Rate Bonds shall be the SWAP rate under such SWAP agreement.

Principal and Interest Requirements on bonds shall be deemed to include the amount required to pay interest on outstanding Designated Maturity Bonds and any amortized principal of said Designated Maturity Bonds for any fiscal year, if said interest and amortized principal are payable, under the trust agreement or resolution providing for

- 21 -

13475422.4

said Designated Maturity Bonds, on a parity with interest and Amortization Requirements on bonds.

To the extent all or a portion of the principal of, Amortization Requirements for or interest on, any bonds of any Series are payable from moneys irrevocably set aside or deposited irrevocably for such purpose with a bank or trust company (which may include the Trustee) or from Investment Obligations irrevocably set aside or deposited irrevocably for such purpose with a bank or trust company (which may include the Trustee) or Time Deposits, secured in the manner set forth in Section 601 of this Agreement, and irrevocably set aside for such purpose, the principal of and the interest on which when due will provide sufficient moneys to make such payments, such principal, Amortization Requirements or interest shall not be included in determining Principal and Interest Requirements; provided, however, that for purposes of the definition of Principal and Interest Requirements as used in Sections 502(A)(b) and 502(B)(b), respectively, said definition shall include any interest payable from any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon. The Executive Director or his designee shall deliver to the Trustee a certificate describing the principal of, Amortization Requirements for and interest on any bonds for which moneys, Investment Obligations or Time Deposits have been set aside or deposited pursuant to this paragraph, and stating that such principal, Amortization Requirements and interest should not be included in determining the Principal and Interest Requirements. Upon request of the Trustee, the Authority shall cause to be delivered to the Trustee a certificate of an independent verification agent as to the sufficiency of the maturing principal amounts of any Investment Obligations or Time Deposits, together with interest thereon, set aside or deposited pursuant to this paragraph to pay said principal, Amortization Requirements and interest.

For purposes of determining the maximum Principal and Interest Requirements for purposes of Sections 208, 209 and 210 of this Agreement, the aggregate Principal and Interest Requirements in the covenant as to rates contained in Section 502, the maximum Principal and Interest Requirements for purposes of Section 704 and the maximum aggregate Principal and Interest Requirements for purposes of Section 712 of this Agreement, on the date of issuance of a Federally Subsidized Bonds and for so long as the Trustee shall receive the scheduled amount of the Federal Subsidy Payments on or before such interest is payable, all or a portion of the interest in respect of one or more series of Federally Subsidized Bonds shall be excluded from the calculation of the Principal and Interest Requirement if, and to the extent that the interest thereon is payable from a Federal Subsidy. Notwithstanding the foregoing, if the Trustee shall not receive the scheduled amount of the Federal Subsidy Payments on or before the date interest on such Federally Subsidized Bonds is payable or within thirty (30) of the date such Federal Subsidy Payments were scheduled to be received under the then current applicable law and regulations, then from and after the occurrence of such failure to receive such Federal Subsidy and until such Federal Subsidy Payments shall resume and all prior deficiencies are cured, the exclusion from the calculation of the Principal and Interest Requirement set forth in the preceding sentence shall no longer be effective for purposes of determining the maximum Principal and Interest Requirements for purposes of Sections 208, 209 and 210 of this Agreement, the aggregate Principal and Interest Requirements in the covenant

- 22 -

as to rates contained in Section 502, the maximum Principal and Interest Requirements for purposes of Section 704 and the maximum aggregate Principal and Interest Requirements for purposes of Section 712 of this Agreement.

The term "Put Bonds" shall mean bonds, other than Variable Rate Bonds, which by their terms may be tendered by and at the option of the holder thereof for payment prior to the stated maturity thereof.

The term "Redemption Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

The term "Renewal and Replacement Fund" shall mean the Electric Power Authority Renewal and Replacement Fund, a special fund created and designated by the provisions of Section 512 of the 1947 Indenture.

The term "Reserve Account" shall mean the special account created in the Sinking Fund by the provisions of Section 507 of this Agreement.

The term "Reserve Account Insurance Policy" shall mean the insurance policy, surety bond or other acceptable evidence of insurance, if any, to be deposited in the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, for the purpose of making the payments required to be made from the Reserve Account under Section 510 hereof. The issuer providing such insurance shall be a municipal bond insurer whose policy or bond results in the rating of municipal obligations secured by such policy or bond to be rated, at the time of deposit into the Reserve Account, in one of the three highest grades by (i) either Standard & Poor's Corporation or its successor, or Moody's Investors Service, Inc. or its successor or (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency.

The term "Reserve Account Letter of Credit" shall mean the irrevocable, transferable letter of credit, if any, to be deposited in the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, for the purpose of making the payments required to be made from the Reserve Account under Section 510 hereof. The issuer providing such letter of credit shall be a banking association, bank or trust company or branch thereof whose letter of credit results in the rating of municipal obligations secured by such letter of credit to be rated, at the time of deposit into the Reserve Account, in one of the three highest grades by (i) either Standard & Poor's Corporation or its successor, or Moody's Investors Service, Inc. or its successor or (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency.

The term "Reserve Maintenance Fund" shall mean the Puerto Rico Electric Power Authority Reserve Maintenance Fund, a special fund created and designated by the provisions of Section 507 of this Agreement.

- 23 -

13475422.4

The term "Revenue Fund" shall mean the Puerto Rico Electric Power Authority Power Revenue Fund, a special fund created and designated by the provisions of Section 506 of this Agreement.

The word "Revenues" shall mean all moneys received by the Authority in connection with or as a result of its ownership or operation of the System, including the income derived by the Authority from the sale of electricity generated or distributed by the System, any proceeds of use and occupancy insurance on the System or any part thereof and income from investments made under the provisions of the 1947 Indenture and this Agreement, except income from the investment of moneys in the 1947 Construction Fund, the Construction Fund, the Capital Improvement Fund, the Subordinate Obligations Fund to the extent such income has been derived from the investment of moneys in such Fund to be used to pay Subordinate Obligations incurred to pay the cost of any work or properties which have not been included by the Authority as part of the System as provided in Section 516 hereof, and the Reserve Maintenance Fund which shall be deemed to be a part of said Funds, respectively. Except for the purpose of determining the amount of the Revenues in the covenant as to rates contained in Section 502 hereof, Revenues shall not include any amounts paid to the Authority by a SWAP party in connection with Variable Rate Bonds.

The word "Secretary" shall mean the Secretary, or any Assistant Secretary of the Authority, or if there is no secretary or assistant secretary, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Secretary.

The term "Self-insurance Fund" shall mean the Puerto Rico Electric Power Authority Self-insurance Fund, a special fund created and designated by the provisions of Section 507 of this Agreement.

The term "serial bonds" shall mean the bonds of a Series which shall be stated to mature in annual or semi-annual installments or bonds which are otherwise designated serial bonds in a resolution of the Board adopted prior to the issuance of such bonds, and the term "term bonds" shall mean the bonds of a Series maturing on July 1 and designated term bonds in a resolution of the Board adopted prior to the issuance of such bonds.

The word "Series" shall mean either (i) the bonds issued and delivered at any one time under the provisions of Section 208 or 209 of this Agreement or (ii) the refunding bonds issued at any one time under the provisions of the second paragraph of Section 210 of this Agreement. Bonds issued under the first paragraph of Section 210 of this Agreement to refund serial bonds of any Series shall be deemed to constitute a part of the bonds of such Series.

The term "Sinking Fund" shall mean the Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund, a special fund created and designated by the provisions of Section 507 of this Agreement.

13475422.4

The term "Subordinate Obligations" shall mean any obligations of the Authority incurred as provided in Section 516 of this Agreement.

14 AUG 12 PM 3: 23

The term "Subordinate Obligations Fund" shall mean the Puerto Rico Electric Power Authority Subordinate Obligations Fund, a special fund created and designated by Section 507 of this Agreement.

"SWAP agreement" shall mean an agreement between the Authority and a SWAP party whereby the SWAP party agrees to pay the Authority amounts calculated on the basis of all or a portion of the interest on Variable Rate Bonds at or prior to the times such interest is due and payable in consideration of the Authority's payment to the SWAP party of amounts set forth in the SWAP agreement.

"SWAP party" shall mean a person who is party to a SWAP agreement and whose senior obligations are rated at the time of the execution and delivery of such SWAP agreement in one of the three highest rating categories (without regard to gradations within a category) by (i) Standard & Poor's Corporation or its successor and (ii) Moody's Investors Service or its successor.

"SWAP rate" shall mean the fixed rate per annum on the principal amount of Variable Rate Bonds covered by a SWAP agreement equal to the percentage derived by dividing (i) the sum of the amounts in the last twelve months paid by the Authority in respect of interest on such bonds and to the SWAP party less the amount paid to the Authority by the SWAP party by (ii) such principal amount of Variable Rate Bonds; provided, however, that if such SWAP agreement has been in effect for less than twelve months, such percentage shall be multiplied by 360 divided by the number of days between the effective date of such SWAP agreement and the date of calculation determined on the basis of 30-day months.

The word "System" shall mean all the properties presently owned and operated by the Authority as a single integrated system, together with all works and properties which may be hereafter acquired or constructed by the Authority in connection with the production, distribution or sale of electric energy and the acquisition or construction of which shall be financed in whole or in part from the proceeds of bonds issued under the provisions of the 1947 Indenture or this Agreement or from moneys deposited to the credit of the 1947 Construction Fund, the Construction Fund, the Capital Improvement Fund or the Renewal and Replacement Fund or from Subordinate Obligations to the extent such works and properties have been included by the Authority as part of the System as provided in Section 516 hereof.

The term "Time Deposits" shall mean time deposits, certificates of deposits or similar arrangements with the Trustee, Government Development Bank for Puerto Rico or any bank or trust company which is a member of the Federal Deposit Insurance Corporation having a combined capital and surplus aggregating not less than $100,000,000.

13475422.4

The word "Treasurer" shall mean the Treasurer or any Assistant Treasurer of the Authority, or if there is no treasurer or assistant treasurer, then any person designated by the Board or by the by-laws of the Authority to perform the functions of the Treasurer.

The word "Trustee" shall mean the Trustee for the time being, whether original or successor.

The term "Valuation Date" shall mean with respect to any Capital Appreciation Bonds the date or dates set forth in the resolution authorizing such bonds on which Accreted Values are assigned to the Capital Appreciation Bonds.

The term "Variable Rate Bonds" shall mean bonds issued with a variable, adjustable, convertible or similar interest rate which is not fixed in percentage at the date of issue for the term thereof, and which may or may not be convertible to a fixed interest rate for the remainder of their term.

Section 102.  Miscellaneous definitions.  Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.  Unless the context shall otherwise indicate, the words "bond", "coupon", "owner", "holder" and "person" shall include the plural as well as the singular number, the word "person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof, and the word "holder" or "bondholder" when used herein with respect to bonds issued hereunder shall mean the holder or registered owner, as the case may be, of bonds at the time issued and outstanding hereunder.

## Article II
### Form, Execution and Registration of Bonds and Conditions for Authentication and Delivery of Bonds.

Section 201.  Limitation on issuance of bonds.  No bonds may be issued under the provisions of this Agreement except in accordance with the provisions of this Article.

Section 202.  Form of bonds.  The definitive bonds are issuable as coupon bonds or as registered bonds without coupons or both.  The definitive bonds issued under the provisions of this Article shall be substantially in the forms hereinabove set forth, with such appropriate variations, omissions and insertions as are permitted or required by this Agreement and with such additional changes as may be necessary or appropriate to conform to the provisions of the resolution or resolutions providing for the issuance of such bonds.  All such bonds may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or of any securities exchange on which the bonds may be listed to traded or any usage or requirement of law with respect thereto or as may be authorized by the Authority and approved by the Trustee.  The form of bonds may be changed as specified in said resolution or resolutions to reflect appropriate provisions for the issuance of bonds with interest payable other than semi-annually, and may reflect, without limitation, provisions for Capital Appreciation Bonds, Variable Rate Bonds, Put Bonds,

- 26 -

13475422.4

Extendible Maturity Bonds and other types of bonds, subject to any limitations under the laws of Puerto Rico at the time of the issuance of the particular bonds.

Section 203. <u>Details of bonds</u>. The bonds shall be dated, shall bear interest until their payment, such interest to the maturity thereof being payable semi-annually on the 1st days of January and July in each year, and shall be stated to mature (subject to the right of prior redemption), all as hereinafter provided. Notwithstanding the previous sentence, bonds may bear interest payable other than semi-annually, as may be provided by the resolution or resolutions authorizing the issuance of particular bonds, and bonds may include, without limitation, Capital Appreciation Bonds, Variable Rate Bonds, Put Bonds, Extendible Maturity Bonds and other types of bonds, subject to any limitations under the laws of Puerto Rico at the time of the issuance of the particular bonds.

Each coupon bond shall bear interest from its date. Each registered bond without coupons shall bear interest from the interest payment date next preceding the date on which it is authenticated, unless authenticated on an interest payment date, in which case it shall bear interest from such interest payment date, or, unless authenticated prior to the first interest payment date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any registered bond without coupons interest is in default, such bond shall bear interest from the date to which interest shall have been paid.

The bonds shall be signed by, or bear the facsimile signature of, the Executive Director and shall be signed by, or bear the facsimile signature of, the Secretary, and a facsimile of the corporate seal of the Authority shall be imprinted on the bonds.

The coupons attached to the coupon bonds shall be substantially in the form hereinabove set forth and shall bear the facsimile signature of the Executive Director.

In case any officer whose signature or facsimile of whose signature shall appear on any bonds or coupons shall cease to be such officer before the delivery of such bonds, such signature or such facsimile shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery, and also any bond may bear the facsimile signature of or may be signed by such persons as at the actual time of the execution of such bond shall be the proper officer to sign such bond although at the date of such bond such persons may not have been such officers.

Both the principal of and the interest on the bonds shall be payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of coupon bonds of each Series and the interest on all coupon bonds of such Series shall be payable at the principal offices of the Paying Agents designated for the bonds of such Series. The principal of all registered bonds without coupons shall be payable only to the registered owner or his legal representative at the principal corporate trust office of the Trustee, and payment of the interest on each registered bond without coupons shall, except as may otherwise be provided by resolution of the Authority authorizing the issuance of any Series of bonds under this Agreement, be made by the Trustee on each interest payment date to the person appearing on the registration books of the Authority hereinafter provided for as the registered owner thereof (or of any predecessor bond) on the 15th

13475422.4

day of the month next preceding such interest payment date, by check mailed to such registered owner at his address as it appears on such registration books. Except as provided in Section 211 of this Agreement, payment of the principal of all bonds shall be made upon the presentation and surrender of such bonds as the same shall become due and payable. Payment of the interest on the coupon bonds shall be made upon the presentation and surrender of the coupons, if any, representing such interest as the same respectively become due and payable.

Section 204. <u>Authentication of bonds</u>. Only such of the bonds as shall have endorsed thereon a certificate of authentication substantially in the form hereinabove set forth, duly executed by the Trustee, shall be entitled to any benefit or security under this Agreement. No bond and no coupon appertaining to any coupon bond shall be valid or obligatory for any purpose unless and until such certificate of authentication shall have been duly executed by the Trustee, and such certificate of the Trustee upon any such bond shall be conclusive evidence that such bond has been duly authenticated and delivered under this Agreement. The Trustee's certificate of authentication on any bond shall be deemed to have been duly executed if signed by an authorized officer of the Trustee, but it shall not be necessary that the same officer sign the certificate of authentication on all of the bonds that may be issued hereunder at any one time. Before authenticating or delivering any coupon bonds the Trustee shall detach and cancel all matured coupons, if any, appertaining thereto, except any coupons which represent unpaid interest.

Section 205. <u>Exchange of coupon bonds for registered bonds</u>. Coupon bonds, upon surrender thereof at the principal office of the Trustee with all unmatured coupons and all matured coupons in default, if any, appertaining thereto, may, at the option of the holder thereof, be exchanged for an equal aggregate principal amount of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, bearing interest at the same rate, and, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the coupon bonds surrendered for exchange.

Registered bonds without coupons, upon surrender thereof at the principal office of the Trustee, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Trustee, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of coupon bonds of the same Series (if authorized for such Series) and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Agreement, and bearing interest at the same rate, and in either case, with the exception of the differences between the form of coupon bonds and the form or registered bonds without coupons which are set forth in the preamble of this Agreement, in the same form as the registered bonds without coupons surrendered for exchange.

The Authority shall make provision for the exchange of bonds at the principal office of the Trustee.

13475422.4

Section 206. <u>Negotiations of coupon bonds</u>. Title to any coupon bond and to any interest coupon shall pass by delivery in the same manner as a negotiable instrument payable to bearer. The Trustee as Bond Registrar shall keep books for the registration of and for the registration of transfers of bonds as provided in this Agreement. The transfer of any registered bond without coupons may be registered only upon the books kept for the registration of and registration of transfers of bonds upon surrender thereof to the Bond Registrar together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for such bond a new registered bond or bonds without coupons registered in the name of the transferee, of any denomination or denominations authorized by this Agreement, or, at the option of the transferee and if coupon bonds are authorized for the same Series of such bond, coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in an aggregate principal amount equal to the principal amount of such registered bond without coupons, of the same Series and maturity and bearing interest at the same rate.

In all cases in which bonds shall be exchanged or the transfer of registered bonds without coupons shall be registered hereunder, the Authority shall execute and the Trustee shall authenticate and deliver at the earliest practicable time bonds in accordance with the provisions of this Agreement. All registered bonds without coupons surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Trustee. All coupon bonds and unmatured coupons surrendered in any such exchange or registration of transfer shall be retained by the Trustee in it custody. The Authority or the Trustee may make a charge for every such exchange or registration of transfer of bonds sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration transfer, but no other charge shall be made to any bondholder for the privilege of exchanging or registering the transfer of bonds under the provisions of this Agreement. Neither the Authority nor the Trustee shall, except as may otherwise be provided by resolution of the Authority authorizing the issuance of any Series of bonds under this Agreement, be required to make any such exchange or registration of transfer of bonds during the fifteen (15) days immediately preceding an interest payment date on the bonds or, in the case of any proposed redemption of bonds, immediately preceding the date of first publication of notice of such redemption (or, if all the bonds to be redeemed are issuable as registered bonds without coupons, immediately preceding the date of mailing of notice of such redemption), or after such bond or any portion thereof has been selected for redemption.

Section 207. <u>Ownership of registered bonds</u>. As to any registered bond without coupons, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of and the premium, if any, an interest on any such bond shall be made only to the registered owner thereof or his legal representative. All such payment shall be valid and effectual to satisfy and discharge the liability upon such bond including the interest thereon to the extent of the sum or sums so paid. The Authority, the Trustee, the Bond Register and the Paying Agents may deem and treat the bearer of any coupon bond and the bearer of any coupon appertaining to any coupon bond as the absolute owner of such bond or coupon, as the case may be, whether such bond or coupon shall be overdue or not, for the purpose of receiving payment thereof and for all other

purposes whatsoever, and neither the Authority, the Trustee, the Bond Registrar nor the Paying Agents shall be affected by any notice to the contrary.

Any person in possession of any coupon bond or of any coupon appertaining to any coupon bond is hereby authorized to represent himself as the absolute owner of such bond or coupon, as the case may be, and is hereby granted power to transfer absolute title thereto by delivery thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his transferor or any person in the chain of title and before the maturity of such bond. Any registered owner of any registered bond without coupons is hereby granted power to transfer absolute title thereto by assignment thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his assignor or any person in the chain of title and before the maturity of such bond. Every prior holder or owner of any bond or of any coupon appertaining to any coupon bond shall be deemed to have waived and renounced all of his equities or rights therein in favor of every such bona fide purchaser, and every such bona fide purchaser shall acquire absolute title thereto and to all rights represented thereby.

Section 208.  Issuance of revenue bonds to pay cost of Improvements.  Revenue bonds of the Authority may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time for the purpose of paying all or any part of the cost of any Improvements, including the repayment of moneys advanced for paying such cost and, if deemed necessary by the Board, the payment of the interest to accrue on such moneys advanced to the date of such payment and for providing moneys for deposit to the credit of the Reserve Account.

Before any bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof, describing in brief and general terms, the Improvements which are to be acquired or constructed or which were acquired or constructed from any advances or moneys to be repaid from the proceeds of such bonds, and specifying the amount, if any, of the proceeds of such bonds to be deposited to the credit of the Reserve Account.  The bonds of each Series issued under the provisions of this Section shall be designated "Puerto Rico Electric Power Authority Power Revenue Bonds Series ....." (inserting a year or a letter to identify the particular Series), shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and the term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds.  Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such bonds shall be on a parity with and shall be entitled to the same benefits and security under this Agreement as all other bonds issued under this Agreement.

Before any Variable Rate Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution specifying, without limitation, the interest rate calculation

- 30 -

13475422.4

methods and any conversion features, and any credit or liquidity facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds. The Variable Rate Bonds may provide that the owner of any such Bond may demand payment of principal and interest within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent. The designated agent for the Authority, in accordance with the terms of a remarketing or placement agreement, may provide for the resale or redelivery of the Variable Rate Bond on behalf of the Authority at a price provided for in the agreement. If the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized to draw upon a previously executed credit or liquidity facility of one or more banks or other financial or lending institutions for payment of interest and principal for a particular Series of Variable Rate Bonds to which such credit or liquidity facility shall pertain. The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Authority, the terms and provisions for the remarketing or placement agreement, and the terms and provisions of the credit or liquidity facility, including the terms of any lien on Revenues in connection with the credit or liquidity facility not inconsistent with Section 712 hereof, shall be as designated by a resolution of the Board pertaining to the Variable Rate Bonds to which such terms and provisions are applicable prior to the issuance thereof. Before any Put Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which may provide for some of the above terms and provisions. Before any Extendible Maturity Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which shall set forth the terms and conditions of the exercise by the bondholders or the Authority of any option to extend the maturity of said bonds. Before any Capital Appreciation Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution specifying the Valuation Dates, the Accreted Values on such dates, the manner in which and the period during which principal and interest shall be deemed to accrue on such bonds for purposes of the definition of "Principal and Interest Requirements" and the amount of any deposit required for the Reserve Account in accordance with Section 507 hereof.

Prior to the issuance of any Federally Subsidized Bonds, the Board shall adopt a resolution identifying the details of such bonds, including, without limitation, the rate or rates of interest to be paid on such bonds, the source or sources and the amount of the Federal Subsidy expected to be received by the Authority in respect of such Series of Federally Subsidized Bonds, whether the amounts received from such Federal Subsidy are to be pledged solely to the owners of such Series of Federally Subsidized Bonds or to the owners of all outstanding bonds and a covenant by the Authority to take such actions as are necessary to ensure receipt of such Federal Subsidy.

Such bonds shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

(a)     a copy, certified by the Secretary, of the resolution or resolutions mentioned above:

- 31 -

13475422.4

(b)     a copy, certified by the Secretary, of the resolution of the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c)     a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth:

(i)     the amounts of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(ii)     the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement,

(iii)     the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement and the bonds then to be issued hereunder.

(iv)     his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years,

(v)     his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (iv) of this clause (c),

(vi)     the percentage derived by dividing the amount in item (i) of this clause (c) by the amount shown in item (ii) of said clause, and

(vii)     the percentage derived by dividing the amount in item (v) of this clause (c) by the amount shown in item (iii) of said clause;

(d)     if any of the 1947 Indenture Bonds are outstanding, a certificate, signed by the Executive Director and approved by the Consulting Engineers, to the effect that the sum determined by the Authority, with the approval of the Consulting Engineers, as the proper amount to be transferred each month from the 1947 Revenue Fund to the credit of the Renewal and Replacement Fund is not less than one-twelfth (1/12) of the maximum Principal and Interest Requirements for any fiscal year thereafter to and including the fiscal year in which the last maturity of any outstanding 1947 Indenture Bonds occurs on account of all bonds then outstanding under this Agreement and the bonds then to be issued hereunder; and

- 32 -

13475422.4

(e) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolutions as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless each of the percentages shown in items (vi) and (vii) of the certificate mentioned in clause (c) of this Section is not less than one hundred twenty per centum (120%).

The proceeds (excluding accrued interest but including any premium) of such bonds shall be deposited as is required by the resolution or resolutions authorizing the issuance of such bonds; provided, however, that any balance of such proceeds remaining after providing for (i) any repayment of moneys advanced to the Authority, including any payment of interest accrued on such moneys advanced to the date of such payment, (ii) any deposit to the credit of the Reserve Account, and (iii) any deposit to the Bond Service Account on account of interest on such bonds in accordance with clause (f) of Section 403 of this Agreement and (iv) any payment of expenses incident to the financing shall be paid to the Authority for deposit to the credit of the Construction Fund.

All moneys received as accrued interest on bonds issued under the provisions of this Section shall be deposited with the Trustee to the credit of the Bond Service Account.

Section 209.  Issuance of revenue bonds for any proper corporate purpose.  After the outstanding 1947 Indenture Bonds have been paid or provision has been made for the their payment and the release of the 1947 Indenture, in addition to any other bonds which may be issued under the provisions of this Article, revenue bonds of the Authority may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time for any proper corporate purpose of the Authority (other than for the purpose of refunding outstanding bonds of the Authority or for the purpose of providing funds to pay any part of the cost of Improvements or for repaying advances for such purpose).

Before any bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof and setting forth the purpose for which such bonds are to be issued. The bonds of each Series issued under the provisions of this Section shall be designated "Puerto Rico Electric Power Authority Power Revenue Bonds, Series ....." (inserting a year or a letter to identify the particular Series), shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds, in such year or years, not later than fifty (50) years from their date, shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents and the term bonds of such Series shall have such Amortization Requirements, all as may be

- 33 -

provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such bonds shall be on a parity with and shall be entitled to the same benefits and security under this Agreement as all other bonds issued under this Agreement.

Before any Variable Rate Bonds shall be issued under the provision of this Section, the Board shall adopt a resolution specifying, without limitation, the interest rate calculation methods and any conversion features, and any credit or liquidity facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds. The Variable Rate Bonds may provide that the owner of any such bond may demand payment of principal and interest within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent. The designated agent for the Authority, in accordance with the terms of a remarketing or placement agreement, may provide for the resale or redelivery of the Variable Rate on behalf of the Authority at a price provided for in the agreement. If the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized to draw upon a previously executed credit or liquidity facility of one or more banks or other financial or lending institutions for payment of interest and principal for a particular Series of Variable Rate Bonds to which such credit or liquidity facility shall pertain. The particular forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Authority, the terms and provisions of the remarketing or placement agreement, and the terms and provisions of the credit or liquidity facility, including the terms of any lien on Revenues in connection with the credit or liquidity facility not inconsistent with Section 712 hereof, shall be as designated by a resolution of the Board pertaining to the Variable Rate Bonds to which such terms and provisions are applicable adopted prior to the issuance thereof. Before any Put Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which may provide for some of the above terms and provisions. Before any Extendable Maturity Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which shall set forth the terms and conditions of the exercise by the bondholders of the Authority of any option to extend the maturity of said bonds. Before any Capital Appreciation Bond shall be issued under the provisions of this Section, the Authority shall adopt a resolution specifying the Valuation Dates, the Accredited Values on such dates, the manner in which and the period during which principal and interest shall be deemed to accrue on such bonds for purposes of the definition of "Principal and Interest Requirements" and the amount of any deposit required for the Reserve Account in accordance with Section 507 hereof.

Prior to the issuance of any Federally Subsidized Bonds, the Board shall adopt a resolution identifying the details of such bonds, including, without limitation, the rate or rates of interest to be paid on such bonds, the source or sources and the amount of the Federal Subsidy expected to be received by the Authority in respect of such Series of Federally Subsidized Bonds, whether the amounts received from such Federal Subsidy are to be pledged solely to the owners of such Series of Federally Subsidized Bonds or to the owners of all outstanding bonds and a covenant by the Authority to take such actions as are necessary to ensure receipt of such Federal Subsidy.

- 34 -

Such bonds shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

(a)     a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b)     a copy, certified by the Secretary, of the resolution of the Board awarding such bonds; specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c)     a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth:

(i)     the amount of the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(ii)     the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under this Agreement,

(iii)     the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under this Agreement and the bonds then to be issued hereunder,

(iv)     his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years,

(v)     his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (iv) of this clause (c),

(vi)     the percentage derived by dividing the amount in item (i) of this clause (c) by the amount shown in item (ii) of said clause, and

(vii)     the percentage derived by dividing the amount in item (v) of this clause (c) by the amount shown in item (iii) of said clause; and

(d)     an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

- 35 -

13475422.4

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b); but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolutions as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless each of the percentages shown in items (vi) and (vii) of the certificate mentioned in clause (c) of this Section is not less than one hundred twenty per centum (120%).

The proceeds (excluding accrued interest but including any premium) of such bonds shall be deposited as is required by the resolution or resolutions authorizing the issuance of such bonds.

All moneys received as accrued interest on bonds issued under the provisions of this Section shall be deposited with the Trustee to the credit of the Bond Service Account.

Section 210. Issuance of revenue refunding bonds to refund all 1947 Indenture Bonds and bonds issued under this Agreement. If at any time the Board shall determine that the moneys in the Sinking Fund available for such purpose will not be sufficient for paying at the maturity the serial bonds of any Series which will mature within one year thereafter, revenue refunding bonds of the Authority may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, for the purpose of providing funds for refunding such bonds and, if deemed necessary by the Board, for paying the interest to accrue thereon to their maturity and any expenses in connection with such refunding. Before any bonds shall be issued under the provisions of this paragraph the Board shall adopt a resolution or resolutions authorizing the issuance of such bonds, fixing the amount and the details thereof, and describing the bonds to be refunded. Such revenue refunding bonds shall be deemed to constitute a part of the term bonds, if any, of such Series and shall mature at the same time and shall be subject to redemption at the same times and prices as such term bonds or, in case all the outstanding bonds of such Series shall be serial bonds, such revenue refunding bonds shall mature on the 1st day of July in a year not earlier than one year after the last maturing installment of the bonds of such Series and not later than fifty (50) years from their date, shall be deemed to be term bonds of such Series and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), all as may be provided by the resolution or resolutions authorizing the issuance of such bonds. Such revenue refunding bonds shall be designated, shall be issued in such form, shall be dated and shall bear interest at a rate not exceeding the maximum rate then permitted by law, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds.

Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, from time to time, for the purpose of providing funds, with any other available funds, for redeeming prior to or at their maturity or maturities all of the outstanding 1947 Indenture Bonds, any 1947 Indenture Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all or any part of the outstanding bonds of any Series or outstanding Designated Maturity Bonds, including the payment of any redemption premium thereon, and, if deemed necessary by

- 36 -

the Board, for paying the interest to accrue thereon to the date fixed for their redemption or their maturity and any expenses in connection with such refunding and for the purpose of providing moneys for deposit to the credit of the Reserve Account. Before any bonds shall be issued under the provisions of this paragraph, the Board shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof and describing the bonds to be redeemed or paid. Such revenue refunding bonds shall be designated, shall be issued in such form, shall be in such denominations, shall be dated, shall bear interest at a rate or rates not exceeding the maximum rate then permitted by law, shall be stated to mature on July 1 as to term bonds or annually on January 1 or July 1 or semi-annually on January 1 and July 1 as to serial bonds in such year or years, not later than fifty (50) years from their date, and shall be made redeemable at such times and prices (subject to the provisions of Article III of this Agreement), shall be numbered, shall have such Paying Agents, and any term bonds of such Series shall have such Amortization Requirements, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued under this Agreement.

Before any Variable Rate Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution specifying, without limitation, the interest rate calculation methods and any conversion features, and any credit or liquidity facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds. The Variable Rate Bonds may provide that the owner of any such Bond may demand payment of principal and interest from the Authority within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent. The designated agent for the Authority, in accordance with the terms of a remarketing or placement agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Authority at a price provided for in the agreement. If the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized to draw upon a previously executed credit or liquidity facility of one or more banks or other financial or lending institutions for payment of interest and principal for a particular Series of Variable Rate Bonds to which such credit or liquidity facility shall pertain. The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Authority, the terms and provisions of the remarketing or placement agreement, and the terms and provisions of the credit or liquidity facility, including the terms of any lien on Revenues in connection with the credit or liquidity facility not inconsistent with Section 712 hereof, shall be as designated by a resolution of the Board pertaining to the Variable Rate Bonds to which such terms and provisions are applicable adopted prior to the issuance thereof. Before any Put Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which may provide for some of the above terms and provisions. Before any Extendible Maturity Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution which shall set forth the terms and conditions of the exercise by the bondholders or the Authority of any option to extend the maturity of said bonds. Before any Capital Appreciation Bonds shall be issued under the provisions of this Section, the Authority shall adopt a resolution specifying the Valuation Dates, the Accredited Values on such dates, the manner in which and the period during which principal and interest shall be deemed to accrue on such bonds for purposes of the

- 37 -

definition of "Principal and Interest Requirements" and the amount of any deposit required for the Reserve Amounts in accordance with Section 507 hereof.

Revenue refunding bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

(a) a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b) a copy, certified by the Secretary, of the resolution adopted by the Board awarding such bonds, specifying the interest rate for each of such bonds and directing the authentication and delivery of such bonds to or upon the order of the purchasers mentioned therein upon payment of the purchase price therein set forth and the accrued interest on such bonds;

(c) in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds or any 1947 Indenture Bonds issued for a purpose for which moneys may be expended from the Renewal and Replacement Fund, all or any part of the outstanding bonds of any Series or outstanding Designated Maturity Bonds at or prior to their maturity or maturities.

(i) a certificate, signed by the Executive Director, setting forth (A) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement, and (B) the amount of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all 1947 Indenture Bonds then outstanding and all bonds to be outstanding under this Agreement after the issuance of such revenue refunding bonds and the redemption or payment of the bonds to be refunded; and

(ii) such documents as shall be required by the Trustee to show that provision has been made in accordance with the provisions of the 1947 Indenture or this Agreement, as the case may be, for the redemption of all of the bonds to be refunded; and

(d) an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned above in this Section shall have been filed with the Trustee and when the bonds described in the resolutions, mentioned in clauses, (a) and (b) of this Section shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver such bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in said clause (b), but only upon payment to the Trustee of the purchase price of such bonds and the accrued interest. The Trustee shall be entitled to rely upon such resolution as to all matters stated therein. The Trustee, however, shall not authenticate and deliver such bonds unless

- 38 -

(I)     the proceeds (excluding accrued interest but including any premium) of such revenue refunding bonds, together with any moneys to be withdrawn from the Sinking Fund by the Trustee, and any other moneys which have been made available to the Trustee for such purpose as hereinafter provided, or the principal of and the interest on the investment of such proceeds or any such moneys, shall be not less than an amount sufficient to pay the principal of and the redemption premium, if any, on the bonds to be refunded and the interest which will become due and payable on or prior to the date of their payment or redemption, the financing costs in connection with such refunding, and any deposit to the credit of the Reserve Account and

(II)     in case such bonds are to be issued for the purpose of providing funds for redeeming all of the outstanding 1947 Indenture Bonds or any 1947 Indenture Bonds issued for a purpose for which moneys may be expended from the Renewal and Redemption Fund, all or any part of the outstanding bonds of any Series or outstanding Designated Maturity Bonds prior to their maturity or maturities, either (1) the amount shown in item (B) of the certificate mentioned in subclause (i) of clause (c) of this Section shall be less than the amount shown item (A) of said certificate or (2) there shall be filed with the Trustee a certificate, signed by the Executive Director and approved by the Consulting Engineers, setting forth

(A)     the amount of the Net Reserves for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of the issuance of such bonds, adjusted to reflect the moneys which would have been received if the rate schedule in effect on the date of the issuance of such bonds had been in effect throughout such twelve (12) calendar months,

(B)     his estimate of the Net Revenues for each of the five (5) fiscal years immediately following the fiscal year in which the issuance of such bonds occurs, taking into account the rate schedule in effect on the date of the issuance of such bonds and any rate schedule the Authority has covenanted to put in effect during such five (5) fiscal years, and

(C)     his estimate of the average annual Net Revenues for such five (5) fiscal years, taking into account the rate schedules referred to in item (B) above.

and stating that each of the amounts shown in items (A) and (C) above is not less than one hundred twenty per centum (120%) of each of the amounts shown in items (A) and (B) of the certificate mentioned in subclause (i) of clause (c) of this Section.

The proceeds of such revenue refunding bonds shall, to the extent practicable, be invested and reinvested by the Trustee, with the approval of the Executive Director, in Government Obligations, in Prerefunded Municipals or in Time Deposits, secured in the manner set forth in Section 601 of this Agreement, and the moneys so invested shall be available for use when required. The income derived from such investments shall be added to such proceeds and applied in accordance with the provisions of this Section 210.

13475422.4

Simultaneously with the delivery of such revenue refunding bonds the Trustee shall withdraw from the Bond Service Account and the Redemption Account in the Sinking Fund an amount equal to the sum of the amounts deposited to the credit of such Accounts under the provisions of Section 507 of this Agreement on account of the interest which is payable on the bonds to be refunded on the next interest payment date of such bonds and on account of the next maturing installment of principal of or the Amortization Requirement for the bonds to be refunded, but no such withdrawal shall be made on account of any deposits to the credit of the Reserve Account in the Sinking Fund. The amount so withdrawn, the proceeds (excluding accrued interest but including any premium) of such revenue refunding bonds and, any other moneys which have been made available to the Trustee for such purpose, shall be held by the Trustee or deposited with the Paying Agents to be held in trust for the sole and exclusive purpose of paying such principal, redemption premium and interest; provided, however, that such portion of the proceeds of such revenue refunding bonds as is specified by the Executive Director in a certificate filed with the Trustee shall be paid to the Authority to be used for the payment of expenses incident to the financing. Any part of the proceeds of such revenue refunding bonds which are not needed for the purpose of paying the principal of and the redemption premium, if any, on the bonds to be refunded, making any deposit to the Reserve Account or paying any expenses in connection with such refunding shall be deposited with the Trustee to the credit of the Bond Service Account in the Sinking Fund. The amount received as accrued interest on such revenue refunding bonds shall be deposited with the Trustee to the credit of the Bond Service Account in the Sinking Fund.

Section 210A. <u>Issuance of revenue refunding bonds for purposes of exchanging such bonds for all outstanding 1947 Indenture Bonds</u>. Revenue refunding bonds of the Authority may also be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, at one time, for the purpose of exchanging such revenue refunding bonds for an equal principal amount of all of the 1947 Indenture Bonds then outstanding. Before any bonds shall be issued under the provisions of this Section 201A, the Board shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and details thereof and describing the 1947 Indenture Bonds to be exchanged therefor. Such revenue refunding bonds shall be designated, shall be issued in the form of registered bonds without coupons, shall be in such denominations and shall be numbered, all as may be provided by resolution or resolutions adopted by the Board prior to the issuance of such bonds. Such revenue refunding bonds shall be dated the July 1 or January 1 to which interest has been paid on the 1947 Indenture Bonds to be exchanged therefor, shall bear interest at the same rate or rates as the interest on such 1947 Indenture Bonds, shall be stated to mature in the same principal amounts and on the same dates as such 1947 Indenture Bonds and shall be subject to redemption at the same times and prices, either in whole or in part, as such 1947 Indenture Bonds. Except as to any differences in the maturities thereof or the rate or rates of interest or the provisions for redemption, such revenue refunding bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other bonds issued in this Agreement.

Revenue refunding bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver such bonds there shall be filed with the Trustee the following:

13475422.4

(a)     a copy, certified by the Secretary, of the resolution or resolutions mentioned above;

(b)     a copy, certified by the Secretary, of the resolution adopted by the Board directing the authentication and delivery of such bonds to or upon the order of the holders of the 1947 Indenture Bonds to be exchanged therefor;

(c)     such documents as shall be required by the Trustee to show that, upon the date designated for exchange, no 1947 Indenture Bonds shall then be outstanding under the provisions of the 1947 Indenture;

(d)     an opinion of counsel, who may be counsel for the Authority, to the effect that, on the date designated for exchange notice having been duly given in the manner and under the conditions hereinafter provided and revenue refunding bonds duly executed and authenticated as herein provided being held by the Trustee for delivery for exchange for 1947 Indenture Bonds, interest on such 1947 Indenture Bonds shall be deemed to have ceased to accrue from the January 1 or July 1 to which interest has been paid, the coupons for any coupon bonds called for exchange payable subsequent to the exchange date shall be void and such 1947 Indenture Bonds shall cease to be entitled to any lien, benefit or security under the 1947 Indenture and the holders of such 1947 Indenture Bonds shall have no rights in respect thereof, except to receive such revenue refunding bonds of the same principal amount and maturity, bearing interest at the same rate, subject to redemption at the same times and prices as such 1947 Indenture Bonds and of any denominations authorized by this Agreement; and

(e)     an Opinion of Counsel stating that all conditions precedent to the delivery of such bonds have been fulfilled.

Not later than forty-five (45) days before the exchange date of such revenue refunding bonds for such 1947 Indenture Bonds, the Authority shall give written notice to the Trustee and the 1947 Trustee of the proposed exchange and shall direct the 1947 Trustee to provide the Trustee with the names and addresses of the owners of such 1947 Indenture Bonds that are registered bonds without coupons or coupon bonds registered as to principal alone or as to both principal and interest. At least thirty (30) days before such exchange date the Trustee shall cause a notice of such exchange substantially in the form prepared by the Authority and signed by the Trustee (a) to be published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, and (b) to be mailed, postage prepaid, to all registered owners of such 1947 Indenture Bonds at their addresses provided to the Trustee by the 1947 Trustee, but failure to mail such notice to any registered owner shall not affect the validity of the proceedings for the exchange of 1947 Indenture Bonds of any other registered owners. If all the 1947 Indenture Bonds to be exchanged are registered bonds without coupons or coupon bonds registered as to principal alone or as to both principal and interest, such notice shall be given by mail and the Trustee shall not be required to publish such notice. Each such notice shall set forth the date fixed for exchange, the address of the office of the Trustee at which the 1947 Indenture Bonds with all unmatured coupons appurtenant thereto, if any, shall be presented and surrendered for exchange, that on the exchange date interest on such 1947 Indenture Bonds shall be deemed to have ceased to accrue

- 41 -

from the January 1 or July to which interest has been paid, the coupons for any coupon bonds called for exchange payable subsequent to the exchange date shall be void and such 1947 Indenture Bonds shall cease to be entitled to any lien, benefit or security under the 1947 Indenture and the holders of such 1947 Indenture Bonds shall have no rights in respect thereof, except to receive registered bonds without coupons issued hereunder of the same principal amount and maturity, bearing interest at the same rate, subject to redemption at the same time and prices as such 1947 Indenture Bonds and of any denomination or denominations authorized by this Agreement.

All 1947 Indenture Bonds and unmatured coupons appurtenant thereto, if any, upon surrender thereof to the Trustee shall be delivered to the 1947 Trustee for cancellation.

Section 211. <u>Temporary Bonds.</u>  Until definitive bonds of any Series are ready for delivery, there may be executed, and upon request of the Authority, the Trustee shall authenticate and deliver, in lieu of definitive bonds and subject to the same limitations and conditions, temporary printed, typewritten, engraved or lithographed bonds, in the form of either coupon bonds in such denominations, with or without coupons, or registered bonds without coupons in such denominations, or both, or in the form of a single registered bond without coupons in a denomination equal to the aggregate principal amount of such definitive bonds and payable in installments corresponding to the maturities of such definitive bonds, with payment record attached for the notation of payments of such installments and interest, without presentation and surrender of such single registered bond, as the Authority by resolution may provide, substantially of the tenor hereinabove set forth and with such appropriate omissions, insertions and variations as may be required.

Until definitive bonds of any Series are ready for delivery, any temporary bond of such Series may, if so provided by the Authority by resolution, be exchanged at principal office of the Trustee, without charge to the holder thereof, for an equal aggregate principal amount of temporary coupon bonds or of temporary registered bonds without coupons or both, of like tenor, at the same Series and maturity and bearing interest at the same rate.

If temporary bonds shall be issued, the Authority shall cause the definitive bonds to be prepared and to be executed and delivered to the Trustee, and the Trustee, upon presentation to it at its principal office of any temporary bond accompanied by all unpaid coupons, if any, shall cancel the same and authenticate and deliver in exchange therefor at the place designated by the holder, without charge to the holder thereof, a definitive bond or bonds of an equal aggregate principal amount, of the same Series and maturity and bearing interest at the same rate as the temporary bond surrendered.  Upon any such exchange, all coupons appertaining to definitive coupon bonds and representing interest theretofore paid shall be detached and cancelled by the Trustee.  Until so exchanged the temporary bonds shall in all respects be entitled to the same benefit and security of this Agreement as the definitive bonds to be issued and authenticated hereunder.  Interest on temporary coupon bonds, when due and payable, if the definitive bonds shall not be ready for exchange, shall be paid on presentation of such temporary coupon bonds and notation of such payment shall be endorsed thereon, or such interest shall be paid upon the surrender of the appropriate coupons if coupons representing such interest shall be attached to such temporary bonds.  No charge for taxes or governmental charges shall be made against the holder upon an exchange of a temporary bond for a definitive bond.

- 42 -

13475422.4

Section 212.  Mutilated, destroyed or lost bonds.  In case any bond secured hereby shall become mutilated, or be destroyed or lost, the Authority shall cause to be executed, and the Trustee shall authenticate and deliver, a new bond of like date and tenor in exchange and substitution for and upon the cancellation of such mutilated bond and its interest coupons, if any, or in lieu of and in substitution for such bond and its coupons, if any, destroyed or lost, upon the holder's paying the reasonable expenses and charges of the Authority and the Trustee in connection therewith and, in the case of a bond destroyed or lost, his filing with the Trustee evidence satisfactory to it and to the Authority that such bond and coupons, if any, were destroyed or lost, and of his ownership thereof, and furnishing the Authority and the Trustee with indemnity satisfactory to them.

## Article III
## Redemption of Bonds.

Section 301.  Redemption of bonds.  The bonds of any Series issued under the provisions of this Agreement shall be made subject to redemption, both in whole and in part and at such time and prices, as may be provided by resolution adopted by the Authority prior to the issuance of such bonds; provided, however, that term bonds shall be made subject to redemption to the extent of any Amortization Requirements therefor on July 1 immediately following each year in which there is an Amortization Requirement in respect of such bonds.

If less than all of the bonds of any one maturity of a Series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such Series and maturity shall be selected by the Trustee in such manner as the Trustee in its discretion may determine; provided, however, that the portion of any registered bond without coupons to be redeemed shall be in the principal amount equal to the lowest denomination authorized for such Series or some multiple thereof, and that, in selecting bonds for redemption, the Trustee shall treat each registered bond without coupons as representing that number of coupon bonds which is obtained by dividing the principal amount of such registered bond without coupons by the amount of such lowest authorized denomination.

For purposes of this Section 301, if less than all of the Capital Appreciation Bonds shall be called for redemption, the portion of any Capital Appreciation Bond of a denomination of more than the maturity amount specified in the resolution authorizing such Bonds to be redeemed shall be such maturity amount or a multiple thereof, and, in selecting portions of such Capital Appreciation Bonds for redemption, the Trustee shall treat such Capital Appreciation Bonds as representing that number of Capital Appreciation Bonds of such maturity amount which is obtained by dividing the maturity amount of such Capital Appreciation Bond to be redeemed in part by the maturity amount specified in such resolution.

Section 302.  Redemption notice.  At least thirty (30) days before the redemption date of any bonds the Trustee shall cause a notice of any such redemption, either in whole or in part, signed by the Trustee, (a) to be published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, (b) to be filed with the Paying Agents, and (c) to be mailed, postage prepaid, to all registered owners of bonds or portions of bonds to be redeemed at their addresses as they appear

- 43 -

13475422.4

on the registration books hereinabove provided for, but failure so to file or mail any such notice shall not affect the validity of the proceedings for such redemption. If all the bonds to be redeemed are issuable only as registered bonds without coupons, such notice of redemption shall be given by mail and the Trustee shall not be required to publish such notice of redemption. Each such notice shall set forth the date fixed for redemption, the redemption price to be paid and, if less than all of the bonds of any one maturity of a Series then outstanding shall be called for redemption, the distinctive numbers and letters, if any, of such bonds to be redeemed and, in the case of registered bonds without coupons to be redeemed in part only, the portion of the principal amount thereof to be redeemed. In case any registered bond without coupons is to be redeemed in part only, the notice of redemption which relates to such bond shall state also that on or after the redemption date, upon surrender of such bond, new bond or bonds of the same Series and maturity, bearing interest at the same rate and in principal amount equal to the unredeemed portion of such bond will be issued.

Section 303.  <u>Effect of calling for redemption.</u>  On the date so designated for redemption, notice having been given in the manner and under the conditions hereinabove provided, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or portions of bonds on such date, and, if moneys for payment of the redemption price and the accrued interest are held in separate accounts by the Trustee or by the Paying Agents in trust for the holders of the bonds or portions thereof to be redeemed, as provided in this Agreement, interest on the bonds or portions of bonds so called for redemption shall cease to accrue, the coupons for interest on any coupon bonds so called for redemption payable subsequent to the redemption date shall be void, such bonds or portions of bonds shall cease to be entitled to any benefit or security under this Agreement, and the holders or registered owners of such bonds or portions of bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof and the accrued interest and, to the extent provided in Section 305 of this Article, to receive bonds for any unredeemed portions of registered bonds without coupons.

Section 304.  <u>Matured coupons.</u>  All unpaid coupons which appertain to coupon bonds so called for redemption and which shall have become due and payable on or prior to the date of redemption designated in such notice shall continue to be payable to the bearers, severally and respectively upon the presentation and surrender of such coupons.

Section 305.  <u>Redemption of portion of registered bonds.</u>  In case part but not all of an outstanding registered bond without coupons shall be selected for redemption, the registered owner thereof or his attorney, or legal representative shall present and surrender such bond to the Trustee for payment of the principal amount thereof so called for redemption, and the Authority shall execute and the Trustee shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the registered bond without coupons so surrendered, either coupon bonds (if authorized for the Series of such registered bond) or a registered bond or bonds without coupons, at the option of such registered owner or his attorney or legal representative, of the same Series and maturity, bearing interest at the same rate and of any denomination or denominations authorized by this Agreement.

Section 306.  <u>Cancellation of bonds and coupons redeemed.</u>  Coupon bonds so redeemed, and all unmatured coupons appertaining thereto, and registered bonds without coupons so presented and surrendered, shall be cancelled upon the surrender, thereof.

Section 307.  <u>Bonds and portions of bonds called for redemption not deemed outstanding.</u>  Bonds and portions of bonds which have been duly called for redemption under the provisions of this Article, or with respect to which irrevocable instructions to call for redemption or payment at or prior to maturity have been given to the Trustee in form satisfactory to it, and for the payment of principal or the redemption price and the accrued interest of which sufficient moneys, or Government Obligations or Prerefunded Municipals or Time Deposits, secured in the manner set forth in Section 601 of this Agreement, shall be held in separate accounts by the Trustee or by the Paying Agents in trust for the holders of the bonds or portions thereof to be redeemed, all as provided in this Agreement, shall not thereafter be deemed to be under the provisions of this Agreement.

**Article IV**
**Custody and Application of Proceeds of Bonds**

Section 401.  <u>Construction Fund.</u>  A special fund is hereby created and designated "Puerto Rico Electric Power Authority Power System Construction Fund" (herein sometimes called the "Construction Fund"), to the credit of which such deposits shall be made as are required by the provisions of Section 208 of this Agreement. There shall also be deposited to the credit of the Construction Fund any moneys received from any other source for paying any portion of the cost of any Improvements.  One or more separate accounts may be created in the Construction Fund for use for specified projects.

The moneys in the Construction Fund shall be held by the Authority in trust, separate and apart from all other funds of the Authority, and shall be applied to the payment of the cost of any Improvements and, except for any moneys in separate accounts in the Construction Fund received from the United States Government or any agency thereof or from the Commonwealth of Puerto Rico or any agency thereof, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred as herein provided.

Section 402.  <u>Payments from Construction Fund.</u>  Payment of the cost of any Improvements shall be made from the Construction Fund as herein provided. Moneys in the Construction Fund shall be disbursed by check, voucher, order, draft, certificate or warrant signed by the Executive Director or by any officer or employee of the Authority designated by him for such purpose.

Section 403.  <u>Items of cost.</u>  For the purposes of this Article, the cost of any Improvements shall embrace the cost of acquisition or construction and equipment and all other items of cost incident to such acquisition and construction and equipment and the financing thereof, and shall include, without intending thereby to limit or restrict any proper definition of such cost under the provisions of law or this Agreement, the following:

- 45 -

(a)    obligations incurred for labor and materials and to contractors, builders and materialmen in connection with the construction of any Improvements;

(b)    the cost of acquiring by purchase, if such purchase shall be deemed expedient, and the amount of any award or final judgment in or any settlement or compromise of any proceeding to acquire by condemnation, such property, lands, rights, rights of way, franchises, easements and other interests in land constituting a part of, or as may be deemed necessary or convenient for the construction of any Improvements, options and partial payments thereon, the cost of filling, draining or improving any lands so acquired, and the amount of any damages incident to or consequent upon the construction of any Improvements;

(c)    the fees and expenses of the Trustee for its services under Article II of this Agreement, including its services in connection with the acceptance of the trusts hereby created, legal expenses and fees, fees and expenses of consultants, financing charges, cost of preparing and issuing the bonds, taxes or other municipal or governmental charges lawfully levied or assessed during construction upon any Improvements, and premiums on insurance in connection with any Improvements during construction;

(d)    fees and expenses of architects or engineers for making studies, surveys and testing, for preparing plans and specifications and supervising construction, as well as for the performance of all other duties of architects or engineers set forth herein in relation to the construction of any Improvements;

(e)    expenses of administration properly chargeable to any Improvements and all other items of expense not elsewhere in this Section specified, incident to the acquisition or construction and equipment of any Improvements;

(f)    interest on the bonds prior to and during construction of the Improvements financed by such bonds and for such period after completion of such construction as the Authority may determine, if then permitted by law; and

(g)    any obligation or expense heretofore or hereafter incurred by the Authority and any amounts heretofore or hereafter advanced by the Commonwealth of Puerto Rico or any agency thereof of by the United States Government, or from any other source, for any of the foregoing purposes.

Section 404.  Lands for projects. The Authority covenants that no disbursement will be made for the purchase price or cost of any electric system or portion thereof, or any lands, buildings, franchises, licenses, easements or rights of way, unless and until counsel for the Authority shall have rendered his written opinion to the Authority to the effect that the Authority either has or will have immediately upon such disbursement (by reason of the prior or simultaneous delivery of proper instruments of conveyance and transfer mentioned in such opinion) title thereto sufficient for the purposes of the System.

- 46 -

## Article V
## Revenues and Funds

Section 501.  <u>Covenants as to bills for services.</u>  The Authority covenants that it will continue to render bills for the services and facilities furnished by the System on a monthly or bi-monthly basis until such time as the Authority shall deem it advisable to change the period covered by such bills, and that it will establish and enforce reasonable regulations in relation to the collection of such bills.

Section 502.  <u>Covenant as to rates.</u>  The Authority further covenants that it will at all times fix, charge and collect reasonable rates and charges for the use of the services and facilities furnished by the System and that from time to time, and as often as it shall appear necessary, it will adjust such rates and charges so that the Revenues will at all times be sufficient

(A)  until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture:

(a)  to pay the Current Expenses of the System, and

(b)  to provide the greater of (i) the amount equal to one hundred twenty per centum (120%) of the aggregate Principal and Interest Requirements for the next fiscal year on account of all 1947 Indenture Bonds then outstanding and all bonds then outstanding under this Agreement, reduced by any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon in such fiscal year, or (ii) the amount required to make the deposits, transfers and payments mentioned in items (1) through (4), inclusive, below:

(1) to make the deposits to the credit of the 1947 Sinking Fund which are required to be made in each fiscal year under the provisions of Section 507 of the 1947 Indenture,

(2) to make the deposits to the credit of the General Reserve Fund which are required to be made in each fiscal year under the provisions of Section 511 of the 1947 Indenture,

(3) to make the transfers to the credit of the Renewal and Replacement Fund which are required to be made in each fiscal year under the provisions of Section 512 of the 1947 Indenture, and

(4) to make the payments which are required to be made in each fiscal year under the provisions of clause (a) of Section 513 of the 1947 Indenture, and

(B)  after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture:

(a)  to pay the Current Expenses of the System, and

- 47 -

13475422.4

(b)    to provide an amount at least equal to one hundred twenty per centum (120%) of the aggregate Principal and Interest Requirements for the next fiscal year on account of all the bonds then outstanding under this Agreement, reduced by any amount deposited to the credit of the Bond Service Account from the proceeds of bonds to pay interest to accrue thereon in such fiscal year.

The Authority further covenants that if at any time the Revenues shall not be sufficient to make such deposits, transfers and payments, it will revise the rates and charges for the services and facilities furnished by the System and, if necessary, it will revise its regulations in relation to the collection of bills for such services and facilities, so that such deficiency will be made up before the end of the next ensuing fiscal year.   Should any deficiency not be made up in such next ensuing fiscal year, the requirement therefor, except as to the payments which are required to be made in such fiscal year under subclause (4) of clause (b) of paragraph (A) of this Section, shall be cumulative and the Authority shall continue to revise such rates until such deficiency shall have been completely made up.

Forthwith upon the adoption of any revision of rates and charges the Authority shall cause certified copies thereof to be filed with the Trustee.

In the event that the Authority shall fail to adjust the schedule of rates and charges in accordance with the provisions of this Section, the Trustee, without regard to whether an event of default, as defined in Article VIII of this Agreement, shall have occurred, shall, upon the request of the holders of not less, than ten per centum (10%) in principal amount of all bonds then outstanding and upon being indemnified to its satisfaction, institute and prosecute in a court of competent jurisdiction an appropriate suit, action or proceeding to compel the Authority to adjust such schedule in accordance with the requirements of this Section, and the Authority covenants that it will adopt and charge rates and charges in compliance with any judgment, order or decree entered in any such suit, action or proceeding.

Section 503.    General Fund.    A special fund is hereby created and designated the "Puerto Rico Electric Power Authority General Fund" (herein sometimes called the "General Fund").   The Authority covenants that, after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, all Revenues, other than income from investments made under the provisions of this Agreement, will be deposited as received in the name of the Authority with a qualified depositary or depositaries to the credit of the General Fund and applied in accordance with the provisions of this Article.

Section 504.    Annual Budget.    The Authority covenants that on or before the 15th day of May in each year the Board will cause to be prepared and will adopt and file with the Secretary, with the Trustee and with the Consulting Engineers a proposed budget of Current Expenses and of Capital Expenditures for the ensuing fiscal year.

The Authority further covenants that such proposed budget of Current Expenses will be prepared in such manner as to segregate, in so far as advisable, the accounts in respect of the different classes of operations, projects, undertakings and activities of the Authority and will be prepared on the basis of monthly requirements so that it will be possible to determine from the

- 48 -

budget the Current Expenses for each month during the fiscal year, that it will comply with any reasonable request of the Consulting Engineers as to the classifications in which such budget shall be prepared, and that such proposed budget of Capital Expenditures will show separately (a) so long as any 1947 Indenture Bonds are outstanding, the amount to be expended during such fiscal year from moneys deposited or transferred to the credit of the Renewal and Replacement Fund, including a separate statement as to the amount to be withdrawn from said Fund under the provisions of Section 507 of this Agreement, (b) the amount to be expended during such fiscal year from moneys deposited to the credit of the Construction Fund and, so long as any 1947 Indenture Bonds are outstanding, the 1947 Construction Fund, and (c) the amount of the working cash funds required for each month during such fiscal year.

The Authority further covenants that on the 1st day of June of each year, or on the first business day thereafter, it will hold a public hearing at its office in the Municipality of San Juan, Puerto Rico, on the proposed budget for the ensuing fiscal year, at which any bondholder, any consumer or any other interested person may appear, in person or by agent or attorney, and present any objections he may have to such proposed budget, and that promptly after each such public hearing and, in any event, on or before the first day of the next ensuing fiscal year the Board will finally adopt the annual budget of Current Expenses and Capital Expenditures for such fiscal year (which budget, together with any amendment thereof or supplement thereto as hereinafter permitted, is herein sometimes called the "Annual Budget"). The Authority covenants that the total expenditures provided for in the Annual Budget of Current Expenses will not exceed the total expenditures set forth in the proposed budget unless such excess shall be approved by the Consulting Engineers, and that before adopting the budget of Capital Expenditures it will receive and consider the Consulting Engineers' advice and recommendations with respect thereto.

If for any reason the Board shall not have adopted the Annual Budget before the first day of any fiscal year, the proposed budget for such fiscal year, if approved by the Consulting Engineers, or, if there is none so approved, the budget for the preceding fiscal year, shall, until the adoption of the Annual Budget, be deemed to be in force and shall be treated as the Annual Budget under the provisions of this Article; provided, however, that, so long as any 1947 Indenture Bonds are outstanding, the amounts provided for in the Annual Budget to be transferred from the 1947 Revenue Fund to the Renewal and Replacement Fund shall not be less than the amount set forth in the most recent certificate of the Executive Director filed with the Trustee pursuant to clause (d) of Section 208 of this Agreement.

The Board may at any time cause to be prepared and may file with the Secretary, with the Trustee and with the Consulting Engineers, and the Board may thereafter adopt, after receiving the approval of the Consulting Engineers, an amended or supplemental Annual Budget for the then current fiscal year.

Section 505. Application of moneys in General Fund. The Authority covenants that moneys in the General Fund will be used first for the payment of the Current Expenses of the System, that such expenses will not exceed an amount which is reasonable and necessary for maintaining, repairing and operating the System in an efficient and economical manner, and that the total amount of Current Expenses in any fiscal year will not exceed the amount provided therefor in the Annual Budget for such fiscal year or any amendment thereof or supplement

- 49 -

13475422.4

thereto unless such expenses shall be required by conditions beyond the control of the Authority happening during such fiscal year and which could not reasonably have been contemplated at the time of the adoption of the Annual Budget. If at any time the total amount theretofore expended during any fiscal year for Current Expenses shall exceed the total amount provided in the Annual Budget for Current Expenses for such fiscal year, the Authority covenants that it will report in writing the amount of such excess and the reason or reasons therefor to the Consulting Engineers and to the Trustee as soon as practicable but not later than the last day or the sixth month following the month in which such excess shall have occurred.

Section 506.   Revenue Fund.   A special fund is hereby created and designated the "Puerto Rico Electric Power Authority Power Revenue Fund" (herein sometimes called the "Revenue Fund"). After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Treasurer shall transfer, on or before the 15th day of each month, from the General Fund to the credit of the Revenue Fund an amount equal to the amount of all moneys held for the credit of the General Fund on the last day of the preceding month less such amount to be held as a reserve for Current Expenses as the Treasurer may determine, but not more than one-sixth (1/6) of the amount shown by the Annual Budget to be necessary for Current Expenses for the current fiscal year, such transfer to be made on the books of the Authority as of the close of the preceding month. The Authority covenants that all moneys to the credit of the Revenue Fund will be applied to the purposes and in the order set forth in this Article.

Section 507.   Sinking Fund.   A special fund is hereby created and designated the "Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund" (herein sometimes called the "Sinking Fund"). There are hereby created three separate accounts in the Sinking Fund designated "Bond Service Account," "Reserve Account" and "Redemption Account," respectively. Another special fund is hereby created and designated "Puerto Rico Electric Power Authority Reserve Maintenance Fund" (herein sometimes called the "Reserve Maintenance Fund"). Two other special funds are hereby created and designated "Puerto Rico Electric Power Authority Self-insurance Fund" (herein sometimes called the "Self-insurance Fund") and "Puerto Rico Electric Power Authority Capital Improvement Fund" (herein sometimes called the "Capital Improvement Fund"). Another special fund is hereby created and designated "Puerto Rico Electric Power Authority Subordinate Obligations Fund" (herein sometimes called the "Subordinate Obligations Fund"). On or before the last day of the month during which the first Series of bonds shall be issued under the provisions of Section 208 of this Agreement and on or before the 25th day of each month thereafter, (i) until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, it shall be the duty of the Executive Director or any officer or employee of the Authority designated by him for such purpose to withdraw from the Renewal and Replacement Fund, and (ii) after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, it shall be the duty of the Treasurer to withdraw from the Revenue Fund, all of the moneys then held to the credit of such Fund (less any amount equal to the amount of Federal Subsidy Payments that have not been received as of the 25th of the month preceding the Interest Payment Date to which such Federal Subsidy Payments relate, which amount will be held in the Revenue Fund and (x) if the Federal Subsidy Payment has not been received by the Authority by such Interest Payment Date, transferred to the Bond Service Account on the Interest Payment Date and applied to the

- 50 -

payment of interest on Bonds or (y) if the Federal Subsidy Payment has been received by the Authority on or before such Interest Payment Date, remain on deposit in the Revenue Fund for application in accordance with the provisions below in the following calendar month) and deposit the moneys so withdrawn to the credit of the following Accounts and Funds in the following order:

(a)     to the credit of the Bond Service Account, such amount thereof (or the entire sum so withdrawn if less than the required amount) as may be required to make the total amount then to the credit of the Bond Service Account equal to the sum of

(1)     the Interest Accrual on all the outstanding bonds to and including the first day of the next calendar month, and

(2)     the Principal Accrual on the outstanding serial bonds to and including the first day of the next calendar month;

(b)     to the credit of the Redemption Account, such amount, if any, of any balance remaining after making the deposit under clause (a) above (or the entire balance if less than the required amount) as may be required to make the amount then to the credit of the Redemption Account equal to the Amortization Accrual to and including the first day of the next calendar month;

(c)     to the credit of the Reserve Account, such amount, if any, of any balance remaining after making the deposits under clauses (a) and (b) above (or the entire balance if less than the required amount) as may be required to make the amount then to the credit of the Reserve Account, including the amount of any Reserve Account Insurance Policy or any Reserve Account Letter of Credit therein, equal to the interest payable on the bonds of each Series issued hereunder within the next ensuing twelve (12) months; (A) provided, however, that the amount so deposited in any month in respect of bonds of any Series issued under Sections 208 or 209 of this Agreement need not exceed one-sixtieth (1/60) of the amount of the increase in the interest payable within the next ensuing twelve (12) months resulting from the issuance of the bonds of such Series; and that if the amount so deposited in any month to the credit of said Account shall be less than the required amount for such month, the requirement therefor shall nevertheless be cumulative and the amount of any deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up; and that in the case of Variable Rate Bonds, the minimum amount to be deposited in the Reserve Account over the period required herein shall be based initially on the interest rate in effect on the date of issuance of the Variable Rate Bonds and then shall be adjusted on the 25th day of each subsequent month based on the actual interest accrued from the 25th day of the previous month to the date of adjustment, except that in the case of Variable Rate Bonds in respect of which the Authority has notified the Trustee that a SWAP agreement is in effect, the Trustee shall use the SWAP rate in calculating the interest payable on such Bonds within the next ensuing twelve (12) months; and that in the case of Capital Appreciation Bonds, the minimum amount required to be deposited in the Reserve Account shall be an amount derived from the interest rate which has been used to calculate the assumed yield on such bonds through their maturity times the Accreted Value of such bonds on the Valuation Date occurring at or after the first day of the twelfth succeeding month to the date of calculation of this

- 51 -

requirement, as may be further specified in the resolution authorizing Capital Appreciation Bonds and (B) provided, however, that in the case of Federally Subsidized Bonds, the amount of interest deemed to be payable on such bonds from the date of issuance of such Federally Subsidized Bonds and for so long as the Trustee shall receive the scheduled amount of the Federal Subsidy Payments on or before such interest shall be payable shall exclude the amount of interest to be paid from the Federal Subsidy and provided further, however, that if the Trustee shall not receive the scheduled amount of the Federal Subsidy Payments on or before the date interest on such Federally Subsidized Bonds is payable or within thirty (30) of the date such Federal Subsidy Payments were scheduled to be received under the then current applicable law and regulations, then for purposes of the calculation of interest to be credited to the Reserve Account, the amount shall be equal to the interest payable on the bonds of each Series issued hereunder within the next twelve (12) months;

(d)  to the credit of the Reserve Maintenance Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b) and (c) above (or the entire balance if less than the required amount) as may be recommended by the Consulting Engineers, as provided by Section 706 of this Agreement, to be deposited to the credit of said Fund during such month; provided, however, that if the amount so deposited to the credit of said Fund in any month shall be less than the amount recommended by the Consulting Engineers, the requirement therefor shall nonetheless be cumulative and the amount of any such deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up, unless such requirement shall have been modified by the Consulting Engineers in writing, a signed copy of such modification to be filed with the Authority; and provided further, however, that in the event that the Authority shall so covenant in respect of any Subordinate Obligation, as authorized by Section 516 of this Agreement, the deposit required by this clause (d) in any month shall be equal to the least of

(i)  the amount described above in this clause (d),

(ii)  the amount of $400,000, and

(iii)  an amount that when added to the amount then held to the credit of the Reserve Maintenance Fund shall make the total amount to the credit of said Fund equal to $10,000,000;

(e)  to the credit of one or more special accounts in the Subordinate Obligations Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c) and (d) above (or the entire balance if less than the required amount) that together with funds then held to the credit of the Subordinate Obligations Fund will make the total amount then to the credit thereof equal to any amounts required to be paid or accrued with respect to any Subordinate Obligations prior to the Deposit Day of the next succeeding month from or to the Subordinate Obligations Fund;

(f)  in the event the Authority shall have covenanted pursuant to Section 516 with respect to Subordinate Obligations to limit its deposit to the Reserve Maintenance Fund in accordance with the provisions of the second proviso of clause (d) above and in fact the deposit to said Fund pursuant to clause (d) was limited to the amount described in subclause (ii) or (iii),

13475422.4

to the credit of the Reserve Maintenance Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c), (d) and (e) above (or the entire balance if less than the required amount) as may be required to make the total amount deposited to the credit of the Reserve Maintenance Fund in such month equal to the amount described in subclause (i) of clause (d) above;

(g)     on the date of the release of the 1947 Indenture, to the credit of the Self-insurance Fund an amount equal to the amount held to the credit of the General Reserve Fund under the 1947 Indenture on the date of such release remaining after making the deposits under clauses (a), (b), (c), (d), (e) and (f) above and thereafter such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c), (d), (e) and (f) above, as the Consulting Engineers shall from time to time recommend; and

(h)     after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Capital Improvement Fund such amount, if any, of any balance remaining after making the deposits under clauses (a), (b), (c), (d), (e), (f) and (g) above, as the Consulting Engineers shall recommend as provided by Section 706 of this Agreement; provided, however, that if the amount so deposited to the credit of said Fund during any fiscal year of the Authority shall be less than the amount recommended by the Consulting Engineers, the requirement therefor shall nevertheless be cumulative and the amount of any such deficiency in any such fiscal year shall be added to the amount otherwise required to be deposited in each fiscal year thereafter until such time as such deficiency shall have been made up, unless such requirement shall have been modified by the Consulting Engineers in writing, a signed copy of such modification to be filed with the Authority.

Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a), (b) and (c) above shall be transferred to the Renewal and Replacement Fund. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a) through (h) above may be used for any lawful purpose of the Authority.

The moneys in the Sinking Fund shall be held by the Trustee in trust, and the moneys in the Reserve Maintenance Fund, the Self-insurance Fund and the Capital Improvement Fund shall be held by the Authority in trust, separate and apart from all other funds of the Authority, and shall be applied as hereinafter provided with respect to such Funds and, pending such application, shall be subject to a lien and a charge in favor of the holders of the bonds issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred as herein provided. The moneys in each account in the Subordinate Obligations Fund shall be held by the Authority (or a Depositary) in trust, separate and apart from all other funds of the Authority, and shall be applied as hereinafter provided with respect to such Fund and, pending such application, shall be subject to a lien and charge in favor of the holders of the Subordinate Obligations incurred in the manner provided under this Agreement and for the further security of such holders until paid out or transferred as herein provided. The Authority (or such Depositary) may establish one or more accounts within the Subordinate Obligations Fund corresponding to the source of moneys or particular Subordinate Obligations for each

- 53 -

13475422.4

deposit made into said Fund so that the Authority (and such Depositary) may ascertain the source and date of deposit of the moneys in each such account.

Section 508. <u>Disposition of balances in 1947 Indenture funds and accounts.</u> At such time as the outstanding 1947 Indenture Bonds shall be paid or provision shall be made for their payment and the Trustee under the 1947 Indenture shall have released the 1947 Indenture, all moneys (other than moneys held for the redemption or payment of bonds and coupons), including any obligations purchased as an investment of such moneys, then held for the credit of the special funds and accounts created under the provisions of the 1947 Indenture shall be withdrawn and deposited to the credit of the special funds and accounts created under the provisions of this Agreement, as follows:

| 1947 Indenture | Agreement |
|---|---|
| Construction Fund | Construction Fund |
| General fund | General Fund |
| Revenue fund | Revenue Fund |
| Sinking Fund, including Reserve Account | Reserve Account in Sinking Fund |
| General Reserve Fund | General Fund |
| Renewal and Replacement Fund | General Fund |

At the same time the Authority shall withdraw all moneys then held to the credit of the Construction Fund revolving fund under the provisions of the 1947 Indenture and deposit such moneys to the credit of the Construction Fund under the provisions of the this Agreement.

Section 509. <u>Application of moneys in Bond Service Account.</u> The Trustee shall, on the business day immediately preceding each interest payment date, withdraw from the Bond Service Account and (a) remit by mail to each owner of registered bonds without coupons the amounts required for paying the interest on such bonds as such interest becomes due and payable and (b) set aside or deposit in trust with the Paying Agents the amounts required for paying the interest on the coupon bonds as such interest becomes due and payable and the principal of all serial bonds as such principal becomes due and payable.

Notwithstanding the foregoing, if principal and interest payments, or a portion thereof (other than any payments of the purchase price of bonds pursuant to a "put"), for particular bonds have been made on behalf of the Authority by a credit or liquidity facility issuer or other entity insuring, guaranteeing or providing for said payments, amounts deposited in the Bond Service Account and allocable to said payments for said bonds shall be paid, to the extent required under any agreement, to the credit or liquidity facility issuer or entity having theretofore made said corresponding payment.

Section 510. <u>Application of moneys in Reserve Account.</u> Moneys held for the credit of the Reserve Account or amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit shall first be used for the purpose of paying interest on the bonds and maturing principal of the serial bonds whenever and to the extent that the moneys held for the credit of the Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the Redemption Account pursuant to the

- 54 -

13475422.4

requirements of clause (b) of Section 507 of this Agreement whenever and to the extent that the withdrawals from the Renewal and Replacement Fund or the Revenue Fund, as the case may be, are insufficient for such purpose. If at any time the moneys held for the credit for the Reserve Account, including amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit, shall exceed interest payable within the next ensuing twelve (12) months on the bonds of each Series issued and then outstanding hereunder, such excess shall be transferred to the credit of the Bond Service Account or any Reserve Account Insurance Policy or Reserve Account Letter of Credit may be reduced to the extent of such excess at the option of the Authority. For purposes of determining whether any excess exists in the Reserve Account, the amount required for Capital Appreciation Bonds and interest payable within the next ensuring twelve (12) months for Variable Rate Bonds shall be calculated in accordance with clause (c) of Section 507, and the minimum amount required in the Reserve Account shall be deemed to include any additional level of funding of the Reserve Account required under the terms of the resolution adopted by the Authority for such bonds.

Notwithstanding anything to the contrary contained in Section 507 or elsewhere in this Agreement, in lieu, or in partial satisfaction, of any required deposit into the Reserve Account, the Authority may cause to be deposited into the Reserve Account a Reserve Account Insurance Policy or a Reserve Account Letter of Credit, as to which any reimbursement obligation in respect of a drawing thereon may be secured by a lien on Revenues not inconsistent with Section 712 hereof, for the benefit of the holders of the bonds in an amount equal to the required deposit or any portion thereof, and which Reserve Account Insurance Policy or Reserve Account Letter of Credit shall be payable or available to be drawn upon, as the case may be (upon the giving of notice as required thereunder), on any date on which moneys are required to be paid out of the Reserve Account pursuant to the first sentence of this Section 510. If a disbursement is made under the Reserve Account Insurance Policy or the Reserve Account Letter of Credit, the Authority shall be obligated either to reinstate the amount of such Reserve Account Insurance Policy or Reserve Account Letter of Credit or to deposit into the Reserve Account moneys, in accordance with the provisions of Section 507 hereof, in the amount of the disbursement made under such Reserve Account Insurance Policy or Reserve Account Letter of Credit, or a combination of such alternatives. The Authority may at any time substitute (i) all or a portion of the moneys held to the credit of the Reserve Account with a Reserve Account Insurance Policy or Reserve Account Letter of Credit or a combination of such alternatives, (ii) all or a portion of any Reserve Account Insurance Policy on deposit in the Reserve Account with moneys or a Reserve Account Letter of Credit, or a combination of such alternatives, or (iii) all or a portion of any Reserve Account Letter of Credit on deposit in the Reserve Account with moneys or a Reserve Account Insurance Policy, or a combination of such alternatives. Any moneys on deposit in the Reserve Account in substitution of which a Reserve Account Insurance Policy or Reserve Account Letter of Credit is deposited into the Reserve Account shall, to the extent not required to fund any deficiencies in the amount then required to be on deposit in the Reserve Account, be released and immediately paid over to the Authority to be used by the Authority for any lawful purpose of the Authority. Prior to the expiration date of any Reserve Account Insurance Policy or Reserve Account Letter of Credit then on deposit to the credit of the Reserve Account, the Authority shall (x) cause the term of such Reserve Account Insurance Policy or Reserve Account Letter of Credit to be extended, (y) replace any such Reserve Account Insurance Policy with moneys (which may include, without limitation, moneys available under the Reserve Account Insurance Policy or from any other source available for such purpose) or a

- 55 -

Reserve Account Letter of Credit, or a combination of such alternatives, or (z) replace any such Reserve Account Letter of Credit with moneys (which may include, without limitation, moneys available under the Reserve Account Letter of Credit or from any other source available for such purpose) or a Reserve Account Insurance Policy, or a combination of said alternatives; provided that, in the event the Authority has not extended or replaced the expiring Reserve Account Insurance Policy or Reserve Account Letter of Credit by the fifth (5th) business day prior to the date of expiration, the expiring Reserve Account Insurance Policy or Reserve Account Letter of Credit shall, on such date, be drawn upon to fund the Reserve Account. For purposes of this Agreement, other than Article VI hereof, moneys deposit to, or held for the credit of, the Reserve Account shall include amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit on deposit in the Reserve Account.

Section 511. Application of moneys in Redemption Account. Moneys held for the credit of the Redemption Account shall be applied to the retirement of bonds issued under the provisions of this Agreement as follows:

(a) Subject to the provisions of paragraph (c) of this Section, the Trustee shall endeavor to purchase bonds or portions of bonds secured hereby and then outstanding, whether or not such bonds or portions shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, such price not to exceed the principal of such bonds plus the amount of the premium, if any, which would be payable on the next redemption date to the holders of such bonds under the provisions of Article III of this Agreement if such bonds or portions of bonds should be called for redemption on such date from the moneys in the Sinking Fund. The Trustee shall pay the interest accrued on such bonds or portions of bonds to the date of settlement therefor from the Bond Service Account and the purchase price from the Redemption Account, but no such purchase shall be made by the Trustee within the period of forty-five (45) days immediately preceding any interest payment date on which such bonds are subject to call for redemption under the provisions of this Agreement except from moneys other than the moneys set aside or deposited for the redemption of bonds.

(b) Subject to the provisions of paragraph (c) of this Section, the Trustee shall call for redemption on each interest payment date on which bonds are subject to redemption from moneys in the Sinking Fund such amount of bonds or portions of bonds then subject to redemption as, with the redemption premium, if any, will exhaust the moneys then held for the credit of the Redemption Account as nearly as may be; provided, however, that not less than One Hundred Thousand Dollars ($100,0000) principal amount of bonds shall be called for redemption at any one time. Such redemption shall be made pursuant to the provisions of Article III of this Agreement. Prior to calling bonds or portions of bonds for redemption the Trustee shall withdraw from the Bond Service Account and from the Redemption Account and set aside in separate accounts or deposit with the Paying Agents the respective amounts required for paying the interest on, and the principal and redemption premium of, the bonds or portions of bonds so called for redemption.

(c) Moneys in the Redemption Account shall be applied by the Trustee in each fiscal year to the retirement of bonds of each Series then outstanding in the following order:

- 56 -

*first*, the term bonds of each such Series to the extent of the Amortization Requirement, if any, for such fiscal year for the term bonds of each such Series then outstanding, plus the applicable premium, if any, and, if any amount available in such fiscal year shall not be equal thereto, then in proportion to the Amortization Requirement, if any, for such fiscal year for the term bonds of each such Series then outstanding, plus the applicable premium, if any;

*second*, any balance then remaining shall be applied to the purchase of any bonds secured hereby and then outstanding whether or not such bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section;

*third*, any balance then remaining shall be applied to the redemption of the term bonds of each such Series in proportion to the Amortization Requirement, if any, for such fiscal year for the term bonds of each such Series then outstanding, plus the applicable premium, if any; and

*fourth*, after the retirement of all term bonds, any balance still remaining shall be applied to the retirement of the serial bonds of each Series in proportion to the aggregate principal amount of the serial bonds of each such Series originally issued under the provisions of this Agreement.

Until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Authority shall pay from the Renewal and Replacement Fund all expenses in connection with any such purchase or such redemption; thereafter all such expenses shall be paid from the Revenue Fund.

Notwithstanding the foregoing, if amounts applied to the retirement of bonds that would have been applied from the Redemption Account are paid instead by a credit or liquidity facility issuer or other entity insuring, guaranteeing or providing for said payment, amounts deposited in the Redemption Account and allocable to said payments for said bonds shall be paid, to the extent required under any agreement, to the credit or liquidity facility issuer or entity having theretofore made said corresponding payment.

Section 512.  <u>Use of moneys in Reserve Maintenance Fund.</u>  Except as hereinafter provided in this Section and in Section 707 of this Agreement, moneys held for the credit of the Reserve Maintenance Fund shall be disbursed only for the purpose of paying the cost of unusual or extraordinary maintenance or repairs, maintenance or repairs not recurring annually and renewals and replacements, including major items of equipment.  Such disbursements shall be made in accordance with the provisions of Section 402 of this Agreement for payments from the Construction Fund.

If at any time moneys held for the credit of the Bond Service Account and the Reserve Account shall be insufficient for the purpose of paying the interest on all bonds and the principal of the serial bonds as such interest and principal become due and payable, then the Authority shall transfer from any moneys held for the credit of the Reserve Maintenance Fund to the credit of the Bond Service Account an amount sufficient to make up any such deficiency.  If at any time the moneys held for the credit of the Redemption Account and the Reserve Account shall be

- 57 -

insufficient for the purpose of providing funds for the retirement of term bonds to the extent of the Amortization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Reserve Maintenance Fund an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) Section 507 of this Agreement. Any moneys so transferred from the Reserve Maintenance Fund shall be restored by the Authority from available moneys in the Revenue Fund, subject to the same conditions as are prescribed for deposits to the credit of the Reserve Maintenance Fund under the provisions of Section 507 of this Agreement.

Section 512A. <u>Use of moneys in Self-insurance Fund.</u> Except as hereinafter provided in the following two paragraphs and in Section 707 of this Agreement, moneys held for the credit of the Self-insurance Fund (1) shall be disbursed in the manner provided by Section 402 of this Agreement for disbursements from the Construction Fund only for the purpose of paying the cost of repairing, replacing or reconstructing any property damaged or destroyed from or extraordinary expenses incurred as a result of a cause which is not covered by insurance under the provisions of said Section 707 or (2) shall be transferred to the Revenue Fund in an amount, approved by the Consulting Engineers, equal to the loss of income from the System as a result of a cause which is not covered by insurance under the provision of said Section 707.

If at any time moneys held for the credit of the Bond Service Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund to the credit of the Bond Service Account pursuant to the provisions of the first sentence of the second paragraph of Section 512 of this Agreement) shall be insufficient for the purpose of paying the interest on all bonds and the principal of all serial bonds as such interest and principal becomes due and payable, then the Authority shall transfer from any moneys held for the credit of the Self-insurance Fund to the credit of the Bond Service Account an amount sufficient to make up such deficiency. If at any time moneys held for the credit of the Redemption Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund to the credit of the Redemption Account pursuant to the provisions of the second sentence of the second paragraph of Section 512 of this Agreement) shall be insufficient for the purpose of providing funds for the retirement of bonds to the extent of the Authorization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Self-insurance Fund to the credit of the Redemption Account an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement.

If the Authority shall have determined that all or any portion of the moneys held to the credit of the Self-insurance Fund is no longer needed for the purposes specified in the second preceding paragraph, the Authority may withdraw an amount equal to such portion from the Self-insurance Fund and transfer such amount to the credit of the Bond Service Account; provided, however, that no such transfer shall be made prior to the time that the Consulting Engineers shall have approved such transfer in writing.

- 58 -

13475422.4

Section 512B. <u>Use of moneys in Capital Improvement Fund.</u>Moneys held for the credit of the Capital Improvement Fund shall be disbursed in the manner provided by Section 402 of this Agreement only for paying the cost of anticipated extensions and Improvements of the System the cost of which has not otherwise been provided for from the proceeds of bonds issued under the provisions of this Agreement.

If at any time moneys held for the credit of the Bond Service Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund or the Self-insurance Fund to the credit of the Bond Service Account pursuant to the provisions of the first sentence of the second paragraph of Sections 512 and 512A of this Agreement, respectively) shall be insufficient for the purpose of paying the interest on all bonds and the principal of all serial bonds as such interest and principal become due and payable, then the Authority shall transfer from any moneys held for the credit of the Capital Improvement Fund to the credit of the Bond Service Account an amount sufficient to make up such deficiency. If at any time moneys held for the credit of the Redemption Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund or the Self-insurance Fund to the credit of the Redemption Account pursuant to the provisions of the second sentence of the second paragraph of Sections 512 and 512A of this Agreement, respectively) shall be insufficient for the purpose of providing funds for the retirement of bonds to the extent of the Amortization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Capital Improvement Fund to the credit of the Redemption Account an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement.

Section 513. <u>Application and pledge of moneys in Sinking Fund.</u> Subject to the terms and conditions set forth in this Agreement, moneys held for the credit of the Bond Service Account, the Reserve Account and the Redemption Account shall be held in trust and disbursed by the Trustee for (a) the payment of interest on the bonds issued hereunder as such interest becomes due and payable, or (b) the payment of the principal of such bonds at their respective maturities, or (c) the payment of the purchase or redemption price of such bonds before their respective maturities, and such moneys are hereby pledged to and charged with the payments mentioned in this Section.

Whenever the total of the moneys held for the credit of the Bond Service Account, the Reserve Account and the Redemption Account shall be sufficient for paying the principal of and the redemption premium, if any, and the interest accrued on all bonds then outstanding under the provisions of this Agreement, such moneys shall be applied by the Trustee to the payment, purchase or redemption of such bonds.

Section 514. <u>Moneys set aside for principal and interest held in trust.</u> All moneys which the Trustee shall have withdrawn from the Sinking Fund or shall have received from any other source and set aside, or deposited with the Paying Agents, for the purpose of paying any of the bonds hereby secured, either at the maturity thereof or upon call for redemption, or for the purpose of paying any maturing coupons appertaining to any of the coupon bonds hereby secured, shall be held in trust for the respective holders of such bonds or coupons. But any moneys which shall be so set aside or deposited by the Trustee and which shall remain

- 59 -

13475422.4

unclaimed by the holders of such bonds or of such coupons for the period of six (6) years after the date on which such bonds or such coupons shall have become due and payable shall upon request in writing be paid to the Authority or to such officer, board or body as may then be entitled by law to receive the same, and thereafter the holders of such bonds or coupons shall look only to the Authority or to such officer, board or body, as the case may be, for payment and then only to the extent of the amounts so received without any interest thereon, and the Trustee and the Paying Agents shall have no responsibility with respect to such moneys.

Section 515. <u>Cancellation of bonds and coupons upon payment.</u> All bonds paid, redeemed or purchased, either at or before maturity, together with all unmatured coupons, if any appertaining thereto, shall be cancelled upon the payment, redemption or purchase of such bonds and shall be delivered to the Trustee when such payment, redemption or purchase is made. All coupons, which are paid by the Paying Agents, shall be cancelled upon their payment and delivered to the Trustee in the Borough of Manhattan, City and State of New York. Except for such coupons, all bonds and coupons cancelled under any of the provisions of this Agreement shall be destroyed by the Trustee, which shall execute a certificate in duplicate describing the bonds and coupons so destroyed except that the numbers of the bonds to which such coupons appertain may be omitted unless otherwise directed by the Authority, and one executed certificate shall be filed with the Secretary and the other executed certificate shall be retained by the Trustee. The coupons so paid by any Paying Agent shall be destroyed by the Trustee in the Borough of Manhattan, City and State of New York, which shall execute a certificate in triplicate describing the coupons so destroyed except that the numbers of the bonds to which such coupons appertain may be omitted unless otherwise directed by the Authority, and one executed certificate shall be filed with the Secretary and another with the Trustee and the third executed certificate shall be retained by such Paying Agent.

Section 516. <u>Application of moneys in Subordinate Obligations Fund.</u> (a) Moneys held for the credit of the Subordinate Obligations Fund shall be paid out or pledged by the Authority as necessary to enable the Authority to meet its Subordinate Obligations. Subordinate Obligations may be incurred or issued by the Authority for any proper corporate purpose of the Authority.

(b)    The Authority shall have the right to covenant with the holders from time to time of any Subordinate Obligations issued or incurred by the Authority to limit the deposits to the Reserve Maintenance Fund as authorized by Section 507(d) and to add the conditions, limitations and restrictions under which bonds may be issued under the provisions of Sections 208, 209 and 210 hereof.

(a)    Any such Subordinate Obligations shall be payable out of and may be secured by a pledge of (i) such amounts in the Subordinate Obligations Fund as may from time to time be available therefor, and (ii) any other funds of the Authority that may be available for such purpose, provided that any such payment or pledge made pursuant to clause (i) of this sentence shall be, and shall be expressed to be, subordinate and junior in all respects to the lien and charge of the bonds secured hereby upon the Revenues.

(b)    Before incurring any Subordinate Obligations the proceeds of which shall finance in whole or in part the acquisition or construction of any works or properties by the Authority in

- 60 -

connection with the production, distribution or sale of electric energy, the Authority shall adopt a resolution specifying whether or not such works or properties are to be included as part of the System.

(c)    The resolution, indenture or other instrument securing each issue of Subordinate Obligations shall contain provisions (which shall be binding on all holders of such Subordinate Obligations) not more favorable to the holders of such Subordinate Obligations than the following:

(1)    In the event of any insolvency or bankruptcy proceedings, and any receivership, liquidation, reorganization or their similar proceedings in connection therewith, relative to the Authority or to its creditors, as such, or to its property, and in the event of any proceedings for voluntary liquidation, dissolution or other winding up of the Authority, whether or not involving insolvency or bankruptcy, the owners of all bonds then outstanding shall be entitled to receive payment in full of all principal and interest due on all such bonds in accordance with the provisions of this Agreement before the holders of the Subordinate Obligations are entitled to receive any payment from the funds pledged to the bonds on account of principal (and premium, if any) or interest upon the Subordinate Obligations.

(2)    In the event that any Subordinate Obligation is declared due and payable before its expressed maturity because of the occurrence of an event of default (under circumstances when the provisions of (1) above shall not be applicable), the owners of all bonds outstanding at the time such Subordinate Obligation becomes due and payable because of the occurrence of such an event of default shall be entitled to receive payment in full of all principal of and interest on all such bonds then due and payable before the holder of such Subordinate Obligation is entitled to receive any accelerated payment from the Revenues and other moneys pledged to the bonds under this Agreement of principal (and premium, if any) or interest upon such Subordinate Obligation.

(3)    If any event of default specified in Section 802 hereof with respect to the bonds shall have occurred and be continuing (under circumstances when the provisions of (1) above shall not be applicable), the owners of all bonds then outstanding shall be entitled to receive payment in full of all principal of and interest on all such bonds as the same become due and payable before the holders of the Subordinate Obligations are entitled to receive, subject to the provisions of (5) below, any payment from the Revenues or other moneys pledged to the bonds under this Agreement of principal (and premium, if any) or interest upon the Subordinate Obligations.

(4)    No owner of a bond shall be prejudiced in this right to enforce subordination of the Subordinate Obligations by any act or failure to act on the part of the Authority.

(5)    The Subordinate Obligations may provide that the provisions of (1), (2), (3) and (4) above are solely for the purpose of defining the relative rights of the owners of the bonds on the one hand, and the holders of Subordinate Obligations on the other

13475422.4

hand, and that nothing therein shall impair, as between the Authority and the holders of the Subordinate Obligations, the obligation of the Authority, which is unconditional and absolute, to pay to the holders thereof the principal thereof and premium, if any, and interest thereon in accordance with their terms, nor shall anything therein prevent the holders of the Subordinate Obligations from exercising all remedies otherwise permitted by applicable law or thereunder upon default thereunder, subject to the rights under (1), (2), (3) and (4) above of the owners of bonds to receive cash, property or securities from the funds pledged to the bonds under this Agreement otherwise payable or deliverable to the holders of the Subordinate Obligations; and the Subordinate Obligations may provide that, insofar as a trustee or paying agent for such Subordinate Obligations is concerned, the foregoing provisions shall not prevent the application by such trustee or paying agent of any moneys deposited with such trustee or paying agent for the purpose of the payment of or on account of the principal (and premium, if any) and interest on such Subordinate Obligations if such trustee or paying agent did not have knowledge at the time of such application that such payment was prohibited by the foregoing provisions.

(6)     Any issue of Subordinate Obligations may have such rank or priority with respect to any other issue of Subordinate Obligations as may be provided in the resolution, trust agreement or other instrument securing such issue of Subordinate Obligations and may contain such other provisions as are not in conflict with the provisions of this Agreement.

(7)     Neither the Trustee nor any Depositary shall be deemed to owe any fiduciary duty to the holders of Subordinate Obligations and shall not be liable to such holders if it shall mistakenly pay over or transfer to owners of bonds, the Authority or any other person, moneys to which any holders of Subordinate Obligations shall be entitled by virtue of this Section 516 or otherwise; provided, however, that neither the Trustee nor any Depositary then holding the Subordinate Obligations Fund shall be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct. Notwithstanding any of the provisions of this Section 516 or any other provision of this Agreement, neither the Trustee nor any such Depositary shall at any time be charged with knowledge of the existence of any facts that would prohibit the making of any payment of moneys to or by the Trustee or any such Depositary in respect of Subordinate Obligations or of any default in the payment of the principal of or premium, if any, or interest on any Subordinate Obligations, unless and until the Trustee or such Depositary shall have received written notice thereof from the Authority or the holders of a majority in principal amount of any class or category of any Subordinate Obligations or from any trustee or other fiduciary therefor and any financial institution that provides credit or security for any Subordinate Obligations.

## Article VI
### Depositaries of Moneys, Security for Deposits and Investment of Funds.

Section 601.    Deposits constitute trust funds.    All moneys received by the Authority under the provisions of this Agreement shall be deposited with a Depository or Depositaries,

13475422.4

shall be held in trust, shall be applied only in accordance with the provisions of this Agreement and shall not be subject to lien or attachment by any creditor of the Authority.

All moneys deposited with the Trustee or any other Depositary hereunder in excess of the amount guaranteed by the Federal Deposit Insurance Corporation or other Federal agency shall be continuously secured for the benefit of the Authority and the holders of the bonds, either (a) by lodging with a bank or trust company approved by the Authority and by the Trustee as custodian, or, if then permitted by law, by setting aside under control of the trust department of the bank holding such deposit, as collateral security, Government Obligations, or, with the approval of the Trustee, other marketable securities eligible as security for the deposit of trust funds under applicable regulations of the Comptroller of the Currency of the United States or applicable Commonwealth of Puerto Rico or state law or regulations, having a market value (exclusive of accrued interest) not less than the amount of such deposit, or (b) if the furnishing of security as provided in clause (a) of this Section is not permitted by applicable law, in such other manner as may then be required or permitted by applicable Commonwealth of Puerto Rico, state or Federal laws or regulations regarding the security for, or granting a preference in the case of, the deposit of trust funds; provided, however, that it shall not be necessary for the Paying Agents to give security for the deposits of any moneys with them for the payment of the principal of or the redemption premium or the interest on any bonds issued hereunder, or for the Trustee to give security for any moneys which shall be represented by obligations purchased under the provisions of this Article as an investment of such moneys.

All moneys deposited with each Depositary, including the Trustee, shall be credited to the particular fund or account to which such moneys belong.

Section 602. <u>Investment of moneys.</u> Moneys held for the credit of the Bond Service Account and the Redemption Account, shall, as nearly as may be practicable, be continuously invested and reinvested by the Trustee in Government Obligations which shall mature, or which shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said Accounts will be required for the purposes intended, or in Time Deposits; provided, however, that each such Time Deposit shall permit the moneys so placed to be available for use at the times provided above.

Moneys held for the credit of the Construction Fund, the Reserve Maintenance Fund and the Self-insurance Fund shall, as nearly as may be practicable, be continuously invested and reinvested by the Authority in Investment Obligations, and moneys held for the credit of the Revenue Fund shall, as nearly as may be practicable, be continuously invested and reinvested by the Authority in Government Obligations, which Investment Obligations and Government Obligations shall mature, or shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said Funds will be required for the purposes intended, or in Time Deposits; provided, however, that each such Time Deposit shall permit the moneys so placed to be available for use at the times provided above.

Moneys held for the credit of the Reserve Account shall, as nearly as may be practicable, be continuously invested and reinvested by the Trustee in Investment Obligations which shall mature, or which shall be subject to redemption by the holder thereof at the option of such

- 63 -

holder, (i) as to approximately 50% of such moneys, not later than 5 years after the date of such investment, and (ii) as to the balance of such moneys, as directed by the order mentioned below or in Time Deposits; provided, however, that each such Time Deposit shall permit the moneys so placed to be available for use at the times provided above.

Fifty per centum (50%) of the moneys held for the credit of the Reserve Account shall be invested by the Trustee upon receipt of an order signed by the Executive Director or other authorized officer of the Authority or authorized representative of the Executive Director or other authorized officer stating the amount to be invested and directing such investment in Investment Obligations having such maturities as are specified in such order. Such obligations shall be sold by the Trustee upon receipt of an order signed by the Executive Director or other authorized officer of the Authority or authorized representative of the Executive Director or other authorized officer.

Notwithstanding any provision of this Section to the contrary, moneys held to the credit of the Self-insurance Fund may also be invested by the Authority in any investments authorized by Act No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended from time to time (codified as Title 3, Chapter 33, Section 779, Laws of Puerto Rico Annotated), for the Retirement System of the Employees of the Government for Puerto Rico and its Instrumentalities; provided, however, that the Authority shall invest not less than the lesser of $25,000,000 and the entire balance to the credit of such Fund in Investment Obligations with an average weighted maturity of not in excess of three years.

Prior to investing any moneys held for the credit of the Self-insurance Fund in other Investment Obligations, the Authority shall require an Independent Consultant retained pursuant to the provisions of Section 706 to present a report described in said Section 706 recommending what portion of moneys held for the credit of the Self-insurance Fund the Authority shall maintain invested in Investment Obligations. Should the Self-insurance Fund be held by the Trustee on behalf of the Authority, a copy of such report will be furnished to the Trustee.

Prior to investing any moneys held for the credit of the Self-insurance Fund in other than Investment Obligations, the Authority shall, after duly considering the report it shall have received pursuant to the foregoing paragraph, formally adopt, subject to the consent of Government Development Bank for Puerto Rico, and maintain an investment policy first determining, subject to the limitation prescribed by the second preceding paragraph, the minimum portion of the moneys held for the credit of the Self-insurance Fund to remain invested in Investment Obligations and then setting forth prudent investment principles, considerations and goals, including, without limitation, liquidity, diversification of assets, safety and rate or rates of return, that will govern the investment strategies and goals for the balance of the moneys held for the credit of the Self-insurance Fund. The Authority agrees to advise the Trustee in writing of those investments other than Investment Obligations that are authorized by said investment policy.

The Board shall receive at each regular meeting a detailed report from its Treasurer of the current portfolio of Investment Obligations, other securities and other moneys held to the credit of the Self-insurance Fund.

13475422.4

Obligations and Time Deposits so purchased as an investment of moneys in any such Fund or Account shall be deemed at all times to be part of such Fund or Account. The interest accruing thereon and any profit realized from such investment shall be credited to such Fund or Account and any loss resulting from such investment shall be charged to such Fund or Account. The Trustee shall sell or present for payment or redemption any obligations so acquired whenever it shall be necessary so to do in order to provide moneys to meet any payment from such Fund or Account. Neither the Trustee nor the Authority nor any officer or agent of either thereof shall be liable or responsible for any loss resulting from any such investment.

## Article VII
## Particular Covenants

Section 701. <u>Payment of principal, interest and premium.</u> The Authority covenants that it will promptly pay the principal of and the interest on each and every bond issued under the provisions of this Agreement at the places, on the dates and in the manner specified herein and in said bonds and in the coupons, if any, appertaining thereto, and any premium required for the retirement of said bonds by purchase or redemption, according to the true intent and meaning thereof. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such principal, interest and premium are payable solely from moneys in the Renewal and Replacement Fund and said moneys are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such principal, interest and premium will be payable solely from the Revenues and said Revenues are hereby pledged to the payment thereof in the manner and to the extent hereinafter particularly specified. Nothing in the bonds or in this Agreement shall be deemed to constitute the bonds a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions shall be liable for the payment of the principal of or the interest on the bonds.

The Authority further covenants that so long as any bonds issuable as coupon bonds shall be outstanding it will cause offices or agencies where the coupon bonds and coupons may be presented for payment to be maintained in the Borough of Manhattan, City and State of New York.

Section 702. <u>Covenants to Integrate Improvements into System.</u> The Authority covenants that, upon the acquisition or construction of any Improvements, it will forthwith integrate the properties so acquired or constructed with the System and will thereupon operate and maintain the System and all of such properties as an integrated system.

The Authority further covenants that it will construct all Improvements and all other works on properties constituting part of the System for the construction of which bonds or Subordinate Obligations shall be issued under the provisions of this Agreement, or for which moneys repayable from the proceeds of bonds or Subordinate Obligations issued under the provisions of this Agreement shall have been advanced to the Authority, in accordance with plans theretofore adopted by the Board and approved by the Consulting Engineers and that upon

- 65 -

13475422.4

the completion of such Improvements or other works or properties it will operate and maintain the same as a part of the System.

The Authority further covenants that it will establish and enforce reasonable rules and regulations governing the use of the System and the operation thereof, that all compensation, salaries, fees and wages paid by it in connection with the maintenance, repair and operation of the System will be reasonable, that no more persons will be employed by it than are necessary, that it will operate the System in an efficient and economical manner, that it will at all times maintain the System in good repair and in sound operating condition and will make all necessary repairs, renewals and replacements, and that it will comply with all valid acts, rules, regulations, orders and directions of any legislative, executive, administrative or judicial body applicable to the System.

Section 703. <u>Compliance with 1947 Indenture.</u> The Authority further covenants that, until all of the 1947 Indenture Bonds shall have been paid or provision shall have been made for their payment and the 1947 Indenture shall have been released, it will duly and punctually perform all of the covenants, agreements and conditions contained in the 1947 Indenture on the part of the Authority to be performed. The Authority further covenants that it will cause the 1947 Indenture to be released at the earliest practicable date. The Authority further covenants that it will not enter into any indenture or agreement supplemental to the 1947 Indenture for the purpose of granting to or conferring upon the 1947 Trustee for the benefit of the holders of the bonds issued under the 1947 Indenture any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon such holders or the 1947 Trustee, or for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in the 1947 Indenture, or for the purpose of extending the maturity of any 1947 Indenture Bond or creating a lien upon or a pledge of revenues ranking prior to or on a parity with the lien or pledge created by the 1947 Indenture. Nothing herein contained shall prevent the Authority from entering into an indenture or agreement supplemental to the 1947 Indenture to cure any ambiguity or formal defect or omission in the 1947 Indenture; and notwithstanding the above, the Authority may enter into any indenture or agreement supplemental to the 1947 Indenture for any purposes permitted thereunder, including, without limitation, modifying any of the terms or provisions contained in the 1947 Indenture, to the extent that any such indenture or agreement would not adversely affect the interest of the bondholders under this Agreement. Under this Section, the Trustee will be entitled to receive, and shall be fully protected in relying upon the opinion of any counsel approved by it, who may be counsel for the Authority.

Section 704. <u>Covenant as to Renewal and Replacement Fund.</u> The Authority covenants that so long as any 1947 Indenture Bonds are outstanding under the provisions of the 1947 Indenture it will cause to be made the deposits to the credit of the Renewal and Replacement Fund required by Section 512 of the 1947 Indenture and it will not revise its determination as to the proper amount to be transferred each month from the 1947 Revenue Fund to the credit of the Renewal and Replacement Fund by reducing such amount below one-twelfth (1/12) of the maximum Principal and Interest Requirements for any fiscal year thereafter to and including the fiscal year in which the last maturity of any outstanding 1947 Indenture Bonds occurs on account of all bonds then outstanding under this Agreement.

13475422.4

Section 705. <u>Payment of lawful charges.</u> The Authority further covenants that, out of the Revenues, it will pay all municipal or governmental charges lawfully levied or assessed upon the System or any part thereof or upon any Revenues when the same shall become due, that it will duly observe and comply with all valid requirements of any municipal or governmental authority relative to the System, that it will not create or suffer to be created any lien or charge upon the System or any part thereof or upon the Revenues ranking equally with or prior to the bonds, except the lien and charge of the 1947 Indenture Bonds and the bonds secured hereby upon the Revenues and except as otherwise permitted in this Agreement, and that, out of the Revenues, it will pay or cause to be discharged, or will make adequate provision to satisfy and discharge, within sixty (60) days after the same shall accrue, all lawful claims and demands for labor, materials, supplies or other objects which, if unpaid, might by law become a lien upon the System or any part thereof or the Revenues; provided, however, that nothing contained in this Section shall require the Authority to pay or cause to be discharged, or make provision for, any such lien or charge so long as the validity thereof shall be contested in good faith and by appropriate legal proceedings.

Section 706. <u>Employment of Consulting Engineers.</u> The Authority covenants and agrees that so long as any 1947 Indenture Bonds are outstanding it will, for the purpose of performing and carrying out the duties imposed on the Consulting Engineers by this Agreement, employ such Consulting Engineers as are employed under Section 704 of the 1947 Indenture, and after the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture and so long as any bonds are outstanding under this Agreement, it will employ an independent engineer or engineering firm or corporation having a wide and favorable repute in the United States for skill and experience in the construction and operation of electric systems. No engineer or engineering firm shall be employed as Consulting Engineers under this Agreement, except with the written approval of the Trustee. Except for fees and expenses incurred under the provisions of Section 403 of this Agreement, the cost of employing Consulting Engineers shall be treated as a part of the cost of operation and maintenance of the System.

It shall be the duty of the Consulting Engineers to prepare and file with the Authority and with the Trustee on or before the 1st day of November in each year a report setting forth their recommendations as to any necessary or advisable revisions of rates and charges and such other advices and recommendations as they may deem desirable. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, it shall be the duty of the Consulting Engineers to include in such report their recommendations as to the amount that should be deposited monthly during the ensuing fiscal year to the credit of the Reserve Maintenance Fund for the purposes set forth in Section 512 of this Agreement, deposited during the ensuing fiscal year to the credit of the Self-insurance Fund for the purposes set forth in Section 512A of this Agreement, if any, and deposited during the ensuing fiscal year to the credit of the Capital Improvement Fund for the purposes set forth in Section 512B of this Agreement.

The Authority further covenants that the Consulting Engineers shall at all times have free access to all properties of the System and every part thereof for the purposes of inspection and examination, and that its books, records and accounts may be examined by the Consulting Engineers at all reasonable times.

- 67 -

13475422.4

The Authority covenants and agrees that so long as any bonds are outstanding under this Agreement, it will, for the purpose of carrying out the duties imposed on the Independent Consultant by this Agreement, employ one or more independent firms having a wide and favorable repute in the United States for expertise in risk management and other insurance matters related to the construction and operation of electric systems. Except for fees and expenses incurred under the provisions of Section 403 of this Agreement, the cost of employing such Independent Consultant shall be treated as part of the cost of operation and maintenance of the System.

It shall be the duty of the Independent Consultant to prepare and file with the Authority and the Trustee at least biennially, on or before the first day of November, beginning November, 1999, a report setting forth its recommendations, based on a review of the insurance then maintained by the Authority in accordance with Section 707 of this Agreement and the status of the Self-insurance Fund, of any changes in coverage, including its recommendations of policy limits and deductibles and self-insurance, and investment strategies for the Self-insurance Fund.

Section 707. **Insurance.** The Authority covenants that it will at all times carry insurance, in a responsible insurance company or companies authorized and qualified under the laws of Puerto Rico to assume the risk thereof, covering such properties belonging to the System as are customarily insured, and against loss or damage from such causes as are customarily insured against, by companies engaged in similar business.

All such policies shall be for the benefit of the Authority, shall be made payable to the Authority and shall be deposited with the Treasurer, and the Treasurer shall have the sole right to receive the proceeds of such policies and to collect and receipt for claims thereunder. The proceeds of any and all such insurance shall be deposited by the Treasurer in the name of the Authority in a Depositary.

The Authority covenants that, immediately after any loss or damage to any properties of the System resulting from any cause, whether or not such loss or damage shall be covered by insurance, it will cause its engineers to prepare plans and specifications for repairing, replacing or reconstructing (either in accordance with the original or a different design) the damaged or destroyed property, and that it will forthwith commence and diligently prosecute the repair, replacement or reconstruction of the damaged or destroyed property unless it shall determine that the repair, replacement, or reconstruction of such property is not essential to the efficient operation of the System.

The proceeds of all insurance policies referred to in this Section shall be available for, and shall to the extent necessary be applied to, the repair, replacement or reconstruction of the damaged or destroyed property, and shall be disbursed in the manner provided by Section 402 of this Agreement for disbursements from the Construction Fund. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, if such proceeds are more than sufficient for such purpose, the balance remaining shall be deposited to the credit of the Renewal and Replacement Fund. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such balance shall be deposited to the credit of the Redemption Account in the Sinking Fund or, at the option of the Authority, to the credit of the Construction Fund. Until the

- 68 -

1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, if such proceeds shall be insufficient for such purpose, the deficiency may be supplied, first, out of moneys in the General Reserve Fund under the 1947 Indenture, and second, out of moneys in the Renewal and Replacement Fund. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such deficiency may be supplied out of any moneys held for the credit of the Reserve Maintenance Fund or from any other moneys of the Authority available for such purpose, including any moneys held for the credit of the Self-insurance Fund.

Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the proceeds of any insurance not applied within eighteen (18) months after their receipt by the Treasurer to repairing, replacing or reconstructing the damaged or destroyed property, unless the Authority shall be prevented from so doing because of conditions beyond its control, or unless the holders of fifty-one per centum (51%) in aggregate principal amount of all 1947 Indenture Bonds then outstanding shall otherwise direct, shall be deposited to the credit of the Renewal and Replacement Fund. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such proceeds shall be deposited to the credit of the Redemption Account in the Sinking Fund or, at the option of the Authority, to the credit of the Construction Fund, unless the Authority shall be prevented from so doing because of conditions beyond its control, or unless the holders of fifty-one per centum (51%) in aggregate principal amount of all bonds then outstanding under this Agreement shall otherwise direct.

Section 708. _Inspection of insurance policies._ All insurance policies shall be open to the inspection of the bondholders and their representatives at all reasonable times. The Treasurer of the Authority is hereby authorized to demand, collect, sue and receipt for the insurance money which may become due and payable under any policies payable to the Authority.

Section 709. _No inconsistent action._ The Authority covenants and agrees that, so long as any of the bonds secured hereby shall be outstanding, none of the gross revenues of the System will be used for any purpose other than as provided in the 1947 Indenture and this Agreement, and that no contract or contracts will be entered into or any action taken by which the rights of the Trustee or of the bondholders might be impaired or diminished.

Section 710. _Accurate records._ The Authority covenants that its accounts will be kept according to standard practices for the public utility systems similar to the properties and business of the Authority and applicable in such circumstances, and in such manner as appropriately to segregate, in so far as advisable, the accounts in respect of the different classes of its operations, projects, undertakings and activities, that it will keep accurate records and accounts of all items of cost and expenditures relating to the System and to each integral unit of the System, the Revenues collected and the application of the Revenues, and the number of consumers, and that it will keep such records and accounts with respect to its physical properties in such manner that it will be possible at all times to identify both the amounts and the items of all additions and retirements.

The Authority further covenants that at least once each month it will cause to be filed with the Trustee and the Consulting Engineers copies of any revisions of the rate schedules

during the preceding calendar month and a report, signed by the Executive Director, setting forth the following:

(a)     a separate income and expense statement for Revenue Fund purposes of the System for the preceding calendar month and the twelve (12) month period ending with such month;

(b)     a statement for the preceding calendar month and for the fiscal year to date of all deposits and transfers to the credit of and withdrawals from each special fund and account created under the provisions of this Agreement, showing the balance to the credit of each such fund or account;

(c)     a statement of the amount of bonds issued, paid, purchased or redeemed during the preceding calendar month;

(d)     a balance sheet as of the end of the preceding calendar month;

(e)     the amounts on deposit at the end of the preceding calendar month in each bank or trust company; and

(f)     the amounts of the proceeds received during the preceding calendar month from any sales of property pursuant to Section 712 of this Article.

The Authority further covenants that in the first month of each fiscal year it will cause an audit to be made of its books and accounts pertaining to the System by an independent firm of certified public accountants of suitable experience and responsibility and widely known in the United States, to be chosen by the Executive Director with the approval of the Trustee. Before the first day of the third month following the making of such audit, reports of such audits shall be filed with the Trustee and the Authority, and copies of such reports shall be mailed to the Consulting Engineers. Such audit reports shall set forth in respect of the preceding fiscal year the same matters as are hereinabove required for the monthly reports.

The Authority further covenants that it will cause any additional reports or audits relating to the System to be made as required by law or by any applicable rules or regulations of any governmental authority or of any securities exchange on which the bonds may be listed or traded, and that as often as may be requested it will furnish to the Trustee such other information concerning the System or the operation thereof as the Trustee may reasonably request. The cost of such audits shall be treated as a part of the cost of operation of the System.

Section 711. <u>Covenants as to additional 1947 Indenture Bonds.</u>  The Authority covenants that so long as any bonds shall be outstanding under the provisions of this Agreement it will not issue additional 1947 Indenture Bonds which mature after July 1, 2007 and except as follows:

(a)     revenue bonds under the provisions of Section 209 of the 1947 Indenture issued to pay the cost of Improvements and sold to the Rural Electrification Administration of the United States of America; provided, however, that the aggregate principal amount of such revenue bonds issued hereafter shall not exceed $12,834,000,

- 70 -

(b)     revenue bonds under the provisions of Section 210 of the 1947 Indenture issued for the purpose of providing working cash funds for the Authority; provided, however, that the aggregate principal amount of such revenue bonds outstanding in any fiscal year hereafter shall not exceed one-sixth (1/6) of the amount shown by the Annual Budget to be necessary for Current Expenses for such fiscal year or for the next ensuing fiscal year, whichever is greater, and

(c)     revenue refunding bonds under the provisions of Section 211 of the 1947 Indenture.

Section 712.    Covenant against sale or encumbrance; exceptions. (a)     The Authority covenants that so long as any bonds shall be outstanding under the provisions of this Agreement and except as in this Agreement otherwise permitted, it will not sell, lease or otherwise dispose of or encumber the System or any part thereof and will not create or permit to be created any charge or lien on the Revenues ranking equally with or prior to the charge or lien on the Revenues of the bonds issued under and secured by this Agreement. The Authority may, however, from time to time, sell any machinery, fixtures, apparatus, tools, instruments, or other movable property acquired by it in connection with the System, or any materials used in connection therewith, if the Authority shall determine that such articles are no longer needed or are no longer useful in connection with the construction or operation and maintenance of the System, and the proceeds thereof shall be applied to the replacement of the properties so sold or disposed of or shall be deposited (i) until the 1947 Indenture Bonds have been paid or provision has been made for their replacement and the release of the 1947 Indenture, to the credit of the Renewal and Replacement Fund, and (ii) after the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Redemption Account in the Sinking Fund or the Construction Fund, at the option of the Authority; provided that in connection with the issuance of bonds, the Authority may secure its obligations to the provider of a credit or liquidity facility securing said bonds on a parity with the bonds. Notwithstanding the provisions of paragraph (a) of this Section, the Authority may from time to time sell or lease such other property forming part of the System as is not needed or serves no useful purpose in connection with the maintenance and operation of the System, and the proceeds of any such sale of property which is declared by resolution of the Board to be unnecessary for the System shall be deposited, so long as any 1947 Indenture Bonds are outstanding, to the credit of the Renewal and Replacement Fund or to the credit of the 1947 Reserve Account, as may be provided by such resolution, and, after the 1947 Indenture Bonds shall have been paid or provision has been made for their payment and the release of the 1947 Indenture, to the credit of the Redemption Account in the Sinking Fund or the Construction Fund, as may be provided by such resolution. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the rentals under any such lease shall be deposited to the credit of the 1947 Revenue Fund, and thereafter such rentals shall be deposited to the credit of the Revenue Fund.

(b)     Notwithstanding the provisions of paragraph (a) of this Section, after the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Authority may from time to time permanently abandon the use of, sell or lease any property forming a part of the System but only if

- 71 -

(1)     there shall be filed with the Trustee prior to such abandonment, sale or lease a certificate, signed by the Executive Director and approved by the Consulting Engineers, stating

(A)     that the Authority is not then in default in the performance of any of the covenants, conditions, agreements or provisions contained in this Agreement, and

(B)     that the Net Revenues for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months next preceding the date of such certificate, after giving effect to such abandonment, sale or lease and any replacement and after adjustment to reflect the moneys which would have been received if the rate schedule in effect on the date of such certificate had been in effect throughout such twelve (12) calendar months, are not less than one hundred twenty per centum (120%) of the maximum aggregate Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding under the provisions of this Agreement, and

(2)     the amount held by the Trustee to the credit of the Reserve Account in the Sinking Fund is the maximum amount required under the provisions of Section 507 of this Agreement.

The proceeds of the sale of any property forming part of the System under the provisions of paragraph (c) of this Section shall either be deposited by the Authority to the credit of the Redemption Account in the Sinking Fund or the Construction Fund, at the option of the Authority, or shall be applied to the replacement of the property so sold, and any property acquired as such replacement shall become a part of the System subject to the provisions of this Agreement.  The rentals under any such lease shall be deposited to the credit of the Revenue Fund.

For purposes of paragraphs (b) and (c) of this Section, references to sales or leases shall include also other transfers of property and for purposes of paragraph (c) of this Section the transferee may be considered in lieu of the Authority or in addition to the Authority if the transferee agrees to assume the Authority's obligations under this Agreement and the Authority delivers to the Trustee an opinion of counsel to the Authority to the effect that the transferee's undertaking to assume the Authority's obligations hereunder is legally valid and binding with the same effect as though the transferee were the Authority.  If the transferee is a public corporation or other governmental entity, such transfer shall be permitted notwithstanding the Authority's failure to demonstrate the necessary coverage requirement in paragraph (a) above; provided that the Authority delivers a certificate of its Consulting Engineers to the Trustee demonstrating that the coverage ratio shown in the above certificate is not reduced due to such transfer.

(a)     Notwithstanding the provisions of paragraph (a) of this Section, except as may conflict with the provisions of the 1947 Indenture until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Authority may lease portions of the System, or grant licenses, easements and other rights or

- 72 -

make contracts or other arrangements for operation or use of portions of the System, if there shall be delivered to the Trustee the following:

(i) a report of the Consulting Engineers determining that (A) the proposed lessee or other contracting party is a financially responsible entity with substantial experience in the operation and management of utilities of the type and size of the System, and (B) the available revenues projected to be derived from the portion of the System subject to the lease, contract, license, easement or other arrangement following the date on which such lease, contract, license, easement or other arrangement is to be effective are forecasted to be sufficient to pay to the Authority the rent or other payments provided by such lease, contract, license, easement or other arrangements and to make all necessary repairs, improvements and replacements to said portion of the System in the condition it was prior to such lease, contract, license, easement or other arrangement; and

(ii) a certificate of the Consulting Engineers to the effect that the lease, contract, license, easement or other arrangement provides (A) for rent or other payments sufficient, with other Net Revenues projected to be derived from the System, to make all payments of the Principal and Interest Requirements for all bonds which will remain outstanding following the execution and delivery of the lease, contract, license, easement or other arrangement, (B) operational covenants binding on the lessee or other contracting party similar to those covenants contained in this Agreement and (C) to the extent permitted by law in the case of a lease, for immediate termination of the lease of such lessee without resort to legal process in the event of a default under the lease; and

(iii) an opinion of counsel of recognized standing in the field of law relating to municipal bonds to the effect that the proposed transaction would not adversely affect the federal income tax status of any Bonds.

The rentals and other payments under any such lease, contract, license, easement or other arrangement shall be included in the definition of Revenues and shall be deposited to the credit of the Revenue Fund.

Section 713. <u>Build America Bonds</u>. With respect to Build America Bonds, the Authority hereby covenants to file, or cause to be filed, a Form 8038-CP with the Internal Revenue Service not less than 45 days and not more than 90 days prior to the date interest on the Build America Bonds shall be payable, as provided in Notice 2010-26 issued by the Internal Revenue Service, so long as filing such form is a condition to receipt of the Federal Subsidy prior to the date such interest shall be payable. In the event that the Internal Revenue Service shall amend or revise the guidance provided in Notice 2010-26, the Authority agrees that it shall take all such actions as are necessary to ensure receipt of the Federal Subsidy. With respect to Other Subsidy Bonds, the Authority hereby covenants it shall take all such actions as are necessary to ensure receipt of the Federal Subsidy related to such series of bonds as shall be set forth in the resolution relating to such Other Subsidy Bonds. The only effect of any failure to comply with this Section 713 shall be that the Federal Subsidy to which such failure relates shall no longer be excluded from the calculation of Principal and interest Requirements.

13475422.4

MADDEN CLAIMS
7273
R1
5000 PDF

## Article VIII
## Remedies

Section 801.   <u>Extended coupons.</u>  In case the time for the payment of any coupon or the interest on any registered bond without coupons shall be extended, whether or not such extension be by or with the consent of the Authority, such coupon or such interest so extended shall not be entitled in case of default hereunder to the benefit or security of this Agreement except subject to the prior payment in full of the principal of all bonds then outstanding and of all coupons and interest the time for the payment of which shall not have been extended.

Section 802.   <u>Events of default.</u>  Each of the following events is hereby declared an "event of default", that is to say, if:

(a)      payment of the principal and the redemption premium, if any, of any of the bonds shall not be made when the same shall become due and payable, either at maturity or by proceedings for redemption or otherwise; or

(b)      payment of any installment of interest on any of the bonds shall not be made when the same shall become due and payable; or

(c)      the Authority shall for any reason be rendered incapable of fulfilling its obligations hereunder; or

(d)      any part of the System necessary for its effective operation shall be destroyed or damaged and shall not be properly repaired, replaced or reconstructed; or

(e)      final judgment for the payment of money shall be rendered against the Authority as a result of the ownership, control or operation of the System and any such judgment shall not be discharged within sixty (60) days from the entry thereof or an appeal shall not be taken therefrom or from the order, decree or process upon which or pursuant to which such judgment shall have been granted or entered, in such manner as to stay the execution of or levy under such judgment, order, decree or process or the enforcement thereof; or

(f)      an order or decree shall be entered, with the consent or acquiescence of the Authority, for the purpose of effecting composition between the Authority and its creditors or for the purpose of adjusting the claims of such creditors pursuant to any federal or Commonwealth statute now or hereafter enacted, if the claims of such creditors are under any circumstances payable from the Revenues; or

(g)      any proceeding shall be instituted, with the consent or acquiescence of the Authority, for the purpose of effecting a composition between the Authority and its creditors or for the purpose of adjusting the claims of such creditors pursuant to any federal or Commonwealth statute now or hereafter enacted, if the claims of such creditors are under any circumstances payable from the Revenues; or

(h)      the Authority  shall default in the due and punctual performance of any other of the covenants, conditions, agreements and provisions contained in the bonds or in this Agreement on the part of the Authority to be performed, including meeting any Amortization

- 74 -

13475422.4

Requirement, and such default shall continue for thirty (30) days after written notice specifying such default and requiring same to be remedied shall have been given to the Authority by the Trustee, which may give such notice in its discretion and shall give such notice at the written request of the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding; or

(i) an event of default within the meaning of that term in Section 802 of the 1947 Indenture shall occur; or

(ii) notice has been received by the Trustee and the Authority, from the bank or other financial or lending institution providing a credit or liquidity facility or other entity insuring, guaranteeing or providing for payments of principal or interest in respect of any bonds that an event of default has occurred under the agreement underlying said facility, or a failure by said bank or other financial or lending institution or other entity to make said facility available or to reinstate the interest component of said facility, in accordance with the terms of said facility, to the extent such notice or failure is established as an event of default under the terms of the resolution authorizing the issuance of said bonds.

Section 803. _Acceleration of maturities._ Upon the happening and continuance of any event of default specified in Section 802 of this Article, then and in every such case the Trustee may, and upon the written request of the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds then outstanding shall, by a notice in writing to the Authority, declare the principal of all of the bonds then outstanding (if not then due and payable) to be due and payable immediately, and upon such declaration in the same shall become and be immediately due and payable, anything contained in the bonds or in this Agreement to the contrary notwithstanding; provided, however, that if at any time after the principal of the bonds shall have been so declared to be due and payable, and before the entry of final judgment or decree in any suit, action or proceeding instituted on account of such default, or before the completion of the enforcement of any other remedy under this Agreement, moneys shall have accumulated in the Sinking Fund sufficient to pay the principal of all matured bonds and all arrears of interest, if any, upon all the bonds then outstanding (except the principal of any bonds not then due and payable by their terms and the interest accrued on such bonds since the last interest payment date), and the charges, compensation, expenses, disbursements, advances, and liabilities of the Trustee and all other amounts then payable by the Authority hereunder shall have been paid or a sum sufficient to pay the same shall have been deposited with the Trustee, and every other default known to the Trustee in the observance or performance of any covenant, condition, agreement or provision contained in the bonds or in this Agreement (other than a default in the payment of the principal of such bonds then due and payable only because of a declaration under this Section) shall have been remedied to the satisfaction of the Trustee, then and in every such case the Trustee may, and upon the written request of the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds not then due and payable by their terms and then outstanding shall, by written notice to the Authority, rescind and annul such declaration and its consequences, but no such rescission or annulment shall extend to or affect any subsequent default or impair any right consequent thereon.

Section 804. _Enforcement of remedies._ Upon the happening and continuance of any event of default specified in Section 802 of this Article, then and in every such case the Trustee

- 75 -

may proceed, and upon the written request of the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding hereunder shall proceed, subject to the provisions of Section 902 of this Agreement, to protect and enforce its rights and the rights of the bondholders under applicable laws or under this Agreement by such suits, actions or special proceedings in equity or at law, or by proceedings in the office of any board or officer having jurisdiction, either for the appointment of a receiver as authorized by the Authority Act or for the specific performance of any covenant or agreement contained herein or in aid or execution of any power herein granted or for the enforcement of any proper legal or equitable remedy, as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights; provided, however, that the Trustee shall not be required to proceed for the appointment of a receiver of the System unless it shall receive the written request of the holders of not less than twenty-five per centum (25%) in principal amount of the bonds then outstanding under the provisions of this Agreement.

In the enforcement of any remedy under this Agreement the Trustee shall be entitled to sue for, enforce payment of and receive any and all amounts then or during any default becoming, and at any time remaining, due from the Authority for principal, interest or otherwise under any of the provisions of this Agreement or of the bonds and unpaid, with interest on overdue payments of principal at the rate or rates of interest specified in such bonds, together with any and all costs and expenses of collection and of all proceedings hereunder and under such bonds, without prejudice to any other right or remedy of the Trustee or of the bondholders, and to recover and enforce any judgment or decree against the Authority, but solely as provided herein and in such bonds, for any portion of such amounts remaining unpaid and interest, costs and expenses as above provided, and to collect (but solely from moneys in the Sinking Fund and any other moneys available for such purpose) in any manner provided by law, the moneys adjudged or decreed to be payable.

Section 805. _Pro rata application of funds._ Anything in this Agreement to the contrary notwithstanding, if at any time the moneys in the Sinking Fund shall not be sufficient to pay the interest on or the principal of the bonds as the same shall become due and payable (either by their terms or by acceleration of maturities under the provisions of Section 803 of this Article, such moneys, together with any moneys then available or thereafter becoming available for such purpose, whether through the exercise of the remedies provided for in this Article or otherwise, shall be applied as follows:

(a)     if the principal of all the bonds shall not have become or shall not have been declared due and payable, all such moneys shall be applied

_first:_ to the payment to the persons entitled thereto of all installments of interest then due and payable in the order in which such installments became due and payable and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment, ratably, according to the amounts due on such installment, to the person entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds;

_second:_ to the payment to the persons entitled thereto of the unpaid principal of any of the bonds which shall have become due and payable (other than bonds called for

- 76 -

redemption for the payment of which moneys are held pursuant to the provisions of this Agreement) in the order of their due dates, with interest on the principal amount of such bonds at the respective rates specified therein from the respective dates upon which such bonds became due and payable, and, if the amount available shall not be sufficient to pay in full the principal of the bonds due and payable on any particular date, together with such interest, then to the payment first of such interest, ratably, according to the amount of such interest due on such date, and then to the payment of such principal, ratably, according to the amount of such principal due on such date, to the persons entitled thereto without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds; and

*third*: to the payment of the interest on and the principal of the bonds, to the purchase and retirement of bonds and to the redemption of bonds, all in accordance with the provisions of Article V of this Agreement.

(b)     If the principal of all bonds shall have become or shall have been declared due and payable, all such moneys shall be applied

*first:* to the payment to the persons entitled thereto of all installments of interest due and payable on or prior to maturity, if any, in the order in which such installments became due and payable and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment, ratably, according to the amount due on such installment, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds, and then to the payment of any interest due and payable after maturity on the bonds, ratably, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds; and

*second*: to the payment of the principal of the bonds, ratably, to the persons entitled thereto, without preference or priority of any bond over any other bond.

(c)     If the principal of all the bonds shall have been declared due and payable and if such declaration shall thereafter have been rescinded and annulled under the provisions of Section 803 of this Article, then, subject to the provisions of paragraph (b) of this Section in the event that the principal of all the bonds shall later become due and payable or be declared due and payable, the moneys remaining in and thereafter accruing to the Sinking Fund shall be applied in accordance with the provisions of paragraph (a) of this Section.

The provisions of paragraphs (a), (b) and (c) of this Section are in all respects subject to the provisions of Section 801 of this Article.

Whenever moneys are to be applied by the Trustee pursuant to the provisions of this Section, such moneys shall be applied by the Trustee at such times, and from time to time, as the Trustee in its sole discretion shall determine, having due regard to the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future; the deposit of such moneys with the Paying Agents, or otherwise setting aside such moneys, in trust for the proper purpose shall constitute proper application by the

- 77 -

13475422.4

Trustee; and the Trustee shall incur no liability whatsoever to the Authority, to any bondholder or to any other persons for any delay in applying any such moneys, so long as the Trustee acts with reasonable diligence, having due regard to the circumstances, and ultimately applies the same in accordance with such provisions of this Agreement as may be applicable at the time of application by the Trustee. Whenever the Trustee shall exercise such discretion in applying such moneys, it shall fix the date (which shall be an interest payment date unless the Trustee shall deem another date more suitable) upon which such application is to be made and upon such date interest on the amounts of principal to be paid on such date shall cease to accrue. The Trustee shall give such notice as it may deem appropriate of the fixing of any such date, and shall not be required to make payment to the holder of any unpaid coupon or any bond until such coupon or such bond and all unmatured coupons, if any, appertaining to such bond shall be surrendered to the Trustee for appropriate endorsement, or for cancellation if fully paid.

Section 806. Effect of discontinuance of proceedings. In case any proceeding taken by the Trustee or bondholders on account of any default shall have been discontinued or abandoned for any reason, then and in every such case the Authority, the Trustee and the bondholders shall be restored to their former positions and rights hereunder, respectively, and all rights, remedies, powers and duties of the Trustee shall continue as though no such proceeding had been taken.

Section 807. Majority of bondholders may control proceedings. Anything in this Agreement to the contrary notwithstanding, the holders of a majority in principal amount of the bonds then outstanding hereunder shall have the right, subject to the provisions of Section 902 of this Agreement, by an instrument or concurrent instruments in writing executed and delivered to the Trustee, to direct the method and place of conducting all remedial proceedings to be taken by the Trustee hereunder, provided that such direction shall not be otherwise than in accordance with law or the provisions of this Agreement.

Section 808. Restrictions upon action by individual bondholder. No holder of any of the bonds shall have any right to institute any suit, action or proceeding in equity or at law on any bond or for the execution of any trust hereunder or for any remedy hereunder unless such holder previously shall have given to the Trustee written notice of the event of default on account of which such suit, action or proceeding is to be instituted, and unless also the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding shall have made written request of the Trustee after the right to exercise such powers or right of action, as the case may be, shall have accrued, and shall have afforded the Trustee a reasonable opportunity either to proceed to exercise the powers hereinabove granted or to institute such action, suit or proceeding in its or their name, and unless, also, there shall have been offered to the Trustee reasonable security and indemnity against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee shall have refused or neglected to comply with such request within a reasonable time; and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this Agreement or to any other remedy hereunder; provided, however, that notwithstanding the foregoing provisions of this Section and without complying therewith, the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds then outstanding may institute any such suit, action or proceeding in their own names for the benefit of all holders of bonds hereunder. It is understood and intended that, except as otherwise above provided, no one or more holders of the bonds hereby secured shall

- 78 -

have any right in any manner whatever by his or their action to affect, disturb or prejudice the security of this Agreement, or to enforce any right hereunder except in the manner herein provided, that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the benefit of all holders of such outstanding bonds and coupons, and that any individual right of action or other right given to one or more of such holders by law is restricted by this Agreement to the rights and remedies herein provided.

Section 809. <u>Actions by Trustee.</u> All rights of action under this Agreement or under any of the bonds secured hereby, enforceable by the Trustee, may be enforced by it without the possession of any of the bonds or the coupons appertaining thereto or the production thereof at the trial or other proceeding relative thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in its name for the benefit of all of the holders of such bonds and coupons, subject to the provisions of this Agreement.

Section 810. <u>No remedy exclusive.</u> No remedy herein conferred upon or reserved to the Trustee or to the holders of the bonds is intended to be exclusive of any other remedy or remedies herein provided, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder.

Section 811. <u>No delay or omission construed to be a waiver.</u> No delay or omission of the Trustee or of any holder of the bonds to exercise any right or power accruing upon any default shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given by this Agreement to the Trustee and to the holders of the bonds, respectively, may be exercised from time to time and as often as may be deemed expedient.

The Trustee may, and upon written request of the holders of not less than a majority in principal amount of the bonds then outstanding shall, waive any default which in its opinion shall have been remedied before the entry of final judgment or decree in any suit, action or proceeding instituted by it under the provisions of this Agreement or before the completion of the enforcement of any other remedy under this Agreement, but no such waiver shall extend to or affect any other existing or any subsequent default or defaults or impair any rights or remedies consequent thereon.

Section 812. <u>Notice of default.</u> The Trustee shall mail to all registered owners of bonds at their addresses as they appear on the registration books and to all the bondholders of record, written notice of the occurrence of any event of default set forth in Section 802 of this Article within thirty (30) days after the Trustee shall have notice, pursuant to the provisions of Section 908 of this Agreement, that any such event of default shall have occurred. The Trustee shall not, however, be subject to any liability to any bondholder by reason of its failure to mail any such notice.

## Article IX
## Concerning the Trustee

Section 901. <u>Acceptance of trusts.</u> The Trustee accepts and agrees to execute the trusts imposed upon it by this Agreement, but only upon the terms and conditions set forth in this

13475422.4

Article and subject to the provisions of this Agreement, to all of which the parties hereto and the respective holders of the bonds agree.

Section 902. <u>Trustee entitled to indemnity.</u> The Trustee shall be under no obligation to institute any suit, or to take any remedial proceeding under this Agreement, or to enter any appearance or in any way defend in any suit in which it may be made defendant, or to take any steps in the execution of the trusts hereby created or in the enforcement of any rights and powers hereunder, until it shall be indemnified to its satisfaction against any and all costs and expenses, outlays and counsel fees and other reasonable disbursements, and against all liability; the Trustee may, nevertheless, begin suit, or appear in and defend suit, or do anything else in its judgment proper to be done by it as such Trustee, without indemnity, and in such case the Authority shall reimburse the Trustee from Revenues for all costs and expenses, outlays and counsel fees and other reasonable disbursements properly incurred in connection therewith. If the Authority shall fail to make such reimbursement, the Trustee may reimburse itself from any moneys in its possession under the provisions of this Agreement and shall be entitled to a preference therefor over any of the bonds or coupons outstanding hereunder.

Section 903. <u>Limitation on obligations and responsibilities of Trustee.</u> The Trustee shall be under no obligation to effect or maintain insurance or to renew any policies of insurance or to inquire as to the sufficiency of any policies of insurance carried by the Authority, or to report, or make or file claims or proof of loss for, any loss or damage insured against or which may occur, or to keep itself informed or advised as to the payment of any taxes or assessments, or to require any such payment to be made. The Trustee shall have no responsibility in respect of the validity, sufficiency, due execution or acknowledgement by the Authority of this Agreement, or, except as to the authentication thereof, in respect of the validity of the bonds or of the coupons or the due execution or issuance thereof. The Trustee shall be under no obligation to see that any duties herein imposed upon the Authority, the Consulting Engineers, the Independent Consultant, the Paying Agents, any Depositary, or any party other than itself, or any covenants herein contained on the part of any party other than itself to be performed, shall be done or performed, and the Trustee shall be under no obligation for failure to see that any such duties or covenants are so done or performed.

Section 904. <u>Trustee not liable for failure of Authority to act or for deposits in other banks.</u> The Trustee shall not be liable or responsible because of the failure of the Authority or of any of its employees or agents to make any collections or deposits or to perform any act herein required of the Authority or because of the loss of any moneys arising through the insolvency or the act or default or omission of any other Depositary in which such moneys shall have been deposited under the provisions of this Agreement. The Trustee shall not be responsible for the application of any of the proceeds of the bonds or any other moneys deposited with it and paid out, withdrawn or transferred hereunder if such application, payment, withdrawal or transfer shall be made in accordance with the provisions of this Agreement. The immunities and exemptions from liability of the Trustee hereunder shall extend to its directors, officers, employees and agents.

Section 905. <u>Compensation and identification of Trustee.</u> Subject to the provisions of any contract between the Authority and the Trustee relating to the compensation of the Trustee, the Authority shall, from the Revenues, pay to the Trustee reasonable compensation for all

- 80 -

services performed by it hereunder and also all its reasonable expenses, charges and other disbursements and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created and the performance of its powers and duties hereunder, and, from such Revenues only, shall indemnify and save the Trustee harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder. If the Authority shall fail to make any payment required by this Section, the Trustee may make such payment from any moneys in its possession under the provisions of this Agreement and shall be entitled to a preference therefor over any of the bonds or coupons outstanding hereunder.

Section 906. <u>Monthly statement from Trustee.</u> It shall be the duty of the Trustee, on or before the 10th day of each month, to file with the Authority a statement setting forth in respect of the preceding calendar month

(a)     the amount withdrawn or transferred by it and the amount deposited with it on account of each Fund and Account held by it under the provisions of this Agreement,

(b)     the amount on deposit with it at the end of such month to the credit of each such Fund and Account,

(c)     a brief description of all obligations held by it as an investment of moneys in each such Fund and Account,

(d)     the amount applied to the purchase or redemption of bonds under the provisions of Section 511 of this Agreement and a description of the bonds or portions of bonds so purchased or redeemed, and

(e)     any other information which the Authority may reasonably request.

All records and files pertaining to the trusts hereunder in the custody of the Trustee shall be open at all reasonable times to the inspection of the Authority and its agents and representatives.

Section 907. <u>Trustee may rely on certificates.</u> In case at any time it shall be necessary or desirable for the Trustee to make any investigation respecting any fact preparatory to taking or not taking any action or doing or not doing anything as such Trustee, and in any case in which this Agreement provides for permitting or taking any action, the Trustee may rely conclusively upon any certificate, requisition, opinion or other instrument required or permitted to be filed with it under the provisions of this Agreement, and any such instrument shall be conclusive evidence of such fact to protect the Trustee in any action that it may or may not take or in respect of anything it may or may not do, in good faith, by reason of the supposed existence of such fact. Except as otherwise provided in this Agreement, any request, notice, certificate or other instrument from the Authority to the Trustee shall be deemed to have been signed by the proper party or parties if signed by the Executive Director or by any officer or employee of the Authority who shall be designated by the Authority by resolution for that purpose, and the Trustee may accept and rely upon a certificate signed by the Executive Director as to any action taken by the Authority.

- 81 -

13475422.4

Section 908.  Notice of default.  Except upon the happening of any event of default specified in clauses (a) and (b) of Section 802 of this Agreement, the Trustee shall not be obliged to take notice or be deemed to have notice of any event of default hereunder, unless specifically notified in writing of such event of default by the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds hereby secured and then outstanding.

Section 909.  Trustee may deal in bonds and take action as bondholder.  The bank or trust company acting as Trustee under this Agreement, and its directors, officers, employees or agents, may in good faith buy, sell, own, hold and deal in any of the bonds or coupons issued under and secured by this Agreement, may join in any action which any bondholder may be entitled to take with like effect as if such bank or trust company were not the Trustee under this Agreement, may engage or be interested in any financial or other transaction with the Authority, and may maintain any and all other general banking and business relations with the Authority with like effect and in the same manner as if the Trustee were not a part to this Agreement; and no implied covenant shall be read into this Agreement against the Trustee in respect of such matters.

Section 910.  Trustee not responsible for recitals.  The recitals, statements and representations contained herein and in the bonds (excluding the Trustee's certificate of authentication on the bonds) shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same.

Section 911.  Trustee protected in relying on certain documents.  The Trustee shall be protected and shall incur no liability in acting or proceeding, or in not acting or not proceeding, in good faith, reasonably and in accordance with the terms of this Agreement, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other paper or document which it shall in good faith reasonably believe to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Agreement, or upon the written opinion of any attorney, engineer or accountant believed by the Trustee to be qualified in relation to the subject matter, and the Trustee shall be under no duty to make any investigation or inquiry as to any statements contained or matters referred to in any such instrument.  The Trustee shall not be under any obligation to see to the recording or filing of this Agreement or otherwise to the giving to any person of notice of the provisions hereof.

Section 912.  Resignation of Trustee.  The Trustee may resign and thereby become discharged from the trusts hereby created, by notice in writing to be given to the Authority and published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, not less than sixty (60) days before such resignation is to take effect, but such resignation shall take effect immediately upon the appointment of a new Trustee hereunder, if such new Trustee shall be appointed before the time limited by such notice and shall then accept the trusts hereof.

Section 913.  Removal of Trustee.  The Trustee may be removed at any time by an instrument or concurrent instruments in writing executed by the holders of not less than a

- 82 -

13475422.4

majority in principal amount of the bonds hereby secured and then outstanding and filled with the Authority.  A facsimile copy of each such instrument shall be delivered promptly by the Authority to the Trustee. The Trustee may also be removed at any time for any breach of trust or for acting or proceeding in violation of, or for failing to act or proceed in accordance with, any provision of this Agreement with respect to the duties and obligations of the Trustee by any court of competent jurisdiction upon the application of the Authority pursuant to resolution or the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding under this Agreement.

Section 914.  Appointment of successor Trustee.  If at any time hereafter the Trustee shall resign, be removed, be dissolved or otherwise become incapable of acting, or the bank or trust company acting as Trustee shall be taken over by any governmental official, agency, department or board, the position of Trustee shall thereupon become vacant.  If the position of Trustee shall become vacant for any of the foregoing reasons or for any other reason, the Authority shall appoint a Trustee to fill such vacancy.  The Authority shall publish notice of any such appointment by it made once in each week for four (4) successive weeks in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York.

At any time within one year after any such vacancy shall have occurred, the holders of a majority in principal amount of the bonds hereby secured and then outstanding, by an instrument or concurrent instruments in writing, executed by such bondholders and filed with the Authority, may appoint a successor Trustee, which shall supersede any Trustee theretofore appointed by the Authority.  Facsimile copies of each such instrument shall be delivered promptly by the Authority to the predecessor Trustee and to the Trustee so appointed by the bondholders.

If no appointment of a successor Trustee shall be made pursuant to the foregoing provisions of this Section within ten (10) days after the vacancy shall have occurred, the holder of any bonds outstanding hereunder or any retiring Trustee may apply to any court of competent jurisdiction within the Commonwealth of Puerto Rico or the State of New York to appoint a successor Trustee.  Such court may thereupon, after such notice, if any, as such court may deem proper and prescribe, appoint a successor Trustee.

Any Trustee hereafter appointed shall be a bank or trust company having its principal office in the Borough of Manhattan, City and State of New York, duly authorized to exercise corporate trust powers and subject to examination by federal or state authority, of good standing, and having at the time of its appointment a combined capital and surplus aggregating not less than Fifty Million Dollars ($50,000,000) (or whose obligations hereunder are guaranteed by a bank or trust company duly authorized to exercise corporate trust powers and subject to examination by federal or state authority, of good standing, and having at the time of the appointment of such Trustee, a combined capital and surplus of at least such amount).

Section 915.  Vesting of trusts in successor Trustee.  Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to its predecessor, and also to the Authority, an instrument in writing accepting such appointment hereunder, and thereupon such successor Trustee, without any further act, shall become fully vested with all the rights, immunities, powers

- 83 -

13475422.4

and trusts, and subject to all the duties and obligations, of its predecessor, but such predecessor shall, nevertheless, on the written request of its successor or of the Authority, and upon payment of the expenses, charges and other disbursements of such predecessor which are payable pursuant to the provisions of Section 905 of this Article, execute and deliver an instrument transferring to such successor Trustee all the rights, immunities, powers and trusts of such predecessor hereunder, and every predecessor Trustee shall deliver all property and moneys held by it hereunder to its successor. Should any instrument in writing from the Authority be required by any successor Trustee for more fully and certainly vesting in such Trustee the rights, immunities, powers and trusts hereby vested or intended to be vested in the predecessor Trustee, any such instrument in writing shall and will, on request, be executed, acknowledged and delivered by the Authority.

Notwithstanding any of the foregoing provisions of this Article, any bank or trust company having power to perform the duties and execute the trusts of this Agreement and otherwise qualified to act as Trustee hereunder with or into which the bank or trust company acting as Trustee may be merged, converted or consolidated, or to which the assets and business of such bank or trust company may be sold, shall be deemed the successor of the Trustee.

### Article X
### Execution of Instruments by Bondholders and Proof of Ownership of Bonds.

Section 1001. <u>Execution of instruments by bondholders.</u> Any request, direction, consent or other instrument in writing required or permitted by this Agreement to be signed or executed by Bondholders may be in any number of concurrent instruments of similar tenor and may be signed or executed by such bondholders or their attorneys or legal representatives. Proof of the execution of any such instrument and of the ownership of bonds shall be sufficient for any purpose of this Agreement and shall be conclusive in favor of the Trustee with regard to any action taken by it under such instrument if made in the following manner:

(a) The fact and date of the execution by any person of any such instrument may be proved by the verification of any officer in any jurisdiction who, by the laws thereof, has power to take affidavits within such jurisdiction, to the effect that such instrument was subscribed and sworn to before him, or by an affidavit of a witness to such execution. Where such execution is on behalf of a person other than an individual such verification or affidavit shall also constitute sufficient proof of the authority of the signer thereof.

(b) The fact of the holding of coupon bonds hereunder by any bondholder and the amount and the numbers of such bonds and the date of his holding the same may be proved by the affidavit of the person claiming to be such holder, if such affidavit shall be deemed by the Trustee to be satisfactory, or by a certificate executed by any trust company, bank, banker or any other depositary, wherever situated, if such certificate shall be deemed by the Trustee to be satisfactory, showing that at the date therein mentioned such person had on deposit with or exhibited to such trust company, bank, banker or other depositary the bonds described in such certificate. The Trustee may conclusively assume that such ownership continues until written notice to the contrary is served upon it. The ownership of registered bonds without coupons shall be proved by the registration books kept under the provisions of Section 206 of this Agreement.

- 84 -

13475422.4

But nothing contained in this Article shall be construed as limiting the Trustee to such proof, it being intended that the Trustee may accept any other evidence of the matters herein stated which it may deem sufficient. Any request or consent of the holder of any bond shall bind every future holder of the same bond in respect of anything done by the Trustee in pursuance of such request or consent.

Notwithstanding any of the foregoing provisions of this Section, the Trustee shall not be required to recognize any person as a holder of any bond or coupon or to take any action at his request unless such bond or coupon shall be deposited with it.

## Article XI
## Supplemental Agreements.

Section 1101. Supplemental agreements by Authority and Trustee. The Authority and the Trustee may, from time to time, enter into such agreements supplemental hereto as shall not be inconsistent with the terms and provisions hereof (which supplemental agreements shall thereafter from a part hereof)

    (a)    to cure any ambiguity, to correct or supplement any provision herein which may be inconsistent with any other provision herein, or to make any other provisions with respect to matters or questions arising under this Agreement which shall not be inconsistent with the provisions of this Agreement, provided such action shall not adversely affect the interest of the bondholders, or

    (b)    to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the bondholders or the Trustee, or

    (c)    to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of this Agreement other conditions, limitations and restrictions thereafter to be observed, or

    (d)    to add to the covenants and agreements of the Authority in this Agreement other covenants and agreements thereafter to be observed by the Authority or to surrender any right or power herein reserved to or conferred upon the Authority.

At least thirty (30) days prior to the execution of any supplemental agreement for any of the purposes of this Section, the Trustee shall cause a notice of the proposed execution of such supplemental agreement to be mailed, postage prepaid, to all registered owners of bonds at their addresses as they appear on the registration books and to all bondholders of record. Such notice shall briefly set forth the nature of the proposed supplemental agreement and shall state that copies thereof are on file at the principal office of the Trustee for inspection by all bondholders. A failure on the part of the Trustee to mail the notice required by this Section shall not affect the validity of such supplemental agreement.

Section 1102. Modification of Agreement with consent of 60% of bondholders. Subject to the terms and provisions contained in this Section, and not otherwise, the holders of not less than sixty per centum (60%) in aggregate principal amount of the bonds then outstanding shall

13475422.4

have the right, from time to time, anything contained in this Agreement to the contrary notwithstanding, to consent to and approve the execution by the Authority and the Trustee of such agreement or agreements supplemental hereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to, repealing or rescinding, in any particular, any of the terms or provisions contained in this Agreement or in any supplemental agreement; provided, however, that nothing herein contained shall permit, or be construed as permitting, (a) an extension of the maturity of the principal of or the interest on any bond issued hereunder, or (b) a reduction in the principal amount of any bond or the redemption premium or the rate of interest thereon, or (c) the creation of a lien upon or a pledge of the Revenues other than any lien and pledge created or permitted by this Agreement, or (d) a preference or priority of any bond or bonds over any other bond or bonds, or (e) a reduction in the aggregate principal amount of the bonds required for consent to such supplemental agreement. Nothing herein contained, however, shall be construed as making necessary the approval by bondholders of the execution of any supplemental agreement as authorized in Section 1101 of this Article.

If at any time the Authority shall request the Trustee to enter into any supplemental agreement for any of the purposes of this Section, the Trustee shall, at the expense of the Authority, cause notice of the proposed execution of such supplemental agreement to be published once in each week for four (4) successive weeks in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, and, on or before the date of the first publication of such notice, the Trustee shall also cause a similar notice to be mailed, postage prepaid, to all registered owners of bonds at their addresses as they appear on the registration books and all bondholders of record. Such notice shall briefly set forth the nature of the proposed supplemental agreement and shall state that copies thereof are on file at the principal office of the Trustee for inspection by all bondholders. The Trustee shall not, however, be subject to any liability to any bondholder by reason of its failure to mail the notice required by this Section, and any such failure shall not affect the validity of such supplemental agreement when consented to and approved as provided in this Section.

Whenever, at any time within one year after the date of the first publication of such notice, the Authority shall deliver to the Trustee an instrument or instruments in writing purporting to be executed by the holders of not less than sixty per centum (60%) in aggregate principal amount of the bonds then outstanding, which instrument or instruments shall refer to the proposed supplemental agreement described in such notice and shall specifically consent to and approve the execution thereof in substantially the form of the copy thereof referred to in such notice, thereupon, but not otherwise, the Trustee may execute such supplemental agreement in substantially such form, without liability or responsibility to any holder of any bond, whether or not such holder shall have consented thereto.

If the holders of not less than sixty per centum (60%) in aggregate principal amount of the bonds outstanding at the time of the execution of such supplemental agreement shall have consented to and approved the execution thereof as herein provided, no holder of any bond shall have any right to object to the execution of such supplemental agreement, or to object to any of the terms and provisions contained therein or the operation thereof, or in any manner to question

- 86 -

13475422.4

the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Authority from executing the same or from taking any action pursuant to the provisions thereof.

Upon the execution of any supplemental agreement pursuant to the provisions of this Section, this Agreement shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Agreement of the Authority, the Trustee and all holders of bonds then outstanding shall thereafter be determined, exercised and enforced in all respects under the provisions of this Agreement as so modified and amended.

Section 1103. Trustee joining in supplemental agreement. The Trustee is authorized to join with the Authority in the execution of any such supplemental agreement and to make the further agreements and stipulations which may be contained therein. Any supplemental agreement executed in accordance with the provisions of this Article shall thereafter form a part of this Agreement, and all of the terms and conditions contained in any such supplemental agreement as to any provision authorized to be contained therein shall be and shall be deemed to be part of the terms and conditions of this Agreement for any and all purposes. In case of the execution and delivery of any supplemental agreement, express reference may be made thereto in the text of any bonds issued thereafter, if deemed necessary or desirable by the Trustee.

Section 1104. Responsibilities of Trustee under this Article. In each and every case provided for in this Article, the Trustee shall be entitled to exercise its discretion in determining whether or not any proposed supplemental agreement, or any term or provision therein contained, is desirable, having in view the purposes of such instrument, the needs of the Authority, the rights and interests of the bondholders, and the rights, obligations and interests of the Trustee, and the Trustee shall not be under any responsibility or liability to the Authority or to any bondholder or to anyone whomsoever for its refusal in good faith to enter into any such supplemental agreement if such agreement is deemed by it to be contrary to the provisions of this Article. The Trustee shall be entitled to receive, and shall be fully protected in relying upon, the opinion of any counsel approved by it, who may be counsel for the Authority, as evidence that any such proposed supplemental agreement does or does not comply with the provisions of this Agreement, and that it is or is not proper for it, under the provisions of this Article, to join in the execution of such supplemental agreement.

## Article XII
## Defeasance.

Section 1201. Release of Agreement. If, when the bonds secured hereby shall have become due and payable in accordance with their terms or otherwise as provided in this Agreement or shall have been duly called for redemption or irrevocable instructions to call the bonds for redemption or payment shall have been given by the Authority to the Trustee, the whole amount of the principal and the interest and the premium, if any, so due and payable upon all of the bonds and coupons then outstanding shall be paid or sufficient moneys, or Government Obligations or Prefunded Municipals or Time Deposits, secured in the manner set forth in Section 601 of this Agreement, the principal of and the interest on which when due will provide sufficient moneys, shall be held by the Trustee or the Paying Agents for such purpose under the provisions of this Agreement, and provision shall also be made for paying all other sums payable

13475422.4

hereunder by the Authority, then and in that case the right, title and interest of the Trustee hereunder shall thereupon cease, determine and become void, and the Trustee in such case, on demand of the Authority shall release this Agreement and shall execute such documents to evidence such release as may be reasonably required by the Authority, and shall turn over to the Authority or to such officer, board or body as may then be entitled by law to receive the same any surplus in any account in the Sinking Fund and all balances remaining in any other funds or accounts other than moneys held for the redemption or payment of bonds or coupons; otherwise this Agreement shall be, continue and remain in full force and effect; provided, however, that in the event Government Obligations or Prerefunded Municipals or Time Deposits secured in the manner set forth in Section 601 of this Agreement shall be held by the Trustee as hereinabove provided, (i) in addition to the requirements set forth in Article III of this Agreement, the Trustee shall within thirty (30) days after such obligations shall have been deposited with it cause a notice signed by the Trustee to be published once in a daily newspaper of general circulation published in the Municipality of San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, setting forth (a) the date designated for the redemption of the bonds, (b) a description of the Government Obligations or Prerefunded Municipals or Time Deposits so held by it and (c) that this Agreement has been released in accordance with the provisions of this Section, and (ii) the Trustee shall nevertheless retain such rights, powers and privileges under this Agreement, as may be necessary and convenient in respect of the bonds for the payment of the principal, interest and any premium for which such Government Obligations or Prerefunded Municipals have been deposited or such Time Deposits have been made. For purposes of determining whether Variable Rate Bonds shall be deemed to have been paid prior to the maturity or redemption date thereof, as the case may be, the interest to come due on such Variable Rate Bonds on or prior to the maturity date or redemption date thereof, as the case may be, shall be calculated at the maximum rate permitted by the terms thereof.

Put Bonds and Extendible Maturity Bonds shall be deemed to have been paid only if there shall have been deposited with the Trustee moneys, Government Obligations, Prerefunded Municipals or Time Deposits, secured in the manner set forth in Section 601 of the Agreement, as applicable, in an amount which shall be sufficient to pay when due the maximum amount of principal of and premium, if any, and interest on such bonds which would become payable to the holders of such bonds upon the exercise of any options or extensions of maturity; provided, however, that, if at the time a deposit is made with the Trustee, such options or extensions are no longer exercisable, such bond shall not be considered a Put Bond or an Extendible Maturity Bond for purposes of this Section.

### Article XIII
### Miscellaneous Provisions

Section 1301. Successorship of Authority. All covenants, stipulations, obligations and agreements of the Authority contained in this Agreement shall be deemed to be covenants, stipulations, obligations and agreements of the Authority to the full extent authorized or permitted by the laws of the Commonwealth of Puerto Rico, and all such covenants, stipulations, obligations and agreements shall be binding upon the successor or successors thereof from time to time and upon any officer, board, body or commission to whom or to which any power or duty

13475422.4

affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law.

No covenant, stipulation, obligation or agreement herein contained shall be deemed to be a covenant, stipulation, obligation or agreement of any present or future member, agent or employee of the Authority in his individual capacity, and neither the members of the Authority or of any other agency of the Commonwealth of Puerto Rico nor any officer thereof or of the Authority, present or future, executing the bonds shall be liable personally on the bonds or be subject to any personal liability or responsibility by reason of the issuance thereof.

The laws of the Commonwealth of Puerto Rico shall govern the construction of this Agreement, except that the rights, limitations of rights, immunities, duties and obligations of the Trustee shall be governed by the laws of the State of New York.

Section 1302. <u>Manner of giving notice, etc.</u> Any notice, demand, direction, request or other instrument authorized or required by this Agreement to be given to or filed with the Authority or the Trustee shall be deemed to have been sufficiently given or filed for all purposes of this Agreement if and when sent by first class mail:

      (a)     to the Authority, if addressed to the Executive Director, Puerto Rico Water Resources Authority, San Juan, Puerto Rico;

      (b)     to the Trustee, if addressed to it at its Corporate Trust Office, or to any successor Trustee, if addressed to it at its principal office.

Section 1303. <u>Successorship of Paying Agents.</u> Any bank or trust company with or into which any Paying Agent may be merged, converted or consolidated, or to which the assets and business of such Paying Agent may be sold, shall be deemed the successor of such Paying Agent for the purposes of this Agreement. If the position of any Paying Agent shall become vacant for any reason, the Authority shall, within thirty (30) days thereafter, appoint a bank or trust company located in the same city as Paying Agent to fill such vacancy; provided, however, that if the Authority shall fail to appoint such Paying Agent within such period, the Trustee shall make such appointment.

Section 1304. <u>Parties and bondholders alone have rights under Agreement.</u> Except as herein otherwise expressly provided, nothing in this Agreement expressed or implied is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto and the holders of the bonds issued under the provisions of this Agreement any right, remedy or claim, legal or equitable, under or by reason of this Agreement or any provisions hereof, this Agreement and all its provisions being intended to be and being for the sole and exclusive benefit of the parties hereto and the holders from time to time of the bonds issued hereunder.

Section 1305. <u>Effect of partial invalidity.</u> In case any one or more of the provisions of this Agreement or of the bonds or coupons issued hereunder shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Agreement or of the bonds or coupons, but this Agreement and the bonds and coupons shall be construed and enforced as if such illegal or invalid provision had not been contained therein. In case any covenant, stipulation, obligation or agreement contained in the bonds or in this

Agreement shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement shall be deemed to be the covenant, stipulation, obligation or agreement of the Authority to the full extent permitted by law.

Section 1306. <u>Substitute publication</u>.   If, because of the temporary or permanent suspension of publication of any newspaper or financial journal or for any other reason, the Trustee or the Authority shall be unable to publish in a newspaper or financial journal any notice required to be published by the provisions of this Agreement, the Trustee or the Authority, as the case may be, shall give such notice in such other manner as in its judgment shall most effectively approximate such publication thereof, and the giving of such notice in such manner shall for all purposes of this Agreement be deemed to be compliance with the requirement for the publication thereof.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to bondholders of record when such notice is required to be given pursuant to any provision of this Agreement, any manner of giving notice as shall be satisfactory to the Trustee and the Authority shall be deemed to be a sufficient giving of such notice.

Section 1307. <u>Other funds not prohibited</u>.   Nothing in this Agreement expressed or implied shall be construed as preventing the Authority, if then authorized or permitted by law, from financing the acquisition or construction of any land, building, structure or other facility by the issuance of obligations which are not issued under or secured by the provisions of this Agreement or the 1947 Indenture or by entering into any financing agreement or agreements relating to any such facility pursuant to which the Authority has the right to the use, occupancy and possession of such facility and is required to make periodic payments in an aggregate amount substantially equal to the cost of such facility and reasonable financing charges, regardless of the disposition of title to such facility.

Section 1308. <u>Headings, etc., not part of the Agreement</u>.   Any headings preceding the texts of the several articles hereof, and any table of contents appended to copies hereof, shall be solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

Section 1309. <u>Multiple Counterparts</u>.   This Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument.

13475422.4

**[Original signature page; does not reflect renaming of
Authority and appointment of successor trustee]**

IN WITNESS WHEREOF, Puerto Rico Water Resources Authority has caused this
Agreement to be executed by its Executive Director and its corporate seal to be impressed hereon
and attested by its Secretary or an' Assistant, Secretary and First National City Bank has caused
this Agreement to be executed in its behalf by one of its Vice Presidents and its corporate seal to
be impressed hereon and attested by one of its Associate Trust Officers, all as of the day and year
first above written.

                                    PUERTO RICO WATER RESOURCES
                                    AUTHORITY

                                    By /s/ Julio Negroni
                                    *Executive Director*

[seal]

Attest:

/s/ R. Betancourt
*Secretary*

                                    FIRST NATIONAL CITY BANK

                                    By /s/ D.C. McNeill
                                    *Vice President*

[seal]

Attest:

/s/ J.A. Olive
*Associate Trust Officer*

- 91 -

13475422.4

[Original acknowledgement page; does not reflect renaming of
Authority or appointment of successor trustee]

State of New York    )
                     )    ss.
County of New York  )

On the 7th day of January, 1974, before me personally came JULIO NEGRONI, to me known, who, being by me duly sworn, did depose and say that he resides at 269 Georgetown St., San Juan, Puerto Rico; that he is the Executive Director of Puerto Rico Water Resources Authority; and that he signed his name to the above instrument by order of the Authority, the Authority being the public corporation described in and which executed the above instrument.

/s/ Gundars Aperans
*Notary Public*
GUNDARS APERANS
Notary Public, State of New York
No. 31-5091740
Qualified in New York County
Commission Expires March 30, 1974

[seal]

State of New York    )
                     )    ss.
County of New York  )

On the 7th day of January, 1974, before me personally came D.C. MCNEILL, to me known, who, being by me duly sworn, did depose and say that he resides at 33 Ferris Hill Rd., New Canaan, Conn.; that he is a Vice President of First National City Bank, the banking association described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of said banking association; that it was so affixed by authority of said banking association; and that he signed his name thereto by like authority.

/s/ Gundars Aperans
*Notary Public*
GUNDARS APERANS
Notary Public, State of New York
No. 31-5091740
Qualified in New York County
Commission Expires March 30, 1974

[seal]

13475422.4