renewal of any motion similar to the Monoline Motion by the Supporting Holders in the event of a Stipulated Treatment Termination or an Individual Termination as to Assured, Syncora, or National only (unless the Individual Termination is rescinded by the Government Parties as if such termination never occurred) and, in the event of such renewal, without prejudice to the Government Parties' right to defend such motion) by all Supporting Holders, (ii) the Supporting Holders' ability to exercise or assert any rights or remedies under the Trust Agreement or other applicable law (including seeking to lift the stay or to accomplish any of the foregoing) or to direct the Trustee or provide legal or financial advice or assistance to support any other parties in connection with any of the foregoing, and (iii) the Supporting Holders' asserted right to receive any current payment or adequate protection payments on the Bonds (other than, in the case of Insured Bonds, payment from the Insurers under the Bond Insurance Agreements); (B) a tolling (including, without limitation, as to FOMB, any future or successor to FOMB and any members thereof) of all unexpired statutes of limitations for any causes of action related to the Bonds, including any Lien Challenge and any potential Bondholder Litigation, until forty-five (45) days after a Stipulated Treatment Termination; and (C) approval and authorization of (x) the Settlement Charge, the Settlement Payments, the Increased Settlement Charge, the Increased Settlement Payments, the Waiver and Support Fees, the Adequate Protection Payments, and the incurrence of the Administrative Claims, and (y) the right of the Supporting Holders to receive the Stipulated Treatment (collectively, the "**9019 Settlement**"). The 9019 Settlement shall terminate as to all Supporting Holders upon a Stipulated Treatment Termination and as to applicable individual Supporting Holder upon an Individual Termination.

   (c)  <u>Allowed Claim and Stipulated Treatment</u>.

     (i)  The 9019 Order shall provide that, if a Securitization Termination has occurred, then, except as otherwise set forth in this Definitive RSA in the event of an Individual Termination (as to such terminated Supporting Holder) or a Stipulated Treatment Termination (as to all Supporting Holders), each of the Supporting Holders shall be deemed to have an allowed secured claim in a face amount equal to (i) 73.25 % of the Applicable Bond Claim of the outstanding Bonds held or insured by such Supporting Holder, plus (ii) such Supporting Holder's allocated share (if any) of the Waiver and Support Fees inclusive of interest accrual at the contract rate through Administrative Claim Commencement, plus (iii)(a) in the case of Assured, to the extent that Assured's Stipulated Treatment is required to be adjusted as described in Section 2(c)(ii) to compensate Assured for the loss of the value of any portion of the Assured Treatment, the amount of such loss of value, (b) in the case of Syncora, to the extent that Syncora's Stipulated Treatment is required to be adjusted as described in Section 2(c)(ii) to compensate Syncora for the loss of the value of any portion of the Syncora Treatment, the amount of such loss of value, and (c) in the case of National, to the extent that National's Stipulated Treatment is required to be adjusted as described in Section 2(c)(ii) to compensate National for the loss of the value of any portion of the National Treatment, the amount of such loss of value (the "**Allowed Claim**").

     (ii)  The 9019 Order shall provide that, if a Securitization Termination occurs, then, except as set forth below in the event of an Individual Termination

(as to such applicable holder) or a Stipulated Treatment Termination (as to all Supporting Holders), and solely for purposes of settlement and without prejudice to the rights of the Parties in any other context, (i) the Supporting Holders' Allowed Claim shall be treated as if it were an allowed secured claim against the Net Revenues (as defined in the Trust Agreement) of PREPA in any subsequent Plan that is confirmed after a Securitization Termination, secured by collateral worth at least the amount of the Allowed Claim as of the Effective Date of such Plan, (ii) the foregoing shall be included in any Plan, qualifying modification, exchange, or other restructuring of Bonds subject to this Agreement, and (iii)(a) in the case of Assured, Assured shall be provided the opportunity to wrap debt securities being issued on account of the Assured Insured Bonds, to provide a DSRF surety for such debt securities and receive the related premiums to the same extent as set forth in the Assured Treatment below; provided that if Assured is not offered the opportunity to provide such wrap, to provide such DSRF surety and receive such premiums, then Assured's Stipulated Treatment shall be adjusted to compensate Assured for the loss of that value; and, provided further, that if Assured is offered the opportunity to provide such wrap, to provide such DSRF surety and receive such premiums, and it declines to do so, Assured's ~~stipulated treatment~~Stipulated Treatment shall not be adjusted to include such value, (b) in the case of Syncora, Syncora shall be provided the opportunity to wrap debt securities being issued on account of the Syncora Insured Bonds, to provide a DSRF surety for such debt securities and receive the related premiums to the same extent as set forth in the Syncora Treatment below; provided that if Syncora is not offered the opportunity to provide such wrap (other than as a result of a failure to meet the Insurance Conditions), to provide such DSRF surety and receive such premiums, then Syncora's Stipulated Treatment shall be adjusted to compensate Syncora for the loss of that value; and, provided further, that if Syncora is offered the opportunity to provide such wrap, to provide such DSRF surety and receive such premiums, and it declines to do so, Syncora's Stipulated Treatment shall not be adjusted to include such value, and (c) in the case of National, National shall be provided the opportunity to wrap debt securities being issued on account of the National Insured Bonds, to provide a DSRF surety for such debt securities and receive the related premiums to the same extent as set forth in the National's Treatment below; provided that if National is not offered the opportunity to provide such wrap (other than as a result of a failure to meet the Insurance Conditions), to provide such DSRF surety and receive such premiums, then National's Stipulated Treatment shall be adjusted to compensate National for the loss of that value; and, provided further, that if National is offered the opportunity to provide such wrap, to provide such DSRF surety and receive such premiums, and it declines to do so, National's Stipulated Treatment shall not be adjusted to include such value (collectively, the "**Stipulated Treatment**").

(iii) If at any time after September 1, 2019, the Supporting Holders who have not committed a Bondholder Breach hold or insure less than the applicable Required Threshold, then upon notice in accordance with Section 27 from any of the Required Holders, the Consulting Parties, or any of the Government Parties, the remaining Supporting Holders shall have 60 days to

obtain signatures to this Definitive RSA from additional Bondholders or acquire additional Uninsured Bonds such that the Bonds subject to this Definitive RSA equal or exceed the Required Threshold (each such 60 day period, a "**Joinder Period**") and the Government Parties shall cooperate with the Supporting Holders in connection therewith including posting appropriate notices on EMMA; provided, however, that any such Joinder Period shall terminate no later than ten (10) days prior to the date of the hearing on the Disclosure Statement. Any Uninsured Bond that becomes subject to this Definitive RSA during a Joinder Period shall begin receiving its first pro rata share of any Settlement Payments and accruing Administrative Claims as of the applicable Administrative Claim Commencement.  Bonds that have a particular Administrative Claim Commencement shall be identified by a separate CUSIP in accordance with Section 2(f) or, if mutually agreed to by the Required Parties, <ins>after consultation with the Consulting Parties,</ins> be subject to a special administrative claim bar date under the Plan.  Uninsured Bonds purchased by Supporting Holders after ~~September~~<ins>December</ins> 1, 2019, at any period other than during a Joinder Period shall not be entitled to Administrative Claims, Settlement Payments, Increased Settlement Payments, or Adequate Protection Payments but shall be subject to this Definitive RSA for all other purposes, including voting obligations and entitlement to the Stipulated Treatment.

(iv)    The 9019 Order shall provide that in the event of a Securitization Termination then, and unless the Title III Case has been dismissed, until the occurrence of an Individual Termination (as to such applicable Bondholder) or a Stipulated Treatment Termination (as to all Supporting Holders), Settlement Payments (or Increased Settlement Payments or Adequate Protection Payments, as applicable) shall continue to be made to the Supporting Holders and the Administrative Claims shall continue to accrue.  In the event of an Individual Termination (as to such applicable holder) or a Stipulated Treatment Termination (as to all Supporting Holders), any accrued and unpaid Administrative Claim shall be disallowed; provided that, with regard to a Stipulated Treatment Termination under Section 9(c)(i)(6), Supporting Holders will be entitled to an Administrative Claim that will have accrued through the date the Title III Court first denied confirmation of a Plan where such denial is not solely on grounds raised in an objection by PREPA or AAFAF ("**Surviving Administrative Claim**").

(d)    <u>Settlement Payments and Administrative Claims</u>.

(i)    Subject to entry of the 9019 Order, the Government Parties shall implement and collect the Settlement Charge and make the Settlement Payments.

(ii)    Subject to approval of the Title III Court, the Settlement Payments shall be made solely on account of Bonds subject to this Definitive RSA at the time such Settlement Payment is made on a pro rata basis based on the outstanding principal amounts of the Bonds subject to this Definitive RSA; provided that no Settlement Payment shall be made on any Bond that is not subject to this Definitive RSA by ~~September~~<ins>December</ins> 1, 2019 (unless such Bond

22

is an Uninsured Bond that becomes subject to this Definitive RSA during a subsequent Joinder Period) and no Bondholder shall receive any Settlement Payments on account of Bonds held by such Bondholder after an Individual Termination as to such Bondholder. Any Settlement Payments made on account of (i) Assured Insured Bonds shall be made to Assured, (ii) Syncora Insured Bonds shall be made to Syncora, and (iii) National Insured Bonds shall be made to National.

(iii) If a Bond is subject to this Definitive RSA prior to Administrative Claim Commencement and the 9019 Order is entered (and a Stipulated Treatment Termination does not occur subsequently as a result of the 9019 Order being reversed on appeal), such Bond subject to this Definitive RSA shall be entitled to a stipulated administrative expense claim for

(x) an amount equivalent to the Tranche A Bond interest payments accrued in respect of such Bond (including accruals at the same rate on such interest payments that would have been due on any interest payment date for Tranche A Bonds if such bonds were issued as if such interest payments were paid in kind), less

(y) the amount of Settlement Payments or Increased Settlement Payments that are made on account of such Bond (such claim, the "**Administrative Claim**")

from and after the Administrative Claim Commencement applicable to such Bond until the earliest of (A) a Stipulated Treatment Termination, (B) with respect to a Supporting Holder, an Individual Termination with respect to such Supporting Holder, or (C) the Effective Date of a Plan in PREPA's Title III Case. The Administrative Claims shall also include accrual and payment-in-kind of interest on the Waiver and Support Fees.

(iv) In lieu of Settlement Payments and/or cash payment of Administrative Claims on the Effective Date of a Plan (to the extent the Government Parties elect to pay Administrative Claims in cash), an individual Supporting Holder may elect to receive Tranche A Bonds for its Administrative Claims at the Exchange Ratio for Administrative Claims; provided that such election shall be structured as between the Supporting Holders and in a manner that does not increase the aggregate Administrative Claim or Transition Charge that would otherwise be payable under this Definitive RSA. If no agreement is reached by the Required Holders, after consultation with the Consulting Parties on implementing the election as provided herein, then no such election shall be available.

(v) Effective on the earlier of May 1, 2019 and the date of entry of the 9019 Order, solely for purposes of the 9019 Settlement and recoveries under this Definitive RSA, interest accrual on the Bonds shall be deemed to terminate. In

23

the event of a Stipulated Treatment Termination or an Individual Termination, all Parties reserve all rights regarding post-petition interest.

(e) <u>Delayed Implementation Date</u>.

(i) If a Title III plan for PREPA has not been confirmed and has not gone effective (and no other transaction has been consummated pursuant to which the Stipulated Treatment or the Securitization Bonds have been provided) by March 31, 2021 (the "**Delayed Implementation Date**"), and subject to and conditioned upon issuance or enactment of all required legislative and regulatory approvals, PREPA shall put into effect a charge equal to the Transition Charge that would have gone into effect on that date assuming the Effective Date occurred and Securitization Bonds were issued on such date, which charge shall thereafter increase from time to time as if the Securitization Bonds were outstanding (the "**Increased Settlement Charge**").

(ii) Collections on account of the Increased Settlement Charge shall be (A) paid monthly (the "**Increased Settlement Payments**"), pro rata on account of Bonds that are subject to this Definitive RSA and became subject to this Definitive RSA prior to ~~September~~<u>December</u> 1, 2019 or, in the case of Uninsured Bonds, during a Joinder Period, unless otherwise mutually agreed to by the Required Parties<u>, after consultation with the Consulting Parties,</u> on terms mutually agreed to by the Required Parties, and (B) applied (y) first on account of accrued and unpaid Administrative Claims (subject to any election to receive the Administrative Claims in Tranche A Bonds as set forth in this Definitive RSA), and (z) after payment of the Administrative Claims, to reduction of the Allowed Claim or amount of the Tranche A Bonds (as applicable); provided, however, only amounts actually collected by PREPA on account of the Increased Settlement Charge are required to be distributed.

(iii) On and after the Delayed Implementation Date, the obligation to make Settlement Payments shall be replaced by the obligation to make Increased Settlement Payments.

(iv) On and after the Delayed Implementation Date, the accrual of Administrative Claims in favor of the eligible Bonds held or insured by Supporting Holders shall continue, to the extent not paid by the Increased Settlement Charge, for an amount equal to the higher of (i) an amount equivalent to Tranche A interest payments (including accruals on unpaid Administrative Claims as if such unpaid Administrative Claims were paid in kind semi-annually) and (ii) an amount equal to the difference between (A) the amount of any Increased Settlement Payments or Adequate Protection Payments that would have been required to have been made as set forth above and (B) the amount of any Increased Settlement Payments or Adequate Protection Payments actually received in respect of such Bond. If the payment (whether in cash or in Tranche A Bonds) of any resulting Administrative Claim under clause (ii) exceeds the amount in clause (i), the Allowed Claim or the principal amount of Tranche A

Bonds to be issued at Effective Date, as applicable, shall be reduced by the amount of such excess.

(v) To the extent the Securitization Bond Treatment or the Stipulated Treatment is provided after the Delayed Implementation Date, the terms of such Securitization Bonds or Stipulated Treatment, including maturity of the Tranche B Bonds and accrual of the Tranche B Bond amounts between the Delayed Implementation Date and the Effective Date, if applicable, shall be adjusted in a manner mutually agreed upon by the Required Parties, after consultation with the Consulting Parties, (or if no such agreement can be reached, as ordered by the Title III Court) to take into account the Increased Settlement Payments made prior to the date of issuance of the Securitization Bonds or the provision of the Stipulated Treatment so that the cost to the Government Parties (and recovery on account of any Bond) is no greater (and no less) than that of the 9019 Settlement (including with respect to the maturity of the Securitization Bonds or the Stipulated Treatment to be provided under this Definitive RSA, as applicable).

(vi) On and after the Delayed Implementation Date, no Increased Settlement Payments shall be made if an Individual Termination (as to such applicable Bondholder) or if a Stipulated Treatment Termination (as to all Supporting Holders) occurs or has occurred, and any Administrative Claim accrued by such Supporting Holders under this Definitive RSA shall be expunged and disallowed as a result of an Individual Termination (as to such applicable Bondholder) or a Stipulated Treatment Termination (as to all Supporting Holders), other than the Surviving Administrative Claim. In addition, the obligation to make Increased Settlement Payments shall terminate on the earliest of (i) a termination pursuant to Section 9(d)(vi) as to PREPA or AAFAF, (ii) the Effective Date of a Plan (or the effective date of another transaction pursuant to which the Securitization Bond Treatment or Stipulated Treatment is provided), or (iii) dismissal of the Title III Case.

(vii) The 9019 Order shall provide that, if the Delayed Implementation Date occurs and PREPA has not implemented the Increased Settlement Charge to the extent required by this Definitive RSA, or in the event the Delayed Implementation Date occurs or has passed and PREPA is no longer a party to the RSA due to a termination pursuant to Section 9(d)(vi), then PREPA shall be obligated pursuant to the 9019 Order to make cash adequate protection payments (the "**Adequate Protection Payments**") on a monthly basis in an amount equal to the amount of Increased Settlement Payments (as defined below) that would have been required had the Increased Settlement Charge been implemented on such date and assuming that all Increased Settlement Payments would have been made to eligible Bonds subject to this Definitive RSA. PREPA's obligation to make Adequate Protection Payments shall terminate on the earliest of (i) the date the Increased Settlement Charge is implemented, (ii) the Effective Date of a Plan (or the effective date of another transaction pursuant to which the Securitization Bond Treatment or Stipulated Treatment is provided), (iii) in the case of an individual

25

Supporting Holder, an Individual Termination, or (iv) in the case of all Supporting Holders, a Stipulated Treatment Termination.

(f) <u>Tracking Provisions</u>.

(i) Uninsured Bonds held by Supporting Holders shall be assigned alternative identifying CUSIPs to allow such Uninsured Bonds to be freely transferable and remain subject to the provisions of this Definitive RSA. The Supporting Holders shall, and to the extent necessary shall direct the Trustee to, cooperate with the Government Parties in obtaining the alternative identifying CUSIPs. The details of the foregoing, as well as other mechanisms for implementing, tracking and disclosing the different payments and claims that Bonds are entitled to hereunder, shall be set forth on a term sheet to be mutually agreed upon by the Required Parties, after consultation with the Consulting Parties, and filed with the Title III Court prior to entry of the 9019 Order (the "**Tracking Mechanics Term Sheet**"). Such mechanisms shall be set up in such a manner such that they do not have an adverse effect on the enforceability, validity, tax exemption, or other rights of the Bonds, or on the lawful transferability of the Bonds under applicable securities laws.

(ii) The Supporting Holders shall (A) to the extent necessary, direct the Trustee to cooperate with the Government Parties in obtaining the alternative identifying CUSIPs, and (B) take the related actions agreed upon in the Tracking Mechanics Term Sheet.

**Section 3** <u>**Litigation Stay and Forbearance**</u>.

The Parties agree as follows:

~~(a) The Ad Hoc Group shall support dismissal of the Monoline Motion. Assured shall not oppose the Dismissal Motion and shall withdraw from the Monoline Motion upon the granting of the Settlement Motion.~~

(a) <u>Upon the entry of the 9019 Order, Assured, National, and Syncora shall withdraw the Monoline Motion. The Ad Hoc Group shall support the withdrawal of the Monoline Motion.</u>

(b) Unless all applicable deadlines on the Monoline Motion are extended as mutually agreed by the Parties and the other movants, the Ad Hoc Group, Assured, and the Government Parties shall jointly file an urgent motion(s) (or separate motions and/or joinders thereto) with the Title III Court as soon as practicable seeking to stay all applicable deadlines for the Monoline Motion (the "**Stay Motion**") until five (5) business days after the later of the date of entry of the 9019 Order and the date of entry of the order resolving the Dismissal Motion.

(c) The Government Parties, Ad Hoc Group, Assured, and the Trustee shall execute an agreement tolling all unexpired statutes of limitations for all causes of action related to the Bonds, including any Lien Challenge and any potential Bondholder Litigation (the "**Tolling Agreement**") and request Title III Court approval of such Tolling Agreement. By

26

signing this ~~RSA~~Agreement after the RSA Execution Date, a Supporting Holder shall be deemed to have joined the Tolling Agreement.

(d) If a Bondholder Litigation (as defined below) is commenced or continued, the Parties shall work in good faith to have such Bondholder Litigation dismissed, stayed, or withdrawn; provided that, so long as the Ad Hoc Group, Syncora, and National, and Assured are in compliance with this covenant, only Supporting Holders that are represented by counsel that has appeared in the Title III Case shall be required to file a pleading pursuant to this covenant but all Supporting Holders will be required to otherwise work in good faith.

(e) The Government Parties shall not commence ~~a~~or seek to terminate the stay of any Lien Challenge, as applicable, except in the following circumstances: (i) ~~if an order granting the Stay Motion has not been entered by May 3, 2019 (or such later date as the Government Parties' response to the Monoline Motion is required to be filed); (ii)~~ a Triggering Event has occurred; (~~iii~~ii) if any applicable statute of limitations is expiring within the next seven (7) days; (~~iv~~iii) FOMB's authority to prosecute PREPA's Title III Case is expiring; or (~~v~~iv) with the written consent of the Required Holders after consultation with the Consulting Parties; provided that in the case of clause (~~iii~~ii) or (~~iv~~iii) above, none of the Government Parties shall commence a Lien Challenge so long as the applicable statute of limitations is (and remains) tolled (including, without limitation, as to FOMB, any future or successor to FOMB, and any members thereof) by an order of the Title III Court in form and substance acceptable to each of the Required Parties. If any of the Government Parties files a Lien Challenge permitted by clause (~~iii~~ii) or (~~iv~~iii) above, the Government Parties shall use commercially reasonable efforts to stay any further proceedings in respect of such Lien Challenge (including extending all relevant deadlines and otherwise forbearing from pursuit of such Lien Challenge) if they are able to do so in a manner that does not prejudice their ability to resume or prosecute the Lien Challenge after expiration or termination of such stay. ~~If any of the Government Parties files a Lien Challenge permitted by clause (i) above, the Government Parties shall seek a stay of such Lien Challenge (including extending all relevant deadlines and otherwise forbearing from pursuit of such Lien Challenge) concurrently with any filing of an adversary complaint related to the Lien Challenge, and request that the stay shall continue until the Government Parties would have otherwise been permitted to commence a Lien Challenge under the terms hereof; provided that such stay shall only go into effect if the Stay Motion is granted and the Government Parties shall be permitted to prosecute the Lien Challenge until the Stay Motion is granted or the Monoline Motion is denied or dismissed.~~

(f) Except as otherwise permitted by this Agreement (including Sections 3(g) and 3(h)), Supporting Holders cannot contest or defend against a Lien Challenge on any grounds. In the event a Lien Challenge is commenced at any time prior to entry of the 9019 Order and such Lien Challenge has not been stayed, the Supporting Holders reserve all rights regarding such Lien Challenge, nothing herein shall constitute an admission by the Supporting Holders as to the Government Parties' authority or standing to prosecute such Lien Challenge or the merits of their claims, and, subject to any right herein of any Government Party to declare a Stipulated Treatment Termination prior to entry of the 9019 Order, the Supporting Holders shall have the right to contest and defend against such Lien Challenge on any grounds, including bringing counterclaims related to such Lien Challenge, which defense or counterclaims shall be withdrawn without prejudice upon entry of the 9019 Order, and, notwithstanding anything herein

27

to the contrary, such contest or defense prior to entry of the 9019 Order by the Supporting Holders shall not be considered to have been a Bondholder Litigation or Bondholder Breach.

(g) If a Lien Challenge is brought by the Government Parties at any time in violation of the terms hereof, the Supporting Holders shall have the right to contest and defend against such Lien Challenge on any grounds, including bringing counterclaims related to such Lien Challenge, and, notwithstanding anything herein to the contrary, such contest or defense by the Supporting Holders shall not be considered a Bondholder Litigation or Bondholder Breach and shall not be grounds for the Government Parties to declare a Stipulated Treatment Termination.

(h) Notwithstanding anything to the contrary herein, upon the commencement of any Lien Challenge, Assured, Syncora, National, and the Ad Hoc Group shall have the right to file briefs and participate in oral argument with respect to such Lien Challenge and to otherwise appeal any legal issues implicated in such Lien Challenge, and such participation by Assured, Syncora, National, and the Ad Hoc Group in any Lien Challenge shall not be considered to have been a Bondholder Litigation or a Bondholder Breach, and shall not be grounds for the Government Parties to declare an Individual Termination or a Stipulated Treatment Termination; provided, however, that none of Assured and, Syncora, National or the Ad Hoc Group shall not have the right to participate in discovery in such Lien Challenge.

(i) The 9019 Order shall provide that no person or entity (including a person or entity acting on behalf of a Government Party) other than the Government Parties shall have standing or otherwise be permitted to bring a Lien Challenge.

(j) Subject to Sections 7(a)(i) - (ii), the Transformation Transaction structure shall be in the sole discretion of the Government Parties.

(k) The Supporting Holders shall support and not interfere with Transformation Transaction to the extent such Transaction is consistent with Sections 7(a)(i) - (ii).

(l) To the extent any consents are required for a Transformation Transaction from the Supporting Holders, such consent shall not be unreasonably withheld or delayed, subject to a good faith determination that such Transformation Transaction will not adversely affect its Stipulated Treatment and is otherwise in compliance with Sections 7(a)(i) - (ii).

(m) The Supporting Holders may take actions reasonably necessary to protect their rights and treatment under this Definitive RSA, including the value of the recovery thereunder, which actions may include, without limitation, opposing any request by the Government Parties for approval of any priming post-petition financing arrangement; provided that such actions shall not include (i) seeking appointment of a receiver, (ii) exercising any rights or remedies under the Trust Agreement or the Puerto Rico Electric Power Authority Act (Act 83-1941), as amended (including actions as a Bondholder on account of the Bonds and including seeking adequate protection), or (iii) preventing or seeking to prevent the Government Parties from providing the Supporting Holders with the Stipulated Treatment; provided that the preceding clause (iii) shall not prevent Supporting Holders from objecting to a Plan, qualifying

28

modification, exchange, or restructuring through a Permitted Objection. Nothing herein shall prevent a Supporting Holder from challenging any action to prime the Bonds subject to this Agreement; provided that Supporting Holders shall not be permitted to seek appointment of a receiver (or seek to lift the stay to seek a receiver) as part of such a challenge. Notwithstanding anything herein to the contrary, any action permitted pursuant to this paragraph shall not constitute a Bondholder Litigation or Bondholder Breach.

(n)   The Supporting Holders shall not take any actions preventing or seeking to prevent the Government Parties from providing the Supporting Holders with the Stipulated Treatment; provided that this subsection (n) shall not prevent Supporting Holders from taking actions expressly permitted under the terms of this Agreement, including objecting to a Plan, qualifying modification, exchange, or restructuring through a Permitted Objection.

(o)   Supporting Holders hereby consent to an amendment to the Trust Agreement (the "**TA Amendment**") to increase certain thresholds for certain Bondholder action or direction under Sections 502, 804 and 808 of the Trust Agreement to no more than a majority in aggregate principal amount of the outstanding Bonds if and to the extent that the Required Parties and the Consulting Parties deem the TA Amendment to be reasonable and appropriate to facilitate implementation of the RSA, provided that the Consulting Parties' consent shall be limited to the form and content of the TA Amendment, and provided further that such consent shall be consistent with this paragraph. Upon the request of the Required Parties, after consultation with the Consulting Parties, Supporting Holders agree to take commercially reasonable efforts to promptly confirm and transmit such consent to any parties necessary to ratify the TA Amendment.

**Section 4**   **Waiver and Support Fees**.

(a)   On the Effective Date and concurrently with the issuance of the Securitization Bonds, the Ad Hoc Group members shall receive a waiver and support fee in the form of Tranche A Bonds, which, as of May 1, 2019, equals 1.9350% of the par amount of PREPA Bonds held as of July 1, 2018 by the Ad Hoc Group (as defined in the Preliminary RSA) members in the aggregate (the "**Ad Hoc Group Waiver and Support Fee**"). The Ad Hoc Group Waiver and Support Fee shall be allocated among the members of the Ad Hoc Group as set forth on Annex B hereto, which Annex B shall be in the sole discretion of the Ad Hoc Group. Once Annex B is finalized, counsel to the Ad Hoc Group shall notify counsel to the Government Parties, and following finalization, Annex B cannot be amended without the consent of every Supporting Holder listed therein.

(b)   On the Effective Date and concurrently with the issuance of the Securitization Bonds, Assured shall receive a waiver and support fee in the form of Tranche A Bonds initially equal to ~~1.8850~~1.8834% of the par amount of PREPA Bonds held or insured by Assured as of May 1, 2019.

(c)   ~~Additional support (and potential~~On the Effective Date and concurrently with the issuance of the Securitization Bonds, (i) Syncora shall receive a waiver~~)~~ and support fee in the form of Tranche A Bonds initially equal to ~~0.8360~~9.3979% of the par amount of ~~total outstanding~~ PREPA Bonds held or insured by Syncora as of May 1, 2019, ~~to be provided to~~

29

~~Supporting Holders, including additional signatories, in a manner to be~~ ~~mutually agreed upon by the Required Parties.~~<ins>and (ii) National shall receive a waiver and support fee in the form of Tranche A Bonds initially equal to 3.8722% of the par amount of PREPA Bonds held or insured by National as of May 1, 2019.</ins>

(d) Any unpaid fee payable at any time to any Ad Hoc Group Member or other Supporting Holder (including Administrative Claims accruing on Waiver and Support Fees) shall not be paid to such Ad Hoc Group Member or other Supporting Holder if there has been an Individual Termination as to such Ad Hoc Group Member or other Supporting Holder, and such unpaid fee shall be reallocated among the Ad Hoc Group (in the case of a termination as to an Ad Hoc Group Member) or the Supporting Holders.

**Section 5** <u>**Mutual Obligations and Acknowledgments**</u>.

(a) Each Party shall work collaboratively and in good faith with the other Parties to finalize, document, and implement the 9019 Settlement and Plan incorporating the terms and conditions described in this Agreement and such other terms, conditions, and documents necessary or appropriate to implement and effectuate the 9019 Settlement and the Plan based on, and consistent with, this Agreement, including without limitation the Definitive Documents and the Additional Definitive Documents. The Definitive Documents shall meet the standards set forth in <u>Section 1(b)(iv)</u> herein. The Additional Definitive Documents shall meet the standards set forth in <u>Section 1(b)(v)</u> herein.

(b) Each Party shall refrain from promoting or supporting (by providing legal or financial advice or assistance), or entering into any agreement, in each case that is materially inconsistent with the Restructuring or this Definitive RSA, that would materially and adversely affect the ability of the Government Parties to comply with their respective obligations under this Definitive RSA, the Definitive Documents, or the Additional Definitive Documents (to the extent relating to treatment of Bonds subject to the RSA), or that would prevent the Government Parties from providing the Securitization Bond Treatment or the Stipulated Treatment, as applicable. Except as set forth herein, nothing in this Agreement shall prevent any Government Party from discharging its statutory duties, including by amending the Fiscal Plan or budget or commencing or defending any litigation against any party (other than the Supporting Holders, solely in their capacity as Bondholders).

(c) The Parties shall use commercially reasonable efforts to cause each of the below milestones to occur by the dates specified therein:

(i) the filing of the Settlement Motion no later than ten (10) business days after execution of this Agreement by the Required Parties;

(ii) the entry of the 9019 Order by June 30, 2019;

(iii) the implementation of the Settlement Charge by July 1, 2019;

(iv) the commencement of the Settlement Payments by ~~August 30, 2019~~<ins>the last day of the month in which the 9019 Order is entered</ins>;

30

(v) the enactment of all legislation necessary to support the Restructuring by the date the Plan is filed;

(vi) the filing of the Plan by March 31, 2020;

(vii) the occurrence of the Effective Date and issuance of the Securitization Bonds or Stipulated Treatment by the Outside Date.

(d) Except as expressly provided herein, this Agreement shall not require any Supporting Holder to expend any cash resources or assume any additional risk or liability (including, for the avoidance of doubt, indemnifying the Trustee) in support of the Plan or this Agreement.

**Section 6** <u>**Agreements of the Supporting Holders**</u>.

(a) <u>Agreement to Vote and other Covenants</u>. Subject to the terms and conditions hereof, each Supporting Holder agrees that it shall:

(i) subject to the receipt by such Supporting Holder of the Disclosure Statement, vote or cause to be voted its Claims with respect to Bonds (and, in relation to Assured, Claims with respect to the Assured Insured Interest Rate Swaps) beneficially owned or controlled (including pursuant to a Bond Insurance Agreement) by it for voting purposes, whenever acquired, to accept a Plan that is consistent with the Definitive RSA by delivering its duly executed and completed ballots accepting the Plan on a timely basis and not object to such Plan other than through a Permitted Objection; provided that, in the case of Insured Bonds, an Uninsured Supporting Holder shall only be obligated to vote the Insured Bonds beneficially owned or controlled by it if the conditions set forth in <u>Section 6(d)</u> are satisfied; provided, further, with respect to votes contemplated by this <u>Section 6(a)(i)</u> or <u>6(b)</u>, in the event of a declaration of a Stipulated Treatment Termination or an Individual Termination (or, in the case of this <u>Section 6(a)(i)</u>, a Securitization Termination) as to any Supporting Holder prior to the Effective Date, then (A) the votes of such Supporting Holder, if the voting deadline has not passed, shall be immediately and automatically revoked and deemed void *ab initio*, and (B) if the voting deadline has passed, nothing shall prevent such Supporting Holder from petitioning the Title III Court (or other applicable court) to allow it to change or withdraw its vote;

(ii) support and take any and all commercially reasonable, necessary, or appropriate actions to facilitate, implement, and consummate the Restructuring, including, without limitation, by working cooperatively with the Government Parties, Assured, the Ad Hoc Group, and the other Supporting Holders to prepare and execute any documentation necessary (including the Definitive Documents and Additional Definitive Documents) and by giving any notices, orders, instructions, or directions that are commercially reasonable, necessary, or appropriate to support, facilitate, implement, or consummate, or otherwise give