## CONFORMED DEFINITIVE RESTRUCTURING SUPPORT AGREEMENT INCORPORATING AMENDMENTS THROUGH SEPTEMBER 9, 2019

### DEFINITIVE RESTRUCTURING SUPPORT AGREEMENT

This Definitive Restructuring Support Agreement (together with the annexes, exhibits and schedules attached hereto, as each may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof, this "**Agreement**" or the "**Definitive RSA**"), dated as of May 3, 2019, is entered into by and among: (i) the Puerto Rico Electric Power Authority ("**PREPA**"), (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**"), (iii) the Financial Oversight and Management Board for Puerto Rico ("**FOMB**"), (iv) the members of the Ad Hoc Group of PREPA Bondholders identified on Annex A hereto, as such members may change from time to time in accordance with Section 6(c)(vii) (collectively, the "**Ad Hoc Group Members**" or the "**Ad Hoc Group**," and each individually, an "**Ad Hoc Group Member**"), (v) any other persons who beneficially own or control Uninsured Bonds and are party to this Agreement or execute and deliver, or have executed and delivered, a Joinder Agreement in the form of Exhibit A hereto (such persons, together with the Ad Hoc Group Members, the "**Uninsured Supporting Holders**"), (vi) Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "**Assured**"), (vii) Syncora Guarantee Inc. ("**Syncora**"), and (viii) National Public Finance Guarantee Corporation ("**National**"). This Agreement refers to the Uninsured Supporting Holders, Assured, National, and Syncora collectively as the "**Supporting Holders**" each individually as a "**Supporting Holder**" and to FOMB, AAFAF, PREPA, and the Supporting Holders collectively as the "**Parties**" and each individually as a "**Party**."

**WHEREAS**, PREPA is the issuer of power revenue bonds and power revenue refunding bonds (together, the "**Bonds**," and persons who beneficially own or control Bonds, "**Bondholders**") issued and outstanding pursuant to that certain Trust Agreement, dated as of January 1, 1974, as amended and supplemented (the "**Trust Agreement**"), between PREPA and U.S. Bank National Association (in its capacity as successor trustee, the "**Trustee**").

**WHEREAS**, in connection with the issuance of certain of the Bonds (such Bonds, the "**Insured Bonds**"), PREPA entered into various insurance agreements with the Trustee corresponding to insurance policies issued by certain monoline insurers (such monoline insurers, the "**Insurers**", such insurance policies to which any of such Insurers is currently a party, and the insurance agreements related thereto, collectively, the "**Bond Insurance Agreements**" and, together with the Trust Agreement, the Bonds, the resolutions approving the Bonds, and any other agreements, supplements, amendments, or other documents executed, adopted, or delivered in connection with the issuance or maintenance of the Bonds, the "**Bond Documents**"). Any Bonds that are not Insured Bonds are referred to herein as "**Uninsured Bonds**."

**WHEREAS**, the total principal amount of Uninsured Bonds that are beneficially owned by each member of the Ad Hoc Group and each other Supporting Holder as of the date hereof is set forth on their respective signature pages hereto.

**WHEREAS**, as of the date hereof, the total principal amount of Bonds that are beneficially

1

owned or that are insured by Assured under the Bond Insurance Agreements is $█████.

**WHEREAS**, as of the date hereof, the total principal amount of Bonds that are beneficially owned or that are insured by Syncora under the Bond Insurance Agreements is $█████.

**WHEREAS**, as of the date hereof, the total principal amount of Bonds that are beneficially owned or that are insured by National under the Bond Insurance Agreements is $█████.

**WHEREAS**, on June 30, 2016, the Puerto Rico Oversight, Management, and Economic Stability Act was signed into law by the President of the United States (P.L. 114-187, "**PROMESA**").

**WHEREAS**, PROMESA created FOMB with certain powers over the finances and restructuring process with respect to the Commonwealth of Puerto Rico and its instrumentalities as provided for in PROMESA, and FOMB has designated PREPA as a Covered Territorial Instrumentality (as defined in PROMESA).

**WHEREAS**, pursuant to Act 2-2017, AAFAF was granted authority over reaching agreements with creditors on any debt issued by any government entity of the Commonwealth of Puerto Rico.

**WHEREAS**, on July 2, 2017, FOMB filed a Title III petition on behalf of PREPA (together with related adversary proceedings, the "**Title III Case**") in the Title III Court.

**WHEREAS**, FOMB is the representative of PREPA in the Title III Case pursuant to PROMESA section 315(b) with the sole authority to file and seek confirmation of a Plan for PREPA.

**WHEREAS**, the Parties have engaged in good faith, arms-length negotiations regarding the principal terms of a proposed restructuring of the Bonds subject to this Agreement to be implemented in a manner to be mutually agreed upon and as set forth in this Agreement.

**WHEREAS**, FOMB and AAFAF consent to PREPA's entering into this Agreement and to PREPA exercising its rights under this Agreement (including its rights to terminate this Agreement and/or its right to consent to any waiver or amendment in accordance with the provisions of this Agreement).

**WHEREAS**, on July 30, 2018, certain of the Parties entered into the Preliminary RSA (as defined below), with the intent of entering into this Agreement that shall replace, supersede and terminate any of the obligations and covenants in the Preliminary RSA.

**WHEREAS**, the Parties desire to express to each other their mutual support and commitment with respect to the Restructuring, including matters discussed in this Agreement.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**Section 1**     **Certain Definitions & Rules of Interpretation**.

(a)    Definitions. Each undefined capitalized term shall have the meaning given to it in the Bankruptcy Code as incorporated into PROMESA if defined therein. As used in this Definitive RSA, the following terms have the following meanings:

(i)    "**9019 Order**" means an order approving the 9019 Settlement.

(ii)    "**9019 Settlement**" has the meaning given to such term in Section 2(b).

(iii)    "**AAFAF**" has the meaning given to such term in the Preamble.

(iv)    "**Acceleration Price**" has the meaning given to such term in the Recovery Plan Term Sheet.

(v)    "**Act 4-2016**" means the Puerto Rico Electric Power Authority Revitalization Act 4-2016, as amended through the date hereof.

(vi)    "**Adequate Protection Payments**" has the meaning given to such term in Section 2(e)(vii).

(vii)    "**Ad Hoc Group**" has the meaning given to such term in the Preamble.

(viii)    "**Ad Hoc Group Member(s)**" has the meaning given to such term in the Preamble.

(ix)    "**Ad Hoc Group Waiver and Support Fee**" has the meaning given to such term in Section 4(a).

(x)    "**Additional Definitive Documents**" or "**Additional Definitive Documentation**" means all documents, including agreements, resolutions, instruments, legislation, rules, regulations, opinions, and orders, (other than Definitive Documents) that are necessary or desirable to implement, or otherwise relate to, this Definitive RSA or the Restructuring, including any Plan (including any supplements thereto), qualifying modification, restructuring, or exchange documents, any disclosure statement (including the Disclosure Statement), any order approving such disclosure statement (including the Disclosure Statement Order) and any information materials required pursuant to PROMESA, the Confirmation Order, filings with PREB concerning the Transition Charge, the PREB Order, and shall include any attachments, exhibits, schedules, or other addendums to such documents, and any documents ancillary to such documents.

(xi)    "**Administrative Claim**" has the meaning given to such term in Section 2(d)(iii).

3

(xii) "**Administrative Claim Commencement**" means (a) May 1, 2019 for (x) Assured Insured Bonds, Syncora Insured Bonds, and National Insured Bonds, (y) Uninsured Bonds that are subject to this Definitive RSA on or prior to 5:00 p.m. (ET) on May 31, 2019 and Uninsured Bonds that are beneficially owned by Syncora, National, and Assured as identified on their respective signature pages hereto, and (z) for purposes of Administrative Claims accruing on Waiver and Support Fees, (b) September 1, 2019 for Uninsured Bonds that become subject to this Agreement after 5:00 p.m. (ET) on May 31, 2019 and prior to 5:00 p.m. (ET) on December 1, 2019, and (c) the first day of the month after the end of any Joinder Period for Uninsured Bonds made subject to this Agreement during such Joinder Period; provided that if the Settlement Motion is denied or reversed on appeal and a Stipulated Treatment Termination results, no Administrative Claim shall have accrued.

(xiii) "**Agreement**" has the meaning given to such term in the Preamble.

(xiv) "**Allowed Claim**" has the meaning given to such term in Section 2(c)(i).

(xv) "**Applicable Bond Claim**" means, in respect of any Bond, the principal amount of such Bond plus interest accrual at the contract rate through May 1, 2019.

(xvi) "**Assured**" has the meaning given to such term in the Preamble.

(xvii) "**Assured Acceleration Price Payment Option**" has the meaning given to such term in the Recovery Plan Term Sheet.

(xviii) "**Assured Bondholder Elections**" has the meaning given to such term in the Recovery Plan Term Sheet.

(xix) "**Assured Election**" has the meaning given to such term in the Recovery Plan Term Sheet.

(xx) "**Assured Insurance Policies**" has the meaning given to such term in the Recovery Plan Term Sheet.

(xxi) "**Assured Insured Bonds**" means the Bonds insured by Assured other than Bonds insured by Assured on a secondary basis (the "**Assured/Syncora Secondary Bonds**") that are primarily insured by Syncora.[1]

(xxii) "**Assured Insured Interest Rate Swaps**" means (i) that certain International Swap and Derivatives Association, Inc. Master Agreement, including its related Schedule and Credit Support Annex, each dated as of April 18, 2007, by and between PREPA and JPMorgan Chase Bank, N.A., and a transaction entered

---

[1] With respect to the Assured/Syncora Secondary Bonds, such Bonds shall be treated as Syncora Insured Bonds.

4

into pursuant to such documents and reflected in that certain confirmation dated April 27, 2007, insured by Assured pursuant to that certain Financial Guaranty Insurance Policy, #218491A-SWP, issued on May 3, 2007, and secured by PREPA's "Subordinate Obligations Fund" established and governed by the Trust Agreement; and (ii) that certain International Swap and Derivatives Association, Inc. Master Agreement, including its related Schedule and Credit Support Annex, each dated as of April 18, 2007, by and between PREPA and UBS AG, and a transaction entered into pursuant to such documents and reflected in that certain confirmation dated as of April 18, 2007 and insured by Assured pursuant to that certain Financial Guaranty Insurance Policy, No. 208491B-SWP, dated as of May 3, 2007, and secured by PREPA's "Subordinate Obligations Fund" established and governed by the Trust Agreement.

(xxiii) "**Assured Securitization Bonds**" means Securitization Bonds allocable to holders of Assured Insured Bonds, Securitization Bonds allocable to Assured as a beneficial owner of Uninsured Bonds identified on Assured's signature page hereto, or Securitization Bonds that Assured is otherwise entitled to receive, in each case in accordance with the terms of this Definitive RSA.

(xxiv) "**Assured Treatment**" means the treatments set forth in the Recovery Plan Term Sheet with respect to Assured on the account of the Assured Insured Bonds, the Uninsured Bonds identified on Assured's signature page hereto that are beneficially owned by Assured and the Assured Insured Interest Rate Swaps.

(xxv) "**Bankruptcy Code**" means title 11 of the United States Code, as amended, §101, *et seq*.

(xxvi) "**Bankruptcy Rule(s)**" means the Federal Rules of Bankruptcy Procedure.

(xxvii) "**Bond(s)**" has the meaning given to such term in the Recitals.

(xxviii) "**Bond Claim**" means the Claim(s) in respect of any Bond.

(xxix) "**Bond Counsel**" means U.S. nationally recognized bond counsel retained by SPV.

(xxx) "**Bond Documents**" has the meaning given to such term in the Recitals.

(xxxi) "**Bond Insurance Agreements**" has the meaning given to such term in the Recitals.

(xxxii) "**Bond Qualified Transferee**" has the meaning given to such term in Section 6(c)(i).

(xxxiii) "**Bondholder(s)**" has the meaning given to such term in the Recitals.

(xxxiv) "**Bondholder Breach**" shall mean, whether prior to or after a Securitization Termination (a) any Supporting Holder commences or joins a Bondholder Litigation; (b) a Supporting Holder takes any action that has a material adverse effect on any Transformation Transaction; or (c) a breach by a Supporting Holder of any of the Bondholder Breach Covenants, or any of the representations set forth in Section 11 are untrue as to such Supporting Holder in any material respect, which in the case of each of clauses (a)-(c), remains uncured for a period of twenty (20) business days after the receipt by such Supporting Holder of notice in accordance with Section 27 of such breach from any Government Party.

(xxxv) "**Bondholder Breach Covenants**" means the covenants of the Supporting Holders set forth in Sections 2(a), 2(f)(ii), 3(a), 3(b), 3(c), 3(l), 3(n), 5(a), 5(b), 6(a)(i), 6(b), 6(c)(i) (subject to the provisions of Section 6(c)(ii)), and 6(d) of this Agreement.

(xxxvi) "**Bondholder Litigation**" means (A) any litigation, action, or claim (including, without limitation, the Monoline Motion) by the Trustee, a Bondholder or insurer of Bonds involving or directly relating to PREPA or the Transformation Transaction, including appeals related thereto, in any court of competent jurisdiction including, but not limited to, the Title III Court, (a) seeking relief from the automatic stay for any purpose, including to allow Bondholders to seek appointment of a receiver or to exercise any rights or remedies under the Trust Agreement or the Puerto Rico Electric Power Authority Act (Act 83-1941), as amended (including actions as a Bondholder on account of the Bonds and including seeking adequate protection (other than the Adequate Protection Payments if required under this Definitive RSA or the 9019 Order)), or under any other law, rule, or regulation relating to PREPA, the Transformation Transaction or the Bonds, (b) pursuing such rights or remedies with or without such stay relief, (c) seeking adequate protection (other than the Adequate Protection Payments if required under this Definitive RSA or the 9019 Order) or other payments under the Trust Agreement (including under section 922(d) of the Bankruptcy Code (if applicable)), or (d) directing the Trustee to do any of the foregoing, and (B) the Supporting Holders providing legal or financial advice or assistance to any other party pursuing any Bondholder Litigation. "Bondholder Litigation" shall not include actions taken by Supporting Holders in capacities other than their capacities as Bondholders or insurers of Bonds, and shall also not include participation in any litigation related to the Appointments Clause; provided that no Supporting Holder shall oppose the Settlement Motion in any capacity, and doing so shall constitute Bondholder Litigation.

(xxxvii) "**Chosen Court**" has the meaning given to such term in Section 15.

(xxxviii) "**Claim**" has the meaning given to such term in section 101(5) of the Bankruptcy Code.

(xxxix) "**Confirmation Order**" means a court order pursuant to Title III of PROMESA approving the Plan as satisfying the requirements of Title III of PROMESA, any proposed version of which shall implement the Definitive RSA and provide necessary findings and legal conclusions to support the Transformation Transaction.

(xl) "**Consulting Parties**" shall mean National and Syncora.

(xli) "**CUSIP**" means a Committee on Uniform Securities Identification Procedures number.

(xlii) "**Demand Protections**" means the protections set forth on Schedule I-A to the Securitization Term Sheet.

(xliii) "**Definitive Documents**" or "**Definitive Documentation**" means the Settlement Motion, the 9019 Order, the Tolling Agreement, the Securitization Documents, IRS Private Letter Ruling Request (if any), IRS Private Letter Ruling (if any), Amended Act (as defined in the Securitization Term Sheet), and any agreements, instruments, schedules, resolutions, exhibits, supplements, annexes, appendices, opinions, legislation, rules, regulations, and orders related to the foregoing.

(xliv) "**Delayed Implementation Date**" has the meaning given to such term in Section 2(e)(i).

(xlv) "**Disclosure Statement**" means the disclosure statement in respect of the Plan, approved by an order of the Title III Court as containing adequate information under section 1125(b) of the Bankruptcy Code, and disseminated to creditors of PREPA in connection with the solicitation of votes on the Plan.

(xlvi) "**Disclosure Statement Order**" means the order to be entered by the Title III Court authorizing the use of the Disclosure Statement for soliciting votes on the Plan and establishing solicitation procedures.

(xlvii) "**Dismissal Motion**" has the meaning given to such term in Section 3(a).

(xlviii) "**DSRF**" has the meaning given to such term in the Recovery Plan Term Sheet.

(xlix) "**Effective Date**" means the date upon which all the conditions to the effectiveness of the Plan have been satisfied or waived in accordance with its terms, which conditions precedent shall include the provision of the Securitization Bond Treatment or Stipulated Treatment, as applicable, subject to the Definitive Documents and the Additional Definitive Documents.

(l) "**EMMA**" means the Municipal Securities Rulemaking Board's Electronic Municipal Market Access system at www.emma.msrb.org.

(li) "**Exchange Ratio**" has the meaning given to such term in the Recovery Plan Term Sheet.

(lii) "**Financial Indebtedness**" means any Bonds or any funded debt owed to the fuel line lenders.

(liii) "**Fiscal Plan**" means the certified fiscal plan (as defined in PROMESA) for PREPA, as may be amended and certified in accordance with PROMESA.

(liv) "**FOMB**" has the meaning given to such term in the Preamble.

(lv) "**Force Majeure Event**" has the meaning given to such term in Section 8.

(lvi) "**Government Parties**" means collectively AAFAF, FOMB, and PREPA, and each of AAFAF, FOMB, and PREPA is referred to individually as a "**Government Party**."

(lvii) "**Increased Settlement Charge**" has the meaning given to such term in Section 2(e)(i).

(lviii) "**Increased Settlement Payment**" has the meaning given to such term in Section 2(e)(ii).

(lix) "**Individual Termination**" has the meaning given to such term in Section 9(d)(v).

(lx) "**Insurance Conditions**" has the meaning given to such term in the Recovery Plan Term Sheet.

(lxi) "**Insured Bonds**" has the meaning given to such term in the Recitals.

(lxii) "**Insurers**" has the meaning given to such term in the Recitals.

(lxiii) "**IRS**" means the United States Internal Revenue Service.

(lxiv) "**IRS Private Letter Ruling**" means all private letter rulings or closing agreements, if any, that Bond Counsel requires in order to deliver an unqualified opinion that interest on all or a portion of the Securitization Bonds is excludable from gross income for federal income tax purposes and exempt from all state and Puerto Rico taxes.

(lxv) "**IRS Private Letter Ruling Request**" means any documents submitted to the IRS requesting or supporting an IRS Private Letter Ruling and any related material submissions, if any, including any written pre-submission communications.

(lxvi) "**Joinder Agreement**" means a joinder agreement in the form of Exhibit A hereto.

(lxvii) "**Joinder Period**" has the meaning given to such term in Section 2(c)(iii).

(lxviii) "**Lien Challenge**" means any action that a Government Party (including, without limitation, as to FOMB, any future or successor to FOMB and any members thereof) may bring to challenge the liens and claims (including the validity, priority, nature or extent of any liens or security interests) related to the Bonds.

(lxix) "**Market Fixed Rate**" has the meaning given to such term in the Recovery Plan Term Sheet.

(lxx) "**Monoline Motion**" means the Motion of National, Assured, and Syncora for Relief from the Automatic Stay to Allow Movants to Enforce their Statutory Right to Have a Receiver Appointed [Case No. 17-04780, Dkt. No. 975].

(lxxi) "**National**" has the meaning given to such term in the Preamble.

(lxxii) "**National Acceleration Price Payment Option**" has the meaning given to such term in the Recovery Plan Term Sheet.

(lxxiii) "**National Bondholder Elections**" has the meaning given to such term in the Recovery Plan Term Sheet.

(lxxiv) "**National Election**" has the meaning given to such term in the Recovery Plan Term Sheet.

(lxxv) "**National Insurance Policies**" has the meaning given to such terms in the Recovery Plan Term Sheet.

(lxxvi) "**National Insured Bonds**" means the Bonds insured by National.

(lxxvii) "**National Securitization Bonds**" means Securitization Bonds allocable to holders of National Insured Bonds, Securitization Bonds allocable to National as a beneficial owner of Uninsured Bonds identified on National's signature page hereto, or Securitization Bonds that National is otherwise entitled to receive, in each case in accordance with the terms of the Agreement.

(lxxviii) "**National Treatment**" means the treatments set forth in the Recovery Plan Term Sheet with respect to National on the account of the National

Insured Bonds and the Uninsured Bonds identified on National's signature page hereto that are beneficially owned by National.

(lxxix) "**Outside Date**" means June 30, 2020.

(lxxx) "**Parties**" has the meaning given to such term in the Preamble.

(lxxxi) "**Permitted Objection**" means an objection by a Supporting Holder to a Plan, qualifying modification, exchange, or restructuring of Bonds subject to this Agreement (i) solely on the grounds that it does not comply with this Agreement or does not provide the Stipulated Treatment, as applicable, or (ii) in the case of an Uninsured Supporting Holder that holds Assured Insured Bonds, Syncora Insured Bonds, or National Insured Bonds, a limited objection to its treatment solely on account of its Assured Insured Bonds, Syncora Insured Bonds, or National Insured Bonds, as applicable, with respect to the treatment of the Bond Insurance Agreements, including the terms, conditions, and structure of any custodial trust or escrow arrangement relating to such Bond Insurance Agreements, if such treatment violates the rights of the beneficial holders of the Assured Insured Bonds, Syncora Insured Bonds, or National Insured Bonds under the Bond Insurance Agreements and to the extent it would have been able to file such objection if it were not a Supporting Holder. Notwithstanding anything herein to the contrary, a Permitted Objection shall not be considered a Bondholder Litigation or a Bondholder Breach.

(lxxxii) "**Permitted Puerto Rico Objection**" means an objection by AAFAF to a Plan proposed by FOMB, including an objection to the treatment or classification of any Claims under the Plan, other than an objection that relates to the classification or treatment of the Bond Claims or Bonds.

(lxxxiii) "**PIK Payments**" has the meaning given to such term in the Recovery Plan Term Sheet.

(lxxxiv) "**Plan**" means the plan of adjustment (including any supplements thereto) for PREPA pursuant to Title III of PROMESA.

(lxxxv) "**PREB**" means the Puerto Rico Energy Bureau.

(lxxxvi) "**PREB Order**" means any order(s) from PREB concerning this Agreement.

(lxxxvii) "**Preliminary RSA**" means that certain Preliminary Restructuring Support Agreement (including the exhibits and annex thereto), dated as of July 30, 2018, by and among PREPA, AAFAF, FOMB and the Bondholders who are or were parties to such agreement, as extended from time to time.

(lxxxviii) "**PREPA**" has the meaning given to such term in the Preamble

10

(lxxxix) "**PROMESA**" has the meaning given to such term in the Recitals.

(xc) "**Qualified Marketmaker**" means an entity that (x) holds itself out to the market as standing ready in the ordinary course of its business to purchase from customers and sell to customers debt securities such as the Bonds or enter with customers into long and short positions in debt securities such as the Bonds, in its capacity as a dealer or market maker in such Bonds; (y) is in fact regularly in the business of making a market in debt securities; and (z) if transacting with respect to Bonds, is registered with the SEC and Financial Institutions Regulatory Authority..

(xci) "**Recovery Plan Term Sheet**" means the term sheet attached Exhibit C hereto.

(xcii) "**Required Holders**" means the Required Uninsured Holders and Assured.

(xciii) "**Required Parties**" means at any time (i) each Government Party that is party to this Definitive RSA at such time, (ii) the Required Uninsured Holders, and (iii) Assured.

(xciv) "**Required Threshold**" means (A) no later than two (2) business days prior to hearing on the Settlement Motion (i) Uninsured Supporting Holders holding a minimum of 60% in aggregate principal amount of the Uninsured Bonds or (ii) Supporting Holders holding or insuring a minimum of 60% in aggregate principal amount of all Bonds and (B) no later than September 1, 2019 (and continuing thereafter) (i) Uninsured Supporting Holders holding a minimum of 67% in aggregate principal amount of the outstanding Uninsured Bonds and (ii) Supporting Holders holding or insuring a minimum of 67% in aggregate principal amount of all outstanding Bonds.

(xcv) "**Required Uninsured Holders**" means, as of any date of determination, Ad Hoc Group Members that beneficially own or control at least a majority in principal amount of the aggregate amount of the Uninsured Bonds beneficially owned or controlled by all Ad Hoc Group Members as of such date.

(xcvi) "**Restructuring**" means the proposed restructuring of the Bonds subject to this Agreement as provided in this Agreement.

(xcvii) "**RSA Execution Date**" means the date on which counterpart signature pages to this Definitive RSA shall have been executed and delivered by PREPA, AAFAF, FOMB, Assured and the members of the Ad Hoc Group.

(xcviii) "**RSA Marketmaker**" means a Qualified Marketmaker acting in its capacity as a Qualified Marketmaker that is party to an RSA Marketmaker Joinder approved by the Required Uninsured Holders and each Government Party.

(xcix) "**RSA Marketmaker Joinder**" means a joinder agreement in the form attached as Exhibit B hereto, with such modifications as are acceptable to the Required Uninsured Holders and each Government Party. The Ad Hoc Group and Government Parties agree to work together in good faith to agree on reasonable modifications to such form of joinder agreement to address any concerns that may be raised by a Qualified Marketmaker.

(c) "**RSA Marketmaker List**" means a list of RSA Marketmakers, an updated version of which shall be available at a dedicated URL and also posted on EMMA. The RSA Marketmaker List shall be promptly updated (A) to add any new RSA Marketmaker that signs an RSA Marketmaker Joinder and (B) to remove any RSA Marketmaker that (x) fails to materially comply with the requirements of the RSA Marketmaker Joinder or (y) is no longer regularly in the business of making a market in Uninsured Bonds subject to this RSA. The dedicated URL for the RSA Marketmakers List shall be posted on EMMA. The initial RSA Marketmaker List shall be delivered to the Supporting Holders party hereto at the time of such delivery and shall include the date on which the RSA Marketmaker Period starts.

(ci) "**RSA Marketmaker Period**" means the period after the date set forth on the initial RSA Marketmaker List delivered to the Supporting Holders (which shall not be earlier than the 15th day following the RSA Execution Date).

(cii) "**SEC**" means the United States Securities and Exchange Commission.

(ciii) "**Securitization Bonds**" or "**Securitization Instruments**" means the Tranche A Bonds and Tranche B Bonds.

(civ) "**Securitization Bond Treatment**" means the issuance of Securitization Bonds on the terms and conditions set forth in this Definitive RSA. The Securitization Bonds shall be issued on the Effective Date of the Plan and shall not be issued pursuant to a Title VI qualifying modification or similar structure without the consent of the Government Parties and the Required Holders, after consultation with the Consulting Parties.

(cv) "**Securitization Documents**" means all documents, resolutions, certificates, and opinions, relating to the Securitization Instruments or Transition Charge, including, without limitation, any resolutions, trust agreements, insurance or surety documents, servicing agreements, depository agreements, the Securitization Instruments, governing documents of SPV, and any documents entered into or adopted by SPV or PREPA affecting the Securitization Instruments or the holders thereof.

(cvi) "**Securitization Protections Term Sheet**" means Schedule I-B to the Securitization Term Sheet.

(cvii) "**Securitization Termination**" has the meaning given to such term in Section 9(b).

12

(cviii) "**Securitization Term Sheet**" means the Term Sheet attached as Annex A to the Recovery Plan Term Sheet.

(cix) "**Settlement Charge**" means a charge of 1 c/kWh to be implemented by PREPA and included in its customer bills by July 1, 2019.

(cx) "**Settlement Motion**" has the meaning given to such term in Section 2(a).

(cxi) "**Settlement Payments**" means commencing in accordance with Section 5(c)(iv) and continuing through the earliest of (A) a Stipulated Treatment Termination, (B) a termination pursuant to Section 9(d)(vi) as to PREPA or AAFAF, (C) the Effective Date, or (D) dismissal of PREPA's Title III Case, monthly settlement payments to be made by PREPA equal to (i) the number of kilowatt hours PREPA billed during the previous month, multiplied by (ii) 92% (representing the projected collection percentage and certain statutory exceptions), multiplied by (iii) the Settlement Charge.

(cxii) "**Solicitation**" means the solicitation of votes for the Plan pursuant to, and in compliance with, PROMESA or any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

(cxiii) "**SPV**" or "**Issuer**" means a bankruptcy remote special purpose vehicle (which may be the Puerto Rico Electric Power Authority Revitalization Corporation, or another entity as agreed by the Required Parties after consultation with the Consulting Parties, established by the Government of Puerto Rico, and used for the Restructuring).

(cxiv) "**Stay Motion**" has the meaning given such term in Section 3(b).

(cxv) "**Stipulated Treatment**" has the meaning given such term in Section 2(c)(ii).

(cxvi) "**Stipulated Treatment Termination**" has the meaning given such term in Section 9(c)(i).

(cxvii) "**Super Majority Holders**" means the Super Majority Uninsured Holders and Assured.

(cxviii) "**Super Majority Uninsured Holders**" means, as of the date of determination, Ad Hoc Group Members that beneficially own or control at least two-thirds in principal amount of the aggregate amount of the Uninsured Bonds beneficially owned or controlled by all the Ad Hoc Group Members as of such date.

(cxix) "**Supporting Holder(s)**" has the meaning given to such term in the Preamble.

(cxx) "**Surviving Administrative Claim**" has the meaning given to such term in Section 2(c)(iv).

(cxxi) "**Swap MTM Amount**" has the meaning given to such term in the Recovery Plan Term Sheet.

(cxxii) "**Syncora**" has the meaning given to such term in the Preamble.

(cxxiii) "**Syncora Acceleration Price Payment Option**" has the meaning given to such term in the Recovery Plan Term Sheet.

(cxxiv) "**Syncora Bondholder Elections**" has the meaning given to such term in the Recovery Plan Term Sheet.

(cxxv) "**Syncora Election**" has the meaning given to such term in the Recovery Plan Term Sheet.

(cxxvi) "**Syncora Insurance Policies**" has the meaning given to such terms in the Recovery Plan Term Sheet.

(cxxvii) "**Syncora Insured Bonds**" mean the Bonds insured by Syncora.

(cxxviii) "**Syncora Securitization Bonds**" means Securitization Bonds allocable to holders of Syncora Insured Bonds, Securitization Bonds allocable to Syncora as a beneficial owner of Uninsured Bonds identified on Syncora's signature page hereto, or Securitization Bonds that Syncora is otherwise entitled to receive, in each case in accordance with the terms of the Agreement.

(cxxix) "**Syncora Treatment**" means the treatments set forth in the Recovery Plan Term Sheet with respect to Syncora on the account of the Syncora Insured Bonds and the Uninsured Bonds identified on Syncora's signature page hereto that are beneficially owned by Syncora.

(cxxx) "**TC Cap**" has the meaning given to such term in the Recovery Plan Term Sheet.

(cxxxi) "**Title III Case**" has the meaning given to such term in the Recitals.

(cxxxii) "**Title III Court**" means the United States District Court for the District of Puerto Rico in its capacity as the court presiding over the Title III Case.

(cxxxiii) "**Tolling Agreement**" has the meaning given to such term in Section 3(c).

(cxxxiv) "**Tracking Mechanics Term Sheet**" has the meaning given to such term in Section 2(f)(i).

14

(cxxxv) "**Tranche A Bonds**" has the meaning given to such term in the Recovery Plan Term Sheet.

(cxxxvi) "**Tranche B Bonds**" has the meaning given to such term in the Recovery Plan Term Sheet.

(cxxxvii) "**Transfer**" has the meaning given to such term in Section 6(c)(i).

(cxxxviii) "**Transformation Transaction**" means any and all transactions supported by the Government Parties whereby PREPA or the Government of Puerto Rico establishes one or more sales, leases, public-private partnerships, management contracts, concessions, or similar arrangements or transactions related to any of PREPA's functions, assets, services, or facilities, including without limitation, any "PREPA Transaction" as defined in the *Puerto Rico Electric Power System Transformation Act*, Act 120-2018 (approved June 21, 2018).

(cxxxix) "**Transition Charge**" has the meaning given to such term in the Recovery Plan Term Sheet.

(cxl) "**Transition Charge Termination**" has the meaning given to such term in the Recovery Plan Term Sheet.

(cxli) "**Triggering Event**" means (i) a Stipulated Treatment Termination, (ii) the continuation of the Monoline Motion or commencement of any other Bondholder Litigation, provided, however, that if any Bondholder Litigation is commenced by any party, the Parties shall work in good faith to have such Bondholder Litigation dismissed, stayed, or withdrawn and a Triggering Event shall not occur as a result of such Bondholder Litigation until three (3) business days after any Government Party provides notice in accordance with Section 27 to the Required Holders, the Consulting Parties, and the Trustee that it has determined in good faith in its sole discretion that commencing a Lien Challenge is necessary to protect the rights of any Government Party, or (iii) when the Government Parties determine in good faith that pursuit of a Lien Challenge is necessary as part of the plan formulation process (*e.g.*, in response to an actual or anticipated disclosure statement or plan objection) to provide the Supporting Holders the Securitization Bond Treatment or to provide the Stipulated Treatment after a Securitization Termination.

(cxlii) "**Trust Agreement**" has the meaning given to such term in the Recitals.

(cxliii) "**Trustee**" has the meaning given to such term in the Recitals.

(cxliv) "**Uninsured Bond(s)**" has the meaning given to such term in the Recitals.

(cxlv) "**Uninsured Supporting Holders**" has the meaning give to such term in the Preamble.

(cxlvi) "**Waiver and Support Fees**" means the fees set forth in Sections 4(a)-(c).

(cxlvii) "**Withdrawal Event**" has the meaning given to such term in Section 9(a).

(b)     Rules of Interpretation.

(i)     Except as expressly set forth herein, nothing contained herein shall be construed to alter, waive or otherwise affect the respective powers, rights, or responsibilities of FOMB, AAFAF, or PREPA, whether such powers, rights, or responsibilities arise under PROMESA or other applicable law.

(ii)     Each Supporting Holder is a party hereto solely in its capacity as the beneficial owner or insurer of Bonds issued by PREPA; provided that no Supporting Holder shall oppose the Settlement Motion in any capacity.

(iii)     When a reference is made in this Definitive RSA to a Section, Exhibit, or Schedule, such reference shall be to a Section, Exhibit, or Schedule, respectively, of or attached to this Definitive RSA unless otherwise indicated. Each of the exhibits, annexes and schedules to this Definitive RSA is expressly incorporated herein and made a part of this Definitive RSA, and all references to this Agreement or this Definitive RSA (including by use of words such as "herein") shall include such exhibits, annexes and schedules. Unless the context of this Definitive RSA otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this Definitive RSA, (c) the words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," (d) the word "or" shall not be exclusive and shall be read to mean "and/or," (e) the word "person" shall be understood to refer to any individual, corporation, limited liability company, estate, partnership, joint venture, association, joint stock company, trust (including any beneficiary thereof), unincorporated organization, or government, or agency, instrumentality, or political subdivision thereof, (f) "business day" shall refer to any day other than a Saturday, Sunday or any other day on which banks located in New York, New York or San Juan, Puerto Rico are closed for business as a result of a federal, state, or local holiday, and (g) "writing," "written," and comparable terms refer to printing, typing, and other means of reproducing words (including electronic media) in a visible form, and any requirement that any notice, consent, or other information shall be provided in "writing" shall include email.

(iv)     All Definitive Documents must be consistent with this Agreement and (other than in the case of the IRS Private Letter Ruling Request, which is subject to the consultation rights set forth in Section 7(b)(ii)) in form and substance

16