(b) Each Party shall refrain from promoting or supporting (by providing legal or financial advice or assistance), or entering into any agreement, in each case that is materially inconsistent with the Restructuring or this Definitive RSA, that would materially and adversely affect the ability of the Government Parties to comply with their respective obligations under this Definitive RSA, the Definitive Documents, or the Additional Definitive Documents (to the extent relating to treatment of Bonds subject to the RSA), or that would prevent the Government Parties from providing the Securitization Bond Treatment or the Stipulated Treatment, as applicable. Except as set forth herein, nothing in this Agreement shall prevent any Government Party from discharging its statutory duties, including by amending the Fiscal Plan or budget or commencing or defending any litigation against any party (other than the Supporting Holders, solely in their capacity as Bondholders).

(c) The Parties shall use commercially reasonable efforts to cause each of the below milestones to occur by the dates specified therein:

(i) the filing of the Settlement Motion no later than ten (10) business days after execution of this Agreement by the Required Parties;

(ii) the entry of the 9019 Order by June 30, 2019;

(iii) the implementation of the Settlement Charge by July 1, 2019;

(iv) the commencement of the Settlement Payments by the last day of the month in which the 9019 Order is entered;

(v) the enactment of all legislation necessary to support the Restructuring by the date the Plan is filed;

(vi) the filing of the Plan by March 31, 2020;

(vii) the occurrence of the Effective Date and issuance of the Securitization Bonds or Stipulated Treatment by the Outside Date.

(d) Except as expressly provided herein, this Agreement shall not require any Supporting Holder to expend any cash resources or assume any additional risk or liability (including, for the avoidance of doubt, indemnifying the Trustee) in support of the Plan or this Agreement.

**Section 6**     **Agreements of the Supporting Holders**.

(a) <u>Agreement to Vote and other Covenants</u>. Subject to the terms and conditions hereof, each Supporting Holder agrees that it shall:

(i) subject to the receipt by such Supporting Holder of the Disclosure Statement, vote or cause to be voted its Claims with respect to Bonds (and, in relation to Assured, Claims with respect to the Assured Insured Interest Rate Swaps) beneficially owned or controlled (including pursuant to a Bond Insurance Agreement) by it for voting purposes, whenever acquired, to accept a Plan that is

29

consistent with the Definitive RSA by delivering its duly executed and completed ballots accepting the Plan on a timely basis and not object to such Plan other than through a Permitted Objection; provided that, in the case of Insured Bonds, an Uninsured Supporting Holder shall only be obligated to vote the Insured Bonds beneficially owned or controlled by it if the conditions set forth in Section 6(d) are satisfied; provided, further, with respect to votes contemplated by this Section 6(a)(i) or 6(b), in the event of a declaration of a Stipulated Treatment Termination or an Individual Termination (or, in the case of this Section 6(a)(i), a Securitization Termination) as to any Supporting Holder prior to the Effective Date, then (A) the votes of such Supporting Holder, if the voting deadline has not passed, shall be immediately and automatically revoked and deemed void *ab initio*, and (B) if the voting deadline has passed, nothing shall prevent such Supporting Holder from petitioning the Title III Court (or other applicable court) to allow it to change or withdraw its vote;

(ii) support and take any and all commercially reasonable, necessary, or appropriate actions to facilitate, implement, and consummate the Restructuring, including, without limitation, by working cooperatively with the Government Parties, Assured, the Ad Hoc Group, and the other Supporting Holders to prepare and execute any documentation necessary (including the Definitive Documents and Additional Definitive Documents) and by giving any notices, orders, instructions, or directions that are commercially reasonable, necessary, or appropriate to support, facilitate, implement, or consummate, or otherwise give effect to, the Restructuring; provided, however, that nothing in this Agreement shall require any Party to indemnify any person; and

(iii) at the reasonable request of any of the Government Parties, the Supporting Holders shall support the confirmation of the Plan, including by supporting the Government Parties' efforts to defend against objections to confirmation and other Plan-related litigation; provided that nothing herein shall require a Supporting Holder to file pleadings adverse to (A) itself in any capacity or (B) its rights under Bond Insurance Agreements; and provided further that, so long as the Ad Hoc Group, Syncora, National, and Assured are in compliance with this covenant, only Supporting Holders that are represented by counsel that has appeared in the Title III Case shall be required to file a pleading pursuant to this covenant but all Supporting Holders will be required to otherwise support confirmation of the Plan.

(b) <u>Agreement to Vote for Stipulated Treatment</u>. If a Supporting Holder is entitled to the Stipulated Treatment and such Stipulated Treatment is offered in any Plan, qualifying modification, exchange, or restructuring of the Bonds after a Securitization Termination, then, subject to the receipt by such Supporting Holder of appropriate disclosure documents, such Supporting Holder shall vote or cause to be voted, or provide consent on behalf of, its Bonds or Claims with respect to Bonds (and, in relation to Assured, Claims with respect to the Assured Insured Interest Rate Swaps) beneficially owned or controlled (including pursuant to a Bond Insurance Agreement) by it for voting purposes to accept or consent to such Plan, qualifying modification, exchange, or restructuring by delivering its duly executed and completed

ballots or consents to such Plan, qualifying modification, exchange, or restructuring on a timely basis and not object to such Plan, qualifying modification, exchange, or restructuring other than through a Permitted Objection; provided that such vote is subject to revocation on the terms set forth in Section 6(a)(i).

(c) Transfers.

(i) No Supporting Holder shall sell, assign, transfer or otherwise pledge or dispose of ("**Transfer**") any Uninsured Bonds beneficially owned by such Supporting Holder, or any voting, consent, or direction rights related to such Uninsured Bonds, provided, however, that such Transfer may be made (A) if the transferee is a Supporting Holder at the time of the Transfer or (B) if the transferee is not a Supporting Holder at the time of the Transfer, such transferee delivers to counsel to the Ad Hoc Group, PREPA, AAFAF, and FOMB, at or prior to the consummation of the Transfer, the Joinder Agreement attached hereto as Exhibit A, pursuant to which such transferee shall assume all rights and obligations (other than the right to the Waiver and Support Fees) of such Supporting Holder transferor hereunder with respect to the transferred Bonds (such transferee (a "**Bond Qualified Transferee**"), if any, shall also be a Supporting Holder hereunder). Subject to Section 6(c)(iv), any additional Bonds held by such Bond Qualified Transferee at the time it joins this Definitive RSA shall become subject to this Definitive RSA. To the extent that a Transfer violates the provisions of this Section 6, the Transfer shall be void *ab initio* and the applicable Uninsured Bonds and the Supporting Holder attempting the Transfer of the Uninsured Bonds shall continue to remain subject to the terms of this Agreement and count towards the Required Threshold if the Supporting Holder can demonstrate to the satisfaction of the Government Parties in their sole discretion that they retain control of such Bond.

(ii) Qualified Marketmaker. Notwithstanding anything contained in this Agreement to the contrary,

(1) solely prior to the RSA Marketmaker Period or any other time during which there are no RSA Marketmakers listed on the RSA Marketmakers List, a Supporting Holder may Transfer any right, title or interest in the Uninsured Bonds to a Qualified Marketmaker, acting in its capacity as a Qualified Marketmaker, without the requirement that such Qualified Marketmaker be or become a Supporting Holder; provided that such Qualified Marketmaker subsequently Transfers such right, title or interest in the Uninsured Bonds to a Supporting Holder or a Bond Qualified Transferee within the date that is thirty (30) business days after such Qualified Marketmaker's acquisition of such right, title or interest, and in any event no later than ten (10) business days prior to the voting deadline on the Plan, qualifying modification, exchange, or other restructuring of the Uninsured Bonds pursuant to which the Securitization Bond Treatment or the Stipulated Treatment is being offered (the "**Marketmaker Holding Period**"). For the avoidance of doubt, upon expiration of the Marketmaker Holding Period, if the Qualified Marketmaker has not Transferred such

right, title or interest in the Uninsured Bonds to a Supporting Holder or a Bond Qualified Transferee, the Qualified Marketmaker shall be required to sign the Joinder Agreement attached hereto as Exhibit A, which Joinder Agreement shall be binding with respect to any Uninsured Bonds subject to this Definitive RSA that are held by such Qualified Marketmaker in its capacity as a Qualified Marketmarker. Whether the Qualified Marketmaker signs a Joinder Agreement or not, upon expiration of the Marketmaker Holding Period, the Qualified Marketmaker (by accepting or otherwise participating in the Transfer of Uninsured Bonds subject to this Definitive RSA) will be deemed to have agreed to comply with the voting obligations set forth in Sections 6(a) and (b) hereto; provided, however, that such obligations shall be replaced by the obligations in the RSA Marketmaker Joinder if such Qualified Marketmaker subsequently becomes an RSA Marketmaker. If a Qualified Marketmaker does not comply with the foregoing procedures, such failure by such Qualified Marketmaker to comply shall not be considered a Bondholder Breach by such Transferring Supporting Holder unless (i) the Supporting Holder transferring such Uninsured Bonds does not inform the Qualified Marketmaker that such Uninsured Bonds are subject to the RSA and (ii) the Qualified Marketmaker fails to vote the subject Uninsured Bonds as required under this Agreement, in which case such failure shall be deemed to be a Bondholder Breach by the Transferring Supporting Holder;

(2) during the RSA Marketmaker Period, so long as at least one RSA Marketmaker appears on the RSA Marketmakers List, a Supporting Holder may transfer any right, title or interest in the Uninsured Bonds to either (x) another Supporting Holder or other Bond Qualified Transferee in accordance with Section 6(c)(i) or (y) an RSA Marketmaker (and not any other Qualified Marketmaker), acting in its capacity as a Qualified Marketmaker, without the requirement that such RSA Marketmaker be or become a Supporting Holder; provided that such RSA Marketmaker pursuant to clause (y) above shall be obligated to comply with its obligations under its RSA Marketmaker Joinder; provided further that failure of such RSA Marketmaker to comply with its obligations shall not be considered a Bondholder Breach by a Transferring Supporting Holder unless (i) the Supporting Holder transferring such Uninsured Bonds does not inform the RSA Marketmaker that such Uninsured Bonds are subject to the RSA and (ii) the RSA Marketmaker fails to vote the subject Uninsured Bonds as required under its RSA Marketmaker Joinder; provided, that after voting, if the class in which the Bonds are classified has not accepted a Plan providing the Securitization Bond Treatment or Stipulated Treatment due to failure of one or more RSA Marketmakers to vote Uninsured Bonds subject to this Definitive RSA in compliance with the provisions of the Definitive RSA, then a two (2) week Joinder Period shall be declared (during which time the Parties shall work together to cause the RSA Marketmaker to vote Uninsured Bonds it holds), and if the requisite votes have not been received upon expiration of such Joinder Period (or, if later,

a new voting deadline), then any of the Government Parties can declare a Stipulated Treatment Termination pursuant to Section 9(c)(i)(3);

(3)  to the extent that a Supporting Holder is acting in its capacity as a Qualified Marketmaker, it may Transfer any right, title or interest in the Bonds that the Qualified Marketmaker acquires from a holder of the Bonds that is not a Supporting Holder without the requirement that the transferee be or become a Supporting Holder; and

(4)  a Qualified Marketmaker may, with the consent of the Government Parties, which consent shall not be unreasonably withheld, join this Definitive RSA solely on behalf of a specific trading desk.

(iii)  Notice of Transfers. In connection with any Transfer of an Uninsured Bond by a Supporting Holder, such Supporting Holder shall (A) give notice to its direct transferee that the Uninsured Bonds it is Transferring are Uninsured Bonds subject to this Definitive RSA, and (B) give notice to counsel to the Ad Hoc Group and counsel to each of the Government Parties of (i) the CUSIP (or, when available, alternative identifying CUSIP) of Uninsured Bonds it is Transferring, (ii) the principal amount being Transferred, and (iii) the name of the Supporting Holder or Qualified Marketmaker that is the direct transferee. Failure to give such notices shall not constitute a Bondholder Breach, nor shall it invalidate such Transfer.

(iv)  Additional Bonds. Any Supporting Holder may purchase additional Bonds, and any Bondholder may become a Supporting Holder by signing a Joinder Agreement; provided that (A) any such acquired Bonds (and any Bonds held by such joining Bondholder) shall automatically and immediately be deemed subject to all of the terms of this Definitive RSA (including, in the case of Uninsured Bonds, the obligations of the Supporting Holders under this Section 6); provided that Uninsured Bonds that become subject to this Definitive RSA after December 1, 2019, at any period other than during a Joinder Period, shall not be entitled to Administrative Claims, Settlement Payments, Increased Settlement Payments, or Adequate Protection Payments but shall be subject to this Agreement for all other purposes, including voting obligations and entitlement to the Stipulated Treatment and (B) on the first of each month, all Supporting Holders shall notify counsel for the Ad Hoc Group (who shall notify the Government Parties) of the amounts and types of Uninsured Bonds acquired during the previous month and the date of such acquisition.

(v)  Reporting. Upon the reasonable request of a Required Party, each Supporting Holder shall provide its holdings to counsel to each Required Party.

(vi)  Holdings Confidential. Any disclosure by any Supporting Holder to any other Party of its holdings of Bonds shall be treated as confidential information by such other Party unless such other Party receives such information through other means that are not subject to a duty of confidentiality. The foregoing

33

shall not prohibit disclosure of the aggregate principal amount of Bonds held by the Ad Hoc Group or all Supporting Holders collectively and shall not limit the duty of any Party to disclose holdings as required by law, including pursuant to Bankruptcy Rule 2019 or as otherwise required by the Title III Court.

(vii) <u>The Ad Hoc Group</u>. The Ad Hoc Group Members as of the date hereof are listed on <u>Annex A</u> hereto. The members of the Ad Hoc Group may change from time to time upon delivery by counsel to the Ad Hoc Group of a notice to FOMB, PREPA, AAFAF, Syncora, National, and Assured with an updated <u>Annex A</u>, and, in the case of the addition of a person to the Ad Hoc Group who is not otherwise party to this Agreement, execution by such person of a Joinder Agreement and delivery of such Joinder Agreement to counsel to FOMB, PREPA, and AAFAF.

(viii) <u>Joinders</u>. In the event a Party to this Agreement receives a Joinder Agreement that was not sent to counsel to the Ad Hoc Group, PREPA, AAFAF and FOMB, then such Party shall forward such Joinder Agreement to counsel to the aforementioned Parties that did not receive such Joinder Agreement.

(d) <u>Insured Bonds Held by Uninsured Supporting Holders</u>.

(i) Assured shall have all of the rights and obligations related to any Assured Insured Bonds and the Assured Insured Interest Rate Swaps, including without limitation the exclusive right to vote such Assured Insured Bonds and Assured Insured Interest Rate Swaps on account of any Plan, other than as expressly set forth in this <u>Section 6(d)</u>, <u>Section 9(c)</u> and <u>Section VII(b)</u> of the Recovery Plan Term Sheet, and the Plan, Confirmation Order, and Disclosure Statement shall provide the same. Syncora shall have all of the rights and obligations related to any Syncora Insured Bonds, including without limitation the exclusive right to vote such Syncora Insured Bonds on account of any Plan, other than as expressly set forth in this Section 6(d), Section 9(c) and Section XV(b) of the Recovery Plan Term Sheet, and the Plan, Confirmation Order, and Disclosure Statement shall provide the same. National shall have all of the rights and obligations related to any National Insured Bonds, including without limitation the exclusive right to vote such National Insured Bonds on account of any Plan, other than as expressly set forth in this Section 6(d), Section 9(c) and Section XVI(b) of the Recovery Plan Term Sheet, and the Plan, Confirmation Order, and Disclosure Statement shall provide the same.

(ii) The Uninsured Supporting Holders shall be subject to the obligations concerning Bondholder Litigation and Bondholder Breach and, if there is a court order providing that the Uninsured Supporting Holders are entitled to vote any Assured Insured Bonds, Syncora Insured Bonds, or National Insured Bonds, and that such vote shall not adversely affect its rights under the Bond Insurance Agreements, each Uninsured Supporting Holder shall be obligated to vote any Assured Insured Bonds, Syncora Insured Bonds, or National Insured Bonds held by such Uninsured Supporting Holders as of the record date in accordance with this

34

Agreement; provided that such Uninsured Supporting Holder may file a Permitted Objection. The Uninsured Supporting Holders shall not have any other obligations with respect to Assured Insured Bonds, Syncora Insured Bonds, or National Insured Bonds under this Agreement or the 9019 Order, and shall be permitted to transfer such bonds without any requirement that the transferee sign a Joinder Agreement. Nothing in this Definitive RSA or the 9019 Order shall prejudice the rights of the beneficial holders of any Assured Insured Bonds, Syncora Insured Bonds, or National Insured Bonds against Assured, Syncora, or National, respectively.

**Section 7**     **Agreements of FOMB, PREPA, and AAFAF**.

(a) Each Government Party agrees that:

(i) prior to the Effective Date of a Plan and the issuance of the Securitization Bonds or the Stipulated Treatment, as applicable, and except with consent of the Required Parties, after consultation with the Consulting Parties, (x) a Transformation Transaction with regard to the transmission and distribution assets shall not close, and (y) PREPA shall not sell any of its generation assets to the extent used or useful in PREPA's operations.

(ii) the Government Parties shall not proceed with a Transformation Transaction that would prevent the Government Parties from providing the Stipulated Treatment;

(iii) the Government Parties shall use commercially reasonable efforts to cause any vacancies of independent board members to be filled promptly with other independent candidates selected and appointed in accordance with the criteria and procedures set forth in Act 4-2016, as amended;

(iv) PREPA shall provide the Supporting Holders (or, to the extent necessary, their advisors) with the following reports on a monthly basis, unless otherwise mutually agreed to by the Required Parties, after consultation with the Consulting Parties: (1) a 13-week cash flow, (2) a FEMA flash report, and (3) an account balance report;

(v) FOMB and AAFAF shall provide, within ten (10) business days, written notice to the Ad Hoc Group, Syncora, National, and Assured, between the date hereof and the Effective Date, of receipt of any notice that is not publicly available of any judicial proceeding commenced or threatened in writing against any Government Party related to PREPA, which could reasonably be expected to have a material, adverse impact on the treatment of the Supporting Holders under this Agreement;

(vi) each Government Party shall use commercially reasonable efforts to provide the Supporting Holders with periodic updates and current information regarding the progress of and details concerning the Transformation Transaction (with a level of detail similar to the information previously provided in the bi-weekly PREPA mediation call); provided that the Government Parties shall not be

35

required to provide any non-public or confidential information unless the Supporting Holder or its advisors has executed a non-disclosure agreement with the Government Parties and the Puerto Rico Public Private Partnership Authority that contains customary restrictions on the ability to disclose or otherwise use such information in litigation; provided, further, that such failure to provide such information shall only entitle Supporting Holders to enforce this provision and no other remedies will be available;

(vii)   each Government Party shall (A) act in good faith and use commercially reasonable efforts to support and complete successfully the Solicitation in accordance with the terms of this Agreement, (B) use commercially reasonable efforts to confirm the Plan and consummate the Restructuring and the transactions contemplated thereby in accordance with, and within the time frames contemplated by, this Agreement, (including preparing and executing any documentation necessary (including the Definitive Documents and the Additional Definitive Documents (to the extent relating to treatment of Bonds subject to the RSA)), securing any necessary IRS Private Letter Ruling, and giving any notices, orders, instructions, or directions that are commercially reasonable, necessary, or appropriate to support, facilitate, implement, consummate, or otherwise give effect to the Restructuring, and (C) not take any action that would prevent the Government Parties from providing the Securitization Bond Treatment or Stipulated Treatment contemplated by this Agreement;

(viii)   each of the Government Parties shall use commercially reasonable efforts to provide counsel to the Ad Hoc Group, Syncora, National, and Assured draft copies of material motions, applications, and other documents relating to the Bonds subject to this Agreement, the Restructuring, or this Agreement that such Government Party intends to file in the Title III Case with sufficient time to respond to and comment thereon;

(ix)   FOMB shall amend PREPA's Fiscal Plan and certified budget as required to facilitate the Restructuring; and

(x)   except as provided in Section 23, the Government Parties shall not enter into any restructuring support or similar agreement related to the Financial Indebtedness other than by amendment to this Agreement, unless consented to by the Required Parties, after consultation with the Consulting Parties.

(b)   Each Government Party agrees that:

(i)   to the extent the Government Parties, each acting in its sole discretion and after consultation with a designee of each of the Ad Hoc Group, Assured, Syncora, and National (provided such designees are subject to a non-disclosure agreement acceptable to the Government Parties), determine to apply for ratings on the Securitization Bonds, the Government Parties shall use their commercially reasonable efforts to obtain ratings on the Securitization Bonds, including promptly responding in good faith to documentary or other requests, as

soon as reasonably practicable as determined solely by the Government Parties, following consultation with the aforementioned mentioned designees. To the extent practicable the Government Parties shall provide counsel to each of the Ad Hoc Group, Assured, Syncora and National, drafts of written submissions related to such rating with sufficient time to comment thereon; provided that such counsel are subject to a non-disclosure agreement acceptable to the Government Parties; and

(ii) the Government Parties shall consult with counsel for each of the Ad Hoc Group, Assured, Syncora, and National regarding any IRS Private Letter Ruling Request, including, if practicable, providing drafts of written materials related thereto with sufficient time to comment thereon; provided that such counsel are subject to a non-disclosure agreement acceptable to the Government Parties.

**Section 8** **Force Majeure**. If an event beyond the control of the Government Parties (including hurricanes, fires, explosion, earthquakes, drought, tidal waves, floods, war, or terrorism) (such event, a "**Force Majeure Event**") prevents any Government Party from complying with any of its obligations under this Agreement, a delay in performance by such Government Party of such obligation shall not be considered a breach of this Agreement through the later of (i) the first day of the month following a restoration of electric service to 85% of the pre-Force Majeure Event levels, or (ii) if any of the Government Parties, Assured, Syncora, National, or the Required Uninsured Holders request a hearing on the issue, the date determined by the Title III Court to be reasonable in light of then-prevailing circumstances; provided that the Administrative Claims shall continue to accrue, but Settlement Payments, Increased Settlement Payments, and Adequate Protection Payments, as applicable, shall not be owed, during the period from the occurrence of a Force Majeure Event through the earlier of the dates set forth in clauses (i) and (ii) of this Section 8.

**Section 9** **Termination of and Withdrawal from Definitive RSA**.

(a) Rights of Withdrawal. If

(i) the economic terms of this Agreement are materially amended, modified, supplemented or waived (including pursuant to Section 10) without the written consent of a Supporting Holder that causes a material reduction in the economic value of the recovery to be received by such Supporting Holder; or

(ii) any other provision of this Agreement is materially amended, modified, supplemented, or waived (including pursuant to Section 10) without the written consent of a Supporting Holder in a manner disproportionally and materially adverse to such Supporting Holder in its capacity as a Bondholder,

(any of the preceding clauses of this Section 9(a), a "**Withdrawal Event**"), then in each case, such Supporting Holder shall have the right to withdraw from this Agreement within five (5) business days of receiving notice of such Withdrawal Event (which may be provided through an EMMA notice) by delivering notice of such withdrawal (including the reason for such withdrawal) to counsel to FOMB, PREPA, AAFAF, Assured, Syncora, National, and the Ad Hoc Group in

accordance with Section 27. Such withdrawal shall be effective immediately after delivery of such notice of withdrawal (to the extent such withdrawal is not rescinded), whereupon an Individual Termination shall be deemed to have occurred as to such Supporting Holder.

    (b)    Securitization Termination.

    (i)    A Government Party may terminate this Agreement to the extent set forth in clause (iii) of this Section 9(b) (a "**Securitization Termination**") by delivering notice of such termination in accordance with Section 27 if any of FOMB, the governing board of PREPA, or AAFAF determines that the terms and conditions of the Restructuring will impede or have an adverse impact on the Transformation Transaction or that the terms of the Restructuring are inconsistent with the Transformation Transaction.

    (ii)    A Government Party may declare a Securitization Termination on or after March 15, 2020 if (A) the Required Parties and, if required by Section 1(b)(iv), the Consulting Parties, and otherwise after consultation with the Consulting Parties as required by this Agreement, have not reached agreement on the Definitive Documents after working collaboratively and in good faith and (B) all legislation necessary to support the Restructuring has not been enacted; provided, that upon a Securitization Termination under this subsection (b)(ii), the Government Parties shall use commercially reasonable efforts to provide the Supporting Holders with a utility securitization that provides the same financial recovery and similar protections as the Securitization Treatment.

    (iii)    Upon the occurrence of a Securitization Termination, the obligation of the Government Parties to provide the Securitization Bond Treatment shall terminate and all other rights and obligations of the Parties under the RSA related to the Securitization Bonds or the Securitization Bond Treatment shall terminate to the extent related to the Securitization Bonds or the Securitization Bond Treatment. The remaining terms of this Agreement, including without limitations, the Government Parties' obligations to provide the Stipulated Treatment, Allowed Claim, Settlement Payments, Increased Settlement Payments, Adequate Protection Payments, and Administrative Claims, the Supporting Holders' obligations to vote in favor of a Plan that provides them with the Stipulated Treatment, and the litigation stay provisions of this Definitive RSA, shall otherwise survive.

    (c)    Stipulated Treatment Termination.

    (i)    A Government Party (or, in the case of subsection (4) below, either a Government Party or the Required Holders, after consultation with the Consulting Parties) may terminate this Agreement and elect not to provide the Stipulated Treatment (a "**Stipulated Treatment Termination**") by delivering notice in accordance with Section 27 (except in the case of subsection (5) below which Stipulated Treatment Termination shall be automatic) if:

(1) The then applicable Required Threshold has not been met (including, without limitation, if it has not been met because Assured, Syncora or National defaults on a payment obligation under its Bond Insurance Agreements and such default is determined by the court to cause Assured or Syncora or National to lose its right to vote the Assured Insured Bonds or Syncora Insured Bonds or National Insured Bonds, as applicable) by the date of entry of the 9019 Order;

(2) The then applicable Required Threshold has not been met (including, without limitation, if it has not been met because Assured, Syncora or National defaults on a payment obligation under its Bond Insurance Agreements and such default is determined by the court to cause it to lose its right to vote the Assured Insured Bonds or Syncora Insured Bonds or National Insured Bonds, as applicable) by September 1, 2019;

(3) The then applicable Required Threshold has not been met (including, without limitation, if it has not been met because Assured, Syncora or National defaults on a payment obligation under its Bond Insurance Agreements and such default is determined by the court to cause it to lose its right to vote the Assured Insured Bonds or Syncora Insured Bonds or National Insured Bonds, as applicable) upon the expiration of any Joinder Period;

(4) The 9019 Order is reversed on appeal; provided that in the event of reversal of the 9019 Order on appeal, after consultation with the Consulting Parties, either a Government Party or the Required Holders may elect within sixty (60) days of the reversal to declare a Stipulated Treatment Termination pursuant to this subsection (4); provided that the Parties shall work together for such sixty (60) days to find a mutually agreeable solution that addresses the cause of such reversal;

(5) The Title III Case is dismissed;

(6) Confirmation of a Plan that complies with this Definitive RSA is denied; provided that no Stipulated Treatment Termination shall occur under this subsection (6) until the Parties have worked in good faith and used their commercially reasonable efforts to agree on amendments or modifications to the Plan in order to achieve confirmation of such Plan for a period of forty-five (45) days, and FOMB has used its commercially reasonable efforts to seek confirmation of such amended or modified plan of adjustment that is consistent with this Definitive RSA and takes into account the Title III Court's ruling denying confirmation of the prior Plan, and confirmation of such amended or modified Plan has also been denied; provided, that if confirmation of a Plan is denied solely as a result of a Permitted Puerto Rico Objection there shall not be a Stipulated Treatment Termination pursuant to this subsection (6) until FOMB has used its commercially reasonable efforts to seek confirmation of an amended or

modified Plan that is consistent with this Definitive RSA and takes into account the Title III Court's ruling denying confirmation of the prior Plan(s) and confirmation of such amended or modified Plan has also been denied for any reason other than solely as a result of a Permitted Puerto Rico Objection; or

(7) Any Supporting Holder (other than Assured, Syncora, National, and the Ad Hoc Group) participates in contesting or defending any Lien Challenge brought by the Government Parties in compliance with the terms of this Definitive RSA (including, without limitation, asserting any defense or counterclaim in connection therewith); provided, further, that an election to declare a Stipulated Treatment Termination based on this subsection (7) must be made prior to entry of the 9019 Order.

(ii) In the event of a Stipulated Treatment Termination as to all Supporting Holders or an Individual Termination as to an individual Supporting Holder, (1) the Supporting Holder's Bond Claims shall automatically be reduced by the amount of any Settlement Payments (or Increased Settlement Payments or Adequate Protection Payments) made or Administrative Claim accrued and paid to such Supporting Holder on account of its Bond Claims, (2) all prior Settlement Payments, Increased Settlement Payments, Adequate Protection Payments, and payments made on Administrative Claims, as applicable, received by any Supporting Holder subject to such termination shall be retained by the recipient, (3) all Parties reserve all rights as to whether Settlement Payments (or Increased Settlement Payments or Adequate Protection Payments) or payments made on Administrative Claims shall be credited against Claims for principal, pre-petition interest, or (if applicable) post-petition interest; and (4) accrued and unpaid Administrative Claims shall be disallowed other than the Surviving Administrative Claim.

(iii) Upon the occurrence and declaration by any Government Party of a Stipulated Treatment Termination in accordance with the terms of this Definitive RSA, this Definitive RSA shall become void and of no further force or effect as to all Parties and each Party shall, except as otherwise expressly provided in this Definitive RSA or the 9019 Order, (1) be immediately released from its respective liabilities, obligations, commitments, undertakings, and agreements under or related to this Definitive RSA or the 9019 Order, (2) have no further rights, benefits, or privileges hereunder, and (3) have all the rights and remedies that it would have had, and be entitled to take all actions, whether with respect to the Restructuring, the 9019 Settlement or otherwise, that it would have been entitled to take had it not entered into this Definitive RSA and had the 9019 Order never been issued, and no such rights or remedies shall be deemed waived pursuant to a claim of laches or estoppel; provided that the provisions of this Section 9(c) and the other provisions set forth in Section 17 shall survive; provided, further, that a Stipulated Treatment Termination shall not void any prior tolling pursuant to the Tolling Agreement or the 9019 Order.

(d)     Additional Termination Events.

(i)     This Definitive RSA may be terminated by mutual agreement of the Required Parties, after consultation with the Consulting Parties, upon the receipt of notice delivered in accordance with Section 27.

(ii)    This Definitive RSA may be terminated by the Required Holders, after consultation with the Consulting Parties, if the Settlement Payments have not commenced by the last day of the month in which the 9019 Order is entered upon the receipt of notice delivered in accordance with Section 27, subject to a thirty (30) day cure period.

(iii)   This Definitive RSA may be terminated by any of the Required Parties, after consultation with the Consulting Parties, if (x) the Settlement Motion is denied or (y) the 9019 Order has not been entered by September 30, 2019, in each case upon the receipt of notice by a Party delivered in accordance with Section 27.

(iv)    This Definitive RSA may be terminated by any of the Government Parties if the Tolling Agreement has not been entered into by the date five (5) business days after the entry of the 9019 Order and subsequently approved by the Title III Court prior to the expiration of the applicable statutes of limitations.

(v)     This Definitive RSA may be terminated by any of the Government Parties as to any individual Supporting Holder if such Supporting Holder commits a Bondholder Breach (an "**Individual Termination**") upon the receipt by such Supporting Holder of notice delivered in accordance with Section 27.

(vi)    Either PREPA or AAFAF may terminate all of its obligations under this Definitive RSA solely as to itself in the event that AAFAF objects to a Plan pursuant to a Permitted Puerto Rico Objection and the Title III court sustains such objection; provided that neither PREPA nor AAFAF shall have the right to terminate under this subsection (vi) until (i) the Parties have worked in good faith and used their commercially reasonable efforts to agree on amendments or modifications to the Plan in order to achieve confirmation of such Plan for a period of forty-five (45) days, (ii) FOMB has used its commercially reasonable efforts to seek confirmation of such amended or modified plan of adjustment (which is consistent with this Definitive RSA) taking into account the Title III Court's ruling denying confirmation of the prior Plan, and (iii) AAFAF objects to such amended or modified Plan in a Permitted Puerto Rico Objection and the Title III Court sustains such objection. Nothing in this subsection (vi) shall alter or limit any other termination rights of any of the Government Parties set forth herein including in Section 9(c)(i)(6).

(vii)   Any termination pursuant to Sections 9(d)(i) - (iv) shall each be treated as a Stipulated Treatment Termination.

(viii)  Any termination pursuant to Section 9(d)(vi) shall be treated as a termination of this Definitive RSA solely as to PREPA or AAFAF, as applicable.