Upon the occurrence and declaration by PREPA or AAFAF of a termination pursuant to Section 9(d)(vi), then, except as otherwise expressly provided in the 9019 Order in the form approved by PREPA and AAFAF in connection with this Definitive RSA, the right and obligations in the Definitive RSA shall become void and of no further force or effect as to PREPA and/or AAFAF, and the remaining Parties hereto shall have no obligations to PREPA and/or AAFAF; provided that the provisions set forth in Section 17 shall survive as to PREPA and/or AAFAF. Notwithstanding the foregoing, all of the rights and obligations under this Definitive RSA of all other Parties as to each other shall survive such termination as if no such termination occurred, including (i) the FOMB's obligations to provide the Stipulated Treatment, Allowed Claim, Adequate Protection Payments, and Administrative Claims; provided, that the FOMB shall not be obligated to impose a Settlement Charge or Increased Settlement Charge or provide Settlement Payments or Increased Settlement Payments, (ii) the Supporting Holders' obligations to vote in favor of a Plan that provides them with the Stipulated Treatment, and (iii) the Tolling Agreement and the litigation stay provisions of this Definitive RSA.

(e) <u>Automatic Stay</u>. Each Government Party acknowledges and agrees that the giving of notice of termination by any Party pursuant to and in accordance with this Definitive RSA (or any action to enforce this Definitive RSA) shall not be a violation of the automatic stay; provided that nothing herein shall prejudice any Party's rights to argue that the giving of notice of termination was not in accordance with the terms of this Definitive RSA.

(f) <u>Limitation on Termination</u>. No Party may terminate this Agreement if the event giving rise to the termination is the result of such Party failing to perform or comply in any material respect with the terms and conditions of this Agreement.

**Section 10** **<u>Definitive Documents; Good Faith Cooperation; Further Assurances</u>**.

(a) Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and shall exercise commercially reasonable efforts with respect to, the pursuit, approval, implementation, and consummation of the Restructuring, as well as the negotiation, drafting, execution, and delivery of the Definitive Documents and Additional Definitive Documents (to the extent relating to treatment of Bonds subject to the RSA). Upon written confirmation of an agreement (which confirmation may be by email and must specifically state that it constitutes an agreement pursuant to this Section 10), after consultation with the Consulting Parties, and, if required by Sections 1(b)(iv)-(v), with the consent of the Consulting Parties, among the Super Majority Uninsured Holders, Assured and each Government Party on, and finalization of, the Definitive Documents, this Definitive RSA shall automatically be deemed amended to replace the corresponding portions of the Recovery Plan Term Sheet with the Definitive Documents <u>as Exhibit C</u> hereto and all references in this Agreement to such portions of the Recovery Plan Term Sheet shall be deemed to be references to the Definitive Documents or Additional Definitive Documents, as applicable.

(b) Subject to the terms hereof, each of the Parties shall take such action as may be reasonably necessary or reasonably requested by the other Parties to carry out the purposes and

intent of this Definitive RSA, and shall refrain from taking any action that would frustrate the purposes and intent of this Definitive RSA.

**Section 11** **Representations and Warranties**.

(a) <u>Mutual Representations and Warranties</u>. Each Party, severally (and not jointly), represents and warrants to the other Parties that the following statements are true and correct as of the date hereof (or as of the date a Supporting Holder becomes a party hereto):

(i) such party has the legal right, power and authority to enter into this Agreement;

(ii) this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium, or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application);

(iii) except in the case of an individual, it is duly organized and validly existing and in good standing under the laws of the jurisdiction of its organization with full power and authority to execute and deliver, and to perform and observe, the terms and provisions of this Agreement;

(iv) the execution, delivery, performance, and observance of this Agreement by such Party (A) has been duly authorized by all necessary action on the part of such Party, does not and will not conflict with, or result in a violation of, any law applicable to it, and does not require it to obtain any permit, consent, approval, order, or authorization of, or provide notice to or make a filing with, any court, governmental or regulatory agency or authority, or other person or entity that has not been obtained, provided, or made, as applicable, (B) except to the extent modified, stayed or otherwise excused by PROMESA, (1) with respect to FOMB, AAFAF, and PREPA, does not contravene, or constitute a default under any provision of applicable law or regulation or of any agreement, judgment, injunction, order, decree, or other instrument binding on FOMB, AAFAF, or PREPA, as applicable, and (2) with respect to each Party, does not and will not violate, conflict with, or result in the breach of any provision of its organizational or governance documents, and (C) does not and will not result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of, termination, amendment, acceleration, suspension, revocation, or cancellation of any note, bond, mortgage, indenture, contract, agreement, lease, sublease, license, permit, franchise, or other instrument or arrangement to which it is a party, which would materially adversely affect its ability to carry out its obligations under and otherwise observe this Agreement or cause the occurrence of a Stipulated Treatment Termination; provided, however, that clause (C) hereof shall not apply to any note, bond, mortgage, indenture, contract, agreement, lease, sublease,

43

license, permit, franchise, or other instrument or arrangement to which PREPA is a party.

(b) <u>Additional Representations of Supporting Holders</u>. Each Supporting Holder individually represents, warrants, and covenants to each other Party that the following statements are true, correct, and complete as of the date of this Agreement (or, in the case of a Party executing a Joinder Agreement other than in connection with a pending Transfer, as of the date of such Joinder Agreement, and in the case of a Party executing a Joinder Agreement in connection with a pending Transfer of Uninsured Bonds to such joining Party, upon consummation of such pending Transfer of Uninsured Bonds to such joining Party) (each of which is a continuing representation, warranty, and covenant): that it owns or has investment management responsibility for accounts that own Uninsured Bonds in the principal amounts set forth on its respective signature page hereto or its Joinder Agreement (as applicable), which it would be entitled to vote on in a plan (or qualifying modification) solicitation, and that it has not sold, assigned, transferred, participated, or otherwise pledged such Bonds, or any voting, consent, or direction rights related to such Bonds, to any other person or entity that would prevent or adversely affect in any way such Supporting Holders' performance of its obligations contained in this Agreement at the time such obligations are required to be performed, in each case except as permitted by <u>Section 6(c)</u>.

(c) <u>Additional Representation of the Ad Hoc Group Members</u>. Each Ad Hoc Group Member that is party to this Agreement on the RSA Execution Date individually represents and warrants to the other Parties that as of the RSA Execution Date it does not beneficially own or control any Uninsured Bonds in a Qualified Marketmaker capacity.

**Section 12** **<u>Disclosure; Publicity</u>**. Each Government Party shall endeavor to submit drafts to the Ad Hoc Group, Syncora, National, and Assured of any press releases, public documents, and any and all filings with the SEC, the Municipal Securities Rulemaking Board, or any state or Puerto Rico governmental agency regarding this Definitive RSA or the Restructuring at least two (2) business days, to the extent practicable, before making any such disclosure. Except as required by applicable law or otherwise permitted under the terms of any other agreement between a Party and the applicable Supporting Holder, no Party or its advisors shall disclose to any person or entity (including, for the avoidance of doubt, any other Supporting Holder), other than advisors to the Government Parties and the Ad Hoc Group, the principal amount or percentage of Bonds held by the applicable Supporting Holder, in each case, without such Supporting Holder's prior written consent. Notwithstanding the provisions in this <u>Section 12</u>, any Party may disclose, to the extent consented to in writing by a Supporting Holder, such Supporting Holder's individual holdings, and, for the avoidance of doubt, a Supporting Holder shall be permitted to disclose its own individual holdings. Any public filing of this Definitive RSA, with the Title III Court or otherwise, which includes executed signature pages to this Definitive RSA shall include such signature pages only in redacted form with respect to the holdings of each Supporting Holder; provided that the holdings disclosed in such signature pages may be filed in unredacted form with the Title III Court under seal.

**Section 13** **<u>Amendments and Modifications</u>**.

(a) Subject to subsections (b) and (c) of this Section 13, the terms and conditions of this Agreement, including any exhibits, annexes, or schedules to this Agreement, may not be waived, modified,

44

amended, or supplemented without consultation with the Consulting Parties and the written consent of (i) FOMB, (ii) PREPA, (iii) AAFAF, and (iv) the Super Majority Holders, after consultation with the Consulting Parties; provided that the foregoing is subject to the withdrawal rights pursuant to Section 9(a).

(b) The terms and conditions of this Agreement, including any exhibits, annexes, or schedules to this Agreement, may not be waived, modified, amended, or supplemented without the written consent of National if such waiver, modification, amendment, or supplement (a) modifies National's economic recovery in a manner different from any other Supporting Holder, (b) alters the economic terms that are specific/unique to National as an Insurer of the National Insured Bonds, or (c) provides for legal rights or obligations of National that are different in any material respect from those of any other Supporting Party.

(c) The terms and conditions of this Agreement, including any exhibits, annexes, or schedules to this Agreement, may not be waived, modified, amended, or supplemented without the written consent of Syncora if such waiver, modification, amendment, or supplement (a) modifies Syncora's economic recovery in a manner different from any other Supporting Holder, (b) alters the economic terms that are specific/unique to Syncora as an Insurer of the Syncora Insured Bonds, or (c) provides for legal rights or obligations of Syncora that are different in any material respect from those of any other Supporting Party.

**Section 14** **Effectiveness**. Except as specifically provided herein, this Definitive RSA shall become effective and binding on the RSA Execution Date; provided that, until entry of the 9019 Order, (i) the 9019 Settlement shall not be effective; (ii) the Government Parties shall have no obligation to impose the Settlement Charge or Increased Settlement Charge; make Settlement Payments, Increased Settlement Payments, or Adequate Protection Payments; or propose a Plan providing for issuance of Securitization Bonds or Stipulated Treatment; and (iii) the Supporting Holders shall not be entitled to Administrative Claims, the Stipulated Treatment, or Waiver and Support Fees and shall not be obligated to vote in favor of any Plan, qualifying modification, exchange, or restructuring. Notwithstanding the foregoing, in the event the Settlement Motion is denied or the 9019 Order is not entered prior to a termination pursuant to Section 9(d)(iii), this Definitive RSA shall be deemed to have been void *ab initio* and shall be of no further force and effect; provided that the obligations of the Government Parties under Section 22 shall survive with respect to any fees or expenses incurred prior to the date of such denial or termination and required to be reimbursed under the terms of Section 22.

**Section 15** **Governing Law; Jurisdiction; Waiver of Jury Trial**.

(a) THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF, EXCEPT THAT, WITH RESPECT TO THE EXISTENCE, POWERS, LEGAL CAPACITY, AND AUTHORITY OF (I) EACH OF AAFAF AND PREPA, THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF PUERTO RICO, EXCLUDING THE CONFLICT OF LAWS PRINCIPLES THEREOF, AND (II) AS TO FOMB, THIS AGREEMENT SHALL BE GOVERNED BY PROMESA. Each Party hereto agrees that it shall bring any action or

proceeding with respect to any claim arising out of or related to this Agreement in the Title III Court (or a court of proper appellate jurisdiction) (the "**Chosen Court**"), and solely in connection with claims arising under this Agreement: (a) irrevocably submits to the exclusive jurisdiction of the Chosen Court; (b) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (c) waives any objection that the Chosen Court is an inconvenient forum or does not have jurisdiction over any Party hereto or constitutional authority to finally adjudicate the matter. The Government Parties submit to the jurisdiction of the Chosen Court and irrevocably waive any immunity from suit in the Chosen Court that they may have for any action or proceeding arising out of or relating to this Definitive RSA or the 9019 Order.

(b) Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Definitive RSA or the transactions contemplated herein (whether based on contract, tort or any other theory).

(c) The rights and obligations of the Parties under this Agreement and the 9019 Order shall be binding and enforceable against the Parties, and, to the extent necessary, the Government Parties consent for purposes of section 305 of PROMESA to such enforcement by the Chosen Court.

**Section 16** **Specific Performance/Remedies**. The Parties understand and agree that monetary damages would be an insufficient remedy for any breach of this Definitive RSA by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, without the necessity of proving the inadequacy of monetary damages as a remedy. Specific performance and injunctive or other equitable relief to the extent appropriate and allowed by applicable law and the right to terminate this Definitive RSA in accordance with the terms of this Definitive RSA shall be the sole and exclusive remedies for any breach of this Definitive RSA by any Party. Without limiting the ability of a Party to sue for payment of money owed under this Agreement or the 9019 Order, no person or entity shall be entitled to monetary damages for any breach of this Agreement or the 9019 Order. Each Party hereby waives any requirement for security or the posting of any bond in connection with such remedies.

**Section 17** **Survival**. Subject to entry of the 9019 Order, notwithstanding the termination of this Definitive RSA pursuant to Section 9(d)(vi) (as to PREPA or AAFAF), pursuant to an Individual Termination (as to an individual Supporting Holder), or a Stipulated Treatment Termination (as to all Parties), Sections 9(c) and 15-19(a), 20-22 and 24-31 shall survive such termination and shall continue in full force and effect in accordance with the terms hereof.

**Section 18** **Headings**. The headings of the sections, paragraphs, and subsections of this Definitive RSA are inserted for convenience only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this Definitive RSA.

**Section 19** **Successors and Assigns; Severability**.

(a) This Definitive RSA is intended to bind and inure to the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators, and

representatives; provided that nothing contained in this Section 19 shall be deemed to permit Transfers of the Bonds or any related Claims other than in accordance with the express terms of this Definitive RSA. If any provision of this Definitive RSA, or the application of any such provision to any person or entity or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and the remainder of this Definitive RSA shall continue in full force and effect.

(b) Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Definitive RSA so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner so that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

**Section 20** **Several, Not Joint, Obligations**. The agreements, representations, warranties, and obligations of the Parties under this Definitive RSA are, in all respects, several and not joint.

**Section 21** **Relationship Among Parties**. Unless expressly stated herein, this Definitive RSA shall be solely for the benefit of the Parties, and no other person or entity shall be a third-party beneficiary hereof. No Party shall have any responsibility for any trading by any other entity by virtue of this Definitive RSA. Except as expressly set forth in this Definitive RSA, nothing in this Definitive RSA shall be construed to affect any actual or potential claims arising from any obligation of the Government of Puerto Rico or any of its instrumentalities other than PREPA. Except as expressly set forth in this Definitive RSA, nothing in this Definitive RSA shall constitute or be construed as a waiver or release of any claims or causes of action against FOMB, AAFAF, PREPA, or the Government of Puerto Rico or any of its affiliates or instrumentalities prior to the Effective Date.

No Bondholder shall have any liability to any other Bondholder arising from or related to: (i) any extensions of the deadlines set forth herein pursuant to the terms of this Definitive RSA; (ii) the termination of this Definitive RSA pursuant to its terms, whether or not such termination is as to all Supporting Holders; (iii) any waivers, modifications, amendments, or supplements of or to this Definitive RSA; or (iv) the exercise of, or failure to exercise, any other consent, termination, or other rights pursuant to this Definitive RSA or the 9019 Order. This paragraph shall be included in the 9019 Order.

**Section 22** **Fees & Expenses**.

(a) (i) The reasonable fees and reasonable expenses of the Ad Hoc Group incurred in connection with the Preliminary RSA, this Definitive RSA, and any documents and transactions relating to or implementing the foregoing on or after July 23, 2018 through the Effective Date (or, if earlier, a Stipulated Treatment Termination), limited to one (1) primary law firm, one (1) municipal bond counsel law firm, one (1) Puerto Rico law firm, one (1) financial advisor, and one (1) utility consultant, shall be reimbursed by PREPA on a monthly basis within sixty (60) days following submission of an invoice and redacted time detail summary to counsel to FOMB, PREPA, and AAFAF and (ii) the reasonable fees and reasonable expenses of the Ad Hoc Group members up to $25 million for the period prior to July 23, 2018, shall be reimbursed on the Effective Date as agreed in connection with the Preliminary RSA.

(b) The reasonable fees and reasonable expenses of Assured incurred in connection with the Preliminary RSA, this Definitive RSA and any documents and transaction relating to or implementing the foregoing on or after August 1, 2018 through the earliest to occur of (i) the Effective Date, (ii) a Stipulated Treatment Termination, or (iii) an Individual Termination as to Assured, limited to one (1) primary law firm, one (1) Puerto Rico law firm, one (1) financial advisor, one (1) municipal bond counsel law firm, and one (1) utility consultant, shall be reimbursed by PREPA on a monthly basis within sixty (60) days following submission of an invoice and redacted time detail summary to counsel to FOMB, PREPA, and AAFAF. The reasonable fees and reasonable expenses of each of Syncora and National incurred in connection with the Preliminary RSA, this Definitive RSA and any documents and transaction relating to or implementing the foregoing on or after August 1, 2018 through the earliest to occur of (i) the Effective Date, (ii) a Stipulated Treatment Termination, or (iii) an Individual Termination as to Syncora or National, as applicable, limited as to each to one (1) primary law firm, one (1) Puerto Rico law firm, one (1) municipal bond counsel law firm, one (1) utility consultant, and one (1) financial advisor and/or consultant, shall be reimbursed by PREPA on a monthly basis within sixty (60) days following submission of an invoice and redacted time detail summary to counsel to FOMB, PREPA, and AAFAF, provided that such fees and expenses of shall not be reimbursed in excess of (x) $500,000 for Syncora for the period prior to June 1, 2019, (y) $1.2 million for National for the period prior to June 1, 2019, and (z) $130,000 monthly for each of Syncora and National.

(c) Reimbursement of reasonable fees and expenses pursuant to Sections 22(a)(i) and 22(b) shall be subject to delivery of all required certifications under Puerto Rico law and accompanied by detailed time records with appropriate redactions.

(d) Payments made pursuant to this Agreement (including reimbursement of fees and expenses pursuant to this Section 22, other than in the case of reimbursement of fees and expenses for services rendered in Puerto Rico) shall not be subject to withholding tax under the Puerto Rico Internal Revenue Code of 2011, as amended.

(e) In the event of a termination by PREPA or AAFAF pursuant to Section 9(d)(vi), the obligation of PREPA or AAFAF to pay any fees that accrue after the effective date of such termination shall terminate, but any fees and expenses incurred after such date and until the earlier of the Effective Date or a Stipulated Treatment Termination or any fees and expenses pursuant to Section 22(a)(ii), in each case to the extent they would otherwise have been due and payable hereunder, shall constitute an Administrative Claim entitled to be paid in cash on the Effective Date of a Plan and, notwithstanding anything herein to the contrary, such Administrative Claim shall survive a Stipulated Treatment Termination.

**Section 23   Most Favored Nations.**

Other than with respect to the receipt by Assured of the Assured Treatment, by Syncora of the Syncora Treatment or by National of the National Treatment in accordance with the terms hereof, to the extent any holder(s) of Financial Indebtedness receives a treatment under a Plan, qualifying modification, exchange, or restructuring, however funded, more economically favorable than the treatment proposed to be received by the Ad Hoc Group Members, Assured, Syncora or National then (i) such treatment shall only be allowed and considered consistent with this Agreement if it

does not adversely affect the Ad Hoc Group's, Assured's, Syncora's or National's recoveries, and (ii) additional consideration shall be provided to the Ad Hoc Group, Syncora, National or Assured, as applicable, such that the treatment of the Ad Hoc Group, Syncora, National, or Assured is at least as favorable as the treatment being provided to such holder(s) of Financial Indebtedness.

Notwithstanding the foregoing, none of the Ad Hoc Group, Syncora, National or Assured shall object pursuant to this Section 23 if holders of Financial Indebtedness (other than Uninsured Bonds) receive the same treatment with the same terms as the Ad Hoc Group is receiving, so long as such treatment does not adversely affect the Ad Hoc Group's, Assured's, Syncora's or National's recoveries. Adjustments to coupons and par on the bonds received by such holder(s) of Financial Indebtedness are authorized, so long as total cash flow payable each year remains the same (with proportional adjustments for the varying claim sizes of varying legacy debt claims), and so long as such treatment shall not adversely affect the Ad Hoc Group's, Assured's, Syncora's, or National's recoveries.

**Section 24** **Preservation of Rights**. Except as expressly provided in this Agreement or the 9019 Order, the Parties expressly reserve all rights, contractual or otherwise, under Title III or any other provision of PROMESA or any other law or regulation. Upon an Individual Termination (as to an individual Supporting Holder), a Stipulated Treatment Termination (as to each Party), or a termination pursuant to 9(d)(vi) (as to AAFAF or PREPA), subject to Section 9(c), (i) no such Party shall be precluded, by virtue of having been a Party to this Agreement or otherwise having engaged in negotiations regarding the Restructuring, 9019 Settlement or other matters related to this Agreement, from exercising any and all rights, whether contractual or otherwise, in connection with any proceeding under Title III or under any other provision of PROMESA or any other law or regulation, (ii) no provision of this Agreement, the 9019 Order or other document related to this Agreement, the Restructuring or the 9019 Settlement or statement made during the negotiations thereof, shall be used against any such Party in any proceeding under Title III or any other provision of PROMESA or otherwise, provided that a Section 9(d)(vi) termination as to AAFAF and PREPA shall have no effect on any remaining Parties' rights with respect to any other remaining party hereunder and in the 9019 Order and ability to enforce such rights, and (iii) each such Party shall be restored to its original position. Notwithstanding the generality of the foregoing in this Section 24, except as otherwise provided in this Agreement, no Party shall be precluded from asserting any right, and each Party shall preserve each of its rights and shall not be impeded by this Agreement from bringing before any applicable court any available averment, defenses or priority allegation, or from challenging or contesting any such rights, whether under such law or otherwise, on any grounds.

**Section 25** **Prior Negotiations; Entire Agreement**. This Definitive RSA, including the exhibits, annexes and schedules hereto, constitutes the entire agreement of the Parties and supersedes all other prior negotiations, with respect to the subject matter hereof and thereof, except that the Parties acknowledge that all confidentiality agreements executed between one or more Parties before the execution of this Definitive RSA shall continue in full force and effect. Without limitation of the foregoing, the Preliminary RSA is superseded by this Definitive RSA and terminated in its entirety and shall be of no further force and effect.

**Section 26** **Counterparts**. This Definitive RSA may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one

and the same agreement.  Execution copies of this Definitive RSA delivered by PDF shall be deemed to be an original for the purposes of this paragraph.

**Section 27**     <u>Notices</u>.  All notices hereunder shall be deemed given if they are made in writing and delivered by electronic mail, courier, or registered or certified mail (postage prepaid, return receipt requested) (and if by any method other than electronic mail, then with a copy by electronic mail) to the following addresses (or at such other addresses as shall be specified by like notice):

(i) if to PREPA or AAFAF, to:

O'Melveny & Myers LLP
7 Times Square
New York, NY 10036
Attention: Nancy Mitchell, Maria DiConza, and Matthew Hinker
Email: nmitchell@omm.com; mdiconza@omm.com; mhinker@omm.com

(ii) if to FOMB, to:

Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Attention: Martin J. Bienenstock, Paul V. Possinger, and Ehud Barak
Email: mbienenstock@proskauer.com; ppossinger@proskauer.com; ebarak@proskauer.com

(iii) if to the Ad Hoc Group, to:

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Attention: Amy Caton, Alice J. Byowitz, and Steven Segal
Email: acaton@kramerlevin.com; abyowitz@kramerlevin.com; ssegal@kramerlevin.com.

(iv) if to Assured, to:

Assured Guaranty Corp. and Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attention: Kevin J. Lyons and Terence Workman
Email:  klyons@agltd.com; tworkman@agltd.com

-and-

Cadwalader, Wickersham & Taft LLP
200 Liberty Street

50

      New York, NY 10281
      Attention: Mark C. Ellenberg, Ivan Loncar, and Thomas J. Curtin
      Email: mark.ellenberg@cwt.com; ivan.loncar@cwt.com; thomas.curtin@cwt.com

  (v)  if to Syncora, to:

      Syncora Guarantee Inc.
      555 Madison Avenue, 11th Floor
      New York, NY 10022
      Attention: James W. Lundy, Jr.
      Email: james.lundy@scafg.com

      -and-

      Debevoise & Plimpton LLP
      919 Third Avenue
      New York, NY 10022
      Attention: My Chi To and Elie J. Worenklein
      Email: mcto@debevoise.com; eworenklein@debevoise.com

  (vi)  if to National, to:

      National Public Finance Guarantee Corporation
      1 Manhattanville Road, Suite 301
      Purchase, NY 10577
      Attention: Gary Saunders
      Email: gary.saunders@mbia.com

      -and-

      Weil, Gotshal & Manges LLP
      767 Fifth Avenue
      New York, NY 10153-0119
      Attention: Marcia Goldstein and Debora Hoehne
      Email: marcia.goldstein@weil.com; debora.hoehne@weil.com

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by mail or courier shall be effective when received. Any notice given by electronic mail shall be effective upon oral, machine, or electronic mail (as applicable) confirmation of transmission. For purposes of this Agreement, notices and other communications may be delivered by a Party or by its authorized representatives. Any notice provided to an individual Supporting Holder hereunder must also be provided to the Required Parties and the Consulting Parties.

  (b)  If this Agreement is terminated as to any Government Party, Assured, Syncora, National, or the Ad Hoc Group, FOMB shall publish notice of such withdrawal or

termination on its website and PREPA shall file a notice with EMMA not later than one (1) business day after receipt of such notice.

(c) Unless otherwise mutually agreed to by the Required Parties, after consultation with the Consulting Parties, this Agreement, and each amendment hereto, shall be posted by FOMB on its website and PREPA shall file a notice with EMMA not later than one (1) business day after the execution and delivery hereof and thereof, subject to the confidentiality restrictions contained herein, including Section 12.

**Section 28** **Settlement Discussions**. This Definitive RSA is part of a proposed settlement of matters that could otherwise be the subject of litigation among the Parties. This Definitive RSA and all negotiations relating thereto shall be deemed to be settlement discussions covered by Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence, and any other applicable law, foreign or domestic. Further, other than in a proceeding to enforce or implement this Definitive RSA's terms (or the terms of the 9019 Order), no Party shall offer into evidence this Definitive RSA, or any negotiations relating thereto. If this Definitive RSA is terminated, for any reason, no Party shall use any of the terms in this Definitive RSA against the other Party other than for enforcing its remedies under this Definitive RSA and to extent provided.

**Section 29** **No Solicitation; Adequate Information**. This Definitive RSA is not and shall not be deemed to be a solicitation for consents to a Plan, qualifying modification, exchange, or restructuring. The votes of the holders of Claims against PREPA will not be solicited until such holders who are entitled to vote on Plan have received the required solicitation in accordance with PROMESA. In addition, this Definitive RSA does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

**Section 30** **No Waiver**. The failure or neglect by a Party to enforce any rights under this Agreement will not be deemed a waiver of that Party's rights. No waiver of satisfaction of or nonperformance of an obligation under this Agreement will be effective unless in writing and signed by the Party granting the waiver.

**Section 31** **Representation by Counsel**. The Parties agree that they have each been represented by legal counsel during the negotiation and execution of this Definitive RSA and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

[*Signature pages follow.*]

**Exhibit A**
**Form of Joinder**

## FORM OF JOINDER AGREEMENT

This Joinder Agreement to the Restructuring Support Agreement (as amended, supplemented, or otherwise modified from time to time, the "**Definitive RSA**"), dated as of May 3, 2019 by and among: (i) Puerto Rico Electric Power Authority ("**PREPA**"), (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**"), in its capacity as fiscal agent and financial advisor for PREPA, (iii) the Financial Oversight and Management Board for Puerto Rico ("**FOMB**"), (iv) the members of the Ad Hoc Group of PREPA Bondholders identified on Annex A thereto and party thereto (the "**Ad Hoc Group**"), (v) Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "**Assured**"), and (vi) the other Supporting Holders from time to time party thereto, is executed and delivered by [_____] (the "**Joining Supporting Creditor**") as of _____, 2019. Each capitalized term used herein but not defined herein shall have the meaning set forth in this Definitive RSA.

1.  <u>Agreement to be Bound</u>. The Joining Supporting Creditor hereby agrees to be bound by all of the terms of this Definitive RSA, including the 9019 Settlement. The Joining Supporting Creditor shall hereafter be deemed to be a "**Supporting Holder**" and a Party for all purposes under this Definitive RSA, including, for the avoidance of doubt, with respect to any Bonds held by the Joining Supporting Creditor as of the date of this Joinder Agreement (other than any Bonds held in a Qualified Marketmaker capacity). Upon signing, the Joining Supporting Creditor will be deemed to have joined the direction to the Trustee to join the Settlement Motion, as set forth in <u>Section 2(a)</u> to the Definitive RSA, and to have joined the Tolling Agreement, as set forth in <u>Section 3(c)</u> to the Definitive RSA, and shall be entitled to exculpation on the terms set forth in <u>Section 2(a)</u> to the Definitive RSA.

2.  <u>Representations and Warranties</u>. With respect to the aggregate principal amount of Uninsured Bonds held by the Joining Supporting Creditor, including upon consummation of any pending Transfer of Uninsured Bonds to the Joining Supporting Creditor, the Joining Supporting Creditor hereby makes, as of the date hereof, the representations and warranties of the Supporting Holders set forth in <u>Sections 11(a)-(b)</u> of the Definitive RSA to each of the other Parties to this Definitive RSA.

3.  <u>Governing Law</u>. <u>Section 15</u> of the Definitive RSA is incorporated by reference as if set forth fully herein, except that any references to "**Agreement**" or "**Definitive RSA**" shall be replaced with references to Joinder Agreement.

4.  <u>Notice of Joinder</u>. The Joining Supporting Creditor agrees to provide a copy of this Joinder Agreement to counsel to the Ad Hoc Group, FOMB, PREPA, and AAFAF in accordance with <u>Section 27</u> of this Definitive RSA.

5.  <u>Transfer Restrictions</u>. The Joining Supporting Creditor acknowledges that the RSA Marketmaker List is available at a URL to be posted on EMMA and acknowledges that during the RSA Marketmaker Period, so long as at least one RSA Marketmaker appears on the RSA Marketmakers List, it will be subject to the transfer restrictions set forth in <u>Section 6(c)</u> of the Definitive RSA and may only Transfer Uninsured Bonds to either (x) another Supporting Holder

or other Bond Qualified Transferee in accordance with Section 6(c)(i) of the Definitive RSA or (y) an RSA Marketmaker (and not any other Qualified Marketmaker), acting in its capacity as a Qualified Marketmaker in accordance with Section 6(c)(ii)(2) of the Definitive RSA.

\* \* \* \* \*

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Joining Supporting Creditor has caused this Joinder Agreement to be executed as of the date set forth above.

[NAME OF INSTITUTION]

By: _____
Name: _____
Title: _____
Address:
Attention:
Email:

Principal amount of Uninsured Bonds beneficially owned by Joining Supporting Creditor, or beneficially owned by accounts for which Joining Supporting Creditor has investment management responsibility, which it would be entitled to vote on in a plan (or a qualifying modification under Title VI of PROMESA) solicitation: $_____

Principal amount of Assured Insured Bonds beneficially owned by Joining Supporting Creditor, or beneficially owned by accounts for which Joining Supporting Creditor has investment management responsibility: $_____

Principal amount of Insured Bonds insured by National beneficially owned by Joining Supporting Creditor, or beneficially owned by accounts for which Joining Supporting Creditor has investment management responsibility: $_____

Principal amount of Insured Bonds insured by Syncora beneficially owned by Joining Supporting Creditor, or beneficially owned by accounts for which Joining Supporting Creditor has investment management responsibility: $_____

[Signature Page to Joinder Agreement to RSA]

**Exhibit B**
**RSA Marketmaker Joinder**