(a) Adopt a Restructuring Resolution that governs the Securitization Bonds that is irrevocable and not subject to amendment after the issuance of the Securitization Bonds.

(b) Execute and perform under (i) a Securitization Trust Agreement that governs and secures the Securitization Bonds and the repayment thereof from Transition Charge Revenues and (ii) the other Securitization Documents.

(c) Collect the Transition Charge Revenues subject to the terms and conditions of the Definitive Documents

(d) Issue the Securitization Bonds authorized under the RSA, issue swap counterparty security contemplated by the RSA, and incur obligations with respect to insurance premiums and DSRF sureties contemplated by the RSA (such Securitization Bonds, swap counterparty security and other obligations contemplated by the RSA collectively referred to as "**Secured Obligations**").

(e) Issue or assume such additional debt or obligations as may be permitted under the Securitization Trust Agreement, which shall, at a minimum, include, as set forth in the Securitization Term Sheet, (i) at the discretion of the Government Parties, any unpaid or underfunded pension obligations and (ii) Additional Permitted Indebtedness (collectively, the "**Permitted Indebtedness**").

(f) Take other actions necessary or appropriate to effectuate the Securitization Bond Treatment.

(g) Sue and be sued in Commonwealth or federal court.

(h) Grant consensual liens and security interests in the Restructuring Property to the Securitization Trustee for the benefit of the owners, beneficiaries or insurers (the Securitization Trustee and such beneficiaries, collectively, the "**Secured Parties**") of the Secured Obligations as additional security for such Secured Obligations.

2. Issuer shall not be authorized to (i) engage in any business activity other than as provided herein, (ii) own any assets or property other than Restructuring Property and property created in connection with or related to any Permitted Indebtedness except as permitted under the Securitization Trust Agreement and consistent with the RSA, (iii) incur or guaranty any other debt other than the Permitted Indebtedness and otherwise as permitted by the Securitization Trust Agreement, or (iv) dissolve while any Secured Obligation is outstanding.

3. The Issuer shall also be forbidden from (a) merging or consolidating with any other person, (b) except as permitted in the Securitization Trust Agreement and consistent with the RSA, permitting any liens on its assets other than those securing the Secured Obligations and any Permitted Indebtedness, (c) liquidating, selling or otherwise transferring the Restructuring Property other than as permitted by Securitization Trust Agreement, or (d) taking any other action that is inconsistent with the Issuer's purpose set forth in the Amended Act or ancillary thereto.

4. Under the Amended Act, the Issuer shall be expressly prohibited from filing a petition under Title III of PROMESA or any similar law for as long as the Secured Obligations are outstanding. The governance documents for the Issuer shall provide that neither the Issuer, nor the board of the Issuer or any officer of the Issuer shall request to effect, or desire to effect, a plan to adjust its debts

under Title III of PROMESA or any similar law for as long as the Secured Obligations are outstanding. The Confirmation Order shall provide that such provisions of the governance documents may not be amended, changed, or superseded for as long as any Secured Obligations are outstanding.

II.     **Transition Charge and Restructuring Property**

    A.     The legislation shall impose, without requiring the approval of the Puerto Rico Energy Bureau or other entity, a non-bypassable and unavoidable Transition Charge that shall be standard to utility securitizations, including any adjustments to the Transition Charge as may be agreed upon in the RSA, and demand protections as agreed upon in connection with the RSA.

    B.     Transition Charge shall not constitute a tax or available revenues under Puerto Rico law and shall not be revoked or terminated.

    C.     The Transition Charge will be collected by a designated servicer pursuant to a Servicing Agreement with the Issuer (the "Servicer"), which Servicer will collect the Transition Charge as agent of the Issuer, and not on its own behalf or on behalf of PREPA, the Government, or any other Government Entity or electric service provider, and the Transition Charge Revenues prior to their transfer to the Securitization Trustee shall be held in trust for the exclusive benefit of the Secured Parties. No person, other than the Securitization Trustee, who collects or holds the Transition Charge Revenues or other Restructuring Property shall have any legal or equitable right, title or interest thereto solely by virtue of such collection or holding.

        1.     The details of the billing and collection of the Transition Charge, the allocation of electric bill payments between Transition Charge Revenues and other payments (including in respect of partial payments of electric bills), and the transfer of Transition Charge Revenues to any third party depository and the Securitization Trustee shall be as set forth in the Securitization Documents.

        2.     In the event that a customer partially pays its electric bill, each of the Issuer, PREPA and the owners of other charges shall share pro rata in such partial payment regardless of any contrary instructions by the customer (subject to any fees and expenses that are paid prior to pro ration to the extent permitted by the Securitization Trust Agreement) and the Issuer's pro rata share shall form part of the Restructuring Property.

    D.     The Transition Charge shall not be subject to counterclaim or defense other than for miscalculation or misreporting of amount of energy delivered.

    E.     Restructuring Property shall be authorized in the legislation and created by the Restructuring Resolution, and shall continue to exist until all Secured Obligations are paid in full.

        1.     Restructuring Property shall constitute an existing, present, continuing and vested property right for all purposes whether or not the revenues and proceeds arising with respect thereto have accrued, whether or not all actions to impose and collect the Transition Charge have occurred, and even though its value depends on future provision of service.

    F.     The Issuer shall have sole ownership of the Restructuring Property, including all legal and equitable rights, title and interest thereto, subject, however, to all liens and pledges for Restructuring Property in favor of the Securitization Trustee for the benefit of the Secured Parties.

### III. Statutory Lien

A. The Secured Obligations shall automatically, upon their issuance or incurrence and until they are paid in full, be secured by a statutory first lien on the Restructuring Property, including any moneys, income, revenues, accounts, contract rights or general intangibles derived therefrom, in favor of the Securitization Trustee for the benefit of the Secured Parties.

B. Such statutory first priority lien shall occur automatically and shall automatically attach and be automatically perfected, valid and binding, in each case, from and after the issuance of the Securitization Bonds without any further act or agreement by any person. No instrument needs to be executed or delivered, recorded or otherwise filed in any official record or in any government registry or office in order to perfect or continue such statutory first lien or to establish or maintain the priority thereof.

C. No commingling of the Transition Charge with any property of (or possession by) PREPA, the Government, or any other Government Entity or any other person shall limit, defeat, impair or interfere with such statutory lien.

D. Such statutory lien, and any consensual lien or security interest granted pursuant to the Securitization Trust Agreement, shall be valid, binding, perfected (without the need for a UCC financing statement) and enforceable against all persons having claims of any kind in tort, contract or otherwise against the Issuer or its assets irrespective of whether such Persons have notice of such lien.

### IV. Servicer

A. The Servicer shall be authorized to interrupt or suspend service, use intercept provisions, take enforcement actions, or terminate System access for failure to pay the Transition Charge (and electric service providers shall be obligated to follow a Servicer direction to do the same) on the same terms and conditions as the Servicer is authorized to suspend service, use intercept provisions, take collection actions, or terminate System access for failure to pay for electric services.

B. Servicer shall be authorized to bill and collect the Transition Charge, to include Transition Charge on bills as a separate line item and to remit Transition Charge Revenues to the Securitization Trustee.

### V. Certain Covenants

A. The Government of Puerto Rico, with the intent of being contractually bound, will agree and covenant with the Issuer and each Secured Party, and will authorize the Issuer to include such covenant in the Securitization Trust Agreement for the benefit of the Secured Parties, that it will not, and no Government Entity shall be authorized to, until the Secured Obligations and all amounts and obligations under all transaction documents, have been completely paid in cash in full or otherwise discharged in accordance with their terms:

1. take any action that would (i) impair the Issuer's right to receive the Transition Charge, (ii) limit or alter the rights vested in the Issuer in accordance with the Plan to fulfill the terms of any agreements with Secured Parties, (iii) eliminate, decrease or modify the Transition Charge or Demand Protections, or (iv) impair the rights and remedies of the Secured Parties or their collateral security;

I-B- 4

provided, that nothing shall limit or impair the rights of any Government Entity in its capacity as a customer purchasing or using electricity services;

        2.    amend the Amended Act to impair, limit, restrict, rescind, delay or modify any obligation of the Issuer to the Secured Parties;

        3.    limit or restrict the rights or powers of the Issuer or Servicer to impose, maintain, charge or collect the Transition Charge;

        4.    impose charges, taxes, or other fees on electricity other than those directly associated with operation of the System, or authorize debt secured by Restructuring Property or any other rights or interest in electric rates or charges other than the Secured Obligations and Transition Charge provided for in the RSA, except charges supporting Permitted Indebtedness and otherwise as permitted by the Securitization Trust Agreement; and

        5.    take action to cause interest on any tax-exempt bonds to become taxable.

## VI. Remedies

A.    The Securitization Trustee may replace the Servicer after a default and, to the extent provided in the Securitization Trust Agreement, may foreclose on the Restructuring Property upon the occurrence of an event of default in accordance with the terms of the Securitization Trust Agreement.

B.    The Issuer, the Securitization Trustee, or subject to any limitations contained in the Securitization Trust Agreement, the other Secured Parties, may request the court to order the sequestration and payment of Transition Charge Revenues, notwithstanding any bankruptcy.

C.    The Secured Parties are authorized to enforce the provisions of the Amended Act, subject, in the case of the holders or insurers of the Securitization Bonds, to any limitations included in the Securitization Trust Agreement.

## VII. Successors to PREPA

A.    To come once Concessionaire is identified.

## VIII. Miscellaneous

A.    Title III court order on validity and enforceability of Secured Obligations, Transition Charge, and related documents is binding, and Title III court retains jurisdiction to hear all matters arising out of the Secured Obligations and Transition Charge for so long as any Securitization Bonds are outstanding under the Securitization Trust Agreement.

B.    Issuer, Transition Charge and the Secured Obligations shall not be subject to any Puerto Rico taxes or fees of any kind (including those levied by any Government Entity). The Transition Charge shall automatically increase to cover any Puerto Rico taxes or fees imposed that are not permitted under the Amended Act.

C.    The Puerto Rico UCC shall not apply to the statutory lien, consensual lien and property rights granted to the Issuer and/or Secured Parties under the Amended Act and Securitization Documents.

D. The Amended Act shall prevail in the event of a conflict with any other law of Puerto Rico.

E. The Securitization Trust Agreement, other Securitization Documents and the Secured Obligations shall be governed by and construed in accordance with the laws of the State of New York, except that the authorization and powers of the PREPA, AAFAF and the Issuer shall be governed by the laws of Puerto Rico.

F. Any disputes, legal action, suit, or proceeding arising from or related to the Securitization Trust Agreement or the Securitization Bonds (i) shall be brought in the Title III court and any appellate court therefrom or, in the event such court does not have or accept such jurisdiction, in any federal district court sitting in Puerto Rico and any appellate court therefrom or, in the event such federal district court does not have or accept jurisdiction, a New York court and any appellate court therefrom and (ii) the parties shall be deemed to consent to the jurisdiction thereof.

G. Inclusion of demand protections (and associated provisions on implementation and application), subject to agreement by parties and as applicable.

H. Inclusion of severability and language conflict provisions acceptable to the Required Parties.

I. The following laws or provisions shall not apply to the Issuer except as agreed to by the Required Parties:[23]

1. Chapters 4 and 6 of Act 26-2017, as amended, known as the "Fiscal Plan Compliance Act";

2. Act 1-2012, as amended, known as the "Puerto Rico Government Ethics Act of 2011";

3. Act 103 of May 25, 2006, as amended, known as the "Act for the Fiscal Reform of the Government of the Commonwealth of Puerto Rico of 2006;

4. Act 8-2017, as amended, known as the "Act for the Transformation of the Government's Human Resources";

5. Act 237-2004, as amended, known as the "Act to Establish Uniform Parameters for Contracting Professional and Consulting Services by Agencies and Instrumentalities of the Government of Puerto Rico";

6. Act 197-2002, as amended, known as the "Act to Regulate the Transition Process of the Government of Puerto Rico";

7. Act 78-2011, as amended, known as the "Electoral Code of Puerto Rico for the XXI Century";

---

[23] Subject to further diligence.

I-B- 6

8. Act 38-2017, known as the "Uniform Administrative Procedures Act of the Government of Puerto Rico";

9. Plan 3-2011, as amended, known as "General Services Administration Reorganization Plan";

10. Act 230 of July 23, 1974, as amended, known as the "Government Accounting Act";

11. Act 3-2017, known as the "Law to Address the Economic, Fiscal and Budgetary Crisis and Ensure the Functioning of the Government of Puerto Rico";

12. Act 14 of April 17, 1972, as amended;

13. Act 2-2017;

14. Act 5-2017;

15. Act 17-2019, known as the "Puerto Rico Energy Public Policy Act"; and

16. Section 6.25A of Act 57-2014.

I-B- 7

## ANNEX B TO RECOVERY PLAN TERM SHEET:

## STRUCTURE 1: CUSTODIAL TRUST

### SECTION 1: DEFINITIONS

Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Definitive RSA. In addition, the following capitalized terms shall have the following meanings:

**Acceleration Price:** With respect to an Assured Legacy Bond, an amount equal to the outstanding principal amount of such bond plus the accrued and unpaid interest thereon.

**Assured Acceleration Option:** Assured's right, in accordance with the terms of the Assured Insurance Policies, to accelerate its payment obligations with respect to all or any portion of the Assured Legacy Bonds at any time during the term thereof by paying the applicable Acceleration Price to the holders thereof.

**Assured Advancement Option:** Either (a) the Assured Acceleration Option or (b) the rights assigned by PREPA to Assured pursuant to Section 2(b) below to redeem the Assured Legacy Bonds and any related rights such that such rights may be exercised directly and exclusively by Assured as if it were PREPA for such purposes, with any amounts due and payable in connection with such redemption being equal to the lesser of the applicable redemption price and the applicable Acceleration Price.

**Assured Certificate Holder:** A beneficial holder of an Assured Certificate.

**Assured Certificate Holder Exchange Option:** Pursuant to the Assured Trust Agreement, the right of a holder of Assured Certificates with an aggregate unpaid principal amount that is equal to the Minimum Threshold or any integral multiple thereof to exchange such Assured Certificates for its pro rata share of related Assured Trust Assets (other than the related Assured Legacy Bonds CUSIP and related Assured Insurance Policy) in accordance with the terms and provisions of Section 2(c) hereof.

**Assured Certificate Holder Exchange Option No Exercise Period:** With respect to the exercise of any Assured Certificate Holder Exchange Option, any period specified in the definitive documentation for the Assured Certificates, as determined by Assured in its sole discretion to be necessary in order for the issuance of the Assured Certificates to be in compliance with certain securities law requirements, if any.

**Assured Certificates**: With respect to each Assured Trust that is formed for the benefit of the beneficial holders of an Assured Legacy Bonds CUSIP, the certificate(s) or receipt(s) to be issued by such Assured Trust to beneficial holders of such Assured Legacy Bonds CUSIP that are deposited into such Assured Trust.

**Assured Legacy Bonds Distribution:** The distribution, consisting of Securitization Bonds allocable to the holders of the Assured Legacy Bonds (and any other property as provided in the

1

Plan, which, if Assured elects to insure such Securitization Bonds, shall include the applicable insurance policy insuring such Securitization Bonds), but excluding (A) Securitization Bonds allocable to holders of Assured Insured Bonds other than Assured Legacy Bonds, (B) Securitization Bonds allocable to Assured as a beneficial owner of Uninsured Bonds, (C) Securitization Bonds that Assured is otherwise entitled to receive in accordance with the terms of the Definitive RSA, or (D) any other consideration that Assured is entitled to receive in accordance with the terms of the Definitive RSA (including, without limitation, consideration on account of fees or insurance premiums).

**Assured Insurer Event:** A default by Assured on its payment obligations under an applicable Assured Insurance Policy, which default is continuing.

**Assured Legacy Bonds:** Any Assured Insured Bonds (i) with respect to which Assured does not exercise the Assured Election and (ii) the beneficial holders of which have not elected Assured Bondholder Election 1 or Assured Bondholder Election 3.

**Assured Legacy Bonds CUSIP:** Any maturity of Assured Legacy Bonds that bears a unique CUSIP such that such maturity of Assured Legacy Bonds is separately identifiable from other maturities of Assured Legacy Bonds with unique CUSIPs.

**Assured Original Scheduled Payment Date:** Each date on which scheduled payments are due in respect of the Assured Legacy Bonds in accordance with the terms of the Assured Insurance Policies.

**Assured Trust:** With respect to each Assured Legacy Bonds CUSIP, a separate trust or custodial arrangement that will be formed, on or prior to the Effective Date, by PREPA, at the sole cost and expense of Assured, and for the benefit of the beneficial holders of such Assured Legacy Bonds CUSIP, in accordance with the terms and provisions of Section 2 hereof.

**Assured Trust Agreement:** The agreement to be entered into by Assured, the Assured Trustee, and PREPA, as of the Effective Date, and governing the treatment of each Assured Trust.

**Assured Trust Assets:** With respect to each Assured Trust that is formed for the benefit of the beneficial holders of an Assured Legacy Bonds CUSIP, (a) such Assured Legacy Bonds CUSIP (including the related Assured Insurance Policy), (b) the pro-rata share of each asset comprising the Assured Legacy Bonds Distribution that is allocable to beneficial holders of such Assured Legacy Bonds CUSIP based on the Acceleration Price of such Assured Legacy Bonds CUSIP as of the Effective Date and the Acceleration Price of all Assured Legacy Bonds as of the Effective Date, and (c) any proceeds of any of the foregoing.

**Assured Trustee:** The trustee or custodian of each Assured Trust established in accordance with the terms and provisions of Section 2 hereof, which in each case shall be an entity selected by Assured that is a nationally recognized U.S. domiciled financial institution and fiduciary regularly acting as trustee in the municipal finance market.

**Minimum Threshold:** With respect to any Assured Certificates, the lowest principal amount of such Assured Certificates that would result in the pro rata share of the holder of such principal amount of Assured Certificates in the Tax-Exempt Securitization Bonds and the Taxable

Securitization Bonds comprising the Assured Trust Assets being equal to the sum of the minimum authorizing denomination for each maturity of such Tax-Exempt Securitization Bonds and Taxable Securitization Bonds.

**Secondary Market Assured Legacy Bonds:** The Assured Legacy Bonds that are insured through insurance issued in the secondary market.

**Taxable Securitization Bonds:** Tranche B Bonds that are issued as taxable bonds.

**Tax-Exempt Securitization Bonds:** Collectively, (a) Tranche A Bonds, and (b) Tranche B Bonds that are issued as tax-exempt bonds.

## SECTION 2: TERMS OF ASSURED TRUSTS

(a) **General Terms:** In the event that (i) Assured declines to exercise the Assured Election with respect to all Assured Insured Bonds and (ii) any Assured Legacy Bonds exist as of the Effective Date (i.e., Assured Insured Bonds with respect to which Assured has not exercised the Assured Election and the beneficial holders of which have not elected Assured Bondholder Election 1 or Assured Bondholder Election 3), a separate Assured Trust shall be formed on behalf of, and for the benefit of, beneficial holders of each Assured Legacy Bonds CUSIP. The Assured Trustee of each Assured Trust shall be an entity selected by Assured that is a nationally recognized U.S. domiciled financial institution and fiduciary regularly acting as trustee in the municipal finance market. On behalf of beneficial holders of Assured Insured Bonds, PREPA shall assist, to the extent reasonably necessary, in the creation of the Assured Trusts. PREPA shall not have any other obligations with respect to the Assured Trusts or the Assured Certificates, including, without limitation, with respect to the qualification of the Assured Certificates as "eligible securities" with the Depositary Trust Company.

On the Effective Date, by electing (or being deemed to have elected) Assured Bondholder Election 2, each beneficial holder of an Assured Legacy Bonds CUSIP shall be deemed to have exchanged and deposited into the Assured Trust that is formed for the benefit of beneficial holders of such Assured Legacy Bonds CUSIP (1) such Assured Legacy Bonds CUSIP and (2) the Assured Trust Assets allocable to such holder, in exchange for one or more Assured Certificates issued by such Assured Trust and evidencing a pro-rata beneficial ownership interest in the related Assured Trust Assets. In furtherance of such Assured Bondholder Election and solely on behalf of such holders, on the Effective Date, PREPA and the Issuer, as applicable, shall concurrently with the exchange described in the immediately preceding sentence, deposit the applicable Assured Trust Assets (other than the Assured Legacy Bonds) into each of the Assured Trusts. The Assured Trust Assets shall not be property of PREPA or the Issuer, but shall be held by the Assured Trustee, and the establishment of the Assured Trusts is, solely for the benefit of the Assured Certificate Holders and Assured (to the extent that Assured is subrogated to the rights of the holders of the Assured Certificate Holders) in accordance with the terms of the Assured Trust Agreement. The Assured Certificate Holders shall be the "tax owners" of the Assured Trust Assets for Federal income tax purposes.

By electing (or being deemed to have elected) Assured Bondholder Election 2, the beneficial holders of Assured Legacy Bonds shall be deemed to have directed each securities intermediary

for such Assured Legacy Bonds (including, without limitation, the Depository Trust Company) to take any action that is necessary to effect the transfer of securities entitlements with respect to such Assured Legacy Bonds and the related Assured Certificates in its book-entry systems and/or on its books and records, as applicable, in order to give effect to the provisions of the immediately preceding paragraph. Each such securities intermediary shall promptly comply with such deemed direction. Until the Depository Trust Company effects the transfer of securities entitlements with respect to Assured Legacy Bonds to a securities account designated by the Assured Trustee and established for the benefit of the respective Assured Trust, the Trustee (or custodian in the case of Secondary Market Assured Legacy Bonds) shall disburse any payments received under the respective Assured Insurance Policies directly to the Assured Trustee for the benefit of the respective Assured Trusts (rather than such payments being made through the Depository Trust Company), and Assured shall be authorized (but not required) to make any payments under such Assured Insurance Policies directly to the Assured Trustee for the benefit of the respective Assured Trusts (rather than such payments being made through the Trustee or custodian, as applicable, and the Depositary Trust Company).

Except (a) as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, (b) for purposes of evidencing a right to distribution under the Plan, or (c) as specifically provided otherwise in the Plan, on the Effective Date, the Assured Legacy Bonds and all instruments and documents related thereto shall be automatically cancelled, terminated and of no further force or effect against PREPA without any further act or action under any applicable agreement, law, regulation, order or rule, with PREPA and the Trustee having no continuing obligations or duties and responsibilities thereunder, and the obligations of the parties to PREPA, as applicable, under the Assured Legacy Bonds and all instruments and documents related thereto shall be discharged; **provided, however**, that, notwithstanding anything contained herein to the contrary, the Assured Legacy Bonds and such other instruments and documents shall continue in effect solely (i) to allow all distributions as set forth in the Plan and to perform other necessary administrative or other functions with respect thereto; (ii) to allow holders of Allowed Claims to receive distributions in accordance with the terms and provisions of the Plan; (iii) for any trustee, agent, contract administrator or similar entity under all instruments and documents related thereto, including the Trustee, to perform necessary functions, including making distributions, in accordance with the Plan and to have the benefit of all the rights and protections and other provisions of such instruments and documents, as applicable, and all other related agreements with respect to priority in payment and lien rights with respect to any distribution; (iv) to set forth the terms and conditions applicable to parties to such documents and instruments other than PREPA; or (v) as may be necessary to preserve any claims under the respective Insurance Policies by the applicable holders of Assured Legacy Bonds that validly elected (or are deemed to have validly elected) to receive Assured Certificates. Notwithstanding the foregoing, and except as otherwise expressly provided in the Plan, such bonds or bond documents as remain outstanding shall not form the basis for the assertion of any Claim against PREPA or the Issuer, as the case may be.

The Assured Certificates shall entitle an Assured Certificate Holder to its pro rata share of value in any distribution of cash from the respective Assured Trust, which distribution shall (a) in all cases, occur promptly upon receipt thereof by such Assured Trust and (b) automatically reduce the obligation outstanding under the respective Assured Insurance Policies as of the date of such distribution to Assured Certificate Holders in the amount of such distribution, as determined by

4

Assured in its sole discretion. On each Assured Original Scheduled Payment Date for any Assured Legacy Bonds, Assured shall be obligated to pay any remaining amount of the scheduled payment that is due for payment in accordance with the terms of the respective Assured Insurance Policy after giving effect to any reduction pursuant to the immediately preceding sentence. Upon repayment, redemption or other retirement of all Assured Certificates issued by an Assured Trust (including, without limitation, as a result of the exercise of the Assured Advancement Option as set forth in Section 2(b) hereof or the satisfaction of all of Assured's payment obligations under the respective Assured Insurance Policy), Assured shall be entitled to receive all remaining Assured Trust Assets of such Assured Trust. At any time on or after the date of receipt of such Assured Trust Assets, Assured shall have the right to sell all or any of the Tax-Exempt Securitization Bonds and/or Taxable Securitization Bonds comprising such Assured Trust Assets.

Each series of Assured Certificates shall bear unique CUSIPs and shall be freely tradable and transferable through the Depository Trust Company. So long as an Assured Insurer Event is not occurring under the applicable Assured Insurance Policy, Assured shall be deemed the sole holder of the Securitization Bonds deposited in the respective Assured Trusts with respect to voting, amendment, acceleration, events of default and election and direction of rights and remedies, including, without limitation, in connection with insolvency proceedings. In addition, Assured shall be fully subrogated to the rights of the respective Assured Certificate Holders in respect of the Securitization Bonds deposited in the respective Assured Trusts.

(b) **Assured Advancement Option:** Assured shall have the right to exercise the Assured Acceleration Option at any time. In addition, on the Effective Date, PREPA shall assign to Assured any rights to redeem the Assured Legacy Bonds and any related rights such that such rights may be exercised directly and exclusively by Assured. Upon the exercise of any Assured Advancement Option and the payment of the Acceleration Price with respect to any Assured Legacy Bonds CUSIP, the Assured Trustee shall be required to disburse such Acceleration Price to the related Assured Certificate Holders as set forth in Section 2(a) above, and Assured shall become fully subrogated to all of the rights of such Assured Certificate Holders. Upon the disbursement of such Acceleration Price to the related Assured Certificate Holders, the related Assured Certificates shall be retired, the related Assured Trust shall be terminated, and the Assured Trustee shall deliver the related Assured Trust Assets to or at the direction of Assured. At any time on or after the date of receipt of such Assured Trust Assets, Assured shall have the right to sell all or certain of the Tax-Exempt Securitization Bonds constituting part of the Assured Trust Assets for value as tax-exempt bonds and all or certain of the Taxable Securitization Bonds constituting part of the Assured Trust Assets for value as taxable bonds.

(c) **Assured Certificate Holder Exchange Option:** Pursuant to the Assured Trust Agreement, a holder of Assured Certificates with an aggregate unpaid principal amount that is equal to the Minimum Threshold or any integral multiple thereof shall have the right to exercise the Assured Certificate Holder Exchange Option by exchanging such Assured Certificates for such holder's pro rata share of related Assured Trust Assets (other than the related Assured Legacy Bonds CUSIP and related Assured Insurance Policy). Upon the exercise of such Assured Certificate Holder Exchange Option, (i) the exchanging holder's pro rata share of the Assured Legacy Bonds on deposit in the respective Assured Trust shall be deemed to be

no longer outstanding for purposes of the related Assured Insurance Policy and such exchanging holder shall relinquish its rights under such Assured Insurance Policy, and (ii) the Assured Trustee shall effect the cancellation of such Assured Certificates. The Assured Trust Agreement may provide, at Assured's option, that the Assured Certificate Holder Exchange Option may be exercised only (i) after the expiration of any Assured Certificate Holder Exchange Option No Exercise Period and (ii) upon a written notice of such exercise that must be provided prior to the effective date of such exercise such that the effective date occurs after the lapse of any Assured Certificate Holder Exchange Option Notice Period. For the avoidance of doubt, each beneficial holder of Assured Certificates that has not exercised its Assured Certificate Holder Exchange Option on any day on which such option may be exercised (including the first day on which such option may be exercised at the time the applicable Assured Trust is created) shall be deemed to have elected to deposit and hold (or continue to hold) its pro-rata share of the Securitization Bonds and any other assets comprising the related Assured Trust Assets in the related Assured Trust until such beneficial holder has validly exercised such option.

      (d) **Secondary Market Assured Legacy Bonds:** On the Effective Date, each bond certificate that currently evidences both Secondary Market Assured Legacy Bonds and any other Bonds bearing the same CUSIP shall be exchanged for two separate bond certificates with different CUSIPs but otherwise identical terms – one evidencing the Secondary Market Assured Legacy Bonds and the other evidencing such other Bonds. After giving effect to such exchange, Secondary Market Assured Legacy Bonds shall have a unique CUSIP. Concurrently with such exchange, by electing (or being deemed to have elected) Assured Bondholder Election 2, each beneficial holder of custody receipts evidencing a beneficial ownership interest in the Secondary Market Assured Legacy Bonds with a unique CUSIP and the respective Assured Insurance Policy shall be deemed to have deposited such custody receipts into the respective Assured Trust in exchange for Assured Certificates evidencing a pro-rata beneficial ownership interest in the related Assured Trust Assets, which shall consist of such custody receipts and the assets described in clause (b) and (c) of the definition thereof and otherwise shall be subject to the terms set forth in Section 2 hereof.

## STRUCTURE 2: ESCROW

## SECTION 1: DEFINITIONS

Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Definitive RSA. In addition, the following capitalized terms shall have the following meanings:

**Acceleration Price:** With respect to an Assured Legacy Bond, an amount equal to the outstanding principal amount of such bond plus the accrued and unpaid interest thereon.

**Assured Acceleration Option:** Assured's right, in accordance with the terms of the Assured Insurance Policies, to accelerate its payment obligations with respect to all or any portion of the Assured Legacy Bonds at any time during the term thereof by paying the applicable Acceleration Price to the holders thereof.

**Assured Advancement Option:** Either (a) the Assured Acceleration Option or (b) the rights assigned by PREPA to Assured pursuant to Section 2 below to redeem the Assured Legacy Bonds and any related rights such that such rights may be exercised directly and exclusively by Assured as if it were PREPA for such purposes, with any amounts due and payable in connection with such redemption being equal to the lesser of the applicable redemption price and the applicable Acceleration Price.

**Assured Escrow Property:** Property consisting of (i) Securitization Bonds, (ii) if Assured elects to insure such Securitization Bonds, the applicable insurance policy insuring such Securitization Bonds, and (iii) solely at Assured's option, any other property, allocable with respect to the Assured Legacy Bonds under the Plan, but excluding (A) Securitization Bonds allocable to holders of Assured Insured Bonds other than Assured Legacy Bonds, (B) Securitization Bonds allocable to Assured as a beneficial owner of Uninsured Bonds, (C) Securitization Bonds that Assured is otherwise entitled to receive in accordance with the terms of the Definitive RSA, or (D) any other consideration that Assured is entitled to receive in accordance with the terms of the Definitive RSA (including, without limitation, consideration on account of fees or insurance premiums).

**Assured Insurer Event:** A default by Assured on its payment obligations under an applicable Assured Insurance Policy, which default is continuing.

**Assured Legacy Bonds:** Any Assured Insured Bonds (i) with respect to which Assured does not exercise the Assured Election and (ii) the beneficial holders of which have not elected Assured Bondholder Election 1 or Assured Bondholder Election 3.

**Assured Legacy Bonds CUSIP:** Any maturity of Assured Legacy Bonds that bears a unique CUSIP such that such maturity of Assured Legacy Bonds is separately identifiable from other maturities of Assured Legacy Bonds with unique CUSIPs.

7

**Assured Original Scheduled Payment Date:** Each date on which scheduled payments are due in respect of the Assured Legacy Bonds in accordance with the terms of the Assured Insurance Policies.

**Escrow Collateralization Ratio**: With respect to any date, a ratio obtained by dividing the value of the Assured Escrow Property as of such date with the Acceleration Price of the outstanding Assured Legacy Bonds as of such date.

**Legal Defeasance:** The legal defeasance of the Assured Legacy Bonds in accordance with Section 2 hereof such that the Assured Legacy Bonds are no longer outstanding other than for the purposes set forth in Section 2 related to the Assured Insurance Policies.

**Secondary Market Assured Legacy Bonds:** The Assured Legacy Bonds that are insured through insurance issued in the secondary market.

### SECTION 2: TERMS OF ASSURED ESCROW AGREEMENT

(a) **General Terms:** In the event that (i) Assured does not exercise the Assured Election with respect to all Assured Insured Bonds and (ii) as of the Effective Date, there are Assured Legacy Bonds (i.e., Assured Insured Bonds with respect to which Assured has not exercised the Assured Election and the beneficial holders of which have not elected Assured Bondholder Election 1 or Assured Bondholder Election 3), PREPA, Assured, and [], as escrow agent (the "Escrow Agent"), shall enter into an escrow agreement (the "Escrow Agreement") on the Effective Date. Pursuant to the Escrow Agreement, and except as otherwise provided in Section 2(b) below, (1) Assured shall agree to the Legal Defeasance of all of the Assured Legacy Bonds, and that Assured's sole recourse in respect of its subrogation rights is to the Assured Escrow Property, and (2) in consideration for the Legal Defeasance, PREPA shall concurrently deliver the Assured Escrow Property to or at the direction of Assured. Assured shall agree to the Legal Defeasance as the "sole owner" of the Assured Legacy Bonds for purposes of exercising rights and remedies under the Assured Legacy Bonds, and necessary amendments to the Trust Agreement shall be made in order to effectuate the Legal Defeasance.

At the direction of Assured, PREPA shall deliver the Assured Escrow Property to the Escrow Agent as security for Assured's obligations under the Assured Insurance Policies to the holders of the Assured Legacy Bonds. The Assured Escrow Property and any proceeds thereof shall not be property of PREPA or the Issuer, but shall be held by the Escrow Agent in an irrevocable trust solely for the benefit of Assured and the holders of the Assured Legacy Bonds in accordance with the terms of the Escrow Agreement. Assured shall be the "tax owner" of the Assured Escrow Property, and the Escrow Agreement shall constitute a "security device" with respect to Assured's obligations under the Assured Insurance Policies for Federal income tax purposes.

On each Assured Original Scheduled Payment Date, Assured shall be obligated to pay the full amount of the scheduled payment due in accordance with the terms of the Assured Insurance Policies. Pursuant to the Escrow Agreement, and except as otherwise provided in Section 2(b) below, on or after each Assured Original Scheduled Payment Date, the Escrow Agent shall apply any cash proceeds of the Assured Escrow Property that are available on such date to pay Assured an amount up to the amount of any scheduled payment that Assured made under the Assured