**Schedule VI**

# Puerto Rico Electric Power Authority

## Supplemental Schedule of Changes in Long-Term Debt and Current Portion of Long-Term Debt

Years Ended June 30, 2011 and 2010
*(In Thousands)*

|  | 2011 | 2010 |
|---|---:|---:|
| **Long-term debt, excluding current portion:** | | |
| **Balance at beginning of year** | $ 7,399,746 | $ 5,775,827 |
| Transfers to current liabilities: | | |
| Power revenue bonds | (183,577) | (3,953) |
| Notes payable | (178,610) | |
| Payment of general obligation notes: | | |
| Notes payable | (36,119) | (234,610) |
| Remainder | 7,001,440 | 5,537,264 |
| | | |
| New Issues: | | |
| Power revenue bonds | 355,730 | 1,536,105 |
| Power revenue refunding bonds | 218,225 | 994,235 |
| Debt discount and excess reacquisition costs on new bond issues - net | (10,548) | 43,621 |
| Defeasance of bonds | (215,940) | (965,094) |
| Debt discount and excess reacquisition costs on cancelled bonds - net | 15,767 | 40,734 |
| Notes payable | 172,062 | 212,881 |
| **Balance at end of year** | $ 7,536,736 | $ 7,399,746 |
| | | |
| **Current portion of long-term debt:** | | |
| **Balance at beginning of year** | $ 187,368 | $ 1,067,310 |
| Transfer from long-term debt | 362,187 | 3,953 |
| Payments to bondholders: | | |
| Power revenue- July 1 | – | (172,640) |
| Power revenue- January 1 | – | (422) |
| Payment of general obligation notes | – | (721,231) |
| Total payments | – | (894,293) |
| | | |
| Amortization of debt discount and excess reacquisition costs | 2,697 | 10,398 |
| **Balance at end of year** | $ 552,252 | $ 187,368 |

Ernst & Young LLP

Assurance | Tax | Transactions | Advisory

About Ernst & Young
Ernst & Young is a global leader in assurance,
tax, transaction and advisory services.
Worldwide, our 144,000 people are united
by our shared values and an unwavering
commitment to quality. We make a difference
by helping our people, our clients and our wider
communities achieve their potential.

www.ey.com



[THIS PAGE INTENTIONALLY LEFT BLANK]

**URS**

APPENDIX III

April 12, 2012

Puerto Rico Electric Power Authority
San Juan, Puerto Rico

Dear Sirs:

URS Corporation ("URS") serves as the Consulting Engineers under the provisions of the Trust Agreement, dated as of January 1, 1974, as amended, by and between Puerto Rico Electric Power Authority (the "Authority") and U.S. Bank Trust National Association, in the Borough of Manhattan, City and State of New York, successor trustee. Such Trust Agreement is referred to herein as the "Agreement", and the trustee under the Agreement is referred to herein as the "Trustee". The Agreement requires the Consulting Engineers annually to prepare and file with the Authority and the Trustee a report with their recommendations as to any necessary or advisable revisions of rates and charges and such other advices and recommendations as they may deem desirable. In addition, in accordance with the Agreement the report includes the amount that should be deposited monthly during the next fiscal year to the credit of the Reserve Maintenance Fund; the amount, if any, to be deposited to the Self-insurance Fund in the next fiscal year; and, the amount to be deposited to the Capital Improvement Fund in the next fiscal year. The most recent annual report provided to the Authority and the Trustee was dated as of June 2011.

In preparing this letter and in reaching the conclusions and opinions contained herein and referred to in the Official Statement to which this letter is appended, URS has relied upon inquiries, observations and analyses made and conducted by it in the performance of its duties under the Agreement and upon its professional experience. URS also has relied upon various financial, economic, political and other information and projections provided to it by the Authority and other sources, some of such information and projections having been accepted by URS without it having conducted an independent investigation thereof. In addition, URS has made assumptions which it believes to be reasonable to make including, but not limited to, the following:

1. that the Authority will adhere to its proposed schedule of programmed regular maintenance;

2. that the Authority will continue to maintain the effective availability of its operable generating units;

3. that the Authority's forecasts of costs and availability of fuels are reasonable;

URS Corporation
One Canal Park
Cambridge, MA 02141
Tel: 617.621.0740
Fax: 617.621.9739

III-1

**URS**

4. that financing will be available to the Authority at reasonable rates, in adequate amounts and at appropriate times;

5. that the Authority will not be adversely affected by labor disputes and will have adequate levels of labor productivity;

6. that the Authority's budgets for operation, maintenance, and capitalized projects in fiscal years 2013 and beyond will continue to provide adequate funding of activities and projects to maintain the long term reliable and efficient operation of the System and its equipment;

7. that the Authority will reasonably comply with the projected budgets of the Capital Improvement Program and Current Expenses, excluding fuel and purchased power, included in the Official Statement to which this letter is appended;

8. that there will be no material changes in the requirements of regulatory authorities and that the Commonwealth and Legislature of Puerto Rico will not enact any regulation or legislation that will materially affect the Authority's projected Net Revenues adversely — these could include, but are not limited to, the financings and operations of the proposed natural gas infrastructure projects which are not included in the Authority's Capital Improvement Program and the Economic Incentives Act regarding wheeling and certain industrial client tax credits to be paid by the Authority as described in the Official Statement to which this letter is appended;

9. that there will be no unforeseen technological developments;

10. that the demographic, statistical, economic and other information regarding Puerto Rico obtained by URS from publicly available sources is reliable;

11. that the Authority will not be unduly affected by natural disasters; and

12. that the Authority will not experience unforeseeable or extraordinary conditions not included in usual estimates and opinions of engineers.

Based upon and subject to the foregoing which should be read in conjunction with and as part of the following conclusions, it is our considered opinion with respect to the Authority that:

1. the Authority's revenue and generation planning forecasts (and the methodologies and assumptions on which they are based) are reasonable for planning purposes and are generally consistent with electric utility industry practices;

**URS**

2. the Authority's projections of future load growth and estimates of peak load referred to in the Official Statement, to which this letter is appended, under the caption "Adequacy of Capacity" are reasonable for base planning purposes;

3. the Authority's generating capacity expansion plan referred to in the Official Statement, to which this letter is appended, under the caption "Adequacy of Capacity" is adequate and should allow the Authority to meet targeted electric reliability criteria;

4. the Authority's production, transmission and distribution plant is in good repair and sound operating condition;

5. the Authority's current projected capital improvement program is reasonable and the estimated expenditures are consistent with the Authority's future needs;

6. the Authority's estimates of future growth form a reasonable basis for its projected operating results;

7. the Authority's electric rates and charges should generate sufficient revenues to pay its current expenses and debt service and to meet the Trust Agreement obligations for deposits into certain Funds from current operating revenues; and

8. the 961 MW of capacity presently being provided by the two cogenerators described in the Official Statement to which this letter is appended, and their role in the Authority's System should not cause the Authority to experience a meaningful reduction in control over its revenue producing capability as a result of the purchase rather than self-generation of electricity.

Sincerely,

URS CORPORATION

George W. Romano, Jr.
Consulting Manager

[THIS PAGE INTENTIONALLY LEFT BLANK]

APPENDIX IV

**Upon delivery of the Bonds in definitive form, Nixon Peabody LLP, New York, New York, Bond Counsel to the Authority, proposes to render its final approving opinion in substantially the following form:**

437 Madison Avenue<br>
New York, New York 10022<br>
(212) 940-3000<br>
Fax: (212) 940-3111

May 1, 2012

Puerto Rico Electric Power Authority
San Juan, Puerto Rico

    Re:    $630,110,000 Power Revenue Bonds, Series 2012A and
              $19,890,000 Power Revenue Refunding Bonds, Series 2012B

Ladies and Gentlemen:

    We have served as bond counsel in connection with the issuance by the Puerto Rico Electric Power Authority (the "Authority"), a governmental instrumentality of the Commonwealth of Puerto Rico, of its $630,110,000 aggregate principal amount of Power Revenue Bonds, Series 2012A (the "Series 2012A Bonds") and $19,890,000 aggregate principal amount of Power Revenue Refunding Bonds, Series 2012B (the "Series 2012B Bonds," and together with the Series 2012A Bonds, the "Bonds"). The Bonds are dated, mature on July 1 of the years and in such principal amounts, bear interest at the rates and are subject to redemption, all as set forth or provided for in the Resolution referred to herein. The Bonds are issuable as fully registered bonds without coupons, in authorized denominations of $5,000 or any multiple thereof, in the manner and in accordance with the terms and conditions of the Resolution.

    In our capacity as bond counsel, we have examined the transcript of the proceedings (the "Transcript") of the Authority relating to the issuance of the Bonds, including, without limitation, Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended and re-enacted by Act No. 19, approved April 8, 1942, as amended, creating the Authority (formerly called Puerto Rico Water Resources Authority) and Act No. 111, approved May 6, 1941, as amended by Act No. 153, approved May 14, 1943 (said Acts No. 83, No. 19, No. 111 and No. 153, as amended, being herein collectively referred to as the "Authority Act"); the Trust Agreement, dated as of January 1, 1974, as amended (the "Trust Agreement"), by and between the Authority and U.S. Bank National Association, as successor trustee; Resolution No.    , duly adopted by the Authority on April 12, 2012 (the "Resolution"); and such other documents as we have deemed necessary to render this opinion. Capitalized words used herein without definitions have the meanings ascribed thereto in the Trust Agreement or the Resolution, as applicable.

    We have also examined one of said Series 2012A Bond and one of said Series 2012B Bond, as executed and authenticated. We assume that all other such Bonds have been similarly executed and authenticated.

IV-1

Puerto Rico Electric Power Authority  May 1, 2012
Page 2

From such examination, we are of the opinion that:

1. The Authority Act is valid.

2. Said proceedings have been validly and legally taken.

3. The Series 2012A Bonds have been duly authorized and issued to provide funds to (i) finance a portion of the cost of various projects under its capital improvement program, (ii) repay certain advances made to the Authority by Government Development Bank for Puerto Rico under a line of credit facility to (a) pay a portion of the interest due on January 1, 2012 and July 1, 2012 on the Authority's outstanding Power Revenue Bonds and (b) pay a portion of the principal due on July 1, 2012 on the Authority's outstanding Power Revenue Bonds, (iii) pay capitalized interest on the Series 2012A Bonds through January 1, 2015, (iv) fund a deposit to the Reserve Account in the Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund (the "Sinking Fund") and (v) pay the costs of issuance of the Series 2012A Bonds.

4. The Series 2012B Bonds have been duly authorized and issued to provide funds to (i) refund certain outstanding bonds of the Authority and (ii) pay the costs of issuance of the Series 2012B Bonds.

5. The Trust Agreement provides for the issuance of additional bonds, from time to time, under the conditions, limitations and restrictions therein set forth.

6. The Bonds are valid and binding special obligations of the Authority, payable solely from the Sinking Fund established under the Trust Agreement, to the credit of which Fund the Authority has covenanted to deposit a sufficient amount of the revenues of the System, over and above the expenses of repair, maintenance and operation, to pay the principal of and the interest on all bonds issued under the provisions of the Trust Agreement as the same become due and payable and to create a reserve for such purpose, which Fund is pledged to and charged with the payment of the principal of and the interest on all bonds issued under the provisions of the Trust Agreement.

7. The Trust Agreement provides for the fixing and collecting by the Authority of rates and charges for the use of the services and facilities of the System sufficient for the payment of the expenses of the Authority incurred in the repair, maintenance and operation of the System and for the payment of the principal of and the interest on all bonds issued under the provisions of the Trust Agreement as the same become due and payable, including reserves for such purposes.

8. The bonds issued under the provisions of the Trust Agreement, including the Bonds, do not constitute a debt of the Commonwealth of Puerto Rico or of any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipality or other political subdivision is liable thereon, and such bonds, including the Bonds, are payable only out of the revenues of the System, to the extent provided in the Trust Agreement.

9. The Internal Revenue Code of 1986 (the "Code") sets forth certain requirements which must be met subsequent to the issuance and delivery of the Bonds for interest thereon to be and remain excluded from gross income for Federal income tax purposes. Noncompliance with such requirements could cause the interest on the Bonds to be included in gross income for Federal income tax purposes retroactive to the date of issue of the Bonds. Pursuant to the Resolution and the Tax Certificate as to

Puerto Rico Electric Power Authority  
May 1, 2012  
Page 3

Arbitrage and the Provisions of Sections 103 and 141-150 of the Internal Revenue Code of 1986 of even date herewith (the "Tax Certificate"), the Authority has covenanted to comply with the applicable requirements of the Code in order to maintain the exclusion of the interest on the Bonds from gross income for Federal income tax purposes pursuant to Section 103 of the Code. In addition, the Authority has made certain representations and certifications in its Resolution and Tax Certificate. We have not undertaken to independently verify the accuracy of those certifications and representations.

Under existing law, assuming compliance with the aforementioned tax covenants and the accuracy of the aforementioned representations and certifications, interest on the Bonds is excluded from gross income for Federal income tax purposes under Section 103 of the Code. We are also of the opinion that such interest is not treated as a preference item in calculating the alternative minimum tax imposed under the Code with respect to individuals and corporations. Bond Counsel is also of the opinion that such interest is not treated as a preference item in calculating the alternative minimum tax imposed under the Code with respect to individuals and corporations. Interest on the Bonds is, however, included in the adjusted current earnings of certain corporations for purposes of computing the alternative minimum tax imposed on such corporations.

10. The difference between the principal amount at maturity of the Series 2012A Bonds maturing July 1, 2029 bearing interest at a rate of 4.80%, July 1, 2042 bearing interest at a rate of 5.00% and July 1, 2042 bearing interest at a rate of 5.05% (collectively the "Discount Bonds") and the initial offering price to the public (excluding bond houses, brokers or similar persons or organizations acting in the capacity of underwriters or wholesalers) at which price a substantial amount of such Discount Bonds of the same maturity was sold constitutes original issue discount which is excluded from gross income for Federal income tax purposes to the same extent as interest on the Series 2012A Bonds. Further, such original issue discount accrues actuarially on a constant interest rate basis over the term of each Discount Bond and the basis of each Discount Bond acquired at such initial offering price by an initial purchaser thereof will be increased by the amount of such accrued original issue discount. The accrual of original issue discount may be taken into account as an increase in the amount of tax-exempt income for purposes of determining various other tax consequences of owning the Discount Bonds, even though there will not be a corresponding cash payment.

11. The interest on the Bonds is exempt from state, Commonwealth and local income taxation.

In rendering the opinions set forth herein, we have assumed the accuracy and truthfulness of all public records and of all certifications, documents and other proceedings examined by us that have been executed or certified by public officials acting within the scope of their official capacities and have not verified the accuracy or truthfulness thereof. We have also assumed the genuineness of the signatures appearing upon such public records, certifications, documents and proceedings. As to questions of fact material to our opinion, we have relied on representations of the Authority furnished to us, without undertaking to verify such representations by independent investigation.

Except as stated in paragraphs 9 through 11, we express no opinion as to any other Federal, state, Commonwealth, local or foreign tax consequences with respect to the Bonds.

We express no opinion as to any Federal, state, Commonwealth or local tax law consequences with respect to the Bonds, or the interest thereon, if any action is taken with respect to the Bonds or the proceeds thereof upon the advice or approval of other bond counsel.

Puerto Rico Electric Power Authority  May 1, 2012
Page 4

    The opinions set forth above are subject to the effect of, and restrictions and limitations imposed by or resulting from, bankruptcy, insolvency, debt adjustment, moratorium, reorganization or other similar laws affecting creditors' rights generally and subject to general principles of equity (regardless of whether considered in a proceeding in equity or at law).

                                Respectfully submitted,

[THIS PAGE INTENTIONALLY LEFT BLANK]

[THIS PAGE INTENTIONALLY LEFT BLANK]

PUERTO RICO ELECTRIC POWER AUTHORITY • POWER REVENUE BONDS, SERIES 2012A AND POWER REVENUE REFUNDING BONDS, SERIES 2012B



Printed by: ImageMaster
www.ImageMaster.com