**Days Sales Outstanding**

The following table sets forth information relating to the average number of days that LIPA's bills remained outstanding during each of the calendar years referred to below, prepared in accordance with the current metrics provided for in the OSA for all years.

**Average Days Sales Outstanding**

| | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|
| Average Days Sales Outstanding...... | 39.23 | 39.40 | 37.13 | 36.78 | 36.99 |

**Write-Off and Delinquencies Experience**

The following table sets forth information relating to the delinquency experience of LIPA during each of the calendar years referred to below.

**Average Monthly Delinquencies of**
**Total Annual Billed Retail Electricity Delivery Service Revenues (in thousands)**

| | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|
| 30-59 Days ..................................... | $ 50,348 | $ 59,196 | $49,980 | $42,775 | $37,127 |
| 60-89 Days ..................................... | $ 28,018 | $ 32,104 | $24,937 | $21,223 | $17,501 |
| 90+ Days ........................................ | $116,791 | $135,828 | $86,419 | $87,580 | $79,016 |

**Where to Find Information About LIPA**

LIPA periodically files information with EMMA. In addition, for convenience, further information about LIPA can be found on LIPA's website (www.lipower.org). No documents filed with EMMA or information on LIPA's website is included by specific cross-reference herein.

**Where to Find Information regarding PSEG and PSEG Long Island**

Further information about PSEG and PSEG Long Island can be found at its website at http://www.pseg.com. No information on PSEG's website is included by specific cross-reference herein.

**THE TRUSTEE**

The Trustee for the 2017 Restructuring Bonds is The Bank of New York Mellon. The address of the principal office of the Trustee is 101 Barclay Street-Floor 7-West, New York, New York 10286.

The Trustee may resign at any time by so notifying the Issuer; provided, however, that no such resignation shall be effective until either (a) the 2017 Collateral has been completely liquidated and the proceeds distributed to the Holders or (b) a successor trustee having certain qualifications set forth in the Indenture has been designated and has accepted such trusteeship. The Holders of a majority in Outstanding Amount of the 2017 Restructuring Bonds may remove the Trustee by so notifying the Trustee and may appoint a successor Trustee. The Issuer will remove the Trustee if the Trustee (i) ceases to satisfy certain credit standards set forth in the Indenture, (ii) becomes a debtor in a bankruptcy Proceeding or is adjudicated insolvent or a receiver or other public officer takes charge of the Trustee or its property, or (iii) becomes incapable of acting. If the Trustee resigns or is removed or a vacancy exists in the office of Trustee for any reason, the Issuer will be obligated promptly to appoint a successor Trustee.

The Trustee shall not be liable for any action it takes or omits to take in good faith in accordance with a direction it received by the Holders; provided that its conduct does not constitute willful misconduct or negligence. The Issuer has agreed to indemnify, defend and hold harmless the Trustee and its officers, directors, employees and agents from and against any and all loss, liability or expense (including reasonable attorney's fees and expenses) incurred by it in connection with the performance of its duties under the Indenture, provided that the Issuer is not required to pay any expense or indemnify against any loss, liability or expense incurred by the Trustee through the Trustee's own willful misconduct or negligence.

## RATING AGENCY CONDITION

The Basic Documents provide that certain actions are subject to the "Rating Agency Condition." In each such case, the "Rating Agency Condition" means, with respect to any action, not less than ten Business Days' prior written notification to each Rating Agency of such action, and written confirmation from each of Standard & Poor's and Moody's to the Servicer, the Trustee and the Issuer that such action will not result in a suspension, reduction or withdrawal of the then current rating by such Rating Agency of any tranche of the 2017 Restructuring Bonds and that prior to the taking of the proposed action no other Rating Agency shall have provided written notice to the Issuer that such action has resulted or would result in the suspension, reduction or withdrawal of the then current rating of any tranche of 2017 Restructuring Bonds; provided, however, that if within such ten Business Day period, any Rating Agency (other than Standard & Poor's) has neither replied to such notification nor responded in a manner that indicates that such Rating Agency is reviewing and considering the notification, then (i) the Issuer shall be required to confirm that such Rating Agency has received the Rating Agency Condition request, and if it has, promptly request the related Rating Agency Condition confirmation and (ii) if the Rating Agency neither replies to such notification nor responds in a manner that indicates it is reviewing and considering the notification within five Business Days following such second request, the applicable Rating Agency Condition requirement shall not be deemed to apply to such Rating Agency. For the Rating Agency Condition, any confirmation, request, acknowledgment or approval that is required to be in writing may be in the form of electronic mail or a press release (which may contain a general waiver of a Rating Agency's right to review or consent).

## THE INDENTURE

In addition to the description of certain provisions of the Indenture contained elsewhere herein, the following is a brief summary of certain provisions of the Indenture and does not purport to be comprehensive or definitive. All references herein to the Indenture are qualified in their entirety by reference to the Indenture for the detailed provisions thereof.

### Reports to Holders

So long as the Trustee is the Bond Registrar and Paying Agent, upon the written request of any current or former Holder or the Issuer, the Trustee shall deliver to such Holder, within the prescribed period of time for tax reporting purposes after the end of each calendar year, such information in its possession as may be required to enable such Holder to prepare its federal income and any applicable local or state tax returns. If the Bond Registrar and Paying Agent is other than the Trustee, such Bond Registrar and Paying Agent, within the prescribed period of time for tax reporting purposes after the end of each calendar year, shall deliver to each relevant current or former Holder such information in its possession as may be required to enable such Holder to prepare its federal income and any applicable local or state tax returns.

On or prior to each Payment Date, the Trustee will deliver to each Holder on such Payment Date a statement prepared by the Servicer and provided to the Trustee which will include (to the extent applicable) the following information as to the 2017 Restructuring Bonds with respect to such Payment Date or the period since the previous Payment Date, as applicable:

(a)     the amount of the payment to Holders allocable to principal,

(b)     the amount of the payment to Holders allocable to interest,

(c)     the Outstanding Amount of each tranche, before and after giving effect to payments allocated to principal reported under clause (a) above,

(d)     the difference, if any, between the Outstanding Amount of each tranche and the projected principal balance as of such Payment Date, after giving effect to payments to be made on such Payment Date,

(e)     the amounts on deposit in the Operating Reserve Subaccount as of such Payment Date,

(f)     the amounts on deposit in the Debt Service Reserve Subaccount as of such Payment Date,

(g)     the amounts, if any, on deposit in the Excess Funds Subaccount as of the Payment Date,

(h)     the amounts paid to the Trustee since the previous Payment Date,

(i)     the amounts paid to the Servicer since the previous Payment Date,

(j)     the amounts paid to the Administrator since the previous Payment Date, and

(k)     any other transfers and payments to be made pursuant to the Indenture since the previous Payment Date.

**Covenants of Issuer**

*Affirmative Covenants*.  The Issuer agrees to:

- duly and punctually pay principal of and redemption price, if any, and interest on the 2017 Restructuring Bonds when due in accordance with the terms of the 2017 Restructuring Bonds and the Indenture,

- appoint the Trustee as its agent to receive all 2017 Restructuring Bonds that are surrendered for registration of transfer or exchange,

- make all payments of amounts due and payable from amounts in the Collection Account and no amounts so withdrawn from the Collection Account for payments of the 2017 Restructuring Bonds shall be paid to the Issuer except as provided in the Indenture,

- cause each Paying Agent other than the Trustee to execute and deliver to the Trustee an instrument in which such Paying Agent agrees to:

  o   hold all sums held by it for the payment of amounts due with respect to the 2017 Restructuring Bonds in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided,

  o   give the Trustee notice of any occurrence that is, or with notice or the lapse of time or both would become, an Event of Default (a "Default") by the Issuer of which it has actual knowledge in the making of any payment required to be made with respect to the 2017 Restructuring Bonds,

  o   at any time during the continuance of any such Default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such Paying Agent,

  o   immediately resign as a Paying Agent and forthwith pay to the Trustee all sums held by it in trust for the payment of the 2017 Restructuring Bonds if at any time it ceases to meet the standards required to be met by a Paying Agent at the time of its appointment, and

  o   comply with all requirements of the Internal Revenue Code with respect to the withholding from any payments made by it on any 2017 Restructuring Bonds of any applicable withholding taxes imposed thereon and with respect to any applicable reporting requirements in connection therewith,

- direct any Paying Agent to pay to the Trustee all sums held in trust by such Paying Agent and upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such money,

- make (except to the extent required to be made by the Seller or Servicer) all such filings pursuant to the Securitization Law or Financing Order No. 5, instruments of further assurance and other instruments, and will take such other action necessary or advisable to maintain and preserve the 2017 Collateral,

- execute and deliver all such supplements and amendments thereto,

- diligently pursue any and all actions to enforce its rights under each instrument or agreement included in the 2017 Collateral and not take any action and use its reasonable efforts not to permit any action to be taken by others that would release any Person from any of such Person's covenants or obligations under any such instrument or agreement or that would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any such instrument or agreement, except, in each case, as expressly permitted in the Basic Documents or such other instrument or agreement,

- punctually perform and observe all of its obligations and agreements contained in the Indenture, in the Basic Documents and in the instruments and agreements included in the 2017 Collateral,

- not waive, amend, modify, supplement or terminate any Basic Document or any provision thereof without the written consent of (a) the Trustee (which consent shall not be withheld if (i) the Trustee shall

37

have received an Officer's Certificate stating that such waiver, amendment, modification, supplement or termination shall not adversely affect in any material respect the interests of the Bondholders or the holders of Certificates and (ii) the Rating Agency Condition shall have been satisfied with respect thereto) or (b) the Holders of at least a majority of the Outstanding Amount of 2017 Restructuring Bonds,

- if it has knowledge of the occurrence of a Servicer Default under the Servicing Agreement, promptly give written notice thereof to the Trustee and the Rating Agencies, and shall specify in such notice the action, if any, the Issuer is taking with respect of such default and if a Servicer Default shall arise from the failure of the Servicer to perform any of its duties or obligations under the Servicing Agreement with respect to the 2017 Restructuring Property, including the 2017 Restructuring Charge, the Issuer shall take all reasonable steps available to it to remedy such failure,

- as required by the Servicing Agreement, appoint a Successor Servicer with the Trustee's prior written consent thereto (which consent shall not be unreasonably withheld and shall be given upon the written direction of Holders of not less than a majority of the Outstanding Amount of the 2017 Restructuring Bonds), and such Successor Servicer shall accept its appointment by a written assumption in a form acceptable to the Issuer and the Trustee. If within 30 days after the delivery of the notice referred to above, the Issuer shall not have obtained such a new Successor Servicer, the Trustee, at the expense of the Issuer, may petition a court of competent jurisdiction to appoint a Successor Servicer. In connection with any such appointment, the Issuer may make such arrangements for the compensation of such Successor Servicer as it and such Successor Servicer shall agree, subject to the limitations set forth below and in the Servicing Agreement, and in accordance and in compliance with the Servicing Agreement, the Issuer shall enter into an agreement with such Successor Servicer for the servicing of the 2017 Restructuring Property (such agreement to be in form and substance satisfactory to the Trustee),

- upon any termination of the Servicer's rights and powers pursuant to the Servicing Agreement, the Trustee shall promptly notify the Issuer, the Bondholders and the Rating Agencies, and as soon as a Successor Servicer is appointed, the Issuer shall notify the Trustee, the Bondholders and the Rating Agencies of such appointment, specifying in such notice the name and address of such Successor Servicer,

- not, without the prior written consent of the Trustee or the Holders of at least a majority in Outstanding Amount of the 2017 Restructuring Bonds, amend, modify, waive, supplement, terminate or surrender, or agree to any amendment, modification, supplement, termination, waiver or surrender of, the terms of any 2017 Collateral or the Basic Documents, or waive timely performance or observance of any material term by the Seller or the Servicer under the Sale Agreement or the Servicing Agreement, respectively; provided, however, that if the Rating Agency Condition is met, no such consent shall be required with respect to any agreements, to accommodate the issuance of any additional bonds, notes or other obligations issued by the Issuer as permitted by the laws of the State of New York and the Indenture,

- enforce the Servicer's compliance with all of the Servicer's obligations under the Servicing Agreement to the extent material to the payment and security of the 2017 Restructuring Bonds,

- give the Trustee and the Rating Agencies prompt written notice of each Event of Default thereunder as provided in the Indenture, or waiver thereof and each default on the part of the Seller or the Servicer of its obligations under the Sale Agreement or the Servicing Agreement, respectively, materially and adversely affecting the 2017 Restructuring Bonds,

- upon request of the Trustee, the Issuer will execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purpose of the Indenture and maintain a first priority perfected security interest in the 2017 Collateral in favor of the Trustee,

- comply with the applicable provisions of the Internal Revenue Code relating to the exclusion of the interest on the 2017 Restructuring Bonds from gross income for federal income taxation purposes, and

- comply with the tax agreements executed and delivered by it and the letter of instructions, if any, delivered by Bond Counsel, in connection with the issuance of the 2017 Restructuring Bonds as to compliance with applicable provisions of the Internal Revenue Code, as such tax covenants and agreements and letter may be amended from time to time, as a source of guidance for achieving

compliance with the Internal Revenue Code, including, without limitation, timely payments of all rebate or other amounts to the United States Department of the Treasury under Section 148 of the Internal Revenue Code.

*Negative Covenants*. So long as any 2017 Restructuring Bonds are Outstanding, the Issuer shall not:

- except as expressly permitted by the Indenture, sell, transfer, exchange or otherwise grant or dispose of any of, or assign any interest in, the 2017 Collateral, unless directed to do so by the Trustee in accordance with the Indenture,

- claim any credit on, or make any deduction from the principal or interest payable in respect of, the 2017 Restructuring Bonds (other than amounts properly withheld from such payments under the Internal Revenue Code or other tax law) or assert any claim against any present or former Bondholder by reason of the payment of the taxes levied or assessed upon any part of the 2017 Collateral,

- voluntarily consent to the termination of its existence or its dissolution or liquidation in whole or in part,

- permit the validity or effectiveness of the Indenture to be impaired, or permit the Lien of the Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to the 2017 Restructuring Bonds under the Indenture except as may be expressly permitted hereby,

- permit any Lien, charge, excise, claim, security interest, mortgage or other encumbrance (other than the Lien of the Indenture and the Lien created by the Securitization Law) to be created by the Issuer on or extend to or otherwise arise upon or burden the 2017 Collateral or any part thereof or any interest therein or the proceeds thereof,

- subject to the Lien created by the Securitization Law, permit the Lien of the Indenture not to constitute a valid first priority security interest in the 2017 Collateral,

- take any action which is subject to a Rating Agency Condition without satisfying the Rating Agency Condition,

- issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except for the 2017 Restructuring Bonds and except as permitted in the Indenture,

- issue any additional restructuring bonds, except pursuant to the Securitization Law and consistent with the Indenture,

- except as otherwise contemplated by the Sale Agreement, the Servicing Agreement or the Indenture, make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person,

- other than expenditures in connection with the Issuer's purchase of the 2017 Restructuring Property from the Seller, make any expenditure (by long-term or operating lease or otherwise) for capital assets (either realty or personalty), and

- take or cause to be taken, or permit to be taken, any action or actions with respect to the application and investment of any proceeds of the 2017 Restructuring Bonds or any other funds from whatever source derived which would cause the 2017 Restructuring Bonds to be "arbitrage bonds" within the meaning of Section 148 of the Internal Revenue Code or "private activity bonds" within the meaning of Section 141 of the Internal Revenue Code. The Issuer will not consent to any amendment to, or waive performance of, any covenant of the Authority or the Servicer relating to the use, ownership or management of the projects or any portion thereof financed or refinanced by the 2017 Restructuring Bonds in the tax agreements or certificates entered into by the Authority and the Servicer in connection with the 2017 Restructuring Bonds unless the Issuer has received an Opinion of Counsel from a nationally recognized bond counsel to the effect that such amendment or waiver would not, by itself, cause the 2017

Restructuring Bonds to be "private activity bonds" within the meaning of Section 141 of the Internal Revenue Code or otherwise cause interest on the 2017 Restructuring Bonds to be included in gross income for federal income tax purposes.

**Events of Default**

The Indenture provides that each of the following will constitute "Events of Default" thereunder:

(a) default in the payment of any interest or redemption premium on any Bond when the same becomes due and payable, and such default shall continue for a period of 5 Business Days,

(b) default in the payment of the then unpaid principal of any tranche of 2017 Restructuring Bonds on the Final Maturity Date for such tranche,

(c) default in the observance or performance in any material respect of any covenant or agreement of the Issuer made in the Indenture (other than a covenant or agreement, a default in the observance or performance of which is specifically described elsewhere in this section) or any representation or warranty of the Issuer made in the Indenture or in any certificate or other writing delivered pursuant to the Indenture or in connection therewith proving to have been incorrect in any material respect as of the time when the same shall have been made, and such default shall continue or not be cured or the circumstances or condition in respect of which such misrepresentation or warranty was incorrect shall not have been eliminated or otherwise cured, as the case may be, for a period of 30 days after the earlier of (i) the date that there shall have been given, by registered or certified mail, to the Issuer by the Trustee or to the Issuer and the Trustee by the Holders of at least 25% of the Outstanding Amount of the 2017 Restructuring Bonds, a written notice specifying such default and requiring it to be remedied and stating that such notice is a "Notice of Default" under the Indenture or (ii) the date that the Issuer has actual knowledge of the default,

(d) the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of the Issuer or any substantial part of the 2017 Collateral in an involuntary case or Proceeding under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the 2017 Collateral, or ordering the winding-up or liquidation of the Issuer's affairs, and such decree or order shall remain unstayed and in effect for a period of 90 consecutive days,

(e) the commencement by the Issuer of a voluntary case or Proceeding under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by the Issuer to the entry of an order for relief in an involuntary case or Proceeding under any such law, or the consent by the Issuer to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the 2017 Collateral, or the making by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally to pay its debts as such debts become due, or the taking of action by the Issuer in furtherance of any of the foregoing, or

(f) any act or failure to act by the State or any of its agencies (including the Authority), officers or employees which violates or is not in accordance with Financing Order No. 5 or the State Pledge.

Failure to pay principal or the redemption price in accordance with the Expected Amortization Schedule because collections from Customers were not sufficient to make such payments shall not constitute an Event of Default under the Indenture; provided, however, that failure to pay the entire unpaid principal amount of the 2017 Restructuring Bonds of a tranche upon the Final Maturity Date of the tranche shall constitute an Event of Default, and the entire unpaid principal amount of the 2017 Restructuring Bonds shall be due and payable, if not previously paid, on any other date on which an Event of Default shall have occurred and be continuing, if the Trustee or the Holders representing not less than a majority of the Outstanding Amount of the 2017 Restructuring Bonds have declared the 2017 Restructuring Bonds to be immediately due and payable on acceleration.

**Remedies—Acceleration**

If an Event of Default under the Indenture should occur and be continuing, then and in every such case the Trustee or the Holders representing not less than a majority of the Outstanding Amount of the 2017 Restructuring

Bonds may declare all the 2017 Restructuring Bonds to be immediately due and payable, by a notice in writing to the Issuer (and to the Trustee if given by Holders), and upon any such declaration the unpaid principal amount of the 2017 Restructuring Bonds, together with accrued and unpaid interest thereon through the date of acceleration, shall become immediately due and payable.

At any time after such declaration of acceleration of maturity has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee, the Holders representing a majority of the Outstanding Amount of the 2017 Restructuring Bonds, by written notice to the Issuer and the Trustee, may rescind such declaration and its consequences if:

(i)     the Issuer has paid or deposited with the Trustee a sum sufficient to pay (A) all sums paid or advanced by the Trustee thereunder and the reasonable compensation, expenses, disbursements and advances of the Trustee and its agents and counsel and (B) all payments of principal of and interest on all 2017 Restructuring Bonds and all other amounts that would then be due thereunder or upon such 2017 Restructuring Bonds if the Event of Default giving rise to such acceleration had not occurred, and

(ii)    all Events of Default under the Indenture, other than the nonpayment of the principal of the 2017 Restructuring Bonds that has become due solely by such acceleration, have been cured or waived as provided in the Indenture.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

### Remedies—Trustee's Rights

If an Event of Default under the Indenture shall have occurred and be continuing, the Trustee may do one or more of the following (subject to the provisions of the Indenture):

(a)     institute Proceedings in its own name and as trustee of an express trust for the collection of all amounts then payable on the 2017 Restructuring Bonds or under the Indenture with respect thereto, whether by declaration of acceleration or otherwise, enforce any judgment obtained, and collect from the Issuer and any other obligor upon such 2017 Restructuring Bonds moneys adjudged due,

(b)     institute Proceedings from time to time for the complete or partial foreclosure of the Indenture with respect to the 2017 Collateral,

(c)     exercise any remedies of a secured party under the Securitization Law or other applicable law and take any other appropriate action to protect and enforce the rights and remedies of the Trustee and the Holders of the 2017 Restructuring Bonds,

(d)     sell the 2017 Collateral or any portion thereof or rights or interest therein, at one or more public or private sales called and conducted in any manner permitted by law, and

(e)     exercise all rights, remedies, powers, privileges and claims of the Issuer against the Servicer under or in connection with, and pursuant to the terms of, the Servicing Agreement;

provided, however, that the Trustee may not sell or otherwise liquidate any portion of the 2017 Collateral following an Event of Default, other than an Event of Default described in clauses (a) and (b) under "Events of Default" above, unless (A) the Holders of 100% of the Outstanding Amount of the 2017 Restructuring Bonds consent thereto, (B) the proceeds of such sale or liquidation distributable to the Holders are sufficient to discharge in full all amounts then due and unpaid upon such 2017 Restructuring Bonds for principal and interest after taking into account payment of all amounts due prior thereto pursuant to the priorities set forth above under "Collection Account and Subaccounts," or (C) the Trustee determines that the 2017 Collateral will not continue to provide sufficient funds for all payments on the 2017 Restructuring Bonds as they would have become due if the 2017 Restructuring Bonds had not been declared immediately due and payable, and the Trustee obtains the written consent of Holders of at least a majority of the Outstanding Amount of the 2017 Restructuring Bonds. In determining such sufficiency or insufficiency with respect to clause (B) or (C), the Trustee may, but need not, obtain and conclusively rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the 2017 Collateral for such purpose.

If the Trustee collects any money, it shall pay out such money in accordance with the priorities set forth in "SECURITY FOR THE 2017 RESTRUCTURING BONDS—Description of Indenture Accounts."

The rights and remedies conferred upon or reserved to the Trustee or the Bondholders by the Indenture is not exclusive to any right or remedy and is cumulative and in addition to every other right or remedy.

**Remedies—Optional Possession of 2017 Collateral**

If the 2017 Restructuring Bonds have been declared to be due and payable under the Indenture following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Trustee may, but need not, elect to maintain possession of the 2017 Collateral. In determining whether to maintain possession of the 2017 Collateral or sell or liquidate the same, the Trustee may, but need not, obtain and conclusively rely upon an opinion of an Independent investment banking or certified public accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the 2017 Collateral for such purpose.

**Remedies—Limitation of the Rights of Holders**

No Holder of any 2017 Restructuring Bond shall have any right to institute any Proceeding, judicial or otherwise, with respect to the Indenture, or to avail itself of any remedies provided in the Securitization Law or to utilize or enforce the statutory lien or to avail itself of the right to foreclose on the 2017 Collateral or otherwise enforce the Lien and the security interest on the 2017 Collateral with respect to the Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless:

(a)     such Holder previously has given written notice to the Trustee of a continuing Event of Default under the Indenture,

(b)     the Holders of not less than a majority of the Outstanding Amount of the 2017 Restructuring Bonds have made written request to the Trustee to institute such Proceeding in respect of such Event of Default under the Indenture in its own name as Trustee under the Indenture,

(c)     such Holder or Holders have offered to the Trustee indemnity satisfactory to it against the costs, expenses and liabilities to be incurred in complying with such request,

(d)     the Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute such Proceedings, and

(e)     no direction inconsistent with such written request has been given to the Trustee during such 60-day period by the Holders of at least a majority of the Outstanding Amount of the 2017 Restructuring Bonds;

it being understood and intended that no one or more Holders shall have any right in any manner whatever by virtue of, or by availing of, any provision of the Indenture to affect, disturb or prejudice the rights of any other Holders or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under the Indenture, except in the manner therein provided.

In the event the Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Holders, each representing less than a majority of the Outstanding Amount of the 2017 Restructuring Bonds, the Trustee in its sole discretion may determine what action, if any, shall be taken, notwithstanding any other provisions of the Indenture.

**Voting of the 2017 Restructuring Bonds; Control of Proceedings by Holders**

The Holders of a majority of the Outstanding Amount of the 2017 Restructuring Bonds (or, if less than all tranches are affected, the affected tranche or tranches) have the right to direct the time, method and place of conducting any Proceeding for any remedy available to the Trustee with respect to the 2017 Restructuring Bonds of such tranche or tranches or exercising any trust or power conferred on the Trustee with respect to such tranche or tranches; provided that:

(a)     such direction shall not be in conflict with any rule of law or with the Indenture,

(b)     subject to the express terms of the Indenture, any direction to the Trustee to sell or liquidate any 2017 Collateral shall be by the Holders representing 100% of the Outstanding Amount of the 2017 Restructuring Bonds,

(c)     if the conditions set forth in the Indenture have been satisfied and the Trustee elects to retain the 2017 Collateral, then any direction to the Trustee by Holders representing less than 100% of the

Outstanding Amount of the 2017 Restructuring Bonds to sell or liquidate the 2017 Collateral shall be of no force and effect, and

(d)     the Trustee may take any other action deemed proper by the Trustee that is not inconsistent with such direction;

provided, however, that the Trustee's duties shall be subject to the terms of the Indenture, and the Trustee need not take any action that it determines might involve it in liability or might materially adversely affect the rights of any Holders not consenting to such action.  Furthermore and without limiting the foregoing, the Trustee shall not be required to take any action for which it reasonably believes that it will not be indemnified to its satisfaction against any cost, expense or liability.

**Waiver of Past Defaults**

Prior to the declaration of the acceleration of the maturity of the 2017 Restructuring Bonds, Holders representing a majority of the Outstanding Amount of the 2017 Restructuring Bonds (or, if less than all tranches are affected, the Holders of a majority of the 2017 Restructuring Bonds of the affected tranches in the aggregate) may, by written notice to the Trustee, waive any past default or event of default under the Indenture and its consequences, except a default (a) in payment of principal of or interest on any of the 2017 Restructuring Bonds or (b) in respect of a covenant or provision hereof which cannot be modified or amended without the consent of the Holder of each Bond of all tranches affected.  In the case of any such waiver, the Issuer, the Trustee and the Holders shall be restored to their former positions and rights hereunder, respectively, but no such waiver shall extend to any subsequent or other default or event of default under the Indenture or impair any right consequent thereto.

Upon any such waiver, such default shall cease to exist and be deemed to have been cured and not to have occurred, and any Event of Default arising therefrom shall be deemed to have been cured and not to have occurred, for every purpose of the Indenture; but no such waiver shall extend to any subsequent or other default or event of default under the Indenture or impair any right consequent thereto.

**Modifications of Indenture that Do Not Require the Consent of Holders**

Without the consent of the Holders of any 2017 Restructuring Bonds but with prior notice to the Rating Agencies, the Issuer and the Trustee, when authorized by an Issuer Order, at any time and from time to time, may enter into one or more indentures supplemental to the Indenture in form reasonably satisfactory to the Trustee, for any of the following purposes:

(i)     to correct or amplify the description of any property, including, without limitation, the 2017 Collateral, at any time subject to the Lien of the Indenture, or better to assure, convey and confirm unto the Trustee any property subject or required to be subjected to the Lien of the Indenture, or to subject to the Lien of the Indenture additional property,

(ii)    to evidence the succession, in compliance with the applicable provisions thereof, of another person to the Issuer, and the assumption by any such successor of the covenants of the Issuer in the Indenture and in the 2017 Restructuring Bonds,

(iii)   to add to the covenants of the Issuer, for the benefit of the Holders, or to surrender any right or power conferred upon the Issuer by the Indenture,

(iv)    to convey, transfer, assign, mortgage or pledge any property to or with the Trustee,

(v)     to cure any ambiguity, to correct or supplement any provision in the Indenture or in any supplemental indenture, which may be inconsistent with any other provision of the Indenture or in any supplemental indenture, or to make any other provisions with respect to matters or questions arising under the Indenture or in any supplemental indenture; provided, however, that such action shall not adversely affect the interests of the Holders of the 2017 Restructuring Bonds,

(vi)    to evidence and provide for the acceptance of the appointment under the Indenture by a successor Trustee with respect to the 2017 Restructuring Bonds and to add or change any of the provisions of the Indenture as shall be necessary to facilitate the administration of the trusts thereunder by more than one Trustee, pursuant to the requirements set forth in the Indenture,

(vii)   to modify, eliminate or add to the provisions of the Indenture to such extent as shall be necessary to effect the qualification of the Indenture under the Trust Indenture Act or under any similar federal

statute hereafter enacted and to add to the Indenture such other provisions as may be expressly required by the Trust Indenture Act,

(viii) to qualify the 2017 Restructuring Bonds of any tranche for listing on a securities exchange or registration with a Clearing Agency, or

(ix) to satisfy any Rating Agency requirements or to maintain, or improve upon, the existing ratings on the 2017 Restructuring Bonds.

The Issuer and the Trustee, when authorized by an Issuer Order, may, also without the consent of any of the Holders of the 2017 Restructuring Bonds enter into an indenture or indentures supplemental to the Indenture for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, the Indenture or of modifying in any manner the rights of the Holders under the Indenture; provided, however, that (i) such action shall not, as evidenced by an Officer's Certificate, adversely affect in any material respect the interests of the Holders and (ii) the Rating Agency Condition shall have been satisfied with respect thereto.

**Modifications of Indenture that Require the Consent of Holders**

The Issuer and the Trustee, when authorized by an Issuer Order, also may, with prior notice to the Rating Agencies and with the consent of the Holders of not less than a majority of the Outstanding Amount of the 2017 Restructuring Bonds of each tranche to be affected, by act of such Holders delivered to the Issuer and the Trustee, enter into an indenture or indentures supplemental to the Indenture for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, the Indenture or of modifying in any manner the rights of the Holders under the Indenture; provided, however, that no such supplemental indenture shall, without the consent of the Holder of each Outstanding Bond of each tranche affected thereby:

(i) change the date of payment of any installment of principal of or interest on any 2017 Restructuring Bond, or reduce the principal amount thereof, or the interest rate thereon, change the provisions of the Indenture relating to the application of collections on, or the proceeds of the sale of, the 2017 Collateral to payment of principal of or interest on the 2017 Restructuring Bonds, or change any place of payment where, or the coin or currency in which, any Bond or the interest thereon is payable, or impair the right to institute suit for the enforcement of the provisions of the Indenture requiring the application of funds available therefor, as provided in the Indenture, to the payment of any such amount due on the 2017 Restructuring Bonds on or after the respective due dates thereof,

(ii) reduce the percentage of the Outstanding Amount of the 2017 Restructuring Bonds or of a tranche thereof, the consent of the Holders of which is required for any such supplemental indenture, or the consent of the Holders of which is required for any waiver of compliance with certain provisions of the Indenture or certain defaults thereunder and their consequences provided for in the Indenture,

(iii) modify or alter the provisions of the proviso to the definition of "Outstanding,"

(iv) reduce the percentage of the Outstanding Amount of the 2017 Restructuring Bonds required to direct the Trustee to direct the Issuer to sell or liquidate the 2017 Collateral pursuant to the Indenture,

(v) modify any provision of the Indenture relating to supplemental indentures requiring Holders' consent except to increase any percentage specified therein or to provide that certain additional provisions of the Indenture or the other Basic Documents cannot be modified or waived without the consent of the Holder of each Outstanding Bond affected thereby,

(vi) modify any of the provisions of the Indenture in such manner as to affect the calculation of the amount of any payment of interest or principal due on any Bond on any Payment Date (including the calculation of any of the individual components of such calculation) or change the Expected Amortization Schedule, Scheduled Sinking Fund Redemption Date or Final Maturity Dates of any tranche of 2017 Restructuring Bonds,

(vii) decrease the Required Operating Reserve Level or the Required Debt Service Reserve Level,

(viii) modify the provisions of the Indenture regarding the voting of the 2017 Restructuring Bonds held by the Issuer, the Servicer or any Affiliate of any of the foregoing Persons,

(ix) decrease the percentage of the aggregate principal amount of 2017 Restructuring Bonds or affected tranche required to amend the sections of the Indenture which specify applicable percentages of the

aggregate principal amount of the 2017 Restructuring Bonds necessary to amend any Basic Document,

(x) cause a violation of the tax covenants of the Issuer, or

(xi) permit the creation of any Lien ranking prior to or on a parity, other than as specifically contemplated in the Indenture, with the Lien of the Indenture with respect to any part of the 2017 Collateral or, except as otherwise permitted or contemplated herein, terminate the Lien of the Indenture on any property at any time or deprive the Holder of any Bond of the security provided by the Lien of the Indenture.

It shall not be necessary for any consent of Holders under the Indenture to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Holders shall approve the substance thereof.

Promptly after the execution by the Issuer and the Trustee of any supplemental bond indenture, the Issuer shall send to the Rating Agencies and the Holders to which such amendment or supplemental bond indenture relates either a copy of such supplemental indenture or a notice setting forth in general terms the substance of such supplemental bond indenture.

**Satisfaction and Discharge of Indenture**

The Indenture shall cease to be of further effect with respect to the 2017 Restructuring Bonds and the Trustee, on reasonable written demand of and at the expense of the Issuer, shall execute such instruments as the Issuer reasonably requests acknowledging satisfaction and discharge of the Indenture with respect to the 2017 Restructuring Bonds, when:

(i) either:

(A) all 2017 Restructuring Bonds theretofore authenticated and delivered (other than (1) 2017 Restructuring Bonds that have been destroyed, lost or stolen and that have been replaced or paid as provided in the Indenture and (2) 2017 Restructuring Bonds for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust as provided in the Indenture) have been delivered to the Trustee for cancellation, or

(B) the Final Maturity Date has occurred with respect to all 2017 Restructuring Bonds not theretofore delivered to the Trustee for cancellation and the Issuer has irrevocably deposited or caused to be irrevocably deposited in trust with the Trustee cash in an amount sufficient to pay principal and to discharge the entire indebtedness on such 2017 Restructuring Bonds not theretofore delivered to the Trustee for cancellation on the Final Maturity Date,

(ii) the Issuer has paid or caused to be paid all other sums payable thereunder by the Issuer, and

(iii) the Issuer has delivered to the Trustee an Officer's Certificate, an Opinion of Counsel of Independent counsel and (if required by the Trustee) an Independent Certificate from a firm of certified public accountants, each meeting the requirements of the Indenture and each stating that all conditions precedent therein provided for relating to the satisfaction and discharge of the Indenture with respect to the 2017 Restructuring Bonds have been complied with.

**Legal Defeasance**

Subject to the provisions of the Indenture, including those detailed in "Conditions to Defeasance" below, the Issuer at any time may terminate all its obligations under the Indenture with respect to the 2017 Restructuring Bonds (a "Legal Defeasance"). In the event of a Legal Defeasance, the maturity of the 2017 Restructuring Bonds defeased pursuant to such Legal Defeasance may not be accelerated because of an Event of Default.

Upon satisfaction of the conditions set forth in the Indenture to a Legal Defeasance, the Trustee, on reasonable written demand of and at the expense of the Issuer, shall execute such instruments as Issuer reasonably requests acknowledging satisfaction and discharge of the obligations that are terminated pursuant to such exercise.

*Conditions to Defeasance.* The Issuer may exercise a Legal Defeasance only if:

(a)    the Issuer has irrevocably deposited or caused to be irrevocably deposited in trust with the Trustee cash or noncallable defeasance securities for the payment of principal or redemption price of and interest on each such 2017 Restructuring Bonds to the Scheduled Maturity Date (or, if applicable, at the election of the Issuer, any earlier optional redemption date) or the Scheduled Sinking Fund Redemption Date (or, if applicable, any optional redemption date), or with respect to the 2017 Restructuring Bonds of any tranche subject to optional redemption, cash or non-callable defeasance securities for the payment of principal or the redemption price of and interest on each such 2017 Restructuring Bonds as set forth in the written notice provided by the Issuer,

(b)    the Issuer delivers to the Trustee a certificate from a nationally recognized firm of Independent certified public accountants expressing its opinion that the payments of principal and interest when due and without reinvestment of the deposited Defeasance Securities plus any deposited cash without investment will provide cash at such times and in such amounts (but not substantially more than such amounts) as will be sufficient to pay in respect of the 2017 Restructuring Bonds (i) principal on the Scheduled Maturity Date in accordance with the Expected Amortization Schedule therefor (or, if applicable, at the election of the Issuer, any earlier optional redemption date) or redemption price on the Scheduled Sinking Fund Redemption Date in accordance with the Expected Sinking Fund Schedule therefor (or, if applicable, at the election of the Issuer, any earlier optional redemption date), as applicable, and (ii) interest when due,

(c)    if an election is made to redeem any such 2017 Restructuring Bonds prior to maturity, the Issuer irrevocably designates such 2017 Restructuring Bonds for redemption on the redemption date and proper notice of redemption has been made or provision satisfactory to the Trustee has been irrevocably made for the giving of such notice,

(d)    no Default has occurred and is continuing on the day of such deposit and after giving effect thereto,

(e)    the Issuer shall have delivered to the Trustee an Opinion of Counsel stating that the Holders of the 2017 Restructuring Bonds will not recognize income, gain or loss for federal or New York income tax purposes as a result of such legal defeasance and will be subject to federal or New York income tax on the same amounts, in the same manner and at the same times as would have been the case if such legal defeasance had not occurred, and

(f)    the Issuer delivers to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that all conditions precedent to the satisfaction and discharge of the 2017 Restructuring Bonds to the extent contemplated by the provisions governing defeasance contained in the Indenture have been complied with.

**No Recourse to Others**

No recourse may be taken, directly or indirectly, by the Holders with respect to the obligations of the Issuer or the Trustee on the 2017 Restructuring Bonds or under the Indenture or any certificates or other writing delivered in connection therewith, against (i) any trustee, director, officer, employee, agent or attorney of the Issuer or (ii) any shareholder, partner, owner, beneficiary, agent, officer, director or employee of the Trustee. Each Holder by accepting a 2017 Restructuring Bond specifically confirms the nonrecourse nature of these obligations and waives and releases all such liability. These waivers and releases are part of the consideration for the issuance of the 2017 Restructuring Bonds.

Notwithstanding any provision of the Indenture or any supplemental bond indenture to the contrary, Holders and the Trustee shall have no recourse against the credit or any assets of the Authority, LIPA or the Issuer (other than in the case of the Issuer, the 2017 Collateral), with respect to any amounts due to the Holders under the Indenture and under the 2017 Restructuring Bonds and to the Trustee. Each Holder by accepting a 2017 Restructuring Bond, and the Trustee, specifically confirms the nonrecourse nature of these obligations and waives and releases all such liability. These waivers and releases are part of the consideration for issuance of the 2017 Restructuring Bonds.

**THE SALE AGREEMENT**

In addition to the description of certain provisions of the Sale Agreement contained elsewhere herein, the following is a brief summary of certain provisions of the Sale Agreement and does not purport to be comprehensive

or definitive. All references herein to the Sale Agreement are qualified in their entirety by reference to the Sale Agreement for the detailed provisions thereof.

**Sale of the 2017 Restructuring Property**

In exchange for an amount equal to the net proceeds of the sale of the 2017 Restructuring Bonds, the Seller will irrevocably sell, transfer, assign, set over and otherwise convey to the Issuer the 2017 Restructuring Property. The 2017 Restructuring Property will include the assignment of all revenues, collections, claims, payments, money or proceeds of or arising from the 2017 Restructuring Charges.

Under the Securitization Law, the sale of 2017 Restructuring Property will constitute an absolute transfer and true sale under state law, effective and perfected against all third parties, and will not be affected or impaired by, among other things, the occurrence of any of the following:

- the commingling of collections of 2017 Restructuring Charges with other accounts,

- the retention by the Seller of either of the following:

    o a partial or residual interest, including an equity interest, in the 2017 Restructuring Property, whether direct or indirect, or whether subordinate or otherwise,

    o the right to recover costs associated with taxes, payments in lieu of taxes, franchise fees, or license fees imposed on the collection of 2017 Restructuring Charges,

- any recourse that the Issuer may have against the Seller,

- any indemnification rights, obligations, or repurchase rights made or provided by the Seller,

- the obligation of the Seller to collect 2017 Restructuring Charges on behalf of the Issuer,

- the treatment of the sale, assignment, or transfer by the Seller to the Issuer for tax, financial reporting, or other purposes,

- any subsequent order of the Authority amending Financing Order No. 5 pursuant to the Securitization Law, or

- any application of the True-Up Adjustment mechanism under Financing Order No. 5.

Upon the issuance of Financing Order No. 5 and the transfer of the 2017 Restructuring Property, the transfer will be perfected as against the Authority, all parties having claims of any kind against the Authority, and all other transferees of the Authority, including subsequent judicial or other lien creditors.

**Seller Representations and Warranties**

In the Sale Agreement, the Seller will represent and warrant to the Issuer, as of the Issuance Date, to the effect, among other things, that:

- the Seller is duly organized and validly existing as a corporate municipal instrumentality, body corporate and politic and a political subdivision of the State of New York, in good standing under the laws of the State of New York, with the requisite power and authority to own its properties and conduct its business as currently owned or conducted, and has the requisite power and authority to own the 2017 Restructuring Property,

- the Seller is duly qualified to do business and has obtained all necessary licenses and approvals, in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require qualifications, licenses or approvals (except where the failure to so qualify or obtain such licenses and approvals would not be reasonably likely to have a material adverse effect on the Seller's business, operations, assets, revenues or properties),

- the Seller has the requisite power and authority to execute and deliver the Sale Agreement and to carry out its terms, and the execution, delivery and performance of the Sale Agreement have been duly authorized by all necessary action on the part of the Seller,

- the Sale Agreement constitutes a legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms, subject to customary exceptions relating to bankruptcy, creditor's rights and equitable principles,

- the sale of the 2017 Restructuring Property and the consummation of the transactions contemplated by the Securitization Law and the Sale Agreement and the fulfillment of the terms thereof do not (a) conflict with or result in a breach of any of the terms and provisions of nor constitute (with or without notice or lapse of time) a default under the Seller's organizational documents or any material indenture, agreement or other instrument to which the Seller is a party or by which it is bound, (b) result in the creation or imposition of any lien upon any of the Seller's properties pursuant to the terms of any such indenture, agreement or other instrument (other than any Lien that may be granted under the Basic Documents) or (c) violate any existing law or any existing order, rule or regulation applicable to the Seller of any government authority having jurisdiction over the Seller or its properties,

- no proceedings or investigation is pending and, to the Seller's knowledge, no Proceeding or investigation is threatened, before any Governmental Authority having jurisdiction over the Seller or its properties involving or relating to the Seller or to the Issuer or, to the Seller's knowledge, any other Person:

  o asserting the invalidity of the Securitization Law, Financing Order No. 5, or the Sale Agreement,

  o seeking to prevent the consummation of any of the transactions contemplated by the Sale Agreement or any of the other Basic Documents,

  o seeking any determination or ruling that might materially and adversely affect the performance by the Seller of its obligations under, or the validity or enforceability of, the Securitization Law, Financing Order No. 5, the 2017 Restructuring Bonds, the Sale Agreement or the other Basic Documents, or

  o seeking to adversely affect the federal income tax or state income tax classification of the 2017 Restructuring Bonds as debt,

- no approvals, authorizations, consents, orders or other actions of, or filings with, any Governmental Authority are required for the Seller to execute, deliver, perform and fulfill its obligations under the Sale Agreement except those which have been obtained, waived or made and are in full force and effect, and

- no portion of the 2017 Restructuring Property has been sold, transferred, assigned or pledged by the Seller to any Person other than the Issuer. Upon the sale, the Seller has transferred, sold and conveyed the 2017 Restructuring Property to the Issuer, free and clear of all Liens, except for any Lien that may be granted under the Basic Documents.

The Seller will not be in breach of any representation or warranty as a result of any change in law by means of any legislative enactment, constitutional amendment or otherwise that renders any of the representations or warranties untrue.

### Covenants of the Seller

In the Sale Agreement, the Seller makes the following covenants:

- Subject to its right to assign its rights and obligations to a successor utility under the Sale Agreement, so long as any of the 2017 Restructuring Bonds are outstanding, the Seller will (a) keep in full force and effect its existence, rights and franchises as a corporate municipal instrumentality, body corporate and politic and a political subdivision of the State of New York, and (b) obtain and preserve its qualification to do business, in each case to the extent that in each such jurisdiction such existence or qualification is or shall be necessary to protect the validity and enforceability of the Sale Agreement, the other Basic Documents to which the Seller is a party and each other instrument or agreement to which the Seller is a party necessary or appropriate to the proper administration of the Sale Agreement and the transactions contemplated thereby.

- Except for the conveyances under the Sale Agreement or the Back-Up Security Interest, the Seller will not sell, pledge, assign or transfer, or grant, create or incur any Lien on, any of the 2017 Restructuring Property, or any interest therein, and the Seller will defend the right, title and interest of the Issuer and of the Trustee, in, to and under the 2017 Restructuring Property against all claims of third parties

48

claiming through or under the Seller. The Seller, also covenants that, in its capacity as Seller as defined in the Sale Agreement, it will not at any time assert any Lien against, or with respect to, any of the 2017 Restructuring Property.

- If the Seller receives any payments in respect of the 2017 Restructuring Charges or the proceeds thereof when it is acting as the Servicer, the Seller agrees to pay all those payments to the Servicer as soon as practicable after receipt thereof.

- The Seller will notify the Issuer and the Trustee promptly after becoming aware of any Lien on any of the 2017 Restructuring Property, other than the conveyances under the Sale Agreement, or any Lien under the Basic Documents or for the benefit of Issuer.

- The Seller agrees to comply with its organizational and governing documents and all laws, treaties, rules, regulations and determinations of any governmental instrumentality applicable to it, except to the extent that failure to so comply would not materially adversely affect the Issuer's or the Trustee's interests in the 2017 Restructuring Property or under any of the other Basic Documents to which the Seller is a party or the Seller's performance of its obligations under the Sale Agreement or under any of the Basic Documents to which the Seller is a party.

- So long as any of 2017 Restructuring Bonds are outstanding, the Seller will:

  o treat the 2017 Restructuring Bonds as debt of the Issuer and not the Seller, except for financial, accounting or tax reporting purposes,

  o indicate in its financial statements that it is not the owner of the 2017 Restructuring Property and will disclose the effects of all transactions between the Seller and the Issuer in accordance with generally accepted accounting principles, and

  o not own or purchase any 2017 Restructuring Bonds.

- The Seller agrees that, upon the transfer and sale by the Seller of the 2017 Restructuring Property to the Issuer pursuant to the Sale Agreement:

  o to the fullest extent permitted by law, including any applicable Seller regulations, the Issuer will have all of the rights originally held by the Seller with respect to the 2017 Restructuring Property, including the right (subject to the terms of the Servicing Agreement) to exercise any and all rights and remedies to collect any amounts payable by any Customer in respect of the 2017 Restructuring Property, notwithstanding any objection or direction to the contrary by the Seller, and

  o any payment by any Customer to the Issuer will discharge that Customer's obligations, if any, in respect of the 2017 Restructuring Property to the extent of that payment, notwithstanding any objection or direction to the contrary by the Seller.

- So long as any of the 2017 Restructuring Bonds are outstanding, the Seller will not:

  o make any statement or reference in respect of the 2017 Restructuring Property that is inconsistent with the ownership thereof by the Issuer (other than for financial, accounting or tax reporting purposes), and

  o take any action in respect of the 2017 Restructuring Property except as otherwise contemplated by the Basic Documents.

- The Seller will execute and file the filings required by law to fully preserve, maintain, protect the ownership interest of the Issuer, and the Trustee's lien on the 2017 Restructuring Property and the Back-Up Security Interest, including all filings required under the Securitization Law and the UCC relating to the transfer of the ownership interest in the 2017 Restructuring Property by the Seller to the Issuer, the granting of the security interest in the 2017 Restructuring Property by the Issuer to the Trustee, and the Back-Up Security Interest, and the continued perfection of such ownership interest, security interest and the Back-Up Security Interest. The Seller will deliver or cause to be delivered to the Trustee (with copies to the Issuer) file-stamped copies of, or filing receipts for any document so filed, as soon as available following such filing. The Seller has agreed to institute any action or Proceeding necessary to compel performance by the Authority or the State of New York of any of their obligations or duties under the

49

Securitization Law or Financing Order No. 5. The Seller also will take those legal or administrative actions, including defending against or instituting and pursuing legal actions and appearing or testifying at hearings or similar Proceedings, in each case, as may be reasonably necessary (i) to protect the Issuer, the Holders and the Trustee or their respective affiliates, officials, directors, employees and agents from claims, state actions or other actions or Proceedings of third parties which, if successfully pursued, would result in a breach of any representation of the Authority in the Sale Agreement or (ii) to block or overturn any attempts to cause a repeal of, modification of or supplement to the Securitization Law, Financing Order No. 5, the Issuance Advice Letter, any other adjustment notice or the rights of Holders by executive action, legislative enactment or constitutional amendment that would be adverse to the Issuer, the Trustee or the Holders.

- Even if the Sale Agreement or the Indenture is terminated, the Seller will not, prior to the date which is one year and one day after the termination of the Indenture, petition or otherwise invoke or cause the Issuer to invoke the process of any court or government authority for the purpose of commencing or sustaining an involuntary case against the Issuer under any federal or state bankruptcy, insolvency or similar law, appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Issuer or any substantial part of the property of the Issuer, or ordering the winding up or liquidation of the affairs of the Issuer.

- So long as any of the 2017 Restructuring Bonds are outstanding, the Seller shall, and shall cause each of its subsidiaries to, pay all material taxes, assessments and governmental charges imposed upon it or any of its properties or assets or with respect to any of its franchises, business, income or property before any penalty accrues thereon if the failure to pay any such taxes, assessments and governmental charges would, after any applicable grace periods, notices or other similar requirements, result in a Lien on the 2017 Restructuring Property unless such tax is being contested and properly reserved.

- So long as any of the 2017 Restructuring Bonds are outstanding, the Seller shall not sell any restructuring property to secure another issuance of restructuring bonds if it would cause the then existing ratings on the 2017 Restructuring Bonds from the Rating Agencies to be downgraded, withdrawn or suspended.

- The Seller covenants that it shall comply with the tax certificates to be executed and delivered by it in connection with the issuance of the 2017 Restructuring Bonds and with letters of instruction, if any, delivered by Bond Counsel in connection with the issuance of the 2017 Restructuring Bonds, as such tax certificates and letters may be amended from time to time.

**Indemnification**

The Seller will indemnify the Issuer, its trustees, officers, employees and agents, the Holders and the Trustee for, and defend and hold harmless each such Person from and against, (i) any and all taxes (other than taxes imposed on the Holders solely as a result of their ownership of 2017 Restructuring Bonds) that may at any time be imposed on or asserted against any such Person under existing law as of the Issuance Date as a result of the sale of 2017 Restructuring Property to the Issuer, and (ii) any and all taxes that may be imposed on or asserted against any such Person under existing law as of the Issuance Date as a result of the issuance and sale by the Issuer of the 2017 Restructuring Bonds or the other transactions contemplated by the Sale Agreement, in each case including any sales, gross receipts, general corporation, tangible personal property, privilege or license taxes; provided, however, that the Holders shall be entitled to enforce their rights against the Seller under this indemnification solely through a cause of action brought for their benefit by the Trustee.

In addition, the Seller shall indemnify and hold harmless the Issuer, the Holders, the Trustee and any of the Trustee's affiliates, officials, officers, directors, employees and agents, against any and all Losses incurred by any of such Persons as a result of (i) the Seller's willful misconduct or negligence in the performance of its duties or observance of its covenants under the Sale Agreement or (ii) the Seller's breach in any material respect of any of its representations and warranties contained in the Sale Agreement, except in the case of both clauses (i) and (ii) to the extent of Losses either resulting from the willful misconduct or negligence of such party or resulting from a breach of a representation or warranty made by such party in any of the Basic Documents that gives rise to the Seller's breach; provided, however, that the Holders shall be entitled to enforce their rights under this indemnification against the Seller solely through a cause of action brought for their benefit by the Trustee. The Seller shall not be required to indemnify any person otherwise indemnified under the Sale Agreement for any amount paid or payable by such person

in the settlement of any action, proceeding or investigation without the prior written consent of the Seller, which consent shall not be unreasonably withheld.

**Successors to the Seller**

Any Person which becomes successor by merger, conversion, or consolidation or by otherwise succeeding to all of the assets and properties of the Seller substantially as a whole, may assume the rights and obligations of the Seller under the Sale Agreement. So long as the conditions of any such assumption are met, the Seller will automatically be released from its obligations under the Sale Agreement. The conditions include that:

- the Person in any of the foregoing cases executes an agreement of assumption to perform every obligation of the Seller under the Sale Agreement,

- if the Seller is the Servicer, no Servicer Default, and no event which, after notice or lapse of time, or both, would become a Servicer Default shall have occurred and be continuing,

- Officer's Certificates and Opinions of Counsel specified in the Sale Agreement will have been delivered to the Issuer and the Trustee, and

- the Rating Agencies specified in the Sale Agreement will have received prior written notice of the transaction.

**Amendment**

The Sale Agreement may be amended by the Seller and the Issuer with ten Business Days' prior written notice given to the Rating Agencies, the prior written consent of the Trustee, and if any amendment would adversely affect in any material respect the interests of any Holder, the prior written consent of a majority of the Outstanding Amount of the 2017 Restructuring Bonds affected thereby.

## THE SERVICING AGREEMENT

In addition to the description of certain provisions of the Servicing Agreement contained elsewhere herein, the following is a brief summary of certain provisions of the Servicing Agreement and does not purport to be comprehensive or definitive. All references herein to the Servicing Agreement are qualified in their entirety by reference to the Servicing Agreement for the detailed provisions thereof.

**General**

Pursuant to the Servicing Agreement, the Servicer is required, among other things, to collect the 2017 Restructuring Charges for the benefit and account of the Holders, to make the periodic True-Up Adjustments of the 2017 Restructuring Charges required or allowed by Financing Order No. 5, and to account for and remit the 2017 Restructuring Charges to or for the account of the Trustee in accordance with the remittance procedures contained in the Servicing Agreement without any charge, deduction or surcharge of any kind (other than the Servicing Fee specified in the Servicing Agreement). Under the terms of the Servicing Agreement, if the Servicer or any Successor Servicer fails to perform its servicing obligations in any material respect, the Trustee may, or shall, upon the written instruction of the Authority (acting on behalf of Customers) or the Holders of a majority of Outstanding Amount of the 2017 Restructuring Bonds, may terminate the rights and obligations of the Servicer under the Servicing Agreement. Upon the termination of the Servicer, the Authority shall appoint, subject to the consent of Holders of a majority of the Outstanding Amount of the 2017 Restructuring Bonds, a Successor Servicer to perform the obligations of the Servicer under the Servicing Agreement. The rights of the Issuer under the Servicing Agreement will be included in the collateral pledged to the Issuer under the Indenture, and these rights will be included in the Collateral.

The obligations to continue to collect and account for 2017 Restructuring Charges will be binding upon the Servicer and any other entity that provides transmission and distribution electric services or, in the event that transmission and distribution electric services are not provided by a single entity, any other entity providing electric distribution services to the Customers.

**Servicing Procedures**

The Servicer, as agent for the Issuer, will manage, service and administer, and bill and collect payments in respect of the 2017 Restructuring Charge according to the terms of the Servicing Agreement. The Servicer's duties will include: (i) obtaining meter reads calculating electricity usage, billing the 2017 Restructuring Charges and collecting the 2017 Restructuring Charges from Customers and third parties, as applicable, (ii) responding to inquiries

of Customers, the Authority, third-party entities who bill and collect the charge, or any Governmental Authority regarding the 2017 Restructuring Charge, (iii) delivering bills to Customers and third parties, accounting for Charge Collections, investigating and handling delinquencies, processing and depositing collections and making periodic remittances, (iv) furnishing periodic reports and statements to the Issuer, the Authority, the Rating Agencies and to the Trustee, (v) selling, as agent for the Issuer, as its interests may appear, defaulted or written off accounts, and (vi) taking all necessary action in connection with True-Up Adjustments as set forth in the Servicing Agreement.

The Servicer is required to notify the Issuer, the Authority, the Trustee and the Rating Agencies in writing of any laws or regulations promulgated after the execution of the Servicing Agreement that have a material adverse effect on the Servicer's ability to perform its duties under the Servicing Agreement.

In addition, upon the reasonable request of the Issuer, the Authority, the Administrator, the Trustee or any Rating Agency, the Servicer will provide to the Issuer, the Authority, the Administrator, the Trustee or the Rating Agency, public financial information about the Servicer or any material information about the 2017 Restructuring Property that is reasonably available, as may be reasonably necessary and permitted by law to enable the Issuer, the Authority, the Administrator, the Trustee or the Rating Agency to monitor the Servicer's performance, and, so long as any 2017 Restructuring Bonds are outstanding, within a reasonable time after written request thereof, any information available to the Servicer or reasonably obtainable by it that is necessary to calculate the 2017 Restructuring Charges.

**Servicing Standards and Covenants**

The Servicing Agreement requires the Servicer to, on behalf of the Issuer (i) manage, service, administer and make collections in respect of the 2017 Restructuring Property with reasonable care in material compliance with applicable law, including all regulations applicable to the Authority, using the same degree of care and diligence that the Servicer exercises with respect to billing and collection activities that the Servicer conducts for itself and others, (ii) follow customary standards, policies and procedures in performing its duties as Servicer that are customary in the electric distribution industry, (iii) use all reasonable efforts, consistent with its customary servicing procedures, to enforce and maintain the Issuer's and the Trustee's rights in respect of the 2017 Restructuring Property, (iv) calculate 2017 Restructuring Charges in compliance with the Securitization Law and Financing Order No. 5, and (v) invoice Customers in accordance with the procedures set forth in the Servicing Agreement. The Servicer shall follow such customary and usual practices and procedures as it shall deem necessary or advisable in its servicing of the 2017 Restructuring Property, which, in the Servicer's judgment, may include the taking of legal action pursuant to the Servicing Agreement or otherwise. The Servicer will not change such customary and usual practices and procedures in any manner that would materially and adversely affect the Issuer's or the Trustee's interest in the 2017 Restructuring Property unless the Servicer provides the Rating Agencies with prior written notice.

The Servicer is responsible for instituting and maintaining any action or proceeding necessary to compel performance by the Authority or the State of New York of any of their obligations or duties under the Securitization Law or Financing Order No. 5 with respect to the 2017 Restructuring Property, and the Servicer agrees to take such legal or administrative actions, including defending against or instituting and pursuing legal actions and appearing or testifying at hearings or similar proceedings, as may be reasonably necessary to block or overturn any attempts to cause a repeal of, modification of or supplement to the Securitization Law or Financing Order No. 5, as the case may be, or the rights of holders of 2017 Restructuring Property that would be adverse to Holders. The Servicing Agreement also designates the Servicer as the servicing agent and custodian for the Issuer with respect to the 2017 Restructuring Property Documentation.

**True-Up Adjustment Process**

Among other things, the Servicing Agreement requires the Servicer to calculate and implement the True-Up Adjustments to the 2017 Restructuring Charges. These adjustments are to be based on actual Charge Collections and updated assumptions by the Servicer as to projected future Charge Collections, projected uncollectibles and loss in collection of billed charges, and future payments and expenses relating to the 2017 Restructuring Property and the 2017 Restructuring Bonds. See "THE FINANCING ORDER–True-Up Adjustment Mechanism."

**Servicing Compensation**

The Issuer will pay the Servicer a Servicing Fee in exchange for all obligations to be performed by the Servicer under the Servicing Agreement. The annual Servicing Fee for the 2017 Restructuring Bonds payable to LIPA, as the initial Servicer or any Successor Servicer that is affiliated with the owner of the T&D System Assets or

performing similar services for the owner of the T&D System Assets, while it is acting as Servicer shall be 0.05% of the aggregate initial principal amount of the 2017 Restructuring Bonds. The annual Servicing Fee for any Successor Servicer that is not affiliated with the owner of the T&D System Assets or not performing similar services for the owner of the T&D System Assets shall be an amount agreed upon by the Issuer and the Successor Servicer, provided that any amount in excess of 0.60% of the initial aggregate principal amount of the 2017 Restructuring Bonds shall be approved by the Authority and the Trustee, and provided, further, that if the Authority fails to approve or disapprove any such Servicing Fee within 30 days following its receipt of a written request to approve the same, the Authority shall be deemed to have approved such Servicing Fee. The Issuer shall also pay all expenses incurred by the Servicer in connection with its activities under the Servicing Agreement (including any fees to and disbursements by accountants, counsel or any other Person, any taxes or payments in lieu of taxes imposed on the Servicer (other than taxes based on the Servicer's net income) and any expenses incurred in connection with reports to Holders, subject to the priorities set forth in the Indenture).

## Servicer Representations and Warranties

In the Servicing Agreement, the Servicer will represent and warrant, as of the Issuance Date, among other things, that:

- the Servicer is a corporation, duly organized and is in good standing in the state of its organization, with the requisite corporate or other power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted by it, and has, the requisite corporate power and authority to service the 2017 Restructuring Property and hold the 2017 Restructuring Property and the 2017 Restructuring Property Documentation as custodian,

- the Servicer is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business (including the servicing of the 2017 Restructuring Property as required by the Servicing Agreement) shall require such qualifications, licenses or approvals (except where the failure to qualify or to obtain such licenses and approvals would not be reasonably likely to have a material adverse effect on the Servicer's business, operations, assets, revenues or adversely affect the servicing of the 2017 Restructuring Property),

- the Servicer has the requisite corporate power and authority to execute and deliver the Servicing Agreement and carry out the terms of the Servicing Agreement; and the execution, delivery and performance of the terms of the Servicing Agreement have been duly authorized by all necessary corporate action on the part of the Servicer,

- the Servicing Agreement constitutes a legal, valid and binding obligation of the Servicer, enforceable against it in accordance with its terms, subject to applicable insolvency, bankruptcy, receivership, reorganization, moratorium, fraudulent transfer and other laws relating to or affecting creditors' rights generally from time to time in effect and to general principles of equity (including concepts of materiality, reasonableness, good faith and fair dealing), regardless of whether considered in a proceeding in equity or at law,

- the consummation of the transactions contemplated by the Servicing Agreement and the fulfillment of the terms thereof do not conflict with, or result in any breach of any of the terms and provisions of, nor constitute (with or without notice or lapse of time) a default under the organizational documents of the Servicer or any material indenture or other agreement or instrument to which the Servicer is a party or by which it is bound; nor result in the creation or imposition of any Lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; nor violate any existing law or any existing order, rule or regulation applicable to the Servicer of any federal or state court or regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Servicer or its properties,

- no approval, authorization, consent, order or other action of, or filing with, any federal or state court or regulatory body, administrative agency or other governmental instrumentality is required in connection with the execution and delivery by the Servicer of the Servicing Agreement, the performance by the Servicer of the transactions contemplated thereby or the fulfillment by the Servicer of the terms thereof, except those that have been obtained or made and those that the Servicer is required to make in the future,

- there are no Proceedings pending or, to the Servicer's knowledge, threatened, and no investigations pending or threatened, before any federal or state court or regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Servicer or its properties involving or relating to the Servicer or, to the Servicer's knowledge, any other Person: (i) asserting the invalidity of the Servicing Agreement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Servicing Agreement, or (iii) seeking any determination or ruling that might materially adversely affect the performance by the Servicer of its obligations under, or the validity or enforceability of, the Servicing Agreement, and

- each report and certificate delivered in connection with the Issuance Advice Letter or delivered in connection with any filing made to the Authority by the Servicer with respect to the 2017 Restructuring Charges or True-Up Adjustments will constitute a representation and warranty by the Servicer that each such report and certificate, as the case may be, is true and correct in all material respects; but to the extent any such report or certificate is based in part upon or contains assumptions, forecasts or other predictions of future events, the representation and warranty of the Servicer with respect thereto will be limited to the representation and warranty that such assumptions, forecasts or other predictions of future events are reasonable based upon historical performance (and facts known to the Servicer on the date such report or certificate is delivered).

**Certificates by Servicer**

*Monthly Servicer Certificates.* On or before the 13th Business Day of each calendar month commencing with February 2018, the Servicer will deliver to the Allocation Agent, the Issuer, the Authority, each Rating Agency and the Trustee a monthly certificate in substantially the form provided in the Servicing Agreement (the "Monthly Servicer Certificate"), stating the amount of 2017 Restructuring Charges deposited into the Allocation Account during the preceding calendar month, the estimated amount of Charge Collections transferred to the Collection Account during the preceding calendar month, the amount of any transfers or reductions in respect of Excess Remittances or the Remittance Shortfalls occurring during the preceding calendar month, and the amount of any transfers or reductions in respect of Excess Remittances or Remittance Shortfalls required to occur on any Remittance Date during the current month pursuant to the Servicing Agreement.

*Semi-annual Servicer Certificates.* At least one Business Day before each Payment Date, the Servicer shall provide to the Issuer, the Trustee, each Rating Agency and the Authority, a certificate in substantially the form in the Servicing Agreement (the "Semi-annual Servicer Certificate") indicating:

1. the amount to be paid to the Holders of each tranche in respect of principal on such Payment Date in accordance with the Indenture,

2. the amount to be paid to the Holders of each tranche in respect of interest on such Payment Date in accordance with the Indenture,

3. the projected bond balance and the bond balance for each tranche as of that Payment Date (after giving effect to the payments on such Payment Date),

4. the amounts on deposit in the Reserve Subaccount (including the Operating Reserve Subaccount and the Debt Service Reserve Subaccount) as of that Payment Date (after giving effect to the transfers to be made from or into the Reserve Subaccount on such Payment Date),

5. the amounts, if any, on deposit in the Excess Funds Subaccount as of that Payment Date (after giving effect to the transfers to be made from or into the Excess Funds Subaccount on such Payment Date),

6. the amounts paid to the Trustee since the preceding Payment Date pursuant to the Indenture,

7. the amounts paid to the Servicer since the preceding Payment Date pursuant to the Indenture, and

8. the amount of any other transfers and payments to be made on such Payment Date pursuant to the Indenture.

*Annual Certificates.* The Servicer shall provide the annual compliance certificate required by the Servicing Agreement in substantially the form provided in the Servicing Agreement (the "Servicer Compliance Certificate").

**Servicer Will Indemnify Issuer in Limited Circumstances**

The Servicer will indemnify the Issuer and the Trustee (for itself and for on behalf of the Bondholders) and each of their respective trustees, members, managers, officers, directors, employees and agents for, and defend and hold harmless each such Person from and against, any and all Losses arising as a result of:

- the Servicer's willful misconduct or negligence in the performance of its duties or observance of its covenants under the Servicing Agreement or the Servicer's reckless disregard of its obligations and duties under the Servicing Agreement,

- the Servicer's breach of any of its representations or warranties under the Servicing Agreement, and

- litigation and related expenses relating to its status and obligations as Servicer.

The Servicer will not be liable, however, for any Losses resulting from the willful misconduct or gross negligence of the party seeking indemnification, or resulting from a breach of a representation or warranty made by any such person in any of the Basic Documents that give rise to the Servicer's breach.

Except to the extent expressly provided for in the Basic Documents (including the Servicer's claims with respect to the Servicing Fees), the Servicing Agreement provides that the Servicer releases and discharges the Issuer (including its trustees, officers, employees and agents, if any), and the Trustee (including its respective officers, directors and agents) from any and all actions, claims and demands which the Servicer may have against those parties relating to the 2017 Restructuring Property or the Servicer's activities with respect to the 2017 Restructuring Property, other than actions, claims and demands arising from the willful misconduct, bad faith or gross negligence of the parties.

The Servicing Agreement further provides that the Servicer will not be liable to the Issuer or to the Trustee, except as provided under the Servicing Agreement, for taking any action or for refraining from taking any action under the Servicing Agreement or for errors in judgment. However, the Servicer will not be protected against any liability that would otherwise be imposed by reason of willful misconduct, bad faith or negligence in the performance of its duties or by reason of reckless disregard of obligations and duties under the Servicing Agreement. The Servicer and any of its directors, officers, employees or agents may rely in good faith on the advice of counsel reasonably acceptable to the Trustee or on any document submitted by any person respecting any matters under the Servicing Agreement. In addition, the Servicing Agreement provides that the Servicer is under no obligation to appear in, prosecute, or defend any legal action incidental to its duties to service the 2017 Restructuring Property in accordance with the Servicing Agreement or related to its obligation to pay indemnification, and that in its reasonable opinion may cause it to incur any expense or liability, except as provided in the Servicing Agreement.

**Matters Regarding Servicer**

The Servicing Agreement provides that LIPA may not resign from its obligations and duties as Servicer thereunder, except upon a determination that LIPA's performance of its duties under the Servicing Agreement is no longer permissible under applicable law. No resignation by LIPA as Servicer will become effective until a Successor Servicer has assumed LIPA's servicing obligations and duties under the Servicing Agreement.

Under the circumstances specified in the Servicing Agreement, any Person which becomes the successor by merger, sale, transfer, lease, management contract or otherwise to all or substantially all of the T&D Systems Assets may assume all of the rights and obligations of the Servicer under the Servicing Agreement. The following are conditions to the transfer of the duties and obligations to a Successor Servicer:

- the successor to the Servicer must execute an agreement of assumption to perform every obligation of the Servicer under the Servicing Agreement,

- immediately after the transfer, no representation or warranty made by the Servicer in the Servicing Agreement will have been breached and no Servicer default or event which after notice of, lapse of time or both, would become a Servicer default, has occurred and is continuing,

- the Servicer has delivered to the Issuer and to the Trustee an Officer's Certificate stating that the transfer complies with the Servicing Agreement and all conditions to the transfer under the Servicing Agreement have been complied with,

- the Servicer has delivered to the Issuer and to the Trustee an Opinion of Counsel stating either that all necessary filings to preserve, perfect and maintain the priority of the Issuer's interests in and the

Trustee's lien on the 2017 Restructuring Property, have been made or that no filings are required to preserve and protect such interests,

- the Servicer has given prior written notice to the Rating Agencies, and

- the Servicer has delivered to the Issuer, the Trustee and the Authority an opinion of independent tax counsel to the effect that, for federal income tax purposes, such transaction will not result in a material federal income tax consequence to the Issuer, the Trustee, or the then existing Holders.

So long as the conditions of any such assumptions are met, then the prior Servicer will automatically be released from its obligations under the Servicing Agreement.

The Servicing Agreement permits the Servicer to contract with a subservicer to perform all or any portion of its obligations. However, the contract must satisfy the Rating Agency Condition and the Servicer must remain obligated and liable to the Issuer, the Trustee and the Bondholders for the servicing and administering of the 2017 Restructuring Property in accordance with the Servicing Agreement. The Servicing Agreement provides that the OSA, as amended from time to time, is deemed to satisfy the Rating Agency Condition.

**Annual Accountant's Report**

The Servicer shall cause a firm of Independent registered public accountants (which may provide other services to the Servicer or its affiliates) to prepare annually, and the Servicer shall deliver annually to the Issuer, the Trustee, the Rating Agencies and the Authority on or before March 31 of each year, commencing with 2018 to and including the March 31st succeeding the Final Maturity Date of the 2017 Restructuring Bonds, a report addressed to the Servicer (the "Annual Accountant's Report"), to the effect that such firm has performed certain procedures, agreed between the Servicer and such accountants, in connection with the Servicer's compliance with its obligations under the Servicing Agreement during the preceding twelve months ended December 31 (or, in the case of the first Annual Accountant's Report to be delivered on or before March 31, 2018, the period of time from the date of the Servicing Agreement until December 31, 2017), identifying the results of such procedures and including any exceptions noted. In the event such accounting firm requires the Trustee or the Issuer to agree or consent to the procedures performed by such firm, the Issuer shall direct the Trustee in writing to so agree; it being understood and agreed that the Trustee will deliver such letter of agreement or consent in conclusive reliance upon the direction of the Issuer, and the Trustee will not make any independent inquiry or investigation as to, and shall have no obligation or liability in respect of, the sufficiency, validity or correctness of such procedures.

The Annual Accountant's Report shall also indicate that the accounting firm providing such report is independent of the Servicer in accordance with the New York Public Authorities Law or the Code of Professional Ethics of the American Institute of Certified Public Accountants, as then in effect.

**Servicer Defaults and Remedies**

If any one or more of the following events (a "Servicer Default") shall occur and be continuing:

(a)     any failure by the Servicer to cause payments by or on behalf of Customers received by the Servicer from 2017 Restructuring Charges to be deposited into the Allocation Account as provided in the Servicing Agreement or any failure to cause the Allocation Agent to transfer to the Trustee any required remittance and cause other amounts received from 2017 Collateral to be deposited to the Collection Account pursuant to the Servicer Agreement that shall continue unremedied for a period of 5 Business Days after written notice of such failure is received by the Servicer from the Issuer or the Trustee,

(b)     any failure on the part of the Servicer duly to observe or to perform in any material respect any covenants or agreements of the Servicer set forth in the Servicing Agreement, which failure (i) materially and adversely affects the 2017 Restructuring Property or the rights of the Holders and (ii) continues unremedied for a period of 60 days after the date on which (A) written notice of such failure shall have been given to the Servicer by the Issuer, the Authority, the Allocation Agent, the Administrator, or the Trustee, or (B) after discovery of such failure by an officer of the Servicer,

(c)     any representation or warranty made by the Servicer in the Servicing Agreement proves to have been incorrect when made, which has a material adverse effect on the Issuer or the Holders and which material adverse effect continues unremedied for a period of 60 days after the date on which

(A) written notice thereof shall have been delivered to the Servicer by the Issuer, or the Authority, or the Trustee, or (B) after discovery of such failure by an officer of the Servicer, as the case may be, or

(d)      an Insolvency Event occurs with respect to the Servicer;

then, and in each and every case, so long as the Servicer Default shall not have been remedied, either the Trustee may, or shall upon the instruction of the Authority (acting on behalf of Customers) or the Holders of a majority of the outstanding principal amount of the 2017 Restructuring Bonds, by notice then given in writing to the Servicer (and to the Trustee if given by the Holders) (a "Termination Notice"), may terminate all the rights and obligations (other than the indemnity obligations and the obligation to continue performing its functions as Servicer until a Successor Servicer is appointed) of the Servicer under the Servicing Agreement.  In addition, upon a Servicer Default, any interested person shall be entitled to apply to any court in New York for sequestration and payment of revenues arising with respect to the 2017 Restructuring Property.  On or after the receipt by the Servicer of a Termination Notice, all authority and power of the Servicer under the Servicing Agreement, whether with respect to the 2017 Restructuring Property, the 2017 Restructuring Charge, or otherwise, shall, upon appointment of a Successor Servicer pursuant to the Servicing Agreement, without further action, pass to and be vested in such Successor Servicer; and, without limitation, the Trustee is thereby authorized and empowered to execute and deliver, on behalf of the predecessor Servicer, as attorney-in-fact or otherwise, any and all documents and other instruments, and to do or accomplish all other acts or things necessary or appropriate to effect the purposes of such Termination Notice, whether to complete the transfer of the 2017 Restructuring Property Documentation and related documents, or otherwise.  The predecessor Servicer shall cooperate with the Successor Servicer, the Issuer, the Allocation Agent and the Trustee in effecting the termination of the responsibilities and rights of the predecessor Servicer under the Servicing Agreement, including the transfer to the Successor Servicer for administration by it of all cash amounts that shall at the time be held by the predecessor Servicer for remittance, or shall thereafter be received by it with respect to the 2017 Restructuring Property or the 2017 Restructuring Charge.  As soon as practicable after receipt by the Servicer of such Termination Notice, the Servicer shall deliver the 2017 Restructuring Property Documentation to the Successor Servicer.  All reasonable costs and expenses (including attorneys' fees and expenses) incurred in connection with transferring the 2017 Restructuring Property Documentation to the Successor Servicer and amending the Servicing Agreement to reflect such succession as Servicer pursuant to the Servicing Agreement shall be paid by the predecessor Servicer upon presentation of reasonable documentation of such costs and expenses.

*Successor Servicer.*  Upon the Servicer's receipt of a Termination Notice or the Servicer's resignation or removal in accordance with the terms of the Servicing Agreement, the predecessor Servicer shall continue to perform its functions as Servicer and shall be entitled to receive the requisite portion of the Servicing Fee and reimbursement of expenses, until a Successor Servicer shall have assumed in writing the obligations of the Servicer.  In the event of the Servicer's removal or resignation, and upon application of the Trustee, the Authority will appoint a Successor Servicer.  Any appointment of a Successor Servicer requires the consent of the Holders of a majority of the outstanding principal amount of the 2017 Restructuring Bonds, and the Successor Servicer shall accept its appointment by a written assumption in a form reasonably acceptable to the Issuer and the Trustee.  If within 30 days after the delivery of the Termination Notice, a new Servicer has not been appointed and accepted such appointment, the Trustee may petition the Authority or a court of competent jurisdiction to appoint a Successor Servicer.  A Person shall qualify as a Successor Servicer only if (i) such Person is permitted under the Securitization Law, the regulations of the Authority, Financing Order No. 5 and the Servicing Agreement to perform the duties of the Servicer, (ii) the Rating Agency Condition shall have been satisfied, and (iii) such Person enters into a servicing agreement with the Issuer having substantially the same provisions as the Servicing Agreement.

Upon appointment, the Successor Servicer shall be the successor in all respects to the predecessor Servicer and shall be subject to all the responsibilities, duties and liabilities arising thereafter relating thereto placed on the predecessor Servicer and shall be entitled to the Servicing Fee and all the rights granted to the predecessor Servicer by the Servicing Agreement.

The Successor Servicer may resign only if it is prohibited from serving as such by applicable law.

*Waiver of Past Defaults.*  The Trustee, with the consent of the Authority and the Holders of the majority of the outstanding principal amount of the 2017 Restructuring Bonds, on behalf of all Holders, may waive in writing any default by the Servicer in the performance of its obligations except a default in making any required deposits to the Allocation Account in accordance with the Servicing Agreement.   The Servicer is required to provide notice of any such waivers to each Rating Agency, promptly after its receipt thereof from the Trustee.  Upon any such waiver of a