```
 1                     UNITED STATES DISTRICT COURT

 2                      DISTRICT OF PUERTO RICO

 3
     In Re:                        )       Docket No. 3:17-BK-3283(LTS)
 4                                 )
                                   )       Title III
 5   The Financial Oversight and )
     Management Board for          )
 6   Puerto Rico,                  )       (Jointly Administered)
                                   )
 7   as representative of          )
                                   )
 8   The Commonwealth of           )
     Puerto Rico, et al.,          )       October 30, 2019
 9                                 )
     and                           )
10                                 )
     Puerto Rico Electric          )
11   Power Authority,              )
                                   )
12                   Debtors.      )

13   _____

14                        OMNIBUS HEARING

15    BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

16               UNITED STATES DISTRICT COURT JUDGE

17   _____

18
     APPEARANCES:
19
     For The Commonwealth
20   of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
                              Ms. Laura Stafford, PHV
21                            Mr. Brian S. Rosen, PHV
                                 Appearing in New York
22
     For the U.S. Trustee
23   Region 21:              Ms. Monsita Lecaroz Arribas, AUST

24

25
```

```
 1 ‖ APPEARANCES (Continued):

 2 ‖
      For the Official
 3 ‖  Committee of Unsecured
      Creditors:              Mr. Luc A. Despins, PHV
 4 ‖
      For the Puerto Rico
 5 ‖  Fiscal Agency and
      Financial Advisory
 6 ‖  Authority:              Mr. Peter Friedman, PHV
                                  Appearing in New York
 7 ‖
      For the Asociacion de
 8 ‖  Maestros de
      Puerto Rico:            Mr. Jose L. Barrios Ramos, Esq.
 9 ‖

10 ‖  For the Bankruptcy
      Estate of Romualdo
11 ‖  Rivera Andrini,
      Chapter 7 Trustee:      Ms. Noreen Wiscovitch Rentas, Esq.
12 ‖

13 ‖

14 ‖

15 ‖

16 ‖

17 ‖

18 ‖

19 ‖

20 ‖

21 ‖

22 ‖

23 ‖

24 ‖
      Proceedings recorded by stenography.  Transcript produced by
25 ‖  CAT.
```

```
 1                        I N D E X

 2  WITNESSES:                                    PAGE

 3       None offered.

 4

 5  EXHIBITS:

 6       None offered.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                                    San Juan, Puerto Rico

 2                                    October 30, 2019

 3                                    At or about 9:30 AM

 4                         *      *      *

 5           THE COURT:  Again, good morning and welcome to

 6   counsel, parties in interest, and members of the public and

 7   press here in San Juan, those observing here and in New York,

 8   and the telephonic participants.  As always, it is good to be

 9   back here.

10           I remind you that consistent with court and judicial

11   conference policies, and the Orders that have been issued,

12   there is to be no use of any electronic devices in the

13   courtroom to communicate with any person, source, or outside

14   repository of information, nor to record any part of the

15   proceedings.  Thus, all electronic devices must be turned off

16   unless you are using a particular device to take notes or to

17   refer to notes or documents already loaded on the device.  All

18   audible signals, including vibration features, must be turned

19   off.

20           No recording or retransmission of the hearing is

21   permitted by any person, including but not limited to the

22   parties or the press.  Anyone who is observed or otherwise

23   found to have been texting, e-mailing or otherwise

24   communicating with a device from a courtroom during the court

25   proceeding will be subject to sanctions, including but not
```

1    limited to confiscation of the device and denial of future

2    requests to bring devices into the courtroom.  And again, a

3    warm welcome and good morning to everyone.

4            So our timing today is 9:30 to 12:00, and from 1:00

5    to 5:00, if necessary.  And Agenda Item IV.4 will be taken up

6    at 10:30 this morning, if the individual who's filed papers in

7    that matter wishes to be heard.

8            We'll begin with the report of the Oversight Board.

9            MR. BIENENSTOCK:   Good morning, Judge Swain.

10           THE COURT:  Good morning, Mr. Bienenstock.

11           MR. BIENENSTOCK:   Martin Bienenstock from Proskauer

12   Rose for the Oversight Board.

13           Your Honor, in respect of the first topic, the

14   general status and activities of the Oversight Board, since

15   the September hearing, the Oversight Board's primary

16   activities have included the following:  The Joint Plan and

17   Disclosure Statement.  On September 27th, the Oversight Board

18   filed the Proposed Plan of Adjustment for the Commonwealth,

19   the Public Buildings Authority, and the Employees Retirement

20   System, and a proposed Disclosure Statement explaining it.

21   The Joint Plan addresses over 35 billion of debt and other

22   claims against these debtors and more than 55 billion of

23   pension liabilities, and brings Puerto Rico closer to emerging

24   from Title III.

25           In respect of creditor and stakeholder negotiations,

1    the filed Plan reflects the deals negotiated with three

2    significant stakeholder groups:  The Official Committee of

3    Retirees, the Group of Government Employees represented by the

4    Public Service Union, and the Puerto Rico Chapter of AFSCME,

5    and the Lawful Constitutional Debt Coalition, LCDC.

6         The Oversight Board continues to meet with other

7    individual creditors and creditor groups in and out of

8    mediation in the hopes of building more consensus for the Plan

9    of Adjustment.  The Oversight Board also continues its efforts

10   to broaden active public employee support for its proposed

11   plan.

12        The entire mediation team has been instrumental to

13   achievements in mediation, and the Oversight Board looks

14   forward to continuing those sessions.  On October 28, this

15   Court extended the deadline for the mediation team to file its

16   report, and the current Stay Order lasts until December 31,

17   2019, unless the Court orders otherwise.

18        In respect of PREPA, the Oversight Board is working

19   with the Commonwealth on the transformation of PREPA to ensure

20   reliable and cost effective energy for the people of Puerto

21   Rico.  We agree that private management of PREPA's generation,

22   transmission and distribution systems are key to its

23   transformation, and we continue to collaborate with the

24   Commonwealth to that end.

25        In respect of the fiscal plans and budgets, the

1    Oversight Board continues to monitor implementation of the

2    measures called for in the certified fiscal plans, and to meet

3    constantly with AAFAF and other government representatives in

4    respect of those measures.  The Oversight Board's executive

5    director, Natalie Jaresko, recently testified on Capitol Hill

6    about the Board's progress, both in terms of providing the

7    components necessary for a sustainable economy in Puerto Rico

8    and the debt restructuring.

9         In respect of disaster relief, the Oversight Board

10   continues to advocate on Capitol Hill for additional and

11   faster support from the Federal Government, particularly

12   regarding disaster relief funding Puerto Rico desperately

13   needs for its recovery.

14        Your Honor, in respect of the second topic for the

15   status report, the reformulation of the debtors' ADR proposal,

16   I'm going to provide an overview.  And my partner, Brian

17   Rosen, is in the courtroom in New York if there are detailed

18   questions that I can't answer.

19        Since the Court provided guidance at the July Omnibus

20   hearing, the debtors have worked with the Administrative

21   Office of the U.S. Courts to develop a revised proposed ADR

22   procedures motion.  We've received some feedback from the

23   Administrative Office, as well as from AAFAF, on the most

24   recent draft of our ADR procedures motion.

25        At the same time, using the proposed mailing that the

1   Court had approved at the July Omnibus hearing, we have mailed

2   letters to claimants who did not provide sufficiently detailed

3   information with their claims forms to enable the debtors to

4   process them.  Although the response rate to these letters has

5   not been as high as hoped, the Board remains hopeful that the

6   response we are receiving will help us develop a better

7   picture of the number and type of claims that will ultimately

8   need to be resolved through the ADR process.

9       The debtors are continuing to attempt to reconcile

10  the Court's guidance, and the feedback we're receiving from

11  the Office of U.S. Courts and other parties, and our latest

12  draft of the ADR motion, and the responses we have received to

13  the proposed mailings and intend to propose a revised ADR

14  procedure as soon as practicable.

15      In respect of PRIDCO's RSA and anticipated Title VI

16  filing, PRIDCO has public bonds in the outstanding amount of

17  approximately 150 million dollars in principal, and 15 million

18  dollars in accrued interest.

19      As AAFAF notified the Court at the June 13 Omnibus

20  hearing, AAFAF entered into a Restructuring Support Agreement

21  with over two-thirds of the bondholders.  While the Oversight

22  Board has not been formally asked to approve the RSA as a

23  qualifying modification, the Board's professionals are working

24  with AAFAF's professionals to understand the mechanics and

25  numbers underlying the RSA.  This process is ongoing.  Should

1    the Oversight Board issue a voluntary agreement certification

2    as a result of the PRIDCO RSA, the parties would aim to

3    commence a Title VI case qualifying modification for PRIDCO by

4    year end or first quarter of 2020.

5         In respect of the general status of relations among

6    the Oversight Board, the Commonwealth, and the Federal

7    Governments, the chairman of the Oversight Board communicates

8    frequently with the Governor, as does the Board's executive

9    director, who is also in constant communication with the

10   Governor's senior advisors.  As always, the relations among

11   the professionals for the government and the Oversight Board

12   are excellent.

13        There is constant constructive communication.  As

14   Natalie Jaresko testified to Congress on October 22, 2019, the

15   Oversight Board, the Governor and her team have held dozens of

16   meetings on the Fiscal Plan and budget implementation.  We

17   have made great progress working together, despite ongoing

18   differences to some extent.

19        Since this Court's July Stay Order, the Oversight

20   Board and AAFAF cooperated to commence PBA's Title III case,

21   and to continue to cooperate -- and to continue to cooperate

22   on PRIDCO's anticipated Title VI filing.  The Oversight Board

23   has also been working closely with AAFAF and OMB on other

24   issues outside the Joint Plan.  For instance, the Oversight

25   Board and AAFAF are working to better understand the needs of

1    the Departments of Education and Corrections in order to

2    determine how underutilized funds can best be allocated to

3    priority areas, while ensuring their efficient utilization.

4         In respect of relations with the Federal Government,

5    the Oversight Board laments the slow disbursement of federal

6    disaster aid funding, particularly public assistance funding

7    from the Federal Emergency Management Agency, FEMA, and

8    disaster recoveries, CDBRDR funding from the U.S. Department

9    of Housing and Urban Development.  This funding is essential

10   to restoring critical infrastructures to Puerto Rico and

11   generating long-term economic recovery, yet both FEMA and HUD

12   have been slow to obligate and disburse funding.

13        Reconstruction efforts are slow.  More than two years

14   since the double tragedies of hurricanes Irma and Maria, very

15   few permanent projects have begun.  This result is unusual and

16   does not remotely match the time line for other disasters,

17   such as Hurricane Katrina and Hurricane Harvey.

18        Relief funding has been slowly disbursed.  Of the

19   19.9 billion dollars in funds allocated to Puerto Rico by

20   Congress, only 1.5 billion have been made available, and only

21   a fraction of that amount has been drawn down.  Another 8.2

22   billion still requires HUD's authorization to release, and

23   10.2 billion requires HUD's publication of notice in the

24   Federal Register.

25        The Oversight Board has also raised its concern with

1   Congress that several proposed amendments to PROMESA will

2   undermine pending negotiations and Title III restructuring

3   efforts, as well as the return to economic sustainability of

4   Puerto Rico, although we do not think that was the intent of

5   Congress, and the Oversight Board has expressed its views and

6   reasons.

7          The Oversight Board has and does support legislative

8   efforts to provide additional federal support to Puerto Rico,

9   including equitable treatment for Puerto Rico in terms of the

10  Medicaid program and the expansion of the Earned Income Tax

11  Credit to families in Puerto Rico.

12         Your Honor, subject to the Court's questions, that

13  concludes the status report.

14         THE COURT:  Thank you.  I do have more questions

15  about the ADR related proposal.  And so I gather I should

16  direct those to Mr. Rosen?

17         MR. BIENENSTOCK:  That would be excellent, and I see

18  him approaching the podium in New York.

19         THE COURT:  Thank you, Mr. Bienenstock.

20         Good morning, Mr. Rosen.

21         So, Mr. Rosen, as you know, we had been expecting a

22  reformulated proposal to be publicly proposed.  I'm aware of

23  interactions that have been had with the Administrative

24  Office, and based on the sorts of features that were seen in

25  the draft to the Administrative Office, I can tell you that

1    the Administrative Office and the Court have invested time and

2    exploratory efforts in aid of understanding how front end

3    mediation and arbitration procedures that have been employed

4    in connection with other complex matters could possibly be

5    adapted for these cases.  And we have been seeking to ready

6    any necessary judicial resources to deal with claims that are

7    either not resolved through a nonjudicial process, or to deal

8    with judicial involvement in such a front end process because,

9    you know, at this point we're not aware of a proposal to bring

10   outside resources to that front end.

11          So we are at a bit of a timing problem.  We've been

12   trying to keep up with you.  It seems like we may have gotten

13   ahead of you.  And we have some real time and resource

14   allocation issues to deal with, and this appears to be a

15   window of opportunity to focus on these things before the

16   mediators' report comes in, the scheduling proposal comes in,

17   and I understand that I may be off to the races in an

18   unprecedented way after that.  So I'm trying to use my time

19   well.

20          So if you can give me, you know, some more insight

21   into whether you want us to stand down, whether you think the

22   timetable is changing, whether you think there's something

23   that may be helpful in Mr. Mudd's proposal, or looking to

24   another organization like, you know, JAMS or something to

25   propose a structure, I'm anxious to hear about any and all of

1  that.

2         MR. ROSEN:  As you know, Your Honor, pursuant to a

3  prior Order of the Court, we sent out letters to almost

4  100,000, I believe, claimants who had submitted Proofs of

5  Claim which were, as we thought them to be, deficient in

6  nature, and we've received some limited responses with respect

7  to those.  And as Ms. Stafford, who is sitting in the

8  courtroom, will go through in a little bit in connection with

9  the administrative claims reconciliation process, we've

10 actually -- based upon those responses, we filed, I believe,

11 Omnibus objections to approximately 16,000 claims last week,

12 hopefully removing those from the docket at the next Omnibus

13 hearing, I believe, in December.

14        Many of those claims initially we thought might be

15 earmarked for the ADR process, but in the fact that they are,

16 in fact, totally deficient and will probably be dismissed,

17 that amount of claims will be removed and it will be a much

18 smaller number, a universe.  Likewise, if the administrative

19 claims reconciliation procedure is granted today, tens of

20 thousands of claims will likewise be removed from the Court

21 registry and hopefully put in a side-by-side registry, as

22 Ms. Stafford will go through, but there will be fewer claims,

23 therefore, for an ADR process.

24        The glitches I believe ultimately fell upon it in

25 connection with the ADR was with respect to the binding

1   arbitration.  As Your Honor will recall, when you gave us your

2   ideas in July, that was something that everyone thought was --

3   we should try to do that.  In fact, the Unsecured Creditors

4   Committee had even suggested that there be some form of

5   binding arbitration.

6         Unfortunately, when we investigated the process, we

7   found that the minimum amount, cost, associated with a binding

8   arbitration was approximately $5,000 per claim.  And by just

9   extrapolating that out, we saw over a hundred million dollars

10  if, in fact, all those claims had to go to binding

11  arbitration.  And that was something the Commonwealth just

12  felt it could not bear, inasmuch as the Court likewise could

13  not bear the responsibility for that.

14        I was heartened to see Mr. Mudd's pleading yesterday

15  where he said that he had actually been in communication with

16  an entity that might be able to provide services.  I don't

17  know if those would be free of charge, Your Honor, or those

18  might carry a fee associated with it, but we're trying to find

19  a way to do the binding arbitration and have it be a de

20  minimis cost to the government itself.  I don't know if we

21  will be successful.

22        And I do acknowledge that the Court really cannot be

23  in the binding arbitration business, but if, in fact, we're

24  successful in doing that, then those would have to be just

25  claims objections, Your Honor, that we would have to bring to

1  the Court, subject to the other ADR components that we thought

2  would be helpful in expediting that process.  But that's

3  really where we're stuck, Your Honor.  It's arbitration.

4        THE COURT:  Well, there is also -- well, we've been

5  talking.  Your proposals have used the nomenclature

6  "mediation" for some limited features, like a targeted number

7  for settlement, that sort of thing.

8        MR. ROSEN:  Yes.

9        THE COURT:  There are models of mediation that, shall

10  I say, are a little bit more aggressive about seeking to lead

11  people to settlement as opposed to merely facilitating

12  discussions.  And if there is going to be a proposal that the

13  court system come up with people to perform a mediation

14  function, whether that's more a settlement judge function or

15  an evaluator function, that's something that, you know, we

16  need to be able to anticipate structurally and see whether we

17  could staff it.

18        And I understand that we're all a little bit in the

19  dark as to the ultimate likely volume, but while binding

20  arbitration with informed consent and at a reasonable cost

21  would be great, a front end aggressive settlement opportunity

22  might also be helpful.  And that might be something that we

23  could be a part of or coordinate in some way, because that's

24  also something that nonjudicial mediators, properly trained,

25  if available, could be involved in.

1          MR. ROSEN:  Yes, Your Honor.  Ms. Abdelmasieh did

2    suggest that and said it was used in another situation.

3    Ms. Stafford and I have had conversations with her about that.

4    And if that's a process that the Court would like us to

5    undertake, we'll discuss it again and come back to

6    Ms. Abdelmasieh with respect to that.

7          THE COURT:  That would be helpful.  Again, we're

8    trying to figure out whether, at the end of the day, you're

9    going to be looking to us.  And if you are, we want to be able

10   to have something to respond to that we can deliver on.

11         MR. ROSEN:  Absolutely.

12         THE COURT:  But we don't want to undertake anything

13   that's unnecessary.

14         If I can just go back for a minute to the request

15   letters and the Omnibus Objections that have been filed, would

16   you just give me a sense of what criteria you used to

17   determine that a claim was sufficiently deficient, that it

18   required a letter and is now properly the subject of one of

19   these Omnibus Objections?

20         MR. ROSEN:  Yes, Your Honor.  If I could actually

21   defer to Ms. Stafford, who's sitting with you in that

22   courtroom, because she's been working directly with Alvarez &

23   Marsal, and putting that together and sending those out.

24         THE COURT:  Good morning, Ms. Stafford.

25         MS. STAFFORD:  Good morning.  Ms. Stafford from

1  Proskauer Rose for the Financial Oversight and Management

2  Board.

3          So for the Omnibus Objections that we set for the

4  December Omnibus hearing, those particular objections, we

5  really were focused on identifying claims that were as a --

6  that really didn't provide any sort of detail, any sort of

7  documentation or supporting information.  Each one of those

8  claims is essentially just a claim form with no supporting

9  documentation attached.

10          And when we were working through the process of

11  identifying which claim forms don't provide us with enough

12  information, in addition to not having any supporting

13  documentation, we were focused on claims that sought -- that

14  had identified either employee benefits writ large as the

15  basis for their claim, but didn't provide any specific

16  information about what benefits were being sought, whether

17  there was any administrative process that the claimant had

18  begun working through with the Commonwealth procedures, or

19  anything along those lines that might provide some indication

20  of how we could go about finding whether or not there was an

21  actual basis to the claim.

22          So the ones that were set for the December Omnibus

23  hearing are ones than essentially just provide very broad,

24  nonspecific explanations of what it is that they are trying to

25  claim, such as employee benefits, or the statement of Law 50

1    or Law 80 or something along those lines that would provide

2    some -- that doesn't provide us with enough information to

3    understand how that law may have resulted in liabilities owed

4    to that claimant.  That gives you a little bit of background

5    about what was set for the December Omnibus hearing.

6            In terms of the letter procedures and the hundred

7    thousand letters that were sent out, we sent those letters out

8    to anyone who did not provide us with enough information to

9    understand, for example, if they were asserting a bond claim,

10   what the CUSIP number of that bond may have been, or what bond

11   was specifically being asserted; with respect to litigation

12   claims, if there was no information about the specific case

13   number that the claimant had against -- in the Commonwealth

14   systems.

15           So if you have any questions about the -- either the

16   letters or the December objections, I'm happy to answer them.

17           THE COURT:  That's very helpful.

18           MR. ROSEN:  Your Honor, I'm sorry.  If I could just

19   add one other thing, Your Honor.  If you recall, as we neared

20   the bar date itself, there was an influx or lines that formed

21   around blocks with people filing claims.  Many of these people

22   felt they -- or were told they had to file claims.  And

23   unfortunately, there were attorneys who came forward and said,

24   give me a certain amount of money and I will help you and I

25   will assist you in filing a Proof of Claim.

1          Many of these claims really didn't even have -- many

2     of the claimants didn't even have claims themselves.  And what

3     we've been finding with the numerous letters we've sent out,

4     the hundred thousand letters, we're really cleaning up those

5     that really shouldn't have been filed in the first place

6     because they didn't have any claim, and they had nothing to

7     substantiate the claim that was filed.  That's what's coming

8     on in the next Omnibus hearing.

9          THE COURT:  Thank you.  And I had suspected that.

10    It's good to hear you make that more concrete.

11         And in terms of my being able ultimately to be

12    comfortable with the process and the opportunity for people to

13    be heard, am I correct in thinking of these as claims that

14    would have been filed in our claims process, which of course

15    postdated the hurricanes?  So it would have been people who

16    knew about the claims process, who filed a paper with a

17    post-hurricane address on it, and in the context of

18    information that had gone out that included notification of

19    their obligation to keep the address current or have some way

20    of responding to objections to their claims, the letters would

21    have been sent out to those addresses, not responded to, and

22    now there is motion practice again being sent out to those

23    addresses so that they again have an opportunity to come

24    forward before anything is done by way of expunging the claim?

25    Would that be correct?

1          MS. STAFFORD:  That's correct, Your Honor.

2          MR. ROSEN:  Yes, Your Honor.

3          THE COURT:  Thank you.  I appreciate your confirming

4     that.

5          And so going back to the ADR type process, we should

6     anticipate that there'll be further contact with Ms.

7     Abdelmasieh, and that that will be helpful to us in

8     determining the timing, deployment and pace of focus of our

9     resources?

10         MR. ROSEN:  Yes, Your Honor.  Ms. Stafford and I will

11    be in contact with her probably later this week, and hopefully

12    we'll get something on file real soon.

13         THE COURT:  Thank you.  Much appreciated.

14         MS. STAFFORD:  Thank you, Your Honor.

15         THE COURT:  Thank you both.

16         Mr. Despins.

17         MR. DESPINS:  Good morning, Your Honor.  Luc Despins

18    with Paul Hastings on behalf of the Official Committee.  This

19    will not be long.  Just two issues.

20         I fully understood that you had entered an Order

21    allowing them to send letters to claimants, but I don't -- and

22    I'll check that so we don't need to spend a lot of time, but I

23    don't recall the Court entered an Order authorizing the filing

24    of Omnibus Objections to Commonwealth claims.  But we --

25         THE COURT:  Well, there have been a couple of

1  variations on Orders authorizing Omnibus Objections to

2  Commonwealth claims.

3      MR. DESPINS:  To duplicate claims, et cetera, but

4  this has gone beyond that I believe.

5      THE COURT:  Well, there was a second phase Order that

6  increased the cap number per Omnibus Objection and had some

7  broader language about nonsubstantive claims.  And so I'm

8  assuming that the debtors are taking the position that a claim

9  that says, I have a piece of paper that has no information on

10  it that I can understand and, therefore, should be expunged is

11  a nonsubstantive claim.

12      Would that be generally correct, Ms. Stafford?

13      MS. STAFFORD:  Yes, that would.  And also, the Order

14  that was entered relating to the proposed mailings and the

15  proposed mailing itself both indicated that if no response was

16  received, we would be able to proceed with Omnibus objections

17  against those claims.

18      THE COURT:  And so perhaps offline, you can point

19  Mr. Despins to the docket entry numbers of those Orders.

20      MS. STAFFORD:  I'd be happy to.

21      THE COURT:  Thank you.

22      MR. DESPINS:  That's really not my main point.  The

23  main point on the ADR, Your Honor, is that we are not included

24  in this process.  These are our claimants that we're dealing

25  with.  And we've suggested mandatory ADR Detroit style, as

1    Your Honor suggested in July -- back in June -- I'm sorry,

2    January 2018.  And the Board has to date steadfastly refused

3    to go that direction or to include us in the discussion of why

4    that doesn't work or why it cannot be done.

5            From the point of view of the claimants, Your Honor,

6    they don't have money.  For them to appear in front of a

7    magistrate and all that, that whole procedure, and then

8    appeals that can ensue from that, they cannot afford that.

9    That's why the arbitration is so critical.

10           THE COURT:  Yet you have to have somebody to do the

11   arbitration.

12           MR. DESPINS:  Yes, but the government pays for that,

13   not the claimants.  So I understand there's a process in order

14   to weed out just the claims that are material enough to

15   warrant arbitration, but the point is that -- from the

16   Committee's point of view, is that we should be front and

17   center in that process and we're not.

18           THE COURT:  Blame PROMESA, again, that gives control

19   of the process, the leadership in proposing these mechanisms

20   to the debtors' representative, which is the Oversight

21   Board.

22           MR. DESPINS:  Absolutely.

23           THE COURT:  But I do encourage you to be, you know,

24   early, often, persistent and robust in any constructive help

25   that you can offer to the Oversight Board.

1          MR. DESPINS:  So --

2          THE COURT:  And there will be -- once something is

3    proposed publicly, there will be plenty of opportunity to

4    interrogate that, as we stated in July.

5          MR. DESPINS:  I know, but that's not the way it

6    should work.  At the end of the day, that's not a productive

7    way of doing things.  But we will try.  We will take you --

8    not you, but we'll take the Board up on your suggestion there.

9          THE COURT:  I hear your commentary and I accept your

10   constructive criticism.

11         MR. DESPINS:  Moving on to a totally different topic,

12   but still related to the presentation by Mr. Bienenstock,

13   PREPA.  There's something, Your Honor, that's going on that's

14   a bit bizarre here.  You know, you've often referred to the

15   litigation machine in the case, and that machine is going on

16   full steam ahead in PREPA.  You know that.  Judge Dein knows

17   that.

18         And so you might say, well, why is he raising it.

19   I'm raising this because as recently as October 1st, the head

20   of AAFAF, talking to the newspapers, said that the AAFAF and

21   the government are reviewing the terms of the PREPA RSA.

22         And, well, so put that aside for a second.  Yesterday

23   the Governor said that she is -- it would be premature for

24   people to conclude that she has signed off on the rate

25   increases reflected in the RSA.  And by the way, we have no

1    problems with that, I mean, in the sense that a new Governor

2    should take the time to do that.  But what's happening is that

3    we are going full steam ahead at a very high clip on a hearing

4    that now is going to be postponed until January, when that

5    hearing may never happen.

6         So I just want to make sure the Court is aware of it.

7    There's something that doesn't add up here.  If they want to

8    take the time to determine whether they should support it or

9    not, God bless them, but let's not go through with this

10   pretend litigation that may never happen.

11        So I raised it with Mr. Bienenstock.  I raised it

12   with Mr. Friedman yesterday.  I don't see in New York whether

13   Mr. Friedman is there or not.  But that's not -- there's

14   something that is not right there.  Either they're on board,

15   which is not fine because we're against the deal, or they're

16   not on board, but the estate should not be spending tons of

17   money on a litigation that may never occur.

18        Thank you.

19        THE COURT:  Thank you.

20        Mr. Bienenstock, would you like to respond?

21        MR. BIENENSTOCK:   Thank you, Your Honor.  As

22   Mr. Despins and I discussed earlier, we have a joint interest

23   in not wanting time and fees to be expended needlessly.  The

24   bottom line here is that the Oversight Board is committed to a

25   more efficient energy production system for Puerto Rico.  This

1   goes not only to the debt restructuring, but to the very

2   essence of the economic sustainability that we're supposed to

3   provide. There has to be a conversion to a less expensive

4   form and cleaner form of energy.

5        Mr. Despins' comments about the Governor's comments

6   and the legislature's comments are accurate. And we've

7   learned, that's a way of life. We're in a political system

8   here.

9        And they did sign the RSA, Your Honor. There are

10  other things that the Governor and/or legislature may have to

11  do to get the ultimate arrangement consummated, and those are

12  the things that, if they decide not to do them, would

13  definitely throw a wrench in the works; but we don't see that

14  stopping things because they might do something in the future

15  is the right thing for Puerto Rico. All of the -- any delay

16  in getting to a sustainable economy is a much bigger cost than

17  the litigation cost from now until a January hearing.

18       So yes, we share their concern about costs and

19  expenses, and I think on all sides, people are doing what they

20  can to minimize them, but we are in a political system. We

21  have to live with that. We -- there are some things we can't

22  tie down, the Governor or the legislature or even know who is

23  the right person to tie down on some issues. We just have to

24  live with that. And we can't stop, because there's not going

25  to be a solution. We believe if we get to a point where we

```
 1   have a good solution, there will be a lot of pressure on

 2   everyone to get it done, and that's what we're trying to

 3   accomplish.

 4            THE COURT:  Thank you.

 5            And I will assume that Mr. Friedman, who I think is

 6   in New York, or Mr. Rapisardi, will have some comments from

 7   the government perspective on that, too.

 8            MR. BIENENSTOCK:  Thank you.

 9            THE COURT:  Thank you.

10            All right.  And so, Mr. Friedman, good morning.

11            MR. FRIEDMAN:  Good morning, Your Honor.  It's Peter

12   Friedman of O'Melveny & Myers on behalf of AAFAF.  I will

13   address PREPA and Mr. Despins' remarks, as well as give the

14   status update that the Court requested.

15            Your Honor, I echo Mr. Bienenstock's remarks on

16   several fronts, one being the extraordinary importance of

17   transformation of the electrical system to Puerto Rico.  And

18   enhanced resiliency, enhanced economic performance, are all

19   extraordinarily important, as is progress in the Title III.

20            As Mr. Bienenstock correctly noted, there are

21   governmental and political factors that unfold around us as

22   the transformation process goes on, but fundamentally, this is

23   a joint motion between the Board and AAFAF and PREPA.  And

24   it's our view that we should continue moving forward.  And if

25   that changes, obviously we'll let the Court know.  But it's
```

1   our motion together, and we don't think Mr. Despins'

2   suspicions or concerns or, you know, statements that something

3   more than meets the eye is going on here are justification in

4   any way, shape or form for pausing the continued march towards

5   the transformation process.

6         Your Honor, stepping back more broadly, after the

7   recent transformation in government and the transition, both

8   Governor Vazquez and AAFAF's new executive director, Omar

9   Marrero, and the Governor's ex officio representative to the

10  board, Ali Diaz, have begun and continued the process of both

11  working with the Oversight Board, working with federal

12  agencies, meeting with creditors, and moving forward with all

13  aspects of Puerto Rico's debt restructuring.

14        With respect to the Oversight Board's Plan of

15  Adjustment, which Mr. Bienenstock mentioned, AAFAF has

16  coordinated and communicated extensively with the Oversight

17  Board.  On September 27, Governor Vazquez stated publicly that

18  the best option is to consider approval of the Plan.  AAFAF

19  recognizes the progress made so far, and hopes as much as

20  possible for consensus and productive negotiations and

21  disclosure of information.

22        In connection with that, AAFAF aided the Oversight

23  Board in developing an analysis of the government's cash

24  position, focusing on bank accounts as of June 30th, 2019.  On

25  October 18, AAFAF posted the bank account report on EMMA, the

1    municipal securities disclosure website.  And as

2    Mr. Bienenstock also mentioned, various nonTitle III

3    restructurings are under negotiations, with AAFAF taking the

4    lead and, as necessary, seeking approval from the Oversight

5    Board at the right time.

6         With respect to other initiatives, since our last

7    report to the Court, Governor Vazquez, Executive Director

8    Marrero and other governmental leaders have been working with

9    all agencies, the Puerto Rico Government, to promote

10   visibility into public finances.  And October 10th of this

11   year, Governor Vazquez held a day-long fiscal policy summit

12   with various Commonwealth agency chiefs, which was focused in

13   particular on ensuring strict compliance with certified fiscal

14   plans and budgets established by the Oversight Board.

15        Just last week, on October 25, Governor Vazquez

16   issued two Executive Orders that I believe are very important

17   to the PROMESA process.  First, Executive Order 56 centralizes

18   strategies and actions concerning the Federal Government and

19   the Oversight Board.  Under Executive Order 56, all Puerto

20   Rico executive branch agencies and public corporations must

21   channel pending federal matters through Ali Diaz, who, as I

22   mentioned, is the Governor's Oversight Board representative,

23   who will work with the Puerto Rico Governor's Office and

24   Puerto Rico's Federal Affairs Administration to coordinate as

25   much as possible.

1          In addition, Executive Order 57 establishes uniform

2    procedures for compliance with Section 204(a) of PROMESA and

3    the certification of -- and certifications.  As the Court

4    knows, PROMESA Section 204(a) requires the Governor of Puerto

5    Rico to submit enacted laws to the Oversight Board with

6    estimates regarding the impact, if any, that laws will have on

7    expenditures and revenues, certifications of findings that

8    laws are not significantly inconsistent with fiscal plans.

9          Executive Order 57 directs AAFAF and OMB of Puerto

10   Rico to prepare forms that include formal budget impact

11   estimates, fiscal plan consistency certifications before the

12   enactment of bills or joint resolutions, after which agencies

13   must strictly and punctually comply with related terms.  And

14   the goals there, I think, are obvious as to what they are

15   trying to promote, the best possible coordination with AAFAF

16   and ultimately -- throughout the government and ultimately

17   with the Oversight Board.

18         In addition, in October, AAFAF disclosed draft

19   regulations under Puerto Rico's Fiscal Plan Compliance Act

20   with respect to the transfer of real estate owned by the

21   executive branch in order to streamline processes concerning

22   real estate assets.

23         With respect to the Federal Government,

24   Mr. Bienenstock mentioned the testimony before Congress that

25   Ms. Jaresko gave in earlier October with respect to draft

1   amendments of PROMESA and effectively a check-up on how

2   PROMESA is working.  Omar Marrero testified that day.

3   Governor Vazquez was actually meeting with the U.S. Department

4   of Education to address federal funding for Puerto Rico's

5   public education system.

6          Mr. Marrero addressed some of the successes and some

7   of the challenges of PROMESA and gave comments through his

8   written and oral testimony with respect to areas of feedback

9   going forward.  Of note, I think, Representative Bishop, who's

10  the ranking member of the Natural Resources Committee, who has

11  sometimes been harshly critical of the government, said on the

12  record that, Governor Vazquez is doing, I think, a remarkable

13  job, as she sat in my office and promised to solve these

14  issues by working with the Board.  And I'm proud of the Board

15  trying to now work with the Governor.  And if we go forward

16  with that, then you can accomplish something that's positive.

17         With respect to federal funding, on October 11,

18  2019,COR3, which is Puerto Rico's Central Office of Recovery,

19  Reconstruction and Resiliency, announced that FEMA has

20  extended the deadline to submit fixed cost estimates for post

21  hurricane recovery projects pursuant to the Stafford Act.  And

22  this will allow FEMA, the Commonwealth and various applicants

23  to continue to develop and implement fixed cost estimate

24  agreements for damage caused by Hurricane Maria.  We think

25  this shows that obviously, while there are issues with FEMA

1    and the release of federal funding, this shows that

2    communication and coordination with FEMA can be quite

3    positive.

4         The last thing I wanted to mention, Your Honor, was

5    just announced publicly yesterday, which COFINA rolled out a

6    new project aimed at improving investor engagement and

7    additional transparency and disclosure for COFINA bondholders

8    and new potential investors.  COFINA rolled out a platform,

9    which is, I think, a first for Puerto Rico, a corporate style

10   investor relations site featuring substantial data and

11   documentation, detailing credit fundamentals behind COFINA

12   bonds and why the corporation's credit profile is strong.

13        And COFINA also announced that it will be using a new

14   reporting system with respect to the SUT, on the publication

15   of monthly SUT collections and monthly distribution reports in

16   order that it is clear to the public that the manner of

17   distribution and collection of COFINA funds set forth in

18   COFINA's confirmed and effective Plan of Adjustment is being

19   done.  And it delineates the amount that each party owns, is

20   entitled to receive.  And, you know, those flow from COFINA's

21   highly successful restructuring and should provide investors

22   with the necessary information to have confidence in COFINA's

23   bonds.

24        I thank you, Your Honor.  And if you have any

25   questions, I'll do my best to answer them.

1          THE COURT:  Thank you, Mr. Friedman.  I have no

2     questions for you at this time.  That was a very comprehensive

3     report.

4          MR. FRIEDMAN:  Thank you, Your Honor.

5          THE COURT:  So the next Agenda item is the Fee

6     Examiner's Report.  I've reviewed the report and I found

7     satisfactory its discussion of the matters that it covers,

8     which include final approval of the fees for the COFINA agent

9     and her advisors, as well as a report on the Fee Examiner's

10    investigations regarding McKinsey, recommendations regarding

11    McKinsey's fees and new steps to be taken in respect of that

12    engagement.  And the Court has entered the Proposed Orders

13    and, therefore, excused the Fee Examiner and his counsel from

14    attending today's hearing.

15         Now, I have -- I would like to take the Agenda a

16    little bit out of order given that we're coming close to that

17    10:30 time.  And so I would suggest -- well, actually, before

18    we go there -- well, let's go to the uncontested matters.  And

19    I will simply say that Proposed Orders were filed on

20    presentment yesterday, and the Court intends to enter those

21    Proposed Orders sustaining the objections to which there have

22    been no responses.

23         And so from there, I suggest going to the contested

24    claim objections, which are Agenda Items IV.2 through 5, and

25    at 10:30, we'll see if there's anyone who wishes to speak as

1    to number 4.  But if we start with number two, I think we can

2    make some progress between now and 10:30.

3         MS. STAFFORD:  That sounds great, Your Honor.  Laura

4    Stafford again from Proskauer Rose for the Oversight Board.

5         I'll begin with the 64th Omnibus Objection, if that

6    works.

7         THE COURT:  Yes.

8         MS. STAFFORD:  This was the 64th Omnibus Objection

9    filed by the Commonwealth to claims based on investments and

10   mutual funds.  There's one remaining claim from this objection

11   that at the last Omnibus hearing, at the request of the

12   claimant, the Court had adjourned consideration of the

13   Commonwealth's objection to this claim, pending submission of

14   additional documentation regarding liquidation of the mutual

15   funds in which the claimant, the Noreen Wiscovitch Retirement

16   Plan, had invested.

17        Instead of submitting additional documentation, the

18   retirement plan filed an amended claim, which is now Proof of

19   Claim number 171656.  Because the Wiscovitch Retirement Plan

20   amended its original Proof of Claim, we think the best

21   approach at this stage is to disallow the original claim as

22   amended and superseded by the subsequently filed claim, such

23   that the parties can properly address the amended claim,

24   including any objections thereto, and present any arguments

25   regarding that claim to the Court on proper notice and with a

1   proper objection.

2        And I don't know if she --

3        THE COURT:  Yes, I believe Ms. Wiscovitch-Rentas is

4   here.

5        MS. WISCOVITCH RENTAS:  Good morning, Your Honor.

6   Noreen Wiscovitch on behalf of the Noreen Wiscovitch

7   Retirement Plan.

8        Your Honor, I think that the matter is ripe to be

9   ruled upon today.  The Court allowed me to provide additional

10  documentation to prove that there was a redemption of one of

11  the funds, and the claim was amended to reflect that.  Also,

12  there was an informative motion to the Court on October 9th

13  indicating this amendment.  So the debtor had enough time to

14  file a response or a reply.

15       This is not a new claim.  It was amended.  So I will

16  object to any type of disallowance of the claim, per se,

17  because it's the same claim.  It's just been amended.

18       THE COURT:  Why did you amend the claim?

19       MS. WISCOVITCH RENTAS:  Because Your Honor had

20  requested additional documents, so the claim was reduced to

21  the amount that was liquidated by redemption on one of the

22  funds.  So the claim now stands at $25,219.50, and it has the

23  documents in support of that attached to it.

24       See, the debtors' main argument was that all the

25  claimants on the 64th Omnibus Objection did not have standing

1    to file their Proof of Claim because the funds were the ones

2    that were the owners of the claim, per se.  And that in my

3    case particularly, it already had been settled with COFINA.

4         My argument was that perhaps I had two separate joint

5    claims at that time, two separate funds, but one fund in

6    particular was redeemed.  And that was the amount of the loss

7    that was provided, and the documents are attached to the

8    claim.  So it's really amending claim -- and I used ECF,

9    CM/ECF, so it's really claim number 1091-2, which is the same

10   claim.  I didn't file a new claim, so it shouldn't be

11   disallowed.  It has been superseded by claim number 1091-2,

12   with the documents requested by the Court.

13        And perhaps Your Honor was expecting me to file the

14   documents in the docket, but I did file an informative motion

15   of this indicating that the documents were attached to the

16   claim.

17        THE COURT:  And so your position still is that you

18   are entitled to recover, based on the difference between the

19   amount that you received in liquidation of your mutual fund

20   holding and the amount that you believe the mutual fund should

21   have been able to -- should be able to recover and pass

22   through to you based on your being a shareholder of the mutual

23   fund?

24        MS. WISCOVITCH RENTAS:  Yes, based on the redemption

25   obviously was among all the shareholders of the mutual fund.

1  So they distributed the whole amount that they had at that

2  time.

3          THE COURT:  And so you --

4          MS. WISCOVITCH RENTAS:  My standing now, it covers --

5  because I no longer have an intermediary mutual fund.  I am

6  the one who has been damaged.  I have standing to bring this

7  damage before the Court.  So --

8          THE COURT:  The investment that you held was an

9  investment in a mutual fund.  You never held the bonds

10  directly, correct?

11          MS. WISCOVITCH RENTAS:  That's correct, Your Honor.

12          THE COURT:  That's what I just wanted to make sure

13  that I understood properly.

14          MS. WISCOVITCH RENTAS:  That's correct.

15          THE COURT:  And the new amended claim is based on

16  that same status or former relationship with the mutual fund,

17  as a mutual fund interest holder who has suffered losses?

18          MS. WISCOVITCH RENTAS:  Yes, Your Honor.

19          THE COURT:  And if we were to go forward today, would

20  you accept my ruling on your original claim and the amended

21  claim as a ruling that deals conclusively at this court level

22  with both the original claim and the amended claim?

23          MS. WISCOVITCH RENTAS:  Your Honor will rule

24  whichever way Your Honor feels like it obviously, but I think

25  that now I have been able to circumvent the argument by the

1   debtor stating that I did not have any standing, which was the

2   main argument for the first objection.  And that's the

3   difference today.  Today I come here saying no, I do have

4   standing.  I am not -- did not receive the losses pursuant to

5   derivative action basically from this fund, except that now I

6   have actual losses that I can show and I have the evidence

7   showing how much the account is.

8          So it's a little bit different than what the first

9   objection was.  But I presented at the last hearing.  I said I

10  was going to file the documents.  I filed the documents.  I

11  have shown them.  And I think that the matter is ripe, Your

12  Honor.

13         The main cases that debtor has argued before --

14  again, it's regarding whether or not the individual claimants

15  had standing or not to bring this action, that it was the fund

16  who actually held the claims against the debtor, and because

17  of that, they should be disallowed.  In this case, I no longer

18  have the fund in the middle.  I am the one who had the loss.

19  And that's the one point I wanted to bring to the Court, to

20  consider it.

21         So I disagree with the debtor at this point that they

22  should be -- my claim should be disallowed as to the first

23  claim, and then they have an opportunity to object to the

24  amended claim because it's just one claim.  There's not two

25  different claims, just one claim, which have been argued and

1    presented and all the evidence is there.

2            THE COURT:  And so even though there is not a formal

3    written objection to the amended claim, you would agree to go

4    forward with my hearing argument and making a decision on your

5    clarified, refined, amended claim, which is that, I was a

6    mutual fund shareholder; that mutual fund, which held the

7    bonds or the instruments, was liquidated; I received less than

8    I believe I was entitled to receive in that liquidation; and

9    because of that loss, that loss on the investment that was

10   made through the mutual fund, I have standing to make a claim

11   directly against the issuer of the bonds that the mutual fund

12   had held?

13           MS. WISCOVITCH RENTAS:  Yes, Your Honor.

14           THE COURT:  Thank you.

15           I'll hear a response from Ms. Stafford.

16           MS. STAFFORD:  Thank you, Your Honor.  I think

17   that -- I hear the claimant is willing to proceed on the

18   amended claim, despite the fact that there is no additional

19   objection pending with respect to that amended claim, even

20   though there's two claims that are currently outstanding that

21   have been filed by Ms. Wiscovitch.

22           THE COURT:  Can you slow down a little bit and just

23   articulate a little bit more clearly?

24           MS. STAFFORD:  Sure.

25           THE COURT:  Thank you.

1            MS. STAFFORD:  The results of the liquidation of the

2    mutual funds still do not provide standing to this claimant to

3    assert a claim directly against the Commonwealth, because as

4    Your Honor stated earlier, the claimant still at no point

5    owned the bonds that were asserted against the Commonwealth,

6    and had an ownership interest in and, therefore, a right to

7    assert those bonds against the Commonwealth or any of the

8    other debtors.

9            What the claimant is now claiming are the investment

10   losses that she suffered as a result of the sale of those

11   bonds, which is not the same as an assertion of principal and

12   interest of those bonds against the Commonwealth and the

13   debtors.  So we would respectfully request that the claims

14   still be -- that both the original and the amended claim still

15   be disallowed, in light of the fact that there's no direct

16   claim and no direct ownership of bonds by the claimant.

17           Thank you.

18           THE COURT:  Thank you.

19           I have considered very carefully all of the filings

20   and reviewed the additional documents submitted by

21   Ms. Wiscovitch Rentas.  Those documents confirm, and she has

22   also confirmed today here on the record, that her retirement

23   plan owned shares in a mutual fund and did not hold directly

24   any bonds issued by any Title III debtor.

25           That documentation is consistent with her position

1　that the funds' shares were redeemed, and that in the

2　redemption of those fund shares, the retirement plan sustained

3　a loss in excess of $25,000.  The amended claim is clearly

4　based on that loss from that redemption.  Unfortunately,

5　nothing in this supplemental and clarified documentation

6　demonstrates that, as a legal matter, the retirement plan has

7　any valid, direct claim against any of the debtors.

8　　　　The retirement plan held an interest in the mutual

9　fund.  They received a distribution from the mutual fund.  And

10　the retirement plan does not succeed to the rights of the

11　mutual fund itself, whatever those were, in the mutual fund's

12　holdings.  Therefore, consistent with this Court's rulings at

13　the September 11th, 2019, Omnibus hearing, the retirement plan

14　lacks standing to assert the direct claims against the debtors

15　that were asserted in the original Proof of Claim and in the

16　Amended Proof of Claim.  And so the debtors' objections to

17　those proofs of claim are sustained.

18　　　　Ms. Stafford, there was also outstanding, with

19　respect to the 64th Omnibus Objection, some -- a documentation

20　question as to a bond held by Mr. Librada Sanz.  And I gather

21　that the documentation that I asked for has been submitted to

22　show that the CUSIP number matches the CUSIP number covered by

23　the Master Proof of Claim?

24　　　　MS. STAFFORD:  That's correct, Your Honor.

25　　　　THE COURT:  All right.  So for that reason, and for

1    the reasons stated on the record of the September 11, 2019,

2    Omnibus hearing and the explanation that I have just given

3    with respect to the Wiscovitch Retirement Plan claims, the

4    Oversight Board is directed to submit a Proposed Order

5    sustaining the 64th Omnibus Objection in its entirety, and

6    also sustaining the objection to the amended Wiscovitch

7    Retirement Plan claim.  So I think that covers the 64th

8    Omnibus.

9         MS. STAFFORD:  I think that's correct, Your Honor.

10        THE COURT:  Thank you.

11        And I also thank you, Ms. Wiscovitch.

12        MS. WISCOVITCH RENTAS:  Thank you.

13        THE COURT:  So it is 10:30.  Is there anyone here who

14   wishes to speak on behalf of JRF Gold Corporation in

15   connection with the 72nd Omnibus Objection?

16        (No response.)

17        THE COURT:  Okay.  So seeing no one, let's just take

18   them in order.  Let's go to number three, the 69th objection.

19        MS. STAFFORD:  Sure.  The 69th Omnibus Objection was

20   filed by the Commonwealth of Puerto Rico and the Employee's

21   Retirement System of the Government of the Commonwealth of

22   Puerto Rico to claims that have been satisfied.

23        This objection seeks to disallow nine proofs of claim

24   that were fully satisfied by either the Commonwealth or by

25   ERS.  Each of these claims purports to assert liability based

1  on a contract, purchase order or invoice entered into or

2  issued by either the Commonwealth or one of its agencies, but

3  the records of either the Commonwealth, its agencies or ERS

4  indicate that the liabilities associated with these proofs of

5  claim have been fully paid.  And this is ECF Number 8695, for

6  the record.

7       There's only one response that was filed by the Ponce

8  Real Estate Corporation.  That's ECF Number 8780.  And it

9  relates to Proof of Claim number 18335.  And I will just give

10  a brief amount of background about the Proof of Claim itself,

11  which asserted a total liability of $45,606, reflecting rent

12  owed to Ponce Real Estate from July 2017 through May of 2018.

13       The response asserts that the Proof of Claim is not

14  fully satisfied on the grounds that the Commonwealth owes

15  additional liabilities because of one of its agencies, the

16  State Elections Commission, continued to occupy the property

17  for several months after May 2018.  Ponce Real Estate further

18  states it filed an amended claim asserting liabilities owed

19  from August 2018 through February of 2019.

20       As Your Honor is aware, however, Ponce Real Estate

21  had filed a motion requesting administrative rent payments in

22  September of 2018.  And in December of 2018, the parties

23  reached an agreement with respect to those rent payments.  In

24  light of that agreement, the Commonwealth issued checks to

25  Ponce Real Estate totaling $62,190 in rent payments.  And of

1    that total, the 45,606 were paid to cover rents owed between

2    July 2017 and May 2018.  So as set forth in the Objection and

3    in the reply, the liabilities asserted by Proof of Claim

4    number 18335, which again cover rent owed from July 2017

5    through May 2018, have already been paid.

6          The Ponce Real Estate response does not dispute that

7    those amounts were paid in satisfaction of the original claim.

8    To the extent that Ponce Real Estate believes it is owed

9    additional money reflecting rents owed from June 2018 or

10   August 2018 forward, respectfully, those liabilities are

11   covered by Ponce Real Estate's amended claim and are not

12   subject to the pending objection or before the Court at this

13   time.

14         So we would request that the Proof of Claim be

15   disallowed, not withstanding the objection, in light of the

16   fact that Ponce Real Estate does not dispute that the

17   liabilities asserted by the original claim have been paid.

18         THE COURT:  And that Amended Proof of Claim was filed

19   on September 27th; is that correct?

20         MS. STAFFORD:  Correct, Your Honor.

21         THE COURT:  And what is the number of that Amended

22   Proof of Claim?

23         MS. STAFFORD:  That is -- I don't have it with me

24   right now, but I can submit something.

25         THE COURT:  All right.  But if I refer to it as the

1    September 27 Proof of Claim --

2              MS. STAFFORD:  Certainly.

3              THE COURT:  -- you know what I'm talking about?

4              MS. STAFFORD:  I certainly do, yes.

5              THE COURT:  And I'm using that for the September 27

6    claim, the Amended Proof of Claim.

7              Is there anyone who wishes to be heard on behalf of

8    Ponce Real Estate Corporation?

9              (No response.)

10             THE COURT:  The Court's reviewed everything carefully

11   and has listened carefully.  The response to the 69th Omnibus

12   Objection filed by the Ponce Real Estate Corporation is

13   overruled as to the original Proof of Claim, which is the

14   subject of that objection, that is, Proof of Claim 18835, and

15   the 69th Omnibus Objection is sustained in its entirety.  The

16   Proofs of Claim listed on Exhibit A to the 69th Omnibus

17   Objection are disallowed.  And on submission, the Court will

18   enter an order overruling the response filed by Ponce Real

19   Estate Corporation and sustaining that 69th Omnibus.

20             For clarity, this ruling does not affect the Amended

21   Proof of Claim filed on September 27th, 2019, which was not a

22   subject of the 69th Omnibus Objection.

23             MS. STAFFORD:  Thank you, Your Honor.

24             THE COURT:  Thank you.

25             And so now we go to Agenda Item IV.4, which is the

1  72nd Omnibus Objection.

2          MS. STAFFORD:  Thank you, Your Honor.

3          The 72nd Omnibus Objection was filed by the

4  Commonwealth of Puerto Rico to bondholder claims asserting

5  amounts for which the Commonwealth is not liable.  This is ECF

6  Number 8698, for the record.

7          This objection seeks to disallow in their entirety 56

8  proofs of claim that assert liabilities falling into one of

9  three categories:  They either assert ownership interest in

10 bonds issued by COFINA; they assert ownership interest in

11 bonds issued by GDB; and/or they assert investments in mutual

12 funds, which in turn may have invested in bonds issued by the

13 Commonwealth.

14         Only one response was filed by JRF Gold Distributors.

15 That's ECF number 8812, and it relates to Proof of Claim

16 number 16312.  This Proof of Claim sought to assert COFINA

17 bonds against the Commonwealth of Puerto Rico, but as the

18 Court is well aware, pursuant to the Court's Orders approving

19 the Settlement Agreement between COFINA and the Commonwealth

20 and confirming a Plan of Adjustment for COFINA, all claims

21 against the Commonwealth arising from its relationship with

22 COFINA have been settled, released and discharged.

23         This Proof of Claim also sought to assert investments

24 in mutual funds.  However, because, as we have addressed

25 earlier today, only the mutual fund and not the individual

1  investor in a mutual fund is a creditor of the Commonwealth,

2  JRF Gold lacks standing to assert a claim directly against the

3  Commonwealth in respect to those mutual funds' investments.

4       The JRF Gold response does not substantively address

5  these arguments and simply states that the claimant does not

6  approve of the objection because it is against the

7  Constitution of the Commonwealth of Puerto Rico.  Because the

8  response does not dispute that the Order approving the

9  settlement between COFINA and the Commonwealth and the Order

10  confirming the COFINA Plan settles, releases and discharges

11  all claims arising from the relationship between COFINA and

12  the Commonwealth, and also, it does not dispute that, as an

13  investor in mutual funds, JRF Gold lacks standing to assert a

14  direct claim against the Commonwealth, I would respectfully

15  request that the objection be sustained and the claim be

16  disallowed, not withstanding the response.

17       THE COURT:  Thank you.

18       Once again, is there anyone who wishes to be heard on

19  behalf of JRF Gold Distributors?

20       (No response.)

21       THE COURT:  Seeing no one, I will rule.  I've read

22  carefully all of the submissions and listened carefully to the

23  argument.  The --

24       Sir, are you here for JRF Gold Distributors by any

25  chance?

```
1              UNIDENTIFIED PERSON:  No.

2              THE COURT:  Thank you.

3         The response filed by JRF Gold Distributors is

4    overruled, and the 72nd Omnibus Objection is sustained in its

5    entirety.  To the extent that JRF Gold Distributors' Proof of

6    Claim asserts liabilities associated with its investments in

7    mutual funds, JRF Gold Distributors lacks standing to assert

8    claims based -- to assert claims against the Commonwealth or

9    any other debtor entity based on those investments.  Those are

10   claims that would belong to the mutual funds.  Additionally,

11   to the extent that JRF Gold Distributors asserts liability

12   based on alleged ownership of COFINA bonds, the claim has been

13   discharged pursuant to the Court's Orders confirming the

14   COFINA Plan.

15        The proofs of claim listed on Exhibit A to the 72nd

16   Omnibus Objection are disallowed in their entirety, and the

17   Court will enter an Order overruling the response filed by JRF

18   Gold Distributors and sustaining the 72nd Omnibus Objection.

19             MS. STAFFORD:  Thank you, Your Honor.

20             THE COURT:  Thank you.  And so --

21             MS. STAFFORD:  Sorry.  Moving on to the 73rd Omnibus

22   Objection, with your permission.

23             THE COURT:  Which is Agenda Item IV.5, correct?

24             MS. STAFFORD:  Correct.

25             The 73rd Omnibus Objection was filed by the
```

1   Commonwealth of Puerto Rico to bondholder claims, asserting

2   amounts for which the Commonwealth is not liable.  And for the

3   record, it is ECF number 8699.

4           This claim seeks to disallow in their entirety 74

5   proofs of claim that assert liabilities falling into the same

6   three categories I addressed earlier:  That they assert

7   interest ownership in bonds issued by COFINA, assert ownership

8   interest in bonds issued by GDB, and/or assert investments in

9   mutual funds, which in turn may have invested in bonds issued

10  by the Commonwealth.

11          Only one response was filed by an individual

12  bondholder, Patricia Moscoso.  That is ECF number 8855 and

13  addresses Proof of Claim number 31833.  Ms. Moscoso asserted

14  liabilities arising from her ownership of COFINA bonds.  Ms.

15  Moscoso disputes the 73rd Objection because she asserts that

16  her claim was not released or discharged by the Court's

17  settlement Order, in light of the fact that her claim was not

18  specifically before the Court when the settlement Order and

19  Plan of Adjustment was confirmed.

20          As set forth in our Reply, however, both the

21  settlement Order and the confirmation Order are broader than

22  Ms. Moscoso suggests and resolve all claims arising from the

23  relationship between COFINA and the Commonwealth, including

24  assertions that the Commonwealth is in some way liable for

25  payment of bonds issued by COFINA.  So accordingly, Your

1    Honor, we would respectfully request that the Court sustain

2    the objection and disallow the claim, not withstanding the

3    response.

4         THE COURT:  Is there anyone here wishing to be heard

5    on behalf of Ms. Moscoso?

6         (No response.)

7         THE COURT:  Seeing no one, I will rule.  I have read

8    very carefully the submission and listened carefully to the

9    argument.  The response filed by Ms. Moscoso is overruled, and

10   the 73rd Omnibus Objection is sustained in its entirety.

11        To the extent Ms. Moscoso asserts liability based on

12   her alleged ownership of COFINA bonds, the claim has been

13   discharged pursuant to the Court's Order on the 9019 motion,

14   the amended confirmation Order with respect to COFINA and the

15   COFINA Plan.  The proofs of claim listed on Exhibit A to the

16   73rd Omnibus Objection are thus disallowed in part.

17        To the extent that the claims listed on Exhibit A

18   assert liability based on the ownership of bonds issued by the

19   Commonwealth, claimants will retain remaining claims in the

20   Commonwealth Title III case in the respective amounts listed

21   in the column titled "corrected" in Exhibit A.  And the Court

22   will enter an Order overruling the response filed by

23   Ms. Moscoso, disallowing the claims listed in Exhibit A to the

24   73rd Omnibus Objection in part, and sustaining in all other --

25   in all respects, the 73rd Omnibus Objection.

1          MS. STAFFORD:  Thank you, Your Honor.

2          THE COURT:  Thank you.  So that takes care of Agenda

3     Items IV.2 through 5, which leaves us with Agenda Item IV.1,

4     the ACR procedures motion.

5          MS. STAFFORD:  Correct, Your Honor.

6          THE COURT:  Ms. Stafford.

7          MS. STAFFORD:  Thank you.

8          This ACR motion seeks the Court's approval of a

9     procedure to expedite and streamline the claims process by

10    allowing certain claims to be reconciled using existing

11    administrative processes at the Commonwealth.  The claims in

12    question here, which we defined in the motion as tax refund

13    claims, pension retiree claims, public employee claims and

14    grievance claims are all administrative in nature.  And by

15    that, we mean that they are claims against the Title III

16    debtors that would ordinarily be handled by the Commonwealth's

17    routine administrative processes.

18         Importantly, these are all also claims that did not

19    even need to be filed in the first place.  For that reason,

20    each of these types of claims were expressly carved out of the

21    bar date Order that was entered last year.  The bar date Order

22    expressly states that certain persons or entities are not

23    required to file a claim, and that included claims for, and I

24    quote, pension benefits and any and all other post retirement

25    benefits, as well as compensation and employment benefits.

1          Pursuant to their authority under PROMESA Section

2    305, the debtors intend to pay the liabilities associated with

3    each of these claims dollar for dollar, in accordance with the

4    outcomes of whichever administrative procedures they're

5    subject to.  Nevertheless, many thousands of these claims have

6    been filed, even though the debtors, the Board and

7    Commonwealth government all believe these claims are best

8    resolved outside of the Title III court process and through

9    the Commonwealth's existing processes.

10         Many of the claims that were filed that fall under

11   these rubrics of pension and employment claims are not even

12   for amounts due and owing, but are instead claims simply

13   preserving or stating that folks have a pension.  And those

14   types of claims are being dealt with through the letter

15   writing process and the objection process, to the extent they

16   don't assert an amount due and owing.  But to the extent they

17   do, we prefer to, and believe it's more appropriate to resolve

18   them through the Commonwealth's existing processes.

19         But as a result of this influx of claims --

20         THE COURT:  So just as an example, where you had

21   people who just said, "I have a pension," you asked them for

22   further information, they didn't provide it, and you've

23   included them in the Omnibus claim objection, there would be

24   no further action on that Proof of Claim?  But if they really

25   have a pension, they'll get a pension pursuant to the normal

1    administrative procedures?

2            MS. STAFFORD:  Correct, Your Honor.

3            THE COURT:  But you wouldn't be necessarily objecting

4    to their assertion in this administrative process?

5            MS. STAFFORD:  So we would be objecting to an

6    assertion that -- we would not object to the assertion that

7    someone has a pension claim that needs to be resolved, to the

8    extent that they have a concern regarding the scope of the

9    pension liabilities or the calculation of their pensions.  To

10   the extent that they are simply asserting that they have a

11   pension, we don't believe that it's necessary for the

12   administrative processes to handle that claim necessarily in

13   and of itself.

14           To the extent that someone has come forward and

15   written "pension" on a proof of claim and no further

16   information that would allow us to understand whether or not

17   there's an administrative process that needs to be -- that

18   needs to take place with respect to that claimant, we would

19   place that claimant on an Omnibus Objection and have it

20   resolved that way.

21           THE COURT:  Thank you.  So this administrative

22   process is for people who say, I worked 25 years and,

23   therefore, my pension should be X amount per month, but you're

24   saying I only worked 20 years and my pension would be less,

25   that sort of thing?

1          MS. STAFFORD:  Correct.

2          THE COURT:  Okay.

3          MS. STAFFORD:  But as a result of the large number of

4   claims that have been filed, this Court's docket is burdened

5   by thousands and potentially tens of thousands of claims that

6   the debtors wish to pay in the ordinary course.  The

7   procedures currently before the Court provide a speedy and

8   cost effective means of liquidating these claims using

9   existing state level procedures.

10          As we've described at a high level in the motion, the

11  Commonwealth has many different procedures available to it to

12  evaluate these claims and determine how much is owed to the

13  claimants.  The debtors intend to identify claims that are

14  either appropriate for or are already being resolved through

15  existing administrative processes as described in the motion.

16  And I'll just provide a brief summary of what the procedures

17  are, because there were some changes between the original, and

18  the subsequent one and the revised procedures that we

19  submitted with the Reply.

20          The procedures provide a defined timetable by which

21  the agency's processes should be completed, subject to either

22  the parties' agreement to extend certain deadlines or to local

23  law that specifically provides for a longer time frame.  And

24  that timetable was for an initial determination of the claim

25  and preserves for claimants any rights that they may have to

1   appeal administrative determinations with respect to the

2   amount of their claim.

3         Claimants will present their claims through these

4   ordinary course processes, and the amount of their claims will

5   be liquidated.  And the debtors will make payments to those

6   claimants in respect to their claims as they have been

7   determined by these administrative processes.  And again, the

8   claimants will retain all their rights to proceed through

9   these processes, including any rights to appeal any initial

10  determinations that have been set.

11        Once the Commonwealth's administrative processes have

12  set the amount for the claim, that liquidated amount will be

13  paid in full and not subject to reduction under the Plan.  And

14  just to clarify one point from the original motion --

15        THE COURT:  I'm sorry.  It will be paid in full and

16  will not be subject to reduction under the Plan?

17        MS. STAFFORD:  Correct.  Yes.

18        THE COURT:  So is this for pension payments that

19  would have come due prior to the confirmation of a plan?

20        MS. STAFFORD:  I believe that's correct, Your

21  Honor.

22        THE COURT:  And then would you -- this is a question

23  I was going to ask you along the way, because there are

24  classes, I think, 25 and 26 in the Plan dealing with pension

25  claims writ broad and the reduction of certain amounts of

1    pension claims.  So would it be your expectation that this

2    process would say, this is the appropriate computation of your

3    plan; it would pay the pension payments coming due before

4    confirmation in full, but then future payments based on those

5    computations would be subject to treatment under the classes

6    and the plan as to payments going forward?

7         And I'm going to have lots of questions for you, so

8    don't worry about the light.

9         MS. STAFFORD:  That's my understanding.  And I'll

10   defer to Mr. Rosen if I'm misstating at all, but that's my

11   understanding.

12        THE COURT:  Thank you.

13        MS. STAFFORD:  And so to clarify one additional point

14   in the motion, although the original motion stated the

15   grievance claims would be subject to treatment under the Plan

16   of Adjustment, we wanted to clarify for the record that the

17   grievance claims, like the other claims addressed in the

18   motion, will be paid in full and will be treated the same as

19   the other three types of claims.

20        We're happy to submit any revised proposed orders

21   that the Court might require to make that clear.

22        THE COURT:  And so can you just tell me what is

23   classified as a grievance claim?  Because it seems odd to me

24   that there are only 15 of them when, you know, there are

25   hundreds of thousands of employees of the Commonwealth.

1          Ms. STAFFORD:  I think the challenge is understanding

2     what -- which of the claims that we have received to date are,

3     in fact, grievance claims.  We are intending those to be

4     employee claims that were filed by unionized employees

5     seeking -- asserting grievances under their CBAs, but there's

6     a challenge for us to understand sometimes exactly what those

7     claims -- which claimants that we have proofs of claim for are

8     asserting grievances as opposed to other types.

9          THE COURT:  And so it may be that some of the things

10    you've put in other buckets in terms of the counts are really

11    grievance claims, and it might also be that there are claims

12    of this type where people read the bar date notice and didn't

13    file a claim at all?

14         MS. STAFFORD:  Correct, Your Honor.  And to ensure

15    that the Court and the debtors are able to monitor the

16    progress of these claims, just to wrap up description of the

17    procedures, the procedures further contemplate marking claims

18    that are undergoing administrative reconciliation as subject

19    to administrative reconciliation in the registry.  So it's

20    appropriate for the Court to abstain from resolving these

21    claims itself and instead permit the debtors to proceed using

22    the procedures just described.

23         And, in fact, all of the relevant abstention factors

24    weigh in favor of allowing the liquidation of the claims

25    through these Commonwealth administrative processes.  The

1    efficient administration of the case will be greatly enhanced

2    because administrative reconciliation will reduce the number

3    of claims that need to be resolved by the Court.

4           And, in fact, if the Court has to resolve all of

5    these claims itself, it will be forced to evaluate and

6    liquidate claims according to existing Commonwealth law

7    governing employee benefits, tax refunds and other types of

8    administrative procedures.  In effect, the Court will be

9    duplicating the work that's already being performed by

10   thousands of well-trained Commonwealth employees who are

11   familiar with and very capable of administering the

12   administrative processes that they already administer on a

13   day-to-day basis.  Administrative reconciliation also reduces

14   reconciliation on the Court's docket, and on the debtors and

15   the Court as it will result in fewer filings and hearings held

16   with respect to these claims.

17          In determining the appropriate liquidated amount for

18   these claims, also state law issues are sure to predominate

19   over bankruptcy issues, given that the liquidation of these

20   claims will be largely determined by the state law

21   administrative processes.  And in many, if not all, instances,

22   there are related proceedings currently pending in state

23   court.  And those state proceedings are severable from the

24   Title III cases because they address issues that are distinct

25   from the bankruptcy issues this Court deals with on a daily

1   basis.

2          Only the UCC has objected to the relief sought by the

3   motion, and importantly, the UCC supports the overall goal of

4   providing a speedy and cost effective resolution of these

5   claims using the existing Commonwealth processes.  The only

6   modification the UCC seeks is the addition of a provision that

7   permits claimants to file a motion requesting their claims be

8   transferred back to the Title III Court for allowance or

9   payment in the event they're not paid in a timely fashion.

10  But that really undercuts one of the key benefits of this

11  process, which is allowing the administrative procedures to

12  handle claims that they are best positioned to handle and

13  permitting claimants to seek allowance or payment of their

14  claim before the Court will force the Court to do and

15  duplicate the work that the Commonwealth is already doing.

16         So since that's precisely what the motion seeks to

17  avoid, we'd ask that the additional proposal provided by the

18  UCC not be included in any procedures the Court might be

19  inclined to enter.

20         If Your Honor has further questions, I'm happy to

21  answer them.

22         THE COURT:  I do.

23         MS. STAFFORD:  I figured as much.

24         THE COURT:  I do.  Thank you for that presentation

25  which did cover a number of the questions that I have.  I'm

1  trying to make sure that I have an accurate picture of how the

2  claims targeted by this process relate to the universe of

3  claims.

4          So first, the motion refers to "extraordinary

5  claims," claims, "related to prior litigations," a particular

6  claim by Doral Financial Corporation, workers' compensation

7  cases, and collective bargaining matters that apparently might

8  otherwise fall under one of the four categories but which the

9  debtors don't intend to put into the ACR process.

10          So, first of all -- well, what's the Doral claim?

11  What do you intend to do with the other things?  And are there

12  any other types or categories of claims that one would assume

13  would be covered by this, but won't be?

14          MS. STAFFORD:  I see that Mr. Rosen is here to

15  address at least the Doral claims, so I'll let him.

16          THE COURT:  Thank you.

17          MR. ROSEN:  Yes, Your Honor.  Thank you very much.

18          With respect to the Doral claims, this has been the

19  subject of years of litigation that have gone up and down the

20  Commonwealth court system, both in the Court of First

21  Instance, as well as to the Puerto Rico Supreme Court on

22  several bases.  One with respect to something referred to as

23  the closing agreements, that was also then the subject of the

24  Doral bankruptcy case in the Southern District of New York, as

25  well as a tax refund claim.

1          We have been discussing these issues not only with

2     the Commonwealth, but also with counsel for Doral, and we are

3     hopeful for resolving them.  Because of the years' worth of

4     litigation, however, we did not think it was appropriate to

5     include those in the ACR process, and we are looking to deal

6     with that externally and, if necessary, pursuant to a separate

7     objection that would be filed, or an individual objection that

8     would be filed before Your Honor.

9          But based upon discussions, I'm actually hopeful that

10    we'll be reaching some degree of closure with respect to

11    Doral.  As Mr. Despins knows, Doral is one of the members of

12    his Creditors Committee, and we have been working very, very

13    closely with them.

14          THE COURT:  Thank you.

15          And as to what extraordinary claims and prior

16    litigation are and what you're going to do about workers' comp

17    and collective bargaining matters?

18          MS. STAFFORD:  Sure.  With respect to other types of

19    extraordinary claims along the lines of the Doral claim, I

20    don't know of any standing here today, but to the extent there

21    were any, we would potentially exempt them from the process,

22    to the extent they present some of the same issues the Doral

23    claim presents.

24          With respect to workers' comp and prior litigations,

25    the goal would be to handle those through the ordinary --

1   either the ordinary claim objection process or an ADR process.

2   And the same goes for workman's compensation claims and claims

3   under the CBAs that would be dealt with through other

4   procedures and not necessarily sent through these ACR

5   processes.

6            These processes are really designed to allow the

7   Commonwealth's administrative processes to function in the way

8   that they ordinarily are and resolve claims through the

9   ordinary course processes that the Commonwealth has set up.

10            THE COURT:  So there's not a Workers' Comp

11   Administration in the Commonwealth that deals with workers'

12   comp claims as an ordinary matter?

13            MS. STAFFORD:  I don't know whether or not there is

14   such an administrative process, but the goal would be to have

15   those types of claims, which are often in the nature of

16   litigation claims, resolved through either objections or ADR

17   at this stage.

18            THE COURT:  Thank you.  Next question.  Paragraph ten

19   of the motion states that many ACR claims have been pending

20   and unresolved for over two years.  So were all of these

21   processes that are described in the proposed procedures frozen

22   when the Title III petitions were filed?

23            MS. STAFFORD:  I don't believe that all have been.  I

24   believe that at least some tax refund claims have been paid.

25   But certainly some have been and have not been proceeding in

1   the ordinary course, and Mr. Rosen may want to add more to

2   that.

3           THE COURT:  Mr. Rosen.

4           MR. ROSEN:  Because of the financial situation of the

5   Commonwealth, many of these things were placed on hold.  It is

6   our understanding that most, if not substantially all of the

7   tax refund claims at this point have actually been

8   administratively handled and perhaps even all have been paid.

9   But the goal of the ACR process is to actually jump start all

10  of those claims processes that were sort of stuck in limbo for

11  a period of time.

12          And we've been working with the Commonwealth, and the

13  reason that this motion took so long to get together was to

14  come up with a mechanism to make sure that the Commonwealth

15  could be responsive in a timely fashion to not only the

16  claimants themselves, but also to the Court.  And to give the

17  Court comfort that these claims, if we were, in fact, to

18  remove them from the claims registry, were not just going to

19  sit in limbo for another two to three years, but actually

20  would be handled expeditiously.  And that we would be then

21  responding back to the Court, letting the Court know that

22  these claims have actually been addressed and the claimants

23  have been taken care of.

24          THE COURT:  And so your belief is that there are

25  sufficient operating mechanisms that are sufficiently staffed

1    to be able to deliver on the timetables in the proposal for

2    processing through those administrative procedures, even if

3    they haven't been working, or working efficiently over the

4    past two years?

5            MR. ROSEN:  Yes, Your Honor.

6            THE COURT:  So the lift stay provision of the

7    procedures refers exclusively to, quote, the continuation of

8    claims subject to administrative processes.  So do you

9    anticipate that everything that's going to be dealt with in

10   this process has already been commenced in some way as to each

11   and every one of the ACR claims?

12           MR. ROSEN:  Yes, Your Honor.

13           THE COURT:  And as to routine claims that you say

14   have already been satisfied, and I'm referring to paragraph

15   ten of the motion, are you planning at some point to commence

16   motion practice to clean up the claims register?

17           MR. ROSEN:  Ms. Stafford, Laura, I'll defer to you.

18           MS. STAFFORD:  Sure.  I think, at this stage, we

19   would intend them to be marked as subject to administrative

20   reconciliation on the Title III registry, and we would allow

21   them to be handled through that, subject to administrative

22   reconciliation designation on the register.

23           THE COURT:  And so one of my questions down the road

24   was going to be, at the end of all of this, when you have

25   resolved a lot of things through the administrative process,

1   you're not planning to have something that will put on the

2   claims register the closing note that they've been resolved?

3         MS. STAFFORD:  So the ACR status notices that the

4   procedures contemplate would permit the Court to be informed

5   about the fact that certain claims have been resolved through

6   the administrative processes, either prior to or during the

7   course of the administrative reconciliation, after hopefully

8   the procedures are entered.  And that I think -- I would be

9   happy for that to include some means of noting on the register

10  that those have been resolved, perhaps allowing the ACR status

11  notice to permit a changing of the designation of the claim on

12  the registry to indicate that it's been resolved.

13        THE COURT:  I would encourage you to do something

14  that would make the paperwork map back to itself and be more

15  transparent.  And I would be really excited about something

16  that would involve a direction to Prime Clerk, which maintains

17  the claims registry, to do whatever updating on that claims

18  registry may be necessary.

19        MS. STAFFORD:  We would be happy for the ACR status

20  notice to include something along those lines that would

21  permit that direction to Prime Clerk.

22        THE COURT:  Terrific.

23        Paragraph 11 of the motion refers to additional

24  claims that you anticipate you'll identify.  Now, are those

25  claims that are included in the 161,0000 claim count, or would

1    those be ones that you're aware of that haven't been filed

2    already?

3              MS. STAFFORD:  Those -- those refer to claims for

4    which -- that currently do not provide us with any detail.

5    Claims that are currently filed, part of the 170 or 180,000

6    that are currently pending, as to which we sent out the

7    proposed mail -- the mailings in accordance with the Court's

8    Order over the summer.  And to the extent we receive

9    information back from those claimants indicating that they

10   have an ongoing administrative process, we would expect those

11   claims to be sent over into the administrative reconciliation

12   processes.

13             The numbers that we provided in the motion are sort

14   of necessarily approximate because we don't have enough

15   information on the faces of the claims themselves to know

16   which ones are really appropriate for and should go through

17   these procedures as opposed to being resolved in some other

18   way.

19             THE COURT:  Do you anticipate some substantial volume

20   of traffic of these types of claims for which people didn't

21   file a Proof of Claim here?

22             I'm trying to get a sense of the magnitude of the hit

23   on these administrative processes that we can expect, and some

24   representation or assurance that you've really worked through

25   with the government and the effective agencies the mechanics

1    of this, to the extent that you have a confidence that you can

2    share with me today that the processes will be able to handle

3    this volume of claims at the pace contemplated here.

4              MS. STAFFORD:  We did work closely with the

5    Commonwealth government when we designed the process and

6    created the timetables that are presented in the motion.  And

7    one of the things that we did was extend the time frames to

8    make sure that there would be enough -- between the original

9    motion and the revised motion, to make sure that there would

10   be enough time.

11             It's difficult for us to say how many claims may be

12   out there for which no proofs of claim were filed of course,

13   but we do understand and we've worked with the Commonwealth

14   government in order to ensure that the time frames are

15   appropriate.  And of course we -- the procedures themselves

16   also contemplate potentially longer periods of time, to the

17   extent necessary or agreed to by the parties or required under

18   local law.

19             THE COURT:  So the procedures refer to resolution of

20   a claim.  What do you mean by resolved?

21             MS. STAFFORD:  So our understanding of resolved would

22   be that there would be a determination made, a final

23   determination as to the amount of the claim, the liquidation

24   of the claim.

25             THE COURT:  Okay.  Or rejection of the claim

1  entirely?

2      MS. STAFFORD:  Correct, to the extent that the

3  determination is that there is no amount due and owing.

4      MR. ROSEN:  Your Honor, taking your example of

5  earlier, someone said they had a pension obligation of X

6  dollars versus Y dollars, and it would be the reconciliation

7  of that.  And if the parties still disagreed, then they would

8  go through the appellate administrative processes, though.

9  But it would be a fully liquidated claim as far as the

10  Commonwealth was concerned.

11      THE COURT:  And so at the end of whatever

12  administrative and appellate processes are invoked, whatever

13  that final resolution would be, would be the final resolution

14  of that claim against the debtor?

15      MS. STAFFORD:  Correct.

16      MR. ROSEN:  Your Honor, that's correct.

17      THE COURT:  Okay.  And in paragraph 31 of the motion,

18  and throughout, you talk about claims being paid once they're

19  liquidated in the ordinary course.  And how long does the

20  ordinary course typically take?

21      MS. STAFFORD:  I think that can vary, Your Honor,

22  depending on the administrative process that we're referring

23  to.  So I'm not comfortable necessarily giving a clear exact

24  number of days because I think it can depend.

25      THE COURT:  Let's talk about orders of magnitude.

1   You know, could the ordinary course be between like one and

2   three years, or are we talking about two to six months, or

3   something in between?

4        MS. STAFFORD:  I do think it varies enough that I'm

5   not sure.  And I can provide additional information if the

6   Court would prefer.

7        THE COURT:  It would be helpful to have more concrete

8   information about that.  And just to preview a couple of the

9   things that I'm thinking about in connection with this motion

10  practice, is that I think an even more detailed regular

11  reporting system would be helpful, including a category for

12  claims that have been resolved but not yet paid, so that we

13  can see how that's trailing.  And to the extent that I need to

14  be able to assess and hear any argument or comments on whether

15  this process is working as advertised, we can take into

16  account that issue as well.

17       MS. STAFFORD:  Of course.

18       MR. ROSEN:  Your Honor, our goal here was

19  transparency throughout the process and to keep you

20  comfortable that it was moving forward.  And we believe that

21  the transparency itself will also help the Commonwealth

22  continue to do things in the time frame that everybody wants

23  it to do it, including the payment of the claims.  So we're

24  okay with that, Your Honor.

25       THE COURT:  That's great.  It sounds like we're on

1  the same page.

2          MR. ROSEN:  Absolutely.

3          THE COURT:  Great.  So bear with me for a few more

4  questions.

5          Paragraph 12 refers to claims related to the

6  entitlement of quantification of benefits.  Am I correct in

7  assuming that you meant to say entitlement or quantification

8  of benefits?  And if not, what's entitlement of

9  quantification?

10          MS. STAFFORD:  That's correct, Your Honor,

11  entitlement or qualification.

12          THE COURT:  Okay.  Great.

13          Let's see.  Your motion contemplates the submission

14  of pension and retiree claims, quote, to ERS or any successor

15  thereto.  Is ERS still in business for pension administration?

16          MS. STAFFORD:  I believe so, at this time, Your

17  Honor.

18          THE COURT:  And so at this time, it's the expectation

19  that ERS would be the entity processing the claims?

20          MS. STAFFORD:  Correct, Your Honor.

21          THE COURT:  Okay.  And there are a couple of

22  differences in the summaries of the existing processes.  For

23  instance, for pension and retiree claims, you list the Court

24  of Appeals as the venue for judicial review.  So is that the

25  first and final level of judicial review for those sorts of

1  claims?

2       MS. STAFFORD:  I believe that's correct, Your

3  Honor.

4       THE COURT:  Whereas tax claims, I think, can go to

5  the Supreme Court as well?

6       MS. STAFFORD:  I believe that's correct.  I'm happy

7  to confirm and clarify.

8       THE COURT:  I think before a notice goes out, we

9  should make sure that the descriptions of things are accurate

10  so that everybody can understand.

11       Bear with me for a moment.

12       So paragraph 21 of the motion indicates that claims

13  for wages, vacation time and sick leave will be included in

14  this process.  Can you tell me how the administrative

15  processing aspect of that relates to the legal challenges that

16  we've seen to the changes in timing and payment provisions for

17  vacation and sick pay under Acts 66-2014, 3-2017, 26-2017, et

18  cetera?

19       Is there some separate classification or pathway that

20  you're anticipating for dealing with a claim that, yes, I have

21  that money, but I can't have it now, or I can't have it in the

22  way that I expected to?

23       MS. STAFFORD:  Well, I think the administrative

24  processes would apply the law as it is -- as they ordinarily

25  would.  So in accordance with whatever procedures and whatever

1  laws are applicable to the claim at the time that it would

2  have accrued for that claimant.

3          THE COURT:  And so to the extent there is some claim

4  brought by the union or otherwise as to the value of the

5  differential as a takings claim or something else, that would

6  be dealt with elsewhere in the Title III or plan

7  classification process?

8          MS. STAFFORD:  Correct, Your Honor.

9          THE COURT:  As to public employee claims, and

10  specifically some of the types of claims enumerated in

11  paragraph 21 of the motion, the motion indicates that the

12  Court of First Instance and an Office of Mediation and

13  Adjudication within the Department of Labor have concurrent

14  jurisdiction of those claims.

15          So with this ACR motion, is the debtor contemplating

16  relief from stay to let a claimant go either route or only the

17  administrative route?

18          MS. STAFFORD:  I would contemplate either route.

19          THE COURT:  This is a small technical point, but one

20  important to me.  On -- you have two ways of channeling claims

21  into this.  One is the notice that sends things in bulk, and

22  then you have the option of designating something if there's

23  an objection to a claim and a response.

24          The proposed timing on that latter type of

25  designation is ten days after the claimant's response has been

1    filed, which I think would come after the ordinary reply

2    deadline and coincide with the Omni.  And so I'm concerned

3    about the claimant's ability to know that they're not going to

4    be taken up at the Omni, and even more important to me, my

5    ability to know what I need to prepare for to deal with at the

6    Omni.

7         And so how would you feel about accelerating that

8    notice, at least to match up with what would otherwise be your

9    reply deadline, or working the deadline in some other way that

10   lets everybody be efficient and knowledgeable?

11        MS. STAFFORD:  That's perfectly fine.  And I think it

12   would be ideal for us to be able to have that deadline be the

13   same date as the reply date for all claimants so that we don't

14   have to -- we receive responses at different times, and it

15   would be helpful -- if it's clear that it's the same as the

16   reply date, then that will help us make sure that we're all

17   administratively clear about what needs to be taken up at the

18   Omni and what can be moved into -- to the administrative

19   processes.

20        THE COURT:  Okay.  Great.  So if you can put that on

21   your list for further clarification.

22        MS. STAFFORD:  Sure.  Yes.

23        THE COURT:  And would you have any problem with

24   providing, along with the notice that encapsulates the

25   procedures and tells the person that they're going into this

1  administrative claims reconciliation process, a high-level

2  summary of the levels of administrative processing and

3  potential review of, you know, appeals of decisions that would

4  apply to that category of claims, and particularly where there

5  are timing deadlines within that administrative process, in

6  order to promote transparency and make sure that people know

7  how they're supposed to channel their attentions within their

8  classification?

9        MS. STAFFORD:  I'd be happy to include something like

10 that in the notice.  I would want to make sure that it's clear

11 that there are a number of different processes and the timing

12 may vary depending on the process, but I'm happy to have a

13 nice, transparent notice that explains what will happen

14 next.

15       THE COURT:  That's great.  I think that will be

16 helpful all around.

17       So before I hear from Mr. Despins, just to kind of

18 summarize high level about my inclination at this point,

19 subject to hearing from Mr. Despins, is that I am inclined to

20 approve the procedures.  I reserve the right -- since we

21 haven't seen them operative on the ground, instead of giving

22 you a complete and final path into whatever happens with

23 these, I expect robust reporting.  And I reserve the right to

24 modify, rescind, extend, whatever needs to be done, in whole

25 or in part, the procedures as I may find necessary, in the

1    course of events, in order to make sure that we're all still

2    consistent with going at the goals that I think we all

3    embrace, and adding a couple of aspects to the reporting and

4    to the initial notice to the claimant.

5           MS. STAFFORD:  Great.  Thank you, Your Honor.

6           THE COURT:  Thank you.

7           Mr. Despins.

8           MR. DESPINS:  I think this will be short.  If I

9    understood you correctly, you would keep jurisdiction to

10   modify this or undo it if you find that it doesn't -- meaning

11   it's not as advertised?

12          THE COURT:  Yes.

13          MR. DESPINS:  Okay.  So that -- can a claimant come

14   to Your Honor and complain about, for example, not getting

15   paid or not having their claim administered?  I think we're on

16   the same wavelength.  We don't want the Court to be burdened

17   with these claims.  Let's be clear about that.  We're just

18   concerned about is it as advertised.

19          The experience has been it's not as advertised.

20   Let's be clear about that.  There's 2,200 tax refund folks

21   that filed claims.  The government viewed that as a source of

22   financing when they ran short of cash.  They didn't pay the

23   tax refunds.  That's why we're here and raising this issue.

24   But if Your Honor keeps jurisdiction over that, and there's a

25   mechanism for either us or a claimant to say, this is not

1    working as advertised, then we can agree on some language in

2    the order that says that or -- that's it.

3              THE COURT:  Okay.  I am not anticipating being

4    welcoming to claimants popping up here and there and saying,

5    it's 45 days and I haven't gotten my check.  That wouldn't be

6    efficient from anybody's perspective.  I am certainly

7    anticipating being able to say at the Court's own instance, or

8    in response to a motion, or informative notice or a request

9    for a conference by the Committee or by some organized

10   representative of claimants that there's a problem, this is

11   bogging down and we ought to look at it again.

12             So I wasn't planning to specifically design that sort

13   of back end process in the language of this Order, but the

14   Order would say that the Court reserves the right to -- let me

15   see.  I'm just -- I can kind of tell you what I have in mind

16   if you give me a chance to find my notes on it.  Just a

17   moment.

18             The Court would reserve the right to modify or

19   rescind, in whole or in part, these procedures in the event

20   the Court determines that such a step is necessary in the

21   interest of justice and efficient resolution of the types of

22   claims covered by the proposal.

23             And so if it becomes apparent that there are problems

24   in some part or the whole of the process, we can, A, you let

25   me know, and then we'll figure out how best to handle it.

1    MR. DESPINS:  I think that's the only way that it can

2    work from a due process view because these claimants did not

3    get notice of this motion.  So if that language is in there,

4    and I think the understanding is we can raise it with the

5    Court if it doesn't work -- we are not interested in having

6    hair triggers here where 45 days, we are looking for something

7    where it's obvious that people have been -- their claim's

8    allowed and they're not getting paid for 90 days, 120 days, or

9    something that shocks the conscience, whatever that is.

10   That's all.

11        THE COURT:  And Ms. Stafford is going to try to

12   generate a little bit more information about how these things

13   go in order to manage expectations.

14        MR. DESPINS:  Thank you, Your Honor.

15        THE COURT:  Ms. Stafford, anything -- I'm sorry, sir.

16        MR. BARRIOS RAMOS:  Your Honor, good afternoon --

17   good morning.  Jose Luis Barrios in representation of American

18   Federation of Teachers and Asociacion de Maestros de Puerto

19   Rico.  And very briefly --

20        THE COURT:  Good morning.

21        MR. BARRIOS RAMOS:  Good morning.

22        Counsel already explained that in regard to the

23   grievance claims, they -- the debtor is willing to propose new

24   language than the -- originally stated in the motion.  And

25   regarding that the grievance claims, just like other employee

 1    claims, will be paid in the ordinary course instead of the

 2    treatment under the Plan, and we just wanted to reaffirm that

 3    agreement we have with the Oversight Board.

 4            THE COURT:  Thank you.

 5            Ms. Stafford, just by nodding, will you confirm that

 6    that is the agreement?

 7            MS. STAFFORD:  (Nodding head up and down.)  Correct.

 8    Yes.

 9            THE COURT:  I have an affirmative nod from Ms.

10    Stafford.

11            MR. BARRIOS RAMOS:  Thank you, Your Honor.

12            THE COURT:  Thank you.

13            Did anyone else wish to be heard on this?

14            Ms. Stafford, any reply remarks that you wish me to

15    hear?

16            MS. STAFFORD:  (Shaking head from side to side.)  I

17    don't think so, Your Honor.

18            THE COURT:  There was a negative nod from

19    Ms. Stafford on that one.  And so I will now make my ruling,

20    which includes some instructions as to follow-up

21    documentation.

22            Before the Court is the Motion for Entry of an Order,

23    A, authorizing administrative reconciliation of certain

24    claims; B, approving additional form of notice; and C,

25    granting related relief, which is docket entry number 8827 in

1  case 17-3283, and I'll refer to that as the Motion.

2       It was filed by the Oversight Board on behalf of the

3  Commonwealth, HTA, ERS, PREPA and PBA, which I'll refer to

4  collectively as the debtors.  And I've reviewed the motion and

5  the papers filed in opposition and reply in respect thereof.

6       The Motion seeks the implementation of procedures for

7  resolution of certain types of claims, namely public employee

8  claims for pension or retiree benefits, claims for tax

9  refunds, claims for salaries and benefits owed to public

10  employees, and union grievances, for which there are already

11  existing administrative procedures within the Commonwealth

12  agencies and the court system.

13       I'll refer to the proposal as the proposed

14  procedures, and to the categories of claims by the

15  nomenclature used in the Motion, which is pension/retiree

16  claims, tax refund claims, public employee claims and

17  grievance claims respectively.  And collectively I'll refer to

18  the claims as the ACR claims.

19       For the following reasons, and subject to the

20  modifications that I'll detail in the course of this oral

21  decision, the motion is granted.

22       In support of the Motion, the Oversight Board argues

23  that the proposed procedure should be adopted and implemented

24  under the authority granted by Title 11 of the *United States*

25  *Code*, Section 105, as consistent with the principles animating

1    the claims dispute resolution provisions of Federal Rule of

2    Bankruptcy Procedure 3007.  And as appropriate under the

3    doctrine of permissive abstention pursuant to Title 28 of the

4    *United States Code,* Section 1334(c)(1), which provides that a

5    Federal Court may, in the interest of justice, or in the

6    interest of comity with state courts or with respect to state

7    law, abstain from hearing a particular proceeding arising

8    under Title 11, or arising in or related to a case under Title

9    11.

10            In evaluating whether to apply the doctrine of

11   permissive abstention, courts may consider:  One, the effect

12   on the efficient administration of the estate; two, the extent

13   to which state law issues predominate over bankruptcy issues;

14   three, the difficulties or unsettled nature of the applicable

15   law; four, the presence of a related proceeding in state

16   court; five, the jurisdictional basis, if any, other than

17   Title 28, Section 1334; six, the relatedness of the proceeding

18   to the main bankruptcy case; seven, the substance and not the

19   form of the alleged core proceeding; eight, the feasibility of

20   severing state law issues from bankruptcy matters; nine, the

21   burden on the docket of the bankruptcy court; ten, the

22   likelihood that commencement of bankruptcy proceedings

23   amounted to forum shopping; 11, the existence of a right to

24   jury trial; and 12, the presence in the proceeding of

25   nondebtor parties.

1          I was quoting from the *In Re Unanue-Casal* case.

2    That's U-n-a-n-u-e, hyphen, C-a-s-a-l.  164 B.R. 216 at 222, a

3    1993, District of Puerto Rico decision.

4          Having considered the proposal and the parties'

5    arguments thoroughly, the Court concludes that the factors

6    relevant to the question of permissive abstention weigh at

7    this juncture in favor of abstention, permitting the relevant

8    Commonwealth agencies and courts to address the issues of

9    validity and liquidation of these four categories of claims.

10          Based on the debtors' representations regarding the

11    features and capabilities of the Commonwealth's mechanisms for

12    administrative claims resolution, the Court finds that

13    implementation of the proposed procedures would likely improve

14    the efficient administration of the estate, or of the debtors'

15    assets, and relieve a substantial burden on the docket of the

16    Title III Court.  In addition, with respect to most, if not

17    all, ACR claims, state law issues predominate over bankruptcy

18    issues.  And similarly, based on the debtors' representations,

19    many of the ACR claims are already the subject of ongoing

20    Commonwealth proceedings.

21          The Court is also satisfied that particularly in

22    light of the judicial review processes described in the motion

23    and further clarified on the record today, the proposed

24    procedures meet the requirement of procedural due process.

25    Nevertheless, because these administrative mechanisms appear

1    to have been dormant for some time and have not been tested in

2    the context of these massive Title III proceedings, the Court

3    is not willing to make its approval irrevocable and completely

4    open-ended.

5            A more particularized reporting format will be

6    required, and the Court will reserve the right to modify or

7    rescind, in whole or in part, these procedures in the event

8    the Court determines that such a step is necessary in the

9    interest of justice and efficient resolution of the types of

10   claims covered by the proposal.  In other words, the Court

11   will be keeping a close eye on whether the debtors can deliver

12   on the representations made in connection with this motion

13   practice, and will make changes if the process bogs down.

14           To provide a more precise window into processing of

15   the claims, the debtors are directed to amend the reporting

16   aspect of the procedures, which is paragraph four of that

17   summary, to provide that the initial and periodic reports must

18   include, A, information as to claims that have not been

19   restarted or initiated within 60 days of the ACR notice; B,

20   information as to the phase, for example, pending initial

21   determination or a pending appeal to the Court of Appeals, in

22   which each unresolved claim that has been pending for more

23   than 90 days has been reached; and C, information as to claims

24   that have been resolved in favor of the claimant for which

25   payment has not been made within -- at this point I'll say 60

1    days of favorable termination, but Ms. Stafford, as you give

2    us more information, if you want to propose a longer period

3    that is more realistic, let's have a realistic period.

4         MS. STAFFORD:  Okay.

5         THE COURT:  The Order must also be amended to include

6    the reservation of the Court's rights that I recited a few

7    minutes ago.  And in addition, in order to provide the

8    claimants with information regarding the relevant

9    administrative and judicial avenues of review, the ADR notice

10   must include a summary of the stages and any applicable time

11   limits for the category of ACR claim into which the creditor's

12   claim has been classified.

13        I'd like to have the revised proposed materials filed

14   on presentment in two weeks, by November 13th.  Is that

15   feasible, Ms. Stafford?

16        MS. STAFFORD:  (Nodding head up and down.)  Yes.

17        THE COURT:  Very well.  Thank you very much.  That is

18   my decision on this matter.  And thank you for the work that's

19   gone into development of this procedure and the work that's

20   gone into the assurances provided today that it should work.

21        So that concludes the Agenda for things to be heard

22   today.  There are adjourned matters listed at Item V of the

23   Agenda.

24        Is there anyone else who wants to be heard on

25   anything today?

```
 1            (No response.)

 2            THE COURT:  Seeing no one jump up, the next scheduled

 3   hearing date is the hearing in connection with the

 4   Gracia-Gracia Lift Stay Motion, which is scheduled for

 5   November 14, 2019, in New York, with a video connection to San

 6   Juan.  And the next scheduled Omnibus hearing is December 11,

 7   2019, here in San Juan, with video connection to New York.

 8            As always, I thank the court staff here in Puerto

 9   Rico, the staff in Boston and New York for their work in

10   preparing for and conducting today's hearing, and their

11   absolutely superb, ongoing support of the administration of

12   these very important and complex cases.

13            Thank you all.  Keep well, and safe travels.  We are

14   adjourned.

15            (At 11:31 AM, proceedings concluded.)

16                       *      *      *

17

18

19

20

21

22

23

24

25
```

```
 1   U.S. DISTRICT COURT     )

 2   DISTRICT OF PUERTO RICO)

 3

 4       I certify that this transcript consisting of 84 pages is

 5   a true and accurate transcription to the best of my ability of

 6   the proceedings in this case before the Honorable United

 7   States District Court Judge Laura Taylor Swain on October 30,

 8   2019.

 9

10

11

12   S/ Amy Walker

13   Amy Walker, CSR 3799

14   Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```

< Dates >
August 2018 42:19,
  43:10
December 11, 2019
  83:6
December 31, 2019
  6:16
January 2018 22:2
July 2017 42:12,
  43:2, 43:4
June 13 8:19
June 2018 43:9
May 2018 42:17,
  43:2, 43:5
November 14, 2019
  83:5
October 11, 2019
  30:17
October 18 27:25
October 1st 23:19
October 22, 2019
  9:14
October 25 28:15
October 28 6:14
October 30, 2019
  1:16, 4:2, 84:7
October 9th 34:12
September 11, 2019
  41:1
September 27 27:17,
  44:1, 44:5
September 27th 5:17,
  43:19
September 27th, 2019
  44:21
$25,000. 40:3
$25,219.50 34:22
$45,606 42:11
$5,000 14:8
$62,190 42:25


< 1 >
1.5 10:20
10.2 10:23
100,000 13:4
105 78:25
1091-2 35:9, 35:11
10:30 5:6, 32:17,
  32:25

10:30. 33:2, 41:13
10th 28:10
11 64:23, 78:24,
  79:8, 79:23
11. 79:9
11:31 83:15
11th 40:13
12 69:5, 79:24
120 76:8
12:00 5:4
1334 79:17
1334(c)(1 79:4
13th 82:14
15 8:17, 55:24
150 8:17
16,000 13:11
161,0000 64:25
16312. 45:16
164 80:2
17-3283 78:1
17-BK-3283(LTS 1:6
170 65:5
171656. 33:19
180,000 65:5
18335 43:4
18335. 42:9
18835 44:14
19.9 10:19
1993 80:3
1:00 5:4


< 2 >
2,200 74:20
20 52:24
2018 42:22
2018. 42:12, 42:22
2019 40:13
2019. 27:24, 42:19
2020. 9:4
204(a 29:2, 29:4
21 70:12, 71:11
216 80:2
21: 1:41
222 80:2
25 52:22, 54:24
26 54:24
26-2017 70:17
28 79:3, 79:17

< 3 >
3-2017 70:17
3007. 79:2
305 51:2
30th 27:24
31 67:17
31833. 48:13
35 5:21
3799 84:13
3: 1:6


< 4 >
4. 33:1
45 75:5, 76:6
45,606 43:1


< 5 >
5 32:24, 50:3
50 17:25
55 5:22
56 28:17, 28:19,
  45:7
57 29:1, 29:9
5:00 5:5


< 6 >
60 81:19, 81:25
64th 33:5, 33:8,
  34:25, 40:19,
  41:5, 41:7
66-2014 70:17
69th 41:18, 41:19,
  44:11, 44:15,
  44:16, 44:19,
  44:22


< 7 >
7 2:22
72nd 41:15, 45:1,
  45:3, 47:4, 47:15,
  47:18
73rd 47:21, 47:25,
  48:15, 49:10,
  49:16, 49:24,
  49:25

74 48:4

< 8 >
8.2 10:21
80 18:1
84 84:4
8695 42:5
8698 45:6
8699. 48:3
8780. 42:8
8812 45:15
8827 77:25
8855 48:12

< 9 >
90 76:8, 81:23
9019 49:13
9:30 4:3, 5:4

< A >
A. 2:6, 49:21
AAFAF 7:3, 7:23,
  8:19, 8:20, 8:24,
  9:20, 9:23, 9:25,
  23:20, 26:12,
  26:23, 27:8,
  27:15, 27:18,
  27:22, 27:25,
  28:3, 29:9, 29:15,
  29:18
Abdelmasieh 16:1,
  16:6, 20:7
ability 72:3, 72:5,
  84:5
able 14:16, 15:16,
  16:9, 19:11,
  21:16, 35:21,
  36:25, 56:15,
  63:1, 66:2, 68:14,
  72:12, 75:7
Absolutely 16:11,
  22:22, 69:2, 83:11
abstain 56:20, 79:7
abstention 56:23,
  79:3, 79:11, 80:6,
  80:7
accelerating 72:7

accept 23:9, 36:20
accomplish 26:3,
  30:16
accordance 51:3,
  65:7, 70:25
according 57:6
accordingly 48:25
account 27:25, 37:7,
  68:16
accounts 27:24
accrued 8:18, 71:2
accurate 25:6, 59:1,
  70:9, 84:5
achievements 6:13
acknowledge 14:22
ACR 50:4, 50:8,
  59:9, 60:5, 61:4,
  61:19, 62:9,
  63:11, 64:3,
  64:10, 64:19,
  71:15, 78:18,
  80:17, 80:19,
  81:19, 82:11
Act 29:19, 30:21
action 37:5, 37:15,
  51:24
actions 28:18
active 6:10
activities 5:14,
  5:16
Acts 70:17
actual 17:21, 37:6
actually 13:10,
  14:15, 16:20,
  30:3, 32:17,
  37:16, 60:9, 62:7,
  62:9, 62:19, 62:22
adapted 12:5
add 18:19, 24:7,
  62:1
adding 74:3
addition 17:12,
  29:1, 29:18, 58:6,
  80:16, 82:7
additional 7:10,
  11:8, 31:7, 33:14,
  33:17, 34:9,
  34:20, 38:18,
  39:20, 42:15,
  43:9, 55:13,

58:17, 64:23,
  68:5, 77:24
Additionally 47:10
address 19:17,
  19:19, 26:13,
  30:4, 33:23, 46:4,
  57:24, 59:15, 80:8
addressed 30:6,
  45:24, 48:6,
  55:17, 62:22
addresses 5:21,
  19:21, 19:23,
  48:13
adjourned 33:12,
  82:22, 83:14
Adjudication 71:13
Adjustment 5:18,
  6:9, 27:15, 31:18,
  45:20, 48:19,
  55:16
administer 57:12
Administered 1:11,
  74:15
administering 57:11
Administration
  28:24, 57:1,
  61:11, 69:15,
  79:12, 80:14,
  83:11
administratively
  62:8, 72:17
adopted 78:23
ADR 7:15, 7:21,
  7:24, 8:8, 8:12,
  8:13, 11:15,
  13:15, 13:23,
  13:25, 15:1, 20:5,
  21:23, 21:25,
  61:1, 61:16, 82:9
advertised 68:15,
  74:11, 74:18,
  74:19, 75:1
advisors 9:10, 32:9
Advisory 2:10
advocate 7:10
Affairs 28:24
affect 44:20
affirmative 77:9
afford 22:8
AFSCME 6:4

afternoon 76:16
agencies 27:12,
    28:9, 28:20,
    29:12, 42:2, 42:3,
    42:15, 65:25,
    78:12, 80:8
Agency 2:9, 10:7,
    28:12, 53:21
Agenda 5:5, 32:5,
    32:15, 32:24,
    44:25, 47:23,
    50:2, 50:3, 82:21,
    82:23
agent 32:8
aggressive 15:10,
    15:21
ago 82:7
agree 6:21, 38:3,
    75:1
agreed 66:17
Agreement 8:20, 9:1,
    42:23, 42:24,
    45:19, 53:22,
    77:3, 77:6
agreements 30:24,
    59:23
ahead 12:13, 23:16,
    24:3
aid 10:6, 12:2
aided 27:22
aim 9:2
aimed 31:6
al 1:16, 1:35
Ali 27:10, 28:21
alleged 47:12,
    49:12, 79:19
allocated 10:2,
    10:19
allocation 12:14
allow 30:22, 52:16,
    61:6, 63:20
allowance 58:8,
    58:13
allowed 34:9, 76:8
allowing 20:21,
    50:10, 56:24,
    58:11, 64:10
almost 13:3
already 4:17, 35:3,
    43:5, 53:14, 57:9,

57:12, 58:15,
    63:10, 63:14,
    65:2, 76:22,
    78:10, 80:19
Although 8:4, 11:4,
    55:14
Alvarez 16:22
amend 34:18, 81:15
Amended 33:18,
    33:20, 33:22,
    33:23, 34:11,
    34:15, 34:17,
    36:15, 36:20,
    36:22, 37:24,
    38:3, 38:5, 38:18,
    38:19, 39:14,
    40:3, 40:16, 41:6,
    42:18, 43:11,
    43:18, 43:21,
    44:6, 44:20,
    49:14, 82:5
amending 35:8
amendment 34:13
amendments 11:1,
    30:1
American 76:17
among 9:5, 9:10,
    35:25
amount 8:16, 10:21,
    13:17, 14:7,
    18:24, 31:19,
    34:21, 35:6,
    35:19, 35:20,
    36:1, 42:10,
    51:16, 52:23,
    54:2, 54:4, 54:12,
    57:17, 66:23, 67:3
amounted 79:23
amounts 43:7, 45:5,
    48:2, 49:20,
    51:12, 54:25
Amy 84:12, 84:13
analysis 27:23
and/or 25:10, 45:11,
    48:8
Andrini 2:21
animating 78:25
announced 30:19,
    31:5, 31:13
answer 7:18, 18:16,

31:25, 58:21
anticipate 15:16,
    20:6, 63:9, 64:24,
    65:19
anticipated 8:15,
    9:22
anticipating 70:20,
    75:3, 75:7
anxious 12:25
anybody 75:6
apparent 75:23
apparently 59:7
appeal 54:1, 54:9,
    81:21
Appeals 22:8, 69:24,
    73:3, 81:21
appear 22:6, 80:25
APPEARANCES 1:32,
    2:1
Appearing 1:38, 2:12
appears 12:14
appellate 67:8,
    67:12
applicable 71:1,
    79:14, 82:10
applicants 30:22
apply 70:24, 73:4,
    79:10
appreciate 20:3
appreciated 20:13
approach 33:21
approaching 11:18
appropriate 51:17,
    53:14, 55:2,
    56:20, 57:17,
    60:4, 65:16,
    66:15, 79:2
approval 27:18,
    28:4, 32:8, 50:8,
    81:3
approve 8:22, 46:6,
    73:20
approved 8:1
approving 45:18,
    46:8, 77:24
approximate 65:14
approximately 8:17,
    13:11, 14:8
arbitration 12:3,
    14:1, 14:5, 14:8,

14:11, 14:19,
14:23, 15:3,
15:20, 22:9,
22:11, 22:15
areas 10:3, 30:8
argued 37:13, 37:25
argues 78:22
argument 34:24,
35:4, 36:25, 37:2,
38:4, 46:23, 49:9,
68:14
arguments 33:24,
46:5, 80:5
arising 45:21,
46:11, 48:14,
48:22, 79:7, 79:8
around 18:21, 26:21,
73:16
arrangement 25:11
Arribas 1:41
articulate 38:23
aside 23:22
Asociacion 2:14,
76:18
aspect 70:15, 81:16
aspects 27:13, 74:3
assert 39:3, 39:7,
40:14, 41:25,
45:8, 45:9, 45:10,
45:11, 45:16,
45:23, 46:2,
46:13, 47:7, 47:8,
48:5, 48:6, 48:7,
48:8, 49:18, 51:16
asserted 18:11,
39:5, 40:15,
42:11, 43:3,
43:17, 48:13
asserting 18:9,
42:18, 45:4, 48:1,
52:10, 56:5, 56:8
assertion 39:11,
52:4, 52:6
assertions 48:24
asserts 42:13, 47:6,
47:11, 48:15,
49:11
assess 68:14
assets 29:22, 80:15
assist 18:25

assistance 10:6
associated 14:7,
14:18, 42:4, 47:6,
51:2
assume 26:5, 59:12
assuming 21:8, 69:7
assurance 65:24
assurances 82:20
attached 17:9,
34:23, 35:7, 35:15
attempt 8:9
attending 32:14
attentions 73:7
attorneys 18:23
audible 4:18
AUST 1:41
Authority 1:21,
2:11, 5:19, 51:1,
78:24
authorization 10:22
authorizing 20:23,
21:1, 77:23
available 10:20,
15:25, 53:11
avenues 82:9
avoid 58:17
aware 11:22, 12:9,
24:6, 42:20,
45:18, 65:1


< B >
back 4:9, 16:5,
16:14, 20:5, 22:1,
27:6, 58:8, 62:21,
64:14, 65:9, 75:13
background 18:4,
42:10
bank 27:24, 27:25
Bankruptcy 2:19,
57:19, 57:25,
59:24, 79:2,
79:13, 79:18,
79:20, 79:21,
79:22, 80:17
bar 18:20, 50:21,
56:12
bargaining 59:7,
60:17
BARRIOS 2:16, 76:16,

76:17, 76:21,
77:11
Based 11:24, 13:10,
33:9, 35:18,
35:22, 35:24,
36:15, 40:4,
41:25, 47:8, 47:9,
47:12, 49:11,
49:18, 55:4, 60:9,
80:10, 80:18
bases 59:22
basically 37:5
basis 17:15, 17:21,
57:13, 58:1, 79:16
Bear 14:12, 14:13,
69:3, 70:11
becomes 75:23
begin 5:8, 33:5
begun 10:15, 17:18,
27:10
behalf 20:18, 26:12,
34:6, 41:14, 44:7,
46:19, 49:5, 78:2
behind 31:11
belief 62:24
believe 13:4, 13:10,
13:13, 13:24,
21:4, 25:25,
28:16, 34:3,
35:20, 38:8, 51:7,
51:17, 52:11,
54:20, 61:23,
61:24, 68:20,
69:16, 70:2, 70:6
believes 43:8
belong 47:10
benefits 17:14,
17:16, 17:25,
50:24, 50:25,
57:7, 58:10, 69:6,
69:8, 78:8, 78:9
best 10:2, 27:18,
29:15, 31:25,
33:20, 51:7,
58:12, 75:25, 84:5
better 8:6, 9:25
beyond 21:4
Bienenstock 1:35,
5:9, 5:10, 5:11,
11:17, 11:19,

23:12, 24:11,
24:20, 24:21,
26:8, 26:15,
26:20, 27:15,
28:2, 29:24
bigger 25:16
billion 5:21, 5:22,
10:19, 10:20,
10:22, 10:23
bills 29:12
binding 13:25, 14:5,
14:7, 14:10,
14:19, 14:23,
15:19
Bishop 30:9
bit 12:11, 13:8,
15:10, 15:18,
18:4, 23:14,
32:16, 37:8,
38:22, 38:23,
76:12
bizarre 23:14
Blame 22:18
bless 24:9
blocks 18:21
bogging 75:11
bogs 81:13
bond 18:9, 18:10,
40:20
bondholder 45:4,
48:1, 48:12
bondholders 8:21,
31:7
bonds 8:16, 31:12,
31:23, 36:9, 38:7,
38:11, 39:5, 39:7,
39:11, 39:12,
39:16, 39:24,
45:10, 45:11,
45:12, 45:17,
47:12, 48:7, 48:8,
48:9, 48:14,
48:25, 49:12,
49:18
Boston 83:9
bottom 24:24
branch 28:20, 29:21
Brian 1:37, 7:16
brief 42:10, 53:16
briefly 76:19

bring 5:2, 12:9,
14:25, 36:6,
37:15, 37:19
brings 5:23
broad 17:23, 54:25
broaden 6:10
broader 21:7, 48:21
broadly 27:6
brought 71:4
buckets 56:10
budget 9:16, 29:10
budgets 6:25, 28:14
building 6:8
Buildings 5:19
bulk 71:21
burden 79:21, 80:15
burdened 53:4, 74:16
business 14:23,
69:15


< C >
C-a-s-a-l 80:2
calculation 52:9
called 7:2
cap 21:6
capabilities 80:11
capable 57:11
Capitol 7:5, 7:10
care 50:2, 62:23
carefully 39:19,
44:10, 44:11,
46:22, 49:8
carry 14:18
carved 50:20
case 9:3, 9:20,
18:12, 23:15,
35:3, 37:17,
49:20, 57:1,
59:24, 78:1, 79:8,
79:18, 80:1, 84:6
cases 12:5, 37:13,
57:24, 59:7, 83:12
cash 27:23, 74:22
CAT 2:49
categories 45:9,
48:6, 59:8, 59:12,
78:14, 80:9
category 68:11,
73:4, 82:11

caused 30:24
Cbas 56:5, 61:3
CDBRDR 10:8
center 22:17
Central 30:18
centralizes 28:17
certain 18:24,
50:10, 50:22,
53:22, 54:25,
64:5, 77:23, 78:7
Certainly 44:2,
44:4, 61:25, 75:6
certification 9:1,
29:3
certifications 29:3,
29:7, 29:11
certified 7:2, 28:13
certify 84:4
cetera 21:3, 70:18
chairman 9:7
challenge 56:1, 56:6
challenges 30:7,
70:15
chance 46:25, 75:16
changes 26:25,
53:17, 70:16,
81:13
changing 12:22,
64:11
channel 28:21, 73:7
channeling 71:20
Chapter 2:22, 6:4
charge 14:17
check 20:22, 75:5
check-up 30:1
checks 42:24
chiefs 28:12
circumvent 36:25
claimant 17:17,
18:4, 18:13,
33:12, 33:15,
38:17, 39:2, 39:4,
39:9, 39:16, 46:5,
52:18, 52:19,
71:2, 71:16,
71:25, 72:3, 74:4,
74:13, 74:25,
81:24
Claimants 8:2, 13:4,
19:2, 20:21,

21:24, 22:5,
22:13, 34:25,
37:14, 49:19,
53:13, 53:25,
54:3, 54:6, 54:8,
56:7, 58:7, 58:13,
62:16, 62:22,
65:9, 72:13, 75:4,
75:10, 76:2, 82:8
claiming 39:9
clarification 72:21
clarified 38:5,
40:5, 80:23
clarify 54:14,
55:13, 55:16, 70:7
clarity 44:20
classes 54:24, 55:5
classification
70:19, 71:7, 73:8
classified 55:23,
82:12
clean 63:16
cleaner 25:4
cleaning 19:4
clear 31:16, 55:21,
67:23, 72:15,
72:17, 73:10,
74:17, 74:20
clearly 38:23, 40:3
Clerk 64:16, 64:21
clip 24:3
close 32:16, 81:11
closely 9:23, 60:13,
66:4
closer 5:23
closing 59:23, 64:2
closure 60:10
CM/ECF 35:9
Coalition 6:5
Code 78:25, 79:4
COFINA 31:5, 31:7,
31:8, 31:11,
31:13, 31:17,
31:18, 31:20,
31:22, 32:8, 35:3,
45:10, 45:16,
45:19, 45:20,
45:22, 46:9,
46:10, 46:11,
47:12, 47:14,

48:7, 48:14,
48:23, 48:25,
49:12, 49:14,
49:15
coincide 72:2
collaborate 6:23
collection 31:17
collections 31:15
collective 59:7,
60:17
collectively 78:4,
78:17
column 49:21
comes 12:16
comfort 62:17
comfortable 19:12,
67:23, 68:20
coming 19:7, 32:16,
55:3
comity 79:6
commence 9:3, 9:20,
63:15
commenced 63:10
commencement 79:22
commentary 23:9
comments 25:5, 25:6,
26:6, 30:7, 68:14
Commission 42:16
committed 24:24
Committee 2:5, 6:2,
14:4, 20:18,
22:16, 30:10,
60:12, 75:9
communicate 4:13
communicated 27:16
communicates 9:7
communicating 4:24
communication 9:9,
9:13, 14:15, 31:2
Comp 60:16, 60:24,
61:10, 61:12
compensation 50:25,
59:6, 61:2
complain 74:14
complete 73:22
completed 53:21
completely 81:3
complex 12:4, 83:12
Compliance 28:13,
29:2, 29:19

comply 29:13
components 7:7, 15:1
comprehensive 32:2
computation 55:2
computations 55:5
concern 10:25,
25:18, 52:8
concerned 67:10,
72:2, 74:18
concerning 28:18,
29:21
concerns 27:2
conclude 23:24
concluded. 83:15
concludes 11:13,
80:5, 82:21
conclusively 36:21
concrete 19:10, 68:7
concurrent 71:13
conducting 83:10
conference 4:11,
75:9
confidence 31:22,
66:1
confirm 39:21, 70:7,
77:5
confirmation 48:21,
49:14, 54:19, 55:4
confirmed 31:18,
39:22, 48:19
confirming 20:3,
45:20, 46:10,
47:13
confiscation 5:1
Congress 9:14,
10:20, 11:1, 11:5,
29:24
connection 12:4,
13:8, 13:25,
27:22, 41:15,
68:9, 81:12, 83:3,
83:5, 83:7
conscience 76:9
consensus 6:8, 27:20
consent 15:20
consider 27:18,
37:20, 79:11
consideration 33:12
considered 39:19,
80:4

consistency 29:11
consistent 4:10,
    39:25, 40:12,
    74:2, 78:25
consisting 84:4
constant 9:9, 9:13
constantly 7:3
Constitution 46:7
Constitutional 6:5
constructive 9:13,
    22:24, 23:10
consummated 25:11
contact 20:6, 20:11
contemplate 56:17,
    64:4, 66:16, 71:18
contemplated 66:3
contemplates 69:13
contemplating 71:15
contested 32:23
context 19:17, 81:2
continuation 63:7
continue 6:23, 9:21,
    26:24, 30:23,
    68:22
Continued 2:1, 27:4,
    27:10, 42:16
continues 6:6, 6:9,
    7:1, 7:10
continuing 6:14, 8:9
contract 42:1
control 22:18
conversations 16:3
conversion 25:3
cooperate 9:21
cooperated 9:20
coordinate 15:23,
    28:24
coordinated 27:16
coordination 29:15,
    31:2
COR3 30:18
core 79:19
corporate 31:9
Corporation 31:12,
    41:14, 42:8, 44:8,
    44:12, 44:19, 59:6
corporations 28:20
Correct 19:13,
    19:25, 20:1,
    21:12, 36:10,

36:11, 36:14,
    40:24, 41:9,
    43:19, 43:20,
    47:23, 47:24,
    50:5, 52:2, 53:1,
    54:17, 54:20,
    56:14, 67:2,
    67:15, 67:16,
    69:6, 69:10,
    69:20, 70:2, 70:6,
    71:8, 77:7
corrected 49:21
Corrections 10:1
correctly 26:20,
    74:9
cost 6:20, 14:7,
    14:20, 15:20,
    25:16, 25:17,
    30:20, 30:23,
    53:8, 58:4
costs 25:18
Counsel 4:6, 32:13,
    60:2, 76:22
count 64:25
counts 56:10
couple 20:25, 68:8,
    69:21, 74:3
course 19:14, 53:6,
    54:4, 61:9, 62:1,
    64:7, 66:12,
    66:15, 67:19,
    67:20, 68:1,
    68:17, 74:1, 77:1,
    78:20
courtroom 4:13,
    4:24, 5:2, 7:17,
    13:8, 16:22
Courts 7:21, 8:11,
    79:6, 79:11, 80:8
cover 43:1, 43:4,
    58:25
covered 40:22,
    43:11, 59:13,
    75:22, 81:10
covers 32:7, 36:4,
    41:7
created 66:6
Credit 11:11, 31:11,
    31:12
creditor 5:25, 6:7,

46:1, 82:11
Creditors 2:6, 6:7,
    14:3, 27:12, 60:12
criteria 16:16
critical 10:10,
    22:9, 30:11
criticism 23:10
CSR 84:13
current 6:16, 19:19
currently 38:20,
    53:7, 57:22, 65:4,
    65:5, 65:6
CUSIP 18:10, 40:22

< D >
daily 57:25
damage 30:24, 36:7
damaged 36:6
dark 15:19
data 31:10
date 18:20, 22:2,
    50:21, 56:2,
    56:12, 72:13,
    72:16, 83:3
day 16:8, 23:6, 30:2
day-long 28:11
day-to-day 57:13
days 67:24, 71:25,
    75:5, 76:6, 76:8,
    81:19, 81:23, 82:1
de 2:14, 2:15,
    14:19, 76:18
deadline 6:15,
    30:20, 72:2, 72:9,
    72:12
deadlines 53:22,
    73:5
deal 12:6, 12:7,
    12:14, 24:15,
    60:5, 72:5
dealing 21:24,
    54:24, 70:20
deals 6:1, 36:21,
    57:25, 61:11
dealt 51:14, 61:3,
    63:9, 71:6
Debt 5:21, 6:5, 7:8,
    25:1, 27:13
debtor 34:13, 37:1,

37:13, 37:16,
37:21, 39:24,
47:9, 67:14,
71:15, 76:23
Debtors 1:23, 5:22,
7:15, 7:20, 8:3,
8:9, 21:8, 22:20,
34:24, 39:8,
39:13, 40:7,
40:14, 40:16,
50:16, 51:2, 51:6,
53:6, 53:13, 54:5,
56:15, 56:21,
57:14, 59:9, 78:4,
80:10, 80:14,
80:18, 81:11,
81:15
December 13:13,
17:4, 17:22, 18:5,
18:16, 42:22
decide 25:12
decision 38:4,
78:21, 80:3, 82:18
decisions 73:3
defer 16:21, 55:10,
63:17
deficient 13:5,
13:16, 16:17
defined 50:12, 53:20
definitely 25:13
degree 60:10
Dein 23:16
delay 25:15
delineates 31:19
deliver 16:10, 63:1,
81:11
demonstrates 40:6
denial 5:1
Department 10:8,
30:3, 71:13
Departments 10:1
depend 67:24
depending 67:22,
73:12
deployment 20:8
derivative 37:5
described 53:10,
53:15, 56:22,
61:21, 80:22
description 56:16

descriptions 70:9
design 75:12
designating 71:22
designation 63:22,
64:11, 71:25
designed 61:6, 66:5
desperately 7:12
DESPINS 2:6, 20:16,
20:17, 21:3,
21:19, 21:22,
22:12, 22:22,
23:1, 23:5, 23:11,
24:22, 25:5,
26:13, 27:1,
60:11, 73:17,
73:19, 74:7, 74:8,
74:13, 76:1, 76:14
despite 9:17, 38:18
detail 17:6, 65:4,
78:20
detailed 7:17, 8:2,
68:10
detailing 31:11
determination 53:24,
66:22, 66:23,
67:3, 81:21
determinations 54:1,
54:10
determine 10:2,
16:17, 24:8, 53:12
determined 54:7,
57:20
determines 75:20,
81:8
determining 20:8,
57:17
Detroit 21:25
develop 7:21, 8:6,
30:23
developing 27:23
Development 10:9,
82:19
device 4:16, 4:17,
4:24, 5:1
devices 4:12, 4:15,
5:2
Diaz 27:10, 28:21
difference 35:18,
37:3
differences 9:18,

69:22
different 23:11,
37:8, 37:25,
53:11, 72:14,
73:11
differential 71:5
difficult 66:11
difficulties 79:14
direct 11:16, 39:15,
39:16, 40:7,
40:14, 46:14
directed 41:4, 81:15
direction 22:3,
64:16, 64:21
directly 16:22,
36:10, 38:11,
39:3, 39:23, 46:2
Director 7:5, 9:9,
27:8, 28:7
directs 29:9
disagree 37:21
disagreed 67:7
disallow 33:21,
41:23, 45:7, 48:4,
49:2
disallowance 34:16
disallowed 35:11,
37:17, 37:22,
39:15, 43:15,
44:17, 46:16,
47:16, 49:16
disallowing 49:23
disaster 7:9, 7:12,
10:6, 10:8
disasters 10:16
disburse 10:12
disbursed 10:18
disbursement 10:5
discharged 45:22,
47:13, 48:16,
49:13
discharges 46:10
disclosed 29:18
Disclosure 5:17,
5:20, 27:21, 28:1,
31:7
discuss 16:5
discussed 24:22
discussing 60:1
discussion 22:3,

32:7
discussions 15:12,
   60:9
dismissed 13:16
dispute 43:6, 43:16,
   46:8, 46:12, 79:1
disputes 48:15
distinct 57:24
distributed 36:1
distribution 6:22,
   31:15, 31:17, 40:9
Distributors 45:14,
   46:19, 46:24,
   47:3, 47:5, 47:7,
   47:11, 47:18
District 1:1, 1:3,
   1:28, 1:29, 59:24,
   80:3, 84:1, 84:2,
   84:7
Docket 1:6, 13:12,
   21:19, 35:14,
   53:4, 57:14,
   77:25, 79:21,
   80:15
doctrine 79:3, 79:10
documentation 17:7,
   17:9, 17:13,
   31:11, 33:14,
   33:17, 34:10,
   39:25, 40:5,
   40:19, 40:21,
   77:21
documents 4:17,
   34:20, 34:23,
   35:7, 35:12,
   35:14, 35:15,
   37:10, 39:20,
   39:21
doing 14:24, 23:7,
   25:19, 30:12,
   58:15
dollar 51:3
dollars 8:17, 8:18,
   10:19, 14:9, 67:6
done 19:24, 22:4,
   26:2, 31:19, 73:24
Doral 59:6, 59:10,
   59:15, 59:18,
   59:24, 60:2,
   60:11, 60:19,

60:22
dormant 81:1
double 10:14
down 10:21, 12:21,
   25:22, 25:23,
   38:22, 59:19,
   63:23, 75:11,
   81:13
down. 77:7, 82:16
dozens 9:15
draft 7:24, 8:12,
   11:25, 29:18,
   29:25
drawn 10:21
due 51:12, 51:16,
   54:19, 55:3, 67:3,
   76:2, 80:24
duplicate 21:3,
   58:15
duplicating 57:9
during 4:24, 64:6

< E >
e-mailing 4:23
earlier 24:22,
   29:25, 39:4,
   45:25, 48:6, 67:5
early 22:24
earmarked 13:15
Earned 11:10
ECF 35:8, 42:5,
   42:8, 45:5, 45:15,
   48:3, 48:12
echo 26:15
economic 10:11,
   11:3, 25:2, 26:18
economy 7:7, 25:16
Education 10:1,
   30:4, 30:5
effect 57:8, 79:11
effective 6:20,
   31:18, 53:8, 58:4,
   65:25
effectively 30:1
efficient 10:3,
   24:25, 57:1,
   72:10, 75:6,
   75:21, 79:12,
   80:14, 81:9

efficiently 63:3
efforts 6:9, 10:13,
   11:3, 11:8, 12:2
eight 79:19
Either 12:7, 17:14,
   18:15, 24:14,
   41:24, 42:2, 42:3,
   45:9, 53:14,
   53:21, 61:1,
   61:16, 64:6,
   71:16, 71:18,
   74:25
Elections 42:16
Electric 1:20
electrical 26:17
electronic 4:12,
   4:15
elsewhere 71:6
embrace 74:3
Emergency 10:7
emerging 5:23
EMMA 27:25
employed 12:3
Employee 6:10,
   17:14, 17:25,
   41:20, 50:13,
   56:4, 57:7, 71:9,
   76:25, 78:7, 78:16
Employees 5:19, 6:3,
   55:25, 56:4,
   57:10, 78:10
employment 50:25,
   51:11
enable 8:3
enacted 29:5
enactment 29:12
encapsulates 72:24
encourage 22:23,
   64:13
end 6:24, 9:4, 12:2,
   12:8, 12:10,
   15:21, 16:8, 23:6,
   63:24, 67:11,
   75:13
energy 6:20, 24:25,
   25:4
engagement 31:6,
   32:12
enhanced 26:18, 57:1
enough 17:11, 18:2,

18:8, 22:14,
34:13, 65:14,
66:8, 66:10, 68:4
ensue 22:8
ensure 6:19, 56:14,
66:14
ensuring 10:3, 28:13
enter 32:20, 44:18,
47:17, 49:22,
58:19
entered 8:20, 20:20,
20:23, 21:14,
32:12, 42:1,
50:21, 64:8
entire 6:12
entirely 67:1
entirety 41:5,
44:15, 45:7, 47:5,
47:16, 48:4, 49:10
entities 50:22
entitled 31:20,
35:18, 38:8
entitlement 69:6,
69:7, 69:8, 69:11
entity 14:16, 47:9,
69:19
Entry 21:19, 77:22,
77:25
enumerated 71:10
equitable 11:9
ERS 41:25, 42:3,
69:14, 69:15,
69:19, 78:3
Esq 2:16, 2:22
essence 25:2
essential 10:9
essentially 17:8,
17:23
established 28:14
establishes 29:1
Estate 2:20, 24:16,
29:20, 29:22,
42:8, 42:12,
42:17, 42:20,
42:25, 43:6, 43:8,
43:11, 43:16,
44:8, 44:12,
44:19, 79:12,
80:14
estimate 30:23

estimates 29:6,
29:11, 30:20
et 1:16, 1:35, 21:3,
70:17
evaluate 53:12, 57:5
evaluating 79:10
evaluator 15:15
event 58:9, 75:19,
81:7
events 74:1
everybody 68:22,
70:10, 72:10
everyone 5:3, 14:2,
26:2
everything 44:10,
63:9
evidence 37:6, 38:1
ex 27:9
exact 67:23
exactly 56:6
Examiner 32:6, 32:9,
32:13
example 18:9, 51:20,
67:4, 74:14, 81:20
excellent 9:12,
11:17
except 37:5
excess 40:3
excited 64:15
exclusively 63:7
excused 32:13
Executive 7:4, 9:8,
27:8, 28:7, 28:16,
28:17, 28:19,
28:20, 29:1, 29:9,
29:21
exempt 60:21
Exhibit 44:16,
47:15, 49:15,
49:17, 49:21,
49:23
EXHIBITS 3:9
existence 79:23
existing 50:10,
51:9, 51:18, 53:9,
53:15, 57:6, 58:5,
69:22, 78:11
expansion 11:10
expect 65:10, 65:23,
73:23

expectation 55:1,
69:18
expectations 76:13
expected 70:22
expecting 11:21,
35:13
expedite 50:9
expediting 15:2
expeditiously 62:20
expended 24:23
expenditures 29:7
expenses 25:19
expensive 25:3
experience 74:19
explained 76:22
explaining 5:20
explains 73:13
explanation 41:2
explanations 17:24
exploratory 12:2
expressed 11:5
expressly 50:20,
50:22
expunged 21:10
expunging 19:24
extend 53:22, 66:7,
73:24
extended 6:15, 30:20
extensively 27:16
extent 9:18, 43:8,
47:5, 47:11,
49:11, 49:17,
51:15, 51:16,
52:8, 52:10,
52:14, 60:20,
60:22, 65:8, 66:1,
66:17, 67:2,
68:13, 71:3, 79:12
externally 60:6
extraordinarily
26:19
extraordinary 26:16,
59:4, 60:15, 60:19
extrapolating 14:9
eye 27:3, 81:11


< F >
faces 65:15
facilitating 15:11

fact 13:15, 13:16,
  14:3, 14:10,
  14:23, 38:18,
  39:15, 43:16,
  48:17, 56:3,
  56:23, 57:4,
  62:17, 64:5
factors 26:21,
  56:23, 80:5
fall 51:10, 59:8
falling 45:8, 48:5
familiar 57:11
families 11:11
far 27:19, 67:9
fashion 58:9, 62:15
faster 7:11
favor 56:24, 80:7,
  81:24
favorable 82:1
feasibility 79:19
feasible 82:15
features 4:18,
  11:24, 15:6, 80:11
featuring 31:10
February 42:19
Federal 7:11, 9:6,
  10:4, 10:5, 10:7,
  10:24, 11:8,
  27:11, 28:18,
  28:21, 28:24,
  29:23, 30:4,
  30:17, 31:1, 79:1,
  79:5
Federation 76:18
Fee 14:18, 32:5,
  32:9, 32:13
feedback 7:22, 8:10,
  30:8
feel 72:7
feels 36:24
fees 24:23, 32:8,
  32:11
fell 13:24
felt 14:12, 18:22
FEMA 10:7, 10:11,
  30:19, 30:22,
  30:25, 31:2
few 10:15, 69:3,
  82:6
fewer 13:22, 57:15

figure 16:8, 75:25
figured 58:23
file 6:15, 18:22,
  20:12, 34:14,
  35:1, 35:10,
  35:13, 35:14,
  37:10, 50:23,
  56:13, 58:7, 65:21
filing 8:16, 9:22,
  18:21, 18:25,
  20:23
filings 39:19, 57:15
final 32:8, 66:22,
  67:13, 69:25,
  73:22
finances 28:10
Financial 1:9, 2:10,
  17:1, 59:6, 62:4
financing 74:22
find 14:18, 73:25,
  74:10, 75:16
finding 17:20, 19:3
findings 29:7
finds 80:12
fine 24:15, 72:11
First 5:13, 9:4,
  19:5, 28:17, 31:9,
  37:2, 37:8, 37:22,
  50:19, 59:4,
  59:10, 59:20,
  69:25, 71:12
Fiscal 2:9, 6:25,
  7:2, 9:16, 28:11,
  28:13, 29:8,
  29:11, 29:19
five 79:16
fixed 30:20, 30:23
flow 31:20
focus 12:15, 20:8
focused 17:5, 17:13,
  28:12
focusing 27:24
folks 51:13, 74:20
follow-up 77:20
following 5:16,
  78:19
force 58:14
forced 57:5
form 14:4, 17:8,
  25:4, 27:4, 77:24,

  79:19
formal 29:10, 38:2
formally 8:22
format 81:5
formed 18:20
former 36:16
forms 8:3, 17:11,
  29:10
forth 31:17, 43:2,
  48:20
forum 79:23
forward 6:14, 18:23,
  19:24, 26:24,
  27:12, 30:9,
  30:15, 36:19,
  38:4, 43:10,
  52:14, 55:6, 68:20
found 4:23, 14:7,
  32:6
four 59:8, 79:15,
  80:9, 81:16
fraction 10:21
frame 53:23, 68:22
frames 66:7, 66:14
free 14:17
frequently 9:8
FRIEDMAN 2:11,
  24:12, 24:13,
  26:5, 26:10,
  26:11, 26:12,
  32:1, 32:4
front 12:2, 12:8,
  12:10, 15:21,
  22:6, 22:16
fronts 26:16
frozen 61:21
full 23:16, 24:3,
  54:13, 54:15,
  55:4, 55:18
fully 20:20, 41:24,
  42:5, 42:14, 67:9
function 15:14,
  15:15, 61:7
fund 35:5, 35:19,
  35:20, 35:23,
  35:25, 36:5, 36:9,
  36:16, 36:17,
  37:5, 37:15,
  37:18, 38:6,
  38:10, 38:11,

39:23, 40:2, 40:9,
40:11, 45:25, 46:1
fundamentally 26:22
fundamentals 31:11
funding 7:12, 10:6,
10:8, 10:9, 10:12,
10:18, 30:4,
30:17, 31:1
funds 10:2, 10:19,
31:17, 33:10,
33:15, 34:11,
34:22, 35:1, 35:5,
39:2, 40:1, 45:12,
45:24, 46:3,
46:13, 47:7,
47:10, 48:9
future 5:1, 25:14,
55:4

< G >
gather 11:15, 40:20
gave 14:1, 29:25,
30:7
GDB 45:11, 48:8
general 5:14, 9:5
generally 21:12
generate 76:12
generating 10:11
generation 6:21
getting 25:16,
74:14, 76:8
give 12:20, 16:16,
18:24, 26:13,
42:9, 62:16,
75:16, 82:1
given 32:16, 41:2,
57:19
gives 18:4, 22:18
giving 67:23, 73:21
glitches 13:24
goal 58:3, 60:25,
61:14, 62:9, 68:18
goals 29:14, 74:2
God 24:9
Gold 41:14, 45:14,
46:2, 46:4, 46:13,
46:19, 46:24,
47:3, 47:5, 47:7,
47:11, 47:18

gotten 12:12, 75:5
governing 57:7
Government 6:3, 7:3,
7:11, 9:11, 10:4,
14:20, 22:12,
23:21, 26:7, 27:7,
27:23, 28:9,
28:18, 29:16,
29:23, 30:11,
41:21, 51:7,
65:25, 66:5,
66:14, 74:21
governmental 26:21,
28:8
Governments 9:7
Governor 9:8, 9:10,
9:15, 23:23, 24:1,
25:5, 25:10,
25:22, 27:8, 27:9,
27:17, 28:7,
28:11, 28:15,
28:22, 28:23,
29:4, 30:3, 30:12,
30:15
Gracia-gracia 83:4
granted 13:19,
78:21, 78:24
granting 77:25
Great 9:17, 15:21,
33:3, 68:25, 69:3,
69:12, 72:20,
73:15, 74:5
greatly 57:1
grievance 50:14,
55:15, 55:17,
55:23, 56:3,
56:11, 76:23,
76:25, 78:17
grievances 56:5,
56:8, 78:10
ground 73:21
grounds 42:14
Group 6:3
groups 6:2, 6:7
guidance 7:19, 8:10

< H >
hair 76:6
handle 52:12, 58:12,

60:25, 66:2, 75:25
handled 50:16, 62:8,
62:20, 63:21
happen 24:5, 24:10,
73:13
happening 24:2
happens 73:22
happy 18:16, 21:20,
55:20, 58:20,
64:9, 64:19, 70:6,
73:9, 73:12
harshly 30:11
Harvey 10:17
Hastings 20:18
head 23:19, 77:7,
77:16, 82:16
hear 12:25, 19:10,
23:9, 38:15,
38:17, 68:14,
73:17, 77:15
heard 5:7, 19:13,
44:7, 46:18, 49:4,
77:13, 82:21,
82:24
HEARING 1:27, 4:20,
5:15, 7:20, 8:1,
8:20, 13:13, 17:4,
17:23, 18:5, 19:8,
24:3, 24:5, 25:17,
32:14, 33:11,
37:9, 38:4, 40:13,
41:2, 73:19, 79:7,
83:3, 83:6, 83:10
hearings 57:15
heartened 14:14
held 9:15, 28:11,
36:8, 36:9, 37:16,
38:6, 38:12, 40:8,
40:20, 57:15
help 8:6, 18:24,
22:24, 68:21,
72:16
helpful 12:23, 15:2,
15:22, 16:7,
18:17, 20:7, 68:7,
68:11, 72:15,
73:16
high 8:5, 24:3,
53:10, 73:18
high-level 73:1

highly 31:21
Hill 7:5, 7:10
hit 65:22
hold 39:23, 62:5
holder 36:17
holding 35:20
holdings 40:12
Honorable 1:28, 84:6
hoped 8:5
hopeful 8:5, 60:3,
  60:9
hopefully 13:12,
  13:21, 20:11, 64:7
hopes 6:8, 27:19
Housing 10:9
HTA 78:3
HUD 10:11, 10:22,
  10:23
hundred 14:9, 18:6,
  19:4
hundreds 55:25
Hurricane 10:17,
  30:21, 30:24
hurricanes 10:14,
  19:15
hyphen 80:2


< I >
ideal 72:12
ideas 14:2
identified 17:14
identify 53:13,
  64:24
identifying 17:5,
  17:11
III 1:8, 5:24, 9:20,
  11:2, 26:19, 28:2,
  39:24, 49:20,
  50:15, 51:8,
  57:24, 58:8,
  61:22, 63:20,
  71:6, 80:16, 81:2
impact 29:6, 29:10
implement 30:23
implementation 7:1,
  9:16, 78:6, 80:13
implemented 78:23
importance 26:16
important 26:19,

28:16, 71:20,
  72:4, 83:12
Importantly 50:18,
  58:3
improve 80:13
improving 31:6
in. 15:25
inasmuch 14:12
inclination 73:18
inclined 58:19,
  73:19
include 22:3, 29:10,
  32:8, 60:5, 64:9,
  64:20, 73:9,
  81:18, 82:5, 82:10
included 5:16,
  19:18, 21:23,
  50:23, 51:23,
  58:18, 64:25,
  70:13
includes 77:20
including 4:18,
  4:21, 4:25, 11:9,
  33:24, 48:23,
  54:9, 68:11, 68:23
Income 11:10
inconsistent 29:8
increased 21:6
increases 23:25
indicate 42:4, 64:12
indicated 21:15
indicates 70:12,
  71:11
indicating 34:13,
  35:15, 65:9
indication 17:19
individual 5:6, 6:7,
  37:14, 45:25,
  48:11, 60:7
influx 18:20, 51:19
information 4:14,
  8:3, 17:7, 17:12,
  17:16, 18:2, 18:8,
  18:12, 19:18,
  21:9, 27:21,
  31:22, 51:22,
  52:16, 65:9,
  65:15, 68:5, 68:8,
  76:12, 81:18,
  81:20, 81:23,

82:2, 82:8
informative 34:12,
  35:14, 75:8
informed 15:20, 64:4
infrastructures
  10:10
initial 53:24, 54:9,
  74:4, 81:17, 81:20
initially 13:14
initiated 81:19
initiatives 28:6
insight 12:20
Instance 9:24,
  59:21, 69:23,
  71:12, 75:7
instances 57:21
Instead 33:17,
  51:12, 56:21,
  73:21, 77:1
instructions 77:20
instrumental 6:12
instruments 38:7
intend 8:13, 51:2,
  53:13, 59:9,
  59:11, 63:19
intending 56:3
intends 32:20
intent 11:4
interactions 11:23
interest 4:6, 8:18,
  24:22, 36:17,
  39:6, 39:12, 40:8,
  45:9, 45:10, 48:7,
  48:8, 75:21, 79:5,
  79:6, 81:9
interested 76:5
intermediary 36:5
interrogate 23:4
invested 12:1,
  33:16, 45:12, 48:9
investigated 14:6
investigations 32:10
investment 36:8,
  36:9, 38:9, 39:9
investments 33:9,
  45:11, 45:23,
  46:3, 47:6, 47:9,
  48:8
investor 31:6,
  31:10, 46:1, 46:13

investors 31:8,
    31:21
invoice 42:1
invoked 67:12
involve 64:16
involved 15:25
involvement 12:8
Irma 10:14
irrevocable 81:3
issue 9:1, 68:16,
    74:23
issued 4:11, 28:16,
    39:24, 42:2,
    42:24, 45:10,
    45:11, 45:12,
    48:7, 48:8, 48:9,
    48:25, 49:18
issuer 38:11
issues 9:24, 12:14,
    20:19, 25:23,
    30:14, 30:25,
    57:18, 57:19,
    57:24, 57:25,
    60:1, 60:22,
    79:13, 79:20,
    80:8, 80:17, 80:18
Item 5:5, 32:5,
    44:25, 47:23,
    50:3, 82:22
Items 32:24, 50:3
itself 14:20, 18:20,
    21:15, 40:11,
    42:10, 52:13,
    56:21, 57:5,
    64:14, 68:21
IV.1 50:3
IV.2 32:24, 50:3
IV.4 5:5, 44:25
IV.5 47:23


< J >
J. 1:35
JAMS 12:24
January 24:4, 25:17
Jaresko 7:5, 9:14,
    29:25
job 30:13
Joint 5:16, 5:21,
    9:24, 24:22,

26:23, 29:12, 35:4
Jointly 1:11
Jose 2:16, 76:17
JRF 41:14, 45:14,
    46:2, 46:4, 46:13,
    46:19, 46:24,
    47:3, 47:5, 47:7,
    47:11, 47:17
Juan 4:1, 4:7, 83:6,
    83:7
Judge 1:28, 1:29,
    5:9, 15:14, 23:16,
    84:7
judicial 4:10, 12:6,
    12:8, 69:24,
    69:25, 80:22, 82:9
July 7:19, 8:1,
    9:19, 14:2, 22:1,
    23:4
jump 62:9, 83:2
juncture 80:7
June 22:1, 27:24
jurisdiction 71:14,
    74:9, 74:24
jurisdictional 79:16
jury 79:24
justice 75:21, 79:5,
    81:9
justification 27:3


< K >
Katrina 10:17
Keep 12:12, 19:19,
    68:19, 74:9, 83:13
keeping 81:11
keeps 74:24
key 6:22, 58:10
kind 73:17, 75:15
knowledgeable 72:10
knows 23:16, 29:4,
    60:11


< L >
L. 2:16
Labor 71:13
lacks 40:14, 46:2,
    46:13, 47:7
laments 10:5

language 21:7, 75:1,
    75:13, 76:3, 76:24
large 17:14, 53:3
largely 57:20
last 13:11, 28:6,
    28:15, 31:4,
    33:11, 37:9, 50:21
lasts 6:16
later 20:11
latest 8:11
latter 71:24
Laura 1:28, 1:36,
    33:3, 63:17, 84:7
Law 17:25, 18:1,
    18:3, 53:23, 57:6,
    57:18, 57:20,
    66:18, 70:24,
    79:7, 79:13,
    79:15, 79:20,
    80:17
Lawful 6:5
laws 29:5, 29:6,
    29:8, 71:1
LCDC 6:5
lead 15:10, 28:4
leaders 28:8
leadership 22:19
learned 25:7
least 59:15, 61:24,
    72:8
leave 70:13
leaves 50:3
Lecaroz 1:41
legal 40:6, 70:15
legislative 11:7
legislature 25:6,
    25:10, 25:22
less 25:3, 38:7,
    52:24
letter 16:18, 18:6,
    51:14
letters 8:2, 8:4,
    13:3, 16:15, 18:7,
    18:16, 19:3, 19:4,
    19:20, 20:21
letting 62:21
level 36:21, 53:9,
    53:10, 69:25,
    73:18
levels 73:2

liabilities 5:23,
   18:3, 42:4, 42:15,
   42:18, 43:3,
   43:10, 43:17,
   45:8, 47:6, 48:5,
   48:14, 51:2, 52:9
liability 41:25,
   42:11, 47:11,
   49:11, 49:18
liable 45:5, 48:2,
   48:24
Librada 40:20
life 25:7
Lift 63:6, 83:4
light 39:15, 42:24,
   43:15, 48:17,
   55:8, 80:22
likelihood 79:22
likely 15:19, 80:13
Likewise 13:18,
   13:20, 14:12
limbo 62:10, 62:19
limited 4:21, 5:1,
   13:6, 15:6
limits 82:11
line 10:16, 24:24
lines 17:19, 18:1,
   18:20, 60:19,
   64:20
liquidate 57:6
liquidated 34:21,
   38:7, 54:5, 54:12,
   57:17, 67:9, 67:19
liquidating 53:8
liquidation 33:14,
   35:19, 38:8, 39:1,
   56:24, 57:19,
   66:23, 80:9
list 69:23, 72:21
listed 44:16, 47:15,
   49:15, 49:17,
   49:20, 49:23,
   82:22
listened 44:11,
   46:22, 49:8
litigation 18:11,
   23:15, 24:10,
   24:17, 25:17,
   59:19, 60:4,
   60:16, 61:16

litigations 59:5,
   60:24
little 13:8, 15:10,
   15:18, 18:4,
   32:16, 37:8,
   38:22, 38:23,
   76:12
live 25:21, 25:24
loaded 4:17
local 53:22, 66:18
long 20:19, 62:13,
   67:19
long-term 10:11
longer 36:5, 37:17,
   53:23, 66:16, 82:2
look 75:11
looking 12:23, 16:9,
   60:5, 76:6
looks 6:13
loss 35:6, 37:18,
   38:9, 40:3, 40:4
losses 36:17, 37:4,
   37:6, 39:10
lot 20:22, 26:1,
   63:25
lots 55:7
Luc 2:6, 20:17
Luis 76:17


< M >
machine 23:15
Maestros 2:15, 76:18
magistrate 22:7
magnitude 65:22,
   67:25
mail 65:7
mailed 8:1
mailing 7:25, 21:15
mailings 8:13,
   21:14, 65:7
main 21:22, 21:23,
   34:24, 37:2,
   37:13, 79:18
maintains 64:16
manage 76:13
Management 1:10,
   6:21, 10:7, 17:1
mandatory 21:25
manner 31:16

map 64:14
march 27:4
Maria 10:14, 30:24
marked 63:19
marking 56:17
Marrero 27:9, 28:8,
   30:2, 30:6
Marsal 16:23
Martin 1:35, 5:11
massive 81:2
Master 40:23
match 10:16, 72:8
matches 40:22
material 22:14
materials 82:13
matter 5:7, 34:8,
   37:11, 40:6,
   61:12, 82:18
matters 12:4, 28:21,
   32:7, 32:18, 59:7,
   60:17, 79:20,
   82:22
Mckinsey 32:10,
   32:11
mean 24:1, 50:15,
   66:20
meaning 74:10
means 53:8, 64:9
meant 69:7
measures 7:2, 7:4
mechanics 8:24,
   65:25
mechanism 62:14,
   74:25
mechanisms 22:19,
   62:25, 80:11,
   80:25
Mediation 6:8, 6:12,
   6:13, 6:15, 12:3,
   15:6, 15:9, 15:13,
   71:12
mediators 12:16,
   15:24
Medicaid 11:10
meet 6:6, 7:2, 80:24
meeting 27:12, 30:3
meetings 9:16
meets 27:3
member 30:10
members 4:6, 60:11

mention 31:4
mentioned 27:15,
    28:2, 28:22, 29:24
merely 15:11
middle 37:18
million 8:17, 14:9
mind 75:15
minimis 14:20
minimize 25:20
minimum 14:7
minute 16:14
minutes 82:7
misstating 55:10
models 15:9
modification 8:23,
    9:3, 58:6
modifications 78:20
modify 73:24, 74:10,
    75:18, 81:6
moment 70:11, 75:17
money 18:24, 22:6,
    24:17, 43:9, 70:21
monitor 7:1, 56:15
Monsita 1:41
month 52:23
monthly 31:15
months 42:17, 68:2
morning 4:5, 5:3,
    5:6, 5:9, 5:10,
    11:20, 16:24,
    16:25, 20:17,
    26:10, 26:11,
    34:5, 76:17,
    76:20, 76:21
Moscoso 48:12,
    48:13, 48:15,
    48:22, 49:5, 49:9,
    49:11, 49:23
moved 72:18
Moving 23:11, 26:24,
    27:12, 47:21,
    68:20
Mudd 12:23, 14:14
municipal 28:1
mutual 33:10, 33:14,
    35:19, 35:20,
    35:22, 35:25,
    36:5, 36:9, 36:16,
    36:17, 38:6,
    38:10, 38:11,

39:2, 39:23, 40:8,
    40:9, 40:11,
    45:11, 45:24,
    45:25, 46:1, 46:3,
    46:13, 47:7,
    47:10, 48:9
Myers 26:12


< N >
namely 78:7
Natalie 7:5, 9:14
Natural 30:10
nature 13:6, 50:14,
    61:15, 79:14
neared 18:19
necessarily 52:3,
    52:12, 61:4,
    65:14, 67:23
necessary 5:5, 7:7,
    12:6, 28:4, 31:22,
    52:11, 60:6,
    64:18, 66:17,
    73:25, 75:20, 81:8
need 8:8, 15:16,
    20:22, 50:19,
    57:3, 68:13, 72:5
needlessly 24:23
needs 7:13, 9:25,
    52:7, 52:17,
    52:18, 72:17,
    73:24
negative 77:18
negotiated 6:1
negotiations 5:25,
    11:2, 27:20, 28:3
Nevertheless 51:5,
    80:25
New 1:38, 2:12, 4:7,
    7:17, 11:18, 24:1,
    24:12, 26:6, 27:8,
    31:6, 31:8, 31:13,
    32:11, 34:15,
    35:10, 36:15,
    59:24, 76:23,
    83:5, 83:7, 83:9
newspapers 23:20
Next 13:12, 19:8,
    32:5, 61:18,
    73:14, 83:2, 83:6

nice 73:13
nine 41:23, 79:20
No. 1:6
nod 77:9, 77:18
Nodding 77:5, 77:7,
    82:16
nomenclature 15:5,
    78:15
nondebtor 79:25
None 3:5, 3:11
nonjudicial 12:7,
    15:24
nonspecific 17:24
nonsubstantive 21:7,
    21:11
nontitle 28:2
nor 4:14
Noreen 2:22, 33:15,
    34:6
normal 51:25
note 30:9, 64:2
noted 26:20
notes 4:16, 4:17,
    75:16
nothing 19:6, 40:5
notice 10:23, 33:25,
    56:12, 64:11,
    64:20, 70:8,
    71:21, 72:8,
    72:24, 73:10,
    73:13, 74:4, 75:8,
    76:3, 77:24,
    81:19, 82:9
notices 64:3
notification 19:18
notified 8:19
noting 64:9
November 82:14
Number 8:7, 13:18,
    15:6, 18:10,
    18:13, 21:6, 33:1,
    33:19, 35:9,
    35:11, 40:22,
    41:18, 42:5, 42:8,
    42:9, 43:4, 43:21,
    45:6, 45:15,
    45:16, 48:3,
    48:12, 48:13,
    53:3, 57:2, 58:25,
    67:24, 73:11,

77:25
numbers 8:25, 21:19,
  65:13
numerous 19:3


< O >
O'melveny 26:12
object 34:16, 37:23,
  52:6
objected 58:2
objecting 52:3, 52:5
Objections 13:11,
  14:25, 16:15,
  16:19, 17:3, 17:4,
  18:16, 19:20,
  20:24, 21:1,
  21:16, 32:21,
  32:24, 33:24,
  40:16, 61:16
obligate 10:12
obligation 19:19,
  67:5
observed 4:22
observing 4:7
obvious 29:14, 76:7
obviously 26:25,
  30:25, 35:25,
  36:24
occupy 42:16
occur 24:17
October 28:10,
  29:18, 29:25
odd 55:23
offer 22:25
offered 3:5, 3:11
Office 7:21, 7:23,
  8:11, 11:24,
  11:25, 12:1,
  28:23, 30:13,
  30:18, 71:12
Official 2:4, 6:2,
  20:18, 84:14
officio 27:9
offline 21:18
often 22:24, 23:14,
  61:15
Okay 41:17, 53:2,
  66:25, 67:17,
  68:24, 69:12,

69:21, 72:20,
  74:13, 75:3, 82:4
Omar 27:8, 30:2
OMB 9:23, 29:9
Omni 72:2, 72:4,
  72:6, 72:18
Once 23:2, 46:18,
  54:11, 67:18
one. 77:19
ones 17:22, 17:23,
  35:1, 65:1, 65:16
ongoing 8:25, 9:17,
  65:10, 80:19,
  83:11
open-ended 81:4
operating 62:25
operative 73:21
opportunity 12:15,
  15:21, 19:12,
  19:23, 23:3, 37:23
opposed 15:11, 56:8,
  65:17
opposition 78:5
option 27:18, 71:22
oral 30:8, 78:20
Orders 4:11, 6:17,
  21:1, 21:19,
  28:16, 32:12,
  32:19, 32:21,
  45:18, 47:13,
  55:20, 67:25
ordinarily 50:16,
  61:8, 70:24
ordinary 53:6, 54:4,
  60:25, 61:1, 61:9,
  61:12, 62:1,
  67:19, 67:20,
  68:1, 72:1, 77:1
organization 12:24
organized 75:9
original 33:20,
  33:21, 36:20,
  36:22, 39:14,
  40:15, 43:7,
  43:17, 44:13,
  53:17, 54:14,
  55:14, 66:8
originally 76:24
otherwise 4:22,
  4:23, 6:17, 59:8,

71:4, 72:8
ought 75:11
outcomes 51:4
outside 4:13, 9:24,
  12:10, 51:8
outstanding 8:16,
  38:20, 40:18
overall 58:3
overruled 44:13,
  47:4, 49:9
overruling 44:18,
  47:17, 49:22
overview 7:16
owed 18:3, 42:12,
  42:18, 43:1, 43:4,
  43:8, 43:9, 53:12,
  78:9
owes 42:14
owing 51:12, 51:16,
  67:3
own 75:7
owned 29:20, 39:5,
  39:23
owners 35:2
ownership 39:6,
  39:16, 45:9,
  45:10, 47:12,
  48:7, 48:14,
  49:12, 49:18
owns 31:19


< P >
pace 20:8, 66:3
PAGE 3:3, 69:1
pages 84:4
paid 42:5, 43:1,
  43:5, 43:7, 43:17,
  54:13, 54:15,
  55:18, 58:9,
  61:24, 62:8,
  67:18, 68:12,
  74:15, 76:8, 77:1
paper 19:16, 21:9
papers 5:6, 78:5
paperwork 64:14
Paragraph 61:18,
  63:14, 64:23,
  67:17, 69:5,
  70:12, 71:11,

81:16
part 4:14, 15:23,
  49:16, 49:24,
  65:5, 73:25,
  75:19, 75:24, 81:7
participants 4:8
particular 4:16,
  17:4, 28:13, 35:6,
  59:5, 79:7
particularized 81:5
particularly 7:11,
  10:6, 35:3, 73:4,
  80:21
parties 4:6, 4:22,
  8:11, 9:2, 33:23,
  42:22, 53:22,
  66:17, 67:7,
  79:25, 80:4
partner 7:16
party 31:19
pass 35:21
past 63:4
path 73:22
pathway 70:19
Patricia 48:12
Paul 20:18
pausing 27:4
pay 51:2, 53:6,
  55:3, 70:17, 74:22
payment 48:25, 58:9,
  58:13, 68:23,
  70:16, 81:25
payments 42:21,
  42:23, 42:25,
  54:5, 54:18, 55:3,
  55:4, 55:6
pays 22:12
PBA 9:20, 78:3
pending 11:2, 28:21,
  33:13, 38:19,
  43:12, 57:22,
  61:19, 65:6,
  81:20, 81:21,
  81:22
pension 5:23, 50:13,
  50:24, 51:11,
  51:13, 51:21,
  51:25, 52:7, 52:9,
  52:11, 52:15,
  52:23, 52:24,

54:18, 54:24,
  55:1, 55:3, 67:5,
  69:14, 69:15,
  69:23, 78:8
pension/retiree
  78:15
pensions 52:9
people 6:20, 15:11,
  15:13, 18:21,
  19:12, 19:15,
  23:24, 25:19,
  51:21, 52:22,
  56:12, 65:20,
  73:6, 76:7
per 14:8, 21:6,
  34:16, 35:2, 52:23
perfectly 72:11
perform 15:13
performance 26:18
performed 57:9
perhaps 21:18, 35:4,
  35:13, 62:8, 64:10
period 62:11, 82:2,
  82:3
periodic 81:17
periods 66:16
permanent 10:15
permission 47:22
permissive 79:3,
  79:11, 80:6
permit 56:21, 64:4,
  64:11, 64:21
permits 58:7
permitted 4:21
permitting 58:13,
  80:7
persistent 22:24
PERSON 4:13, 4:21,
  25:23, 47:1, 72:25
persons 50:22
perspective 26:7,
  75:6
Peter 2:11, 26:11
petitions 61:22
phase 21:5, 81:20
PHV 1:35, 1:36,
  1:37, 2:6, 2:11
picture 8:7, 59:1
piece 21:9
place 19:5, 50:19,

52:18, 52:19
placed 62:5
planning 63:15,
  64:1, 75:12
plans 6:25, 7:2,
  28:14, 29:8
platform 31:8
pleading 14:14
plenty 23:3
podium 11:18
point 12:9, 21:18,
  21:23, 22:5,
  22:15, 22:16,
  25:25, 37:19,
  37:21, 39:4,
  54:14, 55:13,
  62:7, 63:15,
  71:19, 73:18,
  81:25
point. 21:22
policies 4:11
policy 28:11
political 25:7,
  25:20, 26:21
Ponce 42:7, 42:12,
  42:17, 42:20,
  42:25, 43:6, 43:8,
  43:11, 43:16,
  44:8, 44:12, 44:18
popping 75:4
position 21:8,
  27:24, 35:17,
  39:25
positioned 58:12
positive 30:16, 31:3
possible 27:20,
  28:25, 29:15
possibly 12:4
post 30:20, 50:24
post-hurricane 19:17
postdated 19:15
posted 27:25
postponed 24:4
potential 31:8, 73:3
potentially 53:5,
  60:21, 66:16
Power 1:21
practicable 8:14
practice 19:22,
  63:16, 68:10,

81:13
precise 81:14
precisely 58:16
predominate 57:18,
  79:13, 80:17
prefer 51:17, 68:6
premature 23:23
PREPA 6:18, 6:19,
  6:21, 23:13,
  23:16, 23:21,
  26:13, 26:23, 78:3
prepare 29:10, 72:5
preparing 83:10
presence 79:15,
  79:24
present 33:24, 54:3,
  60:22
presentation 23:12,
  58:24
presented 37:9,
  38:1, 66:6
presentment 32:20,
  82:14
presents 60:23
preserves 53:25
preserving 51:13
press 4:7, 4:22
pressure 26:1
pretend 24:10
preview 68:8
PRIDCO 8:15, 8:16,
  9:2, 9:3, 9:22
primary 5:15
Prime 64:16, 64:21
principal 8:17,
  39:11
principles 78:25
prior 13:3, 54:19,
  59:5, 60:15,
  60:24, 64:6
priority 10:3
private 6:21
probably 13:16,
  20:11
problem 12:11,
  72:23, 75:10
problems 24:1, 75:23
procedural 80:24
Procedure 8:14,
  13:19, 22:7, 50:9,

78:23, 79:2, 82:19
proceed 21:16,
  38:17, 54:8, 56:21
proceeding 4:25,
  61:25, 79:7,
  79:15, 79:17,
  79:19, 79:24
Proceedings 2:48,
  4:15, 57:22,
  57:23, 79:22,
  80:20, 81:2,
  83:15, 84:6
processing 63:2,
  69:19, 70:15,
  73:2, 81:14
produced 2:48
production 24:25
productive 23:6,
  27:20
professionals 8:23,
  8:24, 9:11
profile 31:12
program 11:10
progress 7:6, 9:17,
  26:19, 27:19,
  33:2, 56:16
project 31:6
projects 10:15,
  30:21
PROMESA 11:1, 22:18,
  28:17, 29:2, 29:4,
  30:1, 30:2, 30:7,
  51:1
promised 30:13
promote 28:9, 29:15,
  73:6
Proof 18:25, 33:18,
  33:20, 35:1,
  40:15, 40:16,
  40:23, 42:9,
  42:10, 42:13,
  43:3, 43:14,
  43:18, 43:22,
  44:1, 44:6, 44:13,
  44:14, 44:21,
  45:15, 45:16,
  45:23, 47:5,
  48:13, 51:24,
  52:15, 65:21
Proofs 13:4, 40:17,

41:23, 42:4,
  44:16, 45:8,
  47:15, 48:5,
  49:15, 56:7, 66:12
proper 33:25, 34:1
properly 15:24,
  16:18, 33:23,
  36:13
property 42:16
proposal 7:15,
  11:15, 11:22,
  12:9, 12:16,
  12:23, 15:12,
  58:17, 63:1,
  75:22, 78:13,
  80:4, 81:10
proposals 15:5
propose 8:13, 12:25,
  76:23, 82:2
Proposed 5:18, 5:20,
  6:10, 7:21, 7:25,
  8:13, 11:1, 11:22,
  21:14, 21:15,
  23:3, 32:12,
  32:19, 32:21,
  41:4, 55:20,
  61:21, 65:7,
  71:24, 78:13,
  78:23, 80:13,
  80:23, 82:13
proposing 22:19
Proskauer 5:11,
  17:1, 33:4
proud 30:14
prove 34:10
provide 7:16, 8:2,
  11:8, 14:16, 17:6,
  17:11, 17:15,
  17:19, 17:23,
  18:1, 18:2, 18:8,
  25:3, 31:21, 34:9,
  39:2, 51:22, 53:7,
  53:16, 53:20,
  65:4, 68:5, 81:14,
  82:7
provided 7:19, 35:7,
  58:17, 65:13,
  82:20
provides 53:23, 79:4
providing 7:6, 58:4,

72:24
provision 58:6, 63:6
provisions 70:16,
  79:1
Public 4:6, 5:19,
  6:4, 6:10, 8:16,
  10:6, 28:10,
  28:20, 30:5,
  31:16, 50:13,
  71:9, 78:7, 78:9,
  78:16
publication 10:23,
  31:14
publicly 11:22,
  23:3, 27:17, 31:5
punctually 29:13
purchase 42:1
purports 41:25
Pursuant 13:2,
  30:21, 37:4,
  45:18, 47:13,
  49:13, 51:1,
  51:25, 60:6, 79:3
put 13:21, 23:22,
  56:10, 59:9, 64:1,
  72:20
putting 16:23


< Q >
qualification 69:11
qualifying 8:23, 9:3
quantification 69:6,
  69:7, 69:9
quarter 9:4
question 40:20,
  50:12, 54:22,
  61:18, 80:6
questions 7:18,
  11:12, 11:14,
  18:15, 31:25,
  32:2, 55:7, 58:20,
  58:25, 63:23, 69:4
quite 31:2
quote 50:24, 63:7,
  69:14
quoting 80:1


< R >

races 12:17
raise 76:4
raised 10:25, 24:11
raising 23:18,
  23:19, 74:23
RAMOS 2:16, 76:16,
  76:21, 77:11
ran 74:22
ranking 30:10
Rapisardi 26:6
rate 8:4, 23:24
Re 1:6, 80:1
reached 42:23, 81:23
reaching 60:10
read 46:21, 49:7,
  56:12
ready 12:5
reaffirm 77:2
Real 12:13, 20:12,
  29:20, 29:22,
  42:8, 42:12,
  42:17, 42:20,
  42:25, 43:6, 43:8,
  43:11, 43:16,
  44:8, 44:12, 44:18
realistic 82:3
really 14:22, 15:3,
  17:5, 17:6, 19:1,
  19:4, 19:5, 21:22,
  35:8, 35:9, 51:24,
  56:10, 58:10,
  61:6, 64:15,
  65:16, 65:24
reason 40:25, 50:19,
  62:13
reasonable 15:20
reasons 11:6, 41:1,
  78:19
recall 14:1, 18:19,
  20:23
receive 31:20, 37:4,
  38:8, 65:8, 72:14
received 7:22, 8:12,
  13:6, 21:16,
  35:19, 38:7, 40:9,
  56:2
receiving 8:6, 8:10
recent 7:24, 27:7
recently 7:5, 23:19
recited 82:6

recognizes 27:19
recommendations
  32:10
reconcile 8:9
reconciled 50:10
reconciliation 13:9,
  13:19, 56:18,
  56:19, 57:2,
  57:13, 57:14,
  63:20, 63:22,
  64:7, 65:11, 67:6,
  73:1, 77:23
Reconstruction
  10:13, 30:19
record 4:14, 30:12,
  39:22, 41:1, 42:6,
  45:6, 48:3, 55:16,
  80:23
recorded 2:48
recording 4:20
records 42:3
recover 35:18, 35:21
recoveries 10:8
Recovery 7:13,
  10:11, 30:18,
  30:21
redeemed 35:6, 40:1
redemption 34:10,
  34:21, 35:24,
  40:2, 40:4
reduce 57:2
reduced 34:20
reduces 57:13
reduction 54:13,
  54:16, 54:25
refer 4:17, 43:25,
  65:3, 66:19, 78:1,
  78:3, 78:13, 78:17
referred 23:14,
  59:22
referring 63:14,
  67:22
refers 59:4, 63:7,
  64:23, 69:5
refined 38:5
reflect 34:11
reflected 23:25
reflecting 42:11,
  43:9
reflects 6:1

reformulated 11:22
reformulation 7:15
refund 50:12, 59:25,
   61:24, 62:7,
   74:20, 78:16
refunds 57:7, 74:23,
   78:9
refused 22:2
regard 76:22
regarding 7:12,
   29:6, 32:10,
   33:14, 33:25,
   37:14, 52:8,
   76:25, 80:10, 82:8
Region 1:41
Register 10:24,
   63:16, 63:22,
   64:2, 64:9
registry 13:21,
   56:19, 62:18,
   63:20, 64:12,
   64:17, 64:18
regular 68:10
regulations 29:19
rejection 66:25
relate 59:2
related 11:15,
   23:12, 29:13,
   57:22, 59:5, 69:5,
   77:25, 79:8, 79:15
relatedness 79:17
relates 42:9, 45:15,
   70:15
relating 21:14
relations 9:5, 9:10,
   10:4, 31:10
relationship 36:16,
   45:21, 46:11,
   48:23
release 10:22, 31:1
released 45:22,
   48:16
releases 46:10
relevant 56:23,
   80:6, 80:7, 82:8
reliable 6:20
Relief 7:9, 7:12,
   10:18, 58:2,
   71:16, 77:25
relieve 80:15

remaining 33:10,
   49:19
remains 8:5
remarkable 30:12
remarks 26:13,
   26:15, 77:14
remind 4:10
remotely 10:16
remove 62:18
removed 13:17, 13:20
removing 13:12
rent 42:11, 42:21,
   42:23, 42:25, 43:4
RENTAS 2:22, 34:5,
   34:19, 35:24,
   36:4, 36:11,
   36:14, 36:18,
   36:23, 38:13,
   39:21, 41:12
rents 43:1, 43:9
Reply 34:14, 43:3,
   48:20, 53:19,
   72:1, 72:9, 72:13,
   72:16, 77:14, 78:5
Report 5:8, 6:16,
   7:15, 11:13,
   12:16, 27:25,
   28:7, 32:3, 32:6,
   32:9
Reporter 84:14
reporting 31:14,
   68:11, 73:23,
   74:3, 81:5, 81:15
reports 31:15, 81:17
repository 4:14
representation
   65:24, 76:17
representations
   80:10, 80:18,
   81:12
Representative 1:13,
   22:20, 27:9,
   28:22, 30:9, 75:10
representatives 7:3
represented 6:3
request 16:14,
   33:11, 39:13,
   43:14, 46:15,
   49:1, 75:8
requested 26:14,

34:20, 35:12
requesting 42:21,
   58:7
requests 5:2
require 55:21
required 16:18,
   50:23, 66:17, 81:6
requirement 80:24
requires 10:22,
   10:23, 29:4
rescind 73:24,
   75:19, 81:7
reservation 82:6
reserve 73:20,
   73:23, 75:18, 81:6
reserves 75:14
Resiliency 26:18,
   30:19
resolution 58:4,
   66:19, 67:13,
   75:21, 78:7, 79:1,
   80:12, 81:9
resolutions 29:12
resolve 48:22,
   51:17, 57:4, 61:8
resolved 8:8, 12:7,
   51:8, 52:7, 52:20,
   53:14, 57:3,
   61:16, 63:25,
   64:2, 64:5, 64:10,
   64:12, 65:17,
   66:20, 66:21,
   68:12, 81:24
resolving 56:20,
   60:3
resource 12:13
Resources 12:6,
   12:10, 20:9, 30:10
respectfully 39:13,
   43:10, 46:14, 49:1
respective 49:20
respectively 78:17
respects 49:25
respond 16:10, 24:20
responded 19:21
responding 19:20,
   62:21
response 8:4, 8:6,
   21:15, 34:14,
   38:15, 42:7,

42:13, 43:6,
44:11, 44:18,
45:14, 46:4, 46:8,
46:16, 47:3,
47:17, 48:11,
49:3, 49:9, 49:22,
71:23, 71:25, 75:8
response. 41:16,
44:9, 46:20, 49:6,
83:1
responses 8:12,
13:6, 13:10,
32:22, 72:14
responsibility 14:13
responsive 62:15
restarted 81:19
restoring 10:10
Restructuring 7:8,
8:20, 11:2, 25:1,
27:13, 31:21
restructurings 28:3
result 9:2, 10:15,
39:10, 51:19,
53:3, 57:15
resulted 18:3
results 39:1
retain 49:19, 54:8
retiree 50:13,
69:14, 69:23, 78:8
Retirees 6:3
Retirement 5:19,
33:15, 33:18,
33:19, 34:7,
39:22, 40:2, 40:6,
40:8, 40:10,
40:13, 41:3, 41:7,
41:21, 50:24
retransmission 4:20
return 11:3
revenues 29:7
review 69:24, 69:25,
73:3, 80:22, 82:9
reviewed 32:6,
39:20, 44:10, 78:4
reviewing 23:21
revised 7:21, 8:13,
53:18, 55:20,
66:9, 82:13
rights 40:10, 53:25,
54:8, 54:9, 82:6

ripe 34:8, 37:11
Rivera 2:21
road 63:23
robust 22:24, 73:23
rolled 31:5, 31:8
Romualdo 2:20
Rose 5:12, 17:1,
33:4
ROSEN 1:37, 7:17,
11:16, 11:20,
11:21, 13:2, 15:8,
16:1, 16:11,
16:20, 18:18,
20:2, 20:10,
55:10, 59:14,
59:17, 62:1, 62:3,
62:4, 63:5, 63:12,
63:17, 67:4,
67:16, 68:18, 69:2
route 71:16, 71:17,
71:18
routine 50:17, 63:13
RSA 8:15, 8:22,
8:25, 9:2, 23:21,
23:25, 25:9
rubrics 51:11
Rule 36:23, 46:21,
49:7, 79:1
ruled 34:9
ruling 36:20, 36:21,
44:20, 77:19
rulings 40:12


< S >
S. 1:37
S/ 84:12
safe 83:13
salaries 78:9
sale 39:10
San 4:1, 4:7, 83:5,
83:7
sanctions 4:25
Sanz 40:20
sat 30:13
satisfaction 43:7
satisfactory 32:7
satisfied 41:22,
41:24, 42:14,
63:14, 80:21

saw 14:9
saying 37:3, 52:24,
75:4
says 21:9, 75:2
scheduled 83:2,
83:4, 83:6
scheduling 12:16
scope 52:8
se 34:16
se. 35:2
second 7:14, 21:5,
23:22
Section 29:2, 29:4,
51:1, 78:25, 79:4,
79:17
securities 28:1
Seeing 41:17, 46:21,
49:7, 83:2
seek 58:13
seeking 12:5, 15:10,
28:4, 56:5
seeks 41:23, 45:7,
48:4, 50:8, 58:6,
58:16, 78:6
seems 12:12, 55:23
seen 11:24, 70:16,
73:21
send 20:21
sending 16:23
sends 71:21
senior 9:10
sense 16:16, 24:1,
65:22
sent 13:3, 18:7,
19:3, 19:21,
19:22, 61:4, 65:6,
65:11
separate 35:4, 35:5,
60:6, 70:19
September 5:15,
40:13, 42:22
Service 6:4
services 14:16
sessions 6:14
set 17:3, 17:22,
18:5, 31:17, 43:2,
48:20, 54:10,
54:12, 61:9
settled 35:3, 45:22
Settlement 15:7,

15:11, 15:14,
15:21, 45:19,
46:9, 48:17,
48:18, 48:21
settles 46:10
seven 79:18
severable 57:23
several 11:1, 26:16,
42:17, 59:22
severing 79:20
Shaking 77:16
shall 15:9
shape 27:4
share 25:18, 66:2
shareholder 35:22,
38:6
shareholders 35:25
shares 39:23, 40:1,
40:2
shocks 76:9
shopping 79:23
short 74:8, 74:22
shouldn't 19:5,
35:10
show 37:6, 40:22
showing 37:7
shown 37:11
shows 30:25, 31:1
sick 70:13, 70:17
side 77:16
side-by-side 13:21
side. 77:16
sides 25:19
sign 25:9
signals 4:18
signed 23:24
significant 6:2
significantly 29:8
similarly 80:18
simply 32:19, 46:5,
51:12, 52:10
Sir 46:24, 76:15
sit 62:19
site 31:10
sitting 13:7, 16:21
situation 16:2, 62:4
six 68:2, 79:17
slow 10:5, 10:12,
10:13, 38:22
slowly 10:18

small 71:19
smaller 13:18
solution 25:25, 26:1
solve 30:13
somebody 22:10
someone 52:7, 52:14,
67:5
sometimes 30:11,
56:6
soon 8:14, 20:12
Sorry 18:18, 22:1,
47:21, 54:15,
76:15
sort 15:7, 17:6,
52:25, 62:10,
65:13, 75:12
sorts 11:24, 69:25
sought 17:13, 17:16,
45:16, 45:23, 58:2
sounds 33:3, 68:25
source 4:13, 74:21
Southern 59:24
specific 17:15,
18:12
specifically 18:11,
48:18, 53:23,
71:10, 75:12
speedy 53:7, 58:4
spend 20:22
spending 24:16
staff 15:17, 83:8,
83:9
staffed 62:25
stage 33:21, 61:17,
63:18
stages 82:10
stakeholder 5:25,
6:2
stand 12:21
standing 34:25,
36:4, 36:6, 37:1,
37:4, 37:15,
38:10, 39:2,
40:14, 46:2,
46:13, 47:7, 60:20
stands 34:22
start 33:1, 62:9
State 42:16, 53:9,
57:18, 57:20,
57:22, 57:23,

79:6, 79:13,
79:15, 79:20,
80:17
stated 23:4, 27:17,
39:4, 41:1, 55:14,
76:24
Statement 5:17,
5:20, 17:25
statements 27:2
States 1:1, 1:29,
42:18, 46:5,
50:22, 61:19,
78:24, 79:4, 84:7
stating 37:1, 51:13
status 5:14, 7:15,
9:5, 11:13, 26:14,
36:16, 64:3,
64:10, 64:19
Stay 6:16, 9:19,
63:6, 71:16, 83:4
steadfastly 22:2
steam 23:16, 24:3
stenography 2:48
step 75:20, 81:8
stepping 27:6
steps 32:11
stop 25:24
stopping 25:14
strategies 28:18
streamline 29:21,
50:9
strict 28:13
strictly 29:13
strong 31:12
structurally 15:16
structure 12:25
stuck 15:3, 62:10
style 21:25, 31:9
subject 4:25, 11:12,
15:1, 16:18,
43:12, 44:14,
44:22, 51:5,
53:21, 54:13,
54:16, 55:5,
55:15, 56:18,
59:19, 59:23,
63:8, 63:19,
63:21, 73:19,
78:19, 80:19
submission 33:13,

44:17, 49:8, 69:13
submissions 46:22
submit 29:5, 30:20,
  41:4, 43:24, 55:20
submitted 13:4,
  39:20, 40:21,
  53:19
submitting 33:17
subsequent 53:18
subsequently 33:22
substance 79:18
substantial 31:10,
  65:19, 80:15
substantially 62:6
substantiate 19:7
substantively 46:4
succeed 40:10
successes 30:6
successful 14:21,
  14:24, 31:21
successor 69:14
suffered 36:17,
  39:10
sufficient 62:25
sufficiently 8:2,
  16:17, 62:25
suggest 16:2, 32:17,
  32:23
suggested 14:4,
  21:25, 22:1
suggestion 23:8
suggests 48:22
summaries 69:22
summarize 73:18
summary 53:16, 73:2,
  81:17, 82:10
summer 65:8
summit 28:11
superb 83:11
superseded 33:22,
  35:11
supplemental 40:5
Support 6:10, 7:11,
  8:20, 11:7, 11:8,
  24:8, 34:23,
  78:22, 83:11
supporting 17:7,
  17:8, 17:12
supports 58:3
supposed 25:2, 73:7

Supreme 59:21, 70:5
suspected 19:9
suspicions 27:2
sustain 49:1
sustainability 11:3,
  25:2
sustainable 7:7,
  25:16
sustained 40:2,
  40:17, 44:15,
  46:15, 47:4, 49:10
sustaining 32:21,
  41:5, 41:6, 44:19,
  47:18, 49:24
SUT 31:14, 31:15
Swain 1:28, 5:9,
  84:7
System 5:20, 15:13,
  24:25, 25:7,
  25:20, 26:17,
  30:5, 31:14,
  41:21, 59:20,
  68:11, 78:12
systems 6:22, 18:14

< T >
takings 71:5
targeted 15:6, 59:2
Tax 11:10, 50:12,
  57:7, 59:25,
  61:24, 62:7, 70:4,
  74:20, 74:23,
  78:8, 78:16
Taylor 1:28, 84:7
Teachers 76:18
team 6:12, 6:15,
  9:15
technical 71:19
telephonic 4:8
tells 72:25
ten 61:18, 63:15,
  71:25, 79:21
tens 13:19, 53:5
termination 82:1
terms 7:6, 11:9,
  18:6, 19:11,
  23:21, 29:13,
  56:10
Terrific 64:22

tested 81:1
testified 7:5, 9:14,
  30:2
testimony 29:24,
  30:8
texting 4:23
themselves 19:2,
  62:16, 65:15,
  66:15
there'll 20:6
thereof 78:5
thereto 33:24, 69:15
they'll 51:25
they've 64:2
thinking 19:13, 68:9
thoroughly 80:5
though 38:2, 38:20,
  51:6, 67:8
thousand 18:7, 19:4
thousands 13:20,
  51:5, 53:5, 55:25,
  57:10
three 6:1, 41:18,
  45:9, 48:6, 55:19,
  62:19, 68:2, 79:14
throughout 29:16,
  67:18, 68:19
throw 25:13
tie 25:22, 25:23
timely 58:9, 62:15
timetable 12:22,
  53:20, 53:24
timetables 63:1,
  66:6
timing 5:4, 12:11,
  20:8, 70:16,
  71:24, 73:5, 73:11
Title 1:8, 5:24,
  8:15, 9:3, 9:20,
  9:22, 11:2, 26:19,
  39:24, 49:20,
  50:15, 51:8,
  57:24, 58:8,
  61:22, 63:20,
  71:6, 78:24, 79:3,
  79:8, 79:17,
  80:16, 81:2
titled 49:21
Today 5:4, 13:19,
  32:14, 34:9,

36:19, 37:3,
39:22, 45:25,
60:20, 66:2,
80:23, 82:20,
82:22, 82:25,
83:10
together 9:17,
16:23, 27:1, 62:13
tons 24:16
took 62:13
topic 5:13, 7:14,
23:11
total 42:11, 43:1
totaling 42:25
totally 13:16, 23:11
towards 27:4
traffic 65:20
tragedies 10:14
trailing 68:13
trained 15:24
Transcript 2:48,
84:4
transcription 84:5
transfer 29:20
transferred 58:8
transformation 6:19,
6:23, 26:17,
26:22, 27:5, 27:7
transition 27:7
transmission 6:22
transparency 31:7,
68:19, 68:21, 73:6
transparent 64:15,
73:13
travels 83:13
treated 55:18
treatment 11:9,
55:5, 55:15, 77:2
trial 79:24
triggers 76:6
true 84:5
Trustee 1:40, 2:22
try 14:3, 23:7,
76:11
trying 12:12, 12:18,
14:18, 16:8,
17:24, 26:2,
29:15, 30:15,
59:1, 65:22
turn 45:12, 48:9

turned 4:15, 4:18
two 10:13, 20:19,
28:16, 33:1, 35:4,
35:5, 37:24,
38:20, 61:20,
62:19, 63:4, 68:2,
71:20, 79:12,
82:14
two-thirds 8:21
type 8:7, 20:5,
34:16, 56:12,
71:24
types 50:20, 51:14,
55:19, 56:8, 57:7,
59:12, 60:18,
61:15, 65:20,
71:10, 75:21,
78:7, 81:9
typically 67:20


< U >
U-n-a-n-u-e 80:2
UCC 58:2, 58:3,
58:6, 58:18
ultimate 15:19,
25:11
ultimately 8:7,
13:24, 19:11,
29:16
Unanue-casal 80:1
uncontested 32:18
undercuts 58:10
undergoing 56:18
underlying 8:25
undermine 11:2
understand 8:24,
9:25, 12:17,
15:18, 18:3, 18:9,
21:10, 22:13,
52:16, 56:6,
66:13, 70:10
understanding 12:2,
55:9, 55:11, 56:1,
62:6, 66:21, 76:4
understood 20:20,
36:13, 74:9
undertake 16:5,
16:12
underutilized 10:2

undo 74:10
unfold 26:21
Unfortunately 14:6,
18:23, 40:4
UNIDENTIFIED 47:1
uniform 29:1
Union 6:4, 71:4,
78:10
unionized 56:4
United 1:1, 1:29,
78:24, 79:4, 84:6
universe 13:18, 59:2
unless 4:16, 6:17
unnecessary 16:13
unprecedented 12:18
unresolved 61:20,
81:22
Unsecured 2:5, 14:3
unsettled 79:14
until 6:16, 24:4,
25:17
unusual 10:15
update 26:14
updating 64:17
Urban 10:9
using 4:16, 7:25,
31:13, 44:5,
50:10, 53:8,
56:21, 58:5
utilization 10:3


< V >
vacation 70:13,
70:17
valid 40:7
validity 80:9
value 71:4
variations 21:1
varies 68:4
various 28:2, 28:12,
30:22
vary 67:21, 73:12
Vazquez 27:8, 27:17,
28:7, 28:11,
28:15, 30:3, 30:12
venue 69:24
versus 67:6
VI 8:15, 9:3, 9:22
vibration 4:18

video 83:5, 83:7
view 22:5, 22:16,
  26:24, 76:2
viewed 74:21
views 11:5
visibility 28:10
volume 15:19, 65:19,
  66:3
voluntary 9:1


< W >
wages 70:13
Walker 84:12, 84:13
wanted 31:4, 36:12,
  37:19, 55:16, 77:2
wanting 24:23
wants 68:22, 82:24
warm 5:3
warrant 22:15
wavelength 74:16
ways 71:20
website 28:1
weed 22:14
week 13:11, 20:11,
  28:15
weeks 82:14
weigh 56:24, 80:6
welcome 4:5, 5:3
welcoming 75:4
well-trained 57:10
whatever 40:11,
  64:17, 67:11,
  67:12, 70:25,
  73:22, 73:24, 76:9
Whereas 70:4
whether 12:21,
  12:22, 15:14,
  15:16, 16:8,
  17:16, 17:20,
  24:8, 24:12,
  37:14, 52:16,
  61:13, 68:14,
  79:10, 81:11
whichever 36:24,
  51:4
whole 22:7, 36:1,
  73:24, 75:19,
  75:24, 81:7
willing 38:17,

76:23, 81:3
window 12:15, 81:14
WISCOVITCH 2:22,
  33:15, 33:19,
  34:5, 34:6, 34:19,
  35:24, 36:4,
  36:11, 36:14,
  36:18, 36:23,
  38:13, 38:21,
  39:21, 41:3, 41:6,
  41:11, 41:12
Wiscovitch-rentas
  34:3
wish 53:6, 77:13,
  77:14
wishes 5:7, 32:25,
  41:14, 44:7, 46:18
wishing 49:4
within 71:13, 73:5,
  73:7, 78:11,
  81:19, 81:25
withstanding 43:15,
  46:16, 49:2
WITNESSES 3:3
words 81:10
work 22:4, 23:6,
  28:23, 30:15,
  57:9, 58:15, 66:4,
  76:2, 76:5, 82:18,
  82:19, 82:20, 83:9
worked 7:20, 52:22,
  52:24, 65:24,
  66:13
Workers 59:6, 60:16,
  60:24, 61:10,
  61:11
working 6:18, 8:23,
  9:17, 9:23, 9:25,
  16:22, 17:10,
  17:18, 27:11,
  28:8, 30:2, 30:14,
  60:12, 62:12,
  63:3, 68:15, 72:9,
  75:1
workman 61:2
works 25:13, 33:6
worry 55:8
worth 60:3
wrap 56:16
wrench 25:13

writ 17:14, 54:25
writing 51:15
written 30:8, 38:3,
  52:15


< Y >
year 9:4, 28:11,
  50:21
years 10:13, 52:22,
  52:24, 59:19,
  60:3, 61:20,
  62:19, 63:4, 68:2
Yesterday 14:14,
  23:22, 24:12,
  31:5, 32:20
York 1:38, 2:12,
  4:7, 7:17, 11:18,
  24:12, 26:6,
  59:24, 83:5, 83:7,
  83:9