# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| AMBAC ASSURANCE CORPORATION,<br><br>Movants,<br><br>-v-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>Respondents. | No. 17-BK-3283-LTS<br><br>**Re: ECF Nos. 9022, 9023** |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO
RICO; and THE PUERTO RICO FISCAL
AGENCY AND FINANCIAL ADVISORY
AUTHORITY,

          Cross-Movants,

          -v-

AMBAC ASSURANCE CORPORATION,

          Cross-Respondent.

**URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO AND PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY TO STRIKE (A) AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH ASSETS [ECF NO. 9022] AND (B) AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH CASH RESTRICTION ANALYSIS [ECF NO. 9023] AND FOR SANCTIONS**

## <u>TABLE OF CONTENTS</u>

**Preliminary Statement**................................................................................................ 1

**Background** ............................................................................................................... 3

    A.    The Stay Order.................................................................................... 3

    B.    The Court Extends the Stay ................................................................ 5

    C.    The Rule 2004 Motions ..................................................................... 6

**Jurisdiction and Venue**............................................................................................ 10

**Relief Requested** ..................................................................................................... 10

**Basis for Relief**........................................................................................................ 10

**Request for Sanctions** ............................................................................................. 16

**No Prior Request**..................................................................................................... 16

**Certification** ............................................................................................................ 17

**Conclusion** .............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Gibbons v. Haddad (In re Haddad)*,
   68 B.R. 944 (Bankr. D. Mass. 1987) ......................................................................11

*In re Ashley*,
   539 B.R. 198 (Bankr. D.N.H. 2015) ......................................................................16

*In re Charbono*,
   790 F.3d 80 (1st Cir. 2015) ......................................................................16

*In re Enron Corp.*,
   281 B.R. 836 (Bankr. S.D.N.Y. 2002) ......................................................................15

*In re Millennium Lab Holdings II, LLC*,
   562 B.R. 614 (Bankr. D. Del. 2016) ......................................................................15

*In re Orion Healthcorp, Inc.*,
   596 B.R. 228 (Bankr. E.D.N.Y. 2019) ......................................................................15

*In re Snyder*,
   52 F.3d 1067 (5th Cir. 1995) ......................................................................15

*In re Sunedison, Inc.*,
   572 B.R. 482 (Bankr. S.D.N.Y. 2017) ......................................................................11

*In re Youk-See*,
   450 B.R. 312 (Bankr. D. Mass. 2011) ......................................................................11

*Pan Am. Grain Mfg. Co. v. P.R. Ports Auth.*,
   193 F.R.D. 26 (D.P.R. 2000) ......................................................................16

STATUTES/RULES

3 L.P.R.A. § 7652(a)(3) ......................................................................7

3 L.P.R.A. § 1914 ......................................................................7

11 U.S.C. § 105 ......................................................................11

11 U.S.C. § 105(a) ......................................................................11

PROMESA § 301(a) ......................................................................11

PROMESA § 306(a) ......................................................................10

iv

PROMESA § 307(a) ...................................................................................................................10

Fed. R. Bankr. P. 2004 ............................................................................................... passim

Fed. R. Civ. P. 26 ...................................................................................................................15

L.R. 9013-1, ¶ 1.H ................................................................................................................17

To the Honorable United States Magistrate Judge Judith Dein:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), through the Oversight Board as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and collectively with the Oversight Board, "Cross-Movants"), respectfully submit this urgent motion (the "Motion") for an order, substantially in the form attached hereto as Exhibit A, striking *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* [ECF No. 9022] (the "Commonwealth Assets Rule 2004 Motion") and *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* [ECF No. 9023] (the "Cash Rule 2004 Motion," and collectively with the Commonwealth Assets Rule 2004 Motion, the "Rule 2004 Motions") filed by Cross-Respondent Ambac Assurance Corporation ("Ambac"), and granting sanctions.

## Preliminary Statement

1.     By order dated June 13, 2019 [ECF No. 7420], Judge Swain ordered that Ambac's requested discovery in connection with its motion for stay relief or related relief in respect of PRIFA rum taxes must await Judge Swain's decision concerning the legal issues ("Any automatic stay motion-related discovery will be addressed in connection with the Court's decision on the legal issues argued on that stay motion.").  As Ambac well knows, Judge Swain had teed up two threshold legal issues for determination, either of which could moot Ambac's purported need for

---

[2]     PROMESA is codified at 48 U.S.C. §§ 2101-2241.

discovery.  Now, to circumvent Judge Swain's ruling, Ambac is demanding that discovery under the veil of its Rule 2004 motions.

2.      Additionally, to enable the parties to devote their full energy and resources to reach consensus, if possible, on substantive and procedural issues relating to the Commonwealth's Title III case, including what was then a forthcoming (and now filed) plan of adjustment, the Court entered an order staying multiple pending adversary proceedings and contested matters in the Commonwealth's Title III case.  *See Order Regarding Stay Period and Mandatory Mediation* [ECF No. 8244] (the "Stay Order").  The Stay Order also directed a team of mediators (the "Mediation Team"), led by Chief Judge Barbara Houser (the "Mediation Team Leader"), who have been involved in these cases for over two years, to facilitate mediation sessions on a range of topics, including both substantive issues relating to the Commonwealth's proposed plan of adjustment and procedures for resolving disputed issues in connection with proceedings for approval of a disclosure statement and plan confirmation.

3.      Accordingly, over the past several months, the Oversight Board, AAFAF, and many of the Commonwealth's creditors – including Ambac – have engaged in mediation to explore the possibility of a consensual resolution to the Commonwealth's restructuring or obtain as great a consensus as possible, including as to the scheduling of and procedures for the plan confirmation process.  The stay was originally set to expire on November 30, 2019, but the Court extended it through the end of the year at the request of Cross-Movants, and with the support of the Mediation Team Leader.

4.      In the midst of the ongoing mediation sessions, and despite the existence of the stay designed to pause discovery and facilitate an orderly discovery and information sharing process, Ambac filed the Rule 2004 Motions.  Ambac admits the Rule 2004 Motions seek discovery related

to the Commonwealth's plan of adjustment and disclosure statement.  This is precisely what is explicitly prohibited by the Stay Order.  Ambac's violation of the Stay Order by dragging this case into litigation given the current mediation and scheduling process especially as the stay was just extended by this Court, should not be tolerated.

5.     Cross-Movants respectfully submit this Court should strike the Rule 2004 Motions because they violate the Stay Order in at least three respects.  First, by seeking plan-related discovery on substantive issues, the Rule 2004 Motions undermine the efforts currently being made by the Mediation Team and the parties to work to create substantive and procedural agreements regarding a plan of adjustment, and strike at the very purpose of the Stay Order itself. Second, the Rule 2004 Motions violate multiple specific provisions of the Stay Order by seeking discovery on stayed matters.[3]  Third, Rule 2004 motions are for general investigations and are not allowed in respect of identified contested matters such as the disclosure statement and confirmation.

6.     Further, because of Ambac's blatant violation of the Stay Order and its refusal to withdraw the Rule 2004 Motions after the Oversight Board requested it do so orally and in writing, Cross-Movants also respectfully request the Court exercise its inherent authority to enter a sanctions order against Ambac.

**Background**

A.     **The Stay Order**

7.     Although the Oversight Board, as the Commonwealth's representative, had not proposed a plan of adjustment at the time the Court entered the Stay Order, the Stay Order

---

[3]     In filing this Motion, Cross-Movants do not waive any objections to the Rule 2004 Motions or the requests appended thereto, and reserve all rights related to responding to the Rule 2004 Motions should any such responses be necessary.

nevertheless directs the Mediation Team Leader to facilitate negotiations regarding any forthcoming plan of adjustment for the Commonwealth, on her own terms. Stay Order ¶ C.[4] Thus, based on the Stay Order's clear and unambiguous instructions, nothing is to be done in furtherance of a confirmation challenge while the Stay Order is in effect.

8.      The Stay Order directs the Mediation Team Leader to address "procedures for the resolution of" an itemized list of substantive issues relating to the Commonwealth's disclosure statement and plan of adjustment, "and for any other issues she believes appropriate." Stay Order ¶ B. Such issues include, but are not limited to, "issues concerning rum taxes and PRIFA bonds," "validity and impact of revenue clawbacks," and "identification and treatment of essential services." *Id.* ¶¶ B.2, B.4, B.7.

9.      The Stay Order also makes clear that the explicit purpose of the stay, and of the associated mediation, is to "avoid piecemeal litigation," "identify efficiently the issues that must be litigated" to achieve plan confirmation, and "prioritize such issues and develop efficient approaches for the resolution of such issues." *Id.* at 1. As such, the Stay Order directed the Oversight Board, AAFAF, Ambac, and all other affected parties to work with the Mediation Team to develop procedures to address issues related to, *inter alia*, plan confirmation. *Id.* ¶ A.1. In particular, the Stay Order provides the Mediation Team Leader should "facilitate the filing of agreed or substantially agreed scheduling order(s) with respect to . . . the process for considering approval of a disclosure statement and/or confirmation of any . . . plan of adjustment filed after the Stay Order was entered. *Id.* ¶ A.3. The Stay Order further provides that, if the parties "cannot

---

[4]   "If the Mediation Team Leader believes it appropriate to commence substantive mediation on any of the issues, *including issues relating to confirmation of a plan of adjustment* for any Title III debtor, in advance of the filing of any agreed scheduling order or the Report, parties to the Mediation Agreement identified by the Mediation Team Leader shall participate in any mediation session scheduled by the Mediation Team Leader." *Id.*

4

agree or come to substantial agreement with respect to such scheduling orders, the Mediation Team Leader shall file with the Court a report" (the "<u>Report</u>") addressing "the Mediation Team Leader's recommendations regarding procedural issues such as the timing of hearings to consider approval of a disclosure statement, the identification of issues that should be considered in connection with such a disclosure statement hearing, and/or the timing of hearings to consider confirmation of . . . a plan" of adjustment. *Id.* ¶ A.4.

10.    In addition, the Stay Order completely stayed multiple adversary proceedings and contested matters in the Commonwealth Title III case. *Id.* at 1, Appendix I. Of particular import here, the Stay Order stayed the following motions filed by Ambac: (*i*) Ambac's *Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 7176] (the "<u>PRIFA Stay Motion</u>"), and (*ii*) Ambac's *Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* [ECF No. 7328] (the "<u>PRIFA Rule 2004 Motion</u>"). *See* Stay Order, Appendix I at 1.

### B.    The Court Extends the Stay

11.    Since the Court entered the Stay Order, as led by the Mediation Team Leader, the parties – including Ambac – have "been engaged in mediation sessions in an effort, among other things, to carry out the Stay Order." *See Urgent Joint Motion of Oversight Board and AAFAF for Order Extending (a) Stay Period, (b) Mandatory Mediation, and (c) Certain Deadlines Related Thereto* [ECF No. 8972] ("<u>Stay Extension Motion</u>") ¶ 2. This has included the development of a "coordinated litigation process" and a "schedule for mediation which the Mediation Team Leader believed would lead to consensus with respect to . . . the scheduling or ordering of litigations and litigable issues [and] confirmation of a plan of adjustment." *See Reply of the Oversight Board and AAFAF in Support of Modified Urgent Motion for Order Extending (a) Stay Period, (b) Mandatory*

*Mediation, and (c) Certain Deadlines Related Thereto* [ECF No. 9015] ("<u>Stay Extension Reply</u>")

¶ 1.

12.    On September 27, 2019, the Oversight Board filed the *Title III Joint Plan of
Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 8765] (the "<u>Plan</u>") and proposed
disclosure statement [ECF No. 8766] (the "<u>Disclosure Statement</u>") for the Commonwealth, ERS,
and PBA.  Since their filing, the Mediation Team and the parties in interest – including Ambac –
have continued to mediate, including with respect to Disclosure Statement and Plan issues.

13.    As provided in the Stay Order, the stay was set to expire on November 30, 2019,
*see* Stay Order at 1, and the Mediation Team Leader was required to file the Report by October
28, 2019, *id.* ¶ A.4.  On October 24, 2019, as prompted by the Mediation Team Leader, Cross-
Movants filed an urgent motion seeking to extend the stay.  *See* Stay Extension Motion.  The
Mediation Team Leader supported the Stay Extension Motion, noting that, because "very recent
events cause[d her] to believe that it may be possible to make progress in achieving [her] goal of
a more consensual plan," she thought that "the filing of [her] Report now would be a distraction."
*Response of the Mediation Team Leader Regarding Extension of Stay and Mandatory Mediation*
[ECF No. 9014] at 2.  Over opposition from, Assured, FGIC, and Ambac [ECF Nos. 9001, 9004],
the Court entered an order on October 28, 2019 extending the stay through December 31, 2019.
*See Order Granting Urgent Joint Motion of Oversight Board and AAFAF for Order Extending (a)
Stay Period, (b) Mandatory Mediation, and (c) Certain Deadlines Related Thereto* [ECF No. 9016]
("<u>Stay Extension Order</u>").  Accordingly, there is to be no interference with the mediation directed
by the Stay Order until at least December 31, 2019.

C.    **The Rule 2004 Motions**

14.    Less than five hours after the Court entered the Stay Extension Order, Ambac filed
the Rule 2004 Motions.  Although the Rule 2004 Motions make separate requests for documents

and information, they both explicitly seek discovery for the purpose of evaluating the Commonwealth Plan and Disclosure Statement, as well as discovery targeted at currently stayed adversary proceedings or contested matters and matters relating to PBA.  As explained below, not only are the Rule 2004 Motions barred by the Stay Extension Order, they are improper on their faces because Rule 2004 discovery is not allowed in respect of identified contested matters such as objections to a proposed disclosure statement and plan of adjustment.

15.     First, the Cash Rule 2004 Motion seeks permission to take discovery relating to the Commonwealth's cash balances and the Oversight Board's analysis of what cash is restricted and unrestricted.  Cash Rule 2004 Motion ¶ 2.  Ambac's stated purpose in seeking this discovery is "to assess the Oversight Board's analysis of what monies are potentially available to repay creditors of the Commonwealth and its instrumentalities."  *Id.*  More particularly, the Cash Rule 2004 Motion states that the discovery it requests "is essential to enable Ambac to meaningfully participate in the process of advancing [the Commonwealth Title III case] towards successful plans of adjustment" because "Ambac . . . cannot evaluate the Plan without complete transparency into the Commonwealth's financial condition, which includes transparency into the actual amount of cash available for debt service."  *Id.* ¶ 3.

16.     Ambac seeks permission in the Cash Rule 2004 Motion to, among other things, take discovery concerning the following:

- An October 2, 2019 presentation made by the Oversight Board to the mediation team and other creditors (as defined in the Cash Rule 2004 Motion, the "Cash Restriction Analysis") in connection with the ongoing mediation (*id.*, Attachment 1, Request Nos. 1, 6-7, 24, 32, 38, 40-42, 47-48);

- Rum taxes issued pursuant to 3 L.P.R.A. §§ 7652(a)(3) and 1914, and other hotel taxes, excise taxes, toll revenues and vehicle fees imposed by the Commonwealth (collectively, the "clawback revenues") (*id.*, Attachment 1, Requests No. 29-31);

- Funds held by the Puerto Rico Infrastructure Financing Authority ("PRIFA"), the Puerto Rico Highway and Transportation Authority ("HTA"), and the Puerto Rico

Convention Center District Authority ("CCDA") (*id.*, Attachment 1, Requests No. 32-33); and

- The Commonwealth's use of cash for "essential services" (*id.*, Attachment 1, Request No. 55).

17.    The very categories identified by Ambac show Ambac is attempting to take discovery in respect of known contested matters without invoking conventional discovery rules, but rather under the general umbrella of Rule 2004.  Courts routinely hold that tactic is improper.

18.    The Commonwealth Asset Rule 2004 Motion is similarly direct in its goal of obtaining discovery relevant to confirmation of the Plan—although frankly, the proposed document requests in this second 2004 motion are spectacularly overbroad both in time and scope, and any compliance therewith (if ordered) would require herculean effort.  To this end, Ambac seeks information relating to all assets held by the Commonwealth, including "the identity and value of any property interests held by the Commonwealth and its instrumentalities, any sale, alienation, and/or encumbrances of those interests, and the flow of funds resulting from any sale, alienation, and/or encumbrances of those interests."  Commonwealth Assets Rule 2004 Motion ¶ 13.  It does so "to understand the full range of Commonwealth assets available to repay creditors of the Commonwealth and its instrumentalities," *id.* ¶ 2, because "Ambac . . . cannot evaluate the Plan without complete transparency into the Commonwealth's financial condition, which includes transparency into the actual assets that make up the Commonwealth's estate and the ability to monetize these assets," *id.* ¶ 3.  Furthermore, Ambac claims that "the discovery of this information is essential to enable Ambac to meaningfully participate in the process of advancing the Title III cases towards successful plans of adjustment."  *Id.*

19.    Ambac specifically requests in the Commonwealth Asset Rule 2004 Motion to take discovery on topics including the following:

- Property interests held, alienated, and encumbered by the Commonwealth, and any revenues, proceeds, or value of such property interests [for the past 5 years] (*id.*, Attachment 1, Requests 1-8);

- The sale of properties by HTA (*id.*, Attachment 1, Requests No. 9-15); and

- The identity, valuation, price assessment, proceeds, and restraints on alienation or encumbrance on any property interests held by CCDA (*id.*, Attachment 1, Requests No. 18-23).

20.     Thus, unlike prior motions filed under Bankruptcy Rule 2004 by Ambac and other parties prior to the entry of the stay,[5] the Rule 2004 Motions explicitly and directly seek plan-related discovery.  *See, e.g.*, Cash Rule 2004 Motion ¶ 5 ("The need to obtain information necessary to understand the Commonwealth's cash position is even more pressing now, in light of the filing of the Commonwealth's Plan and Disclosure Statement.").  The Rule 2004 Motions also seek an order allowing Ambac to obtain testimony in order to obtain or elaborate upon the requested information.  *Id.*, Proposed Order ¶ 4; Commonwealth Asset Rule 2004 Motion, Proposed Order ¶ 4.  By seeking this information (documents and testimony), the Rule 2004 Motions fly in the face of the Stay Order by seeking exactly the type of information that is currently in the hands of the Mediation Team.  This is inexcusable conduct, especially given Ambac's ongoing participation in the mediation process.  Even beyond the direct violation of the Stay Order and the Stay Extension Order, nothing could be more distracting from the mediation process (being directed by the Mediation Team) than the need to respond to (i) blockbuster discovery, (ii) potential motion practice on same, (iii) the potential of collecting, reviewing and producing documents, and preparing and producing testifying witnesses, much of which would occur during the period in which the stay is in effect.  To add insult to injury, as described below, Ambac's Rule 2004

---

[5]     *See, e.g.*, *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Pension Liabilities* [ECF No. 7507] ("Pension Rule 2004 Motion").  Cross-Movants and Ambac are currently working to resolve the Pension Rule 2004 Motion, notwithstanding the stay.

Motions demand an opposition **before** even the mediator report is due, and a hearing on the merits weeks before the stay expires.

21.     Due to Ambac's blatant disregard of the Stay Order and the Stay Extension Order by filing the Rule 2004 Motions, Cross-Movants reached out to Ambac and requested it withdraw the Rule 2004 Motions on multiple occasions.  In particular, counsel for the Oversight Board asked counsel for Ambac to withdraw the Rule 2004 Motions by telephone on October 29, 2019, 1 day after their filing, and again by letter on November 1, 2019.[6]  Counsel for Ambac refused the telephonic requests to withdraw the Rule 2004 Motions and did not respond to the Oversight Board's November 1 letter.

### Jurisdiction and Venue

22.     The United States District Court for the District of Puerto Rico (the "Court") has subject-matter jurisdiction over this matter pursuant to PROMESA § 306(a).

23.     Venue is proper pursuant to PROMESA § 307(a).

### Relief Requested

24.     Cross-Movants request entry of an order, substantially similar to the proposed order attached as Exhibit A to this Motion, striking the Rule 2004 Motions because they violate the Stay Order and entering sanctions against Ambac for such violation.

### Basis for Relief

25.     The Rule 2004 Motions should be stricken and, because Ambac's conduct in filing the Rule 2004 Motions and ignoring two warnings was clearly in bad faith, Ambac should be sanctioned as a result.

---

[6]   A copy of this letter is attached as Exhibit 1 to the accompanying declaration of Julia D. Alonzo, dated November 8, 2019.

26.     Discovery motions brought under Bankruptcy Rule 2004 are subject to limitations. In particular, they are not permitted when their purpose is to abuse and harass the debtor, *see In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass. 2011), or to circumvent other applicable discovery rules, *In re Sunedison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017).  Pursuant to § 105(a) of the Bankruptcy Code (made applicable here by PROMESA § 301(a)), a bankruptcy court may issue any order that is necessary or appropriate to, *inter alia*, "enforce or implement court orders or rules."  11. U.S.C. § 105(a); *see also Gibbons v. Haddad (In re Haddad)*, 68 B.R. 944, 948 (Bankr. D. Mass. 1987) (§ 105 invests a bankruptcy court with power to enforce its own orders). Yet in explicitly seeking discovery related to the Plan and the Disclosure Statement – including substantive disputed issues – while the stay is still in place, the Rule 2004 Motions violate the terms of the Stay Order, disrespect the authority granted to the Mediation Team Leader, and undermine the work of the Mediation Team and the parties.

27.     *First*, the Rule 2004 Motions directly contravene the express language and core purpose of the Stay Order.  The Stay Order was entered to "avoid piecemeal litigation . . . identify efficiently the issues that must be litigated . . . to achieve confirmation of a plan of adjustment . . . [and] prioritize such issues and develop efficient approaches to the resolution of such issues." Stay Order at 1.  By admittedly seeking leave to take discovery to evaluate the Disclosure Statement and Plan, Ambac, through the Rule 2004 Motions, seeks to usurp the authority this Court granted to the Mediation Team.  Furthermore, the Rule 2004 Motions undermine the work that the Mediation Team and the parties have done and will do to come to a consensual agreement regarding the processes and identification of issues necessary for plan confirmation.

28.     Indeed, Ambac itself has recognized the purpose of the stay – to allow the parties to focus on developing a pathway to address contested issues prior to confirmation – as Ambac

11

noted in a prior filing that it "understood and accepted the Court's determination to effect a pause and allow the mediation team to attempt to impose some kind of order on the resulting litigation chaos." *Objection and Reservation of Rights with Respect to (I) Urgent Joint Motion of Oversight Board and AAFAF for Order Extending (a) Stay Period, (b) Mandatory Mediation, and (c) Certain Deadlines Related Thereto* [ECF No. 9001] ¶ 4.  By seeking Disclosure Statement and Plan-related discovery now, many weeks before the stay expires, the Rule 2004 Motions perpetuate the very "litigation chaos" the Stay Order sought to avoid.  This attempted end-run around the Mediation Team's ongoing work, as provided by the Stay Order and the Stay Extension Order, should not be condoned.[7]

29.     *Second*, and also in direct violation of the Stay Order, the Rule 2004 Motions seek information relating to particular matters explicitly stayed by the Stay Order and/or identified in the Stay Order as issues for which the Mediation Team and the parties should work to develop procedures for resolution.  For example, the document requests appended to the Cash Rule 2004 Motion (the "Cash Requests") seek information relating to the Cash Restriction Analysis presentation given *during the mediation proceedings*.  Cash Rule 2004 Motion, Attachment 1, Requests 1, 6-7, 24, 32, 38, 40-42, 47-48.  The presentation and the cash analysis included therein are therefore plainly substantive topics the Mediation Team Leader believes are appropriate for inclusion in the mediation process as per the Stay Order.[8]  Stay Order ¶ B.

---

[7]   For this reason, the Rule 2004 Motions are distinct from other motions brought under Rule 2004 – including those brought by Ambac – that are continuing to proceed notwithstanding the stay, such as, for example, the Pension Rule 2004 Motion.  Those motions were filed prior to the entry of the Stay Order and involve discrete issues.  The Rule 2004 Motions, on the other hand, broadly request discovery with a sole aim of evaluating the Plan.  Thus, they are squarely within the scope of the Stay Order.

[8]   The itemized list of issues set forth in Paragraph B of the Stay Order is expressly non-exclusive, as the Stay Order authorizes the Mediation Team Leader to address "any other issues she believes appropriate."  *Id.* ¶ B.  Accordingly, while the stay is still in place, the Mediation Team Leader may determine that other topics for which the Rule 2004 Motions seek information are best suited for mediation.  The Cash Restriction Analysis is one such topic.  Thus, because all of the discovery sought in the Rule 2004 Motions may impinge on substantive topics

30.     In addition, the Cash Requests seek information relating to the Commonwealth's use of cash for "essential services" (Cash Rule 2004 Motion, Attachment 1, Request 55).  This too violates the Stay Order, which explicitly tasks the Mediation Team with the development of procedures concerning "identification and treatment of essential services under a plan of adjustment."  Stay Order ¶ B.7.  Similarly, the Cash Requests seek discovery regarding HTA, PRIFA and CCDA revenues (Cash Rule 2004 Motion, Attachment 1, Requests 29-31).  This also violates the Stay Order, as the "[v]alidity and impact of revenue clawbacks" is another item in the Stay Order's list of topics designated to the Mediation Team.  Stay Order ¶ B.4.

31.     The requests appended to the Commonwealth Asset Rule 2004 Motion (the "Asset Requests") also seek information directly covered by the Stay Order.  For example, the Asset Requests seek to take discovery relating to revenues earned from property held by HTA (Commonwealth Asset Rule 2004 Motion, Attachment 1, Requests 9-15) and CCDA (*id.*, Attachment 1, Requests 18-23).  These, too, directly contravene the Stay Order's designation of the "[v]alidity and impact of revenue clawbacks" to the Mediation Team, Stay Order ¶ B.4, and seeks information regarding litigation involving HTA that has been stayed, *see id.*, Appendix I (staying Adv. Proc. No. 19-363-LTS).

32.     Ambac is also compounding its attempted improper circumvention of Judge Swain's order dated June 13, 2019 (see paragraph 1 above) with another obvious violation of the Stay Order, namely its request for information related to PRIFA and the rum taxes in the Cash Rule 2004 Motion.  Like clawback revenues and essential services, "[i]ssues concerning rum taxes and PRIFA bonds" is one of the substantive topics the Stay Order explicitly directs to the

covered by mediation, as per the judgment of the Mediation Team Leader, none of the specific requests in either Rule 2004 Motion is proper at this time.

13

Mediation Team for purposes of determining procedures for its resolution. *Id.* ¶ B.2.  Additionally,

the Cash Requests seek information directly related to Ambac's PRIFA Stay Motion and PRIFA

Rule 2004 Motion, both of which are expressly stayed by the Stay Order. *Id.*, Appendix I at 1.  It

is hardly an accident that Ambac seeks discovery on these topics in the guise of the Cash Rule

2004 Motion; Ambac tried – and failed – to carve out PRIFA-related issues from the extension of

the stay. *See Supplemental Objection of Ambac Assurance Corporation and Financial Guaranty*

*Insurance Company to the Urgent Joint Motion of the oversight Board and AAFAF for Order*

*Extending (a) Stay Period, (b) Mandatory Mediation, and (c) Certain Deadlines Related Thereto*

[ECF No. 9004] ¶ 3.  The Court denied Ambac's request, opting instead to continue the stay of the

PRIFA Stay Motion and PRIFA Rule 2004 Motions.  *See* Stay Extension Order.  Ambac cannot

circumvent that explicit instruction from the Court by seeking information relating to these same

motions while the stay is in place.[9]

33.     By filing the Rule 2004 Motions while the stay remains in place, Ambac is, at best,

violating the explicit purpose of the stay.   At worst, Ambac has violated multiple separate

provisions of the Stay Order (and the Stay Extension Order), and threatens to distract and

potentially prevent the resolution of issues relating to the Disclosure Statement and Plan, while

also undermining the Mediation Team's effort to create a timeline for plan-related discovery.

Thus, the Court should strike the Rule 2004 Motions in their entirety.

---

[9]     Separate and apart from their violation of the Stay Order, the PRIFA-related requests also seek to circumvent the
Court's prior order limiting an initial hearing on PRIFA's Stay Relief Motion to threshold legal issues of "standing
and secured status only" based on "factual submissions limited to legal documents (statutes, agreements and the
like) relevant to the parties' standing and collateral security documents."   *Order Regarding Argument and
Discovery in Connection with Ambac Assurance Corporation's Motion Concerning Application of the Automatic
Stay* [ECF No. 7420], at 1.  Furthermore, the Court put off "[a]ny automatic stay motion-related discovery" until
the Court's decision on the legal issues argued on the PRIFA Stay Relief Motion.  *Id.* at 2.

34.    Finally, it is hornbook law that Rule 2004 discovery is not allowed when the discovery applies to known contested matters or adversary proceedings. *See, e.g.*, *In re Orion Healthcorp, Inc.*, 596 B.R. 228, 236 (Bankr. E.D.N.Y. 2019) (denying Rule 2004 discovery because "party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee"); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016) ("Rule 2004 was not intended to provide private litigants . . . with 'a strategic advantage in fishing for potential private litigation.'") (citing *In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass. 1981)); *In re Snyder*, 52 F.3d 1067, *2 (5th Cir. 1995) ("[U]se of Rule 2004 discovery to circumvent discovery limitations . . . is an abuse of Rule 2004."). The reasons for this rule are compelling. As Ambac well knows, Rule 2004 discovery does not have to be served on other parties to the litigation and is unbounded by the discovery rules in the Federal Rules of Civil Procedure (Rules 26-35) and the Bankruptcy Rules. The parameters of Rule 2004 discovery are different than the boundaries in Federal Rule of Civil Procedure 26. *See In re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002) (Rule 2004 discovery cannot be used as a "back door through which [movants] could avoid using the Federal Rules of Civil Procedure."). Similarly, the use of the discovery is different. Under no circumstances should Ambac be allowed to evade the discovery rules by propounding improper Rule 2004 motions.

35.    At the very least, and as an alternative to striking the Rule 2004 Motions, the time for Cross-Movants to respond to both should be stayed pending expiration of the stay, with Cross-Movants' responses to the Rule 2004 Motions scheduled for 30 days following expiration of the stay on December 31, 2019.

## **Request for Sanctions**

36.     Due to Ambac's flagrant violation of this Court's orders, it is subject to sanctions. Courts – including bankruptcy courts – may exercise their inherent authority to levy sanctions for, *inter alia*, "failures to comply with their orders and to "prevent[] the disruption of ongoing proceedings" *In re Charbono*, 790 F.3d 80, 86-87 (1st Cir. 2015).

37.     For all of the reasons stated above, Ambac's filing of the Rule 2004 Motions not only violated Judge Swain's order dated June 13, 2019 and the Stay Order (and the Stay Extension Order), but also has distracted, and will continue to distract, the parties from the ongoing mediation proceedings.  Furthermore, although a finding of bad faith is not required to issue sanctions pursuant to a bankruptcy court's inherent authority, *In re Ashley*, 539 B.R. 198, 203 (Bankr. D.N.H. 2015), filing the Rule 2004 Motions mere hours after the Court extended the stay and refusing to engage with Cross-Movants regarding their withdrawal is powerful evidence of Ambac's bad faith here.  *Pan Am. Grain Mfg. Co. v. P.R. Ports Auth.*, 193 F.R.D. 26, 31 (D.P.R. 2000).  Ambac's bad faith is further evidenced by its proposed schedule for responses to the Rule 2004 Motions; Cross-Movants' responses are due on November 26, 2019, the day before the Mediation Team Leader's report is due pursuant to the Stay Extension Order, and Ambac's proposed hearing date on the Cash Rule 2004 Motion is weeks before the stay expires.  This is a clear attempt to have plan-discovery issues plainly covered by the stay heard while the stay is still in place.

38.     Accordingly, Ambac should be sanctioned due to its inexcusable conduct and should be required to pay all fees incurred by Cross-Movants related to responding to the Rule 2004 Motions including but not limited to preparing this Motion to Strike.

## **No Prior Request**

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

16

### Certification

40.     Pursuant to Local Rule 9013-1, paragraph 1.H of the Case Management Procedures, and paragraph 1(c) of the Court's July 16, 2019 Standing Order, Cross-Movants hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent motion, (b) not created the urgency through a lack of due diligence, and (c) made reasonable, good faith communications in an effort to resolve or narrow the issues being brought to the Court.

### Conclusion

WHEREFORE Cross-Movants respectfully request the Court enter the Proposed Order attached as Exhibit A, granting the relief requested herein and all other relief as is just and proper.

*[Remainder of page intentionally left blank]*

Dated: November 8, 2019
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave., Suite 500
San Juan, Puerto Rico 00918
Tel: 787-705-2171
Fax: 787-936-7494
Email:  lmarini@mpmlawpr.com
Email:  cvelaz@mpmlawpr.com

*/s/ Peter Friedman*
John J. Rapisardi
Suzzanne Uhland
(admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

Peter Friedman
(admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García Benítez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
Email: carla.garcia@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Michael T. Mervis (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
Email: sratner@proskauer.com
Email: tmungovan@proskauer
Email: mmervis@proskauer.com

*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative of the Commonwealth of Puerto
Rico*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
