**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                Debtor. | PROMESA<br>Title III<br><br><br>Case No. 17 BK 4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, and PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>             Movants,<br>       v.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *et al.*<br><br>           Respondents. | |

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
GOVERNMENT PARTIES' MOTION *IN LIMINE* TO EXCLUDE EXPERT REPORT
<u>SUBMITTED IN CONNECTION WITH PREPA BONDS 9019 MOTION HEARING</u>**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "<u>Committee</u>")[2] hereby submits this

objection (the "<u>Objection</u>") to the Government Parties'[3] *Urgent Motion for an Order In Limine*

*Precluding the Official Committee of Unsecured Creditors from Entering Expert Report Into*

*Evidence at the 9019 Motion Hearing* [Docket No. 1725] (the "<u>Motion to Exclude</u>").  In support

of this Objection, the Committee respectfully states as follows.

## <u>PRELIMINARY STATEMENT</u>

1.      The Motion to Exclude is yet another effort by the Government Parties to have the

Court consider only one side of an argument.  In their supplemental memorandum and related

declarations in support of the 9019 Motion, the Government Parties ask the Court to approve the

Proposed Settlement for certain specific reasons, including that it allegedly:

(i)      will "[a]void[] the prospect of PREPA re-entering Title III in the future,"[4] and

(ii)      "only affects the claims of PREPA bondholders that join the deal (*i.e.*,

Supporting Holders), not any other creditors."[5]

2.      The Committee's expert report (the "<u>LEI Report</u>") addresses precisely these

assertions.  Specifically, the LEI Report contains a detailed analysis, based on information

submitted by the Government Parties in their declarations and produced by them in discovery,

---

[2]      The Committee is the official committee of unsecured creditors for all title III Debtors, other than PBA and
COFINA.

[3]      Capitalized terms used but not defined herein shall have the meanings given to them in the Motion to
Exclude (as defined below).

[4]      Declaration of Natalie Jaresko [Docket No. 1428] ¶ 18; *see also id.* ¶¶ 14, 23, 27; *see also* Declaration of
David Brownstein [Docket No. 1426] ¶¶ 27, 56; Declaration of Christian Sobrino [Docket No. 1429] ¶ 22.

[5]      *Supplemental Memorandum of Law and Facts in Support of 9019 Motion* [Docket No. 1425] ¶ 103.

showing why it is ***not true*** that the Proposed Settlement will help PREPA avoid a subsequent title III filing or that it will leave non-settling creditors unaffected.

3.  In this way, the LEI Report is directly relevant to the so-called "*Jeffrey*" analysis that the Court has indicated it will apply to the 9019 Motion.  First, by responding to the Government Parties' assertion that the Proposed Settlement benefits PREPA by avoiding a future title III filing, the LEI Report addresses the alleged value of the Proposed Settlement to PREPA, which is the overriding consideration of the Court's analysis under *Jeffrey*.  Second, by responding to the Government Parties' assertion that non-settling creditors will not be affected by the Proposed Settlement, the LEI report directly addresses the fourth *Jeffrey* factor, which looks at the effect of the Proposed Settlement on the paramount interests of creditors.

4.  The Committee is well aware of this Court's prior rulings setting forth its view that the scope of the 9019 Hearing is limited.  The Committee submits, however, that these rulings are not controlling here—either because they dealt with discovery issues and not evidentiary issues or because they dealt with evidence of a fundamentally different nature—and that the LEI Report properly falls within the scope of the hearing.

5.  Finally, contrary to the Government Parties' assertions, consideration of the LEI Report will not complicate or delay this litigation.  Only one other party has submitted an expert report; there is thus plenty of time for discovery on expert reports and any rebuttal reports in accordance with the current litigation schedule.  The Motion to Exclude should be denied.

## <u>ARGUMENT</u>

## I.   <u>LEI Report is Relevant and Admissible to Evaluate 9019 Motion Under *Jeffrey* Standard That Court Has Indicated it Will Apply to 9019 Motion</u>

6.  The Government Parties recite the factors set forth in *Jeffrey v. Desmond*, 70 F.3d 183 (1st Cir. 1995), as controlling the scope of the 9019 Hearing and contend that the purported

"macroeconomic issues" contained in the LEI Report do not relate to these factors, thus rendering the LEI Report inadmissible. This argument misconstrues the nature of the analysis set forth in the LEI Report and should be rejected.

7.      As noted above, the purpose of the LEI Report is to respond to the assertions of the Government Parties in support of the 9019 Motion, including that the Proposed Settlement should be approved because it will help PREPA avoid a future title III filing and will not affect non-settling creditors. In furtherance of this purpose, the LEI Report explains through detailed analysis that PREPA, based on currently available information, does not have the ability to increase its electricity rates to provide recoveries to non-settling creditors[6] and, indeed, may very well end up filing a subsequent title III case in the future if current projections hold true. The report also shows that PREPA cannot meet its future operational costs without increasing rates, which is contrary to the Government Parties' argument in the 9019 Motion that unrestrained rate increases will be avoided. All of these points are central to the *Jeffrey* analysis.

8.      First, the issues of whether or not PREPA will in fact avoid a future title III filing and whether or not it can avoid future rate increases go to the very heart of the *Jeffrey* analysis, as the Government Parties argue that these issues are key components of the value PREPA will receive under the Proposed Settlement. *See, e.g.*, Jaresko Declaration ¶¶ 13, 14, 18, 19, 22, 23, 25-27, 38.[7] It is axiomatic that a bankruptcy court cannot evaluate a settlement under *Jeffrey* or otherwise without understanding the value of the settlement to the debtor. *See Jeffrey*, 70 F.3d at 185 (bankruptcy court must "assess and balance the value of the claim that is being compromised

---

[6]      Nor can PREPA generate such recoveries from the sale of its generation assets.

[7]      *See also* Declaration of David Brownstein [Docket No. 1426] ¶¶ 27, 31, 32, 41, 43, 56; Declaration of Christian Sobrino [Docket No. 1429] ¶ 22; *Supplemental Memorandum of Law and Facts in Support of 9019 Motion* [Docket No. 1425] ¶¶ 7, 17, 22-24, 30, 38, 40, 41, 58, 63, 80.

against the value to the estate of the acceptance of the compromise proposal") (quoting *In re
GHR Cos.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985)).[8]

9.      Second, whether or not the Proposed Settlement will affect non-settling creditors
is central to the fourth *Jeffrey* factor, which asks whether the settlement is consistent with the
paramount interests of the creditors.  *See* Motion to Exclude at 4 (citing *Jeffrey*, 70 F.3d at 185).
On this issue, the LEI Report concludes that, contrary to the Government Parties' assertions in
support of the 9019 Motion, upon entering into the Proposed Settlement, PREPA will have no
material assets or revenue-generating capacity that it can use to provide a recovery for non-
settling creditors, and, thus, the Proposed Settlement does not leave such creditors unaffected.
As discussed in the Committee's objection to the 9019 Motion, if the Court accepts this
conclusion, the Proposed Settlement should not be approved under *Jeffrey*.[9]

## II.    Court's Prior Statements and Rulings Do Not Support Exclusion of LEI Report

10.     The Committee acknowledges the Court's prior instructions (as detailed in the
Motion to Exclude) that evidence and argument at the 9019 Hearing should be "focused tightly"
on the range of reasonableness analysis applicable under *Jeffrey* and should not get into issues
that go "only" to the confirmability of a plan and matters requiring further action by Puerto

---

[8]      The Government Parties contend that evidence as to the likelihood of a future title III filing goes solely to
whether an eventual PREPA title III plan of adjustment is feasible.  As explained, the Government Parties have
affirmatively argued that the Proposed Settlement should be approved because it will avoid a future title III filing and,
similarly, because it will facilitate confirmation of a title III plan of adjustment.  Thus, regardless of whether the
arguments contained in the LEI Report are relevant to plan confirmation, they are plainly also relevant to responding
to these arguments made in connection with the 9019 Motion.

[9]      In addition to the foregoing, the LEI Report also rebuts the Government Parties' argument in their
supplemental memorandum and declarations that the Proposed Settlement will facilitate plan confirmation by
demonstrating that any plan incorporating the Proposed Settlement is not confirmable because it is not feasible.  The
Committee believes that the LEI Report's analysis on this point is relevant under *Jeffrey* to the extent the
Government Parties use the facilitation of plan confirmation as further evidence of the value that the Proposed
Settlement brings to PREPA.  Nevertheless, as discussed below, the Committee is aware of this Court's prior ruling
that it does not intend to consider the feasibility of a future plan of adjustment at the 9019 Hearing.  The Committee
disagrees with but respects this ruling.

Rico's government officials.  *See* Motion to Exclude at 5 (quoting July 11 Hr'g Tr. 13:11-14:1).

The Court has also recognized, however, that evidence responding to the Government Parties'

proffers in support of the 9019 Motion "of course" must be considered by the Court.  *See* July 11

Hr'g Tr. 32:18-20 ("It's [the Government Parties'] burden, and if you have grounds for attacking

their proffer in support of their burden, of course you can explore that.").

11.     Because the LEI Report responds to the Government Parties' factual proffers in

their declarations, which they contend the Court must consider in evaluating the settlement under

*Jeffrey,* the LEI Report is admissible at the 9019 Hearing consistent with the Court's comments

at the July 11 Status Conference.  The Court's subsequent rulings on motions *in limine* and

discovery issues do not change this result.

12.     The Government Parties cite to the Court's decisions excluding certain evidence

offered by non-profit groups and UTIER and SREAEE and the declaration of Dr. Wolfe as

support for the exclusion of the LEI Report.  These decisions, however, dealt with altogether

different evidence and issues.  Specifically, the non-profit groups, UTIER, and SREAEE sought

to introduce evidence relating to future impacts of the RSA on PREPA's economy in general, on

workers and retirees, and on solar energy development in Puerto Rico.  Here, the LEI Report is

designed to address specific assertions in the Government Parties' declarations, which, as

discussed above, go directly to the *Jeffrey* factors.  The Wolfe Declaration that the Committee

sought to introduce into evidence is similarly distinguishable insofar as it dealt solely with the

issue of whether, in the abstract, PREPA's rates could reach a threshold level that would be

unsustainable by PREPA.  The Wolfe Declaration, unlike the LEI Report, does not respond

directly to the particular arguments, assertions, and evidence submitted by the Government

Parties in support of the 9019 Motion.[10]

13.     The Government Parties also cite the Court's October 10, 2019 ruling on the

Committee's objection to certain discovery rulings as support for the Motion to Exclude.  But

this decision by its very nature dealt with whether the Committee was entitled to *discovery* on

certain issues and thus has no relevance to whether any particular *evidence* is admissible at the

9019 Hearing.  [*See* Docket No. 1652] ("Oct. 10, 2019 Order") (stating that Court is not

"persuaded that *additional discovery is needed* to enable the Committee to respond to proffers in

the Declarations regarding the effect the settlement may have on creditors and the validity of the

other purported rationales for the settlement") (emphasis added).  As far as the admissibility of

evidence is concerned, it is important to note that one of the primary sources for the analysis in

the LEI Report is PREPA's June 2019 fiscal plan, which the Government Parties have attached

as an exhibit to Natalie Jaresko's declaration.  It is difficult to understand how the fiscal plan

should be admissible at the 9019 Hearing, as the Government Parties appear to contend, while

the LEI Report's analysis based on that plan is not admissible.

14.     Although not discussed by the Government Parties, the Court also issued a ruling

on October 10, 2019 in response to the Committee's motion *in limine* asking that certain aspects

of the Government Parties' declarations be stricken from the record.  If anything, this ruling

supports the admissibility of the LEI Report, as the Court declined to strike the assertions in the

---

[10]     In excluding the Wolfe Declaration, the Court found that "any probative value of the Wolfe Declaration in
connection with the 9019 Motion is substantially outweighed by the prospect of multiplication of the 9019 Motion
proceedings through discovery and evidence concerning changes since July 2017 in the economic factors and
projections underlying the opinion in the Wolfe Declaration and the effect of such changes on the relevance and
significance of that opinion."  Docket No. 1543, at 5.  No similar concern exists here, as the LEI Report is based on
the latest projections of the Government Parties set forth in the 2019 fiscal plan and other current information.

Government Parties' submissions to which the LEI Report responds.[11]  For example, the Court

held it would not strike statements relating to the likelihood of PREPA reentering title III

because such statements go to "the goals motivating the Government Parties" to entering into the

settlement.  Oct. 10, 2019 Order at 17.  If the Court is planning to consider these purported

motivating goals in analyzing the Proposed Settlement, it should also consider whether such

goals have any reasonable basis.  The LEI Report shows that they do not.

## CONCLUSION

15.     For all the foregoing reasons, the Committee respectfully requests that the Motion

be denied.

*[Remainder of Page Intentionally Left Blank]*

---

[11]     To be clear, the Committee respectfully disagrees with and reserves all rights with respect to the Court's October 10, 2019 decision and other prior rulings discussed herein, including its decision rejecting consideration of the Wolf Declaration.

Dated: November 14, 2019

/s/ Luc A. Despins                          .
PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and –

/s/ Juan J. Casillas Ayala                
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

8