**Hearing Date: December 11, 2019 at 9:30 a.m. AST**
**Response Deadline: November 26, 2019 at 4:00 p.m. AST**
**Reply Deadline: December 3, 2019 at 4:00 p.m. AST**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

---

| | |
|---|---|
| In re | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | Case No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et. al., | (Jointly Administered) |
| DEBTORS. | |

---

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DUFF & PHELPS, LLC MOTION FOR SUMMARY JUDGMENT UNDER FED.R. BANKR. 7056

| | |
|---|---|
| **SCHULTE ROTH & ZABEL LLP** | **ANTONETTI MONTALVO & RAMIREZ COLL** |
| *Attorneys for Duff & Phelps, LLC* | *Attorneys for Duff & Phelps, LLC* |
| 919 Third Avenue | P.O. Box 13128 |
| New York, New York  10022 | San Juan, PR 00908 |
| Tel:  (212) 756-2150 | Tel:  (787) 997-0303 |
| Fax:  (212) 593-5955 | Fax:  (787) 997-0323 |
| MICHAEL L. COOK | JOSE L. RAMIREZ-COLL |
| (Admitted Pro Hac Vice) | USDC-PR No. 221702 |
| michael.cook@srz.com | jramirez@amrclaw.com |

## Table of Contents

        **Page**

Preliminary Statement..................................................................................................................2

Facts ...........................................................................................................................................3

I.     D&P IS ENTITLED TO SUMMARY JUDGMENT................................................................3

II.    THE ENGAGEMENT LETTER IS AN ENFORCEABLE AGREEMENT .........................5

III.   D&P's SERVICES WERE REASONABLE AND NECESSARY.......................................6

      A.     The D&P Fees Were Reasonable..............................................................................7

      B.     The Board Needed D&P's Services ........................................................................8

CONCLUSION............................................................................................................................8

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                   **Page(s)**

In re Ames Dept. Stores, Inc.,
    76 F.3d 66 (2d Cir. 1996) ..................................................................................................8

Hopgood v. Merrill Lynch, Pierce, Fenner & Smith,
    839 F. Supp. 98 (D.P.R. 1993) ..........................................................................................5

Lind-Hernández v. Hosp. Episcopal San Lucas Guayama,
    898 F.3d 99 (1st Cir. 2018) ................................................................................................5

Lopez & Medina Corp. v. Marsh USA, Inc.,
    667 F.3d 58 (1st Cir. 2012) ................................................................................................5

Perez-Cordero v. Wal-Mart P.R., Inc.,
    656 F.3d 19 (1st Cir. 2011) ................................................................................................4

Tang v. Citizens Bank, N.A.,
    821 F.3d 206 (1st Cir. 2016) ..............................................................................................4

Tobin v. Fed Express Corp.,
    775 F.3d 448 (1st Cir. 2014) ..............................................................................................4

UBS Fin. Servs., Inc. of Puerto Rico v. XL Specialty Ins. Co.,
    929 F.3d 11 (1st Cir. 2019) ................................................................................................5

Wynne v. Tufts Univ. Sch. Of Med.,
    976 F.2d 791 (1st Cir. 1992) ..............................................................................................4

In re Xebec,
    147 B.R. 518 (9th Cir. BAP 1992) ....................................................................................8

**Statutes and Rules**

3 Collier on Bankruptcy ¶ 330.03[1][b] (16th ed. 2015) ..................................................................8

11 U.S.C. §330(a) ........................................................................................................................1, 6

Fed. R. Bankr. P. 7056 ................................................................................................................1, 3

Fed. R. Civ. P. 56(a) ........................................................................................................................3

P.R. Civil Code Article 1233 ..........................................................................................................5

P.R. Laws Ann. tit. 31, § 3471) ......................................................................................................5

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

---------------------------------------------------------------x
:
In re :
:
THE FINANCIAL OVERSIGHT AND :
MANAGEMENT BOARD FOR : PROMESA
PUERTO RICO, : Title III
:
 as representative of : Case No. 17 BK 3283-LTS
:
THE COMMONWEALTH OF PUERTO RICO, : (Jointly Administered)
et. al., :
:
 DEBTORS.[1] :
:
---------------------------------------------------------------x

### MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER FED.R. BANKR. P. 7056

Duff & Phelps, LLC ("D&P") submits this motion and memorandum of law in support of its motion under Fed.R. Bankr. P. 7056(a) for partial summary judgment.[2] D&P seeks a finding, as a matter of law, that D&P is contractually entitled to the so-called "Project Management" fees totaling $1,777,891 in its amended first interim application ("Application") for allowance of compensation covering the period November 1, 2018 through January 31, 2019 ("Application Period"), subject only to the Court's later review under Bankruptcy Code §330(a) (reasonable compensation for actual and necessary services). The Fee Examiner has disputed at

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Fed. R. Bankr. P.9014(c) makes Rule 7056 applicable to this contested matter.

least $461,501.50 of these "Project Management" fees. Doc. No. 8862, at 2, 6. A finding by the Court on this narrow legal issue, based on the terms of the amended "Engagement Letter" between the Financial Oversight Management Board for Puerto Rico ("the Board" or "FOMB") and D&P, would dispose of a key issue here: the Board's authorizing D&P to increase its weekly fees by $50,000 over the previous weekly average fees of $86,413, based on actual work at the agreed upon rates.

Preliminary Statement

D&P filed its amended fee application on August 13, 2019. Between July, 2019 and October, 2019, D&P and the Fee Examiner negotiated reductions of D&P's fees and claimed expenses. D&P provided the Fee Examiner with supporting documentation, when available, through the middle of October, 2019, making substantial economic concessions. Negotiations between the parties broke down in October when the Fee Examiner disputed for the first time D&P's reading of the Engagement Letter on which D&P had relied in performing services for the Board.

D&P acknowledges the Court's independent duty to review the Application and the applicable standards for reasonable professional compensation. D&P also acknowledges the Court's review of the necessity for and reasonableness of D&P's services.

The parties have already submitted a joint status report (Doc. No. 9160) in response to the Court's order of October 25, 2019 (Doc. No. 9008) setting forth their agreed upon procedure for resolving this dispute either by negotiation or by trial. Nevertheless, the narrow issue on this motion is purely legal: the interpretation of the agreement between the Board and D&P. The Court's determination of this contractual issue will, at the very least, streamline, if not facilitate, the parties' negotiations. If negotiations fail, an early ruling on the issue will expedite the later trial.

2

Facts

D&P began work for the Board after the parties signed their Engagement Letter on January 31, 2018. See "Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment under Fed. R. Bankr. P. 7056(a) ("SUMF") at ¶3 (citing Affidavit of James Feltman, sworn to November 11, 2019 ("Feltman Aff.") ¶3, at 2-3). For the period January 31 through October 31, 2018 (the "Pre-Application Period"), D&P billed the Board for its services and expenses on a monthly basis. Id. It received a total of $919,210.09 in fees for this period. Id. During the month of October, 2018, D&P's fees totaled $345,653, or roughly $86,413 per week. Id. During the Pre-Application period, the Board closely monitored D&P's activities, performance and its monthly bills. SUMF at ¶4 (citing Feltman Aff. ¶4, at 3). The Board never challenged or disputed the quality of D&P's services, the amount of its expenses or the amount of its bills. In fact, the Board promptly paid each and every D&P bill during this period. Id.

The Court and other professionals in this case formulated a fee application procedure during the fall of 2018, requiring professionals, such as D&P, who sought compensation from the debtor's estates to file fee applications with the Court. During the Application Period, the Board authorized payment of the amounts billed by D&P for its fees and reimbursement of D&P's expenses subject to court-imposed holdbacks, certain fees and estimated taxes. SUMF at ¶6 (citing Feltman Aff. ¶6, at 4). In fact, the Board approved in writing all of D&P's Application Fees and Expenses. Id. (citing Feltman Aff., Exhibits 1, 2 and 3).

I.

D&P IS ENTITLED TO SUMMARY JUDGMENT

A court will grant summary judgment under Fed.R. Bankr. P. 7056, which incorporates Fed.R. Civ. P. 56(a), when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Summary judgment is intended

3

to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed Express Corp., 775 F.3d 448, 450 (1st Cir. 2014), quoting Wynne v. Tufts Univ. Sch. Of Med., 976 F.2d 791, 794 (1st Cir. 1992). "An issue is genuine if it can be resolved in favor of either party, and a fact is material if it has the potential of affecting the outcome of the case." Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016), quoting Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011).

The only dispute on this motion is the Fee Examiner's misreading of the Engagement Letter that would restrict the amount of fees earned by D&P. According to the Fee Examiner, the language of the Engagement Letter restricts D&P to $50,000 per week during the Application Period. But such restrictive language appears in the Engagement Letter. The relevant language demolishes the Fee Examiner's assertion: after charging D&P with additional duties, the Board states that D&P would be entitled to "incremental fees [of] $50,000 per week effective November 5 through [March 12, 2019], provided that billing would be based on actual hours worked in accordance with the rates" originally agreed upon by the Board and D&P. Doc. No. 886-1, at 102 (emphasis added). According to the Board, the additional work by D&P "will supplement but not replace . . . those enumerated responsibilities D&P currently has . . . . " Doc. No. 8866-1, at 102. The quoted language here is from the third amendment of the Engagement Letter on December 11, 2018. Under the second amendment to the Engagement Letter, D&P had been billing the Board for its services at the average weekly rate of $86,413 during October, 2018. See SUMF at ¶3 (citing Feltman Aff., ¶3).

There is no triable issue of fact here. The only parties with knowledge of the facts -- the Board and D&P -- agree on the interpretation of the Engagement Letter. The Fee Examiner has no personal knowledge of the underlying facts. The Board also approved in writing all of D&P's

4

Application Period Fees and expenses. See SUMF at ¶ 6 (citing Feltman Aff. ¶6, at 4 attaching Exhibits 1, 2, and 3 (the Board's written approval)). That approval confirms the parties' understanding of their undisputed agreement.

The D&P Report, reviewed and approved by the Board before its release on March 12, 2019, further confirmed the parties' agreement. It specifically noted the Board's "modification of D&P's fee estimate to take into account incremental responsibilities." See SUMF at ¶12 (citing Feltman Aff. ¶12, at 7, quoting the Report). Doc. No. 8866-1, Exh. 1, at 14.

II.

## THE ENGAGEMENT LETTER IS AN ENFORCEABLE AGREEMENT

The Engagement Letter signed by the Board and D&P was an enforceable contract. It stated which party was to perform services; which party had payment obligations; and the term of the Agreement. UBS Fin. Servs., Inc. of Puerto Rico v. XL Specialty Ins. Co., 929 F.3d 11, 20 (1st Cir. 2019) (when "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."). Lind-Hernández v. Hosp. Episcopal San Lucas Guayama, 898 F.3d 99, 104 (1st Cir. 2018) (citing 31 P.R. Laws Ann. § 3471); López & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 64 (1st Cir. 2012) (Article 1233 of the Puerto Rico Civil Code provides that "when the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.") (quoting 31 P.R. Laws Ann. § 3471) (internal quotation marks omitted). "For Article 1233 purposes, a term is considered 'clear' when it is sufficiently lucid to be understood to have one particular meaning, without room for doubt." Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F. Supp. 98, 104 (D.P.R. 1993), aff'd, 36 F.3d 1089 (1st Cir. 1994).

5

No party ever challenged the enforceability of the Engagement Letter. The Fee Examiner has only challenged the meaning of the Engagement Letter's terms, asserting that D&P's Project Management fees were limited to $50,000 per week.

The Third Amendment to the Engagement Letter, dated December 11, 2018, specifically asked D&P to assume the role of Project Manager, noting that this role "will supplement but not replace, those enumerated responsibilities D&P currently has.…" Doc. No. 8866-1, at 101. The Board acknowledged that D&P's "Work-Product" was essential to "creditor negotiations." As "Project Manager," D&P was required to have a "continuing physical presence in San Juan; provide direct supervision to … client review and data entry staff"; "provide direct assistance by performing … review functions…."; "coordinate Project Management Activities with … [Board] Staff…." The Board imposed on D&P the "responsibility to initiate, manage and download … Financial Institutional Letters" and "provide weekly project status updates to" the Board, while providing other forms of services "as requested…." For these "requested" additional services, D&P would be entitled to "incremental fees [of] $50,000 per week effective … November 5 through [March 12, 2019], provided that billing will be based on actual hours worked in accordance with the rates" originally agreed upon. Doc. No. 8866-1, at 102. Prior to the time of the Third Amendment to the Engagement Letter on December 11, 2018, D&P had been billing the Board for its services at the average weekly rate of $86,413 during the period covered by the Engagement Letter's Second Amendment. See SUMF at ¶3 (citing Feltman Aff. ¶3).

III.

D&P's SERVICES WERE REASONABLE AND NECESSARY

Bankruptcy Code ("Code") §330(a)(1)-3) provides in relevant part that "(1) …. the court may award to … a professional person … (A) reasonable compensation for actual, necessary

6

services rendered …; (B) reimbursement for actual, necessary expenses.... (2) The court may, on its own motion or on the motion of … any … party in interest, award compensation that is less than the amount of compensation that is requested…. (3) In determining the amount of reasonable compensation to be awarded to [a] … professional person, the court shall consider the nature, the extent and the value of such services, taking into account all relevant factors, including -- (A) the time spent on such services; (B) the rate charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case…; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed; … and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Code]."

    A.    <u>The D&P Fees Were Reasonable</u>

The Engagement Letter expressly notes D&P's "substantial discount" from its "standard rates," reflecting D&P's desire "to demonstrate sensitivity to these highly unusual circumstances."  Doc. No. 8866-1, at 50 n.1.  In fact, D&P discounted its hourly rates by an average across-the-board discount of 44.6%.  Feltman Aff. ¶10, at 5.  The blended hourly rate for all D&P's professionals during the Application Period was $437.56. <u>Id.</u>  Other financial professionals in this case apparently did not discount their substantially higher hourly rates.  For example, Alvarez & Marsal's hourly rates ranged from $875 to $325 (Doc. No. 5791) (blended hourly rate of $471.69); Ernst & Young hourly rates ranged from $870 to $245 as of March 12, 2019 (Doc. No. 5808), but were "subject to increase … on July 1…."(Doc. No. 8866-1, Exh. 2) (blended hourly rate of $566.56); and the rates of Zolfo Cooper ranged from $1,080 to $250

7

(blended hourly rate of $674.08) (Doc. No. 5820). See SUMF at ¶10 (citing Feltman Aff. ¶10, at 5-6.)

      B.      The Board Needed D&P's Services

The Board hired D&P to help it provide transparent, verifiable information about all of the debtors' bank account balances as of June 30, 2018. As the Board acknowledged, D&P's "Work Product" was essential to "creditor negotiations." Doc. No. 8866-1, at 101.

Knowledge of the debtors' cash balances was essential information for their estates and all other parties in interest. "The majority of courts have determined the 'necessity' of particular services from the perspective of the time that the services were rendered, rather than based on hindsight after the services had been performed." 3 Collier, Bankruptcy ¶ 330.03[1][b] at 330-25 (16th ed. 2015), citing In re Xebec, 147 B.R. 518, 524 (9th Cir. BAP 1992) and In re Ames Dept. Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996) ("reasonably likely to benefit the estate" test should be applied objectively).

## CONCLUSION

The Court should grant D&P's motion for summary judgment, finding no contractual restriction on the "Project Management" fees in the D&P Application.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico on November 15, 2019.

8

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

| | |
|---|---|
| **SCHULTE ROTH & ZABEL LLP** *Attorneys for Duff & Phelps, LLC* 919 Third Avenue New York, New York 10022 Tel: (212) 756-2150 Fax: (212) 593-5955 s/ Michael L. Cook MICHAEL L. COOK (Admitted Pro Hac Vice) michael.cook@srz.com | **ANTONETTI MONTALVO & RAMIREZ COLL** *Attorneys for Duff & Phelps, LLC* P.O. Box 13128 San Juan, PR 00908 Tel: (787) 997-0303 Fax: (787) 997-0323 s/ Jose L. Ramirez-Coll JOSE L. RAMIREZ-COLL USDC-PR No. 221702 jramirez@amrclaw.com |

9