Hearing Date: March 4, 2020 at 8:30 a.m. (ET) / 9:30 a.m. (AST)
Objection Deadline: December 5, 2019 at 3:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------- x
                                                    :
In re:                                              :
                                                    :
THE FINANCIAL OVERSIGHT AND                         :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                   :  Title III
                                                    :
        as representative of                        :  Case No. 17-BK-3283 (LTS)
                                                    :
THE COMMONWEALTH OF PUERTO RICO, et al.,            :  (Jointly Administered)
                                                    :
        Debtors.¹                                   :
------------------------------------------------------------------- x
```

## NOTICE OF HEARING ON SEVENTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019

**PLEASE TAKE NOTICE** that a hearing on the annexed *Seventh Interim Fee Application of Paul Hastings LLP, as Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for Period from June 1, 2019 through September 30, 2019* (the "Application") filed by Paul Hastings LLP, pursuant to section 1103(a)(1) of the Bankruptcy Code, made applicable to these cases by section 301 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 or "PROMESA," will be held before the Honorable Laura Taylor Swain, United States District Judge, at the United States

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

District Court for the District of Puerto Rico, in Room 3, 150 Carlos Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on **March 4, 2020 at 8:30 a.m. (ET) / 9:30 a.m. (AST)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that any responses or objections ("Objections") to the Application by any party other than the Fee Examiner shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*, electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (b) by all other parties in interest, by submitting a hard copy via mail to the Clerk's Office, United States District Court, Room 150 Federal Building, San Juan, PR 00918-1767 or by hand delivery to the Clerk's Office, United States District Court, 150 Carlos Chardon Avenue, Room 150, San Juan, PR 00918, to the extent applicable, and shall be served in accordance with the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3269] (the "Interim Compensation Order"), so as to be so filed and received by the Notice Parties (as defined in the Interim Compensation Order) no later than **December 5, 2019 at 4:00 p.m. (ET) / 4:00 p.m. (AST)** (the "Objection Deadline").

*[Remainder of page intentionally left blank.]*

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Interim

Compensation Order, if no Objections are timely filed, and if the Fee Examiner issues the Fee

Examiner Report (as defined in the Interim Compensation Order) recommending approval of the

Application in full or in part, the Court may grant the Application without a hearing.

Dated: November 15, 2019

*/s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. (Pro Hac Vice)
James R. Bliss, Esq. (Pro Hac Vice)
Nicholas A. Bassett, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors*

**Hearing Date**: March 4, 2020 at 8:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: December 5, 2019 at 3:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

--------------------------------------------------------------------- x

| | |
|---|---|
| In re: | : |
| | : |
| THE FINANCIAL OVERSIGHT AND | : PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : Title III |
| | : |
| as representative of | : Case No. 17-BK-3283 (LTS) |
| | : |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | : (Jointly Administered) |
| | : |
| Debtors.[1] | : |

--------------------------------------------------------------------- x

## SEVENTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019

### SUMMARY COVER SHEET

| | |
|---|---|
| Name of applicant: | Paul Hastings LLP ("Paul Hastings") |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors (the "Committee")[2] |
| Date of retention: | Order entered August 10, 2017, effective as of June 26, 2017 [Docket No. 999] |
| Period for which compensation and reimbursement are sought: | June 1, 2019 through and including September 30, 2019 (the "Application Period") |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

| | |
|---|---|
| Amount of interim compensation sought as actual, reasonable, and necessary: | \$7,465,708.00  / \$5,901,492.66[3] |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | \$901,536.23[4]  / \$900,929.27[5] |
| Are your fee or expense totals different from the sum of previously-served monthly statements for the Application Period? | No. |
| Total compensation approved by interim order to date: | \$35,048,133.90 |
| Total expenses approved by interim order to date: | \$1,093,526.79 |
| Total allowed compensation paid to date: | \$28,342,864.19 |
| Total allowed expenses paid to date: | \$1,071,600.63 |
| Blended rate in this Application for all attorneys: | (a) \$1,059 /hour; (b) \$847/hour[5] |
| Blended rate in this Application for all timekeepers: | (a) \$960 /hour; (b) \$768/hour[6] |
| Compensation sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | \$3,797,359.46 |

---

[3]   While Paul Hastings seeks allowance of all of its fees incurred during the Application Period, the firm only seeks payment, at this time, of fees in the amount of \$5,901,492.66 (to the extent such amount has not been paid before the hearing scheduled on this Application), which is 80% of \$7,376,865.83 (*i.e.*, Paul Hastings' fees after taking into account a credit of \$88,842.17 for fee reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application).  By the time of the hearing on this Application, this amount should have long been paid by the Debtors pursuant to the Interim Compensation Order (as defined below), and Paul Hastings reserves its rights to seek relief from the Court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.

[4]   Paul Hastings' own expenses are \$133, 912.89.  However, in accordance with the Presumptive Standards Order (as defined below), Paul Hastings is also seeking reimbursement of expenses of (a) \$626,550.76 payable to London Economics International, LLC in connection with the preparation of an expert report for the litigation of the PREPA RSA Motion (as defined below) and (b) \$141,072.58 payable to Special Counsel, a firm which provided document review services in connection with the litigation of the PREPA RSA Motion.

[5]   While Paul Hastings seeks allowance of all of its expenses incurred during the Application Period, the firm only seeks payment of expenses in the amount of \$900,929.27, which amount reflects a credit of \$606.96 for expense reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[6]   The calculation of the blended hourly rates reflected in (a) does <u>not</u> take into account Paul Hastings' agreement to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process.  The impact of the 20% end of the case write-off on the blended hourly rates cannot be calculated at this time.  However, for illustrative purposes only, we have reflected in (b) the blended hourly rate after accounting for the 20% reduction for all attorneys and for all timekeepers.

| | |
|---|---|
| Expenses sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $680,719.85 |
| The total time expended for fee application preparation during the Application Period: | Approximately 53.4 hours |
| The total compensation requested for fee application preparation during the Application Period: | Approximately $51,086.50 |
| Number of professionals included in this Application: | 34 |
| If applicable, number of professionals in this Application not included in a staffing plan approved by the client: | 1 Of Counsel and 6 Paraprofessionals |
| If applicable, difference between fees budgeted and compensation sought for the Application Period: | Not Applicable. |
| Number of professionals billing fewer than 15 hours to the case during the Application Period: | 11 |
| Are any timekeeper's hourly rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed in the retention application: | There has been no change in rates compared to the immediately prior fee period (February 1, 2019 through May 31, 2019).[7] |

---

[7]   When calculated at the rates in effect during the initial fee period (June 26, 2017 through September 30, 2017), total fees for the Application Period would have been $6,571,489.75 (compared to $7,465,708.00 under the current rates). The rate adjustments reflect not only Paul Hastings' across-the-board increases in its rate scale, but also step increases due to advancing seniority. While $894,218.25 of Paul Hastings' fees for the Application Period are attributable to periodic changes in rates, $200,321.50 of this amount is attributable to step increases due to advancing seniority. (Under the U.S. Trustee's Appendix B Guidelines, rate increases "exclude step increases historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion.") Thus, only $693,896.75 of the fees in the Application Period are attributable to changes in the firm's rate scale since the date of retention, which is approximately 10.56% of the fees for the Application Period (if calculated at the rates in effect during the first fee period).

## MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| **First Interim Fee Period (June 26, 2017 through September 30, 2017)** | | | | | | |
| 8/25/17 | 6/26/17 - 7/31/17 | $2,612,026.60 | $128,519.42 | $2,612,026.20 | $128,519.42 | $653,006.65 |
| 10/20/17 | 8/1/17- 8/31/17 | $2,742,786.60 | ($35,965.44) | $2,742,786.60 | ($35,965.44) | $685,696.65 |
| 12/5/17 | 9/1/17 - 9/30/17 | $2,121,569.60 | $40,716.24 | $2,121,569.60 | $40,716.24 | $530,392.40 |
| **Total** | | **$7,476,382.80** | **$133,270.22** | **$7,476,382.40** | **$133,270.22** | **$1,869,095.70** |
| | | | | | | |
| **Second Interim Fee Period (October 1, 2017 through January 31, 2018)** | | | | | | |
| 12/23/17 | 10/1/17 - 10/31/17 | $915,475.60 | $14,567.93 | $915,475.60 | $14,567.90 | $228,868.90 |
| 1/5/18 | 11/1/17 - 11/30/17 | $1,445,414.80 | $27,705.47 | $1,445,414.80 | $27,705.47 | $361,353.70 |
| 1/12/18 | 12/1/17 - 12/31/17 | $1,467,883.60 | $22,557.50 | $1,467,883.60 | $22,557.50 | $366,970.90 |
| 3/16/18 | 1/1/18 - 1/31/18 | $1,824,040.20[8] | $30,631.53[9] | $1,822,932.20 | $17,909.03 | $455,733.05 |
| **Total** | | **$5,652,814.20** | **$95,462.43** | **$5,651,706.20** | **$82,739.90** | **$1,412,926.55** |
| | | | | | | |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | |
| 4/18/18 | 2/1/18 - 2/28/18 | $2,015,455.20 | $87,789.71 | $2,015,455.20 | $87,789.71 | $503,863.80 |
| 5/9/18 | 3/1/18 - 3/31/18 | $2,416,111.40 | $53,500.42 | $2,416,111.40 | $53,500.42 | $604,027.85 |
| 6/15/18 | 4/1/18 - 4/30/18 | $1,357,280.60 | $408,763.80 | $1,357,280.60 | $408,763.80 | $339,320.15 |
| 7/13/18 | 5/1/18 - 5/31/18 | $1,152,043.00 | $36,939.73 | $1,152,043.00 | $36,939.73 | $288,010.75 |
| **Total** | | **$6,940,890.20** | **$586,993.66** | **$6,940,890.20** | **$586,993.66** | **$1,735,222.55** |

---

[8] This amount reflects a credit of $13,507.00 for fee reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

[9] This amount reflects a credit of $21,926.16 for expense reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | |
| 9/6/18 | 6/1/18 - 6/30/18 | $983,056.20 | $45,319.10 | $983,056.20 | $45,319.10 | $245,764.05 |
| 10/8/18 | 7/1/18 - 7/31/18 | $1,061,831.60 | $77,376.40 | $1,061,831.60 | $77,376.40 | $265,457.90 |
| 11/2/18 | 8/1/18 - 8/31/18 | $1,288,866.00 | $39,833.17 | $1,288,866.00 | $39,833.17 | $322,216.50 |
| 11/15/18 | 9/1/18 - 9/30/18 | $1,302,462.40 | $39,196.98 | $1,302,462.40 | $39,196.98 | $325,615.60 |
| **Total** | | **$4,636,216.20** | **$201,725.65** | **$4,636,216.20** | **$201,725.65** | **$1,159,054.05** |
| | | | | | | |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | |
| 12/19/18 | 10/1/18 – 10/31/18 | $968,238.40 | $17,300.41 | $968,238.40 | $17,300.41 | $242,059.60 |
| 01/07/19 | 11/1/18 – 11/30/18 | $695,795.40 | $9,071.96 | $695,795.40 | $9,071.96 | $173,948.85 |
| 02/20/19 | 12/1/18 – 12/31/18 | $932,751.60 | $24,110.50 | $932,751.60 | $24,110.50 | $233,187.90 |
| 03/15/10 | 1/1/19 – 1/31/19 | $1,040,883.79[10] | $38,921.42[11] | $1,040,883.79 | $38,921.42 | $260,220.95 |
| **Total** | | **$3,637,669.19** | **$89,404.29** | **$3,637,669.19** | **$89,404.29** | **$909,417.30** |
| | | | | | | |
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | |
| 06/13/19 | 2/1/19 – 2/28/19 | $1,098,711.60 | $30,746.31 | $1,098,711.60 | $30,746.31 | $274,677.90 |
| 06/13/19 | 3/1/19 – 3/31/19 | $1,453,006.40 | 25,745.44 | $1,453,006.40 | $25,745.44 | $363,251.60 |
| 07/03/19 | 4/1/19 – 4/30/19 | $1,852,132.00 | $64,731.53 | $1,852,132.00 | $61,317.34 | $463,033.00 |
| 07/15/19 | 5/1/19 – 5/31/19 | $2,143,294.80 | $61,317.34 | $2,143,294.80 | $61,317.34 | $535,823.70 |
| **Total** | | **$6,547,144.80** | **$182,540.62** | **$6,547,144.80** | **$179,126.43** | **$1,636,786.20** |

[10] This amount reflects a credit of $158,129.01 for fee reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

[11] This amount reflects a credit of $6,033.82 for expense reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Seventh Interim Fee Period (June 1, 2019 through September 30, 2019)** | | | | | | |
| 08/21/19 | 6/1/19 – 6/30/19 | $1,841,416.66[12] | $300,689.64 | $1,841,416.66 | $300,689.64 | $478,122.60 |
| 09/27/19 | 7/1/19 – 7/31/19 | $1,955,942.80 | $380,030.21 | $1,955,942.80 | $380,030.21 | $488,985.70 |
| 10/31/19 | 8/1/19 – 8/31/19 | $1,051,966.00 | $127,240.87 | $0.00 | $0.00 | $262,991.50 |
| 11/14/19 | 9/1/19 – 9/30/19 | $1,052,167.20 | $92,968.55[13] | $0.00 | $0.00 | $263,041.80 |
| **Total** | | **$5,901,492.71** | **$900,929.27** | **$3,797,359.46** | **$680,719.85** | **$1,493,141.60** |

---

[12]   This amount reflects a credit of $88,842.17 for fee reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Applications.

[13]   This amount reflects a credit of $606.96 for expense reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Applications.

**PRIOR INTERIM FEE APPLICATIONS**

| Date Filed [Docket No.] | Application Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 12/15/17 Docket No. 2040 | 6/26/17 - 9/30/17 | $9,345,478.50 | $133,270.22 | Docket No. 2685 | Allowed: $9,264,712.49 Paid: $7,476,382.40 Authorized to be paid: $7,465,577.20[14] | Allowed: $111,344.06 Paid: $133,270.22 Authorized to be paid: $111,344.06[15] |
| 3/19/18 Docket No. 2735 | 10/1/17 – 1/31/18 | $7,066,017.75 | $95,462.43 | Docket No. 3279 | Allowed: $6,960,689.25 Paid: $5,651,706.20 Authorized to be paid: $5,651,706.20 | Allowed: $104,666.09[16] Paid: $82,739.90 Authorized to be paid: $82,739.93 |
| 7/16/18 Docket No. 3568 | 2/1/18 – 5/31/18 | $8,676,112.75 | $586,993.66 | Docket No. 5654 | Allowed: $8,576,523.01 Paid: $6,940,890.20 Authorized to be paid: $6,861,218.41[17] | Allowed: $583,256.46 Paid: $586,993.66 Authorized to be paid: $583,256.46[18] |
| 11/16/18 Docket No. 4325 | 6/1/18 – 9/30/18 | $5,795,270.25 | $201,725.65 | Docket No. 5654 | Allowed: $5,736,730.98 Paid: $4,636,216.20 Authorized to be paid: $4,589,384.78[19] | Allowed: $199,429.03 Paid: $201,725.65 Authorized to be paid: $199,429.03[20] |

---

[14]   The difference of $13,507.00 was credited against the amounts payable under the January 2018 fee statement.

[15]   The difference of $21,926.16 was credited against the amounts payable under the January 2018 fee statement.

[16]   Prior to application of a $21,926.16 credit for expense reductions pursuant to order approving Paul Hastings' First Interim Fee Application.

[17]   The difference of $99,589.74 was credited against the amounts payable under the January 2019 fee statement.

[18]   The difference of $3,737.20 was credited against the amounts payable under the January 2019 fee statement.

[19]   The difference of $58,539.27 was credited against the amounts payable under the January 2019 fee statement.

[20]   The difference of $2,296.62 was credited against the amounts payable under the January 2019 fee statement.

| 4/18/2019 Docket No. 5822 | 10/1/18 – 1/31/19 | $4,705,215.50 | $95,438.11 | Docket No. 8189 | Allowed: $4,509,478.17 Paid: $3,637,669.19 Authorized to be paid: $3,566,595.46[21] | Allowed: $94,831.15 Paid: $89,404.29 Authorized to be paid: $94,831.15[22] |
| 7/15/19 Docket No. 8004 | 2/1/19 – 5/31/19 | $8,183,931.00 | $182,540.62 | Not applicable | Allowed: TBD | Allowed: TBD |

---

[21]   The difference of $88,842.17 was credited against the amounts payable under the June 2019 fee statement.

[22]   The difference of $606.96 was credited against the amounts payable under the September 2019 fee statement.

**Hearing Date**: March 4, 2019 at 8:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: December 5, 2019 at 3:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------- x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

         as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

         Debtors.[1]

           PROMESA

           Title III

           Case No. 17-BK-3283 (LTS)

           (Jointly Administered)

------------------------------------------------------------------------- x

# SEVENTH INTERIM APPLICATION OF PAUL HASTINGS LLP, COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................... 9

COMPENSATION AND REIMBURSEMENT REQUEST .......................................14

SUMMARY OF SERVICES .......................................................................................18

    I.      Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico (Matter ID 00002) ...........................................................................................19

    II.     Communications with Creditors (other than Committee Members) / Website (Matter ID 00004) ...........................................................................................27

    III.    PREPA (Matter ID 00006) ...............................................................................27

    IV.    HTA (Matter ID 00007) ....................................................................................38

    V.     ERS (Matter ID 00008) .....................................................................................38

    VI.    Other Adversary Proceedings (Matter ID 00009)..............................................41

    VII.   Mediation (Matter ID 00010)............................................................................42

    VIII.  GO Bond Debt Issues (Matter ID 00011) .........................................................43

    IX.    Creditors Committee Meetings (Matter ID 00012)............................................46

    X.     Rule 2004 Investigations (Matter ID 00013) ....................................................46

    XI.    Constitutional Issues (Matter ID 00014) ..........................................................47

    XII.   PBA (Matter ID 00017)....................................................................................47

    XIII.  GDB (Matter ID 00018) ...................................................................................48

ATTENDANCE AT HEARINGS ..............................................................................49

REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE ...........................................................................................................50

ACTUAL AND NECESSARY DISBURSEMENTS ................................................52

REQUESTED COMPENSATION SHOULD BE ALLOWED..................................54

CONCLUSION...........................................................................................................58

## <u>SUPPORTING DECLARATION, EXHIBITS, AND SCHEDULES</u>

SUPPORTING DECLARATION OF LUC A. DESPINS

| | |
|---|---|
| EXHIBIT A | CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES |
| EXHIBIT B | SUMMARY OF TIMEKEEPERS INCLUDED IN THIS APPLICATION |
| EXHIBIT C | BUDGETS AND STAFFING PLANS FOR APPLICATION PERIOD |
| EXHIBIT C-1 | BUDGETS |
| EXHIBIT C-2 | STAFFING PLANS |
| EXHIBIT D | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY |
| EXHIBIT D-1 | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY AS COMPARED TO BUDGET |
| | FURTHER BREAKDOWN OF COMPENSATION REQUESTED BY PROJECT CATEGORY AND BY MATTER |
| EXHIBIT D-2 | SUMMARY OF EXPENSE REIMBURSEMENT REQUESTED BY CATEGORY |
| EXHIBIT E | BREAKDOWN OF COMPENSATION AND EXPENSE REIMBURSEMENT REQUESTED BY DEBTOR AND BY WHETHER SERVICES WERE RENDERED IN PUERTO RICO OR OUTSIDE PUERTO RICO |
| SCHEDULE 1 | LIST OF PROFESSIONALS BY MATTER |
| SCHEDULE 2 | MONTHLY STATEMENTS COVERED IN APPLICATION |
| SCHEDULE 3 | MONTHLY INVOICES OF LONDON ECONOMICS INTERNATIONAL LLC |
| SCHEDULE 4 | MONTHLY INVOICES OF SPECIAL COUNSEL |
| SCHEDULE 5 | PROPOSED ORDER |

To the Honorable  United States District Judge Laura Taylor Swain:

Paul Hastings  LLP ("Paul Hastings"), counsel to the Official Committee  of Unsecured
Creditors  (the "Committee"),[1]  for its seventh application  (the "Application"),  pursuant to
sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability  Act
of 2016 ("PROMESA"),[2] section 503(b) of Title 11, United States Code (the "Bankruptcy
Code") as made applicable  to these cases by section 301(a) of PROMESA, Rule 2016 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy  Rules" or "Rules"), and Rule 2016-1
of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto
Rico (the "Local Rules"), for the interim  allowance of compensation for professional  services
performed by Paul Hastings  for the period from June 1, 2019 through and including  September
30, 2019 (the "Application  Period"), and for reimbursement of its actual and necessary expenses
incurred  during  the Application  Period, respectfully represents:

## PRELIMINARY STATEMENT

1.      During the Application  Period, Paul Hastings  handled numerous matters that were
of critical importance to the interests of the Debtors and their creditors.  Most notably, Paul
Hastings devoted substantial time and effort with respect to the Committee's response to the
Oversight Board's motion to approve PREPA's restructuring  support agreement (the "PREPA
RSA Motion"), which concerns, among other things, the proposed treatment of approximately
$8.5 billion  in non-recourse PREPA bonds and the payment of in excess of $20 billion  over
decades to such holders.  As part of these efforts, and commensurate with the significance  of the

---

[1]     Prior to August 25, 2017, the Committee was the official committee of unsecured creditors for the
Commonwealth's Title III case only.  On August 25, 2017, the U.S. Trustee expanded the Committee's role to
also include the Title III cases of HTA, ERS, and PREPA.

[2]     References to PROMESA are references to 48 U.S.C. §§ 2101 *et seq.*

PREPA RSA for PREPA's Title III case, Paul Hastings researched and analyzed a series of complex legal and factual issues, took discovery (through the production of documents and depositions of key witnesses), and litigated multiple discovery disputes.

2.    As discussed in more detail below, the Committee believes that the PREPA RSA suffers from serious flaws, including, among other things, that it would provide the holders of non-recourse bond claims with eventual payments of more than $20 billion (in nominal dollars) over the course of the next 47 years (and possibly longer), even though such bonds were secured by only $8.8 million in collateral on PREPA's petition date. Indeed, on October 30, 2019, the Committee filed a 135-page objection to the PREPA RSA Motion, which comprehensively sets forth the Committee's numerous arguments in opposition to the approval of the PREPA RSA. Among other things, the objection argues that:

- the RSA is far too generous to bondholders given the weakness of bondholders' legal claims;

- the various benefits alleged to flow from the RSA are so speculative as to be illusory;

- the proposed settlement is not in the interests of PREPA's creditors;

- the RSA constitutes an impermissible *sub rosa* plan; and

- the proposed settlement contains a number of terms and conditions that are illegal and/or not in PREPA's best interests.

A hearing on the PREPA RSA Motion is currently scheduled for January 14, 2020.

3.    Another major development during the Application Period was the Oversight Board's filing, in June 2019, of a plan support agreement between the Oversight Board and certain holders of pre-2012 GO and PBA bonds (the "Bondholder PSA"). Subsequently, on September 27, 2019, the Oversight Board filed a proposed plan of adjustment (the "Proposed

Plan") based on the Bondholder PSA and other plan support agreements.  The Bondholder PSA and the Plan raise a number of serious issues for the Committee to confront.  For example, the Bondholder PSA contemplates a blended recovery rate of 9% for Commonwealth creditors other than GO and PBA bondholders[3] (including general unsecured creditors), and the Committee understood at the time that the recovery rate for general unsecured creditors would be even lower, around 1%.  The Committee's concerns in this regard were confirmed when the Oversight Board filed the Proposed Plan and related disclosure statement [Docket No. 8766] (the "Disclosure Statement"), which estimates a recovery for general unsecured creditors of "up to 1.8%."[4]  The paltry recoveries for general unsecured creditors under the Proposed Plan stand in sharp contrast to the substantial recoveries contemplated for bondholders.  For example, holders of pre-2012 PBA and GO bonds will receive a base recovery of 64.1% on their claims plus additional distributions that may increase their recoveries up to a cap of 89.4%.[5]

4.     Moreover, the Bondholder PSA required the Oversight Board to seek a stay of all litigation in connection with the challenges brought by the Committee with respect to certain GO and PBA bonds on the basis that such bonds were issued in violation of Puerto Rico's constitutional debt service limit, as well as related litigation.   In fact, the Oversight Board proposed to (i) stay the entirety of this litigation pending confirmation of the Proposed Plan, (ii) resolve the Committee's challenges to certain 2011 GO bonds and PBA Bonds held by PSA-supporting creditors pursuant to the Proposed Plan (on favorable terms to bondholders), and (iii) litigate the challenge to 2012-2014 GO bonds after confirmation.   The Committee strongly opposed the indefinite stay of litigation proposed by the Oversight Board, and Paul Hastings

---

[3]     *See* Ex. B to the Stay Objection (as defined below) at 6.

[4]     Disclosure Statement at 13.

[5]     *Id*. at 12.

prepared the Committee's objection to the Oversight Board's stay motion [Docket No. 7899] (the "Stay Objection"). While the Court subsequently granted an order (the "Stay Order") staying major bond-related litigation, that stay is only temporary (initially until November 30, 2019 and subsequently extended to December 31, 2019), and, moreover, the Stay Order also required mandatory mediation of issues related to the sequencing of litigation and the Proposed Plan.

5. All the while, Paul Hastings has continued to advise the Committee on all issues bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to protect their rights, including by:

(i) analyzing the nature and extent of the unsecured claims pool, including litigation claims, and filing a limited objection to the Oversight Board's omnibus claim objection procedures motion in order to protect the interests of unsecured creditors;

(ii) advocating for an appropriate alternative dispute resolution ("ADR") process for the allowance of claims, and filing a successful limited objection to the Oversight Board's motion for ADR procedures in order to suggest improvements to the Oversight Board's proposal;

(iii) managing the notice of participation process in connection with the objection to the 2012-2014 GO bonds (the "2012-2014 GO Claim Objection") and handling other matters related to challenges to GO and PBA bond claims (together, with the 2012-2014 GO Claim Objection, the "GO Claim Objections");

(iv) analyzing issues in connection with the First Circuit's February 15, 2019 decision in the *Aurelius* appeal and filing pleadings in the Supreme Court in connection with the Supreme Court's review of same;

(v) formulating, in coordination with affected parties, agreed-upon revised procedures for litigating objections to ERS bond claims, including on the grounds that the ERS bonds were issued *ultra vires* (the "ERS Claim Objections");

(vi) continuing to research a variety of issues related to confirmation of a Commonwealth plan of adjustment in connection with the formulation of plan proposals acceptable to the Committee;

(vii)  maintaining the Committee's website as well as distributing informational emails to unsecured creditors; and

(viii)  monitoring pleadings filed and orders entered in the Title III cases and related adversary proceedings (including, where appropriate, filing objections).

6.     Paul Hastings has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by Paul Hastings was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Moreover, whenever possible, Paul Hastings sought to minimize the costs of Paul Hastings' services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico law to local counsel. In addition, a small core group of Paul Hastings attorneys was utilized for the vast majority of the work in these Title III cases to minimize the costs of intra-Paul Hastings communication and education about the cases. Notably, as a general matter, no more than two Paul Hastings attorneys (and often only one attorney) attended the various hearings held during the Application Period, thereby minimizing not only the time billed on these hearings but also the cost of travel and lodging. This is to be contrasted with other firms which have several partners attending such hearings.

7.     Moreover, to the extent appropriate, Paul Hastings sought to work closely with counsel to the Oversight Board, counsel to the Oversight Board's Special Claims Committee (the "Special Claims Committee"), counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and counsel for the official committee of retirees (the "Retiree Committee") in order to eliminate unnecessary duplication and allocate tasks in an efficient manner. For example, with very limited exceptions (such as the motion of certain ERS

bondholders to lift the stay), the Committee did not become involved in addressing stay relief requests and, instead, deferred these matters to AAFAF. In addition, to the extent appropriate, the Committee joined in the relief sought by other parties (as opposed to incurring the cost of preparing its own standalone motions) or concluded that no pleading was necessary at all. The Committee has also continued to be very judicious in determining in which adversary proceedings to intervene, despite the First Circuit's ruling affirming the Committee's unconditional right to intervene in adversary proceedings.

8.      In addition, as further detailed below, Paul Hastings has taken numerous steps to provide services in the most efficient manner possible in connection with the adversary proceedings in which the Committee is acting as co-plaintiff with the Oversight Board or the Special Claims Committee. For example, the co-plaintiffs have sought, and obtained, temporary stays of numerous of these adversary proceedings,[6] while the Committee is represented in the garden-variety avoidance actions by its local counsel, and in certain other litigation by special litigation counsel, Genovese, Joblove & Battista, P.A. ("GJB"). Indeed, Paul Hastings' time billed to avoidance action matters (Task Code B180), has been minimal during the application period, with the only expenditure of time for Task Code B180 arising under Matter ID 00006 (PREPA), mostly in relation to the Committee's motion for authorization to pursue causes of action to challenge the liens and claims related to PREPA bonds on behalf of PREPA (the "Lien Challenge"). As discussed below, the Committee filed this motion because (i) it was concerned that the Oversight Board would be vulnerable to having its lawsuits later dismissed based on the First Circuit's *de facto* officer ruling in its *Aurelius* decision and (ii) the Oversight Board had taken the position that the Lien Challenge would not be jointly prosecuted by the Oversight

---

[6]      These stays were subsequently superseded by the Court's July 24 order requiring a stay of these proceedings and ordering mandatory mediation.

Board and Committee, but instead by the Oversight Board alone (and, later, by the Oversight Board and AAFAF).[7]

9.      Furthermore, the blended attorney hourly rate ($847, after 20% reduction) for the Application Period is somewhat misleading and not comparable to the average hourly rate of other professionals in these Title III cases. Importantly, our blended attorney hourly rate does not reflect the numerous cost-saving measures that we put in place, including deferring a variety of matters to CST and GJB, which have significantly lower rates than Paul Hastings. For example, as noted above, Paul Hastings determined (with Committee approval) that all garden-variety avoidance actions should be handled by the Committee's local counsel, CST. Moreover, several other adversary proceedings (such as the complaint against certain PREPA fuel suppliers) are being handled by GJB, even where Paul Hastings does not have a conflict. In addition, as detailed in CST's fee statements, CST assisted Paul Hastings with the claims review process. The type of work delegated to CST and GJB would generally have been handled by Paul Hastings lawyers at lower rates, which would have materially brought down the Paul Hastings average. Furthermore, Paul Hastings submits that concentrating work in small teams (that naturally involve more senior attorneys at higher rates) is more cost-efficient than spreading work out across large teams with numerous junior attorneys (which would have the effect of artificially lowering the blended hourly rate). By comparison, on average, the Paul Hastings core teams are half the size of other firms' core team.

---

[7]      Finally, we note that Paul Hastings has agreed to reduce its total fees by an amount equal to 20% of the firm's case fees (with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process). For the avoidance of doubt, at this time, Paul Hastings seeks allowance of $7,465,708.00 (i.e., 100% of fees for services rendered during the Application Period), but payment of fees in the amount of $5,901,492.66 (to the extent such amount has not been paid before the hearing scheduled on this Application), which is 80% of $7,376,865.83 (i.e., Paul Hastings' fees after taking into account a credit of $88,842.17 for fee reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application).

10.     In sum, Paul Hastings respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases. The results obtained to date have benefited not only the Committee but also the Debtors and their creditors. Accordingly, in light of the nature and complexity of these Title III cases, Paul Hastings' charges for professional services performed and expenses incurred are reasonable under applicable standards. For all these reasons, Paul Hastings respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

11.     This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"). To the extent necessary, Paul Hastings requests a waiver for cause shown of any requirements not met by this Application.[8]

12.     In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of Paul Hastings' timekeepers included in this Application.

---

[8]   The Committee and Paul Hastings reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

- <u>Exhibit C-1</u> contains the budgets for Paul Hastings' services during the Application Period.

- <u>Exhibit C-2</u> contains the staffing plans for Paul Hastings' services during the Application Period.

- <u>Exhibit D-1</u> contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the Application Period, and (b) a further breakdown of the compensation requested by project category and matter number.

- <u>Exhibit D-2</u> contains a summary of the expense reimbursements requested by category. An itemized schedule of all such expenses is included in Paul Hastings' monthly statements.

- <u>Exhibit E</u> contains a breakdown of compensation and expense reimbursement requested by Debtor and by whether the services were rendered in Puerto Rico or outside Puerto Rico.

- <u>Schedule 1</u> contains a list of the professionals providing services during the Application Period by matter.

- <u>Schedule 2</u> includes the monthly fee statements covered in this Application.

- <u>Schedule 3</u> contains the monthly invoices of London Economics International LLC.

- <u>Schedule 4</u> contains the monthly invoices of Special Counsel.

- <u>Schedule 5</u> includes the proposed order approving this Application.

## **BACKGROUND**

13.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304(a) of PROMESA (the "<u>Commonwealth Title III Case</u>"). Thereafter, the Oversight Board commenced a Title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "<u>ERS Title III Case</u>"), the Puerto Rico Highways and Transportation Authority (the "<u>HTA Title III Case</u>"), and the Puerto Rico Electric

Power Authority (the "PREPA Title III Case") (and together with the Commonwealth Title III
Case, the "Title III Cases").[9] By orders dated June 29, 2017 [Docket No. 537] and October 6,
2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

14.     On June 15, 2017, the Office of the United States Trustee for the District of
Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured
Creditors* [Docket No. 338].  On June 26, 2017, the Committee selected Paul Hastings as counsel
to the Committee.

15.     On July 10, 2017, the Committee filed an application to retain and employ Paul
Hastings as counsel, effective June 26, 2017 [Docket No. 610] (the "Retention Application").
By order of this Court entered August 10, 2017 [Docket No. 999] (the "Retention Order"),
incorporated herein by this reference, Paul Hastings' retention as counsel to the Committee was
approved effective as of June 26, 2017.

16.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim
Compensation and Reimbursement of Expenses of Professionals* (as amended, the "Interim
Compensation Order").[10]

17.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of
Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the
Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and
the PREPA Title III Case.  Paul Hastings' retention extends to the representation of the
Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the
PREPA Title III Case.  In particular, the Retention Order provided that "[t]he retention of Paul

---

[9]     Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III
Case.

[10]    The Interim Compensation Order was most recently amended on June 6, 2018.

Hastings, as counsel to the Committee, shall be deemed to apply to the representation of the Committee if ever enlarged to include unsecured creditors of other debtors, without the need to obtain a modification of this Order."

18.     The Retention Order authorized Paul Hastings to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct.[11]   The Retention Order further provides that "[p]ursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA section 301(a), the fees and expenses of Paul Hastings under this Order shall be an administrative expense." In addition, as provided in the Retention Order, the Oversight Board has consented to the Debtors' payment of Paul Hastings' allowed fees and expenses.

19.     Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process. For that reason, at this time Paul Hastings seeks payment of only 80% of its fees incurred during the Application Period, but allowance of 100% of such fees. Paul Hastings agreed to this reduction in reliance on the fact that the timing of the payment of Paul Hastings' fees and expenses would be governed by Court orders which contained strict procedures and deadlines, and that such order would be complied with.

20.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and*

---

[11]   Paragraph 2 of the Retention Order provides, among other things, that "Paul Hastings will charge its regular hourly rates in effected from time to time; as such rates may be increased periodically, annually or otherwise."

*Related Relief* [Docket No. 1416] (the "Fee Examiner Order"). The Court appointed Brady Williamson as the Fee Examiner in the Title III Cases.

21.     On December 15, 2017, Paul Hastings filed its first interim fee application with respect to the period from June 26, 2017 through September 30, 2017 [Docket No. 2040] (the "First Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the First Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[12] On March 7, 2018, the Court approved the First Interim Fee Application, with the agreed-upon adjustments.

22.     On March 19, 2018, Paul Hastings filed its second interim fee application with respect to the period from October 1, 2017 through January 31, 2018 [Docket No. 2735] (the "Second Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[13] On June 8, 2018, the Court approved the Second Interim Fee Application, with the agreed-upon adjustments.

23.     On July 16, 2018, Paul Hastings filed its third interim fee application with respect to the period from February 1, 2018 through May 31, 2018 [Docket No. 3568] (the "Third

---

[12]    These agreed-upon adjustments consisted of (a) fee reductions in the amount of $67,259.01 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $13,507.00 (which amount was credited against Paul Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $21,926.16 (which amount also was credited against Paul Hastings' January 2018 fee statement).

[13]    These agreed-upon adjustments consisted of (a) fee reductions in the amount of $103,943.50 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $1,385.00 (which amount was credited against Paul Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $12,722.50 (which amount also was credited against Paul Hastings' January 2018 fee statement).

Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[14] On March 14, 2019, the Court approved the Third Interim Fee Application, with the agreed-upon adjustments.

24.     On November 16, 2018, Paul Hastings filed its fourth interim fee application with respect to the period from June 1, 2018 through September 30, 2018 [Docket No. 4325] (the "Fourth Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[15] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

25.     On March 18, 2019, Paul Hastings filed its fifth interim fee application with respect to the period from October 1, 2018 through January 31, 2019 [Docket No. 5822] (the "Fifth Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in

---

[14]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $125,338.14 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $99,589.74 (which amount was credited against Paul Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $3,737.20 (which amount also was credited against Paul Hastings' January 2019 fee statement).

[15]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $69,137.26 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $58,539.27 (which amount was credited against Paul Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $2,296.62 (which amount also was credited against Paul Hastings' January 2019 fee statement).

its requested fees and expenses.[16]  On July 23, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

26.      On July 15, 2019, Paul Hastings filed its sixth interim fee application with respect to the period from February 1, 2019 through May 31, 2019 [Docket No. 8004] (the "Sixth Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application.  The Fee Examiner and Paul Hastings are in discussions to resolve the Fee Examiner's concerns with respect to the Sixth Interim Application.

## COMPENSATION AND REIMBURSEMENT REQUEST

27.      By this Application, Paul Hastings seeks allowance of compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $7,465,708.00[17] and expense reimbursements in the aggregate amount of $901,536.23.[18]  These amounts are allocated among the Commonwealth Title III Case, the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

---

[16]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $106,895.16 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $88,842.17 (which amount was credited against Paul Hastings' June 2019 fee statement), and (c) expense reductions in the amount of $606.96 (which amount also was credited against Paul Hastings' September 2019 fee statement).

[17]   As noted, Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process.  Accordingly, the firm only seeks payment, at this time, of fees in the amount of $5,901,492.66, which is 80% of $7,376,865.83 (i.e., Paul Hastings' fees after taking into account a credit of $88,842.17 for fee reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application).

[18]   As noted, Paul Hastings only seeks payment of expenses in the amount of $900,929.27, which amount reflects a credit of $606.96 for expense reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $2,690,066.50 | $69,848.89 | $2,759,308.43 |
| HTA Title III Case | $23,214.50 | $24.35 | $23,238.85 |
| ERS Title III Case | $295,572.00 | $14,162.95 | $309,734.95 |
| PREPA Title III Case | $4,456,855.00 | $817,500.04 | $5,274,355.04 |
| **Total** | **$7,465,708.00** | **$901,536.23** | **$8,367,322.46** |

28.     The Committee has approved the amounts requested by Paul Hastings for services performed and expenses incurred in each of the monthly statements submitted to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee during the Application Period. All services for which compensation is requested herein were performed for or on behalf of the Committee.  Moreover, as detailed on Exhibit D hereto, fees incurred by Paul Hastings during the Application Period were well below the monthly budgets.

29.     To date, Paul Hastings has received payments totaling $4,478,079.31 for services rendered during the Application Period, which amount consists of $3,797,359.46 (representing 80% of the fees for services invoiced during the period from June 1, 2019 through July 31, 2019) and $680,719.85 (representing 100% of expenses invoiced for the same period).  As of the date of this Application, the amount of $2,325,027.81 (reflecting 80% of fees and 100% of expenses for services rendered in August and September 2019) remains unpaid.[19]

30.     Other than payments made in accordance with the Interim Compensation Order, Paul Hastings has received no payment and no promises of payment from any source for services rendered during the Application Period. By this Application, Paul Hastings requests allowance of all fees and expenses incurred for services rendered during the Application Period. At this

---

[19]   The deadline to object to Paul Hastings' August 2019 fee statement expired on November 11, 2019, without any objections. The deadline to object to the September 2019 fee statement is November 25, 2019. No objections to the September 2019 fee statement have been received as of the filing of this Application.

time, however, Paul Hasting seeks payment of only (a) 80% of the fees for services invoiced during the Application Period and (b) 100% of expenses invoiced during the Application Period.

31.     In addition, as a courtesy to the Committee and based on circumstances unique to the Title III Cases, during the Application Period Paul Hastings voluntarily waived fees totaling $31,040.00. The time billed by these timekeepers was reasonable, and Paul Hastings reserves the right to seek allowance and payment of these fees based on the facts and circumstances of these cases, including, without limitation, if objections are interposed to the allowance or payment of Paul Hastings' fees and expenses. Paul Hastings also voluntarily waived expenses totaling $4,947.60 as a courtesy to the Committee during the Application Period. For details regarding the waived fees and expenses, please see the Declaration of Luc A. Despins filed concurrently herewith.

32.     There is no agreement or understanding between Paul Hastings and any other person other than the attorneys, employees, and staff of Paul Hastings, for the sharing of compensation to be received for services rendered in these cases.

33.     Paul Hastings maintains computerized records, in the form of monthly statements, of the time spent by all Paul Hastings' attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by Paul Hastings to bill its clients for services rendered and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

34.     The fees charged by Paul Hastings in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period with two

exceptions.[20]  The rates Paul Hastings charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates Paul Hastings charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters. Moreover, when Paul Hastings' restructuring professionals and paraprofessionals work on nonbankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.

35.     Paul Hastings' rates are set at a level designed to fairly compensate Paul Hastings for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expenses. Paul Hastings operates in a complicated national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, Paul Hastings set its rates for attorneys and paraprofessionals both in the restructuring group and other practice groups within the firm by reference to market information and market adjustments by firms considered to be industry peers. Based on this and reviews of contemporaneous time records and fee applications filed in other cases, Paul Hastings endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

36.     As is customary, and as permitted pursuant to paragraph 2 of the Retention Order, Paul Hastings periodically reviews its rate structure and, when appropriate, adjusts its hourly rates based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the

---

[20]   As a courtesy to the Committee and based on circumstances unique to the Title III Cases, Paul Hastings agreed to charge reduced rates for the services of Alexander Bongartz during the Application Period; the firm charged $1,200 per hour, rather than his standard rate of $1,250 per hour.

current market for legal services, (iii) the rates charged for comparable non-bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms. In January 2019, Paul Hastings adjusted its hourly rates, which adjustments apply across-the-board to all Paul Hastings clients. The Committee approved the rate adjustments on a timekeeper-by-timekeeper basis.

37. Paul Hastings' professional services during the Application Period required an aggregate expenditure of 7,778.20 recorded hours by Paul Hastings' attorneys and paraprofessionals, broken down as follows: partners (1,531.70 hours), counsel (2,148.20 hours), associates (3,047.40 hours), and paraprofessionals (1,050.90 hours). During the Application Period, Paul Hastings' billing rates for attorneys rendering services in this matter ranged from $515 to $1,500 per hour.

38. To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed before the preparation of this Application, or Paul Hastings has for any other reason not sought compensation or reimbursement with respect to such services or expenses, Paul Hastings reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

## SUMMARY OF SERVICES

39. During the Application Period, Paul Hastings assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties. In addition, Paul Hastings has prepared various motions, applications, orders, and other pleadings submitted to the Court for consideration, and has performed the

necessary professional services that are described below and in the monthly statements attached hereto as Schedule 2.[21]  For ease of reference and transparency purposes, Paul Hastings created several matter numbers for its representation of the Committee.  The matter numbers are divided by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
|---|---|
| 00002 | Official Committee of Unsecured Creditors |
| 00003 | COFINA Dispute Analysis |
| 00004 | Communications with Creditors (other than Committee Members) |
| 00005 | Fiscal Plan Analysis |
| 00006 | PREPA |
| 00007 | HTA |
| 00008 | ERS |
| 00009 | Other Adversary Proceedings |
| 00010 | Mediation |
| 00011 | GO Bond Debt Issues |
| 00012 | Creditors' Committee Meetings |
| 00013 | Rule 2004 Investigations |
| 00014 | Constitutional Issues |
| 00015 | Rule 2004 (Whitefish) |
| 00016 | PREPA Privatization |
| 00017 | PBA |
| 00018 | GDB |

## I.    Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico (Matter ID 00002)

40.    During the Application Period, Paul Hastings addressed a number of key matters as Committee counsel with respect to Matter ID 00002.  Among the most important of these matters were (a) the plan support agreements ("PSAs") entered into between the Oversight Board

---

[21]    The description of services in this Application is limited to those matters in which Paul Hastings provided five (5) or more hours of service during the Application Period.

and certain creditors, including the Bondholder PSA entered into between the Oversight Board and certain holders of pre-2012 GO and PBA bonds, and (b) the filing, on September 27, 2019, of the Oversight Board's Proposed Plan and Disclosure Statement with respect to the Commonwealth, ERS, and PBA. These events demanded Paul Hastings' diligent attention so that it could advise the Committee with respect to the PSAs and the Proposed Plan, which, among other things, contemplate favorable treatment to holders of pre-2012 GO and PBA bonds (including 2011 GO bonds and PBA bonds subject to the Committee's pending claim objections) while providing paltry recoveries to general unsecured creditors.[22]

41.    In addition to the above, during the Application Period, Paul Hastings also advised the Committee with respect to plan settlement proposals that the Committee made to the Oversight Board, analyzed proofs of claim, addressed the Oversight Board's proposal for an ADR process, and handled other matters related to the Commonwealth Title III Case.

(a)    Case Administration (Task Code B110)
       Fees: $61,399.00        Total Hours:    110.40

42.    During the Application Period, Paul Hastings continued to advise the Committee on general case administration. In order to efficiently track deadlines, organize documents, and manage work streams, Paul Hastings maintained a global task list and case calendar. Further, Paul Hastings coordinated internally and with the Committee's financial advisor, Zolfo Cooper LLP ("Zolfo Cooper") regarding Committee communications, case strategy, and work streams.

---

[22]    *See e.g.*, Stay Objection, Ex. B at 6 (describing creditor recoveries pursuant to the plan contemplated by the Bondholder RSA, with holders of pre-2012 GO bonds to receive a recovery of 64% before litigation recovery and settlement savings, holders of pre-2012 PBA bonds to receive a recovery of 73% before litigation and recovery and settlement savings, and "Non-GO/PBA Creditors" to receive a recovery at blended rate of 9%); Disclosure Statement, at 12-13 (describing creditor recoveries pursuant to the Proposed Plan, with holders of pre-2012 GO bonds and "Guarantee Bond Claims" to receive a baseline recovery of 64.1% in the form of new bonds and cash, and with general unsecured creditors to receive a recovery of 1.8% in the form of new bonds).

43.     In addition, during the Application Period, Paul Hastings continued to implement interim and long-term strategies to maximize recoveries for general unsecured creditors. Paul Hastings also communicated with certain Committee members and others in connection with the administration of the Title III Cases.

44.     Furthermore, Paul Hastings worked to execute a variety of other tasks related to case administration, including, among other things, preparing supplements to the Committee's disclosure statements pursuant to Bankruptcy Rule 2019, analyzing legal issues in connection with same, monitoring the Bankruptcy Rule 2019 disclosures of other creditor groups, and handling administrative matters in connection with the filing and service of pleadings.

(b)     Pleadings Review (Task Code B113)
        Fees:   $21,651.00          Total Hours:   60.00

45.     During the Application Period, Paul Hastings continued to review and prepare summaries of pleadings filed and orders entered in the Title III Cases for internal review and review by the Committee.

(c)     Relief from Stay / Adequate Protection Proceedings (Task Code B140)
        Fees:   $72,835.00          Total Hours:   69.00

46.     During the Application Period, Paul Hastings handled the Committee's response to the motion for relief from stay filed by Ambac Assurance Corporation ("Ambac") with respect to Puerto Rico Infrastructure Financing Authority (PRIFA) rum taxes. Of particular note, in the interest of minimizing fees and to avoid the duplication of work, the Committee did not prepare its own objection to Ambac's motion, but instead filed a limited joinder in the objection filed by the Oversight Board. In connection with preparing that limited joinder, Paul Hastings performed research and analysis of the legal issues raised by Ambac's motion (in order to determine the extent of the Committee's joinder), communicated with counsel to the Oversight Board

regarding its objection to Ambac's stay relief motion, and provided detailed comments regarding same.

       (c)     <u>Meetings of and Communications with Creditors (Task Code B150)</u>
            Fees:   $205,838.50         Total Hours:   237.90

       47.      During the Application Period, Paul Hastings continued to prepare reports and summaries to keep the Committee apprised of relevant developments in the Title III Cases and related adversary proceedings.[23]

       (d)     <u>Court Hearings (Task Code B155)</u>
            Fees:   $109,220.50         Total Hours:   115.30

       48.      During the Application Period, Paul Hastings attended (a) the June 12, 2019 omnibus hearing in San Juan,[24] at which hearing Paul Hastings addressed the Court in connection with the motion filed by certain ERS creditors to disband the Committee as the official committee of unsecured creditors for ERS, the Oversight Board's motion for procedures in connection with omnibus claims objections, the motion filed by the Committee and the Oversight Board for a stay of certain adversary proceedings, and the status conference in connection with the motion for approval of the PREPA RSA; (b) the July 24, 2019 omnibus hearing in San Juan, at which hearing Paul Hastings addressed the Court in connection with, among other matters, the Oversight Board's Stay Request and the Oversight Board's motion for ADR procedures; and (c) the September 11, 2019 omnibus hearing in San Juan,[25] at which hearing Paul Hastings addressed the Court in connection with, among other matters, status reports with respect to ADR procedures and litigation procedures in connection with ERS Claim

---

[23]    Meetings and calls with the Creditors' Committee were recorded separately under Matter ID 00012 (Creditors' Committee Meetings).

[24]    Attendance at the hearing on June 12, 2019 was recorded by certain Paul Hastings attorneys under Matter ID 00006 (PREPA).

[25]    At this hearing, Paul Hastings addressed the Court by video-conference from New York.

Objections.  Paul Hastings also monitored the Oversight Board's public  meetings held on

September 26, 2019 and September 27, 2019.[26]

49.     In preparation for these hearings, Paul Hastings also reviewed relevant issues

raised in the parties' pleadings,  prepared materials  for the hearings, and filed the requisite

informative  motions  to be heard.

(e)     Fee/Employment  Applications  (Paul Hastings) (Task Code B160)
        Fees:  $250,168.50          Total Hours:   312.40

50.     During the Application  Period, Paul Hastings prepared, among  other things, the

Paul Hastings monthly fee statements for services provided  during  the months of February 2019

through August 2019, as well as the Sixth  Interim Fee Application  for the period  from February

1, 2019 through May 31, 2019 and parts of this Application.   In addition,  Paul Hastings

continued  to identify  possible  connections  between the firm and parties in interest in the Title III

Cases and prepared two supplemental  declarations  of Luc Despins regarding the firm's retention

as Committee  counsel (one of these supplemental  declarations  was filed  during the Application

Period, while the other was worked on, but not completed,  during the Application  Period).  Paul

Hastings also reviewed reports and correspondence  from the Fee Examiner and engaged in

discussions  with the Fee Examiner  and his  counsel to address questions  regarding Paul Hastings'

interim  fee applications.

(f)     Budget (Task Code B161)
        Fees:  $9,600.00           Total Hours:   8.00

51.     During the Application  Period, Paul Hastings prepared monthly  budgets pursuant

to the instructions  of the fee examiner and communicated  with the Committee  and the fee

examiner regarding same.

---

[26]   Time spent monitoring the September 26, 2019 was billed to Task Code B155 (Court Hearings), while time
       spent monitoring the September 27, 2019 hearing was billed to Task Code B320 (Plan and Disclosure
       Statement).

(g)    Fee/Employment Applications for Other Professionals (Task Code B165)
       Fees: $ 30,197.00          Total Hours:   47.10

52.    During the Application Period, Paul Hastings assisted the Committee's

communications advisor, Kroma Advertising, Inc. ("Kroma"), in preparing its interim fee

application and assisted the Committee's local conflicts counsel, José Francisco Cartaya

Morales, Esq., with his retention application.   Paul Hastings also handled other matters related to

the employment of other professionals, including by reviewing the fee statements of Zolfo

Cooper, as well as the fees of certain professionals retained by the Oversight Board and AAFAF.

(h)    Other Contested Matters (excl. assumption/rejections motions) (Task Code B190)
       Fees: $ 24,951.00          Total Hours:   21.00

53.    During the Application Period, Paul Hastings analyzed the reply brief filed by

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") in support

of Assured's motion seeking an order requiring the Committee to file a revised Rule 2019

statement and the Court's denial of that motion.   Moreover, Paul Hastings prepared and filed

limited joinders to certain Rule 2004 discovery motions filed by Ambac.  Paul Hastings also

handled the Committee's opposition to the proposed payment of fees incurred by Bonistas del

Patio's professionals (in connection with the COFINA plan of adjustment) using Commonwealth

funds.  As a result of Paul Hastings' efforts, including analysis of legal issues and

communication with counsel to other parties, AAFAF withdrew its stipulation purporting to

allow the Bonistas del Patio's fees as an administrative expense claim, and the Court entered an

order prohibiting the payment of the Bonistas del Patio's fees by the Commonwealth or other

Puerto Rico government entities without further proper notice to all parties and an order of the

Court.

(i)      Non-Working Travel (Task Code B195) (billed at ½ rate)
         Fees:  $13,950.00          Total Hours:   18.60

54.      During the Application Period, one Paul Hastings professional traveled to and

from San Juan, to attend the omnibus hearing held on June 12, 2019,[27] and one Paul Hastings

professional traveled to and from San Juan, to attend the omnibus hearing held on July 24, 2019.

In accordance with Local Rule 2016-2(d)(viii), Paul Hastings billed for one-half the total time

that Paul Hastings professionals spent on non-working travel.

(j)      Claims Administration and Objections (Task Code B310)
         Fees:  $166,809.50          Total Hours:   162.30

55.      During the Application Period, Paul Hastings, with the assistance of Zolfo

Cooper, continued to analyze proofs of claims in order to better understand the size and nature of

the unsecured claims pool. As mentioned in prior fee applications, in contrast to bondholders'

claims, the unsecured claims pool is comprised of thousands of claims that are difficult to

quantify because they are often based on pending litigation.  As part of this claim review process,

Paul Hastings continued to analyze, with the assistance of local counsel CST, the merits and the

potential allowed amounts of certain claims asserted by unsecured creditors against the Debtors.

Paul Hastings also reviewed claim objections filed by the Debtors and continued to analyze

complex issues related to the treatment of claims, including, among others, the treatment of

claims (which have been alleged by various creditor groups) based on violations of the United

States Constitution, including whether such claims are subject to be discharged as part of a plan

of adjustment.  This analysis required research of case law and review of bond documentation

and related materials.

---

[27]     In addition, to avoid the increased of expenses of travelling to Puerto Rico, one Paul Hastings professional
working on PREPA matters travelled to and from New York in order to attend the June 12, 2019 omnibus
hearing by video-conference. This travel time was billed under Matter ID 00006.

56.     Further, Paul Hastings also reviewed the Oversight Board's motion for omnibus objection procedures (with respect to substantive claims objections) and prepared a limited objection in which the Committee voiced its concerns with respect to the proposed procedures. Paul Hastings also reviewed the Oversight Board's motion for ADR procedures and filed the Committee's limited objection suggesting changes to these procedures for the benefit of creditors. The Court echoed the Committee's concerns when, at the July 24, 2019 hearing, it instructed the Oversight Board to make substantial revisions to the proposed procedures.

(k)     <u>Plan and Disclosure Statement (including Business Plan) (Task Code B320)</u>
Fees: $ 257,411.50          Total Hours:   242.60

57.     During the Application Period, Paul Hastings advised the Committee in connection with a number of critical plan-related developments, most notably the PSAs, the Proposed Plan, and the Disclosure Statement. Among other things, Paul Hastings researched and analyzed a number of key plan-related issues in connection with the potential treatment of general unsecured claims under a Commonwealth plan of adjustment, as well as issues related to the propriety of certain PSA provisions. These issues included, but were not limited to, the treatment of guaranty claims, priority disputes, unfair discrimination, and substantial contribution. Paul Hastings also prepared plan proposals for consideration by the Oversight Board and held conferences with the Oversight Board and other parties regarding plan issues. Upon the filing of the Proposed Plan and Disclosure Statement on September 27, 2019, Paul Hastings analyzed these documents in order to advise the Committee with respect thereto, and monitored the Oversight Board's public meeting related to the Proposed Plan.

## II.    Communications with Creditors (other than Committee Members) / Website (Matter ID 00004)

### (a)    Meetings of and Communications with Creditors (Task Code B150)
Fees:    $35,922.50            Total Hours:    39.50

58.    During the Application Period, Paul Hastings prepared and regularly updated, with the assistance of Prime Clerk and Kroma, the Committee's websites regarding the Title III Cases, including updates on hearings, recent Court orders, and other developments in the Title III Cases. In this regard, Paul Hastings also prepared and regularly updated the Spanish-language sections of the websites.

59.    During the Application Period, Paul Hastings also worked with Kroma to draft and distribute multiple informational emails to unsecured creditors. These emails contained links to the Committee's website and case information and updates, including updates on the ADR process, the PREPA RSA, the Committee's objections to 2011 GO bonds and PBA bonds, the Bondholder PSA, efforts by the Oversight Board to obtain additional information from creditors filing proofs of claim, and the filing of the Proposed Plan. The Committee's email communication efforts, which began in November 2018, have largely been successful, with open-rates exceeding 30% in the majority of instances.

## III.    PREPA (Matter ID 00006)

60.    In addition to its regular duties representing the Committee in connection with the PREPA Title III Case, during the Application Period Paul Hastings lead the Committee's response to the PREPA RSA Motion.[28]    As part of this effort, Paul Hastings engaged in intensive legal research and analysis, discovery, and discovery-related litigation to support the drafting of

---

[28]    *See* Docket No. 1235 in Case No. 17-4780 (LTS).

the Committee's 135-page objection to the PREPA RSA Motion (the "RSA Objection"), filed on October 30, 2019.

61.     As further explained in the RSA Objection, the Committee strongly opposes the PREPA RSA Motion because the Committee believes the settlement embodied in the RSA is a terrible deal for PREPA that is far too generous to bondholders given the weakness of bondholders' legal clams. Most notably, as detailed in the RSA Objection, the $8.5 billion in PREPA bonds were secured only by approximately **$8.8 million** of collateral, as of the PREPA petition date, and, moreover, are not entitled to any unsecured deficiency claim, given that they are non-recourse bonds. Nevertheless, the RSA provides PREPA bondholders with consideration allowing them to recover 86% of the face amount of their claims (and, under certain conditions, even greater than 90%). The Committee also objects to the PREPA RSA Motion for a number of additional reasons, including that:

- the various benefits alleged to flow from the RSA, such as confirmation of PREPA's plan, PREPA's transformation/privatization, and improved macroeconomic conditions for PREPA and Puerto Rico, are so speculative as to be illusory;

- the proposed settlement is not in the interests of PREPA's creditors, as it was the the result of a one-sided negotiation process from which the Committee and other non-bondholder creditors were excluded, it appears to impermissibly restrict PREPA's ability to pay other, non-bondholder creditors, and no creditors or other parties in interest that are not bondholders support the proposed settlement;

- the RSA constitutes an impermissible *sub rosa* plan that dictates the contents of PREPA's Title III plan of adjustment without providing the various protections for creditors, including rights to receive certain disclosures and to vote on confirmation, that are required as part of the plan process; and

- the proposed settlement contains a number of terms and conditions that are illegal and/or not in PREPA's best interests, such as the absence of a "fiduciary out" provision that would allow the Oversight Board, AAFAF, and PREPA (collectively, the "Government Parties") to terminate the RSA if they determine it is detrimental to PREPA.

62.     Paul Hastings' extensive work representing the Committee in connection with the PREPA RSA Motion was reasonable and necessary under the circumstances given the Committee's grave concerns with respect to the merits of the proposed settlement, the implications of the PREPA RSA on PREPA's unsecured creditors, and the magnitude of the payments contemplated under the PREPA RSA.

63.     Paul Hastings was duty bound, as counsel to the Committee, to engage in a comprehensive and urgent effort to litigate the PREPA RSA Motion.  This approach was necessary because of the importance of the PREPA RSA Motion and the binding effect of the RSA upon an eventual approval by the Court, as well as the complexity of the issues raised by the RSA.  As part of this litigation, it was also critical that Paul Hastings take broad discovery to test the factual assertions and other contentions proffered in support of the PREPA RSA Motion by the Government Parties, litigate discovery disputes that arose during the Application Period, and retain an expert in order to provide a rigorous analysis of the impact of the proposed settlement on PREPA and test the Government Parties' assertions regarding the economic benefits of the RSA for PREPA.

64.     The PREPA RSA is a transaction of overwhelming importance for the PREPA Title III Case as well as the future of PREPA.  Indeed, the litigation of the PREPA RSA Motion is the single most important event in the PREPA Title III Case to date. The RSA proposes to resolve approximately $8.5 billion in non-recourse bond claims through the eventual payment of more than $20 billion in consideration.  Moreover, the RSA contemplates charging PREPA's customers a transition charge to repay bondholders over a 47-year period, and the transition charge and payments to bondholders may continue indefinitely under certain circumstances. Further, the PREPA RSA is an unprecedented and highly complex transaction that raises a

multitude of legal and factual issues requiring extensive research and analysis. As counsel to the Committee, the only fiduciary for unsecured creditors in the PREPA Title III Case, Paul Hastings would be gravely remiss if it failed to devote significant time and attention to the RSA issue.

65.     In addition, the Committee had to act with urgency to raise its concerns regarding PREPA's restructuring and could not wait until the proposal of PREPA's Title III plan of adjustment. As explained in more detail in the Committee's RSA Objection, the structure of the RSA is such that, if the RSA is approved, PREPA will essentially be "locked in" to an agreement under which it must, among other things, (i) propose a plan of adjustment that will repay bondholders on the agreed-upon favorable terms (and this repayment is required whether or not the transition charge is ever implemented or securitization bonds are ever issued) and (ii) provide significant and non-revocable pre-plan benefits (approaching one billion dollars) to supporting bondholders. There is no "fiduciary out" that would allow PREPA to escape the RSA if it determines the deal is damaging to PREPA. And while the RSA can be terminated if the Court denies PREPA's plan of adjustment twice, such a termination would result in PREPA being forced to pay hundreds of millions of dollars of fees. Thus, Paul Hastings could not postpone the Committee's objection to the terms of PREPA's proposed restructuring at the plan confirmation stage; by then, enormous amounts of PREPA's value would be "out the door" under the terms of the RSA.

66.     Discovery was a particularly important task in connection with the litigation of the PREPA RSA Motion, and Paul Hastings advanced the Committee's interests in connection with discovery-related conferences and stipulations, as well as in motion practice with respect to discovery disputes. As discussed in a number of its discovery-related pleadings, the Committee was entitled to take discovery in connection with the PREPA RSA Motion pursuant to Rule 9019

case law, and its discovery rights were affirmed by the Court at the July 11, 2019 status
conference, when the Court recognized the Committee's right to seek discovery concerning
assertions made in the Government Parties' declarations with respect to the Rule 9019 "range of
reasonableness" inquiry.[29]   Nevertheless, the Government Parties attempted to limit the scope of
issues subject to discovery and/or refused to provide the Committee with requested discovery on
multiple occasions, which required that Paul Hastings conduct motion practice in order to defend
the Committee's discovery rights.  For example, during and shortly after the Application Period,
Paul Hastings filed, among other discovery-related pleadings:

- motions to compel regarding assertions of privilege, refusals to produce certain
  types or categories of documents, inclusion of key custodians in discovery, and
  certain other discovery disputes, along with reply briefs in support thereof and
  related motions to seal;

- objections to motions for protective orders in connection with the testimony of
  Oversight Board economist Dr. Andrew Wolfe and PREPA chief executive José
  Ortiz; and

- objections to orders of Magistrate Judge Dein issued on August 2, 2019 and
  September 16, 2019, along with reply briefs in support thereof and related
  motions to seal and to exceed page limits.

67.    Paul Hastings' motion practice in support of the Committee's discovery rights
was a reasonable and necessary part of its effort to represent the Committee in connection with
the PREPA RSA Motion given the high stakes involved and the support for the Committee's
discovery rights in Rule 9019 case law and in the Court's statements at the July 11, 2019 status
conference.  Indeed, Paul Hastings' discovery-related motion practice resulted in the defeat of a
number of the Government Parties' privilege claims and the disclosure of critical information
with respect to the PREPA RSA in documents, such as text messages, that the Government

---

[29] See July 11, 2019 Tr. at 31-32.

Parties initially refused to produce—in other words, had Paul Hastings not challenged the

Government Parties' refusal to produce such documents and brought the matter to the Court's

attention, key documents would have never come to light. Further, although the Committee's

objections to certain discovery-related orders of Magistrate Judge Dein have not persuaded the

Court to reverse those rulings, these objections were, like the rest of Paul Hasting's discovery-

related motion practice, justified given the high-stakes circumstances, the Court's statements in

support of the Committee's discovery rights, and the importance of preserving a record for future

litigation and/or appeals the Committee may pursue.

68.     Paul Hastings was also justified in retaining the services of an expert, London

Economics International, LLC ("LEI") to shed further light on the future impact of the transition

charge contemplated by the RSA. LEI's expert report (the "LEI Report") served on parties and

the Court together with the RSA Objection, was especially important because the Government

Parties failed to support the PREPA RSA Motion with any type of expert economic analysis, yet

made a number assertions with respect to the alleged economic benefits of the RSA settlement.

While the LEI Report currentliy remains subject to confidentiality restrictions and cannot be

discussed in detail at this time, it presents an informative picture of PREPA's post-RSA future

that, the Committee believes, is of substantial value to the Court and parties in considering the

PREPA RSA Motion.

69.     It should also be noted that the Committee and Paul Hastings are acutely aware of

the cost of litigating the PREPA RSA Motion, and have repeatedly attempted to reduce or

eliminate the need for this litigation. For example, since the Government Parties filed the

PREPA RSA Motion in May 2019, the Committee has tried to resolve its numerous concerns

consensually with the Government Parties. The Committee has also, at the July 24, 2019

omnibus hearing, suggested before the Court that PREPA issues be subject to mediation under the Court's Stay Order. In addition, at the October 30, 2019 hearing the Committee noted that costly litigation was proceeding apace despite uncertainty regarding whether the Commonwealth Government even supported the RSA, and questioned the need for ongoing litigation under these circumstances. Unfortunately, the Committee's efforts to mitigate the need for ongoing litigation have been unsuccessful—at every instance, the Government Parties have indicated their desire to press ahead with litigation.

70.    In addition to all of the foregoing, Paul Hastings continued to devote time and attention to other Committee matters with respect to PREPA. For example, confronted with the July 1, 2019 expiration of the statutes of limitations in the PREPA Title III Case and concerned that the Oversight Board would be vulnerable to having its lawsuits later declared void based on the First Circuit's *de facto* officer ruling in its *Aurelius* decision, Paul Hastings continued its work with the Oversight Board to prepare a stipulation regarding the joint prosecution of PREPA causes of action. Moreover, when the Oversight Board decided to prosecute the Lien Challenge with respect to PREPA bonds on its own (subsequently choosing to have AAFAF act as co-plaintiff), Paul Hastings prepared the Committee's motion (and related reply brief) under section 926 of the Bankruptcy Code to be authorized to pursue the Lien Challenge on behalf of PREPA. Paul Hastings also continued to represent the Committee in connection with executory contract issues, claims analysis, and other PREPA-related matters.

(a)    <u>Case Administration (Task Code B110)</u>
       Fees:  $123,349.00        Total Hours:   340.20

71.    During the Application Period, Paul Hastings handled significant administrative matters in connection with the PREPA Title III Case, including filing and service of pleadings and review and analysis of documents produced in connection with the litigation surrounding the

motion to approve the PREPA RSA. This document production was extensive, involving over

30,000 documents produced by over fifteen different parties, including PREPA, certain of its

creditors, U.S. Bank as trustee for the PREPA bonds, and others.

> (b)    Court Hearings (Task Code B155)
> Fees:  $124,021.50       Total Hours:  117.50

72.    During the Application Period, Paul Hastings attended (a) the June 12, 2019

omnibus hearing in San Juan,[30] at which hearing Paul Hastings participated in the status

conference in connection with the PREPA RSA Motion; (b) the June 28, 2019 hearing in New

York,[31] at which hearing Paul Hastings addressed the Committee's motion for the appointment

of the Committee as section 926 trustee for PREPA; (c) the July 11, 2019 hearing in New York,

at which hearing Paul Hastings participated in a renewed status conference in connection with

the PREPA RSA Motion, and (d) the July 30, 2019 hearing in Boston, at which hearing Paul

Hastings addressed certain discovery disputes in connection with the litigation of the PREPA

RSA Motion.[32]  In preparation for these hearings, Paul Hastings also reviewed relevant issues

raised in the parties' pleadings, prepared materials for the hearing, and filed the requisite

informative motion to be heard.

> (c)    Avoidance Action Analysis (Task Code B180)
> Fees:  $143,830.00       Total Hours:  134.60

73.    During the Application Period, Paul Hastings continued to analyze potential

avoidance causes of action on behalf of PREPA, including those related to potential preferences.

Paul Hastings also communicated with counsel to the Oversight Board regarding the

---

[30]   Attendance at the hearing on June 12, 2019 was recorded by certain Paul Hastings attorneys under Matter ID
00002 (Commonwealth).

[31]   Attendance at the hearing on June 28, 2019 was recorded by one Paul Hastings attorney under Matter ID 00002
(Commonwealth).

[32]   Attendance at the hearing on July 30, 2019 was recorded by one Paul Hastings attorney under Task Code B420
(Restructuring).

commencement and prosecution of avoidance actions on behalf of PREPA and continued to work with the Oversight Board to prepare a stipulation regarding the joint prosecution of PREPA causes of action, which was approved by the Court on June 28, 2019. Further, when the Oversight Board took the position that the Lien Challenge litigation would not be jointly prosecuted by the Oversight Board and Committee, but instead by the Oversight Board alone (and, later, by the Oversight Board and AAFAF), Paul Hastings, on behalf of the Committee, prepared and filed a motion pursuant to section 926 of the Bankruptcy Code for an order authorizing the Committee to pursue the Lien Challenge on behalf of PREPA. In connection with this motion, Paul Hastings prepared a reply brief in support thereof as well as other ancillary pleadings, and conducted related legal research and analysis.

(d)     Assumption/Rejection of Leases and Contracts (Task Code B185)
        Fees:  $31,353.50          Total Hours:  29.70

74.     During the Application Period, Paul Hastings also reviewed a notice of assumption of a Power Purchase Operation Agreement ("PPOA") filed at the end of the prior application period in connection with obtaining additional information regarding the PPOA and advising the Committee regarding whether to object to assumption. Paul Hastings prepared a draft objection to the PPOA assumption, but after consultation with counsel to the Oversight Board it was determined that filing the objection was not necessary. Subsequently, Paul Hastings analyzed another proposed assumption with respect to a contract for the purchase of natural gas, communicated with counsel to the Oversight Board regarding same, and advised the Committee regarding its response to the proposed assumption.

(f)     General Litigation (Task Code B191)
        Fees:  $10,639.00          Total Hours:  13.20

77.     During the application period, Paul Hastings prepared the Committee's motion to intervene in adversary proceeding number 19-00396 (the "Fuel Line Lenders' Adversary

Proceeding") and analyzed issues related thereto. Paul Hastings also handled other litigation tasks related to the PREPA RSA Motion.

    (e)    <u>Non-Working Travel (Task Code B195)</u>
            Fees: $13,152.00         Total Hours: 21.70

    75.    During the Application Period, one Paul Hastings professional traveled to and from New York to attend (by video conference) the June 12, 2019 hearing in San Juan) in connection with the status conference held with respect to the PREPA RSA Motion; one Paul Hastings professional travelled to and from New York to attend the July 11, 2019 hearing in connection with the renewed status conference held with respect to the PREPA RSA Motion; and three Paul Hastings professionals traveled to and from Boston to attend the July 30, 2019 hearing in connection with discovery disputes related to the PREPA RSA Motion. In addition, one Paul Hastings professional traveled to and from New York to attend a meeting with respect to preparations for upcoming depositions to be held in connection with the PREPA RSA Motion. In accordance with Local Rule 2016-2(d)(viii), Paul Hastings billed for one-half the total time that Paul Hastings professionals spent on non-working travel.

    (f)    <u>Claims Administration and Objections (Task Code B310)</u>
            Fees: $25,315.00         Total Hours: 25.20

    76.    During the Application Period, Paul Hastings continued to research and analyze various issues related to the PREPA bond claims, including with respect to potential challenges of such claims, as well as issues related to the claims of certain fuel line lenders. In addition, Paul Hastings prepared an objection to the PREPA bond claims, which was filed in October 2019, and researched legal issues with respect to the prosecution of such an objection.

(g)    Restructurings (Task Code B420)
Fees:  $3,987,839.50        Total Hours:  3,938.50

77.    During the application period, Paul Hastings represented the Committee in responding to the motion to approve the PREPA RSA Motion. As discussed above, this was a comprehensive effort that involved extensive work on multiple fronts.

78.    First and foremost, Paul Hastings drafted the Committee's objection to the PREPA RSA Motion, researching and analyzing a wide variety of issues implicated by the PREPA RSA, an unprecedented and highly complex transaction. These issues included the terms of the PREPA bonds, trust agreement, other utility securitization transactions, and other bankruptcy settlements; issues related to the contemplated privatization of PREPA; regulatory issues; the non-recourse nature of PREPA's bonds; the standard for approval of Rule 9019 settlements; the propriety of the fees proposed to be awarded under the PREPA RSA; and the scope and nature of bondholders' security interests. Paul Hastings also reviewed and analyzed extensive supplemental pleadings and declarations in support of the PREPA RSA Motion that were filed by the Government Parties during the Application Period, as well as pleadings filed in the Lien Challenge and Fuel Line Lenders' Adversary Proceeding. Paul Hastings' efforts culminated with the filing of the Committee's 135-page RSA Objection on October 30, 2019.

79.    Paul Hastings also took extensive discovery in connection with the litigation of the PREPA RSA Motion. Paul Hastings reviewed, with the assistance of special document-review counsel,[33] over 30,000 documents produced by over fifteen different parties, including the Oversight Board, PREPA, certain of PREPA's creditors, and others. Paul Hastings also

---

[33]    As noted below, in connection with this document review, Paul Hastings sub-retained Special Counsel to provide contract lawyer services. The base hourly rates of Special Counsel's contract attorneys ranges from $73.50 to $85.00 per hour. Paul Hasting is not charging a mark-up on Special Counsel's fees and has no financial interest in Special Counsel.

attended one deposition during the application period and prepared for additional depositions scheduled for October 2019 (when Paul Hastings would depose eight key witness and attend one additional deposition), and engaged in a variety of related tasks in connection with discovery, such as drafting discovery requests and scheduling proposals, preparing subpoenas for depositions, conferring with counsel to the Oversight Board and other parties, and consulting the Committee's expert witness.

80.     Paul Hastings also litigated issues related to discovery and the appropriate scope of the matters to be considered by the Court in connection with the PREPA RSA Motion. As part of this effort, Paul Hastings prepared sections of joint status reports, motions to compel discovery, objections to motions for protective orders, and objections to adverse discovery-related rulings of Magistrate Judge Dein, along with related pleadings such as reply briefs, motions to seal, and a motion to extend page limits. Paul Hastings also performed extensive research and analysis of legal issues relevant to these discovery disputes.

## IV.   HTA (Matter ID 00007)

(a)     Relief from Stay/Adequate Protection Proceedings (Task Code B140)
Fees:  $17,978.50          Total Hours:  17.10

81.     During the Application Period, Paul Hastings analyzed the motion of AmeriNational Community Services, LLC, as servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company which serves as the collateral monitor for Wilmington Trust, N.A., (together, the "DRA Parties") for relief from stay in connection with certain HTA bonds and loans.

## V.   ERS (Matter ID 00008)

82.     During the Application Period, Paul Hastings continued its work representing the Committee in connection with the Committee's omnibus objection to the claims of ERS

bondholders, in which it challenged over $3 billion of ERS bonds as invalid based on the theory

that they were issued *ultra vires*, as well as the related procedures motion in connection with that

objection. Among other things, Paul Hastings worked closely with counsel to the Retiree

Committee, Oversight Board, Special Claims Committee, AAFAF, and certain ERS bondholder

groups to develop revised, agreed-upon procedures (the "Revised ERS Objection Procedures") to

allow for the coordinated litigation of the ERS Claim Objections and other objections to the

claims of ERS bondholders. These procedures feature a broad notification process designed to

inform thousands of bondholders regarding the ERS Claim Objections in order to allow them an

opportunity to participate in the litigation with respect thereto. Paul Hastings then finalized and

filed the Revised ERS Objection Procedures, which were approved by the Court on October 7,

2019, shortly after the end of the Application Period.

83.    In addition to the above Paul Hastings performed other tasks as part its

representation of the Committee with respect to ERS, such as continuing to represent the

Committee in connection with the motion for relief from stay filed by certain ERS bondholders

and advising the Committee with respect to the mediation of certain matters related to the

various pending ERS litigations, which ultimately culminated in an agreed-upon order regarding

the scheduling of discovery and briefing with respect to the *ultra vires* challenge to the ERS

bonds and the lien scope issues with respect to such bonds.[34]

---

[34]    Due to mediation confidentiality restrictions, Paul Hastings cannot publicly disclose the substance of the issues
addressed in mediation. Moreover, Paul Hastings has redacted all references to specific mediation issues in its
monthly fee statements attached to this Application. Paul Hastings will submit unredacted versions of such
statements for the Court's review, if the Court so requests. The Fee Examiner has received unredacted versions
of such statements.

     (a)     <u>Case Administration  (Task Code B110)</u>
           Fees:  $5,271.00         Total Hours:   18.60

84.     During the Application Period, Paul Hastings continued to review and analyze materials related to the ERS Title III Case, including document production received in connection with the motion for relief from stay filed by certain ERS bondholders.  Paul Hastings also handled administrative tasks in connection with the filing and service of pleadings related to ERS.

     (b)     <u>Relief from Stay/Adequate Protection Proceedings (Task Code B140)</u>
           Fees:  $60,711.00       Total Hours:   62.20

85.     During the Application Period, Paul Hastings conducted legal research and analysis with respect to the purported liens of ERS bondholders, communicated with counsel to the other parties regarding litigation and discovery matters, reviewed documents, and attended depositions.  Paul Hastings also prepared a supplemental response to the motion for relief from stay filed by certain ERS bondholders.

     (c)     <u>General Litigation  (Task Code B191)</u>
           Fees:  $8,302.50         Total Hours:   8.10

86.     During the Application Period, Paul Hastings analyzed the Court's June 2019 ruling on section 552 of the Bankruptcy Code, prepared an informative motion regarding the stay of ERS-related adversary proceedings, and handled other litigation matters in connection with ERS.

     (d)     <u>Claims Administration and Objections (Task Code B310)</u>
           Fees:  $214,625.50      Total Hours:   206.90

87.     During the Application Period, Paul Hastings worked with other interested parties, including the Retiree Committee, Oversight Board, and ad hoc groups of ERS bondholders to draft the Revised ERS Objection Procedures in connection with the ERS Claim Objections so as to allow for the efficient litigation of the *ultra vires* issue with respect to such

bond claims. Paul Hastings also prepared a response to the procedures filed previously by the Retiree Committee with respect to its omnibus objection to ERS bond claim, attended mediation conferences to discuss ERS issues, and attended to discovery matters, including by drafting discovery requests.

## VI.    Other Adversary Proceedings (Matter ID 00009)[35]

### (a)    Court Hearings (Task Code B155)
Fees:  $6,685.00          Total Hours:   6.20

88.    During the Application Period, Paul Hastings monitored the hearing held on August 15, 2019 in connection with the Oversight Board's motion to dismiss adversary proceeding number 19-00393, which was commenced by the Governor of Puerto Rico regarding Law 29-2019, the "Law to Reduce the Administrative Burden of Municipalities" ("Law 29").

### (b)    General Litigation  (Task Code B191)
Fees:  $71,787.00         Total Hours:   83.90

89.    During the Application Period, Paul Hastings monitored the progress of a number of adversary proceedings and related matters, advising the Committee as appropriate.  In order to track deadlines, organize documents, and notify the Committee of upcoming matters, Paul Hastings reviewed these dockets to maintain its litigation tracking charts.  In addition, Paul Hastings analyzed and advised the Committee regarding the Oversight Board's request for an extension of the stay of the First Circuit's mandate with respect to the First Circuit's Appointments Clause decision in the *Aurelius* appeal and the Committee's strategy in connection with the Supreme Court's review of that decision, and related matters.  In this regard, Paul Hastings closely coordinated with counsel for the Oversight Board to minimize duplicative briefing.  Paul Hastings also prepared the Committee's joinder to the Oversight Board's motion

---

[35]    To the extent practicable, Paul Hastings tracked work in respect of PREPA-related adversary proceedings under Matter ID 00006, HTA-related adversary proceedings under Matter ID 00007, and ERS-related adversary proceedings under Matter ID 00008.

to dismiss the adversary proceeding number 18-00028, *Cooperativa de Ahorro y Crédito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.*, related to the claims of certain Puerto Rico credit unions. In addition, Paul Hastings drafted the Committee's motion to intervene in connection with adversary proceeding number 18-00059, *Assured Guaranty Corp. et al. v. Commonwealth of Puerto Rico, et al.*, the adversary proceeding commenced by Assured and Financial Guaranty Insurance Company with respect to the Commonwealth Fiscal Plan

## VII.  Mediation (Matter ID 00010)[36]

(a)   Claims Administration and Objections   (Task Code B310)
Fees:  $12,218.00          Total Hours:   10.60

90.      During the Application Period, Paul Hastings reviewed the motion filed by the DRA Parties to mediate the committee's objection to the Government Development Bank ("GDB") proof claim against the Commonwealth (the "GDB Claim Objection") pursuant to the Stay Order and prepared an objection thereto.

(b)   Plan and Disclosure Statement  (Task Code B320)
Fees:  $87,234.50          Total Hours:   67.90

91.      During the Application Period, Paul Hastings represented the Committee in connection with the mediation process pursuant to the Stay Order. As part of this effort, Paul Hastings analyzed legal and strategic issues in connection with mediation, drafted memoranda for submission to the mediation team, conferred with the mediators regarding the Committee's views on the sequencing of litigation and plan-related proceedings, and communicated with other parties regarding these issues.

---

[36]   Due to mediation confidentiality restrictions, Paul Hastings cannot publicly disclose the substance of the issues addressed in mediation. Moreover, Paul Hastings has redacted all references to specific mediation issues in its monthly fee statements attached to this Application. Paul Hastings will submit unredacted versions of such statements for the Court's review, if the Court so requests. The Fee Examiner has received unredacted versions of such statements.

## VIII.   GO Bond Debt Issues (Matter ID 00011)

92.     During the Application Period, Paul Hastings continued to handle a number of important matters related to the GO bonds.  Most notably, Paul Hastings continued to focus on the GO Claim Objections, in furtherance of the Committee's goal of obtaining legal rulings invalidating 2012-2014 GO bonds, certain 2011 GO bonds, and certain PBA bonds issued in violation of the Commonwealth Constitution.  This effort was significantly complicated during the Application Period by the Oversight Board's entry into the Bondholder PSA with certain holders of pre-2012 GO and PBA bonds, an agreement that contemplated a plan of adjustment that would provide favorable treatment to holders of such pre-2012 GO and PBA bonds (including 2011 GO and PBA bonds subject to challenge by the Committee) while providing minimal recoveries to general unsecured creditors.[37]  In connection with the Bondholder PSA, the Oversight Board requested the imposition of a global stay of all pending challenges to certain GO and PBA bonds, as well as the pending PBA "lease" challenge, until after confirmation of a joint plan of adjustment for the Commonwealth (the "Stay Request").

93.     The Committee vigorously opposed the Stay Request, arguing in its Stay Objection, among other things, that (a) the plan contemplated by the Bondholder PSA was unconfirmable, (b) a stay was not necessary to preserve the proposed plan, would not avoid unnecessary consumption of time and resources, and would not promote non-movants' interests (and in fact would prejudice those interests), and (c) the Bondholder PSA was not the result negotiations with key stakeholders.  In opposing the Stay Request the Committee also pointed out a critical danger posed by the Stay Request, namely, that the indefinite stay of the GO Claim

---

[37]   *See e.g.*, Stay Objection, Ex. B, at 6 (describing creditor recoveries pursuant to the plan contemplated by the Bondholder RSA, with holders of pre-2012 GO bonds to receive a recovery of 64% before litigation recovery and settlement savings, holders of pre 2012 PBA bonds to receive a recovery of 73% before litigation recovery and settlement savings, and "Non-GO/PBA Creditors" to receive a recovery at a blended rate of 9%).

Objections would result in a process that, could, albeit unintentionally, protect all GO and PBA bonds from invalidation, even if billions of dollars of such bonds have been issued in violation of the constitutional debt service limit.[38]  Subsequently, on July 24, 2019 (*i.e.*, the omnibus hearing at which the Stay Request was scheduled to be heard), the Court entered its Stay Order granting a temporary stay and requiring mandatory mediation in connection with, among other things, the sequencing of GO Claim Objection-related litigation.

94.   In addition to the above, during the Application Period Paul Hastings performed other tasks as part its representation of the Committee with respect to the GO issues, as further discussed below.

(a)   Case Administration   (Task Code B110)
Fees:   $2,633.50          Total Hours:   12.10

95.   During the Application Period, Paul Hastings handled various case administrative matters related to GO bond issues, including filing and serving pleadings in connection with the Go Claim Objections and preparing related affidavits of service.

(b)   General Creditor Inquiries   (Task Code B112)
Fees:   $9,210.00          Total Hours:   10.80

96.   During the Application Period, Paul Hastings responded to numerous creditor inquiries with respect to its motion to revise the procedures in connection with the GO Claim Objections and related pleadings, which were broadly noticed to hundreds of participants in the GO Claim Objection litigation that had submitted email addressed in their notices of participation.

---

[38]   *See* Stay Objection ¶ 43. ("[U]nder the Proposed Plan, the Court would not be asked to rule on the 2012-2014 GO Claim Objection until after confirmation. In that context, the holders of the 2012-2014 GO Bonds will assert, in defense of the validity of their own bonds, that the PBA bonds are invalid.... If the Court were to accept that defense, neither the 2012-2014 GO Bonds (which would be shielded by this defense) nor the pre-2012 GO and PBA bonds (which would be shielded under the Proposed Plan) could be invalidated even if the Court were to conclude that the PBA financing structure is a sham.").

     (c)      <u>General Litigation   (Task Code B191)</u>
              Fees:   $97,898.50          Total Hours:   101.30

97.      During the Application Period, Paul Hastings worked with counsel to the

Oversight Board and its Special Claims Committee to perform a number of tasks related to the

management of adversary proceedings related to GO bonds, including by preparing a reply in

support of the motion to stay such adversary proceedings, and meeting and conferring with

various parties regarding the Court's order with respect to litigation case management issues and

procedures for the approval of settlements. Paul Hastings also handled other matters related to

the litigation of GO bond disputes, including analyzing issues and advising the Committee in

connection with the Oversight Board's Stay Request and the Committee's Stay Objection.[39]

     (d)      <u>Claims Administration and Objections   (Task Code B310)</u>
              Fees:   $514,850.50        Total Hours:   491.60

98.      During the Application Period, Paul Hastings continued to represent the

Committee in connection with the GO Claim Objections. As part of this effort, Paul Hastings

drafted the Stay Objection, conducted related legal research analysis regarding the impact of the

Bondholder PSA on the GO Claim Objections, and consulted with other parties regarding issues

in connection with the appropriate sequencing of litigation.

99.      Paul Hastings also prepared a reply brief in response to objections to the

Committee's procedural motion in connection with the objection to certain 2011 GO bonds (the

"<u>2011 GO Claim Objection</u>") seeking to consolidate litigation of the 2011 GO Claim Objection

with litigation of the 2012-2014 GO Claim Objection and continued to oversee the process of

reviewing Notices of Participation in connection with the 2012-2014 GO Claim Objection. In

addition, Paul Hastings handled related matters, such as the Committee's response to the

---

[39]   Paul Hastings' work in connection with these matters was also billed to Task Code B310 (Claims
     Administration and Objections).

renewed "Conditional Objection" filed by certain GO bondholders seeking to obtain legal rulings with respect to as-yet unchallenged series of Puerto Rico bonds, and Paul Hastings continued to analyze legal issues in connection with the GO Objection, including debt limit issues, as well as the impact of the filing of the Bondholder PSA on the GO Claim Objection process.

100.    In addition, Paul Hastings prepared additional objections to GO bond claims, including a detailed objection to claims asserting a GO priority and to certain other miscellaneous claims asserting GO liability, which objections have not yet been filed.

## IX.    Creditors Committee Meetings (Matter ID 00012)

(a)    <u>Meetings of and Communications with Creditors (Task Code B150)</u>
Fees:  $122,829.50          Total Hours:   114.60

101.    During the Application Period, Paul Hastings continued to hold regular telephonic conferences with the Committee to provide the Committee with updates on the progress of the Title III Cases as well as to discuss case strategy and next steps. In preparation for these telephonic conferences, Paul Hastings (a) reviewed relevant pleadings filed in the Title III Cases and related adversary proceedings, (b) prepared presentations for these meetings, and (c) prepared proposed agenda letters for the Committee's consideration. Finally, Paul Hastings also prepared minutes of the Committee meetings.

## X.    Rule 2004 Investigations (Matter ID 00013)

(a)    <u>Case Administration (Task Code B110)</u>
Fees:  $3,431.00          Total Hours:   9.10

102.    During the Application Period, Paul Hastings continued to process the discovery received from counsel to AAFAF.

(b)      General Litigation  (Task Code B191)
Fees:  $5,645.50        Total Hours:   5.80

103.    During the Application  Period, Paul Hastings continued  to coordinate  the transition of materials to the Committee's  special litigation  counsel, GJB.

## XI.    Constitutional Issues (Matter ID 00014)

(a)      General Litigation  (Task Code B191)
Fees:  $344,926.50     Total Hours:   326.60

104.    During the Application  Period, Paul Hastings continued  to represent the Committee in connection  with the Appointments  Clause appeals.  As part of its efforts, Paul Hastings analyzed the petitions  for certiorari filed by parties to the appeals, engaged in extensive research and analysis of relevant legal and strategic issues, including  the *de facto* officer doctrine and related matters, and prepared the Committee's  Supreme Court briefs.  In this regard, Paul Hastings closely coordinated  with counsel for the Oversight Board to minimize  duplicative briefing.  Nevertheless, it was necessary for Paul Hastings to devote significant  time to these matters given the importance  and complexity  of issues that would be raised before the Supreme Court in October 2019.

## XII.    PBA (Matter ID 00017)

(a)      Case Administration   (Task Code B110)
Fees:  $5,383.00        Total Hours:   5.90

105.    During the Application  Period, Paul Hastings handled administrative  matters related to PBA such as service of the Committee's  objection  to certain PBA bonds that the Committee believes were issued in violation  of the Commonwealth's  constitutional  debt service limit  and analysis  of PBA's Title III petition.

    (b)    <u>General Litigation   (Task Code B191)</u>
        Fees:  $32,778.00          Total Hours:   31.50

106.    During the Application Period, Paul Hastings continued to prepare the joint objection to the motion for judgment on the pleadings filed by certain defendants and to conduct legal research and analysis related thereto.  Paul Hastings also prepared responses and objections to discovery requests served on the Committee.   Further, Paul Hastings engaged in discussions with counsel to the Oversight Board with respect to case strategy, as well as conferences with other parties in connection with scheduling and other procedural matters.

    (c)    <u>Claims Administration and Objections (Task Code B310)</u>
        Fees:  $66,330.00          Total Hours:   68.90

107.    During the application period, Paul Hastings prepared the Committee's objection to approximately $1.75 billion of Commonwealth-guaranteed PBA bonds and conducted related research and analysis of issues related to the PBA bond claims.

## XIII.   GDB (Matter ID 00018)

    (a)    <u>Claims Administration and Objections (Task Code B310)</u>
        Fees:  $33,903.00          Total Hours:   29.60

108.    During the Application Period, Paul Hastings finalized its objection to the proof of claim filed by GDB against the Commonwealth and conducted related legal analysis.  This was done in accordance with the stipulation that resolved the Committee's objections to the GDB restructuring,[40] which stipulation preserved the Committee's right to challenge GDB's proof of claim against the Commonwealth.  In addition, Paul Hastings drafted an additional objection to certain GDB claims based on violation of the constitutional debt service limit, though this objection has not yet been filed.  Paul Hastings also conferred with counsel to GDB and the DRA Parties regarding GDB issues.

---

[40]    *See* Docket No. 185 in Case No. 18-1561 (LTS).

\* \* \*

109.    The foregoing professional services were necessary and appropriate to the administration of the Title III Cases and were in the best interests of the Committee, the Debtors, the creditors, and other parties in interest.

## ATTENDANCE AT HEARINGS

110.    In accordance with the presumptions set forth in the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Docket No. 3932] (the "Presumptive Standards Order"), Paul Hastings provides the following summary regarding the attendance of Paul Hastings professionals at Court hearings:[41]

- June 12, 2019: The June 12, 2019 omnibus hearing was attended by Mr. Despins (speaking role) and Mr. Bassett in person, with Mr. Bongartz and Mr. Jimenez (for a portion of the hearing) attending by telephone. The omnibus hearing addressed, among other things, the motion filed by the Committee and the Oversight Board for a stay of certain adversary proceedings and an important status conference in connection with the litigation of the PREPA RSA Motion. Therefore, Paul Hastings submits that the attendance of an additional attorney in person (Mr. Bassett) who is extensively involved in avoidance action litigation and the litigation of the PREPA RSA, as well as the attendance of an attorney on the phone (Mr. Jimenez) for a portion of the hearing who is also extensively involved in the litigation of the PREPA RSA, is reasonable under the circumstances.

- June 28, 2019: The June 28, 2019 hearing on the Committee's motion for the appointment of the Committee as section 926 trustee for PREPA was attended by Mr. Despins (speaking role) and Mr. Bongartz, with Mr. Comerford (for a portion of the hearing) attending by telephone. Paul Hastings submits that the attendance of an additional attorney on the phone (Mr. Comerford) who is extensively involved in the PREPA restructuring is reasonable under the circumstances.

- July 11, 2019: The July 11, 2019 hearing on the renewed status conference in connection with the litigation of the PREPA RSA Motion was attended by Mr.

---

[41]    Among other things, the Presumptive Standards Order provides that "[f]or attendance at hearings in which a professional anticipates a speaking role, fees and expenses incurred for attendance by timekeepers other than those with meaningful speaking roles (plus one additional timekeeper per speaker) are not compensable."

Despins (speaking role) and Mr. Bassett, with Mr. Comerford and Mr. Maza attending by telephone.  Paul Hastings submits that the attendance of two additional attorneys on the phone (Mr. Comerford and Mr. Maza), who are both extensively involved in the PREPA RSA Motion litigation, is reasonable under the circumstances.

- July 24, 2019: The July 24, 2019 omnibus hearing was attended only by Mr. Despins (speaking role) with Mr. Bongartz and Mr. Comerford attending by telephone (each for a portion of the hearing).  The omnibus hearing addressed, among other matters, the Oversight Board's motion to stay certain proceedings and contested matters and the Oversight Board's motion for ADR procedures.  Paul Hastings submits that the attendance of an additional attorney on the phone (Mr. Comerford) who is extensively involved in ADR issues is reasonable under the circumstances.

- July 30, 2019: The July 30, 2019 hearing on discovery disputes related to the PREPA RSA litigation was attended by Mr. Bassett (speaking role), Mr. Despins, and Mr. Zwillinger, with Mr. Bongartz and Mr. Bliss (each for a portion of the hearing) attending by telephone.  Litigation of the PREPA RSA Motion was a high priority for the Committee and Paul Hastings during the Application Period given the importance of the RSA for the PREPA Title III Case, and Paul Hastings submits that the attendance of one additional attorneys in person (Mr. Zwillinger) and two additional attorneys on the phone (Mr. Bongartz and Mr. Bliss, for a portion of the hearing) who are both involved in the PREPA RSA Motion litigation and related matters is reasonable under the circumstances.

- August 15, 2019: The August 15, 2019 hearing on the Oversight Board's motion to dismiss the adversary proceeding commenced by the Governor of Puerto Rico regarding Law 29 was attended only by Mr. Bongartz.  His attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- September 11, 2019: The September 11, 2019 omnibus hearing was attended by Mr. Despins (speaking role) and Mr. Bongartz, with Mr. Comerford attending the hearing by telephone.  This omnibus hearing included an important status report with respect to ADR procedures.  Paul Hastings submits that the attendance of an additional attorney on the phone (Mr. Comerford) who is extensively involved in ADR issues is reasonable under the circumstances.

## REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

111.    As requested by the Fee Examiner, we set forth below the status of the various

proceedings and motions jointly commenced by the Oversight Board or its Special Claims

Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for
the joint prosecution of causes of action or claims objections.

- Omnibus Objection of Oversight Board and Committee to Certain GO Bond Claims [Docket No. 4784] (the "Omnibus Claims Objection"): Per Judge Swain's order at the July 24, 2019 omnibus hearing (as amended), the Omnibus Claims Objection is stayed until December 31, 2019, while the parties work with the mediators on a process to resolve this objection and other plan-related matters.

- Adversary Proceeding Against Underwriters, etc.: GJB, the Committee's special litigation counsel, represents the Committee with respect to the adversary proceeding against various underwriters and other parties involved in the issuance of Commonwealth bonds [Adv. Proc. No. 19-280]. Paul Hastings has no involvement in this adversary proceeding.

- Garden-Variety Avoidance Actions: CST, the Committee's local counsel, represents the Committee with respect to the "garden-variety" avoidance actions [Adv. Proc. Nos. 19-041 to 19-279, and Adv. Proc. Nos. 19-347 to 19-354]. Paul Hastings' involvement in these avoidance actions is limited to reviewing and commenting on draft forms of pleadings or "case management" pleadings, and providing high-level oversight and direction with respect to these adversary proceedings.[42]

- Currently Stayed Co-Plaintiff Adversary Proceedings: By orders dated June 13, 2019, the Court stayed, until December 31, 2019, the following co-plaintiff adversary proceedings:

  - Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288];

  - Seven adversary proceedings challenging liens asserted by certain holders of GO bonds [Adv. Proc. No. 19-291, Adv. Proc. No. 19-292, Adv. Proc. No. 19-293, Adv. Proc. No. 19-294, Adv. Proc. No. 19-295, Adv. Proc. No. 19-296, and Adv. Proc. No. 19-297]; and

---

[42]  We also note that, on July 12, 2019, the Court approved certain procedures establishing a framework for streamlined execution of settlement agreements and procedures and guidelines for resolving the avoidance actions through a voluntary mediation process.

      o  Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

In light of the stay orders, Paul Hastings is not expending any significant time on these adversary proceedings, other than minor administrative and/or procedural work.

- ERS-Related Co-Plaintiff Adversary Proceedings: On October 24, 2019, the Court approved a scheduling order regarding discovery and summary judgment briefing on the lien scope issues and *ultra vires* issues with respect to the ERS bonds. Accordingly, (a) the lien scope litigation, *i.e.*, Adv. Proc. No. 19-366 and Adv. Proc. No. 19-367 and (b) count I of the complaints seeking to recover fraudulent transfers made on account of ERS bonds that were not validly issued, *i.e.*, Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361, were unstayed.

      o  Proskauer Rose LLP, counsel for the Oversight Board, has primary responsibility for the lien scope adversary proceedings. Accordingly, Paul Hastings is not expending significant time on these adversary proceedings.

      o  Moreover, GJB, the Committee's special litigation counsel, represents the Committee with respect to count I of the recovery actions. Thus, GJB is handling the *ultra vires* issues as they relate to count I of the recovery actions.[43]

112.    The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2 hereto, respectively. As shown on Exhibit D-1, actual hours incurred on the above matters were well below budget.

## ACTUAL AND NECESSARY DISBURSEMENTS

113.    As set forth in Exhibit D-2 hereto, Paul Hastings disbursed $901,614.46 as expenses incurred in providing professional services during the Application Period. This amount includes:

---

[43]   To be clear, Paul Hastings is fully involved in the discovery and briefing as it relates to the Committee's ERS Claim Objection, which objection is not brought jointly with any other party. Given that the *ultra vires* issues and the lien scope issues are being litigated in tandem, Paul Hastings is coordinating its litigation efforts with the other objectors (including the Retiree Committee) in the interest of minimizing duplication of efforts.

- $626,550.76 in expenses payable to London Economics International, LLC ("LEI") in connection with the preparation of an expert report (the "LEI Report") for the litigation of the PREPA RSA Motion. The hourly rates for the LEI professionals ranges from $295.00 to $825.00 per hour. On October 30, 2019, the Commonwealth Agent served the LEI Report on various parties, subject to certain confidentiality restrictions. Copies of LEI's invoices for the months of June through September 2019 are attached hereto as Schedule 3.

- $141,072.58 in expenses payable to Special Counsel, which provided document review counsel services in connection with the litigation of the PREPA RSA Motion, dramatically reducing the cost of first-level document review as compared to the costs that would be incurred if this task were carried out by Paul Hastings attorneys. In fact, the base hourly rates of contract attorneys providing document review services ranges from $73.50 to $85.00 per hour. To be clear, Paul Hasting is not charging a mark-up on Special Counsel's fees and has no financial interest in Special Counsel. Copies of Special Counsel's invoices for the months of June and July 2019 are attached hereto as Schedule 4.

- $38,484.82 in expenses payable to Trustpoint International, LLC, which provided e-discovery services, including maintaining a database of discovery documents that were critical to Paul Hastings' discovery tasks in connection with the litigation of the PREPA RSA Motion.

114.    Paul Hastings also disbursed additional amounts in connection with other minor expenses such as the translation of documents and the use of CourtSolutions.

115.     Further, because Paul Hastings believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, Paul Hastings encourages computerized legal research even though it is not a profit center for Paul Hastings.

116.     The time constraints imposed by the circumstances of the matters handled by Paul Hastings during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee.  These extraordinary services were essential to meet deadlines, timely respond to inquiries on a daily basis, and satisfy the Committee's needs and demands.  Attorneys and other Paul Hastings employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs in accordance with the Local Rules and firm policy.  Paul Hastings' regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

117.     Further, Paul Hastings believes the rates for charges incurred are the market rates that the majority of law firms charge clients for such services.  In addition, Paul Hastings believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

## REQUESTED COMPENSATION SHOULD BE ALLOWED

118.     Section 316 of PROMESA provides for the compensation of professionals. Specifically, section 316 provides that a court may award a professional employed by a committee under section 1103 of the Bankruptcy Code "reasonable compensation for actual,

necessary services rendered . . . and reimbursement for actual, necessary expenses." PROMESA

§ 316(a).  Section 316 also sets forth the criteria for the award of such compensation and

reimbursement:

> (a)    In determining the amount of reasonable compensation to be awarded
> to a professional person, the court shall consider the nature, the extent,
> and the value of such services, taking into account all relevant factors,
> including:
>
> > (i)    the time spent on such services;
> >
> > (ii)    the rates charged for such services;
> >
> > (iii)    whether the services were necessary to the administration of, or
> > beneficial at the time at which the service was rendered toward
> > the completion of, a case under this chapter;
> >
> > (iv)    whether the services were performed within a reasonable amount of time
> > commensurate with the complexity, importance, and nature of the
> > problem, issue, or task addressed;
> >
> > (v)    with respect to a professional person, whether the person is
> > board certified or otherwise has demonstrated skill and
> > experience in the restructuring field; and
> >
> > (vi)    whether the compensation is reasonable based on the customary
> > compensation charged by comparably skilled practitioners in
> > cases other than cases under this title or title 11, United States
> > Code.

PROMESA § 316(c).  Further, section 317 of PROMESA provides that "a committee . . . may

apply to the court not more than once every 120 days . . . for such compensation for services

rendered . . . ."

119.    In the instant case, Paul Hastings respectfully submits that the services for which

it seeks compensation in this Application were, at the time rendered, believed to be necessary for

and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to

protect, preserve, and maximize value for unsecured creditors during the pendency of the

Title III Cases. The services rendered to the Committee were performed in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. The results obtained to date have benefited not only the Committee but also the Debtors, their stakeholders, and other interested parties. Accordingly, the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

120.    The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Whenever possible, Paul Hastings sought to minimize the costs of Paul Hastings' services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. A small group of the same Paul Hastings attorneys was utilized for the vast majority of the work in order to minimize the costs of intra-Paul Hastings communication and education about the Title III Cases. As demonstrated by this Application, Paul Hastings spent its time economically and without unnecessary duplication. Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

121.    In accordance with the Interim Compensation Order, Paul Hastings will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson;

and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

[*Remainder of page intentionally left blank.*]

## **CONCLUSION**

WHEREFORE, Paul Hastings respectfully requests entry of an order, substantially in the form attached hereto as <u>Schedule 5</u>, (i) allowing interim compensation for professional services rendered during the Application Period in the amount of $7,465,708.00, representing 100% of the fees billed during the Application Period, and reimbursement of $901,614.46, representing 100% of the actual and necessary expenses incurred during the Application Period,

(ii) authorizing and directing the Debtors' payment of the difference between the sum of 80% of the fees allowed plus 100% of the expenses allowed and the amounts previously paid by the Debtors pursuant to the Interim Compensation Order, (iii) allowing such compensation and payment for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Paul Hastings' right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting Paul Hastings such other and further relief as is just.

Dated: November 15, 2019

_/s/ Luc A. Despins_

PAUL HASTINGS LLP
Luc A. Despins, Esq. (Pro Hac Vice)
James R. Bliss, Esq. (Pro Hac Vice)
Nicholas A. Bassett, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

_Counsel to the Official Committee of Unsecured Creditors_

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

--------------------------------------------------------------------- x

In re:                    :

THE FINANCIAL OVERSIGHT AND    :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,    :    Title III

      as representative of        :    Case No. 17-BK-3283 (LTS)

THE COMMONWEALTH OF PUERTO RICO, *et al.*,    :    (Jointly Administered)

      Debtors.[1]          :

--------------------------------------------------------------------- x

## DECLARATION OF LUC A. DESPINS IN SUPPORT OF SEVENTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM JUNE 1, 2019 <u>THROUGH SEPTEMBER 30, 2019</u>

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), I, Luc A. Despins, declare that the following is true to the best of my knowledge, information, and belief:

1. I am an attorney admitted and in good standing to practice in the State of New York. I am a partner with the law firm of Paul Hastings LLP ("<u>Paul Hastings</u>"), located at, among other offices worldwide, 200 Park Avenue, New York, New York 10166, and am duly authorized to make this Declaration on behalf of Paul Hastings. I make this Declaration in

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

support of the *Seventh Interim Application of Paul Hastings LLP, Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for the Period from June 1, 2019 through September 30, 2019* (the "Application").[2]

2.      The facts set forth in this Declaration are based upon my personal knowledge, discussions with other Paul Hastings attorneys, and the firm's client/matter records that were reviewed by me or other Paul Hastings attorneys acting under my supervision and direction.

3.      I hereby certify that I have read the Application and, to the best of my knowledge, information, and belief, formed after reasonable inquiry, (a) the compensation and reimbursement of expenses sought in the Application conform with the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines, and the Local Rules, and (b) the compensation and reimbursement of expenses are billed at rates no less favorable to the Debtors than those customarily employed by Paul Hastings generally.

4.      Paul Hastings provides the following response to the request for information set forth in the U.S. Trustee Guidelines:

Question:      Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees, or terms for services pertaining to this engagement that were provided during the Application Period?

Response:      Yes. As a courtesy to the Committee and based on circumstances unique to the Title III Cases, during the Application Period, Paul Hastings agreed to the following voluntary reductions / write-offs:

Paul Hastings waived fees totaling $31,040.00, as follows:

(i)      For services rendered during the Application Period, we reduced the hourly rate of G. Alexander Bongartz from $1,250.00 to $1,200.00, resulting in a reduction of $31,040.00 in fees.

In addition, Paul Hastings waived expenses totaling $4,947.60, as follows:

---

[2]      Capitalized terms used but not defined herein have the meanings set forth in the Application.

(i)     We waived all charges with respect to late-work, in-office meals (even though the Fee Examiner guidelines permit in-office meal charges of up to $20.00 per meal). At a $20.00 cap per meal, this translates into a total write-off of $1,668.62;

(ii)    We capped car service charges at $100.00 resulting in a write-off of $108.98; and

(iii)   To comply with Local Rule 2016-1(b)(1), we reduced color photocopy charges by 50% from 50 cents per page to 25 cents per page (even though the Fee Examiner's guidelines permit color photocopy charges of 50 cents per page), resulting in a write-off of $3,170.00.

The aggregate amount of the foregoing reductions/write-offs is $35,987.60.

Question:    If the fees sought in this application as compared to the fees budgeted for the Application Period are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    Not applicable.

Question:    Have any of the professionals included in this application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

Question:    Does the application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees.

Response:    The Application includes approximately 43.7 hours and associated fees of approximately $50,990.50 related to preparing, reviewing, and revising Paul Hastings' fee statements (which translates into an average of less than 11 hours for each of the four monthly fee statements prepared during the Application Period).

Question:    Does this application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:    No.

<u>Question:</u>    If the application includes any rate increases since retention: (i) Did your
client review and approve those rate increases in advance? (ii) Did your
client agree when retaining the law firm to accept all future rate increases?
If not, did you inform your client that they need not agree to modified
rates or terms in order to have you continue the representation consistent
with ABA Formal Ethics Opinion 11-458?

<u>Response:</u>    As is customary, Paul Hastings adjusts its hourly rates periodically based
upon (i) the advancing seniority of its professionals and paraprofessionals,
(ii) the current market for legal services, (iii) the rates charged for
comparable non-bankruptcy services, and (iv) the firm's analysis of the
hourly rates being charged by professionals in other law firms.  Effective
January 1, 2019, with the Committee's approval, Paul Hastings adjusted
its hourly rates in accordance with the Retention Order, the Retention
Application, and the *Declaration of Mark Richard* in support of the
Retention Application.

5.      I declare under penalty of perjury that, to the best of my knowledge and after

reasonable inquiry, the foregoing is true and correct.

Executed this 15th day of November, 2019

                                   */s/ Luc A. Despins*
                                   Luc A. Despins