**Hearing Date**: March 4, 2020 at 8:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: December 5, 2019 at 3:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- x

In re:                                        :
                                              :
THE FINANCIAL OVERSIGHT AND                   : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,             : Title III
                                              :
As representative of                          : Case No. 17-BK-3283 (LTS)
                                              :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,    : (Jointly Administered)
                                              :
Debtors.[1]                                   :
---------------------------------------------------------------------- x

## SEVENTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES <u>FOR THE PERIOD FROM JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019</u>

### SUMMARY COVER SHEET

Name of Applicant: <u>Casillas, Santiago & Torres, LLC</u>

Authorized to Provide Professional Services to: <u>Official Committee of Unsecured Creditors of all Title III Debtors (other than PBA and COFINA) (the "Committee")</u>

Date of retention: <u>July 20, 2017</u>

Period for which compensation and reimbursement is sought: <u>June 1, 2019 through and including September 30, 2019 (the "Application Period")</u>

Amount of interim compensation sought as actual, reasonable, and necessary: <u>$669,949.50</u>

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Amount of interim expense reimbursement sought as actual, reasonable, and necessary: $12,929.59

Are your fee or expense totals different from the sum of previously served monthly statements? _ Yes X No

Blended rate in this application for all attorneys: $237.83/hour

Blended rate in this application for all timekeepers: $235.50/hour

This is an *interim* application.

The total time expended for fee application preparation for the Interim Fee Period is approximately 20.50 hours, and the corresponding compensation requested is approximately $5,535.00.

**MONTHLY FEE REQUESTS TO DATE**

| Date Submitted | Monthly Period Covered | Fees | Requested Fees (90%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 10% Fee Holdback |
|---|---|---|---|---|---|---|---|
| **First Interim Fee Period (July 20, 2017 through August 31, 2017)** | | | | | | | |
| 12/15/2017 | 07/21/2017 - 08/31/2017 | $169,523.00 | $152,570.70 | $6,320.62 | $173,440.00 | $6,320.62 | $0.00 |
| **Total** | | **$169,523.00** | **$152,570.70** | **$6,320.62** | **$173,440.00** | **$6,320.62** | **$0.00** |
| **Second Interim Fee Period (September 1, 2017 through January 31, 2018)** | | | | | | | |
| 03/19/2018 | 09/01/2017 - 01/31/2018 | $444,580.00 | $400,122.00 | $21,160.13 | $444,580.00 | $21,160.13 | $0.00 |
| **Total** | | **$444,580.00** | **$400,122.00** | **$21,160.13** | **$444,580.00** | **$21,160.13** | **$0.00** |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | | |
| 6/25/2018 | 02/01/2018 - 02/28/2018 | $93,937.50 | $84,543.75 | $1,172.10 | $93,937.50 | $1,172.10 | $0.00 |
| 6/25/2018 | 03/01/2018 - 03/31/2018 | $75,088.00 | $67,579.20 | $4,782.51 | $75,088.00 | $4,782.51 | $0.00 |

| 7/18/2018 | 04/01/2018 - 05/31/2018 | $125,095.00 | $112,585.50 | $6,097.48 | $125,095.00 | $6,097.48 | $0.00 |
|---|---|---|---|---|---|---|---|
| **Total** | | **$294,120.50** | **$264,708.45** | **$12,052.09** | **$294,120.50** | **$12,052.09** | **$0.00** |
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | | |
| 8/27/2018 | 06/01/2018 - 06/30/2018 | $31,792.00 | $28,612.80 | $983.12 | $31,792.00 | $983.12 | $0.00 |
| 10/8/2018 | 07/01/2018 - 07/31/2018 | $55,587.50 | $50,028.75 | $6,831.08 | $55,587.50 | $6,831.08 | $0.00 |
| 11/16/2018 | 08/01/2018 - 09/30/2018 | $163,382.50 | $147,044.25 | $4,654.42 | $163,267.50 | $4,654.42 | $0.00 |
| **Total** | | **$250,762.00** | **$225,685.80** | **$12,468.62** | **$250,647.00** | **$12,468.62** | **$0.00** |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | | |
| 12/21/2018 | 10/01/2018 - 10/31/2018 | $43,871.50 | $39,484.35 | $1,109.10 | $43,871.50 | $1,109.10 | $0.00 |
| 1/22/2019 | 11/01/2018 - 11/30/2018 | $31,164.00 | $28,047.60 | $3,465.35 | $31,164.00 | $3,465.35 | $0.00 |
| 2/26/2019 | 12/01/2018 - 12/31/2018 | $73,432.50 | $66,089.25 | $1,046.62 | $73,432.50 | $1,046.62 | $0.00 |
| 3/15/2019 | 1/01/2019 - 1/31/2019 | $88,809.00 | $79,928.10 | $1,069.00 | $87,704.00 | $1,069.00 | $0.00 |
| **Total** | | **$237,277.00** | **$213,549.30** | **$6,690.07** | **$236,172.00** | **$6,690.07** | **$0.00** |
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | | |
| 5/15/2019 | 2/01/2019 - 2/28/2019 | $93,967.00 | $84,570.30 | $4,332.02 | $92,930.00 | $4,332.02 | $0.00 |
| 6/4/2019 | 3/01/2019 - 3/31/2019 | $100,412.00 | $90,370.80 | $9,970.50 | $100,412.00 | $9,970.50 | $0.00 |
| 7/3/2019 | 4/01/2019 - 4/30/2019 | $143,421.00 | $129,078.90 | $1,046.31 | $141,534.00 | $1,046.31 | $0.00 |
| 7/15/2019 | 5/01/2019 - 5/31/2019 | $160,296.50 | $144,266.85 | $970.49 | $160,296.50 | $970.49 | $0.00 |
| **Total** | | **$498,096.50** | **$448,286.85** | **$16,319.32** | **$495,172.50** | **$16,319.32** | **$0.00** |

| Seventh Interim Fee Period (June 1, 2019 through September 30, 2019) | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8/22/2019 | 6/01/2019 - 6/30/2019 | $184,904.50 | $166,414.05 | $4,880.90 | $166,414.05 | $4,880.90 | $18,490.45 |
| 9/27/2019 | 7/01/2019 - 7/31/2019 | $174,819.50 | $157,337.55 | $4,727.49 | $157,337.55 | $4,727.49 | $17,481.95 |
| 11/5/2019 | 8/01/2019 - 8/31/2019 | $142,114.00 | $127,902.60 | $892.94 | $0.00 | $0.00 | $14,211.40 |
| 11/14/2019 | 9/01/2019 - 9/30/2019 | $168,111.50 | $151,300.35 | $2,428.26 | $0.00 | $0.00 | $16,811.15 |
| **Total** | | **$669,949.50** | **$602,954.55** | **$12,929.59** | **$323,751.60** | **$9,608.39** | **$66,994.95** |

### PRIOR INTERIM FEE APPLICATIONS

| Period | | Requested | | Approved | |
|---|---|---|---|---|---|
| Date [Docket No.] | Interim Fee Period ("IFP") Covered | Fees | Expenses | Fees | Expenses |
| 12/15/2017 [Docket No. 2079] | 07/21/2017 - 08/31/2017 | $169,523.00 | $6,320.62 | $173,440.00 | $6,320.62 |
| 03/19/2018 [Docket No. 2757] | 09/01/2017 - 01/31/2018 | $444,580.00 | $21,160.13 | $444,580.00 | $21,160.13 |
| 07/16/2018 [Docket No. 3562] | 02/01/2018 - 05/31/2018 | $294,120.50 | $12,052.09 | $294,120.50 | $12,052.09 |
| 11/16/2018 [Docket No. 4329] | 06/01/2018 - 09/30/2018 | $250,762.00 | $12,468.62 | $250,647.00 | $12,468.62 |
| 03/18/2019 [Docket No. 5818] | 10/01/2018 - 01/31/2019 | $237,277.00 | $6,690.07 | $236,172.00 | $6,690.07 |
| 07/15/2019 [Docket No. 8011] | 02/01/2019 - 05/31/2019 | $498,096.50 | $16,319.32 | $495,172.50 | $16,319.32 |
| **Total fees and expenses approved by interim orders to date:** | | | | **$1,894,132.00** | **$75,010.85** |

Number of professionals with time included in this application: <u>18</u>

Number of professionals billing fewer than 15 hours to the case in this application: <u>3</u>

If applicable, number of professionals in this application not included in a staffing plan approved by the client: <u>N/A</u>

If applicable, difference between fees budgeted and compensation sought for this period: <u>N/A</u>

Are any timekeeper's hourly rates higher than those charged and approved upon retention: <u>No</u>

**Hearing Date**: March 4, 2019 at 8:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: December 5, 2019 at 3:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x

| | |
|---|---|
| In re: | : |
| | : |
| THE FINANCIAL OVERSIGHT AND | : PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : Title III |
| | : |
| as representative of | : Case No. 17-BK-3283 (LTS) |
| | : |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | : (Jointly Administered) |
| | : |
| Debtors.[1] | : |

------------------------------------------------------------------------ x

## SEVENTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019

## TABLE OF CONTENTS

Preliminary Statement..................................................................................................4

Background ................................................................................................................11

Compensation and Reimbursement Request .............................................................15

Summary of Services ................................................................................................18
    General (Matter ID: 396-00002)......................................................19
    Communications with Creditors/Website (other than Committee Members)
    (Matter ID: 396-00004)....................................................22
    PREPA (Matter ID: 396-00006) .......................................23
    ERS (Matter ID: 396-00008) ...........................................25
    Other Adversary Proceedings (Matter ID: 396-00009) ........................26
    GO Bond Debt Issues (Matter ID: 396-00011)....................................27

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

PBAPR (Matter ID: 396-00014)............................................................27
Fee Application (Matter ID: 396-00015)..............................................27
Commonwealth Claims Review (Matter ID: 396-00017) ....................28
Avoidance Actions (Matter ID: 396-00018)........................................30

Attendance at Hearings ..........................................................................34

Report on Matters Jointly Pursued by Oversight Board and Committee......................................35

Actual and Necessary Disbursements ....................................................37

Requested Compensation Should be Allowed .......................................38

Notice .....................................................................................................40

Conclusion ..............................................................................................41

## SUPPORTING DECLARATION, EXHIBITS AND SCHEDULE

**Supporting Declaration of Juan J. Casillas-Ayala, Esq.**

**Exhibits**

A.  Customary and Comparable Compensation Disclosures with Fee Applications

B.  Summary of Timekeepers Included in this Application for Fee Period

C.  Budgets and Staffing Plans for Application Period

      C-1.    Budgets

      C-2.    Staffing Plans

D.  Summary of Compensation Requested by Project Category as Compared to Budget

      D-1.    Summary of Compensation Requested by Project Category as Compared to Budget

            Further Breakdown of Compensation Requested by Project Category and by Matter

      D-2.    Summary of Expenses by Category

E.  Breakdown of Compensation and Expense Requested by Debtor

F.  List of Professionals by Matter

G.  Monthly Statements Covered in Application

**Schedule**

Proposed Order

**To the Honorable United States District Judge Laura Taylor Swain:**

Casillas, Santiago & Torres, LLC ("CST Law"), Local Counsel to the Official Committee of Unsecured Creditors (the "Committee"), for its seventh application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA")[2], section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by Section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by CST Law for the period from June 1, 2019 through and including September 30, 2019 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.    Throughout the Application Period, CST Law was instrumental in assisting the Committee and Paul Hastings addressing multiple matters that were critical to the interests of the Debtors and their creditors.  Most notably, CST Law aided Paul Hastings in the litigation of the motion to challenge the approval of PREPA's restructuring support agreement (the "PREPA RSA Motion").  CST Law was engaged in efforts researching and analyzing numerous legal and factual issues, discovery (through the production of documents and depositions of key witnesses), and assisted in the litigation of multiple discovery disputes.  As discussed in more detail below, the Committee believes that opposing the PREPA RSA is critical for the PREPA Title III case and PREPA's general unsecured creditors.  The PREPA RSA would provide holders of approximately

---

[2]    References to PROMESA are references to 48 U.S.C. §§2101 *et. seq.*

$8.5 billion in non-recourse bond claims with eventual payments of more than $20 billion over the course of the next 47 years (and possibly longer). Indeed, the litigation of the PREPA RSA Motion is the single most important event in PREPA's Title III case.

2.      Part of the efforts during this Application period resulted in the filing, in October 2019, of the Committee's 135-page objection to the PREPA RSA Motion, which comprehensively sets forth the Committee's arguments in opposition to the approval of the PREPA RSA. Among other things, the objection argues that:

- the RSA is far too generous to bondholders given the weakness of bondholders' legal clams;

- the various benefits alleged to flow from the RSA are so speculative as to be illusory;

- the proposed settlement is not in the interests of PREPA's creditors;

- the RSA constitutes an impermissible *sub rosa* plan;

- the proposed settlement contains a number of terms and conditions that are illegal and/or not in PREPA's best interests; and

- the record shows that the Oversight Board, AAFAF, and PREPA (together, the "Government Parties") failed to exercise due care in considering and entering into the proposed settlement.

A hearing on the PREPA RSA Motion is currently scheduled for January 14, 2020.

3.      Another significant event that occurred during the Application Period was the FOMB's filing, in June 2019, of a plan support agreement between the Oversight Board and certain holders of pre-2012 GO and PBA bonds (the "Bondholder PSA"). Subsequently, on September 27, 2019, the Oversight Board filed a proposed plan of adjustment (the "Proposed Plan") based on the Bondholder PSA. These documents raised a number of serious issues to confront. On one hand, they were the first formal indications of the Oversight Board's intentions with respect to the treatment of the Commonwealth's general unsecured creditors—and these indications were

5

extremely negative.  For example, in June 2019, the Oversight Board revealed that the Bondholder

PSA contemplated a blended recovery rate of 9% for creditors other than GO and PBA

bondholders,[3] including general unsecured creditors, and the Committee understood at the time

that the recovery rate for general unsecured creditors would be even lower, around 1%.  The

Committee's concerns in this regard were substantiated upon the filing of the Proposed Plan and

related disclosure statement [Docket No. 8766] (the "Disclosure Statement"), which contemplate

a mere 1.8% recovery for general unsecured creditors.[4]  The insignificant recoveries for general

unsecured creditors under the Proposed Plan stand in sharp contrast to the generous recoveries

available to bondholders.  For example, holders of pre-2012 PBA and GO bonds will receive a

base recovery of 64.1% on their claims plus additional distributions that may increase their

recoveries up to cap of 89.4%.[5]

4.      In addition, the Bondholder PSA required the Oversight Board to seek a stay of all

litigation in connection with the challenges brought by the Committee against the claims of GO

and PBA bondholders based on the issuance of such bonds in violation of the Constitutional Debt

Limit, as well as related litigation.  As such, the Oversight Board proposed to (i) stay the entirety

of this litigation pending confirmation of the Proposed Plan, (ii) resolve the Committee's

challenges to certain 2011 GO bonds and PBA Bonds held by PSA-supporting creditors pursuant

to the Proposed Plan (on favorable terms to bondholders); and (iii) litigate the challenge to 2012-

2014 GO bonds after confirmation.   The Committee was strongly opposed to the indefinite stay

of litigation proposed by the Oversight Board, and CST Law assisted Paul Hastings in the

preparation of the Committee's objection to the Oversight Board's proposal [Docket No. 7899]

---

[3]    *See* Ex. B to the Stay Objection (as defined below), at 6.

[4]    Disclosure Statement, at 13.

[5]    *Id.* at 12.

(the "Stay Objection").  Among other things, the Stay Objection pointed out that that the Oversight Board's stay proposal could lead to a scenario in which all GO and PBA bonds would be protected from invalidation, even if billions of dollars of such bonds have been issued in violation of the constitutional debt service limit.  Subsequently, the Court issued its July 24, 2019 order temporarily staying of major bond-related litigation (with the exception of PREPA matters) and requiring mandatory mediation of issues related to the sequencing of litigation and the Proposed Plan (the "Stay Order").

5.      Additionally, in its pursue of efficiencies, CST, the Committee's local counsel, represents the Committee with respect to the "garden-variety" avoidance actions initiated against vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387] seeking to avoid certain fraudulent transfers made to fuel oil suppliers of PREPA and related parties.

6.      CST is counsel for the UCC and serves as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses. In connection with the Informal Resolution Process, CST has worked closely with DiCicco Gulman and Company LLC ("DGC"), the financial advisory firm to the Special Claims Committee, in the gathering of information and interfacing with over 170 vendors and their counsel on a daily basis and analyzing select documents and data submitted by vendors and counsel, while simultaneously responding to related communications and requests from vendors and their counsel. Additionally, CST has collaborated and worked closely with Brown Rudnick, counsel for the Special Claims

Committee, with analysis of local law matters pertaining to the Avoidance Actions, as requested. Paul Hastings and Zolfo Cooper provide limited assistance in matters related to the analysis of the data submitted by vendors as part of the Informal Resolution Process in order to recommend whether to pursue or dismiss the multiple garden variety avoidance actions as part of the Informal Resolution Process.

7.      All the while, CST Law has assisted Paul Hastings in advising the Committee on all issues bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to protect their rights, including by:

(i)     analyzing the nature and extent of the unsecured claims pool, including litigation claims, and filing a limited objection to the Oversight Board's omnibus claim objection procedures motion to protect the interests of unsecured creditors;

(ii)    advocating for an appropriate alternative dispute resolution ("ADR") process for the allowance of claims, and filing a successful limited objection to the Oversight Board's motion for ADR procedures in order to suggest improvements to the Oversight Board's proposal;

(iii)   managing the notice of participation process in connection with the objection to the 2012-2014 GO bonds (the "2012-2014 GO Claim Objection") and handling other matters related to challenges to GO and PBA bond claims (together, with the 2012-2014 GO Claim Objection, the "GO Claim Objections");

(iv)    analyzing issues in connection with the First Circuit's February 15, 2019 decision in the *Aurelius* appeal and filing pleadings in the Supreme Court in connection with the Supreme Court's review of same;

(v)     successfully formulating, together with other parties, agreed-upon revised procedures in connection with the objections to ERS bond claims on the grounds that the ERS bonds were issued *ultra vires* (the "ERS Claim Objections");

(vi)    continuing to research a variety of issues related to confirmation of a Commonwealth plan of adjustment in connection with the formulation of plan proposals acceptable to the Committee;

(vii)    maintaining the Committee's website as well as distributing informational emails to unsecured creditors; and

(viii)   monitoring pleadings filed and orders entered in the Title III cases and related adversary proceedings (including, where appropriate, filing objections).

8.      CST Law has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved.  For example, the work performed by CST Law was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task.  Moreover, whenever possible, CST Law sought to minimize the costs of CST Law' services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico law to local counsel.  In addition, a small core group of CST Law attorneys was utilized for the vast majority of the work in these Title III cases to minimize the costs of intra-CST Law communication and education about the cases.

9.      Notably, as a general matter, just one CST attorney attended the various hearings held during the Application Period, thereby minimizing the time billed on these hearings.  Likewise, generally, CST professionals do not travel for Court appearances outside of PR only though the remote video-conference service in San Juan.

10.     In addition, as further detailed below, CST Law along with Paul Hastings has taken numerous steps to provide services in the most efficient manner possible in connection with the adversary proceedings in which the Committee is acting as co-plaintiff with the Oversight Board or the Special Claims Committee.  For example, the co-plaintiffs have sought, and obtained, temporary stays of numerous of these adversary proceedings, while the Committee is represented in the garden-variety avoidance actions by its local counsel, and in certain other litigation by

special litigation counsel, Genovese, Joblove & Battista, P.A. ("GJB"). As discussed below, the Committee filed this motion because (i) it was concerned that the Oversight Board would be vulnerable to having its lawsuits later declared void based on the First Circuit's *de facto* officer ruling in its *Aurelius* decision; and (ii) the Oversight Board had taken the position that the Lien Challenge would not be jointly prosecuted by the Oversight Board and Committee, but instead by the Oversight Board alone (and, later, by the Oversight Board and AAFAF).

11.     CST Law respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases.  The results obtained to date have benefited not only the Committee but also the Debtors and their creditors.  Accordingly, in light of the nature and complexity of these Title III cases, CST Law's charges for professional services performed and expenses incurred are reasonable under applicable standards.  For all these reasons, CST Law respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

12.     This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines").  To the extent necessary, CST Law requests a waiver for cause shown of any requirements not met by this Application.[6]

---

[6]     The Committee and CST Law reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

13.     In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of CST Law's timekeepers included in this Application.

- Exhibit C-1 contains the budgets for CST Law's services during the application period

- Exhibit C-2 contains the staffing plans for CST Law's services during the application period

- Exhibit D-1 contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the application period, and (b) a further breakdown of the compensation requested by project category and matter number.

- Exhibit D-2 contains a summary of the expenses requested by project. An itemized schedule of all such expenses is included in CST Law's monthly statements.

- Exhibit E contains a breakdown of compensation and expenses requested by Debtor.

- Exhibit F contains a list of the professionals providing services during the application period by matter.

- Exhibit G includes the monthly fee statements covered in this application. Attached is copy of the monthly statements for CST Law's services during the Application Period, which include detailed time records and narrative descriptions of the services rendered by each timekeeper.

- Schedule 1 includes the proposed order approving this application.

## BACKGROUND

14.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304 (a) of PROMESA (the "Commonwealth Title III Case"). Thereafter, the Oversight Board commenced a title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS Title III Case"), the Puerto Rico Highways and Transportation Authority ("HTA Title III Case"), and the Puerto Rico Electric Power Authority

("PREPA Title III Case") (and together with the Commonwealth Title III Case, the "Title III
Cases").[7] By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No.
1417], the Court approved the joint administration of the Title III Cases.

15.     On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico
(the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured Creditors*
[Docket No. 338]. On July 21, 2017, the Committee selected CST Law as local counsel to the
Committee.

16.     On August 4, 2017, the Committee filed an application to retain and employ CST
Law, effective July 21, 2017 [Docket No. 884] (the "Retention Application"). By order of this
Court entered October 6, 2017 [Docket No. 1414] (the "Retention Order"), incorporated herein
by this reference, CST Law's retention as Local Counsel to the Committee was approved effective
as of July 21, 2017.

17.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim
Compensation and Reimbursement of Expenses of Professionals* (as amended, the Interim
Compensation Order").[8]

18.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of
Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the
Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and
the PREPA Title III Case. CST's retention extends to the representation of the Committee as the
official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III
Case.

---

[7]     Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III
Case.

[8]     The Interim Compensation Order was amended on November 8, 2017, to reflect certain changes requested by
the Fee Examiner.

19.     The Retention Order authorized CST Law to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to Sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "pursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA Section 301(a), the fees and expenses of CST Law under this Order shall be an administrative expense." In addition, as provided in the Retention Order, the Oversight Board has consented to the Debtors' payment of CST Law allowed fees and expenses.

20.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing A Fee Examiner and Related Relief* (the "Fee Examiner Order") [Docket No. 1416]. The Court appointed Brady Williamson as the Fee Examiner in the Title III Cases.

21.     On December 15, 2017, CST Law filed its first interim fee application with respect to the period from July 21, 2017 through August 31, 2017 [Docket No. 2079] (the "First Interim Fee Application"). In accordance with the Interim Compensation Order, CST Law received a preliminary report from the Fee Examiner with respect to the First Interim Fee Application. On March 7, 2018, the court approved the First Interim Fee Application.

22.     On March 19, 2018, CST Law filed its second interim fee application with respect to the period from September 1, 2017 through January 31, 2018 [Docket No. 2757] (the "Second Interim Fee Application"). In accordance with the Interim Compensation Order, CST Law received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application. On March 7, 2018, the court approved the Second Interim Fee Application.

23.     On June 6, 2018, the Court enter the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the <u>Second Interim Compensation Order</u>").

24.     On July 16, 2018, CST filed its third interim fee application, covering the period from February 1, 2018 through May 31, 2018 [Docket No. 3562]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST Law received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. On March 14, 2019, the Court approved the Third Interim Fee Application.

25.     On November 16, 2018, CST filed its fourth interim fee application, covering the period from June 1, 2018 through September 30, 2018 [Docket No. 4329]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST Law received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, CST Law agreed to certain minimal adjustments in its requested fees and expenses.[9] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

26.     On March 18, 2019, CST filed its fifth interim fee application, covering the period from October 1, 2018 through January 31, 2019 [Docket No. 5818]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST Law received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, CST Law agreed

---

[9]     The agreed-upon adjustment consisted of a fee reduction in the amount of $115.00.

to certain minimal adjustments in its requested fees and expenses.[10] On June 26, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

27.     On July 15, 2019, CST filed its sixth interim fee application, covering the period from February 1, 2019 through May 31, 2019 [Docket No. 8011]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST Law received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application. Per the Fee Examiner's request, CST Law agreed to certain minimal adjustments in its requested fees and expenses.[11] On October 29, 2019, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

28.     This is CST Law's seventh interim fee application, covering the period from June 1, 2019 through September 30, 2019. All services for which compensation is requested were performed for or on behalf of the Committee.

COMPENSATION AND REIMBURSEMENT REQUEST

29.     By this Application, CST Law seeks from the Debtors (a) compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $669,949.50; and (b) expense reimbursements in the aggregate amount of $12,929.59. These amounts are allocated among the Commonwealth Title III Case, the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $546,290.50 | $9,567.96 | $555,858.46 |
| PREPA Title III Case | $103,413.00 | $3,361.63 | $106,774.63 |
| HTA Title III Case | $2,531.00 | $0.00 | $2,531.00 |

---

[10]   The agreed-upon adjustment consisted of a fee reduction in the amount of $1,105.00.

[11]   The agreed-upon adjustment consisted of a fee reduction in the amount of $2,924.00.

| ERS Title III Case | $17,715.00 | $0.00 | $17,715.00 |
|---|---|---|---|
| **Total** | **$669,949.50** | **$12,929.59** | **$682,879.09** |

30.     The Committee has approved the amounts requested by CST Law for services performed and expenses incurred in each of the monthly statements submitted that were or are hereby being submitted concurrently to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee, during the Application Period. All services for which compensation is requested herein were performed for or on behalf of the Committee. Moreover, as detailed on Exhibit D hereto, fees incurred by CST during the Application Period were well below the monthly budgets.

31.     As of today, CST Law has not been paid any amounts pertaining to its invoices for August and September 2019, for which it requests payment pursuant to this Fee Application.

32.     Also, to date, CST has received payments totaling $333,359.99 for services rendered during the Application Period excluding August and September 2019, which amount consists of $323,751.60 (representing 90% of the fees for services invoiced during the period of June 1, 2019 through July 31, 2019) and $9,608.39 (representing 100% of expenses invoiced for the same period). As of the date of this Application, the amount of $349,519.10 remains unpaid.

33.     Other than payments made in accordance with the Interim Compensation Order, CST has received no payments and no promises of payment from any source of services rendered during the Application Period.

34.     By this Application, CST Law requests payment of all outstanding fees and expenses for services rendered during the Application Period.

35.     There is no agreement or understanding between CST Law and any other person other than the attorneys, employees, and staff of CST Law, for the sharing of compensation to be received for services rendered in these cases.

36.     CST Law maintains computerized records, in the form of monthly statements, of the time spent by all of CST Law's attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by CST Law to bill its clients for services rendered, and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

37.     The fees charged by CST Law in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period. The rates CST Law charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates CST Law charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Moreover, when CST Law's professionals and paraprofessionals work on non-bankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in the Puerto Rico legal market.

38.     CST Law's rates are set at a level designed to fairly compensate CST Law for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expense. CST Law operates in the Puerto Rico legal services market in which rates are driven by multiple factors relating to the individual lawyer, their area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, CST Law set its rates for attorneys and paraprofessionals within the firm by reference to market information and market adjustments by firms considered to be industry peers. Based on this and the reviews of contemporaneous time records and fee applications filed in other cases, CST Law

17

endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

39.     CST Law's professional services during the Application Period required an aggregate expenditure of 2,844.80 recorded hours by CST Law's attorneys and paraprofessionals, broken down as follows: Partners (1,479.60 hours), Counsels (143.50 hours), Junior Partners (253.80 hours), Senior Associates (439.40 hours), Associates (482.10 hours), and Paraprofessionals (46.40 hours). During the Application Period, CST Law's billing rates for attorneys rendering services in this matter ranged from $170.00 to $270.00 per hour.

40.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed before the preparation of this Application, or CST Law has for any other reason not sought compensation or reimbursement with respect to such services or expenses, CST Law reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

## SUMMARY OF SERVICES

41.     During the Application Period, CST Law assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties. In addition, CST Law has prepared various motions, applications, proposed orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional services that are described below and in the monthly statements attached hereto as Exhibit F.[12] For ease of reference and transparency purposes, CST Law created several matter

---

[12]    The description of services in this Application is limited to those matters in which CST Law provided 5 or more hours of service during the Application Period.

numbers for its representation of the Committee. The matter numbers are divided by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
|-----------|-------------|
| 396-00002 | General |
| 396-00003 | COFINA Dispute Analysis |
| 396-00004 | Communications w/ Creditors/ Website (other than Committee Members) |
| 396-00005 | Plan Fiscal Analysis |
| 396-00006 | PREPA |
| 396-00007 | HTA |
| 396-00008 | ERS |
| 396-00009 | Other Adversary Proceedings |
| 396-00010 | Mediation |
| 396-00011 | GO Bond Debt Issues |
| 396-00012 | Document Review |
| 396-00013 | GDB |
| 396-00014 | PBAPR |
| 396-00015 | Fee Application |
| 396-00016 | Analysis of Kobre & Kim's Puerto Rico Debts Reports |
| 396-00017 | Commonwealth Claims Review |
| 396-00018 | Avoidance Actions |

## I.  General (Matter ID: 396-00002)

(a)  Case Administration (Task Code: B110)

Fees:   $4,611.50   Total Hours:   23.80

42.   During the Application Period, CST Law, along with Paul Hastings, continued to advise the Committee on general case administration. In order to efficiently track deadlines, organize documents, and manage work streams, CST Law maintained a global task list and case calendar, including a tracking chart for all adversary proceedings and non-Title III litigation. To minimize duplication of services, CST Law developed procedures for allocating responsibilities among various CST Law team members.

43.  In addition, during the Application Period, CST Law continued to implement interim and long-term strategies to maximize recoveries for general unsecured creditors and held internal team conference calls and occasional meetings to discuss the status of the Title III Cases and to manage work streams.

44.  Furthermore, along with Paul Hastings, CST Law worked to execute a variety of other tasks related to case administration including, among other things, translations, requests for transcripts of court proceedings, research and analysis of local law, and provide status reports of current events related to the legal issues litigated.

(b)  <u>Pleading Reviews (Task Code: B113)</u>

Fees:  $65,493.50  Total Hours:  257.00

45.  During the Application Period, CST Law reviewed various pleadings to be adequately prepared to provide services to the Committee. This in compliance with the applicable Rules of Professional Conduct.

(c)  <u>Meeting of and Communications with Creditors (Task Code: B150)</u>

Fees:  $5,504.00  Total Hours:  20.60

46.  During the Application Period, CST Law prepared various documents to keep the Committee apprised of relevant developments in the Title III Cases, related adversary proceedings, and the mediation process. Also, CST Law participated in various telephone conferences and communications with the Committee for the same purposes.

(d)  <u>Court Hearings (Task Code: B155)</u>

Fees:  $7,119.00  Total Hours:  27.70

47.  During the Application Period, CST Law attended as local counsel to all hearings that Paul Hastings attended. To minimize costs, only one CST Law attorney appeared in the

hearings accompanying Paul Hastings' attorneys. In certain instances, another CST Law attorney listened-in to parts of the hearing.

48.     In preparation for these hearings, CST Law also reviewed relevant issues raised in the parties' pleadings and prepared materials for the hearings.

(e)   Other Contested Matters (Task Code: B190)

Fees:       $17,070.00     Total Hours:   74.10

49.     During the Application Period, CST Law aided Paul Hastings in various matters including conducting research on various first-impression issues of Puerto Rico Law. Further, CST Law assisted Paul Hastings in the analysis and drafting of contesting pleadings filed in connection with a wide variety of matters: proposed plans of adjustment, special litigations procedures, matters before the Supreme Court of the United States, retention of professionals, stays, alternative dispute resolution and mediation procedures, Bonistas del Patio dispute, and discovery objections. Specifically, CST Law assisted Paul Hastings in the legal analysis associated to the plan support agreements ("PSAs") entered into by the Oversight Board with certain creditors, and Oversight Board's Proposed Plan and Disclosure Statement with respect to the Commonwealth, ERS, and PBA. For example, CST Law's extensive research was instrumental in developing the Committee's strategy in these matters.

(f)   General Litigation (Task Code: B191)

Fees:       $22,697.00       Total Hours:   88.10

50.     During the Application Period, CST Law aided Paul Hastings in various tasks, such as research and analysis of legal issues in connection with claims objections, procedures for litigations and settlements, Committee's Section 926 motion, discovery disputes, negotiations of stipulations, PRIFA Rum Tax bonds, GDB claim, prepetition liens, and those before the Supreme Court of the United States.

51.     Moreover, CST participated in communications and discussed strategy with Paul Hastings and the Committee's Special Litigation Counsel, Genovese, Joblove and Battista, P.A. (hereinafter "GJB") in the litigations against a number of financial institutions, where CST Law serves as co-counsel.

(g)    Claims Administration and Objections (Task Code: B310)

Fees:        $2,109.00    Total Hours:   8.70

52.     During the Application Period, CST Law attorneys partook in the assessment of claims filed against Debtors, and, as part of due diligence, assisted Paul Hastings attorneys with the objection procedures litigation and the complex analysis of the treatment of these claims.

(h)    Plan and Disclosure Statement (Task Code: B320)

Fees:        $1,994.00    Total Hours:   7.80

53.     During the Application Period, CST Law analyzed Debtor's PSA, and assisted Paul Hastings developing the Committee's strategy in connection to the PSA's potential treatment of general unsecured claims.

## II.    Communications with Creditors / Website (other than Committee Members) (Matter ID: 396-00004)

(a)    Meetings of and Communications with Creditors (Task Code: B150)

Fees:        $1,388.50    Total Hours:   9.80

54.     During the Application Period, CST Law helped Paul Hastings prepare and regularly update, with the assistance of Prime Clerk and Kroma, the Committee's websites regarding the Title III Cases, including updates on hearings, recent Court orders, and other developments in the Title III Cases, such as the ADR process, PREPA RSA, Committee's objections to GO and PBA bonds, and POCs review. In this regard, CST Law drafted and regularly

updated the Spanish-language sections of the websites and translated to Spanish electronic communications directed to unsecured creditors.

### III.    PREPA (Matter ID 396-00006)

55.     The litigation of PREPA's restructuring support agreement ("PREPA RSA") is the most important matter in PREPA's Title III case. PREPA faces a strong comprehensive opposition from the Committee, beginning with arguing that the government parties failed to exercise due care while entering into the proposed agreement, followed by countering the illusory alleged benefits to Debtor and creditors, including the in-depth analysis of the illegal terms and conditions encompassed in the agreement that are not in the best interest of Debtor. The PREPA RSA is an unprecedented and highly complex transaction that raises a multitude of legal and factual issues requiring extensive research and analysis. This issue is paramount in the eventual resolution of this Title III case and for Puerto Rico.

56.     CST Law was instrumental in the extensive legal research and analysis that supported the lead taken by Paul Hastings attorneys during the general litigation and discovery-related litigation supporting the Committee's objection.

(a)     Case Administration (Task Code: B110)

Fees:        $1,119.00        Total Hours:    5.70

57.     CST Law assisted Paul Hastings attorneys with the translations of local law and caselaw required for the analysis of the many legal issues contested in this litigation. CST Law also provided assistance with the logistics involved in the discovery proceedings. Furthermore, CST Law provided intelligence data and status reports as to events related to the litigation.

(b)     Pleadings Review (Task Code: B113)

Fees:        $20,933.00        Total Hours:    79.90

58.     During the Application Period, reviewed various pleadings to be adequately prepared to provide a comprehensive legal analysis to the various matters litigated and to establish related strategy with Paul Hastings attorneys. This in compliance with the applicable Rules of Professional Conduct.

(c)     <u>Court Hearings (Task Code: B155)</u>

Fees:      $2,348.50      Total Hours:   9.80

59.     During the Application Period, CST Law attended as local counsel to all hearings that Paul Hastings attended. To minimize costs, only one CST Law attorney appeared in the hearings accompanying Paul Hastings' attorneys. In certain instances, another CST Law attorney listened-in to parts of the hearing. CST Law also provided assistance with preparation of materials for appearance at these hearings.

(d)     <u>Other Contested Matters (Task Code: B190)</u>

Fees:      $27,441.00      Total Hours:   125.40

60.     During the Application Period, CST Law was heavily involved with the discovery matters of the litigation. Specifically, contentions to the discovery requests and procedural matters. CST Law also assisted Paul Hastings attorneys with the first-level document review of production related to the PREPA RSA discovery.

61.     Furthermore, CST Law collaborated with GJB in the adversary proceedings related to lien challenges and those with the fuel line lenders. During the application period, the joint prosecution agreement of the causes of action against the fuel line lenders was finalized and the claims were asserted. CST Law aided with legal analysis and translations of local law and caselaw, in addition to providing feedback on the events related to the litigations.

(e)  <u>General Litigation (Task Code: B191)</u>

Fees:       $45,150.50     Total Hours:   200.50

62.     During the Application Period, CST Law continued to review and prepare summaries of pleadings filed and orders entered in the PREPA Title III Case, related adversary proceedings, and was mostly involved in the discovery litigation. Particularly, CST Law assisted reviewing documents propounded during discovery procedures, and provided analysis of the numerous and highly complex legal issues in connection with the PREPA RSA and the Trustee Appointment attempts. Furthermore, CST Law provided feedback to Paul Hastings and the Committee, in connection with the retention of experts.

(f)     Restructurings (Task Code: B420)

Fees:       $4,342.00     Total Hours:   16.60

63.     In order to understand more fully the course of restructuring discussions, CST Law reviewed documentation from the restructuring negotiations taking place between the Oversight Board, AAFAF, and certain PREPA bondholders. Once PREPA filed its proposed RSA, CST Law assisted Paul Hastings in the analysis of the executed PREPA RSA, revising materials to advise the Committee regarding key terms of the deal, researching their relevant complex legal issues, and analyzing the Rule 9019 settlement motion related thereto.

## IV.   ERS (Matter ID: 396-00008)

64.     During the application period, CST Law assisted Paul Hastings in connection with the Committee's omnibus objection to the claims of ERS bondholders. CST Law and Paul Hastings worked closely with counsel for the Retiree Committee, the Oversight Board, AAFAF, the Special Claims Committee and certain ERS bondholder groups, in the creation of the procedures to administer this litigation – the ERS Claim Objection Procedures.

(a) Case Administration (Task Code:  B110)

Fees:   $1,531.00      Total Hours:   8.80

65.      CST Law mostly handled the translation of the ERS Claim Objection Procedures forms to be proposed to the Court.

   (b) Pleadings Review (Task Code: B113)

Fees:   $6,261.50      Total Hours:   24.60

66.      During the Application Period, CST Law reviewed various pleadings to be adequately prepared to provide services to the Committee and assist Paul Hastings in its representation of the Committee. In particular, CST Law reviewed and/or prepared summaries of the Debtor's objections to claims, discovery-related disputes, and the status and rulings of adversary proceedings in order to define strategy and next steps.

   (c)      Other Contested Matters (Task Code: B190)

Fees:        $2,326.00      Total Hours:   10.80

67.      During the Fee Application, CST Law attorneys assisted Paul Hastings in the strategy in the litigation of the ERS Claims Objection Procedures, including the translation of forms and analyzing the rulings in adversary proceedings involving the matter.

   (d)      General Litigation (Task Code: B191)

Fees:        $6,473.00      Total Hours:   32.20

68.      As mentioned above, CST Law worked with Paul Hastings concerning the status and rulings of ERS-related adversary proceedings. CST Law also analyzed and provided feedback on the challenges to the stay initiated by certain ERS Creditors. However, CST Law's involvement was more palpable for the ERS Claims Objections Procedures motion and the treatment of its supplementing documents.

**V.      Other Adversary Proceedings (Matter ID: 396-00009)**

(a)    Other Contested Matters (Task Code: B190)

    Fees:    $4,770.00    Total Hours:  22.20

69.    During the Application Period, CST Law worked along Paul Hastings monitoring the progress of a number of local State cases, and advising the Committee as appropriate. Also, CST Law provided assistance in multiple adversary proceedings on contested matters.

## VI.    GO Bond Debt Issues (Matter ID: 396-00011)

(a)    Claims Administration and Objections (Task Code: B310)

    Fees:  $1,284.00    Total Hours:   5.20

70.    CST Law helped Paul Hastings with the legal analysis of caselaw and local law associated with the proposed revised procedures for the objections to GO bonds issued in 2011 and those issued in 2012-2014.

## VII.    PBAPR (Matter ID: 396-00014)

(a)    General Litigation (Task Code: B191)

    Fees:  $4,482.00    Total Hours:   16.60

71.    During the Application Period, CST Law continued to assist Paul Hastings in the analysis of legal issues related to the challenges to the PBA Bondholder Claims. As part of these efforts, CST Law conducted additional legal research and provided feedback to Paul Hastings attorneys on matters governed by local law.

## VIII.    Fee Application (Matter ID: 396-00015)

(a)    Fee / Employment Applications (Task Code: B160)

    Fees:  $4,610.00    Total Hours:   18.50

72.    Pursuant to the Fee Examiner's request, CST Law has established a matter to keep track of the time incurred per the Fee Examiner's requests. The time spent in the Fee Application

Period pertains to the time spent in compliance with the Fee Examiner's requests including communications with the examiner, and time to prepare the Sixth Interim Application.

    (b) <u>Budgeting  (Task Code:  B161)</u>

      Fees:      $1,988.00     Total Hours:  7.40

    73.    During the Application Period, CST Law prepared budgets pursuant to Fee Examiner's request and communicated with the Committee and the Examiner regarding the same.

**IX.   Commonwealth Claims Review (Matter ID: 396-00017)**

    74.    During the Application Period, CST Law worked closely with Paul Hastings in the review of claims filed against the Commonwealth by unsecured creditors. CST Law spent a considerable amount of time reviewing and analyzing the Proof of Claims (POCs) and the supporting evidence and documents submitted to gain a better understanding of the claims against the Commonwealth, the size and nature of the unsecured claims pool, conduct an assessment and determine the potential related exposure of the Commonwealth. The claims entailed aspects of – for example, tax, corporate, employment, constitutional (Takings Clause), complex wage class action lawsuits involving thousands of plaintiffs, civil rights and torts litigation in local courts and before the U.S. District Court for the District of Puerto Rico as well as administrative agencies, and domain laws, which made it necessary to integrate several members from CST Law to conduct the necessary review and analysis. Given the substantial aspects of local law and the fact that most documents reviewed were in the Spanish language, CST Law's participation and involvement in the review of the claims submitted against the Commonwealth by unsecured creditors was substantial. Further detailed review and in-depth analysis of the claims asserted against the Commonwealth – analysis which is ongoing as it pertains to various large claims and claims with judgments and/or stipulations, including securing documents which were not part of the POCs.

75.     Additionally, CST Law, along with Paul Hastings, reviewed and analyzed over 300 claims filed by creditors against PREPA in order to make an assessment regarding potential liability and exposure.

76.     In contrast to bondholders' claims, the unsecured pool is comprised of thousands of claims that are difficult to quantify because they are often based on pending litigation, many of which involved thousands of plaintiffs and commenced more than 30 years ago. As part of this claim review process, CST Law worked alongside Paul Hastings to analyze the viability of certain litigation claims against the Debtors. CST Law also continued to analyze complex issues related to treatment of claims, including, among others, the treatment of claims (which have been alleged by various creditor groups) based on violations of the United States Constitution, including whether such claims are subject to be discharged as part of a plan adjustment.

(a)     Asset Analysis and Recovery (Task Code: B120)

Fees:   $2,376.00     Total Hours:   11.80

77.     During the Application Period, CST Law assessed POCs and the supporting evidence and documents submitted to gain a better understanding of the claims against the Commonwealth, in order to determine the potential related exposure.

(b)     Avoidance Action Analysis (Task Code: B180)

Fees:   $18,955.00     Total Hours:   89.80

78.     CST Law's role also included a limited avoidance action analysis of asserted claims against Debtor, in order to assist Paul Hastings developing strategy and next steps.

(c)     Other Contested Matters (Task Code: B190)

Fees:   $59,822.00     Total Hours:   251.40

79.     During the Application Period, CST Law reviewed and analyzed hundreds of litigation-related POCs in order to supplement Paul Hastings' assessment on the viability of these claims against Debtors.

(d)     <u>General Litigation (Task Code: B191)</u>

Fees:   $59,931.00    Total Hours:   279.50

80.     CST Law conducted a comprehensive and in-depth revision of several POCs casefiles per the request of Paul Hastings team, to further assess the viability of these and drafted thorough memoranda to Paul Hastings with CST Law's assessment of said POCs.

(e)     <u>Non-Working Travel  (Task Code: B195)</u>

Fees:   $657.50        Total Hours:   7.40

(f)     <u>Claims Administration and Objections (Task Code: B310)</u>

Fees:   $106,516.00   Total Hours:   464.30

81.     During the Application Period, CST Law provided further in-depth analysis of hundreds of POCs, including performing legal research on some of the litigation-related claims asserted against the Commonwealth. Specifically, the detailed review of claims involving large or unspecified quantities of monies entailed securing relevant contracts and documents, to provide an assessment as to the viability of such claims. CST Law and Paul Hastings allocated amongst themselves 300 claims submitted against PREPA for review and analysis.

## X.     Avoidance Actions (Matter ID: 396-00018)

82.     After the Committee was included as co-plaintiff in the avoidance actions due to the *Aurelius* decision risk factor, during the sixth interim fee period CST Law was heavily involved in the litigation of garden-variety avoidance actions against hundreds of vendors of the Debtors, *i.e.* Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and Adv. Proc. Nos. 19-380

to 19-383. As local counsel to the Committee, CST Law interfaced with the defendants in these actions and provided counsel with respect to the Information Exchange Process as part of the Informal Resolution Protocol ("IR Protocol") developed closely with the law firm of Brown Rudnick ("BR"), counsel for the Special Claims Committee of the Oversight Board, to resolve the garden-variety avoidance actions. For the implementation of the Protocol, CST Law collaborated with BR in the creation of Information Exchange Request letters and was charged with serving said letters to over 170 vendors parties to adversary proceedings. CST also served as intermediary between the defendant vendors and the DiCicco, Gulman & Company ("DGC"), financial advisory firm to Plaintiffs in these actions, who collected and analyzed the data provided by vendors. CST and BR took DGC's analysis and counseled Plaintiffs as to how to proceed in the IR Protocol approved by the Court.

83.     During the seventh interim fee period, the Special Claims Committee and the Committee filed a motion [Docket No. 7325] seeking approval of, among other things, procedures establishing a framework for streamlined execution of settlement agreements and procedures and guidelines for resolving the garden variety avoidance actions through a voluntary informal information exchange request process, settlement and mediation process. The hearing on this motion was held on June 28, 2019 and on July 12, 2019, the Court entered an *Order Granting Omnibus Motion by the Financial Oversight and Management Board for Puerto Rico, acting by and through the Members of the Special Claims Committee and the Official Committee of Unsecured Creditors to (i) Establish Litigation Case Management Procedures and (ii) Establish Procedures for Approval of Settlements*. With the approval of the Protocol or Informal Resolution Process and the entry of the Order approving the Omnibus Motion, CST Law's involvement and participation in the Informal Resolution Process during the seventh interim fee period was

substantial, considering the amount of avoidance actions, the fact that the majority of the vendors engaged local and mainland counsel, the fact that many vendors were hesitant or had reservations regarding the Informal Resolution Process and, as such, multiple meetings and conferences were required, the fact that many vendors requested and pursued negotiation of non-disclosure agreements ("NDAs"), and the fact that many of the documents are naturally in Spanish which at times required substantial involvement by local counsel.

84.     On multiple occasions during the seventh interim fee period, counsel for CST Law working actively in the informal resolution process regularly met with counsel for vendors to discuss the scope of the information requested by co-plaintiffs in connection with the garden variety avoidance actions, to discuss related legal matters, to discuss the viability of modifying or tailoring the requests for information and to discuss and negotiate NDAs, among others. CST Law also participated in the discussions and determinations pertaining to the dismissal of various garden variety avoidance actions and worked closely with Brown Rudnick and DGC, while consulting related matters with Paul Hastings and Zolfo Cooper.

85.     During the referenced period CST Law also provided support to GJB in connection with "clawback actions" – adversary proceeding against various underwriters, law firms, accounting firms, and other parties involved in the issuance of securities and bonds. CST Law's role included providing translations, research and analysis of local law, and provide status reports on events related to the legal issues litigated.

(a)     Case Administration (Task Code: B110)

Fees:   $17,222.50    Total Hours:   70.10

86.     CST also spent a considerable amount of time reviewing the complaints filed against various vendors of the PROMESA Title III debtors, as well as reviewing tolling agreements

offered to vendors, while interfacing with vendors in connection with the Information Exchange

Process. CST Law developed and implemented strategies to streamline the workflow associated

with the administration of each action, including staff meetings, shared information matrix, and

the creation of databases.

      (b)    <u>Avoidance Action Analysis (Task Code: B180)</u>

          Fees:  $70,845.00    Total Hours:  288.10

87.    CST Law served as first-level review of the data produced by vendors. Specifically,

CST Law reviewed Spanish-language documents – *e.g.* service contracts, to assist DGC in their

assessment of the data. After DGC collected and analyzed the data provided by vendors, CST Law

spent considerable amount of time assessing DGC's recommendation in order to counsel Plaintiffs

as to how to proceed in the IR Protocol approved by the Court.

      (c)    <u>Other Contested Matters (Task Code: B190)</u>

          Fees:  $17,127.00    Total Hours:  68.30

88.    As part of CST Law's intermediary role between DGC and vendors, CST Law

worked with *pro se* vendors and vendors' counsel negotiating modifications to the information

requested pursuant to sampling recommendations from DGC. These modifications resulted in

concentrated data that facilitated and advanced its analysis.

      (d)    <u>General Litigation (Task Code: B191)</u>

          Fees:  $35,140.00    Total Hours:  135.20

89.    CST Law was heavily involved negotiating and working along vendor defendants

drafting NDAs in a per-case basis. Additionally, as part of the Informal Resolution Process, CST

Law interfaced with counsel for vendors in order to gather and analyze data submitted by them, as

need be, and in order to be in a position to make recommendations to the Committee regarding dismissals and/or whether to pursue litigation.

(e)    <u>Claims Administration and Objections (Task Code: B310)</u>

Fees:   $2,380.00    Total Hours:   10.10

90.    CST Law reviewed the complaints filed against various vendors of the PROMESA Title III debtors, as well as reviewing tolling agreements offered to vendors, while interfacing with vendors in connection with the Information Exchange Process. Among the tasks involved in the management of the litigation, some legal analysis was required to handle the evaluation of some vendors' counter-statements as to the nature of their particular payments.

*****

91.    The foregoing professional services were necessary and appropriate to the administration of the Title III Cases and were incurred upon in the best interests of the Committee, the Debtors, the creditors, and other parties in interest.

**ATTENDANCE AT HEARINGS**

92.    In accordance with the presumptions set forth in the Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications [Docket No. 3932] (the "Presumptive Standards Order"), CST Law provides the following summary regarding the attendance of CST professionals at Court hearings, as counsel to the Official Committee of Unsecured Creditors:

- June 12, 2019: The Omnibus hearing addressed, among other things, the motion filed by the Committee and the Oversight Board for a stay of certain adversary proceedings and an important status conference in connection with the litigation of the PREPA RSA Motion.  The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- June 28, 2019: Hearing on the Committee's motion for the appointment of the Committee as section 926 trustee for PREPA. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

34

- July 11, 2019:  This hearing was on the renewed status conference in connection with the litigation of the PREPA RSA Motion. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- July 24, 2019:  The Omnibus hearing addressed, among other matters, the Oversight Board's motion to stay certain proceedings and contested matters and the Oversight Board's motion for ADR procedures. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- July 30, 2019: Hearing on discovery disputes related to the PREPA RSA litigation. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- August 15, 2019:  Hearing on the Oversight Board's motion to dismiss the adversary proceeding. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- September 11, 2019: Hearing on the HTA/ERS Stipulation. Although usually attorney Casillas attends to the hearings, in this occasion the hearing was attended by attorney Llach. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

### REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

93.  As requested by the Fee Examiner, we set forth below the status of the various proceedings and motions jointly commenced by the Oversight Board or its Special Claims Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for the joint prosecution of causes of action or claims objections.

- Omnibus Objection of Oversight Board and Committee to Certain GO Bond Claims [Docket No. 4784] (the "Omnibus Claims Objection"): Per Judge Swain's order at the July 24, 2019 omnibus hearing (as amended), the Omnibus Claims Objection is stayed until December 31, 2019, while the parties work with the mediators on a process to resolve this objection and other plan-related matters.

- Adversary Proceeding against Underwriters, etc.:  GJB, the Committee's special litigation counsel, represents the Committee with respect to the adversary proceeding against various underwriters and other parties involved in the issuance of Commonwealth bonds [Adv. Proc. No. 19-280].  CST is the Committee's local counsel and represents the Committee, along with GJB.

- Garden-Variety Avoidance Actions:   CST, the Committee's local counsel, represents the Committee with respect to the "garden-variety" avoidance actions initiated against vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387] seeking to avoid certain fraudulent transfers made to fuel oil suppliers of PREPA and related parties.

- CST is counsel for the UCC and serves as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses. In connection with the Informal Resolution Process, CST has worked closely with DiCicco Gulman and Company LLC ("DGC"), the financial advisory firm to the Special Claims Committee, in the gathering of information and interfacing with over 170 vendors and their counsel on a daily basis and analyzing select documents and data submitted by vendors and counsel, while simultaneously responding to related communications and requests from vendors and their counsel. Additionally, CST has collaborated and worked closely with Brown Rudnick, counsel for the Special Claims Committee, with analysis of local law matters pertaining to the Avoidance Actions, as requested. Paul Hastings and Zolfo Cooper provide limited assistance in matters related to the analysis of the data submitted by vendors as part of the Informal Resolution Process in order to recommend whether to pursue or dismiss the multiple garden variety avoidance actions as part of the Informal Resolution Process.

- On July 12, 2019, the Court entered an "Order Granting Omnibus Motion by the Financial Oversight and Management Board for Puerto Rico, acting by and through the Members of the Special Claims Committee and the Official Committee of Unsecured Creditors to (i) Establish Litigation Case Management Procedures and (ii) Establish Procedures for Approval of Settlements." With the approval of the Informal Resolution Process and the entry of the Order approving the Omnibus Motion, CST's workload with respect to "garden-variety" avoidance actions, the information exchange request and the informal resolution process was significant during the interim period, considering the amount of avoidance actions (in excess of 170 assigned to the Firm), the fact that the majority of the vendors have engaged local and mainland counsel, the fact that many vendors negotiated NDAs prior to participating in the Informal Resolution Process and several others are still considering whether to participate or not in the Informal Resolution Process, and the fact that many of the documents are in Spanish and that some vendors do not speak English.

- Currently Stayed Co-Plaintiff Adversary Proceedings: By orders dated June 13, 2019, the Court stayed, until December 31, 2019, the following co-plaintiff adversary proceedings:

  o Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288];

  o Seven adversary proceedings challenging liens asserted by certain holders of GO bonds [Adv. Proc. No. 19-291, Adv. Proc. No. 19-292, Adv. Proc. No. 19-293, Adv. Proc. No. 19-294, Adv. Proc. No. 19-295, Adv. Proc. No. 19-296, and Adv. Proc. No. 19-297]; and

  o Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

In light of the stay orders, CST is not expending any significant time on these adversary proceedings, other than minor administrative and/or procedural work.

- ERS-Related Adversary Proceedings: On October 24, 2019, the Court approved a scheduling order regarding discovery and summary judgment briefing on the lien scope issues and *ultra vires* issues with respect to the ERS bonds. Accordingly, (a) the lien scope litigation, *i.e.*, Adv. Proc. No. 19-366 and Adv. Proc. No. 19-367 and (b) count I of the complaints seeking to recover fraudulent transfers made on account of ERS bonds that were not validly issued, *i.e.*, Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361, were unstayed.

  o Proskauer Rose LLP, counsel for the Oversight Board, has primary responsibility for the lien scope adversary proceedings. Accordingly, CST is not expending significant time on these adversary proceedings.

  o Moreover, GJB, the Committee's special litigation counsel, represents the Committee with respect to count I of the recovery actions. Thus, GJB is handling the *ultra vires* issues as they relate to count I of the recovery actions. CST, the Committee's local counsel, represents the Committee with respect to count I of the recovery actions and will assist GJB with the ultra vires issues as they elated to count I of the recover actions.

94. The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2, respectively.

## ACTUAL AND NECESSARY DISBURSEMENTS

95. As set forth in Exhibit D hereto, CST Law disbursed $12,929.59 as expenses incurred in providing professional services during the Application Period.

96. Because CST Law believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, CST Law encourages computerized legal research even though it is not a profit center for CST Law.

97. The time constraints imposed by the circumstances of the matters handled by CST Law during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee. These extraordinary services were essential to meet deadlines, timely respond to daily inquiries, and satisfy the Committee's needs and demands. Attorneys and other CST Law employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs in accordance with the Local Rules and firm policy. CST Law's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

98. CST Law believes the rates for charges incurred are the market rates that most law firms charge clients for such services. In addition, CST Law believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

99. Section 316 provides for the compensation of professionals. Specifically, section 316 provides that a Court may award a professional employed by a committee under Section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered… and reimbursement for

actual, necessary expenses." PROMESA §316(a). Section 316 of PROMESA also sets forth the

criteria for the award of such compensation and reimbursement:

> (a) In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> > (i) the time spent on such services;
> >
> > (ii) the rates charged for such services;
> >
> > (iii) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
> >
> > (iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> >
> > (v) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and
> >
> > (vi) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

PROMESA §316(c). Further, section 317 of PROMESA provides that "a committee… may

apply to the court not more than once every 120 days… for such compensation for services

rendered…"

100.    In the instant case, CST Law respectfully submits that the services for which it

seeks compensation in this Application were, at the time rendered, believed to be necessary for

and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to

protect, preserve, and maximize the value for unsecured creditors during the pendency of the

Title III Cases. The services rendered to the Committee were performed in an economic, effective,

and efficient manner commensurate with the complexity and importance of the issues involved.

The results obtained to date have benefited not only the Committee but also the Debtors and their stakeholders. Accordingly, the compensation requested herein is reasonable considering the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

101.    The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Whenever possible, CST Law sought to minimize the costs of CST Law's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. A small group of the same CST Law attorneys was utilized for the vast majority of the work in this case, to minimize the costs of intra- CST Law communication and education about the Title III Cases. As demonstrated by this Application, CST Law spent its time economically and without unnecessary duplication. Accordingly, approval of the compensation sought herein is warranted.

**NOTICE**

102.    In accordance with the Interim Compensation Order, CST Law will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of

hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

## CONCLUSION

WHEREFORE, CST Law respectfully requests entry of an order, substantially in the form attached hereto as <u>Schedule 1</u>, (i) allowing interim compensation for professional services rendered during the Application Period in the amount of $669,949.50 and expense reimbursements in the amount of $12,929.59; (ii) authorizing and directing the Debtors' payment of the amounts allowed and; (iii) allowing such compensation and payment for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to CST Law's right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting CST Law such other and further relief as is just.

Date: November 15, 2019

*/s/Juan J. Casillas-Ayala*
Juan J. Casillas-Ayala, Esq.

**CASILLAS, SANTIAGO & TORRES LLC**
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC-PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Counsel to the Official Committee of Unsecured Creditors*