UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>as representative of<br><br>The Commonwealth of Puerto Rico, The Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority,<br><br>Debtors | PROMESA Title III<br><br>No. 17 BK 3283 (LTS)<br><br>(Jointly Administered) |

**OBJECTION TO "TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL." BY CREDITOR PFZ PROPERTIES, INC.**

TO THE HONORABLE COURT:

PFZ Properties, Inc. (hereinafter, PFZ), a creditor of the Commonwealth of Puerto Rico (hereinafter, the Debtor or the Commonwealth), by and through its undersigned counsel, states as follows for its objection to Debtor's Plan of Adjustment, insofar as the treatment of its claim for the taking of its property without just compensation, as required by the Fifth Amendment to the Constitution of the United States, is concerned.

**Introduction**

PFZ, a Puerto Rico Corporation, has filed a Proof of Claim against the Debtor on account of a just compensation claim originating in eminent domain proceedings brought by the Commonwealth, before a Commonwealth court, for the condemnation of real estate property belonging to PFZ (case #KEF-2008-0480 before the San Juan Court of First Instance). PFZ objects to the Title III Joint Plan of Adjustment (the Plan), because its claim for the taking of its property without just compensation is based on the Takings Clause of the Fifth Amendment[1] to the Constitution of the United States (and Section 9 of Article II of the Commonwealth Constitution). Under the Plan, the Debtor proposes to treat PFZ's claim as a general unsecured claim to be compensated with a maximum

---

[1] There has been substantial argument as to whether the Bill of Rights of the Constitution of the United States applies to the Commonwealth directly or through the Fourteenth Amendment. The Supreme Court has stated that "Puerto Rico is subject to the Due Process Clause of either the Fifth or the Fourteenth Amendment" **Posadas de Puerto Rico Assoc. vs. Tourism Co. of Puerto Rico,** 478 US 328, 331 n.1 (1986). And in **Torres vs. Puerto Rico**, 442 US 465 (1979), Justice Brennan's concurrent opinion states that "whatever the validity of [the Insular Cases when] ...they were decided, these cases are clearly not authority for questioning the application of the Fourteenth Amendment, or any other provision of the Bill of Rights to the Commonwealth of Puerto Rico", **Torres**, 442 US at 475-476. In its most recent decision applying a provision of the Bill of Rights to a citizen in Puerto Rico, **Commonwealth of Puerto Rico vs. Sánchez Valle**, 136 S. Ct. 1863 (2016), the Court did not discuss this issue because both parties had accepted that the Double Jeopardy Clause applied to the Commonwealth. The federal Government, however, in its brief as **amicus curiae**, at page 10, n. 1, asserted that "...the Double Jeopardy Clause could not apply to Puerto Rico through the Due Process Clause of the Fourteenth Amendment, because the Fourteenth Amendment applies only to 'state[s]'. The Double Jeopardy Clause thus must apply to Puerto Rico based on its status as a territory belonging to the United States". There seems to be no question, in any case, that the fundamental guaranties of the Bill of Rights apply to all American citizens in Puerto Rico.

of 1.8% of the amount of the claim.2 As such it would be, therefore, substantially impaired. PFZ, however, is constitutionally entitled to just compensation for its claim without impairment, reduction or adjustment on account of the Debtor's adjustment of its debts under PROMESA and the Bankruptcy Code provisions incorporated in PROMESA.

**Background and Description of PFZ's Claims**

PFZ owned beachfront land (hereinafter, the Property) comprising approximately 1,345.83 cuerdas (each cuerda being equivalent to 0.97 acres) located in the Municipality of Loíza, only minutes away from San Juan, which it held for tourism-related development. As of October 31, 2006, PFZ had a project for tourism-related development pending before the Planning Board of the Commonwealth, comprising a parcel of the Property. The project conformed to the then existing zoning regulations and the Puerto Rico Environmental Quality Board had approved the required Final Environmental Impact Statement.

Late in 2006 Aníbal Acevedo-Vilá, then the Governor of the Commonwealth, while being aware that a project to develop a parcel of the Property was pending before the Puerto Rico Planning Board,

---

2 PFZ's claim 20351, EPOC 20180524134327 is not specifically mentioned in the plan. Therefore, it must be concluded that it is to be treated as a general unsecured claim, in class 27, which encompasses all claims not specifically mentioned in other classes.

approached an officer of PFZ at a reception held in his official residence, and informed him that the Secretary of the Department of Natural Resources would contact PFZ to discuss the acquisition of the Property by the Commonwealth. It became clear to PFZ from its conversations with the Governor and the Secretary that if a sale could not be negotiated the Property would be expropriated. On March 6, 2007 PFZ and the Debtor executed a contract whereby the Property would be acquired by the Department of Natural Resources, the purchase price to be determined on the basis of an appraisal by a professional appraiser selected and paid by the Department with PFZ's approval. On August 13 of 2008, to prevent litigation between Debtor and PFZ, initiated by PFZ on account of Debtor's breach of the acquisition contract, from coming to trial before this Court, the Debtor exercised its sovereign right to condemn the Property by filing the above-described eminent domain proceedings. Acting under the Commonwealth's quick-take statute, the Debtor took the title to and the possession of the Property upon the filing of the proceedings.  PFZ contested the estimate of just compensation supporting the taking, $4,911,000.00, and also challenged the underlying appraisal relied upon by the Debtor on several grounds, including that the appraisal was based on a parcel of only 62 cuerdas out of the 1,345.83 cuerdas comprising the Property. Shortly before the condemnation pretrial conference was held in April 10 of

4

2012, the Debtor had the entire property reappraised by a different appraiser of Debtor's own choosing, who concluded that the Property was worth $32,561,003.00 at the time of the taking. PFZ's own appraiser had estimated a much higher value for the Property, to wit, $75,550,000.00 at the time of the taking. On April 17, 2012 the Debtor filed a motion for voluntary dismissal of the expropriation proceedings and PFZ opposed it on the grounds that the Constitution did not permit an expropriation proceeding to be unilaterally dismissed by the Government after the condemning authority has taken title to or possession of the condemned property under a quick-take statute.

On November 30, 2015, while this question was being litigated, the Debtor approved a new Land Use Plan which classified the Property as a natural reserve ("***Suelo Rústico Especialmente Protegido-Ecológico***", or "rustic land especially protected for ecological reasons"), a classification that would prevent PFZ from developing the Property or dedicating it to any economically productive or beneficial use whatsoever. The preceding Land Use Plan had divided the Property in several parcels, each of which was susceptible of some kind of economic development, including development of a tourism-related project in a 62-acre parcel, like the one pending approval at the time of the taking.

5

The Commonwealth trial court, after three years, finally granted Debtor's motion for voluntary dismissal on December 16, 2015. PFZ appealed, but the Commonwealth Court of Appeals agreed with the Trial Court and the Commonwealth Supreme Court denied certiorari to review its decision. By that time PROMESA had been enacted, the Oversight Board had filed these Title III proceedings and PFZ's claim for just compensation before the Commonwealth courts had been stayed. At that time the Debtor still held, and even now still holds, title to and the possession of the Property.

On May 14, 2018 PFZ commenced Adversary Proceeding No.18-0056 (inaccurately described in page 168 of Debtor's Disclosure Statement) before this Court, stating three causes of action under the Fifth Amendment to the Constitution and Section 9 of Article II of the Commonwealth Constitution: one for inverse condemnation under the Takings Clause, another for violations of substantive due process under the Due Process clause; and still another for just compensation for the temporary taking of the title to and the possession of the property (which Debtor still holds). At the request of the parties pursuant to a Stipulation executed on July 27, 2018, this Court dismissed the Adversary Proceeding[3] without prejudice and the automatic stay was lifted to allow PFZ to pursue

---

[3] See docket #16 of the Adversary Proceeding.

6

its claim for just compensation before the Commonwealth courts, under the Takings Clause and Section 9 of Article II of the Commonwealth Constitution, where it is still pending resolution before the San Juan Court of First Instance. PFZ claims that it is entitled to an award of $70,500,000.00.

**Argument**

On September 27, 2019 the Debtor presented the Plan to adjust and modify its obligations to creditors whose claims are subject to impairment and reduction. The Plan does not provide adequately for full payment to PFZ of its claim when liquidated. Instead, PFZ's claim is included in Class 27, encompassing all sorts of generally unsecured claims, to whom the Debtor proposes to pay not more than 1.8% of the liquidated amount of each claim, and would thus be substantially impaired. Contrary to Debtor's proposal, PFZ's claim is not subject to impairment or reduction because it is a constitutional claim for the taking of property without just compensation, and therefore may not be affected by the bankruptcy power of Congress, under which Congress authorized the adjustment of Debtor's obligations[4].

---

[4] See ***Disclosure Statement for the Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.*** at pages 12-13: "[...] Titles III and VI of PROMESA provide for debt restructurings, similar to bankruptcy cases, for Puerto Rico and its instrumentalities." It does so by "incorporating many provisions of Title 11 of the United States Code (the 'Bankruptcy Code') into Title III of PROMESA, which provides for restructurings similar to those under

7

**a.**

Supreme Court decisions going back to *Louisville Joint Stock Land Bank vs. Radford*, 295 US 555 (1935), decided almost a century ago at the time of a national emergency created by the economic crisis of the Great Depression, make clear the rule that Congress may not pass laws under its bankruptcy powers that would effect a taking of private property without just compensation. In *U.S. vs. Security Industrial Bank*, 459 US 70 (1982), the Court, citing *Radford,* summarized that rule:

> The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation. [Citation to *Radford* omitted.] Thus, however "rational" the exercise of the bankruptcy power may be, that inquiry is quite separate from the question whether the enactment takes property within the prohibition of the Fifth Amendment.

459 US at 75.

In *Radford*, the Frazier-Lemke Act, which added Section 75 to the Bankruptcy Act, had been challenged as unconstitutional insofar as it prevented banks from exercising rights over foreclosed properties that they enjoyed before the challenged provisions of the Act were passed. After announcing that "[t]he bankruptcy power, like the other great substantive powers of Congress, is subject to the

---

chapters 9 and 11 of the Bankruptcy Code [...]".

Fifth Amendment"[5], 295 US at 589, and facing the question whether Frazier-Lemke as applied "has taken from the [petitioner] bank without just compensation, and given to [respondent] Radford, rights in specific [foreclosed] property which are of substantial value", 295 US at 601, the Court decided that:

> [...] we must hold [the Act] void; for the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken for a wholly public use without just compensation. If the public interest requires and permits the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

295 US at 602.

Thus, although Congress may authorize the Debtor to impair contractual claims under its bankruptcy powers, it may not authorize the taking of private property without just compensation in violation of the Fifth Amendment. See *U.S. vs. Security Industrial Bank*, 459 US at 80.

---

[5] Thus, if indeed, as stated before, "[t]he bankruptcy power, *like the other great substantive powers of Congress*, is subject to the Fifth Amendment", *Radford,* 295 US at 589 (emphasis ours); and the power of Congress to legislate for the territories under Article IV, Section 4, under which PROMESA was approved, is also a substantive power of Congress, it is self-evident that Congress may not legislate under the Territorial Clause in a manner inconsistent with the Fifth Amendment, either.

After ***Radford*** [6], other constitutional challenges to legislation approved under the bankruptcy power, as contrary to the Takings Clause, have reached the Supreme Court. The Court has in each case reaffirmed the teachings of ***Radford***, although it has avoided declaring the statutes unconstitutional by interpreting them in a way that reaching the constitutional question became unnecessary.

***Blanchette vs. Connecticut General Insurance Corp.***, 419 U.S. 102 (1974), involved several consolidated challenges to the Regional Rail Reorganization Act of 1973, enacted to supplement Section 77 of the Bankruptcy Act. The statute required several railroads in reorganization to transfer their assets to Conrail, a newly created private corporation, in exchange for securities to be issued by the new corporation and federally guaranteed obligations to be issued by the United States Railway Association, a Government corporation. Because the value of these securities could not be ascertained, at the time of the reorganization, to be equivalent to that of the railroad assets transferred to Conrail, it was claimed by some creditors that any deficiency would amount to a taking under the Fifth Amendment.

The Court concluded that "any deficiency of constitutional

---

[6] Shortly after ***Radford***, Congress amended the Frazier-Lemke Act to conform it to the Court's decision. In ***Wright vs. Vinton Branch of Mountain Trust Bank,*** 300 US 440 (1937), the Court found the Act as amended was constitutional.

10

magnitude in the compensation provided under the [Rail Reorganization] Act will indeed be a taking of private property for public use", 419 US at 155, but it declined to hold the statute unconstitutional because it reasoned that the Rail Act was not meant by Congress to preclude an action under the Tucker Act for a cash award "to cover any constitutional shortfall" in the compensation required by the Takings Clause. *Id*.

*U.S. vs. Security Industrial Bank*, supra, involved several consolidated challenges to Section 522(f)(2) of the Bankruptcy Reform Act of 1978, 11 USC 522(f)(2), which allowed debtors to avoid nonpossessory, nonpurchase-money liens on household furnishings and appliances. Creditors who had loaned the debtors money and had perfected nonpossessory, nonpurchase-money liens on their household furnishings and appliances prior to the enactment of the statute claimed that it operated a taking of property, to wit, their liens, without just compensation under the Takings Clause. The Court, after reaffirming *Radford* and other decisions, recognized that "there is substantial doubt whether the retroactive destruction of the [creditor's] liens in this case comports with the Fifth Amendment", but turned to consider "whether, as a matter of statutory construction, [Sec.] 522(f)(2) must necessarily be applied in that manner [...] because of the cardinal principle that this Court will first ascertain whether a construction of the statute is fairly

11

possible by which the constitutional question may be avoided." 459 US at 78 (citations omitted). Facing this question, the Court then interpreted the statute and decided that it had not been the intention of Congress to retroactively "apply [Sec.] 522(f)(2) to property rights established before the enactment date ..." 459 US at 82 (footnote omitted). Thus, it "decline[d] to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the Takings Clause." *Id.* (citations omitted).

### b.

The rule set down by the Supreme Court in *Radford,* supra, and other decisions discussed above, namely that Congress under its bankruptcy power may not pass laws that would effect a taking without just compensation in violation of the Takings Clause, has been applied in a context identical to the one at bar. In *In re: City of Detroit, Debtor*, before the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, Case No. 13-53846, several creditors (hereinafter, the Takings Clause creditors), relying on the above-cited decisions, specifically claimed that the Plan of Adjustment presented by the City of Detroit in Chapter 9 Bankruptcy proceedings was unconstitutional insofar as it treated their claims for takings of property without just compensation, under the Takings Clause, as general unsecured claims

12

which were to be impaired under the plan. In its ***Supplemental Opinion Regarding Plan Confirmation, Approving Settlements and Approving Exit Financing*** entered on December 31, 2014, docket #9883, (Steven W. Rhodes, judge) the Court agreed. After discussing ***Radford*** and ***Blanchette***, and also citing ***U.S. vs. Security Industrial Bank***, supra, it acknowledged, at page 199, that both "***Blanchette*** and ***Radford*** establish that bankruptcy proceedings are subject to the Fifth Amendment's prohibition on public takings of private property without just compensation." Furthermore, rejecting the City's assertion that in the Supreme Court cases it was the statute itself that effected the taking, not the plan of adjustment, the Bankruptcy Court insisted, at page 200 that " [] all that matters under the Fifth Amendment is that the owner of private property must be justly compensated if that property was taken for public use, whenever and however that taking occurred", and the City's plan, "[i]f confirmed, [] would deny that just compensation. The plan would allow the City to impair the property owners' constitutional claim for just compensation after the City took their private property. That violates the Fifth Amendment." [7]

---

[7] In ***In re City of Stockton***, 909 F.3d 1256 (2018), the Court of Appeals for the Ninth Circuit, over a strong dissent by Judge Friedland, let stand a plan of adjustment that had been challenged because it impaired a claim for just compensation under the Fifth Amendment. The Bankruptcy Court had rejected the challenge and the creditor succeeded in having his appeal heard directly by the Court of Appeals. He did not, however, seek a stay of plan confirmation before the Bankruptcy Court or the Court of Appeals and the plan was confirmed and

13

The Court in *City of Detroit*, however, did not declare the Bankruptcy Code unconstitutional. Although it stated that the statute, if interpreted to allow impairment of the Takings Clause creditors' claims, would be contrary to the Fifth Amendment, the Court decided to use its discretion under Section 944(c)(1) of the Bankruptcy Code, 11 USC 944(c)(1), to order the nondischargeability of the Takings Clause creditors' claims in the confirmation order. The Court stated, at page 201, that "[t]his result harmonizes chapter 9 with the Fifth Amendment while giving full effect to the principle that the Court should avoid interpreting chapter 9 in such a way that renders it unconstitutional."

### c.

The instant case involves a constitutional claim identical to the one considered and decided by the Bankruptcy Court in the opinion in *City of Detroit* cited above, following the doctrine set out by the Supreme Court in *Radford, Security Industrial Bank* and *Blanchette*: As happened to the Takings Clause creditors in Detroit, PFZ's property was taken for public purposes and uses either under

---

became effective and was implemented while the appeal was pending. Because the plan had long been consummated the Court of Appeals dismissed the appeal, invoking the doctrine of equitable mootness. *City of Stockton* at 1266. Nevertheless, it went on to discuss the merits of the appeal and ultimately concluded, in what is quite clearly an advisory opinion founded on *obiter dicta,* that the creditor's claim could be adjusted. Judge Friedland, in his well-reasoned dissent, rejected the majority's views basing his opinion on the Takings Clause, the Supreme Court's decisions in *Radford, Blanchette and Security Industrial Bank,* and the Bankruptcy Court's decision in *City of Detroit*. *City of Stockton* at 1271-1273 and n.7.

14

an eminent domain statute or by regulatory action. Thereafter, the Commonwealth filed for reorganization and adjustment of debts under provisions of the Bankruptcy Code, made applicable to the Commonwealth by Section 301 of PROMESA, as did the City of Detroit under Chapter 9 of the Code. The Commonwealth treated PFZ's claim as an unsecured general claim, to be substantially impaired under the Plan, as did the City of Detroit with reference to the Takings Clause creditors' claims. In both cases the creditors objected to such a plan of adjustment because, if approved, it would violate the Takings Clause of the Fifth Amendment.

### Prayer for Relief

Therefore, PFZ prays that its objection to Debtor's Plan of adjustment be allowed by this Court, because the provisions of the Bankruptcy Code on which the Plan relies for the treatment of PFZ's claim are unconstitutional, as applied to that claim, because they are contrary to the Takings Clause of the Fifth Amendment. In the alternative, this Court may decide, exercising the discretion granted it by Section 944(c)(1) of the Code, to except PFZ's claim from discharge in the order approving the Plan, and declare that PFZ's constitutional claim may not be discharged, impaired, reduced or adjusted.

15

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing motion with the Clerk of the Court using the EM/ECF system, which will send a notification to all attorneys of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 18th day of November 2019.

/s/ DAVID CARRION BARALT
USDC PR 207214
Attorney for PFZ Properties
P.O. Box 364463
San Juan, P.R. 00936-4463
Tel. (787) 758-5050
Fax. (787) 296-3434
E-mail: davidcarrionb@aol.com

/s/ RUSSELL A. DEL TORO
USDC PR 121302
DEL TORO & SANTANA
Attorneys for PFZ Properties
Plaza 273, Suite 900
273 Ponce de León Ave.
San Juan, Puerto Rico 00917-1934
Telephone (787) 754-8700
Fax (787) 756-6677
E-mail: rdeltoro@dtslaw.com

/s/ JOSE ÁNGEL REY
USDC PR 118103
Attorney for PFZ Properties
P.O. Box 10127
San Juan, P.R. 00908-1127
Tel. (787) 396-2600
E-mail: joseangelrey46@gmail.com

16