**Hearing Date**: December 11 at 8:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: November 26, 2019 at 3:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------- X
                                                              :
In re:                                                        :
                                                              :
THE FINANCIAL OVERSIGHT AND                                   :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                             :   Title III
                                                              :
          as representative of                                :   Case No. 17-BK-3283 (LTS)
                                                              :
THE COMMONWEALTH OF PUERTO RICO et al.,                       :   (Jointly Administered)
                                                              :
          Debtors.¹                                           :
------------------------------------------------------------- X
                                                              :
In re:                                                        :
                                                              :
THE FINANCIAL OVERSIGHT AND                                   :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                             :   Title III
                                                              :
          as representative of                                :   Case No. 17-BK-4780 (LTS)
                                                              :
PUERTO RICO ELECTRIC POWER AUTHORITY                          :   This filing relates only to
                                                              :   Case No. 17-BK-4780 (LTS)
                                                              :
          Debtor.                                             :
------------------------------------------------------------- X
```

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**NOTICE OF HEARING ON OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
MOTION *IN LIMINE* TO STRIKE AND EXCLUDE IMPROPER LAY OPINION
TESTIMONY OF FREDERIC CHAPADOS REGARDING ALLEGED EFFECT OF 9019
SETTLEMENT ON PREPA TRANSFORMATION**

**PLEASE TAKE NOTICE** that a hearing on the annexed *Official Committee of
Unsecured Creditors' Motion in Limine to Strike and Exclude Improper Lay Opinion Testimony
of Frederic Chapados Regarding Alleged Effect of 9019 Settlement on PREPA Transformation*
(the "Motion") filed by the Official Committee of Unsecured Creditors (the "Committee")[2], will
be held before the Honorable Laura Taylor Swain, United States District Court Judge, at the
United States District Court for the District of Puerto Rico, in Room 3, 150 Carlos Chardón
Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on **December 11, 2019,
at 8:30 a.m. (ET) / 9:30 a.m. (AST)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that any responses or objections
("Objections") to the Motion by any party shall conform to the Federal Rules of Bankruptcy
Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the
Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*,
electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (b)
by all other parties in interest, by submitting a hard copy via mail to the Clerk's Office, United
States District Court, Room 150 Federal Building, San Juan, PR 00918-1767 or by hand delivery
to the Clerk's Office, United States District Court, 150 Carlos Chardon Avenue, Room 150, San
Juan, PR 00918, to the extent applicable, and shall be served in accordance with the *Tenth
Amended Case Management Procedures* [Docket No. 8027, Ex. A], so as to be so filed and

---

[2]    The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and
COFINA.

2

received no later than **November 26, 2019 3:00 p.m. (ET) / 4:00 p.m. (AST)** (the "Objection Deadline").

   **PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the District Court may enter an order granting the relief sought without a hearing pursuant to the Tenth Amended Case Management Procedures.

Dated: November 19, 2019

      */s/ Luc A. Despins*
      PAUL HASTINGS LLP
      Luc A. Despins, Esq. *(Pro Hac Vice)*
      200 Park Avenue
      New York, New York 10166
      Tel: (212) 318-6000
      lucdespins@paulhastings.com

      Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
      875 15th Street, N.W.
      Washington, D.C. 20005
      Tel: (202) 551-1700
      nicholasbassett@paulhastings.com

      *Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors*

      - and –

*/s/ John Arrastia*
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
GENOVESE JOBLOVE & BATTISTA, P.A
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of
Unsecured Creditors for all Title III Debtors with Respect to
Claims against Citigroup Global Markets, Inc.*

- and -

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors*

Objection Due Date: November 26, 2019 at 3:00 p.m. (ET) / 4:00 p.m. (AST)
Hearing Date: December 11, 2019 at 8:30 a.m. (ET) / 9:30 a.m. (AST)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------- X
    :
In re:     :
    :
THE FINANCIAL OVERSIGHT AND     : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,     : Title III
    :
    as representative of     : Case No. 17-BK-3283 (LTS)
    :
THE COMMONWEALTH OF PUERTO RICO *et al.,*     : (Jointly Administered)
    :
    Debtors.[1]     :
---------------------------------------------------------------- X
    :
In re:     :
    :
THE FINANCIAL OVERSIGHT AND     : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,     : Title III
    :
    as representative of     : Case No. 17-BK-4780 (LTS)
    :
PUERTO RICO ELECTRIC POWER AUTHORITY     : **This filing relates only to**
    : **Case No. 17-BK-4780 (LTS)**
    :
    Debtor.     :
---------------------------------------------------------------- X

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION *IN LIMINE* TO STRIKE AND EXCLUDE IMPROPER LAY OPINION TESTIMONY OF FREDERIC CHAPADOS REGARDING ALLEGED EFFECT OF 9019 SETTLEMENT ON PREPA TRANSFORMATION

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................... 3

    I.    9019 Motion Scheduling Order and Disclosures .................................... 3

    II.   Supplemental Memorandum of Law and Chapados Declaration ......................... 5

    III.  Stipulation Regarding Discovery From Concessionaires ..................................... 6

    IV.  Chapados Deposition ............................................................................. 8

RELIEF REQUESTED ........................................................................................... 10

BASIS FOR RELIEF REQUESTED ........................................................................... 10

    I.    Chapados' Testimony is Based on Scientific, Technical, or Other
Specialized Knowledge Within the Scope of Rule 702 ...................................... 11

    II.   To the Extent Chapados' Testimony is Rationally Based on His
Perceptions, It Violates the Stipulation ............................................................. 14

    III.  Based on the Court's Prior Rulings, Chapados' Testimony is Not Helpful
to Clearly Understanding the Witness's Testimony or Determining a Fact
in Issue ................................................................................................. 15

CONCLUSION..................................................................................................... 16

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank of China v. NBM LLC,*
    359 F.3d 171 (2d Cir. 2004)...............................................................................12, 13

*Bransford & Petz, P.C. v. Bank of America Commercial,*
    2005 WL 1668224 (D. Mass. July 12, 2005)..........................................................12

*Campbell v. CGM, LLC,*
    2016 WL 6989769 (D. N.H. Nov. 29, 2016) ..........................................................11

*United States v. Frantz,*
    2004 WL 5642909 (C.D. Cal. Apr. 23, 2004) ..................................................13, 14

*United States v. Vega,*
    813 F.3d 386 (1st Cir. 2016)......................................................................11, 12, 13

**Other Authorities**

Federal Rule of Evidence 701 .................................................................................. *passim*

Federal Rule of Evidence 702 .................................................................................. *passim*

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[1] respectfully submits this motion *in limine* (the "Motion") to strike and exclude certain improper lay opinion testimony of Frederic Chapados offered in support of the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Docket. No. 1235] (the "9019 Motion").[2]  In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      One of the Government Parties' primary arguments in support of the 9019 Motion is that the Proposed Settlement will facilitate PREPA's transformation process (the "Transformation"), including specifically PREPA's efforts to find an operator for its transmission and distribution ("T&D") system.  To support this argument, the Government Parties rely almost exclusively on the testimony of Frederic Chapados, an investment banker at Citigroup Global Markets Inc. ("Citi") and advisor to the Government Parties, who in his declaration offers various opinions as to what he believes potential operators will look for in bidding on the Transformation.  Despite this testimony bearing all the hallmarks of a purported expert opinion, the Government Parties do not seek to qualify Chapados as an expert but rather offer him as a lay witness purportedly providing opinion testimony under Federal Rule of Evidence 701.  The Government Parties cannot, however, satisfy the requirements of Rule 701, and therefore Chapados' testimony must be excluded.

---

[1]      The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[2]      All docket references herein are to Case No. 17-4780 unless otherwise indicated.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the 9019 Motion.

2.       Under Rule 701, lay opinion testimony must satisfy three requirements to be
admissible:  it must not relate to a technical or specialized subject matter that is normally
reserved for expert testimony under Rule 702; it must be based on the witness's personal
knowledge; and it must be helpful to understanding the witness's testimony or resolving a fact in
dispute.  The testimony that Chapados offers fails to satisfy any of these requirements.

3.       <u>First</u>, the subject on which Chapados opines—the extent to which a highly
complex transaction involving the potential privatization of a power transmission and
distribution network may be affected by the negotiation and execution of an extremely
complicated and costly legacy municipal bond restructuring—is squarely within the scope of
expert testimony that may only be admitted into evidence, if at all, under Federal Rule of
Evidence 702.  Stated differently, the opinions that Chapados offers are not common-sense
conclusions that a lay witness without specialized training and experience could draw.  ████
██████████████████████████████████████████████████████
██████████████████████████████.

4.       <u>Second</u>, Chapados' opinions cannot properly be based on his personal knowledge
specific to PREPA's Transformation.  Indeed, the Government Parties are ***prohibited*** from
relying on such evidence by virtue of a stipulation they executed with the Committee.
Specifically, on July 9, 2019, the Committee and the Government Parties signed a stipulation,
attached hereto as **Exhibit A**, in which the Government Parties expressly agreed not to rely,
either directly or indirectly, on any actions, statements or other behaviors of potential bidders in
the Transformation in exchange for the Committee's agreement to withdraw subpoenas it had
issued to such bidders.  The Committee withdrew the subpoenas, and the Government Parties are

now bound by the stipulation.  Chapados' testimony, to the extent it is based on statements made by potential bidders, violates the stipulation and is therefore inadmissible.

5.    <u>Third</u>, even if Chapados' opinions were otherwise admissible, they are not helpful to the Court and should be excluded for that reason.  On October 10, 2019, the Court issued an order holding that "the details of implementation, and the prospects for the ultimate success, of the proposed transformation are not being litigated in the context of the 9019 Motion."  [Case No. 17-3283, Docket No. 8837].  Under this ruling, Chapados' testimony regarding the possible impact of the settlement on the continuing interest and involvement of potential operators— which necessarily goes to the Transformation's ultimate likelihood of success because the Transformation cannot succeed without an operator—has no bearing on the issues in dispute and is therefore not helpful to the Court's decision.

6.    For these reasons and those discussed below, the Committee respectfully requests that the Court strike the entirety of Chapados' declaration and prevent him from offering similar testimony at trial.  The Committee believes it is appropriate to strike the entirety of the declaration because, once stripped of its inadmissible opinions, the declaration is neither relevant nor helpful to the Court's analysis of the 9019 Motion.  In the alternative, the Committee requests that the Court strike at least the specific opinions (or beliefs or predictions) in paragraphs 17, 18, 20, 21, 23, and 25-27 of the declaration and prevent Chapados from offering testimony on these same opinions at the hearing on the 9019 Motion.

## <u>BACKGROUND</u>

### I.    <u>9019 Motion Scheduling Order and Disclosures</u>

7.    On May 10, 2019, the Government Parties filed the 9019 Motion [Docket No. 1235], originally seeking a hearing in June 2019.  On May 22, 2019, the Court entered an initial

scheduling order for the 9019 Motion [Docket No. 1253], setting deadlines of May 30, 2019 for the identification of witnesses who may testify and June 5, 2019 for the disclosure of experts.

8. On May 30, 2019, the FOMB served its Preliminary Witness List, naming Natalie Jaresko (Executive Director of the FOMB), David Brownstein (Managing Director and Co-Head of Public Finance for Municipal Securities at Citi), and Chapados ("Director of Power & Utilities Investment Banking" at Citi) as potential witnesses.

9. On June 5, 2019, the FOMB provided its *Disclosure of the Intent of the Financial Oversight and Management Board for Puerto Rico, as Representative of the Puerto Rico Electric Power Authority, to Offer Lay Opinion Testimony Pursuant to Fed. R. Civ. P. 701 at 9019 Motion Hearing*, naming Chapados as a lay witnesses purporting to testify pursuant to Rule 701.

10. At a June 12, 2019 status conference, Judge Swain directed the Government Parties to present new factual declarations and a supplemental legal memorandum to provide a "potential pathway" for approval of the 9019 Motion. This prompted the parties to submit and the Court to enter a revised scheduling order [Docket No. 1366] extending certain deadlines relating to the 9019 Motion, including the deadline for parties to serve amended preliminary witness lists and expert disclosures to July 5, 2019. The Court has since entered several further revised scheduling orders, the most recent of which set a deadline of October 30, 2019 for the service of expert reports.

11. On July 5, 2019, the FOMB served its Amended Preliminary Witness List, again including Jaresko, Brownstein, and Chapados as potential fact witnesses.

12. The FOMB did not on July 5 and has never identified any expert witnesses or served any expert reports.

## II.   **Supplemental Memorandum of Law and Chapados Declaration**

13.      On July 2, 2019, the Government Parties submitted their Supplemental

Memorandum of Law and Facts in Support of the 9019 Motion [Docket No. 1425] (the

"Supplemental Memorandum") and the accompanying Declaration of Frederic Chapados

[Docket No. 1427] (the "Chapados Declaration").

14.      In his declaration, Chapados states that he is a director at Citi, where he has

worked for 12 years in the investment banking division, the last 10 of which have been focused

on power and utility clients.  Chapados Declaration ¶ 4.  Based on this experience, Chapados

offers several opinions as to the effect of the Proposed Settlement on the Transformation,

including its relationship to the needs and expectations of potential operators interested in

operating PREPA's T&D system.

15.      For example, Chapados states:

> Based upon my experience, any potential Operator performing the
> risk-benefit analysis to determine whether to undertake this project
> would look for a clear picture of the legal, financial, operational,
> and regulatory environments in which it would be operating should
> its proposal be successful.  In particular, a potential Operator
> would want to understand the legal and financial challenges facing
> PREPA, including, but not limited to, an understanding regarding
> the projected costs that will need to be included in PREPA's rates
> to customers post-closing, including any additional charges to
> satisfy restructured legacy debt and, ultimately, PREPA's
> prospects and timing for exiting Title III.

*Id.* ¶ 17.  Chapados also asserts, among other things, that he "anticipate[s] potential Operators

will want to understand the extent to which PREPA and its ratepayers will be responsible for

payment of PREPA's pre-petition debt obligations and the role of the Operator, if any, with

respect to servicing restructured debt obligations."  *Id.* ¶ 20.

16.      The Supplemental Memorandum relies heavily on the Chapados Declaration in

support of the Government Parties' argument that the Proposed Settlement is necessary to

facilitate the Transformation.  For example, the Supplemental Memorandum argues that any potential operator "would want to obtain the best possible understanding of the legal and financial challenges, such as (a) the projected costs that will need to be included in PREPA's rates to customers post-closing, including any additional charges to satisfy restructured legacy debt; (b) resolution of the Receiver Motion; and (c) ultimately, PREPA's prospects and timing for exiting Title III."  Supplemental Memorandum at 11-12 (citing Chapados Declaration).[3]

### III.    Stipulation Regarding Discovery From Concessionaires

17.    On May 23, 2019, the Committee served subpoenas on the four known potential operators for the T&D system to obtain documents and deposition testimony necessary to evaluate the Government Parties' argument that the Proposed Settlement will help facilitate the Transformation.  Upon receiving notice of the subpoenas, the Government Parties implored the Committee to withdraw the subpoenas, stating that the pursuit of such discovery could disrupt the Transformation process.  In response, the Committee communicated that (i) it had no desire to interfere with the Transformation (which, as stated in previous pleadings, the Committee supports), but (ii) were it to withdraw the subpoenas, it would need assurances from the Government Parties and supporting holders (together, the "RSA Parties") that they would not rely on any statements, actions, or other evidence attributable to operators to support the 9019 Motion.  The Committee explained that, if the RSA Parties did intend to rely on such evidence, the Committee needed the opportunity to test such evidence through discovery from the operators and therefore could not withdraw the subpoenas.

---

[3]    *See also* Supplemental Memorandum at 22-23 ("Prospective Operators would likely question how the interests of the receiver may or may not align with the Operator's own objectives and priorities in the future management of PREPA, and how matters will be resolved in the event there are conflicting views or priorities. Prospective Operators would also likely be concerned about the effect of a receiver on the restructuring of PREPA's debt, the resulting cost to consumers, and the timing of PREPA's exit from Title III.") (citing Chapados Declaration).

18.     On July 9, 2019, the Committee, UTIER, and the RSA Parties executed a

stipulation (the "Stipulation") (attached hereto as **Exhibit A**) for this purpose.[4]  Under the terms

of the Stipulation, the RSA Parties agreed that they would not present the testimony of or

otherwise rely on, "either directly or indirectly, statements, assertions, opinions, actions taken,

actions not taken, or views expressed by a Transformation Party[5] to support any allegation,

argument, request for relief, or other position in connection with the 9019 Motion."  Stipulation ¶

3.  By way of example, the Stipulation states that "no witness or expert providing testimony on

behalf of or called by the RSA Parties may use or refer to information acquired from or

attributed to a Transformation Party to support the assertion in the 9019 Motion that the

settlement of PREPA bond claims will help facilitate the Proposed Transformation."  *Id*.

19.     At the RSA Parties' request, the Stipulation clarified that it would not prevent any

RSA Party from offering evidence as to general knowledge of or experience in the marketplace,

as long as such evidence is unrelated to the Transformation:

> nothing herein shall prevent or restrict the RSA Parties from
> offering evidence (whether by deposition, declaration, live in-court
> testimony, or otherwise) based upon a declarant's/witness' general
> knowledge of or experience in the marketplace and with
> participants in the marketplace, ***in all cases unrelated to the
> Proposed Transformation***, regarding a potential investor or
> partner's concern regarding the disposition or repayment of
> prepetition debt, but without reference to any statement (oral or
> written) by any particular person or entity.

*Id.* (emphasis added).  Thus, the Government Parties are free to submit in support of the 9019

Motion testimony or other evidence regarding general knowledge and experience in the

---

[4]     The Committee and the Government Parties began negotiating the Stipulation in June 2019, long before its
eventual execution.

[5]     Transformation Party was defined to include any employee or other representative of any concessionaire or
any other potential investor or partner (*i.e.*, potential operator) in the Proposed Transformation.

marketplace, as long as such evidence (i) does not relate specifically to the Transformation, and (ii) otherwise complies with applicable law and rules governing admissibility, including without limitation the requirements of Federal Rules of Evidence 701 and 702 regarding the disclosure and submission of expert testimony.

20.     In reliance on the Stipulation, the Committee withdrew the subpoenas.  Had the Government Parties not agreed to the restrictions in the Stipulation, the Committee would have pressed its subpoenas on the operators to obtain evidence necessary to respond to the Government Parties' arguments in support of the 9019 Motion.

### IV.     **Chapados Deposition**

21.     On October 7, 2019, the Committee took Chapados' deposition.  During the course of the examination, the Committee asked Chapados to describe the basis for the statements in his declaration regarding the effect of the Proposed Settlement on the Transformation, including his views as to what a potential operator would look for and would want to understand when bidding on the Transformation.

22.     ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████.  For example, Chapados explained as follows when asked about the basis for his statements in paragraph 17 of his declaration about what a potential operator would "look for" in bidding on the Transformation:





**Exhibit B** (Chapados Dep. Tr. 111:23-112:9; 113:16-114:19).

23.



. *See id.* at 128:7-8

); *id.* at

119:5-19; 143:6-147:13 (

); *id.* at 141:11-16 (

).

Indeed, Chapados went so far as explicitly stating that his opinions ████████████████

████████████. *Id.* at 147:6-7; 149:19.

24.     In addition to his general knowledge, training, experience in the industry, and

despite the prohibitions of the Stipulation, Chapados ████████████████████████████

████████████████████████████████████.[6]

25.     In other words, there are two alleged bases for Chapados' opinions:  his purported

industry knowledge and expertise, and ████████████████████████. In the face

of (i) the Government Parties' decision not to present Chapados as an expert witness, and (ii) the

Stipulation, neither of these bases supports his proposed testimony.

## RELIEF REQUESTED

26.     The Committee seeks entry of an order in the form attached hereto (i) striking the

entirety of the Chapados Declaration or, alternatively, the statements contained in paragraphs 17,

18, 20, 21, 23, and 25-27 of the Chapados Declaration, and (ii) precluding the introduction of

similar testimony at the hearing on the 9019 Motion.

## BASIS FOR RELIEF REQUESTED

27.     Federal Rule of Evidence 701 provides that a lay witness may offer opinion

testimony only if the testimony is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; ***and***
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

---

[6] ████████████████████████████████████████████████████
████████████████████████████████████████████████████.

Fed. R. Evid. 701 (emphasis added).

28.     The purpose of this rule, added by an amendment in 2000, is to "eliminate the risk

that the reliability requirements set forth in Rule 702 [for the introduction of expert testimony]

will be evaded through the simple expedient of proffering an expert in lay witness clothing."

Fed. R. Evid. 701 (advisory committee notes) (2000).  For a lay witness' opinion testimony to be

admissible under Rule 701, each requirement of the rule must be satisfied.

29.     Chapados, a lay witness, offers various opinions regarding the effect of the

Proposed Settlement on the Transformation, including without limitation his opinions as to what

potential operators would "look for" in evaluating the Transformation.  As discussed below, this

testimony does not satisfy the requirements of Rule 701 and is therefore inadmissible.

## I.     Chapados' Testimony is Based on Scientific, Technical, or Other Specialized Knowledge Within the Scope of Rule 702

30.     In analyzing the admissibility of Chapados' testimony, it is most efficient to start

with the third requirement of Rule 701, which goes to the heart of the issue: whether his

proposed testimony is based on technical or specialized knowledge of a kind typically introduced

by experts under Rule 702.  The answer to this question is indisputably "yes," as the opinions

Chapados offers are based on his knowledge, education, and experience in the specialized field

of investment banking in the utilities industry.  Such lay opinions are improper under Rule 701.

31.     The First Circuit has recognized that a permissible lay opinion "is the product of

reasoning processes familiar to the average person in everyday life."  *United States v. Vega*, 813

F.3d 386, 394 (1st Cir. 2016) (internal quotation omitted); *see also Campbell v. CGM, LLC*,

2016 WL 6989769, *2 (D. N.H. Nov. 29, 2016) ("Lay opinion must be based on reasoning that is

familiar in everyday life and on things personally observed by the witness rather than on

specialized knowledge or training").  By contrast, opinions that rely upon technical or

11

specialized knowledge may be offered only under Rule 702.  *Vega*, 813 F.3d at 395 (holding that

testimony requiring understanding of technical Medicare laws and regulations was not proper

subject for lay testimony under Rule 701).

32.    Importantly, the requirements for expert testimony under Rule 702 apply not only

to those witnesses who are "experts in the strictest sense of the word, *e.g.*, physicians, physicists,

and architects, but also [to] the large group sometimes called 'skilled' witnesses, such as ***bankers***

or landowners testifying to land values."  Fed. R. Evid. 702 (advisory committee notes)

(emphasis added).  Indeed, courts have often held that testimony by bankers or other finance

professionals regarding transactions or practices in their fields falls within the scope of expert

evidence.  *See, e.g.*, *Bank of China v. NBM LLC*, 359 F.3d 171, 181-82 (2d Cir. 2004) (finding

that district court abused its discretion in admitting bank employee's lay opinion testimony

regarding "international banking transactions or definitions of banking terms" pursuant to Rule

701, as such testimony was based on witness's "experience and specialized knowledge in

international banking"); *cf. Bransford & Petz, P.C. v. Bank of America Commercial*, 2005 WL

1668224, *9 (D. Mass. July 12, 2005) ("testimony offered by [lay witness] regarding custom and

practice in the collections industry . . . is inadmissible under Rule 701").

33.    Chapados' proposed testimony fits squarely within this mold.  Using his

education, experience, and training as an investment banker in the utilities industry, Chapados

opines on, among other things, what a potential operator of PREPA's T&D system "would look

for" in its "risk-benefit analysis" or "would want to understand" before entering into an operating

agreement with PREPA.  *See* Chapados Declaration at 17, 20.  Chapados applies these opinions

specifically to the Proposed Settlement—a highly complicated, multipart transaction seeking to

resolve $8.5 billion in legacy bond debt through the issuance of new bonds.  Chapados cannot

12

possibly offer this testimony without relying on his years of experience in and education

regarding the financial sector—in other words, his opinions based on the reasoning of an

"average person in everyday life." *See Vega*, 813 F.3d at 394.

34.   

. *See, e.g.*, **Exhibit B**

(Chapados Dep. Tr.  119:5-19; 128:7-8; 143:6-147:13; 149:19).

. *Id*. at 111:23-112:9; 141:11-16; 149:15-19.  Thus, Chapados effectively

conceded that he purports to be acting as an expert witness.

35.   Indeed, Chapados' testimony is similar to testimony that has been excluded in

other cases.  For example, in *Bank of China*, the Second Circuit held that it was error for the

district court to admit lay opinion testimony by a bank employee regarding the nature of certain

business transactions where the testimony was "based on [the witness'] many years of

experience in international banking and trade," as opposed to observations he made during the

course of an investigation of the business in question.  *Bank of China*, 359 F.3d at 180-82 ("to

the extent Huang's testimony was not a product of his investigation, but rather reflected

specialized knowledge he has because of his extensive experience in international banking, its

admission pursuant to Rule 701 was error").  Similarly, in *United States v. Frantz*, 2004 WL

5642909 (C.D. Cal. Apr. 23, 2004), the court held that certain IRS auditors could testify

regarding "factual observations they made during the course of their audit, to the extent . . .

13

based on their rational perception of information and events," but not about "'what they found

out during their audit' to the extent that their 'findings' are based on their background and

expertise as IRS auditors." *Id*. at *12.

36.     The same analysis applies here.  Under Rule 701, Chapados may not offer

opinions based on his decade of experience in the utility industry, but rather only based on his

rational perceptions of PREPA in particular.  As discussed below, however, any testimony based

on Chapados' "perceptions" is inadmissible in light of the Stipulation.

**II.     To the Extent Chapados' Testimony is Rationally Based on His Perceptions, It
          Violates the Stipulation**

37.     As discussed above, Chapados ███████████████████████████

████████████████████████████████████████████████████████████

███████████████████████.  Chapados cannot, however, offer testimony that is based

on communications with potential operators because the Stipulation prevents him from doing so.

38.     Specifically, the Stipulation makes clear that the Government Parties may not rely

on, "either directly or indirectly, statements, assertions, opinions, actions taken, actions not

taken, or views expressed by a Transformation Party to support any allegation, argument, request

for relief, or other position in connection with the 9019 Motion."  Stipulation ¶ 3.  This means,

among other things, that "no witness or expert providing testimony on behalf of or called by the

RSA Parties may use or refer to information acquired from or attributed to a Transformation

Party to support the assertion in the 9019 Motion that the settlement of PREPA bond claims will

help facilitate the Proposed Transformation."  *Id*.

39.     Here, the Government Parties are attempting to introduce Chapados' testimony

precisely for the purpose of arguing that the Proposed Settlement will facilitate the

Transformation.  Accordingly, to the extent Chapados' opinions are based on his

communications with potential operators, ███████████████, the Stipulation prevents

the Government Parties from introducing such testimony.[7]

### III.  Based on the Court's Prior Rulings, Chapados' Testimony Is Not Helpful to Clearly Understanding the Witness's Testimony or Determining a Fact in Issue

40.  Pursuant to Federal Rule of Evidence 701(b), lay opinion testimony is only

admissible to the extent it is "helpful to clearly understanding the witness's testimony or to

determining a fact in issue" in the litigation.  The testimony in the Chapados Declaration fails to

satisfy either aspect of this standard.

41.  First, the opinions that Chapados purports to offer do not help the Court

understand the remainder of his testimony.  Stripped of his opinions regarding the effect of the

Proposed Settlement on the Transformation, Chapados' testimony consists of nothing more than

summary descriptions of his personal background and experience and his understanding of the

Transformation process.  Such testimony is not in and of itself relevant to the Court's analysis of

the 9019 Motion, nor is it hard to understand.  Therefore, the Court need not (and should not)

admit Chapados' opinions to gain a clear understanding of the balance of his testimony.

42.  Second, based on the Court's prior rulings regarding the scope of the 9019

Hearing, Chapados' opinions are not helpful to determining a fact in dispute.  On October 10,

2019, the Court issued an order upholding Magistrate Judge Dein's decision denying the

Committee certain discovery, including discovery relating to the Transformation process.  [Case

No. 17-3283, Docket No. 8837].  In doing so, the Court held that "the details of implementation,

and the prospects for the ultimate success, of the proposed transformation are not being litigated

---

[7]  Any statements of potential operators on which Chapados purports to rely are also inadmissible hearsay.
Thus, even if Chapados' opinions did not violate the Stipulation (they do), they are inadmissible for another reason.
Moreover, Chapados' reliance on hearsay, which is potentially permissible only for a disclosed Rule 702 expert,
further supports the conclusion that he is not a proper lay opinion witness.

Case:17-03283-LTS   Doc#:9258   Filed:11/19/19   Entered:11/19/19 18:55:02   Desc: Main
Document     Page 23 of 25

in the context of the 9019 Motion." *Id*. at 12.  So long as this ruling remains in place,[8]

Chapados' testimony regarding the impact of the settlement on the continuing interest of

potential operators in the Transformation—which necessarily relates to the Transformation's

ultimate likelihood of success—has no bearing on the issues in dispute.

43.     Accordingly, the opinions that Chapados offers are not helpful to the Court and

therefore fail to satisfy Rule 701(b).

## <u>CONCLUSION</u>

44.     WHEREFORE, the Committee respectfully requests that the relief sought herein

be granted in full and the Court enter an order in the form attached hereto.

---

[8]     The Committee reserves all rights with respect to this ruling.

Dated: November 19, 2019

*/s/ Luc A. Despins*
PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors
for all Title III Debtors*

- and –

*/s/ John Arrastia*
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
GENOVESE JOBLOVE & BATTISTA, P.A
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of
Unsecured Creditors for all Title III Debtors*

- and -

/s/ Juan J. Casillas Ayala
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC -
PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors*