# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | |
| as representative of | ) | Case No. 3:17-bk-03283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| Debtors. | ) | |
| | X | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | |
| as representative of | ) | Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| Debtor. | ) | |
| | X | |

# RENEWED MOTION OF CERTAIN SECURED CREDITORS
# OF THE EMPLOYEES RETIREMENT SYSTEM OF THE
# GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
# <u>FOR APPOINTMENT AS TRUSTEES UNDER 11 U.S.C. § 926</u>

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 2

JURISDICTION AND VENUE ........................................................................................ 5

FACTUAL BACKGROUND ............................................................................................ 5

    A.    From Its Creation, ERS Was Intended To Be A Trust Independent
        From The Commonwealth ....................................................................... 5

    B.    Congress Enacts PROMESA And The Oversight Board Begins
        Representing Both The Commonwealth And ERS....................................... 7

    C.    The Commonwealth And The Oversight Board Pass Legislation
        Dismantling ERS And Seizing Its Assets While ERS Is A Title III
        Debtor Protected By The Automatic Stay .................................................. 8

ARGUMENT .................................................................................................................. 10

THE COURT SHOULD APPOINT THE BONDHOLDERS OR AN INDEPENDENT
THIRD-PARTY FIDUCIARY APPROVED BY THE BONDHOLDERS AS
TRUSTEES UNDER § 926 OF THE BANKRUPTCY CODE .................................... 10

    A.    Section 926 Permits A Title III Court To Appoint A Trustee To Pursue
        Avoidance Actions On Behalf Of The Debtor.................................................. 11

    B.    ERS Has Claims Against The Commonwealth Under § 549 And § 544
        That The Oversight Board Has Unjustifiably Failed To Pursue........................ 12

        1.    A Trustee Could Avoid The Transfers Effected By The
            Post-Petition Legislation Under § 549..................................................... 12

        2.    A Trustee Could Also Avoid The Transfers Effected By The
            Post-Petition Legislation Under § 544..................................................... 14

        3.    The Oversight Board's Justifications for Refusing to Bring
            § 549 And § 544 Claims Lack Merit ...................................................... 15

    C.    The Oversight Board Is Laboring Under A Deeply Problematic And
        Unresolvable Conflict Of Interest Because It Is Representing Parties
        With Opposing Interests In The Same Case And Disregarding The
        Best Interest Of One Of Those Parties.................................................... 16

        1.    The Oversight Board Has Ignored ERS's Independent Status
            Under PROMESA And Puerto Rico Law, As Well As ERS's
            Fiduciary Duties To Its Creditors ......................................................... 17

        2.    The Conflict Is Actual, Not Theoretical ................................................. 19

        3.    Elsewhere The Oversight Board Has Acknowledged That
            It Cannot Represent Both Sides To A Controversy................................. 20

## TABLE OF CONTENTS

(continued)

| | | **Page** |
|---|---|---|
| 4. | This Court Too Has Recognized The Danger Of Conflicts Of Interest | 21 |
| D. | Timely Appointment Of A Trustee Is Crucial | 22 |
| E. | The Court Should Appoint The ERS Bondholders Trustees; In The Alternative, The Court Should Appoint A Trustee Approved By The Bondholders As Trustee To Pursue ERS's Claims | 23 |
| CONCLUSION | | 24 |

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Acands, Inc.* v. *Travelers Cas. & Sur. Co.*,
  435 F.3d 252 (3d Cir. 2006)............................................................................20

*Commodity Futures Trading Comm'n* v. *Weintraub*,
  471 U.S. 343 (1985).....................................................................................18

*De Jesus Diaz* v. *Carrero*,
  12 P.R. Offic. Trans. 786 (P.R. 1982)................................................................15

*In re Bankvest Capital Corp.*,
  375 F.3d 51 (1st Cir. 2004)............................................................................12

*In re Delco Oil, Inc.*,
  599 F.3d 1255 (11th Cir. 2010) .......................................................................13

*In re Gibson Grp., Inc.*,
  66 F.3d 1436 (6th Cir. 1995) .........................................................................12

*In re Lopez-Soto*,
  764 F.2d 23 (1st Cir. 1985)............................................................................20

*In re Marrero*,
  382 B.R. 861 (B.A.P. 1st Cir. 2008)..................................................................12

*In re Merry-Go-Round Enters., Inc.*,
  400 F.3d 219 (4th Cir. 2005) .........................................................................14

*In re N.Y. City Off-Track Betting Corp.*,
  No. 09-17121, 2011 WL 309594 (Bankr. S.D.N.Y. Jan. 25, 2011) ........................12

*In re Owens Corning*,
  419 F.3d 195 (3d Cir. 2005)......................................................................18, 19

*In re Sepulveda Figueras*,
  193 B.R. 118 (Bankr. D.P.R. 1996) ..................................................................15

*In re Tougas*,
  338 B.R. 164 (Bankr. D. Mass. 2006) ...............................................................12

*In re WHET, Inc.*,
  750 F.2d 149 (1st Cir. 1984) (per curiam) ........................................................18

*In re WM Distribution, Inc.*,
  571 B.R. 866 (Bankr. D.N.M. 2017) .................................................................19

*U.S. Fid. & Guar. Co.* v. *Guzman*,
  Nos. 10-1078 & 11-1415, 2012 WL 4790314 (D.P.R. 2016)...........................14, 15

*Woods* v. *City Nat'l Bank & Tr. Co. of Chi.*,
  312 U.S. 262 (1941).....................................................................................18

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

11 U.S.C. § 301 ................................................................................................22

11 U.S.C. § 362 ........................................................................................3, 8, 13

11 U.S.C. § 544 .........................................................................................*passim*

11 U.S.C. § 546 ................................................................................................22

11 U.S.C. § 549 .........................................................................................*passim*

11 U.S.C. § 550 ...........................................................................................4, 11

11 U.S.C. § 552 ................................................................................................16

11 U.S.C. § 926 .........................................................................................*passim*

28 U.S.C. § 1331 ................................................................................................5

28 U.S.C. § 1391 ................................................................................................5

48 U.S.C. §§ 2101–2241 ....................................................................................3

48 U.S.C. § 2141 ..............................................................................................18

48 U.S.C. § 2161 .......................................................................................*passim*

48 U.S.C. § 2162 ................................................................................................7

48 U.S.C. § 2164 ...........................................................................................8, 18

48 U.S.C. § 2166 ................................................................................................5

48 U.S.C. § 2167 ................................................................................................5

48 U.S.C. § 2175 .............................................................................................7, 8

48 U.S.C. § 2195 ...........................................................................................4, 18

3 L.P.R.A. § 761 ................................................................................................5

3 L.P.R.A. § 763 ................................................................................................5

3 L.P.R.A. § 775 ................................................................................................5

3 L.P.R.A. § 781 ................................................................................................9

3 L.P.R.A. § 787f ................................................................................................5

3 L.P.R.A. § 787q ................................................................................................5

31 L.P.R.A. § 3028 ..........................................................................................14

31 L.P.R.A. § 3492 ..........................................................................................14

Civil Code Article 1064 ..................................................................................14

Civil Code Article 1243 ..................................................................................14

iv

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

Commonwealth's General Fund. Act 106 ...................................................................8, 9

**OTHER AUTHORITIES**

Commonwealth of Puerto Rico Financial Information and Operating Data Report,
GDB.PR.GOV (Oct. 30, 2014) .........................................................................5, 6

Commonwealth of Puerto Rico, Financial Information and Operating Data Report
(Dec. 18, 2016) .....................................................................................................6

Puerto Rico Oversight, Management, and Economic Stability Act,
Pub. L. No. 114-187, 130 Stat. 549 (2016) .........................................................3

Fed. R. Bankr. P. 6001 .......................................................................................12

*Municipal Secondary Market Disclosure Information Cover Sheet*,
AAFAF (Apr. 25, 2017) .......................................................................................6

Movants Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax- Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc. (hereinafter the "Bondholders" or "ERS Bondholders"),[1] all of whom

---

[1] Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P. Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps X Holdco Ltd.

are secured creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), respectfully move the Court for entry of an order appointing them as trustees, pursuant to § 926 of title 11 of the United States Code (the "Bankruptcy Code"), to pursue the claims in the attached proposed Complaint (Exhibit A) on behalf of ERS against the Commonwealth of Puerto Rico (the "Commonwealth") or, in the alternative, appointing, with the Bondholders' approval, an independent third-party fiduciary, such as Bettina M. Whyte, as trustee to pursue the claims in consultation with the Bondholders, provided that the fees and expenses of such independent third-party fiduciary shall be borne by ERS. In support of the motion, the ERS Bondholders state as follows:

## PRELIMINARY STATEMENT

The ERS Bondholders respectfully ask this Court to appoint them or, with their approval, an independent third-party fiduciary as trustee under 11 U.S.C. § 926 to pursue avoidance claims against the Commonwealth under 11 U.S.C. §§ 549 and 544. Such relief is necessary because the Financial Oversight and Management Board (the "Oversight Board" or "Board") has refused to litigate those claims. That is unsurprising, because the claims arise from Commonwealth legislation, enacted *after* the commencement of ERS's Title III case and at *the Oversight Board's behest*, purporting to dismantle ERS and transfer all of ERS's assets, including its revenues and its right to receive revenues, to the Commonwealth. And despite the fact that ERS was a debtor in its own Title III case and was an independent entity to which the Commonwealth owed statutory financial obligations, neither the Board's fiduciary duty to ERS nor ERS's fiduciary duty to its creditors appears to have been recognized or to have played any role in the Board's decision-making. Section 926 was designed for just such circumstances, in which a conflict of interest has

2

disabled a debtor or its representatives from pursuing claims in the debtor's own best interest or that of its creditors.

Elsewhere the Oversight Board has recognized the impossibility of simultaneously representing the Commonwealth and other entities with interests adverse to those of the Commonwealth. For instance, in a dispute between the Puerto Rico Sales Tax Financing Corporation ("COFINA") and the Commonwealth—both of which the Board represents—the Board sought appointment of independent representation for COFINA (Bettina M. Whyte, who was selected by COFINA creditors) and the Commonwealth (in the case of the Commonwealth, an official committee that did not have a disabling conflict) so that both COFINA and the Commonwealth would have loyal representatives and advisors. But here the Board has steadfastly refused to chart a similar course, even though the conflict in COFINA's case was in many respects less severe than the Board's total plundering and destruction of ERS at the hands of the Commonwealth.[2]

Congress provided tools for remedying such unusual and problematic situations in the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Pub. L. No. 114-187, 130 Stat. 549 (2016), *codified at* 48 U.S.C. §§ 2101–2241. *First*, PROMESA's automatic-stay provision prohibits any attempt to gain possession of or control over a debtor's property, 11 U.S.C. § 362(a)(3); 48 U.S.C. § 2161(a) (incorporating § 362 into PROMESA).  The automatic stay forbids the Board and the Commonwealth's actions destroying ERS and seizing its property. *Second*, PROMESA allows a debtor to avoid and recover the value of an unauthorized

---

[2] Neither the Official Committee of Unsecured Creditors nor the Official Committee of Retired Employees of the Commonwealth of Puerto Rico would be a suitable representative of ERS, because both committees represent both creditors of the Commonwealth and creditors of ERS, and therefore have the same conflicts as the Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority.

or fraudulent transfer of property. *See* 11 U.S.C. §§ 544(b), 549(a), 550; 48 U.S.C. § 2161(a) (incorporating §§ 544, 549(a), 550 into PROMESA). The relevant provisions allow ERS to invalidate the Commonwealth's legislation and recover ERS's transferred property. *And third*, as noted, PROMESA allows a Title III court, on request of a creditor, to appoint a trustee to pursue avoidance claims where the debtor has refused to do so itself. *Id.* § 926(a). That appointment power was designed for just such cases as this one, where a debtor is unwilling or unable to sue a transferee, notwithstanding the debtor's own best interest or that of its creditors.[3]

The Bondholders have attached a proposed Complaint setting forth ERS's claims against the Commonwealth. The Bondholders have asked the Board to pursue these claims (Exhibit B), but the Board has refused to do so (Exhibit C). Absent relief under § 926, neither interested parties nor the Court can be assured of a fair outcome because they will not have benefited from the zealous advocacy on which our adversarial system relies. Moreover, timely relief at this stage of the proceedings is appropriate because (i) the Oversight Board has now proposed a Title III joint plan of adjustment (the "Proposed Joint Plan of Adjustment") for the Commonwealth, ERS, and the Public Buildings Authority that seeks to provide ERS Bondholders with a mere fraction of the recovery offered to bondholders of other Title III Debtors, including the Commonwealth, and (ii) under the tolling agreement agreed to by the Oversight Board in connection with the ERS Bondholders' prior motion to appoint a § 926 trustee, the deadline to file avoidance claims against the Commonwealth on behalf of ERS will expire early next year.

---

[3] This list is not exhaustive. For example, PROMESA also provides a protection against inter-debtor transfers that is enforceable if the automatic stay is lifted. 48 U.S.C. § 2195.

## JURISDICTION AND VENUE

This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a). Venue is proper pursuant to 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a).

## FACTUAL BACKGROUND

### A.   From Its Creation, ERS Was Intended To Be A Trust Independent From The Commonwealth

In 1951, ERS was created by legislation as an independent, self-governing trust to provide pension and other benefits to officers and employees of the Commonwealth government, members and employees of the Legislative Assembly, and officers and employees of Commonwealth public corporations and municipalities. *See* 3 L.P.R.A. §§ 761, 775. ERS's Enabling Act established a Board of Trustees responsible for setting policy for ERS and overseeing the operations of ERS consistent with the Act. *Id.*

Until legislation that took effect on July 1, 2017, *see infra* pp. 8–9, ERS was funded by employer contributions, employee contributions, and its investment earnings. *See, e.g.*, 3 L.P.R.A. §§ 763(42), 787f, 787q. Employers were required to pay monthly contributions to ERS. ERS's "statutory right to receive [e]mployer[] [c]ontributions [was] an obligation of the [e]mployers and a legal asset of [ERS]." Bond Resolution VI-1, Adversary Compl., Ex. A, *Altair Glob. Credit Opportunities Fund (A), LLC v. Puerto Rico*, Adv. Proc. Nos. 3:17-ap-219 & 3:17-ap-220 (D.P.R. July 27, 2017), ECF No. 1-1 ("Bond Resolution").

The Commonwealth was ERS's largest participating employer. Historically, the Commonwealth was responsible for approximately 59 percent of employer contributions, while Puerto Rico municipalities and public corporations were responsible for the remainder. *See, e.g.*, Commonwealth of Puerto Rico, Financial Information and Operating Data Report 88 n.6, 130 (Oct.

5

30, 2014); Commonwealth of Puerto Rico, Financial Information and Operating Data Report 228 (Dec. 18, 2016).[4]

ERS had the statutory authority to compel the payment of unpaid employer contributions, and any contributions in arrears for more than 30 days had priority over any other outstanding debt of a public employer. Puerto Rico law also provided for criminal penalties for the failure to remit employer contributions to ERS in a timely manner.

Despite the importance of employer contributions to ERS, the Commonwealth has never paid ERS enough to satisfy its statutory contribution requirements. By the date of ERS's Title III petition, the Commonwealth owed ERS more than $411 million. ERS, Annual Financial Information Fiscal Year 2016, at 13 n.1.[5] ERS never used its statutory ability to enforce those obligations.

Consequently, ERS was forced to seek outside funding to continue paying pension benefits. In 2008, ERS issued bonds pursuant to and governed by a Pension Funding Bond Resolution. *See* Bond Resolution. The majority of ERS bonds were sold to individual Puerto Rico residents and local businesses, and many are still held by those persons and entities.

An integral part of ERS's bond issuance was an extensive security package designed to protect the bondholders' investment. ERS granted bondholders, through a Fiscal Agent, a security interest in and lien on certain ERS property, including, *inter alia*, all employer contributions received by ERS, all "right, title, and interest of [ERS] in and to" those contributions, and "all

---

[4] Online at *Commonwealth of Puerto Rico Financial Information and Operating Data Report*, GDB.PR.GOV (Oct. 30, 2014), http://www.gdb.pr.gov/documents/Commonwealth Report-October302014.pdf and *Commonwealth of Puerto Rico Financial Information and Operating Data*, GDB.PR.GOV (Dec. 18, 2016), Report http://www.gdb.pr.gov/documents/ CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf.

[5] Online at *Municipal Secondary Market Disclosure Information Cover Sheet*, AAFAF (Apr. 25, 2017), https://emma.msrb.org/ER1050099-ER822796-ER1223828.pdf.

rights to receive [those contributions]." Bond Resolution § 501, at VI-8 & Ex. B, VI-36. That property was to remain "free and clear of any other pledge, lien, charge, or encumbrance," *id.* § 705, at VI-15, and was to be used to make timely principal and interest payments on ERS Bonds, *id.* § 501, at VI-8. Notably, ERS pledged its statutory right to collect employer contributions to secure the bonds, and that right was exercisable upon default. *Id.* § 501, at VI-8; *id.* § 1102, at VI-22. ERS further promised bondholders that it would "oppose any attempt by the Legislature of the Commonwealth to reduce the Employers' Contribution Rate or to make any other change in … relevant legislation that would have a material adverse effect on Bondholders." *Id.* § 709(2), at VI-16.

## B.    Congress Enacts PROMESA And The Oversight Board Begins Representing Both The Commonwealth And ERS

On June 30, 2016, Congress enacted PROMESA. Under the financial restructuring authority provided by Title III of PROMESA, the Oversight Board filed petitions on behalf of both the Commonwealth and ERS on May 3 and 21, 2017, respectively, *see In re Fin. Oversight & Mgmt. Bd. ex rel. Puerto Rico*, No. 17-bk-3283 (D.P.R.), ECF No. 1; *In re Fin. Oversight & Mgmt. Bd. ex rel. Emps. Ret. Sys.*, No. 17-bk-3566 (D.P.R.), ECF No. 1; 48 U.S.C. §§ 2162, 2175, purporting to serve as each debtor's representative despite ERS's and the Commonwealth's directly conflicting interests—as noted, the Commonwealth owes ERS vast sums of money. The Oversight Board continues to represent both debtors simultaneously, in some cases, even by the very same lawyers.

Notwithstanding the Oversight Board's simultaneous representation of ERS and the Commonwealth, PROMESA treats each debtor as a separate entity. Territories and covered territorial instrumentalities are considered separate entities, 48 U.S.C. § 2162(1), and each entity gets to decide for itself whether it "desires to effect a plan to adjust its debts," *id.* § 2162(3). And

although the Oversight Board is the representative of each debtor, *id.* § 2175(b), PROMESA states that "nothing in [Title III] shall be construed as authorizing substantive consolidation of the cases of affiliated debtors," *id.* § 2164(f), even if the cases are administered jointly, *id.* § 2164(g).

### C.  The Commonwealth And The Oversight Board Pass Legislation Dismantling ERS And Seizing Its Assets While ERS Is A Title III Debtor Protected By The Automatic Stay

The filing of ERS's Title III petition on May 21, 2017, triggered the operation of the automatic stay to protect ERS's property. 11 U.S.C. § 362; 48 U.S.C. § 2161(a) (incorporating § 362 into PROMESA). On June 25, 2017, in total disregard of the ERS automatic stay, however, the Puerto Rico Legislative Assembly passed Joint Resolution for Other Allocations for Fiscal Year 2017–2018 ("Joint Resolution 188" or "J.R. 188") pursuant to the Fiscal Plan the Oversight Board had approved and certified for the Commonwealth. On June 30, 2017, the Oversight Board adopted the resolution on behalf of the Governor, who subsequently signed it. Joint Resolution 188 required ERS to sell its assets and transfer the net proceeds, plus any available funds, into the Commonwealth's General Fund. J.R. 188, §§ 1–3.[6] The resolution also required employers to make contributions directly to the Commonwealth's General Fund rather than to ERS. *Id.* §§ 1–4.

On August 23, 2017, with the automatic stay still in effect, the Governor signed a Law to Guarantee Payment to Our Pensioners and Establish a New Plan for Defined Contributions for Public Servants ("Act 106"). Act 106 further implemented Joint Resolution 188. The law stated that Joint Resolution 188 "eliminated" "[e]mployer [c]ontributions made heretofore," and purported to set up a new "Pay-Go Fee" that employers must pay directly into the Commonwealth's General Fund. Act 106, § 1.4, pp. 23–24. As suggested by the title of the

---

[6] In its most recent fiscal plan, the Commonwealth admits that "[s]ince FY2018 … the majority of the liquid assets in the retirement system have been depleted." New Fiscal Plan for Puerto Rico 29 (Oct. 23, 2018).

legislation, the "Pay-Go Fee" is nothing new, however, because the employers required to pay it are the same government entities (including the Commonwealth, public corporations, and municipalities) that were previously obligated to make contributions to ERS; indeed, even the "contributions" are the same obligations. *See id.* § 1.6(g), p. 25 (requiring payments from "entities deemed as employers under the [ERS]"); *compare id.* § 2.1(b), pp. 29–30, *with* 3 L.P.R.A. § 781(a) (2008). Finally, Act 106 required ERS's Board of Trustees to dissolve by December 31, 2017, so a new board could be formed to dispose of ERS's property. Act 106, §§ 4.2, 5.1–5.3.

Act 106 and Joint Resolution 188 (together, the "Post-Petition Legislation") were in the best interest of no one except the Commonwealth, which wanted ERS's assets and property for other politically expedient purposes. The legislation, which dismantled ERS and seized its assets, was certainly not in ERS's best interest. Nor was the Post-Petition Legislation in the best interest of ERS's creditors. Instead, the Post-Petition Legislation purported to change the Commonwealth's financial relationship with ERS by transferring all of ERS's assets to the Commonwealth for its own purposes.

On January 28, 2019, the ERS Bondholders asked the Oversight Board to pursue avoidance claims against the Commonwealth on behalf of ERS. *See* Letter from Bruce S. Bennett and John K. Cunningham to Martin J. Bienenstock (Exhibit D). After the Board failed to respond, the ERS Bondholders moved this Court for entry of an order to appoint them as trustees pursuant to § 926 of the Bankruptcy Code to pursue avoidance claims against the Commonwealth on behalf of ERS. *Motion Of Certain Secured Creditors Of The Employees Retirement System Of The Government Of The Commonwealth Of Puerto Rico For Appointment As Trustees Under 11 U.S.C. § 926* [Case No. 17-3283, ECF No. 5169] (the "Initial 926 Motion"). On February 28, 2019, the ERS Bondholders withdrew the Initial 926 Motion without prejudice in light of the Court's entry of the

*Stipulation Between The Commonwealth Of Puerto Rico And The Employees Retirement System Of The Government Of The Commonwealth Of Puerto Rico Regarding The Tolling Of Statute Of Limitations And Order* [Case No. 17-3283, ECF No. 5271] (the "Tolling Stipulation"), and to allow the parties additional time to continue discussions to reach a consensual resolution of the Initial 926 Motion. *Notice of Withdrawal Without Prejudice of Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926* [Case No. 17-3283, ECF No. 5273].

On October 30, 2019, the ERS Bondholders again asked the Oversight Board to pursue, on behalf of ERS, the avoidance claims identified in this motion and the attached proposed Complaint. *See* Letter from Bruce S. Bennett and John K. Cunningham to Martin J. Bienenstock (Exhibit B). The Oversight Board refused the ERS Bondholders' request. *See* Letter from Martin J. Bienenstock to Bruce S. Bennett and John K. Cunningham (Exhibit C). As explained below, the Oversight Board's justifications for its refusal to bring the avoidance claims lack merit.

## ARGUMENT

### THE COURT SHOULD APPOINT THE BONDHOLDERS OR AN INDEPENDENT THIRD-PARTY FIDUCIARY APPROVED BY THE BONDHOLDERS AS TRUSTEES UNDER § 926 OF THE BANKRUPTCY CODE

The Oversight Board has declined to pursue ERS's claims against the Commonwealth because it is suffering from an incurable conflict of interest given its simultaneous representation of both the Commonwealth and ERS and its role in mandating the Post-Petition Legislation. The Board's inaction is deeply inequitable to both ERS and its creditors, to whom ERS owes a fiduciary duty. But this Court can remedy the situation. By incorporating § 926 of the Bankruptcy Code, PROMESA authorizes a Title III court to appoint a trustee to prosecute certain types of avoidance actions the debtor has refused to pursue. The ERS Bondholders' proposed complaint identifies two such causes of action, one each under § 549 and § 544 of the Bankruptcy Code, that the Oversight

10

Board should have asserted against the Commonwealth based on the Post-Petition Legislation's transfer of ERS's assets to the Commonwealth. A trustee appointed by this Court under § 926 would be able to avoid those transfers and recover their value for ERS and its creditors. The Oversight Board's conflict of interest in representing both the Commonwealth and ERS is the only possible explanation for its refusal to bring those valuable claims. Accordingly, the Court should appoint the Bondholders or an independent third-party fiduciary approved by the Bondholders as trustees under § 926.  If the Court appoints an individual approved by the Bondholders as trustee under § 926, the Court should require ERS to pay the fees and expenses incurred by that individual and the professionals that he or she engages in connection with performing his or her duties as trustee.

### A.    Section 926 Permits A Title III Court To Appoint A Trustee To Pursue Avoidance Actions On Behalf Of The Debtor

Section 926 provides that "[i]f the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of [the Bankruptcy Code], then on request of a creditor, the court may appoint a trustee to pursue such cause of action." 11 U.S.C. § 926(a); *see* 48 U.S.C. § 2161(a) (incorporating § 926(a) into PROMESA). As relevant here, §§ 549 and 544 allow the debtor to avoid unlawful postpetition transfers, and § 550(a) allows the debtor to recover the transfers or their value from the transferee.

A conflict of interest is ample reason to appoint a trustee. *See generally* 6 Collier on Bankruptcy ¶ 926.02 (16th ed. rev. 2018) ("The reason for section 926(a) derives from the possible reluctance of a debtor to bring an action against one of its creditors during the course of a chapter 9 case," whether because "the debtor actually favors the transfer rather than opposes it" or because the debtor is unwilling, "while it is attempting to negotiate a plan, to antagonize its creditors."). "Section 926 explicitly anticipates and is intended to address those scenarios in which the debtor

does not consent to the pursuit of a cause of action." *In re N.Y. City Off-Track Betting Corp.*, No.
09-17121, 2011 WL 309594, at *6 (Bankr. S.D.N.Y. Jan. 25, 2011). As courts have recognized in
the analogous context of derivative standing, a debtor abuses its discretion and acts unjustifiably
where it "acts under the influence of conflicts of interest" and "favor[s] certain creditors over
others." *In re Gibson Grp., Inc.*, 66 F.3d 1436, 1441 (6th Cir. 1995). And where appointment of a
trustee is warranted, "the court is given unfettered discretion in determining whom to appoint as a
trustee." 6 Collier, *supra*, ¶ 926.02[3].

### B. ERS Has Claims Against The Commonwealth Under § 549 And § 544 That The Oversight Board Has Unjustifiably Failed To Pursue

#### 1. A Trustee Could Avoid The Transfers Effected By The Post-Petition Legislation Under § 549

"[S]ection 549 of the Bankruptcy Code. . . provides that a trustee may avoid certain post-
petition transfers of property." *In re Bankvest Capital Corp.*, 375 F.3d 51, 62 (1st Cir. 2004). The
statute provides, in relevant part, that a "trustee may avoid a transfer of property. . . that occurs
after the commencement of the case; and. . . that is not authorized under [the Bankruptcy Code] or
by the court." 11 U.S.C. § 549(a)(1), (2)(B). PROMESA expressly makes that power available to
a trustee appointed under Bankruptcy Code § 926. *See id*. § 926(a) (trustee may pursue action
under § 549(a)); 48 U.S.C. § 2161(a) (incorporating §§ 549(a) and 926 into PROMESA).

To establish a § 549(a) claim, the trustee must allege that (1) property of the debtor (2) was
transferred (3) after commencement of the case, and that (4) the transfer was not authorized by
either the Bankruptcy Code or the court. *See In re Tougas*, 338 B.R. 164, 177–78 (Bankr. D. Mass.
2006); *accord In re Marrero*, 382 B.R. 861, 865–66 (B.A.P. 1st Cir. 2008). The burden of proof
then shifts to the "entity asserting the validity of [the] transfer." Fed. R. Bankr. P. 6001; *see, e.g.*,
*Marrero*, 382 B.R. at 865 ("no error of law in the bankruptcy court's conclusion that [creditor]
failed to meet its burden of showing that the delivery of the new mortgage was not a transfer of

estate property subject to avoidance under § 549(a)"); *In re Delco Oil, Inc.*, 599 F.3d 1255, 1259 (11th Cir. 2010).

Those requirements are easily met here. *First*, by way of the Post-Petition Legislation, the Commonwealth seized and transferred ERS's property to itself, as the Oversight Board has recently admitted. *See* Board's Mot. to Dismiss Pls.' Compl. at 6, *Am. Fed'n of Teachers* v. *Commonwealth of Puerto Rico*, Adv. Proc. No. 3:18-ap-134 (D.P.R. Jan. 8, 2019), ECF No. 11 ("Mot. to Dismiss Am. Fed'n Teachers' Compl.") ("Pursuant to Law 106, participants no longer make contributions to (or accumulate benefits in) the retirement systems established in 1951 [*i.e.*, ERS], and their employers have ceased to make contributions to those systems . . . . Instead, participants now contribute to the Defined Contribution Plan."); *see also supra* pp. 8–9. The Post-Petition Legislation dismantled ERS, seized its assets, and redirected its contribution streams into the Commonwealth's General Fund. *See supra* pp. 8–9. *Second*, that legislation and the resulting transfers of ERS's property occurred well after the filing of ERS's Title III petition on May 21, 2017. Joint Resolution 188 was passed by the Puerto Rico Legislative Assembly on June 25, 2017, and adopted on June 30, 2017, by the Oversight Board on behalf of the Governor, who subsequently signed it. Act 106 was signed by the Governor on August 23, 2017. *See supra* pp. 8–9. *Finally*, the transfers of ERS's property were not authorized by either the Bankruptcy Code or the Court. Nothing in PROMESA or the Bankruptcy Code allows the seizure of a Title III debtor's property without authorization.

In fact, the automatic stay triggered by the filing of ERS's Title III petition on May 21, 2017, *prohibits* such post-petition transfers by enjoining "any act to obtain possession of [ERS's] property. . . or to exercise control over [ERS's] property." 11 U.S.C. § 362(a)(3). It is difficult to

imagine a more egregious stay violation than the Commonwealth and Oversight Board's working together to dismantle ERS and take all of its assets by enacting the Post-Petition Legislation.

The Oversight Board cannot defend the validity of the transfers effected by the Post-Petition Legislation. The Board has never disputed that the transfers occurred or that they occurred *after* the filing of ERS's Title III petition. And because the transfers were seizures of ERS's property that violated the automatic stay, the Oversight Board cannot carry its "burden of proving that the transfers were 'authorized.'" *In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 225 (4th Cir. 2005).

### 2. A Trustee Could Also Avoid The Transfers Effected By The Post-Petition Legislation Under § 544

Section 544(b)(1) of the Bankruptcy Code provides that a "trustee may avoid any transfer of an interest of the debtor in property. . . that is voidable under applicable law by a creditor holding an [allowable] unsecured claim." PROMESA expressly gives that authority to a trustee appointed under § 926. *See* 11 U.S.C. § 926(a) (trustee may pursue action under § 544(b)); 48 U.S.C. § 2161(a) (incorporating §§ 544(b) and 926 into PROMESA).

In this case, the "applicable law" is Puerto Rico fraudulent transfer law, including Articles 1064 and 1243 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3028, 3492. Article 1064 of the Civil Code of Puerto Rico allows creditors to "impugn the acts which the debtor may have performed in fraud of [a creditor's] right." 31 L.P.R.A. § 3028. Article 1243 of the Civil Code of Puerto Rico allows transfers executed in fraud of creditors to be rescinded when creditors "cannot recover, in any other manner, what is due them." 31 L.P.R.A. § 3492(3). "Actions to rescind a fraudulent conveyance. . . are evaluated with reference to the principles of contract law derived from the Puerto Rico Civil Code." *U.S. Fid. & Guar. Co.* v. *Guzman*, Nos. 10-1078 & 11-1415, 2012 WL 4790314, at *6 (D.P.R. 2016).

Courts consider various factors to determine whether a transfer is fraudulent under Puerto Rico law. The debtor need not have "intended to harm his creditors"; it is enough "that he knew of the results of his action." *In re Sepulveda Figueras*, 193 B.R. 118, 120-21 (Bankr. D.P.R. 1996). Courts also consider whether the transfer was for inadequate consideration, whether the transfer was made in haste, and the debtor's insolvency; courts additionally assess the relationship between the debtor and the transferor as well as the state of the business of the debtor and of the judicial claims against him. *See De Jesus Diaz* v. *Carrero*, 12 P.R. Offic. Trans. 786, 789, 795 (P.R. 1982); *Guzman*, 2012 WL 4790314, at *6 (citing *In re El Mundo Corp.*, 208 B.R. 781, 783 & n. 1 (D.P.R. 1997)).

Under that rubric, the Post-Petition Legislation effected fraudulent transfers of ERS's property. *First*, ERS received no or inadequate consideration, because the Commonwealth transferred all or substantially all of ERS's property without assuming all of ERS's obligations, including its obligations to the Bondholders. *Second*, the transfers were executed by the Commonwealth, an insider of ERS and one that owed substantial funds to ERS. *Third*, at the time the transfers were made, ERS was experiencing severe underfunding caused, in large part, by the Commonwealth's own failure to make hundreds of millions of dollars in statutorily required contributions. *See supra* pp. 5–6. The transfers effectuated by the Post-Petition Legislation left ERS insolvent. *Finally*, at the time of the transfers, the Commonwealth was aware of ERS's obligations to its bondholders and enacted the Post-Petition Legislation as a means to avoid those obligations and instead use those assets for other purposes.

### 3. The Oversight Board's Justifications for Refusing to Bring § 549 And § 544 Claims Lack Merit

In its letter to the ERS Bondholders explaining its decision to refuse to bring the avoidance claims, the Oversight Board claims that "ERS has no plausible avoidance actions against the

Commonwealth relating to employer contributions." Exhibit C at p. 2. Specifically, the Oversight Board asserts that the "Pay-Go Fees" that employers pay directly into Commonwealth's General Fund pursuant to the Post-Petition Legislation "are not the 'same' asset as the employer contributions" securing the ERS Bonds. *Id.* As explained in the attached complaint, however, the "Pay-Go Fee" was nothing new because the employers required to pay it are the same government entities that were previously obligated to make contributions to ERS; indeed, even the "contributions" are the same obligations. Exhibit A ¶ 6. The Oversight Board also claims that the ERS Bondholders agreed that these claims will be addressed after the Court of Appeals in the First Circuit renders its decision on the issue of whether section 552 of the Bankruptcy Code applies to prevent the post-petition attachment of a lien on fees made pursuant to ERS's enabling act. Exhibit C at pp. 2–3. But nothing in the order cited by the Oversight Board addresses the avoidance claims. *Order Granting Urgent Motion to Modify Order Regarding Stay and Mandatory Mediation With Respect to Certain Issues Raised in Certain Contested Matters and Adversary Proceedings Related to the Bonds Issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [Case No. 17-3566, ECF No. 687]. And, as explained below, a decision to bring the avoidance claims cannot await the outcome of the First Circuit appeal, as the claims may soon be rendered meaningless by the Proposed Joint Plan of Adjustment or barred by the applicable statutes of limitations, as extended by the Tolling Stipulation.

> ### C.   The Oversight Board Is Laboring Under A Deeply Problematic And Unresolvable Conflict Of Interest Because It Is Representing Parties With Opposing Interests In The Same Case And Disregarding The Best Interest Of One Of Those Parties

Even though ERS, as an independent, self-governing trust separate from the Commonwealth, has claims against the Commonwealth, the Oversight Board has refused to pursue those claims. *See supra* pp. 5, 9–10; Part B. That refusal is inexcusable given the Oversight Board's

responsibility for representing ERS in its Title III case. But it is also unsurprising given the
Oversight Board's simultaneous representation of the Commonwealth. The Board's representation
of both sides means that it cannot possibly be acting with undivided loyalty in the best interest of
ERS, and the circumstances make clear that the Board has chosen ERS and its creditors for
unfavorable treatment. That conflict is manifest in the Proposed Joint Plan of Adjustment recently
filed by the Board, which seeks to provide ERS Bondholders with a mere fraction of the recovery
offered to bondholders of other Title III Debtors, including the Commonwealth. *Disclosure
Statement for the Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, the
Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the
Puerto Rico Public Buildings Authority* [Case No. 17-3283, ECF No. 8766 at pp. 12–14]. And
although that structural conflict alone should be disqualifying, the Oversight Board's role in
promulgating and defending the Post-Petition Legislation—which, if not invalidated, will destroy
ERS entirely—provides still further reason to appoint a trustee to prosecute these claims on ERS's
behalf. The Oversight Board cannot be both pillager (for the Commonwealth) and fiduciary to the
victim (for ERS).

## 1. The Oversight Board Has Ignored ERS's Independent Status Under PROMESA And Puerto Rico Law, As Well As ERS's Fiduciary Duties To Its Creditors

The Oversight Board's role in prompting the Post-Petition Legislation demonstrates its
refusal to treat ERS as the independent entity that both Puerto Rico law and PROMESA recognize
it to be. *See e.g.*, Mot. to Dismiss Am. Fed'n Teachers' Compl. at 6 ("The first Commonwealth
fiscal plan the Governor proposed in March 2017 included reforms of retirement benefits. . . . The
Oversight Board modified the plan and called for prompt legislation to effectuate, among other
things, a transition to defined-contribution accounts."). Puerto Rico law established ERS as an
independent trust, with a statutory right to collect employer contributions from the Commonwealth

and other government employers. *See supra* pp. 5–6. And PROMESA recognizes the independence of each debtor. For example, fiscal plans under PROMESA are expressly required to ensure that "assets, funds, or resources" of ERS are not to be "transferred to, or otherwise used for the benefit of" the Commonwealth. 48 U.S.C. § 2141(b)(1)(M). Similarly, PROMESA provides a cause of action to protect creditors from inter-debtor transfers. *See id.* § 2195. Indeed, PROMESA goes so far as to state that "nothing in [Title III] shall be construed as authorizing substantive consolidation of the cases of affiliated debtors." *Id.* § 2164(f); *see supra* p. 8. Even under background principles, "substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise," and so "this 'rough justice' remedy should be rare." *In re Owens Corning*, 419 F.3d 195, 199, 211 (3d Cir. 2005), *as amended* (Nov. 1, 2007). The Post-Petition Legislation, however, disregards ERS's independence and, when combined with the Oversight Board's irreconcilable conflict and position, operates to substantively consolidate ERS's case into the Commonwealth's.

That course of action is improper. In addition to having its own interests, ERS owes its own fiduciary duty to its creditors, including the Bondholders. The Board, as ERS's representative, has those same obligations. *See, e.g.*, *Commodity Futures Trading Comm'n* v. *Weintraub*, 471 U.S. 343, 355 (1985) ("[I]f a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession."); *In re WHET, Inc.*, 750 F.2d 149, 149 (1st Cir. 1984) (per curiam) (trustee "owes a fiduciary duty to debtor and creditors alike to act fairly and protect their interests"). But ERS and its representative cannot fulfill those duties if they are simultaneously beholden to the Commonwealth's conflicting interests. *See, e.g.*, *Woods* v. *City Nat'l Bank & Tr. Co. of Chi.*, 312 U.S. 262, 269 (1941) ("A fiduciary who represents security

holders in a reorganization may not perfect his claim to compensation by insisting that although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries 'at a level higher than that trodden by the crowd.'"); *In re WM Distribution, Inc.*, 571 B.R. 866, 872 (Bankr. D.N.M. 2017) ("Simultaneous representation of two related debtors presents a potential for an actual conflict of interest. Often inter-company transfers will exist, resulting in each debtor holding a claim against the other. Courts often find such dual representation a disqualifying actual conflict."). And PROMESA's disapproval of substantive consolidation is especially relevant here, where creditors like the ERS Bondholders "relied on the separateness of" ERS and the Commonwealth, *Owens Corning*, 419 F.3d at 210, in lending money to ERS.

### 2.     The Conflict Is Actual, Not Theoretical

The Oversight Board's conflict of interest is not only structural. It has also clearly affected the Board's decisions not to bring the claims identified in the Bondholders' proposed Complaint. As noted, both of those claims are against the Commonwealth and also concern the Oversight Board itself, whose Post-Petition Legislation purports to do nothing less than destroy ERS by seizing all its assets and ordering the dissolution of its Board of Trustees. But the conflict is still worse than that.  It infects not just the Oversight Board's decisions to enact and defend the Post-Petition Legislation, but also the Board's arguments in support of that legislation.

For instance, the Oversight Board has contended that there can be no automatic stay violation because ERS could seek to nullify the automatic stay retroactively. Board Mot. to Dismiss Pls.' Amended & Supplemented Compl. at 15–16, *Altair*, Adv. Proc. Nos. 3:17-ap-219 & 3:17-ap-220 (Nov. 17, 2017), ECF No. 41. *But see* ERS Bondholders' Opposition at 28–30, *Altair*, Adv. Proc. Nos. 3:17-ap-219 & 3:17-ap-220 (Dec. 20, 2017), ECF No. 50. Not only is that

19

meritless contention indicative of the Board's serious conflict, but it also deprives the Court of the

benefit of zealous advocacy on ERS's behalf. In any event, the automatic stay protects *creditors*

as well as debtors, *In re Lopez-Soto*, 764 F.2d 23, 27 (1st Cir. 1985) (Breyer, J.); consequently, it

"may not be waived and its scope may not be limited by a debtor," *Acands, Inc.* v. *Travelers Cas.*

*& Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006) (Alito, J.). And if not for the Oversight Board's effort

to defend its own conduct and that of the Commonwealth in enacting the Post-Petition Legislation,

there is no conceivable reason why the Board would *want* ERS to waive the automatic stay. The

Oversight Board cannot explain how, consistent with ERS's duties to the Bondholders and its prior

representations regarding the Bondholders' liens and bonds, ERS could consent to legislation that

dismantles it, requires it to transfer its property to the Commonwealth, and eliminates the ability

of the ERS Bondholders to recover the amounts ERS owes to them. Indeed, the Oversight Board

does not even attempt to do so, stating in its letter rejecting the avoidance claims that the ERS

Bondholders' "assertions of conflict" are rejected.  Exhibit C at p. 3.

### 3.   Elsewhere The Oversight Board Has Acknowledged That It Cannot Represent Both Sides To A Controversy

The Oversight Board cannot seriously dispute that a serious conflict inheres in its

simultaneous representation of ERS and the Commonwealth. Indeed, elsewhere the Board

*requested* and *consented to* the appointment of independent representatives for COFINA (Ms.

Whyte, who was selected by COFINA creditors) and the Commonwealth to resolve a dispute

between COFINA and the Commonwealth. *Stipulation & Order Approving Procedure Resolve*

*Commonwealth-COFINA Dispute* at 4, ¶ 4(b) [Case No. 17-3283, ECF No. 996]. The controversy

concerned whether sales and use taxes, which were pledged to secure COFINA bonds, were

property of the Commonwealth or COFINA. *Mot. of Debtors for Order Approving Procedure to*

*Resolve Commonwealth-COFINA Dispute* at 8, ¶ 17 [Case No. 17-3283, ECF No. 303]. In its

motion for approval of procedures to resolve the Commonwealth-COFINA dispute, the Oversight

Board requested appointment of independent Commonwealth and COFINA representatives on the

ground that it was "prudent to establish an independent debtor representative for the

Commonwealth and COFINA to fully advocate, at arm's length, on behalf of each Debtor to reach

a fair resolution." *Id.* at 13, ¶ 34. The Board clearly recognized that there was no legitimate

alternative to affording each debtor independent representation to pursue its individual interests.

There is no principled reason for the Board's willingness to appoint an independent fiduciary in

the COFINA dispute but not for ERS.

### 4.     This Court Too Has Recognized The Danger Of Conflicts Of Interest

COFINA is not alone in experiencing the distorting effects of the Board's conflicts of

interest. Earlier in these Title III proceedings, this Court rejected the Board's initial proposal, on

behalf of the Puerto Rico Electric Power Authority ("PREPA"), to obtain $1 billion in debtor-in-

possession financing from the Commonwealth. Feb. 15, 2018, Hr'g Tr. 232:10–12 [Case No. 17-

3283, ECF No. 2579]. The Court held the motion in abeyance pending an amended proposal. *Id.*

at 232:10–12.

The Court found that although the cooperative approach between the Commonwealth and

PREPA, both represented by the Oversight Board, "might be [admirable] under other

circumstances in aid of other aspects of Puerto Rico's renewal and debt adjustment process, it [did]

not meet the threshold requirements of [Bankruptcy Code] Section 364 and [did] not provide the

required predicate for Court approval of the proposed credit facility." *Id.* at 232:4–12. Recognizing

the inherent conflict of interest, the Court concluded "that a business judgment standard focused

solely on rationality from a PREPA business point of view is inappropriate and that fairness to the

body of PREPA stakeholders and, in particular, the bondholders, must be considered in light of

the fact that this is a transaction in which the parties to the proposed credit are closely related and

in which the decision-making is intertwined." *Id.* at 232:25–233:7. The circumstances here are far

worse—the decision-making is completely one-sided and in disregard of ERS's bondholders, and

yet is purportedly being conducted on behalf of both the Commonwealth and ERS.

### D.    Timely Appointment Of A Trustee Is Crucial

The applicable statutes of limitations permit avoidance actions under §§ 549 and 544

within limited periods only. With each passing day, the Oversight Board's failure to pursue those

actions prejudices ERS and its creditors and threatens to shut the door permanently. And there

certainly can be no assurance that the Oversight Board will take any action prior to the statutes of

limitations' expiring given its refusal to pursue the causes of action and its conflicting

representation of the ERS and the Commonwealth.

The statute of limitations for an action or proceeding under § 549 is "two years after the

date of the transfer sought to be avoided." 11 U.S.C. § 549(d). The Post-Petition Legislation went

into effect between July 1, 2017, and August 23, 2017. As a result, any § 549(a) claims were set

to expire no later than August 23, 2019, and perhaps earlier.  The limitations period under § 544

is even stricter—i.e., two years after the commencement of the case. See id. § 546(a) ("2 years

after the entry of the order for relief"); id. § 301(b) ("The commencement of a voluntary case under

a chapter of this title constitutes an order for relief … .").

Under the Tolling Stipulation, the Oversight Board agreed that the statutory deadlines for

avoidance claims would not expire until 270 days "from and after the date on which the [deadline]

would have expired in the absence of th[e] [Tolling] Stipulation . . . ."  Tolling Stipulation at p. 3.

Yet the Oversight Board still refuses to bring these claims. As a result, once again, only a matter

of months remain for an appointed trustee to bring such actions. Moreover, any delay related to

the adjudication of this motion (including any appeals thereof) will only further reduce the time

available to a trustee to bring such a complaint.

The Oversight Board also suggests that the avoidance actions may be mooted if the Oversight Board's Proposed Joint Plan of Adjustment is confirmed.  Exhibit C at p. 3.  But this argument only buttresses the need to bring the actions now, before this Court considers a plan that would sell all assets held by ERS and provide distributions without regard to recoveries that the avoidance actions might provide.  The Oversight Board's refusal to bring these causes of action and its intention to extinguish these claims demonstrates that the timely appointment of a trustee is crucial.

> **E.      The Court Should Appoint The ERS Bondholders Trustees; In The Alternative, The Court Should Appoint A Trustee Approved By The Bondholders As Trustee To Pursue ERS's Claims**

The foregoing circumstances amply warrant appointment under § 926 of a trustee to pursue ERS's claims against the Commonwealth. And the Bondholders are the most appropriate entities to serve as trustees. They are the primary remaining stakeholders who still seek payment from ERS, and the Bondholders' motivation to zealously pursue this litigation will ensure that the Court benefits from proper adversarial testing of ERS's claims.

In the alternative, as was done in the COFINA Title III case, the Court should appoint an independent third-party fiduciary approved by the Bondholders as trustee, such as Bettina M. Whyte.  The Oversight previously requested and consented to the appointment of Ms. Whyte, an experienced restructuring professional formerly with Alvarez & Marsal, LLC and AlixPartners, LLC, among others, as the COFINA representative to litigate and/or settle the dispute between the Commonwealth and COFINA concerning the issue of whether the sales and use taxes pledged by COFINA to secure debt are property of the Commonwealth or COFINA. In that capacity, Ms. Whyte advocated, at arm's length, on behalf of COFINA to reach a fair resolution of the claims at issue. Thus, Ms. Whyte has extensive knowledge of the intricacies of the PROMESA process and is well suited to serve in a similar capacity as the § 926 trustee for ERS.  In any event, as the

primary remaining stakeholders, and as parties with deep experience in this litigation and the underlying issues, the Bondholders should be permitted to weigh in on the selection of a trustee as well as to consult with the trustee during the prosecution of ERS's claims.

## CONCLUSION

For the foregoing reasons, the Bondholders respectfully request that the Court enter an order appointing them trustees to pursue the claims set forth in the proposed Complaint (Exhibit A) on behalf of ERS and against the Commonwealth, and any further relief as the Court may deem proper. In the alternative, the Bondholders respectfully request that the Court enter an order appointing a trustee approved by the Bondholders, such as Bettina M. Whyte, whose fees and expenses shall be borne by ERS, to pursue the claims set forth in the proposed Complaint (Exhibit A) on behalf of ERS and against the Commonwealth. A proposed order is attached as Exhibit E.

In San Juan, Puerto Rico, today November 19, 2019.
By:

/s/ Alfredo Fernández-Martínez
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
P.O. Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

/s/ Bruce Bennett
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com

Isel M. Perez (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 300
Miami, FL 33131
Tel. (305) 714-9700
Fax. (305) 714-9799
iperez@jonesday.com

*Counsel for Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.*

/s/ *Alicia I. Lavergne-Ramírez*

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110  San
Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ *John C. Cunningham*

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (pro hac vice)
Jesse L. Green (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund II, Inc., Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax- Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*