# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------------------X

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

_____

ANDALUSIAN GLOBAL DESIGNATED ACTIVITY
COMPANY, CROWN MANAGED ACCOUNTS FOR
AND ON BEHALF OF CROWN/PW SP, GLENDON
OPPORTUNITIES FUND, L.P., LMA SPC FOR AND ON
BEHALF OF MAP 98 SEGREGATED PORTFOLIO,
MASON CAPITAL MASTER FUND LP, OAKTREE-
FORREST MULTI-STRATEGY, LLC (SERIES B),
OAKTREE OPPORTUNITIES FUND IX, L.P., OAKTREE
OPPORTUNITIES FUND IX (PARALLEL), L.P.,
OAKTREE OPPORTUNITIES FUND IX (PARALLEL 2),
L.P., OAKTREE HUNTINGTON INVESTMENT FUND
II, L.P., OAKTREE OPPORTUNITIES FUND X, L.P.,
OAKTREE OPPORTUNITIES FUND X (PARALLEL),
L.P., OAKTREE OPPORTUNITIES FUND X
(PARALLEL 2), L.P., OAKTREE VALUE
OPPORTUNITIES FUND HOLDINGS, L.P., OCEANA
MASTER FUND LTD., OCHER ROSE, L.L.C.,
PENTWATER MERGER ARBITRAGE MASTER FUND
LTD., PUERTO RICO AAA PORTFOLIO BOND FUND,
INC., PUERTO RICO AAA PORTFOLIO BOND FUND II,

PROMESA
Title III

Case No. 3:17-bk-03283 (LTS)

(Jointly Administered)

Adversary No. _____

**ADVERSARY COMPLAINT**

---

[1]    The Debtors in these Title III cases, along with each Debtor's Bankruptcy Court case number
and last four (4) digits of each Debtor's federal tax identification number are (i) The
Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3283 (LTS)) (Last Four Digits of
Federal Tax ID: 3481); (ii) The Employees Retirement System of the Government of the
Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3566 (LTS)) (Last Four Digits of
Federal Tax ID: 9686); (iii) Puerto Rico Sales Tax Financing Corporation (Bankr. Case No.
17-bk-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iv) Puerto Rico Highways
and Transportation Authority (Bankr. Case. No. 17-bk-3567 (LTS)) (Last Four Digits of
Federal Tax ID: 3808).

INC., PUERTO RICO AAA PORTFOLIO TARGET    )
MATURITY FUND, INC., PUERTO RICO FIXED    )
INCOME FUND, INC., PUERTO RICO FIXED INCOME  )
FUND II, INC., PUERTO RICO FIXED INCOME FUND  )
III, INC., PUERTO RICO FIXED INCOME FUND IV,    )
INC., PUERTO RICO FIXED INCOME FUND V, INC.,    )
PUERTO RICO GNMA & U.S. GOVERNMENT TARGET  )
MATURITY FUND, INC., PUERTO RICO INVESTORS    )
BOND FUND I, PUERTO RICO INVESTORS TAX-FREE  )
FUND, INC., PUERTO RICO INVESTORS TAX-FREE    )
FUND, INC. II, PUERTO RICO INVESTORS TAX-FREE  )
FUND III, INC., PUERTO RICO INVESTORS TAX-FREE  )
FUND IV, INC., PUERTO RICO INVESTORS TAX-FREE  )
FUND V, INC., PUERTO RICO INVESTORS TAX-FREE   )
FUND VI, INC., PUERTO RICO MORTGAGE-BACKED  )
& U.S. GOVERNMENT SECURITIES FUND, INC.,     )
PWCM MASTER FUND LTD., REDWOOD MASTER    )
FUND, LTD., SV CREDIT, L.P., TAX-FREE PUERTO    )
RICO FUND, INC., TAX- FREE PUERTO RICO FUND II, )
INC., AND TAX-FREE PUERTO RICO TARGET     )
MATURITY FUND, INC.,                       )
                                             )

                Plaintiffs,                 )
                                             )

                -against-              )

THE COMMONWEALTH OF PUERTO RICO, THE    )
FINANCIAL OVERSIGHT AND MANAGEMENT     )
BOARD OF THE COMMONWEALTH OF PUERTO    )
RICO, THE PUERTO RICO FISCAL AGENCY AND   )
FINANCIAL ADVISORY AUTHORITY, GOVERNOR  )
WANDA VAZQUEZ GARCED in her official capacity as )
the Governor of the Commonwealth of Puerto Rico,   )
FRANCISCO PARES ALICEA in his official capacity as )
the Secretary of Treasury of the Commonwealth of Puerto )
Rico,                                    )
                                             )

                Defendants.             )

-------------------------------------------------------------------------X

## ADVERSARY COMPLAINT

TO THE HONORABLE COURT:

NOW COME Plaintiffs Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc. (collectively, the "Bondholders" or "ERS Bondholders"),[2] as court-appointed trustees on behalf

---

[2] Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P.

of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico

("ERS"), by and through their attorneys, and respectfully state, allege, and pray as follows:

## PRELIMINARY STATEMENT

1. On _____, 2019, the Court entered an order appointing the

Bondholders as trustees to pursue the claims set forth in this complaint on behalf of ERS and

against the Commonwealth of Puerto Rico (the "Commonwealth"). ECF No. _____ (granting

*Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the*

*Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C.*

*§ 926*).

2. This is an action for avoidance and recovery brought pursuant to §§ 544(b),

549(a), and 550 of title 11 of the United States Code (the "Bankruptcy Code").

3. Plaintiffs are the holders of bonds issued by ERS in 2008 and are therefore

creditors of ERS. The proceeds of those bonds (the "ERS Bonds" or the "Bonds") were used to

pay benefits to retirees and to reduce ERS's unfunded accrued actuarial liabilities. The ERS

Bonds were secured by collateral that included, among other things, all employer contributions

from Puerto Rico government employers (including municipal employers, public corporations

and the central government of Puerto Rico) and ERS's legal right to receive those contributions.

4. On June 30, 2016, Congress enacted the Puerto Rico Oversight, Management, and

Economic Stability Act ("PROMESA"), Pub. L. No. 114-187, 130 Stat. 549 (2016), *codified at*

48 U.S.C. §§ 2101–2241. PROMESA created a Financial Oversight and Management Board for

---

(continued…)

Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X
Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X
(Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps
X Holdco Ltd.

Puerto Rico (the "Oversight Board" or "Board") and conferred broad sovereign powers on the Board. Using these statutory powers, the Oversight Board worked with and through the Commonwealth to transfer ERS's property to the Commonwealth for no or inadequate consideration.

5.      In June 2017, the Puerto Rico legislature passed, and the Oversight Board adopted, Joint Resolution 188 for Other Allocations for Fiscal Year 2017–2018 ("Joint Resolution 188" or "J.R. 188"). Joint Resolution 188 required ERS to liquidate its assets for distribution to the Commonwealth's General Fund, and directs participating employers to make future employer contributions to the Commonwealth's General Fund, rather than to ERS. The purpose and effect of Joint Resolution 188 was to strip ERS of its property and to divert ERS's employer contributions away from ERS, all of which was pursued with the purpose of evading ERS's obligations to its creditors.

6.      On August 23, 2017, the Governor signed a Law to Guarantee Payment to Our Pensioners and Establish a New Plan for Defined Contributions for Public Servants ("Act 106"), which further implemented Joint Resolution 188. Act 106 stated that Joint Resolution 188 "eliminated" "[e]mployer [c]ontributions made heretofore," and purported to set up a new "Pay-Go Fee" that employers must pay directly into the Commonwealth's General Fund. Act 106, § 1.4, pp. 23–24. The "Pay-Go Fee" is nothing new, however, because the employers required to pay it are the same government entities that were previously obligated to make contributions to ERS; indeed, even the "contributions" are the same obligations. *Id.* § 1.6(g), p. 25 (requiring payments from "entities deemed as employers under the [ERS]"); *compare id.* § 2.1(b), pp. 29–30, with 3 L.P.R.A. § 781(a) (2008). Finally, Act 106 required ERS's Board of Trustees to

dissolve by December 31, 2017, so a new board could be formed to dispose of ERS's property. Act 106, §§ 4.2, 5.1–5.3.

7.      In this action, the Bondholders, appointed as trustees for ERS under 11 U.S.C. § 926, seek to avoid the transfers effected by Joint Resolution 188 and Act 106 (collectively, the "Post-Petition Legislation") under 11 U.S.C. §§ 549 and 544 and to recover the value of those transfers under 11 U.S.C. § 550.

## THE PARTIES

8.      Plaintiff Andalusian Global Designated Activity Company is a designated activity company, limited by its shares, incorporated under the laws of Ireland and located at 70 Sir John Rogerson's Quay, Dublin 2, Ireland.

9.      Plaintiff Crown Managed Accounts for and on behalf of Crown/PW SP is a segregated portfolio located at Grand Pavilion, Commercial Centre, 1st Floor, 802 West Bay Road, George Town, Grand Cayman KY1-1207, Cayman Islands.

10.      Plaintiff Glendon Opportunities Fund, L.P., is a limited partnership organized and existing under the laws of the Cayman Islands and located at Ugland House, South Church Street, Grand Cayman KY1-1104, Cayman Islands.

11.      Plaintiff LMA SPC for and on behalf of Map 98 Segregated Portfolio is a segregated portfolio company located at Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Islands.

12.      Plaintiff Mason Capital Master Fund, LP is a limited partnership organized and existing under the laws of the Cayman Islands and with an address at PO Box 309, Ugland House, George Town, Grand Cayman KY1-1104, Cayman Islands.

13.     Plaintiff Oaktree-Forrest Multi-Strategy, LLC (Series B), is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

14.     Plaintiff Oaktree Opportunities Fund IX, L.P., is an exempted limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business located at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

15.     Plaintiff Oaktree Opportunities Fund IX (Parallel), L.P., is an exempted limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business located at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

16.     Plaintiff Oaktree Opportunities Fund IX (Parallel 2), L.P., is an exempted limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

17.     Plaintiff Oaktree Huntington Investment Fund II, L.P., is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

18.     Plaintiff Oaktree Opportunities Fund X, L.P., is an exempted limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business located at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

19.     Plaintiff Oaktree Opportunities Fund X (Parallel), L.P., is an exempted limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business located at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

20. Plaintiff Oaktree Opportunities Fund X (Parallel 2), L.P., is an exempted limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business located at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

21. Plaintiff Oaktree Value Opportunities Fund Holdings, L.P., is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

22. Plaintiff Oceana Master Fund Ltd. is an investment fund located at 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.

23. Plaintiff Ocher Rose, L.L.C., is a Delaware limited liability company located at P.O. Box 1226, New York, NY 10150.

24. Plaintiff Pentwater Merger Arbitrage Master Fund Ltd. is an investment fund located at 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.

25. Plaintiff Puerto Rico AAA Portfolio Bond Fund, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

26. Plaintiff Puerto Rico AAA Portfolio Bond Fund II, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

27. Plaintiff Puerto Rico AAA Portfolio Target Maturity Fund, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

28.     Plaintiff Puerto Rico Fixed Income Fund, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

29.     Plaintiff Puerto Rico Fixed Income Fund II, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

30.     Plaintiff Puerto Rico Fixed Income Fund III, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

31.     Plaintiff Puerto Rico Fixed Income Fund IV, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

32.     Plaintiff Puerto Rico Fixed Income Fund V, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

33.     Plaintiff Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

34.     Plaintiff Puerto Rico Investors Bond Fund I, is an investment trust organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

35.     Plaintiff Puerto Rico Investors Tax-Free Fund, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

36.     Plaintiff Puerto Rico Investors Tax-Free Fund, Inc. II, is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

37.     Plaintiff Puerto Rico Investors Tax-Free Fund III, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

38.     Plaintiff Puerto Rico Investors Tax-Free Fund IV, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

39.     Plaintiff Puerto Rico Investors Tax-Free Fund V, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

40.     Plaintiff Puerto Rico Investors Tax-Free Fund VI, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

41.     Plaintiff Puerto Rico Mortgage-Backed & U.S. Government Securities is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

42.     Plaintiff PWCM Master Fund Ltd. is an investment fund located at 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.

43.     Plaintiff Redwood Master Fund, Ltd. is an investment fund located at 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.

44.     Plaintiff SV Credit, L.P., is a limited partnership organized and existing under the laws of Delaware located at 1209 Orange Street, Wilmington, New Castle County, Delaware 19801.

45.     Plaintiff Tax-Free Puerto Rico Fund, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza Building, 10th Floor, 250 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

46.     Plaintiff Tax-Free Puerto Rico Fund II, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza Building, 10th Floor, 250 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

47.     Plaintiff Tax-Free Puerto Rico Target Maturity Fund, Inc., is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza Building, 10th Floor, 250 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

48.     Defendant the Commonwealth of Puerto Rico is a United States territory subject to the laws of the United States.

49.     Defendant the Oversight Board is an entity created pursuant to PROMESA to assist the Commonwealth, including its instrumentalities, in managing its public finances, and for other purposes.

50.     Defendant the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") is an entity created pursuant to the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, P.R. Act No. 21-2016, for the purpose of acting as fiscal agent, financial advisor, and reporting agent of the Commonwealth, its agencies, instrumentalities, subdivisions, public corporations, and municipalities.

51.     Defendant Wanda Vazquez Garced is the Governor of the Commonwealth of Puerto Rico and is being sued in her official capacity.

52.     Defendant Francisco Pares Alicea is the Secretary of Treasury of the Commonwealth of Puerto Rico and is being sued in his official capacity.

## JURISDICTION AND VENUE

53.     This action seeks avoidance of transfers pursuant to §§ 549 and 544 of the Bankruptcy Code and to recover the value of those transfers pursuant to § 550.

54.     This Court has jurisdiction over all claims and causes of action in this adversary proceeding pursuant to 48 U.S.C. § 2166(a)(2) because they arise in or are "related to" the above-captioned Title III cases. This Court has personal jurisdiction over all of the Defendants pursuant to 48 U.S.C. § 2166(c).

55.     Venue is proper under 48 U.S.C. § 2167 because this adversary proceeding is brought in a Title III case.

## FACTUAL ALLEGATIONS

**I.      ERS**

**A.      The ERS Enabling Act**

56.     ERS is a trust created by Act No. 447 of May 15, 1951, of the Legislature of the Commonwealth (the "ERS Enabling Act") to provide pension and other benefits to officers and employees of the Commonwealth, members and employees of the Legislature, and officers and

employees of certain public corporations and municipalities of the Commonwealth. 3 L.P.R.A. § 761. ERS was established as an independent, self-governing entity separate from the Commonwealth and from the Commonwealth's other agencies and instrumentalities. *Id.* § 775. The ERS Enabling Act provided for ERS to be governed by an eleven-member Board of Trustees responsible for setting policy for, and overseeing the operations of, ERS. *Id.*

57.     The ERS Enabling Act gave the Board of Trustees blanket authorization to incur debt on behalf of ERS and to secure such debt with ERS's assets. Specifically, the act authorized the Board of Trustees to "seek a loan … through the direct placement of debts, securing said debt with the assets of the [ERS]." *Id.* § 779(d).

### B.     Employer Contributions

58.     Until the Post-Petition Legislation, ERS was funded by employer contributions, employee contributions, and investment earnings on its undistributed funds. Employer contributions were the largest component of this income stream, and they constitute a legal asset of ERS. ERS has a statutory right to receive employer contributions, and employers were required by statute to make them.

59.     ERS received employer contributions from the Commonwealth and from various municipalities within, and public corporations of, the Commonwealth. The Commonwealth was responsible for approximately 59 percent of the employer contributions ERS received, while municipalities and public corporations accounted for the rest. As of the commencement of ERS's Title III case, the Commonwealth did not hold or own any interest in employer contributions owed by municipalities or public corporations to ERS.

60.     The critical importance of employer contributions to ERS, and ERS's authority to enforce its rights, were reflected in a series of provisions in the ERS Enabling Act. For example,

an employer's failure to pay timely its contributions to ERS was punishable as a misdemeanor. 3 L.P.R.A. § 781a(e), (f). If an employer's contributions to ERS were in arrears for more than 30 days, ERS's claim to those contributions had priority over any other outstanding debt of that employer. *Id.* § 781a(h). If a municipality failed to make its employer contributions to ERS, ERS had the power to intercept or garnish the municipality's property tax revenues. *Id.* § 781a(g). If agencies, public corporations, and instrumentalities of the Commonwealth failed to make employer contributions, ERS was authorized to issue a certificate of debt for immediate payment of the arrearages from the Department of Treasury. *Id.* § 781a(h). ERS also was entitled to receive interest on these delinquent contributions. *Id.*

61.     Despite the importance of employer contributions to ERS, the Commonwealth has never paid ERS enough to satisfy its statutory contribution requirements. By the date of ERS's Title III petition, *see infra* ¶¶ 66–69, the Commonwealth owed ERS more than $411 million.

## II.     PENSION FUNDING BONDS ISSUED BY ERS

62.     In 2008, ERS issued bonds pursuant to the authority of a resolution (the "ERS Bond Resolution") of its Board of Trustees. *See* Pension Funding Bond Resolution (Jan. 24, 2008). ERS issued the following bonds on the following dates:

a.   "Series A" Bonds totaling $1,588,810,799.60 on January 31, 2008.

b.   "Series B" Bonds totaling $1,058,634,613.05 on June 2, 2008.

c.   "Series C" Bonds totaling $300,202,930 on June 30, 2008.

63.     Most of the ERS Bonds were sold to individual residents of the Commonwealth and to local businesses.

64.     All of the bond issues' net proceeds (after costs of issuance and required reserves) were used to pay benefits to retirees or invested to provide for future benefit payments.

65. An integral part of ERS's bond issuance was an extensive security package designed to protect the bondholders' investment. ERS granted bondholders, through a Fiscal Agent, a security interest in and lien on certain ERS property ("Pledged Property"), including (a) all "Revenues,"—among other things, all employer contributions received by ERS or the Fiscal Agent "and any assets in lieu thereof or derived thereunder which are payable to [ERS] pursuant to [the Enabling Act]"; (b) "[a]ll right, title and interest of [ERS] in and to" the property described in (a) and "all rights to receive the same"; (c) the funds, accounts, and subaccounts held by the Fiscal Agent; (d) any and all other rights and personal property of every kind pledged and assigned by ERS for additional security; and (e) "any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property … ," including, without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of" such property. *Id.* § 501, at VI-8 & Ex. B, VI-36. ERS pledged its statutory right to collect employer contributions to secure the bonds, and that right was exercisable upon default. *Id.* § 501, at VI-8; *id.* § 1102, at VI-22.

## III.  PROMESA AND THE TITLE III CASES

66. On June 30, 2016, Congress passed PROMESA. The stated purpose of PROMESA was to "establish an Oversight Board to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances, and for other purposes." H.R. 5278, 114th Cong. pmbl. (2016).

67. Title III of PROMESA authorized the Oversight Board to file a petition to restructure the debts of a government instrumentality in a court-supervised adjustment process similar to Chapter 9 of the Bankruptcy Code.

68. On May 3, 2017, the Oversight Board approved and certified the filing of a PROMESA Title III petition for the Commonwealth.

69.     On May 21, 2017, the Oversight Board approved and certified the filing of a separate PROMESA Title III petition for ERS.

70.     PROMESA incorporates the automatic stay provisions of § 362 of the Bankruptcy Code. 48 U.S.C. § 2161(a). Pursuant to those provisions, the filing of ERS's Title III case on May 21, 2017, operated as a stay against all efforts by any person (including the Commonwealth) to obtain or exercise control over property of ERS. That automatic stay has remained in effect during all times relevant to this action.

## IV.     JOINT RESOLUTION 188

71.     The Puerto Rico legislature passed Joint Resolution 188 on June 25, 2017, and the Oversight Board adopted it on behalf of the Governor on June 30, 2017.[3]

72.     The actual purpose and purported effect of Joint Resolution 188 were to seize ERS's property and the ERS Bondholders' collateral. Joint Resolution 188 ordered ERS to sell its assets and to transfer the net cash proceeds, in addition to any available funds, into the Puerto Rico Treasury Secretary's account as part of the General Fund for fiscal year 2017–2018 to make benefit payments to pensioners. Joint Resolution, 188 §§ 1–3. And the resolution requires employers to make increased employer contributions directly to the Commonwealth's General Fund.

73.     Section 4 of Joint Resolution 188 also provides in relevant part that:

---

[3] The Oversight Board adopted House Resolution 186, House Resolution 187, and House Resolution 188 as part of the Commonwealth's budget pursuant to §§ 202(d)(2) and 202(e)(3) of PROMESA. The Board "deemed" the budget, along with the various resolutions, "to be approved by the Governor and the Legislature" and "in full force and effect beginning on July 1, 2017." Exhibit A to Letter from Financial Oversight and Management Board to Governor Rosselló, at 2 (June 30, 2017), https://drive.google.com/file/d/14rwf4d-I3xBl_jNy-ggYJMh1UfInkj5Y/view. House Resolution 186 and House Resolution 187 address other matters related to the Commonwealth's budget, but they also include the full text of House Resolution 188. To avoid repetition, the Complaint refers to House Resolution 188 only.

a.  the Commonwealth would assume any payments that Puerto Rico's retirement systems, including ERS, could not make;

b.  ERS would continue to meet its obligations to beneficiaries and pensioners by contributing its available funds and any funds arising from its asset sales to the Commonwealth's General Fund;

c.  the Commonwealth, its public corporations, and its municipalities would stop making employer contributions to ERS;

d.  AAFAF would establish procedures so that the Commonwealth, its public corporations, and its municipalities would make employer contributions to the Commonwealth.

74.     No or inadequate consideration was provided to ERS in exchange for the property transferred to the Commonwealth's General Fund.

75.     Joint Resolution 188 was approved by the Puerto Rico legislature pursuant to the Fiscal Plan approved and certified by the Oversight Board. *Id.* § 4.

76.     Upon information and belief, at the time Joint Resolution 188 was passed, ERS and the Commonwealth knew and, indeed, intended, that the transfer effectuated by Joint Resolution 188 would hinder, delay, defraud, or otherwise harm ERS's creditors.

**V.     ACT 106**

77.     The Puerto Rico legislature passed Act 106 on August 18, 2017, and the Governor signed it into law on August 23, 2017.

78.     Act 106 established procedures for increasing employer contributions to make payments equal to the obligations to employees, as mandated by the Fiscal Plan for Puerto Rico and established in Joint Resolution 188. The law declares that "beginning July 1st, 2017, pursuant to House Joint Resolution No. 188 of 2017, as certified by the Financial Oversight

17

Board on July 13, 2017, the Government of Puerto Rico became the direct payer of our retirees'
pension benefits." Act 106, § 1.4.

79.     Act 106 contains provisions that specify the mechanisms by which the
Commonwealth will pay all of the benefits due to employees each year. For example, the act
provides for the treatment and the payment terms of accumulated pensions and associated
accounts, *id.* at ch. 2; establishes a defined-contribution program, *id.* ch. 3; creates a retirement
board to replace the existing boards of the retirement systems, *id.* ch. 4; provides transition rules,
*id.* ch. 5; and makes changes to existing laws, *id.* ch. 6. Act 106 also reiterates that the
Commonwealth, in accordance with Joint Resolution 188, will assume any payments that ERS
could not make, that ERS would contribute its assets to the Commonwealth, and that the
Commonwealth, its public corporations, and its municipalities would stop making employer
contributions to ERS. *See id.* §§ 1.3, 1.4.

80.     Act 106 also states that unless an extension is granted, the Board of Trustees for
ERS is to be dissolved by December 31, 2017, *id.* § 5.1(b), that the new retirement board will
have the authority to dispose of all of ERS's property and equipment, *id.* §§ 4.2 and 5.3, and that
all of ERS's employees will be terminated and transferred to other posts, *id.* § 5.2.

81.     Upon information and belief, at the time Act 106 was enacted, ERS and the
Commonwealth knew and, indeed, intended that the transfer effectuated by Act 106 and Joint
Resolution 188 would hinder, delay, defraud, or otherwise harm ERS's creditors.

82.     Upon information and belief, the transfers required under Joint Resolution 188,
Act 106, and related legislation have been effectuated.

83.     Upon information and belief, the transfers effectuated by Act 106 and Joint
Resolution 188 rendered ERS insolvent.

## FIRST CLAIM FOR RELIEF

### Request for Avoidance of Transfers Effected by the Post-Petition Legislation
### Under 11 U.S.C. § 549

84.   Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 83 above.

85.   Section 549 of the Bankruptcy Code provides that a "trustee may avoid a transfer of property. . . that occurs after the commencement of the case; and. . . that is not authorized under [the Bankruptcy Code] or by the court." 11 U.S.C. § 549(a)(1), (2)(B).

86.   Joint Resolution 188 purports to (i) require ERS to liquidate its assets and transfer the proceeds to the Commonwealth; and (ii) divert employer contributions to which ERS has a statutory right away from ERS to the Commonwealth.

87.   Act 106 reiterates those requirements and provides procedures to further implement the increase in amount of employer contributions.

88.   The Post-Petition Legislation was enacted by the Commonwealth after the commencement of the ERS Title III case.

89.   The transfers of ERS's property pursuant to the Post-Petition Legislation were not authorized by either the Bankruptcy Code or the Court.

90.   The transfers effected by the Post-Petition Legislation should be avoided pursuant to § 549(a) of the Bankruptcy Code.

91.   ERS is entitled to the value of the transfers under § 550 of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF

### Request for Avoidance of Transfers Effected by the Post-Petition Legislation
### Under 11 U.S.C. § 544

92.   Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 83 above.

93.     Section 544(b) of the Bankruptcy Code provides that a "trustee may avoid any transfer of an interest of the debtor in property. . . that is voidable under applicable law by a creditor holding an [allowable] unsecured claim."

94.     Article 1064 of the Civil Code of Puerto Rico allows creditors to "impugn the acts which the debtor may have performed in fraud of [a creditor's] right." 31 L.P.R.A. § 3028.

95.     Article 1243 of the Civil Code of Puerto Rico provides that transfers executed in fraud of creditors can be rescinded when creditors "cannot recover, in any other manner, what is due them." 31 L.P.R.A. § 3492(3).

96.     The transfers effected by the Post-Petition Legislation from ERS to the Commonwealth are voidable under Puerto Rico law as fraudulent transfers.

97.     The transfers were executed in fraud of ERS's creditors.

98.     Joint Resolution 188 purports to (i) require ERS to liquidate its assets and transfer the proceeds to the Commonwealth; and (ii) divert employer contributions to which ERS has a statutory right away from ERS to the Commonwealth.

99.     Act 106 reiterates those requirements and provides procedures to further implement the increase in amount of employer contributions.

100.    Joint Resolution and Act 106 were executed by the Commonwealth, a separate entity that owed substantial funds to ERS.

101.    At the time of the transfers, ERS was experiencing severe underfunding caused, in large part, by the Commonwealth's own failure to make hundreds of millions of dollars in statutorily required contributions.

102.     ERS received no or inadequate consideration for the transfers. Through the Post-Petition Legislation, the Commonwealth emptied ERS's coffers without assuming all of ERS's obligations—including its obligations to the Bondholders.

103.     Upon information and belief, at the time of the transfer, the Commonwealth and the ERS were aware of ERS's obligations to its bondholders as well as the harm that its bondholders would suffer, and enacted the Post-Petition Legislation as a means to avoid those obligations and instead use those assets for other purposes.

104.     Upon information and belief, the transfers effectuated by Act 106 and Joint Resolution 188 rendered ERS insolvent.

105.     The transfers effected by the Post-Petition Legislation should be avoided pursuant to § 544(b) of the Bankruptcy Code and Puerto Rico law as a fraudulent transfer.

**PRAYER FOR RELIEF**

**WHEREFORE**, based on the above and foregoing, plaintiffs pray that this Honorable Court enter an order:

a.  Avoiding the transfers effected by the Post-Petition Legislation pursuant to § 549(a) of the Bankruptcy Code.

b.  Avoiding the transfers effected by the Post-Petition Legislation pursuant to § 544(b) of the Bankruptcy Code and Puerto Rico law.

c.  Recovering the value of the transfers pursuant to § 550 of the Bankruptcy Code.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today _____, 2019.

By:

*/s/ Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Bruce Bennett*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
Parker A. Rider-Longmaid (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com
priderlongmaid@jonesday.com

Isel M. Perez (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 300
Miami, FL 33131
Tel. (305) 714-9700
Fax. (305) 714-9799
iperez@jonesday.com

*Counsel for Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi- Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.*

/s/ *Alicia I. Lavergne-Ramírez*

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com


SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ *John C. Cunningham*

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com


Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (pro hac vice)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com


*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*