**Objection Deadline: January 6, 2020**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

## ERS BONDHOLDERS' MOTION AND REQUEST FOR ALLOWANCE AND PAYMENT OF POST-PETITION AND ADMINISTRATIVE EXPENSE CLAIMS

## <u>**TABLE OF CONTENTS**</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

Background ...................................................................................................................... 2

Post-Petition Claims and Administrative Expense ....................................................... 10

Basis for Post-Petition Claims and Administrative Expense ........................................ 12

Reservation of Rights..................................................................................................... 20

Notice ............................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altair Glob. Credit Opportunities Fund (A), LLC v. United States*,
  No. 17-970C, 2018 WL 3425051 (Fed. Cl. July 13, 2018) .......................................................6

*Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro
  Garcia Padilla, et al.*,
  No. 16-02433 (1st Cir. Dec. 23, 2016) ...........................................................................13, 17

*Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro
  Garcia Padilla, et al.*,
  No. 16-02696 (Oct. 26, 2016) ..........................................................................................17

*Fin. Oversight & Mgmt. Bd. ex rel. Emps. Ret. Sys. v. Andalusian Glob.
  Designated Activity Co.*,
  No. 17-00213, 590 B.R. 577 (D.P.R. 2018) .........................................................................7

*In re Charlesbank Laundry, Inc.*,
  755 F.2d 200 (1st Cir. 1985) .............................................................................................12

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
  914 F.3d 694 (1st Cir. 2019) ..................................................................................... *passim*

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
  Case No. 19-1699 (1st Cir.) ..............................................................................................9

*In re Fin. Oversight & Mgmt. Bd. for P.R. ex rel. Emps. Ret. Sys. v. Andalusian
  Glob. Designated Activity Co.*,
  No. 17-00213, 2019 WL 2636270 (D.P.R. June 27, 2019) ...................................................9

*Peaje Invs. LLC v. García-Padilla*,
  845 F.3d 505 (1st Cir. 2017) ..............................................................................................4

*Reading Co. v. Brown*,
  391 U.S. 471 (1968) ........................................................................................................12

**CONSTITUTIONAL AND STATUTORY AUTHORITIES**

U.S. Const. Article I, § 10, cl. 1 ..........................................................................................11, 17

U.S. Const. Amendment V ...........................................................................................6, 11, 16, 17

P.R. Const. art. II, § 7 ......................................................................................................11, 17

P.R. Const. art. II, § 9 ......................................................................................................11, 16

11 U.S.C. § 362 ...............................................................................................................4, 20

11 U.S.C. § 503 ...............................................................................................................1, 12

11 U.S.C. § 552 ...................................................................................................................9

11 U.S.C. § 922 ....................................................................................................1, 11,12, 20

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

48 U.S.C. §§ 2101–2241 ...................................................................................................3

48 U.S.C. § 2194 .............................................................................................................4

48 U.S.C. § 2195 ...........................................................................................................18

3 L.P.R.A. § 761 ..............................................................................................................2

3 L.P.R.A. § 779 ..............................................................................................................2

3 L.P.R.A. § 781 ..............................................................................................................2

3 L.P.R.A. § 787 ..............................................................................................................2

19 L.P.R.A. § 2106 (2008)............................................................................................15

19 L.P.R.A. § 2265 ........................................................................................................15

OTHER AUTHORITIES

6 COLLIER ON BANKRUPTCY § 901.04 (16th 2019)............................................12, 13, 14

*Municipal Secondary Market Disclosure Information Cover Sheet*,
    AAFAF (Apr. 25, 2017).............................................................................................3

To the Honorable Laura Taylor Swain, United States District Judge:

Movants,[1] as holders of secured bonds issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") in 2008, hereby file this motion and request, pursuant to sections 503(b) and 922(c) of title 11 of the United States Code (the "Bankruptcy Code"), for allowance and payment of post-petition and administrative expense claims[2] against the Commonwealth of Puerto Rico (the "Commonwealth") and ERS (the "Motion") in accordance with the *Order Establishing Initial Procedures with respect to (I) Objections of Official Committee of Unsecured Creditors and Official Committee of Retired Employees, pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Commonwealth of Puerto Rico, (II) Count One of Certain Complaints Alleging that Such Bonds were Issued Ultra Vires and (III) Establishing Claim Objection Deadline for Certain ERS Bond*

---

[1]  Movants (also known as the "Bondholders or "ERS Bondholders") include Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.  Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P. Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps X Holdco Ltd.

[2]  The Claims are unliquidated in amount, but are in excess of, and include, the principal amount held by the Movants as set forth in the *Fourth Supplemental Verified Statement of the ERS Secured Creditors Pursuant to Bankruptcy Rule 2019* (Docket No. 7999 in Case No. 17-03283 and Docket No. 652 in Case No. 17-03566), which is incorporated herein by reference.

*Claims* (Docket No. 8818 in Case No. 17-03283 and Docket No. 676 in Case No. 17-03566) (the

"Procedures Order") and the exhibits accompanying the Procedures Order, entered on October 7,

2019.  In support of this Motion, Movants respectfully represent as follows:

### Background

1.      The ERS is a trust created by Act No. 447 of May 15, 1951 of the Legislature of

the Commonwealth (the "ERS Enabling Act") to provide pension and other benefits to officers

and employees of the Commonwealth, members and employees of the Legislature, and officers

and employees of certain public corporations and municipalities of the Commonwealth.   3

L.P.R.A. § 761; *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d 694, 704 (1st Cir. 2019).

The ERS Enabling Act gave ERS's Board of Trustees blanket authorization to incur debt on

behalf of ERS and to secure such debt with ERS's assets.  *See* 3 L.P.R.A. § 779(d).

2.      "Until legislation that went into effect on July 1, 2017, [ERS] was funded by

mandatory contributions from employees and employers, and by [ERS's] investment earnings."

*In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d at 704.  The largest component of ERS's

principal assets were contributions from employers and the right to receive those contributions.

ERS received employer contributions both from the Commonwealth and from various

municipalities within, and public corporations of, the Commonwealth.  The minimum amounts

of these contributions were set by statute, but employers were always obligated by ERS's

Enabling Act to make contributions to ERS in amounts necessary to pay benefits plus

administrative costs, less contributions by employees. 3 L.P.R.A. § 787; *see also id.* § 781 (2008).

3.      For decades, the Commonwealth failed to make even the minimum amount of

employer contributions required by law.  By the date of ERS's Title III petition, the

Commonwealth owed ERS more than $411 million.  *See* ERS, Annual Financial Information

Fiscal Year 2016, at 13 n.1.[3]  ERS never used its statutory ability to enforce those obligations.
This, among other things, resulted in severe underfunding of ERS.

4.       In 2008, in an effort to address its funding challenges and "to decrease an
unfunded liability of approximately $9.9 billion," *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914
F.3d at 704, ERS issued secured bonds (the "ERS Bonds"), which infused approximately $3
billion into ERS.

5.       ERS issued the ERS Bonds pursuant to the authority of a resolution (as thereafter
supplemented, the "ERS Bond Resolution").  It is the ERS Bond Resolution and the related
security agreement that govern the contractual relationship between ERS and the holders of the
ERS Bonds with respect to the ERS Bonds, specify the times and amounts of payment of interest
and repayment of principal, and set forth the collateral ERS provided as security for payment.
Specifically, the collateral underlying the security package was called "Pledged Property," as
that term is defined in the ERS Bond Resolution, and included, among other things, employer
contributions and ERS's right to receive employer contributions.  ERS Bond Resolution § 501 &
Exh. B, VI-33, VI-36, VI-37.  ERS was required to use the Pledged Property to make timely
principal and interest payments on the ERS Bonds before it spent or used any of the funds for
any other purpose. *Id.* §§ 501, 701, & Ex. B, VI-36.  To assure that the Pledged Property would
remain available to secure the ERS Bonds, the ERS Bond Resolution explicitly required ERS to
pursue all available legal remedies to collect employer contributions that were delinquent or
inadequate. *Id.* §§ 701, 709.

6.       On June 30, 2016, Congress enacted the Puerto Rico Oversight, Management, and
Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101–2241. PROMESA created the

---

[3]      Online at *Municipal Secondary Market Disclosure Information Cover Sheet*, AAFAF
(Apr. 25, 2017),  https://emma.msrb.org/ER1050099-ER822796-ER1223828.pdf.

Financial Oversight and Management Board (the "Oversight Board") and granted it broad powers. PROMESA's enactment triggered a temporary stay on creditors' remedies against the Commonwealth and its instrumentalities. *Id.* § 2194(a)–(b).

7.     After the enactment of PROMESA, certain Movants moved to lift that stay after ERS and the Commonwealth refused to provide adequate protection to account for certain diversions of the Movants' collateral. *Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 510 (1st Cir. 2017). The District Court denied relief, but, on expedited appeal, the United States Court of Appeals for the First Circuit vacated the District Court's decision and remanded the case for a hearing on whether the Movants' liens were adequately protected. *Id.* at 510, 514, 516. The First Circuit held that "lack of adequate protection for creditors constitutes cause to lift the PROMESA stay," because "creditors are constitutionally entitled to protection 'to the extent of the value of the[ir] property.'" *Id.* at 511–12 (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932), and *Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 278 (1940)). The First Circuit "doubt[ed] the constitutionality" of a rule that would permit "the Commonwealth [to] expend every penny of the Movants' collateral, leaving the debt entirely unsecured." *Id.* at 511–12. On remand, the parties reached a stipulation regarding adequate protection. *See infra* ¶ 11.

8.     On May 3, 2017, the Oversight Board approved and certified the filing of a petition for the Commonwealth to restructure the Commonwealth's debts pursuant to Title III of the PROMESA.

9.     On May 21, 2017, the Oversight Board approved and certified the filing of a separate PROMESA Title III petition for ERS. PROMESA incorporates the automatic stay provisions of § 362 of the Bankruptcy Code. Pursuant to these provisions, the filing of the ERS

Title III case on May 21, 2017, operated as a stay against all efforts by any person (including the Commonwealth) to obtain or exercise control over property of ERS.

10.     On June 25, 2017, in total disregard of the ERS automatic stay, the Puerto Rico Legislature passed Joint Resolution for Other Allocations for Fiscal Year 2017-2018 ("Joint Resolution 188") and the Oversight Board adopted it on behalf of the Governor on June 30, 2017.  Joint Resolution 188 ordered ERS to sell its assets and to transfer the net cash proceeds, in addition to any available funds, into an account as part of the General Fund for fiscal year 2017-2018 to make benefit payments to pensioners.  Joint Resolution 188 §§ 1, 2, 3.  Joint Resolution 188 also provided, in relevant part, that the Commonwealth, its public corporations, and its municipalities would stop making employer contributions to ERS and, instead, would make employer contributions to the Commonwealth.  No consideration was provided to ERS or the ERS Bondholders in exchange for the collateral transferred to the Commonwealth's General Fund.

11.     On July 14, 2017, certain Movants, ERS, the Commonwealth and the Oversight Board reached a stipulation that resolved the motion for relief from the automatic stay that certain Movants had filed on May 31, 2017.  This Court approved the stipulation on July 17, 2017.  *See Order Approving Joint Stipulation* (Docket No. 655 in Case No. 17-03283 and Docket No. 171 in Case No. 17-03566).  The stipulation provided the Movants with certain temporary protections, including the payment of interest on the bonds and deposits for the next five months of $18.5 million into a segregated account.  Also as part of the stipulation, on July 21, 2017, ERS filed an adversary proceeding concerning the validity and scope of the ERS Bondholders' liens, alleging that the ERS Bondholders did not have perfected liens.  Adv. Proc. No. 17-00213 (D.P.R.), Docket No. 1.

12.    On August 18, 2017, with the automatic stay still in effect, the Puerto Rico legislature passed Act 106-2017 ("Act 106," together with Joint Resolution 188, the "Post-Petition Legislation") and the Governor signed it into law on August 23, 2017.  Act 106 provided that, in accordance with Joint Resolution 188, on July 13, 2017 the Commonwealth became the "direct payer of our retirees' pension benefits."  Act 106, § 1.4.  Act 106 also reiterated that, in accordance with Joint Resolution 188, ERS would transfer its assets to the Commonwealth and that the Commonwealth, its public corporations, and its municipalities would stop making employer contributions to ERS.  *Id.*, §§ 1.3, 1.4.  But those entities would each continue to fund pension benefits for their retirees, by paying what were now called "Pay-Go fees" to the Commonwealth.  *Id.* § 2.1(b).

13.    Shortly after the passage of the Post-Petition Legislation, certain Movants challenged the Post-Petition Legislation in adversary proceedings in the Commonwealth's and ERS's Title III cases, arguing, among other things, that they violated the automatic stay; that the Movants' liens attached to the Pay-Go fees as employer contributions, the proceeds of employer contributions, or the proceeds of the right to receive employer contributions; and that the Commonwealth and the United States had taken their property without just compensation in violation of the Fifth Amendment and the Puerto Rico Constitution, and had impaired contractual obligations in violation of the Contracts Clauses of the U.S. and Puerto Rico Constitutions.  Adv. Proc. Nos. 17-00219 & 17-00220 (D.P.R.), Docket Nos. 1, 39.[4]

---

[4]    Certain Movants also brought a claim for just compensation in the United States Court of Federal Claims on the ground that the United States is responsible for the actions of the Board, which designed and directed the legislation. On July 13, 2018, the Court of Federal Claims held that it has jurisdiction to adjudicate the movants' Fifth Amendment claim and denied in part a motion to dismiss filed by the United States. *Altair Glob. Credit Opportunities Fund (A), LLC v. United States*, No. 17-970C, 2018 WL 3425051, at *19–20 (Fed. Cl. July 13, 2018).

14.     On May 24, 2018, certain Movants filed proofs of claim against ERS and the Commonwealth (together, the "Proofs of Claim") based on their secured claims.  The Proofs of Claim asserted that they were entitled to administrative expense priority and expressly reserved the right to assert additional post-petition claims and request administrative expense treatment.

15.     On July 9, 2018, given the looming exhaustion of funds in the account established by the parties' July 2017 stipulation, certain Movants filed a motion for relief from the automatic stay or, in the alternative, for adequate protection of their liens on property of ERS, in which the Commonwealth now claimed an interest.  *See Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* (Docket No. 3418 in Case No. 17-03283 and Docket No. 289 in Case No. 17-03566) (the "Stay Relief Motion").

16.     On August 17, 2018, this Court granted partial summary judgment to ERS, determining that Movants' liens were unperfected.  *In re Fin. Oversight & Mgmt. Bd* (*Fin. Oversight & Mgmt. Bd. ex rel. Emps. Ret. Sys. v. Andalusian Glob. Designated Activity Co.*, Adv. Proc. No. 17-00213, 590 B.R. 577 (D.P.R. 2018).  On August 21, 2018, this Court entered an order denying the Stay Relief Motion on the ground that the August 17 order resolved it.  *See* Docket No. 3793 in Case No. 17-03283 and Docket No. 318 in Case No. 17-03566.  The First Circuit reversed the Court's August 17 order in part on January 30, 2019.  *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d 694 (1st Cir. 2019).  The First Circuit held that the Movants "met the requirements for perfection beginning on December 17, 2015," and that "PROMESA's

7

incorporation of the Bankruptcy code does not allow for the avoidance of perfected liens." *Id.* at 721.[5]

17.     On remand, certain of the Movants renewed their motion for relief from the automatic stay on the basis that the Commonwealth was diverting and dissipating their collateral without providing adequate protection payments.  The parties engaged in months of discovery on the Movants' motion, and the District Court scheduled a final hearing for July 2, 2019.

18.     On March 12, 2019, the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Creditors' Committee") filed the *Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico* (Docket No. 5580 in Case No. 17-03283 and Docket No. 381 in Case No. 17-03566) and its *Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Oaktree Funds That Hold Bonds Issued by Employees Retirement System of Government of Puerto Rico*  (Docket No. 5586 in Case No. 17-03283 and Docket No. 384 in Case No. 17-03566).  Contemporaneously with its objections, the Creditors' Committee filed proposed procedures to resolve their objections (Docket No. 5589 in Case No. 17-03283 and Docket No. 386 in Case No. 17-03566).  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee") filed the *Omnibus Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of ERS Bonds Against ERS and*

---

[5]     On October 7, 2019, the Supreme Court denied the petition for writ of certiorari filed by the Financial Oversight and Management Board for Puerto Rico to review the decision of the First Circuit in *Financial Oversight & Management Board v. Andalusian Global Designated Activity Co.*, No. 18-1389.

*the Commonwealth* (Docket No. 6482 in Case No. 17-03283 and Docket No. 469 in Case No. 17-03566).

19.     On May 19, 2019, the Special Claims Committee of the Financial Oversight and Management Board (the "SCC") and the Creditors' Committee commenced a series of adversary proceedings seeking to recover payments made to holders of ERS Bonds.  *See* Adv. Proc. Nos. 19-00355, 19-00356, 19-00357, 19-00358, 19-00359, 19-00360, and 19-00361 (D.P.R.).

20.     On June 27, 2019, this Court granted summary judgment to ERS and held that "Bankruptcy Code Section 552 prevents any security interest resulting from liens granted in [the Bondholders'] favor prior to the commencement of ERS's Title III case from attaching to revenues received by ERS during the post-petition period."  *In re Fin. Oversight & Mgmt. Bd for P.R.* (*Fin. Oversight & Mgmt. Bd. for P.R. ex rel. Emps. Ret. Sys. v. Andalusian Glob. Designated Activity Co.*), Adv. Proc. No. 17-00213, 2019 WL 2636270 (D.P.R. June 27, 2019). As a result, on July 8, 2019, this Court entered final judgment against certain of the Movants in the adversary proceeding and terminated, without prejudice, certain of the Movants' separate motion for relief from the stay.  *See supra* ¶ 17.  Certain Movants timely appealed and the case is currently pending in the First Circuit. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 19-1699 (1st Cir.).

21.     On July 24, 2019, this Court entered its order temporarily staying certain matters in the Title III cases, including various objections, motions and actions relating to ERS and the ERS Bondholders.  *See Order Regarding Stay Period and Mandatory Mediation* (Docket No. 8244 in Case No. 17-03283).

22.     On September 26, 2019, building off of the previously filed motions and the mediation sessions ordered by the Court, the Creditors' Committee filed the *Urgent Consented to*

*Supplement to Motion of Official Committee of Unsecured Creditors, under Bankruptcy Code Sections 105(A) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Objections to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Commonwealth of Puerto Rico* (Docket No. 8761 in Case No. 17-03283 and Docket No. 670 in Case No. 17-03566) (the "Urgent Procedures Supplement"). The Court entered the Procedures Order granting the Urgent Procedures Supplement on October 7, 2019. Pursuant to the Court's Order, the deadline for Movants to assert a post-petition claim (including a request for an administrative expense) against ERS and the Commonwealth is November 21, 2019.

23.    On September 27, 2019, the Oversight Board, on behalf of the Commonwealth, ERS, and the Puerto Rico Public Buildings Authority, filed the *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (Docket No. 8765 in Case No. 17-03283 and Docket No. 672 in Case No. 17-03566) (the "Plan") and the *Disclosure Statement for the Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (Docket No. 8766 in Case No. 17-03283 and Docket No. 673 in Case No. 17-03566).

### Post-Petition Claims and Administrative Expense

24.    This Motion by Movants against ERS and the Commonwealth is predicated upon post-petition and administrative expense claims arising under, relating to, or in connection with (a) ERS's post-petition breach of its obligation to pay principal and interest on the ERS Bonds; (b) ERS's numerous post-petition breaches of its obligations under the ERS Bonds, the ERS Bond Resolution and the security agreement, including, without limitation, (i) ERS's failure to promptly collect and remit employer contributions to the Fiscal Agent, (ii) ERS's failure to

pursue all available legal remedies to collect employer contributions that are delinquent or inadequate, (iii) ERS's failure to transfer employer contributions to the respective collateral accounts on a monthly basis, (iv) ERS's breach of its obligation to oppose the enactment of the Post-Petition Legislation, and (v) ERS's failure to defend, preserve, and protect the assignment of the Pledged Property and the rights of Movants; (c) the post-petition unjust enrichment of ERS at Movants' expense; (d) the Commonwealth's post-petition enactment of the Post-Petition Legislation and/or receipt of the Pledged Property from ERS, including, without limitation, (i) the Commonwealth's violation of the automatic stay in ERS's Title III case when it enacted the Post-Petition Legislation diverting employer contributions from ERS to the Commonwealth and requiring ERS to liquidate its assets and transfer the proceeds to the Commonwealth, (ii) the Commonwealth's acquisition of the Pledged Property that remains subject to Movants' liens under the UCC, (iii) the Commonwealth's violation of the Fifth Amendment to the United States Constitution and Article II, Section 9 of the Puerto Rico Constitution when it enacted the Post-Petition Legislation; (iv) the Commonwealth's violation of Article I, § 10 of the United States Constitution and Article II, § 7 of the Puerto Rico Constitution when it enacted the Post-Petition Legislation; (v) the unjust enrichment of the Commonwealth at the Movants' expense resulting from the transfer of the Pledged Property under the Post-Petition Legislation; and (vi) the Commonwealth's violation of PROMESA, including, without limitation, the Commonwealth's violation of Section 407 of PROMESA when it enacted the Post-Petition Legislation; (e) the Commonwealth's and ERS's post-petition breach of the *Order Approving Stipulation, Setting Aside Hearing and Dismissing Case* entered by Judge Besosa on January 17, 2017, in Case No. 16-02696 (Docket No. 83); (f) the failure of adequate protection under section 922(c); and (g) any other claims the Movants may have against ERS or the Commonwealth in connection

with the Post-Petition Legislation, the ERS Bonds, the ERS Bond Resolution, the passage of various unlawful acts and/or executive orders, and/or any other unlawful actions.

### Basis for Post-Petition Claims and Administrative Expense

25.     The Bankruptcy Code provides that "[a]fter notice and a hearing" a court shall allow administrative expenses. 11 U.S.C. § 503(b).  Section 922(c) of the Bankruptcy Code provides that a claim for failure of adequate protection is allowable as an administrative expense under section 503(b).  Section 301 of PROMESA expressly incorporates sections 503(b) and 922(c) of the Bankruptcy Code into Title III of PROMESA.  Each of the Claims arises post-petition and is allowable as an administrative expense.  *See Reading Co. v. Brown*, 391 U.S. 471 (1968) (postpetition negligence of a receiver is an expense of administration); *In re Charlesbank Laundry, Inc.*, 755 F.2d 200, 203 (1st Cir. 1985).  Even if the Claims were not entitled to administrative expense treatment, they arose post-petition and are non-dischargeable in these proceedings.  *See* 6 COLLIER ON BANKRUPTCY § 901.04 (16th 2019) ("claims incurred by the municipality during the case will not be discharged").

26.     In this case, the Claims are valid post-petition claims and are entitled to administrative expense status under 11 U.S.C. § 503(b) given that the Post-Petition Legislation was enacted after the commencement of the ERS and the Commonwealth's Title III cases and the post-petition conduct of ERS and the Commonwealth was in violation of the law.  The Post-Petition Legislation effected transfers of ERS's property that were unauthorized and wrongful. Nothing in PROMESA or the Bankruptcy Code allows the seizure of a Title III debtor's property without authorization.  It is difficult to imagine a more egregious violation of the law than the Commonwealth working to dismantle ERS and taking all of its assets by enacting the Post-Petition Legislation.  In the event the Court determines that the post-petition and administrative

expense claims in this Title III case are not within the control of the Court, then the Court should find that the Claims are non-dischargeable.

27.  ***Claims Asserted in Adversary Case.***  Attached hereto as <u>Exhibit A</u> is certain of the Movants' *Amended and Supplemented Adversary Complaint* filed in *Altair Global Credit Opportunities Fund (A), LLC, et al. v. The Commonwealth of Puerto Rico, et al.*, Adv. Proc. Nos. 17-00219 and 17-00220 (D.P.R.) (Dkt. No. 39) (the "<u>Adversary Complaint Claims</u>," and together with the claims identified in ¶ 24, the "<u>Claims</u>").  Movants hereby incorporate the Adversary Complaint Claims into this Motion and assert them against ERS and the Commonwealth.

28.  ***ERS's Breach of Its Obligation to Pay Principal and Interest on the ERS Bonds.***  ERS is obligated to pay principal and interest on the ERS Bonds pursuant to the ERS Bond Resolution.  ERS Bond Resolution § 701.  ERS breached this obligation at various times post-petition, including, without limitation, after the enactment of the Post-Petition Legislation.

29.  ***ERS's Breach of Its Obligation to Promptly Collect and Remit Employer Contributions to the Fiscal Agent.***  ERS is obligated to "promptly collect and remit" all employer contributions to the Fiscal Agent in accordance with its statutory obligations.  *Id.* § 701.  ERS breached this obligation at various times post-petition, including, without limitation, after the enactment of the Post-Petition Legislation.

30.  ***ERS's Breach of Its Obligation to Pursue All Available Legal Remedies to Collect Employer Contributions That Are Delinquent or Inadequate.***  ERS is obligated to "perform all acts and enforce all its powers . . . in order to promptly collect and remit the Employers' Contributions" for payment of the ERS Bonds.  *Id.*; *see also* § 709(1).  ERS breached this obligation at various times post-petition, including, without limitation, after enactment of the Post-Petition Legislation.

31.   ***ERS's Breach of Its Obligation to Transfer Employer Contributions to the Respective Collateral Accounts on a Monthly Basis.***   ERS is obligated to transfer employer contributions to the Fiscal Agent in accordance with certain provisions of the ERS Bond Resolution.  *Id.* §§ 504, 505, 506.  ERS breached this obligation at various times post-petition, including, without limitation, after enactment of the Post-Petition Legislation.

32.   ***ERS's Breach of Its Obligation to Oppose the Enactment of the Post-Petition Legislation.***   ERS is obligated to "oppose any attempt by the Legislature of the Commonwealth . . . to make any other change in the [ERS Enabling Act] or any other relevant legislation that would have a material adverse effect on [the ERS] Bondholders."  *Id.* § 709(2).   ERS breached this obligation at various times post-petition, including, without limitation, in connection with the enactment of the Post-Petition Legislation.

33.   ***ERS's Failure to Defend, Preserve, and Protect the Assignment of the Pledged Property and the Rights of the ERS Bondholders.***   ERS is obligated, "at all times, to the extent permitted by law, [to] defend, preserve and protect the assignment of the Pledged Property and all the rights of the Fiscal Agent, the Beneficiaries and the [ERS Bondholders] under [the ERS Bond] Resolution against all claims and demands of all persons whomsoever."  *Id.* § 705.  ERS breached this obligation at various times post-petition, including, without limitation, after the enactment of the Post-Petition Legislation.

34.   ***Unjust Enrichment of ERS.***   The ERS Bondholders or their predecessors in interest provided approximately $3 billion to ERS to help pay pension and other benefits.   In exchange, ERS promised to pay principal and interest on the ERS Bonds and granted the ERS Bondholders liens on the Pledged Property.   To the extent ERS is permitted to evade all of the

responsibilities it voluntarily assumed in issuing the ERS Bonds, while also retaining the $3 billion it obtained, this results in an unjust enrichment of ERS at the ERS Bondholders' expense.

35.     ***The Commonwealth's Violation of the ERS Automatic Stay.***     The Commonwealth enacted the Post-Petition Legislation after the commencement of ERS's Title III case.   The Post-Petition Legislation required ERS to (1) liquidate its assets and transfer the proceeds to the Commonwealth, and (2) divert employer contributions to which ERS has a statutory right away from ERS to the Commonwealth.   The Commonwealth is an entity separate from ERS that owed payment obligations to ERS.   Accordingly, the enactment of the Post-Petition Legislation was action by the Commonwealth to obtain possession of property of ERS and from ERS, and to exercise control over property of ERS, in violation of the ERS automatic stay.   The Commonwealth's violation of the ERS automatic stay caused ERS to be unable to fulfill its obligation to pay principal and interest on the ERS Bonds and deprived Movants of their property interests in the Pledged Property.

36.     ***The Pledged Property Remains Subject to Movants' Liens Under the UCC.***   The Puerto Rico Uniform Commercial Code (both in 2008 and today) provides that "[a] security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien," and also that "a security interest attaches to any identifiable proceeds of collateral."   19 L.P.R.A. § 2265(a); *see also* 19 L.P.R.A. § 2106(2) (2008) ("[A] security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.").   Nothing in PROMESA alters, amends, or preempts these laws.   The Post-Petition

Legislation transfers the Pledged Property from ERS to the Commonwealth.  As decided by the First Circuit, the Movants have secured, perfected liens in the Pledged Property. These secured, perfected liens remain on the Pledged Property acquired by the Commonwealth and therefore Movants hold secured claims against the Commonwealth with respect to any Pledged Property in the Commonwealth's possession. Movants are entitled to post-petition claims and administrative expense status for those claims that resulted from the Commonwealth's violation of the law.

37.     ***The Commonwealth's Taking of the ERS Bondholders' Property Without Just Compensation.***  The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V (the "U.S. Takings Clause").  Article II, Section 9 of the Puerto Rico Constitution provides that "[p]rivate property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law."  P.R. Const. art. II, § 9 (the "P.R. Takings Clause").  Movants possess a constitutionally protected property interest in the form of valid, perfected security interests in and liens on the Pledged Property as well as the contractual right to timely payment of principal and interest.  The Post-Petition Legislation ordered ERS to sell its assets and to transfer its funds to the Commonwealth.  The Post-Petition Legislation also ordered the Commonwealth and non-Commonwealth public employers (such as municipalities and public corporations) to cease paying employer contributions to ERS and instead make these payments to the Commonwealth's General Fund.  The Post-Petition Legislation provided no compensation of any kind for the transfer of the Movants' property to the Commonwealth and therefore constitutes an unconstitutional taking of the Pledged Property.  At all relevant times,

Movants have been oversecured.[6] Accordingly, the amount of just compensation required for the taking of the Movants' collateral is no less than the principal amount of the ERS Bonds and any and all interest accruing thereon until the date compensation is paid.  In addition, as explained above, impairing the Movants' just compensation claims as proposed for in the Plan by the Commonwealth and ERS, violates the Fifth and Fourteenth Amendments to the United States Constitution.

38.     ***The Commonwealth's Violation of the United States and Puerto Rico Contracts Clauses.***  Article I, § 10 of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl. 1.  Article II, § 7 of the Puerto Rico Constitution provides that "[n]o laws impairing the obligation of contracts shall be enacted."  P.R. Const. art. II, § 7.  The ERS Bond Resolution created a contractual relationship between ERS and the ERS Bondholders.  Movants have a contractual right to timely payment of principal and interest by ERS.  ERS Bond Resolution § 701.  Moreover, Movants

---

[6]      The Oversight Board, ERS and the Commonwealth have all previously argued that the ERS Bonds are oversecured. *See, e.g.*, Brief of Amicus Curiae Fin. Oversight and Mgmt. Bd. for Puerto Rico in Support of Respondents-Appellees Urging Affirmance of the District Court Order in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-02433, Docket No. 65, at 18 (1st Cir. Dec. 23, 2016) ("The [ERS Bondholders] have a substantial equity cushion as a result of the reserve accounts and the perpetual revenue streams."); Respondent Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-02696, Docket No. 52, at 10-11 (Oct. 26, 2016) ("[T]he security interests held by the ERS Bondholders provide them with future protection more than sufficient to address any concern, real or imagined."); Respondents' Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro García Padilla, et al.*, No. 16-02696, Docket No. 53, at 18 ("Given its size and indefinite duration, the security interest provides Movants with the adequate protection they purport is required to ensure payment on their bonds, certainly through the expiration of the PROMESA stay and, indeed, for as long as the bonds remain outstanding.").

have a contractual right and security interest in the Pledged Property. *Id.* § 501. The Post-Petition Legislation required ERS to liquidate its assets and pay the proceeds to the Commonwealth's General Fund, and divert the stream of employer contributions from ERS to the Commonwealth. Accordingly, the Post-Petition Legislation substantially impairs contractual obligations of ERS. This substantial impairment is neither reasonable nor necessary to an important purpose of the Commonwealth government. Movants are entitled to post-petition claims and administrative expense status for those claims as a result of the Commonwealth's violation of the law.

39. ***Unjust Enrichment of the Commonwealth.*** The Post-Petition Legislation required ERS to transfer the Pledged Property, the ERS Bondholders' collateral, to the Commonwealth without providing any consideration, without the ERS Bondholders' consent, and in violation of United States and Puerto Rico law. To the extent the Commonwealth possesses the Pledged Property pursuant to the Post-Petition Legislation, the Commonwealth is intentionally and wrongfully holding the ERS Bondholders' property without their consent, which results in an unjust enrichment of the Commonwealth at the ERS Bondholders' expense.

40. ***The Commonwealth's Violation of Section 407 of PROMESA.*** Section 407 of PROMESA provides:

> While an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.

48 U.S.C. § 2195(a). ERS has a statutory right to receive employer contributions from the Commonwealth and non-Commonwealth public employers. Movants possess valid,

perfected security interests in and liens on the Pledged Property, which includes, among other things, employer contributions, the right to receive employer contributions, and the proceeds thereof.  The Post-Petition Legislation required ERS to sell and transfer its assets and funds, all of which are subject to the Movants' liens on the Pledged Property.   The Post-Petition Legislation also required the Commonwealth and non-Commonwealth public employers to cease paying employer contributions to ERS and instead to make these payments to the Commonwealth's General Fund.  Employer contributions and the right to receive employer contributions are subject to the Movants' liens on the Pledged Property.  The Commonwealth has provided no compensation of any kind for these transfers, in violation of United States and Puerto Rico law.  As transferee of the property, the Commonwealth is liable for the value of the property.

41.    ***The Commonwealth's and ERS's Breach of the Order Approving Stipulation, Setting Aside Hearing and Dismissing Case Entered by Judge Besosa on January 17, 2017.*** On January 17, 2017, Judge Besosa entered an order approving a stipulation entered into by Movants, ERS, the Commonwealth, and the Oversight Board (the "Order").  *See* Order Approving Stipulation, Setting Aside Hearing and Dismissing Case, No. 16-02696, Docket No. 83.  The Order required ERS to transfer any employer contributions received from the Commonwealth to a specified bank account.  *See id.* at 2-3 ("To the extent that ERS receives any Commonwealth central government Employers' Contributions, unless otherwise agreed in writing by the undersigned parties, such contributions shall be retained in the Segregated Account pending further order of the Court, provided, however, the undersigned parties agree that such matter may be heard by the Court upon motion and at an expedited hearing.").  ERS later admitted that it received employer contributions from the Commonwealth and did not

transfer those amounts to the specified account, in violation of the Order. *See* DiPompeo Decl., Docket No. 96 in Adv. Proc. No. 17-00213, Ex. A at 307:2-310:6.

42. ***922(c) Claims.*** Movants have been harmed by the continuation of the automatic stay of sections 362 and 922. Movants diligently and repeatedly sought relief from stay for lack of adequate protection. Nevertheless, adequate protection has failed and Movants have a claim arising from the stay of action against the Pledged Property. Under section 922(c) of the Bankruptcy Code, such claim is allowable as an administrative expense.

43. ***Additional Claims.*** ERS and the Commonwealth also damaged Movants through the Post-Petition Legislation, the passage of various unlawful acts and executive orders, and other unlawful actions, that violated (a) Puerto Rico law, including, without limitation, the law of fraudulent transfer, conversion, tortious interference, alter ego, subrogation, avoidance, breach of fiduciary duty, promissory estoppel, breach of express and implied warranty, negligent misrepresentation or omission, and fraudulent misrepresentation or omission, (b) the United States Bankruptcy Code, (c) PROMESA, (d) various securities laws, and (e) the United States and Puerto Rico Constitutions. Movants are entitled to post-petition claims and administrative expense status for those claims as a result of the Commonwealth's and ERS's violation of the law.

## Reservation of Rights

44. Movants do not waive, and expressly reserve, all rights, claims, counterclaims, defenses and remedies at law or in equity that they have or may have against ERS and the Commonwealth and/or any other person or entity. Movants reserve the right to assert additional administrative expenses and claims against ERS and the Commonwealth of any nature for any other amounts, and to amend, modify, and/or supplement this Motion.

## <u>Notice</u>

45.    Notice of this Motion has hereby been served by CM/ECF and on the Master

Service list provided by the Commonwealth and ERS's claims and noticing agent by e-mail or

by first-class mail.

**WHEREFORE**, Movants respectfully request that this Court allow Movants' Claims as

post-petition and administrative expense claims, with any other appropriate relief.

In San Juan, Puerto Rico, today November 21, 2019.

By:

/s/ *Alfredo Fernández-Martínez*

DELGADO & FERNÁNDEZ, LLC
Alfredo Fernández-Martínez
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
(787) 274-1414
afernandez@delgadofernandez.com

/s/ *Bruce Bennett*

JONES DAY
Bruce Bennett (*pro hac vice*)
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
250 Vesey Street
New York, NY 10281
(212) 326-3939
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
51 Louisiana Ave. N.W.
Washington, DC 20001
(202) 879-3939
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

*Counsel for Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.*