# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>**Re: ECF Nos. 1691, 1731, 1734.**<br>Case No. 17-BK-4780-LTS<br><br>**This Pleading relates only to PREPA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and PREPA's Title III case (Case No. 17-BK-4780-LTS)** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, and PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,

                Movants,

v.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *et al.*,

                Respondents.

**SUPPLEMENTAL BRIEF OF GOVERNMENT PARTIES IN CONNECTION WITH OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PROOF OF CLAIM NUMBER 18449 FILED BY U.S. BANK N.A., IN ITS CAPACITY AS TRUSTEE FOR NON-RECOURSE PREPA BONDS**

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................1
    I.    The Committee Lacks Standing to Object to the Master Bond Claim ................... 2
    II.    The Court is Not Required to and Should Not Hear the Committee Objection Before the 9019 Motion ........................................................................................... 6

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ARS Brook, LLC v. Jalbert (In re ServiSense.com, Inc.)*, 382 F.3d 68 (1st Cir.
    2004) ..................................................................................................................................9

*Fred Reuping Leather Co. v. Ft. Greene Nat'l Bank*,
    102 F.2d 372 (3d Cir. 1939)................................................................................................3

*Gras v. Smith (In re Global Envtl. Solutions)*,
    342 B.R. 116 (D.N.H. 2006)................................................................................................3

*In re C.P. Hall Co.*,
    513 B.R. 540 (Bankr. N.D. Ill. 2014) ................................................................................10

*In re C.P. Hall Co.*,
    Case No. 11-26443 (Bankr. N.D. Ill. Aug. 15, 2013)........................................................10

*In re C.S. Mining, LLC*,
    574 B.R. 259 (Bankr. D. Utah 2017) ..................................................................................9

*In re Chi. Invs., LLC*,
    470 B.R. 32 (Bankr. D. Mass. 2012) .......................................................................3, 4, 5, 6

*In re Choquette*,
    290 B.R. 183 (Bankr. D. Mass. 2003) .................................................................................3

*In re City of Stockton*, 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012)......................................................5

*In re City of Stockton*,
    486 B.R. 194 (Bankr. E.D. Cal. 2013).................................................................................8

*In re Dow Corning Corp.*,
    244 B.R. 721 (Bankr. E.D. Mich. 1999), *rev'd on other grounds*, 255 B.R. 445
    (E.D. Mich. 2000), *aff'd*, 280 F.3d 648 (6th Cir. 2002) ...............................................3, 4, 6

*In re DVR, LLC*,
    582 B.R. 507 (Bankr. D. Colo. 2018) .......................................................................7, 8, 10

*In re Heritage Org., LLC*,
    375 B.R. 230 (Bankr. N.D. Tex. 2007)................................................................................7

*In re Simon*,
    179 B.R. 1 (Bankr. D. Mass 1995) ..................................................................................3, 6

*Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995) ...................................................................9

*Kowal v. Malkemus (In re Thompson)*,
  965 F.2d 1136 (1st Cir. 1992) ........................................................................................2, 6

*Law Debenture Tr. Comp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*,
  339 B.R. 91 (D. Del. 2006) ..........................................................................................7, 8, 9

*Prin Corp. v. Altman (In re Altman)*,
  265 B.R. 652 (Bankr. D. Conn. 2001) . Bankruptcy ...............................................................7

*Renco Grp., Inc. v. Wilmington Trust, N. A. (In re Magnesium Corp. of Am.)*,
  583 B.R. 637 (Bankr. S.D.N.Y. 2018) ......................................................................................3

*RWNIH-DL 122nd St. 1 LLC v. Futterman (In re Futterman)*,
  2019 Bankr. LEXIS 1872 (Bankr. S.D.N.Y. Jun. 20, 2019) ............................................7, 8, 9

*Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*,
  423 F.3d 166 (2d Cir. 2005) .........................................................................................6, 7

**STATUTES**

11 U.S.C. § 323(a) ...........................................................................................................6

11 U.S.C. § 502 ................................................................................................................2

11 U.S.C. § 502(b) ...........................................................................................................7

11 U.S.C. § 544 ................................................................................................................5

11 U.S.C. § 704 ................................................................................................................6

11 U.S.C. § 927 ................................................................................................................5

11 U.S.C. § 1109(b) .........................................................................................................6

48 U.S.C. §§ 2101-2241 ..................................................................................................1

PROMESA § 301(c)(7) ....................................................................................................4

PROMESA § 315(a) ........................................................................................................6

PROMESA § 315(b) ................................................................................................1, 4, 6, 9

**OTHER AUTHORITIES**

*Order Granting Joint Urgent Motion of the Oversight Board, PREPA, and
   AAFAF to Extend all Applicable Deadlines to Cobra Acquisition LLC's
   Motion for Allowance and Payment of Administrative Expense Claims*, Case
   No. 17-BK-3283-LTS, ECF No. 8886 ................................................................................6

Fed. R. Bankr. P. 9019 ...............................................................................................................7, 9

Fed. R. Bankr. P. 9019(a) .............................................................................................................6

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA"),[1] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with the Oversight Board and PREPA, the "Government Parties"), as the entity authorized to act on behalf of PREPA pursuant to Act 2-2017, submit this supplemental brief pursuant to the Court's order [ECF No. 1734] directing briefing on (i) whether the Official Committee of Unsecured Creditors (the "Committee") has standing to maintain its objection [ECF No. 1691] (the "Committee Objection") to U.S. Bank N.A.'s (the "Bond Trustee") proof of claim number 18449 (the "Master Bond Claim") without leave of the Court and (ii) whether the Court must adjudicate the Committee Objection notwithstanding the Government Parties' currently pending settlement motion.[2]  In support of this supplemental brief, the Government Parties respectfully aver as follows:

## ARGUMENT

1.  The Government Parties submit the Committee Objection cannot be and should not be heard before the 9019 Motion (as, indeed, the Committee itself conceded),[3] for two reasons. First, First Circuit jurisprudence is clear the Committee lacks standing without making a demand on the Oversight Board, the Oversight Board refusing to act, and obtaining leave of the Court.

---

[1] The Oversight Board is PREPA's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA").  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[2] *See Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [ECF No. 1235] (the "9019 Motion").

[3] *See* Jun. 28, 2019 Hr'g Tr. 11:24-12:2 ("JUDGE SWAIN: Even you are proposing to hold off lien challenge litigation until a determination is made as to whether the 9019 is the approved or not.  MR. DESPINS: **That's correct.**") (emphasis added); *see also id.* at 36:6-11 (statement of Mr. Despins) ("This is not an attempt through the back door to sidetrack that, and I think we've tried very hard to make sure that's clear, your Honor, by agreeing that we're not going to do anything if you grant us the standing, other than file the complaint with the Board, and so this is not an attempt to do that. It's purely an effort to avoid unintended consequences.").

None of these conditions have been satisfied, necessitating the Committee Objection's dismissal without a hearing on the merits. <u>Second</u>, even if the Committee has standing (it does not), nothing requires the Court to hear the Committee Objection before the 9019 Motion. Indeed, settlements would be futile if parties in interest could preempt them by litigating the issues proposed to be settled. Allowing the Committee Objection—which was filed five months *after* the 9019 Motion—to go forward now would threaten the Government Parties' settlement with more than 90% of PREPA's bondholders and deprive all parties of the benefits of the settlement. The case law is clear the Committee cannot derail a settlement by filing its own objection and insisting that it be decided before the settlement—the Committee is limited to objecting to the 9019 Motion (which it has done). As a result, the Court should not hear the Committee Objection until after it adjudicates the 9019 Motion, and then only if the 9019 Motion is denied, the Oversight Board is barred from submitting a revised settlement and the Court grants the Committee leave to object.

## I. The Committee Lacks Standing to Object to the Master Bond Claim

2. The Committee Objection seeks an order pursuant to section 502 disallowing the Master Bond Claim to the extent it seeks payment beyond amounts credited to specified accounts held with the Bond Trustee. ECF No. 1691-1. The Committee Objection must be dismissed without a hearing on the merits because the Committee lacks standing to bring it. Adding injury to insult, the Committee's unwarranted frolic is, yet again, being prosecuted at PREPA's expense.

3. First Circuit law is clear that "absent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim." *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1147 (1st Cir. 1992) ("Leave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object, notwithstanding a request to do so, and the bankruptcy court

2

permits the creditor to object in the trustee's stead.").[4] A creditor can seek leave to prosecute its own objection <u>only</u> if the Oversight Board[5] refuses to take any action and the creditor can show its objection would benefit the estate.[6] This rule also applies in chapter 11 cases as well.[7] Moreover, First Circuit jurisprudence embraces the majority rule on this issue, which holds that creditors cannot file claims objections unless the trustee refuses and they are granted leave of the court.[8]

---

[4] *See also, e.g., In re Dow Corning Corp.*, 244 B.R. 721, 751 (Bankr. E.D. Mich. 1999), *rev'd on other grounds*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd*, 280 F.3d 648 (6th Cir. 2002) (once debtor-in-possession has filed objection to claim "no useful purpose would be served in allowing [another creditor] to pursue its own objections to these claims. Conversely, allowing such a course of action would waste judicial resources and delay administration of the bankruptcy estate to its and its creditors' detriment with no corresponding benefit to the estate. This would undermine the articulated policy concern of an orderly and efficacious administration of the bankruptcy estate."); *In re Choquette*, 290 B.R. 183, 188 n.9 (Bankr. D. Mass. 2003) ("a creditor may seek leave from the court to object to a proof of claim <u>only</u> if the trustee refuses to take any action.") (quoting *In re Simon*, 179 B.R. 1, 6-7 (Bankr. D. Mass 1995)) (emphasis in original); *Gras v. Smith (In re Global Envtl. Solutions)*, 342 B.R. 116, 119 (D.N.H. 2006) ("as a general rule, absent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim. Leave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object, notwithstanding a request to do so, and the bankruptcy court permits the creditor to object in the trustee's stead . . . The bankruptcy court stated that it was the court's practice not to allow third parties to interpose their opinions on claims filed by creditors, which is a matter decided between the trustee and the court. That is a sustainable position.") (internal cites and quotes omitted).

[5] The term "trustee," when used in a section of Title 11 made applicable to PROMESA refers to the Oversight Board. *See* PROMESA § 301(c)(7); *see also id.* § 315(b) (Oversight Board is debtor's representative in Title III).

[6] *See In re Simon*, 179 B.R. 1, 6-7 (Bankr. D. Mass. 1995) ("Several courts, including the First Circuit, have ruled that a creditor may seek leave from the court to object to a proof of claim *only* if the trustee refuses to take any action . . . The objecting creditor must also establish that if the objection to the proof of claim were sustained, there would be some benefit to the estate.") (emphasis in original).

[7] *See In re Chi. Invs., LLC*, 470 B.R. 32, 92 (Bankr. D. Mass. 2012) (applying *In re Thompson* to chapter 11 case and dismissing creditors' claim, stating "[b]ecause the Debtors now seek to settle their dispute with Haymarket through the Fourth Amended Plan, the Franchisor's Objection to Haymarket's Claims is procedurally improper as it seeks to undermine the value of that settlement.") (internal cites and quotes omitted); *see also In re Dow Corning Corp.*, 244 B.R. 721, 751 (Bankr. E.D. Mich. 1999), *rev'd on other grounds*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd*, 280 F.3d 648 (6th Cir. 2002) (dismissing creditors committee's claims objection in chapter 11 case that duplicated the debtor-in-possession's as "[t]he result is, of course, the same in a chapter 11 case where the debtor fills the role of trustee.").

[8] *See In re Dow Corning Corp.*, 244 B.R. at 750 ("For this policy reason [the demands of orderly and expeditious administration of the estate], **most courts** . . . hold that where a trustee is charged with administering a bankruptcy estate, a creditor can object to the claim of another creditor only if, upon demand, the trustee refuses to do so and the court grants the creditor the right to act on behalf of the trustee.") (emphasis added); *In re Ludwig Honold Mfg. Co.*, 30 B.R. 790, 792 (Bankr. E.D. Pa. 1983) ("**the overwhelming weight of authority** . . . is to the effect that a general creditor of a bankrupt has no right to contest another creditor's claim or to appeal from the refusal of the court to disallow it unless upon application the trustee has refused to do so and the district court has authorized the creditor to proceed in the trustee's name.") (quoting *Fred Reuping Leather Co. v. Ft. Greene Nat'l Bank,* 102 F.2d 372, 372-73 (3d Cir. 1939)) (emphasis added); *Renco Grp., Inc. v. Wilmington Trust, N. A. (In re Magnesium Corp. of Am.)*, 583 B.R. 637, 653 (Bankr. S.D.N.Y. 2018) ("Policy considerations, including the necessity for an orderly and expeditious administration of the estate, have led **the majority of courts** that have addressed the issue to conclude that as a general

3

4. For example, in *In re Dow Corning Corp.*, the unsecured claimholders' committee objected to the debtor's plan, which sought to settle tort victims' claims the committee had objected to, arguing the plan could not settle these claims without the court first ruling on the committee's objection. 244 B.R. at 749. The bankruptcy court overruled this objection, holding the committee did not have standing to bring its claims objections, as it had not sought leave of the court and the debtor had already filed its own objections against the same claims. *Id.* at 751. The court held that "[u]nder these circumstances, no useful purpose would be served in allowing the [committee] to pursue its own objections to these claims. Conversely, allowing such a course of action would waste judicial resources and delay administration of the bankruptcy estate to its and its creditors' detriment with no corresponding benefit to the estate. This would undermine the articulated policy concern of an orderly and efficacious administration of the bankruptcy estate." *Id.*[9]

5. These same considerations dictate dismissal of the Committee Objection. The Committee has not fulfilled the First Circuit's requirements, nor could it. The Committee made no demand on the Oversight Board, and did not ask leave of the Court before filing its objection. Moreover, the Committee could not have obtained leave even if it had asked for it, because the Oversight Board—has **not** refused to object to the Master Bond Claim, but has instead filed its own challenge covering substantially the same ground as the Committee Objection. *See* Case No. 19-AP-391-LTS, ECF No. 1 (the "Lien Challenge").[10] As the Oversight Board has already

---

rule, absent leave of court, the chapter 7 trustee alone may interpose objections to individual proofs of claim.") (internal cites and quotes omitted) (emphasis added).

[9] The rule is also illustrated by *In re Chi. Invs., LLC*, where, in a chapter 11 case, one creditor filed an objection to the claim of another creditor ("Haymarket") that was "almost entirely duplicative" of the debtor's objection to the same claim. The debtor sought to approve a settlement (in its reorganization plan) that would allow Haymarket's claim (over the creditor's objection). Pursuant to this settlement, the debtor filed a motion to strike the creditor's claim objection, which the Bankruptcy Court for the District of Massachusetts granted, holding the claim objection was "procedurally improper as it seeks to undermine the value of that settlement." 470 B.R. at 92.

[10] This adversary proceeding seeks judgments (i) declaring that the security interest securing the Bonds is limited to funds deposited to the credit of PREPA's "Sinking Fund," (ii) in the alternative, avoiding under Bankruptcy Code section 544 any security interests that were granted for the benefit of Bondholders beyond funds deposited to the credit

4

objected to the Bond Trustee's claim, the Committee has no basis to bring its own duplicative objection and usurp the Oversight Board's role. *See, e.g., In re Chi. Invs., LLC*, 470 B.R. at 92.

6. Nor does the Committee Objection benefit the Debtor. To the contrary, it risks a settlement that advances key policies and will, if approved, reduce the Supporting Holders' claims and bring other benefits to PREPA, before the Court can evaluate it by hearing the 9019 Motion. More than 90% of Bondholders and all bond insurers have joined the RSA, meaning it will resolve the claims of PREPA's largest debt constituency and facilitate PREPA's transformation and exit from Title III.[11] The filing of the Committee Objection now—five months *after* the filing of the 9019 Motion—is a transparent attempt to thwart this settlement and would only harm PREPA.

7. In an attempt to get around their failure to satisfy the First Circuit's requirements, the Committee argues the standing rules do not apply as "there is no statutory fiduciary (*i.e.*, a trustee) in a title III case expressly tasked with objecting to creditor claims" under Bankruptcy Code section 704. ECF No. 1731 (the "Joint Status Report"), ¶ 6. This argument is mistaken. The Committee ignores that (i) the same principle applies to debtors-in-possession,[12] and (ii) the Oversight Board is made the "representative of the debtor"[13]—the same "role" as a bankruptcy

---

of the "Sinking Fund" for lack of perfection, and (iii) disallowing the Master Bond Claim to the extent it asserts such security interests. *See* Case No. 19-AP-391-LTS, ECF No. 1. It has been stayed pending the resolution of the Rule 9019 Motion. *See* Case No. 19-AP-391-LTS, ECF No. 10. While the Lien Challenge does not contain a count seeking disallowance of any deficiency claim pursuant to section 927, the Oversight Board is still evaluating such a challenge and can bring its own objection under section 927 if the 9019 Motion is not approved. The Committee made no demand on the Oversight Board to make a section 927 challenge prior to filing the Committee Objection.

[11] *See Declaration of Natalie A. Jaresko in Support of Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(i) and 9019 for Order Approving Settlements Embodied in Restructuring Support Agreement and Tolling Certain Limitations Periods, Filed May 10, 2019 [ECF No.1235]*, Case No. 17-BK-4780-LTS, ECF No. 1428 at ¶ 38.

[12] Creditors cannot displace the rights of a trustee or a debtor in possession to control claim objections and settlements. PREPA is analogous to a debtor-in-possession in this case. *See Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 182-83 (2d Cir. 2005) (holding Bankruptcy Code section 1109(b) does not give creditors the "unilateral right to take control of the estate's legal causes," which would conflict with the debtor's exclusive rights to propose a plan of adjustment and pursuant to Rule 9019).

[13] *Compare* PROMESA § 315(b) ("The Oversight Board in a case under this subchapter **is the representative of the debtor**.") with 11 U.S.C. § 323(a) (section entitled "Role and Capacity of Trustee") ("The trustee in a case under this title **is the representative of the estate**").

5

trustee—and given authority to "take any action necessary on behalf of the debtor to prosecute the case of the debtor, including . . . generally submitting filings." PROMESA § 315(a). Pursuant to these powers, the Oversight Board has filed dozens of claims objections seeking disallowance of trillions of dollars' worth of claims. Moreover, the Committee fails to recognize that <u>all</u> the cases the Government Parties cited rely on the need for an "orderly and efficient administration" of the estate to deny creditors standing.[14] Therefore, arguments based on section 704 or fiduciary duties are red herrings. Indeed, if anything the case law should be applied even more vigorously in a PROMESA Title III case, where PREPA may pay or not pay claims without court interference under PROMESA section 305(a) (and given the absence of Bankruptcy Code section 363).[15]

## II. The Court Should Not Hear the Committee Objection Before the 9019 Motion

8. The Committee argues "that holding a hearing on the Objection in advance of or simultaneously with a ruling on the 9019 Motion is legally required, as a bankruptcy court cannot rule on a settlement motion that purports to resolve a claim objection without first ruling on the claim objection." ECF No. 1731, ¶ 6. The Committee has it backwards. The case law is clear the trustee can settle creditors' claims objections, and creditors cannot to derail a settlement by interposing their own objections and insisting on them being decided before settlement approval. This makes perfect sense: if the Committee loses its objection (which it may), the Debtor will be

---

[14] *See In re Thompson*, 965 F.2d at 1147 ("the needs of orderly and expeditious administration do not permit the full and unfettered exercise of [a creditor's] right to object to the allowance of another creditor's claim."); *In re Chi. Invs.*, LLC, 470 B.R.at 92 (denying creditor's right to object to claims debtor-in-possession sought to settle, because it is "procedurally improper as it seeks to undermine the value of that settlement."); *In re Simon*, 179 B.R. at 6-7 (denying creditor standing because "if every creditor were entitled to challenge the claim of another creditor filed in a particular case, an orderly administration could degrade to chaos."); *In re Dow Corning Corp.*, 244 B.R. at 751 (dismissing claims objection because holding otherwise "would undermine the articulated policy concern of an orderly and efficacious administration of the bankruptcy estate.").

[15] *See In re City of Stockton*, 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012); *see also* ECF No. 8886 at 2-3 (holding Court had no authority over payments to creditors pursuant to section 315). Moreover, the Committee Objection is partly based on the exercise of avoidance powers (*see* UCC Obj. ¶¶ 22-23) that only the Oversight Board or a trustee under Bankruptcy Code section 926 can bring. Notably, the Court has already denied the Committee's motion to bring such actions under section 926. *See* Case No. 17-BK-4780-LTS, ECF No. 1404.

6

in a worse position than it is now. The RSA would almost certainly disappear if the Committee loses its objection, and the Government Parties would lose the benefit of their bargain. That is precisely the risk the Government Parties sought to avoid by entering into the RSA.

9. Under Bankruptcy Rule 9019 the trustee alone can settle claims.[16] Pursuant to Rule 9019, many cases hold that "[s]o long as the Court approves, the Trustee has the authority to settle claims, and that is true even if other parties in interest have filed objections to those claims."[17] As one court expressed, rejecting an argument the trustee could not settle a creditor's claim objection, "[t]o hold otherwise, would permit a creditor to hold the estate hostage to protracted litigation." *In re DVR, LLC*, 582 B.R. 507, 521 (Bankr. D. Colo. 2018). Here, it cannot be that the Court *must* hear the claim objection before the 9019 Motion, as the Oversight Board is not required to bring such a settlement to the Court for approval. *In re City of Stockton*, 486 B.R. at 195-200.

10. For example, in *In re Futterman* the chapter 11 debtor filed a claim objection to the

---

[16] *See* Fed. R. Bankr. P. 9019(a) ("On motion by the trustee . . . the court may approve a compromise and settlement . . . ."). *See also RWNIH-DL 122nd St. 1 LLC v. Futterman (In re Futterman)*, 2019 Bankr. LEXIS 1872, *12-13 (Bankr. S.D.N.Y. Jun. 20, 2019) ("it is the Trustee who is the primary representative of the estate and who has the authority to take action on behalf of the estate. That primary authority includes the right, on behalf of the estate, to settle any claims that are made against the estate.").

[17] *RWNIH-DL 122nd St. 1 LLC v. Futterman (In re Futterman)*, 2019 Bankr. LEXIS 1872, *12-13 (Bankr. S.D.N.Y. Jun. 20, 2019); *see also Law Debenture Tr. Comp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 96 (D. Del. 2006) (affirming bankruptcy court's approval of a settlement by a chapter 11 trustee of one creditor's proof of claim despite another creditor's objection to the claim); *In re DVR, LLC*, 582 B.R. 507, 521-522 (Bankr. D. Colo. 2018) (noting that a creditor who initiates a claim objection will act in its self-interest and, accordingly, the trustee is entitled to propose a settlement resolving that objection, because only the trustee can "protect the interests of the overall estate," and because a contrary ruling would permit a creditor to hold the estate "hostage to protracted litigation"); *In re Heritage Org., LLC*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007) (rejecting a creditor group's arguments that the Chapter 11 trustee lacked authority to settle their objections to certain proofs of claim); *Prin Corp. v. Altman (In re Altman)*, 265 B.R. 652, 659 (Bankr. D. Conn. 2001) (approving a proposed settlement between the chapter 11 trustee and a creditor resolving the creditor's proof of claim, where the chapter 11 debtor had objected to the claim). Bankruptcy Code section 502(b), which states that "if [an] objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim" does not change this result or require the Court to hold a hearing specifically on the claims objection before it hears the settlement. A hearing on the settlement pursuant to which the Court "determine[s] the amount of such claim" fulfills the requirement of section 502(b); *In re DVR, LLC*, 582 B.R. 507, 512 (Bankr. D. Colo. 2018) ("this Court does not read the phrase 'shall determine the amount' in § 502(b) as precluding a settlement. If parties settle a claim objection by agreeing that a creditor will have a claim in a certain amount, and the court, after applying the Rule 9019 standard, approves the settlement, then it has 'determined' and 'allowed' the claim.").

7

certain creditors' claims. The chapter 11 trustee examined the objection and decided to settle it and provide those creditors with a recovery the debtor thought excessive. The debtor objected to the settlement, arguing it could not be approved without a hearing on his objection. The court rejected this argument, holding that the debtor's rights were limited to objecting to the settlement:

> Parties in interest have the right to object to the wisdom of a settlement if they do not think that the settlement makes sense. But as Mr. Futterman's attorneys have conceded in a prior hearing, **the fact that Mr. Futterman was allowed to raise an objection to the RWN deficiency claim does not mean that Mr. Futterman himself has the right to veto a settlement, or to insist on continuing a litigation that would have the effect of vetoing the Trustee's settlement, or that, by virtue of his objection, Mr. Futterman now personally owns the right to control the disposition of the deficiency claim. Instead, his rights are limited to the rights that a party in interest has to object to the wisdom of the Trustee's settlement decision under Rule 9019**. If the rule were otherwise, then bankruptcy cases routinely would be stalemated. Trustees would never be able to settle claims without unanimous support for the settlement, because any dissatisfied party in interest could derail a compromise just by filing its own objection to a claim and demanding control over the disposition of its own objection. The effect would be to turn over control of certain parts of the estate (namely the resolution of claims) to parties other than the trustee, which is exactly the opposite of what the Bankruptcy Code envisions.

2019 Bankr. LEXIS 1872 at *13-14 (emphasis added). Similarly, in *In re Kaiser Aluminum Corp.*, 339 B.R. 91 (D. Del. 2006) the District of Delaware rejected the argument raised by the Committee here (that an objection must be heard before the trustee's settlement), stating "such a procedure would undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve." *Id.* at 94.

11. These cases all make clear that under Rule 9019 (i) the trustee alone can reach and seek approval of settlements,[18] (ii) the trustee can settle claims objections filed by other parties, and (iii) those parties cannot insist on litigating their claims objections before settlement approval.

---

[18] Although certain of the cases cited in this section allow parties other than a trustee to pursue claim objections without prior demand on the trustee, those aspects of these cases are contrary to the binding authority of the First Circuit as set forth in *Thompson*, and indeed those courts would have had no need to analyze whether a creditor objection should be heard before a settlement if the court found the creditor had no standing to object.

8

In other words, these cases make clear the Committee Objection does not have to be heard before or simultaneously with the 9019 Motion. And the Oversight Board's right to control settlements is even more apparent here, as a debtor in Chapter 9 or Title III has an even greater right to control its property and settle claims than in an ordinary bankruptcy case. *See, e.g.,* PROMESA § 305; *In re City of Stockton*, 486 B.R. at 195-200 ("11 U.S.C. § 904 gives a chapter 9 debtor freedom to decide whether to ignore or to follow the Rule 9019 compromise-approval procedure . . . .").

12. Here, the Oversight Board has reviewed all challenges to the Master Bond Claim and determined to settle them rather than risk litigation. The Government Parties are seeking approval of this settlement.[19] As a party-in-interest, the Committee can file an objection to this settlement—and, indeed, the Committee has filed an objection [ECF No. 1700]. But it cannot be permitted to hijack the process by filing its own claim objection duplicative of the Lien Challenge *after* the 9019 Motion has been filed and insist on it being litigated before the 9019 Motion. To decide otherwise would "undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve," *id.* at 94, and would mean "[t]rustees would never be able to settle claims without unanimous support for the settlement." *In re Futterman*, 2019 Bankr. LEXIS 1872 at *13-14. Especially as compromises are favored in bankruptcy cases, *see, e.g.*, *In re ServiSense.com, Inc.*, 382 F.3d 68, 71 (1st Cir. 2004), it would be profoundly disruptive to the case if a party with the power to settle was barred from doing so while parties lacking the settlement power could prosecute their claims objections until judgment. On these grounds, the Court can and should deny the Committee's request for a hearing on the Committee Objection before or simultaneously with the 9019 Motion.

---

[19] The settlement must be evaluated by this Court under the standard set forth in *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995): which is not to "decide the numerous questions of law and fact" raised by the underlying dispute, but rather to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."

9

13. Tellingly, neither of the cases cited by the Committee (Joint Status Report ¶ 6, n. 5) support their position. In *In re C.S. Mining, LLC*, 574 B.R. 259, 281-82 (Bankr. D. Utah 2017), the court refused to allow the trustee to settle an objection filed (long before the settlement) by one secured creditor against another that sought to enforce an intercreditor agreement between the two creditors. The settlement, if approved, would have directly "compromised the objector's contractual lien rights under [this] inter-creditor agreement." *In re DVR, LLC*, 582 B.R. 507 at 513 (explaining *CS Mining*). Thus, it included a dispute between two creditors litigating their own lien rights. Here, the Committee has no lien rights and cannot try to interfere with bondholders' claims against PREPA months after the 9019 Motion was filed. *CS Mining* has no applicability.

14. Similarly, in *In re C.P. Hall Co.*, 513 B.R. 540 (Bankr. N.D. Ill. 2014), the objecting creditor ("Shipley") filed an adversary proceeding asserting Shipley had a lien on certain insurance proceeds and challenging other creditors' asserted liens on the same. *See In re C.P. Hall Co.*, Case No. 11-26443 (Bankr. N.D. Ill. Aug. 15, 2013), ECF No. 205, ¶¶ 28-29. After the filing of the adversary proceeding, the trustee entered into a settlement with the defendant creditors that provided for the immediate payment to the defendant creditors of the same insurance proceeds on which Shipley asserted a first lien. *In re C.P. Hall Co.*, Case No. 11-26443 (Bankr. N.D. Ill. Aug. 15, 2013), ECF No. 220, Ex. A at 4-5. The court refused to approve the settlement without deciding Shipley's adversary proceeding. *In re C.P. Hall Co.*, 513 B.R. at 545-46. Here, *C.P. Hall* is inapposite as it involved an intercreditor dispute between secured claimholders relating to the disposition of their collateral, which was filed long before the settlement was reached.

15. For all the foregoing reasons, the Committee Objection should be dismissed without a hearing on the merits for lack of standing, or, in the alternative, not heard until the Court rules on the 9019 Motion, and then only if it is denied.

10

Dated: November 21, 2019
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel S. Desatnik (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

**LUIS F. DEL VALLE-EMMANUELLI**

By: */s/ Luis F. Del Valle-Emmanuelli*
By: Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897

*/s/ Elizabeth L. McKeen*
John J. Rapisardi
Nancy A. Mitchell
(Admitted *Pro Hac Vice*)

**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

-and-

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

-and-

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC NO. 222301

**MARINI PIETRANTONI MUÑIZ, LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority*

*/s Katiuska Bolaños*
Katiuska Bolaños
USDC-PR 231812

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**.
290 Jesús T. Piñero Ave.
Scotiabank Tower, Suite 11-E
San Juan, PR 00918
PO Box 11689
San Juan, PR 00922-1689
Tel: (787) 458-8276
Cel. (787) 458-8276

*Co-Attorneys for Puerto Rico Electric Power Authority*