April 2, 2019

Hermann Bauer, Esquire
Hermann.Bauer@oneillborges.com
Ubaldo M. Fernandez Barrera, Esquire
Ubaldo.fernandez@oneillborges.com
Diana M. Perez, Esquire
dperez@omm.com
Andres W. Lopez, Esquire
andres@awllaw.com

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
Puerto Rico

Union Plaza Building
Suite 1105
416 Ave. Ponce De Leon
San Juan, PR 00918
787.753.8493 office
787.753.4268 fax
wramirez@aclu.org
www.aclu-pr.org

William Ramirez, Esq.
Executive Director

**Re: In re:** *The Financial Oversight and Management Board for Puerto Rico as representative of the Commonwealth of Puerto Rico*, **et als, PROMESA Title III, No. 17 BK 3283-LTS, AUTOMATIC STAY RELIEF LETTER PURSUANT TO Dkt 1065-1**

Dear Colleagues:

This is to inform you of the movants, Xiomara Rivera-Cruz and Carlos Luis Merced-Centeno, by themselves and on behalf of their minor son A.O.M.R., intent to seek relief from the automatic stay in case CIVIL NO. 16-2469 (CC), filed in the United States District Court for the District of Puerto Rico, under 42 USC sec. 1983, 1988.

## PROCEDURAL BACKGROUND

### I. Summary of the allegations:

By midday of August 15th, 2015, several agents of the PRPD's Bureau of Narcotics entered Barriada Morales in Caguas. From the porch of her home, plaintiff Xiomara Rivera, who by the time was twenty four weeks pregnant, (See Dkt 1,¶2.1) observed PRPD's agents abusively tasing a person (who was already handcuffed on the ground) with a stun gun. Rivera, and her immediate neighbor next door, Arturo Centeno, requested the officers to stop the abusive behavior. In response and without any legal justification the officers charged against both Centeno and Rivera, although they did not represent a threat to the agents or to the operation. PRPD agents unlawfully entered

1



Centeno's property and Centeno was brutally assaulted, including the unnecessary use of a taser on his person. Rivera started to video record the incident with her smartphone, and the PRPD officers told her to stop filming, but she refuses. The Police agents then cornered Rivera against the gate and threatened to attack her by pointing the stun gun toward her stomach. Violently, one of the officers snatched the smartphone out of her hand to unlawfully confiscate it with her social security card, Nutritional Assistance Program Card and the family's medical insurance card. (See Dkt 1,¶¶ 3.6-3.7) The agents unlawfully tampered, searched and blocked the phone. (See Dkt 1,¶ 3.17)

Plaintiff Carlos Merced was watching the whole incident from the house second floor, while holding his five (5) years old son A.O.M.R., and requested the officers to suspend the assault against his wife. Instead, PRPD officers continue the aggression and pointed the stun gun against Merced and A.O.M.R. (See Dkt 1,¶ 3.8) The PRPD agents insulted Merced and attempted to enter the porch gate of Plaintiffs' house threatening to kill Merced and inviting him to a fight. (See Dkt 1,¶ 3.11) One of the officers shook violently the gate, while striking Plaintiff with her hand and fist. The other, approached Plaintiff Xiomara Rivera and spat her on the face. (See Dkt 1,¶ 3.12) Other PRPD officers were witnessing the incident and failed to protect the Plaintiff and prevent the unlawful behavior of the Police Officers that were directly involved. (See Dkt 1,¶ 3.13)

The next day, Plaintiffs filed an administrative complaint seeking accountability. (See Dkt 1,¶ 3.19) However, with the absolute knowledge, acquiescence and authorization of the PRPD supervisors, police agents pressed criminal false charges against Plaintiffs, subjecting them to a burdensome judicial process that ultimately resulted in dismissal. (See Dkt 1,¶ 3.21-3.23)

At all times the officers involved were acting under color of law as agents of the PRPD and under the official authority vested upon them by the Commonwealth of Puerto Rico (See Dkt 1,¶ 2.9) Since 2013, the Commonwealth of Puerto Rico is compelled to comply to a federal judicial settlement agreement directed to adopt effective measures and policies to correct a pattern and practice of police misconducts and abuses, as the ones narrated in the complaint. These measures include close supervision and documentation in the event of search, seizure, use of force, arrests, discipline among others. However, the Commonwealth of Puerto Rico, through its agents, officials and individual defendants have failed to do so. (See Dkt 1,¶ 3.27)

As a result to the Defendants' abusive behavior, Plaintiffs file the instant civil rights action against the Commonwealth of Puerto Rico, several PRPD officers and supervisors and the Superintendent in their official and personal capacity claiming equitable relief and monetary damages for violation of Plaintiffs' constitutional rights under the 1st, 4th, 14th Amendment of U.S. Constitution. Plaintiffs also invokes supplemental jurisdiction for violations of the laws of

Puerto Rico and the Commonwealth's Constitution.

Defendants were sued in their personal and official capacities, and in the Complaint, plaintiffs requested both equitable relief and monetary damages against Defendants in their personal capacities, as allowed by section 1983 of the Civil Rights Act. 42 U.S.C. § 1983. Defendants argued that they were entitled to qualified immunity for their conduct.

**Procedural Status:**

**Dispositive motions**

Defendant Caldero and the supervisory defendants filed a motion to dismiss and motions for judgment on the pleadings. (Dkts 20 and 27) Plaintiffs opposed (Dkt 34 and 36) Resolution of these legal issues are pending.

**Discovery**

Discovery proceedings have not commenced and this is a case that was filed in 2016. Therefore, several constitutional and statutory federal rights of Plaintiffs have been negatively affected by the "stay" of proceedings.

**Concurrent Criminal Proceedings**

For the events narrated in the Complaint, the US-DOJ pressed federal criminal charges against **Antonio Rodríguez, Javier Ortiz Gonzalez, and Maximo Cano Diaz. (U.S. v. Maximo Cano Diaz, et al. 16-0415).** Cano Díaz and Ortiz González reached a plea bargaining admitting responsibility for the events. (See 16-0415 Dkt 194 and 197) Antonio Rodríguez was acquitted by a jury. Pending the criminal proceedings, upon US-DOJ's request, discovery proceedings were stayed. (See Dkt. 61).

**Automatic Stay under PROMESA**

On February 2, 2018, the Court ordered the stay in these cases under PROMESA (Dkt 90), Title III of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA); Sections 362(a) and 922(a) of the Bankruptcy Code (11 U.S.C. §§ 362 and 922(a)).

The District Court determined that Plaintiffs' claims are covered by PROMESA's automatic stay. Thus, this case is stayed pursuant to 48 U.S.C. 2161(a) and 11 U.S.C. 362 (a), and 922(a). *Any request to lift or vacate the stay must be filed in the Bankruptcy Court in the District Court in Case No. 17-BK-03283(LTS)."* (Emphasis added).

Accordingly, Movant is hereby requesting this Honorable Court to lift the stay imposed by the District Court in the original case or, alternately, to modify



AMERICAN CIVIL LIBERTIES UNION
Puerto Rico

the stay as to allow the continuation of the litigation holding in abeyance any monetary claims for violations of the U.S. Constitution. The filing of a bankruptcy procedure under PROMESA shall not turn the jurisdiction of the Commonwealth of Puerto Rico into a free civil rights' zone.

## ARGUMENT



AMERICAN CIVIL LIBERTIES UNION
Puerto Rico

The Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2102-2241, is a *sui generis* bankruptcy-like statute enacted by Congress in June 2016 to address the imminent financial crisis in Puerto Rico. *See generally Peaje Inv. LLC v. García-Padilla*, 845 F.3d 505, 509 (1st Cir. 2017) (discussing the statute's purpose). Title IV of PROMESA includes a temporary, automatic stay provision for debt-related litigation against the government of Puerto Rico upon the establishment of an Oversight Board for Puerto Rico. 48 U.S.C. § 2194 (a)-(b). Title III of the statute also incorporates by reference many provisions of the Bankruptcy Code, including Sections 362 and 922 of the Bankruptcy Code, 48 U.S.C. § 2161(a), although it is unclear the extent to which these provisions are fully incorporated into the PROMESA statute.

In evaluating a petition to lift an automatic stay under PROMESA, this Court has applied the factors enumerated by the United States Court of Appeals for the Second Circuit in *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) ("*Sonnax*"). *See, e.g., Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) (citing *Sonnax*). These factors include (1) "whether relief would result in a partial or complete resolution of the issues," (2) whether there is a "lack of any connection with or interference with the bankruptcy case," (3) "the interests of judicial economy and the expeditious and economical resolution of litigation," (4) "whether litigation in another forum would prejudice the interests of other creditors," and (5) the "impact of the stay on the parties and the balance of harms." *Sonnax*, 907 F.2d at 1286.

The stay provisions of PROMESA are inapplicable here. Movant's civil rights claims against the individual defendants are separate and completely unrelated to any claim for collection debt or credit of the nature that PROMESA was designed to address. *See, e.g. Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F.Supp.3d 508 (D.P.R. 2016) (discussing the application of the temporary stay of Title IV of PROMESA for claims brought by bonds holders). Even if an automatic stay were proper here under PROMESA, it should be lifted pursuant to the *Sonnax* standard. As discussed in detail below, since the Defendants are not debtors under terms of PROMESA, Movant's claim would not in any way prejudice the interests of PROMESA's creditors. Also, due to the extended stay, it would be harmful to Plaintiff's right to an expeditious and final resolution of his

4

constitutional claims. Finally, Movant's request for equitable relief is completely unrelated to any monetary claim and in no way affects the interest that Debtors seek to protect under PROMESA.

<u>Because Defendants In Their Personal Capacities Are Not "Debtors" Under PROMESA, Movant's Claims Against Them Lack Any Connection To Or Interference With The Bankruptcy Case.</u>

As mentioned above, Plaintiff's claim for compensatory relief is directed at Defendants in their personal capacities. Thus, Defendants are not entitled to an automatic stay of Plaintiff's claims for compensatory relief because Defendants are not "debtors" within the meaning of the PROMESA statute. Even assuming sections 362(a) and 922(a) of the Bankruptcy Code were fully incorporated into PROMESA, automatic stay only stays actions against a "debtor." *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) (internal quotation marks omitted). "[I]t is universally acknowledged that an automatic stay . . . may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." *Id.* (internal quotation marks omitted).


AMERICAN CIVIL LIBERTIES UNION
Puerto Rico

PROMESA provides for the adjustment of the Commonwealth's debts, initiated through a petition filed by the Oversight Board on behalf of a debtor, in this instance, the Commonwealth of Puerto Rico. 48 U.S.C. § 2164. Under PROMESA, a debtor means "the territory or covered territorial instrumentality concerning which a case under this subchapter has been commenced." See 48 U.S.C. § 2161(c)(2). This remedy does not exist for any federal state in the U.S.A., where only instrumentalities, agencies and cities are entitled to file and obtain the "benefits" of a bankruptcy process. Section 2162 also establishes that an entity may be a debtor under Section III if: "(1) the entity is (A) a territory that has requested the establishment of an Oversight Board or has had an Oversight Board established for it by the United States Congress . . . ; or (B) a covered territorial instrumentality of a territory described in paragraph (1)(A); (2) the Oversight Board has issued a certification under section 2146(b) . . . for such entity; and (3) the entity desires to effect a plan to adjust its debts." 48 U.S.C. § 2162. The statute's definition of debtor does not encompass natural persons, and none of the Defendants, who are sued in their personal capacities, satisfies to those terms. Nor do the debtor in the PROMESA petition (i.e., the Commonwealth) and Defendants share an identity of interest sufficient to invoke the limited exception to this "universally acknowledged" rule. *Cf. In re Siskin*, 231 B.R. 514, 518–19 (Bankr. E.D.N.Y. 1999) (noting that special circumstances may exist where "there is such identity between a debtor and a third party that judgment against a non-debtor would be binding upon a debtor" so that the automatic stay would also apply to the non-debtor).

Movant's claims seeking compensatory relief against the individual officers

5

in their personal capacities under Section 1983 of the Civil Rights Act, provides for a private cause of action for constitutional violations. *Cao v. Puerto Rico*, 525 F.3d 112 (1st Cir. 2008). It is the individual Defendants, then, and not the Commonwealth, who are liable for compensatory damages, since state officials, sued in their individual capacities, are "persons" within the meaning of § 1983. *See Hafer v. Melo*, 502 U.S. 21 (1991) (holding that (1) state officers may be personally liable for damages under § 1983 based upon actions taken in their official capacities; (2) officers' potential liability is not limited to acts under color of state law that are outside their authority or not essential to operation of state government, but also extends to acts within their authority and necessary to performance of governmental functions; and (3) Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officers under § 1983).



AMERICAN CIVIL LIBERTIES UNION
Puerto Rico

The automatic stay imposed in this case is founded on the premise that "the Commonwealth of Puerto Rico has assumed the costs of [Individual Defendants'] representation and possibly the payment of any adverse judgment," as authorized by Law 104 of June 29, 1955, as amended. P.R. Laws Ann. Title 32 Secs 3085 *et seq*. The benefits provided by Law 104 do not alter or modify the nature of Movant's Section 1983 claim against the individual defendants. Puerto Rico's Law 104 permits an official, charged in a civil rights action relating to official duties, to voluntarily request legal representation by the Commonwealth, and it permits the Commonwealth to subsequently assume payment of any judgment. P.R. Laws Ann. tit. 32, § 3085. But, under the statute, labeled by the First Circuit as "idiosyncratic" in nature, the Puerto Rico Secretary of Justice has discretion to decide in which cases the Commonwealth assumes representation and "subsequently, after considering the findings of the court or which arise from the evidence presented," whether it is "in order" to pay the judgment. *Id*. § 3087. *See Whitfield v. Municipality of Fajardo*, 564 F.3d 40, 42 (1st Cir. 2009); *Ortiz-Feliciano v. Toledo Díaz*, 175 F.3d 37 (1st Cir. 1999); *Burgos-Yantin v. Municipality of Juana Diaz, Slip Copy*, Civil No. 07– 1146 (JA), 2013 WL 435203 (D.P.R. Jan. 2, 2013). Moreover, under the Eleventh Amendment the Movant is unable to request an execution of monetary judgment against the Commonwealth, even when the Secretary of Justice has granted the judgment debtors' request to indemnify them with respect to the judgment. *See Ortiz-Feliciano supra*, at 40. *Pietri-Giraldi v. Alvarado-Santos* 443 F. Supp. 2d 214, 217 (D..P.R. 2006) (holding that pursuant to Section 3085 of Law 104, the claim for indemnification concerning payment of judgment lies with defendant public officers, not with the plaintiff).

Hence, the benefits provided by Law 104 do not constitute a substitution of parties or an admission of liability for the Commonwealth. It ultimately is an arrangement between the Defendants and Puerto Rico Department of Justice in which the Secretary retains the discretion to provide ongoing legal representation and potentially pay the judgment against individual

6

defendants pursuant to certain conditions established by law, and subject to the available resources. *See* P.R. Laws Ann. Tit. 32 sec. 3092; P.R. Laws Ann. Tit. 32 sec. 3085 ("[T]hese provisions shall not be construed, for any reason whatsoever, *as making the Commonwealth an insurer of the aforesaid public servants, nor as a waiver of the sovereign immunity of the Commonwealth."*) (emphasis added). Accordingly, contrary to Defendants' suggestion, there is no identity of interest between themselves and the Commonwealth sufficient to apply the automatic stay to this case.

Plaintiff's ability to protect his fundamental constitutional rights, and the authority of this District Court to enforce federal law through 42 U.S.C. Section 1983, should not yield to Puerto Rico's idiosyncratic Law 104.



AMERICAN CIVIL LIBERTIES UNION
Puerto Rico

In *Colon-Colon v. Negron-Fernandez*, No. 14-1300, 2018 WL 2208053 (DPR May 14, 2018) Honorable District Judge Gustavo Gelpí stressed that:

> "...[T]he Court disagrees that PROMESA contemplated the stay of suits against government officials in their personal capacity, ... As discussed above, the 'debtor' in a case between a plaintiff and a government official sued in his personal capacity is the government official. If the Commonwealth opts to represent the government official under Law 9, the Commonwealth is a 'deptor' of the government official, not the plaintiff. ... The party indebted to the plaintiff is the government official, not the Commonwealth representing the government official."

See Valenzuela-Alvarado Jose Enrico, PROMESA's Stay in Civil Rights Cases: In *Praxis* View of Violations to Puerto Ricans' Constitutional Fundamental Rights, LII No. 2 Revista Jurídica Universidad Interamericana de Puerto Rico Págs. 411; 422-423; agosto-mayo 2017-2018.

Considering the above, this case and all cases filed against governmental officials in their personal capacity for violation of fundamental and civil rights under 42 USC Sec. 1983 shall not be stayed under PROMESA. This "Stay Policy" is unconstitutional since it is creating a free civil rights' zone, where citizens are prevented from effectively bringing their civil rights' complaints to court, sending the wrong message to the law enforcement agencies in Puerto Rico where the Government is merged into one of the most complex and comprehensive police reform within the United States jurisdiction.

PROMESA provides that "nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory." 48 U.S.C. § 2106. The automatic stay authorized by the PROMESA statute does not, therefore, "apply to suits

to enforce federal rights." *See Vazquez-Carmona v. Dep't of Educ. of Puerto Rico*, No. CV 16-1846 (GAG), 2017 WL 2352153, at *1 (D.P.R. May 31, 2017). Plaintiff's complaint seeks equitable relief against Defendants for their egregious violation of constitutional rights protected by the constitutions of the United States and Puerto Rico. PROMESA should not be used as a vehicle to thwart that relief.

### A Stay Would Impose Undue Hardship And Prejudice On Plaintiff, Preventing Him From Obtaining An Expeditious Resolution Of His Constitutional Claims.



AMERICAN CIVIL LIBERTIES UNION
Puerto Rico

Finally, a stay at this stage of the judicial proceedings is unwarranted, considering that this complaint was filed since 2016, and discovery has not being completed. The stay has placed this litigation in an indefinite procedural limbo, leaving Plaintiff without any permanent equitable relief and unfairly prejudicing his ability to present his case should there be a trial. Moreover, even assuming that Plaintiff's claim for compensatory relief might eventually fall within the reach of PROMESA, it does not qualify for a stay now because it is not currently a payable claim against the Commonwealth's resources: Damages would have to be awarded to Plaintiff; the Secretary of Justice would have to agree for the Commonwealth to pay those damages on behalf of Defendants; and it would have to be determined whether that liability would be qualify as a payment of credit, obligation, or debt as defined under PROMESA. Under these circumstances, public policy favors the resolution of this civil rights action lifting the stay of the proceedings. *See In re Santa Clara County Fair Ass'n, Inc.*, 180 B.R. 564, 566-567 (9th Cir. B.A.P. 1995) (holding that the Bankruptcy Court did not abuse its discretion in modifying an automatic stay to allow prosecution of a district court civil rights action, concluding that "the public policy favored the resolution of civil rights actions and outweighed any competing policy served by the automatic stay under the circumstances").

### CONCLUSION

The Court should take care to apply PROMESA in a manner that honors the clearly established constitutional rights of individuals like Movants in this case. As the District Court of Puerto Rico recently noted:

> In Puerto Rico's unique circumstances, any over breadth in the application of the automatic stay [under PROMESA] implicates most difficult issues of statutory interpretation and possibly transgress the constitutional rights of United States citizens. Let's be clear – the Commonwealth of Puerto Rico continues to be a viable government. Its citizens continue to enjoy all their constitutional rights (and it would appear they continue to enjoy all their federal statutory rights as well)'whatever may happen to their monetary claims against the Commonwealth.

8

*Cruz Rodríguez v. Administración de Corrección.* Civil Action 17-01464 (WGY), Order Re Purported Stay, Dkt 11, June 20, 2017 (Young, D.J., sitting by designation) This statement summarizes the Movants' arguments regarding the use of PROMESA by the Government in order to avoid accountably for violations of constitutionally protected rights. The wrong interpretation of the PROMESA statute is even jeopardizing the Puerto Rico Police Department Reform by sending the wrong message to high and low rank officers regarding their duty to protect and respect the civil liberties and fundamental rights of people. The unique financial crisis in Puerto Rico that PROMESA is intended to deal with should not be used as free pass for individual government actors to violate fundamental rights, nor should constitute an additional burden for litigants in Puerto Rico to have access to a fair judicial remedy in federal court.

After considering the above stated reasons, we hope to reach an agreement to lift the stay according to the Court's Case Management (Dkt 1065-1).

Cordially,

S/FERMÍN L. ARRAIZA-NAVAS
FERMÍN L. ARRAIZA-NAVAS
USDC-PR 215705


WILLIAM RAMIREZ-HERNANDEZ, Esq.
American Civil Liberties Union of Puerto Rico
Union Plaza, Suite 1105 416 Ave. Ponce de Leon
San Juan, Puerto Rico, 00918
Tel: 787-753-8493; Fax: 787-753-4268

E-mail: farraiza@aclu.org

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
Puerto Rico