# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>  as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>  Debtor. | No. 17 BK 3566-LTS |

## OBJECTION OF AAFAF TO RENEWED MOTION OF CERTAIN SECURED CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO FOR APPOINTMENT OF A TRUSTEE UNDER 11 U.S.C. § 926

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the elected Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

        **Page**

ARGUMENT ................................................................................................................................ 1

    I.    SECTION 303 OF PROMESA PROHIBITS APPOINTMENT OF A TRUSTEE UNDER BANKRUPTCY CODE SECTION 926 TO UNDO THE PAYGO LEGISLATION ........................................................................... 2

    II.    APPOINTMENT OF A TRUSTEE TO PURSUE THESE CLAIMS IS INCONSISTENT WITH SECTION 305 OF PROMESA. ................................... 7

    III.    THE MOTION SHOULD BE DENIED BECAUSE THE BONDHOLDERS' CLAIMS ARE FUTILE ........................................................ 9

    IV.    BONDHOLDER ALLEGATIONS OF CONFLICT OF INTEREST ARE MISGUIDED AND IGNORE THE UNIQUE UNDERPINNINGS OF MUNICIPAL BANKRUPTCIES ..................................................................... 10

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## **CASES**

*Altair Global Credit Opportunities Fund (A), LLC v. Commonwealth of Puerto
Rico (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*,
17-00219-LTS, ECF No. 44 (D.P.R. 2017) .............................................................................. 1

*Barnhart v. Sigmon Coal Co., Inc.*,
534 U.S. 438 (2002) ................................................................................................................. 4

*Boudette v. Barnette*,
923 F.2d 754 (9th Cir.1991) ..................................................................................................... 4

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
390 F. Supp. 3d 311 (D.P.R. 2019) ......................................................................................... 11

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
583 B.R. 626 (D.P.R. 2017) ..................................................................................................... 3

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
No. 17-03283-LTS (D.P.R. Sept. 18, 2018) ........................................................................ 3, 11

*In re Jefferson Cty.*,
474 B.R. 228 (Bankr. N.D. Ala. 2012) ..................................................................................... 2

*In re New York City Off-Track Betting Corp.*,
434 B.R. 131 (Bankr. S.D.N.Y. 2010) ...................................................................................... 3

*In re New York City Off-Track Betting Corp.*,
Case No. 09-17121(MG), 2011 WL 309594 (Bankr. S.D.N.Y. Jan. 25, 2011) .................... 8, 9

*In re Richmond Unified School Dist.*,
133 B.R. 221 (Bankr. N.D. Cal. 1991) ................................................................................... 12

*In re Sabine Oil & Gas Corp.*,
547 B.R. 503 (Bankr. S.D.N.Y. 2016), *aff'd,* 562 B.R. 211 (S.D.N.Y. 2016) ......................... 9

*In re Sanitary & Improv. Dist. No. 7*,
96 B.R. 967 (Bankr. D. Neb. 1989) ........................................................................................ 10

*In re Torres Ortiz*,
2018 WL 529847 (Bankr. D.P.R. Oct. 23, 2018) ................................................................... 10

*Ruiz v. Bally Total Fitness Holding Corp.*,
496 F.3d 1 (1st Cir. 2007) ........................................................................................................ 4

*Silvers v. Sony Pictures Entm't, Inc.*,
402 F.3d 881 (9th Cir. 2005) .................................................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Hernandez-Ferrer*,
   599 F.3d 63 (1st Cir. 2010) .................................................................................................. 4

### **STATUTES**

11 U.S.C. § 549(a)(2)(B) .......................................................................................................... 10

48 U.S.C. § 2101 ........................................................................................................................ 1

48 U.S.C. § 2141(b)(1)(C) ......................................................................................................... 5

48 U.S.C. § 2163 ................................................................................................................... 3, 10

48 U.S.C. § 2165 ........................................................................................................................ 8

48 U.S.C. §§ 2121–2152 ............................................................................................................ 7

48 U.S.C. 2161(a) ..................................................................................................................... 10

Act 106 § 1.2 .............................................................................................................................. 6

Act 106 § 1.4 .......................................................................................................................... 6, 7

Act 106 § 2.1(b) ..................................................................................................................... 6, 7

Act 106 § 2.4(e) ......................................................................................................................... 7

Act 106 § 3.1 .............................................................................................................................. 6

Act 106 § 3.3 .............................................................................................................................. 6

Act 106, Statement of Legislative Intent .................................................................................... 5

### **OTHER AUTHORITIES**

S. Rep. No. 95–989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787 ........................................... 8

### **TREATISES**

6 Collier on Bankr. ¶ 926.02 ...................................................................................................... 9

To the Honorable United States District Court Judge Laura Taylor Swain:

AAFAF, on its own behalf and as the sole entity authorized to act on behalf of all of Puerto Rico's governmental entities by the Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act 2-2017, respectfully submits this objection to the Motion filed by the Bondholders. In support of this objection, AAFAF respectfully states and prays as follows:

## ARGUMENT

AAFAF[2] objects to the ERS Bondholders' Motion seeking appointment of a trustee under Bankruptcy Code section 926(a). Appointing a trustee to bring a complaint to avoid transfers made by ERS to the Commonwealth under the PayGo Legislation violates PROMESA section 303 as it would impermissibly interfere with the Commonwealth's exercise of its political and governmental jurisdiction over ERS. Likewise, section 305 weighs against appointing a trustee: the Court should rely on its prior decision as well as cases denying requests for the appointment of a trustee when a municipal debtor has disposed of its assets in accordance with state law (as opposed to simply paying a preferred vendor).

---

[2] As used in this motion, (i) "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority; (ii) "Act 106" means Act 106 of May 23, 2017; (iii) "Altair Adversary Proceeding" means *Altair Global Credit Opportunities Fund (A), LLC v. Commonwealth of Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 17-00219-LTS, ECF No. 44 (D.P.R. 2017); (iv) "Bankruptcy Code" means Title 11 of the United States Code; (v) "Bonds" means the senior and subordinate pension funding bonds issued by ERS under the Pension Funding Bond Resolution, dated January 24, 2008, as supplemented and amended; (vi) "Bondholders" means holders of senior and subordinate pension funding bonds issued under the *Pension Funding Bond Resolution*; (vii) "ERS" means the Employees Retirement System of the Government of the Commonwealth of Puerto Rico; (viii) "Government" means the elected government of the Commonwealth of Puerto Rico; (ix) "Joint Resolution 188" or "J.R. 188" means Joint Resolution for Other Allocations for Fiscal Year 2017-2018 (June 25, 2017); (x) "JRS" means the Puerto Rico Judiciary Retirement System; (xi) "Legislature" means the Legislative Assembly of Puerto Rico; (xii) "Motion" means the *Renewed Motion Of Certain Secured Creditors Of The Employees Retirement System Of The Government Of The Commonwealth Of Puerto Rico For Appointment As Trustees Under 11 U.S.C. § 926*, 17-BK-03283, ECF No. 9260; (xiii) "Oversight Board" or "Board" means the Financial Oversight and Management Board for Puerto Rico; (xiv) "PayGo Legislation" means Joint Resolution 188 and Act 106; (xv) "PROMESA" means the Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. 114–187, codified at 48 U.S.C. § 2101 *et seq.* (June 30, 2016); and (xvi) "TRS" means the Puerto Rico Teacher's Retirement System. Unless otherwise specified, all emphasis is added and all internal quotation marks and citations are omitted.

Similarly, appointment of a trustee to pursue claims under Bankruptcy Code section 549 should be denied because that claim would be futile: Title III of PROMESA authorized PayGo, and section 549 only permits pursuit of unauthorized transactions.

Finally, the Bondholders' arguments that alleged conflicts of interest mandate appointment of a trustee are wrong: Puerto Rico's governmental entities work in concert here, not in conflict. This is not a typical chapter 11 case, but rather a municipal restructuring where all parts of Puerto Rico's government (including the Oversight Board) have an overarching responsibility to the people of Puerto Rico and to protect pensions. For these reasons, the Court should deny the Motion in its entirety.

## I. SECTION 303 OF PROMESA PROHIBITS APPOINTMENT OF A TRUSTEE UNDER BANKRUPTCY CODE SECTION 926 TO UNDO THE PAYGO LEGISLATION.

1. The Motion seeks to appoint a trustee under Bankruptcy Code section 926(a) to pursue avoidance claims on behalf of ERS against the Commonwealth based on its enactment of the PayGo Legislation and to effectively undo those laws. The Motion must be denied because it aims to impermissibly limit or impair the Commonwealth's exercise of its governmental jurisdiction and power over ERS and PROMESA section 303 strictly prohibits such efforts.

2. PROMESA section 303 is a bedrock protection of the Commonwealth's authority to exercise its political and governmental powers over its instrumentalities notwithstanding that the Commonwealth and ERS filed Title III petitions. *See, e.g.*, *In re Jefferson Cty.*, 474 B.R. 228, 276 (Bankr. N.D. Ala. 2012) (*Jefferson Cty. I*) ("What is at the heart of § 903 is state control over a municipality's 'political or governmental powers.'"); *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 144 (Bankr. S.D.N.Y. 2010) ("Section 903 of the Bankruptcy Code is the 'constitutional mooring' for municipal debt readjustment and makes clear that nothing in chapter 9 should be interpreted to limit a State's power to control its municipalities.") By providing in

2

section 303 that "this title [*i.e.*, title III of PROMESA] does not limit or impair" the Commonwealth's "political and governmental powers" to "control, by legislation or otherwise, the territory or any territorial instrumentality thereof," Congress recognized that provisions of the Bankruptcy Code that it incorporated into PROMESA cannot be invoked to impair governmental powers. 48 U.S.C. § 2163. Simply put, while provisions like Bankruptcy Code sections 926 may have general application in a Title III case, they cannot be specifically invoked to prevent the Government from exercising protected powers. This protection is essential to the entire structure of PROMESA. As this Court noted:

> This legal structure is consistent with the nature of the cases and the sovereign character of the Title III Debtors. The Title III Debtors are governmental entities. The commencement of a Title III case does not strip a governmental entity of the power to exercise substantial independence in its decision-making.

Memorandum Order Denying Motion of Official Committee of Unsecured Creditors for Entry of An Order Enforcing the Automatic Stay, *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17-03283-LTS, Dkt. No. 3941 at 5–6 (D.P.R. Sept. 18, 2018) ("GDB Or.").

      3.     Section 303's protections are subject only to the limitations in Titles I and II of PROMESA and the relationship between the Commonwealth's government and the FOMB—no provisions of Title III are excepted. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 583 B.R. 626, 635 (D.P.R. 2017) ("PROMESA section 303 reserves the territory's political and governmental powers to the territory or 'any territorial instrumentality thereof,' subject only to Titles I and II."). Because specific exceptions to section 303 exist, no others can be judicially created. *United States v. Hernandez-Ferrer*, 599 F.3d 63, 67 (1st Cir. 2010) ("The maxim '*expressio unis est exclusion alterius*'—which translates roughly as 'the expression of one thing is the exclusion of other things'—is a venerable canon of statutory construction . . . ."). *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("The doctrine of *expression unius*

3

*est exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'") (*citing Boudette v. Barnette,* 923 F.2d 754, 756–57 (9th Cir.1991).

4. As a consequence, the plain language of section 303 establishes that Bankruptcy Code sections 926(a), 544 and 549, which are not part of Titles I and II but apply via Title III of PROMESA, cannot be invoked to impair or limit the Commonwealth's exercise of its governmental power. *See, e.g., Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) ("As in all statutory construction cases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent."); *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 8 (1st Cir. 2007) ("Statutory interpretation begins with the language of the statute. Where, as here, that language is clear and unambiguous, the inquiry is at an end."). Thus, the Motion cannot be granted if it would interfere with the Commonwealth's exercise of its governmental powers.

5. The Motion does precisely that: its express aim is to undo ERS's transfers to the Commonwealth and other activities mandated by the PayGo Legislation. Section 303 prohibits this. The PayGo Legislation was enacted to address a dire underfunding crisis threatening Puerto Rico's public employee retirement systems. Through the PayGo Legislation, the Commonwealth exercised governmental jurisdiction over ERS to solve this problem. This is the quintessential governmental and political power protected by PROMESA and cannot be interfered with by any provision of Title III.

6. Despite prior efforts to stabilize Puerto Rico's pension system, when the PayGo Legislation was enacted in 2017, ERS teetered on the brink of collapse. *See id.* at 7, 9–10. At that

4

time, the retirement systems were actuarially insolvent. *See id.* ERS, TRS, and JRS had combined liabilities of at least $50 billion and a combined funded ratio below 8 percent. *See* Board Resolution Adopted on March 13, 2017 at 3 ("March 13 Fiscal Plan Resolution") (Exhibit A). Without emergency intervention, ERS's assets would have been virtually depleted before 2022. *See id.* ERS's insolvency presented a crisis at odds with Congress's mandate that public pension systems be adequately funded. *See* 48 U.S.C. § 2141(b)(1)(C).

7. The Commonwealth Fiscal Plan certified by the Oversight Board indicated that pension reform legislation was a critical priority, explaining, "[s]tructural changes are required to ensure the long-term stability and restore public confidence in the pension system." March 13 Fiscal Plan Resolution at 4. To that end, the Oversight Board established principles to guide pension reform, including that the Government "[f]und existing pension obligations on a paygo basis, liquidating assets to help fun benefits and using general fund revenues to pay benefits owed under previous plans." *Id.* at 4.

8. In response, the PayGo Legislation was enacted to "safeguard the wellbeing of [Puerto Rico's] pensioners and public servants" in the face of an "unprecedented financial and social crisis" that threatened ERS's ability to continue paying benefits. Act 106, Statement of Legislative Intent at 1–5; *see also* J.R. 188, § 4. The intent of both Joint Resolution 188 and Act 106 is explicit in that these pieces of legislation were approved in the exercise of the power of the State to protect the lives, health, and wellbeing of the people of Puerto Rico during a fiscal emergency. *See* Act 106, § 1.2 ("This Act is enacted in the exercise of the reasoning power of the State, and by the constitutional authority vested in the Legislative Assembly in Article II, Sections 18 and 19 of the Constitution of Puerto Rico, and in cases of serious emergencies when the health, public safety or essential government services are clearly in jeopardy."); J.R. 188, § 4 ("The

5

provisions of this Section are approved through the exercise of power accorded to the State and for the protection of the lives, health, and wellbeing of the People of Puerto Rico during the fiscal emergency at hand.").

9. To ensure that the Government could continue to meet its obligations to employees and retirees, the PayGo Legislation converted the retirement systems to a pay-as-you-go system where benefits are paid by the Commonwealth (not ERS) as they come due. *See* Act 106, § 1.4; J.R. 188, § 4. Further, to avoid future underfunding issues, the PayGo Legislation converted all ERS participants to defined contribution plans where each employees' contributions will be maintained in an individual segregated account and invested. *See* Act 106, §§ 3.1, 3.3.

10. As part of these reforms, the Commonwealth assumed the obligation to pay retirement benefits for all government employees, including public corporation and municipality employees, and mandated that ERS pay over certain of its assets to facilitate these payments. *See* Act 106, § 2.1(b) ("[T]he disbursement of the benefits of all Pensioners and beneficiaries are guaranteed by the General Fund through the 'pay as you go' scheme . . . ."). In Fiscal Year 2019 alone, the Commonwealth incurred the obligation to make a projected $2 billion in benefit payments under the new PayGo system. *See id.*, Statement of Legislative Intent at 11. The PayGo Legislation required ERS to liquidate its assets and transfer the proceeds to the Commonwealth's general fund to offset a portion of the liabilities assumed by the Commonwealth. *See* Act 106, § 1.4; J.R. 188 § 2. The PayGo Legislation also terminated employers' obligations to contribute to ERS, while at the same time imposing a new PayGo fee on employers payable to the Commonwealth to offset the costs of retirement benefits. *See* Act 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.

6

11. The PayGo Legislation was an exercise of the Commonwealth's governmental and political powers regarding ERS (among other things) to address a critical issue threatening the wellbeing of Puerto Rico's public servants and retirees. ERS's transfers to the Commonwealth were mandated by the PayGo Legislation, which falls within the ambit of section 303.[3] Thus, the Bondholders' motion must be denied.

## II. APPOINTMENT OF A TRUSTEE UNDER BANKRUPTCY CODE SECTION 926 TO PURSUE THESE CLAIMS IS INCONSISTENT WITH SECTION 305 OF PROMESA.

12. The Court should also deny the Motion because appointing a trustee to bring avoidance claims under the PayGo Legislation would improperly interfere with ERS's right to control its property.

13. Although the court has "discretion to determine whether the appointment of a trustee is appropriate," that discretion is subject to the dictates of section 904 of the Bankruptcy Code, *In re New York City Off-Track Betting Corp.*, Case No. 09-17121(MG), 2011 WL 309594, at *4 (Bankr. S.D.N.Y. Jan. 25, 2011), which is the analog to PROMESA section 305. That section limits the court's power to enter any order interfering with "any of the political or governmental powers of the debtor" or any of the debtor's property. 48 U.S.C. § 2165. Section 305's protections are only subject to "the limitations set forth in titles I and II" and the Oversight Board's consent. *Id.; see also* GDB Or. at 6 ("It is evident that Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets given, for example, the inclusion of Section 303, 304(i) and 305 of PROMESA.").

---

[3] The Bondholders' Motion does not fall under the limited exceptions to section 303. No provision of PROMESA Title I nor II contain any provision that would allow the relief requested. *See* 48 U.S.C. §§ 2121–2152 (establishing the Oversight Board and setting forth its responsibilities). Likewise, none of the specific exceptions in section 303(1)–(3) provide the Bondholders with a mechanism to appoint a trustee for purposes of bringing avoidance actions.

7

14. As applied to trustee motions, this Court has previously noted that courts should typically "be loath to appoint a trustee given that the court's limited powers in a [Title III] case are best understood as operating within the context" of a statutory scheme that respects governmental autonomy and including control over its property. April Omnibus Hrg. Tr. 161:25–162:6, Apr. 24, 2019 (citing *Off-Track Betting*, 2011 WL 309594, at \*4). The Court also noted that appointment of a trustee to purportedly maximize creditor recoveries (which is the entire thrust of the Motion) is at odds with these cases, which "require a more holistic approach that focuses on the continuation and future of a government and the political entity." *Id.* at 163:3–11. It is difficult to posit a something less consistent than with that kind of holistic approach than the relief the Bondholders seek.

15. Moreover, in *Off-Track Betting*, which this Court approvingly cited, the court explained that appointing a trustee may be appropriate where a debtor makes a payment to a creditor "in the days preceding the petition to the detriment of all other creditors" out of a "desire for future good relations" with the preferred creditor. *Id.* at \*5 (quoting S. Rep. No. 95–989, at 68 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5795)). But the court denied a motion to appoint a trustee to pursue claims to avoid transfers made in accordance with state law, explaining that when a debtor makes a "transfer in the exercise of its political or governmental functions, or in control of its political or governmental functions, or in control of its income or property, the appointment of a trustee to undo that transfer may constitute an interference with those powers or with that property, contrary to the mandatory dictates of [Bankrutpcy Code] section 904." *Id.* (quoting 6 Collier on Bankr. ¶ 926.02).

16. As in *Off-Track Betting*, ERS's transfers to the Commonwealth were mandated by state law, not payments made in the days preceding ERS's Title III case that were made to favor

8

an unpaid vendor. Yet, the Bondholders seek to appoint a trustee for the express purpose of stopping ERS from complying with actions mandated by the Legislature (and endorsed by the Oversight Board) to address a public policy crisis. The Court should be "loath to appoint a trustee" for this purpose and therefore deny the Motion. *Off-Track Betting*, 2011 WL 309594, at *4.

### III. THE BONDHOLDERS ARE NOT ENTITLED TO APPOINTMENT OF A TRUSTEE TO PURSUE FRAUDULENT TRANSFER CLAIMS BECAUSE SUCH CLAIMS ARE FUTILE.

17. To justify appointment of a trustee, the Bondholders have the burden to demonstrate that the avoidance claim the trustee would pursue is viable. *See, e.g.*, 6 Collier on Bankr. ¶ 926.02 ("In order for a judge to make the decision required by section 926, the requesting creditor will be required to present a substantial showing, both factual and legal, of the likelihood of the existence of a voidable transfer."); *see also In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 519 (Bankr. S.D.N.Y. 2016), *aff'd,* 562 B.R. 211 (S.D.N.Y. 2016) (a party seeking derivative standing must "present[] colorable claims for relief 'that on appropriate proof would support recovery'"). The Bondholders cannot make this showing for any relief they seek.

18. An avoidance action would be futile because in Title III, a Trustee may only invalidate a post-petition transfer "that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(2)(B)[4]; *see also In re Torres Ortiz*, 2018 WL 529847, *3 (Bankr. D.P.R. Oct. 23, 2018) (vacating order avoiding unregistered lien on reconsideration because post-petition lien registration was authorized by the court pursuant to an order lifting the automatic stay).

19. Here, Title III makes clear that that the relevant transfer was authorized under PROMESA. As explained above, the non-interference provisions in Section 305 deprives this

---

[4] Section 549(a)(2)(A) allows a trustee to avoid a transfer that is authorized only under section 303(f) or 542(c) of the Bankruptcy Code. Neither of these provisions were incorporated into Title III of PROMESA. 48 U.S.C. 2161(a).

9

Court of jurisdiction to enter an order avoiding the transfers over the objection of the Oversight Board. *See In re Sanitary & Improv. Dist. No. 7*, 96 B.R. 967, 972 (Bankr. D. Neb. 1989) (denying section 549(a) claim in chapter 9, explaining "[s]ince this Court has no right to interfere with the governmental or political operations of the debtor or to interfere with debtor's use of its property, except in the confirmation process, any use of debtor's property by debtor is 'authorized under this title.' The debtor is free to use its property and the bankruptcy court cannot approve or disapprove of such use.").

20. The futility of any Trustee appointment is even more apparent in light of PROMESA Section 303. Section 303 not only protects the Commonwealth's "exercise of [] political and governmental powers" but also "expenditures for such exercise." 48 U.S.C. § 2163.

21. The PayGo transfers are precisely the kinds of transfers that PROMESA divests the Title III Court of jurisdiction to second-guess. Accordingly, the demand for a trustee should be denied as futile.

## IV. BONDHOLDER ALLEGATIONS OF CONFLICT OF INTEREST ARE MISGUIDED AND FAIL TO UNDERSTAND THE UNIQUE UNDERPINNINGS OF MUNICIPAL BANKRUPTCIES

22. The Bondholders spend pages and pages complaining of purportedly impermissible "conflicts of interest" they claim support an appointment of a trustee. No such conflicts exist, as this Court has already recognized in the context of discovery related to Joint Resolution 188, Act 106, and the creation of the Pay-Go system. There, the Bondholders argued there was a conflict of interest between ERS and the Commonwealth given that "ERS is adverse to the Commonwealth as a matter of law . . . [because] § 709 of the Bond Resolution compels ERS to take *the Bondholders'* side in any debate touching on the Bondholders' interests." ERS Bondholders' Motion to Compel Production of Privileged Documents, Case No. 17-03566-LTS, ECF No. 446, ¶ 37 (emphasis in original). In denying the Bondholders' motion, Magistrate Judge Dein held that

10

ERS, the Commonwealth, and AAFAF "share a common interest in effective pension reform for the benefit of pensioners and are afforded the deliberative process privilege when acting in a concerted effort toward that goal." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17-BK-3283 (LTS), 2019 WL 3566997, at *1 (D.P.R. May 6, 2019). The Bondholders appear to have forgotten that this Court overruled their objections to Judge Dein's order finding "no clear error in Judge Dein's determination that the Commonwealth and ERS had a mutual interest in benefiting employees by assuring the flow of pension payments to retirees" and holding that "the Government Parties all have identical interests in both maintaining retirees' benefits and 'restoring Puerto Rico to fiscal responsibility and prosperity.'" *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 390 F. Supp. 3d 311, 322-323 (D.P.R. 2019). This ruling eviscerates the Bondholders' contention that a conflict exists between ERS and the Commonwealth and thus warrants appointment of a trustee under section 926 of the Bankruptcy Code.

23. Moreover, the allegation that a disabling conflict exists between the Commonwealth and ERS fundamentally misapprehends the nature of municipal bankruptcies as explained in *In re Richmond Unified School Dist.*, 133 B.R. 221, 226 (Bankr. N.D. Cal. 1991). In *Richmond Unified*, the debtor, operating under a state appointed administrator's control, filed a motion to dismiss its chapter 9 case. *Id.* at 224. Certain parties opposed dismissal, in part, on the grounds that the state should not be permitted, through its appointed administrator, to dismiss the case because it had an "impermissible conflict of interest" as a creditor and the effective operator of the debtor. The court granted the debtor's motion, explaining that chapter 9 "was drafted to assure that application of the federal bankruptcy power would not infringe upon the sovereignty, power and rights of the states," regardless of whether the state is "alleged to have a conflict of interest." *Id.* at 224, 226. The court further noted that the question was not whether a conflict of

11

interest existed, but whether there was an *"impermissible conflict of interest."* Id. at 226. It concluded there was not because governmental entities have broader public policy goals that take the highest precedence in municipal bankruptcies.

24. Here, of course, no impermissible conflicts of interest exist. Congress established a single Oversight Board for all Puerto Rico territorial governmental entities; it did not require a separate oversight board for different entities or Title III debtors. Indeed, given that the Oversight Board's purpose is to act on behalf of, and to balance the needs of, all of Puerto Rico's people, having different boards or requiring different fiduciaries for distinct entities would be self-defeating. The same holds true for AAFAF, which is appointed under Puerto Rico law to act on behalf of all Puerto Rico governmental entities. Nothing under Puerto Rico law makes it a conflict for AAFAF to actively represent multiple governmental entities for the benefit of all of the people of Puerto Rico. Accordingly, the premise of the Motion—that an impermissible conflicts exists that requires appointment of a trustee—is fundamentally wrong.

## CONCLUSION

The Motion to appoint a trustee under section 926 of the Bankruptcy Code should be denied because, on the facts as alleged here, appointment of a trustee would violate section 303 of PROMESA as an impermissible interference with the Commonwealth's political and governmental control over its instrumentalities. Even if section 303 of PROMESA does not categorically bar appointment of trustee, the Court should exercise its discretion and decline to appoint one because the transfers the Bondholders seek to recover were made in accordance with, and pursuant to, a valid state law.

Dated: November 26, 2019
San Juan, Puerto Rico

Respectfully submitted,

| /s/ *Peter Friedman* | /s/ *Luis C. Marini-Biaggi* |
|---|---|
| John J. Rapisardi<br>Suzzanne Uhland<br>(Admitted *Pro Hac Vice*)<br>**O'MELVENY & MYERS LLP**<br>7 Times Square<br>New York, New York 10036<br>Tel: (212) 326-2000<br>Fax: (212) 326-2061<br><br>-and-<br><br>Peter Friedman<br>(Admitted *Pro Hac Vice*)<br>1625 Eye Street, NW<br>Washington, D.C. 20006<br>Tel: (202) 383-5300<br>Fax: (202) 383-5414<br><br>*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* | Luis C. Marini-Biaggi<br>USDC No. 222301<br>Email: lmarini@mpmlawpr.com<br><br>Carolina Velaz-Rivero<br>USDC No. 300913<br>E:mail: cvelaz@mpmlawpr.com<br><br>**MARINI PIETRANTONI MUÑIZ LLC**<br>250 Ponce de León Ave.<br>Suite 900<br>San Juan, Puerto Rico, 00918<br>Tel: (787) 705-2171<br>Fax: (787) 936-7494<br><br>*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |