# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | Case No. 17-BK-3566-LTS |

## OBJECTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO RENEWED MOTION OF CERTAIN SECURED CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO FOR APPOINTMENT AS TRUSTEES UNDER 11 U.S.C. § 926

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (*iii*) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (*iv*) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (*v*) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................... 1

RELEVANT BACKGROUND ..................................................................................... 2

    I.    ERS's Fiscal Issues ............................................................................... 2

    II.   ERS Bonds ............................................................................................. 4

    III.  ERS's Title III Case .............................................................................. 4

    IV.  Enactment of PayGo Measures ............................................................. 5

    V.   Bondholder Litigation ........................................................................... 6

        A.   The Lien Challenge Action and Avoidance Opinion ................................... 6

        B.   The Altair Action .............................................................................. 6

        C.   Movants' Motions to Lift the Automatic Stay ........................................ 8

        D.   Tolling Stipulation ........................................................................... 9

    I.    MOVANTS HAVE NOT SATISFIED THEIR BURDEN TO JUSTIFY APPOINTMENT OF A TRUSTEE UNDER SECTION 926 ........................................................................ 11

        A.   Movants' Attempt to Interfere with Puerto Rico's Duly Enacted Legislation is Contrary to PROMESA §§ 303 and 305 ............................................................... 12

        B.   Movants Have Already Sought the Relief They Would Seek as Trustee .................. 13

        C.   The Oversight Board is Not Conflicted ................................................ 15

        D.   The Claims Movants Propose To Assert as Trustee Have No Merit ...................... 18

CONCLUSION ........................................................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Altair Glob. Credit Opportunities Fund (A), LLC v. P.R. AAA Portfolio Bond Fund, Inc. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
914 F.3d 694 (1st Cir. 2019) ................................................................. 6

*Ana Maria Sugar Co. v. Castro*,
28 D.P.R. 241 (1920) ........................................................................ 18

*Hollstein v. Sanitary & Improv. Dist. No. 7 (In re Sanitary & Improv. Dist. No. 7)*,
96 B.R. 967 (Bankr. D. Neb. 1989) ................................................... 13, 19

*In re N.Y. City Off-Track Betting Corp.*,
No. 09-17121 (MG), 2011 Bankr. LEXIS 319 (Bankr. S.D.N.Y. Jan. 25, 2011) ................................................................................................. 10

*In re Richmond Unified Sch. Dist.*,
133 B.R. 221 (Bankr. N.D. Cal. 1991) ................................................. 15

*In re Yasin*,
179 B.R. 43 (Bankr. S.D.N.Y. 1995) ................................................... 20

*Morley v. Ontos, Inc. (In re Ontos, Inc.)*,
478 F.3d 427 (1st Cir. 2007) .............................................................. 20

*Parkview Adventist Med. Ctr. v. United States*,
842 F.3d 757 (1st Cir. 2016) ........................................................ 15, 19

*Pinpoint IT Servs., LLC v. Atlas IT Exp., LLC (In re Atlas IT Exp., LLC)*,
491 B.R. 192 (1st Cir. B.A.P. 2013) ................................................... 15

*Superior Point Mfg. Co. v. Lopez-Soto (In re Lopez-Soto)*,
764. F2d 23, 27 (1st Cir. 1985) ............................................................ 7

*Westernbank Puerto Rico v. Kachkar*,
No. 07-1606, 2009 WL 6337949 (D.P.R. Dec. 10, 2009) ....................... 8

## STATUTES

3 L.P.R.A § 761 ................................................................................... 2

3 L.P.R.A. §§ 761-788 ................................................................. passim

3 L.P.R.A. § 775 ................................................................................... 2

3 L.P.R.A. § 787(f) ..................................................................................................3

3 L.P.R.A. § 787(g) .................................................................................................3

11 U.S.C. § 362(a)(3) ............................................................................................18

11 U.S.C. § 362(b)(4) ......................................................................................14, 18

11 U.S.C. § 363 .....................................................................................................18

11 U.S.C. § 541 .....................................................................................................19

11 U.S.C. § 544 ..........................................................................................6, 11, 17

11 U.S.C. § 549 .....................................................................................................11

11 U.S.C. § 549(a) ....................................................................................12, 17, 18

11 U.S.C. § 552 ................................................................................................8, 13

11 U.S.C. § 926 ............................................................................................. passim

PROMESA § 101(a) ...............................................................................................14

PROMESA § 201(b)(1)(C) ..................................................................................5, 15

PROMESA § 301(c)(5) ...........................................................................................19

PROMESA § 301(c)(7) .............................................................................................4

PROMESA § 301(d) ...............................................................................................17

PROMESA § 303 ............................................................................................ passim

PROMESA § 305 ............................................................................................ passim

PROMESA § 315(b) ...............................................................................1, 4, 10, 14

PROMESA § 362(a)(4) ...........................................................................................20

PROMESA § 405(m)(4) ...........................................................................................14

UCC § 9-332(b) .....................................................................................................13

Act 106-2017 § 2.1(b) ..............................................................................................5

## OTHER AUTHORITIES

6 COLLIER ON BANKRUPTCY ¶ 926.02[1] ..................................................................10

Case:17-03283-LTS   Doc#:9345   Filed:11/26/19   Entered:11/26/19 15:53:57   Desc: Main
Document     Page 5 of 27

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS" or the "Debtor"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection ("Objection") to the *Renewed Motion of Certain Secured Creditors of the Employees Retirement System for the Government of the Commonwealth of Puerto Rico for Appointment as Trustees under 11 U.S.C. § 926* [Case No. 17-BK-3566-LTS, ECF No. 704] (the "Motion"), filed by Movants, (defined in the Motion), seeking the appointment of a trustee for ERS pursuant to section 926 of title 11 of the United States Code (the "Bankruptcy Code") to pursue avoidance actions against the Commonwealth of Puerto Rico (the "Commonwealth").  In support of its Objection, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Movants' attempt to usurp the Oversight Board's Congressionally-appointed role as the representative of each of the Title III Debtors, in order to pursue claims that have already been decided or are being addressed in multiple other proceedings, is substantively and procedurally wrong-headed, a waste of the Court's resources and should be denied for the following reasons: (1) the avoidance actions, through which Movants seek to repeal the PayGo Measures (as defined below), directly interfere with the Commonwealth's governmental powers in enacting the legislation, and is therefore barred at the gate by PROMESA §§ 303 and 305; (2) Movants already have sought relief on the same legal theories in other pending proceedings, rendering this effort duplicative and unnecessary; (3) the claimed conflict of interest Movants assert is contrary to the authority vested in the Oversight Board by Congress to be the representative of each Title III Debtor at the same time;

---

[2]  PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

and (4) the avoidance claims Movants espouse are in all events meritless.  Accordingly, Movants'

Motion to appoint a trustee should be denied.

## RELEVANT BACKGROUND

**I.      ERS's Fiscal Issues**

2.      ERS is a trust established by the Commonwealth in 1951 for the economic well-being

of public employees. *See* Act No. 447-1951 (codified, as amended, at 3 L.P.R.A. §§ 761-788) (the

"ERS Enabling Act").  ERS is separate and apart from the Commonwealth government and its other

instrumentalities. *See* 3 L.P.R.A § 775.  ERS was established to hold in trust funds for payment of

pension and other benefits to officers and employees of the Commonwealth government, members

and employees of the Legislature of the Commonwealth, and officers and employees of public

corporations and municipalities. *See* 3 L.P.R.A § 761.

3.      There are over 260,000 current active employees and retirees who—prior to the

enactment of the PayGo Measures—relied on the assets of ERS to provide retirement and other

benefits.  As of July 1, 2016, ERS had approximately 118,000 active employees on whose behalf

contributions were made, and provided retirement benefits to approximately 122,000 retirees and

spouses of deceased retirees.

4.      Even prepetition, ERS was drastically underfunded and, barring the enactment of the

PayGo Measures, would have soon run out of money and other assets to pay pensioners.  For several

fiscal years, actual contributions to ERS had been less than ERS's basic benefit obligations and

administrative expenses. *See* Case No. 17-AP-219-LTS, ECF No. 1, Ex. A.  The deterioration in the

value of ERS's invested assets relating to the 2008 financial crisis also contributed to its fiscal crisis.[3]

As of June 30, 2016, the ERS gross assets remaining were approximately $2.4 billion on an estimated

---

[3] *See* Commonwealth of Puerto Rico Financial Information and Operating Data Report at 145-46
(Oct. 30, 2014), available at www.gdb.pr.gov/documents/CommonwealthReport-October302014.pdf

$36.4 billion actuarial liability.  *See* Ernst & Young Puerto Rico, *PROMESA Section 211 Report on the Puerto Rico Retirement Systems* (Sept. 2019) at iv.

5.      ERS was funded in large part  by contributions from employers, the amount of which were determined by statute, according to a formula in the ERS Enabling Act, based upon each employer's then current payroll.  *See* 3 L.P.R.A. § 787(f).  Employers covered by ERS included the Commonwealth, its instrumentalities, and municipalities, excluding, among others, teachers and judges.  Historically, the Commonwealth's contributions amounted to 59% of the employer contributions ERS received, with municipalities and public corporations contributing the remaining 41%.[4]

6.      For fiscal year 2017, employers were required to make periodic contributions to ERS on behalf of participating employees of 15.525% of the compensation regularly received by eligible employees.  *See* 3 L.P.R.A. §§ 787f, 787g.  This rate was set in 2013.  However, the rate of employer contributions was subject to change. ERS does not negotiate the contribution rates.  Rather, the rates are established by the Legislature of the Commonwealth.

7.      Prospective bondholders, including Movants or their predecessors in interest, were on notice that potential employer contributions to ERS were subject to change and there was no assurance that the employers would be obliged to make the contributions year by year to ERS.  For example, the offering statements for the ERS Bonds (the "Offering Statement") expressly provides that "***[t]he Legislature of the Commonwealth could reduce the Employer Contribution rate or make other changes in existing law that adversely affect the amount of Employer Contributions.***" *Id.* at 26 (emphasis in original).  The Offering Statement further provides that there is no covenant by the

---

[4] *See* Commonwealth of Puerto Rico Financial Information and Operating Data Report at 228 (Dec. 18, 2016), available at http://www.gdb.pr.gov/investors_resources/commonwealth-cfiodr.html.

Legislature of the Commonwealth "not to amend the [Enabling Act] in a way adverse to Bondholders." *Id.*

## II.   ERS Bonds

8.      Pursuant to the Pension Funding Bond Resolution, dated January 24, 2008 (the "Bond Resolution"), ERS purportedly issued senior and subordinate pension funding bonds (the "ERS Bonds," and holders of such bonds, "ERS Bondholders") in the aggregate original principal amount of approximately $2.9 billion.

9.      The Bond Resolution contemplates that ERS Bonds would be secured by a security interest in the "Pledged Property," *see* Bond Resolution § 501.1 (defined as, among other things, "Revenues" and "all rights to receive the same.") *Id.* at B-11.  "Revenues" are defined to include "all Employers' Contributions received by [ERS]."   *Id.* at B-14.   In turn, the term "Employers' Contributions" is defined to mean "the contributions paid from and after the date hereof that are made by the Employers and any assets in lieu thereof or derived thereunder which are payable to the System pursuant to Sections 2-116, 3-105 and 4-113 of the [ERS Enabling Act]." *Id.* at B-6.  The definition of Employers' Contributions in the Bond Resolution therefore only applies to contributions made under those specified provisions of the ERS Enabling Act.

## III.   ERS's Title III Case

10.     On May 3, 2017, the Oversight Board filed a petition for the Commonwealth, commencing the Commonwealth's Title III case.  On May 21, 2017, the Oversight Board filed a petition for ERS commencing ERS's Title III case under PROMESA Title III.   Pursuant to PROMESA, Congress made the Oversight Board the representative of each debtor, PROMESA § 315(b), and gave the Oversight Board many of the powers of a trustee.  PROMESA § 301(c)(7).

4

## IV.    Enactment of PayGo Measures

11.    Given ERS's financial straits, in the original Commonwealth fiscal plan, certified March 13, 2017 ("March 2017 Fiscal Plan"), the Oversight Board supported changing the Commonwealth's pension systems to a "pay-as-you-go" model, to ensure "adequate funding for public pension systems."  *See* PROMESA § 201(b)(1)(C); March 2017 Fiscal Plan at 21.

12.    On June 25, 2017, in line with the March 2017 Fiscal Plan, the Legislative Assembly of Puerto Rico passed Joint Resolution 188 ("J.R. 188") seeking to change the Commonwealth's retirement system to a "pay-as-you-go" system "as a new method to guarantee pensions to Government retirees."  *See* J.R. 188 Preamble.  J.R. 188 contemplated the sale of ERS's assets and the transfer of the net proceeds to the Commonwealth, *id.* § 2, and required the Commonwealth to assume the obligation to pay retirees.  *Id.* § 4(1).  J.R. 188 also provided for the "elimination" of employer contributions to ERS.  *Id.* § 4(3).  Pursuant to J.R. 188, ERS transferred approximately $190 million in cash to the Commonwealth.  No other ERS assets have been transferred to the Commonwealth.

13.    On August 23, 2017, the Governor signed Act 106-2017 ("Act 106," and together with J.R. 188, the "PayGo Measures") into law, further establishing the 'pay-as-you-go' system (the "PayGo System"), requiring employers to contribute to the PayGo System.  Employers' reimbursement obligations under the PayGo System are calculated differently than were employer contributions to be paid to ERS under the ERS Enabling Act.  Specifically, pursuant to Act 106, employers are required to pay a "Pay-Go fee," which "shall be equal to the amount paid to Retirees and Beneficiaries of each covered entity" by the Commonwealth.  Act 106 § 2.1(b).  Notably, Act 106 provides that employer contributions to ERS are "eliminated."  *Id.* § 1.4.

5

V.     **Bondholder Litigation**

    A.     **The Lien Challenge Action and Avoidance Opinion**

    14.     On July 21, 2017, ERS filed an adversary complaint against certain ERS Bondholders challenging the scope, perfection, and enforceability of the ERS Bondholders' security interests.  *See* Case No. 17-AP-213-LTS, ECF No. 1 (the "Lien Challenge Action").  On August 17, 2018, the Court granted summary judgment to ERS, holding that the ERS Bondholders' security interests were unperfected and unenforceable pursuant to Bankruptcy Code section 544.  *See id.*, ECF No. 215 ("District Court Avoidance Opinion").  Summary judgment was entered in ERS's favor on September 5, 2018.  *See id.*, ECF No. 220 ("District Court Avoidance Judgment").

    15.     The ERS Bondholders appealed the District Court Avoidance Judgment to the United States Court of Appeals for the First Circuit ("First Circuit").  *See id.*, ECF No. 221.  On January 30, 2019, the First Circuit entered an opinion affirming in part and reversing in part the District Court Avoidance Opinion and holding that ERS Bondholders' security interests were perfected as of December 17, 2015.  *See Altair Glob. Credit Opportunities Fund (A), LLC v. P.R. AAA Portfolio Bond Fund, Inc. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 914 F.3d 694 (1st Cir. 2019).  Undecided by the First Circuit appeal, however, was the scope of the ERS Bondholders' security interests.

    16.     The Oversight Board subsequently commenced adversary proceedings to determine the scope of the ERS Bondholders' security interests.  *See* 19-AP-366-LTS, 19-AP-367-LTS (the "Lien-Scope Actions").  The parties agreed to and the Court approved a scheduling order whereby competing summary judgment motions will be fully briefed and submitted by May 20, 2020.  Case No. 17-BK-3566-LTS, ECF No. 687.

    B.     **The Altair Action**

    17.     On July 27, 2017, certain ERS Bondholders, including Movants, filed a complaint with the Court, initiating an adversary proceeding against ERS.  *See* Case No. 17-AP-219-LTS, ECF No.

6

1 (the "<u>Altair Action</u>").  Following the enactment of Act 106, plaintiffs in the Altair Action filed an amended complaint.  *See id.*, ECF No. 39 ("<u>Amended Altair Complaint</u>").  In the Amended Altair Complaint, plaintiffs sought, among other things, (*i*) a declaratory judgment that the PayGo Measures were void because they violated the automatic stay, (*ii*) a determination that plaintiffs had a secured claim against ERS in ERS's Title III case against the Pledged Property, (*iii*) a determination that plaintiffs have a secured claim against the Commonwealth for all assets that were transferred to the Commonwealth under the PayGo Measures, and over future employer contributions made to the Commonwealth's general fund as Paygo effected a transfer of any right to receive  employer contributions from ERS to the Commonwealth, (*iv*) a declaratory judgment that the Commonwealth was unjustly enriched by the PayGo Measures, and (*v*) declaratory judgments that the PayGo Measures violated the Takings and Contracts Clauses of the Puerto Rico Constitution and the United States Constitution.  *See* Amended Altair Complaint ¶¶ 99-176.

18.     On November 17, 2017, ERS filed a motion to dismiss the Amended Altair Complaint.  *See* Case No. 17-AP-219-LTS, ECF No. 41 (the "<u>Motion to Dismiss</u>").  The same day, the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "<u>Retiree Committee</u>") filed a joinder to the Motion to Dismiss (*see id.*, ECF No. 43), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>") filed a joinder and supplementary memorandum of law in support of the Motion to Dismiss.  *See id.*, ECF No. 44.  Briefing took place on the Motion to Dismiss.  *See id.*, ECF Nos. 50, 59, 61- 62.  On September 6, 2018, however, the Court entered an order staying the Altair Action until the First Circuit entered a decision on the appeal of the District Court Avoidance Opinion.  *See id.*, ECF No. 69.  On September 27, 2018, the Court entered an order

terminating the Motion to Dismiss without prejudice to reinstatement following the termination of the stay. *See id.*, ECF No. 70.[5]

### C.    Movants' Motions to Lift the Automatic Stay

19.    On July 3, 2018, Movants sought to lift the automatic stay specifically to address whether Movants were entitled to adequate protection arising from the PayGo Measures. Case No. 17-BK-3566, ECF No. 289.   The Court denied the motion because it was resolved by the District Court Lien Avoidance Opinion. *Id.*, ECF No. 318.

20.    On February 21, 2019, Movants renewed their motion to lift the automatic stay following the First Circuit's opinion reversing the District Court Avoidance Opinion and holding that ERS Bondholders' security interests were perfected as of December 17, 2015. *Id.*, ECF No. 367. Following extensive litigation and full briefing, the motion was set for hearing on July 2, 2019.

21.    On June 27, 2019, following remand from the First Circuit, the Court granted summary judgment in favor of ERS in the Lien Challenge Action, finding 11 U.S.C. § 552 applies to prevent the post-petition attachment of a lien on employer contributions made pursuant to the Enabling Act ("552 Order").  Case No. 17-AP-213, ECF No. 251.

22.    On June 28, 2019, the Court adjourned the hearing on Movants' lift-stay motion indefinitely as it was mooted by the Court's Section 552 Order. Case No. 17-BK-3566, ECF No. 619. On July 8, 2019, the Court ordered the Movants' lift-stay motion terminated without prejudice. *Id.*, ECF No. 640.

23.    The ERS Bondholders appealed the 552 Order to the First Circuit ("552 Appeal"). *See* Case No. 17-AP-213-LTS, ECF No. 254. Argument on the 552 Appeal is scheduled to be heard on December 4, 2019.

---

[5] The parties agreed to await resolution of the 552 Appeal, as defined herein, before addressing any claims that remain unresolved in the Altair Action, 17-AP-219, including ERS Bondholders' claim that the PayGo Measures violated the ERS automatic stay, are void and cannot be implemented.

#### D.     Claims Objections

24.     The Bondholders and the Fiscal Agent have filed proofs of claim against the
Commonwealth and ERS, asserting liabilities for the principal and interest owing on the ERS Bonds.
*E.g.*, Claim No. 16775 (Fiscal Agent claim filed against the Commonwealth (the "<u>Fiscal Agent
Claim</u>")).   The Oversight Board, the Retiree Committee, and the Creditors' Committee have each
filed objections thereto.   The Oversight Board objected to the Fiscal Agent Claim, (Case No. 17-BK-
3283-LTS, ECF. No. 7075), asserting, among other things, that the PayGo Measures do not give rise
to any claims against the Commonwealth.   The Creditors' Committee filed an *Omnibus Objection to
Claims Asserted by Holders of Bonds Issued by ERS*, (Case No. 17-BK-3566-LTS, ECF No. 381), on
the ground the bond issuance exceeded ERS's statutory authority and was thus *ultra vires,* rendering
the ERS Bonds null and void.   And, the Retiree Committee filed an *Omnibus Objection Of The
Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To
Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders
Of ERS Bonds Against ERS And The Commonwealth*, (Case No. 17-BK-3283-LTS, ECF No. 6482),
on the ground, among others, that the bond issuance was *ultra vires.*

#### E.     Movants' Post-Petition and Administrative Expense Claims

25.     Recently, on November 21, 2019, Movants moved for allowance and payment of their
asserted post-petition and administrative expense claims against the Commonwealth and ERS.   *Id.*,
ECF No. 9285 ("<u>Administrative Expense Claims Motion</u>"). Their motion seeks relief with respect to
a litany of purported claims, including, among others, purported claims being pursued in the Altair
Action relating to the PayGo Measures and the transfer of ERS assets to the Commonwealth.   The

Court subsequently ordered that the Motion will be heard in connection with the Omnibus Hearing scheduled for January 29, 2020. *Id.*, ECF. No. 9322.[6]

### F.    Litigation Procedures

26.    On October 7, 2019, the Court entered an order establishing procedures by which all interested parties can participate in claims objections procedures to ERS Bondholder claims, including objections on the ground that the ERS bonds were issued *ultra vires*. *See* Case No. 17-BK-3566-LTS, ECF No. 676.  The parties thereto agreed to meet and confer regarding discovery and briefing of issues that remain, if any, after the determination of the 552 Appeal, including regarding ERS Bondholders' claims that they have a secured interest in the ERS assets transferred to the Commonwealth. *See id.*, ECF No. 687.

### G.    Tolling Stipulation

27.    The ERS Bondholders have previously asserted that ERS possesses avoidance claims against the Commonwealth in connection with the PayGo Measures.  The ERS Bondholders demanded that the Oversight Board pursue those purported claims (Motion, Ex. D), and then moved the Court for entry of an order appointing the ERS Bondholders as trustees under Bankruptcy Code section 926 (Case No. 17-BK-3283, ECF No. 5169).  The Commonwealth and ERS then entered into a tolling stipulation, approved by the Court on February 28, 2019, which tolled the period in which avoidance actions of either the Commonwealth or ERS may be commenced by an additional 270 days from the date in which they would have otherwise expired.  Case No. 17-bk-3566-LTS, ECF No. 376. The ERS Bondholders negotiated with the Debtors over the terms of the stipulation, are express third-party beneficiaries of the stipulation, and as a result of the stipulation, withdrew their motion for appointment of a trustee under Bankruptcy Code section 926.

---

[6] The Oversight Board intends to discuss with the other parties how the Administrative Expense Claims Motion may be integrated into the broader Scheduling Order governing resolution of issues relating to the ERS Bonds (*see* Case No. 17-BK-3566-LTS, ECF No. 687).

## ARGUMENT

### I.   MOVANTS HAVE NOT SATISFIED THEIR BURDEN TO JUSTIFY APPOINTMENT OF A TRUSTEE UNDER SECTION 926

28.     Movants have not met their burden to justify appointment of a section 926 trustee. First, as a threshold issue, Movants do not even attempt to address PROMESA §§ 303 and 305, which limits the Court's ability and power to interfere with Puerto Rico's governmental or political functions.  Movants plainly seek to repeal the PayGo Measures through avoidance actions and, in doing so, to interfere directly with Puerto Rico's legislative decisions.  PROMESA explicitly bars such actions, rendering Movants' motion a failure from the start.[7]

29.     Second, Movants already have filed a separate adversary proceeding and filed proofs of claim (administrative and regular), asserting numerous claims, and sought to lift the automatic stay to obtain the same relief on the same legal theories they purport to pursue if appointed as trustees (or alternatively, if a third party was appointed as trustee with Movants' approval).  The Altair Action seeks to effectively invalidate the PayGo Measures.  Movants' lift-stay motion is fully briefed following extensive fact and expert discovery precisely on whether PayGo fees under the PayGo Measures are the same as employer contributions under the ERS Enabling Act.  Movants' request to appoint themselves as trustee to pursue this legal theory (or their stated alternative) would constitute a waste of time and money for all involved.

30.     Third, the Oversight Board is not conflicted from representing both the Commonwealth and ERS as a matter of law.  Congress expressly designated the Oversight Board as

---

[7] *See also In re N.Y. City Off-Track Betting Corp.*, No. 09-17121 (MG), 2011 Bankr. LEXIS 319, at *11 (Bankr. S.D.N.Y. Jan. 25, 2011) ("[c]ourts should be loath to appoint a trustee given that the court's limited powers in a chapter 9 case are best understood as operating within the context of constitutional and federalism concerns."); 6 COLLIER ON BANKRUPTCY ¶ 926.02[1] (explaining that when a governmental debtor has made a property transfer in the exercise of its political or governmental functions, "the appointment by the court of a trustee to undo that transfer may constitute an interference with those powers or with that property, contrary to the mandatory dictates of section 904, which supersedes any power granted to the court under section 926(a).").

*the* representative of each and every Title III debtor at the same time, *see* PROMESA § 315(b), and expressly contemplated that multiple debtors—namely, governments and their instrumentalities—would pursue relief at the same time. Movants cannot rewrite PROMESA through motion practice to eject the Oversight Board as the sole and express representative of the debtor. Nor can the Oversight Board become conflicted out of its express statutory role by exercising its statutory mandate to create a holistic solution to Puerto Rico's fiscal crisis—here, by proposing a Fiscal Plan and Plan of Adjustment that supported the PayGo Measures to ensure adequate pension funding, a fundamental mandate of PROMESA.

31.     Fourth, in any event, Movants' proposed claims are meritless. Section 544 applies to prepetition transfers only, which are not at issue here. Section 549 likewise provides no relief because the PayGo Measures were governmental and political acts under PROMESA §§ 303 and 305 and cannot be considered "not authorized."

A.     **Movants' Attempt to Interfere with Puerto Rico's Duly Enacted Legislation is Contrary to PROMESA §§ 303 and 305**

32.     Congress protected Puerto Rico's governance powers by providing that Title III "does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality, including expenditures for such exercise." PROMESA § 303.

33.     Congress also precluded the Title III court from interfering with "any of the political or governmental powers of the debtor" unless the Oversight Board consented to that interference or the plan of adjustment provided for it. PROMESA § 305.

34.     The combination of PROMESA §§ 303 and 305 makes clear not only that Puerto Rico's political and governance powers remain intact during a Title III case, subject to the powers of the Oversight Board under Titles I and II of PROMESA, but that the Title III court cannot interfere with those political and governance powers. As a result, as this Court already has ruled, PROMESA

12

Title III does not prohibit a Title III debtor from "taking actions to dispose of its property" nor does it "strip a governmental entity of the power to exercise substantial independence in its decision-making." *Memorandum Order Denying Motion of Official Committee of Unsecured Creditors for Entry of an Order Enforcing the Automatic Stay*, Case No. 17-BK-3283-LTS, ECF No. 3941(D.P.R. Sep. 18, 2018) ("Stay Enforcement Order") at 6.

35.    Here, the PayGo Measures were valid exercises of legislative authority of the government of Puerto Rico and ERS's power to dispose of its property, preserved by PROMESA §§ 303 and 305.  The sole transfer effected by the PayGo Measures—namely, the transfer of $190.5 million in cash in June 2017 to the Commonwealth—was required by the PayGo Measures.  As such, that transfer was "authorized" by PROMESA Title III and is not avoidable.  *See Hollstein v. Sanitary & Improv. Dist. No. 7 (In re Sanitary & Improv. Dist. No. 7)*, 96 B.R. 967, 972 (Bankr. D. Neb. 1989) (denying section 549(a) claim in chapter 9, explaining "[s]ince this Court has no right to interfere with the governmental or political operations of the debtor or to interfere with debtor's use of its property, except in the confirmation process, any use of debtor's property by debtor is 'authorized under this title.'  The debtor is free to use its property and the bankruptcy court cannot approve or disapprove of such use.").

36.    As a result, Movants cannot legitimately seek appointment as trustee to attempt to avoid a non-avoidable transfer that would interfere with Puerto Rico's preserved governance and political powers, and cannot legitimately ask this Court to grant relief contrary to those preserved powers and the limitations Congress placed on the Court's authority.

**B.    Movants Have Already Sought the Relief They Would Seek as Trustee**

37.    For more than 2 years, Movants have asserted they hold secured claims against the Commonwealth because of the purported transfers effected by the PayGo Measures.  For example, in the Altair Action, Movants seek a declaration they have secured claims and relief on constitutional

grounds specifically arising from the PayGo Measures.  *See Amended and Supplemented Adversary Complaint*, Case No. 17-AP-219-LTS, ECF No. 39 (D.P.R. Nov. 8, 2017).  Further, Movants sought stay relief specifically to address whether PayGo fees under the PayGo Measures are the same as employer contributions previously made under the ERS Enabling Act.  Movants' lift-stay motion is fully briefed following extensive fact and expert discovery, and Movants *agreed* the hearing on the lift-stay motion should be adjourned in view of the Court's decision applying Section 552 to prevent attachment of Movants' liens post-petition.  Case No. 17-BK-3566, ECF No. 618, ¶ 9 ("Movants agree that there is no need to go forward with the Stay Relief hearing scheduled for July 2, 2019.").

38.     As stated in the Oversight Board's Objection to the Fiscal Agent Claim, ERS assets transferred to the Commonwealth will be made available for distribution if it is determined that the amounts transferred to the Commonwealth are subject to the ERS bondholders' security interest in the Lien-Scope Actions.  Accordingly, if the ERS Bondholders prevail as to their claimed entitlement to the $190.5 million in the Lien-Scope Actions, and the Court concludes that the application of UCC § 9-332(b) does not permit the Commonwealth to take the assets free of any security interest, distribution of the $190.5 Million would extinguish any claim remaining against the Commonwealth. *See* Case No. 17-BK-3283-LTS, ECF. No. 7075 at 30 n.20.

39.     Movants have now also filed the Administrative Expense Claims Motion.  *Id.*, ECF No. 9285.  Their post-petition and administrative claims purportedly relate to, among other things, ERS's breach of its obligation to oppose the enactment of the PayGo Measures and the Commonwealth's enactment of the PayGo Measures, including the transfer of assets from ERS to the Commonwealth, which Movants contend is, among other things, a purported violation of the automatic stay.  Accordingly, Movants administrative expense claims are yet another avenue by which they seek the same relief.  The administrative expense claim filing preserves all of Movants' rights with respect to their purported claims.

14

40.     Movants' actions demonstrate they are capable of protecting themselves, and do not need the Oversight Board—or an appointment of a trustee—to assert substantially the same claims on the same theories seeking the same result multiple times.  If Movants' claims have validity, they will be granted secured status in the Commonwealth's Title III case and a fraudulent transfer action could be unnecessary.[8]

**C.      The Oversight Board is Not Conflicted**

41.     Under PROMESA § 315(b), the Oversight Board is the exclusive representative of all debtors in Title III cases.  In giving the Oversight Board that role, Congress defined the Oversight Board's mandate broadly to effect a holistic approach necessary for the success of Puerto Rico's fiscal recovery.  Specifically, Congress determined "[a] comprehensive approach to fiscal, management, and structural problems and adjustments that exempts no part of the Government of Puerto Rico is necessary, involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." PROMESA § 405(m)(4).  Congress established the Oversight Board to provide this independent oversight, as well as "a method for a covered territory to achieve fiscal responsibility and access to the capital markets."  PROMESA § 101(a).  Congress gave the Oversight Board discretion in how to achieve its goal through fiscal plans and budgets, gave it exclusive authority to file a plan of adjustment for all Debtors, and under PROMESA Title III specifically made the Oversight Board the sole representative of *each* and *every* debtor.  *See* PROMESA § 315(b).

---

[8] Moreover, Movants cannot assert violations of the automatic stay.  *First*, the PayGo Measures were exempt from the stay pursuant to Bankruptcy Code section 362(b)(4) (*see, e.g., Parkview Adventist Med. Ctr. v. United States*, 842 F.3d 757, 763 (1st Cir. 2016)).  *Second*, neither creditors nor a trustee appointed under section 926 can raise stay violations—only the debtor can do so.  *See, e.g., Pinpoint IT Servs., LLC v. Atlas IT Exp., LLC (In re Atlas IT Exp., LLC)*, 491 B.R. 192, 195 (1st Cir. B.A.P. 2013) (automatic stay exists "to protect the debtor from creditors not vice versa.") (citation omitted).

15

42.     Movants cannot contend the Oversight Board is conflicted by virtue of its Congressionally-ordained role as representative of both ERS and the Commonwealth.   No disqualifying conflict can exist based on a statutorily mandated structure.   Moreover, a "state's alleged conflict of interest is not a valid basis" for interfering with the governance structures of a debtor in PROMESA Title III.   *In re Richmond Unified School Dist.*, 133 B.R. 221, 226 (Bankr. N.D. Cal. 1991).   "Chapter 9 was drafted to assure that application of the federal bankruptcy power would not infringe upon the sovereignty, powers and rights of the states, *including, presumably, states alleged to have a conflict of interest*."   *Id*. at 226 (emphasis added).   Therefore, ERS Bondholders cannot plausibly complain of any conflict vitiating the Oversight Board's determinations.[9]

43.     Instead, in accordance with its mandate, the Oversight Board determined the survival of the pension systems and the adequate funding of benefits to retirees—an at-risk population segment—is a paramount concern.   As such, in the March 2017 Fiscal Plan, the Oversight Board supported changing the Commonwealth's pension systems to a "pay-as-you-go" model, in order to ensure "adequate funding for public pension systems."   *See* PROMESA § 201(b)(1)(C); March 2017 Fiscal Plan at 21.   However, the Oversight Board did not compel the PayGo Measures, let alone control their enactment.   The Legislative Assembly of Puerto Rico and the Governor enacted the PayGo Measures, which were then presented to and approved by the Oversight Board as consistent with the certified fiscal plan.   The Oversight Board reasonably believes the PayGo Measures are

---

[9] In *Richmond*, the school district, facing a fiscal cliff and without enough funds to continue operating, filed for relief under chapter 9.   To help the school district escape its financial straits, the state of California, the school district's largest prepetition creditor, gave it a very significant loan, took over operational control of the district, and moved to dismiss the chapter 9 case.   Certain creditors opposed the motion, arguing it should be denied because the state—now in control of the debtor—had a conflict of interest, as the city's largest prepetition and postpetition creditor.   The bankruptcy court rejected this argument, however, holding that conflicts of interest was "not a valid basis for denial" of the debtor's motion.   *Id.* at 226.

16

appropriate to ensure benefits continued being provided to ERS participants, given that ERS was left almost entirely unfunded when it filed for PROMESA Title III protection.

44.     Movants' arguments that a conflict of interest exists are unsupportable.  First, Movants base their arguments on inapposite cases involving commercial bankruptcy, critically ignoring the points discussed above: the Oversight Board is Congressionally-appointed to represent both ERS and the Commonwealth, and distinctions exist in chapter 9, and analogously here, Title III, cases, that dispel a claimed conflict of interest.

45.     Second, there is no "actual" conflict resulting from the transfer of certain of ERS's assets to the Commonwealth, in exchange for a corresponding transfer of liabilities.  This Court already rejected this argument in the context of the ERS Bondholders' attempts to obtain privileged documents pertaining to the PayGo Measures.  The Court found ERS and the Commonwealth had a shared interest in "benefiting employees by assuring the flow of pension payments to retirees."  *See Memorandum Order Regarding Magistrate Judge's May 6, May 15 and May 30, 2019 Orders*, Case No. 17-BK-3283-LTS, ECF No. 7695.

46.     Third, as noted above, Movants cannot rely on the automatic stay, which, as held in this Circuit, exists for the protection of debtors.  *Supra*, n.6.  As Movants' authority demonstrates, to the extent the automatic stay benefits creditors, it does so vis-à-vis the claims of *other creditors,* to avoid "[a] race of diligence by creditors for the debtor's assets."  *Superior Point Mfg. Co. v. Lopez-Soto (In re Lopez-Soto),* 764. F2d 23, 27 (1st Cir. 1985).

47.     Fourth, the circumstances present in the Commonwealth-COFINA dispute are distinguishable and do not compel the appointment of a trustee in this case.  There, the Oversight Board declined to take a position with regard to an actual dispute, and therefore properly delegated its authority to representatives for each party.  Here, on the other hand, the Oversight Board reasonably believes the PayGo Measures are appropriate to ensure benefits continue to be provided

17

to ERS participants and is unanimous in supporting the measures.  Moreover, in the Commonwealth-COFINA stipulation (Case No. 17-BK-3283-LTS, ECF No. 996), and notwithstanding the appointment of representative agents, the Oversight Board reserved the right to file a COFINA plan of adjustment, thereby maintaining control over the procedure to resolve the dispute.  This is different in kind from Movants' request to have themselves appointed as trustee to pursue claims in their own self-interest.  Appointment of a trustee to pursue litigation against the Commonwealth on behalf of ERS could impair the Oversight Board's ability to propose a plan of adjustment, unlike in the Commonwealth-COFINA dispute.  In both the Commonwealth-COFINA context and here, the Oversight Board is properly acting as the Congressionally-appointed representative of both Debtors.

> **D.**  **The Claims Movants Propose To Assert as Trustee Have No Merit**

48.     In any event, the claims Movants propose to assert as trustee have no merit.

49.     First, the sole transfer of $190.5 million in June 2017 was not a fraudulent transfer under either Bankruptcy Code section 544 or Puerto Rico fraudulent transfer law.  At the same time ERS transferred $190.5 million to the Commonwealth, the other PayGo Measures were enacted, and the Commonwealth assumed ERS's obligations to make pension payments to retirees.  Moreover, under the PayGo Measures the Commonwealth—not ERS—bears the risk of the failure of employers to reimburse their share of PayGo payments.  Many employers have failed to remain current under the PayGo System, and the Commonwealth has had to make up the difference, relieving ERS of this burden.  As such, ERS has received very substantial consideration for its transfer of assets to the Commonwealth.  *Ana Maria Sugar Co. v. Castro,* 28 D.P.R. 241 (1920) ("No conveyance is fraudulent if made for a valuable consideration."); *Westernbank Puerto Rico v. Kachkar,* No. 07-1606, 2009 WL 6337949, at *35 (D.P.R. Dec. 10, 2009) (applying principles of contract law and recognizing that "[a]ny detriment to the opposite party constitutes valuable consideration").

18

50.    Second, ERS has no plausible avoidance claim under § 549(a).  Bankruptcy Code section 549(a) provides, in relevant part, "the trustee may avoid a transfer of property of the estate (1) that occurs after the commencement of the case; and (2) . . . (B) that is not authorized under this title[10] or by the court."  11 U.S.C. § 549(a).  The transfers to the Commonwealth were authorized under PROMESA Title III.  As this Court has recognized, under PROMESA "Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets."[11]  Bankruptcy Code section 363, "the principal Bankruptcy Code provision that sets restrictions on [actions to affect or dispose of property of the estate]" is not incorporated into PROMESA Title III.[12]  Further, as noted above, PROMESA §§ 303 and 305 preserve the debtor's political and governmental powers and prohibit the Title III court from interfering with them.

51.    Movants' argument that the PayGo Measures "seized" ERS's assets "without authorization" is unsupportable.  The PayGo Measures were intended to provide for the payment of retiree benefits and to protect public welfare and, therefore, are exempt from the stay pursuant to Bankruptcy Code section 362(b)(4) (see, e.g., Parkview, 842 F.3d at 763), and, as noted above, were valid exercises of legislative authority of the government of Puerto Rico and ERS's power to dispose of its property, preserved by PROMESA sections 303 and 305.  As such, the transfer could not be considered unauthorized by PROMESA Title III and, therefore, is not avoidable.  See In re Sanitary & Improv. Dist. No. 7, 96 B.R. at 972 (denying section 549(a) claim in chapter 9, explaining "[s]ince this Court has no right to interfere with the governmental or political operations of the debtor or to interfere with debtor's use of its property, except in the confirmation process, any use of debtor's property by debtor is 'authorized under this title.'  The debtor is free to use its property and the

---

[10] Pursuant to PROMESA section 301(d), a reference to "this title" in the Bankruptcy Code is deemed a reference to PROMESA Title III.
[11] See Stay Enforcement Order at 6.
[12] Id. at 5.

19

bankruptcy court cannot approve or disapprove of such use."). Accordingly, the assertion by Movants that the $190.5 million transfer effected by the PayGo Measures is a violation of the stay under Bankruptcy Code section 362(a)(3) is demonstrably false.

52. Even if the PayGo Measures did violate the automatic stay (and they do not), Movants, as creditors, have no standing to assert such a violation, and would be afforded none by the relief sought in their motion. Section 926 of the Bankruptcy Code permits appointment of a trustee to pursue avoidance actions only. 11 U.S.C. § 926 ("If the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of this title, then on request of a creditor, the court may appoint a trustee to pursue such cause of action."); *see also In re Yasin*, 179 B.R. 43, 48 n.6 (Bankr. S.D.N.Y. 1995) ("In chapter 9, the court can appoint a trustee solely for the purpose of bringing certain avoiding actions.").

53. Because Movants lack standing in their own capacity to pursue a purported stay violation, and a trustee, if appointed, would have limited powers to pursue certain avoidance actions only, Movants would first need to seek to step into the shoes of the Title III Debtors to pursue a stay violation claim.[13] The Court, however, could not grant this type of derivative standing without the Oversight Board's consent in light of PROMESA section 305. In chapter 11, an estate is created under 541 which holds the claims and causes of action of the debtor. PROMESA does not incorporate section 541, and PROMESA section 301(c)(5) defines "property of the estate" as "property of the debtor." Because there is no estate, all claims and causes of action that can be asserted by the Title III Debtors constitute "property of the debtor." Under PROMESA section 305, the Title III Court cannot issue any order interfering with property of the debtor (including an order granting derivative

---

[13] While the First Circuit has never conclusively addressed the issue of derivative standing for creditors, it has recognized that "creditors only have standing to pursue [] claims during bankruptcy proceedings when a trustee or debtor in possession *unjustifiably* fails to pursue the claim." *Morley v. Ontos, Inc. (In re Ontos, Inc.)*, 478 F.3d 427, 431–32 (1st Cir. 2007) (emphasis added) (finding that such circumstances were not present in the case). Such circumstances are not present here.

standing to pursue the causes of action) unless the Oversight Board consents. *See also* Apr. 24, 2019 Omnibus Hr'g Tr. 160:23-161:2 (holding "that absent the express consent of the Oversight Board, PROMESA's statutory framework does not allow the Court to grant derivative standing to a third party to bring actions that are not expressly enumerated under Section 926 of the Bankruptcy Code"). Accordingly, Movants could not pursue a claim for violation of the automatic stay, even if PayGo Measures, and the transfer of assets required pursuant to them, were not exempted from the automatic stay under section 362(a)(4).

## **CONCLUSION**

For the reasons stated herein, the Court should deny the Motion in its entirety.

Dated: November 26, 2019  
San Juan, Puerto Rico

Respectfully submitted,

*/s/   Brian S. Rosen*

Martin J. Bienenstock  
Brian S. Rosen  
Jeff W. Levitan  
Paul V. Possinger  
Margaret A. Dale  
(Admitted *Pro Hac Vice*)  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
New York, NY 10036  
Tel:  (212) 969-3000  
Fax:  (212) 969-2900

*/s/  Luis F. del Valle-Emmanuelli*

Luis F. del Valle-Emmanuelli  
USDC-PR No. 209514  
P.O. Box 79897  
Carolina, Puerto Rico 00984-9897  
Tel. 787.977.1932  
Fax. 787.722.1932  
dvelawoffices@gmail.com  
OF COUNSEL FOR  
A&S LEGAL STUDIO, PSC  
434 Avenida Hostos

21

San Juan, PR 00918
Tel: (787) 751-6764/ 763-0565
Fax: (787) 763-8260

*Attorneys for the Financial Oversight and
Management Board as representative of the
Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli

23