Reply Deadline: **December 3, 2019 at 4:00 p.m.** (Atlantic Standard Time)
Hearing Date and Time: **December 11, 2019 at 9:30 a.m.** (Atlantic Standard Time)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>               Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS |

## OBJECTION OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO TO THE ERS BONDHOLDERS' RENEWED MOTION FOR APPOINTMENT AS TRUSTEES

---

[1] The Debtors in these jointly-administered PROMESA title III cases (these "**Title III Cases**"), along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority  (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

I.   The ERS Bonds And Employer Contributions. ...............................................2

II.  Joint Resolution 188 And Act 106. .................................................................3

ARGUMENT .........................................................................................................4

    A.   The Bondholders Have No Colorable Claim Of Unauthorized Transfers Under
Section 549(a). .............................................................................................7

        1.   The Discontinuation of Employer Contributions Does Not Constitute A
Transfer Under Section 549(a), And Even If It Did, It Was Authorized
Under PROMESA. ..................................................................................7

        2.   The Bondholders Remaining Section 549(a) Claim Fails Because Either
The Assets Are Still With ERS Or Are Being Held Pending A Final
Resolution Of The Bondholders' Dispute. .............................................12

    B.   The Bondholders Have Failed To Identify Prepetition Fraudulent Transfers
Under Section 544(b). ................................................................................13

    C.   If The Court Appoints A Trustee, It Should Not Appoint The Bondholders Or
Any Individual Selected By The Bondholders. ..........................................16

CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Boston Trading Group, Inc. v. Burnazos,*
   835 F.2d 1504 (1st Cir. 1987) ................................................................................15

*Bracewell v. Kelley,*
   454 F.3d 1234 (11th Cir. 2006) ...............................................................................9

*Burgess v. Sikes,*
   438 F.3d 493 (5th Cir. 2006) (*en banc*) ..................................................................9

*Esso Standard Oil v. A.P.P.R.,*
   95 D.P.R. 722 (1968). No .......................................................................................15

*Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.),*
   375 F.3d 51 (1st Cir. 2004) ....................................................................................13

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
   530 U.S. 1 (2000) ...................................................................................................16

*In re Bronikowski,*
   569 B.R. 48 (Bankr. W.D.N.C. 2017) ......................................................................9

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,*
   583 B.R. 626 (D.P.R. 2017) ...................................................................................11

*In re Irving Tanning Co.,*
   555 B.R. 70 (Bankr. D. Me. 2016) .........................................................................15

*In re Jeffrey Bigelow Design Group, Inc.,*
   956 F.2d 479 (4th Cir. 1992) .................................................................................15

*In re Kenny G. Enters., LLC,*
   512 B.R. 628 (C.D. Cal. 2014) ..............................................................................14

*In re Klein-Swanson,*
   488 B.R. 628 (8th Cir. BAP 2013) ...........................................................................9

*In re Messia,*
   184 B.R. 176 (Bankr. D. Mass. 1995) ......................................................................9

*In re New York City Off-Track Betting Corporation,*
   No. 09-17121(MG), 2011 WL 309594 (Bankr. S.D.N.Y. Jan. 25, 2011) .................5

i

*In re Sanitary & Improvement Dist. No. 7 of Lancaster Cty., Neb.*,
   96 B.R. 967 (Bankr. D. Neb. 1989) ...................................................................11

*In re Vachhani*,
   No. 16-21987 (JJT), 2019 WL 303078 (Bankr. D. Conn. Jan. 22, 2019)................................14

*Jubber v. Bank of Utah (In re C.W. Mining Co.)*,
   749 F.3d 895 (10th Cir. 2014) ......................................................................13

*Lyda v. City of Detroit (In re City of Detroit)*,
   841 F.3d 684 (6th Cir. 2016) .......................................................................11

*Oliveras v. Banco Popular de Puerto Rico (In re Alicia Casanova)*,
   595 B.R. 616 (Bankr. D.P.R. 2018) ...............................................................5, 8

*Tomsic v. Pitocchelli (In re Tri–Star Techs. Co., Inc.)*,
   260 B.R. 319 (Bankr. D. Mass. 2001) ..............................................................14

## STATUTES

11 U.S.C. § 105.................................................................................11

11 U.S.C. § 544(b)..........................................................................6, 13, 14

11 U.S.C. § 549(a)............................................................................. passim

11 U.S.C. § 926...........................................................................1, 2, 5

11 U.S.C. § 904.................................................................................11

48 U.S.C. § 2141(b)(1)(C).....................................................................6, 10

48 U.S.C. § 2161...........................................................................5, 6, 7, 10

48 U.S.C. § 2163.................................................................................10

48 U.S.C. § 2165.................................................................................11

48 U.S.C. § 2165(1)-(3)..........................................................................6

48 U.S.C. § 2174(b)(7)...........................................................................10

31 L.P.R.A. § 3492..............................................................................16

31 L.P.R.A. § 3492(3)...........................................................................15

**OTHER AUTHORITIES**

COLLIER ON BANKRUPTCY ¶ 926.02[1], [4] ...........................................................................4, 5, 16

Thomas J. Gordon, *Securitization of Executory Future Flows as Bankruptcy-
Remote True Sales*, 67 U. CHI. L. REV. 1317, 1318-19 (2000) ..................................................9

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") objects (the "**Objection**") to the *Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926* [Dkt. No. 9260; ERS Dkt. No. 704] (the "**Motion**") filed by certain holders of bonds (the "**Bondholders**") issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**"), and states:

## INTRODUCTION

The Bondholders have once again asked to be appointed as trustees in the ERS Title III case to pursue avoidance litigation for their own benefit. Alternatively, they ask the Court to appoint the Bondholders' pre-selected, supposedly "independent" third-party fiduciary to pursue such litigation for them. The premise of the Bondholders' self-serving request is that they are the only creditor constituency that matters in the ERS case and therefore, the Court should appoint a trustee who will do whatever the Bondholders want without regard to the costs or delay this will impose on ERS.

The Bondholders' premise is false. The Retiree Committee represents the beneficiaries of ERS who have an interest in preserving ERS's assets. In particular, certain Commonwealth retirees have an interest in the contributions they were required to make from their salaries to ERS to fund their pensions. And because the Bondholders are non-recourse creditors holding a lien on, at most, only certain limited funds, to the extent that ERS's funds are *not* subject to the Bondholders' liens, all of the Commonwealth's retirees have an interest in seeing those funds preserved to pay pensions and not wasted on questionable litigation that serves no purpose.

Thus, the decision this Court faces is not, as the Bondholders frame it, whether the conflicts they contend exist automatically entitle them to usurp ERS's role in this case and bring whatever avoidance actions they want to bring, but instead it is whether after considering the merits of the

proposed lawsuit, it is in the best interests of *all* ERS stakeholders, including the retirees, to bring

the proposed claims. The answer is clearly no. As set forth herein, the Bondholders' proposed

lawsuit fails to state any colorable avoidance claims and in part seeks relief the Bondholders

already have achieved. Therefore, appointing a trustee (or allowing the Bondholders to act as a

trustee) will only waste ERS's limited assets to the ultimate detriment of the retirees that the

Retiree Committee represents.

For this reason, and for all of the reasons set forth in (i) the *Objection of the Financial

Oversight and Management Board for Puerto Rico to Renewed Motion of Certain Secured

Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto

Rico for Appointment as Trustees Under 11 U.S.C. § 926* [Dkt. No. 9345; ERS Dkt. No. 727] (the

"**FOMB's Objection**") filed by the Financial Oversight and Management Board (the "**FOMB**")

on behalf of ERS; and (ii) the *Objection of AAFAF to Renewed Motion of Certain Secured

Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto

Rico for Appointment of a Trustee Under 11 U.S.C. § 926* [Dkt. No. 9342; ERS Dkt. No. 726]

("**AAFAF's Objection**") filed by the Fiscal Agency and Financial Advisory Authority

("**AAFAF**"), the Court should deny the Motion.

## BACKGROUND

## I.     The ERS Bonds And Employer Contributions.

When the ERS Bonds were issued in 2008 they purported to give Bondholders a security

interest in certain "Pledged Property" of ERS, including employer contributions received by ERS

and the "right, title and interest of [ERS] in and to" the employer contributions as well as ERS's

"rights to receive" the employer contributions. (ERS Bond Resolution § 201, VI-1; Definitions, at

VI-36; § 501 at VI-8.) Importantly, however, ERS did not guarantee the availability of employer

contributions or the continuation of future employer contributions. Indeed, it did just the opposite.

For example, the offering statement for the ERS Bonds (the "**ERS Offering Statement**") provided that "[t]he Legislature of the Commonwealth could reduce the Employer Contribution rate or make other changes in existing law that adversely affect the amount of Employer Contributions" and noted that the circumstances that might cause the Legislature to take such actions included "severe financial stress affecting one or more of the Government Employers." (ERS Offering Statement at 26, 37.) The ERS Offering Statement further provided that there is no covenant by the Legislature of the Commonwealth "not to amend the [ERS Enabling Act] in a way adverse to Bondholders." (*Id*.)

## II.     Joint Resolution 188 And Act 106.

In response to the drastic underfunding of ERS, the Fiscal Plan that the FOMB certified before the commencement of the Title III cases required the Commonwealth to convert the payments due to ERS's beneficiaries to a "pay-as-you-go" ("**PayGo**") system. This PayGo system is different from the prior system under which the Commonwealth and other government corporations (in their capacity as employers of ERS beneficiaries) made contributions into ERS, which in turn issued pension payments to retirees and other beneficiaries. Under the Fiscal Plan's proposed pension system, employers would make their required PayGo fees directly to the Commonwealth's Treasury which would then make the required payment to beneficiaries. (March 2017 Fiscal Plan at 21.)

On June 30, 2017, Puerto Rico's Legislative Assembly passed and the Governor signed Joint Resolution 188—legislative steps that were required to conform to the Fiscal Plan. Consistent with the Fiscal Plan, Joint Resolution 188, among other things, eliminated government employers' obligations to make contributions to ERS and instead required employers to make PayGo fees to the Commonwealth's general fund. (Joint Resolution 188 §§ 1-4.) In addition, Joint Resolution

3

188, directed ERS to sell its remaining assets and transfer those funds to the general fund so that those funds can be used to pay pension obligations. (*Id*. at §§ 1-3.)

On August 18, 2017, the Puerto Rico Legislature passed Act 106, and the Governor signed it into law on August 23, 2017. Act 106 set forth the mechanisms for implementing the PayGo system. (Act 106 §§ 1.4, 2.1.) The express purpose of Act 106 is to "safeguard the wellbeing of our pensioners and public servants, while faithfully implementing the Fiscal Plan certified by the Oversight Board." (Act 106, Statement of Legislative Intent.)

In accordance with Joint Resolution 188 and Act 106, employers pay PayGo fees directly to the Commonwealth. Also consistent with Joint Resolution 188 and Act 106, ERS has transferred $190.48 million to the Treasury Department. (*See* Ex. A, L. Rodriguez Dep. at 120:15-23.) Importantly, the Commonwealth is holding those funds in escrow and has stated that all of those funds will be released to the Bondholders should this Court rule that Bondholders hold a lien on those funds that is not subject to avoidance and is allowed. (Dkt. No. 7075, at ¶68 n.20; Motion, Ex. C at pp. 2-3). What is more, AAFAF's Director of Fiscal Agency, Mohammad Yassin-Mahmud, and ERS's Administrator, Luis Rodriguez, both testified that other than the $190.4 million that is being held for Movants' benefit, ERS has not transferred any additional funds to the Treasury Department and ERS's remaining funds and assets continue to be on deposit in accounts held by ERS. (Ex. B, Yassin-Mahmud Dep. at 104:2-8; 114:22-115:20; 151:23-152:9; Ex. A, L. Rodriguez Dep. at 121:3-122:4.)

## ARGUMENT

Because courts have limited powers over the operations of a governmental entity that is a debtor in a bankruptcy case, "courts should be very hesitant to appoint a trustee" under section 926(a). COLLIER ON BANKRUPTCY ¶ 926.02[1], [4] (Richard Levin & Henry J. Sommer eds., 16th ed.); *In re New York City Off-Track Betting Corporation*, No. 09-17121(MG), 2011 WL 309594,

at *5 (Bankr. S.D.N.Y. Jan. 25, 2011) ("[c]ourts should be loath to appoint a trustee given . . . the court's limited powers in a chapter 9 case"). With this admonition in mind, courts have required creditors seeking the appointment of a trustee under section 926 to make "a substantial showing, both factual and legal, of the likelihood of the existence of a voidable transfer." COLLIER ¶ 926.02 [4].

Here, the Bondholders have not and cannot make such a showing for several reasons. *First*, the Bondholders' purported section 549 claim is not colorable because the Bondholders have not identified any "transfer" of "property of the [ERS] estate" that occurred after the filing of ERS's Title III case that were not authorized under PROMESA. *See* 48 U.S.C. § 2161 incorporating 11 U.S.C. § 549(a). The Bondholders' section 549 argument, in large part, rests upon the assumption that the Commonwealth's termination of employer contributions to ERS in favor of a new PayGo system is a "transfer" under the Bankruptcy Code. (*See* Motion at Ex. A at ¶ 86.) That counterintuitive argument is wrong. ERS has never owned or had any interest in the funds owned by the municipalities and governmental employers. Thus, when a given governmental employer, consistent with Joint Resolution 188 and Act 106, makes a PayGo payment to the Commonwealth, that employer is not "transfer[ing] property of the [ERS] estate" because ERS does not own or have an interest in that employers' funds. *See* 48 U.S.C. § 2161 incorporating 11 U.S.C. § 549(a); *Oliveras v. Banco Popular de Puerto Rico (In re Alicia Casanova)*, 595 B.R. 616, 618-19 (Bankr. D.P.R. 2018). To the extent that paragraph 86 of the proposed complaint also seeks to recover the approximately $190 million ERS transferred to the Commonwealth, that transfer would be of estate property, but avoidance is unnecessary given that the Commonwealth is holding the funds in escrow for the Bondholders' benefit pending a final determination of the Bondholders' lien rights.

Moreover, section 549(a) only concerns *unauthorized* transfers, and the Bondholders have not established that any transfers made pursuant to post-petition legislation were "unauthorized." In fact, the opposite is true. Section 201 of PROMESA specifically gives the FOMB the power and responsibility not only to create Fiscal Plans but to ensure that those Fiscal Plans "provide adequate funding for public pension systems." 48 U.S.C. § 2141(b)(1)(C). Joint Resolution 188 and Act 106 were passed to conform with the FOMB's certified Fiscal Plan and to ensure adequate funding for pensions; consequently, any actions taken in accordance with their terms are precisely the type of actions PROMESA authorizes and therefore cannot be challenged under section 549. Any finding to the contrary also would conflict with PROMESA section 303, which preserves the political or governmental powers of the Commonwealth and its instrumentalities, *see* 48 U.S.C. § 2163, and section 305, which prohibits court interference with the debtor's "political or governmental powers," "property or revenues," or "use or enjoyment . . . of any income-producing property," 48 U.S.C. § 2165(1)-(3).

*Second*, the Bondholders' purported section 544(b) claim fails on its face, as section 544(b) only permits recovery of *pre*petition transfers, not the avoidance of the *post*petition transactions at issue here. *See* 48 U.S.C. § 2161 incorporating 11 U.S.C. § 544(b). The Bondholders also fail to establish the elements of a fraudulent transfer under section 544(b) because the Bondholders' claims would require a showing that ERS acted with actual fraudulent intent and the allegations in their proposed complaint fall woefully short of pleading that intent, let alone suggesting that such intent could ever be established. Put simply, the Motion should be denied because the Bondholders have not stated colorable avoidance claims.

*Finally*, even if appointment of a trustee were somehow appropriate, the Bondholders should not act as their own trustees, nor should they be allowed to hand-pick the trustee. If the

Court were to appoint a trustee (and, respectfully, it should not), it should not allow a single self-interested creditor constituency to direct the litigation for its own benefit, but instead should appoint a disinterested trustee who would carefully review the merits of any proposed claim and consider the interests of all parties, including the retirees, before deciding to file suit.

In sum, rather than supporting the Commonwealth's and ERS's reorganization, the Bondholders' proposed avoidance actions would waste limited estate resources on facially-flawed litigation.

### A.   The Bondholders Have No Colorable Claim Of Unauthorized Transfers Under Section 549(a).

In their Motion and proffered complaint (Count I), the Bondholders assert two types of avoidable "unauthorized transfers" under section 549(a). The first is the discontinuation of employer contributions to ERS pursuant to Joint Resolution 188 and Act 106. The second is the alleged transfers of ERS's physical assets after its Title III filing. (*See* Motion at Ex. A at ¶ 86.) Neither theory has merit.

### 1.   The Discontinuation of Employer Contributions Does Not Constitute A Transfer Under Section 549(a), And Even If It Did, It Was Authorized Under PROMESA.

The Bondholders' proposed section 549 claim is not colorable because the Bondholders have failed to allege the existence of any transfers of property of the ERS estate, which is a prerequisite to a § 549(a) claim. Section 549 permits the avoidance of "a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2) ... (B) is not authorized under this title or by the court." 48 U.S.C. § 2161 incorporating 11 U.S.C. § 549(a). "The definition of transfer . . . has limits. Initially, for a debtor to transfer property, the debtor must first have an interest in that property." *Oliveras*, 595 B.R. at 618.

Here, when the Commonwealth terminated the governmental employers' obligations to make employer contributions to ERS, it did not a transfer of ERS's property because ERS never had a cognizable property interest in the funds held by the governmental employers that those employers used to make employer contributions. Put another way, when governmental employers began making PayGo payments to the Commonwealth they did so using the money those employers, not ERS, owned. ERS never owned or had any interest in the funds in the treasuries of the Commonwealth or other governmental entities. So when those entities used property they owned to pay an obligation that Act 106 imposed upon them, they were not transferring property of the ERS estate and those transfers are therefore not avoidable under section 549 by a trustee appointed in ERS's Title III case.

To the extent that the Bondholders are alleging that the Commonwealth's repeal of Act 446, which created the obligation to make employer contributions to ERS, is a transfer, they are also incorrect. ERS did not own or have any ownership rights in that Act. The documents governing the ERS Bonds could not have been clearer on this point. The ERS Offering Statement's "Investment Considerations," for example, told potential bondholders that one of the risks of purchasing an ERS Bond was the possibility that "[t]he Legislature of the Commonwealth could reduce the Employer Contribution rate or make other changes in existing law that adversely affect the amount of Employer Contributions" and that there is no covenant by the Legislature of the Commonwealth "not to amend the [ERS Enabling Act] in a way adverse to Bondholders." (ERS Offering Statement at 26, 37.) The simple fact is that it was always known that ERS had no right to future employer contributions and thus the elimination of Act 446 cannot constitute a transfer of ERS's property.

8

The case law bears this out. For example, the Eleventh Circuit has held that where a debtor suffered crop losses before bankruptcy, the debtor's entitlement to funds under a crop disaster relief program that Congress enacted after the debtor's bankruptcy petition was not property of the debtor as of the commencement of the case, even though the debtor satisfied the later-enacted statute's criteria for payment before bankruptcy. *Bracewell v. Kelley*, 454 F.3d 1234, 1239 (11th Cir. 2006); *see also Burgess v. Sikes*, 438 F.3d 493, 503 (5th Cir. 2006) (*en banc*); Thomas J. Gordon, *Securitization of Executory Future Flows as Bankruptcy-Remote True Sales*, 67 U. CHI. L. REV. 1317, 1318-19 (2000). In other words, "[e]xecutory future flows are *not* assets; they are cash flows dependent on some event occurring in the future that creates an asset." Gordon, *Securitization of Executory Future Flows*, 67 U. CHI. L. REV. at 1318-19 (emphasis in original; footnotes omitted); *accord Bracewell*, 454 F.3d at 1239; *see also In re Bronikowski*, 569 B.R. 48, 53 (Bankr. W.D.N.C. 2017) (holding that "a debtor's expectation or hope of receiving something in the future is not a property right and would not became property of the estate"); *In re Klein-Swanson*, 488 B.R. 628, 633 (8th Cir. BAP 2013) (stating that when the future receipt of property is based on the exercise of another party's discretion, the debtor has "a contingent interest in nothing"). It follows that the Bondholders' purported property interest in Act 446 continuing was only a future expectation—not an *asset* at all, and certainly not recoverable property under section 549.

In addition to the fact that there is no ERS property at issue here, the elimination of something is not a transfer. As one court explained, "inherent" in the definition of a transfer is "the acquisition of an interest by a third party." *In re Messia*, 184 B.R. 176, 177 (Bankr. D. Mass. 1995). When the Commonwealth repealed Act 446, no third party acquired anything. Instead the Act was eliminated; elimination of something is not the same as a transfer of that thing.

But even if the Court were to find that Bondholders have a colorable claim that the repeal of Act 446 constitutes a "transfer" under section 549(a), the Bondholders' argument still should be dismissed because any such transfer was authorized. There is no dispute that government employers stopped making employer contributions in order to comply with Joint Resolution 188 and Act 106, and that these two legislative acts were passed in order to comply with the FOMB's Fiscal Plan. (*See* Motion, Ex. A, ¶¶ 75, 78.) The Bondholders have no plausible claim that transfers made following the law as promulgated by the Legislature in order to comply with a certified Fiscal Plan can be considered unauthorized. In fact, such a theory is directly refuted by PROMESA which requires the FOMB to come up with yearly Fiscal Plans for the debtors and those Fiscal Plans "shall … provide adequate funding for public pension systems." 48 U.S.C. § 2141(b)(1)(C). Moreover, any plan of adjustment must, in turn, comply with the certified fiscal plan. 48 U.S.C. § 2174(b)(7). Consequently, PROMESA expressly authorized the termination of employer contributions as part of the FOMB's plan to ensure and protect pensions. Therefore, even if the change in the law could be deemed a "transfer," it is immune from attack under section 549(a).

Other provisions of PROMESA (which put clear limitations on the Court's ability to intervene in the political and governmental powers of the Commonwealth) further bolster the conclusion that any transfer made pursuant to Joint Resolution 188 or Act 106 is an authorized transfer. For example, section 303 of PROMESA provides that PROMESA "does not limit or impair the power of a covered territory to control, *by legislation* or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality." 48 U.S.C. § 2163 (emphasis added). As this Court previously explained, PROMESA section 303 "reserves the territory's political and governmental powers to the territory or 'any territorial instrumentality thereof,' subject only to [PROMESA]

10

Titles I and II." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 583 B.R. 626, 635 (D.P.R. 2017). Nothing in Title I or II of PROMESA even suggests a limitation on the Commonwealth's ability to create a pension system it believes will best serve its citizens or a restriction on ERS's ability to comply with duly enacted laws of the Legislature.

In a similar vein, section 305 provides that "the court may not … interfere with (1) any of the political or governmental powers of the debtor" or "any of the property or revenues of the debtor…." 48 U.S.C. § 2165. Section 305 is almost identical to section 904 of the Bankruptcy Code, which is well understood to deprive federal courts of any power to interfere with a municipal debtor's political or governmental powers, or property or revenues, during a chapter 9 case without the debtor's consent. *See Lyda v. City of Detroit (In re City of Detroit)*, 841 F.3d 684, 695-96 (6th Cir. 2016) (holding that section 904 "is so comprehensive that it can only mean that a federal court can use no tool in its toolkit—no inherent authority power, no implied equitable power, no Bankruptcy Code § 105 power, no writ, no stay, no order—to interfere with a municipality regarding political or government power [or] property or revenues….") Put another way:

> [s]ince this Court has no right to interfere with the governmental or political operations of the debtor or to interfere with [the] debtor's use of its property, except in the confirmation process, any use of [the] debtor's property by [the] debtor is 'authorized under this title.' The debtor is free to use its property and the bankruptcy court cannot approve or disapprove of such use.

*In re Sanitary & Improvement Dist. No. 7 of Lancaster Cty., Neb.*, 96 B.R. 967, 972 (Bankr. D. Neb. 1989).

Together, PROMESA sections 303 and 305 stand for the proposition that when it comes to a PROMESA debtor's exercise of its political or government powers (including issuing or effecting legislation), the debtor is authorized to take any such action unless PROMESA

11

specifically prohibits that action. Given these provisions of PROMESA, it simply cannot be that actions taken in connection with Joint Resolution 188 or Act 166 were "unauthorized."

In fact, the Bondholders' argument turns PROMESA on its head and would deem every act by a PROMESA debtor "unauthorized" unless the debtor either could point to a provision in PROMESA or a Court order explicitly allowing the governmental action. Such a standard flies directly in the face of every case interpreting the power of the courts in governmental bankruptcies.

### 2. The Bondholders Remaining Section 549(a) Claim Fails Because Either The Assets Are Still With ERS Or Are Being Held Pending A Final Resolution Of The Bondholders' Dispute.

The Bondholders also claim that under Joint Resolution 188, ERS was "require[d] … to liquidate its assets and transfer the proceeds to the Commonwealth" and that any such transfers (which the Bondholders do not identify) also constitute avoidable transfers under section 549(a). (Motion at Ex. A at ¶ 86.) As the Bondholders are aware, while ERS did in fact transfer $190.48 million to the Treasury Department pursuant to Joint Resolution 188 and Act 106, all of those funds are being held pending a final resolution of the Bondholders' claims to those funds. (*See* Ex. B, Yassin-Mahmud Dep. at 104:2-8; 114:22-115:20; 151:23-152:9; Ex. A, L. Rodriguez Dep. at 121:3-122:4.) The Commonwealth has clearly stated in previous filings that all of these funds will be released to the ERS bondholders should the Court rule that the Bondholders hold a lien on those funds that is not subject to avoidance and is allowed (Dkt. No. 7075, at ¶68 n.20). It then reconfirmed that position this month in response to the Bondholders' latest demand that ERS pursue the Bondholders' requested litigation. (Motion, Ex. C at pp. 2-3.)

Given that the very funds the Bondholders seek to recover will be turned over to them if their alleged secured claims are found to be valid and if they can trace their liens to those funds, avoidance and recovery of those same funds will provide no benefit to the estate and therefore cannot support a section 549(a) claim. Courts routinely refuse to allow section 549 claim where

avoidance would be "pointless" and provide no tangible benefit to the estate. *See Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*, 375 F.3d 51, 71 (1st Cir. 2004); *accord Jubber v. Bank of Utah (In re C.W. Mining Co.)*, 749 F.3d 895, 899 (10th Cir. 2014) (refusing to allow a section 549(a) claim where doing so would be "futile" and provide "no benefit to the [e]state" where defendant was secured creditor and proceeds of any avoidance action would go back to secured creditor).[2] Moreover, because, other than the $190.4 million that is being held for Movants' benefit, ERS has not transferred any additional funds to the Treasury Department and ERS's remaining funds and assets continue to be on deposit in accounts held by ERS, there are no transfers for the Bondholders (or anyone else) to avoid. (Ex. B, Yassin-Mahmud Dep. at 104:2-8; 114:22-115:20; 151:23-152:9; Ex. A, L. Rodriguez Dep. at 121:3-122:4.)

In addition, just as the case with the employer contributions, even if the Court were to find a transfer, there is no colorable basis to find the transfer was unauthorized given that any funds transferred were done in accordance with Puerto Rican law and as part of the FOMB's express power and obligation under PROMESA to ensure pension obligations are adequately funded.

### B.   The Bondholders Have Failed To Identify Prepetition Fraudulent Transfers Under Section 544(b).

The Bondholders' proposed section 544(b) claim (Count II of their proffered Complaint) fails on its face. Section 544(b) only permits recovery of prepetition transfers. As one bankruptcy court explained in rejecting the argument that section 544(b) could be used to avoid a post-petition transfer, section 549 is "the sole tool for avoiding postpetition transfers." *See In re Kenny G. Enters., LLC*, 512 B.R. 628, 635 (C.D. Cal. 2014). "[Section 544's] text specifies that the trustee

---

[2] To be clear, the Retiree Committee does not believe the Bondholders possess any claim against ERS. The point here is that the avoidance actions Bondholders wish to bring would provide no benefit to the estate given that the very funds Bondholders seek to avoid are in essence being held in escrow on their behalf in the event the Court determines Bondholders' do possess valid secured claims against ERS.

possesses [his or her avoidance] powers *on the petition date*. Thus, the disputed transfer 'must necessarily have already occurred.'" *In re Vachhani*, No. 16-21987 (JJT), 2019 WL 303078, at *3 (Bankr. D. Conn. Jan. 22, 2019) (emphasis added) (quoting *In re Kenny G. Enterprises, LLC*, 512 B.R. at 635). Put another way, "[s]ection 544(b) . . . permits the estate representative to wear the mantel of any actual unsecured creditor who could have avoided a *prepetition* transfer under 'applicable non-bankruptcy law.'" *Tomsic v. Pitocchelli (In re Tri–Star Techs. Co., Inc.)*, 260 B.R. 319, 323–24 (Bankr. D. Mass. 2001) (emphasis added and alterations omitted). Because all of the purported transfers occurred postpetition, the Bondholders have not stated colorable claims under section 544(b). (*See* Motion, Ex. A at ¶¶ 92-105.)

But even if the Court considered the merits of the section 544(b) claims, they still fail. As set forth above, the alleged transfers are not in fact transfers of ERS's property. Further, the Puerto Rico fraudulent transfer statutes that the Bondholders rely upon permit recovery of acts "performed in fraud" or "executed in fraud" of a creditor's rights. (*See* Motion, Ex. A at ¶¶ 94-95 (quoting 31 L.P.R.A. § 3028 and 31 L.P.R.A. §3492(3)).) These statutes are actual intent statutes—they require the Bondholders to show that ERS acted with the actual intent to defraud them. The problems with this approach are myriad.

*First,* Bondholders do not and cannot explain how ERS possibly could have committed fraud by following the law. The Puerto Rico legislature enacted Joint Resolution 188 and Act 106 and ERS complied with its requirements. The Retiree Committee is aware of no case that holds that an entity that obeys the law commits fraud. Frankly, it could not be otherwise. And even if there were instances where complying with the law could constitute fraud, this case is not one of those examples. The Bondholders may (incorrectly) believe that Joint Resolution 188 and Act 106 are invalid laws, but the Puerto Rico Supreme Court has held that a law is presumed valid unless

14

and until the Puerto Rico Supreme Court declares the law unconstitutional. *See Misión Industrial de Puerto Rico, Inc. y Otros, Recurridos v. Junta de Planificación de Puerto Rico y Otros*, 146 D.P.R. 64 (1998); *Cerame-Vivas v. Secretario de Salud*, 99 D.P.R 45 (1970); *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 722 (1968). No tribunal has declared Joint Resolution 188 or Act 106 invalid. For Bondholders to argue that actions taken in conformity with those laws were fraudulent therefore strains credulity.

*Second*, Bondholders cannot explain how *ERS* could have acted with fraudulent intent when government employers no longer sending employer contributions to ERS. To the extent that act is viewed as a transfer *by ERS* of ERS's property (and it is not), any such transfer was at best an involuntary transfer as ERS has no control over what these other entities do with their funds. Unsurprisingly, the Bondholders cite no case law to support the proposition that an involuntary act can be made with any intent, much less a fraudulent one. *See, e.g., Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504, 1508-09 (1st Cir. 1987) (discussing three "paradigm[s]" of actual fraudulent conveyances, all of which require knowing, intentional acts by the transferor); *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 484 (4th Cir. 1992) ("actual fraudulent intent requires a *subjective* evaluation of the debtor's motive") (emphasis added); *In re Irving Tanning Co.*, 555 B.R. 70, 80 (Bankr. D. Me. 2016).

*Third*, Count II of the Bondholders proffered complaint rests in part on 31 L.P.R.A. § 3492(3), but that provision of the law plainly only applies to "Contracts subject to rescission" and subsection 3 allows for the rescission of "[t]hose [contracts] executed in fraud of creditors, when the latter cannot recover, in any other manner, what is due them." Bondholders do not cite any contract in their Motion or their proffered complaint that they claim was executed in fraud and so state no plausible basis for reliance on 31 L.P.R.A. § 3492.

15

* * *

Because the Bondholders have not established the predicates for either a section 549(a) or 544(b) claim, they cannot make the "substantial showing, both factual and legal, of the likelihood of the existence of a voidable transfer" that would justify appointment of a trustee. COLLIER ¶ 926.02[04]. Absent this showing, the FOMB was justified in refusing to bring the proposed avoidance actions. The Motion should be denied.

### C. If The Court Appoints A Trustee, It Should Not Appoint The Bondholders Or Any Individual Selected By The Bondholders.

Only a Title III debtor or section 926(a) trustee may bring avoidance actions in a Title III case. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6-7 (2000). The Bondholders give lip service to, but seek an end-run around, this requirement—they argue that *they* should be appointed as section 926(a) trustees because they are "the primary remaining stakeholders who still seek payment from ERS, and the Bondholders' motivation to zealously pursue this litigation will ensure that this Court benefits from proper adversarial testing of ERS's claims." (Motion at 23.) Alternatively, they ask the Court to appoint "an independent third-party fiduciary approved by the Bondholders as trustee." *Id.*

The Bondholders' attempt to usurp a trustee's authority flouts the self-evident purpose section 926(a). It seeks to elevate the Bondholders' interests and "work against the interest of all creditors generally," thereby "upset[ting] the delicate balance among competing interests that must be preserved for successful plan negotiation, formulation, and solicitation." COLLIER ¶ 926.02[1]. In any event, and as set forth above, the extent to which the Bondholders are truly the "primary remaining stakeholders" remains to be determined. Stakeholder treatment under the ERS and Commonwealth plans of adjustment is unknown and could very well shift the interest in pursuing avoidance litigation to other creditors. Thus, if the Court appoints a trustee, it should appoint an

independent third-party fiduciary not beholden to any particular creditor constituency and without
regard to Bondholder approval.

## CONCLUSION

For all of the foregoing reasons, the Retiree Committee respectfully requests that the Court
enter an Order denying the Motion in its entirety and granting such other relief as may be just.

Dated: November 26, 2019

| | |
|---|---|
| JENNER & BLOCK LLP | Respectfully submitted, |
| By:<br>*/s/ Robert Gordon*_____ | BENNAZAR, GARCÍA & MILIÁN, C.S.P. |
| Robert Gordon (admitted *pro hac vice*)<br>Richard Levin (admitted *pro hac vice*)<br>Carl Wedoff (admitted *pro hac vice*)<br>919 Third Ave<br>New York, NY 10022-3908<br>rgordon@jenner.com<br>rlevin@jenner.com<br>cwedoff@jenner.com<br>212-891-1600 (telephone)<br>212-891-1699 (facsimile) | By:<br>*/s/ A.J. Bennazar-Zequeira*_____<br>A.J. Bennazar-Zequeira<br>Héctor M. Mayol Kauffmann<br>Edificio Union Plaza<br>1701 Avenida Ponce de León #416<br>Hato Rey, San Juan, PR 00918<br>ajb@bennazar.org<br>hector.mayol@bennazar.org<br>787-754-9191 (telephone)<br>787-764-3101 (facsimile) |
| Catherine Steege (admitted *pro hac vice*)<br>Melissa Root (admitted *pro hac vice*)<br>Landon Raiford (admitted *pro hac vice*)<br>353 N. Clark Street<br>Chicago, IL 60654<br>csteege@jenner.com<br>mroot@jenner.com<br>lraiford@jenner.com<br>312-222-9350 (telephone)<br>312-239-5199 (facsimile) | *Counsel for The Official Committee of Retired<br>Employees of Puerto Rico* |