# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ————————————————————— ) | |
| In re: ) | |
| ) | PROMESA |
| ) | Title III |
| THE FINANCIAL OVERSIGHT AND ) | |
| MANAGEMENT BOARD FOR PUERTO RICO, ) | |
| ) | Case No. 3:17-bk-03283 (LTS) |
| as representative of ) | |
| ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| ————————————————————— X | |
| ) | |
| In re: ) | |
| ) | |
| ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO ) | |
| ) | Case No. 3:17-bk-03566 (LTS) |
| as representative of ) | |
| ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE ) | |
| GOVERNMENT OF THE COMMONWEALTH OF ) | |
| PUERTO RICO, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ---------------------------------------------------------------------- X | |

# REPLY IN SUPPORT OF
# RENEWED MOTION OF CERTAIN SECURED CREDITORS
# OF THE EMPLOYEES RETIREMENT SYSTEM OF THE
# GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
# <u>FOR APPOINTMENT AS TRUSTEES UNDER 11 U.S.C. § 926</u>

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.     SECTION 926 PERMITS A TITLE III COURT TO APPOINT A TRUSTEE
TO PURSUE AVOIDANCE ACTIONS ON BEHALF OF THE DEBTOR ................... 2

     A.     Sections 303 and 305 of PROMESA Do Not Bar the Court From
Appointing a Trustee Under 11 U.S.C. § 926 ................................................ 2

     B.     The Oversight Board Has a Profound and Unresolvable Conflict
Of Interest ..................................................................................................... 6

     C.     The ERS Bondholders Do Not Seek the Same Relief as in Other
Actions .......................................................................................................... 8

II.    ERS HAS MERITORIOUS CLAIMS AGAINST THE COMMONWEALTH
UNDER § 549 AND § 544 ........................................................................................ 10

     A.     A Trustee Could Avoid the Transfers Under § 549 ....................................... 10

     B.     A Trustee Could Avoid the Transfers Under § 544 ....................................... 13

III.   RESPONDENTS DO NOT DISPUTE THAT TIMELY APPOINTMENT
OF A TRUSTEE IS CRUCIAL ................................................................................. 15

CONCLUSION ................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*De Jesús Díaz v. Carrero*,
    No. R-82-76, 1982 WL 210626 (P.R. Apr. 21, 1982) ............................................14

*Francesca Records v. Geils Unlimited Research, LLC*,
    No. 12-11419-FDS, 2013 WL 3732876 (D. Mass. July 12, 2013)..........................9

*In re City of Detroit*,
    504 B.R. 191 (Bankr. E.D. Mich. 2013) ...................................................................3

*In re City of Stockton (Stockton I)*,
    478 B.R. 8 (Bankr. E.D. Cal. 2012)..........................................................................3

*In re City of Stockton (Stockton II)*,
    526 B.R. 35 (Bankr. E.D. Cal. 2015)...................................................................4, 11

*In re City of Vallejo*,
    403 B.R. 72 (Bankr. E.D. Cal. 2009)..................................................................3, 11

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    390 F. Supp. 3d 311 (D.P.R. 2019)......................................................................6, 7

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    899 F.3d 13 (1st Cir. 2018)................................................................................3, 12

*In re Gibson Grp., Inc.*,
    66 F.3d 1436 (6th Cir. 1995) ....................................................................................6

*In re Guillot*,
    250 B.R. 570 (Bankr. M.D. La. 2000) ....................................................................14

*In re Jefferson Cty., Ala.*,
    484 B.R. 427 (Bankr. N.D. Ala. 2012) ...................................................................12

*In re Kenny G. Enterprises, LLC*,
    512 B.R. 628 (C.D. Cal. 2014) ...............................................................................13

*In re N.Y. City Off-Track Betting Corp.*,
    434 B.R. 131 (Bankr. S.D.N.Y. 2010) ....................................................................14

*In re N.Y. City Off-Track Betting Corp.*,
    No. 09-17121(MG), 2011 WL 309594 (Bankr. S.D.N.Y. Jan. 25, 2011) .......................3, 5, 6

*In re Richmond Unified Sch. Dist.*,
    133 B.R. 221 (Bankr. N.D. Cal. 1991) .................................................................3, 7, 8

*In re Sanitary & Improvement Dist. No. 7*,
    96 B.R. 967 (Bankr. D. Neb. 1989) ........................................................................12

*In re Schwartz*,
    954 F.2d 569 (9th Cir. 1992) ............................................................................12, 13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Seminole Walls & Ceilings Corp.*,
   446 B.R. 572 (Bankr. M.D. Fla. 2011) ................................................................14

*In re Sepulveda Figueras*,
   193 B.R. 118 (Bankr. D.P.R. 1996) .....................................................................14

*In re Tougas*,
   338 B.R. 164 (Bankr. D. Mass. 2006) .................................................................10

*In re WHET, Inc.*,
   750 F.2d 149 (1st Cir. 1984) ..................................................................................6

*U.S. Fid. & Guar. Co. v. Guzmán*,
   Nos. 10-1078, 11-1415, 2012 WL 4790314 (D.P.R. Sept. 20, 2012).....................15

STATUTES

11 U.S.C. § 544 ..................................................................................... *passim*

11 U.S.C. § 549 ..................................................................................... *passim*

11 U.S.C. § 903 ...........................................................................................2, 3, 4, 7

11 U.S.C. § 904 ..................................................................................... *passim*

11 U.S.C. § 926 ..................................................................................... *passim*

48 U.S.C. § 2141 ......................................................................................13

48 U.S.C. § 2161 ..........................................................................7, 10, 13, 14

48 U.S.C. § 2163 ...................................................................................2, 11

48 U.S.C. § 2164 ...................................................................................6, 13

48 U.S.C. § 2165 ....................................................................................2, 5

31 L.P.R.A. § 3028 ..............................................................................13, 15

31 L.P.R.A. § 3492 ........................................................................13, 14, 15

OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019)...................................................11

Collier on Bankruptcy ¶ 926.02 (16th ed. rev. 2019) ...............................6

Fed. R. Civ. P. 12 .......................................................................................9

Clayton P. Gillette & David A. Skeel, Jr.,
   *Governance Reform and the Judicial Role in Municipal Bankruptcy*,
   125 Yale L.J. 1150 (2016) ..................................................................................4

S. Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 ..................8

The ERS Bondholders submit this reply in support of the *Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926* [Dkt. No. 704] (the "Motion"), and in response to the *Objection of the Financial Oversight and Management Board for Puerto Rico* [Dkt. No. 727], the *Objection of AAFAF* [Dkt. No. 726], and the *Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico* [Dkt. No. 728].

## PRELIMINARY STATEMENT

Section 926 of the Bankruptcy Code permits the Court to appoint a trustee to pursue avoidance claims that the debtor has refused to enforce. Those are precisely the circumstances of this case. The Oversight Board, which itself orchestrated the Post-Petition Legislation purporting to dismantle ERS and transfer all of ERS's assets to the Commonwealth, has unsurprisingly refused to pursue claims to avoid those transfers and recover the value for ERS and its creditors. Yet Respondents incorrectly argue that the Court may not appoint a § 926 trustee to do so.

*First*, Respondents argue that PROMESA §§ 303 and 305 categorically bar the appointment of a § 926 trustee, and that a trustee is unnecessary anyway because there is no conflict of interest and the Bondholders have elsewhere challenged the Post-Petition Legislation. These arguments fail. Sections 303 and 305 do not limit the Court's ability to appoint a § 926 trustee, and neither the Commonwealth nor ERS has exercised any power under §§ 303 and 305 with respect to the Post-Petition Legislation. The appointment of a § 926 trustee to pursue avoidance claims is necessary because the Oversight Board, which is deeply conflicted, has refused to bring such claims, and those claims would not duplicate the Bondholders' other actions.

*Second*, Respondents argue in conclusory fashion that the Bondholders have not identified any meritorious claims that a § 926 trustee could pursue on behalf of ERS. This, too, is plainly wrong. The Motion established that a trustee could bring causes of action under § 549 and § 544

of the Bankruptcy Code to avoid the transfer of ERS's property. Respondents contend that any § 549 claim would fail because the relevant transfers of ERS's property were authorized by PROMESA, and they argue that any § 544 claim also would fail because the transfers occurred post-petition and do not violate Puerto Rico fraudulent transfer law. But those arguments have no grounding in PROMESA or Puerto Rico law. Instead, they reflect the profound conflicts that have led the Oversight Board to refuse to pursue two valid claims on behalf of ERS.

## ARGUMENT

I.   **SECTION 926 PERMITS A TITLE III COURT TO APPOINT A TRUSTEE TO PURSUE AVOIDANCE ACTIONS ON BEHALF OF THE DEBTOR.**

   A.   **Sections 303 and 305 of PROMESA Do Not Bar the Court From Appointing a Trustee Under 11 U.S.C. § 926.**

Section 926(a) permits a court "on request of a creditor" to appoint a trustee to pursue an avoidance action that the debtor has "refuse[d]" to pursue. 11 U.S.C. § 926(a); Motion 11–12. Respondents argue that the appointment of a § 926 trustee would interfere with (a) the Commonwealth's "political or governmental powers" under PROMESA § 303, and (b) ERS's "political or governmental powers" and right to control its property under PROMESA § 305.[1] *See* FOMB Obj. 12–13; AAFAF Obj. 2–9; *see also* 48 U.S.C. §§ 2163, 2165. Respondents are wrong: §§ 303 and 305 cannot bar the appointment of a § 926 trustee and, even if they could, neither the Commonwealth nor ERS has exercised any power under §§ 303 and 305 with respect to the Post-Petition Legislation.

---

[1] Section 305, modeled on 11 U.S.C. § 904, provides: "Subject to the limitations set forth in [Titles I and II of PROMESA], notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with (1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-producing property." 48 U.S.C. § 2165. Section 303, based on 11 U.S.C. § 903, provides: "Subject to the limitations set forth in [Titles I and II of PROMESA], [Title III] does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality . . . ." 48 U.S.C. § 2163.

PROMESA § 303, based on 11 U.S.C. § 903, "does not provide an independent substantive limit on the application of chapter 9 provisions." *In re City of Vallejo*, 403 B.R. 72, 75 (Bankr. E.D. Cal. 2009); *see also* 6 Collier on Bankruptcy ¶ 903.01 (16th ed. rev. 2019). Once a Chapter 9 petition has been filed, a municipality "cannot rely on the § 903 reservation of state power to condition or to qualify, i.e. to 'cherry pick,' the application of the Bankruptcy Code provisions that apply." *In re City of Stockton (Stockton I)*, 478 B.R. 8, 16 (Bankr. E.D. Cal. 2012); *see id.* at 22; *In re City of Detroit*, 504 B.R. 191, 255 (Bankr. E.D. Mich. 2013) ("If the state consents to a municipal bankruptcy, it consents to the application of chapter 9 of the bankruptcy code.").

PROMESA § 305, based on 11 U.S.C. § 904, likewise does not bar the appointment of a trustee under § 926 to pursue avoidance claims that the debtor refuses to pursue. *See In re Richmond Unified Sch. Dist.*, 133 B.R. 221, 225 & n.5 (Bankr. N.D. Cal. 1991) (noting that "[t]he court may appoint a trustee pursuant to section 926 for the limited purpose of prosecuting avoidance actions" in recounting the limitations § 904 places on the court). Any reading of § 305 to categorically bar the appointment of a trustee without the debtor's consent would eviscerate § 926 and render PROMESA's deliberate incorporation of the provision "mere surplusage" because § 926 "explicitly anticipates and is intended to address those scenarios in which the debtor does not consent to the pursuit of" an avoidance action. *In re N.Y. City Off-Track Betting Corp.*, No. 09-17121(MG), 2011 WL 309594, at *6 (Bankr. S.D.N.Y. Jan. 25, 2011). Indeed, the First Circuit has rejected a reading of PROMESA § 305 that would "effectively eliminate" a provision intended "to protect the creditor when protection is needed, which is customarily when the debtor is not obliging." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 899 F.3d 13, 19, 20 & n.3, 21 (1st Cir. 2018). As bankruptcy expert (and Oversight Board member) David A. Skeel, Jr. has written, "notwithstanding § 904, the court is still entitled to appoint a trustee to exercise . . . avoidance

powers if the municipality refuses to do so." Clayton P. Gillette & David A. Skeel, Jr., *Governance Reform and the Judicial Role in Municipal Bankruptcy*, 125 Yale L.J. 1150, 1203 (2016) (internal quotation marks omitted).

Even if §§ 303 and 305 could limit a court's ability to appoint a § 926 trustee, they would not do so here because the Commonwealth and ERS did not exercise any relevant powers with respect to the Post-Petition Legislation. *First*, neither the Commonwealth nor ERS has exercised any "political or governmental powers" within the meaning of §§ 303 and 305. Such political and governmental powers encompass "basic matters of the organization and operation of government that are incidents of sovereignty, but do not extend to financial relations between the state and its municipalities." *In re City of Stockton (Stockton II)*, 526 B.R. 35, 54 (Bankr. E.D. Cal. 2015) (interpreting §§ 903 and 904).[2] If "political or governmental powers" included control over "property or revenues," Congress would not have "need[ed] to be specific in § 904(2) about 'property or revenues'" or in § 904(3) about "'use or enjoyment' of income-producing property." *Id.* at 52. As the Board has argued, "Congress clearly sees the political and governmental powers . . . as separate from powers over the property or revenues of the debtor. . . . [P]ower over the property and the revenues and the income-producing property . . . is different from the powers that were safeguarded to the Commonwealth . . . ." Tr. of Nov. 13, 2017, Hrg. at 12–13, *In re Puerto Rico Electric Power Authority*, No. 17-bk-4780. Because the "political or governmental powers" under §§ 303 and 305 do not encompass creditor-debtor relations (and here, there is no question that the Commonwealth was the single largest obligor of employer contributions owed to ERS) or the Commonwealth's financial relations with its instrumentalities, they cannot apply to the Post-

---

[2] The concept of "political or governmental powers" appears in §§ 303 and 305 and their Chapter 9 models, 11 U.S.C. §§ 903 and 904, and thus draws its meaning from both pairs of provisions. *See Stockton II*, 526 B.R. at 53.

Petition Legislation, the purpose and effect of which was to adjust the Commonwealth's financial relationship with the ERS.

*Second*, appointing a trustee under § 926 could not interfere with ERS's political and governmental powers under § 305 for the simple reason that ERS did not exercise *any* power when the Oversight Board and the Commonwealth seized ERS's property and transferred it to the Commonwealth. Because ERS had no choice but to comply with the Post-Petition Legislation, the transfer of its property was by definition involuntary. Thus, appointing a § 926 trustee would not interfere with ERS's control over its "property or revenues," 48 U.S.C. § 2165(a)(2), because ERS had no such control over its property when the Oversight Board and the Commonwealth confiscated that property and transferred it to the Commonwealth. Avoiding the transfer would simply restore ERS's control over its property.[3]

*Third*, AAFAF's reliance on *In re New York City Off-Track Betting Corp*. is misplaced. AAFAF Obj. 7–9. There, the bankruptcy court recognized that it *could* appoint a § 926 trustee despite § 904 and rejected the precise argument advanced here. *In re N.Y. City Off-Track Betting Corp.*, 2011 WL 309594, at *6 (holding such argument "erroneous" and noting that the debtor's "contention that section 904 prohibits a court from appointing a trustee without the consent of the debtor renders section 926 mere surplusage"). It nonetheless declined to appoint a § 926 trustee in dicta, in part because it was dismissing the case and the creditors could pursue their fraudulent conveyance claims in state court. *Id.* at *4.[4]

---

[3] ERS has admitted that it did not participate in the drafting of the Post-Petition Legislation, Sooknanan Decl., Ex. A (Collazo Dep. Tr., 88–89, 109 (June 4, 2019)), and that AAFAF directed ERS to liquidate its investments, *id.* (Collazo Dep. Tr., 119–20 (June 4, 2019)).

[4] Although the court also raised concerns because the contested payments were made pursuant to a pre-petition state law, *id.*, that state law was very different from the Post-Petition Legislation. For one, it was enacted

## B.      The Oversight Board Has a Profound and Unresolvable Conflict Of Interest.

A court has the power to appoint a trustee whenever a debtor refuses to pursue a valid avoidance action, 11 U.S.C. § 926(a), but a conflict of interest provides a particularly compelling reason to do so, *see In re N.Y. City Off-Track Betting Corp.*, 2011 WL 309594, at *6; *In re Gibson Grp., Inc.*, 66 F.3d 1436, 1441 (6th Cir. 1995); *see also* Collier on Bankruptcy ¶ 926.02 (16th ed. rev. 2019).[5] The Oversight Board's conflict is manifest in its refusal to treat ERS as the independent entity that both Puerto Rico law and PROMESA recognize it to be. *See* Motion 5; 48 U.S.C. § 2164(f). In refusing to pursue avoidance claims on ERS's behalf, the Board has ignored the interests of ERS and the creditors to whom ERS owes a fiduciary duty. *See In re WHET, Inc.*, 750 F.2d 149, 149 (1st Cir. 1984) (per curiam) (trustee "owes a fiduciary duty to debtor and creditors alike to act fairly and protect their interests"). The Oversight Board admits that it supported the Post-Petition Legislation that dismantled ERS by seizing its assets and ordering the dissolution of its Board of Trustees. *See* FOMB Obj. 16–17.[6] Its conflict could not be more clear.

The Oversight Board suggests that it cannot be conflicted based on its "Congressionally-ordained role as representative of both ERS and the Commonwealth." FOMB Obj. 16. But

---

[5] nearly forty years before the debtor filed for bankruptcy and its purpose was to regulate horserace betting in New York. *See* The N.Y. Racing Ass'n., Inc.'s Obj., *In re N.Y. City Off-Track Betting Corp.*, 2011 WL 13260767, ¶ 10 (Bankr. S.D.N.Y. Jan. 12, 2011). The Post-Petition Legislation, in contrast, directly and deliberately restructured the Commonwealth's financial relationship with the ERS *after* ERS filed for bankruptcy. A law that restructures creditor-debtor relations during the pendency of a Title III proceeding does not raise the same federalism concerns as a forty-year-old law that exercises the state's police powers. *Id.* ¶ 10 n.1. And for the reasons discussed above, the court's concerns about the debtor's § 904 powers do not apply here. ERS did not exercise any political or governmental powers or have control over its property and revenues.

[5] The Retiree Committee misunderstands the purpose of § 926 when it suggests that the appointment of a trustee under § 926 must be "in the best interests of *all* ERS stakeholders." Ret. Committee Obj. 1–2. Section 926 comes into play exactly when stakeholders' interests are in conflict because the debtor favors certain interests over others. *See* 6 Collier on Bankruptcy ¶ 926.02 ("The reason for section 926(a) derives from the possible reluctance of a debtor to bring an action against one of its creditors during the course of a chapter 9 case," because the debtor is unwilling, "while it is attempting to negotiate a plan, to antagonize its creditors.").

[6] Indeed, in other litigation involving the parties, the Oversight Board broadly invoked privilege to prevent the Bondholders from learning the details of its conduct. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 390 F. Supp. 3d 311, 315 (D.P.R. 2019).

Congress clearly concluded otherwise when it incorporated § 926 into PROMESA and explained

that the term "trustee" in § 926 did not mean the Oversight Board. 48 U.S.C.A. §§ 2161(a), (c)(7).

If it were impossible for the Oversight Board to be conflicted, Congress would not have needed to

provide for the appointment of a different trustee.

Respondents claim that this Court has already held that there is no conflict between the

Commonwealth and ERS. FOMB Obj. 17; AAFAF Obj. 10–11. That is incorrect. In determining

whether the deliberative process privilege applied to certain documents, this Court and Magistrate

Judge Dein found only that ERS and the Commonwealth shared a common interest in effective

pension reform. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 390 F. Supp. 3d 311, 322, 327 (D.P.R.

2019). A single shared interest sufficient to avoid a waiver of the attorney-client privilege and

work product doctrine does not obviate all other conflicts. As this Court recognized in the very

same order, "ERS and the Commonwealth may be adverse in some respects," *id.* at 327, and their

interests "may not always be aligned," *id.* at 322. It is obvious that there is a *per se* conflict between

ERS's interest in protecting its property from confiscation by the Commonwealth and the

Commonwealth's interest in taking away the very same property.

Respondents' other arguments are no better. Respondents rely on *In re Richmond Unified

School District*, 133 B.R. 221 (Bankr. N.D. Cal. 1991), to argue that a conflict of interest is not

grounds for appointment of a § 926 trustee. FOMB Obj. 16; AAFAF Obj. 11. But that case does

not stand for that proposition and is readily distinguishable. There, the court held that a municipal

debtor's request to dismiss its own Chapter 9 case was cause for dismissal. *In re Richmond Unified

Sch. Dist.*, 133 B.R. at 224. Creditors objected to the requested dismissal on the ground that the

debtor was controlled by an allegedly conflicted State. *Id.* at 223. But the court held that it would

be inconsistent with §§ 903 and 904 of the Bankruptcy Code and in any event pointless to keep a

municipality, which had agreed to the state control, in Chapter 9 against its will and the will of the

State, particularly where the State would retain control of the debtor whether or not the case was

dismissed. *Id.* at 225–26. While an alleged conflict of interest may not override a debtor's decision

to dismiss its Chapter 9 case, it certainly is relevant to why the debtor refuses to bring an avoidance

action.[7] Congress believed § 926 to be necessary because a municipal debtor might refuse to bring

an avoidance action due to "political pressure or desire for future good relations with a particular

creditor." S. Rep. No. 95–989, at 111 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5897. Further,

Congress thought it would be "awkward" if an official that authorized a payment was then charged

to recover such payment in bankruptcy. *Id*. The conflict of interest here goes above and beyond

the political pressure, hope for good relations, or awkwardness that concerned Congress.

Finally, the Oversight Board attempts to distinguish the Commonwealth-COFINA dispute

on the ground that the Oversight Board maintained neutrality in that dispute. FOMB Obj. 17–18.

But in doing so, the Board emphasized that it was important for there to be an opportunity to "fully

advocate, at arm's length, on behalf of each Debtor to reach a fair resolution." *Mot. of Debtors for*

*Order Approving Procedure to Resolve Commonwealth-COFINA Dispute*, No. 17-3283, ECF No.

303, at 13, ¶ 34. More importantly, it is troubling that the Oversight Board appears to believe that,

when it decides to become partisan, there is *less* rather than *more* of a need for an independent

trustee. But whatever the Oversight Board thinks, Congress incorporated § 926 into PROMESA

to provide for the appointment of such a trustee in exactly the circumstances of this case.

### C.    The ERS Bondholders Do Not Seek the Same Relief as in Other Actions.

Respondents contend that because the ERS Bondholders have asserted secured claims

against the Commonwealth in other actions, they may not ask the court to appoint a § 926 trustee

---

[7] The case did not address § 926 at all, other than to note that § 926 was not subject to § 904. *Id.* at 225 n.5.

to avoid the transfer of ERS's property to the Commonwealth. FOMB Obj. 13–15; Ret. Committee

Obj. 12–13. But the relief provided under an avoidance claim is different than the relief that would

be provided by other actions.[8] "[I]t is entirely permissible for a party to pursue multiple theories

of relief." *Francesca Records v. Geils Unlimited Research, LLC*, No. 12-11419-FDS, 2013 WL

3732876, at *3 (D. Mass. July 12, 2013). Here, the ERS Bondholders do not seek a declaration

that they have secured claims, nor do they seek the distribution of ERS's assets. They seek only

the appointment of a trustee to pursue avoidance claims with respect to the post-petition transfer

of ERS's property to the Commonwealth, so that property will be returned to ERS.

The Retiree Committee suggests that any avoidance claim would be "futile" because

(1) $190.48 million of ERS property is being held pending a resolution of the Bondholders' claim

to the funds; and (2) the funds will be released "should the Court rule that the Bondholders hold a

lien on those funds that is not subject to avoidance and is allowed." Ret. Committee Obj. 12–13;

*see also* FOMB Obj. 14. But a successful avoidance claim will hardly be futile. For one, far more

than $190.48 million is at stake in any avoidance action; the Post-Petition Legislation transferred

additional property, including ERS's revenues and its right to receive revenues, to the

Commonwealth. Moreover, the multiple conditions and contingencies contained in the Retiree

Committee's own description is telling. The ERS Bondholders can hardly be expected at this stage

---

[8] To be clear, the Motion does not seek derivative standing to pursue a stay violation, and a finding that the Post-Petition Legislation violated the automatic stay is not necessary to pursue any avoidance claim. FOMB Obj. 15 n.8, 19–20. In any case, the Post-Petition Legislation is not exempt from the automatic stay because § 362(b)(4) does not encompass legislation, let alone legislation with a primarily pecuniary purpose. *See Pls.' Br. in Opp. to Dfs.' Mot. to Dismiss*, Case No. 17-219, ECF No. 50, at 31–35. Moreover, the Oversight Board, which has continuously argued that the ERS Bondholders do not have standing to even bring a claim contesting violation of the automatic stay, *see Mot. to Dismiss Pls.' Am. and Supplemented Compl. Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)*, Case No. 17-219, ECF No. 41, at 15–16; FOMB Obj. 15 n.8, cannot now argue that the Bondholders cannot seek the appointment of a § 926 trustee to pursue avoidance claims because the Bondholders are also pursuing a stay violation claim.

to assume, far less to take another litigant's word for it, that their funds will eventually be released pursuant to their liens. And whether or not the ERS Bondholders have a secured interest in the transferred property is beside the point. In any scenario, the Bondholders will still have an interest in having the property in question returned to ERS.[9]

## II.   ERS HAS MERITORIOUS CLAIMS AGAINST THE COMMONWEALTH UNDER § 549 AND § 544.

### A.   A Trustee Could Avoid the Transfers Under § 549.

To establish a § 549(a) claim, the trustee must allege that (1) property of the debtor (2) was transferred (3) after commencement of the case, and that (4) the transfer was "not authorized under this title or by the court." 11 U.S.C. § 549(a); *see also In re Tougas*, 338 B.R. 164, 177–78 (Bankr. D. Mass. 2006). In the context of PROMESA, "this title" refers to Title III. *See* 48 U.S.C. § 2161(d) ("[A] reference to 'this title' . . . in a section of Title 11 made applicable in a case under [Title III] . . . shall be deemed to be a reference to [Title III]."). Section 549(a)'s requirements are easily met here. *See* Motion 12–14. ERS's property was transferred to the Commonwealth by way of the Post-Petition Legislation; that legislation and the resulting transfers took place after the filing of ERS's Title III petition on May 21, 2017; and the transfers were not authorized by Title III or this Court. Motion 13–14. Respondents' arguments to the contrary are unavailing.

*First*, the Retiree Committee spends pages arguing that the Bondholders "have failed to allege the existence of any transfers of [ERS] property," Ret. Committee Obj. 7–9, before

---

[9] The Retiree Committee's cases in support of its futility argument are inapposite. Ret. Committee Obj. 13 (citing *Jubber v. Bank of Utah (In re C.W. Mining Co.)*, 749 F.3d 895, 899 (10th Cir. 2014); *Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*, 375 F.3d 51, 71 (1st Cir. 2004)). In those cases, the courts determined that it would be a futile exercise to avoid post-petition transfers because the transferees, as secured creditors, had a right to the funds that were already in their possession. There was therefore no point in taking the funds from the transferees, returning them to the debtors, only to turn around and return them to the transferees. The parallel here would be an argument that avoiding the transfer of ERS's property to the Commonwealth would be futile because the Commonwealth has a secured claim to the property. Respondents have not made that argument because no such claim exists.

10

admitting that "ERS did in fact transfer $190.48 million" to the Commonwealth, *id.* at 12. Although it is clear that the Post-Petition Legislation constituted "transfers" from ERS to the Commonwealth, that issue can be litigated at a later stage in any avoidance action. The only question before the court now is whether a trustee could make out an avoidance claim. By conceding that at least $190.48 million was transferred post-petition from ERS to the Commonwealth, Respondents admit the first two requirements of a § 549(a) claim.

*Second*, Respondents contend that any transfer of ERS funds to the Commonwealth was authorized. According to Respondents, because a court is precluded from interfering with the Commonwealth's and ERS's governmental and political powers under §§ 303 and 305, or with ERS's control of its property under § 305, Title III itself "authorized" the transfer of ERS's funds to the Commonwealth. FOMB Obj. 19; AAFAF Obj. 9–10; Ret. Committee Obj. 10–12. But as discussed above, ERS did not exercise *any* power under § 305 because the transfer of its property was involuntary. *See supra* Part I.A. And the Commonwealth did not exercise any political or governmental powers because those powers do not encompass creditor-debtor relations or the Commonwealth's financial relations with its instrumentalities, *see Stockton II*, 526 B.R. at 54, and § 303 does not provide an independent substantive limit on other provisions of PROMESA, *see In re City of Vallejo*, 403 B.R. at 75. *See supra* Part I.A.

Moreover, the mere existence of §§ 303 or 305 powers does not mean that Title III somehow "authorized" the Post-Petition Legislation. To "authorize" means to "give legal authority; to empower" or to "formally approve; to sanction." Authorize, Black's Law Dictionary (11th ed. 2019). "Authorization," in other words, requires affirmative endorsement. Sections 303 and 305 do not provide affirmative endorsement for any covered acts. The provisions simply limit the power of federal bankruptcy law to interfere with those acts. *See* 48 U.S.C. §§ 2163 ("this

subchapter does not limit or impair the power of a covered territory"), 2165 ("the court may not . . . interfere with" certain powers of the debtor). Federal authorization would be irrelevant because the power to perform those acts has been reserved to the Commonwealth and its subdivisions. *See In re Jefferson Cty., Ala.*, 484 B.R. 427, 463 (Bankr. N.D. Ala. 2012). Sections 303 and 305 provide for the *absence of* federal bankruptcy law, not for *authorization by* federal bankruptcy law.

*Third*, Respondents point to a single federal bankruptcy court that, in dicta, stated that § 904 authorizes "any use of debtor's property *by debtor.*" *See In re Sanitary & Improvement Dist. No. 7*, 96 B.R. 967, 972 (Bankr. D. Neb. 1989) (emphasis added). That case involved a voluntary transfer by the debtor, which means that § 904 was potentially in play, unlike in the present case. But the case was nonetheless wrong in its reasoning. Reading PROMESA § 305 to authorize any voluntary transfer by a debtor would render PROMESA's incorporation of § 549(a) nearly superfluous. "In most circumstances, section 549 applies to transfers in which the debtor is a willing participant." *In re Schwartz*, 954 F.2d 569, 574 (9th Cir. 1992). If every time the debtor was a willing participant, the transfer was authorized by § 904, § 549(a) would have no effect. Such a reading of § 305 is therefore too broad. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 899 F.3d at 19, 20 & n.3. However, even under the reasoning of *Sanitary & Improvement District No. 7*, § 549(a) would still be operative with respect to an involuntary transfer, which occurred here.

*Finally*, the Retiree Committee alone argues that any transfer of ERS funds to the Commonwealth was authorized by PROMESA § 201(b)(1)(C).[10] Ret. Committee Obj. 10. But

---

[10] The Oversight Board also appears to suggest that if the transfers are exempt from the automatic stay, they are authorized by PROMESA. FOMB Obj. 19. As discussed above, the transfers are not exempt from the automatic stay. *See supra* Part I.C. But even assuming that the transfers did not violate the automatic stay, that fact alone does not mean they are authorized by PROMESA. One of the primary purposes of § 549(a) is to provide recourse for creditors when a debtor voluntarily initiates a transfer—even if such a transfer does not violate the automatic stay. *See*

§ 201(b)(1)(C) is found in PROMESA Title II and is irrelevant to whether the transfer was authorized by PROMESA Title III. *See* 11 U.S.C. § 549(a); 48 U.S.C. § 2161(d).[11]

## B.    A Trustee Could Avoid the Transfers Under § 544.

Section 544(b)(1) provides that a "trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an [allowable] unsecured claim." In this case, the "applicable law" is Puerto Rico fraudulent transfer law. *See* 31 L.P.R.A. §§ 3028, 3492. The Post-Petition Legislation was a fraudulent transfer under Puerto Rico law because ERS received no or inadequate compensation for the transfers and the transfers were executed by an insider of ERS to avoid ERS's obligations to its bondholders, leaving ERS insolvent. Motion 14–15. Respondents do not refute these arguments.

*First*, the Retiree Committee claims that § 544(b)(1) permits recovery only in cases involving *pre*-petition transfers. But nothing in the plain language of § 544(b)(1), as incorporated into PROMESA, imposes a requirement that the voidable transfer take place pre-petition. Because in Chapter 11, property of the debtor transmutes into property of the estate once a petition is filed, courts have pointed to § 544's reference to "an interest of the debtor" as evidence that Congress intended the provision to apply pre-petition. *See, e.g.*, *In re Kenny G. Enterprises, LLC*, 512 B.R. 628, 633 (C.D. Cal. 2014). But any temporal distinction that could be read into "interest of the debtor" does not apply in the case of PROMESA and Chapter 9, where there is no estate and so

---

*In re Schwartz*, 954 F.2d at 574 ("Section 362's automatic stay does not apply to sales or transfers of property initiated by the debtor. Thus, § 549 has a purpose in bankruptcy beyond the potential overlap with section 362."). Section 549(a) would be stripped of that purpose if a transfer that did not violate the automatic stay was automatically "authorized" by the Bankruptcy Code.

[11] In any case, § 201(b)(1)(C) does not empower the Oversight Board to transfer funds from one debtor to another; it simply mandates that the Oversight Board ensure that any fiscal plans "provide adequate funding for public pension systems." 48 U.S.C. § 2141(b)(1)(C). Indeed, the same statutory provision incorporates limitations on that mandate, including a directive that the Oversight Board ensure that "assets, funds, or resources" of debtors like ERS are not "transferred to, or otherwise used for the benefit of" the Commonwealth. *Id.* § 2141(b)(1)(M). PROMESA also makes clear that "nothing in [Title III] shall be construed as authorizing substantive consolidation of the cases of affiliated debtors." *Id.* § 2164(f).

the property remains that of the debtor both before and after the petition. *See* 48 U.S.C. § 2161(c)(5) (defining "property of the estate" as "property of the debtor"); *see also In re N.Y. City Off-Track Betting Corp.*, 434 B.R. 131, 142 (Bankr. S.D.N.Y. 2010). The Retiree Committee does not even attempt to address those cases in which courts concluded that § 544 applied to post-petition transfers. *See In re Seminole Walls & Ceilings Corp.*, 446 B.R. 572, 592–93 (Bankr. M.D. Fla. 2011); *In re Guillot*, 250 B.R. 570, 601 (Bankr. M.D. La. 2000).

*Second*, the Oversight Board claims that ERS received adequate compensation for the transfer. FOMB Obj. 18. This is obviously false. The Oversight Board and the Commonwealth transferred all or substantially all of ERS's property to the Commonwealth without assuming all of ERS's obligations, in particular ERS's significant obligations to its bondholders.

*Third*, the Retiree Committee argues in conclusory fashion, and without citation to a single case, that Puerto Rico fraudulent transfer law requires the Bondholders to show that ERS acted with actual intent to defraud them. Ret. Committee Obj. 14. This is incorrect. Puerto Rico fraudulent transfer law does not require actual intent; it is enough that a debtor "knew of the results of his action." *In re Sepulveda Figueras*, 193 B.R. 118, 120–21 (Bankr. D.P.R. 1996); *see also De Jesús Díaz v. Carrero*, No. R-82-76, 1982 WL 210626 (P.R. Apr. 21, 1982) ("[F]raud does not require evidence of the purpose or aim of the debtor to harm his creditors, it suffices to show that he knew about the results produced."). Because intent is not a requirement of Puerto Rico fraudulent transfer law, it does not matter whether ERS acted with intent to defraud or intent to comply with the Post-Petition Legislation. So long as ERS "knew" that the transfers would harm its creditors, the transfers should be rescinded.

*Fourth*, the Retiree Committee claims that § 3492(3) applies to the rescission of contracts alone. Ret. Committee Obj. 15. Under Puerto Rico law, however, creditors may "impugn the acts

14

which the debtor may have performed in fraud of their right." 31 L.P.R.A. § 3028. Such actions to rescind are then "evaluated with reference to the principles of contract law derived from" Puerto Rico Civil Code, such as § 3492(3). *U.S. Fid. & Guar. Co. v. Guzmán*, Nos. 10-1078 (FAB/MEL), 11-1415 (FAB/MEL), 2012 WL 4790314, at *6 (D.P.R. Sept. 20, 2012). The Bondholders need not allege a contract to make out a claim for fraudulent transfer under Puerto Rico law.

## III. RESPONDENTS DO NOT DISPUTE THAT TIMELY APPOINTMENT OF A TRUSTEE IS CRUCIAL.

Respondents do not contest that the timely appointment of a trustee is crucial. This is unsurprising, since only a few months remain for an appointed trustee to bring such actions under the Tolling Stipulation, and any delay related to the adjudication of this motion (including any appeals thereof) will only further reduce the time available to a trustee to file a complaint. Motion 22–23. In addition, Respondents do not take issue with the Bondholders' request that, if the Court appoints an independent third-party fiduciary as § 926 trustee rather than the Bondholders themselves, the Court should require ERS to pay the fees and expenses incurred by that individual and the professionals the trustee engages in connection with his or her work. Motion 11.

## CONCLUSION

The Bondholders respectfully request that the Court enter an order appointing them trustees to pursue the claims set forth in the proposed Complaint on behalf of ERS and against the Commonwealth, and any further relief as the Court may deem proper. In the alternative, the Bondholders request that the Court enter an order appointing a trustee approved by the Bondholders, such as Bettina M. Whyte, whose fees and expenses shall be borne by ERS, to pursue the claims set forth in the proposed Complaint on behalf of ERS and against the Commonwealth.

In San Juan, Puerto Rico, today December 3, 2019.
By:

/s/ Alfredo Fernández-Martínez
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
P.O. Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511


Isel M. Perez (*pro hac vice*)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Tel. (305) 714-9700
Fax: (305) 714-9799
iperez@jonesday.com

/s/ Bruce Bennett
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street,  Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (pro hac vice)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com

*Counsel for Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.*

/s/ *Alicia I. Lavergne-Ramírez*

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-
Ramírez USDC-PR
215112
alavergne@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ *John K. Cunningham*

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
Jesse L. Green (*pro hac vice*)
Cheryl T. Sloane (pro hac vice)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund II, Inc., Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*