# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors. | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>   as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>   Debtor. | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03566 (LTS) |

**DECLARATION OF SPARKLE L. SOOKNANAN
IN SUPPORT OF REPLY IN SUPPORT OF
RENEWED MOTION OF CERTAIN SECURED CREDITORS
OF THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
<u>FOR APPOINTMENT AS TRUSTEES UNDER 11 U.S.C. § 926</u>**

I, Sparkle L. Sooknanan, hereby declare under penalty of perjury:

1.  I am an associate at the law firm of Jones Day, located at 51 Louisiana Avenue, N.W., Washington, D.C. 20001. I am a member in good standing of the Bars of the State of New York and the District of Columbia and admitted *pro hac vice* in this matter. There are no disciplinary proceedings pending against me. I submit this declaration in support of the ERS Bondholders[1] *Reply in Support of Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926*. I have personal knowledge of the matters stated herein. If called as a witness in this action, I could and would testify competently to the contents of this declaration.

2.  Attached as <u>Exhibit A</u> hereto is a true and correct copy of excerpts of the deposition transcript of Mr. Luis Collazo Rodriguez, dated June 4, 2019.

Dated: December 3, 2019     */s/ Sparkle L. Sooknanan*
Washington, D.C.     Sparkle L. Sooknanan

---

[1] The ERS Bondholders include Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc. Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P. Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps X Holdco Ltd.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

In re:
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
              as representative of
THE COMMONWEALTH OF PUERTO RICO, et al.
              Debtor,
_____

In re:
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO
              as representative of
THE EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO,
              Debtor.


Two Vesey Street
New York, New York
June 4, 2019 - 9:36 A.M.


   EXAMINATION BEFORE TRIAL of LUIS COLLAZO RODRIGUEZ, the Witness herein, taken by the attorneys for the respective parties, pursuant to Notice, held at the above-stated time and place, before Melissa Leonetti, RPR, a Notary Public of the State of New York.



87

1              L. COLLAZO
2     as before.
3          Exclude privileged discussions.
4     A.   No.  We weren't aware before this
5  resolution 188, no.
6     Q.   Because your attorney interposed an
7  objection, I want to make sure I'm clear.
8          Are you saying that you're not aware at
9  all or you're unable to answer consistent with
10 your attorney's objection?
11    A.   I'm sorry.  Any knowledge about --
12    Q.   So I want -- what I'm trying to ask is
13 whether ERS knew before Joint Resolution 188 was
14 passed that a final decision had been made that the
15 Pay-Go fees would be held into an account held by
16 the Treasury Department instead of ERS?
17    A.   No, we weren't aware of that final
18 decision.
19    Q.   When did ERS become aware of a decision,
20 a final decision, that Pay-Go fees would be paid
21 into an account held by the Treasury Department
22 instead of an account held by the ERS?
23         MR. POCHA:  Objection to the form.
24    A.   Well, a final decision was made about
25 this after the passing of the law 106.217.  We did

88

1  L. COLLAZO
2  know there were some considerations, and we were
3  looking to analyze this issue, but when it's finally
4  approved. It's with the Law 106 from the year 2017.
5      Q.   What was ERS' understanding of why the
6  decision was made to pay Pay-Go fees held by the
7  Treasury Department instead of an account at held by
8  the ERS?
9           MR. POCHA: Objection. Privilege.
10          I'm instructing you not to disclose
11      attorney/client privilege or process
12      privilege.
13     A.   It's impossible to answer that question
14 without having exposed some type of privilege that
15 was already discussed. Deliberative process was
16 already discussed.
17     Q.   I'm handing you a copy of Exhibit 8 that
18 was marked last week. The first few pages are an
19 English translation of Joint Resolution 188, and
20 then the Spanish version is attached in the last
21 several pages.
22     A.   Yes.
23     Q.   Based on -- well, let me just ask: Was
24 ERS involved in the drafting of Joint Resolution
25 188?

89

1 L. COLLAZO
2     A.    We did not participate.
3     Q.    Did ERS review any drafts of Joint
4 Resolution 188?
5     A.    We did not participate.
6     Q.    You understand that Joint Resolution 188,
7 one of the effects was to eliminate employer
8 contributions to ERS, correct?
9         MR. POCHA:  Objection.  The law speaks
10     for itself.
11     A.    Well, I think the best explanation of
12 that is the statement of legislative intent, which
13 is in the law.
14     Q.    Putting aside the statute -- I'm not
15 asking you for a legal interpretation -- was ERS'
16 understanding of the effect of Joint Resolution 188
17 that employer contributions would be eliminated?
18         MR. POCHA:  Same objection.  And asked
19     and answered.
20     A.    Once again, what I understand is not
21 material, because the resolution was passed and
22 approved.  And here you can find what's established
23 and why it's established and what the purpose is.
24     Q.    You can set -- well, let me go about it
25 this way:  After July 1, 2017, did ERS receive any

advanced depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

90

1 L. COLLAZO
2 further employer contributions?
3     A.    Can you repeat that again. Just to
4 figure out the time frame.
5     Q.    Sure.
6     After July 1, 2017, did ERS receive any
7 further employer contributions?
8     A.    Well, by the the 1st of July, in terms of
9 the month of July, what I understand is we did
10 receive an employer contribution by an employer that
11 was made by mistake.
12     The way that this whole employer
13 contribution system worked is that the retirement
14 system would receive -- for example, in June, they
15 would receive the employer contribution from May,
16 and in July, that from June.
17     So the month of June, there was still
18 the retirement of depositing that employer
19 contribution, but then there was the transition to
20 the Pay-Go, so one employer made a deposit into
21 our account.
22     It's important to make note that that
23 contribution was not just a contribution, an
24 employer contribution, because within one payment,
25 the employer would submit various concepts,

108

L. COLLAZO

Q. Do you see this is -- probably 2886. You got it. There you go.

You see this is a copy of the bond resolution that authorizes the issuance of the pension obligation bonds?

A. Yes.

Q. All right. And I would like you to turn to page Bates number 2901, and I'm going to refer you to section 709, subparagraph 2.

Do you see that?

A. Yes.

Q. All right. It says: The system shall oppose any attempt by the legislature of the Commonwealth to reduce the employer's contribution rate or to make any other change in the act or any other relevant legislation that would have a material adverse effect on the bondholders.

Did you see that, sir?

A. Yes.

Q. Did ERS make any effort to oppose the passage of Joint Resolution 188?

A. Well, as I indicated in a previous answer, certainly ERS -- we found out about this resolution once it had been passed, once it had been

109

L. COLLAZO

approved.

Q. ERS did not make any effort to oppose Joint Resolution 188, correct?

MR. POCHA: Objection. Asked and answered.

A. Yes. I already answered that.

Q. And it's correct you didn't make any efforts, correct?

MR. POCHA: Same objection.

A. I had responded that we didn't participate, that we didn't make a commentary, that we didn't see drafts, that we didn't see anything.

Q. Did ERS make any effort to oppose the passage of Act 106 in August of 2017?

A. No, we made no effort to oppose it, since that would mean that we would have -- that could have potentially meant that we would have left the thousands or hundreds of thousands of pensioners unprotected.

Q. After Joint Resolution 188 went into effect, did ERS inform anybody at the Commonwealth that reductions in employer contributions may adversely affect the ability of ERS to comply with its obligations under the pension obligation bonds?

110

L. COLLAZO

       MR. POCHA:  Objection.  Form.

  A.    No, not to the best of my knowledge.  We didn't inform -- we didn't make any commentary about the text in this section.

  Q.    I'm not talking about the text in this section.  I'm just asking you whether ERS ever told anybody at the Commonwealth that reducing the employer contributions would adversely affect the ability of ERS to comply with its obligations under the bonds.

       MR. POCHA:  Objection to the form.
  Exclude privileged conversations.

  A.    To the best of my knowledge, that wasn't informed, and what could have been the obligations under the protection of that section -- under that section, not protection -- that comes out of conversations with lawyers.

  Q.    You can set that aside.

       I'm handing you what was marked last week as Exhibit 25.  The attachment -- I'm happy to pass it out -- is this Exhibit 26.  It was marked separately last week.  It's in Spanish.  Last week we did not have a translation of this particular Bates number.  We had a different

118

L. COLLAZO

Q. Does ERS still do that today?

A. Yes.

Q. Did ERS also do that before June of 2017?

A. Yes.

Q. Look at subparagraph B. It says: ERS will provide to AAFAF such information as AAFAF may require to calculate the Pay-Go charge.

Does ERS still do that today?

A. Well, we don't do that by ourselves. ERS doesn't do that by ourselves. As I mentioned, we have the data for each pensioner, and we share that with AAFAF. They review it and so then they give the green light.

Q. All right. Paragraph 2C talks about ERS submitting an invoice to each employer for the Pay-Go charge.

My question is: Does ERS do that today?

A. Yes, we continue invoicing employers.

Q. Okay. You can set that aside.

As far as you're aware, Act 106 did not create any new pension benefits for members of ERS; is that correct?

MR. POCHA: Objection. Calls for a

```
                                                       119
 1                         L. COLLAZO
 2      legal conclusion.
 3          A.    What I can establish is that Law 106
 4   created a new plan for contributions that were
 5   definite -- defined contributions.
 6          Q.    Okay.  So Act 106, one of the effects was
 7   that employee contributions would be segregated into
 8   separate individual accounts similar to 401K
 9   accounts; is that right?
10          A.    Correct.
11          Q.    Whereas before 106 went into effect, the
12   employee contributions for the defined benefit
13   program were not in separate individual accounts,
14   correct?
15          A.    Correct.
16          Q.    As far as you know, did Act 106 create
17   any new defined benefit, pension benefits, for
18   retirees?
19              MR. POCHA:  Same objection as before.
20          A.    No.
21          Q.    Joint Resolution 188 directed ERS to
22   liquidate its assets, correct?
23          A.    Correct.
24          Q.    I'm handing you Exhibit 28, which was
25   marked last week.
```

Video Deposition of Luis Rodriguez, 6/4/2019

120

1  L. COLLAZO
2  Do you see this is a letter to you from
3  the executive director of AAFAF?
4  A. Yes.
5  Q. And he directs you in the second
6  paragraph to sell ERS' assets, correct?
7  A. To liquidate immediately all the liquid
8  investments from the retirement system.
9  Q. Okay. Did ERS do that in and around July
10 2017?
11 A. We liquidated our liquid investments.
12 Q. How much was the proceeds from that
13 liquidation?
14 A. Approximately 296 million.
15 Q. You'll see in the second to the last
16 paragraph the director of AAFAF instructs you to
17 transfer at least 190,480,000 of the proceeds from
18 the sale of the investment and to transfer that to
19 the treasury.
20 Do you see that?
21 A. Yes.
22 Q. And did ERS do that?
23 A. Yes.
24 Q. Okay.
25 A. We transferred the quantity that's

121

1           L. COLLAZO
2  requested in the letter.
3       Q.    The remaining 150 or so million dollars
4  from the sale of the proceeds, what happened to
5  that?
6       A.    Yes.  When I mentioned the assets that
7  the system had before, I mentioned the quantity 109
8  million.  That quantity we have inside of a
9  restricted account because we liquidated it, yes.
10 It's inside that account, that amount.  That was --
11 that amount was not transferred to the Department of
12 the Treasury.
13      Q.    Why was that amount not transferred to
14 the Department of Treasury?
15           MR. POCHA:  Objection.
16           Exclude any privileged information.
17      You can answer if you can.
18      A.    Well, certainly I received a letter to
19 send a first amount.  I haven't received any other
20 instructions from my physical agent, which is AAFAF,
21 which would be to remit the remaining amount.  And
22 it's important to mention that Resolution 188 also
23 doesn't set a set amount of time, a determined
24 amount of time to be able to transfer that.  Right?
25 It's like we're waiting for instructions.  Right?