UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------- X
                                                              :
In re:                                                        :
                                                              :
                                                              :
THE FINANCIAL OVERSIGHT AND                                   :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                             :  Title III
                                                              :
                                                              :
        as representative of                                  :  Case No. 17-BK-3283 (LTS)
                                                              :
THE COMMONWEALTH OF PUERTO RICO et al.,                       :  (Jointly Administered)
                                                              :
                                                              :
        Debtors.¹                                             :
------------------------------------------------------------- X
                                                              :
In re:                                                        :
                                                              :
                                                              :
THE FINANCIAL OVERSIGHT AND                                   :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                             :  Title III
                                                              :
                                                              :
        as representative of                                  :  Case No. 17-BK-4780 (LTS)
                                                              :
PUERTO RICO ELECTRIC POWER AUTHORITY                          :  **This filing relates only to**
                                                              :  **Case No. 17-BK-4780 (LTS)**
                                                              :
                                                              :
        Debtor.                                               :
------------------------------------------------------------- X
```

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY IN SUPPORT OF
MOTION *IN LIMINE* TO STRIKE AND EXCLUDE IMPROPER LAY OPINION
TESTIMONY OF FREDERIC CHAPADOS REGARDING ALLEGED EFFECT OF 9019
SETTLEMENT ON PREPA TRANSFORMATION**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

                                                                       **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.     CHAPADOS' TESTIMONY IS INDEED BASED ON SPECIALIZED KNOWLEDGE WITHIN SCOPE OF FRE 702 AND NOT BASED ON PERSONAL KNOWLEDGE OF TRANSACTIONS AT ISSUE ................................... 3

II.    CHAPADOS' RELIANCE ON HIS ALLEGED PERSONAL KNOWLEDGE OF OPERATORS VIOLATES STIPULATION ...................................................................... 7

III.   CHAPADOS' TESTIMONY IS NOT HELPFUL TO THE COURT .............................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of China, N.Y. Branch v. NBM LLC*,
   359 F.3d 171 (2d Cir. 2004)...........................................................................................6, 7

*Burlington N. R.R. Co. v. Nebraska*,
   802 F.2d 994 (8th Cir. 1986) ...........................................................................................5, 6

*United State v. Vega*,
   813 F.3d 386 (1st Cir. 2016)............................................................................................6, 7

*United States v. Kerley*,
   784 F.3d 327 (6th Cir. 2015) ...........................................................................................5, 6

*United States v. Sanabria*,
   645 F.3d 505 (1st Cir. 2011)................................................................................................9

*Winant v. Bostic*,
   5 F.3d 767 (4th Cir. 1993) ...............................................................................................5, 6

**Other Authorities**

Federal Rule of Evidence 701............................................................................................ *passim*

Federal Rule of Evidence 702.................................................................................................3, 6

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby submits this reply (the "Reply") in response to the opposition of the Oversight Board [Docket No. 1785] (the "Opposition" or "Opp.") to the Committee's Motion *in limine* to strike and exclude certain improper lay testimony of Frederic Chapados [Docket No. 1752] (the "Motion"). In support of this Reply, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Oversight Board's response to the Motion is essentially that the opinions Chapados offers are so obvious and grounded in common sense that they cannot possibly be the subject of expert testimony. This argument, however, is simply not credible. If the opinions are so clear and obvious, then why did the Oversight Board submit the declaration in the first place? Indeed, if the Oversight Board's position is to be believed, Chapados' testimony necessarily fails to satisfy the requirement of Federal Rule of Evidence 701 that his opinions be "helpful" to the Court, because any opinion that is truly so clear and obvious will not assist the Court in resolving a disputed issue. For this reason alone, if the Oversight Board's position is taken at face value, the Motion should be granted.

2. The reality, of course, is that Chapados' testimony is much more complicated than the Oversight Board claims, and the opinions he offers are dependent upon his purported in-depth and specialized knowledge and expertise in the public utilities industry. In this regard, it is worth noting that nothing prevented the Oversight Board from disclosing Chapados as a potential expert, submitting an expert report from him on the requisite deadline, and seeking to qualify him as an expert at the 9019 Hearing. For whatever reason, however, the Oversight Board chose not to go this route and now has to face the consequences of its decision.

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

3. In an effort to avoid the exclusion of Chapados' testimony, the Oversight Board seeks to rewrite his declaration as if his opinions relate solely to straightforward business matters that require no specialized training or knowledge. But his declaration and his deposition testimony contradict this assertion. Chapados opines not merely on general business principles, but rather on the manner in which they would apply to complicated transactions such as the RSA and the PREPA Transformation. Specifically, Chapados testifies that he believes *this RSA* will be viewed as helpful by the *particular potential operators who are bidding on PREPA's transformation*. These are not opinions that can be offered based on general business principles but rather require specific expertise in public utilities transactions.

4. In addition, Chapados' testimony fails to satisfy the personal knowledge requirement of FRE 701. As detailed below, the Oversight Board's own cited case law makes clear that a lay witness cannot offer opinions on general business practices and expectations unless he or she is relying on personal knowledge of the particular business or transaction at issue in the litigation. Here, the only personal knowledge relating to PREPA that Chapados claims to rely upon is based on his communications with potential operators. As discussed in the Motion and reiterated below, Chapados cannot rely on such communications without violating the Stipulation. Therefore, his testimony should be excluded because it fails to satisfy the requirements of FRE 701 or because it violates the Stipulation. Either way, it is inadmissible.

## ARGUMENT

5. It bears repeating that for Chapados' opinions to be admissible, they must satisfy *each* of the requirements of FRE 701, and the failure of *any* element renders the testimony inadmissible. Accordingly, such opinions must: (i) not be based on scientific, technical, or other specialized knowledge within the scope of FRE 702, (ii) be rationally based on Chapados'

2

perception, and (iii) be helpful to understanding his testimony or determining a fact in issue. The Government Parties have failed to demonstrate that Chapados' proposed testimony satisfies any of these requirements.

### I. CHAPADOS' TESTIMONY IS INDEED BASED ON SPECIALIZED KNOWLEDGE WITHIN SCOPE OF FRE 702 AND NOT BASED ON PERSONAL KNOWLEDGE OF TRANSACTIONS AT ISSUE

6. The Oversight Board accuses the Committee of trying to "muddle" the FRE 701 analysis by referencing the highly complex nature of the RSA and the Transformation to which Chapados' opinions relate. In making its argument, the Oversight Board does not disagree with the Committee's description of these transactions but rather tries to recharacterize the nature of Chapados' testimony. Specifically, the Oversight Board contends that his testimony consists solely of "logical inferences based on his experience that concern straightforward business matters." Opp. ¶ 19. This assertion, however, cannot be reconciled with Chapados' declaration or his deposition testimony. Moreover, even if the assertion were true, it would not render Chapados' testimony admissible under the very case law the Oversight Board cites.

7. In his declaration, Chapados does not merely offer an opinion regarding generic transactions in the industry. He instead opines that the particular debt resolution proposal at issue—the RSA—will specifically help facilitate the transformation of PREPA's transmission and distribution system. *See, e.g.*, Chapados Decl. ¶ 17 ("Based upon my experience, any potential Operator performing the risk-benefit analysis to determine whether to undertake ***this [Transformation] project*** would look for a clear picture of the legal, financial, operational and regulatory environments in which it would be operating . . . .") (emphasis added); *id*. ¶ 18 ("[I]t is my belief that ***the RSA*** will help clear the way for ***Transformation***[.]") (emphasis added); *id*. ¶ 21 ("I believe ***the RSA*** will facilitate a clearer understanding of future financial obligations and responsibilities of PREPA, which will be important to a potential Operator.") (emphasis added).

3

Chapados has no basis for these opinions without relying on either (i) his specialized knowledge built up through years of experience of how potential operators looking to enter into operations agreements would likely react to a debt resolution transaction similar to the RSA, or (ii) his direct knowledge of the views of the potential operators participating in the Transformation (and, as discussed below, he cannot rely on such views without violating the Stipulation).[3]

8. The Oversight Board's argument ignores Chapados' deposition testimony in which he made clear that he is not merely testifying about "straightforward business matters" that any lay person could address ███████████████████████████████████████████████████████████████████████████. **Exhibit B** (Chapados Dep. Tr. at 147:4-7; 149:18-19) (emphasis added). ████████████████████████████████████████████████████████████████████. *Id*. at 119:17-19; 128:5-8; 143:6-22; 147:8-13. Despite the Oversight Board's efforts to argue otherwise, this is precisely the work of an expert witness.

9. The Oversight Board cites three cases to support its assertion that Chapados offers permissible lay opinion testimony regarding "industry practices." All three cases, however, are from outside the First Circuit and otherwise inapposite. Two of the cases (*Burlington N. R.R. Co. v. Nebraska*, 802 F.2d 994, 1004-05 (8th Cir. 1986) and *Winant v. Bostic*, 5 F.3d 767, 772-773 (4th Cir. 1993) predate the 2000 amendment to FRE 701 that added the requirement that lay

---

[3] The Oversight Board also seeks to defend Chapados' testimony by arguing that "in part, he does no more than characterize the P3 Authority's RFQ." Opp. ¶ 19. It is unclear to the Committee how this affects the admissibility of Chapados' testimony under FRE 701. It is worth noting, however, that the RFQ in no way supports the Government Parties' argument that the RSA is critical to the Transformation. Indeed, despite purportedly serving the purpose of disclosing critical information to potential bidders, the RFQ ***does not even mention the preliminary RSA***, which had been executed three months prior to the RFQ's issuance.

4

opinion not be based on scientific, technical, or other specialized knowledge, and are thus irrelevant on that basis alone.[4]

10. The Oversight Board's third case does not support its position, either. In *United States v. Kerley*, 784 F.3d 327, 337-41 (6th Cir. 2015), the Sixth Circuit held that it was permissible for individuals who had specialized knowledge regarding their employers' underwriting and lending guidelines to provide lay opinion testimony, even though those individuals were not personally involved in the loans at issue in the litigation. The Court relied on the Advisory Committee's note to the 2000 amendment (which, as noted above, added FRE 701(c)), which "preserve[d] the practice of treating certain testimony based on particularized knowledge gained through personal experience as lay opinion." Fed. R. Evid. 701, Advisory Committee's Note (2000). As the Advisory Committee explained:

> For example, most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position ***in the business***. The amendment does not purport to change this analysis.

*Id*. (emphasis added).

11. Based on the Advisory Committee's guidance, the Sixth Circuit recognized that it is the lay witness's expertise in the actual business at issue that permits the witness to provide lay opinion testimony, not his or her experience in the industry generally. *Kerley*, 784 F.3d at 339 (recognizing that neither witness was testifying based on "'specialized knowledge' within the purview of FRE 702 because the witness 'has knowledge of his own business ***in the***

---

[4] As explained in note 5 below, these cases are distinguishable in any event.

5

*particular*.'") (quoting *United States v. Oriedo*, 498 F.3d 593, 603 n. 10 (7th Cir. 2007)) (emphasis in original). The court further observed that "other circuits have permitted lay opinion testimony based on particularized knowledge on a variety of topics, when the witness gained such knowledge through employment or involvement in the day-to-day affairs of *the business in question*." *Id*. (emphasis added).

12. Here, the Oversight Board claims that Chapados' opinions are based on his general knowledge in the public utilities industry, not his knowledge of PREPA in particular. Opp. ¶ 2 (characterizing his relevant experience as "*general* experience with merger and acquisition transactions in the power and utilities industry") (emphasis added). Accordingly, his testimony falls squarely within the purview of expert testimony under FRE 702 and cannot be admitted as lay opinion testimony under FRE 701.[5]

13. Finally, the Oversight Board's attempts to distinguish the Committee's cases are unpersuasive. For example, the Oversight Board fails to explain why Medicare laws and regulations (*see United State v. Vega*, 813 F.3d 386, 394-95 (1st Cir. 2016)) or the concept and process of trust receipts and what constitutes trust receipt fraud (*Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 180 (2d Cir. 2004))[6] are outside the boundaries of lay expertise, but the behavior of bidders in mergers and acquisitions for power utilities are within those boundaries. In both *Vega* and *Bank of China*, as here, the witnesses at issue were purporting to offer opinions based not only on their personal knowledge of the business in question but also on their general

---

[5] The *Burlington N. R.R. Co.* and *Winant* cases that the Oversight Board cites, although not relevant because they predate the 2000 amendment to FRE 701, are distinguishable on the same basis. In those cases, the witnesses in question had personal knowledge of matters directly at issue in the litigation. *See Burlington N. R.R. Co.*, 802 F.2d at 1004-05 (personal knowledge of trains with and without cabooses in litigation regarding safety of such trains); *Winant*, 5 F.3d at 772-73 (personal knowledge of individual whose intentions were at issue in litigation).

[6] In *Bank of China*, the specific testimony that the Court found inadmissible was testimony regarding "typical international banking transactions or definitions of banking terms." *Id*. at 182.

6

knowledge and experience in the field. Just as the courts in these cases found such testimony inadmissible under FRE 701, so should this Court.

## II. CHAPADOS' RELIANCE ON HIS ALLEGED PERSONAL KNOWLEDGE OF OPERATORS VIOLATES STIPULATION

14. As discussed above, courts that have allowed lay witnesses to testify regarding specialized matters such as business customs and practices have done so if the witness relied on personal knowledge relating to the business or transaction in question. For purposes of Chapados' testimony, the relevant business or transaction in question is the PREPA Transformation. The Oversight Board has taken the position that Chapados is relying on his general knowledge in the industry and not on any personal knowledge of the Transformation, but his deposition tells a different story. Specifically, Chapados testified multiple times during his deposition that he relied on communications with potential operators in PREPA's Transformation in forming his opinions. As discussed at length in the Motion, this testimony directly violates the Stipulation, and the Oversight Board has not demonstrated otherwise.

15. The Oversight Board does not seriously argue that Chapados' testimony would comply with the Stipulation to the extent it relies upon communications with potential operators. The Oversight Board sidesteps the issue and instead argues that, as a factual matter, Chapados did *not* rely on such communications in forming his opinions. This, however, is not what he testified to at his deposition. When asked whether he based his opinions on anything relating to the Transformation, Chapados *volunteered* that he relied on statements of operators:



7



**Exhibit B** (Chapados Dep. Tr. at 114:21-115:15); *see also id.* at 115:16-116:7

. Thus, Chapados has conceded that his opinion relies on discussions with operators and therefore runs afoul of the Stipulation.[7]

16. In its Opposition, the Oversight Board cherry picks one example from the deposition transcript where Chapados references his communications with operators as forming part of his "broad knowledge base" and then argues that reliance on communications with operators in this manner does not violate the Stipulation. Opp. ¶¶ 26-27 (citing Chapados Dep. Tr. 92:25-93:6) (**Exhibit C**). This is incorrect. The Stipulation is clear that the Oversight Board is prohibited from relying on communications with operators in any way, "either directly or indirectly," and may not "use or refer to [such information] to support the assertion in the 9019 Motion that the settlement of PREPA bond claims will help facilitate the Proposed

---

7

Transformation." Stipulation ¶ 3. Thus, even if it were true that Chapados relied on communications with operators solely to form part of his "broad knowledge base," his testimony still violates the Stipulation to the extent he used such knowledge to form his opinions.[8]

### III. CHAPADOS' TESTIMONY IS NOT HELPFUL TO THE COURT

17. The Oversight Board takes great pains in its Opposition to claim that Chapados' opinions are "the most basic common business sense," so much so that they are "self-evident." *See* Opp. at 8 n. 6, ¶ 22; *see also id.* ¶ 20 (arguing that Chapados' opinions are based on "common-sense, logical deductions about straightforward business matters"). This begs a question: if the Oversight Board is right that Chapados' opinions are self-evident, then how could it be that they would be helpful to the Court, and why would the Chapados declaration even be necessary? Indeed, the First Circuit has held that the "helpfulness" requirement of FRE 701 is not satisfied where the fact finder "can readily draw the necessary inferences and conclusions without the aid of the [lay] opinion." *United States v. Sanabria*, 645 F.3d 505, 515 (1st Cir. 2011). Under this standard, if it were true that Chapados does no more than offer opinions on common business sense, then the Court would have no need for his testimony.

18. The Oversight Board does not address this issue in its Opposition. Skirting the actual "helpfulness" element, the Oversight Board instead addresses only whether Chapados' opinions and testimony are relevant to the 9019 Motion. Specifically, the Oversight Board contends that the opinions are relevant under the Court's October 10, 2019 order, which the Oversight Board interprets as allowing the Government Parties to introduce evidence relating to whether they "reasonably took into account the prospect that the RSA is likely to be helpful to the [Transformation] process." Opp. ¶ 32. To the extent this position accurately reflects the

---

[8] As noted in the Motion, these communications are also hearsay and are inadmissible for that independent reason.

9

Court's holding in its October 10 ruling, the Committee respectfully disagrees with that ruling for reasons it has discussed previously and will not reargue the issue here.

19. In any event, however, relevance is not the same as helpfulness. Even if Chapados' opinions are technically relevant to the 9019 Motion based on the Court's prior rulings, they are not helpful in assisting the Court in determining a fact at issue based on the Oversight Board's own characterization of the opinions. As discussed above, if Chapados truly does no more than offer common sense conclusions, the Court has no need for his testimony, and thus it is not helpful to the Court for purposes of FRE 701.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Committee respectfully requests that this court Grant the motion and strike the entirety of Chapados' declaration and prevent him from offering similar testimony at

10

trial, or in the alternative, to strike paragraphs 17, 18, 20, 21, 23, and 25-27 of the Chapados declaration and prevent Chapados from offering testimony on these same opinions at trial.

Dated: December 3, 2019

*/s/ Luc A. Despins*
PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*

- and -

/s/ *John Arrastia*
GENOVESE JOBLOVE & BATTISTA, P.A
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*

- and -

11

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*