UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| **In re** | ) ) ) | **PROMESA Title III** |
| **THE COMMONWEALTH OF PUERTO RICO** *et al.,* | ) ) ) ) | **No. 17 BK 3283-LTS (Jointly Administered)** |
| **Debtors.**[1] | ) ) ) ) | **Re: Dkt. No. 9186, 9188, 9350** |

**FEE EXAMINER'S RESPONSE TO DUFF & PHELPS, LLC'S
STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT UNDER FED. R. BANKR. P. 7056(A)**

The Fee Examiner appointed in the above-captioned cases, by his counsel, Godfrey &

Kahn, S.C. ("**Godfrey & Kahn**"), submits this Response to Duff & Phelps, LLC's *Statement of*

*Material Facts in Support of Motion for Partial Summary Judgment Under Fed. R. Bank.*

*P. 7056(a)* [Dkt. No. 9186] (the "**Statement of Material Facts**" or "**SOF**").  Each of the

applicants' statement of fact is followed by a response.

**A.    Introduction**

1.      James Feltman is Managing Director of Duff & Phelps, LLC ("D&P") and the
person in charge of the D&P independent forensic analysis team hired by the Financial Oversight
and Management Board for Puerto Rico (the "Board" or "FOMB").  Affidavit of James Feltman,
sworn on November 11, 2019 ("Feltman Aff." ¶ 1).  With Ann Gittleman, another D&P
Managing Director, he directed the work of the D&P team.  Id.  Feltman has personal knowledge
of the facts in support of D&P's amended first interim application ("Application") for allowance

---

[1]The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four
(4) digits of each Debtor's federal tax identification number, as applicable, are the:  (i) Commonwealth of Puerto
Rico (Bankruptcy Case No. 17 BK 3283 LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales
Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284 LTS) (Last Four Digits of Federal Tax
ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567
LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the
Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566 LTS) (Last Four Digits of Federal Tax
ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 LTS) (Last
Four Digits of Federal Tax ID: 3747 ) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case
No. 19 BK 5523 LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy
Case numbers due to SOFtware limitations).

of compensation and reimbursement of expenses for the period November 1, 2018 through January 31, 2019 ("Application Period"), and in support of D&P's motion for partial summary judgment seeking allowance of at least $461,504.50 in so-called "Project Management Fees" that the Fee Examiner has disputed. Doc. No. 8862, at 2, 6. Id.

**RESPONSE**: Disputed, in part. The Fee Examiner does not dispute the first and second sentences of this SOF, nor does he dispute the affiant's personal knowledge. The Fee Examiner does dispute that D&P's motion for partial summary judgment seeks allowance of at least $461,504.50 of "Project Management Fees" in its *Motion and Memorandum of Law in Support of Duff & Phelps, LLC Motion for Summary Judgment Under Fed. R. Bankr. 7056* [Dkt. No. 9188] and *Statement of Material Facts in Support of Motion for Partial Summary Judgment Under Fed. R. Bank. P. 7056(a)* [Dkt. No. 9186] (together, the "**Motion for Partial Summary Judgment**" or "**MSJ**"). In fact, D&P seeks a much narrower finding:

> … as a matter of law, that D&P is contractually entitled to the so-called "Project Management" fees totaling [$1,177,891.00] in its amended first interim application…subject only to the Court's later review under Bankruptcy Code §330(a) (reasonable compensation for actual and necessary services).

(MSJ at 1). Though the MSJ argues that "D&P's Services Were Reasonable and Necessary" (MSJ at 6), it does not appear to seek that finding as a matter of law nor could it. Rather, D&P appears to agree that the issue of the fees' reasonableness and necessity—and hence their "allowance"—is to be determined at the contested hearing on the *Fee Examiner's Limited Objection to the Amended First Interim Fee Application of Duff & Phelps LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Independent Forensic Analysis Team to the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period of November 1, 2018 Through January 31, 2019* [Dkt. No. 8862] (the "**Fee Objection**") scheduled for January 30, 2020 pursuant to the Court's November 14, 2019 scheduling order [Dkt. No. 9170].

2

**B.      Fee Examiner's Objection To Amount of D&P Fees**

2.      The Fee Examiner in this case has challenged D&P's claim to "Project Management" fees on the ground that the Board had limited D&P's fees to the sum of $50,000 per week (Doc. No. 8866-1, Exh. 3, at 1), based on his reading of the terms of the Engagement Letter, dated January 31, 2018, as amended three times on March 31, August 16 and December 11, 2018 (collectively, the "Engagement Letter") (Doc. No. 8866-1, Exh. 1, at pages 43-158)[sic].  In fact, the Board increased D&P's responsibilities to "Project Manager" and then increased D&P's weekly fees by $50,000 (Doc. No. 8866-1, at 102) (Amendment No. 3 to Engagement Letter, effective November, 2018) over the previous weekly average fees of $86,413.  *See* paragraph "3" below.  Feltman Aff. ¶ 2.

**RESPONSE**:  Disputed, in part.  The Fee Examiner does not dispute the express terms of

the Engagement Letter, nor does the Fee Examiner contend that the Engagement Letter caps or

limits D&P's Project Management fees to the sum of $50,000 per week.  The Engagement

Letter[2] provides:

> D&P's estimate of its incremental fees for [Project Management services] is $50,000 per week…provided that the billings will be based on actual hours worked.

(Engagement Letter at 102, ¶ 4).  The only "cap" on fees—with or without the FOMB's assent—

is their statutory reasonableness which the Court must determine.

This language suggests an "incremental" increase over a pre-existing amount, but the Fee

Examiner has been unable to determine the baseline from which the incremental increase was to

be measured.  Despite multiple requests, D&P has not provided the required electronic billing

detail regarding services performed prior to November 1, 2018 that would allow any

determination of what, if any, project management services D&P provided prior to November 1,

2018 and the fees, if any, for those services.  Declaration of Leah Viola ("**Viola Decl.**"),

¶¶ 23-24 [Dkt. No. 9404].  Further, D&P has failed to provide documentation supporting its

claims that the FOMB approved Project Management fees significantly in excess of $50,000 per

---

[2] The Engagement Letter is Dkt. No. 8899-1, Ex. 3, at 43-107.

week or that it kept the FOMB appropriately apprised on changing cost projections or duties as

the Engagement Letter required. *See id*. at ¶ 16.

The Fee Examiner disputes that the FOMB intended for the estimated "incremental" fee

increase to be calculated in comparison to the "previous weekly average fees of $86,413." In

fact, the Engagement Letter is silent on how to calculate the "incremental" increase, and D&P

has provided no documentation to support its proposed interpretation. *Id*. at ¶ 22. Even if, as

D&P contends, the "incremental" increase was to be calculated in comparison to "previous

weekly average fee," the average weekly fees during the 11-week period[3] covered by the

Engagement Letter's second amendment were less than $58,166.18 per week. *Id*. at ¶ 26.

During the following 13-week Application Period at issue in the Fee Objection, the

average weekly fees increased to $145,638—significantly more than the estimated $50,000

incremental increase—ranging from almost $103,000 a week in November 2018 to $202,516 a

week in January 2019. *Id*. at ¶ 27.

**C.      The Pre-Application Period Fees**

3.      D&P began work for the Board promptly after the parties signed the original
version of the Engagement Letter on January 31, 2018 (the "Pre-Application Period"). Feltman
Aff. ¶ 3. For the period January 31 through October 31, 2018, D&P billed the Board for its
services and its expenses on a monthly basis, as the following chart shows:

---

[3] The Engagement Letter's second amendment was effective August 16, 2018 and was supplemented with the third
amendment, effective as of November 5, 2019. Engagement Letter at 89-101.

| Invoice | Date of Bill | Fees | Expenses | Total Invoice and Payment Received | Period Covered |
|---|---|---|---|---|---|
| NY00297599 | 05/11/2018 | $ 100,425.00 | $ 8,931.16[3] | $ 109,356.16 | 1/31/18 - 2/28/18 |
| NY00297600 | 05/11/2018 | $ 24,224.50[4] | $ - | $ 24,224.50[4] | 3/1/18 – 3/31/18 |
| NY00297601 | 05/11/2018 | $ 32,405.00 | $ - | $ 32,405.00 | 4/1/18 – 4/30/18 |
| NY00300754 | 06/12/2018 | $ 48,752.50 | $ - | $ 48,752.50 | 5/1/18 – 5/31/18 |
| NY00304385 | 07/12/2018 | $ 35,135.00 | $ - | $ 35,135.00 | 6/1/18 – 6/30/18 |
| NC00022789 | 07/20/2018 | $ (2,114.91) | $ - | $ (2,114.91)[5] | 1/1/18 – 3/31/18 |
| NY00308108 | 08/21/2018 | $ 39,555.00 | $ - | $ 39,555.00 | 7/1/18 – 7/31/18 |
| NY00310194 | 09/05/2018 | $ 86,232.50 | $ 1,514.30 | $ 87,746.80 | 8/1/18 – 8/31/18 |
| NY00313706 | 10/05/2018 | $ 207,942.50 | $ - | $ 207,942.50 | 9/1/18 – 9/30/18 |
| NY00318094 | 11/14/2018 | $ 345,653.00 | $ 1,870.94 | $ 348,523.94 | 10/1/18 – 10/31/18 |
| | | $ 919,210.09 | $ 12,316.40 | $ 931,526.49 | |

[3] Differs from underlying bill by $803.16.  Corrected by adjustment made on 7/20/18.
[4] Differs from underlying bill by $1,312.50.  Corrected by adjustment made on 7/20/18.
[5] Reflects corrections consistent with actual fees and expenses between 1/31/18 and 3/31/18.

The foregoing table shows not only the amount of fees and expenses sought by D&P during the period covered, but also the amount actually paid by the Board after D&P made minor billing corrections.  Id.

**RESPONSE**:  Disputed in part.  The table presented refers to facts that the Fee Examiner has been unable to verify despite repeated requests for the electronic billing records supporting the pre-November 2018 fees, which were not subject to the Fee Examiner's review but remain necessary to determine the reasonableness of the significant increase.  Only the electronic detail would allow a thorough analysis of tasks performed and fees charged throughout D&P's engagement, which is necessary for a complete reasonableness assessment.  Finally, the table may contain numerical inaccuracies that are not verifiable without the submission of complete electronic billing detail.

5

**D.**     <u>**The Board's Monitoring of D&P's Fees and Expenses**</u>

4.      The Board closely monitored D&P's activities, performance and its monthly bills. Feltman Aff. ¶ 4.  At no time did the Board ever challenge or dispute the quality of D&P's services, the amount of its expenses or the amount of its bills.  <u>Id</u>.  In fact, the Board promptly paid each and every D&P bill during the Pre-Application Period.  <u>Id</u>.  During the Pre-Application Period, D&P concentrated on its critical work for the Board--identifying all available sources of cash and the balances in each account.  <u>Id</u>.

**RESPONSE**:  Disputed in part, noting that these disputed facts bear on the

reasonableness of D&P's fees but not the correct legal interpretation of the Engagement Letter,

the only point at issue in the MSJ.  The Fee Examiner is unaware of the Board's precise

oversight and review of D&P's work and monthly bills.  D&P has issued subpoenas for the

depositions of FOMB Executive Director Natalie Jaresko and General Counsel

Jaime A. El Koury on December 12, 2019.  Viola Decl. ¶¶ 4-5, Exs. 2 and 3.  This discovery will

bring facts pertinent to this SOF to light and D&P obviously believes the Court needs to be

aware of the facts those witnesses could provide.

While the Fee Examiner is unaware of whether the Board "challenged or disputed the

quality of D&P's services," early in D&P's engagement, the FOMB required D&P to resubmit

some of its expenses to conform to the FOMB expense reimbursement policy ("**FOMB Expense**

**Policy**").  The March 31, 2018 amendment provides:

> D&P's expenses for accomplishing the Objectives in Appendix I
> are capped at $36,125 and are subject to the PROMESA expense
> reimbursement policy attached hereto; provided, however, that
> expenses incurred through February 28, 2018 as set forth in the
> attachment hereto are not subject to such cap, **are to be
> recomputed to comply with the meal expense limitation and
> no-alcohol provision**…

(Engagement Letter at 68, ¶ 2, emphasis added).

Significantly, on March 12, 2019, the FOMB shifted responsibility for remaining tasks,

including completion of the liquidity analysis, to Ernst & Young Puerto Rico LLP.  *See*

*Declaration of Katherine Stadler in Support of Limited Objection to Amended First Interim*

*Application of Duff & Phelps LLC for Allowance of Compensation for Services Rendered and*

*Reimbursement of Expenses Incurred as Independent Forensic Analysis Team to the Financial*

*Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the*

*Commonwealth of Puerto Rico for the Period of November 1, 2018 Through January 31, 2019*

[Dkt. No. 8866-1], Ex. 2.  Ernst & Young work records include task descriptions suggesting

questions and limitations in the D&P work product.  For example:

- "Participate in meeting . . . to discuss limitations of the Duff & Phelps Report."
Panagiotakis, March 4

- "Review EY assessment memo regarding Duff & Phelps report in preparation of bank
account kick off meeting…"  Maciejewski, March 13

- "Participated in a meeting . . . to discuss Duff & Phelps report, lessons learned, and
next steps."  Chepenik, March 14

- "Review and comment on analysis for discussion with Duff & Phelps on Friday."
Chepenik, March 14

- "Prepare key questions and topics for Duff & Phelps transition call."  Garcia,
March 14

- "Participate in working session . . . to prepare agenda with questions for scheduled
handoff meeting with Duff & Phelps."  Maciejewski, March 14

- "Review documents provided by FOMB regarding master database and lessons
learned in preparation for scheduled handoff meeting with Duff & Phelps."
Maciejewski, March 14

-  "Prepare reconciliation for Compania de Turismo account holder between financial
institution documents received from Duff & Phelps to what is entered in the master
database."  Villavicenvio, April 10

- "Analyze master database given by Duff & Phelps to masterdase [sic] base given by
FOMB to identify variances."  Villavicenvio, April 23

*Sixth Interim Fee Application of Ernst & Young LLP, as Financial Advisor to the Financial*

*Oversight and Management Board for Puerto Rico, for Title III Services Rendered and*

*Reimbursement of Expenses for the Period From February 1, 2019 Through May 31, 2019* [Dkt.

No. 8786], Exhibit D.

### E.    The Fee Application Process

5.    The Court and other professionals in the case formulated a Fee Application
procedure during the fall of 2018, requiring professionals who sought compensation from the
debtors' estates to file fee applications with the Court.  Feltman Aff. ¶ 5.

**RESPONSE**:  Disputed as to when and how the "Fee Application procedure" was

formulated.  In November 2017, the Fee Examiner promulgated a set of uniform fee and expense

standards in a memorandum to all of the retained professionals (the "**Initial Memorandum**").

That memorandum—also publicly filed with the *Fee Examiner's Initial Report* [Dkt. No. 2645]

on March 1, 2018—outlines the standards imposed by PROMESA and, by reference, the

U.S. Bankruptcy Code and U.S. Trustee Guidelines, as well as the Fee Examiner's own

suggested parameters.  Dkt. No. 2645-1, Exhibit B.  The fee application filing requirement itself

is pursuant to PROMESA §§ 316 and 317 and the Court's Interim Compensation Order.[4]

6.    The Board authorized payment of the amounts billed by D&P for its fees and
reimbursed D&P's expenses during the Application Period (November 1, 2018 through
January 21, 2019), less Court-imposed holdbacks, certain fees, and estimated taxes.  Feltman Aff.
¶ 6.  Again, during the Application Period, the Board received monthly fee statements from D&P
and never objected to or challenged the amounts billed, the expenses claimed, or the quality of
D&P's services.  Id.  The Board, in fact, approved in writing all of D&P's Application Period
fees and expenses.  Id., Exhibits 1, 2 and 3.

**RESPONSE**:  Disputed, in part.  D&P has not provided documentation to support that

the FOMB explicitly *approved* "in writing" all of D&P's Application Period fees and expenses,

only that the FOMB *authorized payment* by issuing principal certifications for each month

during the Application Period (November 1, 2018 through January 31, 2019).  Each principal

---

[4] *See Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* entered June 6, 2018 [Dkt. No. 3269] (the "**Interim Compensation Order**").

certification is one sentence in length, with the statement, "I hereby authorize the submission of

this Monthly Fee Statement for [month]." Dkt. No. 9186-1, Exs. 1-3. In the absence of record

facts related to any FOMB objections or challenges to D&P bills, scheduled discovery may shed

light on that issue.

7.      D&P eventually learned from other professionals in these cases that it had to file
an application to be compensated for services rendered and reimbursement for expenses. D&P
did so on March 18, 2019 (Doc. No. 5800), without the benefit of counsel. Feltman Aff. 7.

**RESPONSE**: Disputed, in part. D&P acknowledged and agreed to comply with the

Interim Compensation Order on December 11, 2018, when it signed the third amendment to the

Engagement Letter (effective November 1, 2018). That document states:

> D&P acknowledges and agrees that all fees and expenses payable
> under the Engagement (including this Amendment No. 3) as of
> November 1, 2018 will be paid through the [PROMESA] Title III
> proceeding filed on behalf of the Commonwealth of Puerto
> Rico…**We have familiarized ourselves with the currently
> applicable processes and guidelines relevant to submitting
> monthly statements and interim fee applications for payment
> of fees and expenses** through the Title III proceeding, including
> the Court's orders addressing the procedures for interim
> compensation and reimbursement of expenses of professionals.
> We acknowledge and agree to be paid pursuant to such processes
> and guidelines.

(Engagement Letter at 102-103, ¶ 5, emphasis added).

## F.      The Fee Examiner's June 6, 2019 Letter Report

8.      The Fee Examiner first contacted D&P by letter dated June 6, 2019 ("Letter
Report") with questions about the D&P fee application. Feltman Aff. ¶ 8. D&P retained counsel
at this point for the purpose of addressing the Fee Examiner's questions. Id. Counsel for D&P
promptly communicated with the Fee Examiner to start a dialogue and obtain time for
negotiations. Id.

**RESPONSE**: Disputed, in part. Fee Examiner's counsel first contacted D&P by email

on April 9, 2019—about three weeks after D&P filed its first interim fee application—providing

9

a copy of the Initial Memorandum (*see* Response to D&P's SOF 5) and information on the

required format for submission of supporting electronic fee and expense data.  Viola Decl. ¶ 10.

9.      To address the Fee Examiner's issues, D&P filed an amended Fee Application on August 13, 2019.  Feltman Aff. ¶ 9.  It also negotiated with the Fee Examiner and provided requested some supporting documentation, when available, through the middle of October, 2019. Id.  During those negotiations, D&P made substantial economic concessions, but negotiations broke down in October when the Fee Examiner for the first time disputed D&P's reading of the Engagement Letter on which it relied in performing its services for the Board.  Id.  Because of this stalemate, the Fee Examiner filed its limited objection ("Objection") to the D&P Fee Application on October 16, 2019 (Doc. No. 8862).  Id.  D&P replied to that objection on October 22, 2019 (Doc. No. 8915).  Id.

**RESPONSE**:  Disputed, in part.  The Fee Examiner disagrees with D&P's

characterization of the concessions offered during the course of negotiations, nor are they

relevant or admissable.[5]  The Fee Examiner first questioned the reasonableness of D&P's Project

Management fees in the June 6, 2019 Letter Report, stating:

> …Please delineate the hours and fees incurred for project
> management and explain the significant discrepancy from D&P's
> estimate.  In the absence of adequate explanation, the Fee
> Examiner will recommend reducing the project management fees
> to $50,000 per week.

(Dkt. 9160-1 at 5).  The Fee Examiner filed his Objection on October 15, 2019.

## G.      The D&P/ Board Engagement Letter

10.      The Engagement Letter expressly notes D&P's "substantial discount from" its "standard rates," reflecting D&P's desire "to demonstrate sensitivity to these highly unusual circumstances."  Doc. No. 8866-1, at 50 n.1.  Feltman Aff. ¶ 10.  The table below, excerpted from the Fee Application, shows D&P's standard rates and the discount provided to the Board for this engagement.  Id.  The discount ranges from 37% to a high of 48% for vice presidents and analysts to an average across-the-board discount of 44.6%.  Id.  The Fee Application also shows that the blended hourly rate for all D&P professionals during the Application Period was

---

[5]The Fee Examiner generally treats the details of communications with professionals during negotiations as confidential settlement negotiations pursuant to FRE 408.  D&P agreed to attach the Fee Examiner's initial letter report to the *Joint Status Report by Fee Examiner & Duff & Phelps LLC in Response to Order Dated October 25, 2019* [Dkt. No. 9160], Ex. A.  Should D&P elect to waive the privilege with respect to its other settlement communications with the Fee Examiner, the Fee Examiner will submit additional evidence of the trajectory of settlement discussions.

10

$437.56.  Id.

| Role | Standard Rates | Oversight Board Rates | Discount Provided |
|---|---|---|---|
| Managing Director | $   1,150 | $   650 | 43% |
| Director | $   1,040 | $   550 | 47% |
| Vice President | $   825 | $   425 | 48% |
| Senior Associate | $   625 | $   395 | 37% |
| Analyst | $   435 | $   225 | 48% |

The hourly rates charged by other financial professionals in these cases are the following, based on fee applications filed:

- Alvarez & Marsal (Doc. No 5791): $875-$325 (blended hourly rate of $470.69)

- Ernst & Young (Doc. No. 5808): $870-$245 (Rates as of 3/12/19, but subject to increase … on July 1 each year….") (blended hourly rate of $566.56) (See Doc. No. 8866-1, Exh. 2)

- Zolfo Cooper (Doc. No. 5820): $1,080-$250 (blended hourly rate of $674.08)

- McKinsey & Company (Doc. No. 5804): "Firm fixed price" as high as $1.94 million per month

Id.

**RESPONSE**:  The Fee Examiner does not dispute the D&P hourly rates disclosed in the Engagement Agreement and has no reason to question the magnitude of the offered discounts. As to the hourly rates charged by other financial professionals, those rates are calculated and disclosed in each professional's interim fee applications and verified through the fee review process.  The Fee Examiner will provide full reporting on the actual calculated blended hourly rates of financial (or any other professionals) should the Court so request, noting that blended rates typically vary—sometimes significantly—from fee period to fee period.

11.     The Engagement Letter, as amended three times, shows the Board's continuous expansion of the scope of D&P's services, Feltman Aff. ¶ 11.  For example, the Board asked D&P to identify bank accounts and related document identification during the first two months of its engagement, but then expanded D&P's role to include validation of accounts, drafting a report and supervising the Board Staff.  Id.  The third amendment to the Engagement Letter, dated December 11, 2018 specifically asked D&P to assume the rule of Project Manager, noting

11

that this role "will supplement but not replace, those enumerated responsibilities D&P currently has …." (emphasis added).  Doc. No. 8866-1, at 101.  Id.  It also required D&P to provide its "Work Product" by March 12, 2019.  Id.  The Board also acknowledged that D&P's "Work Product" was essential to "creditor negotiations."  Id.  As "Project Manager," D&P was required to have a "continuing physical presence in San Juan; provide direct supervision to … client review and data entry staff"; "provide direct assistance by performing … review function …."; "Coordinate Project Management activities with … [Board] Staff …".  The Board imposed on D&P the "responsibility to initiate, manage and download … Financial Institution Letters" and "provide weekly project status updates to" the Board, while providing "other forms of services as requested…."  Id.  For these additional services, D&P would be entitled to "incremental fees [of] $50,000 per week effective … November 5 through [March 12, 2019[6]], provided that billing would be based on actual hours worked in accordance with the rates" originally agreed upon. [Emphasis added].  Doc. No. 8866-1, at 102.  Id.  Prior to the time of the third amendment to the Engagement Letter on December 11, 2018, D&P had been billing the Board for its services at the average weekly rate of $86,413 during the period covered by the Engagement Letter's second amendment.  Id.  See paragraph "3" above.

[6] The Board extended the so-called "Deadline" to March 12, 2019.  Doc. No. 8866-1, at 11, 14n. 1.

**RESPONSE**:  Disputed, in part.  This SOF is incomplete and potentially misleading.

The Engagement Letter is in the record, and its terms are self-evident.  The Fee Examiner has

identified omissions and ambiguities in the Engagement Letter, which are the subject of the

factual disputes outlined in the Objection.  Subject to that general statement, the Fee Examiner

identifies three specific factual inaccuracies in the SOF:

> A.   On March 31, 2018, the first amendment to D&P's engagement agreement
>
> *reduced* rather than expanded the approved work plan's original fee
>
> amount, set fee and expense caps, and added the explicit requirement that
>
> D&P comply with the FOMB's Expense Policy:

Attachment 1 to the Letter of Engagement is hereby replaced by Appendix I hereto, provided that Appendix I is subject to the following:

**The total amounts therein are reduced** to 1,658 hours and $722,500 in fees, the latter to serve as a cap ("Fee Cap") for the accomplishment of the Objectives set forth in Appendix I.  The Fee Cap does not include fees already incurred of approximately $100,000…

12

> D&P's expenses for accomplishing the Objectives in Appendix I
> are capped at $36,125 and are subject to the PROMESA expense
> reimbursement policy attached hereto; provided, however, that
> expenses incurred through February 28, 2018 as set forth in the
> attachment hereto are not subject to such cap, are to be recomputed
> to comply with the meal expense limitation and no-alcohol
> provision…

(Engagement Letter at 68, ¶¶ 1-2, emphasis added).

      B.    On August 16, 2018, the second amendment revised the approved work

           plan and increased the total estimated amount of fees but required D&P to

           seek approval to exceed its estimates:

> However, should D&P's hours exceed the estimated hours for any
> of the Steps of Appendix II, D&P agrees to seek advance approval
> for any such excess.

(Engagement Letter at 89, ¶ 3).

      C.    As noted in the response to D&P SOF 2, *supra*, D&P billed average

           weekly fees of $58,166.18 during the 11-week period covered by the

           Engagement Letter's second amendment.  Viola Decl. ¶ 26.  During

           October 2018, the average weekly fees were $78,051, *not* $86,413.  *Id.*

### H.     The D&P Report

12.     D&P submitted its Report ("D&P Report") within the prescribed deadline, March 12, 2019 (Doc. No. 8866-1, Exh. 1, pages 6-158).  Feltman Aff. ¶ 12.  The Board reviewed and approved the Report before D&P released it.  Id.  Paragraph 29 of that Report (Doc. No. 8866-1, at 14) cited amendment no. 3 to the Engagement Letter to describe D&P's additional responsibilities "[e]ffective November 5, 2018, at the FOMB's request":

"(i) the creation of a subset of … Priority Entities; (ii) shifting a number of responsibilities from the FOMB staff to D&P, including the role of Project Manager; (iii) assumption by D&P of the AH function;… and (v) identifying the [Deadline] for the issuance of the Priority Entities bank account balances report."  [Emphasis added].

Id.  The same paragraph of the D&P Report also confirmed the Board's "modification of D&P's fee estimate to take into account incremental responsibilities."  Id.

13

**RESPONSE**:  Undisputed, except to note that the FOMB expanded its retention of E&Y

on the same date.

13.     According to Feltman's conversations with the Board, it asked D&P to assume the
Project Manager role as of November 5, 2018 because it had recently lost its second Project
Manager and, due to time pressures, the Board would be unable to hire and train a third
replacement within the deadline for completing this essential project.  Feltman Aff. ¶ 13.

**RESPONSE**:  Disputed.  The Fee Examiner lacks access to facts necessary to confirm or

deny this SOF, but expects that the scheduled depositions may shed light on the issue.

Dated:  December 3, 2019.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing motion

with the Clerk of the Court using the CM/ECF system that will send notification of such filing to

all attorneys of record registered in the use of the CM/ECF system.

<div style="margin-left: 40%;">

EDGE LEGAL STRATEGIES, PSC

  *s/Eyck O. Lugo*
Eyck O. Lugo
Vilmarys M. Quiñones Cintrón
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Telephone:  (787) 522-2000
Facsimile:  (787) 522-2010

*Puerto Rico Counsel for Fee Examiner*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609

Brady Williamson (*Pro Hac Vice*)
*Fee Examiner*

Katherine Stadler (*Pro Hac Vice*)
*Counsel for the Fee Examiner*

</div>

21537244.4