**Reply Deadline: December 10, 2019**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| AMBAC ASSURANCE CORPORATION,<br><br>     Movants,<br><br>     -v-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>     Respondents. | No. 17 BK 3283-LTS<br><br>**Re: ECF Nos. 9022, 9023** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

|  |  |
| --- | --- |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>      Cross-Movants,<br><br>          -v-<br><br>AMBAC ASSURANCE CORPORATION,<br><br>      Cross-Respondent. | No. 17 BK 3283-LTS<br><br>**Re: ECF No. 9131** |

**AMBAC ASSURANCE CORPORATION'S OBJECTION TO THE URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO AND PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY TO STRIKE (A) AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH ASSETS [ECF NO. 9022] AND (B) AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH CASH <u>RESTRICTION ANALYSIS [ECF NO. 9023] AND FOR SANCTIONS</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ............................................................................. 1

RELEVANT FACTUAL BACKGROUND............................................................ 5

ARGUMENT ....................................................................................................... 9

I.      THE MOTION TO STRIKE SHOULD BE DENIED AS WITHOUT LEGAL
        BASIS AND BECAUSE THE RULE 2004 MOTIONS DO NOT VIOLATE THE
        LETTER OR PURPOSE OF THE STAY ORDER AND ARE PROPER UNDER
        RULE 2004. ................................................................................................. 9

        A.      The Motion Should Be Denied as Without Legal Basis. ..................................... 10

        B.      The Rule 2004 Requests Do Not Violate the Letter or Purpose of the Stay
                Order. ............................................................................................................ 11

        C.      The Discovery Sought Is Proper Under Rule 2004. ............................................ 14

II.     THE MOVANTS' REQUEST FOR SANCTIONS SHOULD BE DENIED
        BECAUSE THEY CANNOT SHOW BAD FAITH. ...................................... 18

CONCLUSION.................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barrow v. Barrow*,
2016 WL 6996996 (D. Mass. Nov. 29, 2016) ........................................................................10

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)................................................................................................................18

*In re Aida's Paradise, LLC*,
485 B.R. 806 (Bankr. M.D. Fla. 2013) ..................................................................................10

*In re Amaral*,
567 B.R. 417 (Bankr. D. Mass. 2017) .............................................................................19, 21

*In re Ashley*,
539 B.R. 198 (Bankr. D.N.H. 2015) ...........................................................................19, 21, 22

*In re Bennett Funding Grp.*,
203 B.R. 24 (Bankr. N.D.N.Y. 1996) .....................................................................................15

*In re Charbono*,
790 F.3d 80 (1st Cir. 2015)...............................................................................................19, 21

*In re Coffee Cupboard, Inc.*,
128 B.R. 509 (Bankr. E.D.N.Y. 1991)......................................................................................2

*In re Drexel Burnham*,
123 B.R. 702 (Bankr. S.D.N.Y. 1991) ...................................................................................15

*In re Emanuel*,
422 B.R. 453 (Bankr. S.D.N.Y. 2010)....................................................................................21

*In re EPD Inv. Co., LLC*,
587 B.R. 711 (C.D. Cal. 2018) ..............................................................................................20

*In re Fin. Oversight & Management Bd. for P.R.*,
295 F. Supp. 3d 66 (D.P.R. 2018)..........................................................................................17

*In re Foistner*,
2018 WL 2539294 (Bankr. D.N.H. May 31, 2018)................................................................18

*In re Millennium Lab Holdings II, LLC*,
562 B.R. 614 (Bankr. D. Del. 2016) .......................................................................................16

*In re Pinero*,
    2019 WL 2486744 (Bankr. D.P.R. June 13, 2019)................................................19

*In re Pittner*,
    2018 WL 914691 (B.A.P. 1st Cir. Feb. 1, 2018)....................................................21

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004)..............................................................15, 16

*In re Table Talk, Inc.*,
    51 B.R. 143 (Bankr. D. Mass. 1985) .......................................................................16

*In re Washington Mut., Inc.*,
    408 B.R. 45 (Bankr. D. Del. 2009) ..........................................................................16

*In re Youk-See*,
    450 B.R. 312 (Bankr. D. Mass. 2011) ....................................................................15

*Marchant v. Jamieson*,
    2007 WL 1108898 (D. Ariz. Apr. 13, 2007) ..........................................................18

*Pan Am. Grain Mfg. Co. v. P.R. Ports Auth.*,
    193 F.R.D. 26 (D.P.R. 2000) ...........................................................................19, 22

**Statutes and Rules**

48 U.S.C. § 2194(m) ........................................................................................................11

Fed. R. Bankr. P. 2004............................................................................................ *passim*

Fed. R. Bankr. P. 7012 ....................................................................................................10

Fed. R. Bankr. P. 9011 ....................................................................................................18

Fed. R. Civ. P. 7(a) .........................................................................................................10

**Other Authorities**

2-12 Moore's Federal Practice - Civil § 12.37 (2017)....................................................10

Ambac Assurance Corporation ("Ambac"), by any through its attorneys, Ferraiuoli LLC and Milbank LLP, hereby submits this objection (the "Objection") to the *Urgent Motion of Financial Oversight and Management Board for Puerto Rico and Puerto Rico Fiscal Agency and Financial Advisory Authority to Strike (A) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets [ECF No. 9022] and (B) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis [ECF. No. 9023] and for Sanctions* (Dkt. No. 9131, the "Motion") in the above-captioned proceeding.[2]  In support of its Objection, Ambac respectfully states as follows:

## PRELIMINARY STATEMENT

1.      For years, Ambac and other creditors have been forced to wait on the sidelines while the Movants have repeatedly denied them access to information that is critical in evaluating the Commonwealth's present and future ability to pay its debts.  Ambac has been asking for key financial information from the Commonwealth and certain of its instrumentalities since early 2015.  Ambac refrained from pursuing substantial discovery regarding the Commonwealth's cash position, and the disclosure of billions of dollars of cash held in previously-undisclosed accounts, to allow two different financial advisors retained by the Commonwealth to perform their analyses of the Commonwealth's cash position and bank accounts.  On October 17, 2019, the Commonwealth finally disclosed its cash analysis—which raised more questions than it answered.  Thereafter, on October 28, 2019, Ambac filed the Rule 2004 Motions.  One of the Rule 2004 Motions seeks information concerning the restricted or unrestricted status of billions of dollars in

---

[2] Unless otherwise stated, all capitalized terms used herein are as defined in the Motion.  For simplicity's sake, the Oversight Board and AAFAF are referred to herein collectively as the "Movants."

cash held by the Commonwealth; the other seeks information concerning assets held by the Commonwealth that were recently, could be, or are contemplated to be, alienated or encumbered.

2.       The Rule 2004 Motions seek information that is squarely within the scope of—and indeed, the **_intended purpose_** of—discovery under Rule 2004.  As a substantial creditor of the Commonwealth and its instrumentalities, Ambac is entitled to such information.  The information requested could not relate more directly to the "financial condition of the debtor."  Fed. R. Bankr. P. 2004(b).  That the information requested would also allow Ambac to more meaningfully evaluate the Commonwealth's proposed plan of adjustment does not, as the Movants suggest, render the requests improper under Rule 2004.  To the contrary, the very reason creditors are afforded broad discovery under Rule 2004 is to allow them to assess the debtor's ability to meet its obligations, which is also a necessary component of evaluating a debtor's proposed treatment of creditors' claims under a plan of adjustment.  *See In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)).

3.       All of this should be uncontroversial.  And yet, the Movants have responded to Ambac's virtually *pro forma* requests for information about the debtors' assets and cash position with a blanket motion to strike, continuing the Commonwealth's years-long effort to avoid providing the visibility and transparency so needed in Puerto Rico.  The Movants could have simply filed objections to the Rule 2004 Motions and taken issue with any particular document requests they thought inappropriate.  Or, if the Movants really believed that the motions violated the Stay Order, they could have requested that the motions be made subject to the mediation stay.

Instead, the Movants have doubled down on their pattern of obfuscation by taking the extreme step of asking the Court to **strike** the Rule 2004 Motions and **sanction** Ambac for having the temerity to request basic financial information.

4.      The purported basis for the Movants' attack is that the Rule 2004 Motions "blatantly violate" the Stay Order and represent "inexcusable conduct" and "bad faith," among other hyperboles.  The *in terrorem* message that the Movants intend to convey to Ambac and other creditors by their Motion is clear:  Not only will the Movants continue to stonewall creditors from obtaining discovery necessary to meaningfully evaluate the Commonwealth's financial condition, but they will ***threaten sanctions*** against any creditor that seeks discovery in an attempt to deter them from doing so.  The Court should see the Motion for what it is.  Heavy on rhetoric but light on substance, the Motion is, at best, entirely meritless, and at worst, frivolous.

5.      The Motion should be denied in the first instance because there is no legal basis for "striking" the Rule 2004 Motions (and the Movants do not offer one).  The Movants' request to "strike" the Rule 2004 Motions without any legal basis simply underscores their intent to continue preventing creditors from obtaining any insight into the Commonwealth's financial condition.

6.      The Motion should also be denied because the Rule 2004 Motions do not violate the Stay Order.  Indeed, the Movants do not point to a single directive in the Stay Order that is violated by the Rule 2004 Motions.  The Stay Order stayed only certain "adversary proceedings and contested matters" set forth in Appendix I thereto.  The Rule 2004 Motions are indisputably not adversary proceedings or contested matters set forth in Appendix I of the Stay Order.  And nothing in the Stay Order precluded the filing of future motions or contested matters (although it would have been easy for the Court to do so in the Stay Order if it had so desired).  Therefore, there can be no question that the Rule 2004 Motions are not precluded by the Stay Order.  The

Movants' repeated references to the "purpose" of the Stay Order makes plain that they know that the Rule 2004 Motions do not actually violate the Stay Order.

7.      The suggestion that the Rule 2004 Motions undermine the "purpose" of the Stay Order is similarly unsupported.  As the Court indicated at the July 24, 2019 omnibus hearing (the "July 2019 Omnibus Hearing"), the purpose of the mediation stay is to allow the parties and the mediators to create a procedural framework for "***key and gating issues***."  (Dkt. No. 8266 ("July 24, 2019 Hearing Tr.") at 56:4-5 (emphasis added).)   Informational requests concerning the Commonwealth's financial condition are not among those key and gating issues identified in the Stay Order or, for that matter, in the Stay Extension Order.  The mere fact that the information sought by the Rule 2004 Motions could have bearing on creditors' evaluation of the Commonwealth's proposed plan—which is equally true of Ambac's pensions inquiry that has proceeded consensually during the mediation stay—does not mean that the requests somehow undermine the "purpose" of the Stay Order.

8.      Ambac's discovery requests are also appropriate under Rule 2004.  The Movants appear to argue that the filing of a proposed plan of adjustment, and the anticipation of objections thereto, convert the proposed plan into a contested matter that forecloses discovery under Rule 2004 on any and all issues related to the Commonwealth, its financial condition, its ability to pay its debts, or any other matter implicated in the proposed plan.  The Movants' position, while unsurprising, is legally baseless.  The Movants do not cite a single authority that supports it.  Worse yet, it is flatly contradicted by this Court's clear directives at the outset of these Title III cases that Rule 2004 discovery would proceed and not be squeezed into compressed plan confirmation battles (as the Movants transparently seek to do now).

9.     Because there is no basis to strike the Rule 2004 Motions, the Movants' request for sanctions must be denied *a fortiori*.  But even if the Court were to conclude that the Rule 2004 Motions somehow violated the Stay Order or were improper under Rule 2004, there still would be no basis for imposing the sanctions requested by the Movants.   Contrary to the Movants' contention—***and as their own cases acknowledge***—attorney's fees can only be awarded as a sanction under the Court's inherent authority upon a showing of bad faith.  The Movants cannot come close to making that showing here.  Tellingly, each of the cases relied upon by the Movants making a finding of "bad faith" involved egregious circumstances or clear violations of court orders.  By contrast, and demonstrating the frivolousness of their sanctions request, the Movants— apparently acting as the "traffic cop" in these proceedings—rely primarily on the premise that Ambac "ignor[ed] two warnings" in which the Movants demanded that Ambac withdraw the Rule 2004 Motions.   That is an absurd argument given that Ambac firmly believed (and still believes) that the Rule 2004 Motions are entirely proper and do not violate the Stay Order.

10.     The Motion is nothing more than a bullying tactic to further discourage the Commonwealth's creditors from obtaining core information about the Commonwealth's financial condition to which they are entitled as a matter of course under Rule 2004.  If the Movants were so concerned about the Rule 2004 Motions interfering with the mediation stay, they should have simply asked the Court to refer the Rule 2004 Motions into the mediation.  Instead, they filed a meritless motion that only served to further delay discovery, multiply proceedings, and waste the Court's time and the parties' resources.  The Motion should be denied in its entirety.

## RELEVANT FACTUAL BACKGROUND

11.     In June 2019, the Oversight Board filed a series of motions (the "Stay Motions") seeking to stay certain adversary proceedings and contested matters "indefinitely" pending

confirmation of a plan of adjustment for the Commonwealth, purportedly so the Oversight Board could "garner further support for a restructuring framework" set forth in a plan support agreement with a small minority of Public Building Authority and general obligation bondholders that had been announced on June 16, 2019.  (Adv. Proc. No. 18-149, Dkt. No. 99 ¶¶ 3-4 & Proposed Order ¶ 2; No. 17-3283, Dkt. No. 7640, ¶ 4 & Proposed Order ¶ 2.)

12.     Rather than grant the Stay Motions in the form or on the grounds proposed by the Oversight Board, the Court announced at the July 2019 Omnibus Hearing that it would instead enter an order staying certain enumerated adversary proceedings and contested matters so that the Oversight Board, AAFAF, and creditors could work with the Mediation Team Leader "***to identify key and gating issues***, assess their crosscutting and collateral implications, seek to reach substantial consensus as to the prioritization of matters for litigation or mediation, and formulate a proposed schedule and appropriate notice and participation mechanisms that are as standardized and comprehensive as possible."  (July 24, 2019 Hearing Tr. at 56:4-10 (emphasis added).)  Later that day, the Court entered the Stay Order, which stayed through November 30, 2019 certain "adversary proceedings and contested matters" set forth in Appendix I to the Stay Order and directed the parties in those adversary proceedings and contested matters to engage in mediation before the Mediation Team Leader to develop a procedural framework for addressing the "key issues."  (Dkt. No. 8244.)

13.     The Stay Order tasked the Mediation Team Leader with, *inter alia*, "facilitat[ing] the filing of agreed or substantially agreed scheduling order(s) with respect to (i) the adversary proceedings and contested matters listed in Appendix I and (ii), if a plan of adjustment is filed for any Title III debtor, the process for considering approval of a disclosure statement and/or confirmation of any such plan of adjustment."  (*Id.* at A.3.)  The Stay Order also set forth certain

procedures applicable to the mediation stay and the mediation, including a directive that the Mediation Team Leader address procedures for the resolution of certain specific issues enumerated in Section B of the Stay Order.  (*Id.* at 2-3.)  The Stay Order did ***not*** direct the parties to engage in substantive discussions on any issues, instead stating that only "[i]f the Mediation Team Leader believes it appropriate to commence substantive mediation on any of the issues, . . . parties to the Mediation Agreement identified by the Mediation Team Leader shall participate in any mediation session scheduled by the Mediation Team Leader."  (*Id.* at 5.)

14.     By its terms, the Stay Order did not stay any litigation activities other than the adversary proceedings and contested matters set forth in Appendix I to the Stay Order.[3]  Nor did the Stay Order foreclose any party in the Title III proceedings from seeking discovery.  For example, as the Movants acknowledge (Motion at 9 n.5 & 12 n.7), Ambac's Pension Rule 2004 Motion (Dkt. No. 7507) is not subject to the Stay Order; Ambac has continued to meet and confer with the Movants on that motion; and the Movants have continued to produce additional materials pursuant to those requests.  Thus, it is clear that the Stay Order was not intended to and does not preclude all discovery, and the Movants do not believe that it does.[4]

---

[3] Notably, when Assured and FGIC filed their motion for adequate protection (Dkt. No. 8536 (Aug. 23, 2019) ("Adequate Protection Motion")) and sought to subject it to mediation, they filed a contemporaneous motion formally requesting that the Adequate Protection Motion "be incorporated into the same schedule and mediation process as the other adversary proceedings and contested matters identified in Appendix I to the Stay and Mediation Order" (Dkt. No. 8537, ¶ 3 (Aug. 23, 2019)), and the Court's order granting that request stated that the Adequate Protection Motion would be subject to the Stay Order "in the same manner, and to the same extent, as if the Motion were set forth on Appendix I to the Stay and Mediation Order" (Dkt. No. 8567, ¶ 2 (Aug. 28, 2019)).  Accordingly, it is clear that the parties and the Court believe that matters not listed in Appendix I to the Stay Order are not subject to the mediation stay.

[4] The Movants are correct that Ambac's two PRIFA-related motions are subject to the Stay Order.  (*See* Stay Order, App'x I (identifying Ambac's *Motion and Memorandum of Law Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* (Dkt. No. 7176, the "PRIFA Stay Motion"), and Ambac's *Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* (Dkt. No. 7328, the "Rum Tax 2004 Motion") (collectively, the "PRIFA Motions").  Ambac notes, however, that the PRIFA Motions were not originally intended by the Court to be subject to the mediation stay.  At the hearing where the Court identified the adversary proceedings and

15.     On October 24, 2019, the Movants filed a motion seeking to extend the mediation

stay to December 31, 2019.  (Dkt. No. 8972 (the "Stay Extension Motion").)  On October 28, 2019,

the Court entered the Stay Extension Order granting the Stay Extension Motion and extending the

stay of "the proceedings and contested matters listed in Appendix I of the Stay Order" until

December 31, 2019.  (Dkt. No. 9016.)  The Stay Extension Order did not purport to alter or add to

the list of stayed matters.  (*See id*.)

16.     On October 28, 2019, after the Court's entry of the Stay Extension Order, Ambac

filed the Rule 2004 Motions.  As indicated in the Rule 2004 Motions, Ambac seeks information

concerning Commonwealth cash and other assets to better understand the financial condition of

the Commonwealth and evaluate its wherewithal to repay creditors (as is inherently the case in any

Rule 2004 inquiry).  Ambac filed the Rule 2004 Motions only after the Commonwealth made

publicly available its analysis of its cash position, including its analysis of what cash it considers

to be restricted as opposed to unrestricted, and its analysis related to its bank accounts.  *See*

Exhibit 1 (*Mediation-Related Cleansing Materials Reveal $6.9B Unrestricted Cash Estimate,*

*Discuss Risks to Commonwealth Fiscal Plan*, Reorg Research (Oct. 18, 2019)).

17.     On October 29, 2019, counsel for the Oversight Board contacted counsel for Ambac

by telephone and demanded that Ambac withdraw the Rule 2004 Motions because they were

purportedly filed in violation of the Stay Order.  Counsel for Ambac explained that the Rule 2004

Motions were entirely proper and did not violate the Stay Order and that, accordingly, Ambac

---

contested matters which it intended to subject to the mediation stay, it did not identify the PRIFA Motions.
(July 24, 2019 Hearing Tr. at 57:7–16.)  Rather, Ambac voluntarily agreed to subject the PRIFA Stay
Motion to the mediation stay, whereupon the Oversight Board conditioned its consent to that arrangement
on the understanding that the Rum Tax 2004 Motion would also be subject to the mediation stay (a condition
to which Ambac agreed, upon AAFAF's agreement to provide certain information and documents).  (*Id.*
at 71:22–25; 80:19–24; 108:3–23.)  That the Court originally did not intend to refer the PRIFA Motions to
mediation further demonstrates that the Court did not consider discovery motions to be inconsistent with,
or disruptive of, the mediation process.

would not be withdrawing the Rule 2004 Motions.  (*See* Motion ¶ 21.)  On November 1, 2019,

counsel for the Oversight Board sent Ambac's counsel a letter reiterating its demand and setting

forth the same arguments previously advanced.  (*See* Motion, Ex. 1.)  In light of the fact that

Ambac's counsel had rejected the same demand and arguments of the Oversight Board's counsel

on the telephone call three days prior, there was no need for Ambac to respond to the letter.  The

Motion followed on November 8, 2019.

18.     On November 13, 2019, the Court entered an order directing that any objection to

the Motion would be due on December 3, 2019 and any reply would be due on December 10, 2019,

and that the Movants' response to the Rule 2004 Motions would be stayed until 21 days after entry

of an order on the Motion.  (Dkt. No. 9147.)  As a result, based on the current schedule, the

Movants' response to the Rule 2004 Motions would be filed after the expiration of the mediation

stay on December 31, 2019.[5]

## ARGUMENT

**I.     THE MOTION TO STRIKE SHOULD BE DENIED AS WITHOUT LEGAL BASIS
AND BECAUSE THE RULE 2004 MOTIONS DO NOT VIOLATE THE LETTER
OR PURPOSE OF THE STAY ORDER AND ARE PROPER UNDER RULE 2004.**

19.     The Movants argue that the Court should strike the Rule 2004 Motions because

they purportedly violate the "express language and core purpose" of the Stay Order and seek

information that is outside the scope of Rule 2004.  As an initial matter, the Movants do not identify

any legal basis for "striking" the Rule 2004 Motions, and the Motion should be denied on that

basis alone.  But even on the merits, the Movants' arguments are baseless.

---

[5] This schedule would not change under the proposed schedule set forth in the Mediation Team Leader's
interim report, which proposes that the stayed litigation recommence following the currently operative stay
expiration date of December 31, 2019.  (*See* Dkt. No. 9365 at 8 (Nov. 27, 2019) (noting that the report's
bifurcated structure would allow "certain significant contested matters and/or adversary proceedings to
begin to proceed on an interim basis upon the expiration of the stay with respect to those matters and
proceedings on December 31, 2019").)

### A.   The Motion Should Be Denied as Without Legal Basis.

20.     The Movants' request to "strike" the Rule 2004 Motions should be denied because
it is without legal basis.  The Movants do not cite to ***any*** legal authority in support of their request
to strike the Rule 2004 Motions.  Notably, the "Basis for Relief" section of their Motion simply
regurgitates the relief sought in the "Relief Requested" section.  *Compare* Motion ¶ 24 ("Relief
Requested" section, stating that "Cross-Movants request entry of an order, substantially similar to
the proposed order attached as Exhibit A to this Motion, striking the Rule 2004 Motions because
they violate the Stay Order and entering sanctions against Ambac for such violation.") *with id.*
¶ 25 ("Basis for Relief" section, stating that "[t]he Rule 2004 Motions should be stricken and,
because Ambac's conduct in filing the Rule 2004 Motions and ignoring two warnings was clearly
in bad faith, Ambac should be sanctioned as a result.").  The Movants' failure to offer any legal
authority for striking the Rule 2004 Motions is not surprising, because there is none.[6]

21.     The Movants' procedurally improper request that the Court "strike" the Rule 2004
Motions, rather than simply filing objections to the Rule 2004 Motions and requesting that they be
denied or referred to mediation, underscores their intent to further obstruct any discovery into the
Commonwealth's financial condition.  The Court should reject this unsupportable request that runs
contrary to the fundamental tenet of transparency in bankruptcy proceedings and under

---

[6] While Rule 12(f) of the Federal Rules of Civil Procedure (incorporated by Bankruptcy Rule 7012(b))
permits the Court to strike certain matter from a "pleading[,]" that Rule cannot apply because a motion is
not a "pleading."  *See* Fed. R. Civ. P. 7(a) (defining "pleading").  For this reason, it is black letter law that
"[m]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike."
2-12 Moore's Federal Practice - Civil § 12.37 (2017); *see In re Aida's Paradise, LLC*, 485 B.R. 806, 812
(Bankr. M.D. Fla. 2013) ("Federal Rule 12(f) is not a mechanism that permits the filing of a 'motion to
strike another motion.'"); *Barrow v. Barrow*, 2016 WL 6996996, at *4 (D. Mass. Nov. 29, 2016) (denying
plaintiff's motions to strike defendants' motions to dismiss and construing them as oppositions because
"motions to strike under Rule 12(f) apply only to pleadings, and a motion to dismiss is not a pleading").

PROMESA.  *See* 48 U.S.C. § 2194(m) (PROMESA Congressional findings noting a "lack of financial transparency" as one of the factors leading to Puerto Rico's fiscal emergency).

**B.      The Rule 2004 Requests Do Not Violate the Letter or Purpose of the Stay Order.**

22.      The Movants' arguments fare no better on the merits.  The Movants assert that the Rule 2004 Motions violate "multiple specific provisions of the Stay Order by seeking discovery on stayed matters."  (Motion ¶ 5.)  Tellingly, however, the Movants rely on nothing more than their slanted interpretations of general statements in the Stay Order (and repeated accusations that the Rule 2004 Motions violate the "purpose" of the Stay Order) and ***cannot point to a single directive of the Stay Order that has been violated***.  By its terms, the Stay Order stayed only "the adversary proceedings and contested matters listed in Appendix I" to the Stay Order.  (Stay Order at 1.)  The Rule 2004 Motions are indisputably not adversary proceedings or contested matters set forth in Appendix I of the Stay Order.  Similarly, the Stay Order does not preclude the filing of future motions or adversary proceedings, nor does it bar all discovery in the Title III proceedings.

23.      Unable to point to any directive of the Stay Order that has been violated by the filing of the Rule 2004 Motions, the Movants rely on repeated assertions that the Rule 2004 Motions contravene the "purpose" of the Stay Order.  (*See* Motion ¶¶ 5, 27, 33).  They do no such thing.  As the Court indicated at the July 2019 Omnibus Hearing, the purpose of the stay is to create a procedural framework for litigating "key and gating issues."  (July 24, 2019 Hearing Tr. at 56:4-10 (emphasis added).)  Discovery of the Commonwealth's financial condition pursuant to Rule 2004, while indisputably important, is not among those key and gating issues identified in the Stay Order or the Stay Extension Order.  That the Court also contemplated that the parties might engage in substantive mediation does not transform any such discussions into the "purpose" of the Stay Order.

24.     The Movants also baldly assert that the Rule 2004 Motions will perpetuate "litigation chaos" that the Stay Order sought to avoid.  (Motion ¶ 28.)  However, the Court clearly did **_not_** consider the existence of a Rule 2004 motion to be disruptive to the mediation process, given that the Court was prepared to address the substance of Ambac's Rum Tax 2004 Motion at the July 2019 Omnibus Hearing, before Ambac voluntarily agreed to subject that motion to the mediation stay.  (*See supra* at note 4.)

25.     Moreover, there is no better evidence of the emptiness of the Movants' bombastic invocation of "litigation chaos" than the fact that the Pension Rule 2004 Motion is proceeding outside the mediation stay, without any of the resulting "litigation chaos" portended by the Movants.  The Movants assert that the Pension Rule 2004 Motion is "distinct" from the instant Rule 2004 Motions because it purportedly involves "discrete" issues.   (Motion at 12 n.7.) However, the Pension Rule 2004 Motion, like the Rule 2004 Motions, expressly seeks information relating to the financial condition of the Commonwealth that is necessary for Ambac and other creditors to evaluate the proposed treatment of claims in the Commonwealth's proposed plan of adjustment.[7]  Information regarding the Commonwealth's pension liabilities is just as relevant to its proposed plan as information regarding its cash position and assets, yet the Movants do not— and cannot—make any claim that the Pension Rule 2004 Motion violates the Stay Order or has interfered with the mediation stay.

---

[7] *See, e.g.*, Pension Rule 2004 Motion, Dkt. No. 7507, ¶ 13 (noting that the Oversight Board's PSA summary stated that "$55 billion of pension liabilities are expected to be adjusted through the Commonwealth's plan of adjustment[,]" and that "[b]etween the release of the New Fiscal Plan and the PSA, pensions obligations have ballooned approximately $5 billion more, and yet Ambac and other creditors are no closer to understanding the assumptions underlying the massive figure"); *id.* ¶ 21 ("As the Title III proceedings move toward confirmation and pension settlements are announced, creditors must have fulsome information concerning the financial condition of the Commonwealth, and specifically with regard to its true pension obligations."); *id.* ¶ 25 (noting that "the information sought is relevant to the requirement that, to be confirmed over an impaired class's objection, a plan of adjustment must be 'fair and equitable'").

26.     Equally unavailing is the Movants' argument that the Rule 2004 Motions violated the Stay Order by "seek[ing] information relating to particular matters explicitly stayed by the Stay Order and/or identified in the Stay Order as issues for which the Mediation Team and the parties should work to develop procedures for resolution." (Motion ¶ 29.)  In support of their misguided argument, the Movants point to certain document requests that they claim seek information regarding issues listed in Section B of the Stay Order for which the Mediation Team Leader has been directed to address procedures.  (*Id.* ¶¶ 30-32.)  However, the Stay Order does not bar the parties from taking any actions that could be relevant to the issues set forth in Section B of the Stay Order.  If the Court had intended to impose that bar, it could have easily made that explicit in the Stay Order.[8]

27.     Finally, contrary to the Movants' suggestion (*id.* ¶ 32), Ambac's Cash Rule 2004 Motion does not seek information covered by the stay of Ambac's Rum Tax 2004

---

[8] At several points in their Motion, the Movants reference Ambac's participation in the mediation process or topics on which Ambac and other parties are supposedly engaging in the mediation.  For example, on three occasions, the Movants state that the parties, "including Ambac[,]" have been engaged in particular mediation efforts.  (Motion ¶¶ 3, 11, 12.)  Similarly, the Movants state that the document requests appended to the Cash Rule 2004 Motion "seek information relating to the Cash Restriction Analysis presentation given *during the mediation proceedings*" and that the "presentation and cash analysis included therein are therefore plainly substantive topics the Mediation Team Leader believes are appropriate for inclusion in the mediation process[.]"  (*Id.* ¶ 29 (emphasis in original).)  Ambac simply attached to its document requests a copy of the presentation that had been publicly published by the Commonwealth.  The Movants, however, have chosen to breach mediation confidentiality by describing what the Mediation Team Leader purportedly believed was an appropriate point for discussion in the mediation process.  This represents yet another disturbing breach of mediation confidentiality by the Movants, and should not be condoned.  (*See* Dkt. No. 1836 (Nov. 20, 2017) (Mediation Team Leader's notice of breach of mediation confidentiality); Dkt. No. 1841 (Nov. 20, 2017) (standing order prohibiting disclosure of "information regarding events or actions in the mediation process" and "positions taken by any participant in that confidential process" and warning that offending parties would be subject to sanctions); Ex. 2 (Sept. 11, 2019 Hearing Tr.) at 26:14-28:25 (expressing concern that parties have "chosen to ignore" the confidentiality restrictions); Dkt. No. 8686 (Sept. 11, 2019) (order stating that if "any further breaches of mediation confidentiality appear to occur, the Court will not hesitate to take appropriate action to determine the source of the leak and to evaluate whether to impose sanctions as may be appropriate").  Ambac disputes any attempt by the Movants to characterize its participation and involvement in substantive mediation discussions but will not breach mediation confidentiality to correct them.  If the Court desires to hear more from Ambac on this issue, Ambac is prepared to respond.

Motion.  Ambac's Rum Tax 2004 Motion seeks discovery related to "the Commonwealth's ongoing transfer of rum taxes to certain rum producers based in Puerto Rico" and where the Commonwealth has directed the "stream of rum taxes belonging to PRIFA and pledged as collateral to PRIFA's bondholders[,]" because that information is relevant to Ambac's security interest in those revenues.  (Rum Tax 2004 Motion ¶ 1.)  By contrast, the Cash Rule 2004 Motion seeks fundamentally different information—specifically, "information that will allow Ambac and other similarly situated creditors to understand the amount of unrestricted cash at the Commonwealth's disposal, as well as to test the Commonwealth's analysis of restricted versus unrestricted cash."  (Dkt. No. 9023 ¶ 2.)  And the only mention of rum taxes in the document requests appended to the Cash Rule 2004 Motion is in a *single subpart of two document requests*.  (*Id.* at Request Nos. 30.a & 31.a.)  Tellingly, if the Movants believed that the two sub-requests related to rum taxes cover issues that are subject to the mediation stay, they could have simply objected to those requests and requested that they be referred to mediation, rather than seeking to strike the Cash Rule 2004 Motion in its entirety.  Instead, the Movants use the two sub-requests as an artificial hook to transform and misrepresent the very nature of the Rule 2004 Motions.[9]

### C.   The Discovery Sought Is Proper Under Rule 2004.

28.   The Movants contend that the Rule 2004 Motions are improper on the basis that they seek discovery on "contested matters such as the disclosure statement and confirmation." (Motion ¶¶ 5, 34.)  Although barely explained, the Movants' argument seems to be that because objections to the proposed plan of adjustment are anticipated, the proposed plan is a contested matter to which the more restrictive discovery rules of the Federal Rules of Civil Procedure will apply, thereby foreclosing discovery regarding the Commonwealth's financial condition under

---

[9] To the extent the Court believes that those two sub-requests overlap with issues covered by the stayed PRIFA Motions and should be subject to the stay, Ambac is willing to subject those requests to the stay.

Rule 2004.  As a preliminary matter, this argument is at most a basis for an objection to the Rule 2004 Motions, or certain requests therein; it cannot support a motion to strike.  On substance, the Movants' argument badly misses the mark.

29.      Rule 2004 permits discovery by any party in interest relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Fed. R. Bankr. P. 2004(b).  The very "purpose of a Rule 2004 examination" is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, [and] examining transactions[.]"  *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).  "Courts recognize that the permitted scope of a Rule 2004 examination is extremely broad."  *In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass. 2011); *see also In re Drexel Burnham*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad.").

30.      To evade the broad examination of the Commonwealth to which Ambac is entitled under Rule 2004, the Movants appear to invoke (although not by name) the "pending proceeding" doctrine.  That doctrine is a limited exception to the broad discovery afforded under Rule 2004 whereby evidence related to a particular pending adversary proceeding or contested matter "must be accomplished in accord with more restrictive provisions of" the discovery rules of the Federal Rules of Civil Procedure.  *See In re Bennett Funding Grp.*, 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996).  The pending proceeding doctrine is inapplicable here for two reasons.

31.      First, the mere filing of a proposed plan of adjustment and the anticipation of objections thereto does not convert the proposed plan into a contested matter to which the pending

proceeding doctrine could apply.  The Movants do not cite a single case to support that proposition, and Ambac is aware of none.

32.    Second, and more fundamentally, the mere fact that discovery sought pursuant to Rule 2004 may touch on issues to be addressed at the plan confirmation stage does not mean that Rule 2004 discovery is not available.  Such an outcome, which finds no support in the law, would render Rule 2004 a nullity.  *See In re Washington Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("aggressive application of the 'pending proceeding' rule may prevent legitimate Rule 2004 examinations on matters wholly unrelated to the pending proceeding"); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016) ("multiple courts have held that the possible use of  information obtained through a Rule 2004 examination in collateral litigation . . . is not sufficient reason to deny an examination if it is not sought for the purpose of circumventing the federal rules of civil or bankruptcy procedure"); *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985) ("It is, however, clear that pending litigation ... against the person sought to be examined and the possible use of [Rule 2004] testimony in that collateral litigation is not sufficient reason for denying examination" (citation omitted)); *In re Recoton Corp.*, 307 B.R. at 756 (rejecting argument that Rule 2004 motion was improper on the basis that "there might be some overlap between the Florida class actions and issues raised in the bankruptcy proceedings"). Indeed, two previous decisions by this Court relating to a prior Rule 2004 request in these Title III proceedings demonstrate that the discovery sought by Ambac is proper under Rule 2004.

33.    In November 2017, Ambac and other movants filed a Rule 2004 motion seeking documents shedding light on the liabilities and financial condition of the Commonwealth.  (*See* Dkt. No. 1870 (Nov. 28, 2017) (the "November 2017 Rule 2004 Motion").)  The Oversight Board objected to the motion on the grounds that, *inter alia*, the movants had commenced adversary

proceedings, and that the relief sought was therefore not proper under Rule 2004. (Dkt. No. 2033 ("Dec. 15, 2017 Order") at 2.) This Court rejected that argument, observing that "unrelated discovery should not be subject to [the more restrictive] rules [of the Federal Rules of Civil Procedure] simply because there is an adversary proceeding pending." (*Id.* at 3 (quoting *In re Bennett Funding Grp.*, 203 B.R. at 29).) The Court granted the movants' request for the discovery (without prejudice to any objections by the Oversight Board to specific document requests), holding that "the documents that Movants identify in their 17 requests [we]re distinguishable from the subjects of the current adversary proceedings under these Title III cases [and] appropriate under Rule 2004 as they represent targeted inquiries into the financial condition of the debtor." (*Id.*)

34. The parties thereafter submitted a joint report identifying specific document requests from the November 2017 Rule 2004 Motion to which the Oversight Board continued to assert objections, the focus of which was requests seeking information related to the Oversight Board's fiscal plans. *In re Fin. Oversight & Management Bd. for P.R.*, 295 F. Supp. 3d 66, 69 (D.P.R. 2018) (Dein, M.J.), *objections sustained on other grounds*, 2018 WL 9708897 (Apr. 24, 2018). The movants requested that those documents be deemed produced pursuant to Rule 2004 so that they could be used "later in this Title III proceeding, especially during confirmation of a plan of adjustment." *Id.* at 72. The Court held that the materials were "properly discoverable under Rule 2004" because they were "seeking information to understand the past, present and future financial condition of the Commonwealth. ***This information will form the basis for any plan of adjustment. This is an appropriate purpose for discovery under Rule 2004***." *Id.* (emphasis added); *see also id.* at 73 (holding that the information sought "not only falls squarely within the purpose of Rule 2004, but is ***instructive in developing an understanding of any future plan of adjustment***" (emphasis added)); *id.* (noting that the "Fiscal Plan Development Materials

- 17 -

are important for the Movants to have *so that they can assess the financial condition of the debtor and participate in a plan confirmation process*" (emphasis added)).

35.    Similar to the Court's two decisions on the November 2017 Rule 2004 Motion, the Movants should not be permitted to use future plan confirmation proceedings as a shield to prevent Ambac from obtaining discovery of the debtor that is proper under Rule 2004.  Such arguments have already been squarely rejected by this Court, and should be rejected again.

## II.    THE MOVANTS' REQUEST FOR SANCTIONS SHOULD BE DENIED BECAUSE THEY CANNOT SHOW BAD FAITH.

36.    Ambac has not violated the terms or purpose of the Stay Order or improperly sought to invoke Rule 2004; consequently, the Movants' request for sanctions under the Court's inherent authority must be denied.  But even if the Court were to conclude that the Rule 2004 Motions were somehow improper, there would be no basis for the Movants' requested sanctions.[10]

37.    Contrary to the Movants' contention (*see* Motion ¶ 37), a finding of bad faith *is* required for a court to award attorney's fees as a sanction under its inherent authority.  Both the Supreme Court and First Circuit have so held.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) ("the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct

---

[10] The Movants' request for sanctions under the Court's inherent authority is a transparent attempt to circumvent the procedural requirements of Rule 9011, including the requirement that the moving party serve the motion on the opposing party no fewer than 21 days before filing.  If the Movants truly believed that the Rule 2004 Motions were intended to "harass" (Motion ¶ 26), that would be a basis for seeking sanctions under Rule 9011(b)(1).  *See* Fed. R. Bankr. P. 9011(b) (prohibiting the submission of a paper to the court "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation").  Yet the Movants provide no explanation for why they did not adhere to the requirements of Rule 9011.  The Movants' request for sanctions should be denied on this basis alone.  *See In re Foistner*, 2018 WL 2539294, at *15 (Bankr. D.N.H. May 31, 2018) (declining to award sanctions under court's inherent power where party requesting sanctions had failed to comply with Rule 9011, and stating that the court was "wary of exercising that power in a manner that is foreclosed by" Rule 9011); *Marchant v. Jamieson*, 2007 WL 1108898, at *4 (D. Ariz. Apr. 13, 2007) (declining to award attorney's fees as a sanction under court's inherent authority where doing so "would in effect allow defendant to circumvent the prerequisites and protections of Rule 11").

or willful disobedience of a court's orders"); *In re Charbono*, 790 F.3d 80, 88 (1st Cir. 2015) ("But where an inherent-power sanction ***does not take the form of an award of attorneys' fees*** (and thus does not involve a departure from the American Rule), a finding of bad faith is not ordinarily required." (emphasis added) (citations omitted)); *see also In re Pinero*, 2019 WL 2486744, at *3 (Bankr. D.P.R. June 13, 2019) (finding no basis to award attorney's fees as a sanction under court's inherent authority based on creditor's meritless motion to reopen legal proceedings where there was "no allegation by Debtor of bad faith on [the creditor's] part, nor of behavior that rises to the level of vexatiousness or oppression"); *In re Amaral*, 567 B.R. 417, 427–28 (Bankr. D. Mass. 2017) (declining to award attorney's fees as a sanction under court's inherent authority where the movant failed to establish bad faith by the debtor).  Indeed, the sole case relied upon by the Movants for the proposition that bad faith is not required to issue inherent authority sanctions ***expressly noted that a finding of bad faith is required*** where the requesting party seeks attorney's fees.  *See In re Ashley*, 539 B.R. 198, 203 (Bankr. D.N.H. 2015) ("The First Circuit also explained that courts are not ordinarily required to find bad faith before imposing such sanctions, ***except if the sanction includes an award of attorney's fees***." (quoting *Charbono*, 790 F.3d at 87–88)).[11]

38.     The Movants cannot come close to a showing of bad faith by Ambac.  In support of their contention that Ambac acted in bad faith by filing the Rule 2004 Motions, the Movants rely on the assertion that Ambac "fil[ed] the Rule 2004 Motions mere hours after the Court extended the stay and refus[ed] to engage with [the Movants] regarding their withdrawal . . . ." (Motion ¶ 37.)   But that "powerful evidence" (*id.*) evidences nothing, other than the fact that

---

[11] As recognized by the court in another case relied upon by the Movants, *Pan Am. Grain Mfg. Co. v. P.R. Ports Auth.*, the requirement of a showing of bad faith for an award of attorney's fees under the court's inherent sanctioning power applies to discrete pieces of a case, as well as to shifting of attorney's fees incurred in the action as a whole.  193 F.R.D. 26, 31–32 (D.P.R. 2000) (requiring a showing of bad faith before awarding, as a sanction under the court's inherent authority, attorney's fees incurred by the defendants in response to various discovery abuses by the plaintiff).

Ambac believed (as it continues to believe) that its Rule 2004 Motions are entirely proper. Ambac and its counsel carefully reviewed the Stay Extension Order and determined that the Rule 2004 Motions were consistent with it, given that the Stay Extension Order by its terms simply maintained the status quo as set forth in the Stay Order. Similarly, the Movants' suggestion that Ambac should be sanctioned for refusing to accede to their demand to withdraw the Rule 2004 Motions when Ambac believed that those requests were proper speaks volumes about the Movants' arrogant belief that they can unilaterally dictate the terms of discovery. *See In re EPD Inv. Co., LLC*, 587 B.R. 711, 721–22 (C.D. Cal. 2018), *reconsideration denied*, 595 B.R. 910 (denying a request for sanctions based on the defendants' refusal following meet-and-confer discussions to withdraw the filing of an unpermitted reply brief, where the defendants' interpretation of the applicable local rule was not "an unreasonable position to take").[12]

39.     Equally meritless is the Movants' contention that Ambac's purported bad faith is "further evidenced by its proposed schedule for responses to the Rule 2004 Motions" (Motion ¶ 37)—a puzzling assertion given that the objection and hearing dates identified in the Rule 2004 Motions are based on the Court's operative case management order. In a similar vein, the Movants assert that Ambac's proposed schedule is a "clear attempt to have plan-discovery issues plainly covered by the stay heard while the stay is in place." (*Id.*) As discussed previously, however, the Rule 2004 Motions in particular and "plan-discovery issues" more generally are not subject to the stay. Even if the Court were to conclude otherwise, this would evidence nothing other than

---

[12] Moreover, any suggestion that Ambac "refus[ed] to engage" with the Movants regarding the Rule 2004 Motions as a general matter is simply false. As the Movants concede, counsel for Ambac engaged in a telephone conversation with the Oversight Board's counsel after the filing of the Rule 2004 Motions, during which Ambac's counsel informed opposing counsel that Ambac and its counsel believed that the Rule 2004 Motions were proper and that they would not be withdrawn. There was no need for Ambac and its counsel to waste time responding to the Oversight Board's ensuing letter when its counsel had already informed the Oversight Board of Ambac's position.

Ambac's good faith interpretation of an ambiguity in the Stay Order rather than a bad faith attempt to violate any clear directive of the Court. Such conduct could not possibly be worthy of sanctions. *See In re Pittner*, 2018 WL 914691, at *10–12 (B.A.P. 1st Cir. Feb. 1, 2018) (affirming bankruptcy court order declining to impose civil contempt sanctions where debtor did not violate a "clear and unambiguous" directive in the bankruptcy court's order, and rejecting the argument that "inferences" that should have been made from the order warranted sanctions); *In re Amaral*, 567 B.R. at 427–28 (declining to find bad faith absent conduct "significantly more troublesome than that of the [d]efendant here" where the position advanced by the defendant was not "frivolous"); *In re Emanuel*, 422 B.R. 453, 465–66 (Bankr. S.D.N.Y. 2010) ("Examples of sanctionable conduct include 'resubmitting a motion that had previously been denied'; 'bringing a motion based on 'facts' the opposite of which were previously found by the court'; 'making several insupportable bias recusal motions and repeated motions to reargue'; 'continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased'; and 'waiting until the eve of trial before making a jury demand.'") (quoting *Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995))).

40.     As one would expect, the cases relied upon by the Movants involve clear violations of court orders and egregious circumstances that simply underscore why sanctions could not possibly be appropriate here. (*See* Motion ¶¶ 36-37.) In *In re Charbono*, the debtor violated a provision of a confirmed Chapter 13 plan that "ma[de] pellucid" his ongoing obligation to furnish a copy of his federal income tax return or any extension request to the bankruptcy trustee within seven days after filing, and ignored a letter from the trustee as the tax return deadline approached reminding him of his obligation. 790 F.3d at 84. Similarly, in *In re Ashley*, the creditor-automobile lender failed to release title to a vehicle to a debtor following confirmation of a Chapter 13 plan,

- 21 -

in violation of the confirmation order's clear directive to "execute a release of its security interest" in the title upon payment of the loan in full, and failed to respond to several letters demanding release of the title. 539 B.R. at 200–03. Finally, the conduct in *Pan American Grain Manufacturing* included the plaintiff hiding the identities of two key witnesses, attorneys secretly recording opposing counsel, and physical violence at a deposition, 193 F.R.D. at 31–32—conduct that is laughably different from the information requests made by Ambac.

## CONCLUSION

41.     For the foregoing reasons, Ambac respectfully requests that the Motion be denied.

Dated:  December 3, 2019
    San Juan, Puerto Rico

**FERRAIUOLI LLC**
By: /s/ Roberto Cámara-Fuertes
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email:  rcamara@ferraiuoli.com
       scolon@ferraiuoli.com

**MILBANK LLP**
By: /s/ Dennis F. Dunne
Dennis F. Dunne (admitted *pro hac vice*)
Atara Miller (admitted *pro hac vice*)
Grant R. Mainland (admitted *pro hac vice*)
Jonathan Ohring (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5770
Facsimile: (212) 822-5770
Email: ddunne@milbank.com
      amiller@milbank.com
      gmainland@milbank.com
      johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

<u>*/s/ Jonathan Ohring*</u>
Jonathan Ohring
