**Hearing Date and Time:** March 4, 2020 at 8:30 a.m. (ET) / 9:30 a.m. (AST)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) |
| | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |
| | ) No. 17 BK 3283-LTS |
| as representative of | ) |
| THE COMMONWEALTH OF PUERTO RICO, | ) (Jointly Administered) |
| *et al.* | ) |
| | ) |
| Debtors. | ) |
| | ) |
| In re: | ) |
| | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |
| | ) No. 17 BK 4780-LTS |
| as representative of | ) |
| PUERTO RICO ELECTRIC POWER | ) **THIS COURT FILING RELATES** |
| AUTHORITY | ) **ONLY TO PREPA** |
| | ) |
| Debtor.[1] | ) |
| | ) |

## OMNIBUS OBJECTION TO FEE APPLICATIONS FILED BY PROFESSIONALS AND
## REQUEST TO INCREASE HOLDBACK AMOUNT

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................................1

BACKGROUND ...................................................................................................................3

    A.     General Case Background..................................................................................3

    B.     Cobra's Restoration Work .................................................................................4

    C.     The 9019 Motion and the RSA ........................................................................6

OBJECTION..........................................................................................................................9

    A.     PREPA's Admitted Administrative Insolvency Requires the Suspension of
Further Interim Professional Fee Payments.....................................................9

    B.     Alternatively, the Court Should Increase the Holdback Amount and
Prohibit the Disbursement of the Holdback Amounts to the Extent PREPA
Cannot Demonstrate Its Administrative Solvency .................................................12

RESERVATION OF RIGHTS ...........................................................................................15

CONCLUSION....................................................................................................................16

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of New England Corp.*,
   134 B.R. 450 (Bankr. D. Mass. 1991), *aff'd*, 142 B.R. 584 (D. Mass 1992)..........................13

*In re Brooke Corp.*,
   No. 08-22786, 2013 Bankr. LEXIS 5382 (Bankr. D. Kan. 2013) ...........................................14

*Butler v. Indiano (In Re Ponce Marine Farm, Inc.)*,
   259 B.R. 484 (D.P.R. 2001)....................................................................................................10

*In re Casco Bay Lines, Inc.*,
   25 B.R. 747 (B.A.P. 1st Cir. 1982) ........................................................................................10

*In re Child World*,
   185 B.R. 14 (Bankr. S.D.N.Y. 1995) ................................................................................. 12-3

*In re Cty. of Orange*,
   179 B.R. 195 (Bankr. C.D. Cal. 1995).....................................................................................10

*In re HQ Glob. Holdings, Inc.*,
   282 B.R. 169 (Bankr. D. Del. 2002) ........................................................................................10

*In re Kingston Turf Farms, Inc.*,
   176 B.R. 308 (Bankr. D.R.I. 1995) .........................................................................................11

*In re Lakeshore Constr. Co. of Wolfeboro, Inc.*,
   390 B.R. 751 (Bankr. D.N.H. 2008) .........................................................................................9

*Local 144 Hospital Welfare Fund v. Baptist Med. Ctr. of New York In re Baptist
   Med. Ctr. of New York, Inc.*,
   52 B.R. 417 (E.D.N.Y. 1985), *aff'd* 781 F.2d 973 (2d Cir. 1986)..........................................11

*In re Pub. Serv. Co. of New Hampshire*,
   138 B.R. 660 (Bankr. D.N.H. 1992) ........................................................................................13

*In re Pyxsys Corp.*,
   288 B.R. 309 (Bankr. D. Mass. 2003) .....................................................................................10

*In re Standard Furniture Co.*,
   3 B.R. 527 (Bankr. S.D. Cal. 1980) ........................................................................................11

*In re Virginia Packaging Supply Co., Inc.*,
   122 B.R. 491 (Bankr. E.D. Va. 1990).......................................................................................11

**Statutes**

11 U.S.C. § 507(a)(2)..................................................................................................................9

48 U.S.C. §§ 2101-2241............................................................................................................1

48 U.S.C. § 2174(b)(4)...........................................................................................................8-9

48 U.S.C. § 2176......................................................................................................................10

48 U.S.C. § 2177......................................................................................................................10

**Other Authorities**

3 COLLIER ON BANKRUPTCY P 331.02[6][c] (Richard Levin & Henry J. Somme
    reds., 16th ed.) ....................................................................................................................12

Cobra Acquisitions LLC ("Cobra"), by and through its undersigned counsel, hereby files this omnibus objection (the "Objection") to the interim fee applications pending before this Court (collectively, the "Fee Applications")[2] as such Fee Applications relate to the case (the "Title III Case") commenced by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") for the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor" and, together with the Oversight Board and the Puerto Rico Fiscal Agency and Financial Authority, the "Government Parties") pursuant to section 304(a) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA").[3]  In support of this Objection, Cobra respectfully states as follows.

## **PRELIMINARY STATEMENT**[4]

1.      PREPA apparently has acknowledged that it cannot satisfy its administrative expenses.  Yet, despite this admission, PREPA continues to reimburse on a current basis millions of dollars in fees and expenses incurred by professionals.  Equally concerning, subject to Court approval, PREPA has agreed to reimburse, largely on an uncapped basis, the fees and expenses incurred by the professionals for certain prepetition bondholders and provide those same bondholders with accruing administrative claims—payments that will result in hundreds of millions of further administrative claims.  These actions extremely prejudice all other administrative creditors.

---

[2] Due to the number of applications, the Fee Applications subject to this Objection are listed in Annex A attached hereto.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[4] Capitalized terms used in this Preliminary Statement have the meaning ascribed to such terms elsewhere in this Objection.

2.      In contrast to the professionals' and the bondholders' favored position, other administrative creditors face significant risks of non-payment or partial payment despite providing essential services to PREPA.  Cobra, which PREPA contracted to perform urgent work necessary to rebuild Puerto Rico's electrical system, remains uncompensated for over $200 million in fees and expenses.[5]  Without the postpetition work of Cobra, there would be no electrical system around which PREPA could attempt to reorganize.  Moreover, much of the amounts due to Cobra are undisputed by PREPA.  Nevertheless, rather than pay what became due and owing to Cobra after it completed its work in April 2019, PREPA has stated that it needs FEMA's assistance to pay Cobra—even though Cobra contracted with PREPA, not FEMA, to provide restoration services.  Irrespective of PREPA's delay tactics, there can be no genuine dispute that without Cobra's extensive efforts PREPA would be even further away than it is now from confirming a plan of adjustment and concluding the Title III Case.

3.      Effectively, PREPA has separated its administrative creditors into two unequal classes contrary to fundamental bankruptcy principles.  On the one hand, professionals receive current payment of their fees and expenses (up to 90 percent on a monthly basis, and interim allowance of 100 percent on a quarterly basis)—costs that the Oversight Board has called "tragic and exorbitant."[6]  On the other hand, PREPA has forced certain other creditors—such as Cobra and other postpetition creditors that have provided critical services—to accept the increased risk associated with waiting for payment from an administratively insolvent debtor.  In the chapter 11

---

[5] Similarly, Whitefish Energy Holdings, LLC, another administrative creditor that provided disaster relief services, has stated it is owed nearly $130 million.  *See Limited Objection of Whitefish Energy Holdings, LLC to the Joint Motion of PREPA and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement* [Case No. 17-BK-4780-LTS, ECF No. 1641].

[6] *See* Letter to Senators Sanders, Warren, Merkley, Blumenthal, Gillibrand, Booker, and Menendez and Representatives Ocasio-Cortez, Pocan, Jayapal, Espaillat, and Garcia, Oct. 7, 2019 from the Financial Oversight and Management Board for Puerto Rico (the "Oct. 7 Letter").

context, courts recognize the unfairness inherent in favoring one group of similarly situated creditors over another.  As a result, under similar circumstances, courts have required that a debtor suspend current payments to administrative creditors, including professionals, in order to ensure equal and orderly distributions to creditors.  The same principle should apply here.

4.     Accordingly, by this Objection, Cobra requests that the Court suspend further current reimbursement of professional fees unless and until PREPA can demonstrate its administrative solvency, including its ability to pay—as it is contracted to do—Cobra's outstanding invoices.  Alternatively, the Court should consider significantly increasing the current holdback amounts under the Interim Compensation Order and requiring that PREPA demonstrate its administrative solvency prior to disbursing any holdback amounts following interim allowance.  Absent PREPA's ability to show its administrative solvency, the Court should prohibit the disbursement of the holdback amounts until entry of an order approving the final fee applications.  Courts have recognized that a holdback acts to moderate excessive interim allowances and to motivate professionals to resolve cases efficiently.  Here, a significantly increased holdback would serve both purposes.

## **BACKGROUND**

### A.     **General Case Background**

5.     On July 2, 2017, the Oversight Board issued a restructuring certificate pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PREPA, commencing the Title III Case in the United States District Court for the District of Puerto Rico (the "Court").  The Title III Case is administered jointly with the cases commenced by the Oversight Board for the Commonwealth of Puerto Rico, the Puerto Rico Sales Tax Financing Corporation, the Employees Retirement System of the Government of the Commonwealth of

Puerto Rico, the Puerto Rico Highways and Transportation Authority, and the Puerto Rico Public

Buildings Authority (filed on September 27, 2019) (collectively, the "Title III Cases").

6.      On August 23, 2017, the Court entered the *Order Setting Procedures for Interim

*Compensation and Reimbursement of Expenses of Professionals* [ECF No. 252] (as amended, the

"Interim Compensation Order").[7]

7.      On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections

316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related

Relief* [ECF No. 1416].  The Court appointed Brady Williamson as the Fee Examiner in the Title

III Cases.

8.      The total cost of professionals in the Title III Cases currently exceeds $530

million.  *See Limited Objection and Reservation of Rights by the Fee Examiner with Respect to

the PREPA/AAFAF Rule 9019 Motion for PREPA RSA Approval* [ECF No. 9065] (the "Fee

Examiner RSA Objection") at 8.  At least 53 financial, legal and other professionals submit fee

applications for approval by the Court under PROMESA sections 316 and 317.  *See Fee

Examiner's Report on Uncontested Professional Fee Matters for Consideration in Connection

with the October 30, 2019 Omnibus Hearing* [ECF No. 8934] at 2.

**B.      Cobra's Restoration Work**

9.      On October 19, 2017, PREPA and Cobra entered into a $200 million emergency

contract for restoration services (the "First Agreement") following the destruction of Puerto

Rico's power grid by Hurricanes Irma and Maria.  Cobra began work under the First Agreement

soon thereafter, deploying on an expedited basis and under extremely challenging conditions

hundreds of skilled workers and many tons of specialized equipment to work on Puerto Rico's

---

[7] The Interim Compensation Order was amended most recently on June 6, 2018 [ECF No. 3324].

devastated transmission and distribution lines.  Cobra's remarkable efforts led to the restoration
of Puerto Rico's electric grid by April 2019.

10.     The parties amended the First Agreement five times.  The fifth amendment
brought the total contract amount to $945 million.  Cobra submitted invoices for work completed
under the First Agreement.  Over $92 million, with interest continuing to accrue, remains unpaid.

11.     On May 26, 2018, following a competitive process, PREPA and Cobra entered
into a $900 million contract for electrical grid repairs (the "Second Agreement").  Cobra
completed work under the Second Agreement on or about March 31, 2019.  Cobra submitted
invoices for work completed under the Second Agreement.  Over $152 million, with interest
continuing to accrue, remains unpaid.  Significant amounts of the unpaid invoices are not
disputed by PREPA.

12.     Since payments by PREPA on Cobra's invoices ceased around May 2019, Cobra
has made every reasonable effort to reach a consensual resolution with PREPA without legal
action.  These efforts, however, have been without avail.[8]  As a result, on September 30, 2019,
Cobra filed *Cobra Acquisitions LLC's Motion for Allowance and Payment of Administrative
Expense Claims* [ECF No. 8789] (the "Administrative Expense Motion").  The Administrative
Expense Motion seeks an order allowing as an administrative expense claim Cobra's unpaid and
outstanding balance under the First and Second Agreements of $216,116,471.93, plus interest not
yet invoiced.

---

[8] In the Fiscal Plan for PREPA certified on June 27, 2019, PREPA stated that it has implemented certain initiatives
to "produce meaningful improvements to its liquidity situation," including "*managing payment* to largest restoration
vendors until PREPA collects the reimbursement funds from FEMA."  *See* 2019 Fiscal Plan for the Puerto Rico
Electric Power Authority at 113 (emphasis added).  As Cobra noted in its Administrative Expense Motion, the
parties to the First Agreement and the Second Agreement are PREPA and Cobra, not FEMA, and nothing under the
agreements relieves PREPA of its payment obligations to Cobra.

13.     On October 10, 2019, PREPA and its representatives requested that the Court stay all litigation relating to the Administrative Expense Motion.  *See Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [ECF No. 8838] (the "Extension Motion").  On October 17, 2019, the Court entered an order granting the Extension Motion [ECF No. 8886].  As a result, all litigation relating to the Administrative Expense Motion has been stayed, and, following the submission of a joint informative motion, a status conference on the Administrative Expense Motion is scheduled for January 29, 2020.

### C.     The 9019 Motion and the RSA

14.     Concurrent with Cobra's efforts to restore Puerto Rico's power grid, the Government Parties have been engaged in protracted negotiations, disputes and litigation with its prepetition creditors over the potential debt restructuring.  These efforts resulted in the Government Parties filing, on May 10, 2019, the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Case No. 17-BK-4780-LTS, ECF No. 1235] (the "9019 Motion").  The 9019 Motion seeks Court approval of settlements embodied in a definitive Restructuring Support Agreement (as amended or supplemented, the "RSA") between the Government Parties, certain holders of PREPA's bonds (the "Supporting Bondholders") and Assured Guaranty Municipal Corp.[9]

15.     Several constituencies oppose approval of the 9019 Motion, including Cobra, the official committee of unsecured creditors (the "UCC"), certain lenders that extended PREPA

---

[9] Following certain amendments to the RSA, the other monoline insurers, National Public Finance Guarantee Corporation and Syncora Gurantee Inc., signed onto the RSA.

credit prepetition for fuel purchases (the "Fuel Line Lenders") and the Fee Examiner. *See Cobra Acquisitions LLC's Objection to Amended Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928 and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in Restructuring Support Agreement* [Case No. 17-BK-4780-LTS, ECF No. 1682] (the "Cobra RSA Objection"); *Official Committee of Unsecured Creditors Objection to Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928 and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in Restructuring Support Agreement* [Case No. 17-BK-4780-LTS, ECF No. 1701] (the "UCC RSA Objection") (calling the settlement in the 9019 Motion "yet another 'bad deal' that PREPA, long plagued by a history of mismanagement and irresponsible fiscal policy, erroneously believes will finally solve its financial problems."); *Objection of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to PREPA Bondholder Settlement* [Case No. 17-BK-4780-LTS, ECF No. 1700] (the "Fuel Line Lenders RSA Objection").

16.     In particular, Cobra objected to certain provisions in the 9019 Motion and the RSA that it believed prejudiced other administrative creditors. Cobra RSA Objection ¶¶ 8-9. Among other things, Cobra opposed the provisions in the RSA that would provide the Supporting Bondholders with pre-plan of adjustment consideration, current cash distributions, accruing administrative claims on prepetition claims and payment of professional fees. *Id.* These provisions lack any foundation in the law and, if approved, would create a class of prepetition claimants with "super priority" administrative expense status ahead of other administrative claims.

17. The Fee Examiner took a similar position. The Fee Examiner objected to the unchecked and undisclosed payment of the professional fees under the RSA that "[e]very household and business in the Commonwealth will bear [if approved] . . . through an increase in utility rates that already among the highest nationwide." Fee Examiner RSA Objection ¶ 1. The Fee Examiner focused in particular on PREPA's uncapped commitment under the RSA to reimburse the fees and expenses of the Supporting Bondholders' and bond insurer's professionals through the contemplated plan of adjustment (and the $25 million that PREPA agreed to reimburse for certain periods prior to the RSA execution).

18. Among their many other objections, the UCC and the Fuel Line Lenders also opposed the incurrence of administrative claims granted under the RSA. *See* UCC RSA Objection ¶ 15 ("[T]he Proposed Settlement contains numerous terms and conditions that are illegal and/or clearly not in PREPA's best interest . . . includ[ing] the allowance of administrative expense claims of hundreds of millions of dollars of post-petition interest for the Supporting Holders who are, without a doubt, undersecured . . . [and] the payment of at least $30 million (and likely over $50 million) in fees and expenses to the Supporting Holders' professionals"); Fuel Line Lenders RSA Objection ¶ 18 ("[T]he Settlement Motion should be denied because it would provide the bondholders with huge administrative expense claims against PREPA, without any statutory basis.").

19. The Court, at the request of the parties, periodically has extended the deadlines for discovery and objections with respect to the 9019 Motion. As of the filing of this Objection, the 9019 Motion is scheduled to be heard by the Court on January 14, 2020. *See* Case No. 17-BK-4780-LTS, ECF No. 1716.

## OBJECTION

**A.     PREPA's Admitted Administrative Insolvency Requires the Suspension of Further Interim Professional Fee Payments**

20.     Under PROMESA, unless agreed otherwise, any confirmed plan of adjustment requires on the effective date the payment in full in cash of claims specified under Bankruptcy Code section 507(a)(2).  48 U.S.C. § 2174(b)(4).  Bankruptcy Code section 507(a)(2) in turn refers to administrative expenses allowed under Bankruptcy Code section 503(b).  11 U.S.C. § 507 (a)(2).  Under Bankruptcy Code section 503(b), all administrative expense claims are entitled to the same priority and equal treatment.  *In re Lakeshore Constr. Co. of Wolfeboro, Inc.*, 390 B.R. 751, 760 (Bankr. D.N.H. 2008) (stating that, because a claim is an administrative expense, "it must be treated equally and rateably [*sic*] with all other administrative expense claims.") (citations omitted).  As PREPA appears to have acknowledged, absent further reimbursement from FEMA, PREPA is administratively insolvent.  *See* Extension Motion ¶¶ 20, 28, fn. 6 ("PREPA was and remains financially incapable of undertaking the extension grid repairs necessary after Hurricane Maria without public assistance from FEMA" . . . PREPA "does not have immediate or clear access to the funds necessary to pay Cobra's purported claims" without taking funds away from its operating expenses).  Accordingly, until such time as PREPA can demonstrate a clear ability to satisfy all administrative expense claims, including those asserted by Cobra, PREPA should make no further payment on administrative expense claims, including the claims of professionals.

21.     Despite PROMESA's clear requirement to pay *all* administrative expense claims in full in cash (and PREPA's apparent inability to satisfy it), professionals in the Title III Case continue to receive monthly reimbursement and interim allowance of their fees and expenses pursuant to the Court's Interim Compensation Order.  While certain administrative creditors

remain past due on payment, professionals in the Title III Cases—amounting to over 50 firms,

approximately 28 of which provide services to PREPA—have billed or received payment of over

$500 million.[10]  While the RSA represents a significant step in the Title III Cases, the RSA faces

extensive objections and, despite commencing the case over two years ago, the Government

Parties have yet to file a plan of adjustment.  The fees only will increase.

22.     Under PROMESA, the Court has discretion in allowing the interim payment of

professional fees.  48 U.S.C. § 2176 (stating that, after notice and a hearing, the court "*may*

award to a professional person . . . reasonable compensation for actual, necessary services*")

(emphasis added); 48 U.S.C. § 2177 (stating that professionals employed by the debtor, the

Oversight Board, a committee, or a trustee "may apply to the court not more than once every 120

days").  In contrast to chapter 9, Congress granted courts under PROMESA the express authority

to oversee the payment of professional fees, a routine function for courts in the chapter 11 cases.

48 U.S.C. § 2176; *compare In re Cty. of Orange*, 179 B.R. 195, 199 (Bankr. C.D. Cal. 1995)

(noting that Bankruptcy Code section 331, the provision allowing interim compensation of

professionals, is not incorporated into chapter 9) *with Butler v. Indiano (In Re Ponce Marine

Farm, Inc.)*, 259 B.R. 484, 495 (D.P.R. 2001) ("Bankruptcy courts 'are accorded broad

discretion in determining reasonable fee allowances.'") (citing *In re Casco Bay Lines, Inc.*, 25

B.R. 747, 753 (B.A.P. 1st Cir. 1982).

23.     In the chapter 11 context, courts have acknowledged the timing of payment of

administrative expense claims, including professional fees, depends largely on whether or not

administrative solvency is a risk.  When a debtor may not be able to pay all administrative

---

[10] Current estimates predict that Puerto Rico's total bill for professionals will reach $1.5 billion through 2024.  *See*
Maria Chutchian, *A Reasonable Proposal: How US Law Allows Puerto Rico's Legal Bills to Flourish* (Oct. 9,
2019), Debtwire Investigations, *available at* http://investigations.debtwire.com/a-reasonable-proposal-how-us-law-
allows-puerto-ricos-legal-bills-to-flourish/.

expenses in full, courts have held that distributions on account of administrative expenses should be suspended prior to confirmation in order to ensure an orderly and equal distribution among creditors. *See, e.g.*, *In re Pyxsys Corp.*, 288 B.R. 309, 315 (Bankr. D. Mass. 2003); *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002); *Local 144 Hospital Welfare Fund v. Baptist Med. Ctr. of New York (In re Baptist Med. Ctr. of New York, Inc.*, 52 B.R. 417, 421 (E.D.N.Y. 1985), *aff'd* 781 F.2d 973 (2d Cir. 1986); *In re Standard Furniture Co.*, 3 B.R. 527, 532 (Bankr. S.D. Cal. 1980). As noted by one court, "[i]n many bankruptcy cases, *when* a claim is paid makes the difference as to whether it will be paid at all." *In re Virginia Packaging Supply Co., Inc.*, 122 B.R. 491, 495 (Bankr. E.D. Va. 1990) (emphasis in original). Suspending distributions is a prudent course of action under such circumstances, as several courts have required professional fees to be disgorged "to ensure that all creditors of the same class share pro-rata in the available pool of funds." *In re Kingston Turf Farms, Inc.*, 176 B.R. 308, 310 (Bankr. D.R.I. 1995) (citations omitted).

24. The Court should apply the same principle here. To do otherwise would violate the fundamental requirement of equal treatment for similarly situated creditors by creating a favored class of administrative creditors (professionals) while the non-favored administrative creditors are not being paid current and face increased risk of non-payment. Absent PREPA demonstrating its administrative solvency, the risk to both administrative creditors and all other creditors is too great to continue allowing millions of dollars in cash to be paid to certain of the Debtor's creditors.

25. To be clear, the relief requested by Cobra is not meant to prejudice professionals, and Cobra at this time has no objection to any particular firm's fees or time entries. The ultimate allowance of professional fees are not the subject of this Objection, as all issues involving

allowance and payment of fees will be taken up by the relevant parties, including the Court and

the Fee Examiner.  Instead, this Objection focuses only on the payment of those fees now, when

PREPA has indicated that it is administratively insolvent.  The prejudice here, if any, will be to

other administrative creditors, such as Cobra, if Cobra's requested relief is not granted.

**B.      Alternatively, the Court Should Increase the Holdback Amount and Prohibit the
          Disbursement of the Holdback Amounts to the Extent PREPA Cannot Demonstrate
          Its Administrative Solvency**

26.      Alternatively, and based upon a review of PREPA's administrative insolvency,

the Court should consider increasing significantly the ten percent holdback amount for the

Debtor's professionals and the 20 percent holdback amount for the UCC's professionals that

applies only to monthly fee statements.  *See* Interim Compensation Order ¶ 2(c).  Increasing the

holdback amount would reflect serious concern regarding administrative insolvency, and that all

administrative creditors should bear similar risks as the Title III Case progresses.  In addition,

rather than disburse the holdback amount to the professionals after approving interim

allowances, *see* Interim Compensation Order ¶ 2(f) (allowing the disbursement of the holdback

upon interim allowance), the Court should first order PREPA to demonstrate its administrative

solvency, including its ability to pay Cobra's claims.[11]  To the extent PREPA cannot do so, the

holdback amount should not be disbursed until the entry of an order approving any final fee

applications.

27.      Holdbacks serve two purposes—and are relevant particularly when administrative

insolvency is a risk.  *See, e.g.*, *In re Child World*, 185 B.R. 14, 18 (Bankr. S.D.N.Y. 1995) ("In

the end, . . . holdbacks are either . . . paid in full, in part or denied altogether (with the potential

---

[11] The Government Parties may argue that not requiring a holdback for the payment of fees and expenses after
allowance of an interim fee application is common practice.  However, in contrast to many complex chapter 11
cases, professional fees here are not being paid out of the cash collateral of a secured lender nor is there a "carve
out" for the benefit of professionals.

for additional disgorgement) depending upon an array of factors including: the total interim fees paid the applicant, the total and priority of the final fees awarded and the level of solvency of the estate."); *see also* 3 COLLIER ON BANKRUPTCY P 331.02[6][c] (Richard Levin & Henry J. Somme reds., 16th ed.) (stating that a holdback is appropriate "[i]n those cases where there is some doubt about full payment for administrative expenses and where the hardship on the professional is lessened because the case will be resolved in a shorter period[.]").

28.     *First*, holdbacks commonly are used to moderate potentially excessive interim allowances.  Courts recognize that the statute permits interim allowance, not interim awards, because "there is no legal entitlement to payment prior to the final fee award." *In re Pub. Serv. Co. of New Hampshire*, 138 B.R. 660, 661-62 (Bankr. D.N.H. 1992) ("[F]inal fee awards are determined only upon conclusion of the case when the Court can review the entire history of the case, the results obtained from the rendition of the professional services, and all other relevant factors bearing on the propriety of the final fee requests.").  A holdback balances professionals' request for compensation while a case is pending with the court's need for certainty in order to determine the reasonableness of such professional's fees.  *In re Bank of New England Corp.*, 134 B.R. 450, 459 (Bankr. D. Mass. 1991) ("The holdback is because the Court is unable to make a sufficient determination on those criteria [for reasonableness] until a later stage of the proceedings."), *aff'd*, 142 B.R. 584 (D. Mass 1992).

29.     *Second*, holdbacks provide an incentive to professionals to timely resolve the cases.  *In re Child World*, 185 B.R. at 18.  The rationale is straightforward.  If a material amount of professional fees are withheld from every monthly or interim payment, professionals will have appropriate incentives to progress the cases and not simply extract the most they can from the cases.

30.     Increasing the holdback amount in these cases would fulfill both purposes. Currently, PREPA's professionals receive 90 percent and the UCC's professionals receive 80 percent upon filing a monthly fee statement.  Increasing the holdback amounts (*i.e.*, the ten percent and the 20 percent) by a significant percentage would ensure that excessive amounts of funds are not allowed during this interim period while also increasing PREPA's liquidity, an objective that would appear consistent with PREPA's other efforts as it progresses toward its transformation and potential exit from the Title III Case.  In addition, in the chapter 11 context, increasing the holdback is not unwarranted where there are concerns about the effect of the fees on the estate.  *See In re Brooke Corp.*, No. 08-22786, 2013 Bankr. LEXIS 5382 (Bankr. D. Kan. 2013) (increasing attorney's holdback).  Further, an increased holdback amount likely would motivate professionals to move more expeditiously to resolve the Title III Case.  While Cobra does not dispute that the Title III Case has been complicated, it seems equally indisputable that all stakeholders would be best served by resolving the Title III Case as soon as possible.

31.     Finally, Cobra requests that, to the extent the Debtor cannot demonstrate its administrative solvency, that the Court prohibit the disbursement of the holdback amount after entry of orders granting interim fee allowances.  Currently, the Interim Compensation Order permits professionals to recover 100 percent of their fees and expenses upon interim allowance, with no amounts held back.  In light of the Debtor's current apparent administrative insolvency, it is imprudent for the entire holdback amount to be disbursed upon interim allowance, especially when other administrative creditors face the increased risk of non-payment.

14

## **<u>RESERVATION OF RIGHTS</u>**

32.     Cobra reserves the right to amend or supplement this Objection.  Cobra also

reserves the right to object to final fee applications and to assert any other rights under applicable

law.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, Cobra respectfully requests that this Court (i) deny the Fee Applications to the extent that the professionals request immediate payment of their fees, (ii) (a) suspend the professional's monthly compensation and reimbursement procedures pursuant to the Interim Compensation Order or (b) increase significantly the holdback amount and require that no holdback amounts be disbursed upon interim allowance unless PREPA can demonstrate its administrative solvency, and (iii) grant Cobra such other relief as the Court deems just, proper and equitable.

In San Juan, Puerto Rico, this 4th day of December 2019.

By:

REICHARD & ESCALERA, LLC

*/s/ Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

Sylvia M. Arizmendi
USDC-PR No. 210714
arizmendis@reichardescalera.com

Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

Gustavo A. Pabón-Rico
USDC-PR No. 231207
pabong@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

AKIN GUMP STRAUSS HAUER & FELD
 LLP

*/s/ Thomas P. McLish*
Thomas P. McLish (admitted *pro hac vice*)
Scott M. Heimberg (admitted *pro hac vice*)
Allison S. Thornton (admitted *pro hac vice*)
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email: tmclish@akingump.com
        sheimberg@akingump.com
        athornton@akingump.com

-and-

Ira S. Dizengoff (admitted *pro hac vice*)
Philip C. Dublin (admitted *pro hac vice*)
Stephen M. Baldini (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: idizengoff@akingump.com
        pdublin@akingump.com
        sbaldini@akingump.com

*Attorneys for Cobra Acquisitions LLC*

## **Annex A**

Fee Applications Subject to Objection

## Fee Applications Subject to Objection[1]

1.  Sixth Interim Fee Application of Filsinger Energy Partners for Allowance of an Administrative Claim for Compensation and Reimbursement of Expenses Incurred as Chief Financial Advisor to Puerto Rico Electric Power Authority ("PREPA") for the Period From June 1, 2019 Through June 30, 2019 and July 16, 2019 Through September 30, 2019, [PREPA ECF No. 1746; PR ECF No. 9204]

2.  First Interim Fee Application of Berkeley Research Group, LLC for Payment of Compensation and Reimbursement of Expenses for Consulting Services to the Financial Oversight and Management Board of Puerto Rico, as Representative of Debtor, Puerto Rico Electric Power Authority ("PREPA") for the Period From June 13, 2019 Through September 30, 2019, [PREPA ECF No.1770; PR ECF No. 9305]

3.  Second Interim Application of Ileana C. Cardona Fernandez, Esq., Local Conflicts Counsel to the Financial Oversight and Management Board, Acting Through Its Special Claims Committee, for Professional Compensation and Reimbursement of Expenses for the Fifth Interim Fee Period From June 1, 2019 Through September 30, 2019. [PREPA ECF No. 1774]

4.  Second Interim Application of DiCicco, Gulman & Company LLP, Financial Advisor to the Financial Oversight and Management Board, Acting Through Its Special Claims Committee, for Professional Compensation and Reimbursement of Expenses for the Seventh Interim Fee Period From June 1, 2019 Through September 30, 2019, [PREPA ECF No. 1776]

5.  Second Interim Application of Brown Rudnick LLP, Claims Counsel to the Financial Oversight and Management Board, Acting Through Its Special Claims Committee, for Professional Compensation and Reimbursement of Expenses for the Seventh Interim Fee Period From June 1, 2019 Through September 30, 2019, [PREPA ECF No. 1778]

6.  Fourth Interim Application of O'Melveny & Myers LLP for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Puerto Rico Electric Power Authority for the Period From June 1, 2019 Through September 30, 2019, [PREPA ECF No. 1786; PR ECF No.9354]

7.  Seventh Interim Fee Application of Ankura Consulting Group, LLC for Compensation for Services Rendered and Reimbursement of Expenses as Financial Advisors to Puerto Rico Electric Power Authority ("PREPA") for the Period June 1, 2019 Through September 30, 2019, [PREPA ECF No. 1788]

8.  Second Interim Application of the Brattle Group, Inc. for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Economic Consultant to

---

[1] The following list is meant to be comprehensive of all Fee Applications filed with respect to, or which allocated fees to, PREPA's Title III Case for the quarterly compensation period beginning on June 1, 2019.  For the avoidance of doubt, Cobra objects to all further payment of professional fees regardless of whether such professional is listed herein or has yet to file its Fee Application.

Proskauer Rose LLP, as Legal Counsel To and on Behalf of the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtors, for the Sixth Interim Fee Period From June 1, 2019 Through September 30, 2019, [PR ECF No. 9144]

9.  Seventh Interim Application of Phoenix Management Services, LLC, Financial Advisor to the Mediation Team, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period June 3, 2019 Through September 29, 2019, [PR ECF No. 9167]

10.  Seventh Interim Application of Bennazar, García & Milián, C.S.P. for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Official Committee of Retired Employees of the Commonwealth of Puerto Rico From June 1, 2019 Through September 30, 2019, [PR ECF No. 9176]

11.  Seventh Interim Application of Jenner & Block LLP as Counsel to the Official Committee of Retired Employees of the Commonwealth of Puerto Rico for Allowance Of Compensation for Services Rendered and Reimbursement of Expenses Incurred From June 1, 2019 Through September 30, 2019, [PR ECF No.9207]

12.  Second Interim Fee Application of Genovese Joblove & Battista, P.A., as Special Litigation Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for Period From June 1, 2019 Through September 30, 2019, [PR ECF No. 9213]

13.  Seventh Interim Fee Application of Zolfo Cooper, LLC, as Financial Advisor to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for the Period From June 1, 2019 Through September 30, 2019, [PR ECF No. 9218]

14.  Seventh Interim Fee Application of Paul Hastings LLP, as Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for Period From June 1, 2019 Through September 30, 2019, [PR ECF No. 9219]

15.  Seventh Interim Fee Application of Casillas, Santiago & Torres, LLC, as Local Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for the Period From June 1, 2019 Through September 30, 2019, [PR ECF No. 9220]

16.  Fifth Application of Marini Pietrantoni Muñiz LLC for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority for the Period From June 1, 2019 Through September 30, 2019, [PR ECF No. 9245]

17.  Second Interim Application of Ileana C. Cardona Fernandez, Esq., Local Conflicts Counsel to the Financial Oversight and Management Board, Acting Through Its Special Claims Committee, for Professional Compensation and Reimbursement of Expenses for the Fifth Interim Fee Period From June 1, 2019 Through September 30, 2019, [PR ECF No. 9312]

2

18.   Second Interim Application of DiCicco, Gulman & Company LLP, Financial Advisor to the Financial Oversight and Management Board, Acting Through Its Special Claims Committee, for Professional Compensation and Reimbursement of Expenses for the Seventh Interim Fee Period From June 1, 2019 Through September 30, 2019, [PR ECF No. 9314]

19.   Third Interim Application of Brown Rudnick LLP, Claims Counsel to the Financial Oversight and Management Board, Acting Through Its Special Claims Committee, for Professional Compensation and Reimbursement of Expenses for the Seventh Interim Fee Period From June 1, 2019 Through September 30, 2019, [PR ECF No. 9316]